

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR 10 2019

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                        SOUTHERN DIVISION

11                   September 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>MICHAEL JOHN AVENATTI,<br><br>          Defendant. | SA CR No. 19 **SACR19-00061**<br>                                    JVS<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud;<br>26 U.S.C. § 7202: Willful Failure<br>to Collect and Pay Over Withheld<br>Taxes; 26 U.S.C. § 7212(a):<br>Endeavoring to Obstruct the<br>Administration of the Internal<br>Revenue Code; 26 U.S.C. § 7203:<br>Willful Failure to File Tax<br>Return; 18 U.S.C. § 1344(1): Bank<br>Fraud; 18 U.S.C. § 1028A(a)(1):<br>Aggravated Identity Theft; 18<br>U.S.C. § 152(3): False Declaration<br>in Bankruptcy; 18 U.S.C. § 152(2):<br>False Testimony Under Oath in<br>Bankruptcy; 18 U.S.C. § 2(b):<br>Causing an Act to Be Done;<br>18 U.S.C. §§ 981(a)(1)(C), 982,<br>1028 and 28 U.S.C. § 2461(c):<br>Criminal Forfeiture] |

          The Grand Jury charges:

COUNTS ONE THROUGH TEN

[18 U.S.C. § 1343]

**A.   INTRODUCTORY ALLEGATIONS**

1.   At all relevant times:

a.   Defendant MICHAEL JOHN AVENATTI ("AVENATTI") was a resident of Orange and Los Angeles Counties, within the Central District of California.

b.   Defendant AVENATTI was an attorney licensed to practice law in the State of California.  Defendant AVENATTI provided legal services to clients in exchange for attorneys' fees.

c.   Defendant AVENATTI practiced law through Eagan Avenatti LLP ("EA LLP") and Avenatti & Associates, APC ("A&A").  EA LLP and A&A's principal offices were located in Newport Beach and Los Angeles, California.

d.   A&A was a professional corporation organized in California.  Defendant AVENATTI was A&A's Chief Executive Officer ("CEO"), Secretary, Chief Financial Officer, and sole director. Defendant AVENATTI owned 100 percent of A&A.

e.   EA LLP was a limited liability partnership organized in California.  Defendant AVENATTI was EA LLP's managing member and managing partner.  Through A&A, defendant AVENATTI owned at least 75 percent of EA LLP.

f.   Defendant AVENATTI was also the effective owner and controlled a number of other entities, including:

i.   Global Baristas US LLC ("GBUS"), which operated Tully's Coffee ("Tully's") stores in Washington and California;

ii.   Global Baristas, LLC ("GB LLC"), which wholly owned GBUS;

2

iii. GB Autosport, LLC ("GB Auto"), which managed defendant AVENATTI's car racing team; and

iv.  Passport 420, LLC ("Passport 420"), which held title to a private airplane defendant AVENATTI used.

g.  Defendant AVENATTI was a signatory on and exercised control over the following bank accounts, which were all maintained in Orange and Los Angeles Counties, within the Central District of California:

i.  California Bank & Trust ("CB&T") attorney trust account ending in x8541 in the name of "The State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Fund" ("EA Trust Account 8541").

ii.  CB&T attorney trust account ending in x3714 in the name of "The State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Account" ("EA Trust Account 3714").

iii. CB&T attorney trust account ending in x4613 in the name of "State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Account" ("EA Trust Account 4613").

iv.  CB&T attorney trust account ending in x8671 in the name of "The State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Account" ("EA Trust Account 8671").

v.  CB&T account ending in x2851 in the name of "Eagan Avenatti LLP" ("EA Account 2851").

vi.  CB&T account ending in x8461 in the name of "Eagan Avenatti LLP, Operating Account" ("EA Account 8461").

vii. CB&T account ending in x0313 in the name of "Eagan Avenatti LLP, Debtor-in-Possession Case 8:17-BK-11961-CB, General Account" ("EA DIP Account 0313").

        viii.    CB&T account ending in x0661 in the name of "Avenatti & Assoc. A Professional Corp." ("A&A Account 0661").

        ix.  City National Bank ("CNB") attorney trust account ending in x5566 in the name of "Michael J. Avenatti, Attorney Client Trust Account" ("Avenatti Trust Account 5566").

        x.   CNB attorney trust account ending in x4705 in the name of "Michael J. Avenatti, Esq., Attorney Client Trust Account" ("Avenatti Trust Account 4705").

        xi.  CB&T account ending in x2240 in the name of "Global Baristas US LLC, Operating Account" ("GBUS Operating Account 2240").

        xii. CB&T account ending in x3730 in the name of "Global Baristas LLC" ("GB LLC Account 3730").

    h.  Defendant AVENATTI was a signatory on and exercised control over a KeyBank account ending in x6193 in the name of "Global Baristas US LLC" ("GBUS KeyBank Account 6193"), which was maintained in Seattle, Washington.

    i.  As a member of the State Bar of California, defendant AVENATTI was obligated to comply with the California Rules of Professional Conduct.  Defendant AVENATTI was required, among other things, to promptly notify a client of the receipt of any funds the client was entitled to receive, and to promptly pay or deliver to the client or such payees as designated by the client any such funds that defendant AVENATTI held in trust for the client upon the client's request.

    j.  Money transmitted through the Fedwire Funds Transfer System (the "Fedwire system") was routed from its origin to its destination through Texas and New Jersey.

1          k.    A "Special Needs Trust" was a specialized trust that

2    allowed for a disabled person to maintain his or her eligibility for

3    public assistance benefits, despite having assets that would

4    otherwise make the person ineligible for those benefits.

5          2.    "Client 1" was an individual who resided in Los Angeles

6    County, within the Central District of California.  Beginning as

7    early as in or about 2012 and continuing until in or about March

8    2019, defendant AVENATTI and EA LLP had a formal attorney-client

9    relationship with Client 1.  Specifically, defendant AVENATTI and EA

10   LLP agreed to represent Client 1 in connection with a lawsuit against

11   the County of Los Angeles and others, alleging violations of Client

12   1's constitutional rights that led to severe emotional distress and

13   severe physical injuries, including paraplegia (the "L.A. County

14   Lawsuit").

15         3.    "Client 2" was an individual who resided in Los Angeles

16   County, within the Central District of California.  Beginning as

17   early as in or about December 2016 and continuing until in or about

18   March 2019, defendant AVENATTI and EA LLP had a formal attorney-

19   client relationship with Client 2.  Specifically, defendant AVENATTI

20   and EA LLP agreed to represent Client 2 in connection with potential

21   litigation against an individual with whom Client 2 had a personal

22   relationship ("Individual 1").

23         4.    "Client 3" was an individual who resided in Orange County,

24   within the Central District of California.  Beginning as early as in

25   or about July 2014 and continuing until in or about November 2018,

26   defendant AVENATTI and EA LLP had a formal attorney-client

27   relationship with Client 3.  Specifically, defendant AVENATTI and EA

28

LLP agreed to represent Client 3 in connection with an intellectual property dispute against a Colorado-based company ("Company 1").

5.    "Client 4" and "Client 5" were both individuals who resided in Los Angeles County, within the Central District of California. Beginning as early as in or about August 2017 and continuing until in or about August 2018, defendant AVENATTI had a formal attorney-client relationship with both Client 4 and Client 5.  Specifically, defendant AVENATTI agreed to represent both Client 4 and Client 5 in connection with their separation and divestment from one of the companies in which Client 4 and Client 5 owned shares ("Company 2").

**B.    THE SCHEME TO DEFRAUD**

6.    Beginning as early as in or about January 2015 and continuing through at least in or about March 2019, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendant AVENATTI, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim-clients to whom defendant AVENATTI had agreed to provide legal services, including, but not limited to, Client 1, Client 2, Client 3, Client 4, and Client 5, as to material matters, and to obtain money and property from such victim-clients by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts that defendant AVENATTI had a duty to disclose.

**C.    THE MANNER AND MEANS OF THE SCHEME TO DEFRAUD**

7.    The fraudulent scheme operated, in substance, in the following manner:

a.   Defendant AVENATTI would negotiate a settlement on behalf of a client that would require the payment of funds to the client.

b.   Defendant AVENATTI would misrepresent, conceal, and falsely describe to the client the true terms of the settlement and/or the disposition the settlement proceeds.

c.   Defendant AVENATTI would cause the settlement proceeds to be deposited in or transferred to attorney trust accounts defendant AVENATTI controlled.

d.   Defendant AVENATTI would embezzle and misappropriate settlement proceeds to which he was not entitled.

e.   Defendant AVENATTI would lull the client to prevent the client from discovering the embezzlement and misappropriation by, among other things, falsely denying the settlement proceeds had been paid, sending funds to the client under the false pretense that such funds were "advances" on the purportedly yet-to-be received settlement proceeds, and falsely claiming that payment of the settlement proceeds to the client had been delayed for legitimate reasons and would occur at a later time.

### Embezzlement of Client 1's Funds

f.   On or about January 21, 2015, defendant AVENATTI negotiated a settlement of the L.A. County Lawsuit on behalf of Client 1.  Under the terms of the negotiated settlement agreement, the County of Los Angeles agreed to pay $4,000,000 to Client 1 in exchange for Client 1 dismissing the L.A. County Lawsuit.  Client 1 was entitled to receive the $4,000,000 settlement payment, less EA LLP's attorneys' fees, costs, and expenses.

1      g.   In or around January 2015, defendant AVENATTI told

2  Client 1 that the County of Los Angeles had agreed to a settlement.

3  Defendant AVENATTI falsely represented to Client 1 that the

4  settlement agreement had to remain confidential, the County of Los

5  Angeles could not pay the settlement to Client 1 in one lump-sum, and

6  the settlement proceeds could not be paid until the County of Los

7  Angeles approved a Special Needs Trust for Client 1.  In truth and in

8  fact, as defendant AVENATTI then well knew, the settlement agreement

9  did not contain a confidentiality provision, the County of Los

10  Angeles had agreed to make a lump-sum $4,000,000 settlement payment

11  to Client 1, and the settlement payment from the County of Los

12  Angeles was not conditioned on the approval of a Special Needs Trust

13  for Client 1.

14      h.   On or about January 26, 2015, defendant AVENATTI

15  caused the approximately $4,000,000 settlement payment to be

16  deposited into EA Trust Account 8541 to be held in trust for Client

17  1.  Knowing that the full settlement amount had been paid by the

18  County of Los Angeles, defendant AVENATTI concealed and failed to

19  disclose to Client 1 that EA LLP had received the $4,000,000

20  settlement payment.  Further, defendant AVENATTI and EA LLP retained

21  and did not transfer Client 1's portion of the settlement payment to

22  Client 1.

23      i.   Between on or about January 26, 2015, and on or about

24  March 30, 2015, defendant AVENATTI caused approximately $3,125,000 of

25  the $4,000,000 settlement payment to be transferred from EA Trust

26  Account 8541 to EA Account 2851.  Thereafter, defendant AVENATTI

27  caused substantial portions of the settlement proceeds to be

28  transferred from EA Account 2851 to A&A Account 0661, and then

8

1   further transferred to other bank accounts defendant AVENATTI

2   controlled, including defendant AVENATTI's personal bank account and

3   bank accounts associated with GBUS and GB Auto, or used to pay

4   defendant AVENATTI's personal expenses.  By no later than July 6,

5   2015, defendant AVENATTI had drained all of the settlement proceeds

6   out of EA Trust Account 8541.  Defendant AVENATTI concealed and

7   failed to disclose to Client 1 that the entire $4,000,000 settlement

8   payment had been expended and that substantial portions of the

9   settlement proceeds had been used for defendant AVENATTI's own

10  purposes.

11         j.   In order to lull Client 1 and prevent Client 1 from

12  discovering that defendant AVENATTI had embezzled Client 1's portion

13  of the $4,000,000 settlement payment, defendant AVENATTI committed

14  and caused to be committed the following acts:

15         i.   Starting as early as in or about July 2015 and

16  continuing to in or about March 2019, defendant AVENATTI caused at

17  least 69 payments, each ranging from approximately $1,000 to

18  approximately $1,900 and together totaling at least approximately

19  $124,000, to be made to Client 1.  During this same time period,

20  defendant AVENATTI also caused payments to be made to various

21  assisted living facilities to pay for rent on Client 1's behalf.

22  Defendant AVENATTI falsely represented to Client 1 that the payments

23  made to Client 1 and to the assisted living facilities where Client 1

24  resided were "advances" on the settlement payment from the County of

25  Los Angeles, which defendant AVENATTI falsely represented had not yet

26  been received.

27         ii.  In or about 2017, after Client 1 told defendant

28  AVENATTI that Client 1 wanted to purchase his own residence,

defendant AVENATTI agreed to help Client 1 find a real estate broker and purchase a house.   Defendant AVENATTI represented and promised to Client 1 that Client 1 would be able to use the settlement proceeds to fund the purchase of a house.   After Client 1 was in escrow on the purchase of a house, however, defendant AVENATTI falsely told Client 1 that Client 1 could not purchase the house after all because the County of Los Angeles still had not approved the Special Needs Trust and therefore could not make the settlement payment to Client 1. Client 1 was unable to close escrow and did not purchase the house.

iii. On or about November 26, 2018, defendant AVENATTI told Client 1 that defendant AVENATTI would respond on Client 1's behalf to a request that Client 1 provide the United States Social Security Administration ("SSA") information it requested to evaluate Client 1's continued eligibility for Supplemental Security Income ("SSI") benefits, including information regarding the settlement agreement with the County of Los Angeles, the purported Special Needs Trust, and the monthly payments from defendant AVENATTI.   Knowing full well that the requested information could lead to inquiries that could reveal that defendant AVENATTI had embezzled Client 1's portion of the settlement proceeds, defendant AVENATTI failed to provide the requested information to SSA, which resulted in Client 1's SSI benefits being discontinued in or about February 2019.

k.   On or about March 22, 2019, defendant AVENATTI was questioned regarding the alleged embezzlement of the Client 1 Settlement Proceeds during a public judgment-debtor examination conducted in federal court in Los Angeles, California.   Shortly thereafter, in order to lull Client 1 and prevent Client 1 from discovering that defendant AVENATTI had embezzled Client 1's portion

10

of the $4,000,000 settlement, defendant AVENATTI falsely told Client 1 that the County of Los Angeles had finally approved the Special Needs Trust for Client 1 and that Client 1 would begin receiving settlement payments from the County of Los Angeles through the Special Needs Trust.

l.    In order to further lull Client 1 and to attempt to establish a defense against any claims Client 1 could bring against defendant AVENATTI, on or about March 23, 2019, and on or about March 24, 2019, defendant AVENATTI caused Client 1 to sign a document defendant AVENATTI claimed was necessary to effectuate the settlement agreement and finalize the Special Needs Trust that defendant AVENATTI claimed was required before Client 1 could begin receiving payments due under the settlement, and a document stating that Client 1 was satisfied with defendant AVENATTI's representation of Client 1.

### Embezzlement of Client 2's Funds

m.    On or about January 7, 2017, defendant AVENATTI negotiated a settlement on behalf of Client 2 with Individual 1. Under the terms of the settlement agreement, Individual 1 was required to make an initial payment to Client 2 of approximately $2,750,000 by on or about January 28, 2017, and an additional payment to Client 2 of approximately $250,000 on or about November 1, 2020, if certain additional specified conditions were met, for a total of approximately $3,000,000.  Client 2 was entitled to receive the initial $2,750,000 settlement payment, less EA LLP's attorneys' fees (i.e., 33 percent of the total $3,000,000 settlement amount), costs, and expenses.

n.    In order to conceal the true details of the settlement agreement from Client 2, defendant AVENATTI did not provide a copy of

11

1   the settlement agreement to Client 2.  Rather, in or about January

2   2017, defendant AVENATTI falsely represented to Client 2 that

3   Individual 1 would make an initial lump-sum payment, the entirety of

4   which would be used to pay EA LLP's attorney fees (i.e., 33 percent

5   of the total settlement amount) and costs, and then approximately 96

6   monthly payments over the course of the next eight years by which the

7   remaining settlement funds would be paid to Client 2.  In truth and

8   in fact, as defendant AVENATTI then well knew, the actual settlement

9   agreement required Individual 1 to make the initial $2,750,000

10  settlement payment, which far exceeded the money owed to EA LLP for

11  attorneys' fees, by on or about January 28, 2017, and Individual 1

12  was not required to make any monthly payments to Client 2 thereafter.

13          o.   On or about January 25, 2017, defendant AVENATTI

14  caused the initial $2,750,000 settlement payment from Individual 1 to

15  be transferred to EA Trust Account 8671 to be held in trust for

16  Client 2.  Defendant AVENATTI concealed and failed to disclose to

17  Client 2 that EA LLP had received the initial $2,750,000 settlement

18  payment.  Further, defendant AVENATTI and EA LLP retained and did not

19  transfer Client 2's portion of the $2,750,000 settlement payment to

20  Client 2.

21          p.   On or about January 26, 2017, defendant AVENATTI

22  caused $2,500,000 of the $2,750,000 settlement payment to be

23  transferred to an attorney trust account for another law firm ("Law

24  Firm 1").  That same day, defendant AVENATTI caused Law Firm 1 to

25  transfer the entire $2,500,000 to Honda Aircraft Company, LLC, to

26  purchase a private airplane for defendant AVENATTI's company,

27  Passport 420.  Defendant AVENATTI also caused the remaining $250,000

28  of the $2,750,000 settlement payment to be transferred first to EA

1  Account 2851 and then to A&A Account 0661.  Defendant AVENATTI

2  concealed and failed to disclose to Client 2 that defendant AVENATTI

3  had used the settlement proceeds in this manner.

4        q.   In order to lull Client 2 and prevent Client 2 from

5  discovering that defendant AVENATTI had embezzled Client 2's portion

6  of the initial $2,750,000 settlement payment, defendant AVENATTI

7  committed and caused to be committed the following acts:

8        i.   Between on or about March 15, 2017, and on or

9  about June 18, 2018, defendant AVENATTI caused approximately 11

10 payments totaling approximately $194,000 to be deposited into Client

11 2's bank account.  Defendant AVENATTI falsely represented to Client 2

12 that these payments constituted the monthly settlement payments that

13 were purportedly due from Individual 1.  For example, on or about

14 February 20, 2018, defendant AVENATTI caused a $16,000 cashier's

15 check drawn on EA Account 4613 to be deposited into Client 2's bank

16 account, which falsely identified Individual 1 as the "remitter."

17       ii.  Between in or about June 2018 and in or about

18 March 2019, after defendant AVENATTI stopped making the purported

19 monthly payments to Client 2, defendant AVENATTI falsely represented

20 to Client 2 that Individual 1 was not complying with the settlement

21 agreement and falsely told Client 2 that defendant AVENATTI was

22 working on obtaining the missing monthly settlement payments

23 purportedly due to Client 2 from Individual 1.

24       iii. On or about March 24, 2019, at a meeting with

25 Client 2 at defendant AVENATTI's residence in Los Angeles,

26 California, defendant AVENATTI falsely represented to Client 2 that

27 Client 2 would soon be receiving a payment from Individual 1 to make

28

1   up for the purportedly missing monthly settlement payments from
2   Individual 1 for July 2018 through March 2019.

3                    **Embezzlement of Client 3's Funds**

4           r.    Between on or about December 22, 2017, and on or about
5   December 28, 2017, defendant AVENATTI negotiated a settlement
6   agreement with Company 1 on behalf of Client 3.  The settlement
7   agreement required Company 1 to make an initial payment of $1,600,000
8   by January 10, 2018, and three additional payments of $100,000 by
9   January 10 of 2019, 2020, and 2021, respectively, for a total of
10  $1,900,000.  Client 3 was entitled to receive the initial $1,600,000
11  settlement payment, less EA LLP's attorneys' fees of $760,000 (i.e.,
12  40 percent of the total $1,900,000 settlement amount), costs, and
13  expenses.

14          s.    On or about December 28, 2017, at a meeting with
15  Client 3 at EA LLP's offices in Newport Beach, California, to discuss
16  the proposed settlement agreement with Company 1, defendant AVENATTI
17  provided an altered copy of the settlement agreement to Client 3 for
18  Client 3's review, which copy falsely represented the payment
19  schedule as $1,600,000 due by March 10, 2018, and $100,000 due by
20  March 10 of each of the three subsequent years.  That same day,
21  defendant AVENATTI emailed the attorney for Company 1 the signature
22  page for the actual settlement agreement, bearing Client 3's
23  signature.

24          t.    On or about December 29, 2017, defendant AVENATTI
25  received a complete copy of the fully executed settlement agreement
26  with Client 3's and Company 1's signatures from Company 1's attorney,
27  which included the payment schedule that had actually been negotiated
28  by defendant AVENATTI but had been concealed from Client 3, namely,

1  an initial $1,600,000 payment due by January 10, 2018, and additional
2  payments of $100,000 due by January 10 of each of the three
3  subsequent years.

4      u.   On or about January 2, 2018, defendant AVENATTI
5  emailed instructions to Company 1's attorney to wire the initial
6  $1,600,000 settlement payment to Avenatti Trust Account 5566.

7      v.   On or about January 5, 2018, as instructed by
8  defendant AVENATTI, Company 1 wired the initial $1,600,000 settlement
9  payment to Avenatti Trust Account 5566 to be held in trust for Client
10  3.  Defendant AVENATTI concealed and failed to disclose to Client 3
11  that defendant AVENATTI had received the initial $1,600,000
12  settlement payment from Company 1.  Further, defendant AVENATTI
13  retained Client 3's portion of the $1,600,000 settlement payment and
14  did not transfer Client 3's portion of the $1,600,000 settlement
15  payment to Client 3.

16      w.   Between on or about January 5, 2018, and on or about
17  March 14, 2018, defendant AVENATTI caused approximately $1,599,400 of
18  the initial $1,600,000 settlement payment to be used for his own
19  purposes, including to pay for expenses relating to GBUS.  Defendant
20  AVENATTI concealed and failed to disclose to Client 3 that defendant
21  AVENATTI used the settlement proceeds for his own purposes.

22      x.   In order to lull Client 3 and prevent Client 3 from
23  discovering that defendant AVENATTI had embezzled Client 3's portion
24  of the initial $1,600,000 settlement payment, defendant AVENATTI
25  committed and caused to be committed the following acts:

26      i.   Between on or about March 10, 2018, and in or
27  about November 2018, defendant AVENATTI falsely represented to Client
28  3 that Company 1 had not made the initial $1,600,000 settlement

15

payment, and that defendant AVENATTI was working on obtaining the purportedly missing $1,600,000 settlement payment from Company 1.

ii.   Between in or about April 2018 and in or about November 2018, defendant AVENATTI caused multiple payments totaling approximately $130,000 to be paid to Client 3 and/or Client 3's spouse, which payments defendant AVENATTI falsely claimed represented "advances" on Client 3's portion of the $1,600,000 settlement payment from Company 1, so that Client 3 could meet certain financial obligations while Client 3 was purportedly "waiting" for his portion of the $1,600,000 settlement payment from Company 1.

**Embezzlement of Client 4's Funds**

y.   On or about September 17, 2017, defendant AVENATTI negotiated a "Common Stock Repurchase Agreement" with Company 2 on behalf of Client 4 and Client 5.  Under the terms of Client 4's Common Stock Repurchase Agreement, Company 2 agreed to repurchase from Client 4 361,565 shares of Company 2 for approximately $27,478,940, and thereafter an additional 107,188 shares of Company 2 for approximately $8,146,288, which resulted in a total repurchase amount of approximately $35,625,228.

z.   On or about September 18, 2017, Company 2 wired approximately $27,414,668 to Avenatti Trust Account 4705. Approximately $2,787,651 of this amount constituted defendant AVENATTI's and/or EA LLP's attorneys' fees (i.e., 7.5 percent of the total $35,625,228 repurchase amount), costs, and expenses.  Between on or about September 21, 2017, and on or about October 3, 2017, defendant AVENATTI caused the remainder of the initial $27,414,668 payment to be transferred to bank accounts associated with Client 4.

aa. On or about March 13, 2018, after Company 2 informed Client 4 and Client 5 that Company 2 was ready to repurchase the remaining 107,188 shares of Company 2 from Client 4 as contemplated in the Common Stock Purchase Agreement, defendant AVENATTI told Client 5 that Company 2 should wire the remaining $8,146,288 payment due to Client 4 to Avenatti Trust Account 4705, and that defendant AVENATTI would then wire the $8,146,288 payment from Avenatti Trust Account 4705 to Client 4.

bb. On or about March 14, 2018, following defendant AVENATTI's instructions, Company 2 transferred approximately $8,146,288 to Avenatti Trust Account 4705 to be held in trust for Client 4. Defendant AVENATTI retained and did not transfer the $8,146,288 payment to Client 4 as defendant AVENATTI had promised to do.

cc. Between on or about March 15, 2018, and on or about May 4, 2018, defendant AVENATTI caused approximately $4,000,000 out of the $8,146,288 payment from Company 2 due to Client 4 to be used for defendant AVENATTI's own purposes, including the following:

i. On or about March 15, 2018, defendant AVENATTI caused approximately $3,000,000 of Client 4's funds to be transferred to EA Trust Account 4613. Later that same day, defendant AVENATTI then caused approximately $2,828,423 to be transferred from EA Trust Account 4613 to an attorney trust account for SulmeyerKupetz, a law firm representing A&A and defendant AVENATTI in bankruptcy proceedings involving EA LLP, so that SulmeyerKupetz could use the money to pay some of EA LLP's creditors in the bankruptcy proceedings, including the Internal Revenue Service.

ii.   Between on or about March 20, 2018, and on or about May 1, 2018, defendant AVENATTI caused a total of approximately $780,000 of Client 4's funds to be paid to EA Trust Account 4613, which defendant AVENATTI then used for his own purposes, including transferring the funds to bank accounts associated with defendant AVENATTI's other companies, namely, GBUS, GB LLC, A&A, and Passport 420.

iii. Between on or about March 20, 2018, and May 1, 2018, defendant AVENATTI caused a total of approximately $260,000 of Client 4's funds to be paid to EA DIP Account 0313.

iv.   In order to lull Client 1 and prevent Client 1 from discovering that defendant AVENATTI had embezzled Client 1's portion of the $4,000,000 settlement payment from the County of Los Angeles, on or about April 9, 2018, defendant AVENATTI used Client 4's funds, which had been transferred from Avenatti Trust Account 4705 to EA DIP Account 0313 and then to EA Trust Account 4613, to make an approximately $1,900 payment to Client 1.

v.   In order to lull Client 2 and prevent Client 2 from discovering that defendant AVENATTI had embezzled Client 2's portion of the $2,750,000 settlement payment from Individual 1, on or about April 17, 2018, defendant AVENATTI used Client 4's funds, which had been transferred from Avenatti Trust Account 4705 to EA Trust Account 4613, to make an approximately $34,000 payment to Client 2.

dd.   Between on or about March 14, 2018, and on or about May 3, 2018, defendant AVENATTI failed to disclose to Client 4 and Client 5 that defendant AVENATTI had used approximately $4,000,000 of Client 4's funds for defendant AVENATTI's own purposes.

ee.   In order to lull Client 4 and Client 5 and prevent them from discovering that defendant AVENATTI had embezzled approximately $4,000,000 from the approximately $8,146,288 payment defendant AVENATTI received from Company 2, between on or about March 14, 2018, and on or about May 3, 2018, defendant AVENATTI falsely represented and promised Client 4 and Client 5 that defendant AVENATTI would transfer Client 4's funds to Client 4 at a later date, and that defendant AVENATTI needed to go to the bank to fill out paperwork to effectuate the wire transfers.   In truth and in fact, as defendant AVENATTI then well knew, he had already caused approximately $4,000,000 of Client 4's funds to be transferred or paid to other bank accounts defendant AVENATTI controlled, and then used for defendant AVENATTI's own purposes.

ff.   In order to lull Client 4 and Client 5 and prevent them from discovering that he had embezzled approximately $4,000,000 of Client 4's funds, on or about May 4, 2018, defendant AVENATTI caused two wire transfers in the amounts of $4,000,000 and $146,288 to be sent from Avenatti Trust Account 4705 to a bank account associated with Client 4.   Defendant AVENATTI retained and failed to transfer to Client 4 the remainder of the $8,146,288 payment that Company 2 had transferred on or about March 14, 2018, to Avenatti Trust Account 4705 for the benefit of Client 4.

gg.   Between on or about May 4, 2018, and on or about June 4, 2018, defendant AVENATTI and another attorney with whom defendant AVENATTI worked ("Attorney 1") falsely represented to Client 4 and Client 5 that the entire $8,146,288 payment from Company 2 had been transferred to Client 4 in three separate wire transfers. For example, in response to a request from Client 5 that defendant

1  AVENATTI provide the wire transfer information for the remaining

2  $4,000,000 of Client 4's funds, on or about May 11, 2018, defendant

3  AVENATTI emailed Attorney 1 a wire transfer confirmation document

4  purporting to reflect a second $4,000,000 wire transfer to Client 4.

5  In truth and in fact, as defendant AVENATTI then well knew, defendant

6  AVENATTI had never transferred the remaining $4,000,000 to Client 4,

7  defendant AVENATTI had already used the remaining $4,000,000 for his

8  own purposes, and the wire transfer confirmation document that

9  defendant AVENATTI provided on or about May 11, 2018, related to the

10 first $4,000,000 wire transfer from Avenatti Trust Account 4705 that

11 Client 4 had already received on May 4, 2018.

12 **D.    THE USE OF THE WIRES**

13     8.    On or about the following dates, within the Central

14 District of California, and elsewhere, defendant AVENATTI, for the

15 purpose of executing the above-described scheme to defraud,

16 transmitted and caused to be transmitted by means of wire and radio

17 communications in interstate commerce the following items:

| COUNT | DATE | ITEM WIRED |
|-------|------|-----------|
| ONE | 1/30/2015 | Wire transfer of approximately $250,000 sent from A&A Account 0661 through the Fedwire system to GBUS's Homestreet bank account in Seattle, Washington. |
| TWO | 2/10/2015 | Wire transfer of approximately $50,000 from A&A Account 0661 through the Fedwire system to defendant AVENATTI's personal Bank of America bank account. |
| THREE | 1/26/2017 | Wire transfer of approximately $2,500,000 from EA Trust Account 8671 through the Fedwire system to Law Firm 1's JP Morgan Chase Bank, N.A. ("Chase") IOLTA trust account. |

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| FOUR | 1/5/2018 | Wire transfer of approximately $1,600,000 sent from Company 1's Silicon Valley Bank account through the Fedwire system to Avenatti Trust Account 5566. |
| FIVE | 1/10/2018 | Wire transfer of approximately $60,000 sent from Avenatti CNB Trust Account 5566 through the Fedwire system to EA Trust Account 3714. |
| SIX | 3/15/2018 | Wire transfer of approximately $3,000,000 from Avenatti Trust Account 4705 through the Fedwire system to EA CB&T Trust Account 4613. |
| SEVEN | 3/15/2018 | Wire transfer of approximately $2,828,423 from EA CB&T Trust Account 4613 through the Fedwire system to an attorney trust account for SulmeyerKupetz at CNB. |
| EIGHT | 3/20/2018 | Wire transfer of approximately $200,000 from Avenatti CNB Trust Account 4705 through the Fedwire system to EA Trust Account 4613. |
| NINE | 6/18/2018 | Wire transfer of approximately $16,000 from EA Trust Account 4613 through the Fedwire system to Client 2's Chase bank account. |
| TEN | 7/13/2018 | Wire transfer of approximately $1,900 from EA Trust Account 4613 through the Fedwire system to Client 1's Bank of America bank account. |

COUNTS ELEVEN THROUGH EIGHTEEN

[26 U.S.C. § 7202; 18 U.S.C. § 2(b)]

**A.    INTRODUCTORY ALLEGATIONS**

**Background**

9.    The Grand Jury re-alleges and incorporates by reference paragraph 1 through 7 of this Indictment as though fully set forth herein.

10.    At all relevant times:

a.    GBUS was a limited liability company organized in Washington, which operated Tully's stores in Washington and California.  Until in or around November 2017, GBUS's corporate office was in Seattle, Washington.

b.    GB LLC was a limited liability company organized in Washington.  Defendant MICHAEL JOHN AVENATTI ("AVENATTI") was the sole managing member of GB LLC.

c.    GB Auto was a limited liability company organized in Washington.  Defendant AVENATTI was the sole manager of GB Auto.

d.    Doppio, Inc. ("Doppio") was a for-profit corporation incorporated in Washington.  Defendant AVENATTI was the sole governor of Doppio.

e.    Defendant AVENATTI was the effective owner of GBUS. In or around June 2013, defendant AVENATTI's company GB LLC acquired TC Global Inc., which previously operated Tully's, at a bankruptcy auction for approximately $9.15 million, namely, $6.95 million in cash and $2.2 million in assumed liabilities.  On or about June 25, 2013, defendant AVENATTI caused a wire transfer in the amount of $7,000,000 from EA Trust Account 8541 to a bank account for Foster Pepper PLLC, the law firm representing GB LLC in Tully's bankruptcy

auction.  A&A owned 100 percent of Doppio, which in turn owned at least 80 percent of GB LLC.  GB LLC wholly owned GBUS, which handled the day-to-day business operations of Tully's.

f.  Defendant AVENATTI served as GBUS's CEO, for which he was paid a yearly salary of approximately $250,000.  As GBUS's CEO, defendant AVENATTI exercised control over every aspect of GBUS's business affairs, including approving payments GBUS made and controlling GBUS's bank accounts.  Defendant AVENATTI managed and exercised control over GBUS's business affairs from Orange and Los Angeles Counties, within the Central District of California, and elsewhere.

g.  The Internal Revenue Service ("IRS") was an agency of the United States within the Department of Treasury of the United States and was responsible for enforcing and administering the tax laws of the United States.

11.  Beginning in or about February 2015 and continuing until at least in or about July 2018, GBUS maintained multiple bank accounts at CB&T in Orange County, California, including GBUS's payroll account ending in x2976 ("GBUS Payroll Account 2976") and GBUS Operating Account 2240.  Defendant AVENATTI and an EA LLP employee ("EA Employee 1") were the only signatories on GBUS Payroll Account 2976 and GBUS Operating Account 2240.

12.  In addition to defendant AVENATTI's yearly salary as GBUS's CEO, between as early as in or about September 2015 and continuing until at least in or about December 2017, defendant AVENATTI caused GBUS to make substantial payments for defendant AVENATTI's personal benefit and the benefit of other entities defendant AVENATTI

1  controlled, while, at the same time, failing to pay over to the IRS
2  payroll taxes withheld from GBUS employees' paychecks.  For example:
3          a.  Between on or about September 1, 2015, and on or about
4  December 31, 2017, defendant AVENATTI caused a net of approximately
5  $2.5 million to be transferred from GBUS's and GB LLC's bank accounts
6  to bank accounts associated with A&A and EA LLP.
7          b.  On or about March 30, 2016, defendant AVENATTI caused
8  GBUS to transfer $200,000 to the G.P. Family Trust as payment for two
9  months of rent for defendant AVENATTI's residence in Newport Beach,
10 California.
11         c.  In order to lull Client 1 and prevent Client 1 from
12 discovering that defendant AVENATTI had embezzled Client 1's portion
13 of the $4,000,000 settlement payment from the County of Los Angeles,
14 on or about April 7, 2016, defendant AVENATTI used GBUS funds, which
15 had been transferred from GBUS Account 2240 to EA Account 2851, to
16 make an approximately $1,900 payment to Client 1.
17         d.  In order to lull Client 2 and prevent Client 2 from
18 discovering that defendant AVENATTI had embezzled Client 2's portion
19 of the initial $2,750,000 settlement payment from Individual 1,
20 defendant AVENATTI caused GBUS funds to be used to make payments to
21 Client 2, including the following:
22         i.  On or about April 14, 2017, defendant AVENATTI
23 used GBUS funds, which had been transferred from GBUS Account 2240 to
24 A&A Account 0661, to make an approximately $16,000 payment to Client
25 2.
26         ii.  On or about May 15, 2017, defendant AVENATTI used
27 GBUS funds, which had been transferred from GBUS Account 2240 to A&A
28 Account 0661, to make an approximately $16,000 payment to Client 2.

**Federal Payroll Taxes**

13.  At all relevant times:

a.  Title 26 of the United States Code imposed four types of tax with respect to wages paid to employees:  (1) income tax; (2) Social Security tax; (3) Medicare tax; and (4) federal unemployment tax (collectively, "payroll taxes").

b.  Federal income tax was imposed upon employees based upon the amount of wages they received.

c.  Social Security tax and Medicare tax were imposed by the Federal Insurance Contributions Act (collectively referred to as "FICA taxes").  FICA taxes were imposed separately on employees and on employers.

d.  Federal unemployment tax was imposed under the Federal Unemployment Tax Act ("FUTA").  FUTA taxes were imposed solely on employers.

**GBUS's Obligation to Collect, Truthfully Account For, and Pay Over to the IRS Federal Payroll Taxes**

14.  At all relevant times:

a.  GBUS was required to withhold employee income taxes and FICA taxes from the wages paid to its employees, and to pay over the withheld amounts to the IRS.  The employee income taxes and FICA taxes that GBUS was required to withhold and pay over to the IRS were commonly referred to as "trust fund taxes" because of the provision in the Internal Revenue Code requiring that such taxes "shall be held to be a special fund in trust for the United States."

b.  GBUS was required to make deposits of payroll taxes, including trust fund taxes, to the IRS on a periodic basis.  In addition, GBUS was required to file, following the end of each

calendar quarter, an Employer's Quarterly Federal Tax Return (Form 941), setting forth for the quarter the total amount of wages and other compensation subject to withholding paid by GBUS, the total amount of income tax withheld, the amount of Social Security and Medicare taxes (i.e., FICA taxes) due, and the total federal tax deposits.

c.   Defendant AVENATTI was a "responsible person" for GBUS, that is, defendant AVENATTI had the corporate responsibility to collect, truthfully account for, and pay over to the IRS GBUS's payroll taxes.

15.   Beginning in or about June 2013 and continuing until at least in or about October 2017, GBUS withheld tax payments from its employees' paychecks, including federal income taxes and FICA taxes.

16.   Beginning in or about September 2015 and continuing until at least in or about October 2017, GBUS failed to pay over to the IRS payroll taxes due and owing, including federal income taxes and FICA taxes GBUS withheld from its employees' paychecks.  In total, between in or around September 2015 and in or around October 2017, GBUS failed to pay over to the IRS at least approximately $3,207,144 in federal payroll taxes, including at least approximately $2,390,048 in trust fund taxes that GBUS withheld from its employees' paychecks.

17.   Beginning in or about January 2016 and continuing until at least in or about October 2017, GBUS failed to timely file its quarterly employment tax returns (Forms 941) with the IRS for the fourth quarter of 2015 through the third quarter of 2017, inclusive.

B.   **FAILURE TO ACCOUNT FOR AND PAY OVER PAYROLL TAXES**

18.   Beginning in or about October 2015 and continuing until at least on or about October 31, 2017, in Orange County, within the

Central District of California, and elsewhere, defendant AVENATTI, a responsible person of GBUS, willfully failed and willfully caused GBUS to fail to pay over to the United States, namely, the IRS, all of the federal income taxes and FICA taxes (i.e., trust fund taxes) that GBUS withheld from GBUS employees' total taxable wages, which were due and owing to the United States by the dates set forth below and in the amounts set forth below, for each of the following calendar year quarters:

| COUNT | QUARTER AND YEAR | QUARTERLY DUE DATE | APPROXIMATE TRUST FUND TAXES DUE AND OWING |
|---|---|---|---|
| ELEVEN | Fourth Quarter of 2015 | 1/31/2016 | $292,724 |
| TWELVE | First Quarter of 2016 | 4/30/2016 | $382,100 |
| THIRTEEN | Second Quarter of 2016 | 7/31/2016 | $297,791 |
| FOURTEEN | Third Quarter of 2016 | 10/31/2016 | $333,969 |
| FIFTEEN | Fourth Quarter of 2016 | 1/31/2017 | $277,681 |
| SIXTEEN | First Quarter of 2017 | 4/30/2017 | $309,702 |
| SEVENTEEN | Second Quarter of 2017 | 7/31/2017 | $345,094 |
| EIGHTEEN | Third Quarter of 2017 | 10/31/2017 | $150,989 |

COUNT NINETEEN

[26 U.S.C. § 7212(a)]

A.   **INTRODUCTORY ALLEGATIONS**

19.   The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 7 and 10 through 17 of this Indictment as though fully set forth herein.

20.   In or about September 2016, the IRS initiated a collection action relating to GBUS's failure to file its quarterly employment tax returns (Forms 941) and pay over to the IRS payroll taxes that were due and owing, including federal income taxes and FICA taxes that GBUS had withheld (collectively, "trust fund taxes") from GBUS employees' paychecks.

21.   On or about October 7, 2016, an IRS Revenue Officer ("IRS RO-1") spoke with defendant MICHAEL JOHN AVENATTI ("AVENATTI") and other GBUS employees regarding the IRS's collection action and advised them that since approximately September 2015 GBUS had not paid over to the IRS any federal payroll taxes.

22.   On or about June 26, 2017, IRS RO-1 filed a notice of federal tax lien against GBUS in King County in the State of Washington.  The federal tax lien indicated that GBUS owed the IRS approximately $4,998,227 in unpaid federal payroll taxes.  A copy of the federal tax lien notice was also mailed to GBUS.

23.   Between in or about August 2017 and in or about January 2018, IRS RO-1 issued levy notices to a number of financial institutions and companies associated with GBUS.  The levy notices indicated that GBUS owed the IRS as much as approximately $5,210,769. Each levy notice required the recipient of the levy notice to turn over to the United States Treasury GBUS's property and rights to

property, such as money, credits, and bank deposits, that the recipient of the levy had or was already obligated to pay to GBUS. Banks, savings and loans, and credit unions were obligated to hold any funds subject to the levy notices for 21 days before sending payment to the United States Treasury.  Copies of the levy notices issued by IRS RO-1 were mailed to GBUS.

24.  Beginning as early as in or about August 2017, defendant AVENATTI knew that the IRS had issued levies to certain financial institutions at which GBUS maintained bank accounts.

**B.   THE ATTEMPT TO OBSTRUCT AND IMPEDE THE ADMINISTRATION OF THE INTERNAL REVENUE LAWS**

25.  Beginning on or about October 7, 2016, and continuing until at least in or around September 2018, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendant AVENATTI corruptly obstructed and impeded, and corruptly endeavored to obstruct and impede, the due administration of the internal revenue laws of the United States.

26.  The attempt to obstruct and impede the due administration of the internal revenue laws of the United States operated, in substance, in the following manner:

a.   On or about October 7, 2016, defendant AVENATTI made false statements to IRS RO-1 in connection with the IRS's collection action, including that:  (i) defendant AVENATTI was not personally involved in GBUS's finances; and (ii) defendant AVENATTI was unaware that since approximately September 2015 GBUS had failed to pay over to the IRS any federal payroll taxes.  In truth and in fact, as defendant AVENATTI then well knew, (i) defendant AVENATTI was personally involved in GBUS's finances in that he had authority to

approve payments on behalf of GBUS and had control over GBUS's bank accounts; and (ii) defendant AVENATTI was aware that since approximately September 2015 GBUS had failed to pay over to the IRS any federal payroll taxes because, among other reasons, on or about November 5, 2015, GBUS's controller had sent defendant AVENATTI an email explaining to defendant AVENATTI the "implications" of GBUS not paying to the IRS its payroll taxes in a timely manner, and, between in or about September 2015 and in or about October 2016, defendant AVENATTI had refused to authorize GBUS to pay over to the IRS the federal payroll taxes that GBUS had withheld from its employees' paychecks.

b.   In order to further obstruct and impede the IRS's collection action and the IRS's efforts to collect the payroll taxes that GBUS owed to the IRS, defendant AVENATTI directed GBUS employees to stop depositing cash receipts from the Tully's stores into GBUS KeyBank Account 6193, which defendant AVENATTI knew was already subject to IRS levy notices, and instructed GBUS employees to instead deposit all cash receipts from Tully's stores into a little-used Bank of America account for a separate entity defendant AVENATTI controlled, GB Auto.  Defendant AVENATTI did so by, among other acts, the following:

i.   In or about September 2017, defendant AVENATTI directed and instructed a GBUS employee ("GBUS Employee 1") to tell the Tully's stores that the stores could no longer make cash deposits into GBUS KeyBank Account 6193 and should hold all of the stores' cash deposits.

ii.   On or about September 7, 2017, defendant AVENATTI sent GBUS Employee 1 a text message containing the bank

account information for the GB Auto account at Bank of America (the "GB Auto Account"), in order to cause the cash deposits from the Tully's stores to be made into the GB Auto Account.

iii. On or about September 18, 2017, after receiving a text message from GBUS Employee 1 asking if the Tully's stores were able to deposit at KeyBank yet, defendant AVENATTI responded via text message "Not yet but hopefully in next two days. Can you collect deposits tmrw and deposit pls?"

iv. On or about September 28, 2017, defendant AVENATTI sent a text message to GBUS Employee 1 and another GBUS employee ("GBUS Employee 2"), asking, "When are we depositing again?" and, later that same day, another text message, stating, "It is important that these deposits be made regularly. Thanks."

v. Between on or about September 7, 2017, and in or about December 2017, GBUS Employee 1, acting at defendant AVENATTI's direction, made approximately 27 cash deposits totaling approximately $859,784 into the GB Auto Account. After approximately 24 of the cash deposits, GBUS Employee 1 sent defendant AVENATTI a text message attaching a photograph of the deposit slip.

c. In order to further obstruct and impede the IRS's collection action and the IRS's efforts to collect the payroll taxes that GBUS owed to the IRS, defendant AVENATTI caused GBUS's credit card processing company, TSYS Merchant Solutions ("TSYS"), to change the company name, Employer Identification Number ("EIN"), and bank account information associated with GBUS's merchant credit card processing accounts ("merchant accounts"), which defendant AVENATTI knew were already subject to IRS levy notices. Defendant AVENATTI did so by, among other acts, the following:

i.   On or about September 28, 2017, defendant AVENATTI received an email from GBUS Employee 2, which stated, among other things, "9.25.17 tsys – $22,135.19 IRS levy."

ii.   On or about September 29, 2017, defendant AVENATTI received an email from GBUS Employee 2 titled "Levies," which stated that "IRS took as [sic] additional $23,763.02 from tsys yesterday."

iii. On or about September 29, 2017, defendant AVENATTI directed a TSYS representative ("TSYS Rep. 1") to change the company name associated with the merchant accounts from "Global Baristas US LLC" to "Global Baristas, LLC" and to change the EIN from GBUS's EIN to GB LLC's EIN.

iv.   On or about October 2, 2017, defendant AVENATTI sent TSYS Rep. 1 an email regarding changes to the merchant accounts and said "we need this done ASAP."

v.   On or about October 3, 2017, defendant AVENATTI entered into a new Merchant Transaction Processing Agreement with TSYS on behalf of GB LLC.

vi.   On or about October 3, 2017, defendant AVENATTI and EA Employee 1 opened a new bank account, GB LLC Account 3730, for GB LLC at CB&T in Orange County, California.  Later that day, EA LLP Employee 1 emailed TSYS Rep. 1 the bank account and routing number for GB CB&T Account 3730, which was to be the new bank account into which the proceeds of the credit card transactions were to be deposited.

d.   In order to further obstruct and impede the IRS's collection action and the IRS's efforts to collect the payroll taxes that GBUS owed to the IRS, in or about December 2017, after TSYS

closed GBUS and GB LLC's merchant accounts, defendant AVENATTI caused
GBUS to open new merchant accounts with Chase for the Tully's stores
under the name GB LLC and directed Chase to deposit all credit card
receipts in to GB LLC Account 3730.

     e.   In order to further obstruct and impede the IRS's
efforts to collect the payroll taxes that GBUS owed to the IRS,
defendant AVENATTI changed the name of the contracting party on
various contracts with The Boeing Company ("Boeing"), which had
agreed to allow GBUS to operate Tully's stores at Boeing facilities
in Washington.  Defendant AVENATTI did so by, among other acts, the
following:

          i.   In or about November 2016, approximately one
month after defendant AVENATTI learned of the IRS's collection
action, defendant AVENATTI caused the contracting party's name on a
contract with Boeing to be changed from "Global Baristas US LLC" to
"GB Hospitality LLC," even though, as defendant AVENATTI then well
knew, GBUS operated the Tully's stores at the Boeing facilities and
"GB Hospitality LLC" had never been registered with any government
agency and had never operated.

          ii.  In or about September 2017 and in or about
October 2017, after IRS RO-1 had issued levy notices to Boeing and
numerous financial institutions at which GBUS maintained accounts,
defendant AVENATTI, having agreed on behalf of GBUS to sell Boeing
two Tully's coffee kiosks and other Tully's equipment in exchange for
a payment from Boeing of approximately $155,010 and forgiveness of
certain debts, directed a Boeing attorney to change the seller's name
from "GB Hospitality, LLC" to "Global Baristas, LLC" on the two bills
of sales relating to the transaction.  Defendant AVENATTI further

instructed Boeing to transfer the approximately $155,010 payment to EA Trust Account 8671, rather than to GBUS's bank account. Defendant AVENATTI then transferred the approximately $155,010 payment from EA Trust Account 8671 to A&A Account 0661, from which defendant AVENATTI used a substantial portion of the proceeds of the sale for defendant AVENATTI's personal purposes, including to: (1) transfer approximately $15,000 to a personal bank account; (2) pay approximately $13,073 for rent at defendant AVENATTI's residential apartment in Los Angeles, California; and (3) pay approximately $8,459 that defendant AVENATTI owed to Neiman Marcus.

      f.    After learning of the IRS's collection action, defendant AVENATTI used GBUS funds that should and could have been used to pay over to the IRS federal incomes taxes and FICA taxes that had been withheld from GBUS employees' paychecks for his own personal benefit and the benefit of other entities defendant AVENATTI controlled, including, but not limited to, the following:

      i.    Between in or about October 2016 and in or about December 2017, defendant AVENATTI caused a net of approximately $1.6 million to be transferred from GBUS's and GB LLC's bank accounts to bank accounts associated with defendant AVENATTI's other companies, namely, A&A and EA LLP.

      ii.    In order to lull Client 1 and prevent Client 1 from discovering that defendant AVENATTI had embezzled Client 1's portion of the $4,000,000 settlement payment from the County of Los Angeles, defendant AVENATTI used GBUS funds, including credit card receipts from Tully's stores that Chase deposited into GB LLC Account 3730, to make the following additional payments to Client 1:

1              (I)  On or about January 19, 2018, defendant

2   AVENATTI used GBUS funds, which had been transferred from GB LLC

3   Account 3730 and/or KeyBank Account 6193 to EA Trust Account 3714, to

4   make an approximately $1,900 payment to Client 1.

5              (II) On or about February 15, 2018, defendant

6   AVENATTI used GBUS funds, which had been transferred from GB LLC

7   Account 3730 and/or GBUS KeyBank Account 6193 to EA Trust Account

8   4613, to make an approximately $1,900 payment to Client 1.

9              iii. In order to lull Client 2 and prevent Client 2

10  from discovering that defendant AVENATTI had embezzled Client 2's

11  portion of the initial $2,750,000 settlement payment from Individual

12  1, defendant AVENATTI used GBUS funds, including credit card receipts

13  from Tully's stores that Chase deposited into GB LLC Account 3730, to

14  make the following additional payments to Client 2:

15             (I)  On or about January 16, 2018, defendant

16  AVENATTI used GBUS funds, which had been transferred from GB LLC

17  Account 3730 and/or GBUS KeyBank Account 6193 to EA Trust Account

18  3714, to make an approximately $16,000 payment to Client 2.

19             (II) On or about February 20, 2018, defendant

20  AVENATTI used GBUS funds, which had been transferred from GB LLC

21  Account 3730 and/or GBUS KeyBank Account 6193 to EA Trust Account

22  4613, to make an approximately $16,000 payment to Client 2.

23

24

25

26

27

28

COUNTS TWENTY THROUGH TWENTY-THREE

[26 U.S.C. § 7203]

**A.    INTRODUCTORY ALLEGATIONS**

27.   The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 7, 10 through 17, 20 through 24, and 26 of this Indictment as though fully set forth herein.

28.   On or about October 15, 2010, defendant MICHAEL JOHN AVENATTI ("AVENATTI") filed his U.S. Individual Income Tax Return (Form 1040) for the 2009 calendar year, which claimed defendant AVENATTI had total income of $1,939,942 and that defendant AVENATTI owed the IRS approximately $569,630 in taxes for the 2009 calendar year.  Defendant AVENATTI, however, did not pay the remaining tax due for the 2009 calendar year until November 2015, when he sold his residence in Laguna Beach, California, upon which there was an IRS tax lien.

29.   On or about October 11, 2011, defendant AVENATTI filed his U.S. Individual Income Tax Return (Form 1040) for the 2010 calendar year, which claimed defendant AVENATTI had total income of $1,154,800 and that defendant AVENATTI owed the IRS approximately $281,786 in taxes for the 2010 calendar year.  Defendant AVENATTI, however, did not pay the remaining taxes due to the IRS for the 2010 calendar year until November 2015, when he sold his residence in Laguna Beach, California, upon which there was an IRS tax lien.

30.   The 2010 Form 1040 was the last U.S. Individual Income Tax Return defendant AVENATTI filed with the IRS.

**B.    THE WILLFUL FAILURES TO FILE TAX RETURNS**

31.   During the calendar years set forth below, defendant AVENATTI, who resided in Orange and Los Angeles Counties, within the

36

Central District of California, had and received gross income in
excess of the amounts ("threshold gross income amounts") set forth
below.  By reason of such gross income, defendant AVENATTI was
required by law, following the close of each of the calendar years
set forth below and on or before the dates set forth below ("due
dates"), to make an income tax return to the IRS Center, at Fresno,
California, to a person assigned to receive returns at the local
office of the IRS in the Central District of California, or to
another IRS officer permitted by the Commissioner of the Internal
Revenue, stating specifically the items of his gross income and any
deductions and credits to which he was entitled.  Well knowing and
believing all of the foregoing, defendant AVENATTI willfully failed,
on or about the due dates set forth below, in the Central District of
California and elsewhere, to make an income tax return.

| COUNT | CALENDAR YEAR | THRESHHOLD GROSS INCOME AMOUNT | DUE DATE |
|---|---|---|---|
| TWENTY | 2014 | $20,300 | October 15, 2015, pursuant to a request for an automatic extension of time filed on defendant AVENATTI's behalf |
| TWENTY-ONE | 2015 | $20,600 | October 17, 2016, pursuant to a request for an automatic extension of time filed on defendant AVENATTI's behalf |
| TWENTY-TWO | 2016 | $20,700 | April 15, 2017 |
| TWENTY-THREE | 2017 | $20,800 | April 16, 2018 |

COUNTS TWENTY-FOUR THROUGH TWENTY-SIX

[26 U.S.C. § 7203]

A.   **INTRODUCTORY ALLEGATIONS**

32.   The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 7, 10 through 17, 20 through 24, 26, and 28 through 30 of this Indictment as though fully set forth herein.

33.   On or about March 17, 2014, EA LLP filed its 2011 U.S. Return of Partnership Income federal tax return (Form 1065), and defendant MICHAEL JOHN AVENATTI ("AVENATTI") signed the return on or about March 12, 2014, as the general partner or member manager.   The return listed A&A as the designated Tax Matters Partner ("TMP") before the IRS, and defendant AVENATTI as the TMP representative.

34.   On or about October 8, 2014, EA LLP filed its 2012 U.S. Return of Partnership Income federal tax return (Form 1065), and defendant AVENATTI signed the return on or about October 1, 2014, as the general partner or member manager.   The return listed A&A as the designated TMP before the IRS.

35.   The 2012 Form 1065 for EA LLP was the last U.S. Return of Partnership Income for EA LLP filed with the IRS.

B.   **THE WILLFUL FAILURES TO FILE TAX RETURNS**

36.   During the calendar years set forth below, defendant AVENATTI conducted a business as a partnership under the name of EA LLP, with its principal place of business in Orange County, within the Central District of California.   Defendant AVENATTI therefore was required by law, following the close of each of the calendar years set forth below and on or before the dates set forth below ("due dates"), to make, for and on behalf of the partnership, a partnership return of income to the IRS Center, at Ogden, Utah, to a person

assigned to receive returns at the local office of the IRS in the
Central District of California, or to another IRS officer permitted
by the Commissioner of the Internal Revenue, stating specifically the
items of the partnership's gross income and the deductions and
credits allowed by law.  Well knowing and believing all of the
foregoing, defendant AVENATTI willfully failed, on or about the due
dates set forth below, in the Central District of California and
elsewhere, to make a partnership return.

| COUNT | CALENDAR YEAR | DUE DATE |
|-------|---------------|----------|
| TWENTY-FOUR | 2015 | September 15, 2016, pursuant to a request for an automatic extension of time filed on EA LLP's behalf. |
| TWENTY-FIVE | 2016 | September 15, 2017, pursuant to a request for an automatic extension of time filed on EA LLP's behalf. |
| TWENTY-SIX | 2017 | March 15, 2018. |

COUNTS TWENTY-SEVEN THROUGH TWENTY-NINE

[26 U.S.C. § 7203]

**A.   INTRODUCTORY ALLEGATIONS**

37.   The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 7, 10 through 17, 20 through 24, 26, 28 through 30, and 33 through 35 of this Indictment as though fully set forth herein.

38.   On or about September 15, 2010, defendant MICHAEL JOHN AVENATTI ("AVENATTI") filed a 2009 U.S. Income Tax Return for an S Corporation (Form 1120S) for A&A, which claimed A&A had total income of $3,391,224 and ordinary business income of $1,578,558 for the 2009 calendar year.  The return listed defendant AVENATTI as the President of A&A.

39.   On or about September 30, 2011, defendant AVENATTI filed a 2010 U.S. Income Tax Return for an S Corporation (Form 1120S) for A&A, which claimed A&A had total income of $1,421,028 and ordinary business income of $821,634 for the 2010 calendar year.  The return listed defendant AVENATTI as the President of A&A.

40.   The 2010 Form 1120S for A&A was the last U.S. Income Tax Return for an S Corporation (Form 1120S) that defendant AVENATTI filed for A&A with the IRS.

**B.   THE WILLFUL FAILURE TO FILE TAX RETURN**

41.   During the calendar years set forth below, defendant AVENATTI was the President and CEO of A&A, with its principal place of business in Orange County, within the Central District of California.  Defendant AVENATTI therefore was required by law, following the close of each of the calendar years set forth below and on or before the dates set forth below ("due dates"), to make an

income tax return, for and on behalf of the corporation, to the IRS Center, at Ogden, Utah, to a person assigned to receive returns at the local office of the IRS in the Central District of California, or to another IRS officer permitted by the Commissioner of the Internal Revenue, stating specifically the items of the corporation's gross income and the deductions and credits allowed by law.  Well knowing and believing all of the foregoing, defendant AVENATTI willfully failed, on or about the due dates set forth below, in the Central District of California and elsewhere, to make an income tax return at the time required by law.

| COUNT | CALENDAR YEAR | DUE DATE |
|-------|---------------|----------|
| TWENTY-SEVEN | 2015 | September 15, 2016, pursuant to a request for an automatic extension of time filed on A&A's behalf. |
| TWENTY-EIGHT | 2016 | September 15, 2017, pursuant to a request for an automatic extension of time filed on A&A's behalf. |
| TWENTY-NINE | 2017 | March 15, 2018. |

COUNTS THIRTY AND THIRTY-ONE

[18 U.S.C. §§ 1344(1), 2(b)]

A.   **INTRODUCTORY ALLEGATIONS**

42.   The Grand Jury re-alleges and incorporates by reference paragraphs 1, 10, 28 through 30, 33 through 35, and 38 through 40 of this Indictment as though fully set forth herein.

43.   Between in or about January 2014 and in or about April 2016, defendant MICHAEL JOHN AVENATTI ("AVENATTI") operated and controlled GB LLC and EA LLP from EA LLP's offices in Newport Beach, California.

44.   At all times relevant to this Indictment, The Peoples Bank was a financial institution located in Biloxi, Mississippi, the accounts and deposits of which were insured by the Federal Deposit Insurance Corporation.

B.   **THE SCHEME TO DEFRAUD**

45.   Beginning in or about January 2014, and continuing through in or about April 2016, in Orange County, within the Central District of California, and elsewhere, defendant AVENATTI, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, executed and attempted to execute a scheme to defraud The Peoples Bank as to material matters.

46.   The fraudulent scheme operated, in substance, in the following manner:

a.   Between in or about January 2014 and in or about December 2014, defendant AVENATTI sought and obtained the following three loans from The Peoples Bank on behalf of the following companies that defendant AVENATTI controlled:

42

i.    In or about January 2014, defendant AVENATTI sought and obtained a $850,000 loan to GB LLC (the "January 2014 GB LLC Loan");

ii.   In or about March 2014, defendant AVENATTI sought and obtained a $2,750,000 loan to EA LLP (the "March 2014 EA LLP Loan"), from which defendant AVENATTI used approximately $884,166 to pay off the January 2014 GB LLC Loan; and

iii. In or about December 2014, defendant AVENATTI sought and obtained a $500,000 loan to EA LLP (the "December 2014 EA LLP Loan").

b.    In order to obtain the March 2014 EA LLP Loan and the December 2014 EA LLP Loan from The Peoples Bank, defendant AVENATTI omitted and concealed material facts, and provided The Peoples Bank with materially false financial information, including, but not limited to, false and fraudulent individual and partnership tax returns, and false and fraudulent balance sheets and financial statements, as described below.

c.    In support of the application for the March 2014 EA LLP Loan, defendant AVENATTI submitted to The Peoples Bank a 2011 U.S. Individual Income Tax Return (Form 1040) (the "Peoples Bank 2011 Form 1040") stating that defendant AVENATTI had an adjusted gross income for the 2011 calendar year of approximately $4,562,881, and had a tax due and owing to the IRS for the 2011 calendar year of approximately $1,506,707.  In truth and in fact, as defendant AVENATTI then well knew, defendant AVENATTI had not filed the Peoples Bank 2011 Form 1040 with the IRS, had not filed any 2011 U.S. Individual Income Tax Return with the IRS, and had not paid to the

1   IRS the $1,506,707 defendant AVENATTI purportedly owed for the 2011
2   calendar year.

3          d.    In support of the application for the March 2014 EA
4   LLP Loan, on or about March 11, 2014, defendant AVENATTI submitted to
5   The Peoples Bank a personal financial statement as of March 11, 2014,
6   in which defendant AVENATTI failed to disclose to The Peoples Bank
7   that defendant AVENATTI still owed the IRS approximately $850,438 in
8   unpaid personal income taxes, plus interest and penalties, for the
9   2009 and 2010 calendar years.

10         e.    In support of the application for the March 2014 EA
11  LLP Loan, on or about March 11, 2014, defendant AVENATTI submitted to
12  The Peoples Bank a Balance Sheet for January 2014 through March 10,
13  2014 for EA LLP, which stated, among other things, that EA LLP had
14  approximately $508,299 in its operating account, EA Account 8461, as
15  of March 10, 2014.  In truth and in fact, as defendant AVENATTI then
16  well knew, the balance in EA Account 8461 as of March 10, 2014, was
17  approximately $43,013.

18         f.    In support of the application for the March 2014 EA
19  LLP Loan, on or about March 13, 2014, defendant AVENATTI submitted to
20  The Peoples Bank a 2012 U.S. Partnership Return (Form 1065) for EA
21  LLP (the "Peoples Bank 2012 Form 1065"), which stated that in the
22  2012 calendar year EA LLP had total income of approximately
23  $11,426,021, and ordinary business income of approximately
24  $5,819,458.  In truth and in fact, as defendant AVENATTI then well
25  knew, the Peoples Bank 2012 Form 1065, had not been filed with the
26  IRS.  Rather, in or about October 2014, defendant AVENATTI caused a
27  different 2012 U.S. Partnership Return (Form 1065) to be filed with

28

44

the IRS (the "IRS 2012 Form 1065"), which differed materially from the Peoples Bank 2012 EA 1065 in the following ways:

        i.   The Peoples Bank 2012 Form 1065 stated that in the 2012 calendar year EA LLP had total income of approximately $11,426,021, whereas the IRS 2012 Form 1065 stated that in the 2012 calendar year EA LLP had gross receipts and total income of approximately $6,212,605.

        ii.   The Peoples Bank 2012 Form 1065 stated that in the 2012 calendar year EA LLP had ordinary business income of approximately $5,819,458, whereas the IRS 2012 Form 1065 stated that EA LLP had an ordinary business loss of approximately $2,128,849.

        g.   In reliance on the false and fraudulent information defendant AVENATTI submitted to The Peoples Bank in support of the March 2014 EA LLP Loan, on or about March 14, 2014, The Peoples Bank approved the March 2014 EA LLP Loan and transferred approximately $1,824,584 to EA Account 8461.

        h.   In support of the application for the December 2014 EA LLP Loan, on or about November 16, 2014, defendant AVENATTI submitted to The Peoples Bank a Balance Sheet for January 2014 through September 2014 for EA LLP, which stated, among other things, that EA LLP had approximately $712,729 in EA Account 8461 as of September 30, 2014. In truth and in fact, as defendant AVENATTI then well knew, the balance in EA Account 8461 as of September 30, 2014, was approximately $27,710.

        i.   In support of the application for the December 2014 EA LLP Loan, on or about November 22, 2014, defendant AVENATTI submitted to The Peoples Bank a personal financial statement as of November 1, 2014, in which defendant AVENATTI failed to disclose to The Peoples

1  Bank that defendant AVENATTI still owed the IRS approximately

2  $850,438 in unpaid personal income taxes, plus interest and

3  penalties, for the 2009 and 2010 calendar years.

4        j.   In support of the application for the December 2014 EA

5  LLP Loan, on or about December 1, 2014, defendant AVENATTI submitted

6  to The Peoples Bank a 2012 U.S. Individual Income Tax Return (Form

7  1040) (the "Peoples Bank 2012 Form 1040"), stating that defendant

8  AVENATTI had total income for the 2012 calendar year of approximately

9  $5,423,099, and had paid to the IRS $1,600,000 in estimated tax

10  payments.  In truth and in fact, as defendant AVENATTI then well

11  knew, defendant AVENATTI had not filed the Peoples Bank 2012 Form

12  1040 with the IRS, had not filed any 2012 U.S. Individual Income Tax

13  Return with the IRS, and had not made any payments to the IRS towards

14  his 2012 individual tax liability.

15        k.   In support of the application for the December 2014 EA

16  LLP Loan, on or about December 1, 2014, defendant AVENATTI submitted

17  to The Peoples Bank a 2013 U.S. Individual Income Tax Return (Form

18  1040) (the "Peoples Bank 2013 Form 1040"), stating that defendant

19  AVENATTI had total income for the 2013 calendar year of approximately

20  $4,082,803, and had paid to the IRS approximately $1,250,000 in

21  estimated tax payments and approximately $103,511 in withholdings.

22  In truth and in fact, as defendant AVENATTI then well knew, defendant

23  AVENATTI had not filed the Peoples Bank 2013 Form 1040 with the IRS,

24  had not filed any 2013 U.S. Individual Income Tax Return with the

25  IRS, had not made any estimated tax payments to the IRS towards his

26  2013 individual tax liability, and did not have any tax withholdings

27  during the 2013 calendar year.

28

1.   In order to obtain the December 2014 EA LLP Loan, on or about December 12, 2014, defendant AVENATTI, on behalf of EA LLP, signed a commercial pledge agreement whereby EA LLP agreed to "Assignment of the First $500,000 Plus Interest of Settlement Proceeds in the Meridian related cases, said attorney's fees to be $10.8 million plus out of pocket costs for class counsel [EA LLP]." On or about March 31, 2015, after EA LLP received a $3,034,514 wire transfer from the trustee of the Meridian settlement, defendant AVENATTI concealed and did not disclose, and caused EA LLP to conceal and not disclose, the receipt of the funds to The Peoples Bank, and did not distribute and caused EA LLP not to distribute the first $500,000 to The Peoples Bank as defendant AVENATTI on behalf of EA LLP had agreed to do.

m.   In reliance on the false and fraudulent information defendant AVENATTI submitted to The Peoples Bank in support of the March 2014 EA LLP Loan and the December 2014 EA LLP Loan, on or about December 12, 2014, The Peoples Bank approved the December 2014 EA LLP Loan and transferred approximately $494,500 to EA Account 8461.

## C.   EXECUTIONS OF THE SCHEME TO DEFRAUD

47.   On or about the dates set forth below, in Orange County, within the Central District of California, and elsewhere, defendant AVENATTI, together with others known and unknown to the Grand Jury, executed the fraudulent scheme by committing and willfully causing others to commit the following acts:

| COUNT | DATE | ACT |
|---|---|---|
| THIRTY | 3/14/2014 | Receipt of March 2014 EA LLP Loan proceeds in the amount of approximately $1,824,584. |

| COUNT | DATE | ACT |
|---|---|---|
| THIRTY-ONE | 12/12/2014 | Receipt of December 2014 EA LLP Loan proceeds in the amount of approximately $494,500. |

COUNT THIRTY-TWO

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

48.   The Grand Jury re-alleges and incorporates by reference paragraphs 1, 10, 28 through 30, 33 through 35, 38 through 40, and 43 through 46 of this Indictment as though fully set forth herein.

49.   On or about December 1, 2014, in Orange County, within the Central District of California, and elsewhere, defendant MICHAEL JOHN AVENATTI ("AVENATTI") knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant AVENATTI knew belonged to another person, namely, the name and preparer tax identification number ("PTIN") of M.H., during and in relation to the offense of Bank Fraud, a felony violation of Title 18, United States Code, Section 1344(1), as charged in Count Thirty-One of this Indictment.

COUNT THIRTY-THREE

[18 U.S.C. §§ 152(3), 2(b)]

**A.    INTRODUCTORY ALLEGATIONS**

50.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 7 of this Indictment as though fully set forth herein.

51.    In or about February 2016, J.F., a former partner at EA LLP, filed an arbitration claim against EA LLP and defendant MICHAEL JOHN AVENATTI ("AVENATTI").  In or about February 2017, the arbitration panel ordered the depositions of defendant AVENATTI and EA Employee 1 to take place on March 3, 2017.

52.    On or about March 1, 2017, a creditor of EA LLP, filed an involuntary Chapter 11 bankruptcy petition against EA LLP in the Middle District of Florida.  By law, the filing of the bankruptcy petition created an automatic stay under Section 362 of Title 11 of the arbitration between J.F. and EA LLP and defendant AVENATTI.

53.    On or about March 8, 2017, in response to an emergency motion filed by J.F. for relief from the automatic stay, the Bankruptcy Court in the Middle District of Florida ordered that unless EA LLP consented to the bankruptcy by March 10, 2017, the Court would grant relief from the automatic stay and thereby allow the arbitration to proceed.

54.    On or about March 10, 2017, EA LLP consented to an order for relief under Chapter 11 of Title 11 and, as a result, EA LLP became a debtor in possession in bankruptcy.

55.    On or about April 11, 2017, defendant AVENATTI certified and declared under penalty of perjury as the managing partner of EA LLP that the United States Trustee Financial Requirements Checklist,

1    Certifications, and any Attachments Thereto, were true and correct to
2    the best of his knowledge and belief.  Defendant AVENATTI on behalf
3    of EA LLP further certified that he had "read and underst[ood] the
4    United States Trustee Chapter 11 'Operating Guidelines and Reporting
5    Requirements for Debtors in Possession and Trustees'" and "agree[d]
6    to perform in accordance with said guidelines and requirements."
7    Specifically, defendant AVENATTI certified as the managing partner of
8    EA LLP that he understood, among other things, that EA LLP was
9    required to: (a) close all pre-petition bank accounts controlled by
10   the debtor, EA LLP; (b) immediately open new debtor-in-possession
11   ("DIP") operating, payroll, and tax accounts; and (c) deposit all
12   business revenues into the DIP operating account.

13       56.  On or about April 20, 2017, the EA LLP Chapter 11
14   bankruptcy was transferred from the Middle District of Florida to the
15   Central District of California as In re: Eagan Avenatti LLP, bearing
16   case number 8:17-bk-11961-CB.  In the bankruptcy case, EA LLP was the
17   debtor in possession, and all property and assets in which the debtor
18   had any ownership or interest at the time of the filing of the
19   bankruptcy petition as well as any interest in property that the
20   debtor acquired after the commencement of the bankruptcy case was the
21   "bankruptcy estate," and was under the management and control of the
22   debtor in possession.

23       57.  On or about May 12, 2017, the Office of the United States
24   Trustee in the Central District of California provided defendant
25   AVENATTI the Guidelines and Requirements for Chapter 11 Debtors in
26   Possession (the "Guidelines and Requirements"), which required EA LLP
27   to close all existing bank accounts and open new DIP general,

28

payroll, and tax bank accounts, and to file a declaration regarding EA LLP's compliance with the Guidelines and Requirements.

58.  On or about May 30, 2017, defendant AVENATTI signed under penalty of perjury as the managing partner of EA LLP a "Declaration of Debtor Regarding Compliance with the United States Trustee Guidelines and Requirements for Chapter 11 Debtors in Possession," which included the following information:

a.  Defendant AVENATTI, on behalf of EA LLP, confirmed that EA LLP had closed all pre-petition bank accounts, and provided the account information for EA LLP's three new DIP bank accounts.

b.  Defendant AVENATTI, on behalf of EA LLP, provided the United States Trustee with evidence that EA LLP had closed EA LLP's prior general account and opened three new DIP bank accounts.

c.  In response to the requirement that EA LLP list the last two years for which EA LLP filed federal and state tax returns, defendant AVENATTI, on behalf of EA LLP, stated that neither "[t]he Debtor nor its accountant has copies of its 2014 and 2015 federal or state income tax returns.  The Debtor will seek to obtain copies of them from the IRS and the State of California."

59.  Pursuant to the Guidelines and Requirements, EA LLP had additional and ongoing requirements during the course of the bankruptcy, including the following:

a.  Before any insiders, including the owners, partners, officers, directors, and shareholders of EA LLP and relatives of insiders, could receive compensation from the bankruptcy estate, EA LLP was required to provide notice to the creditors and the United States Trustee.  No such compensation could be paid to any insiders until 15 days after service of the notice and (i) no objection had

been received by the Bankruptcy Court; or (ii) if an objection had been received, the Bankruptcy Court had resolved the objection.

b.    EA LLP was required to file Monthly Operating Reports ("MOR") to include, among other things, "information regarding bank accounts over which the debtor ha[d] possession, custody, control, access or signatory authority, even if the account [was] not in the debtor's name and whether or not the account contain[ed] only post-petition income."  EA LLP was "required to report all of [its] financial information in the MOR."

60.  From on or about May 25, 2017, through on or about February 15, 2018, defendant AVENATTI signed under penalty of perjury and filed MORs for EA LLP for eleven months, namely, March 2017 through January 2018, inclusive, which included the following information:

a.    The first page of each MOR stated that "All receipts must be deposited into the general account," and required EA LLP to itemize: (i) the beginning balance of the general account for the month at issue; (ii) all receipts EA LLP obtained during the month; (iii) all of the disbursements EA LLP made during the month, including transfers to other DIP accounts; and (iv) the ending balance of the general account for the month at issue.

b.    Each MOR required EA LLP to include all receipts and expenditures during the monthly reporting period, as well as the cumulative post-petition amounts.  On all eleven MORs that defendant AVENATTI signed under penalty of perjury on behalf of EA LLP, defendant AVENATTI claimed zero payroll was made to insiders. Immediately above the penalty of perjury declaration, each MOR sought answers to several questions, including whether EA LLP provided compensation or remuneration to any officers, directors, principals,

1  or other insiders without appropriate authorization during the

2  reporting period.  On all eleven MORs that defendant AVENATTI signed

3  under penalty of perjury on behalf of EA LLP, defendant AVENATTI

4  answered "no" to the question whether any compensation or

5  remuneration was made to any officers, directors, principals, or

6  other insiders.

7  **B.   FALSE DECLARATION**

8       61.  On or about June 19, 2017, in Orange County, within the

9  Central District of California, defendant AVENATTI knowingly and

10  fraudulently made and willfully caused to be made a materially false

11  declaration and statement under penalty of perjury within the meaning

12  of Title 28, United States Code, Section 1746, in and in relation to

13  a case under Title 11 of the United States Code, namely, In re: Eagan

14  Avenatti LLP, No. 8:17-bk-11961-CB in United States Bankruptcy Court

15  for the Central District of California, by submitting and declaring

16  under penalty of perjury to be true and complete the Monthly

17  Operating Report for EA LLP for the period May 1, 2017, through

18  May 30, 2017 (the "May 2017 MOR"), in which defendant AVENATTI, as

19  the Managing Partner for EA LLP, falsely stated that EA LLP's

20  "Receipts During Current Period; Accounts Receivable – Post Filing"

21  were $409,953.70, whereas, in truth and in fact, as defendant

22  AVENATTI then well knew, EA LLP's receipts during the May 2017 MOR

23  period, accounts receivable – post filing were greater than

24  $409,953.70.

25

26

27

28

54

COUNT THIRTY-FOUR

[18 U.S.C. § 152(3), 2(b)]

62.   The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 7 and 51 through 60 of this Indictment as though fully set forth herein.

63.   On or about October 16, 2017, in Orange County, within the Central District of California, defendant MICHAEL JOHN AVENATTI ("AVENATTI") knowingly and fraudulently made and willfully caused to be made a materially false declaration and statement under penalty of perjury within the meaning of Title 28, United States Code, Section 1746, in and in relation to a case under Title 11 of the United States Code, namely, In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB in United States Bankruptcy Court for the Central District of California, by submitting and declaring under penalty of perjury to be true and complete the Monthly Operating Report for EA LLP for the period September 1, 2017, through September 30, 2017 ("September 2017 MOR"), in which defendant AVENATTI, as the Managing Partner for EA LLP, falsely stated that EA LLP's "Receipts During Current Period; Accounts Receivable – Post Filing" were $829,635.28, whereas, in truth and in fact, as defendant AVENATTI then well knew, EA LLP's receipts during the September 2017 MOR period, accounts receivable – post filing were greater than $829,635.28.

COUNT THIRTY-FIVE

[18 U.S.C. § 152(3), 2(b)]

64.   The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 7 and 51 through 60 of this Indictment as though fully set forth herein.

65.   On or about February 15, 2018, in Orange County, within the Central District of California, defendant MICHAEL JOHN AVENATTI ("AVENATTI") knowingly and fraudulently made and willfully caused to be made a materially false declaration and statement under penalty of perjury within the meaning of Title 28, United States Code, Section 1746, in and in relation to a case under Title 11 of the United States Code, namely, In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB in United States Bankruptcy Court for the Central District of California, by submitting and declaring under penalty of perjury to be true and complete the Monthly Operating Report for EA LLP for the period January 1, 2018, through January 31, 2018 ("January 2018 MOR"), in which defendant AVENATTI, as the Managing Partner for EA LLP, falsely stated that EA LLP's "Receipts During Current Period; Accounts Receivable -- Post Filing" were $232,221.11, whereas, in truth and in fact, as defendant AVENATTI then well knew, EA LLP's receipts during the January 2018 MOR period, accounts receivable - post filing were greater than $232,221.11.

COUNT THIRTY-SIX

[18 U.S.C. § 152(2)]

66.   The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 7 and 51 through 60 of this Indictment as though fully set forth herein.

67.   On or about June 12, 2017, in Orange County, within the Central District of California, defendant MICHAEL JOHN AVENATTI ("AVENATTI") knowingly and fraudulently made a false oath as to a material matter in and in relation to a case under Title 11 of the United States Code, namely, In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB in United States Bankruptcy Court for the Central District of California, in that defendant AVENATTI testified under oath at the Section 341(a) debtor's examination and stated "no" when asked whether the debtor, EA LLP, received any counsel fees from the Super Bowl NFL litigation.   In truth and in fact, as defendant AVENATTI well knew at the time he made the false oath, defendant AVENATTI and EA LLP had received fees from the Super Bowl NFL litigation, namely, two wire transfers totaling approximately $1,361,000, including attorneys' fees, on or about May 17, 2017.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

68.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Ten, Thirty, Thirty-One, or Thirty-Three through Thirty-Six of this Indictment.

69.   Defendant shall forfeit to the United States of America the following:

a.   all right, title, and interest in any and all property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of the offense, or property traceable to such proceeds; and

b.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

70.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in

value; or (e) has been commingled with other property that cannot be
divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1028, and 28 U.S.C. §2461(c)]

71.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 1028, and Title 28, United States Code, Section 2461(c), in the event of defendant's conviction of the offense set forth in Count Thirty-Two of this Indictment.

72.   Defendant, if so convicted, shall forfeit to the United States of America the following:

a.   All right, title and interest in any and all property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of the offense, and any property traceable thereto;

b.   Any personal property used or intended to be used to commit the offense; and

c.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

73.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and 1028(g), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the

1    court; (d) has been substantially diminished in value; or (e) has

2    been commingled with other property that cannot be divided without

3    difficulty.

4                                    A TRUE BILL

5

6                                    _____

7                                    Foreperson

8    NICOLA T. HANNA
     United States Attorney
9

10

11   LAWRENCE S. MIDDLETON
     Assistant United States Attorney
12   Chief, Criminal Division

13   RANEE A. KATZENSTEIN
     Assistant United States Attorney
14   Chief, Major Frauds Section

15   JULIAN L. ANDRÉ
     Assistant United States Attorney
16   Major Frauds Section

17   BRETT A. SAGEL
     Assistant United States Attorney
18   Santa Ana Branch Office

19

20

21

22

23

24

25

26

27

28