*Lodged Proposed Order*

1  HILARY POTASHNER (Bar No. 167060)
   Federal Public Defender
2  CUAUHTEMOC ORTEGA (Bar No. 257443)
   (E-Mail: Cuauhtemoc_Ortega@fd.org)
3  Chief Deputy Federal Public Defender
   GEORGINA WAKEFIELD (Bar No. 282094)
4  (E-Mail: Georgina_Wakefield@fd.org)
   Deputy Federal Public Defender
5  321 East 2nd Street
   Los Angeles, California 90012-4202
6  Telephone: (213) 894-2854
   Facsimile: (213) 894-0081

FILED
2019 MAY 14  PM 1: 57
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY: ___

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. SA CR No. 19-061-JVS |
| Plaintiff, | |
| v. | ***EX PARTE* APPLICATION FOR AN ORDER APPOINTING COUNSEL** |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Deputy Federal Public Defenders Georgina Wakefield and Cuauhtemoc Ortega hereby file this *ex parte* application for an order appointing counsel to represent Michael Avenatti in this case.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: May 14, 2019          By  */s/ GEORGINA WAKEFIELD*

GEORGINA WAKEFIELD
Deputy Federal Public Defender

1

# I. INTRODUCTION

Michael Avenatti respectfully requests that the Court appoint counsel to represent him without requiring that he submit a financial affidavit at this stage of the case.  To be clear, Mr. Avenatti is amenable to and requests an opportunity to contribute significantly to his representation.  However, he asks that the Court defer determination of the amount of contribution until the end of the case in light of the complexity of his financial situation and the case, along with the real and appreciable risks of self-incrimination given the nature of the charges in this case.

# II. FACTUAL AND PROCEDURAL HISTORY

On March 22, 2019, the United States Attorney's Office for the Central District of California filed a 198-page criminal complaint and affidavit against Mr. Avenatti alleging bank fraud in violation of 18 U.S.C. § 1344(1) and wire fraud in violation of 18 U.S.C. § 1343.  (Doc. No. 1.)  Mr. Avenatti was arrested in New York and made his initial appearance in the Southern District of New York on March 25, 2019.  (Doc. No. 13.)  Mr. Avenatti later made his initial appearance in the Central District of California.  (Doc. No. 10.)

On April 10, 2019, the government filed a 61-page indictment charging Mr. Avenatti with 36 counts of fraud, tax related crimes, false statement offenses, and aggravated identity theft.  (Doc. No. 16.)  The indictment also alleges two forfeiture counts.  (*Id.*)  Mr. Avenatti appeared without counsel for his arraignment.  (Doc. No. 23.)  The court (the Honorable Magistrate Judge John D. Early) appointed counsel for Mr. Avenatti for arraignment only and ordered the parties to schedule a hearing before this Court to address Mr. Avenatti's representation.  (*Id.*)

Mr. Avenatti is facing separate charges in the Southern District of New York.  *See United States v. Avenatti*, 19 Mag. 2927 (S.D.N.Y).  The United States Attorney's Office there filed a criminal complaint alleging a scheme to extort Nike USA, Inc.  The

1    intended loss amount alleged in the complaint is more than $20 million.  Arraignment

2    is scheduled for May 28, 2019.

3

4                              **III.  ARGUMENT**

5    **A.    The Court Should Appoint the Office of the Federal Public Defender to**

6            **Represent Mr. Avenatti in this Case Subject to an Order of**

7            **Contribution**

8            "In all criminal prosecutions, the accused shall enjoy the right . . . to have the

9    Assistance of Counsel for his defense." U.S. CONST. AMEND. VI.  Congress enacted the

10   Criminal Justice Act of 1964 to effectuate the Sixth Amendment guarantee of counsel.

11   The Act requires each district court to establish "a plan for furnishing representation for

12   any person financially unable to obtain adequate representation . . . ." 18 U.S.C. §

13   3006A.  The Central District of California has adopted a Local CJA Plan which has

14   been approved by the Ninth Circuit Judicial Council.  *See* General Order No. 13-09.

15   The Guide to Judiciary Policies and Procedures, approved by the Judicial Council of

16   the United States ("Guide"), provides direction to the court with respect to application

17   of the statute.[1]

18           The Guide indicates that a defendant is "financially unable to obtain counsel"

19   under the Act if his or her "net financial resources and income are insufficient to obtain

20   *qualified* counsel." Guide, Vol. VII, Pt. A, § 210.40.30(a)(emphasis added).  However,

21   even if a defendant's net resources and income are in excess of the amount needed to

22   cover the necessities of life, the court should find the defendant eligible for the

23   appointment of counsel and order contribution when those excess funds are insufficient

24   to pay fully for retained counsel.  *Id.* at § 210.40.40.  Mr. Avenatti submits that he falls

25

26

27   _____

28        [1] Volume 7, Part A, which provides the guidelines for administering the CJA, is
     available online at https://www.uscourts.gov/sites/default/files/vol_07a.pdf (last visited
     May 13, 2019).

                                        3

1    into the latter category of eligibility and requests an opportunity to contribute to his

2    representation.

3         The Guide provides that "[a]ny doubts as to eligibility should be resolved in the

4    defendant's favor; erroneous determinations of eligibility may be corrected at a later

5    time." *Id.* § 210.40.30(b). Application of the CJA to a defendant seeking counsel has a

6    constitutional dimension and forcing a defendant to go to trial pro se without

7    conducting an appropriate inquiry "constitutes a denial of that defendant's sixth

8    amendment right to counsel." *United States v. Harris*, 707 F.2d 653, 662 (2d Cir.),

9    *cert. denied*, 464 U.S. 997 (1983).

10        This Court has broad discretion in appointing counsel. The Guide indicates that

11   fact-finding concerning the person's eligibility for appointment of counsel should be

12   completed prior to the person's first appearance in court, unless it will result in undue

13   delay. Guide, Vol. VII, Pt. A, § 210.40.20(b). *The Guide also suggests that the court*

14   *may make a final determination regarding eligibility at the end of the case.*

15   Specifically, prior to sentencing, the court should consider pertinent information

16   contained in the Presentence Report, the court's intention with respect to fines and

17   restitution, and all other available data bearing on the person's financial condition in

18   order to make a final determination about whether the defendant then has funds

19   available to pay for some or all of the costs of representation. *Id.*, § 210.40.30(d). In

20   appropriate circumstances, the court should enter an order of reimbursement. *Id.*, §

21   210.40.30(d).

22        The CJA Form 23 (Financial Affidavit) is a tool that has been developed to aid a

23   court's inquiry into a defendant's financial status. However, the use of CJA Form 23 is

24   not mandatory. The Act does not require its use, but merely provides that the court

25   conduct an appropriate inquiry. 18 U.S.C. § 3006A; *see also United States v. Lexin*,

26   434 F.Supp.2d 836, 843-44 (S.D. Cal. 2006). The Central District's CJA Plan tracks

27   the language of the statute. *See* General Order No. 13-09 at page 9, § (IV)(d)(1) ("The

28   determination of eligibility for representation under the CJA is a judicial function to be

performed by a district judge or magistrate judge after making appropriate inquiries concerning the person's financial condition.").[2]

Counsel submits that this Court should appoint counsel without requiring Mr. Avenatti to submit the CJA Form 23 at this stage of the case. As indicated above, Mr. Avenatti is amenable to an order of contribution. However, it is requested that the Court make the determination as to the amount of contribution at the end of the case for the following reasons:

1. Providing a complete picture of Mr. Avenatti's finances at this stage of the proceeding would be a demanding and time-intensive effort. Mr. Avenatti is involved in several lawsuits requiring ongoing expense and financial responsibility. In addition to the New York criminal case, Mr. Avenatti is a party to several civil lawsuits–both personally and professionally–at various stages of the proceedings, including on appeal. He has continuing obligations to counsel on those cases and is uncertain as to the ongoing costs and expenses associated with that litigation. It would be difficult, if not impossible, to fully capture the ongoing liabilities and potential financial assets at stake in these other proceedings at any given moment. The Guide specifically permits the court to defer fact-finding regarding the eligibility for court-appointed representation when it would otherwise result in undue delay. Guide, Vol. VII, Pt. A, § 210.40.20(d).

2. Mr. Avenatti is in the difficult position of facing federal criminal charges and needing counsel on both coasts at the same time. This case in particular is complex and will require significant resources. The indictment charges Mr. Avenatti with 36 criminal counts and two forfeiture allegations. The government has identified the case as complex and estimates that its case-in-chief will be 15 trial days. (Doc. No. 18.) Counsel's understanding is that discovery is voluminous. Mr. Avenatti has tried to

---

[2] While the Guide indicates that relevant information bearing on a person's financial eligibility should be reflected on CJA Form 23, it has cautioned that the government should not participate in its preparation or seek to obtain information from it. Guide, Vol. VII, Pt. A, § 210.40.20.

secure private counsel over the course of the past month but has been unsuccessful due in large part to the government's forfeiture counts.  Trial is set for June 4, 2019.  Given the complexity and volume of this case, counsel should be appointed now to review discovery, advise Mr. Avenatti, and address the upcoming trial date.[3]

3.      In addition, Mr. Avenatti is concerned that the government will seek to use his statements against him in this or the New York case.  The indictment charges Mr. Avenatti with several fraud counts related to financial transactions spanning a nearly five-year period and with several tax counts related to Mr. Avenatti's businesses and personal income taxes.  The indictment also contains two forfeiture allegations, which seek to trace assets involved in or traceable to the criminal charges and forfeiture of such traceable assets.  Accordingly, the allegations and charges of the indictment raise issues which directly concern the status of Mr. Avenatti's finances.  While the case law permits filing the financial affidavit *in camera* in order to preserve a defendant's Fifth Amendment protection against self-incrimination when seeking the appointment of counsel, prosecutors and the public nonetheless attempt to unseal those documents. *See, e.g., United States v. Hyde*, 208 F.Supp.2d 1052 (N.D. Cal. 2002).

Accordingly, Mr. Avenatti requests that the court appoint counsel from the Office of the Federal Public Defender to represent him.  He agrees that he should contribute to his representation but requests that the Court defer determination of the exact amount of contribution until the end of the case.  By that time he will have greater certainty regarding the status of his New York case and representation, his other civil lawsuits, and his ongoing financial responsibilities.  The Court will have a clearer picture of its intention with respect to fines and restitution, if applicable, and the scope

---

[3] As the Court is no doubt aware, defendants spend significant resources on private counsel for complex document intensive cases like this one and sometimes exhaust their resources before the case is over.  When that happens, the court is in the position of appointing counsel who must start the case from scratch, requiring additional resources and sometimes delay.

of work done by appointed counsel.  In addition, the risk of self-incrimination posed by the information will be lessened at the end of the case.

## B.    The Government's Position

The government has indicated that it is opposed to appointing counsel without the CJA Form 23.  In support of its position, the government relies on *United States v. Ellsworth*, 547 F.2d 1096 (9th Cir. 1976).  In *Ellsworth*, the defendant claimed on appeal that he was impermissibly denied counsel when the trial court rejected his request for appointed counsel based on his refusal to fill out the CJA Form 23.  547 F.2d at 1097.  In upholding the lower court's decision, the Circuit noted that the CJA Form 23 was developed as a "useful tool" for the court's inquiry into one's income status.  *Id*. at 1098.  Without that information, the court held, the trial court was justified in concluding that the defendant had failed to carry his burden of establishing indigency.  547 F.2d at 1097-98.  Notably, the court did not hold that the Form CJA 23 is required for appointed counsel, nor that the information requested by the form must be provided *at the beginning of the case*.

*Ellsworth* is easily distinguishable from the request in this case.  First, unlike the defendant in *Ellsworth*, Mr. Avenatti is not claiming that he is entitled to appointed counsel at no cost to himself.  He is agreeing up front that he should contribute to his representation.  Nor is Mr. Avenatti refusing to provide any information to the court regarding his financial status.  He is simply requesting an opportunity to provide that information at the end of the case in light of reasons discussed above, which make this case uniquely distinct from the vast majority of cases involving a request for court appointed counsel.

Further, the Ninth Circuit has made clear since the *Ellsworth* opinion that the process for seeking appointed counsel is a matter solely between a defendant and the court.  The Circuit has repeatedly warned the government that it should not interject itself into that process because the government's exclusion is "a significant contributing

7

factor to the fairness of our system." *United States v. Wells*, 879 F.3d 900, 913 (9th Cir. 2018); *see also United States v. Feldman*, 788 F.2d 625, 626 (9th Cir. 1986) (declining to request briefing from the government on a novel CJA reimbursement claim because the Act "excludes the government from participation in the Act's compensation and reimbursement arrangements"). Permitting the government to participate, the Circuit has cautioned, might result in a system where to outcome of criminal trials would be determined by a defendant's ability to retain qualified counsel rather than the integrity of the fact-finding process. *Wells*, 879 F.3d at 913 (citing *United States v. Hartfield,* 513 F.2d 254, 258 (9th Cir. 1975), *abrogated on other grounds by United States v. Sneezer*, 900 F.2d 177 (9th Cir. 1990)). Thus, the government's position should be given very little, if any, weight in the Court's decision whether to grant the *ex parte* application.

## IV. CONCLUSION

For the foregoing reasons, Mr. Avenatti requests that the Court appoint counsel–namely Cuauhtemoc Ortega and Georgina Wakefield from the Office of the Federal Public Defender–to represent him in this case.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: May 14, 2019

By  */s/ GEORGINA WAKEFIELD*

GEORGINA WAKEFIELD
Deputy Federal Public Defender

8

1

**PROOF OF SERVICE**

2      I declare that I am a resident or employed in Orange County, California; that my

3   business address is the Office of the Federal Public Defender, 411 West Fourth Street,

4   Suite 7110, Santa Ana, California  92701-4598, Telephone No. (714) 338-4500; that I

5   am over the age of eighteen years; that I am not a party to the action entitled above; that

6   I am employed by the Federal Public Defender for the Central District of California,

7   who is a member of the Bar of the State of California, and at whose direction I served a

8   copy of the attached  **EX PARTE APPLICATION FOR AN ORDER**

9   **APPOINTING COUNSEL** on the following individual(s) by:

10      [X] Placing              [ ] Placing              [ ] Placing              [ ] Faxing
     same in a sealed         same in an               same in a sealed         same via facsimile
11   envelope for             envelope for hand        envelope for             machine addressed
     collection and           delivery addressed       collection and           as follows:
12   interoffice delivery     as follows:              mailing via the
     addressed as                                      United States Post
13   follows:                                          Office addressed as
                                                       follows:
14   Brett Sagel
15   Assistant United States Attorney
     411 W. Fourth Street, Ste. 8000
16   Santa Ana, CA 92701

17

18      This proof of service is executed at Santa Ana, California, on May 14, 2019.

19      I declare under penalty of perjury that the foregoing is true and correct to the best

20   of my knowledge.

21

22                              */s/ Rebecca V. Perez*                    .
                                **Rebecca V. Perez**
23

24

25

26

27

28