NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6683
     Facsimile: (213) 894-6269
     Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone:  (714) 338-3598
     Facsimile:  (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                  UNITED STATES DISTRICT COURT

               FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          SA CR No. 19-061-JVS

            Plaintiff,             JOINT REPORT

               v.                  Hearing Date: July 8, 2019
                                   Hearing Time: 9:00 a.m.
MICHAEL JOHN AVENATTI,             Location:   Courtroom of the
                                               Hon. James V. Selna
            Defendant.


     Pursuant to the Court's June 19, 2019, Minute Order (CR 43),

plaintiff United States of America, by and through its counsel of

record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Julian L. André and

///

///

Brett A. Sagel, and defendant MICHAEL JOHN AVENATTI, by and through his counsel of record, H. Dean Steward, hereby files their Joint Report.

Dated: July 1, 2019                    Respectfully submitted,

                                       NICOLA T. HANNA
                                       United States Attorney

                                       BRANDON D. FOX
                                       Assistant United States Attorney
                                       Chief, Criminal Division

                                            /s/ Julian L. André
                                       JULIAN L. ANDRÉ
                                       BRETT A. SAGEL
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

Dated: July 1, 2019                       /s/ via email authorization
                                       H. DEAN STEWARD

                                       Attorney for Defendant
                                       MICHAEL JOHN AVENATTI

**TABLE OF CONTENTS**

I.    THE COURT'S JUNE 19, 2019, MINUTE ORDER........................1

II.   GOVERNMENT'S DISCOVERY DISCLOSURES TO DATE....................2

      A.    USAO's Statement.......................................2

            1.    Documents and Interview Reports..................2

            2.    Digital Search Warrant Evidence..................3

      B.    Defendant's Statement..................................4

III.  OUTSTANDING DISCOVERY ISSUES..................................7

      A.    USAO's Statement.......................................7

            1.    Non-Search Warrant Evidence......................7

            2.    Digital Search Warrant Evidence..................8

            3.    Hard-Copy Search Warrant Evidence...............11

            4.    Reciprocal Discovery from Defendant.............12

      B.    Defendant's Statement.................................12

            1.    Non-Search Warrant Evidence.....................12

            2.    Digital Search Warrant Evidence.................12

            3.    Hard-Copy Search Warrant Evidence...............15

            4.    Reciprocal Discovery from Defendant.............15

IV.   PROPOSED TRIAL SCHEDULE......................................15

      A.    USAO's Proposed Trial Schedule........................15

      B.    Defendant's Proposed Trial Schedule...................16

            1.    Significant Discovery Has Yet to Be Produced....16

            2.    The Government May Supersede the Indictment.....17

            3.    Other Cases Pending Against the Defendant Will
                  Delay this Case.................................17

            4.    The Existing Trial Schedule of Defense Counsel..18

V.    LOGISTICAL ISSUES............................................19

      A.    The SDNY Extortion Case...............................19

           1.    Defendant's Statement.............................19

           2.    Government's Statement............................20

    B.    The SDNY Fraud Case...................................21

           1.    Defendant's Statement.............................21

           2.    USAO's Statement..................................21

VI.  ESTIMATED LENGTH OF TRIAL....................................22

    A.    USAO's Estimate.......................................22

    B.    Defendant's Estimate.................................22

VII. NEED FOR A TIME-QUALIFIED JURY...............................22

    A.    USAO's Position......................................22

    B.    Defendant's Position.................................22

VIII.    ADDITIONAL ISSUES TO ADDRESS AT STATUS CONFERENCE.......22

    A.    Defendant's Position.................................22

    B.    USAO's Position......................................23

**JOINT REPORT**

**I.  THE COURT'S JUNE 19, 2019, MINUTE ORDER**

On June 19, 2019, the Court issued a minute order (CR 43) requiring the United States Attorney's Office for the Central District of California (the "USAO") and defendant MICHAEL JOHN AVENATTI ("defendant") to file a joint report addressing the following:

1.  Government discovery disclosures to date.

2.  Remaining government discovery disclosures and a timetable for completion.

3.  A proposed schedule, including at least:

    a.  Trial date.

    b.  Final pretrial conference date.

    c.  Government witness list disclosure date.

    d.  Government exhibit disclosure date.

    e.  Expert witness disclosure date.

    f.  Last date for filing and hearing motions, including motions *in limine*.

    g.  Date for disclosure of Jencks Act materials and witness statements.

    h.  Dates(s) for interim status conference(s).

4.  Any logistical or other potential problems affecting the proposed schedule.

5.  Anticipated length of trial.

6.  Use of a jury pool pre-screened for time.

7.  Any other matters the parties wish to discuss at the status conference.

The parties' respective positions regarding these issues are set forth below.

## II. GOVERNMENT'S DISCOVERY DISCLOSURES TO DATE

### A. USAO's Statement

#### 1. Documents and Interview Reports

To date, the USAO has made the following discovery disclosures to defendant:

1. On May 22, 2019, the USAO produced approximately 113,000 pages of discovery materials, including, but not limited, the following materials:

a. Financial records, including bank records reflecting the financial transactions set forth in the indictment;

b. Documents obtained from third-parties, including various business records, and emails and text messages reflecting communications between defendant and the victim-clients identified in the indictment, employees of defendant's coffee company Global Baristas U.S. LLC ("GBUS"), and other third-parties;

c. Internal Revenue Service ("IRS") tax records; and

d. Transcripts of defendant's prior testimony in various legal proceedings.

2. On June 5, 2019, the USAO produced approximately 9,000 pages of additional discovery materials, primarily consisting of additional documents obtained from third-parties, including emails and other records obtained from defendant's former certified public accountant ("CPA").

3. On June 28, 2019, the USAO produced approximately 16,000 pages of additional discovery materials, including additional documents obtained from third-parties, and memoranda summarizing

2

interviews with most of the potential government witnesses, including the victim-clients identified in the Indictment. The USAO has voluntarily produced these witness statements at an early date in an effort to ensure that defendant is prepared to proceed to trial as soon as possible.

To date, the USAO has produced, subject to the Court's May 20, 2019, Protective Order (CR 36), a total of approximately 138,903 pages of discovery materials.

### 2. Digital Search Warrant Evidence

During the course of its investigation, the Internal Revenue Service – Criminal Investigation ("IRS-CI") obtained a number of digital devices from various sources, including pursuant to judicially-authorized search warrants.

On June 10, 2019, the USAO's Privilege Review Team Assistant United States Attorney ("PRTAUSA") produced to defendant, subject to the Court's May 20, 2019, Protective Order (CR 36), complete forensic copies of the accessible[1] digital devices that were: (1) seized from defendant's residence; (2) seized during defendant's arrest; and (3) obtained from former employees of GBUS.[2]

---

[1] As discussed further below, the USAO and another U.S. Attorney's Office has possession of approximately four digital devices seized from defendant or his residence, which are currently inaccessible because they are password-protected. The government will continue to attempt to gain access to these devices, but cannot provide a forensic image of the devices to defendant until they have been accessed. To date, defendant has declined to provide the password(s) for these devices, which would expedite providing him with the contents of the devices.

[2] The PRTAUSA also produced to defendant a copy of the cell-phone extraction report for Client 3's cellphone, as well as approximately 103 emails involving defendant that were extracted from Client 3's computer. Because Client 3 executed a limited waiver of the attorney-client privilege, these documents have already been provided to the investigation team and will not be subject to a further privilege review.

As discussed further below, the USAO has not provided defendant with forensic copies of the following digital devices: (1) the computer server belonging to defendant's former law firm, Eagan Avenatti LLP ("EA LLP"); (2) devices seized from the residence of EA LLP's former office manager ("EA Employee 1"), which belong to EA LLP; (3) devices seized from another law firm with which defendant had a business relationship ("Law Firm 1"); and (4) the inaccessible digital devices seized from defendant and defendant's residence.

To date, defendant has produced no discovery.

**B.    Defendant's Statement**

The government's production to date has been woefully inadequate.  While it may appear from the page counts and alleged descriptions referenced above that the government has produced significant amounts of information, on a percentage basis, the information produced to date is far less than five percent (5%) of what is required.

After charging Defendant with 36 counts in a lengthy "speaking" indictment months ago, which purportedly followed a three-year investigation, the government now refuses to produce millions of pages of documents and huge amounts of electronic data (likely well over 20 terabytes) that Defendant needs to defend himself—including potential *Brady* and *Giglio* material.  The government has had this information in its possession for months—perhaps years--and yet still has not produced it (while continuing to grandstand and argue for an early trial date).  The government's refusal to produce this information is even more egregious and inexplicable considering that Defendant had unlimited access to nearly all of this information until the morning of his arrest on March 25, 2019, yet the government

4

now refuses to return even a copy to Defendant, while continuing to access the same data in its own preparation for trial.  Simply put, there is no reason why Defendant should not be afforded access to this vast amount of information in connection with preparing his defense, not to mention the fact that he requires this information in order to meet his obligations as a practicing attorney who continues to represent clients.[3]

The government has taken this course of action despite repeated requests for this information from defense counsel and *this Court's clear directives at the last status conference, during which the Court directed the government to promptly return seized items to the Defendant and also expressed skepticism as to why a "privilege review" would have to be done before returning/producing the items to Defendant (an attorney) when the documents were previously in his possession or control.*

As this Court is aware, the indictment charges the Defendant with conduct relating to multiple clients of Defendant, as well as conduct concerning business interests of the Defendant.  Despite this, the government has essentially refused to provide Defendant with the entirety of his business files that existed prior to the date of his arrest on March 25, including emails, time records, accounting records, pleadings reflecting work done for clients, documents demonstrating client consent, correspondence with clients, etc. To be clear, the government has refused to provide the following, among other things:

---

[3] In prior communications, the government has been overt in its attempts to interfere with Defendant's attempts to continue to make a living through the practice of law.

       a.    *Defendant's correspondence and emails with his clients, including the clients referenced in the indictment.*

       b.    *Defendant's client files, including for those clients referenced in the indictment.*

       c.    *Defendant's accounting, tax and cost records, including for those clients referenced in the indictment.*

       d.    *Defendant's time records, including for those clients referenced in the indictment.*

       e.    *Defendant's settlement communications and documentation, including for those clients referenced in the indictment.*

       f.    *Defendant's emails relating to the charges in the indictment.*

       g.    *Defendant's emails with his tax professionals and others relating to his taxes.*

The government's excuse that some of this information belongs to "Eagan Avenatti, LLP" is without merit and is a red herring. Defendant founded EA in 2007 with two other partners. He was the Managing Partner of EA at all relevant times (since 2011) and remains in that role to this day. He presently owns 100% of the law firm and has owned a controlling interest in the firm since 2011. Finally, at all relevant times, all clients of EA were clients of Defendant. Indeed, at all relevant times, no client could become a client of EA without Defendant's knowledge and consent.

Without the return and/or production of the information, it is literally impossible for the Defendant to mount a defense in this case, let alone continue to represent his clients or properly transition those clients to other attorneys.

### III. OUTSTANDING DISCOVERY ISSUES

    **A.**    **USAO's Statement**

        1.   <u>Non-Search Warrant Evidence</u>

The vast majority of documentary evidence and interview reports relating to the charges in the indictment case have already been produced to defendant. The USAO, however, is still processing additional documents and records it obtained from third-parties, as well as additional interview reports. The USAO and IRS-CI are also still conducting additional witness interviews and collecting evidence from additional sources. The USAO will produce any newly obtained documents and records on a rolling basis going forward. The USAO does not believe that this evidence will be particularly voluminous.

Additionally, the USAO is scanning additional hard-copy records, including two boxes of records obtained from the IRS Revenue Officer who handled the GBUS payroll tax collection action between October 2016 and March 2018, and three boxes of records obtained from defendant's CPA. The USAO offered to make these records available for defendant's counsel to review at the USAO or IRS-CI's offices, but defense counsel indicated that he would prefer that the USAO just produce the scanned copies. Due to the nature of the hard-copy records and how they were stored, the USAO anticipates it could take approximately one month to finish scanning these documents.

Finally, the USAO is in possession of approximately two boxes of mail relating to GBUS. The USAO has advised defense counsel that it will not be scanning these documents because they are unlikely to contain any relevant information. The USAO will, however, make them

available for defense counsel to review at the USAO or IRS-CI's offices at a mutually convenient time.

           2.   <u>Digital Search Warrant Evidence</u>

                *a.*   *The USAO's Review of the Digital Devices*

During the course of its investigation, IRS-CI obtained the following digital devices or forensic copies thereof: (1) the computer server belonging to EA LLP; (2) digital devices seized during defendant's arrest on March 25, 2019; (3) digital devices seized from defendant's residence; (4) digital devices seized from the residence of EA Employee 1; (5) digital devices seized from Law Firm 1; and (6) digital devices obtained from former GBUS employees. The USAO and IRS-CI obtained warrants to search each of these devices for evidence relating to the investigation and defendant's prosecution. Undersigned government counsel understands that the devices contain a total of approximately 20 TB of data.

The USAO and IRS-CI is reviewing the contents of each of these devices, pursuant to the privilege review and other search protocols set forth in the search warrants. The USAO's Privilege Review Team, which is overseeing the initial scope review and subsequent privilege review, has made substantial progress and expects to complete the privilege review within the next three months.[4] The USAO will produce any non-privileged documents falling within the scope of the search warrants to the defense on a rolling basis.

---

    [4] Because the victim-clients named in the Indictment and the court-appointed bankruptcy trustee for GBUS have already executed limited waivers of the attorney-client privilege, the USAO believes privilege disputes, if any, would be quite limited.

      b. *Production of Forensic Copies of the Digital*
        *Devices to Defendant*

  At this time, the USAO has not provided defendant with forensic copies of the following digital devices: (1) the EA LLP computer server; (2) digital devices seized from the residence of EA Employee 1; and (3) digital devices seized from Law Firm 1.

  With respect to the EA LLP computer server and the digital devices seized from EA Employee 1's residence (collectively, the "EA Devices"), the USAO understands that the EA Devices belong to EA LLP, which is currently controlled by a court-appointed receiver (the "EA Receiver"), and are not defendant's personal property.  The USAO also understands that the EA devices likely contain substantial amounts of attorney-client privileged information relating to third-parties, which defendant is not entitled to access.  Accordingly, on May 24, 2019, the USAO informed defendant that it did not believe it would be appropriate for the USAO to provide defendant with complete forensic copies of the EA Devices without obtaining consent from the EA Receiver.[5]  The EA Receiver has advised the USAO that it will not consent to the USAO producing complete forensic copies of the EA Devices to defendant.

  With respect to the digital devices seized from Law Firm 1, the USAO understands that these devices belong solely to Law Firm 1 and are likely to contain substantial amounts of attorney-client

---

  [5]  To the extent defendant needs to access any of the materials on the EA Devices in order to represent his remaining legal clients, the USAO has advised defendant that he should address this issue with the EA Receiver or seek relief from the Honorable Karen E. Scott, United States Magistrate Judge, or the Honorable Virginia A. Phillips, United States District Judge, who are overseeing the receivership in In re Eagan Avenatti LLP, No. CV 18-1644-VAP (C.D. Cal.).

privileged and confidential information relating to Law Firm 1's clients. Accordingly, on May 24, 2019, the USAO informed defendant that it did not believe it would be appropriate for the USAO to provide defendant with complete forensic copies of these digital devices without obtaining consent from Law Firm 1. Counsel for Law Firm 1 has advised the USAO that Law Firm 1 will not consent to the USAO producing complete forensic copies of Law Firm 1's digital devices to defendant.

Although the USAO has not produced forensic copies of the digital devices referenced above to defendant, on May 24, 2019, and again during a meet-and-confer on June 26, 2019, the USAO offered to discuss alternative procedures designed to ensure that defendant can access any materials on the EA Devices that may be relevant to his defense. For example, the USAO requested that defendant's counsel consider whether providing defendant with the results of a broader search for potentially relevant materials on the EA Devices, having defendant and his counsel work with the Privilege Review Team to identify and produce relevant materials on the EA Devices directly to defendant, or allowing defendant's counsel to review the complete forensic copy of the EA Devices at IRS-CI's offices would be sufficient to address defendant's concerns.

To the extent defendant does not believe any alternative procedures would be sufficient to address defendant's concerns and that defendant should be provided with complete forensic copies of the EA Devices or Law Firm 1's devices, the USAO requests that the Court set an expedited briefing schedule so that this issue can be resolved as soon as possible. The USAO would also request that any

such briefing schedule provide an opportunity for the EA Receiver and Law Firm 1 to be heard regarding defendant's request.

### c. *Inaccessible Digital Devices*

IRS-CI is currently in possession of an Apple desktop computer seized from defendant's residence, which is password protected and has not yet been accessed.  The USAO understands that the United States Attorney's Office for the Southern District of New York (the "SDNY USAO") is also in possession of an iPhone, an iPad, and an Apple laptop computer, which are password protected and have not yet been accessed.  The USAO will produce to defendant forensic copies of these devices if and when the USAO is able to access the devices. The government, including the SDNY USAO, has advised defendant that if defendant wishes to immediately obtain forensic copies of these digital devices or access materials on these devices defendant will need to provide the government with the passwords for these devices so that the government can create forensic images of the devices.  To date, defendant has not provided the USAO or the SDNY USAO with the passwords for any of the inaccessible devices.

### 3.  Hard-Copy Search Warrant Evidence

During the execution of search warrants at defendant's residence, EA Employee 1's residence, and Law Firm 1, IRS-CI seized approximately 15 to 20 boxes of hard copy materials.  These records are currently being reviewed by the Privilege Review Team to ensure that they do not contain any privileged materials.  The USAO will produce scanned copies of these documents to defendant as soon as they are available, likely within the next three weeks.

### 4.   Reciprocal Discovery from Defendant

The USAO has requested that defendant produce reciprocal discovery under Federal Rule of Criminal Procedure 16.  Although defendant has indicated, including through posting numerous messages on Twitter.com, that he is in possession of various documents he intends to use in his defense, including two documents purportedly signed by "Client 1" in the indictment, defendant has not yet produced any reciprocal discovery to the USAO.  The USAO therefore requests that the Court order defendant to produce any known reciprocal discovery within two weeks of the status conference, and set a final deadline for defendant to produce reciprocal discovery approximately two months before trial.

**B.   Defendant's Statement**

### 1.   Non-Search Warrant Evidence

The Defendant requests that the Court order the government to produce all information referenced above under "Non-Search Warrant Evidence" within two weeks of the status conference.

### 2.   Digital Search Warrant Evidence

As stated above, the government has refused, without an adequate basis, to return and/or produce significant amounts of critical data and information to the Defendant, without justification.  This includes: (1) the computer server belonging to EA LLP; (2) digital devices seized during defendant's arrest on March 25, 2019; (3) digital devices seized from defendant's residence; (4) digital devices seized from the residence of EA Employee 1; (5) digital devices obtained from former GBUS employees.  According to the government, these devices contain a total of approximately 20 TB of data.  More importantly, this information constitutes nearly all of

the business files of Defendants for the last decade, including close to 100 percent of the information relating to the work performed by Defendant for the clients referenced in the indictment.  Defendant cannot defend this case without full and complete access to this information.

To be clear, there can be no privilege issues relating to producing any of this information to Defendant because Defendant is an attorney who was--and in some cases still is, as his representation of those clients is ongoing-- entitled to full access to this information at all relevant times.    Moreover, even if Defendant has since been discharged, Defendant would still be entitled to keep a copy of the information for his records and use, including in connection with defending any civil claim by any client.

<blockquote>a.   <em>Production of Forensic Copies of the Digital Devices to Defendant</em></blockquote>

With respect to the EA LLP computer server and the digital devices seized from EA Employee 1's residence (collectively, the "EA Devices"), the government's position lacks all merit.  Defendant founded EA in 2007 with two other founding partners.  He was the Managing Partner of EA at all relevant times (since 2011) and remains the Managing Partner to this day.  He presently owns 100% of the law firm and has owned a controlling interest in the firm since 2011.  Further, at all relevant times, all clients of EA were clients of Defendant.  Indeed, at all relevant times, no client could become a client of EA without Defendant's knowledge and consent.

In addition, up until his arrest on March 25, 2019, Defendant had virtually unlimited access to the information he now demands be returned/produced.  Accordingly, there can be no legitimate argument

13

that he should not be afforded access now, especially seeing as he has a constitutionally guaranteed right to prepare a defense.

*Moreover, the EA Receiver is not an attorney, cannot service or represent clients, has no right to access attorney-client information on the servers or in EA's files, and has no ownership interest in the firm.  More importantly, the Defendant needs full and complete access to the totality of this information immediately.*  Indeed, it is quite frankly shocking that the Receiver and the government, both of whom have limited, if any, right to this information, presently enjoy unfettered access while denying Defendant access so he can prepare a defense to these serious criminal charges.

Further, the alleged "alternative" production methods proposed by the government are unworkable and unrealistic, and would result in this case being delayed for years because of the amount of data involved.  Defendant should not have to telegraph his defense by revealing which documents he is interested in reviewing, nor should the Defendant and his counsel be required to review over 20 terabytes of data at the offices of the government.

The government must be required to produce complete forensic copies of the EA Devices to Defendant within thirty (30) days of the status conference.  Following this production and the review of the discovery produced to date, Defendant will further meet and confer with the government as to Law Firm 1's devices.

b.   *Inaccessible Digital Devices*

The warrants permitting the government to access the four inaccessible devices expired long ago.  And Defendant is under no obligation to now provide the passwords in exchange for a forensic image of the devices or their return.  Defendant requests the return

14

of the four devices within three (3) court days of the status conference so that he may prepare his defense.

### 3. Hard-Copy Search Warrant Evidence

The entirety of the documents seized from defendant's residence and EA Employee 1's residence should be produced immediately as no possible privilege issues exist as to this information for the reasons previously discussed. The government has been in possession of this information for 14 weeks and it should have been produced long ago as Defendant needs this information for his defense.

As for the materials seized from Law Firm 1, Defense counsel will further meet and confer with the government following review of the documents to be produced.

### 4. Reciprocal Discovery from Defendant

Defendant maintains that it is entirely premature for any order of reciprocal discovery, especially considering the lack of timely discovery provided by the government.

## IV. PROPOSED TRIAL SCHEDULE

### A. USAO's Proposed Trial Schedule

The USAO proposes the following trial schedule and other relevant dates:

1. Trial Date – January 28, 2020.

2. Final Pretrial Conference – January 7-11, 2020 (any date that week convenient for the Court).

3. Government Witness List Disclosure – December 30, 2019 (i.e., approximately one month before trial).

4. Government Exhibit Disclosure – January 21, 2020 (i.e., approximately one week before trial).

15

5.    <u>Expert Witness Disclosures</u> – November 4, 2019 (<u>i.e.</u>, approximately two weeks before pretrial motions are to be filed).

6.    <u>Proposed Pretrial Motions Schedule</u>

a.    <u>Motions Due</u> – November 18, 2019.

b.    <u>Oppositions Due</u> – December 2, 2019.

c.    <u>Replies Due</u> – December 9, 2019.

d.    <u>Motions Hearing</u> – December 23, 2019 (or any date during the week of December 16-20, 2019, that is convenient for the Court).

7.    <u>Disclosure of Jencks Act Materials and Witness Statements</u> – December 30, 2019 (<u>i.e.</u>, approximately one month before trial).[6]

8.    <u>Interim Status Conferences</u> – August 5, 2019; September 9, 2019; October 7, 2019; and November 4, 2019.[7]

The USAO believes that this schedule is appropriate and will provide defendant and his counsel sufficient time to prepare for trial.

**B.    Defendant's Proposed Trial Schedule**

Defendant maintains that it is far too premature for the Court to set a trial date in this matter, let alone in January, for the following reasons:

1.    <u>Significant Discovery Has Yet to Be Produced</u>

As set forth above, the government has yet to produce well over 95% of the information and data necessary for the defense in this

---

[6] The USAO will agree to produce summaries of any additional witness statements it obtains during trial preparations on a rolling basis thereafter.

[7] The interim status conferences will provide the parties an opportunity to address any issues and/or foreseeable issues with the Court. If the parties agree in advance of one or more of the status conferences that such a hearing is unnecessary, the parties will inform the Court in advance to vacate the hearing(s).

16

case, including over 20 terabytes of data.  Until this information
and data are produced and reviewed, together with the yet to be
produced 302s, it is impossible for the defense to adequately
determine the total amount of time necessary to prepare for trial,
the likely motions and experts required, etc.

### 2.   The Government May Supersede the Indictment

The Defense has recently learned that the government is
eliciting testimony and evidence concerning Defendant before the
Grand Jury.  Defendant's counsel has inquired as to whether this will
result in further charges and the government has refused to answer.
Obviously, any further charges would result in further discovery and
the need for more time for proper defense preparation.  Defendant
should be permitted to know the entirety of the charges against him
before committing to a trial date.

### 3.   Other Cases Pending Against the Defendant Will Delay this Case

As the Court is aware and as discussed more fully below, rather
than charge the Defendant in one case, in one jurisdiction, the
Department of Justice made the decision to charge him in three
separate cases on two coasts.  As a result of this strategic
decision, significant delay will result.  This delay is not the fault
of the defense – it stems directly from the government's approach to
charging the Defendant.  Accordingly, the Defendant should not be
prejudiced in his ability to adequately prepare a defense.

As further discussed below, the Defendant is already scheduled
to be tried in New York on November 12, 2019, in the Southern
District of New York in United States v. Avenatti, No. 1:19-CR-373
(the "SDNY Extortion Case" or "Nike Case"), a trial that is expected

to last two weeks at a minimum. Defendant is represented in that case by separate counsel, whom he is presently assisting in preparing his defense.

It is anticipated that the government will soon be asking the court in the Southern District of New York to set a trial in the third case - <u>United States v. Avenatti</u>, No. 1:19-CR-374 (the "SDNY Fraud Case") for trial immediately following the Nike Case. A status conference is scheduled in New York for July 23, 2019.  As noted below, the Defendant will be moving to transfer and likely consolidate the SDNY Fraud Case with this matter.

    4.  <u>The Existing Trial Schedule of Defense Counsel</u>

Even leaving aside a possible trial date in the SDNY Fraud Case, defense counsel's trial schedule does not permit a trial in this case in January as demanded by the government.  Presently, that 2019 schedule is as follows:

► **September 17-** *U.S. v. Noori* SA-CR-17-112-DMG (client is very ill- unclear whether he will be well enough for trial in September, which may result in delay)- 2 week bank fraud trial in Los Angles

► **October 22-** *U.S. v. Michaels et. al.* SA-CR-16-76-JVS (client is Jonathan Brightman)- 3-4 week multiple defendant telemarketing fraud trial - Santa Ana

► **November 26-** *U.S. v. Le* SA-CR-18-119-AG - 3 week multiple defendant health care fraud trial- Santa Ana

► **December 3-** *U.S. v. Garcia* (District of Nevada - Las Vegas; conflicts with *U.S. v. Le therefore* likely be continued to January or February, 2020) - 2-3 week multiple defendant mortgage fraud trial.

In addition, following the trial in the *Garcia* matter in Las Vegas in January or February 2020, Defendant's counsel would need at least sixty (60) days to prepare for the trial in this matter, at a minimum, assuming that all of the discovery demanded above is produced immediately (thus allowing for immediate review).

As a result of the above and the need for clarity as to which charges Defendant will face and the content of the discovery, Defendant requests a further status conference on November 8, 2019.

## V.   LOGISTICAL ISSUES

### A.   The SDNY Extortion Case

Defendant is charged in a four-count indictment in the Southern District of New York with offenses relating to an alleged scheme to extort Nike Inc.  <u>United States v. Avenatti</u>, No. 1:19-CR-373 (the "SDNY Extortion Case").  The SDNY extortion case is set for trial on November 12, 2019.  Defendant is represented by separate counsel in the SDNY Extortion Case.

#### 1.   <u>Defendant's Statement</u>

The Nike case will result in significant delay of this case. Defendant is actively involved in preparing for the trial in the Nike matter, including by regularly meeting with his counsel (located in Miami), reviewing discovery, and researching various issues.  He is highly involved on a daily basis as the case is set for trial in November.  The government is seeking a loss amount of over one billion dollars in connection with the Nike case, which is far greater than the amount here, and may result in significant incarceration if Defendant is found guilty.  Accordingly, until that case is tried to completion, Defendant will be unable to assist in the defense in this case in any meaningful way.  There can be little

question that this will result in significant delay.  Again, this results not from any strategic choice by the Defendant, but rather from the choices made by the government.

The government has been investigating this case and seizing and otherwise obtaining massive amounts of data for three years, yet wants to push defendant to trial in 10 months. This is based in part on a general assertion from the government that it will get the discovery it wants to produce, but only that discovery, to the defendant in the next several months.  It is apparent that the government is attempting to exert pressure on and disadvantage the Defendant, by failing to produce massive amounts of discovery in a timely manner in this case, proceeding to trial in the Nike case, moving forward on the other case in the SDNY, and pushing to have this case proceed to trial shortly after the Nike case.  This is fundamentally unfair, and prejudicial.

2.   Government's Statement

The USAO does not believe that the SDNY Extortion Case should delay the trial in this case.  The SDNY Extortion Case is being handled by separate defense attorneys, is based on separate conduct, primarily involves different evidence and witnesses, and presents separate legal issues.  The trial in the SDNY Extortion Case should therefore have no impact on defendant's ability to proceed to trial in this case in a timely manner (other than defendant's presence in SDNY during his trial).  Accordingly, the USAO has proposed that this case proceed to trial as soon after the SDNY Extortion Case as possible.

**B.   The SDNY Fraud Case**

Defendant is also charged in a two-count indictment with wire fraud and aggravated identity in the Southern District of New York in United States v. Avenatti, No. 1:19-CR-374 (the "SDNY Fraud Case"). A trial date has not yet been set for the SDNY Fraud Case.  A status conference is currently scheduled for July 23, 2019.  Defendant is represented by Mr. Steward in the SDNY Fraud Case.

1.   Defendant's Statement

Defendant anticipates filing a motion to transfer venue and/or consolidate as it relates to the SDNY Fraud Case because Defendant believes the case should have been charged in this district. Depending on the outcome of those motions, this case may involve more charges.  In the alternative, Defendant will request that the SDNY Fraud Case be tried after the Nike case as it involves fewer witnesses, far less discovery, and can be tried to conclusion long before this case will be ready for trial.

2.   USAO's Statement

The resolution of defendant's anticipated motion to transfer the SDNY Fraud Case to this district should have no impact on the trial date in this case.  If such a motion is granted, the government would be prepared to try the charges pending in the SDNY Fraud Case either in a consolidated proceeding with the current charges or immediately after the trial in this case. If such a motion is denied, the USAO believes that this case should proceed to trial prior to the SDNY Fraud Case because this case involves broader alleged criminal conduct and multiple victims, including five of defendant's former clients, who suffered total financial losses of approximately $9

million, and the IRS, which is owed at least $3.2 million in unpaid taxes.

## VI.   ESTIMATED LENGTH OF TRIAL

### A.   USAO's Estimate

The USAO estimates that the trial, including any defense case, can be completed in three to four weeks.

### B.   Defendant's Estimate

Defendant estimates that the trial, including the defense case, can be completed in six weeks.  This estimate is a rough estimate and is largely dependent on the remaining discovery to be produced, as well as the outcome in the motions to transfer venue/consolidate.

## VII. NEED FOR A TIME-QUALIFIED JURY

### A.   USAO's Position

The USAO believes that a time-qualified jury is likely necessary.

### B.   Defendant's Position

Defendant objects to the request for a time-qualified jury. In counsel's experience, time qualified jurors tend to favor the prosecution.

## VIII.   ADDITIONAL ISSUES TO ADDRESS AT STATUS CONFERENCE

### A.   Defendant's Position

Defendant anticipates raising two additional issues at the Status Conference:  (1) a deadline by which the government must supersede the indictment and (2) the immediate production of any purported waivers of the attorney-client privilege by any of the clients of Defendant.

### B.   USAO's Position

The parties met-and-conferred telephonically regarding the instant Joint Report on June 26, 2019.  Defendant's portion of the Joint Report, which the USAO did not receive until approximately 3:30 pm on July 1, 2019 (the day it was due to be filed), raises a number of issues or arguments regarding discovery and other matters for the very first time.  Defendant has also taken positions in the Joint Report that are inconsistent with the positions defendant's counsel took during the June 26 meet-and-confer.  Because there is insufficient time to respond to these issues prior to filing the Joint Report, the government will be prepared to address all of the issues raised in the Joint Report at the July 8, 2019, status conference.

With respect to the specific additional issues defendant identifies above, the USAO cannot comment on grand jury proceedings under Federal Rule of Criminal Procedure 6(e) and believes any deadline regarding the potential filing of a superseding indictment would be inappropriate at this time.  As for the attorney-client privilege waivers, defendant is raising this issue for the first time in this Joint Report.  Although redacted copies of such waivers were attached as exhibits to the search warrant applications and therefore have already been produced to defendant, the government will gladly reproduce the waivers to defendant on July 2, 2019.