```
 1

 2

 3

 4                 UNITED STATES DISTRICT COURT

 5               CENTRAL DISTRICT OF CALIFORNIA

 6                      SOUTHERN DIVISION

 7                          - - -

 8      THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

 9
         UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
10                       Plaintiff,  )
            vs.                       )
11                                    )  SACR-19-00061-JVS
         MICHAEL JOHN AVENATTI,       )
12                       Defendant.  )
         ----------------------------)
13

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              Santa Ana, California

17                 July 8, 2019

18

19                    SHARON A. SEFFENS, RPR
                      United States Courthouse
20                    411 West 4th Street, Suite 1-1053
                      Santa Ana, CA  92701
21                    (714) 543-0870

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     JULIAN L. ANDRE
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   H. DEAN STEWARD
     H. DEAN STEWARD LAW OFFICES
15   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
16   (949) 481-4900

17

18

19

20

21

22

23

24

25
```

3

SANTA ANA, CALIFORNIA; MONDAY, JULY 8, 2019; 8:29 A.M.

08:29    THE CLERK:  Item No. 1, SACR-19-00061-JVS, United States of America versus Michael John Avenatti.

08:29    Counsel, please state your appearances for the record.

08:29    MR. ANDRE:  Good morning, Your Honor.  Julian Andre and Brett Sagel on behalf of the United States.

08:29    MR. STEWARD:  Good afternoon, Your Honor.  Dean Steward with Mr. Avenatti who is present on bond.

08:29    THE COURT:  Good morning.

08:29    Thank you for your report.  It's very comprehensive and very helpful.  It seems to me the two major stumbling blocks at the moment are completing the document production of the Eagan Avenatti documents and the Law Firm 1 documents.

08:29    What's your suggestion as to how we ought to tee up the issue of whether the denied consents on the part of the law firm and trustee are valid?

08:29    MR. ANDRE:  Your Honor, I think at this point what needs to be happen is the issue needs to be litigated.

08:30    THE COURT:  Well, yes, that's what I am asking you.

08:30    MR. ANDRE:  The government proposes the Court set a deadline for the defendant to file a motion.  We would request an expedited briefing schedule.  We would request

08:30   1   that the Eagan Avenatti receiver and the lawyers on behalf

08:30   2   of Law Firm 1 be provided an opportunity to file a response

08:30   3   to that motion as well.

08:30   4           THE COURT:  Mr. Steward.

08:30   5           MR. STEWARD:  I agree, Your Honor, that it needs

08:30   6   to be briefed.  An expedited basis given everything else

08:30   7   that's going on as we indicated in the joint report is

08:30   8   difficult for me, but I would certainly live with whatever

08:30   9   schedule the Court would impose.  I don't think we can go

08:30   10  any farther until we resolve this issue.

08:30   11          THE COURT:  I agree.  But it seems to me that it

08:30   12  wouldn't take long to draft a motion that tees up the issue

08:31   13  and gives the receiver and the law firm an opportunity to

08:31   14  come in and object.

08:31   15          MR. STEWARD:  Yes.  The only problem is that the

08:31   16  entire scenario is very complex when we have the receiver,

08:31   17  the law firm, the government, and us.  All of us coming

08:31   18  together is difficult just to lay out the facts accurately.

08:31   19          THE COURT:  Well, can't the facts fairly summarily

08:31   20  be stated, and the government serve subpoenas for the

08:31   21  electronic files for Eagan Avenatti and Law Firm 1?  You

08:31   22  understand that consent is being denied.  You're moving to

08:31   23  set aside the consent.  I mean, that's not horribly

08:31   24  complicated.

08:31   25          MR. STEWARD:  Nothing in this case seems to be

08:31   1   simple, Your Honor, but we will certainly go with the
08:31   2   Court's view.
08:31   3           THE COURT:  How much time do you need to bring on
08:31   4   a motion?
08:31   5           MR. STEWARD:  I was thinking at least three weeks,
08:31   6   Your Honor.
08:31   7           THE COURT:  A week to respond, a week for
08:32   8   rebuttal, and we will have a hearing -- let's see, you would
08:32   9   file your motion on July 29 directed to Eagan Avenatti and
08:32  10   Law Firm 1's documents.
08:32  11           Is a week enough for the government?
08:32  12           MR. ANDRE:  Your Honor, that will be enough for
08:32  13   us.  I think the only concern we would have is making sure
08:32  14   that's enough time for the receiver and Law Firm 1 to submit
08:32  15   whatever they are going to submit.  I think that if it's not
08:32  16   we can raise that issue with the Court at that time.
08:32  17           THE COURT:  All right.  Well, the opposition
08:32  18   response will be due August 5, any rebuttal August 12, and
08:33  19   we would hear the motion on August 19.
08:33  20           Let me remind those in the audience there is to be
08:33  21   no audio or video recording of this proceeding.  If anyone
08:33  22   is here from the press and want to tweet, that's fine by me,
08:33  23   but no audio or video recordings.
08:33  24           MR. ANDRE:  Your Honor, if it would be possible
08:33  25   for a hearing date other than the 19th.  I am actually going

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:33   1    to be out that entire week.

08:33   2            MR. STEWARD:  I have the same problem, Your Honor.

08:33   3            THE COURT:  The 26th?

08:33   4            MR. STEWARD:  That's fine with the defense, Your

08:33   5    Honor.

08:33   6            MR. ANDRE:  The 26th will be fine.

08:33   7            THE COURT:  Okay.

08:33   8            MR. ANDRE:  If we are going to be backing up the

08:33   9    hearing date, could we have two weeks for the opposition for

08:33   10   the receiver and --

08:33   11           THE COURT:  Sure.  The opposition will be due the

08:33   12   12th, and the reply would go to the 19th.  So a motion filed

08:34   13   July 29, opposition response August 12, reply August 19,

08:34   14   hearing August 26.  Let's make that at 8:30 a.m.

08:34   15           Are there issues with respect to Employee 1's

08:34   16   documents?

08:34   17           MR. ANDRE:  Your Honor, many of the devices that

08:34   18   were seized from Employee 1's residence also belong to --

08:34   19   it's our understanding also belong to Eagan Avenatti, so I

08:34   20   think that the motion would likely apply to many of those

08:34   21   devices as well.

08:34   22           MR. STEWARD:  I agree, Your Honor, and we can make

08:34   23   that a subset of the motion itself.

08:34   24           THE COURT:  Very good.

08:34   25           Then we have a number of devices that the

08:34 1 government has physically captured but doesn't have the

08:34 2 passwords.

08:35 3          MR. ANDRE:  That's correct, Your Honor.

08:35 4          THE COURT:  Are some of those Employee 1?

08:35 5          MR. ANDRE:  No, Your Honor.  There are four

08:35 6 devices.  There was one device that was seized from

08:35 7 Mr. Avenatti's residence, which is in the possession of

08:35 8 IRS-CI, and then there were three devices -- a phone, an

08:35 9 iPad, and a computer -- that were seized during

08:35 10 Mr. Avenatti's arrest in New York.  Those devices are in the

08:35 11 possession of the Southern District of New York and FBI, and

08:35 12 those also are inaccessible at this time.

08:35 13          THE COURT:  What efforts has the U.S. Attorney's

08:35 14 Office in the Southern District made to get the passwords or

08:35 15 otherwise get access?

08:35 16          MR. ANDRE:  My understanding, which is -- we're

08:35 17 not directly involved in that.

08:35 18          THE COURT:  Understood.

08:35 19          MR. ANDRE:  My understanding is they are working

08:35 20 with various consultants to try to crack the passwords for

08:35 21 those devices.

08:35 22          THE COURT:  Is that discovery essential to you,

08:35 23 Mr. Steward?

08:36 24          MR. STEWARD:  Yes, Your Honor, we believe it is.

08:36 25          THE COURT:  Okay.  What about delivering these

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:36    1    devices to an agreed third-party to make and hold a forensic

08:36    2    copy, the passwords disclosed to the agreed third-party but

08:36    3    to no one else?

08:36    4            MR. STEWARD:  Your Honor, the situation currently

08:36    5    is that the attorneys that are handling that portion of the

08:36    6    New York case, shorthand the Nike case, are the ones that

08:36    7    have addressed that issue with the Southern District of

08:36    8    New York's U.S. Attorney's Office, and they are at an

08:36    9    impasse is the last I heard.  I don't really have any

08:36   10    influence other than to encourage them.

08:36   11            THE COURT:  Well, are the parties who have

08:36   12    physical possession of those before this Court?

08:36   13            MR. ANDRE:  Of the three devices seized during the

08:37   14    New York arrest?

08:37   15            THE COURT:  Correct.

08:37   16            MR. ANDRE:  No, they are not, Your Honor.

08:37   17            THE COURT:  Well, how do you suggest we move the

08:37   18    ball along?

08:37   19            MR. ANDRE:  Your Honor, I think at this point at

08:37   20    least with respect to the device that's in the custody of

08:37   21    IRS-CI, the search warrant provides at least 180 days for us

08:37   22    to search, which includes attempting to access that device.

08:37   23    We're going to continue to do that.

08:37   24            One thing we are looking into is whether there

08:37   25    would be a legal basis to compel Mr. Avenatti to provide the

08:37  1   password.  We're hoping to have that analysis conducted in

08:37  2   the next couple of weeks, and if necessary, we may bring a

08:37  3   motion.

08:37  4            As far as the New York devices, I know Mr. Steward

08:37  5   has a status conference on July 23 in the other New York

08:37  6   trial case.  To the extent Mr. Avenatti needs access to

08:37  7   those devices earlier, again, he can provide the password.

08:38  8   Otherwise, I think at some point they will be able to be

08:38  9   cracked.  I will note that the AUSAs handling the fraud case

08:38  10  in New York are the same AUSAs handling the Nike extortion

08:38  11  case, so they have also been dealing with Mr. Steward.

08:38  12           MR. STEWARD:  For what it's worth, Your Honor, I

08:38  13  have had no discussions with anybody from either U.S.

08:38  14  Attorney's Office about passwords and those particular

08:38  15  devices, none.

08:38  16           THE COURT:  Well, if the matter were before me for

08:38  17  all four devices, I would issue an Order to Show Cause as to

08:38  18  why these devices shouldn't be delivered to an agreed third

08:38  19  party, and the password disclosed only to the third party,

08:38  20  and a forensic copy be made.  Whether that content is turned

08:38  21  over would be a separate question to be litigated.

08:38  22           I'll wait for the government's motion with respect

08:38  23  to the one device you have.  Otherwise, I'm likely to issue

08:39  24  an Order to Show Cause.

08:39  25           MR. ANDRE:  Thank you, Your Honor.

08:39  1          THE COURT:  The government indicates it is

08:39  2   conducting a privilege review.  What's the status of that?

08:39  3          MR. ANDRE:  Your Honor, the review is ongoing.  At

08:39  4   this point -- well, I'll back up.  The search warrants have

08:39  5   basically a three-step process.  First, there is an initial

08:39  6   scope review that is conducted of the devices using key word

08:39  7   searches.  At that point, whatever is initially found to be

08:39  8   within the scope of the warrants is then subject to a

08:39  9   privilege review.  Then from there, there's kind of a final

08:39  10  scope review done by the agents of any documents that are

08:39  11  found to be nonprivileged or which an exception to the

08:39  12  privilege applies.  Then there is a final scope review of

08:39  13  those once they are released to the prosecution team.

08:39  14         At this point we have been primarily focused on

08:39  15  the server, because that's the largest device.  It's what

08:39  16  Mr. Avenatti and his counsel have indicated is most

08:39  17  important to them.  That initial scope review has been

08:39  18  conducted, and the actual substantive privilege review

08:39  19  should be started shortly.

08:40  20         THE COURT:  When will it be completed?

08:40  21         MR. ANDRE:  Our hope is that we can get through

08:40  22  this all in three months as we indicated in our joint

08:40  23  report.

08:40  24         THE COURT:  Three months?

08:40  25         MR. ANDRE:  For all the devices.  I think for the

08:40  1    server our hope again is that will go quicker.

08:40  2            THE COURT:  Why can't an expedited review be made

08:40  3    of the clients listed in the various counts in the

08:40  4    Indictment, at least prioritized and produced?

08:40  5            MR. ANDRE:  Actually, Your Honor, that's exactly

08:40  6    what we are doing.  The way we did the initial scope terms

08:40  7    was they were broken out by client.  So we are searching the

08:40  8    initial scope review, and this is being run by a privilege

08:40  9    review AUSA.  What they have endeavored to do is first

08:40  10   identify the files or e-mails that relate to the clients

08:40  11   named in the Indictment.  Those will be prioritized and

08:40  12   reviewed first.

08:40  13           THE COURT:  Do you know whether they will be

08:40  14   produced first?

08:40  15           MR. ANDRE:  Our hope is they will be produced

08:40  16   first, yes, Your Honor.

08:40  17           THE COURT:  Okay.  Would you come back to me

08:40  18   within seven days with a brief report as to a timetable for

08:41  19   producing the client files related to the counts in the

08:41  20   Indictment?

08:41  21           MR. ANDRE:  Your Honor, I would ask if possible if

08:41  22   you could give us 14 days.

08:41  23           THE COURT:  Sir, all I want is a timetable.

08:41  24           MR. ANDRE:  Understood.  I think we will be able

08:41  25   to provide you with more information in two weeks than we

08:41    1    are in seven days, the reason being is that currently -- the

08:41    2    way that we have processed the data is that the initial

08:41    3    review and processing of the data is being conducted by the

08:41    4    DOJ Cyber Crime Lab.  It's then being loaded into a review

08:41    5    platform for the Privilege Review Team.

08:41    6            That process of getting into that second dataset

08:41    7    and to the review platform is just now being completed.  So

08:41    8    I think it will take the Privilege Review Team probably

08:41    9    about a week to get a handle on it, so that's the only

08:41   10    reason I would be asking you.  I think we can provide you

08:41   11    with more accurate information if you give us a couple of

08:42   12    weeks.

08:42   13            THE COURT:  Okay.  I will look for a report by

08:42   14    July 22.

08:42   15            MR. ANDRE:  Thank you, Your Honor.

08:42   16            MR. STEWARD:  Your Honor, may I address that issue

08:42   17    for a moment?

08:42   18            THE COURT:  Sure.

08:42   19            MR. STEWARD:  The Privilege Review Team requested

08:42   20    of me shortly after I came on the case a five-terabyte hard

08:42   21    drive.  It was returned to me about a week ago.  I learned

08:42   22    that one terabyte has the potential to load 75 million

08:42   23    pages, and this is a five-terabyte hard drive.  It contains

08:42   24    mirror images of many of the materials that were seized from

08:42   25    my client, obviously not all of them because I believe

08:42 1   that's what counsel was just talking about.  For example,

08:42 2   from his residence, there are two hard drives, two iPads,

08:42 3   two cell phones, and a USB device.

08:42 4          An equal number of devices and type of devices

08:42 5   were also seized from employees of the coffee company, GBUS.

08:43 6   In addition, we do have some of the materials that were

08:43 7   seized from my client in New York from his briefcase, three

08:43 8   flash drives that were taken, and we now have that.

08:43 9          My point is that for them to seize it originally

08:43 10  there must have been some use that they saw for it.  Now I

08:43 11  am in the position of having to review all of this material

08:43 12  of which could be literally millions and millions of pages.

08:43 13  I'm just deeply concerned and wanted to alert the Court.  I

08:43 14  don't think we need to resolve this today.  I think the

08:43 15  other questions we talked about earlier need to get resolved

08:43 16  first, but this is coming in the background.

08:43 17         I promise the Court I'm as diligent as I can be

08:43 18  with all the discovery that I have received so far, which is

08:43 19  a flash drive, a CD, this hard drive, and I understand I am

08:43 20  going to get some more today.  But I'm facing just a

08:43 21  mountain of material that I think even Gibson Dunn would be

08:43 22  intimidated by.  So that's out there.  Again, no need to

08:43 23  resolve it today, but I wanted to make the Court aware.

08:44 24         THE COURT:  As the materials are coming back to

08:44 25  you, are they coming back in the same format that they were

08:44   1   captured?

08:44   2        MR. STEWARD:  I don't know what the format they

08:44   3   were captured in was.

08:44   4        THE COURT:  Well, let me state it this way.  Are

08:44   5   you able to reconstruct the device that was seized such that

08:44   6   you would have the ability to search that device that you

08:44   7   would have had prior to seizure?

08:44   8        MR. STEWARD:  No, I don't believe they are in that

08:44   9   same format, but much of it is searchable.  For example,

08:44  10   there are pdfs, which I can search, but not all of it.  Some

08:44  11   of it is in a format that frankly I haven't got a clue what

08:44  12   it is, but I will find out, though.

08:44  13        (Defense counsel and defendant conferring)

08:44  14        MR. STEWARD:  Your Honor, when we get around to

08:44  15   the server issue, that's also going to be an issue as well,

08:44  16   because as I understand it, let's say that the server has a

08:44  17   mirror image taken.  It will not come out in the format that

08:44  18   it is on the server.  It is raw data basically, and the

08:44  19   structure of the server has to be reconstructed.  We are

08:45  20   concerned about that.

08:45  21        Again, I'm not a tech guy.  I'm explaining what

08:45  22   little I know about this process, but that's going to be an

08:45  23   issue at some point.

08:45  24        MR. ANDRE:  Your Honor, first, I would like to

08:45  25   correct one thing.  We did provide the defense with forensic

08:45  1    copies of the devices that were in his possession when he
08:45  2    was arrested that we have access to, the devices seized from
08:45  3    his residence, as well as the devices from his coffee
08:45  4    company.  Those were actually produced to Mr. Steward not a
08:45  5    week ago.  They were produced on June 10, so he has those
08:45  6    for close to a month now.
08:45  7         While there is a large volume of data here -- and
08:45  8    that's going to true for the server and for any of the
08:45  9    devices that were seized -- our belief -- and we think it's
08:45  10   a well-founded belief -- is that the amount of data on those
08:45  11   devices that's relevant to the charges in the Indictment is
08:45  12   going to be minimal, and the best example is the server.
08:45  13        I don't know how many clients Mr. Avenatti had
08:45  14   during his legal career.  The Indictment deals with five.
08:46  15   We assume there are probably hundreds of clients he had and
08:46  16   hundreds of clients with files.  Those other files won't be
08:46  17   relevant.  So what Mr. Steward will in fact have to do is
08:46  18   conduct searches, but that's the exact same thing the
08:46  19   government is doing.  So this is not a scenario where we
08:46  20   anticipate anyone is going to have to look through
08:46  21   75 million pages of documents.
08:46  22        As far as any sort of technical issues, we're
08:46  23   happy to help Mr. Steward in any way possible.  One of the
08:46  24   issues we raised with respect to the server, whether it be
08:46  25   providing searches for him or helping him get to the

08:46   1   information he wants, would actually resolve a lot of those

08:46   2   issues.  But he has complete images.  It is what he

08:46   3   requested.  But, again, I do want to emphasize for the Court

08:46   4   the amount of data on those devices that is relevant to the

08:46   5   charges is going to be miniscule compared to the overall

08:46   6   volume of data.

08:46   7           THE COURT:  But my question is what is being

08:46   8   produced to the defendant -- is it sufficiently similar to

08:46   9   the original mirror image such that whatever tools that were

08:47   10   existing prior to seizure could be used to search it?  For

08:47   11   example, I assume on the law firm server things could be

08:47   12   organized by client such that if one knew the client one

08:47   13   could go right to the client.

08:47   14           MR. ANDRE:  So --

08:47   15           THE COURT:  Yes or no?

08:47   16           MR. ANDRE:  I think the answer is no, Your Honor.

08:47   17           THE COURT:  Can it be fixed?

08:47   18           MR. ANDRE:  With respect to the server, we don't

08:47   19   have the actual original server, so the only way to scan

08:47   20   that device back up so it functioned in the way it

08:47   21   previously did would be an issue for the receiver to

08:47   22   address.  I don't think it can be fixed.  From an

08:47   23   evidentiary standpoint, the reason you work off a forensic

08:47   24   image is because that's to make sure that the data -- all

08:47   25   the metadata --

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:47  1          THE COURT:  Right.

08:47  2          MR. ANDRE:  I do believe -- again, I am not a

08:47  3   technical expert -- that there are tools available,

08:47  4   including some free tools, that Mr. Steward and the defense

08:47  5   could use to be able to view the image, not in the identical

08:48  6   fashion of the device itself but similar enough where they

08:48  7   could run searches and identify the accurate information.

08:48  8          Again, I'll note for the Court due to the

08:48  9   privilege issues we're a step removed from most of this.

08:48 10          THE COURT:  Okay.

08:48 11          MR. STEWARD:  I agree with that, Your Honor.  I

08:48 12   just wanted to highlight that that may be coming down the

08:48 13   road for the Court.  It's going to be an issue.

08:48 14          THE COURT:  I'm very likely to require the

08:48 15   government to produce whatever it produces back in a format

08:48 16   that's sufficiently similar to the original format so the

08:48 17   original existing tools could be used.  I don't think that

08:48 18   the defendant should have be forced to cope with a new or

08:48 19   different format.  I don't think it's sufficient to just say

08:48 20   there are tools out there.

08:48 21          MR. ANDRE:  Your Honor, I think the concern with

08:48 22   the approach you just identified is this, that producing a

08:49 23   mirror image is as close as we can get to what Your Honor is

08:49 24   suggesting.

08:49 25          THE COURT:  Does the mirror image have the

08:49    1    existing tools?

08:49    2              MR. ANDRE:  I would have to check.

08:49    3              THE COURT:  You should check and do that and

08:49    4    report in your July 22 report.

08:49    5              MR. ANDRE:  Thank you, Your Honor.

08:49    6              THE COURT:  Mr. Steward, you indicated that you

08:49    7    may seek a motion to transfer this case to the Southern

08:49    8    District to link up with either Nike or the other case.

08:49    9              MR. STEWARD:  No, not that way, Your Honor.  It

08:49   10    would be the other way.  It would be I will call it for

08:49   11    shorthand the Stormy Daniels case transferred here because

08:49   12    the charges are very similar in terms of the allegations of

08:49   13    client embezzlement.  That would be our thought.  That's the

08:49   14    number one item on the status conference in New York on the

08:49   15    23th I think it is with Judge Batts.  She is going to set a

08:49   16    schedule for that, and my guess is it will be pretty short.

08:50   17    Obviously we have to get past that before that case can do

08:50   18    anything really.

08:50   19              THE COURT:  Okay.  What is the status of the Nike

08:50   20    case?  The report indicates that there is at least a nominal

08:50   21    trial date of November 12.

08:50   22              MR. STEWARD:  Yes, Your Honor.  Their pretrial

08:50   23    motions are due August 19, which is in about five weeks.

08:50   24    Their trial date is November 12, which is in about three

08:50   25    months.  It's hard to say whether that's firm or not.  All

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:50    1    counsel are quite surprised that Judge Gardify set that

08:50    2    trial date as promptly as he did, so I'm just not sure

08:50    3    whether that's going to be good or not.

08:50    4              (Defense counsel and defendant conferring)

08:50    5              MR. STEWARD:  I'm informed that even if it doesn't

08:50    6    go on that day it will go within 60 to 90 days of that date.

08:50    7    Apparently Judge Gardify is committed to moving that case

08:51    8    along quickly.

08:51    9              THE COURT:  Okay.  Anything else we ought to take

08:51   10    up with regard to discovery issues?

08:51   11              MR. ANDRE:  I don't believe so, Your Honor.

08:51   12              THE COURT:  Mr. Steward.

08:51   13              MR. STEWARD:  I think we have hit the highlights,

08:51   14    Your Honor, or low lights.

08:51   15              THE COURT:  All right.  Well, I think as is

08:51   16    obvious I'm not prepared to adopt a trial date today until

08:51   17    we get these discovery issues resolved, at least the

08:51   18    impediments to full production.  I propose that we have

08:51   19    another status conference in about two months on

08:51   20    September 23 if that's a convenient date, and I would plan

08:51   21    to set a trial date at that time.

08:51   22              MR. ANDRE:  Your Honor, I think if possible we

08:51   23    would request the week before if that's feasible.

08:52   24              THE COURT:  That's not feasible.

08:52   25              MR. ANDRE:  Would the week after work for Your

08:52 1  Honor?

08:52 2       THE COURT:  Well, I guess we could do it the 16th.

08:52 3       Is that convenient to you, Mr. Steward?

08:52 4       MR. STEWARD:  Your Honor, my client indicates --

08:52 5  he's still a practicing lawyer.  He has another matter on

08:52 6  the 16th that's out of state.

08:52 7       THE COURT:  Is there another day that week we

08:52 8  could do it?

08:52 9       MR. ANDRE:  Your Honor, we would be available any

08:52 10 day the week of the 16th.

08:52 11      MR. STEWARD:  Wednesday, Thursday, or Friday would

08:53 12 be fine.

08:53 13      THE COURT:  How about the 18th at 8:30 a.m.?

08:53 14      MR. STEWARD:  That's fine, Your Honor.

08:53 15      THE COURT:  The trial schedule that the government

08:53 16 proposes in terms of intervals seems reasonable, but I don't

08:53 17 think we can pick a trial date as I indicated until we get

08:53 18 the discovery issues resolved.

08:53 19      Does the government have any present intent to

08:53 20 supersede?

08:53 21      MR. ANDRE:  Your Honor --

08:53 22      THE COURT:  I'm not asking you for a commitment.

08:53 23 I'm just asking you whether you have a present intent.

08:53 24      MR. ANDRE:  I think the answer as to a present

08:53 25 intent -- presently, I would say no.

08:54   1          THE COURT:  Is there anything you want to add to

08:54   2   that?

08:54   3          MR. ANDRE:  I don't think there is much I can add

08:54   4   in this setting under Rule 6(e).  We will say that we are

08:54   5   obviously cognizant of the fact what impact a Superseding

08:54   6   Indictment would have on a trial schedule in any case.  I

08:54   7   think that would depend upon whether, for example, it's

08:54   8   entirely new conduct or changes to conduct that are already

08:54   9   in an Indictment, whether the discovery relating to any new

08:54   10  charges was already produced.

08:54   11         All I can say is at least as of -- standing here

08:54   12  today to answer your question directly, there is no present

08:54   13  intent, and we are cognizant of what impact any Superseding

08:54   14  Indictment would have in this case or any other case.

08:54   15         MR. STEWARD:  May we add to that question a

08:54   16  separate Indictment, not a Superseding Indictment?

08:54   17         MR. ANDRE:  Your Honor, we have no present intent

08:54   18  for that either.

08:55   19         THE COURT:  In the order that I sent out setting

08:55   20  the agenda, there are a number of other issues.  It appears

08:55   21  that the parties have roughly the same time estimate, four

08:55   22  to six weeks, to try this case.

08:55   23         MR. ANDRE:  I think the defense estimate is a

08:55   24  little bit longer than ours, but, yes, Your Honor, that's

08:55   25  about right.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

22

08:55  1          THE COURT:  The defense has indicated it won't

08:55  2  stipulate to a time-qualified jury.

08:55  3          Is that correct, Mr. Steward?

08:55  4          MR. STEWARD:  Yes, Your Honor.

08:55  5          THE COURT:  What I would do is bring the venire in

08:55  6  early and have a magistrate judge screen them for cause.

08:55  7  You would get notice of that.  It seems to me to the extent

08:55  8  that there is a hardship we ought to at least get that out

08:55  9  of the way beforehand.

08:55  10          MR. STEWARD:  Fine, Your Honor.

08:56  11          THE COURT:  It would seem to me it's going to take

08:56  12  a while to pick a jury in this case.  I don't see any way to

08:56  13  avoid -- well, where there has been substantial publicity,

08:56  14  typically I will provide a short screening questionnaire.

08:56  15  Has the prospective juror been exposed to any information

08:56  16  about the case?  About the defendant?  If, yes, generally

08:56  17  where?  And then engage in individual examination of each

08:56  18  witness.

08:56  19          That's my present thought about how we proceed

08:56  20  with voir dire, and then once we have people screened

08:56  21  through that process, we will move on to the more general

08:56  22  voir dire.

08:56  23          Any thoughts?

08:56  24          MR. STEWARD:  That's fine with the defense, Your

08:56  25  Honor.

08:56 1    MR. ANDRE:  We have no objection to that, Your
08:56 2    Honor.
08:57 3    THE COURT:  Mr. Steward, you raised two issues
08:57 4    that weren't on my agenda that you wanted to discuss.  We
08:57 5    have talked about the possibility of a Superseding
08:57 6    Indictment.  You also raised the issue of immediate
08:57 7    production of any purported waivers of attorney/client
08:57 8    privilege.
08:57 9    MR. STEWARD:  Yes, Your Honor, that's what we are
08:57 10   requesting.
08:57 11   THE COURT:  Why don't you flush that out a little.
08:57 12   MR. STEWARD:  Well, Your Honor, it kind of
08:57 13   dovetails in with what the Court was talking about as to
08:57 14   whether or not the receiver in Law Firm 1 had the authority
08:57 15   to in fact turn over the materials that they turned over.
08:57 16   As part and parcel of that I suppose is whether or not
08:57 17   Clients 1 through 5 mentioned in the Indictment have in fact
08:57 18   signed waivers.
08:57 19   MR. ANDRE:  Your Honor, we produced all of the
08:57 20   waivers on July 2, the day after the joint report was filed,
08:57 21   via e-mail.  It was also included attached to the search
08:58 22   warrant affidavits, which were produced in discovery to the
08:58 23   defense prior to that.
08:58 24   THE COURT:  Okay, are there any other issues
08:58 25   anyone would like to raise this morning?

24

08:58  1          MR. ANDRE:  Your Honor, I think the only issue to

08:58  2   resolve is currently the trial date is set for August 27, so

08:58  3   there would need to be a speedy trial order continuing the

08:58  4   date out at least through -- well, I'm not sure how Your

08:58  5   Honor would like to handle that since there won't be a new

08:58  6   trial date.

08:58  7          THE COURT:  Mr. Steward.

08:58  8          MR. STEWARD:  That's fine, Your Honor.  We will

08:58  9   obviously agree and stipulate to moving those dates out

08:58 10   however we want to phrase that.

08:58 11          THE COURT:  Okay.  Then we will have a hearing on

08:58 12   August 26 with regard to the consent issues and a further

08:59 13   status conference on September 18 at 8:30 a.m.

08:59 14          Anything else then?

08:59 15          MR. ANDRE:  One second, Your Honor.

08:59 16          (Government counsel conferring)

08:59 17          MR. ANDRE:  Your Honor, the only question would be

08:59 18   is if the Court would like something filed in advance of

08:59 19   September 18.

08:59 20          THE COURT:  A week in advance.

08:59 21          MR. ANDRE:  A similar joint report?

08:59 22          THE COURT:  Yes.

08:59 23          MR. ANDRE:  Does Your Honor have any preference as

08:59 24   to the form of a stipulation to continue with respect to the

08:59 25   dates?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:59   1               THE COURT:  Well, pick a date in mid October that

08:59   2   will stand as the nominal trial date, a waiver to that

08:59   3   period, just a standard stip.

09:00   4               MR. ANDRE:  Thank you, Your Honor.

09:00   5               THE COURT:  Okay, thank you very much.

09:00   6               MR. STEWARD:  Thank you, Your Honor.

09:00   7               (Whereupon, the proceedings were concluded.)

09:00   8                       *       *       *

09:00   9

09:00  10

09:00  11

09:00  12

09:00  13

09:00  14

09:00  15

09:00  16

09:00  17

09:00  18

09:00  19

09:00  20

09:00  21

09:00  22

09:00  23

09:00  24

09:00  25

CERTIFICATE


I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  July 12, 2019


/s/   Sharon A. Seffens  7/12/19
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER