1   NICOLA T. HANNA
    United States Attorney
2   BRANDON D. FOX
    Assistant United States Attorney
3   Chief, Criminal Division
    JULIAN L. ANDRÉ (Cal. Bar No. 251120)
4   Assistant United States Attorney
    Major Frauds Section
5        1100 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-6683
7        Facsimile: (213) 894-6269
         Email:    Julian.L.Andre@usdoj.gov
8
    BRETT A. SAGEL (Cal. Bar. No. 243918)
9   Assistant United States Attorney
         Ronald Reagan Federal Building
10       411 West Fourth Street, Suite 8000
         Santa Ana, California 92701
11       Telephone:  (714) 338-3598
         Facsimile:  (714) 338-3708
12       Email:    Brett.Sagel@usdoj.gov

13  Attorneys for Plaintiff
    UNITED STATES OF AMERICA
14
                    UNITED STATES DISTRICT COURT
15
                FOR THE CENTRAL DISTRICT OF CALIFORNIA
16
    UNITED STATES OF AMERICA,          SA CR No. 19-061-JVS
17
              Plaintiff,               GOVERNMENT'S OPPOSITION TO
18                                     DEFENDANT MICHAEL JOHN AVENATTI'S
                   v.                  MOTION TO COMPEL DISCOVERY;
19                                     DECLARATION OF JULIAN L.
    MICHAEL JOHN AVENATTI,             ANDRÉ;EXHIBITS 1-16
20
              Defendant.               [EXHIBITS 17-18 LODGED SEPARATELY
21                                     UNDER SEAL]

22                                     Hearing Date: August 26, 2019
                                       Hearing Time: 8:30 a.m.
23                                     Location:    Courtroom of the
                                                    Hon. James V. Selna
24
25       Plaintiff United States of America, by and through its counsel

26  of record, the United States Attorney for the Central District of

27  California and Assistant United States Attorneys Julian L. André and

28

1  Brett A. Sagel, hereby files its opposition to defendant MICHAEL JOHN

2  AVENATTI's motion to compel discovery (CR 50).

3      This opposition is based upon the attached memorandum of points

4  and authorities, the declaration of Assistant United States Attorney

5  Julian L. André, the attached exhibits, the files and records in this

6  case, and such further evidence and argument as the Court may permit.

7   Dated: August 12, 2019          Respectfully submitted,

8                                   NICOLA T. HANNA
                                    United States Attorney
9
                                    BRANDON D. FOX
10                                  Assistant United States Attorney
                                    Chief, Criminal Division
11

12                                  _____/s/_____
                                    JULIAN L. ANDRÉ
13                                  BRETT A. SAGEL
                                    Assistant United States Attorneys
14
                                    Attorneys for Plaintiff
15                                  UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                                      PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.     INTRODUCTION.................................................1

II.    STATEMENT OF FACTS..........................................4

       A.    The EA LLP Receivership...............................4

       B.    The EA Devices........................................5

III.   ARGUMENT....................................................6

       A.    The Criminal Discovery Rules Do Not Provide Defendant
             with the Right to Complete Forensic Copies of the EA
             Devices...............................................6

             1.    Defendant Is Not Entitled to Complete Forensic
                   Copies of the EA Devices Under Rule 16..........7

             2.    The USAO Has Complied With and Will Continue to
                   Comply with Its Obligations Under *Brady* and
                   *Giglio*.......................................11

       B.    Defendant Does Not Have An Independent Right to
             Complete Forensic Copies of the EA Devices...........13

             1.    Defendant Stipulated that the EA Receiver Would
                   Have Complete Control Over EA LLP's Property....13

             2.    The EA Devices Are the Property of EA LLP.......16

             3.    Any Client-Related Records on the EA Devices Are
                   Either the Property of EA LLP's Clients or EA LLP...18

       C.    Defendant's Demand that the EA Receiver Be Forced to
             Provide Defendant With Access to the Actual EA Server
             Is Meritless.........................................21

       D.    Defendant Has Not Been Denied Access to Relevant
             Information on the EA Devices.........................22

       E.    Providing Defendant With Complete Forensic Copies of
             the EA Devices Raises Legitimate Concerns.............24

IV.    CONCLUSION.................................................25

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                           <u>PAGE</u>

**FEDERAL CASES**

<u>Brady v. Maryland</u>,
    373 U.S. 83 (1963)......................................passim

<u>Giglio v. United States</u>,
    405 U.S. 150 (1972)....................................passim

<u>Pennsylvania v. Ritchie</u>,
    480 U.S. 39 (1987)..........................................12

<u>United States v. Anderson</u>,
    481 F.2d 685 (4th Cir. 1973)................................8

<u>United States v. Bagley</u>,
    473 U.S. 667 (1985).........................................12

<u>United States v. Lucas</u>,
    841 F.3d 796 (9th Cir. 2016)...............................12

<u>United States v. Mandel</u>,
    914 F.2d 1215 (9th Cir. 1995)...............................7

<u>United States v. Mincoff</u>,
    574 F.3d 1186 (9th Cir. 2009)..............................12

<u>United States v. Santiago</u>,
    46 F.3d 885 (9th Cir. 1995)..............................7, 10

<u>United States v. Sayler</u>,
    271 F.R.D. 148 (E.D. Cal. 2010).............................8

<u>United States v. Stever</u>,
    603 F.3d 747 (9th Cir. 2009)................................7

<u>United States v. Stinson</u>,
    647 F.3d 1196 (9th Cir. 2011)..............................12

**STATE CASES**

<u>Chubb & Son v. Superior Ct.</u>,
    228 Cal. App. 4th 1094 (2014)...........................20, 21

<u>Eddy v. Fields</u>,
    121 Cal. App. 4th 1543 (2004)..............................19

<u>General Dynamics Corp. v. Superior Ct.</u>,
    7 Cal. 4th 1164 (1994).....................................21

<u>Tucker Ellis LLP v. Superior Ct.</u>,
    12 Cal. App. 5th 1233 (2017)...............................20

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

**FEDERAL STATUTES**

18 U.S.C. § 3500...................................................7

**STATE STATUTES**

Cal. Corp. Code § 16403(b)........................................15

**FEDERAL RULES**

Fed. R. Crim. P. 16(a)(1)(E)..................................passim

**STATE RULES**

Cal. R. Prof. Conduct 1.0.........................................20

Cal. R. Prof. Conduct 1.16....................................19, 20

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

In February 2019, defendant MICHAEL JOHN AVENATTI ("defendant"), in his individual capacity and on behalf of his former law firm, Eagan Avenatti LLP ("EA LLP"), stipulated to the appointment of a receiver (the "EA Receiver") to take control of EA LLP and its business affairs in connection with a federal judgment debtor proceeding, In re: Eagan Avenatti LLP, No. 8:18-CV-1644-VAP(KES). (André Decl. Ex. 1.)  The stipulated order appointing the EA Receiver (the "Stipulated Receivership Order") provided, among other things, that the EA Receiver would take possession of all EA LLP property, and expressly required defendant to turn over all such EA LLP property to the EA Receiver.  (André Decl. Ex. 2.)

On April 3, 2019, the EA Receiver consented to the Internal Revenue Service – Criminal Investigation ("IRS-CI") creating a forensic image of the computer servers belonging to EA LLP (the "EA Server").  IRS-CI and the United States Attorney's Office for the Central District of California (the "USAO") subsequently obtained a warrant to search the EA Server.  IRS-CI also seized a number of other digital devices belonging to EA LLP (collectively, with the EA Server, the "EA Devices") during the execution of a search warrant at the residence of EA LLP's former office manager ("EA Employee 1") in March 2019.  The USAO understands that the EA Devices contain substantial amounts of attorney-client privileged and highly-confidential information relating to third-parties, the vast majority of which is irrelevant to this prosecution.

The EA Receiver has informed the USAO that EA LLP objects to the USAO providing defendant with complete forensic copies of the EA

Devices.  (André Decl. Ex. 3-4.)  Defendant has moved to compel the USAO to produce to defendant complete forensic copies of the EA Devices.

Defendant is not entitled to complete forensic copies of the EA Devices under Federal Rule of Criminal Procedure 16, Brady v. Maryland, 373 U.S. 83 (1963), or Giglio v. United States, 405 U.S. 150 (1972).  It is undisputed that the EA Devices contain substantial amounts of information that is entirely irrelevant to this prosecution.  Nevertheless, defendant claims that he needs complete forensic copies of the EA Devices so that he can conduct his own searches of the EA Devices.  The criminal discovery rules do not provide defendant with any such right.  The fact that IRS-CI obtained warrants to search the EA Devices does not entitle defendant to conduct his own independent search of the devices.  This would be functionally equivalent to allowing defendant to conduct his own search of a third-party's business premises simply because the government previously executed a search warrant at that location.  Any documents on the EA Devices that the USAO's Privilege Review Team identifies as falling within the scope of the search warrants will be produced to defendant.  This is all the USAO is required to produce under the applicable criminal discovery standards.

Additionally, defendant does not have an independent right to complete forensic copies of the EA Devices.  The EA Devices are not defendant's personal property.  The EA Devices are the property of EA LLP, and any specific client files on the EA Devices belong to EA LLP's legal clients.  Having stipulated to turn over complete control of EA LLP and EA LLP's property, including any "case files" and "electronic records" to the EA Receiver, defendant does not have a

2

right to "unfettered access" to the EA Devices and all of EA LLP's
records or client files.  Rather, the USAO believes it should be left
to the EA Receiver and EA LLP's clients to determine the extent to
which defendant, who has been accused of defrauding his legal clients
out of at least $9 million and numerous other financial fraud and tax
offenses, should be allowed to access EA LLP's property, including
any client files on the EA Devices.

Moreover, there is no merit to defendant's claim that he has
been denied access to the EA Devices.  The USAO has repeatedly
offered alternative procedures that would allow defendant to obtain
any documents on the EA Devices that he believes are necessary to
prepare his defense, while still ensuring that any privileged and
confidential information relating to EA LLP's clients and other
innocent third-parties is adequately protected.  (See CR 45 at 9-10.)
For example, the USAO has offered to allow defendant to examine the
EA Devices at IRS-CI's offices and work directly with the USAO's
Privilege Review Team to identify relevant documents on the EA
Devices for production to the defense.  (Id.)  Similarly, the USAO
understands that the EA Receiver has repeatedly offered to allow
defendant to retrieve documents relating to this prosecution (and/or
for other litigation matters) from the forensic copy of the EA Server
so long as defendant identifies the documents he is seeking and pays
any costs associated with retrieving the documents from the EA
Server.  (André Decl. Ex. 5.)  These alternative procedures offered
by the USAO and the EA Receiver are more than sufficient to ensure
that defendant is able to obtain the information from the EA Devices
that is necessary to prepare his defense.

This Court should deny defendant's motion to compel.

3

1     II.   **STATEMENT OF FACTS**

2           A.   **The EA LLP Receivership**

3           Since approximately September 2018, EA LLP has been a Judgment

4     Debtor in <u>In re: Eagan Avenatti LLP</u>, No. 8:18-CV-1644-VAP (KES) (the

5     "Judgment Debtor Proceedings").  The Judgment Debtor Proceedings

6     arose from a $10 million judgment that had been entered against EA

7     LLP and in favor of one of EA LLP's former partners, J.F., in

8     connection with the 2017 bankruptcy proceedings involving EA LLP, <u>In</u>

9     <u>re: Eagan Avenatti LLP</u>, No. 8:17-bk-11961-CB (the "2017 EA

10    Bankruptcy").

11          On February 12, 2019, J.F. filed a motion in the Judgment Debtor

12    Proceedings seeking the appointment of a receiver for EA LLP and a

13    restraining order against EA LLP.  Among other things, J.F.'s motion

14    accused defendant and EA LLP of bankruptcy fraud and improperly

15    diverting EA LLP's assets to other companies or bank accounts

16    defendant controlled both during and after the 2017 EA Bankruptcy.

17    <u>See</u> Motion, <u>In re: Eagan Avenatti LLP</u>, No. 8:18-CV-1644-VAP (KES),

18    Dkt. 51 (Feb. 12, 2019).

19          On February 13, 2019, J.F. and defendant, both individually and

20    as Managing Partner of EA LLP, filed a joint stipulation seeking the

21    appointment of the EA Receiver and the issuance of a restraining

22    order against EA LLP and defendant.  (André Decl. Ex. 1.)  In

23    exchange for defendant agreeing to the appointment of the EA Receiver

24    and the terms of the Stipulated Receivership Order, J.F. agreed to

25    withdraw his motion.  (André Decl. Ex. 1.)

26          Later that the same day, the Honorable Karen E. Scott, United

27    States Magistrate Judge, entered the Stipulated Receivership Order.

28    (André Decl. Ex. 2.)  As discussed further below (<u>see</u> <u>infra</u>

                                        4

§ III(B)(1)), the Stipulated Receivership Order provided the EA Receiver with broad authority over EA LLP's operations and financial affairs, and required the EA Receiver to take possession of all of EA LLP's property, including "past and current client engagement contracts, case files, books and records, electronic files, and other documents." (André Decl. Ex. 2 (emphasis added).)  The Stipulated Receivership Order also expressly required defendant to turn over all such EA LLP property, including its computer servers and client files, to the EA Receiver.  (Id., Ex. 2.)

Defendant, however, did not comply with the Stipulated Receivership Order, and failed to turn over to the EA Receiver all EA LLP property, including the EA Server and EA LLP's client files. (André Decl. Ex. 5 at pg. 2, ¶ 6.)  Indeed, the EA Receiver has alleged that defendant intentionally sought to hide the EA Server and other EA LLP property from the EA Receiver.  (Id.)

**B.   The EA Devices**

On March 25, 2019, defendant was arrested pursuant to a criminal complaint and arrest warrant issued in this district (CR 1; CR 13), and a separate arrest warrant issued in the Southern District of New York.  Simultaneous to defendant's arrest, IRS-CI executed search warrants at EA Employee 1's residence and two other locations.  (See CR 45; CR 49; André Decl. Ex. 17.)  IRS-CI seized a number of digital devices belonging to EA LLP from EA Employee 1's residence.  (See CR 45; CR 49.)

During the execution of the search warrant at EA Employee 1's residence on March 25, 2019, IRS-CI learned that the EA Servers were being stored at MixinIT, a company in Orange County that stores and manages computer servers.  On March 27, 2019, the USAO sent MixinIT's

5

1  legal counsel a preservation request in which the USAO requested that

2  MixinIT preserve any documents or data stored on the EA Servers.[1]

3  (André Decl. Ex. 6.)

4      On April 3, 2019, the EA Receiver consented to IRS-CI creating a

5  forensic copy of the EA Server, which was still in the possession of

6  MixinIT.  (André Decl. Ex.7.)  IRS-CI took temporary custody of the

7  EA Server, created a forensic copy of the EA Server at IRS-CI's

8  offices, and then returned the original EA Server to the EA Receiver

9  later that month.  (André Decl. Ex. 5 at pg. 3, ¶ 8.)  The EA

10  Receiver, however, did not consent to IRS-CI or the USAO conducting a

11  search of the EA Server.  In May 2019, the USAO and IRS-CI obtained a

12  warrant to search the EA Server.  (André Decl. Ex. 18.)

13      The EA Receiver has advised the USAO that EA LLP objects to the

14  USAO providing defendant with complete forensic copies of the EA

15  Server or other EA Devices.  (André Decl. Exs. 3-4.)

16  **III. ARGUMENT**

17      **A.   The Criminal Discovery Rules Do Not Provide Defendant with
   the Right to Complete Forensic Copies of the EA Devices**

18

19      The Court's authority over discovery in a criminal case stems

20  from three sources.  First, Rule 16 of the Federal Rules of Criminal

21  Procedure ("Rule 16") establishes guidelines for pretrial production

22  by the government of certain limited categories of material,

23  including items "material to preparing the defense."  Fed. R. Crim.

24  P. 16(a)(1)(E)(i).  Second, under Brady v. Maryland, 373 U.S. 83

25  (1963), and Giglio v. United States, 405 U.S. 150 (1972), the

26

27     [1] Defendant's motion claims that the EA Servers "were taken
   'offline' by the government."  (Mot. at 4.)  This is baseless.  The

28  government never requested or directed MixinIT to take the EA Servers
   offline.

government is obligated to produce evidence in its possession that is favorable for the defense or that may be used by the defense for impeachment purposes.  Finally, under 18 U.S.C. § 3500 et seq. (the Jencks Act), statements by a government witness that relate to the subject matter of the witness's testimony are required to be disclosed to the defense after the witness has testified on direct examination.  Here, defendant has failed to establish that he is entitled to complete forensic copies of the EA Devices under any of the applicable criminal discovery standards.[2]

      1.   Defendant Is Not Entitled to Complete Forensic Copies of the EA Devices Under Rule 16

Under Rule 16 the government is required to provide defendant with discovery when: (1) the information sought is within the "possession, custody, or control" of the government; and (2) the item sought is "material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).[3]  To compel the government to produce discovery under Rule 16, defendant must make a "threshold showing of materiality." United States v. Stever, 603 F.3d 747, 752 (9th Cir. 2009) (citing United States v. Santiago, 46 F.3d 885 (9th Cir. 1995).)  "Neither a general description of the information sought nor conclusory allegations of materiality suffice."  United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1995); see also Santiago, 46 F.3d at 895

---

[2] As defendant's motion does not seek production of the EA Devices under the Jencks Act, the USAO has not addressed such a claim.

[3] Rule 16(a)(1)(E) also requires the government to provide defendant with an opportunity to inspect and copy any items if "the government intends to use the item its case-in-chief at trial" or "the item was obtained from or belongs to defendant."  The government will obviously produce any items on the EA Devices it intends to use at trial.  And, as discussed at length above and below, the EA Devices do not belong to defendant.

7

1   (holding that a defendant must show "case specific facts which would

2   demonstrate the materiality of the information sought").  Defendant

3   has not and cannot meet this burden.

4        First, only a small portion of the documents and data stored the

5   EA Devices are relevant to this case.  The EA Server alone contains

6   approximately 3 million emails and 19 million computer files.  (See

7   CR 49 at 4.)  Defendant concedes that the EA Server contains "close

8   to all of [defendant's] business and client files for over a decade,

9   including all of his emails."  (Mot. at 3.)  Because the vast

10  majority of the documents on the EA Server are irrelevant to this

11  prosecution, the USAO is not required to produce the entirety of the

12  EA Server or other EA Devices under Rule 16.

13       Second, defendant is not actually seeking any particular

14  documents or records from the EA Devices.  Instead, defendant claims

15  he is entitled to a forensic copy of and "unfettered access" to the

16  EA Devices, presumably, so that defendant can perform his own

17  searches of the EA Devices.  Courts have, however, repeatedly held

18  that Rule 16 does not provide a defendant with the right to conduct a

19  "shotgun fishing expedition for evidence."  United States v.

20  Anderson, 481 F.2d 685, 694 (4th Cir. 1973); see also United States

21  v. Sayler, 271 F.R.D. 148, 158 (E.D. Cal. 2010) (denying Rule 16

22  motion where the defendant "simply desire[d] to look through a

23  potentially massive amount of documents in different categories on

24  the chance that something good might turn up for him in that

25  production").

26       The fact that IRS-CI and the USAO obtained warrants to search

27  the EA Devices does not alter this analysis or provide defendant with

28  a coextensive right to conduct his own search of the EA Devices.  For

8

example, defendant has no right or basis to conduct his own search of EA Employee 1's residence or Law Firm 1's business premises merely because the government searched those locations.  Changing the search location from a physical location to a digital device does not create such a right.

Unlike the search of a physical location, the government is typically provided substantial amounts of time to search digital devices because of the volume of data stored on digital devices and the need to use specific forensic tools and protocols to conduct such searches.  A search of a third-party's computer or other digital devices, however, implicates the same privacy concerns as the search of any physical location and therefore should be entitled to the same protections.  Here, the government is required to follow specific protocols, including the use of a separate Privilege Review Team, to avoid the unnecessary disclosure of attorney-client privileged and confidential information relating to third-parties.  Moreover, the government can only seize documents from the EA Devices that fall within the scope of the items to be seized identified in the warrants.  Providing defendant with "unmonitored and unfettered" access to the EA Devices to conduct his own search of the devices is inconsistent with the warrants themselves, would potentially violate the privacy rights of third-parties, and is not required under the applicable case law regarding criminal discovery.  At most, under Rule 16, defendant is entitled to "inspect" the EA Devices and to obtain a "copy" of the documents on the EA Devices that are material to his defense.  Fed. R. Crim. P. 16(a)(1)(E)(i).  Crucially, this is exactly what the USAO has repeatedly offered defendant.

Third, defendant has failed to identify with any specificity the documents he claims must be produced or sufficient facts establishing the materiality of those documents.  Instead, defendant merely identifies a number of categories of documents that he claims he is "unable to access," including: (1) correspondence with clients; (2) client files; (3) time records; (4) settlement communications and documentation; (5) correspondence relating to other charges in the indictment; (6) defendant's emails with his accountants; and (7) accounting information relating to the clients at issue.  (Mot. at 3-4.)  Such "general description[s]" are insufficient to compel disclosure under Rule 16.  Santiago, 46 F.3d at 894-95.

Defendant's motion ignores the fact that the vast majority of the documents to which defendant claims he has been denied access have already been obtained from third-parties and produced to defendant.  For example, IRS-CI obtained relevant correspondence with defendant from each of the victim-clients identified in the indictment, and obtained the relevant settlement agreements and settlement correspondence directly from opposing counsel and/or the victim-clients.  The government produced these documents months ago.  Similarly, the USAO produced approximately 1,500 electronic files obtained from defendant's former accountant, including approximately 800 emails.  Additionally, the USAO's Privilege Review Team has already located on one of the EA Devices copies of EA LLP's QuickBooks accounting records, which are being processed and should be produced to defendant shortly.  In fact, the only category of records that defendant identified in his motion that have not already been produced are defendant's "time records."  Such records, however, are likely irrelevant to the charges because each of the victim-

1    clients identified in the indictment had agreed to pay EA LLP a

2    contingency fee, as opposed to an hourly rate.  (See, e.g.,

3    Indictment ¶¶ 7(e), 7(m), 7(r), 7(z).)

4         Although it is possible, if not likely, that additional

5    documents relevant to the indictment will be found on the EA Devices,

6    defendant has not identified any such documents with specificity.

7    There is also no reason to believe that the general categories of

8    documents defendant has identified will not be located by the

9    Privilege Review Team during its search of the EA Devices and then

10   produced to the defense.  The categories of documents defendant

11   identified all clearly fall within the scope of the search warrants.

12   (See André Decl. Exs. 17-18.)  And the USAO has repeatedly advised

13   defendant that it intends to produce to the defense all documents the

14   Privilege Review Team locates on the EA Devices that fall within the

15   scope of the warrants on a rolling basis going forward.[4]  (CR 49.)

16        2.   The USAO Has Complied With and Will Continue to Comply
               with Its Obligations Under *Brady* and *Giglio*
17

18        Defendant's motion also summarily asserts that the USAO is

19   required to provide defendant with complete forensic copies of the EA

20   Devices because they contain Brady and Giglio materials.  (Mot. at

21   3.)  This claim fails for multiple reasons.

22        First, the USAO is aware of its obligations under Brady and

23   Giglio.  The USAO has already made, and will continue to make, timely

24   disclosures of any such materials to defendant, including any such

25   documents that are located on and seized from the EA Devices.

26

27        [4]  Undersigned counsel understands that the Privilege Review
     Team intends to produce to defendant any documents on the EA Devices
28   that fall within the scope of the search warrants, even prior to
     completing its privilege review.

                                       11

1   Second, defendant's general assertions regarding certain
2   categories of documents that might be found on the EA Devices (Mot.
3   at 3) are insufficient to establish a right to the entire EA Devices
4   pursuant to Brady or Giglio.   Brady and Giglio do not require the
5   government to disclose neutral, irrelevant, speculative, or
6   inculpatory evidence.   See, e.g., United States v. Stinson, 647 F.3d
7   1196, 1208 (9th Cir. 2011).   Rather, evidence is material for Brady
8   purposes only if a "reasonable probability" exists that the result of
9   the proceeding would be different if the government disclosed the
10  information to the defense.   United States v. Lucas, 841 F.3d 796,
11  807 (9th Cir. 2016) (citing United States v. Bagley, 473 U.S. 667,
12  682 (1985).)   "[M]ere speculation about material in the government's
13  files" is insufficient to merit production.   United States v.
14  Mincoff, 574 F.3d 1186, 1200 (9th Cir. 2009) (internal quotation
15  marks and citation omitted).   Defendant's motion fails to identify
16  any specific evidence on the EA Devices that would fall under Brady
17  or Giglio, fails to explain how such documents are material, and
18  fails to provide the Court with sufficient facts to establish that
19  such documents exist.

20  Third, contrary to defendant's claims, Brady and Giglio do not
21  provide defendant with a right to "unfettered access" to the EA
22  Devices.   The Supreme Court and Ninth Circuit have rejected similar
23  arguments and repeatedly held that defendants do not have a right to
24  conduct an unlimited or unsupervised search of the government's
25  files.   See Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987) ("A
26  defendant's right to discover exculpatory evidence does not include
27  the unsupervised authority to search through the [government's]
28  files."); Lucas, 841 F.3d at 807 ("Brady does not permit a defendant

12

1    to sift through information held by the government to determine

2    materiality.").

3        **B.   Defendant Does Not Have An Independent Right to Complete
              Forensic Copies of the EA Devices**

4

5        Defendant's motion to compel rests largely on his claim that he

6    has an independent right to forensic copies of and "unfettered

7    access" to the EA Devices.  Defendant is incorrect.  The EA Devices

8    themselves and any attorney work-product on the EA Devices are the

9    property of EA LLP, and the client files on the EA Devices belong to

10   EA LLP's individual legal clients.  Having stipulated that all such

11   property shall be turned over to and maintained by the EA Receiver,

12   defendant no longer has a right to unlimited access to the EA Devices

13   or the records contained therein.

14       **1.   Defendant Stipulated that the EA Receiver Would Have
              Complete Control Over EA LLP's Property**

15

16       Defendant devotes substantial portions of his motion and

17   supporting documentation to complaining that the EA Receiver has

18   improperly denied defendant access to the EA Server.  Defendant's

19   motion, however, completely ignores the fact that defendant

20   stipulated to the appointment of the EA Receiver and fails to

21   mention, let alone address, the terms of the receivership to which

22   defendant expressly agreed.

23       The Stipulated Receivership Order provides the EA Receiver with

24   extremely broad authority over EA LLP's operations and financial

25   affairs.  (André Decl. Ex. 2.)  Among other things, the Receivership

26   Order states the EA Receiver shall have authority to:

27   • Take possession of and manage the business of EA and its
        tangible and intangible property with all the usual powers,

28

rights and duties of receivers appointed by this Court or otherwise defined by statute . . . (<u>Id</u>., Ex. 2 at ¶ 9.)

- Operate EA and take possession of all accounts relating to EA and its property. (<u>Id.</u>, Ex. 2 at ¶ 12(a).)

- <u>Take possession of all past and current client engagement contracts, case files, books and records, electronic files,</u> and other documents necessary to manage the Receivership Assets without limitation. (<u>Id.</u>, Ex. 2 at ¶ 14(a) (emphasis added).)

- Have access to and become the "administrative user" for all of EA's software programs, servers and website. (<u>Id.</u>, Ex. 2 at 14(l).)

Moreover, the Receivership Order contained a restraining order/injunction section that explicitly required defendant to:

- <u>Immediately turn over possession of all property of EA to the Receiver</u> when the appointment becomes effective, <u>including but not limited to all past and current client engagement contracts, case files, books and records, electronic files,</u> and other documents necessary to manage the Receivership Assets and all funds in EA accounts, including client trust accounts. (<u>Id.</u>, Ex. 2 at ¶ 27(a) (emphasis added).)

- <u>Immediately</u> turn over to the Receiver all keys and passwords relating to the property and <u>grant the Receiver unfettered access to EA and all premises related thereto, and all EA computer systems.</u> (<u>Id.</u>, Ex. 2 at ¶ 27(b) (emphasis added).)

Crucially, nothing in the Stipulated Receivership Order requires the EA Receiver to provide defendant with "unfettered and unmonitored access" to or control of EA LLP's property, including any case files, books and records, or electronic files stored on the EA Devices. (<u>Id.</u>, Ex. 2.) Rather, under the Receivership Order, it is the EA Receiver's obligation to maintain EA LLP's property, safeguard any case files, and determine the extent to which defendant should be entitled to access EA LLP's property and records. Having chosen to provide the EA Receiver with such control over EA LLP's property,

14

1   defendant should not now be allowed to circumvent the Stipulated

2   Receivership Order or usurp the EA Receiver's responsibilities.

3       Defendant attempts to get around the Stipulated Receivership

4   Order in two ways.  First, defendant claims that he is entitled to

5   "unfettered access" to the EA Devices because EA LLP is defendant's

6   "wholly owned law firm" and defendant "owns 100% of the firm."  (Mot.

7   at 4, 5.)  Although this claim is legally irrelevant in light of the

8   Stipulated Receivership Order, it also appears that defendant does

9   not currently own EA LLP.  Specifically, in April 2019, the Superior

10  Court of California for Orange County entered an order directing

11  defendant to deliver the entirety of his ownership interest in EA LLP

12  and Avenatti & Associates, APC, to his ex-wife, L.S.[5]  (André Decl.

13  Ex. 8.)

14      Second, defendant claims that as a partner in EA LLP he is

15  "entitled to the entirety of the law firm's files" under California

16  Corporation Code section 16403(b).  (Mot. at 5.)  This argument

17  fails.  To the extent section 16403 remains applicable despite the

18  Stipulated Receivership Order, section 16403(b) merely provides

19  defendant with an "opportunity to inspect and copy" EA LLP's records

20  "during normal business hours."  Id.  It does not state that

21  defendant is entitled to "unfettered access" of all of EA LLP's books

22  and records, as defendant claims.  Id.  Moreover, section 16403(b)

23  states that the partnership "may impose a reasonable charge, covering

24  the costs of labor and material, for copies of documents furnished."

25  Id.  Thus, section 16403(b) is entirely consistent with the terms

26  under which the EA Receiver has offered to provide defendant with

27

28      [5]  The USAO recognizes that defendant may be attempting to set
    aside or appeal this order.

15

1    access to the EA Server, namely, that defendant would be allowed to

2    access the EA Server so long as he identifies the records he is

3    seeking and pays the costs associated with the retrieval of such

4    records.  (André Decl. Ex. 5 at 3, ¶ 9.)

5              2.   The EA Devices Are the Property of EA LLP

6         Defendant does not and cannot dispute that the EA Server and

7    other EA Devices are the property of EA LLP.  In connection with the

8    2017 EA Bankruptcy, defendant, in his capacity as the Managing

9    Partner of EA LLP, repeatedly identified $100,000 of computer

10   equipment (which presumably included all of the EA Devices) as assets

11   of EA LLP.  (See, e.g., André Decl. Ex. 9 at pg. 2.)  Moreover,

12   during his Section 341(a) debtor's examination on July 14, 2017,

13   defendant made clear that EA LLP's computers were the property of EA

14   LLP, as opposed to the personal property of defendant or other EA LLP

15   employees.  When addressing a computer that had been issued to former

16   EA LLP attorney S.S., defendant testified as follows:

17        TRUSTEE HAUSER:     Okay. Then at page seven of 23 you
                              added a claim against [S.S.] for theft
18                            of the laptop, which we discussed at
                              the last meeting. Was that a laptop
19                            that was issued to him by the firm or?

20        DEFENDANT:          Yes.

21        TRUSTEE HAUSER:     And it was specifically said that the
                              laptop was not – is property of the
22                            firm and it's not your personal
                              property?
23
          DEFENDANT:          There's no question that that laptop
24                            was the property of the firm.  When we
                              demanded that he return it, he actually
25                            returned the -- this should say, "theft
                              of laptop computer hard drive." When we
26                            demanded that he return it after his
                              termination from the firm, he returned
27                            the laptop but had replaced the hard
                              drive in the laptop.
28

                                   16

| | | |
|---|---|---|
| TRUSTEE HAUSER: | So, you really wanted the hard drive back? |
| DEFENDANT: | Yes. |
| TRUSTEE HAUSER: | Okay. |
| DEFENDANT: | It's property of the estate. |

(André Decl. Ex. 11 at pgs. 6-11 (emphasis added).)

There is also ample evidence that the EA Servers are EA LLP's property.  In August 2018, defendant purportedly executed an "Asset Purchase Agreement" in which EA LLP agreed to sell the EA Servers to a law firm with which defendant and EA LLP had a prior business relationship ("Law Firm 1").  (André Decl. Ex. 12.)  Although the USAO understands that the EA Servers and other property identified in the Asset Purchase Agreement were never actually transferred to Law Firm 1, (André Decl. Ex. 5 at pg. 2, ¶ 6), the agreement, which defendant signed, confirmed that the EA Servers belonged to EA LLP and were not defendant's personal property.  Additionally, between November 2018 and February 2019, EA LLP retained the services of MixinIT to store and maintain the EA Servers.  (André Decl. Ex. 13.)  It was not until February 26, 2019, after the appointment of the EA Receiver, that EA Employee 1 directed MixinIT to change the invoices to reflect that the contracting party was Law Firm 1 rather than EA LLP.  (André Decl. Ex. 14.)  Based on emails received from MixinIT, EA Employee 1 continued to exercise control over EA LLP employees' access to the EA Server until at least March 15, 2019. (André Decl. Ex. 15.)

3.   <u>Any Client-Related Records on the EA Devices Are
Either the Property of EA LLP's Clients or EA LLP</u>

Defendant also does not have an independent right to the
documents and data stored on the EA Devices.  Rather, any documents
stored on the EA Devices belong to either EA LLP's legal clients or
to EA LLP.

First, defendant's claim that "all of Eagan Avenatti's clients
were clients of [defendant]" appears to be false.  (Mot. at 5.)
Defendant has repeatedly testified under oath that EA LLP's clients
had a contractual relationship with the firm -- not with any
individual attorney.  During the June 12, 2017, Section 341(a)
hearing, defendant testified as follows:

> <u>[T]he firm has a contractual agreement with the client in
> that case, the firm, not the individual attorneys working
> on that case</u>. Just like in the instance of other cases in
> our firm, it's the firm on one side of the contract, not an
> individual attorney, and the client on the other side of
> the case.

(André Decl. Ex. 10 at pg. 8 (emphasis added).)  Similarly, when
addressing a fee dispute between EA LLP and J.F., a former EA LLP
partner, defendant stated:

> These are not [J.F.'s] cases.  <u>These were cases where on
> one side of the contract you have Eagan Avenatti, and on
> the other side of the contract you have the client</u>.  The
> fee agreements were not with [J.F.] individually, period.

(André Decl. Ex. 10 at pg. 11 (emphasis added).)

Defendant confirmed this position during the subsequent
Section 341(a) hearing on July 14, 2017, when defendant testified
that clients defendant brought into EA LLP were "a client of the firm
. . . <u>not a client of me individually</u>."  (André Decl. Ex. 11 at pg.
10 (emphasis added).)

18

1   Defendant's claim is also inconsistent with the standard

2   Attorney-Client Fee Agreements that defendant had EA LLP's clients

3   sign.  For example, the Attorney-Client Fee Agreement for Client 3

4   explicitly states that the contractual relationship was between EA

5   LLP and EA LLP's legal clients.  (André Decl. Ex. 13.)  Although

6   defendant signed the agreement on behalf of EA LLP, defendant was not

7   an actual party to the contract.  (Id.)

8   Second, under California law, it is well-established that a

9   client's legal files belong to the individual legal client, rather

10  than the attorney or law firm that represented the client.  Eddy v.

11  Fields, 121 Cal. App. 4th 1543, 1548 (2004) ("In general, the

12  documents within an attorney's legal file belong to the client.").

13  For this reason, California Rule of Professional Conduct 1.16(e)

14  ("Rule 1.16") specifically requires attorneys to release to the

15  client, at the request of the client, all "client materials and

16  property."  Pleadings, correspondence to and from the attorney, and

17  investigation or research reports prepared at the attorney's

18  direction are all considered to be part of the client's file and

19  therefore the client's property.  Id.

20  Rule 1.16(e), however, does not, as defendant claims (Mot. at

21  5), provide defendant with a right to unlimited and unfettered access

22  to EA LLP's client files.  Comment 6 to Rule 1.16 states, in full:

23      Paragraph (e)(1) does not prohibit a lawyer from making, at
        the lawyer's own expense, and retaining copies of papers
24      released to the client, or to prohibit a claim for the
        recovery of the lawyer's expense in any subsequent legal
25      proceeding.

26  Cal. R. Prof. Conduct 1.16, cmt. 6.  Although Comment 6 provides that

27  defendant could have maintained personal copies of the files for any

28  EA LLP clients for whom defendant personally provided legal services,

19

defendant did not do so here.  All of EA LLP's clients' files appear to have been maintained solely by EA LLP on EA LLP's property.  Defendant then stipulated that any such records would be turned over to and maintained by the EA Receiver.  Simply put, the fact that defendant was not prohibited from retaining copies of client files under Rule 1.16, does not provide defendant with an ongoing right to access all of EA LLP's files at any time in the future.  Indeed, the California Rules of Professional Conduct do not confer any contractual or property rights on defendant -- they merely describe and regulate the ethical obligations of attorneys licensed to practice law in California.  Cal. R. Prof. Conduct 1.0.[6]

Third, any attorney-work product on the EA Devices belongs to EA LLP.  See Tucker Ellis LLP v. Superior Court, 12 Cal. App. 5th 1233, 1236 (2017) (maintaining the law firm holds the attorney work product privilege in situations where the client's contractual relationship is with the law firm as opposed to the individual attorney).

Finally, defendant's reliance on Chubb & Son v. Sup. Ct., 228 Cal. App. 4th 1094, 1103-1109 (2014), is misplaced.  Defendant cites Chubb for the proposition that an attorney is "entitled to a copy [of a] client file from [his] former law firm even after the attorney-

_____

[6] Moreover, defendant himself has failed to comply with the very same Rule of Professional Conduct -- Rule 1.16 -- upon which he now relies.  For example, in November 2018, Client 3 expressly requested that defendant transfer all existing client files relating to EA LLP's representation of Client 3 to Client 3's new attorneys.  See Bledsoe Decl., In re Avenatti, No. 19-TE-30259-YDR (June 5, 2019 Cal. Bar Ct.).  Yet, between November 2018, and defendant's arrest on March 25, 2019, defendant failed to turn over Client 3's files to Client 3's new attorneys (id.) even though defendant now admits he "could remotely access any file located on the servers at will" up until that point in time (Mot. at 4).  Defendant cannot legitimately claim he is entitled to keep a copy of "papers released to the client" under Rule 1.16(e), when he never actually released the client file as he was required to do.

20

1    client relationship ended." (Mot. at 5.) But Chubb does not contain

2    any such holding, let alone support that proposition. Chubb involved

3    a wrongful termination lawsuit the plaintiff brought against her

4    former law firm and an insurance company, whose insureds she

5    represented. Chubb merely held that the litigants could disclose

6    attorney-client privileged information relating to the law firm's

7    former clients that was already in the litigants' possession to the

8    litigants' own individual attorneys. Id. at 1097. Indeed, Chubb

9    directly contradicts defendant's arguments. Although Chubb

10   recognized that a plaintiff attorney could be entitled to "limited"

11   discovery of privileged information relating to third-parties that is

12   "necessary" to pursue her claims, it also recognized that the

13   defendants would be entitled to "redact or withhold documents in

14   order to protect the attorney-client privilege and confidential

15   information of the third-party clients." Id. at 1102-06. Chubb

16   further stated that the use of any such privileged information must

17   be subject to "careful controls against inappropriate disclosure."

18   Id. at 1106 (citing General Dynamics Corp. v. Superior Ct., 7 Cal.

19   4th 1164 (1994).) The "limited" disclosure of privileged information

20   subject to "careful controls" contemplated in Chubb is vastly

21   different than the "unmonitored and unfettered access" to which

22   defendant claims he is entitled here. (Mot. at 7.)

23       C.   **Defendant's Demand that the EA Receiver Be Forced to
            Provide Defendant With Access to the Actual EA Server Is
24          Meritless**

25       Defendant also requests that the Court or the USAO force the EA

26   Receiver to provide defendant with access to the actual EA Server.

27   This request is frivolous. The EA Server is in the custody of the EA

28   Receiver. The USAO has no control over the EA Receiver and the fact

21

1   that the EA Receiver previously consented to IRS-CI making a forensic

2   copy of the EA Server does not establish otherwise.

3       Additionally, defendant has failed to cite any authority that

4   would support his request or provide this Court with a legitimate

5   basis to issue such an order.  To the extent defendant believes the

6   EA Receiver must reconnect the EA Server and provide defendant with

7   ongoing access, defendant should raise this issue with United States

8   District Court Judge Virginia A. Phillips or Judge Scott, who are

9   overseeing the EA LLP receivership in <u>In re: Eagan Avenatti LLP</u>, No.

10  8:18-CV-01644-VAP-KES.

11      **D.   Defendant Has Not Been Denied Access to Relevant**
        **Information on the EA Devices**

12

13      Defendant devotes the majority of his five-page motion to

14  complaining that he has been denied access to files on the EA Server

15  that are purportedly critical to his defense.  (<u>See, e.g.</u>, Mot. at 6,

16  n.2.)  This is plainly inaccurate.  Although the USAO and EA Receiver

17  have declined to provide defendant with a complete forensic copy of

18  the EA Server, both the USAO and the EA Receiver have repeatedly

19  offered to provide defendant with opportunities to access the EA

20  Server and obtain any documents relevant to this prosecution.

21      For the past three months, the USAO has repeatedly offered to

22  discuss alternative procedures that would allow defendant to obtain

23  the information he believes is necessary, while still protecting

24  privileged and confidential information relating to innocent third-

25  parties.  (<u>See</u> CR 44 at 9-10.)  Among other things, the USAO has

26  offered to allow defendant to inspect the EA Devices at IRS-CI's

27  office so he can identify relevant information.  (<u>Id</u>.)  The USAO has

28  also offered to allow defendant to work directly with the USAO's

Privilege Review Team to identify and expedite the production of any information on the EA Server that defendant believes is relevant to his defense.[7]  (CR 49 at 5, n.3.)

Similarly, the documents defendant submitted in support of his motion clearly demonstrate that the EA Receiver has offered to provide defendant with access to files on the EA Server.  (See Bastian Decl. Exs. A-C.)  Since May 2019, the EA Receiver has consistently told defendant that the EA Receiver would allow defendant to retrieve documents from the EA Server relevant to this prosecution so long as defendant identifies the documents he is seeking and pays the costs associated with retrieving the documents from the forensic copy of the EA Server.  (See Bastian Decl. Exs. A-C; see also André Decl. Ex. 5.)

The procedures proposed by the USAO and the EA Receiver are more than sufficient to ensure that defendant is able to obtain any information on the EA Devices that defendant believes is necessary to his defense.  Yet, defendant has repeatedly declined these offers and failed to propose any alternative procedures that would address the EA Receiver's concerns.  (See André Decl. Exs. 4, 5; infra § III(E).)

The USAO is also concerned that defendant is more interested in using the EA Server as a basis to delay this prosecution and other judicial proceedings, than he is in actually accessing the materials on the EA Devices.  Since May 2019, the USAO has consistently taken the position that it could not produce complete forensic copies of

_____

[7] The USAO's proposed approach would likely allow defendant to access any relevant information on the EA Devices in a much more efficient and timely manner because the USAO has already devoted substantial resources to processing the data so that it is easily searchable and any relevant documents can be produced in database load files.  (See CR 49 at 3-4.)

the EA Devices without the EA Receiver's consent and repeatedly
requested that the parties seek to resolve this issue as soon as
possible.  Nevertheless, it took defendant over two months to file
the instant motion to compel, which contains only five pages of
argument or analysis.  Defendant has also never sought relief from
Judge Phillips or Judge Scott, who are overseeing the EA LLP
receivership and could have afforded defendant, if appropriate, the
relief he is seeking here.  If defendant in fact had a critical need
to access the EA Devices or believed he was entitled to such access
under the terms of the Stipulated Receivership Order, defendant's
actions likely would have been different.

**E.   Providing Defendant With Complete Forensic Copies of the EA
       Devices Raises Legitimate Concerns**

The EA Receiver has indicated that it is concerned that if
defendant had complete forensic copies of the EA Server and/or other
EA Devices, defendant may attempt to use the records and EA LLP
client files contained therein for improper purposes.  The USAO
believes that the EA Receiver's concerns are well-founded and provide
a basis to deny defendant "unmonitored and unfettered access" to the
EA Devices.

Among other things, defendant is charged in this case with
embezzling at least $9 million from his legal clients.  (Indictment
¶ 7.)  Defendant has also been indicted in the Southern District of
New York for attempting to use information he appears to have
obtained during his representation of a legal client to extort Nike
out of approximately $20 million, see United States v. Avenatti, No.
1:19-CR-373, and stealing approximately $148,750 from another former
legal client, see United States v. Avenatti, No. 1:19-CR-374-DAB.

Additionally, defendant has a history of leaking confidential information to the press.  See, e.g., Criminal Complaint, United States v. Fry, No. 3:19-CR-102-EMC, Dkt. 1 (N.D. Cal. Feb. 4, 2019) (discussing defendant's role in leaking confidential Suspicious Activity Reports to the press and public).  Indeed, shortly after defendant was indicted in this case, defendant threatened to disclose highly confidential information regarding one of the alleged victims on his Twitter account.  (See CR 25.)

To the extent Court is inclined to grant defendant any relief in connection with his motion, the USAO would request that the Court impose significant restrictions on defendant's ability to access or use the materials in order to ensure that the rights of EA LLP and its clients are adequately protected.

**IV.  CONCLUSION**

The only issue properly before this Court is whether defendant is entitled to complete forensic copies of the EA Devices under the applicable criminal discovery standards.  Defendant is not.  For this reason and the additional reasons set forth above, this Court should deny defendant's motion.  The USAO, however, remains committed to working with defendant to identify and locate any documents stored on the EA Devices that defendant believes are necessary to his defense.

## DECLARATION OF JULIAN L. ANDRÉ

I, Julian L. André, declare as follows:

1. I am an Assistant United States Attorney ("AUSA") with the United States Attorney's Office in the Central District of California ("USAO"). I am one of the prosecutors assigned to <u>United States v. Michael John Avenatti</u>, SA CR No. 19-061-JVS.

2. Attached hereto as Exhibit 1 is a copy of the Joint Stipulation re Appointment of Receiver and Restraining Order filed in <u>In re: Eagan Avenatti LLP</u>, No. 8:18-CV-1644-VAP-KES, on February 13, 2019.

3. Attached hereto as Exhibit 2 is a copy of the Joint Stipulation and Order re Appointment of Receiver and Restraining Order filed in <u>In re: Eagan Avenatti LLP</u>, No. 8:18-CV-1644-VAP-KES, on February 13, 2019.

4. Attached hereto as Exhibit 3 is a copy of a letter I sent to John Reitman, counsel for the court-appointed receiver for Eagan Avenatti LLP ("EA LLP"), on or about June 19, 2019. The name of an EA LLP employee ("EA Employee 1") referenced in the letter has been redacted.

5. Attached hereto as Exhibit 4 is a copy of a letter I received from John Reitman on or about July 1, 2019.

6. Attached hereto as Exhibit 5 is a copy of the Declaration of John P. Reitman filed on or about July 10, 2019, in the pending California State Bar proceedings against defendant MICHAEL JOHN AVENATTI ("defendant"), <u>In re Avenatti</u>, No. 19-TE-30259-YDR.

7. Attached hereto as Exhibit 6 is a copy of a preservation request that AUSA Brett A. Sagel emailed to counsel for MixinIT on or about March 27, 2019.

8.    Attached hereto as Exhibit 7 is a true and correct copy of an email from John Reitman to AUSA Brett A. Sagel on or about April 3, 2019.

9.    Attached hereto as Exhibit 8 is a copy of an Order to Deliver Specific Property filed on April 4, 2019, in defendant's divorce proceedings pending in the Superior Court of California for Orange County.

10.   Attached hereto as Exhibit 9 is a schedule of assets filed by EA LLP on July 11, 2017, in <u>In re: Eagan Avenatti LLP</u>, No. 8:17-bk-11961-CB (the "2017 EA Bankruptcy").

11.   Attached hereto as Exhibit 10 are excerpts from a transcript of defendant's June 12, 2017, testimony during the Section 341(a) hearing in connection with 2017 EA Bankruptcy.

12.   Attached hereto as Exhibit 11 are excerpts from a transcript of defendant's July 14, 2017, testimony during the Section 341(a) hearing in connection with 2017 EA Bankruptcy.

13.   Attached hereto as Exhibit 12 is a copy of an Asset Purchase Agreement between EA LLP and a law firm with which EA LLP and defendant had a business relationship ("Law Firm 1").  The identifying information for Law Firm 1 has been redacted from Exhibit 12.

14.   Attached hereto as Exhibit 13 are copies of invoices MixinIT produced to the USAO.  The identifying information for Law Firm 1 has been redacted from Exhibit 13.

15.   Attached hereto as Exhibit 14 is a copy of a February 26, 2019, email between EA Employee 1 and a representative for MixinIT. The identifying information for EA Employee 1 and Law Firm 1 has been redacted from Exhibit 14.

16.   Attached hereto as Exhibit 15 is a copy of a March 15, 2019, email between EA Employee 1 and a representative for MixinIT. The identifying information for EA Employee 1 and other former EA LLP employees has been redacted from Exhibit 15.

17.   Attached hereto as Exhibit 16 is a copy of a July 2, 2014, Attorney-Client Fee Contract entered into between EA LLP and "Client 3" (as named in the indictment).   The identifying information for Client 3 has been redacted from Exhibit 16.

18.   Exhibit 17 is a copy of the warrant to search the residence of EA Employee 1 issued on March 24, 2019, in case number 8:19-MJ-243.   Because the search warrant was filed under seal and remains under seal, the USAO has applied to file Exhibit 17 separately under seal.

19.   Exhibit 18 is a copy of the warrant to search the computer server belonging to Eagan Avenatti LLP and other digital devices issued on May 22, 2019, in case number 8:19-MJ-419.   Because the search warrant was filed under seal and remains under seal, the USAO has applied to file Exhibit 18 separately under seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration is executed at Los Angeles, California, on August 12, 2019.

JULIAN L. ANDRÉ
Assistant United States Attorney

3

# EXHIBIT 1

Scott H. Sims, State Bar No. 234148
Andrew D. Stolper, State Bar No. 205462
FRANK SIMS & STOLPER LLP
19800 MacArthur Boulevard, Suite 855
Irvine, California 92612,
Telephone:      (949) 201-2400
Facsimile:      (949) 201-2401
astolper@lawfss.com
ssims@lawfss.com

Attorneys for Judgment Creditor
JASON FRANK LAW, PLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>Debtor. | Case No.  8:18-CV-01644-VAP-KES<br><br>**JOINT STIPULATION RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER**<br><br>**[*[Proposed] Order Filed Concurrently herewith*]** |

**STIPULATION**

1  
2      This Stipulation is entered into by and between Judgment Debtor Eagan Avenatti, LLP
3  ("EA") and Michael Avenatti ("Avenatti"), on the one hand, and Judgment Creditor Jason Frank
4  Law, PLC ("JFL"), on the other hand (collectively, the "Parties").
5      WHEREAS, JFL has a judgment against EA in the amount of $10,000,000.00, plus
6  accruing interest at $564.38 per day (since May 22, 2018) and reasonable attorney fees and costs
7  incurred by JFL in enforcing the judgment (the "Judgment");
8      WHEREAS, on February 7, 2019, this Court ordered EA and Avenatti to appear for a
9  judgment debtor examination on February 14, 2019 at 9:30 a.m. in Courtroom 6D of this Court
10  (Doc. 50);
11      WHEREAS, on February 12, 2019, JFL filed a Motion for Appointment of Receiver and
12  Restraining Order ("Motion") (Doc. No. 51);
13      WHEREAS, EA and Avenatti have stipulated and agreed to the relief requested in the
14  Motion and have further agreed that the Magistrate Judge Karen E. Scott shall have the jurisdiction
15  and authority to enter the [Proposed] Order Appointing Receiver and Issuing Restraining Order (the
16  "Order") filed concurrently herewith; and
17      WHEREAS, upon entry of the Order, JFL has agreed to withdraw the Motion and all
18  pleadings and exhibits relating thereto and consent to the rescheduling of the judgment debtor exam
19  to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court.
20      ACCORDINGLY, the Parties stipulate and agree as follows:
21    1. The Parties, and each of them, stipulate to the terms of the Order;
22    2. The Parties, and each of them consent to the jurisdiction of the Magistrate Judge Karen
23      E. Scott to enter the Order and to supervise the Receivership;
24    3. Upon entry of the Order, the Motion is deemed withdrawn without prejudice; and
25    4. Upon entry of the Order, the judgment debtor exam of EA and Avenatti is continued to
26      March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court, located at 411 W. 4th Street,
27      Santa Ana, California 92701.
28

JOINT STIPULATION RE APPOINTMENT OF
RECEIVER AND RESTRAINING ORDER

1        IT IS SO STIPULATED

2

3   Dated: February 13, 2019               FRANK SIMS & STOLPER LLP

4

5                By:   /s/ Scott H. Sims

6                     Scott Sims, Esq.
                   Attorneys for Judgment Creditor

7                      Jason Frank Law, PLC

8   Dated: February 13, 2019               EAGAN AVENATTI, LLP

9

10               By:

11                     Managing Partner
                   Judgment Debtor Eagan Avenatti, LLP

12

13

14  Dated: February 13, 2019               MICHAEL J AVENATTI

15

16               By:

17                     Michael J. Avenatti
                   In his Personal Capacity

18

19

20

21

22

23

24

25

26

27

28

                                       STIPULATION AND ORDER RE
-3-          APPOINTMENT OF RECEIVER AND
                                       RESTRAINING ORDER

Exhibit 1
Page 3 of 15

1  Scott H. Sims, State Bar No. 234148
2  Andrew D. Stolper, State Bar No. 205462
   FRANK SIMS & STOLPER LLP
3  19800 MacArthur Boulevard, Suite 855
   Irvine, California 92612,
4  Telephone:     (949) 201-2400
   Facsimile:     (949) 201-2401
5  astolper@lawfss.com
   ssims@lawfss.com
6
7  Attorneys for Judgment Creditor
   JASON FRANK LAW, PLC
8
9
10              UNITED STATES DISTRICT COURT
11              CENTRAL DISTRICT OF CALIFORNIA
12
13 In re                              Case No.  8:18-CV-01644-VAP-KES
14 EAGAN AVENATTI, LLP,               **[PROPOSED] ORDER RE JOINT
                                      STIPULATION RE APPOINTMENT OF
15 Debtor.                            RECEIVER AND RESTRAINING ORDER**
16
17
18
19
20
21
22
23
24
25
26
27
28

                              -1-    ORDER RE JOINT STIPULATION RE APPOINTMENT
                                     OF RECEIVER AND RESTRAINING ORDER

Exhibit 1
Page 4 of 15

## ORDER APPOINTING RECEIVER AND ISSUING RESTRAINING ORDER

Pursuant to the Joint Stipulation between Judgment Debtor Eagan Avenatti, LLP ("EA") and Michael Avenatti ("Avenatti"), on the one hand, and Judgment Creditor Jason Frank Law, PLC ("JFL"), on the other hand (collectively, the "Parties") and for good cause shown:

IT IS HEREBY ORDERED:

1. **The Motion.** JFL's Motion for Appointment of Receiver and Restraining Order (Doc. 51) and all pleadings and exhibits related thereto are deemed withdrawn without prejudice.

2. **Judgment Debtor Exam.** The judgment debtor exam of EA and Avenatti currently scheduled for February 14, 2019 is hereby continued to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court, located at 411 W. 4th Street, Santa Ana, California 92701.

3. **The Amount of Indebtedness.** The principal amount of EA's indebtedness to JFL under the Judgment is $10 million, plus accruing interest at $564.38 per day since May 22, 2018, reasonable attorney fees and costs incurred by JFL in enforcing the judgment, as well as all costs associated with the receivership (the "Total Indebtedness to JFL").

4. **Appointment of Receiver.** It is hereby ordered that Brian Weiss is appointed as Receiver of EA pending further Order of this Court.

5. **Receiver's Oath and Bond.** The Receiver shall immediately, and before performing any duties (a) execute and file a Receiver's oath; and (b) the Receiver shall not be required to file the bond required by Code of Civil Procedure section 567(b) pursuant to consent and agreement of EA and Avenatti.

6. **Receiver's Fees.** The Receiver may charge for the Receiver's services no more than $495.00 per hour.

7. **Management Company.** The Receiver may employ Force Ten Partners, LLC ("Force 10"), where the Receiver is employed, to assist with the Receiver's duties at the Receiver's direction, including but not limited to accounting, reporting, asset

ORDER RE JOINT STIPULATION RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER

investigation and other tasks. The members of Force 10, other than the Receiver, shall be compensated at hourly rates ranging from $225 to $495 per hour.

8. **Disclosure.** The Receiver shall immediately disclose to all parties any financial relationship between the Receiver and any company hired to assist in the management of the Receivership property.

9. **General Duties.** After qualifying, the Receiver shall have the power to take possession of and manage the business of EA and its tangible and intangible property with all the usual powers, rights and duties of receivers appointed by this Court or otherwise defined by statute, including but not limited to the power to operate and conduct EA in the ordinary course of its business and collect fees, costs and income owed to EA, except that the Receiver will not be authorized to provide legal services on behalf of EA's clients.

10. **Inventory.** Within 45 days after qualifying, the receiver shall file an inventory of all property possessed under this Order. The Receiver shall file a supplemental inventory of all subsequently obtained property

11. **Expenditures.** The Receiver shall expend money coming into his possession to operate and preserve EA's business and only for the purposes authorized in this Order. Unless the Court orders otherwise, the Receiver shall to the extent practical hold the balance in interest-bearing accounts in accordance with California Code of Civil Procedure section 569.

12. **Monthly Accounting of Receiver's Income, Expenses and Fees.**

   a. The Receiver shall each month prepare and serve on the parties, but not file, an accounting of the income and expenses incurred in the administration of EA, including the Receiver's fees and expenses. The monthly reports shall provide a narrative of the material events, a financial report and a statement of all fees paid or due to the Receiver, Force 10 and any other professionals retained, showing the itemized services, broken down in $1/10^{th}$ hour increments. The report shall state the hourly fees and any other basis for the fees.

-3-

ORDER RE JOINT STIPULATION RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER

Exhibit 1
Page 6 of 15

b. The Receiver may pay the Receiver's and Management Company's own fees and expenses only by the following procedures:

  i. By serving on all parties a notice of intent to pay to which no objection is served on the Receiver within 20 days of the date the notice is served.

  ii. By serving and filing a request for interim payment, which the Court then approves.

  iii. By obtaining and filing an agreement among all the parties approving the payment, which the Court then approves.

  iv. By filing the Receiver's final accounting and report, which the Court then approves.

c. The Receiver shall not reimburse the Receiver for the Receiver's general office administration expenses or overhead without Court approval. These expenses include, for example, office supplies and employee payroll, benefits and taxes.

12. **Management.**

a. The Receiver shall operate EA and take possession of all accounts relating to EA and its property.

b. The Receiver may hire legal counsel, accounting and tax professionals at normal and customary rates to represent the Receiver in his duties, provided however, legal counsel retained to pursue fraudulent and avoidable actions shall be on a contingency basis.

c. The Receiver may do all the things, and incur the risks and obligations, ordinarily done or incurred by owners, managers and operators of businesses and property similar to that possessed by the Receiver, except that the Receiver shall not make any capital improvements to property without prior Court approval and the Receiver shall not provide legal services to EA's clients.

13. **Bank Accounts.**

a. The Receiver may establish accounts at any financial institution insured by an agency of the United States government that are not parties to this proceeding and

-4-

ORDER RE JOINT STIPULATION RE APPOINTMENT
OF RECEIVER AND RESTRAINING ORDER

**Exhibit 1**
**Page 7 of 15**

shall deposit in those accounts any funds received in connection with EA's business.

    b. The Receiver shall have control of, and be the sole authorized signatory for all accounts of EA and client trust accounts or IOLTA accounts, including all accounts at any bank, title company, escrow agent, financial institution or brokerage firm which has possession, custody or control of any assets or funds of EA, or which maintains accounts of the Receiver, or which maintains accounts where EA's employees and agents in such capacity have signatory authority, including but not limited to Michael Avenatti and Judy Regnier.

    c. The Receiver is authorized to open and close bank accounts, including client trust accounts or IOLTA accounts. For the avoidance of doubt, no other parties are permitted to open and close bank accounts in the name of EA.

14. **Additional Powers and Duties of the Receiver.** The Receiver shall be authorized to and shall perform the following duties and functions:

    a. Take possession of all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets without limitation;

    b. Provide a copy of the signed receivership order to any party the Receiver deems necessary in order to direct payment to the Receiver, manage the Receivership Assets, and to perform investigations;

    c. Be the sole signatory to any contract of EA during the receivership;

    d. The ability to investigate fraudulent transfers and avoidance actions and to pursue litigation;

    e. The power to sell assets upon Court approval;

    f. Make payments toward the Judgment upon Court approval;

    g. Make all inquiries EA might have made;

    h. Bring and defend actions in his own name, as Receiver;

i.   Endorse and deposit any checks, money, negotiable instruments or commercial paper through which EA is compensated in any manner whatsoever into the Receivership account;

j.   Pay all necessary costs and expenses to operate EA in order to maximize its assets;

k.   Manage the business affairs of EA, including monitoring and approving necessary expenses needed to operate the business and accepting new business contracts;

l.   Have access to and become the "administrative user" for all of EA's software programs, servers and website;

m. Maintain detailed accounting records of all deposits to and all expenditures from the Receiver's bank account until the termination of the Receivership;

n.   Disburse funds to JFL and/or EA, or any creditor of EA as ordered by this Court;

o.   Conduct investigation and discovery, as may be necessary to locate and account for all of the assets of or managed by EA, including receiving, collecting and reviewing all mail addressed to EA, wherever directed;

p.   Take such action as is necessary and appropriate to preserve and take control of and to prevent the waste, dissipation, loss of value, concealment, or disposition of any assets of or managed by EA;

q.   Enter into settlements on behalf of EA with the approval of the Court; and

r.   Hire counsel to represent EA's interests in any application for fees and costs in any case in which EA may be entitled to reimbursement of fees and costs, including but not limited to those cases in which EA attorneys or resources where provided; and

s.   Have the sole authority regarding whether to file a petition for bankruptcy.

15. **Insurance.**

a.   The Receiver shall determine whether there is sufficient insurance coverage.

ORDER RE JOINT STIPULATION RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER

Exhibit 1
Page 9 of 15

b.   The Receiver shall notify the insurer that the Receiver is to be named as an additional insured on each insurance policy on the property.

c.   If the Receiver determines that the property does not have sufficient insurance coverage, the Receiver shall immediately notify the parties and shall procure sufficient insurance.

d.   If the Receiver does not have sufficient funds to obtain insurance, the Receiver shall seek instructions from the Court on whether to obtain insurance and how it is to be paid for.

e.   The Receiver shall not be liable for EA's failure to carry or obtain adequate insurance.

16. **Taxpayer ID Numbers.**  The Receiver may use any federal taxpayer identification numbers relating to EA and its property for any lawful purpose.

17. **Court instructions.**  The Receiver and the parties may at any time apply to this Court for further instructions and order and for additional powers necessary to enable the Receiver to perform his duties properly.  Nothing in this order shall be deemed a waiver of or preclude any party from requesting on notice to all other parties, modification of the order and all other parties shall be entitled to oppose such request.

18. **EA Responsible for Fees and Expenses of the Receivership.**  EA shall be responsible for all fees and expenses associated with the receivership and such costs will be added to the Judgment pursuant to California Code of Civil Procedure section 685.070(a)(5).

19. **Termination of the Receivership.**  The receivership shall not terminate until the Total Indebtedness to JFL is fully satisfied and the Court has determined the receivership shall end.

20. **Notification of Termination.**  JFL shall notify the Receiver in writing within 48 hours of any event within JFL's knowledge that terminates the receivership.

21. **Receiver's Final Report and Account and Discharge.**

ORDER RE JOINT STIPULATION RE APPOINTMENT
OF RECEIVER AND RESTRAINING ORDER

a. *Motion required.*  Discharge of the Receiver shall require a Court order upon noticed motion for approval of the Receiver's final report and account and exoneration of the Receiver's bond.

b. *Time.*  Not later than 60 days after the receivership terminates, the Receiver shall file, serve and obtain a hearing date on a motion for discharge and approval of the final report and account.

c. *Notice.* The Receiver shall give notice to all persons of whom the Receiver is aware who have potential claims against EA.

d. *Contents of Motion.*  The motion to approve the final report and account and for discharge of the Receiver shall contain the following.

   i. *Declaration(s).*  Declaration(s) (1) stating what was done during the receivership, (2) certifying the accuracy of the final accounting, (3) stating the basis for the termination of the receivership, and (4) stating the basis for an order for the distribution of any surplus or payment of any deficit.

   ii. *Accounting summary.*  A summary of the receivership accounting, which shall include (1) the total revenues received, (2) the total expenditures identified and enumerated by major categories, (3) the net amount of any surplus or deficit and (4) evidence of necessary supporting facts.

22. **Notice to Receiver.**  JFL shall promptly notify the Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in the action and their counsel.  The parties shall give notice to the Receiver of all events that affect the receivership.

23. **Consent to Convert Receiver to Bankruptcy Trustee.**  In the event of a bankruptcy, EA, Avenatti and JFL agree and stipulate that Receiver shall serve as the Chapter 11 Trustee pending confirmation by the Bankruptcy Court, or as the Chapter 7 Trustee if permitted by the Bankruptcy Court.

24. **Bankruptcy Receiver's Duties.**  If the Receiver receives notice that an involuntary bankruptcy has been filed and part of the bankruptcy estate includes property that is the subject of this Order, the Receiver shall have the following duties:

ORDER RE JOINT STIPULATION RE APPOINTMENT
OF RECEIVER AND RESTRAINING ORDER

a.  *Turn over property if no relief from stay will be sought.*  The Receiver shall
immediately contact the party who obtained the appointment of the Receiver
and determine whether that party intends to move in the bankruptcy court for
an order for (i) relief from the automatic stay, and (ii) relief from the
Receiver's obligations to turn over the property (11 U.S.C. § 543).  If the party
has no intention to make such a motion, the Receiver shall immediately turn
over the property to the appropriate entity either to the trustee in bankruptcy if
one has been appointed that is not the Receiver and otherwise comply with 11
United States Code section 543.

b.  *Remain in possession pending resolution.*  If the party who obtained the
receivership intends to seek relief immediately from both the automatic stay
and the Receiver's obligation to turn over the property, the Receiver may
remain in possession and preserve the property pending the ruling on those
motions (11 U.S.C. § 543(a)).  The Receiver's authority to preserve the
property shall be limited as follows:

   i.  The Receiver may continue to collect rents and other income;

   ii.  The Receiver my make only those disbursements necessary to preserve
and protect the property; and

   iii.  The Receiver shall not execute any new leases or other long-term
contracts without Court approval.

c.  *Turn over property if no motion for relief is filed within 10 days after notice of
the bankruptcy.*   If the party who obtained the receivership fails to file a
motion within 10 court days after its receipt of notice of the involuntary
bankruptcy filing, the Receiver shall immediately turn over the property to the
appropriate entity either to the trustee in bankruptcy if one has been appointed
or, if not, to the debtor in possession and otherwise comply with 11 United
States Code section 543

ORDER RE JOINT STIPULATION RE APPOINTMENT
OF RECEIVER AND RESTRAINING ORDER

d. *Retain bankruptcy counsel.* The Receiver may petition the Court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

25. **Failure to Turn Over Property.** A receiver who fails to turn over property in accordance with this Order shall not be paid for time and expenses after the date the Receiver should have turned the property over.

26. **Liability of the Receiver.** Except for an act of gross negligence or intentional misconduct, the Receiver shall not be liable for any loss or damages incurred by EA, its officers, shareholders, agents, servants, partners, employees, contractors, creditors, counsel or any other persons or entities by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of his duties.

## **RESTRAINING ORDER / INJUNCTION**

27. **The Court orders EA and Avenatti** to do the following:

a. **Turn Over Property.** Immediately turn over possession of all property of EA to the Receiver when the appointment becomes effective, including but not limited to all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets and all funds in EA accounts, including client trust accounts.

b. **Access to EA's offices and computer systems.** Immediately turn over to the Receiver all keys and passwords relating to the property and grant the Receiver unfettered access to EA and all premises related thereto, and all EA computer systems.

c. **Insurance.**

i. Immediately advise the Receiver about the nature and extent of EA's insurance;

ii. Immediately name the receiver as an additional insured on each insurance policy; and

iii. DO NOT cancel, reduce or modify the insurance coverage.

Exhibit 1
Page 13 of 15
ORDER RE JOINT STIPULATION RE APPOINTMENT
OF RECEIVER AND RESTRAINING ORDER

d. **Notify Receiver of Clients and Cases.** Within 7 days after the appointment of the Receiver, EA and Avenatti, and office manager Judy Regnier must meet with the Receiver and JFL and disclose all current clients and cases being managed by EA and all cases in which the services of an EA attorney or EA resources were provided, whether the case was filed in the name of EA or another law firm.

e. **Respond to Inquiries.** Immediately respond to all inquiries of the Receiver pertaining to EA.

f. **Disclosure of Bank Accounts.** Immediately disclose to the Receiver all accounts of EA and client trust accounts, including all accounts at any bank, title company, escrow agent, financial institution or brokerage firm which has possession, custody or control of any assets or funds of EA, or which maintains accounts of the Receiver, or which maintains accounts where EA's employees and agents in such capacity have signatory authority, including but not limited to Michael Avenatti and Judy Regnier.

g. **Payment.** Pay all amounts due to the Receiver.

h. **Cooperation.** Avenatti shall fully cooperate with the Receiver for the duration of the receivership, regardless of whether he is employed by or affiliated with EA, including but not limited to directing Judy Regnier and any other former employees of EA to likewise cooperate with the Receiver.

28. **Enjoinment.** EA, and its owners, partners, employees, agents, managers, attorneys and all persons and entities acting in concert with EA are hereby enjoined and cannot:

a. Expend, disburse, remove, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or any portion of EA's assets, including but not limited to its rights to attorney fees and costs from any client or in connection with any cases in which EA attorneys or resources were used;

ORDER RE JOINT STIPULATION RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER

**Exhibit 1**
**Page 14 of 15**

b.     Interfere in any way, directly or indirectly, with the Receiver's performance of his/her duties and responsibilities and the exercise of his/her powers and/or doing any act which may impair, defeat, divert, prevent or prejudice the preservation of EA's assets or the proceeds thereof;

c.     Commit or permit any waste of EA's assets or any portion thereof, or suffer or commit or permit any act on EA's assets or any part thereof in violation of law;

d.     Conceal or withhold from the Receiver any EA assets, including any client trust funds, real property, physical property, indirect or beneficial ownership interests, or funds;

e.     Do any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of EA's assets;

f.     Demand, collect, compromise, trade, receive or spend any portion or proceeds of EA's assets; and

g.     Fail to pay over to the Receiver any monies whenever received, presently in the possession, custody or control of EA, its owners, agents, representatives, servants, assigns and all those acting in concert therewith.

Dated: _____

_____
U.S District Court Magistrate Judge

# EXHIBIT 2

Scott H. Sims, State Bar No. 234148
Andrew D. Stolper, State Bar No. 205462
FRANK SIMS & STOLPER LLP
19800 MacArthur Boulevard, Suite 855
Irvine, California 92612,
Telephone:     (949) 201-2400
Facsimile:     (949) 201-2401
astolper@lawfss.com
ssims@lawfss.com

Attorneys for Judgment Creditor
JASON FRANK LAW, PLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

In re

EAGAN AVENATTI, LLP,

Debtor.

Case No.  8:18-CV-01644-VAP-KES

**JOINT STIPULATION AND ORDER RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER**

-1-

**Exhibit 2**
**Page 1 of 14**

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

**STIPULATION**

This Stipulation is entered into by and between Judgment Debtor Eagan Avenatti, LLP ("EA") and Michael Avenatti ("Avenatti"), on the one hand, and Judgment Creditor Jason Frank Law, PLC ("JFL"), on the other hand (collectively, the "Parties").

WHEREAS, JFL has a judgment against EA in the amount of $10,000,000.00, plus accruing interest at $564.38 per day (since May 22, 2018) and reasonable attorney fees and costs incurred by JFL in enforcing the judgment (the "Judgment");

WHEREAS, on February 7, 2019, this Court ordered EA and Avenatti to appear for a judgment debtor examination on February 14, 2019 at 9:30 a.m. in Courtroom 6D of this Court (Doc. 50);

WHEREAS, on February 12, 2019, JFL filed a Motion for Appointment of Receiver and Restraining Order ("Motion") (Doc. No. 51);

WHEREAS, EA and Avenatti have stipulated and agreed to the relief requested in the Motion and have further agreed that the Magistrate Judge Karen E. Scott shall have the jurisdiction and authority to enter the attached [Proposed] Order Appointing Receiver and Issuing Restraining Order (the "Order"); and

WHEREAS, upon entry of the Order, JFL has agreed to withdraw the Motion and all pleadings and exhibits relating thereto and consent to the rescheduling of the judgment debtor exam to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court.

ACCORDINGLY, the Parties stipulate and agree as follows:

1. The Parties, and each of them, stipulate to the terms of the Order;

2. The Parties, and each of them consent to the jurisdiction of the Magistrate Judge Karen E. Scott to enter the Order and to supervise the Receivership;

3. Upon entry of the Order, the Motion is deemed withdrawn without prejudice; and

4. Upon entry of the Order, the judgment debtor exam of EA and Avenatti is continued to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court, located at 411 W. 4th Street, Santa Ana, California 92701.

STIPULATION AND ORDER RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER

**Exhibit 2**
**Page 2 of 14**

1      IT IS SO STIPULATED

2

3   Dated: February 13, 2019                    FRANK SIMS & STOLPER LLP

4

5                                     By:   /s/ Scott H. Sims

6                                           Scott Sims, Esq.
                                          Attorneys for Judgment Creditor

7                                           Jason Frank Law, PLC

8   Dated: February 13, 2019                    EAGAN AVENATTI, LLP

9

10                                       By:_____

11                                         Managing Partner
                                        Judgment Debtor Eagan Avenatti, LLP

12

13

14   Dated: February 13, 2019                    MICHAEL J AVENATTI

15

16                                       By:_____

17                                         Michael J. Avenatti
                                        In his Personal Capacity

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

**Exhibit 2**
**Page 3 of 14**

**ORDER APPOINTING RECEIVER AND ISSUING RESTRAINING ORDER**

Pursuant to the Joint Stipulation between Judgment Debtor Eagan Avenatti, LLP ("EA") and Michael Avenatti ("Avenatti"), on the one hand, and Judgment Creditor Jason Frank Law, PLC ("JFL"), on the other hand (collectively, the "Parties") and for good cause shown:

IT IS HEREBY ORDERED:

1. **The Motion.** JFL's Motion for Appointment of Receiver and Restraining Order (Doc. 51) and all pleadings and exhibits related thereto are deemed withdrawn without prejudice.

2. **Judgment Debtor Exam.** The judgment debtor exam of EA and Avenatti currently scheduled for February 14, 2019 is hereby continued to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court, located at 411 W. 4th Street, Santa Ana, California 92701.

3. **The Amount of Indebtedness.** The principal amount of EA's indebtedness to JFL under the Judgment is $10 million, plus accruing interest at $564.38 per day since May 22, 2018, reasonable attorney fees and costs incurred by JFL in enforcing the judgment, as well as all costs associated with the receivership (the "Total Indebtedness to JFL").

4. **Appointment of Receiver.** It is hereby ordered that Brian Weiss is appointed as Receiver of EA pending further Order of this Court.

5. **Receiver's Oath and Bond.** The Receiver shall immediately, and before performing any duties (a) execute and file a Receiver's oath; and (b) the Receiver shall not be required to file the bond required by Code of Civil Procedure section 567(b) pursuant to consent and agreement of EA and Avenatti.

6. **Receiver's Fees.** The Receiver may charge for the Receiver's services no more than $495.00 per hour.

7. **Management Company.** The Receiver may employ Force Ten Partners, LLC ("Force 10"), where the Receiver is employed, to assist with the Receiver's duties at the Receiver's direction, including but not limited to accounting, reporting, asset

**Exhibit 2**
**Page 4 of 14**

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

investigation and other tasks.  The members of Force 10, other than the Receiver, shall be compensated at hourly rates ranging from $225 to $495 per hour.

8. **Disclosure.**  The Receiver shall immediately disclose to all parties any financial relationship between the Receiver and any company hired to assist in the management of the Receivership property.

9. **General Duties.**  After qualifying, the Receiver shall have the power to take possession of and manage the business of EA and its tangible and intangible property with all the usual powers, rights and duties of receivers appointed by this Court or otherwise defined by statute, including but not limited to the power to operate and conduct EA in the ordinary course of its business and collect fees, costs and income owed to EA, except that the Receiver will not be authorized to provide legal services on behalf of EA's clients.

10. **Inventory.**  Within 45 days after qualifying, the receiver shall file an inventory of all property possessed under this Order.  The Receiver shall file a supplemental inventory of all subsequently obtained property

11. **Expenditures.**  The Receiver shall expend money coming into his possession to operate and preserve EA's business and only for the purposes authorized in this Order. Unless the Court orders otherwise, the Receiver shall to the extent practical hold the balance in interest-bearing accounts in accordance with California Code of Civil Procedure section 569.

12. **Monthly Accounting of Receiver's Income, Expenses and Fees.**

    a.  The Receiver shall each month prepare and serve on the parties, but not file, an accounting of the income and expenses incurred in the administration of EA, including the Receiver's fees and expenses.  The monthly reports shall provide a narrative of the material events, a financial report and a statement of all fees paid or due to the Receiver, Force 10 and any other professionals retained, showing the itemized services, broken down in $1/10^{th}$ hour increments.  The report shall state the hourly fees and any other basis for the fees.

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

**Exhibit 2**
**Page 5 of 14**

b.  The Receiver may pay the Receiver's and Management Company's own fees and expenses only by the following procedures:

   i.  By serving on all parties a notice of intent to pay to which no objection is served on the Receiver within 20 days of the date the notice is served.

   ii.  By serving and filing a request for interim payment, which the Court then approves.

   iii.  By obtaining and filing an agreement among all the parties approving the payment, which the Court then approves.

   iv.  By filing the Receiver's final accounting and report, which the Court then approves.

c.  The Receiver shall not reimburse the Receiver for the Receiver's general office administration expenses or overhead without Court approval.  These expenses include, for example, office supplies and employee payroll, benefits and taxes.

12. **Management.**

a.  The Receiver shall operate EA and take possession of all accounts relating to EA and its property.

b.  The Receiver may hire legal counsel, accounting and tax professionals at normal and customary rates to represent the Receiver in his duties, provided however, legal counsel retained to pursue fraudulent and avoidable actions shall be on a contingency basis.

c.  The Receiver may do all the things, and incur the risks and obligations, ordinarily done or incurred by owners, managers and operators of businesses and property similar to that possessed by the Receiver, except that the Receiver shall not make any capital improvements to property without prior Court approval and the Receiver shall not provide legal services to EA's clients.

13. **Bank Accounts.**

a.  The Receiver may establish accounts at any financial institution insured by an agency of the United States government that are not parties to this proceeding and

STIPULATION AND ORDER RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER

**Exhibit 2**
**Page 6 of 14**

shall deposit in those accounts any funds received in connection with EA's
business.

b.  The Receiver shall have control of, and be the sole authorized signatory for all
accounts of EA and client trust accounts or IOLTA accounts, including all
accounts at any bank, title company, escrow agent, financial institution or
brokerage firm which has possession, custody or control of any assets or funds of
EA, or which maintains accounts of the Receiver, or which maintains accounts
where EA's employees and agents in such capacity have signatory authority,
including but not limited to Michael Avenatti and Judy Regnier.

c.  The Receiver is authorized to open and close bank accounts, including client trust
accounts or IOLTA accounts.  For the avoidance of doubt, no other parties are
permitted to open and close bank accounts in the name of EA.

14. **Additional Powers and Duties of the Receiver.**  The Receiver shall be authorized to
and shall perform the following duties and functions:

a.  Take possession of all past and current client engagement contracts, case files,
books and records, electronic files, and other documents necessary to manage
the Receivership Assets without limitation;

b.  Provide a copy of the signed receivership order to any party the Receiver
deems necessary in order to direct payment to the Receiver, manage the
Receivership Assets, and to perform investigations;

c.  Be the sole signatory to any contract of EA during the receivership;

d.  The ability to investigate fraudulent transfers and avoidance actions and to
pursue litigation;

e.  The power to sell assets upon Court approval;

f.  Make payments toward the Judgment upon Court approval;

g.  Make all inquiries EA might have made;

h.  Bring and defend actions in his own name, as Receiver;

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

**Exhibit 2**
**Page 7 of 14**

i.   Endorse and deposit any checks, money, negotiable instruments or commercial paper through which EA is compensated in any manner whatsoever into the Receivership account;

j.   Pay all necessary costs and expenses to operate EA in order to maximize its assets;

k.   Manage the business affairs of EA, including monitoring and approving necessary expenses needed to operate the business and accepting new business contracts;

l.   Have access to and become the "administrative user" for all of EA's software programs, servers and website;

m.   Maintain detailed accounting records of all deposits to and all expenditures from the Receiver's bank account until the termination of the Receivership;

n.   Disburse funds to JFL and/or EA, or any creditor of EA as ordered by this Court;

o.   Conduct investigation and discovery, as may be necessary to locate and account for all of the assets of or managed by EA, including receiving, collecting and reviewing all mail addressed to EA, wherever directed;

p.   Take such action as is necessary and appropriate to preserve and take control of and to prevent the waste, dissipation, loss of value, concealment, or disposition of any assets of or managed by EA;

q.   Enter into settlements on behalf of EA with the approval of the Court; and

r.   Hire counsel to represent EA's interests in any application for fees and costs in any case in which EA may be entitled to reimbursement of fees and costs, including but not limited to those cases in which EA attorneys or resources where provided; and

s.   Have the sole authority regarding whether to file a petition for bankruptcy.

15. **Insurance.**

a.   The Receiver shall determine whether there is sufficient insurance coverage.

b.  The Receiver shall notify the insurer that the Receiver is to be named as an additional insured on each insurance policy on the property.

c.  If the Receiver determines that the property does not have sufficient insurance coverage, the Receiver shall immediately notify the parties and shall procure sufficient insurance.

d.  If the Receiver does not have sufficient funds to obtain insurance, the Receiver shall seek instructions from the Court on whether to obtain insurance and how it is to be paid for.

e.  The Receiver shall not be liable for EA's failure to carry or obtain adequate insurance.

16. **Taxpayer ID Numbers.**  The Receiver may use any federal taxpayer identification numbers relating to EA and its property for any lawful purpose.

17. **Court instructions.**  The Receiver and the parties may at any time apply to this Court for further instructions and order and for additional powers necessary to enable the Receiver to perform his duties properly.  Nothing in this order shall be deemed a waiver of or preclude any party from requesting on notice to all other parties, modification of the order and all other parties shall be entitled to oppose such request.

18. **EA Responsible for Fees and Expenses of the Receivership.**  EA shall be responsible for all fees and expenses associated with the receivership and such costs will be added to the Judgment pursuant to California Code of Civil Procedure section 685.070(a)(5).

19. **Termination of the Receivership.**  The receivership shall not terminate until the Total Indebtedness to JFL is fully satisfied and/or the Court has determined the receivership shall end.

20. **Notification of Termination.**  JFL shall notify the Receiver in writing within 48 hours of any event within JFL's knowledge that terminates the receivership.

21. **Receiver's Final Report and Account and Discharge.**

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

a. *Motion required.* Discharge of the Receiver shall require a Court order upon noticed motion for approval of the Receiver's final report and account and exoneration of the Receiver's bond, if any.

b. *Time.* Not later than 60 days after the receivership terminates, the Receiver shall file, serve and obtain a hearing date on a motion for discharge and approval of the final report and account.

c. *Notice.* The Receiver shall give notice to all persons of whom the Receiver is aware who have potential claims against EA.

d. *Contents of Motion.* The motion to approve the final report and account and for discharge of the Receiver shall contain the following.

　　i. *Declaration(s).* Declaration(s) (1) stating what was done during the receivership, (2) certifying the accuracy of the final accounting, (3) stating the basis for the termination of the receivership, and (4) stating the basis for an order for the distribution of any surplus or payment of any deficit.

　　ii. *Accounting summary.* A summary of the receivership accounting, which shall include (1) the total revenues received, (2) the total expenditures identified and enumerated by major categories, (3) the net amount of any surplus or deficit and (4) evidence of necessary supporting facts.

22. **Notice to Receiver.** JFL shall promptly notify the Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in the action and their counsel. The parties shall give notice to the Receiver of all events that affect the receivership.

23. **Consent to Convert Receiver to Bankruptcy Trustee.** In the event of a bankruptcy, EA, Avenatti and JFL agree and stipulate that Receiver shall serve as the Chapter 11 Trustee pending confirmation by the Bankruptcy Court, or as the Chapter 7 Trustee if permitted by the Bankruptcy Court.

24. **Bankruptcy Receiver's Duties.** If the Receiver receives notice that an involuntary bankruptcy has been filed and part of the bankruptcy estate includes property that is the subject of this Order, the Receiver shall have the following duties:

-10-

a. *Turn over property if no relief from stay will be sought.*  The Receiver shall immediately contact the parties who stipulated to the appointment of the Receiver and determine whether either party intends to move in the bankruptcy court for an order for (i) relief from the automatic stay, and (ii) relief from the Receiver's obligations to turn over the property (11 U.S.C. § 543).  If neither party  intends to make such a motion, the Receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed that is not the Receiver and otherwise comply with 11 United States Code section 543.

b. *Remain in possession pending resolution.*  If either of the parties who stipulated to the receivership intend to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the property, the Receiver may remain in possession and preserve the property pending the ruling on those motions (11 U.S.C. § 543(a)).  The Receiver's authority to preserve the property shall be limited as follows:

   i.   The Receiver may continue to collect rents and other income;

   ii.  The Receiver my make only those disbursements necessary to preserve and protect the property; and

   iii. The Receiver shall not execute any new leases or other long-term contracts without Court approval.

c. *Turn over property if no motion for relief is filed within 10 days after notice of the bankruptcy.*   If the parties who stipulate to the receivership fail to file a motion within 10 court days after their receipt of notice of the involuntary bankruptcy filing, the Receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession and otherwise comply with 11 United States Code section 543.

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

d. *Retain bankruptcy counsel.* The Receiver may petition the Court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

25. **Failure to Turn Over Property.** A receiver who fails to turn over property in accordance with this Order shall not be paid for time and expenses after the date the Receiver should have turned the property over.

26. **Liability of the Receiver.** Except for an act of gross negligence or intentional misconduct, the Receiver shall not be liable for any loss or damages incurred by EA, its officers, shareholders, agents, servants, partners, employees, contractors, creditors, counsel or any other persons or entities by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of his duties.

## RESTRAINING ORDER / INJUNCTION

27. **The Court orders EA and Avenatti** to do the following:

a. **Turn Over Property.** Immediately turn over possession of all property of EA to the Receiver when the appointment becomes effective, including but not limited to all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets and all funds in EA accounts, including client trust accounts.

b. **Access to EA's offices and computer systems.** Immediately turn over to the Receiver all keys and passwords relating to the property and grant the Receiver unfettered access to EA and all premises related thereto, and all EA computer systems.

c. **Insurance.**

i. Immediately advise the Receiver about the nature and extent of EA's insurance;

ii. Immediately name the receiver as an additional insured on each insurance policy; and

iii. DO NOT cancel, reduce or modify the insurance coverage.

-12-

**Exhibit 2**
**Page 12 of 14**

STIPULATION AND ORDER RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER

d. **Notify Receiver of Clients and Cases.** Within 7 days after the appointment of the Receiver, EA and Avenatti, and office manager Judy Regnier must meet with the Receiver and JFL and disclose all current clients and cases being managed by EA and all cases in which the services of an EA attorney or EA resources were provided, whether the case was filed in the name of EA or another law firm.

e. **Respond to Inquiries.** Immediately respond to all inquiries of the Receiver pertaining to EA.

f. **Disclosure of Bank Accounts.** Immediately disclose to the Receiver all accounts of EA and client trust accounts, including all accounts at any bank, title company, escrow agent, financial institution or brokerage firm which has possession, custody or control of any assets or funds of EA, or which maintains accounts of the Receiver, or which maintains accounts where EA's employees and agents in such capacity have signatory authority, including but not limited to Michael Avenatti and Judy Regnier.

g. **Payment.** Pay all amounts due to the Receiver.

h. **Cooperation.** Avenatti shall fully cooperate with the Receiver for the duration of the receivership, regardless of whether he is employed by or affiliated with EA, including but not limited to directing Judy Regnier and any other former employees of EA to likewise cooperate with the Receiver.

28. **Enjoinment.** EA, and its owners, partners, employees, agents, managers, attorneys and all persons and entities acting in concert with EA are hereby enjoined and cannot:

a. Expend, disburse, remove, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or any portion of EA's assets, including but not limited to its rights to attorney fees and costs from any client or in connection with any cases in which EA attorneys or resources were used;

**Exhibit 2**
**Page 13 of 14**

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

1     b. Interfere in any way, directly or indirectly, with the Receiver's

2       performance of his/her duties and responsibilities and the exercise of

3       his/her powers and/or doing any act which may impair, defeat, divert,

4       prevent or prejudice the preservation of EA's assets or the proceeds

5       thereof;

6     c. Commit or permit any waste of EA's assets or any portion thereof, or

7       suffer or commit or permit any act on EA's assets or any part thereof in

8       violation of law;

9     d. Conceal or withhold from the Receiver any EA assets, including any client

10      trust funds, real property, physical property, indirect or beneficial

11      ownership interests, or funds;

12     e. Do any act which will, or which will tend to, impair, defeat, divert, prevent

13      or prejudice the preservation of EA's assets;

14     f. Demand, collect, compromise, trade, receive or spend any portion or

15      proceeds of EA's assets; and

16     g. Fail to pay over to the Receiver any monies whenever received, presently

17      in the possession, custody or control of EA, its owners, agents,

18      representatives, servants, assigns and all those acting in concert therewith.

19  29. Nothing in this order excuses or alters any ethical duties that EA and/or EA's

20    attorneys may have to their clients.

21

22

23 Dated: 2/13/2019

24          U.S District Court Magistrate Judge

25

26

27

28

-14-

**Exhibit 2**
**Page 14 of 14**

# EXHIBIT 3



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*Julian L. André*
*Phone: (213) 894-6683*
*E-mail: Julian.L.Andre@usdoj.gov*

*1100 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California 90012*

June 19, 2019

**<u>VIA E-MAIL</u>**

John Reitman
Landau Gottfried & Berger LLP
1880 Century Park East, Suite 1101
Los Angeles, CA 90067
jreitman@lgbfirm.com

> Re:   <u>United States v. Michael John Avenatti</u>,
>       SA CR No. 19-061-JVS

Dear Counsel:

We write regarding the potential production of certain digital devices belonging to Eagan Avenatti LLP ("EA LLP") to Michael Avenatti ("AVENATTI") in connection with <u>United States v. Avenatti</u>, SA CR No. 19-061-JVS.

As you know, in April 2019, your client, the Court-appointed Receiver for EA LLP (the "EA Receiver"), consented to the Internal Revenue Service – Criminal Investigation ("IRS-CI") creating a forensic copy of the six digital devices that comprise the EA LLP server (collectively, the "EA Server").  The government subsequently obtained a warrant to search the EA Server for evidence in connection with the government's prosecution and ongoing investigation of AVENATTI.  Additionally, in March 2019, the government seized certain digital devices belonging to EA LLP from the residence of EA LLP's former office manager, ███████████ (collectively, the "EA Digital Devices").

In connection with the AVENATTI prosecution, AVENATTI's defense counsel has requested that the government produce to AVENATTI complete forensic copies of the EA Server and the EA Digital Devices.  Based on our prior discussions, we understand that the EA Receiver has significant concerns regarding the government producing copies the EA Server or the EA Digital Devices to AVENATTI.  Accordingly, to date, the government has taken the position that it would be inappropriate for the government to provide AVENATTI with complete forensic copies of the EA Server or EA Devices without either obtaining consent from the EA Receiver or a Court order requiring us to do so.[1]  We, however, have offered to make copies of the EA

---

[1] Among other things, we have noted that we understand that the EA Server and EA Digital Devices are not AVENATTI's personal property, and likely contain a substantial amount

**Exhibit 3**
**Page 1 of 8**

John Reitman
RE:  <u>United States v. Avenatti</u>
June 19, 2019
Page 2

Server and EA Digital Devices available for AVENATTI and his counsel to review at IRS-CI's offices or another convenient location.  We have also repeatedly advised AVENATTI's counsel that if AVENATTI needs to access the EA Server or the EA Digital Devices to service existing clients AVENATTI should raise that issue with the EA Receiver in the first instance and, if necessary, seek relief from the Honorable Karen E. Scott, United States Magistrate Judge in connection with the judgment-debtor litigation, <u>In re Eagan Avenatti LLP</u>, No. CV 18-1644-VAP (C.D. Cal.).

We anticipate that the parties will be required to address AVENATTI's request for copies of the EA Server and EA Digital Devices at the upcoming status conference before the Honorable James V. Selna, United States District Judge, on July 8, 2019.  Accordingly, in advance of that status conference, we request that you provide us with a written response detailing the EA Receiver's position regarding the production of the EA Server and EA Digital Devices to AVENATTI, including the following information:

(1)     Whether or not the EA Receiver would consent to the production of complete forensic copies of the EA Server and EA Digital Devices subject to the protections of the existing Protective Order (a copy of which is attached).

(2)     Whether there are additional conditions not contained in the existing Protective Order that would alleviate any concerns the EA Receiver may have regarding the production of the EA Server and EA Digital Devices to AVENATTI.

(3)     The basis, if any, for the EA Receiver's objection to the government producing to AVENATTI complete copies of the EA Server and EA Digital Devices.

(4)     The status of any discussions between the EA Receiver and AVENATTI or AVENATTI's counsel regarding AVENATTI's request to access the EA Server or EA Digital Devices.

///

///

///

---

of attorney-client privileged information relating to third-parties to which AVENATTI is not entitled to review and which would be irrelevant to his defense.

**Exhibit 3**
**Page 2 of 8**

John Reitman
RE:  <u>United States v. Avenatti</u>
June 19, 2019
Page 3


We would appreciate if you could provide us with a response no later than June 29, 2019.  Please let us know if you have any questions or would like to discuss these issues further.

Very truly yours,

JULIAN L. ANDRÉ
Assistant United States Attorney
Major Frauds Section

Enclosures

cc:     Assistant United States Attorney Brett A. Sagel

**Exhibit 3**
**Page 3 of 8**

1  NICOLA T. HANNA
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   JULIAN L. ANDRÉ (Cal. Bar No. 251120)
4  Assistant United States Attorney
   Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-6683
7       Facsimile: (213) 894-6269
        Email:    Julian.L.Andre@usdoj.gov
8
   BRETT A. SAGEL (Cal. Bar. No. 243918)
9  Assistant United States Attorney
        Ronald Reagan Federal Building
10      411 West Fourth Street, Suite 8000
        Santa Ana, California 92701
11      Telephone:  (714) 338-3598
        Facsimile:  (714) 338-3708
12      Email:    Brett.Sagel@usdoj.gov

13 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

14              UNITED STATES DISTRICT COURT

15          FOR THE CENTRAL DISTRICT OF CALIFORNIA

16                   SOUTHERN DIVISION

17 UNITED STATES OF AMERICA,        SA CR No. 19-061-JVS

18          Plaintiff,              ORDER AUTHORIZING DISLCOUSRE OF
                                    TAX RETURNS AND RETURN
19          v.                      INFORMATION; AND PROTECTIVE  ORDER
                                    LIMITING DISCLOSURE OF PROTECTED
20 MICHAEL JOHN AVENATTI,           TAX INFORMAITON AND SENSITIVE
                                    INFORMATION
21          Defendant.

22

23      The Court having considered the stipulation and request for

24 (1) an order authorizing the disclosure of tax returns and return

25 information; and (2) a protective order limiting disclosure of

26 protected tax information and sensitive information filed by the

27 United States Attorney for the Central District of California

28 ("USAO") and Assistant United States Attorneys Julian L. André and

**Exhibit 3**
**Page 4 of 8**

1   Brett A. Sagel, and defendant MICHAEL JOHN AVENATTI ("defendant"),

2   both individually and by and through his counsel of record, H. Dean

3   Steward (collectively, the "parties") in this matter, and good cause

4   appearing therefor, the Court hereby ORDERS as follows:

5        1.   Pursuant to 26 U.S.C. § 6103(h)(4)(D), the government may

6   produce to counsel for defendant copies of tax returns and return

7   information obtained by the USAO during the course of the

8   investigation leading to the indictment and currently in the USAO's

9   possession.

10       2.   In order to permit the government to provide discovery

11  material to counsel of record for defendant, while avoiding the

12  unauthorized dissemination, distribution, or use of tax returns and

13  return information, as well as personal identification information,

14  financial records, and other sensitive or confidential information

15  relating to third parties, including defendant's former clients or

16  employees ("Sensitive Information"), the parties have stipulated to

17  the entry of this Protective Order in the above-captioned case,

18  United State v. Michael John Avenatti, SA CR No. 19-061-JVS.

19       3.   The term "Sensitive Information" includes, without

20  limitation, the names of alleged victims, witnesses, and other third

21  parties; dates of birth; social security numbers; driver's license

22  numbers; PIN numbers; bank or financial account information; taxpayer

23  identification information; tax information; home addresses; phone

24  numbers; email addresses; employment information; passwords;

25  attorney-client communications; and confidential legal information.

26       4.   This Protective Order shall apply to all discovery

27  materials containing tax returns and return information (as defined

28  in 26 U.S.C. § 6103(b)(2))) and Sensitive Information (collectively,

**Exhibit 3**
**Page 5 of 8**

the "Protected Information") that is produced to the defense team, as defined below, before or after the execution of this Protective Order.

5.   For the purposes of this Order, the term "defense team" refers to the counsel of record for defendant and any other defense attorneys for defendant, defense investigators, retained experts or potential experts, and paralegal and legal assistants providing assistance on this case who have been advised of their obligations under the Protective Order and agreed to follow its terms.  The "defense team," for the purposes of the Protective Order, includes defendant.  The "defense team" does not include family members and other associates of defendant.

6.   Defendant's undersigned counsel of record agrees to advise all members of the defense team of their obligations under the Protective Order and ensure their agreement to follow the Protective Order, prior to providing members of the defense team with access to any Protected Information.

7.   The defense team, including defendant, shall use materials containing Protected Information only for the preparation and litigation of this matter, and for no other purpose.  Litigation of this matter includes any appeal filed by defendant, and any motion filed by defendant pursuant to 28 U.S.C. § 2255.

8.   The defense team, including defendant, shall not permit anyone who is not a member of the defense team to retain in his or her possession any materials containing Protected Information.

9.   The defense team may review materials containing Protected Information with witnesses or potential witnesses in this case (including their counsel), but the witnesses or potential witnesses

**Exhibit 3**
**Page 6 of 8**

1   may not retain any materials containing Protected Information after

2   his or her review of those materials with the defense team is

3   complete.

4        10.   The defense team shall maintain all discovery materials

5   containing Protected Information safely and securely, and shall

6   exercise reasonable care in ensuring the confidentiality of those

7   materials.

8        11.   To the extent that notes are made that memorialize, in

9   whole or in part, Protected Information, or to the extent that copies

10  of materials containing Protected Information are made for authorized

11  use by members of the defense team, such notes, copies, must be

12  handled in accordance with the terms of the Protective Order.

13       12.   If a party needs to file materials with the Court

14  containing unredacted Protected Information or needs to divulge

15  Protected Information in court filings, such filings should be made

16  under seal.  If the Court rejects the request to file such Protected

17  Information under seal, the party seeking to file such Protected

18  Information shall provide advance written notice to the other party

19  to afford such party an opportunity to object or otherwise respond to

20  such intention.  If the other party does not object to the proposed

21  filing, the party seeking to file such information shall redact the

22  Protected Information and make all reasonable attempts to limit the

23  divulging of Protected Information.

24       13.   Upon the final disposition of this case, materials

25  containing Protected Information shall not be used, in any way, in

26  any other matter, absent a court order.  All materials containing

27  Protected Information maintained in the defense team's files shall

28  remain subject to the Protective Order unless and until such order is

**Exhibit 3**
**Page 7 of 8**

1  modified by court order.  Within thirty days of the conclusion of

2  appellate and post-conviction proceedings, the defense team shall

3  return any materials containing Protected Information to the USAO or

4  certify that such materials have been destroyed.  Defense counsel is,

5  however, authorized to retain any such materials that defense counsel

6  is required to maintain under the California Rules of Professional

7  Responsibility or any other applicable rule of professional

8  responsibility.

9       14.  In the event that there is a substitution of counsel prior

10  to when such documents must be returned, new defense counsel must

11  join this Protective Order before any materials containing Protected

12  Information may be transferred from the undersigned defense counsel

13  to the new defense counsel, who then will become the defense team's

14  custodian of the materials and who shall then become responsible for

15  returning all materials Protected Information to the government upon

16  the conclusion of appellate and post-conviction proceedings.

17       IT IS SO ORDERED.

18

19  May 20, 2019
20  DATE                              HONORABLE JAMES V. SELNA
                                     UNITED STATES DISTRICT JUDGE
21

22  Presented by:

23       /s/ Julian L. André
    JULIAN L. ANDRÉ
24  BRETT A. SAGEL
    Assistant United States Attorneys

25

26

27

28

**Exhibit 3**
**Page 8 of 8**

# EXHIBIT 4

# LANDAU GOTTFRIED & BERGER LLP

ATTORNEYS AT LAW
1880 CENTURY PARK EAST, SUITE 1101
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 557-0050
FACSIMILE  (310) 557-0056
www.LGBFIRM.com

Email: jreitman@lgbfirm.com

July 1, 2019

BY EMAIL: Julian.L.Andre@usdoj.gov
Assistant United States Attorney,
Julian L. Andre'
United States Attorney's Office
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012

Re: *United States v. Michael John Avenatti,* SA CR No. 19-061-JVS

Dear Mr. Andre':

As you know, I am counsel to Brian Weiss in his capacity as the court-appointed Receiver for the Eagan Avenatti receivership estate.  I am responding to your June 19, letter regarding the potential production of certain digital devices belonging to Eagan Avenatti LLP ("EA LLP") to Michael Avenatti ("AVENATTI") in connection with above referenced criminal case.

Your letter states that AVENATTI'S criminal defense counsel has requested complete forensic copies of the EA, LLP Servers and Digital Devices.  The Receiver objects to the requested production to the extent that the requested copies include (1) documents of or relating to any client or prospective client whose relationship with EA, LLP is not part of, related to or referenced in the Government's criminal case against AVENATTI, which documents are not relevant to the criminal case; (2) personal, and non-public financial or proprietary information of or concerning an EA, LLP client or prospective client or adverse or prospective adverse parties, which documents are subject to the protections afforded under the United States or California Constitution, federal or California statutes and caselaw that protect personal privacy and proprietary rights; or (3) attorney-client privileged communications.  The Receiver does not, however, object to the production of such documents on the terms set forth in the Protective Order included with your June 19 letter, provided that the client or prospective client and, to the extent applicable, the adverse party or prospective adverse party whose rights would be implicated by such disclosure, has, in advance of the production expressly confirmed in writing that the disclosure is voluntarily agreed to by such party after having been informed in writing that such disclosure is not required and having been afforded a reasonable opportunity to consult with independent legal counsel of its, her or his choice regarding their rights and privileges with respect to such disclosure and the potential consequences of waiving the same.

**Exhibit 4**
**Page 1 of 2**

Assistant United States Attorney,
Julian L. Andre
July 1, 2019
Page 2

To the extent that AVENATTI or his defense counsel seeks copies from the EA, LLP Receiver, the Receiver also objects to any production unless and until AVENATTI or his counsel provides him with reasonable assurances that the production will be adequately supervised to insure the continuing integrity of the EA, LLP Servers and the EA, LLP Digital Devices, and all information stored thereon, and that all costs (including for supervising the production) incurred by or for the Receiver in connection with that production will be paid by the requesting party prior to delivery of the production. The Receiver will provide an estimate of the cost of the production, which will need to be paid in advance (any excess amount will be returned to the payor).

Lastly, this will confirm that neither the Receiver nor this firm has been contacted by AVENATTI, his civil legal counsel, or his criminal defense counsel concerning the release of EA, LLP client, financial or business records or files in connection with the pending criminal case.  AVENATTI, individually, and through his civil legal counsel have contacted the Receiver and me about obtaining access to unspecified EA, LLP files in the Receiver's possession.  The Receiver's responded that it would be necessary for AVENATTI to in writing reasonably identify the files or information he wanted, the reason why he wanted those files/information, provide reasonable assurances that production of those files/information would be at no expense to the EA, LLP receivership estate and, if the files/information would be retrieved from EA, LLPs Servers or Digital Devices by AVENATTI or his agents, provide reasonable assurances that the integrity of the same and all information contained thereon would be preserved.

Please let me know if you have any questions or if you need further information or clarification concerning the Receiver's position.

Very truly yours,

John P. Reitman

cc: Brian Weiss, Receiver

**Exhibit 4**
**Page 2 of 2**

# EXHIBIT 5

1  STATE BAR OF CALIFORNIA
   OFFICE OF CHIEF TRIAL COUNSEL
2  MELANIE J. LAWRENCE, No. 230102
   INTERIM CHIEF TRIAL COUNSEL
3  ANTHONY J. GARCIA, No. 171419
   ASSISTANT CHIEF TRIAL COUNSEL
4  ANAND KUMAR, No. 261592
   SUPERVISING ATTORNEY
5  ELI D. MORGENSTERN, No. 190560
   SENIOR TRIAL COUNSEL
6  845 South Figueroa Street
   Los Angeles, California 90017-2515
7  Telephone: (213) 765-1334

8

9                          STATE BAR COURT

10               HEARING DEPARTMENT - LOS ANGELES

11

12  In the Matter of:                    )  Case No.  19-TE-30259-YDR
                                         )
13  MICHAEL JOHN AVENATTI,               )  DECLARATION OF JOHN P. REITMAN
    No. 206929,                          )
14                                       )
                                         )
15  A Member of the State Bar.           )  OCTC Case No. 19-TE-16715

16        I, John P. Reitman, declare:

17        1.  All statements made herein are true and correct and are based on my personal

18  knowledge unless indicated as based on information or belief, and as to those statements after

19  reasonable inquiry I am informed and believe them to be true.  If necessary, I could and would

20  competently testify under oath to the statements made herein.

21        2.  I am informed by Trial Counsel with the Office of Chief Trial Counsel of the State

22  Bar of California (the "State Bar") and based thereon believe that Michael John Avenatti

23  ("Avenatti") is the respondent in the above-captioned disciplinary proceeding. I make this

24  declaration in connection with that proceeding.

25        3.  I have been a member of the State Bar since June 23, 1978.  I am a limited liability

26  partner at the law firm of Landau Gottfried & Berger LLP ("LGB").  I have represented chapter

27  7 and 11 trustees, creditors' committees and secured and unsecured creditors in complex

28                                      1
    ──────────────────────────────────────────────
                  DECLARATION OF JOHN P. REITMAN
                          **Exhibit 5**
                        **Page 1 of 43**

1    bankruptcy cases for more than thirty years.  I also have been appointed and have acted as a

2    (non-panel) chapter 11 trustee.

3         4.  On February 13, 2019, pursuant to a Joint Stipulation between judgment debtor Eagan

4    Avenatti, LLP ("EA") and Avenatti, on the one hand, and judgment creditor Jason Frank Law,

5    on the other hand, filed and the order thereon (the "EA Receivership Order") entered in *In Re*

6    *Eagan Avenatti, LLP*, Case No. 8:18-cv-01644-VAP-KES, pending in the United States District

7    Court, Central District of California (the "EA Case"), Mr. Brian Weiss ("Mr. Weiss") was

8    appointed as the Receiver of EA.  Exhibit 1 to this declaration is a true and correct copy of the

9    Oath of Receiver filed by Mr. Weiss in the EA Case, to which is appended a true and correct

10   copy of the Joint Stipulation and the EA Receivership Order.  On or about February 15, 2019,

11   Mr. Weiss retained LGB to represent him in his capacity as the Receiver of EA.

12        5.  Pursuant to the EA Receivership Order Mr. Weiss is entitled to take possession of all

13   of EA's books and records, including all of EA's computer servers.  Avenatti has on several

14   occasions stated to me that EA has six computer servers which contain all or substantially all EA

15   client files and EA business and financial records [*see* Joint Stipulation, EA Receivership Order,

16   ¶¶ 9, 12, 14a, l and p].  Avenatti was required to cooperate with Mr. Weiss in turning over those

17   records and computer servers and to not interfere with Mr. Weiss' activities as the Receiver [*id.,*

18   ¶ 27a, b and h and 28].

19        6.  Notwithstanding his obligations as set forth in the EA Receivership Order, Avenatti

20   did not fully cooperate with Mr. Weiss.  Among other things between mid-February and the end

21   of March 2019, Avenatti did not turn over EA's business and financial books, records or client

22   files or EA's computer servers to Mr. Weiss despite his and my repeated requests that Avenatti

23   do so.  Those requests were made orally in telephone calls in which Mr. Weiss and I participated

24   with Avenatti and/or legal counsel retained by him and in email communications sent by me or

25   Mr. Weiss (on which I was copied) to Avenatti and/or and his counsel.  Instead, Avenatti,

26   directly or through his legal counsel, represented to me and/or Mr. Weiss that he (Avenatti) was

27   working on getting Mr. Weiss a copy of documents stored on the computer servers, that he

28

1    (Avenatti) did not have possession of the servers because EA had sold the servers and other EA

2    personal property to a business associate (but the business associate told me that no EA computer

3    servers or other EA property had been received), and that he (Avenatti) could not access the

4    servers and did not know where the servers were located.  In fact, as discussed below, I

5    subsequently learned that EA's computer servers had been moved from EA's office in Newport

6    Beach, California to a computer server maintenance and storage company called "mixinIT"

7    which also is in Orange County, California pursuant to an agreement between EA and mixinIT,

8    and that maintenance and storage costs had been paid by EA to mixinIT; EA's computer servers

9    had been at mixinIT at least since Mr. Weiss had been appointed as the Receiver, despite the fact

10   that Avenatti and/or his counsel had represented otherwise.  Exhibit 2 to this declaration is a true

11   and correct copy of two of the billing invoices from mixinIT to EA and an email from EA to

12   mixinIT, which documents were provided to me by to mixinIT's legal counsel.

13       7.    On April 2, 2019, I received an email from Avenatti's attorney James Bastian in

14   which Mr. Bastian states, "I have been able to get information on the location of the [EA]

15   servers." See Exhibit 3 to this declaration (described in ¶ 9 below).  Shortly thereafter I received

16   a telephone call from an individual who identified herself as legal counsel for mixinIT.  From

17   Mr. Bastian's email and that call, I learned that EA's six computer servers were located at

18   mixinIT's computer maintenance and storage facility in Orange County, California.  The

19   attorney for mixinIT also told me that because monthly service charges had not been paid the

20   computer servers had been taken-off line but that the servers were available for turn over to Mr.

21   Weiss.

22       8.    On or about April 3 or 4, 2019, I spoke with an Assistant United States Attorney

23   concerning EA's computer servers, their location and whether Mr. Weiss would agree to permit

24   the Internal Revenue Service Criminal Investigation division (the "IRS-CI") to take possession

25   of the servers and make an electronic, forensic image copy of the information stored on the

26   servers.  After discussing with government representatives and Mr. Weiss terms and conditions

27   upon which Mr. Weiss might allow that to occur, Mr. Weiss agreed to allow that turn over to

28

1  take place.  Accordingly, in mid-April 2019, I was told by an IRS-CI representative that the IRS-

2  CI had picked up the servers from mixinIT and was in the process of making its electronic

3  forensic copy of the contents of the servers.  On April 30, 2019, the IRS-CI delivered EA's

4  computer servers and an electronic, forensic image of the servers' contents to Mr. Weiss.

5         9.       Upon Mr. Weiss' receipt of the computer servers and the electronic, forensic

6  image copy of their contents, both he and I notified Avenatti and his counsel (as well as other

7  attorneys who previously worked with Avenatti on still active litigation cases) that these items

8  had been received by Mr. Weiss.  Mr. Weiss and I also informed those persons that the servers

9  could not be accessed unless and until they were reactivated and that the receivership estate did

10  not have the funds or necessary facilities to do that.  Accordingly, Mr. Weiss and I told Avenatti,

11  his counsel and others who wanted copies of EA documents that responsive documents, if any,

12  could be retrieved for them from the forensic copy on the following terms: (i) the person

13  requesting EA or client documents would need to reasonably identify in writing the client or

14  matter, the reason/purpose for the request and the categories of information needed for a

15  particular client, if applicable, provide written authorization from the client, and agree to pay the

16  estimated cost for the information search and retrieval in advance of the performance of that

17  work.  If the estimated cost was less than the actual cost of the work, Mr. Weiss would promptly

18  return the excess deposit to the payor; if the cost of the work exceeded the deposit, the additional

19  cost would be payable prior to release of the copied information; (ii) Mr. Weiss would retain a

20  third-party forensic imaging consultant to provide an estimate of the cost to search and retrieve a

21  copy of the requested documents at the requesting party's expense or, if requested, permit a

22  qualified expert selected by the requesting party and acceptable to Mr. Weiss to make the search

23  and copy the forensic images, subject to supervision by Mr. Weiss' representative at the

24  requesting party's expense.  Exhibit 3 to this declaration is a true and correct copy of two email

25  strings regarding the foregoing between me and Avenatti and his attorney, James Bastian; the

26  emails were in response to a turn over demand from Avenatti to Mr. Weiss.

27

28

1      10.    Additionally, Mr. Weiss and I have discussed with Avenatti, his counsel and

2    others that the receivership estate has approximately 300-480 "banker" boxes of unlabeled and

3    inventoried paper records of EA or its former clients at a third-party storage facility.  Mr. Weiss

4    and I have offered requesting persons access to those records subject to approval of the storage

5    company and the availability of a Force 10 (Mr. Weiss' accounting firm) employee to supervise

6    the review and copying of those paper records; the cost of the supervision would be payable by

7    the requesting party at the Force 10 employee's customary hourly rate, and the copying service

8    would also be at the requesting party's expense.

9      11.    I understand that Mr. Gregory Barela is the complainant in this disciplinary

10    proceeding.  At no time through the date of this declaration has Avenatti or any person

11    identifying him/herself as his attorney or other representative contacted me or Mr. Weiss (with

12    whom I have conferred) requesting that Mr. Weiss provide Avenatti with a copy of the entire file

13    that EA has for or on behalf of Mr. Barela.  Had such a request been made, Mr. Weiss would

14    have complied on one condition: that respondent pay all the costs associated with hiring a third-

15    party to conduct the relevant search of the electronic, forensic images of the servers.

16      12.    To date, neither Avenatti nor anyone purporting to act on his behalf has requested

17    that Mr. Weiss or I provide a copy of any specific EA files to Avenatti, although a former EA

18    associate has requested access to information relating to two litigation matters (which

19    information has been provided on the terms set forth above).  The only requests for information

20    received by Mr. Weiss or me from or for Avenatti is that Mr. Weiss (i) identify to Avenatti active

21    clients represented by EA, (ii) give Avenatti "access to [Avenatti's] prior email, correspondence

22    with clients, settlement agreements, client accountings, case files, financial records, etc. . . . in

23    order to defend [himself] in the three criminal matters pending against [him] as well as the newly

24    filed State Bar matter" and (iii)  . . . ¶ [and] provide [Avenatti with] access to ALL of the books

25    and records and electronic files of EA in their entirety . . . today [June 4]."  See Exhibit 2.  Mr.

26    Weiss' response to these requests was to provide the names of known active clients Avenatti and

27

28

5

1  his legal counsel and to request that Avenatti agree to the terms set forth in ¶¶ 9 and 10 above,

2  which request has been ignored.

3        13.    I declare under penalty of perjury that the foregoing is true and correct and that

4  this Declaration is executed on July 10, 2019, at Los Angeles, California.

5

6

7                                    John P. Reitman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6
DECLARATION OF JOHN P. REITMAN

**Exhibit 5**
**Page 6 of 43**

1    JOHN P. REITMAN (State Bar No. 80579)
     jreitman@lgbfirm.com
2    LANDAU GOTTFRIED & BERGER LLP
     1801 Century Park East, Suite 700
3    Los Angeles, California 90067
     Telephone: (310) 557-0050
4    Facsimile: (310) 557-0056

5    Attorney for Brian Weiss, Receiver

6

7                   UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

     In re                              Case No. 8:18-CV-01644-VAP-KES
9
                                        **OATH OF RECEIVER**
10   Eagan Avenatti, LLP

11              Debtor.

12

13

14       I, BRIAN WEISS, hereby accept appointment as the Receiver in the above-

15   captioned case and swear that I will faithfully perform the duties of my office and

16   observe all instructions and orders of the above-entitled Court to the best of my

17   ability.

18       The "Joint Stipulation and Order re Appointment of Receiver and Restraining

19   Order" (the "Order") appointing me provides that pursuant to the consent and

20   agreement of Judgment Debtor Eagan Avenatti, LLP and Michael Avenatti, on the

21   one hand, and Judgment Creditor Jason Frank Law, PLC, on the other hand, I am

22   not required to file the bond required by Code of Civil Procedure section 567(b).  A

23   true and correct copy of the Order is attached to this oath as Exhibit 1.

24

25   Dated: February 15, 2019          _____

26                                              Brian Weiss

27

28

                                    1

EXHIBIT 1
7
**Exhibit 5**
**Page 7 of 43**

# EXHIBIT 1

EXHIBIT 1
8
**Exhibit 5**
**Page 8 of 43**

1   Scott H. Sims, State Bar No. 234148
    Andrew D. Stolper, State Bar No. 205462
2   FRANK SIMS & STOLPER LLP
3   19800 MacArthur Boulevard, Suite 855
    Irvine, California 92612,
4   Telephone:    (949) 201-2400
    Facsimile:    (949) 201-2401
5   astolper@lawfss.com
    ssims@lawfss.com
6
    Attorneys for Judgment Creditor
7   JASON FRANK LAW, PLC

8

9

10                 UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12

13   In re                              Case No.  8:18-CV-01644-VAP-KES

14   EAGAN AVENATTI, LLP,               **JOINT STIPULATION AND ORDER RE
                                        APPOINTMENT OF RECEIVER AND
15   Debtor.                            RESTRAINING ORDER**

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    -1-
                                                  STIPULATION AND ORDER RE
                                                  APPOINTMENT OF RECEIVER AND
                                                  RESTRAINING ORDER
                            EXHIBIT 1
                                2
                            EXHIBIT 1
                                9

**Exhibit 5**
**Page 9 of 43**

**STIPULATION**

This Stipulation is entered into by and between Judgment Debtor Eagan Avenatti, LLP ("EA") and Michael Avenatti ("Avenatti"), on the one hand, and Judgment Creditor Jason Frank Law, PLC ("JFL"), on the other hand (collectively, the "Parties").

WHEREAS, JFL has a judgment against EA in the amount of $10,000,000.00, plus accruing interest at $564.38 per day (since May 22, 2018) and reasonable attorney fees and costs incurred by JFL in enforcing the judgment (the "Judgment");

WHEREAS, on February 7, 2019, this Court ordered EA and Avenatti to appear for a judgment debtor examination on February 14, 2019 at 9:30 a.m. in Courtroom 6D of this Court (Doc. 50);

WHEREAS, on February 12, 2019, JFL filed a Motion for Appointment of Receiver and Restraining Order ("Motion") (Doc. No. 51);

WHEREAS, EA and Avenatti have stipulated and agreed to the relief requested in the Motion and have further agreed that the Magistrate Judge Karen E. Scott shall have the jurisdiction and authority to enter the attached [Proposed] Order Appointing Receiver and Issuing Restraining Order (the "Order"); and

WHEREAS, upon entry of the Order, JFL has agreed to withdraw the Motion and all pleadings and exhibits relating thereto and consent to the rescheduling of the judgment debtor exam to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court.

ACCORDINGLY, the Parties stipulate and agree as follows:

1.  The Parties, and each of them, stipulate to the terms of the Order;

2.  The Parties, and each of them, consent to the jurisdiction of the Magistrate Judge Karen E. Scott to enter the Order and to supervise the Receivership;

3.  Upon entry of the Order, the Motion is deemed withdrawn without prejudice; and

4.  Upon entry of the Order, the judgment debtor exam of EA and Avenatti is continued to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court, located at 411 W. 4th Street, Santa Ana, California 92701.

-2-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
3
EXHIBIT 1
10
**Exhibit 5**
**Page 10 of 43**

1      IT IS SO STIPULATED

2

3    Dated: February 13, 2019                    FRANK SIMS & STOLPER LLP

4

5                                            By:____/s/ Scott H. Sims_____
                                                 Scott Sims, Esq.
6                                                Attorneys for Judgment Creditor
                                                 Jason Frank Law, PLC
7

8    Dated: February 13, 2019                    EAGAN AVENATTI, LLP

9

10                                           By:_____
                                                 Managing Partner
11                                               Judgment Debtor Eagan Avenatti, LLP

12

13

14   Dated: February 13, 2019                    MICHAEL J AVENATTI

15

16                                           By:_____
                                                 Michael J. Avenatti
17                                               In his Personal Capacity

18

19

20

21

22

23

24

25

26

27

28

-3-                                  STIPULATION AND ORDER RE
                                     APPOINTMENT OF RECEIVER AND
                                     RESTRAINING ORDER

EXHIBIT 1
4
EXHIBIT 1
11
**Exhibit 5**
**Page 11 of 43**

1   **ORDER APPOINTING RECEIVER AND ISSUING RESTRAINING ORDER**

2        Pursuant to the Joint Stipulation between Judgment Debtor Eagan Avenatti, LLP ("EA")

3   and Michael Avenatti ("Avenatti"), on the one hand, and Judgment Creditor Jason Frank Law,

4   PLC ("JFL"), on the other hand (collectively, the "Parties") and for good cause shown:

5        IT IS HEREBY ORDERED:

6        1.   **The Motion.**  JFL's Motion for Appointment of Receiver and Restraining Order (Doc.

7             51) and all pleadings and exhibits related thereto are deemed withdrawn without

8             prejudice.

9        2.   **Judgment Debtor Exam**.  The judgment debtor exam of EA and Avenatti currently

10            scheduled for February 14, 2019 is hereby continued to March 8, 2019 at 9:30 a.m. in

11            Courtroom 6D of this Court, located at 411 W. 4th Street, Santa Ana, California

12            92701.

13       3.   **The Amount of Indebtedness.**  The principal amount of EA's indebtedness to JFL

14            under the Judgment is $10 million, plus accruing interest at $564.38 per day since

15            May 22, 2018, reasonable attorney fees and costs incurred by JFL in enforcing the

16            judgment, as well as all costs associated with the receivership (the "Total Indebtedness

17            to JFL").

18       4.   **Appointment of Receiver.**  It is hereby ordered that Brian Weiss is appointed as

19            Receiver of EA pending further Order of this Court.

20       5.   **Receiver's Oath and Bond.**  The Receiver shall immediately, and before performing

21            any duties (a) execute and file a Receiver's oath; and (b) the Receiver shall not be

22            required to file the bond required by Code of Civil Procedure section 567(b) pursuant

23            to consent and agreement of EA and Avenatti.

24       6.   **Receiver's Fees.**  The Receiver may charge for the Receiver's services no more than

25            $495.00 per hour.

26       7.   **Management Company.**  The Receiver may employ Force Ten Partners, LLC

27            ("Force 10"), where the Receiver is employed, to assist with the Receiver's duties at

28            the Receiver's direction, including but not limited to accounting, reporting, asset

-4-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
5
EXHIBIT 1
12
**Exhibit 5**
**Page 12 of 43**

investigation and other tasks.  The members of Force 10, other than the Receiver, shall be compensated at hourly rates ranging from $225 to $495 per hour.

8. **Disclosure.**  The Receiver shall immediately disclose to all parties any financial relationship between the Receiver and any company hired to assist in the management of the Receivership property.

9. **General Duties.**  After qualifying, the Receiver shall have the power to take possession of and manage the business of EA and its tangible and intangible property with all the usual powers, rights and duties of receivers appointed by this Court or otherwise defined by statute, including but not limited to the power to operate and conduct EA in the ordinary course of its business and collect fees, costs and income owed to EA, except that the Receiver will not be authorized to provide legal services on behalf of EA's clients.

10. **Inventory.**  Within 45 days after qualifying, the receiver shall file an inventory of all property possessed under this Order.  The Receiver shall file a supplemental inventory of all subsequently obtained property

11. **Expenditures.**  The Receiver shall expend money coming into his possession to operate and preserve EA's business and only for the purposes authorized in this Order.  Unless the Court orders otherwise, the Receiver shall to the extent practical hold the balance in interest-bearing accounts in accordance with California Code of Civil Procedure section 569.

12. **Monthly Accounting of Receiver's Income, Expenses and Fees.**

    a.  The Receiver shall each month prepare and serve on the parties, but not file, an accounting of the income and expenses incurred in the administration of EA, including the Receiver's fees and expenses.  The monthly reports shall provide a narrative of the material events, a financial report and a statement of all fees paid or due to the Receiver, Force 10 and any other professionals retained, showing the itemized services, broken down in $1/10^{th}$ hour increments.  The report shall state the hourly fees and any other basis for the fees.

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
6
EXHIBIT 1
13
**Exhibit 5**
**Page 13 of 43**

b. The Receiver may pay the Receiver's and Management Company's own fees and expenses only by the following procedures:

    i. By serving on all parties a notice of intent to pay to which no objection is served on the Receiver within 20 days of the date the notice is served.

    ii. By serving and filing a request for interim payment, which the Court then approves.

    iii. By obtaining and filing an agreement among all the parties approving the payment, which the Court then approves.

    iv. By filing the Receiver's final accounting and report, which the Court then approves.

c. The Receiver shall not reimburse the Receiver for the Receiver's general office administration expenses or overhead without Court approval. These expenses include, for example, office supplies and employee payroll, benefits and taxes.

12. **Management.**

a. The Receiver shall operate EA and take possession of all accounts relating to EA and its property.

b. The Receiver may hire legal counsel, accounting and tax professionals at normal and customary rates to represent the Receiver in his duties, provided however, legal counsel retained to pursue fraudulent and avoidable actions shall be on a contingency basis.

c. The Receiver may do all the things, and incur the risks and obligations, ordinarily done or incurred by owners, managers and operators of businesses and property similar to that possessed by the Receiver, except that the Receiver shall not make any capital improvements to property without prior Court approval and the Receiver shall not provide legal services to EA's clients.

13. **Bank Accounts.**

a. The Receiver may establish accounts at any financial institution insured by an agency of the United States government that are not parties to this proceeding and

-6-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
7
EXHIBIT 1
14

**Exhibit 5**
**Page 14 of 43**

1       shall deposit in those accounts any funds received in connection with EA's

2       business.

3     b.  The Receiver shall have control of, and be the sole authorized signatory for all

4       accounts of EA and client trust accounts or IOLTA accounts, including all

5       accounts at any bank, title company, escrow agent, financial institution or

6       brokerage firm which has possession, custody or control of any assets or funds of

7       EA, or which maintains accounts of the Receiver, or which maintains accounts

8       where EA's employees and agents in such capacity have signatory authority,

9       including but not limited to Michael Avenatti and Judy Regnier.

10     c.  The Receiver is authorized to open and close bank accounts, including client trust

11       accounts or IOLTA accounts.  For the avoidance of doubt, no other parties are

12       permitted to open and close bank accounts in the name of EA.

13   14.   **Additional Powers and Duties of the Receiver.**  The Receiver shall be authorized to

14     and shall perform the following duties and functions:

15     a.  Take possession of all past and current client engagement contracts, case files,

16       books and records, electronic files, and other documents necessary to manage

17       the Receivership Assets without limitation;

18     b.  Provide a copy of the signed receivership order to any party the Receiver

19       deems necessary in order to direct payment to the Receiver, manage the

20       Receivership Assets, and to perform investigations;

21     c.  Be the sole signatory to any contract of EA during the receivership;

22     d.  The ability to investigate fraudulent transfers and avoidance actions and to

23       pursue litigation;

24     e.  The power to sell assets upon Court approval;

25     f.  Make payments toward the Judgment upon Court approval;

26     g.  Make all inquiries EA might have made;

27     h.  Bring and defend actions in his own name, as Receiver;

28

-7-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
8
EXHIBIT 1
15
**Exhibit 5**
**Page 15 of 43**

i.   Endorse and deposit any checks, money, negotiable instruments or commercial paper through which EA is compensated in any manner whatsoever into the Receivership account;

j.   Pay all necessary costs and expenses to operate EA in order to maximize its assets;

k.   Manage the business affairs of EA, including monitoring and approving necessary expenses needed to operate the business and accepting new business contracts;

l.   Have access to and become the "administrative user" for all of EA's software programs, servers and website;

m.  Maintain detailed accounting records of all deposits to and all expenditures from the Receiver's bank account until the termination of the Receivership;

n.   Disburse funds to JFL and/or EA, or any creditor of EA as ordered by this Court;

o.   Conduct investigation and discovery, as may be necessary to locate and account for all of the assets of or managed by EA, including receiving, collecting and reviewing all mail addressed to EA, wherever directed;

p.   Take such action as is necessary and appropriate to preserve and take control of and to prevent the waste, dissipation, loss of value, concealment, or disposition of any assets of or managed by EA;

q.   Enter into settlements on behalf of EA with the approval of the Court; and

r.   Hire counsel to represent EA's interests in any application for fees and costs in any case in which EA may be entitled to reimbursement of fees and costs, including but not limited to those cases in which EA attorneys or resources where provided; and

s.   Have the sole authority regarding whether to file a petition for bankruptcy.

15. **Insurance.**

a.   The Receiver shall determine whether there is sufficient insurance coverage.

-8-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
9
EXHIBIT 1
16

**Exhibit 5**
**Page 16 of 43**

b. The Receiver shall notify the insurer that the Receiver is to be named as an additional insured on each insurance policy on the property.

c. If the Receiver determines that the property does not have sufficient insurance coverage, the Receiver shall immediately notify the parties and shall procure sufficient insurance.

d. If the Receiver does not have sufficient funds to obtain insurance, the Receiver shall seek instructions from the Court on whether to obtain insurance and how it is to be paid for.

e. The Receiver shall not be liable for EA's failure to carry or obtain adequate insurance.

16. **Taxpayer ID Numbers.** The Receiver may use any federal taxpayer identification numbers relating to EA and its property for any lawful purpose.

17. **Court instructions.** The Receiver and the parties may at any time apply to this Court for further instructions and order and for additional powers necessary to enable the Receiver to perform his duties properly. Nothing in this order shall be deemed a waiver of or preclude any party from requesting on notice to all other parties, modification of the order and all other parties shall be entitled to oppose such request.

18. **EA Responsible for Fees and Expenses of the Receivership.** EA shall be responsible for all fees and expenses associated with the receivership and such costs will be added to the Judgment pursuant to California Code of Civil Procedure section 685.070(a)(5).

19. **Termination of the Receivership.** The receivership shall not terminate until the Total Indebtedness to JFL is fully satisfied and/or the Court has determined the receivership shall end.

20. **Notification of Termination.** JFL shall notify the Receiver in writing within 48 hours of any event within JFL's knowledge that terminates the receivership.

21. **Receiver's Final Report and Account and Discharge.**

-9-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
10
EXHIBIT 1
17
**Exhibit 5**
**Page 17 of 43**

Case 8:18-cv-01644-VAP-KES   Document 55-1   Filed 02/15/19   Page 11 of 15   Page ID #:1793

Case 8:18-cv-01644-VAP-KES   Document 53   Filed 02/13/19   Page 10 of 14   Page ID #:1775

a. *Motion required.* Discharge of the Receiver shall require a Court order upon noticed motion for approval of the Receiver's final report and account and exoneration of the Receiver's bond, if any.

b. *Time.* Not later than 60 days after the receivership terminates, the Receiver shall file, serve and obtain a hearing date on a motion for discharge and approval of the final report and account.

c. *Notice.* The Receiver shall give notice to all persons of whom the Receiver is aware who have potential claims against EA.

d. *Contents of Motion.* The motion to approve the final report and account and for discharge of the Receiver shall contain the following.

   i. *Declaration(s).* Declaration(s) (1) stating what was done during the receivership, (2) certifying the accuracy of the final accounting, (3) stating the basis for the termination of the receivership, and (4) stating the basis for an order for the distribution of any surplus or payment of any deficit.

   ii. *Accounting summary.* A summary of the receivership accounting, which shall include (1) the total revenues received, (2) the total expenditures identified and enumerated by major categories, (3) the net amount of any surplus or deficit and (4) evidence of necessary supporting facts.

22. **Notice to Receiver.**  JFL shall promptly notify the Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in the action and their counsel.  The parties shall give notice to the Receiver of all events that affect the receivership.

23. **Consent to Convert Receiver to Bankruptcy Trustee.**  In the event of a bankruptcy, EA, Avenatti and JFL agree and stipulate that Receiver shall serve as the Chapter 11 Trustee pending confirmation by the Bankruptcy Court, or as the Chapter 7 Trustee if permitted by the Bankruptcy Court.

24. **Bankruptcy Receiver's Duties.**  If the Receiver receives notice that an involuntary bankruptcy has been filed and part of the bankruptcy estate includes property that is the subject of this Order, the Receiver shall have the following duties:

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
11
EXHIBIT 1
18
**Exhibit 5**
**Page 18 of 43**

a. *Turn over property if no relief from stay will be sought.*  The Receiver shall immediately contact the parties who stipulated to the appointment of the Receiver and determine whether either party intends to move in the bankruptcy court for an order for (i) relief from the automatic stay, and (ii) relief from the Receiver's obligations to turn over the property (11 U.S.C. § 543).  If neither party  intends to make such a motion, the Receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed that is not the Receiver and otherwise comply with 11 United States Code section 543.

b. *Remain in possession pending resolution.*  If either of the parties who stipulated to the receivership intend to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the property, the Receiver may remain in possession and preserve the property pending the ruling on those motions (11 U.S.C. § 543(a)).  The Receiver's authority to preserve the property shall be limited as follows:

   i.  The Receiver may continue to collect rents and other income;

   ii.  The Receiver my make only those disbursements necessary to preserve and protect the property; and

   iii.  The Receiver shall not execute any new leases or other long-term contracts without Court approval.

c. *Turn over property if no motion for relief is filed within 10 days after notice of the bankruptcy.*  If the parties who stipulate to the receivership fail to file a motion within 10 court days after their receipt of notice of the involuntary bankruptcy filing, the Receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession and otherwise comply with 11 United States Code section 543.

-11-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
12
EXHIBIT 1
19

**Exhibit 5**
**Page 19 of 43**

Case 8:18-cv-01644-VAP-KES   Document 55-1   Filed 02/15/19   Page 13 of 15   Page ID
#:1795

Case 8:18-cv-01644-VAP-KES   Document 53   Filed 02/13/19   Page 12 of 14   Page ID #:1777

d. *Retain bankruptcy counsel.* The Receiver may petition the Court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

25. **Failure to Turn Over Property.** A receiver who fails to turn over property in accordance with this Order shall not be paid for time and expenses after the date the Receiver should have turned the property over.

26. **Liability of the Receiver.** Except for an act of gross negligence or intentional misconduct, the Receiver shall not be liable for any loss or damages incurred by EA, its officers, shareholders, agents, servants, partners, employees, contractors, creditors, counsel or any other persons or entities by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of his duties.

<u>**RESTRAINING ORDER / INJUNCTION**</u>

27. **The Court orders EA and Avenatti** to do the following:

a. **Turn Over Property.** Immediately turn over possession of all property of EA to the Receiver when the appointment becomes effective, including but not limited to all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets and all funds in EA accounts, including client trust accounts.

b. **Access to EA's offices and computer systems.** Immediately turn over to the Receiver all keys and passwords relating to the property and grant the Receiver unfettered access to EA and all premises related thereto, and all EA computer systems.

c. **Insurance.**

i. Immediately advise the Receiver about the nature and extent of EA's insurance;

ii. Immediately name the receiver as an additional insured on each insurance policy; and

iii. DO NOT cancel, reduce or modify the insurance coverage.

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
13
EXHIBIT 1
20
**Exhibit 5**
**Page 20 of 43**

Case 8:19-cr-00061-JVS   Document 55   Filed 08/12/19   Page 98 of 198   Page ID #:662

Case 8:18-cv-01644-VAP-KES   Document 55-1   Filed 02/15/19   Page 14 of 15   Page ID
#:1796
Case 8:18-cv-01644-VAP-KES   Document 53   Filed 02/13/19   Page 13 of 14   Page ID #:1778

1      d.  **Notify Receiver of Clients and Cases.**  Within 7 days after the appointment of

2      the Receiver, EA and Avenatti, and office manager Judy Regnier must meet

3      with the Receiver and JFL and disclose all current clients and cases being

4      managed by EA and all cases in which the services of an EA attorney or EA

5      resources were provided, whether the case was filed in the name of EA or

6      another law firm.

7      e.  **Respond to Inquiries.**  Immediately respond to all inquiries of the Receiver

8      pertaining to EA.

9      f.  **Disclosure of Bank Accounts.**  Immediately disclose to the Receiver all

10      accounts of EA and client trust accounts, including all accounts at any bank,

11      title company, escrow agent, financial institution or brokerage firm which has

12      possession, custody or control of any assets or funds of EA, or which

13      maintains accounts of the Receiver, or which maintains accounts where EA's

14      employees and agents in such capacity have signatory authority, including but

15      not limited to Michael Avenatti and Judy Regnier.

16      g.  **Payment.**  Pay all amounts due to the Receiver.

17      h.  **Cooperation.**  Avenatti shall fully cooperate with the Receiver for the duration

18      of the receivership, regardless of whether he is employed by or affiliated with

19      EA, including but not limited to directing Judy Regnier and any other former

20      employees of EA to likewise cooperate with the Receiver.

21  28.  **Enjoinment.**  EA, and its owners, partners, employees, agents, managers, attorneys

22    and all persons and entities acting in concert with EA are hereby enjoined and cannot:

23      a.  Expend, disburse, remove, transfer, assign, sell, convey, devise, pledge,

24      mortgage, create a security interest in, encumber, conceal or in any manner

25      whatsoever deal in or dispose of the whole or any portion of EA's assets,

26      including but not limited to its rights to attorney fees and costs from any

27      client or in connection with any cases in which EA attorneys or resources

28      were used;

-13-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
14
EXHIBIT 1
21
**Exhibit 5**
**Page 21 of 43**

| | | |
|---|---|---|
| 1 | b. | Interfere in any way, directly or indirectly, with the Receiver's |
| 2 | | performance of his/her duties and responsibilities and the exercise of |
| 3 | | his/her powers and/or doing any act which may impair, defeat, divert, |
| 4 | | prevent or prejudice the preservation of EA's assets or the proceeds |
| 5 | | thereof; |
| 6 | c. | Commit or permit any waste of EA's assets or any portion thereof, or |
| 7 | | suffer or commit or permit any act on EA's assets or any part thereof in |
| 8 | | violation of law; |
| 9 | d. | Conceal or withhold from the Receiver any EA assets, including any client |
| 10 | | trust funds, real property, physical property, indirect or beneficial |
| 11 | | ownership interests, or funds; |
| 12 | e. | Do any act which will, or which will tend to, impair, defeat, divert, prevent |
| 13 | | or prejudice the preservation of EA's assets; |
| 14 | f. | Demand, collect, compromise, trade, receive or spend any portion or |
| 15 | | proceeds of EA's assets; and |
| 16 | g. | Fail to pay over to the Receiver any monies whenever received, presently |
| 17 | | in the possession, custody or control of EA, its owners, agents, |
| 18 | | representatives, servants, assigns and all those acting in concert therewith. |

29. Nothing in this order excuses or alters any ethical duties that EA and/or EA's attorneys may have to their clients.

Dated: 2/13/2019

*Karen E. Scott*
U.S District Court Magistrate Judge

-14-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
15
EXHIBIT 1
22

**Exhibit 5**
**Page 22 of 43**



# INVOICE

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

**INVOICE:** I9500250
**Date:** 11/19/2018

**TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

**SHIP TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|---|---|---|---|
| 1 | Setup Fee | $1,000.00 | $1,000.00 |
| 1 | First Month of Data Center Colocation Services - 11/19/2018<br>Billing cycle will occur on the 19th of each month.<br>Next automatic bill date - 12/19/2018. | $1,000.00 | $1,000.00 |

Note: Paid - Total Invoice paid via credit card on 11/19/2018 (Visa 1551)

| | |
|---|---|
| SUBTOTAL | $2,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $2,000.00 |
| TOTAL DUE | $0.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

EXHIBIT 2
23
**Exhibit 5**
**Page 23 of 43**



**INVOICE**

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

INVOICE: I9500252
Date: 1/19/2019

**TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

**SHIP TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|-----|-------------|------------|------------|
| 1 | Monthly Data Center Colocation Services – 1/19/2019 – 2/19/2019<br>Payment due on or before 1/25/2019 | $1,000.00 | $1,000.00 |

Note: Pay invoice on or before 1/25/2019 to avoid service disruption
Easy payment method available via credit card over the phone

| | |
|---|---|
| SUBTOTAL | $1,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $1,000.00 |
| TOTAL DUE | $1,000.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

EXHIBIT 2
22
**Exhibit 5**
**Page 24 of 43**

**From:** i kay
**To:** MixinIT
**Subject:** Removal of Additional Employees
**Date:** Friday, March 15, 2019 12:08:44 PM

Frankie -

We need to have Hillary Wolett and Thomas Gray removed from the email and remote access.

Thank you.

Judy

EXHIBIT 2
25
**Exhibit 5**
**Page 25 of 43**

**John Reitman**



| | |
|---|---|
| **From:** | Brian Weiss <bweiss@force10partners.com> |
| **Sent:** | Wednesday, April 3, 2019 5:56 PM |
| **To:** | John Reitman |
| **Subject:** | Fwd: EA servers |

---------- Forwarded message ---------
From: **Jim Bastian** <JBastian@shbllp.com>
Date: Tue, Apr 2, 2019, 5:37 PM
Subject: Re: EA servers
To: John Reitman <jreitman@lgbfirm.com>
Cc: Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>, Jack Reitman <jareitman@lgbfirm.com>

Further to this, I am advised that the servers were moved well before the firm moved from the NB offices.

On Apr 2, 2019, at 5:23 PM, Jim Bastian <JBastian@shbllp.com> wrote:

>   John:

>   As I believe Brian is well aware, the servers were moved from the law firm's Newport Beach office after
>   those offices closed and well before Brian was appointed. I also understand that Brian met with Michael
>   at the firm's LA offices after his appointment and was referred to X Law Group in connection with this.
>   Your email suggested something was done recently in violation of the receivership order. This has not
>   occurred. Nothing has been done or will be done in connection with the servers to interfere with Brian's
>   duties as receiver. Again, we are trying to work with you on this.

>   Michael has not been able to access his email or any data and the servers appear to be down. We had
>   thought that they were in the control of the authorities, but that is apparently not the case. We then
>   thought they might be within the receiver's control, but that appears not to be the case. At this point,
>   we have no idea why the servers are down and have not been able to get any information whatsoever.

>   We are happy to work with you towards a common goal of accessing the servers and more importantly
>   the data and information stored on them. Again, Michael reserves all rights as indicated previously.

>   I find it ironic that you separately emailed what appears to be an important document related to a very
>   important case, indicating that Michael is still counsel of record, which clearly supports the idea that
>   some cooperation is required here in order to preserve and maximize estate assets. Yet in a separate
>   email you are seeking to prohibit Michael from accessing information that may be necessary to properly
>   represent his clients and preserve estate assets.

>   Let me know how you want to proceed.

>   Jim

>   On Apr 2, 2019, at 4:00 PM, John Reitman <jreitman@lgbfirm.com> wrote:

1

EXHIBIT 3
26
**Exhibit 5**
**Page 26 of 43**

Thank you for the information.  Who had the business card, who removed the servers from EA's office and who gave the servers to the vendor?  Please inform Mr. Avenatti that (1) he is not to contact the vendor without Mr. Weiss' written authorization or do anything else that might interfere with the Receiver's efforts to recover the servers and (2) any such direct or indirect action by him will result in Mr. Weiss filing an OSC for violating the Receivership Order.


John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.


**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Tuesday, April 2, 2019 3:22 PM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** 'Brian Weiss (bweiss@force10partners.com)' <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list
**Importance:** High


Gentlemen:


I have been able to get information on the location of the servers.  See attached image of a business card we located.  The servers are housed with a third party data storage vendor apparently located in Newport Beach called mixinIT.  We have attempted to

2

EXHIBIT 3
**Exhibit 5**
**Page 27 of 43**

contact this entity by telephone and in person but the phone number provided goes to an anonymous google voice mail (my messages have gone unreturned) and the physical location for the address on this card is a mail box.

I have conferred with Judy Regnier and this is the only information she has on this as all her other information was stored on her phone or computers which were seized by Federal agents.

If you are able to get access to or control over the servers, please let me know immediately so we can make arrangements for Michael to get access to information he needs and which is critical to his ability to earn a living, mount a defense to the criminal charges against him, practice law and communicate with his clients.  Michael reserves all rights with respect to these servers, including to preserve and access information stored on these servers and to maintain the confidentiality of private and client related information, communications and material.  We trust you will respect those rights to the extent you are able to access the servers and that you will cooperate with us to the extent necessary.

If you need anything further or assistance from me or Michael with this, let me know.

Thanks.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

<image001.jpg>

Orange County – 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000

3

EXHIBIT 3
28
**Exhibit 5**
**Page 28 of 43**

Inland Empire – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** Jim Bastian
**Sent:** Tuesday, April 2, 2019 10:57 AM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list
**Importance:** High

Gentlemen:

We have been working on getting access to the servers and have discovered that the servers are offline and not accessible by Michael. We had thought that the servers had been seized by the authorities related to the criminal proceedings, but have learned that this is not the case. This leads us to believe that perhaps you have taken control of the servers? Can you confirm if this is the case? This is critically important as Michael needs access to the servers in order to address cases in which he is counsel and also cases in which EA has an interest. If you have not taken control of the servers, then something else has occurred and we need to figure out how to obtain access.

Next, with respect to the case list, Michael advises that the list you have provided is not complete and does not reflect the more extensive case list discussed between Michael and Brian, and which was apparently memorialized in some fashion through an Excel spread sheet. Can you provide the complete list?

4

EXHIBIT 3
29
**Exhibit 5**
**Page 29 of 43**

With respect to the list you have provided, I have reviewed this with Michael and in connection with the cases listed, Michael's position is as follows:

██████ – you can reassign.

██████ - Michael's position is that he is lead counsel and that EA has a fee interest. Since you have filed a motion on this, the courts will decide this it appears but to be clear, it is Michael's position that you are not permitted to tamper with the case or client. If Brian has any evidence that EA is lead counsel as opposed to Michael individually, he has yet to see it even though he has been asking for it. That all being said, again, it appears the courts will resolve this. I say "courts" because I am frankly not sure which court will ultimately decide the issue as there appears to be some conflict between the court presiding over the receivership and that court handling the underlying case.

████████████ - you can reassign. Michael believes that EA is probably only entitled to 50% of the fees presently because of referring counsel (see email Michael sent to Brian the weekend before last). As such, EA will likely get a very small percentage at best once cases are reassigned.

████████ action; you can reassign

████████ action; you can reassign

██████ – abandoned by the client so no action needed

██████ case is over due to ruling from ████████ Court

██ Michael will remain as counsel

██ Michael will remain as counsel

██████ - Michael will remain counsel

██████ – as you are aware, client has terminated the firm and Michael. Now entitled only to QM, and likely has little value.

██████ – you can reassign; case likely only worth $150k in fees at most

██████ - ██████ arbitration; Michael will remain counsel

██████ Michael will remain counsel

██████ – abandoned by client

██████ - class action; you can reassign

Again, if you can provide the full list, we can provide answers on other cases.

Finally, with respect to the remaining open items on the spreadsheet (copy attached again for your easy reference), Michael's responses to open items are in the MJA Notes section in red font (scroll over to the far right of the spread sheet), which responses were provided to Brian before my involvement. As we have advised, due to the criminal matter and authorities seizing of documents and computers, Michael presently has no access to the books and records and other documentation and data bases, including that which was under the control of Judy Regnier.

And if you can let me know about the servers asap, this is of critical importance. If you do not have control over the servers than something else is going on and we need to dig deeper. Thanks.

Jim

5

EXHIBIT 3
Exhibit 5
Page 30 of 43

James C. Bastian, Jr.
*Partner*
Jbastian@shbllp.com
http://www.shbllp.com

<image001.jpg>

**Orange County** - 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400 Fax: 949-340-3000

**Inland Empire** – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300 Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Friday, March 29, 2019 11:49 AM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

6

EXHIBIT 3
31
**Exhibit 5**
**Page 31 of 43**

Jim, Brian Weiss has asked that I respond to your email. His view of Mr. Avenatti's degree of cooperation is verified by the still "open" requests on the list attached to your email. The requests were made more than or nearly a month ago (except the one requesting an explanation of the name change). Mr. Weiss also sent multiple copies of the list to Mr. Avenatti and repeatedly asked for the information and the status of efforts to provide it. We also provided the list to you on March 18 and you replied on the following day that "I am working with my client on all this and expect to have things moving on this later this week." Finally, the requests also were made at a time (from mid-February through my email to you) when Mr. Avenatti had unfettered access to the information sought. Nevertheless, Mr. Avenatti represented to Mr. Weiss that he did not the EA servers and also that the business and financial information on the servers was being copied for Mr. Weiss when it now appears that those representations were not accurate. From Mr. Weiss' perspective, Mr. Avenatti's cooperation to date has been far less than that required by the Receivership Order and far from sufficient to enable Mr. Weiss to fully perform his tasks as the receiver. Mr. Weiss is duty bound to and will so inform the Court.

If Mr. Avenatti want a conference call simply to update us on his efforts to complete the open items on the request, it would be more helpful for him to do so in writing. If there are other subjects that he wants to cover in the call, please let me know what they are. I will then let you know how Mr. Weiss would like to proceed.

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-691-7377
Fax: 310-557-0056
E-mail: jreitman@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

7

EXHIBIT 3
32
**Exhibit 5**
**Page 32 of 43**

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Friday, March 29, 2019 10:47 AM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

John:


Michael is happy to get on a call and review the spread sheet of open items (which is attached).  He has cooperated and will continue to cooperate with Brian.  As you will recall, we requested a call last weekend for this purpose but never got a response.  I am involved in a meditation today at my office but expect to have frequent long breaks to have a call.


Also, beyond all the back and forth emailing, are you going to provide a copy of the case list?  This will help make our discussion most productive.  Thanks.


Jim


James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com


<image001.jpg>


Orange County - 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000

Inland Empire – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303


Confidentiality Notice: The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this

8

EXHIBIT 3
39
**Exhibit 5**
**Page 33 of 43**

communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Thursday, March 28, 2019 3:44 PM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

As a starting point, my email neither misstates or distorts the facts.

Second, my email references paragraph 29 of the Receivership Order so that you and Mr. Avenatti would understand that we are not criticizing his decision to file the withdrawal of counsel. Our criticism is directed to his failure to immediately advise Brian of the client's request.  This fully responds to three paragraphs of your email.

Third, we are not "missing the point" as it relates to the request for Mr. Weiss' list of EA cases and clients. Instead, you have ignored our concern which is reasonable given your client's lack of performance of his obligations under the Receivership Order.  Because you did not attend the proceeding, I did not address  Mr. Avenatti's equally faulty memory at the EA judgment debtor examination.

The rest of your comments are gratuitously insulting, serve only to exacerbate a difficult situation and do not rate a response.

Mr. Weiss has made diligent efforts to help resolve the disputes between Mr. Avenatti and Mr. Frank and to perform his obligations as the receiver.  Mr. Weiss still would welcome Mr. Avenatti's cooperation but that requires Mr. Avenatti's prompt, truthful and direct responses to Mr. Weiss' requests.

9

EXHIBIT 3
34
**Exhibit 5**
**Page 34 of 43**

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the
intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this
communication and all copies thereof, including deletion of all associated text files from
individual and network storage devices; and (3) refrain from disseminating this communication by
any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform
you that any U.S. federal tax advice contained in this communication (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding
penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein.

---

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Thursday, March 28, 2019 2:44 PM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack
Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

John:

This is not productive. I have told you several times I am trying to help you guys
here.  Sending me a self-serving long email that I now have to respond to because it

10

EXHIBIT 3
**Exhibit 5**
**Page 35 of 43**

misstates facts and distorts others only increases costs and causes further delay, but since this is apparently the way you want to play this, I guess I have no choice.

As Michael advised Brian, general counsel to ███████ contacted Michael that they wanted him to IMMEDIATELY withdraw from the case and have local counsel take over. (I can send you the text if you want). The request was urgent apparently in light of an upcoming deadline or hearing. That is the client's right and Michael had no option but to agree. It appears to be your position that Michael must obtain Brian's consent to take any action requested by his clients. It appears to me that there is a real conflict here given an attorneys' ethical duties and the apparent duties of the Receiver. However, the Order appointing Brian has language in the last paragraph 29 that provides guidance: **"Nothing in this order excuses or alters any ethical duties that EA and/or EA's attorneys may have to their clients."**

In this instance ████████ advised Michael that it wished to terminate his services and Michael had an absolute duty to comply and withdraw. (See ABA Model Rule 1.16(a)(3); *Fracasse v. Brent*, 6 Cal. 3d 784, 790 (1972).) A client can even terminate counsel in the middle of a trial, though the court may refuse to grant a continuance to secure new representation. (See *Berger v. Mantle*, 18 Cal. App. 2d 245, 248–294 (1936).)

As such, Michael was ethically bound to withdraw and the Receiver order protects the fulfillment of that ethical duty. With respect to the language from the order you cite, I am not sure how Michael's action could possibly be violative of the order given paragraph 29. If the client wants to change counsel, Brian cannot do anything about that and in fact, your position infers that Brian has the right to deny a client its absolute right to terminate as noted above. This cannot be your position.

With respect to the names of the clients issue you note, you are clearly missing my point (and misstating what I said to you). I merely want a copy of the list Michael provided (and apparently which Michael and Brian spent several hours reviewing) so that I was "singing from the same sheet of music" you guys were – again in my effort to help you maximize the value of this estate. This was because Michael has no access to any data or emails as all of his computers have been seized and the servers apparently have as well.

As far as Michael's recollection and your implication that he is hiding information or cases from Brian, give me a break. I have 50-60 pending client matters and I rely heavily on a list my assistant maintains. I can remember most of the cases but not all. I want to eliminate the guess work and room for error by simply having the data you have, again so I can help you! Michael and I have gone over some of the cases but he cannot remember all of them.

11

EXHIBIT 3
36
**Exhibit 5**
**Page 36 of 43**

I am not going to engage in these games.  Demanding that I send you a list of what Michael remembers is just plain silly.  As I have told you, my goal is to develop a comprehensive list (to the extent not already developed among Michael and Brian) through a review of what has been developed to date and then reviewing it with Michael to make sure there are no others.  Then if there are cases that he is working on that are not EA related, we can identify those so there is no question as to the estate's interest.  Again, I am trying to help you guys here.

Please just send me the list.  I see no harm in this.  All you are doing I driving up costs and now basically taking an adversarial approach that is not going to help.

I also would suggest that you do not need two attorneys on this file at all times.  I note that every call,  hearing and email is involving you and Jack. This is not necessary and wasteful.

To be clear – the request for this list is not Michael's request – it is my request. I do not have this document and have no way of obtaining it.  I plan to work with Michael on the list but again, my purpose is so that I can help you guys here.

Let's get beyond this stuff.  Thanks.


Jim


James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com


<image001.jpg>


Orange County - 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000

12

EXHIBIT 3
37
**Exhibit 5**
**Page 37 of 43**

Inland Empire – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax:
951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is
intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this
communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be
unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and
delete the original message and all copies from your system. Thank you.

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Thursday, March 28, 2019 1:02 PM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack
Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

Jim, as Brian and I expressed to you during our last phone conversation, Mr. Avenatti
had control over the servers for approximately six weeks after Brian was appointed but
withheld access to the information stored on those servers in violation of the
Receivership Order.  More recently,  we learned without advance warning that Mr.
Avenatti had withdrawn as counsel for ▮▮▮▮▮.  Please inform Mr. Avenatti that he
should more carefully read the Receivership Order by which he is bound.  By way of
example only, Mr. Avenatti has violated the following Receivership Order
requirements:  paragraphs 27 a, b and h; and 28 a, b and e.  His conduct has directly
negatively affected Brian's ability to "take such action as is necessary and appropriate to
preserve and take control of and to prevent the waste, dissipation, loss of value,
concealment, or disposition of any assets of or managed by EA" (paragraph 14. p).

13

EXHIBIT 3
**Exhibit 5**
**Page 38 of 43**

In our last phone conversation, you also asserted that Mr. Avenatti needed the names of his own clients and the cases in which he represents them because he was unable to remember all of them. In response, we told you that Mr. Avenatti had previously provided a case and client list to Brian, and that additional information has been derived from other sources. To again ask for a list of all of the cases now known to the Receiver causes us to question whether Mr. Avenatti was fully forthcoming in his earlier disclosure. In the circumstances, lets start with Mr. Avenatti providing a list of the cases he recalls and is willing to transfer to other counsel and which cases he is not willing to transfer; for example, what about Kimberly Clark and the children's dentist cases? We can then re-address Mr. Avenatti's request.

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-691-7377
Fax: 310-557-0056
E-mail: jreitman@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Thursday, March 28, 2019 11:40 AM
**To:** John Reitman <jreitman@lgbfirm.com>; Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>
**Subject:** EA case list

Guys:

Following our call yesterday, I would appreciate it if you could please send me the case list. I do not have it and Michael cannot access any records as all servers and computers have been seized by the authorities. I am working with him to go through the list and

14

EXHIBIT 3
39
**Exhibit 5**
**Page 39 of 43**

confirm the cases he is willing to release any interest in and sign substitutions of attorney to the extent necessary.  There are a few cases he wants to keep but the majority it appears he is happy to transition to new counsel.  I need the list to assist in this process.  Thanks.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

<image001.jpg>

**Orange County -** 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000

**Inland Empire –** 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Force 10 Partners and each of its subsidiaries each reserve the right to monitor all e-mail communications through its networks.

15

EXHIBIT 3

**Exhibit 5**
**Page 40 of 43**

**John Reitman**

| | |
|---|---|
| **From:** | John Reitman |
| **Sent:** | Tuesday, June 4, 2019 12:14 PM |
| **To:** | Jim Bastian |
| **Cc:** | Jack Reitman; Michael Avenatti |
| **Subject:** | FW: Urgent: EA Servers and Documents |

Jim, as previously requested, all communications from your client (see the following email from Mr. Avenatti) should be made through you.

As to Mr. Avenatti's request:

1.  Pursuant to an Order to Deliver Specific Property filed in the Family Law Court on April 4, 2019, filed in Avenatti v. Lisa Storie-Avenatti, Orange County Superior Court Case No. 17D00930, Mr. Avenatti was required to immediately turnover, among other things, 100% of his personal ownership interest in EA (para. 1) and 100% of the shares of A&A (para. 2) to be applied toward satisfaction of Ms. Storie's judgment against him. Accordingly, on what basis does Mr. Avenatti still claim to "own" EA?

2.  Mr. Avenatti is not entitled the broad range of documents he has requested. As to client documents, they are owned by the clients. Subject to para. 4 below, the Receiver will make client documents available to those clients who request them in a signed, verifiable writing delivered to the Receiver. With such request, the Receiver will require a reasonable description of the requested files/documents and where they may be found before undertaking any work. As you know, there are voluminous electronically stored documents and approximately 480 un-inventoried boxes of paper documents stored at Affiliated Storage (that entity also is owed storage fees which may need to be paid before it will release documents).

3.  As for non-client documents, subject to para. 4 below, the Receiver will make a copy of non-client EA documents available to Mr. Avenatti that are necessary or reasonably appropriate for him to continue his representation of identified, existing clients or for his defense of the criminal charges. Accordingly, the Receiver will require a written reasonable description of the files/documents requested and a written reasonable explanation of why those files/documents are necessary or appropriate for those purposes before undertaking any work. The Receiver also reserves the right to require a fully signed confidentiality agreement(on terms acceptable to him) covering requested EA documents.

4.  When Mr. Avenatti executed the Joint Stipulation and Order re Appointment of Receiver and Restraining Order, he had in front of him all the information he needed to determine the consequences of that action for EA's clients and himself. The Restraining Order made clear that the Receiver would, among other things, "[14.a] [t]ake possession of all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets . . .." and "[14.i] [h]ave access to and become the "administrative user" for all of EA's software . . .." Instead of giving the Receiver access to EA's servers, Mr. Avenatti at various times represented to the Receiver that (1) he (Avenatti) had access to the servers; (2) he didn't have such access; (3) he didn't know where the servers were; and (4) EA had sold the servers to X-Law Group. In fact, however, Mr. Avenatti had caused EA's computer servers to be moved from EA's Newport office to a third-party vendor, to store and maintain, and EA paid the vendor for that service. Mr. Avenatti continued that deception until April 2, approximately 75 days after the Receiver was appointed by the District Court. Throughout that 75-day period, Mr. Avenatti continued to have what amounts to exclusive control over all EA information then necessary for him to continue his representation of its clients or to permit the clients to transfer their matters to substitute counsel. During that entire time, Mr. Avenatti could have but apparently chose not to inform EA's clients of the status of their respective files or to make those files available

EXHIBIT 3
**Exhibit 5**
**Page 41 of 43**

to them.  Instead, he stopped EA from paying for the maintenance and storage of the servers.  He also made sure that EA had no cash to enable it to operate. At this time, the receivership estate still has no funds.

The Receiver is not obligated to and will not, at his own expense, make documents available to EA's former clients or to Mr. Avenatti.  Upon receipt of a proper request for documents (as outlined above) or a court order requiring the production of documents, the Receiver will make a good faith estimate of the cost (supervision and labor, at the customary hourly rates for persons employed by Force 10 Partners) and out of pocket expenses to produce the requested documents.  The Receiver also will require, in advance of doing any work on the production, pre-payment of the estimated cost of the production.  If the estimated cost of the production at any time exceeds the deposit, the Receiver may require the deposit of additional funds.  The Receiver will return any deposited funds not used for a production and will not release any requested documents until all costs of a production have been paid.

The Receiver may permit outside IT specialists or other vendors to do document retrieval, imaging and copying work on terms acceptable to him to ensure that electronically stored or imaged information and paper documents are not altered or damaged and at no cost to the Receiver or the receivership estate.  The Receiver will not permit the review or production of documents unless it is supervised by a Force 10 representative or other person acceptable to him (which supervision shall be at the expense of the requesting party).

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1880 Century Park East, Suite 1101
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Michael Avenatti <m@thefight.us>
**Sent:** Tuesday, June 4, 2019 4:42 AM
**To:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Dean Steward <deansteward7777@gmail.com>; Ellen Pansky <epansky@panskymarkle.com>; Jack Reitman <jareitman@lgbfirm.com>; Jim Bastian <JBastian@shbllp.com>; John Reitman <jreitman@lgbfirm.com>; Jose M. Quiñon <jquinon@quinonlaw.com>; Scott Srebnick <scott@srebnicklaw.com>
**Subject:** Urgent: EA Servers and Documents

Brian:

As you know, for over two months now, I have been trying to gain access to the EA servers and related documents.  Despite multiple requests and the fact that I own 100 percent of the law firm, you have refused to provide me any access.

2

EXHIBIT 3
42
**Exhibit 5**
**Page 42 of 43**

To be clear, since March 26 I have not had access to my prior email, correspondence with clients, settlement agreements, client accountings, case files, financial records, etc.  I need access to this information in order to continue to service clients and attend to their matters.  I also urgently need access in order to defend myself in the three criminal matters pending against me as well as the newly filed State Bar matter.

Demand is once again made that you provide me access to ALL of the books and records and electronic files of EA in their entirety and that it be done by the close of business today.  Time is of the essence and there is no legitimate reason as to why you should continue to refuse to provide me unfettered access to this information.

Please inform me as to when today I can begin accessing the information.

Thank you.

Michael


--
Michael J. Avenatti

EXHIBIT 3
49
**Exhibit 5**
**Page 43 of 43**

# EXHIBIT 6



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*BRETT A. SAGEL*
*Phone:  (714) 338-3598*
*E-mail:  Brett.Sagel@usdoj.gov*

*411 W. 4th Street, Suite 8000*
*Santa Ana, California  90012*

March 26, 2019

**<u>VIA EMAIL & US MAIL</u>**

MixinIT
4533 MacArthur Blvd.
Newport Beach, CA 92660

Re:   <u>Request for Preservation of Records</u>

Legal Process/To Whom it May Concern:

Pursuant to Title 18, United States Code Section 2703(f), this letter is a formal request for the preservation, pending further legal process, of all records and other evidence in your possession regarding the account(s) associated with the following entities or individuals, which we understand may have obtained services from MixinIT, either directly from MixinIT or indirectly through a third-party:

- **EAGAN AVENATTI LLP**
- **AVENATTI AND ASSOCIATES**
- **MICHAEL J. AVENATTI, ESQ.**
- **MICHAEL J. AVENATTI**
- **TC GLOBAL, INC.**
- **TULLY'S COFFEE**
- **GLOBAL BARISTAS LLC**
- **GLOBAL BARISTAS US LLC**
- **GB AUTOSPORT LLC**
- **PASSPORT 420 LLC**
- **DOPPIO INC.**
- **JUDY K. REGNIER**

You are hereby requested to preserve, for a period of 90 days, the records described below currently in your possession, including records stored on backup media, servers, or in a form that includes the complete record. You also are requested not to disclose the existence of this request to the subscriber or any other person, other than as necessary to comply with this request.  **If compliance with this request may result in a permanent or temporary termination of service to the accounts described below, or otherwise alert the subscriber or user of these accounts as to your actions to preserve the referenced files and records, please contact Special Agent Remoun Karlous at (949) 279-4895 or Remoun.Karlous@ci.irs.gov as soon as possible and before taking any such actions.**

**Exhibit 6**
**Page 1 of 3**

MixinIT
RE:  Request for Preservation of Records
March 27, 2019
Page 2

      This request applies only retrospectively. This preservation request applies to the following records and evidence:

1.      All servers and stored information from the requested accounts.

2.      All stored electronic communications, text messages, SMS, MMS, and other files reflecting communications to or from the requested accounts.  Such information and communications include:

      a.      Search queries run or history of any Internet searches;
      b.      Website browsing history or websites visited;  and
      c.      Any tags, likes, or check-ins.

3.      All records and other evidence relating to the subscriber(s), customer(s), account holder(s), or other entity(ies) associated with the requested accounts including:

      a.      subscriber names, numbers or identities;
      b.      telephone or instrument number or other subscriber number or identity including any email addresses or temporarily assigned network address such as an Internet Protocol ("IP") address at the time of registration and at each transaction and including the source port or network address translation address;
      c.      user and screen names or other identities;
      d.      mailing, residential, and business addresses, e-mail addresses and other contact information including telephone numbers;
      e.      billing records, means and source of payment for any services, including any credit card number, bank account number, or other payment number;
      f.      information about the length of service and the types of services the subscriber or customer utilized;
      g.      any other identifying information, whether such records or other evidence are in electronic or other form; and
      h.      any and all cookies associated with or used by any computer or web browser associated with the account, i.e., the identity of any specific cookies recognized when any account identified above was accessed, as well as the identity of any other accounts accessed when any of those same cookies were recognized, and such information shall include the IP addresses, dates, and times associated with the recognition of any such cookie.

4.      All connection logs and records of user activity for the requested accounts, including:

      a.      Connection and disconnection date and time;
      b.      Local and long distance telephone connection records, including complete toll history with incoming, outgoing, routed, and restricted numbers, and including call detail records and text detail records;
      c.      Records of session times and durations;
      d.      Method of connection (e.g., telnet, ftp, http);
      e.      Data transfer volume;
      f.      User name associated with each connection and other connection information, including the IP addresses;
      g.      Telephone caller identification records;

**Exhibit 6**
**Page 2 of 3**

MixinIT
RE:  Request for Preservation of Records
March 27, 2019
Page 3

        h.      Historical cell site records , including tower and sector reflecting the location of any telephone, facility, account, or device;

        i.      Any information identifying the devices used to access or register the account, where such information includes a Global Unique Identifier or "GUID," serial number, mobile network information, phone number, device serial number, MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); and

        j.      Connection information for other computers to which the user of the above-referenced account(s) connected, by any means, during the connection period, including the destination IP address, connection time and date, disconnection time and date, method of connection to the destination computer, the identities (account and screen names) and subscriber information, if known, for any person or entity to which such connection information relates, and all other information related to the connection from ISP or its subsidiaries.

        5.      Any other records and other evidence relating to the requested accounts.  Such records and other evidence include correspondence and other records of contact by any person or entity about the above-referenced account, the content and connection logs associated with or relating to postings, communications and any other activities to or through the requested account, whether such records or other evidence are in electronic or other form.

        If you have any questions regarding this request, please direct all inquiries to SA Karlous at (949) 279-4895, Assistant United States Attorney Julian André at (213) 894-6683, or me at (714) 338-3598.

Very truly yours,

BRETT A. SAGEL
Assistant United States Attorney

cc:    AUSA Julian André

       SA Remoun Karlous

**Exhibit 6**
**Page 3 of 3**

# EXHIBIT 7

| | |
|---|---|
| **From:** | Sagel, Brett (USACAC) |
| **To:** | John Reitman; Andre, Julian L. (USACAC) |
| **Cc:** | "Brian Weiss (bweiss@force10partners.com)"; Jack Reitman |
| **Subject:** | RE: Eagan Avenatti Computer Servers |
| **Date:** | Wednesday, April 3, 2019 10:21:42 AM |

Thank you (I've also included the correct email address for Julian Andre).

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Wednesday, April 3, 2019 10:09 AM
**To:** julian.l.andre@usdoj.com; Sagel, Brett (USACAC) <BSagel@usa.doj.gov>
**Cc:** 'Brian Weiss (bweiss@force10partners.com)' <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** Eagan Avenatti Computer Servers

Messrs. Andre and Sagel, as you know I am counsel for Brian Weiss the court appointed receiver for Eagan Avenatti, LLP.  I have talked to Mr. Weiss.  This will confirm that the IRS CI is authorized to image any and all Eagan Avenatti computer servers and hard drives currently in the possession of mixinIT.  If you need any further assistance, please contact me.

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com
Please consider the environment before printing.
This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.
Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Exhibit 7**
**Page 1 of 1**

# EXHIBIT 8

1 | Matthew S. DeArmey, SBN 199294
2 | Sandra Shapiro, SBN 299589
  | **THE LAW OFFICES OF MILO F. DE ARMEY**
3 | 950 West 17ᵗʰ Street, Suite A
  | Santa Ana, CA 92706
4 | Telephone: (714) 558-7744
  | Facsimile: (714) 558-0925
5 | Email: matt@dearmeylaw.com
6 |
  | Associate Attorneys for Respondent
7 | Lisa Storie-Avenatti

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

APR 04 2019

DAVID H. YAMASAKI, Clerk of the Court

BY: S. GUSTAFSON , DEPUTY

**THE SUPERIOR COURT OF CALIFORNIA**

**FOR THE COUNTY OF ORANGE**

MICHAEL AVENATTI,

    Petitioner,

v.

LISA STORIE-AVENATTI

    Respondent.

Case No.: 17D009930

~~[PROPOSED]~~ ORDER TO DELIVER SPECIFIC PROPERTY

*Assigned for all purposes to The Honorable Nathan Vu, Department L-67*

On April 23, 2018 and October 22, 2018, Respondent Lisa Storie-Avenatti, the judgment creditor in this matter, obtained orders in this court against Petitioner Michael Avenatti, the judgment debtor for the sum of $2,053,332, including principal, interest accrued as of January approximately
9, 2019, and costs incurred as of January 17, 2019. These orders are for child support, spousal support, and attorney's fees and costs made in the nature of support.

1

~~[PROPOSED]~~ ORDER TO DELIVER SPECIFIC PROPERTY

**Exhibit 8**
**Page 1 of 4**

Respondent
alleges that from the examination of Michael Avenatti that he, the judgment debtor, has an interest in the following property in his possession, custody, or under his control that is not exempt from enforcement of the money judgment:

1. 100% of the Eagan Avenatti, LLP partnership interest titled in the name of Michael Avenatti.

2. 100% of the shares in the corporation Avenatti & Associates, A Professional Corporation, California Corporation Number C2874165, which has a titled partnership interest in Eagan Avenatti, LLP.

3. 100% of the shares owned by Michael Avenatti in the company Seek Thermal, Inc, a Delaware corporation, registered in the State of California, SOS Number 3474177, formerly known as Tyrian Systems, Inc.

4. 100% of the funds due and owing to Michael Avenatti from The Fight PAC, FEC Committee ID # C00685966

5. 100% of the shares owned by Michael Avenatti in the company Desert Harvest, LLC, a Delaware LLC, registered in the State of California, SOS Number 201032010071.

6. Patek Phillipe Watch Model Number 5035, 18k White Gold, Movement Number 3.134.531, Case Number 4.208.344.

7. Patek Phillipe Watch Model Number 5270

8. Patek Phillip Watch Model Number 5055

9. All artwork in the name of Michael Avenatti in the possession of Orange County Fine Art Storage.

10. All artwork in the name Avenatti & Associates, A Professional Corporation in the possession of Orange County Fine Art Storage.

2

~~[PROPOSED]~~ ORDER TO DELIVER SPECIFIC PROPERTY

Exhibit 8
Page 2 of 4

11.   All artwork in the name Eagan Avenatti, LLP in the possession of Orange County Fine Art Storage.

12.   One hundred percent (100%) of the member interest in Passport 420, LLC, that is titled in the name of Avenatti & Associates, A Professional Corporation, California Corporation Number C2874165A,  which owns as its principal asset a 2016 Honda Jet, Model HA-420 serial number 42000029, FAA Registry number N227WP, titled in the name of Passport 420 LLC.

13.   Ownership of the Northwestern Mutual Life Insurance Policy #18441100.

IT IS HEREBY ORDERED that Michael Avenatti immediately deliver to the

Levying Officer, the property set forth above, which shall be applied toward the satisfaction of the judgment.

Dated:   APR 0 4 2019



HONORABLE NATHAN VU
Superior Court Judge

3

ORDER TO DELIVER SPECIFIC PROPERTY

**Exhibit 8**
**Page 3 of 4**

I hereby certify the foregoing instrument consisting of _3_ page(s) is a true and correct copy of the original on file in this court.

ATTEST (DATE) _August 2, 2019_
DAVID H. YAMASAKI, EXECUTIVE OFFICER AND CLERK OF THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

BY _Helene Gorritti_ , DEPUTY

HELENE GORRITTI

**Exhibit 8**
**Page 4 of 4**

**EXHIBIT 9**

**Fill in this information to identify the case:**

Debtor name    **Eagan Avenatti, LLP**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)    **8:17-bk-11961-CB**

☑ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|
| 2.   **Cash on hand** | | | **$0.00** |

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1.   **California Bank and Trust** | **Checking** | 2851 | **$112,000.00** |
| 3.2.   **California Bank and Trust** | **Money Market** | 7849 | **$100,000.00** |

4.    **Other cash equivalents** *(Identify all)*

5.    **Total of Part 1.**    **$212,000.00**
     Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.
☐ Yes Fill in the information below.

**Exhibit 9**
**Page 1 of 15**

| Debtor | **Eagan Avenatti, LLP** | Case number *(If known)* **8:17-bk-11961-CB** |
|---|---|---|
| | Name | |

---

| Part 4: | Investments |
|---|---|

**13. Does the debtor own any investments?**

☑ No. Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.
☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
☑ Yes Fill in the information below.

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 39. | **Office furniture**<br>Office furniture | **Unknown** | **N/A** | **$50,000.00** |
| 40. | **Office fixtures** | | | |
| 41. | **Office equipment, including all computer equipment and communication systems equipment and software**<br>Computer Equipment | **Unknown** | **N/A** | **$100,000.00** |
| 42. | **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collect bles | | | |
| | 42.1.  **Artwork** | **Unknown** | **N/A** | **$50,000.00** |

| 43. | **Total of Part 7.**<br>Add lines 39 through 42.  Copy the total to line 86. | **$200,000.00** |
|---|---|---|

**44. Is a depreciation schedule available for any of the property listed in Part 7?**
☑ No
☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**
☑ No
☐ Yes

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

**Exhibit 9**
**Page 2 of 15**

| Debtor | **Eagan Avenatti, LLP** | | Case number *(If known)* | **8:17-bk-11961-CB** |
|---|---|---|---|---|
| | Name | | | |

- [✓] No.  Go to Part 9.
- [ ] Yes Fill in the information below.

| Part 9: | **Real property** |
|---|---|

**54. Does the debtor own or lease any real property?**

- [✓] No.  Go to Part 10.
- [ ] Yes Fill in the information below.

| Part 10: | **Intangibles and intellectual property** |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

- [✓] No.  Go to Part 11.
- [ ] Yes Fill in the information below.

| Part 11: | **All other assets** |
|---|---|

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

- [ ] No.  Go to Part 12.
- [✓] Yes Fill in the information below.

|  |  | Current value of debtor's interest |
|---|---|---|

| 71. | **Notes receivable** Description (include name of obligor) | | | | |
|---|---|---|---|---|---|
| | **Promissory Note** | 100,000.00 - Total face amount | 100,000.00 doubtful or uncollectible amount | = | **$0.00** |

| 72. | **Tax refunds and unused net operating losses (NOLs)** Description (for example, federal, state, local) |
|---|---|

| 73. | **Interests in insurance policies or annuities** |
|---|---|

| 74. | **Causes of action against third parties (whether or not a lawsuit has been filed)** **Authentic Entertainment Properties v. Royal District Court, Clark County Nevada Case No. A-15-724305-B** | **Unknown** |
|---|---|---|
| | Nature of claim         **Lien for attorneys fees/costs** | |
| | Amount requested | |
| | **Birbrower v. Quorn USDC Case No. 2:16cv01346** | **Unknown** |
| | Nature of claim         **Lien for attorneys fees/costs** | |
| | Amount requested | |
| | **Broadstone/Billon v. Bath & Body USDC Case No. 8:15cv01994** | **Unknown** |
| | Nature of claim         **Lien for attorneys fees/costs** | |
| | Amount requested | |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

**Exhibit 9**
**Page 3 of 15**

| Debtor | **Eagan Avenatti, LLP** | | Case number *(If known)* **8:17-bk-11961-CB** |
|---|---|---|---|
| | Name | | |

**Broadstone v. Pacific Sunwear**
**LASC Case No. BC594799**                                                    Unknown

| Nature of claim | Lien for attorneys fees/costs |
|---|---|
| Amount requested | |

---

**Callaway v. Mercedes-Benz**
**USDC Case No. 8:14-cv-02011**                                              Unknown

| Nature of claim | Lien for attorneys fees/costs |
|---|---|
| Amount requested | |

---

**Chaffee v. Rohrback**
**Washington Superior Court**
**King County**
**Case No. 15-2-30551-4**                                                    Unknown

| Nature of claim | Lien for attorneys fees/costs |
|---|---|
| Amount requested | |

---

**Deehan v. Gap**
**OCSC Case No. 30-2015-00807155-CU-OE-CXC**                                  Unknown

| Nature of claim | Lien for attorneys fees/costs |
|---|---|
| Amount requested | |

---

**Eldard v. Hewlett Packard**
**OCSC Case No. 30-2012-00537897-CU-BT-CXC**                                  Unknown

| Nature of claim | Lien for attorneys fees/costs |
|---|---|
| Amount requested | |

---

**Jimenez (Dylan) (Wage & Hour)**                                            Unknown

| Nature of claim | Lien for attorneys fees/costs |
|---|---|
| Amount requested | |

---

**Lagunas/Mendoza/Jung v. Abercrombie**
**USDC Case 8:16cv00199**                                                     Unknown

| Nature of claim | Lien for attorneys fees/costs |
|---|---|
| Amount requested | |

---

**Rasheed v. Gap (Banana Republic)**                                         Unknown

| Nature of claim | Lien for attorneys fees/costs |
|---|---|
| Amount requested | |

---

**Robinson v. BCBG, LASC**
**Case No. BC597311**                                                        Unknown

| Nature of claim | Lien for attorneys fees/costs |
|---|---|
| Amount requested | |

---

**Shine v. Williams Sonoma**
**LASC Case No. BC598805**                                                   Unknown

| Nature of claim | Lien for attorneys fees/costs |
|---|---|
| Amount requested | |

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                     Best Case Bankruptcy

**Exhibit 9**
**Page 4 of 15**

| Debtor | **Eagan Avenatti, LLP** | Case number *(If known)* | **8:17-bk-11961-CB** |
|---|---|---|---|
| | Name | | |

**Spound v. RFF**
**LASC Case No. SC122054**                                                                                       **Unknown**

| Nature of claim | **Lien for attorneys fees/costs** |
|---|---|
| Amount requested | |

**Ward v. Tilly's**
**LASC Case No. BC595405**                                                                                       **Unknown**

| Nature of claim | **Lien for attorneys fees/costs** |
|---|---|
| Amount requested | |

**Weaver v. Southern California Edison**
**LASC BC617186**                                                                                                    **Unknown**

| Nature of claim | **Lien for attorneys fees/costs** |
|---|---|
| Amount requested | |

**Johannes "Hannes" Kuhn/Solar Millennium AG adv.**
**Skadden Arps**                                                                                                      **Unknown**

| Nature of claim | **Lien for attorneys fees/costs** |
|---|---|
| Amount requested | |

**Scott H. Sims**                                                                                                    **>$1,000,000**

| Nature of claim | **Breach of Fiduciary Duty, Fraud Theft** |
|---|---|
| Amount requested | |

**Jason M. Frank**                                                                                                   **>$5,000,000**

| Nature of claim | **Breach of Fiduciary Duty, Fraud Theft** |
|---|---|
| Amount requested | |

**Eagan Avenatti v. Paul Root and Madison Street**
**Partners, Inc.**
**OCSC Case No. 30-2016-00893847**                                                                       **Unknown**

| Nature of claim | **Aiding and Abetting; Breach of Duty of Loyalty; Aiding and Abetting Fraud** |
|---|---|
| Amount requested | |

**Eagan Avenatti v. William Scott Callaway**
**OCSC Case No. 30-2016-00892564**                                                                       **Unknown**

| Nature of claim | **Breach of Contract; Declaratory Relief** |
|---|---|
| Amount requested | |

**Eagan Avenatti v. Kimberly Birbrower**
**JAMS Ref No. 1200052061**                                                                                 **Unknown**

| Nature of claim | **Breach of Contract; Declaratory Relief** |
|---|---|
| Amount requested | |

75.    **Other contingent and unliquidated claims or causes of action of**
**every nature, including counterclaims of the debtor and rights to**

| Debtor | **Eagan Avenatti, LLP** | Case number *(If known)* | **8:17-bk-11961-CB** |
|---|---|---|---|
| | Name | | |

**set off claims**
**Various contingency fee contracts with clients, as set forth in Exhibit B.75, attached hereto**                                      $0.00

Nature of claim

Amount requested                                    $0.00

---

76.      **Trusts, equitable or future interests in property**

77.      **Other property of any kind not already listed** *Examples:* Season tickets, country club membership
         **The Debtor estimates that it will receive approximately $45,000,000 of fees and costs over time that are due from the contingency cases listed collectively in lines 74 and 75 above (for 75 in Exhibit B-75 which is attached hereto].  The Debtor's estimate of the fees and costs from the cases listed in line 74, however, are hampered by the refusal of Jason Frank to provide accurate and timely access to settlement information relating to the cases listed in line 74, which he took from the Debtor prior to the entry of the order for relief in this chapter 11 case.**                          $45,000,000.00

---

78.      **Total of Part 11.**                                         **>$51,000,000.00**
         Add lines 71 through 77. Copy the total to line 90.

79.      **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
         ☑ No
         ☐ Yes

---

Official Form 206A/B                    Schedule A/B Assets - Real and Personal Property                    page 6

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

**Exhibit 9**
**Page 6 of 15**

| Debtor | **Eagan Avenatti, LLP** | | Case number *(If known)* | **8:17-bk-11961-CB** |
|---|---|---|---|---|
| | Name | | | |

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $212,000.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $200,000.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*.........................................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + >$51,000,000.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | >$51,412,000.00 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | >$51,412,000.00 |

**Exhibit 9**
**Page 7 of 15**

# EXHIBIT B-75

Exhibit 9
Page 8 of 15

## COURT CASES

| CASE NAME | COURT | CASE NO. | NOTES (including whether a settlement has been approved by the Court) |
|---|---|---|---|
| 1 Alvarez v. Campbell/ City of Los Angeles | LASC - Santa Monica | BC537145 | Trial 9/25/17 - Likely Delayed Due to Appeal |
| 2 Bahamas Surgery Center v. Kimberly-Clark Corporation | USDC - Central California | 14-CV-08390 DMG | $454 Million Verdict - Post Trial Motions Pending |
| 3 Biloxi Freezing v. Mississippi Power Company | Circuit Court Harrison County Mississippi | A2401-16-77 | Motion to Dismiss Pending - Case Stayed Pending Ruling |
| 4 Burton v. Carrey | LASC | BC634315 | Trial 4/26/18 |
| 5 Croxton v. Myla | OCSC | 30-2017-00907481 | Filed 3/8/17 |
| 6 Engel v. Marina Del Rey Hospital | LASC | BC638697 | Trial 4/27/18 |
| 7 Greco v. NFL | USDC - Northern Texas | 3:13-CV-1005-M | Filed 2/5/13 |
| 8 Hansen v. Goodman | LASC | BC637521 | Trial 4/18/18 |
| 9 Heritage v. DFG Group, LLC | Florida Fourth District Court of Appeal | 4D16-2972 | Underlying Case Circuit Court Palm Beach County Florida, Case No. 2005 CA 00709 - Appellant's Reply Brief Due 6/12/17 |
| 10 Herrick v. National Football League | USDC - Northern Ohio | 5:17-cv-472 | Discovery Pending - Class Certification Hearing 11/6/17 |

**Exhibit 9**
**Page 9 of 15**

| 11 | Kirschner v. Service Corporation | LASC | BC491632 | Remanded after Appeal - Awaiting Status Conference Date |
|----|--|--|--|--|
| 12 | Knaggs v. Yahoo | USDC - Northern California | 15-mc-80281 | Discovery Dispute |
| 13 | Koss v. Park Bank | Wisconsin Court of Appeals | 2016AP636 | Underlying Case Wisconsin Circuit Court Milwaukee County, Case No. 10-CV-21290 - Appellant's Reply Brief Due 7/7/17 |
| 14 | Loftin v. QA Investments | Superior Court of Wake County North Carolina | 03-CVS-16882 | Motion for Summary Judgment Pending - Filed 5/4/17 |
| 15 | Medline v. Kimberly-Clark | USDC - Northern Georgia | 1:17-cv-02032 | Case Transferred from CA to GA 6/5/17 - Motion to Dismiss Pending Prior to Transfer |
| 16 | Meridian v. Kooshian | USCA Ninth Circuit | 15-35465 | Underlying case USDC Western Washington, Case No. 2:12-cv-01594 - Mandate Issued 6/8/17 |
| 17 | Naeyaert v. Kimberly-Clark | USDC Central California | 5:17-cv-00950 | Removed to USDC 5/15/17 Motion to Dismiss Pending |
| 18 | Parrish v. Latham Watkins | Supreme Court of California | S228277 | Oral Argument Before Supreme Court 6/6/17 |
| 19 | Racine v. Selekt Media | LASC | BC693922 | Trial 3/18/18 |
| 20 | Saud v. Saxton | LASC | BC476972 | Awaiting Trial Date After Appeal |
| 21 | Shahinian v. Kimberly-Clark (Qui Tam) | USDC - Central California | 2:14-cv-08313 JAK | Motion to Dismiss Taken Under Submission 6/5/17 |

**Exhibit 9**
**Page 10 of 15**

| 22 | Silva v. Minsky (Children's Dental Group Cases) | LASC | BS167372 | Multiple Cases LASC/OCSC - Coordination Hearing 7/21/17 in OCSC Complex |
| 23 | Sweetman v. Carrey | LASC | BC636760 | Trial 4/26/18 |

**Exhibit 9**
**Page 11 of 15**

## GENERAL NOTES TO SCHEDULES OF ASSETS AND LIABILITIES

Eagan Avenatti, LLP, as debtor and debtor in possession (the "Debtor") submits its amended and restated Schedules of Assets and Liabilities (the "Schedules") pursuant to 11 U.S.C. § 521(a)(1)(B)(i), Federal Rule of Bankruptcy Procedure 1007(b)(1)(A) and Local Bankruptcy Rule 1007-1(c).

The Schedules have been prepared by the Debtor's management and are unaudited. While management of the Debtor has endeavored to ensure that the Schedules are accurate and complete based on information that was available at the time of preparation, the subsequent receipt of information may result in material changes (both positive and negative) in data contained in the Schedules, which would warrant further amendment of same. Additionally, while the Debtor has endeavored to file complete and accurate Schedules, inadvertent errors or omissions may exist. Accordingly, the Debtor reserves the right to further amend its Schedules as necessary or appropriate and expects it will do so as information becomes available or corrections are found to be needed.

Some of the asset and liability data contained in the Schedules are reflected at unimpaired net book value as of March 10, 2017, the date the order for relief ("Order for Relief") was entered in this chapter 11 case (the "Order for Relief Date"). Actual fair market value may differ materially from unimpaired book value. The Debtor is still investigating the fair market value of its assets. Any fair market value listed is based on a good faith estimate. Where unimpaired book value is stated, the fair market value should be considered unknown.

The Debtor has endeavored to allocate liabilities between the pre-Order for Relief and post-Order for Relief periods. Additional information may become available that would cause the allocation of liabilities between these periods to change. If this occurs, the Debtor will make appropriate further amendments to the Schedules.

Any failure to designate a claim listed on the Debtor's Schedules as "disputed," "contingent" or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent" or "unliquidated." The Debtor reserves the right to subsequently designate any claim as "disputed," "contingent" or "unliquidated", regardless of its designation or lack of designation on the Debtor's Schedules. The Debtor further reserves the rights to dispute, object to, assert counterclaims, rights of setoff, rights of recoupment, or defenses to, subordinate, avoid, and/or obtain reclassification of any claim or any interest in property securing such claim.

All claims listed in the Schedules in "unknown" amounts are unliquidated claims. The dollar amounts of claims listed may be exclusive of contingent and unliquidated amounts.

The claims of creditors for, among other things, merchandise, goods, services, or taxes may be listed at the lower of the amounts invoiced by such creditor, set forth in a proof of claim, or the amounts entered on the Debtor's books and records, and may not reflect credits or allowances due from such creditors to the Debtor. The Debtor reserves all of its rights with respect to any such credits and allowances.

The claims that are listed on Schedules D and E/F may not reflect the application of any payments made in respect of such claims following the Order for Relief Date pursuant to the Court's orders.

## GENERAL NOTES REGARDING SCHEDULE B

Unless otherwise indicated, the value of each receivable listed in Schedule B is the amount of each receivable on the Debtor's books and records. The current fair market value of each such receivable could be significantly less than the amount stated (because, for instance, the receivable is not collectible or only collectible in part), and such value should be considered unknown.

The Debtor's leases are listed on Schedule G, and are incorporated by reference into Schedule B.

## GENERAL NOTES REGARDING SCHEDULE D

The Debtor reserves the right to dispute or challenge the validity of any lien purported to be granted and/or perfected by a secured creditor listed on Schedule D.  Moreover, although the Debtor has scheduled claims of creditors as secured claims, no current valuation of the Debtor's assets in which such creditors may have a lien has been undertaken.  The Debtor reserves the right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D.  Moreover, although the Debtor has scheduled claims of various creditors as secured claims, the Debtor reserves all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction, or any document or instruction related to such creditor's claim.

Certain of the Debtor's agreements listed on Schedule G may be in the nature of sales agreements or secured financings.  Certain creditors might assert that their claims are secured due to a right of reclamation.  Schedule D does not include claims regarding reclamation.  No attempt has been made to identify such agreements for purposes of including them on this Schedule D, or any of the other Schedules.

The Debtor's failure to designate a claim on this Schedule D as "contingent," "unliquidated" or "disputed" does not constitute an admission by the Debtor that such claim is not contingent, unliquidated, or disputed, and the Debtor reserves the right to dispute, or to assert offsets or defenses to, any claims reflected on this Schedule D as to amount, liability, classification or otherwise (including, without limitation, under sections 505 and/or 506 of Title 11 of the United States Code (the "Bankruptcy Code") and to subsequently designate any such claim as disputed, contingent or unliquidated regardless of its designation or lack of designation on the Debtor's Schedules.

The claims listed on Schedule D are subject to further review, reconciliation and amendment by the Debtor.  The descriptions provided are not intended to be finite, but instead only to be a summary.  Reference to any applicable credit agreements, statutes, tax liens and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.  Nothing herein shall be deemed a modification or interpretation of the terms of any such agreements.

## GENERAL NOTES REGARDING SCHEDULE E

The claims listed on Schedule E do not include any administrative priority claims arising under section 503(b)(9) of the Bankruptcy Code, and any claims that might be section 503(b)(9) administrative expense priority claims are listed, without identification of such claims as administrative priority claims, identified on Schedule F.

The claims listed on Schedule E are subject to further review, reconciliation and amendment by the Debtor.  Among other things, the Debtor's characterization of the taxing authority claims listed in Schedule E as priority claims is preliminary in nature and the Debtor reserves its rights to amend Schedule E, and/or dispute and challenge whether, and to whatever

extent (if any), such claims are entitled to priority and/or seek a determination of tax liability under section 505 of the Bankruptcy Code.

## GENERAL NOTES REGARDING SCHEDULE F

The amounts stated in Schedule F for the claims of any parties to contracts with the Debtor do not include any claims for breach of contract or other damages; the stated amount is the amount of the account payable owing to the contract party as of the Order for Relief Date in the Debtor's books and records.

For certain trade vendor claims, all or a portion of the claim amounts listed on Schedule F might be an administrative expense priority claim in accordance with section 503(b)(9) of the Bankruptcy Code.

The claims listed in Schedule F arose or were incurred on various dates. A determination of each date upon which each claim in Schedule F was incurred or arose may be costly and unduly burdensome and no incurrence date is shown where the cost or burden would be significant.

The claims listed on Schedule F are subject to further review, reconciliation and amendment by the Debtor.

## GENERAL NOTES REGARDING SCHEDULE G

While effort has been made to ensure the accuracy of the Schedule of Executory Contracts and Unexpired Leases, inadvertent errors or omissions may have occurred. The Debtor does not make, and specifically disclaims, any representation or warranty as to the completeness or accuracy of the information set forth herein, or the validity or enforceability of any such contracts, agreements, leases or documents listed herein. The Debtor hereby reserves the right to dispute the validity, status, characterization or enforceability of any such contracts, agreements or leases set forth herein, and to amend or supplement this Schedule.

Certain of the contracts, agreements and leases listed on Schedule G may have expired or been modified, amended or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments and agreements which may not be listed herein. Certain of the real property leases listed on this Schedule G may contain renewal options, guarantees of payment, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth on this Schedule G. Certain of the executory agreements may not have been memorialized and could be subject to dispute. Schedule G does not include all equipment and other purchase orders.

Certain of the agreements listed on Schedule G may be in the nature of sales agreements or secured financings. The Debtor reserves all of its rights to dispute or challenge the characterization of any agreements reflected in Schedule G, or any document or instrument related to a creditor's claim.

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | Eagan Avenatti, LLP |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | 8:17-bk-11961-CB |

☑ Check if this is an
amended filing

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors  12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐  *Schedule H: Codebtors* (Official Form 206H)
☐  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
—   Amended *Schedule*
☐  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
—   Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   July 11, 2017         X 
                                    Signature of individual signing on behalf of debtor

                                    Michael J. Avenatti
                                    Printed Name

                                    Managing Partner
                                    Position or relationship to debtor

**EXHIBIT 10**

```
 1                    OFFICE OF THE UNITED STATES TRUSTEE

 2                          SANTA ANA DIVISION

 3

 4  In Re:                        )  Case No. 8:17-bk-11961-CB
                                  )
 5  EAGAN AVENATTI, LLP,          )  Chapter 11
                                  )
 6          Debtor.               )
                                  )
 7

 8                            341(a) MEETING

 9                    MICHAEL HAUSER, Presiding

10                            --oOo--

11                          June 12, 2017

12                      411 West Fourth Street
                             Suite 7160
13                    Santa Ana, California 92701

14  APPEARANCES:

15  For the Debtor:              IRA D. KHARASCH, ESQ.
                                 ROBERT M. SAUNDERS, ESQ.
16                               Pachulski, Stang, Ziehl &
                                    Jones, LLP
17                               10100 Santa Monica Boulevard
                                 13th Floor
18                               Los Angeles, California 90067
                                 (310) 277-6910
19

20  For the United States        MICHAEL HAUSER, ESQ.
      Trustee:                   411 West Fourth Street
21                               Suite 7160
                                 Santa Ana, California 92701
22                               (714) 338-3417

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

```
                                                                      ii

 1  APPEARANCES:  (cont'd.)

 2  For the United States and        NAJAH J. SHARIFF, ESQ.
      Its Agency, the Internal       United States Attorney's
 3    Revenue Service:                 Office
                                     300 North Los Angeles Street
 4                                   Suite 7211
                                     Los Angeles, California 90012
 5                                   (213) 894-2534

 6  For Jason Frank Law and          SARA L. CHENETZ, ESQ.
      Scott Sims:                    Perkins Coie, LLP
 7                                   1888 Century Park East
                                     Suite 1700
 8                                   Los Angeles, California 90067
                                     (310) 788-3218
 9

10  For Stoll, Nussbaum and          THOMAS POLAS, ESQ.
      Polakov:
11

12  Transcriber:                     Briggs Reporting Company, Inc.
                                     4455 Morena Boulevard
13                                   Suite 104
                                     San Diego, California 92117
14                                   (310) 410-4151

15

16

17

18

19

20

21

22

23

24

25
```

*Briggs Reporting Company, Inc.*

**Exhibit 10**
**Page 2 of 13**

iii

<u>I N D E X</u>

<u>WITNESSES:</u>                                              <u>EXAMINATION</u>

MICHAEL JOHN AVENATTI                                        2
                                                          116
                                                          172

*Briggs Reporting Company, Inc.*

**Exhibit 10**
**Page 3 of 13**

1

1   SANTA ANA, CALIFORNIA  MONDAY, JUNE 12, 2017 10:00 AM

2   ————————————————————--oOo--

3          TRUSTEE HAUSER:  Good morning.  My name is Michael

4   Hauser.  I'm an attorney with the U.S. Trustee's Office.

5   Today's date is March -- I'm sorry.  Today's date is June

6   12, 2017.  It's approximately 10:00 o'clock in the morning.

7   This is the 341(a) of creditors in the Chapter 11 case of

8   Eagan Avenatti, LLP, case number 8:17-11961-CB.

9          Counsel for the Debtor, could you please make your

10  appearance for the record?

11         MR. KHARASCH:  Ira Kharasch and Rob Saunders of

12  Pachulski Stang, on behalf of the Debtor.

13         TRUSTEE HAUSER:  Okay.  And counsel for the United

14  States, could you please make your appearance on the record?

15         MS. SHARIFF:  Yes.  Najah Shariff, Assistant

16  United States Attorney, for the United States, on behalf of

17  its agency, the Internal Revenue Service.

18         TRUSTEE HAUSER:  Okay.  If there are any other

19  parties that want to make their appearance?  You can either

20  make it now, or after I finish my question, you can come up,

21  you can make -- you can come up to the table here and make

22  your appearance at that time.  So I'll leave that up to you.

23         Okay.  Hearing nothing, we will administer the

24  oath.

25         Mr. Avenatti, could you please raise your right

2

1  hand.

2       MICHAEL JOHN AVENATTI - FOR THE DEBTOR - SWORN

3           THE WITNESS:  Yes.

4           TRUSTEE HAUSER:  Okay.  Could you please state

5  your name for the record and spell it?

6           THE WITNESS:  Michael John Avenatti, A-V-E-N-A-T-

7  T-I.

8           TRUSTEE HAUSER:  Okay.

9                          EXAMINATION

10  BY TRUSTEE HAUSER:

11  Q    And, Mr. Avenatti, you are the managing partner of the

12  Debtor, is that correct?

13  A    Yes.

14  Q    Okay.  And how long have you held that position?

15  A    Nearly 10 years.

16  Q    Okay.  And did you sign the statement of financial

17  affairs, which is docket item number 50 from the Florida

18  docket, and the amended schedules, which are docket items

19  number 104 through 108 on the Santa Ana docket?

20  A    Yes, sir.

21  Q    Okay.  You signed them under penalty of perjury, is

22  that correct?

23  A    Yes, sir.

24  Q    Okay.  And prior to signing them, did you review those

25  documents carefully?

28

1  of dollars in fees in those cases, and we have no idea,

2  generally, what -- we have very little idea as to what's

3  happened in those cases.

4  Q    Sure.

5  A    And, even though we're provided notice of our lien

6  rights in connection with these cases, that doesn't mean

7  those lien rights have been respected.

8  Q    Right.

9  A    It doesn't mean that those lien rights have been

10  respected by subsequent counsel.  In fact, there's reason to

11  believe that they've been absolutely not respected by

12  subsequent counsel.  And it doesn't mean that the defendant

13  in those cases have adhered to their ethical obligations in

14  connection with their obligations in those cases.

15  Q    Okay.  So you're the fiduciary of this estate.  And so

16  it's your position as a fiduciary of this estate, who's

17  trying to collect fees and costs from these 17 lawsuits,

18  that you don't believe that the subsequent law firm who's

19  taken the 17 cases is adhering to their ethical obligations

20  to provide you with information, generally speaking?

21  A    "Generally speaking," that's true.  I'll give you an

22  example, a very simple example.  There is a large class

23  action case that our law firm was predominantly handling.

24  Two other law firms were involved, but we did 90-percent of

25  the work through May of 2016.  This is the Callaway v.

29

1 <u>Mercedes Benz</u> case.

2 Q    Okay.  And I've actually reviewed the dockets on the --

3 that --

4 A    So, if you've reviewed the docket, you know the

5 following.  There was a deadline to file a class cert motion

6 in that case, as I recall, in late May of 2016 or early

7 June.  That deadline was met.  The hearing on the -- and

8 there was a trial set in that case, as I recall, for

9 December of 2016.  Following the filing of that motion for

10 class cert --

11 Q    This is a May of 2016, the class cert motion?

12 A    Yes.

13 Q    Okay.

14 A    May or June.

15 Q    Okay.  Now, at this point, this is kind of the timing

16 when, exactly when the three attorneys were leaving the firm

17 or being terminated?

18 A    Were terminated from the firm.

19 Q    Okay.

20 A    They were terminated about, as I recall, 10 days before

21 the class cert motion was due.  They were already working on

22 the class cert motion well before their termination date.

23 Q    Okay.  So they were assigned to do the class cert

24 motion?

25 A    They were working on the class cert motion.

30

```
1  Q    Yeah.  That's what I'm saying.

2  A    Yes.

3  Q    That that was their responsibility.

4  A    And our firm had expended significant amounts of

5  resources in connection with that case in the form of not

6  only costs, but, more importantly, overhead, secretarial

7  help, and we are paying the salaries of the attorneys that

8  are working on that matter.

9        And the firm has a contractual agreement with the

10 client in that case, the firm, not the individual attorneys

11 working on that case.  Just like in the instance of other

12 cases in our firm, it's the firm on one side of the

13 contract, not an individual attorney, and the client on the

14 other side of the case.

15       So, the case cert motion's filed.  There's a trial date

16 in the case.  The class cert motion hearing date is

17 voluntarily continued, I believe, five times by counsel for

18 the plaintiffs.  Now --

19 Q    Were you aware of that?

20 A    We were aware of the -- of it after the fact --

21 Q    Right.

22 A    -- just by reviewing the docket.

23 Q    Right.  Right.

24 A    Well, when you are a plaintiff's class action attorney,

25 you want your class cert motion heard sooner rather than
```

**Exhibit 10**
**Page 8 of 13**

31

1  later.  Because if you're successful, there's significant

2  additional value that is brought to bear in the case, and

3  it's a way to put pressure on the defendant to settle the

4  case or to face trial.  So --

5  Q   Do you think these attorneys purposely delayed filing

6  the class cert motion, knowing that they were going to set

7  up a new law firm and then take advantage of doing the class

8  certification themselves?

9  A    No.  The delay in the hearing on the class cert motion

10 took place after they had been terminated.  But here's my

11 point.  The class cert motion is filed.  The hearing on that

12 motion is continued, I believe, five times.  Then, lo and

13 behold, the class cert motion is withdrawn, withdrawn

14 voluntarily by the plaintiffs.  The deadline to file the

15 class cert motion has now passed.

16     You would not withdraw a class cert motion in a case

17 like that unless there had been a settlement in the case.

18 There's no reason to.  It makes no sense.  You would never

19 do that.

20     And so, my belief is that there is a settlement in this

21 case, but no one will tell us what the settlement is.

22 Furthermore, there's been no activity in that case in eight

23 months --

24 Q    Okay.

25 A    -- which is unheard of in a --

88

1  A    I think that's where it was filed.

2  Q    And that Nevada JAMS matter specifically deals with the

3  authentic -- whatever the name of it, matter is, just on

4  that one matter?

5  A    Yes.

6  Q    Okay.  And then the other 16 lawsuits are, have come

7  under the Frank JAMS arbitration, for lack of a better --

8  A    Well, again, we don't believe that that is appropriate,

9  but Mr. Frank has purported to try to get the arbitration in

10 his arbitration to make a sweeping ruling eradicating our

11 fee rights in those -- in all of the cases.

12 Q    No, I understand.  So there -- the Frank Sims position

13 is that the -- essentially has cut off the estate's,

14 bankruptcy estate's right to assert its lien rights in these

15 various different causes of action by putting it under the

16 umbrella of the arbitration?

17 A    That's what they've purported to do.

18 Q    Have you appealed that ruling?

19 A    No.  The arbitration is stayed, and it was stayed by

20 operation of the bankruptcy.

21 Q    Is that ruling appealable by the JAMS panel?

22 A    Ultimately, it would be appealable, but the likelihood

23 of success on appeal under California law would be slim to

24 none.

25 Q    No, I understand.

89

1  A     Yeah.

2  Q     I mean, in certain matters when you appeal them, it's

3  -- so, this ruling in the context of the appeal has really

4  taken away the bankruptcy estate's right to go into each

5  court and assert its rights, whether it's in federal court

6  or -- I mean, you couldn't even sue on the state court then,

7  right?

8  A     Well, no.  Our position is, we could sue in state court

9  because -- this is the fundamental disagreement, and this is

10 important, okay.  These are not Mr. Frank's cases.  These

11 were cases where on one side of the contract you have Eagan

12 Avenatti, and on the other side of the contract you have the

13 client.  The fee agreements were not with Mr. Frank

14 individually, period.

15      Now, he may have a subsequent fee agreement relating to

16 those cases with him individually, although my guess is that

17 it's with his new law firm.  Okay.  He may have originated

18 the case, but that's completely separate and apart from the

19 contractual rights to the fees from those cases.

20      And so, for instance, in the Nevada case --

21 Q     Right.

22 A     -- the firm has a significant, multi-million-dollar

23 interest now that that case has settled.  I don't have all

24 the terms of the settlement.  I don't know the monetary

25 compensation associated with it, I don't know what the

90

1  status of the development is, I don't know anything.

2      And here's the other thing I don't know.  I don't know

3  whether Mr. Frank and the other lawyers have been paid from

4  the settlement in contravention of our lien rights.  Same

5  thing in Callaway.  Now they shouldn't have, in my view, but

6  I don't know.

7  Q    But let's just stick with the Nevada lawsuit.  We had

8  discussed earlier that in order to enforce your rights

9  you've had to bring two lawsuits in state court.  One would

10 be actually suing the plaintiff, correct?  Is that right?

11 A    In California.

12 Q    Yeah.

13 A    Under California law.

14 Q    And then you would have to sue, I'd call it either a

15 secondary or tertiary lawsuit against the actual other

16 attorneys, correct?

17 A    Yes.

18 Q    If, in fact, you actually learned that the Nevada

19 lawsuit has settled, let's just skip over the step of how

20 you'd figure that out --

21 A    It has settled.  We've been informed by Mr. Frank that

22 it is settled.

23 Q    Okay.  What are your -- what is the estate's rights as

24 far as being able to go after and enforce its lien and get

25 its allocation of the fees, as you understand it?

194

1  it's -- but can you bear with me for 30 seconds?

2      (Pause.)

3          MR. KHARASCH:  And, Sara, I told her -- we're

4  really at the 30 minutes.  He's got to, he's got to go.

5          MS. CHENETZ:  All right.  We'll pick it up another

6  time then.

7          TRUSTEE HAUSER:  All right.  So the proposed date

8  for the continued meeting is July 14th at 10:00 o'clock.  Is

9  there any reason why anyone can't make it on that day?

10 Okay.

11         So there's not going to be any further notice,

12 written notice given.  So it's going to be continued to July

13 14th at 10:00 o'clock right here.  And this will continue

14 the meeting of creditors to that date.  Thank you very much.

15     (Proceedings concluded.)

16

17         I certify that the foregoing is a correct

18 transcript from the electronic sound recording of the

19 proceedings in the above-entitled matter.

20 /s/ Holly Martens          1-22-19
   Transcriber                Date

21

22

23

24

25

# EXHIBIT 11

1                    OFFICE OF THE UNITED STATES TRUSTEE

2                          SANTA ANA DIVISION

3

4  In Re:                         )  Case No. 8:17-bk-11961-CB
                                  )
5  EAGAN AVENATTI, LLP,           )  Chapter 11
                                  )
6           Debtor.               )
                                  )
7

8                           341(a) MEETING

9                    MICHAEL HAUSER, Presiding

10                          --oOo--

11                        July 14, 2017

12                   411 West Fourth Street
                          Suite 7160
13              Santa Ana, California 92701

14 APPEARANCES:

15 For the Debtor:              IRA D. KHARASCH, ESQ.
                                ROBERT M. SAUNDERS, ESQ.
16                              Pachulski, Stang, Ziehl &
                                   Jones, LLP
17                              10100 Santa Monica Boulevard
                                13th Floor
18                              Los Angeles, California 90067
                                (310) 277-6910
19

20 For the United States        MICHAEL HAUSER, ESQ.
     Trustee:                   411 West Fourth Street
21                              Suite 7160
                                Santa Ana, California 92701
22                              (714) 338-3417

23

24

25 Proceedings recorded by electronic sound recording;
   transcript produced by transcription service.

*Briggs Reporting Company, Inc.*

**Exhibit 11**
**Page 1 of 11**

ii

```
 1 | APPEARANCES:  (cont'd.)

 2 | For the United States and         NAJAH J. SHARIFF, ESQ.
   |   Its Agency, the Internal        United States Attorney's
 3 |   Revenue Service:                  Office
   |                                    300 North Los Angeles Street
 4 |                                    Suite 7211
   |                                    Los Angeles, California 90012
 5 |                                    (213) 894-2534

 6 | For Michael John Avenatti         MARK S. HOROUPIAN, ESQ.
   |   And Avenatti & Associates:      SulmeyerKupetz
 7 |                                    333 South Grand Avenue
   |                                    Suite 3400
 8 |                                    Los Angeles, California 90071
   |                                    (213) 626-2311
 9 |

10 | For Jason Frank and Jason         JASON M. FRANK, ESQ.
   |   Frank Law, PLC:                 Frank, Sims, Stolper, LLP
11 |                                    19800 Macarthur Boulevard
   |                                    Suite 855
12 |                                    Irvine, California 92612
   |                                    (949) 201-2400
13 |

14 | For Jason Frank Law and           SARA L. CHENETZ, ESQ.
   |   Scott Sims:                     Perkins Coie, LLP
15 |                                    1888 Century Park East
   |                                    Suite 1700
16 |                                    Los Angeles, California 90067
   |                                    (310) 788-3218
17 |

18 | For Stoll, Nussbaum and           TOM POLAS, ESQ.
   |   Polakov:
19 |

20 | Transcriber:                      Briggs Reporting Company, Inc.
   |                                    4455 Morena Boulevard
21 |                                    Suite 104
   |                                    San Diego, California 92117
22 |                                    (310) 410-4151

23 |

24 |

25 |
```

*Briggs Reporting Company, Inc.*

**Exhibit 11**
**Page 2 of 11**

iii

1                             I N D E X

2    WITNESSES:                                    EXAMINATION

3    MICHAEL JOHN AVENATTI                              3
                                                       41
4                                                      48
                                                      121
5                                                     133

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Briggs Reporting Company, Inc.*

**Exhibit 11**
**Page 3 of 11**

1

1   SANTA ANA, CALIFORNIA  MONDAY, JULY 14, 2017 10:30 AM

2 _____--oOo--

3          TRUSTEE HAUSER:  Good morning.  My name is Michael

4   Hauser.  I'm an attorney with the U.S. Trustee's Office.

5   Today is July 14th, 2017.  It's approximately 10:30 in the

6   morning.  This is the continued 341(a) meeting of creditors

7   in the case of Eagan Avenatti, LLP, case number 8:17-11961-

8   CB.

9          Okay.  Counsel for the Debtor, could you please

10  make your appearance for the record?

11          MR. KHARASCH:  Ira Kharasch and Rob Saunders of

12  Pachulski Stang, for the Debtor.  And just one clarification

13  point.

14          TRUSTEE HAUSER:  Could you speak up, because I'm

15  barely getting you.

16          MR. KHARASCH:  Okay.  Ira Kharasch and Rob

17  Saunders of Pachulski Stang, for the Debtor.

18          TRUSTEE HAUSER:  Okay.

19          MR. KHARASCH:  And just a point of clarification,

20  Michael, that the official recording, your transcript of

21  this, will be the recording of the U.S. Trustee Office, not

22  the court reporter?

23          TRUSTEE HAUSER:  Correct.  I mean, it's clear that

24  our office under Section 343 -- or 341 presides over the

25  meeting.  We're required to record it, in this case,

2

1  digitally record it.  We then convert it to a CD.  It's kept

2  under lock and key for five years.  So, yes, we are the

3  official recorder.

4          And just for the records, to my left is a court

5  reporter.  The court reporter is here at the request of Ms.

6  Chenetz, who represents Mr. Frank and Mr. Sims and their

7  entities.

8          This is not the first time we've had a court

9  reporter at a 341 meeting.  I'm sure it won't be the last.

10 So if you want to make any further clarification, go ahead.

11          MR. KHARASCH:  That's it.

12          TRUSTEE HAUSER:  Okay.  Ms. Shariff, did you want

13 to make your appearance for the record?

14          MS. SHARIFF:  Yes.  Good morning.  Najah Shariff,

15 Assistant United States Attorney for the United States, on

16 behalf of its agency, the Internal Revenue Service.

17          TRUSTEE HAUSER:  Okay.  Are there any other

18 parties that want to make their appearance another time, or

19 they'll make it when they ask their questions?  Okay.  So,

20 there's other parties here but they'll come forward.  Okay.

21          Mr. Avenatti, could you please raise your right

22 hand?

23      MICHAEL JOHN AVENATTI - DEBTOR'S WITNESS - SWORN

24          THE WITNESS:  Yes, sir.

25          TRUSTEE HAUSER:  Okay.  Thank you.

*Briggs Reporting Company, Inc.*

**Exhibit 11**
**Page 5 of 11**

32

1        MS. SHARIFF:  Did I -- I'm sorry, what?

2        TRUSTEE HAUSER:  You had indicated you wanted to

3   discuss --

4        MS. SHARIFF:  Right.  So --

5        TRUSTEE HAUSER:  Why don't you state your name for

6   the record and --

7        MS. SHARIFF:  Yes.  This is Ms. Shariff.  I am

8   waiting to hear back from the I.R.S., because a lot of these

9   returns were -- that were unfiled, that were provided to my

10  office, were provided -- some were provided yesterday and

11  the day before.  And so, I'm awaiting verification.

12        So, my questions are probably going to be at the

13  end.  I don't want to have to ask questions if, you know,

14  I.R.S. can answer those questions or -- so, I want to do it

15  altogether.

16        TRUSTEE HAUSER:  Okay.

17  BY TRUSTEE HAUSER:

18  Q   Moving on.  So we just covered question 4.1.  Moving on

19  to page six of 23, the change made to there is -- if you

20  look at lawsuit 7.18 through the next page, 7.22, these were

21  the same lawsuits that you added to the schedules, correct?

22  A   I believe that's true, yes.

23  Q   Okay.  Then at page seven of 23 you added a claim

24  against Mr. Sims for theft of the laptop, which we discussed

25  at the last meeting.  Was that a laptop that was issued to

*Briggs Reporting Company, Inc.*

**Exhibit 11**
**Page 6 of 11**

33

1  him by the firm or?

2  A    Yes.

3  Q    And it was specifically said that the laptop was not --

4  is property of the firm and it's not your personal property?

5  A    There's no question that that laptop was the property

6  of the firm.  When we demanded that he return it, he

7  actually returned the -- this should say, "theft of laptop

8  computer hard drive."  When we demanded that he return it

9  after his termination from the firm, he returned the laptop

10  but had replaced the hard drive in the laptop.

11  Q    So, you really wanted the hard drive back?

12  A    Yes.

13  Q    Okay.

14  A    It's property of the estate.

15  Q    Okay.

16          TRUSTEE HAUSER:  I mean, Mr. Kharasch, have you

17  made demand for turnover?

18          MR. KHARASCH:  We have not yet gotten to that

19  part.

20          TRUSTEE HAUSER:  Okay.  Because there's a really

21  simple motion called a 542 motion, that you can make if it's

22  truly property of the estate.  It's not that hard.

23  BY TRUSTEE HAUSER:

24  Q    Okay.  Question number 13, which is at the bottom of

25  page seven of 23.  There's no change here, but I just want

**Exhibit 11**
**Page 7 of 11**

34

1  to make sure we get this for the record.

2       So this question basically asks whether the firm,

3  within two years prior to the filing, transferred any

4  property out of the ordinary course of business to third-

5  party entities.  And so, let me just kind of hone in,

6  because I think we talked about this last time.  Did the

7  firm within two years prior to the filing of this case, for

8  example, transfer any funds to any of your business

9  interests?  And I'll use Global Baristas as one example, but

10  I don't even know all your business interests.

11  A    Outside the ordinary course of business?

12  Q    Well, I can't imagine how transferring monies Global

13  Baristas would be -- even $100, would be in the ordinary

14  course of business, because that's not part of the business

15  model of Eagan law firm.

16       I mean, if you told me you bought stuff at Staples

17  every month, yeah, that would be ordinary course.  But

18  there's no reason why Eagan Avenatti, as a law firm, would

19  be transferring money to your personal business interests in

20  the ordinary course of business.  So, any transfer, from my

21  perspective, would be outside the ordinary course of

22  business.  The order of magnitude makes a difference.  No

23  one really cares about $100.

24            MR. KHARASCH:  Are you including loan repayments

25  as well?

35

1          TRUSTEE HAUSER:  It's really clear here that it

2    says, "any transfers."  It's the movement of money from

3    Eagan Avenatti to third parties.  It says, "both outright

4    transfers, transfers" -- let me ask it another way.

5    BY TRUSTEE HAUSER:

6    Q    In your experience, does Eagan Avenatti transfer funds

7    to your business interests from time to time?  Without

8    regard to time frame, just to make this a little bit earlier

9    for you to conceptually get your arms around.

10   A    Yes.

11   Q    Okay.  So then, the only question becomes is, whether

12   it occurred within two years prior to the filing?

13   A    I believe the answer to this question 13 is accurate as

14   reflected on this document.

15   Q    Okay.  The next change was at page 11 of 23.  If you

16   look in the middle of page, question number 30, payments,

17   distributions or withdrawals to insiders.  And then you

18   reference an attachment, which is SOFA number 30, and that's

19   at page 17 of 23.  If you look specifically at page 19 of

20   23, you will see compensation to Mr. Avenatti starting in

21   March of 2016, going all the way through February of 2017.

22          Let me ask you a question.  It has a term, "origination

23   fees."  What does that refer to?

24   A    Pursuant to my agreement with the firm, I am entitled

25   to origination fees on matters that I originate for the

36

1  firm, which generally are 85- to 90-percent of the matters

2  that the firm has.

3  Q    Is there a written contract between you and the firm

4  with respect to the origination fees?

5  A    Yes.

6  Q    Okay.  And what are the -- is there a typical set of

7  terms with respect to the origination fee?

8  A    Anywhere from 15- to 25-percent of the gross fees

9  obtained.

10 Q    So, when a matter settles, where you originated -- when

11 you say, "originated," that means you bought the client into

12 the firm?

13 A    I brought the "client into the firm," and then the

14 client is a client of the firm --

15 Q    Okay.

16 A    -- not a client of me individually.

17 Q    Okay.  And, obviously, because these are typically

18 contingency cases, you wouldn't get a payment until the

19 matter is settled everyone knows what the benefit was,

20 correct?

21 A    Correct, but some of those origination fees are then

22 deferred, depending on the cash flow availability of the

23 firm.

24 Q    Right.  But I'm saying, none of the origination fees

25 would ever be paid up front in anticipation of an outcome

143

1  is not going to be done in the context of a 341 exam.  The

2  issue of Mr. Avenatti's relationship with his various

3  entities, is, again, a 341, not -- I'm sorry, a 2004

4  examination.  So, those seem to be the two areas that you

5  want to ask a lot of questions about, but given that that's

6  much more appropriate for a 2004.

7          I mean, if you're going to ask for bank statements

8  from third-party entities, what you're going to need in

9  order to put it in front of him, that can't be done today,

10 and it wouldn't be appropriate anyways.

11         So, given those parameters, I think we're going to

12 conclude the meeting at this time.

13     (Proceedings concluded.)

14

15         I certify that the foregoing is a correct

16 transcript from the electronic sound recording of the

17 proceedings in the above-entitled matter.

18 /s/ Holly Martens              1-22-19
   Transcriber                    Date
19

20

21

22

23

24

25

*Briggs Reporting Company, Inc.*

**Exhibit 11**
**Page 11 of 11**

# EXHIBIT 12

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is entered into as of August 1, 2018 (the "Closing Date") by and between Eagan Avenatti LLP, a California Limited Liability Partnership ("Seller"), and Law Firm 1      a California Professional Corporation ("Purchaser"). The Seller and the Purchaser shall each be referred to individually as a "Party" and collectively as the "Parties."

### RECITALS

WHEREAS, the Seller is the owner of the assets described on Exhibit A (the "Assets");

WHEREAS, the Seller currently has an outstanding obligation due to the Purchaser that is in excess of the value of the Assets;

WHEREAS, the Seller acknowledges the outstanding obligation due to the Purchaser;

WHEREAS, the Seller believes that selling the Assets in exchange for the extinguishment of set amounts owed to the Purchaser equal to the value of the Assets is in the best interest of the Seller in order to avoid legal actions by the Purchaser;

WHEREAS, the Purchaser believes that acquiring the Assets in exchange for the extinguishment of set amounts owed to it by the Seller is in the best interest of the Purchaser in order to partially recover an outstanding debt and avoid legal actions against the seller;

WHEREAS, the Seller desires to sell to Purchaser, and the Purchaser desires to purchase and acquire from the Seller, Seller's interest in the Assets according to the terms set forth herein.

NOW, THEREFORE, in consideration of the mutual promises herein contained, the Parties hereby agree as follows:

### I. *Purchase and Sale of the Assets*

1.1 Purchase and Sale of Assets. The Seller hereby sells, transfers, assigns, and delivers to the Purchaser, free and clear of any liens or encumbrances of any kind, all of the Seller's right, title, and interest in the Assets.

1.2 Assumption of Liabilities. The Purchaser will not assume any liabilities or obligations related to the Assets, and Seller represents that there are no liabilities or obligations related to the Assets.

1.3 Closing. The closing shall be deemed to have taken place on the Closing Date.

1.4 Post-Closing Activities. At any time after the Closing Date, upon any Party's written request and without further consideration, the other Party shall take such other actions as the requesting Party may reasonably deem necessary or desirable in order to consummate the terms, and recognize the benefits, of obligations under and transactions contemplated by this Agreement.

1.5 Planned Lease Back. The Seller, as a material term of this sale, requests, and Purchaser hereby grants, a lease back of the items for the period, amount and conditions set forth in the ancillary "Lease Back Agreement."

1

**Exhibit 12**
**Page 1 of 7**

USAO_00110966

**II.** *Purchase Price*

In consideration of the Seller's sale, transfer, and assignment of the Assets, the Purchaser shall issue the Seller the following:

2.1 <u>Forgiveness of Debt</u>. The Seller currently owes the Purchaser in excess of $2,000,000.00 (Two Million United States Dollars, the "Debt"). In exchange for the Assets, the Purchaser is forgiving $500,000.00 (five hundred thousand United States Dollars and no cents) of the Debt (the "Purchase Price").

**III.** *Representations and Warranties of the Seller*

The Seller represents and warrants to the Purchaser, as of the date of this Agreement and again as of the Closing, as follows:

3.1 <u>Organization</u>. The Seller is a Limited Liability Partnership, duly organized, validly existing, and in good standing under the laws of California, and has all requisite power and authority to carry on its business as now conducted by it and to own and operate its assets as now owned and operated by it.

3.2 <u>Authority; Enforceability</u>.

(a) The Seller has the right, power, and authority to execute and deliver this Agreement and all other documents executed or to be executed by the Seller pursuant to this Agreement (the "Transaction Documents"), and to perform its obligations thereunder. The Transaction Documents, to which the Seller is a Party, constitute (or will, when executed and delivered as contemplated herein, constitute) the legally binding obligations of the Seller, enforceable in accordance with their respective terms.

(b) The execution, delivery, and performance of the Transaction Documents by the Seller, and the consummation of the transactions contemplated thereby, do not and will not: (i) require the consent, waiver, approval, license, or other authorization of any Person, except as provided for herein; (ii) violate any of provision of applicable law; (iii) contravene, conflict with, or result in a violation of any provision of the Seller's Organizational Documents; (iv) conflict with, require a consent or waiver under, result in the termination of any provisions of, constitute a default under, accelerate any obligations arising under, trigger any payment under, result in the creation of any lien pursuant to, or otherwise adversely affect, any contract to which the Seller is a party or by which any of its assets are bound, in each such case whether with or without the giving of notice, the passage of time, or both.

(c) All requisite corporate action has been taken by the Seller to authorize and approve the execution and delivery of the Transaction Documents, the performance by the Seller of its obligations thereunder, and of all other acts necessary or appropriate for the consummation of the transactions contemplated by this agreement and the Transaction Documents, if any.

3.3 <u>Legal Actions</u>. There is no demand, action, suit, claim, proceeding, complaint, grievance, charge, inquiry, hearing, arbitration, or governmental investigation of any nature, public or private, (each, a "Proceeding") pending or, to the knowledge of the Seller, threatened by or against the Seller (or any of its officers, directors, partners, or employees) related to the Assets, or involving any of the Assets, nor is there any basis for any such legal proceeding.

3.4 <u>Personal Property, Inventory, and Title of Assets</u>. The Assets were acquired by the Seller in bona fide, arms-length transactions entered into in the ordinary course of business. The Seller owns, and at the Closing, the Purchaser shall be vested with, all right, title, and interest in and to all of the Assets

2

**Exhibit 12**
**Page 2 of 7**

USAO_00110967

free and clear of any and all liens.

    3.5 <u>Material Contracts</u>.

        (a)      The Seller has previously delivered to the Purchaser true and correct copies of all such material contracts (or accurate written summaries of any oral material contract) related to the Assets, each as currently in effect. If none are delivered, then the Seller represents that none exist.

        (b)      The Seller has not breached, violated, or defaulted under (or taken or failed to take any action that, with the giving of notice, the passage of time, or both would constitute a breach, violation, or default under), or received notice alleging that the Seller has breached, violated, or defaulted under (or taken or failed to take any action that, with the giving of notice, the passage of time, or both would constitute a breach, violation, or default under) any contract included in the Assets, or for the benefit of the Assets. No other party obligated to the Seller pursuant to any such contract has breached, violated, or defaulted under (or taken or failed to take any action that, with the giving of notice, the passage of time, or both would constitute a breach, violation, or default under) any such contract.

    3.6 <u>Brokers</u>. Neither the Seller nor any other person acting on its behalf has incurred any obligation or liability to any person for any brokerage fees, agent's commissions, or finder's fees in connection with the execution or delivery of the

**IV. *Representations and Warranties of the Purchaser***

    4.1 <u>Organization</u>. The Purchaser is a Professional Corporation duly organized, validly existing, and in good standing under the laws of the State of California.

    4.2 <u>Authority; Enforceability</u>. The Purchaser has full corporate power and authority to execute and deliver this Agreement, and the performance by the Purchaser of its duties and obligations thereunder, and the taking of all other acts necessary and appropriate for the consummation of the transactions contemplated thereby.

    4.3 <u>Brokers</u>. The Purchaser has not incurred any obligation or liability to any Person for any brokerage fees, agent's commissions, or finder's fees in connection with the execution or delivery of the Transaction Documents or the transactions contemplated hereby.

    4.4 <u>Purchase for Own Account</u>. The Purchaser represents that it is acquiring the Assets solely for its own account and beneficial interest.

**V. *Consents***

    The Seller will use its reasonable best efforts to obtain or cause to be obtained any consents required in connection with the transactions contemplated by any of the Transaction Documents that are requested by the Purchaser and that have not been previously obtained prior to or at the Closing. Notwithstanding anything to the contrary set forth herein, this Agreement shall not constitute an assignment or attempt to assign or transfer any interest in any contract or permit otherwise included in the Assets, or any claim, right or benefit arising thereunder or resulting therefrom, if such assignment or transfer is without the consent of a third party and would constitute a breach or violation thereof or adversely affect the rights of the Purchaser or the Assets.

    Until all such consents are obtained, the Seller shall cooperate in any arrangement reasonably satisfactory to the Purchaser designed to fulfill the Seller's obligations thereunder and to afford the

3

**Exhibit 12**
**Page 3 of 7**

USAO_00110968

Purchaser the continued full benefits thereof.

**VI. *Covenants***

6.1 <u>Further Assurances</u>. Where necessary, from time to time (including after the Closing), the Parties will execute and deliver such other documents, certificates, agreements, and other writings and take such other actions as may reasonably be necessary or requested by another Party in order to consummate, evidence or implement expeditiously the transactions contemplated by this Agreement.

6.2 <u>Fulfillment of Conditions</u>. The Parties hereto agree to take and to cause to be taken in good faith commercially reasonable efforts to fulfill, as soon as reasonably practicable, the conditions to Closing.

6.3 <u>Transfer of assets</u>. The Parties hereto shall cooperate with one another in determining how to best transfer, store, preserve and safeguard the Assets. Seller will cooperate with Purchaser to expeditiously resolve any problems with the transfer of the tangible Assets.

**VII. *Survival of Representations, Warranties, and Covenants.***

Section 7.1 <u>Survival of Representations, Warranties, and Covenants</u>.

(a) Except as otherwise provided in this Section 7.1, all representations and warranties contained herein, and the right to assert claims in respect of any breach thereof, shall survive the Closing and any investigation heretofore or hereafter conducted by or on behalf of the Party entitled to benefit thereof, and shall expire on the third (3rd) anniversary of the Closing Date.

(b) Notwithstanding anything to the contrary herein, the survival period in respect of any representation or warranty in this Agreement, or any related claim, shall be extended automatically to include any time period necessary to resolve a claim which was asserted but not resolved before expiration of such survival period. Liability for any such item shall continue until such claim shall have been finally settled, decided, or adjudicated.

(c) Notwithstanding anything herein to the contrary, all covenants, agreements and obligations contained herein shall survive the Closing and not expire unless otherwise specifically provided in this Agreement.

Section 7.2 <u>No Other Representations; Express Negligence</u>.

(a) THE REPRESENTATIONS AND WARRANTIES OF THE SELLER AND PURCHASER CONTAINED IN THIS AGREEMENT AND THE OTHER TRANSACTION DOCUMENTS, IF ANY, CONSTITUTE THE SOLE AND EXCLUSIVE REPRESENTATIONS AND WARRANTIES OF SUCH PARTIES, RESPECTIVELY, IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED HEREBY. EXCEPT FOR SUCH REPRESENTATIONS AND WARRANTIES, NONE OF SELLER, PURCHASER OR ANY OTHER PERSON MAKES ANY OTHER EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WITH RESPECT TO SUCH PARTIES OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, AND EACH PARTY DISCLAIMS ANY OTHER REPRESENTATIONS OR WARRANTIES, WHETHER MADE BY SUCH PARTIES OR ANY OF THEIR OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, OR REPRESENTATIVES. PURCHASER ACKNOWLEDGES AND AGREES THAT IT HAS NOT RELIED ON ANY REPRESENTATIONS AND WARRANTIES OTHER THAN THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT OR THE OTHER

4

**Exhibit 12**
**Page 4 of 7**

USAO_00110969

TRANSACTION DOCUMENTS IN MAKING ITS INVESTMENT DECISION WITH RESPECT TO THE ASSETS.

**VIII.** *Miscellaneous*

8.1 Assignment. Neither this Agreement nor any interest hereunder will be assignable in part or in whole by either Party without the prior written consent of the non-assigning Party, which consent will not be unreasonably withheld, conditioned, or delayed.

8.2 Governing Law and Venue. This Agreement is executed pursuant to and shall be interpreted and governed for all purposes under the laws of the State of California. Any cause of action brought to enforce any provision of this Agreement shall be brought in Los Angeles, California pursuant to section 8.3 below. If any provision of this Agreement is declared void, such provision shall be deemed severed from this Agreement, which shall otherwise remain in full force and effect. This Agreement shall supersede any previous agreements, written or oral, expressed or implied, between the parties relating to the subject matter hereof.

8.3 Dispute Resolution. In the event of any controversy, dispute, or claim arising out of or related to this Agreement or the breach thereof, the Purchaser and the Seller agree to meet and confer in good faith to attempt to resolve the controversy, dispute, or claim without an adversary proceeding. If the controversy, dispute, or claim is not resolved to the mutual satisfaction of the Purchaser and the Seller within ten (10) business days of notice of the controversy, dispute, or claim, the Purchaser and the Seller agree to waive their rights, if any, to a jury trial, and to submit the controversy, dispute, or claim to a retired judge or justice for binding, confidential arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The Purchaser and the Seller agree that the only proper venue for the submission of claims shall be the Los Angeles County, California. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any dispute resolution proceedings contemplated by this provision shall be as confidential and private as permitted by law.

8.4 Notices. Any notice, request, demand, or other communication given pursuant to the terms of this Agreement shall be deemed given upon delivery, and may only be delivered or sent via hand delivery, facsimile, or by overnight courier, correctly addressed to the addresses of the parties indicated below or at such other address as such Party shall in writing have advised the other Party.

| If to the Seller: | Michael Avenatti / Eagan Avenatti LLP<br>520 Newport Center Drive, Ste, 1400, Newport Beach, CA<br>E-mail: MAvenatti@eaganavenatti.com<br>Fax: 949-706-7050 |
|---|---|
| If to the Purchaser: | F█████ M█████ / Law Firm 1<br>Los Angeles, CA 90026 |

5

**Exhibit 12**
**Page 5 of 7**

USAO_00110970

8.5 <u>Amendment</u>. No amendment, modification, or supplement of any provision of this Agreement will be valid or effective unless made in writing and signed by a duly authorized officer of each Party.

8.6 <u>Waiver</u>. No provision of this Agreement will be waived by any act, omission, or knowledge of a Party or its agents or employees except by an instrument in writing expressly waiving such provision and signed by a duly authorized officer of the waiving Party.

8.7 <u>Severability</u>. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under the applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be in effective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement.

8.8 <u>Attorneys' Fees</u>. In the event that any suit, arbitration, legal action, proceeding, or dispute between the Parties arises in connection with this Agreement, the prevailing Party shall be entitled to recover all expenses, costs, and fees, including reasonable attorney's fees, actually incurred in association with such action.

8.9 <u>Entire Agreement</u>. This Agreement, including all exhibits, is the complete, final, and exclusive understanding and agreement of the Parties and cancels and supersedes any and all prior negotiations, correspondence, and agreements, whether oral or written, between the Parties respecting the subject matter of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first written hereinabove.

"Seller"

_____
Eagan Avenatti, LLP
By: Michael Avenatti, Managing Partner

"Purchaser"

Law Firm 1
By: ▢ M▢ , President

6

**Exhibit 12**
**Page 6 of 7**

USAO_00110971

**Exhibit A**

**Included Assets**

1. All art presently located at 520 Newport Center Dr., Suite 1400, Newport Beach 92660, including but not limited to:
   a. All Frank Stella prints
   b. "Mask" bike chain sculpture hanging in the main conference room
   c. "Finger Print" metal hanging sculptures
   d. Wax paintings hanging in suite hallway
   e. Oil painting hanging in Avenatti office
   f. Metal sculpture at end of hallway by window
   g. Porsche print in Avenatti office
   h. Prints in copy room and small conference room

2. All computer servers located at 520 Newport Center Dr., Suite 1400, Newport Beach 92660, including but not limited to:  the print server, the software server, the document server and email server, together with all server racks.

3. All furniture located at 520 Newport Center Dr., Suite 1400, Newport Beach 92660, including but not limited to:
   a. Three conference room tables with chairs, together with two credenzas
   b. Desk in Avenatti office, together with credenza, coffee table and chairs
   c. 4 Cubicles and chairs
   d. Seven desks in offices, together with small credenzas and chairs
   e. Shelving in storage room and closet off of reception area
   f. Reception desk

4. All desktop computers and monitors located at 520 Newport Center Dr., Suite 1400, Newport Beach 92660.

5. All software and associated licenses, whether stored on the servers or desktops located at 520 Newport Center Dr., Suite 1400, Newport Beach 92660.

7

**Exhibit 12**
**Page 7 of 7**

USAO_00110972

# EXHIBIT 13



**INVOICE**

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

**INVOICE:** I9500250
**Date:** 11/19/2018

**TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

**SHIP TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|:---:|---|:---:|:---:|
| 1 | Setup Fee | $1,000.00 | $1,000.00 |
| 1 | First Month of Data Center Colocation Services - 11/19/2018<br>Billing cycle will occur on the 19th of each month.<br>Next automatic bill date - 12/19/2018. | $1,000.00 | $1,000.00 |

Note:  Paid - Total invoice paid via credit card on 11/19/2018 (Visa 1551)

| | |
|---|---:|
| SUBTOTAL | $2,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $2,000.00 |
| TOTAL DUE | $0.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

**Exhibit 13**
**Page 1 of 5**



**INVOICE**

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

**INVOICE:** I9500251
**Date:** 12/19/2018

**TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

**SHIP TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|-----|-------------|------------|------------|
| 1 | Monthly Data Center Colocation Services – 12/19/2018 – 1/19/2019<br>Payment due on or before 12/19/2018 | $1,000.00 | $1,000.00 |

Note: Pay invoice on or before 12/19/2018 to avoid service disruption
Easy payment method available via credit card over the phone

| | |
|---|---|
| SUBTOTAL | $1,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $1,000.00 |
| TOTAL DUE | $1,000.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

**Exhibit 13**
**Page 2 of 5**

USAO_00122546



INVOICE

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

**INVOICE:** I9500252
**Date:** 1/19/2019

**TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

**SHIP TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|-----|------------|-----------|-----------|
| 1 | Monthly Data Center Colocation Services – 1/19/2019 – 2/19/2019<br>Payment due on or before 1/25/2019 | $1,000.00 | $1,000.00 |

Note: Pay invoice on or before 1/25/2019 to avoid service disruption
Easy payment method available via credit card over the phone

| | |
|---|---|
| SUBTOTAL | $1,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $1,000.00 |
| TOTAL DUE | $1,000.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

**Exhibit 13**
**Page 3 of 5**

USAO_00122547



# INVOICE

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

**INVOICE:** I9500253
**Date:** 2/19/2019

**TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

**SHIP TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|:---:|---|:---:|:---:|
| 1 | Monthly Data Center Colocation Services – 2/19/2019 – 3/19/2019<br>Payment due on or before 2/26/2019 | $1,000.00 | $1,000.00 |

Note: Pay invoice on or before 2/26/2019 to avoid service disruption
Easy payment method available via credit card over the phone

| | |
|---|---:|
| SUBTOTAL | $1,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $1,000.00 |
| TOTAL DUE | $1,000.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

**Exhibit 13**
**Page 4 of 5**

USAO_00122548



# INVOICE

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

**INVOICE:** I9500254
**Date:** 3/19/2019

**TO:**
Law Firm 1

Los Angeles, CA 90026
(949) 706-7000

**SHIP TO:**
Law Firm 1

Los Angeles, CA 90026
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|-----|------------|------------|------------|
| 1 | Monthly Data Center Colocation Services – 3/19/2019 – 4/19/2019<br>Payment due on or before 3/26/2019 | $1,000.00 | $1,000.00 |

Note: Pay invoice on or before 3/26/2019 to avoid service disruption
Easy payment method available via credit card over the phone

| | |
|---|---|
| SUBTOTAL | $1,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $1,000.00 |
| TOTAL DUE | $1,000.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

**Exhibit 13**
**Page 5 of 5**

USAO_00122549

EXHIBIT 14

| | |
|---|---|
| **From:** | EA Employee 1 |
| **To:** | MixinIT |
| **Subject:** | Address Info |
| **Date:** | Tuesday, February 26, 2019 1:01:58 PM |

Frankie -

Please direct the invoices to:

Law Firm 1

Los Angeles, CA 90026

please use this email address:

@gmail.com

EA Employee 1

949-706-7000

**Exhibit 14**
**Page 1 of 1**

USAO_00122544

# EXHIBIT 15

**From:** EA Employee 1
**To:** MixinIT
**Subject:** Removal of Additional Employees
**Date:** Friday, March 15, 2019 12:08:44 PM

Frankie -

We need to have H████ W████ and T████ G███ removed from the email and remote access.

Thank you.

EA Employee 1

**Exhibit 15**
**Page 1 of 1**

USAO_00122550

# EXHIBIT 16

**EAGAN AVENATTI, LLP**
**450 Newport Center Drive, 2ⁿᵈ Floor**
**Newport Beach, CA 92660**
**(949)706-7000**

## July 2, 2014

## ATTORNEY-CLIENT FEE CONTRACT (CONTINGENCY)

This ATTORNEY-CLIENT FEE CONTRACT (this "Agreement") is the written fee contract that California law requires lawyers to have with their clients. It is between Eagan Avenatti, LLP (the "Attorney") on the one hand and G███ B███ and ███████████ (the "Client") on the other.

**1.     CONDITIONS.**  This Agreement will not take effect, and Attorney will have no obligation to provide legal services, until Client returns a signed copy of this Agreement.

**2.     SCOPE OF SERVICES.**  Client is hiring Attorney to represent Client in the matter of Client's affirmative claims relating to Client's intellectual property rights in hardscape underlayment processes/technology. Attorney will provide those legal services reasonably required to represent Client and take reasonable steps to inform Client of progress and to respond to Client's inquiries. In addition, Attorney may at any time and at its discretion retain outside counsel, whose legal fees will be deducted from the fees received by Attorney.

Attorney will represent Client in any court action until a settlement or judgment, by motion, arbitration or trial, is reached, and in connection with any appropriate post-trial motions. Client and Attorney agree that any legal services provided on behalf of Client in connection with any appeal relating to Client's claims shall be covered by a separate agreement, the terms of which are subject to future negotiation.

**3.     CLIENT'S DUTIES.**  Client agrees to be truthful with Attorney, to cooperate, to keep Attorney informed of developments, to abide by this Agreement, and to pay bills for costs on time.

**4.     LEGAL FEES, COSTS AND BILLING PRACTICES.**  Attorney will receive a contingency fee of forty percent (40%) of the Recovery (defined below).

*"Recovery"* will include any cash; the fair market value of any property, stock, note, partnership interest, carried interest, stock option, business accommodation or agreement, loan, and funding; and other consideration received in connection with the settlement, judgment, or other resolution of any of Client's claims as referenced above, including but not limited to any jury award, arbitration award, award of attorneys' fees, discovery sanctions, other monetary sanctions, and/or similar awards which an opposing party is required to pay to Client.

If payment of all or any part of the amount to be received will be deferred (such as in the case of an annuity, a structured settlement, or periodic payments), the *"Recovery"* for purposes of calculating the Attorney's fees, will be the initial lump-sum payment plus the present value, as of the time of the binding resolution, of the payments to be received thereafter. The attorney's fees will be paid out of the initial lump-sum payment. If the payment is insufficient to pay the attorney's fees in full, the balance will be paid from subsequent payments of the *Recovery* before any distribution to Client.

In the event of discharge or withdrawal of Attorney as provided in Paragraph 10, Client agrees that Attorney shall be entitled to be paid by Client, upon binding resolution of Client's claims, whether by settlement, judgment or arbitration award in favor of Client, a reasonable fee for the legal services provided by Attorney to Client.

-1-

**Exhibit 16**
**Page 1 of 3**

USAO_00058528

5.     **NEGOTIABILITY OF FEES.**  The rates set forth above are not set by law, but were negotiated between Attorney and Client.

6.     **COSTS, DISBURSEMENTS AND EXPENSES.**  Attorney will advance all out-of-pocket litigation and trial costs and expenses.  "Costs and expenses" include filing and court fees, investigation expenses, process fees, investigation fees, graphic art and filming fees, PowerPoint fees, computer animation fees, expert fees, deposition costs, photocopying charges, mock trials or focus groups, jury fees, computerized research, jury trial consultant fees, telephone toll charges, travel costs, mail messenger and other delivery charges, postage and any other necessary expenses in this matter.  Client authorizes Attorney to incur all reasonable costs and to hire any investigators, consultants or expert witnesses reasonably necessary in Attorney's judgment.  Upon resolution or settlement of Client's claims, Client agrees to fully reimburse Attorney from Client's portion of the Recovery that portion of the costs and expenses previously advanced by Attorney.

7.     **INSURANCE COVERAGE.**  Attorney maintains errors and omissions insurance coverage applicable to the services to be rendered to client.

8.     **ARBITRATION.  Any dispute arising under this Contract or in connection with Attorney's services hereunder, including any claim by Client against Attorney for malpractice or other tort claim or any dispute regarding attorneys' fees, shall be resolved by binding arbitration before JAMS located in Orange County, California. Such arbitration shall be conducted in accordance with the arbitration rules and procedures of JAMS then in effect.  Client acknowledges that he has been fully advised of all of the possible consequences of arbitration including but not limited to:**

   a.  **If a malpractice action arises from this Agreement, neither Client nor Attorney will have the right to a jury trial.**
   b.  **Both parties retain the right to retain counsel to prepare their respective claims and/or defenses for the arbitration hearing.**
   c.  **Client can choose or hire an attorney who may not request or whose retainer agreement does not contain an arbitration provision.**

9.     **RELATED UNKNOWN MATTERS.**  Client represents that Client does not know of any related legal matters that would require legal services to be provided under this Agreement.  If such a matter arises later, Client agrees that this Agreement does not apply to any such related legal matters, and a separate Agreement for provision of services and payment for those services will be required if Client desires Attorney to perform that additional legal work.

10.    **DISCHARGE AND WITHDRAWAL.**  Client may discharge Attorney at any time, upon written notice to Attorney, and Attorney will immediately after receiving such notice cease to render additional services in a manner that avoids foreseeable prejudice to Client.  Such a discharge does not, however, relieve Client of the obligation to pay any costs incurred prior to such termination, and Attorney has the right to recover from Client the reasonable value of Attorney's legal services rendered from the effective date of the Agreement (Paragraph 14) to the date of discharge.

Attorney may withdraw from representation of Client (a) with Client's consent, or (b) upon court approval, or (c) if no court action has been filed, upon reasonable notice to Client

11.    **LIEN.**  Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Agreement.  Attorney's lien will be for any sums owing to Attorney for any unpaid costs or attorneys fees under this Agreement.  The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise.  The lien created herein is considered an adverse interest within the meaning of Rule of Professional Conduct 3-300 and requires Client's informed written consent.  In accordance with that Rule, Attorney advises Client that it may seek the advice of an independent lawyer of Client's choice, and that Client need not sign this Agreement until it has had a reasonable opportunity to seek that advice.  By signing this Agreement, Client consents to the Attorney's Lien described

**Exhibit 16**
**Page 2 of 3**

USAO_00058529

herein.

**12.    CONCLUSION OF SERVICES.**  When Attorney's services conclude, other than by discharge or withdrawal, all unpaid charges will immediately become due and payable. After Attorney's services conclude, Attorney will, upon Client's request, deliver Client's file to Client, along with any Client funds or property in Attorney's possession.

**13.    DISCLAIMER OF GUARANTEE.    Nothing In this Agreement and nothing in Attorney's statements to Client before or after the signing of this Agreement will be construed as a promise or guarantee about the outcome of Client's matter.  Attorney makes no such promises or guarantees. There can be no assurance that Client will recover any sum or sums in this matter.  Attorney comments about the outcome of Client's matter are expressions of opinion only.**

**14.    EFFECTIVE DATE AND AMENDMENT.** This Agreement will take effect when Client has performed the conditions stated in Paragraph 1.  The date at the beginning of this Agreement is for reference only.  Further, this Agreement may only be amended by way of a writing signed by the Attorney and the Client.

"Attorney"

EAGAN AVENATTI, LLP

_____

Michael J. Avenatti

I have read and understood the foregoing terms and agree to them.  By signing this Agreement, I acknowledge receipt of a fully executed duplicate of this Agreement.

"Client"

G▮▮ B▮▮▮

By: _____     Date: _7 - 8 - 14_

By: _____     Date: _7 - 8 - 14_

**Exhibit 16**
**Page 3 of 3**

USAO_00058530

# EXHIBIT 17

[Filed Separately Under Seal]

# EXHIBIT 18

[Filed Separately Under Seal]

1

<u>**CERTIFICATE OF SERVICE**</u>

2     I, JULIAN L. ANDRÉ, declare as follows:

3     I am a citizen of the United States and a resident of or

4  employed in Los Angeles County, California; my business address is

5  the Office of United States Attorney, 312 North Spring Street, Los

6  Angeles, California 90012; I am over the age of 18; and I am not a

7  party to the above-titled action;

8     I am employed by the United States Attorney's Office for the

9  Central District of California, and a member of the Bar of the United

10  States District Court for the Central District of California;

11     On August 12, 2019, I served a copy of the:

12  <u>**GOVERNMENT'S OPPOSITION TO DEFENDANT MICHAEL JOHN AVENATTI'S MOTION**</u>

13  <u>**TO COMPEL DISCOVERY; DECLARATION OF JULIAN L. ANDRÉ; EXHIBITS 1-16**</u>

14  on the counsel for the court-appointed receiver for Eagan Avenatti

15  LLP via email (with counsel's agreement) at the following address:

16        John P. Reitman
           LANDAU GOTTFRIED & BERGER LLP
17       1880 Century Park East, Suite 1101
           Los Angeles, CA 90067
18       jreitman@lgbfirm.com

19     This Certificate is executed on August 12, 2019, at Los Angeles,

20  California.  I certify under penalty of perjury that the foregoing is

21  true and correct.

22

23                  JULIAN L. ANDRÉ
                   Assistant United States Attorney

24

25

26

27

28