

JOHN P. REITMAN (State Bar No. 80579)
jreitman@lgbfirm.com
JACK A. REITMAN (State Bar No. 283746)
jareitman@lgbfirm.com
LANDAU GOTTFRIED & BERGER LLP
1880 Century Park East, Suite 1101
Los Angeles, California 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Attorneys for Brian Weiss,
Court Appointed Receiver of Eagan Avenatti, LLP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES, | Case No. SA-CR-19-61-JVS |
| Plaintiff, | **RECEIVER'S OPPOSITION TO MOTION TO COMPEL DISCOVERY [DECLARATION OF JOHN P. REITMAN IN SUPPORT; AND EXHIBITS separately filed]** |
| vs. | |
| MICHAEL AVENATTI, | |
| Defendant. | **Hearing Date, Time, and Location:** |
|  | Date:      August 26, 2019 |
|  | Time:      8:30 a.m. |
|  | Place:      Courtroom 10C |
|  |                411 W 4th Street |
|  |                Santa Ana, CA 92701 |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................. 2

II.    STATEMENT OF FACTS ................................................................ 3

III.   ARGUMENT ................................................................................... 6

       A.   Avenatti is not Entitled to Unfettered Access to the EA Servers. ........ 6

       B.   EA has no Financial Ability or Duty to Conduct a Search for any
            Information Avenatti may Claim to Need; Avenatti does. ................... 9

       C.   The Receiver's Position re: Avenatti's Access to Eagan Aveantti,
            LLP Information. ................................................................ 11

IV.    CONCLUSION ............................................................................. 14

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

i

1    Brian Weiss, federal court appointed receiver ("Receiver") of Eagan Avenatti,
2 LLP ("EA"), submits this opposition to defendant Michael Avenatti's ("Avenatti")
3 motion (the "Motion") to compel "the government to give him 'unfettered,
4 unmonitored access to the Eagan Avenatti LLP servers'" (the "EA Servers").
5 Motion, 2:3-4. Also submitted under separate cover is the declaration of John P.
6 Reitman (the "Reitman Dec."), with exhibits.

7 **I.    INTRODUCTION**

8    Avenatti's request for "immediate and unfettered access" to EA's computer
9 servers, and specifically EA files/documents/information (collectively,
10 "Information"), should be denied for the following reasons:

11    First, as explained below, the Receiver has not "refused to allow [Avenatti]
12 reasonable access" to information, as he falsely claims.[1]
13 As the Receiver has offered to Avenatti before, he may have access to the
14 information which is reasonably calculated to permit him to defend against the 36-
15 count indictment, so long as he (i) pays for the cost of obtaining that information;
16 (ii) provides the Receiver a list of the categories of files, documents and information
17 (collectively, "Information") he wants access to; and (iii) provides an explanation as
18 to why he is entitled to the requested Information.

19    Second, as Avenatti admits, the EA Servers "contain close to all of Mr.
20 Avenatti's business and client files for over a decade, including all his emails"
21 Motion, 3:13-18.  Accordingly, his request is grossly overbroad and, given some of
22 the criminal charges against him (including for extortion) and his prior conduct in
23 dealing with the Receiver, "unfettered" access present unacceptable risks that such
24 access may lead to unnecessary and irreparable damage to the rights and interests of
25

26 ───────────
[1] Unlike Avenatti, the Receiver does not believe that "unfettered" is synonymous
27 with "reasonable".
28

LANDAU GOTTFRIED & BERGER
LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   EA's former clients.

2       Third, Avenatti does not need access to EA's Servers.  The servers are in the
3   possession of the Receiver and are property of the EA receivership estate, not the
4   government.  Consistent with his fiduciary duties, the Receiver is required to
5   preserve the integrity of the servers for the benefit of the receivership estate's
6   creditors, including EA's former clients.  For this reason and because there are
7   forensic images of the servers' contents, Avenatti's access to the information on the
8   servers is obtainable from and should be limited to the forensic images.

9   **II.    STATEMENT OF FACTS**

10      The Receiver was appointed by the District Court in *In re Eagan Avenatti,*
11  *LLP* (Central District of California, 8:18-CV-01644-VAP-KES) pursuant to a
12  Stipulation and Order agreed to by Avenatti, individually and for EA, entered on
13  February 13, 2019 (the "Receivership Order").  Reitman Dec., Ex. 1.  Pursuant to
14  the Receivership Order, Avenatti voluntarily agreed to turn over possession of all
15  EA property, including the EA Servers – which, according to Avenatti and as stated
16  above, "contain close to all of Mr. Avenatti's business and client files for over a
17  decade, including all his emails" [Motion, 3:13-18] to the Receiver, a non-lawyer.

18      To enable the Receiver to perform his functions, Avenatti obligated himself to
19  cooperate with the Receiver and deliver this property to him.  Receivership Order, ¶
20  27(h).  However, Avenatti did not do so.  At first, Avenatti claimed that he was
21  "putting the information together" and had access to the EA Servers.  Reitman Dec.,
22  ¶ 3.

23      In mid-March, the Receiver discovered that Avenatti had supposedly caused
24  EA to sell the EA Servers and other property to a law firm known as X-Law Group
25  PC pursuant to an Asset Purchase Agreement "entered into as of August 1, 2018."
26  Reitman Dec., ¶¶ 4, 5; Exhibit 2.  The Receiver contacted X-Law Group's principal,
27  Filippo Marchino, who stated that although the firm had entered into that agreement,
28  it never took possession of EA's Servers and had no knowledge as to their location.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

1    *Id.,* ¶ 5; Exhibit 2.

2          Around this time, Avenatti was continuing to claim that he was still "putting

3    information together" but then changed his story claiming he "didn't know where

4    the servers were," a claim Avenatti continued to make until April 2, 2019.  Reitman

5    Dec., ¶ 5.  On April 2, counsel for Avenatti contacted the Receiver and claimed that

6    they had "discovered" a business card for an IT company called mixinIT.  *Id.*  The

7    Receiver contacted the attorney for mixinIT to arrange for the turnover of the

8    servers.  mixinIT's attorney provided client documents showing that (i) mixinIT had

9    taken possession of EA's Servers on or about November 19, 2018; (ii) mixinIT had

10   been paid $1,000 a month for their upkeep through March, 2019; (iii) Judith Regnier

11   (EA's then office manager) had instructed mixinIT to change the billing information

12   to X-Law Group on February 26, 2019, shortly after the Receivership Order was

13   entered; and (iv) through mid-March, Ms. Regnier continued to instruct mixinIt

14   concerning who could have access to the servers.   Reitman Dec., ¶ 6, Ex. 3.  These

15   facts make clear that Avenatti had been far less than candid when he claimed not to

16   know where the EA Servers were and to be unable to provide the Receiver with

17   access to them– that conduct intentionally violated the Receivership Order.

18   Moreover, it causes the Receiver to question why, now that the EA Servers are in

19   his possession, Avenatti insists upon unfettered and unsupervised access to them.

20         The day after the Receiver learned that mixinIt had access to EA's Servers, he

21   instructed mixinIT to release them to the IRS-CI, so that the government could make

22   a forensic image of the servers' contents.  Reitman Dec., ¶ 7  Before doing so,

23   however, the Receiver contacted the United States Attorney's Office, to confirm that

24   (i) the information contained in the EA Servers would be maintained without

25   alteration; (ii) creation of the forensic image would not in any way interfere with the

26   integrity of the data contained in the servers; and, (iii) there was a protocol for

27   maintaining the attorney-client privilege with respect to all attorney-client

28   communications contained in the servers.  *Id.*

LANDAU GOTTFRIED & BERGER
LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

The IRS-CI made their forensic image of the EA Servers' contents and in or about late April delivered the servers themselves and a forensic image of the information on the servers to the Receiver. Since that time, the servers have been dormant, as the EA receivership estate lacks the funds to house, set up, restart and maintain them. Avenatti effectively drained EA's bank accounts and diverted funds payable to it prior to and contemporaneously with stipulating to the appointment of the Receiver. Reitman Dec., ¶ 8.

Since that time, Avenatti has repeatedly demanded "unfettered" access to the EA Servers, and each time the Receiver has rebuked him, stating that he would not give Avenatti unsupervised or unfettered access to them, particularly because the information stored in the servers is not permanent and can be altered, erased or otherwise destroyed. The Receiver did, however, offer to give Avenatti access to Information on the servers (which also is captured on the forensic image) reasonably calculated to protect the interests of clients, if any, currently represented by him or to enable Avenatti to defend the criminal charges against him. In each instance, the Receiver made clear that Avenatti would need to (i) provide to the Receiver a list of the categories of Information he wanted access to; (ii) provide to the Receiver an explanation as to why he believed he was entitled to the Information; and (iii) paid, in advance, the Receiver's estimated cost to have his accountants' IT expert search for and copy the requested Information. In the alternative, Receiver proposed that Avenatti's own qualified IT independent contractors (acceptable to the Receiver) could perform that work, but those persons would be closely supervised by the Receiver's accountants, at Avenatti's expense.[2]   Reitman Dec., ¶ 9.

---

[2] Indeed, the Receiver has already worked with replacement counsel (who previously worked with Avenatti) for two major cases in making such copies from the forensic image using replacement counsel's independent IT expert. Reitman

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU GOTTFRIED & BERGER
LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

III.   **ARGUMENT**

A.   **Avenatti is not Entitled to Unfettered Access to the EA Servers.**

The data contained on the EA Servers (and the forensic image) is comprised of (i) litigation documents, including pleadings and discovery; (ii) information of EA clients, opposing parties or third-parties, some of which may be subject to privacy rights or protective orders; (iii) correspondence, including emails, much of which may be subject to the attorney-client privilege, privacy rights or protective orders; and (iv) business and financial books and records of EA.

So far, Avenatti has been unwilling to specify in any reasonable fashion *what* Information he wants to access and why, instead claiming that he has an absolute right of unfettered access to the EA Servers themselves and *all files, documents and other information contained on them* (at no cost to him), stating that:

> [t]he servers contain close to all of Mr. Avenatti's business and client files for over a decade, including all his emails. . . . [including] critical information relating to the accounting of various client settlement monies and Mr. Avenatti's taxes and other business interests mentioned in the indictment.

Motion, 3:13-18. Avenatti has no such right to unfettered access to EA's Servers or *the entirety* of the information contained on them.

First and foremost, Avenatti voluntarily agreed to turn over the EA Servers and their contents to the Receiver by virtue of the Receivership Order. Neither the servers nor most of the information contained on them are his property.

Second, Avenatti supposedly caused EA to sell the EA Servers to the X-Law Group, thereby voluntarily depriving himself of any ownership interest. Despite this, he continues to claim the he has a right to "unfettered access" to the EA

---

Dec., ¶ 10.

6

1  Servers.  Reitman Dec., ¶ 4.

2       Third, Avenatti also did not directly own any interest in EA – he has

3  purported to own EA indirectly though Avenatti & Associates.  However, Avenatti

4  transferred both his ownership in EA and Avenatti & Associates to his former wife,

5  Lisa Storie, in their currently pending divorce proceeding.  Reitman Dec., ¶ 11, Ex.

6  5.  Currently, Avenatti doesn't have *any* ownership interest in EA or its property.

7       Fourth, Avenatti has not worked for EA since February 13, 2019, when the

8  receivership estate was created, and EA ceased performing legal services.  In effect,

9  Avenatti abandoned his EA clients.

10       In each of the above scenarios, Avenatti abrogated his fiduciary obligations to

11  EA's clients by intentionally transferring their personal data and other files without

12  their knowledge, much less their informed consent, to third-parties (in two

13  scenarios, the transfers were to a non-lawyer: the Receiver or Avenatti's former

14  spouse).  And, of course, Avenatti can no longer claim to perform legal services

15  through EA.  Moreover, Avenatti has not (to date) and likely cannot demonstrate

16  that he still is the lawyer for any of EA's former clients and demand access to their

17  files.  Some of these clients have sued him, some are victims in this criminal case,

18  and some may simply have been abandoned by him.  In any case, this is quite

19  different from a client who has been provided proper notice of and given informed

20  consent to Avenatti's transfer of their legal files.  Avenatti has no absolute right to

21  access their files in the hands of a court appointed receiver, except to the extend

22  agreed to by the client or pursuant to appropriate court process.

23       Moreover, as Avenatti no longer has any ownership or other interest in EA

24  (since it has been ceded to Ms. Storie or his receivership estate), he has no right or

25  reason to access all of EA business and financial books and records; his right to

26  access those records extends only to tax returns, bank loan documents and other EA

27  records containing incriminating or exculpatory information relating to the criminal

28  charges against him.

LANDAU GOTTFRIED & BERGER
LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Lastly, most of the information contained on the EA Servers and the forensic image is entirely irrelevant to Avenatti's defense in this case.  Allowing him unsupervised, unfettered access to that information would facilitate Avenatti's ability, should he be so inclined, to misuse that information to evade his creditors or intimidate or undermine his former clients that have made (or may make) claims against him.[3]  Moreover, there is a genuine fear that the data contained in the servers may be tampered with (either altered, deleted or otherwise destroyed).

This same concern applies for the several dozen boxes of hard copy EA documents sitting in a storage facility.  Avenatti has demanded unfettered access to those documents as well, but the Receive has denied him that unfettered access for the same reasons as with the forensic image and the EA Servers – he has no right to access the bulk of those documents, and the Receiver has legitimate concerns that some of those documents contain information that Avenatti may have reason to tamper with, destroy, or misuse.

To the extent Avenatti is concerned about pointing the Receiver (or the government) in the direction of particular incriminating or exculpatory evidence, the Receiver has offered to have Avenatti choose a qualified independent IT specialist to search the forensic image (and document boxes for that matter), so long as that person has been vetted by the Receiver and is supervised.  Avenatti has rejected that offer.  Furthermore, Avenatti has had every opportunity from the time when he was initially indicted in late March of this year to make a formal request of the Receiver in the District Court overseeing the EA Receivership Estate.  He has not done so.

Instead, after misleading the Receiver as to the whereabouts of the EA Servers for more than six weeks and immediately after that deception being unmasked through the filing of his Motion, Avenatti had repeatedly peppered the

---

[3] Avenatti has been federally indicted for attempting to extort Nike, Inc.

8

Receiver with informal demands and threats for "unfettered" access, at no charge, to the EA Servers. Reitman Dec., Exs. 2, 4. The Motion is the first time Avenatti has made a formal demand for such access, something he could have done but tactically chose to not do for nearly four months.

**B.** **EA has no Financial Ability or Duty to Conduct a Search for any Information Avenatti may Claim to Need; Avenatti does.**

Avenatti claims that the Receiver had offered him full access to the EA Servers in April 2019, so long as Avenatti paid the $1,000 monthly upkeep cost. Motion, 5:1-2. This is inaccurate. The Receiver simply noted that this was the monthly rent charge while the EA Servers were monitored by mixinIT. The servers are no longer in mixinIT's possession, and the cost to move them to a suitable facility, install, restart, and maintain them is a different matter and likely will be considerably higher. Reitman Dec., ¶¶ 7-9. Moreover, that discussion only covered the bare cost to keep the servers online (which is unnecessary because the information is accessible from the forensic image), it did not address (i) the protocol for searching for Information; (ii) what Avenatii may or may not have access to, based upon the Receiver's duty to keep the data on those servers intact; and (iii) the cost to hire and, if necessary, supervise someone to search for and copy the specific Information requested by Avenatti. Motion, Declaration of James Bastian, Ex. B.

In short, the EA Receivership Estate has no funds because Avenatti emptied its bank accounts and wrongfully diverted funds payable to it – in violation of the Receivership Order. Reitman Dec., ¶ 12. As an example, when the Receiver was appointed, he learned that EA represented Medline, Inc. in *Medline Industries, Inc. v. Kimberly-Clark Corporation, et al.*, 1:17-cv-02032-SCJ, United States District Court for the Northern District of Georgia (the "*Medline* Case"). EA's monthly $35,000 retainer (retainer) was paid by check. Reitman Dec., ¶ 12. The Receiver discovered, however, that on November 27, 2018, Judith Regnier (EA's then office manager) directed Medline to change the payee on its monthly expense checks from

LANDAU GOTTFRIED & BERGER
LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

"Eagan Avenatti, LLP" (per the fee agreement with it) to "Avenatti LLP",[4] by providing Medline with a new W-9 form.  The checks were still mailed to EA's address at 520 Newport Center Drive, Suite 1400, Newport Beach, CA 92660. Reitman Dec., ¶ 12, Ex. 6.

On January 25, 2019, a few weeks before the Receiver was appointed, Ms. Regnier contacted Medline and requested that all future payments be sent to 4491 Rainbow Lane, Yorba Linda, CA 92886, Ms. Regnier's home address.  Reitman Dec., ¶ 13.  On February 21, 2019, eight days after the Receiver had been appointed, Ms. Regnier again contacted Medline to ensure the next check (for $58,295.38) would be made payable to Avenatti LLP and sent to her Yorba Linda address.  *Id.*

What's more, while EA has no funds to enable it to search for or copy EA business or financial records or client files for Information that may be requested by Avenatti, Avenatti apparently has no such problem.  On July 19, 2019, the Law Offices of Jason Frank (a major secured creditor of both EA and Avenatti personally) sent a notice of subpoena to various parties via email, including Avenatti and the Receiver; the subpoena was to the Intercontinental Hotel in Century City, California, requesting the method by which Avenatti paid to stay there.  Reitman Dec., ¶ 14.  Avenatti responded with the following: "I see desperation has set in.  **I paid cash.**  Nice Try." Reitman Dec., Ex. 7 (emphasis added).

What's more, Avenatti's current mailing address is at "Ten Thousand," a recently completed high rise luxury apartment building at 10000 Santa Monica Blvd, 21st Floor.  Apartments in that building *start* at $9,900 a month for the smallest unit. Reitman Dec., ¶ 15.  Avenatti also has retained several attorneys to represent him, including the following who continue to perform legal services for him: Shulman

---

[4] It appears that there is no such entity.  The taxpayer identification number identified for this entity is the same as for EA.  Reitman Dec., ¶ 12.

LANDAU GOTTFRIED & BERGER
LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Hodges & Bastian LLP; Pierce Bainbridge Beck Price & Hecht LLP; Pansky Markle
2  Attorneys at Law; and H. Dean Steward, Esq. *Id.* If Mr. Avenatti can pay at least
3  $10,000 a month in cash for a luxury apartment  at the Intercontinental and his
4  numerous attorneys, he can pay the Receiver to search for and copy requested
5  Information reasonably calculated to enable Avenatti to defend the criminal charges
6  against him or, as the Receiver has suggested as an alternative, hire his own
7  qualified IT specialist (acceptable to the Receiver) to do that work and, if necessary,
8  pay the receivership estate for expenses incurred in supervising that work.

9       **C.    The Receiver's Position re: Avenatti's Access to Eagan Aveantti,**
10           **LLP Information.**

11      As explained above and demonstrated by the email communications
12  submitted with this Opposition (Reitman, Dec., Exs. 2, 4), the Receiver has not
13  denied Avenatti access to Information reasonably calculated to enable him to defend
14  the claims asserted against him in this criminal proceeding. The Receiver's position
15  concerning that access is as follows:

16      1.    **Access to Electronically Stored Information Should be Limited to**
17  **the Forensic Image of EA's Servers.**  All electronically stored Information that
18  may be required to be produced by the Receiver should be made from the forensic
19  image of the EA Servers.  Avenatti does not need access to EA's Servers to obtain
20  any information stored on them because all such information also is on the forensic
21  image of the servers made by the government.  While the process for retrieval of
22  information on those two systems is not the same, such information is reasonably
23  accessible from the forensic image by trained IT personnel.  In fact, substitute
24  counsel for EA in two federal civil class actions (who previously worked with
25  Avenatti) have already used their own independent contractors to recover that
26  information. Reitman Dec., ¶ 10.

27      2.    **Confidentiality.** The Receiver is informed that the parties in this
28  proceeding have executed a confidentiality stipulation and order (the "Order").  The

LANDAU GOTTFRIED & BERGER
LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Receiver requests that the Court order all EA receivership estate Information produced in connection with this proceeding be covered by the Order to protect the interests of the EA estate and EA's former clients.

3. **Client Information from closed, inactive or active matters unrelated to claims asserted against Avenatti in this proceeding.** The Receiver requests that the Court order such Information not be made available to Avenatti, except at the express written and verifiable (by the Receiver) direction of the client to the Receiver. To be effective, such direction shall state if any of such Information will be made available to Avenatti and, if so, that the client has been informed of the right and has been given a reasonable opportunity to seek independent legal advice concerning the possible implications arising from such disclosure.

4. **Client matter Information from closed, inactive or active matters that are related to claims asserted against Avenatti in this proceeding.** The Receiver requests that the Court order Avenatti's legal counsel to provide the Receiver with a written description of the Information requested (by subpoena) and a written explanation of why the Information are reasonably calculated to enable Avenatti to defend the criminal charges against him.

5. **Non-client documents, including EA business and financial records.** The Receiver requests that the Court order Avenatti's legal counsel to provide the Receiver with a written description of the information requested (by subpoena) and a written explanation of why the information is reasonably calculated to enable Avenatti to defend the criminal charges against him.

6. **EA documents that are not electronically stored.** The Receiver requests that the Court order Avenatti's legal counsel to provide the Receiver with a written description of Information requested (by subpoena) and a written explanation of why the Information is reasonably calculated to enable Avenatti to defend the criminal charges against him. EA documents that are not electronically

1  stored, are in several dozen "banker" style boxes located at a third-party storage
2  facility.  The Receiver further requests that the Court order that access to those
3  paper documents be on terms specified by the storage company, that the search be
4  conducted during normal business hours and supervised by an employee of the
5  Receiver's accounting firm at that person's normal hourly billing rate, and that
6  Avenatti make his own arrangements to photocopy Information on-site and at no
7  expense to the receivership estate.

8        7.  **Payment of Costs.**  Finally, the Receiver requests that the Court order
9  all costs incurred by the receivership estate in supervising or searching for and
10  obtaining Information in connection with this proceeding be borne by the person
11  making that request and not by the EA receivership estate.  For this purpose, the
12  Receiver will provide the requesting person with a written estimate of the cost to the
13  receivership estate of using a qualified member of his accounting firm to search the
14  forensic image for the requested Information and the cost of making a paper copy of
15  that Information.  The requesting person shall pay that estimate prior to the Receiver
16  undertaking any work.  If the cost of the work exceeds the estimate, the requesting
17  person shall pay that extra amount to the Receiver prior to the delivery of the paper
18  copy; if the actual cost is less than the estimate, the Receiver will promptly return
19  the unused portion of the estimate payment (without interest) to the requesting
20  person.  Alternatively, the requesting person may select an independent IT specialist
21  (acceptable to the Receiver) to search for and make a copy of requested Information
22  from the forensic copy.  Such work may be supervised by a member of the
23  Receiver's accounting firm, at the requesting person's expense.
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

LANDAU GOTTFRIED & BERGER
LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

13

1  **IV.   CONCLUSION**

2      For all the foregoing reasons, the Motion should be denied.

3

4  Dated:  August 12, 2019                     Respectfully submitted,

5                                              LANDAU GOTTFRIED & BERGER LLP

6                                              By: _____

7                                                      Jack A. Reitman
                                                Attorneys for Brian Weiss, Court Appointed
8                                               Receiver of Eagan Avenatti, LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this district court case.  My business address is:
**LANDAU GOTTFRIED & BERGER LLP, 1880 Century Park East, Suite 1101, Los Angeles, CA 90067.**

A true and correct copy of the foregoing document entitled (*specify*): ***Receiver's Opposition to Motion to Compel Discovery [Declaration of John P. Reitman In Support; and Exhibits Separately Filed]*** will be served or was served in the manner stated below:

### 1.  SERVED BY UNITED STATES MAIL:

On (*date*) **August 12, 2019,** I served the following persons and/or entities at the last known addresses in this district court case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

Juian L. Andre
United States Attorney's Office Central
District of California
312 N. Spring Street
Los Angeles, CA 90012

H. Dean Steward, Esq.
107 Avenida Miramar
Suite C
San Clemente, CA 92672

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 12, 2019 | Vanessah Richmond | /s/ Vanessah Richmond |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |