1  JOHN P. REITMAN (State Bar No. 80579)
   jreitman@lgbfirm.com
2  JACK A. REITMAN (State Bar No. 283746)
   jareitman@lgbfirm.com
3  LANDAU GOTTFRIED & BERGER LLP
   1880 Century Park East, Suite 1101
4  Los Angeles, California 90067
   Telephone: (310) 557-0050
5  Facsimile: (310) 557-0056

6  Attorneys for Brian Weiss,
   Court Appointed Receiver of Eagan Avenatti, LLP
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 UNITED STATES,                    Case No. SA-CR-19-61-JVS

12            Plaintiff,              DECLARATION OF JOHN P.
                                      REITMAN IN SUPPORT OF
13      vs.                           RECEIVER'S OPPOSITION TO
                                      MOTION TO COMPEL;
14                                    EXHIBITS
15 MICHAEL AVENATTI,

16            Defendant.
                                      Hearing Date, Time, and Location:
17                                    Date:    August 26, 2019
                                      Time:    8:30 a.m.
18                                    Place:   Courtroom 10C
                                               411 W 4th Street
19                                             Santa Ana, CA 92701
20

21

22

23

24

25

26

27

28

I, John P. Reitman, declare as follows:

1.     Unless otherwise stated, I have personal knowledge of the facts set forth below; and if called as a witness, I could and would competently testify thereto under oath. I am a limited liability partner in Landau Gottfried & Berger LLP, counsel for Brian Weiss, federal court appointed receiver (the "Receiver") for Eagan Avenatti, LLP (*In re Eagan Avenatti, LLP,* 8:18-cv-01644-VAP-KES, pending in the United States District Court, Central District of California – Los Angeles Division) [Docket No. 53]. I make this declaration in support of the Receiver's opposition to defendant Michael Avenatti's motion (the "Motion") to compel "the government to give him 'unfettered, unmonitored access to the Eagan Avenatti LLP servers'".

2.     The Receiver was appointed by the District Court in *In re Eagan Avenatti, LLP* (Central District of California, 8:18-CV-01644-VAP-KES) via stipulation on February 13, 2019 (the "Receivership Order"). A true and correct copy of the Receivership Order which I obtained from the court docket is attached as Exhibit 1.

3.     As set forth in the Receivership Order (¶¶ 27, a and b), Avenatti had a duty to cooperate with the Receiver and deliver the property of EA to the Receiver. I am informed and believe based on my participation in telephone conversations with Avenatti and his attorney, James Bastian, Esq, and my having read emails from them to me and to the Receiver that Avenatti did not do so, at first claiming that he was "putting the information together" and had access to EA's servers (the "EA Servers").

4.     In mid-March, I received a copy of and read an Asset Purchase Agreement dated effective as of August 1, 2018, between EA and the X-Law Group PC that Avenatti had supposedly caused EA to sell the EA Servers and other property to X-Law Group. I contacted X-Law Group by telephone and spoke with an individual who identified himself as Filippo Marchino and the firm's principal.

2

1  Mr. Marchino told me that the firm had entered into the purchase agreement for
2  those assets but that the EA Servers were never delivered, and he did not know who
3  had them or where they were located.

4       5.    Around this time, I participated in additional telephone conversations
5  with Avenatti and Mr. Bastian and read additional emails from them in which they
6  continuing to claim that Avenatti was still "putting information together" and then
7  that Avenatti "didn't know where the servers were", a claim Avenatti continued to
8  make until April 2, 2019.  On April 2, Mr. Bastian contacted me and claimed that
9  they (counsel and Avenatti) had "discovered" a business card for an IT company
10  called mixinIT.  A true and correct copy of my email exchange with Mr. Bastain
11  regarding this discovery is attached as Exhibit 2.

12       6.    On or about April 2, 2019, I spoke by telephone with Kate Corrigan,
13  Esq., a member of Corrigan Welbourn Stokke, APLC, who told me that she was an
14  attorney for mixinIT, and we arranged for the turnover of the servers.  Ms. Corrigan
15  emailed to me documents showing that mixinIT (i) had taken possession of the EA
16  Servers on or about November 19, 2018; (ii) had been paid $1,000 a month for their
17  upkeep, first by Avenatti (via EA), and then by The X-Law Group; and (iii) had
18  been instructed by Ms. Judith Regnier (EA's then office manager) to change the
19  billing information to X-Law Group on February 26, 2019 (shortly after the
20  Receivership Order was entered).  Those documents also showed that through mid-
21  March, 2019 Ms. Regnier continued to instruct mixinIt concerning who could have
22  access to the servers.  A true and correct copy of the mixinIT invoices and
23  communications from Ms. Regnier to mixinIT from November 2018 onward that
24  Ms. Corrigan sent to me are attached as Exhibit 3.

25       7.    The day after the Receiver and I learned that mixinIt had access to the
26  EA Servers, we instructed mixinIT to release the EA Servers to the IRS-CI, so that
27  the government could make a forensic copy.  Before doing so, I spoke with
28  attorneys at the United States Attorney's Office, and confirmed that (i) the

LANDAU GOTTFRIED & BERGER
LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

information contained in the EA Servers would be maintained without alteration; (ii) creation of the forensic copy would not in any way interfere with the integrity of the data contained in the servers; and (iii) there was a protocol for maintaining the attorney-client privilege with respect to all attorney-client communications contained in the servers.

8.     Based on subsequent communications which I had with attorneys at the United States Attorney's Office, a representative of the IRS and the Receiver, I am informed and believe that the IRS-CI made forensic image of the EA Servers and delivered the servers themselves and a forensic image of the information on the servers over to the Receiver.  Since that time, the servers have been dormant, as the EA receivership estate lacks the funds to house, set up, restart and maintain them.

9.     Since that time, Avenatti has demanded (on multiple occasions) "unfettered" access to the EA Servers, and each time the Receiver has rebuked him, stating that Avenatti may have "reasonable" access to information by (i) paying the cost to search for and copy that information; (ii) providing to the Receiver a list of the categories of information he wants access to; and (iii) providing an explanation as to why he believed he was entitled to that information.  In the alternative, the Receiver has offered that Avenatti may have his own qualified independent contractors (acceptable to the Receiver) perform that work, but those persons will be supervised by the Receiver's accountants, at Avenatti's expense.  A true and correct copy of my correspondence with Avenatti's various attorneys are attached as Exhibit 2 (previously identified) and Exhibit 4.

10.     The Receiver and I have already worked with replacement counsel (who previously worked with Avenatti) for two major cases in making copies on the terms set forth in the preceding paragraph using replacement counsel's independent IT expert to search the forensic image of the EA Servers' contents.

11.     Based on representations made by Avenatti and public court filings which I have read, I am informed and believe that Avenatti did not own any interest

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

1  in EA directly; instead, he owned EA indirectly though Avenatti & Associates.

2  Attached as Exhibit 5 is a true and correct copy of Family Court orders pursuant to

3  which Avenatti transferred both his ownership in EA and Avenatti & Associates to

4  his former wife, Lisa Storie, in their pending divorce proceeding.

5       12.   Based on my review of EA banking records for EA and my

6  involvement in the preparation and filing of the Receiver's monthly Interim Reports

7  to the District Court case, I am informed and believe that in the months preceding

8  the creation of the receivership estate, Avenatti effectively drained EA's bank

9  accounts and diverted funds payable to it prior to and contemporaneously with

10  stipulating to the appointment of the Receiver.  For example, the Receiver's First

11  Interim Report to the District Court, which I assisted the Receiver in preparing,

12  showed zero funds available to the EA Receivership Estate.  Additionally, shortly

13  after the Receiver was appointed, I learned that EA was representing Medline, Inc.

14  in connection with *Medline Industries, Inc. v. Kimberly-Clark Corporation, et al.*,

15  1:17-cv-02032-SCJ, United States District Court for the Northern District of

16  Georgia.  I learned from reading Medline/EA documents that (i) EA was entitled to

17  a monthly $35,000 cost retainer; (ii) on November 27, 2018, Judith Regnier (EA's

18  then office manager) directed Medline to change the payee on the checks from

19  Eagan Avenatti, LLP (per the fee agreement with them) to Avenatti LLP, by

20  providing Medline with a new W-9 form (I believe, however, that Avenatti LLP did

21  not exist because I could find no record of its existence and the taxpayer

22  identification number for it is the same number used for EA); and (iii) those checks

23  were still mailed to EA's address at 520 Newport Center Drive, Suite 1400,

24  Newport Beach, CA 92660.  A true and correct copy of the redacted fee agreement

25  and communications between Ms. Regnier and Medline which were provided to me

26  by Medline are attached as Exhibit 6.

27       13.   As set forth in Exhibit 6: (i) on January 25, 2019, a few weeks before

28  the Receiver was appointed, Ms. Regnier contacted Medline and requested that all

LANDAU GOTTFRIED & BERGER LLP ATTORNEYS AT LAW LOS ANGELES, CALIFORNIA

future payments be sent to 4491 Rainbow Lane, Yorba Linda, CA 92886, Ms. Regnier's home address; and (ii) on February 21, 2019, eight days after the Receiver had been appointed, Ms. Regnier yet again contacted Medline to ensure the next check (for $58,295.38) would be sent to her Yorba Linda address.

14.   On July 19, 2019, the Law Offices of Jason Frank (a major secured creditor of both EA and Avenatti personally) sent a notice of subpoena to various parties via email, including Avenatti and the Receiver; the subpoena was to the Intercontinental Hotel in Century City, California, requesting the method by which Avenatti paid to stay there.  Avenatti responded to the email with the statement "I see desperation has set in.  I paid cash.  Nice try."  A true and correct copy of this email is attached as Exhibit 7.

15.   Avenatti's current mailing address is at "Ten Thousand," a recently completed high rise luxury apartment building at 10000 Santa Monica Blvd, 21st Floor.  Apartments in that building start at $9,900 a month for the smallest unit.  I ascertained this value by going to www.apartmentlist.com and looking up the listing for Ten Thousand.  Mr. Avenatti also has retained a number of attorneys to represent him, including Shulman Hodges & Bastian LLP; Pierce Bainbridge Beck Price & Hecht LLP; Pansky Markle Attorneys at Law; and H. Dean Steward, Esq.

16.   The Receiver was served with a copy of the Motion by defendant on August 8, 2019 by fax.  A true and correct copy of that fax is attached as Exhibit 8.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on August 12, 2019, at Los Angeles, California.

John P. Reitman

**EXHIBIT 1**

EXHIBIT 1

1   Scott H. Sims, State Bar No. 234148
2   Andrew D. Stolper, State Bar No. 205462
    FRANK SIMS & STOLPER LLP
3   19800 MacArthur Boulevard, Suite 855
    Irvine, California 92612,
4   Telephone:    (949) 201-2400
    Facsimile:    (949) 201-2401
5   astolper@lawfss.com
    ssims@lawfss.com
6
7   Attorneys for Judgment Creditor
    JASON FRANK LAW, PLC

8

9

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13  In re                              Case No.  8:18-CV-01644-VAP-KES

14  EAGAN AVENATTI, LLP,               **JOINT STIPULATION AND ORDER RE
                                       APPOINTMENT OF RECEIVER AND
15  Debtor.                            RESTRAINING ORDER**

16

17

18

19

20

21

22

23

24

25

26

27

28

                              -1-

**STIPULATION**

      This Stipulation is entered into by and between Judgment Debtor Eagan Avenatti, LLP ("EA") and Michael Avenatti ("Avenatti"), on the one hand, and Judgment Creditor Jason Frank Law, PLC ("JFL"), on the other hand (collectively, the "Parties").

      WHEREAS, JFL has a judgment against EA in the amount of $10,000,000.00, plus accruing interest at $564.38 per day (since May 22, 2018) and reasonable attorney fees and costs incurred by JFL in enforcing the judgment (the "Judgment");

      WHEREAS, on February 7, 2019, this Court ordered EA and Avenatti to appear for a judgment debtor examination on February 14, 2019 at 9:30 a.m. in Courtroom 6D of this Court (Doc. 50);

      WHEREAS, on February 12, 2019, JFL filed a Motion for Appointment of Receiver and Restraining Order ("Motion") (Doc. No. 51);

      WHEREAS, EA and Avenatti have stipulated and agreed to the relief requested in the Motion and have further agreed that the Magistrate Judge Karen E. Scott shall have the jurisdiction and authority to enter the attached [Proposed] Order Appointing Receiver and Issuing Restraining Order (the "Order"); and

      WHEREAS, upon entry of the Order, JFL has agreed to withdraw the Motion and all pleadings and exhibits relating thereto and consent to the rescheduling of the judgment debtor exam to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court.

      ACCORDINGLY, the Parties stipulate and agree as follows:

1. The Parties, and each of them, stipulate to the terms of the Order;

2. The Parties, and each of them consent to the jurisdiction of the Magistrate Judge Karen E. Scott to enter the Order and to supervise the Receivership;

3. Upon entry of the Order, the Motion is deemed withdrawn without prejudice; and

4. Upon entry of the Order, the judgment debtor exam of EA and Avenatti is continued to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court, located at 411 W. 4th Street, Santa Ana, California 92701.

Case 8:18-cv-01644-VAP-KES   Document 53   Filed 02/13/19   Page 3 of 14   Page ID #:1768

1    IT IS SO STIPULATED

2

3    Dated: February 13, 2019                    FRANK SIMS & STOLPER LLP

4

5                                        By:   /s/ Scott H. Sims
                                               Scott Sims, Esq.
6                                              Attorneys for Judgment Creditor
                                               Jason Frank Law, PLC
7

8    Dated: February 13, 2019                    EAGAN AVENATTI, LLP

9

10                                       By:
                                               Managing Partner
11                                             Judgment Debtor Eagan Avenatti, LLP

12

13

14   Dated: February 13, 2019                    MICHAEL J AVENATTI

15

16                                       By:
                                               Michael J. Avenatti
17                                             In his Personal Capacity

18

19

20

21

22

23

24

25

26

27

28

                                         -3-                    STIPULATION AND ORDER RE
                                                                APPOINTMENT OF RECEIVER AND
                                                                RESTRAINING ORDER

EXHIBIT 1
3

## ORDER APPOINTING RECEIVER AND ISSUING RESTRAINING ORDER

Pursuant to the Joint Stipulation between Judgment Debtor Eagan Avenatti, LLP ("EA") and Michael Avenatti ("Avenatti"), on the one hand, and Judgment Creditor Jason Frank Law, PLC ("JFL"), on the other hand (collectively, the "Parties") and for good cause shown:

IT IS HEREBY ORDERED:

1. **The Motion.** JFL's Motion for Appointment of Receiver and Restraining Order (Doc. 51) and all pleadings and exhibits related thereto are deemed withdrawn without prejudice.

2. **Judgment Debtor Exam.** The judgment debtor exam of EA and Avenatti currently scheduled for February 14, 2019 is hereby continued to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court, located at 411 W. 4th Street, Santa Ana, California 92701.

3. **The Amount of Indebtedness.** The principal amount of EA's indebtedness to JFL under the Judgment is $10 million, plus accruing interest at $564.38 per day since May 22, 2018, reasonable attorney fees and costs incurred by JFL in enforcing the judgment, as well as all costs associated with the receivership (the "Total Indebtedness to JFL").

4. **Appointment of Receiver.** It is hereby ordered that Brian Weiss is appointed as Receiver of EA pending further Order of this Court.

5. **Receiver's Oath and Bond.** The Receiver shall immediately, and before performing any duties (a) execute and file a Receiver's oath; and (b) the Receiver shall not be required to file the bond required by Code of Civil Procedure section 567(b) pursuant to consent and agreement of EA and Avenatti.

6. **Receiver's Fees.** The Receiver may charge for the Receiver's services no more than $495.00 per hour.

7. **Management Company.** The Receiver may employ Force Ten Partners, LLC ("Force 10"), where the Receiver is employed, to assist with the Receiver's duties at the Receiver's direction, including but not limited to accounting, reporting, asset

investigation and other tasks.  The members of Force 10, other than the Receiver, shall be compensated at hourly rates ranging from $225 to $495 per hour.

8. **Disclosure.**  The Receiver shall immediately disclose to all parties any financial relationship between the Receiver and any company hired to assist in the management of the Receivership property.

9. **General Duties.**  After qualifying, the Receiver shall have the power to take possession of and manage the business of EA and its tangible and intangible property with all the usual powers, rights and duties of receivers appointed by this Court or otherwise defined by statute, including but not limited to the power to operate and conduct EA in the ordinary course of its business and collect fees, costs and income owed to EA, except that the Receiver will not be authorized to provide legal services on behalf of EA's clients.

10. **Inventory.**  Within 45 days after qualifying, the receiver shall file an inventory of all property possessed under this Order.  The Receiver shall file a supplemental inventory of all subsequently obtained property

11. **Expenditures.**  The Receiver shall expend money coming into his possession to operate and preserve EA's business and only for the purposes authorized in this Order. Unless the Court orders otherwise, the Receiver shall to the extent practical hold the balance in interest-bearing accounts in accordance with California Code of Civil Procedure section 569.

12. **Monthly Accounting of Receiver's Income, Expenses and Fees.**
    a. The Receiver shall each month prepare and serve on the parties, but not file, an accounting of the income and expenses incurred in the administration of EA, including the Receiver's fees and expenses.  The monthly reports shall provide a narrative of the material events, a financial report and a statement of all fees paid or due to the Receiver, Force 10 and any other professionals retained, showing the itemized services, broken down in $1/10^{th}$ hour increments.  The report shall state the hourly fees and any other basis for the fees.

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

b. The Receiver may pay the Receiver's and Management Company's own fees and expenses only by the following procedures:

    i. By serving on all parties a notice of intent to pay to which no objection is served on the Receiver within 20 days of the date the notice is served.

    ii. By serving and filing a request for interim payment, which the Court then approves.

    iii. By obtaining and filing an agreement among all the parties approving the payment, which the Court then approves.

    iv. By filing the Receiver's final accounting and report, which the Court then approves.

c. The Receiver shall not reimburse the Receiver for the Receiver's general office administration expenses or overhead without Court approval. These expenses include, for example, office supplies and employee payroll, benefits and taxes.

12. **Management.**

a. The Receiver shall operate EA and take possession of all accounts relating to EA and its property.

b. The Receiver may hire legal counsel, accounting and tax professionals at normal and customary rates to represent the Receiver in his duties, provided however, legal counsel retained to pursue fraudulent and avoidable actions shall be on a contingency basis.

c. The Receiver may do all the things, and incur the risks and obligations, ordinarily done or incurred by owners, managers and operators of businesses and property similar to that possessed by the Receiver, except that the Receiver shall not make any capital improvements to property without prior Court approval and the Receiver shall not provide legal services to EA's clients.

13. **Bank Accounts.**

a. The Receiver may establish accounts at any financial institution insured by an agency of the United States government that are not parties to this proceeding and

-6-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
6

shall deposit in those accounts any funds received in connection with EA's business.

   b.  The Receiver shall have control of, and be the sole authorized signatory for all accounts of EA and client trust accounts or IOLTA accounts, including all accounts at any bank, title company, escrow agent, financial institution or brokerage firm which has possession, custody or control of any assets or funds of EA, or which maintains accounts of the Receiver, or which maintains accounts where EA's employees and agents in such capacity have signatory authority, including but not limited to Michael Avenatti and Judy Regnier.

   c.  The Receiver is authorized to open and close bank accounts, including client trust accounts or IOLTA accounts. For the avoidance of doubt, no other parties are permitted to open and close bank accounts in the name of EA.

14. **Additional Powers and Duties of the Receiver.** The Receiver shall be authorized to and shall perform the following duties and functions:

   a.  Take possession of all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets without limitation;

   b.  Provide a copy of the signed receivership order to any party the Receiver deems necessary in order to direct payment to the Receiver, manage the Receivership Assets, and to perform investigations;

   c.  Be the sole signatory to any contract of EA during the receivership;

   d.  The ability to investigate fraudulent transfers and avoidance actions and to pursue litigation;

   e.  The power to sell assets upon Court approval;

   f.  Make payments toward the Judgment upon Court approval;

   g.  Make all inquiries EA might have made;

   h.  Bring and defend actions in his own name, as Receiver;

i.   Endorse and deposit any checks, money, negotiable instruments or commercial paper through which EA is compensated in any manner whatsoever into the Receivership account;

j.   Pay all necessary costs and expenses to operate EA in order to maximize its assets;

k.   Manage the business affairs of EA, including monitoring and approving necessary expenses needed to operate the business and accepting new business contracts;

l.   Have access to and become the "administrative user" for all of EA's software programs, servers and website;

m.   Maintain detailed accounting records of all deposits to and all expenditures from the Receiver's bank account until the termination of the Receivership;

n.   Disburse funds to JFL and/or EA, or any creditor of EA as ordered by this Court;

o.   Conduct investigation and discovery, as may be necessary to locate and account for all of the assets of or managed by EA, including receiving, collecting and reviewing all mail addressed to EA, wherever directed;

p.   Take such action as is necessary and appropriate to preserve and take control of and to prevent the waste, dissipation, loss of value, concealment, or disposition of any assets of or managed by EA;

q.   Enter into settlements on behalf of EA with the approval of the Court; and

r.   Hire counsel to represent EA's interests in any application for fees and costs in any case in which EA may be entitled to reimbursement of fees and costs, including but not limited to those cases in which EA attorneys or resources where provided; and

s.   Have the sole authority regarding whether to file a petition for bankruptcy.

15. **Insurance.**

a.   The Receiver shall determine whether there is sufficient insurance coverage.

-8-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
8

    b.  The Receiver shall notify the insurer that the Receiver is to be named as an additional insured on each insurance policy on the property.

    c.  If the Receiver determines that the property does not have sufficient insurance coverage, the Receiver shall immediately notify the parties and shall procure sufficient insurance.

    d.  If the Receiver does not have sufficient funds to obtain insurance, the Receiver shall seek instructions from the Court on whether to obtain insurance and how it is to be paid for.

    e.  The Receiver shall not be liable for EA's failure to carry or obtain adequate insurance.

16. **Taxpayer ID Numbers.**  The Receiver may use any federal taxpayer identification numbers relating to EA and its property for any lawful purpose.

17. **Court instructions.**  The Receiver and the parties may at any time apply to this Court for further instructions and order and for additional powers necessary to enable the Receiver to perform his duties properly.  Nothing in this order shall be deemed a waiver of or preclude any party from requesting on notice to all other parties, modification of the order and all other parties shall be entitled to oppose such request.

18. **EA Responsible for Fees and Expenses of the Receivership.**  EA shall be responsible for all fees and expenses associated with the receivership and such costs will be added to the Judgment pursuant to California Code of Civil Procedure section 685.070(a)(5).

19. **Termination of the Receivership.**  The receivership shall not terminate until the Total Indebtedness to JFL is fully satisfied and/or the Court has determined the receivership shall end.

20. **Notification of Termination.**  JFL shall notify the Receiver in writing within 48 hours of any event within JFL's knowledge that terminates the receivership.

21. **Receiver's Final Report and Account and Discharge.**

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
9

a. *Motion required.*  Discharge of the Receiver shall require a Court order upon noticed motion for approval of the Receiver's final report and account and exoneration of the Receiver's bond, if any.

b. *Time.*  Not later than 60 days after the receivership terminates, the Receiver shall file, serve and obtain a hearing date on a motion for discharge and approval of the final report and account.

c. *Notice.* The Receiver shall give notice to all persons of whom the Receiver is aware who have potential claims against EA.

d. *Contents of Motion.*  The motion to approve the final report and account and for discharge of the Receiver shall contain the following.

  i. *Declaration(s).*  Declaration(s) (1) stating what was done during the receivership, (2) certifying the accuracy of the final accounting, (3) stating the basis for the termination of the receivership, and (4) stating the basis for an order for the distribution of any surplus or payment of any deficit.

  ii. *Accounting summary.*  A summary of the receivership accounting, which shall include (1) the total revenues received, (2) the total expenditures identified and enumerated by major categories, (3) the net amount of any surplus or deficit and (4) evidence of necessary supporting facts.

22. **Notice to Receiver.**  JFL shall promptly notify the Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in the action and their counsel.  The parties shall give notice to the Receiver of all events that affect the receivership.

23. **Consent to Convert Receiver to Bankruptcy Trustee.**  In the event of a bankruptcy, EA, Avenatti and JFL agree and stipulate that Receiver shall serve as the Chapter 11 Trustee pending confirmation by the Bankruptcy Court, or as the Chapter 7 Trustee if permitted by the Bankruptcy Court.

24. **Bankruptcy Receiver's Duties.**  If the Receiver receives notice that an involuntary bankruptcy has been filed and part of the bankruptcy estate includes property that is the subject of this Order, the Receiver shall have the following duties:

-10-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
10

a. *Turn over property if no relief from stay will be sought.* The Receiver shall immediately contact the parties who stipulated to the appointment of the Receiver and determine whether either party intends to move in the bankruptcy court for an order for (i) relief from the automatic stay, and (ii) relief from the Receiver's obligations to turn over the property (11 U.S.C. § 543). If neither party intends to make such a motion, the Receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed that is not the Receiver and otherwise comply with 11 United States Code section 543.

b. *Remain in possession pending resolution.* If either of the parties who stipulated to the receivership intend to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the property, the Receiver may remain in possession and preserve the property pending the ruling on those motions (11 U.S.C. § 543(a)). The Receiver's authority to preserve the property shall be limited as follows:

   i. The Receiver may continue to collect rents and other income;

   ii. The Receiver my make only those disbursements necessary to preserve and protect the property; and

   iii. The Receiver shall not execute any new leases or other long-term contracts without Court approval.

c. *Turn over property if no motion for relief is filed within 10 days after notice of the bankruptcy.* If the parties who stipulate to the receivership fail to file a motion within 10 court days after their receipt of notice of the involuntary bankruptcy filing, the Receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession and otherwise comply with 11 United States Code section 543.

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
11

d. *Retain bankruptcy counsel.* The Receiver may petition the Court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

25. **Failure to Turn Over Property.** A receiver who fails to turn over property in accordance with this Order shall not be paid for time and expenses after the date the Receiver should have turned the property over.

26. **Liability of the Receiver.** Except for an act of gross negligence or intentional misconduct, the Receiver shall not be liable for any loss or damages incurred by EA, its officers, shareholders, agents, servants, partners, employees, contractors, creditors, counsel or any other persons or entities by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of his duties.

## RESTRAINING ORDER / INJUNCTION

27. **The Court orders EA and Avenatti** to do the following:

a. **Turn Over Property.** Immediately turn over possession of all property of EA to the Receiver when the appointment becomes effective, including but not limited to all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets and all funds in EA accounts, including client trust accounts.

b. **Access to EA's offices and computer systems.** Immediately turn over to the Receiver all keys and passwords relating to the property and grant the Receiver unfettered access to EA and all premises related thereto, and all EA computer systems.

c. **Insurance.**

i. Immediately advise the Receiver about the nature and extent of EA's insurance;

ii. Immediately name the receiver as an additional insured on each insurance policy; and

iii. DO NOT cancel, reduce or modify the insurance coverage.

-12-

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

EXHIBIT 1
12

d.  **Notify Receiver of Clients and Cases.**  Within 7 days after the appointment of
the Receiver, EA and Avenatti, and office manager Judy Regnier must meet
with the Receiver and JFL and disclose all current clients and cases being
managed by EA and all cases in which the services of an EA attorney or EA
resources were provided, whether the case was filed in the name of EA or
another law firm.

e.  **Respond to Inquiries.**  Immediately respond to all inquiries of the Receiver
pertaining to EA.

f.  **Disclosure of Bank Accounts.**  Immediately disclose to the Receiver all
accounts of EA and client trust accounts, including all accounts at any bank,
title company, escrow agent, financial institution or brokerage firm which has
possession, custody or control of any assets or funds of EA, or which
maintains accounts of the Receiver, or which maintains accounts where EA's
employees and agents in such capacity have signatory authority, including but
not limited to Michael Avenatti and Judy Regnier.

g.  **Payment.**  Pay all amounts due to the Receiver.

h.  **Cooperation.**  Avenatti shall fully cooperate with the Receiver for the duration
of the receivership, regardless of whether he is employed by or affiliated with
EA, including but not limited to directing Judy Regnier and any other former
employees of EA to likewise cooperate with the Receiver.

28. **Enjoinment.**  EA, and its owners, partners, employees, agents, managers, attorneys
and all persons and entities acting in concert with EA are hereby enjoined and cannot:

a.  Expend, disburse, remove, transfer, assign, sell, convey, devise, pledge,
mortgage, create a security interest in, encumber, conceal or in any manner
whatsoever deal in or dispose of the whole or any portion of EA's assets,
including but not limited to its rights to attorney fees and costs from any
client or in connection with any cases in which EA attorneys or resources
were used;

b.   Interfere in any way, directly or indirectly, with the Receiver's performance of his/her duties and responsibilities and the exercise of his/her powers and/or doing any act which may impair, defeat, divert, prevent or prejudice the preservation of EA's assets or the proceeds thereof;

c.   Commit or permit any waste of EA's assets or any portion thereof, or suffer or commit or permit any act on EA's assets or any part thereof in violation of law;

d.   Conceal or withhold from the Receiver any EA assets, including any client trust funds, real property, physical property, indirect or beneficial ownership interests, or funds;

e.   Do any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of EA's assets;

f.   Demand, collect, compromise, trade, receive or spend any portion or proceeds of EA's assets; and

g.   Fail to pay over to the Receiver any monies whenever received, presently in the possession, custody or control of EA, its owners, agents, representatives, servants, assigns and all those acting in concert therewith.

29. Nothing in this order excuses or alters any ethical duties that EA and/or EA's attorneys may have to their clients.

Dated: 2/13/2019

*Karen E. Scott*

U.S District Court Magistrate Judge

-14-

EXHIBIT 1
14

STIPULATION AND ORDER RE
APPOINTMENT OF RECEIVER AND
RESTRAINING ORDER

**EXHIBIT  2**

EXHIBIT 2

**John Reitman**

| | |
|---|---|
| **From:** | John Reitman |
| **Sent:** | Tuesday, June 4, 2019 12:14 PM |
| **To:** | Jim Bastian |
| **Cc:** | Jack Reitman; Michael Avenatti |
| **Subject:** | FW: Urgent: EA Servers and Documents |

Jim, as previously requested, all communications from your client (see the following email from Mr. Avenatti) should be made through you.

As to Mr. Avenatti's request:

1. Pursuant to an Order to Deliver Specific Property filed in the Family Law Court on April 4, 2019, filed in Avenatti v. Lisa Storie-Avenatti, Orange County Superior Court Case No. 17D00930, Mr. Avenatti was required to immediately turnover, among other things, 100% of his personal ownership interest in EA (para. 1) and 100% of the shares of A&A (para. 2) to be applied toward satisfaction of Ms. Storie's judgment against him. Accordingly, on what basis does Mr. Avenatti still claim to "own" EA?

2. Mr. Avenatti is not entitled the broad range of documents he has requested. As to client documents, they are owned by the clients. Subject to para. 4 below, the Receiver will make client documents available to those clients who request them in a signed, verifiable writing delivered to the Receiver. With such request, the Receiver will require a reasonable description of the requested files/documents and where they may be found before undertaking any work. As you know, there are voluminous electronically stored documents and approximately 480 un-inventoried boxes of paper documents stored at Affiliated Storage (that entity also is owed storage fees which may need to be paid before it will release documents).

3. As for non-client documents, subject to para. 4 below, the Receiver will make a copy of non-client EA documents available to Mr. Avenatti that are necessary or reasonably appropriate for him to continue his representation of identified, existing clients or for his defense of the criminal charges. Accordingly, the Receiver will require a written reasonable description of the files/documents requested and a written reasonable explanation of why those files/documents are necessary or appropriate for those purposes before undertaking any work. The Receiver also reserves the right to require a fully signed confidentiality agreement(on terms acceptable to him) covering requested EA documents.

4. When Mr. Avenatti executed the Joint Stipulation and Order re Appointment of Receiver and Restraining Order, he had in front of him all the information he needed to determine the consequences of that action for EA's clients and himself. The Restraining Order made clear that the Receiver would, among other things, "[14.a] [t]ake possession of all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets . . . ." and "[14.l] [h]ave access to and become the "administrative user" for all of EA's software . . . ." Instead of giving the Receiver access to EA's servers, Mr. Avenatti at various times represented to the Receiver that (1) he (Avenatti) had access to the servers; (2) he didn't have such access; (3) he didn't know where the servers were; and (4) EA had sold the servers to X-Law Group. In fact, however, Mr. Avenatti had caused EA's computer servers to be moved from EA's Newport office to a third-party vendor, to store and maintain, and EA paid the vendor for that service. Mr. Avenatti continued that deception until April 2, approximately 75 days after the Receiver was appointed by the District Court. Throughout that 75-day period, Mr. Avenatti continued to have what amounts to exclusive control over all EA information then necessary for him to continue his representation of its clients or to permit the clients to transfer their matters to substitute counsel. During that entire time, Mr. Avenatti could have but apparently chose not to inform EA's clients of the status of their respective files or to make those files available

1

EXHIBIT 2<br>15

to them.  Instead, he stopped EA from paying for the maintenance and storage of the servers.  He also made sure that EA had no cash to enable it to operate. At this time, the receivership estate still has no funds.

The Receiver is not obligated to and will not, at his own expense, make documents available to EA's former clients or to Mr. Avenatti.  Upon receipt of a proper request for documents (as outlined above) or a court order requiring the production of documents, the Receiver will make a good faith estimate of the cost (supervision and labor, at the customary hourly rates for persons employed by Force 10 Partners) and out of pocket expenses to produce the requested documents.  The Receiver also will require, in advance of doing any work on the production, pre-payment of the estimated cost of the production.  If the estimated cost of the production at any time exceeds the deposit, the Receiver may require the deposit of additional funds.  The Receiver will return any deposited funds not used for a production and will not release any requested documents until all costs of a production have been paid.

The Receiver may permit outside IT specialists or other vendors to do document retrieval, imaging and copying work on terms acceptable to him to ensure that electronically stored or imaged information and paper documents are not altered or damaged and at no cost to the Receiver or the receivership estate.  The Receiver will not permit the review or production of documents unless it is supervised by a Force 10 representative or other person acceptable to him (which supervision shall be at the expense of the requesting party).

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1880 Century Park East, Suite 1101
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-691-7377
Fax: 310-557-0056
E-mail: jreitman@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Michael Avenatti <m@thefight.us>
**Sent:** Tuesday, June 4, 2019 4:42 AM
**To:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Dean Steward <deansteward7777@gmail.com>; Ellen Pansky <epansky@panskymarkle.com>; Jack Reitman <jareitman@lgbfirm.com>; Jim Bastian <JBastian@shbllp.com>; John Reitman <jreitman@lgbfirm.com>; Jose M. Quiñon <jquinon@quinonlaw.com>; Scott Srebnick <scott@srebnicklaw.com>
**Subject:** Urgent: EA Servers and Documents

Brian:

As you know, for over two months now, I have been trying to gain access to the EA servers and related documents.  Despite multiple requests and the fact that I own 100 percent of the law firm, you have refused to provide me any access.

2

EXHIBIT 2
16

To be clear, since March 26 I have not had access to my prior email, correspondence with clients, settlement agreements, client accountings, case files, financial records, etc.  I need access to this information in order to continue to service clients and attend to their matters.  I also urgently need access in order to defend myself in the three criminal matters pending against me as well as the newly filed State Bar matter.

Demand is once again made that you provide me access to ALL of the books and records and electronic files of EA in their entirety and that it be done by the close of business today.  Time is of the essence and there is no legitimate reason as to why you should continue to refuse to provide me unfettered access to this information.

Please inform me as to when today I can begin accessing the information.

Thank you.

Michael

--
Michael J. Avenatti

EXHIBIT 2
17

**John Reitman**

| | |
|---|---|
| **From:** | John Reitman |
| **Sent:** | Monday, May 6, 2019 6:02 PM |
| **To:** | Jim Bastian |
| **Cc:** | Brian Weiss |
| **Subject:** | RE: EA servers |

Jim:  Your 1st request: (1) On whose behalf and for what purpose is this information requested?  (2) If this request relates to client files, the Receiver will require the written authorization of the client or, if the matter is active, written confirmation from the attorney of record for the client before releasing the information. (3) Are you requesting access to the servers themselves?  If so, you should understand that they are not set up and operable. (3) If you are requesting forensic images of information on the servers, are you requesting is a copy of everything or particular sets of information? (4) If the latter, we will need a list of the information requested.  (5) The Receiver will not relinquish control of the servers or forensic images. All copies will need to be made in-house or by outside vendors acceptable to him and paid for (estimated labor and out of pocket expenses) in advance. (6) When the Receiver has answers to his questions 1-4, he will be able to more fully respond to your request.

Your 2nd request/question:  (1) The Receiver and I previously discussed this with you and explained the Receiver's position to the Bankruptcy Court in connection with the motion to dismiss the case that Mr. Avenatti filed without authority to do so.  The Receiver continues to consider his options.


John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1880 Century Park East, Suite 1101
Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Monday, May 6, 2019 3:39 PM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** 'Brian Weiss (bweiss@force10partners.com)' <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA servers

1

EXHIBIT 2
18

John:

I wanted to follow-up regarding two open issues that have not yet been addressed apparently.

First, I understand that Brian has been provided a mirror image of the servers that were being serviced and stored with MixinIT. We have not been able to get access to the servers and if this is correct, I would like to obtain a copy (at Michael's expense). Time is of the essence on this, so if you can confirm, we can make arrangements to take care of this right away.

Next, we had suggested that the receiver consider a chapter 11 for EA to address various pending claims and lawsuits because you don't have funds to defend these claims and actions. As an alternative, it would seem appropriate to ask the District Court to stay all actions against EA and necessary defendants. It is very common in my experience for stays of litigation claims against the entity subject to the receivership estates to be issued, especially in a situation like this where funds are scarce. Have you considered this option?

I look forward to your prompt response.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

 SHULMAN
HODGES &
BASTIAN LLP

**Orange County -** 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000
**Inland Empire –** 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Tuesday, April 2, 2019 4:00 PM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** 'Brian Weiss (bweiss@force10partners.com)' <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA servers

Thank you for the information. Who had the business card, who removed the servers from EA's office and who gave the servers to the vendor? Please inform Mr. Avenatti that (1) he is not to contact the vendor without Mr. Weiss' written authorization or do anything else that might interfere with the Receiver's efforts to recover the servers and (2) any such direct or indirect action by him will result in Mr. Weiss filing an OSC for violating the Receivership Order.

2

EXHIBIT 2
19

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-691-7377
Fax: 310-557-0056
E-mail: jreitman@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Tuesday, April 2, 2019 3:22 PM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** 'Brian Weiss (bweiss@force10partners.com)' <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list
**Importance:** High

Gentlemen:

I have been able to get information on the location of the servers.  See attached image of a business card we located.  The servers are housed with a third party data storage vendor apparently located in Newport Beach called mixinIT.  We have attempted to contact this entity by telephone and in person but the phone number provided goes to an anonymous google voice mail (my messages have gone unreturned) and the physical location for the address on this card is a mail box.

I have conferred with Judy Regnier and this is the only information she has on this as all her other information was stored on her phone or computers which were seized by Federal agents.

If you are able to get access to or control over the servers, please let me know immediately so we can make arrangements for Michael to get access to information he needs and which is critical to his ability to earn a living, mount a defense to the criminal charges against him, practice law and communicate with his clients. Michael reserves all rights with respect to these servers, including to preserve and access information stored on these servers and to maintain the confidentiality of private and client related information, communications and material.  We trust you will respect those rights to the extent you are able to access the servers and that you will cooperate with us to the extent necessary.

If you need anything further or assistance from me or Michael with this, let me know.

Thanks.

Jim

James C. Bastian, Jr.
*Partner*
lbastian@shbllp.com
http://www.shbllp.com


SHULMAN
HODGES &
BASTIAN LLP

**Orange County** – 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400 Fax: 949-340-3000
**Inland Empire** – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300 Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** Jim Bastian
**Sent:** Tuesday, April 2, 2019 10:57 AM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list
**Importance:** High

Gentlemen:

We have been working on getting access to the servers and have discovered that the servers are offline and not accessible by Michael. We had thought that the servers had been seized by the authorities related to the criminal proceedings, but have learned that this is not the case. This leads us to believe that perhaps you have taken control of the servers? Can you confirm if this is the case? This is critically important as Michael needs access to the servers in order to address cases in which he is counsel and also cases in which EA has an interest. If you have not taken control of the servers, then something else has occurred and we need to figure out how to obtain access.

Next, with respect to the case list, Michael advises that the list you have provided is not complete and does not reflect the more extensive case list discussed between Michael and Brian, and which was apparently memorialized in some fashion through an Excel spread sheet. Can you provide the complete list?

With respect to the list you have provided, I have reviewed this with Michael and in connection with the cases listed, Michael's position is as follows:

Alpha – you can reassign.
Bahamas – Michael's position is that he is lead counsel and that EA has a fee interest. Since you have filed a motion on this, the courts will decide this it appears but to be clear, it is Michael's position that you are not permitted to tamper with the case or client. If Brian has any evidence that EA is lead counsel as opposed to Michael individually, he has yet to

4

EXHIBIT 2
21

see it even though he has been asking for it. That all being said, again, it appears the courts will resolve this. I say "courts" because I am frankly not sure which court will ultimately decide the issue as there appears to be some conflict between the court presiding over the receivership and that court handling the underlying case.

Children's Dental Group Cases - you can reassign. Michael believes that EA is probably only entitled to 50% of the fees presently because of referring counsel (see email Michael sent to Brian the weekend before last). As such, EA will likely get a very small percentage at best once cases are reassigned.

Croxton - med mal action; you can reassign
Engel - med mal action; you can reassign
Khalil – abandoned by the client so no action needed
Koss - case is over due to ruling from Wisconsin Supreme Court
Le – Michael will remain as counsel
Mar - Michael will remain as counsel
Martinez - Michael will remain counsel
Medline – as you are aware, client has terminated the firm and Michael. Now entitled only to QM, and likely has little value.
Naeyaert – you can reassign; case likely only worth $150k in fees at most
Oberman - med mal arbitration; Michael will remain counsel
Shahinian – Michael will remain counsel
Shaver – Michael will remain counsel
Smart Tech – abandoned by client
Treviso - class action; you can reassign

Again, if you can provide the full list, we can provide answers on other cases.

Finally, with respect to the remaining open items on the spreadsheet (copy attached again for your easy reference), Michael's responses to open items are in the MJA Notes section in red font (scroll over to the far right of the spread sheet), which responses were provided to Brian before my involvement. As we have advised, due to the criminal matter and authorities seizing of documents and computers, Michael presently has no access to the books and records and other documentation and data bases, including that which was under the control of Judy Regnier.

And if you can let me know about the servers asap, this is of critical importance. If you do not have control over the servers than something else is going on and we need to dig deeper. Thanks.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

 SHULMAN
HODGES &
BASTIAN LLP

**Orange County -** 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000
**Inland Empire –** 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

5

EXHIBIT 2
22

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Friday, March 29, 2019 11:49 AM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

Jim, Brian Weiss has asked that I respond to your email.  His view of Mr. Avenatti's degree of cooperation is verified by the still "open" requests on the list attached to your email.  The  requests were made more than or nearly a month ago (except the one requesting an explanation of the name change).  Mr. Weiss also sent multiple copies of the list to Mr. Avenatti and repeatedly asked for the information and the status of efforts to provide it.  We also provided the list to you on March 18 and you replied on the following day that "I am working with my client on all this and expect to have things moving on this later this week."  Finally, the requests also were made at a time (from mid-February through my email to you) when Mr. Avenatti had unfettered access to the information sought.  Nevertheless, Mr. Avenatti represented to Mr. Weiss that he did not the EA servers and also that the business and financial information on the servers was being copied for Mr. Weiss when it now appears that those representations were not accurate.  From Mr. Weiss' perspective, Mr. Avenatti's cooperation to date has been far less than that required by the Receivership Order and far from sufficient to enable Mr. Weiss to fully perform his tasks as the receiver.  Mr. Weiss is duty bound to and will so inform the Court.

If Mr. Avenatti want a conference call simply to update us on his efforts to complete the open items on the request, it would be more helpful for him to do so in writing.  If there are other subjects that he wants to cover in the call, please let me know what they are.  I will then let you know how Mr. Weiss would like to proceed.


John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements Imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) Is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT 2
23

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Friday, March 29, 2019 10:47 AM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

John:

Michael is happy to get on a call and review the spread sheet of open items (which is attached).  He has cooperated and will continue to cooperate with Brian.   As you will recall, we requested a call last weekend for this purpose but never got a response. I am involved in a meditation today at my office but expect to have frequent long breaks to have a call.

Also, beyond all the back and forth emailing, are you going to provide a copy of the case list?  This will help make our discussion most productive.  Thanks.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

 SHULMAN
HODGES &
BASTIAN LLP

**Orange County** - 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000
**Inland Empire** – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Thursday, March 28, 2019 3:44 PM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

As a starting point, my email neither misstates or distorts the facts.

Second, my email references paragraph 29 of the Receivership Order so that you and Mr. Avenatti would understand that we are not criticizing his decision to file the withdrawal of counsel. Our criticism is directed to his failure to immediately advise Brian of the client's request. This fully responds to three paragraphs of your email.

7

EXHIBIT 2
24

Third, we are not "missing the point" as it relates to the request for Mr. Weiss' list of EA cases and clients. Instead, you have ignored our concern which is reasonable given your client's lack of performance of his obligations under the Receivership Order. Because you did not attend the proceeding, I did not address Mr. Avenatti's equally faulty memory at the EA judgment debtor examination.

The rest of your comments are gratuitously insulting, serve only to exacerbate a difficult situation and do not rate a response.

Mr. Weiss has made diligent efforts to help resolve the disputes between Mr. Avenatti and Mr. Frank and to perform his obligations as the receiver. Mr. Weiss still would welcome Mr. Avenatti's cooperation but that requires Mr. Avenatti's prompt, truthful and direct responses to Mr. Weiss' requests.

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Thursday, March 28, 2019 2:44 PM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

John:

This is not productive. I have told you several times I am trying to help you guys here.  Sending me a self-serving long email that I now have to respond to because it misstates facts and distorts others only increases costs and causes further delay, but since this is apparently the way you want to play this, I guess I have no choice.

8

EXHIBIT 2
25

As Michael advised Brian, general counsel to Medline contacted Michael that they wanted him to IMMEDIATELY withdraw from the case and have local counsel take over. (I can send you the text if you want). The request was urgent apparently in light of an upcoming deadline or hearing. That is the client's right and Michael had no option but to agree. It appears to be your position that Michael must obtain Brian's consent to take any action requested by his clients. It appears to me that there is a real conflict here given an attorneys' ethical duties and the apparent duties of the Receiver. However, the Order appointing Brian has language in the last paragraph 29 that provides guidance: "**Nothing in this order excuses or alters any ethical duties that EA and/or EA's attorneys may have to their clients.**"

In this instance, Medline advised Michael that it wished to terminate his services and Michael had an absolute duty to comply and withdraw. (See ABA Model Rule 1.16(a)(3); *Fracasse v. Brent*, 6 Cal. 3d 784, 790 (1972).) A client can even terminate counsel in the middle of a trial, though the court may refuse to grant a continuance to secure new representation. (See *Berger v. Mantle*, 18 Cal. App. 2d 245, 248–294 (1936).)

As such, Michael was ethically bound to withdraw and the Receiver order protects the fulfillment of that ethical duty. With respect to the language from the order you cite, I am not sure how Michael's action could possibly be violative of the order given paragraph 29. If the client wants to change counsel, Brian cannot do anything about that and in fact, your position infers that Brian has the right to deny a client its absolute right to terminate as noted above. This cannot be your position.

With respect to the names of the clients issue you note, you are clearly missing my point (and misstating what I said to you). I merely want a copy of the list Michael provided (and apparently which Michael and Brian spent several hours reviewing) so that I was "singing from the same sheet of music" you guys were – again in my effort to help you maximize the value of this estate. This was because Michael has no access to any data or emails as all of his computers have been seized and the servers apparently have as well.

As far as Michael's recollection and your implication that he is hiding information or cases from Brian, give me a break. I have 50-60 pending client matters and I rely heavily on a list my assistant maintains. I can remember most of the cases but not all. I want to eliminate the guess work and room for error by simply having the data you have, again so I can help you! Michael and I have gone over some of the cases but he cannot remember all of them.

I am not going to engage in these games. Demanding that I send you a list of what Michael remembers is just plain silly. As I have told you, my goal is to develop a comprehensive list (to the extent not already developed among Michael and Brian) through a review of what has been developed to date and then reviewing it with Michael to make sure there are no others. Then if there are cases that he is working on that are not EA related, we can identify those so there is no question as to the estate's interest. Again, I am trying to help you guys here.

Please just send me the list. I see no harm in this. All you are doing I driving up costs and now basically taking an adversarial approach that is not going to help.

I also would suggest that you do not need two attorneys on this file at all times. I note that every call, hearing and email is involving you and Jack. This is not necessary and wasteful.

To be clear – the request for this list is not Michael's request – it is my request. I do not have this document and have no way of obtaining it. I plan to work with Michael on the list but again, my purpose is so that I can help you guys here.

Let's get beyond this stuff. Thanks.

Jim

James C. Bastian, Jr.
*Partner*

9

EXHIBIT 2
26

JBastian@shbllp.com
http://www.shbllp.com



SHULMAN
HODGES &
BASTIAN LLP

**Orange County** – 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400 Fax: 949-340-3000
**Inland Empire** – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300 Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Thursday, March 28, 2019 1:02 PM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

Jim, as Brian and I expressed to you during our last phone conversation, Mr. Avenatti had control over the servers for approximately six weeks after Brian was appointed but withheld access to the information stored on those servers in violation of the Receivership Order. More recently, we learned without advance warning that Mr. Avenatti had withdrawn as counsel for Medline. Please inform Mr. Avenatti that he should more carefully read the Receivership Order by which he is bound. By way of example only, Mr. Avenatti has violated the following Receivership Order requirements: paragraphs 27 a, b and h; and 28 a, b and e. His conduct has directly negatively affected Brian's ability to "take such action as is necessary and appropriate to preserve and take control of and to prevent the waste, dissipation, loss of value, concealment, or disposition of any assets of or managed by EA" (paragraph 14. p).

In our last phone conversation, you also asserted that Mr. Avenatti needed the names of his own clients and the cases in which he represents them because he was unable to remember all of them. In response, we told you that Mr. Avenatti had previously provided a case and client list to Brian, and that additional information has been derived from other sources. To again ask for a list of all of the cases now known to the Receiver causes us to question whether Mr. Avenatti was fully forthcoming in his earlier disclosure. In the circumstances, lets start with Mr. Avenatti providing a list of the cases he recalls and is willing to transfer to other counsel and which cases he is not willing to transfer; for example, what about Kimberly Clark and the children's dentist cases? We can then re-address Mr. Avenatti's request.

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-691-7377

10

EXHIBIT 2
27

Fax: 310-557-0056
E-mail: jreitman@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (I) avoiding penalties under the Internal Revenue Code or (II) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Thursday, March 28, 2019 11:40 AM
**To:** John Reitman <jreitman@lgbfirm.com>; Brian Weiss (bweiss@force10partners.com)
<bweiss@force10partners.com>
**Subject:** EA case list

Guys:

Following our call yesterday, I would appreciate it if you could  please send me the case list. I do not have it and Michael cannot access any records as all servers and computers have been seized by the authorities.  I am working with him to go through the list and confirm the cases he is willing to release any interest in and sign substitutions of attorney to the extent necessary.  There are a few cases he wants to keep but the majority it appears he is happy to transition to new counsel.  I need the list to assist in this process.  Thanks.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

 SHULMAN
HODGES &
BASTIAN LLP

**Orange County -** 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000
**Inland Empire –** 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

11

EXHIBIT 2
28

**John Reitman**

| | |
|---|---|
| From: | Michael Avenatti <m@thefight.us> |
| Sent: | Monday, April 15, 2019 9:13 AM |
| To: | Brian Weiss |
| Cc: | Jim Bastian; John Reitman |
| Subject: | Re: Iron Mountain/Client Files |

Brian:

We have a list but it is among the items seized by the government, which is one of the reasons why we need the servers and other documents returned asap. There are client files at Iron Mountain but the majority of the current client files were seized from Judy's home and/or reside on the servers. FYI - I just spoke with Mrs. Croxton and explained the situation. As I mentioned over the weekend, it is imperative that we get the servers re-established so we can service clients and/or transition various matters.

Thanks,

Michael

On Mon, Apr 15, 2019 at 9:04 AM Brian Weiss <bweiss@force10partners.com> wrote:
Michael,

I received a report from Iron Mountain and there are ~480 boxes being stored. They do not have a list of the contents of each box. Do you or Judy have a list? Would there be any client/case files at Iron Mountain or are these stored electronically? I received a couple of call from Mrs. Croxton who stated she provided very personal documents as well as if she is able to retain replacement counsel, these are needed.

Thank you,
--
Brian Weiss
at Force 10 Partners
A 20341 SW Birch Suite 220, Newport Beach CA 92660
D (949) 357-2368 P (949) 357-2360 M (949) 933-7011 E
bweiss@force10partners.com W http://force10partners.com

--
This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Force 10 Partners and each of its subsidiaries each reserve the right to monitor all e-mail communications through its networks.

1

EXHIBIT 2
29

**John Reitman**

| | |
|---|---|
| **From:** | Michael Avenatti <m@thefight.us> |
| **Sent:** | Sunday, April 14, 2019 3:11 PM |
| **To:** | Brian Weiss |
| **Cc:** | Jim Bastian; John Reitman |
| **Subject:** | Re: EA - Urgent Matters |

Thanks for the quick response.  Please see below.

1. My criminal defense counsel John Littrell was told this by the US Attys office, which came as a surprise to me. We will follow up with them in light of your email.  I am happy to pay to host the servers provided I am given access. I am unaware of how much is owed the old hosting company but they were fully paid through the end of March I believe.  Do you have this amount? PLEASE NOTE for the avoidance of all doubt, that I am not waiving any rights, privileges or objections as to the information contained on the servers as it relates to my criminal matters, including any 5th amendment rights.

2. Understood.

3. I have not "left EA." Nor have I misappropriated money due EA. Nor am I under an obligation to continue to fund EA operations or expenses. Times have obviously changed for me over the last few weeks from a financial perspective, which has changed my ability to defend various matters and/or assume the defense on behalf of EA and others.  And new matters have been filed.  Accordingly, I need EA to step up and provide the defense we all need and are entitled to under the law.  If the firm is not able to do that or pay even basic expenses because it has no incoming cash, then EA needs to file for bankruptcy in order to preserve assets and protect all creditors.

I likewise am available to discuss at your convenience.

Regards,

Michael

On Sun, Apr 14, 2019 at 2:51 PM Brian Weiss <bweiss@force10partners.com> wrote:
 Michael,

Please find below my responses to each of your points below.  John may supplement by responses, if necessary.

1. I am not sure who informed you that I have access to the servers. Whatever source told you this is mistaken. Please advise as to who told you this.  I do not, nor do I expect to have possession in the week(s) to come. Once the servers are returned, we face an issue getting them back online and where to house them. Unfortunately, your prior firm, Mixinit is owed money and does not want to provide future services nor does the receivership estate does not have any funds to secure a new provider.  Will you be providing the funding to get them back online?  To bring them back online and to keep them housed is ~$1k per month.

2. Your assertion regarding Ahmed handling the NFL case is incorrect.  I only saw your email to us on Friday, April 12, 2019 and have not been contacted by Ahmed to discuss the case. On the same day, we attempted to reach the Becker Law Firm and are awaiting a return call. With this case and all others, to avoid issues and compliance with the Receivership Order, let's discuss your plans in advance to see if we can come to an agreement. To date, you have not discussed, rather have "informed" after the fact.

1

EXHIBIT 2
30

3. Per our discussions and my requests, you stated to me you were going to handle the defense and provide your strategy to do so (see the information request with this line item). To date, I have not received a response from you on this subject. You left EA with no funds to provide indemnification. Are you willing to contribute funds to EA to allow this to occur? I will defer to my counsel for further comment.

Please advise when you will be returning the Medline money to EA that was misappropriated. These funds can be used the servers back online when they are received.

I am available Monday through Wednesday of this week to discuss.

Regards,
Brian

On Sun, Apr 14, 2019 at 2:22 PM Michael Avenatti <m@thefight.us> wrote:
Brian:

There are at least three matters that deserve your immediate attention. They are as follows:

1. I need access to the EA servers so that I can adequately represent our clients. As it presently stands, I do not have access to (a) our calendar showing case deadlines and the like; (b) the document database with past pleadings and motions; and (c) prior emails and correspondence. I now understand that you have access to the servers. We need to arrange to grant me access as soon as possible so we can fulfill our obligations to the clients. I also need access for my criminal defense. If we are unable to do what we need to do in this regard, we are likely going to subject ourselves, you and EA included, to significant exposure for liability and damages. I know that we both want to avoid this. As a result, please work with me forthwith to get me the access I need.

2. Seeing as you seem to object to Ahmed moving forward with the Hall of Fame class action in Ohio, I need to know what your alternative proposal is. Once again, we have duties to the client in that case and the putative class. The defense has objected to our renewed motion for class certification based on alleged inadequacy of counsel so we need a solution ASAP. Otherwise, we risk adverse consequences to our client and possibly the class, resulting in potential liability. We need to avoid this.

3. A plan for defending the various actions in which EA has an indemnification obligation. As you know, there are presently multiple cases/arbitrations in which the firm and its employees/partners are named as defendants. These include the Barela arbitration, Jason's federal collection action, the Parrish matter filed in Santa Barbara, and the Stoll lawsuit pending in Orange County. There may be additional not yet filed actions. As I know you know, under California law and the partnership agreement, EA has an obligation to provide me with a defense in these matters. Moreover, EA also has an obligation to provide EA employees with a defense in these matters to the extent they are named as defendants (see, e.g., the CA Labor Code). I need to know what the plan is for the firm to provide a defense in connection with these cases. If the firm is unable to provide a defense as required, for itself, me and others, I do not understand how the firm can possibly avoid filing for bankruptcy protection. Otherwise, the firm will be openly subjecting itself to millions in liabilities and default judgments.

I am available anytime tomorrow to discuss these matters by phone as time is of the essence. Please let me know how you would like to proceed.

Thank you.

EXHIBIT 2
31

Michael

 **Brian Weiss**
at Force 10 Partners
A 20341 SW Birch Suite 220, Newport Beach CA 92660
D (949) 357-2368  P (949) 357-2360  M (949) 933-7011  E bweiss@force10partners.com  W http://force10partners.com

This message is for the named person's use only. It may contain confidential, proprietary
or legally privileged information. No confidentiality or privilege is waived or lost by
any mistransmission. If you receive this message in error, please immediately delete it
and all copies of it from your system, destroy any hard copies of it and notify the
sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy
any part of this message if you are not the intended recipient. Force 10 Partners and
each of its subsidiaries each reserve the right to monitor all e-mail communications
through its networks.
--
Michael J. Avenatti

3

EXHIBIT 2
32

**John Reitman**

| | |
|---|---|
| **From:** | Brian Weiss <bweiss@force10partners.com> |
| **Sent:** | Sunday, April 14, 2019 2:52 PM |
| **To:** | Michael Avenatti |
| **Cc:** | John Reitman; Jim Bastian |
| **Subject:** | Re: EA – Urgent Matters |

Michael,

Please find below my responses to each of your points below.  John may supplement by responses, if necessary.

1.  I am not sure who informed you that I have access to the servers. Whatever source told you this is mistaken.  Please advise as to who told you this.  I do not, nor do I expect to have possession in the week(s) to come.  Once the servers are returned, we face an issue getting them back online and where to house them.  Unfortunately, your prior firm, Mixinit is owed money and does not want to provide future services nor does the receivership estate does not have any funds to secure a new provider.  Will you be providing the funding to get them back online?  To bring them back online and to keep them housed is ~$1k per month.

2.  Your assertion regarding Ahmed handling the NFL case is incorrect.  I only saw your email to us on Friday, April 12, 2019 and have not been contacted by Ahmed to discuss the case. On the same day, we attempted to reach the Becker Law Firm and are awaiting a return call. With this case and all others, to avoid issues and compliance with the Receivership Order, let's discuss your plans in advance to see if we can come to an agreement.  To date, you have not discussed, rather have "informed" after the fact.

3.  Per our discussions and my requests, you stated to me you were going to handle the defense and provide your strategy to do so (see the information request with this line item).  To date, I have not received a response from you on this subject. You left EA with no funds to provide indemnification.  Are you willing to contribute funds to EA to allow this to occur?  I will defer to my counsel for further comment.

Please advise when you will be returning the Medline money to EA that was misappropriated. These funds can be used the servers back online when they are received.

I am available Monday through Wednesday of this week to discuss.

Regards,
Brian

On Sun, Apr 14, 2019 at 2:22 PM Michael Avenatti <m@thefight.us> wrote:
Brian:

There are at least three matters that deserve your immediate attention.  They are as follows:

1.  I need access to the EA servers so that I can adequately represent our clients. As it presently stands, I do not have access to (a) our calendar showing case deadlines and the like; (b) the document database with past pleadings and motions; and (c) prior emails and correspondence.  I now understand that you have access to the servers.  We need to

1

EXHIBIT 2
33

arrange to grant me access as soon as possible so we can fulfill our obligations to the clients. I also need access for my criminal defense. If we are unable to do what we need to do in this regard, we are likely going to subject ourselves, you and EA included, to significant exposure for liability and damages. I know that we both want to avoid this. As a result, please work with me forthwith to get me the access I need.

2. Seeing as you seem to object to Ahmed moving forward with the Hall of Fame class action in Ohio, I need to know what your alternative proposal is. Once again, we have duties to the client in that case and the putative class. The defense has objected to our renewed motion for class certification based on alleged inadequacy of counsel so we need a solution ASAP. Otherwise, we risk adverse consequences to our client and possibly the class, resulting in potential liability. We need to avoid this.

3. A plan for defending the various actions in which EA has an indemnification obligation. As you know, there are presently multiple cases/arbitrations in which the firm and its employees/partners are named as defendants. These include the Barela arbitration, Jason's federal collection action, the Parrish matter filed in Santa Barbara, and the Stoll lawsuit pending in Orange County. There may be additional not yet filed actions. As I know you know, under California law and the partnership agreement, EA has an obligation to provide me with a defense in these matters. Moreover, EA also has an obligation to provide EA employees with a defense in these matters to the extent they are named as defendants (see, e.g., the CA Labor Code). I need to know what the plan is for the firm to provide a defense in connection with these cases. If the firm is unable to provide a defense as required, for itself, me and others, I do not understand how the firm can possibly avoid filing for bankruptcy protection. Otherwise, the firm will be openly subjecting itself to millions in liabilities and default judgments.

I am available anytime tomorrow to discuss these matters by phone as time is of the essence. Please let me know how you would like to proceed.

Thank you.

Michael



**Brian Weiss**
at Force 10 Partners
A 20341 SW Birch Suite 220, Newport Beach CA 92660
D (949) 357-2368  P (949) 357-2360  M (949) 933-7011  E bweiss@force10partners.com  W http://force10partners.com

This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Force 10 Partners and each of its subsidiaries each reserve the right to monitor all e-mail communications through its networks.

EXHIBIT 2
34

**John Reitman**

| | |
|---|---|
| **From:** | Sagel, Brett (USACAC) <Brett.Sagel@usdoj.gov> |
| **Sent:** | Wednesday, April 3, 2019 9:31 PM |
| **To:** | John Reitman |
| **Cc:** | Kate Corrigan; Karlous Remoun G; Kim James M; Brian Weiss; Jack Reitman |
| **Subject:** | RE: Servers |

Thanks, much appreciated.  The agents will likely coordinate with you to determine how/where to provide the receiver with the servers after they have been imaged.  We will keep you posted.
Brett

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Wednesday, April 3, 2019 9:27 PM
**To:** Sagel, Brett (USACAC) <BSagel@usa.doj.gov>
**Cc:** Kate Corrigan <kate@cwsdefense.com>; Karlous Remoun G <Remoun.Karlous@ci.irs.gov>; Kim James M <James.Kim@ci.irs.gov>; Brian Weiss <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** Re: Servers

Mr. Sagel, this will confirm that I have discussed with Mr. Weiss the request that the IRS-CD be authorized to remove the computer servers from mixinIT for the purpose of facilitating the imaging of the information at the agency's computing lab. Mr. Weiss has approved that request. Upon completion of that work Mr. Weiss requires that he be able to take possession of the servers. Please confirm if the servers will be returned to the current storage facility or another reasonably convenient location for pickup by Mr. Weiss.

Sent from my iPhone

On Apr 3, 2019, at 8:39 PM, Sagel, Brett (USACAC) <Brett.Sagel@usdoj.gov> wrote:

> Mr. Reitman-
> We received your email in which you, as Court-Appointed Receiver Brian Weiss's counsel, informed us that you have conferred with Mr. Weiss and he, as receiver for Eagan Avenatti LLP, authorized the government image the servers that are currently in the possession of MixinIT.  Please confirm the below, that the agents may also remove the servers from MixinIT and take possession of them to image the servers at the agency's computing lab.  Thanks,
> Brett
>
> **From:** Kate Corrigan <kate@cwsdefense.com>
> **Sent:** Wednesday, April 3, 2019 5:34 PM
> **To:** Sagel, Brett (USACAC) <BSagel@usa.doj.gov>
> **Cc:** John Reitman <jreitman@lgbfirm.com>
> **Subject:** Servers
>
> Your agent would like to take possession of the servers and image them at the lab.  I just got off the phone with John Reitman and Brian Weiss, and they have no objection to this process.  I have let my client know that he can allow the agent to take possession of the servers.
>
> Kate Corrigan
> Corrigan Welbourn & Stokke APLC
> 4100 Newport Place, Suite 550

1

EXHIBIT 2
35

Newport Beach, CA 92660
T.  949.251.0330
F.  949.251.1181
E.  kate@cwsdefense.com
W:  cwsdefense.com

2

EXHIBIT 2
36

**John Reitman**

| | |
|---|---|
| **From:** | Kate Corrigan <kate@cwsdefense.com> |
| **Sent:** | Wednesday, April 3, 2019 5:34 PM |
| **To:** | AUSA Brett Sagel |
| **Cc:** | John Reitman |
| **Subject:** | Servers |

Your agent would like to take possession of the servers and image them at the lab.  I just got off the phone with John Reitman and Brian Weiss, and they have no objection to this process.  I have let my client know that he can allow the agent to take possession of the servers.

Kate Corrigan
Corrigan Welbourn & Stokke APLC
4100 Newport Place, Suite 550
Newport Beach, CA 92660
T.  949.251.0330
F.  949.251.1181
E.  kate@cwsdefense.com
W:  cwsdefense.com

1

EXHIBIT 2
37

## John Reitman

| | |
|---|---|
| **From:** | John Reitman |
| **Sent:** | Wednesday, April 3, 2019 10:09 AM |
| **To:** | julian.l.andre@usdoj.com; brett.sagel@usdoj.gov |
| **Cc:** | 'Brian Weiss (bweiss@force10partners.com)'; Jack Reitman |
| **Subject:** | Eagan Avenatti Computer Servers |

Messrs. Andre and Sagel, as you know I am counsel for Brian Weiss the court appointed receiver for Eagan Avenatti, LLP. I have talked to Mr. Weiss. This will confirm that the IRS CI is authorized to image any and all Eagan Avenatti computer servers and hard drives currently in the possession of mixinIT. If you need any further assistance, please contact me.


John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-691-7377
Fax: 310-557-0056
E-mail: jreitman@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT 2
38

**John Reitman**

| | |
|---|---|
| **From:** | Jim Bastian <JBastian@shbllp.com> |
| **Sent:** | Tuesday, April 2, 2019 5:38 PM |
| **To:** | John Reitman |
| **Cc:** | Brian Weiss (bweiss@force10partners.com); Jack Reitman |
| **Subject:** | Re: EA servers |

Further to this, I am advised that the servers were moved well before the firm moved from the NB offices.

On Apr 2, 2019, at 5:23 PM, Jim Bastian <JBastian@shbllp.com> wrote:

> John:
>
> As I believe Brian is well aware, the servers were moved from the law firm's Newport Beach office after those offices closed and well before Brian was appointed. I also understand that Brian met with Michael at the firm's LA offices after his appointment and was referred to X Law Group in connection with this. Your email suggested something was done recently in violation of the receivership order. This has not occurred. Nothing has been done or will be done in connection with the servers to interfere with Brian's duties as receiver. Again, we are trying to work with you on this.
>
> Michael has not been able to access his email or any data and the servers appear to be down. We had thought that they were in the control of the authorities, but that is apparently not the case. We then thought they might be within the receiver's control, but that appears not to be the case. At this point, we have no idea why the servers are down and have not been able to get any information whatsoever.
>
> We are happy to work with you towards a common goal of accessing the servers and more importantly the data and information stored on them. Again, Michael reserves all rights as indicated previously.
>
> I find it ironic that you separately emailed what appears to be an important document related to a very important case, indicating that Michael is still counsel of record, which clearly supports the idea that some cooperation is required here in order to preserve and maximize estate assets. Yet in a separate email you are seeking to prohibit Michael from accessing information that may be necessary to properly represent his clients and preserve estate assets.
>
> Let me know how you want to proceed.
>
> Jim
>
> On Apr 2, 2019, at 4:00 PM, John Reitman <jreitman@lgbfirm.com> wrote:
>
>> Thank you for the information.  Who had the business card, who removed the servers from EA's office and who gave the servers to the vendor?  Please inform Mr. Avenatti that (1) he is not to contact the vendor without Mr. Weiss' written authorization or do anything else that might interfere with the Receiver's efforts to recover the servers and (2) any such direct or indirect action by him will result in Mr. Weiss filing an OSC for violating the Receivership Order.
>>
>> John Reitman
>> Attorney

1

EXHIBIT 2
39

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-691-7377
Fax: 310-557-0056
E-mail: jreitman@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Tuesday, April 2, 2019 3:22 PM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** 'Brian Weiss (bweiss@force10partners.com)' <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list
**Importance:** High

Gentlemen:

I have been able to get information on the location of the servers. See attached image of a business card we located. The servers are housed with a third party data storage vendor apparently located in Newport Beach called mixinIT. We have attempted to contact this entity by telephone and in person but the phone number provided goes to an anonymous google voice mail (my messages have gone unreturned) and the physical location for the address on this card is a mail box.

I have conferred with Judy Regnier and this is the only information she has on this as all her other information was stored on her phone or computers which were seized by Federal agents.

If you are able to get access to or control over the servers, please let me know immediately so we can make arrangements for Michael to get access to information he needs and which is critical to his ability to earn a living, mount a defense to the criminal charges against him, practice law and communicate with his clients. Michael reserves all rights with respect to these servers, including to preserve and access information stored on these servers and to maintain the confidentiality of private and client related information, communications and material. We trust you will respect those rights to the extent you are able to access the servers and that you will cooperate with us to the extent necessary.

2

EXHIBIT 2
40

If you need anything further or assistance from me or Michael with this, let me know.

Thanks.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

<image001.jpg>

**Orange County** – 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400 Fax: 949-340-3000
**Inland Empire** – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300 Fax: 951-275-9303

Confidentiality Notice: The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** Jim Bastian
**Sent:** Tuesday, April 2, 2019 10:57 AM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list
**Importance:** High

Gentlemen:

We have been working on getting access to the servers and have discovered that the servers are offline and not accessible by Michael. We had thought that the servers had been seized by the authorities related to the criminal proceedings, but have learned that this is not the case. This leads us to believe that perhaps you have taken control of the servers? Can you confirm if this is the case? This is critically important as Michael needs access to the servers in order to address cases in which he is counsel and also cases in which EA has an interest. If you have not taken control of the servers, then something else has occurred and we need to figure out how to obtain access.

Next, with respect to the case list, Michael advises that the list you have provided is not complete and does not reflect the more extensive case list discussed between Michael and Brian, and which was apparently memorialized in some fashion through an Excel spread sheet. Can you provide the complete list?

EXHIBIT 2
41

With respect to the list you have provided, I have reviewed this with Michael and in connection with the cases listed, Michael's position is as follows:

Alpha – you can reassign.

Bahamas – Michael's position is that he is lead counsel and that EA has a fee interest.  Since you have filed a motion on this, the courts will decide this it appears but to be clear, it is Michael's position that you are not permitted to tamper with the case or client.  If Brian has any evidence that EA is lead counsel as opposed to Michael individually, he has yet to see it even though he has been asking for it.  That all being said, again, it appears the courts will resolve this. I say "courts" because I am frankly not sure which court will ultimately decide the issue as there appears to be some conflict between the court presiding over the receivership and that court handling the underlying case.

Children's Dental Group Cases - you can reassign.  Michael believes that EA is probably only entitled to 50% of the fees presently because of referring counsel (see email Michael sent to Brian the weekend before last).  As such, EA will likely get a very small percentage at best once cases are reassigned.

Croxton - med mal action; you can reassign

Engel - med mal action; you can reassign

Khalil – abandoned by the client so no action needed

Koss - case is over due to ruling from Wisconsin Supreme Court

Le – Michael will remain as counsel

Mar - Michael will remain as counsel

Martinez - Michael will remain counsel

Medline – as you are aware, client has terminated the firm and Michael. Now entitled only to QM, and likely has little value.

Naeyaert – you can reassign; case likely only worth $150k in fees at most

Oberman - med mal arbitration; Michael will remain counsel

Shahinian – Michael will remain counsel

Shaver – Michael will remain counsel

Smart Tech – abandoned by client

Treviso - class action; you can reassign

Again, if you can provide the full list, we can provide answers on other cases.

Finally, with respect to the remaining open items on the spreadsheet (copy attached again for your easy reference), Michael's responses to open items are in the MJA Notes section in red font (scroll over to the far right of the spread sheet), which responses were provided to Brian before my involvement.  As we have advised, due to the criminal matter and authorities seizing of documents and computers, Michael presently has no access to the books and records and other documentation and data bases, including that which was under the control of Judy Regnier.

And if you can let me know about the servers asap, this is of critical importance.  If you do not have control over the servers than something else is going on and we need to dig deeper.  Thanks.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

4

EXHIBIT 2
42

Orange County – 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000
Inland Empire – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303

Confidentiality Notice: The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Friday, March 29, 2019 11:49 AM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

Jim, Brian Weiss has asked that I respond to your email.  His view of Mr. Avenatti's degree of cooperation is verified by the still "open" requests on the list attached to your email.  The requests were made more than or nearly a month ago (except the one requesting an explanation of the name change).  Mr. Weiss also sent multiple copies of the list to Mr. Avenatti and repeatedly asked for the information and the status of efforts to provide it.  We also provided the list to you on March 18 and you replied on the following day that "I am working with my client on all this and expect to have things moving on this later this week."  Finally, the requests also were made at a time (from mid-February through my email to you) when Mr. Avenatti had unfettered access to the information sought.  Nevertheless, Mr. Avenatti represented to Mr. Weiss that he did not the EA servers and also that the business and financial information on the servers was being copied for Mr. Weiss when it now appears that those representations were not accurate.  From Mr. Weiss' perspective, Mr. Avenatti's cooperation to date has been far less than that required by the Receivership Order and far from sufficient to enable Mr. Weiss to fully perform his tasks as the receiver.  Mr. Weiss is duty bound to and will so inform the Court.

If Mr. Avenatti want a conference call simply to update us on his efforts to complete the open items on the request, it would be more helpful for him to do so in writing.  If there are other subjects that he wants to cover in the call, please let me know what they are.  I will then let you know how Mr. Weiss would like to proceed.


John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700

EXHIBIT 2
43

Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Friday, March 29, 2019 10:47 AM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

John:

Michael is happy to get on a call and review the spread sheet of open items (which is attached).  He has cooperated and will continue to cooperate with Brian.   As you will recall, we requested a call last weekend for this purpose but never got a response.  I am involved in a mediation today at my office but expect to have frequent long breaks to have a call.

Also, beyond all the back and forth emailing, are you going to provide a copy of the case list?  This will help make our discussion most productive.  Thanks.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

<image001.jpg>

**Orange County -** 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000
**Inland Empire –** 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

6

EXHIBIT 2
44

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Thursday, March 28, 2019 3:44 PM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack
Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

As a starting point, my email neither misstates or distorts the facts.

Second, my email references paragraph 29 of the Receivership Order so that you and
Mr. Avenatti would understand that we are not criticizing his decision to file the
withdrawal of counsel. Our criticism is directed to his failure to immediately advise Brian
of the client's request.  This fully responds to three paragraphs of your email.

Third, we are not "missing the point" as it relates to the request for Mr. Weiss' list of EA
cases and clients. Instead, you have ignored our concern which is reasonable given your
client's lack of performance of his obligations under the Receivership Order.  Because
you did not attend the proceeding, I did not address  Mr. Avenatti's equally faulty
memory at the EA judgment debtor examination.

The rest of your comments are gratuitously insulting, serve only to exacerbate a difficult
situation and do not rate a response.

Mr. Weiss has made diligent efforts to help resolve the disputes between Mr. Avenatti
and Mr. Frank and to perform his obligations as the receiver.  Mr. Weiss still would
welcome Mr. Avenatti's cooperation but that requires Mr. Avenatti's prompt, truthful
and direct responses to Mr. Weiss' requests.

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com

Please consider the environment before printing.

7

EXHIBIT 2
45

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Thursday, March 28, 2019 2:44 PM
**To:** John Reitman <jreitman@lgbfirm.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

John:

This is not productive. I have told you several times I am trying to help you guys here.  Sending me a self-serving long email that I now have to respond to because it misstates facts and distorts others only increases costs and causes further delay, but since this is apparently the way you want to play this, I guess I have no choice.

As Michael advised Brian, general counsel to Medline contacted Michael that they wanted him to IMMEDIATELY withdraw from the case and have local counsel take over.  (I can send you the text if you want).  The request was urgent apparently in light of an upcoming deadline or hearing.  That is the client's right and Michael had no option but to agree.  It appears to be your position that Michael must obtain Brian's consent to take any action requested by his clients.  It appears to me that there is a real conflict here given an attorneys' ethical duties and the apparent duties of the Receiver.  However, the Order appointing Brian has  language in the last paragraph 29 that provides guidance:  **"Nothing in this order excuses or alters any ethical duties that EA and/or EA's attorneys may have to their clients."**

In this instance, Medline advised Michael that it wished to terminate his services and Michael had an absolute duty to comply and withdraw.  (See ABA Model Rule 1.16(a)(3); *Fracasse v. Brent*, 6 Cal. 3d 784, 790 (1972).) A client can even terminate counsel in the middle of a trial, though the court may refuse to grant a continuance to secure new representation. (See *Berger v. Mantle*, 18 Cal. App. 2d 245, 248–294 (1936).)

As such, Michael was ethically bound to withdraw and the Receiver order protects the fulfillment of that ethical duty.  With respect to the language from the order you cite, I am not sure how Michael's action could possibly be violative of the order given paragraph 29. If the client wants to change counsel, Brian cannot do anything about that and in fact, your position infers that Brian has the right to deny a client its absolute right to terminate as noted above.  This cannot be your position.

With respect to the names of the clients issue you note, you are clearly missing my point (and misstating what I said to you).  I merely want a copy of the list Michael provided (and apparently which Michael and Brian spent several hours reviewing) so that I was

8

EXHIBIT 2
46

"singing from the same sheet of music" you guys were – again in my effort to help you maximize the value of this estate.  This was because Michael has no access to any data or emails as all of his computers have been seized and the servers apparently have as well.

As far as Michael's recollection and your implication that he is hiding information or cases from Brian, give me a break.  I have 50-60 pending client matters and I rely heavily on a list my assistant maintains. I can remember most of the cases but not all.  I want to eliminate the guess work and room for error by simply having the data you have, again so I can help you!  Michael and I have gone over some of the cases but he cannot remember all of them.

I am not going to engage in these games.  Demanding that I send you a list of what Michael remembers is just plain silly.  As I have told you, my goal is to develop a comprehensive list (to the extent not already developed among Michael and Brian) through a review of what has been developed to date and then reviewing it with Michael to make sure there are no others.  Then if there are cases that he is working on that are not EA related, we can identify those so there is no question as to the estate's interest.  Again, I am trying to help you guys here.

Please just send me the list.  I see no harm in this.  All you are doing I driving up costs and now basically taking an adversarial approach that is not going to help.

I also would suggest that you do not need two attorneys on this file at all times.  I note that every call,  hearing and email is involving you and Jack. This is not necessary and wasteful.

To be clear – the request for this list is not Michael's request – it is my request.  I do not have this document and have no way of obtaining it.  I plan to work with Michael on the list but again, my purpose is so that I can help you guys here.

Let's get beyond this stuff.  Thanks.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

<image001.jpg>

**Orange County –** 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000
**Inland Empire –** 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

9

EXHIBIT 2
47

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Thursday, March 28, 2019 1:02 PM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>; Jack
Reitman <jareitman@lgbfirm.com>
**Subject:** RE: EA case list

Jim, as Brian and I expressed to you during our last phone conversation, Mr. Avenatti
had control over the servers for approximately six weeks after Brian was appointed but
withheld access to the information stored on those servers in violation of the
Receivership Order.  More recently,  we learned without advance warning that Mr.
Avenatti had withdrawn as counsel for Medline.  Please inform Mr. Avenatti that he
should more carefully read the Receivership Order by which he is bound.  By way of
example only, Mr. Avenatti has violated the following Receivership Order
requirements:  paragraphs 27 a, b and h; and 28 a, b and e.  His conduct has directly
negatively affected Brian's ability to "take such action as is necessary and appropriate to
preserve and take control of and to prevent the waste, dissipation, loss of value,
concealment, or disposition of any assets of or managed by EA" (paragraph 14. p).

In our last phone conversation, you also asserted that Mr. Avenatti needed the names
of his own clients and the cases in which he represents them because he was unable to
remember all of them.  In response, we told you that Mr. Avenatti had previously
provided a case and client list to Brian, and that additional information has been derived
from other sources.  To again ask for a list of all of the cases now known to the Receiver
causes us to question whether Mr. Avenatti was fully forthcoming in his earlier
disclosure. In the circumstances, lets start with Mr. Avenatti providing a list of the cases
he recalls and is willing to transfer to other counsel and which cases he is not willing to
transfer; for example, what about Kimberly Clark and the children's dentist cases?  We
can then re-address Mr. Avenatti's request.

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the
intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this
communication and all copies thereof, including deletion of all associated text files from
individual and network storage devices; and (3) refrain from disseminating this communication by
any means whatsoever.

10

EXHIBIT 2
48

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Jim Bastian <JBastian@shbllp.com>
**Sent:** Thursday, March 28, 2019 11:40 AM
**To:** John Reitman <jreitman@lgbfirm.com>; Brian Weiss (bweiss@force10partners.com) <bweiss@force10partners.com>
**Subject:** EA case list

Guys:

Following our call yesterday, I would appreciate it if you could  please send me the case list. I do not have it and Michael cannot access any records as all servers and computers have been seized by the authorities.  I am working with him to go through the list and confirm the cases he is willing to release any interest in and sign substitutions of attorney to the extent necessary.  There are a few cases he wants to keep but the majority it appears he is happy to transition to new counsel.  I need the list to assist in this process.  Thanks.

Jim

James C. Bastian, Jr.
*Partner*
Jbastian@shbllp.com
http://www.shbllp.com

<image001.jpg>

**Orange County** – 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000
**Inland Empire** – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

11

EXHIBIT 2
49

### John Reitman

| | |
|---|---|
| **From:** | Jim Bastian <JBastian@shbllp.com> |
| **Sent:** | Tuesday, April 2, 2019 1:31 PM |
| **To:** | Liberman, Alex; John Reitman |
| **Cc:** | Brian Weiss; Jack Reitman |
| **Subject:** | RE: Medline |

Alex:

We have not been able to get access to servers and actually were just following up to see if the receiver has control – which appears to not be the case now based on John's last email.  We are working on this today but as of now, we have no access or information to provide.  Thanks.

Jim

James C. Bastian, Jr.
*Partner*
Jbastian@shbllp.com
http://www.shbllp.com

 SHULMAN HODGES & BASTIAN LLP

Orange County - 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400 Fax: 949-340-3000
Inland Empire – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300 Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** Liberman, Alex <ALiberman@medline.com>
**Sent:** Tuesday, April 2, 2019 10:49 AM
**To:** John Reitman <jreitman@lgbfirm.com>; Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>
**Subject:** RE: Medline

John, any update on this?
Thank you.

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Thursday, March 28, 2019 2:12 PM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Brian Weiss <bweiss@force10partners.com>; Jack Reitman <jareitman@lgbfirm.com>; Liberman, Alex

EXHIBIT 2
50

<ALiberman@medline.com>
Subject: EA: Medline

Jim, I received a call this morning from Alex Liberman, General Counsel for Medline.  Mr. Liberman informed be that the EA attorney work product and documents produced by the defendants are stored on one of EA's servers (he mentioned that Concordance software is used to locate information).  I need to know who at EA (including consultants) last had the server on which this information is stored.  Please contact Michael Avenatti and request this information.  If the information is still available to Mr. Avenatti, he should send that information and any necessary access codes to Mr. Liberman.  If the server was seized, let me know from whom the server was seized so that I may follow up on release of the litigation information.


John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-691-7377
Fax: 310-557-0056
E-mail: jreitman@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT 2
51

**John Reitman**

| | |
|---|---|
| **From:** | Jim Bastian <JBastian@shbllp.com> |
| **Sent:** | Tuesday, March 19, 2019 12:05 PM |
| **To:** | John Reitman |
| **Cc:** | Jack Reitman; Brian Weiss |
| **Subject:** | RE: Eagan Avenatti - more on 3/16 Document Request List |

John:

Thank you for this email and your email over the weekend. I am working with my client on all this and expect to have things moving on this later this week. Thanks.

Jim

James C. Bastian, Jr.
*Partner*
jbastian@shbllp.com
http://www.shbllp.com

 SHULMAN
HODGES &
BASTIAN LLP

**Orange County** – 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400 Fax: 949-340-3000
**Inland Empire** – 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300 Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Monday, March 18, 2019 11:36 AM
**To:** Jim Bastian <JBastian@shbllp.com>
**Cc:** Jack Reitman <jareitman@lgbfirm.com>; Brian Weiss <bweiss@force10partners.com>
**Subject:** Eagan Avenatti - more on 3/16 Document Request List

Jim, I was reading the signed Asset Purchase Agreement between EA and The X-Law Group (attached).  I want to make sure that Brian receives (1)  the signed Lease Back Agreement referred to in para. 1.5; (2) all backup for the indebtedness referred to in para. 2.1; (3) all Transaction Documents referred to in para. 3.2(a); and (4) all of the material contracts referred to in para. 3.5(a).  Also, I note that the description of the Assets sold does NOT include any client, business, financial or other proprietary information that was stored on the computers or computer servers.  The Receiver requires Mr. Avenatti's immediate written confirmation that in contemplation of the Asset sale or discovery by the judgment creditor (1) such information was not deleted from the computer information storage hardware; (2) no copy of such information was made by Mr. Avenatti or other persons acting for him or under his control; and (3) all such information maintained by EA in its ordinary course of business was included on the computer information storage hardware at the

1

EXHIBIT 2
52

closing.  The Receiver also requires Mr. Avenatti's written confirmation as to the scope of EA client, business, financial and other proprietary information in his possession or the possession of others acting for him or under his control.  Thanks,

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@lgbfirm.com
Web:  www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT 2
53

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is entered into as of August 1, 2018 (the "Closing Date") by and between Eagan Avenatti LLP, a California Limited Liability Partnership ("Seller"), and The X-Law Group PC, a California Professional Corporation ("Purchaser"). The Seller and the Purchaser shall each be referred to individually as a "Party" and collectively as the "Parties."

### RECITALS

WHEREAS, the Seller is the owner of the assets described on Exhibit A (the "Assets");

WHEREAS, the Seller currently has an outstanding obligation due to the Purchaser that is in excess of the value of the Assets;

WHEREAS, the Seller acknowledges the outstanding obligation due to the Purchaser;

WHEREAS, the Seller believes that selling the Assets in exchange for the extinguishment of set amounts owed to the Purchaser equal to the value of the Assets is in the best interest of the Seller in order to avoid legal actions by the Purchaser;

WHEREAS, the Purchaser believes that acquiring the Assets in exchange for the extinguishment of set amounts owed to it by the Seller is in the best interest of the Purchaser in order to partially recover an outstanding debt and avoid legal actions against the seller;

WHEREAS, the Seller desires to sell to Purchaser, and the Purchaser desires to purchase and acquire from the Seller, Seller's interest in the Assets according to the terms set forth herein.

NOW, THEREFORE, in consideration of the mutual promises herein contained, the Parties hereby agree as follows:

**I. *Purchase and Sale of the Assets***

1.1 Purchase and Sale of Assets. The Seller hereby sells, transfers, assigns, and delivers to the Purchaser, free and clear of any liens or encumbrances of any kind, all of the Seller's right, title, and interest in the Assets.

1.2 Assumption of Liabilities. The Purchaser will not assume any liabilities or obligations related to the Assets, and Seller represents that there are no liabilities or obligations related to the Assets.

1.3 Closing. The closing shall be deemed to have taken place on the Closing Date.

1.4 Post-Closing Activities. At any time after the Closing Date, upon any Party's written request and without further consideration, the other Party shall take such other actions as the requesting Party may reasonably deem necessary or desirable in order to consummate the terms, and recognize the benefits, of obligations under and transactions contemplated by this Agreement.

1.5 Planned Lease Back. The Seller, as a material term of this sale, requests, and Purchaser hereby grants, a lease back of the items for the period, amount and conditions set forth in the ancillary "Lease Back Agreement."

1

EXHIBIT 2
54

## II. *Purchase Price*

In consideration of the Seller's sale, transfer, and assignment of the Assets, the Purchaser shall issue the Seller the following:

2.1 <u>Forgiveness of Debt</u>. The Seller currently owes the Purchaser in excess of $2,000,000.00 (Two Million United States Dollars, the "Debt"). In exchange for the Assets, the Purchaser is forgiving $500,000.00 (five hundred thousand United States Dollars and no cents) of the Debt (the "Purchase Price").

## III. *Representations and Warranties of the Seller*

The Seller represents and warrants to the Purchaser, as of the date of this Agreement and again as of the Closing, as follows:

3.1 <u>Organization</u>. The Seller is a Limited Liability Partnership, duly organized, validly existing, and in good standing under the laws of California, and has all requisite power and authority to carry on its business as now conducted by it and to own and operate its assets as now owned and operated by it.

3.2 <u>Authority; Enforceability</u>.

(a) The Seller has the right, power, and authority to execute and deliver this Agreement and all other documents executed or to be executed by the Seller pursuant to this Agreement (the "Transaction Documents"), and to perform its obligations thereunder. The Transaction Documents, to which the Seller is a Party, constitute (or will, when executed and delivered as contemplated herein, constitute) the legally binding obligations of the Seller, enforceable in accordance with their respective terms.

(b) The execution, delivery, and performance of the Transaction Documents by the Seller, and the consummation of the transactions contemplated thereby, do not and will not: (i) require the consent, waiver, approval, license, or other authorization of any Person, except as provided for herein; (ii) violate any of provision of applicable law; (iii) contravene, conflict with, or result in a violation of any provision of the Seller's Organizational Documents; (iv) conflict with, require a consent or waiver under, result in the termination of any provisions of, constitute a default under, accelerate any obligations arising under, trigger any payment under, result in the creation of any lien pursuant to, or otherwise adversely affect, any contract to which the Seller is a party or by which any of its assets are bound, in each such case whether with or without the giving of notice, the passage of time, or both.

(c) All requisite corporate action has been taken by the Seller to authorize and approve the execution and delivery of the Transaction Documents, the performance by the Seller of its obligations thereunder, and of all other acts necessary or appropriate for the consummation of the transactions contemplated by this agreement and the Transaction Documents, if any.

3.3 <u>Legal Actions</u>. There is no demand, action, suit, claim, proceeding, complaint, grievance, charge, inquiry, hearing, arbitration, or governmental investigation of any nature, public or private, (each, a "Proceeding") pending or, to the knowledge of the Seller, threatened by or against the Seller (or any of its officers, directors, partners, or employees) related to the Assets, or involving any of the Assets, nor is there any basis for any such legal proceeding.

3.4 <u>Personal Property, Inventory, and Title of Assets</u>. The Assets were acquired by the Seller in bona fide, arms-length transactions entered into in the ordinary course of business. The Seller owns, and at the Closing, the Purchaser shall be vested with, all right, title, and interest in and to all of the Assets

2

EXHIBIT 2
55

free and clear of any and all liens.

### 3.5 Material Contracts.

(a)        The Seller has previously delivered to the Purchaser true and correct copies of all such material contracts (or accurate written summaries of any oral material contract) related to the Assets, each as currently in effect. If none are delivered, then the Seller represents that none exist.

(b)        The Seller has not breached, violated, or defaulted under (or taken or failed to take any action that, with the giving of notice, the passage of time, or both would constitute a breach, violation, or default under), or received notice alleging that the Seller has breached, violated, or defaulted under (or taken or failed to take any action that, with the giving of notice, the passage of time, or both would constitute a breach, violation, or default under) any contract included in the Assets, or for the benefit of the Assets. No other party obligated to the Seller pursuant to any such contract has breached, violated, or defaulted under (or taken or failed to take any action that, with the giving of notice, the passage of time, or both would constitute a breach, violation, or default under) any such contract.

### 3.6 Brokers. Neither the Seller nor any other person acting on its behalf has incurred any obligation or liability to any person for any brokerage fees, agent's commissions, or finder's fees in connection with the execution or delivery of the

## IV. Representations and Warranties of the Purchaser

### 4.1 Organization. The Purchaser is a Professional Corporation duly organized, validly existing, and in good standing under the laws of the State of California.

### 4.2 Authority; Enforceability. The Purchaser has full corporate power and authority to execute and deliver this Agreement, and the performance by the Purchaser of its duties and obligations thereunder, and the taking of all other acts necessary and appropriate for the consummation of the transactions contemplated thereby.

### 4.3 Brokers. The Purchaser has not incurred any obligation or liability to any Person for any brokerage fees, agent's commissions, or finder's fees in connection with the execution or delivery of the Transaction Documents or the transactions contemplated hereby.

### 4.4 Purchase for Own Account. The Purchaser represents that it is acquiring the Assets solely for its own account and beneficial interest.

## V. Consents

The Seller will use its reasonable best efforts to obtain or cause to be obtained any consents required in connection with the transactions contemplated by any of the Transaction Documents that are requested by the Purchaser and that have not been previously obtained prior to or at the Closing. Notwithstanding anything to the contrary set forth herein, this Agreement shall not constitute an assignment or attempt to assign or transfer any interest in any contract or permit otherwise included in the Assets, or any claim, right or benefit arising thereunder or resulting therefrom, if such assignment or transfer is without the consent of a third party and would constitute a breach or violation thereof or adversely affect the rights of the Purchaser or the Assets.

Until all such consents are obtained, the Seller shall cooperate in any arrangement reasonably satisfactory to the Purchaser designed to fulfill the Seller's obligations thereunder and to afford the

3

EXHIBIT 2
56

Purchaser the continued full benefits thereof.

## VI. *Covenants*

6.1 <u>Further Assurances</u>. Where necessary, from time to time (including after the Closing), the Parties will execute and deliver such other documents, certificates, agreements, and other writings and take such other actions as may reasonably be necessary or requested by another Party in order to consummate, evidence or implement expeditiously the transactions contemplated by this Agreement.

6.2 <u>Fulfillment of Conditions</u>. The Parties hereto agree to take and to cause to be taken in good faith commercially reasonable efforts to fulfill, as soon as reasonably practicable, the conditions to Closing.

6.3 <u>Transfer of assets</u>. The Parties hereto shall cooperate with one another in determining how to best transfer, store, preserve and safeguard the Assets. Seller will cooperate with Purchaser to expeditiously resolve any problems with the transfer of the tangible Assets.

## VII. *Survival of Representations, Warranties, and Covenants.*

Section 7.1 <u>Survival of Representations, Warranties, and Covenants</u>.

(a)     Except as otherwise provided in this Section 7.1, all representations and warranties contained herein, and the right to assert claims in respect of any breach thereof, shall survive the Closing and any investigation heretofore or hereafter conducted by or on behalf of the Party entitled to benefit thereof, and shall expire on the third (3rd) anniversary of the Closing Date.

(b)     Notwithstanding anything to the contrary herein, the survival period in respect of any representation or warranty in this Agreement, or any related claim, shall be extended automatically to include any time period necessary to resolve a claim which was asserted but not resolved before expiration of such survival period. Liability for any such item shall continue until such claim shall have been finally settled, decided, or adjudicated.

(c)     Notwithstanding anything herein to the contrary, all covenants, agreements and obligations contained herein shall survive the Closing and not expire unless otherwise specifically provided in this Agreement.

Section 7.2 <u>No Other Representations; Express Negligence</u>.

(a)     THE REPRESENTATIONS AND WARRANTIES OF THE SELLER AND PURCHASER CONTAINED IN THIS AGREEMENT AND THE OTHER TRANSACTION DOCUMENTS, IF ANY, CONSTITUTE THE SOLE AND EXCLUSIVE REPRESENTATIONS AND WARRANTIES OF SUCH PARTIES, RESPECTIVELY, IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED HEREBY. EXCEPT FOR SUCH REPRESENTATIONS AND WARRANTIES, NONE OF SELLER, PURCHASER OR ANY OTHER PERSON MAKES ANY OTHER EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WITH RESPECT TO SUCH PARTIES OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, AND EACH PARTY DISCLAIMS ANY OTHER REPRESENTATIONS OR WARRANTIES, WHETHER MADE BY SUCH PARTIES OR ANY OF THEIR OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, OR REPRESENTATIVES. PURCHASER ACKNOWLEDGES AND AGREES THAT IT HAS NOT RELIED ON ANY REPRESENTATIONS AND WARRANTIES OTHER THAN THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT OR THE OTHER

4

EXHIBIT 2
57

TRANSACTION DOCUMENTS IN MAKING ITS INVESTMENT DECISION WITH RESPECT TO THE ASSETS.

**VIII.** *Miscellaneous*

8.1 <u>Assignment</u>. Neither this Agreement nor any interest hereunder will be assignable in part or in whole by either Party without the prior written consent of the non-assigning Party, which consent will not be unreasonably withheld, conditioned, or delayed.

8.2 <u>Governing Law and Venue</u>. This Agreement is executed pursuant to and shall be interpreted and governed for all purposes under the laws of the State of California. Any cause of action brought to enforce any provision of this Agreement shall be brought in Los Angeles, California pursuant to section 8.3 below. If any provision of this Agreement is declared void, such provision shall be deemed severed from this Agreement, which shall otherwise remain in full force and effect. This Agreement supersede any previous agreements, written or oral, expressed or implied, between the parties relating to the subject matter hereof.

8.3 <u>Dispute Resolution</u>. In the event of any controversy, dispute, or claim arising out of or related to this Agreement or the breach thereof, the Purchaser and the Seller agree to meet and confer in good faith to attempt to resolve the controversy, dispute, or claim without an adversary proceeding. If the controversy, dispute, or claim is not resolved to the mutual satisfaction of the Purchaser and the Seller within ten (10) business days of notice of the controversy, dispute, or claim, the Purchaser and the Seller agree to waive their rights, if any, to a jury trial, and to submit the controversy, dispute, or claim to a retired judge or justice for binding, confidential arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The Purchaser and the Seller agree that the only proper venue for the submission of claims shall be the Los Angeles County, California. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any dispute resolution proceedings contemplated by this provision shall be as confidential and private as permitted by law.

8.4 <u>Notices</u>. Any notice, request, demand, or other communication given pursuant to the terms of this Agreement shall be deemed given upon delivery, and may only be delivered or sent via hand delivery, facsimile, or by overnight courier, correctly addressed to the addresses of the parties indicated below or at such other address as such Party shall in writing have advised the other Party.

| If to the Seller: | Michael Avenatti / Eagan Avenatti LLP<br>520 Newport Center Drive, Ste, 1400, Newport Beach, CA<br>E-mail: MAvenatti@eaganavenatti.com<br>Fax: 949-706-7050 |
|---|---|
| If to the Purchaser: | Filippo Marchino / The X-Law Group PC<br>1910 W. Sunset Blvd, Suite 450, Los Angeles, CA 90026<br>E-mail: FM@xlawx.com<br>Fax: 213-599-3370 |

5

EXHIBIT 2
58

8.5 <u>Amendment</u>. No amendment, modification, or supplement of any provision of this Agreement will be valid or effective unless made in writing and signed by a duly authorized officer of each Party.

8.6 <u>Waiver</u>. No provision of this Agreement will be waived by any act, omission, or knowledge of a Party or its agents or employees except by an instrument in writing expressly waiving such provision and signed by a duly authorized officer of the waiving Party.

8.7 <u>Severability</u>. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under the applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be in effective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement.

8.8 <u>Attorneys' Fees</u>. In the event that any suit, arbitration, legal action, proceeding, or dispute between the Parties arises in connection with this Agreement, the prevailing Party shall be entitled to recover all expenses, costs, and fees, including reasonable attorney's fees, actually incurred in association with such action.

8.9 <u>Entire Agreement</u>. This Agreement, including all exhibits, is the complete, final, and exclusive understanding and agreement of the Parties and cancels and supersedes any and all prior negotiations, correspondence, and agreements, whether oral or written, between the Parties respecting the subject matter of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first written hereinabove.

"Seller"

Eagan Avenatti, LLP
By: Michael Avenatti, Managing Partner

"Purchaser"

X-Law Group, P.C.
By: Filippo Marchino, President

6

EXHIBIT 2
59

<u>**Exhibit A**</u>

**Included Assets**

1.  All art presently located at 520 Newport Center Dr., Suite 1400, Newport Beach 92660, including but not limited to:
    a.  All Frank Stella prints
    b.  "Mask" bike chain sculpture hanging in the main conference room
    c.  "Finger Print" metal hanging sculptures
    d.  Wax paintings hanging in suite hallway
    e.  Oil painting hanging in Avenatti office
    f.  Metal sculpture at end of hallway by window
    g.  Porsche print in Avenatti office
    h.  Prints in copy room and small conference room

2.  All computer servers located at 520 Newport Center Dr., Suite 1400, Newport Beach 92660, including but not limited to:  the print server, the software server, the document server and email server, together with all server racks.

3.  All furniture located at 520 Newport Center Dr., Suite 1400, Newport Beach 92660, including but not limited to:
    a.  Three conference room tables with chairs, together with two credenzas
    b.  Desk in Avenatti office, together with credenza, coffee table and chairs
    c.  4 Cubicles and chairs
    d.  Seven desks in offices, together with small credenzas and chairs
    e.  Shelving in storage room and closet off of reception area
    f.  Reception desk

4.  All desktop computers and monitors located at 520 Newport Center Dr., Suite 1400, Newport Beach 92660.

5.  All software and associated licenses, whether stored on the servers or desktops located at 520 Newport Center Dr., Suite 1400, Newport Beach 92660.

7

EXHIBIT 2
60

**EXHIBIT 3**

EXHIBIT 3

# mixinIT

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

# INVOICE

INVOICE: I9500250
Date: 11/19/2018

**TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

**SHIP TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|-----|-------------|------------|------------|
| 1 | Setup Fee | $1,000.00 | $1,000.00 |
| 1 | First Month of Data Center Colocation Services - 11/19/2018<br>Billing cycle will occur on the 19th of each month.<br>Next automatic bill date - 12/19/2018. | $1,000.00 | $1,000.00 |

Note: Paid - Total invoice paid via credit card on 11/19/2018 (Visa 1551)

| | |
|---|---|
| SUBTOTAL | $2,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $2,000.00 |
| TOTAL DUE | $0.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

EXHIBIT 3
61

# mixinIT

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

# INVOICE

**INVOICE:** I9500251
**Date:** 12/19/2018

**TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

**SHIP TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|-----|-------------|-----------|-----------|
| 1 | Monthly Data Center Colocation Services – 12/19/2018 – 1/19/2019<br>Payment due on or before 12/19/2018 | $1,000.00 | $1,000.00 |

Note: Pay invoice on or before 12/19/2018 to avoid service disruption
Easy payment method available via credit card over the phone

| | |
|---|---|
| SUBTOTAL | $1,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $1,000.00 |
| TOTAL DUE | $1,000.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

EXHIBIT 3
62



# INVOICE

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

INVOICE: I9500252
Date: 1/19/2019

**TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

**SHIP TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|-----|-------------|------------|------------|
| 1 | Monthly Data Center Colocation Services – 1/19/2019 – 2/19/2019<br>Payment due on or before 1/25/2019 | $1,000.00 | $1,000.00 |

Note: Pay Invoice on or before 1/25/2019 to avoid service disruption
Easy payment method available via credit card over the phone

| | |
|---|---|
| SUBTOTAL | $1,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $1,000.00 |
| TOTAL DUE | $1,000.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

EXHIBIT 3
63



# INVOICE

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

**INVOICE:** I9500253
**Date:** 2/19/2019

**TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

**SHIP TO:**
EAGAN AVENATTI
520 Newport Center Dr., #1400
Newport Beach, CA 92660
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|---|---|---|---|
| 1 | Monthly Data Center Colocation Services – 2/19/2019 – 3/19/2019<br>Payment due on or before 2/26/2019 | $1,000.00 | $1,000.00 |

Note: Pay invoice on or before 2/26/2019 to avoid service disruption
Easy payment method available via credit card over the phone

| | |
|---|---|
| SUBTOTAL | $1,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $1,000.00 |
| TOTAL DUE | $1,000.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

EXHIBIT 3
64

| | |
|---|---|
| **From:** | j kay |
| **To:** | MixinIT |
| **Subject:** | Address Info |
| **Date:** | Tuesday, February 26, 2019 1:01:58 PM |

Frankie -

Please direct the invoices to:

The X-Law Group
1910 Sunset Boulevard, Ste. 450
Los Angeles, CA 90026

please use this email address:

xlacctj@gmail.com

Judy
949-706-7000

EXHIBIT 3
65

| From: | j kav |
|---|---|
| To: | MixinIT |
| Subject: | Removal of Employee |
| Date: | Thursday, February 28, 2019 1:00:17 PM |

Frankie -

John Arden (jarden@eaganavenatti.com) is leaving our firm at the end of the day today. Could you please remove his access from the remote server tomorrow am?

Thank you.

Judy

EXHIBIT 3
66

| | |
|---|---|
| **From:** | j.kay |
| **To:** | MixinIT |
| **Subject:** | Removal of Another Employee |
| **Date:** | Tuesday, March 5, 2019 8:59:16 AM |

Frankie -

Per our conversation, Carlos Colorado ccolorado@eaganavenatti.com is no longer with our firm so we will need his email shut down as of today.

Thank you.

Judy

EXHIBIT 3
67

| | |
|---|---|
| **From:** | 1 kav |
| **To:** | MixInIT |
| **Subject:** | Removal of Additional Employees |
| **Date:** | Friday, March 15, 2019 12:08:44 PM |

Frankie -

We need to have Hillary Wolett and Thomas Gray removed from the email and remote access.

Thank you.

Judy

EXHIBIT 3
68

# mixinIT

4533 MacArthur Blvd
Newport Beach, CA 92660
(949) 242-0193

# INVOICE

**INVOICE:** I9500254
**Date:** 3/19/2019

**TO:**
THE X-LAW GROUP
1910 SUNSET BOULEVARD, STE. 450
Los Angeles, CA 90026
(949) 706-7000

**SHIP TO:**
THE X-LAW GROUP
1910 SUNSET BOULEVARD, STE. 450
Los Angeles, CA 90026
(949) 706-7000

| QTY | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|-----|-------------|------------|------------|
| 1 | Monthly Data Center Colocation Services -- 3/19/2019 – 4/19/2019<br>Payment due on or before 3/26/2019 | $1,000.00 | $1,000.00 |

Note: Pay invoice on or before 3/26/2019 to avoid service disruption
Easy payment method available via credit card over the phone

| | |
|---|---|
| SUBTOTAL | $1,000.00 |
| *TAX | $0.00 |
| SHIPPING | $0.00 |
| TOTAL | $1,000.00 |
| TOTAL DUE | $1,000.00 |

PRICES SUBJECT TO CHANGE - PRICES BASED UPON TOTAL PURCHASE - ALL DELIVERY, TRAINING OR CONSULTING SERVICES TO BE BILLED AT PUBLISHED RATES FOR EACH ACTIVITY INVOLVED - ALL HARDWARE COMPUTER COMPONENTS PROPOSED ABOVE ARE COVERED BY A LIMITED WARRANTY, COVERING PARTS AND LABOR FOR HARDWARE ONLY AND ON A DEPOT BASIS - WE SPECIFICALLY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OR WITH REGARD TO ANY LICENSED PRODUCTS. WE SHALL NOT BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, GOODWILL, DATA, INTERRUPTION OF BUSINESS

EXHIBIT 3
69

**EXHIBIT 4**

EXHIBIT 4

**John Reitman**

| | |
|---|---|
| **From:** | Tom Warren <twarren@piercebainbridge.com> |
| **Sent:** | Thursday, July 11, 2019 5:40 PM |
| **To:** | John Reitman; Brian Weiss |
| **Cc:** | Ellen Pansky; Caroline Polisi |
| **Subject:** | RE: In the Matter of:  Michael John Avenatti, Case No. SBC-19-TE-30259-YDR |

The facts as I recited them are completely accurate. You claim that "the receivership estate does not have the expertise or money to set up and maintain the servers or to access the forensic images and we have so informed Avenatti." That is a strawman. Your client does not need to maintain the servers, because he has a forensic image of the documents on them. Nor does he have to access the forensic images—all he needs to do is make a copy of the forensic image and give it to Mr. Avenatti.

Yet your client has inexplicably refused to give Mr. Avenatti a copy of his own files. Instead, he has created an arbitrary process that unconstitutionally and improperly limits Mr. Avenatti's access to his own files, that requires technical expertise that the receiver does not have, and that requires Mr. Avenatti to pay for that technical expertise.

Your client's continued refusal to provide Mr. Avenatti a copy of his electronic files deprives him of his ability to defend himself in his criminal and disciplinary proceedings, and it will unnecessarily delay those proceedings. I hope you will reconsider your position.

**Tom Warren,** Partner
Pierce Bainbridge Beck Price & Hecht LLP

30195 Chagrin Blvd., Suite 210N
Pepper Pike, OH 44124

355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071

O: (216) 302-7487 C: (216) 789-9121

Boston  |  Cleveland  |  Los Angeles  |  New York  |  Washington, D.C.

PIERCE BAINBRIDGE

This message, including attachments, is confidential and may contain information protected by the attorney-client privilege or work product doctrine. If you are not the addressee, any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this email in error, please destroy it and notify me immediately.

**From:** John Reitman <jreitman@lgbfirm.com>
**Sent:** Thursday, July 11, 2019 8:14 PM
**To:** Tom Warren <twarren@piercebainbridge.com>
**Cc:** Brian Weiss <bweiss@force10partners.com>
**Subject:** Re: In the Matter of: Michael John Avenatti, Case No. SBC-19-TE-30259-YDR

Mr. Warren, your recitation of "facts" is not accurate. Both the Receiver and I have informed Mr. Avenatti that he may obtain documents to which he is entitled.

1

EXHIBIT 4
70

The Eagan Avenatti servers are not set up to operate (that was the case when we first located them after Avenatti claimed he did not know where they were). The Receiver does have a forensic image of the contents if the servers - that information can be accessed by a qualified expert.

I am informed that the information on the servers (and therefor the forensic images) includes EA business and financial records, emails, case documents and client files. The receivership estate does not have the expertise or money to set up and maintain the servers or to access the forensic images and we have so informed Avenatti.

The Receiver has offered to make the forensic images available to Avenatti to make a copy of those documents reasonably calculated to enable him to defend himself against the criminal and civil actions filed against him on the following terms: (1) Avenatti will need to provide the Receiver with a written list of the client files and document categories he wants; (2) based on that list the Receiver will provide Avenatti with an estimate of the cost to search and retrieve the documents - the estimate will be prepared by a qualified expert; (3) in advance of commencing the search Avenatti will need to pay the full estimated cost to the Receiver. If the actual cost is less than the estimate the Receiver will return the unused funds. If the actual cost is greater than the estimate Avenatti will need to pay the additional amount before the document copy will be released to him. In the alternative, Avenatti may designate his own expert to do the work. That expert must be acceptable to the Receiver and that expert's work will be supervised by a member of the Receiver's accounting firm at Avenatti's expense. This procedure has already been used in two active litigation matters in which Avenatti formerly was an attorney of record. I understand there is a protective order in place in one of the criminal actions. That order also would apply for this proposed production. The Receiver also does not object to the Government producing documents to Avenatti on terms that do not compromise the rights of Avenatti's former clients.

The Receiver also will permit copies of documents that are not reasonably calculated to enable to defend himself to be made provided that, in addition to he above terms, Avenatti provides the Receiver with the written request/ approval of the client. That request/approval must include the statement that the client has been informed that his/her consent is voluntary and that he/she has been given a reasonable opportunity to consult with independent legal counsel concerning the potential consequences of signing the consent.

I currently am out of town and will not return to my office until Tuesday.

Mr. A

Sent from my iPhone

On Jul 11, 2019, at 2:43 PM, Tom Warren <twarren@piercebainbridge.com> wrote:

Dear Mr. Reitman:

EXHIBIT 4
71

I write to you as co-counsel for Michael Avenatti in connection with the California State Bar's application for involuntary inactive enrollment. I understand that your client, Brian Weiss, allowed the government to make a copy of all of Eagan Avenatti's electronic documents located on the firm's servers, and that since April 30, 2019, you have been in possession of a copy of those electronic documents as well. I also understand that you have refused to make, or allow Mr. Avenatti to make, a copy of those electronic documents—documents that constitute the entirety of the electronic files and email correspondence of Eagan Avenatti.

Mr. Avenatti is entitled to a copy of his own files—Mr. Avenatti was the sole owner of Eagan Avenatti—to function as counsel for his clients and to defend himself in the criminal cases brought against him in the Southern District of New York and the Central District of California as well the California State Bar proceeding. It is inexplicable why your client has refused to provide Mr. Avenatti a copy over the last 100 days, and he has no cause to limit Mr. Avenatti's access to his own files.

Your client's refusal to give Mr. Avenatti a copy of his own files severely prejudices Mr. Avenatti's ability to defend himself and will undoubtedly delay the proceedings in which Mr. Avenatti is involved. Please have your client provide a copy of his electronic documents immediately.

Sincerely,

Tom Warren

**Tom Warren**, Partner
Pierce Bainbridge Beck Price & Hecht LLP

335 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071

30195 Chagrin Blvd., Suite 210N
Pepper Pike, OH 44124

O: (216) 302-7487 C: (216) 789-9121

**Boston | Cleveland | Los Angeles | New York | Washington, D.C.**

<image001.png>

This message, including attachments, is confidential and may contain information protected by the attorney-client privilege or work product doctrine. If you are not the addressee, any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this email in error, please destroy it and notify me immediately.

EXHIBIT 4
72

## John Reitman

| | |
|---|---|
| **From:** | John Reitman |
| **Sent:** | Thursday, July 11, 2019 5:14 PM |
| **To:** | Tom Warren |
| **Cc:** | Brian Weiss |
| **Subject:** | Re: In the Matter of:  Michael John Avenatti, Case No. SBC-19-TE-30259-YDR |

Mr. Warren, your recitation of "facts" is not accurate. Both the Receiver and I have informed Mr. Avenatti that he may obtain documents to which he is entitled.

The Eagan Avenatti servers are not set up to operate (that was the case when we first located them after Avenatti claimed he did not know where they were). The Receiver does have a forensic image of the contents if the servers - that information can be accessed by a qualified expert.

I am informed that the information on the servers (and therefor the forensic images) includes EA business and financial records, emails, case documents and client files. The receivership estate does not have the expertise or money to set up and maintain the servers or to access the forensic images and we have so informed Avenatti.

The Receiver has offered to make the forensic images available to Avenatti to  make a copy of those documents reasonably calculated to enable him to defend himself against the criminal and civil actions filed against him on the following terms: (1) Avenatti will need to provide the Receiver with a written list of the client files and document categories he wants; (2) based on that list the Receiver will provide Avenatti with an estimate of the cost to search and retrieve the documents - the estimate will be prepared by a qualified expert; (3) in advance of commencing the search Avenatti will need to pay the full estimated cost to the Receiver. If the actual cost is less than the estimate the Receiver will return the unused funds. If the actual cost is greater than the estimate Avenatti will need to pay the additional amount before the document copy will be released to him. In the alternative, Avenatti may designate his own expert to do the work. That expert must be acceptable to the Receiver and that expert's work will be supervised by a member of the Receiver's accounting firm at Avenatti's expense. This procedure has already been used in two active litigation matters in which Avenatti formerly was an attorney of record.  I understand there is a protective order in place in one of the criminal actions. That order also would apply for this proposed production. The Receiver also does not object to the Government producing documents to Avenatti on terms that do not compromise the rights of Avenatti's former clients.

The Receiver also will permit copies of documents that are not reasonably calculated to enable to defend himself to be made provided that, in addition to he above terms, Avenatti provides the Receiver with the written request/ approval of the client. That request/approval must include the statement that the client has been informed that his/her consent is voluntary and that he/she has been given a reasonable opportunity to consult with independent legal counsel concerning the potential consequences of signing the consent.

I currently am out of town and will not return to my office until Tuesday.

EXHIBIT 4
73

Mr. A

Sent from my iPhone

On Jul 11, 2019, at 2:43 PM, Tom Warren <twarren@piercebainbridge.com> wrote:

Dear Mr. Reitman:

I write to you as co-counsel for Michael Avenatti in connection with the California State Bar's application for involuntary inactive enrollment.  I understand that your client, Brian Weiss, allowed the government to make a copy of all of Eagan Avenatti's electronic documents located on the firm's servers, and that since April 30, 2019, you have been in possession of a copy of those electronic documents.  I also understand that you have refused to make, or allow Mr. Avenatti to make, a copy of those electronic documents—documents that constitute the entirety of the electronic files and email correspondence of Eagan Avenatti.

Mr. Avenatti is entitled to a copy of his own files—Mr. Avenatti was the sole owner of Eagan Avenatti—to function as counsel for his clients and to defend himself in the criminal cases brought against him in the Southern District of New York and the Central District of California as well the California State Bar proceeding.  It is inexplicable why your client has refused to provide Mr. Avenatti a copy over the last 100 days, and he has no cause to limit Mr. Avenatti's access to his own files.

Your client's refusal to give Mr. Avenatti a copy of his own files severely prejudices Mr. Avenatti's ability to defend himself and will undoubtedly delay the proceedings in which Mr. Avenatti is involved.  Please have your client provide a copy of his electronic documents immediately.

Sincerely,

Tom Warren

**Tom Warren,** Partner
Pierce Bainbridge Beck Price & Hecht LLP

335 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071

30195 Chagrin Blvd., Suite 210N
Pepper Pike, OH 44124

O: (216) 302-7487 C: (216) 789-9121

Boston  |  Cleveland  |  Los Angeles  |  New York  |  Washington, D.C.

<image001.png>

This message, including attachments, is confidential and may contain information protected by the attorney-client privilege or work product doctrine. If you are not the addressee, any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this email in error, please destroy it and notify me immediately.

2

EXHIBIT 4
74

**EXHIBIT 5**

EXHIBIT 5

1  Tonya E. Prescott, Esq. — CSB# 123530
   Valerie E. Prescott, Esq. — CSB# 170134
2
   *Prescott & Prescott Inc.*
3      *Certified Family Law Specialists*
   *The State Bar of California Board of Legal Specialization*
4      400 West First Street
5      Tustin, California 92780-3003

6  Tel: (714) 730-5200 Fax: (714) 730-5225

7  Attorneys for Respondent, Lisa Storie-Avenatti

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

DEC 0 4 2018

DAVID H. YAMASAKI, Clerk of the Court

BY: L. DUDEVOIR    DEPUTY

8          **SUPERIOR COURT, STATE OF CALIFORNIA**

9      **COUNTY OF ORANGE, LAMOREAUX JUSTICE CENTER**

10                **FAMILY LAW DIVISION**

11  Michael Avenatti,                    CASE NO.:   **17 D 009930**

12              Petitioner,              **STIPULATION AND ORDER THEREON**

13  vs.                                 Assigned for all purposes to:
                                            **Judge Carol L. Henson**
14  Lisa Storie-Avenatti,                   **Department L71**

15              Respondent.

16

17      *IT IS HEREBY STIPULATED*, by and between Petitioner, Michael Avenatti, and Respondent

18  Lisa Storie- Avenatti, individually and through her attorney of record, Valerie E. Prescott, of Prescott

19  & Prescott, Inc. as follows:

20  1.      Petitioner, Michael Avenatti, acknowledges service and receipt of the following

21          documents/orders:

22          a.      *Notice of Ruling - Motions (2) To Compel Further Discovery Responses (Demand for*

23                  *Production of Documents, Set One date 12/29/2017; Form Interrogatories - Family Law*

24                  *Set One served 12/29/2017);*

25          b.      *Findings and Order After Hearing* filed on October 22, 2018;

26          c.      *Application and Order to Appear for Examination,* set for 12/7/2018 at 8:45 a.m. in L71,

27                  a copy of which is attached hereto, as Exhibit A.

28  2.      Both parties agree not to file any motions in the pending dissolution matter, case #17D009930,

12/1/18                          STIPULATION AND ORDER THEREON
PETITIONER: MICHAEL AVENATTI
                                    EXHIBIT 5
                                       75

1    for 60 days from the date that this agreement was initially reached on 12/13/2018, i.e. not until

2    1/13/2019, provided that Petitioner, Michael Avenatti makes a child support payment to

3    Respondent, Lisa Storie-Avenatti of at least $40,000 on 12/3/2018 and $40,000 on 1/2/2019.

4    If either payment is not made timely, and in full, Respondent, Lisa Storie-Avenatti, shall not be

5    restrained from filing nor proceeding with any motion within the family law dissolution case

6    #17D009930.

7    3.   It is stipulated that counsel for Respondent shall appear and continue the hearing presently set

8    for 12/7/2018.  Petitioner, Michael Avenattti, waives his personal appearance for the 12/7/2018

9    Judgment Debtor hearing.  Petitioner, Michael Avenatti, stipulates and agrees to accept service

10   of the new hearing date via email sent to his email address of mavenatti@eaganavenatti.com.

11   Petitioner, Michael Avenatti, further stipulates that service by email of the new hearing date is

12   valid personal service upon him and that the Court's personal jurisdiction over him will continue

13   to the new hearing date.

14   4.   Petitioner, Michael Avenatti, hereby stipulates to turn over the assets listed on Exhibit B as

15   partial satisfaction of the support due and owing from Petitioner to Respondent pursuant to the

16   *Findings and Order After Hearing* filed on 10/22/2018 (" hereinafter "SUPPORT ORDER").

17   The assets listed on Exhibit B shall be liquidated and sold. The Parties agree that Petitioner's

18   stipulation herein does not waive any of Petitioner's statutory legal or procedural objections to

19   the SUPPORT ORDER and Petitioner expressly reserves the right to challenge the support order.

20   5.   The parties hereby stipulate that the assets listed on Exhibit B attached hereto and incorporated

21   herein  shall be characterized as community property, assigned to Petitioner, Michael Avenatti

22   as his sole and separate property, and subject to equalization to Respondent, Lisa Storie-

23   Avenatti.

24   6.   With respect to each asset listed on Exhibit B, and turned over to Respondent pursuant to this

25   agreement, the  Court hereby reserves for future determination the issue of characterization and

26   allocation of any post separation lien or encumbrance incurred by the Petitioner where an asset

27   on Exhibit B was used for collateral.

28   7.   The Parties agree that with respect to each asset listed on Exhibit B and turned over to

---

12/1/18     PETITIONER: MICHAEL AVENATTI          STIPULATION AND ORDER THEREON

EXHIBIT 5
76

Respondent:

a.    Respondent shall have exclusive possession custody and control of said asset pending sale;

b.    The issue of which party is responsible for revolving payments on any outstanding liens or encumbrances pending sale is reserved for future determination;

c.    Petitioner shall maintain all insurance polices covering said assets pending sale;

d.    Respondent is hereby authorized to sell each asset forthwith without any further authorization from Petitioner;

e.    Respondent shall satisfy any asset specific lien or encumbrance from the gross proceeds of sale and shall retain the net proceeds of sale as the partial payment toward the SUPPORT ORDER.

f.    Respondent shall provide an accounting to Petitioner of all assets sold.

8.    The Parties agree that payments made from the sale of the assets turned over to Respondent shall be applied first to Petitioner's child support obligation, then to Petitioner's spousal support obligation and then toward any other amounts ordered in the nature of support under the SUPPORT ORDER.

9.    Northwestern Mutual Life Insurance Policy #18441100.   Petitioner, Michael Avenatti shall provide documentary proof that the payments on said policy are current.   Petitioner, Michael Avenatti shall maintain and pay all payments as they become due on said policy. Petitioner, Michael Avenatti shall provide documentary evidence that Respondent, Lisa Storie-Avenatti is still the beneficiary of said policy on or before 12/10/2018 or within 5 business days of a demand post 12/10/2018 by Respondent, Lisa Storie-Avenatti thereafter.

10.    Petitioner, Michael Avenatti agrees that on or before 12/20/2018, he shall produce all banking records for the period 1/1/2016 through 11/30/2018 for Eagan Avenatti, LLP, Michael Avenatti, and Avenatti & Associates to Respondent's Counsel.  If documents are not received on or before 12/20/2018, Respondent, Lisa Storie-Avenatti shall not be restrained from filing any motions within the family law dissolution case after 12/20/2018. Respondent, Lisa Storie-Avenatti agrees that on or before 12/20/2018, she shall produce all banking records for the period 1/01/2016

PETITIONER: MICHAEL AVENATTI

STIPULATION AND ORDER THEREON

EXHIBIT 5
77

|   |   |   |
|---|---|---|
| 1 |   | through 11/30/2018 for Lisa Storie-Avenatti and Ikaria to Petitioner. If documents are not |
| 2 |   | received on or before 12/20/2018, Petitioner Michael Avenatti shall not be restrained from filing |
| 3 |   | any motions within the family law dissolution case after 12/20/2018. The purpose of this |
| 4 |   | exchange is to facilitate a voluntary settlement conference with a private retired judicial officer. |
| 5 | 11. | Each party shall cooperate fully with the other, shall execute any document reasonably requested |
| 6 |   | by the other or by a buyer, and to furnish information needed in order to effectuate the transfer |
| 7 |   | and sale of the assets addressed herein. |
| 8 | 12. | Within 3 business days of the request, each party shall execute the documents required in order |
| 9 |   | to transfer title and/or facilitate the sale of the items set forth herein. If either party fails or |
| 10 |   | refuses to execute the tendered documents within the time stated herein above, upon ex parte |
| 11 |   | declaration,  the Court shall upon ex parte application to the Court, appoint the Clerk of Court |
| 12 |   | of the Superior Court of California as Elisor pursuant to Code of Civil Procedure Section 128.4 |
| 13 |   | to execute such documents in the place and stead of the party who has failed or refused to do so. |
| 14 | 13. | The court's jurisdiction to award the sale or turn over of further assets is reserved until the time |
| 15 |   | of the continued further Judgment debtor hearing. |
| 16 | 14. | The court's jurisdiction is reserved over the above assets until they have been sold. |
| 17 | 15. | Each of the parties acknowledge that he or she has read this *Stipulation and Order Thereon* and |
| 18 |   | each of its provisions in full and hereby acknowledges that they have entered into this agreement |
| 19 |   | freely and voluntarily. |
| 20 | /// |   |
| 21 | /// |   |
| 22 | /// |   |
| 23 | /// |   |
| 24 | /// |   |
| 25 | /// |   |
| 26 | /// |   |
| 27 | /// |   |
| 28 |   |   |

PETITIONER: MICHAEL AVENATTI

STIPULATION AND ORDER THEREON

EXHIBIT 5
78

1    16.    This *Stipulation and Order Thereon* may be signed in separate counterparts. A facsimile or other

2           electronic signature shall be treated as an original by the Court for purposes of filing this

3           document.

4    *It is So Stipulated:*

5

6    Dated: _11-30-2018_                        *Please refer the attached signature*
                                                _____
7                                               Michael Avenatti, Respondent

     Dated: _11-30-2018_                        *Please refer the attached signature*
8                                               _____
                                                Lisa Storie-Avenatti, Respondent

9                                               *Approved as to Form and Content:*

10   Dated: _11-30-2018_
11                                              _____
                                                Valérie E. Prescott, Esq., Prescott & Prescott Inc.
12                                              Counsel for Respondent, Lisa Storie-Avenatti

13   *IT IS SO ORDERED:*
     Dated: _12/4/18_
14                                              _____
                                                Honorable Judge Carol L. Henson
15                                              Judge of the Superior Court of California
                                                County of Orange, Lamoreaux Justice Center (L71)
16

17

18

19

20

21

22

23

24

25

26

27

28

11/30/18    PETITIONER: MICHAEL AVENATTI
            RESPONDENT: LISA STORIE-AVENATTI          PAGE 5          OCSC CASE NO.: 17 D 009930

EXHIBIT 5
79

16. This *Stipulation and Order Thereon* may be signed in separate counterparts. A facsimile or other electronic signature shall be treated as an original by the Court for purposes of filing this document.

*It is So Stipulated:*

Dated: __11-30-18__

Michael Avenatti, Respondent

Dated: _____

Lisa Storie-Avenatti, Respondent

*Approved as to Form and Content:*

Dated: _____

Valerie E. Prescott, Esq.; Prescott & Prescott Inc.
Counsel for Respondent, Lisa Storie-Avenatti

*IT IS SO ORDERED:*

Dated: _____

*see first sig page*

Honorable Judge Carol L. Henson
Judge of the Superior Court of California
County of Orange, Lamoreaux Justice Center (L71)

STIPULATION AND ORDER THEREON

11/30/18

PETITIONER: MICHAEL AVENATTI
RESPONDENT: LISA STORIE-AVENATTI

PAGE 5

OCSC CASE NO.: 17 D 009930

EXHIBIT 5
80

6.    This *Stipulation and Order Thereon* may be signed in separate counterparts. A facsimile or other electronic signature shall be treated as an original by the Court for purposes of filing this document.

*I is So Stipulated:*

Dated:    11-30-18

Dated:    _____

Michael Avenatti, Respondent
_____
Lisa Storie-Avenatti, Respondent

*Approved as to Form and Content:*

Dated:    _____

_____
Valerie E. Prescott, Esq.; Prescott & Prescott Inc.
Counsel for Respondent, Lisa Storie-Avenatti

**IT IS SO ORDERED**

Dated:    _____

_____
Honorable Judge Carol T. Henson
Judge of the Superior Court of California
County of Orange, Lamoreaux Justice Center (L71)

TITIONER: MICHAEL AVENATTI
SPONDENT: LISA STORIE-AVENATTI

STIPULATION AND ORDER THEREON
PAGE 5
EXHIBIT 5
81

OOSC CASE NO.: 17 D 009930



**EXHIBIT A**

EXHIBIT 5
82

AT-138/EJ-125

| ATTORNEY OR PARTY WITHOUT ATTORNEY:                         STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|
| NAME: Matthew S. DeArmey 199294<br>FIRM NAME: THE LAW OFFICE OF MILO F. DE ARMEY<br>STREET ADDRESS: 950 WEST 17TH STREET, SUITE A<br>CITY: SANTA ANA         STATE: CA  ZIP CODE: 92706<br>TELEPHONE NO.: (714) 558-7744      FAX NO.: (714) 558-0925<br>E-MAIL ADDRESS: matt@dearmeylaw.com<br>ATTORNEY FOR (name): Lisa Storie-Avenatti | ELECTRONICALLY FILED<br>Superior Court of California<br>County of Orange<br>Lamoreaux Justice Center<br>11/6/2018 4:19 PM<br>David H. Yamasaki, Clerk of the Court<br>By: D. Henzich, Deputy |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange |
|---|
| STREET ADDRESS: 341 The City Drive |
| MAILING ADDRESS: P.O. Box 14170 |
| CITY AND ZIP CODE: Orange, CA 92868-3205 |
| BRANCH NAME: Lamoreaux Justice Center |

| PLAINTIFF Michael Avenatti |
|---|
| DEFENDANT Lisa Storie-Avenatti |

| APPLICATION AND ORDER FOR APPEARANCE AND EXAMINATION | CASE NUMBER: |
|---|---|
| [X] ENFORCEMENT OF JUDGMENT     [ ] ATTACHMENT (Third Person)<br>    [X] Judgment Debtor     [ ] Third Person | 17D009930 |

**ORDER TO APPEAR FOR EXAMINATION**

1. TO (name):  MICHAEL JOHN AVENATTI
2. YOU ARE ORDERED TO APPEAR personally before this court, or before a referee appointed by the court, to
   a. [X] furnish information to aid in enforcement of a money judgment against you.
   b. [X] answer concerning property of the judgment debtor in your possession or control or concerning a debt you owe the judgment debtor.
   c. [X] answer concerning property of the defendant in your possession or control or concerning a debt you owe the defendant that is subject to attachment.

| Date: 12/7/2018 | Time: 8:45 AM | Dept. or Div.: L71 | Rm.: |
|---|---|---|---|
| Address of court  [X] is shown above  [ ] is: | | | |

3. This order may be served by a sheriff, marshal, registered process server, or the following specially appointed person (name):
   MATTHEW S. DE ARMEY, ESQ

Date: 11/6/2018 4:19 PM

_____
Judge Lon F. Hurwitz

This order must be served not less than 10 days before the date set for the examination.

**IMPORTANT NOTICES ON REVERSE**

**APPLICATION FOR ORDER TO APPEAR FOR EXAMINATION**

4. [X] Original judgment creditor    [ ] Assignee of record    [ ] Plaintiff who has a right to attach order
   applies for an order requiring (name):
   to appear and furnish information to aid in enforcement of the money judgment or to answer concerning property or debt.
5. The person to be examined is
   a. [X] the judgment debtor.
   b. [ ] a third person (1) who has possession or control of property belonging to the judgment debtor or the defendant or (2) who owes the judgment debtor or the defendant more than $250. An affidavit supporting this application under Code of Civil Procedure section 491.110 or 708.120 is attached.
6. The person to be examined resides or has a place of business in this county or within 150 miles of the place of examination.
7. [ ] This court is not the court in which the money judgment is entered or (attachment only) the court that issued the writ of attachment. An affidavit supporting an application under Code of Civil Procedure section 491.150 or 708.160 is attached.
8. [ ] The judgment debtor has been examined within the past 120 days. An affidavit showing good cause for another examination is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 11/6/2018

JUDGE LON F. HURWITZ

MATTHEW S. DE ARMEY, ESQ.                    ▶ _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF DECLARANT)

(Continued on reverse)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>AT-138/EJ-125 [Rev. January 1, 2017]  CEB❘ Essential<br>ceb.com  ❘ jsForms | APPLICATION AND ORDER FOR<br>APPEARANCE AND EXAMINATION<br>(Attachment-Enforcement of Judgment) | Page 1 of 2<br>Code of Civil Procedure,<br>§§ 491.110, 708.110, 708.120, 708.170<br>www.courts.ca.gov |
|---|---|---|

Storie-Avenatti, Lisa

EXHIBIT 5
83

AT-138/EJ-125

**Information for Judgment Creditor Regarding Service**

If you want to be able to ask the court to enforce the order on the judgment debtor or any third party, you must have a copy of the order personally served on the judgment debtor by a sheriff, marshal, registered process server, or the person appointed in item 3 of the order at least 10 calendar days before the date of the hearing, and have a proof of service filed with the court.

**IMPORTANT NOTICES ABOUT THE ORDER**

**APPEARANCE OF JUDGMENT DEBTOR (ENFORCEMENT OF JUDGMENT)**

NOTICE TO JUDGMENT DEBTOR If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court, and the court may make an order requiring you to pay the reasonable attorney fees incurred by the judgment creditor in this proceeding.

**APPEARANCE OF A THIRD PERSON (ENFORCEMENT OF JUDGMENT)**

(1) NOTICE TO PERSON SERVED If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court, and the court may make an order requiring you to pay the reasonable attorney fees incurred by the judgment creditor in this proceeding.

(2) NOTICE TO JUDGMENT DEBTOR The person in whose favor the judgment was entered in this action claims that the person to be examined under this order has possession or control of property that is yours or owes you a debt. This property or debt is as follows (*describe the property or debt*):

If you claim that all or any portion of this property or debt is exempt from enforcement of the money judgment, you must file your exemption claim in writing with the court and have a copy personally served on the judgment creditor not later than three days before the date set for the examination. You must appear at the time and place set for the examination to establish your claim of exemption or your exemption may be waived.

**APPEARANCE OF A THIRD PERSON (ATTACHMENT)**

NOTICE TO PERSON SERVED If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court, and the court may make an order requiring you to pay the reasonable attorney fees incurred by the plaintiff in this proceeding.

**APPEARANCE OF A CORPORATION, PARTNERSHIP, ASSOCIATION, TRUST, OR OTHER ORGANIZATION**

It is your duty to designate one or more of the following to appear and be examined: officers, directors, managing agents, or other persons who are familiar with your property and debts.

 Request for Accommodations, Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least 5 days before your hearing. Contact the clerk's office for *Request for Accommodation* (form MC-410). (Civil Code, § 54.8.)

AT-138/EJ-125 [Rev. January 1, 2017]

CEB | Essential Forms

APPLICATION AND ORDER FOR
APPEARANCE AND EXAMINATION
(Attachment-Enforcement of Judgment)

Page 2 of 2

Storie-Avenatti, Lisa

EXHIBIT 5
84

## EXHIBIT B

1.  2017 Ferrari 488 GT Spider in the name of the Respondent. Petitioner, Michael Avenatti specifically represents that there are no liens or encumbrances on this vehicle, other than the monthly lease payment.

2.  The following watches;
    a.  Patek 5712,
    b.  Patek 5726,
    c.  Patek 5960,
    d.  Rolex 116500 and
    e.  Hublot.

3.  The following Artwork:
    i.     "Pergusa III" 1983
    ii.    Craig Kauffman "No. 17" 1989
    iii.   Frank Gehry Sculpture
    iv.    Heath Gwyn Martin "Rough and Tumble"
    v.     Michael Mulhern "Untitled" (WET)
    vi.    David Shapiro
    vii.   David Shapiro "Clearing 11"
    viii.  Murano Glass and Painted Fish
    ix.    Existing "4 Nudes" - H-20" x W-9"
    x.     The Ford Garage at Téloche, c. 1959, 20x24 inches
    xi.    The Start of the 1956 24 Hours, 20x24 inches
    xii.   Jo Bonnier Photo that spans p. 46 and p. 47 of the Porsche Moments Book Jo Bonnier RSK is in the Karussell, 20x24 inches
    xiii.  Jesse Alexander "Porsches - Le Mans" circa 1959, Archival Pigment Paint
    xv.    Any other artwork presently in storage which was previously in the parties marital residence.

4.  The entire legal and equitable member interest of Avenatti & Associates, APC in Passport 420, LLC, which owns as its principal asset a 2016 Honda Jet, Model HA-420 serial number 42000029, FAA Registry number N227WP, in the name of Passport 420 LLC.

    a.  Petitioner, as President and sole shareholder of Avenatti &Associates, APC, and in his capacity as Manager of Passport 420 LLC, shall execute forthwith the transfer of the Avenatti & Associates, APC member interest to Respondent and shall provide to Respondent the original member ownership certificates for this limited liability company.

    b.  Petitioner, Michael Avenatti, specifically represents and warrants that he is not aware of any liens or encumbrances on the member interest or assets of Passport 420 LLC, including the Honda Jet Plane

    c.  Petitioner shall provide all notices required by Paragraph 16 of the Passport 420, LLC Operating Agreement.

EXHIBIT 5
85



Matthew S. DeArmey, SBN 199294
Sandra Shapiro, SBN 299589
**THE LAW OFFICES OF MILO F. DE ARMEY**
950 West 17th Street, Suite A
Santa Ana, CA 92706
Telephone: (714) 558-7744
Facsimile: (714) 558-0925
Email: matt@dearmeylaw.com

Associate Attorneys for Respondent
Lisa Storie-Avenatti

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

APR 04 2019

DAVID H. YAMASAKI, Clerk of the Court

BY: S. GUSTAFSON , DEPUTY

# THE SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

MICHAEL AVENATTI,

    Petitioner,

v.

LISA STORIE-AVENATTI

    Respondent.

Case No.: 17D009930

~~[PROPOSED]~~ ORDER TO DELIVER SPECIFIC PROPERTY

*Assigned for all purposes to The Honorable Nathan Vu, Department L-67*

On April 23, 2018 and October 22, 2018, Respondent Lisa Storie-Avenatti, the judgment creditor in this matter, obtained orders in this court against Petitioner Michael Avenatti, the judgment debtor for the sum of approximately $2,053,332, including principal, interest accrued as of January 9, 2019, and costs incurred as of January 17, 2019. These orders are for child support, spousal support, and attorney's fees and costs made in the nature of support.

1

~~[PROPOSED]~~ ORDER TO DELIVER SPECIFIC PROPERTY

EXHIBIT 5
86

Respondent

alleges that from the examination of Michael Avenatti that he, the judgment debtor, has an interest in the following property in his possession, custody, or under his control that is not exempt from enforcement of the money judgment:

1.  100% of the Eagan Avenatti, LLP partnership interest titled in the name of Michael Avenatti.

2.  100% of the shares in the corporation Avenatti & Associates, A Professional Corporation, California Corporation Number C2874165, which has a titled partnership interest in Eagan Avenatti, LLP.

3.  100% of the shares owned by Michael Avenatti in the company Seek Thermal, Inc, a Delaware corporation, registered in the State of California, SOS Number 3474177, formerly known as Tyrian Systems, Inc.

4.  100% of the funds due and owing to Michael Avenatti from The Fight PAC, FEC Committee ID # C00685966

5.  100% of the shares owned by Michael Avenatti in the company Desert Harvest, LLC, a Delaware LLC, registered in the State of California, SOS Number 201032010071.

6.  Patek Phillipe Watch Model Number 5035, 18k White Gold, Movement Number 3.134.531, Case Number 4.208.344.

7.  Patek Phillipe Watch Model Number 5270

8.  Patek Phillip Watch Model Number 5055

9.  All artwork in the name of Michael Avenatti in the possession of Orange County Fine Art Storage.

10.  All artwork in the name Avenatti & Associates, A Professional Corporation in the possession of Orange County Fine Art Storage.

2

~~[PROPOSED]~~ ORDER TO DELIVER SPECIFIC PROPERTY

EXHIBIT 5
87

1    11.    All artwork in the name Eagan Avenatti, LLP in the possession of Orange

2  County Fine Art Storage.

3    12.    One hundred percent (100%) of the member interest in Passport 420, LLC, that

4  is titled in the name of Avenatti & Associates, A Professional Corporation, California

5

6  Corporation Number C2874165A, which owns as its principal asset a 2016 Honda Jet, Model

7  HA-420 serial number 42000029, FAA Registry number N227WP, titled in the name of

8  Passport 420 LLC.

9    13.    Ownership of the Northwestern Mutual Life Insurance Policy #18441100.

10    IT IS HEREBY ORDERED that Michael Avenatti immediately deliver to the

11         Levying Officer, the property set forth above, which shall be applied toward the

12  satisfaction of the judgment.

13

14

15

16  Dated:  **APR 0 4 2019**                     *Nathan Vu*

17                                    HONORABLE NATHAN VU
                                      Superior Court Judge
18

19

20

21

22

23

24

25

26

27

28

                                          3

         ~~PROPOSED~~ ORDER TO DELIVER SPECIFIC PROPERTY

EXHIBIT 5
88

**EXHIBIT 6**

EXHIBIT 6

**John Reitman**

| | |
|---|---|
| **From:** | John Reitman |
| **Sent:** | Thursday, March 28, 2019 2:23 PM |
| **To:** | Brian Weiss (bweiss@force10partners.com) |
| **Cc:** | Jack Reitman |
| **Subject:** | FW: Eagen Avenatti |
| **Attachments:** | Revised Draft Medline Agreement.pdf |

Brian, see attached fee agreement, paras. 4, 8, 10 and 11, all of which relate to payments that may become owed to the EA receivership estate. Also do you recognize the payee ("Avenatti LLP"?) and address on the front of the below check and account number for shown on the back of the check?

John Reitman
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050
Direct: 310-691-7377
Fax: 310-557-0056
E-mail: jreitman@lgbfirm.com
Web: www.lgbfirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Liberman, Alex <ALiberman@medline.com>
**Sent:** Thursday, March 28, 2019 12:52 PM
**To:** John Reitman <jreitman@lgbfirm.com>
**Subject:** Eagen Avenatti

John, attached is our agreement with EA, thought you might want that, too.

Check 2316886 $58,295.38

1

EXHIBIT 6
89



**MEDLINE INDUSTRIES, INC.**
ONE MEDLINE PLACE
MUNDELEIN, IL 60060-4486

JPMorgan Chase Bank, N.A.
Chicago, IL

NO. 23168

DATE 02/21/2019          0002316886

AMOUNT
$ *****58,29

PAY

FIFTY-EIGHT THOUSAND TWO HUNDRED NINETY-FIVE
and 38/100

DOLL

NOTICE ENDORSEMENT OF THIS CHECK IS ACCEPTANCE OF THE ATTACHED LISTING OF DISCOUNTS TAKEN.   NOT VALID AFTER 90 DAYS

TO
THE
ORDER
OF

AVENATTI LLP
4491 RAINBOW LANE
YORBA LINDA CA  92886

MEDLINE INDUSTRIES, INC.

⑈0002316886⑈ ⑆071923226⑆       009417176⑈

Check/Serial#:2316886          Account#:9417176          Amount: 58,295

| Check/Serial# | $ Amount | Issue Date | Sequence No. | Additional Info | Posti Date |
|---|---|---|---|---|---|
| 2316886 | 58,295.38 | 02/21/2019 | 4180341240 | AVENATTI LLP | 02/25/2 |

0898202

Check/Serial#:2316886          Account#:9417176          Amount: 58,295

| Check/Serial# | $ Amount | Issue Date | Sequence No. | Additional Info | Posti Date |
|---|---|---|---|---|---|
| 2316886 | 58,295.38 | 02/21/2019 | 4180341240 | AVENATTI LLP | 02/25/2 |

2

EXHIBIT 6
90

**EAGAN AVENATTI, LLP**
**520 Newport Center Drive, Suite 1400**
**Newport Beach, CA 92660**
**(949) 706-7000**

### September 7, 2016

## ATTORNEY-CLIENT FEE CONTRACT (PARTIAL CONTINGENCY)

This ATTORNEY-CLIENT FEE CONTRACT (this "Agreement") is the written fee contract that California law requires lawyers to have with their Client. It is between Eagan Avenatti, LLP (the "Attorney") on the one hand and Medline Industries, Inc., together with each of their subsidiaries and wholly-owned companies (collectively, the "Clients" and each a "Client"), on the other.

**1.** **CONDITIONS.** This Agreement will not take effect, and Attorney will have no obligation to provide legal services, until Clients return a signed copy of this Agreement together with the first payment provided for in Paragraph 4(A) below.



**3.** **CLIENT'S DUTIES.** Clients agree to be truthful with Attorney, to cooperate, to keep Attorney informed of developments, to abide by this Agreement, and to pay bills for reasonably incurred costs on time.

**4.** **LEGAL FEES, COSTS AND BILLING PRACTICES.** Attorney will receive two forms of compensation for legal services rendered: (a) Cash Compensation and (b) a Contingent Fee.

A. Retainer/ Cash Compensation
Commencing on September 15, 2016, Clients shall pay Attorney $35,000 per month on the fifteenth (15th) day of each month (provided the case is still pending in either the trial court or in appellate court and Attorney continues to represent Clients).

These retainer payments are deemed earned when paid, may be credited to the account of EA once made and are nonrefundable, regardless of the amount of the *contingency fee* (as defined below), provided, however, that the retainer payments will be credited to the Contingent Fee and the amount of the Contingent Fee will be reduced by the retainer payments.

B. Contingent Fee
The "Contingent Fee" will be thirty percent (30.0%) of the *Recovery* (defined below).

*"Recovery"* will include any cash; the fair market value of any benefit, refund, rate freeze or similar accommodation, property, stock, note, partnership interest, carried interest, stock option, business accommodation, loan, and funding; and all other consideration received in connection with the settlement, judgment, or other resolution of any of Clients' claims, lawsuits and/or arbitrations as referenced above, including but not limited to any jury award, arbitration award, award of attorneys' fees, discovery sanctions, other monetary sanctions, and/or similar awards which an opposing party is required

-1-

EXHIBIT 6
91

to pay to Clients, provided, however, that any monies Clients are required to pay Kimberly Clark Corporation and/or Halyard Health, Inc. in connection with any counterclaim shall be deducted from the *Recovery* prior to the calculation of the Contingent Fee.

If payment of all or any part of the "*Recovery*" to be received will be deferred (such as in the case of an annuity, a structured settlement, or periodic payments), the attorney's fees will be paid out of the initial lump-sum payment. If the payment is insufficient to pay the attorney's fees in full, the balance will be paid from subsequent payments of the *Recovery* before any distribution to Clients.

In the event of discharge or withdrawal of Attorney as provided in Paragraph 10, Clients agree that Attorney shall be entitled to be paid by Clients, upon binding resolution of Clients' claims, whether by settlement, judgment or arbitration award in favor of Clients, a reasonable fee for the legal services provided by Attorney to Clients, provided, however, that in the event Attorney is discharged after either resolution of any of Clients' claims as referenced above or an agreement to resolve any such Claims, Attorney shall be entitled to the full Contingent Fee described above.

**5.     NEGOTIABILITY OF FEES.**  The rates set forth above are not set by law, but were negotiated between Attorney and Clients.

**6.     COSTS, DISBURSEMENTS AND EXPENSES.**  Clients agree to reimburse attorney for all out-of-pocket litigation and trial costs and expenses within thirty (30) days of Clients receiving a request for such reimbursement from Attorney. "Costs and expenses" include filing and court fees, investigation expenses, process fees, investigation fees, graphic art and filming fees, PowerPoint legal services, computer animation fees, expert fees, deposition costs, photocopying charges, mock trials or focus groups, jury fees, computerized research, jury trial consultant fees, telephone toll charges, travel costs, mail messenger and other delivery charges, postage and any other necessary expenses in this matter. Clients authorize Attorney to incur all reasonable costs and to hire any investigators, consultants or expert witnesses reasonably necessary in Attorney's judgment.

-2-

EXHIBIT 6
92

**14.   EFFECTIVE DATE.**  This Agreement will take effect when Clients have performed the conditions stated in Paragraph 1.  The date at the beginning of this Agreement is for reference only.

**"Attorney"**
EAGAN AVENATTI, LLP

Michael J. Avenatti

I have read and understood the foregoing terms and agree to them.  By signing this Agreement, I represent and warrant that I am an executive officer of the entity listed with sufficient authority to bind the entity to this agreement and further acknowledge receipt of a fully executed duplicate of this Agreement.

**"Clients"**

**MEDLINE INDUSTRIES, INC.**
**(on behalf of itself and its subsidiaries and wholly-owned companies)**

By: _____        Date: ___9/8/16___
Name: _____
Title: _____

-3-

EXHIBIT 6
93

**John Reitman**

| | |
|---|---|
| From: | Stokes, Sarah M (Acct. Payable) <SMStokes@medline.com> |
| Sent: | Tuesday, April 2, 2019 2:22 PM |
| To: | Stokes, Sarah M (Acct. Payable) |
| Subject: | FW: Eagan AVenatti Invoice |
| Attachments: | w9.pdf |
| | |
| Importance: | High |

---

**From:** Judy K. Regnier <jregnier@eaganavenatti.com>
**Sent:** Tuesday, November 27, 2018 1:36 PM
**To:** Stokes, Sarah M (Acct. Payable) <SMStokes@medline.com>
**Subject:** RE: Eagan AVenatti Invoice
**Importance:** High

Here is the new W-9  Let me know if you need anything else.

thanks.

Judy

---

**From:** Judy K. Regnier
**Sent:** Tuesday, November 27, 2018 11:01 AM
**To:** 'SMStokes@medline.com'
**Subject:** Eagan AVenatti Invoice

Sarah -

Can you call me on my cell to see what happened with that invoice?  949-300-6003

Thank you.

Judy

Judy K. Regnier, CLA
Eagan Avenatti, LLP
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
(949) 706-7000
(877) 651-6134
(949) 706-7050 fax
jregnier@eaganavenatti.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

1

EXHIBIT 6
94

| Form **W-9**<br>(Rev. October 2018)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification**<br><br>▶ Go to *www.irs.gov/FormW9* for instructions and the latest information. | **Give Form to the**<br>**requester. Do not**<br>**send to the IRS.** |
| --- | --- | --- |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.
Avenatti LLP

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☐ S Corporation  ☑ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.
520 Newport Center Drive, Suite 1400

**6** City, state, and ZIP code
Newport Beach, CA 92660

**7** List account number(s) here (optional)

Requester's name and address (optional)

**Part I   Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

☐☐☐ – ☐☐ – ☐☐☐☐

or

Employer identification number

3 2 – 0 2 1 0 8 2 4

**Part II   Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here** | Signature of U.S. person ▶ | Date ▶ 11-27-18

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

Cat. No. 10231X

Form **W-9** (Rev. 10-2018)

EXHIBIT 6
95

**John Reitman**

| | |
|---|---|
| **From:** | Stokes, Sarah M (Acct. Payable) <SMStokes@medline.com> |
| **Sent:** | Thursday, February 21, 2019 10:46 AM |
| **To:** | Gube, Jessi |
| **Subject:** | Re: Medline/Halyard Gown Invoice No. 31 |

Thanks Jessi!!

Sent via the Samsung Galaxy S8, an AT&T 5G Evolution smartphone

-------- Original message --------
From: "Gube, Jessi" <JGube@medline.com>
Date: 2/22/19 12:12 AM (GMT+05:30)
To: "Stokes, Sarah M (Acct. Payable)" <SMStokes@medline.com>
Subject: RE: Medline/Halyard Gown Invoice No. 31

The address is correct in the SAP. Ashley is bringing the check to Alex. He said he was going to bring the check to them since they were in town today.



**Jessi Gube**
Supv Accounts Payable
Finance
Medline Industries, Inc.
www.medline.com

847-643-3258 Ext. 770-3258 (Phone)
jgube@medline.com

From: Stokes, Sarah M (Acct. Payable) <SMStokes@medline.com>
Sent: Thursday, February 21, 2019 12:31 PM
To: Gube, Jessi <JGube@medline.com>
Subject: Fwd: Medline/Halyard Gown Invoice No. 31

Can you confirm, please?

Thanks!
Sarah

Sent via the Samsung Galaxy S8, an AT&T 5G Evolution smartphone

-------- Original message --------
From: "Judy K. Regnier" <jregnier@eaganavenatti.com>

1

EXHIBIT 6
96

Date: 2/21/19 9:25 PM (GMT+05:30)
To: "Stokes, Sarah M (Acct. Payable)" <SMStokes@medline.com>
Subject: RE: Medline/Halyard Gown Invoice No. 31

Good Morning Sarah –

We just submitted our most recent invoice (Invoice 31) and I would like to verify that you have updated the remittance address to 4491 Rainbow Lane, Yorba Linda, CA 92886.

Thank you – have a great week.

Judy

**From:** Stokes, Sarah M (Acct. Payable) [mailto:SMStokes@medline.com]
**Sent:** Monday, February 04, 2019 9:35 AM
**To:** Judy K. Regnier
**Subject:** RE: Medline/Halyard Gown Invoice No. 30

Hi Judy,

Tracking info is below.  It will be there tomorrow.

EXHIBIT 6
97



Regards,
Sarah

 **Sarah Stokes**
Director of Finance
Accounts Payable
Medline Industries, Inc.
www.medline.com
847-643-4143 (Phone)
847-828-4099 (Mobile)
smstokes@medline.com

3

EXHIBIT 6
98

**From:** Judy K. Regnier <jregnier@eaganavenatti.com>
**Sent:** Monday, February 04, 2019 9:09 AM
**To:** Stokes, Sarah M (Acct. Payable) <SMStokes@medline.com>
**Subject:** Re: Medline/Halyard Gown Invoice No. 30

Sarah -

Please let me know the status of payment on this invoice and the tracking number for the FedEx.

Thank you.

Judy Regnier

On Feb 1, 2019, at 7:25 AM, Judy K. Regnier <jregnier@eaganavenatti.com> wrote:

> Sarah –
>
> Could you have someone send me the tracking on this check?
>
> Thank you.
>
> Judy

**From:** Stokes, Sarah M (Acct. Payable) [mailto:SMStokes@medline.com]
**Sent:** Monday, January 28, 2019 11:45 AM
**To:** Judy K. Regnier
**Subject:** RE: Medline/Halyard Gown Invoice No. 30

Hi Judy,

By the time we received your email, we had already mailed the check (USPS) to the old address. Now, we have to void and reissue that check and we will Fedex it this time to the new address on file. Going forward, we will not be able to accommodate these types of requests. It is nearly impossible to hand hold all payments that go out the door at this level.

Thank you for your understanding.

Regards,
Sarah

<image001.png> **Sarah Stokes**
  Director of Finance
  Accounts Payable
  Medline Industries, Inc.
  www.medline.com
  847-643-4143 (Phone)
  847-828-4099 (Mobile)
  smstokes@medline.com

4

EXHIBIT 6
99

**From:** Judy K. Regnier <jregnier@eaganavenatti.com>
**Sent:** Monday, January 28, 2019 11:07 AM
**To:** Stokes, Sarah M (Acct. Payable) <SMStokes@medline.com>
**Subject:** Re: Medline/Halyard Gown Invoice No. 30

Yes on the address - so will the currently approved check will be mailed or FedEx to the rainbow lane address?

Thanks.

Judy Regnier

On Jan 28, 2019, at 8:26 AM, Stokes, Sarah M (Acct. Payable) <SMStokes@medline.com> wrote:

> Hi Judy,
>
> Is the below address (4491 Rainbow Lane) the permanent address we need to reflect in our system?  If so, I will have the account update.  Also, please note, once a payment is approved in Legal Tracker, we will process and send the check through regular USPS.
>
> Please let me know about the address.
>
> Thank you,
> Sarah
>
> <image001.png> **Sarah Stokes**
>         Director of Finance
>         Accounts Payable
>         Medline Industries, Inc.
>         www.medline.com
>         847-643-4143 (Phone)
>         847-828-4099 (Mobile)
>         smstokes@medline.com

**From:** Judy K. Regnier <jregnier@eaganavenatti.com>
**Sent:** Friday, January 25, 2019 4:28 PM

EXHIBIT 6
100

**To:** Blakley, Ashley <ABlakley@medline.com>; Stokes, Sarah M (Acct. Payable) <SMStokes@medline.com>
**Subject:** Medline/Halyard Gown Invoice No. 30

Good Afternoon –

The Invoice for Avenatti, LLP has been approved.  When you send out, please send by FedEx, using our account to:

4491 Rainbow Lane
Yorba Linda, CA 92886

FedEx account number 873337303

Thank you.

Judy Regnier
Avenatti, LLP
jregnier@eaganavenatti.com
949-300-6003

EXHIBIT 6
101

**EXHIBIT 7**

EXHIBIT 7

**John Reitman**

| | |
|---|---|
| **From:** | Michael Avenatti <m@thefight.us> |
| **Sent:** | Friday, July 19, 2019 3:35 PM |
| **To:** | Maritza Nowowiejski |
| **Cc:** | Andrew Stolper; Brian Weiss; Jason Frank; Jim Bastian; John Reitman; Ron Hodges; Ryan O'Dea; Scott Sims; Jack Reitman; mlowe@shbllp.com |
| **Subject:** | Re: In Re Eagan Avenatti - Notice of Subpoena |

I see desperation has set in.  I paid cash.  Nice try.

Looking forward to your defense in the various matters where we are co-defendants.  Perhaps you should have thought through all of this before you took a number of the actions that you did over the last 12 months.  Next time, instead of playing tic tac toe, try chess.

On Fri, Jul 19, 2019 at 3:11 PM Maritza Nowowiejski <mnowowiejski@lawfss.com> wrote:

Please see attached.

 **MARITZA NOWOWIEJSKI | PARALEGAL/OFFICE MANAGER**

- 949.201.2400

- 949.201.2405

Newport Gateway | 19800 MacArthur Blvd. Suite 855 | Irvine, CA 92612

--
Michael J. Avenatti

1

EXHIBIT 7
102

EXHIBIT 8

107 Avenida Miramar
Suite C
San Clemente, California 92672
949-481-4900
Fax 949-496-6753
www.deansteward.com





| To: | Attorney John P. Reitman | From: | Dean Steward |
|---|---|---|---|
| Fax: | 310-557-0056 | Pages: | 11 |
| Phone: | | Date: | 8-5-19 |
| Re: | Court ordered service-motion to compel- U.S. v. Avenatti case | cc: | |

X Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

EXHIBIT 8
103

# H. Dean Steward
## ATTORNEY AT LAW

107 Avenida Miramar
Suite "C"
San Clemente, CA 92672
949-481-4900

August 5, 2019

John P. Reitman
Landau, Gottfried and Berger
1880 Century Park East, #1101
Los Angles, CA 90067

**VIA FAX- 310-557-0056**

**Re: Avenatti motion to compel**

Dear Mr. Reitman-

Since I did not receive confirmation from you that you received the
Avenatti motion to compel, I submit the motion here to you by fax.

Sincerely,

H. Dean Steward

• Admitted-California & Hawaii • Fellow-American College of Trial Lawyers •
fax: 949-496-6753 • e-mail: deansteward7777@gmail.com

EXHIBIT 8
104

1  H. Dean Steward  SBN 85317
2  107 Avenida Miramar, Ste. C
   San Clemente, CA 92672
3  949-481-4900
   Fax: (949) 496-6753
4
5  Attorney for Defendant
   Michael Avenatti
6
7
8
9
10                    UNITED STATES DISTRICT COURT
11                  CENTRAL DISTRICT OF CALIFORNIA
12  UNITED STATES,
13          Plaintiff,                  Case No.  SA-CR-19-61-JVS
14      vs.                             NOTICE OF MOTION; MOTION TO
                                        COMPEL DISCOVERY; POINTS AND
15                                       AUTHORITIES; DECLARATIONS OF
16  MICHAEL AVENATTI,                    THOMAS D. WARREN and JAMES C.
                                        BASTIEN; EXHIBITS
17          Defendant.
                                        Date: Aug. 26, 2019
18                                       Time: 8:30 AM
19
20  To: United States Attorney Nicola Hanna and Asst. U.S. Attorneys Brett Sagel
21  and Julian Andre:  please take notice that the defense will bring the below motion to
22  compel on Aug. 26, 2019 at 8:30 AM, in the courtroom of the Hon. James V. Selna,
23  411 W. 4th St., Santa Ana, California.
24
25  Dated: July 28, 2019
26                              /s./ H. Dean Steward
                                   H. Dean Steward
27                                 Counsel for Defendant
                                   Michael Avenatti
28

                                   - 1 -

EXHIBIT 8
105

1  MOTION

2

3       The defense hereby moves this honorable court for an order compelling the

4  government to give the defense unfettered, unmonitored access to the Eagan Avenatti

5  LLP servers, as well as the digital devices seized from an Eagan Avenatti employee.

6

7

8  Dated: July 29, 2019              /s./ H. Dean Steward

9

10                                   H. Dean Steward
                                     Counsel for Defendant
11                                   Michael Avenatti

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    - 2 -

EXHIBIT 8
106

1    POINTS AND AUTHORITIES

2

3        This motion seeks to compel the government to provide Mr. Avenatti immediate

4    and unfettered access to the Eagan Avenatti, LLP ("EA") servers, and digital devices

5    seized from an Eagan Avenatti employee, so that Mr. Avenatti may properly defend

6    himself in this matter.  As detailed below, this access is not only warranted, it is critical

7    to Mr. Avenatti's ability to defend against the lengthy 36-count indictment in this case.

8

9    A.    **The Electronic Files on The Servers Are Critical To Mr. Avenatti's**

10   **Defense.**

11       The information on the EA servers is essential to Mr. Avenatti's defense in this

12   case, the two criminal cases in the Southern District of New York, and his state bar

13   proceedings.  The servers contain close to all of Mr. Avenatti's business and client

14   files for over a decade, including all his emails.  Nearly 100 percent of the work that

15   Mr. Avenatti performed with respect to the clients named in the indictment in this case

16   is contained on the Eagan Avenatti servers, as is critical information relating to the

17   accounting of various client settlement monies and Mr. Avenatti's taxes and other

18   business interests mentioned in the indictment.  Without access to these files, it will be

19   impossible for Mr. Avenatti and his defense counsel to adequately prepare his defense.

20   Moreover, these files contain Brady and Giglio materials that the government has an

21   affirmative duty to produce.

22       Without access to the servers, Mr. Avenatti will be unable to access the

23   following items of information: (1) correspondence with clients and others; (2) client

24   files; (3) time records; (4) settlement communications and documentation of

25   settlements; (5) correspondence and files in relation to the other charges in the

26   indictment; (6) defendant's emails with his tax professionals and others relating to his

27   taxes; and (7) accounting information relating to the clients at issue, including

28   documents showing client costs and expenses, and associated fees.  These items are

- 3 -

EXHIBIT 8
107

1   plainly necessary to defend the allegations made against him—indeed, this information
2   lies at the center of his defense.

3

4   **B.    Mr. Avenatti Has A Right to Access the Entirety of His Law Firm's**
5   **Servers.**

6          In the days and weeks before his arrest on March 25, 2019, Mr. Avenatti had
7   unfettered access to the entirety of the servers—he could remotely access any file
8   located on the servers at will.  Mr. Avenatti had enjoyed this level of access since he
9   co-founded the firm in August of 2007. This made sense, as Eagan Avenatti, LLP is
10  Mr. Avenatti's wholly owned law firm. Within approximately 24 hours following his
11  arrest, however, the servers were taken "offline" by the government after a court-
12  appointed Receiver for the firm presumably gave the government access.[1] Within 48
13  hours, Mr. Avenatti and his counsel began inquiring as to why access had been cut off
14  and when it would be restored, to no avail.

15         Later, in an April 12, 2019 e-mail to the defense, government counsel wrote that
16  if the defense wants access to the servers, "…you will need to raise those specific
17  concerns with the Receiver." However, the Receiver has refused to allow the defense
18  reasonable access. Importantly, the Receiver is not an attorney and has no right of
19  access to attorney-client privileged information on the servers. The Receiver's sole
20  function is to manage the financial affairs of the firm.

21         Mr. Avenatti and his counsel have sought the access to the servers they require
22  multiple times, from both the Receiver and the government. This access has been
23  sought not only so that Mr. Avenatti could properly defend himself but also so that he
24  could continue to represent his clients.  These efforts have been extensive and
25  repeated.  (See attached declarations and exhibits).

26

27  _____

28  [1] The defense expressly reserves the right to later challenge the access given to the
    government as improper and a violation of Mr. Avenatti's constitutional rights.

- 4 -

EXHIBIT 8
108

1    On April 14, 2019, Mr. Avenatti and the Receiver agreed that if Mr. Avenatti

2  would pay to host the servers (approximately $1000/month), the Receiver would give

3  him access to the servers when the government returned the servers to the Receiver.

4  (Bastian Decl. ¶7-8.)  The government returned the servers to the Receiver on April 30,

5  2019, after making a forensic image of them.  (Id. ¶10.) Inexplicably, the Receiver

6  failed to inform Mr. Avenatti that the servers had been returned.

7    When Mr. Avenatti later learned on May 6 that the servers had been returned to

8  the Receiver, and reached out to him, the Receiver reneged on the agreement, refusing

9  to allow Mr. Avenatti to access the servers.  (Id. ¶11.)  Since that time, the Receiver

10  has rejected multiple additional entreaties from Mr. Avenatti and his counsel to mount

11  and access the servers, including as recently as a few days ago.  (See attached

12  declarations). Instead, the Receiver and his counsel have placed a variety of

13  unreasonable obstacles in the way of Mr. Avenatti's access to his files.  These

14  obstacles recently led the State Bar court to conclude that Mr. Avenatti had good cause

15  to continue his trial in that matter.

16    There is no reason why Mr. Avenatti should be denied access to the servers.  Mr.

17  Avenatti is still the managing partner of Eagan Avenatti and owns 100% of the firm.

18  At all relevant times, all of Eagan Avenatti's clients were clients of Mr. Avenatti.  And

19  whether those clients are at present current clients or former clients, Mr. Avenatti is

20  entitled to maintain a copy of his client files under California law.  See CA Rules of

21  Prof. Cond., rule 1.16, comment 6 (rule requiring lawyer to provide client file to client

22  on request when attorney-client relationship terminates "does not prohibit a lawyer

23  from making, at the lawyer's own expense, and retaining copies of papers released to

24  the client"); *Chubb & Son v. Sup. Ct.,* 228 Cal. App. 4th 1094, 1103-1109 (2014)

25  (attorney litigant entitled to copy of client file from former law firm even after

26  attorney-client relationship with client ended).  Moreover, as a partner in the law firm,

27  Mr. Avenatti is entitled to the entirety of the law firm's files.  CA Corp. Code §

28  16403(b) (partnership shall provide partners access to books and records during

- 5 -

EXHIBIT 8
109

1  ordinary business hours).  Accordingly, there is no basis under the law to deprive Mr.

2  Avenatti of access to these files. And the fact that these files have been kept from Mr.

3  Avenatti by the government and the Receiver for over four months is inexcusable.[2]

4      Moreover, both the government and the Receiver have made forensic images of

5  the servers, so there can be no concern about document preservation.  The government

6  and the Receiver have in their possession a pristine copy of all electronic files

7  contained on the servers as of the date of Mr. Avenatti's arrest, and Mr. Avenatti's

8  access to the servers to defend himself cannot affect chain of custody or the integrity of

9  the documents in the government's possession.

10

11  **C.      The Government Concedes That Mr. Avenatti Can Only Readily Access**

12  **Documents on The Eagan Avenatti Servers Themselves, Not on A Forensic Image**

13  **Of The Servers.**

14      At the July 8, 2019 status conference in this matter, the Court stated that it was

15  "very likely to require the government to produce whatever it produces back in a

16  format that's sufficiently similar to the original format so the original existing tools

17  could be used.  I don't think that the defendant should have be forced to cope with a

18  new or different format.  I don't think it's sufficient to just say there are tools out

19  there."  (7/8/19 Tr. 17:14-20.)

20      In its July 22, 2019 status report, the government conceded that if it were to

21  produce forensic images of the servers to Mr. Avenatti instead of access to the servers

22  themselves, Mr. Avenatti would likely have to "retain an eDiscovery vendor or

23  computer forensics expert to assist with the technical of such a review." (ECF 49 at

24  11.)  Moreover, the government further conceded that "there is no way for the USAO

25  to ensure that defendant will be able to review the contents of the forensic images in

26

27  [2] The failure to provide this critical information has been highly prejudicial to Mr.
28  Avenatti's ability to mount a defense in his criminal cases and the State Bar
    proceeding. It has likewise been highly prejudicial to Mr. Avenatti's legal clients.

-6-

EXHIBIT 8
110

1  the same manner as he would be able to if defendant were reviewing the original

2  devices." (*Id.*)

3         Accordingly, the only way that the government can ensure that Mr. Avenatti has

4  access to his files in order to properly defend himself in this case is to allow him access

5  to the servers, which are at present in the custody of the Receiver.  While the Receiver

6  is not a party to this lawsuit, the government has already demonstrated that it has

7  control over the servers, as the Receiver already surrendered the servers to the

8  government earlier in this case at the government's direction.  See Fed. Rule. Crim.

9  Proc. § 16(a)(1)(E) (Rule 16 discovery requirements apply to materials either in the

10 custody or in the control of the government).

11

12 **D.     Mr. Avenatti Is Also Entitled to Access the Digital Devices Seized From The**

13 **Former Eagan Avenatti Employee.**

14        Mr. Avenatti is also entitled to unfettered access to the digital devices seized

15 from the former Eagan Avenatti employee.  As set forth above, Mr. Avenatti owns

16 100% of the firm, and owns the company-owned digital devices seized from the

17 former employee as well. Accordingly, there is no meaningful distinction between the

18 unfettered and unmonitored access to which Mr. Avenatti is entitled regarding the

19 servers and the unmonitored and unfettered access to which he is entitled regarding the

20 digital devices seized from the former Eagan Avenatti employee.

21        /

22        /

23        /

24        /

25        /

26        /

27        /

28        /

- 7 -

EXHIBIT 8
111

1   **E. CONCLUSION**

2       For the foregoing reasons, the Court should grant to the motion to compel.

3

4   Dated: July 28, 2019        Respectfully submitted,

5

6

7                               /s/ H. Dean Steward

8                               H. Dean Steward

9                               Attorney for Defendant

10                              Michael Avenatti

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -

EXHIBIT 8
112

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this district court case.  My business address is:
**LANDAU GOTTFRIED & BERGER LLP, 1880 Century Park East, Suite 1101, Los Angeles, CA 90067.**

A true and correct copy of the foregoing document entitled (*specify*): ***Declaration of John P. Reitman in Support of Receiver's Opposition to Motion to Compel; Exhibits*** will be served or was served in the manner stated below:

## 1. **SERVED BY UNITED STATES MAIL**:

On (*date*) **August 12, 2019,** I served the following persons and/or entities at the last known addresses in this district court case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

Juian L. Andre
United States Attorney's Office Central
District of California
312 N. Spring Street
Los Angeles, CA 90012

H. Dean Steward, Esq.
107 Avenida Miramar
Suite C
San Clemente, CA 92672

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 12, 2019 | Vanessah Richmond | /s/ Vanessah Richmond |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |