H. Dean Steward  SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
949-481-4900
Fax: (949) 496-6753

Attorney for Defendant
Michael Avenatti

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES, | Case No.  SA-CR-19-61-JVS |
|---|---|
| Plaintiff, | DEFENDANT MICHAEL AVENATTI'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL DISCOVERY |
| vs. | |
| MICHAEL AVENATTI, | Hearing Date:  Aug. 26, 2019<br>Hearing Time:  8:30 AM<br>Location:  Courtroom 10C<br>Judge:  Hon. James V. Selna |
| Defendant. | |

**Avenatti's Reply in Support of Motion to Compel Discovery**

# REPLY

It is unclear why the government and the receiver are so insistent on Mr. Avenatti not getting access to his client files.[1] To be clear – Mr. Avenatti is a practicing lawyer who is presumed innocent of the charges against him.

The government does not dispute that, under the California Rules of Professional Conduct, Mr. Avenatti is entitled to a copy of *every single document* on the Eagan Avenatti ("EA") servers. Their sole rejoinder is that while Mr. Avenatti *could* have made a copy of those documents, he didn't—so he is out of luck. Essentially, the government argues that Mr. Avenatti should have anticipated his arrest and made a copy of the entirety of his client files. That is a facially absurd proposition. No attorney routinely keeps an updated personal copy of his client files and other documents, especially when he is the firm's controlling attorney. It is also wrong under California law, which allows a current or former partner in a partnership access to **all** the partnership's books and records, regardless of whether the partner previously had access.

Even though the receiver took physical custody of the servers when the firm went into receivership, Mr. Avenatti had unfettered access to those servers until he was arrested and would have had no reason to make a copy of his files. In addition, the fact that the receiver continued to allow Mr. Avenatti full access to the servers after the firm went into receivership vitiates every argument that the receiver and the government now make attempting to rationalize limiting Mr. Avenatti's access to his files. Moreover, there is no question that Mr. Avenatti needs access to the entirety of the servers now more than ever—he is facing three indictments in two different federal courts. His liberty, and possibly his life, is at stake.

---

[1] During the pendency of this Motion, Mr. Avenatti again requested that the government at least provide a duplicate of the forensic image of the servers, seeing as they already have a forensic copy. Declaration of H. Dean Steward ("Steward Decl.") ¶ 2, Exs. A, B. Despite the absence of any burden, the government again refused. *Id.*

It should not be lost on the Court that the only party amongst (a) the government, (b) the receiver, and (c) Mr. Avenatti who *should* have access to these client files is the one who does not. The government has no right to access the countless documents that have nothing to do with their prosecution, nor to the vast number of attorney-client privileged documents in their possession. Nor does the receiver, who is not an attorney and does not represent EA's clients in any capacity, have any right to review attorney-client documents. Only Mr. Avenatti does.

The Court should grant the motion to compel.

## POINTS AND AUTHORITIES

I. **THE GOVERNMENT AND THE RECEIVER MUST PROVIDE MR. AVENATTI ACCESS TO THE EA SERVERS**

    A. **Mr. Avenatti Requires Access to the EA Servers to Review Documents Related to All of His Ongoing Matters, Not Just This Matter**

Mr. Avenatti submits that he is entitled to access the EA servers so that he may properly defend himself in this matter, two criminal cases in the Southern District of New York, and a California State Bar proceeding, as well as adequately represent clients in ongoing civil cases. *See* Dkt. 50 at 3. Yet, the government largely ignores Mr. Avenatti's argument. Although the government acknowledges that it will produce the additional documents relevant to the indictment that it will "likely" find on the EA servers, see Dkt. 55 at 11,[2] the *Brady* and *Giglio* documents that the government is required to produce do not even begin to scratch the surface. The government and receiver have deprived Mr. Avenatti access to *all of the Eagan Avenatti documents*. Mr. Avenatti does not have access to the vast majority of documents that are critical to his defense in two criminal cases brought in the Southern District of New York. He also does not have access to documents critical to his defense in a California State Bar

---

[2] Unless stated otherwise, all document page citations refer to internal document numbering.

– 3 –

**Avenatti's Reply in Support of Motion to Compel Discovery**

matter brought against him. And he does not have access to documents from active civil cases in which he represents clients. The government and receiver must provide Mr. Avenatti access to the EA servers so that he can review documents relevant to *all of his current matters*. Indeed, the California State Bar granted Mr. Avenatti's request for a continuance precisely because he did not have access to documents. *In the Matter of Michael John Avenatti*, Case No. SBC-19-TE-30259-YDR.

Also, the government's refusal to provide Mr. Avenatti access to the servers materially prejudices his clients. Many of his current cases have important deadlines and trial dates that are fast-approaching. Currently, Mr. Avenatti cannot adequately represent his clients or transfer his clients' documents to new counsel while the government and receiver hold these documents hostage.[3]

Counsel for the government and receiver claim that Mr. Avenatti did not make a formal request to access documents sooner. *See* Dkt. 55 at 23–24; Dkt. 59 at 8. But the written record does not lie—Mr. Avenatti has diligently tried to obtain access to the servers immediately after he was arrested, both from the government and the receiver. *See* Dkt. 50-1 at ¶¶ 2–12, Exs. A–C. He even agreed to pay to host the servers—to the tune of $1,000 a month—to allow him to continue to access them, something the receiver agreed to before he reneged. Dkt. 50-1 at ¶ 7, Ex. B. After months of stonewalling, Mr. Avenatti had no choice but to seek the Court's intervention.

---

[3] The receiver contends, without any evidence, that Mr. Avenatti abandoned his clients. Dkt. 59 at 7. This is patently false. Mr. Avenatti is an active member of the California Bar with clients. He has remained steadfast and diligent in his representation of those clients despite being placed under extremely difficult circumstances by the receiver.

– 4 –

**Avenatti's Reply in Support of Motion to Compel Discovery**

### B. The Receiver Provided Mr. Avenatti Unfettered Access to the EA Servers Prior to His Arrest

The fact that the receiver continued to allow Mr. Avenatti full access to the servers even after Eagan Avenatti went into receivership proves that the government's and receiver's arguments are disingenuous.

On February 13, 2019, the district court appointed the receiver in *In Re Eagan Avenatti, LLP*, No. 8:18-cv-01644-VAP-KES (C.D. Cal.) by stipulation (i.e. agreement of Mr. Avenatti). Importantly, however, at no time did the Order provide, or the parties agree, that Mr. Avenatti would subsequently lose access to the servers or the information of the law firm. *See generally* Dkt. 60, Ex. 1. In fact, the Order specifically provides that, "Nothing in this Order excuses or alters any ethical duties that EA and/or EA's attorneys shall have to their clients." *Id.* at ¶ 29.

Thereafter, Mr. Avenatti had unfettered access to the EA servers and the information of the law firm. *See* Dkt. 50-1 at ¶ 2. It was not until after Mr. Avenatti's arrest that the receiver, after consulting with the government, cut off Mr. Avenatti from accessing his files and the information of the law firm. *See id.*

The receiver refuses to let Mr. Avenatti access the servers, instead requiring him to submit requests so that a third party may obtain files from the server, at a likely cost of tens of thousands of dollars, if not more, with much of the "costs" going into the pocket of the Receiver.[4] *See* Dkt. 59 at 11–13. And Mr. Avenatti must justify the request lest the receiver deny it. *Id.* If that were not enough, the receiver has outright refused to give Mr. Avenatti access to any client information that is unrelated to Avenatti's criminal defense. *Id.* The receiver takes this position despite it being directly contrary to California law.

---

[4] The receiver has an in-house "IT Professional" who he bills out at exorbitant rates and thus uses controlling access to the servers as a "profit center" for his firm. The receiver's greed should not control whether Mr. Avenatti has access to the information he needs for the three criminal matters and the State Bar proceeding.

– 5 –

**Avenatti's Reply in Support of Motion to Compel Discovery**

Even the government concedes these restrictions are improper. The government admits that Avenatti cannot adequately defend himself without access to the EA servers themselves, as they cannot be adequately recreated through a forensic copy. Dkt. 49 at 11. And the government does not dispute that Mr. Avenatti has documents relating to his cases in various places on the servers that do not neatly fall into particular files—as do we all—making access to the servers paramount. Moreover, it is plainly unconstitutional for the receiver to require Mr. Avenatti to divulge his legal strategy to a third party working in tandem with the government in order to access his files.

The government and the receiver purport to rationalize the restrictions on Mr. Avenatti's access to his files. But Mr. Avenatti had unfettered access to the servers even after the receivership began, and neither the government nor the receiver can explain why the receiver's restrictions were imposed only *following Mr. Avenatti's arrest*. The only explanation is that the government's and receiver's purported arguments are pretextual—that the government and receiver are motivated entirely by the criminal charges against Mr. Avenatti in this Court and their interest in damaging his ability to defend himself. But criminal allegations—without more—cannot serve as justification. That would violate the presumption of innocence until and unless proven guilty. *See U.S. v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006) ("Defendant is, after all, constitutionally presumed to be innocent pending trial, and innocence can only raise an inference of innocence, not of guilt."). Bottom line, Mr. Avenatti is presumed innocent of the charges against him. He should not be deprived rightful access to his files based solely on criminal allegations.

What's more, the government and the receiver both have forensic images of the servers. There is thus no legitimate concern that information will be lost or modified. The government's motivations to restrict access to the EA servers are thus both improper and unfounded.

### C. The Government and Receiver Have No Basis to Restrict Mr. Avenatti's Access

Even the government's and receiver's pretextual reasons to restrict access lack merit. As the Managing Partner of EA, Mr. Avenatti has an ownership interest in EA's servers and has the right to inspect and copy the server files. The government admits that the California Rules of Professional Conduct expressly allow Mr. Avenatti to keep copies of client documents.

#### 1. Mr. Avenatti Has an Ownership Interest in the EA Server Files and the Right to Access These Files

First, the government and receiver argue that because Mr. Avenatti stipulated to the appointment of the EA receiver and turned over possession of the files to him, Mr. Avenatti somehow also surrendered his ownership interest to the property. Dkt. 55 at 13–15; Dkt. 59 at 6. That is false. The district court made no such holding in the Receivership Order, and Mr. Avenatti has made no such concession. *See generally* Dkt. 60, Ex. 1. Mr. Avenatti has consistently maintained that he has every right to access the servers as the Managing Partner of EA—a title that he still holds today, and his agreement to voluntarily comply with the Receivership Order does not prove otherwise. And, as noted above, the Order provides that Mr. Avenatti is to continue with his duties for clients. *Id.* at ¶ 29.

Indeed, the proof is in the pudding. After EA went into receivership, Mr. Avenatti *continued to have unfettered access to the servers* without objection by the receiver for nearly six weeks. Continued access would not hinder the receiver's performance of his duties, as the receiver also has access to the servers as well as a complete forensic image of everything on the servers.

Second, the government argues that the EA servers belong to Eagan Avenatti, not Mr. Avenatti. But Mr. Avenatti is the Managing Partner of Eagan Avenatti, and he owns 100% of the firm. Eagan Avenatti's property therefore indirectly belongs to Mr. Avenatti. The receiver does not own Eagan Avenatti nor does he own any property of

– 7 –

**Avenatti's Reply in Support of Motion to Compel Discovery**

Eagan Avenatti. The receiver is effectively an "employee" of the firm, supervised by the court, who is charged with *managing the financial aspects of the firm only*. He is not an attorney, he does not represent clients, and he does not own any EA assets.

Moreover, Mr. Avenatti is entitled to inspect and copy the firm's books and records without restriction. Cal. Corp. Code § 16403(b). The government argues that California Corporation Code Section 16403(b) "does not state that defendant is entitled to 'unfettered access' of all of EA LLP's books and records . . . ." Dkt. 55 at 15. But that is precisely what the statute provides—that a partnership "shall" provide partners "access to its books and records" without limitation during business hours. Cal. Corp. Code § 16403(b). There is nothing in the statute that limits such access. *See Jones v Wagner*, 90 Cal. App. 4th 466, 476 (2001) ("[The] partnership is required to make its books and records available to partners and their agents.").

The government and the receiver also argue that Mr. Avenatti transferred his ownership interest in Eagan Avenatti to third parties: X-Law Group and Mr. Avenatti's former wife. *See* Dkt. 55 at 15; Dkt. 59 at 6–7. First, at no time did Mr. Avenatti transfer any ownership interest in Eagan Avenatti to X-Law Group. Second, the divorce court's ruling requiring Mr. Avenatti to temporarily turn over his interest in Eagan Avenatti does not permit Ms. Storie-Avenatti to do anything with that interest pending final judgment nor does it render Mr. Avenatti no longer a partner at Eagan Avenatti. This makes sense as Ms. Storie-Avenatti is not an attorney and therefore cannot hold an equity percentage in the law firm or serve as one of its partners. Further, even if that ownership interest is ultimately conveyed, Mr. Avenatti will still remain the Managing Partner of Eagan Avenatti with a statutory right to access the firm's books and records—a right that applies even to *former* partners.

2. <u>Avenatti Is Entitled to Keep Copies of Client Documents</u>

The government concedes that Mr. Avenatti is entitled to a copy of his current and former client files under California Rules of Professional Conduct 1.16(e),

– 8 –

Comment 6. *See* Dkt. 55 at 19–20. But, the government argues, he didn't make a copy before he was arrested, so his inability to access those files is his own fault.

The government cites no case or statute for this Orwellian position. If Mr. Avenatti was entitled to make a copy of the files at any point before his arrest, there is no statutory or constitutional basis for denying him the right to do so now. Needless to say, the receiver gave him no cause to do so, given that he had unfettered access to the files before his arrest, and there was no indication that his access was going to be denied in the future. An arrest is based on a probable cause determination, nothing more—the presumption of innocence continues to apply to Mr. Avenatti.

## II. THE COURT CAN ORDER THAT MR. AVENATTI BE GIVEN ACCESS TO THE SERVERS

The government contends that the Court lacks the authority to compel the receiver to allow Mr. Avenatti access to the servers. But Mr. Avenatti served the receiver with his motion to compel. And the receiver filed papers in opposition to the motion to compel without contesting the Court's jurisdiction over him. *Cf. Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (a party waives jurisdiction arguments by committing an affirmative act involving knowledge of the suit and an intention to appear). Indeed, the receiver, unlike the government, does not question the Court's authority over the receiver, nor does he indicate that he will not comply with such an order.

## CONCLUSION

Mr. Avenatti's motion to compel should be granted.

Dated: August 19, 2019                Respectfully submitted,

/s/ H. Dean Steward
H. Dean Steward
Attorney for Defendant
Michael John Avenatti

– 9 –

**Avenatti's Reply in Support of Motion to Compel Discovery**

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED THAT:

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.

I am not a party to the above entitled action. I have caused, on July 29, 2019, service of the defendant's:

DEFENDANT MICHAEL AVENATTI'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL DISCOVERY

on the following parties electronically by filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies counsel for that party:

BRETT SAGEL AND JULIAN ANDRE
Assistant United States Attorneys
Central District of California

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2019

/s/ H. Dean Steward
H. Dean Steward

**Avenatti's Reply in Support of Motion to Compel Discovery**