1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3      HONORABLE JAMES V. SELNA, JUDGE PRESIDING

4  UNITED STATES OF AMERICA,        )
                                    )
5                                   )
                                    )
6                    Plaintiff,     )
                                    )
7                                   )
                                    )
8          Vs.                      )   No. SACR19-00061-JVS
                                    )
9                                   )
                                    )
10  MICHAEL JOHN AVENATTI,          )
                                    )
11                                  )
                                    )
12                   Defendant.     )
                                    )
13  _____)

14

15

16      REPORTER'S TRANSCRIPT OF PROCEEDINGS

17          BAIL REVIEW HEARING

18          SANTA ANA, CALIFORNIA

19      WEDNESDAY, JANUARY 15, 2020

20

21

22      MIRIAM V. BAIRD, CSR 11893
    OFFICIAL U.S. DISTRICT COURT REPORTER
23   411 WEST FOURTH STREET, SUITE 1-053
        SANTA ANA, CALIFORNIA 92701
24          MVB11893@AOL.COM

25

1                    **A P P E A R A N C E S**

2

3    **IN BEHALF OF THE PLAINTIFF,**      BRETT A. SAGEL
     **UNITED STATES OF AMERICA:**        AUSA - OFFICE OF US
4                                         ATTORNEY
                                          SANTA ANA BRANCH OFFICE
5                                         411 WEST FOURTH STREET
                                          SUITE 8000
6                                         SANTA ANA, CA 92701

7                                         JULIAN LUCIEN ANDRE
                                          AUSA - OFFICE OF US
8                                         ATTORNEY
                                          MAJOR FRAUDS SECTION
9                                         312 NORTH SPRING STREET
                                          11TH FLOOR
10                                        LOS ANGELES, CA 90012

11

12

     **IN BEHALF OF THE DEFENDANT,**      H. DEAN STEWARD
13   **MICHAEL JOHN AVENATTI:**           H. DEAN STEWARD LAW OFFICES
                                          107 AVENIDA MIRAMAR SUITE C
14                                        SAN CLEMENTE, CA 92672

15                                         - AND -

16                                        THOMAS D. WARREN
                                          PIERCE BAINBRIDGE BECK
17                                        PRICE AND HECHT LLP
                                          355 SOUTH GRAND AVENUE 44TH
18                                        FLOOR
                                          LOS ANGELES, CA 90071
19

20

21

22

23

24

25

```
1        SANTA ANA, CALIFORNIA; WEDNESDAY, JANUARY 15, 2020; 1110

2                         ---

3             THE CLERK:  Calling Item Number 1, SACR19-0061,

4    United States of America versus Michael John Avenatti.

5             Counsel, please state your appearance for the

6    record.

7             MR. SAGEL:  Good morning, Your Honor.

8             Bret Sagel and Julian Andre on behalf of the

9    United States.

10            THE COURT:  Good morning.

11            MR. STEWARD:  Your Honor, Dean Steward, and with me

12   at counsel table is attorney Thomas Warren.  Mr. Warren will

13   be filing a notice of association in this case later today.

14   He would ask to participate this morning.  Mr. Avenatti is

15   with us.  He's at the moment in custody.

16            THE COURT:  Good morning.

17            THE DEFENDANT:  Good morning, Your Honor.

18            THE COURT:  I look forward to seeing Mr. Warren's

19   notice of appearance.  Be happy to have you participate

20   today, sir.

21            MR. WARREN:  I appreciate that, Your Honor.

22            THE COURT:  The first question is, the defendant

23   prepared to go forward?  The government has made quite a

24   substantial showing which you probably didn't receive until

25   early last night.
```

```
 1              MR. STEWARD:  I got it last night, Your Honor.

 2              I haven't read the 800-page portion of it.  I think

 3    I have seen most of it.  It appears to be from the discovery.

 4    I've read and gone over the 59-page points and authorities

 5    with Mr. Avenatti.  I've read the agent's declaration.  So

 6    we're prepared to go forward this morning.

 7              THE COURT:  Okay.

 8              Mr. Sagel.

 9              MR. SAGEL:  Your Honor, obviously, you have read

10    what we've submitted.  We're basically going to submit on

11    that.  There's nothing else that -- we'll proffer our

12    declarations and attached exhibits and arguments thereof.  If

13    Your Honor has any questions, I would be happy to answer

14    them.  However, we submit on our papers and believe at this

15    time defendant should remain in custody.

16              THE COURT:  Very good.  Who is going to argue?

17              MR. STEWARD:  Me, Your Honor.

18              THE COURT:  Very good.

19              MR. STEWARD:  Your Honor, I think it's interesting

20    to start by noting that we're here not because pretrial

21    services has requested the warrant or alleged any violation,

22    but it's the government that has done that without them.

23              THE COURT:  Should I weigh the evidence any

24    differently depending on who brings this to my attention?

25              MR. STEWARD:  Yes.
```

1          THE COURT:  Why?

2          MR. STEWARD:  The reason for that, Your Honor, is

3     that I can represent to the Court that the government has

4     gone to pretrial services multiple, multiple times asking

5     them to violate my client.  They have looked at what the

6     government has presented to them and said time and again, no,

7     he's not in violation.

8          The pretrial services officer is here, Ms. Davis,

9     from the Los Angeles office.  I think that she would report

10    and confirm all of these contacts and an effort to have a

11    violation come from them.  She refused to do it because in

12    her opinion and in the opinion of pretrial services he had

13    not violated any of the conditions.  So the government took

14    it upon themselves to bring this.  Also, I believe that they

15    have disclosed everything that is in their 59-page filing to

16    pretrial services.  Once pretrial services looked at it

17    again, they have refused to violate my client.  So I think

18    where it comes from is significant.  That's why I think it's

19    significant.

20         Ultimately, Your Honor, our position is that this

21    is nothing more than an attempt to collection debts.  Collect

22    debts through the U.S. Attorney's Office for an attorney by

23    the name of Jason Frank, who is present in the courtroom, and

24    Mr. Frank and his attorney Andrew Stolper have used the U.S.

25    Attorney's Office and Mr. Sagel, in particular, to attempt to

1    collect the debts for Mr. Frank.  Much of what the Court sees

2    here is that exact situation.

3           I'd like to go over each one of the allegations

4    that the government has submitted to the Court.  First, the

5    million dollar payment.  This was, Your Honor, a fee for a

6    case that Mr. Avenatti was retained personally for, not Eagan

7    Avenatti or anyone else, Mr. Avenatti himself.  It was a rape

8    case here in Southern California.  Very violent.  It went

9    before an arbitration judge up in Los Angeles.  The agreed

10   fee was $3 million.  $1 million of it went to Mr. Avenatti.

11   That's what the government --

12           THE COURT:  The agreed fee or the agreed award?

13           MR. STEWARD:  Agreed award.

14           THE COURT:  Okay.

15           MR. STEWARD:  The $3 million then was paid by the

16   employer of the rapist, and $2 million was paid directly to

17   the client at Mr. Avenatti's insistence.  He didn't want it

18   to go into a trust account or anywhere else.  He received a

19   $1 million fee that had nothing to do with Eagan Avenatti.

20   It was his money personally and only for him.

21           He advised pretrial services of the -- I think it

22   was $717,000 that he transferred to his first wife.  All of

23   those transactions were shared with pretrial services.  He

24   hid nothing.  Perhaps importantly, he sought counsel on

25   everything he did with regard to that fee and many of the

1    transactions that the Court sees here.  He sought counsel

2    from a business bankruptcy attorney who advised him on what

3    he could and could not do.  He felt that he could do each one

4    of the things that the Court now sees before it from the U.S.

5    Attorney's Office.

6            The Chase --

7            THE COURT:  Excuse me.  I forgot to make one

8    preliminary comment.  There will be no audio or visual

9    recording of this hearing.  There will be no telephonic

10   communications during the course of this hearing.  If anyone

11   wants to tweet or send or receive e-mails, that's fine.

12   Anyone who violates this directive will be cited for

13   contempt.  Excuse me.

14           MR. STEWARD:  No, Your Honor.  Totally understand.

15           The Chase Bank account which the government talks

16   about at some length in the papers was closed by Mr. Avenatti

17   because Washington State seized what funds were there.  The

18   US Bank account was opened or at least one of the accounts

19   was opened in response to the closing of the Chase account.

20   It was not in any sense an attempt to hide any particular

21   funds.

22           They talked at some length about flipping cashier's

23   checks.  Your Honor, it's important to understand that

24   Mr. Avenatti with all of the creditors that he has, and we

25   all agree he's got a lot of creditors, he is -- he has been

1    paying his debts.  Daily living expenses, monthly living

2    expenses in cash.  He's been doing that in order to make it

3    harder for his creditors.  I don't think there's any law in

4    California or federal law that says you got to make it easier

5    for your creditors to collect any funds that are owed.  So

6    he's used cash for those purposes.

7              For example, they talk about structuring.  The

8    truth is the cash taken out of US Bank account or -- before

9    that, the Chase account, are in amounts of $3,000, $4,000,

10   not 9500.  There was one check Mr. Avenatti believes that was

11   like for 8500.  Each one of those were not for the purposes

12   of avoiding reporting requirements, but rather to get cash so

13   he can pay off all of these various creditors.  Again, that

14   would be on a monthly basis.

15             The Mercedes.  They talk about that at some length.

16   I spoke with Mr. Avenatti's first wife Christine this

17   morning.  She confirmed that the plan all along had been that

18   that was going to be her car.  It's a five-year old car.

19   What she did was she simply loaned it to Mr. Avenatti.

20   That's why we see the transactions we see.  It's completely

21   innocent.  That was the plan.

22             Requests for appointment of counsel.  I don't -- I

23   know for a fact that Mr. Avenatti never submitted a financial

24   declaration.  I don't remember whether he actually asked for

25   counsel or not.  I remember there was some discussion about

1    it, but he never submitted a financial declaration.

2         THE COURT:  He never did that, but he clearly asked

3    the federal defender to represent him, and the federal

4    defender did represent him for a period of time until we came

5    to a decision point as to how he was going to go forward.

6         MR. STEWARD:  Right.  I agree with that.  So this

7    was like a transition period between Mr. Littrell with

8    Tom Bienert's firm and me.  He didn't have anybody at that

9    point.  Perhaps he should have gone pro se during that period

10   of time or not.  In terms of paying for those services, I'm

11   probably the only one in the room that would know how to do

12   that.  It doesn't go to the federal public defender.  It goes

13   to the general fund.  It goes through the clerk's office.  It

14   never got brought up.  So I don't think it happened, but he

15   certainly owes that.  Assuming he has the money to pay that,

16   he would be more than willing to do that.

17        Now, the government talks in eight pages detailing

18   debts that Mr. Avenatti has.  We can see that we all agree

19   that he has an awful lot of debts, but there's no particular

20   law or statute or anything else that is says he has to pay

21   them in some particular order.  So why should Mr. Frank, who

22   was Mr. Stolper as his lawyer, who has been pushing, pushing,

23   pushing for payment, why should he get it before, for

24   example, Mr. Avenatti's first wife or Mr. Avenatti's second

25   wife?  It almost comes down to the government is suggesting

1    that there should be a debtor's prison here; that somebody

2    who doesn't pay their debts should go into custody under

3    these circumstances.  That, of course, is just wholly unfair.

4            THE COURT:  Only if they do certain things like

5    move their money around and disguise it.  California statutes

6    deal specifically with that problem where there's an

7    outstanding judgment.

8            MR. STEWARD:  Okay.  But I would suggest that, for

9    example, getting a cashier's check so it keeps it out of a

10   California bank account simply holding onto that check is not

11   in any sense a violation of either the California statute or

12   the Washington statute.  Again, it's just making it so that

13   he doesn't make it easier for creditors.  He's done that a

14   lot.  There's no doubt about that.  I suggest it doesn't go

15   over the line.  It doesn't in any way violate the statute

16   that the government has suggested.

17           Also, they talk about an exclusive resorts

18   membership.  The reality is Mr. Avenatti purchased that

19   membership in 2009, many, many years ago.  What he has to pay

20   is yearly dues.  That's what he did.  The membership itself

21   is quite valuable and is transferable.  If he doesn't pay

22   that, he loses an asset.  So that's what he's done here.

23           THE COURT:  Did he report that payment to the

24   pretrial services officer?

25           MR. STEWARD:  You know, Your Honor, I haven't gone

1    over every single payment that he reported or didn't, but

2    he's told me he did report everything.  So I'll assume that's

3    true.  Ms. Davis is here.  Perhaps, she can enlighten on us

4    on whether he did or not.

5           I would note, Your Honor, that the terms of the

6    bail require him to report to pretrial, not receive approval

7    from them, but simply to let them know I spent on such and

8    such date $6,500 that went to Steward or whoever it may be.

9    There was never a requirement that they approve it.  Indeed,

10   it would be difficult for them to figure out whether it's an

11   appropriate expense or not.  I would suggest, overall, if you

12   step back and look at the government's filing, they talk

13   about mail and wire fraud.  I don't see any specifics about

14   where that is there.  That's the kind of thing that, frankly,

15   if they think that occurred, supersede.  Indict him a fourth

16   time.  Whatever.  This is just not the appropriate forum to

17   make an allegation like that, particularly which is so sparse

18   in terms of details.  There's just no details at all.  The

19   structuring financial transactions, again, his intent was not

20   to defeat reporting requirements.  His intention was to pay

21   creditors on perhaps a monthly basis.

22          As the Court is aware, he has two other cases.  One

23   of them is supposed to start trial this Tuesday.  He -- had

24   he not been arrested last night, he would have been on a

25   plane working with his lawyers back in New York City today.

```
 1    He's been obviously unable to do that.  In terms of the
 2    overall picture of danger to the community when you're
 3    talking economics, specifically as to Mr. Avenatti, where is
 4    the danger?  He hasn't stolen any money from anybody.  He has
 5    avoided creditors, yes.  He feels he did it in an above board
 6    and legal manner.  The fact that he approached counsel and
 7    received legal advice supports the fact that certainly his
 8    mental state was not to defraud or otherwise give any trouble
 9    to anybody else.
10            He hasn't paid Jason Frank.  That's unfortunate.
11    He's got a lot of other creditors as well.  None of these
12    people have actual court judgements.  For example, the
13    government talks about spousal support.  $2.5 million debt to
14    Ms. Storie.  The reality is there is no $2.5 million court
15    ordered judgment or debt.  What it is is a monthly payment
16    that he supposed to be making --
17            THE COURT:  Pursuant to what?
18            MR. STEWARD:  I'm sorry?
19            THE COURT:  Pursuant to what?
20            MR. STEWARD:  A Superior Court order --
21            THE COURT:  Order.
22            MR. STEWARD:  I agree with that, but I know very
23    little about that sort of thing.
24            THE COURT:  The point is there as a judicial
25    directive to do that.
```

1    MR. STEWARD:  The judicial directive is not to pay

2    $2.5 million.  The judicial directive is to pay X per month.

3    He's done as well as he can on that.  He's way behind.  No

4    doubt about that.

5         The two ex-wives are both owed money.  They are

6    both creditors.  With the first ex-wife, he's done the best

7    he can.  With the second ex-wife, he's done the best he can.

8    He's fallen short like all these other creditors.  He's

9    fallen short.  That doesn't mean he's committed mail fraud or

10   wire fraud or structuring or any of the other things the

11   government keeps talking about.  The bottom line, Your Honor,

12   is where is that economic danger to the community?  I suggest

13   to the Court that --

14        THE COURT:  Suppose I don't accept your, decision

15   of all these transactions if they are in fact -- if there is

16   probable cause to believe that crimes were committed, what is

17   there to say to me if did remains free on bond, he wouldn't

18   engage in the same conduct?  You put one characterization on

19   it, the government puts a different dark decision.  My job is

20   to find probable cause here.

21        MR. STEWARD:  Right.  I would suggest --

22        THE COURT:  I any what you're telling me is, in

23   terms of his -- the way he conducts his personal affairs and

24   what not.  He's going to continue taking these payments in

25   the fashion described in the government's papers.

```
 1              MR. STEWARD:  There are no --
 2              THE COURT:  Is that fair?
 3              MR. STEWARD:  No, I don't think so.  I think that
 4    going forward given the circumstances today, the fact that
 5    he's got these trials pending, the rest of that, I don't
 6    think he can A, afford to do something like that.  B, given
 7    the proceedings today, he certainly would be a fool if he
 8    continued on to conduct himself in the manner the Court is
 9    talking about.
10              THE COURT:  Well, why would that be if it's in fact
11    lawful conduct?
12              MR. STEWARD:  Well, it is lawful conduct.  That's
13    what we're saying, but he is certainly on notice here today
14    what the government doesn't like.  We, however, need to
15    emphasize that this really is not a fair proceeding from the
16    government.  It all goes back to who the victim was.
17    Mr. Frank, he is the partner of Andrew Stolper, attorney
18    locally.  He used to be an assistant U.S. Attorney, close
19    relationship with Mr. Sagel.  I said at the beginning and
20    I'll say it again that Mr. Frank and Mr. Stolper have used
21    Mr. Sagel and the U.S. Attorney's Office to collect money
22    that Frank is owed.  Frank is one of many creditors.  He
23    doesn't have any particular preference.  He just has a really
24    aggressive lawyer with connections.  All of that is the main
25    reason we're here.
```

| | |
|---|---|
| 1 | THE COURT:  Are you accusing Mr. Sagel of |
| 2 | misconduct? |
| 3 | MR. STEWARD:  Oh, of course.  Of course. |
| 4 | Absolutely. |
| 5 | THE COURT:  Okay. |
| 6 | MR. STEWARD:  Without doubt.  I've done it before. |
| 7 | I'll do it again. |
| 8 | THE COURT:  Just want to understand your position. |
| 9 | MR. STEWARD:  That's my position. |
| 10 | Does the Court have any questions? |
| 11 | THE COURT:  No. |
| 12 | MR. STEWARD:  Thank you. |
| 13 | THE COURT:  Mr. Sagel. |
| 14 | MR. SAGEL:  I can start with the end part, or I can |
| 15 | start with the actual facts in the case, whichever way Your |
| 16 | Honor wants -- I'll start with the facts, which was I fully |
| 17 | understand that Mr. Steward is trying to do things in a very |
| 18 | quick manner.  He got a lot of papers last night.  He chose |
| 19 | to proceed this morning.  Basically, not one thing he said |
| 20 | today is supported by a single piece of document, fact, or |
| 21 | evidence.  Actually, most of what he's talked about, |
| 22 | Your Honor has seen the evidence that is directly |
| 23 | contradictory to what he said. |
| 24 | I'll start with when he said there's nothing wrong |
| 25 | with the Chase account.  There's nothing wrong with the US |

1    Bank account.  He turned to US Bank when Chase was closed.

2    That's just completely false.  Your Honor has seen that.  He

3    owned up the Chase account on May 7th.  He owned up the US

4    Bank account on May 22nd.  They were opened up

5    simultaneously.  The Chase account doesn't even close

6    until -- I would have to look at the papers -- September or

7    October.  September is when the last levy from the Washington

8    Department of Revenue comes in.

9         He's already doing his cashier's check flipping

10   scheme for months at that point.  He's using two different

11   accounts.  He starts using the US Bank account primarily once

12   his creditors realize where his Chase Bank account is.  He

13   uses the Chase Bank account for his Uber, Apple iTunes, and

14   all his little payments.  So that stays open.  Those two

15   things have nothing to do with each other.  The statement by

16   Mr. Steward is just false.

17        So as we go through -- I can go through some of the

18   comments.  If you want me to focus on any, I can.  I'm just

19   going to go in order on his comments.  Started talking about

20   the multiple, multiple, multiple times the government went to

21   pretrial trying to get Mr. Avenatti revoked.  We have the

22   officer here.  She can confirm one way or the other.  I think

23   it was two.  I think we've had two conversations with

24   Ms. Davis about Mr. Avenatti.  One, we didn't even want him

25   revoked.  We thought we should advise her of a tweet

1     Mr. Avenatti put out that could be considered threatening to

2     two different individuals, one of which is a victim in this

3     case.  It was the pretrial services officer who determined to

4     bring it to the Court's attention that it was troubling.

5          The second time was when Mr. Avenatti decided not

6     to pay his ex-wife any money, but decided to buy his own

7     artwork back to pay off part of his judgment against his

8     ex-wife.  When we found out about that transaction, we

9     contacted pretrial service officer and said, do you know

10    anything about him paying for cash to buy his own artwork

11    back at an auction.  She said he told me something about

12    that.  Here's the amount of money.  That was it.  We didn't

13    ask her to violate him.  We just wanted to make sure he

14    alerted her to it when we were informed of it.

15         Those are the only two times that I am aware of.  I

16    feel confident Mr. Andre would agree with me because each

17    phone call we were on together.  Two times.  So the multiple,

18    multiple, multiple times to try to get him violated is

19    actually zero times.  Two times of contact.  Zero times where

20    we pressed for a violation.

21         As it comes to today, as opposed to whether the

22    government brings this or pretrial brings this, in the last

23    few weeks and the last few days when we started getting the

24    evidence seeing what Mr. Avenatti was doing, we felt it was

25    our obligation to get that evidence before the Court.  No

```
1    matter how many times Mr. Steward says we're here -- his
2    terminology was -- is not a fair proceeding brought by the
3    government just because the government doesn't like what he's
4    doing.  The government doesn't care -- whether we like or
5    don't like something is irrelevant.  We saw what we believed
6    were violations of the law.  We brought it to Your Honor.
7    We're here today and we are here on an arrest warrant because
8    of a decision Your Honor made based on evidence we presented.
9    None of which has been rebutted today.  I feel pretty
10   confident will not be rebutted today because we've seen the
11   proffer that was made.
12          With regards to whatever comments were made about
13   me, I can have Mr. Andre address them if you'd like.  I --
14   I -- we normally do not respond to allegations against
15   ourselves.
16          THE COURT:  It is up to you.  I'm not going to
17   require you to respond.
18          MR. SAGEL:  I will say what did Mr. Steward present
19   to provide any evidence of what he said.  The reason it's
20   nothing is he has nothing.  It's sad that Mr. Steward, as an
21   officer of this Court, would make an allegation such as that
22   without any basis whatsoever other than maybe hearing
23   something in his ear from an individual sitting two feet next
24   to him.  The reason I say that is --
25          MR. WARREN:  Let the record reflect that he's
```

referring to me, Thomas Warren.

         MR. SAGEL:  Actually, maybe I should have said four feet.  I was referring to Mr. Avenatti.

         But thank you, Mr. Warren.

         With regards to that, when this case came through, and we'll address this when they actually want to file a proper motion in more detail, I have no problem telling this Court, and I feel pretty confident Mr. Stolper will have no problem telling the Court, pretty much cut off all communications with Mr. Stolper for two years because of this case.  Your Honor had -- Your Honor had a going-away party for Ms. Tunis where Mr. Stolper was there.  I left.  I left so that there would not be any contact with Mr. Stolper.  I don't have any contact with Mr. Stolper.  I don't have any contact with him in this case.  Every contact with Mr. Stolper, who is not a witness in this case.  He's a lawyer representing a potential victim.  Mr. Andre has all those communications.

         So when Mr. Steward wants to actually come to this Court with any evidence of his accusation, I welcome it.  He won't do that because he won't have anything other than bluster from him or his client.  So I welcome it whenever they want to file something legitimate.

         As it relates to the reporting of $5,000, I have no idea what -- I think the officer can tell you -- I don't want

1  to put words in her mouth, but she just did not have time to

2  do a thorough review of the accounts by this hearing.  We

3  fully appreciate and understand that position.  I have no

4  idea what he reported and what he didn't report.  The

5  difference is she doesn't know how and why.  She can never

6  know -- and not any criticism of her.  She's got a full case

7  load.  She's relying on the truthfulness of her client.  She

8  has no idea why he would be flipping these cashier's checks.

9  She has no reason to know that he showed up at the car

10  dealership to buy the car and then decided to put it in his

11  wife's name two days later.

12      So this whole idea that it was always going to be

13  his wife's car, what was the explanation why he showed up two

14  days earlier to buy the care, filled out the paperwork, put

15  his Arizona's driver's license where he never resided to

16  purchase that car.  No answer for that either.

17      So, again, we have all these claims of what really

18  happened that Mr. Avenatti didn't do anything wrong.  No

19  proof.  They're kind of laughable.  In the documentary

20  evidence that Your Honor has reviewed, that shows the

21  contrary of what they're claiming.

22      THE COURT:  Focusing on all of the transfers of

23  money, is it fair to say on the present record, you have

24  documented maybe 20 plus transactions in excess of 5,000, but

25  the present record really doesn't tell me whether he reported

```
 1    that to the probation -- or the pretrial services officer or
 2    not?
 3              MR. SAGEL:  Absolutely, Your Honor.  What I would
 4    say to that answer is Your Honor obviously makes the call.  I
 5    think the strategy call on our part to a lesser extent was it
 6    didn't really matter.  There's probable cause that he's
 7    committing both federal and state felonies and potentially
 8    misdemeanors.  It really doesn't matter if he reported it.
 9    We highly doubt that if he did report them all, he was
10    truthful about the circumstances.  What I'd also point out is
11    that Mr. Steward basically admitted in his presentation that
12    he was doing these things to hide it from his creditors,
13    which is a violation of law, which is in our papers, and
14    Your Honor has seen.
15              THE COURT:  My point is if I were to revoke under
16    3148(a), violation of the terms of pretrial release, I don't
17    have a sufficient record to do that.
18              MR. SAGEL:  I'm sorry.  Can you --
19              THE COURT:  Sure.  There are two bases under 3148
20    to revoke, violation of terms of pretrial release, B,
21    commission of a crime.  Under A, all those transactions are
22    there, but I have no way of knowing until I get a full report
23    from pretrial services whether those were reported.
24              MR. SAGEL:  That's a fair point.  I think as you
25    can see from our papers, we were relying on B, probable cause
```

1    of a crime.  I think if we were going to get to just the

2    violation of conditions, yes, I would agree at this point we

3    would need further evidence from pretrial service officer.

4            What I'd also say is if we go down that road, there

5    are also issues we would need to address as it relates to his

6    conditions.  One, regardless of the answer that was given at

7    the end about whether or not everything was right, but he

8    would be a fool not to do this anymore even though everything

9    according to him is copacetic, what we're really talking

10   about here is are there any conditions even as you look at

11   this now that he could comply with one?  Also, the very

12   transaction as it relates to the 700 -- 7 -- oh, approximate

13   $717,000 cashier's check to his first ex-wife in which he

14   immediately sends back 500,000 to him, and then her

15   purchasing a Mercedes Benz, which by all accounts is for him.

16   She's his surety in this case.  Is that an independent surety

17   that this Court could even trust to be that independent

18   surety?

19           For all intents and purposes, when you look at the

20   cash transaction, he paid her to be a surety.  She made a

21   couple hundred thousand dollars off of it.  Maybe minus

22   50,000 for the car she bought him.  So -- so if we had to

23   have focused on the A section, I think we have real concerns

24   about the current conditions, but as you saw from our papers,

25   we're primarily focusing on B.

```
 1              There was a comment that Mr. Avenatti hasn't stolen
 2      any money from anyone.  There are about five victims named in
 3      our indictment that would beg to differ.  As you saw in our
 4      affidavit, there's about 200 who were plaintiffs in a suit
 5      Mr. Avenatti brought who have not been paid a penny of those
 6      settlements.  We've seen where those moneys go.
 7              I think we can name about 200 people who would
 8      strongly disagree with the comment that he hasn't stolen any
 9      money from --
10              THE COURT:  But aren't we looking at presently
11      conduct post arrest?
12              MR. SAGEL:  We are.  In that regard is kind of --
13      maybe my response is gratuitous.  I say it in the sense of
14      this is the argument we're hearing as he is saying
15      Mr. Avenatti hasn't done anything wrong.  In the same breath
16      he says, he hasn't taken anybody's money.  The bank records
17      sure seem to differ on that just like they do with these
18      present allegations.
19              Based on basically one of the last things
20      Mr. Steward said and Your Honor's question that he would do
21      everything the same, Your Honor has already found issuing the
22      warrant.  I don't want to the read Your Honor's mind that
23      there was probable cause.  Nothing has rebutted that, as we
24      stand here right now.  What we say is, we're currently
25      looking at a person who does not believe that these
```

```
 1   transactions which are admitted to hide and keep money from

 2   his creditors is anything wrong.

 3             As we sit here today, I don't think we can do

 4   anything other than to keep him in custody and remand him,

 5   because he hasn't rebutted the presumptions.  There are no

 6   conditions of release that will secure -- prevent him from

 7   being an economic danger to the community.

 8             If Your Honor has any questions?

 9             THE COURT:  Sum up the evidence for mail fraud.

10             MR. SAGEL:  I'd say mail fraud and wire fraud kind

11   of one and the same, but they relate.  I can do it post

12   indictment and I can do it ongoing?

13             THE COURT:  No.  Post indictment.

14             MR. SAGEL:  I say that in the sense that some of

15   the facts that would relate to ongoing scheme to defraud post

16   indictment predated the indictment as well as it relates to

17   some of his creditors.  I will start with -- we only focused

18   on four in our brief, as I think Mr. Steward and his client

19   might admit, there's well more than four creditors against

20   Mr. Avenatti.

21             As it relates to the four creditors who all do

22   actually have judgements.  The very reason he sat for

23   judgment debtor exams is because judgements have been

24   rendered against him.  So it is not that there are no

25   judgements.  There are.  The four creditors who have
```

```
 1    judgements against Mr. Avenatti are going through trying to
 2    collect their money from Mr. Avenatti.  He enters into what
 3    we would define a scheme to defraud these individuals by
 4    lying to them.  Lying in his judgment debtor exams.  Lying
 5    about where his assets are.  Operating in cash, hiding and
 6    moving his money around to avoid them finding it.  When they
 7    do find where he's got a bank account, he moves to another
 8    bank account, all -- which I think was just admitted -- all
 9    in a scheme to defraud these victims.  People who are owed
10    money by Mr. Avenatti.
11          Then as part of his scheme, to live his lavish
12    lifestyle.  Living in an $11,000 a month apartment.
13    Living -- having an exclusive resort, exotic vacation, which
14    is very valuable.  He uses the money that should be going to
15    creditors to pay for his lifestyle.  So when we get to the
16    mailing and the wiring, you could say his checks that went to
17    exclusive resorts, for example, were overnight mail --
18          THE COURT:  Well, does it really make any
19    difference whether he spends it on a penthouse or gives the
20    money to Little Sisters of the Poor?
21          MR. SAGEL:  Arguably, no.  I guess -- it would go
22    to the jury appeal, which is not really part of the crime
23    itself.  Yes, it probably does not matter how he's using that
24    money.  I can say that we haven't seen any charitable
25    donations from Mr. Avenatti's account.
```

```
 1              THE COURT:  But your point is it's not going to the

 2    victims?

 3              MR. SAGEL:  It's not going to the victims, and not

 4    only not going to the victims, he's taking every efforts in

 5    the world to not give the money to the victims.  I think I

 6    could give an example, but specifically on, I think it was

 7    August 20th, in one of the times when Mr. Avenatti deposits I

 8    think about a $33,000 cashier's check.  He has $33,000 on his

 9    person that day.  On that day, he owes about $2.5 million to

10    his second wife.  Instead of giving her any money, he uses

11    half of his money to buy his own artwork back.  He is sitting

12    there with another 15,000 or 16,000 on his person.  He could

13    have given that to his creditor or wife.  No, he keeps it for

14    himself.

15              That is the pattern that you see throughout this

16    whole case is everything he does is to keep the money in his

17    own pocket and not pay the people who have court-ordered

18    judgements against him.

19              So I don't know that was probably longer than the

20    summary you wanted, but that is -- that's basically it.

21              THE COURT:  Okay.

22              MR. SAGEL:  Without any further questions, the

23    government would submit, Your Honor.

24              THE COURT:  Thank you.

25              Mr. Steward.
```

1          MR. STEWARD:  Your Honor, may Mr. Warren respond?

2          THE COURT:  All right.

3          MR. STEWARD:  Thank you.

4          MR. WARREN:  Thank you, Your Honor.

5          MR. SAGEL:  Your Honor, we had asked Mr. Steward

6    before the hearing who would handle the hearing.  He said it

7    would be him, which is why we didn't say anything at that

8    point.  I can have Mr. Andre address it, but as far as we

9    know, Mr. Warren has represented both Mr. Avenatti and

10   Christine Carlin, the first wife --

11         THE COURT:  Right.

12         MR. SAGEL:  -- in civil proceedings as it relates

13   to the Jason Frank matter.  He obviously has represented and,

14   as I think they've alluded to in certain things, Ms. Carlin,

15   has come in here.  She's represented by Ken Miller in this

16   case.  She's also a witness -- potential witness against

17   Mr. Avenatti, all of which happened before, I believe,

18   Mr. Warren represented her in a judgment debtor exam.  We

19   think that there is a -- there is a potential conflict that

20   would need to be addressed.  I don't think it needs to be

21   addressed today, but it would if Mr. Warren believes -- not a

22   counsel of record in this case -- needs to address the Court

23   in this case.

24         THE COURT:  We'll sort that out down the line.

25         Mr. Warren.

1           MR. WARREN:  Yes, Your Honor.  Thank you very much,

2    Your Honor.  I would just note -- I would just note I would

3    like to just bring to the Court's attention sort of the arc

4    of this proceeding.  As Your Honor is aware, Mr. Avenatti is

5    due to go to trial next Tuesday in front of Judge Gardephe in

6    the Southern District of New York.  I'm not sure if

7    Your Honor was aware, although there was a motion to continue

8    that trial, it was ultimately denied.

9           THE COURT:  At least according to the press, the

10   prosecutors in New York feel that they can get him there for

11   that proceeding?

12          MR. WARREN:  They do.  Judge Gardephe was extremely

13   annoyed.

14          THE COURT:  Extremely?

15          MR. WARREN:  Annoyed.  He's been -- they had a

16   lengthy conference call yesterday in which the judge insisted

17   that they go forward next Tuesday.  We learned from the

18   prosecutors in New York, because the judge put it to the

19   prosecutors in New York, why this bail revocation proceeding

20   had started.  He was curious as to why this was done at this

21   particular time.

22          The prosecutors in New York responded with a letter

23   to Judge Gardephe saying they didn't have any idea that

24   Mr. Sagel or Mr. Andre were planning on doing this until

25   yesterday.

1          THE COURT:  Well, is he less or no less a danger to

2     the community because he has a court appearance next week?

3          MR. WARREN:  Your Honor, this brings into --

4          THE COURT:  Is he less or not less likely to be a

5     danger to the community because he has a court appearance

6     next week?

7          MR. WARREN:  He -- Your Honor, if Your Honor

8     believes that we --

9          THE COURT:  Sir, answer the question.

10          MR. WARREN:  I believe he is not a danger to the

11     community at all.

12          THE COURT:  The question is, because he has a court

13     appearance next week?  Is that --

14          MR. WARREN:  No.  That does not bear on it,

15     Your Honor.

16          THE COURT:  Okay.

17          MR. WARREN:  What does bear on it is the fact

18     that -- first of all, we -- we believe that there can be

19     conditions put on Mr. Avenatti that would allow the Court to

20     be assured that he would not do the things that the

21     government is now claiming constitute violations of the law

22     so that he may go to New York and prepare for the trial that

23     is set to go next Tuesday.  So we are hopeful that we can get

24     to that point with the Court.

25          I -- I would note that I just want to talk about

1    some particular things.  First of all, there was an

2    allegation made with respect to the $3 million settlement.

3    There was an allegation by the government that it was a firm

4    case, an Eagan Avenatti case.  We've not seen -- we've not

5    seen -- we do not believe there is a retainer agreement

6    showing that this is an Eagan Avenatti case.  This was a

7    personal case of Mr. Avenatti.

8          Now, just to give -- before we get to the brass

9    tacks, Your Honor, of discussing whether or not Your Honor

10   can find a way to have Mr. Avenatti released on bond

11   conditions that will satisfy the Court that he is not a

12   danger to the community, and we are hopeful that you do,

13   there were a few allegations that I think should be

14   addressed.

15         The first one is I do not believe that it is sad

16   for Mr. Steward to have made the allegation that Mr. Sagel

17   committed misconduct in this case.  I would note that I was

18   present with Mr. Sagel -- I was Mr. Avenatti's State Bar

19   lawyer at the hearing yesterday when Mr. Sagel decided to

20   arrest -- have Mr. Avenatti arrested at the State Bar

21   hearing.

22         So --

23         MR. SAGEL:  Your Honor, if he'd like to actually

24   tell the real facts of the e-mail he sent this morning --

25         THE COURT:  You'll have the chance.

```
1              MR. SAGEL:  It's pretty irrelevant.  Mr. Warren, as
2    an officer of the Court, would like to maybe use actual facts
3    of what happened --
4              THE COURT:  You'll have your chance.
5              MR. SAGEL:  Okay.
6              MR. WARREN:  I was in court where Mr. Sagel was
7    watching one of the witnesses in your case testify in the
8    State Bar proceeding, because he was also testifying there.
9    At a break in that hearing, Mr. Sagel taunted Mr. Avenatti
10   about asserting the Fifth Amendment.  I had an --
11             THE COURT:  Well, sir, let's stick to the facts
12   here.  If there are any disciplinary proceedings to be had or
13   any formal complaints to be had, they'll proceed or they
14   won't.
15             MR. WARREN:  Very well.
16             THE COURT:  Let's stick to the issues.
17             MR. WARREN:  We do intend to pursue on that basis.
18             I guess the main other point, Your Honor, is that
19   the question of whether or not Mr. Avenatti should be
20   remanded or not, and the fact that this is at the instigation
21   of the prosecutors in this case, I've never participated
22   after my ten years as an AUSA and then as a defense attorney
23   after that, I never have seen a situation in which a bail
24   hearing or pretrial service revocation hearing was predicated
25   on allegations of wire and mail fraud.
```

```
1              This is not a situation -- if -- if the government

2    believes in this case that crimes have been committed, they

3    have an ongoing grand jury investigation against

4    Mr. Avenatti.  So if they want to bring superseding

5    indictment and prove to a jury beyond a reasonable doubt that

6    Mr. Avenatti has committed other crimes, then let them do

7    that.  There is absolutely no reason for them to attempt to

8    prove these crimes through a pretrial services revocation

9    hearing where the finding has to be by probable cause.

10             THE COURT:  But isn't that precisely the point?

11   We're here on probable cause not proof beyond a reasonable

12   doubt.

13             MR. WARREN:  Well, that's why the fact that this --

14             THE COURT:  Because the opportunity to supersede is

15   available, does that mean the government is automatically

16   foreclosed from coming to the Court with evidence that it

17   believes constitutes probable cause?

18             MR. WARREN:  Your Honor, if we're going to have a

19   full-fledged evidentiary hearing at some --

20             THE COURT:  Sir, my question is, just because they

21   have an alternative to supersede, does that preclude the

22   government from coming to the Court for bail revocation based

23   on probable cause?

24             MR. WARREN:  It does not.

25             THE COURT:  Okay.
```

1    MR. WARREN:  There is nothing legally wrong with

2    Mr. Sagel did.  We believe it is profoundly unfair.  We

3    believe that the timing of this is unbelievably suspect.

4         Nevertheless, I think that, perhaps, it would be

5    best if we heard from pretrial services.  First of all,

6    pretrial services has not made a recommendation in this case

7    of detention.  There have been statements that have been

8    made --

9         THE COURT:  They have not made a recommendation

10   period with respect to today's proceedings.

11        MR. WARREN:  That is right, Your Honor.  That is

12   correct.

13        But they have not joined in the government's

14   recommendation.  The -- Ms. Davis is here.  I know that

15   people have made -- both Mr. Steward and Mr. Sagel have made

16   statements.  I think it would be best simply to hear from the

17   pretrial service officer as you would during the course of a

18   revocation proceeding about the circumstances surrounding

19   this.  That's all I have, Your Honor.

20        THE COURT:  Thank you.

21        MR. ANDRE:  Your Honor, if I may have one second to

22   address one point?

23        THE COURT:  Mr. Andre.

24        MR. ANDRE:  Your Honor, first from a factual

25   perspective, Mr. Warren mentioned there's no documents that

1    Mr. Avenatti was representing the individual with the

2    $3 million settlement on behalf of the firm.  Exhibit 37 to

3    the declaration of Special Agent Carlos is a letter signed by

4    Michael Avenatti on behalf of Avenatti and Associates, APC,

5    which at that point or at least at the time of which the

6    million dollars came in, the entire interest had been ordered

7    turned over to his second wife, Ms. Storie.

8           As far as the timing, the one thing we do want to

9    make clear to the Court is we have learned of this conduct

10   very recently.  We felt we had an obligation to the Court.

11   We felt we had an obligation to the victims to bring it to

12   the Court's attention immediately.  That's what we've done.

13          I'm not going to respond with respect to the issues

14   with respect to Mr. Sagel other than to say we're happy to

15   respond at an appropriate time.  If the Court has any further

16   questions, we would address them.  We agree -- one thing we

17   agree.  We think it is important that Mr. Avenatti be

18   available in New York immediately.  We're willing to do

19   whatever we can to make sure that happens.

20          THE COURT:  Including delayed remand?

21          MR. ANDRE:  I mean, Your Honor, I think that the

22   question you asked Mr. Warren on that point is correct.  The

23   fact that there is a proceeding in a week in another district

24   does not make him more or less a danger to the community in

25   the interim.  Obviously, if the Court is comfortable with

```
 1    something, we defer to the Court.  We know that the SDNY

 2    prosecutors have made arrangements to try to get him there as

 3    soon as possible.  If he's remanded, we can assist with that

 4    as well.  On that, I don't think there is --one second,

 5    Your Honor.

 6              (Government counsel confer)

 7              MR. ANDRE:  If he were to remain in custody, we

 8    have coordinated with the Marshal Service and other various

 9    agencies to get him there by Friday at the very latest.

10              THE COURT:  This Friday?

11              MR. ANDRE:  This Friday.

12              THE COURT:  Okay.

13              MR. ANDRE:  If not sooner.  We would request if he

14    is remanded and detained, that the Court order him

15    transported forthwith by either the Marshal Service or

16    another law enforcement agency.

17              THE COURT:  Anything further, Mr. Warren?

18              MR. WARREN:  Yes, sir.

19              Your Honor, I believe that we could structure some

20    conditions of his release that would require him to seek not

21    only notification, but approval of any financial transaction

22    by the pretrial services by the government, by anybody --

23              THE COURT:  But don't the present terms of pretrial

24    release require him to give notifications?

25              MR. WARREN:  They do, but not approval, Your Honor.
```

 1           THE COURT:  Okay.

 2           MR. WARREN:  So that could be a term put in place

 3   to ensure -- we could limit it to -- you know, he can't make

 4   any transactions over a certain amount of money.  It has to

 5   be approved by pretrial services every time.  Whatever it

 6   takes in order to ensure that Mr. Avenatti doesn't have

 7   access to make financial transactions that the government has

 8   alleged constitute violations of federal law and state law.

 9   Mr. Avenatti will be willing to do it, and obviously, I

10   believe that we could work with pretrial services to

11   accomplish that.  We would -- we would respectfully request

12   the Court's consideration of that, Your Honor.

13           THE COURT:  Okay.  I looked at Section 1348 of

14   Title 18 for guidance as to whether I should revoke bail.

15   The government does not press.  The record would not support

16   revoking bond under Section 1348(a); namely, violation of the

17   terms of pretrial release.  There have been a number of

18   transfers documented in excess of 5,000, but it's unclear

19   whether they've been reported.  So I would not base any

20   ruling today on violation of 1348(a).

21           With respect to 1348(b), I do find that there is

22   probable cause that the defendant has committed crimes while

23   on supervised release.  This would include mail fraud with

24   respect to the moving of moneys to avoid his obligations to

25   outstanding judgment debtors.  It would include violation of

1    California Penal Code Section 155 concealing funds from

2    judgment debtors in violation of California Penal Code

3    186.10(a), structuring funds in a manner to continue criminal

4    operations.

5            I turn to the question of whether there are

6    conditions or combination of conditions that can protect the

7    community.  For this particular situation, there's a

8    presumption that the probable cause showing requires that the

9    rebuttal presumption that he should remain in custody.  I

10   don't believe that that presumption has been rebutted here.

11   I believe that there is an ongoing danger that Mr. Avenatti

12   will engage in similar conduct, which I have not found, but

13   could potentially violate the existing terms of supervised

14   release and which could constitute further crimes.  I believe

15   that the danger to the community is real and palpable and

16   required that he be remanded.  Accordingly, I order that he

17   be remanded.

18           I'll also direct that he be transferred forthwith

19   to the Southern District of New York.

20           MR. SAGEL:  On that note, Your Honor, I don't know

21   if the Marshals need it or there is anything you need to put

22   in your order.  Normally, he's remanded to the custody of the

23   United States Marshal.  I know the United States Marshal in

24   New York are working with their office.  We're going to try

25   to help coordinate that.  In case, your order can be United

1    States Marshals, the Federal Bureau of Investigation, or

2    Internal Revenue Service Criminal Investigation to take

3    temporary custody to transport him forthwith to the Southern

4    District of New York.

5              THE COURT:  Fine.  Let me also add, I'm

6    specifically taking into account the factors under 3142(g)

7    with regard to other things, his contacts with the community,

8    and so on, including the crimes here.  Having considered

9    those factors, I continue to find that it is appropriate to

10   remand Mr. Avenatti.

11             Anything further?

12             MR. SAGEL:  Nothing from the government,

13   Your Honor.

14             THE COURT:  Okay.  Thank you.

15             MR. WARREN:  Thank you, Your Honor.

16             MR. ANDRE:  Thank you, Your Honor.

17             (Proceedings concluded at 11:57 a.m.)

18

19

20

21

22

23

24

25

```
1                         CERTIFICATE

2    I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

3    TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

4    THE ABOVE MATTER.

5    FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

6    REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

7    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

8

9    /s/ Miriam V. Baird           01/29/2020

10   MIRIAM V. BAIRD                          DATE
     OFFICIAL REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```