1

```
 1
 2
 3
 4                UNITED STATES DISTRICT COURT
 5               CENTRAL DISTRICT OF CALIFORNIA
 6                     SOUTHERN DIVISION
 7                         - - -
 8      THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING
 9
         UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
10                       Plaintiff,  )
            vs.                       )
11                                    )  SACR-19-00061-JVS
         MICHAEL JOHN AVENATTI,       )
12                       Defendant.   )
         -----------------------------)
13
14
15        REPORTER'S TRANSCRIPT OF PROCEEDINGS
16               Santa Ana, California
17               January 31, 2020
18
19                    SHARON A. SEFFENS, RPR
                      United States Courthouse
20                    411 West 4th Street, Suite 1-1053
                      Santa Ana, CA  92701
21                    (714) 543-0870
22
23
24
25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

2

```
 1    APPEARANCES OF COUNSEL:

 2    For the Plaintiff:

 3    NICOLA T. HANNA
      United States Attorney
 4    BRANDON D. FOX
      Assistant United States Attorney
 5    Chief, Criminal Division
      JULIAN L. ANDRE
 6    Assistant United States Attorney
      Major Frauds Section
 7    1100 United States Courthouse
      312 North Spring Street
 8    Los Angeles, CA  90012
      (213) 894-6683
 9
      BRETT A. SAGEL
10    Assistant United States Attorney
      Ronald Reagan Federal Building
11    411 West Fourth Street, Suite 8000
      Santa Ana, CA  92701
12    (714) 338-3598

13    For the Defendant:

14    H. DEAN STEWARD
      H. DEAN STEWARD LAW OFFICES
15    107 Avenida Miramar, Suite C
      San Clemente, CA  92672
16    (949) 481-4900

17

18

19

20

21

07:55    22

07:55    23

07:55    24

07:55    25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

3

| | | |
|---|---|---|
| 07:55 | 1 | SANTA ANA, CALIFORNIA; FRIDAY, JANUARY 31, 2020; 7:59 A.M. |
| 07:59 | 2 | THE CLERK:  Item No. 1, SACR-19-00061-JVS, United |
| 07:59 | 3 | States of America versus Michael John Avenatti. |
| 07:59 | 4 | Counsel, please state your appearances. |
| 08:00 | 5 | MR. ANDRE:  Good morning, Your Honor.  Julian |
| 08:00 | 6 | Andre and Brett Sagel on behalf of the United States. |
| 08:00 | 7 | THE COURT:  Good morning. |
| 08:00 | 8 | MR. STEWARD:  And, Your Honor, Dean Steward for |
| 08:00 | 9 | Mr. Avenatti.  He is not here.  We have a waiver on file. |
| 08:00 | 10 | THE COURT:  Good morning. |
| 08:00 | 11 | MR. STEWARD:  Good morning. |
| 08:00 | 12 | THE COURT:  This matter is here for a status |
| 08:00 | 13 | conference.  I don't have anything particular in mind.  I |
| 08:00 | 14 | just wanted to get a report in terms of where you are in |
| 08:00 | 15 | preparation -- well, first of all, the status of discovery. |
| 08:00 | 16 | MR. ANDRE:  Yes, Your Honor.  So at this point, |
| 08:00 | 17 | the vast majority of the discovery has been produced to the |
| 08:00 | 18 | defense or is in the process of being prepared to be |
| 08:00 | 19 | produced in the next week or so. |
| 08:00 | 20 | THE COURT:  What's the vast majority mean? |
| 08:00 | 21 | MR. ANDRE:  I'll have to break it down for you. |
| 08:00 | 22 | One thing I would propose if it would be helpful to the |
| 08:00 | 23 | Court is we could file a status report in a week or two |
| 08:00 | 24 | detailing everything that's been produced and the status of |
| 08:00 | 25 | what's remaining, which I think will be better than me |

4

08:00   1    trying to break it all down today.

08:00   2              THE COURT:  That's fine.

08:00   3              MR. ANDRE:  As far as the materials from the

08:01   4    prosecution team, such as documents obtained from third

08:01   5    parties, records from the IRS, witness interview reports,

08:01   6    those have for the most part all been produced.  There is

08:01   7    another production that is being processed right now, but

08:01   8    the vast majority of those materials were produced and were

08:01   9    produced months ago.

08:01   10             From the search warrant materials, we're nearly at

08:01   11   the point where the defense should have either a complete

08:01   12   forensic copy of any devices that were seized, or the

08:01   13   materials for those devices for which he did not obtain

08:01   14   copies, such as the server, where he will have nearly all

08:01   15   the materials from those devices that have been determined

08:01   16   to be within the scope of the warrant and relevant.

08:01   17             And I can focus on the server, which has been the

08:01   18   big priority.  The server had to our understanding

08:01   19   approximately 16 million documents on it.  The Privilege

08:01   20   Review Team -- what they have been doing is they have been

08:01   21   doing a two-step process in which they have been reviewing

08:02   22   the server first for scope using various search protocols,

08:02   23   search terms, to determine what falls within the scope of

08:02   24   the warrant and then from there reviewing those materials

08:02   25   for privilege.  They have largely completed the scope

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:02   1   review.  They are processing right now to produce to the

08:02   2   defense those materials that have been determined to be

08:02   3   within the scope of the warrant on the server.

08:02   4          I believe after that production all that will be

08:02   5   left from the server that needs to go through that initial

08:02   6   kind of scope review is about 50,000 documents, which should

08:02   7   not take very long at all, particularly when you consider

08:02   8   that we started with 16 million.

08:02   9          So they are preparing that production now.  That

08:02   10  production will go to the defense as soon as it's ready.

08:02   11  It's going to be Bates labeled.  It'll be in a format that

08:02   12  can be loaded into a database and will be completely

08:02   13  searchable.  We expect to have that in the next week or two.

08:03   14  And I don't know the exact number of documents.  I think

08:03   15  it's somewhere in the range of about a hundred thousand.  So

08:03   16  that should be going out.

08:03   17         Then what will happen from there is they'll

08:03   18  continue the privilege review of those materials.  Once

08:03   19  they've been reviewed for privilege, they'll be released to

08:03   20  the prosecution team, and then they'll actually end up being

08:03   21  reproduced to the defense so the defense knows what we have.

08:03   22         The second category of materials which he didn't

08:03   23  have access to which were subject to the Motion to Compel

08:03   24  that was litigated over the summer were devices from the

08:03   25  office manager of EA Employee 1.  There has been extensive

08:03    1    progress made there.  All of the phones, tablets, were all

08:03    2    reviewed and have already been produced to the defense.  I

08:03    3    think it came up during the last status conference.  The

08:03    4    reports of the cell phones, which would have text messages

08:04    5    between the defendant and the officer manager, were produced

08:04    6    at the end of November.

08:04    7         Our understanding is there's only about maybe

08:04    8    8,000 documents left to be reviewed for scope on the other

08:04    9    devices, such as a computer.  One thing I'll note, one thing

08:04   10    that was produced which we found to be probably the most

08:04   11    important evidence from the office manager's computer were

08:04   12    the QuickBook files, the firm accounting records.  Those

08:04   13    were produced to the defense months ago.

08:04   14         All the last category of materials that he doesn't

08:04   15    have access to -- there was a search warrant at another law

08:04   16    firm -- that review is still in process.  That firm,

08:04   17    however, has made a production to the government of

08:04   18    materials relevant to the charges which has already been

08:04   19    produced.  We think whatever is found on those devices is

08:04   20    going to be largely duplicative of that.  Given what we

08:05   21    understand about the firm's involvement as to the charges,

08:05   22    which largely relates to the bankruptcy fraud charges to

08:05   23    some extent and two of the victims, that any materials on

08:05   24    the device is going to be minimal.

08:05   25         All the other devices the defense has a complete

08:05   1   forensic copy of.  They have had a complete forensic copy of

08:05   2   all the devices except for two since June.  There are two

08:05   3   devices in which they recently obtained forensic copies.

08:05   4   The first is during the arrest of the defendant in New York

08:05   5   in March law enforcement agents in New York seized I want to

08:05   6   say it's three USB drives, which were produced to the

08:05   7   defense in June, as well as his cell phone and his laptop.

08:05   8          Our understanding is that law enforcement in New

08:05   9   York were able to finally access the laptop in November.

08:05   10  They immediately produced a forensic copy to the defense in

08:05   11  New York.  We advised Mr. Steward of this via e-mail and

08:06   12  offered to provide him his own forensic copy.  I believe he

08:06   13  would have also gotten a copy since he's counsel in the

08:06   14  fraud case pending in New York, but we offered to give him

08:06   15  another copy.  He has not asked us for one, so we assume he

08:06   16  already has it.

08:06   17         There was also an iMAC that we seized from

08:06   18  Mr. Avenatti's residence here in Los Angeles in March.  We

08:06   19  were also able to decrypt that device in December.  We

08:06   20  advised Mr. Steward of that.  I understand that the

08:06   21  Privilege Review Team provided him a complete forensic copy

08:06   22  of that device in January.

08:06   23         So where we are today is that once he receives

08:06   24  this next production from the Privilege Review Team, as well

08:06   25  as the production from us, he should have almost everything

08:06   1   from the search warrant evidence that is within scope of the

08:06   2   warrants or a complete copy of the device itself for him to

08:07   3   conduct his own review.

08:07   4           There will be further materials coming from us

08:07   5   once we identify -- or once the Privilege Review Team has

08:07   6   completed its review and they release the materials to us,

08:07   7   they will be reproduced.  But after hopefully this next

08:07   8   production, most of what he should be getting from us is

08:07   9   going to be duplicative of the materials he has already had

08:07  10   access to.

08:07  11           The other thing I'll flag for the Court is

08:07  12   obviously after the Court ruled on the Motion to Compel,

08:07  13   Mr. Steward did make arrangements to meet with the Privilege

08:07  14   Review Team.  As we had told the Court in connection with

08:07  15   that motion, he would be free to work with our Privilege

08:07  16   Review Team to access any of the devices at IRS CI's

08:07  17   offices.

08:07  18           They don't give us much information about that

08:07  19   because they're not supposed to.  So really all we know is

08:07  20   kind the volume of material that's been produced and how

08:07  21   many times they have been there.  My understanding is they

08:07  22   went twice.  I don't believe they have gone to review any

08:08  23   materials there since the last status conference in early

08:08  24   December.  I believe they have requested certain materials

08:08  25   be produced directly from the Privilege Review Team and that

08:08  1    those materials were produced prior to the last status

08:08  2    conference.

08:08  3          I know there was also a recent production of about

08:08  4    5,000 documents that were determined to be privileged and

08:08  5    have not been released to us but were provided to the

08:08  6    defense.  So that's where we are.  We think we have made

08:08  7    extensive progress and that at this point he has the vast

08:08  8    majority of the materials.

08:08  9          THE COURT:  When will production be complete?

08:08  10          MR. ANDRE:  That frankly depends on how you define

08:08  11   "complete."  I think that --

08:08  12          THE COURT:  Complete with the exception of the

08:08  13   inevitable additional documents that seem to come out of the

08:08  14   woodwork.

08:08  15          MR. ANDRE:  Understood, Your Honor.  I think in

08:08  16   terms of providing the defense with everything that has been

08:09  17   determined to be within the scope of the warrants or a copy

08:09  18   of the devices that that review is nearly complete.  It's

08:09  19   hard to -- there's a couple of variables there.  One is just

08:09  20   the amount of agents reviewing the material sometimes

08:09  21   fluctuates.  Again, I think at this point there is not a lot

08:09  22   of material left to be reviewed for scope, so I would

08:09  23   anticipate within the month, and then --

08:09  24          THE COURT:  But this is the last day of the month.

08:09  25          MR. ANDRE:  The next month, Your Honor.  It should

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:09  1   be within February that the review will be complete.  The

08:09  2   question will be how long it will take the process of

08:09  3   getting it to him.  Our hope would be that it would be done

08:09  4   next month.

08:09  5        As far as --

08:09  6        THE COURT:  Will production be complete next

08:09  7   month?

08:09  8        MR. ANDRE:  That is our hope.  I think it is a

08:09  9   realistic goal.

08:10  10       MR. ANDRE:  Your Honor, may I have one moment?

08:10  11       (Counsel conferring)

08:10  12       MR. ANDRE:  Your Honor, what AUSA Sagel was

08:10  13  pointing out and what I was trying to allude to is that once

08:10  14  the documents have identified as within the scope of the

08:10  15  warrant and to be produced, there is a delay in terms of our

08:10  16  document review platform is hosted out of Washington, D.C.

08:10  17  So they then need to actually prepare the materials to be

08:10  18  produced, load them onto a hard drive, get it out here, QC

08:10  19  the material, and we need to get it to Mr. Steward.  So

08:10  20  there is always probably a couple of weeks lag between when

08:10  21  the materials have been reviewed and when they are produced,

08:10  22  but we still are hopeful that that will be next month.

08:10  23       Again, I will reiterate we do believe at this

08:10  24  point he does have the vast majority of the materials that

08:10  25  are relevant.

08:10  1          The other issue I would mention as far as complete

08:10  2     is obviously our priority has been to make sure that he has

08:11  3     anything on -- that either he has a complete copy of the

08:11  4     devices so he can conduct his own review or he has whatever

08:11  5     has been determined to be relevant on those devices to the

08:11  6     extent he didn't have access to the complete copy.

08:11  7          Beyond next month we do anticipate, for example --

08:11  8     you know, as to the MacBook computer that was seized during

08:11  9     his arrest, our understanding is the defense has had a

08:11  10    forensic copy of that from SDNY since November.  We obtained

08:11  11    a separate warrant for that about a week and a half ago.

08:11  12    Our review of that material will take place over the course

08:11  13    of the next few months.  So there will be a production of

08:11  14    materials to him from that device that was since identified

08:11  15    and provided to the prosecution team, but that will all be

08:11  16    duplicative of materials that he already has.

08:11  17          THE COURT:  Why are you going through these

08:11  18    devices again if the AUSAs in the Southern District have

08:12  19    gone through it and made the production?

08:12  20          MR. ANDRE:  Two reasons, Your Honor.  One, they

08:12  21    are a separate prosecution team.  But the most important

08:12  22    thing is whatever warrant that the AUSAs in SDNY have covers

08:12  23    materials only in their case.  They don't have authority to

08:12  24    search, for example, information relating to our victims or

08:12  25    his taxes.

08:12   1              THE COURT:  Okay.

08:12   2              MR. ANDRE:  So that's why there is a difference

08:12   3    there.  Again, what we propose is we can submit a status

08:12   4    report in two weeks detailing where we are.

08:12   5              THE COURT:  Would you do that, please?

08:12   6              MR. ANDRE:  We will.

08:12   7              THE COURT:  Mr. Steward, any thoughts or comments?

08:12   8              MR. STEWARD:  All I can tell the Court is on

08:12   9    Monday I received 41,000 pages from what I have been calling

08:12   10   the Filter Team in Los Angeles.  It appears to involve law

08:12   11   firm correspondence and documentation.  We're having format

08:13   12   problems.  I'm sure we can solve those problems.  But I am

08:13   13   still kind of at a loss for -- am I going to get a big wave,

08:13   14   or is this going to be a small splash, or how much more is

08:13   15   coming?  Obviously I have got more than a million pages I

08:13   16   think at this point.

08:13   17             If you total everything up together, the Southern

08:13   18   District of New York case that I'm involved in is commonly

08:13   19   called the Stormy Daniels case, and as to that one, the

08:13   20   documentation and the discovery is manageable.  It's a

08:13   21   relatively simple case, and frankly I'm not concerned about

08:13   22   that one, although I have to defend it.  Our trial date

08:13   23   is --

08:13   24             THE COURT:  You're primary counsel in that case?

08:13   25             MR. STEWARD:  I am indeed, Your Honor, so I have

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:13  1  to defend that one, but my concern is here, this case.  Just
08:13  2  the sheer volume of material, complexity, length, and scope
08:13  3  of the Indictment, compared to the two in the Southern
08:14  4  District of New York, this is the bigger one by far, and I
08:14  5  remain for the most part by myself on this.
08:14  6        However, I am doing the best I can.  I'll continue
08:14  7  to do that.  I've got a couple of months, and all I can do
08:14  8  is if we are getting close to trial and I'm not where I
08:14  9  think I should be preparation-wise, I'll notify the Court.
08:14  10        THE COURT:  Well, sir, this is the type of case
08:14  11  where if you need to augment your resources you need to do
08:14  12  that.
08:14  13        MR. STEWARD:  Well, I can't to do that, Your
08:14  14  Honor.  I'm unable to do that.  This is going to be a solo
08:14  15  shot for me.  I don't have the resources to do that, and I'm
08:14  16  not in a position to apply for court funding for that.
08:14  17        THE COURT:  Understood.
08:14  18        MR. STEWARD:  I'm stuck, so I'll do the best I
08:14  19  can.
08:14  20        MR. STEWARD:  That's all I have.  Thank you.
08:14  21        THE COURT:  Well, I've got to say that's
08:14  22  troubling.
08:14  23        MR. STEWARD:  It troubles me, too, Your Honor.  I
08:15  24  don't know what the solution is, though.
08:15  25        THE COURT:  Would a discussion with your client to

08:15  1    provide you more resources so that you can augment your

08:15  2    forces --

08:15  3            MR. STEWARD:  That's not possible, not the

08:15  4    discussion but the actual augmentation is not possible, and

08:15  5    I don't have access to my client right now, Your Honor.

08:15  6            THE COURT:  Understood.

08:15  7            From the press, I gather that the Nike trial began

08:15  8    this week.

08:15  9            MR. STEWARD:  It's my understanding, Your Honor,

08:15  10   they started Monday.  Opening statements were Wednesday and

08:15  11   they are into witnesses now.  The prediction is two to

08:15  12   two-and-a-half weeks of trial.  I expect I'll have my client

08:15  13   back at some point after that.  I would hope and pray that

08:15  14   he comes back the same way he went back there, but I've got

08:15  15   a feeling that's not going to happen.

08:15  16           THE COURT:  Well, there were exigent

08:15  17   circumstances --

08:15  18           MR. STEWARD:  Understood.

08:15  19           THE COURT:  -- to ensure that he got there, and I

08:15  20   made clear to the marshals that they were to engage whatever

08:16  21   resources -- and I mean whatever resources -- to ensure that

08:16  22   he was there on Friday.

08:16  23           MR. STEWARD:  And they complied.

08:16  24           THE COURT:  They complied.

08:16  25           As to the Stormy Daniels case, what's the start

08:16    1    date for that?

08:16    2              MR. STEWARD:  I want to say April 26 if that's a

08:16    3    Monday.  Your Honor, I should actually have my calendar here

08:16    4    somewhere.

08:16    5              THE COURT:  Yes, it is.  It's the last Monday in

08:16    6    April.

08:16    7              MR. STEWARD:  The 21st.  I believe that's correct,

08:16    8    Your Honor, the 21st of April.

08:16    9              THE COURT:  Okay.  That's a Tuesday.

08:16   10              MR. STEWARD:  It's a short trial.  That week I'm

08:16   11    sure we can conclude it.  There are about a dozen witnesses

08:16   12    of which two are relevant. again, I am not particularly

08:16   13    concerned about that.  Mr. Warren, who was with me on this

08:16   14    case for a short period of time, is also with me on that

08:17   15    case, so I do have his firm as a resource.  I have him as

08:17   16    co-counsel.  So, again, it's not a real concern of mine.

08:17   17              THE COURT:  Well, he appeared, but I looked at the

08:17   18    docket entries for this week and apparently he has withdrawn

08:17   19    from this case.

08:17   20              MR. STEWARD:  Yes, Your Honor.  Frankly, the

08:17   21    government raised a conflict issue.  We decided rather than

08:17   22    litigate that and spend time on it, he would just withdraw,

08:17   23    which is what he did.

08:17   24              THE COURT:  Okay.  What's your anticipation for a

08:17   25    law and motions practice?

16

08:17  1          MR. STEWARD:  I anticipate some motions in this
08:17  2   case.  There are some things that were brought up in front
08:17  3   of Judge Gardephe in the Nike case that I am considering
08:17  4   revisiting in this court.  There are also a couple of other
08:17  5   unique things.  As the Court knows, there is a lot of search
08:17  6   warrants in the case.  I'm still reviewing those and trying
08:17  7   to decide which course of action to take as to the various
08:18  8   search warrants.
08:18  9          THE COURT:  Any other matters anyone wants to take
08:18  10  up?
08:18  11         MR. ANDRE:  Yes, Your Honor, there were a couple
08:18  12  quick things.  First of all, we understand that Mr. Steward
08:18  13  is doing the best he can.  I do, however, want to note for
08:18  14  the record -- the Nike trial is going on right now in
08:18  15  New York.  Mr. Avenatti is to my understanding joined at
08:18  16  counsel table by seven separate attorneys in that case, from
08:18  17  two solo practitioners as well as two different law firms.
08:18  18         We understand that there are issues with respect
08:18  19  to Mr. Steward's resources.  I think our concern is that
08:18  20  that is --
08:18  21         THE COURT:  An artificial constraint?
08:18  22         MR. ANDRE:  An artificial constraint or a
08:18  23  situation that has been set up by the defendant.  He is I
08:18  24  think free to decide if he wants to pour his resources into
08:18  25  another matter.  He has a right to do that, but I don't

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:18   1   think he then should be allowed to turn around and try to

08:19   2   delay this case when he has made that decision on his own.

08:19   3          As Mr. Steward noted, this is the more complex

08:19   4   case.  This is the more lengthy Indictment.  If the

08:19   5   defendant does not feel that he wants to treat it that way,

08:19   6   I feel that's his choice and should not delay matters.  I

08:19   7   just wanted to flag that issue for the Court.

08:19   8          The other thing I note is that Your Honor

08:19   9   mentioned this issue I want to say in the summer or early

08:19   10  fall when we had -- I want to say it was two or three status

08:19   11  conferences ago, and it's still an issue today.

08:19   12         A couple of other issues just very briefly, as far

08:19   13  as motions --

08:19   14         THE COURT:  You are referring to the resource

08:19   15  issue?

08:19   16         MR. ANDRE:  The resource issue.

08:19   17         As far as motion practice, we do intend to file

08:19   18  motions.  The current motion hearing date was advanced a

08:19   19  week, so I believe -- I forget the exact date -- it's now in

08:19   20  mid to early April, but I don't believe the Court advanced

08:19   21  the filing deadline for motions.  So by our calculation,

08:20   22  motions in the case at least preliminarily are due on

08:20   23  March 9th.  We intend to be filing motions at that time.

08:20   24         We are going to be reaching out to Mr. Steward

08:20   25  over the course of the next week or two to discuss various

08:20   1   issues to see what we can agree on on what needs to be

08:20   2   litigated, including evidence to be inextricably intertwined

08:20   3   or evidence to be admitted under 404(b).  So we intend to

08:20   4   file motions on March 9th.

08:20   5          The one other issue I wanted to flag is the Court

08:20   6   -- at the last status conference, we addressed the

08:20   7   Protective Order.  We filed a Second Amended Protective

08:20   8   Order, which required counsel for the defense in other

08:20   9   matters to certify they comply with the Protective Order and

08:20   10  to basically provide Mr. Steward with that acknowledgment.

08:20   11  We just wanted to get confirmation that Mr. Steward has in

08:20   12  fact obtained that acknowledgment from other counsel,

08:20   13  including from Mr. Warren where we do think there was a

08:21   14  conflict issue, but we're obviously aware that Mr. Warren

08:21   15  continues to represent him in other matters.  So we're

08:21   16  hoping that Mr. Steward could briefly address that point.

08:21   17         Beyond that, I don't think we have anything else

08:21   18  that we would need to raise to the Court at this time.

08:21   19         THE COURT:  Okay.  Mr. Steward, do you want to

08:21   20  address the certification issue?

08:21   21         MR. STEWARD:  Yes, Your Honor.  I'm the only one

08:21   22  that has seen the discovery in this case, no one else.  I'm

08:21   23  happy to sign their form and send it to them, but that's it.

08:21   24         THE COURT:  Well, I mean, you're counsel of

08:21   25  record.  You're bound by that.  I don't need a further

08:21  1   certification.

08:21  2         MR. ANDRE:  Your Honor, I'd like to state -- that

08:21  3   is we know for a fact inaccurate.  Mr. Warren in addition to

08:21  4   representing Mr. Avenatti in the Stormy Daniels case is

08:21  5   counsel for Mr. Avenatti in the State Bar proceedings.  We

08:21  6   both attended various of those proceedings.  We know for a

08:21  7   fact that discovery that Mr. Warren and Mr. Steward obtained

08:22  8   directly from our Privilege Review Team pursuant to their

08:22  9   requests were used in those State Bar proceedings.  That is

08:22  10  discovery from this case.

08:22  11        Mr. Warren may not have the 175,000 Bates labeled

08:22  12  discovery that came from the prosecution team, but he has

08:22  13  received and so has other counsel in the State Bar

08:22  14  proceeding discovery in this case from our Privilege Review

08:22  15  Team.  That is a fact.  Your Honor, that's actually why we

08:22  16  raised this issue at the last status conference.  It was

08:22  17  because we were aware they had obtained information from the

08:22  18  Privilege Review Team to use in that State Bar proceeding.

08:22  19        THE COURT:  Mr. Steward?

08:22  20        MR. STEWARD:  I was unaware of that, Your Honor.

08:22  21  I have nothing to do with the State Bar proceedings at all.

08:22  22  If that happened, I'm guessing it would have happened

08:23  23  through my client.  In other words, he would see this

08:23  24  material, and that's how it would end up in Mr. Warren's

08:23  25  hands.  However, obviously I can easily have Mr. Warren sign

08:23   1   a Protective Order.  I think he has an associate, and we'll

08:23   2   have him do it as well and anybody else you want.

08:23   3           THE COURT:  Would you do that, please?

08:23   4           MR. STEWARD:  I will do that today.

08:23   5           THE COURT:  And would you have your client also

08:23   6   sign an acknowledgment of this Protective Order?

08:23   7           MR. STEWARD:  I will as soon as I can, Your Honor,

08:23   8   on that one.

08:23   9           THE COURT:  Okay.

08:23  10           MR. ANDRE:  Your Honor, as for Mr. Avenatti, he

08:23  11   did sign the Second Amended Protective Order, so I don't

08:23  12   think a second acknowledgment from him is necessary.

08:23  13           THE COURT:  Okay.

08:23  14           MR. ANDRE:  The one thing I would actually flag --

08:23  15   I don't know what Mr. Steward's position is on this given

08:23  16   that he is the counsel in the Stormy Daniels case.  He is

08:23  17   located here.  I believe we have another status conference

08:23  18   set in this matter for early March, which is about a month

08:23  19   and a half, two months, before the Stormy Daniels case.

08:23  20   From our perspective, we believe it would be appropriate for

08:23  21   the Court to order that Mr. Avenatti be returned to this

08:23  22   district immediately after the Nike trial and as soon as

08:24  23   practical after the Nike trial.

08:24  24           We think that will allow him to be here for the

08:24  25   next status conference, which we think is important, and I

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:24  1   think it will also make it much easier for Mr. Steward, who
08:24  2   is counsel of record on the two remaining cases, to meet
08:24  3   with his client.  I don't know if Mr. Steward has any
08:24  4   objection to that.
08:24  5       MR. STEWARD:  I think it's a good idea.  Sadly, I
08:24  6   know what Mr. Avenatti is going to go through getting here
08:24  7   and how long it's going to take him having dealt with the
08:24  8   Bureau of Prisons and various agencies for so many years,
08:24  9   but I agree that I need him here as soon as possible.
08:24  10      MR. ANDRE:  I mean, we're obviously willing to do
08:24  11  whatever we can to assist that process just as we were
08:24  12  willing to do so to get him there, and hopefully the
08:24  13  marshals will try to expedite the process.  If the Court is
08:24  14  willing to suggest that they do so, we think that would be
08:24  15  appropriate.
08:24  16      THE COURT:  Well, I'm going to order that the
08:24  17  marshals transport him back to the Central District as soon
08:25  18  as there is no further requirement for him to be in New York
08:25  19  for the Nike case to assist his counsel.  I appreciate the
08:25  20  impediments you currently have to meeting with and dealing
08:25  21  with your client.  So if there is any difficulty in that,
08:25  22  come back to the Court on an ex parte basis.
08:25  23      MR. STEWARD:  I will, Your Honor.
08:25  24      THE COURT:  Okay.  For the next status conference,
08:25  25  the week of March the 9th?

08:25   1                MR. ANDRE:  Your Honor, I believe it was.  If I
08:25   2   could I have a moment?
08:25   3                MR.SAGEL:  And I apologize my calendar is at my
08:25   4   house unfortunately, so I'm relying on my co-counsel.
08:25   5                MR. ANDRE:  Your Honor, our next status conference
08:25   6   according to my calender was March 2nd at 9:00 a.m.
08:25   7                THE COURT:  That's fine.  Is that convenient to
08:25   8   you still, Mr. Steward?
08:25   9                MR. STEWARD:  Yes, Your Honor.
08:25   10               THE COURT:  Okay, March 2 then.
08:25   11               MR. ANDRE:  Thank you very much, Your Honor.
08:25   12               THE COURT:  Okay.  Anything else?
08:25   13               MR. ANDRE:  Nothing from the government, Your
08:25   14  Honor.
08:25   15               MR. STEWARD:  No, Your Honor.  Thank you.
08:25   16               THE COURT:  Okay.  Thank you.
08:25   17               (Whereupon, the proceedings were concluded.)
08:25   18                        *     *     *
08:25   19
08:25   20
08:25   21
08:25   22
08:25   23
08:25   24
08:25   25

```
08:25   1
08:25   2
08:25   3
08:25   4
08:25   5                      CERTIFICATE
08:25   6
08:25   7        I hereby certify that pursuant to Section 753,
08:25   8  Title 28, United States Code, the foregoing is a true and
08:25   9  correct transcript of the stenographically reported
08:25  10  proceedings held in the above-entitled matter and that the
08:25  11  transcript page format is in conformance with the
08:25  12  regulations of the Judicial Conference of the United States.
08:25  13
08:25  14  Date:  February 28, 2020
08:25  15
08:25  16
08:25  17                        /s/   Sharon A. Seffens  2/28/20
08:25                            _____
08:25  18                        SHARON A. SEFFENS, U.S. COURT REPORTER
08:25  19
08:25  20
       21
       22
       23
       24
       25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER