H. Dean Steward  SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
949-481-4900
Fax: (949) 496-6753

Attorney for Defendant
MICHAEL J. AVENATTI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MICHAEL J. AVENATTI<br><br>　　Defendant. | Case No. SA-CR-19-61-JVS<br><br>EX PARTE APPLICATION FOR RE-CONSIDERATION OF BAIL PENDING TRIAL; DECLARATION OF COUNSEL; [Proposed] ORDER |

　　Comes now counsel and applies ex parte for an order re-admitting defendant to bail, on more restrictive conditions. The changed circumstances are detailed below.

Dated: 3-18-20　　　　/s./ H. Dean Steward
　　　　　　　　　　　H. Dean Steward
　　　　　　　　　　　Counsel for Defendant
　　　　　　　　　　　Michael J. Avenatti

- 1 -

TABLE OF CONTENTS

Table of Authorities                                          3

I. Introduction                                               2

II. Factual Basis                                             2

III. Conditions of Confinement and Spread of Coronavirus      3

IV. Specific Conditions at the MCC in New York City           4

V. The Bail Reform Act Requires Michael Avenatti's Release    7

VI. Conditions of Release Are Available

    That Allow Mr. Avenatti To Be Treated Humanly

    While Also Ameliorating Any Danger to the

    Community                                         10

VII. Calls for Sensible Release

VIII. Conclusion                                             11

Proof of Service                                             12

# TABLE OF AUTHORITIES

Cases

*Davis v. Ayala* 135 S.Ct. 2187 (2015)     11

*Salerno v. U.S.* 481 U.S. 739 (1987)     10

*Stack v. Boyd* 341 U.S. 1 (1951)     10

*U.S. v. Montalvo-Murillo* 495 U.S. 711 (1990)     10

*U.S. v. Adams* MJ-19- 87-MK (D. Oregon 7-10-19)
     WL 3037042     11

*U.S. v. D.W.* 198 F.Supp. 3d 18 (E.D.N.Y. 2016)     11

*U.S. v. Cordero-Caraballo* 185 F.Supp. 2d 143 (D.P.R. 2002)     11

*U.S. v. Francis* 129 F.Supp. 2d 612 (S.D. N.Y. 2001)     11

*U.S. v. Gonzales-Caudillo* 806 F2d 334 (2nd Cir. 1986)     10

*U.S. v. Johnston* CR-17-46-RMM (D.D.D. 9-27-17)
     WL 4277140     11

*U.S. v. Mateo* 299 F.Supp. 2d 201 (S.D.N.Y. 2004)     11

*U.S. v. Raihan* CR-20-68-BMC (Southern District of N.Y., 3-12-20)     9

*U.S. v. Scarpa* 815 F. Supp 88 (S.D.N.Y. 1993)     11

*U.S. v. Shakur* 817 F2d 189 (2nd Cir. 1987)     10

Statutes

18 USC §3142(i)     4,9

# I. Introduction

Defendant moves the Court for an order re-admitting him to bail. Michael J. Avenatti, who is a pretrial defendant currently detained at the MCC New York City is within the group of people the Centers for Disease Control and Prevention ("CDC") has categorized as most-at-risk for contracting COVID-19, a dangerous illness spreading rapidly across the world, through New York State, and within New York City. He is a detained prisoner, and therefore far more susceptible to the virus. He has recently suffered from pneumonia. The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The health risk to Mr. Avenatti is due to of his cell mate at the MCC having been removed from the cell for a severe cough and fever, and given the conditions at the MCC as described in detail below, necessitates his temporary release on bail until this pandemic has ended. Defendant would live in California under home detention with an ankle monitor, with other conditions

# II. Factual Background

## *Changed Circumstances: COVID-19 Outbreak*

As of March 12, 2020, the new strain of coronavirus which causes COVID-19,

has infected over 132,300 people, leading to at least 4,954 deaths worldwide.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] Governor Newsome declared a State of Emergency on March 4, 2020.[3] As of March 12, 2020, there are 325 positive cases in New York State[4]; there are 95 positive cases in New York City, where defendant is currently housed.[5]

### III. Conditions of Confinement and Spread of Coronavirus

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[6] Inmates cycle in and out of BOP pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in federal pretrial detention centers.[7] Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of

---

[1] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 12, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).
[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[3] *Office of the Governor-* https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/
[4] *Novel Coronavirus (COVID-19),* New York State Department of Health (March 12, 2020) *at* https://on.ny.gov/2vfFQvy (updating regularly).
[5] *Coronavirus*, New York City Health (March 12, 2020) *at* https://on.nyc.gov/39ME7wU (updating regularly).
[6] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.
[7] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of

COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[8] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[9] In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[10] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[11] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[12]

---

Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[8] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.
[9] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.
[10] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.
[11] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

- 6 -

## IV. Specific Conditions at the New York MCC

MCC New York has proven—recently and repeatedly—that it is unable to protect the health and safety of defendants in their custody. The MCC is a massive pretrial detention facility: the MCC houses approximately 700 people. The majority of the people detained are housed in small two-man cells with a shared toilet and sink, and eat meals and have recreation in groups of 70 or more. Other units are open dormitories that house 70 or more inmates without the ability to separate. Mr. Avenatti is currently held in a 26-man dorm. The medical care at the MCC has repeatedly failed to adequately address even routine medical conditions such as diabetes, pregnancy, and anemia.[13] In times of crisis, the medical care has halted entirely.

MCC New York has demonstrated a clear inability to appropriately care for defendants just 2 weeks ago. For eight days, every inmate endured a full lockdown, without access to family members or attorneys, while law enforcement searched for a loaded gun brought into the facility by a correctional officer.[14] Federal Defenders of New York clients reported to attorneys that mice and water bugs ran through the units as guards unblocked holes in walls and vents that inmates had stuffed with clothing to

---

[12] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

[13] *E.g., National Association of Women Judges (NAWJ) Women in Prison Committee (WIP) Second Visit to BOP's Metropolitan Detention Center (MDC), Brooklyn, New York, June 3, 2016*, at https://bit.ly/39JRhdW.

- 7 -

prevent pests. Mr. Avenatti's cell contained 3 rats. Inmates on one unit were forced to share one toilet among twenty-six people, and prevented from washing their clothing: prime conditions for the spread, rather than containment, of infectious disease. On other units, toilets overflowed in two-man cells, spreading raw sewage. Inmates with serious medical conditions, including AIDS and anemia, were denied medications or medical care. Female inmates were denied feminine hygiene supplies. No clean drinking water was provided; inmates were forced to drink from their bathroom sinks, from which brown water often ran.

To date, the MCC has not met even the most basic recommendations of the CDC for preventing the spread of the coronavirus. MCC has no screening mechanism in place for staff or visitors, other than self-reporting. The MCC lacks even a basic sign advising people who have traveled to the highest-risk countries not to enter. Staff are not wearing face masks or gloves. As of March 13, the facility did not have hand sanitizer available.[15] The MCC has no soap, hot water, or paper towels in the visitors' bathroom. Only those inmates who have money for commissary will be able to purchase antibacterial soap. The facility has no testing for COVID-19 available, and does not know when, if ever, it will have tests. There is no medical ward or facility in the institution.

---

[14] *See* Stephen Rex Brown, *Strip Searches, Frozen Bologna Sandwiches and Wrecked Cells: MCC Inmates Detail Lockdown Due to Smuggled Gun*, N.Y. Daily News, Mar. 6, 2020, *at* https://bit.ly/2xqbgjw.
[15] On March 12, 2020, the Warden of the MCC advised that they are seeking to order hand sanitizer, and that the BOP has relaxed its strictures on hand sanitizer during this period. The Warden had no information as to when hand sanitizer might arrive.

- 8 -

As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into the MCC, and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions. On March 12, 2020, Magistrate Judge Orenstein in New York denied a remand application, holding that increasing the population of the MDC could present a "danger to the community"—the staff and inmates inside the jail—by potentially bringing the virus into the facility. U.S. *v. Raihan*, 20-CR-68 (BMC) (Mar. 12, 2020).

The MCC has only the most minimal provisions for remote access should a quarantine be necessary: The MCC has one video-conference setup available for all 700 inmates that has not yet been tested to see if it connects with the courthouse or Probation.

### V. The Bail Reform Act Requires Michael Avenatti's Release

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The circumstances that existed when Mr. Avenatti was ordered detained have now changed. There is a pandemic that poses a direct risk to Mr. Avenatti that is far greater if he continues to be detained during this public health crisis.

Mr. Avenatti is vulnerable because his cell mate was removed from the cell due to flu-like symptoms, and he is part of the general population incarcerated under unsanitary and disease-prone conditions. He also had pneumonia six months ago.

As an initial matter, the Bail Reform Act requires that a court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *U.S. v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225 at 7, as reprinted in 1984 U.S.C.CA.N. 3182, 3189); *see U.S. v. Salerno*, 481 U.S. 739, 755 (1987) (suggesting that "detention prior to trial or without trial is the carefully limited exception" to liberty before trial). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *U.S. v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See U.S. v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), *cert. dismissed sub nom.*, *Melendez-Carrion v. U.S.*, 479 U.S. 978 (1986).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein in New York held, "We do

- 10 -

not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *U.S. v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"). *See also U.S. v. Adams*, No. 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with violation of the Mann Act and possession of child pornography and suffering from diabetes, heart conditions and open sores released on home detention because of his medical conditions); *U.S. v. Johnston*, No. 17-00046 (RMM) 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of colon surgery released to custody of his wife for 21 days); *U.S. v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (badly wounded defendant released to custody of his relatives).

This Court should consider the "total harm and benefits to prisoner and society" that continued pretrial imprisonment Mr. Avenatti will yield, relative to the heightened health risks posed to him during this rapidly encroaching pandemic. *See U.S. v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *U.S. v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such

- 11 -

experiences reasonably foreseeable in the ordinary case"); *U.S. v. Francis*, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention).

**VI. Conditions of Release Are Available That Allow Mr. Avenatti To Be Treated Humanely
While Also Ameliorating Any Danger to The Community**

Mr. Avenatti's conditions of release were:

1. $300,000 personal surety bond

2. Two sureties to co-sign

3. Some travel restrictions

4. Pre-trial Services supervision

5. Surrender travel documents

6. No contact with relevant parties

The defense now proposes release to home detention to a residence approved by Pre-Trial Services with monitoring, no bank accounts or access to funds of any kind without pre-approval of Pre-Trial Services and all transactions over $1,000 to be approved in advance by Pre-Trial Services.

From Mr. Avenatti's perspective, his life—not only his liberty—is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case. He is a first time, non-violent offender who has never been found to be a flight risk.

- 12 -

Critically, during this temporary release, Mr. Avenatti will not be left to his own devices, but will be supported and monitored by Pretrial Services. Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent crime while on release.[16] Mr. Avenatti will be fully occupied preparing for not one, but two federal jury trials upcoming.

### VII. Calls for Sensible Release

Recently, in our southern California community, the Los Angeles County Sheriff has released many low risk prisoners to lessen the chances of a covid 19 epidemic in the jail system. Echoing and endorsing this action was the *Los Angeles Times* today. In an editorial, they wrote: "Thankfully, a handful of county officials in the U.S. also see the wisdom of lowering the danger in jails and prisons by quickly reducing the number of inmates…Virtually no defendant should be admitted to jail during this emergency who does not pose a risk to public safety." Editorial Board, *Inmates, Coronavirus and Us,* Los Angeles Times, March 18, 2020 p. A-12.

V

### VIII. Conclusion

Mr. Avenatti is among the vulnerable population (exposed potentially to the

---

[16] Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary* (September 2018) *at* https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.

virus already, in custody, with prior recent lung issues) at heightened risk of getting very sick from this illness. For all of the above reasons, Mr. Avenatti should be granted re-admittance to bail.

Dated: 3-18-20  /s. H. Dean Steward

H. Dean Steward

Counsel for Defendant

Michael J. Avenatti

DECLARATION OF COUNSEL

I, H. Dean Steward, declare:

1. I am retained counsel for defendant Michael J. Avenatti. I make this declaration in support of the attached ex part application for re-admittance to bail.

2. On Friday, March 13, 2020, I spent 5 hours with my client at the MCC in New York City. The conditions I have set out above were true that day, and I'm confident that little has changed.

3. My client informed me at that time that his cellmate had been recently removed from his unit with a severe cough and fever. On March 18, 2020, my client informed me that a second person had been removed from his 26-person unit with covid 19 symptoms.

4. In addition, since his jailing at the MCC in New York City, he was been held in isolation for 30 days, and endured the following, according to defense attorney Danya Perry:

- Mr. Avenatti languished in solitary confinement in a filthy, windowless, unventilated 10 x 8 cage for 23 or 24 hours a day for the first 30 days. His meals were provided through a slot. To the extent he was allowed out of his cell for "exercise," he was episodically and unpredictably placed in an adjourning cell of similar dimensions with two rusty pieces of equipment. Since he arrived at the MCC, he did not, and has not, felt fresh air or seen

- the outdoors or even natural light (other than while being transported to and from court).

- His cell was intolerably frigid and the lights are on 24 hours a day. His ability to sleep, and therefore to function, was severely impacted.

- He was monitored and recorded 24 hours a day with two cameras, including when he used the shower and the toilet, both of which were located in his cell. He was told that he will be written up if he attempts to cover himself up for privacy.

- He had no access to the law library or the regular library, despite being in trial for part of the time in the Nike case.

- He had virtually no communication with the outside world. He had no access to social visits, he was only rarely provided with his incoming mail, and he was not permitted to listen to the radio or to watch television (other than during his irregular "exercise" breaks). He was technically permitted 15 minutes a day to use the telephone, but his phone privileges were granted only sporadically and unpredictably. He had no email.

These conditions have improved over the last few weeks, but his exposure to covid 19 has increased. Mr. Avenatti suffered from pneumonia 6 months ago and is particularly susceptible to lung infections.

- 16 -

5. On March 17 and 18, 2020 I sought the position of government counsel on this application. I was informed that the government opposes this application and the relief sought.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 3-18-20                   /s./ H. Dean Steward

CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.

I am not a party to the above entitled action. I have caused, on 3-18-20 service of the defendant's:

**Ex Parte Application for Reconsideration of Bail Pending Trial**

On the following party, using the court's ECF system:

**AUSA'S Brett Sagel & Julian Andre**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3-18-20

s/ H. Dean Steward

H. Dean Steward