NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6683
    Facsimile: (213) 894-6269
    Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone:  (714) 338-3598
    Facsimile:  (714) 338-3708
    Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>                    v.<br><br>MICHAEL JOHN AVENATTI,<br><br>            Defendant. | SA CR No. 19-061-JVS<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT MICHAEL JOHN AVENATTI'S MOTION FOR RECONSIDERATION OF BAIL PENDING TRIAL |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Julian L. André and Brett A. Sagel, hereby files its opposition to defendant MICHAEL JOHN AVENATTI's motion for reconsideration of bail pending trial (CR 125).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 27, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

JULIAN L. ANDRÉ
BRETT A. SAGEL
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

I.    INTRODUCTION.................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND............................3

III.  ARGUMENT.....................................................................4

    A.   The Court's Authority to Temporarily Release a
         Defendant Pursuant to 18 U.S.C. § 3142(i) Is Limited
         To Extraordinary Circumstances and Must Be Based on an
         Individualized Determination.........................................4

    B.   Defendant Has Not Met His Burden to Establish That
         There Is "Another Compelling Reason" for Defendant's
         Release.............................................................6

         1.   Defendant Is Not at a High-Risk of Severe Illness
              Because of a Prior Instance of Pneumonia............7

         2.   Defendant Has Failed to Demonstrate That He Is
              Currently Suffering from Any Serious Medical
              Condition..........................................8

         3.   Defendant Has Not Cited Any Case in Which a
              Similarly Situated Defendant Was Released Under
              Section 3142(i).....................................10

    C.   MCC New York and the BOP Have Been Successful in
         Limiting the Impact and Spread of COVID-19...............14

    D.   Defendant Has Failed to Address the Custody Issues
         Specifically Identified by the Court or Propose
         Appropriate Conditions of Temporary Release.............15

         1.   Defendant Has Not Identified an "Appropriate
              Person" Into Whose Custody Defendant Should Be
              Released...........................................15

         2.   Defendant Has Not Identified an Appropriate
              Location Where He Could Reside While on Temporary
              Release...........................................15

         3.   Defendant Has Failed to Identify Additional
              Conditions that Would Warrant Temporary Release.....18

    E.   Any Release Should Be Conditioned on a Health
         Screening and Defendant's Compliance with Government
         Orders Regarding COVID-19................................22

IV.   CONCLUSION..................................................................23

i

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                        <u>PAGE</u>

**<u>FEDERAL CASES</u>**

<u>In re Manrique</u>,
        3:19-mj-71055-MAG,
        2020 WL 1307109 (N.D. Cal. Mar. 19, 2020)....................11

<u>United States v. Birbragher</u>,
        No. 07-CR-1023, 2008 WL 1883504 (N.D. Iowa Apr. 25, 2008)......5

<u>United States v. Copeland</u>,
        No 2:05-CR-135-DCN, ECF No. 662 (D.S.C. Mar. 24, 2020).......11

<u>United States v. Cox</u>,
        No. 2:19-CR-271-RFB,
        ECF No. 32 (D. Nev. Mar. 27, 2020)....................4, 16, 17

<u>United States v. Diaz-Hernandez</u>,
        943 F.3d 1196 (9th Cir. 2019)................................4

<u>United States v. Dupree</u>,
        833 F. Supp. 2d 241 (E.D.N.Y. 2011)..........................5

<u>United States v. Little</u>,
        No. 1:20-CR-57-GBD, ECF No. 105 (S.D.N.Y. Mar. 24, 2020)......12

<u>United States v. Martin</u>,
        CR No. PWG-19-140-13,
        2020 WL 1274857, *3 (D. Md. Mar. 17, 2020).................4, 22

<u>United States v. Matthaei</u>,
        No. 1:19-CR-243-BLW, ECF No. 30 (D. Idaho Mar. 16, 2020)......12

<u>United States v. Michaels</u>,
        SA CR No. 16-76-JVS,
        ECF No. 1061 (C.D. Cal. Mar. 26, 2020)....................12, 13

<u>United States v. Perez</u>,
        No. 1:19-CR-297, ECF No. 62 (S.D.N.Y. Mar. 19, 2020)..........11

<u>United States v. Rebollo-Andino</u>,
        312 Fed. Appx. 346 (1st Cir. 2009)...........................5

<u>United States v. Rodriguez</u>,
        SA CR No. 11-148-JVS,
        ECF No. 2021 (C.D. Cal. Mar. 21, 2020)......................14

<u>United States v. Stephens</u>,
        No. 15-CR-95 (AJN) (S.D.N.Y.)............................10, 15

<u>United States v. Wages</u>,
        271 Fed. Appx. 726 (10th Cir. 2008)..........................5

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                   PAGE

**FEDERAL STATUTES**

18 U.S.C. § 3142(g)..............................................4, 5

18 U.S.C. § 3142(i).............................................passim

18 U.S.C. § 3148(b)..........................................5, 6, 19

**MISCELLANEOUS**

American Lung Association, Top Story: COVID-19,
        available at https://www.lung.org/blog/update-covid-19.........8

Bureau of Prisons, About Our Facilities: Completing the
        Transition, available at
        https://www.bop.gov/about/facilities/residential_reentry_ma
        nagement_centers.jsp.........................................17

Centers for Disease Control, Coronavirus Disease 2019 (COVID-
        19): Are You At Higher Risk For Severe Illness?,
        available at https://www.cdc.gov/coronavirus/2019-
        ncov/specific-groups/high-risk-complications.html............7

CNN, White House Public Health Expert Says Anyone Who Recently
        Left New York Should Self-Quarantine (Mar. 25, 2020),
        available at
        https://www.cnn.com/2020/03/24/politics/coronavirus-new-
        york-self-quarantine/index.html..............................22

Federal Bureau of Prisons, COVID-19 Coronavirus (updated daily
        at 12pm Pacific),
        available at https://www.bop.gov/coronavirus/index.jsp.......14

World Health Organization, Report of the WHO-China Joint Mission
        on Coronavirus Disease 2019 (COVID-19),
        available at https://www.who.int/docs/default-
        source/coronaviruse/who-china-joint-mission-on-covid-19-
        final-report.pdf.............................................7

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant MICHAEL JOHN AVENATTI ("defendant") is a healthy 49-year-old man who, after he committed crimes and hid assets while on pre-trial supervision, this Court found to be an "ongoing danger" that was "real and palpable."  Therefore, the Bail Reform Act required his detention pending trial. (CR 121 at 1.)  Based solely on his placement at a detention facility in the Southern District of New York ("SDNY") -- where he was recently convicted of three federal felonies -- defendant now seeks indefinite release, into a pandemic, based on speculative fears about an uncontained COVID-19 outbreak in his facility.  Defendant offers no evidence that being inside of a Bureau of Prison ("BOP") facility is more dangerous -- <u>to him</u> -- than being outside one.  But the danger to the community from such a release is immense, and the logic of defendant's request is staggering.  COVID-19 does not demand the mass release of healthy pre-trial detainees.  The Bail Reform Act requires defendant's pre-trial detention, and 18 U.S.C. § 3142(i) provides no applicable exception.  His request for reconsideration must be denied.

Defendant's most recent motion for reconsideration (CR 125) fails to provide any legitimate basis for the Court to reconsider its prior ruling and grant defendant temporary release under 18 U.S.C. § 3142(i).  Indeed, defendant has largely failed to even address the specific issues identified by this Court in its March 25, 2020, Order.  (CR 123.)

<u>First</u>, the Bail Reform Act requires the Court to conduct an individualized assessment when evaluating whether to detain a defendant or grant bail.  The temporary release provision in 18

U.S.C. 3142(i) is no different.  To be entitled to temporary release under § 3142(i), a defendant bears the burden of demonstrating that his or her release is "necessary."  Although courts have on occasion temporarily released defendants with proven "serious medical conditions," generalized and speculative arguments regarding potential harms cannot be and are not enough.

Second, here, defendant has again failed to demonstrate that there is a "compelling reason" for defendant to be released from custody.  Instead, the reasons defendant presents are mundane -- true of essentially any pretrial detainee housed during the current public-health crisis.  Crucially, defendant has not presented any evidence that he is personally at a higher-risk of serious complications if he were to contract COVID-19 than the general population or other pretrial detainees.  Although defendant has claimed that he suffered from pneumonia of an unknown severity approximately six months ago, defendant has never presented any evidence or information demonstrating that he is currently suffering from any ongoing respiratory issues.  Nor has defendant presented any evidence demonstrating that a single past-instance of pneumonia places defendant at a higher risk of adverse consequences from COVID-19.  Indeed, defendant's position is inconsistent with the current guidance from the Centers for Disease Control and Prevention ("CDC"), World Health Organization ("WHO"), and other public-health organizations, which identifies significantly older individuals and those individuals with "chronic lung diseases" or other chronic underlying health conditions as being at high-risk of complications from COVID-19.

Moreover, defendant has not cited any case in which a court has determined that a healthy 49-year-old man should be released under § 3142(i) due to his potential exposure to COVID-19.  To the contrary, consistent with the CDC and WHO guidance regarding COVID-19, all of the cases cited by defendant involved significantly older defendants with serious and <u>chronic</u> health conditions, such as chronic obstructive pulmonary disease ("COPD").  And defendant completely ignores the numerous other cases in which federal courts throughout this country, including this one, have declined to grant release based on generalized and speculative fears of a COVID-19 outbreak at BOP facilities.

<u>Third</u>, defendant has again failed to identify the "party or parties into whose 'custody' he should be released," despite the Court explicitly instructing defendant to do so.  Instead, defendant requests that he placed into a hypothetical halfway house, while providing no evidence that he would be any less likely to contract COVID-19 in such a facility.  Defendant also failed to provide adequate additional terms of release to support his motion and ensure the safety of the community.

Although there may be limited circumstances in which a temporary release of a defendant under § 3142(i) is appropriate due to the nationwide COVID-19 pandemic, defendant's case is not one of them.  His motion for reconsideration should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The procedural background and relevant facts of this case are set forth in the government's prior opposition to defendant's request for bail pending trial (CR 120), and incorporated by reference herein.

III. **ARGUMENT**

   A.   **The Court's Authority to Temporarily Release a Defendant Pursuant to 18 U.S.C. § 3142(i) Is Limited To Extraordinary Circumstances and Must Be Based on an Individualized Determination**

   The Court specifically requested that the parties address the "nature and extent" of the Court's authority to grant release under § 3142(i) solely on the basis of "another compelling reason." (CR 123.)

   As concerning as the COVID-19 pandemic is, the Court's consideration "must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act." United States v. Martin, CR No. PWG-19-140-13, 2020 WL 1274857, *3 (D. Md. Mar. 17, 2020). Categorical grants or denials of bail, untethered from an individualized determination, are impermissible. United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019). That is because "the Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." Id. Section 3142(i)'s temporary release provision is no different -- "whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case." Order, United States v. Cox, No. 2:19-CR-271-RFB, ECF No. 32 at 4-8 (D. Nev. Mar. 27, 2020) (finding that a 60-year-old defendant with diabetes did not present a "compelling reason" for release under § 3142(i).)

   Under § 3142(i), a judicial order may "permit the temporary release" of a defendant "to the custody of a United States marshal or another appropriate person" if the judicial officer "determines such release to be necessary for preparation of the person's defense or for another compelling reason." Defendant bears the burden to show

4

that temporary release is "necessary" under this provision.  United States v. Dupree, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011).  Release under § 3142(i) is intended for "extraordinary circumstances," which are exceedingly rare.  United States v. Rebollo-Andino, 312 Fed. Appx. 346, 348 (1st Cir. 2009).

Specifically, "it is a rare case in which health conditions present an 'exceptional reason'" justifying release where detention would otherwise be warranted.  See, e.g., United States v. Wages, 271 Fed. Appx. 726, 728 (10th Cir. 2008) (applying 18 U.S.C. § 3145(c); collecting cases).  Although courts have occasionally found a defendant's own serious medical condition to justify temporary release, such decisions must be based on a careful and individualized analysis of the defendant's personal circumstances.  See, e.g., United States v. Birbragher, No. 07-CR-1023, 2008 WL 1883504, at *2 (N.D. Iowa Apr. 25, 2008) (collecting cases regarding serious medical issues justifying temporary release, such as a terminal AIDS diagnosis or life-threatening gunshot wounds); infra Section III.B.3 (discussing recent COVID-19 cases).

The mere fact that defendant is in custody during a pandemic is not an "exceptional reason" justifying temporary release.  Wages, 271 Fed. Appx. at 728.  Nor does the COVID-19 pandemic require the Court to disregard 18 U.S.C. § 3148(b)'s statutory presumption that defendant poses a danger to the safety of the community or require the Court to ignore the other § 3142(g) factors that would warrant a defendant's continued detention.  Yet, as discussed herein, defendant has failed to present any individualized facts demonstrating that his release from custody is appropriate, let alone "necessary."  Instead,

5

defendant continues to rely on generalized assertions that apply to all pretrial detainees equally.

Finally, the government notes that detention in this case is required under 18 U.S.C. § 3148(b).  Whereas § 3142 contains a temporary release provision, § 3148 does not.  Detention under § 3148(b) is mandatory when, as was the case here, a court finds probable cause to believe that defendant committed crimes while on pretrial release and there are no conditions that will assure the safety of the community.  Section 3142's provisions only apply in the revocation context when a court finds "there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions," 18 U.S.C. § 3148(b), a finding this Court has not made (CR 121).  And defendant has not cited to a single case in which a defendant whose bond was revoked under § 3148(b) was later granted temporary release under § 3142(i).

**B.    Defendant Has Not Met His Burden to Establish That There Is "Another Compelling Reason" for Defendant's Release**

Defendant has again failed to meet his burden to establish that there is a "compelling reason" for the Court to temporarily release defendant under § 3142(i).  Defendant is at no more risk of contracting COVID-19 than any other pretrial detainee at Metropolitan Correctional Center in New York ("MCC New York").  Defendant is at no greater risk of serious illness from COVID-19 because he suffered from pneumonia six months ago.  And he provides no evidence that he is any more at risk of contracting COVID-19 in custody at MCC New York than in the hypothetical halfway house where he proposes to reside.

1.   Defendant Is Not at a High-Risk of Severe Illness
     Because of a Prior Instance of Pneumonia

Defendant's request to be granted bail here is based largely on the false premise that defendant is at high-risk of severe illness from COVID-19 because he previously had pneumonia.  Defendant's claim is based solely on the argument of counsel (CR 125 at 5), and is inconsistent with the publicly available information and literature regarding COVID-19.

According to the CDC and WHO, individuals who are at higher-risk of severe illness from COVID-19, include the following:

- People aged "65 years and older"

- People with "chronic lung disease or moderate to severe asthma"

- People who have "serious heart conditions"

- People who are "immunocompromised," including those undergoing cancer treatment

- People with "sever obesity" or certain underlying medical conditions, such as "diabetes, renal failure, or liver disease."

See Centers for Disease Control, Coronavirus Disease 2019 (COVID-19): Are You At Higher Risk For Severe Illness?, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (emphasis added); see also World Health Organization, Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), pg. 12, available at https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf ("Individuals at highest risk for severe disease and death include people aged over 60 years and

7

those with underlying conditions such as hypertension, diabetes, cardiovascular disease, <u>chronic respiratory disease</u> and cancer.") (emphasis added).

Defendant does not fall within any of the high-risk categories identified by the CDC, WHO, and other public-health organizations. Nor has defendant cited any evidence or other credible information indicating that a single past-incident of pneumonia constitutes "chronic lung disease" or otherwise places defendant at high-risk of severe illness or death from COVID-19.  Indeed, contrary to defendant's claims, organizations such as the American Lung Association have defined "chronic lung disease" to include conditions such as COPD and lung cancer.  <u>See</u> American Lung Association, Top Story: COVID-19, <u>available at</u> <u>https://www.lung.org/blog/update-covid-19</u>.

2.   <u>Defendant Has Failed to Demonstrate That He Is<br>Currently Suffering from Any Serious Medical Condition</u>

Defendant has failed to present any evidence to support the claim that defendant's health is "compromised" because he previously had pneumonia.  (<u>See</u> CR 125 at 5.)  To support his claim that he had pneumonia, defendant presented a declaration from a friend[1] stating that defendant was diagnosed with pneumonia in September 2019, a one-page document from an urgent care facility in Florida, and a message defendant himself posted on Twitter.  (CR 119.)  Although the government does not dispute that defendant had pneumonia in September

---

[1]   Based on publicly available information, the government understands that the declarant, Lea Black, is married to Roy Black, the senior partner at Black, Srebnick, Kornspan, and Stumpf, P.A., which is one of the law firms representing defendant in the Southern District of New York.  To the best of the government's knowledge, Ms. Black is not a medical professional.

2019, the evidence presented by defendant does not demonstrate that defendant <u>currently</u> suffers from any respiratory problems, let alone a serious respiratory condition.  Crucially, defendant's initial application (CR 117), his supplemental brief (CR 119), and his motion for reconsideration (CR 125) are deficient in the following respects:

1.    Defendant has not presented any medical records or other credible evidence detailing the severity of the pneumonia he suffered in September 2019.

2.    Defendant has not presented any evidence demonstrating that the pneumonia he suffered in September 2019 has led to any other negative health implications during the past six months.  Rather, defendant's bank records reflect that between September 2019 and December 2019, defendant continued to live a very active lifestyle. (<u>See</u> CR 120, Ex. B.)

3.    Defendant has not presented any evidence that he is currently or was previously taking any medication relating to the pneumonia he suffered in September 2019.

4.    Defendant has not presented any evidence or information demonstrating that he is currently suffering from any ongoing respiratory issues or other health concerns.

5.    Defendant has not presented any evidence that he advised the MCC New York, the Santa Ana Jail, or the BOP that he currently suffers from ongoing respiratory issues or other serious health issues.[2]  For example, MCC New York has a

---

[2] To the government's understanding, upon arrest and booking into Santa Ana Jail, defendant stated he previously had pneumonia, but did not claim to have any current medical issues or ongoing need for medication or treatment.

pulmonary and respiratory clinic, which allows inmates with chronic respiratory issues to seek medical care from specialized doctors.  To the best of the government's knowledge, defendant has never obtained any medical care through this clinic.

At bottom, the record before this Court demonstrates that defendant is a healthy 49-year-old man.  There is no reason to believe, and defendant has presented no evidence demonstrating, that he is currently suffering from any serious medical condition or is at a greater risk of serious illness or death than any other pretrial detainee merely because he had pneumonia six months ago.  Indeed, there is no evidence that any medical professional or other qualified individual has concluded that defendant is personally at a higher-risk of severe illness or death should he contract COVID-19.

3.    Defendant Has Not Cited Any Case in Which a Similarly Situated Defendant Was Released Under Section 3142(i)

The cases defendant cites in his application for reconsideration also do not support his position that release would be appropriate.  To the contrary, the cases defendant cites involve individuals who are at a much higher-risk of serious illness from COVID-19 than defendant and/or do not involve temporary release under § 3142(i).[3]

---

[3]  Defendant's motion for reconsideration again relies heavily on the order in United States v. Stephens, No. 15-CR-95 (AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020).  As the government and the Court already addressed the applicability of the Stephens decision, the government has not addressed it further in this opposition. Defendant's motion for reconsideration also ignores the numerous cases from district judges throughout this country denying temporary release under § 3142(i) based solely on speculative and generalized concerns regarding the COVID-19 pandemic.

10

For example, <u>United States v. Perez</u>, involved a 65-year-old defendant with "<u>serious progressive lung disease</u> and other significant health issues, which place him at a substantially heightened risk of dangerous complications should he contract COVID-19 <u>as compared to most other individuals</u>." Amended Order, <u>United States v. Perez</u>, No. 1:19-CR-297, ECF No. 62 (S.D.N.Y. Mar. 19, 2020) (emphasis added). Indeed, the district court expressly stated that the "Order should not be construed as a determination by this Court that pretrial detention is unsafe or otherwise inappropriate as a general matter or in any other specific case." <u>Id.</u>

In <u>United States v. Copeland</u>, the court released a 73-year-old defendant under the First Step Act of 2018, in part due to concerns regarding COVID-19. <u>See</u> Order, <u>United States v. Copeland</u>, No 2:05-CR-135-DCN, ECF No. 662 at 7 (D.S.C. Mar. 24, 2020). There was, however, no dispute that the defendant in <u>Copeland</u> was at particularly high-risk from COVID-19. In addition to being 73 years' old, the defendant in <u>Copeland</u> had "adult onset diabetes, is obese, was previously diagnosed with and treated for prostate cancer, and is in need of orthopedic surgery." <u>Id.</u> Additionally, defendant's sister was a registered nurse and committed to taking care of defendant upon his release. <u>Id.</u> at 8.

Defendant also cites <u>In re Manrique</u>, 3:19-mj-71055-MAG, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020), an extradition matter. However, in <u>Manrique</u>, the court found that the defendant was particularly "vulnerable" and therefore at serious risk of illness from COVID-19 because he was 74 years' old. <u>Id.</u>

The Order in <u>United States v. Matthaei</u>, No. 1:19-CR-243-BLW, ECF No. 30 (D. Idaho Mar. 16, 2020), which defendant cites, is also

11

1    inapplicable.  Matthaei involved a defendant's request to extend his

2    self-surrender date 90 days because of COVID-19.  Id.  This request

3    was unopposed and, unlike here, the defendant in Matthaei suffered

4    from significant health problems, including COPD, which would place

5    that defendant at "serious risk of complications from COVID-19."  Id.

6         Additionally, the Court must completely disregard defendant's

7    citation to United States v. Little, 2020 WL 1439979 (S.D.N.Y. Mar.

8    24, 2020).  Although defendant attributes a large block quote in his

9    opposition to the Honorable George B. Daniels, United States District

10   Judge for the Southern District of New York, defendant is actually

11   quoting to a portion of the letter motion for reconsideration of bail

12   the defendant in that case submitted.  See id. at * 1 ("Defendant

13   moves the Court for a bail hearing and an order granting her

14   release.").  In fact, Judge Daniels denied the defendant's letter

15   motion in Little.  See id. ("MOTION DENIED"); see also Memo Endorsed

16   Denying Motion for Reconsideration, United States v. Little, No.

17   1:20-CR-57-GBD, ECF No. 105 (S.D.N.Y. Mar. 24, 2020).

18        Finally, although not cited by defendant, the government is

19   aware that this Court recently granted a defendant temporary release

20   under § 3142(i) in United States v. Michaels, SA CR No. 16-76-JVS,

21   ECF No. 1061 (C.D. Cal. Mar. 26, 2020).  There, the Court held that

22   defendant Michaels "is of an age and has medical conditions that

23   place him in the group most susceptible to Covid-19."  Id.  Michaels

24   stands in stark contrast to defendant's case.  Notably, the defendant

25   in Michaels is 78 years' old -- nearly 30 years' older than defendant

26   AVENATTI.  Additionally, in Michaels, the defendant submitted actual

27   medical records and progress notes demonstrating that he currently

28   suffers from two chronic respiratory diseases: COPD and emphysema.

Request for Modification of Detention Order, <u>Michaels</u>, SA CR No. 16-76-JVS, ECF No. 1056 at 3.  Here, defendant has done no such thing.[4] The defendant in <u>Michaels</u> also reported difficulty breathing to the Santa Ana Jail prior to the COVID-19 outbreak.  <u>Id.</u> at 2.  Again, here, defendant has never presented any evidence demonstrating that he reported ongoing respiratory issues to BOP, MCC New York, or the Santa Ana Jail, let alone that he did so prior to the COVID-19 outbreak.

Although the government does not believe that the mere speculative possibility that a defendant could contract COVID-19 justifies release under § 3142(i), at a minimum, any such defendant must certainly demonstrate that he is personally at a high-risk of severe illness or death if were to contradict COVID-19.  Defendant has not and cannot do so here.  Defendant is no more at risk than any other similarly situated inmate to contract COVID-19 and defendant does not fall within a higher risk group should he contract COVID-19; therefore, COVID-19 does not provide a "compelling reason" by itself to justify release.[5]  As a result, the Court should deny defendant's renewed motion for reconsideration.

---

[4] Also of note and in contrast to defendant here, as this Court is aware, the defendant in <u>Michaels</u> abided by his conditions of pretrial release for over three years before this Court revoked his bail after conviction.

[5] As this Court recently stated in another case, "the Covid-19 pandemic is gripping the nation. But that is a fate that affects all citizens, particularly for those in California, not simply those incarcerated." <u>United States v. Rodriguez</u>, SA CR No. 11-148-JVS, ECF No. 2021 (C.D. Cal. Mar. 21, 2020).  The COVID-19 pandemic alone is not sufficient to overlook the requirements of the Bail Reform Act or BOP's extensive efforts to protect its inmates.

**C.   MCC New York and the BOP Have Been Successful in Limiting the Impact and Spread of COVID-19**

The government recognizes, as this Court has, that COVID-19 is rapidly spreading throughout the country, particularly in the greater New York area.  (CR 123.)  Nevertheless, the BOP has so far been successful in limiting the spread of COVID-19 at federal facilities, including at MCC New York.  Although two inmates at MCC New York have been confirmed to have COVID-19, there are currently no other inmates or staff members identified to have COVID-19 at the facility.  See Federal Bureau of Prisons, COVID-19 Coronavirus (updated daily at 12pm Pacific), available at https://www.bop.gov/coronavirus/index.jsp (last accessed Mar. 27, 2020).

As explained in the government's prior opposition, the BOP and MCC New York have initiated detailed procedures to limit the spread and impact of COVID-19.  (CR 120 at 6-9.)  The fact that only two inmates or staff members at MCC New York has contracted COVID-19 -- despite the significant impact the disease is having in the New York area -- is a testament to the BOP's significant efforts to protect the health and safety of individuals in BOP custody.  Indeed, given the rapid spread of COVID-19 throughout the country, it would be unreasonable and unrealistic to expect that there would be no COVID-19 cases at BOP facilities.  And each individual instance in which an inmate or BOP staff member is diagnosed with COVID-19 should not be used to justify a wholesale release of inmates from that federal facility.

14

**D.  Defendant Has Failed to Address the Custody Issues Specifically Identified by the Court or Propose Appropriate Conditions of Temporary Release**

When this Court invited defendant to move for reconsideration of its prior order, the Court explicitly instructed defendant to address "[t]he <u>specifics</u> of any release . . ., including the <u>party or parties</u> into whose 'custody' he should be released," and "[f]urther terms of release . . ."  (CR 123 (emphasis added).)  Nevertheless, defendant's application completely fails to provide any "specifics" regarding the "party or parties into whose 'custody' defendant would be released," or identify any appropriate conditions of release.  This Court should deny defendant's reconsideration request on this basis alone.

**1.  <u>Defendant Has Not Identified an "Appropriate Person" Into Whose Custody Defendant Should Be Released</u>**

As this Court has recognized (CR 121; CR 123), under 18 U.S.C. § 3142(i), a detained defendant must be released to the "custody" of a United States marshal or "another appropriate person."  <u>See also</u> Opinion & Order, <u>Stephens</u>, 2020 WL 1295155 at *2 ("The Court may temporarily release a detained defendant to the custody of an 'appropriate person'").  Despite this Court's explicit instructions, defendant still has not identified a single person, let alone an "appropriate person," into whose custody defendant could be released. This alone is fatal to defendant's request.

**2.  <u>Defendant Has Not Identified an Appropriate Location Where He Could Reside While on Temporary Release</u>**

Although in his previous <u>ex parte</u> application defendant never stated a specific location, defendant proposed living "in California under home detention with an ankle monitor."  (CR 117.)  Defendant now proposes that he "[r]eside at a half-way house/CTC in Orange or

15

Los Angeles counties, placed by Pre-Trial Services/Probation."  (CR 125 at 6.)  This halfway house appears to be a figment of defendant's imagination.

Nothing in defendant's application discusses what attempts, if any, have been made to determine whether there is any available space at a halfway house or residential reentry center ("RRC") in Orange or Los Angeles Counties, and whether any such facilities are accepting -- or have limitations on accepting -- new residents in light of COVID-19.

Similarly, defendant's vague reference to residing at a halfway house fails to consider whether defendant would be in the custody of any particular person at such a facility, and whether such a living arrangement would provide any meaningful limitations on defendant. In fact, it appears defendant is now seeking, without any explanation or justification, that the Court impose a significantly less-restrictive condition than the home confinement and electronic monitoring condition he previously proposed in his last bail application.

Defendant also does not provide any alternative option for housing, if there are no availabilities at a halfway house or RRC at this time.  Thus, the Court can presume that defendant, a twenty-year resident of Southern California, has no place to live under home confinement.  Although the government does not believe home confinement with electronic monitoring is appropriate in this case, electronic monitoring would at least provide additional oversight of defendant.

Defendant further fails to explain how a halfway house -- which is filled with other individuals who have the ability to enter and

1 exit the facility freely -- is safer or better equipped to care for
2 defendant than MCC New York, which has detailed plans to minimize the
3 impact and spread of COVID-19 and an in-house medical staff.  Indeed,
4 there is no reason to believe that defendant living in an
5 unidentified halfway house or RCC with dozens of other individuals
6 presents less of a risk of defendant contracting COVID-19 than living
7 at MCC New York.  See Order, Cox, No. 2:19-CR-271-RFB, ECF No. 32 at
8 8 (noting that the same COVID-19 health concerns at a detention
9 facility would also be present at a halfway house).

10      Additionally, an RRC is not meant to house defendants on
11 pretrial release.  Rather, RRCs and halfway houses are designed to
12 help people reintegrate into society after incarceration and provide
13 substance abuse treatment or other services.  See Bureau of Prisons,
14 About Our Facilities: Completing the Transition, available at
15 https://www.bop.gov/about/facilities/residential_reentry_management_c
16 enters.jsp.  None of these circumstances apply to defendant.  And
17 defendant's placement, if possible, at an RRC or halfway house, would
18 eliminate one space from someone else that would more appropriately
19 need to be housed at such a facility.

20      Moreover, defendant has provided no explanation as to who will
21 pay for defendant to reside at a halfway house or RRC during his
22 release.  Rather, it appears that defendant is requesting that the
23 government (Pretrial Services or Probation) pay to house him at such
24 a facility, despite the fact that defendant is currently employing at
25 least 14 different attorneys to represent him in three pending
26 criminal cases and a state bar proceeding (see CR 124 at 3) and
27 defendant still has not complied with the Court's order that

28

defendant repay the Federal Public Defender's Office for the legal
service they provided him last year (see CR 98 at 13; CR 94 at 9).

### 3. Defendant Has Failed to Identify Additional Conditions that Would Warrant Temporary Release

In addition to the conditions of release that the Court
previously imposed on defendant, defendant now proposes the following
additional conditions of release: his prior third-party surety to be
replaced by Hugh Bromma, with a bond to be signed within 48 hours and
filed within 72 hours; residing in a halfway house in Orange or Los
Angeles Counties; Pre-Trial Services to approve financial
transactions of $1,000 or more in advance; forthwith release; bond
form singed by defendant within 48 hours of release and filed within
72 hours; and travel restricted to and from SDNY for court
appearances with 24-hour notice to Pre-Trial Services. (CR 125 at 6-
7.) Defendant's proposed additional conditions of release are wholly
inadequate to justify release here.[6]

In denying defendant's prior ex parte application seeking
reconsideration of the Court's order revoking defendant's bail, this
Court reiterated its prior findings that: (1) there was probable
cause, based on voluminous evidence, that defendant committed federal
and state crimes; (2) defendant failed to rebut the presumption under
18 U.S.C. § 3148(b) that he was a danger to the community; and
(3) that defendant was an "ongoing danger," which was "real and
palpable." (CR 121 at 1.) The Order further described the Ninth

---

[6] In defendant's previously filed ex parte application seeking
reconsideration of bail, defendant also proposed the additional
conditions that he not have any bank accounts or access to funds of
any kind without pre-approval of Pretrial Services. (CR 117 at 12.)
Defendant did not include these conditions in his current
application.

Circuit's holding that this Court was correct in its findings.  (Id.)
This Court ultimately determined that "[t]here was no basis to
reconsider the Court's earlier determination that [defendant] is a
danger to the community," and "nothing has been presented to
'undermine' the Court's initial conclusion." (Id. at 2.)  The Court
also found that defendant's subsequent convictions on three felony
counts in defendant's New York Extortion Trial confirmed the Court's
conclusion.  (Id.)

Defendant continues to ignore that this Court found he committed
crimes on release and was convicted of three felonies in the SDNY.
None of defendant's proposed additional conditions of release would
mitigate defendant's ongoing danger to the community.  In fact,
defendant's claims, despite the evolving nature of the COVID-19
pandemic, do not negate the statutory presumption -- and proven fact
-- that no condition or combination of conditions will ensure the
safety of the community.

First, as this Court stated in its prior Order, § 3142(i)
provides for "the temporary release of the person," however,
defendant's "request is not limited to a temporary release, but
rather for full bail." (CR 121 at 2 (emphasis in original).)
Although this Court instructed defendant to include additional terms
of release in his reconsideration request, defendant again did not
limit his proposed release for a temporary period of time.  Section
3142(i), which is the primary, if not exclusive, basis upon which
defendant relies, by its plain language would not support defendant's
indefinite release as he again seeks.

Second, defendant previously had a $300,000 unsecured appearance
bond signed by his ex-wife and her current husband.  Defendant

proposes his surety be replaced with defendant's "longtime friend" Hugh Bromma, the "CEO of a major investment advisory firm" with "substantial personal assets."  (CR 125 at 6.)  Despite this Court revoking defendant's prior bail based on probable cause defendant committed further federal and state crimes, defendant does not propose a secured bond or an increase in bail amount -- even though the surety has "substantial personal assets."  (Id.)  Moreover, defendant's conditions would not even require Mr. Bromma to sign and file the surety bond for 48 and 72 hours, respectively.  For the reasons stated in the government's previous opposition (CR 120 at 15), this Court can and should determine that defendant is a flight risk.  The government does not believe defendant should be released, but at a minimum this Court should substantially increase the bond, require that it be secured by real assets of the surety, and should not release defendant until the secured bond is formalized.

Third, defendant's proposed additional condition of release that Pretrial Services approve any financial transaction of $1,000 would require this Court to believe defendant would comply with such a condition.  Defendant tellingly does not propose any conditions that would require him to initially disclose his assets, bank accounts, and/or finances to Pretrial Services or the Court.  In addition to the charges in the Indictment in which defendant knowingly and willfully failed to comply with his financial obligations and laws, defendant's conduct on pretrial release similarly established that defendant cannot be trusted to follow the law, let alone conditions of release.  Moreover, the evidence this Court reviewed for defendant's bail revocation showed the lengths defendant would take to avoid the $10,000 currency reporting requirement, in violation of

federal law; nothing in defendant's proposed condition would negate the likelihood that defendant would conduct transactions just under the $1,000 threshold.  This proposed condition simply would not prevent defendant from dissipating or hiding further assets, or engaging in other fraudulent conduct.

Finally, defendant proposes a forthwith release, but fails to address any limitations on his travel or any period of quarantine to protect the public from any possible spread of COVID-19.  Considering defendant's claims about MCC New York and New York in general, it would be reckless to release defendant "forthwith" without any limitations on his travel and placement in a group home.  This Court should not release defendant, but if so inclined, should not do so until an acceptable order detailing the conditions and circumstances under which defendant would be released.

In sum, defendant has already proven that he is unlikely to abide by the conditions of his release and will continue to commit further crimes if released.  Yet, defendant has proposed conditions that are unlikely to prevent any further criminal conduct, while nevertheless requiring Pretrial Services to expend substantial resources monitoring defendant in the interim.  Pretrial Services' limited resources during this national emergency are undoubtedly better suited to monitoring those defendants who have not already had their bail revoked or been convicted of multiple federal felonies in another district. (See CR 120 at 14 (citing United States v. Martin, No. PWG-19-140-13, 2020 WL 1274857 (D. Md. Mar. 17, 2020)).)

**E.   Any Release Should Be Conditioned on a Health Screening and Defendant's Compliance with Government Orders Regarding COVID-19**

If the Court does grant defendant's motion for reconsideration, defendant should not be released into the community until BOP and the United States Marshals are confident that defendant is not infected with COVID-19.  The White House Coronavirus Task Force is currently recommending that anyone who has traveled out of the New York metropolitan area be quarantined for fourteen days.  See CNN, White House Public Health Expert Says Anyone Who Recently Left New York Should Self-Quarantine (Mar. 25, 2020), available at https://www.cnn.com/2020/03/24/politics/coronavirus-new-york-self-quarantine/index.html.  Thus, defendant should be placed into a fourteen-day quarantine prior to his release, and BOP and United States Marshals should be granted the discretion to hold defendant if he exhibits any symptoms consistent with COVID-19.

As a result, should the Court grant defendant temporary release, the government respectfully requests that the following language be included in any release order:

> As a condition precedent to release, the defendant shall submit to screening for COVID-19 by the Bureau of Prisons and/or the United States Marshals Service.  If the defendant is found to be exhibiting symptoms consistent with COVID-19 or is confirmed to have COVID-19, the defendant shall not be released to the public because of the danger the defendant poses to the community.

> Should the defendant not have symptoms consistent with COVID-19 at the time of the release order, defendant shall be placed in a fourteen-day quarantine before being discharged from MCC New York and then defendant shall submit to screening for COVID-19 as directed by the Pretrial Services.  Should the defendant then or thereafter exhibit symptoms consistent with COVID-19, the defendant shall remain in quarantine or isolation as directed by Pretrial Services in a form directed by Pretrial services, including self-isolation or self-quarantine.

> During the period of pre-trial supervision, defendant shall comply with national, state, and local public-health orders regarding COVID-19, including California's Executive Order N-33-20 (March 19, 2020) and, if applicable, the Los Angeles "Safer At Home" Order, Public Order Under City of Los Angeles Emergency Authority (March 19, 2020), or any other applicable local orders, depending on where defendant would actually reside.

## IV.   CONCLUSION

This Court has already correctly determined that defendant is ineligible for reconsideration of bail pending trial.  Accordingly, the government respectfully requests that this Court deny defendant's request for reconsideration of its prior order denying defendant bail.