NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6683
    Facsimile: (213) 894-6269
    Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3598
    Facsimile: (714) 338-3708
    Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT MICHAEL JOHN AVENATTI'S SECOND AMENDED MOTION FOR BAIL PENDING TRIAL |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Julian L. André and Brett A. Sagel, hereby files its response to defendant MICHAEL JOHN AVENATTI's second amended motion for bail pending trial (CR 129).

This response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 31, 2020              Respectfully submitted,

                                      NICOLA T. HANNA
                                      United States Attorney

                                      BRANDON D. FOX
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                      */s/ Julian André*
                                      JULIAN L. ANDRÉ
                                      BRETT A. SAGEL
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant MICHAEL JOHN AVENATTI ("defendant") has filed a second amended motion for bail pending trial. (CR 129.) For the reasons set forth in the government's prior oppositions (CR 120; CR 127), the government continues to oppose the Court granting defendant temporary release under 18 U.S.C. § 3142(i) as defendant has not met his burden of demonstrating there is a "compelling reason" to justify his release, does not currently have a serious medical condition, and is not at higher-risk of serious illness from COVID-19 than any other pretrial detainee in the custody of the Federal Bureau of Prisons ("BOP") or at the Metropolitan Correctional Center New York ("MCC New York").

If the Court remains inclined to grant defendant a temporary 90-day release under § 3142(i), however, the government still has significant concerns regarding the temporary bail conditions defendant has proposed, which remain insufficient.[1] The government's concerns are as follows:

1. <u>Release to the Custody of "An Appropriate Person"</u>: Defendant has proposed that defendant ultimately be released into the custody of Jay Manheimer and indicates that defendant would reside with Mr. Manheimer for the duration of the 90-day temporary release. (CR 129.) Defendant has failed to meet his burden of demonstrating that Mr. Manheimer constitutes an "appropriate person" under § 3142(i). Defendant has not even provided the Court, the

---

[1] Although the government's position remains that no conditions or combination of conditions would assure the safety of the community, the government is mindful of the Court's prior order (CR 128) and has therefore proposed alternative and additional conditions of release.

government, or Pretrial Services with sufficient information to evaluate whether Mr. Manheimer would constitute an "appropriate person."[2] Cf. United States v. Cordero Caraballo, 185 F. Supp. 2d 143, 146 (D.P.R. 2002) (finding defendant's mother and grandmother to be appropriate persons under § 3142(i) and were "convincingly credible in their representation to the Court"). Instead, defendant has proposed providing the government and Pretrial Services with Mr. Manheimer's contact information only 48 hours prior to defendant's release. This is both curious and insufficient. At a minimum, before any release order is issued, the government and Pretrial Services should be provided a sufficient opportunity to interview Mr. Manheimer and, if necessary, raise any concerns with the Court. Additionally, if the Court ultimately finds Mr. Manheimer to be an appropriate person, the government requests that Mr. Manheimer be required to post at least a $100,000 secured bond to ensure that Mr. Manheimer takes his responsibility as defendant's temporary custodian seriously. Mr. Manheimer should also be ordered to immediately report any potential violations of the conditions of defendant's temporary release to Pretrial Services and the Court.

    2. <u>Defendant's Proposed Surety</u>: The proposed $300,000 unsecured bond from Hubert Bromma is also insufficient.[3] This Court and the Ninth Circuit already found that defendant continued to engage in fraudulent and criminal conduct while on pretrial release, despite the fact that there was a $300,000 unsecured bond signed by

---

[2] The only information defendant has provided regarding Mr. Manheimer is that he is a "longtime friend." (CR 129 at 5).

[3] Although defendant's second amended motion refers to this as an "additional bond" (CR 129 at 8), defendant is actually proposing the exact same bond that was previously in place, with just a different surety.

2

his first ex-wife (the mother of two of defendant's children). Defendant has also indicated that Mr. Bromma is a "CEO of a major investment advisory firm" with "substantial personal assets." (CR 125 at 6.) For these reasons, the government believes that the Court should impose a $1,000,000 bond, with at least $600,000 to be secured by property, before defendant is released. Additionally, as is the case with Mr. Manheimer, defendant does not propose the government, Pretrial Services, or the Court have an opportunity to speak with Mr. Bromma in advance and evaluate whether he is an appropriate surety. Thus, before any release order is issued, the government and Pretrial Services should be provided a sufficient opportunity to interview Mr. Bromma and, if necessary, raise any concerns with the Court.

    3.   <u>Telephonic Status Conference with Mr. Manheimer and Mr. Bromma</u>: Given the extraordinary nature of the relief defendant is requesting here, the government believes the Court should conduct a telephonic status conference with Mr. Manheimer and Mr. Bromma prior to defendant's release. See <u>Cordero Caraballo</u>, 185 F. Supp. 2d. at 146 (noting that the district court "questioned the defendant's mother and grandmother in order to further ascertain whether they indeed qualify as third-party custodians"). This would provide the Court with an opportunity to directly explain to Mr. Manheimer and Mr. Bromma the serious nature of their responsibilities as a temporary custodian and a surety, respectively, while also providing Mr. Manheimer and Mr. Bromma an opportunity to raise any concerns they may have with the Court.

    4.   <u>Home Detention and Electronic Monitoring</u>: Although defendant has proposed that he be subject to "home detention with no

3

exceptions" other than for medical emergencies (CR 129 at 8), and "electronic monitoring" (CR 129 at 6), defendant's proposed order does not include an electronic monitoring condition.  To ensure that defendant complies with the terms of his home detention, the Court should require electronic monitoring at defendant's expense.  Given that defendant will need to travel from New York to California, the government also requests that the Court direct Pretrial Services to ensure that such electronic monitoring be in place immediately upon his release from MCC New York and before he is allowed to travel.[4] Although the government recognizes that defendant may need to travel back to the Southern District of New York ("SDNY") during the 90-day temporary release period, defendant should be required to seek approval from the Court before doing so.

    5.   Quarantine:  Defendant's fourteen-day quarantine should be at MCC New York prior to release, as set forth in the proposed conditions included in the government's March 27, 2020, opposition (CR 127 at 22-23).  This Court already confirmed "[a]ny release order must include the three conditions which the Government outlines in its opposition" (CR 128 at 2), which included the fourteen-day quarantine at MCC New York.  Defendant should not be released and allowed to travel across the country or to another state, such as New Jersey, until and unless BOP and the United States Marshals Service can confirm that defendant does not have COVID-19 -- particularly, given that someone in defendant's unit at MCC New York apparently

---

[4] If Pretrial Services is unable to setup electronic monitoring prior to defendant traveling from New York to California, the Court should require that defendant's temporary custodian, surety, or legal counsel accompany him from New York to California.  Defendant should also be responsible for the costs of any travel to or from California during his temporary release.

tested positive for COVID-19. Requiring defendant to remain in quarantine at MCC New York for fourteen days will allow sufficient time for BOP to test defendant for COVID-19 and obtain the result before his release. Remaining in quarantine for fourteen days at MCC New York is not dangerous because defendant would be isolated from other inmates, but would eliminate the risk of defendant infecting others, including his friends, family, legal counsel, and any other individuals defendant may encounter while traveling from New York to California.

6. <u>Conditions regarding Defendant's Finances</u>: Upon release, this Court should require defendant to immediately disclose to Pretrial Services all of his assets, bank accounts, and any future potential revenue from past legal work[5] or other sources. Defendant shall not open any new accounts without prior approval from Pretrial Services, must not dispose of, transfer, or sell any assets (either directly or indirectly) over $500 without prior approval from Pretrial Services, and must receive approval in advance from Pretrial Services for any financial transactions over $500.[6] As defendant proposed, defendant should also be subject to search conditions to assure compliance with these conditions. Because defendant would be living with Mr. Manheimer during the 90-day temporary release, any

---

[5] Notably, in defendant's recent motion for a continuance, counsel indicated that defendant had been actively representing legal clients up until his arrest in January 2020. (CR 122 at 4.)

[6] Although defendant suggests that he is nearly broke in his second amended motion, defendant relies on the government's statements regarding defendant's finances during the SDNY Extortion Case trial, <u>United States v. Avenatti</u>, No. 1:19-CR-373-PGG, rather than making any affirmative representations about his own finances. The fact that defendant continues to play coy about his own finances is concerning and underscores the fact that defendant remains an economic danger to the community.

5

such search conditions would necessarily have to allow Pretrial Services to enter and search Mr. Manheimer's residence and digital devices to some degree.

7. <u>Defendant's Use of Digital Devices</u>:  Pretrial Services should be provided broad discretion to limit defendant's use of digital devices, such as a cell phone and computer, and be allowed to monitor defendant's use of any such digital devices to ensure compliance with the conditions of defendant's temporary release. Defendant should only be allowed to use digital devices to communicate with family, friends, and legal counsel; prepare his defense to the pending criminal charges; and for the necessities of daily life, such as ordering food and groceries.  Defendant should also be expressly precluded from using any encrypted messaging applications, such as WhatsApp, Signal, or Telegram, or accessing any digital devices containing such applications.  Allowing defendant to access encrypted messaging services would significantly limit Pretrial Services' ability to monitor defendant's compliance with the conditions of his temporary release.

8. <u>Compliance with Other Court Orders</u>:  Given defendant's history of obstructive conduct in connection with various court proceedings, defendant's temporary conditions of release should expressly require that defendant comply with any and all court orders.

9. <u>Other Conditions</u>:  Any release order should also include the standard terms of pretrial release previously imposed in March 2019, including, but not limited to, conditions precluding defendant from contacting any victims or witnesses and requiring the surrender

of defendant's passport. Such conditions have not been included in defendant's proposed order.

10. <u>Self-Surrender</u>: At the expiration of defendant's 90-day temporary release, defendant should be required to surrender to either the United States Marshals office at 411 W. 4th Street, Second Floor, Santa Ana, CA 92701, or the United States Marshals office in the SDNY at 500 Pearl Street, Suite 400, New York, NY 10007, as directed by Pretrial Services or the Court.[7] The Court's release order should also expressly reserve the right to revoke defendant's temporary release in light of changed circumstances after notice to the parties.

11. <u>Language regarding the Court's Prior Order</u>: The government requests that any release order contain language indicating that the Court's order temporary releasing defendant does not withdraw, abrogate, or conflict with the prior rulings of this Court and the Ninth Circuit regarding the Court's revocation of defendant's bail and order of detention in January 2020.

For the foregoing reasons, if the Court is inclined to grant defendant a 90-day temporary release under § 3142(i), the government respectfully requests that the Court modify the proposed conditions of release as set forth above.

---

[7] As defendant is currently scheduled to proceed to trial on July 14, 2020, in the SDNY fraud case, <u>United States v. Avenatti</u>, No. 1:19-CR-374-JMF, defendant may need to surrender in the SDNY.

7