H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S MEMORANDUM RE ALLOCATION OF ASSETS AND THE IMPACT ON DEFENDANT'S RIGHTS AND THE TRIAL DATE |

Pursuant to the Court's Order on June 1, 2020 (Docket No. 169), defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this Memorandum regarding Mr. Avenatti's allocation of assets and its alleged impact on Mr. Avenatti's rights, his defense in this case, and the trial date.

Dated: June 5, 2020                Respectfully submitted,

                                   /s/ H. Dean Steward
                                   H. DEAN STEWARD
                                   Attorney for Defendant
                                   MICHAEL JOHN AVENATTI

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

I.   INTRODUCTION ..........................................................................................1

II.   ARGUMENT.......................................................................................................

    A.  The Trial Date Has Not Been Materially Impacted by the Defense's Approach To This Case ........................................................3

    B.  The Government's Late Production of Discovery and Strategic Choices Are to Blame for This Matter Not Proceeding to Trial Earlier................................................................4

    C.  The Government is Estopped From Arguing Mr. Avenatti Had Sufficient Assets to Fund His Defense in This Case But Chose Not To ...................................................................................9

    D.  The Government's Claims Regarding Mr. Avenatti's Alleged Asset Allocation Are Not Supported By Competent Evidence ...................................................................10

    E.  The Government's Violation of Mr. Avenatti's Rights While in Custody is Far More Material to Mr. Avenatti's Inability to Prepare a Defense and Proceed to Trial ...........................11

III.   CONCLUSION.............................................................................................12

CERTIFICATE OF SERVICE.............................................................................13

# TABLE OF AUTHORITIES

**CASES:** **Page**

*Olivo v. Lafler*,
2007 WL 1747154 (E.D. Mich. 2007) ................................................................. 11

*Quintero v. Carpenter*,
2014 WL 7139987 (M.D. Tenn. 2014) ................................................................ 11

*Roller v. McKellar*,
711 F. Supp. 272 (D.S.C. 1989) ........................................................................... 11

**OTHER AUTHORITIES:**

U.S. Const. Amend. VI ....................................................................................... 11

# I. INTRODUCTION

On June 1, 2020, this Court directed that counsel brief the issue of Mr. Avenatti's asset allocation and its impact on Mr. Avenatti's rights, defense in this matter and the trial date. For each of the following reasons, the impact of Mr. Avenatti's post-indictment financial decisions on this case has been negligible at best.

*First*, because of the COVID-19 pandemic, nothing Mr. Avenatti has done or not done as it relates to his allocation of financial resources has had any material impact on the trial date.

*Second*, any prejudice to Mr. Avenatti and his counsel's ability to prepare an adequate defense, prepare for trial and promptly proceed to trial is not "self inflicted" but rather results directly from (a) the government's strategic and purposeful decision to simultaneously bring charges against Mr. Avenatti on two coasts in three separate cases, including one indictment that claims an alleged net loss amount of less than $150,000;[1] (b) the government's choice to dump huge amounts of discovery on the defense less than two months before trial, including the production of approximately 1,700,000 pages over the last 84 days (since March 13, 2020);[2] (c) the government's choice to arrest Mr. Avenatti in January 2020 and subsequently deny him adequate access to his counsel and

---

[1] The decision by the Department of Justice and the USAO in New York to pursue a separate indictment involving this relatively small loss amount, which is far below the loss threshold amount generally necessary for federal charges, is highly unusual.

[2] As disclosed on page 4, footnote 5 of defendant's Status Report (Docket No. 164), the government claims approximately 664,000 pages are duplicative of pages produced on March 13. However, this is of little consequence, because even accepting the government's position as true, this still amounts to approximately 87,226 documents that require review well prior to trial.

the discovery in this case by way of placing him in solitary confinement and/or locked-down status for over 80 days; and (d) the COVID-19 pandemic. Indeed, even if *some* amount of responsibility could be placed on Mr. Avenatti (it cannot), this amount pales in comparison to the responsibility that lies at the feet of the government.

*Third*, as a result of the government's representations repeatedly made to the Court, and argued to the jury, in the recent Nike case[3] relating to Mr. Avenatti's alleged "enormous indebtedness;" negligible assets; and lack of income, the government is estopped from now arguing the exact opposite in this case, namely that Mr. Avenatti had at all relevant times considerable wealth, assets and income to devote to his defense but simply chose not to. Indeed, in their successful effort to gain a conviction against Mr. Avenatti in the Nike matter, the government made, over Mr. Avenatti's repeated objections, the alleged poor financial condition and vast indebtedness of Mr. Avenatti a *centerpiece of their case, arguing that Mr. Avenatti had no assets and was desperate, with no other potential income likely or available.*[4] Accordingly, the government cannot now reverse course and argue to this Court that in reality, Mr. Avenatti had considerable assets, income and wealth.

*Finally*, there is insufficient competent evidence that (a) Mr. Avenatti has had sufficient assets to devote to his defense in this case and yet purposely did not do so; (b) Mr. Avenatti's choice to fund other legal matters in which he was a defendant (i.e. two

---

[3] Case No. 1:19-CR-00373-PGG, Southern District of New York.

[4] It is anticipated that the government will attempt to use the same line of argument in this matter when it proceeds to trial.

2

other criminal proceedings, a divorce case, other civil litigation in which he is a defendant, a State Bar proceeding, and collection matters in which he is a debtor) and also fund certain living expenses was somehow improper; (c) Mr. Avenatti's asset allocation decisions have had any impact on his defense in this matter, the ability for Mr. Avenatti's counsel to adequately prepare for trial, or the trial date; and (d) any other asset allocation by Mr. Avenatti would have resulted in a material difference in the defense's trial preparation or an earlier trial date.  Further, under existing law, it cannot reasonably be argued later in this case that any "underfunding" of his counsel establishes constitutionally ineffective assistance of counsel.

For each of these reasons, as well as the additional reasons detailed below, any claim that Mr. Avenatti's choices relating to allocation of assets has had any significant or material impact on his rights, defense in this case, or the trial date is without merit.

## II. ARGUMENT

### A. The Trial Date Has Not Been Materially Impacted by the Defense's Approach To This Case

On August 26, 2019, this Court set the first real trial date in this complex case[5] as *May 19, 2020* (Docket No. 64).[6]  This date was subsequently continued at the request of the defense to *August 18, 2020* (Docket No. 126 – March 26, 2020) and then to

---

[5] The government designated this 36-count case as "complex" on April 10, 2019.  (*See* Docket No. 18).

[6] Even though various trial dates had been set by the Court prior to this date, it was understood among the parties and the Court that such dates were mere placeholders.  This is why the Court specifically ordered the parties to appear at the August 26, 2019 Status Conference prepared to discuss a real trial date. (See Docket No. 54).

3

*December 8, 2020* (Docket No. 169 – June 1, 2020).  In reality, however, the impact of the defense's requests on the ultimate trial date has been negligible in light of the COVID-19 pandemic and its dramatic consequences, including governmental restrictions on mobility (i.e. stay at home orders) and the unavailability of jury trials in the Central District.  Indeed, on March 17, 2020, Chief Judge Virginia A. Phillips ordered the suspension of all jury trials effective immediately due to COVID-19.  This suspension was subsequently extended and, as of the date of this filing, jury trials remain suspended indefinitely.[7]  Accordingly, even if the defense had not requested that the original May 19, 2020 trial date be continued for various reasons, it would have been literally impossible for this case to proceed to trial on May 19, 2020 as originally scheduled.  In other words, the parties would most likely be looking at a trial date not much different than the current date of December 8, 2020.  As a result, nothing that Mr. Avenatti has allegedly done or not done by way of allocating resources in this case can be said to have had any material impact on the trial date.

**B.    The Government's Late Production of Discovery and Strategic Choices Are to Blame for This Matter Not Proceeding to Trial Earlier**

On March 13, 2020, *approximately 36 days before the then scheduled May 19, 2020 trial date*, the government's Privilege Review Team first produced 126,288 documents to the defense, which consisted of approximately 1,000,000 pages of discovery.  On May 8, 2020, the prosecution produced 87,226 documents totaling

---

[7] In his Status Report (Docket No. 164, pp. 15-33), Mr. Avenatti raised a numerous legitimate issues relating to proceeding to trial during the pandemic.

4

664,275 pages and noted that these documents were a subset of the documents produced by the privilege review team less than 2 months earlier. (*See* Response to Status Report, Docket No. 168, Exhibit 1). Critically, all of this discovery was in the possession of the government for close to one year before it was produced to the defense. And yet the discovery was inexplicably dumped on the defense very late in the process, at the same time (a) Mr. Avenatti was in solitary confinement and/or under locked-down status at the Metropolitan Correctional Center in New York, unable to meaningfully communicate with his lawyers and review discovery, and (b) the COVID-19 pandemic swept the country and substantially interfered with the defense's ability to prepare for trial.[8]

To compound matters, the government has recently admitted that they still have remaining discovery to produce to the defense totaling at least 9,700 documents (with untold number of pages). (*See* Docket No. 168). As with the prior discovery, these documents appear to have been in the possession and control of the government since the Spring of 2019 and yet still have not been produced to the defense.[9] Of course, all of the documents produced by the government in the last 90 days are in addition to the prior discovery (including vast amounts of electronic data) previously produced to the defense, which the defense continues to review.

---

[8] At the June 1 Status Conference, the Court acknowledged that the COVID-19 pandemic had impacted the defense's ability to prepare for trial in this matter.

[9] Seeing as the trial date was previously May 19, 2020, it is unclear as to why this information was not produced to the defense long ago.

5

The recently produced discovery obviously requires review by the defense well prior to trial and this review alone will take well over 2,000 hours (conservatively) to complete.[10] *Even though the government may wish to quibble with this claim and attempt to offer excuses as to why this is not true,[11] it is beyond dispute.*

To be clear, nothing Mr. Avenatti has done or not done as it relates to his allocation of alleged resources[12] has had any effect on the government's failure to timely produce discovery in this case and, in particular, failure to produce approximately 100,000 documents until recently. Regardless of how much money Mr. Avenatti could allocate toward this case, the defense could not review what they did not have nor can they now review what they still do not have.

Moreover, after initially charging Mr. Avenatti with limited crimes by way of a criminal complaint, the government then made the strategic choice to indict Mr. Avenatti by way of a 36-count indictment involving a myriad of unrelated conduct, including

---

[10] Generally, a widely accepted rule of thumb is that it takes approximately one hour to review 35-50 documents. Using the midpoint of 42.5 documents per hour, reviewing 96,926 documents (the 9,700 documents the defense has yet to receive as disclosed by the government in its recent status report *plus* the 87,226 documents the government claims are a subset of the 126,288 documents) *will take 2,280 hours or 285 eight-hour days*. This assumes the defense spends no time reviewing the additional 39,062 documents comprising the balance of the March 13, 2020 privilege production. If these documents are also reviewed, it will require *an additional 919 hours or 114 eight-hour days*. *The cost associated with this review alone is enormous*.

[11] For instance, any claim that the recent discovery produced to the defense "really is not that important or material to the case" is without merit. If the information is important enough to have been produced by the government pursuant to its obligations, then it is obviously important enough to be reviewed by the defense prior to trial.

[12] For the last five months, Mr. Avenatti has had less than $5,000 in liquid assets. If the government disputes this fact, the defense respectfully requests that they come forward with actual evidence in support of their position.

6

bank fraud charges stemming from a loan that had been fully repaid years earlier with no loss to the financial institution. They made this decision with full knowledge that the USAO for the Southern District of New York was already pursuing two other cases against Mr. Avenatti, each of which could result in a significant prison sentence. As a result of their charging decision, this case became significantly more complex (*see* Docket No. 18) and thus burdensome on the defense. Indeed, there are natural consequences that flow from the government's strategic decisions and Mr. Avenatti's allocation of assets had no bearing on the government's decision to make this case more complex and complicated, thus requiring significantly more discovery to review and more time to prepare for trial.

In addition, the strategic decision by the Department of Justice to simultaneously charge Mr. Avenatti in three separate cases on two coasts[13] had the obvious and foreseeable effects of (a) making it significantly more difficult and more expensive for Mr. Avenatti to mount a defense;[14] (b) delaying the resolution and trials in two of the three matters; and (c) Mr. Avenatti having fewer assets and financial resources to allocate to the cases that were scheduled for trial after the first case (Nike). In fact, had the government wished to proceed in an efficient manner designed to resolve all of the charges against Mr. Avenatti as quickly as possible and/or get to trial, they could have

---

[13] Case No. 1:19-CR-00373-PGG (SDNY) (the "Nike" case); Case No. 1:19-CR-00374-JMF (SDNY) (the "Stormy Daniels" case); and this case.

[14] Regardless of one's financial position, defending against three separate federal indictments simultaneously is a herculean task.

7

brought one surgical indictment in one venue. Instead, they chose to bring three separate cases in two districts, including one with an alleged net loss amount of less than $150,000.

Separate and apart from the increased burden and legal costs placed on Mr. Avenatti as a result of the government's decision, the government's decision also had the foreseeable consequence that Mr. Avenatti would devote significant assets resources to the first case to go to trial and that those resources would then not be available to be deployed toward his defense in the second and third cases. Not surprisingly, this is exactly what transpired - Mr. Avenatti was first required to allocate significant assets and resources toward his defense in the Nike case because it was the first case to proceed to trial and, as the Hon. Paul G. Gardephe noted, involves charges as serious as those in this matter. Further, no legitimate claim can be made that Mr. Avenatti's decisions to expend monies on his defense in the Nike case were somehow unreasonable or that he funded a "lavish" defense in that case and that those monies should have instead been allocated towards his defense in this matter (the *third* case scheduled for trial).[15]

---

[15] In an effort to paint an inaccurate picture of Mr. Avenatti's asset allocation decisions, the government has previously gone to great lengths to repeatedly claim before this Court that Mr. Avenatti was represented at the Nike trial by "SEVEN (7) attorneys." However, what the government has failed to tell the Court, despite having full knowledge of all of Mr. Avenatti's finances, bank accounts, and payments to his lawyers during the last three years, including in 2019 and 2020, is that: (a) only TWO (2) of those lawyers were being paid by Mr. Avenatti, with the payments occurring entirely in the Spring of 2019; (b) the "seven" lawyers included a pro bono jury consultant and other lawyers in support, who played no role at trial after jury selection; and (c) *unlike here*, Mr. Avenatti had the good fortune of having lawyers, firms and consultants volunteer their services in the Nike case due to (i) the case being venued in New York, (ii) the high-profile nature of the case and the fact that it involved some of the biggest names in college basketball, and (iii) the belief by many in the legal community

*(footnote cont'd on next page)*

### C. The Government is Estopped From Arguing Mr. Avenatti Had Sufficient Assets to Fund His Defense in This Case But Chose Not To

In the recent Nike trial, the government repeatedly referenced Mr. Avenatti's alleged poor financial condition, lack of assets and income, and deep indebtedness in the Spring of 2019 as evidence that Mr. Avenatti committed extortion and honest services fraud against Nike and his client. They offered this evidence and argument before the jury over the repeated objection of the defense, including a motion in limine. In fact, this evidence and argument served as one of the centerpieces of the prosecution, with the prosecution calling Mr. Avenatti's former Office Manager, Judy Regnier, to establish Mr. Avenatti's alleged desperate financial condition and lack of assets in the Spring of 2019.[16] Indeed, the record in the Nike case is replete with references to the government's claims in that case before the judge and jury that Mr. Avenatti was deeply in debt, had negligible assets and no way of paying any expenses in the Spring of 2019. *See, e.g.*, Exhibit GX S-4 (government's trial exhibit showing outstanding civil judgments against Mr. Avenatti that exceeded $11 million) and Nike Docket No. 108 (Case No. 1:19-CR-00373-PGG: Government's opposition to Mr. Avenatti's motion in limine regarding his financial condition).[17] Having prevailed - over the repeated objections of Mr. Avenatti both before and during trial in the Nike case - and after

---

that Mr. Avenatti had been singled out for prosecution in the Nike case over what was in reality a hard charging settlement negotiation, no different than what occurs hundreds of times by plaintiffs' lawyers every day across the country.

[16] AUSAs Brett Sagel and Julian Andre travelled to New York and were present when Ms. Regnier testified on behalf of the government in the Nike trial.

[17] If this claim is disputed, the defense is prepared to provide specific references to the trial transcript to assist the Court if necessary.

9

having successfully claimed that Mr. Avenatti had no tangible assets, the government is estopped from now arguing the exact opposite in this case, namely that Mr. Avenatti had considerable wealth, assets and income to devote to his defense in this case but chose not to.

### D. The Government's Claims Regarding Mr. Avenatti's Alleged Asset Allocation Are Not Supported By Competent Evidence

Any claim by the government that Mr. Avenatti wasted assets and financial resources, or dissipated monies that could have otherwise been allocated towards his defense in this case is without merit. *Further, even if Mr. Avenatti expended monies that should have been spent towards his defense in this case (he did not), the government has failed to show any causal connection between that failure and the scheduling and discovery issues in this case. Nor can they in light of the record (as detailed above).*

To be clear, there is insufficient evidence that (a) Mr. Avenatti has had sufficient assets to devote to his defense in this case and yet purposely has not done so; (b) Mr. Avenatti's choice to fund other legal matters in which he is a defendant (i.e. two other criminal proceedings, a divorce case, other civil litigation in which he is a defendant, a State Bar proceeding, and collection matters in which he is a debtor) and also fund certain living expenses is somehow improper; (c) Mr. Avenatti's asset allocation decisions have had any material impact on his defense in this matter, the ability for Mr. Avenatti's counsel to adequately prepare for trial, or the trial date; and (d) any different asset allocation by Mr. Avenatti would have resulted in a *material* difference in the defense's trial preparation or an earlier trial date.

10

Nor could it reasonably be argued later in this case that any "underfunding" of his counsel establishes constitutionally ineffective assistance of counsel. *See, e.g., Roller v. McKellar*, 711 F. Supp. 272 (D.S.C. 1989) (finding that a generalized complaint that trial counsel was underfunded will not sustain a charge of ineffectiveness unless it can be shown that it caused counsel's performance to fall below some objective standard of reasonableness and actually prejudiced his chances at trial); *Olivo v. Lafler*, 2007 WL 1747154, at *8 (E.D. Mich. 2007); *Quintero v. Carpenter*, 2014 WL 7139987 (M.D. Tenn. 2014).

### E. The Government's Violation of Mr. Avenatti's Rights While in Custody is Far More Material to Mr. Avenatti's Inability to Prepare a Defense and Proceed to Trial

In its prior Status Report (Docket No. 164, pp. 6-13),[18] the defense provided a detailed factual recitation of the government's mistreatment of Mr. Avenatti from January 14, 2020 through April 24, 2020, including specific instances of the government's violation of Mr. Avenatti's fundamental constitutional rights, including those afforded by the Sixth Amendment. Among other things, the government repeatedly subjected Mr. Avenatti to treatment and conditions that violated his right to counsel, his right to review the discovery in this case and prepare for trial, and generally and substantially interfered with his ability to defend himself against the charges in this case. They did so by way of a multitude of actions, including but not limited to placing

---

[18] In the interest of brevity, the defense incorporates by reference the factual recitation on pages 6-13 of the Status Report (together with the exhibits from the Status Report and Supplemental Status Report (Docket No. 165)) rather than repeat it herein verbatim.

11

Mr. Avenatti in solitary confinement under brutal conditions that have been routinely described as tougher than Guantanamo Bay.

The government's conduct as detailed in the Status Report is far more material to Mr. Avenatti's ability to prepare a defense and proceed to trial than any perceived or alleged lack of allocation of assets or resources. As a result, the government should not now be heard to complain that Mr. Avenatti is to blame and that any prejudice he suffered is "self-inflicted."

### III. CONCLUSION

For each of the above-detailed reasons, any claim that Mr. Avenatti's choices relating to allocation of assets has had any significant impact on his rights, defense in this case, or the trial date is without merit and should be summarily rejected.

Dated: June 5, 2020                    Respectfully submitted,

/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

## CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672. I am not a party to the above-entitled action. I have caused, on June 5, 2020, service of the defendant's:

## MEMORANDUM RE ALLOCATION OF ASSETS AND

## THE IMPACT ON DEFENDANT'S RIGHTS AND THE TRIAL DATE

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA JULIAN ANDRE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 5, 2020

/s/ H. Dean Steward
H. Dean Steward

13