NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6683
    Facsimile: (213) 894-6269
    Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone:  (714) 338-3598
    Facsimile:  (714) 338-3708
    Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

#### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>MICHAEL JOHN AVENATTI,<br><br>       Defendant. | SA CR No. 19-061-JVS<br><br>GOVERNMENT'S BRIEF REGARDING<br>DEFENDANT MICHAEL JOHN AVENATTI'S<br>REPRESENTATION ISSUES |

Pursuant to the Court's June 1, 2020, Order (CR 169), plaintiff

United States of America, by and through its counsel of record, the

United States Attorney for the Central District of California and

Assistant United States Attorneys Julian L. André and Brett A. Sagel,

hereby files its brief regarding defendant MICHAEL JOHN AVENATTI's representation issues.

This brief is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 5, 2020                    Respectfully submitted,

                                       NICOLA T. HANNA
                                       United States Attorney

                                       BRANDON D. FOX
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       _____/s/_____
                                       JULIAN L. ANDRÉ
                                       BRETT A. SAGEL
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   ARGUMENT......................................................3

      A.    Defendant's Sixth Amendment Right to Counsel Cannot Be
            Used to Manipulate the Proceedings and Delay this
            Trial.................................................3

      B.    Defendant Has Failed to Diligently Prepare for Trial
            and Has Intentionally Used His Representation Issues
            as a Means to Delay this Case.........................8

      C.    There Is Ample Time for Defendant to Prepare for Trial
            and, If Necessary, Resolve Any Representation Issues.....19

III.  CONCLUSION....................................................20

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**FEDERAL CASES**

Caplin & Drysdale, Chartered v. United States,
        491 U.S. 617 (1989).............................................3

In re Eagan Avenatti, LLP,
        No. 8:19-bk-13560-CB (C.D. Cal. 2019).........................11

In re The Trial Group LLP,
        No. 8:19-BK-10822 (C.D. Cal. 2019)............................18

Landrum v. Mitchell,
        625 F.3d 905 (6th Cir. 2010)...................................5

Morris v. Slappy,
        461 U.S. 1 (1983)...........................................3, 4

Ungar v. Sarafite,
        376 U.S. 575 (1964)............................................4

United States v. Avenatti,
        No. 1:19-cr-373-PGG (S.D.N.Y. 2019)...........................10

United States v. Avenatti,
        No. 1:19-cr-374-JMF (S.D.N.Y. 2019).........................9, 10

United States v. Cordy,
        560 F.3d 808 (8th Cir. 2009)...................................5

United States v. Delgado-Marrero,
        744 F.3d 167 (1st Cir. 2014)...................................5

United States v. Eiland,
        738 F.3d 338 (D.C. Cir. 2013)..................................5

United States v. Flynt,
        756 F.2d 1352 (9th Cir. 1985)...............................4, 5

United States v. Gonzalez-Lopez,
        548 U.S. 140 (2006)............................................3

United States v. Gross,
        424 F. Supp. 3d 800 (C.D. Cal. 2019).........................14

United States v. Heine,
        No. 3:15-cr-238-SI,
        2017 WL 3184714 (D. Or. July 26, 2017)......................6, 7

United States v. Heredia,
        483 F.3d 913 (9th Cir. 2007)...................................4

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

<u>United States v. Kelm</u>,
 827 F.2d 1319 (9th Cir. 1987)...................................4

<u>United States v. Lawrence</u>,
 607 Fed. Appx. 756 (9th Cir. 2015)............................6

<u>United States v. Moreland</u>,
 622 F.3d 1147 (9th Cir. 2010)..............................4, 6

<u>United States v. One Honda Aircraft</u>,
 SA CV No. 19-1988-JVS (KES) (C.D. Cal. 2019)..................18

<u>United States v. Smith</u>,
 714 Fed. Appx. 701 (9th Cir. 2017).........................5, 6

<u>United States v. Sutcliffe</u>,
 505 F.3d 944 (9th Cir. 2007)..................................7

<u>United States v. Thompson</u>,
 587 F.3d 1165 (9th Cir. 2007)..............................5, 7

<u>United States v. Trestyn</u>,
 646 F.3d 732 (10th Cir. 2011).................................5

<u>United States v. Turner</u>,
 897 F.3d 1084 (9th Cir. 2018)..............................5, 7

<u>United States v. Vallery</u>,
 108 F.3d 155 (8th Cir. 1997)..................................3

<u>United States v. Vincent</u>,
 416 F.3d 593 (7th Cir. 2005).................................14

<u>United States v. Wilkes</u>,
 662 F.3d 524 (9th Cir. 2011).................................14

<u>Wheat v. United States</u>,
 486 U.S. 153 (1988)...........................................3

**STATE CASES**

<u>Avenatti v. Avenatti</u>,
 No. 17D009930 (Cal. Superior Ct.)............................11

<u>In re: Avenatti</u>,
 No. 19-TE-30259 (Cal. State Bar Ct.).........................11

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

**FEDERAL STATUTES**

18 U.S.C. § 3006A(c)..............................................10

18 U.S.C. § 3161(h)(7)(C).........................................5

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2  **I.    INTRODUCTION**

3         Defendant MICHAEL JOHN AVENATTI ("defendant") is charged in a

4  36-count indictment in this district with wire fraud; willful failure

5  to pay over withheld payroll taxes; endeavoring to obstruct the

6  administration of the Internal Revenue Code; willful failure to file

7  tax returns; bank fraud; aggravated identity theft; and making false

8  declarations and providing false testimony in bankruptcy proceedings.

9  Defendant was separately charged with extortion and fraud offenses in

10  two separate prosecutions in the Southern District of New York

11  ("SDNY").

12         Although defendant and his counsel have repeatedly acknowledged

13  that the charges defendant faces in this district are the most

14  significant and complex, defendant appears to have made a strategic

15  decision not to provide his retained counsel in this case with the

16  resources necessary to prepare for trial in a timely manner.

17  Instead, defendant has chosen to devote his resources to his other

18  prosecutions or ongoing civil matters, and to continue to fund his

19  lavish lifestyle (prior to his bail revocation).  In every other

20  criminal and civil case in which defendant is involved, he has

21  retained multiple attorneys and/or law firms to represent him.  Yet

22  in this case, in which he is facing the most serious charges and

23  significant criminal exposure, defendant has chosen to be represented

24  by a solo practitioner who has spent the past 10 months complaining

25  that he does not have the resources needed to even review the

26  discovery.

27         The Court has directed the parties to provide briefing regarding

28  trial delays caused by a defendant's failure to deploy the assets

necessary to prepare for trial in a timely and efficient manner.  (CR 166.)  Specifically, the Court has asked "what are the consequences where a defendant has retained counsel of his choice, but not provided the resources for counsel to perform in a constitutionally-effective manner?" (CR 166.)  The short answer is that the defendant's lack of diligence, refusal to devote the necessary resources to his defense, and failure to resolve any ongoing representation issues in timely manner would appropriately serve as a basis to deny defendant any further continuances in this case. Defendant has a Sixth Amendment right to assistance of counsel, but that right is circumscribed by the need to maintain the fair, orderly, and efficient administration of justice.  Defendant may not use his right to counsel as a ploy to delay this prosecution, which is what defendant has attempted to do for the past 14 months.

Thus, going forward, it is critical that the Court address defendant's representation issues and advise defendant of the consequences of any further dilatory tactics or attempts at gamesmanship.  Defendant has more than enough time to resolve any potential representation issues and ensure that he and his counsel are prepared to proceed to trial on December 8, 2020.  To the extent defendant has the ability to do so, he can choose to devote additional financial resources to his defense.  If defendant lacks the necessary resources, he can submit a financial affidavit and seek CJA funding or appointment of counsel.  Defendant can also choose to do nothing to resolve these issues and proceed to trial on December 8.  But defendant cannot be allowed to do nothing, and then later claim he is entitled to another lengthy continuance because counsel

of his choice lacked the necessary resources to prepare for trial in a timely manner.

This prosecution has now been pending for over 14 months and his victims deserve their day in court.  Defendant should not be allowed to hide behind a claim that his counsel lacks resources or use his representation issues as a means to manipulate the proceedings and further delay this trial.

**II.  ARGUMENT**

> **A.   Defendant's Sixth Amendment Right to Counsel Cannot Be Used to Manipulate the Proceedings and Delay this Trial**

The Sixth Amendment guarantees criminal defendants the right to assistance of counsel, including the "right of a defendant who does not require appointed counsel to choose who will represent him." Wheat v. United States, 486 U.S. 153, 159 (1988).  But that right is not absolute; it "is circumscribed in several important respects." Id.  For example, the "right to counsel of choice does not extend to defendants who require counsel to be appointed for them." United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006).  A defendant "may not insist on representation by an attorney he cannot afford." Wheat, 486 U.S. at 159; see also Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-625 (1989).

A defendant's right to choice of counsel also "must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." United States v. Vallery, 108 F.3d 155, 157 (8th Cir. 1997).  "Trial judges necessarily require a great deal of latitude in scheduling trials" and "are vested with broad discretion in matters of continuances." Morris v. Slappy, 461 U.S. 1, 11-12 (1983).  Thus, "only an unreasoning and arbitrary

1    'insistence upon expeditiousness in the face of a justifiable request

2    for delay' violates the right to assistance of counsel." Id. at 11-

3    12 (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)).  "Not every

4    restriction on counsel's time or opportunity to investigate or to

5    consult with his client or otherwise to prepare for trial violates a

6    defendant's Sixth Amendment right to counsel." Morris, 461 U.S. at

7    12.  And "a court must be wary of against the 'right of counsel'

8    being used as a ploy to gain time or effect delay." United States v.

9    Kelm, 827 F.2d 1319, 1322 (9th Cir. 1987), overruled on other grounds

10   by United States v. Heredia, 483 F.3d 913 (9th Cir. 2007) (en banc).

11       When a continuance request implicates the right to counsel, a

12   court does not abuse its discretion unless the denial of a

13   continuance was "arbitrary or unreasonable." United States v.

14   Moreland, 622 F.3d 1147 (9th Cir. 2010); United States v. Flynt, 756

15   F.2d 1352, 1358 (9th Cir. 1985) ("We do not find a clear abuse of

16   discretion unless, after carefully evaluating all the relevant

17   factors, we conclude that the denial was arbitrary or

18   unreasonable.").  The Court must balance several factors to evaluate

19   such continuance requests, including:

20       (1) the extent of a defendant's diligence in his efforts to
         ready his defense prior to the trial date;
21

22       (2) whether the continuance would serve a useful purpose if
         granted;

23       (3) the extent to which granting the continuance would have
         inconvenience the Court and the opposing party, including
24       its witnesses; and

25       (4) the extent to which defendant may suffer harm as a
         result of the denial of a continuance.
26

27

28

1    <u>Id.</u> at 1359 (internal citations omitted).[1]

2        Crucially, it is also necessary for the Court to evaluate

3    "whether the delay is the defendant's fault."  <u>United States v.</u>

4    <u>Turner</u>, 897 F.3d 1084, 1102 (9th Cir. 2018), <u>cert. denied,</u> 139 S. Ct.

5    1234, 203 L. Ed. 2d 247 (2019), (quoting <u>United States v. Thompson</u>,

6    587 F.3d 1165, 1174 (9th Cir. 2007)).[2]  Indeed, the Ninth Circuit has

7    repeatedly rejected claims that a denial of a continuance request

8    violated a defendant's right to counsel, where defendant's own

9    actions or inactions led to the delay.

10       In <u>United States v. Smith</u>, 714 Fed. Appx. 701, 706-07 (9th Cir.

11   2017), the Ninth Circuit rejected defendant's claim that he was

12   denied effective representation because the district court failed to

13   grant him a continuance.  Defendant had insisted on representing

14   himself until ten days before trial, when he sought appointment of

15   counsel and a sixth trial continuance.  <u>Id.</u>  The Ninth Circuit held

16   that the district court had not abused its discretion, stating:

---

[1] The Speedy Trial Act also states that a continuance "shall not be granted because of . . . lack of diligent preparation."  18 U.S.C. § 3161(h)(7)(C).

[2] Other circuits also require trial courts to evaluate defendant's diligence and conduct when considering continuance requests.  <u>See, e.g.</u>, <u>United States v. Delgado-Marrero</u>, 744 F.3d 167, 195-96 (1st Cir. 2014) (considering whether defendant "contributed to his or her perceived predicament"); <u>United States v. Eiland</u>, 738 F.3d 338, 355 (D.C. Cir. 2013) (considering whether the requested delay is "dilatory, purposeful, or contrived" and whether "defendant contributed to the circumstances which gives rise to the requested continuance"); <u>United States v. Trestyn</u>, 646 F.3d 732 (10th Cir. 2011) (affirming denial of continuance where defendant waited until the last minute to retain counsel); <u>Landrum v. Mitchell</u>, 625 F.3d 905, 927-28 (6th Cir. 2010) (considering whether "defendant contributed to the circumstances giving rise to the request"); <u>United States v. Cordy</u>, 560 F.3d 808 (8th Cir. 2009) (considering the "conduct of the opposing party and whether a lack of cooperation has contributed to the need for a continuance").

1
2
3

> Smith was clearly responsible for the delay in counsel's
> appointment, counsel's inability to fully engage in active
> trial preparation, and counsel's lack of insight into the
> evidence, strategies, and theories of the case.

4 Id. at 707.

5      Similarly, in United States v. Lawrence, 607 Fed. Appx. 756 (9th
6 Cir. 2015), the Ninth Circuit affirmed the district court's denial of
7 a continuance request because most of the delays were caused by
8 defendant.  Because defendant's "behavior was consistent with
9 dilatory tactics" and "his course of conduct was consistent with
10 'gamesmanship' utilized to avoid going to trial," the district court
11 did not abuse its discretion in denying the continuance request.  Id.

12      And, in Moreland, 622 F.3d at 1158, defendant had repeatedly
13 refused to withdraw his waiver of counsel and accept representation,
14 despite the court's warning that appointed counsel would be "severely
15 handicapped" if he were not defendant's attorney from the outset.
16 The Ninth Circuit held that the district court did not abuse its
17 discretion in refusing to grant more than a two-week continuance
18 after counsel had been appointed because defendant "was clearly to
19 blame both for the delay and for the district court not granting a
20 longer continuance."  Id.

21      The District of Oregon's unpublished decision in United States
22 v. Heine, No. 3:15-cr-238-SI, 2017 WL 3184714 (D. Or. July 26, 2017),
23 is also instructive.  There, the court denied defendant's request for
24 a four-month continuance so she could attempt to obtain additional
25 funding for her defense from the bank that had been paying her legal
26 fees.  Id. at *4-5.  Although defendant and her team of six lawyers
27 had been diligent in preparing for trial, the court nevertheless
28 denied a continuance request, in part, because the defendant had

failed to anticipate and promptly address issues relating to the costs of her criminal defense. Id. at *5. The court also noted that if defendant lacked her own financial resources to contribute to her defense, she could have submitted a financial affidavit and sought financial assistance under the Criminal Justice Act, but had failed to do so. Id.

Moreover, the Ninth Circuit has repeatedly held that a defendant can waive his Sixth Amendment rights through his conduct. Turner, 897 F.3d at 1103. For example, in United States v. Sutcliffe, the Ninth Circuit held that defendant waived his right to counsel because he "manipulated the proceedings and his relationships with five appointed lawyers as to be able to claim that he wants to be represented by counsel while at the same time making it impossible for any competent lawyer to carry out his professional responsibilities." 505 F.3d 944, 955 (9th Cir. 2007); see also Thompson, 587 F.3d at 1174 ("[A] continuance may be denied even when the denial results in the defendant's being unrepresented at trial.") (citations omitted).

Although federal courts have most often addressed the interplay between a defendant's right to counsel and continuance requests in situations involving substitution of counsel, appointment of counsel, or a defendant's request to represent himself pro se, the case law makes abundantly clear that defendants may not use representation issues for "purposes of delay" to "manipulate the proceedings." Here, defendant's specific tactics may be different, but his game appears to be the same -- delay this trial as long as possible. This is improper and the Court should take the necessary actions to ensure it does not occur.

### B. Defendant Has Failed to Diligently Prepare for Trial and Has Intentionally Used His Representation Issues as a Means to Delay this Case

Defense counsel has been complaining about the volume of discovery and his ability to prepare for trial for nearly one year. Yet, defendant has taken no steps to address those concerns whether by devoting additional resources to this prosecution or applying for such resources from the Court.  Rather, defendant appears content to merely use such complaints as a basis to further delay this trial.

At a minimum, defendant's failure to devote additional resources to this case demonstrate a lack of diligence, which would, by itself, justify the Court denying any further trial continuances.  The record, however, suggests that defendant's failure to devote additional resources to this case or seek such resources from the Court has been an intentional choice, designed to manipulate the proceedings and delay the trial.

First, defense counsel's concerns regarding the volume of discovery and his ability to defend this case in a timely matter are not new issues.  These issues have been percolating for nearly one year.  At one of the first status conferences in this case in July 2019, defense counsel noted that the discovery in this case was extremely voluminous, "millions and millions of pages," and raised concerns about having to review "a mountain of material."  (7/8/2019 RT 12:16-13:23.)

Defendant raised this issue again during the August 2019 status conference and motion hearing.  (CR 64.)  Specifically, in advocating for a June 2020 trial date, Mr. Steward noted that he is a solo practitioner, doesn't have any associates, and it would therefore be difficult for him to review all of the discovery in the case.

8

(8/26/2019 RT 8:6-13.)  When the Court asked counsel whether it would be "more efficient" to take on associate or a paralegal to assist him, Mr. Steward acknowledged that he may need to do so.  (Id. at 8:14-9:7.)  Mr. Steward, however, did not do so.  Instead, in December 2019, Mr. Steward again raised concerns about his ability to review the discovery in this case due to the volume of materials and his other trial commitments, including his representation of defendant in the SDNY fraud case, United States v. Avenatti, No. 1:19-cr-374-JMF.[3]  (See 12/2/2019 RT 5:23-7:12.)

In January 2020, while defendant was awaiting trial in the SDNY extortion case, Mr. Steward reiterated his concerns about the volume of discovery and his ability to defend this case stating, "Just the sheer volume of material, complexity, and scope of the indictment, compared to the two in the Southern District of New York, this is the bigger one by far, and I remain for the most part by myself on this." (1/31/2020 RT 12:9-13:9.)  When the Court again told Mr. Steward "this is the type of case where if you need to augment your resources you need to do it," counsel responded:

> Well, I can't do that, Your Honor.  I'm unable to do that.
> This is going to be a solo shot for me.  I don't have the
> resources to do that, and I'm not in a position to apply
> for court funding for that . . . I'm stuck, so I'll do the
> best I can.

(Id. at 13:10-19.)  Mr. Steward said that the situation "troubles" him, but that it was "not possible" for defendant to augment counsel's resources for this case.  (Id. at 13:20-14:5.)

---

[3] Although this case had already been set for trial in May 2020, defendant specifically requested, through Mr. Steward, that the SDNY fraud case be set for trial in April 2020 -- less than one month before the trial in this matter.

1    Defendant has done nothing to address his counsel's repeated

2  concerns.  He clearly has not augmented counsel's resources.  Nor has

3  defendant sought to apply for court funding to do so, despite being

4  aware that it is possible for him to do so and having done so in the

5  past (CR 28).[4]  Rather, to this day, defendant continues to argue

6  that he is entitled to further continuances because he is represented

7  by "a solo practitioner with limited resources and a limited ability

8  to review the over 1,000,000 pages of discovery."  (CR 164 at 5.)

9    Second, the Court can reasonably infer that defendant's choice

10  of counsel (or at least his failure to provide his chosen counsel

11  with sufficient resources) is intentionally designed to delay this

12  trial.  Defendant's decision to be represented in this case by

13  Mr. Steward, "a solo practitioner with limited resources" (CR 164 at

14  5), stands in stark contrast to how defendant has approached every

15  other case in which defendant is involved.  In every other case,

16  defendant is represented by multiple attorneys and/or law firms.  In

17  the SDNY Nike extortion case, defendant was represented at trial by

18  seven different attorneys.  United States v. Avenatti, No. 1:19-cr-

19  373-PGG.  In the SDNY fraud case, defendant was at one point

20  represented by four attorneys, including Mr. Steward,[5] and is still

21  represented by three attorneys.  Avenatti, No. 1:19-cr-374-JMF.

22  Defendant is represented by four attorneys from two separate law

23  firms in connection with his State Bar disciplinary proceedings, In

24

25    [4] The Criminal Justice Act expressly provides for appointment of
counsel "[i]f at any stage of the proceedings ... the court finds
26  that the [defendant] is financially unable to pay counsel whom he had
retained."  18 U.S.C. § 3006A(c).
27

28    [5] In February 2020, Mr. Steward withdrew from the SDNY fraud
case.  Defendant, however, is still represented by three other
attorneys in that case.

re: Avenatti, No. 19-TE-30259.  In his divorce proceedings against
his current wife, defendant is represented by Stegmeier, Gelbart,
Schwartz & Benavente, LLP, a well-known mid-size family law firm in
Orange County.  Avenatti v. Avenatti, Case No. 17D009930 (Cal.
Superior Ct.).  And, as recently as last week, defendant was
represented by two attorneys from Shulman Bastian Freidman & Bui LLP
in connection with the current bankruptcy proceedings involving EA
LLP.  In re Eagan Avenatti, LLP, No. 8:19-bk-13560-CB (C.D. Cal.).[6]

Defendant was a sophisticated and successful trial attorney who
ran his own law firm; he knows what is necessary to prepare for a
trial of this magnitude.  In every single one of his other cases,
both criminal and civil, defendant has retained multiple attorneys
and/or law firms to represent his interests.  But in this case, which
defendant's own attorney refers to as the "bigger one by far"
(1/31/2020 RT 13:1-5) and in which defendant is facing the most
extensive criminal exposure, he has chosen to be represented by a
"solo practitioner with limited resources" (CR 164 at 5).  Defendant
was present at nearly all of the hearings in which his counsel raised
his limitations as a solo practitioner, yet defendant has done
nothing to augment those resources.

In his most recent status report, defendant took issue with the
government's representation that he had seven attorneys in the SNDY
extortion case.  (CR 164 at 5, n.7).  Specifically, defendant argues
that this is inaccurate because he only paid two of his attorneys,

---

[6] Notably, on May 28, 2020, defendant filed two separate
objections in the EA LLP bankruptcy case.

and that the rest represented him <u>pro bono</u>.[7]  (<u>Id.</u>)  If true, this

changes nothing.  Defendant still managed to retain seven attorneys,

including a jury consultant, for a two-week trial involving only

three charges and events that spanned little over one week.

Defendant had no issues obtaining counsel when he wanted to do so.

Additionally, the financial records submitted with the

government's bail revocation motion and the government's opposition

to defendant's motion for release, establish that between May 2019

and November 2019 defendant deposited well over $1.1 million dollars

into his various bank accounts.[8] (CR 78, Ex. 39; CR 120, Ex. B.)

Defendant conveniently ignores that he received this money or that he

used these funds to pay two of his attorneys in the SDNY extortion

case approximately $300,000 in May 2019 (CR 78, Ex. 42) -- nearly ten

times the approximately $32,500 defendant appears to have paid Mr.

Steward (CR 78, Ex. 42; CR 120, Ex. B at 35).[9]  During this same time

period, defendant also appears to have paid his divorce lawyers and

his lawyers in the State Bar disciplinary proceedings as much, if not

---

[7] Contrary to defendant's claims, the government does not
believe it has full knowledge of defendant's finances --
particularly, in light of defendant's extensive efforts to conceal
his assets.

[8] This $1.1 million figure represents new deposits defendant
made into his known bank accounts between May 2019 and November 2019,
and does not include the re-deposits of cashier's checks or money
sent back to defendant from his ex-wife.  Although the government
maintains that defendant committed fraud by, among other things,
concealing these funds from the creditors to whom he owed millions of
dollars, the fact remains that he received this money and spent the
vast majority of it on anything and everything but his defense in
this case.

[9] The government is relying upon the bank records from May 2019
through January 2020 at Chase Bank, US Bank, and Southland Credit
Union, which were included in prior filings.  (CR 78; CR 120.)  The
government does not know if defendant has paid, or promised to pay,
any of his counsel from sources outside of these three bank accounts
in the last year.

more, than counsel in this case.  (See CR 78, Exs. 39-42; CR 120, Ex. B.)

Moreover, as the Court is aware from the financial records the government submitted, defendant spent exorbitant amounts of money funding his lavish lifestyle prior to the revocation of his bail, including over $11,000 a month on his luxury apartment in Los Angeles.  (See CR 78, Exs. 39-42; CR 120, Ex. B.)  Indeed, defendant appears to have devoted more financial resources in May 2019 to buy a Mercedes Benz (approximately $53,000) and in July and August 2019 to maintain his membership with Exclusive Resorts (approximately $35,700) than to his defense in this case.[10]  (See CR 78, Ex. 43 at 17, Ex. 45 at 14-15.)

Third, defendant has never provided this Court with any specific information as to what defendant or his counsel have actually done to prepare for trial in the past 14 months, let alone the 10 months prior to defendant's bail revocation.  Instead, all defendant and his counsel have offered this Court are misleading complaints regarding discovery, and vague statements regarding their efforts to prepare for trial.  And the rare statements defendant has made regarding his actual trial preparations raise more concerns than provide answers.

For example, during the last status conference and in his related status report, defendant suggested that he needs to review each and every page of the discovery.  (See CR 167.)  At best,

---

[10] The government fully recognizes that Mr. Steward may have agreed to represent defendant at a reduced fee or pro bono. Defendant's specific arrangement with Mr. Steward is not the government's concern and need not be disclosed to the government. Should defendant wish to provide the Court with further information regarding his arrangement with Mr. Steward, the government has no objection to him doing so during in camera proceedings without government counsel present.

defendant's comment are disingenuous.  Defendant and his counsel are both very experienced trial attorneys who know how to efficiently and effectively handle document-intensive cases.  Thus, it should be "evident to all" that "a review of the discovery produced does not require counsel to manually review [] millions of pages of documents."  United States v. Gross, 424 F. Supp. 3d 800, 803 (C.D. Cal. 2019).  Rather, "a variety of electronic searches are generally used both to identify relevant documents and to identify irrelevant and duplicate documents, which can then be culled from the data to be reviewed."  Id.  And the mere fact that discovery in this case is voluminous does not require the Court to provide defendant with an unlimited amount of time to review such discovery.  See United States v. Wilkes, 662 F.3d 524, 543 (9th Cir. 2011) (holding district court did not abuse its discretion in denying defendant's request to continue the trial to "enable his counsel to review voluminous discovery"); see also United States v. Vincent, 416 F.3d 593, 599 (7th Cir. 2005) (holding defendant's Sixth Amendment rights were not violated by denial of trial continuance where the district court properly considered "the amount of time to prepare, defendant's failure to examine the available discovery, and his familiarity with the facts").

The more troubling possibility is that counsel's recent comments demonstrate that defendant has not actually made any good faith effort to review the discovery.  Since the outset of this case, the government has been producing the discovery in this case to defendant with database load-files so that they can be readily searched, sorted, and organized in whichever document review platform defendant

1  and his counsel had chosen.[11]  (<u>See, e.g.</u>, 5/15/2019 RT 5:8-11.)  If

2  defendant and his counsel have actually been reviewing the discovery

3  in any relatively modern document review platform, they would

4  undoubtedly have been able to make substantial progress and have

5  already been able to locate key documents using basic search terms.

6  The only reason defendant or his counsel would need to review

7  documents on a "page by page" basis is if defendant has intentionally

8  decided to not have his counsel load the discovery into a document

9  review platform, a decision which would be tantamount to defendant

10  tying his counsel's hands behind his back for the past year.

11      <u>Fourth</u>, defendant has already attempted to play games with his

12  representation during this case.  Although defendant was represented

13  by retained counsel from Bienert Katzman PC during his initial

14  appearance in this district on April 1, 2019 (CR 10), defendant

15  appeared for his post-indictment arraignment on April 29, 2019,

16  without counsel (CR 23).  As a result, the Federal Public Defender

17  represented him at that time (CR 23), and the Court scheduled a

18  status conference on May 7, 2019, to address defendant's

19  representation issues (CR 22).

20      On May 7, 2019, defendant appeared before this Court for a

21  status conference to address defendant's representation issues, and

22  was again represented by the Federal Public Defender.  (CR 27.)  At

23  defendant's request, the Court continued the status conference until

24  May 15, 2019, in order to allow defendant additional time to

25  "finalize" his representation with retained counsel.  (CR 27.)  The

26

27  _____

28      [11] The government's Privilege Review Team, however, made a number
of informal productions to defendant last year at defendant's
request.  These materials were not produced with database load-files.

Court, however, advised defendant that by May 15, 2019, defendant would have to choose one of three options:  (1) retain private counsel; (2) submit a financial affidavit and seek appointment of counsel; or (3) seek to represent himself after a <u>Faretta</u> inquiry.  (CR 27.)

On May 14, 2019, despite having just received a $1,000,000 payment for certain legal work (<u>see</u> CR 99, § III.B.1), defendant submitted an <u>ex parte</u> application for an order appointing the Federal Public Defender to represent him in this matter, in which he claimed that he lacked the financial wherewithal to "pay fully for retained counsel" (CR 28).  But, rather than submit the required financial affidavit, defendant requested "that the Court defer determination of the amount of contribution until the end of the case in light of the complexity of his financial situation and the case . . . ."  (CR 28.)  The Court denied defendant's <u>ex parte</u> application that same day.  (CR 29.)  The next day, May 15, 2019, defendant retained Mr. Steward.  (CR 33.)

In January 2020, defendant was also briefly represented by Thomas Warren and Daniel Dubin from Pierce Bainbridge Beck Price & Hecht LLP ("Pierce Bainbridge").[12]  Although the government understands that Pierce Bainbridge had already been assisting defendant with this prosecution for months (at least informally), Mr. Warren first appeared in this case during defendant's bond revocation hearing in January 2020.[13]  (CR 83.)  Ten days later,

[12] Mr. Warren and Mr. Dubin also represent defendant in the SDNY fraud case, the State Bar disciplinary proceedings, and a number of civil judgment debtor proceedings.

[13] For example, during the last status conference, Mr. Steward acknowledged that it was Mr. Warren (not Mr. Steward) who last

however, Mr. Warren and Mr. Dubin both filed requests to withdraw as counsel (CR 90), which were granted (CR 91).[14]   The government suspects that Mr. Warren did not appear in this case at an earlier date because defendant wanted to preserve defendant's ability to argue that he is represented by "a solo practitioner with limited resources and a limited ability to review the over 1,000,000 pages of discovery" (CR 164 at 5) and/or use Mr. Warren's substitution as a basis for a further continuance.

Fifth, as the government explained at the outset of this case, defendant has a pattern and practice of using delay tactics to avoid responsibility for his conduct.  For example, as alleged in the Indictment, defendant repeatedly sought to lull his former legal clients in an effort to prevent them from discovering that he had embezzled their money. (See CR 16 ¶ 7.)  Similarly, defendant repeatedly sought to impede and obstruct an Internal Revenue Service ("IRS") collection action relating to defendant's company, Global Baristas US LLC ("GBUS"), in an effort to avoid having to pay to the IRS the payroll taxes that GBUS had withheld from its employees paychecks.  (See CR 16 ¶¶ 10-26.)  And in March 2019, defendant filed a bankruptcy petition on behalf of EA LLP in In re The Trial Group, No. 8:19-BK-10822-CB, for the specific purpose of delaying a judgment debtor examination of defendant scheduled for the following day. See In re The Trial Group LLP, No. 8:19-BK-10822, Dkt. Nos. 35, 39 (C.D. Cal. 2019).

---

accompanied defendant to review the EA LLP server at IRS-CI's offices in October 2019.  (6/1/2020 RT 8:24-9:12.)

[14] Mr. Steward said that Pierce Bainbridge withdrew due to conflict of interest concerns the government raised and which defendant did not want to litigate. (1/31/2020 RT 15:10-23.)

1    Finally, defendant will undoubtedly attempt to blame the

2  government for his inability to resolve these representation issues,

3  as he has done previously (CR 167 at 3).  Defendant's allegations are

4  baseless and frivolous.  It is not the government's fault that

5  defendant engaged in criminal conduct in multiple federal

6  jurisdictions and was thus indicted in this district and in the SDNY.

7  It is not the government's fault that defendant is millions of

8  dollars in debt to his second wife, various taxing authorities, and

9  his former law partner.  Nor is it the government's fault that

10  defendant chose to engage in fraudulent conduct while on pretrial

11  release in order to conceal his assets from those creditors.  And

12  contrary to defendant's prior claim (CR 167 at 3), the only asset the

13  government seized in this case is a private plane defendant purchased

14  with money he stole from Client 2, and for which defendant has not

15  even filed a claim in the related civil forfeiture proceedings.

16  United States v. One Honda Aircraft, SA CV No. 19-1988-JVS (KES).

17  Defendant is clearly speaking out of both sides of his mouth by

18  claiming, on one hand, that defendant is "forced" and "required" to

19  pay attorneys in numerous criminal and civil cases (CR 167 at 3), and

20  on the other hand that the government is preventing him from paying

21  his attorneys.

22    In sum, under the applicable case law regarding defendant's

23  right to assistance of counsel, all of these facts would clearly

24  justify this Court denying any future continuance requests by

25  defendant.

26

27

28

### C.   There Is Ample Time for Defendant to Prepare for Trial and, If Necessary, Resolve Any Representation Issues

Despite defendant's apparent refusal to devote resources to this case, there is no reason why defendant and his current counsel cannot now be adequately prepared for trial by December 8, 2020 (assuming it is safe to hold trials at that time).  Defendant has already had over 14 months to prepare for this trial.  Although defendant's counsel may be "a solo practitioner," he remains one of the most experienced criminal defense attorneys in this district.[15]  And, as the government noted in its response to defendant's last continuance request (CR 122), the charges in this case are straight-forward, defendant is well aware of the evidence supporting the charges from the detailed indictment and search warrant affidavits, and defendant has had access to the vast majority of the relevant discovery, including key witness summaries, for one year (see CR 124).

Nevertheless, the government does believe that the Court should immediately seek to address defendant's representation issues and advise defendant of the consequences of any further dilatory tactics or attempts at gamesmanship.  Now that the trial has been continued to December 2020, defendant has more than enough time to resolve any potential representation issues that may still exist without causing any further trial delays.  To the extent defendant has the ability to

---

[15]   The government notes that defendant's most recent status reports (CR 164; CR 165; CR 167) do not appear to have been written by Mr. Steward. (See 6/1/2020 RT 17:1-6 ("The Court is very familiar with my writing.  I am usually very succinct.").) Thus, it appears that either (1) defense counsel has already obtained additional assistance with this case and failed to disclose that assistance to the Court; or (2) defendant is personally drafting large portions of the filings despite previously claiming he lacked computer access to review the discovery.

do so, he can choose to devote additional financial resources to his defense.  If defendant lacks the necessary resources to augment his defense, he can submit a financial affidavit and seek CJA funding or appointment of counsel, or obtain <u>pro bono</u> legal services as he claims to have done in other cases.  Defendant can also choose to do nothing to resolve these issues and proceed to trial on December 8.  But defendant cannot and should not be allowed to do nothing, and then claim he lacked the necessary resources to prepare for trial in a timely manner and is entitled to a further continuance.

Similarly, if defense counsel has any lingering concerns about his ability to prepare for trial by December 8, 2020, or to provide defendant effective assistance of counsel, he should disclose those concerns to defendant and the Court now so they can be resolved sufficiently in advance of trial to not cause any further delays.

## III. CONCLUSION

For the foregoing reasons, the government submits that "where a defendant has retained counsel of his choice, but not provided the resources for counsel to perform in a constitutionally-effective manner" the appropriate consequence is to deny defendant any further continuances of the trial date.  Indeed, the case law makes clear that defendant's lack of diligence, refusal to devote the necessary resources to his defense, and failure to resolve any ongoing representation issues in timely manner would all just denying defendant any further continuances in this case.  Once the current public health crisis regarding COVID-19 subsides and it is safe to hold a jury trial, defendant should be required to proceed.