NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6683
     Facsimile: (213) 894-6269
     Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone:  (714) 338-3598
     Facsimile:  (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>         v.<br><br>MICHAEL JOHN AVENATTI,<br><br>     Defendant. | SA CR No. 19-061-JVS<br><br><u>GOVERNMENT'S STATUS REPORT</u> |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Julian L. André, hereby files its Status Report regarding the defendant's use of computer during home-confinement and defendant's

1  access to EA LLP digital devices in the custody of the Internal

2  Revenue Service.

3      This Status Report is based on the information currently

4  available to the United States Attorney Office for the Central

5  District of California's ("USAO") Prosecution Team, the files and

6  records in this case, and such further evidence and argument as the

7  Court may permit.  This Status Report has also been reviewed by the

8  Privilege Review Team Assistant United States Attorneys, Patrick R.

9  Fitzgerald and Joseph B. Woodring.

10  Dated: June 5, 2020              Respectfully submitted,

11                                  NICOLA T. HANNA
                                    United States Attorney
12
                                    BRANDON D. FOX
13                                  Assistant United States Attorney
                                    Chief, Criminal Division
14

15                                  _____/s/_____
                                    BRETT A. SAGEL
16                                  JULIAN L. ANDRÉ
                                    Assistant United States Attorneys
17
                                    Attorneys for Plaintiff
18                                  UNITED STATES OF AMERICA

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

I.    INTRODUCTION...................................................1

II.   INTERNET-DISABLED COMPUTER.....................................2

III.  ACCESS TO THE EA LLP DIGITAL DEVICES...........................3

      A.   Background on the EA LLP Devices.........................3

      B.   The Government's Attempts to Meet-and-Confer Regarding
           the EA LLP Digital Devices...............................6

      C.   Defendant's Future Review of EA LLP Digital Devices......9

IV.   CONCLUSION....................................................15

**GOVERNMENT'S STATUS REPORT**

I.   **INTRODUCTION**

During the status conference on June 1, 2020, and the accompanying minute order (CR 169), this Court ordered the parties to provide further briefing addressing: (1) the use of a computer by defendant; and (2) defendant's access to digital devices maintained in the custody of Internal Revenue Service-Criminal Investigation ("IRS-CI").[1]

The government has no objection to defendant having an internet-disabled computer to review discovery.[2]  The parties have reached an agreement as to defendant's use of a computer, which is reflected in the separately lodged proposed modification of defendant's conditions of temporary release.  The government understands that defendant's counsel is in the process of securing a computer for defendant consistent with the parties' agreement.

The government, however, is not in a position to further address defendant's request to access the Eagan Avenatti LLP ("EA LLP") server and other EA LLP digital devices (collectively, "EA LLP digital devices")[3] maintained by IRS-CI at this time because defendant has refused to provide the government with any further

---

[1] This Court referred to the second issue as "providing remote access to the IRS terminal."  (CR 169.)  As will be described further below, there is not a "terminal" that can be remotely accessed.

[2] At no point has the government objected to this, and the government still is at a loss as to why defendant waited approximately five weeks into his release to claim he could not review discovery.

[3] As the government has provided defendant with a complete forensic copy of the GBUS digital devices and defendant's digital devices, the only digital devices defendant presumably wants access to are the EA LLP digital devices.

1    information regarding his request, let alone attempt to confer with

2    the government in good-faith as required by the Court.  As this Court

3    previously held, defendant does not have an independent right to

4    access the EA LLP devices because these devices do not belong to him.

5    The scope and privilege review of the EA LLP digital devices has been

6    completed, and the documents determined to fall within the scope of

7    the warrants have nearly all been produced to defendant.[4]

8         Nevertheless, defendant appears be demanding that he be provided

9    unfettered and unlimited access to the EA LLP digital devices through

10   the Privilege Review Team going forward, be allowed to circumvent

11   government counsel, and personally direct the actions of an IRS-CI

12   Computer Investigative Specialist and the government's Privilege

13   Review Team throughout that process.  This simply is not a workable

14   option for the numerous reasons addressed further herein, including

15   the significant possibility that defendant will abuse this process in

16   an effort to further delay this prosecution.  Although the government

17   is mindful of the Court's direction that defendant be provided access

18   to the EA LLP digital devices if needed, the Court also said that

19   defendant must make a good-faith particularized request for such

20   access.  Defendant has not done so.

21   **II.   <u>INTERNET-DISABLED COMPUTER</u>**

22        The government does not object to defendant having an internet-

23   disabled computer to ensure defendant can review discovery and

24   prepare for trial.  The parties have agreed to a proposed

25   modification of defendant's conditions of temporary release outlining

26

27        [4] As the government noted in its May 30, 2020, status report,
     there are a relatively small number of additional documents,
28   including certain additional documents from the EA LLP server, that
     are currently being prepared for production to defendant.

2

what computer defendant can use and the circumstances related to his use.  The parties proposed modification has been lodged separately with the Court.  The government understands that defense counsel has already ordered defendant such a computer and will, consistent with the parties' agreement, be providing him with the internet-disabled computer by Monday, June 8, 2020.

III. **ACCESS TO THE EA LLP DIGITAL DEVICES**

    **A.  Background on the EA LLP Devices**

During the course of its investigation, the government acquired digital devices belonging to defendant's former law firm, EA LLP, during a search of EA Employee 1's residence as well as a forensic copy of the computer server belonging to EA LLP,[5] which the government also obtained a warrant to search; these are the EA LLP digital devices.  The USAO and IRS-CI searched the contents of the EA LLP digital devices (as well as other digital devices), pursuant to the privilege review and other search protocols set forth in the applicable search warrants requiring the USAO and IRS-CI to follow specific procedures to avoid unnecessary disclosures of attorney-client communications or attorney work product, including the use of a "Privilege Review Team."

On July 28, 2019, defendant filed a motion to compel discovery, specifically, defendant sought unfettered access to review the EA LLP digital devices.  (CR 50.)  The government opposed defendant's motion (CR 55), and the receiver to which defendant stipulated to oversee

---

[5] The government has a forensic copy of the digital devices that made up the EA LLP server; however, these devices are not configured to work as the server previously did.  The information on the digital devices was extracted and reviewed and produced in fully searchable load files to be used on any discovery platform of defendant's choice.

1    the operations of EA LLP also objected to defendant's request (CR

2    59).  On August 26, 2019, this Court denied defendant's motion.  (CR

3    63.)  For the reasons stated in the government's opposition and this

4    Court's Order denying the motion to compel, defendant is not entitled

5    to full access to the EA LLP digital devices.  Indeed, neither

6    Federal Rule of Criminal Procedure 16, Brady v. Maryland, 373 U.S. 83

7    (1963), Giglio v. United States, 405 U.S. 150 (1972), nor any other

8    authority provides defendant with complete access to the EA LLP

9    digital devices.

10       The Privilege Review Team completed its scope and privilege

11   review pursuant to the search protocols, and defendant received

12   nearly all of the productions from the search of the EA LLP digital

13   devices -- and will receive the final, relatively small production

14   shortly.  As outlined to the Court previously, on or about March 13,

15   2020, the Privilege Review Team largely completed its production of

16   documents from the EA LLP digital devices (approximately 1,027,347

17   pages[6]) found to be within scope of the search warrants, and on or

18   about May 8, 2020, the Prosecution Team reproduced to defendant

19   duplicate copies of those items (approximately 664,275 pages) deemed

20   to be within scope and non-privileged.

21       The fact that IRS-CI obtained warrants to search the EA LLP

22   digital devices does not entitle defendant to conduct his own

23   independent search of the digital devices.  On March 25, 2019, IRS-CI

24   also obtained search warrants for EA Employee 1's house and Law Firm

25

26       [6] During the June 1, 2020, status conference, defense counsel
     claimed that the March 13, 2020, production by the Privilege Review
27   Team was not Bates-numbered, adding to the difficulty of reviewing
     and comparing the discovery produced.  The Privilege Review Team,
28   however, did produce the discovery with the corresponding bates-
     numbers: PRT_MA_00041677 to PRT_MA_01069024.

                                      4

1's legal office.  Defendant's request to search the EA LLP digital devices himself now is the functional equivalent of letting defendant go and search EA Employee 1's house and/or Law Firm 1's legal office to see if the government missed anything.  This is inappropriate and not supported by any law.

Due to the amount of time required to complete a full scope and privilege review of the EA LLP digital devices, from the outset of the case, the government offered to allow defendant to work with the Privilege Review Team to review digital devices at IRS-CI.  Defendant never availed himself of this until after this Court denied defendant's motion to compel on August 26, 2019.  The Prosecution Team understands that defendant and his counsel visited IRS-CI's offices on two occasions, once in September and once in October 2019.  Expending great time and resources to do so, the IRS-CI Computer Investigative Specialist (the only one for the entire IRS-CI Los Angeles Field Office), created a virtual system on a computer and uploaded EA LLP server data to permit defendant to search for EA LLP records, including emails, within the EA LLP server data.

Although the Prosecution Team had no involvement and was shielded from defendant's interaction with the Privilege Review Team, defendant publicly filed in his state bar hearing one of his counsel's communications with the Privilege Review Team, along with a description what defendant was seeking.  See Exhibit 1, attached. Defendant requested the Privilege Review Team run a search of all EA LLP's emails with seven terms/names, which were Client 3's last name, the last names of two of Client 3's subsequent attorneys, two company names related to Client 3, the name of the company against whom defendant represented Client 3, and the last name of a former partner

of Client 3.  (Id. at 6.)  What appears abundantly clear, defendant's
meetings and requested search in September and October 2019 focused
on his defense in his state bar proceedings and not the present case,
and defendant's requested search was simply a fishing expedition --
and could not possibly implicate any potential privilege issues.

Based on defendant going to IRS-CI's offices and providing the
Privilege Review Team requests for materials, the Privilege Review
Team made three informal discovery productions to defendant
consisting of 10,156 files, 244 files, and 40,960 files on October 1,
2019, October 21, 2019, and October 24, 2019, respectively.  After
these productions in October 2019, there were no outstanding requests
for documents, and between October 2019 and June 1, 2020, and neither
defendant nor his counsel ever requested to visit or review any
evidence at IRS-CI.

**B.  The Government's Attempts to Meet-and-Confer Regarding the EA LLP Digital Devices**

On June 1, 2020, after the status conference, the government
emailed defense counsel the following message in an attempt to
resolve any future requests regarding access to the EA LLP digital
devices:

> In your status report and during this morning's status
> conference you stated that you wanted access to the IRS-
> CI's offices to review emails and electronic documents,
> presumably from the Eagan Avenatti LLP server.  So that we
> can further evaluate this request and determine what would
> actually be needed to accommodate it, please provide us
> with the following information:
>
> 1.  What specifically are you seeking in connection
> with the proposed additional searches of the EA LLP server?
>
> 2.  How much time do you believe you will need to
> conduct a further review of the EA LLP server and how much
> of the review do you believe needs to be conducted in
> person?

6

3.   What relevant emails and documents do you believe
have not been produced in the prior productions, including
the March 13, 2020, production, that would require such
additional searches?

4.   What efforts have you made to confirm that the
additional documents have not been produced?  For example,
have you already searched for such documents in the
previously produced discovery using the client's email
addresses or names?

Depending on what you are seeking from the devices, it is
possible that any further searches will not require you or
your client's presence and can be produced to you on a
defense-provided hard drive.  Assuming that the requests
are particularized and made in good faith after you have
determined the materials were not previously provided to
the defense, we will do our best to accommodate those
requests.  But, as we stated in our response, we believe
much of what you claim you are seeking has already been
produced and we are more than happy to assist you in
finding the relevant documents in the current productions,
to the extent they exist.

Please provide us the information as soon as possible, so
we can attempt to proceed accordingly.

See Exhibit 2, attached.

On June 2, 2020, defense counsel emailed the government the

following response:

In response to your email, please be advised that we will
deal directly with the privilege team as to what we need to
review from the EA files for Mr. Avenatti's defense.  This
is the process that was utilized before and it is the
process we will utilize now.  As you know, your office is
required to be shielded from this process because of the
privileged nature of the majority of the documents.
Accordingly, I have reached out to the same individuals I
have dealt with previously.  Further, as you know, we are
not required to provide you with details as to which
documents we believe are important nor are we required to
provide you with details as to which documents you may have
missed.  That is our work product.

In addition, the documents we need to access from the EA
server will be an evolving process as we prepare our
defense and continue to review what has already been
produced.  Within the last three months, you have released
over 100,000 documents to the defense.  Assuming a review
of 50 documents an hour, which is a highly aggressive
estimate, this production alone would require 2,000 hours

7

1    to complete.  We cannot simply conduct word searches as to
     the documents - they have to be reviewed.
2

3  <u>See</u> Exhibit 3, attached.

4       On June 3, 2020, the government replied to defense counsel with

5  the below email:

6       This is not what the Court ordered, nor is it appropriate.
        The Court stated that you could have access to search the
7       EA server if your request(s) was/were particularized and
        made in good faith.  As you know, the Court has previously
8       ordered that your client does not have a right to complete
        access to the EA LLP server or other EA LLP digital devices
9       as EA LLP property does not belong to your client.  At this
        time, both the scope and privilege review of the EA LLP
10      devices have been completed.  Although the process of you
        working directly with the Privilege Review Team was used
11      previously, this was prior to the completion of the scope
        and privilege review.  The prosecution team does need to be
12      shielded from potentially privileged materials, but that in
        no way allows you to conduct your own search of the
13      devices.  Nor does it justify you ignoring the Court's
        direction that the parties' confer in good faith regarding
14      this issue by circumventing government counsel and going
        straight to the Privilege Review Team, which should not be
15      responsible or involved in any such discussions.
        Considering that you have not once, including in "your"
16      filings from last week and the email below ever mentioned
        what you have actually reviewed or done to search the
17      previously produced discovery, the government has doubts
        about your sincerity in your "need" to have access to these
18      devices.  You spend time, both in the filings and below
        talking about the hypothetical time it will take you to
19      review documents, but you've had the full production of
        documents for three months (and many other items for over a
20      year), therefore, you should have an actual knowledge of
        reviewing and searching these documents by now.  You should
21      know what you are looking for and, most importantly,
        whether it has already been produced.  We have also
22      confirmed that your claim that the Privilege Review Team's
        March 2020 production was not Bates-labeled was inaccurate,
23      raising further concerns that you have not actually
        reviewed the materials that have been produced to you and
24      are seeking to work with the Privilege Review Team as
        simply a means of further delay.  The government remains
25      willing to work with you and your client to accommodate
        reasonable good-faith discovery requests, but because your
26      response below does not in the least demonstrate any
        attempt at either good faith nor particularity, the limited
27      resources of our Privilege Review Team and IRS will not be
        expended on your requests until we receive further guidance
28      from the Court.

                                    8

1   <u>Id.</u>  Defense Counsel never responded to this email.

2       Instead, on June 5, 2020, defendant filed his status report

3   regarding access to the EA LLP devices in IRS-CI custody, in which

4   defendant summarily asserted that would have the Privilege Review

5   Team run various searches for him on the EA LLP devices at a later

6   date.  (CR 172.)  Notably, neither the Prosecution Team nor the

7   Privilege Review Team have agreed to such a proposal, which the

8   government considers to be inappropriate at this time.

9       **C.   Defendant's Future Review of EA LLP Digital Devices**

10      The government completed its search of the EA LLP digital

11  devices pursuant to the search protocols in the search warrants.  The

12  government conducted a review of the EA LLP digital devices and

13  defendant has received nearly all the documents the searching agents

14  (who were members of the Privilege Review Team rather than the case

15  agents) seized from the files.  Although defendant has repeatedly

16  complained about the volume of discovery the government has produced,

17  at no point has defendant claimed the government's search protocol or

18  search results are lacking or have missed relevant material.

19  Nevertheless, without engaging in any meaningful discussions with the

20  government, defendant has proclaimed that he will direct the

21  government's Privilege Review Team to conduct an unspecified number

22  of additional searches on the EA LLP devices for an indefinite period

23  of time.  Defendant's demand is not appropriate and would create a

24  completely unworkable situation.

25      As this Court has already ruled, the criminal discovery rules do

26  not provide defendant with a right to conduct his own search of the

27  EA LLP digital devices.  (CR 63.)  Defendant wants to ignore this

28  Court's prior order from August 26, 2019, and get the unfettered

access to the EA LLP digital devices this Court already denied.  At
most, under Federal Rule of Criminal Procedure 16(a)(1)(E)(i),
defendant is entitled to a "copy" of the documents on the EA LLP
digital devices that are material to his defense.  Defendant has made
no effort to show that such documents exist, and has failed to
identify with any specificity the documents he claims must be
produced or sufficient facts establishing the materiality of those
documents.

       For example, defendant claimed in his May 27, 2020, status
report that he still has not received "critical records detailing
costs and expenses on cases involving the alleged victims." (CR 164
at 3-4.)  As described in previous filings, this is demonstrably
false.  Defendant received these records with the EA LLP's QuickBooks
accounting files, which contained among other things, detailed
information regarding the costs and expenses incurred in connection
with all EA LLP legal matters for which they kept such records,
including for three of the four victims identified in the indictment.
Defendant also received these records in the May 2020 duplicative
discovery production that the Prosecution Team has in its possession,
therefore, defendant had these records (and possibly more) on March
13, 2020.

       Moreover, defendant's status report filed on June 5, 2020,
demonstrates that defendant still does not know what he is searching
for or whether he will need to search for anything.  (CR 172.)  At a
minimum, defendant's filing demonstrates that the issue is premature.

       Assuming the issue needs to be resolved now, the government
believes there are approximately three viable options going forward:
(1) this Court, consistent with its August 16, 2019, Order,

determines that defendant has no legal right to further access to forensic copy of the EA LLP digital devices in the government's possession; (2) defendant can have further access to materials from the EA LLP digital devices by working with the Prosecution Team in good faith and demonstrating particularized needs to documents; or (3) defendant can subpoena the records from the bankruptcy trustee who has the original EA LLP digital devices.  Defendant's demand that he be allowed to completely circumvent the Prosecution Team and direct the Privilege Review Team to run an unlimited number of searches for him for an indefinite period of time, however, is not a viable option.

Although the government appreciates this Court's statement at the June 1, 2020, status conference whereby the Court stated defendant will get access to the EA LLP digital devices at IRS-CI if defendant's requests are in good faith and particularized, the government believes defendant is not entitled to further access of the digital devices for the reasons stated by this Court in its prior Order.  (CR 63.)  Defendant has never cited any basis that would provide him further access to the EA LLP digital devices after the search of those devices have been completed, let alone that the Privilege Review Team would be responsible for working for defendant to conduct his work.  Defendant in essence is seeking the same unfettered access to the EA LLP digital devices that he sought last year, and this Court denied, but to now use government resources to accomplish defendant's goals.  The government maintains that this Court's August 26, 2019, order controls and would not provide defendant the unfettered access to search the EA LLP digital devices -- using limited government resources in the process.

If this Court determines defendant should have further access to the EA LLP digital devices, defendant should attempt to resolve the matter with the Prosecution Team first.  To date, defendant refused to communicate with the Prosecution Team or to even confer over what defendant's intended plan would be, causing the government concern regarding any future good faith or particularized request by defendant.  If and when defendant determines what he does not have and may need, this Court should require defendant to meet and confer with the Prosecution Team and in good faith demonstrate what he still is entitled to and/or why there is a privilege issue that would prevent defendant from working with the Prosecution Team.[7]  If certain documents defendant is seeking exist, the Prosecution Team can likely find the documents in the previously produced discovery and point defendant to the relevant discovery.  If after a good faith consultation, defendant believes he cannot work with the Prosecution Team, defendant could then involve the Court with his particularized request and this Court would determine whether defendant's request is in good faith and particularized, and would implicate a privilege if the Prosecution Team were involved.  In addition, the Court should require defendant to confirm that he does not already have the

---

[7] As defendant immediately filed previous correspondence with the Privilege Review Team with the State Bar to support his request for a continuance in that matter, the government doubts the sincerity of defendant's work-product claim.  Again, by way of example, defendant claimed in his May 27, 2020, status report not to have cost and expenses for the clients named in the indictment.  The Prosecution Team was able to find such documents in minutes and could have reproduced these documents to defendant -- the government even made that offer in its response to defendant's status report and defendant has not followed up.

1   documents or files, and what efforts he undertook to determine he

2   does not have such documents, before requesting additional searches.

3          Alternatively, defendant could obtain documents and files from

4   EA LLP digital devices by issuing a Federal Rule of Criminal

5   Procedure 17 subpoena to the bankruptcy trustee overseeing EA LLP's

6   bankruptcy to obtain the files from the original EA LLP digital

7   devices.[8]  Defendant would need to comply the requirements of a Rule

8   17 subpoena, specifically that the documents sought are relevant,

9   admissible, and specifically identified.  See Fed. R. Crim. P. 17;

10  United States v. Nixon, 418 U.S. 683, 700 (1974) (the Supreme Court

11  held that the proponent of the subpoena must "clear three hurdles:

12  (1) relevancy; (2) admissibility; (3) specificity"); United States v.

13  Reed, 726 F.2d 570, 577 (9th Cir. 1984).  The requirements for

14  defendant to obtain the documents or files pursuant to a Rule 17

15  subpoena should be the minimum requirements for defendant to seek the

16  Prosecution Team and/or the Privilege Review Team to search for

17  certain files and documents, if so ordered by this Court.

18         Finally, defendant's request to work directly with the Privilege

19  Review Team to search the EA LLP digital devices is not feasible --

20  nor supported by law.  The various search warrants outline the

21  responsibilities of the Privilege Review Team, which relates to the

22  review of search warrant materials to segregate potentially

23  privileged materials from non-privileged materials to ensure that the

24  Prosecution Team does not have access to privileged materials.

25

26

27

28         [8] Because defendant could obtain certain files or documents
    through a Rule 17 subpoena, there is no harm to defendant if this
    Court ruled consistent with its August 26, 2019, Order.

                                    13

Defendant's position that he be permitted to work directly with the Privilege Review Team to request searches of the EA LLP digital devices would create an unworkable situation.  First, this puts the Privilege Review Team in a nearly impossible situation to have to determine whether defendant's requests are in good faith and particularized, and if they believe so, need to litigate those issues before this Court, which is not the responsibility of the Privilege Review Team.  The further requests and potential litigation would divert the limited resources of the Privilege Review Team and IRS-CI, without any justification.

Second, defendant's position is ripe for abuse as there would be little to no oversight by the Prosecution Team (and possibly this Court) regarding defendant's requests.  Moreover, defendant could use his requests and potential delays in production by the Privilege Review Team as grounds for defendant attempting to delay this trial.  Although IRS-CI, at great expense of time and resources, set up a computer system to search EA LLP server records for defendant, any future requested searches by defendant could require similarly time-intensive review of files in an attempt to either find the proverbial a needle in a haystack, or could provide defendant with thousands of documents (as a result of a fishing expedition).  Based on defendant's numerous filings, defendant regularly attempts to blame the government for delays and allowing defendant's unfettered access to the Privilege Review Team will undoubtedly result in additional, unjustified attempts to delay by defendant -- and the Prosecution Team would be kept in the dark regarding the circumstances.

Defendant has not and cannot establish a particularized and legitimate need to involve the Privilege Review Team in any such

14

requests at this time.  As reflected in Exhibit 1, defendant clearly had no issue publicly disclosing his communications with the Privilege Review Team.  Additionally, basic search terms such as the victim's last name cannot reasonably implicate defendant's trial strategy.  Thus, it appears defendant's desire to work directly with the Privilege Review Team is not based on any legitimate privilege issues, but instead an effort to circumvent the Prosecution Team. Providing defendant with an ongoing and unlimited right to circumvent the Prosecution Team, however, would set up a situation that is ripe for abuse and delay.  The Privilege Review Team is not in a position to evaluate whether defendant's requests are reasonable, nor should it be responsible for doing so.  And, without any requirement that he demonstrate a particularized need to either the Prosecution Team or this Court, defendant will be able to continue to claim he needs access to the EA LLP digital devices as means to delay this trial, regardless of the merits of such claim.

If this Court determines that defendant does in fact have the right to work directly with the Privilege Review Team without limitation on the period of time to search the EA LLP digital devices and/or the number of searches, the government would ask that this Court instead issue an Order, over the receiver and bankruptcy trustee's prior objection, for the government to produce a forensic copy of the EA LLP digital devices to defendant's counsel.  At that time, defendant can hire his own discovery vendor or expert to place the raw files in a usable form to search the documents and files.

## IV.  **CONCLUSION**

As set forth above, defendant should be able to use an internet-disabled computer to review discovery and defendant has no right to

15

further searches of the EA LLP digital devices without at least a particularized request after a showing of good faith to find the documents in previously produced discovery.