UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

– – –

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CERTIFIED TRANSCRIPT |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | SACR-19-00061-JVS |
| MICHAEL JOHN AVENATTI, | ) | |
| Defendant. | ) | |
| ----------------------------- | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

June 8, 2020

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

```
 1    APPEARANCES OF COUNSEL:

 2    For the Plaintiff:

 3    NICOLA T. HANNA
      United States Attorney
 4    BRANDON D. FOX
      Assistant United States Attorney
 5    Chief, Criminal Division
      JULIAN L. ANDRE
 6    Assistant United States Attorney
      Major Frauds Section
 7    1100 United States Courthouse
      312 North Spring Street
 8    Los Angeles, CA  90012
      (213) 894-6683
 9
      BRETT A. SAGEL
10    Assistant United States Attorney
      Ronald Reagan Federal Building
11    411 West Fourth Street, Suite 8000
      Santa Ana, CA  92701
12    (714) 338-3598

13    For the Defendant:

14    H. DEAN STEWARD
      H. DEAN STEWARD LAW OFFICES
15    107 Avenida Miramar, Suite C
      San Clemente, CA  92672
16    (949) 481-4900

17    ALSO PRESENT:

18    Michael Avenatti, Defendant

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

3

| | |
|---|---|
| | 1   SANTA ANA, CALIFORNIA; MONDAY, AUGUST 8, 2020; 8:59 A.M. |
| 08:50 | 2              (Per telephonic conference) |
| 08:59 | 3              THE CLERK:  Calling Item No. 1, SACV-19-00061-JVS, |
| 08:59 | 4   United States of America versus Michael John Avenatti. |
| 08:59 | 5              Appearances for the government, please. |
| 08:59 | 6              MR. SAGEL:  Good morning, Your Honor.  Brett Sagel |
| 08:59 | 7   and Julian Andre on behalf of the United States. |
| 08:59 | 8              THE CLERK:  And on behalf of the defense. |
| 08:59 | 9              MR. STEWARD:  Good morning.  Dean Steward for |
| 08:59 | 10  Mr. Avenatti.  We have a waiver on file, and in addition, |
| 08:59 | 11  Mr. Avenatti is on the line with us. |
| 08:59 | 12             THE COURT:  Good morning. |
| 08:59 | 13             Mr. Avenatti, do you consent to conducting this |
| 09:00 | 14  status conference telephonically? |
| 09:00 | 15             DEFENDANT AVENATTI:  Yes, sir.  Good morning. |
| 09:00 | 16             THE COURT:  Thank you. |
| 09:00 | 17             Preliminarily, I find that it is appropriate to |
| 09:00 | 18  conduct this status conference telephonically given the |
| 09:00 | 19  existing pandemic.  The number of infections in Orange |
| 09:00 | 20  County is now past 7,000.  I find that the public's interest |
| 09:00 | 21  is adequately accounted for by the fact that a telephone |
| 09:00 | 22  number and access code is provided on the docket sheet, plus |
| 09:00 | 23  if any member of the public was interested in listening to |
| 09:00 | 24  this hearing, the tools to do that are there. |
| 09:00 | 25             First of all, let's take up the issue of the |

09:00  1    laptop.  My understanding is that as of Friday Mr. Avenatti

09:00  2    had a disabled laptop.  Is that correct?

09:00  3               MR. STEWARD:  This is Dean Steward.

09:00  4               Yes, Your Honor, that's correct.

09:00  5               THE COURT:  Thank you for identifying yourself.

09:00  6    If everyone would do that each time.

09:01  7               Next is the issue of access to the IRS database.

09:01  8    I want to back up a little bit and refresh my recollection

09:01  9    as to how this arrangement came about in the first place.

09:01  10   As I read the government's latest filing, because of the

09:01  11   length of time it would take to conduct the privilege

09:01  12   review, the government more or less is in combination

09:01  13   providing access to this database and the assistance of a

09:01  14   technician to do searches.  Is that accurate?

09:01  15              MR. SAGEL:  This is Brett Segal.

09:01  16              Upon other reasons, yes, Your Honor.  Do you want

09:01  17   me to elaborate on the other reasons?  I know that the

09:01  18   defendant through various counsel waived issues whether it

09:01  19   be in the State Bar matter or other matters saying he needed

09:02  20   access to his records.  So between the fact that we knew the

09:02  21   length of time that the search protocol would take, as well

09:02  22   as providing him certain access for him to defend his

09:02  23   various matters, we granted him that access prior to the

09:02  24   searches being completed.

09:02  25              THE COURT:  Is there material in that database

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:02  1    that would be relevant to his other legal proceedings but

09:02  2    not this case that he wouldn't have access to through the

09:02  3    government's regular collection?

09:02  4                MR. SAGEL:  Probably.  The first thing that comes

09:02  5    to mind, as Your Honor would know from our search warrant

09:02  6    from what we're allowed to search for, we specifically

09:02  7    excluded any reference or any documents related to Stephanie

09:02  8    Clifford, also known as Stormy Daniels.  Because that was

09:02  9    not part of our case, we weren't looking for it.

09:03  10               So, hypothetically, any documents on the

09:03  11   servers -- I don't know if he had them on his servers, but

09:03  12   any documents related to that matter we would have not seen

09:03  13   or would have been within the scope of our warrants.  So,

09:03  14   yes, those hypothetically could be on the computer systems

09:03  15   that are not part of our search and the production.

09:03  16               THE COURT:  With respect to the documents captured

09:03  17   via the search warrant and which have been turned over to

09:03  18   Mr. Avenatti's counsel, is the database duplicative of that

09:03  19   production?

09:03  20               MR. SAGEL:  I'm sorry.  Could repeat that question

09:03  21   again?

09:03  22               THE COURT:  Sure.  You've turned over documents

09:03  23   that are responsive to the subpoenas that have gone through

09:03  24   the privilege review and so on, correct?

09:03  25               MR. SAGEL:  Correct.

09:03   1          THE COURT:  I understand that, and there may be a

09:03   2   little bit more coming.

09:04   3          To the extent you have made that production, is

09:04   4   the database duplicative of that production?

09:04   5          MR. SAGEL:  If I'm understanding the question

09:04   6   correctly, I think it would be the other way around.

09:04   7   Everything that has been produced is on the database.

09:04   8   Everything that's on the database -- for example, the

09:04   9   servers themselves I think are ten terabytes of information.

09:04   10  We obviously in our production didn't produce anywhere near

09:04   11  that, but our searches were extremely broad.  For example,

09:04   12  we would have had everything with the victims' names, the

09:04   13  victims' e-mails.

09:04   14         I want to back up and say it's not really a

09:04   15  database.  It's just all of the digital devices loaded onto

09:04   16  basically a platform for them to be searched.  So the answer

09:05   17  is that everything he has gotten is going to be as far as I

09:05   18  think we could say in good shape to encapsulate everything

09:05   19  in our case.  And the searches are done in such a broad

09:05   20  manner so that the Privilege Review Team who is culling it

09:05   21  down from that is able to determine both scope and

09:05   22  privilege, so that anything that would have been relevant in

09:05   23  our case and within the scope of the warrant should have

09:05   24  been and likely was found and produced to the defendant.

09:05   25         THE COURT:  Is there a legal basis for me to order

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:05  1    access to the database?

09:05  2         MR. SAGEL:  The government does not believe -- the

09:05  3    government doesn't believe so.  I'm not sure we've ever seen

09:05  4    from the defense what their basis is for it is part of the

09:05  5    problem.  There is no criminal discovery rules or

09:06  6    statutes that -- for example, if the defendant were to say

09:06  7    to us we believe there is this Brady or Giglio material

09:06  8    within it that we want to capture, we would be more than

09:06  9    happy to find it and get it.

09:06  10        But as of right now, we're kind of shooting in the

09:06  11   dark with the hypotheticals what exists, and we have never

09:06  12   seen or heard of anything that exists that hasn't been

09:06  13   produced.  So we don't believe at this point there is

09:06  14   anything further to produce or that there is a legal basis

09:06  15   for them to have access to it on their own.

09:06  16        THE COURT:  Well, you suggest that there may be

09:06  17   Giglio material that you wouldn't have produced.  Did I

09:06  18   understand you correctly?

09:06  19        MR. SAGEL:  No.  If I said that, that's not what I

09:06  20   meant to say.  What I'm saying is that if they were to claim

09:06  21   that there is some kind of Giglio or Brady material that we

09:06  22   did not come across that they know would be on that, that

09:06  23   would be one thing, but what we're saying is we -- first of

09:06  24   all, we don't think there is any Brady or Giglio that we

09:07  25   have come across, let alone our searches are so thorough

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:07  1   that we don't think that there is anything else left on

09:07  2   there.  And because we have never been told of anything at

09:07  3   any point that is missing, we can't think of any basis

09:07  4   whatsoever to do any further searches or what could be a

09:07  5   basis for it.

09:07  6           THE COURT:  I think I'd like to have the parties

09:07  7   brief what legal obligation exists at this point for the

09:07  8   government to allow access to that database.  As I

09:07  9   understand it, in part access was provided as an

09:07  10  accommodation because production was going slow and in part

09:07  11  because there may be materials that would assist

09:07  12  Mr. Avenatti in proceedings other than this one.

09:07  13          So how much time do you each want?  Mr. Steward.

09:07  14          MR. STEWARD:  Well, Your Honor, if I could have a

09:08  15  week, I think that would be fine.

09:08  16          THE COURT:  That's fine.  Okay.

09:08  17          How much time do you want to respond, Mr. Sagel?

09:08  18          MR. SAGEL:  A week is fine as well.

09:08  19          THE COURT:  Okay.  Then we'll have -- I'll

09:08  20  schedule a hearing when I see the briefs.  I think everybody

09:08  21  can make themselves available on pretty short notice these

09:08  22  days.

09:08  23          Mr. Steward, your brief dealing with the legal

09:08  24  basis to compel access due in a week.  The government's is

09:08  25  due seven days after that.

9

09:08    1           MR. STEWARD:  That's fine, Your Honor.  Dean
09:08    2  Steward.
09:08    3           THE COURT:  Okay.  The next item is the issue of
09:08    4  asset allocation, and what are the ramifications for
09:08    5  deploying appropriate assets when they're available?  I have
09:09    6  the parties' briefs.  I find them very helpful.
09:09    7           Mr. Steward, in your filing made yesterday, you
09:09    8  asked for leave to file an additional brief.
09:09    9           MR. STEWARD:  Yes, Your Honor.
09:09   10           THE COURT:  You're welcome to do that.  I don't
09:09   11  plan to take any action on this topic at the moment.  It's
09:09   12  very helpful to me to have the parties' views on the facts
09:09   13  and the law.  I think that's been accomplished, and I will
09:09   14  look for your supplemental.
09:09   15           In terms of the trial date, if we can conduct a
09:09   16  trial date in a constitutionally sufficient manner, we're
09:09   17  going to proceed on December 8.  I've made this comment
09:09   18  before, and I will make it again.  This case cries out for
09:09   19  the assistance of a paralegal.  There is no consumer of
09:09   20  legal services ranging from CJA to a Fortune 500 company who
09:09   21  would have a lawyer with 41 years' experience by himself
09:10   22  reviewing more than a million documents.
09:10   23           I strongly suggest the pressing need for you,
09:10   24  Mr. Steward, for the assistance of a paralegal.  So I don't
09:10   25  have anything further on that topic.

09:10    1          In a filing made by the government yesterday at
09:10    2    about 4:30, the government raised the possibility that
09:10    3    Mr. Avenatti has violated the terms of his supervised
09:10    4    release.  At 8:00 last night, Mr. Steward put in a response
09:10    5    and as I understand it would like to brief that further.
09:10    6          Let's be clear on what the restriction was.  The
09:10    7    restriction is not that he couldn't use the internet, but he
09:11    8    was not to have access to devices that would permit him to
09:11    9    use the internet.  What I believe from the response that
09:11   10    Mr. Steward put in last night is the representation is he
09:11   11    has not accessed the internet, not that he has not used
09:11   12    Mr. Manheimer's computer, which apparently does have some
09:11   13    access.
09:11   14          I think that these allegations warrant further
09:11   15    investigation, and I'd like to hear you.  I'm prepared to
09:11   16    direct that the Pretrial Services officer conduct a search
09:11   17    of the Manheimer residence and the computer, and I'm
09:11   18    prepared to order an examination of Mr. Manheimer under oath
09:11   19    with the defense present.
09:11   20          I would like to hear your thoughts on those two
09:11   21    items.
09:11   22          MR. STEWARD:  Your Honor, Dean Steward.  No
09:11   23    objection.  I think that's a good plan.
09:11   24          UNIDENTIFIED SPEAKER:  I'm listening to the
09:11   25    Avenatti status conference live.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:11    1          THE COURT REPORTER:  Who's speaking?  Who is
09:11    2    speaking?  Who just spoke?
09:12    3          THE CLERK:  Whoever was speaking needs to mute
09:12    4    their phone after they tell us who that was.
09:12    5          (No response)
09:12    6          THE CLERK:  That was a member of the public,
09:12    7    Sharon.
09:12    8          THE COURT:  Okay.  Well, let's proceed with the
09:12    9    government contacting the Pretrial Services officer and
09:12   10    convey the Court's wishes.
09:12   11          Would you meet and confer and then come back to me
09:12   12    no later than Friday with a proposal to take Mr. Manheimer's
09:12   13    testimony under oath with the government and Mr. Steward
09:12   14    present?
09:12   15          MR. STEWARD:  Dean Steward on behalf of
09:12   16    Mr. Avenatti.
09:12   17          No objection to that.  I can represent to the
09:12   18    Court that I spoke with Mr. Manheimer last night, and he
09:12   19    assured me that Mr. Avenatti has not had access to a device
09:13   20    with internet capabilities, but all the more reason to
09:13   21    submit that comment by Mr. Manheimer, and we're happy to do
09:13   22    that.
09:13   23          THE COURT:  Well, put in place arrangements no
09:13   24    later than Friday and come back to me with a joint report
09:13   25    with regard to those arrangements.

09:13  1          MR. SAGEL:  Yes, Your Honor.  This is Brett Sagel.

09:13  2          Just so I'm clear, were you proposing in-person

09:13  3  testimony of Mr. Manheimer or VTC or telephonically?  What

09:13  4  was Your Honor's preference?

09:13  5          THE COURT:  My preference is in person.  I think

09:13  6  you have a large enough conference room where everybody can

09:13  7  engage in social distancing.  I mean, you'll probably only

09:13  8  have five people there:  Mr. Steward, Mr. Manheimer, the

09:13  9  court reporter, and one or two lawyers from the government.

09:14 10  I think most conference rooms of any size would facilitate

09:14 11  social distancing.

09:14 12          MR. STEWARD:  This is Dean Steward.

09:14 13          May we include my client?  Six people?

09:14 14          THE COURT:  He can come in via Zoom, but he is not

09:14 15  leaving that residence.

09:14 16          MR. STEWARD:  Understood, Your Honor.

09:14 17          THE COURT:  Okay, anything else then?

09:14 18          MR. STEWARD:  Not for the defense, Your Honor.

09:14 19          MR. SAGEL:  Your Honor, this is Brett Sagel.

09:14 20          We do have one other matter.  It's not pressing,

09:14 21  but I just wanted to raise it after last week's hearing.  We

09:14 22  had set with the new date -- the new trial date, we had set

09:14 23  a new motions date, and we understand that.  I guess the

09:14 24  government's question would be whether Your Honor would be

09:14 25  open to motions filed that are properly noticed with the

09:14  1   appropriate date prior to the new motions deadline for the

09:15  2   new trial date.

09:15  3          The reason I say that is at least one of the

09:15  4   motions the government was planning on filing would have

09:15  5   discovery obligations and would have other ramifications,

09:15  6   specifically, the defendant's advice of counsel -- potential

09:15  7   advice of counsel defense and the testimony he has given in

09:15  8   prior proceedings, which we believe would have waived any

09:15  9   attorney/client privilege or may waive attorney/client

09:15  10  privilege.

09:15  11         We think that if we could brief that earlier that

09:15  12  could lead to earlier discovery obligations and the rest,

09:15  13  which would be our preference rather than waiting until on

09:15  14  the eve of trial to try and deal with potential interviews,

09:15  15  potential discovery, results from both the defense and the

09:15  16  government.

09:15  17         THE COURT:  I have no problem with motions made in

09:15  18  advance of that final date provided they're properly noticed

09:16  19  for hearing.

09:16  20         MR. SAGEL:  Thank you, Your Honor.

09:16  21         THE COURT:  In that regard, Mr. Steward, you in

09:16  22  giving me a preview a couple of hearings ago talked of a

09:16  23  motion.  One was a motion to sever certain -- some of the

09:16  24  claims.  I think that motion if it is going to be brought it

09:16  25  would be helpful if it was brought earlier rather than

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:16  1  later.

09:16  2            MR. STEWARD:  That's fine, Your Honor.

09:16  3            THE COURT:  Depending on how the Court would rule

09:16  4  on such a motion has obvious ramifications for the shape of

09:16  5  a trial.

09:16  6            MR. STEWARD:  Understood, Your Honor, and I agree.

09:16  7            Can I ask one question, though?  When government

09:16  8  counsel is talking about actions that may require further

09:16  9  discovery, I assume that does not include a Superseding

09:16  10  Indictment, but I'd ask the Court to inquire of the

09:16  11  government what their intentions are.

09:16  12            THE COURT:  Are there any present intentions to

09:16  13  bring a Superseding Indictment?

09:17  14            MR. SAGEL:  There are no present intentions, Your

09:17  15  Honor.  This is Brett Sagel.

09:17  16            THE COURT:  That's the precise question I asked.

09:17  17  Yes, thank you.

09:17  18            Okay, anything further for today?

09:17  19            MR. STEWARD:  Not from the defense, Your Honor.

09:17  20            MR. SAGEL:  Nothing from the government, Your

09:17  21  Honor.

09:17  22            THE COURT:  Unless something happens in the

09:17  23  interim, we'll next get together telephonically after I have

09:17  24  seen the two briefs dealing with access to the IRS server.

09:17  25            Okay, thank you very much.

```
09:17   1            MR. SAGEL:  Your Honor, this is Brett Sagel.
09:17   2            I apologize for not bringing this up earlier.  Is
09:17   3   there any way that the testimony of Mr. Manheimer could be
09:17   4   done at the courthouse or in the courtroom?
09:17   5            THE COURT:  We're not open until the 21st for
09:17   6   business.  I mean, that the target date.  I mean, I suppose
09:17   7   if you come into your offices, but I can't --
09:17   8            MR. STEWARD:  I'd object to that, Your Honor, just
09:18   9   the optics of it and the feel of it.  I'd ask for someplace
09:18  10   neutral.
09:18  11            MR. SAGEL:  That's why the government was offering
09:18  12   the courthouse.
09:18  13            THE COURT:  Let me inquire, but I don't think I'm
09:18  14   authorized by my own to do that.
09:18  15            MR. SAGEL:  Understood, Your Honor.  Thank you.
09:18  16            THE COURT:  Okay.  Thank you.
09:18  17            MR. STEWARD:  Thank you.
09:18  18            MR. SAGEL:  Thank you.
09:18  19            (Whereupon, the proceedings were concluded.)
09:18  20                       *    *    *
09:18  21
09:18  22
09:18  23
09:18  24
09:18  25
```

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:   June 9, 2020

/s/   Sharon A. Seffens  6/9/20
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER