NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6683
     Facsimile: (213) 894-6269
     Email:     Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone:  (714) 338-3598
     Facsimile:  (714) 338-3708
     Email:      Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT MICHAEL JOHN AVENATTI'S *EX PARTE* APPLICATION RE ATTORNEY/CLIENT PRIVILEGED MATERIAL |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Julian L. André, hereby files its Response to defendant's ex parte application for order re attorney-client privileged material.

This response is based on the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 10, 2020          Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division


          /s/
BRETT A. SAGEL
JULIAN L. ANDRÉ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**GOVERNMENT'S RESPONSE**

Defendant's conditions of temporary release state that defendant "shall not possess, use, or access any digital devices that offer or allow internet access." (CR 140, ¶ 12.) On June 7, 2020, the government raised concerns that defendant may have violated this release condition by using his third-party custodian's internet-enabled computer to draft a number of the recent pleadings in this case. (CR 177.) Although defendant filed pleadings with the Court claiming to have no access to a computer to review discovery, the metadata for the PDFs filed with the Court indicated that a computer belonging to defendant's third-party custodian, Jay Manheimer, had been used to draft those very same pleadings and other documents.[1]

During the status conference on June 8, 2020, this Court stated that the allegations of defendant's potential violations of his conditions of temporary release required further investigation. As a result, this Court directed Pretrial Services ("PTS") to conduct a search of Mr. Manheimer's residence, including the computer(s) within Mr. Manheimer's residence. This Court also ordered the in-person examination of Mr. Manheimer under oath.

On June 10, 2020, PTS searched Mr. Manheimer's residence and took temporary custody of several computers and digital devices so that PTS could conduct the Court-ordered search of those devices. In response, defendant's counsel sent an email to PTS stating:

> Earlier today, your office seized several devices from Mr. Manheimer's home. One or more of those devices may contain

---

[1] To be clear, the government agrees that defendant can assist his counsel in his defense; however, defendant must still comply with his conditions of release and be truthful with this Court. If defendant needed to use or access a computer to help his counsel draft pleadings in his case, he could have worked with the government to modify his conditions of release or asked this Court directly.

> attorney/client privileged material. I would, of course, object to any review or reading of this material, including email between my client Mr. Avenatti and legal counsel.

(CR 185 at 1.) Defendant now asks this Court amend its Order to "exclud[e] from review any attorney client privileged material by Pre-Trial Services/Probation." (Id.)[2]

First, and most importantly, defendant's ex parte application appears to confirm that defendant violated the conditions of his release. The government is unsure how Mr. Manheimer's computer(s) could contain any attorney-client privileged communications, including emails between defendant and his legal counsel, without defendant being in violation of the conditions of his temporary release. This Court emphasized the specific condition at issue during the status conference on June 8, 2020:

> Let's be clear on what the restriction was. The restriction is not that he couldn't use the internet, but he was not to have access to devices that would permit him to use the internet.

(6/8/20 RT 10.) If there are emails between defendant and his legal counsel -- or anyone else for that matter, those emails would conclusively demonstrate that defendant violated his release conditions because defendant could not possibly send an email without accessing the internet, or, at a minimum, accessing a device that would permit him to use the internet.

---

[2] Defendant's recitation of the law in his application on the attorney-client privilege and the importance of free communication between attorney and client for effective assistance by the attorney is simply irrelevant. The government neither wants to see any communications between defendant and defendant's counsel nor believes the communications between them are relevant for the current inquiry. Whether defendant used a digital device with access to the internet is the only relevant inquiry at this time.

2

Although PTS should not need to read or review the contents of any attorney-client communications on Mr. Manheimer's devices to evaluate the current violation allegations, PTS must be permitted to review the devices to determine whether such communications exist as those communications would prove defendant violated his release conditions.[3]  Indeed, precluding PTS from even searching for the existence of such communications would largely defeat the purpose of the search.

Second, in response to the government's concerns regarding defendant's use of Mr. Manheimer's computer, defendant filed a response that did not actually deny that defendant used Mr. Manheimer's computer.  (CR 179.)  Instead, defendant's response stated "Mr. Avenatti has not accessed the internet using any computer or electronic device since his release."  (Id. at 1.)  Defendant then offered a convoluted theoretical explanation about how Mr. Manheimer could have assisted defense counsel in finalizing those pleadings without defendant actually violating the conditions of his temporary release.  (Id.)  To the extent the communications to which defendant is referring in his application are communications between defense counsel and Mr. Manheimer, any such communications would not be covered by the attorney-client privilege because are not confidential communications between the attorney and client.  And, at a minimum, PTS and/or the Court should have an opportunity to review the

---

[3] PTS is part of the Court, and as long as PTS does not disclose the contents of any potentially privileged communications to the government, PTS likely could read the communications as well.  The government, however, believes that PTS can review of the devices for emails without reading the content to determine whether defendant violated his conditions of release.

3

communications between Mr. Manheimer and defense counsel regarding the specific pleadings identified in the government's request for inquiry to confirm whether defendant's explanation in response was truthful.[4]  Moreover, if defendant used any of Mr. Manheimer's computers for more than what was described in defendant's filing, such as drafting the filings in their entirety, conducting online legal research, and pulling the exhibits from the internet, defendant and/or his counsel omitted material information from this Court in its response and at the status conference.

Third, if Mr. Manheimer's devices do include "email[s] between [defendant] and legal counsel" as stated by defendant's attorney to PTS, the government is unsure of why a search is even necessary at this point because any such communications would necessarily be a direct violation of defendant's conditions of release and contradict defendant's prior representations to this Court.  If defendant used Mr. Manheimer's computers to email his legal counsel, defendant should not be wasting this Court's and PTS's limited resources on this matter, let alone the time and resources that will be required to conduct Mr. Manheimer's under oath examination.

Finally, defendant's application completely lacks specificity as to what defendant wants PTS to avoid reviewing.[5]  Defendant does not provide additional parameters of what names and email addresses, for

---

[4] If Mr. Manheimer's involvement in finalizing these pleadings was appropriate and as limited as defendant has suggested, defense counsel could certainly submit to the Court evidence that would support defendant's claims.

[5] The metadata for defendant's current application, which was obviously filed after Mr. Manheimer's digital devices were seized, identifies the author as "leenicole" and the title as "Pleading Wizard," just as all of Mr. Steward's filings in this case while defendant was in custody.

4

example, PTS should avoid reviewing. If this Court is inclined to allow defendant to limit PTS's review of the devices, this Court should only prevent PTS from reviewing the substance of the communications, as the fact that such communications exist is not privileged. The Court should also require defendant to state with particularity the names and email addresses that PTS should take additional precautions when reviewing, and identify which specific devices belonging to Mr. Manheimer he believes would contain such communications.

In sum, this Court should permit PTS to search Mr. Manheimer's devices to determine whether defendant used any device that had access to the internet. Alternatively, before the Court rules on defendant's application to limit PTS's ability to search the devices, the Court should require defendant to explain how any attorney-client privileged communications could exist on Mr. Manheimer's devices. If potentially privileged communications could exist on Mr. Manheimer's devices without defendant having violated his conditions of temporary release, this Court should require defendant to provide specific names and email addresses to assist PTS in limiting their review.