1   NICOLA T. HANNA
    United States Attorney
2   BRANDON D. FOX
    Assistant United States Attorney
3   Chief, Criminal Division
    JULIAN L. ANDRÉ (Cal. Bar No. 251120)
4   Assistant United States Attorney
    Major Frauds Section
5        1100 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-6683
7        Facsimile: (213) 894-6269
         Email:    Julian.L.Andre@usdoj.gov
8
    BRETT A. SAGEL (Cal. Bar No. 243918)
9   Assistant United States Attorney
         Ronald Reagan Federal Building
10       411 West Fourth Street, Suite 8000
         Santa Ana, California 92701
11       Telephone:  (714) 338-3598
         Facsimile:  (714) 338-3708
12       Email:    Brett.Sagel@usdoj.gov

13  Attorneys for Plaintiff
    UNITED STATES OF AMERICA

14                  UNITED STATES DISTRICT COURT

15              FOR THE CENTRAL DISTRICT OF CALIFORNIA

16  UNITED STATES OF AMERICA,          SA CR No. 19-061-JVS

17          Plaintiff,                 GOVERNMENT'S RESPONSE TO DEFENDANT
                                       MICHAEL JOHN AVENATTI'S BRIEF
18               v.                    REGARDING ACCESS TO EAGAN AVENATTI
                                       LLP'S DIGITAL DEVICES; DECLARATION
19  MICHAEL JOHN AVENATTI,             OF BRETT A. SAGEL; EXHIBITS

20          Defendant.

21

22

23       Plaintiff United States of America, by and through its counsel

24  of record, the United States Attorney for the Central District of

25  California and Assistant United States Attorneys Brett A. Sagel and

26  Julian L. André, hereby files its response to the brief regarding

27  access to Eagan Avenatti LLP's digital devices defendant MICHAEL JOHN

28

AVENATTI filed on June 15, 2020, in the above-captioned matter (CR 193).

This response is based upon the attached memorandum of points and authorities, the attached declaration of Assistant United States Attorney Brett A. Sagel and supporting exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 22, 2020          Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division


            /s/
BRETT A. SAGEL
JULIAN L. ANDRÉ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.     INTRODUCTION................................................1

II.    PROCEDURAL BACKGROUND.......................................2

       A.    Defendant's July 2019 Motion to Compel "Unfettered"
             and "Unmonitored" Access to the EA LLP Digital Devices....2

       B.    Prior Productions from the EA LLP Digital Devices........4

       C.    Defendant's Renewed Request for Access to the EA LLP
             Digital Devices.........................................6

III.   ARGUMENT...................................................8

       A.    Defendant Has Failed to Identify Any Legal or Factual
             Basis to Access and Search the EA LLP Digital Devices.....9

       B.    Defendant Has the Discovery He Seeks....................14

IV.    CONCLUSION................................................20

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                 PAGE

**FEDERAL CASES**

Brady v. Maryland,
    373 U.S. 83 (1963)..........................................passim

Giglio v. United States,
    405 U.S. 150 (1972).........................................3, 4

Pennsylvania v. Ritchie,
    480 U.S. 39 (1987)..........................................13

United States v. Anderson,
    481 F.2d 685 (4th Cir. 1973)................................12

United States v. Bagley,
    473 U.S. 667 (1985).........................................13

United States v. Bryan,
    868 F.2d 1032 (9th Cir. 1989)...............................10

United States v. Lucas,
    841 F.3d 796 (9th Cir. 2016)................................13

United States v. Mandel,
    914 F.2d 1215 (9th Cir. 1995)...............................12

United States v. Mincoff,
    574 F.3d 1186 (9th Cir. 2009)...............................13

United States v. Santiago,
    46 F.3d 885 (9th Cir. 1995).................................12

United States v. Wood,
    57 F.3d 733 (9th Cir. 1995).................................10

**FEDERAL STATUTES**

Fed. R. Crim. P. 16..........................................passim

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant MICHAEL JOHN AVENATTI ("defendant") claims the government has an obligation to provide defendant with ongoing access to the computer server and other digital devices belonging to his former law firm, Eagan Avenatti LLP ("EA LLP"), even though this Court previously denied his motion to compel "unfettered, unmonitored access" to the EA LLP digital devices.  In response to defendant's most recent request for access, this Court asked the parties to "brief what legal obligation exists <u>at this point</u> for the government to allow access to that database[1]."  (6/8/20 RT 8 (emphasis added).) Having already produced the relevant materials seized from the EA LLP digital devices, the government has no legal obligation to provide defendant with additional access going forward.  Defendant's cursory brief on this issue has failed to provide any legal or factual basis for the Court to grant defendant such access, and indeed, simply confirms that the Court's prior ruling denying defendant "unlimited, unfettered access" to the EA LLP digital devices was correct.

Defendant's entire brief on this issue is based on a vague and conclusory claim that he is entitled to access the EA LLP digital devices because they contain "critical documents for defense preparation."  (CR 193 at 2.)  Defendant briefly references <u>Brady</u> and

---

[1] Defendant has repeatedly referred to the "IRS terminal" or "IRS database."  However, as the government has previously explained, there is not a "database" or "terminal" containing the entire contents of the EA LLP server and other EA LLP devices.  Defendant is actually seeking -- and has previously sought -- to access and search a forensic copy of the EA LLP server and other EA LLP devices.

Federal Rule of Criminal Procedure 16 ("Rule 16"),[2] however, defendant completely ignores this Court's prior order and provides no legal support for why defendant should be allowed to access or search the EA LLP digital devices now that the government <u>completed</u> its search of the devices.  Furthermore, although defendant claims that the EA LLP digital devices have categories of "critical" documents, he again fails to offer any specific information to support this claim.  Defendant does not identify any specific documents that are missing from the government's extensive prior productions, does not provide any basis to conclude that the evidence he seeks has not already been produced, does not explain why the broadly-described materials he is seeking are "critical," and does not explain why he has not made any legitimate efforts to obtain the purported "critical" material in the past year.  Defendant is merely requesting that the Court authorize him to conduct the same improper "fishing expedition" he sought -- and the Court rejected -- a year ago, except this time defendant seeks to commandeer the government's Privilege Review Team in the process.  This Court should deny defendant's request for further access to the EA LLP digital devices.

## II.   PROCEDURAL BACKGROUND

### A.   Defendant's July 2019 Motion to Compel "Unfettered" and "Unmonitored" Access to the EA LLP Digital Devices

During the course of the government's investigation, it obtained warrants to search a number of digital devices, including a forensic

---

[2] Although defendant does not actually cite <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and only references Rule 16 in the brief's conclusion, the government will treat defendant's brief as seeking access pursuant to both <u>Brady</u> and Rule 16.  However, neither support his request.

2

1   copy of EA LLP's server and other devices belonging to EA LLP that

2   the government seized from the residence of EA LLP's former office

3   manager (collectively, the "EA LLP digital devices").  On July 28,

4   2019, defendant filed a motion to compel seeking "unfettered,

5   unmonitored access" to the EA LLP digital devices.  (CR 50.)

6   Defendant claimed such access was necessary to obtain seven broad

7   categories of information "critical" to his defense:

8           (1) correspondence with clients and others; (2) client
            files; (3) time records; (4) settlement communications and
9           documentation of settlements; (5) correspondence and files
            in relation to the other charges in the indictment; (6)
10          defendant's emails with his tax professionals and others
            relating to his taxes; and (7) accounting information
11          relating to the clients at issue, including documents
            showing client costs and expenses, and associated fees.

12

13  (CR 50 at 3.)  The government opposed defendant's motion because the

14  criminal discovery rules, including Rule 16, <u>Brady</u>, and <u>Giglio v.</u>

15  <u>United States</u>, 405 U.S. 150 (1972), do not provide defendant an

16  independent right to obtain a full copy of or search the EA LLP

17  digital devices, which do not belong to defendant.[3]  (CR 55.)

18      The government argued for defendant to have access to the EA LLP

19  digital devices under Rule 16, defendant would need to make a

20  threshold showing of materiality and would need to identify with

21  specificity the documents that must be produced, and defendant could

22  not rely upon general descriptions.  (CR 55 at 7-11 (citations in

23  original).)  The government stated the seven categories described by

24  defendant were insufficient to compel disclosure, however, it likely

25  would be moot as the scope of the search warrants covered those seven

26

27  _____

28      [3] The Court-appointed receiver for EA LLP also objected to the
    government providing defendant with a complete copy of the EA LLP
    digital devices or unfettered access to such devices.  (<u>See</u> CR 59.)

                                    3

categories.  (Id. at 10-11.)  The government also confirmed that it had and will comply with its Brady and Giglio obligations, and defendant's general assertions and lack of specifically identified evidence provided no basis under Brady and Giglio to search the EA LLP digital devices.  (Id. at 11-13.)  Noting that defendant had not made any attempts to review the EA LLP digital devices in the months leading up to his motion to compel despite numerous offers from the government, the government postulated that defendant may be "more interested in using the EA [LLP digital devices] as a basis to delay this prosecution and other judicial proceedings, than he is in actually accessing the materials on the EA [LLP digital devices]."  (Id. at 23-24.)

On August 26, 2019, this Court denied defendant's motion, noting that defendant was merely seeking to "conduct a fishing expedition" through the EA LLP digital devices.  (CR 63 at 2.)  The Court found "[n]either in his broad brush demand for 'unfettered' access to the Subject Devices nor in his list of categories has [defendant] made the requisite showing under Rule 16."  (Id.)  The Court also noted that government had already produced or was in the process of producing the categories of materials defendant sought.  (Id. at 3.)  Finally, the Court remarked that defendant had alternative means to access the materials, specifically through working with the court-appointed receiver and/or the government's Privilege Review Team, but had chosen not to avail himself of the options.  (Id. at 4.)

B.   Prior Productions from the EA LLP Digital Devices

Due to the amount of time required to complete a full scope and privilege review of the EA LLP digital devices as required under the applicable warrants, from the outset of the case, the government

4

offered defendant to review the EA LLP digital devices at the
Internal Revenue Service-Criminal Investigation's ("IRS-CI") office
and identify relevant materials.  (See, e.g., CR 44 at 10.)  After
the Court denied defendant's motion to compel, defendant contacted
the government for the first time to request to review the EA LLP
digital devices, including the EA LLP server, at IRS-CI's offices.
As the government's review of the EA LLP digital devices was still
ongoing at that time, the government agreed to this request and
arranged for defendant to meet with its Privilege Review Team at IRS-
CI's offices.  To facilitate this review, an IRS-CI computer
investigative specialist was able to set up a virtual computer system
to access and search the forensic copy of the EA LLP server.

    The Prosecution Team understands that defendant and his counsel
visited IRS-CI on two occasions, once in September and once in
October 2019.  According to defendant, on at least two occasions
defendant requested that the Privilege Review Team run a number of
searches on the EA LLP server relating to the victim-clients
referenced in the indictment.  (CR 178 at 2.)  Based on defendant's
visits to IRS-CI's offices and his search requests, the Privilege
Review Team made three informal discovery productions to defendant
consisting of 10,156 files, 244 files, and 40,960 files on October 1,
2019, October 21, 2019, and October 24, 2019, respectively.  After
these productions in October 2019, there were no outstanding requests
for documents, and neither defendant nor his counsel ever requested
to visit or review any evidence at IRS-CI between October 2019 and
June 2020.

    In addition to the informal productions of materials from the EA
LLP digital devices that defendant requested, the Privilege Review

Team and Prosecution Team formally produced search warrant materials from the EA LLP digital devices to defendant on a rolling basis since August 2019.  As of March 13, 2020, when the Privilege Review Team produced approximately 126,288 additional documents, totaling over 1,000,000 pages, directly to defendant, this process was substantially complete.[4]  Defendant has now received almost all of the documents from the EA LLP digital devices that the Privilege Review Team deemed falling within the scope of the warrants.[5]

Moreover, as described in the government's February 2020 status report (CR 99), the government produced the vast majority of the non-search-warrant evidence in this case to defendant in May and June 2019, including witness interview summaries, bank records, tax records, and documents obtained from third-parties such as defendant's victims and former accountant.

### C.  Defendant's Renewed Request for Access to the EA LLP Digital Devices

In defendant's status report filed on May 27, 2020 (CR 164), defendant claimed he had been prevented from going to IRS-CI to review the EA LLP digital devices for documents "critical" for his defense.  In response, the government noted that defense counsel had never even contacted the Privilege Review Team since defendant was temporarily released from custody in April 2020, and not asked to review any of the search warrant materials or electronic devices in IRS-CI's custody since October 2019.  (CR 168 at 7-8.)

---

[4] As the Court is aware, in May 2020, the Prosecution Team produced duplicate copies of 87,226 out of the 126,288 documents the Privilege Review Team had previously produced, totaling over 664,000 pages.  (CR 168 at 2-4.)

[5] Defendant will be receiving a final, very small production from the EA LLP digital devices shortly.  (CR 168 at 12-13.)

During the status conference on June 1, 2020, and the accompanying minute order (CR 169), this Court ordered the parties to provide further briefing addressing defendant's access to digital devices maintained in the custody of IRS-CI.  On June 5, 2020, defendant filed his status report stating that defendant would work directly with the Privilege Review Team to access and search the EA LLP digital devices (CR 172); however, defendant provided no legal basis for why he was entitled to access or search the EA LLP digital devices after the Privilege Review Team completed its search of those devices.  Moreover, defendant did not consult with the government regarding what he claimed he would do, and neither the Prosecution Team nor the Privilege Review Team ever agreed that defendant could use the Privilege Review Team to conduct further searches.

On June 5, 2020, the Government filed its status report and maintained that no legal authority existed to provide defendant further access to the EA LLP digital devices once the government completed the searches of those devices.  (CR 176.)  The government noted that it had previously allowed defendant to work with the Privilege Review Team to review and search the EA LLP digital devices due to the amount of time it would take to complete the scope and privilege review, however, those reviews were since completed.  (Id. at 5.)  The government maintained that allowing defendant to effectively commandeer the Privilege Review Team was not a workable solution and was ripe for abuse and delay.  (Id. at 14-15.)

On June 7, 2020, defendant filed a supplemental report claiming that there were at least five categories "of the most critical documents for the defense" on the EA LLP digital devices at IRS-CI, to which defendant sought access to search with the assistance of the

Privilege Review Team.  (CR 178 at 3.)  Defendant again provided no legal basis for his claim that he be entitled to access to the EA LLP digital devices, let alone to use government resources to conduct his searches.

At the Status Conference on June 8, 2020, this Court asked the parties to "brief what legal obligation exists <u>at this point</u> for the government to allow access to that database[6]."  (6/8/20 RT 8 (emphasis added).)

## III. ARGUMENT

The Court has previously ruled that defendant does not have a right to unfettered, unmonitored access to the EA LLP digital devices.  Since defendant sought access to the EA LLP digital devices in July 2019, the government completed its searches and produced the documents from the EA LLP digital devices deemed to fall within the scope of the search warrants to defendant.  Defendant's claim is even weaker today.  The fact that defendant now seeks to access the EA LLP digital devices through the government's Privilege Review Team, as opposed to being provided his own copy of the devices, is legally irrelevant and should have no impact on this Court's prior ruling. Neither Rule 16 nor <u>Brady</u> provide defendant with a right to use the government's Privilege Review Team to conduct a fishing expedition of the EA LLP digital devices.  And defendant has completely failed to provide any legal or factual basis for the Court to reach a contrary conclusion.

---

[6] The database was in reference to the EA LLP digital devices.

**A.    Defendant Has Failed to Identify Any Legal or Factual Basis to Access and Search the EA LLP Digital Devices**

On June 15, 2020, defendant filed his present brief seeking access to the EA LLP digital devices claiming the devices contain Brady material. (CR 193 at 2.) Referencing his previously filed supplemental status report (CR 178), defendant listed materials at the IRS containing "critical documents for defense preparation," including: emails between staff and lawyers at EA LLP; emails, documents, and other materials between defendant, others on staff and opposing counsel regarding alleged victims including timing and payment of settlement of proceeds; cost and fee information and documentation for cases involving the alleged victims; and other emails and documentation relating to the charges in the indictment. (CR 193 at 2-3.)

Without providing any specific examples of exculpatory material or a single legal citation to support defendant's request for access, defendant claimed the listed material "is potentially exculpatory and the defense therefore needs access under Brady." (Id. at 3.)[7] The body of defendant's brief does not cite Rule 16, however, in defendant's conclusion, defendant argues that both Rule 16 and Brady compel access to the EA LLP digital devices. (Id. at 5.) Neither Rule 16 nor Brady provide defendant a basis for continued access to the EA LLP digital devices to search for the generic categories of

---

[7] On page three of the brief defendant claims that the list of materials is "potentially exculpatory," but on the following page, without providing any additional information regarding the materials sought, defendant asserts the listed materials "are a showing of the existence of exculpatory evidence." (CR 193 at 3-4.) This is but one example of how hollow defendant's position is.

9

items defendant requests.  Defendant's request is not supported by any legal basis.

Defendant also claims that the government must provide access to the EA LLP digital devices to defendant because the materials are deemed to be in the possession of the government.  (Id.)  Defendant's argument is irrelevant and legally wrong.  First, citing United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989), defendant claims "[p]rosecutors are deemed to have access to information in the possession of a federal agency participating in the investigation of a defendant."  (CR 193 at 3.)  Defendant also claims "[p]rosecutors are also deemed to have access to information held by a federal agency charged with 'administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution."  (Id. (quoting United States v. Wood, 57 F.3d 733, 737 (9th Cir. 1995).)

These cases provide no support to defendant's request for access to the EA LLP digital devices.  The Ninth Circuit in Bryan found that the government would need to produce Rule 16 materials from outside of their district if "the prosecutor has knowledge and to which the prosecutor has access," which includes "anything in the possession, custody, or control of any federal agency participating in the same investigation of the defendant."  Bryan, 868 F.2d at 1036.  In Wood, the Ninth Circuit held that prosecutors are deemed to be in possession of Brady material if the agency assisting the prosecution holds that material.  In the present case, neither the Prosecution Team nor IRS-CI, the agency assisting in the investigation and prosecution of defendant, have access to, knowledge of, or possession

of materials on the EA LLP digital devices other than what has already been produced to defendant.

The Privilege Review Team completed its scope and privilege review of the EA LLP digital devices pursuant to the search protocols in the applicable warrants, and defendant has received nearly all of the productions from the search of the EA LLP digital devices -- and a reproduction of non-privileged materials from the Prosecution Team. Although the government technically possesses a forensic copy of the EA LLP digital devices, the government's access to the contents of those devices were limited to the terms of the respective search warrants, and specifically, the items obtained through the search warrants on the devices.  The Prosecution Team and IRS-CI do not have additional access to or possession of anything additional from the EA LLP digital devices.  The government also searched EA Employee 1's residence and Law Firm 1's legal office on March 25, 2019.  As the government has previously stated, defendant's request to search the EA LLP digital devices himself now after the government completed its search is the functional equivalent of letting defendant go and search EA Employee 1's residence and/or Law Firm 1's legal office now to see if the government missed anything.  Defendant's request is not supported by any legal basis.

Defendant's brief is completely silent on the fact that the government has concluded the searches of the EA LLP digital devices and that nearly all of the items defendant claims he needs as "critical" have been produced to defendant -- on more than two occasions.  Despite referring to the categories of materials as "critical" and "crucial" to his defense for over a year and defendant claiming to have "unparalleled knowledge as to a significant amount

of the discovery" (CR 164 at 2), defendant does not explain why he has not already reviewed this material in the last year or previously sought the material from the Privilege Review Team.  Tellingly, defendant's brief completely fails to answer this Court's question of "what legal obligation exists at this point for the government to allow access to that database."  Defendant does not, and cannot, provide any legal basis for his request because no such legal obligation exists.

For the reasons this Court stated last August, Rule 16 does not provide defendant any basis to additional access to the EA LLP digital devices.  Rule 16 sets forth, in relevant part, the government's discovery obligations, to include: items material to preparing the defense; items the government intends to use in its case-in-chief at trial; and items obtained from or belonging to defendant.  Fed. R. Crim. P. 16(a)(1)(E).  The government has produced items it intends to use in its case-in-chief and the EA LLP digital devices do not belong to defendant.  Defendant's list of materials are no more specific now then in defendant's motion in July 2019, therefore, this Court must again find that defendant failed to make the requisite showing of materiality under Rule 16.  See, e.g., United States v. Santiago, 46 F.3d 885, 895 (9th Cir. 1995); United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990); United States v. Anderson, 481 F.2d 685, 694 (4th Cir. 1973).

Defendant's general assertions regarding certain categories of documents that might be found on the EA LLP digital devices are insufficient to establish a right to access and search the EA LLP digital devices pursuant to Brady.  Rather, evidence is material for Brady purposes only if a "reasonable probability" exists that the

result of the proceeding would be different if the government disclosed the information to the defense.  United States v. Lucas, 841 F.3d 796, 807 (9th Cir. 2016) (citing United States v. Bagley, 473 U.S. 667, 682 (1985).)  "[M]ere speculation about material in the government's files" is insufficient to merit production.  United States v. Mincoff, 574 F.3d 1186, 1200 (9th Cir. 2009) (internal quotation marks and citation omitted).

Defendant's brief fails to identify any specific evidence on the EA LLP digital devices that would fall under Brady, fails to explain how such documents are material, and fails to provide the Court with sufficient facts to establish that such documents exist.  The Supreme Court and Ninth Circuit have repeatedly held that defendants do not have a right to conduct an unlimited or unsupervised search of the government's files for Brady material.  See Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987) ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files."); Lucas, 841 F.3d at 807 ("Brady does not permit a defendant to sift through information held by the government to determine materiality.").

Ten months ago the government expressed concerns that defendant appeared more interested in using the EA LLP digital devices as a basis to delay this prosecution than he was in actually accessing the materials on the EA LLP digital devices.  Defendant's actions in this case -- more accurately, inactions in this case -- appear to confirm the government's suspicions.  As defendant has provided no legal basis, and none exists, to permit further access to the EA LLP digital devices, this Court should deny defendant's attempt at

1  further review of the EA LLP digital devices through use of the

2  Privilege Review Team.[8]

3      **B.  Defendant Has the Discovery He Seeks**

4      Defendant's brief references four generic categories of

5  materials that are "critical to his defense preparation" and are

6  "potentially exculpatory." (CR 193 at 2-3.)  Contrary to defendant's

7  claim, the government has already produced to defendant the

8  "critical" materials he seeks to locate on the EA LLP digital

9  devices.  Defendant has received these materials on several occasions

10 through several productions from multiple sources, including any such

11 materials that were found on the EA LLP digital devices.  And, as the

12 Court will see from the examples identified below, these materials

13 are hardly exculpatory as defendant suggests.

14     The government's Privilege Review Team undertook an extensive

15 effort to locate any materials on the EA LLP digital devices that

16 fell within the scope of the applicable warrants and were relevant to

17 the charges so that those materials could be produced to the

18 defense.[9]  The scope key words used to search the EA LLP digital

19 devices included the victims' names and known email addresses (or

20 domain names), case numbers, the names and known email addresses (or

21 domain names) for opposing counsel, and the names of the other

22

23      [8] As the government noted in previous filings, defendant still
24 has alternative means to obtain records from the EA LLP digital
   devices, including working with the EA LLP bankruptcy trustee and/or
25 through a Federal Rule of Criminal Procedure 17 subpoena to the
   bankruptcy trustee overseeing EA LLP's bankruptcy to obtain the files
26 from the original EA LLP digital devices.

27      [9] The government was mindful of the fact that defendant would
   not have his own forensic copy of the EA LLP digital devices when it
28 developed its search protocols and scope key words, and thus sought
   to conduct a broader search for materials falling within the scope of
   the warrants.

individuals or companies involved in the underlying litigation. These scope key words resulted in the Privilege Review Team locating and producing extensive documentation regarding the individual fraud victims, including emails between members of EA LLP and the victims, emails between members of EA LLP discussing the victims' cases, emails between members of EA LLP and co-counsel, emails between members of EA LLP and opposing counsel, as well as emails between members of EA LLP and outside individuals (e.g., experts, vendors, real estate professionals, and others) regarding the underlying litigation and defendant's fraudulent conduct; all of which the government has produced to defendant.  The government's Privilege Review Team also used specific key words to search the EA LLP digital devices for any documents relating to the other charges in the indictment.

Because of the Privilege Review Team's extensive efforts to identify relevant materials, the government produced to defendant well over 100,000 documents from the EA LLP digital devices.[10] Defendant has provided the Court with no basis to conclude that the Privilege Review Team's search of the EA LLP digital devices or production of these materials was insufficient.  Indeed, defendant concedes that he "need[s] further review of the already-disclosed material to know more precisely what needs to be searched for in the

_____

[10] Defendant actually has considerably more documents and materials than the Prosecution Team as the Privilege Review Team produced the following to the defendant, which the Prosecution Team does not have: informal productions of discovery in October 2019; all documents that were within scope, regardless of privilege, from the searches of digital devices; and a full forensic copy of all of defendant's digital devices.

1   [EA LLP digital devices]."  (CR 193 at 4.)[11]

2       In addition to the extensive search warrant evidence the

3   government has produced to defendant, such as the over 1,000,000

4   pages of materials the Privilege Review Team produced in March 2020,

5   the Prosecution Team produced last year much of the materials

6   defendant now claims he needs.  The government obtained emails,

7   correspondence, documentation, among other evidence from: (1) the

8   victims related to the wire fraud counts and their current counsel;

9   (2) opposing counsel and co-counsel in the matters involving the

10  victims; (3) other related individuals to the underlying litigation

11  and fraud allegations involving those victims; and (4) individuals

12  and entities involved with the various other counts in the

13  indictment.  For example, defendant's former accountant provided the

14  government will all emails, documents, and correspondence in her

15  possession or on her servers relating to defendant, his companies,

16  and related tax issues, which were produced to defendant in May and

17  August 2019.  Similarly, the government produced all correspondence

18  and documentation from The Peoples Bank related to the bank fraud

19  counts in May 2019.

20      Below are just a few small examples demonstrating that every

21  category of materials defendant claims he needs from the EA LLP

22  digital devices, the government has already produced -- often

23  multiple times.  The government's broad searches of the EA LLP

24  digital devices captured documents falling within the four generic

25

26  ─────────────────

27      [11] If after reviewing the previously disclosed discovery
    defendant believes there is material not found or turned over on the
    EA LLP digital devices, defendant can, at that time, work with the
28  government or go directly to the Court and specifically identify the
    material to which he believes he is entitled.

categories defendant identified, all of which defendant received in discovery. Any suggestion that the government has yet to produce such documents is simply false.

First, defendant claims that he needs to obtain "email between staff and lawyers" at EA LLP. (CR 193 at 2.) Such communications are undoubtedly included in the materials seized from the EA LLP digital devices and have been produced to defendant. Most notably, EA LLP search warrant materials produced included extensive email correspondence between defendant and EA Employee 1, which further prove a number of the specific allegations contained in the indictment. For example, in June 2018, approximately six months after defendant had provided Client 3, Gregory Barela,[12] with a falsified settlement agreement and embezzled the entirety of Mr. Barela's settlement payment, defendant explicitly instructed EA Employee 1 not to provide Mr. Barela with an executed copy of the actual settlement agreement. (See, e.g., Sagel Decl. Ex. 1.)

Defendant's second category, emails and other materials between defendant and opposing counsel regarding the alleged victims, "including timing and payment of settlement proceeds" (CR 193 at 2), have been produced from multiple sources. The government obtained the relevant communications regarding the settlement payments at issue directly from opposing counsel and produced them in May and June 2019. The government clearly identified these productions on

---

[12] The government has to date referred to Gregory Barela as "Client 3" and Geoffrey Johnson as "Client 1", as they are identified in the indictment, respectively. Mr. Barela and Mr. Johnson, however, have both been identified publicly by name in other public litigation. Accordingly, Mr. Barela and Mr. Johnson have given the government permission to refer to them by name, and agreed that the government does not need to redact their name from exhibits.

its discovery index, and the various search warrant affidavits submitted during the government's investigation described these specific communications with opposing counsel.  (See, e.g., CR 78, Ex. 1 at 135-137; id., Ex. 3 at 16-20, 37-38.)  Communications between defendant and opposing counsel regarding the relevant settlements were also located on the EA LLP server and produced to defendant by the Privilege Review Team and the Prosecution Team. However, there were limited communications between defendant and other lawyers at EA LLP regarding the settlements because defendant intentionally did not include other EA LLP lawyers in settlement communications with opposing counsel or with the clients.  For example, prior to finalizing Geoffrey Johnson's $4,000,000 settlement with the County of Los Angeles, defendant expressly directed other EA LLP lawyers not to discuss the settlement with Mr. Johnson or his family.  (See, e.g., Sagel Decl. Ex. 2.)

Defendant's third category, "cost and fee information" for the cases involving defendant's victims (CR 193 at 2), have been produced in multiple ways.  As the government has repeatedly noted, in August 2019, the government produced EA LLP's QuickBooks files which were seized from one of EA LLP digital devices found at EA Employee 1's residence.  Among other things, the QuickBooks files contain detailed information regarding the costs and expenses incurred in connection with all EA LLP legal matters for which they kept such records, including for three of the four victims identified in the indictment.[13]  (See, e.g., Sagel Decl. Exs. 3-5.)  The government also

---

[13] EA Employee 1, who was principally responsible for maintaining EA LLP's files and accounting records, has told the USAO that there was not a case file created for the representation of Clients 4 and

located the specific EA LLP "cost bills" relating to EA LLP's representations of Mr. Johnson and Mr. Barela on the EA LLP server.[14] (See, e.g., Sagel Decl. Ex. 6-7.)  Notably, defendant never provided these costs bills to his victims, and these costs bills prove that defendant knew exactly how much money defendant owed his victims when defendant decided to simply embezzle the entirety of their settlement payments.

The fourth category defendant claims he needs to search the EA LLP digital devices for are emails and documentation relating to the other charges in the indictment, such as "bank loans, tax filings, tax issues and regulators, and prior bankruptcy cases."  (CR 193 at 2.)  Again, any such materials that the Privilege Review Team located on the EA LLP server have been produced.  For example, the government alleges that defendant provided false financial information to The Peoples Bank in connection with two loans defendant obtained in 2014. (See CR 16, Indictment, Counts 30-31.)  In connection with the $2.75 million loan defendant obtained on behalf of EA LLP, in March 2014 defendant provided The Peoples Bank with a Balance Sheet and a Profit & Loss Statement for EA LLP.  (Sagel Decl. Ex. 8.)  The Privilege Review Team, however, located on the EA LLP server the actual Balance Sheet and Profit & Loss statement that EA Employee 1 exported from EA LLP's QuickBooks system and emailed to defendant.  (Sagel Decl. Exs. 9-10.)  Crucially, prior to sending these spreadsheets to The Peoples

---

5.  Additionally, as defendant did not represent Clients 4 and 5 in litigation, there is no reason to believe there would have been any costs associated with the representation.

[14] Based on a review of the relevant bank records, the government has determined that the cost bill associated with Mr. Johnson was significantly inflated and included approximately $234,877 of expenses EA LLP never actually paid on Mr. Johnson's behalf.

Bank, the spreadsheets were modified to make it appear as if EA LLP was in a stronger financial position by inflating EA LLP's revenues and other assets, and reducing its expenses or liabilities.

The additional productions from the EA LLP digital devices simply confirm and corroborate the materials previously produced to defendant, and do not contain <u>Brady</u> material.  And despite claiming to have "unparalleled knowledge as to a significant amount of the discovery" (CR 164 at 2), well-over a year to review the indictment and detailed search warrants affidavits in this case, and at least three months to search through the materials seized from the EA LLP digital devices, defendant still has not identified a single specific piece of evidence that he believes is missing from the government's productions, let alone explained how such evidence is material or exculpatory.

**IV.   CONCLUSION**

The USAO is aware of its discovery obligations, has complied with them, and has gone to great lengths to produce discovery to defendant in a timely, organized, and efficient manner throughout this case.  As set forth above, defendant offers no legal basis for which he is entitled to further access and review of the EA LLP digital devices after the government completed its search of said devices.  Consistent with this Court's prior Order, the criminal discovery rules do not provide defendant a right to conduct his own search of the EA LLP digital devices and defendant's vague and general descriptions of materials needed does not alter defendant's entitlement.  For the reasons set forth above, and previously, this Court should deny defendant's request for further access to search the EA LLP digital devices.

1          <u>**DECLARATION OF BRETT A. SAGEL**</u>

2          I, Brett A. Sagel, declare as follows:

3          1.   I am an Assistant United States Attorney ("AUSA") in the
4    United States Attorney's Office for the Central District of
5    California.  I am one of the AUSAs assigned to represent the
6    government in <u>United States v. Michael John Avenatti</u>, SA CR 19-61-
7    JVS.  I submit this declaration in support of the government's
8    response to the brief regarding access to Eagan Avenatti LLP's ("EA
9    LLP's") digital devices defendant MICHAEL JOHN AVENATTI ("defendant")
10   filed on June 15, 2020, in the above-captioned matter (CR 193).

11         2.   Attached hereto as Exhibit 1 is a redacted copy of an email
12   from defendant to EA LLP's former office manager ("EA Employee 1"),
13   dated June 29, 2018.  This document was seized from the EA LLP
14   server, produced to defendant by the Privilege Review Team on or
15   about March 13, 2020, and reproduced to defendant by the Prosecution
16   Team on May 8, 2020.

17         3.   Attached hereto as Exhibit 2 is a redacted copy of an email
18   from defendant to other EA LLP employees, dated October 23, 2014.
19   This document was seized from the EA LLP server, produced to
20   defendant by the Privilege Review Team on or about March 13, 2020,
21   and reproduced to defendant by the Prosecution Team on May 8, 2020.

22         4.   Attached hereto as Exhibit 3 is a copy of EA LLP accounting
23   data relating to Geoffrey Johnson, "Client 1," which an Internal
24   Revenue Service – Criminal Investigation ("IRS-CI") Revenue Agent
25   exported from the EA LLP QuickBooks files seized from a computer
26   found at EA Employee 1's residence.  The EA LLP QuickBooks files were
27   produced to defendant by the Prosecution Team on August 26, 2019.

28

5.    Attached hereto as Exhibit 4 is a copy of EA LLP accounting data relating to "Client 2," which an IRS-CI Revenue Agent exported from the EA LLP QuickBooks files seized from a computer found EA Employee 1's residence.  The EA LLP QuickBooks files were produced to defendant by the Prosecution Team on August 26, 2019.

6.    Attached hereto as Exhibit 5 is a copy of EA LLP accounting data relating to Gregory Barela, "Client 3," which an IRS-CI Revenue Agent exported from the EA LLP QuickBooks files seized from a computer found EA Employee 1's residence.  The EA LLP QuickBooks files were produced to defendant by the Prosecution Team on August 26, 2019.

7.    Attached hereto as Exhibit 6 is a redacted copy of an email from EA Employee 1 to defendant regarding "Updated Johnson Cost Bill," dated February 4, 2015, as well the attachment titled "Johnson Updated Invoice.pdf."  These documents was seized from the EA LLP server, produced to defendant by the Privilege Review Team on or about March 13, 2020, and reproduced to defendant by the Prosecution Team on May 8, 2020.

8.    Attached hereto as Exhibit 7 is a redacted copy of an email from EA Employee 1 to defendant regarding "Barela Cost Bill," dated December 19, 2017, as well the attachment titled "Barela Costs.pdf."  These documents were seized from the EA LLP server, produced to defendant by the Privilege Review Team on or about March 13, 2020, and reproduced to defendant by the Prosecution Team on May 8, 2020.

9.    Attached hereto as Exhibit 8 are copies of a Balance Sheet and a Profit & Loss statement for EA LLP, each dated March 10, 2014. The government understands that these documents were submitted to The Peoples Bank in connection with the $2.75 million loan defendant

2

obtained on behalf of EA LLP in March 2014.  The government obtained these documents from The Peoples Bank, and produced them to defendant on May 22, 2019.

10.  Attached hereto as Exhibit 9 is a redacted copy of an email from EA Employee 1 to defendant, dated March 10, 2014, as well as the attachment to that email titled "1-11-3-14.xlsx."  These documents were seized from the EA LLP server, produced to defendant by the Privilege Review Team on or about March 13, 2020, and reproduced to defendant by the Prosecution Team on May 8, 2020.  The attachment, "1-11-3-14.xlsx," was produced in its native Microsoft Excel file format.

11.  Attached hereto as Exhibit 10 is a redacted copy of an email from EA Employee 1 to defendant, dated March 10, 2014, as well as the attachment to that email titled "2014.xlsx."  These documents were seized from the EA LLP server, produced to defendant by the Privilege Review Team on or about March 13, 2020, and reproduced to defendant by the Prosecution Team on May 8, 2020.  The attachment, "2014.xlsx," was produced in its native Microsoft Excel file format.

12.  The identities of Mr. Johnson and Mr. Barela have already been publicly disclosed in connection with other litigation matters regarding the allegations in the indictment.  Accordingly, through their respective counsel, Mr. Johnson and Mr. Barela have authorized the government to publicly disclose their respective identity in this matter, including attaching exhibits without redacting their names.

///

///

///

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and that this declaration is executed at Santa Ana, California, on June 22, 2020.

/s/
BRETT A. SAGEL
