1

2

3

4              UNITED STATES DISTRICT COURT

5            CENTRAL DISTRICT OF CALIFORNIA

6                  SOUTHERN DIVISION

7                     - - -

8   THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

10   UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
                      Plaintiff,  )
          vs.                     )
11                                )  SACR-19-00061-JVS
     MICHAEL JOHN AVENATTI,       )
12                   Defendant.   )
     ----------------------------)
13

14

15      REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            Santa Ana, California

17             June 11, 2020

18

19             SHARON A. SEFFENS, RPR
               United States Courthouse
20             411 West 4th Street, Suite 1-1053
               Santa Ana, CA  92701
21             (714) 543-0870

22

23

24

25

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     JULIAN L. ANDRE
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   H. DEAN STEWARD
     H. DEAN STEWARD LAW OFFICES
15   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
16   (949) 481-4900

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| | 1 | SANTA ANA, CALIFORNIA; THURSDAY, JUNE 11, 2020; 1:01 P.M. |
| 12:51 | 2 | (Per telephonic conference) |
| 01:01 | 3 | THE CLERK:  Item No. 1, SACV-19-00061-JVS, United |
| 01:01 | 4 | States of America versus Michael John Avenatti. |
| 01:01 | 5 | Appearances on behalf of the government, please. |
| 01:01 | 6 | MR. SAGEL:  Good afternoon, Your Honor.  Brett |
| 01:01 | 7 | Sagel and Julian Andre on behalf of the government. |
| 01:01 | 8 | THE CLERK:  And on behalf of the defense. |
| 01:01 | 9 | MR. STEWARD:  Dean Steward for Mr. Avenatti.  We |
| 01:01 | 10 | have a waiver on file, and Mr. Avenatti is on this call. |
| 01:01 | 11 | THE COURT:  Good morning. |
| 01:01 | 12 | Preliminarily, I find it's appropriate to conduct |
| 01:01 | 13 | this hearing telephonically, and it is in the interests of |
| 01:01 | 14 | justice to do so.  I am balancing the need to go forward in |
| 01:01 | 15 | the case in an expeditious manner against the health issues |
| 01:02 | 16 | created by the pandemic.  Over 7,000 cases of COVID-19 have |
| 01:02 | 17 | been reported in Orange County. |
| 01:02 | 18 | Accordingly, I find it's appropriate to conduct |
| 01:02 | 19 | this hearing telephonically.  I find that the public |
| 01:02 | 20 | interest is adequately addressed by the fact that on the |
| 01:02 | 21 | docket the call-in number has been published, and there is |
| 01:02 | 22 | the ability for the public if anyone so desires to listen to |
| 01:02 | 23 | this hearing. |
| 01:02 | 24 | Let me begin with this question.  I would like to |
| 01:02 | 25 | know each party's view as to how an inspection of the |

01:02  1  computer can be conducted consistent with respect to the

01:02  2  attorney/client privilege.

01:02  3          Let's begin with you, Mr. Steward.

01:02  4          MR. STEWARD:  I think, Your Honor, we have to rely

01:02  5  on Pretrial Services and their forensics team to recognize,

01:02  6  for example, a document from me that perhaps has edit marks

01:03  7  on it.  I can see that it's somewhat nebulous for them, but

01:03  8  these are all experienced folks in our federal system, and I

01:03  9  think they could identify a file that was labeled something

01:03  10  that may well be attorney/client privilege.

01:03  11          THE COURT:  Let me understand the mechanics.  Are

01:03  12  you saying that you have been transmitting to Mr. Avenatti

01:03  13  the documents for review in the computer in that household?

01:03  14          MR. STEWARD:  Not to Mr. Avenatti but to

01:03  15  Mr. Manheimer.

01:03  16          THE COURT:  Okay.  And the process has been you

01:03  17  would send Mr. Manheimer a document, and he would print it

01:03  18  and deliver it to Mr. Avenatti?  Is that the mechanism?

01:03  19          MR. STEWARD:  Correct.

01:03  20          THE COURT:  How would you get communications back

01:03  21  from Mr. Avenatti?

01:03  22          MR. STEWARD:  The same way.  He would handwrite

01:03  23  it, give it to Mr. Manheimer, and he would then send it back

01:04  24  to me, the comments or whatever it may be.

01:04  25          THE COURT:  He would make a pdf of it and e-mail

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:04   1   it back to you?

01:04   2          MR. STEWARD:  I think that's the way we did it,

01:04   3   yes.  Your Honor, let me be clear.  It may have been an

01:04   4   e-mail back to me from Mr. Manheimer.

01:04   5          THE COURT:  Okay.  So you would be content to have

01:04   6   Pretrial Services review the e-mails back and forth and

01:04   7   their ability to discern which type of communications

01:04   8   constitute attorney/client communications one way or the

01:04   9   other?

01:04  10          MR. STEWARD:  Yes, I would.

01:04  11          THE COURT:  Okay.  Mr. Andre, or, Mr. Sagel.

01:05  12          MR. SAGEL:  Your Honor, I guess the first thing

01:05  13   that I would say regarding what Mr. Steward just said is if

01:05  14   Mr. Steward could provide Pretrial Services with --

01:05  15   presumably, we know Mr. Steward's e-mail address if it's the

01:05  16   one he uses in this case but the other side of the e-mail

01:05  17   communications.  I think that would make the Pretrial

01:05  18   Services forensic team's job much simpler for them to

01:05  19   segregate those e-mails out.  It would allow them to look at

01:05  20   them very briefly and cursory to determine if it was the

01:05  21   procedure that has been identified by Mr. Steward both in

01:05  22   filings and in court -- both now and on Monday.  So I think

01:05  23   a little further bit detail is needed in how those

01:05  24   communications went back and forth, specifically, from which

01:05  25   e-mail to which e-mail.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:05   1          THE COURT:  So you're suggesting that they ought
01:05   2   to be able to open up the e-mails themselves which clearly
01:06   3   might be attorney/client communications, take a quick look,
01:06   4   and make a determination?  Is that what you are saying?
01:06   5          MR. SAGEL:  Correct.  In light of what Mr. Steward
01:06   6   is saying, unless I'm misunderstanding him, he is saying
01:06   7   they're looking to rely on the forensic team's ability to
01:06   8   identify attorney/client privileged material.  I think we
01:06   9   would agree.  And by looking and segregating those e-mails
01:06   10  out, it would be clear from it -- I'm not sure we would
01:06   11  agree there would even be such communication, but you could
01:06   12  easily identify in those e-mails this is a document or a
01:06   13  draft going one way to the other with comments on a draft.
01:06   14  They don't need to really read anything.  They just need to
01:06   15  spot check that.
01:06   16          When it really boils down to it, what we are
01:06   17  looking for -- when I say we are looking for it, I'm not
01:06   18  sure that we are looking for anything.  But I think what the
01:06   19  Court is seeking in this inquiry and what I think is the
01:06   20  right thing to do is any e-mails between Mr. Steward and
01:07   21  Mr. Manheimer as it relates to the filing of documents is
01:07   22  hardly the crux of this inquiry.  I guess I would leave it
01:07   23  at that.  It really kind of boils down to who is the one who
01:07   24  is searching, doing the research, and using that computer?
01:07   25          Mr. Steward, which I believe he could do right

01:07  1    now, wants to tell this Court that he's the one doing the
01:07  2    searching, the legal research, the pulling down of articles
01:07  3    that all have to do with MCB, attaching them to the document
01:07  4    and so forth.  He can even submit that to the Court
01:07  5    in-camera, and that part of the inquiry as it relates to the
01:07  6    pleadings is probably somewhat mooted.
01:07  7          But when it really boils down to it, I think
01:07  8    that's just one piece of the puzzle of whether or not
01:07  9    Mr. Avenatti is using a device that is connected or has
01:07  10   access to the Internet.  That's what we're talking about.
01:07  11   So when it really boils down to the search of the -- the
01:08  12   communications between Mr. Manheimer and Mr. Steward, if
01:08  13   they're really just the sending of drafts or comments of
01:08  14   drafts back and forth, I don't think anybody is going to ask
01:08  15   to look further at that.
01:08  16          THE COURT:  You need to basically come to an
01:08  17   agreement to how Pretrial Services ought to proceed, but one
01:08  18   alternative is to have the taint team make this review.
01:08  19          MR. SAGEL:  You're referring to the government
01:08  20   taint team?
01:08  21          THE COURT:  Right.
01:08  22          MR. SAGEL:  They're not on the call.  I think they
01:08  23   would probably want to say, no, thank you, which may not be
01:08  24   their choice.  I guess my initial response is, again, if --
01:08  25   I don't work with the Pretrial Services forensic team, but I

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:09   1   could tell you how it would probably work if the government

01:09   2   were handling this.

01:09   3         There would be a somewhat easy way in the download

01:09   4   to segregate out any e-mail that came to or from -- I don't

01:09   5   know what Mr. Manheimer's e-mail address is, but assuming

01:09   6   it's JManheimer@gmail.com or something along those lines,

01:09   7   you would be able to segregate all e-mails to and from that

01:09   8   address that also went to or from Mr. Steward's e-mail

01:09   9   address and put those to the side if those are what

01:09  10   Mr. Steward is saying are attorney/client privileged

01:09  11   communications.

01:09  12         I would suggest Pretrial Services can look on that

01:09  13   computer for any of whatever Mr. Avenatti's e-mail addresses

01:09  14   were, which Pretrial Services has those, and various other

01:09  15   things that would demonstrate that Mr. Avenatti was on that

01:10  16   computer.  I think they could and should start there as

01:10  17   opposed to focusing and worrying about the communications

01:10  18   between Mr. Steward and Mr. Manheimer.  Again, it could be a

01:10  19   moot point if they find sufficient evidence elsewhere that

01:10  20   Mr. Avenatti was using those computers.

01:10  21         THE COURT:  But it seems to me to answer that

01:10  22   question requires more than looking at the e-mails, for

01:10  23   example, internet search history.

01:10  24         MR. SAGEL:  Correct.  For example, what we have

01:10  25   suggested to Pretrial Services is in Mr. Avenatti's -- what

01:10   1   we believe are some of the briefs that has the different

01:10   2   metadata showing that they were authored on Mr. Manheimer's

01:10   3   computers, there are various newspaper articles or on-line

01:10   4   articles that are either attached or cited to in those

01:10   5   briefs.

01:10   6          We believe that Pretrial Services or their

01:11   7   forensic team could easily check the web history to

01:11   8   determine were those articles found on that computer,

01:11   9   downloaded onto the computer -- those are two things -- to

01:11   10  look to see what usage in private browsing was used on the

01:11   11  computer or what web history was deleted on those computers.

01:11   12          Those are all various things that the forensic

01:11   13  team could do that would either show circumstantially or

01:11   14  potentially directly when and what were used for the

01:11   15  creation of these briefs alone.  That's also assuming -- if

01:11   16  we are talking about Mr. Avenatti potentially using these

01:11   17  computers to write these briefs, I don't think that that's

01:11   18  the only time he was using those digital devices.

01:11   19          THE COURT:  Mr. Steward.

01:11   20          MR. STEWARD:  Well, I agree somewhat with

01:11   21  Mr. Sagel.  I would have a strong preference for Pretrial

01:11   22  Services rather than the taint team only because I believe

01:11   23  they are by definition a neutral.  I understand the function

01:12   24  of the taint team, but the optics of it is far better.

01:12   25          Not only that, the forensic team for Pretrial

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:12  1   Services I believe has quite a bit of experience doing this

01:12  2   sort of inquiry, but it's generally in a different kind of

01:12  3   case.  My suspicion is they are quite good at it.  So I

01:12  4   would prefer them to take a look at it.  Again, I'm fine

01:12  5   with them making a determination whether there is any

01:12  6   attorney/client privilege.  I think beyond that I would

01:12  7   submit.

01:12  8          THE COURT:  Well, let's go forward in that

01:12  9   fashion.  Pretrial Services will make the inspection.

01:12 10   They're entitled to open up any e-mail for the limited

01:12 11   purpose of determining whether it's an attorney/client

01:12 12   communication.

01:12 13          Let me back up one step.  I accept the proposition

01:12 14   that for present purposes Mr. Manheimer is merely a conduit,

01:12 15   and that's a legitimate way to get communications from

01:13 16   client to attorney and attorney to client.  He is basically

01:13 17   the electronic Fed Ex man.  So I don't see that as vitiating

01:13 18   any attorney/client communication.

01:13 19          So let's go forward with Pretrial Services

01:13 20   conducting its inspection understanding that it's entitled

01:13 21   to open a document sufficient for it to determine whether

01:13 22   it's attorney/client privilege but not to otherwise review

01:13 23   any documents.

01:13 24          So is everybody prepared to go forward in that

01:13 25   fashion?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:13  1          MR. STEWARD:  Yes, Your Honor, and I will provide

01:13  2  Pretrial with my e-mail address and Mr. Manheimer's address

01:13  3  and anything else they need.

01:13  4          THE COURT:  Okay.  I spoke to the Pretrial

01:13  5  Services officer yesterday afternoon.  As a matter of

01:13  6  caution, the officer decided to not go forward with any

01:13  7  further inspection absent advice from the Court.  I will

01:13  8  call the Pretrial Services officer and convey the results of

01:14  9  this hearing.

01:14  10          MR. STEWARD:  That's fine, Your Honor.

01:14  11          THE COURT:  The second topic is what arrangements

01:14  12  are in place for Mr. Manheimer's deposition?

01:14  13          MR. SAGEL:  This is Brett Sagel.

01:14  14          We have currently agreed on next Wednesday.  The

01:14  15  government has secured a conference room in the Ronald

01:14  16  Reagan Federal Building, as well as we are securing a court

01:14  17  reporter for it.  So as of right now, the specific details I

01:14  18  think Mr. Steward and the government will finalize in the

01:14  19  next day, and we will file the status report as you

01:14  20  requested.  As of right now, it looks like Mr. Manheimer's

01:14  21  deposition will be at 1:00 p.m. next Wednesday, June 17.

01:14  22          THE COURT:  Okay.  You need to make a posting or

01:14  23  in some other fashion advise the public that the public can

01:14  24  attend that.

01:14  25          MR. SAGEL:  We will, Your Honor.  One of the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:15  1   things we are working on that we will hopefully have in our

01:15  2   status report that we will file tomorrow the call-in number.

01:15  3   The normal call-in number that we can use at the U.S.

01:15  4   Attorney's Office is usually limited to I think about ten

01:15  5   people, so we put in a request for a separate type of

01:15  6   call-in number that increases the number of people who can

01:15  7   attend.  We are going to work out the specifics with

01:15  8   Mr. Steward, but there will be a public filing with the

01:15  9   call-in number, the time, and the details.

01:15  10          THE COURT:  So you do anticipate that basically

01:15  11  there will be an open line that people can call into and

01:15  12  listen to the deposition?

01:15  13          MR. SAGEL:  Yes, Your Honor.  We have not fully

01:15  14  gone over this with Mr. Steward because Mr. Andre and I have

01:15  15  been working on the details yesterday and today.  But the

01:15  16  building itself -- both the Courts and GSA will not let us

01:15  17  use a courtroom, so we have to use a conference room.  The

01:16  18  only way that it sounds like we can do it through a

01:16  19  conference call so it's open to the public is to have two

01:16  20  phones in the room, one by the witness and one by whichever

01:16  21  attorney is asking the questions also called into the

01:16  22  call-in number so that people can hear what is going on

01:16  23  because it will not be through the speaker system that we

01:16  24  normally use in the courtrooms and a phone.  So we will do

01:16  25  it in a conference room, but we are working on the logistics

01:16     1    to get that done that way.

01:16     2          THE COURT:  Okay.  I will look for the particulars

01:16     3    and the logistics in your upcoming report.

01:16     4          Is there anything else anyone would like to raise?

01:16     5          MR. STEWARD:  I would just note that Mr. Manheimer

01:16     6    has retained counsel.  His attorney is a gentleman by the

01:16     7    name of Shawn Perez from Las Vegas, and he will be there at

01:16     8    1:00 on Wednesday with his client.

01:16     9          THE COURT:  Okay.  If any problems arise, I think

01:17    10    you ought to be able to get ahold of me fairly quickly

01:17    11    through Ms. Bredahl, that is, if problems arise during the

01:17    12    course of the deposition.

01:17    13          MR. STEWARD:  That's fine.

01:17    14          MR. SAGEL:  Thank you.

01:17    15          THE COURT:  Okay.  Thank you for making yourselves

01:17    16    available on short notice.

01:17    17          MR. STEWARD:  Certainly.  Thank you.

01:17    18          MR. SAGEL:  Thank you.

01:17    19          (Whereupon, the proceedings were concluded.)

         20                     *      *      *

         21

         22

         23

         24

         25

CERTIFICATE

I hereby certify that pursuant to Section 753,
Title 28, United States Code, the foregoing is a true and
correct transcript of the stenographically reported
proceedings held in the above-entitled matter and that the
transcript page format is in conformance with the
regulations of the Judicial Conference of the United States.

Date:  July 2, 2020

/s/   Sharon A. Seffens  7/2/20
_____
SHARON A. SEFFENS, U.S. COURT REPORTER