UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

```
UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
                 Plaintiff,    )
     vs.                       )
                               )   SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,         )
                 Defendant.    )
-------------------------------)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

July 6, 2020

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     JULIAN L. ANDRE
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   H. DEAN STEWARD
     H. DEAN STEWARD LAW OFFICES
15   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
16   (949) 481-4900

17

18

19

20

21

22

23

24

25
```

```
           1    SANTA ANA, CALIFORNIA; MONDAY, JULY 6, 2020; 9:00 A.M.
           2              (Per telephonic conference)
           3              THE CLERK:  Calling Item No. 1, SACR-19-00061-JVS,
           4    United States of America versus Michael John Avenatti.
08:24      5              Appearances for the government, please.
09:00      6              MR. ANDRE:  Good morning, Your Honor.  Julian
09:00      7    Andre and Brett Sagel on behalf of the United States.
09:00      8              THE CLERK:  And on behalf of the defense.
09:00      9              MR. STEWARD:  Good morning, Your Honor. Dean
09:00     10    Steward on behalf of Mr. Avenatti.  We have a waiver on
09:00     11    file, and in addition, he is on our conference call this
09:00     12    morning.
09:00     13              THE COURT:  Okay.  Good morning.
09:00     14              Mr. Avenatti, do you consent to conducting this
09:00     15    status conference telephonically?
09:00     16              THE DEFENDANT:  Yes, sir.
09:00     17              THE COURT:  Thank you.
09:00     18              Well, first on my list is the Pretrial Services
09:00     19    report.  I don't think it merits any action at this time.
09:00     20              Does the government have a comment?
09:00     21              MR. ANDRE:  Your Honor, this is Julian Andre.
09:00     22              There are kind of two issues we wanted to flag.
09:01     23    First, starting with the forensic report, our understanding
09:01     24    from Pretrial Services is that the Court authorized Pretrial
09:01     25    Services to provide a report to both parties.  After
```

```
09:01   1   receiving the report, as well as the attachments, the
09:01   2   defense objected to us obtaining the report and reviewing
09:01   3   the report including the attachments on the basis of -- they
09:01   4   are claiming that somehow the report is privileged.
09:01   5             AUSA Sagel and I had already briefly reviewed the
09:01   6   report.  We ceased reviewing the report at the defense's
09:01   7   request.  Our understanding is that there is no privileged
09:01   8   information in that report.  That at most it contains
09:01   9   details that would be in a standard privilege log and that
09:01  10   the government should be allowed to review that.
09:01  11             We haven't heard anything from the defense since
09:01  12   they first -- since they raised the issue.  They haven't
09:02  13   filed anything.  They haven't done anything.  So I think
09:02  14   that was one thing that would need to be resolved before the
09:02  15   government can fully comment as to the inquiry regarding the
09:02  16   defendant's violations.  So that's the first issue I wanted
09:02  17   to flag for the Court.
09:02  18             The second issue is that we did finally receive
09:02  19   the initial draft of the deposition transcript from
09:02  20   Mr. Manheimer last week.  Mr. Manheimer's counsel -- he has
09:02  21   separate counsel -- had requested at the deposition that his
09:02  22   client be provided time to review it as you would under the
09:02  23   Federal Rules of Civil Procedure.  We agreed that seemed
09:02  24   appropriate, so he has until I believe Thursday to review
09:02  25   the transcript and provide any changes or corrections he may
```

| | | |
|---|---|---|
| 09:02 | 1 | need to make. |
| 09:02 | 2 | What the government would propose is once we've |
| 09:02 | 3 | had a chance to actually get access to the forensic report |
| 09:02 | 4 | again and once we've had a chance to actually have the |
| 09:02 | 5 | finalized deposition transcript that we be allowed an |
| 09:03 | 6 | opportunity to submit further information to the Court in |
| 09:03 | 7 | writing regarding the defendant's violations of his |
| 09:03 | 8 | conditions. |
| 09:03 | 9 | We think it's at a minimum important for the Court |
| 09:03 | 10 | to have kind of a full picture prior to determining whether |
| 09:03 | 11 | to extend the temporary release that's due to expire on |
| 09:03 | 12 | July 24, or -- and if the Court is still inclined to extend |
| 09:03 | 13 | that, to evaluate how long that extension should be and |
| 09:03 | 14 | whether it's appropriate for Mr. Manheimer to continue to |
| 09:03 | 15 | serve as custodian. |
| 09:03 | 16 | So I think what our request today would be is that |
| 09:03 | 17 | first the Court either confirm that we are authorized to |
| 09:03 | 18 | review the forensic report, which is what we understand had |
| 09:03 | 19 | already occurred, or review the report in-camera and then |
| 09:03 | 20 | release it to us, if appropriate, and then provide us with |
| 09:03 | 21 | some time once we have the finalized transcript at the end |
| 09:04 | 22 | of this week to submit some information to the Court in |
| 09:04 | 23 | writing. |
| 09:04 | 24 | THE COURT: Mr. Steward. |
| 09:04 | 25 | MR. STEWARD: Yes, Your Honor. That brings up a |

| | | |
|---|---|---|
| 09:04 | 1 | couple of issues.  First, on the transcript, my |
| 09:04 | 2 | understanding on the civil side is that once the person has |
| 09:04 | 3 | been deposed and has received the transcript they have 30 |
| 09:04 | 4 | days to make corrections.  It's my understanding, however, |
| 09:04 | 5 | that counsel for Mr. Manheimer has represented that he will |
| 09:04 | 6 | have the transcript finalized by his client by this Friday, |
| 09:04 | 7 | so everyone should have the final version then. |
| 09:04 | 8 | The government seems to have combined two |
| 09:04 | 9 | different things.  One is the forensic report and their |
| 09:04 | 10 | allegations about violations, and then they've also bundled |
| 09:04 | 11 | in the issue of the temporary release.  We think those are |
| 09:04 | 12 | two distinct issues, and we would much rather address those |
| 09:04 | 13 | individually. |
| 09:04 | 14 | We are still researching the issue of the material |
| 09:05 | 15 | in the Pretrial Services report and more importantly the |
| 09:05 | 16 | attachments.  We haven't filed anything yet because we |
| 09:05 | 17 | haven't decided what to do, if anything, about it.  The |
| 09:05 | 18 | government's concern may be premature.  I just don't know. |
| 09:05 | 19 | But I suggest we take this a step at a time, and the next |
| 09:05 | 20 | step is for everyone to get the final version of the |
| 09:05 | 21 | transcript at the end of this week and kind of go from |
| 09:05 | 22 | there. |
| 09:05 | 23 | We are more than willing to brief the issue having |
| 09:05 | 24 | to do with temporary release.  Yes, obviously, given the |
| 09:05 | 25 | current state of the pandemic, which in our view is worse |

|  |  |  |
|---|---|---|
| 09:05 | 1 | than it was when my client was released, we are going to be |
| 09:05 | 2 | asking for an extension.  How long we're going to ask for |
| 09:05 | 3 | and what we're going to use to support our request kind of |
| 09:05 | 4 | depends on where we are. |
| 09:05 | 5 | Again, we're thinking about the end of this week |
| 09:05 | 6 | for doing the filing for that request.  As we're all aware, |
| 09:06 | 7 | things change on a daily basis, and sadly here in California |
| 09:06 | 8 | and nationwide, things are going far worse than anyone had |
| 09:06 | 9 | hoped.  But I think both the government and the defense need |
| 09:06 | 10 | to explain their positions in writing for the Court, and we |
| 09:06 | 11 | would ask for the ability to do that. |
| 09:06 | 12 | So I guess it sort of boils down to -- we don't |
| 09:06 | 13 | object to the government's request for briefing on both the |
| 09:06 | 14 | forensic report and the extension of time, but the linkage |
| 09:06 | 15 | between the two we suggest is tenuous at best. |
| 09:06 | 16 | We also -- obviously, our position is that |
| 09:06 | 17 | Mr. Avenatti has not violated his conditions at all and that |
| 09:06 | 18 | the transcript supports that. |
| 09:06 | 19 | Beyond that, Your Honor, we'd submit. |
| 09:06 | 20 | MR. ANDRE:  Your Honor, this is Julian Andre. |
| 09:06 | 21 | If I could respond briefly.  The first problem we |
| 09:06 | 22 | have here is this forensic report was e-mailed by Pretrial |
| 09:07 | 23 | Services to our understanding with the Court's approval to |
| 09:07 | 24 | the parties I believe on Tuesday night.  We received an |
| 09:07 | 25 | e-mail on Wednesday from Mr. Steward saying this is |

```
09:07   1   privileged.  Now we are here Monday morning, and he's saying
09:07   2   we're still researching.  We may or may not file something.
09:07   3            From what we've gleaned from our preliminary
09:07   4   review, that information is entirely relevant.  That
09:07   5   information in that report confirms that Mr. Avenatti did
09:07   6   violate the conditions of his release.  It confirms that
09:07   7   Mr. Steward and Mr. Avenatti's prior representations to this
09:07   8   Court were at a minimum extremely misleading.
09:07   9            Mr. Steward said Mr. Manheimer's testimony says
09:07  10   that Mr. Avenatti didn't violate the conditions.  That's
09:07  11   actually not accurate.  Mr. Manheimer testified explicitly
09:07  12   that on at least two occasions Mr. Avenatti used his
09:07  13   computer to do some work, which would mean that he in fact
09:08  14   used a computer that was capable of accessing the internet
09:08  15   in violation of his conditions.
09:08  16            Now, there's going to be an issue as to --
09:08  17   obviously the Court will have to determine, you know --
09:08  18   review that evidence and determine if in fact you agree with
09:08  19   us that there was a clear violation and then determine what
09:08  20   the remedy for that is and whether it should impact any
09:08  21   extension of the release conditions, but we do believe the
09:08  22   two are together.
09:08  23            The Court should I think in evaluating whether to
09:08  24   extend the temporary release consider the defendant's
09:08  25   conduct during the 90 days in which he is on release and
```

| | | |
|---|---|---|
| 09:08 | 1 | should consider whether the custodian is a person who is |
| 09:08 | 2 | capable of supervising the defendant during any extension of |
| 09:08 | 3 | that release.  I think the Court once it has had a chance to |
| 09:08 | 4 | review the transcript will share our concerns regarding |
| 09:08 | 5 | Mr. Manheimer continuing to serve as a custodian. |
| 09:08 | 6 | But I think the first thing here that we are |
| 09:08 | 7 | concerned about is the forensic report.  We have basically |
| 09:09 | 8 | one hand tied behind our back because we are having the |
| 09:09 | 9 | defense say you can't review this -- if you review this, |
| 09:09 | 10 | you're violating our privilege -- while at the same time not |
| 09:09 | 11 | doing anything.  They haven't filed anything.  They haven't |
| 09:09 | 12 | sought anything.  Originally, Mr. Steward requested 48 hours |
| 09:09 | 13 | to review it and determine what they were going to do.  That |
| 09:09 | 14 | ended I believe on either Thursday or Friday.  Here we are, |
| 09:09 | 15 | and they're saying we still need more time to research. |
| 09:09 | 16 | So our request would be that the Court review the |
| 09:09 | 17 | forensic report and attachments in-camera and make a |
| 09:09 | 18 | determination.  From what we saw, we believe that this is |
| 09:09 | 19 | nonprivileged information that's effectively -- I guess |
| 09:09 | 20 | Pretrial Services had attached a privilege log at the back |
| 09:09 | 21 | with the date, time, sender, and whether there is an |
| 09:09 | 22 | attachment to an e-mail. |
| 09:09 | 23 | THE COURT:  Well, number one, let's get the |
| 09:09 | 24 | forensic report.  At least provide a copy to the Court so I |
| 09:09 | 25 | can read it.. |

```
09:09   1              From receipt of the transcript, you've got seven
09:10   2   days, Mr. Steward, to make any filing you wish requesting
09:10   3   any relief you request, including whether you think the
09:10   4   report itself is somehow protected.  I reviewed it, and it
09:10   5   seems to me there's no more information there than you'd
09:10   6   find in a carefully and diligently prepared privilege log,
09:10   7   but you can brief that.
09:10   8              Until that issue is resolved, I'll ask that the
09:10   9   government not look at the report.  I'll afford you adequate
09:10  10   time to do whatever you want to do based on the report.
09:10  11              MR. ANDRE:  Your Honor, this is Julian Andre.
09:10  12              If I could ask for clarification from the Court.
09:10  13   When are you requiring the defense to submit something with
09:11  14   respect to the issues regarding the report?  They've had
09:11  15   that for close to a week now.
09:11  16              THE COURT:  Well, I think it gets kind of
09:11  17   interlocked with the deposition.  So seven days from Friday,
09:11  18   so next Friday.  Not this Friday but the next Friday.
09:11  19              With regard to --
09:11  20              MR. ANDRE:  Your Honor, will the government have a
09:11  21   sufficient amount of time to respond to that?
09:11  22              THE COURT:  Absolutely.  Prima facie seven days.
09:11  23   If you think you need more, you can apply.
09:11  24              MR. ANDRE:  Thank you, Your Honor.
09:11  25              THE COURT:  Okay, with regard to Mr. Avenatti's
```

```
09:11   1   release, I'm going to direct that he continue to be released
09:11   2   for another 60 days subject to all of the terms and
09:11   3   conditions including revocation.  If it turns out that I
09:11   4   should take some action with respect to bail in light of the
09:12   5   report in the deposition, I'll do that.  I've clearly
09:12   6   reserved my position to have him remanded at any point in
09:12   7   time after hearing the parties, so we don't need to worry
09:12   8   about that issue at present.
09:12   9           The other issue I wanted to talk about is the
09:12  10   Eagan/Avenatti digital devices.  I think I've confused the
09:12  11   discussion by referring to that as a database.  But as the
09:12  12   government actually points out, we're really talking about
09:12  13   several Eagan/Avenatti digital devices.
09:12  14           I've read the parties' briefs, and I have
09:12  15   determined that there be no further access afforded
09:12  16   Mr. Avenatti.  I think it's critical to see how this
09:12  17   situation came about.  Last fall the government's production
09:12  18   wasn't proceeding I think as everyone had hoped it would.
09:13  19   As an accommodation, the government offered to make the
09:13  20   taint team available to assist in the searches, and on two
09:13  21   occasions in October, Mr. Avenatti availed himself of that
09:13  22   opportunity.  He didn't make any further effort to avail
09:13  23   himself of that opportunity thereafter until the issue came
09:13  24   up last month.
09:13  25           I don't believe that there is any requirement of
```

| | | |
|---|---|---|
| 09:13 | 1 | law to afford Mr. Avenatti access to those materials in the |
| 09:13 | 2 | first place.  At this point, the government has made or has |
| 09:13 | 3 | substantially made its production.  Nothing in Rule 16 |
| 09:13 | 4 | allows a defendant to retrace the government's steps in |
| 09:13 | 5 | assessing whether it's accurately and fully produced or not. |
| 09:13 | 6 | There's nothing in Rule 16 that requires that, and it's the |
| 09:13 | 7 | government's responsibility to ensure that it complies with |
| 09:14 | 8 | Rule 16, as well as its obligations under Brady and Giglio. |
| 09:14 | 9 | In the usual course, if a defendant believes that |
| 09:14 | 10 | there is a gap in the production, the defendant flags that |
| 09:14 | 11 | for the Court by way of a Motion to Compel.  The government |
| 09:14 | 12 | is forced to respond.  The government is required to give |
| 09:14 | 13 | the Court a straight-up answer.  The material is produced, |
| 09:14 | 14 | or it doesn't exist, or it will be produced. |
| 09:14 | 15 | I think that is the correct procedure, and I |
| 09:14 | 16 | believe that the Supreme Court's decision in Pennsylvania |
| 09:14 | 17 | versus Ritchie totally supports the Court's position.  I |
| 09:14 | 18 | think it's worth reading a paragraph out of that decision, |
| 09:14 | 19 | which I think adequately tracks the situation here. |
| 09:14 | 20 | Pennsylvania versus Ritchey, 480 U.S. 39 at 59 |
| 09:14 | 21 | (1987).  This is what the Supreme Court says on a review of |
| 09:15 | 22 | actions by a Pennsylvania Court: |
| 09:15 | 23 | "A defendant's right to discover exculpatory |
| 09:15 | 24 | evidence does not include the unsupervised authority to |
| 09:15 | 25 | search the commonwealth's files."  The commonwealth here |

```
09:15   1   being the commonwealth of Pennsylvania.  "Although the eye
09:15   2   of an advocate may be helpful to a defendant in ferreting
09:15   3   out information, this Court has never held even in the
09:15   4   absence of a statute restricting disclosure that a defendant
09:15   5   alone may make the determination as to the materiality of
09:15   6   the information."
09:15   7           "Civil practice is to the contrary.  In a typical
09:15   8   case where the defendant makes only a general request for
09:15   9   exculpatory material, under Brady vs. Maryland, it is the
09:15  10   State that decides which information must be disclosed.
09:15  11   Unless defense counsel becomes aware of other exculpatory
09:15  12   evidence was withheld and brings it to the Court's
09:15  13   attention, the prosecutor's decision on disclosure is final.
09:16  14   Defense counsel has no constitutional right to conduct his
09:16  15   own search of the State's files to argue relevance."
09:16  16           I believe that gives us all the guidance we need
09:16  17   in the present situation.  And Mr. Avenatti's request for
09:16  18   \further access to the Eagan/Avenatti digital devices, VME,
09:16  19   IRS's materials, is denied.
09:16  20           Okay, is there anything else we ought to take up
09:16  21   today?
09:16  22           MR. STEWARD:  Not from the defense, Your Honor.
09:16  23           MR. ANDRE:  Your Honor, nothing from the
09:16  24   government at this time.
09:16  25           THE COURT:  Okay.  Then we'll probably schedule
```

```
09:16   1    another conference when I see your briefs in a couple weeks
09:16   2    on the issue of access to the computer.
09:16   3              Thank you very much.
09:16   4              MR. ANDRE:  Thank you, Your Honor.
09:16   5              MR. STEWARD:  Thank you, Your Honor.
09:17   6              (Whereupon, the proceedings were concluded.)
09:17   7                        *    *    *
        8
        9
       10
       11
       12
       13
       14
       15
       16
       17
       18
       19
       20
       21
       22
       23
       24
       25
```

## CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: July 9, 2020

/s/   Sharon A. Seffens   7/9/20
_____
SHARON A. SEFFENS, U.S. COURT REPORTER