H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S MOTION TO PRECLUDE, AND FURTHER OBJECTION TO, REVIEW AND USE OF PORTIONS OF THE JUNE 26, 2020 PRE-TRIAL SERVICES DIGITAL FORENSIC EXAMINATION REPORT<br><br>[Declaration of H. Dean Steward in support and [Proposed] Order filed concurrently herewith] |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this Motion to Preclude, and Further Objection To, Review and Use of the June 26, 2020 Pre-trial Services Digital Forensic Examination Report.

Dated: July 21, 2020

Respectfully submitted,

/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

I.      INTRODUCTION .................................................................................. 1

II.     ARGUMENT .......................................................................................... 3

    A. The Attorney-Client Privilege ............................................................. 3

    B. The Work Product Doctrine ................................................................. 4

    C. The Sixth Amendment .......................................................................... 6

    D. The Disclosure of Mr. Avenatti's Privileged and
       Protected Information Would Result in Irreparable
       Harm Under the Law ............................................................................. 7

    E. The Protected Portions of the Report Are Protected
       from Disclosure by the Attorney-Client Privilege
       and the Work Product Doctrine ............................................................ 8

    F. The Government's "Privilege Log" Argument is
       Without Merit ...................................................................................... 12

III.    CONCLUSION ...................................................................................... 13

CERTIFICATE OF SERVICE .............................................................................. 14

- i -

1

## <u>TABLE OF AUTHORITIES</u>

2

3   <u>CASES:</u>                                                                      <u>Page</u>

4

5   *Apple Inc. v. Samsung Elecs. Co.,*

6   306 F.R.D. 234, 2015 U.S. Dist. LEXIS 45386 (N.D. Cal. 2015)............... 12, 13

7

8   *Apple, Inc. Samsung Elecs. Co.,*

9   2015 U.S. Dist. LEXIS 46893 (N.D. Cal. 2015)................................... 12

10

11   *DeMassa v. Nunez,*

12   *770 F.2d 1505 (9th Cir. 1985)* ...............................................................6

13

14   *Dole v. Milonas,*

15   889 F.2d 885 (9th Cir. 1989) ................................................ 12

16

17   *Hickman v. Taylor,*

18   329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)....................................... 4, 7, 11

19

20   *Hunt v. Blackburn,*

21   128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888)......................................4

22

23   *In re Grand Jury Investigation,*

24   974 F.2d 1068 (9th Cir. 1992)............................................................ 12

25

26   *In re Grand Jury Subpoenas,*

27   454 F.3d 511 (6th Cir. 2006).................................................. 3, 5, 7, 11

28

*In re Grand Jury Subpoena,*

870 F.3d 312 (4th Cir. 2017)........................................................................6

*In re Perrigo Co.,*

128 F.3d 430 (6th Cir. 1997)........................................................................8

*Klitzman, Klitzman & Gallagher v. Krut,*

744 F.2d 955 (3d Cir. 1984)........................................................................8

*Mohawk Indus., Inc. v. Carpenter,*

558 U.S. 100, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009)...........................................8

*Strickland v. Washington,*

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)...........................................6

*United States v. Brugman,*

655 F.2d 540 (4th Cir. 1981)........................................................................6

*United States v. Nobles,*

422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)................................. 5, 7, 11

*United States v. Philip Morris Inc.,*

314 F.3d 612 (D.C. Cir. 2003) ....................................................................7

*Upjohn Co. v. United States,*

449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).................................. 3,7, 11

## OTHER AUTHORITIES:

U.S. Const. Amend. VI ........................................................................... 2, 3, 6, 7, 11

Fed. R. Civ. P. 26(b)(3) ..................................................................................5

Fed. R. Crim. P. 16(a)(2), (b)(2) ...................................................................5

Black's Law Dictionary (6th ed. 1990) ..........................................................3

1 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* (4th ed. Supp. 2019) ......6

## I.   **INTRODUCTION**

As part of your criminal defense, what topics or subjects did you communicate with your attorneys about?  What documents did your attorneys give or send to you?  What documents did your attorneys ask you to review?  What documents did you give to your attorneys?  What documents did you ask your attorneys to review?  What documents did you provide comments to your attorneys on?  What documents did you ask your attorneys about and vice versa?

Each of the above questions seek information protected by the attorney-client privilege and work product doctrine relating to the representation of a client.  This is especially true when considered in the context of a criminal defendant.  Indeed, any attempt by the government to pose these questions to an attorney or a client, or gain or use such information, is per se improper.  And were such questions asked during a trial, hearing or deposition, they would immediately result in astonishment by everyone other than the questioner.  Why?  Because the premise is so basic.

Yet, this is precisely what the prosecution seeks to now do in this case -- review and use detailed information that answers each of these questions -- information that was obtained by Pre-Trial Services and then disclosed in its Digital Forensics Examination Report (the "Report") [1] over Defendant's prior and timely objections.

---

[1] The information protected by the privilege and the work product doctrine is set forth in the Report (1) at the bottom of page 3 in the section titled "Emails of Interest"; (2) on Page 4 beginning at the top of the page and continuing up until the heading titled "Internet Usage"; and (3) Attachments B, D, E, and F.  These portions are collectively referred to herein as the "Protected Portions of the Report."  Mr. Avenatti has no objection to the review or use of the balance of the Report.

Since early June, the defense has been steadfast in its assertion of the privileges

and objection to any disclosure of this type of information, or review of this type of

information, to anyone other than Mr. Avenatti's counsel.  Indeed, as directed by the

Court during the hearing on Mr. Avenatti's motion for protective order on June 11, that

afternoon, undersigned counsel subsequently provided a detailed email to Pre-Trial

Services objecting to any review or disclosure of the protected information.  This email

was sent well before (1) any devices or electronic files were reviewed and (2) the Report

was prepared and transmitted to the Court and the parties, including the prosecution.

[Declaration of H. Dean Steward ("Steward Decl."), ¶3.]

Despite this, protected information was subsequently reviewed and disclosed by

Pre-Trial Services, the prosecution admittedly reviewed it, and the government now

refuses to agree to refrain from further review and use of the Protected Portions of the

Report.  To permit this review and use, however, would violate Mr. Avenatti's attorney-

client privilege, the work product doctrine, and Mr. Avenatti's rights under the Sixth

Amendment to the United States Constitution.  Accordingly, for each of the reasons set

forth herein, the Court should issue an order preventing any further review or use of the

Protected Portions of the Report for any purpose.[2]

---

[2] Consistent with the discussion with the Court during the July 6, 2020 Status
Conference, the directive of the Court on the record, and the Court's Minute Order dated July 6,
2020 [Docket No. 199], this motion and brief address the issue of whether the prosecution
should be permitted to review and use the Protected Portions of the Report.  At this time, the
defense is not providing any further briefing on the issue of any alleged violation by Mr.
Avenatti of any bail condition (which the defense vehemently disputes) because there is no
pending motion, or request for that relief, filed by the government.  Once the threshold issues
raised in this brief relating to the Report are addressed by the Court, and when and if the

2

## II.   ARGUMENT

The information proposed to be reviewed and used by the prosecution, namely the Protected Portions of the Report, is protected from disclosure by the attorney-client privilege, the work product doctrine and the Sixth Amendment of the United States Constitution.

### A.   The Attorney-Client Privilege

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *see also In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006) (explaining that "[t]he privilege protecting confidential communications between an attorney and his client dates back to the Tudor dynasty"). The attorney-client privilege empowers a client — as the privilege holder — "to refuse to disclose and  to prevent any other person from disclosing confidential communications between him and his attorney." *See Black's Law Dictionary* 129 (6th ed. 1990).

---

government affirmatively seeks to remand Mr. Avenatti or modify his bail conditions, the defense will respond in writing to any such request/motion and explain why the request/motion should be denied under the facts and the law.  To be clear, the prior motion filed by the government [Docket No. 177] requested an "inquiry" in the form of a search of the devices at the residence of Mr. Manheimer and a deposition of Mr. Manheimer, but did not seek to have Mr. Avenatti remanded or his conditions modified.  A search and deposition were completed in June, and on or about June 26, Pre-Trial Services filed a written recommendation with the Court (separate from the forensic report) recommending that no action be taken relating to Mr. Avenatti's custody status or bail conditions.  The Court later ruled on July 6: "The Court finds the pretrial services report does not merit any action at this time." [Docket No. 199].

3

The purpose of the attorney-client privilege is to ensure "full and frank communication" between a client and his lawyer and "thereby promote broader public interests in the observance of law and administration of justice." *See Upjohn Co.*, 449 U.S. at 389, 101 S.Ct. 677.  As the Supreme Court has consistently emphasized, the attorney-client privilege exists because "sound legal advice or advocacy serves public ends and . . . such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.*; *see also Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488 (1888) ("The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.")  Nowhere is this more important than in connection with the representation of a criminal defendant, as in this case, who is fighting for his liberty and faces significant prison time if convicted.

## B.    The Work Product Doctrine

Even though the work-product doctrine is not as established in history as the attorney-client privilege, it is no less important. The Supreme Court explicitly recognized and explained the work-product doctrine more than 70 years ago in its seminal decision in *Hickman v. Taylor,* 329 U.S. 495, 510-11, 67 S.Ct. 385, 91 L.Ed. 451 (1947).  In *Hickman*, the Court underscored that a lawyer must be able to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and

4

their counsel." Id. at 510, 67 S.Ct. 385.  Elaborating on that principle, the Court

emphasized that "[p]roper preparation of a client's case demands that [a lawyer]

assemble information, sift what he considers to be the relevant from the irrelevant facts,

prepare his legal theories and plan his strategy without undue and needless interference."

Id. at 511, 67 S.Ct. 385.  Indeed, in a stern warning, the Court cautioned that absent

strong protection for work product, "[i]nefficiency, unfairness and sharp practices would

inevitably develop in the giving of legal advice and in the preparation of cases for trial,"

all to the detriment of clients and "the cause of justice." Id.

      Thus, the Supreme Court has explicitly approved what it called "a qualified

privilege," to be held by *lawyer and client alike*, "for certain materials prepared by an

attorney 'acting for his client in anticipation of litigation.' " *See United States v. Nobles*,

422 U.S. 225, 237-38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (quoting *Hickman*, 329

U.S. at 508, 67 S.Ct. 385). That privilege is the work-product doctrine, which has now

been incorporated into the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 26(b)(3),

and the Federal Rules of Criminal Procedure, see Fed. R. Crim. P. 16(a)(2), (b)(2).  "The

Work-product privilege, while properly construed more narrowly than attorney-client

privilege, nevertheless operates for a similar purpose: that is, ***that people should be free

to make requests of their attorneys without fear, and that their attorneys should be free

to conduct research and prepare litigation strategies without fear that these

preparations will be subject to review by outside parties.***"  *In re Grand Jury Subpoenas*,

454 F.3d 511, 520 (6th Cir. 2006) (emphasis added).

There are two types of attorney work product that are within the ambit of the doctrine:  (1) fact work product, which is "a transaction of the factual events involved," and (2) opinion work product, which "represents the actual thoughts and impressions of the attorney." *See In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (internal quotation marks omitted).

## C.     The Sixth Amendment

Critically, the attorney-client privilege and the work-product doctrine jointly support the Sixth Amendment's guarantee of effective assistance of counsel. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."); *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (analyzing Sixth Amendment right to effective assistance of counsel).  As the Fourth Circuit has held in assessing the interplay between the attorney-client privilege and the Sixth Amendment, "[t]he essence of the Sixth Amendment right to effective assistance of counsel is, indeed, privacy of communication with counsel." *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir. 1981).  *See also*, *DeMassa v. Nunez*, 770 F.2d 1505, 1507 (9th Cir. 1985) (describing Sixth Amendment as a "source" for the expectation of privacy in attorney-client communications); 1 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 10.14, 10-91 (4th ed. Supp. 2019) (explaining that "[t]he attorney-client privilege has ties to the Sixth Amendment").  Absent privacy of communications and the "full and frank" discussions that flow therefrom, a lawyer could be deprived of the information necessary to prepare

6

and present his client's defense and, as a result, a client, such as Mr. Avenatti, could be deprived of due process and his right to a proper defense. *See Upjohn Co.*, 449 U.S. at 389, 101 S.Ct. 677.

In a similar vain, the work-product doctrine fulfills an essential and important role in ensuring the Sixth Amendment right to effective assistance of counsel. The Supreme Court has recognized that the work-product doctrine is vital to "assur[e] the proper functioning of the criminal justice system," in that it "provid[es] a privileged area within which [a lawyer] can analyze and prepare his client's case." *See Nobles*, 422 U.S. at 238, 95 S.Ct. 2160; *see also In re Grand Jury Subpoenas*, 454 F.3d at 520. Without that "privileged area," a lawyer's ability to plan and present his client's defense will be impaired. *See Nobles*, 422 U.S. at 238, 95 S.Ct. 2160; *see also Hickman*, 329 U.S. at 511, 67 S.Ct. 385.

### D. The Disclosure of Mr. Avenatti's Privileged and Protected Information Would Result in Irreparable Harm Under the Law

Under well-established law, the further disclosure and review of Mr. Avenatti's privileged and protected information, including information protected by the work product doctrine, would result in serious injury and irreparable harm. *See Upjohn Co.*, 449 U.S. at 389, 101 S.Ct. 677 (emphasizing importance of attorney-client privilege); *Nobles*, 422 U.S. at 237-38, 95 S.Ct. 2160 (recognizing significance of protecting lawyer work product); *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) (concluding that a party had demonstrated the likelihood of irreparable harm predicated on "the general injury caused by the breach of the attorney-client privilege and the harm

7

resulting from the disclosure of privileged documents to an adverse party"), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) (explaining that "forced disclosure of privileged material may bring about irreparable harm"); Klitzman, Klitzman & Gallagher v. Krut, 744 F.2d 955, 960-61 (3d Cir. 1984) (law firm had demonstrated likelihood of irreparable harm where government seized files containing privileged information).

**E.      The Protected Portions of the Report Are Protected from Disclosure by the Attorney-Client Privilege and the Work Product Doctrine**

As an initial matter, this Court has previously ruled, over the objection of the government, that for the purpose of the attorney-client privilege and work product protections, Mr. Avenatti's third-party custodian, Mr. Jay Manheimer, is deemed to be similar to a "FedEx delivery man" and therefore possession by, and disclosure to, Mr. Manheimer does not vitiate any legal protections afforded to Mr. Avenatti under the law. In other words, any emails sent to or from Mr. Manheimer for Mr. Avenatti's benefit, as well as any documents reviewed, accessed or worked on by Mr. Manheimer, do not lose their protected status simply because Mr. Manheimer has been a conduit or has been used to assist Mr. Avenatti and his lawyers with Mr. Avenatti's defense in this case. The Court's ruling was correct then and remains correct now.[3]  For the purposes of

---

[3] In light of the Court's prior ruling, the defense will refrain from re-arguing or briefing the "agency" issue related to Mr. Manheimer. If, however, the Court is inclined to reverse course and determine that Mr. Manheimer's involvement has an impact on the viability of the privilege or the work product doctrine, the defense respectfully requests an opportunity to address the issue in writing.

determining whether information is protected from disclosure, therefore, the inquiry is no different simply because Mr. Manheimer has been required to serve as an intermediary – if the information would be protected were Mr. Avenatti directly involved, then that same information remains protected if instead, or in addition, Mr. Manheimer is involved.

The Protected Portions of the Report contain information protected from disclosure. *First*, at the bottom of page 3 of the Report, there is reference to the *subjects* of various email communications between Mr. Avenatti and his counsel. The Report proceeds, in Attachment D, to list in detail information relating to 81 emails[4] exchanged between Mr. Avenatti (through Mr. Manheimer) and his counsel, all but three of which directly relate to Mr. Avenatti's criminal defense in this case. [Steward Decl., ¶10.] This listing includes in many instances not only the *subject*[5] of what was discussed between Mr. Avenatti and his attorney, but also the title or filename of the documents exchanged between them, which in and of itself discloses (a) the topic or subject of their communication and (b) which documents Mr. Avenatti exchanged with his counsel. [Steward Decl., ¶10.]

---

[4] Only a subset of the emails sent between Mr. Manheimer, Mr. Steward, and Mr. Avenatti's other attorneys are listed in the attachment. This is evidently because Mr. Manheimer does not save emails locally on his computer.

[5] The fact that no further text from the body of the emails (as opposed to the "subject") is included is of no consequence to the analysis. Adversaries are not permitted to discover the *subject* or *topic* of any communication between a criminal defendant and his counsel relating to the representation. By way of example, neither a prosecutor nor a court could inquire of defense counsel, "Did you communicate with your client about the murder weapon subject?" or "Did you receive an email from your client with the subject 'Murder Weapon?'"

9

In other words, the Report discloses the topic of communication between a criminal defendant and his attorney (i.e. what they discussed), as well as the documents (by name) sent between them.  This information is protected from disclosure by the attorney-client privilege and work product doctrine.  It reflects what was discussed as well as the thought process of what documents Mr. Steward and Mr. Avenatti chose to exchange, have reviewed by each other, and provide comment on, all in the course of Mr. Avenatti's criminal defense.  [Steward Decl., ¶10.]  It is no different than the prosecution asking:  (1) "As part of your criminal defense, what topics or subjects did you communicate with your attorneys about?"  (2) What documents did your attorneys give or send to you and vice versa?  (3) What documents did your attorneys ask you to review?  (4) What documents did you give to your attorneys?  (5) What documents did you ask your attorneys to review?  (6) What documents did you provide comments to your attorneys on?  (7) What documents did you ask your attorneys about and vice versa?  The prosecution is not entitled to the answers to these questions nor are they entitled to review and use a document – the Report – that provides the answers.  As a result, such portions of the Report should be deemed to be protected by the attorney-client privilege and work product doctrine, and thus outside the further purview of the prosecution.

*Second*, on page 4 of the Report, the details of a document created by Mr. Avenatti's criminal counsel in the *Nike* criminal case, with input from Mr. Avenatti, for use in that case, are disclosed.  [Steward Decl., ¶11.]  Further, Attachment B to the

10

Report provides details (including the title or filename) relating to other Word

documents prepared at the direction of his criminal counsel.  [Steward Decl., ¶12.]

Attachment E lists details (including the title or filename) relating to other Word

documents prepared for use in Mr. Avenatti's criminal cases and other legal matters,[6]

and Attachment F discloses details (including the title and filename) as to PDF

documents exchanged between Mr. Avenatti and his counsel in connection with Mr.

Avenatti's representation. [Steward Decl., ¶13.]

All of this information is privileged and protected from disclosure by the attorney-

client privilege and the work product doctrine.  Permitting the prosecution further access

to the information would provide the prosecution with improper knowledge as to, among

other things, the defense camp; its processes; what documents have been exchanged

between Mr. Avenatti and his counsel, and reviewed, and by whom and when; what

subjects have been discussed (which can be determined by the title or filename of the

document); the thoughts and impressions of Mr. Avenatti's legal counsel, including

which documents on which subjects counsel chose to provide to Mr. Avenatti, have him

review and comment on; and which documents Mr. Avenatti deemed important to

review and comment on, and provide to his counsel.  [Steward Decl., ¶14.]  Allowing

this information to be disclosed would violate Mr. Avenatti and his counsel's privileges,

Mr. Avenatti's right to due process, and his right to a proper defense as guaranteed under

---

[6] There is one exception – Record 4 – which was created by Mr. Manheimer and does not relate to any legal case involving Mr. Avenatti.

the Sixth Amendment. *See, e.g., Upjohn Co.*, 449 U.S. at 389, 101 S.Ct. 677; *Nobles*,

422 U.S. at 237-38, 95 S.Ct. 2160; *In re Grand Jury Subpoenas*, 454 F.3d at 520;

*Hickman*, 329 U.S. at 511, 67 S.Ct. 385.

### F.   The Government's "Privilege Log" Argument Is Without Merit

The government maintains that the information disclosed within the Protected

Portions of the Report is no different than that routinely found on a privilege log, and,

therefore, the information is not privileged or protected.  The government is wrong.

The law requires that "[A] party asserting privilege must 'describe the *nature* of

the documents … in a manner that, *without revealing information itself privileged or

protected*, will enable other parties to assess the claim.' " *Apple Inc. v. Samsung Elecs.

Co.*, 306 F.R.D. 234, 237, 2015 U.S. Dist. LEXIS 45386, **51 (N.D. Cal. 2015)

(citations omitted) (emphasis added) (stay granted on other grounds by *Apple, Inc.

Samsung Elecs. Co.*, 2015 U.S. Dist. LEXIS 46893 (N.D. Cal. Apr. 7, 2015).  Such a

showing is routinely made through use of a privilege log.  It is black letter law in the

Ninth Circuit that a privilege log includes the following information:  (1) the identity of

the attorney and client involved; (2) the nature of the document (e.g. letter,

memorandum, etc.); (3) all persons or entities shown as recipients on the document; (4)

all persons or entities known to have been informed of the substance of the document;

and (5) the date the document was generated, prepared, or dated. *See Dole v. Milonas*,

889 F.2d 885, 888 n.3, 890 (9th Cir. 1989); *In re Grand Jury Investigation*, 974 F.2d

1068, 1071 (9th Cir. 1992) (citing *Dole*); *see also Apple, 306 F.R.D. at 237, 2015 U.S. Dist. LEXIS at **51-52.*

Thus, while the "nature" of a document is listed – i.e., a general category such as "email" or "letter" or "memorandum" - **the specific subject or topic being discussed (i.e. the subject line of an email between a client and his lawyer) is not listed, nor is the title or filename of a document at issue.** The reason for this is clear – because to do so would disclose *"information itself privileged or protected." See Apple, 306 F.R.D. at 237, 2015 U.S. Dist. LEXIS at **51.* Accordingly, the government's argument that the information disclosed within the Protected Portions of the Report is no different than that routinely listed on a privilege log is without merit under the law of the Ninth Circuit and should be rejected.

## III.   **CONCLUSION**

For each of the reasons set forth above, Mr. Avenatti respectfully requests that the Court issue an order preventing any further review or use of the Protected Portions of the Report for any purpose.

Dated: July 21, 2020                    Respectfully submitted,


                                        /s/ H. Dean Steward
                                         H. DEAN STEWARD

                                        Attorney for Defendant
                                        MICHAEL JOHN AVENATTI

13

**CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.  I am not a party to the above-entitled action.  I have caused, on July 21, 2020, service of the defendant's:

DEFENDANT'S MOTION TO PRECLUDE, AND FURTHER OBJECTION TO, REVIEW AND USE OF PORTIONS OF THE JUNE 26, 2020 PRE-TRIAL SERVICES DIGITAL FORENSIC EXAMINATION REPORT

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA JULIAN ANDRE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 21, 2020

/s/ H. Dean Steward
H. Dean Steward

14