NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6683
    Facsimile: (213) 894-6269
    Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone:  (714) 338-3598
    Facsimile:  (714) 338-3708
    Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT MICHAEL JOHN AVENATTI'S *EX PARTE* APPLICATION FOR CJA APPOINTMENT |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Julian L. André, hereby files its response to defendant's ex parte application for appointment of counsel pursuant to the Criminal Justice Act.

This response is based on the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 21, 2020    Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

    /s/
BRETT A. SAGEL
JULIAN L. ANDRÉ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## I. INTRODUCTION

On July 18, 2020, defendant filed an ex parte application for this Court to appoint his current counsel, H. Dean Steward, to represent defendant pursuant to the Criminal Justice Act; however, defendant filed his completed financial affidavit and the declaration from defendant's counsel under seal.[1] (CR 202, 203.) Pursuant to the Sixth Amendment of the United States Constitution and Title 18, United States Code, Section 3006A, the Criminal Justice Act (hereinafter "CJA"), defendant is entitled to representation of counsel and have the Court appoint counsel if defendant cannot afford to retain counsel. The CJA, the Judicial Council of the Ninth Circuit Criminal Justice Act Policies and Procedures (Effective October 20, 2016, revised January 10, 2020) (hereinafter "Ninth Circuit CJA Plan"), and the Central District of California's Plan for the Composition, Administration, and Management of the Panel of Private Attorneys Under the Criminal Justice Act (General Order No. 13-09, dated September 17, 2013) (hereinafter, "CDCA CJA Plan), provide guidance to when and how this Court can appoint counsel for an indigent defendant, including during the pendency of the case.

Because the government is not privy to any of the information or bases upon which defendant relies, the government has no ability to address the merits of defendant's request. Although the government takes no position as to whether the Court should grant defendant's request, the government believes that there are several areas the Court should explore with defendant and his counsel to determine

---

[1] Defendant neither provided notice to the government nor sought the government's position for the ex parte application or the under seal filing, as required by the Central District of California's Local Rules.

whether this Court should appoint defendant's current counsel pursuant to the CJA, and any limitations to the reimbursements to counsel if such an appointment is made.

## II.   BACKGROUND

On April 10, 2019, the grand jury returned the operative thirty-six count indictment against defendant, which describes in great detail the allegations against defendant.  Defendant appeared at his post-indictment arraignment and at this Court's first status conference, on April 29, 2019, and May 7, 2019, respectively, without counsel and the Federal Public Defender represented defendant at each hearing.  On May 14, 2019, despite having just received $1,000,000 payment for legal work, defendant submitted an ex parte application, without submitting a financial affidavit, for an order appointing the Federal Public Defender to represent him in this matter because defendant purportedly lacked the financial wherewithal to "pay fully for retained counsel."  (CR 28.)  After the Court denied defendant's ex parte application (CR 29), defendant retained Mr. Steward and appeared at the status conference the next day.  (CR 33.)[2]

Mr. Steward's representation began a month after the grand jury returned the indictment, therefore, defendant and his counsel were well-aware of the size and complexity of this case.  Notably, at nearly every status conference or hearing in this matter, starting as early as July 2019, defendant's counsel noted the voluminous discovery in this matter, that he was simply a solo-practitioner, and

---

[2] At the May 15, 2019, status conference, this Court ordered defendant to pay for all services rendered by the Federal Public Defender. (CR 33).  At least as of January 15, 2020, defendant had not done so.

2

expressed varying levels of concern regarding his ability to prepare for trial in a timely manner.[3] On January 31, 2020, Mr. Steward reiterated his concerns, and when the Court again told Mr. Steward "this is the type of case where if you need to augment your resources you need to do it," Mr. Steward responded:

> Well, I can't do that, Your Honor. I'm unable to do that. This is going to be a solo shot for me. I don't have the resources to do that, and I'm not in a position to apply for court funding for that . . . I'm stuck, so I'll do the best I can.

(Id. at 13:10-19.)

Defendant's counsel has now been representing defendant on this matter for over fourteen months; he has had most relevant discovery for over a year, and nearly all of the search warrant evidence for at least four months. Moreover, since January 2020, defendant's attorney has identified at least two motions he planned to file, however, he has not filed the motions he stated he would nor any other pretrial motions.

The financial records submitted with the government's bail revocation motion and the government's opposition to defendant's motion for release, establish that between May 2019 and November 2019 defendant deposited well over $1.1 million into his various bank accounts.[4] (CR 78, Ex. 39; CR 120, Ex. B.) In addition to these filings, on June 5, 2020, the government's brief regarding

---

[3] In its brief regarding representation issues filed on June 5, 2020, the government detailed each of defense counsel's statements about the volume of discovery in this matter as well as his statements as to whether or not he would take on additional resources during the various hearings in this case. (CR 175 at 8-10.)

[4] This $1.1 million figure represents new deposits defendant made into his known bank accounts at Chase Bank, US Bank, and Southland Credit Union, between May 2019 and November 2019, and does not include the re-deposits of cashier's checks or money sent back to defendant from his ex-wife.

3

defendant's representation issues detailed defendant's spending of the $1.1 million on his lavish lifestyle and other matters, but not on this case. (CR 175.)

On June 5, 2020, defendant stated in a filing, "he continues to attempt to make arrangements for additional counsel to assist in the defense of this case with the hope that such counsel can assist in the review of the discovery and preparation for trial." (CR 172 at 2.) Defendant also claimed he was "hampered by the fact that for months now, he has had far less than $5,000 in liquid assets. Despite these obstacles, [defendant] continues to work diligently to attempt to obtain additional counsel for this case." (Id. at 2-3.) Nevertheless, in a separate filing regarding defendant's allocation of assets on June 5, 2020, defendant essentially asserted that his asset allocation during the pendency of this case has had no impact on counsel's ability to prepare for trial. (CR 174 at 3.)[5] Finally, in response to the government's representation issues filing, defendant requested time to respond to the government's claims regarding how defendant spent money and purposefully failed to fund a defense in this case. (CR 178 at 3.) This Court granted defendant's request, however, defendant never filed anything addressing these issues.

III. **APPLICABLE LAW**

The indictment in this case charges defendant with numerous crimes involving defendant making false statements under penalty of perjury and making false statements and representations to obtain

---

[5] Although the government believes defendant drafted and wrote the majority, if not the entirety, of these June 5, 2020, filings, Mr. Steward filed these documents under his name.

4

money and property, and the government's investigation has uncovered numerous other incidents of defendant making false statements under oath. In addition, defendant previously submitted an ex parte application seeking the appointment of counsel claiming he did not have the financial ability to fully retain counsel even though he had just received a $1 million settlement payment. As a result, the government has concerns that defendant's present application may not be entirely truthful or candid, therefore, this Court must be circumspect with defendant's application.

The Court should not simply accept defendant's statements as the truth without scrutiny. See, e.g. United States v. Binder, 794 F.2d 1195, 1202 (7th Cir. 1986) (court considered defendant's credibility in denying defendant's request for appointment of counsel); United States v. Harris, 707 F.2d 653, 661 (2d Cir. 1983) (a court need not take defendant's affidavit at face value when making credibility determinations regarding the appointment of counsel). Although applications and affidavits for appointment of counsel pursuant to the CJA are typically filed under seal and not provided to the government, a court may provide the information to the government for inspection and comment. See, e.g. United States v. Keyes, 675 F. Supp. 2d 988, 991 (D. Az. 2009) (district court ordered defendant's under seal CJA application be provided to the government to be handled in adversarial proceedings).[6]

The Ninth Circuit CJA Plan specifically permits a court to appoint retained counsel pursuant to the CJA when a defendant becomes

---

[6] At this time, the government is not seeking the documents defendant filed under seal, however, the Court has discretion whether or not to provide the documents to the government.

5

unable to financially pay for representation. See Section IV.C.[7] The Plan instructs that "the court should inquire into the fees already paid to the retained attorney," which "may include requiring counsel to provide copies of the retainer agreement, billing statements, and a statement of funds actually received from or on behalf of the client." Id. The Plan provides great discretion to the court in determining when and how defendant's retained counsel can start billing for services and any offsets to those billings, including any "equitable arrangements" the court deems appropriate. Id.

The CDCA CJA Plan places the determination of eligibility for representation under the CJA on a district or magistrate judge after making appropriate inquiries concerning the person's financial condition. Section IV.D. The burden is on defendant to demonstrate financial inability in order to obtain counsel. United States v. Ellsworth, 547 F.2d 1096, 1098 (9th Cir. 1977). The CDCA CJA Plan prohibits the appointed counsel from accepting payments of any kind from any source without approval by the Court. Section VII.C.[8]

---

[7] The Plan states that the first inquiry the court should make is whether the retained counsel is a CJA panel attorney or otherwise regularly practices in federal court. Mr. Steward is a member of the CJA panel and regularly practices in this Court; thus, he meets the first test.

[8] During the deposition of Jay Manheimer, defendant's custodian, Mr. Manheimer testified that defendant has received gifts from fans and others either directly or through Mr. Steward. (See CR 200-1 at 8:13-9:16, 30:6-32:12, 108:12-19; CR 200-2 at 2 (modifying prior testimony).)

6

## IV. FURTHER INQUIRY

The government believes the Court should conduct a further inquiry with defendant and Mr. Steward, which should include the following topics and questions.

### A. Fees Already Paid

If defendant has not done so already, this Court should require defendant and his counsel to provide the Court with the retainer agreement between defendant and his current counsel, all billing statements, and records reflecting all payments[9] made by defendant and on defendant's behalf to defendant's counsel. The Court should also inquire as to which attorneys, other than Mr. Steward, have provided legal assistance in the present case, when and how much.[10] If any other attorneys assisted in defendant's legal defense in this case, the Court should require defendant to disclose what payments were made by defendant or on defendant's behalf to these additional counsel. If other attorneys provided legal assistance in the present case, the Court should further inquire as to why these attorneys can no longer provide assistance in this matter.[11] Finally, the Court should inquire as to whether defendant or his counsel expect any other attorneys or other individuals to assist in the defense of this case.

---

[9] All payments would include monetary payments, transferring of an asset or interest in an asset, or future promise to pay secured by an asset.

[10] For example, Mr. Manheimer stated during his deposition that defendant corresponded with various legal counsel, including Evan Jenness, who is a federal criminal defense attorney. As the Court likely recalls, defendant, through movements of money through Christine Carlin, defendant's first ex-wife, paid $250,000 to Even Jenness; the check was subsequently returned to Mrs. Carlin.

[11] This does not include Tom Warren or Daniel Dubin, who withdrew from this case due to a conflict of interests issue.

7

**B.   Defendant's Assets and Allocation of Resources**

As noted above, between approximately May 2019 and November 2019, defendant received approximately $1.1 million. Thus, it would be entirely appropriate for the Court to require defendant to disclose how much of this $1.1 million defendant allocated for his defense in this case and explain why he did not devote additional financial resources to this case at the time. The Court should also inquire as to whether defendant has received any money outside of the $1.1 million from May through November 2019. If so, how much did he receive, when was it received, and from what sources? If so, how much of that money did defendant allocate to his defense in this case?

The Court should also evaluate what attempts defendant has made, including in and around June 5, 2020, to arrange for additional counsel to assist with his defense in this case. What has changed since June 5, 2020, that prompted the instant application? Since defendant and Mr. Steward stated on June 5, 2020, that defendant's asset allocation has had no impact on defense counsel's ability to prepare for trial, what has changed? What has changed since January 31, 2020, when defense counsel stated "I'm not in a position to apply for court funding" for additional resources?

Additionally, the Court should thoroughly evaluate all of defendant's potential assets. For example, the government would recommend the Court inquire as to what defendant meant when he stated he had less than $5,000 in "liquid assets"? What did he mean by "liquid assets"? What other assets does defendant have? What assets, liquid or otherwise, has defendant turned over to someone else since March 25, 2019?

8

What potential and/or future assets, if any, does defendant claim to hold a right, including any attorney's fees in outstanding or pending litigation? One such example, is whether defendant claims to have any future right to any attorney's fees from the judgment in the Kimberly Clark litigation that is currently pending before the Ninth Circuit, <u>Bahamas Surgery Center, LLC v. Kimberly-Clark Corp.</u>, C.A. No. 18-55478, in which defendant's former law firm was able to obtain a $454 million verdict, which was then reduced to approximately $26 million judgment on behalf of its client? If yes, has defendant pledged any portion of the fees from the Kimberly Clark litigation or any other litigation to any of his counsel, including Mr. Steward?

Finally, the Court should inquire as to how defendant is paying and has paid for counsel in his numerous other legal matters, including: (1) retained counsel in the two other criminal cases pending in the Southern District of New York, <u>United States v. Avenatti</u>, No. 1:19-cr-373-PGG (S.D.N.Y.), and <u>United States v. Avenatti</u>, No, 1:19-cr-374-JMF (S.D.N.Y.); (2) defendant's bankruptcy counsel in <u>In re Eagan Avenatti LLP</u>, 8:19-bk-13560-CB (C.D. Cal.); (3) defendant's state bar counsel in <u>In re: Avenatti</u>, No. 19-TE-30259 (Cal. State Bar Ct.); and (4) his family law counsel in his pending divorce proceedings, <u>Avenatti v. Avenatti</u>, No. 17D009930 (Cal. Superior Ct.). When was the last time he made payments to any counsel other than counsel in this matter? Is anyone making payments to defendant's other counsel on defendant's behalf? If so, how much and when?

9

### C. Defense Counsel's Time on the Case

As noted above, the Ninth Circuit CJA Plan allows for a court to consider equitable arrangements in paying court-appointed counsel. If this Court does appoint Mr. Steward going forward under the CJA, the government does not believe this Court should reimburse Mr. Steward for work that he should have been done over the previous fourteen months, specifically the review of discovery and filing of the two motions he stated he would file. Thus, the Court should also require defense counsel to submit a description of the work that he has done on this case to date, specifically as it relates to the review of discovery and preparation of motions.[12]

### D. Defense Counsel's Ability to Prepare for Trial in an Effective and Timely Manner

Defense counsel has repeatedly expressed concerns regarding his ability to prepare for the trial in this case in a timely manner. Accordingly, prior to appointing Mr. Steward to represent defendant, the Court should confirm with Mr. Steward that he believes he can provide effective representation to defendant and will be prepared to proceed to trial on the current trial date, December 8, 2020, provided that it is safe to hold jury trials at that time.

---

[12] If the Court appoints Mr. Steward pursuant to the CJA, the Court should require defense counsel to submit specific details on what he specifically works on and/or prepares and that which defendant does. During the time in which defendant has been out of custody, it appears that defendant himself has drafted a substantial portion of many of the emails and filings in this case and defense counsel simply submits them under his name.