H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | |
| v. | DEFENDANT'S EX PARTE APPLICATION FOR AN ORDER RELATING TO THE PROSECUTION'S RECEIPT AND REVIEW OF ATTORNEY-CLIENT PRIVILEGED MATERIALS |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his
counsel of record, H. Dean Steward, hereby files this Ex Parte Application for an Order
Relating to the Prosecution's Receipt and Review of Attorney-Client Privileged
Materials.

Dated: September 3, 2020                Respectfully submitted,


                                        /s/ H. Dean Steward
                                         H. DEAN STEWARD

                                         Attorney for Defendant
                                         MICHAEL JOHN AVENATTI

## I.   __INTRODUCTION__

Yesterday afternoon, the defense learned for the first time that the prosecution team received and reviewed approximately 299 attorney-client privileged documents reflecting communications between Mr. Avenatti and his lawyers.  These documents total in excess of 1,000 pages.  They have been in the possession of the prosecution team in some instances for over six months and have been reviewed by the prosecution.[1]

Despite these facts and the prosecution's absolute obligation to *__immediately__* alert the defense as to their possession and review of privileged documents, *not to mention their obligation not to possess and review privileged documents in the first place*, the prosecution failed to inform the defense that they were in possession of attorney-client privileged materials highly relevant to multiple charges in this case and had reviewed them.[2]  They also inexplicably failed to alert the Court to these

---

[1] There can be no legitimate dispute as to whether the documents were reviewed by the prosecution team because (1) the prosecution subsequently produced the documents to the defense (demonstrating they were obviously reviewed because one does not produce documents to one's adversary that have not been reviewed); (2) the prosecution has previously represented to the Court and the defense, among other things, that they had reviewed all of the documents produced in the case and were prepared to proceed to trial and (3) the privilege review team or "taint team" has admitted that at least certain of the documents were reviewed by the prosecution.

[2] The privilege review team first alerted the defense to this fact late yesterday.  No explanation has been provided as to why the prosecution team did not alert the defense or why this only occurred yesterday.  The defense is in the process of determining all of the issues and counts in the indictment to which these documents relate.  At least some of the documents relate to the bankruptcy counts (counts 33-36), which the prosecution has recently admitted in writing "have substantial overlap of evidence and witnesses" with counts 1-10 (the wire fraud counts).  The defense is also attempting to confirm that no other privileged documents beyond the 299 are in the possession of the prosecution team and/or have been reviewed.

serious ethical lapses and violations of Mr. Avenatti's rights, including most recently at the status conferences held regularly in this case, with the last conference occurring just three days ago on Monday (August 31, 2020).

The issues of (1) the prosecution's receipt and review of over 1,000 pages of documents protected by the attorney-client privilege and subsequent failure to alert the defense and the Court, (2) the resulting conflict of interest and ethical prohibitions against the prosecution team continuing in this case, and (3) the appropriate relief to be granted as a result of the government's conduct, including but not limited to possible disqualification of the prosecution team, sanctions, and/or dismissal of charges, are all of paramount importance and must be addressed promptly before this case proceeds further and before the prosecution team continues in this case.

Accordingly, the defense respectfully requests that the Court issue an Order (1) setting a briefing schedule for the upcoming defense motion, which will seek relief as a result of the government's conduct and/or an evidentiary hearing and (2) staying all other motion practice before the Court pending a ruling on the defense motion.[3]  The defense specifically requests that the defense be permitted to file their opening brief no later than September 11, with the government's opposition

_____

[3] It is improper for the prosecution team to proceed with representing the United States against Mr. Avenatti in any meaningful way until these issues are fully resolved.

due seven days later on September 18, and the defense reply due no later than September 25.

Prior to filing this *ex parte* application, the defense requested that the government consent to the relief requested herein.  The government responded that they do not oppose the briefing schedule but do oppose and continuance of the dates for the other motions.

## II.   <u>ARGUMENT</u>

### A.   **The Attorney-Client Privilege**

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006) (explaining that "[t]he privilege protecting confidential communications between an attorney and his client dates back to the Tudor dynasty").  The attorney-client privilege empowers a client — as the privilege holder — "to refuse to disclose and  to prevent any other person from disclosing confidential communications between him and his attorney." *See Black's Law Dictionary* 129 (6th ed. 1990).

The purpose of the attorney-client privilege is to ensure "full and frank communication" between a client and his lawyer and "thereby promote broader public interests in the observance of law and administration of justice." *See Upjohn*

4

*Co.*, 449 U.S. at 389.  As the Supreme Court has consistently emphasized, the attorney-client privilege exists because "sound legal advice or advocacy serves public ends and . . . such advice or advocacy depends upon the lawyer's being fully informed by the client."  *Id.*; *see also Hunt v. Blackburn*, 128 U.S. 464 (1888) ("The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.")  Nowhere is this more important than in connection with the representation of a criminal defendant, as in this case, who is fighting for his liberty and faces significant prison time if convicted.

## B.    The Sixth Amendment

Critically, the attorney-client privilege supports the Sixth Amendment's guarantee of effective assistance of counsel. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."); *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (analyzing Sixth Amendment right to effective assistance of counsel).  As the Fourth Circuit has held in assessing the interplay between the attorney-client privilege and the Sixth Amendment, "[t]he essence of the Sixth Amendment right

to effective assistance of counsel is, indeed, privacy of communication with

counsel." *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir. 1981). *See also*,

*DeMassa v. Nunez*, 770 F.2d 1505, 1507 (9th Cir. 1985) (describing Sixth

Amendment as a "source" for the expectation of privacy in attorney-client

communications); 1 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 10.14,

10-91 (4th ed. Supp. 2019) (explaining that "[t]he attorney-client privilege has ties

to the Sixth Amendment").

### C. The Disclosure of Mr. Avenatti's Privileged and Protected Information Has Resulted in Irreparable Harm Under the Law

Under well-established law, the disclosure and review of Mr. Avenatti's

privileged and protected information results in serious injury and irreparable harm.

*See Upjohn Co.*, 449 U.S. at 389 (emphasizing importance of attorney-client

privilege); *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003)

(concluding that a party had demonstrated the likelihood of irreparable harm

predicated on "the general injury caused by the breach of the attorney-client

privilege and the harm resulting from the disclosure of privileged documents to an

adverse party"), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*,

558 U.S. 100, 103 (2009); *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955,

960-61 (3d Cir. 1984) (law firm had demonstrated likelihood of irreparable harm

where government seized files containing privileged information).

### D. Before This Case Proceeds Further, The Issue of the Prosecution Team's Receipt and Review of Privileged Material Must Be Addressed

As the Court can appreciate, there are serious issues that result from the receipt and review of a defendant's attorney-client privileged materials in a criminal case, including ethical considerations, the ability of the prosecution team to continue on the case, and the ability of the government to continue to prosecute the defendant. These issues must be addressed in full before this case proceeds further. Even though delay may result, these issues and any resulting delay is of no fault of the defense. Further, the preservation of Mr. Avenatti's rights, including those rights guaranteed under the Constitution and by well-established case law relating to the sanctity of the attorney-client privilege, are of paramount importance and far exceed any concerns relating to timing.

## III.   CONCLUSION

For each of the reasons set forth above, Mr. Avenatti respectfully requests that the Court issue an Order (1) setting a briefing schedule for the upcoming defense motion, which will seek relief as a result of the government's conduct and/or an evidentiary hearing and (2) staying all other motion practice before the Court pending a ruling on the defense motion.

//

//

Dated: September 3, 2020                    Respectfully submitted,


                                            /s/ H. Dean Steward
                                            H. DEAN STEWARD

                                            Attorney for Defendant
                                            MICHAEL JOHN AVENATTI

## **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.  I am not a party to the above-entitled action.  I have caused, on September 3, 2020, service of the defendant's:

DEFENDANT'S EX PARTE APPLICATION FOR AN ORDER RELATING TO

THE PROSECUTION'S RECEIPT AND REVIEW OF ATTORNEY-CLIENT

PRIVILEGED MATERIALS

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA JULIAN ANDRE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 3, 2020

/s/ H. Dean Steward
H. Dean Steward