H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DECLARATION OF H. DEAN STEWARD IN SUPPORT OF DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO TERMINATE AND NOT FURTHER EXTEND DEFENDANT'S TEMPORARY RELEASE [DOCKET NO. 262] |

Comes now H. Dean Steward, counsel for Defendant Michael John Avenatti, and submits the below Declaration in Support of Defendant's Opposition to the Government's Motion to Terminate and Not Further Extend Defendant's Temporary Release [Docket No. 262].

Dated: September 11, 2020          Respectfully submitted,


                                                   /s/ H. Dean Steward
                                                   H. DEAN STEWARD

                                                   Attorney for Defendant
                                                   MICHAEL JOHN AVENATTI

# DECLARATION

I, H. Dean Steward, declare:

1. I have been retained counsel for defendant Michael John Avenatti in this matter since approximately May 15, 2019.

2. Before Mr. Avenatti's release from the New York Metropolitan Correctional Center ("MCC") to home confinement on April 24, 2020, I reviewed all of the conditions relating to Mr. Avenatti's release and home confinement with Mr. Avenatti's third-party custodian, Mr. Jay Manheimer.

3. On the night of April 24, 2020, when I accompanied Mr. Avenatti from LAX to Mr. Manheimer's residence and placed him in Mr. Manheimer's custody, I provided a hard copy of all of the conditions relating to Mr. Avenatti's release and home confinement to Mr. Manheimer.

4. I understand that Mr. Manheimer also emailed the conditions to Ms. Shakira Davis of Pretrial Services the next day (Saturday, April 25, 2020) in conjunction with a call that Ms. Davis had with Mr. Manheimer and Mr. Avenatti for the purpose of reviewing all of the conditions.

5. I know of no instance in which Mr. Avenatti has violated any of his bail conditions since his release to home confinement. To the best of my knowledge and belief, Mr. Avenatti has taken all of the conditions extremely seriously at all times since his release.

6. I know of no instance since his release where Mr. Avenatti has accessed, or attempted to access, the internet. I know of no instance since his release where Mr. Avenatti has used or possessed any device that permitted Mr. Avenatti the opportunity to access the internet (i.e. was "internet enabled").

7. Because of the COVID-19 pandemic and my age (68) and health conditions (including diabetes), as well as periodic stay-at-home orders, I have been unable to regularly meet with clients such as Mr. Avenatti in person for significant stretches of

time since April 24, including during the time period April 24 through June. This is the result of a directive from my physician. I also have been forced to work from home more during these stretches and have not had access to many of the tools and technology available at my office. All of this has hindered my ability to prepare for trial; draft, review, prepare and compile motions and filings; and review and discuss discovery. It has also significantly impacted my ability to involve my clients in their defense, including by having them review and comment on discovery and legal pleadings, filings and issues in their case.

8. This has been especially significant as it pertains to Mr. Avenatti due to the complexity of this case, its fact intensive nature, the myriad number of charges, the fact that I was not able to regularly communicate with him while he was at MCC, his lack of access to discovery and documents while at MCC, and his desire and my need to have him actively participate in his defense and contribute (a) his knowledge about the facts and discovery and (b) skill as a lawyer.

9. Since Mr. Avenatti's release to Mr. Manheimer's custody on April 24, 2020, I and other lawyers of Mr. Avenatti's have regularly relied on Mr. Manheimer to assist us and Mr. Avenatti in defending him in his criminal cases, including by, among other things, (a) printing and scanning documents, (b) compiling pdfs for filing with the court and other purposes (i.e. motions, status reports, submissions re finances, etc.), (c) editing documents and pleadings at our direction or that of Mr. Avenatti, and (d) occasionally researching things on the internet. Mr. Manheimer, a freelance writer by trade who regularly works out of his home, has effectively served as our "paralegal" since April 24, 2020 and has devoted <u>hours</u> almost every day to these tasks. He frankly has gone well beyond what most people would do to assist us in defending against the charges in Mr. Avenatti's criminal cases.

10. Included among the many things that Mr. Manheimer has done for me, other attorneys and Mr. Avenatti since his release is compiling and printing various

1  documents to one or more .pdf files so that they could be filed with the Court or sent to
2  other parties. This included the pdf documents and filings that the government claims
3  were "created" by Mr. Manheimer on his computer. After drafts were reviewed by Mr.
4  Avenatti at my direction, the final versions of these documents were compiled into .pdf
5  files by Mr. Manheimer using Adobe Acrobat, at my direction, because of the pandemic
6  and because I did not readily have access at my residence to the technology I needed,
7  whereas Mr. Manheimer did. I saw nothing wrong with having Mr. Manheimer compile
8  various documents to one or more pdf files for filing and then having the documents
9  emailed to me for filing.

10     11. Further, in late May or early June, on one or two occasions, I directed and
11 advised Mr. Avenatti and Mr. Manheimer to have Mr. Avenatti briefly use Mr.
12 Manheimer's computer to work on preparing his defense in this case. I also directed that
13 (a) Mr. Manheimer supervise Mr. Avenatti, (b) Mr. Manheimer make absolutely sure at
14 all times that Mr. Avenatti could not access the Internet and (c) Mr. Manheimer ensure
15 the Internet was disconnected and turned off at all times while Mr. Avenatti used the
16 computer at my direction (resulting in the device no longer having the capability of
17 accessing the Internet even if Mr. Avenatti wanted to). I gave this direction because Mr.
18 Avenatti did not have a computer, I needed his assistance, and the pandemic and my
19 physician's directive prevented me from travelling to meet with him in person in order to
20 complete the tasks I needed done.

21     12. I saw nothing wrong with giving the direction and advice above in
22 paragraph 11 and I gave it in good faith, believing it was in accordance with Mr.
23 Avenatti's release conditions, which, as I understood them, gave me the authority to
24 direct Mr. Avenatti to work on his case. I never viewed this as a violation of Mr.
25 Avenatti's bail conditions. *First*, the device did not permit Mr. Avenatti to access the
26 internet at any time because the internet was fully disconnected when Mr. Avenatti used
27 the device (meaning the device Mr. Avenatti used was not capable of connecting to the
28

internet). *Second*, just as he routinely did as it related to supervising Mr. Avenatti and ensuring Mr. Avenatti did not violate any other conditions (i.e. concerning his electronic monitoring, prohibiting drug use, prohibiting commission of crimes, etc.), Mr. Avenatti's custodian Mr. Manheimer was supervising him at all times to ensure he did not violate any condition relating to the internet or internet access. *Third*, I knew that Pretrial Services not only permitted, but instructed, Mr. Avenatti and Mr. Manheimer to jointly use other internet devices (such as Mr. Manheimer's iPhone) to communicate with Pretrial Services from time to time, including via Facetime and email.

13. If my advice and instruction to Mr. Avenatti discussed above in paragraph 11 was wrong, and/or my interpretation of the bail conditions was incorrect, I apologize to the Court and Pretrial Services. My mistake was not intentional. At worst, it was an honest mistake and resulted in a technical violation of one of Mr. Avenatti's bail conditions based on a technical reading of the condition. In no event, however, should Mr. Avenatti suffer the consequences and be remanded.

14. I have reviewed the redacted copy of the confidential PTS Digital Forensic Examination Report (the "Report"). The Report does not contain references to all of my email communications sent to or from Mr. Avenatti (through Mr. Manheimer) during the time period April 24, 2020 to June 15, 2020 (the end date covered by the examination). Nor does the Report contain references to all of the documents and attachments I sent to Mr. Avenatti or he sent to me, during this time period. This is most likely because Mr. Manheimer utilizes a cloud-based email program – Gmail – which means that few emails are saved or accessible locally on his computer which was searched. They are instead stored on a cloud server. Further, the Report also does not contain references to files and documents I have provided to Mr. Avenatti and vice versa by way of delivery other than email (i.e. via FedEx, courier, etc.).

15. In the event Mr. Avenatti is remanded to custody, it will make it exponentially more difficult for me and Mr. Avenatti to prepare for trial, especially

because of COVID-19 and my age and health conditions. For instance, upon the advice of my physician, I have not been able to visit any client in custody since early March. I also understand that all attorney visits at the Santa Ana Jail are presently "no contact." It is impossible to prepare for a case of this magnitude under these conditions, which fundamentally interfere with Mr. Avenatti's rights, including under the Sixth Amendment.

16. For instance, there is an enormous amount of discovery left to review (well over 600,000 pages) and considerable privilege issues have now arisen because of the failures of the Privilege Review Team and the prosecution. I need Mr. Avenatti's assistance in reviewing this discovery and providing input on the applicability of the privilege. Further, this is a complex, fact intensive case that requires me to have regular contact with my client and my client to have unfettered access to me, documents, pleadings and discovery in order to assist with his defense.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration is executed at San Clemente, California.

Dated: September 11, 2020        /s/ H. Dean Steward
                                 H. DEAN STEWARD

## **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672. I am not a party to the above-entitled action. I have caused, on September 11, 2020, service of the defendant's:

DECLARATION OF H. DEAN STEWARD IN SUPPORT OF DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO TERMINATE AND NOT FURTHER EXTEND DEFENDANT'S TEMPORARY RELEASE [DOCKET NO. 262]

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA JULIAN ANDRE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 11, 2020

                                             /s/ H. Dean Steward
                                             H. Dean Steward