NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6683
    Facsimile: (213) 894-6269
    Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone:  (714) 338-3598
    Facsimile:  (714) 338-3708
    Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>MICHAEL JOHN AVENATTI,<br><br>    Defendant. | SA CR No. 19-061-JVS<br><br>MOTION *IN LIMINE* TO EXCLUDE ANY DEFENSE EXHIBITS THAT HAVE NOT BEEN PRODUCED PURSUANT TO DEFENDANT'S RECIPROCAL DISCOVERY OBLIGATIONS, INCLUDING ANY EXHIBITS RELATING TO AN ADVICE-OF-COUNSEL DEFENSE; EXHIBITS<br><br>Motions Hearing: October 19, 2020<br>Time:        9:00 a.m.<br>Location:    Courtroom of the<br>                Hon. James V. Selna |

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Brett A. Sagel and

Julian L. André, hereby files its motion in limine to exclude defense

1   exhibits that have not been produced pursuant to defendant's

2   reciprocal discovery obligations, including any exhibits that may

3   relate to an advice-of-counsel defense.

4       This motion is based upon the attached memorandum of points and

5   authorities, exhibits, the files and records in this case, and such

6   further evidence and argument as the Court may permit.

7   Dated: September 14, 2020     Respectfully submitted,

8                                  NICOLA T. HANNA
                                 United States Attorney

9

10                                BRANDON D. FOX
                               Assistant United States Attorney
                               Chief, Criminal Division

11

12                                  /s/
                                 _____

13                                BRETT A. SAGEL
                               JULIAN L. ANDRÉ
                               Assistant United States Attorneys

14

15                                Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION...................................................1

II.   RECIPROCAL DISCOVERY..........................................1

      A.    Federal Rule of Criminal Procedure 16...................1

      B.    Defendant's Failure to Produce Reciprocal Discovery.....3

      C.    The Court Should Exclude Evidence Defendant Failed to
            Produce in Reciprocal Discovery.........................5

III.  ADVICE-OF-COUNSEL.............................................7

      A.    Background..............................................7

            1.    Defendant's Prior Under Oath Testimony............7

            2.    The Government's Requests for Notice of an
                  Advice-of-Counsel Defense and Any Related
                  Reciprocal Discovery.............................10

      B.    Advice-of-Counsel Defense and Discovery Obligations....11

            1.    The Court Should Exclude Any Documents Relating
                  to a Purported Advice-of-Counsel Defense.........11

            2.    Alternatively, the Court Should Require Defendant
                  to Provide Notice and Produce All Discovery
                  Regarding Any Advice-of-Counsel Defense..........14

IV.   CONCLUSION...................................................18

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**FEDERAL CASES**

Bisno v. United States,
    299 F.2d 711 (9th Cir. 1961)...................................12

United States v. Aceves-Rosales,
    832 F.2d 1155 (9th Cir. 1987)..............................6, 18

United States v. Bilzerian,
    926 F.2d 1285 (2d Cir. 1991)...................................17

United States v. Crowder,
    325 F. Supp. 3d 131 (D.D.C. 2018).........................3, 15

United States v. Duran,
    41 F.3d 540 (9th Cir. 1994)...............................6, 18

United States v. Ellison,
    704 F. App'x 616 (9th Cir. Aug. 15, 2017)..................2, 3

United States v. Howell,
    231 F.3d 615 (9th Cir. 2000)..............................3, 13

United States v. Ibarra-Alcarez,
    830 F.2d 968 (9th Cir. 1987)...................................12

United States v. Michaels et al.,
    No. SA CR 16-76-JVS (C.D. Cal.).........................2, 3, 18

United States v. Moore,
    208 F.3d 577 (7th Cir. 2000)...................................6

United States v. Ortland,
    109 F.3d 539 (9th Cir. 1997)...................................16

United States v. Scholl,
    166 F.3d 964 (9th Cir. 1999)..............................6, 18

United States v. Swenson,
    298 F.R.D. 474 (D. Idaho 2014).............................2, 6

United States v. Wilkerson,
    388 F. Supp. 3d 969 (E.D. Tenn. 2019).......................15

United States v. Young,
    248 F.3d 260 (4th Cir. 2001)..............................6, 18

**FEDERAL RULES**

Federal Rule of Criminal Procedure 16(b)(1)...............1, 3, 6, 13

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                            PAGE

Federal Rule of Criminal Procedure 16(d)(2).........................17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant MICHAEL JOHN AVENATTI ("defendant") is charged in a thirty-six count indictment alleging wire fraud, tax fraud, bank fraud, and bankruptcy fraud.  (CR 16.)  On May 15, 2019, defendant requested discovery from the government and the government began producing the discovery in May 2019 and defendant had received nearly all of the relevant discovery by March 2020.  (CR 168.)  On June 2, 2020, defendant stipulated to a reciprocal discovery deadline of August 31, 2020.  (CR 170 (Court Ordered deadline in CR 171).)  Defendant produced no reciprocal discovery on August 31, 2020, or any time before or since.[1]  Defendant's trial is set for December 8, 2020.  (CR 171.)

As defendant has failed to produce any reciprocal discovery, the Court should exclude any defense exhibits defendant seeks to introduce at trial that have not yet been produced, absent a showing of good cause.  The Court should likewise exclude any defense exhibits relating to any purported advice-of-counsel defense or, alternatively, order defendant to provide notice of and discovery regarding such a defense no later October 30, 2020.

### II.   RECIPROCAL DISCOVERY

#### A.    Federal Rule of Criminal Procedure 16

Under Federal Rule of Criminal Procedure 16(b)(1), once certain conditions have been met, including defendant seeking discovery under Rule 16 and substantial compliance by the government with its

---

[1] Defendant also stipulated to August 31, 2020, as the deadline to disclose expert notification; defendant did not provide any expert notice.

discovery obligations, a defendant must produce pretrial reciprocal discovery to the government.  United States v. Ellison, 704 F. App'x 616, 625 (9th Cir. Aug. 15, 2017); United States v. Swenson, 298 F.R.D. 474, 477-78 (D. Idaho 2014); see also United States v. Michaels et al., No. SA CR 16-76-JVS, Doc. 768, 804 (C.D. Cal.).[2]  In this case, defendant requested Rule 16 discovery on May 15, 2019, and the Prosecution Team produced to defendant the vast majority of the relevant discovery in this case in May and June 2019, including witness statements, and defendant received nearly all relevant digital device search warrant evidence by March 2020.  (See CR 99; CR 195.)  It is clear that the government has substantially complied with its discovery obligations through its extensive production of discovery, including early Jencks Act disclosures.[3]  (See CR 99; CR 195.)

As a result, defendant must disclose to the government any documents, objects, and reports of examinations and tests that a defendant intends to use in the defense case-in-chief, including any such evidence defendant intends to introduce through a witness called by the government.  Fed. R. Crim. Proc. 16(b)(1); Ellison, 704 F. App'x at 624-25 (affirming district court's ruling that defendant must provide pretrial reciprocal discovery of all non-impeachment documents defendant intended to use at trial); United States v.

---

[2] Defendant's current counsel also represented a defendant in the Michaels case, and is familiar with this Court's rulings on reciprocal discovery.

[3] The government anticipates based on a recent filing by defendant that defendant will claim that the government has not substantially complied with its discovery obligations.  First, defendant stipulated to the reciprocal discovery date.  And second, an objective review of the discovery produced by the government would clearly establish substantial compliance.

*Crowder*, 325 F. Supp. 3d 131, 137 (D.D.C. 2018) (collecting cases to state that a defendant must produce pursuant to his Rule 16(b) disclosures all documents defendant intends to use at trial, including to cross-examine government witnesses, except for true impeachment documents); *Swenson*, 298 F.R.D. at 476-77 (defendant has "a duty to produce any exhibits they intend to use at trial during cross examination of a government witness other than for impeachment purposes"); *Michaels*, Doc. 768 at 2-3, Doc. 804 at 2-3. "It is insufficient to simply state that the defendant will be using documents produced by government in discovery." *Michaels*, Doc. 804 at 2. Defendant must produce all documents save for true impeachment material. See *Ellison*, 704 F. App'x at 624-25; *Crowder*, 325 F.Supp.3d at 137; *Swenson*, 298 F.R.D. at 476-77; see also *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) ("One of the objectives of Rule 16 is to eliminate the idea that a criminal trial is a sporting contest in which the game of cat and mouse is acceptable.").

## B. Defendant's Failure to Produce Reciprocal Discovery

To date, defendant has produced no reciprocal discovery and failed to comply with the deadline this Court set (CR 171), to which defendant stipulated (CR 170). Defendant has had ample time to review the discovery in this case and identify reciprocal discovery. But even if defendant attempts to claim that he has not reviewed all of the discovery to determine what he would need to produce in reciprocal discovery, this would not excuse his failure to produce any reciprocal discovery, including any materials he has already reviewed, or other reciprocal discovery defendant (purportedly) already has in his possession. Similarly, there is no reason why

3

defendant cannot have produced any reciprocal discovery he has obtained from third-parties or in connection with other proceedings (such as the SDNY prosecutions or State Bar proceedings) during the past 18 months.

For example, on April 11, 2019, just after the Indictment in this case became public, defendant tweeted "Any claim that any monies due clients were mishandled is bogus nonsense.  By way of example only (there are MANY more like this), here is a document [Client 1] signed less than a month ago attesting to my ethics and how his case was handled.  I look forward to proving my innocence."  (Exhibit 2.) Defendant attached to this tweet a "Client Testimonial Approval" (purportedly) signed by Client 1.  (Id.)  Additionally, on June 14, 2019, in response to a civil suit filed against defendant by Client 1, defendant tweeted that he has "receipts . . . in spades" for his defense to claims he embezzled Client 1's settlement money.  (Exhibit 3.)  Defendant attached to his tweet documents (purportedly) signed and initialed by Client 1. (Id.)  The documents that defendant attaches to these tweets appear to be portions of the documents the government alleged as part of defendant's ongoing scheme against Client 1.  (CR 16 ¶¶ 7.k., 7.l.)

The government has in its possession, and has produced in discovery, the unsigned versions of the Client 1-related documents defendant created on or about March 23, 2019, on his MacBook computer.  To our knowledge, except from defendant's tweets, the government does not have signed and initialed copies of these documents from any witness or from the seized materials.  Defendant, therefore, has had access to additional materials since at least April 2019.  If defendant intends to use these documents, or the

4

"many more like these" defendant claims he has during trial, or any of his alleged "receipts" he has relating to any of the counts of the Indictment, defendant was, and is, obligated to produce those documents pursuant to his reciprocal discovery obligations.

Moreover, since last year, defendant has had access to a substantial amount of discovery materials to which the government's Prosecution Team has no access.  For example, in June 2019, the Privilege Review Team produced to defendant complete forensic copies of the digital devices seized from defendant's residence, the digital devices seized during defendant's arrest, and nine digital devices obtained from former employees of defendant's coffee company, Global Baristas US, LLC.  (See CR 99 at 6.)  In contrast, the Prosecution Team only has access to the limited amount of materials from those devices that the Privilege Review Team reviewed for scope and privilege, and subsequently released to the Prosecution Team. Defendant also requested and received over 50,000 electronic files directly from the Privilege Review Team in October 2019.  (See id. at 10.)  Additionally, last year in connection with the SDNY proceedings, defendant received a complete forensic copy of his MacBook, as well as a copy of all of the data seized from defendant's Apple iCloud account.  (See CR 99 at 16.)  Again, if defendant intends to use any of these materials at trial, defendant was and is, obligated to produce those documents pursuant to his reciprocal discovery obligations.

### C. The Court Should Exclude Evidence Defendant Failed to Produce in Reciprocal Discovery

The Ninth Circuit has held that district courts have broad discretion in enforcing discovery rules, and a defendant's failure to

comply with his discovery obligations under Rule 16(b)(1)(A) can result in exclusion of evidence at trial.  See United States v. Scholl, 166 F.3d 964, 972 (9th Cir. 1999) (upholding district court's decision to exclude defense evidence as a sanction for violating Rule 16 based on trial court's finding that defendant's failure to produce the evidence to the government in discovery was "a strategic decision to withhold the [evidence] until the government would be unable to fully investigate"); United States v. Duran, 41 F.3d 540, 545-46 (9th Cir. 1994) (upholding exclusion of evidence that was not disclosed in violation of Rule 16 where defense counsel failed to produce evidence without showing of good cause); United States v. Aceves-Rosales, 832 F.2d 1155, 1156-57 (9th Cir. 1987) (upholding exclusion of evidence not timely disclosed where defense counsel "made a strategic decision to withhold the document until after the close of the government's case").[4]

Here, as noted above, defendant requested discovery from the government, and the government has substantially complied with those requests at length.  The government has also requested reciprocal discovery and defendant stipulated to August 31, 2020, as the date his reciprocal discovery was due.  Thus, defendant's Rule 16

---

[4] Other courts have held similarly.  See, e.g., United States v. Moore, 208 F.3d 577, 578 (7th Cir. 2000) ("[C]ourts are entitled to exclude evidence that should have been produced during reciprocal discovery in criminal cases."); Swenson, 298 F.R.D. at 476 (holding that exclusion was appropriate sanction where defendant "unreasonably refused to provide reciprocal discovery"); United States v. Young, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).

reciprocal discovery obligation was triggered and defendant failed to comply with his obligation.

Defendant personally identified specific pieces of evidence that he claimed supports his defense in this case, as well as having "receipts in spades," yet has produced no evidence in advance of trial.  And defendant has had access to other digital devices and discovery materials since last year, yet has produced no reciprocal discovery from those materials either.  These tactics are inappropriate and constitute a violation of Rule 16.  Accordingly, this Court should prohibit defendant from using at trial any evidence defendant has not produced in reciprocal discovery, without a showing of good cause.

## III. ADVICE-OF-COUNSEL

In other proceedings in March 2019, defendant testified under oath and repeatedly claimed that he had consulted with counsel regarding a number of issues relating to the charges in this case. Yet, despite repeated requests from the government over the course of the past six months, defendant has refused to inform the government as to whether he intends to pursue an advice-of-counsel defense at trial and, crucially, has failed to comply with the Court's reciprocal discovery deadline and produce any discovery to support such a defense.

### A.   Background

#### 1.   Defendant's Prior Under Oath Testimony

Defendant testified under oath at a Judgment Debtor Examination on March 15, 2019, and provided the following answers in response to questions regarding whether defendant paid personal expenses directly out of an IOLTA account:

> Sir, I have no idea, and what I would say is that any payments that I have ever made out of an IOLTA account were proper and in accordance with state law and ethical liabilities, and I routinely consult with my ethics counsel relating to the transfer of funds.

* * *

> Sir, I don't know what you mean.  I'm going to go back to what I've said.  When I make payments out of accounts, they are proper, they are in accordance with California law and rulings and regulations governing lawyers, and I routinely rely on ethics advice from at least one, if not more, preeminent lawyers who are ethical specialists in the State of California, period.

(Exhibit 1 at 9, 10.)

Defendant testified under oath at a Judgment Debtor Examination on March 22, 2019, and responded to a question about whether defendant set up an attorney-client trust account at City National Bank on or about May 7, 2017, as follows: "Yes.  And there was absolutely nothing wrong with that.  And I was permitted to do it, and I specifically consulted with counsel before doing it."  (<u>Id.</u> at 17.)  When asked which counsel defendant consulted, defendant stated, "I don't recall the specific counsel, but I know we had a lot of attorneys involved at the time relating to our bankruptcy petition. . . ."  (<u>Id.</u>)  When asked precisely whether he sought advice-of-counsel regarding the opening of the specific bank account, defendant answered:

> No, I'm – sir, I'm not going to get into specific topics that I sought advice about.  But what I will say is, generally, we conducted ourselves aboveboard at all times, and we made certain that we followed all of the ethical rules and obligations, as well as those of the bankruptcy court.  And one of the ways we did that was by consulting counsel on a consistent basis.

(<u>Id.</u> at 18.)  Subsequently, when asked whether he provided information about the bank account to the United States Trustee's Office, defendant stated: "Sir, I don't know if I did or didn't, but

8

I certainly wasn't under obligation to.  Again, we consulted with bankruptcy counsel, and they told us what we had to. . . ."  (Id. at 25-26.)

When asked during the same judgment debtor examination whether defendant provided settlement proceeds to the clients he was representing in the Super Bowl Litigation (Greco et al. v. NFL et al, 3:13-cv-01005-M (NDTX)), some of the proceeds were deposited into the newly opened attorney-client trust account described above, defendant testified:

> Yeah, as I recall we did, but I – I don't have a firm recollection of that, as I sit here today.  I don't remember the totality of the settlement amount and – and the flow of the money.  What I do remember is that we sought advice from ethics counsel and others, and it was handled aboveboard.  That's what I recall.

(Id. at 22.)

During the examination, defendant was also asked whether defendant disclosed his firm's receipt of the settlement involving Client 3 (in the Indictment) to the bankruptcy court.  Defendant answered:  "Sir, I don't recall what the required disclosures were, but I will tell you that we, at all times, adhered to the letter of the law in connection with the bankruptcy matter, and, in fact, we consistently consulted with bankruptcy counsel and others to ensure that we did so."  (Id. at 27.)  Defendant gave additional answers relating to the reporting of Client 3's settlement proceeds to the bankruptcy court, including ". . . What I do know is, like I said earlier, we consistently consulted counsel who advised us on these matters" and ". . . I recall that we relied on counsel in connection with all these matter."  (Id. at 28-29.)  Finally, when asked about defendant's disclosures on his monthly operating reports due as part

9

of EA LLP's bankruptcy proceedings, defendant stated in part: ". . .
I advised – I relied on the advice of bankruptcy counsel relating to
all of those matters." (Id. at 33.)[5]

> 2.   The Government's Requests for Notice of an Advice-of-
> Counsel Defense and Any Related Reciprocal Discovery

On March 4, 2020, based on defendant's prior testimony, the
government sent a letter to defendant inquiring whether defendant
would assert an advice-of-counsel defense to any of the charges in
the Indictment.  (Exhibit 1 at 1-2.)  If defendant would rely upon
such a defense, the government asked defendant to provide:

> (1) written notice of any such defense and the specific
> counts to which such a defense would apply; (2) the names
> and contact information of the attorneys or law firms upon
> whose advice defendant relied; and (3) any pretrial
> disclosure of any evidence and/or discovery defendant
> intends to rely upon in support of such a defense at trial.
> Fed. R. Crim Proc. 16(b).

(Id.)  The government included the examples described above in which
defendant testified under oath that he supposedly consulted with and
obtained advice from counsel regarding the facts that are alleged in
the wire and bankruptcy fraud charges in the Indictment, specifically
Counts 4, 5, 33, 35, and 36.

Defendant did not reply to the government's request on March 4,
2020, or March 16, 2020, but in response to a third request on May 5,
2020, defendant responded that defendant had not yet decided.

---

[5] During defendant's bail revocation hearing before this Court
on January 15, 2020, defendant's counsel stated, regarding the
alleged violations: "He feels he did it in an above board and legal
manner.  The fact that he approached counsel and received legal
advice supports the fact that certainly his mental state was not to
defraud or otherwise give any trouble to anybody else."  (1/15/20 RT
at 12.)

(Exhibit 4.)  On August 20, 2020, defense counsel sent an email that included the following:

> In addition, you previously inquired as to whether Mr. Avenatti is asserting an advice of counsel defense.  We cannot answer this question until we have substantially completed our review of the discovery in this case (well over one million pages and counting) and also received access to all of Mr. Avenatti's communications with the firm's prior bankruptcy counsel and others (i.e. his staff) relating to the prior bankruptcy proceeding, what schedules were prepared by whom, how they prepared, what advice was given and when, etc.  Obviously, we need all of those details before we can make an educated decision on whether to assert the defense.  As you know, we do not presently have access to this information (i.e. the emails) and the government has prevented us from gaining access from the IRS.  As a result, we are having to resort to other means, which is substantially delaying the process.

(Exhibit 5.)

## B.    Advice-of-Counsel Defense and Discovery Obligations

### 1.    The Court Should Exclude Any Documents Relating to a Purported Advice-of-Counsel Defense

Defendant has not provided notice that he will rely on an advice-of-counsel defense, despite stating under oath on several occasions that he "consistently consulted with counsel" and "relied upon the advice of his counsel."  Accordingly, the government anticipates that defendant may seek to raise some form of an advice-of-counsel defense, while simultaneously preventing the government from investigating the merits of such a defense.[6]

Defendant bears the burden of establishing his entitlement to an advice-of-counsel jury instruction.  United States v. Ibarra-Alcarez,

---

[6] The government sincerely doubts as it relates to the charges in the indictment the legitimacy of any claim that defendant provided full disclosure of the information to an attorney, defendant obtained advice from the attorney, and defendant carried out that advice in good faith.  As such, defendant likely would attempt to avoid early disclosure to prevent any investigation into such claims.

830 F.2d 968, 973 (9th Cir. 1987).  As the Ninth Circuit has stated, "[t]o qualify for an advice of counsel instruction, the defendant must show that there was full disclosure to his attorney of all material facts, and that he relied in good faith on the specific course of conduct recommended by the attorney."  Id.; see also Bisno v. United States, 299 F.2d 711, 719 (9th Cir. 1961) ("Advice of counsel is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent.").  Because defendant bears the burden of satisfying a required evidentiary showing to qualify for an advice of counsel instruction, Rule 16 obligates defendant to produce the substantive evidence concerning his disclosures to his attorneys, the specific course of conduct recommended to him by his attorneys, and what he did to implement that course of conduct.  The evidence in support of defendant's advice-of-counsel defense is defendant's "evidence in chief" subject to his reciprocal discovery obligations under Rule 16.  Regardless of whether defendant introduces the evidence through government or defense witnesses, it is evidence that defendant bears the burden of coming forward with to present an advice-of-counsel defense to the jury.

Defendant provided no reciprocal discovery relating to an advice-of-counsel defense, therefore, this Court should exclude as substantive evidence at trial any documents relevant to such a defense that defendant did not timely produce.  Defendant's claim that he cannot decide whether he would assert this defense until after he has substantially completed his review of the discovery is unavailing.  Defendant raised a potential advice-of-counsel defense

12

during his testimony on at least two occasions eighteen months ago, and he was charged with related crimes one month later. Defendant's position is pure gamesmanship. Given that defendant's intent, both his intent to defraud and knowledge of his statements being materially false, are critical issues in his trial, defendant's assertion that he does not yet know whether he would assert such a defense and what documents would relate to such a defense appear to be strategic posturing that has no place in a criminal trial. See Howell, 231 F.3d at 625 ("Broad discovery contributes to the fair and efficient administration of criminal justice . . . by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to the accurate determination of the issue of guilt or innocence.") (quoting Fed. R. Crim. P. 16, Advisory Comm. Note).

In addition, defendant has had access to all of the information he claims he needs to review since March 2020 at the very latest, including considerable potentially privileged documents to which the government's Prosecution Team does not have access. Although defendant claims he does not have access to the information and "the government has prevented [him] from gaining access from the IRS," these are excuses that are not grounded in reality. Defendant was provided an ample opportunity to review the EA LLP computer server last year, and he did so. (CR 195.) And the government's Privilege Review Team largely completed its review and production of the search warrant materials, including potentially privileged materials, to defendant in March 2020.[7]

---

[7] Contrary to defendant's claim, the government has not prevented defendant from gaining access to information at the IRS. As the Court well knows, defendant stipulated to turning ownership of

Moreover, if defendant did consult with an attorney, defendant would be able to obtain any necessary information directly from his attorney.  The fact that defendant has not produced any such materials yet despite having an affirmative obligation to do is telling.

As defendant provided no reciprocal discovery on the defense, barring a proffer from defendant establishing the elements of a advice-of-counsel defense, this Court should preclude defendant from confusing the jury by making any arguments or questioning any witnesses concerning any alleged legal advice he received.  Bisno, 299 F.2d at 720.  Indeed, whether defendant had bankruptcy counsel or ethics counsel is irrelevant to whether defendant embezzled money from clients or knowingly made false statements during the EA LLP bankruptcy.  Thus, the Court should prohibit defendant from arguing that an attorney's mere involvement in defendant's activities negates his fraudulent intent in connection with the charged offenses.

>    2.    Alternatively, the Court Should Require Defendant to Provide Notice and Produce All Discovery Regarding Any Advice-of-Counsel Defense

Alternatively, if this Court is not inclined to preclude evidence regarding an advice-of-counsel that the defense failed to produce by its reciprocal discovery deadline, the government requests that the Court order defendant to provide pretrial notice of any such defense, as well as pretrial disclosure of any evidence defendant intends to rely upon in support of such a defense by October 30,

---

EA LLP over to a receiver, and EA LLP is now in bankruptcy; therefore this Court has ruled that defendant does not have a basis to access information outside the scope of the search warrants that do not belong to him.  (CR 63, 199.)  Moreover, if any such information exists on the digital devices, defendant would have received the information from the Privilege Review Team or Prosecution Team.

14

1    2020.  See Crowder, 325 F. Supp. 3d at 138-39; but see United States

2    v. Wilkerson, 388 F. Supp. 3d 969 (E.D. Tenn. 2019) (disagreeing with

3    Crowder).

4        In Crowder, defendants were charged with a scheme to defraud the

5    District of Columbia Public Schools.  325 F. Supp. 3d at 131.

6    Anticipating a potential advice-of-counsel defense, the government

7    requested that the court order defendants to provide notice of such a

8    defense and discovery relating to such a defense to avoid unnecessary

9    delay at trial.  Id. at 137.  In granting the government's request,

10   the court explained that "[a]lthough the Federal Rules of Criminal

11   Procedure do not specifically require defendants to provide pretrial

12   notice of an advice-of-counsel defense, courts have broad discretion

13   to impose disclosure and notice requirements outside the rules."  Id.

14   at 138 (citations omitted).  Further, the court found that pretrial

15   disclosure was warranted because "[d]efendants' decision on whether

16   to assert the advice-of-counsel defense may impact the scope of

17   discovery otherwise permitted or ordered, and thus risks unnecessary

18   interruption and delay if asserted at trial."  Id. (citation

19   omitted).  Indeed, "because an advice-of-counsel defense is complex

20   it may raise issues requiring additional briefing before trial."  Id.

21   (citation omitted).

22       Similarly here, if the Court does not require pretrial

23   disclosure of defendant's intent to raise an advice-of-counsel

24   defense, any such defense will likely cause interruption and delay.

25   Because defendant has retained numerous counsel over the years for

26   numerous matters, any advice-of-counsel defense may result in

27   defendant producing voluminous discovery to the government.  Early

28   notice and disclosure would allow the government to investigate any

15

claim and prepare to meet it at trial, as opposed to the government
likely needing to request a recess from the Court during trial to
review and investigate the discovery.  Moreover, there would likely
be additional litigation regarding the assertion of any advice-of-
counsel defense or the admissibility of evidence, therefore, early
notice and production of discovery will enable the Court and parties
to litigate the matter without causing a delay in the trial.

Given the elements defendant would need to establish to assert
the advice-of-counsel defense, this Court should order defendant to
produce appropriate discovery to the government concerning any
advice-of-counsel defense, including: (1) correspondence, memoranda,
notes, calendar entries, billing records, and other documents
reflecting meetings with any attorney on whose advice they plan to
rely and the purpose of such meetings; (2) any documents concerning
defendants' knowledge of the attorney's qualifications and
reputation; (3) all of the attorney's files and notes concerning
defendant's disclosure of facts related to the advice; (4) and all
files and notes concerning the nature of the advice given by the
attorney; and (5) any attorney files and notes concerning whether
defendants complied with the attorney's advice.

Defendant also cannot avoid this discovery obligation by
claiming that the information being sought is privileged.  It is well
established that the assertion of an advice-of-counsel defense waives
the attorney-client privilege as to the advice in question.  By
raising an advice-of-counsel defense, defendant places the relevant
communications at issue, thereby waiving any privilege.  See United
States v. Ortland, 109 F.3d 539, 550 (9th Cir. 1997) ("Certainly when
the client . . . asserts at trial as a defense to the charges that he

16

relied on the advice of counsel in doing what he did, our cases are clear that a waiver has occurred and the government may freely explore the details of the discussions."); see also United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (attorney-client privilege waived by advice-of-counsel defense because defendant's "conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent").

   If defendant is permitted to defer production of discovery concerning an advice-of-counsel defense until the conclusion of the government's case, he will create a situation in which a continuance will be necessary to allow the government a fair opportunity to address his advice-of-counsel defense.  See Fed. R. Crim. P. 16(d)(2) (recognizing appropriateness of continuance to allow a party to inspect discovery disclosed untimely in violation of Rule 16).  This case definitely calls for the Court to exercise its discretion and require defendant to provide notice of any anticipated advice-of-counsel defense and order defendant to produce all discovery relating to that defense theory.  The Court should order such disclosures by October 30, 2020, or a date in advance of the trial this Court deems appropriate.  Any continuance during trial would disrupt the orderly proceedings of the trial, adversely affect this Court's ability to manage its docket and calendar efficiently, and inconvenience the jurors and witnesses as well as the parties.  These concerns are

magnified in light of postponement of trials for the last six months due to COVID-19.[8]

For these reasons, among others, the government does not want to seek a continuance during trial, but asks for the Court to preclude defendant from introducing any evidence relevant to the defense that defendant withholds despite a Court order requiring disclosure.  If defendant fails to produce any discovery by the Court-imposed deadline, this Court should exclude any relevant evidence not produced by defendant.  Scholl, 166 F.3d at 972; Duran, 41 F.3d at 545-46; Aceves-Rosales, 832 F.2d at 1156-57; Young, 248 F.3d at 269-70.

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion in limine to exclude defense exhibits that have not been produced pursuant to defendant's reciprocal discovery obligations, including any documents related to an advice-of-counsel defense.  Alternatively, the government requests that the Court order defendant to disclose any intent to rely upon an advice-of-counsel defense and produce all relevant discovery by October 30, 2020.  The Court should then exclude any evidence defendant fails to provide related to such defense by this Court-ordered deadline.

---

[8] The government is mindful that this Court, in its discretion, did not require pretrial disclosure of the advice-of-counsel defense or related discovery in United States v. Michaels et al., SA CR 16-76-JVS; however, this did result in a postponement in the middle of that trial.  The government believes any avoidable delay during defendant's trial is preferable.