NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6683
    Facsimile: (213) 894-6269
    Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3598
    Facsimile: (714) 338-3708
    Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL JOHN AVENATTI,<br><br>    Defendant. | No. SA CR 19-061-JVS<br><br>GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION TO TERMINATE AND NOT FURTHER EXTEND DEFENDANT MICHAEL JOHN AVENATTI'S TEMPORARY RELEASE; EXHIBITS |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Julian L. André, hereby files its reply in support of its motion to terminate and not further extend defendant MICHAEL JOHN AVENATTI's temporary release pursuant to 18 U.S.C. § 3142(i), which is currently set to expire on October 6, 2020.

The government's motion is based upon the attached memorandum of points and authorities, the attached exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 18, 2020　　　　　Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

　　　　　　　/s/
BRETT A. SAGEL
JULIAN L. ANDRÉ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES...................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.   INTRODUCTION.......................................................1

II.  ARGUMENT...........................................................1

     A.   Defendant's Violation Was Not a Misunderstanding..............1

     B.   The Court Has Broad Discretion to Terminate
          Defendant's Temporary Release.................................7

     C.   Defendant's Remaining Arguments Are Meritless................10

          1.   Factual Assertions Related to the Alleged
               Violations..............................................10

          2.   Defendant's Ability to Prepare for Trial................12

     D.   Manheimer Is An Unsuitable Third-Party Custodian.............12

III. CONCLUSION........................................................12

**TABLE OF AUTHORITIES**

DESCRIPTION                                                        PAGE

**FEDERAL CASES**

United States v. Park,
    No. SA CR 18-261-JVS (C.D. Cal.)..................................3

United States v. Poon,
    No. SA CR 19-162-DOC (C.D. Cal.)..................................3

United States v. Ramos,
    No. SA CR 19-24-DOC(C.D. Cal.)....................................3

**FEDERAL STATUTES**

18 U.S.C. § 3142(i)..........................................7, 10

**MISCELLANEOUS**

Kurt Snibee, Number of COVID patients in ICUs at OC's lowest
    level in 5 months, Orange County Register,
    available at
    https://www.ocregister.com/2020/09/14/coronavirus-number-
    of-patients-in-icus-at-lowest-level-in-five-months-in-
    orange-county-on-sept-14/..........................................8

Workbook: COVID-19 Cases Dashboard,
    available at https://public.tableau.com/views/COVID-
    19CasesDashboard_15931020425010/Cases?:embed=y&:showVizHome
    =no  8    ..........................................................8

1 **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I. INTRODUCTION**

Defendant MICHAEL JOHN AVENATTI's opposition confirms that he cannot be trusted to comply with his temporary release conditions or be candid with this Court. By his own admission, defendant used his third-party custodian's computer (a device that undoubtedly "offers" access to the internet) in direct violation of his release conditions. Simply put, defendant breached this Court's trust and took advantage of the extraordinary relief the Court had granted him.

Having spent weeks denying that he used the computer and providing misleading information to the Court, defendant now attempts to claim that such use was not really a violation, the violation does not really matter, and the violation was not actually defendant's fault. Had defendant acknowledged that he used his custodian's computer in June 2020 when the issue first arose, this Court, Pretrial Services ("PTS"), and the parties would have been able to preserve valuable resources and resolve this issue promptly. Three months later, however, defendant's excuses ring hollow.

This Court already revoked defendant's bail and, in its discretion, subsequently granted <u>temporary</u> release to defendant based on the circumstances at that time. The Court, in its discretion, should now terminate defendant's temporary release, which is no longer appropriate due to defendant's conduct and no longer necessary due to the improved circumstances in Orange County.

**II. ARGUMENT**

**A. Defendant's Violation Was Not a Misunderstanding**

Defendant maintains that "even if [he] violated the technical letter of one of his bail conditions, he did so at the direction of

his defense counsel and with a reasonable misunderstanding of exactly what was prohibited." (Opp. 5.)  Defendant claims that "at most" he and his counsel "made an honest mistake." (Id.)  These statements, however, are fundamentally inconsistent with defendant's prior statements and claims.  Starting in at least May 2020, defendant knowingly violated his conditions of release, spent weeks providing convoluted explanations to the Court and denying the violation, and never once -- despite numerous opportunities -- told the Court that he already had used Jay Manheimer's computer or did so at his counsel's direction.  Indeed, even in his opposition, defendant is not fully candid with the Court.

First, on May 27, 2020, one month after this Court granted defendant's temporary release, defendant claimed his "ability to prepare for trial, including motion practice" had been "severely impacted" because his bail conditions prevented him from using a computer.  (CR 164 at 2.)  As a result, at the June 1, 2020, status conference, the Court ordered the parties to obtain a stand-alone computer for defendant.  On June 5, 2020, defendant signed a stipulation to modify his release conditions to permit him to use a specific internet-disabled laptop, and which detailed the specific measures that his attorney would undertake to ensure the computer could not be used to access the internet.  (CR 173.)  Defendant received the internet-disabled computer that same day.

If defendant, or his counsel, truly misunderstood the condition and believed defendant could use Manheimer's computer with the internet temporarily turned off at his counsel's direction, there would have been no reason for the stipulation to modify his release conditions.  Moreover, if defendant and his counsel believed

2

defendant could use Manheimer's computer at defense counsel's direction, there was no need for defendant to claim on May 27, 2020, that his bail conditions "severely impacted" his ability to work on motions. Defendant's opposition does not even attempt to explain these significant inconsistencies.

Second, on June 7, 2020, in response to the government's allegation that defendant may have violated his release conditions by using Manheimer's computer to work on several recent filings (CR 177), defendant neither admitted nor denied using Manheimer's computer, and instead merely stated that he had "not accessed the internet using any computer or electronic devices." (CR 179.) Defendant then offered a convoluted theoretical explanation, purportedly consistent with his bail conditions, about how Manheimer could have assisted defense counsel in finalizing those pleadings without defendant actually using Manheimer's computer and violating his temporary release conditions. (CR 179 at 1-2.)[1]

At a status conference the next day, June 8, 2020, the Court reiterated that the "restriction is not that [defendant] couldn't use the internet, but that he was not to have access to devices that would permit him to use the internet." (6/8/2020 RT 10:6-19; CR

---

[1] Defendant also claimed that was it "necessary" for Manheimer to print the final pdfs, because of defense counsel's limitations from home and limited travel into the office due to COVID-19. (CR 179 at 2; see also CR 271 Decl. ¶ 10 (explaining why defense counsel "needed" Manheimer to create PDFs).) Yet, in other cases in which defendant's counsel is the attorney of record, the metadata for filings during this same time period shows that counsel had no problem printing pleadings to PDF and filing the documents himself. See, e.g., United States v. Park, No. SA CR 18-261-JVS, Doc. 53 (filed on 5/8/20), Doc. 58 (filed on 5/29/20); United States v. Poon, No. SA CR 19-162-DOC, Doc. 38 (filed on 5/11/20); United States v. Ramos, No. SA CR 19-24-DOC, Doc. 122 (filed on 6/16/20).

3

180.)² In response, defendant's counsel told the Court that he "spoke with Mr. Manheimer last night, and he assured me that Mr. Avenatti <u>has not had access to a device with internet capabilities</u>." (<u>Id.</u> at 11:15-22 (emphasis added).)

At another status conference relating to the privilege issue on June 11, 2020, the Court asked defendant to explain the "mechanics" of how defendant and his counsel transmitted documents. (6/11/2020 RT 4:11-5:10.) Counsel explained that he would send a document to Manheimer, who would print it and deliver it to defendant. (<u>Id.</u>) Defendant would then handwrite edits and give them to Manheimer, who would send the edits back to counsel via a scanned PDF or an email. (<u>Id.</u>) Both in defendant's June 7, 2020, opposition (CR 179) and at the June 11, 2020, status conference, defendant described the purported process in detail that his conditions of release would permit (CR 154 at 8, ¶ 13), but never disclosed that defendant had used Manheimer's computer as part of that process or argued that he believed such use would be proper (<u>id.</u> ¶¶ 12-13). If defendant and his counsel truly believed it was proper for defendant to use Manheimer's computer, one would expect them to have immediately raised that issue with the Court.

Third, the government repeatedly suggested defendant could resolve this entire issue without wasting the Court's, PTS's, or

---

² Defendant's opposition repeatedly references this Court's statements from its August 11, 2020, privilege ruling regarding the PTS Report. (Opp. 3, 9, 10, 14, 18.) Defendant, however, does not once reference this Court's June 8, 2020, description of the release condition or, more importantly, counsel's response. Defendant's opposition also focuses on the government's proposed condition prior to defendant's release (Opp. 8-9), which is irrelevant. The release condition this Court ordered, and to which defendant agreed, is all that matters here. (CR 154.)

4

anyone's time, by submitting to the Court in camera the relevant correspondence, including the initial drafts of any pleading that were sent from counsel to defendant, as well as proof that defense counsel had done the legal research in the filings. (CR 186; 6/11/2020 RT 6:25-7:6.) Defendant never did so.

Even now, defendant continues to hide the ball. Defendant's opposition and the accompanying declaration by counsel provide only generic details about the purported process defendant, defendant's counsel, and Manheimer took in relation to filings created on Manheimer's computer.[3] Notably, however, defendant fails to provide to the Court, in camera or otherwise, the "other" emails and "drafts" of the pleadings that defendant claims existed. If defendant could prove that his counsel drafted the six pleadings that listed Manheimer as "author" (as defendant repeatedly claimed in June), defendant could and should have provided such evidence to the Court. But he has not done so. And based on three months of defendant's misleading and incomplete statements regarding what happened, the Court, unfortunately, should not just simply take defendant's or his counsel's word for it.

Finally, defendant's opposition fails to address the numerous issues the government raised to demonstrate that defendant knew using Manheimer's computer was a violation of release conditions. For example, if defendant believed what he did was not a violation, or at worst was a only a misunderstanding, why did defendant change the manner in which he filed pleadings -- he immediately started printing

---

[3] After repeatedly objecting to the government asking Manheimer any questions about this process, and objecting to the government obtaining information from the PTS Report regarding the process, defendant again wants to provide his "version" of events.

5

and scanning the documents before filing, thus concealing the author of the document from the metadata -- after the government raised the issue with the Court? (CR 262 at 19.)

If defendant, his counsel, and Manheimer thought it was acceptable for defendant to use Manheimer's computer to work on pleadings, why did defendant "only do so one or two times?" Defendant could have done so for each of the six pleadings. (CR 164, 165, 167, 172, 174, 178.) Why does defendant continue to describe at length Manheimer's taking dictation, editing documents, printing documents to pdf's for defendant and his counsel? If defendant and his counsel honestly believed defendant could use Manheimer's computer at defense counsel's direction with the internet simply turned off, then there would have been no need for Manheimer to do any of those things. If defendant's use of the computer was simply a mistake and/or at his counsel's direction, there was no reason defendant could not have immediately offered a simple acknowledgment and apology, rather than the half-hearted version defendant provided for the first time in his opposition filed on September 11, 2020.[4]

The answers are simple and lead to one conclusion: defendant knowingly violated his conditions and denied it for as long as he could to avoid responsibility for his actions. Defendant wants the Court to appreciate that he "has skills and knowledge as a 20-year attorney" (Opp. 14), but expects the Court to believe after three months of denials and carefully worded descriptions, that his

---

[4] The fact that defendant has to resort to semantics and word-play in an attempt to claim his violation was not really a violation (Opp. 16-18) further demonstrates that there was never really any confusion about his release conditions.

6

violation was simply a "reasonable misunderstanding" or an "honest mistake."[5]  Defendant cannot have it both ways.  At no point during the numerous status conferences and pleadings defendant filed prior to now, did defendant or his counsel ever state that defendant used Manheimer's computer, defendant did so at counsel's direction, or that there was confusion regarding the condition.  Defendant's violation was knowing and deliberate, and he has tried to avoid the consequences of such violation ever since.

**B. The Court Has Broad Discretion to Terminate Defendant's Temporary Release**

On March 27, 2020, this Court found that it had authority to grant defendant temporary release from custody pursuant to 18 U.S.C. § 3142(i) due to "the COVID-19 virus and its effects in greater New York City."  (CR 128.)  This Court further stated it "has not lost sight and neither should the parties of this Court's finding, and the Ninth Circuit's affirmance, that Avenatti is a danger to the community."  (Id.; see also CR 140 ¶ 26.)  Defendant, however, has lost sight that his bail was already revoked and that his release is in fact temporary.[6]

First, just as the Court had discretion to grant and extend defendant's temporary release under Section 3142(i), it has discretion to terminate or not further extend defendant's temporary release.  Although defendant's violation is clear, and now admitted, the Court need not even find such a violation.  Based on the totality

---

[5] Defendant repeatedly claims if he violated, it was only "one or two occasions, over three months ago." (Opp. 1, 15); however, the government raised the issue contemporaneously, while defendant has sought to delay the resolution of this matter for months.

[6] Defendant's claim about the government's motivation (Opp. 1) has no basis and is utterly without merit.

7

of the circumstances, this Court can terminate or not further extend defendant's temporary release based on any "changed circumstance."

Second, without any support, defendant claims "risk to Mr. Avenatti's health were he to be remanded is also exponentially greater today than when the Court previously ordered him released on March 27." (Opp. 4-5.) The facts do not support this claim, and defendant simply ignores any facts unhelpful to his argument. As this Court has noted, the COVID-19 numbers in Orange County have gotten better, and the seven day averages have continued to fall even since the government's motion to terminate.[7] The data shows that the circumstances, especially in Orange County, have improved dramatically from what they were in March and April.

Third, defendant filed multiple motions seeking his temporary release due to COVID-19, and highlighted the Center for Disease Controls' ("CDC") guidance as to individuals who may face more severe risks if they contract COVID-19, as well as New York City and MCC being the epicenter of the crisis. (CR 117, 125, 129, 136.) Defendant argued that, according to the CDC, his previous pneumonia diagnosis placed him at a higher risk of serious illness if he contracted COVID-19. (CR 117.) In granting defendant's temporary release, this Court stated its "finding [was] particular to Avenatti's medical history and the specific location and vicinity where he [was] housed." (CR 128.)

---

[7] See Kurt Snibee, Number of COVID patients in ICUs at OC's lowest level in 5 months, Orange County Register, available at https://www.ocregister.com/2020/09/14/coronavirus-number-of-patients-in-icus-at-lowest-level-in-five-months-in-orange-county-on-sept-14/; Workbook: COVID-19 Cases Dashboard, available at https://public.tableau.com/views/COVID-19CasesDashboard_15931020425010/Cases?:embed=y&:showVizHome=no (last visited Sep. 18, 2020).

8

Yet defendant does not even address in his opposition that the CDC does not consider defendant's claimed medical condition -- a previous bout of pneumonia -- to be a higher risk or potentially higher risk for severe illness if defendant contracts COVID-19. (CR 262 at 24.) Rather, defendant appears to change course and provides a declaration from a doctor who has never met or examined defendant. Nearly all of the doctor's declaration, as well as defendant's motion addressing COVID-19 in prisons, is <u>not</u> specific to defendant and would apply generally to all prisoners. The doctor does speculate that defendant may have -- or have had -- hypertension.[8] Absent, however, from the declaration is any evidence that defendant has ever been diagnosed with hypertension or been prescribed medication for hypertension.[9] This Court must make an individualized determination as to whether temporary release is still necessary or appropriate. At this time, there is nothing to show that defendant is any more susceptible to COVID-19 than any other 49-year-old.

Fourth, defendant takes issue with the facts relating to Santa Ana Jail ("SAJ") and the Metropolitan Detention Center in Los Angeles ("MDC") in the government's motion. (Opp. 22-23.) The Court must evaluate the risk defendant would face at the specific location he would be housed. What has happened at other facilities at other times is irrelevant. The Court only needs to decide whether defendant's purported medical condition(s) is/are a basis to justify

---

[8] Under current CDC guidance, hypertension would not place defendant in the categories of individuals who "are at an increased risk," but instead would place him in the category of individuals who "might be at an increased risk."

[9] The doctor's declaration states that he relied upon, among other things, defendant's medical records and defendant's statements, but does not disclose what statements or records defendant provided.

9

continued relief under Section 3142(i) and if SAJ or MDC can properly handle any potential risks that may exist. This Court has five months of proof that both SAJ and MDC have implemented proper protocols to address such risks and can, in fact, appropriately handle them.

In essence, defendant's opposition seeks to turn his temporary release into permanent bail with hyperbolic and generalized statements. This Court must determine, in its discretion, whether the present situation, in conjunction with -- or independent of -- defendant's violation of his conditions of release, justifies continuing the extraordinary relief this Court granted defendant under Section 3142(i). The Court should decline to extend such extraordinary relief.

### C. Defendant's Remaining Arguments Are Meritless[10]

#### 1. Factual Assertions Related to the Alleged Violations

As anticipated, without any basis, defendant argues that the government is trying to prevent him from assisting with his defense. (Opp. 14-15.) Defendant can obviously assist in his defense, but he cannot claim his need to "assist in his defense" justifies violating his conditions of release or misleading the Court. If defendant felt his release conditions were preventing him from effectively assisting with his defense, he could have asked the Court to modify his release

---

[10] Defendant's opposition raises countless claims that are not factually supported, are irrelevant, and/or are simply intended to distract from the issues this Court must decide. For example, defendant makes completely false and unsupported allegations about his arrest on January 14, 2020. (Opp. 6-7; see Ex. 1.) And defendant's assertions regarding his debt to Ms. Carlin were raised at the January 15, 2020, hearing and properly rejected by the Court at that time -- and rejected by a Superior Court Judge. (See, e.g., 1/15/2020 RT 9:17-10:6; Ex. 2.)

10

conditions. Instead, defendant violated his conditions of release and repeatedly misled this Court about his actions -- and continues to do so in his opposition.

Defendant's opposition also suggests that defendant only "briefly" used Manheimer's computer "for one or two urgent tasks" because it was Manheimer's only computer that Manheimer needed to "use[] to work from home as a writer." (Opp. 20, see also Opp. 25 ("Manheimer works from home").) First, Manheimer testified that he was not currently working and had not been "employed in any way" since April 24, 2020. (CR 200-1 at 28:5-9.) Next, defense counsel's declaration details the numerous tasks Manheimer undertook -- nearly all using his computer -- to assist defendant's counsel in numerous cases, "devot[ing] *hours* almost every day to these tasks" since defendant's release on April 24, 2020. (CR 271, Decl. ¶¶ 9-10 (emphasis in declaration).) If defendant thought he could use Manheimer's computer to work on defendant's case, there would have been no need for Manheimer to devote numerous hours each day for defendant's legal work -- defendant could have done it himself. Moreover, in the May 27, 2020 status report, defendant did not say he needed a computer because Manheimer was using his computer for his own work; defendant said his bail conditions prohibited him from using a computer. (CR 164 1-2.)

Defendant also maintains that because he has complied with all of his other conditions of release and PTS did not recommend violating defendant, the Court should not terminate his release. These facts provide no support for defendant. Defendant is required to comply with *all* of his conditions of release, not most of them, and many of defendant's conditions rely on defendant to self-report

information.  And, at the time PTS issued its Report, they did not have Manheimer's testimony, including his specific statements that defendant used Manheimer's computer.

### 2. Defendant's Ability to Prepare for Trial

Defendant argues that terminating his temporary release would further delay the trial.  Defendant's counsel is very experienced and just recently sought to have the Court appoint him pursuant to the Criminal Justice Act.  Defendant sought this appointment knowing full well that defendant's current release was temporary and trial was set for December 8, 2020.  There is simply no reason defendant and his chosen counsel cannot prepare for trial while defendant is in custody.  This happens all the time, and defendant's counsel has considerable experience with those arrangements.

### D. Manheimer Is An Unsuitable Third-Party Custodian

If this Court were to allow defendant to remain on temporary release, this Court should review Manheimer's testimony to determine whether he is a suitable third-party custodian. (CR 200-1.)  The testimony calls into question Manheimer's credibility, given that his vague and evasive answers appear to be an attempt to help his childhood friend, and whether the Court can trust Manheimer to serve as defendant's third-party custodian.

## III. CONCLUSION

For the foregoing reasons, the government requests that the Court terminate or decline to extend defendant's temporary release, or, alternatively, require defendant to obtain a new third-party custodian.