EXHIBIT "A"

404(b) Response & Opposition



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*Julian L. André*
*Phone: (213) 894-6683*
*E-mail: Julian.L.Andre@usdoj.gov*

*1100 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California 90012*

February 4, 2020

**VIA EMAIL**

H. Dean Steward, Esq.
107 Avenida Miramar, Suite C
San Clemente, California 92672
deansteward7777@gmail.com

        Re:    <u>United States v. Avenatti</u>,
              SA CR No. 19-61-JVS

Dear Counsel:

The government hereby provides defendant MICHAEL JOHN AVENATTI ("defendant") with notice that the government may seek to introduce evidence of other crimes, wrongs, or acts defendant committed on the basis that such crimes, wrong, or other acts are part of the charged conduct in the indictment, inextricably intertwined with the charged conduct, or, alternatively, are admissible pursuant to Federal Rules of Evidence 404(b), 608, and/or 609. Specifically, the government may seek to introduce at trial evidence demonstrating that defendant engaged in the conduct described below:

**Embezzlement of Settlement Funds from the Super Bowl Litigation**

At trial, the government intends to introduce evidence demonstrating that defendant embezzled a portion of a $1.55 million settlement payment meant to benefit legal clients he represented in connection with litigation against the National Football League (the "NFL"), in <u>Greco et al. v. NFL et al</u>, 3:13-cv-01005-M (NDTX). Specifically, we intend to introduce, among other things, evidence of the following:

- Beginning in or about 2012, defendant and his law firm, Eagan Avenatti LLP ("EA LLP"), represented approximately 200 individuals (the "Super Bowl Clients") in connection with litigation against the NFL relating to the 2011 Super Bowl (the "Super Bowl Litigation").

- In or about May 2017, defendant negotiated a $1.55 million settlement of the Super Bowl Litigation on behalf of the Super Bowl Clients.

- On or about May 15, 2017, defendant instructed local counsel in the Super Bowl Litigation, Christopher Ayres, to transfer approximately $408,724 of the settlement proceeds be transferred to an EA LLP bank account at California Bank & Trust ("CBT") and to separately transfer approximately $952,995 to an attorney client trust account at City National Bank ("CNB").

RE: United States v. Avenatti
February 4, 2020
Page 2

- Rather than maintain the settlement funds for the benefit of the Super Bowl Clients in an attorney trust account, defendant used a substantial portion of the approximately $1.31 million defendant and his law firm received from the settlement for his own personal and business purposes.[1]

- Between July 2017 and October 2018, defendant caused payments totaling approximately $145,222 to be paid to approximately 31 of the Super Bowl Clients. The vast majority of these payments were made using funds defendant had received from other sources as opposed to from the settlement proceeds, which defendant had already used for his own personal and professional purposes.

- Defendant never paid the vast majority of the Super Bowl Clients any of the settlement proceeds and repeatedly refused to authorize Judy Regnier to make payments to the other Super Bowl Clients. Indeed, defendant failed to notify many of the Super Bowl Clients that a settlement had been reached in the Super Bowl Litigation.

The general nature of the evidence the government will seek to admit regarding defendant's embezzlement of settlement funds from the Super Bowl Clients includes, but is not limited to, the following: testimony from Judy Regnier; testimony from Christopher Ayres (local counsel in the Super Bowl Litigation); testimony from other EA LLP attorneys who worked on the Super Bowl Litigation; testimony from at least two of the Super Bowl Clients[2]; documents regarding the settlement of the Super Bowl Litigation obtained from Ayres and counsel for the NFL; emails, text messages, and other correspondence regarding the settlement of NFL litigation obtained from the Super Bowl Clients and other third-parties; and bank records reflecting that defendant and EA LLP received the settlement funds and defendant then used those funds for his own personal and business purposes.

Defendant's embezzlement of settlement funds from the Super Bowl Clients falls squarely within and is inextricably intertwined with the fraudulent scheme charged in the Indictment, which specifically alleges that defendant with engaging in a scheme to defraud victim-clients to whom defendant had agreed to provide legal services. (Indictment ¶ 6.) Notably, the alleged scheme to defraud was not limited to the specific victim-clients identified in the Indictment. (Indictment ¶ 6.)

Additionally, defendant's embezzlement of settlement funds from the Super Bowl Clients is inextricably intertwined with the Counts Thirty-Three and Thirty-Six of the Indictment, which allege that defendant made false statements regarding EA LLP's receipt of the NFL settlement funds during In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB (C.D. Cal.) (the "2017 EA

---

[1] A detailed analysis of defendant's use of the settlement proceeds is included in Section IV.D.3 of the affidavit of Special Agent Remoun Karlous submitted in support of the application for a search warrant in case number 8:19-MJ-419. (USAO_00134424.)

[2] The government has not yet determined which of the Super Bowl Client it intends to call to testify at trial. The government, however, has already produced reports summarizing interviews with two of the Super Bowl Clients (USAO_00133552 to USAO_00133555), as well as questionnaires numerous other Super Bowl Clients submitted to IRS-CI (USAO_00173639-USAO_00176115).

RE: United States v. Avenatti
February 4, 2020
Page 3

Bankruptcy") in order to conceal the receipt of these funds from his creditors.  (See Indictment ¶¶ 61, 67.)

Finally, such evidence is admissible under Rule 404(b) to demonstrate knowledge, motive, plan, intent, absence of mistake, and lack of accident.

### Defendant's Failure to Pay Over to the IRS Payroll Taxes Withheld from EA LLP Employee's Paychecks

At trial, the government intends to introduce evidence that defendant intentionally failed to pay over to the IRS payroll taxes that had been withheld from EA LLP employees' paychecks, and endeavored to obstruct the IRS collection action relating to the unpaid payroll taxes. Specifically, the government may introduce evidence of the following:

- Between 2011 and the first quarter of 2014, EA LLP paid its federal tax deposits, including trust fund tax payments, to the IRS on a regular basis.  During this time period, EA LLP also filed its IRS Forms 941 each quarter and IRS Forms 940 each year.

- On or about December 28, 2014, EA LLP's payroll processing company, Paychex, discontinued EA LLP's Paychex Taxpay services at defendant's request.  Shortly thereafter, Paychex sent defendant a letter advising him that defendant and EA LLP would be responsible for making timely tax deposits and filing tax returns for EA LLP as of December 28, 2014.

- On or about April 30, 2015, EA LLP filed its IRS Form 941 for the first quarter of 2015. The IRS Form 941 indicated that EA LLP was required to pay to the IRS approximately $194,545 in payroll taxes, including approximately $152,562 in trust fund payments. EA LLP, however, did not make the required payroll tax payments to the IRS.

- On September 26, 2015, the IRS opened a collection case against EA LLP based on a federal tax deposit alert ("FTDA").

- On or about October 8, 2015, an IRS Revenue Officer ("RO") made a field visit to EA LLP's office in Newport Beach, California.  The RO spoke with AVENATTI and told him that the field call was being made because EA LLP had not made its federal tax deposits.  The RO asked AVENATTI if Regnier could attend the meeting because she was the POA on file with IRS for EA LLP and was in the office at that time, but AVENATTI said no.  The RO told AVENATTI that EA LLP last filed a payroll tax return for the first quarter of 2015, but that it had not paid to the IRS the $194,545 in payroll taxes that were due.  The RO also told AVENATTI that EA LLP had not filed its payroll tax return or paid its federal tax deposits for the second quarter of 2015, and that the payroll tax return and federal tax deposits for the third quarter of 2015 were due that same day.  The RO explained that unless there was a reduction in EA LLP's payroll since the first quarter of 2015, EA LLP would likely owe the IRS over $200,000 in payroll taxes for each of these additional quarters as well.  AVENATTI falsely told the RO that he was not aware that the federal tax deposits were not being paid.  When asked who prepared the payroll tax returns and made the federal tax deposits, AVENATTI

RE:  United States v. Avenatti
February 4, 2020
Page 4

- said that Paychex was responsible for the payroll taxes.[3] AVENATTI also said that he was not sure what was going on with the taxes. The RO set a deadline of October 23, 2015, for EA LLP to make the outstanding payroll tax payments. The RO also set deadlines for EA LLP to file its missing IRS Forms 940 and provide certain financial documentation, including bank statements and a balance sheet. Finally, the RO instructed AVENATTI to file any other unfiled tax returns, including his unfiled personal income tax returns for the 2011 to 2014 tax years.

- On October 23, 2015, EA LLP filed its IRS Forms 941 for the second and third quarters of 2015. Both IRS Forms 941 were signed by AVENATTI. Although EA LLP filed these two IRS Forms 941 for the second and third quarters of 2015, EA LLP did not make the required outstanding payroll tax payments nor did it produce the required financial information the RO requested.

- On March 14, 2017, the RO filed IRS Form 6020B substitute returns for the fourth quarter of 2015 and the first, second, third, and fourth quarters of 2016. However, due to the 2017 EA Bankruptcy, the IRS RO's efforts to collect the outstanding payroll taxes largely ceased thereafter.

- In total, at the direction of defendant, EA LLP failed to pay over to the IRS approximately $2,389,005, including trust fund taxes of $1,288,277, non-trust fund taxes of $311,673, penalties of $635,631, and interest of $153,424.

- Defendant repeatedly used the payroll taxes that had been withheld from EA LLP employee's paychecks for his own personal and business purposes.

- In connection with the 2017 EA Bankruptcy, EA LLP agreed to pay the IRS the entire $2,389,005 it owed to the IRS. On March 26, 2018, the IRS received the initial settlement payment of $1,508,422 from a trust account for SulmeyerKupetz, which was the law firm representing Avenatti & Associates, APC ("A&A"), and defendant in the EA Bankruptcy.[4] EA LLP and AVENATTI, however, failed to make the remaining payments to the IRS as scheduled. Defendant still owes the IRS over $1 million in unpaid taxes.

- During all relevant times, defendant was EA LLP's managing partner, owned at least 75% of EA LLP, and had complete control over EA LLP's finances.

The general nature of the evidence the government will seek to admit regarding defendant's failure to pay over to the IRS payroll taxes withheld from EA LLP employee's paychecks includes, but is not limited to, the following: testimony from Judy Regnier; testimony from IRS RO Sabrina Muhammad; testimony from Marjorie Hendricks; documentary evidence obtained from Marjorie Hendricks; documents and records from the IRS; documents and records obtained

---

[3] AVENATTI made a nearly identical statement to IRS RO David Lee when he was contacted about GBUS failure to pay its payroll taxes one year later on October 7, 2016.

[4] As alleged in the indictment, this entire $1,508,422 payment to the IRS was derived from the $4,000,000 defendant embezzled from Client 4 in March 2018. (Indictment ¶ 7(cc)(i).)



RE:  United States v. Avenatti
February 4, 2020
Page 5

from Paychex and other third-parties; and bank records relating to EA LLP and defendant's use of EA LLP funds for his personal and other business purposes.

Evidence of defendant's failure to pay over to the IRS payroll taxes that had been withheld from EA LLP's employees paychecks is inextricably intertwined with the other tax charges contained in the indictment as it is part of the same overall scheme to avoid payment of taxes owed to the IRS and obstruct the IRS's collection actions. It is also inextricably intertwined with the wire fraud charges relating to Client 4 because defendant used money he stole from Client 4 to repay to the IRS a portion of the unpaid payroll taxes during the 2017 EA Bankruptcy. Alternatively, such evidence is admissible under Rule 404(b) as evidence of knowledge, motive, intent, plan, absence of mistake, or lack of accident.

### Failure to Pay State Taxes for Global Baristas US, LLC

The government intends to introduce evidence that beginning as early October 2015 and continuing until at least September 2019 defendant and his company, Global Baristas US LLC ("GBUS") failed to pay to the Washington Department of Revenue and other state taxing authorities taxes that were due and owing, including state payroll taxes. Specifically, just as defendant instructed GBUS employees not to pay over to the IRS the federal payroll taxes withheld from GBUS employees' paychecks, defendant instructed GBUS employees not to make the required state tax payments. Defendant then engaged in extensive efforts to evade the payment of the tax due and owing to the state taxing authorities, both prior to and since the indictment.

The general nature of the evidence the government intends to introduce regarding defendant's failure to pay state taxes is coextensive with the evidence relating to Counts Eleven through Nineteen of the Indictment, which is described in detail in the February 2019 and March 2019 affidavits submitted by Special Agent Karlous, and will include, but is not limited to the testimony of GBUS employees; documents obtained from GBUS employees; documents obtained from the Washington Department of Revenue; and bank records. The evidence regarding defendant's post-indictment efforts to evade collection of these taxes is further described in the government's January 14, 2020, motion to revoke defendant's bond.

Evidence regarding defendant's failure to pay state taxes for GBUS is inextricably intertwined with the other tax charges contained in the indictment as it is part of the same overall scheme to avoid payment of taxes owed to the IRS and to obstruct the IRS's collection actions. Alternatively, such evidence is admissible under Rule 404(b) as evidence of knowledge, motive, intent, plan, absence of mistake, or lack of accident.

### Fraudulent Conduct Relating to the 2017 EA Bankruptcy

The government intends to introduce evidence that defendant engaged in additional fraudulent conduct in connection with the 2017 EA Bankruptcy. Specifically, the government intends to introduce evidence of the following:

**REDACTED**

- In or around February and March 2017, defendant personally arranged for _____ to file an involuntary bankruptcy petition against EA LLP. Defendant did so for the specific purpose of delaying and obstructing litigation involving Jason Frank Law, PLC

RE: <u>United States v. Avenatti</u>
February 4, 2020
Page 6

("JFL"), including depositions of defendant, REDACTED REDACTED were scheduled to take place in early-March 2017. Among other things, defendant had REDACTED ly to Florida to assist REDACTTED bankruptcy petition and to provide REDACTED inds necessary to file the petition.

- Between May 2017 and February 2018, defendant made false statements on documents submitted in connection with the 2017 EA Bankruptcy and concealed and failed to disclose information regarding EA LLP's assets, disbursements, and bank accounts in connection with the 2017 EA Bankruptcy, including on Monthly Operating Reports.

- On or about June 12, 2017, and July 14, 2017, defendant testified under oath during Section 341(a) debtor's examinations in connection with the 2017 EA Bankruptcy. During the Section 314(a) debtor's examinations, defendant made numerous false and fraudulent statements and concealed and failed to disclose material facts.

- In or around December 2017, defendant entered into settlement agreement with JFL relating to the 2017 EA Bankruptcy. Although the settlement agreement was purportedly signed by defendant's former partner, REDACTED ant knew that REDACTED the settlement agreement and that the signature was a forgery. When defendant was subsequently asked whether REDACTED settlement agreement during a judgment debtor examination in July 2018, defendant lied and said "it appears so" even though defendant knew that REDACTED e settlement agreement was a forgery.[5]

- On or about May 27, 2018, defendant flew to Florida to meet with REDACTED meeting, defendant arranged for REDACTTED n regarding the EA LLP involuntary bankruptcy petition, which falsely stated the following: "At no time prior to the filing of the bankruptcy case against [EA LLP] did anyone associated with the firm ask me to file the case nor did I coordinate the filing with anyone associated with the firm. To be clear, no attorney employed by or associated with the firm, including Mr. Michael Avenatti, ever asked me to file the case." The false declaration was backdated to make it appear as if it had been executed in July 2017. Defendant paid REDACTED approximately $800 to $1,000 to sign the false declaration. Defendant then emailed a copy of the false and fraudulent declaration to a reporter with the <u>Los Angeles Times</u> on May 29, 2018. Additionally, on or about July 9, 2018, a copy of the false declaration was attached as an exhibit to a motion for a protective order EA LLP filed in connection with the 2017 EA Bankruptcy.

The general nature of the evidence the government will seek to introduce regarding this conduct is largely coextensive with the evidence to be introduced in connection with the evidence relating to Counts Thirty-Three to Thirty-Six of the Indictment and includes, but is not limited to, testimony of REDACTED imony of REDACTTED REDACTED REDACTTED

---

[5] Defendant REDACTED lement agreement was a forgery during a recorded conversation between defendant and REDACTED or about October 22, 2018. (USAO_00173618.)

6

testimony of REDACTTED, evidence produced by REDACTED REDACTTED and other third-parties, and bank records.

The conduct described above is inextricably intertwined with Counts Thirty-Three to Thirty-Six of the indictment, which charge defendant with false declarations and false statements in connection with bankruptcy proceedings. Among other things, such conduct is part of the same overall scheme to defraud EA LLP's creditors and others in connection with 2017 EA Bankruptcy and is direct evidence of defendant's fraudulent intent, motive, and plan. Such evidence is also inextricably intertwined with the tax charges relating to defendant, EA LLP, and A&A, as well as the wire fraud charges since much of the fraudulent conduct described above was committed in an effort to conceal defendant's theft of funds from the victim-clients identified in the indictment and the Super Bowl Client. Alternatively, such evidence, is admissible under Rule 404(b) to prove motive, intent, preparation, plan, knowledge, absence of mistake, and lack of accident.

**Perjury During Judgment Debtor Examinations**

The government intends to introduce evidence that defendant repeatedly committed perjury and made material false statements during judgment debtor examinations in both state and federal court. Specifically, defendant committed perjury and made material false statements during the following judgment debtor examinations:

- July 25, 2018, judgment debtor examination conducted in the 2017 EA Bankruptcy, In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB (C.D. Cal.).

- January 30, 2019, judgment debtor examination conducted in Michael Avenatti v. Lisa Storie Avenatti, Orange County Superior Court, Case No. 17D00-99-30.

- March 15, 2019, judgment debtor examination conducted in Jason Frank Law, PLC v. Michael J. Avenatti, Los Angeles Superior Court, Case No. BC706555.

- March 22, 2019, judgment debtor examination conducted in In re Eagan Avenatti, LLP, No. 8:18-CV-1644-VAP (KES) (C.D. Cal.)

- October 18, 2019, judgment debtor examination conducted in Jason Frank Law, PLC v. Michael J. Avenatti, Los Angeles Superior Court, Case No. BC706555.

- October 29, 2019, judgment debtor examination conducted in Parrish v. Avenatti, Santa Barbara, Superior Court Case No. 18CV04106.

Many of the specific false statements defendant made during these judgment debtor examinations are set forth in the government's January 14, 2020, motion to revoke defendant's bond. In addition to those false statements, the government intends to prove that defendant made false statements directly relating to his theft of funds from the wire fraud victims identified in the indictment, as well as the Super Bowl Clients.

The general nature of the evidence the government will introduce to prove that defendant committed perjury during these judgment debtor examinations is largely coextensive with the evidence relating to the other charges contained in the indictment.

Evidence that defendant committed perjury during these judgment debtor examinations is inextricably intertwined with the charges in the indictment because defendant's false statements are direct proof of his intent to defraud and extensive efforts to conceal his criminal conduct.

RE: United States v. Avenatti
February 4, 2020
Page 8

Alternatively, such evidence is admissible under Rule 404(b) as proof of motive, intent, preparation, plan, knowledge, absence of mistake, and lack of accident.

**Defendant's Ongoing Efforts to Defraud and Conceal His Assets from His Creditors**

The government may seek to introduce at trial that defendant engaged in an ongoing scheme to defraud his creditors and conceal his assets between March 2019 and at least September 2019. A detailed description of defendant's ongoing criminal conduct and the general nature of the evidence the government would seek to introduce at trial is contained in the government's January 14, 2020, motion to revoke defendant's bond.

Evidence of defendant's ongoing fraudulent conduct is inextricably intertwined with the tax charges and bankruptcy charges contained in the indictment as it is part of the same overall fraudulent schemes. Indeed, as noted in the government's motion, defendant's ongoing conduct is directly related to and a continuation of the criminal conduct alleged in the indictment.

Alternatively, evidence of defendant's ongoing scheme to defraud his creditors is admissible under Rule 404(b) as proof of motive, intent, preparation, plan, absence of mistake, and lack of accident.

**Criminal Conduct Charged in SDNY**

If prior to the trial in this case, defendant is convicted in the Southern District of New York in United States v. Avenatti, No. 1:19-CR-373, and/or United States v. Avenatti, No. 1:19-CR-374-DAB, the government may seek to introduce evidence of these convictions pursuant to Rules 404(b), 608, or 609.

**Embezzlement of Funds from Other Legal Clients**

The government may seek to introduce evidence that defendant embezzled funds or otherwise [attempted to defraud] additional legal clients, including [REDACTED], [REDACTED], [REDACTED], Ryan Hendrix. Such evidence falls squarely within the fraudulent scheme charged in the Indictment, and is inextricably intertwined with the wire fraud, tax, and bankruptcy fraud charges identified in the Indictment. Alternatively, such evidence would be admissible under Rule 404(b) as proof of knowledge, motive, plan, intent, absence of mistake, and lack of accident.

* * *

Please note that further details regarding the conduct and evidence described above has already produced to defendant in this case. As the motions deadline in this case is March 9, 2020, please let us know by February 24, 2020, whether defendant objects to the admission of any of the evidence described above and the basis of any such objection.

Very truly yours,

*Julian André*

JULIAN L. ANDRÉ
BRETT A. SAGEL
Assistant United States Attorneys