NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-6683
        Facsimile: (213) 894-6269
        Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
        Ronald Reagan Federal Building
        411 West Fourth Street, Suite 8000
        Santa Ana, California 92701
        Telephone:  (714) 338-3598
        Facsimile:  (714) 338-3708
        Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                  UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          No. SA CR 19-061-JVS

            Plaintiff,             OPPOSITION TO DEFENDANT'S MOTION
                                   TO SEVER COUNTS 1-10 FROM COUNTS
                 v.                11-36; EXHIBIT

MICHAEL JOHN AVENATTI,             Hearing Date: October 19, 2020
                                   Hearing Time: 9:00 a.m.
            Defendant.             Location:     Courtroom of the
                                                 Hon. James V. Selna

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Brett A. Sagel and

Julian L. André, hereby files its Opposition to Defendant MICHAEL

JOHN AVENATTI's Motion to Sever Counts 1-10 from Counts 11-36. (CR

265).

1    This Opposition is based upon the attached memorandum of points

2 and authorities and exhibit, the files and records in this case, and

3 such further evidence and argument as the Court may permit.

4    Dated: September 28, 2020          Respectfully submitted,

5                                       NICOLA T. HANNA
                                        United States Attorney
6
                                        BRANDON D. FOX
7                                       Assistant United States Attorney
                                        Chief, Criminal Division
8

9                                             /s/
                                        _____
10                                      BRETT A. SAGEL
                                        JULIAN L. ANDRÉ
11                                      Assistant United States Attorneys

12                                      Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**<u>TABLE OF CONTENTS</u>**

<u>DESCRIPTION</u>                                                                                          <u>PAGE</u>

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   INTRODUCTION...................................................1

II.  STATEMENT OF FACTS.............................................3

III. ARGUMENT.....................................................11

     A.   Joinder Of All Counts Is Proper Under Rule 8(a).........11

     B.   Severance is Not Warranted Pursuant to Rule 14..........20

     C.   The Government's Proposed Severance.....................23

IV.  CONCLUSION...................................................25

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**Federal Cases**

Davis v. Woodford,
  384 F.3d 628 (9th Cir. 2004) ....................................... 20

Hayes v. Ayers,
  632 F.3d 500 (9th Cir. 2011) ....................................... 21

Huddleston v. United States,
  485 U.S. 681 (1988) ................................................ 22

In re: Eagan Avenatti LLP,
  No. 8:17-bk-11961-CB (C.D. Cal.) ................................. 5, 6

United States v. Anderson,
  642 F.2d 281 (9th Cir. 1981) ....................................... 18

United States v. Armstrong,
  621 F.2d 951 (9th Cir. 1980) ....................................... 11

United States v. Bradshaw,
  690 F.2d 704 (9th Cir. 1982) ....................................... 21

United States v. Curtin,
  489 F.3d 935 (9th Cir. 2007) ....................................... 22

United States v. Decoud,
  456 F.3d 996 (9th Cir. 2006) ....................................... 20

United States v. Dorsey,
  No. CR 14-328-CAS,
  2015 WL 847395 (C.D. Cal. Feb. 23, 2015) .......................... 21

United States v. Gay,
  567 F.2d 916 (9th Cir. 1978) ....................................... 24

United States v. Jawara,
  474 F.3d 565 (9th Cir. 2007) ........................... 11, 12, 18, 19

United States v. Johnson,
  820 F.2d 1065 (9th Cir. 1987) ................................. 11, 22

United States v. Lane,
  474 U.S. 438 (1986) ................................................ 11

United States v. Lewis,
  787 F.2d 1318 (9th Cir. 1986) ...................................... 20

United States v. Lopez,
  477 F.3d 1110 (9th Cir. 2007) ...................................... 21

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

United States v. Midkiff,
  614 F.3d 431 (8th Cir. 2010) ................................. 19, 22

United States v. Prigge,
  830 F.3d 1094 (9th Cir. 2016) ................................... 22

United States v. Randazzo,
  80 F.3d 623 (1st Cir. 1996) ..................................... 18

United States v. Reichel,
  911 F.3d 910 (8th Cir. 2018) .................................... 19

United States v. Terry,
  911 F.2d 272 (9th Cir. 1990) .................................... 18

United States v. Whitworth,
  856 F.2d 1268 (9th Cir. 1988) ........................... 18, 19, 20

Zafiro v. United States,
  506 U.S. 534 (1993) ............................................. 21

**Federal Statutes**

18 U.S.C. § 1028A(a)(1).............................................. 3

18 U.S.C. § 1343.................................................... 3

18 U.S.C. § 1344(1)................................................. 3

18 U.S.C. § 152(2).................................................. 3

18 U.S.C. § 152(3).................................................. 3

26 U.S.C. § 7202.................................................... 3

26 U.S.C. § 7203.................................................... 3

26 U.S.C. § 7212(a)................................................. 3

**Federal Rules**

Fed. R. Crim. P. 14.......................................... passim

Fed. R. Crim. P. 8........................................... passim

Fed. R. Evid. 404(b)............................................... 22

**Miscellaneous**

Ninth Cir. Crim. Jury Instr. 3.11................................. 21

iii

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3      With scant to no legal or factual justification, defendant

4 MICHAEL JOHN AVENATTI ("defendant") asks this Court, pursuant to

5 Federal Rules of Criminal Procedure 8 and 14, to sever the wire fraud

6 counts alleging defendant embezzled settlement proceeds from his

7 clients charged in Counts 1-10 of the Indictment from Counts 11-36 of

8 the Indictment, which include: tax fraud charges relating to

9 defendant individually and to his companies (Counts 11-29); bank

10 fraud charges and aggravated identity theft (Counts 30-32); and

11 bankruptcy fraud charges (Counts 33-36).  Defendant's motion is

12 without merit.

13      The tax counts, bank fraud counts, and bankruptcy fraud counts

14 are properly joined with the wire fraud counts because the charges

15 are of the same or similar character and/or connected with or

16 constitute parts of a common scheme or plan pursuant to Rule 8(a).

17 The Indictment alleges that defendant engaged in an extensive pattern

18 of interconnected financial frauds for the better part of a decade,

19 including, but not limited to, making false and fraudulent statements

20 to obtain money, misrepresenting and concealing his receipt of money,

21 and misappropriating money to which he was not entitled.  Numerous

22 counts of the Indictment grow out of related transactions, are

23 logically related, and have overlapping proof and temporal

24 connection.  Moreover, all of the counts in the Indictment have

25 substantial evidentiary overlap and the evidence of each of the types

26 of fraud would be admissible at a severed trial.  Furthermore, the

27 evidence related to each count of the Indictment establishes

28 defendant's modus operandi, namely defendant's scheme to obtain and

1    fail to turn over money through fraud to fund his extravagant

2    lifestyle.   Given these circumstances, under established Ninth

3    Circuit law, the charges are properly joined under Rule 8(a).

4    Finally, under Rule 14, defendant has not met his burden of

5    establishing manifest prejudice from joinder of all of the counts

6    that would outweigh the dominant concern for judicial economy that

7    inheres in trying the entire Indictment together at the same trial.

8         Although neither Rule 8(a) nor Rule 14 provide defendant a basis

9    for severance in this case, and such a severance would be inefficient

10   under ordinary circumstances, the government recognizes that these

11   are not ordinary times.   Thus, the government would agree that this

12   Court, in its discretion, can sever counts of the Indictment under

13   certain conditions.   Specifically, in the interests of justice and

14   under this Court's inherent right and duty to manage its calendar,

15   the government would agree to a severance of Counts 1-10 (the wire

16   fraud counts) along with Counts 33-36 (the bankruptcy fraud counts)

17   from the remaining counts of the Indictment as long as the trial in

18   this matter starts on December 8, 2020, as currently scheduled, or no

19   later than January 26, 2021.   The wire fraud and bankruptcy fraud

20   counts have a substantial overlap of evidence and witnesses, and

21   trying them together is necessary to tell a coherent and

22   comprehensible story of defendant's criminal conduct, while

23   appreciating the goal of limiting the length of a trial at a time

24   when the Court's operations may still be impacted by the COVID-19

25   pandemic.[1]

26

27        [1] The government made this offer to sever the trial in this
     manner on September 1, 2020, which defendant rejected the following
28   day.  (See CR 293, Exs. 1-2.)  Despite the government's offer, on

                                    2

## II.   STATEMENT OF FACTS

Defendant MICHAEL JOHN AVENATTI ("defendant") is charged in a detailed 36-count Indictment with embezzling millions of dollars from his legal clients (ten counts of wire fraud, in violation of 18 U.S.C. § 1343); failing to pay over to the Internal Revenue Service ("IRS") millions in withheld payroll taxes (eight counts of willful failure to pay over withheld taxes, in violation of 26 U.S.C. § 7202); obstructing the IRS's efforts to collect the unpaid payroll taxes (one count of endeavoring to obstruct the administration of the Internal Revenue Code, in violation of 26 U.S.C. § 7212(a)); failing to file tax returns for himself and his law firms (ten counts of willful failure to file tax return, in violation of 26 U.S.C. § 7203); committing bank fraud and identity theft (two counts of bank fraud, in violation of 18 U.S.C. § 1344(1), and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1)); and making false and fraudulent statements during bankruptcy proceedings (three counts of false declaration in bankruptcy, in violation of 18 U.S.C. § 152(3), and one count of false testimony under oath in bankruptcy, in violation of 18 U.S.C. § 152(2)).  (CR 16 (the "Indictment").)[2]  The various counts of the Indictment re-allege and incorporate by reference the allegations contained in

_____

September 13, 2020, in his motion to continue the motions deadline in this case, defendant claimed the government "remains steadfast that all 36 counts must be tried together."  (CR 274 at 4.)

[2] Defendant's severance motion only seeks to sever counts 1-10 from counts 11-36, and to try counts 1-10 first.  (Mot. at 2.) Defendant concedes that the various charges in counts 11 through 36 were properly joined, either directly (Mot. 4-5) or by failing to challenge them.  As a result, the government will focus its analysis and arguments to the relationship between the various charges in Counts 11-36 with the wire fraud charges in Counts 1-10 (and not between the charges within Counts 11-36).

3

1    prior counts of the Indictment.  (See Indictment, ¶¶ 9, 19, 27, 32,
2    37, 42, 48, 50, 62, 64, 66.)

3         Counts 1-10 of the Indictment allege that from in or about
4    January 2015 to March 2019, defendant knowingly and with the intent
5    to defraud, executed a scheme to defraud his victim-clients and
6    obtain money from his victim-clients by making false and fraudulent
7    statements and concealing material facts that defendant had a duty to
8    disclose.  (Id. ¶ 6.)  Defendant would carry out his scheme by
9    negotiating a settlement on behalf of his victim-clients that would
10   require the payment of funds to the victim-client, and defendant
11   would provide false and fraudulent information to the victim-clients
12   about the true terms of the settlement or the disposition of the
13   settlement proceeds.  Defendant would receive the settlement proceeds
14   into one of his trust accounts, would embezzle and misappropriate the
15   settlement proceeds, and then would lull his victim-clients, by
16   making false statements, from discovering defendant's embezzlement
17   and misappropriation of their funds.  (Id. ¶ 7.a-e.)  Defendant's
18   scheme to defraud victim-clients included, among others, the five
19   specifically identified victim-clients from whom defendant embezzled
20   funds.  (Id. ¶ 6, 7.f-gg.)

21        The Indictment alleges that defendant embezzled Client 1's
22   portion of his $4,000,000 settlement proceeds in January 2015,
23   including by transferring substantial amounts of Client 1's money out
24   of an Eagan Avenatti LLP ("EA LLP") trust account through various
25   entities defendant controlled, including but not limited to Global
26   Baristas United States ("GBUS") and Avenatti & Associates ("A&A"), to
27   pay, in part, defendant's personal expenses.  (Id. ¶ 7.f-i.)  In
28   order to lull Client 1 and prevent Client 1 from discovering

                                    4

defendant's embezzlement of Client 1's portion of his settlement, defendant made lulling payments of approximately $1,000 to $1,900 to Client 1 from July 2015 through March 2019, and falsely represented that these payments were "advances" on a future settlement payment. (Id. ¶ 7.j.i.)  In addition, defendant falsely denied embezzling Client 1's money at a judgment-debtor examination in federal court on March 22, 2019 (id. ¶ 7.k.) -- an examination that derived from In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB (C.D. Cal.) (the "2017 EA Bankruptcy").  The bankruptcy fraud charges in Counts 33-36 of the Indictment relate to the same 2017 EA Bankruptcy.

The Indictment further alleges that defendant embezzled Client 2's portion of her $2,750,000 settlement proceeds in January 2017, including by transferring substantial amounts of Client 2's money through various entities defendant controlled, including but not limited to A&A, to pay, in part, for a private plane for defendant and for defendant's personal expenses.  (Id. ¶ 7.m-p.)  In order to lull Client 2 and prevent Client 2 from discovering defendant's embezzlement of Client 2's portion of her settlement, defendant made lulling payments to Client 2 from March 2017 through June 2018, and falsely represented that these payments were monthly settlement payments.  (Id. ¶ 7.q.)

The Indictment next alleges that defendant embezzled Client 3's portion of his $1,600,000 settlement proceeds in January 2018, including by transferring substantial amounts of Client 3's money through various entities defendant controlled, including but not limited to A&A and GBUS, to pay, in part, for GBUS's expenses and defendant's personal expenses.  (Id. ¶ 7.r-w.)  Defendant caused Client 3's $1,600,000 settlement money to be deposited in January

2018 into a bank account defendant had just opened up in his own name, as opposed to the EA LLP Debtor-in-Possession ("DIP") bank account as required by the 2017 EA Bankruptcy.  (Id. ¶ 7.v.)  Defendant's receipt and deposit of Client 3's settlement money, particularly the concealment of it, make up, in part, the allegations in the bankruptcy fraud charge in Count 35 of the Indictment.  (Id. ¶ 64-65.)

The Indictment also alleges in March 2018 defendant embezzled $4,000,000 of Client 4's portion of her $35,625,228 stock repurchase proceeds, including by transferring substantial amounts of Client 4's money through various entities defendant controlled, including but not limited to A&A and GBUS.  (Id. ¶ 7.y-cc.)  Defendant further caused approximately $2,828,423 to be transferred from an EA LLP trust account to the trust account of defendant's personal bankruptcy counsel to pay, in part, some of EA LLP's creditors in the bankruptcy, including the IRS, as part of defendant's agreement to have the 2017 EA Bankruptcy dismissed.  (Id.)  Moreover, defendant deposited the initial approximately $27,478,940 of Client 4 and Client 5's money in September 2017 into a bank account defendant had just opened up in his own name, as opposed to the EA LLP DIP bank account as required by the 2017 EA Bankruptcy.  (Id. ¶ 7.y.)  Defendant's receipt and deposit of Client 4 and Client 5's money, particularly the concealment of it, make up, in part, the allegations in the bankruptcy fraud charge in Count 34 of the Indictment.  (Id. ¶ 62-63.)[3]

---

[3] In addition to the five specifically identified victims in the wire fraud counts, the government has moved to admit evidence related to defendant's embezzling a portion of a $1.55 million settlement

1    The specific wires related to Counts 1 and 2 of the Indictment

2 allege transfers defendant caused from Client 1's settlement proceeds

3 to bank accounts defendant held and controlled for GBUS and A&A.

4 (Id. ¶ 8.)  Count 4 alleges a wire transfer on or about January 5,

5 2018, of Client 3's settlement proceeds into a bank account defendant

6 had just opened (id.), which relates to the allegations in Count 35

7 (id. ¶ 64-65).  And the specific wires related to Counts 6 and 7 of

8 the Indictment allege transfers defendant caused from money he

9 embezzled from Client 4's settlement that defendant used to pay his

10 creditors to get the 2017 EA Bankruptcy dismissed.  (Id. ¶ 8.)

11    Counts 11-18 of the Indictment allege defendant's willful

12 failure to pay over withheld payroll taxes to the IRS for the coffee

13 company defendant purchased using funds from EA LLP, and owned and

14 operated through entities defendant controlled, including GBUS.  (Id.

15 ¶ 9-18.)  Between in or about September 2015 and December 2017,

16 defendant used funds from GBUS bank accounts to make substantial

17 payments for defendant's benefit or the benefit of other entities

18 defendant controlled, including EA LLP and A&A, while at the same

19 time failing to pay over to the IRS payroll taxes withheld from GBUS

20 employees' paychecks.  (Id. ¶ 12.)  Moreover, during the time

21 defendant failed to pay over to the IRS payroll taxes withheld from

22 GBUS employees' paychecks, defendant caused payments from GBUS funds

23 to be made to Client 1 and Client 2 in order to lull Client 1 and

24

25

26 payment meant to benefit clients (the "Super Bowl Clients") he
 represented in connection with litigation against the National
27 Football League ("NFL").  (CR 284.)  As will be discussed below,
 defendant's receipt and concealment thereof of the Super Bowl
28 Clients' settlement money make up, in part, the allegations of the
 bankruptcy fraud charges in Counts 33 and 36 of the Indictment.

Client 2 and prevent them from discovering the allegations contained in the wire fraud counts.  (Id. ¶ 12.c-d.)

Count 19 of the Indictment alleges defendant attempted to obstruct and impede the due administration of the internal revenue laws and preventing the IRS from collecting taxes due and owing from GBUS.  (Id. ¶¶ 19-26.)  Defendant's obstruction of the IRS, particularly to avoid the IRS's collection action against defendant and GBUS, included, among other ways, defendant: making false statements to an IRS revenue officer; changing bank accounts for deposits to be made; changing names on documents; causing funds to be transferred to bank accounts related to other entities defendant controlled, including EA LLP and A&A.  (Id. ¶ 26.)  Moreover, in January and February 2018, during the time defendant was obstructing the IRS's efforts to collect GBUS's outstanding payroll taxes, defendant caused payments to be made from GBUS funds to Client 1 and Client 2 in order to lull Client 1 and Client 2 and prevent them from discovering the allegations contained in the wire fraud counts.  (Id. ¶ 26.f.ii-iii.)[4]

Counts 20-29 allege defendant willfully failed to file tax returns for himself individually for the 2014 through 2017 tax years (Counts 20-23), for EA LLP for the 2015 through 2017 tax years (Counts 24-26), and for A&A for the 2015 through 2017 tax years (Counts 27-29).  (Id. ¶¶ 27-41.)  These charges relating to defendant, EA LLP, and A&A include the 2015 and 2017 years in which

---

[4] The Court can also note from the Indictment, and the government will provide further evidence during trial, that defendant made lulling payments to Client 1 and Client 2 from non-EA LLP bank accounts from March 2017 through May 2018, during the pendency of the 2017 EA Bankruptcy, to further prevent anyone from discovering defendant's embezzlement of Client 1 and Client 2's money.

defendant, EA LLP, and A&A received income from settlement proceeds related to Client 1, Client 2, Client 4, and Client 5, as alleged in the wire fraud counts.  (Id. ¶¶ 7.h-i., 7.o-p, 7.y., Counts 21, 23, 24, 26, 27, 29.)  These charges also include allegations that although defendant filed 2009 and 2010 individual tax returns (Form 1040) for himself, he failed to pay the taxes due for those returns, and defendant did not file any individual tax returns after he filed the 2010 Form 1040 in 2011 and did not file tax returns for EA LLP and A&A after the 2012 and 2010 tax years, respectively.  (Id. ¶¶ 28-30, 35, 40.)

Counts 30-32 allege from January 2014 through April 2016, defendant committed bank fraud and aggravated identity theft in relation to obtaining bank loans, including two loans for EA LLP in March and December 2014, from The Peoples Bank in Biloxi, Mississippi.  (Id. ¶¶ 42-49.)  Defendant obtained the bank loans by making materially false statements and concealing material facts, including, but not limited to, providing false balance sheets and financial statements for himself and EA LLP, and submitting tax returns defendant knew he had not filed and had not paid the taxes claimed to have been paid on the tax returns.  (Id. ¶ 46.)  To secure the December 2014 bank loan for EA LLP, defendant agreed to repay the loan with proceeds from other pending cases.  (Id. ¶ 46.l.)[5]

---

[5] In order to secure the December 2014 loan for EA LLP, on November 12, 2014, defendant provided a chart of estimated contingency fees EA LLP expected to receive in 2015, which included the exact "expected" recovery of $4 million for Client 1 and also listed Client 3's case.  (Exhibit 1.)  This document related to the bank fraud is relevant to prove both defendant's expected recovery of Client 1's funds and that proceeds from Client 3's case belonged to EA LLP, which defendant failed to disclose in bankruptcy, as charged in Count 35 of the Indictment.

Defendant received funds from those cases in March 2015, but defendant concealed and did not disclose his receipt of those funds and failed to repay the loan to The Peoples Bank at that time as defendant had agreed.  (Id.)[6]  Count 32 alleges that defendant committed aggravated identity theft in relation to the bank fraud charge in Count 31, specifically that defendant used the identification of his former accountant without lawful authority in seeking to obtain the December 2014 loan from The Peoples Bank.  (Id. ¶ 49.)

Counts 33-36 allege various false statements and false testimony defendant provided during the pendency of the 2017 EA Bankruptcy from March 2017 through at least February 2018.  (Id. ¶¶ 50-67.)  The Indictment alleges, among other things: defendant failed to report in the EA LLP bankruptcy revenue from cases, including from settlements related to the wire fraud victim-clients; hid receipts and deposits into bank accounts he was not supposed to open; and did not disclose payments to himself as an insider.  (Id.)  Specifically, Counts 33 and 36 relate, in part, to defendant's false statements about his receipt of settlement money related to the Super Bowl Clients (id. ¶¶ 61, 66-67), settlement money defendant embezzled as part of the charged wire fraud counts (CR 284).  Moreover, Counts 34 and 35 relate, in part, to defendant's false statements about his receipt of money and the bank accounts into which the funds were deposited involving Clients 4 and 5 and Client 3 from the wire fraud counts, respectively.  (Id. ¶¶ 62-65.)

---

[6] Defendant failed to pay off the loan when it matured in 2015, but eventually paid it off in or about April 2016.

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III. ARGUMENT**

    **A.    Joinder Of All Counts Is Proper Under Rule 8(a)**

    Defendant argues that Counts 1-10 and Counts 11-36 are erroneously joined in violation of Rule 8 because "looking at the face of the allegations in the Indictment," defendant claims Counts 1-10 and Counts 11-36 are "seemingly unrelated" and have no "logical relationship" between them.  (Mot. 3-5.)  Defendant's motion literally ignores the detailed allegations against him in the Indictment, and simply makes conclusory statements without support to claim improper joinder.  Defendant's motion is wholly without merit.

    Rule 8(a) permits joinder if the offenses charged are: (1) "of the same or similar character;" (2) "based on the same act or transaction;" or (3) "connected with or constitut[ing] parts of a common scheme or plan."  Fed. R. Crim. Proc. 8(a); United States v. Jawara, 474 F.3d 565, 572 (9th Cir. 2007).  Joinder of charges "is the rule rather than the exception."  United States v. Armstrong, 621 F.2d 951, 954 (9th Cir. 1980).  Courts have broadly construed Rule 8 in favor of joinder because joint trials conserve government funds, minimize inconvenience to witnesses and public authorities, and avoid delays in bringing a defendant to trial.  Jawara, 474 F.3d at 572-73; see also United States v. Lane, 474 U.S. 438, 449 (1986).  Joint trials are particularly appropriate where separate trials would feature overlapping evidence, or where evidence of conduct charged in one case would be admissible in the other case, and vice-versa.  See United States v. Johnson, 820 F.2d 1065, 1070-71 (9th Cir. 1987).

    The government properly charged the counts in the Indictment together under Rule 8(a) because they were part "of the same or

similar character" and of a "common scheme or plan."[7]  The "similar character of the joined offenses should be ascertainable -- either readily apparent or reasonably inferred -- from the face of the indictment."  <u>Jawara</u>, 474 F.3d at 578.

In determining whether counts are properly joined under the "same or similar character" prong of Rule 8(a), the Court should "consider factors such as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims . . . ."  <u>Id.</u>  The factors the Ninth Circuit has enumerated establish that all of the counts of the Indictment against defendant were properly joined under Rule 8(a) as same or similar character.

Defendant's criminal conduct, as alleged in various counts of the Indictment, demonstrates defendant's extensive pattern of interconnected financial frauds in which defendant knowingly and willfully committed his criminal conduct to obtain and/or keep money that did not belong to him to pay for his extravagant lifestyle and to cover his other criminal activity over several years.  Viewing the alleged criminal conduct chronologically demonstrates defendant's ongoing modus operandi to obtain and spend money regardless of the legality as well as the interconnected and overlapping frauds, often-times undertaken by defendant to conceal his contemporaneous or prior frauds.

---

[7] Some of the counts in the Indictment also are properly joined under the "same act or transaction" prong, however, the government will focus its response on the other two prongs of Rule 8(a).

From as early as 2009 and 2010, defendant filed his individual tax returns, but failed to pay the approximately $850,000 in taxes due and owing to the IRS, and never filed individual tax returns thereafter. (Indictment, ¶¶ 28-30.) Defendant similarly stopped filing tax returns for EA LLP and A&A after the 2012 and 2010 tax years, respectively. (Id. ¶¶ 35, 40.) When defendant ceased filing personal, partnership, and corporate tax returns, defendant no longer reported or paid the taxes due to the IRS.

In January, March, and December 2014, defendant obtained over $4 million in loans from The Peoples Bank by providing materially false and fraudulent statements and information related to, among other things, his and his businesses' finances and tax returns. (Id. ¶¶ 45-46.) About one month after fraudulently securing the third loan for EA LLP (Count 31), based in part on acknowledging the firm would be receiving approximately $1.8 million dollars in fees from the $4 million judgment in Client 1's case (Ex. 1), defendant obtained and embezzled the full $4 million settlement for Client 1 (Counts 1, 2, 10). (Indictment, ¶ 7.f-l.) By July 6, 2015, defendant had "drained all of [Client 1's] settlement proceeds out of [the] EA Trust Account." (Id. ¶ 7.i.)

Beginning in September 2015 and continuing until December 2017, defendant stopped paying over payroll taxes withheld from GBUS employees' paychecks to the IRS (Counts 11-18), but instead used GBUS's funds, among other things, to pay personal expenses and to make lulling payments to Client 1 and Client 2 in the wire fraud counts. (Id. ¶ 12.) When the IRS attempted to collect the outstanding payroll taxes due and owing from defendant and GBUS (Count 19), defendant corruptly obstructed and impeded the IRS's

13

1  efforts by, among other ways, making false statements, directing

2  deposits into newly opened bank accounts, and providing false names

3  and information to conceal his receipt of money.  (Id. ¶¶ 25-26.)

4      The allegations in the wire fraud counts similarly allege that

5  defendant's scheme to defraud included, making false statements,

6  directing deposits into newly opened bank accounts, and providing

7  false information -- regarding the settlement agreement and terms --

8  to conceal defendant's receipt of the money.  (Id. ¶ 7.i.)  In

9  addition, just like the allegations in Counts 11-18, Count 19

10 specifically describes defendant's use of funds he was concealing

11 from the IRS to make lulling payments to Client 1 and Client 2 in the

12 wire fraud counts.  (Id. ¶ 26.f.)

13     Moreover, in January 2017, defendant embezzled Client 2's

14 $2.75 million settlement to purchase a private airplane for

15 defendant's use and used the remaining money for other expenses for

16 defendant and his businesses.  (Id. ¶ 7.o-p.)  In March 2017,

17 defendant caused EA LLP to enter into Chapter 11 bankruptcy, and

18 defendant certified, among other things, that he would: close all EA

19 LLP bank accounts and only have EA LLP DIP accounts (for operating,

20 payroll, and taxes); deposit all business revenues into the EA LLP

21 DIP operating account, and not make payments to himself, as an

22 insider, without proper approvals.  (Id. ¶¶ 54-60.)  The specific

23 bankruptcy fraud counts allege, in part, that defendant knowingly and

24 fraudulently made materially false statements under oath relating to

25 defendant's receipt -- and concealment -- of settlement proceeds from

26 the Super Bowl Clients (Counts 33 and 36), Client 4 and Client 5

27 (Count 34), and Client 3 (Count 35).  The wire fraud counts allege

28

14

defendant embezzled these same funds that defendant concealed during the 2017 EA Bankruptcy.[8]

In addition, the allegations in the bankruptcy fraud charges, and further detailed in the government's other acts motion <u>in limine</u>, include that defendant filed the 2017 EA Bankruptcy to avoid his deposition in an arbitration with J.F. (Indictment, ¶¶ 51-54; CR 284 at 24-25.) In order to get the 2017 EA Bankruptcy dismissed, defendant embezzled $4 million from Client 4, in part, to pay the IRS (Indictment, ¶ 7.cc.i.), and also entered into a settlement agreement with J.F., when defendant knew the signature of his law partner on the settlement agreement was forged. (CR 284 at 26.) After defendant defaulted on his payments to J.F. pursuant to the settlement agreement to dismiss the 2017 EA Bankruptcy, J.F. examined defendant pursuant to a federal judgment debtor examination on March 22, 2019, in which defendant was asked about whether he embezzled Client 1's settlement money, to which defendant lied. (Indictment, ¶ 7.k.; CR 284 at 31-32.) Soon after defendant's March 22, 2019, federal Judgment Debtor examination, defendant met with both Client 1 and Client 2 and made further false statements in order to lull Client 1 and Client 2. (Indictment, ¶¶ 7.k-l., 7.q.iii.)

The face of the Indictment, both "readily apparent" and "reasonably inferred," <u>Jawara</u>, 474 F.3d at 578, easily demonstrates the similar character of the counts of the Indictment. First, the evidentiary overlap between the counts of the Indictment is significant. Many of the witnesses the government will need to call

---

[8] As detailed in the government's other acts motion <u>in limine</u>, in May 2017, defendant embezzled most of the $1.31 million dollars he and his law firm received as part of the NFL litigation. (CR 284 at 13-14.)

for the wire fraud counts, would also testify at a trial on the
remaining counts of the Indictment.  EA Employee 1, defendant's
former office manager would testify regarding basically all counts of
the Indictment, and each of the wire fraud victims would likely be
needed to testify regarding elements of the remaining counts in the
Indictment.  For example, in addition to the wire fraud counts,
Client 1 and Client 2 would need to testify regarding the tax charges
Counts 11-18, 19, 21, 23, 24, 26, 27, 29, and in a joint trial would
similarly testify about the bank fraud charges.  In addition to the
wire fraud counts, Client 3, Client 4, and Client 5, would also need
to testify to various tax charges and the bankruptcy fraud charges.
Moreover, because defendant commingled and transferred funds between
each of his entities, the government would need to introduce many of
the same exhibits and records, especially relating to defendant's and
his entities' finances, in separate trials to explain the complex
nature of defendant's finances and how he transferred and concealed
assets.

Second, defendant's modus operandi is nearly identical in
carrying out his numerous and extensive financial frauds charged in
the various counts of the Indictment.  Defendant's willingness to lie
and make false statements to obtain money, conceal his possession and
receipt of money, and to prevent payment of the money to where it
belongs is common in each of the charges in the Indictment.  As one
example, just as defendant provided false statements and omitted
material information in a judgment debtor examination to further
conceal his embezzlement of Client 1's settlement funds as alleged in
the wire fraud counts, defendant provided false statements and/or
failed to provide documentation during the 2017 EA Bankruptcy to

16

further conceal his embezzlement of settlement funds belonging to Client 3, Client 4, and the Super Bowl Clients.  As another example, defendant made false statements to Client 1, Client 2, Client 3 about their settlement agreement and when and how the settlement proceeds would be paid, so that defendant could obtain their money and conceal his receipt of the money, just as defendant provided false names and changed bank accounts to conceal GBUS's money to obstruct the IRS's collection efforts.

Third, the elements of the statutory offenses of wire fraud (Counts 1-10) and bank fraud (Counts 31-32) are basically identical except for the jurisdictional element.  Compare Ninth Cir. Crim. Jury Ins. 8.124 (wire fraud elements) with Ninth Cir. Crim. Jury Ins. 8.125 (bank fraud elements).  Moreover, nearly all of the charges in the Indictment require the government to prove defendant acted knowingly or willfully, thus requiring proving similar states of mind.

And finally, all of the allegations in the Indictment either overlap in time or occurred in succession between 2014 and 2019; therefore, the temporal proximity of the counts meets the same or similar character prong.  Throughout 2014, defendant made false statements to The Peoples Bank to obtain over $4 million in bank loans, then made false statements in the beginning of 2015 to embezzle Client 1's $4 million settlement proceeds, which defendant drained by July 2015.  Starting in September 2015 and continuing to December 2017, defendant stopped paying the IRS payroll taxes that were withheld from GBUS employees' paychecks, and used the funds for personal expenses as well as to lull wire fraud victims.  And in January 2017, May 2017, January 2018, and March 2018, defendant

17

embezzled settlement proceeds from Client 2 ($2.75 million), Client 3 ($1.6 million), the Super Bowl Clients ($1.31 million), and Client 4 ($4 million), respectively.  Defendant also made lulling payments to Client 1 from July 2015 through March 2019 and to Client 2 from March 2017 through June 2018.  And from March 2017 through March 2018, defendant made false statements during the 2017 EA Bankruptcy.

In addition to all of the counts of the Indictment being of the same or similar character, the "common scheme or plan" prong of Rule 8(a) also justifies joinder of all the counts in the Indictment. "Common scheme or plan" applies when the counts "grow out of related transactions" or are "logically related."  <u>Jawara</u>, 474 F.3d at 574 (citing <u>United States v. Randazzo</u>, 80 F.3d 623, 627 (1st Cir. 1996)); <u>see also</u> <u>United States v. Terry</u>, 911 F.2d 272, 276 (9th Cir. 1990) ("The term 'transaction' [in Rule 8(a)] is to be interpreted flexibly and may comprehend a series of related occurrences.") (citation and quotation omitted); <u>United States v. Anderson</u>, 642 F.2d 281, 284 (9th Cir. 1981) ("When the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate.").

In determining a "common scheme or plan," the court asks "whether commission of one or the offenses either depended upon or necessarily led to the commission of the other; proof of one act either constituted or depended upon proof of the other," <u>Jawara</u>, 474 F.3d at 574 (internal alterations omitted), or when one criminal act results "directly from other criminal activity".  <u>United States v. Whitworth</u>, 856 F.2d 1268, 1277 (9th Cir. 1988).  For example, the Ninth Circuit has held that espionage and tax evasion counts were properly joined, even though they occurred at different times, because the "tax evasion <u>flowed directly from</u> the espionage activity

1    and the tax evasion resulted in large part from the necessity of

2    concealing the illegal proceeds of that activity." Jawara, 474 F.3d

3    at 575 (citing Whitworth, 856 F.2d at 1277) (emphasis added); see

4    also United States v. Reichel, 911 F.3d 910, 915 (8th Cir. 2018)

5    (finding proper joinder between wire fraud and bankruptcy fraud

6    counts because defendant's obtaining money through wire fraud and

7    attempts to keep the money through bankruptcy fraud were "connected

8    through a common scheme"); United States v. Midkiff, 614 F.3d 431,

9    439-40 (8th Cir. 2010) (finding proper joinder between mail and wire

10   fraud and failure to file tax returns because the "failure to file

11   tax returns may have a logical and temporal relationship with the

12   other offenses charged in the indictment such that the tax offenses

13   are connected with or constitute parts of a common scheme or plan,"

14   because failure to file or report income may be evidence of

15   defendant's "intent to conceal the fraud").

16          For most of the same reasons argued above, the counts of the

17   Indictment were "connected with or constituted parts of a common

18   scheme or plan." Fed. R. Crim. Proc. 8(a). The wire fraud counts

19   show defendant's scheme to obtain money through fraud, and his

20   attempts to keep the money and conceal his receipt of the money

21   through failure to file tax returns and bankruptcy fraud. There is a

22   clear, logical relationship, between the wire fraud counts on one

23   hand, and the tax and bankruptcy fraud counts on the other, because

24   the funds that defendant failed to report to the IRS and in the 2017

25   EA Bankruptcy are some of the same funds defendant received from the

26   wire fraud scheme. Moreover, defendant's failure to pay payroll

27   taxes withheld from GBUS employees' paychecks and his use of the

28   funds for, among other things, personal expenses and making lulling

                                      19

1  payments to wire fraud victims further demonstrate a common scheme or
2  plan.

3       **B.   Severance is Not Warranted Pursuant to Rule 14**

4       There is also no merit to defendant's argument that the Court
5  should sever the counts of the Indictment pursuant to Federal Rule of
6  Criminal Procedure 14 because trying defendant on Counts 11-36 along
7  with Counts 1-10 would prejudice defendant.  (Mot. 5-6.)  Rule 14
8  allows for severance if the joinder of offenses "appears to prejudice
9  a defendant or the government."  Fed. R. Crim. P. 14(a).  Because the
10 Ninth Circuit instructs that "joinder is the rule rather than the
11 exception," a court should deny a motion to sever under Rule 14
12 unless the defendant can show that "joinder was so manifestly
13 prejudicial that it outweighed the dominant concern with judicial
14 economy and compelled the exercise of the court's discretion to
15 sever."  Whitworth, 856 F.2d at 1277 (internal quotations omitted).
16 "The defendant has the burden of proving that the joint trial was
17 manifestly prejudicial[; t]he prejudice must have been of such
18 magnitude that the defendant's right to a fair trial was abridged."
19 United States v. Lewis, 787 F.2d 1318, 1321 (9th Cir. 1986); see also
20 United States v. Decoud, 456 F.3d 996, 1008 (9th Cir. 2006) (finding
21 manifest prejudice requires a defendant to show more than that he is
22 more likely to win an acquittal if counts are severed); Davis v.
23 Woodford, 384 F.3d 628, 638 (9th Cir. 2004) ("The requisite level of
24 prejudice is reached only if the impermissible joinder had a
25 substantial and injurious effect or influence in determining the
26 jury's verdict.").

27      Defendant maintains that a trial against him on all counts
28 "would create the danger that the jury would use evidence admissible

1    as to one type of count to infer criminal disposition on the . . .

2    other counts." (Mot. at 6 (internal citations and quotations

3    omitted).) Defendant's generic claim of prejudice without any

4    explanation for why a jury could not compartmentalize evidence of

5    distinct crimes is insufficient to meet his burden under Rule 14, and

6    courts have repeatedly rejected similar claims as long as the court

7    provides appropriate jury instructions. See Zafiro v. United States,

8    506 U.S. 534, 538-39 (1993) (to overcome the presumption in favor of

9    joint trials, a defendant must "articulate specific instances of

10   prejudice" caused by a joint trial, which can be cured in most cases

11   with limiting instructions); United States v. Bradshaw, 690 F.2d 704,

12   709 (9th Cir. 1982) ("Limiting instructions may reduce or eliminate

13   prejudice which would otherwise occur."); see also Hayes v. Ayers,

14   632 F.3d 500, 514 (9th Cir. 2011) (juries are presumed to follow

15   instructions); United States v. Dorsey, No. CR 14-328-CAS, 2015 WL

16   847395, at *28 (C.D. Cal. Feb. 23, 2015) (denying motion where

17   defendant's "arguments boil down to the generic proposition that a

18   jury cannot compartmentalize evidence of distinct but similar

19   crimes").

20       This Court can (and should) take steps to ensure that the jury

21   properly compartmentalizes the evidence at trial, including providing

22   instructions that the jury must consider the evidence on each count

23   separately. See Ninth Cir. Crim. Jury Instr. 3.11. With proper

24   instructions to the jury, which they are presumed to follow, the

25   Court can alleviate any potential prejudice to defendant from having

26   the counts tried jointly. Defendant has not met, and cannot meet,

27   the heavy burden of establishing the need for trying this case twice.

28   See United States v. Lopez, 477 F.3d 1110, 1117 (9th Cir. 2007)

21

1  (denying severance of counts under Rule 14 because "[t]he burden on
2  judicial resources that would have resulted from hearing the charges
3  and evidence against Lopez in multiple trials outweighs any limited
4  prejudice that Lopez may have experienced").

5      Finally, the Ninth Circuit has repeatedly stated that joinder is
6  not prejudicial under Rule 14 where evidence of various counts would
7  be admissible on the other counts upon severance.  See, e.g., United
8  States v. Prigge, 830 F.3d 1094, 1098 (9th Cir. 2016); Johnson, 820
9  F.2d at 1070-71.  For the same reasons detailed at length in the
10 government's other acts motion in limine, defendant's other criminal
11 acts in Counts 11-36 would be admissible in a trial against defendant
12 on Counts 1-10, as the other acts charged in Counts 11-36 fall
13 squarely within and constitute direct evidence of the charged wire
14 fraud offenses, are inextricably intertwined with the wire fraud
15 charges, and/or are admissible pursuant to prove "motive,
16 opportunity, intent, preparation, plan, knowledge, identity, absence
17 of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2); see also
18 Huddleston v. United States, 485 U.S. 681, 685 (1988) ("Extrinsic
19 acts evidence may be critical to the establishment of the truth as to
20 a disputed issue, especially when that issue involves the actor's
21 state of mind and the only means of ascertaining the mental state is
22 by drawing inferences from conduct."); United States v. Curtin, 489
23 F.3d 935, 944 (9th Cir. 2007) ("Rule 404(b) is a rule of inclusion --
24 not exclusion -- which references at least three categories of other
25 'acts' encompassing the inner workings of the mind: motive, intent,
26 and knowledge."); Midkiff, 614 F.3d at 441 (finding no prejudice
27 under Rule 14 when the evidence for each set of counts would have

28

                                   22

1    been admissible at a trial on the other counts pursuant to Rule

2    404(b)).

3        Because the evidence for Counts 11-36 overlaps with evidence for

4    Counts 1-10, no unfair prejudice exists in trying defendant on all

5    counts together.  And because the evidence relating to Counts 1-10

6    would be relevant and probative on Counts 11-36, and vice versa,

7    severing counts would only result in a waste of judicial and

8    prosecutorial resources by forcing a second trial involving the same

9    evidence.  In light of the admissibility of the evidence in both

10   trials and defendant's failure to identify any specific prejudice,

11   severance is both unnecessary and unreasonable, and this Court should

12   deny defendant's motion.

13       **C.    The Government's Proposed Severance**

14       Defendant has had sufficient time to prepare for a trial on all

15   counts beginning on December 8, 2020, and defendant has no basis for

16   a severance pursuant to Federal Rules of Criminal Procedure 8(a) and

17   14;[9] however, the government fully appreciates the situation this

18   Court and all courts within this District face due to COVID-19.  With

19   uncertainties regarding when jury trials will commence, the manner in

20   which they would proceed, and what types and lengths of trial may

21   proceed upon commencing of jury trials, the government understands

22   that the current situation is simply unusual.  Specifically, the

23

24       [9] Defendant also seeks the counts to be severed claiming he "may
     be able to proceed to trial on counts 1 through 10 earlier than the
25   other counts," because, among other reasons, "much of [the discovery]
     has yet to be provided."  (Mot. at 7.)  First, defendant has had
26   nearly all of the discovery since March of this year and the trial
     date is set.  Defendant has had sufficient time to prepare; defendant
27   does not get to choose when to proceed to trial.  Second, a
     defendant's claim that he is unprepared to proceed to trial on all
28   counts -- which is baseless in the present case -- is not a basis for
     a severance.

government appreciates that an approximately six-week trial on all
counts may pose additional challenges for the Court when trials in
this District resume.  The government is also mindful of the rights
of the victims in this case, specifically the victims of defendant's
wire fraud and bankruptcy fraud, including, among others, the "right
to proceedings free from unreasonable delay."  18 U.S.C. §
3771(a)(7).  As such, the government would agree to a severance, if
necessary, of the wire fraud and bankruptcy fraud counts (Counts 1-
10, 33-36) from the remaining counts of the Indictment (Counts 11-
32).

     This Court has broad discretion to sever these fourteen counts
based on the Court's "inherent right and duty to manage its own
calendar."  See generally, United States v. Gay, 567 F.2d 916, 919
(9th Cir. 1978).  As described above, the wire fraud and bankruptcy
fraud counts have the most significant overlap of evidence and
witnesses, and trying these charges together would be necessary to
tell a comprehensive and cohesive story of defendant's criminal
conduct.  Moreover, as substantial evidence of the bankruptcy fraud
charges would be necessary and admissible in a trial on the wire
fraud counts, proceeding to trial on these additional four counts
would not increase the length of the trial much more than if the
government proceeded on only the first ten counts of the Indictment.
Proceeding to trial on these fourteen counts, however, "would be far
less complex and [] much shorter" than a trial on all counts as
suggested by this Court in its August 31, 2019, minute order.  (CR
245.)  Simply put, if a limited severance were granted, the most
logical and efficient approach would be to have one trial with the

24

1    wire fraud and bankruptcy fraud charges, and a second trial with the

2    tax and bank fraud charges.

3         The government, however, believes that this limited severance

4    would only be appropriate if the trial on these fourteen counts

5    proceeds on December 8, 2020, as the trial is currently scheduled, or

6    at least by January 26, 2021 if the present circumstances related to

7    COVID-19 prevent the trial starting as scheduled.  If the current

8    pandemic prevents the trial from proceeding in this timeframe or the

9    trial is further continued for other reasons, all counts should

10   remain properly joined, and the trial should commence on all counts

11   as soon as possible.  Although the government would be mindful of the

12   purpose of the severance -- to streamline the trial, such a severance

13   should not prohibit the government from seeking to admit evidence

14   from the remaining counts of the Indictment as appropriate and

15   necessary.

16        In sum, under ordinary circumstances, a severance would be

17   unnecessary, inappropriate, and inefficient.  The government,

18   however, recognizes that a limited severance may be appropriate due

19   to the practical challenges arising from COVID-19.  If this Court is

20   inclined to grant the government's proposed severance, the government

21   can submit a proposed order for the Court.

22   **IV.  CONCLUSION**

23        For the foregoing reasons, the Court should deny defendant's

24   motion to sever.  The government, however, is willing to stipulate to

25   a severance of Counts 1-10 and 33-36 from the remaining counts of the

26   Indictment under the conditions stated herein.

27

28