NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6683
     Facsimile: (213) 894-6269
     Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone:  (714) 338-3598
     Facsimile:  (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>MICHAEL JOHN AVENATTI,<br><br>       Defendant. | No. SA CR 19-061-JVS<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT MICHAEL JOHN AVENATTI'S MOTION FOR DISCLOSURE OF GRAND JURY MATERIALS<br><br>*[GOVERNMENT'S IN CAMERA SUBMISSION LODGED CONCURRENTLY HEREWITH]*<br><br>Hearing Date: October 19, 2020<br>Hearing Time: 9:00 a.m.<br>Location:    Courtroom of the<br>             Hon. James V. Selna |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Julian L. André and

1   Brett A. Sagel, hereby files its opposition to defendant MICHAEL JOHN

2   AVENATTI's motion for disclosure of Grand Jury materials.

3        This opposition is based upon the attached memorandum of points

4   and authorities, the concurrently lodged under seal and in camera

5   supplemental submission, the files and records in this case, and such

6   further evidence and argument as the Court may permit.

7    Dated: September 28, 2020          Respectfully submitted,

8                                        NICOLA T. HANNA
                                         United States Attorney
9
                                         BRANDON D. FOX
10                                       Assistant United States Attorney
                                         Chief, Criminal Division
11

12                                       _____/s/_____
                                         JULIAN L. ANDRÉ
13                                       BRETT A. SAGEL
                                         Assistant United States Attorneys
14
                                         Attorneys for Plaintiff
15                                       UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.......................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.......................................1

I.    INTRODUCTION.........................................................1

II.   PROCEDURAL BACKGROUND................................................2

III.  ARGUMENT.............................................................3

      A.    Defendant Must Demonstrate a "Particularized Need" for
            Disclosure of Grand Jury Materials.............................3

      B.    The Government May Properly Issue Grand Jury Subpoenas
            Post-Indictment................................................4

      C.    Defendant's Unsubstantiated Speculation Regarding the
            Government's Ongoing Investigation Is Insufficient to
            Meet His Burden................................................7

      D.    Defendant's Speculative Misconduct Claims Are
            Contradicted by the Existing Record...........................11

      E.    Defendant's Specific Discovery Requests Are
            Inappropriate or Moot.........................................15

      F.    The Government's Concurrently Lodged In Camera
            Submission Adequately Addresses Defendant's
            Unsubstantiated and Speculative Concerns......................16

IV.   CONCLUSION...........................................................16

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**FEDERAL CASES**

Beverly v. United States,
    468 F.2d 732 (5th Cir. 1972)...................................10

Branzburg v. Hayes,
    408 U.S. 665 (1972).........................................5

Dennis v. United States,
    384 U.S. 855 (1966).........................................3

In re Grand Jury Proceedings ("Johanson"),
    632 F.2d 1033 (3d Cir. 1980)................................6

In re Grand Jury Proceedings ("Pressman"),
    586 F.2d 724 (9th Cir. 1978)..............................5, 9

In re Special Grand Jury Proceedings – Subpoena Served on
    Goodman & Chesnoff,
    871 F. Supp. 391 (D. Nev. 1994)...............................7

In re: Eagan Avenatti LLP,
    No. 8:17-bk-11961-CB (C.D. Cal.).............................14

Port v. Heard,
    594 F. Supp. 1212 (S.D. Tex. 1984)...........................4

United States v. Braasch,
    505 F.2d 139 (7th Cir. 1974).................................9

United States v. Breitkreutz,
    977 F.2d 214 (6th Cir. 1992).................................6

United States v. Carona,
    No. SA CR 06-224-AG,
    2008 WL 1970205 (C.D. Cal. May 2, 2008)......................8

United States v. Chanen,
    549 F.2d 1306 (9th Cir. 1977)................................4

United States v. Chi,
    No. 2:16-CR-00824-JFW, Dkt. 89 (C.D. Cal. June 9, 2017).......8

United States v. Dionisio,
    410 U.S. 1 (1973)....................................4, 6, 13

United States v. Ferrebouef,
    632 F.2d 832 (9th Cir. 1980).............................3, 8

United States v. Fowlie,
    24 F.3d 1059 (9th Cir. 1994)................................16

ii

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

<u>United States v. Furrow</u>,
    125 F. Supp. 2d 1170 (C.D. Cal. 2000)........................5, 6

<u>United States v. Jones</u>,
    129 F.3d 718 (2d Cir. 1997).................................5, 6

<u>United States v. Leung</u>,
    40 F.3d 577 (2d Cir. 1994)....................................6

<u>United States v. Mechanik</u>,
    475 U.S. 66 (1986)........................................5, 15

<u>United States v. Nguyen</u>,
    314 F. Supp. 2d 612 (E.D. Va. 2004)...........................4

<u>United States v. Plummer</u>,
    941 F.2d 799 (9th Cir. 1991)..................................3

<u>United States v. R. Enterprises, Inc.</u>,
    498 U.S. 292 (1991)...........................................4

<u>United States v. Rubin</u>,
    559 F.2d 975 (5th Cir. 1977)..................................3

<u>United States v. Ruppel</u>,
    666 F.2d 261 (5th Cir. 1982)..................................6

<u>United States v. Sasso</u>,
    59 F.3d 341 (2d Cir. 1995)....................................6

<u>United States v. Sells Eng'g, Inc.</u>,
    463 U.S. 418 (1983)...........................................3

<u>United States v. Walczak</u>,
    783 F.2d 852 (9th Cir. 1986)..................................3

<u>United States v. Williams</u>,
    504 U.S. 36 (1992)............................................4

<u>United States v. Zarattini</u>,
    552 F.2d 753 (7th Cir. 1977).................................10

**STATE CASES**

Fed. R. Crim. P. 6(e)(3)(E)(ii)...................................3

**FEDERAL STATUTES**

18 U.S.C. § 1001................................................12

18 U.S.C. § 1028A(a)(1)..........................................2

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

18 U.S.C. § 1341...............................................................2

18 U.S.C. § 1343...............................................................2

18 U.S.C. § 1344...............................................................2

18 U.S.C. § 152(2).........................................................2, 12

18 U.S.C. § 152(3).........................................................2, 12

18 U.S.C. § 157...............................................................12

18 U.S.C. § 1957..............................................................12

18 U.S.C. § 371...............................................................12

26 U.S.C. § 7201.............................................................12

26 U.S.C. § 7202..............................................................2

26 U.S.C. § 7203..............................................................2

26 U.S.C. § 7212(a)...........................................................2

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Defendant MICHAEL JOHN AVENATTI ("defendant") requests that this Court find that the government engaged in misconduct by issuing Grand Jury subpoenas after the Indictment in this case was returned in April 2019.  (CR 276 at 5.)  Defendant then requests that the Court order government to disclose Grand Jury materials that defendant believes will support his baseless misconduct claim.  (CR 276 at 6.) Defendant's motion relies entirely on unsubstantiated claims and inaccurate speculation.  Defendant has not met his burden to demonstrate that he is entitled to disclosure of the requested Grand Jury materials, let alone provided this Court with any evidence demonstrating the government engaged in misconduct or abused the Grand Jury process.

Defendant's speculative and baseless misconduct claims are also directly contradicted by the existing record, which clearly demonstrates that the government continued to investigate defendant and others for additional crimes after the Indictment was returned. For example, the Court revoked defendant's bail based on a finding that there was probable cause to believe defendant committed additional crimes while on pretrial release.  The issuance of Grand Jury subpoenas in support of the government's ongoing investigation would have been entirely appropriate and would not constitute misconduct.  The fact that the government has not sought a superseding indictment in this case is likewise irrelevant, and does not prove that the government's ongoing investigation was improper.

At bottom, defendant is engaged in a fishing expedition. Defendant's motion should be denied.

## II.   PROCEDURAL BACKGROUND

On March 22, 2019, the government filed a criminal complaint charging defendant with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of bank fraud, in violation of 18 U.S.C. § 1344.  (CR 1.)  The affidavit in support of the criminal complaint incorporated by reference a 184-page search warrant affidavit submitted in February 2019, which set forth in detail the additional criminal conduct the government was investigating at the time. (CR 1, Ex. 1.)

On April 10, 2019, a grand jury returned a 36-count Indictment charging defendant with: (a) ten counts of wire fraud (18 U.S.C. § 1343); eight counts of willful failure to pay over withheld taxes, (26 U.S.C. § 7202); one count of endeavoring to obstruct the administration of the Internal Revenue Code (26 U.S.C. § 7212(a)); ten counts of willful failure to file tax return (26 U.S.C. § 7203); two counts of bank fraud (18 U.S.C. § 1344(1)); one count of aggravated identity theft (18 U.S.C. § 1028A(a)(1)); three counts of false declaration in bankruptcy (18 U.S.C. § 152(3)); and one count of false testimony under oath in bankruptcy (18 U.S.C. § 152(2)). The charges in the Indictment did not encompass all of the criminal conduct identified in the February 2019 affidavit.

In January 2020, the government moved to revoke defendant's bail on the basis that defendant had committed additional federal and state crimes while on pretrial release.  (CR 98.)  This Court agreed, finding that there was probable cause to believe defendant engaged in, among other things, mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; and structuring currency transactions to evade reporting requirements, in violation

of 31 U.S.C. § 5324(a)(3) – all after the return of the Indictment. (See CR 94.)  The Ninth Circuit affirmed.  (CR 116.)

**III. ARGUMENT**

    **A.   Defendant Must Demonstrate a "Particularized Need" for Disclosure of Grand Jury Materials**

Pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), the Court may authorize disclosure of the grand jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  The Supreme Court "has consistently construed the Rule, however, to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted."  United States v. Sells Eng'g, Inc., 463 U.S. 418, 443 (1983); see also Dennis v. United States, 384 U.S. 855, 870 (1966); United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986).  "[W]hen lifting the secrecy of grand jury proceedings[,]" the court should follow these standards:  "(1) that the desired material will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that only the relevant parts of the transcripts should be disclosed."  United States v. Plummer, 941 F.2d 799, 806 (9th Cir. 1991); see also Sells Eng'g, 463 U.S. at 443 (similar).  "Mere 'unsubstantiated, speculative assertions of improprieties in the proceedings' do not supply the 'particular need' required to outweigh the policy of grand jury secrecy."  United States v. Ferrebouef, 632 F.2d 832, 835 (9th Cir. 1980) (quoting United States v. Rubin, 559 F.2d 975, 988 (5th Cir. 1977); see Walczak, 783 F.2d at 857 (denying disclosure of grand jury transcripts where the alleged need was not based on facts, and was,

therefore, "speculative"). Put simply, Rule 6(e) "is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred." United States v. Nguyen, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004).

As explained below, defendant has failed to meet his burden to establish a "particularized need" for the disclosure of grand jury materials because there are no grounds to believe abuse has occurred.

## B. The Government May Properly Issue Grand Jury Subpoenas Post-Indictment

"[T]he constitutional doctrine of separation of powers mandates judicial respect for the independence . . . of the grand jury. . . ." United States v. Chanen, 549 F.2d 1306, 1312 (9th Cir. 1977). The Supreme Court has stated:

> The grand jury's functional independence from the Judicial Branch is evident both in the scope of its power to investigate criminal wrongdoing and in the manner in which that power is exercised. Unlike [a] [c]ourt, whose jurisdiction is predicated upon a specific case or controversy, the grand jury can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not. . . . It need not identify the offender it suspects, or even "the precise nature of the offense" it is investigating.

United States v. Williams, 504 U.S. 36, 48 (1992) (internal citations and quotations omitted); see also United States v. R. Enterprises, Inc., 498 U.S. 292, 297 (1991).

"A grand jury has broad investigative power to determine whether a crime has been committed and who has committed it." United States v. Dionisio, 410 U.S. 1, 15 (1973) (internal citations omitted); see also Port v. Heard, 594 F. Supp. 1212, 1217 (S.D. Tex. 1984) ("Traditionally, the grand jury has been accorded wide latitude to inquire into violations of criminal law."). Accordingly, "[a] grand

4

jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." United States v. Mechanik, 475 U.S. 66, 75, (1986) (O'Connor, J., concurring).

Post-indictment grand jury proceedings are routinely considered legally tenable, as well as logical. "The investigative power of a grand jury does not necessarily end with the return of an indictment." United States v. Jones, 129 F.3d 718, 723 (2d Cir. 1997). Rather, "[a] grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined . . . [and] may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors." Branzburg v. Hayes, 408 U.S. 665, 701 (1972) (internal citations omitted); see also In re Grand Jury Proceedings ("Pressman"), 586 F.2d 724, 725 (9th Cir. 1978) ("There is no legal basis for barring a grand jury investigation simply because there is an outstanding indictment . . .  There is also no bar to investigation of other areas of criminal liability for which the defendants or co-defendants may be accountable.") (citations omitted).

Although the use of a grand jury for the "sole or dominant" purpose of criminal discovery is prohibited, courts have long recognized that there are numerous proper reasons for presenting evidence to a grand jury after an indictment has been returned. See United States v. Furrow, 125 F. Supp. 2d 1170, 1172-1176 (C.D. Cal. 2000) (Manella, J.) (collecting cases). Among other things, "the government may properly use the grand jury 'to identify or investigate other individuals involved in criminal schemes, or to

prepare superseding indictments against persons already charged.'"
Jones, 129 F.3d at 723 (citing United States v. Sasso, 59 F.3d 341,
352 (2d Cir. 1995)).  The grand jury's "mission" is also "to clear
the innocent, no less than to bring to trial those who may be
guilty."  Dionisio, 410 U.S. at 16-17.

Moreover, the fact that the government may obtain an "incidental
benefit" from post-indictment grand jury process "is insufficient to
establish that the prosecutors have abused the grand jury."  Furrow,
125 F. Supp. 2d at 1173; see United States v. Ruppel, 666 F.2d 261,
268 (5th Cir. 1982) (concluding government did not misuse grand jury
by calling convicted coconspirator to testify, even though testimony
may have incidentally benefitted prosecution of defendant); In re
Grand Jury Proceedings ("Johanson"), 632 F.2d 1033, 1040-41 (3d Cir.
1980) ("[A] good faith inquiry into other charges within the scope of
the grand jury's lawful authority is not prohibited even if it
uncovers further evidence against an indicted person.").

Finally, defendant bears the "burden of showing that the
government's use of the grand jury was improperly motivated."  United
States v. Leung, 40 F.3d 577, 581 (2d Cir. 1994); see also United
States v. Breitkreutz, 977 F.2d 214, 217 (6th Cir. 1992) ("[A]
defendant must show that the challenged witnesses were not called to
accomplish a proper objective."); Johanson, 632 F.2d at 1041-42
(defendant bears burden of showing sole or dominant purpose was to
prepare for pending trial).  Indeed, "absent some indicative sequence
of events demonstrating an irregularity, a court has to take at face
value the Government's word that the dominant purpose of the Grand
Jury proceedings is proper."  Furrow, 125 F. Supp. 2d at 1170; see
also In re Special Grand Jury Proceedings – Subpoena Served on

1    Goodman & Chesnoff, 871 F. Supp. 391, 394 (D. Nev. 1994) (rejecting

2    challenge to grand jury subpoena where party "failed to present any

3    evidence to support his accusation that the sole purpose of the

4    subpoena is for pretrial discovery purposes, and the Government has

5    categorically denied [the] allegations").

6        **C.   Defendant's Unsubstantiated Speculation Regarding the
            Government's Ongoing Investigation Is Insufficient to Meet
7            His Burden**

8        Based on nothing more than his counsel's "unsubstantiated,

9    speculative assertions" that the government issued grand jury

10   subpoenas for the sole purpose of obtaining pretrial discovery,

11   defendant requests that the Court find that the government engaged in

12   misconduct.  Defendant then requests that the Court order the

13   government to produce Grand Jury materials which he believes may

14   ultimately support defense counsel's unsubstantiated, speculative

15   assertions.  Defendant's circular argument is insufficient to meet

16   his burden to demonstrate that grand jury abuse has occurred or that

17   he is entitled to disclosure of grand jury materials.  Defendant is

18   effectively asking this Court to assume that any post-indictment use

19   of grand jury process must have been improper, even though that is

20   the exact opposite of what the law and the "presumption of

21   regularity" require.

22       First, defendant has failed to present any evidence in support

23   of his motion.  Defendant's motion is not supported by declarations

24   from Witness 1 or Witness 2, but is instead entirely based on defense

25   counsel's declaration and his belief that Witness 1 and Witness 2

26   were previously subpoenaed to appear before the grand jury and

27   Witness 1 purportedly discussed with the government defendant's

28

                                    7

1   "current criminal case."[1]  (CR 276, Steward Decl. ¶¶ 2-6.)  Defense

2   counsel then speculates that the subpoenas must have been issued for

3   an improper purpose.  (Id.)

4        Defendant does not present any evidence demonstrating that

5   either witness ever appeared before the Grand Jury, but claims,

6   without support, that "Witness 2 did testify in the grand jury and

7   answered questions specifically in connection with the charges

8   already filed in the Indictment." (Id. at 2).  In fact, neither

9   witness appeared before the grand jury.  Nor has defendant presented

10  any evidence demonstrating that the subpoenas that may have been

11  issued to these two witnesses were issued for improper purposes; this

12  claim rests on speculation alone.  The "unsubstantiated, speculative

13  assertions" in counsel's declaration are plainly insufficient to

14  demonstrate a "particular need" for disclosure of grand jury

15  materials.  Ferrebouef, 632 F.2d at 835.[2]  Defense counsel's

16

17

18

19  _____

20       [1] Defendant does not identify Witness 1 or Witness 2 by name in
    his motion.  At the request of government, however, defendant
21  subsequently provided the government with the names of Witness 1 and
    Witness 2.  Neither defendant's motion nor the attached declaration
22  provide any specifics regarding the purported testimony, statements,
    or document requests.  The declaration does not even state about what
23  Witness 2 supposedly testified or was asked.

24       [2] See also United States v. Carona, No. SA CR 06-224-AG, 2008 WL
    1970205, at *3 (C.D. Cal. May 2, 2008) (denying request for
25  disclosure of grand jury transcripts because defendant was merely
    "speculat[ing] about egregious deception and lack of probative
26  evidence for other charges"); United States v. Chi, No. 2:16-CR-
    00824-JFW, Dkt. 89 at *3 (C.D. Cal. June 9, 2017) ("Defendant relies
27  on sheer speculation and fails to identify any valid basis for the
    Court to presume that the grand jury was improperly instructed or
28  otherwise presented with material omissions and/or false
    information.").

subjective "belief" that the government engaged in misconduct (CR 276, Steward Decl. ¶ 6) is likewise irrelevant.[3]

Second, defendant relies heavily on his belief that government subsequently met with Witness 1 and asked her questions relating to the current charges against defendant.  The fact that the government met with Witness 1 outside of the Grand Jury does not prove that any subpoena that may have been issued to Witness 1 in advance of that meeting was improper.[4]  Once a witness agrees to voluntarily meet with the government, the government is not limited in any way as to the topics it may properly discuss with the witness.  Defendant does not cite any case law supporting his implied position that the sole or dominant purpose test for grand jury process also applies to voluntary witness interviews.  In any case, the fact that the government may have questioned a witness regarding topics within the scope of the current Indictment does not foreclose the possibility that such questioning related to its ongoing investigation of other charges or individuals.  Indeed, even had Witness 1 or Witness 2 appeared before the Grand Jury, the "government has every right to interrogate witnesses on subjects relevant to a pending indictment." See Pressman, 586 F.2d at 725 (citing United States v. Braasch, 505 F.2d 139, 147 (7th Cir. 1974)); United States v. Zarattini, 552 F.2d

---

[3] Witness 2's attorney, Craig Wilke, has confirmed that defendant's counsel is aware that Mr. Wilke represents Witness 2, and that neither he nor defendant has reached out to Witness 2 or Mr. Wilke since February 2020 to inquire about the accuracy of the representations made in the present motion.

[4] The government met with Witness 1 in July 2019 pursuant to a letter immunity agreement.  A memorandum summarizing this interview, as well as the documents Witness 1 produced to the government in connection with the interview, were produced to defendant in October 2019.

753, 757 (7th Cir. 1977); <u>Beverly v. United States</u>, 468 F.2d 732, 743 (5th Cir. 1972)).

<u>Third</u>, defendant argues that any grand jury subpoenas issued by the government were necessarily improper because the government has not obtained a superseding indictment. (CR 276 at 5.) This argument is meritless. Whether the government has obtained a superseding indictment is irrelevant to whether the government's ongoing investigation was conducted properly. There are numerous reasons why the government might ultimately choose, in its sole discretion, not to seek a superseding indictment including, but not limited to, concerns that a superseding indictment could unnecessarily delay the instant prosecution or that additional charges might not be necessary, appropriate, or supported by sufficient evidence.[5] The government cannot be expected to make a decision as to whether to seek a superseding indictment without <u>first</u> investigating whether there is evidence to support such additional charges. The mere fact that an ongoing investigation has yet to result in additional charges does not prove that the investigation itself is or was improper.

Nor is defendant's baseless misconduct claim "further supported by the notion that the testimony was taken over nine months ago and approximately a year after the initial Indictment's filing." (CR 276 at 5.) This argument is illogical. Even if defendant were correct (and he is not), these purported facts in no way support an inference that the government abused the grand jury process and never seriously considered obtaining a superseding indictment. To the extent the

---

[5] The government further notes that due to the COVID-19 pandemic, the government's ability to convene a grand jury has been limited for much the past six months.

government was considering a superseding indictment, July 2019 and January 2020 is precisely when one could reasonably have expected the government to seek additional evidence or testimony.

In fact, defendant has repeatedly raised concerns that the government's ongoing investigation could result in a superseding indictment and would therefore delay the trial.  (See CR 44 at 17; CR 164 at 14.)  Having previously argued that a superseding indictment would have "a significant impact on the scope of the trial, discovery, and trial preparation" (CR 164 at 14) and complained about the government's charging decisions (CR 274), defendant now argues that the government engaged in misconduct by not seeking a superseding indictment (CR 276 at 5).  Defendant cannot have it both ways.

For these reasons, defendant's motion is on its face insufficient to demonstrate the government abused the grand jury process or that defendant has a particularized need for disclosure of grand jury materials.

### D.  Defendant's Speculative Misconduct Claims Are Contradicted by the Existing Record

Defendant's unsubstantiated and speculative grand jury abuse claims are also directly contradicted by the record in this case.  It is well known that the government continued to investigate defendant regarding allegations of additional criminal conduct beyond the crimes alleged in the Indictment.  To the extent it occurred, the use of grand jury process in connection with this ongoing investigation would have been entirely proper.

First, the search warrants executed in connection with this case both before and after the Indictment was returned in April 2019

11

clearly identify additional criminal conduct that was under active investigation.

In February 2019, IRS-CI obtained a warrant to search a number of digital devices IRS-CI had obtained from former employees of defendant's coffee company, Global Baristas US, LLC.  The search warrant application and supporting affidavit note that the government was investigating a number of specific crimes, including the following crimes which were not alleged in the April 2019 Indictment: tax evasion (26 U.S.C. § 7201); bankruptcy fraud (18 U.S.C. § 157); conspiracy (18 U.S.C. § 371); false statements (18 U.S.C. § 1001); and money laundering (18 U.S.C. § 1957).[6]  (CR 1, Ex. 1; CR 78, Ex. 1.)

The applications and supporting affidavit for the three March 2019 search warrants, which were executed simultaneously with defendant's arrest in New York, likewise identify the same additional uncharged crimes, namely, tax evasion (26 U.S.C. § 7201), bankruptcy fraud (18 U.S.C. § 157), and money laundering (18 U.S.C. § 1957). (CR 78, Ex. 2 ¶ 5.)  Moreover, the March 2019 search warrants demonstrate that the government's investigation was not focused exclusively on defendant's conduct, as the government also searched EA Employee 1's home and Law Firm 1's business premises.  (Id., Ex. 3 ¶¶ 10(a)-(b).)  It would have been entirely appropriate for the

---

[6]  The Indictment charges defendant with willful failure to file tax returns, in violation of 26 U.S.C. § 7203, but does not charge defendant with tax evasion, in violation of 26 U.S.C. § 7201. Likewise, the Indictment charges defendant with false statements in connection with bankruptcy proceedings in violation of 18 U.S.C. §§ 152(2), (3), but does not charge defendant with bankruptcy fraud in violation of 18 U.S.C. § 157.  These separate charges would have required additional and different evidence to be presented to the Grand Jury.

government to continue to investigate the actions of EA Employee 1,
Law Firm 1, and others after the Indictment was returned in April
2019, even such investigation would potentially "clear" those
individuals of wrongdoing.  Dionisio, 410 U.S. at 16-17.

In May 2019, after the Indictment was returned, the government
obtained a warrant to search the EA Server and other devices.  (CR
78, Ex. 3.)  Again, this warrant makes clear that the government was
still investigating additional crimes, including tax evasion, false
statement, bankruptcy fraud, and money laundering charges.  (Id., Ex.
3 ¶ 3.)  Any of these crimes -- none of which were included in the
April 2019 Indictment -- could form the basis for a superseding
indictment and would justify the need for additional investigative
actions, including the issuance of grand jury subpoenas.
Additionally, the May 2019 search warrant specifically identified
additional conduct that had not been alleged in the Indictment.  For
example, the May 2019 search warrant sought evidence relating to
defendant's alleged theft of settlement funds from approximately 200
individuals (the "Super Bowl Clients") defendant represented during
litigation against the National Football League ("NFL") relating to
the 2011 Super Bowl (the "Super Bowl Litigation").  (Id., Ex. 3 ¶¶
41-48.)  Although defendant's alleged embezzlement of the Super Bowl
Clients settlement funds falls within the scope of the alleged scheme
to defraud, such conduct could also form the basis for additional
wire fraud charges in a superseding indictment.

Second, the government recently filed a motion to introduce
evidence of defendant's other acts, crimes, and wrongs.  The
government's motion identified five categories of additional crimes
or other acts that were not specifically identified in the April 2019

13

Indictment.  (CR 284.)  Although the evidence identified in the government's motion is admissible at trial for a number of other reasons set forth in the government's other acts motion (id.), such evidence could also properly form the basis for a superseding indictment.  For example, the government's other acts motion identifies additional criminal conduct relating to the fraudulent filing of the involuntary bankruptcy petition that led to In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB (C.D. Cal.) (the "2017 EA Bankruptcy"), as well as other fraudulent conduct during the 2017 EA Bankruptcy.[7]  (Id. at 24.)  Such conduct would undoubtedly support additional bankruptcy charges under 18 U.S.C. §§ 152 and 157.  The fact that the government has sought to admit this evidence at trial on other grounds rather than seeking a superseding indictment does not mean that the government's post-indictment investigation of such conduct was improper.

Third, the government's January 2020 motion to revoke defendant's bail further demonstrates that the government was properly investigating defendant for additional criminal conduct. The government's motion to revoke, as well as the Court's subsequent revocation order and the Ninth Circuit's affirmance, was based entirely on defendant's post-indictment criminal conduct.  (CR 94; CR 98; CR 116.)  There can be no dispute that it was proper for the government and the grand jury to investigate this additional post-

---

[7] The government's February 2020 notice to defendant also identified additional conduct that the government is not seeking to admit at trial at this time, including the theft of settlement funds from at least three other individuals not identified in the Indictment, including J.N.H, R.H., and A.R.  The government's investigation of this conduct would likewise form the proper basis for additional grand jury process.

indictment criminal conduct.   Witness 1 and Witness 2 were directly involved in the allegations at issue in the government's motion to revoke.[8]

In sum, these facts strongly support the "presumption of regularity" that must be accorded to grand jury proceedings, Mechanik, 475 U.S. at 75, and directly refute defendant's meritless assertion that the issuance of any grand jury subpoenas after April 2019 necessarily proves that the government abused the grand jury process.

**E.    Defendant's Specific Discovery Requests Are Inappropriate or Moot**

Defendant also claims that he has met his burden for disclosure of grand jury materials because his request is "narrowly tailored" and the materials are necessary to prepare, among other things, a motion to dismiss the indictment.  (Opp. 6-9.)  For the reasons set forth above, defendant has not made a showing of a "particularized need" for any of the requested grand jury materials.  The scope of his request -- which is hardly narrowly tailored[9] -- is thus irrelevant.

In any case, much of what defendant seeks either does not exist or has already been produced.  For example, neither Witness 1 nor Witness 2 ever testified before the grand jury; therefore, there are no transcripts to produce.  And although defendant requests a copy of Witness 1's witness interview summary and any documents produced in

---

[8] Although defendant is well aware that Witness 1 and Witness 2 were involved in the conduct underlying these allegations, he omitted this information from his instant motion.

[9] Although enumerated into categories, defendant's request is essentially everything the government obtained since April 10, 2019.

connection with that interview, the government already produced those materials to the defense in October 2019 – a fact that defendant fails to mention.  Similarly, to the extent the government obtained any documents via grand jury subpoena as part of its ongoing investigation, the government has already produced, on a rolling basis when received, such documents to defendant.

**F.   The Government's Concurrently Lodged In Camera Submission Adequately Addresses Defendant's Unsubstantiated and Speculative Concerns**

Upon receipt of defendant's motion, the government reviewed the grand jury materials in this case to determine whether production of any materials was required.  The government determined that production is not necessary.  Nevertheless, to the extent the Court determines that its own review of the grand jury materials is appropriate, the government has concurrently lodged with the Court an in camera submission describing the scope of the government's ongoing investigation, as well as certain grand jury materials.  See United States v. Fowlie, 24 F.3d 1059, 1065-66 (9th Cir. 1994) (recognizing that a court may conduct an in camera review of the grand jury transcripts).

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion.