H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SEVER COUNTS 1 THROUGH 10 FROM COUNTS 11 THROUGH 36 |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | Date: October 19, 2020<br>Time: 9:00 a.m. |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this Reply to the Government's Opposition to Mr. Avenatti's request to sever Counts 1-10 from Counts 11-36. Defendant's reply is based on the attached memorandum of points and authorities; the files, records and transcripts in this case; and such further evidence and argument as the Court may permit at a hearing on this matter.

Dated: October 2, 2020                    Respectfully submitted,

/s/ H. Dean Steward
  H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

i

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                          PAGE NO.

Table of Authorities…………………………………………………...…………….iii

Memorandum of Points and Authorities……………………...……………….......1

   I.     Introduction……………………………………………………………....1

   II.    Argument………………………………………………………………1

        A. The Government Cannot Rely on Materials Outside of the Indictment
           to Oppose the Severance Motion…………………………………..1

        B. Counts 1 through 10 were Improperly Joined with Counts 11 through
           36 in Violation of Rule 8 and Should be Severed…………….….…2

        C. Alternatively, Counts 1 through 10 should be severed from Counts 11
           through 36 Pursuant to Rule
           14…………………………………………………...……….9

        D. The Government's Proposed Severance is Illogical and

           Unacceptable……………………………………………....12

   III.   Conclusion……………………………………………………13

Proof of Service………………………………………...……………….14

## TABLE OF AUTHORITIES

DESCRIPTION                                                    PAGE NO.

**FEDERAL CASES**

*Zafiro v. U.S.* 506 U.S. 534 (1993)……………………………………………..10, 12

*U.S. v. Baker* 10 F.3d 1374 (9th Cir. 1993)……………………………………..10, 11

*U.S. v. Halper* 590 F. 2d 422 (2d Cir. 1978)…..…………………………..……….3

*U.S. v. Jawara* 474 F. 3d 565 (9th Cir. 2007)……………..………...……… *passim*

*U.S. v. Lin*, 326 F.R.D. 214 (N.D. Cal. 2018)…………………………………...10

*U.S. v. Mason* 201 F.Appx.425 (9th Cir. 2006)...………………………………….1

*U.S. v. Ramirez* 710 F.2d 535 (9th Cir. 1983)…..……………………………...10

*U.S. v. Randazzo*  80 F.3d 623 (1st Cir. 1996)…..…………………..……………3

*U.S. v. Salyer* 2011 U.S. Dist. LEXIS 142717 (E.D. Ca. 2011)…………………4

*U.S. v. Smith*, 795 F.2d. 841 (9th Cir. 1986) ..……………………………………..3


**FEDERAL RULES**

Federal Rule of Criminal Procedure 8…..…………………………………*passim*

Federal Rule of Criminal Procedure 14……………………………………*passim*

## MEMORANDUM OF POINTS AND AUTHORITES

### I.   INTRODUCTION

On September 10, 2020, Mr. Avenatti through his counsel of record, filed a Motion to Sever Counts 1 through 10 from Counts 11 through 36. This motion was brought after the Court expressed a desire to issue an "order to show cause why it should not sever and separately try Counts 1 through 10." (Docket No. 245, p. 1). Agreeing with this Court's position, counsel for Mr. Avenatti filed a motion to sever Counts 1 through 10 from Counts 11 through 36.[1]

Consistently citing to sources outside of the indictment in this case, which is *per se* improper, the government argues that joinder of all counts is proper under Rule 8 and severance is not warranted pursuant to Rule 14.  The government then "offers" a severance "compromise" that upon examination is no compromise at all and has so many conditions as to render it illusory.[2]  For the following reasons, Mr. Avenatti respectfully requests that the Court grant his motion to sever Counts 1 through 10 from Counts 11 through 36.

### II.   ARGUMENT

#### A.   The Government Cannot Rely on Materials Outside of the Indictment to Oppose the Severance Motion

Because Rule 8 is concerned with the propriety of joining offenses *within* the Indictment, the validity of the joinder is *"determined solely by the allegations in the Indictment." U.S. v. Mason*, 201 F.Appx.425 (9th Cir. 2006), (emphasis added). Further, the *"government cannot avoid the language in its Indictment and ask the Court to engage*

---

[1] Although the government claims that Mr. Avenatti has conceded that Counts 11 through 36 being properly joined together, this is not accurate nor is it at issue.  Defendant has moved by way of the motion for specific relief – that Counts 1 through 10 be severed from Counts 11 through 36.  Further severance, if any, is for another day and Defendant reserves all rights in this regard.

[2] Among other things, the government's severance proposal is wholly dependent on the first trial proceeding in December or January, and would also allow the government to still admit and use the same amount of evidence in the first trial as they would otherwise be able to admit if all 36 counts were still being tried together.  This makes little sense and would accomplish little to nothing.

in *'inferential gymnastics' to find a relationship*" between the counts. *U.S. v. Lin*, 316 F.R.D. 214, 219 (9th Cir. 2018), (emphasis added), (citing *U.S. v. Jawara*, 474 F. 3d 565, 574 (9th Cir. 2007)). Accordingly, the government in its opposition was required to rely solely on the allegations in the Indictment. And if those allegations on their face are not sufficient to overcome the motion, the motion must be granted.

Despite this clear rule, the government proceeds in its opposition to utilize and cite to a variety "facts" and arguments set forth in other pleadings in this case (i.e. its motion in limine to admit other acts), as well as an exhibit the government attaches to its opposition.[3]   This is a tacit admission by the government that the plain words in the indictment are insufficient to withstand a mis-joinder claim.  It is also per se improper and, therefore, defendant objects.[4]  Because a district court's determination of misjoinder is determined solely by the allegations included within the Indictment and its clear words, the Court may not consider the additional allegations and facts the government attempts to use in order to save the counts from being severed.  As a result, the motion should be granted.

### B.   Counts 1 through 10 were Improperly Joined with Counts 11 through 36 in Violation of Rule 8 and Should Be Severed

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of offenses in a single indictment in order to promote judicial economy. A mis-joinder occurs when multiple counts are alleged in a manner not explicitly permitted under this section. Rule 8 allows for joinder in three circumstances: (1) when the offenses are of the same or similar

---

[3] Attempting to avoid the severing of the bankruptcy counts in particular, the government incorrectly claims that this document is "related to the bank fraud [and] is relevant to prove both defendant's expected recovery of Client 1's funds and that proceeds from Client 3's case belonged to EA LLP, which defendant failed to disclose in bankruptcy…." (Docket No. 298, p. 9, fn. 5).

[4] Mr. Avenatti was arrested on a criminal complaint in this case on March 25, 2019.  The government later filed the Indictment on April 1, 2019.  The government has known since last year that the defense was going to be raising a mis-joinder argument and had ample time to issue a superseding indictment if required but failed to do so.

character; (2) when the offenses are based upon the same act or transaction; or, (3) when the offenses are connected with, or constitute part of, a common plan or scheme. *U.S. v. Vasquez–Velasco*, 15 F.3d 833, 843–44 (9th Cir.1994). In its opposition, the government argues that the joinder of the counts in the Indictment is proper because they were part of the same or similar character and of a common plan or scheme. (Doc No. 298, pgs. 11-12). As described in detail below, however, the Indictment does not show a common plan or similarity in character amongst the counts.

Common Scheme or Plan: When the government wishes to join several counts in an Indictment through a *common plan or scheme*, courts will allow the joinder so long as the counts "grow out of related transactions." *U.S. v. Jawara*, supra at p.574 (9th Cir. 2007), (quoting *U.S. v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996)). The Ninth Circuit has determined that in deciding whether the joinder was proper through the *common scheme or plan* doctrine, district courts should ask whether the commission of one of the offenses either depended upon or necessarily led to the commission of the other…" *Id.* (*citing U.S. v. Halper*, 590 F. 2d 422, 429 (2d Cir. 1978)). Critically, there must be a concrete connection between the offenses that goes ***beyond a mere thematic similarity***. *Id. (emphasis added).* When the joined counts are not related to a part of a common plan or scheme, the counts are *mis-joined. See U.S. v. Smith*, 795 F.2d. 841, 850 (9th Cir. 1986), (holding that a firearm count was improperly joined with child pornography counts due to dissimilar nature and no allegations that the gun was involved in the photography of children).

In *U.S. v. Jawara*, supra, the defendant was charged in a single indictment for fraud related to his personal asylum application and conspiracy to commit marriage fraud to avoid immigration laws. The defendant filed an application for personal asylum containing false statements in December of 2000. In 2004, the defendant conspired with another an arranged marriage for the purpose of avoiding immigration enforcement. In 2004, the defendant was arrested and charged with document fraud related to the asylum application

and conspiracy to commit marriage fraud. The Ninth Circuit determined that there was an insufficient common plan or scheme to support the joinder of the offenses. Although it was the same defendant making different attempts to avoid immigration laws, there was insufficient evidence that the marriage fraud conspiracy flowed from the document fraud crime. *Id.* at 575.

In *U.S. v. Salyer*, 2011 U.S. Dist. LEXIS 142717 (E.D. Ca. 2011), defendant Salyer was charged with RICO offenses, honest services wire fraud, the alteration of a document in a federal investigation, and price-fixing. The government argued that all counts were part of a single scheme to enrich the defendant by artificially inflating the price of food products. The district court held that although all of the counts had the common goal of increasing the defendant's profits at the expense of his customers, this common goal was not enough to include a count within the transaction or scheme. *Id.* *16. In granting the severance of the anti-trust count, the district court reasoned that *"the existence of a single goal is pertinent, but not sufficient, to justify joinder." Id.* (emphasis added).

In this case, the government's claims that all of Mr. Avenatti's alleged crimes were carried out to enrich himself at the expense of others and/or that Mr. Avenatti consistently lied, are insufficient to avoid severance. These "themes" are not adequate to survive the motion. Indeed, were this the standard for commonality required for severance, few counts, if any, could ever be severed in any case because the government would almost always claim that the counts had a single goal – enriching the defendant – and that the defendant had lied and engaged in criminal behavior in connection with all of them.

Similarly, the government is unable to prove that the conduct described in Counts 11 through 36 flowed from Counts 1 through 10. For instance, in *Counts 11-18,* the government alleges that between September 1, 2015 and December 31, 2017, Mr. Avenatti withheld funds from GBUS employees and failed to pay these funds to the IRS during eight, quarterly taxing periods. The government claims that Counts 1 through 10 are connected to Counts 11 through 18 through a common plan or scheme because funds

4

withheld from employees were allegedly provided to Clients 1 and 2 to prevent them from discovering the alleged embezzlement. The commission of Counts 1 through 10 and/or the commission of Counts 11 through 18 did not depend upon or necessarily lead to the commission of the other offenses. These crimes are not of the same common plan or scheme. The source of funds used to later pay Clients 1 and 2 is frankly irrelevant to the embezzlement claims.

In *Count 19,* the government alleges that from October of 2016 through September of 2018, Mr. Avenatti attempted to impede and obstruct the IRS by making false statements to a reporting officer, directing employees to refrain from depositing cash into the GBUS account, and opening new merchant accounts for the Tully's stores under a different name. The government claims that Counts 1 through 10 are connected to Count 19 because funds withheld from employees were allegedly provided to Clients 1 and 2 to prevent them from discovering the embezzlement alleged in Counts 1 through 10. The obstruction of IRS enforcement was not dependent on the acts alleged in Counts 1 through 10. Alternatively, the alleged embezzlement of funds did not lead to the obstruction of IRS enforcement. These crimes are not of the same common plan or scheme.

In *Counts 20, 21, 22, and 23* the government alleges that Mr. Avenatti failed to file his individual tax returns from 2014 through 2017. The Indictment fails to articulate how Mr. Avenatti's failure to file his personal taxes from 2014 through 2017 is connected to a common plan or scheme involving the misappropriation of funds from clients. Importantly, the Indictment does not allege within these counts that during these years, Mr. Avenatti personally received unreported income from settlement proceeds related to Clients 1, 2, 4 and 5, or that the receipt of these monies led to returns not being filed. The Indictment fails to sufficiently connect Counts 20, 21, 22 and 23 with Counts 1 through 10, and thus severance is required.

In *Counts 24, 25, and 26*, the government alleges that Mr. Avenatti failed to file tax returns for EA LLP from 2015 through 2017. Likewise, in Counts *27, 28, and 29,* Mr.

5

Avenatti is charged with failure to file tax returns for A&A during the 2015 through 2017 tax years.  Importantly, the Indictment does not allege within these counts that during these years, EA LLP and A&A received settlement proceeds from Clients 1, 2, 4 & 5 that EA LLP and A&A failed to account for or that the receipt of these monies led to tax returns not being filed.  Accordingly, the Indictment does not allege facts within the Indictment connecting these counts to Counts 1 through 10.

*Counts 30, 31 and 32* allege that Mr. Avenatti committed bank fraud and identity theft when he obtained bank loans from the Peoples Bank by way of misrepresentations of material facts.[5]  There is nothing in the Indictment tying these counts in any way to Counts 1 through 10.  Thus, severance is required.

*Counts 33-35* alleged misrepresentations in connection with EA LLP's Monthly Operating Reports during the months of May 2017, September 2017, and January of 2018. In its Opposition, the government claims that these counts are connected to Counts 1 through 10 because Mr. Avenatti received settlement funds from Clients 3, 4, and 5 and concealed them in his Monthly Operating Report. Not only is this connection weak, but more importantly, it is not alleged in the Indictment.  Severance is thus required.

Finally**,** *Count 36* alleges a false statement in a bankruptcy proceeding relating to the alleged receipt of attorneys' fees from the Super Bowl litigation. Again, this count is in no way related to Mr. Avenatti's representation of Clients 1, 2, 3, 4 and 5, nor does the Indictment allege as much. Based upon the foregoing, the government has failed to demonstrate that the Indictment warrants the joinder of Counts 1 through 10 with Counts 11 through 36.

<u>Same or Similar Character</u>:  Another basis for joinder occurs when the allegations are of a similar character. The Ninth Circuit has held that the *same or similar* character prong is the "most amorphous and controversial of the three grounds for joinder." *Jawara,*

---

[5]   The loans were fully repaid to the bank (with interest) years prior to the Indictment and, in some cases, long before the alleged embezzlement of funds belonging to Clients 1-5 under the facts alleged in the Indictment.

6

*supra* at 575.  In looking at whether the charges are of the *same or similar character*, the Ninth Circuit has held that district courts should look to a variety of factors:  physical location, modes of operation, identity of victims, likelihood of evidentiary overlap, elements of the charged offenses etc.  *Id.* at 577.  Importantly, the Ninth Circuit has determined that subject matter similarity is insufficient to support unrelated charges. *Id.* In support of its joinder, the government relies on the following factors: (1) evidentiary overlap; (2) common *modus operandi*; (3) similar elements of offenses; and, (4) temporal proximity. Each factor will be addressed below.

First, the government argues that the "evidentiary overlap between the counts of the Indictment is significant." (Docket No. 298, p. 15, lns. 23-25).  The government argues that there is evidentiary overlap that supports the joinder of Counts 1 through 10 with Counts 11 through 36.  In its opposition, the government indicated that EA Employee 1, Mr. Avenatti's former office manager, would testify "regarding basically all counts of the Indictment." (Docket No. 298, p. 21, lns. 2-4).  This is insufficient to support joinder.

The government boldly claims, without any support, that each of the alleged wire fraud victims "would likely be needed to testify regarding elements of the remaining counts in the Indictment." (Doc. No. 298, p. 16, lns. 4-5).  The government indicates that Client 1 and Client 2 would need to testify regarding the wire fraud counts as well as Counts 11-18, 19, 21, 23, 24, 26, 26 and 27. The government further states that Client 3, 4, and 5 would also need to testify about "various tax charges and the bankruptcy fraud charges." This is simply untrue and is unsupported by any evidence or explanation.

As described in detail above, Counts 1 through 10 operate independently of Counts 11 through 36.  The testimony of alleged victims in Counts 1 through 10 in connection with Counts 11 through 36 is unnecessary and immaterial to its case-in-chief. The presentation of this evidence would be a waste of time and substantially delay a trial of Counts 11 through 36. The government need not call these alleged victims as witnesses to establish whether or not taxes were paid, the IRS was obstructed, or false statements were

7

made during Bankruptcy proceedings. The factor of evidentiary overlap is unpersuasive and supports Mr. Avenatti's argument that these counts were mis-joined.

Second, the government argues that Mr. Avenatti's *modus operandi* is nearly identical in carrying out his numerous and extensive financial frauds charged in the various counts of the Indictment. The government argues that Mr. Avenatti's willingness to lie and make false statements to obtain money, conceal money, and prevent the payment of money is common in all charges. This is, however, insufficient to support joinder.

In its opposition, the government provided three examples of the common *modus operandi.* The government claims that similar to the allegations that Mr. Avenatti lied to conceal embezzlement of client funds, he also lied during the EA LLP 2017 Bankruptcy proceeding. "As another example…" Mr. Avenatti allegedly made false statements to the alleged wire fraud victims "just as defendant provided false names and change bank accounts" to conceal GBUS' money. (Doc. No. 298, p. 22, lns. 5-8).

A common propensity to lie cannot act as a commonality supporting joinder of counts. Otherwise, the concept of mis-joinder in criminal cases would practically be rendered superfluous because nearly every criminal count could include an allegation of dishonesty. As described above, in *Jawara*, a case cited by the government, joinder was found to be improper. In that matter, a defendant's two separate instances of immigration fraud were insufficient grounds for joinder. Although both counts represented the same defendant's desire to defraud the government (i.e. commit dishonesty) and impede enforcement of the immigration laws, these grounds were insufficient for joinder. *U.S. v. Jawara*, supra at 574. Blanket statements that Mr. Avenatti had a willingness to lie and make false statements to obtain money do not support joinder. This factor weighs in favor of Mr. Avenatti's argument that these counts were mis-joined.

Third, the government incorrectly argues that the statutory offenses of wire fraud (Count 1-10) are bank fraud (Counts 31-32) are basically identical except for the

8

jurisdictional element.[6] In order to be found guilty of wire fraud, the government must prove that the accused participated in a scheme to defraud and used the wires to further the scheme. Ninth Cir. Crim. Jury Ins. 8.124. In order to be found guilty of bank fraud, the government must prove that the defendant devised a scheme to defraud a federally insured, financial institution, by way of a bribe or materially false promise, and the defendant acted with the intent to defraud. The commonality of a scheme of defraud does not make the elements of these two crimes "basically identical." This factor weighs in favor of Mr. Avenatti's argument that these counts were mis-joined.

Finally, the government argues that all counts overlap in time or occurred in succession between 2014 and 2019. Although the conduct alleged took place over the same five-year period, this temporal overlap is insufficient to support the joinder of all counts.

The government has failed to make an adequate showing that Counts 1 through 10 were properly joined with Counts 11 through 36. These counts are not of a similar nature and they were not part of a common plan or scheme. As a result, Mr. Avenatti requests that this Court find that these counts were mis-joined in violation of Federal Rule of Criminal Procedure 8.

### C.  Alternatively, Counts 1 through 10 should be severed from Counts 11 through 36 Pursuant to Rule 14

If this Court finds that counts in the Indictment were properly joined under Federal Rule of Criminal Procedure 8(b), the Court may still grant severance under Rule 14 if there is a "serious risk that a joint trial would … prevent a jury from making a reliable judgment about guilt or innocence." *Zafiro v. U.S.* 506 U.S. 534, 538-39 (1993). Based upon the analysis above, Mr. Avenatti asks that this Court find that the counts were mis-joined. Only if this Court finds that the counts were properly joined should the district court engage in the Rule 14 prejudicial balancing test.

---

[6] The government does not attempt to argue that Counts 11 through 30 or Counts 33 through 36 have similar elements.

9

Mr. Avenatti asks that this Court compare his matter to the similarly situated defendant in *U.S. v. Lin*, 326 F.R.D. 214 (N.D. Cal. 2018). There, defendant Lin was charged with six counts, including the filing of false tax returns, making false statements to the IRS as well as making false representations to financial institutions. Defendant Lin filed tax returns that failed to account for foreign bank accounts and false income reports. When approached by an IRS reporting agent about the reported amounts, the defendant indicated that the reported amounts were lies. Defendant Lin was also charged with making dozens of loan applications to various financial institutions reporting the improper income filed within défendant Lin's tax returns. The government argued that the counts were properly joined because of the overlap in evidence, the counts' temporal connection, and the financial commonality.

Defendant Lin argued that the tax counts were improperly joined with the financial institution counts in violation of Rule 8. The district court determined that the Indictment failed to connect the tax counts with the financial institution counts. The district court determined that although the counts related the defendant's financial life during overlapping time periods, the government failed to allege a sufficient nexus between the counts. *Id.* at 221. Accordingly, the district court determined that it need not perform the severance analysis under Rule 14 because the severance should be performed pursuant to Rule 8. *Id.* at 221.

However, if this Court does decide that the joinder was proper, Mr. Avenatti asks that this Court weigh the factors from *U.S. v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993):

(1) Whether the jury may reasonably be expected to collate and appraise the individual evidence; (2) The judge's diligence in instructing the jury on the limited purposes of evidence; (3) Whether the nature of the evidence and legal concepts involved are within the competence of the ordinary juror; and, (4) Whether the defendant could show a risk that the joint trial would prevent the jury from making a reliable judgment about guilt or innocence.

10

First, the jury cannot be expected to compartmentalize the thousands of likely exhibits for various, limited purposes. Because of the factual disparity between Counts 1 through 10 and Counts 11 through 36, almost all of the evidence would be introduced for limited purposes. It would be nearly impossible for the jurors to remember which document or piece of testimony was offered for which count. Indeed, prejudice may be found when it becomes likely that the jury will be unable to compartmentalize evidence in cases involving large amounts of discovery and multiple items of evidence introduced for limited purposes. *See, e.g., U.S. v. Ramirez*, 710 F.2d 535, 546 (9th Cir. 1983).

Second, regardless of the Court's ability to meaningfully instruct the jury, there is a substantial risk that the jurors would struggle to apply these instructions given the high volume of documents and other evidence proposed. Because of the amount of limiting instructions that would be provided, it is very likely that the voluminous nature of the jury instructions would be tantamount to no instructions at all.

Third, the nature of the evidence is confusing and each subject requires detailed explanations. Bankruptcy proceedings, personal and business tax filings, and applications for bank loans are all complicated subjects. Further, the evidence relating to each of the counts is confusing and complex.

Finally, hearing this case with all of the counts at once would prejudice Mr. Avenatti. Mr. Avenatti would be permitted to proceed to trial earlier on Counts 1 through 10 than on the remaining counts. Due to the government's persistence in proceeding to trial as soon as possible, Mr. Avenatti would be prejudiced by his inability to review the mountain of remaining discovery in this case and prepare a meaningful defense. Mr. Avenatti would also be prejudiced by the jury's view of him in connection with the myriad of unconnected allegations against him. The jury's view of Mr. Avenatti would be inherently tainted based solely on the volume of the information presented and the number of disparate charges. The jury would struggle to separate the conduct alleged against the various victims: his former clients, the IRS, the Peoples Bank, and the bankruptcy parties.

Pursuant to Federal Rule of Criminal Procedure Rule 14, "if the joinder of offenses … in an indictment … appears to prejudice a defendant or the government, the court may order separate trials of counts … or provide any relief that justice requires." Fed. R. Crim. Pro § 14(a). Rule 14 was created to provide defendants an additional layer of protection by permitting the severance of offenses that are otherwise properly joined under Rule 8. The decision to grant the request for severance lies solely with the district court. *Zafiro v. U.S. supra* at 538-39.

Based upon the foregoing, Mr. Avenatti requests that this Court find that the counts were improperly joined under Rule 8. However, if this Court finds that the counts were properly joined, Mr. Avenatti has provided this Court with a showing of real, likely prejudice supporting severance under Rule 14.

### D.     The Government's Proposed Severance is Illogical and Unacceptable

The government argues that Mr. Avenatti has had sufficient time to prepare for a trial on all counts that is currently scheduled to begin on December 8, 2020. In the same breath, the government also asserts that it would agree to a severance, if necessary, of the wire fraud and bankruptcy counts (Counts 1-10, 33-36) from the remaining counts of the Indictment (Counts 11-32). The government falsely and baldly asserts that Counts 1-10 and Counts 33-36 have the most significant overlap of evidence and witnesses, and "trying these charges together would be necessary to tell a comprehensive and cohesive story of defendant's criminal conduct." (Doc. No. 298, p. 24). The government further argues that this *limited* severance would only be appropriate if the trial on these fourteen counts proceeds on December 8, 2020, "or at least by January 26, 2021 if the present circumstances related to COVID-19 prevent the trial starting as scheduled." *Id.*

The government's effort aimed at a "compromise" falls flat. First, no substantial connection between Counts 1 through 10 and the bankruptcy counts (33-36) has been shown by the government in its opposition. Of all the counts having a plausible connection with Counts 1 through 10 based on a plain reading of the Indictment, Counts 33-36 have

12

the least plausible connection.  Indeed, it is frankly bizarre that the government would pick the bankruptcy counts to try with the embezzlement counts because there is no reasonable logical connection or basis substantiating such a proposal.

Second, there are so many conditions attendant to the government's proposal that it is rendered superfluous and illusory. The severance of various counts should not be wholly dependent on the timing of the trial nor should it be contingent and subject to change depending on the trial date.

Third, under the government's proposal, the government would still be permitted to admit and use the same scope and amount of evidence in the first trial as they would otherwise be able to use if all 36 counts were being tried together. This makes no sense and would accomplish little to nothing.

Fourth, the defense has not moved for the severance of Counts 1 through 10 <u>and 33 through 36</u> from the remainder of the counts in the indictment. The defense's motion asked for specified relief clearly articulated in the motion – the severance of Counts 1 through 10 from all of the remaining counts in the Indictment.  Accordingly, the defense will not consent to the government's proposal set forth in the opposition and objects to it.

## III.   **CONCLUSION**

For each of the above reasons, Mr. Avenatti respectfully requests that the Court grant the motion and sever Counts 1 through 10 from Counts 11 through 36.

Dated: October 2, 2020

Respectfully submitted,

/s/ H. Dean Steward
 H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

13

## <u>CERTIFICATE OF SERVICE</u>

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672. I am not a party to the above-entitled action. I have caused, on October 2, 2020, service of the:


on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA JULIAN ANDRE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 2, 2020

/s/ H. Dean Steward

H. Dean Steward

14