NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6683
Facsimile: (213) 894-6269
Email: Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
Ronald Reagan Federal Building
411 West Fourth Street, Suite 8000
Santa Ana, California 92701
Telephone: (714) 338-3598
Facsimile: (714) 338-3708
Email: Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL JOHN AVENATTI,

Defendant.

No. SA CR 19-061-JVS

REPLY BRIEF IN SUPPORT OF THE GOVERNMENT'S CONSOLIDATED MOTION *IN LIMINE* TO ADMIT EVIDENCE OF DEFENDANT MICHAEL JOHN AVENATTI'S OTHER ACTS, CRIMES, AND WRONGS, AND TO ADMIT EVIDENCE OF DEFENDANT'S PRIOR CONVICTIONS IF DEFENDANT TESTIFIES AT TRIAL

Hearing Date: October 19, 2020
Hearing Time: 9:00 a.m.
Location: Courtroom of the Hon. James V. Selna

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Julian L. André and

Brett A. Sagel, hereby files its reply in support of the government's consolidated motion in limine to admit evidence of defendant MICHAEL JOHN AVENATTI's ("defendant") other acts, crimes, and wrongs, and to admit evidence of defendant's prior convictions should he testify at trial (CR 284).

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 5, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

/s/
JULIAN L. ANDRÉ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION PAGE

TABLE OF AUTHORITIES....................ii

MEMORANDUM OF POINTS AND AUTHORITIES....................1

I. INTRODUCTION....................1

II. ARGUMENT....................1

A. Defendant's Primary Arguments are Irrelevant....................1

B. Other-Acts Evidence Will Not Meaningfully Prolong the Trial....................3

C. Evidence of Defendant's Fraudulent Intent is Critical.....4

D. Defendant's Embezzlement of the NFL Settlement Funds......5

E. Defendant's Failure to Pay EA LLP's Payroll Taxes.........7

F. Defendant's Failure to Pay State Taxes for Global Baristas....................8

G. Defendant's Other Acts During the 2017 EA Bankruptcy......8

H. Defendant's Additional False Statements....................11

I. Defendant's Fraud and Extortion Convictions in the SDNY....................12

III. CONCLUSION....................12

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**FEDERAL CASES**


Huddleston v. United States, 485 U.S. 681 (1988) .......... 4, 10

In re Khalil, 578 F.3d 1167 (9th Cir. 2009) .......... 5

In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB (C.D. Cal.) .......... 8

Obrey v. Johnson, 400 F.3d 691 (9th Cir. 2005) .......... 3

United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982) .......... 5

United States v. Collicott, 92 F.3d 973 (9th Cir. 1996) .......... 10

United States v. Curtin, 489 F.3d 935 (9th Cir. 2007) (en banc) .......... 4

United States v. DeCinces, 808 F.3d 785 (9th Cir. 2015) .......... 3, 4, 5

United States v. Glenn, 667 F.2d 1269 (9th Cir. 1982) .......... 12

United States v. Hadley, 918 F.2d 848 (9th Cir. 1990) .......... 4

United States v. Jones, 982 F.2d 380 (9th Cir. 1992) .......... 4

United States v. Loftis, 843 F.3d 1173 (9th Cir. 2016) .......... 2

United States v. Lothian, 976 F.2d 1257 (9th Cir. 1992) .......... 5

United States v. Mundi, 892 F.2d 817 (9th Cir. 1989) .......... 2

United States v. Ortega, 203 F.3d 675 (9th Cir. 2000) .......... 10

United States v. Romero, 282 F.3d 683 (9th Cir. 2002) .......... 10

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION PAGE

United States v. Siegel, 536 F.3d 306 (4th Cir. 2008)....................................4, 10

United States v. Smith, 623 F.2d 627 (9th Cir. 1980)....................................12

United States v. Williams, 989 F.2d 1061 (9th Cir. 1993)....................................2

**FEDERAL STATUTES**

26 U.S.C. § 7202....................................................7

26 U.S.C. § 7203....................................................7, 11

**FEDERAL RULES**

Fed. R. Evid. 106....................................................10

Fed. R. Evid. 403....................................................3, 7

Fed. R. Evid. 404(b)....................................................passim

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

For nearly a decade, defendant MICHAEL JOHN AVENATTI ("defendant") engaged in an extensive pattern of interconnected financial fraud and tax offenses. The government has moved to admit at trial five categories of evidence relating to defendant's additional criminal conduct, wrongs, and other acts, which were not specifically identified in the Indictment on the basis that defendant's other acts fall squarely within the charged offenses, are inextricably intertwined with the charged offenses, or, alternatively, are admissible under Federal Rule of Evidence 404(b). The government has also sought to admit, if defendant testifies at trial, his prior fraud and extortion convictions in the Southern District of New York ("SDNY") under Federal Rule of Evidence 609.

Defendant has failed to present any legitimate legal basis for why the highly probative evidence regarding defendant's state of mind, such as his knowledge, intent, and motive, should not be admitted at trial. Instead, defendant relies on irrelevant arguments regarding his "unique" personal history and the jury pool, complains about the government's charging decisions, misconstrues the applicable legal standards, and incorrectly claims that the admission of the evidence will substantially prolong the trial. The government's motion should be granted.

## II. ARGUMENT

### A. Defendant's Primary Arguments are Irrelevant

Defendant wants the Court to "keep in mind the unique position and background of defendant." (CR 297 at 3-5.) In other words, defendant wants the Court to believe that defendant is special -- he

is not. Defendant's arguments regarding the President of the United States' tweets, the purported political views of Orange County residents, and how many times defendant's name appears in a Google search (id.) are irrelevant to the evidentiary issues before this Court.

Defendant's repeated attacks on the government's charging decisions (id. at 2, 13, 16, 19) are also irrelevant. The government is not, as defendant suggests, precluded from presenting evidence regarding uncharged conduct merely because it has not sought a superseding indictment. See United States v. Loftis, 843 F.3d 1173, 1178 (9th Cir. 2016) (holding that "uncharged transactions . . . would not be subject to exclusion under Rule 404(b)"); United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) (holding uncharged acts do not become Rule 404(b) evidence "simply because the defendant is indicted for less than all of his actions"); United States v. Mundi, 892 F.2d 817, 820 (9th Cir. 1989) (holding evidence regarding uncharged fraud victims admissible as evidence of charged scheme). Indeed, in Mundi, the Ninth Circuit directly rejected a claim that evidence of other acts must be excluded at trial because a defendant has a right to be tried only on the charges in the indictment. Id.

Finally, defendant's pending severance motion has no bearing on whether the other-acts evidence is admissible. The government has already said it would agree to a limited severance with the goal of limiting the length of each trial if the Court's operations are still impacted by COVID-19. (CR 298 at 2, 23.) But a severance, if granted, should not preclude the government from introducing otherwise admissible evidence regarded any severed counts.

**B. Other-Acts Evidence Will Not Meaningfully Prolong the Trial**

Defendant's claim that the introduction of the other-acts evidence would prolong the trial by "weeks, if not months" (Opp. at 2) is meritless. Almost all of the witnesses necessary to prove the other acts are already scheduled to testify at trial, and most of the documentary evidence will be admitted for other purposes. (Mot. at 3.) Indeed, the government has sought to admit only evidence of other acts that can be introduced efficiently and effectively, and is not seeking to admit other categories of evidence it referenced in its February 2020 notice (Gov't Ex. 1), such as evidence regarding defendant's post-indictment fraudulent conduct. (<u>See</u> Mot. at 8, n.2, 23, n.10.) Defendant's excessive "three month" trial estimate is merely an effort to prevent the admission of compelling admissible evidence regarding defendant's state of mind and fraudulent intent.

Moreover, the time required to introduce the other-acts evidence would only be "waste[d]" if the evidence lacks meaningful probative weight, for example because it is merely cumulative. <u>See generally</u> Fed. R. Evid. 403; <u>see also</u> <u>Obrey v. Johnson</u>, 400 F.3d 691, 698-99 (9th Cir. 2005) ("[N]one of the testimony that the appellant attempted to offer into evidence so clearly involved delay that was 'undue' or a 'waste of time' or was cumulative of other evidence that it was excludable."). Material evidence should not be excluded merely because it might prolong a trial. Indeed, in <u>United States v. DeCinces</u>, the Ninth Circuit rejected this same argument, holding that admission of other-acts evidence would not result "in '<u>undue</u> delay' or '<u>wasting</u> time' . . . in light of the significant probative value of this evidence." 808 F.3d 785, 791-92 (9th Cir. 2015) (citing Fed. R. Evid. 403); <u>see also</u> <u>United States v. Siegel</u>, 536 F.3d 306, 320-21

(4th Cir. 2008) (reversing exclusion of uncharged fraudulent conduct despite the concern that the admission of the evidence would extend the trial). Here, the evidence sought to be admitted is highly probative; thus, the time required to admit such evidence is not a proper basis for exclusion. And, to the extent the Court has concerns regarding the time required to admit such evidence, it can impose "appropriate limits" at trial. DeCinces, 808 F.3d at 792.

**C. Evidence of Defendant's Fraudulent Intent is Critical**

Defendant's opposition largely ignores the government's primary purpose for admitting evidence of the uncharged conduct -- the need to prove defendant's state of mind and fraudulent intent. As the Supreme Court explained in Huddleston v. United States, 485 U.S. 681, 685 (1988), "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Even if a defendant does not present any evidence to dispute intent or knowledge, the government must establish those facts beyond a reasonable doubt. Accordingly, evidence of other bad acts is admissible to prove those essential elements. See United States v. Jones, 982 F.2d 380, 382 (9th Cir. 1992); accord United States v. Hadley, 918 F.2d 848, 852 (9th Cir. 1990) (government's burden not relieved by defendant's promise not to pursue argument on material issues of intent or knowledge).

"[C]ontextual and circumstantial evidence [can be] acutely relevant to a defendant's material state of mind . . . such evidence is not only admissible, but may be critical." United States v. Curtin, 489 F.3d 935, 952 (9th Cir. 2007) (en banc). That is

especially true in fraud cases because "[i]t is often difficult to prove fraudulent intent by direct evidence and it must be inferred in such cases from a pattern of conduct or a series of acts." United States v. Lothian, 976 F.2d 1257, 1267 (9th Cir. 1992) (internal quotation marks and citation omitted); accord In re Khalil, 578 F.3d 1167, 1168-69 (9th Cir. 2009) (affirming based on "substantial circumstantial evidence of . . . fraudulent intent" because "[f]raudulent intent may be inferred from a pattern of behavior"). As such, in fraud cases, evidence that "tends to support the government's allegations about the defendants' intent, plan, knowledge, or lack of mistake" is considered "highly probative." DeCinces, 808 F.3d at 791.

Here, as set forth in the government's motion, the other-acts evidence sought to be admitted all bears directly on defendant's knowledge, plan, and fraudulent intent, and will rebut any claim that defendant's criminal conduct was merely a mistake or accident. "All evidence which tends to establish the guilt of a defendant is, in one sense, prejudicial to that defendant, but that does not mean that such evidence should be excluded." United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982).

**D. Defendant's Embezzlement of the NFL Settlement Funds**

The government has sought to admit evidence that defendant embezzled a portion of a $1.55 million settlement payment meant to benefit approximately 200 clients (the "Super Bowl Clients") he represented in connection with litigation against the National Football League ("NFL"). Defendant does not and cannot meaningfully dispute that the theft of the Super Bowl Clients' settlement funds falls squarely within the scope of the alleged scheme to defraud, and

instead simply states the "government's showing is inadequate" and the evidence is "not necessary." (Opp. at 8.)

Defendant also claims that evidence regarding defendant's theft of the NFL settlement funds is not inextricably intertwined with the two bankruptcy fraud charges (Counts 33 and 36) that directly involve the receipt of the NFL settlement funds because the "government can attempt to establish [the receipt of the funds] by way of the bank records alone." (Opp. at 9.) That is not the standard for inextricably-intertwined evidence. The government has a right to "offer a coherent and comprehensible story regarding the commission of the crime." Loftis, 843 F.3d at 1178 (citations omitted). The fact that defendant stole (or at a minimum failed to pay) the vast majority of the Super Bowl Clients' settlement funds is critical evidence as to defendant's state of mind and establishes a clear motive for the charged bankruptcy offenses.[1]

Nor would the proposed evidence significantly lengthen the trial. Almost all of this evidence will already be introduced in connection with Counts 33 and 36. The only additional evidence would be brief testimony from approximately two of the Super Bowl Clients to confirm they were never paid, and further summary testimony regarding the disposition of the settlement proceeds (Gov't Ex. 2).

Defendant's threat to call all 200 Super Bowl Clients in his defense in response to this evidence is absurd. First, at least 165 out of the approximately 200 clients would testify that they never received any settlement payments from defendant. Second, defendant

[1] The receipt of these funds, and defendant's use for his other purposes, is also direct evidence as to the tax charges (Counts 23, 26, and 29). The fact that this evidence may not be absolutely necessary to prove defendant's guilt (Opp. at 9) is irrelevant.

attempting to call 200 additional witnesses in an attempt to impeach those witnesses would in fact be cumulative, improper, and a waste of time. The only person trying to turn this straight-forward issue into a mini-trial is defendant.

Finally, although the government recognizes that many people like football (Opp. at 10), that fact alone does not establish "unfair prejudice" under Rule 403. And, if the Court finds that the evidence falls within the charged scheme (as it should), the Rule 403 analysis is largely unnecessary.

**E. Defendant's Failure to Pay EA LLP's Payroll Taxes**

There is no merit to defendant's objection to the introduction of evidence regarding defendant's failure to pay Eagan Avenatti LLP's ("EA LLP") payroll taxes. The "commonality" between this evidence and the existing tax charges is not limited to defendant's obligation to pay taxes. (Opp. at 12.) Defendant's failure to pay EA LLP's payroll taxes between 2015 and 2017 directly coincides with defendant's failure to pay Global Baristas US LLC's ("GBUS") payroll taxes. And the fact that he failed to pay GBUS's payroll taxes and failed to file tax returns for himself and his companies after an IRS revenue officer expressly discussed these obligations with him in October 2015 proves that defendant acted willfully, which is an element of most of the tax charges. See 26 U.S.C. §§ 7202, 7203.

Nor is there merit to defendant's claim that this evidence will confuse the jury. There is nothing confusing about the fact that in 2015 an IRS revenue officer told defendant that he was required to pay EA LLP's payroll taxes and file tax returns. There is nothing confusing about the fact that defendant personally signed a stipulation admitting that he had failed to pay $2,389,005 in payroll

taxes and penalties to the IRS (Gov't Ex. 3). And there is nothing confusing about the fact that defendant stole Client 4's money and then used that money to pay part of his debt to the IRS. This evidence, which will not take long to introduce, is undoubtedly inextricably intertwined with the charged offenses, is highly probative, and must be admitted.

**F. Defendant's Failure to Pay State Taxes for Global Baristas**

Defendant's failure to pay GBUS's state taxes is inextricably intertwined with the GBUS-related tax charges (Counts 11 to 19). As the government noted in its motion, defendant failed to pay these state tax obligations at the same time he failed to pay GBUS's federal payroll taxes. And numerous GBUS employees (all of whom are already scheduled to testify at trial), will explain that defendant refused to authorize GBUS to pay both the state and federal taxes. (See Ex. 4.) This evidence is direct proof that defendant acted willfully and was a "responsible person" for GBUS.

Defendant's primary argument in opposition to this evidence is that it is not alleged in the indictment and therefore is separate. (Opp. at 13.) As discussed above, whether the conduct is alleged in the indictment is irrelevant to the inextricably-intertwined and/or Rule 404(b) analysis. And contrary to defendant's claim, the introduction of this evidence will be simple and straightforward, and largely consist of a few additional questions for the GBUS employees already scheduled to testify. Indeed, it would likely be harder to avoid this topic, than to address it.

**G. Defendant's Other Acts During the 2017 EA Bankruptcy**

The government seeks to introduce evidence that in connection with In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB (C.D. Cal.) (the

"2017 EA Bankruptcy") defendant arranged for an individual (Gerald Tobin) to file the involuntary bankruptcy petition, submitted to the United States Bankruptcy Court a settlement agreement that contained a forged signature, and made additional false statements. Again, defendant primarily argues that this evidence should not be admitted because it is "not necessary." (Opp. at 16.) But this evidence does not need to be "necessary"; merely probative. Nor is there any merit to defendant's claim that this conduct is "entirely unrelated." (Opp. at 16.) Here, the evidence of defendant's additional fraudulent conduct is critical to establishing defendant's state of mind and fraudulent intent, and to tell a comprehensive and complete story regarding the existing bankruptcy fraud charges (Counts 33 to 36). Indeed, this evidence clearly demonstrates that defendant's intent and plan throughout the 2017 EA Bankruptcy was to "deceive [his] creditors, the trustee, and the bankruptcy judge," which is an element of the bankruptcy fraud charges. The government is not seeking to make its presentation of evidence "more complex than it needs to be" (Opp. at 16); it is seeking to introduce highly probative evidence that bears directly on an element of the offenses.

Defendant also argues that introducing the testimony of Lawyer 1, but not Tobin would be improper and prejudicial. Defendant cites no case law to support this position. The government is calling Lawyer 1 to testify because it was Lawyer 1 who discussed the filing of the petition with defendant, and then, at defendant's request, assisted Tobin with the filing. The government is not required to present any additional evidence. Indeed, the relevant standard of proof for admission of evidence under Rule 404(b) (to the extent it applies here) is a "low threshold," United States v. Romero, 282 F.3d

683, 688 (9th Cir. 2002), essentially less than a preponderance showing, Huddleston, 485 U.S. at 691. The question is really whether the jury could possibly find the fact. Huddleston, 485 U.S. at 690-691; see also Siegel, 536 F.3d at 319 ("Evidence is reliable for purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror.") (internal quotations and citations omitted). In any event, defendant will be able to cross-examine Lawyer 1 at trial.[2]

Defendant also complains that the government should not be allowed to introduce other excerpts of defendant's Section 341 debtor's examination due to the rule of completeness. (Opp. at 17 (citing Fed. R. Evid. 106).) To be clear, the government will be admitting many of defendant's under oath statements throughout the trial for various purposes under Federal Rule of Evidence 801(d)(2). But Rule 801(d)(2) does not go both ways. Although the government may present evidence regarding defendant's statements, defendant's statements offered by him are inadmissible hearsay. United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (non-self-inculpatory statements, even if made contemporaneously with other self-inculpatory statements, are inadmissible hearsay); United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (holding that Rule 106 does not compel admission of otherwise inadmissible hearsay).

Finally, defendant's argument that the filing of the forged settlement agreement is irrelevant because there is no evidence defendant himself forged the document (Opp. at 14) is a red herring.

---

[2] Defendant attacks on Tobin's credibility are unsurprising. (Opp. at 15.) Indeed, defendant likely sought to have Tobin to file the involuntary petition for those very reasons.

The fact that defendant knowingly submitted a forged document to the bankruptcy court and then lied about it under oath is, by itself, compelling and highly probative evidence of his fraudulent intent.

**H. Defendant's Additional False Statements**

The government intends to introduce into evidence a number of additional false statements defendant made under oath, including false statements regarding defendant's taxes and the victim-clients in this case. Defendant's objections to this evidence are meritless.

First, defendant's false testimony regarding Client 1 during the judgment-debtor examinations is alleged in the indictment as an integral part of the fraudulent scheme (Indictment ¶ 7(k)), and constitutes direct proof of defendant's knowledge and fraudulent intent. Defendant provides no basis for the Court to exclude this evidence, which is directly referenced in the indictment.[3]

Second, defendant's repeated false statements regarding the filing of tax returns is directly relevant to prove defendant's knowledge and intent. The government is not merely required to prove that the tax returns were not filed; it must prove that defendant acted willfully. See, e.g., 26 U.S.C. § 7203. The fact that defendant repeatedly lied about filing the returns is highly probative as to this element of the tax offenses.

Third, defendant again objects to the introduction of his own under oath statements under the rule of completeness (Rule 106) and claims he may need to introduce "the entire proceeding" in response.

---

[3] Defendant does not specifically reference his prior false statements regarding Client 4. Instead, defendant objects to Exhibits 9 and 10 to the government's motion on hearsay grounds. (Opp. at 1, n.2.) Those documents do not constitute hearsay because they would not be admitted for the truth of the matter asserted under Rule 801(c)(2), but instead to establish defendant's knowledge.

(Opp. at 20.) This argument is frivolous. That is not how the rule of completeness or the hearsay rules work. (See supra § II.G at 10.)

Finally, the introduction of this highly probative evidence would not be unduly time consuming. Defendant's prior false testimony directly relates to the conduct alleged in the indictment; thus, the only additional evidence required would be the introduction of the statements themselves. Defendant's claim that he will need to "re-litigate" unspecified issues relating to the judgment-debtor examinations is nothing more than an empty threat.

**I. Defendant's Fraud and Extortion Convictions in the SDNY**

The government has sought to admit evidence that defendant was convicted of honest services wire fraud and extortion in the SDNY, under Rule 609(a)(2), if defendant testifies at trial.[4] Defendant does not dispute that these convictions involved "a dishonest act or false statement." Thus, under Rule 609(a)(2), defendant's prior convictions are "automatically admissible," regardless of their probative value or prejudicial effect. United States v. Glenn, 667 F.2d 1269, 1272 (9th Cir. 1982). Defendant's arguments regarding prejudice or jury confusion are irrelevant. Moreover, the SDNY guilty verdict may be used to impeach defendant regardless whether a judgment has been entered or defendant has been sentenced. United States v. Smith, 623 F.2d 627, 630-31 (9th Cir. 1980).

**III. CONCLUSION**

For the foregoing reasons, the government's motion should be granted.

---

[4] As the government is not seeking to admit evidence relating to defendant's conviction under Rule 404(b) or Rule 608, it is unclear why defendant addressed those issues in his opposition.