H. Dean Steward (SBN 85317)
107 Avenida Miramar, Ste. C
San Clemente, California 92672
Telephone: 949-481-4900
Facsimile: 949-496-6753

Attorney for Defendant,
MICHAEL JOHN AVENATTI

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL JOHN AVENATTI,<br><br>    Defendant. | CASE NO.: SA-CR-19-61-JVS<br><br>DEFENDANT'S REPLY TO THE GOVERNENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY; AND, REQUEST FOR A *DAUBERT* HEARING<br><br>Date: October 19, 2020<br>Time: 9:00 a.m. |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this Reply to the Government's Opposition to Mr. Avenatti's Motion *In Limine* to Exclude Expert Witnesses and Request for a *Daubert* Hearing. Defendant's reply is based on the attached memorandum of points and authorities; the files, records and transcripts in this case; and such further evidence and argument as the Court may permit at a hearing on this matter.

Dated: October 5, 2020

Respectfully submitted,

/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................iii

POINTS AND AUTHORITIES..........................................................1

    I.    INTRODUCTION.................................................................1

    II.    ARGUMENT.........................................................................1

        A. The Testimony of John Drum Should be Excluded......................2

        B. The Testimony of Kevin Mohr Should be Excluded...................7

        C. The Testimony of Traci Kaas Should be Excluded....................10

        D. The Defense Requests a *Daubert* Hearing..............................13

    III.    CONCLUSION....................................................................14

CERTIFICATE OF SERVICE..........................................................15

ii

# TABLE OF AUTHORITIES
**FEDERAL CASES**

*Crawford v. Washington*,
541 U.S. 36 (2004)..................................................................................5, 6

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).....................................................................................13

*Artista Networks, Inc. v. Cisco Sys.*,
2006 U.S. Dist. LEXIS 38430 (N.D. Cal. 2006)...........................................8

*Bernstein v. Bernstein, Litowitz Berger & Grossman LLP*,
814 F.3d 132 (2d Cir. 2016)..........................................................................9

*Campbell Indus. V. M/V Gemini*,
619 F.2d 24 (9th Cir. 1980).........................................................................11

*Englebrick v. Worthington Indus.*,
2016 U.S. Dist. LEXIS 184199 (C.D. Cal. 2016).........................................8

*English Feedlot, Inc. v. Norden Lab., Inc.*,
833 F. Supp. 1498 (D. Colo 1993)..............................................................12

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998..................................................................................................9

*Hewlett-Packard v. EMC Corp.*,
330 F. Supp. 2d 1087 (N.D. Cal. 2004)......................................................11

*Ito v. Bringhton/Shaw, Inc.*,
2008 U.S. Dist. LEXIS 71076 (E.D. Cal. 2008)...........................................9

*Mannick v. Kaiser Found. Health Plan Inc.*,
2018 U.S. Dist. LEXIS 228820 (N.D. Cal. 2018).........................................8

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir 2005)..................................................................8

*Perfect 10 v. Giganews, Inc.*,
2014 U.S. Dist. LEXIS 185066 (2014)...............................................12

*U.S. v. Cazares*,
788 3d. 956 (9th Cir. 2015)..................................................................6

*U.S. v. Johnson*,
594 F.2d 1253 (9th Cir. 1979)..............................................................3

*U.S. v. Meyers*,
847 F.2d 1408 (9th Cir. 1988)..............................................................3

*U.S. v. Rizk*,
660 F.3d 1125 (9th Cir. 2011)..............................................................3

STATE CASES

*Birbrower, Montalbano, Condon & Frank v. Superior Court*,
17 Cal. 4th 119 (1998).........................................................................8

*Howard v. Babcock*,
6 Cal 4th 409 (1993)............................................................................8

RULES

California Business & Professions Code 6076.........................................8

California Business & Professions Code 6077.........................................8

Federal Rule of Evidence 615..................................................................6

Federal Rule of Evidence 702...........................................................*passim*

Federal Rule of Evidence 704...........................................................*passim*

Federal Rule of Evidence 1006............................................................3,7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On September 14, 2020, Mr. Avenatti, through his counsel of record, filed a Motion *in Limine* to Exclude Expert Testimony; and Request for a *Daubert* Hearing. (Document Number 285). In its motion, the defense objected to the testimony of John Drum, Kevin Mohr, and Traci Kaas. The defense also requested a formal *Daubert* hearing.

On September 16, 2020, the government filed an opposition. (Document No. 293). In its opposition, the government defends the proposed testimony from three professed experts: John Drum, Kevin Mohr, and Tracy Kaas. The government also argues that a *Daubert* hearing is unnecessary. On September 28, 2020, the government filed Exhibit 1 under seal in connection with its opposition. Exhibit 1 consists of a variety of graphics.

Based upon the following analysis of each proposed witness, Mr. Avenatti asks that this Court exclude, or drastically limit, these purported experts' testimony.

## II. ARGUMENT

The proper scope of an expert's testimony is delineated by Federal Rule of Evidence 702. The Rule provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:

A. The expert's scientific, technical, or *other specialized knowledge will help the trier of fact understand the evidence or to determine a fact in issue*;
B. The testimony is based on sufficient facts or data;
C. The testimony is the product of reliable principles and methods."

Fed.R.Evid. 702 (emphasis added). The party seeking to rely on expert testimony

- 1 -

bears the burden of establishing, by a *preponderance of the evidence*, that all requirements have been met. Based upon the following analysis of each proposed expert, the prosecution has failed to meet its burden. Mr. Avenatti respectfully requests that the Court exercise its gate-keeping functions and exclude the testimony of John Drum, Kevin Mohr, and Tracy Kaas.

### A. The Testimony of John Drum Should be Excluded

In Mr. Avenatti's initial motion to exclude expert testimony, the defense argued that Mr. Drum's testimony as both a fact witness and an expert witness is improper.

Summary Evidence: In addition to the expert testimony of John Drum, the government seeks to use John Drum to lay the foundation for exhibits that attempt to summarize **thousands of documents and hundreds of thousands of pages.** The government claims that the following categories of materials are covered by these *thousands of documents*:

1. The amounts EA LLP and Mr. Avenatti owed to each victim-client at the time of the settlements by subtracting the attorneys' fees due to EA LLP under the attorney-client fee contracts, as well as any costs and expenses owed to the firm, from the total settlement.

2. Financial reports reflecting the settlement funds EA LLP and Mr. Avenatti received on behalf of the alleged victim-clients.

3. Financial records demonstrating that the lulling payments made to the alleged victim-clients were derived from other sources.

4. The amount of funds that Mr. Avenatti's various businesses received.

5. Financial records evidencing movement of money among Mr. Avenatti's bank accounts and his various businesses.

6. Funds transferred from Mr. Avenatti's various businesses to his personal bank accounts.

*First,* the defense does not concede to the admission of the summary exhibits proposed by the government. Federal Rule of Evidence 1006 permits the admission of summaries based upon "voluminous records" that cannot be readily presented in in a manner that the jury would comprehend. *U.S. v. Rizk,* 660 F. 3d 1125, 11127 (9th Cir. 2011). Prior to the admission of summary exhibits, a proponent of summary evidence must establish that the underlying materials upon which the summary is based (1) are admissible in evidence, and (2) were made available to the opposing party for inspection. *Id.* The government has provided counsel the summaries it seeks to introduce at trial. However, the government has failed to establish that the underlying documents are admissible.

Within the government's proposed exhibits, it references massive amounts of pages that the materials purportedly summarize. The bates numbers referenced on the proposed exhibits constitute thousands of documents and hundreds of thousands of pages worth of materials. In its opposition, the government agrees that "the underlying documents must be admissible and be made available to the opposing party." (Document No. 299, p. 9). Without any analysis, however, the government conclusively states that "both requirements are satisfied here." (Document No. 299, p. 9, line 14). The proponent of the summaries has failed to "establish that the underlying materials upon which the summary is based are admissible in evidence." *U.S. v. Meyers,* 847 F.2d 1408, 1412 (9th Cir. 1988); See also *U.S. v. Johnson,* 594 F.2d 1253, 1255 (9th Cir. 1979).

The government's mere blanket assertions that admissibility of these documents is "satisfied here" is improper. The government, acting as the proponent of this evidence, must detail how these documents are admissible. The government

- 3 -

has failed to clarify <u>how</u> a foundation will be laid and how it intends on overcoming a hearsay objection. Accordingly, the government has failed to establish that the underlying materials are admissible. Accordingly, these summaries cannot be admitted. It is not Mr. Avenatti's burden to establish the admissibility of this evidence.

Lack of Qualifications & Expertise: *Second,* the defense previously objected to Mr. Drum's testimony based upon his lack of qualifications, the unknown methodology he seeks to use, the documentation Mr. Drum relied on when forming his opinion, and his ability to meaningfully assist the trier of fact. In response, the government summarily claims that "there is no basis for defendant's concerns about ultimate-issue testimony, the Confrontation Clause, or use of hearsay." (Docket No. 299, p. 11).

The government argues that Mr. Drum has the training and experience necessary to allow for him to testify as an expert witness. The government supports Mr. Drum's expertise claiming that he is a licensed certified public accountant in Illinois (but apparently not California). Seemingly defending Mr. Drum's lack of experience, the government claims that he is "not going to opine on the fair market value of property, determine profit-ability, or interpolate, extrapolate or estimate.." (Docket No. 299, at 12). Instead, the government claims that he will be performing "simple arithmetic, primarily adding and subtracting financial data..." *Id.* If Mr. Drum's abilities are this basic, it is unclear why his "expert testimony" is needed to begin with. Indeed, this is not the proper subject for expert testimony.

In the defense's initial motion, Mr. Avenatti also requested that the government provide specific citations to cases where Mr. Drum has testified as an expert witness. Instead of providing the defense with this material, the government simply claims that Mr. Drum has "previously worked as an analysis on a confidential Ponzi-scheme case..." without any reference to that case or any other

- 4 -

cases in which Mr. Drum has provided expert testimony or been qualified as an expert. *Id.* Similarly, the government has ignored the defense's requests for any peer-reviewed writings, any proof of a licensing agency that regulates his status as a CPA in California, or any experience he may have as it relates to financial analysis of large companies or law firms. The government also failed to offer any proof in connection with Mr. Drum's methodology.

The defense renews its objections and asserts that Mr. Drum is not qualified to perform an analysis of Mr. Avenatti's personal and business expenses or serve as an expert in this case on any topic.

<u>Confrontation Clause:</u> The proposed documents that Mr. Drum seeks to rely on are inherently biased, testimonial and are in violation of the Confrontation Clause.

In preparation for his testimony, the government provided Mr. Drum with several witness summaries that were prepared by federal actors, either prosecutors or agents. These summaries were meant to provide Mr. Drum with a *background* on this case. If Mr. Drum is permitted to testify regarding the facts he learned from these summarized interviews, the defense will be deprived of the ability to perform cross-examination on the individuals whose interviews were summarized. The inability to cross examine these witnesses is in direct violation of the Confrontation Clause of the Sixth Amendment. *See Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

In response to the defense's objection, the government indicated that "to the extent Mr. Drum's expected testimony relies on hearsay at all, it is entirely foundational; he's reviewed a small number of witness-interview summaries in order to confirm basic facts…" (Docket No. 299, p. 11). Although Mr. Drum only relied on *a few* summaries, these statements are testimonial in nature and are protected by the Confrontation Clause.

- 5 -

The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. 6. The United States Supreme Court has made it clear that *out of court* statements by witnesses that are testimonial in nature are barred by Confrontation Clause, unless the witnesses are unavailable and the defendant had the prior opportunity to cross-examine the witness. *Crawford*, supra at p. 54. An expert witness may not rely upon and recite testimonial hearsay as this conduct violates the right to confrontation. *Miranda v. Montgomery*, 2020 U.S. Dist. LEXIS 153359, at *19 (C.D. Cal. 2020). An expert may not "relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." *Delgado v. Madden*, 2020 U.S. Dist. LEXIS 154341, at *25 (C.D. Cal. 2020)(citing *People v. Sanchez*, 63 Cal. 4th 665, 685 (2016)).

The summaries that Mr. Drum seeks to rely on are testimonial as they were made in the course of an investigation and for the primary purpose of establishing events for the purposes of a criminal prosecution. *See U.S. v. Cazares*, 788 3d. 956, 962 (9th Cir. 2015). Therefore, the summaries of these statements cannot be admitted through Mr. Drum's review of them, no matter how cursory.

The government argues that Mr. Drum's review of these materials is harmless because the alleged wire fraud victims will testify regarding the same facts within the summaries provided to him. The government argues that "if he testifies after the victim-clients and is able to watch their testimony, these background facts will not be hearsay at all." (Document No. 299, p. 12). The government understands Mr. Drum will not be permitted to watch the testimony of the alleged wire fraud victims. At a party's request, "the court must order witnesses excluded so that they cannot hear other witnesses' testimony..." Fed. R. Evid. 615. Therefore, Mr. Drum's review of the witness summaries is his only foundation for this case.

- 6 -

Without his review of these testimonial statements, Mr. Drum does not have a foundation for which his testimony is based.

Documents Reasonably Relied Upon by Expert: The government also argues that the witness statements providing background information are "the type of foundational background information that is 'reasonably relied on" by financial experts when performing financial analyses. Fed. R. Evid. 703." (Document No. 299, p. 12). Witness statements are not the types of evidence that financial experts rely on in performing financial analyses. For the purposes of Rule 703, the types of evidence that CPAs or other financial consultants rely on include bank records, contractual agreements, tax records, etc. The government cannot rely on Rule 703 to justify Mr. Drum's review of testimonial evidence. Expert opinions "cannot be based upon the opinions of others whether those opinions are in evidence or not." *In re Imperial Credit Indus. Sec. Litig.*, 252 F. Supp. 2d 1005, 1007 (C.D. Cal. 2003). Mr. Drum should not be permitted to testify regarding his interpretation of bank records based upon the testimonial opinions of out-of-court witnesses.

Based upon the foregoing, Mr. Avenatti asks that the Court make the following findings in connection with Mr. Drum: (1) Mr. Drum cannot be permitted to testify as to the Rule 1006 summaries unless the government is able to lay a proper foundation and prove the admissibility of underlying materials; (2) Mr. Drum does not have the qualifications necessary to testify as an expert in this case; (3) Mr. Drum cannot rely on summarized witness statements for background information as they violate the Confrontation Clause; and, (4) witness statements are not the types of evidence a financial expert typically relies on.

/
/
/
/

## B. The Testimony of Kevin Mohr Should be Excluded

The government intends on calling Kevin Mohr to testify regarding "legal duties, ethical rules, and professional responsibility requirements of lawyers admitted to the State Bar of California." (Document 299, page 13). The use of a *legal expert* to testify regarding his interpretations of various provisions of the California Rules of Professional Conduct in this case is improper and highly prejudicial.

The California State Bar Act was enacted by the California Legislature as part of the California Business & Professions Code, §§6000 *et seq.*, which is a comprehensive statutory scheme regulating the practice of law in California. *Birbrower, Montalbano, Condon & Frank v. Superior Court,* (1998) 17 Cal. 4th 119, 127, 70 Cal.Rptr.2d 304. Under the State Bar Act, the Board of Trustees of the California Bar formulates the Rules of Professional Conduct which must be approved by the California Supreme Court and, when approved, are binding upon all licensees of the State Bar. Cal. Bus. & Prof. Code, §§6076, 6077. These Rules of Professional Conduct incorporate definitions from state statutes. The state courts of California routinely interpret these rules of professional conduct governing lawyers. *Howard v. Babcock,* 6 Cal. 4th 409, 417 (1993).

The proposed testimony of Kevin Mohr is inadmissible pursuant to Rules 702 and 704. The testimony of an expert is improper when the opinion "usurp[s] the role of the court and the jury. The expert may not 'interpret the law for the court or … advise the court about how the law should apply to the facts of a particular case." *Artista Networks, Inc. v. Cisco Sys.,* 2018 U.S. Dist. LEXIS 228820, at *16 (N.D. Cal. 2018). These types of opinions impermissibly "tell the jury what result to reach, and thus attempt to substitute the expert's judgment for the jury's." *Id.* (citing *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)). These types

- 8 -

of opinions must be excluded as they advise the court about how the law should apply to the facts of a particular case. *Mannick v. Kaiser Found. Health Plan, Inc.,* 2006 U.S. Dist. LEXIS 38430, at *17 (N.D. Cal. 2006).

The Court, rather than an expert witness, "must apply the pertinent legal standard…" *Englebrick v. Worthington Indus.,* 2016 U.S. Dist. LEXIS 184199, at *3 (C.D. Cal. 2016). An attorney's ethical duties are governed by the Rules of Professional Conduct. An attorney's ethical duties "*cannot* be changed by expert testimony. If an expert testifies contrary to the Rules of Professional Conduct, the standards established by such rules govern and the expert testimony is disregarded." *Ito v. Brighton/Shaw, Inc.,* 2008 U.S. Dist. LEXIS 71076, at *7 (E.D. Cal. 2008). Further, pursuant to the Federal Rules of Evidence, **"*legal conclusions provided by experts, i.e., opinions on the ultimate issue of law, are inadmissible.*"** *Nationwide Transport Finance v. Cass Information Systems, Inc.,* 523 F. 3d 1051, 1058 (9th Cir. 2008), (emphasis added). Instructing the jury regarding the applicable law is the distinct and exclusive province of the court. *Id. See also, Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004). Expert opinions regarding legal conclusions "do nothing more than tell the jury what result it should reach." *Id.* at *1060. *See also Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 144 (2d Cir. 2016) ("As a threshold matter, we note that defendants rely in large part on the conclusions of their legal-ethics expert made in a declaration filed in the district court. We do not consider arguments based on this declaration because of our longstanding rule that expert testimony on issues of domestic law is not to be considered.").

Kevin Mohr's purported testimony regarding the California Rules of Professional Conduct or other ethical rules that apply to a lawyer's conduct is improper. Mr. Mohr would take the role of the judge by informing the jury of the

- 9 -

laws that relate to attorney conduct. Mr. Mohr would then take the role as the jury if he were to apply the law to these facts and argue that Mr. Avenatti violated the law and committed criminal conduct by violating bar rules or ethical standards. Instructing the jury regarding the laws relevant to the case is an authority given exclusively to the judge. It is improper for the government to present the testimony of an expert on legal ethics and the obligations of a lawyer.

As proffered by the government, Mr. Mohr's testimony may be replaced with instructions describing the various legal duties, ethical rules, and professional responsibilities an attorney owes to his clients. Because his entire testimony may be summarized by a few instructions supports the theory that Mr. Mohr's testimony is prejudicial, a waste of time, and would only confuse the jury.

### C. The Testimony of Traci Kaas Should be Excluded

The government has indicated it intends on calling Traci Kaas to testify regarding special needs trusts and structured settlements in connection with the wire fraud charges (specifically, Count 1). In the defense's motion to exclude expert testimony, Mr. Avenatti objected to a conflict of interest involving Ms. Kaas. Seemingly conceding to the conflict of interest involved in this case, the government felt it necessary to provide the defense notice of the potential conflict. Based upon the following, Mr. Avenatti asks that the Court find that Ms. Kaas' potential or actual conflict of interest in this case violates public policy and her testimony cannot be admitted.

Conflict of Interest: *First,* the government claims that no conflict of interest is present in this case. The prosecution argues that Ms. Kaas' past relationships do not give rise to a potential or actual conflict of interest. However, the government concedes that Mr. Kaas' connection to Mr. Avenatti and other parties involved in this case may give rise to a *brief* cross-examination regarding her prior professional

- 10 -

relationship with the two law firms and any potential bias. (Document No. 299, page 17). Despite the government's assurances that no conflict of interest is present, it still felt compelled to provide a disclosure regarding Ms. Kaas' former relationship with parties involved in this case.

Ms. Kaas previously worked with McNicholas & McNicholas and Patrick McNicholas. Patrick McNicholas served as co-counsel during EA LLP's representation of Geoffrey Johnson and will likely be called during the government's case-in-chief. Ms. Kaas also regularly works with Callahan & Blaine, a firm that is currently representing Mr. Johnson in civil litigation against Mr. Avenatti, Jason Frank Law, and others relating to the alleged embezzlement of Mr. Johnson's settlement proceeds. Ms. Kaas discussed the case with Callahan & Blaine. The government claims Ms. Kaas' connection to that case was limited to a consultation.

Ms. Kaas' involvement with the parties in this case raise substantial questions as to her bias and independence. Ms. Kaas has a vested interest in a guilty verdict against Mr. Avenatti. Ms. Kaas, who has previously worked with Patrick McNicholas, likely wishes to work with him in the future. It is financially advantageous for her to have opinions consistent with his client's testimony. Ms. Kaas also regularly works with Callahan & Blaine. The government contends that Ms. Kaas only briefly consulted with Callahan & Blaine regarding the civil case against Mr. Avenatti. However, it is impossible for the defense and the Court to know exactly what was divulged during that consultation. Further, it is unknown whether or not Ms. Kaas acquired more information about this matter from Callahan & Blaine in passing. Again, based upon Ms. Kaas' continued relationship with Callahan & Blaine, she is financially motivated to assist the government in securing a guilty verdict against Mr. Avenatti, thereby assisting her *employer*, Callahan & Blaine, in its civil action against Mr. Avenatti.

- 11 -

The district court is "vested with broad discretion to make discovery and evidentiary rulings conducive to a fair and orderly trial." *Campbell Indus. v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir. 1980). Encompassed within this discretion is the "power to disqualify expert witnesses to protect the integrity of the adversary process ... and promote public confidence in the legal system." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004). A district court may use this power to disqualify an expert in order to "prevent conflicts of interest and maintain the integrity of the judicial process." *English Feedlot, Inc. v. Norden Laboratories Inc.,* 833 F.Supp. 1498, 1504 (D. Colo. 1993). Sometimes the admission of the conflicted expert testimony could and likely would violate public policy. *Perfect 10 v. Giganews, Inc.*, 2014 U.S. Dist. LEXIS 185066, at *12 (2014).

Mr. Avenatti asks that this Court exclude Ms. Kaas' testimony. Her conflict of interest, readily apparent financial motivation and substantial bias require her exclusion.

Waste of Time, Confusing, Unnecessary: *Second*, the government argues that Ms. Kaas' specialized knowledge is necessary and will be helpful to the jury. The government claims that Mr. Avenatti lulled Client 1 and concealed his theft of Client 1's settlement funds. The Indictment alleges that Mr. Avenatti delayed the payments to Client 1 claiming that the County of Los Angeles had yet to approve a special needs trust for Client 1. The government seeks to introduce evidence that Mr. Avenatti failed to take the necessary steps to create this special needs trust that would allow for Client 1 to receive the settlement funds. The government argues that Ms. Kaas' expert testimony and her description of these forms of trusts "is therefore critical for the jury..." (Docket No. 299, p. 19).

However, the government later seemingly concedes that this evidence may be introduced by a fact witness rather than an expert witness. In its opposition, the

- 12 -

prosecution notes "the government is considering calling a fact witness to testify regarding certain discussions with defendant who may also be able to address some of the topics Ms. Kaas is expected to cover during her testimony. Such testimony could eliminate the need for the government to call Ms. Kaas at trial." (Document No. 299, p. 20, footnote 10). By its own admission, the government shows that Ms. Kaas' testimony as an *expert* is not required and the evidence she seeks to present may be introduced through alternative means.

Based upon the foregoing, Mr. Avenatti asks that the Court make the following findings in connection with Ms. Kaas: (1) a conflict of interest exists with Ms. Kaas, (2) a *Daubert* hearing is necessary to expand on the potential and/or actual conflict of interest present with Ms. Kaas; and (3) her testimony is confusing, a waste of time, and may be replaced by a fact witness.

### III. The Defense Requests a *Daubert* Hearing

Pursuant to Federal Rule of Evidence 702, before admitting expert testimony, the district court must perform a gatekeeping role to ensure that the testimony is *both relevant and reliable.* Fed. R. Evid. R. 702. This gatekeeping function applies to all, not just scientific, expert testimony. A *Daubert* hearing ensures that the purported expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). With no *voir dire* or formal *Daubert* hearing, "some [other] reliability determination must be apparent from the record" before the Ninth Circuit would uphold a district court's decision to admit expert testimony. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002).

Federal Rule of Evidence 104 indicates that a hearing shall be conducted outside of the presence of the jury when the interests of justice so require. The government argues that the Court is not required to hold a pretrial hearing when it

- 13 -

is "presented with no evidence calling into question the evidentiary reliability" of the proposed expert testimony. (Document No. 299, page 20). This is not the case here. As described above, the defense has presented several, legitimate challenges to the evidentiary reliability and qualifications of the purported experts.

Accordingly, Mr. Avenatti requests that if the Court does not exclude the experts based on the instant motion, the Court hold a *Daubert* hearing in this matter. This hearing is necessary to address several issues described in detail above. Specifically, the government must establish that Mr. Drum is qualified to be an expert witness and the summaries proposed are supported by admissible evidence. Further, it is necessary for this Court to hear additional evidence and learn the extent of Ms. Kaas' conflict in this case. Finally, Mr. Avenatti also requests that this Court conduct a *Daubert* hearing so that the methodology and reliability of the purported experts be tested before allowing these individuals to testify as experts and provide prejudicial testimony.

## IV. CONCLUSION

For each of the above reasons, Mr. Avenatti respectfully requests that the Court grant his Motion to Exclude Expert Witness Testimony and grant his request for a *Daubert* hearing as appropriate.

Dated: October 5, 2020                     Respectfully submitted,


/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

- 14 -

# CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672. I am not a party to the above-entitled action. I have caused, on October 5, 2020, service of the:

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY AND REQUEST FOR A *DAUBERT* HEARING**

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA JULIAN ANDRE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 5, 2020

/s/ H. Dean Steward
H. Dean Steward

- 15 -