H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
|---|---|
| Plaintiff, | SUPPLEMENTAL DECLARATION OF MICHAEL JOHN AVENATTI IN SUPPORT OF DEFENDANT'S MOTION FOR A PROPER PRIVILEGE REVIEW, EVIDENTIARY HEARING AND DISCOVERY |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Comes now H. Dean Steward, counsel for Defendant Michael John Avenatti, and submits the below Supplemental Declaration in Support of Defendant's Motion for a Proper Privilege Review, Evidentiary Hearing and Discovery.

Dated: October 5, 2020          Respectfully submitted,


                                /s/ H. Dean Steward
                                 H. DEAN STEWARD

                                Attorney for Defendant
                                MICHAEL JOHN AVENATTI

**DECLARATION**

I, Michael John Avenatti, declare:

1. As of March 2019, I was a licensed attorney who had served as the Managing Partner of Eagan Avenatti, LLP (aka The Trial Group) ("EA"), a California law firm, since approximately 2011 and was the firm's highest-ranking member of management. I owned at least 75% of the equity of the firm as of March 2019 and had owned at least 75% of the equity of the firm since approximately January 2011. To this day, the equity in the firm has not been extinguished, although the firm is currently in bankruptcy.

2. In 2017, I retained the law firm Pachulski Stang Ziehl & Jones, LLP (the "Pachulski Firm") to represent EA and its management, including me as Managing Partner, in connection with an ongoing bankruptcy proceeding in the Central District of California under Case No. 8:17-bk-11961-CB. I understood at all times during the representation that I, together with the other employees of my firm, enjoyed an attorney-client privilege with attorneys and staff from the Pachulski Firm and that my communications, and those of my employees, with attorneys and staff from the Pachulski Firm were privileged and protected and could not be waived except by me. This included, but was not limited to, all of my communications with attorneys Richard Pachulski (lead counsel), Ira Kharasch, and Robert Saunders, as well as those with staff such as Beth Dassa (paralegal).

3. I repeatedly and consistently relied on this privilege when communicating with attorneys and staff from the Pachulski Firm, as well as in instructing my employees such as Judy Regnier, my office manager, to do so in connection with the representation. These communications included oral and written communications addressing a myriad of issues that arose during the bankruptcy proceeding in 2017 and 2018, including but not limited to me seeking advice and counsel relating to the content and preparation of filings in the bankruptcy court; the content and preparation of the monthly operating

reports filed in the bankruptcy court that required my signature, including those referenced in the Indictment in this case; my testimony under oath during the bankruptcy proceeding; and the disclosure of various assets and income in connection with the bankruptcy proceeding.  During 2017 and 2018, I also routinely communicated with attorneys and staff from the Pachulski Firm and sought their advice and counsel about other issues relating to the IRS, tax return filing requirements, creditor efforts and other issues referenced in the Indictment in this case.  I understood at all times that these communications were privileged and protected.

4. In one month alone (July 2017), I received a bill for $239,000 in legal fees and costs from the Pachulski Firm.  The ultimate bill for the Pachulski Firm's representation during 2017 and 2018 was well over $1 million as I recall; it was over $704,000 as of the Summer of 2017.

5. Importantly, at no time was I informed by anyone at the Pachulski Firm that my communications with them, or those of my office manager, were not privileged or that any privilege I enjoyed with them could be waived by anyone other than me.  In fact, my understanding was just the opposite and I relied on this understanding in engaging in the communications.

6. I have never waived any privileges relating to the Pachulski Firm's representation to the best of my recollection.

7. In connection with the bankruptcy proceeding, I also retained separate counsel to represent (a) Avenatti & Associates, APC, a different firm in which I held my equity in EA, and (b) certain individual rights I might have in the bankruptcy.  At no time did I understand that this further retention rendered my communications with the Pachulski Firm not privileged or waivable by anyone other than me.

8. I later also retained the law firm Raines Feldman LLP (the "Raines Firm") in 2018 to represent EA and its management, including me as Managing Partner, in connection with various issues surrounding the bankruptcy proceeding and collection

efforts. This representation continued into 2019. I understood at all times during the representation that I, together with the other employees of my firm, enjoyed an attorney-client privilege with attorneys and staff from the Raines Firm and that my communications, and those of my employees, with attorneys and staff from the Raines Firm were privileged and protected and could not be waived except by me. This included, but was not limited to, all of my communications with attorney Hamid Rafatjoo and Bambi Clark (paralegal).

9. I repeatedly and consistently relied on this privilege when communicating with attorneys and staff from the Raines Firm, as well as in instructing my employees such as Judy Regnier to do so in connection with the representation. These communications included oral and written communications addressing a myriad of issues that arose during 2018 and 2019, including but not limited to me seeking advice and counsel relating to the content and preparation of filings in the bankruptcy court and my testimony under oath during the bankruptcy proceeding. During 2018 and 2019, I also routinely communicated with attorneys and staff from the Raines Firm and sought their advice and counsel about other issues relating to the IRS, tax return filing requirements, creditor efforts and other issues referenced in the Indictment in this case. I understood at all times that these communications were privileged and protected.

10. Importantly, at no time was I informed by anyone at the Raines Firm that my communications with them, or those of my office manager, were not privileged or that any privilege I enjoyed with them could be waived by anyone other than me. In fact, my understanding was just the opposite and I relied on this understanding in engaging in the communications.

11. I have never waived any privileges relating to the Raines Firm's representation to the best of my recollection.

12. Attached hereto as Exhibit B (filed under seal, in camera) are certain of the documents recently disclosed by the Filter Team as having been produced to the

3

prosecution.  I believe that each of these documents are protected by the attorney-client privilege and/or work product doctrine because (a) they relate to legal advice and representation I was seeking, either directly or through Judy Regnier; (b) were made in confidence by all involved and in reliance on the attorney-client privilege and/or work product doctrine, and (c) were expected to be protected from disclosure at the time they were made.  These documents reflect, among other things, what was discussed, what advice was provided, and the thought process of what documents we chose to exchange, have reviewed, comment on, etc.  Further, many of the documents contain a reference somewhere in the document referring to the documents potentially being privileged and/or are clearly privileged on their face.

13.     A number of the documents attached hereto as Exhibit B concern issues referenced in the Indictment (i.e. the preparation of monthly operating reports, facts underlying my testimony in the bankruptcy proceeding, etc.).

14.     In February 2019, I consented to the appointment of a Receiver, Brian Weiss, to oversee the financial affairs of EA as a result of an aggressive collection effort being undertaken by a former employee of the firm (Jason Frank) who had been fired in May 2016 for theft and fraud.

15.     In connection with the appointment of the Receiver, I did not understand me to be waiving my significant ownership rights in any of EA's files, documents, servers, or assets.  Nor did I waive my ownership or other rights in my personal files, emails and documents stored among those files or on the EA server.  Further, because Mr. Weiss was not an attorney and had very little knowledge of legal proceedings or privilege issues, he was not permitted to represent EA clients as part of his appointment.  In addition, Mr. Weiss was not permitted to waive any attorney-client or work product privileges belonging to any then current or past clients of EA, of which there were thousands.  Mr. Weiss was also never authorized to waive any privileges belonging to

me. Attached hereto as Exhibit A is a true and correct copy of the Order appointing Mr. Weiss.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief and that this Declaration is executed at Venice, California.

Dated: October 5, 2020

_____
MICHAEL JOHN AVENATTI

## **EXHIBIT A**

# ORDER APPOINTING RECEIVER AND ISSUING RESTRAINING ORDER

Pursuant to the Joint Stipulation between Judgment Debtor Eagan Avenatti, LLP ("EA") and Michael Avenatti ("Avenatti"), on the one hand, and Judgment Creditor Jason Frank Law, PLC ("JFL"), on the other hand (collectively, the "Parties") and for good cause shown:

IT IS HEREBY ORDERED:

1. **The Motion.** JFL's Motion for Appointment of Receiver and Restraining Order (Doc. 51) and all pleadings and exhibits related thereto are deemed withdrawn without prejudice.

2. **Judgment Debtor Exam**. The judgment debtor exam of EA and Avenatti currently scheduled for February 14, 2019 is hereby continued to March 8, 2019 at 9:30 a.m. in Courtroom 6D of this Court, located at 411 W. 4th Street, Santa Ana, California 92701.

3. **The Amount of Indebtedness.** The principal amount of EA's indebtedness to JFL under the Judgment is $10 million, plus accruing interest at $564.38 per day since May 22, 2018, reasonable attorney fees and costs incurred by JFL in enforcing the judgment, as well as all costs associated with the receivership (the "Total Indebtedness to JFL").

4. **Appointment of Receiver.** It is hereby ordered that Brian Weiss is appointed as Receiver of EA pending further Order of this Court.

5. **Receiver's Oath and Bond.** The Receiver shall immediately, and before performing any duties (a) execute and file a Receiver's oath; and (b) the Receiver shall not be required to file the bond required by Code of Civil Procedure section 567(b) pursuant to consent and agreement of EA and Avenatti.

6. **Receiver's Fees.** The Receiver may charge for the Receiver's services no more than $495.00 per hour.

7. **Management Company.** The Receiver may employ Force Ten Partners, LLC ("Force 10"), where the Receiver is employed, to assist with the Receiver's duties at the Receiver's direction, including but not limited to accounting, reporting, asset

investigation and other tasks. The members of Force 10, other than the Receiver, shall be compensated at hourly rates ranging from $225 to $495 per hour.

8. **Disclosure.** The Receiver shall immediately disclose to all parties any financial relationship between the Receiver and any company hired to assist in the management of the Receivership property.

9. **General Duties.** After qualifying, the Receiver shall have the power to take possession of and manage the business of EA and its tangible and intangible property with all the usual powers, rights and duties of receivers appointed by this Court or otherwise defined by statute, including but not limited to the power to operate and conduct EA in the ordinary course of its business and collect fees, costs and income owed to EA, except that the Receiver will not be authorized to provide legal services on behalf of EA's clients.

10. **Inventory.** Within 45 days after qualifying, the receiver shall file an inventory of all property possessed under this Order. The Receiver shall file a supplemental inventory of all subsequently obtained property

11. **Expenditures.** The Receiver shall expend money coming into his possession to operate and preserve EA's business and only for the purposes authorized in this Order. Unless the Court orders otherwise, the Receiver shall to the extent practical hold the balance in interest-bearing accounts in accordance with California Code of Civil Procedure section 569.

12. **Monthly Accounting of Receiver's Income, Expenses and Fees.**
    a. The Receiver shall each month prepare and serve on the parties, but not file, an accounting of the income and expenses incurred in the administration of EA, including the Receiver's fees and expenses. The monthly reports shall provide a narrative of the material events, a financial report and a statement of all fees paid or due to the Receiver, Force 10 and any other professionals retained, showing the itemized services, broken down in 1/10th hour increments. The report shall state the hourly fees and any other basis for the fees.

b. The Receiver may pay the Receiver's and Management Company's own fees and expenses only by the following procedures:

   i. By serving on all parties a notice of intent to pay to which no objection is served on the Receiver within 20 days of the date the notice is served.

   ii. By serving and filing a request for interim payment, which the Court then approves.

   iii. By obtaining and filing an agreement among all the parties approving the payment, which the Court then approves.

   iv. By filing the Receiver's final accounting and report, which the Court then approves.

c. The Receiver shall not reimburse the Receiver for the Receiver's general office administration expenses or overhead without Court approval. These expenses include, for example, office supplies and employee payroll, benefits and taxes.

12. **Management.**

   a. The Receiver shall operate EA and take possession of all accounts relating to EA and its property.

   b. The Receiver may hire legal counsel, accounting and tax professionals at normal and customary rates to represent the Receiver in his duties, provided however, legal counsel retained to pursue fraudulent and avoidable actions shall be on a contingency basis.

   c. The Receiver may do all the things, and incur the risks and obligations, ordinarily done or incurred by owners, managers and operators of businesses and property similar to that possessed by the Receiver, except that the Receiver shall not make any capital improvements to property without prior Court approval and the Receiver shall not provide legal services to EA's clients.

13. **Bank Accounts.**

   a. The Receiver may establish accounts at any financial institution insured by an agency of the United States government that are not parties to this proceeding and

shall deposit in those accounts any funds received in connection with EA's business.

b. The Receiver shall have control of, and be the sole authorized signatory for all accounts of EA and client trust accounts or IOLTA accounts, including all accounts at any bank, title company, escrow agent, financial institution or brokerage firm which has possession, custody or control of any assets or funds of EA, or which maintains accounts of the Receiver, or which maintains accounts where EA's employees and agents in such capacity have signatory authority, including but not limited to Michael Avenatti and Judy Regnier.

c. The Receiver is authorized to open and close bank accounts, including client trust accounts or IOLTA accounts. For the avoidance of doubt, no other parties are permitted to open and close bank accounts in the name of EA.

14. **Additional Powers and Duties of the Receiver.** The Receiver shall be authorized to and shall perform the following duties and functions:

    a. Take possession of all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets without limitation;

    b. Provide a copy of the signed receivership order to any party the Receiver deems necessary in order to direct payment to the Receiver, manage the Receivership Assets, and to perform investigations;

    c. Be the sole signatory to any contract of EA during the receivership;

    d. The ability to investigate fraudulent transfers and avoidance actions and to pursue litigation;

    e. The power to sell assets upon Court approval;

    f. Make payments toward the Judgment upon Court approval;

    g. Make all inquiries EA might have made;

    h. Bring and defend actions in his own name, as Receiver;

i. Endorse and deposit any checks, money, negotiable instruments or commercial paper through which EA is compensated in any manner whatsoever into the Receivership account;

j. Pay all necessary costs and expenses to operate EA in order to maximize its assets;

k. Manage the business affairs of EA, including monitoring and approving necessary expenses needed to operate the business and accepting new business contracts;

l. Have access to and become the "administrative user" for all of EA's software programs, servers and website;

m. Maintain detailed accounting records of all deposits to and all expenditures from the Receiver's bank account until the termination of the Receivership;

n. Disburse funds to JFL and/or EA, or any creditor of EA as ordered by this Court;

o. Conduct investigation and discovery, as may be necessary to locate and account for all of the assets of or managed by EA, including receiving, collecting and reviewing all mail addressed to EA, wherever directed;

p. Take such action as is necessary and appropriate to preserve and take control of and to prevent the waste, dissipation, loss of value, concealment, or disposition of any assets of or managed by EA;

q. Enter into settlements on behalf of EA with the approval of the Court; and

r. Hire counsel to represent EA's interests in any application for fees and costs in any case in which EA may be entitled to reimbursement of fees and costs, including but not limited to those cases in which EA attorneys or resources where provided; and

s. Have the sole authority regarding whether to file a petition for bankruptcy.

15. **Insurance.**

a. The Receiver shall determine whether there is sufficient insurance coverage.

b. The Receiver shall notify the insurer that the Receiver is to be named as an additional insured on each insurance policy on the property.

c. If the Receiver determines that the property does not have sufficient insurance coverage, the Receiver shall immediately notify the parties and shall procure sufficient insurance.

d. If the Receiver does not have sufficient funds to obtain insurance, the Receiver shall seek instructions from the Court on whether to obtain insurance and how it is to be paid for.

e. The Receiver shall not be liable for EA's failure to carry or obtain adequate insurance.

16. **Taxpayer ID Numbers.** The Receiver may use any federal taxpayer identification numbers relating to EA and its property for any lawful purpose.

17. **Court instructions.** The Receiver and the parties may at any time apply to this Court for further instructions and order and for additional powers necessary to enable the Receiver to perform his duties properly. Nothing in this order shall be deemed a waiver of or preclude any party from requesting on notice to all other parties, modification of the order and all other parties shall be entitled to oppose such request.

18. **EA Responsible for Fees and Expenses of the Receivership.** EA shall be responsible for all fees and expenses associated with the receivership and such costs will be added to the Judgment pursuant to California Code of Civil Procedure section 685.070(a)(5).

19. **Termination of the Receivership.** The receivership shall not terminate until the Total Indebtedness to JFL is fully satisfied and/or the Court has determined the receivership shall end.

20. **Notification of Termination.** JFL shall notify the Receiver in writing within 48 hours of any event within JFL's knowledge that terminates the receivership.

21. **Receiver's Final Report and Account and Discharge.**

a. *Motion required.* Discharge of the Receiver shall require a Court order upon noticed motion for approval of the Receiver's final report and account and exoneration of the Receiver's bond, if any.

b. *Time.* Not later than 60 days after the receivership terminates, the Receiver shall file, serve and obtain a hearing date on a motion for discharge and approval of the final report and account.

c. *Notice.* The Receiver shall give notice to all persons of whom the Receiver is aware who have potential claims against EA.

d. *Contents of Motion.* The motion to approve the final report and account and for discharge of the Receiver shall contain the following.

   i. *Declaration(s).* Declaration(s) (1) stating what was done during the receivership, (2) certifying the accuracy of the final accounting, (3) stating the basis for the termination of the receivership, and (4) stating the basis for an order for the distribution of any surplus or payment of any deficit.

   ii. *Accounting summary.* A summary of the receivership accounting, which shall include (1) the total revenues received, (2) the total expenditures identified and enumerated by major categories, (3) the net amount of any surplus or deficit and (4) evidence of necessary supporting facts.

22. **Notice to Receiver.** JFL shall promptly notify the Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in the action and their counsel. The parties shall give notice to the Receiver of all events that affect the receivership.

23. **Consent to Convert Receiver to Bankruptcy Trustee.** In the event of a bankruptcy, EA, Avenatti and JFL agree and stipulate that Receiver shall serve as the Chapter 11 Trustee pending confirmation by the Bankruptcy Court, or as the Chapter 7 Trustee if permitted by the Bankruptcy Court.

24. **Bankruptcy Receiver's Duties.** If the Receiver receives notice that an involuntary bankruptcy has been filed and part of the bankruptcy estate includes property that is the subject of this Order, the Receiver shall have the following duties:

    a. *Turn over property if no relief from stay will be sought.* The Receiver shall immediately contact the parties who stipulated to the appointment of the Receiver and determine whether either party intends to move in the bankruptcy court for an order for (i) relief from the automatic stay, and (ii) relief from the Receiver's obligations to turn over the property (11 U.S.C. § 543). If neither party intends to make such a motion, the Receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed that is not the Receiver and otherwise comply with 11 United States Code section 543.

    b. *Remain in possession pending resolution.* If either of the parties who stipulated to the receivership intend to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the property, the Receiver may remain in possession and preserve the property pending the ruling on those motions (11 U.S.C. § 543(a)). The Receiver's authority to preserve the property shall be limited as follows:

        i. The Receiver may continue to collect rents and other income;

        ii. The Receiver my make only those disbursements necessary to preserve and protect the property; and

        iii. The Receiver shall not execute any new leases or other long-term contracts without Court approval.

    c. *Turn over property if no motion for relief is filed within 10 days after notice of the bankruptcy.* If the parties who stipulate to the receivership fail to file a motion within 10 court days after their receipt of notice of the involuntary bankruptcy filing, the Receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession and otherwise comply with 11 United States Code section 543.

-11- STIPULATION AND ORDER RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER

d. *Retain bankruptcy counsel.* The Receiver may petition the Court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

25. **Failure to Turn Over Property.** A receiver who fails to turn over property in accordance with this Order shall not be paid for time and expenses after the date the Receiver should have turned the property over.

26. **Liability of the Receiver.** Except for an act of gross negligence or intentional misconduct, the Receiver shall not be liable for any loss or damages incurred by EA, its officers, shareholders, agents, servants, partners, employees, contractors, creditors, counsel or any other persons or entities by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of his duties.

## RESTRAINING ORDER / INJUNCTION

27. **The Court orders EA and Avenatti** to do the following:

    a. **Turn Over Property.** Immediately turn over possession of all property of EA to the Receiver when the appointment becomes effective, including but not limited to all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets and all funds in EA accounts, including client trust accounts.

    b. **Access to EA's offices and computer systems.** Immediately turn over to the Receiver all keys and passwords relating to the property and grant the Receiver unfettered access to EA and all premises related thereto, and all EA computer systems.

    c. **Insurance.**
        i. Immediately advise the Receiver about the nature and extent of EA's insurance;
        ii. Immediately name the receiver as an additional insured on each insurance policy; and
        iii. DO NOT cancel, reduce or modify the insurance coverage.

    d. **Notify Receiver of Clients and Cases.** Within 7 days after the appointment of the Receiver, EA and Avenatti, and office manager Judy Regnier must meet with the Receiver and JFL and disclose all current clients and cases being managed by EA and all cases in which the services of an EA attorney or EA resources were provided, whether the case was filed in the name of EA or another law firm.

    e. **Respond to Inquiries.** Immediately respond to all inquiries of the Receiver pertaining to EA.

    f. **Disclosure of Bank Accounts.** Immediately disclose to the Receiver all accounts of EA and client trust accounts, including all accounts at any bank, title company, escrow agent, financial institution or brokerage firm which has possession, custody or control of any assets or funds of EA, or which maintains accounts of the Receiver, or which maintains accounts where EA's employees and agents in such capacity have signatory authority, including but not limited to Michael Avenatti and Judy Regnier.

    g. **Payment.** Pay all amounts due to the Receiver.

    h. **Cooperation.** Avenatti shall fully cooperate with the Receiver for the duration of the receivership, regardless of whether he is employed by or affiliated with EA, including but not limited to directing Judy Regnier and any other former employees of EA to likewise cooperate with the Receiver.

28. **Enjoinment.** EA, and its owners, partners, employees, agents, managers, attorneys and all persons and entities acting in concert with EA are hereby enjoined and cannot:

    a. Expend, disburse, remove, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or any portion of EA's assets, including but not limited to its rights to attorney fees and costs from any client or in connection with any cases in which EA attorneys or resources were used;

|   |   |   |
|---|---|---|
| | b. | Interfere in any way, directly or indirectly, with the Receiver's performance of his/her duties and responsibilities and the exercise of his/her powers and/or doing any act which may impair, defeat, divert, prevent or prejudice the preservation of EA's assets or the proceeds thereof; |
| | c. | Commit or permit any waste of EA's assets or any portion thereof, or suffer or commit or permit any act on EA's assets or any part thereof in violation of law; |
| | d. | Conceal or withhold from the Receiver any EA assets, including any client trust funds, real property, physical property, indirect or beneficial ownership interests, or funds; |
| | e. | Do any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of EA's assets; |
| | f. | Demand, collect, compromise, trade, receive or spend any portion or proceeds of EA's assets; and |
| | g. | Fail to pay over to the Receiver any monies whenever received, presently in the possession, custody or control of EA, its owners, agents, representatives, servants, assigns and all those acting in concert therewith. |

29. Nothing in this order excuses or alters any ethical duties that EA and/or EA's attorneys may have to their clients.

Dated: 2/13/2019

*Karen E. Scott*
U.S District Court Magistrate Judge

-14-

STIPULATION AND ORDER RE APPOINTMENT OF RECEIVER AND RESTRAINING ORDER

**EXHIBIT B (filed in camera, under seal)**

# CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672. I am not a party to the above-entitled action. I have caused, on October 5, 2020, service of the defendant's:

SUPPLEMENTAL DECLARATION OF MICHAEL JOHN AVENATTI IN SUPPORT OF DEFENDANT'S MOTION FOR A PROPER PRIVILEGE REVIEW, EVIDENTIARY HEARING AND DISCOVERY

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA JULIAN ANDRE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 5, 2020

/s/ H. Dean Steward
H. Dean Steward