# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge and based on my experience as a bankruptcy trustee and bankruptcy attorney. I have been a member of the Chapter 7 panel of bankruptcy trustees since 1985, and I have been practicing as a bankruptcy attorney since 1982.

4.      I am the duly appointed and acting Chapter 7 Trustee of the Bankruptcy Estate ("Estate") of Eagan Avenatti, LLP ("Debtor").

5.      On September 13, 2019, Debtor filed a voluntary petition for bankruptcy in the Central District of California. On the same date, I was appointed as the Chapter 7 trustee for Debtor's bankruptcy estate.

6.      Pursuant to the U.S. Supreme Court's holding in *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 350-56 (1985), I control the attorney-client privilege for an entity in bankruptcy in my capacity as the duly-appointed bankruptcy trustee. Furthermore, pursuant to 11 U.S.C. § 323, I am the exclusive representative of the bankruptcy estate in my capacity as trustee.

7.      As the Chapter 7 Trustee of the Estate of Debtor, I have sole authority to assert or waive the attorney-client privilege on behalf of Debtor, EA LLP, including as to any attorney-client communications between the Pachulski Frim, on the one hand, and former EA LLP employees, officers, or partners including Michael Avenatti, on the other hand.

8.      Prior to the filing of this bankruptcy case, Debtor had been in a previous bankruptcy case filed back in 2017. In that case, Debtor was represented by the law firm of Pachulski Stang Ziehl & Jones LLP ("Pachulski Firm").

4849-7189-9816, v. 1

9.      Through my counsel, I have requested that the Pachulski Firm turn over its client file to me regarding Eagan Avenatti, LLP. In response, the Pachulski Firm provided me a number of documents.

10.      Attached as Exhibit "1" is a true and correct copy of the executed retainer agreement between Debtor and the Pachulski Firm that was provided to me by the Pachulski Firm.

11.      In a bankruptcy case, it would be improper for Debtor's counsel to also represent Debtor's principal without disclosing the representation to the Court. I have reviewed the Pachulski Firm's employment and fee applications from the previous 2017 bankruptcy and did not see any such disclosures.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 8, 2020

RICHARD A. MARSHACK

2
DECLARATION OF RICHARD A. MARSHACK

4849-7189-9816, v. 1

# EXHIBIT 1

RETENTION AGREEMENT

This Agreement sets forth the terms of the retention of Pachulski Stang Ziehl & Jones LLP (the "Firm") to represent and advise the other undersigned party or parties (hereinafter referred to as the "Client").

    A.  <u>Conditions</u>.

      This Agreement will not take effect, and the Firm will have no obligation to provide legal services, until Client returns a signed copy of this Agreement and pays the initial deposit called for in Section G.

    B.  <u>Scope of Services</u>.

      The Firm is to represent and advise the Client with particular respect to its case under chapter 11 of the Bankruptcy Code.  The Firm accepts its proposed employment and agrees to take such steps as are reasonably advisable to achieve Client's goals consistent with this agreement.

      Upon approval of the Firm's employment by the United States Bankruptcy Court for the Central District of California, it is contemplated that, unless otherwise agreed in writing, the Firm would serve as general bankruptcy counsel therein, would represent and appear for the Client concerning all matters concerning the administration of the case, would represent and appear for the Client with respect to motions to assume, assign or reject leases and other executory contracts, and would consult with the Client concerning the bankruptcy issues with respect to specific lawsuits, adversary proceedings or contested matters in the case, including contested objections to claims, disputes over the amounts owed in respect to executory contracts or leases and the obligations thereunder, and proceedings in which the Client is seeking the recovery of damages or avoidance of transfers.  This Agreement does not cover representation, appearance or consultation by the Firm for the Client in respect to other legal proceedings, cases, or matters other than as expressly set forth above, although the Firm may elect to do so on the terms set forth herein if requested by the Client. By example only, this Agreement does not cover advice or representation regarding, matters of taxation, labor, securities, ERISA, probate/estate planning, criminal, or other non-bankruptcy or non-debtor/creditor specialties of the law.

      Client agrees that the Firm should not be expected to provide services or incur expenses without recompense and intends by this agreement to bind itself and any bankruptcy estate which may be a successor to its assets to pay the Firm for its services and expenses.  Client has been advised that there may exist case law indicating that Client's counsel cannot be recompensed from a chapter 7 estate of Client. In that regard, Client acknowledges that the Firm is <u>not</u> presently agreeing to represent the Client if it becomes a debtor under chapter 7 of the Bankruptcy Code. Client agrees that the Firm may withdraw in such instance.  In any event, Client acknowledges that if the Firm, nonetheless, provides any services or incurs expenses while Client is a debtor in a chapter 7 case, then, for the time of the Firm's professionals and for the Firm's expenses, Client (as well as any other benefited party) should be jointly liable for such services or expenses at the Firm's then customary rates applicable in chapter 11 cases either based on this contract or under theories of *quantum meruit* (implied contracts for recompense at fair value).

    C.  <u>Client's Duties</u>.

      Client agrees to be truthful with the Firm, to cooperate, to keep the Firm informed of any information or developments which may come to Client's attention, to abide by this Agreement, to pay the Firm's bills on time, and to keep the Firm advised of Client's address, telephone number and whereabouts.  Client will assist the Firm in providing necessary information and documents and will appear when necessary at legal proceedings.

D. <u>Legal Fees and Billing Practices.</u>

1.    <u>Negotiability of Fees and Obligation of Client.</u>

The rates set forth below are not set by law, but are negotiable between an attorney and client. Thus, this written Agreement shall bind the parties, subject to the law.  If reimbursement of legal or other expenses are sought from an opposing party, Client acknowledges that the denial of such request or the amount awarded shall not limit the compensation to which the Firm is entitled hereunder.

2.    <u>Rates, Covered Services and Billing Increments.</u>

Client agrees to pay by the hour at the Firm's prevailing rates for all time spent on Client's matter by the Firm's legal personnel.  The Firm's rates now range from $625 to $1,245 for partners, $575 to $995 for of counsel members, $450 to $595 for associates, and $325 to $350 for paraprofessionals. Such rates periodically are increased.  If Client declines to pay increased rates prior to incurrence of charges at such rates, the Firm will have the right to withdraw as attorney for Client.  Attorney hourly rates vary depending upon the age, experience and specialized skills of the attorney involved.

Time is charged in minimum units of one-tenth (. 1) of an hour. The time charged will include the time the Firm spends on telephone calls relating to Client's matter, including calls with Client, witnesses, opposing counsel or court personnel.  The legal personnel assigned to Client's matter may confer among themselves about the matter, as required and appropriate.  When they do confer, each person will charge for the time expended, as long as the work done is reasonably necessary and not duplicative.  Likewise, if more than one of the legal personnel attends a meeting, court hearing or other proceeding, each will charge for the time spent.  The Firm will charge for waiting time in court and elsewhere and for travel time, both local and out of town.

The time for which Client will be billed includes not only time spent directly on research or the preparation and review of documents or at court or other hearings, but also travel time and time spent in conference (in telephone or in person) with representatives of the Client or others in respect to the matter of representation.

If, as a result of the Firm's involvement with or representation of the Client, the Firm incurs expenses or its personnel spend time relating to any formal or informal production of documents, any written or oral discovery, an arbitration, a court or administrative proceeding, or any interview of or consultation with personnel of the Firm, Client also shall be liable to, and will be billed by, the Firm for expenses incurred and time spent at the regular hourly rates then in effect for involved Firm personnel. Such obligation shall accrue even if such expenses are incurred or time spent after the termination of the Firm's employment by Client unless incurred or spent as part of a successful suit or action by Client against the Firm.

3.    <u>Costs and Other Charges.</u>

The Firm will incur various costs and expenses in performing legal services under this Agreement.  Client agrees to pay for all costs, disbursements and expenses in addition to the hourly fees.

(a)    Generally.  The attached exhibit reflects current charges for, *inter alia*, facsimile transmissions, in-house photocopying, reproduction and scan copying charges and mileage. The Firm's other costs, including outside photocopy charges and legal research, will be passed through to the Client <u>at cost</u>, provided that flat fee or other collective charges by third parties, such as for legal research, may be fairly allocated by the Firm among billable clients.  Besides those detailed below, other

2

common costs and expenses are service of process charges, filing and other court fees, court and deposition reporters' fees, jury fees, notary fees, deposition costs, secretarial overtime, telephone charges, messenger and other delivery fees, postage, local travel costs including parking and mileage, investigation expenses, consultants' fees, professional, mediator, arbitrator and/or special master fees and other similar items.

(b)     Out of town travel.  Client agrees to pay the cost of transportation, meals, lodging and all other costs of any necessary out-of-town travel by the Firm's personnel.  Client will also be charged the hourly rates for the time legal personnel spend traveling.

(c)     Experts, Consultants and Investigators.  To aid in the preparation or presentation of Client's case, it may become necessary to hire expert witnesses, consultants or investigators. Client agrees to pay such fees and charges at cost.  The Firm will select any expert witnesses, consultants or investigators to be hired, and Client will be informed of persons chosen and their charges.

Additionally, Client understands that if the matter proceeds to court action or arbitration, Client may be required to pay fees and/or costs to other parties in the action.  Any such payment will be entirely the responsibility of Client.

E.   Billing Statements and Non-Payment or Untimely Payment.

The Firm understands and accepts that the Client is a debtor in a case under chapter 11, and the obligation of the Client to pay the fees and expenses of the Firm accruing during the chapter 11 case are subject to court approval.  The Client agrees to timely execute such documents as the Firm may reasonably request for court approval of the Firm's employment and the payment of its fees and reimbursement of expenses on the terms set forth herein.  The firm plans to file periodic applications (and a final application) with the Court seeking approval for the payment of its fees and expenses by the Client, The Firm will send a copy of all such applications to the Client.  The Client shall pay the Firm's invoices upon court approval.

F.   Client's Limited Waiver of Any Confidentiality of this Retention Agreement and of the Firm's Time and Expense Records.

To the extent that the Firm's ability to be employed or compensated requires it to permit a court or arbitrator to review this Agreement or its time and expenses records, the Client agrees that, in addition to any other disclosures of confidences or secrets permitted with the Client's consent, the Firm may file with the court or arbitrator and serve on appropriate parties copies of this Agreement and its time and expense records and may provide a narrative description of its services.  In connection therewith, the Firm will endeavor, in good faith, to avoid unnecessary disclosures.

G.   Discharge and Withdrawal; Disposition of Files.

The Client may discharge the Firm at any time.  The Firm may withdraw as the Client's counsel with the Client's consent or for good cause.  Good cause includes the Client's breach of this Agreement, the Client's refusal to cooperate with the Firm or to follow the Firm's advice on a material matter or any fact or circumstance that would render the Firm's continuing representation unlawful or unethical.  In any event, the Firm may withdraw from representation of the Client upon the Firm's determination of the existence of a conflict of interest.  When the Firm's services conclude, all unpaid charges will immediately become due and payable.

During Client's representation by the Firm, the Firm will be maintaining a file that would contain original correspondence, evidence, pleadings and other documentation in tangible or electronic form, and

3

may include original documents that have a legal effect, such as deeds or promissory notes. The Firm shall endeavor in good faith initially to retain all such material items related to this representation, subject to reasonable destruction policies for electronic and other data ("Client Files").

At any time, upon Client's request, the Firm will deliver to the Client, its new counsel or as the Client directs, the Client Files, subject to the terms of any protective order or non-disclosure agreement, (along with any funds, other than the deposit or retainer, or different types of property of the Client in the Firm's possession), whether or not Client has paid for all services. If there are multiple clients, the Firm may take direction as to Client Files or Client property from all clients, relevant clients or from such client or person as the clients have herein or otherwise agreed. Client agrees to pay or reimburse the Firm for all costs of copying the Client Files for Client and retaining a copy of the Client File for the Firm's records, agrees to such retention and acknowledges that the Firm may also retain all of its work product. Whether or not such payment or reimbursement obligation arises after the Firm's representation of Client has ended, it shall constitute part of the payment due to the Firm hereunder for services already rendered.

After the matter or the Firm's representation of Client has concluded, Client Files related to a matter may be destroyed by the Firm after a reasonable period of time, which reasonable period shall be deemed to be no longer than eighteen (18) months from the earlier of the time the matter ends or services conclude. While the foregoing sets forth the Firm's obligations, please note that the Firm presently has a records retention policy pursuant to which (1) the Firm actually will endeavor to retain for a period of five years from the date services conclude Client Files that are not transferred to Client and are no longer needed for legal and/or business purposes, (2) the Firm may absorb certain of the related copy charges, and (3) Client Files would be destroyed after the 5-year period. Although the Firm presently has such a policy, and, as a courtesy, may endeavor to reiterate this policy at the time services conclude, failure to adhere to the policy or give subsequent notice thereof to Client shall not alter, extend or expand the obligations to Client hereunder with respect to Client Files.

    H.   <u>Disclosure of Representations.</u>

Based on the information, the Firm has received to date, it is not aware of any current or past relationship with another party interested in the subject matter of this representation that would constitute a conflict of interest, nor does the Firm itself have an interest in the subject matter of the representation. However, in order to avoid representing parties with conflicts of interest, the Firm maintains a computerized conflict of interest index. **Client agrees to provide the Firm with a comprehensive list of Client's creditors, if client is a debtor, client's debtors, if client is a creditor or counter parties or litigants if client is engaged in a transaction or litigation.**

The Firm will utilize the list to comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules to be sure that the firm is "disinterested" and is in a position to make all required disclosures to a Bankruptcy Court.

    I.   <u>Permission to Represent Adverse Parties In Allowed Adverse Representations.</u>

Client acknowledges that the Firm has represented, now represents, and will continue to represent numerous clients (which may include, without limitation, Client's or its affiliates' debtors, creditors, and direct competitors) over a wide range of industries and businesses and in a wide variety of matters. Given this, without a binding conflicts waiver, conflicts of interest might arise that could deprive Client or other clients of the right to select the Firm as their counsel. Thus, as an integral part of the engagement, to secure the Firm's representation of Client and permit the Firm to represent others in "Allowed Adverse Representations" (defined below), Client agrees to, and is providing, the following blanket advance written waiver and acknowledgments: (1) the Firm may, now or in the future, represent other entities or persons, including in bankruptcy matters, litigation or transactional matters, adverse to Client or any affiliate on matters that are not substantially related to (a) the legal services that

4

the Firm has rendered, is rendering, or in the future will render to Client under the engagement or (b) other legal services that the Firm has rendered, is rendering, or in the future will render to Client or any affiliate (an "Allowed Adverse Representation"); (2) Client will not, for itself or any other entity or person, assert that either (a) the Firm's representation of Client or any affiliate in any past, present, or future matter or (b) the Firm's actual, or possible, possession of confidential information belonging to Client or any affiliate is a basis to disqualify the Firm from representing another entity or person in any Allowed Adverse Representation; (3) any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any affiliate, including the Firm's duty of loyalty to Client; and (4) an Allowed Adverse Representation will not undermine or impair the relationship between the Client and the Firm with respect to the Firm's representation of Client.  Client understands that the Firm has a duty of loyalty to the Client with respect to the existing representation and agrees that (1) the Firm will be able to effectively represent the Client in the current matter(s) and meet its duty of loyalty to the Client even if the Firm is adverse in an unrelated matter, and (2) the relationship between the Firm and the Client will not be impaired because of any unrelated representation adverse to the Client.  In the event that Client hereafter comes to believe that there is any impairment of its relationship with the Firm due to an Allowed Adverse Representation, including as to the Firm's loyalty to Client's interests in its representation, Client will notify the Firm, retain new counsel and not seek to disqualify the Firm in any Allowed Adverse Representation.

    J.    <u>Arbitration.</u>

CLIENT MAY BE ENTITLED TO ARBITRATE CERTAIN MATTERS PURSUANT TO CHAPTER 4, ARTICLE 13 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE.  OTHERWISE, IF ANY DISPUTE ARISES OUT OF, OR RELATES TO, A CLAIMED BREACH OF THIS AGREEMENT, THE PROFESSIONAL SERVICES RENDERED BY THE FIRM, OR CLIENT'S FAILURE TO PAY FEES FOR PROFESSIONAL SERVICES AND OTHER EXPENSES SPECIFIED, OR ANY OTHER DISAGREEMENT OF ANY NATURE, TYPE OR DESCRIPTION REGARDLESS OF THE FACTS OR THE LEGAL THEORIES WHICH MAY BE INVOLVED, SUCH DISPUTE SHALL BE RESOLVED BY ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION BY A SINGLE ARBITRATOR IN ACCORDANCE WITH THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION IN EFFECT AT THE TIME THE PROCEEDING IS INITIATED.  THE HEARINGS SHALL BE HELD IN THE LOS ANGELES OFFICES OF THE AMERICAN ARBITRATION ASSOCIATION AND EACH SIDE SHALL BEAR HIS/HER/ITS OWN COSTS AND ATTORNEY FEES.  UNDER THIS PROVISION, CLIENT WOULD NOT HAVE THE RIGHT TO, AND IS WAIVING ANY RIGHT TO, A JURY TRIAL IN RESPECT TO A MALPRACTICE CLAIM AGAINST THE FIRM.  IF THE CLIENT OR FIRM OPPOSE ARBITRATION BASED ON CAL. CIV. PROC. CODE §1281.2(c) OR ANY LAW OF SIMILAR SUBSTANCE OR EFFECT (*i.e.*, BASED ON THE PENDENCY OF A PROCEEDING INVOLVING A THIRD PARTY THAT COULD RESULT IN CONFLICTING RULING), THE PARTY OPPOSING ARBITRATION HEREUNDER SHALL BE DEEMED TO CONSENT TO A JOINT ARBITRATION HEREUNDER OF SUCH OTHER DISPUTE.

THE FIRM OFTEN REPRESENTS CONSTITUENCIES IN BANKRUPTCY AND IN MANY OF THOSE CASES ITS FEES AND EXPENSES AND THEIR PAYMENT ARE SUBJECT TO COURT APPROVAL.  IN SUCH CASES, THE FIRM'S ENTITLEMENT TO FEES OR EXPENSES, DETERMINATION OF THEIR AMOUNT, AND COMPULSION OR PERMISSION FOR THEIR PAYMENT SHALL NOT BE SUBJECT TO ARBITRATION TO THE EXTENT THAT THE COURT WITH JURISDICTION OVER THE BANKRUPTCY CASE IS AN AVAILABLE FORUM IN WHICH TO RESOLVE SUCH ISSUES.

    K.  <u>Disclaimer of Guarantee and Estimates.</u>

Nothing in this Agreement and nothing in the Firm's statements to Client will be construed as a promise or guarantee about the outcome of the matter.  The Firm makes no such promises or guarantees. The Firm's comments about the outcome of the matter are expressions of opinion only.  Any

DOCS_LA:305902.2 RMS/002

estimate of fees given by the Firm shall not be a guarantee.  Actual fees may vary from estimates given.

L.   Entire Agreement; No Third Party Beneficiaries.

This Agreement contains the entire agreement of the parties.  No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties and this Agreement is not intended to confer upon any person other than the Firm and Client any rights or remedies.

M.   Binding Nature of Agreement.

This Agreement shall be binding upon and inure to the benefit of the Firm and Client.

N.   Severability in Event of Partial Invalidity.

If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

O.   Modification by Subsequent Agreement.

This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them, or an oral agreement only to the extent that the parties carry it out.

P.   Miscellaneous Matters.

The Firm is being engaged by the Client, being the individual(s), entity or entities for which appear below signature blocks (other than the signature block for the Firm).  Unless reflected by a separate agreement, the Firm's employment of the Client does not include the representation of others, including individual officers, directors, partners, shareholders or employees of the Client.

The Firm employs a number of attorneys and paralegals (legal assistants).  Any of them or legal consultants employed by the Firm may perform services for the Client under this Agreement.

Several attorneys or members of the staff of the Firm have or may have spouses, parents, children, siblings, significant others or in-laws who are attorneys at other law firms and companies.  Upon your request, the Firm will endeavor to obtain for you more specific information about the connections of the attorneys and staff members of the Firm.  The Firm's staff members and attorneys are aware of the Firm's strict policy against disclosing confidential information to anyone outside the Firm, which would include disclosures to spouses, parents, children, siblings, significant others or in-laws.  The Client acknowledges that relationships as described above do exist, but nonetheless does not consider the Firm's representation of the Client inappropriate.

The Firm maintains a policy that it does not provide opinion letters to its clients or to others who might wish to rely on such letters. If the Firm elects to vary from or alter this policy, it may require a further written agreement, as approved by the management of the Firm, which provides compensation to the Firm for the special risks attendant to the furnishing of such opinions.

The validity of this Agreement, its construction, interpretation, and enforcement, and the rights of the parties hereto shall be determined under, governed by, and construed in accordance with the internal laws of the State of California, without regard to principles of conflicts of law.

This Agreement may be executed by the signatories through use of multiple copies of the

6

signature pages.

Client acknowledges having received a signed duplicate copy hereof for Client to keep for its own records.

Q.  Effective Date.

This Agreement will govern all legal services performed by the Firm on behalf of Client commencing with the date the Firm first performed services.  The date at the beginning of this Agreement is for reference only.  Even if this Agreement does not take effect, Client will be obligated to pay the Firm the reasonable value of any services the Firm may have performed for Client.

THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREE TO THEM AS OF THE DATE THE FIRM FIRST PROVIDED SERVICES.  IF MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS UNDER THIS AGREEMENT.

CLIENT SHOULD SEEK INDEPENDENT COUNSEL TO ADVISE IT CONCERNING THIS AGREEMENT.

Dated:  May __, 2017

PACHULSKI STANG ZIEHL & JONES LLP          EAGAN AVENATTI LLP

By: _____                By: _____
    Partner                                    Name: Michael J. Avenatti
                                               Title: Partner

Ira D. Kharasch

7