H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
|---|---|
| Plaintiff, | DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUR-REPLY IN RESPONSE TO DEFENDANT'S REVISED REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PRIVILEGE REVIEW, EVIDENTIARY HEARING, AND DISCOVERY |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Pursuant to the Court's October 16, 2020 Order, Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this Response to the Government's Sur-Reply in Response Defendant's Revised Reply Brief In Support of Defendant's Motion for Privilege Review, Evidentiary Hearing, and Discovery.

//
//
//
//
//
//
//

This response is based on the attached memorandum of points and authorities; the files, records and transcripts in this case; and such further evidence and argument as the Court may permit at a hearing on this matter.

Dated: October 16, 2020         Respectfully submitted,

/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. The Defense Did Not Intentionally Omit Evidence

The government claims for the first time in its sur-reply that the defense "intentionally omitted evidence" relating to the advice of counsel waiver when filing its Revised Reply on October 12. [Sur-Reply at 1-2.] This is not accurate. The March 4, 2020 letter was <u>already in the record</u>, having been filed by the government almost a month earlier at Docket No. 283-1 in support of their motion relating to advice of counsel, which is being heard the same day as the instant motion on privilege. Further, the defense never stated in its Revised Reply that the government *only or first* sought waiver of the privilege *after* reviewing the privileged documents. The point was and remains that the government ramped up the pressure and continued to repeatedly seek Mr. Avenatti's waiver of the attorney-client privilege, a fundamental right, <u>for months</u> while at the same time failing to disclose their prior receipt and review of the very same privileged documents for which they were seeking a waiver. Seeing as the government has failed to offer *any* reasonable alternative explanation for their failure to timely alert the defense, all indications are that this failure was purposeful and tactical.

### II. The Government's Position On The Attorney-Client Privilege is Erroneous

The government argues in its sur-reply that Mr. Avenatti does not have an attorney-client privilege relationship with the Pachulski law firm.[1] [Sur-Reply at 2-3.] But during the pendency of this case, the government has repeatedly taken the exact opposite position - that Mr. Avenatti **does** have an attorney-client privilege relationship between himself and attorneys at Pachulski, Stang, Ziehl and Jones, LLP. For example, the government stated this in its March 4, 2020 letter to defense counsel asking if Mr. Avenatti was going to assert advice of counsel: "[P]lease advise whether or not *your client continues to maintain any attorney-client privilege between himself and*

---

[1] The government neglected to address the other attorney-client privileges that existed between Mr. Avenatti and other counsel as reflected in the 299 documents.

1    *attorneys at Pachulski, Stang, Ziehl and Jones, LLP* . . ." [Docket No. 283-1; also
2    Govt. Ex. 23] (emphasis added).  The government then repeatedly referred to and
3    affirmed this letter for months thereafter (including by offering it as evidence in
4    connection with their pending motion at Docket No. 283).  The government's own words
5    in the letter - "continues to maintain" – must be interpreted to mean exactly what they
6    say (i.e. continue in its existing state).  If no privilege ever existed between Mr. Avenatti
7    and the Pachulski firm, there would be nothing to "continue" or "maintain" (or waive for
8    that matter).  The government may not now reverse course months later and take an
9    entirely inconsistent position by arguing that Mr. Avenatti lacks an attorney-client
10   privilege with the Pachulski firm.  Doing so constitutes a violation of Mr. Avenatti's due
11   process rights and cannot be allowed.  *See*, *e.g.*, *Thompson v. Calderon*, 120 F.3d 1045,
12   1058 (9th Cir. 1997) (en banc), *rev'd on other grounds*, *Calderon v. Thompson*, 523 U.S.
13   538 (1998); *Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000); *Drake v. Kemp*, 762 F.2d
14   1449, 1479 (11th Cir. 1985) (Clark, J., concurring).  Further, the government's new claim
15   that no privilege exists is belied by (a) the government's own words in the multiple
16   search warrant applications referenced in the Motion (s*ee*, *e.g.*, Case No. 8:19-mj-00419-
17   DUTY (the server related warrant), Docket No. 4 at xii, ¶8) and (b) the Filter Team's claw
18   back of the documents on privilege grounds earlier this year (after months of analysis).
19        Mr. Avenatti also did not state in his declaration that the Pachulski law firm
20   represented him *personally* in the bankruptcy case *in his individual capacity* as the
21   government argues for the first time in the sur-reply.  The government fails to
22   acknowledge that entities like partnerships cannot act except through communications
23   with employees and management, which are privileged, and that management is
24   "represented" in their official capacity.  Further, the government fails to analyze the
25   attorney-client relationship in the proper context of Mr. Avenatti as the managing and
26   founding partner of a professional limited liability law partnership **that was dissolved by**
27   **operation of California law well <u>prior to</u> the filing of the current bankruptcy because,**
28

2

*among other reasons, it did not have at least two partners*.[2]  See, e.g., *California Corp. Code* §§ 16101(9), 16202(a); *Corrales v. Corrales*, 198 Cal. App. 4th 221, 223, 226-28 (4th Dist. 2011 (P.J. Bedsworth)) (holding that a "one-person partnership . . . cannot exist under California law" and "If a partnership consists of only two persons, the partnership dissolves by operation of law when one of them departs.")(emphasis added); *see also Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP*, 212 Cal. App. 4th 1181, 1192 (2nd Dist. 2012).  Indeed, at all times relevant to the analysis, Mr. Avenatti was the only "partner" and member of management of his law firm and thus entitled to assert or waive the privilege.  The firm's bankruptcy does not change this as the law firm is not a corporation (it was a professional limited liability *partnership that dissolved by operation of law well prior to the bankruptcy, which was filed on September 13, 2019*).  Moreover, there has never been any waiver of the privilege by anyone, including the bankruptcy trustee.

### III.  The Public Filing of The Billing Records Is Not Dispositive

The government also argues in the sur-reply that the 47 pages of billing records were publicly filed.  [Sur-Reply at 3.]  But regardless of whether the billing records were previously filed in the public record somewhere (a claim which is being investigated by the defense), (a) the prosecution did not know that at the time they reviewed the records, believed them to be privileged and yet continued to review them and (b) this does not change the prosecution's receipt of over 275 other privileged documents and their review of at least 78 of those documents.  It also has no bearing on whether the government failed to timely disclose and misled the Court and the defense.

---

[2] The only partner in the partnership other than Mr. Avenatti during any time relevant to this proceeding was Michael Q. Eagan (the other founding partner, John C. O'Malley, was ousted from the partnership in late 2010).  Mr. Eagan informed the government (including AUSAs Sagel and Andre) on August 15, 2019 in an interview that he and Mr. O'Malley had departed the partnership in December 2010.  USAO_00454806 (¶11).  During that same interview, he was shown and asked about a written confirmation of his departure from the partnership (a signed letter dated January 1, 2017, which was attached to a May 18, 2018 email between him and Mr. Avenatti).  Mr. Eagan confirmed the letter and stated that it resulted from Mr. Eagan wanting "written documentation of his departure from EA."  USAO_00454809 (¶33).

3

# CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672. I am not a party to the above-entitled action. I have caused, on October 16, 2020, service of the defendant's:

DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUR-REPLY IN RESPONSE TO DEFENDANT'S REVISED REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PRIVILEGE REVIEW, EVIDENTIARY HEARING, AND DISCOVERY

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA JULIAN ANDRE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 16, 2020

/s/ H. Dean Steward
H. Dean Steward