NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6683
     Facsimile: (213) 894-6269
     Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>         v.<br><br>MICHAEL JOHN AVENATTI,<br><br>              Defendant. | SA CR No. 19-061-JVS<br><br>GOVERNMENT'S SUPPLEMENTAL STATEMENT OF BANKRUPTCY-RELATED ACTS, CRIMES, AND WRONGS TO ADMIT AT A SEVERED TRIAL ON COUNTS 1-10 |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Julian L. André, hereby files its supplemental statement of bankruptcy-related acts, crimes, and wrongs to admit at a severed trial on Counts 1-10.

This motion is based upon the attached memorandum of points and authorities, the government's previously filed motion in limine to admit other acts and the reply in support thereof (CR 284, CR 325), the government's opposition to defendant's motion for severance (CR 298), this Court's tentative order issued on October 17, 2020, this Court's statements at the motions hearing on October 19, 2020, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 23, 2020  Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
BRETT A. SAGEL
JULIAN L. ANDRÉ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   INTRODUCTION....................................................1

II.  CLIENT-RELATED OTHER ACTS FROM THE BANKRUPTCY COUNTS............2

     A.   Disclosure Requirements During the 2017 EA Bankruptcy.....2

     B.   Evidence Relating to Client 1.............................3

     C.   Evidence Relating to Client 2.............................4

     D.   Evidence Relating to Client 3.............................6

     E.   Evidence Relating to Client 4 and Client 5................7

     F.   Evidence Relating to the Super Bowl Clients...............9

III. CONCLUSION.....................................................11

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE

**FEDERAL CASES**

Greco et al. v. NFL et al,
    No. 3:13-cv-01005-M (NDTX)......................................9

Huddleston v. United States,
    485 U.S. 681 (1988).............................................2

In re: Eagan Avenatti LLP ("2017 EA Bankruptcy"),
    No. 8:17-bk-11961-CB (C.D. Cal.)...........................passim

United States v. Curtin,
    489 F.3d 935 (9th Cir. 2007)....................................2

United States v. Dorsey,
    677 F.3d 944 (9th Cir. 2012)....................................2

United States v. Loftis,
    843 F.3d 1173 (9th Cir. 2016)...................................2

**FEDERAL RULES**

Fed. R. Evid. 404(b).........................................passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

At the motions hearing on October 19, 2020, this Court granted defendant MICHAEL JOHN AVENATTI's ("defendant") motion to sever the wire fraud counts of the Indictment, Counts 1-10 (hereinafter, "the Client Counts"), from the remaining counts of the 36-count indictment, including Counts 33-36 (hereinafter, "the Bankruptcy Counts"). At the hearing, the Court further granted, in part, the government's motion in limine to admit other acts, crimes, and wrongs of defendant. Specifically, the Court found the other acts evidence related to the Client Counts admissible, including the embezzlement of settlement funds from the Super Bowl Clients and perjurious statements defendant made with respect to the Client Counts.

At the hearing, the government noted that a substantial amount of evidence regarding the Bankruptcy Counts directly relates to the Client Counts, and that such evidence would therefore still be admissible at trial because is it inextricably intertwined with the Client Counts and/or pursuant to Rule 404(b). The Court indicated that it was inclined to admit such evidence at the trial on the Client Counts, but invited the government to file a statement identifying the other acts from the Bankruptcy Counts that the government would seek to admit at a trial on the Client Counts. Accordingly, the government submits this statement to identify the other acts from the Bankruptcy Counts that the government will seek to admit during the trial on the Client Counts.[1]

---

[1] As the Court is familiar with the law and the standards to admit evidence as inextricably intertwined with the charged counts and/or pursuant to Rule 404(b), the government will not repeat them here.

**II. CLIENT-RELATED OTHER ACTS FROM THE BANKRUPTCY COUNTS**

In March 2017, defendant consented to place his law firm, Eagan Avenatti LLP ("EA LLP"), into Chapter 11 bankruptcy, and the case was eventually transferred to this District. In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB (C.D. Cal.) (the "2017 EA Bankruptcy"). Evidence relating to the 2017 EA Bankruptcy is directly relevant to the Client Counts and is thus admissible in a trial on the Client Counts.[2] First, evidence of defendant's financial condition and his law firm being in bankruptcy is strong evidence of defendant's motive and intent to defraud. Second, as discussed further below, evidence that defendant concealed his receipt and embezzlement of the clients' settlement proceeds during the 2017 EA Bankruptcy is inextricably intertwined with the Client Counts and is necessary to offer a coherent and comprehensible story regarding defendant's embezzlement of his clients' funds. See United States v. Loftis, 843 F.3d 1173, 1178 (9th Cir. 2016); United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012). Alternatively, this evidence critical to establishing defendant's state of mind and is thus admissible under Rule 404(b). See Huddleston v. United States, 485 U.S. 681, 685 (1988); United States v. Curtin, 489 F.3d 935, 944 (9th Cir. 2007).

**A. Disclosure Requirements During the 2017 EA Bankruptcy**

In connection with the 2017 EA Bankruptcy, EA LLP was required to: (a) disclose any existing liabilities; (b) close all pre-petition

---

[2] Although all of the evidence referenced herein has been produced to defendant, the government has not attached as exhibits to this motion all of the documentary evidence it would seek to admit at trial. To the extent the Court wishes to review any of the specific evidence relating to the bankruptcy-related other acts referenced herein, the government will submit such evidence to the Court in advance of trial.

2

bank accounts; (c) deposit all receipts into the newly-opened debtor-in-possession ("DIP") bank accounts; and (d) not make any payments to insiders, which would include defendant himself and/or any entity defendant owned or controlled, without appropriate authorizations and disclosures. (CR 16 (the "Indictment") ¶¶ 57-59.) Additionally, EA LPP was required to file Monthly Operating Reports ("MOR") disclosing (a) any bank accounts EA LLP controlled; (b) all of the firms' receipts and expenditures; and (c) any payments to insiders, such as defendant or the companies defendant controlled. (Id. ¶¶ 59-60.) Defendant, as managing partner of EA LLP, was responsible for ensuring that EA LLP complied with these requirements and signed the MORs under penalty of perjury. (Id.)

### B. Evidence Relating to Client 1

In January 2015, defendant, through EA LLP, negotiated a $4,000,000 settlement agreement with the County of Los Angeles on behalf of Client 1. (Indictment ¶¶ 7.f-i.) Defendant, however, failed to pay Client 1 his portion of the $4,000,000 settlement payment, and instead used the entirety of the settlement payment for his own purposes. (Id.) Defendant also made periodic payments to lull Client 1 and to prevent Client 1 from discovering that defendant had embezzled Client 1's portion of the $4,000,000 settlement payment. (Id. ¶ 7.j.) Notably, from January 2015, until defendant placed EA LLP into bankruptcy in March 2017, defendant made the lulling payments to Client 1 from the EA LLP's operating bank account.

Throughout the 2017 EA Bankruptcy, defendant failed to disclose the outstanding liability to pay Client 1 his portion of the $4,000,000 settlement and failed to disclose the expenditures to

3

Client 1 (i.e., the lulling payments to Client 1). Moreover, once the 2017 EA Bankruptcy began, defendant stopped making lulling payments to Client 1 from the EA LLP's operating account (or the EA LLP DIP operating account) and instead began depositing cash into Client 1's account or transferring the lulling payments to Client 1 from other bank accounts that had not been disclosed in the bankruptcy.[3] Defendant concealed the ongoing liability to Client 1 and the lulling payments made to Client 1 to prevent Client 1 -- or anyone involved in the bankruptcy -- from discovering the settlement payment and defendant's embezzlement of such payment.

If defendant was entitled to keep all of Client 1's settlement money and only make periodic payments to Client 1, defendant would have disclosed this information during the 2017 EA Bankruptcy. Instead, defendant made false statements under penalty of perjury during the bankruptcy to further conceal his embezzlement of Client 1's settlement funds. This evidence is inextricably intertwined with defendant's scheme to defraud Client 1 as it is evidence of defendant's intent to defraud and consciousness of guilt. Alternatively, the evidence is admissible pursuant to Rule 404(b) to prove defendant's motive, intent, plan, knowledge, absence of mistake, or lack of accident, as defendant knew his embezzlement of Client 1's settlement proceeds was illegal.

**C. Evidence Relating to Client 2**

In January 2017, defendant, through EA LLP, negotiated a $3,000,000 settlement agreement for Client 2, with an initial payment

---

[3] Defendant was required to attach EA LLP's bank statements to his MORs, therefore, if defendant continued to make lulling payments from EA LLP bank accounts during the 2017 EA Bankruptcy, the payments would have been disclosed on defendant's MORs.

4

of $2,750,000 due in January 2017. (Indictment ¶¶ 7.m-p.) Defendant, however, failed to pay Client 2 her portion of the settlement proceeds and instead used the money to buy a private jet. (Id.) Additionally, to prevent Client 2 from discovering that defendant had embezzled Client 2's portion of the $2,750,000 settlement payment, defendant made a number of periodic lulling payments to Client 2 starting on March 15, 2017 -- after the commencement of the 2017 EA Bankruptcy. (Id. ¶ 7.q.)

In April and July 2017, defendant signed under penalty of perjury a Statement of Financial Affairs (Form 207) and an amended Statement of Financial Affairs (Form 207), which required EA LLP to disclose, among other things, gross revenue from the business in 2017 up through the filing date. In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB, Docs. 52, 161. Defendant failed to disclose EA LLP's receipt of Client 2's settlement proceeds in January 2017 on either document. (Id.) In addition, throughout the 2017 EA Bankruptcy, defendant failed to disclose the outstanding liability to pay Client 2 her portion of the settlement, and failed to disclose the expenditures to Client 2 (i.e., the lulling payments to Client 2). Moreover, defendant made lulling payments to Client 2 from accounts that were not disclosed in the bankruptcy. Defendant concealed the receipt of Client 2's settlement money, the ongoing liability to Client 2, and the lulling payments to Client 2 to prevent Client 2 -- or anyone involved in the bankruptcy -- from discovering the settlement payment and defendant's embezzlement of such payment.

If defendant's use of Client 2's settlement funds and the periodic payments to Client 2 were appropriate, defendant would have disclosed this information on the respective bankruptcy filings.

Instead, defendant made false statements under penalty of perjury to further conceal this information and his actions. This evidence is inextricably intertwined with defendant's scheme to defraud Client 2 as it is evidence of defendant's intent to defraud and consciousness of guilt. Alternatively, the evidence is admissible pursuant to Rule 404(b) to prove defendant's motive, intent, plan, knowledge, absence of mistake, or lack of accident, as defendant knew his embezzlement of Client 2's settlement proceeds was illegal.

### D. Evidence Relating to Client 3

In December 2017, defendant, through EA LLP, negotiated a $1,900,000 settlement agreement for Client 3, with an initial payment of $1,600,000 due in January 2018. (Indictment ¶¶ 7.r-w.) Defendant, however, failed to pay Client 3 his portion of the settlement agreement. (Id.) To lull Client 3 and prevent Client 3 from discovering that defendant had embezzled Client 3's portion of the $1,600,000 settlement payment, defendant made a number of false statements to Client 3, including falsely claiming Company 1 had failed to make the settlement payment. (Id. ¶ 7.x.)

As alleged in Count 35 of the Indictment, defendant failed to include EA LLP's receipt of Client 3's settlement payment on the January 2018 MOR. (Id. ¶ 65.) Moreover, to further conceal the receipt of Client 3's settlement, defendant opened up a separate bank account to receive Client 3's settlement payment, in violation of the bankruptcy guidelines and requirements. Defendant used nearly all of Client 3's settlement money for payments to himself, on his behalf, or to entities defendant owned and/or controlled. Defendant concealed his receipt of Client 3's settlement money, the bank account to which defendant deposited the money, and the insider

payments defendant received during the 2017 EA Bankruptcy to further prevent Client 3 -- or anyone involved in the bankruptcy -- from discovering the settlement payment and defendant's embezzlement of such payment.

If defendant's actions relating to the receipt and disposition Client 3's settlement funds were appropriate, defendant would have disclosed this information on the January 2018 MOR.  Instead, defendant made false statements under penalty of perjury to further conceal this information and his actions.  This evidence is inextricably intertwined with defendant's scheme to defraud Client 3 as it is evidence of defendant's intent to defraud and consciousness of guilt.  Alternatively, the evidence is admissible pursuant to Rule 404(b) to prove defendant's motive, intent, plan, knowledge, absence of mistake, or lack of accident, as defendant knew his embezzlement of Client 3's settlement proceeds was illegal.

**E.  Evidence Relating to Client 4 and Client 5**

In September 2017, defendant negotiated a common stock repurchase agreement on behalf of Client 4 and Client 5, in which Company 2 repurchased Client 4's shares for approximately $35,625,228, with payments of approximately $27,478,940 and $8,146,288 being made in September 2017 and March 2018, respectively. (Indictment ¶¶ 7.y-aa.)  Defendant received his and EA LLP's full attorneys' fees from the entire repurchase agreement in September 2017 and was entitled to no further fees when Company 2 made the March 2018 settlement payment.  (Id.)  When defendant received the settlement payment of $8,146,288 due entirely to Client 4 in March 2018, defendant made false statements to and concealed material facts from Client 4 and Client 5, and failed to pay the settlement money to

7

Client 4.  (Id. ¶ 7.bb.)  Instead, between March 15, 2018 and May 4, 2018, defendant used approximately $4,000,000 of Client 4's settlement proceeds for his own purposes.  (Id. ¶ 7.cc.)  Among other things, defendant transferred $2,828,423 of Client 4's settlement funds to the trust account for the law firm representing defendant individually in the 2017 EA Bankruptcy in order to pay EA LLP's creditors, including the IRS, as part of defendant's stipulation to get the 2017 EA Bankruptcy dismissed.  (Id.)  Defendant also made false statements and concealed material information from Client 4 and Client 5 to lull them and prevent Client 4 and Client 5 from discovering that defendant had embezzled a portion of Client 4's $8,146,288 settlement payment.  (Id. ¶¶ 7.ee-gg.)

    As alleged in Count 34 of the Indictment, Defendant failed to include, among other receipts, the money defendant received on behalf of EA LLP from Client 4 and Client 5's stock repurchase payment on the September 2017 MOR.  (Id. ¶ 63.)  Moreover, defendant opened up a separate bank account to receive Client 4 and Client 5's settlement payment in September 2017, as well as other bank accounts in that same month,[4] in violation of the bankruptcy guidelines and requirements.  In addition, defendant did not immediately remit the full March 2018 payment to Client 4 and used approximately $4,000,000 of the money for payments to himself, on his behalf, or to entities defendant owned and/or controlled.  Defendant concealed his receipt of Client 4's settlement money, the bank account in which defendant

---

[4] Defendant also opened up a new EA LLP Trust Account the same month to receive a $5,500,000 settlement in an EA LLP case in September 2017.  From this undisclosed EA LLP bank account, defendant made extensive payments to himself and to entities he controlled, as well as made lulling payments to victims, including Client 1 and some Super Bowl Clients, described below.

deposited the money, and the insider payments defendant made to himself to further prevent Client 4 or Client 5 -- or anyone involved in the bankruptcy -- from discovering Client 4's settlement and defendant's embezzlement of a portion of the March 2018 settlement payment.

If defendant's actions with regard to the receipt and disposition of Client 4 and Client 5's settlement money were appropriate, defendant would have disclosed this information on the September 2017 MOR. Instead, defendant made false statements under penalty of perjury to further conceal this information and his actions. Moreover, in March 2018, defendant used the money he stole from Client 4 to pay his creditors and get the 2017 EA Bankruptcy dismissed. This evidence is inextricably intertwined with defendant's scheme to defraud Client 4 as it is evidence of defendant's motive, intent to defraud, and consciousness of guilt. Alternatively, the evidence is admissible pursuant to Rule 404(b) to prove defendant's motive, intent, plan, knowledge, absence of mistake, or lack of accident, as defendant knew his embezzlement of Client 4's settlement proceeds was illegal.

### F. Evidence Relating to the Super Bowl Clients

As described in further detail in the government's other acts motion in limine (CR 284), defendant and EA LLP represented approximately 200 clients (the "Super Bowl Clients") and negotiated a settlement of $1.55 million in connection with litigation against the National Football League, in Greco et al. v. NFL et al, No. 3:13-cv-01005-M (NDTX) (the "Super Bowl Litigation"). Just as defendant had done with the clients above, defendant embezzled a significant portion of the Super Bowl Clients' settlement money, including

Case 8:19-cr-00061-JVS   Document 361   Filed 10/23/20   Page 14 of 15   Page ID #:5561

depositing it into newly opened bank account, and used the funds for himself and for defendant's businesses. This Court ruled that this evidence is admissible at the trial on the Client Counts.

Count 33 of the Indictment charges defendant with knowingly and fraudulently making a materially false declaration and statement under penalty of perjury by under-reporting EA LLP's receipts on the May 2017 MOR. (Id. ¶ 61.) Count 36 of the Indictment charges defendant with knowingly and fraudulently testifying falsely under oath during his June 12, 2017, Section 341 examination as part of the 2017 EA Bankruptcy. (Id. ¶ 67.) Both Counts 33 and 36 relate to defendant's false statements regarding receipt of settlement proceeds from the Super Bowl Litigation. Defendant received his and EA LLP's portion of the Super Bowl Litigation settlement in May 2017, however, defendant failed to pay nearly all of the Super Bowl Clients their portion of the settlement proceeds, and only paid a small fraction of the Super Bowl Clients any settlement proceeds.[5] Furthermore, during the June 2017 Section 341 examination, defendant testified falsely that he only had one attorney-client trust account where settlements were deposited and was not using any separate attorney-client trust accounts at the time. Defendant concealed and testified falsely about his receipt of the Super Bowl Clients' settlement money as well as the bank account to which defendant deposited the money in the 2017 EA Bankruptcy to further prevent the Super Bowl Clients -- or anyone involved in the bankruptcy -- from discovering the settlement

---

[5] The money defendant paid to the Super Bowl Clients came from a separate EA LLP bank account that defendant failed to disclose in the bankruptcy and from funds defendant received from other sources.

payment and defendant's embezzlement of a large portion of the settlement proceeds in the Super Bowl Litigation.

If defendant's actions with regard to the receipt and disposition of the Super Bowl Clients' settlement money were appropriate, defendant would have disclosed this information on the May 2017 MOR and testified truthfully regarding it at his Section 341 examination.  Instead, defendant made false statements under penalty of perjury to further conceal this information and his actions.  This evidence is inextricably intertwined with defendant's scheme to defraud the Super Bowl Clients as it is evidence of defendant's intent and consciousness of guilt.  Alternatively, the evidence is admissible pursuant to Rule 404(b) to prove defendant's motive, intent, plan, knowledge, absence of mistake, or lack of accident, as defendant knew his embezzlement of client funds was illegal.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court admit at trial evidence of the additional crimes and other acts described herein.