UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | SACR 19-61-JVS | Date | October 30, 2020 |
|---|---|---|---|

| Present: The Honorable | **JAMES V. SELNA, U.S. DISTRICT COURT JUDGE** |
|---|---|
| Interpreter | |

| Lisa Bredahl | Not Present | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Michael John Avenatti | NOT | | X | Dean Steward | NOT | | X |

**Proceedings:**   [IN CHAMBERS] Order re Pretrial Motions

      The Government and defendant Michael John Avenatti's ("Avenatti") have presented a series of pretrial motions. The Court now enters it rulings.

I.    Avenatti's Motion to Sever.

      Because the Court's ruling on this Motion affects its analysis and the scope of its rulings on many of the remaining Motions, the Court takes up the severance issue first.

      Avenatti moves to sever and separately try Counts 1 through 10 of the 36-Count Indictment. (Docket No. 265.) The Government has filed an opposition (Docket No. 298), and Avenatti has replied (Docket No. 320).

      The Court grants the Motion.

      1.    Background.

      Counts 1 through 10 allege wire fraud schemes to embezzle or otherwise syphon off the settlement proceeds of five clients ("Client Counts"). The alleged losses exceed $10 million.

      The remaining Counts deal with claims that Avenatti failed to collect and pay business taxes for his business operations (Counts 11-18), interfered with the collection of taxes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

(Count 19), failed to file personal and business tax returns (Counts 23-29), bank fraud (Counts 30-31), aggravated identity theft (Count 32), and making false statements during a bankruptcy proceeding (Count 33-36). These Counts are substantially more complex than the Client Counts.

    2. Legal Standard.

Rule 8 of the Federal Rules of Criminal Procedure sets the permissible scope for joining claims:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

(Fed. R. Crim. P. 8(a).) The Court has the power to sever claims or parties to avoid prejudice:

> If the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . ., the court may order separate trials of counts, . . . or provide any other relief that justice requires.

(Fed. R. Crim. P. 14(a); emphasis supplied.) The Court may grant relief under Rule 14 even where from a technical perspective, all counts are properly joined. United States v. Kinslow, 860 F.2d 963, 966-67 (9th Cir. 1988). The test under Rule 14 is whether joinder is "so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." Id. (internal quotation marks deleted), citing United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir.1976), cert. denied, 429 U.S. 1111 (1977).

    3. Discussion.

While maintaining that all Counts are properly joined, the Government proposes a compromise in light of the present circumstances:

> Although neither Rule 8(a) nor Rule 14 provide defendant a basis for severance in this case, and such a severance would be inefficient under ordinary circumstances, the government recognizes that these are not ordinary times. Thus, the government would agree that this Court, in its discretion, can sever counts of the Indictment under

> certain conditions. Specifically, in the interests of justice and under this Court's inherent right and duty to manage its calendar, the government would agree to a severance of Counts 1-10 (the wire fraud counts) along with Counts 33-36 (the bankruptcy fraud counts) from the remaining counts of the Indictment . . ..

(Opposition, p. 2; emphasis supplied; id., pp. 23-25.) The Government conditions its proposal on keeping the present trial date, or starting no later than January 26, 2021. The Government acknowledges the uncertainties created by the COVID-19 pandemic.[1] As the Government notes, the Court has "broad discretion" to sever the remaining counts. (Id., p. 24, citing United States v. Gay, 567 F.2d 916, 919 (9th Cir. 1978).

Avenatti rejects the proposal, particularly the retention of the bankruptcy misrepresentation claims. (Reply, pp. 1, 12-13.)

The Government's proposal is at least a tacit concession that the jury would have difficulty compartmentalizing the evidence relevant to the Client Counts from the balance of the evidence. Zafiro v. United States, 506 U.S. 534, 538-39 (1993); United States v. Ramirez, 710 F.2d 535, 546 (9th Cir.1983). While limiting instructions may aid the jury, United States v. Baker, 10 F.3d 1374, 1387 (9th Cir.1993), the Court finds the efficacy of limiting instructions doubtful if all 36 Counts are presented.

In sum, Avenatti would be prejudiced if the Court did not grant a severance. Of course, the severed Counts remain a part of the pleading and available for trial at a later date.

The Court does not see a sufficient link between the bankruptcy misrepresentation counts and the Client Counts. The fact that Avenatti allegedly did not report some clients' settlements is overwhelmed by the overall complexity of the bankruptcy proceeding. (See Opposition, 10.) More specifically, Count 33-36 are not limited to the client misrepresentations.[2]

---

[1] The Government points to "uncertainties regarding when jury trials will commence, the manner in which they would proceed, and what types and lengths of trial may proceed upon commencing of jury trials." (Opposition, p. 23.)

[2] The Government summarizes these counts: "The Indictment alleges, among other things: defendant failed to report in the EA LLP bankruptcy revenue from cases, including from settlements related to the wire fraud victim-clients; hid receipts and deposits into bank accounts he was not supposed to open; and did not disclose payments to himself as an insider." (Opposition, p. 10; emphasis supplied.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

At oral argument, the Government suggested that there were certain discrete allegations in the bankruptcy counts that would be admissible with regard to the Client counts to show intent or other elements of the fraud charges or would otherwise be admissible as "inextricably intertwined" to the fraud allegations in the Client Counts. United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012). While the Government alluded to certain allegations, the record requires greater detail. The Government will submit a supplemental brief detailing the specific allegation it would seek to introduce by October 23, 2020. Assuming appropriate linkage, the Court will allow this evidence. The Court holds to its overall conclusion that the bankruptcy counts should be severed.

With regard to the Government's other condition, the Court agrees that trial should commence promptly. While the Court had hoped to proceed with the December 8 date, that may no longer be possible. Orange County is still in the second tier of the state reopening plan (red). The Court does not believe it likely that the Court will proceed with jury trials until the County moves into the next tier (orange). The number of infections per day and the rate on infections have been relatively flat lately, but the Court has no basis to predict when the required improvements will be achieved.[3] It takes 49 days between making a request that a jury panel be summoned and the start of trial. The Court is committed to starting trial on the earlier feasible date.

The Court grants the Motion and severs Court 11 through 36. Such a trial will be substantially shorter which is an important consideration in these times. It will also be fairer by allowing the jury to focus on a limited set of similar transactions. The claims in Count 1 through 10 would be a major prosecution standing by themselves.

II. Government's Motions.

    A. Reciprocal Discovery Obligations.

The Government moves to exclude any documents Avenatti is required but failed to produce under his reciprocal discovery obligations, including evidence relating to an advice

---

[3] https://www.nbclosangeles.com/news/coronavirus/orange-county-poised-to-remain-in-red-tier-as-hospitalizations-continue-to-decline/2442157/, last visited October 12, 2020; https://www.ocregister.com/2020/10/11/coronavirus-orange-county-reports-244-new-cases-and-1-new-death-as-of-oct-11/, last visited October 12, 2020.

of counsel defense.[4] (Docket No. 283.) Avenatti has filed an opposition (Docket No. 301), and the Government has replied (Docket No. 324).

      1. Background

      Pursuant the parties' stipulation, the Court ordered Avenatti to make his reciprocal discovery disclosures pursuant to Federal Rule of Criminal Procedure 16(b)(1) no later than August 31, 2020. (Docket No 171.) Avenatti made no production by August 31, 2020, and has made no production since. By March 20, 2020, Avenatti had received substantially all of the Government's discovery. (Docket Nos. 99, 195.)

      2. Legal Standard.

      Rule 16 of the Federal Rules of Criminal Rules Procedure imposes on a defendant an obligation to make discovery:

> <u>If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies</u>, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
>
> (i) the item is within the defendant's possession, custody, or control; and
>
> (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

(Fed R. Crim. P. 16(b)(1); emphasis supplied.) Impeachment documents are excluded from this obligation. <u>United States v. Ellison</u>, 704 F. App'x 616, 625 (9th Cir. Aug. 15, 2017). Exclusion is the proper remedy where a defendant fails to comply with his discovery obligations. <u>United States v. Scholl</u>, 166 F.3d 964, 972 (9th Cir. 1999).

      A defendant bears the burden of establishing an advice of counsel defense. <u>United States v. Ibarra-Alcarez</u>, 830 F.2d 968, 973 (9th Cir. 1987). A defendant must make a threshold showing that "there was a full disclosure to his attorney of all material facts, and that he relied in good faith on the specific course of conduct recommended by the attorney." (<u>Id.</u>)

---

[4] While the defense is often referred to as advice of counsel, the evidence goes to whether a defendant had the requisite intent to defraud if he had a good faith belief, based on advice of counsel, that his conduct was proper.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

3. <u>Discussion.</u>

The Court rejects the contention that the Government has not made sufficient discovery to trigger Avenatti's reciprocal discovery obligation. The bulk of the Government's production was completed long ago. As Avenatti chronicles himself (Opposition, pp, 4-5), the recent production has been relatively minor compared to past production. Moreover, Avenatti acknowledges that large blocks of the recent discovery were duplicative. (<u>Id.</u>, p. 4 n.3.) The fact that Avenatti agreed to an August 31 date for reciprocal discovery undermines his protestations that he has not had sufficient time to address his obligations.

With regard to the advice of counsel defense, the Government has summarized in some detail Avenatti's testimony in other proceedings where he has claimed that he was acting on advice of counsel. (Motion, pp. 8-10.) For example, when asked in a judgment debtor's examination about disbursements of settlement proceeds in Client 3's case, he testified that "we, at all times, adhered to the letter of the law in connection with the bankruptcy matter, and, in fact, we consistently consulted with bankruptcy counsel and others to ensure that we did so." (Motion, Ex. 1, p. 27; pagination per docket.) The Government made several inquiries regarding whether Avenatti would rely on advice of counsel. (<u>E.g.</u>, Motion, Ex. 1.) In an August 20, 2020 communication, Avenatti's counsel advised that he did not have access to sufficient information to make a determination. (<u>Id.</u>, Ex. 5.)

Notwithstanding the foregoing, the Court agrees with Avenatti that there is no rule or case law authority that compels disclosure of his intent to assert advice of counsel and produce all relevant material at this time.

In view of the foregoing and given that exclusion should be exercised with care, the Court orders:

1. Avenatti shall commence a rolling production[5] of Rule 16(b) materials within seven days and shall complete production no later than December 1, 2020. This specifically includes all materials for use at trial other than impeachment evidence. Dalliance is no substitute for performance.

2. Avenatti shall disclose his intent to rely on advice of counsel and all evidence that would support that defense reasonably in advance of trial to permit the Government to absorb the material and conduct whatever investigation or fact finding which would flow from

---

[5]The Court notes that the Government has proceeded in this manner beginning last year.

the disclosure but no later than 20 days before trial. The Court is particularly concerned about disclosures to establish that "there was a full disclosure to his attorney of all material facts." Ibarra-Alvarez, 830 F.2d at 973. The Court does not view disclosure midway through trial and either fair or efficient.[6]

The disclosures required by the Order are limited to the claims and defenses which would be asserted in Counts 1 through 10. When the remaining claims are set for trial, or upon motion of any party, the Court will set dates for further disclosures.

B. Other Bad Acts.

The Government moves for an order *in limine* concerning the admission of other acts, crimes and wrongs. (Docket No. 284.) Avenatti has filed an opposition (Docket No. 297), and the Government has replied (Docket No. 335).

1. Background.

The thirty-six count indictment charges Avenatti with a wide range of criminal conduct including defrauding his clients, discussed above, failure to pay corporate payroll taxes, interference with tax collection, failure to pay personal income taxes, and fraud on the bankruptcy court. The Government points to five sets of acts which it seeks to introduce under Rule 404(b) of the Federal Rules of Evidence:

• A 2017 embezzlement of a portion of client funds received from a settlement with the National Football League ("NFL").

• Failure to remit payroll taxes to the Internal Revenue Service withheld from the employees of his firm Eagan Avenatti LLP ("EA LLP").

• Failure to pay state taxes for his company Global Barista US, LLC ("Global Barristas").

• Commission of bankruptcy fraud during the course of his firm's bankruptcy, In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB (C.D. Cal.) ("EA Bankruptcy").

---

[6]The Court expects that the parties will shortly stipulate to a further continuance. This will meet the Government's concern that there be a specific date for disclosure.

> • Commission of perjury during the course of judgment debtor's examinations in the EA Bankruptcy.

If Avenatti testifies, the Government would seek to impeach him under Federal Rule of Evidence 609 with his extortion conviction in United States v. Avenatti, No 1:19-CR-373-PPG (S.D. N.Y.) ("Nike case").

    2. Legal Standards.

While evidence of other bad acts is not admissible for proof of character, it is admissible for certain purposes:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
>> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>>
>> (B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

(Fed. R. Evid. 404(b); emphasis supplied.) The Ninth Circuit has established a four-part test for assessing whether evidence should be admitted under Rule 404(b):

> The test for admitting evidence under 404(b) is whether: 1) it tends to prove a material fact; 2) the prior act is not too remote in time; 3) the evidence is sufficient to support a finding that the defendant committed the act; and 4) where knowledge and intent are at issue, the act is similar to that charged.

United States v. Tsinnijinnie, 91 F.3d 1285, 1288-89 (9th Cir. 1996) (citation omitted). In addition, the probative value of the evidence must also not be substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998); Tsinnijninnie, 91 F.3d at 1289.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Federal Rule of Evidence 609 provides the framework for admitting past convictions:

The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
  (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
  (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

(2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.

(Fed. R. Evid. 609(a).) Unlike civil cases which require a Rule 403 analysis, convictions "involving dishonesty or false statement within the meaning of rule 609(a)(2) are automatically admissible; the court need not conduct a balancing test." United States v. Glenn, 667 F.2d 1269, 1272 (9th Cir. 1982).

      3. Discussion.

          a. Other Bad Acts.

The Court addresses each of the five matters the Government seeks to offer under Rule 404(b). The present Motion provides Avenatti sufficient notice under Rule 404(b)(2)(A). Moreover, the Government advised Avenatti in separate correspondence on February 4, 2020. (See Opposition, Ex. A.)

*Embezzlement of NFL Settlement of Funds.* The Court finds this evidence admissible. The concept of client fraud directly parallels the conduct in the Client Counts. It supports the knowledge and intent aspect of the charged crimes and rebuts any contention of mistake. Tsinnijinnie, 91 F.3 at 1288-89. The incident is not remote, and the Government has offered sufficient evidence to support a finding that Avenatti committed the acts. (Id.) This evidence passes muster under Rule 403. It is no more prejudicial than the Client Counts themselves, and has substantial probative value.

*Perjurious Statements.* The Government claims that a number of statements made by Avenatti during judgment debtor examinations in the EA Bankruptcy were perjurious. With two exceptions, these statements relate to payroll tax allegations, the failure to file person tax returns, and EA LLP tax returns. (Motion, pp. 29-33.) The Court denies the Motion with respect to these statements because they lack a sufficient relationship to the Client Counts. Tsinnijinnie, 91 F.3 at 1288-89. And they present Rule 403 issues. However, the Government cites to statements with respect to Clients 1 and 4. (Motion, pp. 29, 32.) These statements relate directly to the Client Counts, and meet the requirements under Tsinnijinnie. The Government has offered sufficient evidence to support a finding that Avenatti committed perjury. Given the direct link to Avenatti's dealing with Clients 1 and 4, any prejudice is far outweighed by the probative value of the evidence. (Fed. R. Enid. 403.)

*Other Acts.* Given the focus of the upcoming trial, the Court denies the Motion with respect to the failure to remit employee withholding, the failure to pay corporate taxes, and the bankruptcy fraud. None of these acts tend to prove a material fact with regard to the Client Counts, nor would they prove knowledge and intent in this context. Tsinnijinnie, 91 F.3 at 1288-89. For many of the same reason the Court cited in granting severance, the Court excludes these acts. In the context of a trial only on the Client Counts, this evidence would prove prejudicially confusing to the jury and would require an undue expenditure of time with minimal if any evidentiary return. (Fed. R. Evid. 403.) Moreover, these acts are not otherwise admissible under "inextricably intertwined" doctrine because they bear no relationship to the Client Counts. United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012).

To be clear, this evidence may well be relevant to the remaining counts, but that is an issue the Court reserves for another day.

*Admission of Nike Conviction.* In the Nike case, Avenatti was convicted of wire fraud, 18 U.S.C. §§ 1343, 1346; extortion, 18 U.S.C. 875(d); and attempted extortion, 18 U.S.C. § 1851. There can be little doubt that these crimes involve dishonest or false statements. The Motion is granted: the conviction "must be admitted. (Fed. R. Evid. 609(a)(2).)

    4. Conclusion.

The Motion is granted in part, denied in part, and reserved in part.

III.     Avenatti's Remaining Motions.

    A. Disclosure of Grand Jury Materials.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Avenatti originally moved for the release of certain grand jury materials. (Docket No. 276.) He subsequently withdrew the motion. (Docket No. 321.) The Motion is denied as moot.

B. Motion to Exclude Experts and for *Daubert* Hearing.

Avenatti moves to exclude three Government experts: John Drum, Kevin Mohr, and Traci Kass. (Docket No. 285.) He also seeks a Daubert hearing. (Id.) The Government has filed an opposition (Docket No. 299), and Avenatti has replied (Docket No. 339).

1. Legal Standard.

Federal Rule of Evidence 702 permits expert testimony from "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education," if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

(Fed. R. Evid. 702.)

On this challenge, the Court is called to exercise its "gatekeeper" function to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). A trial court's "gatekeeping" obligation to admit only expert testimony that is both reliable and relevant is especially important "considering the aura of authority experts often exude." Mukhtar v. Cal. State Univ., 299 F.3d 1053, 1063-64 (9th Cir. 2002). Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010). Importantly, the Court's gatekeeper role under Daubert is "not intended to supplant the adversary system or the role of the [trier of fact]." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (internal quotation marks and citation omitted). In other words, at this stage, the Court is not supposed "to make ultimate conclusions as to the persuasiveness of the proffered evidence." (Id.) As the Ninth Circuit summed up in Alaska Rent-A-Car, Inc. v. Avis, 738 F.3d 960, 969-70 (9th Cir. 2013):

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable. The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.

The requirement that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance. Primiano, 598 F.3d at 564.

The Rule 702(c) and (d) reliability indicators are subject to a more flexible analysis. According to the Ninth Circuit,

> [i]n Daubert, the Supreme Court gave a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community.

Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 605 (9th Cir. 2002).

The trial court has "broad latitude" in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. Mukhtar, 299 F.3d at 1064; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). The "test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Kumho Tire, 526 U.S. at 141.

With these standards in mind, the Court considers the testimony and credentials of each proffered expert.

    2. Discussion.

*John Drum.* Drum is currently Vice President of Analysis Group, Inc. (Motion, Ex. B, p. 1. ["Drum Resume"]. Prior to that he worked for one of the major accounting firms. He holds a Master's in accounting and a Bachelor's in finance and accounting. (Id.) He has provided expert reports and testimony in a number of federal and state proceedings. (Id., pp. 2-3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

He is expected to testify concerning a number of financial transactions involving Avenatti and his entities. (Motion, Ex. A, pp. 1-12 ["Government Expert Disclosure"]. Among other things, he will trace the distribution of funds from settlements received by the clients identified in the Client Counts. (Id., pp. 2-5)

Avenatti mounts five attacks on Drum's testimony. First, he contends that Drum is not qualified to testify on the indicated subjects. (Motion, pp. 3-4.) The Court finds otherwise. Drum has extensive practical experience. Contrary to Avenatti's assertion, Drum is a certified public accountant. The fact that he has no peer reviewed publication goes to the weight of his opinion, but is not disqualifying. See Miller v. Farmers Ins. Group, 2012 WL 8017244, at *5 (W.D. Okla. Mar. 22, 2012).

Second, Avenatti contends that there is insufficient information to analyze Drum's methodology. (Motion, p. 4.) It is apparent that Drum uses the tools of a trained financial analyst in presenting his summaries of various transactions. Moreover, the extensive charts which the Government has produced as part of its opposition provide details concerning Drum's opinions and how he developed them. (Docket No. 309.)

Third, Avenatti asserts that Drum's reliance of reports and summaries prepared by others will deprive him of his right of confrontation under Crawford.[7] (Motion, pp. 4-5.) An expert is entitled to rely on such sources for foundation and to support his opinion. Such information is not received for the truth but simply as a basis for the opinion.[8] (Fed. R. Enid. 703.)

Fourth, Avenatti claims that certain opinions improperly invade the province of the jury. (Motion, pp. 5-6.) Specifically, he challenges Drum's conclusion that certain funds received by Avenatti were "used . . . for his own personal expenses."[9] (Government Expert Disclosure, pp. 6-10.) Yet the courts have recognized that only minimal expertise is required to express such opinions. United States v. Figueroa-Lopez, 125 F.3d 1241, 1245 (9th Cir. 1997).

Fifth, Avenatti asserts that Drum's testimony will not be helpful to the jury. The complexity of Avenatti's business dealings is well beyond the understanding of the average

---

[7] Crawford v. Washington, 541 U.S. 36 (2004).

[8] The Court will so instruct the jury.

[9] For example, during 2014, "[d]efendant used at lease approximately $1.4 million of EA LLP funds for his own personal use." (Government Expert Disclosure, p. 7.)

jury. Drum's financial expertise will be helpful to the jury.

In his reply, Avenatti objects to the fact that Drum will summarize "**thousands of documents.**" (Reply, p. 2; bold in original.) This overlooks the fact that summaries are admissible under Federal Rule of Evidence 1006 where the underlying documents have been produced. The Government represents that is has made such production. (Opposition, p. 4.)

This portion of the Motion is denied.[10]

*Kevin Mohr.* Mohr is a professor of law, and has taught legal ethics for thirty years. He is expected to testify to a lawyer's ethical obligations. (Government Expert Disclosure, pp. 12-16.) This would include restrictions in dealing with clients, including trust account obligations. (Id., pp. 15-16.)

Avenatti asserts that such testimony is "a waste of time, is cumulative and need not be the subject of expert testimony. (Motion, p. 6.) The Court disagrees. A lawyer's fiduciary obligations are not part of the common knowledge of a lay juror. Nor are the complex rules with regard to the handling of client funds and restrictions on transactions with clients. The Court finds that such testimony would assist the jury, particularly with regard to the Client Counts. (Fed. R. Evid. 702(a).) His testimony involves far more than a high level discussion of honesty and fair dealing. (See Motion, p. 6.) Moreover to the extent that the Government is pursing fraud by omission, Mohr's testimony will support a finding of a duty to disclose. See Unites States v. Shields, 844 F.3d 819, 822-23 (9th Cir. 2016).

Avenatti makes no challenge to Mohr's qualifications, nor does he challenge methodology that relies on the application of California's Rules of Professional Conduct. Mohr meets the requirements of Rule 702(c) and (d).

Whether or not Avenatti asserts reliance of counsel with regard to his dealings, the testimony is relevant and even more relevant if he does assert the defense.

At the hearing, Avenatti suggested that the ethical ground rules might be covered by way of jury instructions in lieu of expert testimony. The Court invited the parties to submit proposed jury instructions within thirty days.

---

[10] However, the Court agrees that the Government should provide details concerning Drum's prior testimonial assignments, and direct the Government to do so within ten day. (See Reply, p. 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

This portion of the Motion is denied.

*Tracy Kaas.* Kaas is expected to testify concerning the establishment and administration of special needs trusts for disabled individuals. (Government Expert Disclosure, pp. 16-18.) The information is relevant to Avenatti's representation of Client 1 and the manner in which his case was settled.

Avenatti asserts that Kaas has a conflict of interest because she worked for a co-counsel firm along with Avenatti's EA LLP in representing Client 1. This is a colorable basis for disqualification. Obviously, if she had worked for directly for EA LLP she would have had access to information potentially harmful to Avenatti. The Court is not prepared to assume that the same is not true in working for co-counsel. The appropriate remedy is disqualification. Sells v. Wamser, 158 F.R.D. 390, 393 (S.D. Ohio 1994) ("the Court does have inherent power to disqualify an expert witness when a conflict of interest exists").[11]

Nevertheless, the subject of special needs trust is highly relevant to the Counts involving Client 1. The subject matter is far beyond the ken of lay jurors and likely most lawyers. Testimony in this area would be helpful to the jury. (Fed. R. Evid. 702(a).)

The Court grants the Motion with respect to Kaas. In its disclosure, the Government suggests that the issue could be covered by joint stipulations of fact regarding the basics of special needs trusts. (Government Expert Disclosure, p. 16.) The parties are directed to meet and confer concerning such a stipulation within twenty days. Absent agreement, the Court is likely to grant the Government leave to designate an alternate expert.

*Evidentiary Hearing.* Avenatti requests that the Court entertain a formal Daubert hearing. (Motion, pp. 8-9.) The Court finds that the present record is sufficient for the Court to exercise its "gatekeeper" functions. The reliability of the testimony or Drum and Mohr needs no further pretrial testing. United States v. Jawara. 474 F.3d 566, 582-83 (9th Cir. 2007); United States v. Cooper, 91 F. Supp. 2d 79, 82 (D.D.C. 2000) ("the interests of justice do not require the Court to conduct lengthy hearings when the admissibility of well-established principles can be readily determined at trial).

3. Conclusion.

The Motion is granted in part and denied in part.

---

[11] The Court does not find that Kaas' exploratory discussions with Callahan & Blaine disqualifying.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

    D.  <u>Motion for Privilege Review and Related Relief.</u>

    Avenatti moves for a separate privilege review of material seized by the Government as part of its pre-indictment investigation, discovery concerning the procedures used by the Government Privilege Review Team, and an evidentiary hearing. (Docket No. 286.) The Government filed an Opposition (Docket No. 317; revised opposition), and Avenatti filed a reply (Docket No. 345; revised reply).

    After extended discussion, the Court continued the Motion to November 16, 2020 at 9:00 a.m. Assuming that the Privilege Review Team completes its review of approximately 10,000 documents flagged for further review by November 2, 2020, and reports to the Court and Avenatti, the parties are to submit any further briefing on the Motion by November 9, 2020. In the interim, the Court directed Avenatti to file a further brief by October 23, 2020, showing the linkage, if any, between documents in Exhibit B, the "clawed back" documents, to Mr Steward's recent declaration and Counts 1 through 10 of the Indictment.

                                                                                                  :    0

Initials of Deputy Clerk   lmb