NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6683
     Facsimile: (213) 894-6269
     Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 19-061-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S FURTHER BRIEFING REGARDING DEFENDANT'S MOTION FOR PRIVILEGE REVIEW, EVIDENTIARY HEARING, AND DISCOVERY; GOVERNMENT EXHIBITS 25-31 |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | Hearing Date: November 16, 2020<br>Hearing Time: 10:00 a.m.<br>Location:    Courtroom of the<br>             Hon. James V. Selna |

Pursuant to the Court's instruction (CR 371 at 16), plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Julian L. André and Brett A. Sagel, hereby files its further briefing regarding defendant's motion for

privilege review, evidentiary hearing, and discovery (CR 345; CR 327-1; CR 327-2).

This further briefing is based upon the attached memorandum of points and authorities, the attached exhibits (Gov't Exs. 25-31), the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 9, 2020              Respectfully submitted,

                                     NICOLA T. HANNA
                                     United States Attorney

                                     BRANDON D. FOX
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                            /s/
                                     JULIAN L. ANDRÉ
                                     BRETT A. SAGEL
                                     Assistant United States Attorneys

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA


**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION....................................................1

II.   ARGUMENT........................................................2

      A.   The Court's October 16, 2020, Tentative Order.............2

      B.   Additional Clawed-Back or Segregated Documents............5

           1.   Pachulski Firm-Related Documents.....................5

           2.   Global Baristas-Related Documents....................5

      C.   Defendant's Notice To Withdraw His Motion.................7

           1.   Procedural Background................................8

           2.   Defendant's Claims In His Notice to Withdraw.........9

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**FEDERAL CASES**

In re Eagan Avenatti,
    No. 8:19-bk-13560-SC (C.D. Cal.)................................3

In re Search Warrant Issued June 13, 2019,
    942 F.3d 159 (4th Cir. 2019)...................................2

United States v. de la Jara,
    973 F.2d 746 (9th Cir. 1992)...................................2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

During the October 19, 2020, motions hearing, the Court set a schedule to allow further briefing regarding defendant's pending motion challenging the government's privilege review. The facts and the law remain the same now as they did after the parties fully briefed the issues relating to defendant's motion, and the Court issued its tentative order and heard arguments at the motions hearing. First, defendant still has failed to meet his burden to establish standing to contest the relevant warrants. Second, defendant still has not identified any documents that are actually privileged. Third, defendant still has failed to establish that he personally holds any applicable privilege that could apply to such documents. Fourth, the facts before this Court clearly establish that the government, at all times, has worked in good-faith to avoid any potential privilege issues and adhered to the privilege protocols of the various warrants that defendant never challenged for over a year. And finally, even if potentially privileged documents were inadvertently produced to the Prosecution Team, the appropriate remedy remains exclusion of the documents, which the government already did out of an abundance of caution through self-suppression.

Rather than submit further briefing in connection with his privilege motion, on November 6, 2020, defendant filed a notice to withdraw his motion "without prejudice" and stated he will file a new motion at a later date. As set forth below, the conclusory allegations in defendant's withdrawal notice are baseless. The Court already has a sufficient basis to deny defendant's previously filed motion in its entirety. Defendant's notice to withdraw is thus a

transparent attempt to avoid an adverse ruling on his pending motion and get a proverbial second-bite at the apple. Having now withdrawn his privilege motion, defendant should be precluded from raising any further challenges to the warrants or the privilege review process.

## II. ARGUMENT

### A. The Court's October 16, 2020, Tentative Order

Prior to the October 19, 2020, hearing on defendant's privilege motion, the Court issued a tentative order that addressed the facts and law related to defendant's motion and tentatively concluded that defendant's motion should be "denied in its entirety." (October 16, 2020, Tentative Order ("Tentative Order") at 21.) The Court's analysis was correct and nothing has changed since the hearing.

The Court's Tentative Order first distinguished the present case and circumstances from the Fourth Circuit case, In re Search Warrant Issued June 13, 2019, 942 F.3d 159 (4th Cir. 2019), upon which defendant heavily relies. (Tentative Order at 19.) Primarily, the Court highlighted that the claimant in the Fourth Circuit case challenged the warrant within three days, unlike defendant here who "sat on his rights for more than a year," which the Court noted was "likely fatal" to defendant's motion. (Id. at 19, n.14 (citing United States v. de la Jara, 973 F.2d 746, 749-50 (9th Cir. 1992)).)

Next, the Court noted that despite defendant's burden to establish that the documents in question were in fact privileged, defendant "offer[ed] nothing, and point[ed] to no specific document." (Tentative Order at 19.) To the Prosecution Team's knowledge, defendant still has not offered anything or identified any document that is in fact privileged, or established that defendant personally holds any privilege that could apply. Thus, defendant has not met

2

his burden to establish that the government obtained any privileged document for which defendant holds the privilege, or that the government used any such document to defendant's detriment.

The Court further stated that "there are substantial questions whether Avenatti holds any attorney-client privilege with respect to EA LLP documents rather than the current bankruptcy receiver." (Id. at 19-20.) At the hearing, in response to whether defendant has standing to challenge the warrants to search Eagan Avenatti LLP ("EA LLP") materials, defense counsel stated, "Yes. The answer is yes. He owned the Eagan Avenatti Law Firm. I don't know how much more standing you can get than that." (10/19/2020 RT 29:24-30:8.) This is demonstrably false. As the government described in detail previously (CR 55, CR 195), and as this Court has held twice (CR 63, CR 199), at the time of the search warrants in March and May 2019, defendant did not own or control EA LLP. Defendant had stipulated to transfer complete control of EA LLP to a court-appointed receiver in February 2019. (CR 55; CR 63.) Furthermore, to the best of the Prosecution Team's knowledge, most of the clawed-back documents relate to communications involving Pachulski Stang Ziehl Jones LLP (the "Pachulski Firm"), which represented EA LLP in the 2017 bankruptcy, In re Eagan Avenatti, No. 8:19-bk-13560-CB, but never represented defendant individually. (CR 350 at 2-3.) Defendant, therefore, does not hold any privilege with respect to communications with the Pachulski Firm. (Id.) Only the current EA LLP bankruptcy trustee can assert privilege over such documents. (Id.)[1]

---

[1] In defendant's response to the government's sur-reply, defendant essentially argued that EA LLP ceased to exist by 2017 because it no longer had two partners (CR 355 at 2-3); however, this

3

The Court, both in its Tentative Order and at the hearing on October 19, 2020, directed defendant to show what linkage, if any, existed between the specific documents defendant submitted in camera as Exhibit B to the Supplemental Declaration of H. Dean Steward, and Counts 1-10 (the "Client Counts"). From what the Prosecution Team can see from defendant's redacted submission (CR 377), defendant likely has not shown any such relevance or linkage. The fact that some of defendant's actions during the 2017 EA bankruptcy may be relevant to the Client Counts, does not establish that all communications with EA LLP's bankruptcy counsel are relevant to the Client Counts.

In its Tentative Order, the Court properly rejected defendant's Sixth Amendment violation claim because those rights did not accrue until the prosecution commenced. (Tentative Order at 20.) The documents at issue pre-date defendant's arrest and indictment, and defendant has at no point identified how the government's seizure of these documents has substantially prejudiced his defense, therefore no Sixth Amendment violation occurred here.

Finally, this Court's Tentative Order noted that the usual remedy for "improper disclosure of privileged material is suppression." (Id. (citation omitted).) Although defendant has failed to establish that there were any improper disclosures or that the material were in fact privileged, the Court is correct that the remedy would be suppression, which has already occurred through the

---

is directly contradicted by defendant's under oath statements and actions since 2017. Defendant repeatedly testified that EA LLP had two partners and clearly treated -- and continues to treat -- EA LLP as an ongoing entity.(10/19/2020 RT 48:11-49:19.) At the October 19, 2020, hearing, the Court invited the government to file exhibits that contradict defendant's claim in the next round of briefing, which the government attaches hereto as government exhibits 25 to 29.

4

government's claw-back of the documents out of an abundance of caution. As the Court observed, the government adhered to the protocols that have been known to defendant since the execution of the search warrants. (Id.) Therefore, none of defendant's other suggested remedies are appropriate or supported by law.

### B. Additional Clawed-Back or Segregated Documents

#### 1. Pachulski Firm-Related Documents

On October 9, 2020, prior to the filing of defendant's revised reply brief and the motions hearing, the Prosecution Team identified one or two additional documents involving the Pachulski Firm, EA LLP's bankruptcy counsel, and then promptly notified defendant and this Court. (CR 343.) At the hearing, the Court reserved judgment on the motion so that the Privilege Review Team could conduct an additional review of these and other documents, and provide the Court and defendant with an in camera filing regarding the results of the further review. Although the Prosecution Team does not know the specific contents of this latest review, the Prosecution Team is unaware of anything in the latest round of clawed-back documents that would change the results in the Court's Tentative Order.

#### 2. Global Baristas-Related Documents

On October 29, 2020, defendant contacted the government, for the first time, to claim the Privilege Review Team inappropriately produced attorney-client privileged documents to the Prosecution Team, notably communications involving the Foster Pepper law firm in Seattle. The government responded that it was unaware of any basis on which defendant could assert such a privilege, as the bankruptcy trustee for Global Baristas US LLC ("GBUS") expressly waived the attorney-client privilege as to any communication with Foster Pepper.

The government, however, advised defendant that the Privilege Review Team would look into defendant's concerns, and that the Prosecution Team did not have access to the portions of the database that contained the search warrant materials. The Privilege Review Team has since clawed-back any documents involving Foster Pepper out of an abundance of caution so it can conduct a further review of the materials. The Privilege Review Team can provide the Court further information regarding these documents, if it has not already done so.

As it relates to these documents, however, the government notes several issues that defendant ignores while baselessly claiming these documents are defendant's own privileged documents. First, as noted above, the bankruptcy trustee for GBUS waived the attorney-client privilege, including as to communications with Foster Pepper. (CR 305-3, Ex. 5.) Defendant may attempt to claim that some of these documents fall outside the scope of the waiver because they relate to Foster Pepper's representation of Global Baristas LLC ("GB LLC") rather than Foster Pepper's representation of GBUS. But GB LLC no longer exists -- it was administratively dissolved in April 2019. (Gov't Ex. 30.) And in March 2019 defendant testified under oath that he no longer had any interest in GB LLC because GB LLC had been sold. (Gov't Ex. 31 at 7-8.)[2] Just like the EA LLP documents discussed above, even if defendant could establish that the documents were actually privileged, defendant cannot establish standing or any legal basis for defendant individually to assert such a privilege. In other words, even if some of the documents involving Foster Pepper

---

[2] Moreover, all payments to Foster Pepper appear to have been made from GBUS bank accounts, as well as EA LLP bank accounts. To the best of the government's knowledge, no payments to Foster Pepper were ever made from GB LLC's bank accounts.

6

fall outside the scope of the GBUS privilege waiver, defendant still does not personally hold the applicable privilege.

Furthermore, defendant has known the government has had all of the discovery he now claims is privileged since May 8, 2020. If defendant "recently discovered" anything, it is simply the result of defendant's lack of diligence in this matter, even after raising misconduct allegations against the government on these very grounds over two months ago. Finally, any potentially privileged documents relating to GBUS or GB LLC would be wholly irrelevant to the Client Counts. The Privilege Review Team, however, will conduct a further review of these materials pursuant to the search protocols, and ensure that the protocols continue to be followed.

**C. Defendant's Notice To Withdraw His Motion**

On November 6, 2020, defendant filed a notice of withdrawal of his motion challenging the privilege review. This filing is simply the latest example of defendant making unsupported accusations, based on false and misleading facts, in an attempt to further delay his prosecution. Even after this Court reserved judgment on the motion to give defendant additional time to provide information linking the clawed-back documents to the Client Counts and to obtain additional information about other potentially privileged documents, defendant still has no legal or factual basis to support his motion. Defendant's notice of withdraw is an insincere attempt to avoid an adverse ruling on the motion, get a proverbial second-bite of the apple, and start the motion practice over.

Although defendant unilaterally asserts that he is withdrawing his motion "without prejudice," any such withdrawal should be <u>with</u> prejudice. Having withdrawn his motion after the Court issued a

7

tentative order indicating it intended to deny the motion in its entirety,[3] defendant should be precluded from re-litigating these same issues in the future.[4] The government, however, will briefly respond to the false and misleading claims in defendant's notice in order to provide the Court with facts to establish that defendant's notice is made in bad-faith and that defendant cannot establish a particularized showing of good cause to file a new motion.

### 1. Procedural Background

After a stipulation by defendant (CR 170), the Court ordered the parties to file all pre-trial motions by September 14, 2020 (CR 171). On September 3, 2020, defendant asked that this Court stay the motions deadline pending a yet-to-be filed motion by defendant challenging the privilege review process in this case. (CR 260.) The Court set a briefing schedule for the privilege motion and "decline[d] to stay all other motion practice." (CR 263.) On September 13, 2020, defendant filed a motion to extend the September 14, 2020, motions deadline. (CR 274.) The Court denied the motion and found that defendant could "apply for the late filing of any motion upon a particularized showing of good cause relating the specific issues raised by any late tendered motion." (CR 295.)

On September 14, 2020, defendant filed his privilege motion. (CR 286.) After full briefing on defendant's privilege motion, including defendant filing the initial motion (CR 286), a reply (CR 327), a revised reply brief (CR 339), a response to the government's

---

[3] The government respectfully requests that the Court file a copy of its October 16, 2020, Tentative Order so that there is a clear record of the ruling that defendant now seeks to avoid.

[4] Defendant remains welcome to work with the government and the Privilege Review Team to identify and resolve any legitimate privilege issues going forward.

8

sur-reply (CR 355), as well as arguments at a hearing on the motion, the Court continued the motions hearing to November 16, 2020, and set a schedule for further briefing by the parties. (CR 371.) Among other things, the Court ordered the parties to submit any further briefing regarding the privilege motion by November 9, 2020. (CR 371.) Even though defendant agreed to the briefing schedule the Court set at the hearing, on October 22, 2020, defendant filed an <u>ex parte</u> application for a new briefing schedule related to his privilege motion. (CR 359.) The Court denied defendant's request "without prejudice to relief in light of actual developments affecting the deadlines which the Court set at the October 19, 2020 hearing." (CR 363.)

        2.   <u>Defendant's Claims In His Notice to Withdraw</u>

Rather than complying with the briefing schedule set by the Court at the October 19, 2020, hearing and then reaffirmed by the Court a week later (CR 363), defendant seeks to withdraw his motion and unilaterally asserts that such withdrawal will be "without prejudice" to file a new motion months after the motions deadline has passed. To "justify" his claim that he should be able withdraw his motion "without prejudice" and file a "new" motion seeking "new" remedies with a new briefing schedule, defendant includes several assertions, unsupported by any evidence or declaration, that are false and/or misleading. Defendant's baseless claims do not justify providing defendant an opportunity to re-litigate his previously filed privilege motion in the future.[5]

---

[5] Throughout this case defendant has made baseless claims of misconduct and either never filed the motions he claimed he would or worse, filed his meritless claims wasting considerable resources of

9

Defendant claims that since the filing of his motion, "including within the last three court days," defendant has learned of "pervasive receipt, mishandling and review of attorney-client privileged materials and documents by the prosecution team," based on information the Privilege Review Team recently disclosed to defendant. (CR 378 at 2.) First, defendant fails to acknowledge that the "new" information of which defendant claims he just learned was provided to him by the Privilege Review Team in connection with his pending privilege motion pursuant to the Court's direction at the October 19, 2020, hearing. The Court specifically set a briefing schedule that would (1) allow the Privilege Review Team to conduct a further review of the search warrant materials and (2) allow defendant to supplement his motion based on any new information provided by the Privilege Review Team. (10/19/2020 RT 49:21-50:7.) In other words, the current briefing schedule, which defendant has now disregarded, already provided defendant an opportunity to address the additional information provided by the Privilege Review Team. Second, defendant's continued rhetoric aside, he still has not identified a single document that is actually privileged and for which defendant personally holds the privilege. Instead, defendant continues to insist, without providing any legal or factual support, that all clawed-back documents are in fact privileged and that he personally holds the privilege over all such documents. Third, the documents to which defendant now refers, are documents that defendant knew the Prosecution Team had in its possession since May 2020.

Defendant also appears to claim that withdrawal of his privilege

---

all involved simply to withdraw the motions alleging misconduct before a ruling. (See, e.g., CR 321.)

10

motion is necessary because he now intends to argue that the privilege waiver executed by the bankruptcy trustee for GBUS is ineffective or inapplicable as to certain documents. (CR 378 at 3, n. 1.) Defendant, however, has been aware that the GBUS bankruptcy trustee waived the attorney-client privilege since the outset of this case. (See, e.g., CR 44 at 8, n. 4, 22-23.) The GBUS privilege waiver, which explicitly covered any privileged communications with Foster Pepper, was attached as an exhibit to the search warrant affidavits submitted in connection with this investigation, all of which the government produced to defendant in discovery in May and June 2019. (See CR 305-3, Gov't Ex. 5; see also CR 305-3, Gov't Ex. 2 at 75, Ex. 6 at 80, Ex. 8 at 21.) The GBUS privilege waiver was then reproduced to defendant again in July 2019, at defendant's request. (CR 44 at 22-23; 7/8/2019 RT 23:3-23.) Yet, at no point since the GBUS privilege waiver was produced in discovery in May 2019 or since the search warrant materials were released to the Prosecution Team and reproduced to defendant in May 2020, did defendant ever claim that the privilege waiver would not apply to certain documents. And as noted above, Section II.B.2., defendant has no standing to assert the privilege on behalf of GB LLC or GBUS.

    Defendant also claims that the government has not provided defendant with information he "repeatedly" sought. (CR 378 at 2.) First, as the government previously argued in its opposition to defendant's motion (CR 317 at 24-25), defendant has no legal basis to demand or receive the information about which he complains via discovery. Second, this Court tentatively ruled it would deny defendant's privilege motion in its entirety, including defendant's requests for discovery. Therefore, the government was entirely

11

1  justified in not providing defendant with information he was neither
2  entitled to nor able to obtain pursuant to his motion.
3      Finally, defendant repeats his claim that the government's
4  "conduct is highly prejudicial and operates to violate Mr. Avenatti's
5  attorney-client privilege and his other fundamental rights, including
6  his right to due process and other rights guaranteed under the
7  Constitution and the law of the Ninth Circuit." (CR 378 at 2.) But
8  defendant has not identified a single document in which he
9  individually holds an attorney-client privilege that the Prosecution
10 Team has or had in its possession. Nor has defendant demonstrated
11 that he has been prejudiced by the Prosecution Team's receipt of any
12 potentially privileged documents -- particularly considering that the
13 government has already self-suppressed any potentially privileged
14 documents. And defendant cites no facts or law to support his claim
15 that the government's purported conduct violates defendant's
16 constitutional rights or any other rights.
17     Indeed, contrary to defendant's repeated claims, the record
18 demonstrates that the government has at all times made good faith
19 efforts to address and avoid any potential privilege issues in this
20 case. The Privilege Review Team undertook a detailed and cautious
21 review of the search warrant materials, which led to over 40,000 out
22 of approximately 160,000 documents being withheld from the
23 Prosecution Team as potentially privileged. (10/19/2020 RT 43:6-
24 44:1.) Then, on two separate occasions, the Prosecution Team
25 requested that the Privilege Review Team conduct a further review of
26 the search warrant, which led the Privilege Review Team out of an
27 abundance of caution to claw-back 299 additional documents in June
28 2020 and 307 additional documents last week. The Privilege Review

Team has also clawed-back and segregated any documents involving Foster Pepper out of an abundance of caution so that it can address defendant's claim that such documents may not fall within the scope of the privilege waiver executed by the GBUS bankruptcy trustee. This is precisely how a privilege review process of this size and scope should work. The government's diligent efforts to avoid potential privilege issues do not constitute misconduct, do not justify any of the relief defendant sought in his initial motion, and do not justify allowing defendant to re-litigate these issues in the future.

In sum, no facts exist, and certainly none are cited in defendant's notice to withdraw his motion, to justify starting this entire motion practice over. The Court's briefing schedule already permitted defendant to supplement his motion with further factual allegations or legal claims. Alternatively, defendant could have sought leave of the Court for further time to supplement his claims. (See CR 363.) But defendant does not have a right to unilaterally withdraw his motion "without prejudice" and then refile a new motion at a later date. The Court should allow the withdrawal of defendant's privilege motion, but any such withdrawal should be with prejudice. By withdrawing his motion, defendant has forfeited his ability to raise any further challenges to the search warrants, the privilege review protocols, the privilege review process, or the Prosecution Team's receipt of potentially privileged materials.