H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S EX PARTE APPLICATION FOR AN ORDER EXTENDING DEFENDANT'S TEMPORARY RELEASE |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this *Ex Parte* Application for an Order Extending Defendant's Temporary Release from January 16, 2021 to March 31, 2021.

Dated: December 28, 2020           Respectfully submitted,


                                   /s/ H. Dean Steward
                                    H. DEAN STEWARD

                                   Attorney for Defendant
                                   MICHAEL JOHN AVENATTI

Pursuant to this Court's prior Orders, Defendant Michael John Avenatti ("Mr. Avenatti") is presently on temporary release and home confinement in Venice, California. If necessary, the defense is prepared to file a formal noticed motion to extend Mr. Avenatti's temporary release for the reasons set forth in (a) the Opposition [Docket No. 271] to the Government's Motion to Terminate and Not Further Extend Defendant Michael John Avenatti's Temporary Release, which is pending, and (b) the accompanying declarations filed with the Opposition, including that of board-certified infectious disease specialist Dr. F. Ramzi Asfour (under seal) [Docket No. 280]. Absent a further extension, Mr. Avenatti will be required to self-surrender on January 16, 2021.

The COVID-19 pandemic is at its most dangerous level since the crisis began and far worse than when the Court previously ordered and extended Mr. Avenatti's release. Records for infections, hospitalizations and deaths are being broken almost every day in Orange County, Los Angeles County, and California. According to the Los Angeles County Health Department, one person dies of COVID-19 in Los Angeles County every ten minutes on average. Field hospitals are being constructed in Orange County hospital parking lots in an attempt to save lives, while nurses and health care workers in the county are struggling and protesting their work conditions and lack of resources to deal with the onslaught of cases. The situation is dire and growing worse by the day. And while a vaccine may help stem the tide, mass distribution and inoculation of the general public appear to be months away and it is unclear the level of impact the vaccine may have and when.

Further, <u>the health metrics for Orange County relating to the virus have gotten far worse since this Court's last few orders extending Mr. Avenatti's home confinement due to the pandemic.</u> For instance, Orange County is now routinely reporting over 3,000 cases a day and recently registered 4,406 cases in a single day

1

- a new record.  Hospitalizations and ICU admissions have reached all-time highs in the last week, with over 1,950 cases in Orange County requiring hospitalization and over 430 of those cases requiring intensive care.  Orange County and Los Angeles County are presently in the most restrictive state tier (purple) and there is no indication that either county will be moved into a less restrictive tier in the coming weeks.  For instance, the Orange County adjusted daily case rate per 100,000 is now approximately <u>51.8%</u> and the testing positivity rate is over <u>15%</u>, levels unimaginable even a few weeks ago.  The adjusted ICU bed availability in the county is 0%, with the unadjusted percentage standing at approximately 7.3%.  The pandemic data for Los Angeles County is even worse.  As a result, local health experts are warning of severe consequences that will result in the coming weeks and months.  Dr. Christina Ghaly, Director of the Los Angeles County Department of Health Services, warned last week that "We have never seen daily death rates this high during the course of the pandemic and the model predicts the worse is yet to come."

In addition, comparison of the data from March/April, when Mr. Avenatti was initially ordered released to home confinement, and today demonstrates that the current risks and fallout from the COVID-19 pandemic are far greater now in the Central District.  This comparison is even more dramatic than when defendant filed his Opposition.  *See*, *e.g.*, Exhibit A to Docket No. 271 (extensive comparison of the data and citing to multiple sources).  The rate of infection is far greater; the rate of death is higher; the rate of hospitalization is higher; the number of cases has exploded; and the number of deaths is higher.  According to Johns Hopkins University, California has now surpassed over 2,070,000 confirmed cases statewide (a 45,000% increase over when Mr. Avenatti was ordered released and California had 4,600 cases in total).  Over 24,000 deaths have also been recorded in the state (a 21,800% increase over when Mr. Avenatti was ordered released and

California had 110 deaths in total).  Further, when Mr. Avenatti was ordered released, Orange County had a <u>total</u> of 3 deaths and 321 cases.  Those numbers are now routinely exceeded *each day* and the county has recorded over 1,845 deaths and 146,000 cases according to the Orange County Health Department, an over 61,500% and 45,400% increase, respectively.  Comparing the March/April data for Los Angeles County to today is equally alarming.  The county is currently the epicenter for the pandemic's surge in the state, accounting for approximately 1/3 of all new infections and close to 40% of new deaths.  In a single day last week, the county reported over 16,500 new cases.  Further, the 7-day moving averages for California and Orange and Los Angeles counties are exponentially higher than when Mr. Avenatti was released (and are getting worse).

Moreover, medical expert after medical expert is predicting an increase in cases and deaths, and another "surge" following extensive holiday travel associated with Christmas and New Year's.  Each day brings a slew of experts who are predicting serious problems in the weeks and months ahead, with experts predicting tens of thousands of additional deaths.  For instance, Dr. Anthony Fauci publicly stated yesterday that he "agree[s] that the worst is ahead of us" and "we are about to experience a surge upon a surge."  He also recently predicted that the country will be facing a "really dark time" in January.  Dr. Robert Redfield, Director of the CDC, stated earlier this month that the next three months will be "rough times" and *"the most difficult time in the public health history of this nation, largely because of the stress that's going to be put on our health care system"*  He added, "This is why it is so important at this time . . . to really embrace the mitigation steps we have tried to stress."  Dr. Andrew Noymer, a UCI epidemiologist, publicly stated within the last week that he is "really worried that these waves of cases are coming on top of an already overloaded health care system."  In fact, it is widely believed that the next three months will be the

3

deadliest during the entire pandemic, with daily deaths easily exceeding 3,000 and possibly reaching close to 5,000 as the nation's health care system becomes overloaded.

Meanwhile, the rate of COVID-19 infections and deaths in Southern California prisons and jails has increased significantly. Recent outbreaks have occurred in the Metropolitan Detention Center ("MDC") in Los Angeles, the Western Region Detention Facility in San Diego, and the Orange County Jail system. Over 200 cases have been reported at the MDC alone, which means that approximately 30% of the jail's population has become infected. Conditions have become so serious in the Orange County Jail system and precautions so lax that the Sheriff has been ordered by Superior Court Judge Peter Wilson to release or transfer approximately 50% of the jail's population, including many individuals who are charged with violent crimes (an appeal of the order is pending). The number of infected inmates at the jail skyrocketed in approximately two weeks from 138 (on December 11) to 1,099 (on December 28).

Further, a new study by the Marshall Project has found that there are more than 275,000 infections of inmates or prisoners across the United States - a staggering 20% infection rate. This is consistent with the American Medical Association's determination in July that "COVID-19 case rates have been substantially higher and escalating much more rapidly in prisons than in the U.S. population." The Journal article further provides a telling chart on the rate of coronavirus infection in prisons versus the wider population, and there can be no dispute – prisons and jails are vastly more dangerous. *See* B. Saloner, Ph D., et al., *Covid-19 Cases and Deaths in Federal & State Prisons*, J. Am. Med. Assoc. (July 8, 2020). The researchers found that the infection rate for inmates was 5.5 times higher than the U.S. population and the death rate in the prison population was 3.0 times higher. Other data shows that the risk remains exceedingly high in jails and

4

prisons. *See*, *e.g.*, charts at end of Exhibit A to Docket No. 271. Another recent study by the Prison Policy Institute shows that the poor management of COVID-19 risks in jails and prisons across the country has also contributed significantly to the dramatic spread of the pandemic *outside* prison walls, producing as many as 500,000 additional cases outside prisons and jails in just three months.

Importantly, the risks to Mr. Avenatti were he to contract the virus remain significant according to expert Dr. F. Ramzi Asfour. *See* Declaration of Dr. F. Ramzi Asfour (under seal) and attached report (attesting to the risks to Mr. Avenatti's health conditions and the risks to him were he to be remanded) [Docket No. 280].

Accordingly, in order provide additional time for the Court to rule on the government's pending motion and for the Court and the parties to address any further motion by the defense (to be filed if necessary), as well as examine the data relating to the virus in the interim time period, defendant respectfully requests that the Court extend his temporary release to March 31, 2021 under the same conditions previously ordered.

Counsel for the defendant and the government conferred and the government's position is that they oppose the application for the reasons set forth in their prior motion. (CR 262, Sections III A-D).

Dated: December 28, 2020          Respectfully submitted,

/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

5

# CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672. I am not a party to the above-entitled action. I have caused, on December 28, 2020, service of the defendant's:

EX PARTE APPLICATION FOR AN ORDER EXTENDING DEFENDANT'S

TEMPORARY RELEASE

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA JULIAN ANDRE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 28, 2020

/s/ H. Dean Steward
H. Dean Steward