1  TRACY L. WILKISON
   Acting United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
4  Assistant United States Attorney
   Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-2435
7       Facsimile: (213) 894-6269
        Email:    Alex.Wyman@usdoj.gov
8
   BRETT A. SAGEL (Cal. Bar No. 243918)
9  Assistant United States Attorney
        Ronald Reagan Federal Building
10      411 West Fourth Street, Suite 8000
        Santa Ana, California 92701
11      Telephone: (714) 338-3598
        Facsimile: (714) 338-3708
12      Email:    Brett.Sagel@usdoj.gov

13 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
14
                    UNITED STATES DISTRICT COURT
15
                  FOR THE CENTRAL DISTRICT OF CALIFORNIA
16
   UNITED STATES OF AMERICA,          No. SA CR 19-061-JVS
17
             Plaintiff,               GOVERNMENT'S OPPOSITION TO
18                                    DEFENDANT'S MOTION FOR AN ORDER TO
                                      SHOW CAUSE RE CIVIL CONTEMPT AND
19               v.                   FINDING OF CONTEMPT; DECLARATION
                                      OF BRETT A. SAGEL, EXHIBITS
20 MICHAEL JOHN AVENATTI,
                                      [GOVERNMENT'S EXHIBITS 4, 6, 8,
21           Defendant.               AND 10 ARE LODGED UNDER SEAL
                                      CONCURRENTLY HEREWITH]
22
                                      Hearing Date: April 5, 2021
23                                    Hearing Time: 9:30 AM

24

25      Plaintiff United States of America, by and through its counsel

26 of record, the Acting United States Attorney for the Central District

27 of California and Assistant United States Attorneys Brett A. Sagel

28 and Alexander C.K. Wyman, hereby files its Opposition to defendant

MICHAEL JOHN AVENATTI's Motion for an Order to Show Cause re Civil Contempt and a Finding of Contempt (CR 415).

This Opposition is based upon the attached memorandum of points and authorities, the attached Declaration of Brett A. Sagel and accompanying exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 15, 2021            Respectfully submitted,

                                 TRACY L. WILKISON
                                 Acting United States Attorney

                                 BRANDON D. FOX
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                 _____/s/_____
                                 BRETT A. SAGEL
                                 ALEXANDER C.K. WYMAN
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

I.    INTRODUCTION.............................................................1

II.   RELEVANT PROCEDURAL BACKGROUND...........................................1

III.  ARGUMENT.................................................................7

      A.    The Government Has Complied, and Will Continue to
            Comply, with Its Discovery Obligations.....................8

            1.    J.C. Emails.......................................10

            2.    Text Messages.....................................11

            3.    Criminal History Reports..........................11

            4.    Remaining Discovery Allegations...................13

      B.    The Government Has Not Violated the Court's Order.......16

      C.    Defendant's Repeated and Meritless Misconduct Claims
            Reflect a Bad Faith Attempt to Delay and Distract.......17

IV.   CONCLUSION..............................................................19

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                          PAGE

**Cases**

Brady v. Maryland,

  373 U.S. 83 (1963) ......................................... 4, 5, 7

In re Dual-Deck Video Cassette Recorder Antitrust Litig.,

  10 F.3d 693 (9th Cir. 1993) .......................... 8, 10, 14, 17

Shillitani v. United States,

  384 U.S. 364 (1966) ............................................ 7

**Rules**

Fed. R. Crim. P. 5(f) ....................................... passim

**Other Authorities**

Pub. L. N. 116-182, 234 Stat. 894 (Oct. 21, 2020)............... 4, 5

C.D. Cal. Gen. Order No. 21-02 (Mar. 8, 2021),

  available at https://www.cacd.uscourts.gov/sites/default/files/

  general-orders/GO%2021-02.pdf ................................... 7

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      Without citation or attribution, and copying a motion nearly

4 word for word from another attorney in an unrelated criminal

5 prosecution against former National Security Advisor Michael Flynn in

6 the District of Columbia (see Ex. 1),[1] defendant MICHAEL JOHN

7 AVENATTI seeks to hold the government in civil contempt for alleged

8 violations of this Court's recent Order under Rule 5(f) of the

9 Federal Rules of Criminal Procedure.  (Mot. at 3.)  The government

10 has not violated this or any other court order, and, as the

11 government has repeatedly informed defendant, it has complied and

12 will continue to comply with its discovery obligations.  Defendant

13 offers no evidence to the contrary, choosing yet again to rely on

14 unsupported (and inaccurate) speculation and accusations.  Indeed,

15 there is no clearer indication that defendant's motion is unmoored

16 from the facts in this case than his plagiarizing of a motion based

17 on entirely different facts and circumstances.[2]  Defendant's claims

18 in the present motion, like all the previous misconduct claims he has

19 made in this case, are baseless.  The Court should deny the motion.

20

## II.   RELEVANT PROCEDURAL BACKGROUND

21      In the almost two years since defendant was first arrested in

22 March 2019, the government's prosecution team has produced to

23 defendant over 1.1 million pages of discovery, including reports,

24 financial records, transcripts, and other documents.  (See CR 99,

25

26      [1] All exhibit citations are references to exhibits attached to
the accompanying Declaration of Brett A. Sagel.

27      [2] The Honorable Emmet G. Sullivan, United States District Judge,
denied the nearly identical motion in the Flynn case.  United States
28 v. Michael T. Flynn, No. 17-232-EGS, Dkt. 143 (D.D.C. Dec. 16, 2019)
(attached hereto as Exhibit 9).

195, 293, 399 (describing government discovery productions).)  Within these productions are numerous materials that either fall outside the scope of the government's discovery obligations or were produced far in advance of any discovery deadlines, including, for example Jencks Act disclosures that were produced many months -- and years -- in advance of trial.  (Id.)  During the same time, the government's privilege review team has separately produced to defendant additional materials, as well as complete copies of certain digital devices obtained during the government's investigation.  (Id.)  As of the time of this filing, trial on Counts 1-10, the Client Counts, remains approximately four months away, and trial on the remaining counts is seven months away.

Despite the government's robust discovery productions far in advance of trial, defendant has repeatedly lobbed unsupported misconduct claims against the government related to discovery, often only to withdraw them.  On September 14, 2020, for example, defendant filed a motion for disclosure of grand jury materials that he believed -- based on unsubstantiated and erroneous claims as well as inaccurate speculation -- were obtained through abuse of the grand jury process.  (CR 276, hereinafter referred to as defendant's "grand jury motion.")  Other than a declaration from counsel saying that he "became aware that another grand jury had been convened," that two witnesses had received subpoenas from that grand jury, and that one of the witnesses "testified before the grand jury" (CR 276-1 ¶¶ 2-4), defendant offered no support for his claims that the government was misusing the grand jury process for its own discovery purposes.  The government opposed the motion, arguing, among other things, that defendant had failed to carry his burden of demonstrating that grand

2

1   jury abuse had occurred -- for the simple fact that no such abuse had
2   occurred.  (CR 302, 303.)[3]  As part of its opposition, the government
3   lodged an in camera submission with potential grand jury materials it
4   had obtained.  (Id. at 16.)  In response, defendant withdrew his
5   motion, advising that the Court "need not review the motion, the
6   opposition . . . , or the in-camera submission filed by the
7   government in connection with the opposition."  (CR 321.)

8       Also on September 14, 2020, defendant filed a motion alleging
9   various forms of misconduct and seeking a variety of remedies and
10  disclosures, including an evidentiary hearing, based on the
11  inadvertent review by the government's prosecution team of a handful
12  of emails between defendant's office manager and his former law
13  firm's bankruptcy counsel that were subsequently removed from the
14  prosecution team's possession.  (CR 286, hereinafter referred to as
15  defendant's "privilege motion.")  The government opposed this motion
16  as well, noting that defendant appeared to be on a fishing expedition
17  and maintaining that defendant had failed to carry his burden of
18  demonstrating that any misconduct had occurred -- again, because no
19  misconduct had occurred.  (CR 305, 317.)  Defendant then submitted
20  several filings in reply, none of which provided any evidence of
21  misconduct by the government.  (CR 327, 345, 355.)[4]

---

23  [3] The government also noted that defendant's grand jury motion
    and the attached declaration were factually incorrect, such as
24  claiming that "Witness Two" testified before the grand jury -- a fact
    that defense counsel could have easily determined was untrue by
25  asking the witness's counsel prior to the filing.  (CR 302 at 8-9.)

26  [4] Defendant's numerous filings related to his privilege motion
    claimed, in conclusory fashion, that the documents at issue were
    privileged and defendant maintained the privilege.  Although
27  defendant withdrew his motion before a ruling could be issued,
    defendant likely held no such privilege to the documents in question
28  -- if the documents even contained privileged information in the
    first place.

3

1    After the Court issued its tentative order denying defendant's

2 privilege motion, heard arguments from the parties during the October

3 19, 2020, motions hearing, and gave defendant additional time to

4 supplement his privilege motion, defendant withdrew his motion.  (CR

5 378.)  In withdrawing his motion, defendant claimed that new

6 information "necessitate[d] the withdrawal of the prior Motion and

7 the filing of a new motion," which promised to seek such draconian

8 relief as "dismissal of the indictment, the dismissal of various

9 counts in the indictment, the disqualification of one or more members

10 of the prosecution team, sanctions under the Court's inherent powers,

11 an evidentiary hearing, and/or discovery."  (Id.)  Defendant was

12 given multiple opportunities to file a renewed motion, including as

13 recently as the January 6, 2021, status conference at which the Court

14 set a deadline of January 22, 2021, for any new motion.  Defendant

15 never filed such a motion.[5]

16    On January 18, 2021, defendant filed a motion requesting an

17 order by the Court requiring the government's compliance with the Due

18 Process Protections Act ("DPPA").  (CR 398.)  The DPPA is a recent

19 statute that amended Rule 5 of the Federal Rules of Criminal

20 Procedure to require courts to provide a "Reminder of Prosecutorial

21 Obligation" in all criminal proceedings by issuing an order "that

22 confirms the disclosure obligation of the prosecutor under Brady v.

23 Maryland, 373 U.S. 83 (1963) and its progeny, and the possible

24 consequences of violating such order under applicable law."  Pub. L.

25

26 ───────────────

27    [5] As detailed in Section III.C., infra, in addition to these two
motions in which defendant accused the government of misconduct only
to withdraw his motion, defendant on at least two other occasions

28 stated in open court he would file misconduct motions against the
government, never to file the motions.

N. 116-182, 234 Stat. 894 (Oct. 21, 2020) (emphasis added); Fed. R. Crim. P. 5(f).  The government filed a response two days later.  (CR 405.)  Despite defendant's repeated claim in the instant motion that the government objected to an order under the DPPA (Mot. at 2, 3), the government stated plainly in the first paragraph of its response that the government had "no objection to the Court entering an order consistent with the requirements of Federal Rule of Criminal Procedure 5(f)."  (CR 405 (emphasis added).)  The government explained, however, that defendant's motion mischaracterized the DPPA, which did not expand or alter the government's existing discovery obligations, and lodged a proposed order that the government believed was more appropriate than the proposed order defendant submitted with his motion.  (Id.)

The Court then issued an Order on January 25, 2021, that differed substantially from defendant's proposed order.  (CR 408, "the Rule 5(f) Order.")  The Rule 5(f) Order acknowledged that the government "has a continuing obligation to produce all information or evidence known to the government that is relevant to the guilt or punishment of a defendant, including, but not limited to, exculpatory evidence," and then ordered the government to produce such evidence to defendant "in a timely manner."  (Id. at 1.)

On February 17, 2021, counsel for defendant sent a letter to the government making a "Demand for Immediate and Full Compliance" with the Court's Rule 5(f) Order.  (Ex. 2.)  The letter, which also erroneously stated that the Court issued the Rule 5(f) Order over the government's objection, requested various categories of evidence that defense counsel alleged the government had failed to produce, including criminal history reports of the victims of defendant's

1    crimes.  (Id. at 21-22.)  Defense counsel's letter then "demand[ed]"
2    that the government comply with its discovery obligations and the
3    Court's Rule 5(f) Order by "no later than March 5, 2021," or else
4    defendant would "seek the imposition of significant consequences,"
5    such as "dismissal of all charges."  (Id. at 23-24.)

6         The government responded to defense counsel on March 1, 2021.
7    (Ex. 3.)  In its response, the government stated, as it has
8    repeatedly throughout this case, that it "is aware of its discovery
9    obligations, has complied with them, and will continue to do so," and
10   that defendant's repeated accusations that the government had
11   withheld discovery were baseless.  (Id. at 25.)  While making clear
12   that neither Rule 5(f) nor the Court's Order expanded the
13   government's discovery obligations, the government also agreed to
14   voluntarily produce additional materials that fall outside the scope
15   of the government's discovery obligations -- such as correspondence
16   and documents the government received from defendant's former driver,
17   J.C. -- as well as materials that need not be and are typically not
18   produced until close to trial, such as the criminal history reports
19   of defendant's victims.  (Id. at 25-26 ("To be clear, these documents
20   are similarly being produced voluntarily at this time as they exceed
21   our discovery obligations."); see also Ex. 4 at 27-71 (J.C.
22   materials).)  With regard to the criminal history reports, the
23   government wrote that, "[a]t least with respect to one victim, who is
24   identified in the Indictment as Client 3, [defendant] appears already
25   to have been in possession of this information for some time, given
26   that [defendant] spent over a day at his state bar proceedings cross-
27   examining Client 3 about his criminal history and the details
28   regarding his criminal history."  (Ex. 3 at 25-26.)  The government

further noted that "Client 3's felony conviction was also included in the complaint affidavit (CR 1 at 5 n.1), which [defendant] received when arrested on March 25, 2019."  (Ex. 3 at 26.)

On March 8, 2021, the Chief Judge of the Central District of California issued a General Order, In Re: Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act (attached hereto as Exhibit 5).  C.D. Cal. Gen. Order No. 21-02 (Mar. 8, 2021), available at https://www.cacd.uscourts.gov/sites/default/files/general-orders/GO%2021-02.pdf.  The General Order required the judges of this District to issue the following order in all criminal cases:

> In all criminal proceedings, the prosecutor is ordered to comply with the disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and is reminded of the possible consequences of not doing so, including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt, referral to a disciplinary authority, and sanctions.

Id. Consistent with the government's position in both its filings with the Court and the Ninth Circuit and its discovery letter to defendant, the General Order makes clear that Rule 5(f) does not expand or alter the government's discovery obligations.

That same day, defendant filed the instant motion seeking to hold the government in civil contempt.  The sole basis for such a remedy provided in defendant's motion is his claim that the government has failed to comply with the Court's Rule 5(f) Order.

**III. ARGUMENT**

Defendant asks the Court to hold the government in civil contempt, a remedy generally used to address a party's "refusal to obey a court order."  Shillitani v. United States, 384 U.S. 364, 371 (1966).  A party seeking civil contempt "must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing

7

1  evidence,' not merely a preponderance of the evidence," and that such

2  violation was "beyond substantial compliance" and "not based on a

3  good faith and reasonable interpretation of the order."  In re Dual-

4  Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th

5  Cir. 1993).

6       Defendant's motion fails because the government has properly

7  complied with its discovery obligations in this case and has not

8  violated any court order.  It is simply another example of

9  defendant's repeated, meritless accusations of government misconduct

10 that defendant appears to bring before this Court in bad faith for

11 delay or distraction.  The Court should deny the motion.

12      **A.   The Government Has Complied, and Will Continue to Comply,
             with Its Discovery Obligations**

13

14      Implicit in defendant's motion is the allegation that the

15 government has violated the Court's Rule 5(f) Order by not complying

16 fully with its discovery obligations.  Defendant goes so far as to

17 claim that, "as of the date of this motion, the government has

18 refused to state that it has complied with the clear requirements of

19 the Order."  (Mot. at 6.)  Yet in its response letter to defendant on

20 March 1, 2021, and on numerous occasions in previous correspondence,

21 the government repeatedly represented to defendant, "the government

22 is aware of its discovery obligations, has complied with them, and

23 will continue to do so."  (Ex. 3 at 25.)[6]  Rule 5(f) does not alter

24

25 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26      [6] Defendant, without a specific citation or quotation, claims
   the government has made false representations to the Court and
   defense "that all Brady and Rule 16 material had long ago been
27 produced."  (Mot. at 6 (emphasis added).)  The government does not
   believe it has ever made such a representation but has consistently
28 and repeatedly told this Court and defendant that it has complied
   with and will continue to comply with its discovery obligations.

8

or expand the government's discovery obligations.  Nor does the Court's Rule 5(f) Order, which, consistent with Rule 5(f), simply confirms the government's continuing duty to disclose <u>Brady</u> and Rule 16 materials to the defense in a timely manner.

The government has produced a significant amount of material to defendant in this case, often far in advance of the government's discovery deadlines and including numerous materials that exceed the government's discovery obligations.  The materials defendant claims have been withheld or recently produced by the government either are not <u>Brady</u> or Rule 16, have already been produced, or, just as likely, do not exist.  Without attaching either the materials or the government's recent discovery letter to his motion, defendant claims that the 67 pages of discovery produced on March 1 was "information in the possession of the government that should have been produced long ago pursuant to the government's <u>Brady</u> and Rule 16 obligations." (Mot. at 5-6.)  But even a cursory review of these materials, which the government concurrently submits as Exhibit 4 <u>under seal</u> consistent with the Protective Order, shows that, to the extent they are not being produced far in advance of the government's discovery deadlines (in the case of the witness criminal history reports and witness statements), they fall outside the government's discovery obligations.  The government's discovery letter made this clear: "The government is providing these materials to you voluntarily, at your request, even though they either exceed the government's discovery obligations or are being produced far in advance of the government's discovery deadlines."  (Ex. 3 at 25.)

1

###          1.    J.C. Emails

2      For example, 45 of those 67 pages are emails and attached

3 documents that government agents received from defendant's former

4 driver, J.C.  (Ex. 4 at 27-71.)  Defendant's claim that the

5 government "listed the individual as a witness in this case" (Mot. at

6 6 n.5) is, at best, misleading.  The government stated explicitly in

7 providing that list that the government was merely providing "an

8 updated list of victims and potential witnesses with whom defendant

9 would be precluded from contacting either directly or indirectly

10 (other than through counsel)," as part of defendant's bail

11 conditions.  (Ex. 6 at 1.)  Moreover, the government indicated that

12 the "list does not necessarily include all potential victims or

13 witnesses in connection with the government's prosecution and

14 investigation, and may include some witnesses who would be unlikely

15 to be called to testify at trial or we have yet to formally

16 interview."  (Id.)

17      Further, in opposition to defendant's grand jury motion, the

18 government provided the Court, in camera, the emails and documents

19 J.C. sent the government for the Court to determine whether the

20 material was discoverable pursuant to defendant's motion.  (CR 302 at

21 16; 9/28/2020 In Camera Filing Exs. 6-8.)  Defendant withdrew his

22 grand jury motion and asked that the Court not review the

23 government's opposition or in camera submission.  (CR 321.)  The

24 government also informed the Court that J.C. is not expected to be a

25 government witness.  (9/28/2020 In Camera Filing at 7 n.2.)  The

26 Court granted the government's application to file these exhibits in

27 camera.  (CR 311.)

28

1   More fundamentally, however, it is plain from reviewing the
2   documents from J.C. that they are not "exculpatory," and they merely
3   contain nonsensical and irrelevant information.  (See Ex. 4 at 27-
4   71.)  They are neither Brady nor Rule 16 material, and they do not
5   otherwise fall within the government's discovery obligations, such as
6   Jencks Act material.  To be clear, the government does not intend to
7   call J.C. as a government witness at trial on the Client Counts.

8       2.   Text Messages

9   Similarly baseless is defendant's claim that the government's
10  March 1 production included "photographs of exculpatory text messages
11  relating to the charges."  (Mot. at 6.)  To start, these text
12  messages are far from exculpatory.  Several text messages are between
13  a Global Baristas employee and EA Employee 1, the office manager at
14  defendant's former law firm, regarding a check deposit, and another
15  text message is from the same Global Baristas employee informing
16  defendant that a reporter asked about him.  (Ex. 4 at 72-77.)  To the
17  extent they are even relevant, they are relevant only to the
18  remaining counts of the Indictment that are not scheduled to be tried
19  until October 2021.  They have nothing to do with the Client Counts.

20  Moreover, defendant's complaint that the text messages "were not
21  previously provided to the defense" (Mot. at 6), is factually
22  inaccurate.  The government previously produced the text messages
23  between the Global Baristas employee and EA Employee 1 on November
24  25, 2019 in producing the contents of EA Employee 1's iPhone 8 Plus.
25  (Compare Ex. 4 at 72-75, with Ex. 10; see also Sagel Decl. ¶ 11.)

26      3.   Criminal History Reports

27  Last among the documents that defendant complains were belatedly
28  produced on March 1 are the criminal history reports of the victims

identified in the Indictment as Clients 1-5.  (Mot. at 6.)  As the Court is aware, the government typically runs criminal history reports of its government witnesses shortly before trial to ensure that it has complied with its <u>Giglio</u> obligations prior to trial. Here, however, the government obtained these reports and provided them early as a courtesy because defendant specifically requested them in his February 17, 2021, letter.  (<u>See</u> Ex. 2 at 22.)

In producing them, the government noted not only that it was producing these materials voluntarily "far in advance of when any <u>Giglio</u> material is due to be produced," and not because it was under obligation to, but also that, with respect to the only victim with a meaningful criminal history, defendant "appear[ed] already to have been in possession of this information for some time, given that [defendant] spent over a day at his state bar proceedings cross-examining Client 3 about his criminal history and the details regarding his criminal history," and that the victim's "felony conviction was also included in the complaint affidavit (CR 1 at 5 n.1), which [defendant] received when arrested on March 25, 2019." (Ex. 3 at 25-26; <u>see also</u> Ex. 4 at 79-84.)  The other victim with a "criminal history" was similarly known to defendant, as defendant represented this victim in connection with a civil rights lawsuit stemming from the victim's arrest related to the charges that were subsequently dropped.  (Ex. 4 at 87-90.)  In addition to violating the Protective Order by discussing these charges in a public filing, defendant misleadingly cites these charges -- not convictions -- in his motion to the Court as if they were substantiated rather than dismissed.  (<u>See</u> Mot. at 6.)

1                    4.   Remaining Discovery Allegations

2          Defendant's remaining discovery complaints about what the

3    government has allegedly not produced are similarly meritless.

4          First, defendant (again) claims that the government has failed

5    to provide "exculpatory information provided by" defendant's ex-wife,

6    Christine Carlin.[7]  (Mot. at 9 & n.9.)   The government interviewed

7    Ms. Carlin once pursuant to a letter immunity agreement in July 2019,

8    and the government produced to defendant a memorandum summarizing

9    this interview along with the documents Ms. Carlin produced in

10   connection with the interview.  (See CR 302 at 9 n.4.)   In October

11   2020, the government also voluntarily produced documents to defendant

12   that Ms. Carlin's attorney provided to the government in March 2020

13   while seeking additional protections for Ms. Carlin.  (Ex. 7.)  And

14   the government has repeatedly explained to defense counsel, as

15   recently as January 2021, that the government has no other

16   discoverable information to provide regarding either Ms. Carlin or

17   her attorney:

18         [N]either Ms. Carlin nor her criminal defense attorney, Ken
           Miller, will be witnesses in this case.  Although we had
19         entered into a letter immunity agreement with Ms. Carlin,
           we believe she was, at best, not fully candid or
20         forthcoming during her interview in July 2019, or worse,
           untruthful. With respect to "Tab 9" from the materials we
21         voluntarily produced to you in October 2020, we did not
           produce a "Tab 9" because we do not appear to have received
22         a "Tab 9" from Mr. Miller.  Please note we are providing
           this information solely as a courtesy.

23

24

25

26

27

28         [7] The government only uses Ms. Carlin's name herein as defendant
     refers to her by name in his motion.
                                    13

1    (Id.)  Absent any evidence that the government has withheld

2    discoverable information regarding Ms. Carlin (and the government is

3    aware of none), defendant's complaints are baseless.[8]

4         Second, defendant's complaints about the government's alleged

5    failure to produce "exculpatory financial information relating to

6    fees and expenses" (Mot. at 8) are easily explained: that information

7    does not exist.  The government has produced the fee and expense

8    information related to defendant's victims and his law firm, as well

9    as any information in its possession regarding work defendant

10   performed for his victims that entitled him to attorney's fees and

11   costs.  Specifically, the government produced the firm's QuickBooks

12   records and the firm's files and emails related to the victims, as

13   well as voluntarily providing defendant with the government's Access

14   Database detailing financial transactions related to the victims.

15   Moreover, the government's expert disclosures detailed the fees and

16   expenses related to the victim clients.  Indeed, the government has

17   already addressed these same complaints in its opposition to a prior

18   motion by defendant, in which the government explained that it has

19   produced this information in multiple ways.  (CR 195 at 18-19, Sagel

20   Decl. Exs. 3-7.)  Defendant failed to specify any such missing

21   exculpatory financial materials in his prior motion (CR 193), and he

22   fails to do so here.

23        Finally, defendant's remaining discovery complaints (Mot. at 9)

24   relate to communications, documents, and notes regarding government

25

26   _____

27        [8] Defendant has repeatedly made unfounded allegations against
     the government relating to purported statements regarding Ms. Carlin
     at defendant's bail revocation.  Not surprisingly, defendant has

28   never raised the claim, supported by a declaration, because it is
     meritless.

14

witnesses.  Such documents -- to the extent the materials exist and are discoverable -- constitute Jencks materials, not Brady or Rule 16.  But defendant mischaracterizes the record (again) by repeatedly referring to the government's "67 witnesses"; the list to which defendant is referring is the no-contact list for purposes of defendant's bond conditions.  (See Ex. 6 (noting that the list "may include some witnesses who would be unlikely to be called to testify at trial or we have yet to formally interview"); see also Ex. 8 (similar).)  Defendant offers no support for his allegation that the government has withheld discoverable information about its witnesses.

In short, none of defendant's discovery complaints have any merit.  Just as defendant has previously attempted in this case to claim that documents were privileged (and that he held the privilege) without making any showing of such privilege (CR 276), he is now attempting to claim Brady and Rule 16 violations without making any showing of such violations (or without showing discovery is Brady or Rule 16 material).  Rather, he relies on the limited size of the government's recent production (67 pages) to claim that there must be more, even though he would likely have claimed even more forcefully that the government was withholding documents had it not produced anything.  He ignores that the government has produced well over a million pages of discovery and numerous forensic copies of digital devices and has repeatedly confirmed to defendant that the government is continuing to comply with its discovery obligations.  Here, as he has in the past, defendant is demanding exculpatory evidence that simply does not exist.

**B.    The Government Has Not Violated the Court's Order**

Defendant's motion is based on the sole premise that the government violated the Court's Rule 5(f) Order.  It did not.  Even if the materials the government produced on March 1 were <u>Brady</u> or Rule 16 materials (they are neither), the government still complied with both its discovery obligations and the Court's Rule 5(f) Order, which orders the government to produce evidence "in a timely manner." (CR 408 at 1.)  Defendant offers no support for the notion that a 67-page production four months before trial is somehow not timely. Moreover, defendant appears to claim that productions after March 5, 2021, would not be timely, suggesting that compliance with the Court's Rule 5(f) Order is somehow tied to the arbitrary deadline defendant set in his correspondence.  It is not.  The Court set no new deadlines in the Rule 5(f) Order, and the government has violated no deadlines.

Defendant also offers no support for his accusations that the government has withheld further discoverable materials.  Instead, he relies on rank speculation, claiming that "it is readily apparent that the government has not complied with the Order" because "the government cannot seriously claim that the 67 pages of documents is the only information responsive to the Order that was not previously produced."  (Mot. at 8; <u>see also</u> <u>id.</u> at 9 n.9 (asserting that the government "has not produced all of its 302s and memoranda" without identifying any reports he claims to be missing).)  In short, defendant is asking the Court to issue an Order to Show Cause ("OSC") regarding whether the government should be held in contempt (and then actually hold the government in contempt, apparently regardless of what the OSC hearing reveals (Mot. at 3)) for failing to comply with

1    a court order.  Yet defendant provides <u>no evidence</u> whatsoever -- let

2    alone clear and convincing evidence -- that the government has failed

3    to comply with a court order.  Because defendant has failed to carry

4    his burden of proving by clear and convincing evidence that the

5    government has violated a court order, or even any reason to suspect

6    that the government has, the Court should deny defendant's motion.[9]

7    See <u>Dual-Deck Video Cassette Recorder</u>, 10 F.3d at 695.

8        **C.   Defendant's Repeated and Meritless Misconduct Claims**
         **Reflect a Bad Faith Attempt to Delay and Distract**

9

10       This is not the first time defendant has demanded exculpatory

11   information that does not exist.  Nor is it the first time that he

12   has mischaracterized the facts or the record in alleging government

13   misconduct.  Defendant has repeatedly, unsuccessfully, and often

14   without following through, lobbed meritless misconduct claims against

15   the government in an apparent attempt to delay the proceedings or

16   distract the Court from the allegations in the Indictment.  For

17   example:

18       • Defendant previously told the Court that he would be filing

19          a misconduct motion on the basis that the government's

20          prosecution was motivated by defendant's public criticism

21

22

23   ───────────────

         [9] The only evidence in the record shows that it is defendant,
24   not the government, who has violated orders of this Court.  For
     example, defendant has: (1) in the instant motion, included facts
25   from documents produced pursuant to the Protective Order (<u>see, e.g.</u>,
     Mot. at 6), which requires defendant to submit such information under
26   seal with the Court (CR 74 ¶ 18); (2) failed, to the government's
     knowledge, to pay contribution to the Public Defender's Office
27   despite multiple orders from this Court to do so (CR 33; RT 5/15/19
     at 7-8); and (3) failed to collect acknowledgments of the Protective
28   Orders from defendant's lawyers in other matters despite clear orders
     to do so from this Court (CR 72, 74).

1    of former President Trump.  (RT 1/31/20 at 16.)  It was

2    not, and defendant never filed such a motion.

3    • Defense counsel unequivocally accused a government

4        prosecutor of misconduct for having a "close relationship"

5        with a law partner of one of defendant's victims.  (RT

6        1/15/20 at 14-15.)  Defendant never filed a motion on this

7        basis.

8    • Defendant filed a motion claiming that the government

9        engaged in misconduct regarding its use of the grand jury.

10       (CR 276.)  The government opposed, and defendant withdrew

11       his motion before the Court ruled on it.  (CR 321.)

12   • Defendant filed a motion claiming that the government

13       engaged in misconduct regarding its privilege protocols and

14       review of search warrant materials.  (CR 286.)  The

15       government opposed, the Court issued a tentative ruling

16       denying the motion, and defendant withdrew the motion.  (CR

17       378.)  The Court allowed defendant until January 22, 2021,

18       to refile the motion, but he never did.

19   Accordingly, the present motion represents at least the fifth time

20   defendant has accused the government of some form of serious

21   misconduct, not one of which has been substantiated in any way.

22       In addition to being as meritless as any of defendant's other

23   accusations, the instant motion is particularly representative of

24   defendant's bad faith.  It is not grounded in the facts of this

25   case;[10] to the contrary, it is copied nearly word for word from a

26

27       [10] One such example is defendant claiming "[t]he very reason the
     Court adopted the Order was to impress upon the prosecutors their

28   most solemn obligations and to enable the contempt process to address
                                            *(footnote cont'd on next page)*

                                  18

filing in August 2019 by Sidney Powell in a completely unrelated prosecution against former National Security Advisor Michael Flynn in the District of Columbia.  (Compare Mot., with Ex. 1.)  In that case, the court denied the defendant's motion in its entirety (Ex. 9); the Court should do the same here.  Defendant can continue bringing baseless misconduct claims that repeat his same unfounded allegations, but it does not give them any merit.  As this Court aptly reasoned in an in camera submission to defendant that defendant then filed publicly: "While the Court does not subscribe to the view that repetition creates truth, others may wonder."  (CR 377, Ex. B at 2.)

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion in its entirety.

---

the government's failure to comply, rather than leaving openings for any excuses or being hamstrung to consider contempt charges as it was in Stevens by the absences of a preexisting order."  (Mot. at 3.) This Court never made such statements; however, that identical sentence appears in the Flynn motion.