H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL JOHN AVENATTI, <br><br> Defendant. | SA CR No. 19-061-JVS <br><br> DEFENDANT'S EX PARTE APPLICATION FOR AN ORDER EXTENDING DEFENDANT'S TEMPORARY RELEASE |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this *Ex Parte* Application for an Order Extending Defendant's Temporary Release from March 31, 2021 to May 31, 2021.

Dated: March 15, 2021          Respectfully submitted,

                               /s/ H. Dean Steward
                                H. DEAN STEWARD

                               Attorney for Defendant
                               MICHAEL JOHN AVENATTI

Pursuant to this Court's prior Orders, Defendant Michael John Avenatti ("Mr. Avenatti") is presently on temporary release and home confinement in Venice, California. If necessary, the defense is prepared to file a formal noticed motion to extend Mr. Avenatti's temporary release for the reasons set forth in (a) the Opposition [Dkt. No. 271] to the Government's Motion to Terminate and Not Further Extend Defendant Michael John Avenatti's Temporary Release, which is pending, and (b) the accompanying declarations filed with the Opposition, including that of board-certified infectious disease specialist Dr. F. Ramzi Asfour (under seal) [Dkt. No. 280]. Absent a further extension, Mr. Avenatti will be required to self-surrender on March 31, 2021.

The COVID-19 pandemic conditions in California are improving from their most dangerous levels but remain at levels that are greater than when this Court initially released Mr. Avenatti to home confinement and greater than in at least four prior instances when this Court extended Mr. Avenatti's release. [Dkt. Nos. 291, 314, 352, and 384.] Orange County just moved into the second most restrictive tier in California (the red tier) from the most restrictive tier (purple) over this past weekend; the County is expected to remain in that tier for a number of weeks. Orange County had been in the purple tier since November 16 of last year; before that, the county was in the red tier from approximately early September to mid-November. Importantly, this Court previously extended Mr. Avenatti's temporary release on four occasions while Orange County was in the red tier (September 16, September 29, October 14 and November 10). Further, while the local health metrics have improved recently from their peaks during the surge in January, they remain as serious, and in some cases more serious, than they were over the majority of the months this past year when this Court permitted Mr. Avenatti to remain on temporary release. Nationwide, cases remain at levels approximating those seen during the Summer surge.

1

In addition, comparison of the data from last March/April, when Mr. Avenatti was initially ordered released to home confinement, and today demonstrates that the current risks and fallout from the COVID-19 pandemic are still greater now in the Central District. This comparison is even more dramatic than when defendant filed his Opposition. *See, e.g.*, Exhibit A to Dkt. No. 271 (extensive comparison of the data and citing to multiple sources). The rate of infection is far greater; the rate of death is higher; the rate of hospitalization is higher; the number of cases has exploded; and the number of deaths is higher. According to Johns Hopkins University, California has now surpassed over 3,600,000 confirmed cases statewide (an over 78,000% increase over when Mr. Avenatti was ordered released and California had 4,600 cases in total). Over 55,500 deaths have also been recorded in the state (an over 50,000% increase over when Mr. Avenatti was ordered released and California had 110 deaths in total). Further, when Mr. Avenatti was ordered released, Orange County had a total of 3 deaths and 321 cases. Those numbers are now routinely exceeded every two days at most and the county has recorded over 4,400 deaths and 248,400 cases according to the Orange County Health Department, an over 144,600% and 77,300% increase, respectively. Comparing the March/April data for Los Angeles County to today is equally troubling. Further, the 7-day moving averages for California and Orange and Los Angeles counties are presently higher than when Mr. Avenatti was ordered released last year.

Moreover, medical experts are warning that the pandemic is far from over, the threat remains significant and that precautions used over the last year need to continue. For instance, Dr. Rochelle Walensky, Director of the CDC, recently warned during a televised White House press briefing that the U.S. could face a fourth COVID-19 wave in the coming weeks despite the recent decline in cases from their peaks and increased vaccination. While noting the still significant levels

of cases and deaths, she added, "I am really worried about reports that more states are rolling back the exact public health measures we have recommended to protect people from COVID-19. I understand the temptation to do this. 70,000 cases a day seems good compared to where we were just a few months ago. But we cannot be resigned to 70,000 cases a day, 2,000 daily deaths." She added, "The goal is not to open up travel, open up all things, because we are scaling up vaccination. At this level of cases with variants spreading, we stand to completely lose the hard-earned ground we have gained. These variants are a very real threat to our people and our progress. Now is not the time to relax the critical safeguards that we know can stop the spread of COVID-19 in our communities. . . . We have the ability to stop a potential fourth surge in cases in this county. Please stay strong in your conviction." Friday, Dr. Walensky added: "Cases, hospitalizations, and deaths remain high. And we've been fooled before into being too lax. So now is the time to double down to see this through. . . . I am asking everyone to do the right thing, continue taking public health precautions . . ." Earlier today, during a White House/CDC COVID-19 briefing, she again warned of another impending surge in cases based on data from Europe if significant precautions and health measures are rolled back: "I'm pleading with you for the sake of our nation's health. These should be warning signs for all of us. Cases climbed last Spring, they climbed again in the Summer, they will climb now if we stop taking precautions. . . ."

Yesterday (Sunday), Dr. Fauci stated during a televised interview that he is concerned about vaccines being less combative against new variants of the virus and the possibility of another surge, which is why "I and so many of my public health colleagues say that although we are going in the right direction . . . concerning the vaccines . . . if you look at the numbers, [] even though the numbers have gone down, over the last couple of weeks they've plateaued and when you see

a plateau at a level as high as 60,000 cases a day, that is a very vulnerable time to have a surge to go back up and that is exactly what happened in Europe. They had a diminution of cases, they plateaued, and they pulled back on public health measures, you see the pictures in the paper and on TV . . . and then all of a sudden, you had a surge that went right back up. And that's where we are right now."

In addition, experts are warning of another potential spike resulting from spring break, while also noting that other countries are beginning to experience another wave as a result of the spread of variants, including the U.K. variant (B.1.1.7), which has been shown to be far more infectious and 30-100% more deadly, according to a just released study in the *British Medical Journal*. Over the last year, these countries have served as a bell weather, with the United States usually experiencing the same outbreak or increase in cases approximately four to six weeks later. By the end of March, it is estimated that the UK variant will be the most dominant strain throughout the United States and in California, where it has already been detected. Indeed, the U.K. variant is already the most dominant strain in the State of Florida and is rapidly spreading throughout the United States, growing by 7% every day in the United States according to a recent CDC backed study. The health department in Houston, Texas warned last Wednesday that testing shows ongoing and uncontrolled community spread of the U.K. variant. Dr. Peter Hotez, Dean of the Baylor Medical School and a recognized infectious disease expert, warned last Wednesday, "I worry we're in for the perfect storm. We're lifting restrictions and the B.1.1.7. variant is here in a big way . . . none of that is good news."

Meanwhile, the rate of COVID-19 infections and deaths in Southern California prisons and jails has increased significantly compared to when Mr. Avenatti was initially released by this Court. Outbreaks have occurred in the Metropolitan Detention Center ("MDC") in Los Angeles, the Western Region

Detention Facility in San Diego, and the Orange County Jail system. These outbreaks led to hundreds of cases and the pandemic spreading like wildfire as a result of jail conditions, which are not conducive to CDC precautions. A recent study by the Marshall Project has found that there are more than 383,754 infections of inmates or prisoners across the United States – an infection rate of over 20%, with over 2,446 deaths. Over 104,278 cases among prison staff (likely an undercount) have been reported and at least 189 employees have died. This is consistent with the American Medical Association's determination in July that "COVID-19 case rates have been substantially higher and escalating much more rapidly in prisons than in the U.S. population." The Journal article further provides a telling chart on the rate of coronavirus infection in prisons versus the wider population, and there can be no dispute – prisons and jails are vastly more dangerous. *See* B. Saloner, Ph D., et al., *Covid-19 Cases and Deaths in Federal & State Prisons*, J. Am. Med. Assoc. (July 8, 2020). The researchers found that the infection rate for inmates was 5.5 times higher than the U.S. population and the death rate in the prison population was 3.0 times higher. Other data shows that the risk remains exceedingly high in jails and prisons. *See*, *e.g.*, charts at end of Exhibit A to Dkt. No. 271. Another recent study by the Prison Policy Institute shows that the poor management of COVID-19 risks in jails and prisons across the country has also contributed significantly to the dramatic spread of the pandemic *outside* prison walls, producing as many as 500,000 additional cases outside prisons and jails in just three months.

Importantly, the risks to Mr. Avenatti were he to contract the virus remain significant according to expert Dr. F. Ramzi Asfour. *See* Declaration of Dr. F. Ramzi Asfour (under seal) and attached report (attesting to the risks to Mr. Avenatti's health conditions and the risks to him were he to be remanded) [Dkt No. 280]. Importantly, while vaccine distribution has increased significantly, vaccines

are not yet universally and easily available.  <u>However, as a result of recent changes to the qualification standards in California, Mr. Avenatti expects to be able to begin and complete the vaccination process during the extended period</u>.[1]

Accordingly, in order provide additional time for the parties to (i) address any further motion by the defense (to be filed if necessary), (ii) examine the data relating to the virus in the interim time period, and (iii) permit Mr. Avenatti adequate time to be fully vaccinated and acquire immunity, defendant respectfully requests that the Court extend his temporary release to May 31, 2021 under the same conditions previously ordered.

Prior to filing this *ex parte* Application, counsel for the defendant requested that the government provide their position as to defendant's Application and requested relief.  The government responded:  "We oppose, including for the reasons set forth in Sections III. A-D in our prior motion (CR 262)."

Dated: March 15, 2021        Respectfully submitted,


        /s/ H. Dean Steward
      H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

---

[1] Once a patient is able to receive a first shot, it takes a total of approximately six weeks thereafter to be able to receive a second shot and for the vaccine to provide immunity.

6

# **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672. I am not a party to the above-entitled action. I have caused, on March 15, 2021, service of the defendant's:

EX PARTE APPLICATION FOR AN ORDER EXTENDING DEFENDANT'S

TEMPORARY RELEASE

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 15, 2021

/s/ H. Dean Steward
H. Dean Steward

7