UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

```
UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
                Plaintiff,    )
   vs.                        )
                              )  SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,        )
                Defendant.    )
------------------------------)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

April 7, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     ALEXANDER WYMAN
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   H. DEAN STEWARD
     H. DEAN STEWARD LAW OFFICES
15   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
16   (949) 481-4900

17

18

19

20

21

22

23

24

25
```

```
09:30      1   SANTA ANA, CALIFORNIA; WEDNESDAY, APRIL 7, 2021; 9:30 A.M.
09:30      2              THE CLERK:  Calling Item 1, SACR-19-00061-JVS,
09:30      3   United States of America versus Michael John Avenatti.
09:30      4              Appearances on behalf of the government, please.
09:30      5              MR. SAGEL:  Good morning, Your Honor.  Brett Sagel
09:30      6   and Alex Wyman on behalf of the United States.
09:30      7              THE COURT:  Good morning.
09:30      8              THE CLERK:  And on behalf of the defense.
09:30      9              MR. STEWARD:  Dean Steward on behalf of
09:30     10   Mr. Avenatti.  We have a waiver on file, and I believe he
09:30     11   has joined us by telephone.
09:30     12              THE COURT:  Very good.  Good morning.
09:30     13              THE DEFENDANT:  Good morning.
09:30     14              THE COURT:  I want to thank the parties for the
09:30     15   joint report.  I think you have accomplished quite a bit.  I
09:30     16   propose that we simply walk through the report and the
09:30     17   issues that the Court raised in its proposed agenda.
09:31     18              With regard to the disclosures, I had previously
09:31     19   set the date for disclosing whether there's going to be
09:31     20   reliance on advice of counsel.  I don't think we need to
09:31     21   discuss that further.
09:31     22              With regard to Mr. Avenatti's reciprocal discovery
09:31     23   obligations, I think I've made my view clear when I ordered
09:31     24   a rolling production.  If there's additional production and
09:31     25   it's not forthcoming fairly soon, I think there'll be an
```

```
09:32   1    inquiry as to why the defendant should be permitted to use
09:32   2    such materials, but I think everybody understands the ground
09:32   3    rules.  The longer the disclosure is postponed or doesn't
09:32   4    happen the more likely there is to be prejudice to the
09:32   5    government, but I can't predict that on the present record.
09:32   6              With regard to motions, I had indicated that
09:32   7    really both sides could bring on additional motions with a
09:32   8    showing of good cause, so I think people understand the
09:32   9    ground rules there.
09:32   10             As to the government's additional expert, I'm
09:32   11   inclined to grant that.  I had proposed a solution that the
09:32   12   parties prepare a stipulated statement or deal with it in
09:32   13   the jury instructions.  That hasn't been forthcoming.  I'm
09:32   14   going to allow the government to present the additional
09:33   15   expert with regard to special needs trusts.
09:33   16             Mr. Steward, if you have any Daubert client
09:33   17   objections or a sufficiency of disclosure objection, I think
09:33   18   you are free to bring that.
09:33   19             MR. STEWARD:  Thank you, Your Honor.
09:33   20             THE COURT:  With regard to the government's
09:33   21   designation of a legal expert on a lawyer's obligations, I
09:33   22   had requested additional briefing, and I had thought that I
09:33   23   had sent out an order -- I'll go back and check -- to the
09:33   24   effect that I'd come to a different conclusion after
09:33   25   reviewing the supplemental showings and concluded that the
```

```
09:33   1    best way to deal with the obligations of lawyers is to do it
09:33   2    by way of the jury instructions.  I'll go back if I simply
09:33   3    am imagining that I issued such an order and will draft such
09:33   4    an order.  But it seems to me that presenting that material
09:33   5    by way of a jury instruction recognizes that there are legal
09:34   6    issues there, and it's for the Court to advise the jury with
09:34   7    regard to the legal issues.
09:34   8            I am going to anticipate that the parties in
09:34   9    submitting their proposed joint instructions would deal with
09:34  10    that issue.  At one point the government prepared a somewhat
09:34  11    lengthy statement/set of stipulated facts that may be
09:34  12    helpful to you in drafting the jury instructions.
09:34  13            MR. SAGEL:  Your Honor, this is Brett Sagel.
09:34  14            I don't think there was a written order on the
09:34  15    issue, but during the January 6th status conference Your
09:34  16    Honor stated what you basically just said now as to what the
09:34  17    ruling of the Court would be regarding the legal ethics
09:34  18    expert jury instruction.
09:34  19            THE COURT:  Well, then the record is clear, so I
09:34  20    don't think we need an additional order for the record.
09:34  21            Turning to trial issues, it looks like this is a
09:35  22    15 day plus or minus trial.  My inclination for a lot of
09:35  23    reasons is to not follow my usual pattern of going 8:00 to
09:35  24    2:00.  I think that we'll just go 9:00 to 12:00 and 1:30 to
09:35  25    4:30.  It gets people away from one another, which I think
```

| | | |
|---|---|---|
| 09:35 | 1 | is helpful. |
| 09:35 | 2 | With regard to the logistics concerning |
| 09:35 | 3 | Mr. Avenatti, I've been holding off ruling on the |
| 09:35 | 4 | government's motion to have him remanded. One of the |
| 09:35 | 5 | factors in my mind is to the extent that Mr. Avenatti is |
| 09:35 | 6 | readily available to Mr. Steward, particularly during the |
| 09:35 | 7 | period of the COVID virus outbreaks at MDC, it made sense to |
| 09:36 | 8 | allow him to have that access. I'm likely to continue to |
| 09:36 | 9 | have the same view and not remand him prior to trial. I |
| 09:36 | 10 | think I extended the date to the end of May, if I'm correct, |
| 09:36 | 11 | May 31st. |
| 09:36 | 12 | MR. STEWARD: I think that's right, Your Honor. |
| 09:36 | 13 | THE COURT: I'll revisit it. As near as I can |
| 09:36 | 14 | tell, there have not been any additional problems with |
| 09:36 | 15 | regard to Mr. Avenatti's compliance since we visited the |
| 09:36 | 16 | issue of his use of a computer with the ability to access |
| 09:36 | 17 | the internet, but let's take a look at that at the end of |
| 09:36 | 18 | May. I do think if he were out of custody, it would greatly |
| 09:36 | 19 | facilitate the defense's ability to prepare and present the |
| 09:36 | 20 | defense case. |
| 09:36 | 21 | Both of you agreed to a time-qualified jury. I |
| 09:36 | 22 | think 150 is enough. Particularly if we've got them |
| 09:37 | 23 | time-qualified, I think that we'll weed out any potential |
| 09:37 | 24 | problems and 150 should be plenty. |
| 09:37 | 25 | With regard to a jury questionnaire, I have no |

```
09:37   1   difficulty with a fairly complete questionnaire.  I think it
09:37   2   will speed up the voir dire process, which would be helpful.
09:37   3   I'd ask you, however, to submit one joint proposal.  If
09:37   4   you've got questions that one side objects to, put it all in
09:37   5   one document so I can take a look at it, and why don't you
09:37   6   agree on the date that you could do that.  Mr. Steward was
09:37   7   proposing the end of April, April 26.  I think if you could
09:38   8   get the questionnaire to me by mid-May that would be
09:38   9   satisfactory.
09:38  10             In terms of administering the questionnaire, I
09:38  11   think things are clearly in a state of flux.  By mid-June,
09:38  12   the governor tells us that California is going to be
09:38  13   completely reopened.  I think we need to see what practical
09:38  14   ramifications that has for having large numbers of people in
09:38  15   one place at one time.  If things are as predictive as they
09:38  16   presently are, I agree with the suggestion that we call in
09:38  17   smaller groups, maybe 25, maybe 50, and have those folks do
09:38  18   the questionnaire.
09:38  19             Now, typically before the questionnaire is read, I
09:38  20   would read the Indictment.  I'm not going to do that.  You
09:38  21   have agreed on preparing a joint statement in lieu of the
09:38  22   Indictment.  But I would read that to the jurors, and they
09:38  23   would be sworn.
09:39  24             Now, as we get closer and know how many sessions
09:39  25   we're going to have and so on, I want to see if you want to
```

```
09:39    1   be there for each of those sessions, which is fine, or if
09:39    2   you simply want me to read the statement and have the jurors
09:39    3   fill out the questionnaire.
09:39    4           In terms of the voir dire process, I think we have
09:39    5   to be guided by the conditions as they exist in July.  It
09:39    6   may be practical to have no more than 16 or 18 at a time,
09:39    7   and the Court will voir dire.  I think we just have to see
09:39    8   how things go.
09:39    9           In terms of the voir dire, I would propose to voir
09:39   10   dire each juror individually out of the presence of the
09:39   11   others with regard to the issue of publicity, bias, based on
09:40   12   what the jurors may or may not have seen or heard, present
09:40   13   opinion, and so on.  The rest of it we will do in the normal
09:40   14   fashion.
09:40   15           Now, with regard to the transcript and the
09:40   16   presence of individuals, I see absolutely no basis in the
09:40   17   law for excluding the press from that process.  I think for
09:40   18   the public to understand -- we'll go to substantial efforts
09:40   19   to secure a fair and impartial jury.  Part of that is
09:40   20   actually seeing the process, actually hearing the process.
09:40   21           So I'm not going to exclude the public from that
09:40   22   process or in the courtroom.  I'm not going to exclude the
09:40   23   press from what the exact logistics are and how many people
09:40   24   we happen to have in the courtroom at one time.  We'll just
09:40   25   have to see how conditions are.  But I'm very firm in the
```

```
09:40   1   position that I'm not excluding the press.
09:40   2              MR. STEWARD:  Your Honor, can I raise a point on
09:41   3   that?  Our problem was not excluding the press.  It was when
09:41   4   there was a sidebar.  In the SDNY case, a reporter was
09:41   5   apparently invited or present at sidebar, and the things
09:41   6   that caused the reasons for the sidebar were then reported
09:41   7   the next day in the newspapers.  That's all we're trying to
09:41   8   do.  I don't want to exclude the press either, but this was
09:41   9   a very unique situation.  We just want to make sure it
09:41  10   doesn't happen again.
09:41  11              THE COURT:  Well, it depends on what the sidebar
09:41  12   is.  You know, in essence, I'm not going to conduct the
09:41  13   individual voir dire re publicity at sidebar.  That's going
09:41  14   to be in public.  Now, if there is something that needs to
09:41  15   be sealed, let's deal with it when we get there.
09:41  16              MR. STEWARD:  I just wanted to alert the Court
09:41  17   that that was a unique circumstance.
09:41  18              THE COURT:  Well, we generally don't have press at
09:41  19   the sidebar.
09:41  20              MR. STEWARD:  Yeah, but I was just as shocked as
09:42  21   anybody about that one.
09:42  22              THE COURT:  You know, in terms of the logistics of
09:42  23   voir dire, I think we just have to see what the conditions
09:42  24   are, how many we can do at a time and whatnot.  I think you
09:42  25   both agreed on 12 plus four so 16.  If the present
```

```
09:42   1   conditions prevailed, we wouldn't have anybody else in the
09:42   2   courtroom but the jurors to keep social distancing.  Twenty
09:42   3   of them would have to be in the jury box and the rest of
09:42   4   them sprinkled throughout the audience.  I think things are
09:42   5   going to improve, and we'll be able to do a lot better than
09:42   6   that, but I think we have to see how things develop.
09:42   7              Okay, anything before we get to the additional
09:42   8   issues that Mr. Steward and the government have proposed?
09:42   9              MR. STEWARD:  Nothing further, Your Honor.
09:42  10              THE COURT:  Okay.  The issue of whether EA1 will
09:43  11   testify.
09:43  12              MR. SAGEL:  Your Honor, if we could just get some
09:43  13   further clarifications on the jury instructions, and I think
09:43  14   Mr. Wyman will actually ask the question based on Your
09:43  15   Honor's criminal order and prior orders.
09:43  16              THE COURT:  Well, I anticipate a more robust set
09:43  17   of initial jury instructions than I would usually give.  I
09:43  18   want to go into the substance and elements of wire fraud,
09:43  19   and I want to instruct them on the duties of a lawyer.  So
09:43  20   in terms of those two particulars, they go well beyond the
09:43  21   usual Ninth Circuit pattern instructions for initial
09:43  22   instructions in a jury trial.  Is that helpful?
09:43  23              MR. WYMAN:  It is, Your Honor.  This is Alex Wyman
09:43  24   for the government.  That's very helpful.
09:43  25              With regard to your criminal trial order, I take
```

```
09:43   1    it you do not need the sort of generic preliminary
09:43   2    instructions.  Is that correct?
09:43   3            THE COURT:  Well, you've got them all in the
09:44   4    packet right there, so you might as well give me a complete
09:44   5    packet.
09:44   6            MR. WYMAN:  Fair enough.  Thank you, Your Honor.
09:44   7            THE COURT:  Okay.  The government has yet to
09:44   8    disclose its witness list if I'm correct.
09:44   9            MR. SAGEL:  Correct.  I can check the order,
09:44  10    but -- I can check the dates, but we have a previously
09:44  11    ordered date to disclose it.  I want to say it's about one
09:44  12    month before trial.
09:44  13            THE COURT:  I think that's right.  Let me see.
09:44  14            MR. SAGEL:  It looks like June 14.
09:44  15            THE COURT:  Right.  Okay.  Let's see who's on the
09:44  16    government's list and their objections to that.  We can take
09:44  17    them up at that time.  I don't see a need to discuss EA1 at
09:44  18    this time.
09:44  19            The proposed ethics expert you have discussed how
09:45  20    we are going to handle that.
09:45  21            Transcripts and questionnaires related to jury
09:45  22    selection:
09:45  23            The questionnaires are sealed.  I'm not going to
09:45  24    make those public unless there is a sufficient showing.  But
09:45  25    the transcripts of voir dire will be available, including
```

```
09:45   1    transcripts of the individual voir dire re publicity.
09:45   2            I think the last item is Mr. Steward suggests that
09:45   3    he may ask for a trial continuance.
09:45   4            Sir, you are free to make that motion, but I tell
09:45   5    you now it is highly unlikely.  Given that Mr. Avenatti
09:45   6    particularly has been available to you I guess for nearly a
09:46   7    year now, I see no need for a continuance but make your
09:46   8    motion, make your showing.  But as I've suggested, I think
09:46   9    the government has satisfied its discovery obligations.  I
09:46  10    see no reason to continue on that basis.  But, again, if you
09:46  11    wish to make a motion, please do that.
09:46  12            I guess finally you request that the Court direct
09:46  13    the government basically to comply with its Rule 5(f)
09:46  14    obligations.  I issued the order earlier in the year.  There
09:46  15    is nothing more to say.  I think the government clearly
09:46  16    understands from Rule 5(f) and the Court's issuance of a
09:46  17    specific Rule 5(f) order what its obligations are.
09:47  18            Are there any other issues that you've raised,
09:47  19    Mr. Steward, that you want to go back and address?
09:47  20            MR. STEWARD:  No, Your Honor.
09:47  21            MR. SAGEL:  Your Honor, the government has one
09:47  22    issue if you don't mind.  I did not even come across it
09:47  23    until yesterday afternoon, and I just want to find out how
09:47  24    Your Honor wants to deal with it.
09:47  25            At our October 19 motions hearing date in which
```

```
09:47   1    you handled both the 404(b) issue, as well as the severance
09:47   2    issue, you asked the government to file -- and we did -- on
09:47   3    October 23 our additional 404(b) as it related to the
09:47   4    bankruptcy fraud counts.  If I've even got my dates right,
09:47   5    on January 5, 2021, the day before our January 6 status
09:47   6    conference, defendant filed a status report saying he wanted
09:47   7    to object to our 404(b) notice on the bankruptcy fraud.
09:48   8              Here we are now six months after the original
09:48   9    filing and three months after they said they would object
09:48  10    and they have filed nothing, Your Honor.  Based on Your
09:48  11    Honor's original order, each of the bankruptcy-related
09:48  12    404(b) matters that we noticed relate to the client counts,
09:48  13    and I think it falls generally under your order.
09:48  14              THE COURT:  Right.  That's the limitation.
09:48  15              MR. SAGEL:  So the government will proceed as of
09:48  16    right now assuming that evidence would be permissible under
09:48  17    404(b) unless we hear otherwise.
09:48  18              THE COURT:  Fair.
09:48  19              MR. SAGEL:  Thank you, Your Honor.
09:48  20              THE COURT:  Okay, any other items we ought to
09:48  21    address?
09:48  22              MR. SAGEL:  Nothing from the government.
09:48  23              MR. STEWARD:  Not from the defense.
09:48  24              THE COURT:  Well, thank you.  It's clear that your
09:48  25    efforts to meet and confer were very productive and resulted
```

14

```
09:48   1    in a fairly short telephone call today, so I thank you for
09:48   2    those efforts and thank you for your appearances today.
09:49   3              MR. SAGEL:  Thank you, Your Honor.
09:49   4              MR. STEWARD:  Thank you, Your Honor.
09:49   5              (Whereupon, the proceedings were concluded.)
09:49   6                         *     *     *
09:49   7
09:49   8
09:49   9
09:49   10
09:49   11
09:49   12
09:49   13
09:49   14
09:49   15
09:49   16
09:49   17
09:49   18
09:49   19
09:49   20
09:49   21
09:49   22
09:49   23
09:49   24
09:49   25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  April 13, 2021

/s/   Sharon A. Seffens  4/13/21
_____
SHARON A. SEFFENS, U.S. COURT REPORTER