```
1  H. Dean Steward, SBN 85317
   107 Avenida Miramar, Ste. C
2  San Clemente, CA 92672
   Tel (949) 481-4900
3  Fax (949) 497-6753

4  Attorney for Defendant
   MICHAEL JOHN AVENATTI
5
```

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
|---|---|
| Plaintiff, | DEFENDANT'S EX PARTE APPLICATION FOR ORDER CONTINUING TRIAL DATE AND FINDING EXCLUDABLE TIME |
| v. | |
| MICHAEL JOHN AVENATTI, | Current Trial Date: July 13, 2021<br>Proposed Trial Date: August 31, 2021 |
| Defendant. | |

Defendant Michael John Avenatti, through counsel, hereby applies *ex parte* to continue the trial date in this matter seven weeks, from July 13, 2021 to August 31, 2021, to continue the final pre-trial conference, and for a finding of excludable time under the Speedy Trial Act. Despite inquiry, the government has not informed the defense as to whether they oppose this Application, however it is anticipated the government will oppose. The requested relief is based on the attached declaration, the files and records in this case, and any other information that the Court may consider.

Dated: May 7, 2021          Respectfully submitted,

                            /s/ H. Dean Steward
                             H. DEAN STEWARD

                            Attorney for Defendant
                            MICHAEL JOHN AVENATTI

## DECLARATION OF H. DEAN STEWARD

I, H. Dean Steward, declare:

1. I am currently appointed counsel for Defendant Michael John Avenatti ("Mr. Avenatti"). I was previously retained counsel for Mr. Avenatti from approximately May 15, 2019 through August of 2020. I make this declaration in support of Mr. Avenatti's Ex Parte Application for Order Continuing Trial Date and Finding Excludable Time.

2. Mr. Avenatti was arrested in connection with this matter on March 25, 2019 and made his first appearance in the Central District on April 1, 2019. On April 10, 2019 the government designated this case as complex. [Dkt. 18.]

3. On August 26, 2019, this Court set the first real trial date in this complex case as May 19, 2020 [Dkt. 64.] Even though other trial dates had been set by the Court prior to this date, it was understood among the parties and the Court that such dates were mere placeholders for purposes of the Speedy Trial Act. Indeed, this is why the Court specifically ordered the parties to appear at an August 26, 2019 Status Conference prepared to discuss a real trial date. [Dkt. 54.]

4. On March 13, 2020, the Central District entered a General Order suspending jury selection and jury trials scheduled to begin before April 13, 2020 because of the Coronavirus. *See* C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order Concerning Jury Trials and Other Proceedings (March 13, 2020). Shortly thereafter, the trial date in this case was continued at the request of the defense from May 19, 2020 to August 18, 2020. [Dkt. 126, entered March 26, 2020.] <u>Importantly, this is the only trial continuance sought by the defendant in this case prior to this Application.</u> But it had no impact on the trial date because jury trials remained suspended in the Central District from March 13, 2020 until May 10, 2021 pursuant to various General Court Orders.

5. The current trial date of July 13, 2021 was set by the Court on January 6, 2021.

6. To date, the government has produced to the defense well over 1.1 million pages of discovery and numerous electronic forensic images comprising thousands of additional documents. For instance, on March 13, 2020, approximately 36 days before the then scheduled May 19, 2020 trial date, the government's Privilege Review Team first produced 126,288 documents to the defense, which alone consisted of approximately 1,000,000 pages of discovery. On May 8, 2020, the prosecution produced 87,226 documents totaling 664,275 pages and noted that these documents were a subset of the documents produced by the privilege review team less than 2 months earlier. Critically, all of this discovery was in the possession of the government for close to one year and yet was first produced to the defense at the same time (a) Mr. Avenatti was in solitary confinement and/or under locked-down status at the Metropolitan Correctional Center in New York, unable to meaningfully communicate with me and review discovery, and (b) the COVID-19 pandemic swept the country and substantially interfered with the defense's ability to prepare for trial. Productions by the government of approximately 16,295 pages of additional discovery were made following the May production.

7. Since entering my appearance, I have worked on this case diligently. However, my review of the discovery in this case and ability to prepare for trial has been slowed due to the sheer amount of discovery, the pandemic, and my other criminal cases. As the Court is aware, I am in my 70s, with pre-existing health conditions.

8. Due to the discovery I have reviewed, I have concluded that the government still has not produced all discovery required to be produced to the defense pursuant to *Brady v. Maryland*, 363 U.S. 83 (1963), *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020), *United States v. Price*, 566 F.3d 900 (9th Cir. 2009), *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013), and this Court's Order issued on January

25, 2021, which directed the government to produce to the defense "all information or evidence known to the government that is either: (1) relevant to the defendant's guilt or punishment; or (2) favorable to the defendant on the issue of guilt or punishment." [Dkt. 408 (emphasis added).]. By way of example only, on March 31, 2019, the government interviewed a former client of Mr. Avenatti's identified as victim Client 1 in the Indictment. [*See* USAO_0013358, 62.] Client 1 was shown a settlement agreement that the government claims in the Indictment Mr. Avenatti hid the terms of and deceived Client 1 about (Indictment, ¶¶ 7.(f) and (g)). According to a typewritten summary prepared later from "notes made during and immediately after the interview," Client 1 admitted in the interview "he may have signed the document" when his case was settled and that Mr. Avenatti went to Client 1's residence at the time to "deliver this document to [Client 1]." It is difficult to imagine how the government can claim Mr. Avenatti hid the terms of a settlement agreement that he promptly provided to the client and had the client sign. The handwritten notes from this interview are classic *Brady* material and yet have never been produced by the government. There are many other known examples of information that was required to be produced but has been withheld. These examples can be provided to the Court if requested.

9. I am counsel in another case set for trial beginning on June 1, 2021 before the Honorable David Carter (*United States v. Poon*, Case No. 19-CR-00162), which was scheduled for trial on that date on November 25, 2020. Preparation for that trial will occupy the majority of my time during the month of May. While the trial is presently scheduled to last two weeks, it is unclear how long it will last due to the newly issued pandemic protocols for jury trials in the Central District, which are expected to prolong and complicate trials.

10. If the trial in this matter proceeds as scheduled on July 13, 2021, I will not be able to be properly prepared to represent Mr. Avenatti. Due to the complexity of this case, the sheer number of witnesses and the vast amount of discovery, I will need at least

3

60 days between the end of the *Poon* trial and the beginning of this trial in order to adequately represent Mr. Avenatti at trial. I believe that a limited continuance is necessary and appropriate given the complexity of the case, the volume of existing discovery, the number of potential witnesses, and my need to be substantially focused on the *Poon* trial during the months of May and June.

11. Mr. Avenatti is presently scheduled to be sentenced on June 30, 2021 in connection with the Nike-related case in the Southern District of New York (Case No. 1:19-CR-00373-PGG (SDNY). [Dkt. 313.] The sentencing was rescheduled to that date from May 7, 2021 as a result of the pandemic conditions in New York. [Dkt. 311; *see also* SDNY Fourth Amended Standing Order, M-10-468, 20 Misc 176 (CM).] I am informed that Mr. Avenatti will be working closely with his counsel in that case in the weeks leading up to the sentencing in order to prepare his submission and for the hearing.

12. Mr. Avenatti's February 2020 conviction in the Nike-related case received widespread press coverage across the country and within the Central District, with nearly every story commenting on the significant prison time Mr. Avenatti could face. The details were reported on NBC, CBS, ABC, CNN and Fox News (among other networks), blasted across social media, and printed in countless newspapers and web articles. All indications are that Mr. Avenatti's sentencing on June 30 will receive similar media coverage.

13. Conducting the trial in this matter less than two weeks after Mr. Avenatti's sentencing in the New York Nike-related case and its inevitable widespread publicity will interfere with Mr. Avenatti's due process rights and his rights under the Sixth Amendment to the United States Constitution. *See Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966) ("Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial

courts must take strong measures to ensure that the balance is never weighed against the accused. . . . [W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity. . . . But we must remember that reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. (emphasis added). *See also Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590, 596 (9th Cir. 1985) ("We have recognized that the *Sheppard* Court unequivocally imposed a duty upon trial courts to take affirmative steps to insure the fairness of a criminal proceeding in the face of excessive publicity. *Farr*, 522 F.2d at 468; *see also Hirschkop*, 594 F.2d at 366 n. 8 (noting that the language in *Sheppard* "is more nearly directive than suggestive")(emphasis added). As a result, the trial in this case should be briefly delayed to allow the threat of publicity from the sentencing in the Nike-related case to abate and in order to ensure Mr. Avenatti's right to a fair trial and impartial jury free from outside influences.

14.   The defense submits that even though this case is high-profile, it need not be one of the first cases to proceed to trial following the resumption of jury trials in the Central District for a number of reasons, including (1) this is not a violent crime related case - it is a white collar case alleging financial and tax related offenses with no allegations of violence, use of a firearm or large scale drug trafficking; (2) each of the alleged individual victim clients identified in the indictment has already filed a civil lawsuit or arbitration action against Mr. Avenatti and is pursuing civil remedies against Mr. Avenatti; and (3) the trial in this case is not going to be a particularly easy one given the public and press interest in it, the need for a large jury pool of 150 perspective jurors, and other aspects that make it much more complicated than your average trial. *See*, *e.g.*, "After pandemic-related delays, high-profile Orange County court cases looming in

2021," *Orange County Register*, December 30, 2020 (referencing this case).  The challenges in this case are far greater due to the pandemic, the need for adequate safety precautions for a large jury pool of 150 and the media, and the recent jury trial protocols issued by the Central District.  A brief continuance will permit the effects of the pandemic to further decrease; ensure a better and safer jury pool; lessen the burden on the Court, the parties and the jurors; and create conditions more conducive to properly conducting the trial in this complex, high-profile case.

15.   On May 6, 2021, at 3:08 p.m., I contacted the government by email and requested their position as to this Application. As of the date and time of this filing, the government has not responded to my request. Based on the government's prior positions in this case, it is anticipated that they will oppose this Application.

16.   I have carefully discussed the requested continuance with Mr. Avenatti and fully advised him of his speedy-trial rights. Mr. Avenatti understands those rights and has agreed to waive them so that I can adequately prepare and for the reasons set forth above.

17.   I have appended to this declaration a signed acknowledgment and waiver in which Mr. Avenatti gives up his right to be brought to trial earlier than August 31, 2021. Based on my communications with Mr. Avenatti, I believe that this waiver is knowing, voluntary, and intelligent.

18.   For purposes of calculating time under the Speedy Trial Act, Mr. Avenatti requests that the time between the currently set trial date, July 13, 2021, and his proposed trial date of August 31, 2021 be excluded. This exclusion should be based on a finding that the ends of justice served by a continuance outweigh the best interest of the public and Mr. Avenatti in a speedy trial, failing to grant the continuance would result in a miscarriage of justice, and failing to grant the continuance would unreasonably deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration is executed at San Clemente, California.

Dated: May 7, 2021              /s/ H. Dean Steward
                                H. Dean Steward

## ACKNOWLEDGMENT AND WAIVER OF MICHAEL JOHN AVENATTI

I have read the Declaration of H. Dean Steward and carefully discussed it with Mr. Steward. I understand my Speedy Trial Act rights. I voluntarily agree to the requested continuance of the trial date, and, should it be granted, give up my right to be brought to trial earlier than August 31, 2021. I understand that I will be ordered to appear in Courtroom 10C of the federal courthouse in Santa Ana, California on the date of the trial and the date of the final pre-trial conference.

Date: May 7, 2021

_____
Michael John Avenatti

# CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672. I am not a party to the above-entitled action. I have caused, on May 7, 2021, service of the defendant's:

EX PARTE APPLICATION FOR ORDER CONTINUING TRIAL DATE AND FINDING EXCLUDABLE TIME

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 7, 2021

/s/ H. Dean Steward
H. Dean Steward

9