TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2435
    Facsimile: (213) 894-6269
    Email:    Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3598
    Facsimile: (714) 338-3708
    Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL JOHN AVENATTI,<br><br>        Defendant. | No. SA CR 19-061-JVS<br><br>GOVERNMENT'S REPORT RE PARTIES'<br>POSITIONS ON SUMMARY OF INDICTMENT<br><br>Trial Date:  July 13, 2021<br>Trial Time:  8:30<br>Location:    Courtroom of the<br>           Hon. James V. Selna |

      Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Alexander C.K. Wyman, hereby submits its Report Re Parties' Positions on the Summary of Indictment.

1        On April 29, 2021, the government sent defense counsel its

2   proposed summary of the indictment (in Word format), which is

3   attached hereto as Exhibit 1.  On May 6, 2021, defense counsel sent

4   the government a PDF of defendant's version of the summary of the

5   indictment, attached hereto as Exhibit 2, with the comment that the

6   "government's proposed 8 page summary is not acceptable for a number

7   of reasons, including because it is inflammatory, inaccurate, unduly

8   prejudicial, states things as facts that have yet to be proven, far

9   too long, and fails to present a balance, unbiased summary to the

10  jury. The summary should not be designed as a lengthy recitation of

11  the government's case."

12       After observing that the two versions were substantially

13  different, government counsel contacted defense counsel to respond

14  to defendant's stated objection to the government's proposed

15  version.  Government counsel wrote, "As you know, Judge Selna

16  typically reads the indictment to the jury pool prior to voir dire

17  (as he did in Michaels et al).  The wire fraud counts in the

18  indictment are approximately 21-pages long, and we have agreed to a

19  summary in lieu of reading the indictment as long as the summary

20  actually summarizes the charges against the defendant.  Our summary

21  is eight pages.  Is there any part of our summary that you would

22  agree to include (other than your parts from paragraphs 1, 6, and 7

23  of the indictment)?  As it relates to your summary, it includes

24  numerous instructions that the Court will separately give so there

25  is no need to include them in the summary of the case.  Please let

26  us know if you are willing to attempt to bridge the gap any

27  further."  Defense counsel responded, "We think our summary is

28  reasonable and fairly represents the charges. If you are not

1  inclined to agree, then we will request that the entire indictment

2  be read."

3      Ordinarily, the government would not object to having the

4  entire Indictment read, as defense counsel proposes.  Here, however,

5  because the Court has severed the client counts from the remaining

6  tax, bank fraud, bankruptcy fraud, and aggravated identity theft

7  counts in the Indictment, reading the entirety of the Indictment

8  would not be appropriate.  Nevertheless, if the Court would prefer

9  to read and send back to the jury a redacted version of the

10  Indictment, the government has no objection to that approach.

11  Dated: May 13, 2021              Respectfully submitted,

12                                   TRACY L. WILKISON
                                     Acting United States Attorney
13
                                     BRANDON D. FOX
14                                   Assistant United States Attorney
                                     Chief, Criminal Division
15

16                                   _____/s/_____
17                                   BRETT A. SAGEL
                                     ALEXANDER C.K. WYMAN
18                                   Assistant United States Attorneys

19                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

20

21

22

23

24

25

26

27

28

3

# EXHIBIT 1

# (Government Version)

## SUMMARY OF THE CHARGES

The Indictment in this case charges defendant MICHAEL JOHN AVENATTI with ten counts of wire fraud.  The following summary describes the charges and the factual allegations made in support of them in the Indictment.

During the time period alleged in the Indictment, defendant AVENATTI was an attorney licensed to practice law in the State of California, and provided legal services to clients in exchange for attorneys' fees.  Defendant AVENATTI practiced law through his law firms, Eagan Avenatti LLP ("EA LLP") and Avenatti & Associates, APC ("A&A"), which were principally located in Newport Beach and Los Angeles, California.

The Indictment alleges that, beginning as early as in or about January 2015 and continuing through at least in or about March 2019, defendant AVENATTI, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim-clients to whom defendant AVENATTI had agreed to provide legal services, including, but not limited to, Geoffrey Johnson, Alexis Gardner, Gregory Barela, Michelle Phan, and Long Tran, as to material matters, and to obtain money and property from such victim-clients by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts that defendant AVENATTI had a duty to disclose.

Defendant AVENATTI is alleged to have operated the fraudulent scheme by taking the following actions: first, he would negotiate, on behalf of a client, a settlement that would require the payment of funds to the client; then, he would misrepresent, conceal, and falsely describe to the client the true terms of the settlement

and/or the disposition the settlement proceeds; next, he would cause the settlement proceeds to be deposited into a bank account that defendant AVENATTI controlled; he would then embezzle and misappropriate settlement proceeds to which he was not entitled; and finally, he would lull the client to prevent the client from discovering his embezzlement and misappropriation by, among other things, falsely denying that the settlement proceeds had been paid, sending funds to the client under the false pretense that such funds were "advances" on the purportedly yet-to-be received settlement proceeds, and falsely claiming that payment of the settlement proceeds to the client had been delayed for legitimate reasons and would occur at a later time.

Defendant AVENATTI is alleged in the Indictment to have executed this scheme with respect to four matters in which defendant AVENATTI allegedly stole funds belonging to his clients.

### Embezzlement of Geoffrey Johnson's Funds

First, from approximately 2012 through March 2019, defendant AVENATTI and EA LLP represented Geoffrey Johnson in connection with a lawsuit against the County of Los Angeles and others, alleging violations of Mr. Johnson's constitutional rights that led to severe emotional distress and severe physical injuries, including paraplegia (the "L.A. County Lawsuit"). On or about January 21, 2015, defendant AVENATTI negotiated a settlement of the L.A. County Lawsuit on behalf of Mr. Johnson, whereby the County of Los Angeles would pay $4,000,000 to Mr. Johnson to dismiss his L.A. County Lawsuit. Mr. Johnson was entitled to receive the $4,000,000 settlement payment, less EA LLP's attorneys' fees, costs, and expenses.

In January 2015, defendant AVENATTI made false representations to Mr. Johnson about the settlement agreement and concealed and failed to disclose defendant AVENATTI's receipt of the $4,000,000 settlement payment.  By July 2015, defendant AVENATTI caused all of the $4,000,000 settlement proceeds to be transferred or spent without Mr. Johnson's knowledge or consent.

To lull and prevent Mr. Johnson from discovering that defendant AVENATTI had embezzled Mr. Johnson's portion of the $4,000,000 settlement payment, defendant AVENATTI made payments ranging from approximately $1,000 to $1,900 to be made to Mr. Johnson, as well as causing payments to be made to various assisted living facilities to pay for rent on Mr. Johnson's behalf.  Defendant AVENATTI falsely represented to Mr. Johnson that these payments were "advances" on the settlement payment from the County of Los Angeles, which defendant AVENATTI falsely represented had not yet been received.

### **Embezzlement of Alexis Gardner's Funds**

Second, from approximately December 2016 through March 2019, defendant AVENATTI and EA LLP represented Alexis Gardner in connection with potential litigation against Hassan Whiteside, an individual with whom Ms. Gardner had a personal relationship.  On or about January 7, 2017, defendant AVENATTI negotiated a settlement on behalf of Ms. Gardner with Mr. Whiteside.  Under the terms of the settlement agreement, Mr. Whiteside was required to make an initial payment to Ms. Gardner of approximately $2,750,000 by on or about January 28, 2017, and an additional payment to Ms. Gardner of approximately $250,000 on or about November 1, 2020, if certain additional specified conditions were met, for a total of approximately $3,000,000.  Ms. Gardner was entitled to receive the

3

1   initial $2,750,000 settlement payment, less EA LLP's attorneys' fees,
2   costs, and expenses.

3        To conceal the true details of the settlement agreement from Ms.
4   Gardner, defendant AVENATTI did not provide a copy of the settlement
5   agreement to Ms. Gardner, and falsely represented to Ms. Gardner the
6   terms of the settlement agreement, including that Mr. Whiteside would
7   pay Ms. Gardner the settlement funds through approximately 96 monthly
8   payments over the course of the next eight years.

9        On or about January 25, 2017, defendant AVENATTI received the
10  initial $2,750,000 settlement payment, which he concealed and failed
11  to disclose to Ms. Gardner that he had received.  On or about January
12  26, 2017, defendant AVENATTI caused $2,500,000 of the $2,750,000
13  settlement payment to be transferred to an attorney trust account for
14  another law firm to transfer the entire $2,500,000 to Honda Aircraft
15  Company, LLC, to purchase a private airplane for defendant AVENATTI's
16  company, Passport 420.  Defendant AVENATTI also caused the remaining
17  $250,000 of the $2,750,000 settlement payment to be transferred to
18  accounts defendant AVENATTI controlled.

19       To lull and prevent Ms. Gardner from discovering that defendant
20  AVENATTI had embezzled Ms. Gardner's portion of the initial
21  $2,750,000 settlement payment, between March 15, 2017, and June 18,
22  2018, defendant AVENATTI made approximately 11 payments, totaling
23  approximately $194,000, into Ms. Gardner's bank account.  Defendant
24  AVENATTI falsely represented to Ms. Gardner that these payments
25  constituted the monthly settlement payments.  From June 2018 until
26  March 2019, after defendant AVENATTI stopped making the purported
27  monthly payments to Ms. Gardner, defendant AVENATTI falsely
28  represented to Ms. Gardner that Mr. Whiteside was not complying with

                                     4

the settlement agreement and that defendant AVENATTI was working on obtaining the missing monthly settlement payments purportedly due to Ms. Gardner from Mr. Whiteside.

### Embezzlement of Gregory Barela's Funds

Third, from approximately July 2014 through November 2018, defendant AVENATTI and EA LLP represented Gregory Barela in connection with an intellectual property dispute against a Colorado-based company, Brock USA, LLC ("Brock"). Between on or about December 22, 2017, and on or about December 28, 2017, defendant AVENATTI negotiated a settlement agreement on behalf of Mr. Barela with Brock whereby Brock would make an initial payment of $1,600,000 by January 10, 2018, and three additional payments of $100,000 by January 10 of 2019, 2020, and 2021, respectively, for a total of $1,900,000.  Mr. Barela was entitled to receive the initial $1,600,000 settlement payment, less EA LLP's attorneys' fees, costs, and expenses.

On or about December 28, 2017, at a meeting with Mr. Barela to discuss the proposed settlement agreement with Brock, defendant AVENATTI provided an altered copy of the settlement agreement to Mr. Barela, which falsely represented the payment schedule as $1,600,000 due by March 10, 2018, and $100,000 due by March 10 of each of the three subsequent years.

On January 5, 2018, defendant AVENATTI received in his bank account the initial $1,600,000 settlement payment as he instructed Brock to send it, and defendant AVENATTI concealed and failed to disclose to Barela that defendant AVENATTI had this money.  Between January 5, 2018, and March 14, 2018, defendant AVENATTI used nearly

all the initial $1,600,000 settlement payment for his own purposes and to pay for his personal expenses.

To lull and prevent Mr. Barela from discovering that defendant AVENATTI had embezzled Mr. Barela's portion of the initial $1,600,000 settlement payment, from March 2018 to November 2018, defendant AVENATTI falsely represented to Mr. Barela that Brock had not made the initial $1,600,000 settlement payment, and that defendant AVENATTI was working on obtaining the purportedly missing $1,600,000 settlement payment.  From April 2018 to November 2018, defendant AVENATTI caused multiple payments totaling approximately $130,000 to be paid to Mr. Barela and/or his spouse, which payments defendant AVENATTI falsely claimed represented "advances" on Mr. Barela's portion of the $1,600,000 settlement payment so that Mr. Barela could meet certain financial obligations while he was purportedly "waiting" for his portion of the $1,600,000 settlement payment.

### Embezzlement of Michelle Phan's Funds

Finally, from approximately August 2017 until August 2018, defendant AVENATTI represented both Michelle Phan and Long Tran in connection with their separation and divestment from IPSY, a company in which Phan and Tran owned shares.  On or about September 17, 2017, defendant AVENATTI negotiated a "Common Stock Repurchase Agreement" with IPSY on behalf of Ms. Phan and Mr. Tran.  Under the terms of Ms. Phan's Common Stock Repurchase Agreement, IPSY agreed to repurchase initial shares of stock from Ms. Phan for approximately $27,478,940, and thereafter additional shares of stock for approximately $8,146,288, which resulted in a total repurchase amount of approximately $35,625,228.

6

On or about September 18, 2017, IPSY wired approximately $27,414,668 to an attorney trust account controlled by defendant AVENATTI.  Approximately $2,787,651 of this amount constituted defendant AVENATTI's attorneys' fees (i.e., 7.5 percent of the total $35,625,228 repurchase amount), costs, and expenses.  By October 3, 2017, defendant AVENATTI caused the remainder of the initial $27,414,668 payment to be transferred to bank accounts associated with Ms. Phan.

On March 13, 2018, IPSY informed Ms. Phan and Mr. Tran that IPSY was ready to repurchase the remaining shares from Ms. Phan as contemplated in the Common Stock Repurchase Agreement.  Defendant AVENATTI told Mr. Tran that IPSY should wire the remaining $8,146,288 payment due to Ms. Phan to defendant AVENATTI's attorney trust account, and that defendant AVENATTI would then wire the $8,146,288 payment from defendant AVENATTI's trust account to Ms. Phan.  On March 14, 2018, following defendant AVENATTI's instructions, IPSY transferred approximately $8,146,288 to defendant AVENATTI's account, but defendant AVENATTI retained and did not transfer the $8,146,288 payment to Ms. Phan as defendant AVENATTI had promised to do.

Between March 15, 2018, and May 4, 2018, defendant AVENATTI caused approximately $4,000,000 out of the $8,146,288 payment from IPSY due to Ms. Phan to be used for defendant AVENATTI's own purposes and failed to disclose to Ms. Phan and Mr. Tran that defendant AVENATTI had used approximately $4,000,000 of Ms. Phan's funds for defendant AVENATTI's own purposes.

To lull and prevent Ms. Phan and Mr. Tran from discovering that defendant AVENATTI had embezzled approximately $4,000,000 from the approximately $8,146,288 payment defendant AVENATTI received from

IPSY, between March 14, 2018, and on or about May 3, 2018, defendant AVENATTI falsely represented and promised Ms. Phan and Mr. Tran that defendant AVENATTI would transfer Ms. Phan's funds to Ms. Phan at a later date, and that defendant AVENATTI needed to go to the bank to fill out paperwork to effectuate the wire transfers.

Defendant AVENATTI, for the purpose of executing the above-described scheme to defraud, transmitted and caused to be transmitted by means of wire and radio communications in interstate commerce ten wire transfers in relation to the settlement proceeds received for the above-named clients. Each of these wire transfers was sent through the Fedwire Funds Transfer System.

# EXHIBIT 2

# (Defense Version)

## SUMMARY OF THE CASE

The government has charged defendant Michael John Avenatti with ten counts of wire fraud.  Mr. Avenatti denies all charges and has pled not guilty.  He is presumed innocent of the charges against him, and it is the government's burden to prove, beyond a reasonable doubt, that he committed these crimes. Mr. Avenatti has no burden to present any evidence at all and also has no obligation to testify at trial.

The following summary generally describes the charges and the allegations made by the government.  According to the government, during the relevant time period, Mr. Avenatti was an attorney licensed to practice law in the State of California, and provided legal services to clients in exchange for attorneys' fees. The government claims that Mr. Avenatti practiced law through his law firms, Eagan Avenatti LLP ("EA LLP") and Avenatti & Associates, APC ("A&A"), which were principally located in Newport Beach and Los Angeles, California.

The government asserts that beginning as early as in or about January 2015 and continuing through at least in or about March 2019, Mr. Avenatti knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim-clients to whom defendant Mr. Avenatti had agreed to provide legal services, namely Geoffrey Johnson, Alexis Gardner, Gregory Barela, Michelle Phan, and Long Tran, and to obtain money and property from such victim-clients by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts that Mr. Avenatti had a duty to disclose according to the government.

The government maintains that Mr. Avenatti operated the fraudulent scheme by taking the following actions: first, he would negotiate, on behalf of a client, a settlement that would require the payment of funds to the client; then, he would misrepresent, conceal, and falsely describe to the client the true terms of the

settlement and/or the disposition the settlement proceeds; next, he would cause the settlement proceeds to be deposited into a bank account that Mr. Avenatti controlled; he would then embezzle and misappropriate settlement proceeds to which he was not entitled; and finally, he would lull the client to prevent the client from discovering his embezzlement and misappropriation by, among other things, falsely denying that the settlement proceeds had been paid, sending funds to the client under the false pretense that such funds were "advances" on the purportedly yet-to-be received settlement proceeds, and falsely claiming that payment of the settlement proceeds to the client had been delayed for legitimate reasons and would occur at a later time.

At this point, these are mere allegations by the government that have yet to be proven with any evidence.  Mr. Avenatti, as is his right, disputes the government's allegations and maintains his innocence.