TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2435
     Facsimile: (213) 894-6269
     Email:    Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 19-061-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REOPEN DETENTION HEARING (CR 448); EXHIBITS 1-4 |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Alexander C.K. Wyman, hereby files its Opposition to defendant MICHAEL JOHN AVENATTI's Motion to Reopen Detention Hearing (CR 448).

This Opposition is based upon the attached memorandum of points and authorities, the accompanying exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 14, 2021                Respectfully submitted,

                                   TRACY L. WILKISON
                                   Acting United States Attorney

                                   BRANDON D. FOX
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                         /s/
                                   _____
                                   BRETT A. SAGEL
                                   ALEXANDER C.K. WYMAN
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Based on the Court's discretion, defendant is currently on release pursuant to 18 U.S.C. § 3142(i), and the Court stated its intention at the April 7, 2021, status conference to allow defendant to remain on release until defendant's trial.[1] On the same day in which defendant sought a trial continuance based in part on his claimed inability to prepare for trial (CR 447) -- which was properly denied (CR 455) -- defendant filed this needless motion challenging this Court's revocation of his bond that occurred sixteen months ago and over one year after the Court released defendant from custody (CR 140, 151).[2] Because defendant is on release, and will remain so through trial, this motion is unnecessary and should be denied.

The Court should also deny the motion on its merits. As the government has stated on numerous occasions throughout this case, defendant has filed baseless motions, has made unsupported and false allegations and accusations, and has wasted the Court's -- as well as others' -- time. Defendant has previously filed two frivolous misconduct motions, only to withdraw them later. (CR 321, 378.) Defendant spent weeks denying that he violated the terms of his temporary release by using his third-party custodian's computer by providing countless misleading statements to the Court, only to finally claim it was a misunderstanding and was not defendant's

---

[1] Curiously, defendant repeatedly refers to his "continued detention" under the Court's January 15, 2020, Order. (CR 448 at 1-2, 24-25.) It seems unnecessary to state, but, to be clear, defendant is not detained.

[2] And as the Court noted, defendant would have been released a month earlier, but it took defendant approximately one month to comply with the terms of his release. (CR 455 at 1 n.1.)

fault. (CR 271.) The Court has rejected any and all misconduct claims defendant has actually brought and not withdrawn, yet defendant continues to make unfounded misconduct allegations, including the same allegations he has made for almost a year, in an attempt to delay his proceedings and/or distract from his own criminal conduct. Defendant's present motion to reopen his January 2020 detention hearing -- while being on release for over a year -- represents defendant's continued bad faith in the present case.

Defendant's motion is not supported by any evidence, declaration, and/or exhibits to provide a basis for the Court to consider, and the Court can reject the motion for this reason alone. See CDCA L.R. 7.5, 7.6, 7.7. Defendant simply relies upon misleading and irrelevant facts, as well as baseless accusations, but in the end, he cannot show that there is any information that was not known to defendant that would have had a material bearing at the time his bail was revoked on January 15, 2020. See 18 U.S.C. § 3142(f). In fact, the only new material information since defendant's January 15, 2020, bail hearing, is that a jury convicted defendant of three felonies related to his attempt to extort Nike, which further supports this Court's detention order. Nothing in defendant's motion is actually new, the Court in fact already rejected defendant's claim he now raises as "new," and defendant could have easily raised at the bail revocation hearing the central issues defendant now raises as "new." Defendant's motion is without merit and the Court should summarily deny it.[3]

---

[3] Defendant misleadingly claims that defendant's pretrial service officer "supports Mr. Avenatti being placed on regular bond." (CR 448 at 2 (underline in original).) Based on the government's
*(footnote cont'd on next page)*

1 **II. ARGUMENT**

2     **A. Defendant Presents No Basis to Reopen his Bail Hearing**

Upon initially granting the extraordinary remedy of release under Section 3142(i), the Court emphasized:

> The Court has not lost sight and neither should the parties of this Court's finding, and the Ninth Circuit's affirmance, that Avenatti is a danger to the community. <u>United States v. Avenatti</u>, United States Circuit Court of Appeals for the Ninth Circuit, No. 20-50017, Mar. 6, 2020, p. 2. That remains the case, and requires the Court to craft specific, considered and adequate terms for any release under Section 3142(i).

(CR 128 at 2.) Defendant's motion clearly demonstrates that he has lost sight of the Court's finding, which was affirmed by the Ninth Circuit. Defendant <u>is</u> a danger to the community.

By statute, a detention hearing may be reopened only upon a finding "that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f); see <u>United States v. Ward</u>, 63 F. Supp. 2d 1203, 1206 (C.D. Cal. 1999) ("Courts have interpreted this provision strictly, holding that hearings should not be reopened if the evidence was available at the time of the initial hearing."); see, e.g., <u>United States v. Hernandez</u>, No. 2:19-CR-00737-ODW, 2020 WL 4287585, at *2 (C.D. Cal. July 24, 2020) (finding "no basis under § 3142(f) to re-open the detention hearing" because the "only new information the Defendant cites is the pandemic"); United

---

understanding, not only did Officer Davis <u>not</u> tell defendant (or his counsel) that she "supports" this, defendant's counsel told Officer Davis that part of the reason for this motion was because this case would not be proceeding in July and this would alleviate the need to come back to the Court every couple months.

3

States v. Nichirie, No. CR 04-354-DSF, 2006 WL 8435169, at *2 (C.D. Cal. Feb. 28, 2006) (finding that the defendant's purported "new evidence," "a recitation of difficulties obtaining and analyzing voluminous discovery materials," "present[ed] no justification for reopening the [bail] hearing"); see also C.D. Cal. L.R. 7-18 (motion for reconsideration must present either (a) material differences in law or fact not previously presented to the Court, (b) the emergence of new material facts or change in law, or (c) a manifest showing of failure to consider material facts). Defendant's motion fails to meet the requirements of Section 3142(f).

Despite basically conceding that his motion to reopen a detention hearing is not the proper mechanism "to present all of the details relating to the new information and facts, nor is it appropriate for arguing the merits of amending the detention order," (CR 448 at 1 n.1), that is all that defendant's motion does. Defendant attempts to camouflage the essential material facts necessary to reopen a hearing by creating a long list of unsupported and irrelevant facts. But none of defendant's nineteen listed "new information and facts" are actually new information not known at defendant's revocation hearing that would have materially changed the outcome.[4]

### 1. Money Paid to Defendant's First Ex-Wife

Defendant spills the most ink over his claim that the government got defendant detained by claiming defendant did not actually owe his first ex-wife, Christine Carlin, money, when in fact he did and the

---

[4] Defendant's motion is littered with irrelevant claims and accusations, to which the government will not waste the Court's time responding. The government's election not to respond to each of these claims should not be interpreted as agreement with them.

4

government prevented defendant from presenting such evidence. (CR 448 at 5, 16-20.) First, defendant did raise this argument at the hearing and the Court rejected it. (RT 1/15/2020 at 9-10; see also id. at 13 (defense counsel stating that defendant also owed money to Christine Carlin).) Defendant argued that his movement of money was entirely proper. Defendant specifically claimed that he had considerable debts to numerous people and asked why some creditors, such as Jason Frank, should receive payment before others, including his first ex-wife. To which the Court properly responded to defendant's assertions that his actions were appropriate: "Only if they do certain things like move their money around and disguise it. California statutes deal specifically with that problem where there's an outstanding judgment." (Id. at 9-10.)

Sixteen months later, defendant continues to argue exactly what he argued unsuccessfully at the hearing, that his payment to his first ex-wife was legitimate. The issue was never about whether defendant owed Ms. Carlin money, but whether defendant engaged in a scheme to avoid paying creditors that had valid court judgments -- a scheme defendant engaged in by initially sending money to Ms. Carlin. Defendant's argument -- now and previously -- is also frivolous because it purposefully ignores the material facts that completely undermine defendant's arguments, which led to this Court's detention order. Namely, that defendant did not just pay Ms. Carlin $717,000, but she immediately sent him back a cashier's check for $500,000, bought him a car, and attempted to pay for a criminal defense attorney for defendant with the money. If defendant was paying the money pursuant to a judgment as he still claims, there would be no reason for Ms. Carlin to immediately send the money back to him.

5

More importantly, defendant also does not address his affirmative acts to hide his assets from creditors, including his scheme to flip cashier's checks, which his attorney admitted defendant did at the hearing, and which this Court properly determined was a crime.[5]

Defendant repeatedly claims, as he has countless times throughout this case, that the government made false statements to the Court that defendant did not owe Ms. Carlin money and should have paid money to other creditors. (CR 448 at 5, 19.)[6] Defendant never cites to anything in the government's motion to revoke defendant's bail nor any statements the government made at his bail revocation hearing, because the government never made these statements. As the Court is aware, defendant's criminal conduct that resulted in his detention related to his actions to avoid paying legal judgments against defendant by hiding assets from his creditors by, among other ways, flipping cashier's checks, having his ex-wife buy a car for him, and opening multiple bank accounts. Whether or not defendant owed money to Ms. Carlin was and still is a red herring.

Finally, at defendant's revocation hearing, along with defendant's current counsel, defendant was represented by Tom Warren

---

[5] Defendant, often in bold type, repeatedly asserts there is now no dispute that his payments to Ms. Carlin were legal and legitimate and even cites to a judgment Ms. Carlin received five months <u>after</u> the revocation hearing. (CR 448 at 18.) First, the payments <u>were</u> not legitimate, as evidenced, at a minimum, by Ms. Carlin immediately paying $500,000 back to defendant and buying him a car. Moreover, if defendant and Ms. Carlin believed Ms. Carlin had a legitimate antecedent debt, there would have been no need for the judgment five months later. In reality, this June 2020 judgment appears to be defendant and Ms. Carlin's ongoing efforts to thwart his other creditors.

[6] Defendant even claims he "recently learned" of these facts that he claims the government hid from him (CR 448 at 19), but he has been raising these same baseless claims since at least July 2020 (CR 209 at 8-9).

6

and Daniel Dubin, who simultaneously represented defendant and Ms. Carlin in related turn-over and judgment debtor proceedings in Superior Court.[7] For months leading up to the revocation hearing, including on January 7, 2020, approximately one week prior to the revocation hearing, defendant and Ms. Carlin's counsel made the very same argument that defendant was entitled to pay Ms. Carlin the $717,000 because she supposedly had an antecedent debt. (See Exhibits 1-3, attached.) The Superior Court rejected this argument and issued a judgment against Ms. Carlin for $717,000. (Exhibit 4, attached.) Defendant and Ms. Carlin even made their arguments to the Superior Court knowing that Ms. Carlin immediately paid back at least $500,000 to defendant six months earlier.[8] In sum, this argument, which had been rejected by a judge a week prior to the revocation hearing, was known to defendant at the revocation hearing -- and is irrelevant.

        2.    Available Surety and Third-Party Custodian

Defendant also claims that he was unaware of the willingness of others to act as a surety and a third-party custodian at the time of the revocation hearing. (CR 448 at 9-10.) First, the government does not believe the availability of a surety or third-party custodian would have had a material impact on the analysis under the Bail Reform Act. See 18 U.S.C. § 3142(f). Assuming arguendo it

---

[7] To the government's understanding, this apparent conflict of interest, about which Mr. Warren and Mr. Dubin did not advise Ms. Carlin nor obtain a conflict waiver, led to them ultimately terminating their representation of defendant in this case.

[8] The Superior Court judge issued a judgment against Ms. Carlin for the full $717,000 because defendant, Ms. Carlin, and their shared counsel claimed the full amount was paid to her to satisfy a prior judgment, rather than being candid about how much money Ms. Carlin actually received from defendant.

7

could be material, this information was known, defendant simply chose not to argue it.  Both at the revocation hearing, and on appeal to the Ninth Circuit, defendant only argued that defendant did not commit any new crime or do anything wrong.  Defendant chose not to propose alternative conditions or combinations of conditions, even though the government specifically stated, in its motion and at the hearing, that at a minimum defendant would need new sureties as Ms. Carlin clearly was not appropriate.  (CR 98 at 5 n.5; RT 1/15/2020 at 22.)

        3.    <u>Defendant's Compliance While on Temporary Release</u>

Defendant maintains he has been "fully compliant" with a "spotless record" while on temporary release.  (CR 448 at 8, 9.) Even if true, this is irrelevant under the Section 3142(f) analysis, as the Court specifically found probable cause that defendant committed federal and state crimes while on release at the January 15, 2020, hearing.  Moreover, this Court specifically stated that it has "been holding off ruling on the government's motion to have [defendant] remanded."  (RT 4/7/21 at 6.)  The Court has yet to state that defendant has been fully compliant, and defendant even admitted -- eventually -- to using his custodian's computer, which was a violation of his temporary conditions of release, so defendant's claim is inaccurate.[9]

---

[9] The government believes the remaining "new facts" listed by defendant are irrelevant -- or more so than the ones addressed above -- for determining whether to reopen defendant's revocation hearing. As such, the government will not respond to them individually and will simply state they do not support reopening under Section 3142(f).  To the extent the Court would like government input on any of these claims, the government will provide it upon request.

8

1     **B.     Defendant Is Not Detained**

Defendant frivolously argues that his Due Process Rights under the Fifth and Sixth Amendments have been violated by his "continued detention" for the last sixteen months. (CR 448 at 24-25.) Defendant's claim is supported by neither fact nor law. First, and most obviously, defendant is not detained, and has not been since April 2020. Second, the cases defendant cites, most notably United States v. Torres, No 21-50006, 2021 WL 1589361 (9th Cir. Apr. 23, 2021), do not remotely support defendant's claim. For example, in Torres, the defendant (unlike defendant here) had been detained for eighteen months without a trial due, in part, to COVID-19, and the Ninth Circuit still found his Speedy Trial rights and his Due Process rights were not violated. Id. at *2. Finally, it should be noted that the same day in which defendant is claiming that his Due Process Rights were being violated, defendant sought a continuance of his trial (CR 447), which this Court properly denied (CR 455).

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion in its entirety.