H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
|---|---|
| Plaintiff, | DEFENDANT'S REPLY IN SUPPORT OF MOTION TO REOPEN DETENTION HEARING |
| v. | (18 U.S.C. § 3142(f)) |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | Hearing Date: May 24, 2021 |

## I. INTRODUCTION

Contrary to the government's arguments in opposition, Mr. Avenatti's Motion to Reopen the Detention Hearing (the "Motion") is based on well-settled law and a specific code section of the Bail Reform Act (Section 3142(f)) that provides a defendant with the opportunity to do exactly what Mr. Avenatti has done – move to reopen a prior detention hearing. The filing of such a motion is not "needless," "frivolous" or "baseless" as the government claims.[1] Nor is it novel or highly unusual, especially when the detention hearing at issue occurred long ago and so much has changed in the interim time period, including facts highly relevant to the § 3142(g) factors.

Section 3142(f) allows a defendant to move to reopen a detention hearing <u>at any time before trial</u>, provided that information exists that was not known to the defendant at the time of the hearing[2] and the information has a material bearing on the question of <u>whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community</u>. *See* 18 U.S.C. § 3142(f) (emphasis added); *see also United States v. Barksdale*, 2008 WL 2620380, *2 n. 3 (E.D. Cal., July 1, 2008); *United States v. Perez-Cornejo*, 2020 U.S. Dist. LEXIS 64355 (S.D. Cal. 2020); *United States v. Parmer*, 2020 U.S. Dist. LEXIS 81930 (N.D. Cal. 2020).

Here, in light of the undisputed facts as detailed in the Motion, there can be no serious debate as to whether (1) circumstances have changed significantly since Mr. Avenatti's remand and (2) it has been demonstrated that there <u>are</u> conditions of release that will assure his appearance and adequately protect the community. This is not speculative. It is established by, among other things, Mr. Avenatti's conduct over the

---

[1] Motions relating to a person's liberty can rarely be legitimately described as "needless" or "frivolous" in light of our fundamental Constitutional principles.

[2] The government suggests that the information must be recently discovered as opposed to information that was simply not known to the movant at the time of the detention hearing. The government is incorrect.

last 13 months and, to use the words of Pretrial Services ("PSA") in the report they submitted to this Court on May 14, 2021, the fact that "[t]hroughout the period of temporary release, the defendant has remained in compliance and has been cooperative with directives from Pretrial Services" (page 3)(emphasis added). According to PSA, Mr. Avenatti "has shown a pattern of consistently compliant behavior" and PSA "has not received any new information that would suggest [Mr. Avenatti] is a flight risk or danger to the community." *Id*. Further, in PSA's view, the government has not provided anything new that would suggest Mr. Avenatti is currently a flight risk or danger to the community. *Id*. All of this substantiates PSA's position, as stated in the report, that Mr. Avenatti should be granted permanent bond. *Id*. *See also* E-mail Correspondence with PSA attached as Exhibit A to the Motion (detailing PSA's input on the proposed bond terms before the Motion was filed).³

Moreover, the recent determination by PSA is entirely consistent with the May 2020 conclusions of the U.S. Probation Office as documented in their presentence report filed in the Nike-related case [Dkt. 295] - another piece of new information not available to Mr. Avenatti in January 2020. That report, which was completed and filed five months after the detention hearing, states: "[Mr. Avenatti] is not viewed as a flight risk or a danger to the community." Despite having every opportunity to object to this finding or challenge it in the Nike case, the government has never done so. **In fact, the opposition is completely silent as it relates to the May 2021 PSA report submitted last Friday and the presentence report filed last May, both of which contain findings that constitute new evidence (a) in support of Mr. Avenatti's request to**

---

³ In its opposition, the government does not address the email correspondence between PSA and the defense that was attached to the Motion as Exhibit A. This email correspondence evidences PSA's involvement in early May in providing input regarding the proposed terms of Mr. Avenatti's bond and their position that they have no objection to those terms.

2

**reopen the hearing and grant bond as requested and (b) having a material bearing on the factors under § 3142(g).**

All of the information provided to the Court by way of the proffer in the Motion is "new" in that it was learned <u>after</u> the detention hearing held on January 15, 2020.[4] Further, this information has a material bearing as to the factors to be considered under sections 3142(g)(3) and (4), as well as the questions of whether Mr. Avenatti remains a financial or economic danger to the community and whether it is still true that absolutely no set of conditions of release exist that will reasonably assure the safety of the community, all of which is **required** for Mr. Avenatti to continue to be subject to the detention order.  *See, e.g., United States v. Soulati*, 2020 U.S. App. Lexis 39853 (9th Cir. 2020)(reversing district court's detention order and decision that found set of conditions agreed to by Pretrial Services were insufficient in a case involving the commission of alleged felonies while on bail).  For the reasons set forth herein and in the Motion, Mr. Avenatti respectfully requests that the detention hearing be reopened.

II.   <u>ARGUMENT</u>

    A.   **Mr. Avenatti's Compliance Over the Last 13 Months Demonstrates That the Detention Order Should Be Modified**

As detailed in the Motion and by way of the report filed last week by PSA, Mr. has "consistently" complied with the terms of his temporary release "throughout" the last 13 months.  He has been cooperative with PSA and "has shown a pattern of consistently compliant behavior."  Report at p. 3.  He is not presently considered a flight risk nor has he ever been found to be a flight risk.  In fact, the government has never argued Mr. Avenatti is a flight risk.

---

[4] Undersigned counsel can easily submit a formal proffer of the new information set forth in the Motion by way of a declaration, if directed to do so by the Court.  As stated in the Motion, much of the information is readily available on the dockets of various courts and therefore subject to judicial notice.

3

Further, there is no evidence that he presently poses a danger to the community. *Id*. And even if there was, the last 13 months serves as conclusive evidence that there are conditions of release that can adequately protect the community. *See* § 3142(g)(4); *see also United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) (where the issue is the safety of the community, Congress did not require guarantees in enacting the Bail Reform Act).

Importantly, in order to establish that Mr. Avenatti must remain subject to the detention order, the government is required to show that Mr. Avenatti is <u>presently a danger to the community under the circumstances as they exist today (i.e. Mr. Avenatti's financial position)</u>. They must do so through 'clear and convincing evidence.' " *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). And they must also show that there are no conditions of release that can adequately protect the community. In light of Mr. Avenatti's history over the last 13 months, as attested to by PSA in their Report, the government cannot meet this burden. Accordingly, the detention hearing should be reopened so that Mr. Avenatti can submit material evidence bearing on the factors of §§ 3142(g)(3) and (4), and Mr. Avenatti should be placed on regular bond.

**B. The Government Fails to Address 15 of the 19 Categories of New Information Offered in the Motion, Including the Information Relating to Mr. Avenatti's Current Financial Status and the May 2020 PSR**

In the Motion, undersigned counsel provided a detailed proffer regarding 19 categories of new information that have a bearing on the material issues of whether there are appropriate conditions of release and whether Mr. Avenatti remains a threat to the community. *See* Motion at 8-20. The government addressed four categories at most and ignored the rest. But the information that the government ignores directly refutes the government's basis for remand, namely their claim that Mr. Avenatti is an "economic danger to the community" because he takes steps to avoid paying his creditors by

diverting and hiding assets and income. In response to these categories of information (Nos. 4, 5, 6, 7, 8, 9, 10, and 11) the government offers nothing.

The reason for this is clear – because there is no evidence that Mr. Avenatti has any income or meaningful assets, liquid or otherwise, to divert or hide. He has no income; he has no banking or financial accounts; he has no liquid assets to dissipate, move or transfer; and he has no means or opportunity to defraud any creditors. Nor has he for over a year. As a result, he cannot possibly remain the same danger to the community that the government successfully argued in January 2020.

Further, in their opposition, the government does not mention, let alone address, the finding of the U.S. Probation Office in May 2020, made five months after the detention hearing, that Mr. Avenatti is a candidate for self-surrender and "is not viewed as a flight risk or a danger to the community." *See* Dkt. 295 (Pre-Sentence Report filed in Nike-related case). This, like the financial information, has a material bearing on the factors set forth in § 3142(g)(3) and (4). Thus, the hearing should be reopened so this information may be submitted in context.

  C. **The Surety and Third-Party Custodian Information Is New and Supports Reopening the Hearing**

There is no evidence that at the time of the detention hearing, Mr. Avenatti was aware of his ability to obtain a surety willing to sign a $1,000,000 bond and pledge collateral, or that an individual would serve as a third-party custodian. This is new information that bears directly on the factors identified in § 3142(g). *See*, *e.g.*, *United States v. Ward*, 63 F.Supp. 2d 1203 (C.D. Cal. 1999) (granting request to reopen detention hearing on the grounds that defendant's immediate family was now willing to post upwards of one million dollars of real property to secure his release and appearance but were not present and were not contacted regarding the need for a large real property bond at the time of the first detention hearing); *United States v. Alaby*, 2020 U.S. Dist. LEXIS 84424 (S.D. Cal. 2020) (granting request to reopen detention hearing due to

COVID-19 risks and defendant's father-in-law agreeing to serve as surety); *United States v. Perez-Cornejo*, 2020 U.S. Dist. LEXIS 64355 (S.D. Cal. 2020) (finding that defendant sufficiently pled new evidence to challenge the court's initial detention findings when defendant was able to present evidence that his son could act as a surety and also provide housing).

### D. Mr. Avenatti Remains Subject to the Detention Order and Due Process Concerns Are Applicable

The government argues that Mr. Avenatti is no longer "detained" and therefore no longer subject to the detention order. According to the government, this means that Mr. Avenatti cannot seek to reopen the hearing nor may he assert his applicable Constitutional rights to due process. The government is incorrect.

Mr. Avenatti remains subject to the detention order and is presently on *temporary release*, in the custody of Mr. Manheimer, his custodian. His electronic monitoring agreement states he is under "home incarceration." The Court has likewise described Mr. Avenatti's current situation as home detention. The terms of his confinement, which the government advocated for before his release from the MCC in New York, are as strict as they are broad.[5] He has been permitted to leave the apartment on a single

---

[5] The government claims in their opposition that it took Mr. Avenatti one month to comply with the terms of his temporary release, thereby delaying his release from jail. Opposition at fn. 2. This is not accurate. On March 27, 2020, the Court, at the urging of the government, <u>denied</u> Mr. Avenatti's *ex parte* application for temporary release [Dkt. 128.] After prolonged and ever-evolving opposition by the government in the days that followed, including as it related to Mr. Avenatti's proposed surety and bond, on <u>April 10, 2020</u>, the Court issued an Order permitting Mr. Avenatti's release and setting forth the conditions that had to met before such release. [Dkt. 140.] Most notably, condition no. 2 required Mr. Avenatti to undergo a 14-day quarantine at a BOP facility <u>before</u> he could be released. Mr. Avenatti immediately began his 14-day quarantine. In the days that followed and in the middle of the lockdown due to the pandemic, undersigned counsel worked tirelessly to successfully finalize the bond, together with the property appraisal; deal with recording issues; and arrange an attorney minder to transport Mr. Avenatti back from New York. Mr. Avenatti was subsequently released on April 24,

occasion in the last 13 months (in order to get the vaccine).  And while his current conditions are far better than jail (and appreciated), they are hardly consistent with standard bond conditions or even those of traditional home confinement.  Further, the government points to no authority for the proposition that Mr. Avenatti's due process rights are rendered non-existent by his current custodial status.

At this point, in light of the facts detailed in the Motion and herein, continuing to subject Mr. Avenatti to the detention order is punitive.  This, the law does not allow.  *See United States v. Torres*, 2021 U.S. App. LEXIS 12147 *24; __ F.3d __ (Apr. 23, 2021)("A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is <u>no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose</u>. *Salerno*, 481 U.S. at 747.")(emphasis added).

### E.  The Government's Claims Regarding Mrs. Carlin Are Not Accurate

In opposition, the government makes a number of assertions relating to Mrs. Carlin that are not accurate or supported by the record.  To begin with, the government claims that they never represented to the Court that Mr. Avenatti did not owe Mrs. Carlin money at the detention hearing.  Opposition at 6.  The government goes on to state: "Defendant never cites to . . . any statements the government made at his bail revocation hearing, because the government never made these statements." *Id*.  <u>This is demonstrably false on two levels</u>.  One, on pages 5 and 16 of the Motion, the defendant cites to, and quotes from, the exact portion of the transcript where the government made the relevant statement.  Two, the statement reads as follows:  "For all intents and purposes, when you look at the cash transaction, he paid her to be a surety.  She made a couple hundred thousand dollars off of it.  Maybe minus 50,000 for the car she bought him." [Transcript, Dkt. 94, p.22:19-22.].  When this statement was made, as outlined in the Motion, the government knew that at the time Mrs. Carlin received the funds from

---

2020, exactly 14 days after the April 10, 2020 Order and the earliest possible date under the terms of the Order.  There was no delay or foot dragging by the defense.

Mr. Avenatti, she was owed significant past due support pursuant to the judgment she had obtained against him back in 2007.[6] Accordingly, they knew she wasn't being paid or bribed to be a surety and they also knew she wasn't making "a couple hundred thousand dollars off of it." And yet they represented to the Court that there was no legitimate basis for the payment. This was highly improper, especially in the context of seeking to have Mr. Avenatti incarcerated.

Second, the government claims that Mrs. Carlin bought Mr. Avenatti a $50,000 car. The government knows this is not true because since the detention hearing, the government has been provided documents by Mrs. Carlin, through her attorney, that demonstrate the car was never intended to be Mr. Avenatti's.

Third, the government claims that Mrs. Carlin's subsequent payment of $500,000 to Mr. Avenatti was evidence of nefarious activity. The government knows this is likewise incorrect because since the detention hearing, Mrs. Carlin and her attorney have explained to the government why the $500,000 payment was made, as well as the fact that it resulted after consultation with Mrs. Carlin's counsel and made at his direction. The government fails to bring any of this to the attention of the Court.

---

[6] Footnote 5 in the opposition makes clear that the government is not familiar with how divorce judgments and subsequent orders for arrears work in California. When Mr. Avenatti and Mrs. Carlin were divorced in 2007, a judgment was entered. This is why the face of the document, which the government actually filed as an exhibit with its opposition, states that it is a "judgment" and the word "judgment" repeatedly appears in the document. This judgment required the payment of various monies by Mr. Avenatti and likewise provided for increased payments as Mr. Avenatti's income increased (a standard requirement in California because, by law, child support can never be fixed). No further order or directive was required to establish this antecedent debt. The subsequent finding of arrears, as determined by the Hon. Thomas Trent Lewis (ret.) in his April 2021 Order, operated to fix the exact amount owed for arrears pursuant to the 2007 judgment. This is consistent with California law and procedure. Finally, the government's suggestion that Judge Lewis, one of the most widely respected family law judges in California in the last 50 years, actively participated in a conspiracy to thwart Mr. Avenatti's creditors by recently issuing a bogus judgment, is beyond the pale.

     Finally, in the Motion, the defendant provided details relating to the information that the government came in possession of relating to Mrs. Carlin both before and after the hearing, their failure to timely provide that information to the defense, their continued refusal to provide the information, and its exculpatory nature. Motion at 18-19. The government provides no response. The reason for this should be readily apparent to the Court - because it is all true.

### III. CONCLUSION

     For each of the reasons stated above and in the Motion, defendant respectfully requests that the Court grant the Motion and reopen the detention hearing pursuant to 18 U.S.C. § 3142(f). Following the reopened hearing, the Court should grant Mr. Avenatti bail on the conditions attached as Exhibit A to the Motion.

Dated: May 18, 2021                            Respectfully submitted,

                                                  /s/ H. Dean Steward
                                                  H. DEAN STEWARD
                                                  Attorney for Defendant
                                                  MICHAEL JOHN AVENATTI

# CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672. I am not a party to the above-entitled action. I have caused, on May 6, 2021, service of the:

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO REOPEN DETENTION HEARING (18 U.S.C. § 3142(f))

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 18, 2021

/s/ H. Dean Steward
H. Dean Steward