H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | DEFENDANT'S BRIEF AND PROFFER IN SUPPORT OF BAIL |
| v. | Hearing Date:  May 24, 2021 |
| MICHAEL JOHN AVENATTI, | Hearing Time:  11:00 a.m. |
| Defendant. | |

TO ACTING U.S. ATTORNEY TRACY L. WILKISON, AUSA ALEXANDER WYMAN, and AUSA BRETT SAGEL, PLEASE TAKE NOTICE that Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this Brief and Proffer in Support of Bail in advance of the Bail Review Hearing set for May 24, 2021 at 11:00 a.m.  This brief and proffer is filed in anticipation of the Court granting Defendant's Motion to Reopen the Detention Hearing [Dkt. 448].  Defendant's request for bail is based on the attached brief and the legal citations therein; the evidence referenced in the attached; the files, records and transcripts in this case and the other cases cited herein; and such further evidence and argument as the Court may permit at the hearing.

Dated:  May 21, 2021

Respectfully submitted,

/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

I.      INTRODUCTION ...................................................................1

II.    APPLICABLE LAW ..............................................................1

     A. Requirements of the Bail Reform Act...................................2

     B. The § 3142(g) Factors ........................................................3

     C. The Ninth Circuit's Holding in *United States v. Twine* .........4

     D. The Right to Due Process.....................................................6

III.   ARGUMENT AND PROFFER ................................................6

     A. Consideration of the § 3142(g) Factors Support Bail .........6

         1. The Nature and Circumstances of the Offenses Charged ................6

         2. The Findings by U.S. Probation and Pretrial Services.....................6

         3. Mr. Avenatti's Ties to the Community and Character....................9

         4. Risk of Flight......................................................11

         5. Mr. Avenatti's Criminal History .........................................12

         6. Mr. Avenatti's Record Concerning Court Appearances .................12

         7. Mr. Avenatti's Lack of Financial Resources.................................12

         8. Mr. Avenatti's Lack of Employment ............................................14

9. Mr. Avenatti is Not a Danger to the Community and Has Shown That Appropriate Conditions Exist ........................................15

10. Mr. Avenatti's Surety and His Ability to Post Significant Collateral.................................................................16

11. Mr. Avenatti's Third-Party Custodian ...........................................16

12. Mr. Avenatti's Health and the Risks from Covid-19 ...................16

B.  The Court Should Grant Bail Pursuant to *United States v. Twine* ......17

C.  Due Process Requires That Bail Be Granted .......................................17

D.  Bail Should Be Granted In Order to Allow Mr. Avenatti to Assist In His Defense ........................................................................18

IV.     CONCLUSION ........................................................................20

CERTIFICATE OF SERVICE ...........................................................................

# <u>TABLE OF AUTHORITIES</u>

<u>CASES:</u>                                                                                                    <u>Page</u>

*Oscanyon v. Arms Co.*,
103 U.S. 261 (1893)................................................................................14

*Stack v. Boyle*,
342 U.S. 1 (1951)....................................................................................2

*United States v. Bell*,
2008 WL 11411709 (C.D. Cal. June 6, 2008) .......................................5

*United States v. Byrd*,
969 F.2d 106 (5th Cir. 1992) ..............................................................4, 5

*United States v. Briggs*,
697 F.3d 98 (2d Cir. 2012)...............................................................6, 17

*United States v. Djoko*,
2019 WL 4849537 (W.D. Wash. Oct. 1, 2019).....................................5

*United States v. Flores*,
679 F.2d 173 (9th Cir. 1982)...............................................................14

*United States v. Friedman*,
837 F.2d 48, 49 (2d Cir. 1988)..............................................................4

*United States v. Gebro*,

948 F.2d 1118 (9th Cir. 1991)..........................................................................2, 3

*United States v. Gentry*,

455 F. Supp. 2d 1018 (D. Ariz. Oct. 5, 2006)..........................................................5

*United States v. Gonzalez Claudio*,

806 F.2d 334 (2d Cir. 1986)..........................................................................2, 6, 17

*United States v. Himler*,

797 F.2d 156 (3d Cir. 1986)..........................................................................4, 5

*United States v. Hir*,

517 F.3d 1081 (9th Cir. 2008)..........................................................................3

*United States v. Montalvo-Murillo*,

495 U.S. 711 (1990)..........................................................................2

*United States v. Motamedi*,

767 F.2dd 1403 (9th Cir. 1985)..........................................................................2, 7

*United States v. Myers*,

930 F.3d 1113, 1119 (9th Cir. 2019) ..........................................................................6, 17

*United States v. Ploof*,

851 F.2d 7 (1st Cir. 1988)..........................................................................4, 5

iv

*United States v. Qazi,*
2017 WL 2484102 (D. Nev. June 8, 2017)..............................................5

*United States v. Salerno,*
481 U.S. 739 (1987)................................................................2, 6

*United States v. Shakur,*
817 F.2d 189 (2d Cir. 1987).........................................................2

*United States v. Singleton,*
182 F.3d 7, 9 (D.C. Cir. 1999).......................................................5

*United States v. Twine,*
344 F.3d 987 (9th Cir. 2003) ..................................................4, 5, 17

*United States v. Tortora,*
922 F.2d 880 (1st Cir. 1990).........................................................3

*United States v. Winsor,*
785 F.2d 755 (9th Cir. 1986).........................................................3

## OTHER AUTHORITIES:

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141, *et seq.* ..........................*passim*

S. Rep. No. 98-225, as reprinted in 1984 U.S.C.CA.N. 3182 ..............................2

v

## I.     **INTRODUCTION**

In the event this Court grants Defendant Michael John Avenatti's ("Mr. Avenatti") pending Motion to Reopen Detention Hearing [Dkt. 448] and reopens the hearing, Mr. Avenatti respectfully requests that the Court revoke its prior detention Order and grant him bail on the conditions attached as Exhibit A.[1]  Bail should be granted because:  (1) The § 3142(g) factors support an Order for bail; (2) the government cannot show with clear and convincing evidence that Mr. Avenatti is presently a danger to the community <u>and</u> there is absolutely no combination of conditions that will reasonably assure Mr. Avenatti's appearance as required and the safety of the community; (3) the law does not permit Mr. Avenatti to be denied bail unless one of the two § 3142(f) factors is also applicable and they are not; (4) continuing to subject Mr. Avenatti to the prior detention Order violates Mr. Avenatti's right to due process under the Fifth and Sixth Amendments to the United States Constitution; and (5) in order to adequately prepare and present Mr. Avenatti's defense, undersigned counsel needs to be able to work closely with him in the weeks leading up to trial in this complex, fact intensive case, which involves well over a 1.1. million pages of discovery and vast amounts of electronic discovery.

For each of these reasons, Mr. Avenatti respectfully requests that bail be granted and the Court's prior detention Order vacated.

## II.    **APPLICABLE LAW**

### A.     **Requirements of the Bail Reform Act**

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141, *et seq*. requires that a court "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S.

---

[1] Attached as Exhibit B is email correspondence that evidences the Pretrial Service Agency's ("PSA") involvement in early May in providing input to defense counsel regarding the proposed terms of Mr. Avenatti's bond and their position that they have no objection to those terms.

Rep. No. 98-225 at 7, as reprinted in 1984 U.S.C.CA.N. 3182, 3189); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (suggesting that "detention prior to trial or without trial is the carefully limited exception to liberty before trial"). "In our society liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *See United States v. Montalvo-Murillo*, 495 U.S. 711, 723-24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the critical interests involved, therefore, a "case-by-case" approach is required <u>at all stages of a case</u> in assessing the propriety of continued pretrial detention. *See United States v. Gonzalez Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention and the interest at stake) (citations omitted).

The Act requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. *See United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2dd 1403, 1405 (9th Cir. 1985). Only in rare circumstances should release be denied, and doubts regarding the propriety of release must be resolved in favor of release. *See Gebro*, 948 F.2d at 1121; *Motamedi*, 767 F.2d at 1405.

The Bail Reform Act requires release unless <u>no combination of conditions</u> can reasonably assure the appearance of the person and the safety of the community. 18 U.S.C. § 3142. <u>Further, § 3142 does not seek ironclad guarantees and the requirement that conditions of release will "reasonably assure" the safety of the community cannot be read to require a set of conditions that make it a near certainty that the community will be protected at all times under any conceivable set of circumstances.</u> *See*, *e.g.*, *United*

2

*States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) (where the issue is the safety of the community, Congress did not require guarantees in enacting the Bail Reform Act).

Critically, "A finding that a defendant is a danger to any other person or the community must be supported by 'clear and convincing evidence,'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008), as must a finding that no combination of conditions will reasonably assure the safety of the community. *See* U.S.C. § 3142(f)(2)(B). Importantly, this requirement remains constant throughout a case, and must take into account changed circumstances, the introduction of new facts and information, and the passage of time. As a result, any findings that Mr. Avenatti is <u>presently</u> a danger to the community or that no conditions can reasonably assure the safety of the community must be supported by clear and convincing evidence. <u>The government is unable to meet either of these two requirements under the current facts</u>.

**B.     The § 3142(g) Factors**

Section 3142(g) provides that the Court shall take into account a number of factors when determining whether there are conditions of release that will reasonably assure a defendant's appearance and the safety of the community. Included among these factors are: the nature and circumstances of the offense charged, including whether the offense is a crime of violence; the person's character; the person's physical and mental condition; the person's family ties and employment; the person's financial resources; length of residence in the community, the person's criminal history; record concerning appearance at court proceedings; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* § 3142(g). Evidence of guilt is the least important of the § 3142(g) factors. *See United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). Further, the determination of pretrial release under § 3142 neither requires nor permits a pretrial determination of guilt. *See Gebro*, 948 F.2d at 1121-22.

3

### C.    The Ninth Circuit's Holding in *United States v. Twine*

The Ninth Circuit has held that the Bail Reform Act does not authorize pretrial detention on the ground that the defendant presents a risk of danger to the community unless one of the two § 3142(f) factors is also applicable:  (1) the defendant is charged with one of the enumerated offenses listed in U.S.C. § 3142(f)(1)(A)-(E) (involving crimes of violence, offenses for which the maximum sentence is life imprisonment or death, drug trafficking offenses, felonies involving a minor victim, and offenses involving the possession or use of a firearm (the "enumerated offenses"), or (2) the government shows that there is a "*serious* risk that [the defendant] will flee" or obstruct justice.[2]  18 U.S.C. § 3142(f)(2).  As the Ninth Circuit held in *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003):  "We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2). Our interpretation is in accord with our sister circuits who have ruled on this issue.  *See United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988); *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986)."  Accordingly, alleged danger to the community, standing alone, is not enough.  Absent one of these two factors, a defendant must be granted bail.[3]

Every other circuit court that has addressed this issue – the First, Second, Third, Fifth and D.C. – agrees with the Ninth Circuit's decision in *Twine*.  *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988)("The Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of

---

[2] This is a far higher standard than ordinary "risk of flight" and requires the government to substantiate its request that no bail be granted with evidence that there is a serious risk the defendant will flee.

[3] This argument and the holding in *Twine* were not previously raised by the defense during the detention hearing in January 2020 or in connection with the appeal that followed.

4

justice, or an indictment for the offenses enumerated [in § 3142(f)(1)]."); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999); *United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992)("[W]e find ourselves in agreement with the First and Third Circuits:  a defendant's threat to safety of other persons or to the community, standing alone, will not justify pre-trial detention" and even "a defendant who <u>clearly</u> may pose a danger to society cannot be detained on that basis alone." (emphasis added); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988); *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986).

Moreover, District Courts in the Ninth Circuit have consistently followed the Ninth Circuit's holding in *Twine* and granted bail, including over the objection of the government, in cases where only danger to the community is alleged.  *See*, *e.g.*, *United States v. Djoko*, 2019 WL 4849537, at *2 (W.D. Wash. Oct. 1, 2019) (revoking a U.S. Magistrate Judge's order of detention for a defendant charged with cyberstalking, citing legislative history for its finding that "Congress limited the categories of cases eligible for pretrial detention to those listed in 18 U.S.C. § 3142(f)" and that it did so "[t]o ensure that pretrial detention would continue to be an exception[,]" and noting that "unless the government can show by a preponderance of the evidence that a case falls into one of those [§ 3142(f)] categories, a defendant cannot be detained pending trial"); *United States v. Gentry*, 455 F. Supp. 2d 1018, 1019 n.2 (D. Ariz. Oct. 5, 2006) ("Since none of the crimes charged in the indictment meet the statutory definition of 'crime of violence' . . . the Government does not argue as a basis for detention that Defendant is a danger to the community.").  *See also United States v. Qazi*, 2017 WL 2484102, at *11 (D. Nev. June 8, 2017) (noting that the defendant was "eligible for detention based on the offense charged" because "in 2006, Congress amended the Bail Reform Act to authorize detention of a defendant charged with any felony that involves possession or use of a firearm"); *United States v. Bell*, 2008 WL 11411709, at *2 (C.D. Cal. June 6, 2008) (noting that the court was authorized to detain the defendant as a danger to the community because the defendant was charged with an enumerated offense).

### D.    The Right to Due Process

The Ninth Circuit recently held in *United States v. Torres*, 2021 U.S. App. LEXIS 12147 *24; __ F.3d __ (Apr. 23, 2021):  "It is undisputed that at some point, pretrial detention can "become excessively prolonged, and therefore punitive," resulting in a due process violation. *United States v. Salerno*, 481 U.S. 739, 747 n.4, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).  A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose. *Salerno*, 481 U.S. at 747." [4]  *See also United States v. Myers*, 930 F.3d 1113, 1119 (9th Cir. 2019) (explaining that "delays approaching one year are presumptively prejudicial" for Sixth Amendment purposes) (citation omitted); *United States v. Gonzales Claudio*, 806 F.2d 334, 340-41 (2d Cir. 1986) (describing the ninety-day period as a "point of reference in our consideration of the constitutional limit on such detention"); *United States v. Briggs*, 697 F.3d 98, 103 (2d Cir. 2012) ("There is no bright-line limit on the length of detention that applies in all circumstances; but for every of set of circumstances, due process does impose some limit.").

## III.    ARGUMENT AND PROFFER

### A.    Consideration of the § 3142(g) Factors Supports Bail

A consideration of the § 3142(g) factors in light of the current facts and circumstances of this case demonstrates why Mr. Avenatti should be granted bail under

---

[4] The *Torres* court ultimately declined to find a due process violation due to the defendant's substance abuse, access to ammunition, significant criminal history including violent offenses, and a history of failing to appear, coupled with the defendant's confession, but warned: "The length of Torres's pretrial detention is significant under any metric and is deeply troubling . . . all parties agree that at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried."  *Id*. at *28 (citation omitted)(emphasis added).

the conditions requested.  Furthermore, an analysis of these factors[5] shows why the government <u>cannot</u> show by clear and convincing evidence that there is no set of conditions that will reasonably assure Mr. Avenatti's appearance and the safety of the community.  This is especially true because any "doubts regarding the propriety of release [must] be resolved in favor of the defendant."  *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992)(citing *Motamedi*, 767 F.2d at 1405-06).[6]  **Finally, the information below serves to adequately rebut any presumption that there are no set of conditions that will reasonably assure Mr. Avenatti's appearance and the safety of the community**.[7]

1. The Nature and Circumstances of the Offenses Charged

The government has charged Mr. Avenatti with substantial financial crimes in a 36 count Indictment.  The charges do not, however, involve any allegation of violence, a violation of section 1591, a Federal crime of terrorism, a minor victim, a controlled substance, a firearm, explosive, or destructive device.  *See* § 3142(g)(1).

2. The Findings by U.S. Probation and Pretrial Services

As the Court is aware, Mr. Avenatti has been on temporary release since April 24, 2020.  In May 2020, the U.S. Probation Office filed, in connection with the Nike-related case (No. 1:19-CR-00373-PGG (SDNY)), their detailed presentence report regarding Mr. Avenatti [Dkt. 295].  That report states the following concerning Mr. Avenatti:

---

[5] The weight of the evidence against the defendant (§ 3142(g)(2)) is the least important factor under the law.

[6] Undersigned counsel can submit any documentation in support of this proffer if requested to do so by the Court.  However, most, if not all, of the facts contained herein should be undisputed.

[7] As the Court is aware, any presumption in favor of detention is rebuttable.  Further, such a presumption may be rebutted if the defendant comes forward with a limited burden of production (not a burden of persuasion) showing that he does not pose a danger to the community or a risk of flight, or there are a set of conditions that will assure his appearance and the safety of the community.  Mr. Avenatti has met this burden through presentation of the facts set forth in this brief.

7

"[Mr. Avenatti] is not viewed as a flight risk or a danger to the community."  Despite having every opportunity to object to this finding or challenge it in the Nike case, the government has never done so.

Since his release to home confinement, Mr. Avenatti has taken the terms of his temporary release seriously and has been fully compliant with each of his approximate 30 bond conditions at all times.  These conditions are as strict as they are broad.  *See* April 10, 2020 Order [Dkt. 140], April 13, 2020 Order [Dkt. 142] and April 23, 2020 Order [Dkt. 151].

On May 14, 2021, the Pretrial Services Agency ("PSA") submitted a report to this Court and stated that "[t]hroughout the period of temporary release [13 months], the defendant has remained in compliance and has been cooperative with directives from Pretrial Services" (page 3)(emphasis added).  According to PSA, Mr. Avenatti "has shown a pattern of consistently compliant behavior" and PSA "has not received any new information that would suggest [Mr. Avenatti] is a flight risk or danger to the community."  *Id*. (emphasis added).  Further, in PSA's view, the government has not provided anything new that would suggest Mr. Avenatti is currently a flight risk or danger to the community.  *Id*.  All of this substantiates PSA's position, as stated in the report, that Mr. Avenatti should be granted permanent bond.  *Id*.  *See also* E-mail Correspondence with PSA attached as Exhibit B (reflecting PSA's input on the proposed bond terms before the Motion tto Reopen was filed).

In light of these two reports, the government cannot meet their burden and prove by clear and convincing evidence that Mr. Avenatti is presently a danger to the community or that no conditions can reasonably assure the safety of the community.  Nor can the government claim that the defendant has failed to rebut any presumption in favor of detention.  The information and findings in both reports lend support for Mr. Avenatti being granted bail.  *See* § 3142(g)(3)-(4).

### 3.     Mr. Avenatti's Ties to the Community and Character

Mr. Avenatti was born in 1971 in California - he is presently 50 years old.  He began his legal career with O'Melveny & Myers, LLP in Newport Beach, California over 21 years ago and has remained a resident of the Central District since the year 2000. He has three children (ages 18, 16, and 6), all of whom he is close with, were born in Newport Beach and live in Orange County.  He also has many friends in the Central District, owing to his longstanding ties to the community.

Mr. Avenatti's family's roots in the Central District date back to the early 1900s (around 1905), when his great grandparents on his father's side immigrated from Italy to Los Angeles.  His grandfather was born in Los Angeles and ultimately taught upholstery at a trade school in Los Angeles.  His grandmother was born in the Central District in La Verne.  Mr. Avenatti's father was born in Los Angeles in the 1930s and went to high school in Los Angeles.  His mother and father later met in Los Angeles in the 1960s and were married there.  He still has relatives from his father's side of the family who live in the Central District.

Mr. Avenatti graduated from high school in St. Louis, Missouri in 1989 and later became the first person in his family to graduate college, earning a Bachelor of Arts degree from the University of Pennsylvania.  He subsequently attended George Washington University Law School, where he was a member of the law review and graduated *order of the coif*.  Mr. Avenatti obtained both his undergraduate degree and his law degree by putting himself through school after his father was unexpectantly downsized in 1989 by a large corporation where he had worked for over 31 years.

In 1999, Mr. Avenatti clerked for the law firm O'Melveny & Myers, LLP in Los Angeles as a Summer Associate.  After he finished law school in December 1999 at the top of his class, he moved to Newport Beach to begin work for O'Melveny.  He took the February 2000 California State Bar Exam, passed on his first attempt, and was licensed as a California attorney in June 2000.

Mr. Avematti worked at O'Melveny as an attorney from 2000 to 2003 in the Newport Beach and Century City offices.  He then worked at Greene Broillet Panish & Wheeler, LLP in Santa Monica as an attorney from 2003 until 2006/2007.  He later formed the law firms Avenatti & Associates, APC and Eagan O'Malley & Avenatti, LLP (later known as Eagan Avenatti, LLP), both in the Central District, in 2006 and 2007, where he remained until approximately early 2019.

In 2007, Mr. Avenatti was recognized out of thousands of attorneys in California as one of the top 20 attorneys under the age of 40.  In 2009, Mr. Avenatti was voted by his peers in Orange County as the Trial Lawyer of the Year and was honored by the California Assembly for "his unwavering commitment to the principles of legal ethics and the preservation of the justice system."

In 2010, George Washington University Law School honored Mr. Avenatti with its prestigious "Recent Alumni Achievement Award."  Prior to this honor, the law school had placed Mr. Avenatti on its Board of Advisors and had also named an annual award to a graduating student after Mr. Avenatti – the "Michael J. Avenatti Award for Excellence in Pre-Trial and Trial Advocacy."

During his legal career, Mr. Avenatti successfully represented thousands of clients across the United States and obtained over $1 billion in verdicts and settlements on their behalf.  Equally important, he made valuable contributions to the community.

For instance, in the middle of a jury trial in 2014, Mr. Avenatti settled a class action he had brought against a publicly traded company on behalf of Jewish families whose loved ones' remains had been removed from plots in a Los Angeles cemetery and dumped in a mass grave, all in the name of profits.  Tragically, many of those remains belonged to individuals who had managed to survive the Holocaust and who had been freed from Nazi concentrations camps at the end of the Second World War.  After extensive work in the case, Mr. Avenatti procured a settlement for his clients valued at

approximately $85 million.  The case was featured on *60 Minutes* in 2012 in a story titled "Final Resting Place."

In April 2017, Mr. Avenatti obtained a $454 million jury verdict[8] in Federal District Court (Los Angeles) on behalf of doctors, nurses and first responders after they were sold fraudulent and defective personal protective equipment during the Ebola pandemic by one of the largest publicly traded companies in the world.  As a result of the verdict, defective personal protective equipment (PPE) was removed from the United States National Stockpile in 2017, ensuring the safety of hundreds of thousands healthcare workers in the future (i.e. during the current COVID19 pandemic).  *60 Minutes* featured the case and the health risks exposed by it in a story entitled "Strike-Through."  Mr. Avenatti's work in the case resulted in him receiving the national Public Justice Trial Lawyer of the Year Award in 2018, an annual award given to the attorney(s) in the nation who made the greatest public contribution to the public interest within the preceding year by trying or settling a precedent setting, socially significant case.

As the above demonstrates, Mr. Avenatti's ties to the community, character and background support him being granted bail.  *See* § 3142(g)(3)-(4).

### 4. Risk of Flight

In over two years, the government has never argued in any of Mr. Avenatti's three cases that he is a flight risk.  There is good reason for this.  First, Mr. Avenatti has deep ties to the community and the United States.  Second, Mr. Avenatti is well known, thus making his ability to flee virtually non-existent.  Third, Mr. Avenatti has never missed a single court appearance in any of his criminal matters.  Fourth, Mr. Avenatti lacks the resources, financial and otherwise, to flee prosecution.  Fifth, after Mr. Avenatti's intial appearance in New York City following his arrest on March 25, 2019, the government permitted Mr. Avenatti to retain his Italian passport, which they knew he had with him in

---

[8] The verdict was later reversed on appeal.

11

New York, until he was scheduled to surrender it in the Central District *days later*. During this intervening time period, Mr. Avenatti never attempted to flee prosecution or leave the United States.  Mr. Avenatti is not a flight risk, let alone a serious flight risk. This factor supports bail.  *See* § 3142(g)(3)-(4).

### 5.   Mr. Avenatti's Criminal History

Prior to being charged in this case in March 2019, Mr. Avenatti had never been charged with any crime, including as a juvenile.  He has never been charged with any crime of violence.  He was recently convicted in the Southern District of New York of non-violent offenses but was not remanded pending sentencing, which is scheduled for June 30.  He remains on bail in that case under the original conditions.  His post-trial motion for acquittal and new trial in that case has been pending since April 21, 2020 (over one year).  Mr. Avenatti's criminal history does not support a denial of bail.  *See* § 3142(g)(3).

### 6.   Mr. Avenatti's Record Concerning Court Appearances

As stated above, Mr. Avenatti has never missed a court appearance in any criminal case, this case included.  This is true despite the fact that there have been numerous appearances.  He has a perfect record of attendance, which supports bail.  *See* § 3142(g)(3).

### 7.   Mr. Avenatti's Lack of Financial Resources

This Court [Dkt. 253] and the Southern District of New York (the Hon. Jesse M. Furman presiding, Case No. 1:19-CR-00374-JMF (the "Daniels Case"), Dkt. 73], have found that Mr. Avenatti is indigent and therefore entitled to appointed counsel.  Both courts did so after extensive information was submitted establishing this fact.  Both courts have also received regular updates of Mr. Avenatti's financial condition.  In light of this, Mr. Avenatti can hardly remain the economic danger to the community that the government claimed at the January 2020 detention hearing.

The basis for the government's claim in January 2020 that Mr. Avenatti is an "economic danger to the community" hinged entirely on their claim that he takes steps to avoid paying his creditors by diverting and hiding assets and income. But there is no evidence that Mr. Avenatti has any income or meaningful assets, liquid or otherwise, to divert or hide. He has no income; he has no banking or financial accounts; he has no liquid assets to dissipate, move or transfer; and he has no means or opportunity to defraud any creditors. Nor has he for over a year.

Indeed, it is beyond dispute that Mr. Avenatti presently has no meaningful funds left. As a result, he does not have liquid assets to transfer or move anywhere and thus cannot "harm" individuals in the community as the government claimed at the January 2020 detention hearing, even if he desired to. The defense has requested repeatedly that that if the government has any evidence that Mr. Avenatti has any liquid assets greater than $1,000 to access or transfer, they immediately disclose it to the Court and the defense. They have disclosed nothing and their continued silence on the issue speaks volumes. Over the last 30 months (beginning no later than in October 2018), the assigned AUSAs in this case, the assigned AUSAs in New York, the DOJ, the Los Angeles and New York offices of the FBI, and the Criminal Division of the IRS have all scoured Mr. Avenatti's finances and banking transactions. They claim to have left no stone unturned and to have examined nearly all, if not all, of his financial transactions (personal and business) since at least early 2011 (the last ten years). Against this backdrop, any argument by the government that Mr. Avenatti's financial resources allow him to pose an economic threat to the community lacks merit.

Further, on August 28, 2020, the AUSAs in the Daniels Case admitted that they have no basis for challenging Mr. Avenatti's claims of indigency. [Dkt. 86 in Case No. 1:19-CR-00374-JMF, p. 1]. In other words, the government has acknowledged that despite their vast resources and investigation, they have no evidence of any significant funds or assets available for Mr. Avenatti to launder, move, structure, dissipate or

13

transfer to anyone, thus permitting him to harm other creditors or members of the community.

In addition, in connection with the Nike trial, the government repeatedly referenced Mr. Avenatti's alleged poor financial condition, lack of assets and income, deep indebtedness, and alleged inability to acquire any substantial money as evidence that Mr. Avenatti committed extortion and honest services fraud against Nike and his client.  In February 2020 they offered this evidence and argument before the jury over the repeated objection of the defense.  In fact, this evidence and argument served as one of the centerpieces of the prosecution, with the prosecution calling Mr. Avenatti's former Office Manager, Judy Regnier, to establish Mr. Avenatti's alleged desperate financial condition and lack of assets.  The record in the Nike Case is replete with references to the government's claims in that case before the judge and jury that Mr. Avenatti was deeply in debt, had negligible assets and no way of paying any expenses. *See*, *e.g.*, Nike Trial Transcript, February 11, 2020, pp. 2127:13-22; 2164-66.]

The government's claims in the Nike Case regarding Mr. Avenatti's financial condition are factual admissions, admissible against them.  *See*, *e.g.*, *Oscanyon v. Arms Co.*, 103 U.S. 261, 263 (1893); *United States v. Flores*, 679 F.2d 173, 177-78 (9th Cir. 1982).   Further, having prevailed - over the repeated objections of Mr. Avenatti both before and during trial in the *Nike* Case - and after having successfully argued to the jury that Mr. Avenatti was in a desperate financial position with no other way to generate income or pay his debts, the government is not permitted to now take an entirely inconsistent position in this case as it relates to bail and claim the exact opposite, namely that Mr. Avenatti had and has considerable wealth, assets and income to use to harm the community.  Mr. Avenatti's financial situation supports bail.  *See* § 3142(g)(3)-(4).

### 8.   Mr. Avenatti's Lack of Employment

Following Mr. Avenatti's February 2020 conviction in the Nike Case, the State Bar of California suspended Mr. Avenatti's law license as of May 4, 2020.  The State

14

Bar prominently states this fact on their website multiple times and informs consumers and members of the public that Mr. Avenatti is not permitted to practice law.  Further, Mr. Avenatti is not practicing law and has no clients.  He also has no ability to get clients.  Nor does he have any funds held in trust or even an attorney-client trust account or business bank account.  As a result, there is no risk to the community that Mr. Avenatti will continue to practice law and receive monies on behalf of clients.

Mr. Avenatti is currently unemployed with no access to any meaningful income, cash flow, or funds, thus making it nearly impossible, if not impossible, for him to structure, move, conceal or divert any monies or funds.  Mr. Avenatti presently relies entirely on friends and family to support him.  This information supports a grant of bail. *See* § 3142(g)(3)-(4).

> 9.    <u>Mr. Avenatti is Not Presently a Danger to the Community and Has Shown that Appropriate Release Conditions Exist</u>

As detailed above, both PSA and U.S. Probation have found (one year apart) that Mr. Avenatti is not considered a danger to the community or a flight risk.  Further, it is undisputed that he has no meaningful assets to hide from creditors nor does he have any liquid assets to divert.  His suspension from the practice of law is well known and prominently displayed on the State Bar website.  In addition, Mr. Avenatti's February 2020 conviction in the Nike Case received widespread press coverage across the country with nearly every story commenting on the significant prison time Mr. Avenatti could face.  The details were reported on NBC, CBS, ABC, CNN and Fox News, blasted across social media, and printed in countless newspapers and web articles.  As a result, Mr. Avenatti's ability to harm the community by "luring" or "duping" someone or an institution into doing business with him, or engaging in any significant financial transaction with him, is practically nonexistent.

Further, there is no evidence that Mr. Avenatti poses a physical threat to anyone. Finally, Mr. Avenatti has demonstrated over the last 13 months that even if he

remains a danger to the community (he is not), there is a set a conditions that will assure his appearance and the safety of the community. All of this information supports an Order allowing Mr. Avenatti to be palced on bail. *See* § 3142(g)(3)-(4).

10. Mr. Avenatti's Surety and His Ability to Post Significant Collateral

Mr. Avenatti's current surety is willing to remain and maintain his current collateral and guarantee if necessary for Mr. Avenatti to be granted bail. With the Court's approval, he previously signed a $1,000,000 personal guarantee supported by collateral in the form of a deed of trust on a piece of real property located in California, with equity well in excess of $500,000. This supports a finding that bail is appropriate. *See* § 3142(g)(3)-(4).

11. Mr. Avenatti's Third-Party Custodian

Mr. Avenatti's current custodian, Jay Manheimer, and others are willing to serve as a third-party custodian for Mr. Avenatti if necessary for Mr. Avenatti to be granted bail. This likewise supports a finding that bail is appropriate. *See* § 3142(g)(3)-(4).

12. Mr. Avenatti's Health and the Risks from Covid-19

After Mr. Avenatti's remand on January 15, 2020, the COVID-19 pandemic began sweeping across the nation and infiltrating America's prisons and jails, including pretrial facilities. The pandemic continues to pose a threat as of this filing. *See*, *e.g.*, Opposition to the Government's Motion to Terminate and Not Further Extend Defendant Michael John Avenatti's Temporary Release [Dkt. 271], pp. 21-25, Exhs. A-C; Declaration of F. Ramzi Asfour, M.D. (filed under seal) [Dkt. 280]; *Ex Parte* Application [Dkt. 420].[9] Even if he is vaccinated, Mr. Avenatti's health conditions render him especially susceptible to suffering death or serious, permanent injury, including permanent heart or lung damage, and/or diminished cognitive ability were he to be infected. *See id*. Mr. Avenatti's health condition weighs in favor of bail. *See* § 3142(g)(3).

---

[9] In the interest of not over-burdening the Court, the defense will not repeat the same facts and evidence set forth in the Opposition, the Declaration of Dr. Asfour and in the *Ex Parte* Application, but instead incorporates them herein by reference.

16

**B.    The Court Should Grant Bail Pursuant to *United States v. Twine***

As explained above, Mr. Avenatti is not charged in this case with any of the enumerated offenses listed in U.S.C. § 3142(f)(1)(A)-(E).  Further, § 3142(f)(2) does not apply because there is no evidence that he is a serious flight risk or will obstruct justice if granted bail.[10]  Accordingly, even if Mr. Avenatti is found to presently be a danger to the community (he is not), pursuant to the Ninth Circuit's holding in *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003) and the law in five other circuits, Mr. Avenatti should be granted bail.

**C.    Due Process Requires That Bail Be Granted**

Mr. Avenatti has been subject to the Court's January 15, 2020 detention order for nearly 16 months.  During that time period, the trial in this matter has been continued numerous times as a result of the COVID-19 pandemic.  None of these trial delays have resulted from any action or inaction on the part of Mr. Avenatti.  As a result, Mr. Avenatti's continued detention in this case under that Order violates his right to due process under the Fifth and Sixth Amendments to the United States Constitution.  *See United States v. Torres*, 2021 U.S. App. LEXIS 12147 *24; __ F.3d __ (Apr. 23, 2021); *United States v. Myers*, 930 F.3d 1113, 1119 (9th Cir. 2019) (explaining that "delays approaching one year are presumptively prejudicial" for Sixth Amendment purposes) (citation omitted); *United States v. Gonzales Claudio*, 806 F.2d 334, 340-41 (2d Cir. 1986) (describing the ninety-day period as a "point of reference in our consideration of the constitutional limit on such detention"); *United States v. Briggs*, 697 F.3d 98, 103 (2d Cir. 2012) ("There is no bright-line limit on the length of detention that applies in all

[10] As previously stated, in over two years, the government has never claimed in any of Mr. Avenatti's three criminal cases that he is a flight risk, let alone a "serious" flight risk.

17

circumstances; but for every of set of circumstances, due process does impose some limit.").[11]

###### D.   Bail Should Be Granted In Order to Allow Mr. Avenatti to Assist In His Defense

Mr. Avenatti was arrested in connection with this matter on March 25, 2019 and made his first appearance in the Central District on April 1, 2019.  On April 10, 2019 the government designated this case as complex. [Dkt. 18.]  To date, the government has produced to the defense well over 1.1 million pages of discovery and numerous electronic forensic images comprising thousands of additional documents.  This case is fact intensive and it is expected that the government will rely on countless documents at trial and that those documents will span a lengthy time period.

On April 7, 2021, the parties appeared at a status conference in this matter regarding a number of issues related to the trial.  During the status conference, the Court acknowledged the importance of counsel having access to Mr. Avenatti:

> With regard to the logistics concerning Mr. Avenatti, I've been holding off ruling on the government's motion to have him remanded. One of the factors in my mind is to the extent that Mr. Avenatti is readily available to Mr. Steward, particularly during the period of the COVID virus outbreaks at MDC, it made sense to allow him to have that access. I'm likely to continue to have the same view and not remand him prior to trial. I think I extended the date to the end of May, if I'm correct, May 31st. . . . I'll revisit it. As near as I can tell, there have not been any additional problems with regard to Mr. Avenatti's compliance since we visited the issue of his use of a computer with the ability to access the internet, but let's take a look at that

---

[11] The *Torres* court ultimately declined to find a due process violation due to the defendant's substance abuse, access to ammunition, significant criminal history including violent offenses, and a history of failing to appear, coupled with the defendant's confession, but warned: "The length of Torres's pretrial detention is significant under any metric and is deeply troubling . . . all parties agree that at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried." *Id*. at *28 (citation omitted).

at the end of May. I do think if he were out of custody, it would greatly
facilitate the defense's ability to prepare and present the defense case.

[Transcript, p. 6:2-20.]


      Undersigned counsel, who is older and has preexisting health conditions, presently
has another trial scheduled to begin on June 1, 2021 before the Honorable David Carter
(*United States v. Poon*, Case No. 19-CR-00162).  While that trial is presently scheduled
to last two weeks, it is unclear how long it will last due to the newly issued pandemic
protocols for jury trials in the Central District, which are expected to prolong and
complicate trials.  This makes access to Mr. Avenatti in preparation for trial even more
important.

      Regular and convenient access to Mr. Avenatti is critical in order to allow for the
proper preparation of Mr. Avenatti's defense in this complex case and presentation of the
defense.  Were Mr. Avenatti to be remanded, it would significantly interfere with Mr.
Avenatti's right to counsel and his ability to mount a defense in this document and fact
intensive case.  Accordingly, Mr. Avenatti should be granted bail.[12]

//
//
//
//
//
//

---

[12] According to the recent report submitted by PSA, the government "is amenable to the
defendant's temporary release being continued until commencement of the trial."  First,
this is an acknowledgement that reasonable conditions <u>do exist</u> allowing for bail.
Second, if Mr. Avenatti is permitted to remain out of BOP custody, it should extend until
disposition of this case.  Mr. Avenatti should not be remanded on the first day of trial as
the government seems to suggest; doing so would be incredibly disruptive and
prejudicial to the defense, not to mention punitive.

## IV.    **<u>CONCLUSION</u>**

For each of the reasons stated above, defendant respectfully requests that the Court grant Mr. Avenatti bail and impose the release conditions attached as Exhibit A.

Dated:  May 21, 2021                               Respectfully submitted,

<u>/s/ H. Dean Steward</u>
 H. DEAN STEWARD
 Attorney for Defendant
 MICHAEL JOHN AVENATTI

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT A</u>**

21

## *PROPOSED CONDITIONS OF BOND*

1. Mr. Avenatti to be placed on regular bond as opposed to temporary release.

2. Defendant shall maintain the current $1,000,000 bond, with at least $500,000 of the bond secured by the full deeding of real property or liquid funds deposited with the Clerk of the Court.

3. Defendant shall be subject to supervision as directed by Pretrial Services.

4. Defendant shall not leave the Central District of California without prior approval of pretrial services. Defendant shall adhere to a reasonable curfew to be determined by pretrial services.

5. Defendant shall participate in the Location Monitoring Program and abide by all requirements of the program, under the direction of Pretrial Services, which shall include a location monitoring bracelet. Defendant must pay all of the costs of the Location Monitoring Program based upon his ability to pay as determined by Pretrial Services and will be financially responsible for any lost or damaged equipment.

6. Defendant may possess, use and access digital devices that offer or allow internet access, but shall not access any financial or banking account websites. In order to determine compliance with this condition, defendant agrees to submit to a search of his person and/property by Pretrial Services. At the discretion of Pretrial Services, defendant shall allow internet monitoring software to be used on his devices and shall pay all of the costs associated with such software.

7. Defendant shall not open, either directly or indirectly, any new bank accounts, credit card accounts or other financial accounts without notifying and obtaining the prior approval of Pretrial Services.

8. Defendant shall not engage in any financial transactions exceeding $500, either directly or indirectly, without notifying and obtaining the prior approval of Pretrial Services.

9. Defendant shall not sell, transfer, or give away any asset valued at $500 or more, either directly or indirectly without notifying and obtaining prior approval of Pretrial Services.

10. Defendant shall provide to Pretrial Services every two weeks a report (or other documentation approved by Pretrial Services) detailing all of defendant's financial transactions, including any transaction under $500, during the prior two-week period.

11. Defendant shall avoid all contact (except in the presence of counsel), directly or indirectly, with any person who the government has identified as victim or potential witness in this case prosecution and investigation, except for Christine Avenatti Carlin and except as required for Defendant's participate in ongoing civil lawsuits where he has been named as

the Defendant. Defendant shall not engage in any substantive discussions with these parties regarding this prosecution and investigation (except in the presence of counsel).

**12.** Defendant shall comply with all court orders in this case and any orders and conditions of release in *United States v. Avenatti*, No. 1:19-CR-373-PGG (SDNY), and *United States v. Avenatti*, No. 1:19-CR-374-JMF (SDNY).

**13.** Defendant shall not apply for a passport or other travel document during the pendency of this case.

**14.** Defendant shall comply with the General Conditions of Release set forth in the Central District of California Release Order and Bond Form.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT B</u>**

22

From: **Shakira Davis** <Shakira_Davis@cacp.uscourts.gov>
Date: Wed, May 5, 2021, 11:54 PM
Subject: RE: Mr. Avenatti
To: deansteward7777_gmail.com <deansteward7777@gmail.com>

I have no objection to these proposed conditions.

---

**From:** Dean Steward <deansteward7777@gmail.com>
**Sent:** Wednesday, May 5, 2021 11:51 AM
**To:** Shakira Davis <Shakira_Davis@cacp.uscourts.gov>
**Subject:** Mr. Avenatti

**CAUTION - EXTERNAL:**

Ms. Davis-

Here are the revised conditions, changed to reflect your comments (ie. #6). Please let me know if these are acceptable, or give me a call with any comments or other suggestions. I'd be grateful if you could respond by email.

Thanks,

Dean

--



949-481-4900   www.deansteward.com

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

On Tue, May 4, 2021 at 1:45 PM Shakira Davis <Shakira_Davis@cacp.uscourts.gov> wrote:

Hello Mr. Steward,

Officer Gudino and I reviewed the proposed conditions and we do not have any objection to the proposed modification. The only addition I would make is that the deft be required to participate in monitoring software and pay all of the cost associated with this program.



**SHAKIRA DAVIS**
SPECIAL OFFENDER SPECIALIST
**UNITED STATES DISTRICT COURT**
**CALIFORNIA CENTRAL PRETRIAL SERVICES**
300 North Los Angeles Street
Los Angeles, CA 90012-3308
Office: (213) 894-8211  Mobile: (213) 247-9262  Fax: (213) 894-0231
Email: shakira_davis@cacp.uscourts.gov

**From:** Dean Steward <deansteward7777@gmail.com>
**Sent:** Tuesday, May 4, 2021 10:55 AM
**To:** Shakira Davis <Shakira_Davis@cacp.uscourts.gov>
**Subject:** Michael Avenatti

<mark>CAUTION - EXTERNAL:</mark>

Hi Ms. Davis-

Here's what we were thinking. I made the changes we talked about. If there are other changes, additions or problems, happy to chat about them.

cell for me: 714-296-7686

Thanks,

Dean

--



949-481-4900   www.deansteward.com

<mark>CAUTION - EXTERNAL EMAIL:</mark> This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

## **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.  I am not a party to the above-entitled action.  I have caused, on May 21, 2021, service of the:

DEFENDANT'S BRIEF AND PROFFER IN SUPPORT OF BAIL

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 21, 2021

/s/ H. Dean Steward
H. Dean Steward

23