TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2435
     Facsimile: (213) 894-6269
     Email:    Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 19-061-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT RELEVANT STATEMENTS BY DEFENDANT AND TO EXCLUDE DEFENDANT'S REMAINING STATEMENTS AS HEARSAY; DECLARATION OF ALEXANDER C.K. WYMAN, EXHIBITS A-K |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | Hearing Date: June 28, 2021<br>Hearing Time: 8:00 AM<br>Location:    Courtroom of the<br>            Hon. James V. Selna |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Alexander C.K. Wyman, hereby files its motion *in limine* to admit

relevant statements by defendant and to exclude remaining statements as inadmissible hearsay.

This motion is based upon the attached memorandum of points and authorities, the attached declaration of Alexander C.K. Wyman and accompanying exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 31, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


        /s/
BRETT A. SAGEL
ALEXANDER C.K. WYMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................3

      A.   November 7, 2014: Status Conference in Mr. Johnson's
           Case.....................................................4

      B.   July 25, 2018, and March 22, 2019: Defendant's
           Judgment Debtor Examinations in Federal Bankruptcy
           Proceedings..............................................5

      C.   June 12, 2017, and July 14, 2017: Defendant's Section
           341(a) Creditors Meetings in Federal Bankruptcy
           Proceedings..............................................6

      D.   January 30, 2019: Defendant's Judgment Debtor
           Examination in His Divorce Proceedings...................7

      E.   March 15, 2019: Defendant's Judgment Debtor
           Examination in Jason Frank Law PLC v. Michael Avenatti....7

      F.   The Government Provided Notice of Its Intent to
           Introduce These Statements to the Defense................8

III.  ARGUMENT......................................................8

      A.   Portions of Defendant's Testimony Are Admissible as
           Admissions of a Party-Opponent...........................8

      B.   The Excerpts the Government Has Identified Are Highly
           Relevant to the Issues in Dispute at Trial...............9

      C.   The Court Should Preclude Defendant from Offering
           Other Portions of His Statements as Inadmissible
           Hearsay.................................................13

IV.   CONCLUSION...................................................15

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                          <u>PAGE</u>

**Cases**

<u>Beech Aircraft Corp. v. Rainey</u>,
  488 U.S. 153 (1988) ........................................ 14, 15

<u>Tennessee v. Street</u>,
  471 U.S. 409 (1985) ............................................. 9

<u>United States v. Collicott</u>,
  92 F.3d 973 (9th Cir. 1996) ................................. 13, 14

<u>United States v. Gadson</u>,
  763 F.3d 1189 (9th Cir. 2014) .................................. 9

<u>United States v. Liera-Morales</u>,
  759 F.3d 1105 (9th Cir. 2014) ................................. 15

<u>United States v. Lopez-Figueroa</u>,
  316 F. App'x 548 (9th Cir. 2008) ........................... 13, 14

<u>United States v. Ortega</u>,
  203 F.3d 675 (9th Cir. 2000) ............................... 13, 14

<u>United States v. Vallejos</u>,
  742 F.3d 902 (9th Cir. 2014) .................................. 14

<u>United States v. Whitman</u>,
  771 F.2d 1348 (9th Cir. 1985) .................................. 9

<u>United States v. Williams</u>,
  604 F.2d 1102 (8th Cir. 1979) .................................. 9

**Statutes**

11 U.S.C. § 341(a) .............................................. 6

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant MICHAEL JOHN AVENATTI is charged with embezzling millions of dollars in settlement funds from his clients: Geoffrey Johnson, Alexis Gardner, Greg Barela, Michelle Phan, and Long Tran. The Court has also found admissible evidence related to defendant's alleged embezzlement of settlement funds belonging to clients he represented in litigation over the NFL Super Bowl.  (CR 371 at 9.) Witness testimony and documentary evidence will easily establish that defendant represented these individuals as their attorney, and that defendant received money on each of their behalves in attorney-client trust accounts defendant controlled.   The principal issues at trial will center on whether defendant unlawfully misappropriated these funds, whether defendant made materially false representations or omitted material facts from his clients, and whether he acted with intent to defraud.   Defendant's prior statements regarding these clients or matters or in connection with his representation of them will form some of the government's most important evidence in establishing defendant's intent to defraud.

Defendant has made statements relevant to the client embezzlement counts in at least the following proceedings, and the government intends to introduce the relevant excerpts from transcripts of these proceedings at trial:[1]

---

[1] Some of these proceedings were audio-recorded as well.  For each of those proceedings, the government will seek to introduce the excerpted recording -- and display the transcript as an aid for the jury -- but for ease of reference in this motion the government is submitting only the transcripts of these proceedings.

- A November 7, 2014, status conference in Mr. Johnson's litigation, in which defendant informed the Court that the parties had reached a tentative settlement and emphasized the need to have the settlement funds paid to Mr. Johnson as quickly as possible because Mr. Johnson was "a paraplegic and . . . in need of the funds."

- Two judgment debtor examinations on July 25, 2018, and March 22, 2019, in connection with the federal bankruptcy proceedings of Eagan Avenatti LLP ("EA LLP"), In re: Eagan Avenatti LLP, No. 8:17-bk-11961-CB (C.D. Cal.) ("EA LLP bankruptcy"), at which defendant made numerous relevant statements regarding the clients whose money he stole, such as claiming that the small payments he was periodically making to Mr. Johnson were "an advance on future settlement monies."

- Two Section 341(a) examinations on June 12, 2017, and July 14, 2017, in connection with the EA LLP bankruptcy, at which defendant discussed the ethical obligations he owed his clients and lied about not having more than one attorney-client trust account.

- A January 30, 2019, judgment debtor examination in connection with defendant's divorce proceedings with his second wife, at which he testified about his attorney-client trust accounts: "I'm not going to answer questions about where I hold my trust accounts because those funds don't belong to me."

- A March 15, 2019, judgment debtor examination in connection with Jason Frank Law PLC v. Michael John Avenatti, Case No.

2

BC706555, during which defendant made a variety of relevant statements, including that EA LLP was not making structured payments to Mr. Johnson and that Mr. Johnson had been paid all he was due.

The government has produced the transcripts of these proceedings in discovery and has indicated for the defense which portions of the transcripts the government intends to introduce during trial as statements of a party opponent under Federal Rule of Evidence 801(d)(2)(A), which the government has highlighted in the attached exhibits. (Declaration of Alexander C.K. Wyman ¶ 2, Ex. A.)

The government now seeks an order from the Court that the portions of these proceedings that the government seeks to admit are admissible at trial as statements of a party opponent, and that the remaining portions of these transcripts (and any other statements of defendant that he may seek to introduce) are inadmissible hearsay. For example, defendant's testimony in these proceedings includes numerous false, self-serving statements that are not admissible under Rule 802. To the extent defendant wishes to introduce his own statements at trial, defendant is free to take the stand and testify as to his explanations, but he cannot backdoor his defense through false exculpatory, hearsay statements he made in connection with his various legal proceedings prior to his indictment in this case.

## II. STATEMENT OF FACTS

The Indictment alleges that defendant executed a scheme to defraud his clients out of millions of dollars between January 2015 and March 2019 by, among other things, negotiating settlements on behalf of his clients, concealing the true nature of those settlements from his clients, causing the settlement funds to be

3

deposited into attorney-client trust accounts he controlled,
embezzling the client funds and misappropriating them for his own
personal use, and then lying to his clients to lull them into
believing their settlement funds were safe and to prevent them from
discovering his misappropriation.  (Indictment (CR 16) ¶¶ 6-7.)  The
five named clients in the Indictment are Geoffrey Johnson (Client 1),
Alexis Gardner (Client 2), Greg Barela (Client 3), Michelle Phan
(Client 4), and Long Tran (Client 5).

Defendant has participated in several legal proceedings during
which he made statements -- either under oath or to the court --
relevant to his alleged embezzlement of these (and other) clients'
settlement funds.  At each of these proceedings, a court reporter was
present and created a transcript of the proceedings, all of which
have been produced to the defense.

**A.    November 7, 2014: Status Conference in Mr. Johnson's Case**

First, on November 7, 2014, defendant participated as lead
counsel in a status conference in Mr. Johnson's lawsuit against the
County of Los Angeles in Johnson v. County of Los Angeles, CV 13-
4496-MMM (AJWx) (Dkt. 173).  (Ex. B.)  During the hearing, defendant
informed the court that the parties had "been in active settlement
discussions involving a retired judge, Louis Meisinger," and that
"the parties ha[d] reached a tentative settlement relating to all
material terms with the exception of one material term."  (Id. at
4:20-24.)  The one outstanding material term, defendant explained,
was "when the settlement dollars are to be paid to Mr. Johnson, who,
as the Court knows, is a paraplegic and is in need of the funds."
(Id. at 5:3-5.)

As defendant informed the court, "Mr. Johnson would like the moneys paid within 60 days, namely today or Monday so that he can utilize the money for his living expenses and other needs." (Id. at 5:17-19.) Defendant then requested that the Court issue an order to show cause to the County of Los Angeles to expedite the payment of settlement funds to Mr. Johnson, arguing: "I mean, for us to wait six months for even -- or perhaps, quote, longer, closed quote, for the board of supervisors to approve this and I don't know how much longer after that in order to actually get the settlement payment made to my client, who is a paraplegic, is not acceptable." (Id. at 8:11-15.)

**B.   July 25, 2018, and March 22, 2019: Defendant's Judgment Debtor Examinations in Federal Bankruptcy Proceedings**

Second, In March 2017, defendant consented to place his law firm, EA LLP, into Chapter 11 bankruptcy, and the case was eventually transferred to this District. Defendant testified under oath in two judgment debtor examinations in connection with the EA LLP bankruptcy, once on July 25, 2018, and again on March 22, 2019. (Exs. C, D.)

In his July 2018 examination, defendant admitted that Global Baristas is an entity that he controlled. (Ex. C at 94:9-16.) He also described his relationship with -- and how he owed money to -- his co-counsel Edward Ricci, to whom defendant sent a substantial portion of the settlement funds belonging to Mr. Barela. (Id. at 109:22-111:13.)

During his March 22, 2019, testimony, which took place only three days before his arrest in this case, defendant made numerous relevant statements, including about his representation of Mr. Johnson (Ex. D at 214:1-25, 215:14-16, 216:5-217:22, 218:5-24, 220:5-

25, 224:10-17, 232:2-233:6, 236:3-23, 237:17-239:10, 241:6-15), Mr. Barela (id. at 170:4-7, 175:9-12, 180:4-181:15, 186:8-189:21), Ms. Phan (id. at 242:12-19), and the NFL plaintiffs (id. at 141:23-142:7, 151:8-155:6).  At one point, for example, defendant was asked, "Mr. Avenatti, did you steal Mr. Johnson's money?" and he replied, "Absolutely not."  (Id. at 232:2-5.)  Immediately after defendant's testimony, as Mr. Johnson will testify and cell-site records for defendant's phone will confirm, defendant went to Mr. Johnson's home in Granada Hills that evening -- over four years after the County of Los Angeles paid Mr. Johnson's settlement in full -- and falsely told Mr. Johnson that the County of Los Angeles had finally approved the special needs trust for Mr. Johnson and that, consequently, Mr. Johnson would soon begin receiving the settlement payments from the County of Los Angeles.  Mr. Johnson will further testify that defendant returned to Mr. Johnson's house on each of the following two days, March 23 and March 24, 2019, and had Mr. Johnson sign documents that defendant claimed were related to the trust, as well as a "Client Testimonial" that defendant gave to Mr. Johnson that stated that defendant was "an exceptional, honest and ethical attorney."[2]

> **C.    June 12, 2017, and July 14, 2017: Defendant's Section 341(a) Creditors Meetings in Federal Bankruptcy Proceedings**

Third, in connection with the EA LLP bankruptcy, defendant testified under oath in creditors meetings held pursuant to 11 U.S.C.

---

[2] This document, which is attached as Exhibit E, is one of the only two documents that defendant has produced in reciprocal discovery.  The other one is titled "General Release; Settlement Agreement; and Acknowledgment of Accounting," and is signed by Mr. Johnson and dated March 23, 2019.  (Ex. F.)

§ 341(a) on June 12, 2017, and July 14, 2017.  (Exs. G, H.)
Defendant was questioned about and made numerous relevant statements
regarding his law firm's operations and his management of trust
accounts.  For example, defendant discussed at length his
understanding of the legal and ethical obligations imposed upon
lawyers with regard to their clients' funds, including stating,
"Under California law, the client is entitled to their monies
immediately, their portion of the monies."  (Ex. G at 24:22-24.)
Defendant also repeatedly denied having more than one attorney-client
trust account, even though the evidence will demonstrate he had
multiple, including one he opened at City National Bank only a month
before this testimony that he used to accept over $900,000 in
settlement funds on behalf of the NFL Super Bowl clients.  (Id. at
109:7-110:13, 178:22-25; Ex. H at 66:1-11.)

> **D.   January 30, 2019: Defendant's Judgment Debtor Examination
> in His Divorce Proceedings**

Next, on January 30, 2019, defendant testified under oath in a
proceeding related to his divorce from his second wife.  (Ex. I.)
Defendant made several statements during that examination that are
relevant to this case.  For example, when asked whether he held trust
accounts at any institution other than City National Bank, defendant
responded, "I'm not going to answer questions about where I hold my
trust accounts because those funds don't belong to me, so that's
privileged."  (Id. at 48:17-21.)

> **E.   March 15, 2019: Defendant's Judgment Debtor Examination in
> Jason Frank Law PLC v. Michael Avenatti**

One of defendant's creditors, Jason Frank Law PLC, filed a
lawsuit against defendant in Los Angeles Superior Court to collect

the money defendant owed the firm.  <u>Jason Frank Law PLC v. Michael</u> <u>John Avenatti</u>, Case No. BC706555.  In connection with that case, on March 15, 2019, defendant testified under oath in another judgment debtor examination.  (Ex. J.)  During that testimony, defendant made various relevant statements, such as that Alki Bakery and Dillanos Coffee Roasters (two of the entities defendant paid with client settlement funds) were a vendor for Global Baristas and a coffee roaster that supplied coffee for Global Baristas, respectively.  (<u>Id.</u> at 122:11-20, 123:23-124:15.)  Defendant also discussed his representation of Mr. Johnson, including claiming that Mr. Johnson had been paid all of the money he was owed by the firm "to the best of [defendant's] knowledge."  (<u>Id.</u> at 134:2-135:6.)

**F.    The Government Provided Notice of Its Intent to Introduce These Statements to the Defense**

The government has produced all of these transcripts in discovery.  On May 25, 2021, the government also identified for the defense the excerpts from these transcripts that the government intends to introduce at trial in order to solicit defendant's position on any issues that he may wish to raise related to the Rule of Completeness.  (Wyman Decl. ¶ 2.)  Defendant has informed the government that he opposes the government's motion.  (Ex. K.)

**III. ARGUMENT**

**A.    Portions of Defendant's Testimony Are Admissible as Admissions of a Party-Opponent**

The government intends to introduce as evidence in its case-in-chief at trial certain excerpts of these transcripts of defendant's testimony and statements at court proceedings.  If introduced by the government, these statements by defendant are not hearsay, but rather

8

admissions of a party-opponent that are admissible under Federal Rule of Evidence 801(d)(2)(A).  Further, the statements of the questioning attorneys and the court are not hearsay because they are admitted for context -- to help the jury understand defendant's statements -- and not for the truth of the matter asserted.  See United States v. Gadson, 763 F.3d 1189, 1212 (9th Cir. 2014) ("A witness making statements to provide clarification and context for other statements is not offering evidence for the truth of the matter asserted, and such testimony does not run afoul of any hearsay prohibition."); United States v. Whitman, 771 F.2d 1348, 1352 (9th Cir. 1985) (upholding admission of government informant's statements where informant's recorded statements were only offered "to show that they were made," and to put the statements in context, rather than for their truth); United States v. Williams, 604 F.2d 1102, 1108 (8th Cir. 1979) ("the tape-recorded conversation was not hearsay because it was admitted to provide context for [the defendant's] end of the conversation.").  The admission of non-hearsay statements generally does not violate the Confrontation Clause.  See Tennessee v. Street, 471 U.S. 409, 414 (1985) (noting that nonhearsay "raises no Confrontation Clause concerns").  Accordingly, the government may properly introduce portions of defendant's testimony and statements in its case-in-chief at trial.

**B.   The Excerpts the Government Has Identified Are Highly Relevant to the Issues in Dispute at Trial**

As is evident from the attached highlighted transcripts, the government currently intends to introduce the following excerpts of defendant's statements at trial:

9

| Exhibit | Page(s) and Lines |
|---------|-------------------|
| B | 4:6–6:4 |
| B | 8:5–9:4 |
| C | 5:4–6 |
| C | 94:9–16 |
| C | 109:22–111:13 |
| C | 113:4–8 |
| D | 6:1–12 |
| D | 88:25–89:14 |
| D | 141:23–142:7 |
| D | 151:8–12 |
| D | 152:1–12 |
| D | 152:19–153:4 |
| D | 153:17–155:6 |
| D | 170:4–7 |
| D | 175:9–12 |
| D | 180:4–181:15 |
| D | 186:8–187:22 |
| D | 188:3–189:21 |
| D | 214:1–25 |
| D | 215:14–16 |
| D | 216:5–217:22 |
| D | 218:5–24 |
| D | 220:5–25 |
| D | 224:10–17 |
| D | 225:24–226:12 |
| D | 232:2–12 |

| Exhibit | Page(s) and Lines |
|---------|-------------------|
| D | 232:16-233:6 |
| D | 236:3-23 |
| D | 237:17-239:10 |
| D | 241:6-15 |
| D | 242:12-19 |
| G | 1:23-2:15 |
| G | 9:23-10:6 |
| G | 15:10-16:3 |
| G | 17:9-18:5 |
| G | 20:25-21:9 |
| G | 24:22-24 |
| G | 109:7-110:13 |
| G | 174:6-175:5 |
| G | 178:6-25 |
| H | 2:21-25 |
| H | 66:1-11 |
| I | 5:1-19 |
| I | 33:3-24 |
| I | 48:17-49:4 |
| J | 4:1-5:8 |
| J | 122:11-20 |
| J | 123:23-124:15 |
| J | 130:20-131:3 |
| J | 132:10-12 |
| J | 134:2-135:6 |
| J | 137:1-3 |

| Exhibit | Page(s) and Lines |
|---------|-------------------|
| J | 137:15-25 |
| J | 159:11-22 |
| J | 169:2-4 |

Each of these excerpts is highly probative of material facts at issue in this trial.  For example, in the November 7, 2014, status conference (Ex. B), defendant made statements relevant to his alleged theft of Mr. Johnson's settlement funds and probative of defendant's intent to defraud.  The excerpts from defendant's July 25, 2018, examination (Ex. C) are relevant to his alleged theft of Mr. Barela's funds because they establish that defendant used Mr. Barela's funds to pay a lawyer (Edward Ricci) related to another case of defendant's.  Numerous statements from defendant's March 22, 2019, examination (Ex. D) are relevant to the charged client counts and probative of defendant's fraudulent intent, including his many answers concerning Mr. Johnson, which prompted defendant to drive to Mr. Johnson's house and have him sign a bogus testimonial about defendant's representation of him.  Excerpts from defendant's June 12, 2017, and July 14, 2017, Section 341(a) creditors meetings (Exs. G, H) are relevant both in providing background on defendant's business and establishing his control over that business and in demonstrating defendant's fraudulent intent through his lies about his attorney-client trust accounts.  Similarly, defendant's statements from his January 30, 2019, judgment debtor examination (Ex. I) establish that defendant understood that funds in his trust accounts (in his words) "don't belong to [him]."  Finally, many statements from defendant's March 15, 2019, judgment debtor

examination (Ex. J) establish that defendant spent the settlement funds belonging to his victim-clients on himself or his other businesses and establish his intent to defraud through his lies about the victim-clients.[3]

Because each of the excerpts is highly material to an anticipated issue in dispute at this trial on counts one through ten, the Court should permit the government to introduce these excerpts in its case-in-chief under Rule 801(d)(2)(A).

**C.   The Court Should Preclude Defendant from Offering Other Portions of His Statements as Inadmissible Hearsay**

Although the government may introduce defendant's statements in its case-in-chief, a defendant is not entitled to elicit his own prior statements under Rule 801(d)(2)(A).  See United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (holding that Federal Rule of Evidence 106 does not compel admission of otherwise inadmissible hearsay evidence); United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (non-self-inculpatory statements, even if made contemporaneously with other self-inculpatory statements, are inadmissible hearsay); United States v. Lopez-Figueroa, 316 F. App'x 548, 550 (9th Cir. 2008) (defendant could not introduce own statements redacted from confession by government).  As the Ninth Circuit has recognized, "it is often perfectly proper to admit segments . . . without including everything, and adverse parties are

---

[3] This is simply a brief summary of the relevance of the statements from the transcripts, and does not attempt to cover all of the statements.  If defendant objects to the relevance of any particular statement(s), the government will provide the Court further explanation as to why the Court should admit the statement(s) at that time.

not entitled to offer additional segments just because they are there and the proponent has not offered them." <u>Collicott</u>, 92 F.3d at 983.

On rare occasions, a defendant may introduce additional portions of a statement or recording under Rule 106 -- the Rule of Completeness. This Rule, however, applies only when the government has included a portion of a statement or recording and "misunderstanding or distortion can be averted only through presentation of another portion" of the statement or recording. <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 172 (1988). It is not a means by which a defendant may skirt the hearsay rules to introduce self-serving statements or otherwise cast himself in a more positive light. <u>See</u> <u>United States v. Vallejos</u>, 742 F.3d 902, 905 (9th Cir. 2014) (holding that district court "properly rejected [the defendant's] argument that the redacted portions should be admitted to show the jury the 'flavor of the interview,' to 'humanize' [the defendant], to prove his 'character,' and to convey to the jury the voluntariness of the statement"). Moreover, even if a portion of a recorded statement satisfied Rule 106, it still must fall within a recognized exception to the rule against hearsay. <u>See</u> <u>Ortega</u>, 203 F.3d at 682 ("Even if the rule of completeness did apply, exclusion of [the defendant's] exculpatory statements was proper because these statements would still have constituted inadmissible hearsay."); <u>Lopez-Figueroa</u>, 316 F. App'x at 549-50 ("[A]ny exculpatory statements by [the defendant] were hearsay and were therefore not admissible, notwithstanding Rule 106."). Accordingly, so long as the statement that the government seeks to introduce is "neither misleading nor taken out of context," defendant has no ground to introduce

additional portions of the same recording.  United States v. Liera-Morales, 759 F.3d 1105, 1111 (9th Cir. 2014).

At this time, the government anticipates introducing in its case-in-chief the limited above-referenced excerpts of the statements by defendant in his testimony and court proceedings.  To enable the Court to rule on any Rule of Completeness objections that defendant may raise in opposition to this motion, the government has attached the full transcripts of these proceedings, with the portions the government seeks to admit highlighted in yellow.

As is evident from the attached highlighted transcripts, none of the excerpts identified by the government requires admitting other portions of the proceedings in order to avoid "misunderstanding or distortion."  Beech Aircraft, 488 U.S. at 172.  As a result, the government seeks an order permitting the government to admit the proposed excerpts identified above without admitting any further statements by defendant during these proceedings.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court permit the government to introduce the above-referenced excerpts from defendant's transcribed prior statements and preclude defendant from introducing other excerpts not admitted by the government.