# EXHIBIT J

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2              COUNTY OF LOS ANGELES - CENTRAL DISTRICT

 3    DEPT 44   JUDGE:  EDWARD B. MORETON, JR.

 4      JASON FRANK LAW PLC,        )
        Professional law corporation, )
 5                                   )
                          Plaintiff  )
 6                                   )
            Vs.                      ) Case No: BC706555
 7                                   )
        MICHAEL J. AVENATTI,         )
 8      An individual,               )
                                     )
 9                        Defendant. )
        _____)

10

11

12

13              JUDGMENT DEBTOR EXAMINATION,

14      taken on behalf of the Applicant, at the Stanley Mosk

15      Courthouse, 111 North Hill Street, Los Angeles,

16      California, 90012, in Department 44, commencing at 11:57

17      a.m., Friday, March 15, 2019, before Winifred

18      McCray-Moody, C.S.R. No. 12747, (Morning Session), and

19      Ann Bonnette, C.S.R. No. 6108, (Afternoon Session).

20

21

22

23

24

25
```

**Exhibit J**

USAO_00059429
00059535

```
 1      APPEARANCES:

 2      For the Applicant:

 3      LAW OFFICES OF FRANK SIMS & STOLPER, LLP

 4      BY:  ANDREW D. STOPLER, ESQ.

 5      19800 MacArthur Boulevard

 6      Suite 855

 7      Irvine, CA 92612

 8      (949) 201-2400

 9      astolper@lawfss.com

10

11      For the Defendant:

12      LAW OFFICES OF SHULMAN HODGES & BASTIAN, LLP

13      BY:  RONALD S. HODGES, ESQ.

14      100 Spectrum Center Drive

15      Suite 600

16      Irvine, CA 92618

17      (949) 340-3400

18      rhodges@shbllp.com

19

20

21

22

23

24

25
```

**Exhibit J**

USAO_00059430
00059535

```
 1                    I N D E X

 2     WITNESS:           EXAMINATION        PAGE

 3     MICHAEL J. AVENATTI   BY MR. STOLPER    4, 6, 7, 9, 10

 4                                            13, 14, 15, 16

 5                                            26, 28, 29, 31

 6                                            35, 38, 44, 45

 7                                            46, 47, 48, 49

 8                                            50, 57, 58, 59

 9                                            60, 62, 64, 67,

10                                            68

11

12

13                   E X H I B I T S

14                    None.

15

16

17          INSTRUCTIONS NOT TO ANSWER

18               PAGE             LINE

19               6                9
                 9                4
20               10               11
                 15               8
21               16               4
                 18               1
22               19               8
                 22               25
23               46               22
                 47               1
24

25
```

**Exhibit J**

USAO_00059431
00059535

| | |
|---|---|
| 1 | LOS ANGELES, CALIFORNIA, FRIDAY, MARCH 15, 2019 |
| 2 | 11:19 A.M. |
| 3 | EXAMINATION |
| 4 | BY MR. STOLPER: |
| 5 | Q.     MR. AVANATTI, DO YOU UNDERSTAND YOU'RE UNDER |
| 6 | OATH? |
| 7 | A.     I'M SORRY, SIR? |
| 8 | Q.     DO YOU UNDERSTAND YOU'RE UNDER OATH? |
| 9 | A.     YES. |
| 10 | Q.     CAN YOU PLEASE STATE YOUR FULL NAME, PLEASE? |
| 11 | A.     MICHAEL JOHN AVANATTI. |
| 12 | Q.     WHAT IS YOUR CURRENT RESIDENTIAL ADDRESS? |
| 13 | A.     10000 SANTA MONICA BOULEVARD, NUMBER 2107, L.A., |
| 14 | 90067. |
| 15 | Q.     DO YOU OWN, OR DO YOU RENT? |
| 16 | A.     I RENT. |
| 17 | Q.     WHAT IS THE NAME THAT THE LEASE IS HELD IN? |
| 18 | A.     I THINK IT'S MY NAME, INDIVIDUAL. |
| 19 | Q.     WHAT'S THE TERM OF YOUR LEASE? |
| 20 | A.     I DON'T REMEMBER. |
| 21 | Q.     HOW LONG HAVE YOU LIVED THERE? |
| 22 | A.     AT THAT ADDRESS, ABOUT -- I THINK THREE MONTHS. |
| 23 | Q.     HOW LONG IN THAT BUILDING? |
| 24 | A.     I'VE HAD A UNIT IN THAT BUILDING SINCE MARCH OF |
| 25 | 2017. |

USAO_00059432
00059535

1    Q.    WHAT'S YOUR CURRENT RENT?

2    A.    IT'S AROUND $11,000 A MONTH.

3    Q.    ARE YOU CURRENT ON YOUR RENT?

4    A.    I THINK SO.

5    Q.    FROM WHAT BANK ACCOUNT DO YOU MAKE YOUR RENT

6    PAYMENTS?

7    A.    IT DEPENDS, BUT GENERALLY, FROM AN ACCOUNT AT

8    CITY NATIONAL BANK.

9    Q.    AND IS THAT A PERSONAL ACCOUNT, OR BUSINESS

10   ACCOUNT?

11   A.    I THINK IT'S A PERSONAL ACCOUNT.

12   Q.    DO YOU HAVE ANY OTHER RESIDENTIAL ADDRESSES?

13   A.    NO.

14   Q.    WHAT IS YOUR CURRENT BUSINESS ADDRESS?

15   A.    1904 SUNSET BOULEVARD, FOURTH FLOOR, L.A.,

16   90026.

17   Q.    AND ARE YOU PERSONALLY THE LEASEE ON THE SUNSET

18   BOULEVARD PROPERTY?

19   A.    NO.

20   Q.    WHO IS?

21   A.    THE LEASEE IS THE X-LAW GROUP.

22   Q.    WHAT IS YOUR RELATIONSHIP WITH THE X-LAW GROUP?

23   A.    I SUBLEASE SPACE FROM X-LAW GROUP.  WELL, I

24   DON'T INDIVIDUALLY.

25   Q.    WHO DOES?

**Exhibit J**

USAO_00059433
00059535

```
 1      A.      EAGAN AVENATTI.

 2      Q.      IS THERE ANY OTHER ENTITY THAT YOU OF -- STRIKE

 3      THAT.

 4              IS THERE ANY OTHER ENTITY THAT YOU'RE AFFILIATED

 5      WITH THAT SUBLEASE WITH THE X-LAW GROUP?

 6              MR. HODGES:  RELEVANCY 352, AS TO THE ASSET

 7      LIABILITY TO A THIRD PARTY.

 8              DO NOT ANSWER THAT QUESTION, SIR.

 9      BY MR. STOLPER:

10      Q.      WHAT OTHER ENTITIES ARE YOU AFFILIATED WITH?

11      A.      I'M AFFILIATED WITH ALL KINDS OF ENTITIES.

12      Q.      OKAY.  WELL, WHAT OTHER ENTITIES DO YOU HAVE A

13      DIRECT INTEREST IN?

14      A.      EAGAN AVENATTI, LLC.

15      Q.      LET'S GO ONE AT A TIME.

16      A.      WAIT A MINUTE.  YOU ASKED ME A QUESTION.  DO YOU

17      WANT ME TO ANSWER YOUR QUESTION, OR DO YOU WANT ME TO

18      STRIKE THAT QUESTION?

19      Q.      WELL, I WILL ACTUALLY.

20              WHAT'S YOUR ORIGIN OF EXISTENCE, AT AVENATTI,

21      LLC?

22      A.      WELL, THAT'S NOT AN EASY QUESTION TO ANSWER, BUT

23      IN LIGHT OF THE APPOINTMENT OF THE RECEIVER AS WELL AS

24      THE ORDERS ASSOCIATED WITH MY DIVORCE PROCEEDING.  SO I

25      CAN'T ANSWER THAT QUESTION.  LIKELY, A HUNDRED PERCENT,
```

Exhibit J

USAO_00059434

00059535

1    BUT I DON'T KNOW IF TECHNICALLY THAT'S TRUE.

2    Q.    AND DO YOU HOLD WHATEVER INTERESTS IN EAGAN

3    AVENATTI DIRECTLY, OR DO YOU HOLD THOSE INTERESTS

4    INDIVIDUALLY, OR DO YOU HOLD THEM INDIRECTLY?

5    A.    I HOLD THEM THROUGH AVENATTI AND ASSOCIATES.

6    Q.    DO YOU HOLD ANY INTERESTS IN EAGAN AVENATTI

7    INDIVIDUALLY?

8    A.    WHAT DO YOU MEAN BY "INTERESTS?"

9    Q.    DO YOU HAVE ANY PARTNERSHIP INTEREST IN EAGAN

10    AVENATTI INDIVIDUALLY?

11    A.    NO.  I DON'T THINK I HAVE A PARTNERSHIP

12    INDIVIDUALLY.

13    Q.    DO YOU HAVE ANY EQUITY INTEREST IN EAGAN

14    AVENATTI INDIVIDUALLY?

15    A.    I DON'T KNOW WHAT YOU MEAN BY THAT.

16    Q.    WHAT DON'T YOU UNDERSTAND BY THE TERM, "EQUITY?"

17          MR. HODGES:  THAT'S ARGUMENTIVE.  HE SAYS HE

18    DOESN'T UNDERSTAND THE QUESTION.  REPHRASE IT.

19    BY MR. STOLPER:

20    Q.    WHAT DON'T YOU UNDERSTAND ABOUT THE TERM

21    "EQUITY?"

22    A.    MY UNDERSTANDING IS THAT THE EQUITY, WHATEVER

23    EQUITY INTEREST I MAY HAVE IN EAGAN AVENATTI, WOULD BE

24    HELD THROUGH AVENATTI AND ASSOCIATES.  WHAT I'M

25    UNDERSTANDING ABOUT YOUR PHRASE -- WHAT DO YOU MEAN BY

USAO_00059435
00059535

1      "EQUITY?"

2      Q.      WHAT'S YOUR INTEREST IN AVENATTI AND ASSOCIATES?

3      A.      WELL, ANOTHER DIFFICULT QUESTION TO ANSWER

4      BECAUSE OF THE TURNOVER ORDERS AND OTHER ORDERS

5      ASSOCIATED WITH MY DIVORCE PROCEEDING, BUT PRIOR TO THAT

6      PROCEEDING, IT WAS A HUNDRED PERCENT, BUT I DON'T KNOW

7      IF THAT'S TRUE ANYMORE.

8      Q.      AND YOU OWE -- WHATEVER INTERESTS YOU HAD.  DO

9      YOU HAVE ANY INTEREST THAT YOU'VE HAD OR HAVE OWED

10     AVENATTI AND ASSOCIATES?  WERE THOSE HELD DIRECTLY BY

11     YOU OR INDIRECTLY BY ANOTHER ENTITY?

12     A.      I BELIEVE THEY WERE HELD DIRECTLY BY ME.

13     Q.      WHAT OTHER LLC'S, LLP'S, CORPORATIONS OR

14     BUSINESSES DO YOU OWN DIRECTLY THAT YOU HAVE A DIRECT

15     INTEREST IN?

16     A.      DOPPIO, INC.

17     Q.      WHAT'S YOUR INTEREST IN DOPPIO, INC?

18     A.      A HUNDRED PERCENT.

19     Q.      DO YOU OWN THE INTEREST IN DOPPIO, INC.,

20     DIRECTLY OR INDIRECTLY?

21     A.      DIRECTLY.

22     Q.      AND DOES DOPPIO, INC. OWN ANY COMPANY'S LLC'S,

23     LLP'S, OR OTHER ENTITIES?

24             MR. HODGES:  I'M SORRY.  I DIDN'T HEAR YOU.  ARE

25     YOU ASKING WHAT ASSETS DOPPIO HAS?

**Exhibit J**

USAO_00059436

00059535

1          MR. STOLPER:  THAT HE HOLDS.  YES.

2          MR. HODGES:  I'M GOING TO INSTRUCT HIM NOT TO

3    ANSWER THAT.  THAT'S PERTAINING TO THE PRIVACY OF

4    DOPPIO, INC.  THIS IS NOT A JUDGMENT DEBTOR.

5    BY MR. STOLPER:

6    Q.     YOU'RE THE HUNDRED PERCENT OWNER OF DOPPIO, INC?

7    A.     I THINK THAT'S CORRECT.

8          MR. STOLPER:  DO YOU WANT TO GO WITH THAT?

9          MR. HODGES:  ABSOLUTELY.

10          MR. STOLPER:  WE CAN ASK THE JUDGE TO COME IN.

11          MR. HODGES:  THAT'S FINE.

12    BY MR. STOLPER:

13    Q.     WHAT OTHER INTEREST OR OTHER ENTITIES DO YOU OWN

14    A DIRECT OR INDIRECT INTEREST IN?

15    A.     WELL, GLOBAL BARISTAS IS LLC, BUT THAT'S OWNED

16    BY DOPPIO, INC., AS I RECALL.

17    Q.     OKAY.  SO ARE THERE ANY OTHER ENTITIES THAT ARE

18    OWNED BY DOPPIO, INC. THAT YOU'RE AWARE OF?

19    A.     WELL, I'M --

20          MR. HODGES:  SAME INSTRUCTION.  YOU'VE ANSWERED.

21    YOU'VE SAID ENOUGH, BUT YOU CAN ANSWER, IF YOU WANT.

22          MR. STOLPER:  HE SAID YOU CAN ANSWER.

23          THE WITNESS:  (NO AUDIBLE RESPONSE.)

24          MR. HODGES:  HE ALREADY DID.  HE SAID, 'NO.'

25    BY MR. STOLPER:

**Exhibit J**

USAO_00059437

00059535

JUDGMENT DEBTOR EXAMINATION, MARCH 15, 2019

```
 1       Q.      THERE'S NO OTHER ENTITIES THAT ARE AT DOPPIO,

 2    INC., HOLD AN INTEREST, OTHER THAN GLOBAL BARISTAS, LLC?

 3            MR. HODGES:  YES OR NO, MR. AVENATTI?

 4            THE WITNESS:  I DON'T BELIEVE THERE ARE ANY.

 5    BY MR. STOLPER:

 6       Q.      AND WHAT INTEREST DOES GLOBAL -- EXCUSE ME.

 7    WHAT INTEREST DOES DOPPIO OWN IN GLOBAL BARISTAS, LLC?

 8            MR. HODGES:  THAT PERTAINS TO THE RIGHTS OF A

 9    THIRD PARTY.

10            YOU'RE INSTRUCTED NOT TO ANSWER THAT QUESTION.

11    BY MR. STOLPER:

12       Q.      ARE YOU GOING TO FOLLOW YOUR ATTORNEY'S

13    INSTRUCTIONS?

14       A.      ALWAYS.

15       Q.      DO YOU CONTROL GLOBAL BARISTAS?

16            MR. HODGES:  OBJECTION TO THE TERM "CONTROL,"

17    LEADS TO CONCLUSION.

18            THE WITNESS:  I DON'T CONTROL GLOBAL BARISTAS.

19    BY MR. STOLPER:

20       Q.      HAVE YOU EVER CONTROLLED GLOBAL BARISTAS AS AN

21    LLC?

22       A.      I THINK LEGALLY AND TECHNICALLY, THAT ANSWER

23    WOULD BE NO.

24       Q.      HAVE YOU EVER HAD A MANAGEMENT ROLE AT GLOBAL

25    BARISTAS, LLC?
```

**Exhibit J**

USAO_00059438
00059535

```
1    A.      YES.

2    Q.      WHAT WAS THAT ROLE?

3    A.      AT SOME POINT IN TIME I SERVED AS THE CEO, AND

4    LATER, AS GENERAL COUNSEL OF THE COMPANY.

5    Q.      AND ARE YOU THE ONE RESPONSIBLE FOR SELLING

6    GLOBAL BARISTAS, LLC?

7    A.      I DON'T UNDERSTAND THE QUESTION.

8    Q.      I'M SORRY.  I READ IN THE PAPER THAT YOU SOLD

9    GLOBAL BARISTAS, LLC, FOR $29,000,000.  IS THAT TRUE?

10   A.      AGAIN, I NEVER HAD AN EQUITY INTEREST IN GLOBAL

11   BARISTAS, SO I DON'T KNOW WHAT YOU'RE GETTING AT.

12   Q.      OKAY.  I GUESS MY QUESTION IS, TO YOUR

13   KNOWLEDGE, HAS GLOBAL BARISTAS, LLC BEEN SOLD?

14   A.      YES.

15   Q.      TO WHOM WAS IT SOLD?

16   A.      THAT'S CONFIDENTIAL.  I'M NOT GOING TO ANSWER

17   THAT QUESTION.

18   Q.      DID YOU RECEIVE ANY MONEY FROM THE SALE OF

19   GLOBAL BARISTAS?

20   A.      NO.

21   Q.      DID YOUR ENTITY THAT YOU EITHER DIRECTLY OR

22   INDIRECTLY CONTROLLED RECEIVE ANY MONEY FROM THE SALE OF

23   GLOBAL BARISTAS?

24   A.      NO.

25   Q.      WHEN WAS THE SALE OF GLOBAL BARISTAS?
```

**Exhibit J**

USAO_00059439

00059535

```
 1    A.      I DON'T REMEMBER.  I THINK IT WAS A COUPLE OF

 2    YEARS AGO.  TWO TO THREE YEARS AGO.  I DON'T REMEMBER

 3    EXACTLY.

 4    Q.      WHAT WAS THE ENTITY THAT THE GLOBAL BARISTAS WAS

 5    SOLD TO?

 6    A.      YEAH.  YOU JUST ASKED ME THAT, AND I TOLD YOU, I

 7    WASN'T GOING TO ANSWER IT, BECAUSE IT WAS CONFIDENTIAL.

 8    Q.      IS THERE A CONFIDENTIALITY AGREEMENT BETWEEN

 9    GLOBAL BARISTAS AND THE ENTITIES?

10    A.      YES.

11    Q.      WHO WERE THE SIGNATORIES TO THAT CONFIDENTIALITY

12    AGREEMENT?

13    A.      I'M NOT GOING TO ANSWER THAT QUESTION.  IT HAS

14    NOTHING TO DO WITH --

15    Q.      WELL --

16    A.      YOU'VE GOT TO LET ME FINISH.  IT HAS NOTHING TO

17    DO WITH MY CURRENT ASSETS AND MY ABILITY TO --

18    Q.      -- ARE YOU ONE OF THE SIGNATORIES TO THE OF THE

19    SETTLEMENT FOR SALE OF THE GLOBAL BARISTAS, LLC?

20    A.      I DON'T REMEMBER.

21    Q.      WAS THERE ANOTHER CEO OF GLOBAL BARISTAS AFTER

22    YOU WHO COULD HAVE BEEN THE SIGNATORY FOR SALE OF GLOBAL

23    BARISTAS?

24            MR. HODGES:  I'M SORRY.  MAY I HAVE THAT

25    QUESTION READ BACK?
```

**Exhibit J**

USAO_00059440

00059535

```
 1            THE REPORTER:  THAT ONE, THERE?

 2            MR. HODGES:  YES, PLEASE.

 3                 (LAST QUESTION READ BACK.)

 4            MR. HODGES:  THANK YOU.

 5            THE WITNESS:  I DON'T REMEMBER.

 6      BY MR. STOLPER:

 7      Q.    WAS THERE EVER A CEO OF GLOBAL BARISTAS WHO WAS

 8      AFTER YOU, WHO REPLACED YOU?

 9      A.    I DON'T KNOW.

10      Q.    YOU DON'T KNOW WHO THE CEO WAS AFTER YOU?

11      A.    ARE YOU ARGUING WITH ME?  YOU ASKED ME A

12      QUESTION.  I ANSWERED THE QUESTION.

13      Q.    SO YOUR TESTIMONY SITTING HERE TODAY, IS THAT

14      YOU HAVE NO UNDERSTANDING OR NOT -- LET ME ASK THIS

15      QUESTION.

16            DO YOU HAVE ANY UNDERSTANDING AS TO WHETHER OR

17      NOT THERE WAS A SUBSEQUENT CEO OF GLOBAL BARISTAS AFTER

18      YOU WERE NO LONGER CEO OF GLOBAL BARISTAS?

19      A.    THERE WAS NOT ANOTHER CEO.

20      Q.    SO YOU DO REMEMBER?

21            MR. HODGES:  IT'S ARGUMENTIVE.  HE SAID HE DID

22      NOT REMEMBER WHO.  HE DIDN'T SAY WHETHER THERE WAS.

23      YOU'RE ASKING A DIFFICULT QUESTION, COUNSEL.  NOW,

24      YOU'RE ARGUING.

25      BY MR. STOLPER:
```

**Exhibit J**

USAO_00059441

00059535

```
 1      Q.      WHAT OTHER ENTITIES DO YOU OWN A DIRECT OR

 2      INDIRECT INTEREST IN?

 3              MR. HODGES:  YOU CAN ANSWER AS TO DIRECT

 4      OWNERSHIP OF AVENATTI.

 5      BY MR. STOLPER:

 6      Q.      IT'S -- MINE IS MORE BROAD.  IT'S DIRECT OR

 7      INDIRECT.  DO YOU WANT TO TESTIFY WHAT YOUR OWNERSHIP

 8      IS?  WE CAN DO IT THAT WAY.

 9              THE WITNESS:  I HAD AN INTEREST IN TERIAN

10      SYSTEMS, BUT PURSUANT TO THE ORDER OF THE FAMILY COURT,

11      THAT'S BEEN TURNED OVER TO MY SOON-TO BE EX-WIFE.  I HAD

12      AN INTEREST IN PASSPORT 420, LLC, THEY HELD THROUGH

13      AVENATTI AND ASSOCIATES, AND THAT'S BEEN TURNED OVER TO

14      MY EX-WIFE.  SO TECHNICALLY, I DON'T HAVE THAT INTEREST

15      ANYMORE EITHER, TERIAN OR PASSPORT 420.

16      Q.      ARE THERE ANY OTHER INTERESTS?

17      A.      FRANKLY, I DON'T KNOW IF I STILL HAVE THE

18      INTEREST IN AVENATTI AND ASSOCIATES APC, EITHER.  YOU'D

19      HAVE TO ASK MY DIVORCE LAWYER.

20      Q.      SO, AVENATTI AND ASSOCIATES, WE'VE ALREADY

21      TALKED ABOUT.  WHAT ABOUT GB AUTO SPORTS; DO YOU HAVE A

22      DIRECT OR INDIRECT INTEREST IN GB AUTO SPORTS?

23      A.      THAT'S A DEFUNCTIVE ENTITY.

24      Q.      WHEN DID IT BECOME DEFUNCTIVE?

25      A.      I DON'T KNOW.  IT WAS SOME TIME AGO, BUT I NEVER
```

**Exhibit J**

USAO_00059442
00059535

```
 1    HAD A DIRECT OWNERSHIP INTEREST IN GB AUTO SPORTS.

 2    Q.      DID AVENATTI AND ASSOCIATES, OR EAGAN AVENATTI,

 3    HAVE AN INTEREST IN GB AUTO SPORTS?

 4            MR. HODGES:  INSTRUCT NOT TO ANSWER HIM AS TO

 5    THE ASSETS HELD BY THIRD PARTIES THAT ARE NOT AT

 6    INTEREST --

 7            MR. STOLPER:  BOTH THIRD PARTIES ARE A HUNDRED

 8    PERCENT CONTROLLED.

 9    BY MR. STOLPER:

10    Q.      DO YOU HAVE A MANAGEMENT ROLE IN GB AUTO SPORTS?

11    A.      YES.

12    Q.      WHAT WAS YOUR ROLE?

13    A.      I THINK I WAS MANAGER.

14    Q.      DID YOU EVER RECEIVE ANY COMPENSATION FOR YOUR

15    MANAGEMENT AT GB AUTO SPORTS?

16    A.      I'M SURE I DID, BUT IT'S BEEN A VERY LONG TIME

17    AGO.

18    Q.      WAS THAT COMPENSATION PAID DIRECTLY TO YOU, OR

19    WAS IT PAID TO THE ENTITY YOU DIRECTLY CONTROLLED?

20    A.      I DON'T REMEMBER.  GB AUTO SPORTS DOES NOT HAVE

21    ANY BUSINESS DEALING IN A VERY LONG TIME; YEARS.

22    Q.      WHAT WAS THE BUSINESS OF GB AUTO SPORTS?

23    A.      AUTO RACING AND SPONSORSHIP, I BELIEVE.

24    Q.      WHO WERE THE OTHER OWNERS OF GB AUTO SPORTS?

25            MR. HODGES:  ADVICE -- EXCUSE ME.  YOU'RE
```

Exhibit J

USAO_00059443
00059535

```
 1       INSTRUCTED NOT TO ANSWER AS TO OWNERSHIP BY THIRD

 2       PARTIES, MR. AVENATTI.  IT'S THEIR RIGHT TO PRIVACY.

 3       COUNSEL CAN MAKE AN OFFER OF PROOF THAT THERE'S A

 4       JUDGMENT AGAINST ANY OF THOSE, PERHAPS THAT'S FINE.

 5            MR. STOLPER:  IF WE CAN HAVE A JUDGE REVIEW

 6       IT --

 7            MR. HODGES:  TERRIFIC.

 8            MR. STOLPER:  THANK YOU.

 9       BY MR. STOLPER:

10       Q.   DO YOU HAVE ANY UNDERSTANDING TO ASSERT

11       CONFIDENTIALITY ON BEHALF OF THE ANY OF THE OWNERS OF GB

12       AUTO SPORTS?

13       A.   I THINK THAT'S A LEGAL QUESTION.  I'M GOING TO

14       LEAVE IT UP TO MY ATTORNEY.

15       Q.   WELL, ARE YOU COUNSEL FOR ANY OF THEM?

16       A.   SIR, I'M GOING TO LEAVE THAT UP TO MY ATTORNEY.

17       I DON'T KNOW.  I HAVEN'T THOUGHT THROUGH THAT ISSUE.

18       Q.   WHAT OTHER ENTITIES DO YOU HAVE A DIRECT OR

19       INDIRECT INTEREST IN?

20            (PAUSE IN PROCEEDINGS, WHILE JUDGE IS SEATED.)

21            THE CLERK:  DEPARTMENT 44, COMES TO ORDER.

22            THE COURT:  OKAY.  GO AHEAD.  YOU HAVE ME ON THE

23       SPEAKER?

24            THE CLERK:  YES.

25            THE COURT:  OKAY.  SO I'VE JOINED THE JUDGMENT
```

**Exhibit J**

USAO_00059444
00059535

```
1    EXAM PROCEEDING IN PROGRESS HERE IN THE COURTROOM.  AND

2    MR. AVENATTI IS ON THE STAND, AND COUNSEL HAS GIVEN

3    THEIR APPEARANCES EARLIER, I ASSUME, FOR THE RECORD.  IS

4    THAT CORRECT?

5           MR. STOLPER:  ACTUALLY, WE HAVEN'T, YOUR HONOR.

6           THE COURT:  WHY DON'T YOU GIVE YOUR APPEARANCES

7    NOW, SINCE WE HAVE THE REPORTER HERE NOW.  WE DIDN'T

8    HAVE THE REPORTER HERE PREVIOUSLY.

9           MR. STOLPER:  ANDREW STOLPER ON BEHALF OF

10   JUDGMENT DEBTOR.

11          MR. HODGES:  RON HODGES ON BEHALF OF MR.

12   AVENATTI.

13          MR. FRANK:  JASON FRANK ON BEHALF OF JASON FRANK

14   LAW, PLC.

15          THE COURT:  OKAY.  WHAT CAN I HELP YOU WITH?

16          MR. STOLPER:  YOUR HONOR, WE'VE BEEN ASKING

17   QUESTIONS, IF MR. AVENATTI OWNS AN ENTITY.  FOR EXAMPLE,

18   HE OWNS A HUNDRED PERCENT OF ENTITY A, WHICH IN TURN

19   OWNS A HUNDRED PERCENT OF A SUBSEQUENT ENTITY.  WHEN I

20   TRY TO ASK ABOUT EITHER THE OWNERSHIP OF THE SUBSEQUENT

21   ENTITIES, THE ASSETS OF THE SUBSEQUENT ENTITIES, THE

22   OBJECTION IS -- COUNSEL MAKES AN OBJECTION INSTRUCTING

23   THE WITNESS NOT TO ANSWER.  I'M ALSO ASKING WHETHER OR

24   NOT THERE ARE OTHER ENTITIES --

25          THE COURT:  HE RAISES THE OBJECTION ON WHAT
```

**Exhibit J**

USAO_00059445
00059535

1   GROUND?

2           MR. STOLPER:  THE PRIVACY OF THE THIRD.  I'VE

3   ALSO ASKED QUESTIONS LIKE WHETHER OR NOT OTHER ENTITIES

4   ARE CO-OWNERS WITH MR. AVENATTI, EITHER DIRECTLY OR

5   INDIRECTLY, AND WE FACE SIMILAR OBJECTIONS.  AND AGAIN,

6   THE BASIS OF THE OBJECTION IS MR. AVENATTI IS NOT GOING

7   TO ANSWER QUESTIONS CONCERNING THE PRIVACY OF THIRD

8   PARTIES --

9           MR. HODGES:  THE ASSETS OF THIRD PARTIES.

10          MR. STOLPER:  SORRY.  THE ASSETS OF THIRD

11  PARTIES.  FINALLY, YOUR HONOR, THERE'S A SEPARATE ISSUE

12  TO BE TAKEN UP IN TURN.  MR. AVENATTI SOLD AN ASSET OFF.

13  I ASKED HIM HOW MUCH HE SOLD THE ASSET FOR AND HE

14  WOULDN'T ANSWER THAT QUESTION.

15          THE WITNESS:  THAT'S NOT TRUE.  I'M SORRY, YOUR

16  HONOR.  THAT WAS INAPPROPRIATE.  I APOLOGIZE.

17          MR. STOLPER:  OKAY.  I ALSO ASKED TO WHOM DID

18  YOU SELL THE ASSETS TO?  BECAUSE OBVIOUSLY, I WANT TO

19  TEST WHATEVER THE ANSWERS ARE, AND HE DECLINED TO ANSWER

20  THAT AS WELL.

21          MR. HODGES:  BECAUSE HE SAID HE'S SUBJECT TO A

22  CONFIDENTIALITY AGREEMENT AS TO THE TESTIMONY.

23          THE COURT:  GO AHEAD.  YOU HAD ONE MORE?

24          MR. STOLPER:  JUST ONE MORE.  THEN I ASKED HIM

25  WHO'S THE SIGNATORY OF THE CONFIDENTIALITY AGREEMENT, IF

**Exhibit J**

USAO_00059446
00059535

```
 1    HE'S THE SIGNATORY.  HE SAID HE DIDN'T KNOW.

 2         MR. HODGES:  HE DIDN'T REMEMBER.

 3         MR. STOLPER:  SO, YOU KNOW, TO USE AN OLD TRIAL

 4    LAWYER'S EXPRESSION, BETWEEN COUNSEL'S INSTRUCTIONS NOT

 5    TO ANSWER AND MR. AVENATTI'S, FRANKLY EVASION, IT'S JUST

 6    LIKE PINNING JELLY TO A WALL, AT THIS POINT.

 7         THE COURT:  OKAY.  SETTING ASIDE THAT LAST

 8    CHARACTERIZATION, OTHER THAN WHAT YOU'VE OBJECTED TO

 9    ALREADY, DO YOU HAVE ANYTHING YOU WANT TO SAY ABOUT

10    THAT?

11         MR. HODGES:  WE INSTRUCTED THE LAST PART, NO.

12    THE FIRST PART --

13         THE COURT:  HE ACTUALLY DESCRIBED THE KINDS OF

14    QUESTIONS YOU WERE TALKING ABOUT, AND YOUR OBJECTIONS.

15         MR. HODGES:  YES, SIR.

16         THE COURT:  OKAY.  ALL RIGHT.  SO MY RULING IS

17    GOING TO BE TO OVERRULE YOUR OBJECTIONS ON ALL OF THOSE.

18         DO YOU WISH TO BE HEARD.

19         MR. HODGES:  I DO, YOUR HONOR.

20         THE COURT:  ALL RIGHT.

21         MR. HODGES:  PARTICULARLY WITH RESPECT TO THE

22    THIRD PARTIES THIRD PARTIES DISCOVERY IS APPROPRIATE

23    PURSUANT TO THE CODE AND CONTENTS OF THE JUDGMENT DEBTOR

24    EXAM.  SUBJECT TO COUNSEL MAKING A SHOWING THAT THIRD

25    PARTIES, EITHER, THOSE OF MR. AVENATTI, OWED A CERTAIN
```

USAO_00059447
00059535

```
 1    AMOUNT, OR HOLDS AN ASSET ON HIS BEHALF.  THAT'S THE

 2    ONLY WAY THAT A JUDGMENT DEBTOR IS ENTITLED TO GET THIRD

 3    PARTY DISCOVERY CONTENTS OF A JUDGMENT DEBTOR.  YOU

 4    CANNOT GO THROUGH THE BACK DOOR TO GET CONFIDENTIAL

 5    PRIVATE FINANCIAL INFORMATION, ASSETS OF LIABILITY BY A

 6    THIRD PARTY, BY ARGUING THAT THE JUDGMENT DEBTOR HAS A

 7    FINANCIAL AND OWNERSHIP IN IT.

 8         SPEAKING EXTREME HYPOTHETICAL, MR. AVENATTI OWNS

 9    STOCK IN GENERAL MOTORS.  COUNSEL IS NOT ENTITLED TO

10    GENERAL MOTORS' FINANCIAL STATEMENTS, SINCE IT'S OUTSIDE

11    THE PUBLIC SIGHT, OF COURSE, TO KNOW WHAT ASSETS GENERAL

12    MOTORS HAS, BECAUSE MR. AVENATTI HAS AN INTEREST IN IT.

13    THERE'S NO DIFFERENCE.

14         THESE MUST BE RECOGNIZED AS SEPARATE ENTITIES

15    THAT HAVE SEPARATE, PROTECTIVE RIGHTS, AND THE CODE

16    PROVIDES THE MECHANISM BY WHICH THEY CAN GET THAT

17    INFORMATION.  IT'S NOT THROUGH MR. AVENATTI.  TODAY,

18    IT'S THEIR ABILITY TO FIND OUT WHAT MR. AVENATTI OWNS,

19    OR WHAT HE OWES.

20         THE COURT:  COUNSEL?

21         MR. STOLPER:  YOUR HONOR, BEYOND THIRD PARTY

22    ENTITIES, HAS BEEN ASKING ABOUT THE ASSETS OF ENTITIES

23    THAT ARE DIRECTLY OR INDIRECTLY CONTROLLED BY MR.

24    AVENATTI, AND THEN WHEN MR. AVENATTI SELLS OFF ONE OF

25    THOSE ENTITIES --
```

**Exhibit J**

USAO_00059448
00059535

```
 1            THE COURT:  LET ME INTERRUPT YOU FOR A SECOND.

 2    YOU'RE ASKING ABOUT -- YOU STARTED OUT BY TALKING ABOUT

 3    A SITUATION WHERE THE ENTITY HE SAYS HE OWNS, AND THAT

 4    ENTITY HE OWNS OWNS ANOTHER ENTITY.

 5            MR. STOLPER:  CORRECT.

 6            THE COURT:  OKAY.  ARE WE TALKING ABOUT -- DOES

 7    THAT SUM UP THE KINDS OF ENTITIES YOU'RE ASKING ABOUT,

 8    OR ARE THERE OTHERS?

 9            MR. STOLPER:  THERE ARE YOUR HONOR, BUT I'M

10    CONCERNED THAT IT BECOMES LAYERED.  THOSE ENTITIES THAT

11    HE OWNS, WHICH MAY IN TURN OWN ANOTHER ENTITY.  AT WHICH

12    POINT, THE WITNESS WILL SAY, WELL, YOU KNOW, I CAN'T

13    TALK ABOUT THAT BECAUSE IT'S ANOTHER ENTITY.  HE'S

14    ATTEMPTING TO HIDE BEHIND ENTITIES THAT HE FULLY

15    CONTROLLED TO THAT CORPORATE FORUM, TO DENY ANY

16    CONNECTION WITH THEM, AND THAT IS NOT APPROPRIATE.

17            THE COURT:  IN OTHER WORDS, YOU'RE ASKING THAT

18    IT'S WHAT YOU BELIEVE, HE FULLY CONTROLS.

19            MR. STOLPER:  I JUST WANT TO KNOW WHAT THEY ARE

20    SO I CAN ASK THAT QUESTION.

21            THE COURT:  OKAY.  I JUST WANT TO GET THE LAY OF

22    THE LAND HERE.  AND -- GIVE ME A SPECIFIC EXAMPLE.

23            MR. STOLPER:  SURE, YOUR HONOR.  I ASKED HIM

24    ABOUT -- I ASKED HIM ABOUT AN ENTITY CALLED "DOPPIO."  I

25    SAID, "HOW MUCH OF DOPPIO DO YOU OWN?"  "A HUNDRED
```

**Exhibit J**

USAO_00059449

00059535

```
 1    PERCENT."  "WHAT OTHER ENTITIES DOES DOPPIO OWN?"  HIS

 2    LAWYER DIRECTED HIM NOT TO ANSWER THAT QUESTION.

 3    EVENTUALLY, THE WITNESS CAME BACK AND SAID, "OKAY.

 4    WELL, DOPPIO OWNS A HUNDRED PERCENT OF AN ENTITY CALLED

 5    GLOBAL BARISTAS, LLC."

 6            THE COURT:  DON'T JUMP IN.

 7            THE WITNESS:  -- WITH MY LAWYER, YOUR HONOR.

 8            THE COURT:  YOU KNOW WHAT?  IF YOU WANT TO GET A

 9    CHANCE TO CONFER WITH YOUR LAWYER, UNDERSTAND, THAT YOU

10    CAN'T JUMP IN LIKE THAT.

11            THE WITNESS:  I UNDERSTAND.  THANK YOU.

12            MR. STOLPER:  DOPPIO INSURANCE GLOBAL, VERSUS,

13    LLC, WHICH IS ANOTHER ENTITY THAT I ASKED ABOUT.  "DOES

14    DOPPIO, INC. OWN ALL OF THE GLOBAL BARISTAS?"  I THOUGHT

15    THE ANSWER WAS "YES."  THEN I ASKED --

16            THE COURT:  WAIT A MINUTE.  YOU THOUGHT THE

17    ANSWER WAS 'YES?'  WHAT WAS THE ANSWER?

18            MR. STOLPER:  I THINK THE ANSWER WAS "YES," YOUR

19    HONOR.  I'D HAVE TO GO BACK AND LOOK.

20            THE COURT:  YOU THINK, YOU RECALL THAT?

21            MR. STOLPER:  YES, SIR.  SO THEN I LEARNED THAT

22    DOPPIO BARISTAS HAD BEEN SOLD OFF.  SO NOW I'M

23    INTERESTED IN CHASING THAT MONEY, BECAUSE THE MONEY MAY

24    FLOW BACK EVENTUALLY TO MR. AVENATTI.  SO I SAID, "WAS

25    IT SOLD OFF?"
```

**Exhibit J**

USAO_00059450
00059535

| | |
|---|---|
| 1 | THE COURT: YOU SAY YOU LEARNED THEY WERE SOLD |
| 2 | OFF? HE TESTIFIED THAT THEY HAD BEEN SOLD OFF? |
| 3 | MR. STOLPER: CORRECT, YOUR HONOR. |
| 4 | THE COURT: OKAY. |
| 5 | MR. STOLPER: SO I'M TRYING TO FIGURE OUT TO |
| 6 | WHOM WERE THOSE ENTITIES SOLD TO AND FOR HOW MUCH. SHUT |
| 7 | DOWN. |
| 8 | THE COURT: OKAY. SO ON THAT SPECIFIC EXAMPLE, |
| 9 | I WILL OVERRULE THE EXAM, AND THE WITNESS WILL BE |
| 10 | ORDERED TO ANSWER. IN ANY SITUATION LIKE THAT THE |
| 11 | RULING WOULD BE THE SAME. IN OTHER WORDS, I BELIEVE |
| 12 | THAT THE JUDGEMENT DEBTOR'S COUNSEL IS ENTITLED TO |
| 13 | FOLLOW THE CHAIN OF FINANCIAL DEALINGS OF MR. AVENATTI |
| 14 | AND HIS ENTITIES. IN EVERYTHING, THERE IS A |
| 15 | REASONABLENESS, IN THIS KIND OF THING, YOU KNOW. |
| 16 | OBVIOUSLY, IF HE SAID WHATEVER THE NAME OF THAT |
| 17 | CORPORATION WAS, THEY OWNED STOCK IN GENERAL MOTORS, OR |
| 18 | GENERAL MOTORS OWNED IT, WELL, THAT'S NOT GOING TO BE |
| 19 | REASONABLE, TO HAVE A SERIES OF QUESTIONS WHERE, YOU |
| 20 | KNOW, HE'S ASKED ABOUT THE MILEAGE OF A CHEVY, OR |
| 21 | WHATEVER. BUT I'M GOING TO OVERRULE THE OBJECTION DUE |
| 22 | TO THE EXAMPLE THAT WAS GIVEN. |
| 23 | MR. HODGES: YOUR HONOR, UNLESS THE PROCESS HAS |
| 24 | BEEN REDUCED TO SOME CONTRACT TECHNICALITY HERE, WE |
| 25 | CAN'T DISREGARD THE SUBJECT -- |

```
 1              THE COURT:  DON'T BECOME CONTEMPTUOUS, COUNSEL.
 2              MR. HODGES:  I DON'T MEAN IT, IN THAT REGARD.
 3    I'M REFERRING TO THE RIGHTS OF THESE THIRD PARTIES.
 4    THERE IS A SPECIFIC STATUTORY SCHEME, TO ALLOW COUNSEL
 5    TO DETERMINE WHAT ASSETS THE THIRD PARTIES MAY HAVE.
 6    BUT THE ONLY WAY THEY DO THAT IS BY COUNSEL MAKING A
 7    SHOWING, UNDER OATH, ON THE FORUM THAT SAYS THAT ENTITY
 8    OWES MR. AVENATTI MONEY, OR HOLDS THE ASSETS ON HIS
 9    BEHALF.  THAT'S WHAT THE STATUTE SAID.  SO I'M NOT SURE
10    WHY THE OBJECTION IS BEING OVERRULED WHEN THE LAW
11    SPECIFICALLY SAYS PURSUANT TO CODE, THEY DON'T GET THAT
12    INFORMATION.  IN FACT, THEY DON'T EVEN GET TO ASK THE
13    THIRD PARTY THAT INFORMATION UNLESS THEY MAKE THAT SHOW.
14              SO THE QUESTION, IN MY OPINION, SHOULD BE THE
15    FOUNDATIONAL ISSUES OF, "DOES THIS ENTITY OWE YOU MONEY;
16    YES, OR NO?"  IF IT'S "YES," THEN THEY CAN GET INTO IT.
17    IF, OF COURSE, THE ANSWER IS "NO," THEY DON'T GET INTO
18    GOING TO A FISHING EXPEDITION OF THE ASSETS OF THIRD
19    PARTIES.
20              THE COURT:  WELL, I DON'T SEE IT AS A FISHING
21    EXPEDITION OF THE ASSETS OF THIRD PARTIES.  I SEE IT AS
22    A -- YOU CAN CALL IT A FISHING EXPEDITION OF MR.
23    AVENATTI'S ASSETS.  THE JUDGMENT CREDITOR IS NOT
24    REQUIRED TO EXEMPT MR. AVENATTI'S CHARACTERIZATION --
25    ALTHOUGH I HAVEN'T EVEN HEARD THAT HE WAS GIVEN ANY
```

```
 1    CHARACTERIZATION.  CHARACTERIZATION, AS TO THE ASSETS,

 2    THERE'S A GOOD FAITH REASON TO ASSOCIATE WITH MR.

 3    AVENATTI, AND I'VE HEARD THE EXAMPLE THAT I WAS GIVEN

 4    AND THE GENERAL DESCRIPTION THAT WAS GIVEN, TELLS ME

 5    THAT THERE IS A GOOD-FAITH BASIS AND REASON FOR HIM TO

 6    ASK THOSE QUESTIONS.

 7         YOU KNOW, THE LAW TALKS ABOUT JUDGMENT DEBTORS

 8    LEAVING NO STONE UNTURNED IN SEEKING TO ENFORCE A

 9    JUDGMENT.  AND THAT DOESN'T MEAN THERE'S NO LIMITS ON

10    WHAT THEY CAN ASK, BUT IT DOES MEAN THEY CAN HAVE A

11    BROAD SCOPE IN THE SENSE OF GROUNDS THAT I HEAR ARE

12    ARTICULATED FOR A PARTICULAR ANSWER, RIGHT, FOR THIRD

13    PARTIES.  I DON'T KNOW HOW TO INTERVENE IN THIS

14    SITUATION, TO JUSTIFY A DEFENDANT, OR OBJECTION, OR THE

15    WITNESS' REFUSAL TO ANSWER.  THE SAME THING WITH A

16    CONFIDENTIALITY AGREEMENT.  YOU KNOW, THE FACT THAT HE

17    ENTERED INTO SOME AGREEMENT WITH SOME OTHER PERSON, HE'S

18    HERE TESTIFYING PURSUANT TO AN ORDER FROM THE COURT.

19    AND SO HE HAS TO ANSWER THESE QUESTIONS.

20         MR. HODGES:  THANKS, YOUR HONOR.  I NEED A

21    CLARIFICATION TO THAT.

22         ARE YOU SUGGESTING THAT HE WOULD BE ORDERED TO

23    VIOLATE THE CONFIDENTIALITY OF A CONTRACT?

24         THE COURT:  WHAT I'M SAYING IS THAT IS NOT

25    SUFFICIENT GROUNDS FOR A SINGLE ANSWER TO WHATEVER
```

USAO_00059453
00059535

```
1    CONFIDENTIALITY.  HE'S ORDERED TO ANSWER QUESTIONS, AND

2    THAT'S NOT A SUFFICIENT BASIS FOR OBJECTION.  OKAY?

3              MR. HODGES:  YES, YOUR HONOR.

4              THE COURT:  ALL RIGHT.  ANYTHING ELSE BEFORE I

5    LEAVE THAT YOU'D LIKE ME TO LISTEN TO?

6              MR. STOLPER:  NO, YOUR HONOR.  THANK YOU.

7              MR. HODGES:  THANK YOU, YOUR HONOR.

8              MR. FRANK:  THANK YOU, YOUR HONOR.

9              THE COURT:  OKAY.

10                  (THE JUDGE EXITS.)

11   BY MR. STOLPER:

12   Q.    MR. AVENATTI, WHO DID YOU SELL GLOBAL BARISTAS

13   TO?

14   A.    I DON'T RECALL.

15   Q.    YOU DON'T REMEMBER WHO YOU SOLD THOSE TO?

16             MR. HODGES:  ARGUMENTATIVE.  ASKED AND ANSWERED.

17   BY MR. STOLPER:

18   Q.    HOW MUCH DID YOU SELL IT FOR?

19   A.    I DON'T REMEMBER THE EXACT AMOUNT, SIR.  TO BE

20   CLEAR, I DIDN'T SELL ANYTHING, BECAUSE I DIDN'T OWN IT.

21   Q.    HOW MUCH WAS GLOBAL BARISTAS SOLD FOR?

22   A.    I DON'T REMEMBER THE EXACT AMOUNT.

23   Q.    APPROXIMATELY HOW MUCH?

24   A.    IT WAS TENS OF MILLIONS OF DOLLARS.  I DIDN'T

25   GET ANY MONEY.
```

**Exhibit J**

USAO_00059454
00059535

1    Q.    IT WAS TENS OF MILLIONS OF DOLLARS.  WHO

2    RECEIVED THAT TENS OF MILLIONS OF DOLLARS FOR THE SALE

3    OF GLOBAL BARISTAS?  WHERE DID THAT MONEY GO?

4    A.    I THINK THERE WAS DEBT SERVICE ON THE COMPANY,

5    AS I RECALL, TRADE PAYABLES.  IT'S NO -- THIS HAPPENED A

6    NUMBER OF YEARS AGO.  THERE'S NO MONEY LEFT IN THAT.

7    Q.    DID YOU NEGOTIATE THE SALE OF GLOBAL BARISTAS TO

8    A THIRD PARTY?

9    A.    NO.

10   Q.    WHO DID?

11   A.    I DON'T REMEMBER SPECIFICALLY.

12   Q.    IN GENERAL, WHO COULD IT HAVE BEEN?

13   A.    WHO IT COULD HAVE BEEN.  I DON'T KNOW WHO IT

14   COULD HAVE BEEN.

15   Q.    WELL, YOU WERE THE CEO OF GLOBAL BARISTAS, SO

16   THIS IS THE SALE OF YOUR COMPANY.  YOU DON'T KNOW WHO

17   NEGOTIATED THE SALE OF YOUR COMPANY?

18   A.    SIR, DO YOU WANT TO ARGUE WITH ME?

19   Q.    I WANT YOU TO ANSWER MY QUESTIONS.

20   A.    SIR, I DID ANSWER THE QUESTIONS.  THERE'S NO

21   MONEY LEFT FROM THE SALE AMOUNT.  I NEVER GOT ANY MONEY

22   FROM THE SALE.

23   Q.    THAT'S NOT MY QUESTION.

24   A.    BUT THAT'S WHAT YOU SHOULD BE FOCUSED ON.

25   Q.    I APPRECIATE THAT.  THANK YOU.

**Exhibit J**

USAO_00059455
00059535

```
 1            MY QUESTION IS AS THE CEO OF GLOBAL BARISTAS,

 2    RESPONSIBLE FOR SELLING THE COMPANY OFF FOR TENS OF

 3    MILLIONS OF DOLLARS, YOU DON'T KNOW WHO IS RESPONSIBLE

 4    OR WHO YOU JUST PAID IN A NEGOTIATION FOR THAT

 5    TRANSACTION?

 6    A.      COUNSEL, IT WAS AN EARNOUT.  IT WAS NOT A CASH

 7    SALE WHERE SOMEBODY WIRED MONEY, OR WROTE A CHECK FOR

 8    TWENTY-NINE MILLION DOLLARS.  THE AMOUNT OF CASH THAT

 9    CHANGED HANDS WAS EXTREMELY LIMITED AND WILL NEVER BE

10    PAID BECAUSE THE COMPANY SUBSEQUENTLY HAS NOT DONE WELL.

11    Q.      HOW LONG WAS YOUR EARNOUT?

12    A.      I'M SORRY?

13    Q.      HOW LONG WAS YOUR EARNOUT?

14    A.      I DON'T REMEMBER.  IT WAS A NUMBER OF YEARS.  IT

15    WAS, LIKE, FIVE YEARS AGO.

16    Q.      OKAY.  APPROXIMATELY WHEN WAS THE SALE; WAS IT

17    LESS THAN FIVE YEARS AGO?

18    A.      YOU'VE ASKED ME THAT A NUMBER OF TIMES.  I DON'T

19    RECALL EXACTLY.

20    Q.      MY QUESTION IS, WAS IT FIVE YEARS AGO, OR MORE

21    THAN FIVE YEARS AGO?

22            MR. HODGES:  UNFOUNDED AND ARGUMENTATIVE.

23            THE WITNESS:  IT WAS LESS THAN FIVE YEARS AGO.

24    BY MR. STOLPER:

25    Q.      OKAY.  SO THE EARNOUT IS STILL IN EFFECT?
```

**Exhibit J**

USAO_00059456
00059535

1    A.      TECHNICALLY, YEAH, BUT THE COMPANY IS DEFUNCT.

2    Q.      SO THERE'S NO EARNOUT.  THERE'S NO MORE MONEY

3    THAT'S GOING TO COME FROM THE EARNOUT?

4    A.      THERE WAS NEVER ANY MONEY COMING FROM THE

5    EARNOUT.

6    Q.      OKAY.  SO --

7    A.      THERE'S AN EARNOUT PROVISION THAT PROVIDED THAT

8    IF THE COMPANY MET CERTAIN TARGETS, INCLUDING

9    INTERNATIONAL TARGETS, THAT MONEY WOULD BE RECEIVED.

10   NONE OF THOSE TARGETS WERE MET, SO NO ADDITIONAL WAS

11   RECEIVED.

12   Q.      HOW MUCH OF THE ORIGINAL CASH RECEIVED, IF THERE

13   WAS NO ADDITIONAL CASH RECEIVED?

14   A.      I THINK IT WAS LESS THAN A MILLION DOLLARS.  IT

15   MAY HAVE EVEN BEEN LESS THAN HALF A MILLION DOLLARS.

16   Q.      OKAY.  YOU JUST TESTIFIED IT WAS A TWENTY-EIGHT

17   OR TWENTY-NINE MILLION DOLLAR SALE A LONG TIME AGO --

18   A.      NO.  I NEVER SAID THAT.

19          MR. HODGES:  HE NEVER SAID THAT FIGURE.  IN

20   FACT, HE SAID HE DIDN'T REMEMBER.

21   BY MR. STOLPER:

22   Q.      OKAY.  HAVE YOU EVER TOLD THE PRESS THAT YOU

23   SOLD THE COMPANY FOR TWENTY-EIGHT MILLION DOLLARS A LONG

24   TIME AGO?

25   A.      I DON'T KNOW.  I'VE TOLD THE PRESS ALL KINDS OF

**Exhibit J**

USAO_00059457
00059535

| 1 | THINGS, IN THE LAST YEAR. |
| 2 | Q.    SO, YOU COULD HAVE TOLD THEM THAT? |
| 3 | A.    I COULD HAVE TOLD ANYBODY ANYTHING AT ANY POINT |
| 4 | IN TIME WITHIN REASON.  I MEAN, I DON'T UNDERSTAND WHAT |
| 5 | KIND OF QUESTION THAT IS. |
| 6 | Q.    MY QUESTION IS, WHAT DID GLOBAL BARISTAS SELL |
| 7 | FOR TWENTY-EIGHT MILLION DOLLARS, AS YOU TOLD THE PRESS? |
| 8 | A.    I DON'T AGREE WITH THE FOUNDATION OF THE |
| 9 | QUESTION. |
| 10 | Q.    YOU DON'T?  OKAY. |
| 11 | DID GLOBAL BARISTAS SELL FOR TWENTY-EIGHT |
| 12 | MILLION DOLLARS? |
| 13 | A.    YES.  I THINK YOU COULD MAKE THAT ARGUMENT, |
| 14 | BASED ON THE PROPER EVALUATION OF THE EARNOUT, THAT |
| 15 | ULTIMATELY DID NOT COME TO PASS.  JUST LIKE MR. FRANK |
| 16 | MAKES CLAIMS RELATING TO THE VALUE OF VARIOUS CLASS |
| 17 | ACTION SETTLEMENTS, AND THOSE PROVISIONS AND CLASS |
| 18 | ACTION SETTLEMENTS THAT REALLY HAVE NO BASIS IN REALITY. |
| 19 | Q.    SO HOW MUCH ACTUAL MONEY WAS RECEIVED RELATED TO |
| 20 | THE SALE OF GLOBAL BARISTAS? |
| 21 | A.    SIR, YOU ALREADY ASKED ME THAT.  WHY ARE YOU |
| 22 | ASKING ME THE SAME QUESTION? |
| 23 | Q.    LESS THAN A MILLION DOLLARS, SIR? |
| 24 | A.    SIR, I'M GOING TO STAND ON MY PRIOR ANSWER.  I |
| 25 | TOLD YOU.  I GAVE YOU THE ANSWER. |

**Exhibit J**

USAO_00059458
00059535

```
1              MR. HODGES:  DON'T ARGUE.

2      BY MR. STOLPER:

3      Q.      MY QUESTION IS, TO THE BEST OF YOUR

4      RECOLLECTION, HOW MUCH MONEY WAS EARNED ON THE SALE OF

5      GLOBAL BARISTAS, LLC?

6      A.      I THINK IT WAS LESS THAN A MILLION DOLLARS.

7      Q.      WHO RECEIVED THAT LESS THAN A MILLION DOLLARS?

8      A.      THE DEBT SERVICE AND THE TRADE PAYABLE FOR THE

9      COMPANY.

10     Q.      SO NEITHER YOU NOR ANY ENTITY YOU OWNED OR

11     CONTROLLED, DIRECTLY OR INCORRECTLY, RECEIVED ANY

12     PROCEEDS IN THE SALE OF GLOBAL BARISTAS, LLC; IS THAT

13     CORRECT?

14     A.      EVER; CORRECT.

15     Q.      OKAY.  WHAT ABOUT GLOBAL BARISTAS USA, LLC?

16     A.      THERE IS NO SUCH THING.

17     Q.      WAS THERE EVER A GLOBAL BARISTAS USA, LLC, THAT

18     YOU'RE AWARE OF?

19     A.      NOT THAT I'M AWARE OF.

20     Q.      DID YOU EVER FORM A GLOBAL BARISTAS USA, LLC?

21     A.      NO.

22     Q.      WERE YOU EVER THE MANAGER OF SUCH AN ENTITY?

23     A.      NO.

24     Q.      DID YOU EVER OPEN UP A BANK ACCOUNT IN THE NAME

25     OF GLOBAL BARISTAS USA, LLC?
```

**Exhibit J**

USAO_00059459

00059535

```
 1    A.      NO.

 2    Q.      HAVE YOU EVER BEEN A SIGNATORY ON THE BANK

 3    ACCOUNT HELD BY GLOBAL BARISTAS USA, LLC?

 4    A.      NO.

 5    Q.      WHAT BANK ACCOUNTS ARE YOU CURRENTLY A SIGNATORY

 6    ON?

 7    A.      THREE ACCOUNTS AT CITY NATIONAL BANK.

 8    Q.      AND --

 9    A.      AND A BANK OF AMERICA.

10    Q.      AND ARE THOSE HELD IN YOUR PERSONAL NAME, OR ARE

11    THEY HELD IN YOUR LAW FIRM'S, OR ENTITIES YOU CONTROL?

12    A.      I BELIEVE THEY'RE IN MY PERSONAL NAME.

13    Q.      SO YOU HAVE THREE AT CITY NATIONAL BANK.  IS

14    THAT WHAT YOU SAID?

15    A.      I THINK THAT'S TRUE.

16    Q.      AND ONE GOING BACK?

17    A.      I DIDN'T SAY ONE.  I SAID I HAVE ACCOUNTS AT

18    CITY NATIONAL BANK, AND BANK OF AMERICA.

19    Q.      HOW MUCH MONEY DO YOU HAVE IN THOSE ACCOUNTS,

20    COMBINED?

21    A.      I DON'T KNOW.  I DIDN'T LOOK, UNFORTUNATELY.

22    Q.      APPROXIMATELY HOW MUCH MONEY DO YOU HAVE IN THE

23    BANK?

24    A.      IT'S LESS THAN A HUNDRED THOUSAND DOLLARS.

25    Q.      LESS THAN A HUNDRED THOUSAND DOLLARS?
```

**Exhibit J**

USAO_00059460

00059535

1    A.    UH-HUH.

2    Q.    WHICH ACCOUNTS ARE THOSE -- WHICH ACCOUNT HAS

3    THE MOST OF LESS THAN A HUNDRED THOUSAND DOLLARS IN THE

4    ACCOUNT YOU JUST MENTIONED?

5    A.    I CAN'T TELL YOU THAT.

6    Q.    YOU CAN'T TELL ME, OR YOU DON'T KNOW?

7    A.    SIR, I DON'T KNOW AS I SIT HERE NOW.  IT DEPENDS

8    IF THE COMPLAINT WAS EXECUTED AGAIN ON THE ACCOUNT.  I

9    DIDN'T CHECK THIS MORNING TO SEE IF IT WAS DONE YET.

10   Q.    DO YOU HAVE -- ARE YOU CURRENTLY PRACTICING LAW?

11   A.    YES.

12   Q.    THROUGH WHAT ENTITIES DO YOU PRACTICE LAW?

13   A.    I PRACTICE LAW THROUGH ME PERSONALLY.  I

14   PRACTICE LAW THROUGH AVENATTI AND ASSOCIATES, AND I

15   PRACTICE LAW, EAGAN AVENATTI.

16   Q.    LET'S GO THROUGH EACH ONE OF THOSE IN TERM.

17   WHAT IS THE NAME OF THE ENTITY THAT YOU PERSONALLY

18   PRACTICE LAW THROUGH?

19   A.    MY NAME.

20   Q.    WITH THE LAW OFFICE OF MICHAEL J. AVENATTI?

21   A.    NO.  MY NAME.  MICHAEL J. AVENATTI, ESQUIRE.

22   Q.    OKAY.  IS THAT AN APC OR AN LLC?

23   A.    NO.  IT'S MY NAME.

24   Q.    OKAY.  IS THERE AN LLP OR AN APC THAT'S BEEN SET

25   UP SO THAT YOU'RE PRACTICING LAW THROUGH, OTHER THAN

**Exhibit J**

USAO_00059461
00059535

| 1 | AVENATTI AND ASSOCIATES, AND EAGAN AVENATTI? |
| 2 | A.     NO.  NOT THAT I CAN RECALL. |
| 3 | Q.     DO THE LAW OFFICES -- I'M SORRY. |
| 4 | DOES MICHAEL J. AVENATTI, AS A LAWYER, HAVE ANY |
| 5 | BANK ACCOUNTS? |
| 6 | A.     I THOUGHT WE JUST WENT THROUGH THIS. |
| 7 | Q.     I JUST WANT TO BE CLEAR THAT WE INCLUDED THE |
| 8 | BANK ACCOUNT WE DISCUSSED.  THE CITY NATIONAL BANK |
| 9 | ACCOUNT -- WE'LL TALK ABOUT THE OTHER ONES IN A MINUTE. |
| 10 | THOSE ARE -- ARE THOSE BUSINESS ACCOUNTS, PERSONAL |
| 11 | ACCOUNTS, OR MIXED? |
| 12 | A.     I THINK THEY'RE MIXED, BUT YOU KNOW OF THOSE |
| 13 | ACCOUNTS, BECAUSE YOU'VE LEVIED ON THE CASH IN THE |
| 14 | ACCOUNTS. |
| 15 | Q.     OTHER THAN THE ACCOUNTS AT CITY NATIONAL BANK, |
| 16 | WHAT OTHER ACCOUNTS DO YOU HAVE, AS AN INDIVIDUAL; AS A |
| 17 | LAWYER; AS EAGAN AVENATTI; OR AVENATTI AND ASSOCIATES, |
| 18 | HAVE ACCOUNTS OF? |
| 19 | A.     BANK OF AMERICA. |
| 20 | Q.     AND WHICH ENTITIES -- |
| 21 | A.     -- AND POSSIBLY THE MISSISSIPPI BANK, AND I |
| 22 | CAN'T REMEMBER WHAT THE NAME OF THE BANK IS. |
| 23 | Q.     BILOXI BANK? |
| 24 | A.     YES.  THAT'S CORRECT.  BILOXI BANK, BUT I DON'T |
| 25 | KNOW IF ANY ACCOUNTS ARE STILL OPEN THERE.  IF THERE |

**Exhibit J**

USAO_00059462
00059535

```
 1    ARE, THEY DON'T HAVE ANY MONEY IN THEM.  LIKELY A VERY

 2    SMALL AMOUNT OF MONEY.

 3    Q.    WHAT'S YOUR LIQUID NET WORTH?

 4    A.    I DON'T KNOW.  I HAVE NO IDEA, COUNSEL.

 5    Q.    WELL, OTHER THAN THE HUNDRED DOLLARS --

 6    SUB-HUNDRED THOUSAND DOLLARS IN THE BANK ACCOUNT, WHAT

 7    OTHER ASSETS DO YOU HOLD; LIQUID ASSETS?

 8          SORRY.  LET'S NOT TALK ABOUT CASES.  LET'S TALK

 9    ABOUT LIQUID ASSETS.

10    A.    I DON'T KNOW WHAT YOU MEAN, BY "LIQUID ASSETS."

11    Q.    SURE.  BANK ACCOUNTS.

12    A.    WAIT.  WAIT --

13    Q.    ANSWER THE QUESTION.  BANK ACCOUNTS, BROKERAGE

14    ACCOUNTS; DO YOU HAVE ANY BROKERAGE ACCOUNTS?

15          MR. HODGES:  YOU CAN ANSWER THE LAST QUESTION.

16          THE WITNESS:  ALL RIGHT.  I HAVE NO BROKERAGE

17    ACCOUNTS.  I HAVE A 401-K, BUT THAT MAY HAVE BEEN TURNED

18    OVER TO MY EX-WIFE PURSUANT TO THE TURNOVER ORDER.  I

19    DON'T REMEMBER IF THE ORDER COVERS THAT, OR NOT.  SO

20    NOW, I'M GOING TO GO TO A BREAK, BECAUSE I HAVE TO GO TO

21    THE BATHROOM, AND THEN I'LL COME BACK, AND I'LL ANSWER

22    YOUR QUESTIONS.

23                    (OFF THE RECORD.)

24    BY MR. STOLPER:

25    Q.    MR. AVENATTI, DO YOU UNDERSTAND YOU'RE STILL
```

**Exhibit J**

USAO_00059463
00059535

1    UNDER OATH?

2    A.    YES.

3    Q.    HAVE YOU EVER BEEN AFFILIATED -- SORRY.

4          DO YOU HAVE ANY DIRECT OR INDIRECT INTEREST IN

5    AN ENTITY CALLED, "GLOBAL BARISTAS UF, LLC?

6    A.    GLOBAL BARISTAS UF, LLC, WAS OWNED BY GLOBAL

7    BARISTAS.

8    Q.    OKAY.  ARE THESE ANY OTHER ENTITIES THAT GLOBAL

9    BARISTAS OWNED?

10   A.    YES.

11   Q.    WHAT ARE THEY?

12   A.    I DON'T REMEMBER ALL OF THEM, FRANKLY.  SO IT

13   WAS THE ENTITY TO US, LLC.  I THINK THERE WAS GLOBAL

14   BARISTAS ASIA, LLC, BUT I MAY BE WRONG ABOUT THAT.

15   THERE WAS ANOTHER SUBSIDIARY -- ONE OR TWO SUBSIDIARIES

16   THAT WERE ACQUIRED BY GLOBAL BARISTAS WHEN GLOBAL

17   BARISTAS BOUGHT THE ASSETS OF TULLY'S COFFEE OUT OF

18   BANKRUPTCY.  I THINK THOSE SUBSIDIARIES THEN WERE ALSO

19   SUBSIDIARIES OF GLOBAL BARISTAS, BUT THERE WAS A NEVADA

20   SUBSIDIARY.  THAT'S THE BEST WAY I CAN ANSWER THAT

21   QUESTION.

22   Q.    DID GLOBAL BARISTAS US, LLC, HAVE A BANK

23   ACCOUNT?

24   A.    THEY HAD BANK ACCOUNTS AT ONE TIME.  YES.

25   Q.    WHERE WERE THEY?

Exhibit J

USAO_00059464
00059535

1    A.    I DON'T REMEMBER ALL THE PLACES THEY WERE.  THEY

2    HAD A BANK AT -- THERE WAS ONE AT US BANK, I THINK.

3    THERE WAS ONE AT KEY BANK.  THERE WAS ONE AT HOME STREET

4    BANK.  THERE WAS ONE AT CALIFORNIA BANK AND TRUST, I

5    BELIEVE.  I THINK THAT'S IT.

6    Q.    LET ME GO BACK TO THE BANK ACCOUNTS YOU

7    CURRENTLY HOLD AT CITY NATIONAL BANK.  IS EACH ONE OF

8    THOSE BANK ACCOUNTS A BUSINESS ACCOUNT, A PERSONAL

9    ACCOUNT, OR ARE THEY MIXED?

10   A.    YOU ASKED ME THAT BEFORE, AND I TOLD YOU THEY

11   WERE NOT.  NO, THEY WERE MIXED.

12   Q.    OKAY.

13   A.    YOU'VE GOT TO LET ME FINISH ANSWERING.  THAT'S

14   THE SAME ANSWER, I'M GOING TO GIVE YOU NOW.

15   Q.    HOW MANY ACCOUNTS ARE PERSONAL AND HOW MANY

16   ACCOUNTS ARE BUSINESS?

17   A.    I DON'T REMEMBER.

18   Q.    WHAT BUSINESS ACCOUNTS -- WHAT NAMES ARE THE

19   BUSINESS ACCOUNTS IN?

20   A.    I THINK THEY'RE UNDER MY NAME.

21   Q.    YOUR PERSONAL NAME?

22   A.    DO I HAVE ANOTHER NAME?

23   Q.    WELL, YOU HAVE LOTS OF ENTITIES.  IS THIS UNDER

24   YOUR ENTITY NAME, OR ARE THEY PERSONAL HELD?

25   A.    I'M NOT SURE.  ALL I KNOW IS THERE'S THREE

**Exhibit J**

USAO_00059465
00059535

```
 1     ACCOUNTS.

 2     Q.     DID YOU EVER SET UP AN ENTITY CALLED "AVENATTI,

 3     LLC?

 4     A.     I MAY HAVE.

 5     Q.     WELL, I'M NOT ASKING WHEN YOU MAY HAVE; I'M

 6     ASKING DID YOU?

 7     A.     I DON'T REMEMBER.  I MAY HAVE.  I'VE SET UP A

 8     LOT OF LLC'S OVER THE YEARS.

 9     Q.     ARE YOU CURRENTLY A PARTNER, OR DO YOU CURRENTLY

10     HAVE AN INTEREST IN AN ENTITY CALLED "AVENATTI, LLC?"

11     A.     I MAY.  I DON'T KNOW.

12     Q.     WHO WOULD KNOW?

13     A.     WHAT'S THAT?

14     Q.     WHO WOULD KNOW IF YOU HAVE AN INTEREST AT

15     AVENATTI, LLC?

16            MR. HODGES:  SPECULATION.  FOUNDATION.

17            THE WITNESS:  I CAN'T SPECULATE.  I DON'T

18     UNDERSTAND THAT QUESTION.

19     BY MR. STOLPER:

20     Q.     WHAT DOES AVENATTI, LLC DO?

21     A.     WELL, IF THAT ENTITY EXISTS IN THAT FORM, IT

22     WOULD PRACTICE LAW.

23     Q.     SO TO YOUR KNOWLEDGE, YOU PRACTICE LAW IN AN

24     ENTITY CALLED "AVENATTI, LLC?"

25     A.     SIR, THERE'S BEEN MULTIPLE VARIATIONS OF EAGAN
```

**Exhibit J**

USAO_00059466
00059535

```
 1    AVENATTI, LLC, OVER THE YEARS.  SO IT'S NOW KNOWN AS THE

 2    "TRIAL GROUP."  AT SOME POINT IN TIME, IT MAY HAVE BEEN

 3    KNOWN AS AVENATTI, LLP.  I JUST DON'T REMEMBER.

 4    Q.    I'M INTERESTED IN KNOWING IF, RIGHT NOW YOU HAVE

 5    ANY DIRECT OR INDIRECT CONTROL OVER AN ENTITY CALLED

 6    "AVENATTI, LLC?"

 7          MR. HODGES:  LEGAL CONCLUSION.

 8          YOU CAN ANSWER, IF YOU KNOW.

 9          THE WITNESS:  SIR, WHAT I'M TELLING YOU IS, IF

10    THERE IS AN ENTITY CALLED "AVENATTI, LLC, THAT IS NOT

11    THE SAME ENTITY OR VARIATION OF THE OTHER ENTITIES THAT

12    I'VE MENTIONED.  THEN THE ANSWER WOULD BE, YES.

13    Q.    IS IT POSSIBLE THAT YOUR -- STRIKE THAT.

14          IS IT YOUR TESTIMONY THAT AVENATTI, LLP MAY JUST

15    BE A PARTNER OF EAGAN ASSETS?

16    A.    NO.

17    Q.    IT'S, ITS OWN ENTITY; CORRECT?

18    A.    I DON'T KNOW WHAT IT IS.  THE ANSWER IS I DON'T

19    KNOW.

20    Q.    SO ARE YOU THE ONE WHO FORMED AVENATTI, LLP?

21    A.    I DON'T REMEMBER I WOULD HAVE BEEN -- AGAIN, I

22    DON'T KNOW WHETHER IT'S PART OF-- WHETHER IT WAS AN

23    OFF-SHOOT OF EAGAN AVENATTI, LLP, OR WHETHER EAGAN

24    AVENATTI, LLP, WENT BY THAT NAME AT SOME POINT IN TIME,

25    OR WHETHER IT WAS A SEPARATE LLP.  THERE'S BEEN A NUMBER
```

Huntington Court Reporters & Transcription, Inc.          39
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777
Exhibit J

USAO_00059467

00059535

```
 1    OF LLP'S THAT WERE -- OR NAMES THAT WERE USED IN

 2    CONNECTION WITH EAGAN AVENATTI, LLP.  THERE WAS ETHAN

 3    O'MALLY AND AVENATTI, LLP.  THEN THERE WAS EAGAN

 4    AVENATTI, LLP.  THEN THERE WAS THE TRIAL GROUP.  IT'S

 5    GONE BY E.A., LLP.  ITS GONE BY A NUMBER OF NAMES.

 6    THAT'S THE BEST ANSWER I CAN GIVE YOU.

 7    Q.     DO YOU HAVE ANY BANK ACCOUNTS HELD BY AVENATTI,

 8    LLP?

 9    A.     ONE OF THE ACCOUNTS AT CITY NATIONAL BANK MAY BE

10    UNDER THE NAME OF AVENATTI, LLC.  I DON'T KNOW.

11    Q.     OKAY.  A DIFFERENT QUESTION.  WHY DO YOU THINK

12    IT MAY BE UNDER THE NAME OF AVENATTI LLP, IF YOU'RE NOT

13    SURE YOU'RE IN CONTROL, HOW DO YOU ADDRESS THE

14    RELATIONSHIP WITH THEM?

15    A.     I DON'T KNOW HOW TO ANSWER THAT QUESTION ABOUT

16    HOW OR WHY DO I THINK.  I DON'T KNOW HOW TO ANSWER THAT

17    QUESTION.

18    Q.     WHAT -- WHEN I ASKED YOU -- WELL, LET ME ASK

19    THIS QUESTION.  HOW MUCH HONEY IS IN THE ACCOUNT FOR

20    AVENATTI, LLP?

21    A.     FIRST OF ALL --

22           MR. HODGES:  LACKS FOUNDATION.  ASSUMES FACTS,

23    IF THERE IS SUCH AN ACCOUNT.

24           THE WITNESS:  -- I DON'T KNOW IF THERE IS AN

25    ACCOUNT, UNDER AVENATTI, LLC.  I TOLD YOU THERE'S THREE
```

USAO_00059468
00059535

```
 1    ACCOUNTS AT CITY NATIONAL BANK AND I'VE TOLD YOU THE

 2    TOTAL AMOUNT OF MONEY IN ALL OF MY BANK ACCOUNTS.  SO I

 3    DON'T KNOW HOW MUCH MONEY IS IN EACH ACCOUNT AND HOW

 4    EXACTLY EACH OF THOSE ACCOUNTS ARE TITLED.

 5    Q.    ARE ANY OF THE ACCOUNTS AT CITY NATIONAL BANK

 6    ALSO KNOWN AS "IOLTA ACCOUNTS?"  ALSO, KNOWN AS --

 7    A.    I THINK THERE IS AN IOLTA ACCOUNT AT CITY

 8    NATIONAL BANK.

 9    Q.    WHAT NAME IS THAT ACCOUNT HELD IN?  IT'S THE

10    STATE OF CALIFORNIA -- CALIFORNIA STATE BAR FOR THE

11    BENEFIT OF WHAT ENTITY?

12    A.    THAT'S NOT HOW IOLTA ACCOUNTS ARE HANDLED.

13    Q.    WELL, HOW IS YOUR IOLTA ACCOUNT TITLED?

14    A.    I DON'T RECALL.

15    Q.    HOW ARE THEY TITLED?

16    A.    I'M SORRY?

17    Q.    HOW ARE THEY TITLED?

18    A.    WELL, I THINK THEY'RE GENERALLY TITLED UNDER THE

19    STATE'S BAR.  THEY CERTAINLY HAVE THE STATE BAR ACCESS

20    MAIL.

21    Q.    BUT THEY ALSO HAVE THE NAME OF THE LAW FIRM

22    NOTED; CORRECT?

23    A.    I DON'T KNOW.

24    Q.    OKAY.  ARE YOU THE SIGNATORY ON THE IOLTA

25    ACCOUNT AT CALIFORNIA BANK AND TRUST -- SORRY.
```

**Exhibit J**

USAO_00059469
00059535

```
 1     CALIFORNIA NATIONAL BANK -- CALIFORNIA CITY NATIONAL

 2     BANK?

 3     A.     I THINK SO.

 4     Q.     ARE THERE ANY OTHER SIGNATORIES ON THAT ACCOUNT?

 5     A.     I'M NOT CERTAIN.  I DON'T THINK SO.

 6     Q.     IS THAT IOLTA ACCOUNT SOLELY FOR CLIENTS' FUNDS?

 7     A.     THAT IOLTA ACCOUNT IS FOR WHATEVER IS PERMITTED

 8     BY LAW.

 9     Q.     DO YOU PUT MONEY, OTHER THAN CLIENTS' MONEY, IN

10     THAT ACCOUNT?

11     A.     AS A GENERAL PROPOSITION, NO.

12     Q.     OKAY.  AND WHEN YOU WERE IN CONTROL OF EAGAN

13     AVENATTI, THEY HAD AN ACTUAL ACCOUNT AS WELL?

14     A.     YES.

15     Q.     AND THERE IS ALSO AN IOLTA ACCOUNT HELD IN THE

16     NAME OF MICHAEL J. AVENATTI; CORRECT?

17     A.     I DON'T UNDERSTAND.  I THOUGHT YOU WERE JUST

18     TALKING ABOUT THAT ACCOUNT.

19     Q.     WELL, LET ME ASK YOU A MORE GENERAL QUESTION.

20     IN GENERAL, DO YOU PAY FOR PERSONAL EXPENSES OUT OF YOUR

21     IOLTA ACCOUNTS?

22     A.     IT DEPENDS IF I'M ENTITLED TO FEES OR NOT.

23     Q.     SO YOU DO SOMETIMES PAY FOR EXPENSES OUT OF THE

24     IOLTA ACCOUNT?

25     A.     GENERALLY, NO.  I FOLLOW THE ETHICAL RULES OF
```

**Exhibit J**

USAO_00059470
00059535

```
 1    THE STATE OF CALIFORNIA, AND I HAVE AN INCREDIBLY

 2    ACCOMPLISHED LAWYER, WHO IS A SPECIALIST IN ETHICS, THAT

 3    I RELY ON FOR ETHICS ADVICE ON CONSISTENT BASIS.

 4    Q.    SO GENERALLY, IT'S YOUR PRACTICE NOT TO PAY

 5    PERSONAL EXPENSES DIRECTLY OUT OF YOUR IOLTA ACCOUNT;

 6    CORRECT?

 7    A.    I DON'T KNOW WHAT YOU MEAN BY "GENERAL

 8    PRACTICE."  I THINK -- WELL, I DON'T KNOW WHAT YOU MEAN

 9    BY "GENERAL PRACTICE."

10    Q.    WELL, IS IT YOUR GENERAL PRACTICE NOT TO PAY

11    PERSONAL EXPENSES, ROUGHLY, OUT OF YOUR IOLTA ACCOUNT?

12    A.    IT DEPENDS ON THE CIRCUMSTANCES OF WHETHER I'M

13    ENTITLED TO THE FEES OR NOT.

14    Q.    WHAT CIRCUMSTANCES DO YOU PAY PERSONAL EXPENSES

15    DIRECTLY OUT OF YOUR IOLTA ACCOUNT?

16    A.    SIR, I CAN'T -- I CAN'T GUESS AS TO OR

17    HYPOTHESIZE OR SPECULATE AS TO WHAT YOU'RE ASKING.

18    Q.    WELL, I'M ASKING IF YOU CO-MINGLE PERSONAL FUNDS

19    WITH CLIENTS' FUNDS IN THE IOLTA ACCOUNT.  THAT'S WHAT

20    I'M ASKING YOU.

21    A.    THAT'S A DIFFERENT QUESTION, AND GENERALLY THE

22    WAY THAT YOU'RE PHRASING IT, NO.  BUT YOU'RE CERTAINLY

23    PERMITTED TO PAY EXPENSES OUT OF THE IOLTA ACCOUNT IF

24    YOU'RE ENTITLED TO THE FEES.  THAT'S MY UNDERSTANDING, I

25    BELIEVE.  AGAIN, I WOULD HAVE TO LOOK AT THE RULES AND
```

Exhibit J

USAO_00059471
00059535

1    REGULATION.  I'D HAVE TO CONSULT WITH MY ADVOCATE

2    COUNSEL.

3    Q.    SO SOMETIMES IN THE IOLTA ACCOUNT THAT YOU HELD,

4    THERE'S MONEY THAT YOU ARE PERSONALLY ENTITLED TO; IS

5    THAT CORRECT?

6    A.    YES.

7    Q.    OKAY.  AND SOMETIMES DIRECTLY OUT OF THOSE IOLTA

8    ACCOUNTS YOU WILL PAY EXCLUSIVELY PERSONAL EXPENSES;

9    CORRECT?

10   A.    I DON'T KNOW.

11   Q.    YOU DON'T KNOW IF YOU'VE EVER DONE THAT?

12         MR. HODGES:  OBJECTION.  ASKED AND ANSWERED,

13   COUNSEL.  ARGUMENTATIVE.

14   BY MR. STOLPER:

15   Q.    HAVE YOU EVER PAID A NANNY DIRECTLY OUT OF YOUR

16   PERSONAL -- OUT OF YOUR IOLTA ACCOUNT?

17   A.    SIR, I HAVE NO IDEA, AND WHAT I WOULD SAY IS

18   THAT ANY PAYMENTS THAT I HAVE EVER MADE OUT OF AN IOLTA

19   ACCOUNT WERE PROPER AND IN ACCORDANCE WITH STATE LAW AND

20   ETHICAL LIABILITIES, AND I ROUTINELY CONSULT WITH MY

21   ETHICS COUNSEL RELATING TO THE TRANSFER OF FUNDS.

22   Q.    DID YOU EVER CONSULT WITH AN ETHICS COUNSEL

23   ABOUT WHETHER OR NOT YOU PAID YOUR NANNY OUT OF AN IOLTA

24   ACCOUNT?

25         MR. HODGES:  THAT CALLS FOR ATTORNEY-CLIENT

Exhibit J

USAO_00059472
00059535

```
 1      PRIVILEGE.

 2             THE WITNESS:  YES.  I'M NOT GOING TO ANSWER THAT

 3      QUESTION.

 4      BY MR. STOLPER:

 5      Q.     ARE YOU RELYING UPON AN ETHICAL OPINION FROM AN

 6      ATTORNEY CONCERNING YOUR USE OF AN IOLTA ACCOUNT?

 7             MR. HODGES:  WELL, HE'S NOT GOING TO GET BAITED

 8      INTO A WAIVER BY ASSERTING ADVICE OF COUNSEL.  I CAN

 9      TELL YOU THAT.

10             THE WITNESS:  SIR, THIS IS A DEBTOR'S EXAM

11      CONCERNING MY CURRENT ASSETS --

12             MR. HODGES:  MR. AVENATTI.  MR. AVENATTI.  MR.

13      AVENATTI.

14             THE WITNESS:  -- OKAY?  UNLESS YOU NOW WORK FOR

15      SOMEBODY OTHER THAN MR. FRANK.  SO, TO BE CLEAR, I'M NOT

16      GOING TO BE ANSWERING YOUR QUESTIONS AS TO WHAT I

17      CONSULTED WITH MY COUNSEL ABOUT.

18             MR. HODGES:  AND FOR THE RECORD, THE OBJECTIONS

19      WERE RELEVANT TO 352, BEYOND THE SCOPE.  YOU SHOULD NOT

20      BE ANSWERING THESE QUESTIONS.  IT HAS NOTHING TO DO WITH

21      YOUR ASSETS OR LIABILITIES.

22      BY MR. STOLPER:

23      Q.     DO YOU HAVE ANY ASSETS -- DO YOU HAVE ANY CLAIM,

24      PERSONAL CLAIM, ON ANY MONEY IN ANY IOLTA ACCOUNTS THAT

25      YOU CURRENTLY HAVE?
```

Exhibit J

USAO_00059473
00059535

```
 1    A.     I MAY.

 2    Q.     WHAT WOULD BE THE AMOUNT OF THAT CLAIM?

 3    A.     I HAVE NO IDEA.

 4    Q.     SO SOME OF THE MONEY IN THE IOLTA ACCOUNT

 5    BELONGS TO YOU PERSONALLY?

 6    A.     NO.  I SAID I MAY.  I DON'T KNOW.

 7    Q.     YOU SAID YOU CONSULTED WITH COUNSEL ABOUT WHAT

 8    HIS ADVICE WAS.  WHO WAS THE ETHICS COUNSEL?

 9    A.     I'M NOT GOING TO ANSWER THAT QUESTION.

10           MR. HODGES:  IT'S NOT RELEVANT.  IT'S BEYOND THE

11    SCOPE OF 352.  THAT'S NUMBER ONE.

12           MR. STOLPER:  SO YOU'RE REFUSING TO ANSWER TO

13    YOUR ETHICS COUNSEL?

14           MR. HODGES:  I'M INSTRUCTING HIM NOT TO ANSWER.

15           THE WITNESS:  THIS IS A DEBTOR'S EXAM, SIR.  DO

16    YOU UNDERSTAND THAT; RIGHT?

17           MR. HODGES:  MR. AVENATTI, I'VE GOT IT.  I'M

18    INSTRUCTING HIM NOT TO ANSWER THAT AFTER SOME ADDITIONAL

19    SHOWING AS TO WHY THAT'S PERTINENT TO THIS.

20    BY MR. STOLPER:

21    Q.     IF THERE ARE EXPENSES THAT YOU HAVE THAT ARE

22    PERSONAL EXPENSES THAT ARE PAID OUT OF IOLTA ACCOUNTS,

23    THAT YOU OWN THAT WOULD BE AN OPERATION, OR WOULD THAT

24    BE NORMAL PRACTICE?

25           MR. HODGES:  RELEVANT TO 352; BEYOND THE SCOPE.
```

**Exhibit J**

USAO_00059474

00059535

```
 1              THE WITNESS:  I DON'T KNOW HOW TO ANSWER THAT

 2     QUESTION.

 3     BY MR. STOLPER:

 4     Q.     WELL, IS IT YOUR PRACTICE TO PAY PERSONAL

 5     EXPENSES OUT OF AN IOLTA ACCOUNT?

 6     A.     I'VE ANSWERED THAT QUESTION.

 7     Q.     I DIDN'T GET AN ANSWER.

 8     A.     NO. YOU DID GET AN ANSWER.  YOU DIDN'T LIKE THE

 9     ANSWER.

10              MR. HODGES:  NO.  WE'RE NOT GOING TO GO BACK

11     THERE, TO TAKE A REVIEW OF THE RECORD, COUNSEL.  YOU

12     KNOW, THAT'S AN IMPROPER QUESTION.

13     BY MR. STOLPER:

14     Q.     WHAT -- WELL, I'M GOING TO ASK THE QUESTION,

15     BECAUSE I DIDN'T GET IT ANSWERED.  IS IT YOUR PRACTICE

16     TO TAKE PERSONAL EXPENSES OUT OF IOLTA ACCOUNTS?

17              MR. HODGES:  ASKED AND ANSWERED.  ARGUMENTATIVE.

18              THE WITNESS:  SIR, I DON'T KNOW WHAT YOU MEAN.

19     I'M GOING TO GO BACK TO WHAT I'VE SAID.  WHEN I MAKE

20     PAYMENTS OUT OF ACCOUNTS, THEY ARE PROPER, THEY ARE IN

21     ACCORDANCE WITH CALIFORNIA LAW AND RULINGS AND

22     REGULATIONS GOVERNING LAWYERS, AND I ROUTINELY RELY ON

23     ETHICS ADVICE FROM AT LEAST ONE, IF NOT MORE, PREEMINENT

24     LAWYERS WHO ARE ETHICAL SPECIALISTS IN THE STATE OF

25     CALIFORNIA, PERIOD.
```

USAO_00059475
00059535

```
1    Q.    I WANT TO ASK ANOTHER QUESTION.

2    A.    NO.  NO.  NO.

3          MR. HODGES:  MR. AVENATTI, DON'T ARGUE.

4          THE WITNESS:  STOP INTERRUPTING ME, COUNSEL.

5    YOU ASKED ME A QUESTION.  YOU'VE GOT TO LET ME ANSWER

6    IT.

7    BY MR. STOLPER:

8    Q.    YOU DIDN'T ANSWER MY QUESTION.

9    A.    NO.  I HAVE ANSWERED YOUR QUESTION.

10   Q.    I'M NOT INTERESTED IN WHETHER YOU THINK IT'S

11   PROPER.  I'M NOT INTERESTED IN WHETHER YOU HAVE ADVICE

12   ABOUT IT.  I'M SIMPLY INTERESTED IN FACTS ABOUT IT.

13   THAT'S WHAT I'M ASKING YOU.

14   A.    NO.  THAT'S NOT WHAT YOUR ISSUE IS TODAY.

15   Q.    HAVE YOU USED IOLTA ACCOUNTS TO PAY --

16   A.    -- I DON'T KNOW.

17   Q.    SO IT'S POSSIBLE THAT YOU HAVE?

18         MR. HODGES:  ARGUMENTATIVE.

19         THE WITNESS:  IT'S POSSIBLE THAT I HAVE AND IT'S

20   POSSIBLE THAT I HAVEN'T, COUNSEL.

21   Q.    IF I WERE --

22   A.    BUT I WILL TELL YOU --

23   Q.    JUST ANSWER THE QUESTION, MR. AVENATTI.

24         MR. HODGES:  YOU DON'T GET TO INTERRUPT HIM.

25         THE WITNESS:  YEAH.  YOU DON'T CUT ME OFF.  I
```

**Exhibit J**

USAO_00059476
00059535

```
 1     GET TO ANSWER MY QUESTION, LAWYER -- COUNSELOR.  ALL

 2     RIGHT?  WHAT I WILL TELL YOU IS EVERY PAYMENT THAT I

 3     HAVE EVER MADE HAS BEEN PROPER.  SO ARE YOU HERE TO TRY

 4     TO COLLECT A DEBT FOR YOUR CLIENT, OR ARE YOU HERE TO

 5     TRY TO EMBARRASS ME?

 6     BY MR. STOLPER:

 7     Q.     HAVE YOU EVER INVESTED IN AN ENTITY CALLED

 8     "DOUBLE DOWN?"

 9     A.     NO.

10     Q.     HAVE YOU EVER HAD AN INTEREST IN THE ENTITY

11     "DOUBLE DOWN?"

12     A.     YES.

13     Q.     WHAT IS DOUBLE DOWN?

14     A.     AN LLC.

15     Q.     WHAT DOES DOUBLE DOWN, LLC, DO?

16     A.     IT WAS FORMED TO PURCHASE A HOME.

17     Q.     WHAT HOME WAS IT FORMED TO PURCHASE?

18     A.     A HOME ON LIDO ISLE IN NEWPORT BEACH.

19     Q.     AND IT WAS FORMED BY WHO TO PURCHASE THE HOUSE?

20     A.     MY COUNSEL, AS I RECALL.

21     Q.     FOR THE BENEFIT OF YOUR COUNSEL, OR WAS IT YOUR

22     ENTITY?

23     A.     NO.  IT WAS FORMED BY MY COUNSEL FOR THE PURPOSE

24     OF ME AND MY WIFE AT THE TIME.

25     Q.     WHO WERE THE OWNERS OF DOUBLE DOWN, LLC?
```

**Exhibit J**

USAO_00059477
00059535

```
 1      A.      I THINK IT WAS MY WIFE AND I, INDIVIDUALLY.

 2      Q.      WHEN DID DOUBLE DOWN, LLC, CEASE TO EXIST, OR

 3   LAST EXISTED?

 4      A.      I DON'T REMEMBER.  I MEAN TECHNICALLY, IT STILL

 5   MAY EXIST, BUT IT DOESN'T HAVE ANY ASSETS.

 6      Q.      DOES DOUBLE DOWN, LLC, HAVE ANY DIRECT OR

 7   INDIRECT OWNERSHIP IN ANY OTHER ENTITY?

 8      A.      NOT THAT I KNOW OF.

 9      Q.      DOES DOUBLE DOWN, LLC, HAVE ANY ASSETS?

10      A.      NOT THAT I KNOW OF.

11      Q.      WHAT ABOUT "WORK STILL HERE?"

12              MR. HODGES:  I'M SORRY, COUNSEL.  I DIDN'T HEAR

13   YOU.

14   BY MR. STOLPER:

15      Q.      WHAT ABOUT WORK STILL HERE?

16      A.      WHAT ABOUT IT?

17      Q.      WHAT IS IT?

18      A.      IT'S A TRADEMARK.

19      Q.      WHOSE TRADEMARK?

20      A.      I DON'T KNOW, FRANKLY.  I DON'T RECALL IF THAT'S

21   HELD BY ME PERSONALLY OR ANOTHER ENTITY.  I JUST DON'T

22   REMEMBER.

23      Q.      WHAT WAS THE PURPOSE OF THE TRADEMARK, "WE'RE

24   STILL HERE?"

25      A.      IT'S A TRADEMARK, "WE'RE STILL HERE."
```

**Exhibit J**

USAO_00059478
00059535

```
 1      Q.      WHAT ENTITY WAS IT USED FOR?

 2      A.      IT WAS ULTIMATELY NEVER USED.

 3      Q.      WELL, DID YOU APPLY FOR A TRADEMARK AT "WE'RE

 4    STILL HERE?"

 5      A.      I DID.  I THINK IT WAS IN JANUARY OR FEBRUARY OF

 6    2017.

 7      Q.      BUT YOU'RE NOT SURE WHICH ENTITY HOLDS THAT

 8    TRADEMARK?

 9      A.      NO.  I DON'T THINK IT HAS A LOT OF VALUE.

10      Q.      WHAT OTHER ENTRIES -- WE'RE GOING THROUGH SOME

11    OTHER ENTITIES.

12              WHAT OTHER ENTITIES DO YOU HAVE A DIRECT OR

13    INDIRECT INTEREST IN?

14      A.      I'M TRYING TO RECALL ALL OF THE ENTITIES.  I

15    THINK WE'VE TALKED ABOUT ALL OF THEM.  THERE MAY BE ONE

16    OR TWO OTHERS.  I DON'T KNOW.

17      Q.      WHAT ABOUT NERO?

18      A.      WHAT ABOUT IT?

19      Q.      WELL, WHAT IS IT, OTHER THAN A ROMAN EMPEROR?

20      A.      AT ONE POINT IN TIME, I WAS POTENTIALLY GOING TO

21    USE THE NAME 'NERO,' IN ACCORDANCE WITH THE PRACTICE OF

22    LAW, AND I DECIDED NOT TO DO IT.

23      Q.      SO DID YOU FORM AN ENTITY CALLED, "NERO?"

24      A.      I DON'T REMEMBER.  I MAY HAVE.

25      Q.      TO YOUR KNOWLEDGE, DOES NERO HAVE ANY ASSETS?
```

**Exhibit J**

USAO_00059479

00059535

```
 1    A.      NO.

 2    Q.      TO YOUR KNOWLEDGE, DID NERO HAVE ANY INTERESTS

 3    IN ANY OTHER ENTITIES?

 4    A.      NO.

 5    Q.      LET'S GO BACK TO YOUR PERSONAL NET WORTH.  OTHER

 6    THAN THE BANK ACCOUNTS THAT YOU MENTIONED, OTHER THAN

 7    THE 401-K THAT YOU MENTIONED, WHAT OTHER ASSETS DO YOU

 8    POSSESS?

 9    A.      MY INTEREST IN MY LAW PRACTICES.

10    Q.      THAT'S YOUR INTEREST IN EAGAN AVENATTI?

11    A.      AND AVENATTI AND ASSOCIATES.

12    Q.      I THOUGHT AVENATTI AND ASSOCIATES BELONGED TO

13    YOUR WIFE NOW?

14    A.      NO, SIR.  I TOLD YOU THAT I DID NOT KNOW

15    TECHNICALLY WHO OWNED AVENATTI AND ASSOCIATES.

16    Q.      OKAY.  SO YOU HAVE AN INTEREST IN AVENATTI AND

17    ASSOCIATES, EAGAN AVENATTI.  WHAT ELSE, PLEASE?

18    A.      MY INDIVIDUAL LAW PRACTICE.  MY INTEREST IN

19    VARIOUS CASES THROUGH EAGAN AVENATTI AND ELSEWHERE.  MY

20    CLOTHES.  THE FURNITURE IN MY APARTMENT.  WHATEVER MY

21    COMMUNITY'S PROPERTY INTEREST IS IN THE ASSETS OF MY

22    MARITAL HOME.  TWO MILLION DOLLARS IN A JET, ALTHOUGH

23    THAT HAS BEEN ORDERED TURNED OVER TO MY SOON-TO-BE EX-

24    WIFE.  ART THAT'S BEEN ORDERED TO BE TURNED OVER TO MY

25    EX-WIFE WORTH HUNDREDS OF THOUSANDS OF DOLLARS.
```

**Exhibit J**

USAO_00059480
00059535

1     INTEREST IN A CAR THAT WAS ORDERED TO BE TURNED OVER TO

2     MY EX-WIFE.  WATCHES THAT WERE ORDERED TO BE TURNED OVER

3     TO MY EX-WIFE.  WE TALKED ABOUT TERRIAN STOCK.

4                   (PHONE INTERRUPTION.)

5          WE TALKED ABOUT THE ENTITIES.  IT'S A BROAD

6     QUESTION.  I CAN'T THINK OF ANYTHING ELSE AT THIS POINT.

7     Q.     WHAT KINDS OF FURNITURE DO YOU HAVE IN YOUR

8     HOUSE THAT BELONGS TO YOU?

9     A.     I DON'T KNOW WHO MAKES MY FURNITURE, SIR.

10    Q.     WHEN DID YOU BUY IT?

11    A.     I'M SORRY?

12    Q.     WHEN DID YOU PURCHASE IT?

13    A.     IT WAS PURCHASED IN THE SPRING OF 2000 -- ARE WE

14    TALKING ABOUT THE FURNITURE WHERE I LIVE NOW?

15    Q.     CORRECT.

16    A.     IN THE SPRING OF 2017.

17    Q.     HOW MUCH DID YOU PAY FOR THE FURNITURE?

18    A.     I HAVE NO IDEA.  MY EX-WIFE HANDLED IT.

19    Q.     DO YOU KNOW IF IT WAS MORE THAN FIVE THOUSAND

20    DOLLARS?

21    A.     I HAVE NO IDEA.  SHE HANDLED IT.

22    Q.     SO YOU HAVE NO IDEA WHAT THE FURNITURE IN YOUR

23    HOUSE IS WORTH?

24    A.     WHAT IT'S WORTH NOW.  IT'S PROBABLY NOT WORTH A

25    LOT OF MONEY.  FURNITURE USUALLY DOESN'T HOLD ITS VALUE

**Exhibit J**

USAO_00059481
00059535

1      --

2      Q.     SIR, HAVE YOU GOT INTERESTS --

3      A.     YOU GOTTA STOP INTERRUPTING ME; OKAY?  PLEASE

4      SHOW ME THE RESPECT OF LETTING ME FINISH.  I SHOW YOU

5      THAT RESPECT, AND I ASK YOU TO DO THE SAME.

6      Q.     IS THERE ANY ARTWORK IN YOUR HOUSE?

7      A.     No.

8      Q.     THERE IS NOTHING ON THE WALLS?

9      A.     NO.  NOT THAT I CAN RECALL.  THERE MAY BE SOME

10     PHOTOGRAPHS ON THE WALL.

11     Q.     WHAT DO YOU DO FOR TRANSPORTATION?

12     A.     I'M SORRY?

13     Q.     WHAT DO YOU DO FOR TRANSPORTATION?

14     A.     I UBER, AND I ALSO USE A CADILLAC ESCALADE.

15     Q.     WHO DOES THE CADILLAC ESCALADE BELONG TO?

16     A.     CADILLAC.

17     Q.     IT'S BEEN REPOSSESSED?

18     A.     I'M SORRY, SIR?

19     Q.     WHO DOES IT BELONG TO?

20     A.     I ANSWERED YOUR QUESTION.  GENERAL MOTORS --

21     CADILLAC.

22     Q.     OKAY.  IS IT A LEASED VEHICLE?

23     A.     THERE YOU GO; WINNER.

24     Q.     IS, "THERE YOU GO; WINNER," YOUR WAY OF SAYING

25     "YES?"

**Exhibit J**

USAO_00059482

00059535

```
 1     A.      NO.  IT'S MY WAY OF SAYING STOP BEING

 2     ARGUMENTATIVE WITH ME.

 3     Q.      SO IS THE CAR LEASED?

 4     A.      THAT WOULD BE CORRECT.

 5     Q.      WHO HOLDS THE LEASE TO THAT CAR?

 6     A.      WHAT DO YOUR MEAN, WHO HOLDS THE LEASE?

 7     CADILLAC AND GENERAL MOTORS.

 8     Q.      WHO'S THE LESSOR?

 9     A.      I BELIEVE IT'S JUDY REGNIER.

10     Q.      WHO'S MISS REGNIER?

11     A.      MY ASSISTANT.

12     Q.      WHO PAYS -- IT'S A PREPAID LEASE?

13     A.      I DON'T REMEMBER.  I DON'T REMEMBER IF IT WAS

14     PREPAID OR NOT.

15     Q.      SO IS IT CURRENTLY BEING PAID?

16     A.      I DON'T KNOW.

17     Q.      YOU'RE NOT PAYING IT?

18     A.      I'M NOT PAYING IT.

19     Q.      WHAT DO YOU PAY -- DO YOU CURRENTLY PAY MISS

20     REGNIER FOR THE USE OF THE VEHICLE?

21     A.      NO.

22     Q.      DO YOU MAINTAIN THE VEHICLE?

23     A.      YES.

24     Q.      IS THE VEHICLE IN YOUR POSSESSION IN GENERAL?

25     A.      NO.
```

**Exhibit J**

USAO_00059483
00059535

| | | |
|---|---|---|
| 1 | Q. | IS IT GENERALLY IN MISS REGNIER'S POSSESSION? |
| 2 | A. | NO. |
| 3 | Q. | WHERE IS IT RIGHT NOW? |
| 4 | A. | I DON'T KNOW. |
| 5 | Q. | WHERE DID YOU LAST SEE IT? |
| 6 | A. | WHEN IT DROPPED ME OFF HERE TODAY. |
| 7 | Q. | OKAY.  DO YOU HAVE A DRIVER? |
| 8 | A. | SOMETIMES. |
| 9 | Q. | DID YOU HAVE A DRIVER TODAY? |
| 10 | A. | YES. |
| 11 | Q. | WHO'S YOUR DRIVER? |
| 12 | A. | JAMES CAMRY. |
| 13 | Q. | HOW IS HE PAID? |
| 14 | A. | FROM ONE OF MY ENTITIES. |
| 15 | Q. | WHICH ENTITY PAYS HIM? |
| 16 | A. | I DON'T KNOW.  I DON'T REMEMBER. |
| 17 | Q. | SO THE ENTITIES YOU CURRENTLY CONTROL ARE -- I'M |

18    SORRY.  I MISSED THE ENTITIES YOU CURRENTLY CONTROL.

19    YOU SAID AVENATTI AND ASSOCIATES HAVE PROBABLY BEEN

20    TURNED OVER TO YOUR WIFE.  EAGAN AVENATTI IS IN

21    RECEIVERSHIP.  SO MY QUESTION TO YOU IS, WHICH ENTITY

22    ARE YOU REFERRING TO THAT IS PAYING FOR YOU TO HAVE A

23    CAR AND A DRIVER?

24        MR. HODGES:  ASKED AND ANSWERED.  LACKS

25    FOUNDATION.  DON'T GUESS.

Exhibit J

USAO_00059484
00059535

```
 1              THE WITNESS:  I'VE ANSWERED YOUR QUESTION.

 2      BY MR. STOLPER:

 3      Q.     NO.  YOU ACTUALLY HAVEN'T.  MY QUESTION IS --

 4      YOU SAID AN ENTITY IS PAYING THEM.  I'M AT A LOSS TO

 5      UNDERSTAND WHICH ENTITY THAT WAS.  WHAT IS YOUR

 6      UNDERSTANDING AS TO WHICH ENTITY PAYS THEM?

 7      A.     I DON'T KNOW IF IT'S AN ENTITY OR ME PERSONALLY.

 8      I MAY PERSONALLY PAY THEM.

 9      Q.     HOW MUCH DO YOU PERSONALLY PAY THEM?

10      A.     I DON'T RECALL.  MAYBE THREE TO FOUR THOUSAND

11      DOLLARS A MONTH.

12      Q.     THREE TO FOUR THOUSAND DOLLARS A MONTH?

13      A.     MAYBE FIVE THOUSAND.

14      Q.     FIVE THOUSAND DOLLARS A MONTH?

15      A.     YES.

16      Q.     DO YOU KNOW WHICH BANK ACCOUNT YOU USE TO PAY

17      MR. CAMRY?

18             MR. HODGES:  ASSUMES FACTS.  FOUNDATION.

19             THE WITNESS:  I DON'T.

20      BY MR. STOLPER:

21      Q.     DO YOU USE A BANK ACCOUNT TO PAY MR. CAMRY?

22      A.     GENERALLY, I THINK I DO.

23      Q.     DO YOU PAY HIM CASH OR -- HOW DO YOU PAY HIM?

24      A.     SOMETIMES I PAY IN CASH, BUT I DON'T REMEMBER

25      THE CIRCUMSTANCES OF THAT.
```

**Exhibit J**

USAO_00059485
00059535

```
 1     Q.     HAVE YOU PAID HIM CASH RECENTLY?

 2     A.     I DON'T REMEMBER.

 3     Q.     YOU DON'T REMEMBER IF YOU PAID HIM CASH

 4     RECENTLY?

 5            MR. HODGES:  ARGUMENTATIVE.  ASKED AND ANSWERED.

 6            COUNSEL YOU CAN ASK IT ONCE, BUT DON'T DEBATE

 7     WITH THE WITNESS.  ASK HIM QUESTIONS.  HE CAN ANSWER

 8     THEM.

 9            THE WITNESS:  I HAVE ANSWERED YOUR QUESTION.

10     BY MR. STOLPER:

11     Q.     WHEN YOU PAY MR. CAMRY, NOT CASH, DO YOU PAY HIM

12     BY CHECK?

13     A.     I THINK SO.

14     Q.     SO ARE YOU THE ONE WHO WOULD SIGN THAT CHECK?

15     A.     I THINK SO.

16     Q.     AND YOU DON'T RECALL WHICH ACCOUNTS YOU USED TO

17     PAY THAT CHECK?

18     A.     THAT'S THREE TIMES YOU'VE ASKED ME THAT SAME

19     QUESTION.  I TOLD YOU I DON'T KNOW FROM WHAT ACCOUNT

20     HE'S GOTTEN PAID FROM.

21     Q.     OTHER THAN EAGAN AVENATTI AND AVENATTI AND

22     ASSOCIATES, ARE THERE ANY OTHER ENTITIES THAT YOU'RE

23     PRACTICING LAW THROUGH CURRENTLY?  I ASKED YOU ABOUT

24     AVENATTI, LLP, AND I WANT TO MAKE SURE THE RECORD IS

25     CLEAR.
```

USAO_00059486

00059535

```
 1    A.    SIR, YOU'VE ALREADY ASKED ME THIS QUESTION.

 2    I'VE ALREADY ANSWERED THE QUESTION.  I TOLD YOU THE

 3    ENTITIES THAT I THINK I PRACTICE LAW IN.  EAGAN

 4    AVENATTI, AVENATTI AND ASSOCIATES, IF THIS AVENATTI,

 5    LLP, IS A SEPARATE ENTITY, SO BE IT.  AND ME,

 6    PERSONALLY.

 7    Q.    ARE YOU AN EMPLOYEE FOR ANYONE?

 8          MR. HODGES:  LEGAL CONCLUSION.

 9          YOU CAN ANSWER, IF YOU KNOW.

10    BY MR. STOLPER:

11    Q.    DO YOU HAVE A JOB, SIR?

12    A.    YES.  I THINK I'M WORKING FOR YOU AND MR. FRANK;

13    RIGHT?

14    Q.    DO YOU HAVE A JOB, SIR?

15    A.    I MEAN, THIS CERTAINLY FEELS LIKE A JOB.  SO I'M

16    GOING TO GO WITH YES, I HAVE A JOB.

17    Q.    WHAT IS YOUR JOB?

18    A.    MY JOB IS TO ADVOCATE ON BEHALF OF CLIENTS.

19    PEOPLE WHO NEED LEGAL SERVICES LIKE YOUNG WOMEN THAT

20    WERE SEXUALLY MOLESTED AND ABUSED BY R. KELLY.  THINGS

21    OF THAT NATURE, SIR.  PEOPLE THAT REALLY NEED HELP AS

22    OPPOSED TO THIS CIRCUS, AND RIDICULOUS PROCESS BY WHICH

23    A FORMER EMPLOYEE, WHO WITHIN A NAMED PARTNER ONLY, IN

24    NAME, IS SEEKING TO RECOVER A BUNCH OF MONEY, AND TURN

25    THIS INTO A SPECTACLE AND A CIRCUS FOR THE PRESS.  SO
```

**Exhibit J**

USAO_00059487
00059535

| | |
|---|---|
| 1 | YEAH, I HAVE A JOB. |
| 2 | Q.    DO YOU HAVE ANY PAYING CLIENTS? |
| 3 | A.    DO I HAVE ANY PAYING CLIENTS? |
| 4 | Q.    YES. |
| 5 | A.    NO. |
| 6 | Q.    WHEN WAS THE LAST TIME YOU HAD A PAYING CLIENT? |
| 7 | A.    SIR, I DON'T KNOW WHAT YOU MEAN, BY THAT. |
| 8 | Q.    DO YOU UNDERSTAND WHAT A CLIENT IS? |
| 9 | MR. HODGES:  YOU CAN ANSWER THAT QUESTION. |
| 10 | THE WITNESS:  YES.  I UNDERSTAND WHAT A CLIENT |
| 11 | IS. |
| 12 | BY MR. STOLPER: |
| 13 | Q.    DO YOU UNDERSTAND WHAT IT IS TO HAVE A PAYING |
| 14 | CLIENT, THE KIND YOU PAY FOR A SERVICE? |
| 15 | MR. HODGES:  NO.  MR. AVENATTI, YOU'RE NOT |
| 16 | SUPPOSED TO DEFINE WHETHER IT'S AN HOURLY FEE, OR |
| 17 | CONTINGENCY. |
| 18 | THE WITNESS:  I DON'T KNOW. |
| 19 | BY MR. STOLPER: |
| 20 | Q.    WELL, WHEN WAS THE LAST TIME YOU HAD AN HOURLY |
| 21 | PAYING CLIENT? |
| 22 | A.    SIR, DO I PERSONALLY HAVE AN HOURLY-PAYING |
| 23 | CLIENT?  NO.  DO I PERSONALLY HAVE ANY OTHER CLIENTS? |
| 24 | NO. |
| 25 | Q.    THAT'S FINE. |

**Exhibit J**

USAO_00059488

00059535

1    A.     DO I PERSONALLY HAVE ANY OTHER PAYING CLIENTS?

2    NO.  THAT'S MY ANSWER.

3    Q.     DO YOU HAVE ANY CASES THAT YOU'RE CURRENTLY

4    WORKING ON THAT ARE ON CONTINGENCY?

5    A.     I HAVE ALL KINDS OF CASES.  YOU HAVE THE LIST.

6    Q.     LET'S GO THROUGH THE CASES THAT YOU'RE WORKING

7    ON.  LET'S FIRST SORT OUT THE ONES THAT ARE PUBLICLY

8    FILED.

9          WHAT PUBLICLY FILED CASES ARE YOU CURRENTLY

10   WORKING ON THAT ARE ON CONTINGENCY?

11   A.     SIR, I CAN'T SIT HERE AND LIST FOR YOU ALL OF MY

12   CASES.

13   Q.     PLEASE, DO YOUR BEST.

14   A.     SIR, YOU HAVE THE CASE LIST.  IF YOU WANT TO

15   SHOW ME THE CASE LIST, IF YOU WANT TO GO THROUGH THE

16   CASE LIST.  WE COULD SPEND A LOT OF TIME TALKING ABOUT A

17   CASE LIST, BUT WE HAVE TO TALK ABOUT IT.

18   Q.     PLEASE DO YOUR BEST TO RECALL WHICH CASES YOU'RE

19   CURRENTLY WORKING ON FOR WHICH YOU EXPECT TO RECEIVE ON

20   A CONTINGENCY BASIS.

21   A.     THE KIMBERLY CLARK CASE, IN WHICH I PERSONALLY

22   AM CLASS COUNSEL, WHICH I OBTAINED A FOUR-HUNDRED,

23   FIFTY-FOUR MILLION DOLLAR JURY VERDICT ON.  THAT WOULD

24   PROBABLY BE AT THE TOP OF THE LIST.

25   Q.     WHAT IS YOUR PERSONAL PERCENTAGE -- SORRY.  WHAT

**Exhibit J**

USAO_00059489
00059535

```
 1       IS YOUR PERSONAL INTEREST IN THAT CASE?

 2       A.      AT LEAST 80 PERCENT.

 3       Q.      JUST LET ME FINISH MY QUESTION.  YOU EXPECT TO

 4       RECOVER 80 PERCENT PERSONALLY OF THE ATTORNEY'S FEES

 5       THAT ARE EITHER PAID --

 6               MR. HODGES:  MISSTATES HIS TESTIMONY.  YOU ASKED

 7       FOR HIS PROFESSIONAL INTEREST.  THAT'S NOT WHAT HE'S

 8       SUPPOSED TO COLLECT.

 9       BY MR. STOLPER:

10       Q.      YOU CAN ANSWER MY QUESTION.

11       A.      SIR, I BELIEVE I'M ENTITLED TO AT LEAST 80

12       PERCENT OF ATTORNEY FEES IN THAT CASE.

13       Q.      ARE THERE ANY AGREEMENTS THAT YOU HAVE TO

14       SUPPORT YOUR INTENTION THAT YOU'RE ENTITLED TO AT LEAST

15       80 PERCENT IN ATTORNEY FEES FROM KIMBERLY CLARK?

16       A.      YES.

17       Q.      WHAT ARE THOSE AGREEMENTS?

18       A.      THOSE ARE WRITTEN AGREEMENTS.

19       Q.      BETWEEN WHO?

20       A.      BETWEEN EAGAN AVENATTI, AND ME.

21       Q.      WHO SIGNED THE AGREEMENT?

22       A.      ME.

23       Q.      ON BEHALF OF WHOM?

24       A.      THE ENTITY.

25       Q.      SO THERE'S A WRITTEN AGREEMENT THAT YOU SIGNED
```

**Exhibit J**

USAO_00059490
00059535

```
 1      ON BEHALF OF EAGAN AVENATTI THAT STATES, EAGAN AVENATTI

 2      IS GOING TO PAY YOU AT LEAST 80 PERCENT?

 3      A.      NO.   THAT'S NOT WHAT THE AGREEMENT SAYS.

 4      Q.      WHAT DOES THE AGREEMENT SAY?

 5      A.      THE AGREEMENT RELATES TO THE FEES LIST, FROM A

 6      CASE THAT I ORIGINATED, BONDING TO THE FIRM, AND WAS

 7      PROMINENTLY RESPONSIBLE FOR THE FOUR HUNDRED, FIFTY-FOUR

 8      MILLION DOLLAR JURY VERDICT --

 9      Q.      MY ONLY QUESTION IS --

10      A.      I'M NOT DONE.   YOU'VE GOT TO LET ME FINISH;

11      OKAY?   THE AGREEMENT SETS FORTH THE FEES LIST BETWEEN ME

12      AND THE FIRM IN VARYING PERCENTAGES ON A SLIDING SCALE.

13      I DON'T RECALL THE EXACT PERCENTAGES AND THE DETAILS OF

14      THE AGREEMENT.   YOU ASKED ME EARLIER WHAT YOU THOUGHT I

15      WAS ENTITLED TO.   I BELIEVE I'M ENTITLED TO AT LEAST 80

16      PERCENT.

17      Q.      WHEN DID YOU AND YOUR SPOUSE ENTER INTO THAT

18      AGREEMENT?

19      A.      I DON'T RECALL.

20      Q.      WELL, WAS IT WITHIN THE LAST YEAR?

21      A.      I DON'T RECALL.

22      Q.      YOU HAVE NO IDEA WHEN IT WAS?

23              MR. HODGES:  MISSTATES TESTIMONY.  HE SAID HE

24      DIDN'T REMEMBER IT, AND YOU SAID HE DIDN'T KNOW.

25              THE WITNESS:  I DON'T RECALL.
```

**Exhibit J**

USAO_00059491

00059535

```
 1      BY MR. STOLPER:

 2      Q.      WHEN WAS THE LAST TIME YOU SAW THIS AGREEMENT?

 3      A.      I DON'T REMEMBER.

 4      Q.      DOES IT STILL EXIST, TO YOUR KNOWLEDGE?

 5      A.      I'M SURE IT DOES.

 6      Q.      DO YOU HAVE A COPY OF IT PERSONALLY IN YOUR

 7      FILES?

 8      A.      I DON'T KNOW.  I DON'T LOOK FOR IT.  ACTUALLY,

 9      THAT'S NOT TRUE.  I DID LOOK FOR IT RECENTLY.  I'M STILL

10      TRYING TO LOCATE IT.

11      Q.      SO YOU HAVEN'T BEEN ABLE TO FIND THIS AGREEMENT

12      BETWEEN YOU AND YOUR SPOUSE?

13      A.      SIR, IT'S NOT BETWEEN AND ME AND MYSELF.  OKAY?

14      Q.      WHO SIGNS FOR --

15      A.      SIR, IT'S NOT -- I DON'T APPRECIATE THE

16      FLIPPANCY OF YOUR COMMENT.

17              MR. HODGES:  AND THE SMIRK ON THE FACE WILL BE

18      NOTED FOR THE RECORD.

19      A.      YEAH.  I MEAN, THIS IS RIDICULOUS.  IS THIS WHAT

20      HAPPENS IN BRODCOM?

21      BY MR. STOLPER:

22      Q.      THE AGREEMENT IS SIGNED BY EAGAN AVENATTI AND

23      YOU ON BEHALF OF YOURSELF; CORRECT?

24      A.      THE AGREEMENT IS BETWEEN EAGAN AVENATTI AND ME.

25      ABSENT THE AGREEMENT I WOULD HAVE LEFT EAGAN AVENATTI
```

USAO_00059492
00059535

```
 1    AND I WOULDN'T HAVE NEVER STAYED AT EAGAN AVENATTI.

 2    Q.    WHAT PROMPTED YOU TO ENTER INTO THIS WRITTEN

 3    AGREEMENT BETWEEN EAGAN AVENATTI AND YOURSELF?

 4    A.    I WANTED TO PROTECT MY INTEREST.

 5    Q.    AGAINST WHAT?

 6    A.    I WANTED TO PROTECT MY INTEREST IN A VERY LARGE

 7    CASE THAT I WAS PREDOMINANTLY RESPONSIBLE FOR.

 8    Q.    DID YOU CONSULT WITH ANYBODY ELSE CONCERNING

 9    THIS AGREEMENT BETWEEN EAGAN AVENATTI AND YOURSELF TO

10    RAISE THE FEES SPLIT ON FRIVILOUS PARTIES?

11    A.    I CONSULTED WITH COUNSEL.

12    Q.    WHICH -- DOES THAT CULTIVATE THE SUBSTANCE OF

13    WHAT YOU TALKED ABOUT JUST A MOMENT AGO REGARDING

14    COUNSEL?

15    A.    I'M NOT GOING TO TELL YOU THE NAMES OF MY

16    LAWYERS THAT I CONSULTED WITH.

17    Q.    DIDN'T AN ATTORNEY DRAFT THE AGREEMENT, OTHER

18    THAN YOURSELF?

19    A.    I DON'T REMEMBER.

20    Q.    DID YOU DRAFT THE AGREEMENT?

21    A.    I DON'T REMEMBER.

22    Q.    HAS ANYONE, OTHER THAN YOU, SEEN THE AGREEMENT

23    SIGNED?

24    A.    I DON'T KNOW.

25    Q.    HAVE YOU SHOWN THE AGREEMENT TO ANYONE, OTHER
```

**Exhibit J**

USAO_00059493

00059535

```
 1    THAN YOURSELF?

 2    A.      I DON'T REMEMBER.  I'M SURE I HAVE.

 3    Q.      WHO WOULD THAT HAVE BEEN FOR SURE YOU HAVE?

 4    A.      SIR, I DON'T HAVE A SPECIFIC RECOLLECTION OF

 5    SHOWING THE AGREEMENT TO ANYONE ELSE, BUT I'M SURE THAT

 6    I DID.  THEREFORE, I CAN'T SPECULATE FOR YOU AS TO WHO I

 7    MIGHT HAVE SHOWN IT TO.

 8    Q.      SO HAVE YOU PROVIDED THE AGREEMENT TO THE

 9    RECEIVER WHO IS NOW IN CHARGE OF EAGAN AVENATTI?

10    A.      NO.  NOT YET.  I'M TRYING TO LOCATE IT.

11    Q.      DID YOU ENTER ANY AGREEMENT BEFORE OR AFTER MR.

12    FRANK SPLIT FROM THE FIRM?

13    A.      I DON'T REMEMBER.

14    Q.      ARE THERE ANY DRAFTS OF THIS AGREEMENT?

15    A.      I DON'T KNOW.

16    Q.      WAS THERE ANY NEGOTIATION THAT LED UP TO THE

17    AGREEMENT?

18    A.      I DON'T KNOW WHAT YOU MEAN BY THAT.

19    Q.      I MEAN, DID YOU -- MOST AGREEMENTS ARE

20    NEGOTIATED.  DID YOU HAVE A NEGOTIATION BETWEEN YOURSELF

21    ON BEHALF OF YOURSELF, OR ANYONE AT EAGAN AVENATTI

22    CONCERNING WHAT THE APPROPRIATE FEE SPLIT SHOULD BE ON

23    KIMBERLY CLARK?

24    A.      I DON'T REMEMBER.  I MAY HAVE.  I DON'T HAVE A

25    SPECIFIC RECOLLECTION AS I SIT HERE TODAY THAT I MAY
```

USAO_00059494
00059535

1     HAVE.

2     Q.     WAS THERE ANYBODY ELSE AT EAGAN AVENATTI THAT

3     HAD AN EQUITY INTEREST IN EAGAN AVENATTI AT THE TIME

4     THAT YOU NEGOTIATED -- STRIKE THAT.

5            THE TIME THAT YOU ENTERED INTO THIS AGREEMENT

6     BETWEEN EAGAN AVENATTI AND YOURSELF?

7     A.     I DON'T BELIEVE SO.

8     Q.     SO IS THERE ANYONE THAT YOU COULD HAVE

9     NEGOTIATED WITH CONCERNING THIS AGREEMENT?

10    A.     SIR, I CAN'T SPECULATE ON THAT.

11    Q.     WELL, IT'S NOT SPECULATION.  THERE IS NO ONE AT

12    EAGAN AVENATTI AUTHORIZED TO ENTER INTO AN AGREEMENT FOR

13    THE FEES OTHER THAN YOU; IS THAT CORRECT?

14           MR. HODGES:  LACKS FOUNDATION.

15           THE WITNESS:  SIR, IF YOU WANT TO MAKE THAT

16    ARGUMENT YOU'RE FREE TO MAKE THE ARGUMENT --

17    BY MR. STOLPER:

18    Q.     I'M NOT HERE -- I'M ASKING WHETHER OR NOT --

19    A.     OKAY.  LOOK, YOU'VE GOT TO STOP.  YOU KEEP

20    INTERRUPTING ME, AND I WOULD REALLY APPRECIATE IF YOU'D

21    STOP INTERRUPTING ME, BECAUSE IT'S NOT APPROPRIATE.  IF

22    THE JUDGE WAS ON THE BENCH, HE'D BE CAPSIZED AT LEAST

23    FOUR TIMES BY NOW.  SO PLEASE LET ME FINISH MY ANSWER.

24    I DON'T RECALL IF THERE WAS NEGOTIATION OR NOT.  AND

25    THEREFORE, I CAN'T RECALL WHO MIGHT HAVE NEGOTIATED THAT

**Exhibit J**

USAO_00059495
00059535

1    AGREEMENT --

2    Q.    WELL, DID YOU --

3    A.    -- BUT IT DOES NOT MATTER AT THE END OF THE DAY,

4    SIR, BECAUSE THE LAST I CHECKED, SIR, NEITHER YOU NOR

5    MR. FRANK HAD ANYTHING TO DO WITH THE RESULTS IN THAT

6    CASE BECAUSE, YOU MAY RECALL, YOU WERE TOO BUSY

7    CONSPIRING, TRYING TO STEAL CLIENTS FROM THE FIRM AT THE

8    TIME.

9         MR. HODGES:  MR. AVENATTI, LET'S JUST ANSWER THE

10   QUESTION.

11   BY MR. STOLPER:

12   Q.    ARE YOU FINISHED?

13   A.    ARE YOU?

14   Q.    NO.

15   A.    NEITHER AM I.  NEXT QUESTION.

16   Q.    OKAY.  DID YOU CONSULT WITH MICHAEL EAGAN

17   CONCERNING THE AGREEMENT TO DIVIDE UP THE KIMBERLY CLARK

18   FEES, EAGAN AVENATTI AND YOURSELF?

19   A.    I MAY HAVE, BUT I DO NOT BELIEVE -- I THINK HE

20   WAS DISASSOCIATED AT THE TIME, BUT I MAY BE WRONG ON THE

21   TIME FRAME.

22   Q.    SO YOUR BEST RECOLLECTION IS YOU MAY HAVE, BUT

23   YOU THINK HE WAS DISASSOCIATED; IS THAT CORRECT?

24   A.    LOOKS LIKE IT SOUNDS EXACTLY RIGHT.  SIR, I

25   DON'T RECALL HAVING A SPECIFIC DISCUSSION WITH MICHAEL

**Exhibit J**

USAO_00059496
00059535

1    EAGAN ABOUT THE SPLIT OF THE FEES.

2        Q.     DO YOU RECALL HAVING A GENERAL DISCUSSION WITH

3    MICHAEL EAGAN ABOUT THE DIVISION OF APPROPRIATE FEES

4    BETWEEN KIMBERLY CLARK AND YOU PERSONALLY?

5        A.     I MAY HAVE.  I DON'T HAVE A SPECIFIC

6    RECOLLECTION AS I SIT HERE RIGHT NOW.

7        Q.     DO YOU HAVE A GENERAL RECOLLECTION OF EVER

8    HAVING A DISCUSSION WITH MICHAEL EAGAN CONCERNING THE

9    APPROPRIATE SPLIT BETWEEN KIMBERLY CLARK AND YOU

10   INDIVIDUALLY?

11       A.     YES.

12       Q.     ARE THERE ANY OTHER CASES THAT EAGAN AVENATTI

13   HANDLED FOR WHICH THERE IS AN AGREEMENT SETTING FORTH A

14   SPLIT IN THE FIRM AND YOU PERSONALLY?

15       A.     I DON'T KNOW WHAT YOU MEAN, WHEN YOU SAY, "EAGAN

16   AVENATTI."

17       Q.     THE AGREEMENT THAT YOU'VE BEEN REFERRING TO HERE

18   TODAY THAT GOVERNS THE SPLIT BETWEEN EAGAN AVENATTI AND

19   YOURSELF CONCERNING KIMBERLY CLARK, WAS THAT WITH

20   RESPECT TO JUST EAGAN AVENATTI, OR WAS THAT A GENERAL

21   AGREEMENT TO COVER CASES-AT-LARGE?

22       A.     NO.  I THINK THAT AGREEMENT IS SPECIFIC TO

23   KIMBERLY CLARK.

24       Q.     ARE THERE ANY OTHER AGREEMENTS, LIKE THE

25   AGREEMENT FOR KIMBERLY CLARK, THAT APPLY TO ANY OTHER

Exhibit J

USAO_00059497
00059535

```
 1     CASES HANDLED BY EAGAN AVENATTI THAT DEAL WITH THE SPLIT

 2     BETWEEN FEES BETWEEN THE LAW FIRM AND YOU INDIVIDUALLY?

 3     A.     I DON'T KNOW WHAT YOU MEAN, BY "HANDLED BY EAGAN

 4     AVENATTI."  SO THERE MAY BE.

 5     Q.     OKAY.  PUTTING ASIDE WHETHER THEY WERE CASES

 6     HANDLED BY EAGAN AVENATTI, ARE THERE ANY OTHER

 7     AGREEMENTS THAT YOU'RE A PARTY TO THAT GOVERN THE

 8     INDIVIDUAL SPLIT ON ANY OTHER CASES, BETWEEN THE LAW

 9     FIRM, AND YOU, INDIVIDUALLY?

10     A.     YES.

11     Q.     OKAY.  FOR WHICH CASES?

12     A.     FOR ALL THE CASES.

13     Q.     SO EACH CASE THAT EAGAN AVENATTI BRINGS IN,

14     THERE IS A SEPARATE AGREEMENT GOVERNING THE SPLIT

15     BETWEEN YOU AND THE FIRM?

16     A.     NO.  THAT'S NOT WHAT YOU ASKED ME.  AND YOU SAID

17     IF THERE WAS ANY OTHER AGREEMENT, AND I'M SAYING, YEAH,

18     THERE'S AN AGREEMENT.

19     Q.     OKAY.  ARE THERE CASES THAT ARE CASE-SPECIFIC

20     GOVERNING THE SPLIT, BETWEEN THE LAW FIRM'S INTEREST AND

21     YOUR INDIVIDUAL INTEREST OTHER THAN KIMBERLY CLARK?

22     A.     NOT THAT I CAN RECALL.  THERE MAY BE, BUT I

23     DON'T THINK SO.

24     Q.     SO YOUR BEST RECOLLECTION AS YOU SIT HERE TODAY

25     IS ONLY KIMBERLY CLARK?
```

**Exhibit J**

USAO_00059498
00059535

```
 1     A.      MY TESTIMONY IS WHAT MY TESTIMONY IS.  I'M NOT

 2     GOING TO AGREE TO --

 3     Q.      WAS THIS AGREEMENT ENTERED INTO PRIOR OR

 4     SUBSEQUENT -- STRIKE.  NOT ENTERED INTO.  I MEAN,

 5     GOVERNING THE SPLIT BETWEEN KIMBERLY CLARK AND THE LAW,

 6     WAS THAT ENTERED INTO PRIOR OR SUBSEQUENT TO EAGAN

 7     AVENATTI GOING BANKRUPT?

 8     A.      OKAY.  WELL, FIRST OF ALL, EAGAN AVENATTI AIN'T

 9     GOING BANKRUPT.  SO THAT NEVER HAPPENED.  SO I'M NOT

10     GOING TO ANSWER YOUR QUESTION, BECAUSE THERE IS NO

11     PREDICATE.

12     Q.      OKAY.  WAS THE AGREEMENT GOVERNING FEE SPLIT

13     BETWEEN KIMBERLY CLARK AND EAGAN AVENATTI ENTERED INTO

14     PRIOR OR SUBSEQUENT TO BEING PETITIONED TO INVOLUNTARY

15     BANKRUPTCY TO BE FILED AGAINST EAGAN AVENATTI BY GERALD

16     COGAN IN FLORIDA?

17     A.      I THINK IT WAS BEFORE.

18     Q.      HOW LONG BEFORE?

19     A.      I DON'T REMEMBER.

20     Q.      MONTHS, WEEKS, DAYS?

21     A.      I DON'T REMEMBER.

22     Q.      DID YOU HAVE ANY INVOLVEMENT IN -- STRIKE THAT.

23             HOW LONG IS THE AGREEMENT GOVERNING THE FEE

24     SPLIT, BETWEEN EAGAN AVENATTI AND YOU INDIVIDUALLY

25     CONCERNING KIMBERLY CLARK?
```

Huntington Court Reporters & Transcription, Inc.            71
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777
Exhibit J

USAO_00059499
00059535

| 1 | A. | HOW LONG? |
|---|----|-----------|

1    A.    HOW LONG?

2    Q.    YES.  HOW LONG?

3    A.    I DON'T UNDERSTAND.

4    Q.    ONE PAGE?  TWO PAGES?  TEN PAGES?

5    A.    I DON'T REMEMBER.

6    Q.    WHEN YOU SAID YOU HAD BEEN LOOKING FOR THE

7    AGREEMENT TO HAND OVER TO THE RECEIVER, WHERE WERE YOU

8    LOOKING?

9    A.    IN MY FILES.

10   Q.    WHERE ARE THESE FILES?

11   A.    THE FILES THAT I'VE LOOKED AT ARE IN MY HOME.

12   Q.    YOU HAD EAGAN AVENATTI FILES IN YOUR HOME, OR

13   ARE THOSE PERSONAL FILES?

14   A.    NO, PERSONAL.

15   Q.    IS THERE ALSO A COPY OF THE AGREEMENT AS TO

16   EAGAN AVENATTI AND YOURSELF INDIVIDUALLY?  DID YOU ALSO

17   PLACE A COPY OF THE AGREEMENT IN THE EAGAN AVENATTI

18   FILES?

19   A.    I DON'T REMEMBER.

20   Q.    SO, YOU'RE NOT SURE?

21   A.    I DON'T REMEMBER.

22         THE REPORTER:  CAN I TAKE A BREAK, PLEASE?

23         MR. STOLPER:  YES, OF COURSE.

24         THE REPORTER:  THANK YOU.

25         MR. STOLPER:  IT'S 12:35.  WHY DON'T WE BREAK

**Exhibit J**

USAO_00059500
00059535

1      UNTIL 1:00, AND WE CAN GRAB A SANDWICH.   OKAY?

2              MR. HODGES:   OKAY.

3              (WHEREUPON, THE PROCEEDINGS RECESSED AT 12:35

4      P.M.)

5      ///

6   ///

7   ///

8   ///

9   ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

USAO_00059501
00059535

```
 1                    AFTERNOON SESSION

 2                      1:10 P.M.

 3         (THEREUPON, REPORTER WINIFRED MCCRAY-MOODY

 4         WAS REPLACED BY REPORTER ANN BONNETTE.)

 5               EXAMINATION (RESUMED)

 6   BY MR. STOLPER:

 7      Q    MR. AVENATTI, WE'RE BACK ON THE RECORD.

 8           YOU UNDERSTAND YOU ARE STILL UNDER OATH?

 9      A    YES, SIR.

10      Q    ARE YOU A CITIZEN OF ANY COUNTRY OTHER THAN THE

11   UNITED STATES?

12      A    ITALY.

13      Q    HOW LONG HAVE YOU BEEN AN ITALIAN CITIZEN?

14      A    I DON'T REMEMBER.

15      Q    WHEN DID YOU APPLY FOR THE ITALIAN PASSPORT?

16      A    I DON'T REMEMBER.

17      Q    WHEN YOU WERE A CHILD?

18      A    NO.  I WASN'T A CHILD.

19      Q    WERE YOU AN ADULT WHEN YOU APPLIED FOR THE

20   ITALIAN PASSPORT?

21      A    YES.

22      Q    WAS IT IN THE LAST FIVE YEARS?

23      A    I DON'T REMEMBER.

24      Q    ISN'T IT TRUE YOU HAD A DOCUMENT NOTARIZED IN

25   2015 AS PART OF YOUR APPLICATION FOR ITALIAN CITIZENSHIP?
```

**Exhibit J**

USAO_00059168
00059274

1      A    I DON'T REMEMBER.

2      Q    NEVER HAD ANY DOCUMENTS NOTARIZED TO GET ITALIAN

3  CITIZENSHIP?

4      A    SIR, IF YOU ASK ME A QUESTION AND I SAY I DON'T

5  REMEMBER, YOU CANNOT THEN PRESUME THAT THE ANSWER IS WHAT

6  YOU WANTED THE ANSWER TO BE, TO BEGIN WITH.  IT DOESN'T

7  WORK THAT WAY.

8          SO I AM GOING TO SAY I DON'T KNOW, BECAUSE IF I

9  DON'T REMEMBER, THEN I CAN'T AGREE WITH YOUR SUBSEQUENT

10  QUESTION.

11     Q    DO YOU RECALL WHAT PROMPTED YOU TO APPLY FOR

12  ITALIAN CITIZENSHIP?

13     A    NO.

14     Q    NO, YOU DON'T RECALL THAT?

15         MR. HODGES:  HE JUST DID, WHAT HE JUST SAID.

16  YOU SHOULDN'T BE ARGUING WITH HIM --

17  BY MR. STOLPER:

18     Q    DO YOU HAVE -- DO YOU HAVE AN ITALIAN PASSPORT?

19     A    YES.  I THINK I DO.  I THINK I STILL DO.

20     Q    IS IT A VALID PASSPORT?

21     A    IF I HAVE ONE, I'M ASSUMING IT'S VALID.  I DON'T

22  KNOW.

23     Q    WHEN WAS THE LAST TIME YOU SAW YOUR ITALIAN

24  PASSPORT?

25     A    IT'S BEEN A LONG TIME.  I DON'T KNOW.

USAO_00059169
00059274

1       Q    THE AGREEMENT BETWEEN EAGAN AVENATTI AND

2   YOURSELF THAT WE TALKED ABOUT BEFORE THE LUNCH BREAK, WHEN

3   DID YOU FIRST RECALL THAT YOU HAD HAD THAT AGREEMENT?

4       A    I HAVE NO IDEA.

5       Q    THE REASON I ASK IS YOU WERE ASKED ABOUT THAT BY

6   THE U.S. TRUSTEE IF THERE WAS AN AGREEMENT IN THE

7   BANKRUPTCY, AND YOU SAID THERE WASN'T.  AND I'M CURIOUS TO

8   KNOW WHAT CAUSED YOU TO RECOLLECT THAT YOU HAD THIS

9   AGREEMENT BETWEEN THE FIRM AND KIMBERLY-CLARK?

10      A    I MEAN, ARE YOU GIVING A CLOSING ARGUMENT, OR

11  ARE YOU ARGUING WITH BECAUSE --

12      Q    I AM ASKING YOU A QUESTION.  FIRST OF ALL --

13      A    I DON'T AGREE WITH -- I NEED TO HEAR THE

14  QUESTION.

15      Q    OKAY.  DO YOU RECALL DISCLOSING IN BANKRUPTCY

16  THAT YOU HAD AN AGREEMENT BETWEEN EAGAN AVENATTI AND

17  KIMBERLY-CLARK RELATED TO THE FEE --

18      A    I DON'T REMEMBER ONE WAY OR THE OTHER.

19      Q    OKAY.  SO IT'S POSSIBLE THAT YOU DID DISCLOSE

20  IT; IT'S POSSIBLE THAT YOU DIDN'T?

21           MR. HODGES:  ARGUMENTATIVE.

22           THE WITNESS:  I DON'T REMEMBER --

23  BY MR. STOLPER:

24      Q    OKAY.  IS THERE ANYTHING THAT HAPPENED SINCE THE

25  TIME THAT THE EAGAN AVENATTI BANKRUPTCY CASE WAS DISMISSED

Huntington Court Reporters & Transcription, Inc.          76
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777
Exhibit J

USAO_00059170
00059274

```
 1   THAT HAS CAUSED YOU TO RECOLLECT THE EXISTENCE OF THIS

 2   AGREEMENT BETWEEN EAGAN AVENATTI AND YOURSELF?

 3       A    SIR, I'M NOT A PSYCHOLOGIST OR A PSYCHIATRIST,

 4   NOR AM I A MEDICAL DOCTOR; SO I CAN'T TELL YOU MIGHT HAVE

 5   CAUSED ME TO REMEMBER SOMETHING AT ONE POINT IN TIME

 6   VERSUS ANOTHER.  I'M JUST NOT THAT I SMART.

 7       Q    DID YOU COME ACROSS IT?

 8       A    SIR, I DON'T REMEMBER WHAT CAUSED ME, QUOTE,

 9   UNQUOTE, TO RECOLLECT.  I'M GIVING YOU MY BEST TESTIMONY

10   AS I SIT HERE TODAY, WHICH IS WHAT I UNDERSTAND IS MY

11   OBLIGATION.

12       Q    SWITCH TOPICS FOR A QUICK MINUTE.

13            THE BANK ACCOUNTS THAT YOU CURRENTLY HAVE AT

14   CITY NATIONAL BANK AND AT BANK OF AMERICA, HOW MANY

15   ACCOUNTS DO YOU HAVE AT BANK OF AMERICA?

16            MR. HODGES:  ASKED AND ANSWERED.

17            THE WITNESS:  SIR, I DON'T REMEMBER HOW MANY

18   ACCOUNTS.

19   BY MR. STOLPER:

20       Q    MORE THAN TEN?

21       A    NO.

22       Q    LESS THAN FIVE?

23       A    YES.

24       Q    THE MONEY IN THE ACCOUNTS AT BANK OF AMERICA,

25   THE MONEY IN THE ACCOUNTS AT CITY NATIONAL BANK, THAT'S
```

USAO_00059171
00059274

1    ALL YOUR MONEY; CORRECT?

2        A    NO.  I DON'T THINK THAT'S ACCURATE.

3        Q    WHO ELSE'S MONEY IS IT?

4        A    WELL, FIRST OF ALL, SIR, THAT CALLS FOR A LEGAL

5    CONCLUSION; SO I CAN'T ANSWER THAT QUESTION.

6        Q    IF IT'S NOT YOUR MONEY, WHOSE IS IT?

7        A    WELL, MY SOON-TO-BE EX-WIFE COULD HAVE A CLAIM

8    TO THE MONEY.  MAY HAVE A CLAIM TO THE MONEY.  I THINK

9    DOES HAVE A CLAIM TO THE MONEY.  SO THAT WOULD BE ONE

10   PLACE TO START.

11           I DON'T KNOW.  THERE MAY BE OTHERS.  I WOULD

12   HAVE TO THINK ABOUT IT.

13       Q    OKAY.  SITTING HERE TODAY, CAN YOU THINK OF

14   ANYBODY ELSE WHOSE MONEY YOU ARE CURRENTLY HOLDING IN YOUR

15   ACCOUNTS AT EITHER CITY NATIONAL BANK OR BANK OF AMERICA?

16       A    THERE MAY BE.  I JUST CAN'T -- I DON'T RECALL

17   ANYBODY AS I SIT HERE TODAY, BUT DOES THAT NOT MEAN THERE

18   ISN'T ANYONE OR ANY ENTITY.

19       Q    SO SWITCHING TOPICS AGAIN, WHERE DOES THE

20   ESCALADE THAT YOU USE GET PARKED OVERNIGHT, GENERALLY?

21       A    I'M NOT GOING TO ANSWER THIS QUESTION.

22       Q    WHY NOT?

23       A    BECAUSE IT'S NOT RELEVANT.

24       Q    IT IS, BECAUSE WE'RE TRYING TO ESTABLISH THE

25   ESCALADE --

```
 1              MR. HODGES:  NO, COUNSEL.  YOU AND THE WITNESS

 2    DON'T GET TO ARGUE OVER IT'S RELEVANT OR NOT.  IF YOU

 3    THINK IT IS AND HE'S NOT ANSWERING, YOU CAN BRING IT TO

 4    SOMEONE ELSE'S ATTENTION.

 5              THE WITNESS:  YEAH.  IT'S ACTUALLY NOT RELEVANT.

 6    IT'S A LEASED CAR.  AND IF YOU DID THIS WORK, YOU WOULD

 7    KNOW YOU CAN'T SEIZE A LEASED CAR, COUNSEL.

 8    BY MR. STOLPER:

 9         Q    WHO PAID FOR THE LEASE?

10              MR. HODGES:  ASKED AND ANSWERED.  WE'VE

11    COVERED -- YOU KNOW WHAT, I WOULD LIKE TO SEE THE JUDGE.

12              MR. STOLPER:  THAT'S FINE.  BRING HIM OUT.

13              THE WITNESS:  I MEAN, I CAN'T BE ASKED THE SAME

14    QUESTION FIVE TIMES.

15              THE CLERK:  COME TO ORDER.  DEPARTMENT 44 ONCE

16    AGAIN IN SESSION.

17              THE COURT:  OKAY.  WE'RE ONCE AGAIN ON THE

18    RECORD IN THE JASON FRANK LAW VERSUS MICHAEL J. AVENATTI

19    CASE.  ALL THE SAME PEOPLE ARE PRESENT.

20              AND WHAT CAN I HELP YOU WITH?

21              MR. HODGES:  YOUR HONOR, THERE SEEMS BE TO AN

22    ISSUE WITH REPEATING THE SAME QUESTION OVER AND OVER AGAIN

23    THROUGHOUT THE COURSE OF THIS PROCEEDING AND THEN ARGUING

24    WITH THE WITNESS WITH RESPECT TO HIS ANSWERS.

25              IF HIS ANSWER IS "I DON'T KNOW" IT IS FOLLOWED
```

**Exhibit J**

USAO_00059173
00059274

1    BY SOME SORT OF A RHETORICAL QUESTION, APPARENTLY.  BUT

2    WITH RESPECT TO THE SPECIFIC ISSUE THAT CAUSED ME TO ASK

3    YOU TO COME OUT WE SEEM TO BE TALKING ABOUT A LEASED

4    VEHICLE.  AND THE LAST COUPLE OF QUESTIONS ARE WHERE IS IT

5    KEPT AND WHERE WAS IT PARKED LAST NIGHT?

6            NOW, I HAVE NO ISSUE WITH INQUIRING INTO A

7    VEHICLE THAT MR. AVENATTI MAY USE IN HIS OWNERSHIP

8    INTEREST, WHICH HE DOESN'T HAVE ONE, BUT WHY WE HAVE NOW

9    ASKED TWO TIMES WHERE IT IS PARKED SEEMS TO BE A LITTLE

10   BIT HARASSING.

11           THE COURT:  OKAY.  SO ASKED AND ANSWERED IS A

12   VALID OBJECTION.  SO IS ARGUMENTATIVE.

13           BUT AM I MISSING SOMETHING?  I MEAN HE ASKED AND

14   I THINK -- WHAT WAS THE ANSWER THE FIRST TIME?

15           MR. STOLPER:  THERE WAS NONE.

16           THE COURT:  WELL --

17           MR. HODGES:  WELL, THE ANSWER WAS I DON'T -- FOR

18   THE RECORD, YOUR HONOR, FOR THE BENEFIT OF YOUR HONOR, THE

19   QUESTION WAS WHERE IS THE QUESTION NOW, AND THE ANSWER WAS

20   I DON'T KNOW.  AND THAT'S BECAUSE MR. AVENATTI WAS DROPPED

21   OFF, AND HE DOESN'T KNOW WHERE THE DRIVER HAPPENED TO TAKE

22   THE VEHICLE.

23           THE COURT:  AND THEN WAS THE EXACT SAME QUESTION

24   ASKED AGAIN?

25           MR. HODGES:  NO.  THE QUESTION OF WHERE IT IS

Exhibit J

USAO_00059174
00059274

```
 1   KEPT WAS ASKED TWICE, AND THEN MR. AVENATTI REFUSED TO

 2   ANSWER THE THIRD TIME AS TO WHERE IT IS PARKED.

 3           THE COURT:  YOU ARE TELLING ME DIFFERENT

 4   QUESTIONS.

 5           MR. HODGES:  KEPT AND PARKED --

 6           THE COURT:  WHY DON'T -- HAVE THE REPORTER MARK

 7   THE QUESTION AND ANSWER, AND I WILL JUST LISTEN TO THEM

 8   AND RULE.

 9           (THE RECORD WAS READ AS FOLLOWS:

10           "Q    SO SWITCHING TOPICS AGAIN, WHERE DOES

11       THE  ESCALADE THAT YOU USE GET PARKED OVERNIGHT,

12       GENERALLY?

13           "A    I'M NOT GOING TO ANSWER THIS QUESTION.

14           "Q    WHY NOT?

15           "A    BECAUSE IT'S NOT RELEVANT.")

16           THE COURT:  OKAY.  AND THAT WAS -- WAS THAT

17   OBJECTION FROM COUNSEL OR DID MR. AVENATTI SAY THAT?

18           COURT REPORTER:   MR. AVENATTI SAID THAT.

19           THE COURT:  OKAY.  SO ONE THING THAT HAS TO

20   HAPPEN IS IF -- MR. AVENATTI, IF YOU ARE REPRESENTED BY

21   COUNSEL, YOU CAN'T INTERPOSE THE OBJECTIONS.

22           THE WITNESS:  AND I HAVEN'T -- YOUR HONOR, TO BE

23   CLEAR, I GENERALLY HAVE NOT BEEN INTERPOSING THE

24   OBJECTIONS.  AFTER THAT, MY COUNSEL THEN STOOD AND ASKED

25   TO SEE YOUR HONOR.
```

```
 1              THIS IS A LEASED VEHICLE.  IT'S NOT EVEN IN MY

 2    NAME.  IT'S A LEASED VEHICLE.  SO IT CAN'T BE SEIZED.

 3              THE COURT:  SO -- HOLD ON.  HOLD ON.

 4              SO IS THE ARGUMENT THAT IT'S NOT RELEVANT

 5    BECAUSE IT'S LEASED; RIGHT?

 6              MR. HODGES:  THAT IS CERTAINLY THE RELEVANCY

 7    ASPECT OF IT, YES.

 8              THE COURT:  DO YOU AGREE WITH YOUR CLIENT'S

 9    OBJECTION ON RELEVANCE?

10              MR. HODGES:  YES, YOUR HONOR.

11              THE COURT:  OKAY.  AND SO WHAT IS YOUR ARGUMENT

12    AS WHY IT IS RELEVANT?

13              MR. STOLPER:  I HAVE THE PAYMENT FOR THE LEASED

14    VEHICLE, YOUR HONOR, WHICH IS FROM MR. AVENATTI'S LAW

15    FIRM.  IT HAS BEEN PUT INTO JUDY REGNIER'S NAME --

16              THE COURT:  WITHOUT TELLING ME ALL THE

17    DETAILS --

18              MR. STOLPER:  SURE.

19              THE COURT:  -- IN OTHER WORDS, YOUR ARGUMENT IS

20    THAT YOU DON'T BELIEVE HIS ANSWER?

21              MR. STOLPER:  CORRECT.  I'M ATTEMPTING TO

22    EXPLORE WHETHER OR NOT IT IS TRULY HIS VEHICLE OR WHETHER

23    IT IS TRULY IN SOMEBODY ELSE'S NAME.

24              IT IS CLEARLY LEASED, YOUR HONOR, BUT THAT

25    DOESN'T MEAN THERE IS NO RESIDUAL ON IT.
```

USAO_00059176

00059274

```
 1            THE COURT:  HOLD ON A SECOND.

 2            MR. HODGES:  I'M SORRY.

 3            THE COURT:  AND HE'S ENTITLED TO DO THAT; IN

 4   OTHER WORDS, HE DOESN'T NEED TO ACCEPT AT FACE VALUE THE

 5   WITNESS'S ANSWERS.  I'M NOT MAKING ANY RULING AS TO WHO IS

 6   TELLING THE TRUTH OR WHO IS NOT.  BUT IF HE'S GOT A

 7   GOOD-FAITH BASIS FOR ASKING FOLLOW-UP QUESTIONS HE MAY DO

 8   THAT.

 9            NOW, THAT'S NOT THE SAME AS ASKING THE SAME

10   QUESTION OVER AND OVER, WHICH WAS WHAT YOU TOLD ME WAS THE

11   BASIS FOR THE OBJECTION --

12            MR. HODGES:  WELL, IT -- I'M SORRY.

13            THE COURT:  OR IT IS ALSO NOT ARGUMENTATIVE,

14   DEPENDING ON HOW IT IS DONE.

15            GO AHEAD.

16            MR. HODGES:  THE ASKED AND ANSWERED WAS ONE

17   ASPECT.  WHERE THE CAR ASK IS PARKED, I WOULD LOVE AN

18   OFFER OF PROOF AS THAT TALKS ABOUT OWNERSHIP, INTEREST,

19   CHALLENGING THE WITNESS.

20            IF HE HAS A DOCUMENT THAT SAYS SOMEBODY ELSE

21   OWNS IT OR IF THE PAYMENT IS MADE, CAN WE DO THAT RATHER

22   THAN WASTE TIME AND THEN ARGUE WE NEED MORE TIME WHEN THE

23   QUESTION IS WHERE IS THE CAR PARKED.  THAT'S THE QUESTION

24   AND THE RELEVANCY.

25            NOW, IF THERE IS AN OFFER FROM COUNSEL AS TO HOW
```

**Exhibit J**

USAO_00059177
00059274

 1 | THAT SHOWS OWNERSHIP OR PAYMENTS --

 2 |         THE COURT:  OKAY.  I THINK -- WELL, TWO THINGS.

 3 | ONE, I'M NOT SURE WHY THAT'S THE PROBLEM TO ANSWER THE

 4 | QUESTION.

 5 |         BUT SECOND OF ALL, LET ME ASK YOU, COUNSEL, SO

 6 | IF THERE IS NO DISAGREEMENT THAT MR. AVENATTI HAS THE

 7 | POSSESSION OF IT AND THE QUESTION IS WHETHER IT'S LEASED

 8 | OR OWNED, WHY IS THE QUESTION OF WHERE IT'S PARKED

 9 | RELEVANT?

10 |         MR. STOLPER:  YOUR HONOR, IF MR. AVENATTI IS

11 | WILLING TO STIPULATE HE HAS EXCLUSIVE POSSESSION OF THE

12 | VEHICLE, I'M DONE WITH THIS LINE.  I'M FINE WITH THAT.

13 |         THE COURT:  IS HE WILLING TO STIPULATE?

14 |         MR. HODGES:  ABSOLUTELY NOT.  HE DOESN'T AND

15 | THAT WASN'T HIS TESTIMONY.  TESTIMONY IS IT'S NOT HIS

16 | VEHICLE.

17 |         THE COURT:  WELL, SO WHAT IS HE GOING TO SAY

18 | ABOUT THAT?

19 |         MR. HODGES:  HE'S LEASING THE VEHICLE.

20 |         THE WITNESS:  ACTUALLY. I'M NOT LICENSING THE

21 | VEHICLE.

22 |         MR. HODGES:  WELL, THAT'S TRUE.

23 |         THE COURT:  DON'T ARGUE WITH EACH OTHER.

24 |         THE WITNESS:  I DON'T WANT YOU TO BE UNDER A

25 | MISCONCEPTION; SO I WAS MAKING SURE THAT YOU UNDERSTOOD

**Exhibit J**

USAO_00059178
00059274

1   THE TRUTH.

2         THE COURT:  I APPRECIATE THAT.

3         BUT IF -- SO YOU HAVE JUST TOLD ME THAT IT IS AN

4   ISSUE WHERE WHO HAS POSSESSION OF THE AUTOMOBILE --

5         THE WITNESS:  HOW DO YOU SEIZE A LEASED VEHICLE?

6         THE COURT:  MR. AVENATTI, IT MUST BE HARD WHEN

7   YOU ARE A LAWYER --

8         THE WITNESS:  I JUST DON'T UNDERSTAND THAT.

9         MR. HODGES:  I DON'T -- HONESTLY, I DON'T

10   EITHER, WHICH IS --

11         THE COURT:  HOLD ON.  HOLD ON.  HE IS LEASING

12   THE VEHICLE, OKAY, AND THE OTHER SIDE, JUDGMENT CREDITOR,

13   THINKS HE OWNS THE VEHICLE.

14         THE WITNESS:  NO.

15         THE COURT:  SO THEY ARE CONDUCTING DISCOVERY TO

16   DETERMINE WHETHER OR NOT HE OWNS THE VEHICLE.

17         NOW, IF HE IS SAYING, WELL, I LEASE IT AND I

18   PARK IT AT MY HOUSE SO IT'S NOT RELEVANT AS TO WHERE

19   EXACTLY IT IS PARKED, I UNDERSTAND THAT.  BUT IF HE'S

20   SAYING I DON'T LEASE IT AND SOMEBODY ELSE -- I LEASE IT

21   AND SOMEBODY ELSE DRIVES IT, I DON'T EVEN UNDERSTAND THAT.

22         MR. HODGES:  YOUR HONOR, IF WOULD YOU LIKE TO

23   ASK MR. AVENATTI ABOUT WHO OWNS THIS VEHICLE, WE CAN

24   PUT --

25         THE WITNESS:  YOUR HONOR, MR. STOLPER DOES NOT

**Exhibit J**

USAO_00059179
00059274

1   DISPUTE THAT THE VEHICLE IS LEASED.  THE VEHICLE IS

2   LEASED.  YOU CAN LOOK UP THE REGISTRATION ON THE VEHICLE.

3   THERE IS NO DISPUTE THAT THE VEHICLE IS LEASED.

4   THEREFORE, THERE IS NOTHING TO SEIZE REGARDLESS OF WHO

5   LEASES IT.  HOWEVER, AS I HAVE ALREADY TESTIFIED, YOUR

6   HONOR, THE VEHICLE IS LEASED BY JUDY REGNIER, WHO IS AN

7   ASSISTANT OF MINE.  IT WAS LEASED MANY YEARS AGO.  I DON'T

8   EVEN KNOW HOW MANY MONTHS ARE LEFT ON THE LEASE.  I DON'T

9   KNOW IF IT WAS A PREPAID LEASE OR A MONTH-TO- MONTH LEASE.

10  I JUST DON'T REMEMBER.

11          BUT, IN ANY EVENT, THE VEHICLE IS LEASED AND

12  IT'S NOT IN MY NAME.  SO I DON'T UNDERSTAND.  THEY HAVE NO

13  RIGHT TO GO SEIZE THE VEHICLE.  YOU CAN'T GO SEIZE A

14  LEASED VEHICLE, GENERALLY, BASED ON MY KNOWLEDGE.  BUT

15  MAYBE I AM WRONG ABOUT THIS.

16          BUT I DON'T KNOW WHY WE'RE WASTING THE VALUABLE

17  TIME OF EVERYBODY HERE, INCLUDING YOUR HONOR, OVER A

18  LEASED VEHICLE.

19          THE COURT:  DO YOU KNOW WHO DRIVES THE VEHICLE?

20          THE WITNESS:  YES.  MY DRIVER DRIVES THE VEHICLE

21  ON A REGULAR BASIS, OR I DRIVE THE VEHICLE.

22          THE COURT:  AND COUNSEL, YOU HELD UP A PIECE OF

23  PAPER THAT YOU SAID IS EVIDENCE THAT IN FACT IT'S NOT A

24  LEASED VEHICLE, THAT IT'S OWNED BY MR. AVENATTI.

25          TELL ME WHAT YOU GOT.

Huntington Court Reporters & Transcription, Inc.          86
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777
Exhibit J

USAO_00059180
00059274

```
 1              MR. STOLPER:  SO WHAT I HAVE, YOUR HONOR, IS A

 2   BANK RECORD FROM EAGAN AVENATTI FROM 2014 SHOWING A

 3   $95,200 PAYMENT, A WIRE, TO UAG SOUTH BAY, LLC.  WE PULLED

 4   UP UAG SOUTH BAY, LLC, AND IT IS PENSKE CADILLAC.  SO I'M

 5   NOT SURE THE VEHICLE IS LEASED.  MR. AVENATTI HAS

 6   TESTIFIED TO THAT.  I DON'T KNOW WHETHER HE'S TESTIFYING

 7   TRUTHFULLY OR NOT, BUT IT IS CLEAR -- OR AT LEAST I THINK

 8   I HAVE SUBSTANTIAL EVIDENCE -- THAT THIS VEHICLE HAS BEEN

 9   PARKED IN MS. REGNIER'S NAME WHEN IT IS IN TRUTH OR IN

10   FACT EITHER PROPERTY OF MR. AVENATTI OR OF HIS LAW FIRM.

11   THAT'S WHAT I'M TRYING TO ESTABLISH.  IF IT TURNS OUT I

12   CAN'T SEIZE IT, SO IT BE.

13              THE COURT:  HOLD ON.  JUST NOW, YOU USED

14   "PARKED" IN A DIFFERENT -- YOU SAID PARKED --

15              MR. STOLPER:  YOU'RE RIGHT.  THAT'S NOT -- WHAT

16   I WAS TRYING TO ESTABLISH WAS WHO FIT, YOU KNOW --

17              THE COURT:  I GET WHAT YOU'RE SAYING, IN A

18   SENSE.  WHAT I DON'T UNDERSTAND IS IF MR. AVENATTI

19   TESTIFIED THAT HE USES THE CAR, HIS DRIVER DRIVES IT, WHY

20   DOES THE LOCATION OF WHERE IS WAS ACTUALLY PARKED LAST

21   NIGHT MATTER -- OR IS USUALLY PARKED?

22              MR. STOLPER:  SO THE ANSWER TO YOUR HONOR'S

23   QUESTION WAS HE IS BEING MORE FORTHRIGHT WITH YOUR HONOR

24   THAN HE WAS BEFORE.  THE REASON I WAS GETTING INTO THE

25   QUESTION OF WHERE IS THE CAR IS BECAUSE --
```

**Exhibit J**

USAO_00059181

00059274

```
 1              THE COURT:  CAN YOU LEAVE THIS SUBJECT BEHIND

 2   THEN?  DOES THERE NEED TO BE ANYMORE QUESTIONS ON THIS

 3   PARTICULAR POINT?

 4              MR. STOLPER:  THE ONLY QUESTIONS THAT I HAVE --

 5   THE ONLY QUESTIONS I HAVE FOR MR. AVENATTI IS ESTABLISHING

 6   THAT THE CAR IS EXCLUSIVELY USED BY HIM.  IF IT'S NOT

 7   EXCLUSIVELY USED BY HIM AND USED BY SOMEBODY ELSE, I WOULD

 8   LIKE TO KNOW WHO THAT IS AND THEN DECIDE WHAT WE'RE GOING

 9   TO DO NEXT.

10              MR. HODGES:  WELL, YOUR HONOR, THAT'S BEEN

11   COVERED.

12              THE COURT:  MR. AVENATTI, DOES ANYBODY ELSE GET

13   DRIVEN IN THE CAR, TO YOUR KNOWLEDGE?

14              THE WITNESS:  YES, YOUR HONOR.  OTHERS GET

15   DRIVEN IN THE CAR.  IN ADDITION, THE PAYMENT THAT COUNSEL

16   REFERENCED IN 2014, THIS ESCALADE IS A 2016 OR '17

17   ESCALADE.

18              HOW DO YOU MAKE A PAYMENT TWO OR THREE YEARS

19   AHEAD OF THE CAR ACTUALLY BEING MADE?  IT'S NOT -- DOESN'T

20   RELATE TO THIS ESCALADE, THIS PAYMENT THAT COUNSEL HAS

21   POINTED TO.  THE CAR IS LEASED.

22              THE COURT:  OKAY.  ALL RIGHT.

23              DO YOU WANT TO ASK ANYMORE QUESTIONS ON THIS

24   CAR?

25              MR. STOLPER:  THE ONLY QUESTION I WOULD LIKE TO
```

Exhibit J

USAO_00059182
00059274

```
1    ASK, WHEN YOU SAID OTHER PEOPLE USE IT, ARE THOSE OTHER

2    PEOPLE PEOPLE THAT WORK FOR MR. AVENATTI OR IS -- THE

3    QUESTION IS -- IT'S A QUESTION OF POSSESSION, YOUR HONOR.

4    WHO HAS POSSESSION OF THE CAR?

5           AND I'M NOT TRYING TO BE -- I'M REALLY NOT

6    TRYING TO BE CLEVER HERE.  I JUST WANT A SIMPLE ANSWER:

7    IS IT HIS CAR?  IF HE LOANS IT OUT TO OTHER PEOPLE FROM

8    TIME TO TIME --

9           THE COURT:  YOU DON'T -- YOU DON'T NEED TO

10   EXPLAIN EVERYTHING IN SUCH DETAIL.

11          DO YOU HAVE ANY BASIS OR ANY EVIDENCE THAT THIS

12   ESCALADE IS -- THAT MR. AVENATTI IS NOT TELLING THE TRUTH

13   ABOUT WHETHER THE ESCALADE THAT WE'RE TALKING ABOUT NOW IS

14   A 2016 ESCALADE AND NOT THE ONE THAT'S REFLECTED IN THE

15   PAPERWORK YOU HAVE.

16          MR. STOLPER:  I HAVE NO EVIDENCE OF THAT, YOUR

17   HONOR, BUT NOW I WOULD LIKE TO KNOW WHO PAID FOR THIS

18   PARTICULAR ESCALADE, FOR THE SAME REASONS THAT I WANT TO

19   KNOW ABOUT THIS ONE.

20          THE WITNESS:  FIVE YEARS --

21          MR. HODGES:  THE 2014 --

22          MR. STOLPER:  I'M SORRY.  THE CAR THAT MR.

23   AVENATTI CURRENTLY DRIVES THAT HAS BEEN PUT IN THE NAME OF

24   HIS OFFICE ASSISTANT.  I'M CURIOUS TO KNOW WHO ACTUALLY

25   PAYS FOR THAT CAR, WHETHER IT'S MR. AVENATTI OR MS.
```

Exhibit J

USAO_00059183
00059274

1   REGNIER --

2         THE COURT:  YOU MAY ASK THAT QUESTION.

3         MR. HODGES:  AND WE HAVE NOW COME FULL CIRCLE

4   AND WE ARE BACK ON THE HAMPSTER WHEEL BECAUSE MR. AVENATTI

5   SAID I DON'T KNOW, IT'S NOT LEASED BY HIM.  AND THEN

6   COUNSEL WANTS TO SAY, WELL, THEN I NEED TO KNOW WHETHER HE

7   HAS EXCLUSIVE USE WHEN HE KNOWS THE ANSWER ALREADY BECAUSE

8   HE ASKED EARLIER AND LEARNED THAT MR. AVENATTI GOT DROPPED

9   OFF BECAUSE HE PAYS A DRIVER.

10        THEN THE COUNSEL ASKED, WELL, HOW MUCH DO YOU

11  PAY YOUR DRIVER?  HE SAID, "I DON'T KNOW.  THREE, FOUR,

12  FIVE THOUSAND DOLLARS."

13        SO COUNSEL HAS HAD EVERY SINGLE QUESTION THAT HE

14  HAS NOW JUST POSITED ANSWERED.  THAT'S ASKED AND ANSWERED,

15  AND IT'S GETTING ARGUMENTATIVE.

16        AND I CAN'T BELIEVE CANDIDLY THAT IN A FOUR-PLUS

17  MILLION DOLLAR JUDGMENT WE ARE SITTING HERE TALKING ABOUT

18  A LEASED VEHICLE THAT HAS NO RELEVANCY TO THE ABILITY TO

19  COLLECT A DEBT.

20        THE COURT:  OKAY.  IS THERE A SPECIFIC QUESTION

21  YOU WANT ME TO RULE ON?

22        MR. STOLPER:  THE QUESTION THAT I ASKED -- THE

23  ONLY QUESTION THAT I ACTUALLY WANT ASKED IS, DOES HE

24  MAINTAIN EXCLUSIVE POSSESSION OF THE VEHICLE, AND IF HE

25  DOESN'T, WHO ELSE DOES HE SHARE POSSESSION WITH?  THOSE

Exhibit J

USAO_00059184
00059274

1   ARE THE QUESTIONS I WOULD LIKE --

2          MR. HODGES:  THAT HAS BEEN ASKED AND THAT HAS

3   BEEN ANSWERED, EVIDENCE OF THE FACT THAT HE GOT DROPPED

4   OFF.

5          THE COURT:  THE QUESTION OF EXCLUSIVE

6   POSSESSION, I THINK, HAS BEEN ANSWERED.

7          AND THE QUESTION OF WHO ELSE DOES HE SHARE

8   POSSESSION WITH, YOU MAY ANSWER THAT QUESTION.

9          THE WITNESS:  JUDY REGNIER AND JAMES CAMERON,

10  AND OTHERS FROM TIME TO TIME THAT HAVE POSSESSION OF THE

11  VEHICLE IN THE NORMAL COURSE OF BUSINESS.

12         THE COURT:  AND WHAT IS THEIR RELATIONSHIP TO

13  YOU?

14         THE WITNESS:  GENERALLY ATTORNEYS OR PEOPLE THAT

15  WORK WITH ME IN THE COURSE OF THE LAW FIRM.

16         THE COURT:  ANYTHING ELSE?

17         MR. STOLPER:  NO, YOUR HONOR, THANK YOU.

18         MR. HODGES:  THANKS, YOUR HONOR.

19         THE COURT:  GOOD LUCK.

20         (JUDGE LEAVES BENCH.)

21  BY MR. STOLPER:

22     Q   MR. AVENATTI, YOU RECEIVED AN ATTORNEY FEE AWARD

23  TODAY IN THE BECHARD MATTER?

24     A   YES, THAT'S CORRECT.

25     Q   AND HOW MUCH WAS THAT AWARD FOR?

Exhibit J

USAO_00059185
00059274

```
 1        A    $12,500.

 2        Q    AND THAT'S DUE TO YOU?

 3        A    I DON'T KNOW, FRANKLY.  I THINK IT IS DUE TO ME.

 4        Q    INDIVIDUALLY?

 5        A    I THINK THAT'S TRUE, YES.

 6        Q    DO YOU HAVE ANY INTEREST IN THE X-LAW GROUP?

 7        A    I'M SORRY?

 8        Q    DO YOU HAVE ANY OWNERSHIP INTEREST IN THE X-LAW

 9   GROUP?

10        A    NO.

11        Q    DO YOU HAVE ANY EXPECTATION OF PAYMENT FROM THE

12   X-LAW GROUP FOR ANY MATTER?

13        A    NOT THAT I CAN THINK OF AS I SIT HERE TODAY.

14        Q    HAVE YOU LOANED MONEY TO THE X-LAW GROUP?

15        A    NO.

16        Q    HAS THE X-LAW GROUP LOANED MONEY TO YOU?

17        A    NO.

18        Q    HAS THE X-LAW GROUP LOANED MONEY TO ANY ENTITY

19   THAT YOU INDIRECTLY OR DIRECTLY CONTROL?

20        A    NOT THAT I CAN THINK OF.

21        Q    HAVE YOU LOANED MONEY TO ANY ENTITY THAT THE

22   X-LAW GROUP DIRECTLY OR INDIRECTLY CONTROLS?

23        A    NOT THAT I CAN THINK OF.

24        Q    IS THE X-LAW GROUP AN INVESTOR IN ANY ENTITY

25   THAT YOU DIRECTLY OR INDIRECTLY CONTROL?
```

**Exhibit J**

USAO_00059186
00059274

```
 1              MR. HODGES:  FOUNDATION.

 2              THE WITNESS:  NOT THAT I CAN THINK OF.

 3   BY MR. STOLPER:

 4       Q    ARE YOU AN INVESTOR IN ANY ENTITY THAT THE X-LAW

 5   GROUP DIRECTLY OR INDIRECTLY CONTROLS?

 6              MR. HODGES:  FOUNDATION.

 7              THE WITNESS:  NOT THAT I CAN THINK OF.

 8   BY MR. STOLPER:

 9       Q    ARE YOU OWED ANY MONEY FROM SILIPPO MARCHINO?

10   AND I APOLOGIZE FOR THE PRONUNCIATION.

11              DO YOU KNOW WHO I AM TALKING ABOUT?

12       A    NOT THAT I CAN THINK OF.

13       Q    DO YOU KNOW TO WHOM I AM REFERRING?

14       A    YES.

15       Q    HAVE YOU LOANED ANY MONEY TO MR. MARCHINO?

16       A    IT IS MARCHINO.

17       Q    MARCHINO.  THANK YOU.

18       A    NOT THAT I CAN THINK OF.

19       Q    WHAT IS YOUR INTEREST, IF ANY, IN DESERT

20   HARVEST?

21       A    I HAVE NO INTEREST.

22       Q    DO YOU HAVE ANY INTEREST IN ANY ENTITY THAT IS

23   NAMED DESERT HARVEST, REGARDLESS OF WHETHER IT'S LLC,

24   DESERT HARVEST I, DESERT HARVEST II, ANY ENTITY THAT HAS

25   THE WORDS DESERT AND HARVEST IN ITS TITLE?
```

**Exhibit J**

USAO_00059187
00059274

1       A    NO.

2            MR. HODGES:  COMPOUND.  OBJECTION.  FOUNDATION.

3  BY MR. STOLPER:

4       Q    HAVE YOU EVER HAD ANY INTEREST IN DESERT

5  HARVEST, ANY ENTITY THAT HAS NAME DESERT HARVEST IN IT?

6       A    NO.

7       Q    HAVE YOU EVER HAD ANY INDIRECT INTEREST IN

8  ANY ENTITY NAMED -- THAT HAS THE NAME DESERT HARVEST IN

9  IT?

10      A    I DON'T KNOW WHAT YOU MEAN BY THAT.

11      Q    HAVE YOU EVER OWNED AN ENTITY OR HAD CONTROL OF

12 AN ENTITY THAT HAD AN INTEREST IN ANY ENTITY THAT HAD THE

13 WORDS "DESERT HARVEST" IN ITS NAME?

14      A    NO.

15      Q    DO YOU HAVE ANY DIRECT OR INDIRECT INTEREST IN

16 ANY REAL PROPERTY OUTSIDE OF THE LEASE THAT YOU HAVE

17 DESCRIBED OF YOUR APARTMENT?

18      A    NO.

19           MR. HODGES:  COMPOUND.

20 BY MR. STOLPER:

21      Q    WHO IS MARIE SCOTT?

22      A    I'M SORRY?

23      Q    MARIE SCOTT, M-A-R-I-E S-C-O-T-T?

24      A    MARIE SCOTT WORKS FOR ME.

25      Q    SAY AGAIN?

**Exhibit J**

USAO_00059188
00059274

```
 1        A    MARIE SCOTT WORKS FOR ME.

 2        Q    WHAT DOES SHE DO?

 3        A    SHE DOES VARIOUS CLERICAL FUNCTIONS.  THINGS OF

 4   THAT NATURE.

 5        Q    DOES SHE WORK IN YOUR OFFICE?

 6        A    YES.

 7        Q    DOES SHE WORK FROM HOME?

 8        A    YES.

 9        Q    WHO PAYS MARIE SCOTT'S SALARY?

10        A    EITHER ME OR ONE OF MY COMPANIES.

11        Q    WHICH IS IT?  YOU OR ONE OF YOUR COMPANIES?

12        A    I DON'T KNOW.

13        Q    SO DOES SHE WORK FOR YOU OR DOES SHE WORK FOR

14   ONE OF THE ENTITIES, OR DO YOU KNOW?

15        A    I DON'T KNOW.

16        Q    IS SHE A W-2 EMPLOYEE?

17        A    I THINK SHE IS.

18        Q    WHEN YOU SAY MARIE SCOTT DOES ADMINISTRATIVE

19   WORK, WHAT DOES THAT MEAN?  WHAT ARE HER ACTUAL JOB

20   DUTIES?

21        A    ADMINISTRATIVE WORK.

22        Q    WITH RESPECT TO LEGAL WORK THAT'S BEING

23   PERFORMED?

24        A    I'M SORRY?

25        Q    WITH RESPECT TO LEGAL WORK THAT'S BEING
```

**Exhibit J**

USAO_00059189
00059274

1    PERFORMED?

2        A    SOME LEGAL WORK, SOME POLITICAL WORK, SOME OTHER

3    WORK.

4        Q    HOW LONG HAS MS. SCOTT WORKED FOR YOU DIRECTLY

5    OR INDIRECTLY?

6        A    I DON'T KNOW.  EIGHTEEN MONTHS, MAYBE.

7        Q    WHAT IS MS. SCOTT'S ROLE IN DESERT HARVEST, IF

8    ANY?

9        A    NONE.

10       Q    TO YOUR KNOWLEDGE, DOES MS. SCOTT HAVE ANY

11   DIRECT OR INDIRECT INTEREST IN DESERT HARVEST?

12       A    SHE HAS NONE.

13       Q    AS I UNDERSTAND IT, YOUR WORK FOR DESERT HARVEST

14   WAS THAT OF AN ATTORNEY?  IS THAT YOUR TESTIMONY?

15       A    ATTORNEY AND ADVISOR.

16       Q    ATTORNEY AND ADVISOR.

17            BEYOND BEING AN ATTORNEY AND ADVISOR, DID YOU

18   RECEIVE ANY EQUITY INTEREST IN DESERT HARVEST, IN ANY WAY,

19   SHAPE, OR FORM?

20       A    NO.

21       Q    WHAT IS AUGUSTUS LLP?

22       A    IT'S A LIMITED LIABILITY PARTNER.

23       Q    WHO OWNS AUGUSTUS LLP?

24       A    I'M NOT AT LIBERTY TO DISCLOSE THAT.  IT'S NOT

25   ME.

Huntington Court Reporters & Transcription, Inc.                96
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777
Exhibit J

USAO_00059190
00059274

```
 1        Q    DO YOU HAVE ANY DIRECT OR INDIRECT INTEREST IN
 2   AUGUSTUS, LLP.
 3        A    NO.
 4        Q    WHY ARE YOU NOT AT LIBERTY TO DISCLOSE WHO OWNS
 5   IT?
 6        A    BECAUSE IT WAS ESTABLISHED FOR A CLIENT.
 7        Q    WHEN WAS IT ESTABLISHED?
 8        A    I DON'T REMEMBER.
 9        Q    WAS IT ESTABLISHED BY YOU INDIVIDUALLY OR BY ONE
10   OF YOUR LAW FIRMS FOR A CLIENT?
11        A    I DON'T REMEMBER.
12        Q    TO YOUR KNOWLEDGE, DOES AUGUSTUS LLP HAVE ANY
13   ASSETS?
14             MR. HODGES:  OBJECT TO THE EXTENT THAT CALLS FOR
15   ATTORNEY-CLIENT PRIVILEGE.
16             YOU CAN ANSWER THAT "YES" OR "NO" AS TO WHETHER
17   YOU KNOW.
18             THE WITNESS:  I DON'T KNOW HOW I WOULD ANSWER
19   THAT WITHOUT RELYING ON THE INFORMATION FROM MY CLIENT.
20   BY MR. STOLPER:
21        Q    WHETHER OR NOT AUGUSTUS HAS ASSETS IS
22   ATTORNEY-CLIENT PRIVILEGE?
23             MR. HODGES:  OF COURSE.
24             THE WITNESS:  SURE.
25
```

Huntington Court Reporters & Transcription, Inc.          97
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777
**Exhibit J**

USAO_00059191
00059274

```
1    BY MR. STOLPER:

2        Q    I'M NOT ASKING FOR COMMUNICATION.  I AM ASKING

3    FOR WHETHER OR NOT YOU KNOW OF THE FACTS?

4             MR. HODGES:  IT DEPENDS ON WHERE THE PREDICATE

5    FACT COMES FROM.  IF IT IS SOMETHING TOLD BY THE CLIENT,

6    IT IS PRIVILEGED.

7    BY MR. STOLPER:

8        Q    OUTSIDE OF ATTORNEY-CLIENT COMMUNICATION, DO YOU

9    HAVE ANY BASIS TO KNOW WHETHER OR NOT AUGUSTUS, LLC OR LLP

10   HAS ANY ASSETS?

11       A    NO.

12       Q    WHERE -- THE ENTITY AUGUSTUS LLP, IN WHAT

13   JURISDICTION WAS IT FORMED?

14       A    I DON'T REMEMBER.

15       Q    ARE THERE ANY OTHER ENTITIES THAT YOU FORMED FOR

16   CLIENTS OVER THE YEARS?

17       A    THERE'RE ALL KINDS OF ENTITIES I HAVE FORMED.

18       Q    THAT'S SOMETHING THAT YOU ORDINARILY DO IN YOUR

19   PRACTICE?

20       A    WELL, FROM TIME TO TIME.  YES.

21       Q    WHAT IS 2193 -- 21923 PARTHENIA LLC?

22       A    I DON'T REMEMBER.

23       Q    HAVE YOU EVER HEARD OF IT BEFORE?

24       A    I HAVE, BUT I DON'T REMEMBER WHY IT WAS FORMED.

25       Q    IS IT SOMETHING THAT YOU CONTROL?
```

Huntington Court Reporters & Transcription, Inc.          98
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777
Exhibit J

USAO_00059192
00059274

```
 1        A    NO.

 2        Q    IS IT SOMETHING YOU DIRECTLY OR INDIRECTLY

 3   CONTROL?

 4        A    NO.

 5        Q    IS IT AN ENTITY THAT YOU FORMED FOR A CLIENT?

 6        A    I BELIEVE IT IS.  I JUST DON'T RECALL IT.

 7        Q    ARE THERE ANY BANK ACCOUNTS THAT YOU ARE AWARE

 8   OF BEING OPENED FOR 21923 PARTHENIA LLC?

 9        A    NO.

10        Q    WHAT IS MSA CONSULTING?

11        A    WHAT IS MSA CONSULTING?

12        Q    YES.

13        A    IT'S A BIG CONSULTING COMPANY LOCATED IN THE

14   DESERT.

15        Q    AND HAVE YOU -- DO YOU OWN ANY INTEREST IN MSA

16   CONSULTING?

17        A    NO.  I THINK IT HAS BEEN AROUND 40 OR 50 YEARS.

18        Q    HAVE YOU EVER RECEIVED PAYMENTS FROM MSA

19   CONSULTING?

20        A    NO.

21        Q    HAVE YOU EVER MADE PAYMENTS TO MSA CONSULTING?

22        A    I MAY HAVE FROM TIME TO TIME ON BEHALF OF A

23   CLIENT.  I DON'T KNOW.

24        Q    DO YOU HAVE ANY INTEREST IN ANY BUSINESS THAT

25   GROWS MARIJUANA?
```

```
 1        A     NO.

 2        Q     DO YOU HAVE ANY INTEREST IN ANY BUSINESS THAT

 3   LEASES OR SERVICES MARIJUANA GROWERS?

 4        A     NO.

 5        Q     DO YOU HAVE ANY BUSINESS THAT HAS ANY CONNECTION

 6   TO THE MARIJUANA INDUSTRY OTHER THAT YOUR LAW FIRM?

 7              MR. HODGES:  FOUNDATION.

 8              THE WITNESS:  NO.

 9   BY MR. STOLPER:

10        Q     OTHER THAN THE LAW FIRMS WE HAVE DISCUSSED HERE

11   TODAY, DO YOU OWN, DIRECTLY OR INDIRECTLY, ANY OTHER

12   BUSINESSES?

13              MR. HODGES:  ASKED AND ANSWERED.

14              YOU CAN ANSWER.

15              THE WITNESS:  I ALREADY ANSWERED THAT QUESTION.

16   BY MR. STOLPER:

17        Q     SO OTHER THAN THE ENTITIES WE HAVE DISCUSSED

18   HERE TODAY, DO YOU DIRECTLY OR INDIRECTLY OWN ANY

19   INTERESTS IN ANY OTHER BUSINESS?

20        A     NOT THAT I CAN THINK OF RIGHT NOW, BUT THERE MAY

21   BE ONE OR TWO OTHER ENTITIES THAT I HAVE HAD OVER THE

22   YEARS THAT I CAN'T THINK OF RIGHT NOW.

23        Q     IN TERMS OF THE LLP CERTIFICATES -- SORRY, THE

24   LLC CERTIFICATES FOR THE VARIOUS LLCS THAT YOU OWN OR HAVE

25   OWNED, WHERE WOULD ONE FIND THE LLC CERTIFICATES?
```

```
 1              MR. HODGES:  FOUNDATION.  SPECULATIVE.

 2              THE WITNESS:  I CAN'T ANSWER THAT QUESTION

 3    WITHOUT MORE INFORMATION.

 4    BY MR. STOLPER:

 5         Q    OKAY.  SO FOR GLOBAL BARISTAS USA ARE YOU IN

 6    CONTROL OF THE CORPORATE BOOKS?

 7         A    NO.

 8         Q    FOR GLOBAL BARISTAS, INC. ARE YOU IN CONTROL OF

 9    THE CORPORATE BOOKS?

10         A    THERE IS NO SUCH THING.

11         Q    FOR DOPPIO, INC. ARE YOU IN CONTROL OF THE

12    CORPORATE BOOKS?

13         A    THERE IS NO SUCH THING AS DOPPIO BARISTAS, INC.

14         Q    I UNDERSTAND.

15              FOR DOPPIO, INC., ARE YOU IN CONTROL OF THE

16    CORPORATE BOOKS AND RECORDS?

17         A    TO THE EXTENT THEY EXIST, YES.

18         Q    WHAT IS THAT EXTENT?

19         A    I DON'T KNOW.  I HAVEN'T LOOKED.  I HAVEN'T

20    LOOKED FOR THEM OR AT THEM IN A LONG TIME.

21         Q    FOR GLOBAL BARISTAS, LLC ARE YOU IN CONTROL OF

22    THE CORPORATE BOOKS AND RECORDS?

23         A    NO.

24         Q    WHO IS?

25         A    WELL, "YES" AND "NO."  I DON'T HAVE ALL OF THEM.
```

Exhibit J

USAO_00059195
00059274

```
 1        Q    TO WHAT EXTENT DO YOU HAVE THEM?

 2        A    I DON'T KNOW.  I HAVEN'T LOOKED FOR THEM.  SO I

 3   CAN'T ANSWER THE QUESTION.

 4        Q    YOU SAID YOU DIDN'T THINK YOU HAD ALL OF THEM.

 5   WHO ELSE WOULD HAVE THEM?

 6             MR. HODGES:  OBJECTION.  SPECULATION.

 7   FOUNDATION.

 8             THE WITNESS:  I DON'T KNOW.

 9   BY MR. STOLPER:

10        Q    FOR GB AUTOSPORTS ARE YOU IN CONTROL OF THE

11   CORPORATE BOOKS AND RECORDS?

12        A    NO, BECAUSE IT'S BASICALLY DEFUNCT.

13        Q    FOR AVENATTI & ASSOCIATES ARE YOU IN CONTROL OF

14   THE CORPORATE BOOKS AND RECORDS?

15        A    YES.

16        Q    WHERE WERE THEY LOCATED?  PHYSICALLY?

17        A    I DON'T KNOW.  I WOULD HAVE TO LOOK FOR THEM.  I

18   AM SURE THAT I HAVE SOME OF THEM IN MY POSSESSION.  SOME

19   OF THEM ARE PROBABLY IN STORAGE.

20        Q    ARE SOME OF THEM POSSIBLY AT YOUR OFFICE?

21        A    PERHAPS, ALTHOUGH THERE MAY BE ANY AVENATTI &

22   ASSOCIATES RECORDS AT THAT OFFICE.  I JUST DON'T KNOW.

23        Q    WHO IS IN POSSESSION OF THE CORPORATE BOOKS AND

24   RECORDS OF PASSPORT 420?

25        A    I HAVE SOME OF THEM.  I BELIEVE THAT THE BALANCE
```

Exhibit J

USAO_00059196
00059274

```
 1   OF THEM WOULD BE WITH SPRING CREEK RESEARCH.

 2        Q    I'M SORRY.  I DIDN'T HEAR THE ANSWER.

 3        A    THE BALANCE WOULD BE WITH SPRING CREEK RESEARCH.

 4        Q    WHAT IS SPRING CREEK RESEARCH?

 5        A    THAT'S THE OTHER ENTITY THAT OWNS AN INTEREST IN

 6   PASSPORT 420.

 7        Q    WHEN YOU DO LEGAL WORK, DO YOU HAVE A COMPUTER

 8   YOU WORK ON?

 9        A    GENERALLY, YES.

10        Q    DOES THAT COMPUTER CONNECT TO A SERVER?

11        A    SOMETIMES.

12        Q    OKAY.  WHO OWNS THE SERVER THAT YOUR COMPUTER

13   CONNECTS TO?

14        A    THE X-LAW GROUP.

15        Q    HOW LONG HAS THE X-LAW GROUP OWNED THE SERVER?

16        A    FOR ABOUT MAYBE NINE MONTHS.  THAT'S AN

17   ESTIMATE.

18        Q    AND YOU SOLD THE SERVER TO THE X-LAW GROUP?

19        A    EAGAN AVENATTI SOLD VARIOUS ASSETS TO THE X-LAW

20   GROUP.

21        Q    FOR HOW MUCH?

22        A    I DON'T REMEMBER.

23        Q    WAS MONEY -- DID MONEY CHANGE HANDS BETWEEN THE

24   X-LAW GROUP AND EAGAN AVENATTI?

25        A    I BELIEVE IT WAS A FORGIVENESS OF DEBT.
```

Exhibit J

USAO_00059197
00059274

```
 1        Q    FORGIVENESS BY WHOM OF WHAT?

 2        A    I DON'T REMEMBER HOW MUCH.  I WOULD HAVE TO LOOK

 3   AT THE AGREEMENT.  I DON'T HAVE IT IN FRONT OF ME.

 4        Q    WELL, DID EAGAN AVENATTI OWE MONEY TO THE X-LAW

 5   GROUP OR DID THE X-LAW GROUP OWE --

 6        A    YES.

 7        Q    LET ME FINISH MY QUESTION.

 8             DID THE X-LAW GROUP OWE MONEY TO EAGAN AVENATTI?

 9        A    NO.  EAGAN AVENATTI OWED MONEY TO THE X-LAW

10   GROUP.

11        Q    APPROXIMATELY HOW MUCH MONEY DID EAGAN AVENATTI

12   OWE TO THE X-LAW GROUP?

13        A    I DON'T REMEMBER EXACTLY.  IT WAS OVER

14   $2 MILLION.

15        Q    DID THE X-LAW GROUP MAKE A LOAN TO EAGAN

16   AVENATTI OF THAT AMOUNT OF MONEY?

17        A    NO.  IT WAS ASSOCIATED WITH CASES AND ATTORNEYS

18   FEES' ON CASES.

19        Q    WHICH CASES?

20        A    I DON'T REMEMBER.

21        Q    YOU CAN'T REMEMBER ANY OF THE CASES?

22        A    NO.

23        Q    WERE THEY CASES THAT WERE PRIMARILY HANDLED BY

24   EAGAN AVENATTI, PRIMARILY HANDLED BY THE X-LAW GROUP?

25        A    I THINK IT WAS A LITTLE BIT OF BOTH.
```

**Exhibit J**

USAO_00059198
00059274

1    Q    OF THE $2 MILLION IN CASES, DO YOU REMEMBER WHO

2    THE LAWYERS WERE RESPONSIBLE FOR HANDLING THOSE CASES?

3    A    I DON'T BECAUSE I DON'T REMEMBER WHICH CASES.

4    Q    HOW MANY EMPLOYEES DO YOU CURRENTLY HAVE WORKING

5    FOR YOU?

6    A    FOR ME PERSONALLY?

7    Q    WE'LL START WITH THAT.

8    A    WELL, WE ARE GOING TO END WITH THAT TOO.

9         SO PROBABLY ONE FOR ME PERSONALLY.

10   Q    WHO'S PERSONALLY -- WHO IS YOUR PERSONAL --

11   A    JAMES CAMERON, I THINK, BUT I MAY BE WRONG ABOUT

12   THAT.

13   Q    HOW MANY EMPLOYEES DO YOU HAVE CURRENTLY WORKING

14   FOR AVENATTI & ASSOCIATES?

15   A    I'M NOT GOING TO ANSWER THAT.

16        MR. STOLPER:  CAN WE GET THE JUDGE BACK, PLEASE.

17        THE CLERK:  REMAIN SEATED AND COME TO ORDER.

18        MR. STOLPER:  YOUR HONOR, THIS ONE IS MINE.

19        THE COURT:  OKAY.  ALL THE SAME PEOPLE STILL

20   PRESENT.  GOOD.

21        MR. STOLPER:  I ASKED MR. AVENATTI HOW MANY

22   EMPLOYEES A WHOLLY-OWNED COMPANY THAT HE OWNS CALLED

23   AVENATTI & ASSOCIATES HAS.  MR. AVENATTI REFUSED TO ANSWER

24   THE QUESTION, NOT AT THE DIRECTION OF HIS LAWYER BUT

25   BECAUSE HE CHOOSES NOT TO ANSWER THE QUESTION.  I HAVE TWO

Exhibit J

USAO_00059199
00059274

 1  ASKS RIGHT NOW:

 2          ONE IS THAT IF -- THAT WE -- IF MR. AVENATTI

 3  DOESN'T WANT TO ANSWER QUESTIONS HE'S GOT TO LET HIS

 4  LAWYER MAKE -- INTERPOSE THE OBJECTION NOT TO ANSWER.  I

 5  DON'T THINK IT IS APPROPRIATE FOR THE WITNESS JUST TO

 6  DECIDE WHAT HE IS GOING TO AND NOW GOING TO ANSWER.

 7          AND TWO, I WOULD LIKE AN ANSWER TO MY QUESTION.

 8          THE COURT:  NOW, MR. AVENATTI, YOU CAN'T JUST

 9  REFUSE TO ANSWER QUESTIONS.  OKAY?  YOU HAVE A LAWYER.

10  HIS JOB IS TO OBJECT.  YOUR JOB IS TO ANSWER THE QUESTIONS

11  UNLESS THERE IS AN OBJECTION INTERPOSED.  AND IF YOU WANT

12  TO CONFER WITH YOUR LAWYER, YOU CAN DO THAT.  BUT YOU

13  CAN'T JUST REFUSE TO ANSWER QUESTIONS.

14          THE WITNESS:  OKAY.  UNDERSTOOD.

15          MR. HODGES:  I DON'T NECESSARILY AGREE WITH

16  THAT, YOUR HONOR.  TO THE EXTENT MR. AVENATTI HAS SUPERIOR

17  KNOWLEDGE OF A PARTICULAR SUBJECT, HE KNOWS WHETHER IT IS

18  APPROPRIATE OR INAPPROPRIATE TO NOT ANSWER.  WITH THAT

19  SAID, I DID NOT INSTRUCT HIM BECAUSE I HAVE NOT HAD THE

20  BENEFIT OF HIM CONFERRING WITH HIM TO KNOW THE SPECIFIC

21  CONCERN THAT MR. AVENATTI HAS.

22          THE COURT:  WELL --

23          THE WITNESS:  THESE ARE NOT --

24          THE COURT:  HOLD ON A SECOND.  YOU CAN'T JUST

25  REFUSE TO ANSWER A QUESTION.

**Exhibit J**

USAO_00059200
00059274

```
 1              MR. HODGES:  I UNDERSTAND THAT.

 2              THE COURT:  SUPERIOR KNOWLEDGE OR NOT, YOU CAN'T

 3   JUST REFUSE TO ANSWER A QUESTION.

 4              MR. HODGES:  THEN WITH RESPECT TO THE LEGAL

 5   ISSUE OF THIS PARTICULAR QUESTION, ASKING MR. AVENATTI HOW

 6   MANY EMPLOYEES AN ENTITY MAY OR MAY NOT HAVE IS BEYOND THE

 7   SCOPE OF THIS EXAMINATION.

 8              THE COURT:  WHAT IS THE RELEVANCE OF THAT?

 9              MR. STOLPER:  IT'S AN ENTITY FULLY CONTROLLED BY

10   HIM, YOUR HONOR.

11              THE COURT:  WHY DOES THE NUMBER OF EMPLOYEES --

12              MR. STOLPER:  BECAUSE I'M GOING TO ASK HOW MUCH

13   HE'S PAYING THE EMPLOYEES, AND I'M GOING TO TRY AND FIND

14   OUT WHERE THAT  MONEY IS COMING FROM SO WE CAN ATTACH IT.

15              MR. HODGES:  YOU CAN'T, BECAUSE IT'S A THIRD

16   PARTY THAT THERE IS NO JUDGMENT AGAINST.  WE'RE BACK ON --

17   BECAUSE -- COUNSEL, I WILL LET YOU.  I KNOW THE JUDGE IS

18   NOT RECEPTIVE TO THIS ARGUMENT, BUT I DON'T MEAN TO

19   BELABOR THE POINT.

20              WE HAVE GONE SO FAR BEYOND MR. AVENATTI'S

21   ASSETS, LIABILITIES, WHO OWES HIM MONEY.  WE'RE NOW

22   FOCUSING ON AN ENTITY THAT HE HAS ALREADY TESTIFIED HE

23   DOESN'T CONTROL, HE DOESN'T KNOW SPECIFIC INFORMATION THAT

24   RELATES TO, AND NOW THEY WANT TO GET INTO THE NUMBER OF

25   EMPLOYEES.
```

**Exhibit J**

USAO_00059201
00059274

```
 1              THE QUESTION IS, DO YOU KNOW HOW MUCH MONEY THE

 2    EMPLOYEES ARE PAID BY THIS COMPANY AND WHERE THE MONEY

 3    COMES FROM, WE ARE DONE.  I DON'T THINK IT IS APPROPRIATE

 4    BECAUSE IT PERTAINS TO THAT A THIRD PARTY THAT'S NOT A

 5    JUDGMENT DEBTOR.  THAT'S MY BIGGEST CONCERN.

 6              I THINK WE ARE OUT OF TIME BECAUSE THEY DON'T

 7    HAVE ANYMORE QUESTIONS BECAUSE MR. AVENATTI HAS ALREADY

 8    COVERED IN THE SPAN OF ABOUT EIGHT QUESTIONS WHAT ASSETS

 9    HE ACTUALLY HAS IN HIS NAME.

10              THE COURT:  OKAY.  THIS IS WHY I'M NOT

11    PARTICULARLY RECEPTIVE TO YOUR ARGUMENT.  THE JUDGMENT

12    CREDITOR DOESN'T NEED TO ACCEPT YOUR VERSION OF EVENTS.

13    OKAY?  IT IS DISCOVERY.  HOW THINGS ACTUALLY END UP

14    TURNING OUT, I DON'T KNOW.  BUT HE'S ENTITLED TO CONDUCT

15    BROAD DISCOVERY.  THAT MAY OR MAY NOT BE CONSISTENT WITH

16    YOUR OR YOUR CLIENT'S VIEW OF THE FACTS.  OKAY?

17              AND SO YOU ARE RIGHT.  I AM NOT RECEPTIVE TO IT.

18    I AM GOING TO OVERRULE THE OBJECTION.  AS TO THE EXTENT

19    THERE IS SOME OBJECTION, WILL ALLOW HIM TO INQUIRE.

20              MR. HODGES:  FOR THE RECORD, I DO NOT DISAGREE

21    WITH YOUR HONOR THAT THE SCOPE OF THIS EXAMINATION IS

22    BROAD.  HOWEVER, THE SUBJECT MATTER IS NOT QUITE SO BROAD.

23    IT IS INFORMATION RELEVANT TO THE COLLECTION AND

24    ENFORCEMENT OF THE JUDGE.

25              THE COURT:  OKAY.  AND IT'S NOT -- COUNSEL
```

**Exhibit J**

USAO_00059202
00059274

1    REFERRED TO THIS, AND IT DOESN'T TAKE MUCH FOR ME TO

2    UNDERSTAND THAT ONE THING THEY ARE DOING IS TRYING TO

3    IDENTIFY WHERE HIS ASSETS ARE.  IT'S NOT UNKNOWN FOR

4    JUDGMENT CREDITORS TO SEEK ALTEREGO LIABILITY, TO SEEK

5    ASSIGNMENT ORDERS, CHARGE ORDERS.  THERE ARE ALL SORTS OF

6    WAYS THAT ASSETS THAT AREN'T OSTENSIBLY OR OBVIOUSLY OWNED

7    BY THE JUDGMENT DEBTOR MAY BE BROUGHT INTO PLAY OR MAY BE

8    SUBJECT TO ENFORCEMENT OF A JUDGMENT.  I AM NOT MAKING ANY

9    DETERMINATION RIGHT NOW WHETHER THERE IS ANYTHING LIKE

10   THAT IN THIS CASE.

11        BUT I AM SAYING THAT THE JUDGMENT CREDITOR IS

12   ALLOWED TO CONDUCT DISCOVERY AS TO THAT.  AND SO I HOPE

13   THAT IN ANSWERING THE QUESTIONS AND IN DETERMINING WHETHER

14   TO OBJECT TO THE QUESTION YOU WILL BEAR THAT IN MIND.

15        MR. STOLPER:  THANK YOU, YOUR HONOR.

16        MR. HODGES:  YES.

17        THE COURT:  THANK YOU.

18        (JUDGE LEAVES BENCH.)

19   BY MR. STOLPER:

20     Q    MR. AVENATTI, HOW MANY EMPLOYEES DOES AVENATTI &

21   ASSOCIATES HAVE?

22     A    I THINK I ANSWERED THAT PREVIOUSLY.  IT IS FOUR

23   OR FIVE EMPLOYEES.

24     Q    WHO ARE THE EMPLOYEES?

25     A    JUDY REGNIER, EMILY -- AND I FORGET HER LAST

```
 1   NAME -- SUSIE GARCIA.  I THINK THAT'S IT.

 2        Q    ARE ANY OF THOSE INDIVIDUALS ATTORNEYS?

 3        A    NO.

 4        Q    HOW IS AVENATTI & ASSOCIATES FUNDING ITS CURRENT

 5   OPERATIONS?

 6        A    BY MONEY.  BY WAY OF MONEY.

 7        Q    THANK YOU.

 8             WHERE DOES THAT MONEY COME FROM?

 9        A    COMES FROM LOANS OR OTHER FUNDING SOURCES.

10        Q    WHAT LOANS ARE BEING MADE TO AVENATTI &

11   ASSOCIATES FOR ITS CAPITAL NEEDS?

12        A    THERE'S VARIOUS LOANS OVER PERIODS OF TIME.

13        Q    HAVE YOU LENT MONEY TO AVENATTI & ASSOCIATES?

14        A    NO.

15        Q    WHO HAS?

16        A    I DON'T RECALL.

17        Q    IS AVENATTI & ASSOCIATES PAYING THOSE LOANS?

18        A    EVENTUALLY THEY WILL PAY THE LOAN.

19        Q    ARE THEY CURRENTLY PAYING THE LOANS?

20        A    WELL, I DON'T THINK ANYTHING IS DUE YET.

21        Q    SO THERE IS NO AMOUNT OF MONEY THAT'S DUE TO

22   LENDERS AT THIS POINT IN TIME?

23        A    WELL, NOT, THERE IS MONEY THAT IS DUE TO

24   LENDERS, BUT I DON'T THINK THAT PAYMENT IS DUE TO LENDERS.

25        Q    DOES AVENATTI & ASSOCIATES HAVE A BANK ACCOUNT?
```

Exhibit J

USAO_00059204
00059274

```
1        A    NO.

2        Q    OKAY.  WHERE THE -- WHEN PAYROLL IS MADE FOR THE

3   EMPLOYEES YOU DESCRIBED WITH AVENATTI & ASSOCIATES, WHERE

4   DOES THAT MONEY ACTUALLY PHYSICALLY COME FROM?

5        A    I DON'T RECALL.  IT COMES FROM ONE OF THE

6   ACCOUNTS THAT I MENTIONED.

7        Q    ONE OF THE ACCOUNTS -- THAT'S ONE OF YOUR

8   ACCOUNTS?

9        A    NO.  IT'S NOT TRYING TO PUT WORDS IN MY MOUTH.

10  ONE OF THE ACCOUNTS THAT WE HAVE ALREADY REVIEWED OVER THE

11  COURSE OF THIS EXAMINATION.  THAT'S MY BEST RECOLLECTION.

12       Q    SO ARE THESE ACCOUNTS THAT YOU ARE THE SIGNATORY

13  ON?

14       A    YES.

15       Q    THESE ARE ACCOUNTS THAT ARE NOT HELD IN THE NAME

16  OF AVENATTI & ASSOCIATES; CORRECT?

17            MR. HODGES:  MISSTATES THE TESTIMONY.

18            THE WITNESS:  I DON'T -- I DON'T RECALL EXACTLY

19  HOW THE ACCOUNT IS TITLED.

20  BY MR. STOLPER:

21       Q    OKAY.  A MINUTE AGO I ASKED YOU IF AVENATTI &

22  ASSOCIATES HAS ANY BANK ACCOUNTS; YOU SAID NO.

23            IS THAT STILL YOUR TESTIMONY?

24       A    THAT'S MY BEST RECOLLECTION.  BUT AGAIN, I WANT

25  TO GO BACK WHAT I HAVE ALREADY SAID, WHICH IS WE WERE
```

```
 1   TALKING ABOUT THE BANK ACCOUNTS AT LENGTH EARLIER, AND I

 2   ANSWERED YOUR QUESTIONS.

 3            I DON'T REMEMBER HOW EXACTLY THE ACCOUNTS ARE

 4   TITLED.

 5      Q    WHAT IS THE -- WHAT IS MONTHLY EXPENSE?  WHAT

 6   ARE THE MONTHLY EXPENSES OF AVENATTI & ASSOCIATES?

 7      A    IT VARIES.  I DON'T REMEMBER.

 8      Q    WHAT IS THE MOST RECENT MONTH?

 9      A    I'M SORRY?

10      Q    HOW MUCH WAS IT THE MOST RECENT MONTH?

11      A    I DON'T REMEMBER.

12      Q    HOW MUCH DO YOU PAY MS. REGNIER?

13            MR. HODGES:  I'M SORRY?

14   BY MR. STOLPER:

15      Q    HOW MUCH DO YOU PAY MS. REGNIER?

16      A    I DON'T RECALL.

17            MR. HODGES:  I AM GOING TO OBJECT TO THAT, AND I

18   AM GOING TO INSTRUCT YOU THAT THAT IS A VIOLATION OF HER

19   PRIVACY, THAT IS HER PRIVATE FINANCIAL INFORMATION.

20            MR. STOLPER:  MAY WE HAVE THE JUDGE, PLEASE.

21            THE CLERK:  HE ASKED THAT WE HAVE A COUPLE MORE

22   QUESTIONS AND HAVE THE REPORTER MARK THEM.

23            MR. STOLPER:  THANK YOU.

24   BY MR. STOLPER:

25      Q    OKAY.  DOES AVENATTI & ASSOCIATES PAY YOU RENT?
```

```
 1       A    YES.

 2       Q    TO WHOM?

 3       A    TO THE X-LAW GROUP.

 4       Q    HOW MUCH IS THE RENT?

 5       A    I DON'T RECALL.

 6       Q    WHERE IS THE RENT PAID FROM?

 7       A    I DON'T REMEMBER.

 8       Q    IS IT PAID FROM ONE OF THE ACCOUNTS WE

 9   PREVIOUSLY DISCUSSED HERE THIS MORNING?

10       A    I AM SURE IT IS.

11       Q    BY "THE ACCOUNTS," WE ARE TALKING ABOUT THE

12   ACCOUNTS THAT YOU SIGNED FOR AND EITHER CITY NATIONAL BANK

13   OR BANK OF AMERICA; CORRECT?

14       A    I HAVE ALREADY ANSWERED YOUR QUESTIONS ABOUT

15   THIS, SIR.

16       Q    I JUST WANT TO MAKE SURE WE ARE TALKING ABOUT

17   THE SAME THING.

18            THOSE ARE THE SAME ACCOUNTS YOU ARE REFERRING TO

19   WHEN YOU SAY THOSE ARE THE ACCOUNTS THAT THE RENT IS

20   GETTING PAID FROM?

21       A    TO THE BEST OF MY RECOLLECTION, YES.

22       Q    IS AVENATTI & ASSOCIATES CURRENT ON THE RENT?

23       A    I DON'T REMEMBER.  I AM SURE THEY ARE.

24       Q    DOES AVENATTI & ASSOCIATES CARRY MALPRACTICE

25   INSURANCE FOR LEGAL MAL?
```

Exhibit J

USAO_00059207
00059274

```
 1        A    I BELIEVE THEY DO.

 2        Q    WHO IS THEIR INSURANCE PROVIDER?

 3        A    I DON'T REMEMBER.

 4        Q    AND YOU ARE THE NAMED INSURED AS THE ONLY

 5   ATTORNEY WORKING THERE?

 6        A    I DON'T KNOW THAT.

 7        Q    ARE THERE ANY OTHER ATTORNEYS THAT ARE NAMED AS

 8   INSUREDS ON THE AVENATTI & ASSOCIATES POLICY?

 9             MR. HODGES:  FOUNDATION.  ARGUMENTATIVE.  HE

10   JUST SAID HE DOESN'T KNOW.

11             THE WITNESS:  I DON'T REMEMBER.  I DON'T KNOW.

12   BY MR. STOLPER:

13        Q    HOW LONG HAS AVENATTI & ASSOCIATES MAINTAINED

14   INSURANCE -- STRIKE THAT.

15             DURING THE BANKRUPTCY YOU TESTIFIED THAT

16   AVENATTI & ASSOCIATES DIDN'T HAVE INSURANCE, THAT THE

17   INSURANCE WAS CARRIED BY EAGAN AVENATTI.  HOW LONG HAS

18   AVENATTI & ASSOCIATES CARRIED MALPRACTICE INSURANCE?

19        A    FIRST OF ALL, I DON'T RECALL THAT TESTIMONY; SO

20   I'M NOT GOING TO ACCEPT YOUR PREDICATE WITHOUT PROOF AND,

21   FURTHERMORE, I DON'T RECALL.

22             MR. HODGES:  FOUNDATION.

23   BY MR. STOLPER:

24        Q    IS IT POSSIBLE THAT AVENATTI & ASSOCIATES WAS

25   CARRYING MALPRACTICE INSURANCE PRIOR TO THE FILING BY
```

Exhibit J

USAO_00059208
00059274

```
 1   GERALD TOBIN OF THE INVOLUNTARY PETITION FOR BANKRUPTCY

 2   AGAINST EAGAN AVENATTI?

 3       A    I HAVE NO IDEA.

 4            MR. HODGES:  FOUNDATION.

 5   BY MR. STOLPER:

 6       Q    PUTTING ASIDE HOW MUCH MS. REGNIER IS PAID

 7   INDIVIDUALLY, WHAT IS THE AGGREGATE AMOUNT IN SALARY THAT

 8   AVENATTI & ASSOCIATES PAYS PER MONTH?

 9       A    PRESENTLY, PROBABLY ABOUT $50,000.

10       Q    AND THAT MONEY IS COMING FROM THE SAME ACCOUNTS

11   WE HAVE DISCUSSED, THE ONES YOU IDENTIFIED THIS MORNING?

12       A    YES.  GENERALLY, YES.

13       Q    THOSE ARE THE SAME ACCOUNTS YOU TESTIFIED LESS

14   ONLY HAVE A HUNDRED THOUSAND -- LESS THAN A HUNDRED

15   THOUSAND DOLLARS IN; CORRECT?

16       A    I THINK THAT IS TRUE.

17       Q    DO YOU RECALL APPROXIMATELY HOW MUCH THE RENT IS

18   FOR AVENATTI & ASSOCIATES?

19       A    I DON'T.

20       Q    ARE THERE ANY OTHER ONGOING EXPENSES OF AVENATTI

21   & ASSOCIATES BESIDES RENT, INSURANCE, AND SALARY?

22       A    SURE.  THERE ARE EXPENSES EVERY MONTH.

23       Q    FOR EXAMPLE, TRAVEL?

24       A    SURE.

25       Q    DO YOU HAVE A CREDIT CARD?
```

**Exhibit J**

USAO_00059209
00059274

```
 1        A    NO.

 2        Q    DO YOU HAVE A DEBIT CARD?

 3        A    YES.

 4        Q    HOW MANY DEBITS CARDS DO YOU HAVE?

 5        A    I THINK A COUPLE.

 6        Q    DO YOU HAVE THEM WITH YOU TODAY?

 7        A    NO.

 8        Q    THEY ARE IN THE CAR?

 9        A    NO.

10        Q    WHERE ARE THEY?

11        A    THEY ARE IN MY WALLET.

12        Q    WHERE IS YOUR WALLET?

13        A    I THINK MY WALLET IS IN MY RESIDENCE.  I FORGOT

14   IT TODAY.

15        Q    DO YOU HAVE -- DO THE LAW OFFICES OF MICHAEL

16   AVENATTI HAVE A SEPARATE -- IS THAT A SEPARATE OPERATING

17   ENTITY YOU PERSONALLY OPERATE?

18             MR. HODGES:  ASKED AND ANSWERED.  FOUNDATION.

19             THE WITNESS:  I DON'T KNOW HOW TO ANSWER THAT

20   QUESTION. THAT CALLS FOR A LEGAL CONCLUSION.  I HAVEN'T

21   REALLY THOUGHT ABOUT IT.

22   BY MR. STOLPER:

23        Q    LET ME ASK ANOTHER QUESTION.

24             OTHER THAN MR. CAMERON, IS THERE ANYONE WHO

25   RENDERS LEGAL SERVICE OR QUASI-LEGAL SERVICE TO YOU IN
```

Exhibit J

USAO_00059210

00059274

```
 1    CONNECTION WITH YOUR INDIVIDUAL PRACTICE OF LAW?

 2            MR. HODGES:  FOUNDATION.

 3            THE WITNESS:  I CAN'T ANSWER.  I DON'T KNOW WHAT

 4    YOU MEAN BY THAT.

 5    BY MR. STOLPER:

 6        Q    DO ANY LAWYERS WORK FOR YOU?

 7        A    SURE.  I THOUGHT WE JUST ANSWERED THE QUESTION

 8    ABOUT THE EMPLOYEES.

 9        Q    I'M NOT ASKING ABOUT LAWYERS WHO WORK FOR

10    AVENATTI & ASSOCIATES.  I'M ASKING DO ANY LAWYERS WORK FOR

11    YOU IN YOUR INDIVIDUAL CAPACITY AS A LAWYER?

12            MR. HODGES:  I THINK I'M DOING THAT RIGHT NOW.

13    I'M NOT SURE.

14            THE WITNESS:  YES.

15            MR. HODGES:  I MEAN, THE QUESTION IS VAGUE AND

16    AMBIGUOUS IN A LOT OF RESPECTS.

17    BY MR. STOLPER:

18        Q    ARE YOU PAYING THIS LAWYER?

19        A    YES.

20        Q    HOW MUCH?

21        A    I DON'T REMEMBER.

22        Q    DID YOU PROVIDE A RETAINER TO HIM?

23        A    YES.

24        Q    HOW MUCH WAS THE RETAINER?

25        A    $20,000.
```

Exhibit J

USAO_00059211

00059274

1       Q    WHEN WAS IT PROVIDED?

2       A    WITHIN THE LAST WEEK.

3       Q    AND WAS THAT --

4       A    WASN'T LAST WEEK.  I HADN'T RETAINED HIM LAST

5  WEEK, DESPITE YOUR REPRESENTATION TO THE COURT.  THE FIRST

6  YOU EVER HEARD OF THIS GUY WAS THREE DAYS AGO.

7       Q    SO IT WAS THIS WEEK?

8       A    RIGHT.  BECAUSE THE FIRST YOU EVER HEARD OF HIM

9  WAS THREE DAYS AGO, NOT LAST WEEK AS YOU REPRESENTED TO

10  THE COURT, MR. STOLPER.

11       Q    THE MONEY THAT YOU USED FOR THE RETAINER OF

12  PRESENT COUNSEL, THAT CAME FROM ONE OF THE ACCOUNTS?

13       A    I DON'T REMEMBER WHERE IT CAME FROM.

14       Q    DO YOU HAVE ANY ACCOUNTS THAT IT COULD HAVE COME

15  FROM OTHER THAN THE CITY NATIONAL BANK ACCOUNT AND THE

16  BANK OF AMERICA ACCOUNTS THAT YOU HAVE DESCRIBED HERE THIS

17  MORNING?

18       A    NOT THAT I RECALL.

19       Q    SO BY PROCESS OF ELIMINATION, WOULD YOU AGREE

20  WITH ME THAT IT HAD TO HAVE COME FROM ONE OF THOSE

21  ACCOUNTS?

22       A    NO.  BY PROCESS OF ELIMINATION, I AM GOING TO

23  STAND ON MY PRIOR ANSWERS TO YOUR QUESTIONS.

24       Q    SO IT'S POSSIBLE THERE IS ANOTHER ACCOUNT IT

25  CAME FROM?

**Exhibit J**

USAO_00059212
00059274

```
 1        A    SIR --

 2              MR. HODGES:  ARGUMENTATIVE.  LACKS FOUNDATION.

 3   LET'S MOVE ON, COUNSEL, SERIOUSLY.

 4              THE WITNESS:  MY BEST RECOLLECTION IS IT CAME

 5   FROM ONE OF THOSE ACCOUNTS.

 6   BY MR. STOLPER:

 7        Q    OKAY.  DO YOU RECALL WHICH ACCOUNT IT CAME FROM?

 8              MR. HODGES:  ASKED AND ANSWERED.

 9              THE WITNESS:  NO, I DON'T.

10   BY MR. STOLPER:

11        Q    HOW ABOUT WHICH BANK IT CAME FROM?

12        A    NO, I DO NOT.

13        Q    AND WAS THE RETAINER -- WAS THE RETAINER TO BE

14   BILLED HOURLY; IS THAT CORRECT?

15        A    I DON'T REMEMBER.

16        Q    YOU JUST TOLD ME IT WAS JUST THREE DAYS AGO.

17   YOU HAVE NO RECOLLECTION OF THAT?

18        A    I HAVE HAD A LOT ON MY MIND.  MY ENTIRE FOCUS

19   ISN'T TRYING TO COLLECT A $4 MILLION JUDGMENT FROM A LAW

20   PARTNER, COUNSEL.  SO I HAVE HAD A LOT GOING ON.  I DON'T

21   KNOW IF YOU HAVE BEEN PAYING ATTENTION OR NOT, BUT I HAVE

22   A LOT ON MY PLATE.

23        Q    DOES AVENATTI & ASSOCIATES PAY YOU ANY SALARY?

24        A    NO.

25        Q    DOES IT REIMBURSE YOUR EXPENSES?
```

**Exhibit J**

USAO_00059213
00059274

```
 1        A    FROM TIME TO TIME, YES.

 2        Q    WHEN WAS THE LAST TIME IT REIMBURSED YOUR

 3   EXPENSES?

 4        A    I DON'T REMEMBER.

 5        Q    WAS IT IN THE LAST MONTH?

 6        A    IT MAY HAVE BEEN.  I JUST DON'T REMEMBER.

 7        Q    HOW DO YOU SUBMIT EXPENSES TO AVENATTI &

 8   ASSOCIATES?

 9        A    I KEEP TRACK OF EXPENSES AND THE FIRM REIMBURSES

10   ME.

11        Q    HOW LONG HAS MS. REGNIER WORKED FOR AVENATTI &

12   ASSOCIATES?

13        A    I DON'T REMEMBER.

14        Q    ISN'T IT TRUE THAT MS. REGNIER WORKED FOR EAGAN

15   AVENATTI PRIOR TO WORKING FOR AVENATTI & ASSOCIATES?

16        A    WELL, THAT'S NOT A BIG BOMBSHELL.  YES, MS.

17   REGNIER WORKED FOR EAGAN AVENATTI.

18        Q    WAS SHE SIMULTANEOUSLY WORKING FOR EAGAN

19   AVENATTI AND AVENATTI & ASSOCIATES?

20        A    NOW, THAT'S AN INTERESTING QUESTION.  I DON'T

21   KNOW THE ANSWER TO THAT.  I THINK YOU CAN PROBABLY SAY

22   YES, OR YOU COULD SAY NO.  I MEAN, I DON'T KNOW.  I

23   HAVEN'T THOUGHT ABOUT IT.

24        Q    WELL, COULD YOU PLEASE THINK ABOUT IT?

25        A    OKAY.  I'M GOING TO THINK ABOUT IT.
```

**Exhibit J**

USAO_00059214

00059274

```
 1              YOU KNOW, I DON'T KNOW.

 2       Q    HOW LONG HAS AVENATTI & ASSOCIATES BEEN PAYING

 3   MS. REGNIER AS OPPOSED TO EAGAN AVENATTI PAYING MS.

 4   REGNIER?

 5       A    YOU JUST ASKED ME THAT SAME QUESTION, BASICALLY,

 6   IN ANOTHER FORM, AND THE ANSWER WAS I DON'T KNOW, AND THE

 7   ANSWER AGAIN WOULD BE I DON'T KNOW.  I DON'T RECALL, I

 8   SHOULD SAY.

 9       Q    HAS IT BEEN MORE THAN A YEAR?

10              MR. HODGES:  FOUNDATION.  ARGUMENTATIVE.

11              THE WITNESS:  I DON'T RECALL.  I DON'T THINK SO.

12   BY MR. STOLPER:

13       Q    HAS MS. REGNIER BEEN WORKING FOR AVENATTI &

14   ASSOCIATES SINCE EAGAN AVENATTI WAS PLACED IN

15   RECEIVERSHIP?

16       A    YES.  I THINK.  CERTAINLY DURING THAT TIME

17   PERIOD.  I THINK THAT'S TRUE.

18       Q    IS THERE AN EMPLOYMENT AGREEMENT BETWEEN

19   AVENATTI & ASSOCIATES AND JUDY REGNIER?

20       A    I DON'T REMEMBER.

21       Q    ARE THERE ANY EMPLOYMENT AGREEMENTS THAT

22   AVENATTI HAS WITH ANY OF ITS EMPLOYEES?

23       A    I DON'T REMEMBER.

24       Q    HAVE YOU -- AS PART OF THIS PROCEEDING, YOU WERE

25   OBLIGATED TO BRING DOCUMENTS HERE TODAY.
```

Exhibit J

USAO_00059215
00059274

1           DID YOU BRING ANY?

2      A     NO.  WE FILED A MOTION FOR PROTECTIVE ORDER AS

3  WELL AS OBJECTIONS TO YOUR DOCUMENT REQUEST WHICH WERE

4  OVERBROAD.

5      Q     SO NO, YOU HAVEN'T BROUGHT ANY?

6      A     SIR --

7           MR. HODGES:  ASKED AND ANSWERED.

8           THE WITNESS:  MY ANSWER IS EXACTLY WHAT I JUST

9  SAID.

10 BY MR. STOLPER:

11     Q     WE ARE GOING TO GO THROUGH SOME TRANSACTIONS

12 THAT I WANT TO ASK YOU ABOUT THE NATURE OF THE

13 TRANSACTIONS.  LET'S START.

14           WHAT IS THE ALKI BAY GROUP?

15     A     A VENDOR FOR GLOBAL BARISTAS.

16     Q     WHAT KIND OF VENDOR?

17     A     A BAKERY VENDOR.

18     Q     SO GLOBAL BARISTAS WAS BUYING BAKED GOODS FROM

19 ALKI?

20     A     AS I -- AS I RECALL.

21     Q     WAS ALKI A CLIENT OF EAGAN AVENATTI?

22     A     I DON'T RECALL.

23     Q     YOU DON'T RECALL OR YOU DON'T KNOW?

24     A     I'M SORRY?

25     Q     YOU DON'T RECALL IF THEY WERE A CLIENT?

```
 1              MR. HODGES:  ASKED AND ANSWERED.

 2              THE WITNESS:  SIR, YOU KEEP DOING THIS.  YOU ASK

 3    ME A QUESTION, I GIVE YOU THE ANSWER, AND THEN YOU DON'T

 4    LIKE IT SO YOU WANT TO FOLLOW UP, AND YOU WANT TO ASK ME

 5    THE SAME THING.

 6              I DON'T RECALL.

 7    BY MR. STOLPER:

 8       Q    SO IT IS POSSIBLE THAT ALKI BAKERY WAS A CLIENT

 9    OF EAGAN AVENATTI?

10              MR. HODGES:  LACKS FOUNDATION.  ASKED AND

11    ANSWERED.

12              THE WITNESS:  I DON'T REMEMBER.

13    BY MR. STOLPER:

14       Q    WHO IS DILLANOS COFFEE ROASTERS?

15       A    A COFFEE ROASTER.

16       Q    BY OUR, YOU MEAN EAGAN AVENATTI?

17       A    I'M SORRY?

18       Q    BY OUR, DO YOU MEAN EAGAN AVENATTI?

19       A    I DIDN'T SAY OUR.  I NEVER SAID OUR, COUNSEL.

20    BY MR. STOLPER:

21       Q    OKAY.

22       A    SO ASK YOUR QUESTION.

23       Q    WHO IS THE DILLANOS COFFEE ROASTERS?

24       A    A COFFEE ROASTER.

25       Q    IS IT A COFFEE ROASTER FOR EAGAN AVENATTI?
```

Huntington Court Reporters & Transcription, Inc.          123
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777
Exhibit J

USAO_00059217
00059274

1      A    NO.

2      Q    WHO IS DILLANOS A COFFEE ROASTER FOR?

3           MR. HODGES:   FOUNDATION.

4           THE WITNESS:   I HAVE NO IDEA WHO THEY ARE A

5    COFFEE ROASTER FOR.

6    BY MR. STOLPER:

7      Q    HAVE YOU EVER DONE BUSINESS WITH DILLANOS COFFEE

8    ROASTERS?

9      A    ME PERSONALLY, NO.

10     Q    YOU ON BEHALF OF ANY ENTITY YOU CONTROLLED?

11     A    YES.

12     Q    WHAT BUSINESS DID YOU DO?

13     A    THEY WERE A COFFEE ROASTER.

14     Q    FOR WHO?

15     A    FOR GLOBAL BARISTAS US, LLC.

16     Q    THAT IS TULLY'S?

17     A    I'M SORRY?

18     Q    IS THAT ALSO KNOWN AS TULLY'S?

19     A    NO.   IT'S A DBA AS TULLY'S, BUT ONLY IN THE

20   RETAIL BUSINESS.

21     Q    I SEE.

22          SO DILLANOS ROASTED COFFEE FOR GLOBAL BARISTAS

23   US, ALSO KNOWN AS TULLY'S; CORRECT?

24     A    I HAVE ANSWERED YOUR QUESTION.

25     Q    OKAY.   THE ANSWER TO MY QUESTION IS "YES";

Huntington Court Reporters & Transcription, Inc.          124
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777
**Exhibit J**

USAO_00059218
00059274

```
 1   CORRECT?

 2           MR. HODGES:  ARGUMENTATIVE.

 3           THE WITNESS:  NO.  THE ANSWER IS EXACTLY --

 4           MR. HODGES:  MR. AVENATTI, IT HAS BEEN ASKED AND

 5   ANSWERED.  IT'S ARGUMENTATIVE.  IT'S AN IMPROPER QUESTION,

 6   ASKING HIM TO REPEAT THE RECORD.

 7   BY MR. STOLPER:

 8       Q   WAS EAGAN AVENATTI AN INVESTOR IN THE COFFEE

 9   BUSINESS?

10       A   I DON'T THINK SO, BUT THEY MAY HAVE BEEN.

11       Q   WHO WOULD KNOW?

12       A   WELL, I WOULD KNOW.  I JUST DON'T RECALL.

13       Q   OKAY.  YOU WERE THE HEAD OF -- YOU WERE THE

14   MANAGING PART OUR OF EAGAN AVENATTI; RIGHT?

15       A   YES.

16       Q   AND YOU WERE THE CEO OF GLOBAL BARISTAS; RIGHT?

17       A   DEPENDING ON THE PERIOD OF TIME, YES.

18       Q   WAS THERE A PERIOD OF TIME WHERE YOU WERE NOT

19   THE CEO OF GLOBAL BARISTAS?

20       A   WE HAVE ALREADY ESTABLISHED THAT.

21       Q   WELL, YOU SAID DEPENDING ON THE PERIOD OF TIME;

22   SO I'M TRYING TO UNDERSTAND WHAT YOU ARE TALKING ABOUT.

23       A   WE ALREADY COVERED THIS EARLIER --

24       Q   SO CAN YOU ANSWER MY QUESTION?

25           YOU SAID DEPENDING UPON THE PERIOD OF TIME.
```

Exhibit J

USAO_00059219
00059274

```
 1   WHAT PERIOD OF TIME ARE YOU REFERRING TO WHEN YOU WERE NOT

 2   THE CEO?

 3       A    A, WHEN GLOBAL BARISTAS DIDN'T HAVE A CEO; AND

 4   B, AFTER THE SALE OF THE COMPANY.

 5       Q    AND DILLANOS COFFEE ROASTERS ROASTED COFFEE, NOT

 6   FOR EAGAN AVENATTI, BUT FOR GLOBAL BARISTAS; CORRECT?

 7           MR. HODGES:  THAT'S BEEN ASKED AND ANSWERED.

 8   IT'S ARGUMENTATIVE.

 9   BY MR. STOLPER:

10       Q    HAVE YOU EVER SEEN AN AGREEMENT WHERE EAGAN

11   AVENATTI IS INVESTING IN GLOBAL BARISTAS?

12       A    I DON'T KNOW.  I MAY HAVE.  I MAY NOT HAVE.

13       Q    HAVE YOU SEEN SUCH AN AGREEMENT IN THE RECENT

14   PAST?

15           MR. HODGES:  VAGUE AND AMBIGUOUS.

16           THE WITNESS:  I DON'T RECALL.

17   BY MR. STOLPER:

18       Q    DO YOU HAVE REASON TO BELIEVE SUCH AN AGREEMENT

19   EXISTS?

20       A    I DON'T KNOW ONE WAY OR THE OTHER.

21       Q    WHO IS HALABY RESTORATION AND PAINTING?

22           MR. HODGES:  I'M SORRY?

23   BY MR. STOLPER:

24       Q    HALABY RESTORATION AND PAINTING?

25       A    I DON'T REMEMBER.
```

```
 1       Q    ISN'T IT TRUE THAT HALABY RESTORATION AND

 2   PAINTING IS THE SPECIALTY PAINTING CONTRACTOR THAT YOU

 3   HIRED TO PAINT THE INTERIOR OF YOUR HOUSE ON LIDO ISLE?

 4       A    IT MAY HAVE BEEN; MAY NOT HAVE BEEN.  I DON'T

 5   REMEMBER.  WE HIRED A CONTRACTOR.  I DON'T REMEMBER THE

 6   NAME OF THE COMPANY.

 7       Q    WAS HALABY A CLIENT OF EAGAN AVENATTI?

 8       A    I DON'T KNOW.  I DON'T THINK SO.

 9       Q    WHO IS BOB FAIETA?

10       A    BOB FAIETA IS A FRIEND OF MINE.

11       Q    HE'S ALSO A RACER; RIGHT?

12       A    I DON'T THINK HE RACES ANYMORE, BUT HE USED TO.

13   I THINK HE DID -- YEAH, HE DID.

14       Q    IS HE A CLIENT OF EAGAN AVENATTI?

15       A    ACTUALLY, HE HAS BEEN A CLIENT OF EAGAN

16   AVENATTI.

17       Q    SO HE'S PAID MONEY TO EAGAN AVENATTI FOR LEGAL

18   SERVICES?

19       A    I DON'T REMEMBER, BUT HE WAS A CLIENT.

20       Q    DID HE RECEIVE MONEY FROM EAGAN AVENATTI?

21       A    I DON'T REMEMBER.

22       Q    WAS HE AN EMPLOYEE OF EAGAN AVENATTI?

23       A    I DON'T THINK HE WAS AN EMPLOYEE, NO.

24       Q    WAS HE A VENDOR FOR EAGAN AVENATTI?

25       A    HE MAY HAVE BEEN.  YEAH.
```

Exhibit J

USAO_00059221
00059274

```
 1      Q    WHAT VENDING SERVICES DO YOU THINK HE MAY HAVE

 2   PROVIDED?

 3      A    I DON'T REMEMBER.  HE HASN'T BEEN PAID ANY MONEY

 4   IN A VERY LONG TIME.  I JUST DON'T REMEMBER.

 5      Q    WHO IS MARELI MINIUTTI?

 6      A    MARELI MINIUTTI WAS SOMEONE I HAD A PERSONAL

 7   RELATIONSHIP WITH.

 8      Q    WAS SHE A CLIENT OF EAGAN AVENATTI?

 9      A    YES.

10      Q    WAS EAGAN AVENATTI PAYING HER AS SUCH?

11      A    I DON'T UNDERSTAND.

12           MR. HODGES:  IT'S VAGUE AND AMBIGUOUS, "AS

13   SUCH."

14   BY MR. STOLPER:

15      Q    YOU'RE ABSOLUTELY RIGHT.  LET ME REPHRASE THAT

16   QUESTION.

17           WAS MS. MINIUTTI A CONTINGENCY CLIENT OR AN

18   HOURLY CLIENT?

19      A    I DON'T REMEMBER.

20      Q    DID YOU EVER -- DID EAGAN AVENATTI EVER RECEIVE

21   MONEY FROM MS. MINIUTTI FOR LEGAL SERVICES?

22      A    THEY MAY HAVE.  I JUST DON'T REMEMBER.

23      Q    DID EAGAN AVENATTI EVER PAY MONEY TO MS.

24   MINIUTTI THAT YOU CAN RECALL?

25      A    THEY MAY HAVE.  I JUST DON'T REMEMBER.
```

| 1 | Q | WHAT IS SILVER STAR SOUND & COMMUNICATIONS? |

1    Q    WHAT IS SILVER STAR SOUND & COMMUNICATIONS?

2    A    I THINK A SOUND AND COMMUNICATION COMPANY.

3    Q    DID THEY EVER DO WORK FOR EAGAN AVENATTI?

4    A    YES.

5    Q    WERE THEY A CLIENT OF EAGAN AVENATTI?

6    A    NO.

7    Q    THEY WERE A VENDOR?

8    A    I BELIEVE THAT'S TRUE.

9    Q    WHAT WORK DID THEY PERFORM FOR EAGAN AVENATTI?

10    A    I DON'T REMEMBER.

11    Q    DID EAGAN AVENATTI HAVE SOUND AND COMMUNICATION

12   NEEDS IN APRIL 2018?

13    A    I DON'T REMEMBER.

14    Q    WHO IS VINCENT BUILDERS?

15    A    A BUILDING COMPANY OR A CONTRACTOR.

16    Q    FOR WHO?  WHAT CONNECTIONS DO YOU HAVE WITH

17   VINCENT BUILDERS?

18    A    I DON'T HAVE ANY CONNECTION WITH VINCENT

19   BUILDERS?

20    Q    WHAT CONNECTION DID YOU HAVE WITH VINCENT

21   BUILDERS?

22    A    I DON'T HAVE ANY CONNECTION TO VINCENT BUILDERS.

23   I DON'T OWN VINCENT BUILDERS.  I DON'T UNDERSTAND YOUR

24   QUESTION.

25    Q    DID YOU EVER HIRE VINCENT BUILDERS?

Exhibit J

USAO_00059223
00059274

| | | |
|---|---|---|
| 1 | A | YES. |
| 2 | Q | FOR WHAT? |
| 3 | A | TO DO SOME CONTRACTING. |
| 4 | Q | WHERE? |
| 5 | A | ON MY RESIDENCE AND, I THINK, THE OFFICE. |
| 6 | Q | WAS VINCENT -- |
| 7 | A | BUT I MAY BE WRONG ABOUT THAT. |
| 8 | Q | YOU THINK THEY DID WORK FOR THE OFFICE? |
| 9 | A | SIR -- |
| 10 | Q | SO -- |
| 11 | A | -- YOU KEEP DOING THIS. |
| 12 | Q | WHAT WORK DID THEY DO FOR THE OFFICE? |
| 13 | A | I DON'T RECALL EXACTLY WHAT THEY DID. |
| 14 | Q | WERE THEY AN APPROVED CONTRACTOR BY THE IRVINE |
| 15 | | COMPANY? |
| 16 | A | I HAVE NO IDEA.  YOU HAVE TO TALK TO THE IRVINE |
| 17 | | COMPANY. |
| 18 | Q | WERE THEY A CLIENT OF EAGAN AVENATTI? |
| 19 | A | I DON'T BELIEVE SO. |
| 20 | Q | LET'S TALK FOR A COUPLE MINUTES ABOUT |
| 21 | | JEFFREY JOHNSON.  WHO IS MR. JOHNSON? |
| 22 | A | CLIENT OF THE FIRM. |
| 23 | Q | IS THE FIRM MAKING A STRUCTURED PAYOUT TO |
| 24 | | MR. JOHNSON? |
| 25 | A | NO. |

USAO_00059224
00059274

```
 1       Q    DID THE FIRM SETTLE A CASE ON BEHALF OF

 2   MR. JOHNSON?

 3       A    YES.

 4       Q    AND AFTER THE FIRM SETTLED THAT CASE ON BEHALF

 5   OF MR. JOHNSON, DID THE FIRM DISPERSE TO MR. JOHNSON THE

 6   MONEY THAT HE WAS DUE?

 7            MR. HODGES:  OBJECT.  THAT'S ATTORNEY-CLIENT

 8   PRIVILEGE.

 9            MR. STOLPER:  IT'S NOT.

10            MR. HODGES:  WELL, OKAY.  I SAY IT IS; YOU SAY

11   IT'S NOT.  THAT DOESN'T MEAN IT'S NOT.

12            THE WITNESS:  YEAH.  I'M NOT GOING TO ANSWER

13   THAT QUESTION BASED ON THE ATTORNEY-CLIENT PRIVILEGE.

14   BY MR. STOLPER:

15       Q    YOU ARE NOT GOING TO ANSWER WHETHER THE FIRM

16   PAID THE MONEY MR. JOHNSON WAS DUE BASED UPON -- I WANT TO

17   MAKE SURE THE RECORD IS CLEAR --

18       A    NO.

19       Q    -- BECAUSE I'M GOING TO ASK FOR A RULING ON

20   THIS --

21       A    NO, NO.

22            SIR, HERE IS THE BOTTOM LINE.  I'M NOT GOING TO

23   BE ANSWERING QUESTIONS ABOUT COMMUNICATIONS AND

24   TRANSACTIONS BETWEEN ME AND MY CLIENT THAT ARE PRIVILEGED.

25   THAT'S PRIVILEGED.
```

```
 1   BY MR. STOLPER:

 2        Q    DOES MR. --

 3        A    AND YOU ARE ALSO TALKING ABOUT SOMETHING THAT

 4   TOOK PLACE A LONG TIME AGO, MANY, MANY YEARS AGO.

 5        Q    SO THERE'S NO REASON --

 6        A    LET'S SEE THE JUDGE.

 7        Q    THAT'S FINE.  YOU'VE ALREADY ASKED FOR THE

 8   JUDGE.  HE'LL COME OUT WHEN HE COMES OUT.

 9   BY MR. STOLPER:

10        Q    SO THERE IS NO REASON FOR YOU TO BE PAYING MR.

11   JOHNSON ON AN ONGOING BASIS?

12        A    I'M NOT ANSWERING --

13   BY MR. STOLPER:

14        Q    WELL, WHEN DID YOUR REPRESENTATION OF --

15             MR. HODGES:  COUNSEL, I WANT TO CONFER WITH MY

16   CLIENT.

17             MR. STOLPER:  SURE.

18             (JUDGE TAKES THE BENCH.)

19             THE CLERK:  DEPARTMENT 44 IS ONCE AGAIN IN

20   SESSION.

21             THE COURT:  OKAY.  SO I HAVE ONCE AGAIN REJOINED

22   THE PARTIES AND COUNSEL AS THEY CONDUCT THEIR EXAMINATION

23   OF MR. AVENATTI, AND EVERYONE IS PRESENT.

24             AND WHAT CAN I HELP YOU WITH?

25             MR. HODGES:  I THINK THIS ONE IS ON ME, BECAUSE
```

1    THE FIRST QUESTION THAT WAS POSED THAT I ADVISED MR.

2    AVENATTI NOT TO ANSWER WAS A QUESTION BY COUNSEL ASKING

3    FOR THE SPECIFIC SALARY OF A NAMED INDIVIDUAL OF THE FIRM.

4    AND I ASSERTED --

5            THE COURT:  AND THAT FIRM IS WHAT?

6            MR. HODGES:  I THINK THE QUESTION WAS AVENATTI &

7    ASSOCIATES OR EAGAN AVENATTI, BUT REGARDLESS, THAT YOUNG

8    LADY, OR HOWEVER OLD SHE MAY BE, THAT LADY'S SALARY IS HER

9    ABSOLUTE RIGHT TO PRIVACY.  THERE IS NO BUSINESS, NO

10   RELEVANCY FOR THAT INFORMATION COMING OUT IN THIS PUBLIC

11   PROCEEDING.  THAT'S NOTHING TO DO WITH WHATSOEVER, THEIR

12   ABILITY TO QUESTION.

13            IF THEY WANT TO KNOW THE TOTAL AMOUNT THAT THIS

14   PARTICULAR ENTITY PAYS SALARIES, WHICH IS WHAT YOUR HONOR

15   HAS ALREADY INDICATED IS PROPER FODDER FOR THE

16   QUESTIONING, THAT IS ONE THING.  BUT TO START IDENTIFYING

17   INDIVIDUALS AND HOW MUCH THEY EARN HAS NO BEARING

18   WHATSOEVER ON THIS PROCEEDING.

19            THE COURT:  WHAT IS THE RELEVANCE?

20            MR. STOLPER:  I GOT -- ACTUALLY, YOUR HONOR, I

21   ULTIMATELY ASKED THE QUESTION HOW MUCH WAS PAID IN SALARY.

22   I GOT WHAT I WANTED SO I'M HAPPY TO LET THAT QUESTION GO.

23            THE COURT:  OKAY.

24            MR. STOLPER:  MOVE ON TO SOMETHING ELSE.

25            MR. HODGES:  SECOND ISSUE WAS?

Exhibit J

USAO_00059227
00059274

```
 1              I'M SORRY.  YOU WANT --

 2              MR. STOLPER:  SURE.  SO I ASKED MR. AVENATTI A

 3    QUESTION ABOUT WHETHER OR NOT A CLIENT HAD BEEN FULLY PAID

 4    THE AMOUNT OF MONEY HE WAS DUE, THE LAW FIRM.  I'M

 5    EXPLORING, OBVIOUSLY, WHETHER THERE ARE OTHER --

 6              THE COURT:  WHETHER A CLIENT HAD PAID THE LAW

 7    FIRM?

 8              MR. STOLPER:  THE OPPOSITE.  WHETHER THE LAW

 9    FIRM HAD PAID THE MONEY THE CLIENT IS DUE --

10              THE COURT:  FROM THE CLIENT TRUST?

11              MR. STOLPER:  FOR A SETTLEMENT, YES.

12              AND MR. AVENATTI ASSERTED AN OBJECTION TO THAT

13    AND SOMEHOW ATTORNEY-CLIENT PRIVILEGE.  I'M NOT SEEKING

14    COMMUNICATIONS.  I DIDN'T EVEN ASK HOW MUCH IT WAS.  I

15    SIMPLY ASKED -- I AM TRYING TO FIGURE OUT IF THERE IS

16    ANOTHER CREDITOR OUT THERE WE ARE GOING TO HAVE TO DEAL

17    WITH.  AND SO PART OF THE QUESTION IS DOES THE -- IS MR.

18    AVENATTI GOING TO HAVE ESSENTIALLY A PROBLEM WITH THIS

19    PARTICULAR CLIENT.

20              SO MY QUESTION IS HAS THAT PERSON BEEN GIVEN THE

21    MONEY THEY WERE DUE?

22              MR. HODGES:  IT'S ATTORNEY-CLIENT PRIVILEGE.  HE

23    IS SPECIFICALLY ASKING MR. AVENATTI FOR COMMUNICATIONS AND

24    THE SUBSTANCE OF COMMUNICATIONS BETWEEN HIM AND HIS

25    CLIENTS, NUMBER ONE.
```

**Exhibit J**

USAO_00059228
00059274

1      NUMBER TWO --

2           THE COURT:  OKAY.  I OVERRULED THAT.  IT IS A

3   "YES" OR "NO" QUESTION AS TO WHETHER OR NOT HE HAS BEEN

4   PAID ALL THE MONEY THAT HE WAS OWED.  IT'S OVERRULED.

5           SO GO AHEAD AND ANSWER IT.

6           THE WITNESS:  TO THE BEST OF MY KNOWLEDGE, YES.

7           THE COURT:  NEXT.

8           MR. HODGES:  THAT'S ALL I HAVE.

9           THE COURT:  OKAY.

10          THE WITNESS:  SO WAIT A MINUTE.  NO MORE

11  QUESTIONS ABOUT MR. JOHNSON?

12          MR. STOLPER:  NO.  I HAVE MORE QUESTIONS ABOUT

13  MR. JOHNSON.

14          THE WITNESS:  WELL, THEN WE WANT --

15  BY MR. STOLPER

16          MR. STOLPER:  I AM GOING TO DO MY BEST NOT TO --

17          THE WITNESS:  NO.

18          MR. STOLPER:  -- INVADE ATTORNEY-CLIENT --

19          THE WITNESS:  THEN I WANT HIS HONOR ON THE

20  BENCH.

21          YOUR HONOR, THESE QUESTIONS DELVE INTO -- THIS

22  IS A CURRENT CLIENT OF MINE AND A CURRENT CLIENT OF THE

23  FIRM.  AND THEY ARE TALKING ABOUT A TRANSACTION THAT TOOK

24  PLACE A NUMBER OF YEARS AGO.  THIS HAS NOTHING TO DO WITH

25  MY ASSETS AND LIABILITIES, ME PERSONALLY.  THIS IS MICHAEL

```
 1    AVENATTI --

 2              THE COURT:  ALL DEPENDS UPON WHAT THE QUESTION

 3    IS.

 4              THE WITNESS:  I UNDERSTAND THAT.  THAT'S WHY I

 5    WANT YOU HERE, BECAUSE THIS IS IMPROPER.  AND THEY ARE

 6    GOING TO DELVE INTO ATTORNEY-CLIENT PRIVILEGE INFORMATION

 7    NOW, AND THIS IS -- WE ARE SO FAR AFIELD, AND I WOULD LIKE

 8    YOUR HONOR ON THE BENCH.

 9              THE COURT:  WELL, THAT DOESN'T NECESSARILY MEAN

10    I WILL BE ON THE BENCH.

11              THE WITNESS:  I AGREE.  I AGREE.

12              THE COURT:  TELL ME GENERALLY WHAT YOU ARE GOING

13    TO INQUIRE INTO WITH RESPECT TO THIS.

14              MR. STOLPER:  I AM GOING TO ASK IF MR. AVENATTI

15    PERSONALLY OR HIS FIRM HAS ANY FUTURE OBLIGATIONS TO MAKE

16    PAYMENTS TO MR. JOHNSON.

17              THE COURT:  AND HOW MANY QUESTIONS DO YOU PLAN

18    TO ASK?

19              THE WITNESS:  THAT'S ONE QUESTION.

20              MR. STOLPER:  THE ANSWER IS IT DEPENDS HOW MANY

21    ANSWERS AS I GO, YOUR HONOR.  BUT I INTEND TO ASK THAT

22    QUESTION --

23              THE COURT:  ASK THE QUESTION.

24    BY MR. STOLPER:

25         Q    SURE.
```

**Exhibit J**

USAO_00059230
00059274

1        MR. AVENATTI, DO YOU OR YOUR LAW FIRMS HAVE ANY

2   CURRENT OBLIGATION TO MAKE PAYMENTS TO MR. JOHNSON?

3        A    TO THE BEST OF MY KNOWLEDGE, NO.

4        Q    MY NEXT QUESTION IS, WHEN DID THOSE OBLIGATIONS

5   TO PAY TO MR. JOHNSON CEASE?

6             MR. HODGES:  FOUNDATION.  SPECULATION WITH

7   RESPECT TO WHETHER OR NOT ANY CEASE OR CONTINUE TO EXIST

8   BECAUSE --

9             THE COURT:  WELL, I HAVEN'T BEEN HERE FOR THE

10  WHOLE EXAMINATION, BUT IT SOUNDS LIKE IT PROBABLY ASSUMES

11  FACTS.

12            MR. STOLPER:  SURE.  I CAN LAY A FOUNDATION,

13  YOUR HONOR.

14  BY MR. AVENATTI:

15       Q    MR. AVENATTI, HAS YOUR LAW FIRM BEEN MAKING

16  PERIODIC PAYMENTS TO JEFFREY JOHNSON THROUGH AT LEAST

17  2018?

18       A    I THINK SO, YES.

19       Q    WHEN DID YOUR OBLIGATION TO MAKE PAYMENTS TO

20  MR. JOHNSON CEASE, IF THEY HAVE CEASED?

21       A    I DON'T RECALL.

22       Q    OKAY.  DO YOU RECALL WHAT THE NATURE OF THE --

23  WHAT THE NATURE OF THE SETTLEMENT WAS WHEREBY YOU WERE

24  MAKING PAYMENTS?

25       A    I DON'T.

USAO_00059231

00059274

```
 1              THE COURT:  DOES THAT COVER IT?

 2              MR. STOLPER:  COUPLE MORE QUESTIONS.

 3    BY MR. STOLPER:

 4       Q    WHY THE PAYMENTS TO MR. JOHNSON BEING MADE OUT

 5    OF -- SOMETIMES OUT OF AN IOLTA ACCOUNT AND SOMETIMES OUT

 6    OF AN OPERATING ACCOUNT?

 7              MR. HODGES:  FOUNDATION.  COMPOUND.

 8              THE COURT:  SUSTAINED.

 9    BY MR. STOLPER:

10       Q    ARE THE PAYMENTS TO MR. JOHNSON SOMETIMES BEING

11    MADE OUT OF AN IOLTA ACCOUNT?

12       A    I DON'T RECALL.

13       Q    ARE YOU IN A POSITION TO DENY THAT THAT IS WHAT

14    IS GOING ON?

15              MR. HODGES:  ARGUMENTATIVE.

16              THE COURT:  WELL, SUSTAINED.

17    BY MR. STOLPER:

18       Q    I AM LOOKING AT THE EAGAN AVENATTI OPERATING

19    ACCOUNT.  I SEE A PAYMENT TO MR. JOHNSON DATED 12-13-2017,

20    JANUARY 5TH, 2018, JANUARY 11, 2018, AND IT APPEARS TO BE

21    ONE PAYMENT PER MONTH TO THE TUNE OF $1900.

22              IS THAT THE AMOUNT OF MONEY THAT EAGAN AVENATTI

23    OR YOUR OTHER LAW FIRMS ARE OBLIGATED TO PAY MR. JOHNSON

24    AS PART OF HIS SETTLEMENT?

25              MR. HODGES:  FIRST LAY A FOUNDATION AS TO
```

Exhibit J

USAO_00059232

00059274

1    WHATEVER DOCUMENT IS BEING REFERRED TO.

2              THE WITNESS:  ISN'T THAT PRIVILEGED?

3              THE COURT:  HOLD ON A SECOND.

4              MR. HODGES:  THE PREMISE OF THE QUESTION WAS --

5              THE COURT:  I THINK IT -- I THINK IT ASSUMES

6    FACTS.  SUSTAINED.

7              MR. STOLPER:  WELL, IF --

8              THE COURT:  THE QUESTION THAT HE'S OBLIGATED TO

9    PAY A CERTAIN AMOUNT --

10   BY MR. STOLPER:

11        Q    MR. AVENATTI, YOUR LAW FIRM WAS PAYING

12   MR. JOHNSON $1900 A MONTH; CORRECT?

13        A    I DON'T KNOW WHETHER THAT'S TRUE OR NOT.

14             MR. STOLPER:  I HAVE THE BANK RECORDS THAT SHOW

15   THAT, YOUR HONOR.

16             MR. HODGES:  ARGUMENTATIVE.

17             MR. STOLPER:  I UNDERSTAND HE --

18             THE COURT:  HE ANSWERED THE QUESTION.  HE

19   PROVIDED AN ANSWER.

20             SO WHAT IS YOUR NEXT QUESTION?

21   BY MR. STOLPER:

22        Q    DO YOU HAVE ANY RECOLLECTION AS TO WHAT THE

23   AMOUNT OF MONEY THE LAW FIRM WAS OBLIGATED TO PAY

24   MR. JOHNSON AS PART OF THE SETTLEMENT?

25             THE COURT:  OKAY.  I ALREADY SUSTAINED AN

Exhibit J

USAO_00059233
00059274

```
 1    OBJECTION TO THAT QUESTION.

 2              MR. HODGES:  THANK YOU.

 3              MR. STOLPER:  GIVE ME ONE MINUTE, YOUR HONOR, TO

 4    GO TRUE MY BRAIN.

 5    BY MR. STOLPER:

 6         Q    DO YOU HAVE ANY INTENTION TO CONTINUE MAKING

 7    PAYMENTS TO MR. JOHNSON GOING FORWARD?

 8         A    I DON'T KNOW.  I HAVEN'T THOUGHT ABOUT IT.

 9         Q    DO YOU HAVE ANY UNDERSTANDING AS TO WHETHER OR

10    NOT PAYMENTS TO MR. JOHNSON WERE BEING PAID BY DIFFERENT

11    LAW FIRMS YOU WERE AFFILIATED WITH?

12              MR. HODGES:  PRIVILEGE AND WORK PRODUCT.  THIS

13    WAS IN THE CONTEXT OF REPRESENTATION.  HE SHOULD NOT BE

14    ANSWERING THAT QUESTION.

15              THE COURT:  CAN YOU READ BACK THE QUESTION.

16              (THE QUESTION WAS READ.)

17              MR. HODGES:  CALLS FOR HIS THOUGHTS,

18    IMPRESSIONS, AND CONCLUSIONS, YOUR HONOR, IN THE CONTEXT

19    OF REPRESENTATION.  PER SE WORK PRODUCT.

20              THE COURT:  OVERRULED.

21              YOU MAY ANSWER.

22              THE WITNESS:  I HAVE NO IDEA.

23    BY MR. STOLPER:

24         Q    WAS MR. JOHNSON REPRESENTED BY DIFFERENT LAW

25    FIRMS, OR WAS HE REPRESENTED BY ONE OF YOUR LAW FIRMS, IF
```

Exhibit J

USAO_00059234
00059274

1    YOU RECALL?

2         A    I DON'T RECALL ONE WAY OR THE OTHER.

3              MR. STOLPER:  I HAVE NOTHING FURTHER ON

4    MR. JOHNSON AT THIS POINT, YOUR HONOR.

5              THE COURT:  OKAY.  WE ARE GOING TO BE -- I AM

6    GOING TO BE RECESSING THIS EXAMINATION AT 3:00; SO PLAN

7    ACCORDINGLY.

8              MR. STOLPER:  YES, YOUR HONOR.

9              MR. HODGES:  I'M SORRY, YOUR HONOR.  DID YOU SAY

10   AT 3:00?

11             THE COURT:  AT 3:00.

12             MR. HODGES:  THANK YOU VERY MUCH.

13             THE WITNESS:  RAISE ONE ISSUE.

14             THE COURT:  OKAY.

15             THE WITNESS:  I APPRECIATE IT.  IF I AM GOING TO

16   BE ASKED OTHER QUESTIONS ABOUT OTHER CLIENTS ALONG THESE

17   LINES, I WOULD LIKE YOUR HONOR -- AND I KNOW YOUR HONOR IS

18   VERY BUSY, AND I'M VERY APPRECIATIVE OF YOUR TIME.

19             BUT I WOULD LIKE YOUR HONOR ON THE BENCH SO THAT

20   WE CAN BE EFFICIENT ON THIS BECAUSE I HAVE A FEELING THAT

21   I KNOW WHERE THIS IS GOING, AND IT IS GOING TO BE MORE OF

22   THE SAME.  AND IT RAISES SERIOUS PRIVILEGE ISSUES FOR ME

23   SO --

24             THE COURT:  WELL, I THINK THAT PERHAPS IS

25   UNDERSTANDABLE.  I MEAN, IF IT'S A TOUCHY ISSUE AND I'M

Exhibit J

USAO_00059235
00059274

1   NOT HERE, OVER AND OVER AGAIN YOU'RE GOING TO CALL ME OUT.

2   SO YEAH, LET ME KNOW WHAT YOU ARE GOING DO.

3          MR. STOLPER:  ACTUALLY, I DON'T INTEND TO ASK

4   ANYMORE QUESTIONS ALONG THE LINES OF MR. JOHNSON OR I

5   DON'T THINK --

6          I WAS GOING TO ASK YOUR HONOR, WE'RE GOING TO

7   HAVE A COUPLE OF MOTIONS FOR TURNOVERS AND WHATNOT.  SO IF

8   WE CAN DO THAT TEN 'TIL 3:00 THAT WOULD BE TERRIFIC.

9          THANK YOU, YOUR HONOR.

10          THE COURT:  OKAY.

11          MR. HODGES:  THANK YOU.

12          THE COURT:  CARRY ON.

13              (JUDGE LEAVES THE BENCH.)

14   BY MR. STOLPER:

15     Q    MR. AVENATTI, ANDERS WALSH FINE ART, WHAT IS

16   THAT?

17     A    I AM SURE IT IS AN ART GALLERY SOMEWHERE,

18   SOMETHING.

19     Q    ARE THEY A CLIENT OF EAGAN AVENATTI?

20     A    I DON'T REMEMBER.

21     Q    DO YOU RECALL DOING ANY LEGAL WORK FOR AN ART

22   GALLERY?

23     A    I DON'T RECALL ONE WAY OR THE OTHER.

24     Q    WAS CHRISTINE AVENATTI CARLIN EVER AN EMPLOYEE

25   OF EAGAN AVENATTI?

Exhibit J

USAO_00059236
00059274

```
 1        A    SHE MAY HAVE BEEN AT SOME POINT IN TIME.

 2        Q    HAS SHE BEEN AN EMPLOYEE OF EAGAN AVENATTI IN

 3   THE PAST FIVE OR SIX YEARS?

 4        A    I DON'T REMEMBER.

 5        Q    SHE IS YOUR EX-WIFE?

 6        A    SHE IS.

 7        Q    HAS SHE BEEN A VENDOR OF EAGAN AVENATTI?

 8        A    I DON'T THINK SHE HAS BEEN A VENDOR.

 9        Q    HAS SHE EVER BEEN A CLIENT OF EAGAN AVENATTI?

10        A    I THINK SHE WAS AT ONE TIME.

11        Q    WAS SHE A CLIENT OF EAGAN AVENATTI IN THE PAST

12   SIX YEARS?

13        A    I THINK SHE WAS.

14        Q    THERE ARE MONTHLY PAYMENTS TO MS. CARLIN FROM

15   AVENATTI & ASSOCIATES GOING BACK FROM 2016 ALL THE WAY TO

16   2018.  WHAT ARE THOSE PAYMENTS FOR?

17             MR. HODGES:  ASSUMES FACTS.  LACKS FOUNDATION.

18             THE WITNESS:  I DON'T KNOW WHETHER THAT IS TRUE

19   OR FALSE.

20   BY MR. STOLPER:

21        Q    HAS AVENATTI & ASSOCIATES BEING PAYING MS.

22   CARLIN ESSENTIALLY MONTHLY SINCE 2016?

23        A    I DON'T KNOW.

24        Q    YOU DON'T KNOW.

25             DO YOU KNOW IF THERE'S ANY REASON WHY AVENATTI &
```

Exhibit J

USAO_00059237
00059274

1  ASSOCIATES WOULD BE PAYING MS. CARLIN MONTHLY?

2      A     THERE MAY BE; THERE MAY NOT BE.  I DON'T KNOW.

3      Q     CAN YOU THINK OF ANY REASON SITTING HERE TODAY

4  WHY AVENATTI & ASSOCIATES WOULD BE PAYING YOUR EX-WIFE

5  ROUGHLY 10,000 -- AT LEAST $10,000 A MONTH?

6      A     I PAY CHILD SUPPORT TO MY EX-WIFE, AND I OWN

7  AVENATTI & ASSOCIATES; SO THERE WOULD NOT BE ANYTHING

8  IMPROPER ABOUT ME PAYING MY EX-WIFE THROUGH AVENATTI --

9      Q     ARE THERE ANY OTHER PERSONAL EXPENSES THAT YOU

10  RUN THROUGH AVENATTI & ASSOCIATES?

11          MR. HODGES:  ASKED AND ANSWERED.  ARGUMENTATIVE.

12          THE WITNESS:  I'M SURE THERE ARE.

13  BY MR. STOLPER:

14      Q     IN FACT, YOU ROUTINELY USE AVENATTI & ASSOCIATES

15  TO PAY PERSONAL EXPENSES; IS THAT CORRECT?

16      A     NO.  I WOULD DISAGREE WITH YOU.

17      Q     SO IT WAS ONLY ON A RARE OCCASION?

18      A     I DIDN'T SAY THAT EITHER.

19      Q     OKAY.  HOW WOULD YOU CHARACTERIZE YOUR

20  PROPENSITY TO USE AVENATTI & ASSOCIATES TO PAY FOR YOUR

21  PERSONAL EXPENSES?

22      A     I WOULDN'T CHARACTERIZE IT ONE WAY OR THE OTHER.

23  OH, ACTUALLY I WOULD CHARACTERIZE IT ONE WAY.  I WOULD

24  CHARACTERIZE IT AS ENTIRELY PROPER.  THAT'S HOW I WOULD

25  CHARACTERIZE IT, COUNSEL.

USAO_00059238
00059274

```
 1        Q    SO THERE WAS NO REASON WHY YOU SHOULDN'T BE

 2   USING AVENATTI & ASSOCIATES TO PAY YOUR PERSONAL EXPENSES?

 3             MR. HODGES:  ARGUMENTATIVE.  LACKS FOUNDATION.

 4             THE WITNESS:  SIR, WHAT I'M SAYING IS ANY

 5   EXPENSES THAT WERE PAID BY AVENATTI & ASSOCIATES WERE

 6   CERTAINLY LEGAL AND ETHICAL AT ALL RELEVANT TIMES AND

 7   APPROPRIATE.

 8   BY MR. STOLPER:

 9        Q    I'M JUST ASKING WHETHER OR NOT THEY ARE PERSONAL

10   VERSUS BUSINESS EXPENSES.

11             ARE PAYMENTS BEING MADE TO YOUR EX-WIFE A

12   BUSINESS EXPENSE OF AVENATTI & ASSOCIATES OR IS THAT

13   MEETING PERSONAL OBLIGATIONS OF YOU INDIVIDUALLY?

14        A    I DON'T KNOW.  WOULD DEPEND ON THE PAYMENT.

15        Q    BUT SOME OF THE PAYMENTS, YOU WOULD AGREE WITH

16   ME, ARE FOR MEETING YOUR OWN PERSONAL OBLIGATIONS;

17   CORRECT?

18        A    SURE.  THERE IS NOTHING WRONG WITH THAT.

19        Q    THE PAYMENTS THAT YOU ARE MAKING TO

20   KOHL SCROGHAM CONSULTING, WHO IS A RACE CONSULTANT, THAT'S

21   A PERSONAL EXPENSE OR A BUSINESS EXPENSE?

22        A    THAT WOULD HAVE BEEN A BUSINESS EXPENSE.

23        Q    AND THE BUSINESS THAT MR. SCROGHAM IS ADVISING

24   AVENATTI & ASSOCIATES ON IS WHAT?

25        A    WHAT IS THE TIME PERIOD?
```

**Exhibit J**

USAO_00059239
00059274

```
 1        Q    2016.

 2        A    I'M SORRY.

 3        Q    2016.

 4        A    THREE YEARS AGO?

 5        Q    IF THAT'S WHAT IT IS.

 6        A    I DON'T RECALL.

 7        Q    MR. SCROGHAM IS A RACE CONSULTANT; CORRECT?

 8        A    WELL, NOT EXACTLY.

 9        Q    HE WORKS IN THE AUTOMOTIVE RACING BUSINESS?

10        A    THAT HE DOES.

11        Q    AND WAS AVENATTI & ASSOCIATES IN THE AUTOMOTIVE

12   RACING BUSINESS?

13        A    YES.

14        Q    HOW WAS AVENATTI & ASSOCIATES IN THE AUTOMOTIVE

15   RACING BUSINESS?

16        A    I DON'T KNOW HOW THEY WERE BUT THEY WERE.  I

17   DON'T UNDERSTAND WHAT YOU MEAN BY --

18        Q    SURE.  I UNDERSTOOD AVENATTI & ASSOCIATES TO BE

19   AN APC, A PROFESSIONAL CORPORATION, A LAW CORPORATION; IS

20   THAT CORRECT?

21        A    CORRECT.

22        Q    AND WHAT -- IS THE RACE BUSINESS SOMEHOW

23   CONNECTED TO THE LEGAL BUSINESS OF AVENATTI & ASSOCIATES

24   OR A SEPARATE LINE OF BUSINESS?

25        A    NO.  IT IS CONNECTED.
```

**Exhibit J**

USAO_00059240

00059274

```
 1        Q    WHAT IS THE CONNECTION?

 2        A    WELL, BECAUSE AVENATTI & ASSOCIATES DID SOME

 3   LEGAL WORK IN THE RACING BUSINESS.

 4        Q    AND SO YOU IT IS YOUR TESTIMONY THAT PAYMENTS TO

 5   KOHL SCROGHAM WERE DONE NOT ON -- NOT TO -- NOT FOR YOUR

 6   PERSONAL RACING HOBBY BUT AS PART OF THE ORDINARY BUSINESS

 7   OF AVENATTI & ASSOCIATES?

 8             MR. HODGES:  LACKS FOUNDATION.

 9             THE WITNESS:  I DIDN'T SAY THAT.

10   BY MR. STOLPER:

11        Q    SOME OF THE PAYMENTS WERE PERSONAL; SOME OF THE

12   PAYMENTS WERE BUSINESS?

13        A    I CAN'T ANSWER THAT WITHOUT LOOKING AT THE

14   PAYMENT, LOOKING AT BACKUP AND LOOKING AT THE INDIVIDUAL.

15        Q    CAN YOU DESCRIBE WHAT AVENATTI & ASSOCIATES'

16   INTEREST WAS IN AUTOMOTIVE RACING?

17        A    I DON'T RECALL AS I SIT HERE.

18        Q    DO YOU RECALL THEY WERE THE AUTOMOTIVE RACING

19   BUSINESS BUT YOU DON'T RECALL WHAT THEIR INTEREST WAS IN

20   THAT BUSINESS?

21        A    I AM GOING TO STAND ON MY PRIOR ANSWERS.

22        Q    OKAY.  DO ANY OF YOUR OTHER LAW FIRMS ALSO

23   ENGAGE IN THE BUSINESS OF RACE -- YEAH, IN RACE CARS?

24        A    CURRENTLY, NO.

25        Q    HISTORICALLY?
```

Exhibit J

USAO_00059241

00059274

```
 1        A     MAYBE.

 2        Q     SO EAGAN AVENATTI WAS ALSO IN THE BUSINESS OF

 3   FIELDING A RACE CAR?

 4        A     WHEN DID WE GET TO FIELDING A RACE CAR?  I NEVER

 5   SAID THAT.

 6        Q     I'M ASKING.

 7        A     NOT THAT I RECALL.

 8        Q     RACING IS A PERSONAL HOBBY OF YOURS TOO;

 9   CORRECT?

10        A     WELL, NOT LATELY BECAUSE I HAVE BEEN MORE

11   CONCERNED WITH OTHER THINGS.

12        Q     BUT IN 2016, 2017, IT WAS A PERSONAL HOBBY OF

13   YOURS; CORRECT?

14        A     I DON'T KNOW ABOUT 2017.  MAYBE.  I WOULD HAVE

15   TO GO BACK AND --

16        Q     HOW ABOUT 2016?

17        A     I JUST DON'T REMEMBER 2016.

18        Q     HOW ABOUT 2015?

19        A     2015, YES.

20        Q     WHO IS DAMIEN FAULKNER?

21        A     HE'S A PROFESSIONAL RACE CAR DRIVER AND A RACING

22   COACH.

23        Q     WAS HE YOUR RACING COACH?

24        A     NOT REALLY A COACH.  HE WAS A CO-DRIVER OF MINE.

25        Q     HE DROVE A CAR THAT YOU PAID FOR; CORRECT?  AND
```

Exhibit J

USAO_00059242
00059274

1    BY "YOU," I MEAN AVENATTI & ASSOCIATES.

2         A    I DON'T REMEMBER.  I DON'T REMEMBER WHO PAID FOR

3    WHAT CAR WHEN.

4         Q    HE WAS A MEMBER OF THE RACE TEAM YOU WERE ON;

5    CORRECT?

6         A    FOR A PERIOD OF TIME, YES.

7         Q    AND THAT RACE TEAM WAS UNDER THE CORPORATE NAME

8    GB AUTOSPORTS; CORRECT?

9         A    I ACTUALLY THINK IT'S GB AUTOSPORT, YES.

10        Q    WAS DAMIEN FAULKNER PROVIDING SERVICES TO

11   AVENATTI & ASSOCIATES?

12        A    AVENATTI & ASSOCIATES, AMONG OTHER THINGS, WAS

13   SPONSORING MY RACE ACTIVITIES, WHICH WAS COMPLETELY LEGAL

14   AND ETHICAL, AND THERE'S NOTHING WRONG WITH IT.

15        Q    BY YOU, I MEAN YOU IN YOUR INDIVIDUAL CAPACITY,

16        A    I DON'T UNDERSTAND THE QUESTION.

17        Q    HOW DID YOU RACING HELP AVENATTI & ASSOCIATES?

18        A    GENERATED A LOT OF BUSINESS.

19        Q    FOR AVENATTI & ASSOCIATES?

20        A    FOR AVENATTI & ASSOCIATES, EAGAN AVENATTI, FOR

21   ALL KINDS OF PEOPLE.

22        Q    AND SO WAS DAMIEN FAULKNER -- THE MONEY THAT WAS

23   BEING SPENT BY AVENATTI & ASSOCIATES TO DAMIEN FAULKNER,

24   THAT WAS PART OF AVENATTI & ASSOCIATES' ORDINARY BUSINESS

25   EXPENSES?

Exhibit J

USAO_00059243
00059274

```
 1              MR. HODGES:  ASSUMES FACTS NOT IN EVIDENCE.

 2              THE WITNESS:  I HAVE NO IDEA.  I'M NOT AN EXPERT

 3    ON ORDINARY BUSINESS EXPENSES.

 4    BY MR. STOLPER:

 5         Q    DID YOU EVER REIMBURSE AVENATTI & ASSOCIATES FOR

 6    ANY RACING-RELATED ACTIVITY?

 7         A    WHY WOULD I DO THAT?

 8         Q    JUST ASKING IF YOU DID.

 9         A    I MAY HAVE OR I MAY NOT HAVE.  IT SEEMS A LITTLE

10    ODD TO ME.

11         Q    SO YOU DON'T KNOW ONE WAY OR THE OTHER WHETHER

12    OR NOT YOU INDIVIDUALLY REIMBURSED AVENATTI & ASSOCIATES

13    FOR ANY RACE-RELATED ACTIVITY --

14         A    I AM SURE I DID.

15         Q    WAS AVENATTI & ASSOCIATES ALSO IN THE COFFEE

16    BUSINESS?

17         A    I DON'T KNOW WHAT YOU MEAN BY THAT.

18         Q    WAS AVENATTI & ASSOCIATES ALSO IN THE COFFEE

19    BUSINESS?

20         A    I DON'T UNDERSTAND THE QUESTION.

21         Q    WHAT PART OF THE QUESTION DO YOU NOT UNDERSTAND?

22         A    WHAT DO YOU MEAN, WERE THEY IN THE COFFEE

23    BUSINESS?

24         Q    DO THEY -- YOU SAID YOU WERE IN THE RACE CAR

25    BUSINESS, THEY WERE IN THE LAW BUSINESS.  WERE THEY ALSO
```

Exhibit J

USAO_00059244
00059274

1    IN THE BUSINESS OF SELLING COFFEE?

2        A    NOT DIRECTLY, I DON'T THINK.  NO.

3        Q    WERE THEY INDIRECTLY IN THE COFFEE BUSINESS?

4        A    WELL, I MEAN, IT DEPENDS.  IT DEPENDS ON THE

5    RELATIONSHIP BETWEEN AVENATTI & ASSOCIATES AND GLOBAL

6    BARISTAS.

7        Q    WHAT WAS THE RELATION BETWEEN AVENATTI &

8    ASSOCIATES AND GLOBAL BARISTAS?

9        A    IT DEPENDED.  IT VARIED FROM TIME TO TIME.

10       Q    HOW SO?

11       A    IT VARIED FROM TIME TO TIME.  I DON'T UNDERSTAND

12   HOW TO ANSWER THAT QUESTION.

13       Q    WHAT DOES THAT MEAN WHEN YOU SAY THERE WAS A

14   RELATION AND IT VARIED?  WHAT WAS -- GIVE ME THE HIGHS AND

15   THE LOWS OF THE RELATIONSHIP.

16       A    WELL, THIS ISN'T --

17           MR. HODGES:  VAGUE AND AMBIGUOUS AS TO HIGHS AND

18   LOWS OF A RELATIONSHIP.

19           YOU CAN ANSWER IF YOU UNDERSTAND THE QUESTION.

20           THE WITNESS:  THIS WASN'T A PERSONAL INTIMATE

21   RELATIONSHIP, SIR.  SO I DON'T KNOW HOW TO DISCUSS WITH

22   YOU THE HIGHS AND LOWS OF A RELATIONSHIP.

23   BY MR. STOLPER:

24       Q    WHAT WAS THE NATURE OF THE RELATIONSHIP BETWEEN

25   AVENATTI & ASSOCIATES AND THE COFFEE BUSINESS, GLOBAL

Exhibit J

USAO_00059245
00059274

1    BARISTAS?

2         A    I DON'T REMEMBER WHAT THE NATURE OF THE

3    RELATIONSHIP WAS.

4         Q    WAS AVENATTI & ASSOCIATES PAYING THE EXPENSES OF

5    THE COFFEE BUSINESS?

6         A    I DON'T REMEMBER.

7         Q    WOULD YOU AGREE THAT AVENATTI & ASSOCIATES --

8    WAS AVENATTI & ASSOCIATES, FOR EXAMPLE, PAYING DILLANOS

9    COFFEE ROASTERS?

10        A    THEY MAY HAVE MADE PAYMENTS TO DILLANOS COFFEE

11   ROASTERS.

12        Q    AND IF I SEE PAYMENTS TO DILLANOS COFFEE

13   ROASTERS FROM AVENATTI & ASSOCIATES TO KITSAP BANK IN THE

14   AMOUNTS OF OVER $25,000 ALL PAYMENT, THAT WOULD BE IN

15   FURTHERANCE OF GLOBAL BARISTAS' COFFEE BUSINESS; IS THAT

16   CORRECT?

17        A    NOT NECESSARILY.  I WOULD HAVE LOOK.

18        Q    I AM LOOKING AT A TRANSACTION -- THREE

19   TRANSACTIONS FROM AVENATTI & ASSOCIATES TO DILLANOS COFFEE

20   ROASTERS, 9-11-2017, 9-13-2017, AND 5-10-2018.  THEY ARE

21   RESPECTIVELY -- EACH IS FOR $50,000.

22             WAS AVENATTI & ASSOCIATES CONSUMING $150,000

23   WORTH OF COFFEE DURING THAT TIME PERIOD?

24             MR. HODGES:  ASSUMES FACTS.  LACKS FOUNDATION.

25             THE WITNESS:  I HAVE -- I DON'T NECESSARILY

USAO_00059246
00059274

1    AGREE WITH WHAT YOU ARE TELLING ME.  SO I DON'T AGREE WITH

2    THE FOUNDATION OF THE QUESTION, AND I CAN'T ANSWER

3    WITHOUT -- WITHOUT HAVING MORE INFORMATION.

4    BY MR. STOLPER:

5        Q    SO YOU WOULD BE SURPRISED TO LEARN THAT AVENATTI

6    & ASSOCIATES SPENT $150,000 ON DILLANOS COFFEE ROASTING IN

7    THE LATE FALL -- LATE FALL THROUGH THE SPRING OF 2018?

8        A    I WOULDN'T BE SURPRISED, AND I WOULDN'T BE NOT

9    SURPRISED.

10       Q    SO IT'S THAT AVENATTI & ASSOCIATES SPENT THAT

11   MONEY TO ROAST COFFEE FROM 2017 TO 2018?

12       A    IT'S ALSO POSSIBLE THAT THEY SPENT NOTHING.

13   SO, YOU KNOW, A LOT OF THINGS ARE POSSIBLE.

14       Q    I WANT YOU TO ASSUME FOR THE SAKE OF THE NEXT

15   QUESTION THAT AVENATTI & ASSOCIATES IN FACT SPENT $150,000

16   AT DILLANOS COFFEE ROASTING.

17            WOULD YOU AGREE THAT'S NOT IN FURTHERANCE OF

18   AVENATTI & ASSOCIATES' CORE BUSINESS?

19            MR. HODGES:  ASSUMES FACT.  INCOMPLETE

20   HYPOTHETICAL.

21            THE WITNESS:  NUMBER ONE, I'M NOT GOING TO

22   ASSUME THAT, AND NUMBER TWO, THE ANSWER WOULD BE NO, I

23   WOULD NOT AGREE WITH THAT.

24   BY MR. STOLPER:

25       Q    WHAT BUSINESS DOES AVENATTI & ASSOCIATES HAVE

Exhibit J

USAO_00059247
00059274

```
 1   ROASTING $150,000 WORTH OF COFFEE IN THE LATE FALL UP TO

 2   THE SPRING -- LATE FALL 2017 THROUGH THE SPRING OF 2018?

 3            MR. HODGES:  ASSUMES FACTS.  LACKS FOUNDATION.

 4            THE WITNESS:  I DISAGREE WITH THE PREDICATE OF

 5   THE QUESTION, NAMELY, THAT PAYMENTS THAT WERE MADE, NUMBER

 6   ONE; NUMBER TWO, THAT IT WAS IN FURTHERANCE OF ROASTING

 7   COFFEE.  I DON'T HAVE ANY IDEA WHAT THE PAYMENTS WERE FOR.

 8   AND WITH ALL DUE RESPECT I'M NOT GOING TO TAKE YOUR WORD

 9   FOR IT SO I CAN'T ANSWER IT.

10   BY MR. STOLPER:

11       Q    WAS AVENATTI & ASSOCIATES -- SORRY, GALLO

12   BUILDERS  WAS THE COMPANY THAT BUILT YOUR RESIDENCE ON 106

13   MCKNIGHT; IS THAT CORRECT?

14       A    THEY DID CONTRACTOR WORK AT THAT RESIDENCE.

15       Q    THAT'S YOUR PERSONAL -- THAT WAS A PERSONAL

16   RESIDENCE; CORRECT?

17       A    YES.

18       Q    AND AVENATTI & ASSOCIATES MADE PAYMENTS TO BUILD

19   YOUR PERSONAL RESIDENCE THROUGH -- FROM 2014, 2015, ALL

20   THE WAY THROUGH THE END OF 2015; IS THAT CORRECT?

21       A    SO WHAT --

22            MR. HODGES:  LACKS FOUNDATION.

23            THE WITNESS:  SO WHAT?  WHO CARES?

24   BY MR. STOLPER:

25       Q    SO JUST TO BE CLEAR, YOUR TESTIMONY IS NOT THAT
```

**Exhibit J**

USAO_00059248

00059274

1    AVENATTI & ASSOCIATES WAS ALSO IN THE CONSTRUCTION

2    BUSINESS, THAT THE PERSONAL RESIDENCE -- THIS IS MONEY

3    THAT IS PERSONAL THAT IS GOING TO YOU PERSONALLY; CORRECT?

4             MR. HODGES:  ARGUMENTATIVE.

5             THE WITNESS:  NO.  IT'S NOT GOING TO ME

6    PERSONALLY.  YOU UNDERCUT YOUR ENTIRE QUESTION.  NO.

7    BY MR. STOLPER:

8       Q    WAS PAYMENT OF GALLO BUILDERS TO BUILD YOUR

9    PERSONAL RESIDENCE -- WOULD IT BE FAIR TO CHARACTERIZE

10   THAT AS A PERSONAL EXPENSE AS OPPOSED TO A CORPORATE

11   EXPENSE OF AVENATTI & ASSOCIATES?

12      A    SURE.

13      Q    IT WAS YOUR PERSONAL EXPENSE; CORRECT?

14      A    SURE.

15      Q    LIKEWISE, THE PAYMENTS THAT AVENATTI &

16   ASSOCIATES MADE TO GARY E. PRIMM THROUGH 2016, THAT WAS

17   FOR PAYMENT ON YOUR PERSONAL RESIDENCE; CORRECT?

18      A    I THINK SO.

19      Q    AND, AGAIN, JUST TO BE CLEAR, THOSE PAYMENTS

20   MADE BY AVENATTI & ASSOCIATES WERE NOT BUSINESS PAYMENTS,

21   THEY WERE PAID -- THEY WERE PERSONAL OBLIGATIONS THAT YOU

22   HAD THAT YOUR COMPANY WAS PAYING ON YOUR BEHALF; CORRECT?

23             MR. HODGES:  ASSUMES FACTS.

24             THE WITNESS:  YEAH.  I DON'T NECESSARILY AGREE

25   WITH THAT.

**Exhibit J**

USAO_00059249
00059274

1   BY MR. STOLPER:

2       Q    YOU DON'T AGREE THAT AVENATTI & ASSOCIATES WAS

3   MAKING PAYMENTS TO GARY PRIMM, OR YOU DON'T AGREE WITH THE

4   IDEA THAT SUCH PAYMENTS WERE PERSONAL EXPENSES AS OPPOSED

5   TO LEGITIMATE CORPORATE EXPENSES OF AVENATTI & ASSOCIATES?

6       A    I DON'T KNOW IF ANY PAYMENTS WERE MADE FROM

7   AVENATTI & ASSOCIATES TO GARY PRIMM OR NOT.  AS I SIT HERE

8   RIGHT NOW, I DON'T KNOW.  IT COULD HAVE BEEN.  IT COULD

9   NOT HAVE BEEN.  I DON'T KNOW.

10      Q    GARY PRIMM WAS YOUR LANDLORD ON THE LIDO ISLE

11  PROPERTY; CORRECT?

12      A    YES.  BUT THAT DOESN'T SHED ANY LIGHT ON WHAT I

13  JUST SAID.

14      Q    I UNDERSTAND.

15           TO THE EXTENT PAYMENTS ARE BEING MADE BY

16  AVENATTI & ASSOCIATES TO GARY PRIMM ON A MONTHLY BASIS FOR

17  $100,000 A MONTH THAT IS TO PAY FOR YOUR PERSONAL

18  RESIDENCE; CORRECT?

19      A    I WOULD HAVE TO SEE THE PAYMENT.

20      Q    SO HOW MUCH WAS YOUR -- HOW MUCH WERE THE

21  PAYMENTS THAT YOU WERE OBLIGATED TO MAKE TO MR. PRIMM FOR

22  YOUR PERSONAL RESIDENCE DURING 2016?

23      A    I DON'T RECALL.

24      Q    ISN'T IT TRUE IT WAS APPROXIMATELY $100,000 A

25  MONTH?

USAO_00059250
00059274

1    A    SIR, I DON'T RECALL.  IT MAY HAVE BEEN LESS THAN

2  THAT; IT MAY HAVE BEEN MORE THAN THAT.  IN FACT, IT WAS

3  MODIFIED OVER TIME OR IT CHANGED OVER TIME, AND I DON'T

4  RECALL EXACTLY WHEN.

5    Q    BUT YOU WOULD AGREE THERE WAS A STRING OF

6  PAYMENTS THAT YOU WERE MAKING TO GARY PRIMM TO PAY FOR

7  YOUR PERSONAL RESIDENCE?

8    A    I WOULDN'T AGREE OR DISAGREE WITH THAT.

9    Q    ISN'T THAT TRUE?

10    A    SIR, I WOULDN'T AGREE OR DISAGREE WITH THAT.

11    Q    YOU WEREN'T PAYING MR. PRIMM MONEY FOR YOUR

12  PERSONAL RESIDENCE REGARDLESS OF SOURCE?

13    A    NO.  THERE WAS A POINT IN TIME WHERE HE WAS

14  BEING PAID IN CONNECTION WITH THE PERSONAL RESIDENCE.  I

15  DON'T KNOW WHERE THAT MONEY CAME FROM.

16    Q    CAN YOU THINK OF ANY ONLY REASON YOU WOULD BE

17  PAYING MR. PRIMM ON A MONTHLY BASIS OTHER THAN TO OR FOR A

18  PERSONAL REFERENCE?

19    A    SIR, I THINK I JUST SAID THAT THERE WERE

20  PAYMENTS BEING MADE TO MR. PRIMM.  I BELIEVE THEY TO BE ON

21  A MONTHLY BASIS, ALTHOUGH THAT CHANGED OVER TIME.  I DON'T

22  RECALL THE AMOUNT, AND I DON'T RECALL WHERE THE PAYMENTS

23  CAME FROM.

24    Q    THAT'S NOT MY QUESTION.  MY QUESTION IS, IS

25  THERE SOME OTHER REASON THERE WOULD BE A STREAM OF

**Exhibit J**

USAO_00059251
00059274

1    PAYMENTS FROM ANY ACCOUNT OF YOURS TO MR. PRIMM OTHER THAN

2    TO PAY FOR A PERSONAL RESIDENCE?

3         A    NO.

4         Q    GB AUTOSPORT IS AN ENTITY THAT WAS ASSOCIATED

5    WITH YOUR RACE CAR ACTIVITIES; CORRECT?

6              MR. HODGES:  ASKED AND ANSWERED FIVE OR SIX

7    TIMES NOW.

8              THE WITNESS:  COVERED THIS.

9    BY MR. STOLPER:

10        Q    AND THE PAYMENTS THAT WERE BEING MADE FROM

11   AVENATTI & ASSOCIATES TO GB AUTOPORT WERE IN FURTHERANCE

12   OF THAT RACE CAR HOBBY; CORRECT?

13        A    I HAVE ANSWERED THIS.

14        Q    HAVEN'T ASKED YOU ABOUT GB AUTOSPORT --

15        A    YES, YOU DID.  YOU COVERED THE ENTIRE ISSUE OF

16   MY RACING AND HOW THE PAYMENTS WERE MADE AND WHAT THEY

17   WERE IN FURTHERANCE OF AND WHY DID AVENATTI & ASSOCIATES

18   PAY FOR RACING AND THE LIST GOES ON AND ON.

19             MR. HODGES:  HE ALSO ADDED --

20   BY MR. STOLPER:

21        Q    TO THE EXTENT THERE ARE PAYMENTS FROM AVENATTI &

22   ASSOCIATES TO GB AUTOSPORT, IS THAT IN FURTHERANCE OF RACE

23   CAR DRIVING?

24             MR. HODGES:  LACKS FOUNDATION THAT THERE EVER

25   WERE --

**Exhibit J**

USAO_00059252
00059274

```
 1   BY MR. STOLPER:

 2       Q    WELL, I WILL ASK YOU.  TO YOUR BEST RECOLLECTION

 3   WAS AVENATTI & ASSOCIATES MAKING PAYMENTS TO GB AUTOSPORT?

 4       A    THEY MAY OR MAY NOT HAVE BEEN --

 5       Q    TO THE EXTENT THERE ARE PAYMENTS TO GB

 6   AUTOSPORT, ARE THOSE PAYMENTS AS A RESULT IN SERVICE OF

 7   RACE CAR DRIVING?

 8       A    I DON'T REMEMBER.

 9       Q    DOES GB AUTOSPORT --

10       A    I'M GOING TO RELY ON MY PRIOR ANSWER.

11       Q    TO YOUR KNOWLEDGE, DOES GB AUTOSPORT DO ANYTHING

12   OTHER THAN FIELD A RACE CAR TEAM?

13            MR. HODGES:  FOUNDATION.  SPECULATION.

14            THE WITNESS:  YES.

15   BY MR. STOLPER:

16       Q    WHAT ELSE DO THEY DO?

17       A    WELL, THEY DON'T DO ANYTHING ANYMORE BECAUSE --

18       Q    WHAT ELSE DID THEY DO?

19       A    THEY WERE INVOLVED IN RACING.

20       Q    BESIDES BEING INVOLVED IN RACING IS THERE ANY

21   OTHER LINE OF BUSINESS THAT GB AUTOSPORT WAS IN?

22       A    I DON'T REMEMBER.  NO.  I DON'T THINK SO.

23       Q    DID -- PRIOR TO EAGAN AVENATTI GOING INTO

24   RECEIVERSHIP DID AVENATTI & ASSOCIATES EVER HAVE A

25   SEPARATE OFFICE SPACE?
```

**Exhibit J**

USAO_00059253
00059274

```
1       A    YES.

2       Q    WHERE WAS THAT OFFICE SPACE?

3       A    THERE WAS OFFICE SPACE IN THE STATE OF

4  WASHINGTON.

5       Q    SORRY.

6       A    THERE WAS -- WAIT A MINUTE.  THERE WAS OFFICE

7  SPACE IN LOS ANGELES.  YEAH.

8       Q    WAS THE OFFICE SPACE IN THE STATE OF WASHINGTON,

9  WAS THAT A LEASE OR WAS THAT PURCHASED PROPERTY BY

10  AVENATTI & ASSOCIATES?

11      A    WASN'T PURCHASED.

12      Q    WAS AVENATTI & ASSOCIATES THE LESSOR OF THAT

13  PROPERTY?

14      A    I DON'T REMEMBER.

15      Q    DID AVENATTI & ASSOCIATES HAVE AN OFFICE IN

16  SEATTLE OR -- SORRY, THE STATE OF WASHINGTON PRIOR TO

17  GERALD TOBIN FILING AN INVOLUNTARY PETITION AGAINST EAGAN

18  AVENATTI?

19      A    I DON'T RECALL ONE WAY OR THE OTHER.  I AM SURE

20  THEY DID.

21      Q    WHAT BUSINESS WAS AVENATTI & ASSOCIATES

22  CONDUCTING IN THE STATE OF WASHINGTON?

23      A    I DON'T REMEMBER.

24      Q    ARE THERE ANY WASHINGTON LAWYERS ASSOCIATED WITH

25  AVENATTI & ASSOCIATES?
```

Exhibit J

USAO_00059254
00059274

```
1        A    NO.

2        Q    DOES AVENATTI & ASSOCIATES FILE ANY OF THE

3   PAPERWORK IN THE STATE OF WASHINGTON NECESSARY TO PRACTICE

4   LAW THERE?

5        A    I DON'T REMEMBER.

6        Q    DID GLOBAL BARISTAS HAVE THEIR OFFICE AT THE

7   SAME LOCATION AS AVENATTI & ASSOCIATES?

8        A    I DON'T YOU BELIEVE SO, BUT THEY MAY HAVE.

9        Q    HOW MANY TIMES DID YOU VISIT THE OFFICES OF

10  AVENATTI & ASSOCIATES IN THE STATE OF WASHINGTON?

11       A    MANY TIMES.

12       Q    HOW MANY?

13       A    I HAVE NO IDEA.  I CAN'T RECALL.

14       Q    AND YOU CAN'T -- YOU ARE NOT SURE WHETHER THOSE

15  OFFICES WERE DIFFERENT THAN GLOBAL BARISTAS' OFFICES?

16       A    NO.  YOU ASKED ME A QUESTION AND I SAID THEY MAY

17  HAVE, I THINK WAS MY ANSWER.

18       Q    SO WHEN YOU WOULD VISIT THE STATE OF WASHINGTON

19  FOR BUSINESS WOULD YOU GO TO TWO DIFFERENT OFFICES, ONE

20  FOR GLOBAL BARISTAS AND ONE FOR AVENATTI & ASSOCIATES?

21       A    SIR, I DON'T REMEMBER.  WAS A LONG TIME AGO.

22       Q    ACTUALLY 2016?

23            MR. HODGES:  ARGUMENTATIVE.  DON'T ANSWER THAT.

24  BY MR. STOLPER:

25       Q    DID AVENATTI & ASSOCIATES HAVE STAFF AT ITS
```

Exhibit J

USAO_00059255
00059274

 1    WASHINGTON OFFICE?

 2         A    I DON'T REMEMBER.

 3         Q    WHERE WAS AVENATTI & ASSOCIATES' WASHINGTON

 4    OFFICE LOCATED?

 5         A    IN SEATTLE.

 6         Q    IN DOWNTOWN SEATTLE?

 7         A    YES.

 8         Q    IN A HIGH-RISE?  DO YOU RECALL THE ADDRESS?

 9         A    I DON'T.

10         Q    DO YOU RECALL WHETHER AVENATTI & ASSOCIATES PAID

11    RENT TO THIS OFFICE?

12         A    I DON'T RECALL ONE WAY OR THE OTHER.  I'M

13    ASSUMING THEY DID.

14         Q    WAS AVENATTI & ASSOCIATES -- DID THEY HAVE A

15    SEPARATE BANK ACCOUNT FROM WHICH THEY WERE PAYING RENT AT

16    THIS POINT IN TIME?

17         A    I DON'T REMEMBER.

18         Q    DID AVENATTI & ASSOCIATES HAVE A SEPARATE PHONE

19    AT THE OFFICE IN SEATTLE?

20         A    I DON'T REMEMBER.

21         Q    WERE THERE COMPUTERS THERE?

22         A    YES.

23         Q    HOW MANY OFFICES WERE THERE?

24         A    I DON'T REMEMBER.  I THINK SO.

25         Q    MORE THAN FIVE?

**Exhibit J**

USAO_00059256
00059274

1        A    NO.

2        Q    WHAT EMPLOYEES DID AVENATTI & ASSOCIATES HAVE IN

3   2016?

4        A    SIR, I DON'T REMEMBER.

5        Q    DID THEY HAVE ANY EMPLOYEES IN 2016?

6        A    I'M SURE IT DID.  I JUST DON'T REMEMBER HOW

7   MANY.

8        Q    WHO ARE YOU SURE IT HAD AS EMPLOYEES IN 2016?

9        A    WELL, ME, FOR STARTERS.

10       Q    BESIDES YOU?

11       A    I DON'T REMEMBER.

12       Q    WAS MS. REGNIER EMPLOYED BY AVENATTI &

13   ASSOCIATES IN 2016?

14       A    I DON'T THINK SO.

15       Q    HAD SHE EVER BEEN TO THE SEATTLE OFFICE OF

16   AVENATTI & ASSOCIATES?

17       A    I DON'T REMEMBER.  I DON'T -- WAIT.  I DON'T

18   REMEMBER.  I DON'T BELIEVE SO.

19       Q    OTHER THAN YOU, WHO DO YOU RECALL -- WHO ELSE

20   CAN TESTIFY TO THE SEATTLE OFFICE OF AVENATTI &

21   ASSOCIATES?

22            MR. HODGES:  SPECULATION.  FOUNDATION.

23            THE WITNESS:  SIR, I CAN'T SPECULATE.

24   BY MR. STOLPER:

25       Q    HAVE YOU EVER HAD A MEETING THERE WITH ANOTHER

Huntington Court Reporters & Transcription, Inc.          163
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777
Exhibit J

USAO_00059257
00059274

1  LAWYER?

2      A    I HAVE HAD MEETINGS THERE.

3      Q    HAVE YOU EVER HAD MEETINGS THERE WITH EMPLOYEES

4  OF AVENATTI & ASSOCIATES?

5      A    I DON'T REMEMBER.

6      Q    ARE YOU AN EMPLOYEE OF AVENATTI & ASSOCIATES?

7      A    RIGHT NOW?

8      Q    EVER.

9      A    I DON'T KNOW.  I DON'T RECALL IF I -- IF I WAS

10  TECHNICALLY AN EMPLOYEE.  I THINK THAT I WAS AT SOME

11  PERIOD OF TIME.  I AM NOT AN EMPLOYEE NOW.

12      Q    WHAT IS JEWELERS ON TIME?

13      A    A JEWELRY STORE.

14      Q    IT'S IN NEWPORT BEACH?

15      A    YES.

16      Q    TO THE EXTENT AVENATTI & ASSOCIATES SPENT MONEY

17  AT A JEWELRY STORE WAS THAT PART OF AVENATTI & ASSOCIATES'

18  BUSINESS OR IS THAT A PERSONAL EXPENSE OF YOURS?

19          MR. HODGES:  ASSUMES FACTS.  LACKS FOUNDATION

20  THAT ANY SUCH --

21          THE WITNESS:  WOULD BE A PERSONAL EXPENSE, MOST

22  LIKELY, BUT I WOULD HAVE TO LOOK --

23  BY MR. STOLPER:

24      Q    WAS JEWELERS ON TIME EVER A CLIENT OF AVENATTI &

25  ASSOCIATES?

**Exhibit J**

USAO_00059258
00059274

```
1      A    YES.

2      Q    WHEN WERE THEY A CLIENT?

3      A    I DON'T REMEMBER.

4      Q    DID YOU EVER -- NOT GETTING INTO SPECIFICS, DID

5  YOU EVER SETTLE A CASE ON BEHALF OF JEWELERS ON TIME?

6      A    YOU KNOW, I DON'T REMEMBER ONE WAY OR THE OTHER.

7  I DON'T THINK SO BUT I DON'T WANT TO TESTIFY CONCLUSIVELY

8  AS TO THAT.  I MAY HAVE.

9      Q    LISA STORIE -- LISA STORIE AVENATTI IS YOUR

10 EX-WIFE?  SOON TO BE EX-WIFE?

11     A    SOON TO BE EX-WIFE.

12     Q    TO THE EXTENT THAT THERE ARE PAYMENTS BEING MADE

13 BY AVENATTI & ASSOCIATES TO LISA STORIE, THOSE ARE GOING

14 TO MEET YOUR PERSONAL OBLIGATIONS AS OPPOSED TO A

15 CORPORATE OBLIGATION OF AVENATTI & ASSOCIATES?

16     A    I WOULD HAVE TO LOOK AT THE INDIVIDUAL --

17     Q    DID LISA AVENATTI -- DID LISA AVENATTI -- DID

18 LISA STORIE AVENATTI EVER -- WAS SHE EVER AN EMPLOYEE OF

19 AVENATTI & ASSOCIATES?

20     A    NO.

21     Q    WAS SHE EVER A VENDOR OF AVENATTI & ASSOCIATES?

22     A    NO.

23     Q    CAN YOU THINK OF ANY REASON OTHER THAN TO MEET

24 PERSONAL OBLIGATIONS OF AVENATTI & ASSOCIATES THAT YOU

25 WOULD BE MAKING PAYMENTS TO LISA STORIE AVENATTI?
```

Exhibit J

USAO_00059259

00059274

1      A    SURE.

2      Q    WHAT WOULD BE THOSE REASONS?

3      A    WELL, I MEAN, I REALLY CAN'T SPECULATE AS I SIT

4   HERE TODAY, BUT FOR THE REIMBURSEMENT OF VARIOUS EXPENSES.

5   THAT WOULD BE ONE POSSIBILITY.  I'M SURE THERE ARE OTHERS.

6      Q    EXPENSES THAT SHE INCURRED ON BEHALF AVENATTI &

7   ASSOCIATES?

8           MR. HODGES:  ASSUMES FACTS.  LACKS FOUNDATION.

9           THE WITNESS:  EXPENSES INCURRED FOR THE BENEFIT

10  OF AVENATTI & ASSOCIATES FOR WHICH SHE WAS REIMBURSED.

11  BY MR. STOLPER:

12     Q    WHAT TYPE OF EXPENSES DO YOU THINK WAS MS.

13  STORIE -- MS. LISA STORE AVENATTI WAS INCURRING ON BEHALF

14  AVENATTI & ASSOCIATES --

15          MR. HODGES:  ASSUMES FACT.

16          MR. STOLPER:  I HAVEN'T FINISHED MY QUESTION.

17          MR. HODGES:  I'M SORRY.  BEG YOUR PARDON.

18  BY MR. STOLPER:

19     Q    THAT -- WHAT EXPENSES ON BEHALF OF AVENATTI &

20  ASSOCIATES WAS MS. STORIE AVENATTI INCURRING THAT REQUIRED

21  REIMBURSEMENT?

22          MR. HODGES:  ASSUMES FACTS.  FOUNDATION.

23  SPECULATION.

24          THE WITNESS:  LOOK, I CAN'T SPECULATE IN A

25  VACUUM.  I MEAN, ONE EXAMPLE MIGHT BE TRAVEL EXPENSES.

Exhibit J

USAO_00059260
00059274

```
 1   I'M SURE THERE ARE OTHER EXAMPLES.

 2          MR. HODGES:  MR. AVENATTI, DON'T GUESS.

 3   BY MR. STOLPER:

 4      Q    SO TO THE EXTENT THERE IS A, FOR EXAMPLE,

 5   $700,000 PAYMENT FROM AVENATTI & ASSOCIATES TO LISA STORIE

 6   AVENATTI THAT'S NOT A REIMBURSEMENT OF TRAVEL EXPENSES ON

 7   BEHALF OF AVENATTI & ASSOCIATES?

 8          MR. HODGES:  ASSUMES FACTS.  LACKS FOUNDATION.

 9          THE WITNESS:  PART OF IT MIGHT BE, AND I DON'T

10   KNOW ANYTHING ABOUT THE PAYMENT THAT YOU ARE REFERENCING

11   WITHOUT HAVING MORE INFORMATION.

12   BY MR. STOLPER:

13      Q    WHO IS MINYARD MORRIS?

14      A    LAW FIRM.

15      Q    WHAT KIND OF LAW FIRM?

16      A    A FAMILY LAW FIRM.

17      Q    DIVORCE LAW FIRM; TRUE?

18      A    NO.  THEY ARE A FAMILY LAW FIRM.

19      Q    TO THE EXTENT THAT AVENATTI & ASSOCIATES PAID

20   MINYARD MORRIS $25,000 ON MAY 2, 2018, WAS THAT AS PART OF

21   AN EXPENSE THAT WAS BEING INCURRED BY AVENATTI &

22   ASSOCIATES OR WAS THAT A PERSONAL EXPENSE FOR YOU?

23      A    I DON'T KNOW.  I DON'T HAVE A SPECIFIC

24   RECOLLECTION OF THE PAYMENT, AND WITHOUT HAVING MORE

25   INFORMATION ABOUT THE PAYMENT, I CAN'T ANSWER YOUR
```

Exhibit J

USAO_00059261

00059274

1    QUESTION.

2        Q    DID YOU RETAIN MINYARD MORRIS IN 2018 AS PART OF

3    YOUR FAMILY LAW ISSUE WITH YOUR SOON-TO-BE EX-WIFE?

4        A    I DON'T RECALL WHETHER THEY WERE RETAINED AT

5    THAT TIME OR NOT.

6        Q    HAS MINYARD MORRIS EVER SERVED AS YOUR ATTORNEY?

7        A    THEY HAVE, AND THEY HAVE ALSO SERVED AS

8    ATTORNEYS OF CLIENTS OF AVENATTI & ASSOCIATES AND OTHERS.

9        Q    TO YOUR KNOWLEDGE, DID STEPHANIE CLIFFORD, ALSO

10   KNOWN AS STORMY DANIELS, EVER OWE MONEY TO PASSPORT 420?

11       MR. HODGES:  OBJECT.  THAT IS ATTORNEY-CLIENT

12   PRIVILEGE.  INSTRUCT HIM NOT TO ANSWER UNLESS THAT

13   INFORMATION CAME OUTSIDE THE CONTEXT OF A PRIVILEGED

14   COMMUNICATION.

15       THE WITNESS:  I'M GOING TO FOLLOW THE ADVICE

16   OF --

17   BY MR. STOLPER:

18       Q    I'M NOT ASKING FOR COMMUNICATION.  I'M JUST

19   ASKING WHETHER THE MONEY WAS OWED.

20       MR. HODGES:  COUNSEL, YOU HAVE A VERY DIFFERENT

21   INTERPRETATION OF THE PRIVILEGE.  I JUST ASKED THIS

22   WITNESS TO ANSWER THE QUESTION UNLESS THE INFORMATION WAS

23   CONTAINED WITHIN A PRIVILEGED COMMUNICATION, AND HE SAID

24   IT WAS EXCLUSIVELY IN A PRIVILEGED COMMUNICATION.  IT IS

25   PRIVILEGED, AND HE IS INSTRUCTED NOT TO ANSWER.

**Exhibit J**

USAO_00059262
00059274

```
1    BY MR. STOLPER:

2         Q    MR. AVENATTI, WERE YOU THE MANAGER OF PASSPORT

3    420?

4         A    YES.

5         Q    DID -- AS A MANAGER OF PASSPORT 420, DID STORMY

6    DANIELS EVER OWE PASSPORT 420 MONEY?

7         A    YES.

8         Q    HOW MUCH DID MS. DANIELS OWE PASSPORT 420?

9         A    I DON'T RECALL.

10        Q    WHAT WAS IT FOR?

11        A    FOR USE OF THE PLANE AND TRAVEL EXPENSES

12   ASSOCIATED WITH HER CASE.

13        Q    MR. AVENATTI, YOU CURRENTLY CARRY AN IPHONE?

14        A    YES.

15        Q    WHO OWNS THAT IPHONE?

16        A    AVENATTI & ASSOCIATES.

17        Q    AND YOU ARE THE OWNER OF AVENATTI & ASSOCIATES?

18        A    YES.

19        Q    OKAY.

20             MR. STOLPER:  I THINK THAT'S ALL WE HAVE FOR

21   TODAY BECAUSE WE HAVE MOTIONS TO DEAL WITH AT -- WITH THE

22   JUDGE.

23             MR. HODGES:  DO YOU MIND IF I USE THE MEN'S

24   ROOM?

25             (A RECESS WAS TAKEN FROM 2:44 P.M. TO
```

**Exhibit J**

USAO_00059263
00059274

```
 1              2:50 P.M.)

 2              THE CLERK:  COME TO ORDER.  DEPARTMENT 44 ONCE

 3   AGAIN IN SESSION.

 4              THE COURT:  OKAY.  ALL THE SAME PEOPLE ARE STILL

 5   PRESENT.  AND WHERE DO THINGS STAND?

 6              MR. STOLPER:  YOUR HONOR, WE RAN OUT OF TIME AS

 7   THE DAY HAS GOTTEN LONG.  WE'RE PROBABLY GOING TO WANT TO

 8   RESUME JUDGMENT DEBTORS EXAM.

 9              THE COURT:  HAVE YOU AGREED ON A DATE FOR A

10   CONTINUANCE?

11              MR. STOLPER:  I HAVE NOT.  NEXT FRIDAY WE'RE IN

12   FEDERAL COURT SO IT WOULD BE --

13              MR. HODGES:  I PREFER IT BE AFTER THE 11TH

14   BECAUSE I HAVE A PENDING MOTION THAT'S GOING TO DICTATE

15   THE LENGTH OF THAT CONTINUED HEARING.

16              THE COURT:  JUST A MOMENT.  SEE IF YOU TWO CAN

17   AGREE ON SOMETHING, AND IF YOU CAN'T, I WILL DECIDE.

18              MR. STOLPER:  WE'RE NOT GOING TO AGREE, YOUR

19   HONOR, IN KEEPING WITH THE THEME OF THE DAY --

20              THE COURT:  DO I -- DO I UNDERSTAND THAT THE

21   ISSUE IS THAT MR. AVENATTI WANTS THE CONTINUED DATE TO BE

22   AFTER THE MOTION?

23              MR. STOLPER:  YES.

24              MR. HODGES:  ON OR AFTER, YOUR HONOR.

25              THE COURT:  AND WHY WOULD YOU NOT GO ALONG WITH
```

Exhibit J

USAO_00059264
00059274

```
 1   THAT --
 2              MR. STOLPER:  BECAUSE, YOUR HONOR, WE DIDN'T GET
 3   TO COMPLETE OUR EXAMINATION TODAY AS A RESULT OF THE
 4   TACTICS OF MR. AVENATTI.
 5              MR. HODGES:  I OBJECT TO THAT, YOUR HONOR.
 6              THE COURT:  BUT THAT MAY BE THE CASE, BUT THAT
 7   DOESN'T QUITE ANSWER THE QUESTION.
 8              MR. STOLPER:  SO THE SHORT ANSWER, YOUR HONOR,
 9   WE ARE CONCERNED THAT ASSETS ARE CONTINUING TO BE SPENT
10   AND MOVED, AND MR. AVENATTI HAS PROVEN QUITE -- HE'S DONE
11   THAT QUITE A BIT AND SO THAT'S WHY WE ARE CONCERNED ABOUT
12   CONTINUING THIS THING OUT.
13              THE COURT:  AND THAT IS VERY OFTEN A CONCERN OF
14   JUDGMENT AND CREDITORS.
15              BUT DO YOU HAVE ANYTHING SPECIFIC YOU CAN SITE
16   TO?
17              MR. STOLPER:  SO THE TESTIMONY HERE TODAY, YOUR
18   HONOR, IS THAT HE HAS LESS THAN $100,000 IN HIS ACCOUNTS.
19   HE'S SPENDING $11,000 A MONTH ON RENT PLUS $5000 A MONTH
20   ON DRIVER PLUS $50,000 A MONTH ON HIS LAW FIRM OVERHEAD.
21              SO THE LONGER THIS THING DRAGS, THE MORE MR.
22   AVENATTI IS GOING TO BURN THROUGH THE MONEY THAT MR. FRANK
23   IS ENTITLED TO RECEIVE.  SO THAT'S OUR FIRST ISSUE IS THAT
24   THE TESTIMONY HERE TODAY DOESN'T FULLY ADD UP.  SOMEONE
25   WHO HAS LESS THAN $100,000 IN THE BANK DOESN'T USUALLY
```

**Exhibit J**

USAO_00059265
00059274

```
 1    HAVE A BURN OF $70,000 -- $65,000 A MONTH.

 2             THE COURT:  AND SO WHAT DATE ARE YOU ASKING FOR?

 3             MR. STOLPER:  WE PROPOSE WEDNESDAY.  BE HAPPY TO

 4    GIVE IT TO YOU WEEK FROM WEDNESDAY.

 5             THE COURT:  WHAT DATE ARE YOU PROPOSING?

 6             MR. HODGES:  I'M PROPOSING THE 11TH OR SOME DATE

 7    THEREAFTER, YOUR HONOR, SO I DON'T HAVE TO COME BACK INTO

 8    COURT, ASK THE COURT FOR AN ORDER SHORTENING TIME OR

 9    ACCELERATION OF THE HEARING DATE.

10             THE COURT:  WHAT ELSE DO WE HAVE ON?

11             MR. HODGES:  I'M CERTAINLY GOING TO ORDER THE --

12             MR. STOLPER:  I MAY BE ABLE TO HELP WITH THIS.

13             WE'RE WILLING TO MOVE THIS THING OUT FURTHER, IN

14    EXCHANGE, WE GOT TO GET DOCUMENTS BEFOREHAND.  I THINK

15    THAT WOULD BE REALLY CONSTRUCTIVE.

16             MR. HODGES:  I HAVE A PENDING MOTION TO DEAL

17    WITH THE SCOPE OF THE DOCUMENTS TO BE TURNED OVER.

18             MR. STOLPER:  IT'S NOT GOING TO BE --

19             THE COURT:  THAT'S WHAT THE MOTION -- OKAY.  I

20    AM INCLINED -- THAT'S OKAY.  I AM INCLINED TO GO WITH THE

21    11TH, AND THIS IS WHY.

22             IF IT IS BEFORE THAT, I ASSUME THAT THERE WILL

23    BE AN EX PARTE APPLICATION TO MOVE UP THE MOTION.  I

24    ASSUME, AGAIN, WITHOUT HAVING SEEN IT, THAT I WILL GRANT

25    THAT.
```

USAO_00059266
00059274

1        SO I'LL GRANT MR. AVENATTI'S REQUEST TO

2   CONTINUE -- TO SET THE CONTINUED DATE FOR THE EXAMINATION

3   ON APRIL 11, 2019, AT 9:30 A.M.

4        MR. STOLPER:  TWO MORE THINGS FOR US, YOUR

5   HONOR.

6        FIRST OF ALL, WE ASK THAT IN THE EVENT THE COURT

7   DENIES THE MOTION ON THE 11TH THAT MR. AVENATTI IS

8   PREPARED TO PRODUCE THOSE DOCUMENTS ON THE 11TH.

9        TURNS OUT YOU GRANT THE MOTION, WE UNDERSTAND IT

10  WILL TAKE MORE TIME TO SORT THOSE DOCUMENTS OUT, BUT WE

11  DON'T WANT THERE TO BE -- YOUR HONOR TO DECIDE ON THE 11TH

12  AND US TO BE SITTING HERE SAYING WE DON'T HAVE THE

13  DOCUMENTS TO GO FORWARD WITH OUR EXAMINATION AND ASK FOR

14  ANOTHER CONTINUANCE.

15       THE COURT:  I'LL AGREE WITH THAT.

16       MR. STOLPER:  AND SECONDLY, YOUR HONOR --

17       THE COURT:  I DON'T KNOW ANYTHING ABOUT WHAT

18  DOCUMENTS HAVE BEEN REQUESTED.  THERE IS NOTHING ABOUT MY

19  ORDER THAT WOULD CHANGE THE OBLIGATION TO -- ANY

20  OBLIGATION THAT HE MAY HAVE.  I DON'T KNOW WHAT OBLIGATION

21  HE DOES HAVE, BUT CHANGING ANY OBLIGATION HE DOES HAVE TO

22  DO SOMETHING ON THE 11TH IN THE ABSENCE OF A RULING ON THE

23  11TH, THAT CHANGES IT.

24       MR. STOLPER:  AND THE SECOND THING, YOUR HONOR,

25  IS MR. AVENATTI TODAY WAS AWARDED, I BELIEVE IT WAS TWELVE

**Exhibit J**

USAO_00059267
00059274

```
 1   OR THIRTEEN THOUSAND DOLLARS IN ATTORNEY'S FEES ON A

 2   DIFFERENT MATTER.  I ASKED HIM TODAY WHETHER OR NOT THAT

 3   MONEY WAS DUE TO HIM PERSONALLY; HE SAID IT WAS.

 4           WE WOULD LIKE TO GET AN ASSIGNMENT TO MAKE SURE

 5   THAT TO THE EXTENT THAT MONEY GETS PAID IT GETS PAID TO

 6   MR. FRANK AS OPPOSED TO MR. AVENATTI.

 7           MR. HODGES:  FIRST OF ALL, THAT LACKS

 8   FOUNDATION.  ASSUMES FACTS --

 9           THE COURT:  I'M GOING TO CUT YOU OFF RIGHT

10   THERE.

11           MR. HODGES:  I'M SORRY.

12           THE COURT:  YOU HAVE TO MAKE THE MOTION AND YOU

13   HAVE TO MAKE IT ON PAPER.

14           MR. STOLPER:  YES, YOUR HONOR.

15           THE COURT:  AND JUDGMENT CREDITOR TO GIVE NOTICE

16   OF THE CONTINUED HEARING.

17           MR. STOLPER:  YES, YOUR HONOR.

18           MR. HODGES:  IS THERE ANY TIME LIMIT WITH

19   RESPECT TO THIS ISSUE, OR ARE WE JUST COMING BACK FOR

20   ANOTHER ENTIRE DAY?

21           THE COURT:  MY UNDERSTANDING IS THAT THERE'S A

22   REASONABLENESS STANDARD.

23           MR. HODGES:  THAT'S CORRECT.

24           THE COURT:  AND BEYOND THAT, I AM NOT AWARE OF

25   THE LAW PROVIDING ANY SET REQUIREMENT DEBTOR.
```

Exhibit J

USAO_00059268
00059274

JUDGMENT DEBTOR EXAMINATION, MARCH 15, 2019

```
 1              MR. HODGES:  THANK YOU, YOUR HONOR.

 2              MR. STOLPER:  ONE SECOND.  I'M SORRY.  ONE

 3    MINUTE.  I'M SORRY.

 4              SO THE CONCERN THAT MR. FRANK JUST RAISED TO THE

 5    EXTENT THAT MR. AVENATTI RECEIVES FUNDS BETWEEN NOW AND

 6    THE 11TH THAT HE BE RESTRAINED FROM SPENDING THAT MONEY

 7    PENDING --

 8              THE COURT:  WELL, THEN, YOU KNOW, I HAVE A

 9    SIMILAR ANSWER TO YOU TO THE QUESTION WHEN COUNSEL WAS

10    ASKING FOR ME TO GIVE EFFECT TO A MOTION THAT HE HASN'T

11    ALREADY FILED.  AN EX PARTE IS APPROPRIATE, AN EX PARTE.

12              MR. STOLPER:  THANK YOU.

13              MR. HODGES:  THANK YOU.

14              (AT 2:56 P.M., THE PROCEEDINGS

15               WERE ADJOURNED.)

16                          -OOO-

17

18

19

20

21

22

23

24

25
```

**Exhibit J**

USAO_00059269
00059274

| | |
|---|---|
| 1 | SUPERIOR COURT OF THE STATE OF CALIFORNIA |
| 2 | COUNTY OF LOS ANGELES - CENTRAL DISTRICT |
| 3 | |
| 4 | JASON FRANK LAW PLC,              )<br>PROFESSIONAL LAW CORPORATION  ) |
| 5 |                                                )<br>            PLAINTIFF,                   ) |
| 6 |                                                )<br>VS.                                        )   CASE NO. BC706555 |
| 7 |                                                ) |
| 8 | MICHAEL J. AVENATTI,              )<br>AN INDIVIDUAL,                      ) |
| 9 |                                                )<br>            DEFENDANT.                 )<br>_____) |

13        I, WINIFRED MCCRAY-MOODY, C.S.R. NO. 12747, DO

14   HEREBY CERTIFY THAT THE FOREGOING PAGES 1-72, INCLUSIVE,

15   COMPRISE A FULL, TRUE, AND CORRECT COMPUTER-AIDED

16   TRANSCRIPT OF THE PROCEEDINGS TAKE IN THE ABOVE-ENTITLED

17   MATTER ON MARCH 15, 2019.

18        DATED THIS 29TH DAY OF MARCH, 2019.

22                                    _____

                                          WINIFRED MCCRAY-MOODY
23                                       C.S.R. NO. 12747

**Exhibit J**

USAO_00059270
00059274

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2           COUNTY OF LOS ANGELES - CENTRAL DISTRICT

3

4    JASON FRANK LAW PLC,                )
     PROFESSIONAL LAW CORPORATION        )
5                                        )
                    PLAINTIFF,           )
6                                        )
     VS.                                 )   CASE NO. BC706555
7                                        )
     MICHAEL J. AVENATTI,                )
8    AN INDIVIDUAL,                      )
                                         )
9                   DEFENDANT.           )
     _____)

10

11

12

13          I, ANN BONNETTE, CSR NO. 6108, DO HEREBY CERTIFY

14    THAT THE FOREGOING PAGES 73-174, INCLUSIVE, COMPRISE A

15    FULL, TRUE, AND CORRECT COMPUTER-AIDED TRANSCRIPT OF THE

16    PROCEEDINGS TAKE IN THE ABOVE-ENTITLED MATTER ON MARCH 15,

17    2019.

18          DATED THIS 29TH DAY OF MARCH, 2019.

19

20

21

22                              _____

23                              ANN BONNETTE
                                CSR NO. 6108

24

25

**Exhibit J**

USAO_00059271
00059274