H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF WEALTH, SPENDING HABITS, DEBTS, FINANCIAL CONDITION AND LIFESTYLE |
| v. | |
| MICHAEL JOHN AVENATTI, | [Proposed Order filed concurrently herewith] |
| Defendant. | |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this motion in limine to exclude evidence of the defendant's wealth, spending habits, debts, financial condition and lifestyle. Defendant's motion is based on the attached memorandum of points and authorities; the files, records and transcripts in this case; the Reply to be filed following the government's opposition and such further evidence and argument as the Court may permit at a hearing.

Dated: May 31, 2021

Respectfully submitted,

/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Mr. Avenatti requests that this Court exclude evidence of his purported lavish lifestyle, wealth, debts, financial condition and spending habits. The admission of this evidence would violate Federal Rules of Evidence 401, 403 and 404(b). On May 28, 2021, undersigned counsel contacted the government inquiring as to whether the prosecution intended on introducing certain evidence, including but not limited to evidence of travel, residences, the previous use of a private jet, cars driven by Mr. Avenatti, Mr. Avenatti's participation in international auto racing, and other evidence associated with wealth and spending habits. On May 29, 2021, counsel for the government responded indicating that the government intended on introducing some of this evidence but provided scant details.

A. Mr. Avenatti's Background and Success Prior to Arrest

Mr. Avenatti is presently 50 years old.  He graduated from high school in St. Louis, Missouri in 1989 and later became the first person in his family to graduate college, earning a Bachelor of Arts degree from the University of Pennsylvania.  He subsequently attended George Washington University Law School, where he was a member of the law review and graduated *order of the coif*.  Mr. Avenatti obtained both his undergraduate degree and his law degree by putting himself through school after his father was unexpectanly downsized in 1989 by a large corporation where he had worked for over 31 years.

In 1999, Mr. Avenatti clerked for the law firm O'Melveny & Myers, LLP in Los Angeles as a Summer Associate.  After he finished law school in December 1999, he moved to Newport Beach to begin work for O'Melveny.  He took the February 2000 California State Bar Exam, passed on his first attempt, and was licensed as a California attorney in June 2000.  Mr. Avenatti worked at O'Melveny as an attorney from 2000 to 2003 in the Newport Beach and Century City offices.  He then worked at Greene Broillet

1   Panish & Wheeler, LLP in Santa Monica as an attorney from 2003 until 2006/2007,

2   specializing in representing plaintiffs who had been wronged by large corporations.

3       While at Greene Broillet, he was primarily responsible for, among other things,

4   obtaining a $22.5 million settlement on behalf a client who had been defrauded by a

5   corrupt Chief Financial Officer (William Anthony Lloyd).[1]  The settlement was reached

6   after years of litigation, during which Mr. Avenatti took over 100 days of depositions on

7   three continents and obtained significant discovery sanctions against Gibson Dunn &

8   Crutcher, the defendant's counsel.  Mr. Avenatti personally earned a seven-figure fee in

9   the case, which he promptly used to pay off over $200,000 in student debt.

10      Mr. Avenatti later formed the law firms Avenatti & Associates, APC and Eagan

11  O'Malley & Avenatti, LLP (later known as Eagan Avenatti, LLP), in 2006 and 2007,

12  where he remained until approximately early 2019.

13      In 2007, Mr. Avenatti was recognized out of thousands of attorneys in California

14  as one of the top 20 attorneys under the age of 40.  In 2009, Mr. Avenatti was voted by

15  his peers in Orange County as the Trial Lawyer of the Year.  That same year, he was

16  honored by the California Assembly for "his unwavering commitment to the principles

17  of legal ethics and the preservation of the justice system."

18      In 2010, George Washington University Law School honored Mr. Avenatti with

19  its prestigious "Recent Alumni Achievement Award."  Prior to this honor, the law school

20  had placed Mr. Avenatti on its Board of Advisors and had also named an annual award

21  to a graduating student after Mr. Avenatti – the "Michael J. Avenatti Award for

22  Excellence in Pre-Trial and Trial Advocacy."

23      From 2000 until 2019, Mr. Avenatti successfully represented thousands of clients

24  across the United States and obtained over $1 billion in verdicts and settlements on their

25  behalf.  He personally earned millions of dollars from these earned successes, which

26  were almost entirely handled on a <u>contingency fee basis,</u> with Mr. Avenatti taking the

27

28  [1] Mr. Lloyd was later prosecuted by the USAO in the Central District.

2

risk of advancing all of the out-of-pocket costs necessary for the case (i.e. experts, depositions, travel, etc.) with the hope that the case would be resolved favorably for the client and Mr. Avenatti would be re-paid. Sometimes, these out-of-pocket costs exceeded $3,000,000 for a single case, not including the thousands of attorney hours spent prosecuting these matters, which oftentimes took 5 years or more to be resolved.[2]

Included among the contingency matters for which Mr. Avenatti served as lead counsel was a $39,000,000 settlement he obtained in 2011 in a malicious prosecution case, an amount believed to be the largest such settlement in U.S. history. The fee from this case was in the millions of dollars. In addition, between approximately 2012 to 2016, Mr. Avenatti also served as lead counsel for close to one thousand victims of Mr. Darren Berg of Seattle. Mr. Berg perpetrated one of the largest ponzi schemes in the history of the Western United States, estimated at $140 million, and was sentenced to 18 years in federal prison. After years of work, Mr. Avenatti recovered millions of dollars for his client victims, many of whom were vulnerable, elderly and disabled.

Although they made up less than 10% of Mr. Avenatti's practice, Mr. Avenatti also handled select class actions. For instance, in the middle of a jury trial in 2014, Mr. Avenatti settled a class action he had brought against a publicly traded company on behalf of Jewish families whose loved ones' remains had been removed from plots in a Los Angeles cemetery and dumped in a mass grave, all in the name of profits. Tragically, many of those remains belonged to individuals who had managed to survive the Holocaust and who had been freed from Nazi concentrations camps at the end of the Second World War. After extensive work in the case, Mr. Avenatti procured a settlement for his clients valued at approximately $85 million. The case was featured on *60 Minutes* in 2012 in a story titled "Final Resting Place." Mr. Avenatti was subsequently awarded millions in attorneys' fees from the court.

---

[2] For instance, Mr. Avenatti personally worked over 8,000 hours across 11 years in one case.

In April 2017, Mr. Avenatti obtained a $454 million jury verdict[3] in Federal District Court (Los Angeles) on behalf of doctors, nurses and first responders after they were sold fraudulent and defective personal protective equipment during the Ebola pandemic by one of the largest publicly traded companies in the world.[4]  As a result of the verdict, defective personal protective equipment (PPE) was removed from the United States National Stockpile in 2017, ensuring the safety of hundreds of thousands healthcare workers in the future (i.e. during the current COVID19 pandemic).  *60 Minutes* featured the case and the health risks exposed by it in a story entitled "Strike-Through."  Mr. Avenatti's work resulted in him receiving the national Public Justice Trial Lawyer of the Year Award in 2018, an annual award given to the attorney(s) in the nation who made the greatest public contribution to the public interest within the preceding year by trying or settling a precedent setting, socially significant case.

As the above facts demonstrate, for close to two decades, Mr. Avenatti had an extremely successful law practice that resulted in millions of dollars of legal fees from challenging, high-risk cases that benefited thousands of clients.  These fees were not stolen, nor were they obtained fraudulently.  They were <u>earned</u> through hard work and long hours, risk and perseverance.  Further, none of these fees were obtained from "coupon" type settlements of class actions, where attorneys go through the motions and run-up their lodestar in order to obtain millions of dollars in fees, while the class members get next to nothing (i.e. a coupon or a check for 50 cents).  Mr. Avenatti's fees resulted from real cases, brought on behalf of real people, who had suffered real loss.

Accordingly, there was nothing wrong or improper with Mr. Avenatti subsequently enjoying the fruits of his labor and leading a life that included some of the benefits of his success.  To suggest otherwise to the jury would be per se improper and

---

[3] The verdict was later reversed on appeal.

[4] Defense counsel in the case were paid approximately $51,000,000 (not a typo) in attorneys' fees to defend the matter through verdict; the jury deliberated less than five hours before rendering its verdict in favor of Mr. Avenatti's clients.

highly prejudicial.  It would likewise transform this case into a trial about Mr. Avenatti's 20-year career as a lawyer and the thousands of clients he successfully represented.

For each of these reasons and those set forth herein, Mr. Avenatti requests that the Court exclude any evidence regarding his alleged lavish lifestyle, wealth, debts, spending habits, financial condition or other similar evidence.

## II.   ARGUMENT

### A. The Admission of Evidence Concerning Wealth, Spending Habits, Debts, Financial Condition, and Lifestyle Violates the Notice Requirement of Rule of Evidence 404(b)(3)

Federal Rule of Evidence 404(b) regulates the admission of evidence of acts not charged in the Indictment. Under Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity therewith. Fed. R. Evid. 404(b). Other acts, crimes or wrongdoings may be admitted under this section to establish motive, opportunity, intent, plan, knowledge, identity, absence of mistake or lack of accident.

In a criminal case, the prosecutor must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A). This notice must be performed "…in writing before trial" and must "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B), (C). The government is obligated to "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from other act evidence." *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994). Reasonable notice of evidence is designed to "reduce surprise and promote early resolution of admissibility issues." *United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999). "Because the notice requirement serves as a condition precedent to the admissibility of 404(b) evidence, the offered evidence is inadmissible if the court decides that the notice

1 | requirement has not been met." *Id.*

2 |       On February 4, 2020, the government provided undersigned counsel with an eight

3 | page notice of its intention to introduce eight general categories of Rule 404(b) evidence:

4 | (1) evidence of embezzlement, (2) evidence of failure to pay IRS payroll taxes, (3)

5 | evidence of failure to pay State taxes for Global Baristas US, LLC, (4) evidence of

6 | fraudulent conduct relating to the 2017 EA LLP Bankruptcy, (5) evidence of perjury

7 | during judgment debtor examinations, (6) evidence of ongoing efforts to defraud and

8 | conceal assets from creditors, (7) evidence of conduct charged in the Southern District of

9 | New York and (8) evidence of embezzlement from other legal clients. On September 14,

10 | 2020, the government formally sought to admit these items of evidence pursuant to Rule

11 | 404(b). [Dkt. 285.] The defendant subsequently objected to the admission of this

12 | evidence on September 28, 2020 and the government replied on October 5, 2020. [Dkt.

13 | 297, 325.] Within the initial disclosure made in February 2020 and their subsequent

14 | motions, the government failed to indicate it would seek to introduce evidence of Mr.

15 | Avenatti's alleged lavish lifestyle, spending habits, wealth, debts and financial condition.

16 |       To date, the government has failed to provide the defendant with formal notice of

17 | its intent to introduce this type of evidence. In preparation for filing this motion,

18 | undersigned counsel contacted the prosecution inquiring as to their intentions. In

19 | response, the prosecution indicated that the government would seek to introduce limited

20 | evidence to prove financial motive for the alleged fraud and the use of purported client

21 | funds. A two-sentence e-mail, sent just before trial, is not the type of notice that Rule

22 | 404(b)(3) requires. The government has failed to provide notice that clearly articulates

23 | the permitted "purpose for which the prosecutor intends to offer the evidence and the

24 | reasoning that supports that purpose." Fed. R. Evid. 404(b)(3)(C).

25 |       The government has not provided the defense with notice of the evidence it seeks

26 | to introduce and its argument in support of the evidence's admissibility. Because of the

27 | government's failure to properly notify the defense of its intentions to introduce lifestyle

28 |

6

evidence and the reasoning that supports the admission of the evidence, the prosecution has failed to meet the requirements of Rule 404(b) and the evidence must be excluded. Even if the Court determines that the government has provided the defense with sufficient notice, the introduction of this evidence is not necessary to demonstrate a material element of any offense charged. Based on the following, this evidence is irrelevant, has very little probative value, and is highly prejudicial. Therefore, it should be excluded.

## B. Evidence of Mr. Avenatti's Wealth, Spending Habits, Debts, Financial Condition, and Lifestyle is Irrelevant

Evidence is relevant when it has any tendency in reason to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. Evidence of Mr. Avenatti's former wealth, lifestyle, cars, apartments, travel, debts, financial condition and spending habits are irrelevant.

On July 13, 2021, Mr. Avenatti will proceed to trial on counts 1 through 10 of the Indictment. [Dkt. 407.] Each of these counts are alleged violations of 18 U.S.C. § 1343, wire fraud. The elements of wire fraud include (1) the existence of a scheme to defraud, (2) the use of a wire, radio, or television to further the scheme and (3) the specific intent to defraud. *United States v. Jinian*, 725 F.3d 954, 960; *See also United States v. Pelisamen*, 641 F.3d 399, 409 (9th Cir. 2011). A conviction for wire fraud "requires the Government to prove the defendant had a specific intent to defraud, <u>not an intent to personally gain from the fraud. An intent to defraud does not turn on personal gain</u>." *United States v. Dowie,* 411 Fed. Appx. 21, 25 (9th Cir. 2010)(emphasis added).

The fact that an individual "is feckless and poor, or greedy and rich, without more, has little tendency to establish that the person has committed a crime to get more money…" *United States v. Nabaie*, 226 Fed. Appx. 702, 705 (9th Cir. 2007)("poverty" evidence including proof of repossession of a vehicle, rent arrears and an unlawful

detainer against the defendant's business property were improperly admitted to establish motive for financial crimes, *citing United States v. Mitchell*, 172 F.3d 1104, 1110 (9th Cir. 1999). In *Mitchell*, the trial court allowed the government to introduce evidence of the defendant's poverty to establish that he committed a bank robbery. *Mitchell*, 172 F.3d at 1106. The Ninth Circuit reversed finding that this type of poverty evidence was irrelevant to the offense charged and highly prejudicial, "lack of money gives a person an interest in having more. But so does desire for money without poverty. <u>A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value</u>." *Id.* at 1108-09 (emphasis added). Evidence of an individual's "lavish spending habits, without a connection to an individual's participation in criminal activity, is irrelevant." *United States v. Holmes*, 2021 U.S. Dist. LEXIS 98060 at *12-13 (N.D. Cal. 2021), *citing United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010)("[I]t is irrelevant if [defendant] spends his fortune on lavish parties, instead of donating it to starving Malawian orphans.").

Because the government is not required to prove that Mr. Avenatti personally gained from the charged scheme, evidence of his prior wealth, financial condition and supposed lavish lifestyle is irrelevant and unnecessary for the government's presentation of its case. Evidence that Mr. Avenatti resided in an exclusive apartment, drove expensive cars, traveled in a private jet, bought expensive clothes, dined in nice restaurants, had debts, and accumulated personal wealth, has no bearing or logical connection to the allegations made in the Indictment. Mr. Avenatti's wealth, financial condition and the manner in which he chose to spend his money has no bearing on whether he is guilty of the crimes charged.

### C. Evidence of Mr. Avenatti's Purported Wealth, Spending Habits, Debts, Financial Condition, and Lifestyle Violates Rule of Evidence 403

Pursuant to Federal Rule of Evidence 403, the Court may exclude relevant

evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice refers to an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one or evidence designed to elicit a response from the jurors that is not justified by the evidence." *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998). Rule 403 prevents the admission of evidence " that has an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented on the crime charged." *United States v. Shields*, 673 Fed. Appx. 625, 627 (9th Cir. 2016); *Citing United States v. Joetzki*, 952 F. 2d 1090, 1094 (9th Cir. 1991).

There is "a high 'danger of unfair prejudice' when poverty evidence is at issue." *Gutierrez v. County of L.A.*, 2013 U.S. Dist. LEXIS 107914 at *7-8 (C.D. Cal. 2013); *See also*, *United States v. Bensimon*, 172 F. 3d 1121, 1128 (9th Cir. 1999)(holding that the admission of the defendant's bankruptcy filing as evidence of financial motive was reversable error). The fact that a defendant is rich or poor, without more, "has little tendency to establish that the person committed a crime to get more money, and its probative value is substantially outweighed by the danger of unfair prejudice." *Mitchell*, 172 F.3d at 1110.

The Supreme Court has made it clear that "appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940). "Whether a man be rich or poor, he is entitled to the same considerations…" *Id.* at 238. Other circuit courts have since similarly determined "that evidence of a party's wealth should be excluded where it is not relevant to the issues in the case." *Ohio Six Limited v. Motel 6 Operating L.P.*, 2013 U.S. Dist. LEXIS at *51 (C.D. Cal. 2013). *See also United States v. Rothrock*, 806 F. 2d 318 (1st Cir. 1986)(arguments that the defendant was living "a

9

lifestyle that most people in America can only dream about" were prejudicial and improperly appealed to class prejudice); *Garcia v. Sam Tanksley Trucking Inc.,* 708 F. 2d 519 (10th Cir. 1983)("reference to the wealth or poverty of either party… is clearly improper argument."); *United States v. Stahl*, 616 F.2d 30 (2d. Cir. 1980)(arguments regarding the defendant's wealth improperly equated success, affluence, and pursuit of business with greed and corruption).

Evidence of wealth, spending habits, debts, financial condition and lifestyle is irrelevant, its probative value is low, and it has the ability cause severe prejudice amongst jurors. Evidence of this type is highly likely to inflame the jurors and alienate them from Mr. Avenatti. Because most Americans do not have the ability to travel by private jet, accumulate personal wealth or spend in a lavish manner, this evidence will prejudice Mr. Avenatti by improperly portraying him as greedy, rich, and unrelatable. Especially in light of the pandemic, many American families have suffered economic turmoil over the last year. It is likely that this evidence will upset jurors and elicit negative, emotional responses.

This evidence will also waste considerable time. Counsel may be forced to inquire into jurors' views on classism and wealth during voir dire, taking time away from more substantive issues.  Further, if the evidence is admitted, Mr. Avenatti will have to respond with evidence establishing his years of successes, the details of the cases he worked on, the results and fees he obtained, etc., which will result in a mini trial concerning Mr. Avenatti's career, finances and the thousands of clients he successfully represented. In short, Mr. Avenatti will need to place before the jury a significant amount of evidence and a number of witnesses in order to explain why Mr. Avenatti's financial situation was legitimate.  Because of the low probative value of this evidence, and the extreme prejudice which will result if this evidence were to be introduced, evidence of Mr. Avenatti's wealth and lifestyle should be excluded pursuant to Rule 403.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.   CONCLUSION

Based upon the foregoing, Mr. Avenatti respectfully requests that the Court exclude evidence of Mr. Avenatti's wealth, spending habits, debts, financial condition and lifestyle.

Dated: May 31, 2021                         Respectfully submitted,

/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

11

**CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.  I am not a party to the above-entitled action.  I have caused, on May 31, 2021, service of the defendant's:

MOTION IN LIMINE TO EXCLUDE EVIDENCE OF WEALTH, SPENDING HABITS, DEBTS, FINANCIAL CONDITION AND LIFESTYLE

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 31, 2021

/s/ H. Dean Steward

H. Dean Steward

12