TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2435
     Facsimile: (213) 894-6269
     Email:    Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 19-061-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR ORDER CONTINUING TRIAL DATE AND FINDING EXCLUDABLE TIME (CR 447); EXHIBITS 1-5 |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | *[EXHIBITS 1-4 LODGED UNDER SEAL CONCURRENTLY HEREWITH]* |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Alexander C.K. Wyman, hereby files its Opposition to defendant

MICHAEL JOHN AVENATTI's <u>Ex Parte</u> Application for Order Continuing Trial Date and Finding Excludable Time (CR 484).

    This Opposition is based upon the attached memorandum of points and authorities, the accompanying exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 9, 2021        Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

      /s/
BRETT A. SAGEL
ALEXANDER C.K. WYMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

As the government has stated repeatedly from the inception of this case through last month when defendant filed his last baseless ex parte application to continue the trial (CR 447), defendant "has a pattern and practice of using delay tactics to avoid responsibility for his conduct." (CR 26 at 4; CR 449 at 1.) Defendant's primary goals throughout this case appear to be to delay these proceedings ad infinitum and make unfounded accusations against the government to distract from defendant's egregious criminal conduct. Defendant's present application, which is a declaration by defense counsel, covers both. The application presents a false and misleading recitation of facts and provides no legal support -- as there is none -- to support defendant's claims and request for a continuance.

First, the government produced the discovery about which defendant complains -- and his complaint effectively is about one page, which is, at best, Giglio material -- on June 3, 2021, nearly two weeks in advance of the Court's June 14, 2021, witness disclosure and statements deadline (CR 407 at 3) and approximately six weeks in advance of trial. At no point in defendant's application does he even acknowledge the Court's prior statements and order about the June 14, 2021, deadline for witness and Jencks Act disclosures. The discovery was hardly late.

Second, as the government has done with prior discovery productions, the government provided defendant with a detailed discovery index and accompanying letter, which described in great detail the materials defendant was receiving. The index and letter identified documents within the production that were duplicates and

1  provided to facilitate defendant's review of a transcript and
2  recently conducted interviews.  Defendant's repeated claims of the
3  vital discovery being "buried" in voluminous discovery and the volume
4  of "late" discovery being produced are meritless.
5       Third, defendant can try all he wants to characterize EA
6  Employee 1 as "critical" and the "linchpin" of the government's case,
7  but his statements do not make that true.  In fact, EA Employee 1's
8  testimony is nowhere near as important to the government's case as
9  the bank records -- which clearly show defendant's embezzlement of
10 his clients' money -- or defendant's text messages and emails with
11 his clients in which he provides materially false and fraudulent
12 statements, among other voluminous incriminating evidence.  This
13 evidence, along with the testimony of defendant's victim-clients, is
14 the critical evidence of the case, not EA Employee 1.  As defendant
15 acknowledges, the government charged and arrested defendant <u>before</u>
16 even interviewing EA Employee 1.
17      Fourth, the government long ago provided defendant with
18 summaries of interviews of EA Employee 1 that took place on November
19 19, 2019, and January 9, 2020, <u>prior</u> to defendant's trial in New York
20 in which EA Employee 1 testified.  These reports contain similar
21 information to what defendant now complains he did not have.
22 Defendant had this information prior to his trial in New York in
23 which he also claims she was a vital witness, yet he did not ask her
24 a single question on cross-examination.
25      Finally, there is no legal basis, and defendant cites none, for
26 defendant to call an expert in an attempt to impeach a witness, let
27 alone on a condition that he has failed to demonstrate has <u>any</u> impact
28 on her ability to perceive or recall facts.  Defendant will have

ample opportunity to cross-examine the witness on her ability to recall facts and details and to challenge her testimony. The Court should deny defendant's latest, baseless request to delay his trial.[1]

## II. ARGUMENT

### A. The Government's June 3, 2021, Production Was Timely

Defendant litters his current application with conclusory statements about the "1,100 pages of discovery, including numerous key documents" that he claims should have been produced long ago as Brady material. (CR 484 ¶ 2.) Defendant fails to identify any of the discovery, except for one, single-page email, because, like his previous unfounded claims of discovery misconduct, defendant's assertions are simply wrong -- both factually and legally.

Despite repeatedly referencing the size of the production, defendant only complains about one page and goes so far as to claim the document was "buried" in the production. (Id. ¶¶ 2, 11.)[2] Notably absent from defendant's application is a reference to the government's discovery letter and index produced with the discovery on June 3, 2021, detailing the discovery and its content for defendant's review. (See Exhibit 1, filed concurrently under seal.) The discovery letter and index make clear that the government had previously produced much of the discovery in this production, and that the government was reproducing certain documents again to

---

[1] The government will not address all of the many claims that defendant has brought here on an ex parte basis, because most are irrelevant, but the government reserves the right to respond to any claims and present law and evidence to the Court if the Court wants further briefing.

[2] Defendant also accuses the government of "springing" the discovery on defense counsel while knowing he was in another federal trial. (CR 484 ¶ 3.) Not only was the discovery produced two weeks early, but the trial also did not prevent defense counsel from filing the present 65-page application with detailed research on PTSD.

3

facilitate defendant's review of the witness statements and testimony. Moreover, as the Court can see, the index provides a detailed itemization of the discovery making it readily apparent where any EA Employee 1 emails are in the discovery. (Id. at 30-32 (of the discovery index).) What is also abundantly clear from the discovery index is that, despite the deadline of June 14, 2021, to produce Jencks material, defendant has had nearly all Jencks material since 2019.[3]

Without any legal support, defendant claims that the particular email defendant attaches as Exhibit A is "classic Brady" material required to be produced long ago. (CR 484 ¶ 3.) Defendant is wrong. The email is not evidence favorable to the defendant nor material to guilt or punishment, and is not discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The material, at best, is discoverable as possible impeachment material of a witness pursuant to Giglio v. United States, 405 U.S. 150 (1972). When defendant previously claimed he was entitled to purported immunity information about this same witness, the Court recognized that potential impeachment material of a witness was not due until the government's witness disclosure deadline (RT 4/7/2021 at 10-11) -- which is still a week away (and nearly two weeks after defendant received this document). See, e.g., United States v. Georgiou, 777 F.3d 125, 141 (3d Cir. 2015) (rejecting claim that government violated Brady by failing to disclose information concerning a witness's history of substance

---

[3] Defendant does not challenge the remainder of the production except to claim that the government produced it pursuant to his Rule 16 request for discovery (CR 484 ¶ 2), but neither the government's production nor defendant's May 15, 2019, letter reference only Rule 16 material -- and the government's recent production was not a Rule 16 production.

4

abuse and depression); United States v. Baxter, 761 F.3d 17, 24 (D.C. Cir. 2014) (denying habeas claim that government violated Brady by failing to disclose that a witness suffered from bipolar disorder); Green v. Swarthout, No. C 12-1872 CW (PR), 2014 WL 3748618, at *10 (N.D. Cal. 2014) (rejecting habeas claim that state violated Brady by delaying disclosure that a witness suffered from bipolar disorder because the witness's disorder was put before the jury and defense counsel was able to cross-examine the witness so the jury could determine for itself if the disorder affected the witness's perception or memory, therefore any testimony from an expert regarding the witness's bipolar disorder and her medication would have been cumulative). And regardless, the government produced this one-page document to defendant six weeks prior to trial.[4]

**B.  EA Employee 1**

Defendant attempts to buttress his misconduct claim by asserting that EA Employee 1 "is likely the most critical government witness in this case" and that she is "the linchpin in the government's effort to convict" defendant.[5] (CR 484 ¶ 5.)  Defendant's claims in the

---

[4] The government is concurrently providing the Court with the entire email correspondence from May 4, 2020 (Exhibit 2, under seal), which the Court can review for itself to see the liberties defendant took in describing the communications. (Cf. CR 484 ¶¶ 11, 26.) Despite having the full email correspondence from the same discovery production, defendant only provided the Court with the initial email and then provided a misleading "summary" of the government's response. (Id.)

[5] One can easily infer that defendant had an additional goal in publicly filing the present application and disclosing the information that he received pursuant to the Protective Order about a witness who is readily identifiable: to embarrass or intimidate the witness, who defendant deems "critical," by publicly disclosing such private information in advance of the trial. As the Court knows from defendant's prior tweet regarding other identified individuals in the Indictment (see, e.g., CR 476 Ex. 3), this is not the first time defendant has attempted to publicly intimidate witnesses with confidential information.

5

present application are contradicted by defendant's actions and the facts in this case. Prior to defendant's Nike extortion trial, defendant received all reports of interviews in relation to EA Employee 1. Included in this discovery was a memorandum of interview in this case from November 19, 2019, as well as notes from a January 9, 2020, witness preparation session in advance of trial in his SDNY case. (Exhibits 3, 4, filed concurrently under seal.) As the Court can see from the very first paragraph of the November 19, 2019, interview, and the last page of the January 9, 2020, interview, the government provided relevant information to defendant regarding EA Employee 1 over eighteen months ago. Despite defendant's claims that such information is critical to defendant's ability to cross-examine this witness and that she was a "critical witness" who was "central" to the government convicting him in the SDNY trial (CR 484 ¶ 10), he asked <u>no</u> questions of EA Employee 1 on cross-examination.

    Defense counsel's declaration further describes his attempts to reach EA Employee 1 in March of this year in an attempt to interview her about the case and to determine whether she anticipated testifying at trial.[6] (<u>Id.</u> ¶ 12.) The declaration asserts that "[EA] Employee 1 never responded." (<u>Id.</u>) Despite the Court's prior admonition to defense counsel that the Court "expect[ed] a greater degree of candor going forward" (6/1/2020 RT 5-6), defense counsel's

---

[6] As can be seen from the January 9, 2020, interview report as well as other discovery provided to defendant and his counsel, EA Employee 1 was represented by counsel, so it begs the question why defense counsel was attempting to reach out to her directly in the first place. <u>See</u> Cal. R. Prof'l Resp. 4.2(a) ("In representing a client, a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.").

present declaration falls woefully short. EA Employee 1's attorney not only responded immediately, he stated that he represents EA Employee 1 and that she is represented by counsel who has instructed her not to respond to defense counsel's communications. (Exhibit 5.) Moreover, if EA Employee 1 was as "critical" as described in the application, the declaration fails to explain why it would take two years after being charged in this case to reach out to her.

Lastly, defendant's opinion on whether EA Employee 1 is critical and vital to his prosecution is both irrelevant and wrong. The victim-clients' testimony about the false statements defendant made, along with their actual settlement agreements that defendant often hid from his victim-clients, defendant's bank records that show defendant misappropriating his victim-clients' funds, and defendant's text and email messages making false and fraudulent representations to his victim-clients and others, are far more critical to the government's case-in-chief than the testimony of EA Employee 1. Defendant acknowledges that the government charged and arrested defendant before even interviewing EA Employee 1, but then attempts to claim her importance by noting that government counsel was present for the interview. (CR 484 ¶ 6.) Defendant fails to inform the Court that one or both government attorneys have been present for basically every interview in this matter, a fact that defendant has known since 2019 because the government provided the witness statements to defendant two years ago. Defendant further attempts to bolster EA Employee 1's importance by highlighting the number of interviews and meetings the government has had with her (CR 484 ¶ 9), but fails to be candid with the Court that these numbers include

interviews and meetings EA Employee 1 had related to defendant's criminal cases in SDNY. Bluster does not change the facts.

### C. Defendant Has No Legal Basis to Call an Expert Witness

Defendant's application ultimately claims that defendant needs a delay in the trial "to investigate the mental condition, retain a mental health expert and provide sufficient time for the expert to become adequately familiar with the facts to competently testify." (CR 484 ¶ 4.) Defendant's application does not cite to a single case supporting the proposition that a defendant can call an expert at trial to presumably attempt to impeach EA Employee 1, because legal precedent rejects this. The Ninth Circuit has clearly stated that "'an expert witness is not permitted to testify specifically to a witness' credibility.'" United States v. Rivera, 43 F.3d 1291, 1295 (9th Cir. 1995) (quoting United States v. Candoli, 870 F.2d 496, 506 (9th Cir. 1989)). Despite his arguments to the contrary in the present application, defendant is quite familiar with this rule of law, as he stated the following in his (unsuccessful) motion to exclude one of the government's experts: "'An expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility.'" (CR 285 at 5 (quoting United States v. Hill, 749 F.3d 1250, 1260 (10th Cir. 2014)).)[7]

If appropriate, defendant could cross-examine EA Employee 1 on her ability to recall facts and potentially impeach her based on any impairment to her memory due to a purported mental health condition, but the Court should not allow defendant to call an expert for a

---

[7] Hill further states that each circuit court to face the issue similarly has held "that the credibility of another is not an appropriate subject for expert opinion testimony." 749 F.3d at 1260.

8

collateral matter, such as a condition that does not affect a witness's ability to perceive or recall events during the events in question. See, e.g., United States v. Kohring, 637 F.3d 895, 910 (9th Cir. 2011) ("'[F]ederal courts appear to have found mental instability relevant to credibility only where, during the time-frame of the events testified to, the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness ... that dramatically impaired her ability to perceive and tell the truth.'" (emphasis in original) (quoting United States v. Butt, 955 F.2d 77, 82-83 (1st Cir. 1992))); United States v. Jiminez, 256 F.3d 330, 341-45 (5th Cir. 2001) (finding no abuse of discretion in limiting cross-examination of witness on mental health issues and limiting information provided to defendant). Because the witness's PTSD is allegedly attributable in part to the execution of a search warrant at her house the day defendant was arrested, it is difficult to see how she could have had the condition during the events about which she is expected to testify.

At a minimum, Federal Rule of Evidence 403 would call for the exclusion of expert testimony on PTSD. Given the varying degrees of the disorder and potential impact the disorder may have on someone's memory and the accuracy of her testimony, it has minimal probative value, if any, which would be greatly outweighed by confusing the issues and wasting time on a minitrial regarding the speculative impact of PTSD on a witness.[8] Because defendant's purported expert

---

[8] Defendant states that PTSD goes directly to veracity and capacity as a witness (CR 484 ¶ 16); however, Federal Rule 608(b) specifically would exclude extrinsic evidence of a collateral matter. Therefore, any fathomable basis for an expert to testify regarding PTSD would be for the witness's capacity to recall.

9

would have no information on this particular witness's diagnosis and its impact on her, the testimony would be entirely speculative. This Court has great discretion to exclude such testimony under Rule 403.[9]

Moreover, the government's early disclosure of the information provides defendant ample time to research and/or consult with an expert to properly prepare for cross-examination. Despite complaining that the government produced the relevant material on June 3, 2021, defendant clearly has had ample time to research and cite copious materials and authorities relating to PTSD and the law in his present sixty-five page filing -- while his counsel is in the middle of another federal criminal trial.[10] (CR 484 ¶¶ 13-19, Exhibits B, C.) As defense counsel's other trial is already

---

[9] The Court can also note the insincerity of defendant's present claim for the need to hire an expert to impeach a witness for a potential mental disorder, because defendant has known through discovery in this case for over two years, and likely seven additional years before that, that one of defendant's victims suffers from mental health issues. Immediately after defendant was accused of stealing this victim's money in a judgment debtor examination in March 2019, defendant went to his victim-client's residence and specifically asked the victim-client what medication he was taking for his mental health issues. Defendant has never filed or provided a Rule 16 expert notice to testify about that witness's capacity to testify accurately, again, likely because defendant is only claiming this now in an attempt to delay his trial.

[10] United States v. Harding, 864 F.3d 961, 966 (8th Cir. 2017) (affirming district court's denial of defense request for trial continuance made during trial after government witness disclosed for first time on stand that he was a paranoid schizophrenic based on defense's desire to "secure an expert to testify about the effect of paranoid schizophrenia on a witness's ability to perceive and recall events," holding: "Although Macpherson did not disclose his paranoid schizophrenia until trial, Harding was able to cross-examine him about the illness and to suggest to the jury that the illness affected Macpherson's credibility. The potential that further investigation would have produced information that materially affected the jury's perception of Macpherson's credibility was too speculative to demand a continuance. And Macpherson's testimony about Harding's possession of a gun was corroborated by Ruud, so the case did not rise or fall on whether the jury believed Macpherson alone").

completed (in less than a week), defendant and his counsel have five weeks -- easily sufficient time -- to prepare for this "critical" witness on one discrete area.

The cases defendant does cite provide no legal basis to permit him to call an expert witness to testify about the potential impact of PTSD on another witness. Defendant cites five state cases, primarily habeas and death penalty habeas matters (CR 484 ¶¶ 17-18), but at most these cases discuss a defense attorney's effectiveness in investigating and presenting a mental health evidence as a defense to the crimes the defendants were charged with and convicted of, or a defendant's ability to hire an expert to determine whether a defendant has a defense to the crime charged due to a mental incapacity. Nothing in these cases remotely deals with defendant's present claim of needing an expert to impeach a <u>government witness</u> based on a mental condition such as PSTD. Defendant also cites various cases relating to the Sixth Amendment Confrontation Clause and a defendant's ability to fully cross-examine a witness against him (CR 484 ¶ 20), but again, these cases provide no support for defendant's current claim that would result in a continuance.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion in its entirety.