TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2435
     Facsimile: (213) 894-6269
     Email:    Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>MICHAEL JOHN AVENATTI,<br><br>          Defendant. | No. SA CR 19-061-JVS<br><br>REPLY IN SUPPORT OF GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE UNDERLYING FACTS FROM THE CIVIL LITIGATION THAT RESULTED IN SETTLEMENTS PURSUANT TO FRE 401, 402, AND 403; EXHIBITS 8-9<br><br>Hearing Date: June 28, 2021<br>Hearing Time: 8:00 AM<br>Location:      Courtroom of the<br>               Hon. James V. Selna |

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Alexander C.K. Wyman, hereby files its reply in support of its

motion in limine to exclude underlying facts from the civil litigation that resulted in settlements pursuant to Federal Rules of Evidence 401, 402, and/or 403.

This reply is based upon the attached memorandum of points and authorities and exhibits, the initial motion in limine and under seal declaration of Brett A. Sagel and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 21, 2021              Respectfully submitted,

                                  TRACY L. WILKISON
                                  Acting United States Attorney

                                  SCOTT M. GARRINGER
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____/s/_____
                                  BRETT A. SAGEL
                                  ALEXANDER C.K. WYMAN
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The government attempted to meet and confer with defendant regarding whether defendant believed the underlying facts and claims that resulted in the civil settlement payments -- which defendant later misappropriated -- are relevant in the July 13, 2021, trial on the wire fraud counts.  (CR 476 Ex. 1.)  The government even provided several examples to defendant of the confidential and private facts relating to victims and third parties that the government deemed irrelevant.  (Id.)  In response, defendant did not attempt to engage on the subject and simply provided a blanket and cursory objection (CR 476 Ex. 2), which resulted in the government filing the instant motion in limine (CR 476).

Buried in defendant's ten-page opposition focusing primarily on irrelevant claims and law, defendant appears to concede the very issue the government raised in its motion.  Defendant states that he "has no intention of re-litigating [the underlying] claims" and "has no intention of causing any witness, regardless of whether they are a former client of Mr. Avenatti's, any unnecessary embarrassment, harassment or emotional turmoil."  (CR 501 at 1 n.2, 8-9.)  As such, the Court should grant the government's motion in limine and prevent defendant from presenting evidence or arguments about the confidential underlying facts and claims that resulted in the settlement agreements.  If defendant seeks to introduce any such information, the Court should require defendant to proffer to the Court outside the presence of the jury -- and in certain circumstances under seal and/or in camera -- the non-public underlying facts and claims he seeks to introduce or raise.

**II.   ARGUMENT**

    **A.   The Motion <u>In Limine</u> to Exclude the Confidential Underlying Facts and Claims**

        As the government outlined in its initial motion, the principal issues at trial will likely center on whether defendant unlawfully misappropriated the settlement funds, whether defendant made materially false representations to or omitted material facts from his clients, and whether defendant acted with intent to defraud.  (CR 476 at 3.)  Defendant concedes this: "[T]he critical issues in this case[] includ[e] whether [defendant] made materially false representations or omitted material facts from his clients, unlawfully misappropriated monies from the clients, acted with intent to defraud and cheat, or instead acted in good faith, believed he was entitled to the monies, and whether he was in fact entitled to the monies."  (CR 501 at 6.)  The underlying facts and claims that resulted in the other parties agreeing to the civil settlements have no bearing on what both parties in this case agree are the critical issues for the jury to decide.  This case is about whether defendant stole his clients' money, not why he was representing them or the factual claims that led to the settlements in the first place.

        Although defendant claims that "the government constructs two straw men" (CR 501 at 8), defendant basically agrees not to use the very evidence and arguments the government seeks to exclude.  In relation to the underlying claims from the civil actions, defendant states he "has no intention of re-litigating those claims."  (<u>Id.</u>) And as to the confidential information underlying those claims, defendant again states that he "has no intention of causing any witness, regardless of whether they are a former client of

2

1   [defendant's], any unnecessary embarrassment, harassment or emotional

2   turmoil."  (Id. at 9.)[1]  The Court should accept defendant's

3   representations and exclude the underlying confidential facts and

4   claims that resulted in the civil settlements as the government

5   seeks.

6        Defendant attempts to excuse his failure to address the actual

7   issue by claiming "the government fails to point to any particular

8   fact, detail or event they want excluded."  (CR 501 at 1.)  Defendant

9   even goes so far as to assert that, "[h]ad the government provided

10  particular facts or pieces of evidence they wished to have excluded,

11  the defense would have been receptive to attempting to reach a

12  resolution."  (Id. n.2.)  As the Court can see from the exhibits

13  filed concurrently with the government's motion, particularly the

14  emails between the parties, defendant's claim is demonstrably false.

15       First, the government's email to defendant in an attempt to meet

16  and confer on this issue provides at least two examples of such

17  underlying facts and claims that the government would deem

18  irrelevant.  (CR 476 Ex. 1.)[2]  Instead of being "receptive to

19  attempting to reach a resolution," defendant replied with a

20  perfunctory opposition with the same obstructionist approach (id. Ex.

21  2), which is neither productive nor reasonable, that he has pursued

22

23      [1] After defendant filed his opposition to this motion, defendant
filed a reply in one of his other criminal matters in the Southern
District of New York, in which defendant publicly disclosed
24  information about one of defendant's victim-clients that would appear
to be, in whole or in part, to attempt to embarrass or harass his
25  former client and witness against defendant.  (See Ex. 8 at 5-8,
attached.)  This is yet another example that defendant cannot be
26  trusted, on his own, not to try to use irrelevant personal
information against a witness.

27      [2] The government's motion also included Exhibits 3-6 that
28  provided further examples of the confidential facts and claims that
would be irrelevant to relitigate.  (CR 476 Ex. 3-6.)

1   throughout this case.  Although defendant now claims that he has no

2   intention to relitigate the underlying claims or seek to embarrass

3   any witness, he neither stated such to the government nor attempted

4   to resolve this issue in any meaningful or reasonable way.

5        In addition, as the Court knows, despite the reciprocal

6   discovery deadline to which defendant stipulated, and the Court's

7   prior Order to provide reciprocal discovery on a rolling basis to be

8   completed by December 1, 2020 (CR 371 at 6), defendant failed to

9   produce any reciprocal discovery pursuant to his deadlines.  To date,

10  defendant has produced two documents totaling six pages in reciprocal

11  discovery, which relate to documents defendant got one of his victim-

12  clients to sign and initial on March 23, 2019, after defendant was

13  confronted with stealing that victim-client's money.[3]  The only

14  reciprocal discovery produced is from four years after defendant

15  obtained the settlement proceeds for one victim-client.  As such,

16  defendant has produced no reciprocal discovery pertaining to the

17  underlying facts and claims relating to the civil matters of any of

18  his victim-clients that resulted in settlements, so it is unclear

19  what relevant evidence defendant would seek to admit on these issues.

20  Defendant wants it both ways: to strategically choose not to provide

21  reciprocal discovery and to complain that the government does not

22  specifically identify what evidence of defendant the government wants

23  to exclude.  The Court should see through defendant's gamesmanship.

24

25 ─────────────

26      [3] Defendant's actions in getting his victim-client to sign these
    two documents are specifically alleged in the Indictment (CR 16
    ¶¶ 7.k., 7.l.), and defendant also posted these two documents on his
27  twitter account on April 11, 2019 (CR 283 at 4 and Ex. 2) --
    immediately after he was indicted.  Defendant had and knew of these
28  documents for over a year and a half before producing them -- after
    his reciprocal discovery deadline.

4

1    Moreover, at least twice in defendant's opposition he claims the

2 government wants to exclude "all 'evidence and arguments about the

3 underlying facts and claims that resulted in civil settlements.'"

4 (CR 501 at 1, 5 (emphasis added).)  It is not a mystery why defendant

5 does not quote the word "all" from the government's motion, because

6 the government neither said "all" nor sought "all."  Defendant even

7 undermines his own claim by citing to the portion of the government's

8 motion in which the government stated that it expects limited facts

9 related to the underlying representations to be relevant (id. at 5),

10 such as the retention and fee agreements, the basic scope of the

11 representations, and the settlement agreements (CR 476 at 1-3).  As

12 the government stated in its initial meet and confer email to

13 defendant and reiterated in its motion, limited facts relating to

14 defendant's representations of the victim-clients would be relevant

15 for context, but that would not open the door to introduce irrelevant

16 facts and claims relating to the disputes between the civil

17 litigants.

18    As the government stated in its motion, the government is

19 unaware of any basis in which the underlying facts and claims that

20 resulted in the settlement agreements are relevant to the

21 determination of whether defendant committed wire fraud.  Defendant,

22 as the proponent of the evidence, has the burden to advance a

23 plausible connection, which he has failed to do.  The confidential

24 details relating to how and why the victim-clients obtained the civil

25 settlements before defendant misappropriated their money is not

26 relevant to whether defendant fraudulently diverted the money for his

27 own use, whether he made false statements to his clients, and whether

28 he acted with the intent to defraud.

1    Even if defendant could articulate some plausible reason the

2    evidence is relevant under Rule 401, which he has not, defendant's

3    opposition completely fails to meaningfully address the proper

4    exclusion of the evidence under Rule 403.  Defendant ignores the

5    caselaw relating to Rule 403 and its applicability to the present

6    case, and simply repeats many of his other inapt claims and arguments

7    raised earlier in his opposition.  (CR 501 at 8-9.)  In the only part

8    of defendant's opposition in relation to Rule 403 addressing the

9    issues raised by the government's motion, defendant concedes that he

10   will not seek to introduce said evidence.  (Id.)  Any limited

11   probative value the evidence relating to the underlying facts and

12   claims that resulted in civil settlements may have is easily and

13   "substantially outweighed by the danger of prejudice, confusion of

14   the issues, misleading the jury, or by considerations of undue delay,

15   waste of time, or needless presentation of cumulative evidence."

16   Fed. R. Evid. 403; see also United States v. Espinoza-Baza, 647 F.3d

17   1182, 1189 (9th Cir. 2011).

18       **B.   Defendant's Other Claims**

19       Defendant's other arguments and claims in his opposition have

20   little, if any, relevance to the Court's determination of this

21   motion, and none provides a basis to deny the relief sought by the

22   government.  The government, however, will briefly address the other

23   claims defendant raised.

24       First, defendant maintains he is entitled "to present a complete

25   defense" under the Constitution (CR 501 at 4), but ignores Supreme

26   Court precedent -- cited in the government's motion -- that it is

27   "unquestionably constitutional" for a district court to exclude

28   evidence pursuant to Federal Rules of Evidence 401 and 403, Holmes v.

6

1   <u>South Carolina</u>, 547 U.S. 319, 324 (2006).  Then, without any

2   explanation or support, defendant provides thirteen categories of

3   evidence he seeks to introduce that he claims are "highly relevant"

4   to his defense.[4]  (CR 501 at 6-7.)  The government would agree that

5   the following evidence would be relevant and admissible: the

6   agreements between defendant and his clients regarding the scope of

7   the representation; the amount of money defendant would be entitled

8   to under the agreements if settlements were obtained; the amount and

9   type of work defendant performed as it relates to costs to be reduced

10  from the settlement amounts to be paid to his clients; the settlement

11  agreements and terms relating to the timing of the payments under the

12  agreement; and the amount of money from the settlements to which

13  defendant was entitled, including costs advanced and paid to the

14  clients.  Defendant also claims he will introduce evidence relating

15  to separate agreements, modification of agreements, and

16  understandings he had with his clients regarding what fees to which

17  defendant was entitled from the settlement payments.  To the extent

18  there actually is any such evidence, which the government has not

19  seen and defendant has not produced in reciprocal discovery, that too

20  likely would be relevant.  Defendant, however, wants to introduce

21  additional evidence -- for example, relating to the purported quality

22  of his work, why he undertook such work, and the challenges in his

23  representations -- for which he provides no explanation (as he

24  cannot) of its relevance as to whether he stole his clients' money or

25  whether he had an intent to defraud.  Because the categories and

26

27         [4] A review of the thirteen categories clearly shows that none of
   them have anything to do with the confidential underlying facts and
28  claims that the government is seeking to exclude in the present
   motion.

1  information defendant claims he wants to introduce in his thirteen

2  categories are neither confidential nor subject to any motion before

3  the Court, no ruling is necessary on such evidence at this time.

4      Defendant next claims that the government should not be able to

5  preclude defendant from using private and confidential information he

6  learned through the representations of his clients to mount his

7  defense because the clients executed "full and complete explicit

8  waivers of the attorney-client privilege and confidentiality years

9  ago." (CR 501 at 2.) Notably absent is a reference to the waivers

10 themselves or the language in the waivers, because defendant's

11 statement is false. The government previously provided to the Court

12 the limited waivers of attorney-client privilege and consent to

13 search by the various clients (CR 305 Ex. 7), in which the clients'

14 waivers were _limited_ to the government for the purposes of the

15 government carrying out its duties, including searching the digital

16 devices in this matter.[5] This is unfortunately just the latest in a

17 long list of examples of defendant being less than candid with the

18 Court. And more importantly, whether defendant's former clients

19 waived privileges or not has no bearing on whether the information is

20 admissible under Rules 401 and 403.

21      Finally, defendant also appears to claim that the Court cannot

22 or should not rule on the present motion _in limine_ at this time but

23 should wait until trial when the Court can assess all of the

24 evidence. (CR 501 at 3.) Yet one of the primary purposes of a

25 motion _in limine_, as approved by the Ninth Circuit, is to limit in

26

27

28      [5] For the Court's convenience, the government will attach these limited waivers as Exhibit 9 to this reply, even though they are unnecessary for the determination of the relief sought.

advance of a jury trial testimony and evidence relating to specific areas and topics to "give counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury."  United States v. Heller, 551 F.3d 1108, 1111-12 (9th Cir. 2009).  The current motion properly permits the Court to rule in advance to avoid unnecessary arguments while the jury waits and to avoid having objectionable confidential information come up in court -- and possibly before the jury -- that has no place in the trial.

**III. CONCLUSION**

For the foregoing reasons and the reasons stated in the government's motion in limine (CR 476), the government respectfully requests that the Court exclude evidence and arguments about the underlying facts and claims that resulted in civil settlements pursuant to Federal Rules of Evidence 401, 402, and/or 403.

# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                         :

UNITED STATES OF AMERICA,       :      19 Cr. 374 (JMF)

                                           :

                -v-                     :

                                           :

MICHAEL AVENATTI,                 :

                                           :

              Defendant.       :

                                           :
--------------------------------------------------------X

## MICHAEL AVENATTI'S REPLY IN SUPPORT OF HIS PRE-TRIAL MOTIONS

**DAVID E. PATTON, ESQ.**
Federal Defenders of New York, Inc.
Attorney for Defendant
      **MICHAEL AVENATTI**
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8700

Of Counsel:    **Robert M. Baum, Esq.**
                    **Andrew J. Dalack, Esq.**
                    **Tamara L. Giwa, Esq.**
                    Assistant Federal Defenders
                    (212) 417-8760

TO:  **AUDREY STRAUSS, ESQ.**
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, NY 10007

      Attn:  **Matthew Podolsky, Esq.**
             **Robert Sobelman, Esq.**
             Assistant United States Attorneys
             Southern District of New York

# TABLE OF CONTENTS

I.     The Court should preclude the government from introducing photographs of Ms. Clifford's purported WhatsApp chats with Mr. Avenatti and otherwise scrutinize the government's handling of Ms. Clifford's cell phone. ...................................................................................................2

II.     The defense never waived a challenge to the government's use of a DOJ filter team to perform a privilege review of Mr. Avenatti's iCloud account. ...................................................4

III.     The government's position that all of the statements in its possession, custody, or control attributable to Ms. Clifford, Mr. Janklow, and Ms. Regnier are discoverable only under Giglio and the Jencks Act suggests it is too narrowly construing its Brady obligations....................................................5

IV.     Conclusion....................................................................................................................8

The government's opposition to Michael Avenatti's pre-trial motions fundamentally misapprehends the core issues at play and urges the Court to deny Mr. Avenatti relief without even an evidentiary hearing. But notwithstanding the government's protestations, there remain legitimate concerns about how and why the government obtained incomplete and inauthentic versions of Stephanie Clifford's WhatsApp communications with Mr. Avenatti, and why it also failed to acquire other equally material communications and relevant electronically-stored information from Ms. Clifford's cell phone. The defense has also never waived an objection to the government's use of a "filter team" to search of Mr. Avenatti's iCloud account—which contained attorney-client communications and attorney work-product relevant to Mr. Avenatti's defense preparation across his three criminal cases—and respectfully submits that the issue demands further scrutiny, particularly since a court-appointed "special master" conducted the privilege reviews of seized devices and files belonging to two other high-profile attorneys investigated in this district. See generally Alan Feuer, "Special Master Finishes Review of Files in Cohen Case," N.Y. Times (Aug. 9, 2018), available at: https://nyti.ms/3zELkwo; Shayna Jacobs, "Judge orders 'special master' to review Giuliani's phone, computer records," Wash. Post (May 28, 2021 at 5:35 p.m. EDT), available at: https://wapo.st/35yk18X.

Separately, the government's opposition to its prompt disclosure of statements made by three key witnesses (Ms. Clifford, Luke Janklow, and Judy Regnier) misses the crux of Mr. Avenatti's concern: that the government's perspective on what constitutes Brady material is far too conservative, and that delaying the disclosure of materials bearing on Ms. Clifford's veracity prejudices Mr. Avenatti's defense preparation. In particular, and because her testimony and competence as a witness is central to the government's entire case, Ms. Clifford's statements in the government's possession, custody or control about her book deal and relationship with Michael Avenatti are plainly material to the issue of guilt and should be disclosed without further delay. And

given Mr. Janklow's and Ms. Regnier's intimate involvement with Ms. Clifford over the time period at issue in the indictment, the Court should at least review in camera these witnesses' statements in the government's possession, custody, or control to determine whether they are helpful to the defense.

**I.      The Court should preclude the government from introducing photographs of Ms. Clifford's purported WhatsApp chats with Mr. Avenatti and otherwise scrutinize the government's handling of Ms. Clifford's cell phone.**

The government does not challenge any portion of Donald Vilfer's declaration, including his statement that the PDFs of Mr. Avenatti's purported WhatsApp chats with Ms. Clifford, which it seeks to introduce at trial, "fall far short of being acceptable as evidence of digital data" and "offer none of the authenticating information found through the use of forensic tools."  Ex. D to Motion at ¶4.  Instead the government tries to obfuscate the issue by pointing to cases in which screenshots of text communications were admitted, while at the same time blaming the defense for not facilitating its search of Mr. Avenatti's cell phone.  These arguments fall short.

As an initial matter, the government's failure to gain access to Mr. Avenatti's cell phone despite having obtained a search warrant is not Mr. Avenatti's problem to solve.  Response at 12.  Indeed, Mr. Avenatti is under no obligation to help the government unlock his phone because the privilege against self-incrimination does not distinguish between compelling someone to provide his birthdate, Pennsylvania v. Muniz, 496 U.S. 582, 598-99 (1990), "the combination to a wall safe," United States v. Hubbell, 530 U.S. 27, 43 (2000), or the password to his electronic device.  As long as Mr. Avenatti's passcode might lead to incriminating evidence, the Fifth Amendment protects him from being compelled to provide it.

 Separately, the defense acknowledges that it might be acceptable to offer as evidence paper files of electronic text communication between two parties if it is undisputed that the paper files reflect the full text change without any edits, omissions, or alterations.  But that is not the case here.  Comparing side by side the photographs of Ms. Clifford's cell phone screen (Ex. B to Motion) with

the text file Ms. Clifford provided to the government (Ex. C to Motion), it is clear that there are glaring omissions. Not only are specific messages from the text file missing from the photographs produced by the government, but the text file also omits, in numerous places, certain communications purportedly exchanged between Mr. Avenatti and Ms. Clifford. Put differently, neither the photographs of Ms. Clifford's cell phone screen nor the text file she transmitted to the government reflect her entire WhatsApp exchange with Mr. Avenatti. Accordingly, the representations made by the government and Clark Brewster, Ms. Clifford's counsel, that Ms. Clifford has produced "all of [her] WhatsApp communications" with Mr. Avenatti are demonstrably false. Response at 4-5; see also Dkt. No. 123-1 (letter from Mr. Brewster claiming "all" WhatsApp communications were provided to the government). Because the PDF paper files are incomplete and not authenticable, they are inadmissible, and the Court should not allow the government to introduce any WhatsApp communications at trial unless it is offering a forensic copy obtained through an industry-accepted digital forensic tool, like Cellebrite. Ex. D to Motion at ¶8.

Relatedly, the government's insistence that "[a]t no time" did it have "possession of any other contents of [Ms. Clifford's] cellphone or [] the legal authority to forensically extract or copy any other data from [Ms. Clifford's] cellphone" misses the mark. Response at 11.

First, based on exchanges with the government related to its handling of Ms. Clifford's cell phone, the defense understands that the photographs attached as Exhibit B to its opening motion were taken by a special agent from the United States Attorney's Office, who literally held Ms. Clifford's cell phone and took photographs of its screen. Thus, the agent certainly possessed Ms. Clifford's cell phone and simply failed to do anything with it except take pictures of the select text messages Ms. Clifford evidently chose to show the government.[1]

---

[1] Recent developments in U.S. v. Avenatti, 19 Cr. 373 (PGG) indicate that this same special agent failed to preserve one or more text messages she exchanged pre-trial with government witness Judy Regnier, which reinforces why this Court should be concerned about her handling of Ms. Clifford's cell phone. Dkt. No. 323 at 5-6.

Second, and more to the point, the government undoubtedly had available to it a legal authority that would have facilitated a forensic extraction or copy of Ms. Clifford's cell phone: Ms. Clifford's consent. The government could have also obtained a search warrant. But the government has refused to say whether it sought Ms. Clifford's permission to forensically extract data from her phone, including her WhatsApp communications with Mr. Avenatti. If the agent who possessed Ms. Clifford's phone did not seek her consent to forensically image or extract data from the device, then the government failed (deliberately or not) to preserve evidence. This includes the best evidence of the WhatsApp communications and also Ms. Clifford's other "conversations with third parties" about Mr. Avenatti and/or the book deal. Ex. D to Motion at ¶6.

Conversely, if the agent sought Ms. Clifford's consent to forensically copy her phone—or at the very least to digitally extract her WhatsApp chats with Mr. Avenatti—and Ms. Clifford refused, then the notes from that encounter and the basis for Ms. Clifford's refusal must be disclosed immediately under Brady. Any explanation Ms. Clifford provided to preclude the government's forensic copying of her phone goes to her credibility, truthfulness, and competence as a witness. Thus, the Court should compel the government to provide additional information about its handling of Ms. Clifford's cell phone and/or hold an evidentiary hearing.

## II. The defense never waived a challenge to the government's use of a DOJ filter team to perform a privilege review of Mr. Avenatti's iCloud account.

In opposing Mr. Avenatti's motion to suppress the items seized from his iCloud account because they were obtained through a warrant that improperly delegated the responsibility of a privilege review to a DOJ filter team, the government argues that Mr. Avenatti's prior counsel "waived any objection." Response at 25-26. This is inaccurate.

On September 25, 2019, the government apparently produced to Mr. Avenatti's prior counsel the raw, unfiltered data from Mr. Avenatti's iCloud account and noted that the materials had not been shared with the prosecution team. Two months later, in early December 2019, Mr.

Avenatti's prior counsel were informed by the DOJ's filter team that it had conducted a review and was preparing to share materials it deemed "non-privileged" with the prosecution team. The DOJ's filter team offered to give Mr. Avenatti's prior counsel one or two weeks to review the filter team's designations, which Mr. Avenatti's prior counsel rejected.

Approximately one month later, on January 7, 2020, the DOJ's filter team contacted Mr. Avenatti's prior counsel and stated its intent to imminently disclose the materials it considered non-privileged to the prosecution team. Mr. Avenatti's prior counsel promptly objected to any release of the materials and announced its intent to "reserve all rights."

This exchange, memorialized over e-mail which the defense can provide to the Court upon request, does not indicate that Mr. Avenatti's prior counsel waived or forfeited any challenge to the propriety of the DOJ filter team's privilege review of Mr. Avenatti's iCloud account. To the contrary, the DOJ filter team shared Mr. Avenatti's iCloud search returns with the prosecution team over the defense's objection. The Court should therefore address the merits of Mr. Avenatti's challenge to the government's search warrant for his iCloud account and scrutinize why a "special master" was not appointed to perform the privilege review.

### III. The government's position that all of the statements in its possession, custody, or control attributable to Ms. Clifford, Mr. Janklow, and Ms. Regnier are discoverable only under <u>Giglio</u> and the Jencks Act suggests it is too narrowly construing its <u>Brady</u> obligations.

The government insists that any witness statements in its possession, custody, or control made by Ms. Clifford, Mr. Janklow, and/or Ms. Regnier are only discoverable under <u>Giglio</u> and 18 U.S.C. § 3500. But this response misses the point of Mr. Avenatti's argument: that given the unquestionable importance of Ms. Clifford's truthfulness to the charges, her statements about a wide range of topics—from Mr. Avenatti to her mental health and condition—must be disclosed under <u>Brady</u> because they are either material to guilt or helpful to Mr. Avenatti's defense. The same

goes for Mr. Janklow and Ms. Regnier's statements about Ms. Clifford, the book deal, and her relationship with Mr. Avenatti.

As discussed in Mr. Avenatti's opening motion, his written contract with Ms. Clifford (Ex. A to Motion) provided for him to be compensated for negotiating a book deal on Ms. Clifford's behalf. And as outlined in the government's complaint, what essentially transforms this case from a contractual dispute into an alleged criminal matter is Ms. Clifford's uncorroborated claim that Mr. Avenatti verbally modified their contract after the fact to decline any remuneration for his work on her book deal. Dkt. No. 1 at ¶9 (alleging that Mr. Avenatti verbally modified his contract with Ms. Clifford and "told [Ms. Clifford], in substance and in part that he would not accept payment or remuneration from [her] for any work related to [her] book"). If Ms. Clifford is lying, and Mr. Avenatti never made any such modification to the express written terms of their original agreement, then the government's entire case falls apart. Accordingly, Ms. Clifford is the government's key witness—the case will rise and fall on her testimony.

Thus, anything in the government's possession, custody, or control that casts doubt on Ms. Clifford's truthfulness, credibility, and mental and emotional state is material to Mr. Avenatti's alleged guilt or helpful to his defense, and must therefore be immediately disclosed under <u>Brady</u>. <u>See</u> <u>also</u> Rule 5(f) Order, Dkt. No. 95. This includes Mr. Janklow and Ms. Regnier's statements about Ms. Clifford's performance (or lack thereof) relating to her obligations under the publishing agreement Mr. Avenatti negotiated and her other dealings with Mr. Avenatti as his client.

It simply strains all credulity for the government to claim that it does not possess <u>any</u> information or witness statements made by or about Ms. Clifford that would qualify as <u>Brady</u>. Since at least early 2019, when Mr. Avenatti terminated his representation of Ms. Clifford by letter (<u>see</u> Ex. G to Motion), and continuing to the present, Ms. Clifford has made any number of bizarre, fantastical claims that call into serious question her truthfulness, mental state, and ability to

6

competently testify.  Among many other things, Ms. Clifford has claimed:  (1) she "sees dead people" and can communicate with them; (2) she recently helped someone locate a body through her physic powers; (3) in early 2019, she became obsessed by spirits after moving into a "haunted house" in New Orleans; (4) the spirit that came to live inside of her caused her to physically cut on her own body in an apparent effort to harm herself; (5) the same spirit caused her to bleed profusely from the mouth, eyes and ears, but she did not seek any medical attention; (6) the house caused her then manager and live-in boyfriend, also an important witness in this case because he was privy to communications concerning the book deal, to become obsessed and physically attack Ms. Clifford and attempt to strangle her to death after his eyes turned entirely black; (7) she can turn lights on and off through her thoughts alone; (8) she can see inside structures like homes and apartments without ever setting foot inside; (9) her "energy" causes electronic devices to no longer work and the information on those devices to be deleted; (10) she is a "witch" who practices witchcraft and can rid people of spirits (a "service" for which she charges); and (11) she possesses supernatural powers that allow her to serve as a "medium" to the dead and conduct "paranormal investigations."  Ms. Clifford has consistently made these various claims during numerous audio and video interviews and on social media.[2]

In addition, since the filing of defendant's pre-trial motions, Ms. Clifford has accused the FBI of manipulating her criminal records in order to make her unemployable and to retaliate against her for going public about former President Trump's hush money payment.  In particular, on CNN's program "New Day" on June 7, 2021, Ms. Clifford accused the FBI of falsifying and planting 17 criminal charges on her criminal history.[3]  The defense has asked the government to provide

---

[2] See, e.g., G Crew Episode 33, available at: https://m.youtube.com/watch?v=gesklupndgU; BREWtally Speaking, available at: https://m.youtube.com/watch?v=VlR_19C63OM; That Witch Life (recording and transcript), available at: https://thatwitchlife.com/2021/03/08/episode-75-investigating-the-paranormal-with-stormy-daniels/.
[3] See Transcript, available at: http://www.cnn.com/TRANSCRIPTS/2106/07/nday.06.html.

information concerning this accusation, including all information demonstrating its falsity, but the government has not offered a meaningful response.

To be sure, the government is required to disclose all evidence that bears on the credibility of its complaining witness, including evidence of poor mental and emotional health that may be provable on cross-examination. See United States v. Pryce, 938 F.2d 1343, 1345-46 (D.C. Cir. 1991). The government must also reveal psychiatric and medication evidence raising questions about a witness's biases and the reliability of his or her testimony. See Fuentes v. Griffin, 829 F.3d 233, 247-48 (2d Cir. 2016); see also Brady. And the government must disclose its witness's mental health history. See Fuentes, 829 F.3d at 248; Browning v. Trammell, 717 F.3d 1092, 1105-06 (10th Cir. 2013). Indeed, a witness's credibility may always be attacked by showing that her capacity to observe, remember or narrate is impaired. As stated by the Second Circuit in Fuentes: "Based on clearly established fundamental rights and principles, we think it indisputable that if the prosecution has a witness's psychiatric records that are favorable to the accused because they provide material for impeachment, those records fall within the Brady principles, and that the Supreme Court has so recognized." 829 F.3d at 247.

In addition, evidence that impeaches a witness's ability to recollect or perceive events is also always relevant and must be produced. See Benn v. Lambert, 283 F.3d 1040, 1056 (9th Cir. 2002); United States v. Moore, 923 F.2d 910, 913 (1st Cir. 1991). And in this case, all evidence available to the government suggesting Ms. Clifford has fabricated claims of criminal conduct against anyone other than Mr. Avenatti is plainly Brady. Despite each of these well-established legal principles, however, the government has produced none of this information. It should be required to comply with its obligations and produce it now.

## IV. Conclusion

For the foregoing reasons, and for any that are apparent at any evidentiary hearing or oral

argument, the Court should grant the defense's motions to preclude, suppress, and compel evidence.

Dated: June 18, 2021
New York, NY

Respectfully Submitted,

/s/_____
Robert M. Baum, Esq.
Andrew J. Dalack, Esq.
Tamara L. Giwa, Esq.
Assistant Federal Defenders

Counsel for Michael Avenatti

# EXHIBIT 9

## LIMITED WAIVER OF ATTORNEY-CLIENT PRIVILEGE
## AND CONSENT TO SEARCH BY ▓▓▓▓▓▓▓▓▓▓▓

I, ▓▓▓▓▓▓▓▓▓▓, hereby agree and state as follows:

1.      In or about 2012, I entered into an Attorney-Client Fee Contract (the "Agreement") with Eagan Avenatti LLP ("EA LLP") on behalf of myself. Under the terms of the Agreement, EA LLP was to represent me in connection with personal injury claims, among others, against the County of Los Angeles.

2.      Subject to the limitations set forth in paragraphs 3 and 4 below, I agree to waive any claims of the attorney-client privilege or attorney-work-product doctrine relating to any legal advice I sought or received from EA LLP and/or any of EA LLP's current or former officers, directors, employees, or agents, including, but not limited, to Michael J. Avenatti, Judy Regnier, Scott Sims, and Carlos Colorado, concerning ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3.      This waiver of the attorney-client privilege does not apply to any attorney-client privileged documents or communications between me and any other attorneys acting on my behalf, including, but not limited to, Greenberg Gross LLP and Joshua M. Robbins.

4.      This waiver of the attorney-client privilege is limited to the United States government and its employees and agents, for any purpose related to the official performance of their duties, and does not extend to any other individual, entity or third party.

5.      I further authorize any former or current officer, directors, employees, or agents of EA LLP to disclose to the United States government all materials, written or oral, relating to any attorney-client privileged communications covered by the limited attorney-client privilege waiver set forth in paragraph 2 above.

6.      I further consent to the United States government searching any documents or materials relating to EA LLP's representation of me currently in possession of EA LLP and/or any of EA LLP's current or former employees and agents, including, but not limited, to Michael J. Avenatti, Judy Regnier, Scott Sims, and Carlos Colorado.

1

**EXHIBIT 7**
**Page 1 of 10**

USAO_00134884

7.     I have read this Limited Waiver of the Attorney-Client Privilege and Consent to Search carefully. I have discussed this Limited Waiver of the Attorney-Client Privilege and Consent to Search with my lawyer and fully understand the consequences of waiving the attorney-client privilege and attorney-work-product doctrine. No one has threatened or forced me to execute this Limited Waiver of the Attorney-Client Privilege and Consent to Search. I do so knowingly and voluntarily.



4/4/19
Date

I am ▓▓▓▓▓▓▓▓'s attorney. I have carefully and thoroughly discussed every part of this Limited Waiver of the Attorney-Client Privilege and Consent to Search with my client. Further, I have fully advised my client of his rights and the consequences of waiving any attorney-client privilege or attorney-work-product protections. To the best of my knowledge, my client's decision to waive the attorney-client privilege and attorney-work product protections is an informed and voluntary one.

April 5, 2019

_____            Date
JOSHUA M. ROBBINS
GREENBERG GROSS LLP
Attorneys for ▓▓▓▓▓▓▓▓▓▓▓

2

**EXHIBIT 7**
**Page 2 of 10**

USAO_00134885

## LIMITED WAIVER OF ATTORNEY-CLIENT PRIVILEGE
## AND CONSENT TO SEARCH BY ▮▮▮▮▮▮▮

I, ▮▮▮▮▮▮▮▮ hereby agree and state as follows:

1. In or about December 2016, I entered into an Attorney-Client Fee Contract (the "Agreement") with Eagan Avenatti LLP ("EA LLP") on behalf of myself. Under the terms of the Agreement, EA LLP was to represent me in connection with claims relating to an individual that I had a prior relationship.

2. Subject to the limitations set forth in paragraphs 3 and 4 below, I agree to waive any claims of the attorney-client privilege or attorney-work-product doctrine relating to any legal advice I sought or received from EA LLP and/or any of EA LLP's current or former officers, directors, employees, or agents, including, but not limited, to Michael J. Avenatti or Judy Regnier.

3. This waiver of the attorney-client privilege does not apply to any attorney-client privileged documents or communications between me and any other attorneys acting on my behalf.

4. This waiver of the attorney-client privilege is limited to the United States government and its employees and agents, for any purpose related to the official performance of their duties, and does not extend to any other individual, entity or third party.

5. I further authorize any former or current officer, directors, employees, or agents of EA LLP to disclose to the United States government all materials, written or oral, relating to any attorney-client privileged communications covered by the limited attorney-client privilege waiver set forth in paragraph 2 above.

6. I further consent to the United States government searching any documents or materials relating to EA LLP's representation of me currently in possession of EA LLP and/or any of EA LLP's current or former employees and agents, including, but not limited, to Michael J. Avenatti or Judy Regnier.

1

**EXHIBIT 7**
**Page 3 of 10**

7.      I have read this Limited Waiver of the Attorney-Client Privilege and Consent to Search carefully.  I have discussed this Limited Waiver of the Attorney-Client Privilege and Consent to Search with my lawyer and fully understand the consequences of waiving the attorney-client privilege and attorney-work-product doctrine.  No one has threatened or forced me to execute this Limited Waiver of the Attorney-Client Privilege and Consent to Search.  I do so knowingly and voluntarily.

4/8/2019

_____            _____
                                                                  Date

I am ▮▮▮▮▮▮▮▮'s attorney.  I have carefully and thoroughly discussed every part of this Limited Waiver of the Attorney-Client Privilege and Consent to Search with my client.  Further, I have fully advised my client of her rights and the consequences of waiving any attorney-client privilege or attorney-work-product protections.  To the best of my knowledge, my client's decision to waive the attorney-client privilege and attorney-work product protections is an informed and voluntary one.

_____            _____
DAVID GAMMILL                                    Date
Attorney for ▮▮▮▮▮▮▮

4/10/2019

2

**EXHIBIT 7**
**Page 4 of 10**

USAO_00134888

## LIMITED WAIVER OF ATTORNEY-CLIENT PRIVILEGE
## AND CONSENT TO SEARCH BY █████████████

I, █████████████, hereby agree and state as follows:

1.      On or about July 2, 2014, I entered into an Attorney-Client Fee Contract (the

"Agreement") with Eagan Avenatti LLP ("EA LLP") on behalf of myself and my company,██████

████████████████████.  Under the terms of the Agreement, EA LLP was to represent

me and my company in connection with claims relating to my intellectual property rights in

hardscape underlayment technology.

2.      Subject to the limitations set forth in paragraphs 3and 4 below, I agree to waive

any claims of the attorney-client privilege or attorney-work-product doctrine relating to any legal

advice I and/or my company, █████████ sought or received from EA LLP and/or any of EA

LLP's current or former officers, directors, employees, or agents, including, but not limited, to

Michael J. Avenatti, Judy Regnier, John Adren, and Ahmed Ibrahim.

3.      This waiver of the attorney-client privilege does not apply to any attorney-client

privileged documents or communications between me or█████████and any other attorneys

acting on my behalf, including, but not limited to, Larson O'Brien LLP, Stephen G. Larson,

Steven E. Bledsoe, and R.C. Harlan.

4.      This waiver of the attorney-client privilege is limited to the United States

government and its employees and agents, for any purpose related to the official performance of

their duties, and does not extend to any other individual, entity or third party.

5.      I further authorize any former or current officer, directors, employees, or agents

of EA LLP to disclose to the United States government all materials, written or oral, relating to

any attorney-client privileged communications covered by the limited attorney-client privilege

waiver set forth in paragraph 2 above.

6.      I further consent to the United States government searching any documents or

materials relating to EA LLP's representation of me and █████████currently in possession of

1



**EXHIBIT 7**
**Page 5 of 10**

USAO_00134890

EA LLP and/or any of EA LLP's current or former employees and agents, including, but not limited, to Michael J. Avenatti, Judy Regnier, John Adren, and Ahmed Ibrahim.

7.      I have read this Limited Waiver of the Attorney-Client Privilege and Consent to Search carefully. I have discussed this Limited Waiver of the Attorney-Client Privilege and Consent to Search with my lawyer and fully understand the consequences of waiving the attorney-client privilege and attorney-work-product doctrine. No one has threatened or forced me to execute this Limited Waiver of the Attorney-Client Privilege and Consent to Search. I do so knowingly and voluntarily.

_____      3-18-19
                                     Date

I am _____ 's attorney. I have carefully and thoroughly discussed every part of this Limited Waiver of the Attorney-Client Privilege and Consent to Search with my client. Further, I have fully advised my client of his rights and the consequences of waiving any attorney-client privilege or attorney-work-product protections. To the best of my knowledge, my client's decision to waive the attorney-client privilege and attorney-work product protections is an informed and voluntary one.

_____      3/18/19
STEVEN E. BLEDSOE                    Date
R.C. HARLAN
Larson O'Brien LLP
Attorneys for _____

2

**EXHIBIT 7**
**Page 6 of 10**

USAO_00134891

<u>LIMITED WAIVER OF ATTORNEY-CLIENT PRIVILEGE</u>
<u>AND CONSENT TO SEARCH BY ▨▨▨▨▨▨</u>

I, ▨▨▨▨▨▨▨ hereby agree and state as follows:

1.        On or about August 15, 2017, I entered into an Attorney-Client Fee Contract (the "Agreement") with Michael Avenatti, Esq. ("AVENATTI") and/or Eagan Avenatti LLP ("EA LLP"). Under the terms of the Agreement, AVENATTI and/or EA LLP were to represent me and ▨▨▨▨▨ in connection with our divestiture and exit from ▨▨▨▨▨▨▨▨▨▨▨▨ ▨▨▨▨▨▨▨.

2.        Subject to the limitations set forth in paragraphs 3 and 4 below, I agree to waive any claims of the attorney-client privilege or attorney-work-product doctrine relating to any legal advice or services that I sought or received from AVENATTI, EA LLP, Filippo Marchino ("MARCHINO"), any of EA LLP's current or former officers, directors, employees, or agents, and/or any current or former employees or agents of AVENATTI.

3.        This waiver of the attorney-client privilege does not apply to any attorney-client privileged or attorney-work product documents or communications between me and any other attorneys acting on my behalf, including, but not limited to, Orrick Herrington & Sutcliffe LLP, Walter Brown, William Molinski, or any attorney-client privileged or attorney-work product documents arising out of any such separate representation.

4.        This waiver of the attorney-client privilege is limited to the United States government and its employees and agents, for any purpose related to the official performance of their duties, and does not extend to any other individual, entity or third party.

5.        I further authorize AVENATTI, EA LLP, MARCHINO, any current or former officers, directors, employees, or agents of EA LLP, and/or any current or former employees or agents of AVENATTI to disclose to the United States government all materials, written or oral, relating to any attorney-client privileged communications covered by the limited attorney-client privilege waiver set forth in paragraph 2 above.

**EXHIBIT 7**
**Page 7 of 10**

USAO_00134893

6. I further consent to the United States government searching any documents or materials relating to AVENATTI's and/or EA LLP's representation of me currently in possession of AVENATTI, EA LLP, MARCHINO, any of EA LLP's current or former officers, directors, employees, or agents, and/or any current or former employees or agents of AVENATTI.

7. I have read this Limited Waiver of the Attorney-Client Privilege and Consent to Search carefully. I have discussed this Limited Waiver of the Attorney-Client Privilege and Consent to Search with my lawyer and fully understand the consequences of waiving the attorney-client privilege and attorney-work-product doctrine. No one has threatened or forced me to execute this Limited Waiver of the Attorney-Client Privilege and Consent to Search. I do so knowingly and voluntarily.

04-04-2019

Date

I am                          s attorney. I have carefully and thoroughly discussed every part of this Limited Waiver of the Attorney-Client Privilege and Consent to Search with my client. Further, I have fully advised my client of her rights and the consequences of waiving any attorney-client privilege or attorney-work-product protections. To the best of my knowledge, my client's decision to waive the attorney-client privilege and attorney-work product protections is an informed and voluntary one.

4·4·19

Date

WALTER BROWN
WILLIAM MOLINSKI
Orrick Herrington & Sutcliffe LLP
Attorneys for

**EXHIBIT 7**
**Page 8 of 10**

USAO_00134894

Case 8:19-cr-00061-JVS *SEALED* Document 507 Filed 06/21/21 Page 33 of 34 Page ID #:955
Case 8:19-mj-00419-DUTY *SEALED* Document 4-2 *SEALED* Filed 05/24/19 Page 2 of 3
Page ID #:955

<u>LIMITED WAIVER OF ATTORNEY-CLIENT PRIVILEGE</u>
<u>AND CONSENT TO SEARCH BY ▓▓▓▓▓▓</u>

I, ▓▓▓▓▓▓ hereby agree and state as follows:

1.      On or about August 15, 2017, I entered into an Attorney-Client Fee Contract (the "Agreement") with Michael Avenatti, Esq. ("AVENATTI") and/or Eagan Avenatti LLP ("EA LLP"). Under the terms of the Agreement, AVENATTI and/or EA LLP were to represent me and ▓▓▓▓▓▓ in connection with our divestiture and exit from ▓▓▓▓▓▓ ▓▓▓▓▓▓

2.      Subject to the limitations set forth in paragraphs 3 and 4 below, I agree to waive any claims of the attorney-client privilege or attorney-work-product doctrine relating to any legal advice or services that I sought or received from AVENATTI, EA LLP, Filippo Marchino ("MARCHINO"), any of EA LLP's current or former officers, directors, employees, or agents, and/or any current or former employees or agents of AVENATTI.

3.      This waiver of the attorney-client privilege does not apply to any attorney-client privileged or attorney-work product documents or communications between me and any other attorneys acting on my behalf, including, but not limited to, Orrick Herrington & Sutcliffe LLP, Walter Brown, William Molinski, or any attorney-client privileged or attorney-work product documents arising out of any such separate representation.

4.      This waiver of the attorney-client privilege is limited to the United States government and its employees and agents, for any purpose related to the official performance of their duties, and does not extend to any other individual, entity or third party.

5.      I further authorize AVENATTI, EA LLP, MARCHINO, any current or former officers, directors, employees, or agents of EA LLP, and/or any current or former employees or agents of AVENATTI to disclose to the United States government all materials, written or oral, relating to any attorney-client privileged communications covered by the limited attorney-client privilege waiver set forth in paragraph 2 above.

1

**EXHIBIT 7**
**Page 9 of 10**

Case 8:19-cr-00061-JVS *SEALED* Document 507 Filed 06/25/21 Page 34 of 34 Page ID #:9016
Case 8:19-mj-00419-DUTY *SEALED* Document 4-7 *SEALED* Filed 05/24/19 Page 9 of 3
Page ID #:956

6.      I further consent to the United States government searching any documents or materials relating to AVENATTI's and/or EA LLP's representation of me currently in possession of AVENATTI, EA LLP, MARCHINO, any of EA LLP's current or former officers, directors, employees, or agents, and/or any current or former employees or agents of AVENATTI.

7.      I have read this Limited Waiver of the Attorney-Client Privilege and Consent to Search carefully. I have discussed this Limited Waiver of the Attorney-Client Privilege and Consent to Search with my lawyer and fully understand the consequences of waiving the attorney-client privilege and attorney-work-product doctrine. No one has threatened or forced me to execute this Limited Waiver of the Attorney-Client Privilege and Consent to Search. I do so knowingly and voluntarily.

_____                    _4/4/19_____
                                                   Date

I am ▮▮▮▮▮▮▮▮'s attorney. I have carefully and thoroughly discussed every part of this Limited Waiver of the Attorney-Client Privilege and Consent to Search with my client. Further, I have fully advised my client of his rights and the consequences of waiving any attorney-client privilege or attorney-work-product protections. To the best of my knowledge, my client's decision to waive the attorney-client privilege and attorney-work product protections is an informed and voluntary one.

_____                    _4.4.19_____
WALTER BROWN                                       Date
WILLIAM MOLINSKI
Orrick Herrington & Sutcliffe LLP
Attorneys for ▮▮▮▮▮▮▮

2

**EXHIBIT 7**
**Page 10 of 10**

USAO_00134896