H. Dean Steward, SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
Tel (949) 481-4900
Fax (949) 497-6753

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | DEFENDANT'S STATUS REPORT |
| v. | Hearing Date: June 28, 2021<br>Hearing Time: 8:00 a.m.<br>Location: Courtroom of the Hon. James V. Selna |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

In advance of the final pretrial conference scheduled for June 28, 2021, defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this Status Report in order to bring to the Court's attention a number of issues impacting the trial and scheduling in this matter.

Dated: June 25, 2021          Respectfully submitted,

                                     /s/ H. Dean Steward
                                       H. DEAN STEWARD

                                     Attorney for Defendant
                                     MICHAEL JOHN AVENATTI

## I.   ISSUES RAISED BY THE DEFENSE

### A.   <u>The Sentencing in New York and the Impact on the Trial Schedule.</u>

Yesterday (June 24), the Court in the Nike-related criminal case in the Southern District of New York moved Mr. Avenatti's sentencing hearing in that matter from June 30, 2021 to July 9, 2021 [19 Cr. 373 (PGG), Dkt. 326].  The hearing date was moved as a result of the government first informing the defense in that case, on June 16, of a $1 million restitution demand that was never previously raised by the government, referenced in the Pre-Sentence Report (submitted one year prior), or supported with any documentation.  [19 Cr. 373 (PGG), Dkt. 324.][1]

The July 9 date is only four days before oral *voir dire* is scheduled to begin in this case (on July 13) and is contemporaneous with the time this Court had indicated that it planned to distribute the written questionnaires to the venir as part of *voir dire*.  Further, Mr. Avenatti is now expected to travel to New York on July 7, 2021 in order to meet with his counsel on July 8, 2021, the day before the sentencing.[2]  Mr. Avenatti will hopefully return on a commercial flight on either July 9 or July 10.

The sentencing in the Nike-related case requires that the trial schedule, including the beginning of oral *voir dire* scheduled for July 13, be changed.  <u>First</u>, the sentencing in the Nike case has already resulted in a significant amount of recent negative, national media coverage (including in the Central District), which will undoubtedly only increase on July 9 and in the days that immediately follow.  This coverage will make it virtually

---

[1] Mr. Avenatti's counsel in that case attempted to move the sentencing until after the trial in this case was concluded.  The government refused to agree and opposed the defense request.  The Court then set July 9 as the hearing date.

[2] Due to a scheduling conflict, the government requested late yesterday that the sentencing be moved again – from July 9 to July 8 [19 Cr. 373 (PGG), Dkt. 327].  If this request is granted, Mr. Avenatti will likely travel on July 6 to meet with his attorneys in New York on July 7, attend the sentencing on July 8 and return on July 9.  The defense expects to submit an ex parte application for an Order permitting Mr. Avenatti to travel to New York for his sentencing, subject to monitoring and conditions imposed by Pre Trial Services.

impossible for Mr. Avenatti's Constitutional rights, including his right to due process and his right to an impartial and unbiased jury, to be adequately protected in the week immediately following the sentencing.  *See*, *e.g.*, *Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966); *Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590, 596 (9th Cir. 1985) ("We have recognized that the *Sheppard* Court unequivocally imposed a duty upon trial courts to take affirmative steps to insure the fairness of a criminal proceeding in the face of excessive publicity. *Farr*, 522 F.2d at 468; *see also Hirschkop*, 594 F.2d at 366 n. 8 (noting that the language in *Sheppard* 'is more nearly directive than suggestive'").  As a result, the beginning of *voir dire* should be delayed at least 45 days in order to allow the negative press coverage and the prejudice to Mr. Avenatti to abate.

Second, having the written questionnaires completed *before* the Nike sentencing and the press coverage that will result from that sentencing makes little sense if the goal of the questionnaires is to determine exposure to media coverage about Mr. Avenatti and possible prejudice and bias.  If the venir submits their responses before the high-profile sentencing, it will severely diminish the usefulness and effectiveness of the questionnaire answers and render them stale before oral *voir dire* even begins.  The questionnaires should be completed underlined after the Nike sentencing and the resulting press coverage.

Third, Mr. Avenatti has a Constitutional right under the Fifth and Sixth Amendments to be present at all stages of the trial in this case, including all aspects of *voir dire* (which includes the distribution of the questionnaires and the venir's completion of the questionnaires).  *See, e.g., Cohen v. Senkowski,* 290 F.3d 485 (2d Cir. 2002); *see also* Fed. R. Crim. P. 43.  Mr. Avenatti has not waived that right nor is he expected to; Mr. Avenatti requests to be present at all stages of the trial, including jury selection.

Fourth, as a result of the sentencing, Mr. Avenatti will lose approximately three to four days of valuable trial preparation with his counsel in the week immediately before opening statements are scheduled to begin.  This is prejudicial to the defense.

For each of these reasons, the trial schedule should be adjusted.  This is especially true because any prejudice to the government that may result from a delay is minimal at most.

**B.**     **Covid-19 Precaution Concerns and Objections.**  The defense has a number of concerns and objections regarding various Covid-19 precautions that may be utilized at trial.  First, the defense requests that the entire venir be present in the courtroom during all aspects of *voir dire* and that they be seated, socially distanced and mask-less.  Further, the defense objects to any set of conditions that does not permit this. It is critical that the Court, the defendant and all counsel be able to see each potential juror's entire face for reactions, expressions and facial cues during all aspects of *voir dire*.

Second, during the trial, the defense requests that all trial jurors (including alternates) be mask-less, socially distanced and seated in a single field of vision. Further, the defense objects to any set of conditions that does not permit this.  The ability to evaluate all jurors in open court and their reaction to the evidence is critical to the defense function.

Third, the defense requests that counsel and the defendant have the option to wear or not wear masks during the trial, including while seated at counsel table.  The ability to speak is impaired and the voice of counsel is distorted when a mask is used.  In addition, masking the defendant raises a host of concerns as previously explained and detailed in the record [Dkt. 164]; those concerns and objections are incorporated herein by reference.  Further, the defense objects to any set of conditions that requires the use of masks by counsel or the defendant.

Finally, the defense objects to any use of a mask by any witness while testifying. It is of obvious importance that the Court, the jury, the defendant and counsel have the ability to gauge the truthfulness of the witness, including by seeing the witness's entire face, all facial expressions and cues, and reactions.

### C.   The Jencks Act, Rule 26.2 and the Lack of Disclosure.

The Court previously ordered the government to produce all materials required under the Jencks Act (18 U.S.C. § 3500) no later than June 14, 2021. [Dkt. 407].[3] The government has not complied with the Order.

The Jencks Act requires the government to produce all statements "which relate to the subject matter as to which the witness [will] testif[y]."  18 U.S.C. § 3500(b). Importantly, "the statement need relate only *generally* to the events and activities testified to by the witness to come within [the] sweep" of 18 U.S.C. § 3500.  *United States v. Bibbero*, 749 F.2d 581, 585 (9th Cir. 1984)(emphasis added).  "The act requires the government, upon the defendant's motion, to produce statements made by any of its witnesses which the particular witness *signed, adopted or approved*, and which pertain to their testimony at trial.  The hope is that these statements will afford the defense a basis for effective cross-examination of government witnesses and the possible impeachment of their testimony . . ."  *United States v. Kimoto*, 588 F.3d 464, 475 (7th Cir. 2009)(emphasis added)(citing *United States v. Johnson*, 200 F.3d 529, 534 (7th Cir. 2000)(internal citations omitted)."  *See also*, Fed.R.Crim.P. 26.2(f) (defining "statement" to include any "written statement that the witness makes and signs, *or otherwise adopts or approves*," as well as any substantially verbatim, contemporaneously recorded recital of the witness's oral statement)(emphasis added).

On June 10, 2021 and in an effort to avoid any issues with the government's production due on June 14, undersigned counsel wrote to the government regarding the upcoming Jencks deadline.  *See* Exhibit A.  The government responded with the statement, "[w]e will comply (as we have complied) with our discovery obligations imposed by the Court." without addressing the substance of the request.  *Id.*  On June 14,

---

[3] In order to avoid any later claim by the government that the Court's Order is unenforceable because it required production before trial, the defense will file, at the beginning of the trial, a Jencks Act and Rule 26.2 motion seeking an order requiring strict compliance with both the Act and the Rule.

the government produced limited 3500 materials (totaling less than 40 pages).  The government appears to believe that its prior Rule 16 productions, coupled with more recent productions, including a limited production received on June 23, 2021, satisfy their obligations under the Jencks Act.  They do not.  Further, the government is taking an extremely narrow view of what constitutes a "statement" that requires production - one that is not supported by the law.  <u>Under the law, all information signed, adopted or otherwise approved is required to be produced</u>.

The government produced its witness list to the defense on June 14, 2021 as required - the list includes 36 government witnesses.  As of this filing, the government has not produced any notes or summaries from any interview or contact with <u>at least 10 of those witnesses,</u> including RB, JD, JG, MH, SK, LM, ER, NT, AF, and HW.  Further, the government has not produced all of the Jencks materials for its witness IRS-CI Special Agent Nshan Tashchyan, who is believed to have been involved in the case for well over a year.  In addition, other than a single draft of certain Powerpoint slides evidently prepared by government expert John Drum, the government has produced no other "statements" from Mr. Drum or the government's other expert Ms. Susan Katzen – no notes of interviews or contacts, no emails, no letters, no contracts, no text messages, no other drafts of slides or presentations, no reports, and no invoices.  In addition, it is readily apparent that statements and notes from interviews of other government trial witnesses have not been produced, including but not limited to certain interviews of the alleged client victims identified in the indictment.

The defense is entitled to strict compliance with the Jencks Act and Rule 26.2 and requests that full compliance occur immediately so problems and delays during the trial may be avoided.  The defense also requests that the government be directed to produce the statements <u>organized by witness</u> as required by the Jencks Act and Rule 26.2.[4]  *See*,

---

[4] Pursuant to the Court's Criminal Trial Order Revised 8-17-17, the government is required to file with the Court in camera "<u>all</u> statements of <u>all</u> witnesses to be called by the government in its case-in-chief . . . at least five (5) calendar days before trial." *Id*. at

*e.g.*, 18 U.S.C. § 3500(b) ("After <u>a witness</u> called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of <u>the witness</u> . . ."); Rule 26.2(a) ("After <u>a witness</u> other than the defendant has testified on direct examination, the court, on motion of a party who did not call <u>the witness</u>, must order an attorney for the government or the defendant and the defendant's attorney to produce . . . any statement of <u>the witness</u> . . .").  The defense wishes to avoid disputes at trial and thereafter regarding whether all statements for any particular witness were produced as required and whether a particular document was produced as Jencks material; it is important for the record, all parties, and the Court, that there is a clear understanding of what statements were produced by the government pursuant to the Jencks Act and Rule 26.2 and when.

**D.**   <u>**Government Experts John Drum and Susan Katzen**</u>.  The defense has requested that the government provide a detailed listing of all evidence specifically relied on by the government's forensic expert John Mr. Drum in reaching his conclusions and opinions.  The government has not done so.  The defense is entitled to know the exact documents and data Mr. Drum relied on with specificity – the government merely stating "Quickbooks" for instance, without identifying the specific data or report in Quickbooks (which is a software program), is not sufficient.  It is akin to stating "file cabinet."  This information should be produced immediately so the defense can prepare for trial.  If required, the defense will file a Daubert motion, although the defense wishes to avoid having to do so.[5]

3, § 8 (emphasis in original).  Presumably, the Court expects the statements to be organized <u>by witness</u>.  As a result, there can be no prejudice to the government in having to produce to the defense the 3500 material organized by witness as requested and as required under the Jencks Act and Rule 26.2.

[5] In addition, to the extent the government's other expert, Ms. Susan Katzen, has relied on any data or information, this too should be disclosed promptly.

6

Further, the defense has requested that the government produce all billing statements and invoices relating to Mr. Drum's engagement, as well as that of government expert Susan Katzen.  These documents are required to be disclosed pursuant to the Jencks Act, *Brady*, *Price*, *Bundy* and *Giglio*.  None have been produced.

**E.     Brady Material**.  The government has not produced information and documents to the defense that constitute *Brady* material.  Included among the materials the government has not produced are handwritten notes containing statements from government witnesses favorable to the defense, as well as financial information relating to the accounting applicable to the client matters at issue in counts 1-10.

This information should have been produced long ago and the government cannot rely upon an alleged lack of materiality (in their eyes) to avoid production.  *See*, *e.g.*, *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020)(requiring all favorable evidence to be disclosed by prosecutors pretrial, without regard to materiality:  "[T]rial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial. . . . The retrospective definition of materiality is appropriate only in the context of appellate review" and not at the trial level.); *United States v. Price*, 566 F.3d 900 (9th Cir. 2009)(requiring prosecutors to produce all potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed as affecting the outcome of the trial); *United States. v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013)(explaining that a prosecutor should not produce only what he considers "material" because it is "just too difficult to analyze before trial" what may be material).  *See also* California RPC 3.8 (applicable to federal prosecutors pursuant to 28 U.S.C. § 530B(a) and requiring disclosure to the defense without regard to materiality); Justice Manual 9-5.001(B)(1) (requiring AUSAs to "err on the side of disclosing exculpatory and impeaching evidence.").  This information was also required to be produced pursuant to the Court's

Order issued on January 25, 2021 [Dkt. 408], as well as the Court's Criminal Trial Order Revised 8-17-17.

If these issues are not addressed in detail now, before trial, they will emerge in the middle of trial or immediately post-trial and create a host of problems (not to mention a possible mistrial).  The defense respectfully urges the Court to address and resolve these issues now as opposed to waiting.

**F.**     **Federal Rule of Evidence 609**.  The defense intends on introducing evidence of multiple criminal convictions that involve the government's witnesses. These offenses include fraud offenses (i.e. federal mail fraud) and recent felonies committed by at least one client identified in the indictment.  If the government opposes this effort, the defense will file the necessary motion.

**G.**     **The Mediation Privilege**.  Based on the government's witness list provided on June 14, it appears that the government intends to introduce testimony and evidence relating to communications and actions that occurred in connection with various mediations and/or during mediations.  If true, this is not permitted under the law and Mr. Avenatti objects to the admission of any and all such evidence.  *See*, *e.g.*, *Cassel v. Super Ct.*, 244 P.3d 1080 (Cal. 2011).   The mediation privilege in California is broad and well-established; it protects not only communications occurring at the mediation, but oral and written communications before and after the mediation as well.  It is also not limited to communications with a mediator.  In addition, it cannot be waived by a client in connection with any effort to hold an attorney accountable for an alleged breach of a duty to that client.

If the government intends on offering such evidence, the issue should be fully briefed for the Court well in advance of trial and certainly before any such evidence is referred to or used at trial.

**H.**     **The Work Product Doctrine**.  Based on the government's recently provided witness list, it appears that the government intends to offer testimony and

8

evidence protected from disclosure, review and use by the work product doctrine.  If this is accurate, Mr. Avenatti objects to the admission of any and all such evidence and requests that the issue be resolved well in advance of trial.[6]

**I.** **The Attorney-Client Privilege**.  Based on the government's witness list, it appears that the government intends to call three to five of Mr. Avenatti's own attorneys to testify at trial in the government's case in chief.  If true, the government should be required to provide a proffer well before trial so that any privilege objections and related issues can be addressed.  Mr. Avenatti has never waived his right as a client to assert the attorney-client privilege and objects to any testimony by any individual who previously represented him in a legal capacity.  It is important to note that the government has never sought, let alone obtained, any applicable finding from the Court relating to the crime-fraud exception to the attorney-client privilege.

**J.** **Mental Health Information and Defense Testifying Expert**.  The defense anticipates serving subpoenas seeking mental health and prescription records for one or more of the government's witnesses for review *in camera* by the Court, and possible subsequent production to the defense, prior to cross-examination.  *See, e.g., Doe v. Diamond*, 964 F.2d 1325 (2d Cir. 1992).

Further, the government is required to disclose all evidence that bears on the credibility of its witnesses, including evidence of poor mental and emotional health.  *See Brady*; *Giglio*.  *See also United States v. Pryce*, 938 F.2d 1343, 1345-46 (D.C. Cir. 1991).  The government must also reveal psychiatric and medication information relating to its witnesses, including but not limited to the alleged client victims identified in the indictment.  *See Fuentes v. Griffin*, 829 F.3d 233, 247-48 (2d Cir. 2016).  And the government must disclose its witnesses' mental health history.  *Id.* at 248; *Browning v.*

---

[6] It is unclear if the government has reviewed any information or documents covered by the work product doctrine.  If they have, this will obviously give rise to a critical issue that will require resolution before trial.

*Trammell*, 717 F.3d 1092, 1105-06 (10th Cir. 2013).  The reason for this is basic – because a witness's credibility may always be attacked by showing that her capacity to observe, remember or narrate is impaired.  As stated by the Second Circuit in *Fuentes*: "Based on clearly established fundamental rights and principles, we think it indisputable that if the prosecution has a witness's psychiatric records that are favorable to the accused because they provide material for impeachment, those records fall within the *Brady* principles, and that the Supreme Court has so recognized."  829 F.3d at 247.  In addition, evidence that impeaches a witness's ability to recollect or perceive events is also always relevant and must be produced.  *See Benn v. Lambert*, 283 F.3d 1040, 1056 (9th Cir. 2002); *United States v. Moore*, 923 F.2d 910, 913 (1st Cir. 1991).  Despite each of these well-established legal principles, however, all of this information has not been produced.  It must be produced promptly so the defense can adequately prepare for trial.

Additionally, the defense is in the process of attempting to retain a mental health expert to testify as to relevant mental health issues concerning one or more of the government's witnesses.

Dated: June 25, 2021                    Respectfully submitted,

/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**<u>EXHIBIT A</u>**

27
28

From: **Sagel, Brett (USACAC)** <Brett.Sagel@usdoj.gov>
Date: Fri, Jun 11, 2021, 5:42 PM
Subject: RE: Monday
To: Dean Steward <deansteward7777@gmail.com>, Wyman, Alex (USACAC) <Alex.Wyman@usdoj.gov>

Dean-

We will comply (as we have complied) with our discovery obligations and the obligations imposed by the Court.

Brett

---

**From:** Dean Steward <deansteward7777@gmail.com>
**Sent:** Thursday, June 10, 2021 2:58 PM
**To:** Wyman, Alex (USACAC) <AWyman@usa.doj.gov>; Sagel, Brett (USACAC) <BSagel@usa.doj.gov>
**Subject:** Monday

Brett and Alex:

I want to make sure we avoid any problems next week relating to the government's disclosures. On Monday, we expect to receive from the government, organized by witness, all materials required to be produced pursuant to Jencks and/or Rule 26.2.  This should include all handwritten notes (including but not limited to those for Ms. Regnier, Mr. Johnson and each of the other clients), text messages, emails, voicemails, typewritten reports, etc.  All materials must be produced and grouped by witness on Monday so that there can be no dispute later as to whether something was produced as Jencks and/or under Rule 26.2 for a particular witness.

Further, just so you are aware, we intend to file a formal Jencks and Rule 26.2 motion on the first day of trial.  We also expect to place on the record during the trial a specific list of all such materials provided by the government for each witness.

Thanks.

Dean

--



949-481-4900   www.deansteward.com

## <u>**CERTIFICATE OF SERVICE**</u>

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.  I am not a party to the above-entitled action.  I have caused, on June 25, 2021, service of the defendant's:

STATUS REPORT

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 25, 2021

<u>/s/ H. Dean Steward</u>

H. Dean Steward

12