H. Dean Steward SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
949-481-4900
Fax: (949) 496-6753

Attorney for Defendant
MICHAEL J. AVENATTI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES, | Case No. SA-CR-19-61-JVS |
|---|---|
| Plaintiff, | REDACTED EXHIBITS "A" AND "B" FROM IN LIMINE MOTIONS AND STATUS CONFERENCE 6-28-21 |
| vs. | |
| MICHAEL J. AVENATTI | |
| Defendant. | |

Comes now counsel for defendant and submits the attached exhibits that we discussed in open court on 6-28-21. They have been redacted pursuant to local rules.

Dated: 6-29-21        /s./ H. Dean Steward

　　　　　　　　　　　　H. Dean Steward
　　　　　　　　　　　　Counsel for Defendant
　　　　　　　　　　　　Michael J. Avenatti

# Exhibit A



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

### REDACTED **andum of Interview**

| | | |
|---|---|---|
| **Investigation #:** | | **Location:** REDACTED |
| **Investigation Name:** | MICHAEL AVENATTI | |
| **Date:** | March 31, 2019 | |
| **Time:** | Approx: 1:44PM - 3:08PM | |
| **Participant(s):** | G REDACTED ss | |
| | Jc— y | |
| | Jt REDACTED Jnited States Attorney | |
| | Jan | |
| | Ger— gent | |

On the above date and time, Assistant United States Attorney Julian Andre (AUSA Andre) of the United States Attorney's Office and Special Agents James Kim (SA Kim) and Gerry Carmona of Internal Revenue Service Criminal Investigation (IRS-CI) REDACTED with REDACTED n) and his attorney Joshua REDACTED SA / nd introduced the agents as REDACTED ew was to obtain information REDACTED CHAEL AVENATTI (AVENATTI). The interview was conducted at Johnson's residence. REDACTED wheelchair during the interview. The following is a summary of the p— information provided by REDACTED

1. Johnson confirmed that EAGAN AVENATTI, LLP (EA) represented him in a lawsuit against the County of Los Angeles. When REDACTED a public defende REDACTED Ruth Ann John_ Chicago, recomr et a private at of an attorney through s parents, Phil _ _ Ruth helped Johnso hnson's attorney.

2. AVENATTI hired Richard Beada (Beada) for _ . AVENATTI t the criminal case was REDACTED oceed with a REDACTED s able to get the crimir. criminal er being released from REDACTED ed to CareMeridian, _ te care rehabilitation ce VENATTI and Beada telling 1a.. was at CareMeridi REDACTED - REDACTED

REDACTED aiu .. il lawsuit. AVENATTI di..... g.... —with— REDACTED called AVENATTI asking questions

Memorandum   Page 1 of 7                                    U.S. Treasury Criminal Investigation

USAO_00133556

on what happened.

4. REDACTED ...ning an engagement letter or contract with AVENATTI. ...contract was signed... REDACTED ...possible that... ...ay have signed a c... ...er discussed with ...hat percentage would go to A... suit was successful.

5. REDACTED ...conduct was in late 2010/early 2011. The initial civil lawsuit

6. ...with attorney Carlos Colorado (Colorado). Colorado was assigned t... ...y Scott Sims did the deposition on... REDACTED ...al speak with AVENATTI. During the years 20.2-2015, ...versation with J... ...) regarding h... when he started... ...g...er.

REDACTED

7. AUSA Andre presented a letter dated January 22, 2015, attachment 1, for... to review. ...ved the last page of the document which contained his signature. ...d that his signature looked funny to him. The "G" and "E" in his signature looked funny. ...tated that he may have signed the document but his signature looks funny.

8. AVENATTI went to Sunrise of West Hills (Sunrise) to deliver this document to REDACTED ...d at Sunrise for two to three years. ...ATTI came to Sunrise by himself to visi... . AVENATTI told ... he was pleased and hoped ... ...sed too. AVENATTI informed ... a settlement had been reached. AVENATTI may have told John... after fees and expenses but never told ... the settlement was for $4 million.

9. AVENATTI told Johnson that he would receive $46,000 a quarter for 10 years. AVENATTI told ... that the County of Los Angeles does not pay settlements in lump-sum and would only pay the settlement in quarterly payments over a certain period.

10. ... was never presented with the full settlement agreemen... ...n never saw a $4 million settlement amount.

11. AVENATTI told ... that the settlement had to be a secret and confidential. ... still mentioned to his parents that he was receiving a settlement of about $2 million.

12. AUSA Andre presented a County of Los Angeles Check, dated January 26, 2015 in the amount of $4,000,... Check Number TS 0021400949, attachment 2, to ... on for review ... on stated that AVENATTI never told him that Eagan Avenatti, LLP received $4 million from the County of Los Angeles. ... stated had he known that EA received the $4 million in lump-sum,

_____ would have put the money in a Special Needs Trust. _____ would definitely want his settlement in one lump _____ ayment. AVENATTI told _____ that the settlement would be tax-free to J_____ AVENATTI never told Johnson when the quarterly $46,000 payments would start. _____ was unclear on when these payments would start.

14. Johnson told AVENATTI that _____ was advised by people to create a Special Needs Trust so _____ did not lose his SSI and Medi-Cal. AVENATTI informed _____ he _____ uld create a Special Needs Trust for _____. AVENATTI to _____ he has created Special Needs Trust for other clients.

15. _____ was told the settlement was not finalized but during this time, AVENATTI would advance _____ money against his settlement _____ recalled AVENATTI stating it was an advance.

16. AUSA Andre presented a spreadsheet titled, Payments to G_____n, attachment 3 _____ or review _____ tated that his last payment was on March 18, 2019 while _____ son wa_____

1_____ _____ on told AVENATTI to send checks in the amount of $1,900. _____ in stated there is a SSI rule which a recipient cannot have checks more than $2K in their bank account.

_____ is currently not receiving SSI _____ received a document that informed him that his SSI payments would be stopped. AVENATTI told J_____ that it was a mistake and that he would take care of it. This conversation with AVENATTI happened in the last three months.

_____ never authorized AVENATTI to use any of the settlement money for _____ VENATTI's personal purpose or own business purpose. AVENATTI never told _____ on that the settlement money would be used for AVENATTI's personal use.

20. AVENATTI did not t_____ _____ at interest may be charged for the advances made to J_____ n. _____ on would have said no way to being charged interest. _____ would not pay interest on money owed to him.

2_____ _____ on was planning to purchase a house a couple years ago _____ told AVENATTI that he wanted to buy a house. AVENATTI told _____ that buying a house would be a good investment and a good move. _____ started looking for a house and went into escrow on a property in Canoga Park, near Parthenia Street and Topanga Canyon Boulevard.

22. During the purchase, AVENATTI told Johnson there was a problem with Special Needs Trust. The County of Los Angeles still had to approve the Special Needs Trust. AVENATTI told _____ n that he had a meeting with the County of Los Angeles but this story went on _____ and on and the deal on the house died. AVENATTI told Johnson they would give the seller more money to revive the house purchase.

23. AVENATTI wanted to deal with him and not the broker going to buy the house. Johnson trusted AVENATTI implicitly. trusted AVENATTI with everything. AVENATTI was involved with any big decisions involving.

24. Tons was the real estate broker for the house purchase. AVENATTI found to represent as his real estate broker.

25. on told a lot of people about his intent to purchase a house. recalled telling his sister and others that he was in escrow and was going to get a house soon.

26. AVENATTI told n that the Special Needs Trust still needed to be approved and the County of Los Angeles was not doing it.

27. About a month ago learned from AVENATTI that the County of Los Angeles was not paying his settlement. Johnson had a telephone conversation with AVENATTI and AVENATTI told that the County of Los Angeles had not started making J asked AVENATTI what's the deal and AVENATTI told he Special Needs Trust was not approved.

REDACT REDACTED

28. On Friday, March 22, 2018, AVENATTI called n that he was in the neighborhood and wanted to stop. Johnson that the Special Needs Trust was all good. AVENATTI asked hat type of payment plan son wanted. AVENATTI asked J n if he wanted a 20 year payment plan. referred a 15 year payment plan. A 10 year plan would be too short for ED.

29. This meeting happened at anada Hills home. J n was in his v elchair on the ramp while AVENATTI was standing near ail of the ramp. n's friend, ley ), saw AVENATTI when he came back the next day.

30. AVENATTI came back to 's house on Saturday with documents. AVENATTI told n that the Special Needs Trust is done and he can start getting his money. texted AVENATTI and told him he would be available on Saturday between 1:00pm and 5:30pm. This meeting happened on Saturday around 1:00pm to 1:30pm.

31. AVENATTI came to the house with one document. AVENATTI pointed out the highlights of the document to n. AVENATTI told that he could not discuss the matter with anyone he would lose his money. ecalled AVENATTI mentioning that would not be able to sue the County of Los Angeles for any past actions y future actions would be okay. The document also had language which said that AVENATTI represented y and did a good job. REDACTED

Memorandum Page 4 of 7 U.S. Treasury Criminal Investigation

USAO_00133559

32. stated that he did not read the document. AVENATTI ha~~~~ ~~~
the document. AVENATTI had the document open on the specific page to sign.
AVENATTI did not have ~~~~ n date the document. ~~~~~~~ at there
was no line for the date. — REDACTED

33. ~n did not see language regarding the payments in the document. ~~~
trusted AVENATTI. AVENATTI t~~~~~~~~~~~~~~~~ ,n signed the
document he would get his mone~ REDACTED a copy of the document
but AVENATTI told ~~~ hat Regnier would send him a copy.

~~ 's ~~~~ l health issues have no impact on his memory.— REDACTED
is good. ~ ~~ .1 was not diagnosed with any memory issues and does not take
medication for memory issues. ~~~~~ physical issues were a result of his time
in jail.

35. AVENATTI never tol~ REDACTED ~as dismissed. ~~~~~ believed the
civil case was active until the day Johnson received his settlement. The only thing
pending was the County of Los Angeles had not settled the money.

~~~~ communicated wi~ ~~~~~~~~~~ ext, and phone calls. ~~
stopped taking ~~~'s ~~~~~ REDACTED ~~~ths ag~ ~~~~~~~ . 10 e-
mails with EA. Regni~~ ~ld rarely respond back to~ REDACTED Most
responses were short, such as thanks and will do.

REDACTED —ould communicate with AVENATTI by phone and sometimes by text.

38. ~ provided the name and phone numbers for his father, m~
P~ ~~~~~~~~ (father) telephone number is ████████. REDACTED —
(mother) telephone number is ████████ elephone number is ███
████

~~~~~ would be willing to speak with the government. — REDACTED nd
who is autistic and is a touch paranoid. ~~~ s teleph~ ████

~ n confirmed the meetings with AVENATTI over last weekend. The Friday
meeting occurred around 5:30pm – 6:00pm. The Saturday meeting occurred
around 1:00pm. The Sunday meeting occurred around 12:00pm – 2:00pm.

41. During the Sunday meeting, AVENATTI wante~~~~~ n to initial the doc~~~ ~ts
which were pointed out to ~~~~~~ by AVENATTI. AVENA~~~~ ~~~~ at
Regnier would be mad at AVENATTI if he didn't get ~ REDACTED

~ n recalled signing 2 documents. One document was to pu~ REDACTED
on AVENATTI's website. AVENATTI wanted to show on his website what a great
job he did or ~~~~~~ e. The document also stated that AVENATTI did a
diligent job representing ~~ Inson.

43. The settlement document for $1.9M was discussed at the Saturday meeting. _____ sked AVENATTI if he got his share of the settlement. AVENATTI told _____ at AVENATTI's share was already factored in the $1.9M settlement document. AVENATTI's share was already deducted before the $1.9M.

44. AVENATTI may have said that after attorney fees and charges the settlement money to _____ would be $1.9M. AVENATTI never _____ about the $4M dollar am___ _____ n never heard about the $4M settle___. ___ he heard something in the ne_____ heard that a paraplegic with mental issues received a $4M set_____ ___.

45. AENATTI ask _____ 10 he wanted put as the beneficiary for the settlement. _____ ENATTI to put his nieces and nephews.

_____ ecalled AVENATTI asking _____ about his medication. _____ old AVENATTI that he was still taking medication and doing great on it. _____ TI asked what the medication was for _____ told Avenatti it was anti-psychotic medicine.

47. Kim (LNU), who lives in the east wing o_____, residence, may have saw AVENATTI during his visit to _____ on Sunday. Kim mentioned that she saw someone in a suit.

_____ n introduced _____ to Avenatti as a friend. AVENATTI had a driver that parked the car somewhere down the road. AVENATTI walked to the house. _____ n never saw the vehicle which AVENATTI arrived in.

49. _____ could not sense if AVENATTI was acting oddly.

50. _____ n told many people about the issues with the Special Needs Trust. _____ told Doug and Pa_____ vho knew him from Sunrise at West Hills. T_____ ell phone number is_____ on also told Bill _____ ,h) about the issues with the Special Needs Trust. P_____ s cell phone number is _____

51. Jo_____ _____ t his texts as far back as 2017. _____ had a flip phone prior to his current p_____ ne.

52 _____ n had text c_____ s with AVENATTI regarding his rent. AVENATTI was also paying for _____ rent. _____ ated that his rent went unpaid for six months. _____ it was $1,250 per _____ and $75 late fees were added during the si_____ _____ no payment. Johnson stated that getting money out AVENATTI a _____ was tough for the last six months.

53. On June 4, 2018, _____ s parents were at his house from 3PM – 4PM. _____ was supposed to have a meeting with AVENATTI but _____ eves AVENATTI didn't show up that day. AVENATTI was always held up in court. _____ on has not seen AVENATTI for a year prior to last Friday's meeting with AVE

provided his phone to SA Kim and allowed SA Kim to take photos of his text messages with AVENATTI and ░░░░er. The interview ended at approximately 3:08PM.

I prepared this memorandum after refreshing my memory from notes made during and immediately after the interview with Geoffrey ░░░░

Memorandum Author  *[signature]*
Gern░
Spe░

Witness  *[signature]*
Ja░
S░

USAO_00133562

# Exhibit B

# HURRELL CANTRALL LLP

900
121

January 22, 2015

**VIA U.S. MAIL**

Michael Avenatti, Esq.
EAGAN AVENATTI, LLP
450 Newport Center Drive, 2nd Floor
Newport Beach, CA 92660

\_\_\_, Esq.
IOLAS LLP
1400
Los Angeles, CA 00034

Re:	ason vs. Leroy Baca, et al.
	CV13-4496 MMM (AJWx)
	Our File No.: 281-120125-2,41,59

Dear Counselors:

Please find enclosed for your records a copy of the fully executed Settlement Agreement and Release of All Claims in the above-referenced matter. If you have any questions regarding the foregoing, please feel free to contact us.

Very truly yours,

HURRELL CANTRALL LLP

Enclosure

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Settlement Agreement And Release of All Claims ("Agreement") is entered into between the following parties (" REDACTED REDACTED intiff"), and Defendants County of L— —a as the Los Angeles County Sheriff's :ndants").

### RECITALS

Plaintiff filed a civil action against D— REDACTED REDACTED — et al., Los Angeles County Superior (

On or about June 21, 2013, Defendants removed the State Action to the United States District Court for the Central District of California with a Case Number of CV-13-4496 MMM (AJWx) (the "Lawsuit").

To avoid the time and expense of further litigation, the Parties desire to resolve their differences and reach an end, compromise, and settlement for all disputes existing and potentially existing between them from the incident giving rise to the Lawsuit.

### AGREEMENT

In consideration of the execution of this Agreement and the releases and promises made in the Agreement by the Parties, the Parties agree as follows:

In exchange for a complete resolution of the Lawsuit, Defendants, by and through the County of Los Angeles, shall pay to Plaintiff Four Million Dollars ($4,000,000.00) (the "Settlement Funds"), subject to approval by the Los Angeles County Board of Supervisors. The parties acknowledge that the Court in this matter has issued an order outlining a time table to present this settlement for approval by the Los Angeles County Board of Supervisors, and thereafter issuance of a settlement draft. It is understood by the parties that if the time table is not complied with, this settlement agreement may be revoked by either party.

The Parties expressly agree that the Lawsuit shall not be dismissed until five (5) business days following receipt by Eagan Avenatti of the Settlement Funds as provided above.

The Plaintiff, being of lawful age, does hereby, and for his heirs, executors, administrators, successors and assigns, release, acquit and forever discharge Defendants, as well as their respective agents, servants, successors, heirs, attorney, executors, administrators and all other persons, firms, corporations, associations or partnerships, or any other entity connected therewith, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expense and/or compensation, of any nature whatsoever which the undersigned Plaintiff now has or which may hereafter accrue to the undersigned Plaintiff on account of, or in any way growing out of, any and all known or unknown, foreseen and unforeseen, injuries and/or damages and the consequences thereof resulting from, or to result from, the incidents, casualties or events which occurred or arose while in custody of the Los Angeles County Sheriff's Department from April 2011 through February 2012 in Los Angeles,

California, and which has resulted in a claim and/or lawsuit being brought by the Plaintiff and REDACTED REDACTED No. CV-13-4496 MMM (AJWx), entitled *Geoffrey* in the United States District Court for the Central

The Plaintiff agrees that this Agreement extends to any claims which the Plaintiff does not know or suspect to exist in his favor at the time of executing the document, which if known by him may materially affect this settlement. In that regard, the Plaintiff agrees to waive any rights he may have under California *Civil Code* § 1542, which provides as follows: "General release; extent - A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which is known by him must have materially affected his settlement with the debtor." The Plaintiff fully understands that he cannot hereafter make any further claim or seek any further recovery from the parties being released herein by reason of the aforesaid matters, and expressly waives all unknown claims caused by, or alleged to be caused by, the aforesaid Lawsuit.

Plaintiff acknowledges that all liens or other claims of third-parties have been disclosed and agrees to hold harmless and indemnify Defendants, Hurrell Cantrall LLP, and their attorneys and agents, of any and all liens or other claims of third-parties which have been or may be asserted for services which have been or may be rendered on behalf of the Plaintiff.

The Parties agree that they have received no inducement, promise or offer of any kind whatsoever for the consideration delineated hereinabove other than what is stated herein, and that this Agreement is executed without reliance on any statement or representation by those released or their representatives, or anyone, other than the sole consideration described herein.

The Parties agree that no party will be deemed the "prevailing party" for any purpose.

It is understood and agreed that this settlement is the compromise of a disputed claim and that the consideration furnished is not to be construed as an admission of liability on the part of Defendants, and that Defendants have denied liability on the claim herein and intend merely to avoid further litigation by this compromise.

The compromise and settlement which forms the basis of this Agreement have been arrived at after thorough bargaining and negotiation and represents a final, mutually agreeable compromise.

The Parties agree that this Agreement contains the entire agreement between the Parties and that the terms of this Agreement are contractual and not a mere recital.

///

///

///

The Parties further agree that they have read and fully understand this Agreement, that the opportunity has been afforded to discuss the terms and contents of this Agreement with legal counsel and/or that such a discussion with legal counsel has occurred. This release may be executed in multiple counterparts, each of which shall be deemed an original, and all of that shall constitute one agreement to be effective on the date of the final signature hereto.

**CAUTION: READ BEFORE SIGNING**

DATED: 1/2/15    — REDACTED   REDACTED —

DATED: 1/21/15    _[signature]_
Authorized Representative of the Defendants

This Settlement Agreement and Release of All Claims has been read and approved as to form and content.

DATED: 1-21-15    By: _[signature]_
Michael Avenatti, Esq.
Scott Sims, Esq.
Carlos Colorado, Esq.
Eagan Avenatti, LLP
Attorneys for Plaintiff

DATED: 1/21/15    By: _[signature]_
Thomas C. Hurrell, Esq.
Charles Phan, Esq.
Rebecca H. Snader, Esq.
Hurrell Cantrall LLP
Attorneys for Defendants

PROOF OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.

I am not a party to the above entitled action. I have caused, on 6-29-21, service of the defendant's:

**IN LIMINE MOTION EXHIBITS**

On the following party, using the court's ECF system:

**AUSA'S Brett Sagel & Alex Wyman**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 6-29-21

s/ H. Dean Steward

H. Dean Steward

- 7 -