H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994

Attorney for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | DEFENDANT'S TRIAL MEMORANDUM |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

    Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his counsel of record, H. Dean Steward, hereby files this trial memorandum. This trial memorandum is based upon the attached memorandum of points and authorities, the files, records and transcripts in this case, and further evidence and argument as the Court may permit at a hearing.


  Dated: July 12, 2021             Respectfully submitted,

                                /s/ H. Dean Steward
                                H. DEAN STEWARD

                                Attorney for Defendant
                                MICHAEL JOHN AVENATTI

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………..………………………….…………………ii

I.  INTRODUCTION……………………………………………………………..2

II.  LEGAL AND EVIDENTIARY ISSUES
RAISED BY THE GOVERNMENT……………………………………………2

    A. Authorized or Agency Admission……………………………………2

    B.  The Business Records Exception……………………………………...4

    C.  Redactions in Trial Exhibits……………………………………….....6

    D.  Impeachment Issues…………………………………………………...7

    E.  Other Fraud Charges…………………………………………………9

    F.  Lack of Reciprocal Discovery or Affirmative Defenses…………………..12

    G. Privilege Issues that Defendant May Attempt to Raise………………….....12

III.  LEGAL AND EVIDENTIARY ISSUES
RAISED BY THE DEFENSE………………………………………………....18

    A. The Government's Discovery Obligations……………………………...18

    B.  Request to Exclude Government Witnesses Not Produced by Way of its
Witness List………………………………………………………....22

IV.  CONCLUSION……………………………………………………………23

CERTIFICATE OF SERVICE……………………………………………………24

# TABLE OF AUTHORITIES

**CASES:** **Page**

*Banks v. Dretke,*
540 U.S. 668 (2004)……………………………………………………..20

*Brady v. Maryland,*
373 U.S. 83 (1963)……………………………………....11,19,20,21,22

*Comstock v. Humphries,*
786 F.3d 701 (9th Cir. 2015)…………………………………………20

*Davis v. Alaska,*
415 U.S. 308 (1974)…………………………………………………8,9

*Hickman v. Taylor,*
329 U.S. 495 (1947)…………………………………………………16

*Jaffee v. Redmond,*
518 U.S. 1 (1996)……………………………………………………..18

*Strickler v. Greene,*
527 U.S. 263 (1999)…………………………………………………19,20

*United States v. Abel,*
469 U.S. 45 (1984)……………………………………………………9

*United States v. Nobles,*
422 U.S. 225 (1975)…………………………………………………..17

*ACLU of N. Cal. v. United States DOJ,*
880 F.3d 473 (9th Cir. 2018)…………………………………………17

*Admiral Ins. Co v. U.S. Dist. Ct.,*
881 F.2d 1486 (9th Cir. 1989)………………………………………16

*Arthur v. Gallagher Bassett Servs.,*
2010 U.S. Dist. LEXIS 162100 (C.D. Cal. 2010)……………………6

*Benn v. Lambert*,
283 F.3d 1040 (9th Cir. 2002)………………………………………………………20

*Bozzuto v. Cox*,
255 F.R.D. 673 (C.D. Cal. 2009)……………………………………………………18

*Breneman v. Kennecott Corp.,*
799 F.2d 470 (9th Cir. 1986)…………………………………………………………3

*Davis Moreno Constr., Inc. v. Frontier Steel Bldgs. Corp.*,
2009 U.S. Dist. LEXIS 440076 (E.D. Cal. 2009)………………………………………...8

*DirecTV, Inc. v. Murray*,
307. F.Supp. 2d 764 (D.S.C 2004)…………………………………………………..5

*Folb v. Motion Picture Indus. Pension & Health Plans*,
16 F. Supp. 2d 1164 (9th Cir. 1998)………………………………………………12,13

*Fowler v. Sacramento Cnty. Sheriff's Dep't*,
421 F.3d 1027 (9th Cir. 2005)………………………………………………………9

*Hughes v. Raines*,
641 F.2d 790 (9th Cir. 1981)………………………………………………………..9

*Hydrotech Systems, Ltd. v Oasis Waterpark*,
52 Cal. 3d 988 (1991)………………………………………………………………8

*In Re Grand Jury Subpoenas*,
454 F.3d 511 (6th Cir. 2006)………………………………………………………16

*In Re Grand Jury* Subpoenas,
870 F.3d 312 (4th Cir. 2017)………………………………………………………17

*In Re RDM Sports Group, Inc.,*
 277 B.R. 415 (Bankr. N.D. Ga. 2002)……………………………………………14

*Izett v. Crown Asset Mgmt., LLC*,
2019 U.S. Dist. LEXIS 170548 (N.D. Cal. 2019)…………………………………..5

*Lake Utopia Paper, Ltd. v. Connelly Containers Inc.,*
608 F.2d 928 (2d. Cir. 1979)………………………………………………………12

*Lopez v. Vieira*,
719 F.Supp. 2d 1199 (E.D. Cal. 2010)……………………………………………17

*Medrano v. City of Los Angeles*,
973 F.2d 1499 (9th Cir. 1992)……………………………………………………7

*Memry Corp. v. Ky. Oil Tech., N.V.*,
2007 U.S. Dist. LEXIS 104031 (N.D. Cal. 2007)…………………………………17

*Microsoft Corp. v. Suncrest Enterprise*,
2006 U.S. LEXIS 21269 (N.D. Cal. 2006)………………………………………...14

*Milke v. Ryan*,
711 F.3d 998 (9th Cir. 2013)……………………………………………………20

*Molina v. Lexmark Int'l, Inc.*,
2008 U.S. Dist. LEXIS 83014 (C.D. Cal. 2008)………………………………..13,14

*Natural-Immunogenics Corp. v. Newport Trial Grp.*,
 2018 U.S. Dist. LEXIS 228114 (C.D. Cal. 2018)…………………………………17

*NLRB v. Friendly Cab Co., Inc.*,
512 F.3d 1090 (9th Cir. 2008)…………………………………………………....3

*NLRB v. Joseph Macaluso, Inc.*,
618 F.2d 51 (9th Cir. 1980)……………………………………………………13

*Orlob-Radford v. Midland Funding LLC*,
2016 U.S. Dist. LEXIS 142598 (E. D. Wash. 2016)……………………………….5

*People v. Superior Court (Laff)*,
25 Cal. 4th 703 (2001)…………………………………………………………18

*Precision Piping & Instruments, Inc.* v. E.I. Du Pont de Nemours & Co.,
951 F.2d 613, (4th Cir. 1991)……………………………………………………3

*Reis-Campos v. Biter*,
832 F.3d 968 (9th Cir. 2016)……………………………………………………19

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co*,
32 F.3d 851 (3rd Cir. 1994)……………………………………………………17

*Rogers v. Oregon Train Elec. Consumers Co-Op., Inc.,*
2012 U.S. Dist. LEXIS 65883 (D. Or. 2012)……………………………………………5

*Sea-Land Serv. v. Lozen Int'l, LLC,*
285 F.3d 808 (9th Cir. 2002)……………………………………………………..3

*SEC v. Neil,*
2014 U.S. Dist. LEXIS 8822 (N.D. Cal. 2014)……………………………………21

*Sheldone v. Pennsylvania Turnpike Comm'n,*
104 F.Supp. 2s. 511 (W.D. Pa. 2000)………………………………………...14

*Shenwick v. Twitter, Inc.,*
2019 U.S. Dist. LEXIS 75551 (N.D. Cal. 2019)…………………………………17

*Sims v. Lakeside Sch.,*
2007 U.S. Dist. LEXIXS 90261 (W.D. Wash. 2007)……………………………………3

*State Comp. Insurance Fund v. Superior Court,*
91 Cal. App. 4th 1080 (2001)……………………………………………...18

*Torf (In Re Grand Jury Subpoena),*
357 F.3d 900 (9th Cir. 2003)……………………………………………………17

*United States v. Andrews,*
532 F.3d 900 (D.C. Cir. 2008)……………………………………………………20,21

*United States v. Arias,*
431 F.3d 1327 (11th Cir. 2005)……………………………………………………15

*United States v. Bailey,*
327 F.3d 1131 (10th Cir. 2003)……………………………………………………15

*United States v. Bonds,*
608 F.3d 495 (9th Cir. 2010)……………………………………………………2

*United States v. Bolden,*
545 F.3d 609 (8th Cir. 2008)……………………………………………………22

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020)……………………………………………………19

*United States v. Davis*,
2015 U.S. Dist. LEXIS 15524 (C.D. Cal. 2015)……………………………………9

*United States v. Ferber*,
966 F.Supp. 90 (D. Mas. 1997)……………………………………………………6

*United States v. Gullo*,
672 F. Supp. 99 (W.D.N.Y. 1987)…………………………………………………14

*United States v. Giron*,
2017 U.S. Dist. LEXIS 207269 (D.N.D. 2017)……………………………………21

*United States v.* Grace,
526 F.3d 499 (9th Cir. 2008)………………………………………………………22

*United States v. Harris*,
543 F.2d 1247 (9th Cir. 1976)……………………………………………………20

*United States v. Harrison*,
524 F.2d 421 (D.C. Cir. 1975)…………………………………………………20,21

*United States v. Kohring*,
637 F.3d 895 (9th Cir. 2011)………………………………………………………9

*United States v. Kahre*,
610 F. Supp. 2d 1261 (D. Nev. 2009)………………………………………………5

*United States v. Lujan*,
530 F. Supp. 2d 1224 (D. N.M. 2008)……………………………………………21

*United States v. Mansker*,
240 F.Supp. 2d 902 (N.D. Iowa 2003)……………………………………………21

*United States v. Ortega*,
561 F.2d 803 (9th Cir. 1977)………………………………………………………8

*United States v. Park*,
2008 U.S. Dist. LEXIS 111826 (C.D. Cal. 2008)…………………………………15

*United States v. Price,*
566 F.3d 900 (9th Cir. 2009)……………………………………………………20

*United States v. Richley,*
632 F.3d 559 (9th Cir. 2011)……………………………………………………16

*United States v. Richter,*
488 F.2d 170 (9th Cir. 1973)……………………………………………………22

*United States v. Roti,*
484 F.3d 934 (7th Cir. 2007)……………………………………………………15

*United States v. Sanmina Corp, & Subsidiaries,*
968 F.3d 1107 (9th Cir. 2020)……………………………………………………17

*United States v. Serv. Deli,*
151 F.3d 938 (9th Cir. 1998)……………………………………………...20,21

*United States v. Talbot,*
51 F.3d 183 (9th Cir. 1995)……………………………………………………22

*United States v. Torf (In Re Grand Jury Subpoena),*
357 F.3d 900 (9th Cir. 2004)……………………………………………...16,17

*United States v. Van Doren,*
2013 U.S. Dist. LEXIS 75120(D. Ak. 2013)……………………………...20,21

*United States v. Young,*
2019 U.S. Dist. LEXIS 232581 (C.D. Cal. 2019)………………………….....7

*United States v. Zuno-Acre,*
44 F.3d 1420 (9th Cir. 1997)……………………………………………………20

*Wichansky v. Zowine,*
2015 U.S. Dist. LEXIS 132711 (D. Az. 2015)…………………………………16

*Weil v. Citizens Telecom Servs. Co., LLC,*
922 F.3d 993 (9th Cir. 2019)……………………………………………………3

*Xcentric Ventures, LLC v. Borodkin,*
934 F. Supp. 2d 1125 (D. Az. 2013)……………………………………………18

## FEDERAL RULES:

Federal Rule of Evidence 408………………………………………………13,14,15,16

Federal Rule of Evidence 501……………………………………………………...13,16

Federal Rule of Evidence 609…………………………………………………………7

Federal Rule of Evidence 801(d)(2)(C)……………………………………………..2,3,4

Federal Rule of Evidence 801(d)(2)(D)……………………………………………..2,3,4

Federal Rule of Evidence 803(6)……………………………………………………..4,5

Federal Rule of Evidence 902(11)…………………………………………………...4,5

## OTHER AUTHORITES:

Alan Kirtley, *The Mediation Privilege's Transition from Theory to Implementation: Designing a Mediation Privilege Standard to Protect Mediation Participants, the Process and the Public Interest*, 1995 J. Disp. Resol. 1………………………………...13

Christopher B. Mueller, 4 Federal Evidence 8:79 (3d ed. 2009)…………………………6

*Restatement (Second) Agency* 220(2) (1958)…………………………………………...3,4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Mr. Avenatti is scheduled to begin a jury trial on Counts 1 through 10 of the Indictment on July 13, 2021. Opening statements are scheduled to begin on July 20, 2021. On July 7, 2021, the government filed its trial memorandum raising with the Court several evidentiary issues as well as a summary of the evidence it will seek to offer at trial. In its trial memorandum, the government does not request any specific relief, but merely provides the Court with a preview of the prosecution's likely evidentiary obstacles. Mr. Avenatti comes now, through his counsel of record H. Dean Steward, to provide a preview of the likely response to some of the legal issues the government has raised. The Defendant similarly raises several other legal and evidentiary issues he anticipates coming to fruition at trial.

## II.   LEGAL AND EVIDENTIARY ISSUES RAISED BY THE GOVERNMENT

### A. Authorized or Agency Admissions

The government has indicated that it intends to call several witnesses, specifically Ms. Regnier and Mr. Marchino and introduce their communications with the alleged victims as "non-hearsay … authorized admissions under Federal Rules of Evidence 801(d)(2)(C) and 801(d)(2)(D)." [Dkt. 528, p. 15]. The government makes no mention of any specific statements it seeks to offer pursuant to these sections other than a single text message supposedly received by Mr. Marchino.

Pursuant to Federal Rule of Evidence 801(d)(2)(C), a statement is not excluded as hearsay if "the statement is offered against an opposing party and was made by a person whom the party authorized to make a statement on the subject." The statement, however, "must be considered but does not by itself establish the declarant's authority under [subsection] (C)." The Ninth Circuit has made it clear that Rule 801(d)(2)(C) "requires the declarant to have specific authority from a party to make a statement concerning a particular subject." *United States v. Bonds*, 608 F.3d 495, 502 (9th Cir. 2010)(emphasis

2

added)(upholding the district court's exclusion of statements because sufficient control over party was not established). In the context of Rule 801(d)(2)(C), authority "means 'authority to speak' on a particular subject on behalf of someone else." *Precision Piping & Instruments, Inc.* v. E.I. Du Pont de Nemours & Co., 951 F.2d 613, 620 (4th Cir. 1991)(upholding district court's exclusion of hearsay because the statements of purported agent were not matters within the scope of their employment).

Federal Rule of Evidence Rule 801(d)(2)(D) similarly allows for the admission of a statement, as not hearsay, so long as the statement is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed…" Fed. R. Evid. 801(d)(2)(D). This rule "requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment." *Sims v. Lakeside Sch.,* 2007 U.S. Dist. LEXIXS 90261, at *6-7 (W.D. Wash. 2007); *citing Breneman v. Kennecott Corp.,* 799 F.2d 470, 473 (9th Cir. 1986). When a court is evaluating whether such a foundation has been established, "the contents of the statement shall be considered but are not alone sufficient to establish the agency or employment relationship and scope thereof." *Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002). This rule "sets forth three elements necessary for admitting a statement that would otherwise be excluded as hearsay: (1) the statement must be made by an agent or employee of the party against whom the statement is being offered; (2) the statement must concern a matter within the scope of that employment relationship; and (3) the statement must be made while the declarant is yet employed by the party." *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019).

The Ninth Circuit has made it clear that in order to determine whether the statements are admissible under Rule 801(d)(2)(D), the court "must 'undertake a fact-based inquiry applying common law principles of agency.'" *Bonds, supra,* 608 F.3d 495 at 504, *citing NLRB v. Friendly Cab Co., Inc.,* 512 F.3d 1090, 1096 (9th Cir. 2008). The Second Restatement of Agency sets forth ten factors for the district courts to consider: (1) the control exerted by the employer, (2) whether the one employed is engaged in a

3

distinct occupation, (3) whether the work is normally done under the supervision of an employer, (4) the skill required, (5) whether the employer supplies tools and instrumentalities, (6) the length of time employed, (7) whether payment is by time or by the job, (8) whether the work is in the regular business of the employer, (9) the subjective intent of the parties, and (10) whether the employer is or is not in business. *Id.* 505; *citing Restatement (Second) Agency* 220(2) (1958).

Without providing the Court the context of the statements, the testimony of the government witness, or any showing that communications were made within the alleged scope of Ms. Regnier or Mr. Marchino's employment or at Mr. Avenatti's specific direction, the Court is unable to make any rulings. Mr. Avenatti requests that each exhibit, statement, communication or otherwise that the government seeks to introduce by way of Rule 801(d)(2)(C) or (D) be analyzed individually pursuant to the law cited above.

## B. The Business Records Exception

On May 31, 2021, the government filed a Motion in Limine to Admit Business Records pursuant to Rule 902(11). [Dkt. 473]. In its motion, the government requested that the Court authenticate over 107,559 pages of purported business records from 59 entities without attaching a single document or declaration. The Court properly denied the government's motion and held, "[t]he Court cannot asses the admissibility of the records in a vacuum. The Court is unable to assess the sufficiency of the custodian certificates. Nor is the Court able to review the content of the records to determine whether the records in fact satisfy the business records exception." [Dkt. 512, p. 2].

On July 9, 2021, the government disclosed its exhibit list and indicated that it intended to introduce records from the following 5 entities by way of the business records exception: (1) California Bank and Trust; (2) Chase Bank; (3) City National Bank; (4) Honda Aircraft Company; and (5) the People's Bank.

Federal Rule of Evidence 902(11) allows for certain domestic records of regularly conducted activity to be self-authenticating and excuses the need for extrinsic evidence of authenticity. Fed. R. Evid. 902(11). Rule 902(11) works in tandem with Rule 803(6)

4

to "allow proponents of business records to qualify them for admittance with an affidavit or similar written statement rather than live testimony." *See United States v. Kahre*, 610 F. Supp. 2d 1261, 1263 (D. Nev. 2009)(citing *DirecTV, Inc. v. Murray*, 307. F.Supp. 2d 764, 772 n. 3 (D.S.C 2004)). Pursuant to Rule 803(6), business records act as an exception to the rule against hearsay so long as the following requirements are met:

> "(A) the record was made at or near the time by – or from information transmitted by – someone with personal knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. R. Evid. 803(6)

Courts have "<u>refused to admit records where declarants offer no more than conclusory statements that repeat the language of Rule 803(6)</u>." *Izett v. Crown Asset Mgmt., LLC*, 2019 U.S. Dist. LEXIS 170548, at *16 (N.D. Cal. 2019)(emphasis added); *See also Orlob-Radford v. Midland Funding LLC*, 2016 U.S. Dist. LEXIS 142598, at *5 (E. D. Wash. 2016)(district court refused to accept "conclusory statements as foundation" to establish foundation of business record when the declarant "parroted the foundational language of Fed. R. Evid. 803(6) but provided no basis to show how he knew the records were actually created in the ordinary course of business."); *See also, Rogers v. Oregon Train Elec. Consumers Co-Op., Inc.,* 2012 U.S. Dist. LEXIS 65883, at *9 (D. Or. 2012)(requiring more than "boiler, conclusory statements that simply parrot the elements of the business record exception to the hearsay rule"). Further, district courts are "generally weary of admitting emails as business records because in most instances it is difficult to show that the employer required such records to be created and

maintained in the regular course of business." *Arthur v. Gallagher Bassett Servs.*, 2010 U.S. Dist. LEXIS 162100, at *18 (C.D. Cal. 2010); *citing United States v. Ferber*, 966 F.Supp. 90, 98 (D. Mas. 1997)(excluding e-mail messages because there was insufficient evidence that the company required the employee to make and maintain the relevant e-mail message). Evidence treatises provide that "[m]ost e-mail messages do not satisfy the criteria of the [business records] exception because e-mail more closely resembles informal notes or telephone messages, and these mechanisms are not the usual means of producing routine records…" *Arthur, supra,* 2010 U.S. Dist. LEXIS at *18-19; *citing* Christopher B. Mueller & Laird C. Kilpatrick, 4 Federal Evidence 8:79 (3d ed. 2009).

Within its exhibit disclosure, the government provided the defense with both the documents it sought to introduce as business records as well as the corresponding series of multiple declarations from a purported custodian of records. The exhibits the government describes as business records include emails, checks, deposit slips, account balance summaries, a signature card, various written agreements, and other records. Again, the government has failed to lay the proper foundation for these business records and the government's reliance on the declarations is misplaced. Accordingly, these records, emails and other documents are classic hearsay and cannot be admitted into evidence by way of the business records exception to the hearsay rule.

### C. Redactions In Trial Exhibits

On Tuesday, July 6, 2021 at 10:42 p.m., the government produced the electronic version of its exhibits alongside its "draft exhibit list." The government conveyed its intention to introduce approximately 468 exhibits into evidence. At this time, the government indicated that it had redacted several of the exhibits pursuant to the Court's order in connection with the motions in limine. [Dkt. 512, p.4]. Less than 24 hours later, on the evening of July 7, 2021, the government filed its trial brief claiming, "[a]s of the time of this filing, the government has received no objections." [Dkt. 528, p. 18]. It is unreasonable to expect that Mr. Avenatti would have sufficient time to review, in detail, each of the 468 exhibits, overnight and provide substantive objections to the

6

government's redactions by the following day. As the review of these exhibits by the defense continues, Mr. Avenatti reserves the right to notify the government of the Defendant's objections to the redactions and lodge with the Court any objection the defense deems appropriate and reasonable.

### D. Impeachment Issues

The government has provided criminal history reports for many of its witnesses. Mr. Avenatti intends on impeaching several of the government witnesses with evidence of prior criminal convictions pursuant to Federal Rule of Evidence 609. Pursuant to Federal Rule of Evidence 609, if more than 10 years have passed since the witness' conviction or release from confinement, whichever is later, the evidence of the conviction is admissible only if the following two requirements are met: (1) the probative value substantially outweighs its prejudicial effect; and, (2) the proponent gives an adverse party reasonable written notice of the intent to use it so the party has an opportunity to contest it.

On July 2, 2021, undersigned counsel contacted the government and provided notice of its intention to impeach various witnesses with criminal convictions that occurred more than 10 years ago. On July 6, 2021, the government responded and indicated that it did not object to Mr. Avenatti's cross examining the NFL litigant as to his 2003 federal conviction for mail fraud but objected to the cross examination of Mr. Barela on his 2006 misdemeanor conviction. In the government's trial brief, the government similarly conveyed its position to the Court. In its trial brief, the prosecution claims that Mr. Avenatti should be precluded from cross-examining Mr. Barela on his misdemeanor conviction for contacting without a license. [Dkt. 528, p. 19].

The misdemeanor nature of Mr. Barela's prior conviction does not automatically eliminate its potential for impeachment material. Rule 609 allows for a witness to be impeached by a prior misdemeanor conviction so long as the misdemeanor violation involved dishonesty or false statements. *See United States v. Young*, 2019 U.S. Dist. LEXIS 232581, at *4 (C.D. Cal. 2019); *citing Medrano v. City of Los Angeles*, 973 F.2d

7

1499, 1507 (9th Cir. 1992); *See also United States v. Ortega*, 561 F.2d 803, 805 (9th Cir. 1977).

Mr. Barela was charged with three counts in connection with the conviction at issue (all with a violation date of July 22, 2003): (1) Count 1, a violation of Business and Professions Code, unlawful use of contractor's license; (2) Count 2, a violation of Business and Professions Code section 7028(a), contracting without a license; and, (3) Count 3, a violation of Penal Code section 368(b)(1), inflicting injury on elder adult. On February 28, 2006, Mr. Barela agreed to take a plea and was convicted of Count 2. Mr. Barela was placed on three years of probation, was ordered to pay restitution and perform community service. Mr. Barela's probation was revoked four separate times as a result of probation violations and he was not discharged from probation until 2011.

Mr. Avenatti asks that this Court find that a violation of California Business and Professions Code section 7028(a) is a crime involving dishonesty and should be permitted for impeachment. The "purpose of the [California] licensing law is to protect the public from incompetence and dishonesty in those who provide building and constructing services…" *Davis Moreno Constr., Inc. v. Frontier Steel Bldgs. Corp.*, 2009 U.S. Dist. LEXIS 440076, at *55 (E.D. Cal. 2009)(emphasis added); *citing Hydrotech Systems, Ltd. v Oasis Waterpark*, 52 Cal. 3d 988 (1991). The nature of this conviction shows that Mr. Barela lied to the public and held himself out to be a licensed contractor when he was not. Further, his four revocations of probation and probationary sentence that extended into 2011 additionally establish the probative value of this impeachment material. Mr. Avenatti should be permitted to impeach Mr. Barela, one of the alleged victims in this case and an essential witness to the government, with this prior conviction. The nature of the offense, the importance of this witness, the probation violations that followed, and the probationary period that extended almost into the 10 year window of this trial make its probative value high. The probative value of this impeachment material substantially outweighs any prejudice. Although the government has generally indicated that "the prejudicial effect is possibly quite high" the prosecution has cited no specific prejudice to the government or to its witness. [Dkt. 528, p. 20].

8

### E. Other Fraud Charges

The government preemptively asks the Court to find that if Mr. Avenatti opens the door to any subject related to the cases pending in the Southern District of New York or Counts 11 through 36, the government must be permitted to elicit testimony regarding Mr. Avenatti's other pending Indictment and conviction in the Southern District of New York as well as the allegations made against him in Counts 11 through 36. On September 10, 2020, Mr. Avenatti moved to sever and separately try Counts 1 through 10 of the 36-Count Indictment. [Dkt. 265]. In granting the motion, the Court indicated, "In sum, Avenatti would be prejudiced if the Court did not grant a severance." [Dkt. 371, p. 3]. The government acknowledges that it is aware of the Court's orders as it relates to the severance and "does not intend to introduce evidence of -- or refer at trial to -- defendant's other charges except as permitted by the Court in its prior Orders." [Dkt. 528, p. 20]. However, the government indicates that if the Defendant opens the door to discussion of the other counts and charges, the government must be permitted to elicit other testimony relating to the other counts or the charges against Mr. Avenatti in the Southern District of New York as well as the conduct described in Counts 11 through 36.

The Sixth Amendment to the United States Constitution guarantees the defendant the right to be confronted with the witnesses against him. U.S. Const. Amend. VI. The Sixth Amendment protects "the right to cross-examine witnesses to attack their general credibility or to show their possible bias or self-interest in testifying." *United States v. Davis*, 2015 U.S. Dist. LEXIS 15524, at *14-15 (C.D. Cal. 2015); *citing Hughes v. Raines*, 641 F.2d 790, 792 (9th Cir. 1981). The confrontation clause "requires a defendant to have some opportunity to show bias on the part of the prosecution witness." *Id. citing United States v. Abel*, 469 U.S. 45, 50 (1984); *See also Fowler v. Sacramento Cnty. Sheriff's Dep't*, 421 F.3d 1027, 1036 (9th Cir. 2005). The exposure of a witness' motivation in testifying is a "proper and important function of the constitutionally protected right of cross-examination." *United States v. Kohring*, 637 F.3d 895, 905 (9th Cir. 2011); *citing Davis v. Alaska*, 415 U.S. 308, 318 (1974).

The government attempts to limit Mr. Avenatti's ability to cross examine prosecution witnesses arguing that the questioning would naturally elicit responses regarding Counts 11 through 36 as well as the conduct charged in the Southern District of New York. The government provides two examples of how the Defendant's cross examination could open the door to government questioning on these issues.

First, the government implies that much of the time spent interviewing Mr. Avenatti's former paralegal Judy Regnier was related to Counts 11 through 36 as well as the charges in the Southern District of New York. The government argues that if Mr. Avenatti cross-examines Ms. Regnier regarding how much time she spent being interviewed by the government, then "the government should be able to elicit on redirect that much of her time spent being interviewed concerned matters other than the clients whose settlement funds defendant is alleged to have stolen." [Dkt. 528, p. 21]. The government has not provided the Defendant or the Court with a detailed breakdown as to what time with Ms. Regnier was spent discussing Counts 1 through 10 rather than Counts 11 through 36 or the cases within the Southern District of New York. The government previously has asserted that Ms. Regnier is not a critical witness in this case. *See* [Dkt. 490, p. 9]("defendant's opinion on whether EA Employee 1 is critical and vital to his prosecution is both irrelevant and wrong."). Although the government has claimed that Ms. Regnier is not an essential witness in their case, **at least 128 of the prosecution's 468 exhibits include references, messages, e-mails or other documentation related to Ms. Regnier**.  As the defense has previously stated, the testimony of Ms. Regnier is the lynchpin to the government's case in chief. Unless the government is able to perform a detailed breakdown of the time spent with the government on Counts 11 through 36 as well as the conduct alleged in the Southern District of New York, the government cannot seek the drastic relief of limiting Mr. Avenatti's ability to cross examine Ms. Regnier on the time spent with the government preparing for trial and discussing the case at issue.

Second, the government argues that Mr. Avenatti should not be permitted to testify as to the $567,000 the government paid Mr. John Drum because "the fees related

10

to the sole task that Mr. Drum is expected to testify about at the upcoming trial …

totaled only ~$198,000." [Dkt. 528, p. 21]. The government, <u>at the same time it refuses</u> <u>to produce the itemized invoices, which are Brady, Giglio, and Jencks material</u>, has indicated that *only* $198,000 was paid directly to "tracing the flows of funds relating to settlement payments owed" to the alleged victims. The government argues that although Mr. Drum was paid ~$112,000 to analyze Michael Avenatti's personal finances, ~$34,000 for evaluating financial statements provided to The People's Bank, and ~$223,000 in analyzing the finances of Eagan Avenatti LLP and Avenatti & Associates, these analyses are unrelated to the counts proceeding to trial.

The government's own exhibits, pretrial arguments and Mr. Drum's analysis derail the logic of this argument. Mr. Drum's review of Mr. Avenatti's personal expenses was necessary to his analysis of whether Mr. Avenatti misappropriated funds from his former clients. Mr. Drum could not have possibly attempted to trace the flow of client funds without a reviewing Mr. Avenatti's personal accounts. By way of example only, the government's Exhibit 421, a summary chart prepared by Mr. Drum specifically includes a graphic described as "Avenatti Personal Account."

Similarly, Mr. Drum must have evaluated the finances of Eagan Avenatti LLP and Avenatti & Associates and statements made to the People's Bank to determine the nature and extent of Mr. Avenatti's purported misappropriation of client funds. The vast majority of the charts created by Drum include explicit references to the Eagan Avenatti LLP and Avenatti & Associates accounts. The government cannot plausibly argue that its entry of "Analyzing the finances of Eagan Avenatti LLP and Avenatti's personal finances" are unrelated to Counts 1 through 10. This argument is further supported by the government's attempts to admit into this trial evidence of both Avenatti & Associates as well as Eagan Avenatti LLP deposit details, checks, signature cards, and bankruptcy evidence. Accordingly, Mr. Avenatti should be permitted to cross-examine Mr. Drum as to the entire amount paid to him and his firm(s) in connection with this case.

Mr. Avenatti asks that this Court find that the examples proffered by the government do not describe scenarios where the government would be permitted to elicit

testimony regarding Counts 11 through 36 as well as the matters charged within the Southern District of New York. Aside from these two examples, the government asks this Court to rule in a vacuum and order that any crack of the door regarding matters unrelated to Counts 1 through 10 will allow the government to "elicit appropriate limited information about these other matters involving defendant." [Dkt. 528, p. 20]. Mr. Avenatti reserves the right to challenge the government's attempts to elicit testimony unrelated to Counts 1 through 10.

## F.  Lack of Reciprocal Discovery or Affirmative Defenses

The government wishes to preclude Mr. Avenatti from pursuing any affirmative defense. The Defendant acknowledges that the Court set a deadline for him to provide the government with notice of his intentions to disclose an advice of counsel defense. No similar deadline has been set for Mr. Avenatti to disclose his reliance on any other affirmative defense. As such, Mr. Avenatti reserves the right to present a defense to fullest extent allowable by law.

## G. Privilege Issues that Defendant May Attempt to Raise

In the government's trial brief, it raised several different issues as it relates to privilege. Defendant intends on invoking the privileged codified within the attorney-client work product doctrine as well as the mediation privilege. Each is addressed individually below.

Rules protecting the confidentiality of mediation proceedings serve the purpose of "encouraging parties to attend mediation and communicate openly and honestly in order to facilitate successful alternative dispute resolution." *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1172 (9th Cir. 1998). If participants cannot rely on the confidential nature of the proceedings, then counsel "will feel constrained to conduct themselves in a cautious tightlipped non-committal manner more suitable to poker players in a high-stakes game that to adversaries attempting to arrive at a just civil dispute." *Lake Utopia Paper, Ltd. v. Connelly Containers Inc.,* 608 F.2d 928,

930 (2d. Cir. 1979). When the mediator or parties to the proceedings are required to divulge information said or documentation presented during mediation proceedings, "the side most forthcoming in the mediation process is penalized…" *Folb, supra,* 16 F. Supp. 2d at 1172. A principal purpose of the mediation privilege "is to provide mediation parties protection against these downside risks of a failed mediation." *Id.* at 1173; *citing* Alan Kirtley, *The Mediation Privilege's Transition from Theory to Implementation: Designing a Mediation Privilege Standard to Protect Mediation Participants*, *the Process and the Public Interest*, 1995 J. Disp. Resol. 1, 8, 16. If parties were "permitted or required to testify about their activities, or if the production of notes or reports of their activities could be required, not even the strictest adherence to purely factual matters would prevent the evidence from favoring or seeming to favor one side." *Id.* at 1172; *citing NLRB v. Joseph Macaluso, Inc.*, 618 F.2d 51, 55-56 (9th Cir. 1980).

Testimony taken during and documentation provided at mediation proceedings are protected by both Federal Rule of Evidence 408 and the common law mediation privilege. Based on the following, Mr. Avenatti asks that testimony regarding statements made in connection with mediation, and documents produced in connection with those proceedings, be excluded at trial.

### i.   The Common Law Mediation Privilege

Pursuant to Federal Rule of Evidence 501, privileges are created and governed exclusively by common law unless the United States Constitution, a federal statute or the Supreme Court directly provides otherwise. Fed. R. Evid. 501. Federal courts are permitted to "define new privileges based on interpretation of common law principles … in the light of reason and experience." *Molina v. Lexmark Int'l, Inc.,* 2008 U.S. Dist. LEXIS 83014, at *23-24 (C.D. Cal. 2008). The Ninth Circuit previously determined that, "[t]he need for confidentiality and trust between participants in the mediation proceeding is sufficiently imperative to necessitate the creation of some form of privilege. This conclusion takes on added significance when considered in conjunction with the fact that many district courts rely on the success of alternative dispute resolution proceedings to minimize the size of their dockets." *Folb, supra,* 16 F. Supp. 2d at 1175 (emphasis

added). The *Folb* court ultimately determined, "[i]t is appropriate, in light of reason and experience, to adopt a federal mediation privilege applicable to all communications made in conjunction with a formal mediation." *Id.* at 1166. The exact scope and contours of the mediation privilege, however, remain unclear. *Molina*, *supra*, 2008 U.S. Dist. LEXIS at *24.

Several other district courts have applied this privilege and suppressed testimonial or written evidence divulged during confidential, mediation proceedings. *See United States v. Gullo*, 672 F. Supp. 99 (W.D.N.Y. 1987)(district court suppressed confidential information disclosed at an ADR proceeding in a criminal proceeding finding that the privileged information was protected); *Molina*, *supra*, 2008 U.S. Dist. LEXIS at *26; *citing Microsoft Corp. v. Suncrest Enterprise*, 2006 U.S. LEXIS 21269, at *2 (N.D. Cal. 2006)("[c]ommunications to the mediator and <u>communications between parties during the mediation and communications in preparation for and during the course of a mediation with a neutral are protected</u>.")(emphasis added); *In Re RDM Sports Group, Inc.* 277 B.R. 415, 430-31, n.6 (Bankr. N.D. Ga. 2002)("the encouragement of settlement negotiations and alternative dispute resolution is a compelling interest sufficient to justify recognition of a mediation privilege."); *Sheldone v. Pennsylvania Turnpike Comm'n*, 104 F.Supp. 2s. 511, 512 (W.D. Pa. 2000)([a]bsent the mediation privilege, parties and their counsel would be reluctant to lay their cards on the table so that a neutral assessment of the relative strengths and weaknesses of their opposing positions could be made.")

### ii.    Rule 408

Similarly, the legislature has indicated that statements made during mediation must be excluded from trial. The rule excluding evidence of compromise offers and negotiations is codified in Federal Rule of Evidence 408. Pursuant to Rule 408, "evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contraction…" Fed. R. Evid. 408(a). Evidence of furnishing, proposing, offering, accepting, promising to accept, or offering to accept valuable consideration in

14

compromise or in an attempt to compromise the claim is inadmissible by this section. Fed. R. Evid. 408(a)(1). Second, conduct or a statement made during compromise negotiations about the claim is inadmissible. Fed. R. Evid. 408(a)(2). The evidence is admissible, however, "when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative or enforcement authority." Fed. R. Evid. 408(a)(2).

In 2006, Rule 408 was amended to "settle some questions in the courts about the scope of the Rule… [t]he amendment provides that Rule 408 does not prohibit the introduction in a criminal case of statements or conduct during compromise negotiations regarding a civil dispute <u>by a government regulatory, investigative, or enforcement agency</u>." Fed. R. Evid. 408 (emphasis added). *Notes of Advisory Committee on 2006 Amendments.* Further, in response to public comment, the amendment was altered to provide that "statements and conduct during settlement negotiations are to be admissible in subsequent criminal litigation only when made during settlement discussions of a claim brought by a government regulatory agency." *Id.* (emphasis added). Another trial court within the Central District of California court has agreed that the text of Rule 408, "demonstrates that Rule 408 applies in criminal as well as civil cases." *United States v. Park*, 2008 U.S. Dist. LEXIS 111826, at *14 (C.D. Cal. 2008); *citing* Fed. R. Evid. 408 2006 Advisory Committee ("[s]tatements made during compromise negotiations of other disputed claims are not admissible in subsequent criminal litigation, when offered to prove liability for, invalidity of, or amount of those claims."). In *Park*, the district court determined that bank statements in connection with the settlement of a civil claim against Park were protected by Rule 408 and the statements were excluded from trial.

Other Circuits have similarly agreed that Rule 408 applies in criminal proceedings. *Id.* at *10; *citing United States v. Arias*, 431 F.3d 1327, 1338 (11th Cir. 2005)("we join the Fifth and Tenth Circuits in holding that Rule 408 applies to both civil and criminal proceedings."); *United States v. Bailey*, 327 F.3d 1131, 1146 (10th Cir. 2003)("we agree with those courts which apply Rule 408 to bar settlement evidence in both criminal and civil proceedings…"); *See also United States v. Roti*, 484 F.3d 934

15

(7th Cir. 2007)(finding that the Federal Rule 408 was amended to apply to criminal cases).

> ### iii.    Attorney Work Product Privilege

Pursuant to Federal Rule of Evidence 501, privileges are created and governed exclusively by common law unless the United States Constitution, a federal statute or the Supreme Court directly provides otherwise. Fed. R. Evid. 501. The work-product doctrine has been partially codified in Federal Rule of Civil Procedure 26 and Federal Rule of Criminal Procedure 16. The United States Supreme Court has also explicitly recognized the attorney work-product doctrine in its seminal decision, *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). The Court in *Hickman* indicated that the unambiguous creation of the privilege was necessary because an attorney must be permitted to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 511. Absent this protection, the Supreme Court concluded that "[i]nefficiency, unfairness and sharp practices would inevitable develop in the giving legal advice and in the preparation of cases for trial…" *Id.* The work-product privilege is narrower than the attorney-client privilege but operates to serve a common interest, "people should be free to make requests of their attorneys without fear, and that their attorneys should be free to conduct research and prepare litigation strategies without fear that these preparations will be subject to review by outside parties." *In Re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006).

The work-product doctrine protects "documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Richley*, 632 F.3d 559, 567 (9th Cir. 2011); *citing Admiral Ins. Co v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989). The Ninth Circuit has identified only two requirements for the work-product protection to apply to documents: (1) they must be "prepared in anticipation of litigation or for trial"; and (2) they must be prepared "by or for [the] party [seeking the protection] or by or for that . . . party's representative." *Wichansky v. Zowine*, 2015 U.S. Dist. LEXIS 132711, at *8 (D. Az. 2015); *quoting United States v.*

16

*Torf (In Re Grand Jury Subpoena*), 357 F.3d 900, 907 (9th Cir. 2004). There are two types of attorney work product that fall within this doctrine: fact work product and opinion work product. *See In Re Grand Jury* Subpoenas, 870 F.3d 312, 316 (4th Cir. 2017). The work product privilege "shields both opinion and fact work product from discovery…" *ACLU of N. Cal. v. United States DOJ*, 880 F.3d 473, 488 (9th Cir. 2018). Whether the work-product doctrine applies, "cannot be decided simply by looking at one motive that contributed to a document's preparation. The circumstances surrounding the documents preparation must also be considered." *Torf (In Re Grand Jury Subpoena),* 357 F.3d 900, 908 (9th Cir. 2003).

At its core, "the work-product doctrine shelters the mental processes of the attorney, providing it a privileged area within which he can analyze and prepare his client's case, <u>and protects both material prepared by agents for the attorneys as well as those prepared by the attorney himself</u>." *United States v. Sanmina Corp, & Subsidiaries*, 968 F.3d 1107, 1112 (9th Cir. 2020)(emphasis added). The doctrine is intensely practical and "the protection extend[ends] beyond work prepared by attorneys to work prepared by other people, such as investigators, working under the direction of attorneys." *Shenwick v. Twitter, Inc.,* 2019 U.S. Dist. LEXIS 75551, at *8 (N.D. Cal. 2019); *quoting United States v. Nobles*, 422 U.S. 225, 238 (1975). The work product privilege protection "continues even after the litigation is completed." *Lopez v. Vieira*, 719 F.Supp. 2d 1199, 1201 (E.D. Cal. 2010); *See also Memry Corp. v. Ky. Oil Tech., N.V.,* 2007 U.S. Dist. LEXIS 104031, at *7 (N.D. Cal. 2007)("work product protection 'endures after termination of proceedings for which the document was created.'")

Unlike the broader attorney-client privilege, "<u>[t]he protection stemming from the work product doctrine belongs to the professional, rather than the client</u>, and efforts to obtain disclosures of opinion work product should be evaluated with particular care." *Natural-Immunogenics Corp. v. Newport Trial Grp.,* 2018 U.S. Dist. LEXIS 228114, at *39 (C.D. Cal. 2018)(emphasis added); *citing Rhone-Poulenc Rorer Inc. v. Home Indem.*

*Co,* 32 F.3d 851, 866 (3rd Cir. 1994); *See also, Xcentric Ventures, LLC v. Borodkin*, 934 F. Supp. 2d 1125, 1146 (D. Az. 2013)("It is the attorney, though, who has standing to assert the work-product privilege."); *Bozzuto v. Cox*, 255 F.R.D. 673, 679 (C.D. Cal. 2009)("The holder of the work product immunity includes the attorney who prepared the work.").  Accordingly, any claim by the government that they have relied upon waivers by the alleged victim clients in order to review and use information and documents protected by Mr. Avenatti's work product privilege, is without merit.

The Supreme Court, in creating privileges, has oftentimes weighed the states' prior recognition of the relevant privilege in fashioning its decision to create a federal counterpart, "[t]he policy decisions of the states bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one" and "[b]ecause state legislatures are fully aware of the need to protect the integrity of the factfinding functions of their courts, the existence of a consensus among the States indicates that 'reason and experience' support recognition of the privilege." *Jaffee v. Redmond*, 518 U.S. 1, 13-14 (1996). California courts provide guidance for the expansive nature of the attorney-client work product doctrine.  Similar to its federal equivalent, the California attorney work-product doctrine "creates for the attorney a qualified privilege against discovery of general work product and an absolute privilege against disclosure of writings containing the attorney's impressions, conclusions, opinions, or legal theories." *State Comp. Insurance Fund v. Superior Court*, 91 Cal. App. 4th 1080, 1091 (2001). The attorney "is the exclusive holder of the privilege." *Id. See also, People v. Superior Court (Laff)*, 25 Cal. 4th 703 (2001)(the California Penal Code does not restrict a court's authority to adjudicate claims of privilege or work product raised by attorneys who are suspects).

## III.    LEGAL AND EVIDENTIARY ISSUES RAISED BY THE DEFENSE

### A. The Government's Discovery Obligations

Mr. Avenatti continues to objects to the government's deficient discovery disclosures. Mr. Avenatti again requests that the government provide assurances that it

18

has complied with its discovery obligations. Mr. Avenatti further asks that the prosecution comply with its discovery obligations by providing the Defendant with exculpatory, hand-written notes created by agents and later reduced to typed summaries. If the government is unwilling to provide the Defendant with a copy of the handwritten notes, the Defendant asks that the government provide the Court with a copy of the handwritten notes that correspond with the witness statements it has already lodged with the Court. The lodging of the notes would allow for the Court to review the notes, compare them to the typewritten summaries and determine if the prosecution has failed to provide exculpatory materials to the Defendant. Additionally, the Defendant asks that the government comply with its obligations under *Jencks* and Rule. 26.2.[1] The Defendant requests these materials in connection with all witnesses on its witness list.

The suppression of evidence favorable to an accused is itself sufficient to amount to a denial of due process. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The prosecution's suppression of evidence that is favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." *Id.* at 88. Under *Brady*, the prosecution is "trusted to turn over evidence to the defense because its interest is not that it shall win a case, but that justice shall be done." *United States v. Bundy*, 968 F.3d 1019, 1023 (9th Cir. 2020)(affirming the district court's dismissal of a twenty-one defendant obstruction case because the government flagrantly disregarded its *Brady* obligations by failing to disclose materials until several days into trial).

There are three *elements* to a *Brady* violation: (1) the evidence at issue must be favorable to the accused; (2) the evidence must have been suppressed by the state willfully or inadvertently; and (3) prejudice must have ensued. *Reis-Campos v. Biter*, 832 F.3d 968, 975 (9th Cir. 2016); *citing Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is favorable to the accused for *Brady* purposes if it is either

---

[1] The Defendant intends on filing a separate trial motion as it relates to 18 U.S.C. 3500, *Jencks v. United States*, and Rule 26.2 prior to the government's first witness taking the stand.

"exculpatory or impeaching," "advantageous to the defendant" or "would tend to call the government's case into doubt." *Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015); *citing Strickler, supra,* 527 U.S. at 281-82 (1999); *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013). The term "suppression" does not describe merely "overt or purposeful acts on the part of the prosecutor; sins of omission are equally within the Brady's scope." *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009); *citing Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002)(the terms "suppression," "withholding" and "failure to disclose" have the same meaning for *Brady* purposes). The prosecution has "a duty to learn of any exculpatory evidence known to others acting on the government's behalf. Because the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned." *Id.* at 909; *quoting United States v. Zuno-Acre*, 44 F.3d 1420, 1427 (9th Cir. 1997).

The prosecution's *Brady* obligations extend to exculpatory statements contained in handwritten notes taken by government agents during their interviews of government witnesses. Notes taken from the FBI or other law enforcement agencies during interviews with prospective government witnesses or with the accused "constitute potentially discoverable materials." *United States v. Harris*, 543 F.2d 1247, 1248 (9th Cir. 1976); *See also, United States v. Harrison*, 524 F.2d 421 (D.C. Cir. 1975). The disposal of prejudicial materials by the FBI amounts to a "usurpation of the judicial function" and the Ninth Circuit has made it very clear that "such original or rough interview notes must be preserved." *Id.* Handwritten notes may be used to impeach a witness and to showcase discrepancies between the notes and the typed summaries. The notes' value is not diminished where "the notes form the basis of a final report that the prosecution turns over to the defense." *United States v. Andrews*, 532 F.3d 900, 906 (D.C. Cir. 2008). The prosecutor is not relieved of his obligations under *Brady* if the notes are kept by an agent or other officers and never reviewed by the prosecutor. *Id. Citing United States v. Harrison*, 524 F.2d 421, 427 (D.C. Cir. 1975)

In *United States v. Serv. Deli*, 151 F.3d 938 (9th Cir. 1998), the Defendant was

tried and convicted of filing a false statement with the United States Defense Commission Agency. On appeal, the Defendant argued that the trial court erred by refusing to require the government to produce all of the agents' handwritten notes taken during interviews. Prior to denying the Defendant's request, the trial court reviewed the relevant handwritten notes and compared them to the summary of interview produced by the government and found that there was nothing in the notes that was "material to the matter at hand…" *Id.* at 943. The Ninth Circuit reviewed the relevant hand-written notes and determined there were discrepancies between the notes and the typewritten summaries. The court then determined, "the government violated the due process rights of defendant by failing to disclose material information contained in the … notes." *Id.* Defendant was granted a new trial. *Id.* at 944.

Other courts around the country have similarly agreed that handwritten notes taken during a witness interview may contain exculpatory evidence amounting to *Brady* material. *See United States v. Andrews*, 532 F.3d 900, 906 (D.C. Cir. 2008); *citing United States v. Harrison*, 524 F.2d 421, 427 (D.C. Cir. 1975)<u>("[i]t seems too plain for argument that rough notes from any witness interview could prove to be *Brady* material."(emphasis added))</u>; *United States v. Van Doren*, 2013 U.S. Dist. LEXIS 75120, at *4 (D. Ak. 2013)(if field notes made by government agents contain exculpatory statements, they would be required to be produced under *Brady v. Maryland*); *United States v. Mansker*, 240 F.Supp. 2d 902, 906-07(N.D. Iowa 2003)(trial court prohibited government witness from testifying due to the government's failure to turn over raw notes from a witness interview); *United States v. Giron*, 2017 U.S. Dist. LEXIS 207269 at *20-21 (D.N.D. 2017)(the government did not even attempt to argue that portions of raw notes were not required to be produced pursuant to *Brady/Giglio* obligations); *SEC v. Neil*, 2014 U.S. Dist. LEXIS 88223, at *14 (N.D. Cal. 2014)(Defendant was not entitled to the raw notes in an SEC case because the same rights afforded in a criminal matter did not extend to civil matter); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1228 (D. N.M. 2008)(an agent's rough interview notes may be discoverable under the requirements of *Brady*); *United States v. Van Doren*, 2013 U.S. Dist. LEXIS 75120, at

21

*4 (W.D. Ak. 2013)(field notes taken by government agents or witnesses must be produced if they contain exculpatory evidence); *United States v. Bolden*, 545 F.3d 609, 622-23 (8th Cir. 2008)(raw notes from agents should be produced to the defense pursuant to the prosecution's *Brady* obligations if the notes contain exculpatory statements).

### B. Request to Exclude Government Witnesses Not Produced by Way of its Witness List

On January 25, 2021, the Court continued the jury trial on Counts 1 through 10 from February 23, 2021 to July 13, 2021. [Dkt. 407]. The Court also set "the following dates and deadlines with respect to the trial on Counts 1 to 10 of the Indictment in this matter…" [Dkt. 407, p. 3]. The Court **ordered** the government to produce its "Government Witness List Disclosure" by the deadline of June 14, 2021. [Dkt. 407, p. 3]. The Court **ordered** the government to disclose Jencks Act Materials and Witness Statements by June 14, 2021. [Dkt. 407, p. 3].

The Defendant asks that any government witness not appearing on the witness list provided by the government on June 14, 2021 be excluded from trial. The law is clear that the district court is free to exclude government witnesses when the government violates a specific order and has no excuse for such delay. *See United States v. Talbot*, 51 F.3d 183, 187-88 (9th Cir. 1995)(upholding the district court's exclusion of government witness when the prosecution failed to meet the obligations of the local rules and the Court's order regarding its disclosure of its witness list); *See also, United States v. Grace*, 526 F.3d 499 (9th Cir. 2008)(holding that a district court may "require the government to disclose a final list of its proposed trial witnesses and has the authority to enforce such an order"); *citing United States v. Richter*, 488 F.2d 170, 173-74 (9th Cir. 1973)("district courts have the inherent power to 'order the government to divulge names of prospective witnesses.'")

On July 7, 2021, twenty-three days after the deadline had passed, and 6 days prior to the commencement of trial, the prosecution contacted undersigned counsel requesting that the Defendant stipulate to various issues in an effort to avoid the government's need

to call multiple witnesses.  The Defendant informed the government that he will not stipulate to the matters proposed by the government.  It is anticipated that the government will now attempt to call at least three witnesses who were never previously identified before July 7, 2021 and were not listed on the government's witness list (and for which no 3500 material has been provided).  This is improper.

Since the inception of this case, the government has demanded strict compliance from the Defendant in connection with the Court's orders and the Defendant expects the same from the prosecution. The government has had the Court's order since January and has had sufficient time to determine the witnesses it requires for trial. There is no reasonable excuse for not complying with the Court's Order. Accordingly, the Defendant asks that the Court enforce its January 25, 2021 order and exclude any government witnesses that were not listed on the government's June 14 witness list.

## IV.    CONCLUSION

Mr. Avenatti respectfully reserves the right to lodge additional objections to the government's admission of evidence. As Mr. Avenatti's review of the government exhibits continues, the Defendant expects to lodge additional objections or legal memoranda with the Court.

Dated: July 12, 2021                        Respectfully submitted,

/s/ H. Dean Steward
H. DEAN STEWARD

Attorney for Defendant
MICHAEL JOHN AVENATTI

23

## CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California 92660.  I am not a party to the above-entitled action.  I have caused, on July 12, 2021, service of the:

DEFENDANT'S TRIAL MEMORANDUM

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 12, 2021

/s/ H. Dean Steward

H. Dean Steward