1          **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

3         **HONORABLE JAMES V. SELNA, U.S. DISTRICT JUDGE**

4

5   UNITED STATES OF AMERICA,              )
                                           )
6                   Plaintiff,             )   <u>**CERTIFIED TRANSCRIPT**</u>
                                           )
7          vs.                             )   Case No.
                                           )   SACR-19-00061-JVS
8   MICHAEL JOHN AVENATTI,                 )
                                           )   **TRIAL DAY 8**
9                   Defendant.             )   **VOLUME 2**
    _____)

10

11

12

13

14
            REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                 FRIDAY, JULY 23, 2021
16
                       1:31 P.M.
17
                 SANTA ANA, CALIFORNIA
18

19

20

21

22

23   _____

              **DEBBIE HINO-SPAAN, CSR 7953, CRR**
24           FEDERAL OFFICIAL COURT REPORTER
            411 WEST 4TH STREET, ROOM 1-053
25               SANTA ANA, CA 92701
                 dhinospaan@yahoo.com


**UNITED STATES DISTRICT COURT**

1          **APPEARANCES OF COUNSEL:**

2

3     **FOR THE PLAINTIFF:**

4              NICOLA T. HANNA
               United States Attorney
5              BY:  BRETT SAGEL
                    Assistant United States Attorney
6              411 West 4th Street
               Suite 8000
7              Santa Ana, California 92701
               714-338-3598
8              brett.sagel@usdoj.gov

9              NICOLA T. HANNA
               United States Attorney
10             BY:  ALEXANDER WYMAN
                    Assistant United States Attorney
11             312 North Spring Street
               Suite 1100
12             Los Angeles, California 90012
               213-894-2435
13             alex.wyman@usdoj.gov

14    **FOR THE DEFENDANT IN PRO SE:**

15             MICHAEL JOHN AVENATTI, ESQ.

16

17    **STANDBY COUNSEL FOR MR. AVENATTI:**

               H. DEAN STEWARD LAW OFFICES
18             BY:  H. DEAN STEWARD, ESQ.
               17 Corporate Plaza
19             Suite 254
               Newport Beach, California 92660
20             949-481-4900
               deansteward7777@gmail.com

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**I N D E X**

**WITNESSES**                                                          **PAGE**

**ELSA GUERRERO, CALLED BY THE GOVERNMENT**
    Cross-Examination by Mr. Avenatti                          5
    Redirect Examination Mr. Wyman                             9

**THOMAS GOEDERS, CALLED BY THE GOVERNMENT**
    Direct Examination by Mr. Wyman                           31
    Cross-Examination by Mr. Avenatti                         61

**EXHIBITS**

| EXHIBIT | | IN EVIDENCE | WITHDRAWN OR REJECTED |
|---|---|---|---|
| 1005 | Document | 11 | |
| 1006 | Document | 11 | |
| 408 | Exhibit 60 from the 3/22/2019 Avenatti Judgment Debtor Examination | 17 | |
| 76 | 5/1/2017 e-mail from Goeders with Offer by Johnson to Purchase Property | 34 | |
| 77 | 5/3/2017 e-mail from Avenatti to Goeders re Funds Letter - Geoff Johnson | 34 | |
| 79 | 5/31/2017 Purchase Agreement for the G. Johnson Trust to Purchase Parthenia Property | 40 | |
| 80 | 8/21/2017 e-mail from Goeders to Avenatti re Parthenia | 44 | |

**UNITED STATES DISTRICT COURT**

1

**I N D E X**
(Continued:)

2

3

**EXHIBITS**

4

| EXHIBIT | | IN EVIDENCE | WITHDRAWN OR REJECTED |
|---------|---|-------------|------------------------|
| 81 | 8/31/2017 e-mail from Goeders to Avenatti re Parthenia - possible solution | 47 | |
| 84 | 9/27/2017 e-mail from Avenatti to Goeders with Escrow Addendum | 49 | |
| 90 | 10/13/2017 e-mail from Yeghishian to Avenatti and others re 21923 Parthenia Street - New Johnson LOI | 51 | |
| 89 | 10/13/2017 e-mail from Avenatti to Goeders Re 21923 Parthenia Street – New LOI | 54 | |
| 92 | 10/13/2017 e-mail from Yeghishian to Avenatti re 21923 Parthenia Street - New LOI | 55 | |
| 96 | 10/16/2017 e-mail from Yeghishian to Avenatti re 21923 Parthenia Street - New LOI | 57 | |
| 97 | 10/18/2017 e-mail from Yeghishian to Avenatti re Parthenia | 59 | |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED  STATES  DISTRICT  COURT**

|       |                                                             |
|-------|-------------------------------------------------------------|
| 1     | **SANTA ANA, CALIFORNIA; FRIDAY, JULY 23, 2021**            |
| 2     | **1:31 P.M.**                                               |
| 3     | **- - -**                                                   |
| 4     |                                                             |

01:31PM 5      **(In the presence of the jury.)**

6              THE COURT:  Mr. Avenatti.

7              MR. AVENATTI:  Would you like me to begin,

8      Your Honor?

9              THE COURT:  Please.

01:31PM 10             <u>**ELSA GUERRERO, WITNESS, RESUMED THE STAND**</u>

11                     **CROSS-EXAMINATION (resumed)**

12     BY MR. AVENATTI:

13     Q    Good afternoon, Ms. Guerrero.

14     A    Good afternoon.

01:32PM 15     Q    Right before the lunch break we were talking about what's

16     been marked as Defense Exhibit 1006.  Do you recall that?

17     A    Yes.

18     Q    And I was asking you about a particular page within

19     Exhibit 1006, the second-to-the-last page, screenshot.

01:32PM 20     A    Yes.

21     Q    Do you see that?

22     A    Yes.

23     Q    And I believe that you said that these were your notes at

24     the bottom; is that right?

01:32PM 25     A    Yes.

|     |     |
| --- | --- |
| 1 | Q    And these notes reflect the contact that you had with |
| 2 | Mr. Johnson in April of 2019; is that correct? |
| 3 | A    It was May 16, 2019. |
| 4 | Q    And could you please read to the jury what you typed as |
| 01:32PM 5 | you spoke to Mr. Johnson -- well, strike that. |
| 6 | This discussion also took place under penalty of |
| 7 | perjury; correct? |
| 8 | A    Correct. |
| 9 | Q    Could you please tell the jury what Mr. Johnson told you |
| 01:33PM 10 | under penalty of perjury at that time. |
| 11 | A    So my notes are: |
| 12 | "Contacted Mr. Johnson via phone to attempt |
| 13 | to reinstate benefits.  In April of 2019, |
| 14 | Mr. Johnson received cash gifts in the amount of |
| 01:33PM 15 | 28,700 total.  His alleged current balance is |
| 16 | 5,415" -- I believe.  That was a typo -- |
| 17 | "Mr. Johnson stated he used the money for his |
| 18 | ordinary living expenses and gambled away $15,000. |
| 19 | Once his resources are under 2,000, he will provide |
| 01:33PM 20 | proof of spend-down. |
| 21 | "Mr. Johnson also mentioned that he would |
| 22 | receive cash deposits of 1,900 each month into his |
| 23 | bank account from his former attorney, Michael |
| 24 | Avenatti.  The last deposit was received in March |
| 01:34PM 25 | of 2019." |

```
  1   Q     And because of that statement from Mr. Johnson, that is
  2   why he no longer had SSI benefits; right?
  3   A     That is why I could not reinstate his benefits in May of
  4   2019.
01:34PM 5   Q     Because he had received 20- -- is it 8,000?
  6   A     Yeah, 28,700.
  7   Q     28,700 in gifts.  And he told you he had gambled away
  8   $15,000; correct?
  9   A     So the reason being that I was unable to reinstate
01:34PM 10   benefits is because his resources were over $2,000 at the time
 11   when I interviewed him in May of 2019.
 12   Q     When you met with the Government in preparing to testify
 13   here today, did Mr. Wyman or Mr. Sagel or Mr. -- Special
 14   Agent Carlos or Special Agent Kim or Special Agent Roberson,
01:35PM 15   did any of those five gentlemen ask you about this discussion
 16   that you had under oath with Mr. Johnson?
 17   A     Yes.
 18   Q     Who asked you about it?
 19   A     Mr. Wyman.
01:35PM 20   Q     And that was before you took the stand here today?
 21   A     Yes.
 22   Q     He asked you about the screenshot?
 23   A     No, not about the screenshot.  About reinstating benefits.
 24   Q     Did you have a discussion about what Mr. Johnson had told
01:36PM 25   you?
```

```
 1   A     Yes.
 2   Q     Is the reason why he didn't mention that under direct
 3   examination by Mr. Wyman -- is the reason because you were
 4   never asked?
 5             MR. WYMAN:  Objection.  Calls for speculation.
 6             THE COURT:  Overruled.
 7             THE WITNESS:  I was being asked general questions
 8   of --
 9   Q     BY MR. AVENATTI:  So I am correct that the reason why you
10   didn't mention that detail is because Mr. Wyman never asked you
11   about it; isn't that true?
12   A     Possibly because he was unaware of the statement.
13   Q     Look at the top of Document 1006.  Do you see the top of
14   the document?
15   A     Yes.
16   Q     It's an e-mail from Mr. Wyman; right?
17   A     Yes.
18   Q     To Special Agent Roberson; right?
19   A     Correct.
20   Q     With a copy to Mr. Sagel; right?
21   A     Yes.
22   Q     And a copy to Special Agent Carlos; right?
23   A     Yes.
24   Q     And a copy to Special Agent Kim; right?
25   A     Yes.
```

|        |    |                                                               |
|--------|----|---------------------------------------------------------------|
|        | 1  | Q    And it's dated July 12th, 2021, isn't it?                |
|        | 2  | A    Yes.                                                     |
|        | 3  | Q    And the screenshot's attached; right?                    |
|        | 4  | A    Yes.                                                     |
| 01:38PM| 5  | Q    And you were never asked about it on direct, were you?   |
|        | 6  | A    No.                                                      |
|        | 7  |          MR. AVENATTI:  Nothing further.                      |
|        | 8  |          THE COURT:  Mr. Wyman?                               |
|        | 9  |          MR. WYMAN:  Thank you, Your Honor.                   |
| 01:38PM| 10 |               **REDIRECT EXAMINATION**                        |
|        | 11 | BY MR. WYMAN:                                                 |
|        | 12 | Q    Good afternoon, Ms. Guerrero.                            |
|        | 13 | A    Good afternoon.                                          |
|        | 14 | Q    Do you still have Defense Exhibit 1002 in front of you,  |
| 01:38PM| 15 | the screenshot?                                               |
|        | 16 | A    1006?                                                    |
|        | 17 | Q    I'm sorry, 1002, the screenshots that the defendant was  |
|        | 18 | just asking you about.                                        |
|        | 19 |          MR. AVENATTI:  I never used 1002 because Your Honor  |
| 01:38PM| 20 | wanted me to use 1006.                                        |
|        | 21 |          MR. WYMAN:  I apologize.  That's correct.  I'm       |
|        | 22 | referring to the -- I believe it's the last page of 1006.    |
|        | 23 | Thank you.                                                    |
|        | 24 |          THE WITNESS:  Okay.  Yes.                            |
| 01:39PM| 25 | Q    BY MR. WYMAN:  And this is a conversation from -- did you |

| | | |
|---|---|---|
| | 1 | say May of 2019? |
| | 2 | A     This screenshot where it says "Home ownership and rental |
| | 3 | liability," or which one? |
| | 4 | Q     The second-to-the-last page. |
| 01:39PM | 5 | A     So, yes, this is a conversation that I had with |
| | 6 | Mr. Johnson in May of 2019. |
| | 7 | Q     And it says in there at the second paragraph, "His former |
| | 8 | attorney, Michael Avenatti."  Do you see that? |
| | 9 | A     Yes. |
| 01:39PM | 10 | Q     Is that your understanding at that time, that Mr. Johnson |
| | 11 | was no longer represented by the defendant? |
| | 12 | A     Correct. |
| | 13 | Q     You were asked a lot of questions on direct about the |
| | 14 | two defense -- I'm sorry, on cross about the two defense |
| 01:39PM | 15 | exhibits, Defense Exhibit 1005 and 1006.  And the defendant |
| | 16 | asked you to read certain portions of those documents; is that |
| | 17 | correct? |
| | 18 | A     That is correct. |
| | 19 | Q     Exhibit 1005, I think you said, is the summary that went |
| 01:40PM | 20 | with the letter that you sent in November 2018; is that right? |
| | 21 | A     Yes. |
| | 22 | Q     Is it a fair and accurate copy of the summary that went |
| | 23 | with that letter? |
| | 24 | A     Yes. |
| 01:40PM | 25 | MR. WYMAN:  Government moves into evidence Defense |

      1    Exhibit 1005, Your Honor.

      2           MR. AVENATTI:  No objection.

      3           THE COURT:  1005 will be received.

      4           MR. WYMAN:  Thank you.

01:40PM  5           **(Exhibit Number 1005 received.)**

      6           MR. WYMAN:  Unless there's an objection, the

      7    Government also moves into evidence Exhibit 1006.

      8           MR. AVENATTI:  No objection.

      9           THE COURT:  1006 will be received.

01:40PM 10           **(Exhibit Number 1006 received.)**

    11           MR. WYMAN:  Thank you.  No further questions.

    12           THE COURT:  Mr. Avenatti?

    13           MR. AVENATTI:  Ms. Guerrero, thank you.

    14           We'd like to reserve the opportunity to recall her,

01:41PM 15  Your Honor.

    16           THE COURT:  You'll be excused at this time, but

    17    you're subject to recall.

    18           THE WITNESS:  Thank you.

    19           THE COURT:  Thank you.

01:41PM 20           Would the Government call its next witness, please.

    21           MR. SAGEL:  At this time, Your Honor, the Government

    22    would like to read into evidence Exhibit 22.  And on this

    23    transcript, Your Honor, with the Court's permission, I would

    24    just read each role because it's not a deposition or

01:41PM 25  examination.  I would just say who's saying each part to the

```
 1    Court, if that's acceptable with the Court.

 2              THE COURT:  You may proceed.

 3              MR. AVENATTI:  Your Honor, just for the record, just

 4    re-lodging the prior objections that Your Honor has already

 5    ruled on.

 6              THE COURT:  So noted.

 7              MR. SAGEL:  Exhibit 22:

 8              "In the matter of Geoffrey Ernest Johnson,

 9         plaintiff, vs. Leroy Baca, et al., defendants, Case

10         Number CV 13-4496-MMM-(AJWX).  Reporter's

11         transcript of proceedings, Los Angeles, California,

12         Friday, November 7, 2014, at 10:00 a.m.

13              "For the plaintiff, telephonically, Eagan

14         Avenatti, by Michael J. Avenatti, Attorney At Law;

15         Carlos X. Colorado, Attorney At Law."

16              If it's okay with the Court, I'm going to skip the

17    addresses.

18              THE COURT:  That's fine.

19              MR. SAGEL:  "For the defendants, telephonically,

20         Hurrell Cantrall, by Thomas C. Hurrell, Attorney At

21         Law, Los Angeles, California, Friday, November 7,

22         2014, 10:00 a.m.

23              "THE CLERK:  Counsel, I'm going to call the

24         case and ask you to state your appearances.

25         CV 13-4496, Johnson vs. Baca, et al.
```

1        "Counsel, your appearances, please.

2        "MR. AVENATTI:  Michael Avenatti and Carlos

3   Colorado on behalf of the plaintiff.  Good morning.

4        "MR. HURRELL:  Good morning, Your Honor.  Tom

01:44PM 5   Hurrell for the defendants.

6        "THE COURT:  Counsel, good morning.  We

7   placed this matter on calendar this morning because

8   we were advised by the ADR department that counsel

9   wish to have a status conference with the Court

01:44PM 10   regarding a possible settlement in this case.

11        "MR. AVENATTI:  That is correct, Your Honor.

12   This is Michael Avenatti.  If I could update the

13   Court.

14        "THE COURT:  Yes.  Sure.

01:44PM 15        "MR. AVENATTI:  Okay.  Your Honor, for the

16   last week or two, we've been in active settlement

17   discussions involving a retired judge, Louis

18   Meisinger.  The good news is that the parties have

19   reached a tentative settlement relating to all

01:44PM 20   material matters with the exception of one material

21   matter, which is providing some angst for which

22   Mr. Hurrell and I decided yesterday that perhaps

23   the Court, based on Your Honor's experience, could

24   assist us with resolving.  And that one material

01:45PM 25   term is mainly when the settlement dollars are to

be paid to Mr. Johnson, who, as the Court knows, is

a paraplegic and is in need of the funds.

"So that is the purpose of the settlement

conference, to inform Your Honor of the status of

01:45PM   the settlement negotiations and to have a very

frank discussion with Your Honor as to how we might

be able to bridge the gap and have this trial be

continued, removed from the Court's docket, at

least immediate docket, so it will resolve this

01:45PM   case for all involved.

"THE COURT:  So what are the parties'

respective positions about this?

"MR. AVENATTI:  Your Honor, the respective

positions, and I'm sure Mr. Hurrell will correct me

01:45PM   if I'm wrong, is as follows:  Mr. Johnson would

like the monies paid within 60 days, namely, today

or Monday, so that he can utilize the money for his

living expenses and other needs.

"I understand that the County has some

01:46PM   difficulty, according to Mr. Hurrell, in getting a

settlement approved by the Board of Supervisors

that quickly -- that quickly.  But what we've asked

is, 'Well, if you can't do it within 60 days, when

can it be done?'  And thus far, the County's

01:46PM   position has been that they can't give us a

```
 1            definitive date as to when it will be done, which,
 2            obviously, puts us in a very difficult position;
 3            namely, I've never settled a case in my career
 4            where my side was to either pay money or receive
 5            money and there's no deadline by which that money
 6            is paid."
 7                  Skipping ahead to a different part of this
 8       transcript, Your Honor:
 9            "MR. AVENATTI:  Your Honor, I've appeared in
10            front of a number of federal judges around the
11            country, and I put you -- this is not gratuitous.
12            I think you have a considerable amount of power.
13            But in any event, Your Honor, the problem from our
14            perspective is we had the exact same reaction that
15            Your Honor did.  I mean, for us to wait six months
16            or even -- or perhaps quote, 'longer,' close quote,
17            for the Board of Supervisors to approve this, and I
18            don't know how much longer after that, in order to
19            actually get the settlement payment made to my
20            client, who is a paraplegic, is not acceptable.
21                  "Furthermore, it seems absolutely -- and I'm
22            going to use this word, but I think it's
23            appropriate -- silly and a complete waste of
24            judicial resources for us to proceed with a trial
25            in this case over this issue, especially in light
```

1          of how busy Your Honor's calendar is and the

2          magnitude of this case.

3              "So there's got to be something that can be

4          done here.  And perhaps, if there's an Order to

01:47PM 5      Show Cause or something that is issued by

6          Your Honor that can get someone's attention, I'm

7          highly confident that this case could be settled in

8          an expeditious manner.  I'd be very, very surprised

9          if upon receiving an appropriate order from

01:48PM 10     Your Honor, that does not happen.  I'd be shocked,

11         quite honestly.  I've been shocked before, but I

12         would be doubly shocked."

13             I don't know if Your Honor wants me to go over the

14     certificate.

01:48PM 15             THE COURT:  No.

16             MR. SAGEL:  At this time, Your Honor, the Government

17     would ask to read Exhibit 405 and move into evidence

18     Exhibit 408 under 9024 as a certified public record,

19     Your Honor.

01:49PM 20             THE COURT:  My exhibit book only goes to 380.

21             MR. SAGEL:  Should be Volume VII, which is 391 to

22     468.

23             THE COURT:  The exhibit number again, please.

24             MR. SAGEL:  405 is what we would be reading, and 408

01:49PM 25     is what we would be moving into evidence as a certified public

```
 1   record.
 2               THE COURT:  Okay.  405?
 3               MR. SAGEL:  408.
 4               THE COURT:  Proceed.
 5               MR. SAGEL:  Thank you, Your Honor.  At this time, if
 6   the Government could have --
 7               MR. AVENATTI:  Well, I'm sorry, Your Honor.  I'm
 8   going to object to 405 on hearsay grounds and the grounds
 9   already discussed with the Court that the Court has already
10   ruled on.
11               And then as it relates to 408, Your Honor, 408 is
12   already in evidence as Exhibit 37.
13               MR. SAGEL:  408, which is marked as Exhibit 60, is
14   the public record from this transcript, and the jury will be
15   able to compare what Mr. Avenatti was looking at when he was
16   testifying on March 22nd to what is Exhibit 37 in this case,
17   Your Honor.
18               THE COURT:  Proceed.
19               (Exhibit Number 408 received.)
20               MR. SAGEL:  Thank you.
21               At this time, if this is acceptable with Your Honor,
22   I would have an assistant United States attorney from my office
23   just read the other part of the transcript.  Bradley Marrett is
24   here to do that, if that's possible.
25               THE COURT:  Okay.
```

01:50PM (lines 5, 10, 15, 20)
01:51PM (line 25)

```
 1          Ladies and gentlemen, what you're going to hear is
 2   readings from a deposition.  Depositions are commonly held in
 3   civil cases by the way of initial fact-finding before trial.
 4   The witness comes to a lawyer's office, is sworn, there's a
 5   court reporter, and testimony is taken down.  It's testimony
 6   under oath.  To the extent possible, you're to treat that
 7   testimony as if it had been given here in court.
 8          MR. SAGEL:  And just for the record, I'm going to be
 9   reading it -- it's probably nuance, but it's a judgment debtor
10   exam rather than a deposition.
11          THE COURT:  Okay.
12          MR. AVENATTI:  Your Honor --
13          THE COURT:  It's the same thing.  It's got a
14   different name, but it's still -- the individual comes, is
15   sworn and gives testimony under oath -- treated as if it had
16   been given here.
17          MR. AVENATTI:  Your Honor, this exhibit does not
18   reflect the rulings of Your Honor relating to the portions of
19   the colloquy with the Court being excised.
20          THE COURT:  We'll just skip that.
21          MR. SAGEL:  I disagree with that statement,
22   Your Honor.  Any of those that are not relevant to the answers
23   given have been excised.
24          THE COURT:  Then proceed.
25          MR. SAGEL:  "In re Eagan Avenatti, LLP,
```

**UNITED STATES DISTRICT COURT**

1      debtor, Case Number 817-BK-11961CV, Debtor

2      Examination of Michael Avenatti, Esquire, Friday,

3      March 22nd, 2019, Los Angeles, California.

4         "Michael Avenatti, Esquire, was called as a

01:53PM 5      witness and having been first duly sworn, was

6      examined and testified as follows.

7         "Examination."

8         Do you want me to say the name of the attorney that

9  I'm reading from?

01:53PM 10         THE COURT:  That's fine.

11         MR. SAGEL:  (Reading:)

12         "BY MR. STOLPER:

13         "Q   Good morning, Mr. Avenatti.  You

14      understand you're under oath?

01:53PM 15         "A   Yes, sir.

16         "Q   What management role, if any, do you

17      believe Mr. Eagan had after February 16th, 2012, at

18      Eagan Avenatti?"

19         "MR. HODGES" -- the attorney for defendant

01:53PM 20      objects -- "Your Honor, this is argumentative.

21      This has now been asked four times.

22         "THE COURT:  Instead of focusing on

23      management, can we focus on something that would

24      have to do with control of assets, signatory bank

01:54PM 25      accounts, something that would be more direct at

```
 1        figuring out if Mr. Eagan was directing or in
 2        charge of money, since that's the focus of what
 3        we're doing here.
 4            "A   Mr. Eagan never directed any monies,
 5        Your Honor.  Okay.  He wasn't a signatory on any
 6        bank accounts.  They know that.  I don't -- I don't
 7        understand what we're doing.
 8            "MR. STOLPER:  I intend to ask Mr. Avenatti
 9        if the money he received from Brock (phonetic) is
10        money that belongs to Mr. Barela.
11            "A   No.
12            "Q   Mr. Avenatti, who is Geoffrey Johnson?
13            "A   Client at the firm.
14            "Q   When you say 'the firm,' you mean Eagan
15        Avenatti?
16            "A   No.  Not necessarily.
17            "Q   Who do you mean when you say 'a client
18        of the firm'?
19            "A   Client of me.  A client of Avenatti &
20        Associates and possibly a client of Eagan Avenatti.
21        I don't recall.
22            "Q   And did Mr. Johnson sign a retention
23        letter with Eagan Avenatti?
24            "A   I don't recall.
25            "Q   Did he sign a retention letter with any
```

|   |   |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 01:55PM | 5 |

1    other firm that you control?

2        "A   He may have.  I just don't remember.

3        "Q   You filed a case on behalf of

4    Mr. Johnson; correct?

5        "A   Yes.

6        "Q   And you filed that in federal court;

7    correct?

8        "A   Yes.

9        "Q   And Mr. Johnson was a -- I believe was a

10   paraplegic; is that correct?

11       "A   I believe so, yes.

12       "Q   Your lawsuit on behalf of Mr. Johnson

13   was against the County of Los Angeles; correct?

14       "A   I believe that's correct.

15       "Q   Now, ultimately, that's a case that you

16   settled for Mr. Johnson; correct?

17       "A   I don't believe so.  In its entirety,

18   no.

19       "Q   Mr. Avenatti, you were co-counsel with a

20   law firm of McNicholas & McNicholas on that case;

21   is that correct?

22       "A   I don't remember that.

23       "Q   Do you recall McNicholas & McNicholas

24   receiving payment for that case?

25       "A   I don't.

```
 1              "Q   This was a public settlement because it
 2         was done between the County of Los Angeles and
 3         Mr. Johnson; correct?
 4              "A   I don't think that's true, but it may
 5         have been.  I don't know."
 6              Exhibit 60, which is now Exhibit 408 -- Exhibit 60
 7    was marked and retained by counsel:
 8              "Q   "Well, I've got the settlement
 9         agreement, so let's take a look.  It's marked as
10         Exhibit 60.  There's no confidentiality provisions
11         in the settlement, as I read it.
12              "A   Yes.  This is not the entire settlement.
13              "Q   I understand this.  This settlement is
14         not confidential.
15              "A   No, it is confidential, actually.  What
16         I'm saying is it -- is that's not the entire
17         settlement agreement.
18              "Q   That's fine.
19              "Your Honor, I'm going to publish the
20         settlement agreement that I have that says it's the
21         entire settlement agreement, and it's -- and it is
22         signed by Mr. Avenatti.  It has no confidentiality
23         clause.
24              "Your Honor, the settlement -- portions of
25         the settlement were confidential.  That's not the
```

01:56PM  5

01:56PM 10

01:56PM 15

01:56PM 20

01:57PM 25

1      entire settlement agreement.

2          "THE COURT:  This is the settlement agreement

3      with the County, and that's not confidential;

4      right?  So you're --

01:57PM  5          "No, I believe it is confidential,

6      Your Honor.  And without having the ability to

7      review my documents, then I -- then I would ask

8      that this be handled in a closed-door session, just

9      like everything else.

01:57PM 10          "THE COURT:  Well, in the Court's experience,

11      the County typically would not enter into

12      confidential settlement agreements.

13          "THE WITNESS:  Your Honor, to be clear,

14      Mr. Frank was not -- he didn't even work on the

01:57PM 15      case.  So I'm just telling you that I believe that

16      the terms of the settlement are confidential, and

17      out of abundance of caution, we ought to handle it

18      like we've done the other settlement agreements and

19      do it in a closed-door session.

01:57PM 20          "THE COURT:  What basis do you have when the

21      terms of the settlement are in Mr. Stolper's hands

22      and they don't include a confidentiality provision?

23          "THE WITNESS:  Because I don't believe those

24      are the entirety of the terms of the settlement,

01:58PM 25      Your Honor.  I believe that there is a side letter

1      or further document that constitutes the

2      confidential nature of the settlement.  And so out

3      of an abundance of caution, it should be handled in

4      a closed-door proceeding just like the other

01:58PM 5   settlements were.

6          "Q   Did you sign the settlement agreement in

7      the course of the representation of Mr. Johnson?

8          "A   No.  If I'm understanding your question.

9          "Q   Mr. Avenatti, this says -- this document

01:58PM 10  is entitled "Settlement Agreement and Release of

11     All Claims"; correct?

12         "A   Sir, the document is titled whatever it

13     is.

14         "Q   Okay.  And you signed this document, did

01:58PM 15  you not, sir?

16         "A   Sir, I don't know where this document

17     came from.  And so I don't -- I don't know on the

18     preceding pages whether it's accurate or not, okay?

19     I saw the signature page but I don't know what the

01:58PM 20  other pages are that go with it.

21         "Q   Take a look.

22         "A   Well, sir, you can -- yeah.  Yeah.  I

23     don't -- I don't believe this is an accurate copy

24     of the settlement agreement.

01:59PM 25         "Q   What's inaccurate about it?

```
 1              "A   My recollection is that the settlement
 2         agreement is not that document.
 3              "Q   Okay.  Well, do you recall receiving
 4         $4 million from the County of Los Angeles as
 5         payment for the settlement regarding -- relating to
 6         Geoffrey Johnson?
 7              "A   No.
 8              "Q   So you don't think you got that money?
 9              "A   Sir, I don't have an independent
10         recollection of it.
11              "Q   Mr. Avenatti, you had an Eagan
12         Avenatti -- you had a -- Eagan Avenatti had a
13         client trust account at California Bank & Trust in
14         2015; correct?
15              "A   Yes.
16              "Q   And you can see the deposit of
17         $4 million on January 29, 2015.  That's the
18         $4 million related to the check we just saw;
19         correct, sir?
20              "A   No.
21              "Q   That's not related to that check?
22              "A   Nope.
23              "Q   How can you be so sure?
24              "A   Because I know for a fact that it's not.
25              "Q   How can you be so sure?
```

01:59PM  5
01:59PM 10
01:59PM 15
02:00PM 20
02:00PM 25

UNITED STATES DISTRICT COURT

1          "A    That's my best recollection.

2          "Q    MR. Avenatti, did you steal

3     Mr. Johnson's money?

4          "THE COURT:  It's a yes-or-no question.

02:00PM  5          "THE WITNESS:  Absolutely not.

6          "THE COURT:  Okay.

7          "Q    Mr. Avenatti, isn't it true that

8     beginning in July of 2015, rather than paying

9     Mr. Johnson his share of the $4 million that he was

02:00PM 10     entitled to, instead you've been doling out small

11     payments each month to him; isn't that true?

12          "A    That's absolutely false.

13          "Q    Isn't it true since July of 2015, you

14     have been sending checks or making payments to

02:00PM 15     Mr. Johnson in the amount of $1,900 per month?

16          "A    Sir, I -- I disagree with the predicate

17     of your question entirely.  And it's outrageous.

18          "Q    How about this?

19          "A    And -- wait a minute.  Wait.

02:01PM 20          "THE COURT:  Let's get an answer.  The

21     answer -- let's get a -- the answer [sic] was

22     simply, have you been making payments, yes or no?

23          "THE WITNESS:  Oh, from time to time he has

24     received payments.

02:01PM 25          "Q    And by -- from time to time, you mean

1       twice a month; right, sir?

2           "A   No.

3           "Q   Generally, it's twice a month; right?

4           "A   No.

02:01PM 5   "Q   Sure.  This is a -- I believe it's a

6       September 2015 check to Geoffrey Johnson.  Was this

7       also signed -- does this also appear to be signed

8       by Judy Regnier?

9           "A   I think so.

02:01PM 10  "Q   And you continued to make bimonthly

11      payments to Mr. Johnson in 2016, 2017, 2018;

12      correct?

13          "A   There's been a lot of payments made to

14      Mr. Johnson over the last four years, I think, five

02:01PM 15  years, including payments that predate these

16      payments.  But you don't seem interested in those.

17          "Q   Just a couple more questions on

18      Mr. Johnson.  Does Eagan Avenatti have any future

19      obligation to make payments to Mr. Johnson?

02:02PM 20  "Objection.  Legal conclusion.

21          "THE WITNESS:  I -- I don't know.

22          "THE COURT:  I think he's asking if you know.

23      Are there any -- are there assets of Eagan Avenatti

24      that are needing to be or going to be paid out in

02:02PM 25  the future to Mr. Johnson?

1              "THE WITNESS:  I -- I don't know.

2              "Q   Did you ever make a lump sum payment to

3       Mr. Johnson that reflects the amount he was due out

4       of the $4 million settlement besides these $1,900

02:02PM  5       monthly payments you've been sending him?

6              "A   Without looking at the documents, I

7       don't recall.  I'm sure we did.

8              "Q   Do you recall which account it came out

9       of?

02:02PM 10             "A   Sir, I don't.  Without looking at the

11       settlement documents, the structure, the settlement

12       documents, the structure documents, the accounting

13       records, I can't just -- I can't just...

14             "Q   I'm sorry, what are the structure

02:03PM 15       documents?

16             "A   I'm sorry?

17             "Q   You said 'structure documents.'  What

18       are you referring to?

19             "A   The same documents I mentioned earlier.

02:03PM 20             "Q   I'm sorry.  I don't recall asking or

21       hearing about what are structure.  Is there a

22       structured settlement?

23             "A   Sir?

24             "Q   For this counsel?

02:03PM 25             "A   Sir.  I believe that there may be.

1       There was trust documents.  There's a bunch

2       documents relating to this and I have got to have

3       documents in order to accurately answer the

4       question.

02:03PM 5           "Q   Mr. Avenatti, are you paying a

6       structured settlement out to Mr. -- sorry, are you

7       paying a structured settlement out to Mr. Johnson?

8           "A   No.

9           "Q   What is the stream of payments for?

02:03PM 10          "A   That's privileged and I'm not going to

11      answer that question.

12          "Q   Okay.

13          "THE COURT:  How would that reveal the nature

14      of attorney-client communications?

02:03PM 15          "THE WITNESS:  Because it reveals the nature

16      of an issue that Mr. Johnson has that he has sought

17      legal counsel over, and it relates to that issue,

18      Your Honor.

19          "THE COURT:  So are you paying him in

02:04PM 20      connection with a matter in which he has retained

21      you?

22          "THE WITNESS:  Yes.

23          "THE COURT:  That's collateral.  So this is

24      money that was coming out of Eagan Avenatti bank

02:04PM 25      account.  It's central to the judgment debtor exam,

```
 1            and the explanation that is going out of the
 2            account because there's an attorney-client
 3            relationship doesn't explain why money is going
 4            from the attorney to the client.  So the rational
02:04PM  5   for the payment does not appear privileged to the
 6            Court.
 7                "THE WITNESS:  It's an advance on future
 8            settlement monies, Your Honor.
 9                "Q   And Michelle Phan, like Mr. Barela, has
02:04PM 10   accused you of stealing in her case $4 million.  Is
11            that correct?
12                "A   That's absolutely false.  And again, I
13            think this is outrageous."
14                MR. SAGEL:  Thank you, Your Honor.  Could we publish
02:05PM 15   Exhibit 408, real briefly, to show the document?
16                THE COURT:  You may.
17                MR. AVENATTI:  Your Honor, I didn't hear the answer.
18                THE COURT:  Yes.
19                MR. SAGEL:  Page 2, please.  And page 4 with the
02:05PM 20   signatures, please.  Thank you.
21                MR. WYMAN:  Your Honor, we're prepared to call our
22            next witness.
23                THE COURT:  Very good.
24                MR. WYMAN:  United States calls Tom Goeders.
02:06PM 25                THE COURTROOM DEPUTY:  Please stand behind the court
```

```
 1    reporter and raise your right hand.
 2              THOMAS GOEDERS, GOVERNMENT WITNESS, WAS SWORN
 3              THE COURTROOM DEPUTY:  If you'll be seated, please.
 4    And if you'll please state and spell your first and last name.
 5              THE WITNESS:  Thomas Goeders, T-h-o-m-a-s,
 6    G-o-e-d-e-r-s.
 7              THE COURTROOM DEPUTY:  Thank you.
 8                          DIRECT EXAMINATION
 9    BY MR. WYMAN:
10    Q    Good afternoon, Mr. Goeders.  Where do you live?
11    A    Sun Valley, California.
12    Q    What do you do for work?
13    A    I'm a real estate agent, and I also service medical
14    equipment.
15    Q    Were you a practicing real estate agent in 2017?
16    A    Yes, I was.
17    Q    Do you know the defendant in this case, Michael Avenatti?
18    A    Yes.
19    Q    At some point in time, did the defendant ask for your
20    help as a real estate agent in finding a house for one of his
21    clients?
22    A    Yes.
23    Q    Approximately when was that?
24    A    Approximately April of 2017.
25    Q    What was the name of his client?
```

1    A      Geoffrey Johnson.

2    Q      What did the defendant tell you about Mr. Johnson when he

3    first reached out to you?

4    A      He explained that he had won a settlement with L.A. County

02:08PM 5    and that he wanted to purchase a house.  It was going to be an

6    all-cash purchase.

7    Q      When you first spoke to the defendant, did he say

8    anything to you about a special needs trust?

9    A      No.

02:08PM 10   Q      Did he say anything at that time about Mr. Johnson

11   receiving periodic payments from that settlement with the L.A.

12   County?

13   A      No.

14   Q      Did he say anything about waiting for approval by the

02:08PM 15   County on anything?

16   A      No.

17   Q      Did he say anything about needing a loan for the house?

18   A      No.

19   Q      And based on that conversation, I think you said you

02:08PM 20   expected it to be an all-cash offer?

21   A      That's right.

22   Q      After this conversation with the defendant, did you meet

23   with Mr. Johnson?

24   A      I did.

02:08PM 25   Q      What did you and Mr. Johnson do?

1    A    We looked at potential homes for him to purchase.

2    Q    What kind of a house was Mr. Johnson looking for?

3    A    Well, I don't recall the number of bedrooms, bathrooms,

4    but we were looking for a home that had something that would

02:09PM 5    suit his needs; wider hallways, wider doorways, would allow

6    movement for a wheelchair, larger bathrooms.

7    Q    Did you end up putting any offers on a house?

8    A    Yes, we did.

9    Q    Did you help Mr. Johnson put an offer on a house on

02:09PM 10   Hamlin Street in Lake Balboa?

11   A    Yes.

12   Q    When you submitted that offer, did you send any documents

13   to the seller?

14   A    A purchase contract and a letter on Mr. Avenatti's firm's

02:10PM 15   letterhead stating that the cash was available for the

16   purchase.

17   Q    The purchase contract you referred to, did you have to

18   fill that out?

19   A    Yes.

02:10PM 20   Q    And did you fill it out with information about the buyer?

21   A    Yes.

22   Q    Where did that information come from?

23   A    Mr. Avenatti.

24   Q    Did you send those documents to the seller by e-mail?

02:10PM 25   A    To the listing agent by e-mail, yes.

|      |   |                                                                   |
|------|---|-------------------------------------------------------------------|
|      | 1 | Q     I'm sorry, the listing agent.                               |

```
            1   Q     I'm sorry, the listing agent.

            2         Can you please take a look in the binder, Volume I,

            3   behind you, at Exhibits 76 and 77.

            4   A     Volume I?

02:10PM     5   Q     Yes.

            6   A     The exhibit numbers again were?

            7   Q     76 and 77.

            8   A     Okay.

            9   Q     Do you recognize these documents?

02:11PM    10   A     Yes.

           11   Q     Are these fair and accurate copies of the e-mails that

           12   you sent to the listing agent?

           13   A     Yes.

           14         MR. WYMAN:  Your Honor, the Government moves to

02:11PM    15   admit Exhibits 76 and 77.

           16         MR. AVENATTI:  Objection, Your Honor.  Hearsay.

           17         MR. WYMAN:  May I be heard, Your Honor?

           18         THE COURT:  Objection is overruled.  76 and 77 will

           19   be received.

02:11PM    20         (Exhibit Numbers 76 and 77 received.)

           21         MR. WYMAN:  Thank you, Your Honor.

           22   Q     Let's start with Exhibit 76.  If you could please pull up

           23   the top of page 1.  This appears to be an e-mail from you on

           24   May 1st of 2017; is that right?

02:12PM    25   A     Yes.
```

```
 1   Q    And is that the listing agent you're referring to, Louis
 2   at Prime Partners?
 3   A    Yes.
 4   Q    Is this the offer -- are you e-mailing here the purchase
 5   contract that you referred to?
 6   A    Yes.
 7            MR. WYMAN:  If you could please blow up the first
 8   paragraph, first full paragraph.
 9   Q    You say:  "There aren't too many houses that fit his
10   needs."
11            Is that what you're referring to with the wider
12   hallways?
13   A    Correct.
14   Q    And then do you see a paragraph 2 below that, starting
15   with "he will be buying"?
16   A    Yes.
17   Q    Can you please read that paragraph to the jury.
18   A    "He will be buying in a trust, all cash.  His attorney is
19   signing as special agent for the trust."
20   Q    And then two paragraphs below that there's a paragraph
21   that starts with "he has received."  Can you please read that
22   paragraph.
23   A    "He has received a substantial settlement.  Proof of funds
24   will be coming shortly."
25   Q    These statements you made about a trust, all cash, and
```

1  the substantial settlement, where did that information come

2  from?

3  A    Mr. Avenatti.

4  Q    If you could please go to page 2 now.  Is this the

02:13PM  5  attachment to the e-mail?

6  A    Yes.

7  Q    Did you fill out this attachment?

8  A    Yes.

9  Q    Can you please go to page 4 in the Exhibit.  In the

02:13PM  10  middle there, do you see that there are digital signatures?

11  A    Yes.

12  Q    Whose name is digitally signed there as the buyer?

13  A    Michael Avenatti.

14  Q    And next to his digital signature, what does it say?

02:14PM  15  A    "G. Johnson Trust or assignee, Michael J. Avenatti."

16  Q    On the top of the next page, which is page 5 of the

17  exhibit, under paragraph 1, "Offer," who does it say this is an

18  offer from?

19  A    "G. Johnson Trust or assignee, Michael J. Avenatti,

02:14PM  20  special manager."

21            MR. WYMAN:  And lastly, if we can please pull up

22  page 17.

23  Q    Who is that a picture of?

24  A    Geoffrey Johnson.

02:15PM  25            MR. WYMAN:  If we could return now to page 1.

**UNITED STATES DISTRICT COURT**

|     |     |                                                                      |
|-----|-----|----------------------------------------------------------------------|
| 1   | Q   | You said in this e-mail that proof of funds will be                  |
| 2   |     | coming shortly; is that right?                                       |
| 3   | A   | Correct.                                                             |
| 4   | Q   | Did you follow up with the listing agent to provide that             |
| 02:15PM 5 |  | proof of funds?                                                     |
| 6   | A   | I did.                                                               |
| 7   |     | MR. WYMAN:  Let's turn to Exhibit 77 now, please.                    |
| 8   | Q   | Is this the proof of funds that you're referring to?                 |
| 9   | A   | Yes.                                                                 |
| 02:15PM 10 | Q | Focusing on the e-mail -- the original e-mail, it looks           |
| 11  |     | like you received an e-mail from the defendant on May 3rd of         |
| 12  |     | 2017; is that right?                                                 |
| 13  | A   | Yes.                                                                 |
| 14  | Q   | And then you forwarded it to the listing agent?                      |
| 02:15PM 15 | A | Yes.                                                               |
| 16  | Q   | Is there an attachment to this e-mail?                               |
| 17  | A   | Yes.                                                                 |
| 18  |     | MR. WYMAN:  If we can please go to page 2.                           |
| 19  | Q   | Is this the attachment?                                              |
| 02:15PM 20 | A | Yes.                                                               |
| 21  | Q   | The subject line or the "re" line says:  "Confirmation of            |
| 22  |     | funds, 17330 Hamlin Street, Lake Balboa."                            |
| 23  |     | Is that the address of the house that you were                       |
| 24  |     | putting an offer on?                                                 |
| 02:16PM 25 | A | Yes.                                                               |

```
  1    Q    Can you please read the second paragraph, beginning with
  2    "this letter."
  3    A    "This letter is to confirm Mr. Johnson's ability
  4         to purchase the property on an all-cash basis with
02:16PM 5       trust funds resulting from a settlement reached with
  6         the county of Los Angeles in a matter in which we
  7         represent him."
  8    Q    Is that information consistent with what the defendant
  9    told you when you first spoke to him?
02:16PM 10   A    Yes.
 11    Q    In the context of a home purchase, what does escrow mean?
 12    A    Well, escrow period is the amount of time from the
 13    beginning of escrow to close of escrow recorded in L.A. County.
 14    Q    And what happens at the end of an escrow period?
02:17PM 15   A    Any required funds, cash or loan, are sent into escrow,
 16    and then the closing gets recorded at L.A. County.
 17    Q    So the buyer doesn't have to send all the funds until the
 18    end of escrow?
 19    A    3 percent of the funds are sent within the first three
02:17PM 20   business days of an escrow.  Any remaining funds are typically
 21    within the last week.
 22    Q    And that's usually the vast majority; is that fair?
 23    A    That's right.
 24    Q    Based on your experience as a real estate agent, what
02:17PM 25   would you say is a standard length for an escrow period?
```

```
 1   A    Most common, 30 to 45 days.
 2   Q    And who determines the length of the escrow period in a
 3   given transaction?
 4   A    It's negotiated between buyer and seller.
 5   Q    In connection with making this offer on the Hamlin house,
 6   did you have a conversation with Mr. Johnson about what kind of
 7   escrow period he wanted?
 8   A    Yes.
 9   Q    And what did he say?
10   A    He requested 30 days or less.
11   Q    Did you discuss that with the defendant?
12   A    Yes.
13   Q    What did the defendant say in response?
14   A    Mr. Avenatti preferred a 60-day escrow.
15   Q    Did he have any reaction to you discussing the escrow
16   period with Mr. Johnson?
17             MR. AVENATTI:  Leading.
18             THE COURT:  Overruled.
19             THE WITNESS:  Yes.  He was seemingly unhappy with me
20   and asked me not to discuss any more business deals -- business
21   dealings related to the transaction with Mr. Johnson.
22   Q    BY MR. WYMAN:  Was the -- was your offer on the Hamlin
23   house accepted by the seller?
24   A    No.
25   Q    Did you ultimately submit another offer and actually
```

02:17PM (line 5)
02:18PM (line 10)
02:18PM (line 15)
02:18PM (line 20)
02:19PM (line 25)

```
 1    enter escrow on a house located on Parthenia Street in
 2    West Hills?
 3    A    Yes.
 4    Q    As part of entering escrow, did you and the listing agent
02:19PM  5    and the buyer and the seller sign a contract?
 6    A    Yes.
 7    Q    As with the other -- the purchase contract that you
 8    filled out in Exhibit 76, did you provide certain information
 9    about the buyer in that contract?
02:19PM 10    A    Yes.
11    Q    And where did that information come from?
12    A    Mr. Avenatti.
13    Q    Can you please take a look at Exhibit 79.  Do you
14    recognize this document?
02:19PM 15    A    I do.
16    Q    Is this an e-mail that you sent to the defendant on
17    June 1st of 2017?
18    A    Yes.
19         MR. WYMAN:  Your Honor, the Government moves to
02:19PM 20    admit Exhibit 79.
21         MR. AVENATTI:  Objection, Your Honor.  Hearsay.
22         THE COURT:  Overruled.  79 will be received.
23         **(Exhibit Number 79 received.)**
24         MR. WYMAN:  Can you please show the date of this
02:20PM 25    e-mail.
```

**UNITED STATES DISTRICT COURT**

```
         1   Q    What is the date of this e-mail, Mr. Goeders?

         2   A    June 1st, 2017.

         3   Q    And what -- can you please read the first line of the

         4   content of the e-mail.

02:20PM   5   A    "Hi, Michael.  Clean contract signed today.  See

         6   attached."

         7            MR. WYMAN:  If we can go now to page 4 of the

         8   exhibit.  Can you please pull up the digital signatures toward

         9   the bottom of the page.

02:20PM  10   Q    Who is Shanta Tiratsuyan?

         11   A    She's the seller.

         12   Q    And below that, who digitally signed as the buyer?

         13   A    Michael Avenatti.

         14   Q    Right next to his name is that same language about

02:21PM  15   G. Johnson Trust identified?

         16   A    Yes.

         17   Q    Can you please read the date of these signatures.

         18   A    May 31st, 2017.

         19   Q    Thank you.

02:21PM  20            Now, if we can please go to page 5 of the exhibit.

         21            Right there at the top, where it says "This is an

         22   offer from," do you see that?

         23   A    Yes.

         24   Q    What does it say there?

02:21PM  25   A    "G. Johnson Trust or assignee, Michael J. Avenatti,
```

```
 1   special manager."

 2   Q    Right below that, what is listed as the purchase price?

 3   A    695,000.

 4   Q    And the escrow period?

 5   A    60 days.

 6   Q    A little bit further down this page, do you see a

 7   Section 3, titled "Finance Terms"?

 8   A    Yes.

 9   Q    If we could please focus on Subsection (c) under

10   Section 3, what option is selected in this subsection?

11   A    "All-cash offer."

12   Q    So if this contract was signed by all the parties on

13   May 31st, 2017, and it was a 60-day escrow, does that mean that

14   the escrow period was scheduled to close around the end of

15   July?

16   A    Yes.

17   Q    And did you close escrow at the end of July?

18   A    No.

19   Q    Why not?

20   A    The funds were not available to close.

21   Q    Who told you that the funds were not available?

22   A    Mr. Avenatti.

23   Q    Did he say why?

24   A    He explained that he was waiting for L.A. County to

25   approve a special needs trust that the money could be deposited
```

02:21PM 5

02:22PM 10

02:22PM 15

02:22PM 20

02:22PM 25

```
 1   in so that Mr. Johnson would not lose his SSI benefits.
 2   Q    Do you recall approximately when in the escrow period he
 3   told you that?
 4   A    It was approximately one week prior to close.
 5   Q    So sometime in mid-to-late July of 2017?
 6   A    (No audible response.)
 7   Q    Did the seller cancel the contract of this -- I'm sorry,
 8   I think you just gave a nonverbal answer.  Can you please state
 9   definitively, orally, your answer to the last question.
10   A    I'm sorry, a non- --
11   Q    I think you just shook your head or nodded your head.
12   A    Oh, I'm sorry.  I apologize.  Repeat the question, please.
13   Q    Escaped my mind at that point.
14             Any chance I can ask the court reporter to read?
15             THE COURT:  Yes.
16             MR. WYMAN:  Thank you, Your Honor.
17             (The record was read as follows:
18             "So sometime in mid-to-late July of 2017?")
19             THE WITNESS:  Yes.  Correct.
20             MR. WYMAN:  Thank you.
21   Q    Now, did the seller cancel the contract at that point
22   when you failed to close escrow at the end of July?
23   A    No.
24   Q    Why not?
25   A    The seller still wanted to sell their house.  We thought
```

```
 1   we would still be able to close at some point.
 2   Q    Did you have to provide any sort of incentive to extend
 3   the escrow period?
 4   A    I believe the -- one of the first extensions we didn't
02:24PM  5   need an incentive.  Three weeks after the original proposed
 6   closed date the incentive -- what we needed to do to keep the
 7   seller from canceling was release the buyer's initial deposit.
 8   Q    So were there multiple delays of the escrow period?
 9   A    Yes.
02:24PM 10   Q    I want to fast-forward to August 2017 later in the month.
11   Had the parties closed escrow by that point?
12   A    No.
13   Q    And to your understanding, was it the same issue, waiting
14   for the special needs trust to be approved?
02:25PM 15   A    Yes.
16   Q    Can you please take a look at Exhibit 80.  Do you
17   recognize this document?
18   A    Yes.
19   Q    Is this another e-mail that you sent to the defendant?
02:25PM 20   A    Yes.
21          MR. WYMAN:  Your Honor, the Government moves to
22   admit Exhibit 80.
23          MR. AVENATTI:  Objection, Your Honor.  Hearsay.
24          THE COURT:  Overruled.  80 will be received.
02:25PM 25          (Exhibit Number 80 received.)
```

```
 1              MR. WYMAN:  Thank you.  If we can please publish the
 2     top of the e-mail.
 3     Q     What is the date of this e-mail?
 4     A     August 21st.
02:25PM 5              MR. WYMAN:  And if we can please blow up the first
 6     two paragraphs.
 7     Q     Mr. Goeders, can you please read the first two paragraphs
 8     for the jury.
 9     A     "I get that we are at the mercy of the County.
02:26PM 10             It is unfortunate that they told you they'd hoped to
11             have the approval by the end of last week and that
12             didn't happen.  My comment today regarding getting
13             responses from them was based on our communication
14             week before last where you were waiting for some
02:26PM 15             time for them to respond to you.  In addition, them
16             saying end of last week and getting no update or
17             communication at all."
18     Q     Thank you.  And then a couple of paragraphs below that,
19     can you please read the paragraph starting with "My ultimate
02:26PM 20    goal," toward the bottom.
21     A     "My ultimate goal is to get Geoff what he wants.
22             At this phase, that means attempting to manage the
23             emotional roller coaster the other side is
24             experiencing because our side is late."
02:26PM 25    Q     The first paragraph you read, where you said:
```

1          "I get that we are at the mercy of the

2          County, and it's unfortunate that they told you

3          they'd hoped to have the approval by end of last

4          week," what are you referring to there?

02:27PM 5   A    That Mr. Avenatti was waiting for information regarding

6    approval of the special needs trust from L.A. County.

7    Q    Did the defendant respond to you and say there is no

8    special needs trust?

9    A    No.

02:27PM 10   Q    After this e-mail, did you continue to e-mail with the

11   defendant about delays in the escrow period?

12   A    Yes.

13   Q    Can you please take a look at Exhibit 81 now.

14   A    Any chance there's any water available?

02:28PM 15          **(Pause in proceedings.)**

16   Q    BY MR. WYMAN:  Can you please turn now to Exhibit 81.  Do

17   you recognize this document?

18   A    Yes.

19   Q    Is this another e-mail that you sent to the defendant?

02:28PM 20   A    Yes.

21          MR. WYMAN:  Your Honor, the Government moves to

22   admit Exhibit 81.

23          MR. AVENATTI:  Objection, Your Honor.  Hearsay.

24   Actually, Your Honor, multiple levels of hearsay.

02:29PM 25          THE COURT:  Overruled.  81 will be received.

|         |    |                                                                      |
|---------|----|----------------------------------------------------------------------|
|         | 1  | **(Exhibit Number 81 received.)**                                    |
|         | 2  | Q    BY MR. WYMAN:  Focusing on the top of this e-mail chain,          |
|         | 3  | what is the date of the most recent e-mail in the chain?              |
|         | 4  | A    August 31st, 2017.                                               |
| 02:29PM | 5  | Q    And what is your message to the defendant in that top            |
|         | 6  | e-mail?                                                               |
|         | 7  | A    "Just showing you the recent e-mail stream, including one        |
|         | 8  | sent to her today after we spoke."                                   |
|         | 9  | Q    And in this e-mail, are you forwarding an e-mail chain?          |
| 02:29PM | 10 | A    Yes.                                                             |
|         | 11 | Q    It looks like it's with Julie Newman and a few other            |
|         | 12 | people.  Who is Julie Newman?                                         |
|         | 13 | A    Julie Newman is the listing agent.                              |
|         | 14 | Q    For the house on Parthenia?                                      |
| 02:29PM | 15 | A    Representing the seller, correct.                                |
|         | 16 | Q    Please go to page 3.                                             |
|         | 17 |      Do you see an e-mail from you toward the top of the              |
|         | 18 | page on August 25th, 2017?                                           |
|         | 19 | A    Yes.                                                             |
| 02:30PM | 20 | Q    Can you please read that e-mail.                                 |
|         | 21 | A    From what's on the screen here or --                            |
|         | 22 | Q    I'm sorry.  Page 3, your e-mail beginning with "I am            |
|         | 23 | referring to."                                                       |
|         | 24 | A    Oh.                                                              |
| 02:30PM | 25 |      "I am referring to the e-mail I sent last                        |

|        |    |                                                        |
|--------|----|--------------------------------------------------------|
|        | 1  | night along with an attached ETA.  I recommend         |
|        | 2  | having the seller speak with your title rep for        |
|        | 3  | clarification if needed.  Personally, I would like     |
|        | 4  | a specific time frame just like everybody else         |
| 02:30PM | 5 | does.  Unfortunately, we do not have control over      |
|        | 6  | L.A. County and are not able to get involved with      |
|        | 7  | the attorney's case and legal matters."                |

Q    And then at the top of page 1, can you please read the
second paragraph of your e-mail to Ms. Newman.

02:31PM A    "Unfortunately, none of us have the ability to
get involved with the attorney and his client's
legal proceedings so only the attorney and his
office contact L.A. County's legal department."

Q    When you say "attorney," who are you referring to?

02:31PM A    Mr. Avenatti.

Q    And who is the "client" you're referring to?

A    Geoffrey Johnson.

Q    Who told you that only the defendant could contact the
L.A. County legal department?

02:31PM A    I believe that was Mr. Avenatti.

Q    Then in the third paragraph there, the longer paragraph,
can you please read the three sentences, starting from "The
attorney is willing to help."

A    "The attorney is willing to help her close her
02:32PM    next purchase, which would eliminate one -- while we

```
           1        wait for the trust to be finalized and approved by

           2        the County.  This is not a financial issue.  We

           3        don't need financing.  It is a matter of creating

           4        the trust that the property has to go in.  If you

02:32PM    5        remember, we did explain that we wanted the longer

           6        escrow for this reason, to create a trust.  None of

           7        us on our end thought it would take this long."

           8   Q    Did the defendant ever respond to this e-mail and say he

           9   was not setting up a special needs trust?

02:32PM   10   A    No.

          11   Q    This e-mail is from the end of August of 2017.  Did the

          12   parties end up closing escrow in September of 2017?

          13   A    No.

          14   Q    Was it still for the same reason, to your understanding?

02:33PM   15   A    Yes.

          16   Q    If you can please look at Exhibit 84 now.

          17        Do you recognize this document?

          18   A    Yes, I do.

          19   Q    Is this an e-mail that you received from the defendant?

02:33PM   20   A    Yes.

          21        MR. WYMAN:  Your Honor, the Government moves to

          22   admit Exhibit 84.

          23        MR. AVENATTI:  Objection, Your Honor.  Hearsay.

          24        THE COURT:  Overruled.  84 will be received.

02:33PM   25        **(Exhibit Number 84 received.)**
```

```
      1    Q     BY MR. WYMAN:  What is the date of this e-mail?

      2    A     September 29th, 2017.

      3          MR. WYMAN:  And if we could please pull up the

      4    attachment on page 2 of the exhibit.

02:34PM 5   Q     What is this document?

      6    A     It's an escrow minute.

      7    Q     And does this relate to the house purchase on the

      8    Parthenia Street?

      9    A     It does.  It is agreement between buyer and seller to

02:34PM 10  extend the escrow and to provide additional funds to the seller

      11   for the extension.

      12         MR. WYMAN:  And if we could please pull up the

      13   second paragraph, saying -- that says "close of escrow."

      14   Q     Based on this amendment, what was the new date to close

02:34PM 15  escrow?

      16   A     October 10th, 2017.

      17   Q     And the next paragraph below that, I think you said that

      18   the amendment called for additional payment to be made in order

      19   to extend the escrow.  Is that what you said?

02:35PM 20  A     That's right.

      21   Q     And how much did the buyer have to pay?

      22   A     20,000.

      23         MR. WYMAN:  Lastly, can we please blow up the

      24   portion at the bottom with the signature block.

02:35PM 25  Q     How is the defendant's name listed on the signature block
```

```
      1  there?

      2  A    Michael J. Avenatti, trustee.

      3  Q    And what does it say right above his signature?

      4  A    G. Johnson Trust.

02:35PM 5  Q    Did you end up closing escrow on October 10th, 2017?

      6  A    No.

      7  Q    At some point did the defendant tell you that he was

      8  going to get a loan to purchase the house on Parthenia?

      9  A    Yes.

02:35PM 10  Q    Can you please take a look at Exhibit 90.

     11        Do you recognize this document?

     12  A    Yes.

     13  Q    Is this an e-mail that -- an e-mail exchange that you

     14  were on with the defendant and Judy Regnier?

02:36PM 15  A    Yes.

     16        MR. WYMAN:  Your Honor, the Government moves to

     17  admit Exhibit 90.

     18        MR. AVENATTI:  Objection, Your Honor.  Hearsay.

     19        THE COURT:  Overruled.  Exhibit 90 will be received.

02:36PM 20        (Exhibit Number 90 received.)

     21        MR. WYMAN:  Can you please pull up the date of this

     22  e-mail.

     23  Q    Mr. Goeders, what is the date of this e-mail?

     24  A    October 13th, 2017.

02:36PM 25  Q    So a few days after the most recent escrow date.
```

UNITED STATES DISTRICT COURT

```
 1    A    (No audible response.)
 2    Q    Who is Marty Yeghishian, the individual sending this
 3    letter?
 4    A    He is the lender.
 5    Q    Can you please read the first paragraph of his e-mail
 6    there.
 7    A    "Hi, Michael.  I was able to obtain the new LOI
 8         with Mr. Johnson as the borrower/guarantor for the
 9         loan as we discussed.  The property can and will
10         close under the LLC should you choose to do so.  The
11         $350 property evaluation fee sent for the other
12         investor will apply for this property, and
13         additional fees are not required for inspection.  I
14         have requested higher loan amount.  It may be cut
15         back to the $417,000 range after the evaluation, but
16         it seems as we can squeeze a bit more of a loan
17         amount with this investor."
18    Q    And below that do you see that it says "The loan terms
19    are as follows"?
20    A    Yes.
21              MR. WYMAN:  Blow those up, please.
22    Q    What is listed as the loan amount?
23    A    451,750.
24    Q    So for the majority of the purchase price?
25    A    695 minus that and those fees.
```

**UNITED STATES DISTRICT COURT**

| | | |
|---|---|---|
| 1 | Q | And what is listed as the interest rate for this loan? |

1    Q    And what is listed as the interest rate for this loan?

2    A    8.99 percent.

3    Q    You said, the first sentence in that paragraph:

4              "I was able to obtain the new LOI with

02:38PM  5         Mr. Johnson as the borrower/guarantor for the loan

6         as we discussed."

7              What does "LOI" mean?

8    A    Letter of interest.

9    Q    And the remaining pages of this document, if we could

02:38PM 10    look at page 2.

11              Do you see that it's a letter of interest?

12   A    Yes.

13   Q    And the remaining documents in -- I'm sorry, the

14   remaining pages in this exhibit, are there other forms that are

02:39PM 15   blank?

16   A    Yes.

17   Q    For example, on page 6, does that appear to be a blank

18   Uniform Residential Loan Application?

19   A    I'm not a lender, so I'm not an expert in lending and

02:39PM 20   those forms, but this looks like a --

21   Q    I was just referring to the title.  Sorry.

22   A    Yes.  Based on the title.

23   Q    Returning to the e-mail, do you see the paragraph at the

24   end, beginning with "lastly"?

02:39PM 25   A    Yes.

|        |   |                                                      |
|--------|---|------------------------------------------------------|
| 1      | Q | Can you please read that paragraph.                  |
| 2      | A | "Lastly, please ask Mr. Johnson to review and        |
| 3      |   | Sign the attached disclosures and loan application   |
| 4      |   | and return with signed LOI in order for me to be     |
| 02:40PM 5 |   | able to work on loan documents."                  |
| 6      | Q | If you could please go now to Exhibit 89, the one right |
| 7      |   | before.                                              |
| 8      | A | Okay.                                                |
| 9      | Q | Do you recognize this document?                      |
| 02:40PM 10 | A | I do.                                             |
| 11     | Q | Is this a continuation of that e-mail exchange just  |
| 12     |   | between you and the defendant?                       |
| 13     | A | Yes.                                                 |
| 14     |   | MR. WYMAN:  Government moves to admit Exhibit 89,    |
| 02:40PM 15 |   | Your Honor.                                       |
| 16     |   | MR. AVENATTI:  Objection, Your Honor.  Hearsay.     |
| 17     |   | THE COURT:  Overruled.  89 will be received.        |
| 18     |   | **(Exhibit Number 89 received.)**                   |
| 19     | Q | BY MR. WYMAN:  So the e-mail at the bottom, is that the |
| 02:41PM 20 |   | e-mail from Mr. Yeghishian that we just covered?   |
| 21     | A | Yes.                                                 |
| 22     | Q | And right above that is an e-mail from you, and it   |
| 23     |   | appears that you wrote just -- you responded just to the |
| 24     |   | defendant; is that right?                            |
| 02:41PM 25 | A | I believe I did.                                 |

**UNITED STATES DISTRICT COURT**

55

```
            1    Q     And what did you say?

            2    A     "Michael, if you okay the documents for Geoff to

            3          sign, I can bring them to him tonight or tomorrow

            4          for signatures and scan them back to Marty before

02:41PM     5          end of day tomorrow."

            6    Q     And then if we can go to the top of the e-mail, what is

            7    the defendant's response to you?

            8    A     He says, "I am handling it."

            9    Q     And what is the date of his e-mail?

02:41PM    10    A     October 13th, 2017.

           11    Q     And it looks like that was a Friday, from the date?

           12    A     Yes.

           13    Q     Can you please turn now to Exhibit 92.

           14          Do you recognize this document?

02:42PM    15    A     Yes.

           16    Q     Is this another separate continuation of that e-mail

           17    exchange?

           18    A     Yes.

           19          MR. WYMAN:  Your Honor, the Government moves to

02:42PM    20    admit Exhibit 92.

           21          MR. AVENATTI:  Objection, Your Honor.  Hearsay.

           22          THE COURT:  Overruled.  92 will be received.

           23          (Exhibit Number 92 received.)

           24    Q     BY MR. WYMAN:  Now, at the bottom of page 2 and then

02:42PM    25    on -- I'm sorry, at the bottom of page 1, and then on page 2,
```

```
 1  is that -- is that same e-mail from Mr. Yeghishian that we
 2  talked about?
 3  A    Yes.
 4  Q    And then in the middle there, it looks like the defendant
02:43PM 5  replied to "all"; is that right?
 6  A    Yes.
 7  Q    So you and he had a separate e-mail conversation, but
 8  then in this e-mail he's responding to the group of all four of
 9  you?
02:43PM 10  A    Correct.
11  Q    What does his e-mail say?
12  A    Says:
13          "Marty, these terms are acceptable.  As we
14       discussed, I will be meeting with my client on
02:43PM 15       Monday and will return the docs on that date.
16       Enjoy the weekend."
17  Q    So if this is Friday, October 13, would Monday be
18  October 16?
19  A    Yes.
02:43PM 20  Q    Can you please take a look at Exhibit 96 now.
21          Do you recognize this document?
22  A    Yes.
23  Q    Is this another e-mail exchange that you were on with
24  Marty Yeghishian, the defendant, and Judy Regnier?
02:44PM 25  A    Yes.
```

UNITED STATES DISTRICT COURT

```
 1              MR. WYMAN:  The Government moves to admit
 2    Exhibit 96.
 3              MR. AVENATTI:  Objection, Your Honor.  Hearsay.
 4              THE COURT:  It will be received but not for the
 5    truth of the document.
 6              MR. WYMAN:  Understood.
 7              THE COURT:  The indicated recipients received the
 8    document, not that it says it's true.
 9              (Exhibit Number 96 received.)
10    Q    BY MR. WYMAN:  So on page 2, it looks like we have the
11    same e-mail from the week before for Mr. Yeghishian; is that
12    right?
13    A    Yes.
14    Q    And then it looks like he responded separately to his
15    e-mail, to the three of you; is that right?
16    A    He -- yes, looks that way.
17    Q    And what is his e-mail on the bottom asking about?
18    A    "Hi, all.  Checking in on the signed docs.  Investor
19         is asking for the docs in order to organize the
20         funds for funding.  Please let me know ASAP.  If
21         we're not moving forward, please let me know so we
22         don't hold up the funds with the investor."
23    Q    And then in the middle of the page, it looks like the
24    defendant responded that same day, October 16th, 2017.  What
25    did he say?
```

02:44PM  (line 5)
02:45PM  (line 10)
02:45PM  (line 15)
02:45PM  (line 20)
02:45PM  (line 25)

```
  1  A    "We are moving forward, Marty, as I stated on Friday."
  2  Q    And then, lastly, what is Mr. Yeghishian's response at
  3  the top?
  4  A    "Thank you, Michael, for confirming.  However, I
02:46PM 5       will need the signed docs back before end of day
  6       today in order to guarantee the funds for this
  7       transaction."
  8  Q    And the last exhibit I'd like to ask you about is
  9  Exhibit 97.
02:46PM 10       Do you recognize this document?
 11  A    Yes.
 12  Q    Is this another e-mail chain that you were on with the
 13  defendant and Marty Yeghishian and Judy Regnier?
 14  A    Yes.
02:46PM 15       MR. WYMAN:  Your Honor, the Government moves to
 16  admit Exhibit 97.
 17       MR. AVENATTI:  Objection, Your Honor.  Hearsay.
 18       THE COURT:  The e-mail from Mr. Avenatti will be
 19  received for the truth.  The other e-mail will not be received
02:46PM 20  for the truth.  In other words, what Mr. Avenatti sent is
 21  received.  What he received is not for the truth.
 22       MR. SAGEL:  Your Honor, your microphone is not on so
 23  I'm not sure they can hear you back here.
 24       THE COURT:  I'm sorry.
02:47PM 25       Mr. Avenatti's e-mail is received for the truth.
```

The other e-mail, which he received, is received for the fact
that he received it but not for the truth of the content.

                    **(Exhibit Number 97 received.)**

                    MR. WYMAN:  Thank you.

02:47PM      If we can please focus on the e-mail from Marty
Yeghishian in the middle of page 1.

Q    What is the date of Mr. Yeghishian's e-mail here?

A    October 18th, 2017.

Q    And can you please read the first paragraph of his e-mail

02:47PM to the defendant.

A    "This is the third follow-up regarding the inspection
appointment for tomorrow."

Q    I'm sorry, and then the second paragraph as well.

A    "Buyer will need to be present during the inspection.

02:47PM      Please confirm buyer will be available and at

      inspection tomorrow at 11:30 a.m."

Q    Then can you please read the defendant's response at the

top.

A    "Marty, I will call you on this.  You sent the first

02:48PM e-mail at 3:43 yesterday afternoon, to be clear."

Q    And it looks like this was also October 18th, 2017?

A    Yes.

Q    After all this back-and-forth, did you end up closing on

the Parthenia house?

02:48PM A    No.

```
 1   Q    What was your understanding of why you never closed?

 2   A    L.A. County had not approved the special needs trust and

 3   the seller exercised their right to cancel.

 4   Q    At some point after the seller exercised the right to

 5   cancel the contract, did you have a conversation with

 6   Mr. Johnson about the house?

 7   A    I did.

 8   Q    Based on that conversation, did Mr. Johnson appear to

 9   know that the house purchase had fallen through?

10   A    No.  It appeared that he did not know.

11   Q    And approximately how long after the cancellation did

12   that conversation take place?

13   A    Approximately a month.

14         MR. WYMAN:  One moment, Your Honor.

15         (Counsel conferred off the record.)

16   Q    BY MR. WYMAN:  You said just a few seconds ago that your

17   understanding was that the house -- the purchase didn't close

18   because you were still waiting on approval for the special

19   needs trust.  Is that what you said?

20   A    Yes.

21   Q    Where did that information come from?

22   A    Mr. Avenatti.

23         MR. WYMAN:  Thank you, Mr. Goeders.  No further

24   questions.

25         THE COURT:  Mr. Avenatti?
```

**UNITED STATES DISTRICT COURT**

**CROSS-EXAMINATION**

BY MR. AVENATTI:

Q     Mr. Goeders, good afternoon.

A     Good afternoon.

Q     Who is Filippo Marchino?

A     Filippo Marchino is a previous client of mine.  He's an attorney and the gentleman who referred me to you.

Q     Is he a friend?

A     I would not call him a friend.  I would call him a client.

Q     When's the last time you communicated with Mr. Marchino?

A     Pardon me.  It's been a while.  Years.  Possibly around the time of the referral, 2017.

Q     Did you ever tell anybody that I was not at fault for the property transaction not closing?

A     Can you repeat the question, please.

Q     Sure.  Have you ever told anybody, ever, that I was not at fault for the property transaction closing?

A     I don't believe I've ever said that.

Q     You don't believe you've ever said that; right?

A     I do not believe so.

Q     Now, when you took the stand here today in front of the jury, you swore to tell the truth, the whole truth and nothing but the truth, so help you God, didn't you?

A     I did.

Q     Let me ask you about something that Mr. Wyman didn't ask

```
        1   you about.  Turn to Exhibit 93.  Do you have Exhibit 93, sir?
        2   A     I do.
        3   Q     Did Mr. Wyman ask you any questions about Exhibit 93?
        4   A     Today or ever?
02:53PM  5   Q     Well, actually, that's a really good question.  Let's
        6   start with today.
        7   A     I don't believe we -- I don't believe we discussed this
        8   exhibit today, specifically.
        9   Q     But before today, you have spoken to Mr. Wyman about this
02:53PM 10   exhibit, haven't you?
       11   A     Yes.
       12   Q     Isn't it true that on October 12th, 2017, you told Julie
       13   Newman in an e-mail that the delay was not my fault?
       14   A     That one specific delay, yes.
02:54PM 15   Q     You said that; right?
       16   A     (No audible response.)
       17         MR. WYMAN:  Your Honor, I don't think he gave a
       18   verbal response.  I may have missed it.
       19         THE COURT:  Sir, would you respond, please.
02:54PM 20         MR. AVENATTI:  He did give a verbal response, I
       21   believe.  He said, "Yes, that one delay."
       22   Q     Am I right Mr. Goeders?
       23   A     That's right.
       24   Q     Okay.  And you told her that from the beginning, I had
02:54PM 25   said that we would need a loan which I would not be personally
```

UNITED STATES DISTRICT COURT

63

```
 1   responsible for, didn't you?
 2   A     I'm sorry, repeat that again.
 3   Q     Sure.  You told Ms. Newman on that date that from the
 4   very beginning, I said that we would need a loan that I would
 5   not personally be responsible for; isn't that right?
 6   A     That is not accurate.
 7   Q     Sir, did you or did you not write to Ms. Newman, quote:
 8              "From the beginning, Michael asked Marty for
 9          a hard-money loan which would be held under an LLC
10          that he would not be personally responsible for."
11              Did you write that, sir, yes or no?
12   A     From the beginning of loan --
13   Q     Sir --
14   A     Yes.
15   Q     -- answer my question, please.  Yes or no, did you write
16   those words?
17   A     Yes, I did.
18   Q     Now, you understood that this transaction was going to
19   take place by way of a limited liability company, right, an
20   LLC?
21   A     My understanding initially --
22   Q     Sir, just answer my question.
23              MR. WYMAN:  Your Honor, he's attempting to answer.
24              MR. AVENATTI:  Strike the question.  Let me ask the
25   next question.
```

02:54PM   5
02:55PM  10
02:55PM  15
02:55PM  20
02:56PM  25

```
 1   Q    Sir, yes or no, you were informed during the transaction

 2   that this transaction was going to have to utilize an LLC?

 3              MR. WYMAN:  Objection.  Vague as to "this

 4   transaction" and of time.

 5              THE COURT:  Overruled.

 6              THE WITNESS:  Sorry.  I get distracted by the

 7   objection.  Can you please repeat it.

 8              MR. AVENATTI:  Can I have it read back, Your Honor?

 9              THE COURT:  Yes.

10              (The record was read as follows:

11              "Sir, yes or no, you were informed during the

12         transaction that this transaction was going to have

13         to utilize an LLC."

14              THE WITNESS:  Yes.  Several months in.

15   Q    BY MR. AVENATTI:  Was an LLC ever formed to effectuate or

16   close the transaction?

17              MR. WYMAN:  Objection.  Calls for speculation.

18              THE COURT:  Overruled.

19              THE WITNESS:  I don't know.

20   Q    BY MR. AVENATTI:  Let me ask about another document that

21   I don't think Mr. Wyman asked you about, Exhibit 86.

22              By the way, what was the address of the house that

23   we were attempting to close escrow on?

24   A    Parthenia.

25   Q    Let me see if I can help you.  How about 21923 Parthenia
```

02:56PM (line 5)
02:56PM (line 10)
02:56PM (line 15)
02:57PM (line 20)
02:57PM (line 25)

65

1    Street.  Does that sound about right?

2    A    21923 Parthenia Street, West Hills.  Yes.

3    Q    Okay.  Take a look at Exhibit 86.  Sir, isn't it true

4    that on October 3rd, 2017, an LLC was established for the

02:58PM 5    transaction?

6            MR. WYMAN:  Objection.  Foundation.  Personal

7    knowledge.

8            THE COURT:  Overruled.

9            THE WITNESS:  Sorry, can you please repeat the

02:58PM 10   question again.

11   Q    BY MR. AVENATTI:  Isn't it true that October 3, 2017, my

12   office established a limited liability company for the purposes

13   of closing the transaction?

14           MR. WYMAN:  Same objection, and also improper

02:58PM 15   impeachment and refreshing of his recollection.  He's just

16   reading the document.

17           THE COURT:  Overruled.

18           THE WITNESS:  According to these documents, but I

19   have not seen these before.

02:59PM 20   Q    BY MR. AVENATTI:  I'm sorry, is that a "yes"?

21   A    According to these documents, it looks like, yes.

22   Q    Sir, I'd like you to walk --

23           THE COURT:  Before we do that, I think we'll take

24   the midafternoon break here, ladies and gentlemen.  Please

02:59PM 25   remember the admonition not to discuss the case with anyone and

```
 1    not to form any opinions on the issues in the case until it's
 2    submitted to you.  Please don't do any research.
 3              We'll be in recess for 15 minutes.
 4              THE COURTROOM DEPUTY:  All rise.
03:00PM  5    (Out of the presence of the jury.)
 6              THE COURT:  We'll be in recess.
 7              (Recess from 2:59 p.m. to 3:17 p.m.)
 8              THE COURT:  Mr. Avenatti.
 9              MR. AVENATTI:  We're waiting on the witness,
03:17PM 10    Your Honor.
11              THE COURT:  Okay.  Proceed.
12    Q    BY MR. AVENATTI:  Mr. Goeders, have you ever established
13    an LLC?
14    A    I have not.
03:18PM 15    Q    Have you ever established an LLC for a legal client?
16    A    I have not.
17    Q    Have you ever established an LLC for a legal client to
18    hold a property?
19              MR. WYMAN:  Objection.  Asked and answered.
03:18PM 20              THE COURT:  Overruled.
21              THE WITNESS:  No.
22    Q    BY MR. AVENATTI:  Can you please explain to the jury what
23    the process is by which one can establish an LLC for a legal
24    client to hold a piece of property?
03:19PM 25    A    I cannot.  I'm not an attorney.
```

```
 1    Q    Well, how long does it take?

 2    A    I don't know.

 3              THE COURT:  Sir, move up to the mic, please.

 4              THE WITNESS:  Oh.  I don't know.

 5    Q    BY MR. AVENATTI:  But we now know that one was

 6    established in connection with this transaction; right?  We

 7    were talking about that right before we took a break.

 8              MR. WYMAN:  Objection.  Assumes facts not in

 9    evidence.  Foundation.

10              THE COURT:  Sustained.

11    Q    BY MR. AVENATTI:  Sir, directing your attention to

12    Exhibit 86, that's what we were talking about before we broke.

13    Do you recall that?

14    A    Yes.

15    Q    You can correct me if I'm wrong, but I believe you

16    testified that according to this document, an LLC was

17    established for the transaction in October of 2017.

18              I'm asking about his testimony?

19              MR. WYMAN:  Foundation.

20              THE COURT:  On direct -- well, he just read the

21    document.  He didn't testify to anything to his personal

22    knowledge.

23              MR. AVENATTI:  Whatever his testimony was it was,

24    Your Honor.  The record will reflect that.

25              THE COURT:  Ask another question.
```

03:19PM (line 5)
03:19PM (line 10)
03:19PM (line 15)
03:20PM (line 20)
03:20PM (line 25)

1    Q     BY MR. AVENATTI:  Okay.  Sir, you were aware that an LLC

2    had to be established before this transaction could close;

3    correct?  I believe you testified to that earlier.

4    A     Once the loan was involved, yes.

03:20PM 5    Q     No, sir, that wasn't your testimony earlier.  It was made

6    clear to you, was it not, that this property had to be held in

7    an LLC?

8    A     Not from the beginning, no.

9    Q     You're sure of that?

03:21PM 10   A     Yes.

11   Q     Whose name was the property going to be held in?

12   A     According to the contract, it was G. Johnson Trust or

13   assignee.

14   Q     I'm sorry, what was that last part?

03:21PM 15   A     G. Johnson Trust or assignee.

16   Q     What do you mean when you say "assignee"?

17   A     That it could be put into another --

18   Q     Like an LLC; right?

19   A     It could be, sure.

03:21PM 20   Q     Right.  It was made clear to you that the contractual

21   documents had to provide that the transaction would close with

22   a potential assignee; right?

23   A     Had to close, sure.  Yes.

24   Q     How do you establish a special needs trust?

03:22PM 25   A     I do not know.

1    Q    Do you know anything about special needs trusts?

2    A    I do not.

3    Q    Do you know anything about what has to happen in order to

4    establish one?

03:22PM 5    A    I do not.

6    Q    Do you know what financial steps, if any, have to be

7    taken?

8    A    I do not.

9    Q    Do you know what documents, if any, need to be executed?

03:22PM 10   A    No.

11   Q    You don't know anything about special needs trusts, do

12   you?

13   A    I do not.

14   Q    Just like you don't anything about establishing LLCs;

03:22PM 15   right?

16   A    That's correct.

17   Q    You're a real estate broker.  That's what you do?

18   A    Real estate agent, yes.

19   Q    Right.  You try to buy and sell properties and get paid

03:23PM 20   if transactions close; right?

21   A    I get paid when they close, yes.

22   Q    And if they don't close, you don't get paid?

23   A    That's correct.

24   Q    And since this transaction didn't close, you didn't get

03:23PM 25   paid, did you?

```
 1   A     Correct.
 2   Q     Please tell the jury everything you know about my
 3   communications with Mr. Geoffrey Johnson relating to the real
 4   estate transactions, if anything.  Strike that.  Let me ask a
 5   better question.
 6              Sir, were you privy to a single communication that I
 7   had with Mr. Geoff Johnson about his efforts to purchase a
 8   home?  Yes or no?
 9   A     I can recall -- yes.
10   Q     A phone call?
11   A     I believe a -- I recall one conversation between the three
12   of us.
13   Q     Was a conference call?
14   A     I believe so.
15   Q     When?
16   A     I don't remember the exact time, but it was regarding a
17   property on Chase.
18   Q     On what?
19   A     On Chase.
20   Q     And what was it about that property on Chase?
21   A     We had entered into escrow.  After being in escrow, I
22   parked myself outside of the house to check out the activity
23   late at night on the weekends, and we had a discussion that
24   there was a lot of unwanted, undesirable foot traffic in the
25   neighborhood.  So the three of us had a discussion.  And then I
```

```
 1    believe you and Mr. Johnson made the decision not to move

 2    forward with that escrow.

 3    Q    We had a conference call about the fact that that was not

 4    the type of place that Mr. Johnson wanted to live, didn't we?

 5    A    Yes.

 6    Q    And he told us on the phone he did not want to proceed

 7    with the escrow, didn't he?

 8    A    Correct.

 9    Q    And, therefore, we canceled the escrow; right?

10    A    Yes.

11    Q    Was that my fault?

12    A    No.

13    Q    Other than that call, please tell the jury about all the

14    other communications that I had with Mr. Johnson that you were

15    privy to about the real estate transaction.

16    A    I don't think I was privy to those types of conversations.

17    Q    So during this time period that Mr. Wyman was asking you

18    about, you were aware of the content of one communication that

19    I had with Mr. Johnson relating to the real estate transaction;

20    is that fair?

21    A    I can recall another conversation.

22    Q    What was that conversation, sir?

23    A    About one month after the escrow on Parthenia had

24    canceled, I called Mr. Johnson --

25    Q    I'm not asking you --
```

The time stamps in the left margin read: 03:25PM (line 5), 03:25PM (line 10), 03:25PM (line 15), 03:26PM (line 20), 03:26PM (line 25).

**UNITED STATES DISTRICT COURT**

1    MR. WYMAN:  Your Honor, he asked an open-ended

2 question.

3    MR. AVENATTI:  No, let me -- he's not --

4    THE COURT:  One at a time, please.

03:26PM  5    MR. AVENATTI:  It's nonresponsive, Your Honor.

6 Q    Sir, my question is this:  I'm talking about

7 conversations where you were present with me and Mr. Johnson.

8 That's what I'm talking about.  Now, with that in mind, here's

9 my question --

03:26PM 10    MR. WYMAN:  Objection.  He asked a question and did

11 not allow the witness to answer.

12    MR. AVENATTI:  Strike the question.

13    MR. WYMAN:  He's attempting to strike the question

14 when the witness was in the middle of answering it, Your Honor.

03:27PM 15 That's improper.

16    THE COURT:  Let's go back and read the question and

17 let the witness finish his answer.

18    MR. AVENATTI:  And, Your Honor, I just want the

19 answer to be responsive.  That's all I want.

03:27PM 20    (The record was read as follows:

21    "Q    What was that conversation, sir?

22    "A    About one month after the escrow on

23    Parthenia had canceled, I called Mr. Johnson --")

24    THE COURT:  Okay.

03:27PM 25    THE WITNESS:  Want me to finish?

```
 1              THE COURT:  Are you finished with the answer?
 2              THE WITNESS:  I had not finished.  May I finish it?
 3              MR. AVENATTI:  Your Honor, if I can --
 4              THE COURT:  He'll finish the answer.
03:27PM  5     MR. AVENATTI:  If I could have the question before
 6      that --
 7              THE COURT:  He will finish the answer.
 8              MR. AVENATTI:  No problem.
 9              THE WITNESS:  I called Mr. Johnson to see how he was
03:27PM 10      doing.  He said he was doing good.
11              I said, "Have you spoken with Mr. Avenatti
12      recently?"
13              He said, "No."
14              I said, "I recommend that you give him a call.  Call
03:28PM 15      me back if you like."
16              About five minutes later he called me back.
17              MR. AVENATTI:  Objection.  Hearsay, Your Honor.
18              THE COURT:  Hearsay.  All of the discussion between
19      Mr. Johnson and the witness will be stricken.
03:28PM 20      MR. AVENATTI:  Thank you.
21      Q    Sir, other than the one conversation that you recounted
22      earlier with me and Mr. Johnson, was there any other time that
23      you were present when I communicated with Mr. Johnson?
24      A    I don't recall.
03:28PM 25      Q    You can't think of another one, as you sit here right
```

1    now, can you?

2    A    I cannot.

3    Q    Sir, true or false, Mr. Johnson suffered from mental

4    illness.

03:29PM 5             MR. WYMAN:  Objection.  403 and 608.

6             THE COURT:  Sustained.

7    Q    BY MR. AVENATTI:  Sir, isn't it true that at the time

8    that you were dealing with me and Mr. Johnson in connection

9    with the purchase of the properties that Mr. Wyman was asking

03:29PM 10   you about, that Mr. Johnson, unfortunately, suffered from a

11   deficient mental condition?

12            MR. WYMAN:  Objection.  403.

13            THE COURT:  Sustained.

14   Q    BY MR. AVENATTI:  Sir, do you know one way or the other

03:29PM 15   as to whether Mr. Johnson suffered any mental deficiencies

16   around the time -- it's a yes-or-no question -- that you were

17   dealing with him and me in connection with the property

18   transactions?

19            MR. WYMAN:  Same objections, Your Honor.

03:30PM 20            THE COURT:  Overruled.

21            THE WITNESS:  Please repeat the question.

22   Q    BY MR. AVENATTI:  Sure.  Yes or no, do you know, as you

23   sit here today, if whether at the time you were dealing with

24   Mr. Johnson and me in connection with these real estate

03:30PM 25   transactions Mr. Johnson suffered from any mental deficiencies?

```
 1    A      I was not aware.

 2    Q      You don't know one way or the other, do you?

 3    A      I do not.

 4           MR. WYMAN:  Asked and answered.

 5           THE COURT:  Sustained.

 6    Q      BY MR. AVENATTI:  Do you have any idea what Mr. Johnson

 7    requested of me, or not, relating to these real estate

 8    transactions?  Did you hear him request anything directly of

 9    me?

10    A      No.

11           THE COURT:  They're two different questions.

12           MR. AVENATTI:  Let me clean it up, Your Honor.

13    Q      You testified earlier that you were privy to one

14    communication; correct?

15    A      That I can recall, yes.

16    Q      "Yes"?  You've got to move closer.

17           THE COURT:  Get up to the mic, please, or pull it

18    closer.

19           THE WITNESS:  Yes.

20    Q      BY MR. AVENATTI:  And during that communication, what you

21    heard Mr. Johnson instruct me to do was to cancel the escrow;

22    right?

23    A      Yes.

24    Q      Other than that instruction, you are not aware of any

25    other instructions that Mr. Johnson gave me in connection with
```

03:30PM 5
03:31PM 10
03:31PM 15
03:31PM 20
03:31PM 25

```
 1    any of these real estate transactions, are you?
 2    A    Not that I can recall.
 3    Q    Sir, this is a yes-or-no question.  At the time of these
 4    potential real estate transactions, did you know whether or not
 5    Mr. Johnson had a gambling problem?
 6    A    I was not aware of that.
 7    Q    Did you know one way or the other?
 8              MR. WYMAN:  Asked and answered.
 9              MR. AVENATTI:  Your Honor, I'm clarifying the
10    record.  When he says he's not --
11              THE COURT:  Sir, you get to ask one question once.
12              MR. AVENATTI:  I understand that, Your Honor.
13              THE COURT:  Let's proceed in that fashion.  Proceed.
14              MR. AVENATTI:  All right.
15    Q    Did you know one way or the other?
16              MR. WYMAN:  Asked and answered.
17              THE COURT:  Sustained.
18    Q    BY MR. AVENATTI:  Sir, how much money did Mr. Johnson
19    receive from his settlement with L.A. County?
20              MR. WYMAN:  Foundation.
21              THE COURT:  Lay the foundation.
22    Q    BY MR. AVENATTI:  Sir, do you have any idea how much
23    money Mr. Johnson received from the settlement?
24    A    I recall a figure of $3 and a half million.
25    Q    That's your recollection of what Mr. Johnson received;
```

```
 1   correct?
 2   A     Yes.
 3   Q     And you got that from Mr. Johnson?
 4   A     I don't recall who I got that from.  It was either you or
 5   Mr. Johnson.  I don't recall.
 6   Q     You spent more time with Mr. Johnson than you did with
 7   me, didn't you?
 8   A     That's correct.
 9   Q     Now, Mr. Wyman didn't ask you about any text messages,
10   did he?
11   A     No.
12   Q     Did you have text messages with Mr. Johnson?
13   A     Yes.
14   Q     Did you give your phone to the federal government to be
15   imaged, forensically imaged in connection with this case?
16   A     Yes, I did.
17   Q     When did you do that?
18   A     I do not recall.
19         THE COURT:  Sir, please move up to the mic or pull
20   the mic back to you.  It will move.  Just pull it back to you.
21   Good.
22         THE WITNESS:  I don't recall the date.  I suspect
23   sometime in 2019, but I don't recall when.
24   Q     BY MR. AVENATTI:  How many times have you given your
25   phone to a member of law enforcement to be imaged?
```

```
       1    A     Once.

       2    Q     One time.  Okay.

       3          So can you provide your best estimate as to when in

       4    2019 that was?  It's pretty memorable; right?

03:35PM 5    A     Most likely after some news came out of -- about you and

       6    being charged with various things.

       7    Q     So the spring of 2019?

       8    A     It's possible.  I don't remember the exact date.

       9    Q     And how did that happen exactly?  How was it that you

03:36PM 10   came to provide your device -- well, let me ask a better

      11    foundational question.

      12          How many devices did you authorize the Government to

      13    image?

      14    A     One.

03:36PM 15   Q     And what device was that?

      16    A     Cell phone.

      17    Q     What kind of cell phone was it?

      18    A     I don't recall.

      19    Q     How about a Samsung Galaxy 7?

03:36PM 20   A     That sounds about right.

      21    Q     And who asked you for the phone?

      22    A     One of the special agents.  I was required to provide all

      23    of my documentation and communication.

      24    Q     Which agent?

03:36PM 25   A     There are several involved.
```

```
 1    Q    There's a lot involved.  I agree.  But do you remember
 2   which one?
 3    A    I don't recall specifically which one.
 4    Q    Where did you provide it?
 5    A    At my house.
 6    Q    They came to your home?
 7    A    Yes.
 8    Q    Did it -- did they take it with them or did they image it
 9   there?
10    A    They imaged it at my home.
11    Q    How about your computer or computers, did they ask you
12   for any of those devices?
13    A    No.
14    Q    Did you ever refuse to allow them to image any device?
15    A    I was not given the option to refuse.  No.
16    Q    What do you mean by that, you weren't given the "option
17   to refuse"?
18    A    I was required to provide them.
19    Q    Pursuant to what?
20    A    If I -- it was explained to me by one or more of the
21   agents that if I did not provide the communication and text
22   messages that they would be subpoenaed.
23    Q    Did you consent to allow them to image the entire --
24   entirety of your phone or only certain text messages?
25    A    Specifically any messaging, calls related to you and
```

**UNITED STATES DISTRICT COURT**

1    Mr. Johnson, and the escrow.

2    Q    So you gave them a list of phone numbers that you agreed

3    to; right?

4    A    I don't recall if I gave them a list of phone numbers or

03:38PM 5    not.  It's possible.  I don't remember.

6    Q    Well, do you remember that at some point in time you gave

7    them the wrong phone number for me?

8    A    No.  I don't remember that.

9    Q    You don't recall an issue arising relating to you having

03:39PM 10   the wrong work phone number for me in your contacts, in your

11   phone?

12   A    I don't recall that.

13          MR. AVENATTI:  Your Honor, one moment, please.

14          **(Pause in proceedings.)**

03:40PM 15         MR. AVENATTI:  Your Honor, may I approach?

16          THE COURT:  You may.

17          MR. AVENATTI:  Thank you.

18          Your Honor, I only have one copy.  I'm going to ask

19   one question.

03:40PM 20         THE COURT:  Go ahead.

21          MR. AVENATTI:  Okay.

22   Q    Sir, I've handed you a document.  Do you have it in front

23   of you?

24   A    Yes.

03:41PM 25   Q    Okay.  And I'd like you to also turn to Exhibit 124.

```
 1    A      Is that a different volume?

 2    Q      It should be.  It's in another binder behind you.

 3    A      You said 124?  124?

 4    Q      Yes, sir.

 5    A      Okay.

 6    Q      I want you to take a look at Exhibit 124 and also the

 7    document that I've handed you, and then I'm going to ask you a

 8    question.

 9    A      I suspect you don't want me to look at the whole document?

10    Q      No, sir.  I'm going to ask you about the second page of

11    that document, but I want to give you a chance to take a look

12    at the two documents.

13    A      Okay.

14    Q      Have you had an opportunity to look at it?

15    A      I'm looking at page 1 of each one at the moment.

16    Q      You'll notice that 124 doesn't have a page 2, but the

17    document that I handed to you does.  Do you see that?  Pages

18    are different.

19    A      Yes.

20    Q      Does that refresh your recollection that at the time your

21    phone was imaged, you had the wrong phone number, work phone

22    number for me?

23    A      I honestly can't recall what your phone number was.

24    Q      Do you recognize that number that's listed opposite my

25    work?
```

**UNITED STATES DISTRICT COURT**

```
 1   A    I see a mobile number, 949 Area Code ending in 4118.  Then
 2   I see a work number, which is an 818-489-5927.
 3   Q    Do you recognize that work number?
 4   A    I do not.
 5   Q    If you just take a quick look through that document that
 6   I handed you.
 7   A    Anywhere specifically?
 8   Q    Just -- I don't think it's going to take long.  I just
 9   want you to take a look through that document.
10        My question is, does your review refresh your
11   recollection that, in fact, that is not my phone number that is
12   listed there?
13   A    Yeah.  It appears to be somebody else's phone number.
14   Q    Not mine?
15   A    Correct.
16   Q    And why do you -- what leads you to believe that?
17   A    It looks to me like it's a -- it's involved with several
18   group chats of friends of mine.  And you would not have been on
19   those texts.
20   Q    Why not?  Well, strike that.
21        So suffice it to say that the number was wrong;
22   right?
23   A    That 818 number appears to be incorrect; right.
24   Q    Now, directing your attention to Exhibit 124 --
25        Your Honor, may I approach to get the other
```

03:44PM (line 5)
03:44PM (line 10)
03:45PM (line 15)
03:45PM (line 20)
03:45PM (line 25)

```
 1   document?
 2              THE COURT:  You may.
 3              MR. AVENATTI:  Thank you.
 4   Q    In preparing for your testimony here today, sir, or at
 5   any time, for that matter, has anyone from the Government ever
 6   asked you about any text messages?
 7   A    Yes.
 8   Q    Who?
 9   A    Special Agent Wyman, special agent --
10   Q    He's actually an assistant U.S. attorney.
11   A    Oh, I'm sorry.  My apologies.
12              MR. WYMAN:  I'll take it.  Thank you.
13              THE WITNESS:  I get the titles confused.  I
14   apologize.
15              Mr. Wyman, you know, multiple people during the
16   conversations.
17   Q    BY MR. AVENATTI:  A lot of people -- a lot of agents
18   asked you about text messages; right?
19   A    One or two in those conversations, yes.
20   Q    Let me direct your attention to 124.  You have it there;
21   right?
22   A    I do.
23   Q    And do you communicate regularly by text message, or at
24   least did you in 2017?
25   A    I did.
```

84

```
         1   Q    Do you recall in late April of 2017 we were trying to

         2   arrange for Mr. Johnson to see a potential new home?  Direct

         3   your attention to Exhibit 124 near the top.

         4   A    Of which page?

03:48PM   5   Q    Page 4 of 121.

         6            MR. WYMAN:  Your Honor --

         7            MR. AVENATTI:  I'm sorry, page 4 of 21.

         8            MR. WYMAN:  -- He's going to ask the witness to read

         9   from the document.  We would stipulate to its admissions.

03:48PM  10            MR. AVENATTI:  I haven't asked a question yet.

        11   Q    So, sir, if you go to 104.

        12   A    Okay.

        13   Q    Do you recall in late April of 2017 that we were trying

        14   to arrange to have Mr. Johnson go look at a home?

03:48PM  15   A    Yes.

        16   Q    And you suggested "sooner is better"; right?

        17   A    Yes.

        18   Q    And isn't it true that I suggested, "Can we do Saturday

        19   morning?  I agree, the sooner the better."

03:49PM  20   A    Yeah.  If you can reference the line number, that would

        21   help me find it faster.

        22   Q    104.  April 28, 2017.

        23   A    Yes.

        24   Q    Go to page 5 of 21.

03:50PM  25            Remember when Mr. Wyman asked you about that picture
```

```
  1  of Mr. Johnson with the guitar?
  2  A    Yes.
  3  Q    Now, in May of 2017, you reached out to Mr. Johnson and
  4  you asked him for a picture of him playing the guitar that you
03:51PM 5  could send with the offer; right?
  6  A    That's right.
  7  Q    And Mr. Johnson responded that he didn't have a picture,
  8  didn't he?
  9  A    I don't recall that particular response.
03:51PM 10  Q    Take a look at line 133 and see if that refreshes your
  11  recollection.
  12  A    Right.  He didn't at the time.  He did eventually send me
  13  one.
  14  Q    And isn't it true that Mr. Johnson, at that time, wrote
03:51PM 15  to you and stated:
  16       "By the time Michael signs the offer, which
  17       I'm hoping will be tonight or tomorrow, I could
  18       even run down sometime and snap one with my phone."
  19  A    Yeah.  Yes.
03:52PM 20  Q    So Mr. Johnson was aware that I was going to be signing
  21  this offer.  That's what you understood when you got that text
  22  message; right?
  23  A    Correct.
  24  Q    June 7, 2017, do you recall me sending you a text message
03:53PM 25  relating to the fact that we had funded escrow and I was
```

|  |  |
|---|---|
| 1 | assuming that you were handling the inspections? |
| 2 | A    So can you repeat the question. |
| 3 | Q    Sure.  Do you have a recollection that on June 7, 2017, I |
| 4 | texted you and informed you, "We funded escrow yesterday.  I am |
| 03:53PM 5 | assuming you are handling inspections.  Thanks." |
| 6 | A    Yes, I recall that. |
| 7 | Q    And you responded, "Yes.  Report coming today"; am I |
| 8 | right? |
| 9 | A    Yes. |
| 03:54PM 10 | Q    Do you have a recollection that on June 27, 2017, you |
| 11 | informed me that escrow was requesting an addition of a CAR |
| 12 | addendum in connection with the potential transaction? |
| 13 | A    Can you reference a line? |
| 14 | Q    292. |
| 03:55PM 15 | A    Yes. |
| 16 | Q    What did that relate to? |
| 17 | A    I do not remember what that related to.  CAR is a |
| 18 | California Association of Realtors addendum regarding credits. |
| 19 | I don't recall what the credits were for. |
| 03:55PM 20 | Q    That wasn't my fault, was it? |
| 21 | A    No. |
| 22 | Q    That was something that had nothing to do with me |
| 23 | whatsoever, did it? |
| 24 | A    Correct.  I believe -- well -- |
| 03:56PM 25 | Q    I don't want you to speculate or guess, sir.  If you have |

UNITED STATES DISTRICT COURT

          1    a firm recollection, that's fine, but don't speculate or guess

          2    in front of the jury, please.

          3    A    Okay.  I'd prefer to review my documents in regard to the

          4    credits before answering.

03:56PM    5    Q    Directing your attention to 462.  Do you have a

          6    recollection that an additional $20,000 deposit was made on

          7    September 29th, 2017, by my office?

          8    A    Yes.

          9    Q    Do you recall that?

03:57PM   10    A    I do.

         11    Q    And I sent you a text message telling you that that had

         12    been sent, and I asked you to confirm that it had been received

         13    by escrow in September of 2017.  Do you recall that?

         14    A    Are you referring to a -- I recall the instance.  Are you

03:57PM   15    referring to a specific --

         16    Q    Take a look at 462 through 465.

         17    A    Yep.  Yes.

         18    Q    And you confirmed that escrow had received it; right?

         19    A    Yes.

03:58PM   20    Q    What happened to that money?

         21    A    The money was immediately disbursed to the seller.

         22    Q    And when the transaction closed, the money was lost;

         23    right?

         24    A    That's correct.

03:58PM   25    Q    And the money had come from my firm; right?

88

```
 1              MR. WYMAN:  Objection.  Calls for speculation.
 2              MR. AVENATTI:  Well, strike that.
 3    Q    My firm had wired the money in.  We just established
 4    that; right?
 5    A    Yes.
 6    Q    Sir, isn't it true that I told you that as a result of
 7    all of the shenanigans --
 8              MR. WYMAN:  Objection.  Hearsay.
 9              THE COURT:  Repetition of your statement is hearsay.
10              MR. AVENATTI:  Let me ask a better question,
11    Your Honor.
12    Q    Sir, isn't it true that you understood in November of
13    2017, when the transaction did not close, that I was going to
14    refuse to sign the cancellation until I consulted a real estate
15    attorney about what had happened?
16    A    Yes.
17    Q    In fact, you sent me a text message that said:
18              "Escrow sent their cancellation form to you
19         via DocuSign.  Any reservations in signing it
20         tonight?"  On November 2nd, 2017; right?
21    A    That's correct.
22    Q    And I said, "I'm not signing that until I consult
23    counsel," didn't I?
24    A    Yes, you did.
25    Q    And you said, "Got it"; right?
```

The time stamps in the left margin read: 03:58PM (line 5), 03:59PM (line 10), 04:00PM (line 15), 04:00PM (line 20), 04:00PM (line 25).

```
          1    A    Yes.

          2    Q    Because you understood I was not a real estate attorney;

          3    correct?

          4    A    Correct.

04:01PM   5    Q    And on August 31st, 2017, you represented to Ms. Newman,

          6    quote, "Everybody wants this to close"; right?

          7    A    I don't have the communication in front of me, but I --

          8    that sounds accurate to me.

          9    Q    And that's what you understood on August 31st, 2017, that

04:02PM  10    everybody wanted it to close?

         11    A    Yes.

         12    Q    Take a look at Exhibit 84.  I believe Mr. Wyman asked you

         13    some questions about 84.

         14    A    Okay.

04:03PM  15    Q    And 84 is the amended escrow instructions relating to the

         16    $20,000 deposit that we were talking about moments ago; right?

         17    A    Yes.

         18    Q    And that money was received; right?

         19    A    Received by the seller, yes.

04:03PM  20    Q    Go to Exhibit 90, please.

         21         By the way, do you have any idea whether Mr. Johnson

         22    ever executed a power of attorney that gave me various

         23    decision-making authority relating to transactions?

         24    A    I am not aware of that.

04:04PM  25    Q    Do you know what the scope of my agreement was with
```

**UNITED STATES DISTRICT COURT**

```
 1   Mr. Johnson relating to what I would do for him and when?

 2   A     No.

 3   Q     Going back to Exhibit 90, do you have that, sir?

 4   A     I do.

 5   Q     The second sentence at the top --

 6                 I believe 90 is in evidence.  Can we publish that

 7   for the jury, please.

 8                 Second sentence reads, "The property can and will

 9   close under the LLC should you choose to do so."  Do you see

10   that?

11   A     Yes.

12   Q     Does that refresh your recollection that you were aware

13   that we were going to need to set up an LLC in order to close

14   the transaction?

15   A     With the loan, yes.  Not from the beginning.  I wasn't

16   aware of that in the beginning.

17   Q     It doesn't mean it wasn't true, though; right?  You just

18   weren't aware of it?

19   A     Right.

20                 MR. AVENATTI:  If we can have the second page of the

21   document, please.

22   Q     Mr. Wyman asked you about these terms in the middle of

23   the page.  Do you recall that?

24   A     Yes.

25   Q     But I want to ask you about a term that he didn't ask you
```

```
 1   about, which was the term of the loan.  How long was the loan
 2   going to be?
 3   A    According to this document, 12 months.
 4   Q    With a prepayment penalty of six months; right?
 5   A    Yes.
 6   Q    And you and I talked about that, did we not?
 7   A    I don't recall specific conversation about that.
 8   Q    You don't recall you and I discussing the fact that --
 9   well, strike that.
10        Do you recall that you were the one that suggested
11   that we get a loan to quickly close the transaction?  Do you
12   recall that?
13   A    I don't recall making the initial suggestion for that, no.
14   Q    Do you deny it, sir?
15        MR. WYMAN:  Objection.  Asked and answered.
16        THE COURT:  Overruled.
17   Q    BY MR. AVENATTI:  Do you deny that, sir?
18   A    I can't confirm or deny that.
19   Q    Okay.  And you referred me to Marty in order to get this
20   short-term loan so we could close the transaction and you could
21   get paid your commission; right?
22   A    Marty was referred by the listing agent.
23   Q    And you knew of Marty, no?
24   A    I did not know of Marty before that.
25   Q    Marty was referred by the listing agent through you;
```

The time stamps in the left margin are: 04:07PM (line 5), 04:07PM (line 10), 04:07PM (line 15), 04:07PM (line 20), 04:08PM (line 25).

```
        1   right?
        2   A    I believe I -- I believe she provided me the name and
        3   number and I forwarded it to you.
        4   Q    And you believe that that would be a way for us to
04:08PM 5   quickly close the transaction so you could get paid your
        6   commission; right?  Yes or no, sir?
        7            MR. WYMAN:  Compound question, Your Honor.
        8            MR. AVENATTI:  I'll strike it.  Let me ask a better
        9   question.
04:08PM 10  Q    How much money did you stand to get paid if this
        11  transaction closed?
        12           MR. WYMAN:  Relevance, Your Honor.
        13           THE COURT:  Overruled.
        14           THE WITNESS:  Approximately $12,000.
04:09PM 15  Q    BY MR. AVENATTI:  $12,000?
        16  A    Approximately.
        17  Q    And how do you calculate that?
        18  A    2-and-a-half percent of the contract price, subtract
        19  6 percent, times 85 percent.
04:09PM 20  Q    So the purchase price in this instance was $695,000;
        21  correct?
        22  A    Right.
        23  Q    Can you do the calculation for me?
        24  A    In my head, no.
04:09PM 25  Q    Okay.  It's 2 percent of the purchase price; right?
```

**UNITED STATES DISTRICT COURT**

1    A    Total for the one side is 2-and-a-half percent.  It comes

2    out to approximately 2 percent to me.

3    Q    And you understood that if we got this short-term loan

4    before the LLC was set up and before anything else was set up,

04:10PM 5  we could close the transaction and you could get paid; right?

6    A    Sounds like there's conflicting information there.  The

7    closing loan before the LLC or the LLC was for the loan, I

8    thought.

9    Q    I'm sorry, sir?

04:10PM 10  A    My understanding was that the LLC was being created --

11   Q    You understood if we got a short --

12          MR. WYMAN:  Your Honor, he's not letting the

13   witness --

14          MR. AVENATTI:  I thought he was done.  I'm sorry.

04:10PM 15         THE COURT:  Did you answer, sir?

16          THE WITNESS:  Sorry?

17          THE COURT:  Did you finish your answer?

18          THE WITNESS:  I don't remember where I left off.

19   Q    BY MR. AVENATTI:  Sir, you understood the faster we close

04:10PM 20  a transaction, the quicker you would get paid; right?

21   A    That's not the information I'm focusing on at the point --

22   Q    Sir, please, just answer my questions, okay?  Please

23   don't editorialize.

24          Here's my question:  You understood that the quicker

04:10PM 25  we closed the transaction, you would get paid, yes or no?

94

```
        1   A     I get paid when transactions close.

        2   Q     So the answer would be "yes"; right?

        3   A     We could say "yes."  Okay.  Yes.

        4   Q     When you met with the Government and they asked you

04:11PM  5   questions, did you answer their questions or did you

        6   editorialize?

        7             MR. WYMAN:  Objection.  Argumentative.

        8             THE COURT:  Sustained.

        9             MR. AVENATTI:  Document 92 -- Exhibit 92.

04:11PM 10   Q     By the way, before we get to that, when's the last time

       11   you met with individuals from the Government to prepare for

       12   your testimony here today?

       13   A     Actually, we haven't met in person prior to this.

       14   Q     How about telephone calls or Zoom calls, or things like

04:12PM 15   that?  When's the last time you had one of those with members

       16   of the prosecution team?

       17   A     Approximately one week ago.  I don't remember the exact

       18   date.  I can probably find it in my calendar, if you'd like.

       19   Q     You met with the Government on July 8th for about an hour

04:12PM 20   and 19 minutes.  Do you remember that?

       21   A     Yes.

       22   Q     And you met with the Government for about two hours and

       23   ten minutes on June 23, 2021.  Do you remember that?

       24   A     They were videoconference calls, but yes.

04:13PM 25   Q     Okay.  Do you draw a distinction between a
```

```
          1    videoconference call and an actual meeting in today's COVID
          2    environment, sir?
          3              MR. WYMAN:  Relevance, Your Honor.
          4              MR. AVENATTI:  All right.  Let me ask my next
04:13PM   5    question.
          6    Q    Let me be really specific.  You had a Webex
          7    videoconference on June 23, 2021, for about two hours and ten
          8    minutes; is that right?
          9    A    Yes.
04:13PM  10    Q    You then had a Webex videoconference on July 8th for
         11    about an hour and 19 minutes; is that correct?
         12    A    Yes.
         13    Q    And when you met with the Government -- I'm sorry.  I've
         14    got to -- when you had the Webex videoconference with the
04:13PM  15    Government, you were present; right?
         16    A    I was.
         17    Q    And Patrick McLaughlin -- right? -- he's your attorney?
         18    A    Yes.
         19    Q    Is he here today?
04:13PM  20    A    Yes, he is.
         21    Q    What is he wearing?
         22              MR. McLAUGHLIN:  I'm right behind you.
         23    Q    BY MR. AVENATTI:  He's the distinguished gentleman with
         24    the gray hair, with the blue tie and the gray suit; is that
04:14PM  25    right?
```

**UNITED STATES DISTRICT COURT**

```
 1   A     Yes.

 2   Q     And Special Agent Carlos was present, was he not?

 3   A     Which one is Special Agent Carlos?  Yes.

 4   Q     This fine-looking gentleman to my left.  Yes?

 5   A     Yes.

 6   Q     Okay.  And then Mr. Kim.  Mr. Kim is on the -- is on the

 7   end --

 8   A     Yes.

 9   Q     -- in the black suit and black tie?

10   A     Yes.

11   Q     He was there.

12         And then Mr. Wyman?

13   A     Yes.

14   Q     And Mr. Sagel; is that right?

15   A     Correct.

16   Q     Okay.  And when you had your videoconference with the

17   Government on those two occasions, did they review with you the

18   questions they were going to ask you here today?

19   A     Yes.

20   Q     It was kind of like a rehearsal for it.  It was kind of

21   like a dress rehearsal; right?

22   A     Didn't feel quite like a dress rehearsal.  Just questions,

23   answers about the documents.

24   Q     You understood that they were previewing for you the

25   questions they were going to ask you on the stand; right?
```

04:14PM (line 5)
04:14PM (line 10)
04:14PM (line 15)
04:14PM (line 20)
04:15PM (line 25)

```
  1   A      Some of it, yes.

  2   Q      And did that occur on both days, on both July -- or

  3   June 23 and July 8?

  4   A      Yes.

  5   Q      Now, prior to that, when had you communicated with the

  6   Government about this case?

  7   A      Sometime in 2019 I was called by a U.S. attorney

  8   approximately the same time the news came out about the charges

  9   against you.

 10   Q      On about April 1st of 2019; is that right?

 11   A      That sounds about right.  I don't remember the exact date.

 12   Q      But you remember that the Government came to you or

 13   contacted you for the first time after I had been arrested?

 14   A      Yes.

 15   Q      You had no contact with the Government about anything

 16   you've testified here to -- or about today before I was

 17   arrested, true?

 18   A      That's true.

 19   Q      And in that first communication you had with the

 20   Government, you informed them about these text messages, that

 21   they existed; right?

 22   A      I don't recall the specifics or that specifically.  It's

 23   possible.

 24          MR. AVENATTI:  Your Honor, may I approach briefly?

 25          THE COURT:  You may.
```

04:15PM  5
04:16PM 10
04:16PM 15
04:17PM 20
04:17PM 25

**UNITED STATES DISTRICT COURT**

```
        1              MR. SAGEL:  Your Honor, would I be able to excuse
        2    the next witness?
        3              THE COURT:  Yes.
        4              MR. SAGEL:  Thank you, Your Honor.
04:17PM 5    Q    BY MR. AVENATTI:  Take a look at paragraph 12.  My
        6    question is, does that refresh your recollection that you told
        7    the Government that you had text messages on the very first
        8    time that you met with them?
        9    A    Yes.
04:18PM 10   Q    How long after this did they ask to see your phone?
       11    A    I don't remember.
       12    Q    This was an in-person interview that you sat for on
       13    April 1st, 2019; am I correct?
       14    A    This is a phone call.
04:18PM 15   Q    How much time passed between this -- well, strike that.
       16    Let me see if I can refresh your recollection.
       17              Your Honor, it's the same document I asked about
       18    before.
       19              THE COURT:  Okay.
04:19PM 20   Q    BY MR. AVENATTI:  Sir, I've handed you a document.  I
       21    want you to look at the top of the document.  There's a date.
       22    My question is, does that refresh your recollection that about
       23    a week after you first spoke to the Government they asked you
       24    for your phone?
04:20PM 25              Sir, you appear to be comparing documents.  I'm
```

UNITED STATES DISTRICT COURT

|  |  |
|---|---|
| 1 | asking you to just take a look at the document that I handed |
| 2 | you. |
| 3 | And my question is, does that refresh your |
| 4 | recollection? |
| 04:20PM 5 | A    They appear to be conflicting dates on what is in the |
| 6 | folder here and what you handed me. |
| 7 | Q    Sir, that's not my question. |
| 8 | Move to strike. |
| 9 | THE COURT:  Denied. |
| 04:20PM 10 | MR. AVENATTI:  Your Honor -- I'm sorry. |
| 11 | Q    Mr. Goeders, you understand that the defense is not |
| 12 | responsible for these extraction reports; right? |
| 13 | A    Correct. |
| 14 | Q    Okay.  You understand that those are government |
| 04:20PM 15 | documents; right? |
| 16 | A    Yes. |
| 17 | Q    Okay.  So take a look at the document -- sir, take a look |
| 18 | only at the document that I have handed you.  Okay?  If I'm |
| 19 | trying to trick you, I'm sure the Government will object.  I'm |
| 04:21PM 20 | not trying to trick you. |
| 21 | So take a look at the document that I've handed you, |
| 22 | and you'll see a date at the top. |
| 23 | My question is, does that refresh your recollection |
| 24 | that it was about a week after you first had contact with the |
| 04:21PM 25 | Government that they got your phone? |

1  A    The date on here is a week after.  I do not specifically

2  recall it, but that's the date on the document, yes.

3  Q    As best as you can recall, is that a fair estimate of how

4  long -- how much time transpired between the two dates?

04:21PM 5  A    I don't recall.  I'm looking at another document that says

6  May -- May 23rd.  I just don't recall.

7  Q    That date is on Exhibit 124?

8  A    Yes.

9  Q    Before you testified here today, did you have any contact

04:22PM 10  with me similar to what you had with the Government when you

11  were rehearsing your questions and answers?

12  A    I did not.

13  Q    How about Mr. Steward, have you ever communicated with

14  Mr. Steward about what we might ask you and what you might

04:22PM 15  answer?

16  A    No.

17  Q    Between April 1st of 2019 and June 23, 2021, over two

18  years, did you have any contact with the Government about me or

19  this case?

04:23PM 20  A    What were the dates again?  I'm sorry.

21  Q    April 1st, 2019, and June 23, 2021.

22  A    You're asking me if I had contact with them?

23  Q    Here's my question:  Between April 1st, 2019, and

24  June 23, 2021, did you have any contact with anyone from the

04:23PM 25  federal government relating to me or this case?

```
 1   A     Yes.

 2   Q     When?

 3   A     I do not recall the dates.

 4   Q     But there were multiple dates?

 5   A     Yes.

 6   Q     What happened on those dates?

 7   A     I was notified that I would be asked to testify.

 8   Q     Okay.  Who notified you?

 9   A     I don't remember.

10   Q     All right.  So that was one date.  What was the next

11   date?

12   A     As far as I can recall, they were all in regards to being

13   asked to testify, and it was updates in regards to the timing.

14   Q     Did you ever send any e-mails to anyone on the government

15   team, any of the special agents or prosecutors?

16   A     Yes.  We had e-mail communication.

17   Q     About topics that you've testified about; right?

18   A     The e-mails were -- no.  Not about topics.

19   Q     Were they about this case?

20   A     Yes.  The subpoena and the timing of when I might testify.

21   Q     But you never sent any e-mail to the federal

22   government --

23                I'm just clarifying, Mr. Wyman.  Strike that.

24                Am I correct that you didn't send any e-mails to the

25   Government about any of the issues that you testified to here
```

04:23PM 5
04:24PM 10
04:24PM 15
04:25PM 20
04:25PM 25

**UNITED STATES DISTRICT COURT**

today?

MR. WYMAN: Asked and answered.

THE COURT: Overruled.

THE WITNESS: I don't recall the timing.

04:25PM Q BY MR. AVENATTI: I'm not asking you about the timing. I'm asking you about the subject.

A I apologize. Can you please repeat the question.

Q I know it's been a long day. I'm sorry.

Did you have any communications with any member of 04:26PM the government's prosecution or investigative team -- I'm talking about these gentlemen in the courtroom -- as it relates to the topics of this case, including your work on the real estate transactions?

A Yes.

04:26PM Q How many and when?

A I don't recall.

Q Were there multiple e-mails?

A Yes.

THE COURT: Sir, this is becoming cumulative.

04:26PM MR. AVENATTI: I'm just trying to lay a foundation.

THE COURT: Sir, this is becoming cumulative.

MR. AVENATTI: I understand. I'll move on, Your Honor.

THE COURT: I think we'll just stop here for the 04:26PM day, ladies and gentlemen.

| | |
|---|---|
| 1 | Please remember the admonition not to discuss the |
| 2 | case with anyone and not to form any opinion on the issues in |
| 3 | the case until it's submitted to you.  And please don't do any |
| 4 | research. |
| 04:26PM 5 | So we'll start again on Tuesday, our regular day, |
| 6 | 9:00 to 12:00 and 1:30 to 4:30. |
| 7 | So I'll trust you have a good weekend. |
| 8 | THE COURTROOM DEPUTY:  All rise. |
| 9 | **(Out of the presence of the jury.)** |
| 04:27PM 10 | THE COURT:  I'd invite pocket briefs of no more than |
| 11 | ten pages on the following question:  Federal Rules of Criminal |
| 12 | Procedure 16(b) sets forth the reciprocal discovery obligation |
| 13 | of the defendant.  To what extent does that obligation extend |
| 14 | to documents which the defendant uses in cross-examination |
| 04:28PM 15 | other than for the purposes of impeachment and refreshing |
| 16 | recollection? |
| 17 | MR. WYMAN:  Thank you, Your Honor. |
| 18 | THE COURT:  Is the question clear? |
| 19 | MR. SAGEL:  Yes, Your Honor. |
| 04:28PM 20 | MR. AVENATTI:  Yes, sir.  When would you like that? |
| 21 | THE COURT:  Noon Monday. |
| 22 | MR. AVENATTI:  Thank you, sir. |
| 23 | THE COURT:  Anything for the record before we |
| 24 | conclude? |
| 04:28PM 25 | MR. WYMAN:  One matter, Your Honor.  As we were |

coming in from the lunch break, I got a notice of electronic

filing and then I saw a paper copy of what the defendant filed

during the lunch break.  He stated that the Social Security

documents that came up before lunch were produced to the

defense on July 14th, that's bolded and underlined.  And then

it says that I received the documents on July 12th, and that's

bolded and underlined.  And then he says that the letter

accompanying them said that the Government is immediately

producing the same day we receive them.

I'm not sure what he's referring to.  I think that

language came from a separate discovery letter.  I have the

e-mail with the discovery letter.  It's from July 13th, so the

day after.  I don't think it matters from a timeliness

perspective, but I did want to at least correct the record,

given that filing.

MR. AVENATTI:  Your Honor, I have the letter dated

July 14.  It appears to include the Bates range.  I'm happy to

hand it up for Your Honor.

THE COURT:  I have it.  I have the document, the

document that you filed.

MR. AVENATTI:  Well, I have the actual enclosure

letter if Your Honor would like to see it.  But I think we're

beyond it at this point.  I don't know that a day makes a

difference.

THE COURT:  Not as far as that's concerned.

1          MR. AVENATTI:  Fair enough.

2          THE COURT:  Anything else for the record before we

3    conclude?

4          MR. AVENATTI:  Nothing from the defense, Your Honor.

04:30PM 5    Thank you.  Have a nice weekend.

6          MR. WYMAN:  Also for the record, Your Honor, at

7    lunch today I e-mailed Mr. Steward a list of the particular

8    pages in the custodian of record declaration exhibits to which

9    the business record exhibits apply.  I assume they will have an

04:30PM 10   opportunity to look at it prior to our next proceeding.

11         THE COURT:  Okay.  Then we're adjourned until 8:30.

12         MR. AVENATTI:  Your Honor, I have one question, just

13   briefly, quickly.  When do I get the list of witnesses for

14   Tuesday and the order?

04:30PM 15        MR. SAGEL:  Mr. Avenatti claims he has over an

16   eight-hour cross of our next witness, so I'm not sure what else

17   he wants.

18         THE COURT:  Who is that?

19         MR. SAGEL:  Ms. Regnier.  I'm sorry.  Ms. Regnier.

04:31PM 20        THE COURT:  What's your estimate of direct?

21         MR. SAGEL:  I think we told him between four to six

22   hours, and he said over eight hours of cross.

23         THE COURT:  Sounds like that takes care of Tuesday

24   and Wednesday.

04:31PM 25        MR. SAGEL:  I would think so.

1      MR. AVENATTI:  Your Honor, you may recall that

2 Ms. Regnier was the witness that the Government represented was

3 not important or a key witness in the case, but --

4      THE COURT:  Sir, we're not going to argue about

04:31PM 5 that.

6      MR. AVENATTI:  I understand.

7      THE COURT:  We're talking about scheduling here.

8 You have an estimate for the Government.  You've given the

9 Government an estimate.  That's all I ask.

04:31PM 10      MR. AVENATTI:  And I've done that, Your Honor.  I

11 just didn't know if they were still planning on calling

12 Ms. Regnier on Tuesday, that's all.

13      THE COURT:  I think that's been confirmed.

14      MR. AVENATTI:  Okay.  That's all I needed.  Thank

04:31PM 15 you.

16      THE COURT:  Okay.

17      THE COURTROOM DEPUTY:  All rise.  This Court is now

18 in recess.

19              **(Proceedings concluded at 4:32 p.m.)**

20                      **--oOo--**

21

22

23

24

25

1                    *CERTIFICATE OF OFFICIAL REPORTER*

2

3   COUNTY OF LOS ANGELES    )
                             )
4   STATE OF CALIFORNIA      )

5             I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6   COURT REPORTER, in and for the United States District Court for

7   the Central District of California, do hereby certify that

8   pursuant to Section 753, Title 28, United States Code that the

9   foregoing is a true and correct transcript of the

10  stenographically reported proceedings held in the

11  above-entitled matter and that the transcript page format is in

12  conformance with the regulations of the Judicial Conference of

13  the United States.

14

15  *Date:  July 23, 2021*

16

17

18

19                              */S/ DEBBIE HINO-SPAAN*

20                              *Debbie Hino-Spaan, CSR No. 7953*
                                *Federal Official Court Reporter*

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

## $

**$1,900** [2] - 26:15, 28:4
**$12,000** [2] - 92:14, 92:15
**$15,000** [2] - 6:18, 7:8
**$2,000** [1] - 7:10
**$20,000** [2] - 87:6, 89:16
**$350** [1] - 52:11
**$417,000** [1] - 52:15
**$695,000** [1] - 92:20

## '

**'longer** [1] - 15:16
**'structure** [2] - 28:17
**'the** [1] - 20:14
**'Well** [1] - 14:23

## /

**/S** [1] - 107:19

## 1

**1** [7] - 34:23, 36:17, 36:25, 48:8, 55:25, 59:6, 81:15
**1,900** [1] - 6:22
**1-053** [1] - 1:24
**10/13/2017** [3] - 4:9, 4:12, 4:14
**10/16/2017** [1] - 4:17
**10/18/2017** [1] - 4:19
**1002** [3] - 9:14, 9:17, 9:19
**1005** [6] - 3:13, 10:15, 10:19, 11:1, 11:3, 11:5
**1006** [11] - 3:14, 5:16, 5:19, 8:13, 9:16, 9:20, 9:22, 10:15, 11:7, 11:9, 11:10
**104** [2] - 84:11, 84:22
**10:00** [2] - 12:12, 12:22
**10th** [2] - 50:16, 51:5
**11** [2] - 3:13, 3:14
**1100** [1] - 2:11
**11:30** [1] - 59:16
**12** [2] - 91:3, 98:5
**121** [1] - 84:5
**124** [9] - 80:25, 81:3, 81:6, 81:16, 82:24, 83:20, 84:3, 100:7
**12:00** [1] - 103:6
**12th** [3] - 9:1, 62:12, 104:6

## 2

**2** [13] - 1:9, 30:19, 35:14, 36:4, 37:18, 50:4, 53:10, 55:24, 55:25, 57:10, 81:16, 92:25, 93:2
**2,000** [1] - 6:19
**2-and-a-half** [2] - 92:18, 93:1
**20** [1] - 7:5
**20,000** [1] - 50:22
**2012** [1] - 19:17
**2014** [2] - 12:12, 12:22
**2015** [5] - 25:14, 25:17, 26:8, 26:13, 27:6
**2016** [1] - 27:11
**2017** [43] - 27:11, 31:15, 31:24, 34:24, 37:12, 40:17, 41:2, 41:18, 42:13, 43:5, 43:18, 44:10, 47:4, 47:18, 49:11, 49:12, 50:2, 50:16, 51:5, 51:24, 55:10, 57:24, 59:8, 59:21, 61:12, 62:12, 65:4, 65:11, 67:17, 83:24, 84:1, 84:13, 84:22, 85:3, 85:24, 86:3, 86:10, 87:7, 87:13, 88:13, 88:20, 89:5, 89:9
**2018** [2] - 10:20, 27:11
**2019** [18] - 6:2, 6:3,

6:13, 6:25, 7:4, 7:11, 10:1, 10:6, 19:3, 77:23, 78:4, 78:7, 97:7, 97:10, 98:13, 100:17, 100:21, 100:23
**2021** [9] - 1:15, 5:1, 9:1, 94:23, 95:7, 100:17, 100:21, 100:24, 107:15
**21** [2] - 84:7, 84:24
**213-894-2435** [1] - 2:12
**21923** [6] - 4:10, 4:13, 4:15, 4:18, 64:25, 65:2
**21st** [1] - 45:4
**22** [2] - 11:22, 12:7
**22nd** [2] - 17:16, 19:3
**23** [9] - 1:15, 5:1, 94:23, 95:7, 97:3, 100:17, 100:21, 100:24, 107:15
**23rd** [1] - 100:6
**254** [1] - 2:19
**25th** [1] - 47:18
**27** [1] - 86:10
**28** [2] - 84:22, 107:8
**28,700** [3] - 6:15, 7:6, 7:7
**29** [1] - 25:17
**292** [1] - 86:14
**29th** [2] - 50:2, 87:7
**2:59** [1] - 66:7
**2nd** [1] - 88:20

## 3

**3** [7] - 38:19, 42:7, 42:10, 47:16, 47:22, 65:11, 76:24
**3/22/2019** [1] - 3:15
**30** [2] - 39:1, 39:10
**31** [1] - 3:5
**312** [1] - 2:11
**31st** [5] - 41:18, 42:13, 47:4, 89:5, 89:9
**34** [2] - 3:17, 3:19
**37** [2] - 17:12, 17:16
**380** [1] - 16:20
**391** [1] - 16:21
**3:17** [1] - 66:7
**3:43** [1] - 59:20
**3rd** [2] - 37:11, 65:4

## 4

**4** [11] - 25:4, 25:17, 25:18, 26:9, 28:4, 30:10, 30:19, 36:9,

41:7, 84:5, 84:7
**40** [1] - 3:21
**403** [2] - 74:5, 74:12
**405** [4] - 16:17, 16:24, 17:2, 17:8
**408** [10] - 3:15, 16:18, 16:24, 17:3, 17:11, 17:13, 17:19, 22:6, 30:15
**411** [2] - 1:24, 2:6
**4118** [1] - 82:1
**44** [1] - 3:23
**45** [1] - 39:1
**451,750** [1] - 52:23
**462** [2] - 87:5, 87:16
**465** [1] - 87:16
**468** [1] - 16:22
**47** [1] - 4:5
**49** [1] - 4:7
**4:30** [1] - 103:6
**4:32** [1] - 106:19
**4th** [1] - 2:6
**4TH** [1] - 1:24

## 5

**5** [4] - 3:3, 36:16, 41:20, 84:24
**5,415** [1] - 6:16
**5/1/2017** [1] - 3:17
**5/3/2017** [1] - 3:19
**5/31/2017** [1] - 3:21
**51** [1] - 4:9
**54** [1] - 4:12
**55** [1] - 4:14
**57** [1] - 4:17
**59** [1] - 4:19

## 6

**6** [2] - 53:17, 92:19
**60** [8] - 3:15, 14:16, 14:23, 17:13, 22:6, 22:10, 42:5
**60-day** [2] - 39:14, 42:13
**608** [1] - 74:5
**61** [1] - 3:6
**695** [1] - 52:25
**695,000** [1] - 42:3

## 7

**7** [5] - 12:12, 12:21, 78:19, 85:24, 86:3
**714-338-3598** [1] - 2:7
**753** [1] - 107:8
**76** [8] - 3:17, 34:3, 34:7, 34:15, 34:18, 34:20, 34:22, 40:8

**77** [7] - 3:19, 34:3, 34:7, 34:15, 34:18, 34:20, 37:7
**79** [5] - 3:21, 40:13, 40:20, 40:22, 40:23
**7953** [2] - 1:23, 107:20

## 8

**8** [2] - 1:8, 97:3
**8,000** [1] - 7:5
**8.99** [1] - 53:2
**8/21/2017** [1] - 3:23
**8/31/2017** [1] - 4:5
**80** [5] - 3:23, 44:16, 44:22, 44:24, 44:25
**8000** [1] - 2:6
**81** [6] - 4:3, 46:13, 46:16, 46:22, 46:25, 47:1
**817-BK-11961CV** [1] - 19:1
**818** [1] - 82:23
**818-489-5927** [1] - 82:2
**84** [8] - 4:7, 49:16, 49:22, 49:24, 49:25, 89:12, 89:13, 89:15
**85** [1] - 92:19
**86** [3] - 64:21, 65:3, 67:12
**89** [5] - 4:12, 54:6, 54:14, 54:17, 54:18
**8:30** [1] - 105:11
**8th** [2] - 94:19, 95:10

## 9

**9** [1] - 3:4
**9/27/2017** [1] - 4:7
**90** [8] - 4:9, 51:10, 51:17, 51:19, 51:20, 89:20, 90:3, 90:6
**90012** [1] - 2:12
**9024** [1] - 16:18
**92** [7] - 4:14, 55:13, 55:20, 55:22, 55:23, 94:9
**92660** [1] - 2:19
**92701** [2] - 1:25, 2:7
**93** [3] - 62:1, 62:3
**949** [1] - 82:1
**949-481-4900** [1] - 2:20
**96** [4] - 4:17, 56:20, 57:2, 57:9
**97** [4] - 4:19, 58:9, 58:16, 59:3
**9:00** [1] - 103:6

## A

**a.m** [3] - 12:12, 12:22, 59:16
**ability** [3] - 23:6, 38:3, 48:10
**able** [8] - 14:7, 17:15, 44:1, 48:6, 52:7, 53:4, 54:5, 98:1
**above-entitled** [1] - 107:11
**absolutely** [4] - 15:21, 26:5, 26:12, 30:12
**abundance** [2] - 23:17, 24:3
**acceptable** [4] - 12:1, 15:20, 17:21, 56:13
**accepted** [1] - 39:23
**accompanying** [1] - 104:8
**according** [6] - 14:20, 65:18, 65:21, 67:16, 68:12, 91:3
**account** [5] - 6:23, 25:13, 28:8, 29:25, 30:2
**accounting** [1] - 28:12
**accounts** [2] - 19:25, 20:6
**accurate** [6] - 10:22, 24:18, 24:23, 34:11, 63:6, 89:8
**accurately** [1] - 29:3
**accused** [1] - 30:10
**active** [1] - 13:16
**activity** [1] - 70:22
**actual** [2] - 95:1, 104:21
**Addendum** [1] - 4:8
**addendum** [2] - 86:12, 86:18
**addition** [2] - 45:15, 86:11
**additional** [4] - 50:10, 50:18, 52:13, 87:6
**address** [2] - 37:23, 64:22
**addresses** [1] - 12:17
**adjourned** [1] - 105:11
**admissions** [1] - 84:9
**admit** [10] - 34:15, 40:20, 44:22, 46:22, 49:22, 51:17, 54:14, 55:20, 57:1, 58:16
**admonition** [2] - 65:25, 103:1
**ADR** [1] - 13:8
**advance** [1] - 30:7
**advised** [1] - 13:8
**afternoon** [8] - 5:13,

5:14, 9:12, 9:13, 31:10, 59:20, 61:3, 61:4
**Agent** [9] - 7:14, 8:18, 8:22, 8:24, 83:9, 96:2, 96:3
**agent** [18] - 31:13, 31:15, 31:20, 33:25, 34:1, 34:12, 35:1, 35:19, 37:4, 37:14, 38:24, 40:4, 47:13, 69:18, 78:24, 83:9, 91:22, 91:25
**agents** [4] - 78:22, 79:21, 83:17, 101:15
**ago** [3] - 60:16, 89:16, 94:17
**agree** [2] - 79:1, 84:19
**agreed** [1] - 80:2
**agreement** [11] - 22:9, 22:17, 22:20, 22:21, 23:1, 23:2, 24:6, 24:24, 25:2, 50:9, 89:25
**Agreement** [2] - 3:21, 24:10
**agreements** [2] - 23:12, 23:18
**ahead** [2] - 15:7, 80:20
**al** [2] - 12:9, 12:25
**alex.wyman@usdoj. gov** [1] - 2:13
**ALEXANDER** [1] - 2:10
**all-cash** [4] - 32:6, 32:20, 38:4, 42:11
**alleged** [1] - 6:15
**allow** [4] - 33:5, 72:11, 79:14, 79:23
**amended** [1] - 89:15
**amendment** [2] - 50:14, 50:18
**AMERICA** [1] - 1:5
**amount** [8] - 6:14, 15:12, 26:15, 28:3, 38:12, 52:14, 52:17, 52:22
**Ana** [1] - 2:7
**ANA** [3] - 1:17, 1:25, 5:1
**ANGELES** [1] - 107:3
**Angeles** [8] - 2:12, 12:11, 12:21, 19:3, 21:13, 22:2, 25:4, 38:6
**angst** [1] - 13:21
**answer** [23] - 26:20, 26:21, 29:3, 29:11, 30:17, 43:8, 43:9, 63:15, 63:22, 63:23,

72:11, 72:17, 72:19, 73:1, 73:4, 73:7, 93:15, 93:17, 93:22, 94:2, 94:5, 100:15
**answered** [6] - 66:19, 75:4, 76:8, 76:16, 91:15, 102:2
**answering** [2] - 72:14, 87:4
**answers** [3] - 18:22, 96:23, 100:11
**apologies** [1] - 83:11
**apologize** [2] - 9:21, 43:12, 83:14, 102:7
**appear** [6] - 27:7, 30:5, 53:17, 60:8, 98:25, 99:5
**appearances** [2] - 12:24, 13:1
**APPEARANCES** [1] - 2:1
**appeared** [2] - 15:9, 60:10
**Application** [1] - 53:18
**application** [1] - 54:3
**apply** [2] - 52:12, 105:9
**appointment** [1] - 59:12
**approach** [3] - 80:15, 82:25, 97:24
**appropriate** [2] - 15:23, 16:9
**approval** [5] - 32:14, 45:11, 46:3, 46:6, 60:18
**approve** [2] - 15:17, 42:25
**approved** [4] - 14:21, 44:14, 49:1, 60:2
**April** [11] - 6:2, 6:13, 31:24, 84:1, 84:13, 84:22, 97:10, 98:13, 100:17, 100:21, 100:23
**Area** [1] - 82:1
**argue** [1] - 106:4
**argumentative** [1] - 19:20
**Argumentative** [1] - 94:7
**arising** [1] - 80:9
**arrange** [2] - 84:2, 84:14
**arrested** [2] - 97:13, 97:17
**ASAP** [1] - 57:20
**assets** [2] - 19:24, 27:23

**assignee** [7] - 36:15, 36:19, 41:25, 68:13, 68:15, 68:16, 68:22
**assist** [1] - 13:24
**Assistant** [2] - 2:5, 2:10
**assistant** [2] - 17:22, 83:10
**Associates** [1] - 20:20
**Association** [1] - 86:18
**assume** [1] - 105:9
**assumes** [1] - 67:8
**assuming** [2] - 86:1, 86:5
**attached** [4] - 9:3, 41:6, 48:1, 54:3
**attachment** [5] - 36:5, 36:7, 37:16, 37:19, 50:4
**attempt** [1] - 6:12
**attempting** [4] - 45:22, 63:23, 64:23, 72:13
**attention** [6] - 16:6, 67:11, 82:24, 83:20, 84:3, 87:5
**attorney** [22] - 6:23, 10:8, 17:22, 19:8, 19:19, 29:14, 30:2, 30:4, 35:18, 48:11, 48:12, 48:14, 48:23, 48:24, 61:7, 66:25, 83:10, 88:15, 89:2, 89:22, 95:17, 97:7
**Attorney** [7] - 2:4, 2:5, 2:9, 2:10, 12:14, 12:15, 12:20
**attorney's** [1] - 48:7
**attorney-client** [2] - 29:14, 30:2
**audible** [3] - 43:6, 52:1, 62:16
**August** [7] - 44:10, 45:4, 47:4, 47:18, 49:11, 89:5, 89:9
**authority** [1] - 89:23
**authorize** [1] - 78:12
**available** [5] - 33:15, 42:20, 42:21, 46:14, 59:15
**aVENATTI** [1] - 102:5
**Avenatti** [66] - 3:3, 3:6, 3:16, 3:19, 3:24, 4:6, 4:8, 4:10, 4:12, 4:15, 4:17, 4:20, 5:6, 6:24, 10:8, 11:12, 12:14, 13:2, 13:12, 17:15, 18:25, 19:2, 19:4, 19:13, 19:18, 20:8, 20:12, 20:15,

20:19, 20:20, 20:23, 21:19, 22:22, 24:9, 25:11, 25:12, 26:2, 26:7, 27:18, 27:23, 29:5, 29:24, 31:17, 33:23, 36:3, 36:13, 36:15, 36:19, 39:14, 40:12, 41:13, 41:25, 42:22, 46:5, 48:15, 48:20, 51:2, 58:18, 58:20, 60:22, 60:25, 66:8, 73:11, 105:15
**AVENATTI** [104] - 1:8, 2:15, 2:16, 5:7, 5:12, 8:9, 9:7, 9:19, 11:2, 11:8, 11:13, 12:3, 13:2, 13:11, 13:15, 14:13, 15:9, 17:7, 18:12, 18:17, 30:17, 34:16, 39:17, 40:21, 44:23, 46:23, 49:23, 51:18, 54:16, 55:21, 57:3, 58:17, 61:2, 62:20, 63:24, 64:8, 64:15, 64:20, 65:11, 65:20, 66:9, 66:12, 66:22, 67:5, 67:11, 67:23, 68:1, 72:3, 72:5, 72:12, 72:18, 73:3, 73:5, 73:8, 73:17, 73:20, 74:7, 74:14, 74:22, 75:6, 75:12, 75:20, 76:9, 76:12, 76:14, 76:18, 76:22, 77:24, 80:13, 80:15, 80:17, 80:21, 83:3, 83:17, 84:7, 84:10, 88:2, 88:10, 90:20, 91:17, 92:8, 92:15, 93:14, 93:19, 94:9, 95:4, 95:23, 97:24, 98:5, 98:20, 99:10, 102:20, 102:22, 103:20, 103:22, 104:16, 104:21, 105:1, 105:4, 105:12, 106:1, 106:6, 106:10, 106:14
**Avenatti's** [2] - 33:14, 58:25
**aware** [10] - 68:1, 71:18, 75:1, 75:24, 76:6, 85:20, 89:24, 90:12, 90:16, 90:18

## B

**Baca** [2] - 12:9, 12:25
**back-and-forth** [1] - 59:23

**balance** [1] - 6:15
**Balboa** [2] - 33:10, 37:22
**Bank** [2] - 25:13
**bank** [4] - 6:23, 19:24, 20:6, 29:24
**Barela** [2] - 20:10, 30:9
**based** [7] - 13:23, 32:19, 38:24, 45:13, 50:14, 53:22, 60:8
**basis** [2] - 23:20, 38:4
**Bates** [1] - 104:17
**bathrooms** [2] - 33:3, 33:6
**Beach** [1] - 2:19
**becoming** [2] - 102:19, 102:21
**bedrooms** [1] - 33:3
**begin** [1] - 5:7
**beginning** [12] - 26:8, 38:1, 38:13, 47:22, 53:24, 62:24, 63:4, 63:8, 63:12, 68:8, 90:15, 90:16
**behalf** [3] - 13:3, 21:3, 21:12
**behind** [4] - 30:25, 34:3, 81:2, 95:22
**belongs** [1] - 20:10
**below** [7] - 35:14, 35:20, 41:12, 42:2, 45:18, 50:17, 52:18
**benefits** [6] - 6:13, 7:2, 7:3, 7:10, 7:23, 43:1
**best** [3] - 26:1, 78:3, 100:3
**better** [6] - 70:5, 78:10, 84:16, 84:19, 88:10, 92:8
**between** [12] - 22:2, 39:4, 50:9, 54:12, 70:11, 73:18, 94:25, 98:15, 100:4, 100:17, 100:23, 105:21
**beyond** [1] - 104:23
**bimonthly** [1] - 27:10
**binder** [2] - 34:2, 81:2
**bit** [2] - 42:6, 52:16
**black** [2] - 96:9
**blank** [2] - 53:15, 53:17
**block** [2] - 50:24, 50:25
**blow** [4] - 35:7, 45:5, 50:23, 52:21
**blue** [1] - 95:24
**Board** [2] - 14:21,
15:17
**bolded** [2] - 104:5, 104:7
**book** [1] - 16:20
**borrower/guarantor** [2] - 52:8, 53:5
**bottom** [8] - 5:24, 41:9, 45:20, 50:24, 54:19, 55:24, 55:25, 57:17
**Bradley** [1] - 17:23
**break** [5] - 5:15, 65:24, 67:7, 104:1, 104:3
**BRETT** [1] - 2:5
**brett.sagel@usdoj.**
**gov** [1] - 2:8
**bridge** [1] - 14:7
**briefly** [3] - 30:15, 97:24, 105:13
**briefs** [1] - 103:10
**bring** [1] - 55:3
**Brock** [1] - 20:9
**broke** [1] - 67:12
**broker** [1] - 69:17
**bunch** [1] - 29:1
**business** [4] - 38:20, 39:20, 105:9
**busy** [1] - 16:1
**buy** [1] - 69:19
**buyer** [1] - 33:20, 36:12, 38:17, 39:4, 40:5, 40:9, 41:12, 50:9, 50:21, 59:14, 59:15
**buyer's** [1] - 44:7
**buying** [2] - 35:15, 35:18
**BY** [44] - 2:5, 2:18, 3:3, 3:5, 5:12, 8:9, 9:11, 9:25, 19:12, 31:9, 39:22, 46:16, 47:2, 50:1, 54:19, 55:24, 57:10, 60:16, 61:2, 64:15, 64:20, 65:11, 65:20, 66:12, 66:22, 67:5, 67:11, 68:1, 74:7, 74:14, 74:22, 75:6, 75:20, 76:18, 76:22, 77:24, 83:17, 91:17, 92:15, 93:19, 95:23, 98:5, 98:20, 102:5

**C**

**CA** [1] - 1:25
**calculate** [1] - 92:17
**calculation** [1] - 92:23
**calendar** [3] - 13:7,
16:1, 94:18
**California** [10] - 2:7, 2:12, 2:19, 12:11, 12:21, 19:3, 25:13, 31:11, 86:18, 107:7
**CALIFORNIA** [4] - 1:2, 1:17, 5:1, 107:4
**CALLED** [2] - 3:3, 3:5
**cancel** [5] - 43:7, 43:21, 60:3, 60:5, 75:21
**canceled** [3] - 71:9, 71:24, 72:23
**canceling** [1] - 44:7
**cancellation** [3] - 60:11, 88:14, 88:18
**cannot** [2] - 66:25, 74:2
**Cantrall** [1] - 12:20
**CAR** [2] - 86:11, 86:17
**care** [1] - 105:23
**career** [1] - 15:3
**Carlos** [6] - 7:14, 8:22, 12:15, 13:2, 96:2, 96:3
**Case** [3] - 1:7, 12:9, 19:1
**case** [27] - 12:24, 13:10, 14:10, 15:3, 15:25, 16:2, 16:7, 17:16, 21:3, 21:15, 21:20, 21:24, 23:15, 30:10, 31:17, 48:7, 65:25, 66:1, 77:15, 97:6, 100:19, 100:25, 101:19, 102:12, 103:2, 103:3, 106:3
**cases** [1] - 18:3
**cash** [10] - 6:14, 6:22, 32:6, 32:20, 33:15, 35:18, 35:25, 38:4, 38:15, 42:11
**caution** [2] - 23:17, 24:3
**cell** [2] - 78:16, 78:17
**central** [1] - 29:25
**Central** [1] - 107:7
**CENTRAL** [1] - 1:2
**certain** [3] - 10:16, 40:8, 79:24
**certificate** [1] - 16:14
**CERTIFICATE** [1] - 107:1
**CERTIFIED** [1] - 1:6
**certified** [2] - 16:18, 16:25
**certify** [1] - 107:7
**chain** [4] - 47:2, 47:3, 47:9, 58:12
**chance** [3] - 43:14, 46:14, 81:11
**charge** [1] - 20:2
**charged** [1] - 78:6
**charges** [1] - 97:8
**Chase** [3] - 70:17, 70:19, 70:20
**chats** [1] - 82:18
**check** [5] - 25:18, 25:21, 27:6, 70:22
**checking** [1] - 57:18
**checks** [1] - 26:14
**choose** [2] - 52:10, 90:9
**civil** [1] - 18:3
**claims** [1] - 105:15
**Claims** [1] - 24:11
**clarification** [1] - 48:3
**clarifying** [2] - 76:9, 101:23
**clause** [1] - 22:23
**clean** [2] - 41:5, 75:12
**clear** [5] - 23:13, 59:20, 68:6, 68:20, 103:18
**CLERK** [1] - 12:23
**client** [17] - 15:20, 20:17, 20:19, 20:20, 25:13, 29:14, 30:2, 30:4, 31:25, 48:16, 56:14, 61:6, 61:9, 66:15, 66:17, 66:24
**Client** [1] - 20:13
**client's** [1] - 48:11
**clients** [1] - 31:21
**close** [33] - 15:16, 38:13, 42:14, 42:17, 42:20, 43:4, 43:22, 44:1, 48:24, 50:13, 50:14, 52:10, 60:17, 64:16, 64:23, 68:2, 68:21, 68:23, 69:20, 69:21, 69:22, 69:24, 88:13, 89:6, 89:10, 90:9, 90:13, 91:11, 91:20, 92:5, 93:5, 93:19, 94:1
**closed** [9] - 23:8, 23:19, 24:4, 44:6, 44:11, 60:1, 87:22, 92:11, 93:25
**closed-door** [3] - 23:8, 23:19, 24:4
**closer** [2] - 75:16, 75:18
**closing** [8] - 38:16, 49:12, 51:5, 59:23, 61:14, 61:17, 65:13, 93:7
**co** [1] - 21:19
**co-counsel** [1] - 21:19
**coaster** [1] - 45:23
**Code** [2] - 82:1, 107:8
**collateral** [1] - 29:23
**colloquy** [1] - 18:19
**Colorado** [2] - 12:15, 13:3
**coming** [5] - 29:24, 35:24, 37:2, 86:7, 104:1
**comment** [1] - 45:12
**commission** [2] - 91:21, 92:6
**common** [1] - 39:1
**commonly** [1] - 18:2
**communicate** [1] - 83:23
**communicated** [4] - 61:10, 73:23, 97:5, 100:13
**communication** [11] - 45:13, 45:17, 70:6, 71:18, 75:14, 75:20, 78:23, 79:21, 89:7, 97:19, 101:16
**communications** [4] - 29:14, 70:3, 71:14, 102:9
**company** [2] - 63:19, 65:12
**compare** [1] - 17:15
**comparing** [1] - 98:25
**complete** [1] - 15:23
**compound** [1] - 92:7
**computer** [1] - 79:11
**computers** [1] - 79:11
**concerned** [1] - 104:25
**conclude** [2] - 103:24, 105:3
**concluded** [1] - 106:19
**conclusion** [1] - 27:20
**condition** [1] - 74:11
**conference** [4] - 13:9, 14:4, 70:13, 71:3
**Conference** [1] - 107:12
**conferred** [1] - 60:15
**confident** [1] - 16:7
**confidential** [8] - 22:14, 22:15, 22:25, 23:3, 23:5, 23:12, 23:16, 24:2
**confidentiality** [3] - 22:10, 22:22, 23:22
**confirm** [4] - 38:3, 59:15, 87:12, 91:18
**confirmation** [1] - 37:21

confirmed [2] - 87:18, 106:13
confirming [1] - 58:4
conflicting [2] - 93:6, 99:5
conformance [1] - 107:12
confused [1] - 83:13
connection [9] - 29:20, 39:5, 67:6, 74:8, 74:17, 74:24, 75:25, 77:15, 86:12
consent [1] - 79:23
considerable [1] - 15:12
consistent [1] - 38:8
constitutes [1] - 24:1
consult [1] - 88:22
consulted [1] - 88:14
contact [9] - 6:1, 48:13, 48:18, 97:15, 99:24, 100:9, 100:18, 100:22, 100:24
contacted [2] - 6:12, 97:13
contacts [1] - 80:10
content [5] - 41:4, 59:2, 71:18
context [1] - 38:11
continuation [2] - 54:11, 55:16
continue [1] - 46:10
Continued [1] - 4:1
continued [2] - 14:8, 27:10
contract [13] - 33:14, 33:17, 35:5, 40:5, 40:7, 40:9, 41:5, 42:12, 43:7, 43:21, 60:5, 68:12, 92:18
contractual [1] - 68:20
control [3] - 19:24, 21:1, 48:5
conversation [15] - 9:25, 10:5, 32:19, 32:22, 39:6, 56:7, 60:5, 60:8, 60:12, 70:11, 71:21, 71:22, 72:21, 73:21, 91:7
conversations [4] - 71:16, 72:7, 83:16, 83:19
copies [1] - 34:11
copy [7] - 8:20, 8:22, 8:24, 10:22, 24:23, 80:18, 104:2
Corporate [1] - 2:18
correct [54] - 6:2, 6:7, 6:8, 7:8, 8:9, 8:19,

9:21, 10:12, 10:17, 10:18, 13:11, 14:14, 21:4, 21:7, 21:10, 21:13, 21:14, 21:16, 21:21, 22:3, 24:11, 25:14, 25:19, 27:12, 30:11, 35:13, 37:3, 43:19, 47:15, 56:10, 67:15, 68:3, 69:16, 69:23, 70:1, 71:8, 75:14, 77:1, 77:8, 82:15, 85:23, 86:24, 87:24, 88:21, 89:3, 89:4, 92:21, 95:11, 96:15, 98:13, 99:13, 101:24, 104:14, 107:9
Counsel [1] - 60:15
counsel [9] - 12:23, 13:1, 13:6, 13:8, 21:19, 22:7, 28:24, 29:17, 88:23
COUNSEL [2] - 2:1, 2:16
country [1] - 15:11
COUNTY [1] - 107:3
county [1] - 38:6
County [20] - 14:19, 21:13, 22:2, 23:3, 23:11, 25:4, 32:4, 32:12, 32:15, 38:13, 38:16, 42:24, 45:9, 46:2, 46:6, 48:6, 48:19, 49:2, 60:2, 76:19
County's [2] - 14:24, 48:13
couple [2] - 27:17, 45:18
course [1] - 24:7
court [5] - 18:5, 18:7, 21:6, 30:25, 43:14
COURT [124] - 1:1, 1:24, 5:6, 5:9, 8:6, 9:8, 11:3, 11:9, 11:12, 11:16, 11:19, 12:2, 12:6, 12:18, 13:6, 13:14, 14:11, 16:15, 16:20, 16:23, 17:2, 17:4, 17:18, 17:25, 18:11, 18:13, 18:20, 18:24, 19:10, 19:22, 23:2, 23:10, 23:20, 26:4, 26:6, 26:20, 27:22, 29:13, 29:19, 29:23, 30:16, 30:18, 30:23, 34:18, 39:18, 40:22, 43:15, 44:24, 46:25, 49:24, 51:19, 54:17, 55:22,

57:4, 57:7, 58:18, 58:24, 60:25, 62:19, 64:5, 64:9, 64:18, 65:8, 65:17, 65:23, 66:6, 66:8, 66:11, 66:20, 67:3, 67:10, 67:20, 67:25, 72:4, 72:16, 72:24, 73:1, 73:4, 73:7, 73:18, 74:6, 74:13, 74:20, 75:5, 75:11, 75:17, 76:11, 76:13, 76:17, 76:21, 77:19, 80:16, 80:20, 83:2, 88:9, 91:16, 92:13, 93:15, 93:17, 94:8, 97:25, 98:3, 98:19, 99:9, 102:3, 102:19, 102:21, 102:24, 103:10, 103:18, 103:21, 103:23, 104:19, 104:25, 105:2, 105:11, 105:18, 105:20, 105:23, 106:4, 106:7, 106:13, 106:16, 107:6
Court [14] - 12:1, 12:16, 13:9, 13:13, 13:23, 14:1, 17:9, 18:19, 30:6, 106:17, 107:6, 107:20
Court's [3] - 11:23, 14:8, 23:10
COURTROOM [6] - 30:25, 31:3, 31:7, 66:4, 103:8, 106:17
courtroom [1] - 102:11
covered [1] - 54:20
COVID [1] - 95:1
create [1] - 49:6
created [1] - 93:10
creating [1] - 49:3
credits [3] - 86:18, 86:19, 87:4
Criminal [1] - 103:11
Cross [2] - 3:3, 3:6
CROSS [2] - 5:11, 61:1
cross [4] - 10:14, 103:14, 105:16, 105:22
Cross-Examination [2] - 3:3, 3:6
CROSS-EXAMINATION [2] - 5:11, 61:1
cross-examination [1] - 103:14

CRR [1] - 1:23
CSR [2] - 1:23, 107:20
cumulative [2] - 102:19, 102:21
current [1] - 6:15
custodian [1] - 105:8
cut [1] - 52:14
CV [2] - 12:10, 12:25

D

date [28] - 15:1, 40:24, 41:1, 41:17, 44:6, 45:3, 47:3, 50:1, 50:14, 51:21, 51:23, 51:25, 55:9, 55:11, 56:15, 59:7, 63:3, 77:22, 78:8, 94:18, 97:11, 98:21, 99:22, 100:1, 100:2, 100:7, 101:10, 101:11
Date [1] - 107:15
dated [2] - 9:1, 104:16
dates [6] - 99:5, 100:4, 100:20, 101:3, 101:4, 101:6
DAY [1] - 1:8
days [8] - 14:16, 14:23, 38:20, 39:1, 39:10, 42:5, 51:25, 97:2
deadline [1] - 15:5
dealing [3] - 74:8, 74:17, 74:23
dealings [1] - 39:21
deals [1] - 39:20
DEAN [2] - 2:17, 2:18
deansteward7777@gmail.com [1] - 2:20
Debbie [1] - 107:20
DEBBIE [3] - 1:23, 107:5, 107:19
Debtor [2] - 3:16, 19:1
debtor [3] - 18:9, 19:1, 29:25
decided [1] - 13:22
decision [2] - 71:1, 89:23
decision-making [1] - 89:23
declaration [1] - 105:8
DEFENDANT [1] - 2:14
Defendant [1] - 1:9
defendant [34] - 9:17, 10:11, 10:15, 19:19, 31:17, 31:19, 32:2, 32:7, 32:22, 37:11, 38:8, 39:11, 39:13, 40:16, 44:19, 46:7,

46:11, 46:19, 47:5, 48:18, 49:8, 49:19, 51:7, 51:14, 54:12, 54:24, 56:4, 56:24, 57:24, 58:13, 59:10, 103:13, 103:14, 104:2
defendant's [3] - 50:25, 55:7, 59:17
defendants [3] - 12:9, 12:19, 13:5
defense [5] - 10:14, 99:11, 104:5, 105:4
Defense [4] - 5:16, 9:14, 10:15, 10:25
deficiencies [2] - 74:15, 74:25
deficient [1] - 74:11
definitive [1] - 15:1
definitively [1] - 43:9
delay [3] - 62:13, 62:14, 62:21
delays [2] - 44:8, 46:11
denied [1] - 99:9
deny [3] - 91:14, 91:17, 91:18
department [3] - 13:8, 48:13, 48:19
deposit [5] - 6:24, 25:16, 44:7, 87:6, 89:16
deposited [1] - 42:25
deposition [3] - 11:24, 18:2, 18:10
depositions [1] - 18:2
deposits [1] - 6:22
DEPUTY [6] - 30:25, 31:3, 31:7, 66:4, 103:8, 106:17
detail [1] - 8:10
determines [1] - 39:2
device [3] - 78:10, 78:15, 79:14
devices [2] - 78:12, 79:12
dhinospaan@yahoo.com [1] - 1:25
difference [1] - 104:24
different [5] - 15:7, 18:14, 75:11, 81:1, 81:18
difficult [1] - 15:2
difficulty [1] - 14:20
digital [3] - 36:10, 36:14, 41:8
digitally [2] - 36:12, 41:12
Direct [1] - 3:5
direct [8] - 8:2, 9:5,

10:13, 19:25, 67:20, 83:20, 84:2, 105:20
**DIRECT** [1] - 31:8
**directed** [1] - 20:4
**directing** [4] - 20:1, 67:11, 82:24, 87:5
**directly** [1] - 75:8
**disagree** [2] - 18:21, 26:16
**disbursed** [1] - 87:21
**disclosures** [1] - 54:3
**discovery** [3] - 103:12, 104:11, 104:12
**discuss** [4] - 39:11, 39:20, 65:25, 103:1
**discussed** [5] - 17:9, 52:9, 53:6, 56:14, 62:7
**discussing** [2] - 39:15, 91:8
**discussion** [7] - 6:6, 7:15, 7:24, 14:6, 70:23, 70:25, 73:18
**discussions** [1] - 13:17
**distinction** [1] - 94:25
**distinguished** [1] - 95:23
**distracted** [1] - 64:6
**DISTRICT** [3] - 1:1, 1:2, 1:3
**District** [2] - 107:6, 107:7
**DIVISION** [1] - 1:2
**docket** [2] - 14:8, 14:9
**docs** [4] - 56:15, 57:18, 57:19, 58:5
**Document** [3] - 3:13, 3:14, 8:13
**document** [48] - 8:14, 24:1, 24:9, 24:12, 24:14, 24:16, 25:2, 30:15, 40:14, 44:17, 46:17, 49:17, 50:5, 51:11, 53:9, 54:9, 55:14, 56:21, 57:5, 57:8, 58:10, 64:20, 65:16, 67:16, 67:21, 80:22, 81:7, 81:9, 81:11, 81:17, 82:5, 82:9, 83:1, 84:9, 90:21, 91:3, 94:9, 98:17, 98:20, 98:21, 99:1, 99:17, 99:18, 99:21, 100:2, 100:5, 104:19, 104:20
**documentation** [1] - 78:23
**documents** [30] -

10:16, 23:7, 28:6, 28:11, 28:12, 28:15, 28:17, 28:19, 29:1, 29:2, 29:3, 33:12, 33:24, 34:9, 53:13, 54:5, 55:2, 65:18, 65:21, 68:21, 69:9, 81:12, 87:3, 96:23, 98:25, 99:15, 103:14, 104:4, 104:6
**DocuSign** [1] - 88:19
**doling** [1] - 26:10
**dollars** [1] - 13:25
**done** [7] - 14:24, 15:1, 16:4, 22:2, 23:18, 93:14, 106:10
**door** [3] - 23:8, 23:19, 24:4
**doorways** [1] - 33:5
**doubly** [1] - 16:12
**down** [4] - 6:20, 18:5, 42:6, 85:18
**draw** [1] - 94:25
**dress** [2] - 96:21, 96:22
**due** [1] - 28:3
**duly** [1] - 19:5
**during** [7] - 59:14, 64:1, 64:11, 71:17, 75:20, 83:15, 104:3

**E**

**e-mail** [79] - 3:17, 3:19, 3:23, 4:5, 4:7, 4:9, 4:12, 4:14, 4:17, 4:19, 8:16, 33:24, 33:25, 34:23, 36:5, 37:1, 37:10, 37:11, 37:16, 40:16, 40:25, 41:1, 41:4, 44:19, 45:2, 45:3, 46:10, 46:19, 47:2, 47:3, 47:6, 47:7, 47:9, 47:17, 47:20, 47:22, 47:25, 48:9, 49:8, 49:11, 49:19, 50:1, 51:13, 51:22, 51:23, 52:5, 53:23, 54:11, 54:19, 54:20, 54:22, 55:6, 55:9, 55:16, 56:1, 56:7, 56:8, 56:11, 56:23, 57:11, 57:15, 57:17, 58:12, 58:18, 58:19, 58:25, 59:1, 59:5, 59:7, 59:9, 59:20, 62:13, 101:16, 101:21, 104:12
**e-mailed** [1] - 105:7

**e-mailing** [1] - 35:4
**e-mails** [5] - 34:11, 101:14, 101:18, 101:24, 102:17
**Eagan** [14] - 12:13, 18:25, 19:17, 19:18, 20:1, 20:4, 20:14, 20:20, 20:23, 25:11, 25:12, 27:18, 27:23, 29:24
**editorialize** [2] - 93:23, 94:6
**effectuate** [1] - 64:15
**efforts** [1] - 70:7
**eight** [2] - 105:16, 105:22
**eight-hour** [1] - 105:16
**either** [2] - 15:4, 77:4
**electronic** [1] - 104:1
**eliminate** [1] - 48:25
**ELSA** [2] - 3:3, 5:10
**emotional** [1] - 45:23
**enclosure** [1] - 104:21
**end** [18] - 33:7, 38:14, 38:18, 42:14, 42:17, 43:22, 45:11, 45:16, 46:3, 49:7, 49:11, 49:12, 51:5, 53:24, 55:5, 58:5, 59:23, 96:7
**ended** [1] - 72:1
**ending** [1] - 82:1
**enforcement** [1] - 77:25
**enjoy** [1] - 56:16
**enter** [2] - 23:11, 40:1
**entered** [1] - 70:21
**entering** [1] - 40:4
**entire** [5] - 22:12, 22:16, 22:21, 23:1, 79:23
**entirely** [1] - 26:17
**entirety** [3] - 21:17, 23:24, 79:24
**entitled** [3] - 24:10, 26:10, 107:11
**environment** [1] - 95:2
**equipment** [1] - 31:14
**Ernest** [1] - 12:8
**escaped** [1] - 43:13
**Escrow** [1] - 4:8
**escrow** [51] - 38:11, 38:12, 38:13, 38:14, 38:15, 38:18, 38:20, 38:25, 39:2, 39:7, 39:14, 39:15, 40:1, 40:4, 42:4, 42:13, 42:14, 42:17, 43:2, 43:22, 44:3, 44:8,

44:11, 46:11, 49:6, 49:12, 50:6, 50:10, 50:13, 50:15, 50:19, 51:5, 51:25, 64:23, 70:21, 71:2, 71:7, 71:9, 71:23, 72:22, 75:21, 80:1, 85:25, 86:4, 86:11, 87:13, 87:18, 88:18, 89:15
**especially** [1] - 15:25
**ESQ** [2] - 2:15, 2:18
**Esquire** [2] - 19:2, 19:4
**establish** [3] - 66:23, 68:24, 69:4
**established** [9] - 65:4, 65:12, 66:12, 66:15, 66:17, 67:6, 67:17, 68:2, 88:3
**establishing** [1] - 69:14
**estate** [16] - 31:13, 31:15, 31:20, 38:24, 69:17, 69:18, 70:4, 71:15, 71:19, 74:24, 75:7, 76:1, 76:4, 88:14, 89:2, 102:13
**estimate** [5] - 78:3, 100:3, 105:20, 106:8, 106:9
**et** [2] - 12:9, 12:25
**ETA** [1] - 48:1
**evaluation** [2] - 52:11, 52:15
**event** [1] - 15:13
**eventually** [1] - 85:12
**EVIDENCE** [2] - 3:12, 4:4
**evidence** [8] - 10:25, 11:7, 11:22, 16:17, 16:25, 17:12, 67:9, 90:6
**exact** [5] - 15:14, 70:16, 78:8, 94:17, 97:11
**exactly** [1] - 78:9
**exam** [2] - 18:10, 29:25
**examination** [3] - 8:3, 11:25, 103:14
**Examination** [7] - 3:3, 3:4, 3:5, 3:6, 3:16, 19:2, 19:7
**EXAMINATION** [4] - 5:11, 9:10, 31:8, 61:1
**examined** [1] - 19:6
**example** [1] - 53:17
**exception** [1] - 13:20
**exchange** [4] - 51:13,

54:11, 55:17, 56:23
**excised** [2] - 18:19, 18:23
**excuse** [1] - 98:1
**excused** [1] - 11:16
**executed** [2] - 69:9, 89:22
**exercised** [2] - 60:3, 60:4
**EXHIBIT** [2] - 3:12, 4:4
**exhibit** [12] - 16:20, 16:23, 18:17, 34:6, 36:17, 41:8, 41:20, 50:4, 53:14, 58:8, 62:8, 62:10
**Exhibit** [72] - 3:15, 5:16, 5:19, 9:14, 10:15, 10:19, 11:1, 11:5, 11:7, 11:10, 11:22, 12:7, 16:17, 16:18, 17:12, 17:13, 17:16, 17:19, 22:6, 22:10, 30:15, 34:20, 34:22, 36:9, 37:7, 40:8, 40:13, 40:20, 40:23, 44:16, 44:22, 44:25, 46:13, 46:16, 46:22, 47:1, 49:16, 49:22, 49:25, 51:10, 51:17, 51:19, 51:20, 54:6, 54:14, 54:18, 55:13, 55:20, 55:23, 56:20, 57:2, 57:9, 58:9, 58:16, 59:3, 62:1, 62:3, 64:21, 65:3, 67:12, 80:25, 81:6, 82:24, 84:3, 89:12, 89:20, 90:3, 94:9, 100:7
**Exhibits** [2] - 34:3, 34:15
**EXHIBITS** [2] - 3:10, 4:2
**exhibits** [3] - 10:15, 105:8, 105:9
**existed** [1] - 97:21
**expected** [1] - 32:20
**expeditious** [1] - 16:8
**expenses** [2] - 6:18, 14:18
**experience** [3] - 13:23, 23:10, 38:24
**experiencing** [1] - 45:24
**expert** [1] - 53:19
**explain** [3] - 30:3, 49:5, 66:22
**explained** [2] - 32:4, 42:24, 79:20
**explanation** [1] - 30:1

**extend** [4] - 44:2, 50:10, 50:19, 103:13
**extension** [1] - 50:11
**extensions** [1] - 44:4
**extent** [2] - 18:6, 103:13
**extraction** [1] - 99:12

**F**

**fact** [8] - 18:3, 25:24, 59:1, 71:3, 82:11, 85:25, 88:17, 91:8
**fact-finding** [1] - 18:3
**facts** [1] - 67:8
**failed** [1] - 43:22
**fair** [6] - 10:22, 34:11, 38:22, 71:20, 100:3, 105:1
**fallen** [1] - 60:9
**false** [3] - 26:12, 30:12, 74:3
**far** [3] - 14:24, 101:12, 104:25
**fashion** [1] - 76:13
**fast** [1] - 44:10
**fast-forward** [1] - 44:10
**faster** [2] - 84:21, 93:19
**fault** [5] - 61:13, 61:17, 62:13, 71:11, 86:20
**February** [1] - 19:17
**federal** [5] - 15:10, 21:6, 77:14, 100:25, 101:21
**Federal** [2] - 103:11, 107:20
**FEDERAL** [2] - 1:24, 107:5
**fee** [1] - 52:11
**fees** [2] - 52:13, 52:25
**few** [3] - 47:11, 51:25, 60:16
**figure** [1] - 76:24
**figuring** [1] - 20:1
**filed** [4] - 21:3, 21:6, 104:2, 104:20
**filing** [2] - 104:2, 104:15
**Filippo** [2] - 61:5, 61:6
**fill** [3] - 33:18, 33:20, 36:7
**filled** [1] - 40:8
**finalized** [1] - 49:1
**Finance** [1] - 42:7
**financial** [2] - 49:2, 69:6
**financing** [1] - 49:3

**fine** [5] - 12:18, 19:10, 22:18, 87:1, 96:4
**fine-looking** [1] - 96:4
**finish** [6] - 72:17, 72:25, 73:2, 73:4, 73:7, 93:17
**finished** [2] - 73:1, 73:2
**firm** [7] - 20:13, 20:14, 21:1, 21:20, 87:1, 87:25, 88:3
**firm'** [1] - 20:18
**firm's** [1] - 33:14
**first** [22] - 19:5, 31:4, 32:3, 32:7, 35:7, 35:8, 38:9, 38:19, 41:3, 44:4, 45:5, 45:7, 45:25, 52:5, 53:3, 59:9, 59:19, 97:13, 97:19, 98:7, 98:23, 99:24
**fit** [1] - 35:9
**five** [2] - 7:15, 27:14, 73:16
**focus** [4] - 19:23, 20:2, 42:9, 59:5
**focusing** [4] - 19:22, 37:10, 47:2, 93:21
**folder** [1] - 99:6
**follow** [2] - 37:4, 59:11
**follow-up** [1] - 59:11
**following** [1] - 103:11
**follows** [6] - 14:15, 19:6, 43:17, 52:19, 64:10, 72:20
**foot** [1] - 70:24
**FOR** [3] - 2:3, 2:14, 2:16
**foregoing** [1] - 107:9
**forensically** [1] - 77:15
**form** [3] - 66:1, 88:18, 103:2
**format** [1] - 107:11
**formed** [1] - 64:15
**former** [2] - 6:23, 10:7
**forms** [2] - 53:14, 53:20
**forth** [2] - 59:23, 103:12
**forward** [4] - 44:10, 57:21, 58:1, 71:2
**forwarded** [2] - 37:14, 92:3
**forwarding** [1] - 47:9
**foundation** [5] - 67:9, 67:19, 76:20, 76:21, 102:20
**Foundation** [1] - 65:6
**foundational** [1] -

78:11
**four** [4] - 19:21, 27:14, 56:8, 105:21
**frame** [1] - 48:4
**frank** [2] - 14:6, 23:14
**FRIDAY** [2] - 1:15, 5:1
**Friday** [6] - 12:12, 12:21, 19:2, 55:11, 56:17, 58:1
**friend** [2] - 61:8, 61:9
**friends** [1] - 82:18
**front** [6] - 9:14, 15:10, 61:21, 80:22, 87:2, 89:7
**full** [1] - 35:8
**funded** [2] - 85:25, 86:4
**funding** [1] - 57:20
**funds** [17] - 14:2, 35:23, 37:1, 37:5, 37:8, 37:22, 38:5, 38:15, 38:17, 38:19, 38:20, 42:20, 42:21, 50:10, 57:20, 57:22, 58:6
**Funds** [1] - 3:20
**furthermore** [1] - 15:21
**future** [3] - 27:18, 27:25, 30:7

**G**

**G-o-e-d-e-r-s** [1] - 31:6
**Galaxy** [1] - 78:19
**gambled** [2] - 6:18, 7:7
**gambling** [1] - 76:5
**gap** [1] - 14:7
**general** [1] - 8:7
**Generally** [1] - 27:3
**gentleman** [2] - 61:7, 95:23, 96:4
**gentlemen** [5] - 7:15, 18:1, 65:24, 102:11, 102:25
**Geoff** [4] - 3:20, 45:21, 55:2, 70:7
**Geoffrey** [8] - 12:8, 20:12, 25:6, 27:6, 32:1, 36:24, 48:17, 70:3
**gifts** [2] - 6:14, 7:7
**given** [9] - 18:7, 18:16, 18:23, 39:3, 77:24, 79:15, 79:16, 104:15, 106:8
**goal** [2] - 45:20, 45:21
**God** [1] - 61:23

**GOEDERS** [2] - 3:5, 31:2
**Goeders** [17] - 3:17, 3:20, 3:23, 4:5, 4:8, 4:12, 30:24, 31:5, 31:10, 41:1, 45:7, 51:23, 60:23, 61:3, 62:22, 66:12, 99:11
**government** [7] - 10:25, 54:14, 77:14, 99:14, 100:25, 101:14, 101:22
**GOVERNMENT** [3] - 3:3, 3:5, 31:2
**Government** [39] - 7:12, 11:7, 11:20, 11:21, 16:16, 17:6, 34:14, 40:19, 44:21, 46:21, 49:21, 51:16, 55:19, 57:1, 58:15, 78:12, 83:5, 94:4, 94:11, 94:19, 94:22, 95:13, 95:15, 96:17, 97:6, 97:12, 97:15, 97:20, 98:7, 98:23, 99:19, 99:25, 100:10, 100:18, 101:25, 104:8, 106:2, 106:8, 106:9
**government's** [1] - 102:10
**gratuitous** [1] - 15:11
**gray** [1] - 95:24
**grounds** [2] - 17:8
**group** [2] - 56:8, 82:18
**guarantee** [1] - 58:6
**Guerrero** [3] - 5:13, 9:12, 11:13
**GUERRERO** [2] - 3:3, 5:10
**guess** [2] - 86:25, 87:1
**guitar** [2] - 85:1, 85:4

**H**

**hair** [1] - 95:24
**half** [1] - 76:24
**hallways** [2] - 33:5, 35:12
**Hamlin** [4] - 33:10, 37:22, 39:5, 39:22
**hand** [2] - 31:1, 104:18
**handed** [9] - 80:22, 81:7, 81:17, 82:6, 98:20, 99:1, 99:6, 99:18, 99:21
**handle** [1] - 23:17
**handled** [2] - 23:8, 24:3

**handling** [3] - 55:8, 86:1, 86:5
**hands** [1] - 23:21
**HANNA** [2] - 2:4, 2:9
**happy** [1] - 104:17
**hard** [1] - 63:9
**hard-money** [1] - 63:9
**head** [3] - 43:11, 92:24
**hear** [4] - 18:1, 30:17, 58:23, 75:8
**heard** [2] - 34:17, 75:21
**hearing** [1] - 28:21
**Hearsay** [2] - 73:17, 88:8
**hearsay** [14] - 17:8, 34:16, 40:21, 44:23, 46:23, 46:24, 49:23, 51:18, 54:16, 55:21, 57:3, 58:17, 73:18, 88:9
**held** [5] - 18:2, 63:9, 68:6, 68:11, 107:10
**help** [7] - 31:20, 33:9, 48:23, 48:24, 61:23, 64:25, 84:21
**hereby** [1] - 107:7
**hi** [3] - 41:5, 52:7, 57:18
**higher** [1] - 52:14
**highly** [1] - 16:7
**Hills** [2] - 40:2, 65:2
**Hino** [1] - 107:20
**HINO** [3] - 1:23, 107:5, 107:19
**Hino-Spaan** [1] - 107:20
**HINO-SPAAN** [3] - 1:23, 107:5, 107:19
**HODGES** [1] - 19:19
**hold** [3] - 57:22, 66:18, 66:24
**home** [7] - 33:4, 38:11, 70:8, 79:6, 79:10, 84:2, 84:14
**Home** [1] - 10:2
**homes** [1] - 33:1
**honestly** [2] - 16:11, 81:23
**Honor** [112] - 5:8, 9:9, 9:19, 11:1, 11:15, 11:21, 11:23, 12:3, 12:4, 13:4, 13:11, 13:15, 14:4, 14:6, 14:13, 15:8, 15:9, 15:13, 15:15, 16:6, 16:10, 16:13, 16:16, 16:19, 17:5, 17:7, 17:11, 17:17, 17:21, 18:12, 18:17, 18:18,

18:22, 19:20, 20:5, 22:19, 22:24, 23:6, 23:13, 23:25, 29:18, 30:8, 30:14, 30:17, 30:21, 34:14, 34:16, 34:17, 34:21, 40:19, 40:21, 43:16, 44:21, 44:23, 46:21, 46:23, 46:24, 49:21, 49:23, 51:16, 51:18, 54:15, 54:16, 55:19, 55:21, 57:3, 58:15, 58:17, 58:22, 60:14, 62:17, 63:23, 64:8, 66:10, 67:24, 72:1, 72:5, 72:14, 72:18, 73:3, 73:17, 74:19, 75:12, 76:9, 76:12, 80:13, 80:15, 80:18, 82:25, 84:6, 88:11, 92:7, 92:12, 93:12, 95:3, 97:24, 98:1, 98:4, 98:17, 99:10, 102:23, 103:17, 103:19, 103:25, 104:16, 104:18, 104:22, 105:4, 105:6, 105:12, 106:1, 106:10

**Honor's** [2] - 13:23, 16:1

**HONORABLE** [1] - 1:3

**hoped** [2] - 45:10, 46:3

**hoping** [1] - 85:17

**hour** [3] - 94:19, 95:11, 105:16

**hours** [4] - 94:22, 95:7, 105:22

**house** [21] - 31:20, 32:5, 32:17, 33:2, 33:7, 33:9, 37:23, 39:5, 39:23, 40:1, 43:25, 47:14, 50:7, 51:8, 59:24, 60:6, 60:9, 60:17, 64:22, 70:22, 79:5

**houses** [1] - 35:9

**Hurrell** [6] - 12:20, 13:5, 13:22, 14:14, 14:20

**HURRELL** [1] - 13:4

**I**

**idea** [3] - 75:6, 76:22, 89:21

**identified** [1] - 41:15

**illness** [1] - 74:4

**image** [4] - 78:13,

79:8, 79:14, 79:23

**imaged** [5] - 77:15, 77:25, 79:10, 81:21

**immediate** [1] - 14:9

**immediately** [2] - 87:21, 104:8

**impeachment** [2] - 65:15, 103:15

**important** [1] - 106:3

**improper** [2] - 65:14, 72:15

**IN** [3] - 2:14, 3:12, 4:4

**in-person** [1] - 98:12

**inaccurate** [1] - 24:25

**incentive** [3] - 44:2, 44:5, 44:6

**include** [2] - 23:22, 104:17

**including** [3] - 27:15, 47:7, 102:12

**incorrect** [1] - 82:23

**independent** [1] - 25:9

**indicated** [1] - 57:7

**individual** [2] - 18:14, 52:2

**individuals** [1] - 94:11

**inform** [1] - 14:4

**information** [10] - 33:20, 33:22, 36:1, 38:8, 40:8, 40:11, 46:5, 60:21, 93:6, 93:21

**informed** [5] - 64:1, 64:11, 86:4, 86:11, 97:20

**initial** [3] - 18:3, 44:7, 91:13

**inspection** [4] - 52:13, 59:11, 59:14, 59:16

**inspections** [2] - 86:1, 86:5

**instance** [2] - 87:14, 92:20

**instead** [2] - 19:22, 26:10

**instruct** [1] - 75:21

**instruction** [1] - 75:24

**instructions** [2] - 75:25, 89:15

**intend** [1] - 20:8

**interest** [3] - 53:1, 53:8, 53:11

**interested** [1] - 27:16

**interview** [1] - 98:12

**interviewed** [1] - 7:11

**investigative** [1] - 102:10

**investor** [4] - 52:12, 52:17, 57:18, 57:22

**invite** [1] - 103:10

**involved** [7] - 14:10, 48:6, 48:11, 68:4, 78:25, 79:1, 82:17

**involving** [1] - 13:17

**issue** [6] - 15:25, 29:16, 29:17, 44:13, 49:2, 80:9

**issued** [1] - 16:5

**issues** [3] - 66:1, 101:25, 103:2

**J**

**JAMES** [1] - 1:3

**January** [1] - 25:17

**JOHN** [2] - 1:8, 2:15

**Johnson** [105] - 3:18, 3:20, 3:22, 4:11, 6:2, 6:5, 6:9, 6:12, 6:14, 6:17, 6:21, 7:1, 7:16, 7:24, 10:6, 10:10, 12:8, 12:25, 14:1, 14:15, 20:12, 20:22, 21:4, 21:9, 21:12, 21:16, 22:3, 24:7, 25:6, 26:9, 26:15, 27:6, 27:11, 27:14, 27:18, 27:19, 27:25, 28:3, 29:7, 29:16, 32:1, 32:2, 32:10, 32:23, 32:25, 33:2, 33:9, 36:15, 36:19, 36:24, 39:6, 39:16, 39:21, 41:15, 41:25, 43:1, 48:17, 51:4, 52:8, 53:5, 54:2, 60:6, 60:8, 68:12, 68:15, 70:3, 70:7, 71:1, 71:4, 71:14, 71:19, 71:24, 72:7, 72:23, 73:9, 73:19, 73:22, 73:23, 74:3, 74:8, 74:10, 74:15, 74:24, 74:25, 75:6, 75:21, 75:25, 76:5, 76:18, 76:23, 76:25, 77:3, 77:5, 77:6, 77:12, 80:1, 84:2, 84:14, 85:1, 85:3, 85:7, 85:14, 85:20, 89:21, 90:1

**Johnson's** [2] - 26:3, 38:3

**judge** [1] - 13:17

**JUDGE** [1] - 1:3

**judges** [1] - 15:10

**Judgment** [1] - 3:16

**judgment** [2] - 18:9, 29:25

**judicial** [1] - 15:24

**Judicial** [1] - 107:12

**Judy** [4] - 27:8, 51:14, 56:24, 58:13

**Julie** [4] - 47:11, 47:12, 47:13, 62:12

**JULY** [2] - 1:15, 5:1

**July** [17] - 9:1, 26:8, 26:13, 42:15, 42:17, 43:5, 43:18, 43:22, 94:19, 95:10, 97:2, 97:3, 104:5, 104:6, 104:12, 104:17, 107:15

**June** [11] - 40:17, 41:2, 85:24, 86:3, 86:10, 94:23, 95:7, 97:3, 100:17, 100:21, 100:24

**jury** [14] - 5:5, 6:4, 6:9, 17:14, 35:17, 45:8, 61:22, 66:5, 66:22, 70:2, 71:13, 87:2, 90:7, 103:9

**just..** [1] - 28:13

**K**

**keep** [1] - 44:6

**key** [1] - 106:3

**Kim** [4] - 7:14, 8:24, 96:6

**kind** [5] - 33:2, 39:6, 78:17, 96:20

**knowledge** [2] - 65:7, 67:22

**knows** [1] - 14:1

**L**

**L.A** [11] - 32:4, 32:11, 38:13, 38:16, 42:24, 46:6, 48:6, 48:13, 48:19, 60:2, 76:19

**ladies** [3] - 18:1, 65:24, 102:25

**Lake** [2] - 33:10, 37:22

**language** [2] - 41:14, 104:11

**larger** [1] - 33:6

**last** [19] - 5:19, 6:24, 9:22, 10:4, 13:16, 27:14, 31:4, 38:21, 43:9, 45:11, 45:14, 45:16, 46:3, 47:25, 58:8, 61:10, 68:14, 94:10, 94:15

**lastly** [5] - 36:21, 50:23, 53:24, 54:2, 58:2

**late** [6] - 43:5, 43:18,

45:24, 70:23, 84:1, 84:13

**Law** [3] - 12:14, 12:15, 12:21

**LAW** [1] - 2:17

**law** [2] - 21:20, 77:25

**lawsuit** [1] - 21:12

**lawyer's** [1] - 18:4

**lay** [2] - 76:21, 102:20

**leading** [1] - 39:17

**leads** [1] - 82:16

**least** [3] - 14:9, 83:24, 104:14

**left** [2] - 93:18, 96:4

**legal** [9] - 27:20, 29:17, 48:7, 48:12, 48:13, 48:19, 66:15, 66:17, 66:23

**lender** [2] - 52:4, 53:19

**lending** [1] - 53:19

**length** [2] - 38:25, 39:2

**Leroy** [1] - 12:9

**less** [1] - 39:10

**Letter** [1] - 3:20

**letter** [16] - 10:20, 10:23, 20:23, 20:25, 23:25, 33:14, 38:2, 38:3, 52:3, 53:8, 53:11, 104:7, 104:11, 104:12, 104:16, 104:22

**letterhead** [1] - 33:15

**letting** [1] - 93:12

**levels** [1] - 46:24

**liability** [3] - 10:3, 63:19, 65:12

**light** [1] - 15:25

**likely** [1] - 78:5

**limited** [2] - 63:19, 65:12

**line** [6] - 37:21, 41:3, 84:20, 85:10, 86:13

**list** [4] - 80:2, 80:4, 105:7, 105:13

**listed** [6] - 42:2, 50:25, 52:22, 53:1, 81:24, 82:12

**listing** [10] - 33:25, 34:1, 34:12, 35:1, 37:4, 37:14, 40:4, 47:13, 91:22, 91:25

**live** [2] - 31:10, 71:4

**living** [2] - 6:18, 14:18

**LLC** [21] - 52:10, 63:9, 63:20, 64:2, 64:13, 64:15, 65:4, 66:13, 66:15, 66:17, 66:23, 67:16, 68:1, 68:7,

68:18, 90:9, 90:13, 93:4, 93:7, 93:10
**LLCs** [1] - 69:14
**LLP** [1] - 18:25
**Loan** [1] - 53:18
**loan** [25] - 32:17, 38:15, 51:8, 52:9, 52:14, 52:16, 52:18, 52:22, 53:1, 53:5, 54:3, 54:5, 62:25, 63:4, 63:9, 63:12, 68:4, 90:15, 91:1, 91:11, 91:20, 93:3, 93:7
**located** [1] - 40:1
**lodging** [1] - 12:4
**LOI** [8] - 4:11, 4:13, 4:16, 4:18, 52:7, 53:4, 53:7, 54:4
**look** [29] - 8:13, 22:9, 24:21, 34:2, 40:13, 44:16, 46:13, 49:16, 51:10, 53:10, 56:20, 65:3, 81:6, 81:9, 81:11, 81:14, 82:5, 82:9, 84:14, 85:10, 87:16, 89:12, 98:5, 98:21, 99:1, 99:17, 99:21, 105:10
**looked** [1] - 33:1
**looking** [8] - 17:15, 28:6, 28:10, 33:2, 33:4, 81:15, 96:4, 100:5
**looks** [12] - 37:10, 47:11, 53:20, 55:11, 56:4, 57:10, 57:14, 57:16, 57:23, 59:21, 65:21, 82:17
**Los** [8] - 2:12, 12:11, 12:21, 19:3, 21:13, 22:2, 25:4, 38:6
**LOS** [1] - 107:3
**lose** [1] - 43:1
**lost** [1] - 87:22
**Louis** [2] - 13:17, 35:1
**lump** [1] - 28:2
**lunch** [5] - 5:15, 104:1, 104:3, 104:4, 105:7

**M**

**magnitude** [1] - 16:2
**mail** [79] - 3:17, 3:19, 3:23, 4:5, 4:7, 4:9, 4:12, 4:14, 4:17, 4:19, 8:16, 33:24, 33:25, 34:23, 36:5, 37:1, 37:10, 37:11,

37:16, 40:16, 40:25, 41:1, 41:4, 44:19, 45:2, 45:3, 46:10, 46:19, 47:2, 47:3, 47:6, 47:7, 47:9, 47:17, 47:20, 47:22, 47:25, 48:9, 49:8, 49:11, 49:19, 50:1, 51:13, 51:22, 51:23, 52:5, 53:23, 54:11, 54:19, 54:20, 54:22, 55:6, 55:9, 55:16, 56:1, 56:7, 56:8, 56:11, 56:23, 57:11, 57:15, 57:17, 58:12, 58:18, 58:19, 58:25, 59:1, 59:5, 59:7, 59:9, 59:20, 62:13, 101:16, 101:21, 104:12
**mailed** [1] - 105:7
**mailing** [1] - 35:4
**mails** [5] - 34:11, 101:14, 101:18, 101:24, 102:17
**majority** [2] - 38:22, 52:24
**manage** [1] - 45:22
**management** [2] - 19:16, 19:23
**manager** [2] - 36:20, 42:1
**manner** [1] - 16:8
**March** [3] - 6:24, 17:16, 19:3
**Marchino** [3] - 61:5, 61:6, 61:10
**marked** [4] - 5:16, 17:13, 22:7, 22:9
**Marrett** [1] - 17:23
**Marty** [14] - 52:2, 55:4, 56:13, 56:24, 58:1, 58:13, 59:5, 59:19, 63:8, 91:19, 91:22, 91:23, 91:24, 91:25
**material** [3] - 13:20, 13:24
**matter** [9] - 12:8, 13:7, 13:21, 29:20, 38:6, 49:3, 83:5, 103:25, 107:11
**matters** [3] - 13:20, 48:7, 104:13
**McLaughlin** [2] - 95:17, 95:22
**McNicholas** [4] - 21:20, 21:23
**mean** [10] - 15:15, 20:14, 20:17, 26:25, 38:11, 42:13, 53:7,

68:16, 79:16, 90:17
**means** [1] - 45:22
**medical** [1] - 31:13
**meet** [1] - 32:22
**meeting** [2] - 56:14, 95:1
**Meisinger** [1] - 13:18
**member** [2] - 77:25, 102:9
**members** [1] - 94:15
**memorable** [1] - 78:4
**mental** [4] - 74:3, 74:11, 74:15, 74:25
**mention** [2] - 8:2, 8:10
**mentioned** [2] - 6:21, 28:19
**mercy** [2] - 45:9, 46:1
**message** [6] - 47:5, 83:23, 85:22, 85:24, 87:11, 88:17
**messages** [8] - 77:9, 77:12, 79:22, 79:24, 83:6, 83:18, 97:20, 98:7
**messaging** [1] - 79:25
**met** [8] - 7:12, 94:4, 94:11, 94:13, 94:19, 94:22, 95:13, 98:8
**mic** [4] - 67:3, 75:17, 77:19, 77:20
**MICHAEL** [2] - 1:8, 2:15
**Michael** [20] - 6:23, 10:8, 12:14, 13:2, 13:12, 19:2, 19:4, 31:17, 36:13, 36:15, 36:19, 41:5, 41:13, 41:25, 51:2, 52:7, 55:2, 58:4, 63:8, 85:16
**Michelle** [1] - 30:9
**microphone** [1] - 58:22
**mid** [2] - 43:5, 43:18
**mid-to-late** [2] - 43:5, 43:18
**midafternoon** [1] - 65:24
**middle** [6] - 36:10, 56:4, 57:23, 59:6, 72:14, 90:22
**might** [4] - 14:6, 100:14, 101:20
**million** [7] - 25:4, 25:17, 25:18, 26:9, 28:4, 30:10, 76:24
**mind** [2] - 43:13, 72:8
**mine** [3] - 61:6, 82:14, 82:18
**minus** [1] - 52:25

**minute** [2] - 26:19, 50:6
**minutes** [6] - 66:3, 73:16, 94:20, 94:23, 95:8, 95:11
**missed** [1] - 62:18
**mobile** [1] - 82:1
**moment** [3] - 60:14, 80:13, 81:15
**moments** [1] - 89:16
**Monday** [4] - 14:17, 56:15, 56:17, 103:21
**money** [23] - 6:17, 14:17, 15:4, 15:5, 20:2, 20:9, 20:10, 25:8, 26:3, 29:24, 30:3, 42:25, 63:9, 76:18, 76:23, 87:20, 87:21, 87:22, 87:25, 88:3, 89:18, 92:10
**monies** [3] - 14:16, 20:4, 30:8
**month** [9] - 6:22, 26:11, 26:15, 27:1, 27:3, 44:10, 60:13, 71:23, 72:22
**monthly** [1] - 28:5
**months** [4] - 15:15, 64:14, 91:3, 91:4
**morning** [6] - 13:3, 13:4, 13:6, 13:7, 19:13, 84:19
**most** [4] - 39:1, 47:3, 51:25, 78:5
**move** [8] - 16:17, 67:3, 71:1, 75:16, 77:19, 77:20, 99:8, 102:22
**movement** [1] - 33:6
**moves** [12] - 10:25, 11:7, 34:14, 40:19, 44:21, 46:21, 49:21, 51:16, 54:14, 55:19, 57:1, 58:15
**moving** [3] - 16:25, 57:21, 58:1
**MR** [219] - 2:16, 5:7, 5:12, 8:5, 8:9, 9:7, 9:9, 9:11, 9:19, 9:21, 9:25, 10:25, 11:2, 11:4, 11:6, 11:8, 11:11, 11:13, 11:21, 12:3, 12:7, 12:19, 13:2, 13:4, 13:11, 13:15, 14:13, 15:9, 16:16, 16:21, 16:24, 17:3, 17:5, 17:7, 17:13, 17:20, 18:8, 18:12, 18:17, 18:21, 18:25, 19:11, 19:12, 19:19, 20:8, 26:2,

30:14, 30:17, 30:19, 30:21, 30:24, 31:9, 34:14, 34:16, 34:17, 34:21, 35:7, 36:21, 36:25, 37:7, 37:18, 39:17, 39:22, 40:19, 40:21, 40:24, 41:7, 43:16, 43:20, 44:21, 44:23, 45:1, 45:5, 46:16, 46:21, 46:23, 47:2, 49:21, 49:23, 50:1, 50:3, 50:12, 50:23, 51:16, 51:18, 51:21, 52:21, 54:14, 54:16, 54:19, 55:19, 55:21, 55:24, 57:1, 57:3, 57:6, 57:10, 58:15, 58:17, 58:22, 59:4, 60:14, 60:16, 60:23, 61:2, 62:17, 62:20, 63:23, 63:24, 64:3, 64:8, 64:15, 64:17, 64:20, 65:6, 65:11, 65:14, 65:20, 66:9, 66:12, 66:19, 66:22, 67:5, 67:8, 67:11, 67:19, 67:23, 68:1, 72:1, 72:3, 72:5, 72:10, 72:12, 72:13, 72:18, 73:3, 73:5, 73:8, 73:17, 73:20, 74:5, 74:7, 74:12, 74:14, 74:19, 74:22, 75:4, 75:6, 75:12, 75:20, 76:8, 76:9, 76:12, 76:14, 76:16, 76:18, 76:20, 76:22, 77:24, 80:13, 80:15, 80:17, 80:21, 83:3, 83:12, 83:17, 84:6, 84:7, 84:8, 84:10, 88:1, 88:2, 88:8, 88:10, 90:20, 91:15, 91:17, 92:7, 92:8, 92:12, 92:15, 93:12, 93:14, 93:19, 94:7, 94:9, 95:3, 95:4, 95:22, 95:23, 97:24, 98:1, 98:4, 98:5, 98:20, 99:10, 102:2, 102:5, 102:20, 102:22, 103:17, 103:19, 103:20, 103:22, 103:25, 104:16, 104:21, 105:1, 105:4, 105:6, 105:12, 105:15, 105:19, 105:21, 105:25, 106:1, 106:6, 106:10,

106:14
**multiple** [5] - 44:8, 46:24, 83:15, 101:4, 102:17

**N**

**name** [9] - 18:14, 19:8, 31:4, 31:25, 36:12, 41:14, 50:25, 68:11, 92:2
**namely** [2] - 14:16, 15:3
**nature** [3] - 24:2, 29:13, 29:15
**near** [1] - 84:3
**necessarily** [1] - 20:16
**need** [9] - 14:2, 44:5, 49:3, 58:5, 59:14, 62:25, 63:4, 69:9, 90:13
**needed** [3] - 44:6, 48:3, 106:14
**needing** [2] - 27:24, 32:17
**needs** [14] - 14:18, 32:8, 33:5, 35:10, 42:25, 44:14, 46:6, 46:8, 49:9, 60:2, 60:19, 68:24, 69:1, 69:11
**negotiated** [1] - 39:4
**negotiations** [1] - 14:5
**neighborhood** [1] - 70:25
**never** [8] - 8:4, 8:10, 9:5, 9:19, 15:3, 20:4, 60:1, 101:21
**New** [4] - 4:11, 4:13, 4:15, 4:18
**new** [4] - 50:14, 52:7, 53:4, 84:2
**Newman** [8] - 47:11, 47:12, 47:13, 48:9, 62:13, 63:3, 63:7, 89:5
**Newport** [1] - 2:19
**news** [3] - 13:18, 78:5, 97:8
**next** [13] - 11:20, 30:22, 36:14, 36:16, 41:14, 48:25, 50:17, 63:25, 95:4, 98:2, 101:10, 105:10, 105:16
**nice** [1] - 105:5
**NICOLA** [2] - 2:4, 2:9
**night** [2] - 48:1, 70:23
**non** [1] - 43:10
**none** [2] - 48:10, 49:6

**nonresponse** [1] - 72:5
**nonverbal** [1] - 43:8
**noon** [1] - 103:21
**North** [1] - 2:11
**noted** [1] - 12:6
**notes** [3] - 5:23, 6:1, 6:11
**nothing** [4] - 9:7, 61:22, 86:22, 105:4
**notice** [2] - 81:16, 104:1
**notified** [2] - 101:7, 101:8
**November** [5] - 10:20, 12:12, 12:21, 88:12, 88:20
**nuance** [1] - 18:9
**Number** [14] - 11:5, 11:10, 12:10, 17:19, 19:1, 40:23, 44:25, 47:1, 49:25, 51:20, 54:18, 55:23, 57:9, 59:3
**number** [18] - 15:10, 16:23, 33:3, 80:7, 80:10, 81:21, 81:22, 81:23, 81:24, 82:1, 82:2, 82:3, 82:11, 82:13, 82:21, 82:23, 84:20, 92:3
**numbers** [3] - 34:6, 80:2, 80:4
**Numbers** [1] - 34:20

**O**

**oath** [4] - 7:16, 18:6, 18:15, 19:14
**object** [2] - 17:8, 99:19
**Objection** [1] - 65:6
**objection** [30] - 8:5, 11:2, 11:6, 11:8, 27:20, 34:16, 34:18, 40:21, 44:23, 46:23, 49:23, 51:18, 54:16, 55:21, 57:3, 58:17, 64:3, 64:7, 64:17, 65:14, 66:19, 67:8, 72:10, 73:17, 74:5, 74:12, 88:1, 88:8, 91:15, 94:7
**objections** [2] - 12:4, 74:19
**objects** [1] - 19:20
**obligation** [3] - 27:19, 103:12, 103:13
**obtain** [2] - 52:7, 53:4
**obviously** [1] - 15:2

**occasions** [1] - 96:17
**occur** [1] - 97:2
**October** [13] - 50:16, 51:5, 51:24, 55:10, 56:17, 56:18, 57:24, 59:8, 59:21, 62:12, 65:4, 65:11, 67:17
**OF** [7] - 1:2, 1:5, 1:14, 2:1, 107:1, 107:3, 107:4
**offer** [14] - 32:20, 33:9, 33:12, 35:4, 36:18, 37:24, 39:5, 39:22, 39:25, 41:22, 42:11, 85:5, 85:16, 85:21
**Offer** [2] - 3:18, 36:17
**offers** [1] - 33:7
**office** [5] - 17:22, 18:4, 48:13, 65:12, 87:7
**OFFICES** [1] - 2:17
**OFFICIAL** [3] - 1:24, 107:1, 107:5
**Official** [1] - 107:20
**once** [4] - 6:19, 68:4, 76:11, 78:1
**one** [49] - 10:3, 13:20, 13:24, 31:20, 43:4, 44:4, 47:7, 48:25, 54:6, 60:14, 62:14, 62:21, 66:23, 67:5, 69:4, 70:11, 71:18, 71:23, 72:4, 72:22, 73:21, 73:25, 74:14, 75:2, 75:13, 76:7, 76:11, 76:15, 78:2, 78:14, 78:22, 79:2, 79:3, 79:20, 80:13, 80:18, 80:19, 81:15, 83:19, 85:13, 85:18, 91:10, 93:1, 94:15, 94:17, 96:3, 101:10, 103:25, 105:12
**oOo** [1] - 106:20
**open** [1] - 72:1
**open-ended** [1] - 72:1
**opinion** [1] - 103:2
**opinions** [1] - 66:1
**opportunity** [3] - 11:14, 81:14, 105:10
**opposite** [1] - 81:24
**option** [3] - 42:10, 79:15, 79:16
**OR** [2] - 3:12, 4:4
**orally** [1] - 43:9
**order** [11] - 15:18, 16:9, 29:3, 50:18, 54:4, 57:19, 58:6, 69:3, 90:13, 91:19, 105:14

**Order** [1] - 16:4
**ordinary** [1] - 6:18
**organize** [1] - 57:19
**original** [2] - 37:10, 44:5
**ought** [1] - 23:17
**outrageous** [2] - 26:17, 30:13
**outside** [1] - 70:22
**overruled** [19] - 8:6, 34:18, 39:18, 40:22, 44:24, 46:25, 49:24, 51:19, 54:17, 55:22, 64:5, 64:18, 65:8, 65:17, 66:20, 74:20, 91:16, 92:13, 102:3
**ownership** [1] - 10:2

**P**

**P.M** [2] - 1:16, 5:2
**p.m** [2] - 66:7, 106:19
**PAGE** [1] - 3:2
**page** [42] - 5:18, 5:19, 9:22, 10:4, 24:19, 30:19, 34:23, 36:4, 36:9, 36:16, 36:22, 36:25, 37:18, 41:7, 41:9, 41:20, 42:6, 47:16, 47:18, 47:22, 48:8, 50:4, 53:10, 53:17, 55:24, 55:25, 57:10, 57:23, 59:6, 81:10, 81:15, 81:16, 84:4, 84:5, 84:7, 84:24, 90:20, 90:23, 107:11
**pages** [7] - 24:18, 24:20, 53:9, 53:14, 81:17, 103:11, 105:8
**paid** [15] - 14:1, 14:16, 15:6, 27:24, 69:19, 69:21, 69:22, 69:25, 91:21, 92:5, 92:10, 93:5, 93:20, 93:25, 94:1
**paper** [1] - 104:2
**paragraph** [23] - 10:7, 35:8, 35:14, 35:17, 35:20, 35:22, 36:17, 38:1, 45:19, 45:25, 48:9, 48:21, 50:13, 50:17, 52:5, 53:2, 53:23, 54:1, 59:9, 59:13, 98:5
**paragraphs** [4] - 35:20, 45:6, 45:7, 45:18
**paraplegic** [3] - 14:2, 15:20, 21:10

**pardon** [1] - 61:11
**parked** [1] - 70:22
**part** [5] - 11:25, 15:7, 17:23, 40:4, 68:14
**Parthenia** [18] - 3:22, 3:24, 4:6, 4:10, 4:13, 4:15, 4:18, 4:20, 40:1, 47:14, 50:8, 51:8, 59:24, 64:24, 64:25, 65:2, 71:23, 72:23
**particular** [3] - 5:18, 85:9, 105:7
**parties** [3] - 13:18, 42:12, 44:11, 49:12
**parties'** [1] - 14:11
**Partners** [1] - 35:2
**passed** [1] - 98:15
**Patrick** [1] - 95:17
**Pause** [2] - 46:15, 80:14
**pay** [2] - 15:4, 50:21
**paying** [4] - 26:8, 29:5, 29:7, 29:19
**payment** [6] - 15:19, 21:24, 25:5, 28:2, 30:5, 50:18
**payments** [12] - 26:11, 26:14, 26:22, 26:24, 27:11, 27:13, 27:15, 27:16, 27:19, 28:5, 29:9, 32:11
**penalty** [2] - 6:6, 6:10, 91:4
**people** [3] - 47:12, 83:15, 83:17
**per** [1] - 26:15
**percent** [8] - 38:19, 53:2, 92:18, 92:19, 92:25, 93:1, 93:2
**perhaps** [3] - 13:22, 15:16, 16:4
**period** [3] - 38:12, 38:14, 38:25, 39:2, 39:7, 39:16, 42:4, 42:14, 43:2, 44:3, 44:8, 46:11, 71:17
**periodic** [1] - 32:11
**perjury** [2] - 6:7, 6:10
**permission** [1] - 11:23
**person** [2] - 94:13, 98:12
**personal** [2] - 65:6, 67:21
**personally** [4] - 48:3, 62:25, 63:5, 63:10
**perspective** [2] - 15:14, 104:14
**Phan** [1] - 30:9
**phase** [1] - 45:22

**phone** [25] - 6:12, 70:10, 71:6, 77:14, 77:25, 78:16, 78:17, 78:21, 79:24, 80:2, 80:4, 80:7, 80:10, 80:11, 81:21, 81:23, 82:11, 82:13, 85:18, 98:10, 98:14, 98:24, 99:25
**phonetic** [1] - 20:9
**picture** [4] - 36:23, 84:25, 85:4, 85:7
**piece** [1] - 66:24
**place** [4] - 6:6, 60:12, 63:19, 71:4
**placed** [1] - 13:7
**Plaintiff** [1] - 1:6
**plaintiff** [3] - 12:9, 12:13, 13:3
**PLAINTIFF** [1] - 2:3
**planning** [1] - 106:11
**playing** [1] - 85:4
**Plaza** [1] - 2:18
**pocket** [1] - 103:10
**point** [10] - 31:19, 43:13, 43:21, 44:1, 44:11, 51:7, 60:4, 80:6, 93:21, 104:23
**portion** [1] - 50:24
**portions** [3] - 10:16, 18:18, 22:24
**position** [2] - 14:25, 15:2
**positions** [2] - 14:12, 14:14
**possible** [7] - 4:6, 13:10, 17:24, 18:6, 78:8, 80:5, 97:23
**possibly** [3] - 8:12, 20:20, 61:11
**potential** [5] - 33:1, 68:22, 76:4, 84:2, 86:12
**power** [2] - 15:12, 89:22
**practicing** [1] - 31:15
**preceding** [1] - 24:18
**predate** [1] - 27:15
**predicate** [1] - 26:16
**prefer** [1] - 87:3
**preferred** [1] - 39:14
**prepare** [1] - 94:11
**prepared** [1] - 30:21
**preparing** [2] - 7:12, 83:4
**prepayment** [1] - 91:4
**presence** [3] - 5:5, 66:5, 103:9
**present** [5] - 59:14, 72:7, 73:23, 95:15,

96:2
**pretty** [1] - 78:4
**previewing** [1] - 96:24
**previous** [1] - 61:6
**price** [5] - 42:2, 52:24, 92:18, 92:20, 92:25
**Prime** [1] - 35:2
**privileged** [2] - 29:10, 30:5
**privy** [4] - 70:6, 71:15, 71:16, 75:13
**PRO** [1] - 2:14
**problem** [3] - 15:13, 73:8, 76:5
**Procedure** [1] - 103:12
**proceed** [9] - 12:2, 15:24, 17:4, 17:18, 18:24, 66:11, 71:6, 76:13
**proceeding** [2] - 24:4, 105:10
**PROCEEDINGS** [1] - 1:14
**Proceedings** [1] - 106:19
**proceedings** [5] - 12:11, 46:15, 48:12, 80:14, 107:10
**process** [1] - 66:23
**produced** [1] - 104:4
**producing** [1] - 104:9
**proof** [5] - 6:20, 35:23, 37:1, 37:5, 37:8
**properties** [2] - 69:19, 74:9
**Property** [2] - 3:18, 3:22
**property** [15] - 38:4, 49:4, 52:9, 52:11, 52:12, 61:14, 61:17, 66:18, 66:24, 68:6, 68:11, 70:17, 70:20, 74:17, 90:8
**proposed** [1] - 44:5
**prosecution** [2] - 94:16, 102:10
**prosecutors** [1] - 101:15
**provide** [12] - 6:19, 37:4, 40:8, 44:2, 50:10, 68:21, 78:3, 78:10, 78:22, 79:4, 79:18, 79:21
**provided** [1] - 92:2
**providing** [1] - 13:21
**provision** [1] - 23:22
**provisions** [1] - 22:10
**public** [4] - 16:18, 16:25, 17:14, 22:1

**publish** [4] - 22:19, 30:14, 45:1, 90:6
**pull** [9] - 34:22, 36:21, 41:8, 50:3, 50:12, 51:21, 75:17, 77:19, 77:20
**Purchase** [3] - 3:18, 3:21, 3:22
**purchase** [21] - 32:5, 32:6, 33:1, 33:14, 33:16, 33:17, 35:4, 38:4, 38:11, 40:7, 42:2, 48:25, 50:7, 51:8, 52:24, 60:9, 60:17, 70:7, 74:9, 92:20, 92:25
**purpose** [1] - 14:3
**purposes** [2] - 65:12, 103:15
**pursuant** [2] - 79:19, 107:8
**put** [3] - 15:11, 33:9, 68:17
**puts** [1] - 15:2
**putting** [2] - 33:7, 37:24

**Q**

**questions** [15] - 8:7, 10:13, 11:11, 27:17, 60:24, 62:3, 75:11, 89:13, 93:22, 94:5, 96:18, 96:22, 96:25, 100:11
**quick** [1] - 82:5
**quicker** [2] - 93:20, 93:24
**quickly** [5] - 14:22, 91:11, 92:5, 105:13
**quite** [2] - 16:11, 96:22
**quote** [4] - 15:16, 63:7, 89:6

**R**

**raise** [1] - 31:1
**range** [2] - 52:15, 104:17
**rate** [1] - 53:1
**rather** [2] - 18:10, 26:8
**rational** [1] - 30:4
**re** [11] - 3:20, 3:24, 4:6, 4:10, 4:13, 4:15, 4:17, 4:20, 12:4, 18:25, 37:21
**re-lodging** [1] - 12:4
**reached** [4] - 13:19, 32:3, 38:5, 85:3

**reaction** [2] - 15:14, 39:15
**read** [30] - 6:4, 10:16, 11:22, 11:24, 16:17, 17:23, 22:11, 35:17, 35:21, 38:1, 41:3, 41:17, 43:14, 43:17, 45:7, 45:19, 45:25, 47:20, 48:8, 48:22, 52:5, 54:1, 59:9, 59:17, 64:8, 64:10, 67:20, 72:16, 72:20, 84:8
**Reading** [1] - 19:11
**reading** [4] - 16:24, 18:9, 19:9, 65:16
**readings** [1] - 18:2
**reads** [1] - 90:8
**real** [17] - 30:15, 31:13, 31:15, 31:20, 38:24, 69:17, 69:18, 70:3, 71:15, 71:19, 74:24, 75:7, 76:1, 76:4, 88:14, 89:2, 102:12
**really** [2] - 62:5, 95:6
**REALTIME** [1] - 107:5
**Realtors** [1] - 86:18
**reason** [6] - 7:9, 8:2, 8:3, 8:9, 49:6, 49:14
**receive** [4] - 6:22, 15:4, 76:19, 104:9
**received** [49] - 6:14, 6:24, 7:5, 11:3, 11:5, 11:9, 11:10, 17:19, 20:9, 26:24, 34:19, 34:20, 35:21, 35:23, 37:11, 40:22, 40:23, 44:24, 44:25, 46:25, 47:1, 49:19, 49:24, 49:25, 51:19, 51:20, 54:17, 54:18, 55:22, 55:23, 57:4, 57:7, 57:9, 58:19, 58:21, 58:25, 59:1, 59:2, 59:3, 76:23, 76:25, 87:12, 87:18, 89:18, 89:19, 104:6
**receiving** [1] - 16:9, 21:24, 25:3, 32:11
**recent** [3] - 47:3, 47:7, 51:25
**recently** [1] - 73:12
**recess** [3] - 66:3, 66:6, 106:18
**Recess** [1] - 66:7
**recipients** [1] - 57:7
**reciprocal** [1] - 103:12
**recognize** [12] - 34:9, 40:14, 44:17, 46:17,

49:17, 51:11, 54:9, 55:14, 56:21, 58:10, 81:24, 82:3
**recollection** [19] - 25:1, 25:10, 26:1, 65:15, 76:25, 81:20, 82:11, 85:11, 86:3, 86:10, 87:1, 87:6, 90:12, 98:6, 98:16, 98:22, 99:4, 99:23, 103:16
**recommend** [2] - 48:1, 73:14
**record** [17] - 12:3, 16:18, 17:1, 17:14, 18:8, 43:17, 60:15, 64:10, 67:24, 72:20, 76:10, 103:23, 104:14, 105:2, 105:6, 105:8, 105:9
**recorded** [2] - 38:13, 38:16
**records** [1] - 28:13
**recounted** [1] - 73:21
**Redirect** [1] - 3:4
**REDIRECT** [1] - 9:10
**reference** [2] - 84:20, 86:13
**referral** [1] - 61:12
**referred** [6] - 33:17, 35:5, 61:7, 91:19, 91:22, 91:25
**referring** [14] - 9:22, 28:18, 35:1, 35:11, 37:8, 46:4, 47:23, 47:25, 48:14, 48:16, 53:21, 87:14, 87:15, 104:10
**reflect** [3] - 6:1, 18:18, 67:24
**reflects** [1] - 28:3
**refresh** [8] - 81:20, 82:10, 90:12, 98:6, 98:16, 98:22, 99:3, 99:23
**refreshes** [1] - 85:10
**refreshing** [2] - 65:15, 103:15
**refuse** [4] - 79:14, 79:15, 79:17, 88:14
**regard** [1] - 87:3
**regarding** [7] - 13:10, 25:5, 45:12, 46:5, 59:11, 70:16, 86:18
**regards** [2] - 101:12, 101:13
**Regnier** [8] - 27:8, 51:14, 56:24, 58:13, 105:19, 106:2, 106:12

**regular** [1] - 103:5
**regularly** [1] - 83:23
**regulations** [1] - 107:12
**rehearsal** [3] - 96:20, 96:21, 96:22
**rehearsing** [1] - 100:11
**reinstate** [3] - 6:13, 7:3, 7:9
**reinstating** [1] - 7:23
**REJECTED** [2] - 3:12, 4:4
**relate** [2] - 50:7, 86:16
**related** [5] - 25:18, 25:21, 39:21, 79:25, 86:17
**relates** [3] - 17:11, 29:17, 102:11
**relating** [13] - 13:19, 18:18, 25:5, 29:2, 70:3, 71:19, 75:7, 80:9, 85:25, 89:15, 89:23, 90:1, 100:25
**relationship** [1] - 30:3
**Release** [1] - 24:10
**release** [1] - 44:7
**relevance** [2] - 92:12, 95:3
**relevant** [1] - 18:22
**remaining** [4] - 38:20, 53:9, 53:13, 53:14
**remember** [21] - 21:2, 21:22, 49:5, 65:25, 70:16, 78:8, 79:1, 80:5, 80:6, 80:8, 84:25, 86:17, 93:18, 94:17, 94:20, 94:23, 97:11, 97:12, 98:11, 101:9, 103:1
**removed** [1] - 14:8
**rental** [1] - 10:2
**rep** [1] - 48:2
**repeat** [8] - 43:12, 61:15, 63:2, 64:7, 65:9, 74:21, 86:2, 102:7
**repetition** [1] - 88:9
**replied** [1] - 56:5
**report** [1] - 86:7
**reported** [1] - 107:10
**REPORTER** [3] - 1:24, 107:1, 107:6
**Reporter** [1] - 107:20
**reporter** [3] - 18:5, 31:1, 43:14
**REPORTER'S** [1] - 1:14
**reporter's** [1] - 12:10
**reports** [1] - 99:12

**represent** [1] - 38:7
**representation** [1] - 24:7
**represented** [3] - 10:11, 89:5, 106:2
**representing** [1] - 47:15
**request** [1] - 75:8
**requested** [3] - 39:10, 52:14, 75:7
**requesting** [1] - 86:11
**required** [4] - 38:15, 52:13, 78:22, 79:18
**research** [2] - 66:2, 103:4
**reservations** [1] - 88:19
**reserve** [1] - 11:14
**Residential** [1] - 53:18
**resolve** [1] - 14:9
**resolving** [1] - 13:24
**resources** [3] - 6:19, 7:10, 15:24
**respective** [2] - 14:12, 14:13
**respond** [4] - 45:15, 46:7, 49:8, 62:19
**responded** [5] - 54:23, 57:14, 57:24, 85:7, 86:7
**responding** [1] - 56:8
**response** [10] - 39:13, 43:6, 52:1, 55:7, 58:2, 59:17, 62:16, 62:18, 62:20, 85:9
**responses** [1] - 45:13
**responsible** [4] - 63:1, 63:5, 63:10, 99:12
**responsive** [1] - 72:19
**result** [1] - 88:6
**resulting** [1] - 38:5
**RESUMED** [1] - 5:10
**resumed** [1] - 5:11
**retained** [2] - 22:7, 29:20
**retention** [2] - 20:22, 20:25
**retired** [1] - 13:17
**return** [3] - 36:25, 54:4, 56:15
**returning** [1] - 53:23
**reveal** [1] - 29:13
**reveals** [1] - 29:15
**review** [5] - 23:7, 54:2, 82:10, 87:3, 96:17
**rise** [3] - 66:4, 103:8, 106:17
**Roberson** [2] - 7:14, 8:18
**role** [2] - 11:24, 19:16

**roller** [1] - 45:23
**ROOM** [1] - 1:24
**ruled** [2] - 12:5, 17:10
**Rules** [1] - 103:11
**rulings** [1] - 18:18
**run** [1] - 85:18

**S**

**SACR-19-00061-JVS** [1] - 1:7
**Sagel** [3] - 7:13, 8:20, 96:14
**SAGEL** [25] - 2:5, 11:21, 12:7, 12:19, 16:16, 16:21, 16:24, 17:3, 17:5, 17:13, 17:20, 18:8, 18:21, 18:25, 19:11, 30:14, 30:19, 58:22, 98:1, 98:4, 103:19, 105:15, 105:19, 105:21, 105:25
**Samsung** [1] - 78:19
**SANTA** [3] - 1:17, 1:25, 5:1
**Santa** [1] - 2:7
**sat** [1] - 98:12
**Saturday** [1] - 84:18
**saw** [3] - 24:19, 25:18, 104:2
**scan** [1] - 55:4
**scheduled** [1] - 42:14
**scheduling** [1] - 106:7
**scope** [1] - 89:25
**screen** [1] - 47:21
**screenshot** [5] - 5:19, 7:22, 7:23, 9:15, 10:2
**screenshot's** [1] - 9:3
**screenshots** [1] - 9:17
**SE** [1] - 2:14
**seated** [1] - 31:3
**second** [11] - 5:19, 10:4, 10:7, 38:1, 48:9, 50:13, 59:13, 81:10, 90:5, 90:8, 90:20
**second-to-the-last** [2] - 5:19, 10:4
**seconds** [1] - 60:16
**Section** [3] - 42:7, 42:10, 107:8
**Security** [1] - 104:3
**see** [25] - 5:21, 8:13, 10:8, 25:16, 35:14, 36:10, 41:5, 41:22, 42:6, 47:17, 52:18, 53:11, 53:23, 64:25, 73:9, 81:17, 82:1,

82:2, 84:2, 85:10, 90:9, 98:10, 98:16, 99:22, 104:22
**seem** [1] - 27:16
**seemingly** [1] - 39:19
**selected** [1] - 42:10
**sell** [2] - 43:25, 69:19
**seller** [18] - 33:13, 33:24, 39:4, 39:23, 40:5, 41:11, 43:7, 43:21, 43:25, 44:7, 47:15, 48:2, 50:9, 50:10, 60:3, 60:4, 87:21, 89:19
**SELNA** [1] - 1:3
**send** [7] - 33:12, 33:24, 38:17, 85:5, 85:12, 101:14, 101:24
**sending** [4] - 26:14, 28:5, 52:2, 85:24
**sent** [17] - 10:20, 34:12, 38:15, 38:19, 40:16, 44:19, 46:19, 47:8, 47:25, 52:11, 58:20, 59:19, 87:11, 87:12, 88:17, 88:18, 101:21
**sentence** [3] - 53:3, 90:5, 90:8
**sentences** [1] - 48:22
**separate** [3] - 55:16, 56:7, 104:11
**separately** [1] - 57:14
**September** [5] - 27:6, 49:12, 50:2, 87:7, 87:13
**service** [1] - 31:13
**session** [2] - 23:8, 23:19
**set** [3] - 90:13, 93:4
**sets** [1] - 103:12
**setting** [1] - 49:9
**settled** [3] - 15:3, 16:7, 21:16
**settlement** [44] - 13:10, 13:16, 13:19, 13:25, 14:3, 14:5, 14:21, 15:19, 22:1, 22:8, 22:11, 22:12, 22:13, 22:17, 22:20, 22:21, 22:24, 22:25, 23:1, 23:2, 23:12, 23:16, 23:18, 23:21, 23:24, 24:2, 24:6, 24:24, 25:1, 25:5, 28:4, 28:11, 28:22, 29:6, 29:7, 30:8, 32:4, 32:11, 35:23, 36:1, 38:5, 76:19,

76:23
**Settlement** [1] - 24:10
**settlements** [1] - 24:5
**several** [3] - 64:14, 78:25, 82:17
**Shanta** [1] - 41:10
**share** [1] - 26:9
**shenanigans** [1] - 88:7
**shocked** [3] - 16:10, 16:11, 16:12
**shook** [1] - 43:11
**short** [3] - 91:20, 93:3, 93:11
**short-term** [2] - 91:20, 93:3
**shortly** [1] - 35:24, 37:2
**show** [2] - 30:15, 40:24
**Show** [1] - 16:5
**showing** [1] - 47:7
**sic** [1] - 26:21
**side** [5] - 15:4, 23:25, 45:23, 45:24, 93:1
**sign** [7] - 20:22, 20:25, 24:6, 40:5, 54:3, 55:3, 88:14
**signatory** [2] - 19:24, 20:5
**signature** [5] - 24:19, 36:14, 50:24, 50:25, 51:3
**signatures** [5] - 30:20, 36:10, 41:8, 41:17, 55:4
**signed** [11] - 22:22, 24:14, 27:7, 36:12, 41:5, 41:12, 42:12, 54:4, 57:18, 58:5
**signing** [4] - 35:19, 85:20, 88:19, 88:22
**signs** [1] - 85:16
**silly** [1] - 15:23
**similar** [1] - 100:10
**simply** [1] - 26:22
**single** [1] - 70:6
**sit** [2] - 73:25, 74:23
**six** [3] - 15:15, 91:4, 105:21
**skip** [2] - 12:16, 18:20
**skipping** [1] - 15:7
**small** [1] - 26:10
**snap** [1] - 85:18
**Social** [1] - 104:3
**solution** [1] - 4:6
**sometime** [4] - 43:5, 43:18, 77:23, 85:18, 97:7
**sooner** [2] - 84:16,

84:19
**Sorry** [1] - 53:21
**sorry** [31] - 9:17, 10:14, 17:7, 28:14, 28:16, 28:20, 29:6, 34:1, 43:7, 43:10, 43:12, 47:22, 53:13, 55:25, 58:24, 59:13, 63:2, 64:6, 65:9, 65:20, 68:14, 83:11, 84:7, 93:9, 93:14, 93:16, 95:13, 99:10, 100:20, 102:8, 105:19
**sort** [1] - 44:2
**sought** [1] - 29:16
**sound** [1] - 65:1
**sounds** [5] - 78:20, 89:8, 93:6, 97:11, 105:23
**SOUTHERN** [1] - 1:2
**Spaan** [1] - 107:20
**SPAAN** [3] - 1:23, 107:5, 107:19
**special** [17] - 32:8, 35:19, 36:20, 42:1, 42:25, 44:14, 46:6, 46:8, 49:9, 60:2, 60:18, 68:24, 69:1, 69:11, 78:22, 83:9, 101:15
**Special** [9] - 7:13, 7:14, 8:18, 8:22, 8:24, 83:9, 96:2, 96:3
**specific** [5] - 48:4, 62:14, 87:15, 91:7, 95:6
**specifically** [6] - 62:8, 79:3, 79:25, 82:7, 97:22, 100:1
**specifics** [1] - 97:22
**speculate** [2] - 86:25, 87:1
**speculation** [3] - 8:5, 64:17, 88:1
**spell** [1] - 31:4
**spend** [1] - 6:20
**spend-down** [1] - 6:20
**spent** [1] - 77:6
**spoken** [2] - 62:9, 73:11
**Spring** [1] - 2:11
**spring** [1] - 78:7
**squeeze** [1] - 52:16
**SSI** [2] - 7:2, 43:1
**STAND** [1] - 5:10
**stand** [5] - 7:20, 30:25, 61:21, 92:10, 96:25

**standard** [1] - 38:25
**STANDBY** [1] - 2:16
**start** [3] - 34:22, 62:6, 103:5
**starting** [3] - 35:14, 45:19, 48:22
**starts** [1] - 35:21
**state** [3] - 12:24, 31:4, 43:8
**STATE** [1] - 107:4
**statement** [4] - 7:1, 8:12, 18:21, 88:9
**statements** [1] - 35:25
**STATES** [2] - 1:1, 1:5
**States** [9] - 2:4, 2:5, 2:9, 2:10, 17:22, 30:24, 107:6, 107:8, 107:13
**stating** [1] - 33:15
**status** [2] - 13:9, 14:4
**steal** [1] - 26:2
**stealing** [1] - 30:10
**stenographically** [1] - 107:10
**steps** [1] - 69:6
**STEWARD** [2] - 2:17, 2:18
**Steward** [3] - 100:13, 100:14, 105:7
**still** [7] - 9:14, 18:14, 43:25, 44:1, 49:14, 60:18, 106:11
**stipulate** [1] - 84:9
**STOLPER** [2] - 19:12, 20:8
**Stolper's** [1] - 23:21
**stop** [1] - 102:24
**stream** [2] - 29:9, 47:7
**Street** [12] - 2:6, 2:11, 4:11, 4:13, 4:15, 4:18, 33:10, 37:22, 40:1, 50:8, 65:1, 65:2
**STREET** [1] - 1:24
**stricken** [1] - 73:19
**strike** [12] - 6:5, 63:24, 70:4, 72:12, 72:13, 82:20, 88:2, 91:9, 92:8, 98:15, 99:8, 101:23
**structure** [4] - 28:11, 28:12, 28:14, 28:21
**structured** [3] - 28:22, 29:6, 29:7
**subject** [3] - 11:17, 37:21, 102:6
**submit** [1] - 39:25
**submitted** [3] - 33:12, 66:2, 103:3
**subpoena** [1] - 101:20

**subpoenaed** [1] - 79:22
**Subsection** [1] - 42:9
**subsection** [1] - 42:10
**substantial** [2] - 35:23, 36:1
**subtract** [1] - 92:18
**suffered** [4] - 74:3, 74:10, 74:15, 74:25
**suffice** [1] - 82:21
**suggested** [3] - 84:16, 84:18, 91:10
**suggestion** [1] - 91:13
**suit** [3] - 33:5, 95:24, 96:9
**Suite** [3] - 2:6, 2:11, 2:19
**sum** [1] - 28:2
**summary** [2] - 10:19, 10:22
**Sun** [1] - 31:11
**Supervisors** [2] - 14:21, 15:17
**surprised** [1] - 16:8
**suspect** [2] - 77:22, 81:9
**sustained** [6] - 67:10, 74:6, 74:13, 75:5, 76:17, 94:8
**swore** [1] - 61:22
**sworn** [3] - 18:4, 18:15, 19:5
**SWORN** [1] - 31:2

**T**

**team** [3] - 94:16, 101:15, 102:10
**telephone** [1] - 94:14
**telephonically** [2] - 12:13, 12:19
**ten** [3] - 94:23, 95:7, 103:11
**tentative** [1] - 13:19
**term** [5] - 13:25, 90:25, 91:1, 91:20, 93:3
**terms** [6] - 23:16, 23:21, 23:24, 52:18, 56:13, 90:22
**Terms** [1] - 42:7
**testified** [8] - 19:6, 67:16, 68:3, 75:13, 97:16, 100:9, 101:17, 101:25
**testify** [5] - 7:12, 67:21, 101:7, 101:13, 101:20
**testifying** [1] - 17:16
**testimony** [9] - 18:5,

18:7, 18:15, 67:18, 67:23, 68:5, 83:4, 94:12
**text** [13] - 77:9, 77:12, 79:21, 79:24, 83:6, 83:18, 83:23, 85:21, 85:24, 87:11, 88:17, 97:20, 98:7
**texted** [1] - 86:4
**texts** [1] - 82:19
**THE** [166] - 2:3, 2:14, 3:3, 3:5, 5:6, 5:9, 5:10, 8:6, 8:7, 9:8, 9:24, 11:3, 11:9, 11:12, 11:16, 11:18, 11:19, 12:2, 12:6, 12:18, 12:23, 13:6, 13:14, 14:11, 16:15, 16:20, 16:23, 17:2, 17:4, 17:18, 17:25, 18:11, 18:13, 18:20, 18:24, 19:10, 19:22, 23:2, 23:10, 23:13, 23:20, 23:23, 26:4, 26:5, 26:6, 26:20, 26:23, 27:21, 27:22, 28:1, 29:13, 29:15, 29:19, 29:22, 29:23, 30:7, 30:16, 30:18, 30:23, 30:25, 31:3, 31:5, 31:7, 34:18, 39:18, 39:19, 40:22, 43:15, 43:19, 44:24, 46:25, 49:24, 51:19, 54:17, 55:22, 57:4, 57:7, 58:18, 58:24, 60:25, 62:19, 64:5, 64:6, 64:9, 64:14, 64:18, 64:19, 65:8, 65:9, 65:17, 65:18, 65:23, 66:4, 66:6, 66:8, 66:11, 66:20, 66:21, 67:3, 67:4, 67:10, 67:20, 67:25, 72:4, 72:16, 72:24, 72:25, 73:1, 73:2, 73:4, 73:7, 73:9, 73:18, 74:6, 74:13, 74:20, 74:21, 75:5, 75:11, 75:17, 75:19, 76:11, 76:13, 76:17, 76:21, 77:19, 77:22, 80:16, 80:20, 83:2, 83:13, 88:9, 91:16, 92:13, 92:14, 93:15, 93:16, 93:17, 93:18, 94:8, 97:25, 98:3, 98:19, 99:9, 100:3, 102:4, 102:19, 102:21, 102:24, 103:8, 103:10,

103:18, 103:21, 103:23, 104:19, 104:25, 105:2, 105:11, 105:18, 105:20, 105:23, 106:4, 106:7, 106:13, 106:16, 106:17
**therefore** [1] - 71:9
**third** [2] - 48:21, 59:11
**Thomas** [2] - 12:20, 31:5
**THOMAS** [3] - 3:5, 31:2, 31:5
**three** [6] - 38:19, 44:5, 48:22, 57:15, 70:11, 70:25
**tie** [2] - 95:24, 96:9
**timeliness** [1] - 104:13
**timing** [4] - 101:13, 101:20, 102:4, 102:5
**Tiratsuyan** [1] - 41:10
**title** [3] - 48:2, 53:21, 53:22
**Title** [1] - 107:8
**titled** [2] - 24:12, 42:7
**titles** [1] - 83:13
**today** [22] - 7:13, 7:20, 14:16, 41:5, 45:12, 47:8, 58:6, 61:21, 62:4, 62:6, 62:8, 62:9, 74:23, 83:4, 86:7, 94:12, 95:19, 96:18, 97:16, 100:9, 102:1, 105:7
**today's** [1] - 95:1
**Tom** [2] - 13:4, 30:24
**tomorrow** [5] - 55:3, 55:5, 59:12, 59:16, 85:17
**tonight** [1] - 55:3, 85:17, 88:20
**took** [4] - 6:6, 7:20, 61:21, 67:7
**top** [17] - 8:13, 34:23, 36:16, 41:21, 45:2, 47:2, 47:5, 47:17, 48:8, 55:6, 58:3, 59:18, 84:3, 90:5, 98:21, 99:22
**topics** [3] - 101:17, 101:18, 102:12
**total** [2] - 6:15, 93:1
**toward** [3] - 41:8, 45:20, 47:17
**traffic** [1] - 70:24
**transaction** [32] - 39:3, 39:21, 58:7, 61:14, 61:17, 63:18,

64:1, 64:2, 64:4,
64:12, 64:16, 65:5,
65:13, 67:6, 67:17,
68:2, 68:21, 69:24,
71:15, 71:19, 86:12,
87:22, 88:13, 90:14,
91:11, 91:20, 92:5,
92:11, 93:5, 93:20,
93:25
**transactions** [10] -
69:20, 70:4, 74:18,
74:25, 75:8, 76:1,
76:4, 89:23, 94:1,
102:13
**TRANSCRIPT** [2] -
1:6, 1:14
**transcript** [7] - 11:23,
12:11, 15:8, 17:14,
17:23, 107:9, 107:11
**transpired** [1] - 100:4
**treat** [1] - 18:6
**treated** [1] - 18:15
**trial** [3] - 14:7, 15:24,
18:3
**TRIAL** [1] - 1:8
**trick** [2] - 99:19, 99:20
**true** [19] - 8:11, 22:4,
26:7, 26:11, 26:13,
57:8, 62:12, 65:3,
65:11, 74:3, 74:7,
84:18, 85:14, 88:6,
88:12, 90:17, 97:17,
97:18, 107:9
**trust** [19] - 25:13, 29:1,
32:8, 35:18, 35:19,
35:25, 38:5, 42:25,
44:14, 46:6, 46:8,
49:1, 49:4, 49:6,
49:9, 60:2, 60:19,
68:24, 103:7
**Trust** [9] - 3:22, 25:13,
36:15, 36:19, 41:15,
41:25, 51:4, 68:12,
68:15
**trustee** [1] - 51:2
**trusts** [2] - 69:1, 69:11
**truth** [9] - 57:5, 58:19,
58:20, 58:21, 58:25,
59:2, 61:22, 61:23
**try** [1] - 69:19
**trying** [5] - 84:1,
84:13, 99:19, 99:20,
102:20
**Tuesday** [4] - 103:5,
105:14, 105:23,
106:12
**turn** [5] - 37:7, 46:16,
55:13, 62:1, 80:25
**twice** [2] - 27:1, 27:3
**two** [14] - 10:14,

13:16, 35:20, 45:6,
45:7, 75:11, 81:12,
83:19, 94:22, 95:7,
96:17, 100:4, 100:17
**type** [1] - 71:4
**typed** [1] - 6:4
**types** [1] - 71:16
**typically** [2] - 23:11,
38:20
**typo** [1] - 6:16

## U

**U.S** [3] - 1:3, 83:10,
97:7
**ultimate** [2] - 45:19,
45:21
**ultimately** [2] - 21:15,
39:25
**unable** [1] - 7:9
**unaware** [1] - 8:12
**under** [14] - 6:6, 6:10,
6:19, 7:16, 8:2,
16:18, 18:6, 18:15,
19:14, 36:17, 42:9,
52:10, 63:9, 90:9
**underlined** [2] - 104:5,
104:7
**understood** [11] -
57:6, 63:18, 85:21,
88:12, 89:2, 89:9,
93:3, 93:11, 93:19,
93:24, 96:24
**undesirable** [1] -
70:24
**unfortunate** [2] -
45:10, 46:2
**unfortunately** [3] -
48:5, 48:10, 74:10
**unhappy** [1] - 39:19
**Uniform** [1] - 53:18
**United** [9] - 2:4, 2:5,
2:9, 2:10, 17:22,
30:24, 107:6, 107:8,
107:13
**UNITED** [2] - 1:1, 1:5
**unless** [1] - 11:6
**unwanted** [1] - 70:24
**up** [27] - 33:7, 34:22,
35:7, 36:21, 37:4,
41:8, 45:5, 49:9,
49:12, 50:3, 50:12,
50:23, 51:5, 51:21,
52:21, 57:22, 59:11,
59:23, 67:3, 75:12,
75:17, 77:19, 90:13,
93:4, 104:4, 104:18
**update** [2] - 13:12,
45:16
**updates** [1] - 101:13

**uses** [1] - 103:14
**utilize** [3] - 14:17,
64:2, 64:13

## V

**Vague** [1] - 64:3
**Valley** [1] - 31:11
**various** [2] - 78:6,
89:22
**vast** [1] - 38:22
**verbal** [2] - 62:18,
62:20
**via** [2] - 6:12, 88:19
**videoconference** [6] -
94:24, 95:1, 95:7,
95:10, 95:14, 96:16
**VII** [1] - 16:21
**VOLUME** [1] - 1:9
**Volume** [3] - 16:21,
34:2, 34:4
**volume** [1] - 81:1
**vs** [3] - 1:7, 12:9,
12:25

## W

**wait** [4] - 15:15, 26:19,
49:1
**waiting** [7] - 32:14,
42:24, 44:13, 45:14,
46:5, 60:18, 66:9
**walk** [1] - 65:22
**wants** [4] - 16:13,
45:21, 89:6, 105:17
**WAS** [1] - 31:2
**waste** [1] - 15:23
**water** [1] - 46:14
**wearing** [1] - 95:21
**Webex** [3] - 95:6,
95:10, 95:14
**Wednesday** [1] -
105:24
**week** [12] - 13:16,
38:21, 43:4, 45:11,
45:14, 45:16, 46:4,
57:11, 94:17, 98:23,
99:24, 100:1
**weekend** [3] - 56:16,
103:7, 105:5
**weekends** [1] - 70:23
**weeks** [1] - 44:5
**WEST** [1] - 1:24
**West** [3] - 2:6, 40:2,
65:2
**whatsoever** [1] -
86:23
**wheelchair** [1] - 33:6
**whole** [2] - 61:22, 81:9
**wider** [1] - 33:5, 35:11

**willing** [2] - 48:23,
48:24
**wired** [1] - 88:3
**wish** [1] - 13:9
**WITHDRAWN** [2] -
3:11, 4:3
**witness** [15] - 11:20,
18:4, 19:5, 30:22,
66:9, 72:11, 72:14,
72:17, 73:19, 84:8,
93:13, 98:2, 105:16,
106:2, 106:3
**WITNESS** [35] - 5:10,
8:7, 9:24, 11:18,
23:13, 23:23, 26:5,
26:23, 27:21, 28:1,
29:15, 29:22, 30:7,
31:2, 31:5, 39:19,
43:19, 64:6, 64:14,
64:19, 65:9, 65:18,
66:21, 67:4, 72:25,
73:2, 73:9, 74:21,
75:19, 77:22, 83:13,
92:14, 93:16, 93:18,
102:4
**witnesses** [1] - 105:13
**WITNESSES** [1] - 3:2
**won** [1] - 32:4
**word** [1] - 15:22
**words** [2] - 58:20,
63:16
**write** [3] - 63:7, 63:11,
63:15
**wrote** [2] - 54:23,
85:14
**WYMAN** [87] - 2:10,
8:5, 9:9, 9:11, 9:21,
9:25, 10:25, 11:4,
11:6, 11:11, 30:21,
30:24, 31:9, 34:14,
34:17, 34:21, 35:7,
36:21, 36:25, 37:7,
37:18, 39:22, 40:19,
40:24, 41:7, 43:16,
43:20, 44:21, 45:1,
45:5, 46:16, 46:21,
47:2, 49:21, 50:1,
50:3, 50:12, 50:23,
51:16, 51:21, 52:21,
54:14, 54:19, 55:19,
55:24, 57:1, 57:6,
57:10, 58:15, 59:4,
60:14, 60:16, 60:23,
62:17, 63:23, 64:3,
64:17, 65:6, 65:14,
66:19, 67:8, 67:19,
72:1, 72:10, 72:13,
74:5, 74:12, 74:19,
75:4, 76:8, 76:16,
76:20, 83:12, 84:6,

84:8, 88:1, 88:8,
91:15, 92:7, 92:12,
93:12, 94:7, 95:3,
102:2, 103:17,
103:25, 105:6
**wyman** [1] - 8:10
**Wyman** [21] - 3:4, 3:5,
7:13, 7:19, 8:3, 8:16,
9:8, 61:25, 62:3,
62:9, 64:21, 71:17,
74:9, 77:9, 83:9,
83:15, 84:25, 89:12,
90:22, 96:12, 101:23

## Y

**years** [4] - 27:14,
27:15, 61:11, 100:18
**Yeghishian** [11] -
4:10, 4:15, 4:17,
4:20, 52:2, 54:20,
56:1, 56:24, 57:11,
58:13, 59:6
**Yeghishian's** [2] -
58:2, 59:7
**yes-or-no** [1] - 26:4,
74:16, 76:3
**yesterday** [3] - 13:22,
59:20, 86:4

## Z

**Zoom** [1] - 94:14

## —

**–** [1] - 4:13