H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL JOHN AVENATTI, <br><br> Defendant. | SA CR No. 19-061-JVS <br><br> DEFENDANT'S SUBMISSION RE: APPLICABILITY OF FEDERAL RULE OF CRIMINAL PROCEDURE 16(b)(1)(A) |

    Defendant Michael John Avenatti ("Mr. Avenatti"), through advisory counsel, H. Dean Steward, hereby files his submission regarding the applicability of Rule 16(b)(1)(A) to defendant's use of documents during cross-examination of government witnesses.

Dated: July 26, 2021              Respectfully submitted,

                                           /s/ Michael J. Avenatti

                                           Defendant
                                           MICHAEL JOHN AVENATTI

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On Friday, July 23, 2021, the government called Ms. Elsa Guerrero of the Social Security Administration as a witness in their case-in-chief and elicited testimony from her regarding Mr. Geoffrey Johnson's supplemental security income ("SSI") benefits. *See*, *e.g.*, Trial Tr. (7/23/21, Vol. 1) 76-88. On cross-examination, defendant attempted to use documents first produced by the government on July 13 or 14, 2021 that included USAO bates stamp numbers on their face. The government objected and later suggested to the Court outside of the presence of the jury that the documents may have been produced long before and only "reproduce[d]" recently at the request of the defense. *See*, *e.g.*, Trial Tr. (7/23/21, Vol. 1) 116. This was shown by the defendant over the lunch break not to be accurate, as the documents were first produced to the defense on July 13 or July 14. [Dkt. 578.]

The Court later invited briefing regarding the applicability of the "reciprocal discovery requirement" of Fed. R. Crim. P. 16(b)(1)(A) to Mr. Avenatti's ability to use documents during cross-examination of government witnesses that have not been previously produced by him to the government.[1] The government argues that Mr. Avenatti must be precluded from using such documents, including documents produced by the government in this case that bear a "USAO" bates stamp number and that have been in the possession of the government for years. For the reasons set forth below, the government is mistaken, and its position should be rejected.

---

[1] "I'd invite pocket briefs of no more than ten pages on the following question: Federal Rules of Criminal Procedure 16(b) sets forth the reciprocal discovery obligation of the defendant. To what extent does that obligation extend to documents which the defendant uses in cross-examination other than for the purposes of impeachment and refreshing recollection?" [Trial Tr. (7/23/21, Vol. 1) 103:10-16.]

## II. THE REQUIREMENTS OF RULE 16(b)(1)(A)

Rule 16(a)(1)(E) provides criminal defendants with a right to inspect and copy documents and objects that are within the United States' possession, custody or control. Once a defendant makes a request under Rule 16(a)(1)(E), <u>and the United States has complied with the request</u>, Rule 16(b)(1)(A) provides the United States with a right to inspect and copy certain documents in the defendant's "possession, custody, or control," and that the defendant intends to use at trial during his or her case-in-chief. Importantly, by the plain language of the rules, a defendant's reciprocal discovery obligations are only triggered if the government has complied with its own obligations to the defendant.

Rule 16(b)(1)(A) specifically provides:

> (A) Documents and Objects. If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
>
> (i) the item is within the defendant's possession, custody, or control; and
>
> (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

As the plain language of the Rule makes clear, the defendant's obligations under Rule 16(b)(1)(A) apply only to evidence that he or she "intends to use . . . <u>in the defendant's case-in-chief at trial</u>." Fed. R. Crim. P. 16(b)(1)(A) (emphasis added). If a defendant refuses to disclose evidence required under rule 16(b)(1)(A), the trial court may order the defendant to disclose the evidence or prohibit the defendant from introducing the undisclosed evidence at trial. *See* Fed. R. Crim. P. 16(d)(2).

## III. ARGUMENT

### A. Rules 16(b)(1)(A) and 16(d)(2) Are Not Yet Applicable

#### 1. <u>The Government Has Continued to Produce Discovery Pursuant to Defendant's Rule 16 Request Since December 1, 2020, Including During the Weeks Leading Up to Trial</u>

On May 15, 2019, Mr. Avenatti made his discovery request of the government pursuant to Rule 16(a)(1)(E). Since that date, the government has continued to produce documents to the defense in an effort to comply with Rule 16(a)(1)(E), including on dates well past the defendant's reciprocal discovery deadline (December 1, 2020)[2] and during the weeks leading up to trial. These productions have included over 2,000 pages[3] and have occurred on the following dates: March 1, 2021 (production 19); June 3, 2021 (production 20); June 14, 2021 (production 21); June 23, 2021 (production 23); June 25, 2021 (production 24); July 2, 2021 (production 25); July 13, 2021 (production 26); July 14, 2021 (production 27); and July 20, 2021 (production 30).[4] Further, the government first disclosed its exhibit list to the defendant on July 6, 2021 as previously ordered by the Court, but then proceeded to continue to add exhibits to that list, including as recently as July 19, 2021.

As a result, the government should not be heard to complain that because defendant did not meet the December 1, 2020 deadline, he cannot use documents with USAO bates stamp numbers when cross-examining witnesses.

#### 2. <u>Mr. Avenatti's Case-in-Chief Has Yet to Begin</u>

Mr. Avenatti has not yet attempted to use any documents in his case-in-chief at trial. Opening statements occurred on Wednesday, July 21 and the government began

---

[2] When this deadline was set, the trial was scheduled to occur on December 8, 2020 with an understanding that the Court would likely continue the trial of Counts 1 through 10 to February 23, 2021.

[3] Over 2,700 pages in total were produced, although some of this was duplicative or 3500 materials.

[4] *See, e.g.*, enclosure letters attached hereto at Exhibit A, filed under seal.

4

their case-in-chief, which is expected to last approximately three weeks, immediately thereafter. Once the government rests, Mr. Avenatti intends to begin his case-in-chief, at which time Fed. R. Crim. P. 16(b)(1)(A) and 16(d)(2) will become applicable. Until then, the rules have no applicability and cannot bar Mr. Avenatti from using documents on cross-examination, especially documents that have been in the possession of the government for years in some instances and, after review by the government, were produced by the government to the defendant with a "USAO" bates stamp number pursuant to *the government's own Rule 16 requirements*.

Any reasonable reading of the Rule results in the applicability of Fed. R. Crim. P. 16(b)(1)(A) and 16(d)(2) being limited to that portion of the trial that comes after the government rests as opposed to the entire trial. The Ninth Circuit's decision in *United States v. Givens*, 767 F.2d 574 (9th Cir. 1985) is instructive and supports this interpretation. In *Givens*, the defendant argued, relying on Rule 16, that he had been prejudiced by the failure of the government to adhere to the rule and produce evidence it later used in its rebuttal case. The Ninth Circuit soundly rejected this argument and agreed with the government's position that the rule only required the government to produce the evidence it intended to use <u>in its case-in-chief</u> (which was distinct from its rebuttal case):

> Federal Rule of Criminal Procedure 16(a)(1)(C) provides, in relevant part, that all "tangible objects" are discoverable by a defendant when they "are intended for use by the government as evidence in chief at the trial . . . ." Givens contends that the existence of the evidence concerning the Converse shoe print that the government offered in rebuttal should have been disclosed to him pursuant to Rule 16(a)(1)(C). He asserts that this evidence served not only to rebut the testimony of Givens' alibi witnesses, but also to corroborate part of the government's case-in-chief.
>
> <u>The heart of Givens' argument is that the district court erred in construing the phrase "evidence in chief" as referring to proof that is presented in the government's case-in-chief.</u> The Advisory Committee note to Rule 16(a)(1)(C), however, uses "case-in-chief" interchangeably with "evidence in

> chief." Such a construction is consistent with that adopted by other courts which have interpreted the rule. *See*, *e.g.*, *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978), aff'd 623 F.2d 769 (2d Cir. 1980) (documents intended for use by the government as evidence in chief at the trial interpreted to include documents which will be marked and offered in evidence by the government during its case-in-chief). <u>We agree with the district court's construction of Rule 16(a)(1) (C) concerning the Converse shoe evidence.</u>

*Givens*, 767 F.2d at 583 (emphasis added).

Further, because Rule 16 does not define the term "case-in-chief," the term must be afforded its plain meaning under the rules of statutory construction.[5]

A defendant never has to put on a case-in-chief or present any evidence at all, and often does not. "Throughout the process the defendant has a fundamental right to remain silent, in effect challenging the States at every point to: 'Prove it!'" *Williams v. Florida*, 399 U.S. 78, 112 (1970)(Black, J., dissenting). If Rule 16(b)(1)(A)'s drafters meant for the Rule to apply to the entire trial, they would not have included the phrase "case-in-chief," in subsection (ii) of the rule because the limitation would be meaningless. Instead, it would simply read "(ii) the defendant intends to use the item at trial." But it does not. The definition of the rule urged by the government renders the inclusion of the words "case-in-chief" superfluous and, therefore, must be rejected.

In addition, the common use of the term further supports Mr. Avenatti's position. The Supreme Court and other courts have consistently used the term "case-in-chief" to

---

[5] The rules of statutory construction apply to the Federal Rules. *See*, *e.g.*, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993) (applying the *expressio unius est exclusio alterius* canon when interpreting rule 9(b) of the Federal Rules of Civil Procedure); *Hillis v. Heineman,* 626 F.3d 1014, 1017-18 (9th Cir.2010) ("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure."). This includes that cannon that "[s]tatutory construction must begin with the language employed by [the writer] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194 (1985).

6

refer to the part of a trial between the time that a party calls its first witness and when it rests. See, e.g., *United States v. Dunnigan*, 507 U.S. 87, 89 (1993)("The case in chief for the United States consisted of five witnesses . . . ."); *Lytle v. Household Mfg.*, Inc., 494 U.S. 545 549 (1990)(stating "[a]t the close of Lytle's case in chief . . . ."); *Messer v. Kemp*, 474 U.S. 1088, 1089 (1986)(Marshall, J., dissenting)(noting that defense counsel "put on no case in chief," even though defense counsel cross-examined the state's witnesses); *Smalis v. Pennsylvania*, 476 U.S. 140, 141 (1986)(stating "[a]t the close of the prosecution's case in chief . . . ."); *Meachum v. Longval*, 460 U.S. 1098, 1099 (1983)("The Supreme Judicial Court appointed a special master, who found that during the presentation of the prosecution's case-in-chief, the trial judge told Longval's defense attorney . . . ."); *United States v. Havens*, 446 U.S. 620, 632 (1980)("Thus, almost any time an accused takes the stand, the prosecution will have an opportunity to enhance its case in chief."); *Blair v. Kentucky*, 449 U.S. 962, 963 (1980)(Brennan, J., dissenting) (stating "at the close of the Commonwealth's case in chief"); *Blakley v. Florida*, 444 U.S. 904, 905 (1979)(White, J., dissenting)(stating "[o]n direct examination in the State's case in chief a police officer testified . . . ."); *Cantrell v. Forest City Publ'n*, 419 U.S. 245, 251 (1974)(stating "[a]t the close of the petitioners' case-in-chief . . . ."); *Walder v. United States*, 347 U.S. 62, 66 (1954)("[T]he Government could no more work in this evidence on cross-examination than it could in its case in chief . . . .").

      Moreover, courts regularly distinguish between a party's "case-in-chief" and its cross-examination of another party's witnesses. See, e.g., *Application of Byrd*, 219 F.2d 221, 222 (9th Cir. 1955)("[R]ecordings were offered as a part of the cross-examination of petitioner, whereas they should have been used as a part of the State's case in chief."); *Ramdass v. Angelone*, 530 U.S. 156, 183 n.2 (2000)(Stevens, J., dissenting)("Virginia brought up the crime in its cross-examination rather than its case in chief . . . ."); *Walder v. United States*, 347 U.S. at 66 (1954)("[T]he Government could no more work in this evidence on cross-examination than it could in its case in chief . . . ."); *United States v.*

*Sanders*, 743 F.3d 471, 474 (7th Cir. 2014)("It applies to the prosecution's case-in-chief and to the examination of most witnesses, but not to cross-examination of the defendant."); *United States v. Romero-Lopez*, 695 F.3d 17, 24 (1st Cir. 2012)(stating "during the government's case-in-chief, rather than bring the incident up solely during its cross examination"); *United States v. Lambert*, 580 F.2d 740, 743 (5th Cir. 1978)("[I]t was developed through the Government's cross examination, its case-in-chief, and on rebuttal . . . ."); *McQueen v. Swenson*, 498 F.2d 207, 220 (8th Cir. 1974)(stating "would have proved helpful to the defendant either on cross-examination or in his case-in-chief").

Because of (1) the Ninth Circuit's decision in *Givens*; (2) the term "case-in-chief" has traditionally been defined and used in a manner that refers to the part of a trial in which a party calls its first witness until it rests; (3) there is no indication that the term was intended to be defined in rule 16(b)(1)(A) in a manner contrary to its traditional definition; and (4) adopting a contrary interpretation would render the use of the words "case-in-chief" in the rule meaningless and superfluous, the Court should conclude that the term "case-in-chief" as used in Rule 16(b)(1)(A) refers to evidence that a party presents between the time that the party calls its first witness and the time the party rests.

### B. The Interpretation Urged by the Defendant Results in No Prejudice to the Government

Thus far in the trial, Mr. Avenatti has only attempted to use documents produced by the government and bearing a USAO bates stamp, to question witnesses. By definition, these documents came from the government and thus have been in the government's possession for a longer period of time than the defense. Further, the resources utilized by the government in this case have been virtually endless. Accordingly, it is difficult, if not impossible, to understand what possible prejudice the government could suffer by the defendant using the government's own previously produced documents to question the government's own witnesses on cross-examination.

**Indeed, the defendant knows of no case where a court ordered, as a discovery sanction, that a defendant was precluded from using documents previously produced by the government to the defendant because the defendant did not subsequently reproduce those same documents back to the government pursuant to Rule 16(b)(1)(A).** *Cf. United States v. Losch*, 2019 U.S. Dist. LEXIS 208926 *11 (D. Ariz. 2019) (Directing the defendant to comply with Rule 16(b)(1)(A) by disclosing "all known items within his possession, custody, or control that he intends to use in his case-in-chief, if such items are not contained within the approximately 73,695 pages of documents that were already produced to Defendant by the prosecution.") (emphasis added); *United States v. Holden*, 2015 U.S. Dist. LEXIS 15851 *1-2, n.1 (D. Or. 2015) (Directing the defendant to comply with Rule 16(b)(1)(A) but ruling that "In light of the extraordinary volume of discovery in this case, Defendant need not disclose to the government any evidence that Defendant obtained from the government.")(emphasis added).

### C. Precluding the Defendant's Use of Documents Previously Produced by the Government is a Drastic and Unwarranted Remedy

As the Supreme Court and the Ninth Circuit have made clear, precluding a defendant from using evidence due to a discovery violation is a drastic remedy and appropriate only when "the omission was willful and motivated by a desire to obtain a tactical advantage." *Taylor v. Illinois*, 484 U.S. 400, 415 (1988) (upholding trial court's exclusion of witness where defendant deliberately failed to identify witness prior to trial) (emphasis added); *see also United States v. Peters*, 937 F.2d 1422, 1426 (9th Cir. 1991) (holding district court erred in excluding testimony of forensic pathologist because no willful or blatant discovery violation occurred); *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (citing *Taylor* and *Peters* and reversing conviction due to exclusion of testimony as discovery sanction).

Here, there is nothing that suggests that the defendant's failure to disclose and

reproduce to the government the same documents it previously produced to the defense was willful and motivated by a desire to obtain a tactical advantage. Accordingly, the Court should not preclude Mr. Avenatti from using the documents.

### IV. CONCLUSION

For each of the above reasons, the defendant requests that the Court permit Mr. Avenatti to use documents produced by the government and bearing a USAO bates stamp number on cross-examination.

Dated: July 26, 2021          Respectfully submitted,

                              /s/ Michael J. Avenatti

                              Defendant
                              MICHAEL JOHN AVENATTI

**EXHIBIT A – FILED UNDER SEAL**

## CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California 92660. I am not a party to the above-entitled action. I have caused, on July 26, 2021, service of the:

DEFENDANT'S SUBMISSION RE: APPLICABILITY OF FEDERAL RULE OF CRIMINAL PROCEDURE 16(b)(1)(A)

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 26, 2021

/s/ H. Dean Steward
H. Dean Steward