Michael J. Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S SUBMISSION REGARDING ABILITY TO CROSS EXAMINE WITNESSES ON PENDING LAWSUITS |

Defendant Michael John Avenatti ("Mr. Avenatti"), through advisory counsel, H. Dean Steward, hereby files this submission regarding the ability to cross examine witnesses, including Ms. Judy Regnier, on the subject of pending lawsuits that relate to the subject matter of the case before this Court.

On July 28, 2021, Mr. Avenatti performed a portion of his cross-examination of Ms. Judy Regnier. The examination continues as of the time of this filing.  During the examination this far, Mr. Avenatti has attempted to elicit testimony that Ms. Regnier had been named in two lawsuits related to two of the alleged victims in this case. Specifically, Ms. Regnier, alongside Mr. Avenatti, has been sued in two civil matters in connection with the allegations made in the current Indictment as they relate to Mr. Johnson and Mr. Barela. *See,* Exhibit A – Johnson Civil Complaint; *See also,* Exhibit B

– Barela Civil Complaint.  Mr. Avenatti has been precluded from questioning Ms. Regnier about the allegations made against Ms. Regnier by Mr. Johnson and Mr. Barela within these complaints.  Mr. Avenatti should be permitted to explore this line of questioning.

The Sixth Amendment to the United States Constitution guarantees the defendant the right to be confronted with the witnesses against him. U.S. Const. Amend. VI. The Sixth Amendment protects "the right to cross-examine witnesses to attack their general credibility or to show their possible bias or self-interest in testifying." United States v. Davis, 2015 U.S. Dist. LEXIS 15524, at *14-15 (C.D. Cal. 2015); citing Hughes v. Raines, 641 F.2d 790, 792 (9th Cir. 1981). The confrontation clause "requires a defendant to have some opportunity to show bias on the part of the prosecution witness." Id. citing United States v. Abel, 469 U.S. 45, 50 (1984); See also Fowler v. Sacramento Cnty. Sheriff's Dep't, 421 F.3d 1027, 1036 (9th Cir. 2005); *United States v. Jones*, 766 412, 413 (9th Cir. 1985)("when cross-examination concerns bias, the test is whether the jury had sufficient information to assess the witness's bias even without the excluded information"). The exposure of a witness' motivation in testifying is a "proper and important function of the constitutionally protected right of cross-examination." United States v. Kohring, 637 F.3d 895, 905 (9th Cir. 2011); citing Davis v. Alaska, 415 U.S. 308, 318 (1974).

Although the district court can exercise its discretion to avoid undue consumption of time, "these legitimate concerns cannot justify so severe a limitation as to prevent the jury from finding out what it needs in order to judge rationally whether the witnesses might be lying…" *United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999). Pecuniary interest may be shown to prove bias and "a defendant may ordinarily cross examine a prosecution witness to prove bias by proving that the witness is suing him." *Id.*  Likewise, seeing as Ms. Regnier is an alleged joint tortfeasor with Mr. Avenatti in both civil cases, it is in her best interest to see to it that Mr. Avenatti is convicted in this

2

case and criminal restitution orders are issued in favor of Mr. Barela and Mr. Johnson, as it could decrease, if not eliminate, her financial liability in the two civil cases.  Further, it is likely that the testimony she gives in these proceedings could be used against her in either of the referenced civil actions. The knowledge of this fact may color her testimony in a manner that seeks to protect herself at the detriment of Mr. Avenatti. Mr. Avenatti should be permitted to alert the jury that both Mr. Barela and Mr. Johnson have made claims against her specifically in connection with the instant action before this Court.

Accordingly, Mr. Avenatti asks that he be permitted wide latitude to cross-examine Ms. Regnier on the two cases and her bias and the pecuniary interest underlying her testimony.

Dated: July 29, 2021                    Respectfully submitted,

                                        /s/ Michael J. Avenatti


                                        Defendant
                                        MICHAEL JOHN AVENATTI

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT A

1  **CALLAHAN & BLAINE, APLC**
   Daniel J. Callahan (SBN 91490)
2  Edward Susolik (SBN 151081)
   Raphael Cung (SBN 201829)
3  3 Hutton Centre Drive, Ninth Floor
   Santa Ana, California 92707
4  Telephone (714) 241-4444

5  Attorneys for Plaintiff GEOFFREY E. JOHNSON

6

7

8               **SUPERIOR COURT OF CALIFORNIA**

9        **COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

10

11 GEOFFREY E. JOHNSON, an individual,          Case No.

12               Plaintiff,                      **COMPLAINT FOR:**

13        v.

14 MICHAEL J. AVENATTI, an individual;          (1)   **Professional Negligence**
   AVENATTI & ASSOCIATES, APC, a               (2)   **Breach of Fiduciary Duties**
15 California corporation; JASON M. FRANK,      (3)   **Breach of Contract**
   an individual; JASON FRANK LAW, PLC, a      (4)   **Intentional Fraud**
16 California corporation; MICHAEL Q.           (5)   **Conversion**
   EAGAN, an individual; SCOTT H. SIMS, an     (6)   **Aiding and Abetting**
17 individual; EAGAN AVENATTI, LLP (aka
   THE TRIAL GROUP, LLP), a California          **DEMAND FOR JURY TRIAL**
18 limited liability partnership; JUDITH K.
   REGNIER, an individual; and DOES 1
19 through 25, inclusive,

20               Defendants.

21

22

23

24

25

26

27

28

---
COMPLAINT FOR PROFESSIONAL NEGLIGENCE

**INTRODUCTION**

1.      Plaintiff GEOFFREY E. JOHNSON ("JOHNSON") was victimized the first time when he was severely injured, rendered a paraplegic, and otherwise physically and mentally traumatized by the acts and omissions of the Los Angeles County Sheriff's Department. Wrongfully arrested by County law enforcement (which eventually dismissed all charges), JOHNSON was driven to attempt suicide, twice, by flinging himself from an elevated floor, after the County's Sheriff Deputies failed to care for him, and such Deputies and other prisoners abused JOHNSON during his unwarranted incarceration.

2.      JOHNSON hired attorneys to seek justice and compensation.  Little did JOHNSON know that he would be victimized a second time when his own attorneys turned against him.  They took, and/or allowed the taking of, the vast majority of a $4,000,000 settlement payment that, unbeknownst to JOHNSON, Los Angeles County had agreed to pay for his benefit, and did in fact pay to his attorneys' client trust account in January 2015.

3.      JOHNSON did not discover this taking until late March-early April 2019, when such facts were revealed in connection with a dispute between some of his former attorneys and a federal criminal investigation of one of those attorneys.

4.      The most notorious of the attorneys who harmed JOHNSON is Defendant MICHAEL J. AVENATTI ("AVENATTI"), the former fixture on cable TV best known for representing adult actress Stormy Daniels, and for about five minutes an aspiring Presidential candidate.  AVENATTI is now facing more than 300 years in prison after being indicted by federal prosecutors on both coasts for a host of wrongful conduct, including against JOHNSON, who is identified as "Client 1" in a 36-count indictment filed by the U.S. Attorney's Office on April 10, 2019 in the Central District of California for wire fraud, tax evasion, and related criminal offenses.

5.      Through his influence over Defendant law firm EAGAN AVENATTI, LLP, sometimes also known as "THE TRIAL GROUP, LLP" ("EAGAN AVENATTI"), AVENATTI played a primary role in refusing to pay to JOHNSON the settlement funds allocated to him, and then siphoning off those funds.  AVENATTI then repeatedly lied to JOHNSON in falsely stating

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  that Los Angeles County would pay only in installments over years and years, and that it would

2  not begin such payments until the County approved of a special needs trust created for

3  JOHNSON.  AVENATTI also paid, and caused EAGAN AVENATTI to pay, JOHNSON the

4  minimal amounts of approximately $1,900 once a month to lull JOHNSON into thinking that the

5  underlying case and any settlement from it were being properly handled.  AVENATTI claimed to

6  JOHNSON that such minimal payments represented an "advance" against any potential future

7  settlement payment from Los Angeles County -- when in fact Los Angeles County had already

8  paid $4,000,000 for the benefit of JOHNSON to EAGAN AVENATTI's client trust account.

9  AVENATTI has since drained EAGAN AVENATTI's client trust account and any other bank

10  accounts of this money earmarked for JOHNSON.

11      6.      While AVENATTI was the main bad actor, he could not have done what he did to

12  JOHNSON and other clients had the other attorneys at EAGAN AVENATTI not turn a blind eye

13  and allow AVENATTI to direct those predatory actions against JOHNSON.

14      7.      Defendant JASON M. FRANK ("FRANK") has stated the following on the record:

15  "I was also counsel for Mr. Johnson"; "Mr. Johnson was "a client that I actually brought to the

16  firm"; and "Jeffrey [sic] Johnson was a client that I brought into Eagan Avenatti."

17      8.      Despite admittedly serving as JOHNSON's counsel, and being aware of the inflow

18  of funds into and out of EAGAN AVENATTI by reason of his revenue and profit participation

19  agreement with EAGAN AVENATTI and the other attorneys there, FRANK negligently failed to

20  ensure that JOHNSON would be paid the moneys that were allocated to JOHNSON, and failed to

21  monitor the actions of AVENATTI and EAGAN AVENATTI with respect to such payments and

22  report the same to client JOHNSON.  Indeed, FRANK did not care about the circumstances of the

23  payment from Los Angeles County for JOHNSON's benefit until he had a dispute with

24  AVENATTI concerning his share of the profits from EAGAN AVENATTI, since FRANK sought

25  to claim a portion of the contingency fees arising from the JOHNSON settlement due to his

26  origination of the client.  As such, FRANK breached his fiduciary duties to JOHNSON, and

27  violated multiple ethical rules to which he is bound as a California-licensed attorney.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 3 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

9.      Defendant SCOTT H. SIMS ('SIMS") personally worked on the underlying action on behalf of JOHNSON against Los Angeles County.  Thus, SIMS knew, and was in the position to know, the resolution of that action by way of a $4 million settlement payment for JOHNSON's benefit.  Yet SIMS, too, covered his eyes and kept silent, because he hoped to continue riding on the success of AVENATTI and EAGAN AVENATTI.  In so doing, SIMS was also negligent and breached numerous duties owing to JOHNSON as the client.

10.     Defendant MICHAEL Q. EAGAN ("EAGAN") was a partner and managing agent of EAGAN AVENATTI.  By the time of the events in question, EAGAN had been practicing law for approximately 40 years.  He was supposed to be the "adult in the room" providing stability and management to EAGAN AVENATTI while AVENATTI acted as its more public face.  By dint of his position as a partner and managing agent, EAGAN at least shared in controlling the funds that came in and out of EAGAN AVENATTI, including payments made to its client trust account for the ultimate benefit of clients such as JOHNSON.

11.     Any reasonable partner and managing agent of a firm who has seen $4 million in funds coming into his firm's client trust account would work with the other attorneys and personnel at the firm to ensure that payment would be made expeditiously to the client.  Only at that point could the attorneys have properly taken whatever contingency fees were earned from the settlement.  However, EAGAN abdicated his responsibility, and was content to simply lend his seniority and apparent respectability, and share in the profits of EAGAN AVENATTI.  Even though he knew that Los Angeles County had made a large settlement payment for the benefit of JOHNSON, he sat on his hands, turned away his eyes, closed his mouth, and did nothing as AVENATTI subsequently caused those funds to be drained away.

12.     Defendant JUDITH K. REGNIER ("REGNIER") acted as office manager, paralegal, and administrator at EAGAN AVENATTI.  Among REGNIER's duties was to sign checks on behalf of EAGAN AVENATTI, and she had such check-signing authority from AVENATTI, EAGAN, FRANK, SIMS, and others.  REGNIER aided and abetted the deception against JOHNSON and the siphoning of his settlement money by, among other things, signing the checks for $1,900 and causing electronic transfers that were paid occasionally to JOHNSON as a

- 4 -

1  way to hide from him that $4,000,000 in settlement funds had been paid to EAGAN

2  AVENATTI's client trust account.  To the extent that REGNIER carried out only AVENATTI's

3  illegal orders, FRANK, EAGAN, and SIMS breached their duties to properly supervise her, thus

4  allowing REGNIER to aid and abet AVENATTI in wrongful conduct that significantly harmed

5  JOHNSON.

6          13.     Due to this scheme to take JOHNSON's settlement funds, JOHNSON also lost his

7  supplemental security income benefits.  When in 2018, the Social Security Administration

8  ("SSA") became aware of the monthly payments of approximately $1,900 received by

9  JOHNSON, SSA asked JOHNSON for information on such payments, to confirm his eligibility

10  for supplemental security income.  JOHNSON asked AVENATTI and REGNIER to provide such

11  information to the SSA, and otherwise to ensure that he would continue to receive supplemental

12  security income, given that the monthly payments made to him were represented as "advances"

13  against the settlement payment (and therefore *not* "income").

14          14.     AVENATTI and REGNIER promised to contact SSA to clear up the matter and

15  ensure the continuance of JOHNSON's supplemental security income.  However, AVENATTI

16  and REGNIER made false statements to SSA, because they believed that if they disclosed true

17  facts about the advances received by JOHNSON, that would have exposed the scheme to siphon

18  away JOHNSON's $4 million settlement funds.

19          15.     Thus, JOHNSON ended up in a worse situation than before he engaged the

20  foregoing attorneys.  Not only was JOHNSON deprived of a large settlement payment that

21  otherwise would have come to him, but JOHNSON also lost the modest supplemental security

22  income that partially sustained him after being injured by Los Angeles County.

23          16.     Accordingly, JOHNSON brings this action for at least $9,500,000 in compensatory

24  damages: $4,000,000 in lost settlement funds; at least $500,000 in lost Social Security benefits;

25  and at least $5,000,000 in general damages, including severe emotional distress.  Due to the

26  intentional wrongful conduct of AVENATTI and REGNIER, and the gross negligence and

27  reckless disregard of JOHNSON's rights by FRANK, EAGAN, and SIMS, JOHNSON also seeks

28  punitive damages to the maximum extent allowed under the Constitution.  Only in such manner

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  can JOHNSON be compensated for harm that was inflicted on him due to the shocking conduct
2  that was engaged in by Defendants.

3  <div align="center">**THE PARTIES**</div>

4      17.    Plaintiff GEOFFREY E. JOHNSON ("JOHNSON") is an individual who resides in
5  the County of Los Angeles.

6      18.    Defendant MICHAEL J. AVENATTI ("AVENATTI") is an individual who, on
7  information and belief, resides and/or does business in this County.  AVENATTI is an attorney
8  admitted and licensed by the State Bar of California.

9      19.    Defendant AVENATTI & ASSOCIATES, APC is a purported corporation formed
10 under California law, and based in this County, through which AVENATTI acted and operated,
11 and continues to act and operate.  In reality, AVENATTI was and is the sole shareholder of
12 AVENATTI & ASSOCIATES, APC, and AVENATTI has treated the alleged corporation as his
13 "alter ego" rather than as a separate entity.  As such, upholding the corporate form and allowing
14 AVENATTI to avoid liability for AVENATTI & ASSOCIATES, APC's debts and liability would
15 sanction a fraud and/or promote an injustice.  AVENATTI & ASSOCIATES, APC shall be
16 included in the term "AVENATTI" in this Complaint unless stated otherwise.

17     20.    Defendant JASON M. FRANK ("FRANK") is an individual who, on information
18 and belief, resides and/or does business in this County.  FRANK is an attorney admitted and
19 licensed by the State Bar of California.

20     21.    Defendant JASON FRANK LAW, PLC is a purported professional corporation
21 formed under California law, and based in this County, through which FRANK acted and
22 operated, and continues to act and operate.  In actuality, FRANK was and is the sole shareholder
23 of JASON FRANK LAW, PLC, and FRANK has treated the alleged corporation as his "alter ego"
24 rather than as a separate entity.  As such, upholding the corporate form and allowing FRANK to
25 avoid liability for JASON FRANK LAW, PLC's debts and liability would sanction a fraud and/or
26 promote an injustice.  JASON FRANK LAW, PLC shall be included in the term "FRANK" in this
27 Complaint unless stated otherwise.

28

22. Defendant MICHAEL Q. EAGAN ("EAGAN") is an individual who, on information and belief, resides and/or does business in the City and County of San Francisco, and does business in this County. EAGAN is an attorney admitted and licensed by the State Bar of California.

23. Defendant SCOTT H. SIMS ("SIMS") is an individual who, on information and belief, resides and/or does business in this County. SIMS is an attorney admitted and licensed by the State Bar of California.

24. Defendant EAGAN AVENATTI, LLP ("EAGAN AVENATTI") purports to be a limited liability partnership formed under California, and based in this County, through which AVENATTI, FRANK, EAGAN, and SIMS acted and operated. EAGAN AVENATTI, LLP sometimes goes by the name "The Trial Group, LLP" and/or other names, but it is referred to here as "EAGAN AVENATTI."

25. During the time periods relevant to this action, AVENATTI, FRANK, EAGAN, and SIMS, were all attorneys employed by, agents of, and/or acting on behalf of EAGAN AVENATTI, including with respect to all conduct directed toward and/or affecting JOHNSON.

26. Alternatively, or in addition, during all time periods relevant to this action, AVENATTI, FRANK, and EAGAN were shareholders and/or controlling persons of EAGAN AVENATTI, and AVENATTI, FRANK, and EAGAN treated the alleged limited liability partnership as their "alter ego" rather than as a separate entity. As such, upholding the LLP entity and allowing AVENATTI, FRANK, and EAGAN to avoid liability for EAGAN AVENATTI's debts and liability would sanction a fraud and/or promote an injustice.

27. Defendant JUDITH REGNIER ("REGNIER") is an individual who, on information and belief, resides and/or does business in this County.

28. During the time periods relevant to this action, REGNIER was employed by, an agent of, and/or acting on behalf of EAGAN AVENATTI and the foregoing attorneys AVENATTI, FRANK, EAGAN, and SIMS, including with respect to all conduct directed toward and/or affecting JOHNSON. During such time periods, REGNIER held the positions and duties of office manager, administrator, and paralegal.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

29.     JOHNSON has no knowledge of the true names and capacities of the defendants sued herein as DOES 1-25 (the "Doe Defendants"), and therefore, pursuant C.C.P. § 474, sues these Doe Defendants by such fictitious names.  JOHNSON shall seek leave to amend this Complaint to allege the true names and capacities of said Doe Defendants if and when their identities and roles are ascertained.  Each of said fictitiously named Doe Defendants are legally responsible in some manner for the occurrences and damages alleged herein, and JOHNSON's damages as herein alleged were proximately caused by the acts of these Doe Defendants.

30.     At all times herein mentioned, all Defendants were the agents, servants, employees, instrumentalities, representatives, co-venturers, partners, and/or alter egos of the other Defendants. In doing the things hereafter alleged, such Defendants were acting in the scope of their authority as agents, servants, employees, instrumentalities, representatives, co-venturers, partners, and/or alter egos, and with the permission and consent of all other Defendants, and as such share liability with each other in respect to the matters complained of herein.

## JURISDICTION AND VENUE

31.     The Court has personal jurisdiction over all Defendants because they are all citizens of California.

32.     Pursuant to C.C.P. § 395.5, venue is proper as to all Defendants because their principal residences and/or places of business are in this County and judicial district, and/or their liability to JOHNSON arises in this County and judicial district.

## COMMON ALLEGATIONS

33.     In April 2011, JOHNSON suffered from mental health issues, which led to his improper arrest by the Los Angeles Sheriff's Department and incarceration in the Men's Central Jail in downtown Los Angeles.

34.     On August 30, 2011, JOHNSON was driven into twice attempting suicide by the abuse of deputies of the Los Angeles Sheriff's Department as well as other inmates while in custody.  JOHNSON became severely injured and rendered a paraplegic when he jumped from an elevated floor at the jail.  JOHNSON's resulting injuries left him unable to work or support himself.  They also left him physically and mentally devastated.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

35.     In approximately early 2012, JOHNSON entered into a retainer agreement and engaged the law firm of EAGAN AVENATTI, LLP ("EAGAN AVENATTI") and the attorneys therein to represent him with respect to claims against the County of Los Angeles arising from the above injury.

36.     FRANK has stated that it was he who personally "brought" JOHNSON into EAGAN AVENATTI as a client.

37.     At this inception stage, FRANK and AVENATTI interacted with JOHNSON and/or JOHNSON's relatives who helped him to look for an attorney.  However, neither FRANK nor AVENATTI ever explained to JOHNSON the terms of the representation.  While JOHNSON understood that EAGAN AVENATTI and the attorneys therein would represent him on a contingency basis (as is the case with the vast majority of plaintiff's personal injury actions), neither FRANK nor AVENATTI, nor anyone else at EAGAN AVENATTI, explained to JOHNSON the calculation of his fees and costs (including the contingency percentage), or how any settlement or judgment funds would be handled.

38.     During all relevant time periods, including during the course of representing JOHNSON, AVENATTI and EAGAN were partners and/or managing agents of EAGAN AVENATTI.  AVENATTI and EAGAN had control over funds coming into and flowing out of EAGAN AVENATTI, including such funds deposited into or paid out of EAGAN AVENATTI's client trust account.

39.     During all relevant time periods, including during the course of representing JOHNSON, FRANK had a revenue and profit sharing arrangement with EAGAN AVENATTI, first orally and then in writing.  In sum and substance, such agreement between FRANK and EAGAN AVENATTI and its other attorneys entailed FRANK receiving a certain percentage of fees from clients who were originated by him.  Thus, FRANK had an incentive to and did keep apprised of and determine which funds were received by EAGAN AVENATTI, from or with respect to which clients, and EAGAN AVENATTI's expenses or payouts with respect to such clients, since his compensation depended on such funds.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

40.     The attorneys at EAGAN AVENATTI who personally worked on JOHNSON's matter included AVENATTI, FRANK, and SIMS.  Additionally, EAGAN monitored the progress and handling of the matter, including after litigation was filed on JOHNSON's behalf as elaborated below.

41.     On or about October 9, 2012, represented by EAGAN AVENATTI and AVENATTI, FRANK, and SIMS personally, JOHNSON filed a lawsuit against the County of Los Angeles and its officials, including former Los Angeles County Sheriff Leroy "Lee" Baca. JOHNSON alleged the deprivation of his constitutional due process rights, civil rights violations, and failure to provide immediate medical care, in the matter entitled *Johnson v. Baca, et al.*, Los Angeles Superior Court, Case No. BC493409.  On or about June 21, 2013, defendants removed that action to the United States District Court for the Central District of California, as *Johnson v. Baca, et al.*, Case No. 13-CV-4496-MMM.  The foregoing action filed and maintained on JOHNSON's behalf shall be referred to as the "Underlying Action."

42.     EAGAN AVENATTI, through attorneys AVENATTI, FRANK, and SIMS personally, litigated the action, including preparing JOHNSON for deposition, until approximately January 2015.

43.     In about late October to early November 2014, EAGAN AVENATTI, through AVENATTI, FRANK, and SIMS personally, reached an agreement in principle with Los Angeles County on all material terms of a settlement, including the settlement sum of $4 million for JOHNSON.  Due to the nature of how the County's governing authorities operate, the County initially took the position that it would take a minimum of six months for its Board of Supervisors to meet and approve the settlement (or until at least May 2015).  EAGAN AVENATTI, through attorneys AVENATTI, FRANK, and SIMS personally, demanded from the County that payment be made within 60 days, or by approximately January 2015.  For instance, in a court hearing on November 7, 2014 to review the status and results of mediation, AVENATTI represented to the Court that payment was needed expeditiously because client JOHNSON "is a paraplegic and is in need of the funds."

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

44.     The County of Los Angeles ultimately relented to an expeditious payment.  On or about January 21, 2015. EAGAN AVENATTI, through attorneys AVENATTI, FRANK, and SIMS personally, entered into a written settlement agreement with Los Angeles County supposedly on behalf of JOHNSON (see Exhibit A).

45.     Consistent with the settlement agreement, on or about January 26, 2015, the County of Los Angeles issued a check for $4 million, made payable to the attorney client trust account of EAGAN AVENATTI (see Exhibit B).  Such check was deposited into the bank account for EAGAN AVENATTI's client trust account on or about January 29, 2015.

46.     Although AVENATTI, FRANK, and SIMS were all knowledgeable regarding the material terms of the settlement agreement, none of them informed JOHNSON of Los Angeles County's agreement to make a lump sum payment of $4 million for the benefit of JOHNSON. AVENATTI, FRANK, SIMS, and EAGAN also knew about but did not inform JOHNSON that Los Angeles County actually did issue payment in the amount of $4 million for the benefit of JOHNSON, and that EAGAN AVENATTI was in possession of such amount in its client trust account.

47.     Instead, AVENATTI met with JOHNSON and lied to him about the disposition of the Underlying Action.  AVENATTI falsely stated to JOHNSON that Los Angeles County would pay any settlement money only in quarterly installments over ten or more years, and that Los Angeles County would begin such payments only upon the establishment of a special needs trust for JOHNSON, and the County's approval of such trust.  AVENATTI also falsely assured JOHNSON that he and his colleagues would create such a special needs trust so that such payments could be received from Los Angeles County.

48.     Those statements were lies designed to buy enough time to siphon off these funds, and to prevent JOHNSON from look into the handling of his case.  In reality, EAGAN AVENATTI had already received and cashed a lump sum payment from Los Angeles County for $4 million.

49.     FRANK, EAGAN, and SIMS were aware of AVENATTI's misstatements to JOHNSON and acquiesced to them.  At the very least, FRANK, EAGAN, and SIMS failed to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 11 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   consult with their client JOHNSON regarding the disposition of the Underlying Action. If one of

2   them had simply reached out to JOHNSON and learned what AVENATTI had said to him

3   (falsely) about the required conditions for Los Angeles County to make payment, JOHNSON

4   would have learned that his funds had already been received and taken steps to secure them.

5          50.     Instead, FRANK, EAGAN, and SIMS deferred to AVENATTI and took a hands-

6   off approach to the matter after the settlement agreement was entered into, even though they all

7   had individual and personal duties toward JOHNSON, including a duty to inform that $4 million

8   had been paid and received for his benefit.

9          51.     The "see-no-evil, hear-no-evil" approach of FRANK and SIMS was engaged in by

10  EAGAN as well. Even though EAGAN shared control of EAGAN AVENATTI's finances,

11  including funds flowing into and out of the client trust account, he refused to do anything to

12  ensure that the client was being paid the settlement funds paid by Los Angeles County. EAGAN

13  knew that $4 million paid by Los Angeles County for JOHNSON was deposited into EAGAN

14  AVENATTI's bank account (no one could miss that), but he refused to exercise any control or

15  supervision over such funds, despite EAGAN AVENATTI being counsel of record for JOHNSON

16  in the Underlying Action.

17         52.     AVENATTI told JOHNSON that while EAGAN AVENATTI was working to set

18  up and obtain Los Angeles County's approval of a special needs trust, he would "advance" from

19  EAGAN AVENATTI's own funds certain amounts to partially cover Johnson's living expenses.

20  Beginning in or about July 2015, mostly once a month, AVENATTI and/or EAGAN AVENATTI

21  caused checks or electronic transfers, typically in amounts of $1,900 each, to be sent to

22  JOHNSON. The total amount of these payments from July 2015 to March 2019 was

23  approximately $124,000.

24         53.     REGNIER helped in making these minimal payments to JOHNSON to hide the

25  siphoning off of his $4 million settlement payment, and to lull JOHNSON into the false

26  impression that such settlement funds from Los Angeles County would be forthcoming only after

27  the County approved his special needs trust. AVENATTI, FRANK, EAGAN, and SIMS gave

28  REGNIER check-signing authority, as well as authority to cause electronic payments made from

1   EAGAN AVENATTI's bank accounts.  REGNIER, acting on the unlawful direction of

2   AVENATTI, signed such checks and otherwise caused the periodic payments of $1,900 to

3   JOHNSON, knowing that they were designed to buy time and prevent JOHNSON from learning

4   that the $4 million settlement made for his benefit had been paid but was being drained away.

5        54.    While EAGAN, FRANK, and SIMS may not have explicitly ordered REGNIER to

6   act illegally with respect to JOHNSON's settlement money, they knew and had a reason to know

7   that there were irregularities, to say the least, with the disposition of such funds.  They knew that

8   $4 million had been paid to EAGAN AVENATTI's client trust account for the benefit of

9   JOHNSON.  EAGAN, FRANK, and SIMS also knew, and had reason to know, that REGNIER

10   was signing checks and making electronic payments to JOHNSON for only about $1,900 each

11   month, at which rate it would take over 100 years to complete the settlement payments to

12   JOHNSON.

13        55.    In particular, FRANK and EAGAN had access to information concerning the

14   inflows and outflows of money from EAGAN AVENATTI and its client trust account.  SIMS

15   personally represented JOHNSON as a client in the Underlying Action and could have easily

16   found out from JOHNSON what he was receiving or not receiving with respect to resolution of the

17   lawsuit against Los Angeles County.  Given their knowledge of the circumstances, FRANK,

18   EAGAN, and SIMS breached their duty to inform JOHNSON of all material developments, duty

19   to inform the client of a settlement payment, and duty to supervise REGNIER, thereby allowing

20   her to aid AVENATTI in the misappropriation scheme against JOHNSON.

21        56.    In 2017, JOHNSON sought to purchase a house with the settlement funds, which

22   he was hoping to receive sometime shortly, as it had been two years since he had started receiving

23   the "advances" from EAGAN AVENATTI.  AVENATTI encouraged JOHNSON to look for real

24   property and helped him find a real estate agent for this purpose.  Believing that the settlement

25   would be paid shortly, and based on the false reassurances of AVENATTI, JOHNSON signed a

26   contract to buy a house.  AVENATTI later told him that Los Angeles County was still delaying

27   approval of the special needs trust and therefore, payment of the funds to that trust.  The house

28   sale eventually fell through.  In retrospect, AVENATTI's encouragement that JOHNSON look for

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 13 -

1   real property was another part of the deception to hide that his settlement funds had been siphoned

2   off.

3          57.      In 2018, the federal Social Security Administration ("SSA") was conducting a

4   redetermination of JOHNSON's eligibility for supplemental security income benefits.  On or

5   about November 1, 2018, SSA sent JOHNSON a letter regarding the redetermination, asking him

6   for information about his apparent monthly payments and related matters.  JOHNSON forwarded

7   such communications to AVENATTI and REGNIER, who agreed to provide the requested

8   information to SSA so as to prevent JOHNSON losing his supplemental security income benefits.

9          58.      On or about January 16, 2019, SSA wrote another letter to JOHNSON, stating that

10  because he had not provided the information that SSA had requested, it was eliminating his

11  supplemental security income benefits as of February 2019.  SSA's letter added that there was still

12  time to prevent this, but JOHNSON would have to contact SSA right away to provide the

13  requested information.  JOHNSON again contacted AVENATTI and REGNIER, who said they

14  would take care of the issue.

15         59.      However, AVENATTI and REGNIER provided SSA with false information

16  concerning JOHNSON, and did so in a further attempt to hide the siphoning of JOHNSON's

17  settlement funds and the successful, years-long effort to cover it up.  As a result, JOHNSON lost

18  such social security benefits beginning in February 2019.

19         60.      In approximately February 2019, JOHNSON asked AVENATTI again about the

20  status of the special needs trust and settlement payment.  AVENATTI falsely told him that Los

21  Angeles County had not yet begun releasing the settlement funds.

22         61.      On March 22, 2019, AVENATTI testified at a debtor's examination arising from a

23  financial dispute with FRANK.  At that examination, AVENATTI took the position that the

24  periodic payments of $1,900 to JOHNSON constituted "an advance on future settlement monies."

25         62.      However, apparently concerned that details about the dealings with JOHNSON

26  would now become publicly known (as AVENATTI's various legal issues were being covered by

27  the press), AVENATTI went to meet in person with JOHNSON during the next few days, March

28  22-24, 2019.  During those meetings, AVENATTI stated falsely to JOHNSON that the special

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 14 -

needs trust has now been established and Los Angeles County was prepared to make settlement payment, but JOHNSON would have to sign additional documents, including a "Client Testimonial Approval" attesting that AVENATTI is an "exceptional, honest and ethical attorney…" Under duress, JOHNSON signed such documents because he was induced by AVENATTI to believe that his settlement funds were forthcoming. Aside from the "Client Testimonial Approval," JOHNSON is unaware of what were the other documents that AVENATTI forced him to sign during this period, and AVENATTI did not provide JOHNSON with any copies of them.

63. On or about April 10, 2019, the U.S. Attorney's Office for the Central District of California released an indictment of AVENATTI on thirty-six counts of criminal offenses, including with respect to the misappropriation of the settlement funds of JOHNSON, who is referred to the indictment as "Client 1." Shortly after such indictment was announced, AVENATTI posted on-line the "Client Testimonial Approval" that he had extracted from JOHNSON using duress and deception.

64. It was not until at least late-March to April 2019, through the government's investigation of AVENATTI and JOHNSON's consultation with new counsel, did JOHNSON begin to discover what had actually happened to his settlement funds. JOHNSON did not learn until March-April 2019 that Los Angeles County had paid $4 million in settlement funds to EAGAN AVENATTI's client trust account in January 2015, and that such funds had been drained thereafter, through the acts and omissions of Defendants AVENATTI, FRANK, EAGAN, SIMS, REGNIER, and EAGAN AVENATTI.

65. JOHNSON had no knowledge, and had no reason to know, of the above acts and omissions because Defendants willfully concealed them from him. In particular, as set forth above, AVENATTI falsely informed JOHNSON on repeated occasions that the settlement money from Los Angeles County had not been paid, and supported such false statements with "advances" to JOHNSON of $1,900 every month or so.

66. In addition, as evidenced by AVENATTI's meetings and discussions with JOHNSON during March 22-24, 2019, there was continuing representation of JOHNSON until at

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

least March-April 2019, and therefore all applicable statutes of limitation were tolled until at least such period.

67.     Alternatively, or in addition, during all relevant periods, JOHNSON was under a physical disability that restricted his ability to commence legal action, and therefore all applicable statutes of limitation were tolled for that separate and independent reason as well.

68.     JOHNSON's monetary losses total at least $4,500,000: $4,000,000 from the lost settlement funds and $500,000 in lost social security benefits.

69.     Additionally, JOHNSON suffers from severe emotional distress due to being defrauded for four years, and learning that among the people who he had trusted the most, his attorneys, were the ones who had victimized him.  Such emotional distress comes on top of the mental trauma that JOHNSON already suffered, and continues to suffer, due to the injuries inflicted by Los Angeles County at issue in the Underlying Action.  Accordingly, JOHNSON seeks compensation of at least $5,000,000 for general damages, for total compensatory damages of $9,500,000.

70.     JOHNSON also seeks punitive damages against Defendants for their acts of malice, oppression, and fraud against him.

## FIRST CAUSE OF ACTION
## PROFESSIONAL NEGLIGENCE

(Against Defendants AVENATTI, FRANK, EAGAN, SIMS, EAGAN AVENATTI, and DOES 1-10)

71.     JOHNSON incorporates by reference paragraphs 1-70 above as though they are fully set forth herein.

72.     AVENATTI, FRANK, EAGAN, and SIMS were attorneys who had an attorney-client relationship with JOHNSON.  JOHNSON engaged them to represent him in connection with personal injury claims against Los Angeles County, and in litigation against the County in the Underlying Action.  As such, AVENATTI, FRANK, EAGAN, and SIMS owed a duty of care to JOHNSON, including but not limited to the duty to protect JOHNSON's best interests in all

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  circumstances. EAGAN AVENATTI was the law firm that represented JOHNSON, acting

2  through individual attorneys AVENATTI, FRANK, EAGAN, and SIMS.

3       73.     The misrepresentations, concealment, and other fraudulent conduct of AVENATTI

4  and REGNIER were engaged in by them at the behest of and/or with the authorization of EAGAN

5  AVENATTI, and therefore EAGAN AVENATTI is liable for such conduct as well.

6       74.     AVENATTI, FRANK, EAGAN, SIMS, and EAGAN AVENATTI breached the

7  following duties to JOHNSON, as set forth under the following California Rules of Professional

8  Conduct ("CRPC"): duty to communicate to the client about significant developments (Rule 1.4);

9  duty to communicate settlement offers (Rule 1.4.1); duty not to charge or take unconscionable fee

10  (Rule 1.5); duty to refrain from certain business transactions with the client and pecuniary interests

11  adverse to the client (Rule 1.8.1); duty to safeguard and duly account for funds in which a client

12  has interest, including promptly notifying the client of the receipt of such funds (Rule 1.15); duty

13  to supervise other lawyers in a law firm, and take reasonable remedial action when necessary

14  (Rule 5.1); duty to comply with ethical rules notwithstanding the direction of another lawyer (Rule

15  5.2); and duty to supervise nonlawyer personnel in a law firm (Rule 5.3). In particular, attorneys

16  are required to "promptly" distribute to the client funds that the latter is entitled to receive (Rule

17  1.15(d)).

18       75.     Additionally, AVENATTI took client funds without JOHNSON's consent, and

19  made false statements to JOHNSON. However, because all the compensation of AVENATTI,

20  FRANK, EAGAN, and SIMS included some portion of the settlement proceeds to which

21  JOHNSON was entitled, AVENATTI, FRANK, EAGAN, and SIMS all breached their duty to

22  JOHNSON by in effect taking unearned fees from him.

23       76.     AVENATTI and EAGAN AVENATTI breached the duty to competently perform

24  legal services when AVENATTI promised that he, and paralegal REGNIER acting under his

25  direction, would provide information and otherwise rectify matters with the Social Security

26  Administration so as to prevent the discontinuation of JOHNSON's supplemental security income

27  benefits. AVENATTI failed to do so, and in fact provided false information to SSA. As a result,

28  JOHNSON was deprived of such governmental benefits.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

77. Further, AVENATTI, FRANK, and EAGAN. who had managerial authority, and SIMS. who had at least "intermediate managerial authority," breached their duty to supervise other lawyers and non-attorney staff at EAGAN AVENATTI.

78. In violating the above duties to client JOHNSON, AVENATTI, FRANK, EAGAN, SIMS, and EAGAN AVENATTI engaged in professional negligence.

79. JOHNSON did not discover the misconduct against him until no earlier than March-April 2019, because such wrongful conduct was concealed from him. Among other things, AVENATTI lied to JOHNSON that the settlement funds had not been paid by Los Angeles County and would not be paid until a special needs trust was established and approved by the County, and AVENATTI and REGNIER caused the payment of minimal funds to JOHNSON to lull him into a false sense of security. FRANK, EAGAN, and SIMS refused to inform JOHNSON that the County of Los Angeles had paid $4 million for his benefit, and therefore JOHNSON could not know of Defendants' acts and omissions causing him harm until recent events in March-April 2019, including the government's investigation of the circumstances surrounding the loss of JOHNSON's settlement funds. All of such wrongful acts and omissions by AVENATTI, FRANK, EAGAN, and SIMS were engaged in as employees and/or agents of EAGAN AVENATTI, and therefore EAGAN AVENATTI is liable for such conduct as well.

80. The acts and omissions of JOHNSON, AVENATTI, FRANK, EAGAN. SIMS, and EAGAN AVENATTI that constituted legal malpractice actually and proximately caused damage to JOHNSON, in an amount to be determined at trial but no less than $9,500,000.

## SECOND CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTIES

### (Against Defendants AVENATTI, FRANK, EAGAN. SIMS, EAGAN AVENATTI, and DOES 1-10)

81. JOHNSON incorporates by reference paragraphs 1-80 above as though they are fully set forth herein.

82. AVENATTI, FRANK, EAGAN, and SIMS owed fiduciary duties toward JOHNSON because they were his attorneys. and he was their client. As such, AVENATTI,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   FRANK, EAGAN, and SIMS had a duty to act with the utmost good faith and in the best interests

2   of JOHNSON, and with undivided loyalty toward him. As EAGAN AVENATTI was the law

3   from through which AVENATTI, FRANK, EAGAN, and SIMS acted toward JOHNSON,

4   EAGAN AVENATTI had such fiduciary duties toward JOHNSON.

5         83.      In engaging in the acts and omissions set forth above, AVENATTI, FRANK,

6   EAGAN, SIMS, and EAGAN AVENATTI breached their fiduciary duties to JOHNSON,

7   including their duties to act in his best interests and with loyalty.

8         84.      Among other things, AVENATTI caused the misappropriation of the settlement

9   funds that were paid into EAGAN AVENATTI's client trust account for the benefit of

10  JOHNSON. FRANK, EAGAN, and SIMS knew and had reason to know about such actions but

11  failed to take any steps to safeguard JOHNSON. In particular, FRANK, EAGAN, and SIMS

12  knew about Los Angeles County's payment of $4 million for the benefit of JOHNSON, but

13  refused or otherwise failed to disclose those facts to him, thus allowing AVENATTI to carry out

14  his scheme.

15        85.      AVENATTI, FRANK, EAGAN, SIMS, and EAGAN AVENATTI's breaches of

16  their fiduciary duties to JOHNSON actually and proximately caused damage to him, in an amount

17  to be determined at trial but no less than $9,500,000.

18        86.      Additionally, the above Defendants engaged in the above breaches of fiduciary

19  duties owing to JOHNSON with malice, oppression, or fraud. AVENATTI intended to defraud

20  and harm JOHNSON. FRANK, EAGAN, and SIMS acted with gross negligence and/or in

21  reckless disregard for JOHNSON's rights. AVENATTI, FRANK, EAGAN, SIMS, and EAGAN

22  AVENATTI engaged in the foregoing intentional, fraudulent, and/or grossly negligent conduct at

23  the behest of and/or with the authorization of EAGAN AVENATTI. Accordingly, pursuant to

24  Civil Code § 3294, JOHNSON is entitled to recover punitive and exemplary damages against

25  those Defendants, in an amount to be proven at trial consistent with Constitutional requirements.

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**THIRD CAUSE OF ACTION**

**BREACH OF CONTRACT**

(Against Defendants AVENATTI, EAGAN AVENATTI, FRANK, EAGAN, and DOES 1-10)

87.     JOHNSON incorporates by reference paragraphs 1-86 above as though they are fully set forth herein.

88.     JOHNSON entered into a retainer agreement with EAGAN AVENATTI and the attorneys therein to represent him and provide him legal services in connection with JOHNSON's claims against the County of Los Angeles.  Such contract was with the law firm of EAGAN AVENATTI but also with the following managing agents thereof, particularly as they were and are alter egos of EAGAN AVENATTI: AVENATTI, EAGAN, and FRANK.

89.     JOHNSON performed all of his obligations under such contract, including cooperating with the above-mentioned Defendants in prosecuting the action.

90.     EAGAN AVENATTI, AVENATTI, EAGAN, and FRANK breached and otherwise failed to perform their obligations under the retainer agreement with JOHNSON, including the contractual duty to pay over to him all amounts recovered from the County of Los Angeles from the underlying action.

91.     The refusal or failure of EAGAN AVENATTI, AVENATTI, EAGAN, and FRANK to perform their contractual duties owing to JOHNSON under the retainer agreement actually and proximately caused him harm, including but not limited to the loss of the $4 million in settlement funds paid by the County of Los Angeles for JOHNSON's benefit.

**FOURTH CAUSE OF ACTION**

**INTENTIONAL FRAUD**

(Against Defendant AVENATTI, REGNIER, EAGAN AVENATTI, and DOES 11-25)

92.     JOHNSON incorporates by reference paragraphs 1-91 above as though they are fully set forth herein.

93.     AVENATTI made multiple misrepresentations to JOHNSON; notably, that the County of Los Angeles would not pay any settlement funds until a special needs trust was established for JOHNSON, and the County approved such trust.  AVENATTI also misled

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1 JOHNSON by paying him minimal "advances" on the settlement funds so as to lull him into a

2 false sense of security, and so that JOHNSON would not look into the circumstances of any

3 settlement with Los Angeles County.

4      94.    In actual fact, AVENATTI concealed from JOHNSON that the County of Los

5 Angeles had paid $4 million to the client trust account of EAGAN AVENATTI in January 2015.

6 AVENATTI, aided and abetted by others, subsequently caused the funds allocated for JOHNSON

7 to be drained.

8      95.    AVENATTI intended for JOHNSON to rely on his misrepresentations and other

9 deceptive conduct with respect to the settlement funds, and JOHNSON did justifiably rely on such

10 representations and conduct of AVENATTI.

11      96.    REGNIER intentionally deceived JOHNSON by also making false statements to

12 him similar to those made by AVENATTI, and writing checks or otherwise causing payments to

13 JOHNSON of the nominal amounts that were claimed as "advances" on any future settlement

14 proceeds from Los Angeles County, when she knew and had reason to know that the settlement

15 funds had been paid, and this was all part of a scheme to hide from JOHNSON the taking of such

16 funds.

17      97.    The misrepresentations, concealment, and other fraudulent conduct of AVENATTI

18 and REGNIER were engaged in by them at the behest of and/or with the authorization of EAGAN

19 AVENATTI, and therefore EAGAN AVENATTI is liable for such conduct as well.

20      98.    The misrepresentations, concealment, and other fraudulent conduct of AVENATTI,

21 REGNIER, and EAGAN AVENATTI actually and proximately caused damage to JOHNSON, in

22 an amount to be determined at trial but no less than $9,500,000.

23      99.    AVENATTI and REGNIER engaged in the above fraudulent acts with malice,

24 oppression, or fraud, in that they intended to defraud and harm JOHNSON.  Additionally,

25 AVENATTI and REGNIER engaged in such acts at the behest of and/or with the authorization of

26 EAGAN AVENATTI.  Accordingly, pursuant to Civil Code § 3294, JOHNSON is entitled to

27 recover punitive and exemplary damages against AVENATTI, REGNIER, and EAGAN

28 AVENATTI in an amount to be proven at trial consistent with Constitutional requirements.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**FIFTH CAUSE OF ACTION**

**CONVERSION**

(Against Defendant AVENATTI, EAGAN AVENATTI, and DOES 11-25)

100.    JOHNSON incorporates by reference paragraphs 1-99 above as though they are fully set forth herein.

101.    JOHNSON had the right to possess settlement money of $4,000,000 that was paid by Los Angeles County for his benefit, which check was paid to and cashed by EAGAN AVENATTI's client trust account in approximately 2015.

102.    AVENATTI engaged in wrongful acts that converted and dispossessed JOHNSON of the settlement funds from the firm's client trust account, when he improperly diverted to himself and others the foregoing settlement funds to which JOHNSON was entitled.  EAGAN AVENATTI is liable for AVENATTI's acts of conversion, because AVENATTI was a managing agent of EAGAN AVENATTI, and/or EAGAN AVENATTI ratified such conduct by him with knowledge.

103.    AVENATTI and EAGAN AVENATTI's conversion actually and proximately caused damage to JOHNSON, in an amount to be determined at trial but no less than $9,000,000.

104.    AVENATTI and EAGAN AVENATTI engaged in the above acts conversion with malice, oppression, or fraud, in that he intended to defraud and harm JOHNSON.  Accordingly, pursuant to Civil Code § 3294, JOHNSON is entitled to recover punitive and exemplary damages against AVENATTI and EAGAN AVENATTI in an amount to be proven at trial consistent with Constitutional requirements.

**SIXTH CAUSE OF ACTION**

**AIDING AND ABETTING**

(Against Defendants FRANK, EAGAN, SIMS, and REGNIER and DOES 11-25)

105.    JOHNSON incorporates by reference paragraphs 1-104 above as though they are fully set forth herein.

106.    FRANK, EAGAN, SIMS, and REGNIER knew that certain tortious, wrongful acts were being committed or would be committed by AVENATTI against JOHNSON; namely,

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

1  intentional fraud and conversion with respect to the settlement funds to which JOHNSON was

2  entitled.

3     107.   FRANK, EAGAN, SIMS, and REGNIER gave substantial assistance or

4  encouragement to AVENATTI in engaging in such tortious, wrongful acts against JOHNSON.

5     108.   The aiding and abetting of FRANK, EAGAN, SIMS, and REGNIER actually and

6  proximately caused damage to JOHNSON, in an amount to be determined at trial but no less than

7  $9,500,000.

8     109.   FRANK, EAGAN, SIMS, and REGNIER engaged in the above fraudulent acts

9  with malice, oppression, or fraud, in that REGNIER intended to defraud and harm JOHNSON,

10  and FRANK, EAGAN, SIMS acted with gross negligence and in reckless disregard of

11  JOHNSON's rights.  Accordingly, pursuant to Civil Code § 3294, JOHNSON is entitled to

12  recover punitive and exemplary damages against FRANK, EAGAN, SIMS, and REGNIER in an

13  amount to be proven at trial consistent with Constitutional requirements.

## PRAYER FOR RELIEF

15  Whereas, based on the foregoing factual allegations and causes of action asserted here,

16  Plaintiff GEOFFREY JOHNSON prays for the following relief against all Defendants, jointly and

17  severally.

18  (a)  Compensatory damages in an amount to be proven at trial, but no less than

19  $9,500,000;

20  (b)  Punitive damages in an amount to be proven at trial up to Constitutional limits;

21  (c)  An award of litigation costs:

22  (d)  An award of attorneys' fees to the extent allowable by law;

23  (e)  Any and all other relief that the Court may deem appropriate.

- 23 -
COMPLAINT FOR PROFESSIONAL NEGLIGENCE

Dated:  June 11, 2019                          **CALLAHAN & BLAINE, APLC**

                                               By: _____
                                                   Daniel J. Callahan
                                                   Edward Susolik
                                                   Raphael Cung
                                                   Attorneys for Plaintiff GEOFFREY E.
                                                   JOHNSON


## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to the Seventh Amendment of the United States Constitution, the Constitution of California, and any and all other applicable law, Plaintiff GEOFFREY JOHNSON hereby requests a jury trial in this action for all claims so triable.


Dated:  June 11, 2019                          **CALLAHAN & BLAINE, APLC**

                                               By: _____
                                                   Daniel J. Callahan
                                                   Edward Susolik
                                                   Raphael Cung
                                                   Attorneys for Plaintiff GEOFFREY E.
                                                   JOHNSON

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 24 -

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Settlement Agreement And Release of All Claims ("Agreement") is entered into between the following parties ("the Parties"): Plaintiff Geoffrey Ernest Johnson ("Plaintiff"), and Defendants County of Los Angeles, Los Angeles Sheriff's Department (also known as the Los Angeles County Sheriff's Department), and Leroy Baca (collectively hereafter, "Defendants").

### RECITALS

Plaintiff filed a civil action against Defendants, entitled *Geoffrey Ernest Johnson v. Leroy Baca, et al.,* Los Angeles County Superior Court Case No. BC493409 ("State Action").

On or about June 21, 2013, Defendants removed the State Action to the United States District Court for the Central District of California with a Case Number of CV-13-4496 MMM (AJWx) (the "Lawsuit").

To avoid the time and expense of further litigation, the Parties desire to resolve their differences and reach an end, compromise, and settlement for all disputes existing and potentially existing between them from the incident giving rise to the Lawsuit.

### AGREEMENT

In consideration of the execution of this Agreement and the releases and promises made in the Agreement by the Parties, the Parties agree as follows:

In exchange for a complete resolution of the Lawsuit, Defendants, by and through the County of Los Angeles, shall pay to Plaintiff **Four Million Dollars ($4,000,000.00)** (the "Settlement Funds"), subject to approval by the Los Angeles County Board of Supervisors. The parties acknowledge that the Court in this matter has issued an order outlining a time table to present this settlement for approval by the Los Angeles County Board of Supervisors, and thereafter issuance of a settlement draft. It is understood by the parties that if the time table is not complied with, this settlement agreement may be revoked by either party.

The Parties expressly agree that the Lawsuit shall not be dismissed until five (5) business days following receipt by Eagan Avenatti of the Settlement Funds as provided above.

The Plaintiff, being of lawful age, does hereby, and for his heirs, executors, administrators, successors and assigns, release, acquit and forever discharge Defendants, as well as their respective agents, servants, successors, heirs, attorney, executors, administrators and all other persons, firms, corporations, associations or partnerships, or any other entity connected therewith, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expense and/or compensation, of any nature whatsoever which the undersigned Plaintiff now has or which may hereafter accrue to the undersigned Plaintiff on account of, or in any way growing out of, any and all known or unknown, foreseen and unforeseen, injuries and/or damages and the consequences thereof resulting from, or to result from, the incidents, casualties or events which occurred or arose while in custody of the Los Angeles County Sheriff's Department from April 2011 through February 2012 in Los Angeles,

1 of 3

California, and which has resulted in a claim and/or lawsuit being brought by the Plaintiff and against Defendants as described in Case No. CV-13-4496 MMM (AJWx), entitled *Geoffrey Ernest Johnson v. Leroy Baca, et al.,* venued in the United States District Court for the Central District of California.

The Plaintiff agrees that this Agreement extends to any claims which the Plaintiff does not know or suspect to exist in his favor at the time of executing the document, which if known by him may materially affect this settlement. In that regard, the Plaintiff agrees to waive any rights he may have under California *Civil Code* § 1542, which provides as follows: "General release; extent - A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which is known by him must have materially affected his settlement with the debtor." The Plaintiff fully understands that he cannot hereafter make any further claim or seek any further recovery from the parties being released herein by reason of the aforesaid matters, and expressly waives all unknown claims caused by, or alleged to be caused by, the aforesaid Lawsuit.

Plaintiff acknowledges that all liens or other claims of third-parties have been disclosed and agrees to hold harmless and indemnify Defendants, Hurrell Cantrall LLP, and their attorneys and agents, of any and all liens or other claims of third-parties which have been or may be asserted for services which have been or may be rendered on behalf of the Plaintiff.

The Parties agree that they have received no inducement, promise or offer of any kind whatsoever for the consideration delineated hereinabove other than what is stated herein, and that this Agreement is executed without reliance on any statement or representation by those released or their representatives, or anyone, other than the sole consideration described herein.

The Parties agree that no party will be deemed the "prevailing party" for any purpose.

It is understood and agreed that this settlement is the compromise of a disputed claim and that the consideration furnished is not to be construed as an admission of liability on the part of Defendants, and that Defendants have denied liability on the claim herein and intend merely to avoid further litigation by this compromise.

The compromise and settlement which forms the basis of this Agreement have been arrived at after thorough bargaining and negotiation and represents a final, mutually agreeable compromise.

The Parties agree that this Agreement contains the entire agreement between the Parties and that the terms of this Agreement are contractual and not a mere recital.

/ / /

/ / /

/ / /

The Parties further agree that they have read and fully understand this Agreement, that the opportunity has been afforded to discuss the terms and contents of this Agreement with legal counsel and/or that such a discussion with legal counsel has occurred.  This release may be executed in multiple counterparts, each of which shall be deemed an original, and all of that shall constitute one agreement to be effective on the date of the final signature hereto.

### CAUTION: READ BEFORE SIGNING

DATED: 1/2/15

By: _____
Geoffrey Ernest Johnson, Plaintiff

DATED: 1/21/15

_____
Authorized Representative of the Defendants

This Settlement Agreement and Release of All Claims has been read and approved as to form and content.

DATED: 1-21-15

By: _____
Michael Avenatti, Esq.
Scott Sims, Esq.
Carlos Colorado, Esq.
Eagan Avenatti, LLP
Attorneys for Plaintiff

DATED: 1/21/15

By: _____
Thomas C. Hurrell, Esq.
Charles Phan, Esq.
Rebecca H. Snader, Esq.
Hurrell Cantrall LLP
Attorneys for Defendants

# EXHIBIT B



THIS IS WATERMARKED PAPER • DO NOT ACCEPT WITHOUT NOTING WATERMARK • HOLD TO LIGHT TO VERIFY WATERMARK

**COUNTY OF LOS ANGELES**
AUDITOR CONTROLLER'S GENERAL WARRANT
WARRANT CLEARANCE FUND LOS ANGELES, CALIFORNIA

TS 0021400949

THE TREASURER OF THE COUNTY OF LOS ANGELES
500 W TEMPLE ST ROOM 502, LOS ANGELES, CA 90012

January 26, 2015

NOT PAYABLE AFTER TWO YEARS FROM DATE ISSUED

CONTROLLED DISBURSEMENT
PAYABLE THROUGH BANK OF AMERICA, N.A.
NORTH BROOK, ILLINOIS

70-2328
0719

PAY TO THE ORDER OF:

EAGAN AVENATTI, LLP ATTORNEY CLIENT TRUST ACCOUNT
C/O COUNTY COUNSEL
LOS ANGELES, CA 90012

Amount
$***4,000,000.00

MISC-BD CLAIMS

191

PAY: Four Million And 00/100 Dollars

APPROVED
JOHN NAIMO AUDITOR-CONTROLLER BY

[redacted]

3808631

PAY TO THE ORDER OF
CALIFORNIA BANK AND TRUST
TORRANCE, CA 90503-6500 [redacted]
FOR DEPOSIT ONLY
EAGAN AVENATTI, LLP [redacted]

Date:01 29 15 Seq #:53040022 Account:[redacted]848 Serial #:21400949 Amount:$4,000,000.00 Dep Seq #:53040021

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

Electronically Filed by Superior Court of California, County of Orange, 11/08/2019 01:00:00 PM.
DAVID H. YAMASAKI, Clerk of the Court By Brenda Sanchez, Deputy Clerk. 30-2019-01110659-CU-BT-CJC ROA # 2

Stephen G. Larson (SBN 145225)
Steven E. Bledsoe (SBN 157811)
R.C. Harlan (SBN 234279)
LARSON O'BRIEN LLP
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Tel: (213) 436-4888
Fax: (213) 623-2000
Email: slarson@larsonobrienlaw.com
        sbledsoe@larsonobrienlaw.com
        rcharlan@larsonobrienlaw.com

Attorneys for Plaintiffs GREGORY BARELA
and TALITHA BARELA

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| GREGORY BARELA, an individual, and TALITHA BARELA, an individual; | CASE NO. |
| Plaintiffs, | **COMPLAINT FOR:** |
| v. | **(1) Breach of Fiduciary Duty;** |
| MICHAEL J. AVENATTI, an individual, AHMED IBRAHIM, an individual, JOHN ARDEN, an individual, JUDY K. REGNIER, an individual, and DOES 1-100, inclusive, | **(2) Intentional Misrepresentation;** |
| | **(3) Negligent Misrepresentation;** |
| | **(4) Concealment;** |
| | **(5) False Promise;** |
| | **(6) Conversion;** |
| | **(7) Unfair Business Practices;** |
| | **(8) Professional Negligence;** |
| Defendants. | **(9) Aiding and Abetting; and** |
| | **(10) Accounting.** |
| | **DEMAND FOR JURY TRIAL** |

1    Plaintiffs, Gregory Barela and Talitha Barela (hereinafter "Plaintiffs"), by and through

2    their attorneys, on personal information and acting on information and belief, allege the following

3    against Defendants Michael J. Avenatti, an individual,  Ahmed Ibrahim, an individual, John

4    Arden, an individual, Judy K. Regnier, an individual, and DOES 1 -100 (collectively,

5    "Defendants"):

6                                    **INTRODUCTION**

7        1.       Beginning in 2014, Plaintiff Gregory Barela sought legal advice from Michael

8    Avenatti and his firm regarding Mr. Barela's intellectual property dispute with an out-of-state

9    corporation[1] (hereafter "Settling Party").  With Avenatti and his firm as his counsel of record, Mr.

10   Barela filed suit against the Settling Party alleging multiple causes of action.  The case was later

11   compelled to arbitration.

12       2.       Ultimately, a settlement was reached, wherein the Settling Party agreed to pay Mr.

13   Barela $1.9 million in four separate annual payments—an initial payment of $1.6 million, with

14   additional $100,000 payments due each year for the next three years.  The settlement agreement

15   provided payment dates of January 10 each year, with the first payment of $1.6 million due on

16   January 10, 2018, and three additional payments of $100,000 due on January 10, 2019, January

17   10, 2020, and January 10, 2021, respectively.

18       3.       Unbeknownst to Plaintiffs, however, Defendant Avenatti was operating his law

19   firm in a Ponzi scheme-like manner, taking settlement proceeds received for clients to pay off his

20   own debts, pay the other individual Defendants' salaries and bonuses, and fund his lavish

21   lifestyle, all while telling clients that the settlement proceeds had not been received or would be

22   received at a later date.  As part of this scheme, Defendants falsified the payment dates in the

23   copy of the settlement agreement they provided to Mr. Barela to falsely state that the settlement

24   payment dates were March 10 of each year, two months later than the dates specified in the actual

25   settlement agreement.  They did this in order to hide when they actually received the settlement

26   funds from the Settling Party and so they could use Mr. Barela's funds for their own purposes.

27

28   [1] The corporation is not identified by name in this Complaint due to the confidentiality of the
     settlement agreement.

4.     Pursuant to the terms of the actual settlement agreement, and at the express direction of Avenatti, the Settling Party made the first settlement payment of $1.6 million by wire transfer on January 5, 2018 to a client trust account specified by Avenatti. This $1.6 million payment was not reported—and still has never been reported—to Mr. Barela despite Defendants' receipt of the settlement payment on January 5, 2018.

5.     Beginning on March 10, 2018, the date Mr. Barela had been falsely informed by Defendants that the $1.6 million settlement payment was due, and for the next eight months, Mr. Barela made numerous inquiries of Defendants asking for a status update on the Settling Party's initial $1.6 million settlement payment. Yet despite having received the first settlement payment of $1.6 million on January 5, 2018, Defendants told Mr. Barela that the Settling Party had not made the $1.6 million settlement payment and that they were working to obtain it. To date, Defendants have refused to admit that on January 5, 2018, the Settling Party made the initial $1.6 million settlement payment into the client trust account specified by Avenatti.

6.     Defendants kept Mr. Barela's settlement funds despite knowing that Plaintiffs were counting on those funds to pay their expenses and that the failure to disburse the settlement proceeds to Mr. Barela was causing Plaintiffs great financial and personal hardship. Rather than paying Mr. Barela the amounts he was owed, Avenatti made Mr. Barela plead with him for advances against the initial $1.6 million settlement payment that Avenatti repeatedly and falsely represented to Mr. Barela had not been made by Settling Party. Thus, between April and November 2018, Avenatti acted like he was doing Plaintiffs a huge favor by "advancing" $130,000 to Plaintiffs to pay their expenses despite the fact that Defendants had received the $1.6 million payment from the Settling Party and the money Avenatti was advancing to Plaintiffs was only a fraction of the amount Defendants had received and owed to Mr. Barela in the first place.

7.     Even worse, in October 2018, Avenatti informed Mr. Barela that he would no longer advance Plaintiffs any funds, but that he could arrange for Mr. Barela to get a $100,000 loan in January 2019, but that the loan would have to be with interest. On information and belief, the $100,000 "loan" that Avenatti offered to procure for Mr. Barela was actually going to be made by Avenatti with the proceeds of the $100,000 settlement payment that was due from the

3

Settling Party on January 10, 2019, but that Plaintiffs had been falsely informed by Defendants was not due until March 10, 2019.

8.      After having been deceived by Avenatti and Defendants for eleven months, Mr. Barela retained new counsel and by letter dated November 17, 2018, requested an accounting from Avenatti regarding any payment made by the Settling Party and a written copy of his fee agreement.  Specifically, the letter from Mr. Barela's new counsel stated:

> We understand that Mr. Barela has been advised by you that [Settling Party] did
> not make the initial $1.6 million payment due under the terms of the Settlement
> Agreement. We request that [sic] you provide written confirmation of [Settling
> Party's] failure to make such payment. We further ask that you promptly provide
> us with a true and correct copy of the Settlement Agreement and any fee
> agreement that you have with Mr. Barela.
> Finally, in the event [Settling Party] made the initial $1.6 million payment
> provided for by the Settlement Agreement, we ask that you provide an immediate
> accounting concerning such funds.

9.      By separate letter dated November 19, 2018, Mr. Barela directed Avenatti to transfer his client files and the balance of any funds paid by Settling Party pursuant to the settlement agreement to the client trust account of his new attorneys.

10.     Mr. Barela reiterated these requests in a letter dated December 3, 2018.  To date, Defendants have not responded to Mr. Barela's request for an accounting, and have refused to provide a copy of his fee agreement, transfer his files to his new counsel or to transfer the balance of any funds paid by Settling Party pursuant to the settlement agreement to the client trust account of his new attorneys.

11.     Defendants' conduct has caused serious financial injury to Plaintiffs, as well as extensive emotional and mental distress.  Defendants acted with malice, oppression and fraud, purposely taking advantage of and intentionally damaging Plaintiffs.

///

///

4

1

**<u>PARTIES</u>**

2     12.     Plaintiff Gregory Barela is an individual and is currently, as well as at all times

3 relevant to this Complaint, a resident of the State of California.  He resides in the city of Irvine,

4 California, County of Orange.  Mr. Barela is married to Plaintiff Talitha Barela, and has been

5 during all times relevant to this Complaint.

6     13.     Plaintiff Talitha Barela is an individual and is currently, as well as at all times

7 relevant to this Complaint, a resident of the State of California.  She also resides in the city of

8 Irvine, California, County of Orange.  Mrs. Barela is married to Plaintiff Gregory Barela, and has

9 been during all times relevant to this Complaint.

10    14.     Defendant Michael J. Avenatti is a resident of the State of California.  On

11 information and belief, Avenatti now resides in the city of Los Angeles, California, County of

12 Los Angeles.  Avenatti is an attorney who is currently admitted and licensed by the State Bar of

13 California.

14    15.     Defendant Ahmed Ibrahim is an individual, and currently, as well as at all times

15 relevant to this Complaint, a resident of the State of California.  Defendant Ibrahim is an attorney

16 admitted and licensed by the State Bar of California.

17    16.     Defendant John Arden is an individual, and currently, as well as at all times

18 relevant to this Complaint, a resident of the State of California. Defendant Arden is an attorney

19 admitted and licensed by the State Bar of New York.

20    17.     Defendant Judy Regnier is an individual, and currently, as well as at all times

21 relevant to this Complaint, a resident of the State of California.  Defendant Regnier acted as

22 office manager, paralegal, and administrator for Avenatti, Ibrahim, and Arden.

23

**<u>JURISDICTION AND VENUE</u>**

24    18.     This Court has both subject matter and personal jurisdiction in this case pursuant

25 to California Code of Civil Procedure ("C.C.P.") section 410.10.

26    19.     Venue is proper in this Court pursuant to C.C.P. section 395.

27 ///

28 ///

5

**GENERAL ALLEGATIONS**

20.     In early 2014, Mr. Barela was referred to Avenatti and his firm Eagan Avenatti in order to pursue legal action against the Settling Party.  Mr. Barela entered into an engagement agreement with Defendants in 2014 in Orange County, California for purposes of the legal action against the Settling Party.  After initially filing a lawsuit, Mr. Barela and the Settling Party subsequently entered into arbitration (the "Arbitration").

21.     Throughout the course of the proceedings, Mr. Barela met with Avenatti, Mr. Ibrahim, and Mr. Arden numerous times.  Avenatti and Mr. Ibrahim appeared in court and at the Arbitration on behalf of Mr. Barela, and Mr. Ibrahim appeared and took the deposition of at least one witness in the Arbitration on behalf of Mr. Barela.  Additionally, Mr. Arden attended almost every deposition in the matter.  Avenatti, Mr. Ibrahim, and Mr. Arden were very friendly with Mr. Barela, meeting together often with him to discuss case-related matters.  Mr. Barela considered Avenatti, Mr. Ibrahim, and Mr. Arden friends during the course of the Arbitration.

22.     On December 20, 2017, Mr. Barela and the Settling Party agreed to a final compromise and settlement of the Arbitration, with the Settling Party agreeing to pay a total of $1.9 million to Mr. Barela, over four yearly installments.  The first payment was in the amount of $1.6 million, with three subsequent annual payments of $100,000 each.

23.     The terms of the settlement were negotiated by the parties' attorneys.  On December 28, 2017, a week after agreeing to the $1.9 million settlement at Avenatti's request, Mr. Barela met with Avenatti at the Eagan Avenatti law offices to sign the settlement agreement. The settlement agreement Avenatti presented to Mr. Barela on December 28, 2017 to sign contained payment dates of March 10, 2018, March 10, 2019, March 10, 2020, March 10, 2021, respectively, for the Settling Party's settlement payments to Mr. Barela.

24.     After signing the settlement agreement, Mr. Barela asked how much money he would receive in total after paying Defendants' contingency fee and costs.  Avenatti represented that he believed that the costs were between $100,000 and $125,000, but that his office manager and paralegal, Judy Regnier, was conducting a final accounting of costs.  Based on those representations, Avenatti told Mr. Barela that he would receive over $1 million of the settlement

6

1  proceeds.  On January 3, 2018, Mr. Barela requested an accounting of costs.  Neither Avenatti,

2  Ms. Regnier, nor any other Defendant ever provided the requested accounting.

3      25.     On information belief, on December 28, 2017, a signed confidential settlement

4  agreement was executed by both Mr. Barela and the Settling Party.  On information and belief,

5  Defendants provided Barela's signature page to the Settling Party.

6      26.     Pursuant to Paragraph 12 of the actual settlement agreement, the Settling Party was

7  required to make the following four settlement payments to Mr. Barela: (1) $1.6 million by

8  January 10, 2018; (2) $100,000 by January 10, 2019; (3) $100,000 by January 10, 2020; and (4)

9  $100,000 by January 10, 2021.  Moreover, paragraph 14 of the settlement agreement provided

10  that "the payments specified in paragraph 12 shall be made by wire-transfer to a trust account

11  specified in an email from Barela's counsel (Michael Avenatti) to [the Settling Party's counsel]

12  on or before January 3, 2018."

13      27.     Mr. Barela was unaware of the January payment dates since the version of the

14  settlement agreement he was provided by Defendants included falsified payment dates of March

15  10, 2018, March 10, 2019, March 10, 2020, and March 10, 2021.  On information and belief, the

16  draft settlement agreements exchanged between the parties contained January rather than March

17  payment dates and the copy of the settlement agreement provided to Mr. Barela was deliberately

18  falsified by one or more of Defendants so that they could get and use the proceeds of the

19  settlement for a period of time before Mr. Barela believed that they were even due.

20      28.     On January 2, 2018, Avenatti sent an email to the Settling Party's counsel

21  specifying the client trust account and providing wire instructions for the Settling Party to make

22  the settlement payments according to the terms of the settlement agreement.  The January 2, 2018

23  email instruction from Avenatti provided:

24      Below please find the wire instructions.  Please conform receipt and that we are on
        track.  Thanks, Michael

25

26      City National Bank
        500 Newport Center Drive Ste. #150
27      Newport Beach, Ca 92660

28      ABA/Routing # ███████████

COMPLAINT; DEMAND FOR JURY TRIAL

1

Account number # ███████

2

3

Account title: ████ Settlement
520 Newport Center Dr. Ste. 1400
Newport Beach, Ca. 92660

4

5

29.     On January 5, 2018, Settling Party made the initial $1.6 million settlement

6

payment by wire transfer to the client trust account specified by Avenatti on January 2, 2018.

7

Defendants have never informed Plaintiffs of the Settling Party's January 5, 2018 payment.

8

Plaintiffs were unaware of the January 10, 2018 initial payment date provided for in the final

9

settlement agreement and were also unaware that the Settling Party had made the initial $1.6

10

million settlement payment by wire transfer to the client trust account specified by Avenatti on

January 5, 2018.

11

30.     Mr. Barela relied upon Avenatti's representations regarding the Settling Party's

12

March 10, 2018 initial payment date and made plans to receive the money.  Mr. Barela had

13

planned to use the settlement proceeds to help fund his business ventures, as well as provide

14

sufficient monies to pay for Plaintiffs' living expenses.

15

31.     On the morning of March 10, 2018, Mr. Barela sent a text message to Avenatti

16

stating that he "was just thinking is this a big day from our friends at [Settling Party]?"  On

17

information and belief, given that he was knowingly engaged in fraudulent conduct, Avenatti was

18

careful not to respond in writing to Mr. Barela's text message, but orally assured Mr. Barela that

19

he would follow up with counsel for the Settling Party and work to obtain the proceeds of the

20

settlement agreement.

21

32.      On March 12, 2018, Mr. Barela sent Avenatti a text message with his account

22

information for a wire transfer.  On information and belief, given that he was knowingly engaged

23

in fraudulent conduct, Avenatti was careful not to respond in writing to the text message, but

24

orally assured Mr. Barela that he would follow up with counsel for the Settling Party and work to

25

obtain the proceeds of the settlement agreement.

26

33.     On March 13, 2018, Mr. Barela sent another text message to Avenatti asking if

27

there was "any word on that wire from [the Settling Party]?"  Mr. Barela asked Avenatti to let

28

him know and sought an update regarding his settlement payment.  On information and belief,

8

given that he was knowingly engaged in fraudulent conduct, Avenatti was careful not to respond in writing to the text message, but orally assured Mr. Barela that he had discussed the matter with counsel for Settling Party and that he was working to obtain the settlement payment.

34.     Mr. Barela had anticipated the settlement payment to occur on March 10, 2018, and planned to use part of his portion of the $1.6 million for other business ventures he had started.  On March 14, 2018, he sent a text message to Avenatti stating: "Hi Michael[,] just checking in on the [Settling Party] issue.  I've been going pretty deep and credit cards and a little loan to keep both businesses going. Any updates?"  Again, Avenatti did not respond in writing to Mr. Barela's text message.

35.     During this same time in March 2018, during an in-person conversation with Mr. Barela, Avenatti stated that he had no idea what was going on with the settlement payment. Avenatti said that he had spoken with counsel for the Settling Party, and that counsel for the Settling Party was in disbelief that the Settling Party had not made the initial $1.6 million settlement payment.  Avenatti informed Mr. Barela that he genuinely believed that counsel for the Settling Party did not know or understand why Settling Party had not made the payment.

36.     Again in March 2018, Mr. Barela went to the Eagan Avenatti law office.  Mr. Ibrahim congratulated Mr. Barela on the settlement, and led him to believe that the initial settlement payment had been made.  During the course of that conversation, Mr. Barela saw Mr. Arden's reflection in the glass wall of the conference room and observed Mr. Arden gesturing towards Mr. Ibrahim by waiving his hand across his throat to signal to him to stop discussing Mr. Barela's settlement payment.  After seeing Mr. Arden's gesture, Mr. Ibrahim immediately became quiet and stopped discussing Mr. Barela's settlement.

37.     Thereafter, between March 2018 and October 2018, during Mr. Barela's visits to the Eagan Avenatti law offices, Mr. Barela would often attempt to discuss the Settling Party's failure to make the settlement payment with Mr. Ibrahim and Mr. Arden.  In response to Mr. Barela's attempts to discuss the failure of Settling Party to make the initial $1.6 million settlement payment, Mr. Ibrahim and Mr. Arden would avoid discussing the topic with Mr. Barela.  For example, at one point Mr. Barela asked Mr. Arden whether he had heard from Settling Party, and

9

Mr. Arden responded that Defendants had heard nothing.  Moreover, in direct contrast to their friendly relationship with Mr. Barela during the Arbitration, after March 2018, Mr. Ibrahim and Mr. Arden did everything they could to avoid Mr. Barela, going so far as to avoid eye contact with Mr. Barela during his visits to the Eagan Avenatti offices.  On information and belief, Mr. Ibrahim and Mr. Arden were aware that the Settling Party had made the initial $1.6 million payment into the firm's client trust account on January 5, 2018, yet never told Mr. Barela in their numerous communications with him.

38.     On March 19, 2018, Mr. Barela sent a text message to Avenatti telling him he wanted to be "aggressive with [the Settling Party] this week" and asked Avenatti to let him know if he heard anything from [the Settling Party].  Once again, Avenatti did not respond in writing to the text message, but orally assured him that things would be resolved soon.

39.     On March 21, 2018, Mr. Barela wrote to Avenatti, "Any word from [the Settling Party]?"  Again, Avenatti failed to respond in writing.

40.     On March 22, 2018, Mr. Barela again checked in regarding the settlement payment from the Settling Party.  He sent a text to Avenatti asking "Did they step up with the transfer? If not what are we doing next?"  Avenatti again avoided responding in writing.

41.     On March 23, 2018, facing financial burdens, Mr. Barela told Avenatti he needed help and was worried.  Avenatti responded: "Greg – don't worry.  Let's chat tmrw. We will figure this out. Michael".  When Mr. Barela eventually spoke with Avenatti, Avenatti told him that another lawsuit would need to be filed in order to force Settling Party to make the settlement payments.

42.     Given that Mr. Barela had relied on receiving his portion of the initial $1.6 million payment by March 2018, he was facing a dire financial situation.  On April 2, 2018, Mr. Barela emailed Avenatti asking for a loan.  Mr. Barela was in the early stages of setting up two businesses and Mr. Barela told Avenatti that he was "out of pocket about 250k right now for both businesses."  Later that day Mr. Barela asked Avenatti via text message asking whether there was any word from the Settling Party regarding the settlement payment.  In a phone call, Avenatti reiterated that he had spoken with counsel for Settling Party and that counsel for Settling Party

10

1    did not understand why the Settling Party had not responded to his requests for payment.

2    Avenatti assured Mr. Barela on the call that he and the other Defendants were working to make

3    sure Settling Party would make the settlement payment as soon as possible.  Avenatti also agreed

4    to provide an advance of money to Mr. Barela while Defendants were purportedly seeking

5    payment from the Settling Party.  After the call, Mr. Barela texted Avenatti, "Thanks again for the

6    call.  Whatever you can do is so appreciated."  Avenatti responded: "All good. No worries."

7        43.    On April 3, 2018, Mr. Barela asked Avenatti whether he was able to advance him

8    "any amount if at all?"  Avenatti responded that he could "probably send a wire tmrw."

9        44.    On April 5, 2018, Mr. Barela emailed Avenatti his Bank information to make a

10   wire transfer of $60,000, the money Avenatti had agreed to advance Mr. Barela.  Mr. Barela also

11   stated that he would like to discuss his options for collections on the Settling Party.  Shortly

12   thereafter, Mr. Barela received a wire transfer of $60,000.

13       45.    On April 15, 2018, Mr. Barela again inquired via email to Avenatti about the status

14   of the settlement money from the Settling Party. He also inquired about steps to take against the

15   Settling Party if the money is not collected.  He told Avenatti he needed a plan as soon as possible

16   as he was facing financial difficulties.  Once again, Avenatti was careful to not respond in

17   writing.  Instead, during a telephone call, Avenatti assured Mr. Barela that Defendants were filing

18   another claim against Settling Party in federal court in Los Angeles, and they were waiting for a

19   response.

20       46.    On April 22, 2018, Mr. Barela emailed Avenatti asking if the Settling Party

21   responded.  Again, on April 25, 2018 and April 26, 2018, Mr. Barela texted Avenatti asking

22   whether there was any word from the Settling Party.  Avenatti again did not respond in writing.

23   Avenatti continued to assure Mr. Barela over the phone and in-person that Defendants were

24   working to force the Settling Party to make the settlement payment.

25       47.    On May 7, 2018, Mr. Barela again asked Avenatti what the next actions were

26   against the Settling Party.  Mr. Barela also told Avenatti, "If [the Settling Party] does not pay

27   soon I may need a little help in the next two weeks."

28   ///

48.     On May 15, 2018, Mr. Barela sent an email to Avenatti expressing that since he planned on collecting the settlement money in March and had not seen any of it, he was losing credibility with his other business ventures and his wife, and was now facing a difficult financial position.  Mr. Barela asked Avenatti, "Did [the Settling Party] respond or pay? If no what are we filing this week?"

49.     Rather than respond in writing, Avenatti and Mr. Barela had a telephone call wherein Avenatti agreed to provide another advance to Mr. Barela on the settlement payment— which, unbeknownst to Plaintiffs, Defendants had received five months earlier.  Avenatti also assured Mr. Barela that Defendants were working to force Settling Party to pay.

50.     On May 20, 2018, Mr. Barela sent wire instructions for an additional loan from Avenatti.  Avenatti responded, "Got it. Thanks."

51.     On May 25, 2018, Avenatti advanced Mr. Barela an additional $30,000.

52.     On June 25, 2018, Mr. Barela sent Avenatti a list of reminders for the week, including a reminder about filing a lawsuit against the Settling Party for failing to pay the $1.6 million due to Mr. Barela.

53.     During this time frame, Avenatti assured Mr. Barela that whenever he needed an advance of money, to let him know, and he would wire him money.

54.     On June 27, 2018, Avenatti advanced Mr. Barela an additional $30,000.

55.     On June 29, 2018, Mr. Barela reached out via email to Ms. Regnier, and asked for a copy of the signed settlement agreement which included the signatures from the Settling Party's representatives.  Ms. Regnier provided Mr. Barela with a copy of the fully executed settlement agreement which contained falsified payment dates of March 10, 2018, March 10, 2019, March 10, 2020 and March 10, 2021, respectively, for Settling Party's settlement payments to Mr. Barela, when in reality the settlement agreement called for the payments from the Settling Party to be made by January 10 of each year.  On information and belief, Ms. Regnier was aware that the Settling Party had made the initial $1.6 million payment into the firm's client trust account on January 5, 2018, yet never told Plaintiffs in her numerous communications to him.

///

12

56.     Still unaware that the initial $1.6 million payment had been made in January 2018, on August 15, 2018, Mr. Barela emailed Avenatti about initiating a lawsuit against the Settling Party for failing to abide by the terms of the settlement agreement and failing to make the $1.6 million payment.

57.     At a meeting shortly thereafter, Defendants represented to Mr. Barela that they were filing a motion to compel arbitration to enforce the settlement agreement, and that Settling Party would have 30 days to respond.

58.     On September 10, 2018, Mr. Barela emailed Avenatti and Ms. Regnier wire instructions for an additional advance.  The following day, Avenatti and Ms. Regnier advanced Mr. Barela via wire an additional $6,000.

59.     On September 11, 2018, after receiving the wire, during a phone call, Avenatti told Mr. Barela he had no additional updates regarding Defendants' efforts to obtain the settlement payment.

60.     On October 10, 2018, Mr. Barela again asked for an update on the status of collecting the settlement proceeds from the Settling Party.  Mr. Barela also asked for more financial help, requesting an additional advance to "keep moving".

61.     On October 14, 2018, Mr. Barela asked Avenatti in an email if the Settling Party had responded and what the next steps were being taken to ensure payment.  Mr. Barela stated, "It will be one year in December and they will owe the second payment in March…Can we discuss a go forward strategy till this is handled?"  Mr. Barela also asked Avenatti for "a copy of the last thing that we filed."  Avenatti never responded to the email.

62.     On October 17, 2018, Mr. Barela again reached out to Avenatti expressing to him that he was in a financial hardship and asked for another advance.  He again texted Avenatti on October 19, 2018, asking him if he could borrow money.  Avenatti again did not respond in writing.

63.     On October 22, 2018, Mr. Barela emailed Avenatti again stressing the financial troubles he was facing.  He told Avenatti that he was working on trying to get a loan from a third-party creditor and was trying to use the settlement agreement to secure it.  Mr. Barela again asked

13

for an update on the payment and what the next action steps would be.  He also asked for copies of all the paperwork related to the alleged filing against the Settling Party so that he could use it to secure a personal loan.  Avenatti never responded to the email.

64.    On October 28, 2018, Mr. Barela texted Avenatti again highlighting his dire financial situation.  Once again, he asked Avenatti to forward the documents that had been filed against the Settling Party so that he could use it to secure a personal loan.  Avenatti did not respond.

65.    On October 29, 2018, Mr. Barela again reached out to Avenatti.  Avenatti wrote back stating that he would call Mr. Barela shortly.  Later that same day, because Mr. Barela had not heard back from Avenatti, Mr. Barela sent him another message.  Avenatti wrote back in response: "Let's chat in the am. Working on a solution."  Mr. Barela responded by again stressing his financial difficulties.

66.    The following day, on October 30, 2018, Mr. Barela followed up with Avenatti to check in and asked if there was "any word."  Avenatti responded in writing, stating that he was "making progress."

67.    On October 31, 2018, Mr. Barela sent wire information for an additional advance from Defendants.  Defendants made an additional and final advance of $4,000 to Mr. Barela on November 5, 2018.

68.    In early November 2018, Mr. Barela began searching for a creditor to loan him approximately $100,000 in order to operate his business, using the settlement agreement and promise by the Settling Party to pay as collateral.  After Avenatti heard of Mr. Barela's search for a loan, Avenatti dissuaded Mr. Barela from seeking a loan from another third party, and instead promised Mr. Barela he would be able to provide a loan of $100,000 by January 15, 2019, at an interest rate between 8-10%.  Avenatti told Mr. Barela to "hang tight" until the 15th, and "don't ask again until then."

69.    At the time Avenatti told Mr. Barela to "hang tight" until January 15, Mr. Barela did not know that Avenatti was expecting another payment from the Settling Party of $100,000 by January 10, 2019.  On information and belief, Avenatti was planning to loan to Mr. Barela the

14

1    very settlement funds that were due to be paid to Mr. Barela by Settling Party on January 10,

2    2019, at an interest rate of between 8-10%.

3         70.    From April 5, 2018 until November 5, 2018, Avenatti advanced Mr. Barela a total

4    of $130,000.  During this same time period, Defendants had received $1.6 million from the

5    Settling Party and failed to inform Mr. Barela of the amount received or grant him access to the

6    proceeds of the settlement, despite knowing the serious financial difficulties facing Plaintiffs.

7         71.    Defendants' illegal conduct in taking the $1.6 million settlement funds was

8    happening at the same time Avenatti was leading a lavish lifestyle.  Avenatti was reportedly

9    renting a $14,000-a-month apartment at the Ten Thousand skyscraper in Los Angeles, California,

10   while also reportedly paying his ex-wife over $100,000 a month in child and spousal support

11   payments.  On information and belief, Avenatti was using Mr. Barela's settlement funds to fund

12   his lavish lifestyle, pay other financial obligations, and pay salaries and bonuses to Ms. Regnier,

13   Mr. Arden, and Mr. Ibrahim.

14        72.    On information and belief, Defendants were using their legal practice in a Ponzi-

15   like scheme to pay prior creditors and fund their lifestyles with the proceeds from new settlement

16   monies received on behalf of other clients, with the hope that additional monies would later be

17   received by the firm in order to pay the clients whose settlement proceeds had been wrongfully

18   used to pay prior obligations.  In this case, Mr. Barela's settlement funds were used by

19   Defendants to continue to fund their lifestyles and pay creditors, all while falsely promising Mr.

20   Barela that they were working to get the Settling Party to pay the settlement proceeds—proceeds

21   which they had already received.

22        73.    In November 2018, Mr. Barela hired Larson O'Brien, LLP to represent him in

23   connection with his efforts to collect the proceeds due to him pursuant to the terms of the

24   settlement agreement.  On November 17, 2018, Mr. Barela's new counsel sent a letter to Avenatti

25   asking him to (1) confirm any representations Avenatti made to Mr. Barela that the Settling Party

26   had failed to make the initial $1.6 million payment due under the settlement agreement; (2)

27   promptly provide a true and correct copy of the settlement agreement and any fee arrangement

28

between Avenatti and Mr. Barela; and (3) provide an immediate accounting in the event the Settling Party made the initial $1.6 million payment provided for in the settlement agreement.

74.     Later that same day, Avenatti made multiple calls to Mr. Barela.  Avenatti sent an email asking Mr. Barela to call Avenatti "ASAP."  Additionally, Avenatti sent a text message to Mr. Barela asking "What is this all about? Pls call me ASAP."  Avenatti never responded to new counsel's November 17, 2018 letter.

75.     On November 18, 2018, new counsel for Mr. Barela sent an email to Avenatti requesting that Avenatti stop attempting to communicate directly or indirectly with Mr. Barela and that all future communications be made through Mr. Barela's new counsel.  Counsel also requested that Avenatti and all of his current and prior firms preserve all documents and writings relating to this matter.  Avenatti did not respond to the email.

76.     On November 19, 2018, Mr. Barela sent an email to Avenatti requesting that he transfer all paper and electronic files to Larson O'Brien LLP.  Mr. Barela also requested that Avenatti transfer the balance of any funds paid by Settling Party to Larson O'Brien LLP.  New counsel provided Avenatti with the wire transfer information.  Avenatti did not respond to either communication.

77.     At the request of Mr. Barela, on November 21, 2018, the Settling Party provided Mr. Barela with a true and correct copy of the fully executed settlement agreement.  The true and correct copy of the fully executed settlement agreement states that the initial payment of $1.6 million was due by January 10, 2018, with the subsequent payments due by January 10 of the following three years.

78.     The Settling Party subsequently provided proof of the $1.6 million payment it made on January 5, 2018 to the client trust account specified by Avenatti and confirmed that there were no versions of the settlement agreement exchanged between Defendants and Settling Party that included settlement payment dates in March.

79.     On January 14, 2019, Plaintiffs filed a Demand for Arbitration (hereafter "Arbitration") with JAMS pursuant to their arbitration agreement with Eagan Avenatti LLP. Plaintiffs also deposited the $5,000 fee with JAMS in order to commence the arbitration.

16

80.     Eagan Avenatti, the party to the engagement agreement with Plaintiffs, refused to participate in the arbitration and never paid the necessary JAMS Arbitration fees.

81.     On August 30, 2019, nine months after the demand for arbitration was filed, JAMS placed the arbitration on an administrative stay until it received full payment from all necessary parties, effectively holding Plaintiffs' claims for relief hostage.

82.     Accordingly, Plaintiffs now bring this action in this Court.  None of the Defendants in this action are parties to the engagement agreement containing the arbitration provision, and furthermore, the arbitration provision has been waived by Eagan Avenatti's failure to engage in the arbitration filed in January 2019.

## **FIRST CAUSE OF ACTION**

**Breach of Fiduciary Duty**

**(On Behalf of Greg Barela Against Defendants Avenatti, Ibrahim, and Arden)**

83.     Plaintiffs re-allege and incorporate each allegation in Paragraphs 1 through 82 of this Complaint as through fully set forth herein.

84.     As attorneys and counselors, each of the attorney Defendants owe fiduciary duties of care, loyalty and faith to their clients, including Plaintiff Greg Barela.  Defendants' fiduciary duties include an obligation to act prudently in the representation of clients, to discharge their actions in good faith, to act in the best interests of the client, and to put the interests of the client before their own.

85.     Defendants Avenatti, Mr. Ibrahim, and Mr. Arden breached their fiduciary duties by, among other things, misappropriating Plaintiff's settlement funds, making untruthful representations to Plaintiff, misrepresenting documents to Plaintiff, and failing to inform and timely respond to Plaintiff's communications.

86.     Mr. Ibrahim and Mr. Arden knew of Avenatti's conduct and assisted him in the misappropriation of client funds, making untruthful representations, and misrepresenting documents.  In particular, Defendants Ibrahim and Arden knew about the Settling Party's payment of the $1.6 million for the benefit of Plaintiffs, but refused or otherwise failed to disclose those facts to Plaintiffs, thus allowing Avenatti to carry out his scheme.

17

87.     Plaintiffs have been damaged by the Defendants' intentional breach of their fiduciary duties.  Moreover, because Defendants acted maliciously, fraudulently and oppressively within the meaning of those terms as set forth in California Civil Code Section 3294, Plaintiff is entitled to recover punitive damages from Defendants.

**SECOND CAUSE OF ACTION**

**Fraud & Deceit – Intentional Misrepresentation**

**(On Behalf of Greg Barela Against All Defendants)**

88.     Plaintiffs re-allege and incorporate each allegation in Paragraphs 1 through 87 of this Complaint as though fully set forth herein.

89.     On or about December 28, 2017, Avenatti falsely and fraudulently, with the malicious intent to defraud and deceive Plaintiffs, made written and oral representations to Plaintiffs, including but not limited to, providing Mr. Barela on December 28, 2017 with a partial copy of the settlement agreement which contained falsified payment dates of March 10, 2018, March 10, 2019, March 20, 2020, March 10, 2021, respectively, for the Settling Party's settlement payments to Mr. Barela, and falsely representing to Mr. Barela that the settlement payments were payable in March of each year, not in January as set forth in the actual settlement agreement.

90.     As detailed in this Complaint, from December 28, 2017 onward, Defendants falsely and fraudulently, and with malicious intent to defraud and deceive Plaintiffs, made written and oral representations to Plaintiffs that the Settling Party's initial $1.6 million settlement payment was never made.  Avenatti also misrepresented to Plaintiffs that he was working on filing and pursuing claims against the Settling Party for the alleged nonpayment of the settlement.

91.     As a further example of Defendants' fraud, in March 2018, Mr. Ibrahim congratulated Mr. Barela on the settlement, and initially led him to believe that the payment had been made.  During the course of that conversation, Mr. Barela saw Mr. Arden's reflection in the glass wall of the conference room and observed Mr. Arden gesturing towards Mr. Ibrahim to stop discussing Mr. Barela's settlement payment.  Both Mr. Ibrahim and Mr. Arden thereafter actively deceived Mr. Barela by not disclosing that the settlement payment had been received.

18

92.     On June 29, 2018, Mr. Barela reached out via email to Judy Regnier, the office manager and paralegal at Eagan Avenatti, LLP, and asked for a copy of the signed settlement agreement which included the signatures from the Settling Party's representatives.  Ms. Regnier provided Mr. Barela with a falsified copy of the fully executed settlement agreement which contained March payment dates.  At no time did Ms. Regnier inform Mr. Barela that the Settling Party had paid the settlement money.  Moreover, Ms. Regnier assisted Avenatti in advancing funds to Mr. Barela by conducting the wire transfers to Mr. Barela, as directed by Avenatti, from March 2018 through November 2018.  She did this despite her knowledge that the settlement money had been paid.

93.     At all times herein mentioned, Defendants were aware that the above-reference misrepresentations were false and intended that Plaintiffs rely on the above-mentioned misrepresentations.  Plaintiffs reasonably relied on the Defendants' false and fraudulent misrepresentations.

94.     Defendants intentionally designed and implemented the above misrepresentations and fraudulent scheme maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiffs and benefitting Defendants' own personal and individual purposes.

95.     Accordingly, as a result of Defendants' intentional and fraudulent misrepresentation of material facts and misappropriation of funds, Plaintiffs have suffered harm.  Moreover, because Defendants acted maliciously, fraudulently and oppressively within the meaning of those terms as set forth in California Civil Code Section 3294, Plaintiffs are entitled to recover punitive damages from Defendants.

## THIRD CAUSE OF ACTION

### Fraud & Deceit – Negligent Misrepresentation

### (On Behalf of Greg Barela Against All Defendants)

96.     Plaintiffs re-allege and incorporate each allegation in Paragraphs 1 through 95 of this Complaint as though fully set forth herein.

97.     Beginning on or about December 28, 2017, and continuing to the present, Defendants falsely and fraudulently made written and oral representations to Plaintiffs regarding

19

1  the Settling Party's initial settlement payment, including but not limited to, the fact that

2  Defendants provided Mr. Barela a partial copy of the settlement agreement that contained false

3  payment dates of March 10, 2018, March 10, 2019, March 20, 2020, March 10, 2021,

4  respectively, for the Settling Party's settlement payments to Mr. Barela.  Defendants represented

5  to Mr. Barela that the settlement payments were payable in March of each year, not in January as

6  memorialized in the final agreement.

7      98.    As detailed in this Complaint, from December 28, 2017 onward, Defendants

8  falsely and fraudulently, and with malicious intent to defraud and deceive Plaintiffs, made written

9  and oral representations to Plaintiffs that the Settling Party's initial $1.6 million settlement

10  payment was never made.  Defendants also misrepresented to Plaintiffs that they were working on

11  filing and pursuing claims against the Settling Party for the alleged nonpayment of the settlement.

12      99.    As a further example of Defendants' fraud, in March 2018, Mr. Ibrahim

13  congratulated Mr. Barela on the settlement, and initially led him to believe that the payment had

14  been made.  During the course of that conversation, Mr. Barela saw Mr. Arden's reflection in the

15  glass wall of the conference room and observed Mr. Arden gesturing towards Mr. Ibrahim to stop

16  discussing Mr. Barela's settlement payment.  Both Mr. Ibrahim and Mr. Arden thereafter actively

17  deceived Mr. Barela by not disclosing that the settlement payment had been received.

18      100.    On June 29, 2018, Mr. Barela reached out via email to Judy Regnier, the office

19  manager and paralegal at Eagan Avenatti, LLP, and asked for a copy of the signed settlement

20  agreement which included the signatures from the Settling Party's representatives.  Ms. Regnier

21  provided Mr. Barela with a falsified copy of the fully executed settlement agreement which

22  contained March payment dates.  At no time did Ms. Regnier inform Mr. Barela that the Settling

23  Party had paid the settlement money.  Moreover, Ms. Regnier assisted Avenatti in advancing

24  funds to Mr. Barela by conducting the wire transfers to Mr. Barela, as directed by Avenatti, from

25  March 2018 through November 2018.  She did this despite her knowledge that the settlement

26  money had been paid.

27      101.    At all times herein mentioned, Defendants were aware that the above-reference

28  representations were false and intended that Plaintiffs rely on the above-mentioned

20

1  misrepresentations. As a result of the above-mentioned misrepresentations, Plaintiffs have

2  suffered harm.

3       102.    Plaintiffs reasonably relied on the Defendants' false and fraudulent

4  misrepresentations.  Plaintiffs' reliance on Defendants representations regarding the settlement

5  proceeds were substantial factors in causing their harm.

6       103.    Accordingly, as a result of Defendants' fraudulent misrepresentation of material

7  facts and misappropriation of funds, Plaintiffs have suffered harm.  Moreover, because

8  Defendants acted maliciously, fraudulently and oppressively within the meaning of those terms as

9  set forth in California Civil Code Section 3294, Plaintiffs are entitled to recover punitive damages

10  from Defendants.

11                        **FOURTH CAUSE OF ACTION**

12                         **Fraud & Deceit – Concealment**

13                  **(On Behalf of Plaintiffs Against All Defendants)**

14       104.    Plaintiffs re-allege and incorporate each allegation in Paragraphs 1 through 103 of

15  this Complaint as though fully set forth herein.

16       105.    At all times herein mention, Plaintiffs and Defendants were in a fiduciary

17  relationship and Defendants failed to disclose to Plaintiffs that on January 5, 2018, the Settling

18  Party made the initial payment of $1.6 million to the client trust account specified by Avenatti

19  despite their knowledge that the payment had been received.  Defendants concealed—and

20  continue to conceal—the fact that the payment was made and Plaintiffs were entitled to receive

21  their funds.  From the date the initial $1.6 million settlement payment was made on January 5,

22  2018, Defendants repeatedly concealed the fact that the payment was made despite Plaintiffs

23  repeated attempts and inquiries regarding the status of the payment.

24       106.    Plaintiffs did not know that the Settling Party ever made payment and Defendants

25  made numerous oral and written misrepresentations that the settlement agreement called for

26  payment on March 10, 2018.  Defendants continue to misrepresent that no payment was ever

27  made.

28  ///

21

COMPLAINT; DEMAND FOR JURY TRIAL

107.     Defendants' misrepresentations were knowingly false.  Defendants intended to deceive Plaintiffs by concealing the facts concerning the due date and fact of the settlement payment with malicious intent to defraud and deceive Plaintiffs.

108.     At all times herein mentioned, Plaintiffs were unaware that the above-mentioned misrepresentations were false.  Had the material information been disclosed and had Plaintiffs known that payment was made by the Settling Party, Plaintiffs would have reasonably behaved differently and would not have been forced to take advances from Defendants.  Plaintiffs reasonably relied on Defendants deception and misrepresentations to their detriment.

109.     Accordingly, as a result of Defendants' intentional and fraudulent misrepresentations of material facts, failure to disclose certain facts, and active concealment, Plaintiffs have been damaged and suffered injury.  Moreover, because Defendants acted maliciously, fraudulently and oppressively within the meaning of those terms as set forth in California Civil Code Section 3293, Plaintiffs are entitled to recover punitive damages from Defendants.

## **FIFTH CAUSE OF ACTION**

### **Fraud & Deceit – False Promise**

### **(On Behalf of Greg Barela Against Defendant Avenatti)**

110.     Plaintiffs re-allege and incorporate each allegation in Paragraphs 1 through 109 of this Complaint as though fully set forth therein.

111.     Defendant Avenatti induced Mr. Barela to enter into an engagement agreement wherein Mr. Barela agreed to Eagan Avenatti LLP's legal representation of Mr. Barela's interests. Avenatti was retained as counsel for Mr. Barela under the impression that the he would act with candor and honesty and immediately make available any funds to which Mr. Barela was entitled. Mr. Barela would not have entered into such agreement had he known that Avenatti did not intend to perform this promise when it was made.

112.     Defendant Avenatti made a promise that he would pay to Mr. Barela his portion of any funds received on his behalf in connection with his representation of Mr. Barela.   Defendant

22

Avenatti also promised that he would inform Mr. Barela of any funds received on his behalf from the Settling Party.

113.    However, on information and belief, Avenatti did not intend to perform this promise when it was made.  Instead, Avenatti intended to use any such money for his own personal use and gain.

114.    This false promise regarding payment to Mr. Barela for any favorable judgment was material to Mr. Barela.  Moreover, Mr. Barela relied on this promise in engaging Avenatti to represent him in the dispute with the Settling Party.

115.    Avenatti has failed to perform this promise and instead has continually concealed the $1.6 million payment from the Settling Party since it was received in January 2018.  Avenatti has failed to make Mr. Barela's portion of the settlement payment funds available to him.

116.    Accordingly, as a result of Avenatti's intentional and fraudulent misrepresentations and false promises, failure to disclose certain facts, and active concealment, Plaintiffs have been damaged and suffered injury.  Moreover, because Avenatti acted maliciously, fraudulently and oppressively within the meaning of those terms as set forth in California Civil Code Section 3293, Plaintiffs are entitled to recover punitive damages from Defendants.

## SIXTH CAUSE OF ACTION

### Conversion

### (On Behalf of Plaintiffs Against All Defendants)

117.    Plaintiffs re-allege and incorporate each allegation in Paragraphs 1 through 116 of this Complaint as though fully set forth herein.

118.     Pursuant to the terms of the settlement agreement, Plaintiffs were to be paid $1.6 million from the Settling Party by January 10, 2018.

119.    Defendants substantially interfered with Plaintiffs' property by knowingly or intentionally preventing Plaintiffs from having access to their portion of the $1.6 million that was transferred to Defendants' client trust account on January 5, 2018.  Defendants knowingly failed to inform Mr. Barela of his settlement payment and instead took steps to actively conceal that the money had been received.  Moreover, on numerous occasions, Defendants misrepresented that

23

1   settlement payment had not been received.  Plaintiffs have informed Defendants numerous times

2   of their need for their portion of the settlement proceeds, yet Defendants have continually refused

3   to inform Plaintiffs of their receipt of the money or make the settlement funds available.

4          120.    Defendants Ibrahim and Arden knew of Avenatti's conduct and assisted him in the

5   misappropriation of client funds.  Additionally, Ms. Regnier provided Mr. Barela the settlement

6   agreement with the March payment dates as part of Defendants' scheme to mislead Mr. Barela.

7   Their actions were made as a part of a scheme to defraud Plaintiffs.

8          121.    At all times herein mentioned, Plaintiffs were and still are entitled to the

9   possession of their portion of the $1.6 million that was transferred from the Settling Party to

10  Plaintiffs' client trust fund at the direction of Defendants on January 5, 2018.  Defendants

11  wrongfully and substantially interfered with Plaintiffs' right to their portion of the $1.6 million of

12  settlement money.  Defendants' wrongful actions proximately resulted in defendants converting

13  Plaintiffs' money for their own use.

14         122.    As a natural, reasonable, and proximate result of Defendants' wrongful conversion

15  of Plaintiffs' property, Plaintiffs have been damaged and suffered harm for which Defendants'

16  conduct was a substantial factor.

17         123.    Defendants, and each of their conduct described in this Complaint, intended to

18  cause injury to Plaintiffs with a willful and conscious disregard of Plaintiffs' rights.  Moreover,

19  because Defendants acted maliciously, fraudulently and oppressively within the meaning of those

20  terms as set forth in California Civil Code Section 3293, Plaintiffs are entitled to recover punitive

21  damages from Defendants.

22                              **SEVENTH CAUSE OF ACTION**

23  **Unfair Business Practices Under Business and Professions Code Section 17200, et seq.**

24              **(On Behalf of Plaintiffs Against All Defendants)**

25         124.    Plaintiffs re-allege and incorporate each allegation in Paragraphs 1 through 123 of

26  this Complaint as though fully set forth herein.

27         125.    Plaintiffs allege that Defendants in doing the acts alleged hereinabove have

28  engaged in unfair and or unlawful business practices—including but not limited to the fraudulent

1   conduct and conversion detailed in the above paragraphs of this Complaint—and have thereby

2   acquired money or property rightfully belonging to Plaintiffs by engaging in such unfair business

3   practices, thereby inducing and causing Plaintiffs to suffer "injury in fact" and to lose money or

4   property as a result of such unfair acts, in violation of the Act, including but not limited to,

5   Business & Professions Code section 17200.

6       126.    As a direct and proximate result of the above-referenced acts of Defendants,

7   Plaintiffs have sustained "injury in fact" and lost money or property as a result of such unfair acts

8   and are therefore entitled to restitution of money lost as well as equitable relief in the form of an

9   order requiring Defendants, to show cause, why they should not be enjoined from continuing their

10  unlawful business practices during the pendency of this action, and for a temporary restraining

11  order, a preliminary injunction, and a permanent injunction, all enjoining defendants from

12  engaging in the unlawful business practices described herein.

13                          **EIGHTH CAUSE OF ACTION**

14                          **Professional Negligence**

15      **(On Behalf of Greg Barela Against Defendants Avenatti, Ibrahim, and Arden)**

16      127.    Plaintiffs re-allege and incorporate each allegation in Paragraphs 1 through 126 of

17  this Complaint as though fully set forth herein.

18      128.    Defendants have failed to provide competent representation on behalf of Mr.

19  Barela.  As Mr. Barela's attorney representatives in his dispute with the Settling Party,

20  Defendants owed a duty to Mr. Barela to use such skill and prudence as members of the

21  profession commonly possess.

22      129.    Throughout the course of their dealings with Mr. Barela, Defendants held

23  themselves out as skilled attorneys, having superior knowledge regarding their ability to

24  successfully recover payment from the Settling Party.  Defendants intended that Plaintiff rely, and

25  Plaintiff did rely, on Defendants alleged expertise and advice in connection with the

26  representation of Mr. Barela.

27      130.    Defendants, in the course of their representation of Mr. Barela, breached their

28  duty, among other things, by misappropriating client funds, making numerous misrepresentations

25

1    regarding the status of the funds, making numerous misrepresentations to Mr. Barela regarding

2    the date of the payment under the terms of the settlement agreement, failing to timely respond to

3    Mr. Barela, and misrepresenting to Mr. Barela the status of the settlement payment.

4         131.    On information and belief, Defendant Avenatti failed to adequately represent

5    Plaintiff when negotiating the terms of the settlement agreement with the Settling Party.  Plaintiff

6    believes and alleges that the settlement terms should have been of a significantly greater value,

7    but in order to obtain easy access to and misappropriate Plaintiff's settlement funds, Defendant

8    Avenatti persuaded Mr. Barela to settle for a lesser amount.  On information and belief,

9    Defendants did not represent Plaintiff with the skill and prudence as members of the profession

10   commonly possess.

11        132.    Plaintiff is informed and believes, and on that basis alleges, that Defendants failed

12   to use the skill and care that a reasonably careful attorney would have used in similar

13   circumstances.

14        133.    As a direct and proximate cause of Defendants' negligence, Plaintiff has suffered

15   damages.

16   <div align="center">**NINTH CAUSE OF ACTION**</div>

17   <div align="center">**Aiding and Abetting**</div>

18   <div align="center">**(On Behalf of Plaintiffs Against Defendants Ibrahim, Arden, and Regnier)**</div>

19        134.    Plaintiffs re-allege and incorporate each allegation in Paragraphs 1 through 133 of

20   this Complaint as though fully set forth herein.

21        135.    Mr. Ibrahim, Mr. Arden, and Ms. Regnier knew that certain tortious, wrongful acts

22   were being committed or would be committed by Avenatti against Plaintiffs; namely, intentional

23   fraud and conversion with respect to the settlement funds to which Plaintiffs were entitled.

24        136.    Mr. Ibrahim, Mr. Arden, and Ms. Regnier gave substantial assistance or

25   encouragement to Avenatti in engaging in such tortious, wrongful acts against Plaintiffs.

26        137.    The aiding and abetting of Mr. Ibrahim, Mr. Arden, and Ms. Regnier actually and

27   proximately caused damage to Plaintiffs, in an amount to be determined at trial.

28        138.    Mr. Ibrahim, Mr. Arden, and Ms. Regnier engaged in the above fraudulent acts

<div align="center">26</div>

1    with malice, oppression, or fraud, in that they intended to defraud and harm Plaintiffs and acted

2    with gross negligence and in reckless disregard of Plaintiffs' rights.  Moreover, because

3    Defendants acted maliciously, fraudulently and oppressively within the meaning of those terms as

4    set forth in California Civil Code Section 3293, Plaintiffs are entitled to recover punitive damages

5    from Defendants.

6                                    **TENTH CAUSE OF ACTION**

7                                        **Accounting**

8                          **(On Behalf of Plaintiffs Against All Defendants)**

9            139.    Plaintiffs re-allege and incorporate each allegation in Paragraphs 1 through 138 of

10   this Complaint as though fully set forth herein.

11           140.    As attorneys, Defendants represented Mr. Barela and owed him a fiduciary duty.

12           141.    As described above, Mr. Barela is entitled to money that was received by

13   Defendants on January 5, 2018 relating to the Settling Party's payment under the terms of the

14   settlement agreement.  Mr. Barela has not received from or been made aware of the monies

15   received by Defendants.  However, the Settling Party has provided Mr. Barela with confirmation

16   that on January 5, 2018, the initial settlement payment of $1.6 million was transferred via wire to

17   Defendants' client trust account as specified by Avenatti on January 2, 2018.

18           142.    Accordingly, a balance due from the Defendants to the Plaintiffs can only be

19   ascertained by an accounting.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                            27

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

1.      For compensatory damages of an amount to be proven at trial, but exceeding $1,000,000.

2.      For general damages according to be proven at trial;

3.      For actual and/or special damages to be proven at trial;

4.      For restitution of money lost;

5.      For punitive and exemplary damages against Defendants in an amount to be determined at trial;

6.      For costs of suit, reasonable attorneys' fees as allowed by law, costs, expenses to Plaintiffs, and interest in an amount to be proven at trial;

7.      For pre-judgment and post-judgment interest;

8.      For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining defendants from engaging in the unlawful business practices described herein;

9.      Such other and further relief as the Court shall find just and proper.


Dated:  November 8, 2019                              LARSON O'BRIEN LLP


                                                     By: _____
                                                         Stephen G. Larson
                                                         Steven E. Bledsoe
                                                         R.C. Harlan

                                                     Attorneys for Plaintiffs
                                                     GREGORY BARELA and TALITHA
                                                     BARELA

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby request a jury trial on any and all claims so triable.

3

4

Dated:  November 8, 2019                                    LARSON O'BRIEN LLP

5

6                                                                              By: _____

7                                                                              Stephen G. Larson
                                                                               Steven E. Bledsoe
8                                                                              R.C. Harlan

9                                                                              Attorneys for Plaintiffs
                                                                               GREGORY BARELA and TALITHA
10                                                                             BARELA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

COMPLAINT; DEMAND FOR JURY TRIAL

# **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California 92660.  I am not a party to the above-entitled action.  I have caused, on July 29, 2021, service of the:

DEFENDANT'S SUBMISSION REGARDING ABILITY TO CROSS EXAMINE
WITNESSES ON PENDING LAWSUITS

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 29, 2021

/s/ H. Dean Steward
H. Dean Steward