1

2

3

4               UNITED STATES DISTRICT COURT

5             CENTRAL DISTRICT OF CALIFORNIA

6                   SOUTHERN DIVISION

7                        - - -

8      THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

10     UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
                         Plaintiff,  )
11          vs.                      )
                                     )  SACR-19-00061-JVS
       MICHAEL JOHN AVENATTI,        )
12                       Defendant.  ) TRIAL DAY 7, Vol. 1
       ------------------------------)

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             Santa Ana, California

17              July 22, 2021

18

19                  SHARON A. SEFFENS, RPR
                    United States Courthouse
20                  411 West 4th Street, Suite 1-1053
                    Santa Ana, CA  92701
21                  (714) 543-0870

22

23

24

25

1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    NICOLA T. HANNA
     United States Attorney
4    BRANDON D. FOX
     Assistant United States Attorney
5    Chief, Criminal Division
     ALEXANDER WYMAN
6    Assistant United States Attorney
     Major Frauds Section
7    1100 United States Courthouse
     312 North Spring Street
8    Los Angeles, CA  90012
     (213) 894-6683
9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18   ALSO PRESENT:

19   DREW HARBUR
     CALLAHAN & BLAINE
20

21

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1

 2

 3                          I-N-D-E-X

 4

 5   PLAINTIFF'S
     WITNESSES:              DIRECT   CROSS   REDIRECT   RECROSS
 6
     GEOFFREY JOHNSON           27      83
 7

     PLAINTIFF'S
 8   EXHIBITS:                                MARKED    RECEIVED

 9   Exhibit 1                                             29
     Exhibit 2                                             31
10   Exhibit 60                                            39
     Exhibit 59                                            41
11   Exhibit 118                                           47
     Exhibit 120                                           50
12   Exhibit 119                                           52
     Exhibit 103                                           60
13   Exhibit 106                                           61
     Exhibit 111                                           63
14   Exhibit 108                                           67
     Exhibit 121                                           73
15   Exhibit 122                                           75

16   DEFENSE
     WITNESSES:        DIRECT   CROSS   REDIRECT   RECROSS
17
      (None)
18

     DEFENSE
19   EXHIBITS:                                MARKED    RECEIVED

20    (None)

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | SANTA ANA, CALIFORNIA; THURSDAY, JULY 22, 2021; 8:29 A.M.     |
| 08:29 | 2  | (Jury not present)                                            |
| 08:29 | 3  | THE CLERK:  Item 1, SACR-19-00061-JVS, United                |
| 08:29 | 4  | States of America versus Michael John Avenatti.              |
| 08:29 | 5  | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel           |
| 08:29 | 6  | and Alexander Wyman on behalf of the United States.          |
| 08:29 | 7  | THE COURT:  Good morning.                                     |
| 08:29 | 8  | MR. AVENATTI:  Good morning, Your Honor.                      |
| 08:29 | 9  | Defendant Michael Avenatti present with advisory counsel,     |
| 08:29 | 10 | Mr. Steward, as well as Ms. Cefali and the gentleman          |
| 08:29 | 11 | assisting us on trial technology.                            |
| 08:29 | 12 | THE COURT:  Good morning.                                     |
| 08:29 | 13 | Do you have any matters to take up?                           |
| 08:30 | 14 | MR. WYMAN:  Two quick ones from the government,               |
| 08:30 | 15 | Your Honor.                                                   |
| 08:30 | 16 | First is our first witness today will be Geoffrey             |
| 08:30 | 17 | Johnson.  He is represented by counsel who is present and     |
| 08:30 | 18 | would like to be here.  So I guess our question is:  Where    |
| 08:30 | 19 | would Your Honor like him to be seated?                       |
| 08:30 | 20 | He mainly would like to be afforded the                      |
| 08:30 | 21 | opportunity to object to any matters that impact the          |
| 08:30 | 22 | attorney/client privilege between him and his client and     |
| 08:30 | 23 | also any matters involving confidential settlements for      |
| 08:30 | 24 | civil cases that Mr. Johnson entered into with parties other  |
| 08:30 | 25 | than the defendant years after the conduct at issue which     |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:30   1   the government also believes is irrelevant.

08:30   2           THE COURT:  I don't think I have ever had a

08:30   3   situation where counsel who wasn't counsel of record had a

08:30   4   right to address the Court.

08:30   5           MR. WYMAN:  Very well, Your Honor.  I suppose I

08:30   6   could lodge those objections.  I have had other trials in

08:31   7   which the judge basically said I don't hold that privilege,

08:31   8   so only the witness's attorney could lodge that objection,

08:31   9   which is why he would like to be here.  But obviously I can

08:31   10  lodge those objections as well.

08:31   11          THE COURT:  Mr. Avenatti.

08:31   12          MR. AVENATTI:  Your Honor, I will defer to the

08:31   13  Court, however Your Honor wants to do it.  Obviously it's

08:31   14  fine by me.  I will say this.  As it relates to this issue

08:31   15  about the settlement or settlements with other parties, that

08:31   16  should be handled outside of the presence of the jury.

08:31   17          We're going to want to be heard on that because

08:31   18  the 408 exception would not apply in this context.  I think

08:31   19  that this is highly relevant.  It's a bigger discussion than

08:31   20  right now.

08:31   21          THE COURT:  Well, if he's the first witness, I

08:31   22  think the discussion needs to be right now.

08:31   23          MR. AVENATTI:  So, Your Honor, if you would like

08:31   24  me to address the Court on that, I am happy to.

08:32   25          THE COURT:  Fine.

08:32  1          MR. AVENATTI:  Okay.

08:32  2          My understanding is, Your Honor, that Mr. Johnson

08:32  3  has sought to hold other people responsible for the alleged

08:32  4  missing moneys that he did not receive.  I don't know the

08:32  5  outcome of that proceeding, but what I do know is he

08:32  6  testified in the proceeding and others testified in a

08:32  7  proceeding who may be called in the defense case.

08:32  8          We have sought the records from JAMS.  There was

08:32  9  an arbitration proceeding.  They objected, but they filed no

08:32  10  motion to quash.  That's going to be an issue we're going to

08:32  11  have to raise with the Court.

08:32  12          But if the idea is that Mr. Johnson can take the

08:32  13  stand and seek to hold me entirely responsible for

08:32  14  everything that happened to him contrary to holding other

08:32  15  people responsible and entering into agreements with them,

08:32  16  and potentially contrary to his testimony in another

08:32  17  proceeding -- and just to put a timeline on this, Your

08:32  18  Honor, this is within the last few months.  I mean, this

08:33  19  isn't stale by any stretch of the imagination.

08:33  20          And 408 goes specifically to excluding evidence to

08:33  21  show responsibility, as Your Honor is well aware.  So I

08:33  22  don't believe 408 would apply.

08:33  23          THE COURT:  I agree.

08:33  24          MR. AVENATTI:  I think the question is relevance,

08:33  25  and I think it's highly relevant.  So to the extent that

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:33   1   Mr. Johnson's attorney wants to be heard, I agree with Your

08:33   2   Honor and we would object.  But if he does want to be heard,

08:33   3   it should be done outside the presence of the jury.  We

08:33   4   don't want him standing up and making objections in the

08:33   5   middle of the cross-examination.

08:33   6          THE COURT:  Well, bring him in if he's here.

08:33   7          MR. WYMAN:  Your Honor, may I respond briefly?

08:33   8          THE COURT:  Sure.

08:33   9          MR. WYMAN:  First of all, I agree that this has

08:33   10  nothing to do with Rule 408 or staleness.  It is a relevance

08:33   11  issue.  The fact that Mr. Johnson has sued other people

08:33   12  civilly under civil theory is not relevant to the criminal

08:33   13  charges against the defendant.

08:33   14         Now, if the defendant wants to ask Mr. Johnson if

08:33   15  Mr. Johnson has sued the defendant, that goes to bias that's

08:33   16  relevant.  But if he has sued other people under other

08:34   17  theories, people who have not been charged criminally in the

08:34   18  periods that are very different than the wire fraud charges

08:34   19  at issue here today, it's not relevant what lawsuits he

08:34   20  brought after the fact.

08:34   21         THE COURT:  But if the contention in that lawsuit

08:34   22  is that those individuals somehow improperly obtained

08:34   23  portions of the settlement proceeds, I think that's

08:34   24  relevant.  I take it that's the only other litigation you

08:34   25  would get into, litigation where he claims that other people

08:34   1   were responsible for not getting his full share of the four

08:34   2   million.

08:34   3               MR. AVENATTI:  You are correct, Your Honor.  I'm

08:34   4   not going to go into any ancillary litigation.  I think it's

08:34   5   highly relevant.

08:34   6               MR. WYMAN:  I would also say, Your Honor, that

08:34   7   these are theories advanced by Mr. Johnson's attorney after

08:34   8   the defendant was charged and not --

08:34   9               THE COURT:  So be it.  If for whatever reason

08:34  10   whatever point in time he contends that other people are in

08:34  11   fact responsible for not receiving the full proceeds to

08:35  12   which he was entitled, I think that's relevant.

08:35  13               MR. WYMAN:  And I agree with that, Your Honor.  I

08:35  14   think that the defendant can ask Mr. Johnson to the extent

08:35  15   he believes other people are responsible for the loss that

08:35  16   he incurred and that is charged in this case.

08:35  17               THE COURT:  Okay.

08:35  18               MR. WYMAN:  But getting into the litigation about

08:35  19   civil cases that involve different theories and may have

08:35  20   overlapping conduct, I just think there should be a

08:35  21   limitation on what the defendant is allowed to get into on

08:35  22   cross-examination.

08:35  23               THE COURT:  Well, I think we have to see how the

08:35  24   questioning goes.

08:35  25               MR. WYMAN:  Very well, Your Honor.

08:35  1          THE COURT:  I think the principal point is not to

08:35  2     relitigate those other cases but to establish he contends

08:35  3     that others caused loss of proceeds, full proceeds from the

08:35  4     settlement.  I hear your point, so let's see where we go.

08:35  5          MR. WYMAN:  Okay.  And then on the confidentiality

08:35  6     point, I'm happy to bring in Mr. Harbur if you'd like to

08:35  7     hear from him on sensitivity about -- I think the

08:36  8     sensitivity is that there may have been resolution in those

08:36  9     cases that have confidentiality provisions.  So Mr. Johnson

08:36  10    may be violating those provisions by testifying about what

08:36  11    they are in open court.

08:36  12          I don't know what they are.  My guess is that

08:36  13    they're, like, the numbers or the terms of those agreements.

08:36  14    I would say that the terms of those agreements are not

08:36  15    relevant.

08:36  16          THE COURT:  Well, if, for example, he says Mr. X

08:36  17    siphoned off a million of the $4 million, I think it's

08:36  18    relevant that there was alleged siphoning off and relevant

08:36  19    to what the amount is.

08:36  20          MR. WYMAN:  Well, is Your Honor saying if there is

08:36  21    an admission of certain facts in those agreements, that

08:36  22    would be relevant?

08:36  23          THE COURT:  I'm not going to allow him to use a

08:36  24    confidentiality agreement with a third party as a shield to

08:36  25    relevant evidence.

08:36   1          MR. WYMAN:  I agree with that, Your Honor.  I
08:36   2   guess what I'm saying is the terms of those agreements, the
08:37   3   amount of money that someone may have paid to settle a
08:37   4   third-party lawsuit, for example, has no bearing on the
08:37   5   facts of this case or the bias towards the defendant, which
08:37   6   would be the relevant issue.
08:37   7          THE COURT:  Well, I think when the opening
08:37   8   statement accused of him stealing the whole four million, I
08:37   9   think that the door is open to prove where that money went.
08:37   10          MR. WYMAN:  Fair enough, Your Honor.  I don't
08:37   11   think that -- well, I guess I would just ask that the Court
08:37   12   be -- that the Court restrict the defendant from getting too
08:37   13   into the weeds of these potential resolutions.
08:37   14          THE COURT:  I agree.  We're not going to
08:37   15   relitigate those cases.  So we'll just see how far it goes.
08:37   16          MR. WYMAN:  Okay.  Thank you, Your Honor.
08:37   17          THE COURT:  As far as 408 goes, I don't think
08:38   18   testimony with regard to what happened in the mediation or
08:38   19   settlement context in Mr. Johnson's separate lawsuits is
08:38   20   relevant.  408 speaks about use of the statements against
08:38   21   the parties.
08:38   22          MR. WYMAN:  Very well.
08:38   23          THE COURT:  That's the same reason I didn't
08:38   24   sustain the 408 objection yesterday.
08:38   25          MR. WYMAN:  Well, I think there are additional

08:38    1    reasons why 408 doesn't apply to the defendant.  That
08:38    2    privilege is held by the client.
08:38    3            THE COURT:  Well, that's my point for sustaining
08:38    4    the 408 objections, for not honoring the 408 objections
08:38    5    yesterday.
08:38    6            MR. WYMAN:  Yes, Your Honor, but in this case the
08:38    7    client would be Mr. Johnson.
08:38    8            THE COURT:  Yes, but the statements aren't being
08:38    9    advanced against him to prove or disprove liability.  That's
08:38   10    the purpose of 408.  Everything that goes on in a settlement
08:38   11    conference isn't just ipso facto insulated.
08:39   12            MR. WYMAN:  I agree with that, Your Honor.
08:39   13            THE COURT:  Depending on what the facts are and
08:39   14    who's asserting it.
08:39   15            Well, if counsel is here, I would be happy to hear
08:39   16    him and give him advance notice of what my ruling is going
08:39   17    to be.
08:39   18            MR. SAGEL:  He is with the witness, who I think is
08:39   19    waiting to come in, but we can find him.
08:39   20            THE COURT:  Okay.
08:39   21            Any other matters we need to take up?  Let me say
08:39   22    this.  These are precisely the types of discussions I think
08:39   23    we need to have if they're required before the trial day, so
08:39   24    I thank you for raising it this morning.
08:39   25            MR. WYMAN:  Thank you, Your Honor.  I did have one

08:39   1   other issue.

08:39   2              THE COURT:  Sure.

08:39   3              MR. WYMAN:  That is that today during testimony we

08:39   4   intend to admit a couple of documents pursuant to Rule

08:39   5   902(11).  As Your Honor is aware, the defendant has refused

08:40   6   to -- well, has stated that he will object to any attempts

08:40   7   to rely on the business records exception.

08:40   8              So rather than argue about that in front of the

08:40   9   jury, I wanted to inform the Court that we do intend to move

08:40  10   to admit certain documents pursuant to Rule 902(11), all of

08:40  11   which are marked as exhibits.  And the custodian-of-record

08:40  12   declarations are also marked as exhibits, but we wouldn't be

08:40  13   using them.

08:40  14              THE COURT:  Have you discussed those specific

08:40  15   documents with Mr. Avenatti?

08:40  16              MR. WYMAN:  In the sense that we provided them all

08:40  17   of the trial exhibits and the custodian-of-record

08:40  18   declarations as exhibits.

08:40  19              THE COURT:  I'm likely to receive those

08:40  20   provisionally.

08:40  21              MR. AVENATTI:  Your Honor, I don't

08:40  22   know specifically -- there's a lot of documents.

08:40  23              THE COURT:  I don't either.  That's the problem.

08:40  24              MR. AVENATTI:  Right.  And so I would object to

08:40  25   them being received provisionally or at least being placed

08:41  1   before the jury.  I'm not saying that I have an issue yet

08:41  2   with these documents.  I don't know what they are.  What I

08:41  3   will say is this.  There's a lot --

08:41  4           THE COURT:  Well, you do know what they are

08:41  5   because they've given you the documents.

08:41  6           MR. AVENATTI:  Well, they've given us a lot of

08:41  7   documents.  I don't know specifically what they're going to

08:41  8   attempt to admit during this testimony.  If I could look at

08:41  9   the documents and the declarations, I may be in a position

08:41  10  to stipulate.

08:41  11          I will say this, Your Honor.  There's a lot of

08:41  12  problems with a lot of declarations, custodial declarations.

08:41  13  In some instances they have five, six, eight, ten

08:41  14  declarations from the same entity.  So what we have to do is

08:41  15  we gotta match up the production with the declaration to

08:41  16  make sure that it suffices.

08:41  17          THE COURT:  Unless I indicate specifically,

08:41  18  anything offered under 902 will not be published and I will

08:41  19  receive it, likely receive it provisionally.

08:41  20          MR. WYMAN:  Provisionally, Your Honor, subject to

08:41  21  what additional testimony?

08:42  22          THE COURT:  Subject to having argument out of the

08:42  23  presence of the jury as to whether the requirements of 902

08:42  24  are in fact met with regard to a specific document.

08:42  25          MR. WYMAN:  Understood, Your Honor.  I would just

08:42  1   note that the defendant does know which documents we are

08:42  2   seeking to admit.  They are designated as trial exhibits.

08:42  3           THE COURT:  Right.

08:42  4           MR. WYMAN:  I can inform Your Honor which specific

08:42  5   exhibits they are now.  They're not subject to --

08:42  6           THE COURT:  Well, the list of exhibits runs to 32

08:42  7   pages with 468 exhibits.  I don't think that exactly puts

08:42  8   him on notice as to exactly what's going to come in today.

08:42  9           MR. WYMAN:  And I am happy to inform Your Honor

08:42  10  and the defendant.  There are -- we brought this up now

08:42  11  because we expect to move in exhibits pursuant to 902(11)

08:42  12  throughout the course of trial.  And rather than argue about

08:42  13  it each time, we were hoping for some ruling on the five

08:43  14  declarations or the five entities from which we have

08:43  15  provided declarations and exhibits.

08:43  16          THE COURT:  I think it's a one-on-one analysis.

08:43  17          MR. WYMAN:  Fair enough, Your Honor.

08:43  18          THE COURT:  You know, Mr. Avenatti is representing

08:43  19  that there are multiple declarations from the same entity,

08:43  20  multiple custodians.  I think the question arises in every

08:43  21  instance, is the declaration sufficient, if the person has a

08:43  22  foundation to render it, and so on.  Those questions can't

08:43  23  be answered on a blanket basis.

08:43  24          MR. WYMAN:  I agree with that, Your Honor.

08:43  25          THE COURT:  Okay.

08:43  1          Anything else the government wanted to raise?

08:43  2          MR. WYMAN:  One moment, Your Honor.

08:43  3          (Government counsel conferring)

08:43  4          MR. WYMAN:  Your Honor, may I say the exhibits on

08:43  5  the record we will seek to admit so that there's no dispute

08:43  6  about their being noticed.

08:43  7          THE COURT:  Okay.

08:43  8          MR. WYMAN:  From California Bank and Trust, which

08:43  9  has the custodian-of-record declarations at Exhibit 394, we

08:44 10  intend to admit Exhibits 41, 147, 148, 158, 356 through 360,

08:44 11  375 through 388, and 390 through 391.

08:44 12          THE COURT:  And the declaration for those, is that

08:44 13  Exhibit 394?

08:44 14          MR. WYMAN:  Correct, Your Honor.

08:44 15          THE COURT:  Okay.

08:44 16          MR. WYMAN:  From City National Bank, which has the

08:44 17  custodian-of-records declaration at 397, we intend to admit

08:44 18  Exhibits 361 --

08:44 19          THE COURT:  You intend to offer.

08:44 20          MR. WYMAN:  I'm sorry -- offer for admission, yes.

08:44 21  My apologies -- we intend to offer Exhibits 361 through 374.

08:45 22  From the Peoples Bank, which has the custodian-of-record

08:45 23  declaration at Exhibit 393, we intend to offer Exhibit 25.

08:45 24          From Chase Bank, which has the custodian-of-record

08:45 25  declaration at Exhibit 395, we intend to offer Exhibit 152.

08:45  1    And from Honda Aircraft Company, which has the

08:45  2    custodian-of-records declaration at Exhibit 396, we intend

08:45  3    to offer Exhibits 348, 349, and 350.

08:45  4              THE COURT:  Okay.

08:46  5              MR. AVENATTI:  Your Honor, as soon as I have an

08:46  6    opportunity, I will take a look at it and see if I have any

08:46  7    objections.  I will note the following as it relates, for

08:46  8    instance, to Exhibit 394, the declaration for the first

08:46  9    group, it's actually not a declaration.  It's declarations.

08:46  10   So we need to try to figure out which of these

08:46  11   exhibits go with which declaration, because they're not all

08:46  12   the same.  I agree with Your Honor, it has got to be done on

08:46  13   a document-by-document, declaration-by-declaration basis.

08:46  14   That's the requirement.  I think Your Honor made it clear in

08:46  15   his ruling on the motion in limine when they attempted to

08:46  16   admit 11,000 documents.

08:46  17             THE COURT:  I think it was 11,000 pages.

08:46  18             MR. AVENATTI:  No.  Actually, Your Honor, it was

08:46  19   over 100,000 pages, 11,000 documents.

08:46  20             THE COURT:  Okay.

08:46  21             MR. WYMAN:  Just to be fair, we didn't intend to

08:46  22   admit them, Your Honor.  We intended to seek a pretrial

08:46  23   ruling that we didn't need to call the custodians.  I'm

08:46  24   clear on Your Honor's order on that.  The only document I

08:46  25   believe that we're seeking to admit today is -- well, I

08:47  1    intended to admit one document with Mr. Johnson.

08:47  2            THE COURT:  Tell me what it is.

08:47  3            MR. WYMAN:  Exhibit 41, Your Honor.  That's a

08:47  4    California Bank and Trust document.

08:47  5            THE COURT:  Okay.  So we only have this problem

08:47  6    with one document with Mr. Johnson?

08:47  7            MR. WYMAN:  For today, Your Honor, yes.

08:47  8            THE COURT:  Okay.  Are there any other similar

08:47  9    issues that are going to come up today?

08:47  10           MR. WYMAN:  I don't believe so, Your Honor.

08:47  11           MR. AVENATTI:  Your Honor, if I could get a

08:47  12   representation on the record as to which of the declarations

08:47  13   included within Exhibit 394 go with 41, I may be in a

08:47  14   position to stipulate.

08:47  15           THE COURT:  If you don't have it at your

08:47  16   fingertips, I don't know why Mr. Avenatti should be required

08:47  17   to have it at his fingerprints.

08:47  18           MR. WYMAN:  Your Honor, we gave notice as required

08:47  19   under Rule 902(11) identifying each --

08:47  20           THE COURT:  Sir, I understand that.  We're dealing

08:47  21   with practicalities.

08:48  22           MR. WYMAN:  I apologize, Your Honor.  I was just

08:48  23   saying that each custodian of records declaration has been

08:48  24   matched up with a particular Bates range of documents which

08:48  25   we informed them of two months ago.  I believe we met our

08:48    1    notice requirements under Rule 902(11).  So him saying he

08:48    2    doesn't know which declaration goes to it is simply

08:48    3    undermined by the government's notice some time ago.

08:48    4            THE COURT:  If you want to facilitate your

08:48    5    discussion, you can provide him the identity of the

08:48    6    custodian that goes with 41.

08:48    7            MR. WYMAN:  Very well, Your Honor.

08:48    8            THE COURT:  If you don't, we'll just let

08:48    9    Mr. Avenatti plow through the declarations at Exhibit 394.

08:48   10    And after he has done that, we will have a discussion about

08:48   11    Exhibit 41 off the record -- on the record but outside the

08:48   12    presence of the jury.

08:48   13            MR. WYMAN:  Understood, Your Honor.

08:48   14            MR. AVENATTI:  Your Honor, I just had a chance to

08:49   15    quickly peruse the three declarations at 394.  They don't

08:49   16    have Bates ranges on the declarations, so there is no way

08:49   17    for me to figure out which document goes with which

08:49   18    declaration.

08:49   19            MR. WYMAN:  Your Honor, that's not what I said.

08:49   20    We sent a ten-page letter to the defense two months ago

08:49   21    identifying the Bates range of the custodian declaration and

08:49   22    the Bates range of the underlying documents that it applies

08:49   23    to.

08:49   24            THE COURT:  Well, we will have a further

08:49   25    discussion outside the presence of the jury.  For the time

08:49 1 being, I'm likely to receive these documents, especially the

08:49 2 one today provisionally.  Once we sort out the foundation, I

08:49 3 will issue a final ruling.

08:50 4        MR. WYMAN:  Thank you, Your Honor.  And for the

08:50 5 Court's knowledge, the notice letter that we provided was

08:50 6 attached as I believe Exhibit A to the government's 902(11)

08:50 7 motion in limine.  So it is on the record.

08:50 8        THE COURT:  Okay.

08:50 9        MR. AVENATTI:  Your Honor, if I could just get a

08:50 10 representation relating to which of the three declarations

08:50 11 at 394 apply to 41, I will look at it as quickly as

08:50 12 possible.

08:50 13        THE COURT:  Well, I have invited Mr. Wyman to do

08:50 14 that.  If he does that, it will speed things up.  If you

08:50 15 have to go plow through the documents to figure it out,

08:50 16 we'll take the time to let you plow through them.

08:50 17        MR. AVENATTI:  Thank you, sir.

08:50 18        I did have two quick issues, Your Honor.  I'm

08:50 19 going to be as quick as possible because I know we have a

08:50 20 jury waiting.  Number one, we're aware that the government

08:50 21 late yesterday filed a reply -- I'm sorry, an opposition

08:50 22 relating to Mr. Drum.

08:50 23        The Court on the 20th at page 7 had said that the

08:50 24 Court would inquire as to whether we wanted a reply right.

08:50 25 We would like a reply right.  We'd like to know what works

08:51     1    for Your Honor and what's the schedule.  How quickly would

08:51     2    you like that?

08:51     3              THE COURT:  Well, Mr. Drum, I think the

08:51     4    representation is, is not going to come on this week or

08:51     5    probably not next week.

08:51     6              MR. AVENATTI:  Can we have until Tuesday morning?

08:51     7              THE COURT:  That's fine.

08:51     8              MR. AVENATTI:  Okay.  We'll submit a reply no

08:51     9    later than Tuesday morning.

08:51    10              THE COURT:  That's fine.  Once I've had a chance

08:51    11    to review and consider the papers, we'll have a hearing on

08:51    12    the issue.

08:51    13              MR. AVENATTI:  Your Honor, the other issue I

08:51    14    wanted to raise was, in preparing for Mr. Johnson's

08:51    15    testimony today which we were notified of at the end of

08:51    16    court yesterday, I have significant concerns relating to

08:51    17    Brady and Giglio issues, and I'm going to identify them

08:51    18    specifically for Your Honor.

08:51    19              Number one, the government is in possession of

08:51    20    records relating to Mr. Johnson's mental condition that have

08:51    21    not been produced to the defense.  They are in the records

08:51    22    of the law firm.  They are on the servers which the

08:52    23    government has had for well over two years, and they have

08:52    24    not been produced to the defense.  So that's number one.  We

08:52    25    think they're highly relevant and we're entitled to have

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:52  1   them, and frankly we should have had them before.  We still
08:52  2   don't have them.
08:52  3            Secondly, Mr. Johnson gave a deposition in the
08:52  4   underlying case during which he talked about his mental
08:52  5   condition, inability to remember things, inability to recall
08:52  6   things, et cetera.  The government has also been in
08:52  7   possession of that deposition and we don't --
08:52  8            THE COURT:  I take it you were a party to that
08:52  9   litigation; were you not?
08:52  10           MR. AVENATTI:  I was counsel, but all of my --
08:52  11           THE COURT:  All right.  All right.
08:52  12           MR. AVENATTI:  I was counsel, but I don't have
08:52  13   access to any of my law firm records anymore.  And they
08:52  14   fought us on getting access to the servers, et cetera, so we
08:52  15   don't have it.  Frankly I think it is probably Jencks.
08:52  16           THE COURT:  Well, if they're documents that go to
08:53  17   his mental condition, I think they need to be produced.
08:53  18           MR. SAGEL:  If they're in the government's
08:53  19   possession, Your Honor.  The defendant keeps purposely
08:53  20   conflating the fact of what existed and what is in the
08:53  21   prosecution team's possession.  When he keeps saying we
08:53  22   prevented him from doing things -- Your Honor gave him
08:53  23   plenty of opportunities for almost a year to go -- and he
08:53  24   did.  He personally went twice to get things off the server.
08:53  25           If these were the things that he knew were on the

08:53  1    server that were relevant, he could have gotten them.

08:53  2            THE COURT:  And he could have gone to the trustee.

08:53  3            MR. SAGEL:  He could have gone to the trustee.  He

08:53  4    could have gone to many different places.  Could have asked

08:53  5    Your Honor for a Rule 17(c) subpoena for a certain document.

08:53  6            We do not have -- everything that is in the

08:53  7    prosecution team's possession with regard to Mr. Johnson --

08:53  8    we don't control the search that the Privilege Review Team

08:53  9    does and what comes up on the scope.  What we have gotten,

08:53  10   he has.

08:54  11           I have no idea.  He may even have it on what the

08:54  12   Privilege Review Team provided him because he got about

08:54  13   60 percent more than what the government has in his first

08:54  14   production, and he has produced no reciprocal discovery.  So

08:54  15   again, he don't know what he has gotten from that first

08:54  16   production that we do not have.

08:54  17           So again, because he doesn't know what Brady and

08:54  18   Giglio is and what the government's possession is, he keeps

08:54  19   saying what's in our possession and what we have not done.

08:54  20   If it's in our possession, he has it.  We do not have any of

08:54  21   these things; and if we did, he would have them.

08:54  22           THE COURT:  Okay.

08:54  23           MR. AVENATTI:  Your Honor, briefly.  On or about

08:54  24   March 25th of 2019 the government seized a host of files and

08:54  25   servers from the law firm.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:54  1          THE COURT:  Isn't it true that the trustee has all

08:54  2     those documents at this point?

08:54  3          MR. AVENATTI:  Yes, and we attempted to get access

08:54  4     through the trustee, and we were denied repeatedly, Your

08:55  5     Honor.

08:55  6          THE COURT:  Did you take any legal course to get

08:55  7     access, namely, applying to the Court for the issuance of a

08:55  8     Rule 17 subpoena?

08:55  9          MR. AVENATTI:  Your Honor, I don't --

08:55  10         THE COURT:  Just answer the question.

08:55  11         MR. AVENATTI:  Yes.

08:55  12         THE COURT:  A pet peeve of mine with lawyers is

08:55  13    they don't answer the question.  I'm always happy to hear

08:55  14    you, but when I ask a question, I expect a direct and

08:55  15    immediate answer, whatever the answer is.

08:55  16         MR. AVENATTI:  Fair enough, Your Honor.

08:55  17         In answer to Your Honor's question, the answer is

08:55  18    yes, we took steps, but I do not believe we issued a Rule 17

08:55  19    subpoena.  We had prior litigation before Your Honor.  We

08:55  20    were denied access to the servers.

08:55  21         The government opposed it.  I believe -- this is

08:55  22    my best recollection -- the trustee came in and opposed it.

08:55  23    But, Your Honor, Brady and Giglio are clear.  If it's in the

08:55  24    possession of the government and if it's favorable to the

08:55  25    defense, it should have been produced.

08:55   1          Your Honor, it's all on the servers.  When

08:55   2   Mr. Sagel represents that it's not in the possession of the

08:55   3   government, it is in the possession of the government.  They

08:55   4   have it.  They've had it for years.  And this is highly

08:56   5   relevant, and it should have been produced.  They have an

08:56   6   independent obligation to produce it.

08:56   7          THE COURT:  Anything else?

08:56   8          MR. SAGEL:  Unless Your Honor has any questions

08:56   9   for the government, no, we do not.

08:56   10          THE COURT:  The jury should be here shortly.

08:56   11          MR. SAGEL:  Does Your Honor want to hear from

08:56   12   Mr. Johnson's attorney?  He may be in your hallway with the

08:56   13   witness.

08:56   14          THE COURT:  Well, let's bring him in here.

08:56   15          (Mr. Harbur enters the courtroom)

08:57   16          THE COURT:  Sir, would you come up to the lectern,

08:57   17   please.

08:57   18          MR. HARBUR:  Sure.  Good morning, Your Honor.

08:57   19          THE COURT:  Would you state your name, please.

08:57   20          MR. HARBUR:  Drew Harbur.

08:57   21          THE COURT:  I understand you have some concerns

08:57   22   about Mr. Johnson's testimony.

08:57   23          MR. HARBUR:  I do, Your Honor.  My concern is that

08:57   24   he not be asked questions that would invade attorney/client

08:57   25   privilege.  I represent Mr. Johnson not only in connection

| | | |
|---|---|---|
| 08:57 | 1 | with this matter but also in connection with a civil matter |
| 08:57 | 2 | that was filed against Michael Avenatti in his individual |
| 08:57 | 3 | capacity, the firm of Eagan Avenatti, and then several of |
| 08:57 | 4 | the former partners of that firm.  That matter is ongoing as |
| 08:57 | 5 | we speak. |
| 08:57 | 6 | The other concern I have is that Mr. Johnson not |
| 08:58 | 7 | be asked about resolution of portions of that matter that |
| 08:58 | 8 | took place pursuant to an arbitration.  All that is |
| 08:58 | 9 | protected by confidentiality, and so I would ask that he not |
| 08:58 | 10 | be asked specific questions about those matters. |
| 08:58 | 11 | THE COURT:  I'm not going to allow a private |
| 08:58 | 12 | confidentiality agreement to act as a shield to relevant |
| 08:58 | 13 | evidence.  It may be I'll instruct him to answer.  If he |
| 08:58 | 14 | wants to say, "I think this is covered by a confidentiality |
| 08:58 | 15 | agreement," I'll say, "I understand that, sir, but you have |
| 08:58 | 16 | an obligation separate here in court.  I direct you to |
| 08:58 | 17 | answer."  I think that should be sufficient to indicate that |
| 08:58 | 18 | he's compelled to answer that type of question |
| 08:58 | 19 | notwithstanding his obligation in any confidentiality |
| 08:58 | 20 | agreement. |
| 08:58 | 21 | MR. HARBUR:  That would the request from me, Your |
| 08:58 | 22 | Honor, that it be under a formal Court order or from Your |
| 08:58 | 23 | Honor. |
| 08:58 | 24 | THE COURT:  As the testimony has been described to |
| 08:58 | 25 | me, I don't think there is any 408 privilege here. |

26

| | | |
|---|---|---|
| 08:59 | 1 | MR. HARBUR:  Agreed. |
| 08:59 | 2 | THE COURT:  Okay.  Thank you. |
| 08:59 | 3 | MR. HARBUR:  Thank you. |
| 08:59 | 4 | (Recess taken at 8:59 a.m.; |
| 08:59 | 5 | proceedings resumed at 9:08 a.m.) |
| 08:59 | 6 | (Jury present) |
| 09:08 | 7 | THE COURT:  Good morning, ladies and gentlemen. |
| 09:08 | 8 | Would the government call its next witness, |
| 09:08 | 9 | please. |
| 09:08 | 10 | MR. WYMAN:  The United States calls Geoffrey |
| 09:08 | 11 | Johnson. |
| 09:08 | 12 | THE CLERK:  Would you please raise your right |
| 09:08 | 13 | hand. |
| 09:08 | 14 | GEOFFREY JOHNSON, GOVERNMENT'S WITNESS, SWORN |
| 09:09 | 15 | THE CLERK:  If you will please state and spell |
| 09:09 | 16 | your first and last name. |
| 09:09 | 17 | THE WITNESS:  Geoffrey, G-e-o-f-f-r-e-y, Johnson, |
| 09:09 | 18 | J-o-h-n-s-o-n. |
| 09:09 | 19 | THE CLERK:  Thank you. |
| 09:09 | 20 | THE COURT:  Sir, would you take your mask down, |
| 09:09 | 21 | please.  We have plastic shields if you would like one of |
| 09:09 | 22 | those. |
| 09:09 | 23 | THE WITNESS:  I'm okay.  Thank you, Your Honor. |
| 09:09 | 24 | THE COURT:  Okay.  Very good. |
| 09:09 | 25 | Mr. Wyman. |

```
09:09   1              MR. WYMAN:  Thank you, Your Honor.
09:09   2                      DIRECT EXAMINATION
09:09   3   BY MR. WYMAN:
09:09   4   Q    Good morning, Mr. Johnson.
09:09   5   A    Good morning.
09:09   6   Q    How old are you, sir?
09:09   7   A    Fifty-six years old.
09:09   8   Q    What city do you live in?
09:09   9   A    Grenada Hills.
09:09  10   Q    Are you currently employed?
09:09  11   A    No.
09:09  12   Q    I understand that you are in a wheelchair.  Are you
09:09  13   able to walk?
09:09  14   A    No.
09:09  15   Q    Did you suffer injuries that led to your inability to
09:09  16   walk or before you were a paraplegic?
09:10  17   A    Yes, I did.
09:10  18   Q    Approximately when did you suffer those injuries?
09:10  19   A    2011.
09:10  20   Q    Where were you when you suffered those injuries?
09:10  21   A    I was in the Twin Towers jail.
09:10  22   Q    Is that a jail in L.A. County?
09:10  23   A    Yes, it is.
09:10  24   Q    Had you been arrested?
09:10  25   A    Yes.
```

```
09:10   1   Q    Were the charges against you from that arrest
09:10   2   ultimately dropped?
09:10   3   A    Yes, they were.
09:10   4   Q    Have you ever been convicted of a crime?
09:10   5   A    No.
09:10   6   Q    Who represented you as your attorney in having those
09:10   7   criminal charges dropped?
09:10   8   A    Richard Beada.
09:10   9   Q    After the charges against you were dropped, did you
09:10  10   file a lawsuit against the County of Los Angeles in
09:10  11   connection with the injuries you suffered while in jail?
09:10  12   A    Yes.
09:10  13   Q    Who represented you in that lawsuit?
09:10  14   A    Michael Avenatti.
09:10  15   Q    Do you see Michael Avenatti in court here today?
09:10  16   A    Yes, I do.
09:10  17   Q    Can you please identify him by where he is standing and
09:11  18   an article of clothing that he is wearing.
09:11  19   A    Yes.  He is standing right there, and he is wearing I
09:11  20   think a gray tie --
09:11  21             MR. AVENATTI:  Brown.
09:11  22             THE WITNESS:  Okay, brown tie.
09:11  23             THE COURT:  The record will indicate that the
09:11  24   witness has identified the defendant.
09:11  25             MR. WYMAN:  Thank you, Your Honor.
```

09:11  1          (Defendant Avenatti identified)

09:11  2   BY MR. WYMAN:

09:11  3   Q    Mr. Johnson, there are two binders in front of you, one

09:11  4   marked Volume 1 and one Volume 2.  Are you able to access

09:11  5   the one labeled Volume 1?

09:11  6   A    Yes.

09:11  7   Q    Can you please turn to Exhibit 1 in that binder.

09:11  8   A    (Witness complies.)  Okay.

09:11  9   Q    When you hired the defendant, did you sign a retainer

09:11  10  agreement?

09:11  11  A    Yes.

09:11  12  Q    Showing you Exhibit 1, is this a fair and accurate copy

09:11  13  of that retainer agreement?

09:11  14  A    Yes.

09:11  15          MR. WYMAN:  The government moves into evidence

09:12  16  Exhibit 1, Your Honor.

09:12  17          THE COURT:  Any objection?

09:12  18          MR. AVENATTI:  No objection, Your Honor.

09:12  19          THE COURT:  Exhibit 1 will be received.

09:12  20          (Exhibit 1 received in evidence)

09:12  21          MR. WYMAN:  One moment, Your Honor.

09:12  22  BY MR. WYMAN:

09:12  23  Q    If you could please look first at the end of the

09:12  24  document to the signature.  Does that appear to be your

09:12  25  signature there above the name Geoffrey Johnson?

| | | |
|---|---|---|
| 09:12 | 1 | A    It could be, yes. |
| 09:12 | 2 | Q    Is that your handwriting below your signature? |
| 09:12 | 3 | A    I don't believe so. |
| 09:12 | 4 | Q    Going back to page 1 of this exhibit under paragraph |
| 09:12 | 5 | four, under this agreement, how much was the defendant |
| 09:13 | 6 | entitled to receive in attorneys' fees from your case? |
| 09:13 | 7 | MR. AVENATTI:  Objection.  Best evidence, Your |
| 09:13 | 8 | Honor. |
| 09:13 | 9 | THE COURT:  Overruled. |
| 09:13 | 10 | THE WITNESS:  Forty percent. |
| 09:13 | 11 | BY MR. WYMAN: |
| 09:13 | 12 | Q    Did you ever have any other agreement with the |
| 09:13 | 13 | defendant about attorneys' fees from your settlement with |
| 09:13 | 14 | the County of Los Angeles? |
| 09:13 | 15 | A    No. |
| 09:13 | 16 | Q    Did you ever have any other attorneys' fees agreement |
| 09:13 | 17 | with the defendant? |
| 09:13 | 18 | A    Yes, with Mr. Beada. |
| 09:13 | 19 | Q    I'm sorry.  Specifically with the defendant, did you |
| 09:13 | 20 | have any other agreement as to attorneys' fees? |
| 09:13 | 21 | A    No. |
| 09:13 | 22 | Q    Could you please look at Exhibit 2 now. |
| 09:13 | 23 | A    (Witness complies.) |
| 09:14 | 24 | Q    What is the title of this document? |
| 09:14 | 25 | A    Attorney fees sharing agreement. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:14   1   Q     And on page 2 do you see your signature there?

09:14   2   A     Yes.

09:14   3   Q     Is this a fair and accurate copy of a fee splitting

09:14   4   agreement that you signed?

09:14   5   A     Yes, it appears to be.

09:14   6          MR. WYMAN:  Your Honor, the government moves into

09:14   7   evidence Exhibit 2.

09:14   8          THE COURT:  Any objection?

09:14   9          MR. AVENATTI:  No objection, Your Honor.

09:14   10         THE COURT:  Exhibit 2 will be received.

09:14   11         (Exhibit 2 received in evidence)

09:14   12  BY MR. WYMAN:

09:14   13  Q     Focusing at the bottom there where it says Richard

09:14   14  Beada, is that who you said represented you in the criminal

09:15   15  charges?

09:15   16  A     Yes.

09:15   17  Q     And what is the date of this agreement?

09:15   18  A     November 8th, 2011.

09:15   19  Q     And if we could go down to page 2 of this exhibit and

09:15   20  pull up the signature.  Is that your signature?

09:15   21  A     It appears to be.

09:15   22  Q     And if we could go back and pull up Exhibit 1 again

09:15   23  quickly.  Showing you the top of page 1, what is the date of

09:15   24  this agreement?

09:15   25  A     November 8th, 2011.

09:15   1   Q   Do you remember where you were living when you learned

09:15   2   that the criminal charges against you had been dropped?

09:16   3   A   Yes.  I was living at CareMeridian.

09:16   4   Q   And what is CareMeridian?

09:16   5   A   It's a sub-acute rehab.

09:16   6   Q   Why were you living at CareMeridian at that time?

09:16   7   A   It was a facility that taught you how to live as a

09:16   8   paraplegic.  So, like, sliding board and transfer and things

09:16   9   like that.

09:16   10   Q   Approximately how long did you stay at CareMeridian?

09:16   11   A   About ten months.

09:16   12   Q   During that time who did you understand was paying your

09:16   13   expenses to live at CareMeridian?

09:16   14   A   Eagan Avenatti.

09:16   15   Q   Is that the law firm of the defendant, Michael

09:16   16   Avenatti?

09:16   17   A   Yes.

09:16   18   Q   Who told you that Eagan Avenatti was paying your

09:16   19   expenses?

09:16   20   A   Michael.

09:16   21   Q   The defendant, Michael Avenatti?

09:16   22   A   Michael Avenatti.

09:17   23   Q   Did you know at that time whether Eagan Avenatti was

09:17   24   actually paying the bill to CareMeridian on time?

09:17   25   A   No, I did not.

```
09:17   1    Q    Did the defendant ever tell you that you were sued
09:17   2    personally by CareMeridian for not paying expenses?
09:17   3                 MR. AVENATTI:  Objection.  Foundation.
09:17   4                 THE COURT:  Overruled.
09:17   5                 THE WITNESS:  Could you repeat the question?
09:17   6    BY MR. WYMAN:
09:17   7    Q    Of course.  Did the defendant ever tell you that you
09:17   8    were sued personally by CareMeridian for not paying
09:17   9    expenses?
09:17   10   A    No, he did not.
09:17   11   Q    Did the defendant ever tell you that he negotiated a
09:17   12   settlement with CareMeridian for that lawsuit requiring you
09:17   13   to pay $175,000?
09:17   14                 MR. AVENATTI:  Objection.  Misstates the evidence.
09:17   15   Foundation.
09:17   16                 THE COURT:  Overruled.
09:17   17                 THE WITNESS:  No, he did not.
09:17   18   BY MR. WYMAN:
09:17   19   Q    A few minutes ago you said that the defendant
09:17   20   represented you in your lawsuit against the County of Los
09:17   21   Angeles, and we looked at that attorney/client fee contract
09:18   22   from November of 2011.
09:18   23                 Did the defendant end up filing that lawsuit on
09:18   24   your behalf?
09:18   25   A    Yes, he did.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:18 | 1 | Q    Over the next few years did the defendant discuss that |
| 09:18 | 2 | lawsuit with you very often? |
| 09:18 | 3 | A    Not very often. |
| 09:18 | 4 | Q    Did you ever tell the defendant what it was that you |
| 09:18 | 5 | wanted to get out of that lawsuit? |
| 09:18 | 6 | A    Yes, I did. |
| 09:18 | 7 | Q    And what was that? |
| 09:18 | 8 |         MR. AVENATTI:  Objection.  Hearsay. |
| 09:18 | 9 |         THE COURT:  Overruled. |
| 09:18 | 10 |         THE WITNESS:  I wanted to buy a home that was |
| 09:18 | 11 | fitted for accessibility for a paraplegic.  I wanted to get |
| 09:18 | 12 | a van so I could be mobile and get around to where I needed |
| 09:18 | 13 | to get and, you know, basically live independently. |
| 09:19 | 14 | BY MR. WYMAN: |
| 09:19 | 15 | Q    If you could please turn now to what is already in |
| 09:19 | 16 | evidence as Exhibit 37, from page 2 to 4.  Focusing on the |
| 09:19 | 17 | last page of that document, the signatures, do you see a |
| 09:19 | 18 | signature above your name, Geoffrey Ernest Johnson, |
| 09:19 | 19 | plaintiff? |
| 09:19 | 20 | A    Which page? |
| 09:19 | 21 | Q    I'm sorry.  Page 4 of the exhibit, the last page.  It's |
| 09:19 | 22 | also on the screen if you would like to see it. |
| 09:19 | 23 | A    Okay.  Yes, I see that. |
| 09:20 | 24 | Q    Does that appear to be your signature? |
| 09:20 | 25 | A    No, it does not. |

09:20   1    Q    What looks different to you about this signature than

09:20   2    your normal signature?

09:20   3    A    The first letters of each name, the G, the E, and the J

09:20   4    do not look my G, E, and J.

09:20   5    Q    If we could down to page 2 of the exhibit and the

09:20   6    second paragraph below the heading "Agreement" about in the

09:20   7    middle of the page.

09:20   8    A    Okay.

09:20   9    Q    Do you see the bolded amount of the settlement for

09:20   10   $4 million?

09:20   11   A    Yes, I do.

09:20   12   Q    Did the defendant ever tell you that your case settled

09:21   13   for $4 million?

09:21   14   A    No, he did not.

09:21   15   Q    Do you recall the defendant ever showing you this

09:21   16   agreement?

09:21   17   A    No.

09:21   18   Q    At some point in time did the defendant tell you that

09:21   19   your case had settled?

09:21   20   A    Yes, he did.

09:21   21   Q    Was that conversation in person?

09:21   22   A    Yes, it was.

09:21   23   Q    Where did it take place?

09:21   24   A    In my room at Sunrise of West Hills.

09:21   25   Q    What is Sunrise of West Hills?

09:21  1   A     It's an assisted living facility.

09:21  2   Q     Is that where you moved after CareMeridian?

09:21  3   A     Correct.

09:21  4   Q     Approximately when did that conversation take place?

09:22  5   A     2015, I believe.

09:22  6   Q     And what did he tell you during that conversation?

09:22  7   A     He said that there was a settlement.  He was very

09:22  8   pleased.  And he said I was going to get $1.9 million

09:22  9   quarterly, and it was to come out to about $46,000 every

09:22  10  quarter.

09:22  11  Q     Did he explain why you would be receiving payments

09:22  12  quarterly?

09:22  13  A     No, he did not.

09:22  14  Q     Did he say when you were supposed to start receiving

09:22  15  these quarterly payments?

09:22  16  A     No, he didn't.

09:22  17  Q     What, if anything, did the defendant tell you about the

09:23  18  confidentiality of this agreement?

09:23  19  A     He said it was confidential.  I couldn't discuss it

09:23  20  with anyone including the settlement amount, the details of

09:23  21  the settlement.

09:23  22  Q     And what did he say would happen if you did?

09:23  23  A     I could lose my settlement.

09:23  24  Q     Did the defendant ever tell you that he received a

09:23  25  check from the County of Los Angeles for $4 million for your

09:23  1    case?
09:23  2    A    No, he did not.
09:23  3    Q    If he had received such a check, would you have wanted
09:23  4    to know that?
09:23  5    A    Yes.
09:23  6              MR. AVENATTI:  Objection.  Speculation.
09:23  7              THE COURT:  Overruled.
09:23  8              THE WITNESS:  Absolutely.
09:23  9    BY MR. WYMAN:
09:23  10   Q    Based on your understanding of your relationship with
09:23  11   the defendant as your attorney, did you expect him to tell
09:23  12   you if he received any settlement money on your behalf?
09:23  13   A    Yes, I did.  I trusted him.  I would have expected him
09:24  14   to tell me.
09:24  15   Q    I want to show you what is already now in evidence as
09:24  16   Exhibit 40.  If you could please turn to page 2 of that
09:24  17   exhibit.
09:24  18   A    (Witness complies.)  Okay.
09:24  19   Q    Do you see that this is a check from the County of Los
09:24  20   Angeles made out to Eagan Avenatti?
09:24  21   A    Yes, I do.
09:24  22   Q    What is the amount of this check?
09:24  23   A    $4 million.
09:24  24   Q    Do you see a date on the check in the middle at the
09:24  25   top?

```
09:24    1    A    January 26th, 2015.
09:24    2    Q    Prior to meeting with the government prior to this
09:24    3    case, had you ever seen this document before?
09:24    4    A    No.
09:24    5    Q    If at this time in 2015 the defendant had told you that
09:25    6    he had received a settlement check for you for $4 million,
09:25    7    where would you have put that money?
09:25    8    A    In a special-needs trust.
09:25    9    Q    What is your understanding of what a special-needs
09:25   10    trust is?
09:25   11    A    It's a financial instrument that -- it's a trust.  It's
09:25   12    a type of a trust that allows you -- it protects your
09:25   13    benefits like SSI and Medi-Cal, and it allows you to have
09:25   14    the money and have it be protected.
09:25   15    Q    You said SSI.  What is SSI?
09:25   16    A    Supplemental security income.
09:25   17    Q    And who administers SSI?
09:25   18    A    The Social Security Administration.
09:26   19    Q    And you said also Medi-Cal?
09:26   20    A    Yes.
09:26   21    Q    Were you receiving SSI and Medi-Cal benefits in 2015?
09:26   22    A    Yes, I was.
09:26   23    Q    Based on your injuries did you expect back in 2015 that
09:26   24    you would have significant medical and other life expenses
09:26   25    for the remainder of your life?
```

```
09:26    1    A    Yes, I did.
09:26    2    Q    Did you believe putting settlement money in a
09:26    3    special-needs trust would help you pay those expenses?
09:26    4    A    Yes, I did.
09:26    5    Q    If you could please turn now to Exhibit 60.
09:26    6    A    (Witness complies.)  Okay.
09:26    7    Q    Do you recognize this e-mail?
09:26    8    A    Yes, I do.
09:27    9    Q    Is it a fair and accurate copy of the e-mail chain you
09:27   10    were on?
09:27   11    A    Yes, it is.
09:27   12              MR. WYMAN:  The government moves to admit
09:27   13    Exhibit 60.
09:27   14              MR. AVENATTI:  Your Honor, objection.  Hearsay --
09:27   15    both to the e-mail and the attachment, Your Honor.  Multiple
09:27   16    levels.
09:27   17              THE COURT:  Sixty will be received, but the
09:27   18    attachment will not be received for the truth of the
09:27   19    content.
09:28   20              MR. WYMAN:  Thank you, Your Honor.
09:28   21              (Exhibit 60 received in evidence)
09:28   22              MR. WYMAN:  Would you please publish this e-mail.
09:28   23    BY MR. WYMAN:
09:28   24    Q    Focusing on the e-mail there in the middle of the page,
09:28   25    who is Sian Welch.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

40

09:28  1   A    Sian Welch is the, like, CEO of Freedom to Live.  She's
09:28  2   the head of Freedom to Live, and Freedom to Live is a
09:28  3   nonprofit group that helps quadriplegics and paraplegics
09:28  4   learn to live independently.
09:28  5   Q    And without going into detail, are these materials she
09:29  6   sent you, are they generally about special-needs trusts?
09:29  7           MR. AVENATTI:  Same objection, Your Honor.
09:29  8           THE COURT:  Overruled.
09:29  9           THE WITNESS:  Yes.
09:29 10   BY MR. WYMAN:
09:29 11   Q    Now, in the e-mail you're e-mailing -- forwarding this
09:29 12   e-mail from Sian Welch to Judy Regnier.  Who is Judy
09:29 13   Regnier?
09:29 14   A    She is the paralegal for Eagan Avenatti.
09:29 15   Q    And who did you understand that she worked for?
09:29 16   A    Michael Avenatti.
09:29 17   Q    Why are you sending these materials to Judy Regnier?
09:29 18   A    Because the special-needs trust is something that
09:29 19   Michael would have to see, and so I forwarded it to Judy so
09:29 20   that he could take a look at it.
09:29 21   Q    Did you believe that she would forward it to the
09:29 22   defendant?
09:29 23   A    Yes, I did.
09:29 24   Q    Would you please look now at Exhibit 59, the one right
09:30 25   before that.

| | | |
|---|---|---|
| 09:30 | 1 | A      (Witness complies.)   Okay. |
| 09:30 | 2 | Q      Is this another e-mail that you were part of? |
| 09:30 | 3 | A      Yes, it is. |
| 09:30 | 4 | MR. WYMAN:   Your Honor, the government moves to |
| 09:30 | 5 | admit 59. |
| 09:30 | 6 | MR. AVENATTI:   Objection, Your Honor.   Hearsay. |
| 09:30 | 7 | MR. WYMAN:   Agency statement, Your Honor. |
| 09:30 | 8 | MR. AVENATTI:   No foundation, Your Honor. |
| 09:30 | 9 | THE COURT:   Overruled.   I believe the witness has |
| 09:30 | 10 | testified to the fact that Ms. Regnier was Mr. Avenatti's |
| 09:30 | 11 | employee.   It will be received. |
| 09:31 | 12 | (Exhibit 59 received in evidence) |
| 09:31 | 13 | BY MR. WYMAN: |
| 09:31 | 14 | Q      Is this Ms. Regnier's response to you? |
| 09:31 | 15 | A      Yes, it is. |
| 09:31 | 16 | Q      And since the screens are a little far away, would you |
| 09:31 | 17 | mind reading that for the jury. |
| 09:31 | 18 | A      Thanks, Geoff.  I will follow up with Michael. |
| 09:31 | 19 | Q      Did you ever talk directly to the defendant about |
| 09:31 | 20 | establishing a special-needs trust for your settlement |
| 09:31 | 21 | funds? |
| 09:31 | 22 | A      Yes, I did. |
| 09:31 | 23 | Q      And when you raised it with him -- well, let me ask |
| 09:31 | 24 | this.  Did you discuss that topic with him multiple times? |
| 09:31 | 25 | A      Yes, I did. |

```
09:31    1   Q    Did some of those conversations take place in 2015 or
09:31    2   later?
09:31    3              MR. AVENATTI:  Leading.
09:31    4              THE COURT:  Overruled.
09:31    5              THE WITNESS:  Yes, they did.
09:31    6   BY MR. WYMAN:
09:31    7   Q    When you raised that topic with him, did the defendant
09:31    8   ever tell you that the settlement had already been
09:31    9   finalized?
09:32   10   A    Could you repeat the question.
09:32   11   Q    Of course.  When you raised the topic of special-needs
09:32   12   trusts from 2015 or later, did the defendant ever tell you
09:32   13   that your settlement had already been finalized?
09:32   14   A    No.
09:32   15   Q    Did he ever tell you that he had already received a
09:32   16   lump-sum payment of $4 million from the County?
09:32   17   A    No, he did not.
09:32   18   Q    Did he ever tell you that it was impossible to
09:32   19   establish a special-needs trust because he had already
09:32   20   received the lump sum payment?
09:32   21              MR. AVENATTI:  Lacks foundation, Your Honor.
09:32   22   Speculation.
09:32   23              THE COURT:  Overruled.
09:32   24              THE WITNESS:  No, he didn't.
        25
```

09:32    1    BY MR. WYMAN:

09:32    2    Q    If all of those things were true, would you have wanted

09:32    3    to know that at the time?

09:32    4    A    Absolutely.

09:32    5    Q    And if all of those things were true, would you have

09:32    6    expected the defendant as your lawyer to tell you those

09:32    7    things?

09:32    8    A    Yes, I would.  I trusted him, and I would have expected

09:32    9    that he would tell me that.

09:33   10    Q    Did you ever reach out to anybody else about

09:33   11    establishing a special-needs trust for you?

09:33   12    A    Yes, I did.

09:33   13    Q    Who?

09:33   14    A    There was a gentleman whose name I don't remember, that

09:33   15    Mary Williams, who is the mother of Sian Welch and she was a

09:33   16    nurse in Freedom to Live, they asked me, Sian and Mary asked

09:33   17    me if the special-needs trust had been established.

09:33   18            MR. AVENATTI:  Objection, Your Honor.  Hearsay.

09:33   19    Confrontation clause as well.  Move to strike.

09:33   20            THE COURT:  It will be stricken.

09:33   21    BY MR. WYMAN:

09:33   22    Q    Mr. Johnson, the person that you contacted -- I

09:33   23    understand you don't remember his or her name -- was that

09:33   24    person a lawyer?

09:33   25    A    They were a paralegal.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

44

09:34  1   Q    And did you tell the defendant that you reached out to

09:34  2   this other person?

09:34  3   A    Yes, I did.

09:34  4   Q    How did he react to that information?

09:34  5   A    He was furious.  He said we have to keep it in the

09:34  6   family.  He said:  I'm your lawyer.  You don't go outside of

09:34  7   the firm.

09:34  8   Q    At the time he told you that, did you believe that the

09:34  9   defendant was actively trying to establish a special-needs

09:34  10  trust for you?

09:34  11  A    I'm sorry.  Could you repeat the question?

09:34  12  Q    Of course.  At the time that he got angry with you

09:34  13  about reaching out to the paralegal, did you understand or

09:34  14  did you believe that he was trying to establish a

09:34  15  special-needs trust for you?

09:34  16  A    Yes, I did.

09:34  17  Q    Was that because he told you that?

09:34  18  A    Yes, he did.  He said he was handling it.

09:34  19  Q    Focusing on the time period of the e-mail we have been

09:35  20  looking at, mid 2015, did you believe at that time that the

09:35  21  settlement with L.A. County had been finalized?

09:35  22  A    No.

09:35  23  Q    Who, if anyone, told you that it had not been

09:35  24  finalized?

09:35  25  A    Michael Avenatti.

09:35   1   Q    When he was telling you that it had not been finalized,
09:35   2   did he ever offer to give you any advance payment?
09:35   3   A    Yes, he did.
09:35   4   Q    Did he call them advances?
09:35   5   A    Yes, he did.
09:35   6   Q    How much did he agree to give you?
09:35   7   A    He said the firm can advance me whatever I need, and I
09:35   8   said that it had to be less than $2,000.
09:35   9   Q    And why did it have to be less than $2,000?
09:35   10  A    Because the SSI rules state that you can only have --
09:36   11  you have to have less than $2,000 in your bank account.
09:36   12  Q    And what would happen if you had more?
09:36   13       MR. AVENATTI:  Calls for speculation, Your Honor.
09:36   14       THE COURT:  Overruled.
09:36   15       THE WITNESS:  You could lose your benefits.
09:36   16  BY MR. WYMAN:
09:36   17  Q    After he offered to pay you that money, did he begin
09:36   18  sending you periodic checks in those amounts?
09:36   19  A    Yes, he did.
09:36   20  Q    Did he continue to send you checks around those amounts
09:36   21  for quite some time?
09:36   22  A    Yes, he did.
09:36   23  Q    When approximately did those payments stop?
09:36   24  A    I believe the last one was in March of 2019.
09:36   25  Q    During this time period while the defendant is sending

09:36   1   you these advance checks, what was he telling you was

09:37   2   happening with the L.A. County settlement?

09:37   3   A    Well, he said it hadn't been completed and that the

09:37   4   County had to approve the special-needs trust first.

09:37   5   Q    During this time period that he's sending you these

09:37   6   periodic checks, did he ever tell you that he had received

09:37   7   your full $4 million settlement?

09:37   8   A    No, he didn't.

09:37   9   Q    Did he ever tell you that he had spent that $4 million?

09:37   10           MR. AVENATTI:  Objection, Your Honor.  Lacks

09:37   11  foundation.

09:37   12           THE COURT:  Overruled.

09:37   13           THE WITNESS:  No, he did not.

09:37   14  BY MR. WYMAN:

09:37   15  Q    During the time period when the defendant was advancing

09:37   16  you money, were the payments sent to you automatically, or

09:37   17  did you have to ask either the defendant or Ms. Regnier for

09:38   18  them?

09:38   19  A    I generally had to ask.

09:38   20  Q    How did you primarily communicate with the defendant

09:38   21  and Ms. Regnier?

09:38   22  A    Through Judy via e-mails, texts, and phone calls.

09:38   23  Q    And during the entire time that you were communicating

09:38   24  with her, did you understand her to be working for the

09:38   25  defendant?

| | | |
|---|---|---|
| 09:38 | 1 | A    Yes, I did. |
| 09:38 | 2 | Q    Can you please take a look at Exhibit 118.  And it will |
| 09:38 | 3 | be in the other binder. |
| 09:38 | 4 | A    (Witness complies.)  Okay. |
| 09:39 | 5 | Q    Do you recognize this exhibit? |
| 09:39 | 6 | A    Yes. |
| 09:39 | 7 | Q    What is it? |
| 09:39 | 8 | A    It's text messages with Judy Regnier. |
| 09:39 | 9 | Q    Are these screenshots of your text messages to her? |
| 09:39 | 10 | A    Yes. |
| 09:39 | 11 | Q    And is this exhibit a fair and accurate copy of those |
| 09:39 | 12 | screenshots? |
| 09:39 | 13 | A    Yes, it is. |
| 09:39 | 14 | MR. WYMAN:  Your Honor, the government moves to |
| 09:39 | 15 | admit Exhibit 118. |
| 09:39 | 16 | MR. AVENATTI:  Your Honor, hearsay, multiple |
| 09:39 | 17 | layers, as well as authentication. |
| 09:39 | 18 | THE COURT:  Overruled.  118 will be received. |
| 09:39 | 19 | (Exhibit 118 received in evidence) |
| 09:39 | 20 | MR. WYMAN:  If you could pull up page 3. |
| 09:39 | 21 | BY MR. WYMAN: |
| 09:39 | 22 | Q    About two-thirds of the way down, do you see a text |
| 09:39 | 23 | message from you to Ms. Regnier on June 16th? |
| 09:40 | 24 | A    Yes. |
| 09:40 | 25 | Q    Of 2017? |

09:40  1    A    Yes.

09:40  2    Q    Can you please read aloud your text message to

09:40  3    Ms. Regnier.

09:40  4    A    "Hi, Judy.  Were you able to talk to Michael about

09:40  5    depositing another 1,900 in my account"?

09:40  6    Q    And then can you please read her response.

09:40  7    A    "I will deposit in a.m. for you."

09:40  8    Q    Moving to page 4 now to your text at the bottom, can

09:40  9    you please read your message there on July 25th, 2017.

09:40  10   A    "Hi, Judy.  Michael said you could deposit 800 in my

09:40  11   account.  I looked in my account, and I have room for a

09:40  12   thousand, so could you make it a thousand?  Thanks."

09:41  13   Q    What did you mean when you said you had room for a

09:41  14   thousand?

09:41  15   A    Because you can't have more than 2,000.  I must have

09:41  16   had about 900 or so in the account already, so I could only

09:41  17   deposit a thousand.

09:41  18   Q    When you say you couldn't have more than 2,000, are you

09:41  19   referring to the SSI rule you testified about?

09:41  20   A    Yes, I am.

09:41  21   Q    Now, this is a lengthy document.  I'm not going to go

09:41  22   through all of your messages with Ms. Regnier, but are these

09:41  23   messages where you're asking for deposits fairly typical of

09:41  24   how you would ask for money from the defendant?

09:41  25   A    Yes.

| | | |
|---|---|---|
| 09:41 | 1 | Q    Could you please turn now to Exhibit 120. |
| 09:41 | 2 | A    (Witness complies.)  Okay. |
| 09:41 | 3 | Q    Do you recognize this exhibit? |
| 09:42 | 4 | A    Yes, I do. |
| 09:42 | 5 | Q    What is this exhibit? |
| 09:42 | 6 | A    It's a letter -- |
| 09:42 | 7 | Q    Exhibit 120, is this a screenshot? |
| 09:42 | 8 | A    Exhibit 120 is a screenshots, yes. |
| 09:42 | 9 | Q    And what are these screenshots of? |
| 09:42 | 10 | A    They are screenshots of a letter from Social Security |
| 09:42 | 11 | Administration. |
| 09:42 | 12 | Q    And if you could page through the remainder of the |
| 09:42 | 13 | exhibit, are these text messages? |
| 09:42 | 14 | A    Yes, they are. |
| 09:42 | 15 | Q    And who are they text messages with? |
| 09:42 | 16 | A    Michael Avenatti. |
| 09:42 | 17 | Q    And yourself? |
| 09:42 | 18 | A    Yes. |
| 09:42 | 19 | Q    And when you referred to the letter, was that -- does |
| 09:42 | 20 | that appear to be a photograph that was texted? |
| 09:42 | 21 | A    Yes. |
| 09:42 | 22 | Q    Is this a fair and accurate compilation of screenshots |
| 09:43 | 23 | of text messages between you and the defendant? |
| 09:43 | 24 | A    Yes. |
| 09:43 | 25 |            MR. WYMAN:  Your Honor, the government moves to |

09:43  1    admit Exhibit 120.

09:43  2            MR. AVENATTI:  Your Honor, objection.

09:43  3    Authentication, hearsay, multiple levels, photos of alleged

09:43  4    documents.

09:43  5            THE COURT:  The document -- 120 will be received,

09:43  6    but the document including the Social Security letter will

09:43  7    not be received for the truth.

09:43  8            (Exhibit 120 received in evidence)

09:43  9            THE COURT:  By that, ladies and gentlemen, I mean

09:43  10   that document was transmitted as part of this conversation

09:43  11   back and forth.  It was received.  I'm allowing it to come

09:43  12   in for that fact, that it was received, not for the fact

09:43  13   that everything in that letter is the truth but just for the

09:44  14   fact that it was conveyed.

09:44  15           MR. AVENATTI:  And, Your Honor, we would ask for

09:44  16   the same instruction on 118.

09:44  17           THE COURT:  The same instruction applies to 118,

09:44  18   at least one Social Security letter.  So those incorporated

09:44  19   letters will be received for the fact that they were sent

09:44  20   but not for the truth of the content.

09:44  21           MR. WYMAN:  If you could pull up page 6 of

09:44  22   Exhibit 120, please.

09:44  23   BY MR. WYMAN:

09:44  24   Q    About halfway down do you see a text message that you

09:44  25   sent on September 26th of 2017?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:44   1   A     Yes.

09:44   2   Q     And there you say:  "Hi, Michael.  Is there any way you

09:44   3   could make a deposit for me"?

09:44   4              Do you see that?

09:44   5   A     Yes.

09:44   6   Q     And what is his response?

09:44   7   A     "Yes.  How much?  Judy is out."

09:45   8   Q     If then if we could go to the next page, you text him

09:45   9   again that you were thinking just do 1,000 since we are so

09:45   10  close to the first of the month when I receive SIS.  What is

09:45   11  SIS?

09:45   12  A     I think that was supposed to be SSI.

09:45   13  Q     And did you generally receive SSI on the first of the

09:45   14  month?

09:45   15  A     Yeah, around the first of the month, yes.

09:45   16  Q     As with Exhibit 118, I'm not going to go through all of

09:45   17  these text messages with the defendant, but were these

09:45   18  requests typical of how you would ask the defendant for

09:45   19  deposits?

09:45   20  A     Yes.

09:45   21  Q     Would you please turn now to Exhibit 119.

09:45   22  A     (Witness complies.)  Okay.

09:45   23  Q     Do you recognize this document?

09:46   24  A     Yes.

09:46   25  Q     Are these more screenshots of text messages?

09:46   1   A     Yes, they are.

09:46   2   Q     And who are these text messages with?

09:46   3   A     Judy Regnier and Michael Avenatti.

09:46   4   Q     And is this a fair and accurate compilation of

09:46   5   screenshots of those text messages?

09:46   6   A     Yes, it is.

09:46   7             MR. WYMAN:  Your Honor, the government moves to

09:46   8   admit Exhibit 119.

09:46   9             MR. AVENATTI:  Your Honor, objection.  Hearsay,

09:46   10   authentication.

09:46   11             THE COURT:  Overruled.  119 will be received.

09:46   12             I don't see any embedded documents.  119 will be

09:47   13   received as it is.

09:47   14             (Exhibit 119 received in evidence)

09:47   15   BY MR. WYMAN:

09:47   16   Q     Focusing on page 1, it appears that these text messages

09:47   17   start on October 25th.  Do you know what year that was?

09:47   18   A     It could be, like, 2016.

09:47   19   Q     Well, let me ask.  What year did you provide these text

09:47   20   messages to the government?

09:47   21   A     2019.

09:47   22             MR. WYMAN:  Would you please blow up the bottom

09:47   23   half of this page with the last three text messages.

09:47   24   BY MR. WYMAN:

09:47   25   Q     Here you appear to be asking both of them for a

09:47   1    deposit; is that right?

09:48   2                MR. AVENATTI:  Leading.

09:48   3                MR. WYMAN:  I can have the witness read them if

09:48   4    that's preferable.

09:48   5                THE COURT:  That's fine.

09:48   6    BY MR. WYMAN:

09:48   7    Q    Mr. Johnson, could you please read these three text

09:48   8    messages that you sent to the defendant and Ms. Regnier.

09:49   9    A    "No deposit yet.  I'm going to need funds.  Can you

09:49   10   please make the deposit today?"

09:49   11               "Tuesday, November 13th:  Hi.  Can I please get a

09:49   12   deposit done today?"

09:49   13               "Tuesday, November 13th, 1:02 p.m.  I need to pay

09:49   14   my phone bill and night nurse tomorrow.  Is there any way we

09:49   15   can get this done today?"

09:49   16   Q    Then going to the next page, what did Ms. Regnier

09:49   17   respond?

09:49   18   A    "We should have this resolved by tomorrow."

09:49   19   Q    And that looks like November 13th.  And then

09:49   20   November 14th what did you say?

09:49   21   A    "Still no deposit."

09:49   22   Q    And what is the defendant's response?

09:49   23   A    "Judy, please rectify tomorrow."

09:50   24   Q    Is that typical interaction with the defendant and

09:50   25   Ms. Regnier when you needed a deposit?

54

09:50   1                    MR. AVENATTI:  Objection.  Foundation.

09:50   2                    THE COURT:  Overruled.

09:50   3                    THE WITNESS:  Yes.

09:50   4     BY MR. WYMAN:

09:50   5     Q    Continuing on this chain, the next day, November 15th,

09:50   6     what did you write back?

09:50   7     A    "Hi.  No deposit yet."

09:50   8     Q    And then later that day?

09:50   9     A    "Is there anything happening on this deposit?  I am

09:50   10    really jammed up right now."

09:50   11    Q    And then the last two text messages on that page?

09:50   12    A    "From Michael:  Yes.  Judy is handling for me.  Just

09:50   13    checked.  No deposit yet."

09:50   14    Q    Would you typically have to ask repeatedly to get a

09:50   15    deposit from the defendant?

09:50   16                    MR. AVENATTI:  Objection, Your Honor.  Foundation.

09:50   17                    THE COURT:  Overruled.

09:50   18                    THE WITNESS:  Oftentimes, yes.

09:50   19    BY MR. WYMAN:

09:50   20    Q    And generally speaking, what were you using the money

09:51   21    that he deposited for you for?

09:51   22    A    Expenses and entertainment.

09:51   23    Q    Is it fair to say general living expenses?

09:51   24    A    Yes.

09:51   25    Q    I want to shift gears a little bit.  At some point in

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:51  1    2017 did you discuss with the defendant the prospect of

09:51  2    buying a house for yourself?

09:51  3    A    Yes, I did.

09:51  4    Q    What money did you understand at that time would soon

09:51  5    be available for you to purchase the house?

09:51  6    A    The settlement money.

09:51  7    Q    And why did you understand that that money would be

09:51  8    coming soon?

09:51  9    A    Because Michael said that it just had to be -- the

09:51  10   settlement, the special-needs trust just has to be approved

09:52  11   by the County, and then the money will be there.

09:52  12   Q    Did you begin working with your real estate agent?

09:52  13   A    Yes, I did.

09:52  14   Q    What was his name?

09:52  15   A    Tom Goeders.

09:52  16   Q    Did you go out and look at houses with Mr. Goeders?

09:52  17   A    Yes, I did.

09:52  18   Q    Did you ultimately enter escrow for a house located on

09:52  19   a street called Parthenia Street?

09:52  20   A    Yes, I did.

09:52  21   Q    Did you end up closing escrow on that house?

09:52  22   A    No, I did not.

09:52  23   Q    What was your understanding of why you didn't close

09:52  24   escrow?

09:52  25   A    Well, it was complicated.  Michael said the deal was

09:52   1   going forward.  He said they were going to give more money

09:52   2   to the seller to placate them, and -- but one day I talked

09:52   3   to Tom Goeders, and he said --

09:53   4   Q    I'm going to stop you there because I don't want -- I

09:53   5   want you to just answer the question I'm asking you.  What I

09:53   6   am asking is at the end, at some point, the house purchase

09:53   7   didn't go through; is that fair?

09:53   8   A    Yes.

09:53   9   Q    And what was the ultimate reason that you understood

09:53   10  for why the house purchase didn't go through?

09:53   11  A    Oh, because the special-needs trust was not approved by

09:53   12  the County.

09:53   13  Q    During the house purchasing process, did the defendant

09:53   14  ever tell you that he would be getting a loan to purchase

09:53   15  the house?

09:53   16  A    No, he did not.

09:53   17  Q    Did he tell you that he planned to take out a loan in

09:53   18  your name?

09:53   19  A    No, he did not.

09:53   20  Q    If he was going to take out a loan in your name, would

09:53   21  you have wanted to know that?

09:53   22  A    Absolutely.

09:53   23  Q    I'm going to show you Exhibit 94.  And I'm not

09:54   24  admitting it into evidence, so if you could please not

09:54   25  describe what's in the document.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:54   1   A      Which binder?

09:54   2   Q      I'm sorry.  The first binder.  Do you see that -- I

09:54   3   will wait until you get there.

09:54   4   A      (Witness complies.)  Okay.

09:54   5   Q      Do you see that there is an e-mail and then an

09:54   6   attachment to the e-mail?

09:54   7   A      Yes, I do.

09:54   8   Q      Prior to meeting with the government, had you ever seen

09:54   9   the attachment to that e-mail before?

09:54  10   A      No.

09:54  11   Q      On page 2 there is a signature in your name dated

09:55  12   October 16th, 2017.  Is that your signature?

09:55  13   A      No, it is not.

09:55  14   Q      Is the handwriting below the signature your

09:55  15   handwriting?

09:55  16   A      No, it is not.

09:55  17   Q      Did you ever give the defendant authorization to sign a

09:55  18   letter of intent in your name for a loan to purchase a

09:55  19   house?

09:55  20   A      No, I did not.

09:55  21   Q      Please go to Exhibit 95.  Again, I'm not offering this

09:55  22   into evidence, so if you could please not describe the

09:55  23   document.  I again want you to look at the -- do you see

09:55  24   that there is an e-mail and then an attachment to that

09:55  25   e-mail?

| | | |
|---|---|---|
| 09:55 | 1 | A    Yes, I do. |
| 09:55 | 2 | Q    Prior to meeting with the government, had you ever seen |
| 09:55 | 3 | the attachment to that e-mail before? |
| 09:55 | 4 | A    No. |
| 09:56 | 5 | Q    Focusing on the bottom of the last page of that |
| 09:56 | 6 | attachment, do you see that there is a signature in your |
| 09:56 | 7 | name also dated October 16th, 2017? |
| 09:56 | 8 | A    Yes, I see it. |
| 09:56 | 9 | Q    Is that your signature? |
| 09:56 | 10 | A    No, it is not. |
| 09:56 | 11 | Q    Did you ever give the defendant authorization to sign a |
| 09:56 | 12 | loan application to purchase a house in your name? |
| 09:56 | 13 | A    No, I did not. |
| 09:56 | 14 | Q    Have you ever met someone named Marty Yeghishian? |
| 09:56 | 15 | A    No, I have not. |
| 09:56 | 16 | Q    Do you know who that is? |
| 09:56 | 17 | A    No, I don't. |
| 09:56 | 18 | Q    Prior to meeting with the government, had you ever |
| 09:56 | 19 | heard that name before? |
| 09:56 | 20 | A    No, I had not. |
| 09:56 | 21 | Q    Now, I think you said that the house purchase fell |
| 09:56 | 22 | through because the special-needs trust was not approved; is |
| 09:57 | 23 | that right? |
| 09:57 | 24 | A    Correct. |
| 09:57 | 25 | Q    Who told you that? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:57 | 1 | A    Michael Avenatti. |
| 09:57 | 2 | Q    During that conversation did he tell you that he had |
| 09:57 | 3 | received your settlement funds of $4 million almost three |
| 09:57 | 4 | years earlier? |
| 09:57 | 5 | A    No, he did not. |
| 09:57 | 6 | Q    Did he tell you that he had spent that $4 million |
| 09:57 | 7 | almost three years earlier? |
| 09:57 | 8 | A    No, he did not. |
| 09:57 | 9 | Q    After the house purchase fell through, did you continue |
| 09:57 | 10 | to rely on the defendant to pay your living expenses? |
| 09:57 | 11 | A    Yes, I did. |
| 09:57 | 12 | Q    Did that include your rent? |
| 09:57 | 13 | A    Yes, it did. |
| 09:57 | 14 | Q    Did you continue to reach out to Ms. Regnier about your |
| 09:57 | 15 | expenses on the belief that she would convey that to the |
| 09:57 | 16 | defendant? |
| 09:57 | 17 | A    Yes, I did. |
| 09:57 | 18 | Q    And I'm just going to cover a few examples with you. |
| 09:57 | 19 | Could you please look at Exhibit 103.  And this will be in |
| 09:58 | 20 | the second binder. |
| 09:58 | 21 | A    (Witness complies.)  Okay. |
| 09:58 | 22 | Q    Do you recognize this document? |
| 09:58 | 23 | A    Yes, I do. |
| 09:58 | 24 | Q    Is this an e-mail that you sent to Ms. Regnier? |
| 09:58 | 25 | A    Yes, it is. |

09:58   1   Q     Is it a fair and accurate copy of that e-mail?

09:58   2   A     Yes, it is.

09:58   3              MR. WYMAN:  Your Honor, the government offers

09:58   4   Exhibit 103.

09:58   5              MR. AVENATTI:  Objection, Your Honor.  Hearsay,

09:58   6   multiple levels.

09:59   7              THE COURT:  Overruled.  103 will be received.

09:59   8              (Exhibit 103 received in evidence)

09:59   9   BY MR. WYMAN:

09:59  10   Q     Would you please read your e-mail to Ms. Regnier for

09:59  11   the jury.

09:59  12   A     "Hi, Judy.  Michael said he would make a deposit for me

09:59  13   on last Thursday, but he wasn't able to do it.  Now I am

09:59  14   desperate to get 1,900.  Can you deposit so that it hits my

09:59  15   account today?  Thanks.  Geoff."

09:59  16   Q     What is the date of this e-mail?

09:59  17   A     August 19th, 2018.

09:59  18   Q     And when you said that you were desperate to get 1,900,

09:59  19   what did you mean by that?

09:59  20   A     I just don't remember the exact circumstances about

09:59  21   that.

09:59  22   Q     When you refer to 1,900, did you mean $1,900?

10:00  23   A     Yes.

10:00  24   Q     Could you please look now at Exhibit 106.

10:00  25   A     (Witness complies.)  Okay.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
10:00   1    Q    Is this another e-mail that you sent to Ms. Regnier and
10:00   2    also the defendant?
10:00   3    A    Yes.
10:00   4    Q    And is it a fair and accurate copy of that e-mail?
10:00   5    A    Yes, it is.
10:00   6          MR. WYMAN:  Your Honor, the government moves to
10:00   7    admit Exhibit 106.
10:00   8          MR. AVENATTI:  Objection, Your Honor.  Hearsay.
10:00   9          THE COURT:  Overruled.  Exhibit 106 will be
10:00   10   received.
10:00   11         (Exhibit 106 received in evidence)
10:00   12         MR. WYMAN:  Thank you, Your Honor.
10:00   13         If you could pull up the second paragraph -- or
10:01   14   the first full paragraph.
10:01   15   BY MR. WYMAN:
10:01   16   Q    Could you please read the first sentence there.
10:01   17   A    "I am putting my four requests into one e-mail so it
10:01   18   will be easier to handle them."
10:01   19   Q    I'm sorry -- and also the second sentence.
10:01   20   A    "With the exception of the request for a deposit on
10:01   21   this Thursday, all these items are very overdue."
10:01   22   Q    What did you mean by overdue?
10:01   23   A    I had raised them before and they hadn't been handled.
10:01   24   Q    Who had you raised them with?
10:01   25   A    Judy and Michael.
```

62

| | | |
|---|---|---|
| 10:01 | 1 | Q    The next paragraph starting with item one says: |
| 10:02 | 2 | "Please send a check to my landlord for August and September |
| 10:02 | 3 | rent and other related expenses which I have detailed in |
| 10:02 | 4 | previous e-mails."  This e-mail was from September 12th of |
| 10:02 | 5 | 2018.  Were you about two months behind in rent? |
| 10:02 | 6 | A    Yes. |
| 10:02 | 7 | MR. WYMAN:  If we could pull up item three, |
| 10:02 | 8 | please. |
| 10:02 | 9 | BY MR. WYMAN: |
| 10:02 | 10 | Q    Can you please read that paragraph. |
| 10:02 | 11 | A    Item three:  "Please send a check made out to my |
| 10:02 | 12 | sister, Ruth Ann Johnson, in the amount of $7,000.  This is |
| 10:02 | 13 | for my dad's hearing aides.  This item has already been |
| 10:02 | 14 | approved by Michael.  Please mail this check to Ruth Ann |
| 10:02 | 15 | Johnson." |
| 10:02 | 16 | Q    Who is Ruth Johnson? |
| 10:02 | 17 | A    My sister. |
| 10:02 | 18 | Q    Did the defendant ever pay for your father's hearing |
| 10:03 | 19 | aides? |
| 10:03 | 20 | A    No. |
| 10:03 | 21 | Q    If you would turn now to Exhibit 111. |
| 10:03 | 22 | A    (Witness complies.)  Okay. |
| 10:03 | 23 | Q    Do you recognize this e-mail? |
| 10:03 | 24 | A    Yes. |
| 10:03 | 25 | Q    Is it a fair and accurate copy of the e-mail that you |

| | | |
|---|---|---|
| 10:03 | 1 | sent to Ms. Regnier? |
| 10:03 | 2 | A    Yes, it is. |
| 10:03 | 3 |         MR. WYMAN:  Your Honor, the government moves to |
| 10:03 | 4 | admit Exhibit 111. |
| 10:03 | 5 |         MR. AVENATTI:  Objection, Your Honor.  Hearsay. |
| 10:03 | 6 |         THE COURT:  Overruled.  111 will be received. |
| 10:03 | 7 |         (Exhibit 111 received in evidence) |
| 10:03 | 8 |         MR. WYMAN:  If we could pull up the text of the |
| 10:03 | 9 | e-mail. |
| 10:03 | 10 | BY MR. WYMAN: |
| 10:03 | 11 | Q    Mr. Johnson, I'm sorry the screens are far away.  Do |
| 10:04 | 12 | you mind reading the next e-mail for the jury. |
| 10:04 | 13 | A    Okay.  "Hi, Judy.  Hope you are well.  I have some |
| 10:04 | 14 | dental work I'm having done on Tuesday of next week.  The |
| 10:04 | 15 | total cost is $1,560.  Does Michael still have a firm credit |
| 10:04 | 16 | card that can be used?  I only have $200 right now, so I |
| 10:04 | 17 | can't cover it myself.  Also, can you please make a deposit |
| 10:04 | 18 | of 1,900 into my account on Tuesday?  Thanks, Judy.  Geoff." |
| 10:04 | 19 | Q    What is the date of this e-mail? |
| 10:04 | 20 | A    January 3rd, 2019. |
| 10:04 | 21 | Q    So as of January 2019 are you still relying on the |
| 10:04 | 22 | defendant for your basic living expenses? |
| 10:04 | 23 | A    Yes. |
| 10:04 | 24 | Q    You testified a minute ago that one of those living |
| 10:05 | 25 | expenses that you relied on the defendant for was your rent; |

64

| | | |
|---|---|---|
| 10:05 | 1 | is that right? |
| 10:05 | 2 | A    Yes. |
| 10:05 | 3 | Q    Did he always pay your rents on time? |
| 10:05 | 4 | A    No. |
| 10:05 | 5 | Q    Would you please take a look back at Exhibit 119, which |
| 10:05 | 6 | is already in evidence.  The first text on page 1 from |
| 10:05 | 7 | October 25th, can you please read that. |
| 10:05 | 8 | A    "Talked with Joe again today.  I promised him it would |
| 10:05 | 9 | be here tomorrow.  Can we FedEx to me if rent hasn't gone |
| 10:05 | 10 | out?" |
| 10:05 | 11 | Q    Who is Joe? |
| 10:05 | 12 | A    Joe is my landlord. |
| 10:05 | 13 | Q    Let's go now to page 4 in the middle there, the second |
| 10:06 | 14 | text from the top.  We are now at November 28.  Can you |
| 10:06 | 15 | please read your text there. |
| 10:06 | 16 | A    "Wednesday, November 28:  Did rent go out yesterday?  I |
| 10:06 | 17 | have not gotten FedEx." |
| 10:06 | 18 | Q    And then the next text from the same day. |
| 10:06 | 19 | A    "Wednesday, November 28:  Can somebody let me know what |
| 10:06 | 20 | is going on?  I need to make more excuses to Joe.  I need to |
| 10:06 | 21 | know what to tell him." |
| 10:06 | 22 | Q    What did you mean by that, by making excuses to Joe? |
| 10:06 | 23 | A    Well, he was anxious to get the money, so I had to tell |
| 10:06 | 24 | him, you know, it's coming.  It was just sent to me.  I had |
| 10:07 | 25 | to have something to say to him. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | | |
|---|---|---|---|
| 10:07 | 1 | Q | How long did your rent go unpaid approximately? |
| 10:07 | 2 | A | Six months. |
| 10:07 | 3 | Q | Were you concerned about that? |
| 10:07 | 4 | A | Yes, I was. |
| 10:07 | 5 | Q | What were you concerned would happen? |
| 10:07 | 6 | A | I was concerned that I might get evicted.  He sent me a |
| 10:07 | 7 | | letter saying that that might happen. |
| 10:07 | 8 | Q | Were you ultimately able to stay in your home? |
| 10:07 | 9 | A | Yes, I was. |
| 10:07 | 10 | Q | You testified earlier that you were receiving |
| 10:07 | 11 | | supplemental security income.  Do you recall approximately |
| 10:07 | 12 | | when you started receiving SSI? |
| 10:07 | 13 | A | It was toward the end of my stay at CareMeridian.  So, |
| 10:07 | 14 | | December of 2012. |
| 10:08 | 15 | Q | As part of the process for obtaining and then |
| 10:08 | 16 | | maintaining SSI benefits, were you required to submit |
| 10:08 | 17 | | certain documents to the Social Security Administration? |
| 10:08 | 18 | A | Yes, I was. |
| 10:08 | 19 | Q | Did the defendant offer to help you in submitting these |
| 10:08 | 20 | | documents to Social Security? |
| 10:08 | 21 | A | Yes, he did. |
| 10:08 | 22 | Q | And did you agree to have the defendant help you in |
| 10:08 | 23 | | that process? |
| 10:08 | 24 | A | Yes, I did. |
| 10:08 | 25 | Q | Were the SSI benefits important to you? |

| | | |
|---|---|---|
| 10:08 | 1 | A    Yes, they were. |
| 10:08 | 2 | Q    Did you trust that the defendant would make sure that |
| 10:08 | 3 | you kept those benefits? |
| 10:08 | 4 | A    Yes, I did. |
| 10:08 | 5 | Q    Once you started receiving SSI benefits, would you |
| 10:08 | 6 | periodically receive letters from Social Security? |
| 10:08 | 7 | A    Yes. |
| 10:08 | 8 | Q    And when you received those letters, what would you do |
| 10:08 | 9 | with them? |
| 10:08 | 10 | A    I typically, if I had a concern about what was |
| 10:09 | 11 | contained in the letter, they were asking for a document, |
| 10:09 | 12 | whatever, I would send it to Judy, who would then send it to |
| 10:09 | 13 | Michael. |
| 10:09 | 14 | Q    And what was your expectation of what the defendant |
| 10:09 | 15 | would do with it? |
| 10:09 | 16 | A    Well, he always said he would handle it. |
| 10:09 | 17 | Q    Now, you said you started receiving these benefits in |
| 10:09 | 18 | 2012.  Did you continue to receive them through 2018? |
| 10:09 | 19 | A    Yes. |
| 10:09 | 20 | Q    At some point did you lose your SSI benefits? |
| 10:09 | 21 | A    Yes, I did. |
| 10:09 | 22 | Q    Would you please turn to Exhibit 108. |
| 10:09 | 23 | A    (Witness complies.) |
| 10:10 | 24 | Q    Do you recognize this document? |
| 10:10 | 25 | A    Yes, I do. |

| | | |
|---|---|---|
| 10:10 | 1 | Q    What is it? |
| 10:10 | 2 | A    It's a letter from the Social Security Administration. |
| 10:10 | 3 | Q    And is it a fair and accurate copy of that letter? |
| 10:10 | 4 | A    Yes, it is. |
| 10:10 | 5 | Q    And is this a letter that you received personally? |
| 10:10 | 6 | A    Yes, it is. |
| 10:10 | 7 | Q    Did you text a copy of this letter to the defendant and |
| 10:10 | 8 | Ms. Regnier? |
| 10:10 | 9 | A    Yes. |
| 10:10 | 10 | MR. WYMAN:  Your Honor, the government moves to |
| 10:10 | 11 | admit Exhibit 108. |
| 10:10 | 12 | MR. AVENATTI:  Objection, Your Honor.  Hearsay. |
| 10:10 | 13 | THE COURT:  It will be received but not for the |
| 10:10 | 14 | truth of the content, namely, that Mr. Johnson received it |
| 10:10 | 15 | and that it was communicated to Mr. Avenatti, but not for |
| 10:11 | 16 | the truth of what the letter says. |
| 10:11 | 17 | (Exhibit 108 received in evidence) |
| 10:11 | 18 | MR. WYMAN:  Thank you, Your Honor. |
| 10:11 | 19 | If we could please pull up the first paragraph. |
| 10:11 | 20 | BY MR. WYMAN: |
| 10:11 | 21 | Q    The first line there says:  "On November 1st, 2018, you |
| 10:11 | 22 | talked to me concerning your redetermination." |
| 10:11 | 23 | Do you recall having a conversation around this |
| 10:11 | 24 | time with someone at Social Security? |
| 10:11 | 25 | A    Yes. |

| | | |
|---|---|---|
| 10:11 | 1 | Q    And the reference to redetermination, what was your |
| 10:11 | 2 | understanding of what that meant? |
| 10:11 | 3 | A    Well, every year they would conduct an evaluation to |
| 10:11 | 4 | see if you still qualified for SSI. |
| 10:11 | 5 | Q    Could you please turn to page 2. |
| 10:11 | 6 | A    (Witness complies.) |
| 10:11 | 7 | Q    Do you see the heading at the very top that says, |
| 10:11 | 8 | things we need? |
| 10:11 | 9 | A    Yes. |
| 10:11 | 10 |        MR. WYMAN:  And then there is a few bullets below |
| 10:12 | 11 | that.  Can you please pull those up. |
| 10:12 | 12 | BY MR. WYMAN: |
| 10:12 | 13 | Q    Are these documents that Social Security was requesting |
| 10:12 | 14 | from you? |
| 10:12 | 15 | A    Yes, they are. |
| 10:12 | 16 | Q    Could you please read those documents. |
| 10:12 | 17 | A    "New rental agreement.  Court settlement award letter |
| 10:12 | 18 | from L.A. County.  Disbursements from settlement since |
| 10:12 | 19 | October 2016.  Verification that trust has or has not been |
| 10:12 | 20 | established.  Letter from attorney about monthly loan |
| 10:12 | 21 | amounts from October 2016 to the present." |
| 10:12 | 22 | Q    The reference to "verification that trust has or has |
| 10:12 | 23 | not been established," what trust did you understand that to |
| 10:12 | 24 | be a reference to? |
| 10:12 | 25 | A    My special-needs trust. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:13 | 1 | Q   Do you see on page 2 that there are two portions that |
| 10:13 | 2 | are circled in green? |
| 10:13 | 3 | A   Yes. |
| 10:13 | 4 | Q   The first paragraph that is circled in green, can you |
| 10:13 | 5 | please read that. |
| 10:13 | 6 | A   "We may stop your SSI if you do not respond to this |
| 10:13 | 7 | request or contact us by December 3rd, 2019, to tell us why. |
| 10:13 | 8 | If we stop your SSI, you could also lose any Medicaid based |
| 10:13 | 9 | on SSI you have now." |
| 10:13 | 10 | Q   And then the second circled portion which is below the |
| 10:13 | 11 | words, if you have any questions, can you please read the |
| 10:14 | 12 | sentence starting with, "If you call or visit"? |
| 10:14 | 13 | A   "If you call or visit our office, please have this |
| 10:14 | 14 | notice with you and ask for Ms. Guerrero.  The address and |
| 10:14 | 15 | telephone number are shown at the top of this notice." |
| 10:14 | 16 | Q   I think you said earlier you sent this via text to the |
| 10:14 | 17 | defendant and Ms. Regnier? |
| 10:14 | 18 | A   Yes. |
| 10:14 | 19 | Q   After that did you talk to the defendant about it? |
| 10:14 | 20 | A   Yes, I did. |
| 10:14 | 21 | Q   What did he tell you? |
| 10:14 | 22 | A   He said they were going to handle it.  It's no problem. |
| 10:14 | 23 | It's just documents that they need, and he will take care of |
| 10:14 | 24 | it. |
| 10:14 | 25 | Q   Did you expect that he would take care of it? |

| | | |
|---|---|---|
| 10:14 | 1 | A    Yes, I did. |
| 10:15 | 2 | Q    Let me turn back now to Exhibit 119 on page 4 of that |
| 10:15 | 3 | exhibit. |
| 10:15 | 4 | A    Okay. |
| 10:15 | 5 | Q    Do you see the second from the bottom text starting |
| 10:15 | 6 | with:  "Hello.  Two things"? |
| 10:15 | 7 | A    Yes, I do. |
| 10:15 | 8 | Q    What does that text say? |
| 10:15 | 9 | A    "Hello.  Two things.  One, did FedEx go out?  Two, have |
| 10:15 | 10 | we sent out the SSI documents?  I think they are due |
| 10:15 | 11 | Monday." |
| 10:15 | 12 | Q    And what is the date of the text? |
| 10:15 | 13 | A    Friday, November 30th. |
| 10:15 | 14 | Q    So approximately 29 days after that letter we just |
| 10:15 | 15 | reviewed? |
| 10:15 | 16 | A    Yes. |
| 10:16 | 17 | Q    The next text message is at the top of page 5.  It |
| 10:16 | 18 | looks like that one is dated January 21st.  Can you please |
| 10:16 | 19 | read that text message. |
| 10:16 | 20 | A    "Hi, Judy and Michael.  I received a letter from SSI on |
| 10:16 | 21 | Saturday.  They have stopped my SSI as of February because |
| 10:16 | 22 | they did not receive requested documents.  I will text the |
| 10:16 | 23 | letter to Judy as soon as I get up in my chair." |
| 10:16 | 24 | Q    And what is the defendant's response? |
| 10:16 | 25 | A    "This is an error.  We will fix it forthwith.  Don't |

10:16  1   worry."

10:16  2   Q    Do you know if the defendant ever responded to Social

10:16  3   Security with the documents requested in that letter?

10:16  4   A    I don't know.

10:16  5   Q    Do you know if he ever responded to them at all?

10:17  6   A    I don't know.

10:17  7   Q    What happened to your SSI benefits?

10:17  8   A    They were stopped.

10:17  9   Q    Were you ever able to resume your --

10:17  10         (Government counsel conferring)

10:17  11  BY MR. WYMAN:

10:17  12  Q    To your knowledge did the defendant ever fix the

10:17  13  problem with Social Security?

10:17  14  A    Not to my knowledge.

10:17  15  Q    I want to fast-forward now to Friday, March 22nd, 2019.

10:17  16         Did you receive a phone call from the defendant

10:17  17  that day?

10:17  18  A    Yes.

10:17  19  Q    What did he tell you on that phone call?

10:17  20  A    He said he wanted to come by and visit me.  He said

10:18  21  that there had -- the settlement came through, the

10:18  22  special-needs trust was approved, and I could get my money.

10:18  23  Q    Did he come to visit you that day?

10:18  24  A    Friday, yes.

10:18  25  Q    Prior to that visit on March 2nd, 2019, when was the

| | | |
|---|---|---|
| 10:18 | 1 | last time you had seen the defendant in person? |
| 10:18 | 2 | A    It had been a long time, maybe like a year. |
| 10:18 | 3 | Q    When he arrived at your house, what did he say? |
| 10:18 | 4 | A    He said he was very happy.  He said I looked good.  He |
| 10:18 | 5 | said that I was going to get the money, and I was very |
| 10:19 | 6 | excited. |
| 10:19 | 7 | Q    In that conversation did the defendant tell you that he |
| 10:19 | 8 | had just been accused in a public -- |
| 10:19 | 9 | MR. AVENATTI:  Objection, Your Honor.  Foundation, |
| 10:19 | 10 | leading, improper. |
| 10:19 | 11 | THE COURT:  Overruled. |
| 10:19 | 12 | BY MR. WYMAN: |
| 10:19 | 13 | Q    During that conversation on March 22nd, 2019, at your |
| 10:19 | 14 | home, did the defendant tell you that he had just been |
| 10:19 | 15 | accused in a court proceeding that day of stealing your |
| 10:19 | 16 | settlement funds? |
| 10:19 | 17 | A    No, he did not. |
| 10:19 | 18 | Q    After he left your home on March 22nd, did he return |
| 10:19 | 19 | shortly thereafter? |
| 10:19 | 20 | A    Yes. |
| 10:19 | 21 | Q    When? |
| 10:19 | 22 | A    The next day. |
| 10:19 | 23 | Q    March 23rd? |
| 10:19 | 24 | A    Yes. |
| 10:19 | 25 | Q    Did he have any documents with him that day? |

10:19  1    A    Yes.

10:19  2    Q    What do you remember about the documents that he had?

10:19  3    A    There were two documents.  One was a document saying

10:19  4    that he had done a great job for me.  He wanted me to sign,

10:20  5    like, a referral for him.  It said, you know, Michael had

10:20  6    done a great job for me and I was grateful, et cetera, et

10:20  7    cetera.

10:20  8           The other one was the document that he presented

10:20  9    it as the release from liability for the County so that once

10:20  10   I got my money, there would be no more liability for the

10:20  11   County.

10:20  12   Q    Did he ask you to sign these documents?

10:20  13   A    Yes, he did.

10:20  14   Q    And did you sign them?

10:20  15   A    Yes, I did.

10:20  16   Q    Did you sign them right there with the defendant?

10:20  17   A    Yes, I did.

10:20  18   Q    Can you please look at Exhibit 121.

10:20  19   A    (Witness complies.)  Okay.

10:21  20   Q    Is this one of the documents he had with him that day?

10:21  21   A    Yes, it is.

10:21  22   Q    Is that your signature?

10:21  23   A    Yes, it is.

10:21  24          MR. WYMAN:  Your Honor, the government moves to

10:21  25   admit Exhibit 121.

10:21  1           MR. AVENATTI:  No objection.

10:21  2           THE COURT:  121 will be received.

10:21  3           (Exhibit 121 received in evidence)

10:21  4  BY MR. WYMAN:

10:21  5  Q    What is the title of this document?

10:21  6  A    "Client Testimonial Approval."

10:21  7  Q    And the first paragraph, can you please read that.

10:21  8  A    "I, Geoffrey Johnson, approve the following client

10:21  9  testimonial and authorize Michael Avenatti, Esquire, to use

10:21  10  it in connection with his marketing/media efforts."

10:22  11  Q    I'm sorry to ask this, but can you please read the next

10:22  12  paragraph.

10:22  13  A    When I first met Michael, I was in a very bad place and

10:22  14  desperately needed an attorney to help me.  Michael

10:22  15  immediately stepped up.  He has always fiercely advocated on

10:22  16  my behalf, looked after my needs, communicated with me about

10:22  17  all aspects of my case, and made sure I was taken care of.

10:22  18  He is an exceptional, honest, and ethical attorney, and I

10:22  19  feel fortunate to have had him represent me.

10:22  20  Q    At the time that you signed this document, did you know

10:22  21  that the defendant had reached a final settlement on your

10:22  22  behalf for $4 million over four years earlier?

10:22  23  A    No, I did not.

10:22  24  Q    Did you know that L.A. County had made paid your

10:22  25  settlement of $4 million over four years earlier?

75

| | | |
|---|---|---|
| 10:22 | 1 | A    No, I did not. |
| 10:22 | 2 | Q    Did you know that the defendant had spent your |
| 10:23 | 3 | $4 million from the settlement four years earlier? |
| 10:23 | 4 | A    No, I did not. |
| 10:23 | 5 | Q    Had you known all that, would you have signed this |
| 10:23 | 6 | document? |
| 10:23 | 7 | A    Certainly not. |
| 10:23 | 8 | Q    Would you please now turn to Exhibit 122. |
| 10:23 | 9 | A    (Witness complies.)  Okay. |
| 10:23 | 10 | Q    Is this the other document that he had with him that |
| 10:23 | 11 | you described? |
| 10:23 | 12 | A    Yes, it is. |
| 10:23 | 13 | Q    And is this a fair and accurate copy of that document? |
| 10:23 | 14 | A    Yes, it is. |
| 10:23 | 15 | MR. WYMAN:  Your Honor, the government moves to |
| 10:23 | 16 | admit Exhibit 122. |
| 10:23 | 17 | MR. AVENATTI:  No objection. |
| 10:23 | 18 | THE COURT:  122 will be received. |
| 10:23 | 19 | (Exhibit 122 received in evidence) |
| 10:23 | 20 | BY MR. WYMAN: |
| 10:23 | 21 | Q    Would you please go to page 5, which is the last page |
| 10:23 | 22 | of this exhibit. |
| 10:23 | 23 | A    (Witness complies.) |
| 10:23 | 24 | Q    Is that your signature on this page? |
| 10:23 | 25 | A    Yes, it is. |

10:24  1   Q    And the other signature, do you know whose signature
10:24  2   that is?
10:24  3   A    It appears to be Michael Avenatti.
10:24  4   Q    Returning to the first page, what is the title of this
10:24  5   document?
10:24  6   A    General release settlement agreement and acknowledgment
10:24  7   of accounting.
10:24  8   Q    And is this the document you were describing earlier
10:24  9   that the defendant presented as a release of liability to
10:24  10  the County?
10:24  11  A    Yes.
10:24  12  Q    Can you please read the first paragraph.
10:24  13  A    "This general release, settlement agreement, and
10:25  14  acknowledgment of accounting, this agreement, dated and
10:25  15  effective as of this 23rd day of March 2019, is made and
10:25  16  entered into by, between, and among Geoffrey Johnson on the
10:25  17  one hand, Johnson, and Michael J. Avenatti, Esquire, and
10:25  18  Avenatti & Associates, APC, on the other hand, collectively
10:25  19  counsel, each a party and collectively the parties."
10:25  20  Q    Is L.A. County mentioned in that paragraph?
10:25  21  A    No.
10:25  22  Q    Did the defendant explain to you this was an agreement
10:25  23  you were making with him and one of his law firms?
10:25  24  A    No, he did not.
10:25  25            MR. WYMAN:  If we could please pull up paragraph

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:25  1    1.1.

10:25  2    BY MR. WYMAN:

10:25  3    Q    Can you please read the sentence -- the second sentence

10:25  4    starting with "Counsel has successfully."

10:26  5    A    "Counsel has successfully and ethically represented

10:26  6    Johnson.  Johnson has previously received significant monies

10:26  7    from Counsel per his direction, and Counsel has advanced

10:26  8    significant out-of-pocket costs and expenses on behalf of

10:26  9    Johnson."

10:26  10   Q    Did you understand what that meant when you signed this

10:26  11   document?

10:26  12   A    That he had spent money on me during the course of

10:26  13   advocating.

10:26  14   Q    Can you please read the next sentence.

10:26  15   A    "In full and final settlement of all of Johnson's

10:26  16   claims released pursuant to Paragraph 4 below, Johnson has

10:26  17   agreed to accept the additional sum of $1,911,381.30 on the

10:27  18   following terms:  Johnson, or his designee or beneficiary as

10:27  19   directed by Johnson in writing, shall be paid $10,618.79 per

10:27  20   month, on the first of each month, for a period of 180

10:27  21   months, to a bank account designated by Johnson."

10:27  22   Q    Did the defendant explain this paragraph to you?

10:27  23   A    I don't recall him explaining this paragraph to me.

10:27  24   Q    In the middle of this paragraph, it states:  "In full

10:28  25   and final settlement of all of Johnson's claims released

```
10:28    1    pursuant to paragraph 4 below."
10:28    2            MR. WYMAN:  Would you please pull up paragraph
10:28    3    4.1, which I believe is on page 2.
10:28    4    BY MR. WYMAN:
10:28    5    Q    The paragraph appears to be saying --
10:28    6            MR. AVENATTI:  Objection, Your Honor.  Reading
10:28    7    from the document.  Foundation.
10:28    8            MR. WYMAN:  I can have the witness read the full
10:28    9    paragraph.
10:28   10            THE COURT:  That's fine.
10:28   11    BY MR. WYMAN:
10:28   12    Q    Mr. Johnson, will you please read paragraph 4.1.
10:28   13    A    "General Release.  Johnson, on behalf of himself and on
10:29   14    behalf of his agents, firms, attorneys, partners, employees,
10:29   15    representatives, successors, and assigns, hereby forever
10:29   16    releases and discharges each of the other Parties to this
10:29   17    Agreement, the County of Los Angeles, and the Sheriff's'
10:29   18    Department and each of the other Party's current and former
10:29   19    agents, partners, employees, representatives, counsel, law
10:29   20    firms, including but not limited to Eagan Avenatti, LLP,
10:29   21    joint venturers, officers, directors, insurers, attorneys,
10:29   22    and parent, subsidiary and affiliated companies and
10:29   23    entities, from any and all present, future, liquidated,
10:29   24    unliquidated, matured, unmatured, related, unrelated, filed,
10:29   25    unfiled, known, unknown, contingent and non-contingent
```

| | | |
|---|---|---|
| 10:29 | 1 | claims, complaints, lawsuits, demands, debts, liabilities, |
| 10:30 | 2 | accounts, obligations, contracts, costs, expenses, liens, |
| 10:30 | 3 | actions, causes of action (at law, in equity, or otherwise), |
| 10:30 | 4 | rights, rights of action, rights of indemnity (legal or |
| 10:30 | 5 | equitable), rights to subrogation, rights to contribution |
| 10:30 | 6 | and remedies of any nature whatsoever (except for those |
| 10:30 | 7 | arising as a result of the duties imposed by this Agreement |
| 10:30 | 8 | and/or a breach of any provision of this Agreement.  For the |
| 10:30 | 9 | avoidance of all doubt, it is the express intention of the |
| 10:30 | 10 | Parties that this release and discharge be given the |
| 10:30 | 11 | absolute broadest scope, construction, interpretation, and |
| 10:30 | 12 | application, and that any and all disputes relating to the |
| 10:30 | 13 | scope of this release and discharge be decided in favor of |
| 10:31 | 14 | inclusion." |
| 10:31 | 15 | Q    Thank you. |
| 10:31 | 16 |       Did you understand when you signed this that the |
| 10:31 | 17 | only parties to this agreement were you and the defendant |
| 10:31 | 18 | and one of his law firms? |
| 10:31 | 19 | A    No, I did not. |
| 10:31 | 20 | Q    Did you understand that this agreement purported to |
| 10:31 | 21 | release any claims that you have against the defendant? |
| 10:31 | 22 | A    No, I did not. |
| 10:31 | 23 | Q    Based on what the defendant told you, what did you |
| 10:31 | 24 | understand this agreement was for? |
| 10:31 | 25 | A    It was to say that the County was held no longer liable |

| | | |
|---|---|---|
| 10:31 | 1 | now that I was getting my money. |
| 10:31 | 2 | MR. WYMAN:  And lastly on this document, would you |
| 10:31 | 3 | please pull up paragraph 5.12, which is on page 4. |
| 10:31 | 4 | BY MR. WYMAN: |
| 10:31 | 5 | Q    Would you please read that paragraph. |
| 10:32 | 6 | A    "Each party expressly acknowledges that they have been |
| 10:32 | 7 | represented by competent independent counsel in connection |
| 10:32 | 8 | with entering this agreement and have entered into this |
| 10:32 | 9 | agreement only after having a fair and adequate opportunity |
| 10:32 | 10 | to review the agreement with independent counsel of their |
| 10:32 | 11 | choosing." |
| 10:32 | 12 | Q    Did you have another attorney look at this document |
| 10:32 | 13 | with you? |
| 10:32 | 14 | A    No, I did not. |
| 10:32 | 15 | Q    Did you have anyone look at it before you signed it? |
| 10:32 | 16 | A    No, I did not. |
| 10:32 | 17 | Q    Did you sign it right when the defendant presented it |
| 10:32 | 18 | to you? |
| 10:32 | 19 | A    Yes, I did. |
| 10:32 | 20 | Q    Why did you do that? |
| 10:32 | 21 | A    Because I trusted Michael.  I trusted him with |
| 10:32 | 22 | everything.  He helped get me out of jail.  He got a |
| 10:32 | 23 | settlement for me.  I trusted him. |
| 10:32 | 24 | Q    Just a few final questions for you, Mr. Johnson. |
| 10:33 | 25 | THE COURT:  Before we do that, I think we'll take |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:33  1    the mid-morning break here, ladies and gentlemen.  We will

10:33  2    be recess for 15 minutes.  Please remember the admonition

10:33  3    not to discuss the case with anyone and not to form any

10:33  4    opinions on the issues in the case until it is submitted to

10:33  5    you.  And please don't do any research.

10:33  6              So, 15 minutes, please.

10:33  7              (Jury not present)

10:33  8              THE COURT:  We will be in recess.

10:33  9                   (Recess taken at 10:33 a.m.;

10:33  10                   proceedings resumed at 10:51 a.m.)

10:33  11                   (Jury present)

10:51  12              THE COURT:  Mr. Wyman.

10:51  13              MR. WYMAN:  Thank you, Your Honor.

10:51  14    BY MR. WYMAN:

10:51  15    Q    Mr. Johnson, just a few final questions on Exhibit 122.

10:51  16    I have up on the screen paragraph 1.1, which appears to have

10:51  17    initials next to it.  Are those your initials?

10:51  18    A    Yes, they are.

10:51  19    Q    Do you see that some of the paragraphs in this

10:51  20    agreement are initialed and some are not?

10:51  21    A    Yes.

10:51  22    Q    Why did you initial some paragraphs but not the others?

10:52  23    A    Michael just said:  Judy is going to kill me unless I

10:52  24    get these initials on these paragraphs.  And he just pointed

10:52  25    to which ones I would initial, so I initialed them.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

82

10:52  1   Q    Before you initialed them, did the defendant explain

10:52  2   those paragraphs to you?

10:52  3   A    No, he did not.

10:52  4   Q    Focusing on paragraph 1.1, which is the paragraph where

10:52  5   it says, "Johnson has agreed to accept the additional sum of

10:52  6   approximately 1.9 million under the following terms, "did

10:52  7   you understand at that point that you were owed

10:52  8   approximately 1.9 million in settlement funds?

10:52  9   A    Yes, I did.

10:52  10  Q    Did the defendant explain to you that because of his

10:52  11  attorney fees and costs and the amount of money he had

10:53  12  advanced to you, that you were actually entitled to zero

10:53  13  money?

10:53  14  A    No, he did not.

10:53  15  Q    Since you signed this agreement, has the defendant ever

10:53  16  paid you any money?

10:53  17  A    No.

10:53  18  Q    A few final questions for you.  Did you ever authorize

10:53  19  the defendant to use your settlement funds for himself?

10:53  20  A    No, I did not.

10:53  21  Q    Did you ever authorize the defendant to use your

10:53  22  settlement funds for his businesses?

10:53  23  A    No, I did not.

10:53  24  Q    Did you ever authorize him to use your settlement funds

10:53  25  to pay payroll for his law firm?

83

| | | |
|---|---|---|
| 10:53 | 1 | A    No, I did not. |
| 10:53 | 2 | Q    Did you ever authorize the defendant to use your |
| 10:53 | 3 | settlement funds for anything other than paying you what you |
| 10:54 | 4 | were owed? |
| 10:54 | 5 | A    No, I did not. |
| 10:54 | 6 | Q    Did the defendant ever pay you your settlement money? |
| 10:54 | 7 | A    No, he did not. |
| 10:54 | 8 | MR. WYMAN:  One moment, Your Honor. |
| 10:54 | 9 | (Government counsel conferring) |
| 10:54 | 10 | MR. WYMAN:  Nothing further.  Thank you. |
| 10:54 | 11 | THE COURT:  Mr. Avenatti. |
| 10:54 | 12 | CROSS-EXAMINATION |
| 10:54 | 13 | BY MR. AVENATTI: |
| 10:54 | 14 | Q    Good morning, Mr. Johnson. |
| 10:54 | 15 | A    Good morning. |
| 10:55 | 16 | Q    How did we meet? |
| 10:55 | 17 | A    You came to the Twin Towers jail. |
| 10:55 | 18 | Q    Please tell the jury what the Twin Towers are. |
| 10:55 | 19 | A    The Twin Towers are the jail for mentally ill people. |
| 10:55 | 20 | Q    And what were the circumstances of us first meeting? |
| 10:55 | 21 | A    I had jumped off of the -- |
| 10:55 | 22 | MR. WYMAN:  Objection, Your Honor.  This is |
| 10:55 | 23 | entirely beyond the scope and leading. |
| 10:55 | 24 | MR. AVENATTI:  Your Honor, I would like the |
| 10:55 | 25 | witness to be able to finish his answer.  I just asked what |

84

10:56  1    the circumstances were.

10:56  2          MR. WYMAN:  It's a broad question.

10:56  3          THE COURT:  Narrow the question.  Restate the

10:56  4    question.

10:56  5    BY MR. AVENATTI:

10:56  6    Q    Sir, can you describe for the jury the circumstances

10:56  7    surrounding you and I first meeting at the Twin Towers jail.

10:56  8          MR. WYMAN:  It's the same question, Your Honor.

10:56  9    Same objection.

10:56  10          THE COURT:  Mr. Avenatti, it's a leading line of

10:56  11    questioning.

10:56  12    BY MR. AVENATTI:

10:56  13    Q    Mr. Johnson, when you and I first met, you had been in

10:56  14    jail for quite a long time; is that right?

10:56  15    A    Yes.

10:56  16    Q    How long had you been in jail?

10:56  17    A    I'm sorry.  I don't recall exactly.  Maybe eight

10:56  18    months, seven months.

10:56  19    Q    And you had been denied bail, right?

10:57  20          MR. WYMAN:  Objection.  Relevance and the Court's

10:57  21    prior ruling.

10:57  22          THE COURT:  Sustained.

10:57  23    BY MR. AVENATTI:

10:57  24    Q    At the time you and I first met, you were represented

10:57  25    by a public defender; is that right?

| | | |
|---|---|---|
| 10:57 | 1 | MR. WYMAN:  Objection.  Relevance. |
| 10:57 | 2 | THE COURT:  Sustained. |
| 10:57 | 3 | MR. AVENATTI:  Your Honor, it goes to Mr. Beada. |
| 10:57 | 4 | They opened the door relating to Mr. Beada. |
| 10:57 | 5 | THE COURT:  I understood it was a private |
| 10:57 | 6 | attorney.  Am I correct? |
| 10:57 | 7 | MR. AVENATTI:  Yes, Your Honor.  That's the point. |
| 10:57 | 8 | Let me see if I can ask a better question. |
| 10:57 | 9 | BY MR. AVENATTI: |
| 10:57 | 10 | Q    Mr. Johnson, do you recall that a member of your family |
| 10:57 | 11 | had reached out to me and asked me if I would go meet with |
| 10:57 | 12 | you at the jail? |
| 10:57 | 13 | A    I believe my parents did. |
| 10:57 | 14 | Q    And in particular your father Philip, right? |
| 10:58 | 15 | A    I understood it to be both of them. |
| 10:58 | 16 | Q    And can you please tell the jury the name of your |
| 10:58 | 17 | mother and your father, just their first names. |
| 10:58 | 18 | MR. WYMAN:  Objection.  Relevance. |
| 10:58 | 19 | THE COURT:  Overruled. |
| 10:58 | 20 | THE WITNESS:  Philip and Sandy. |
| 10:58 | 21 | BY MR. AVENATTI: |
| 10:58 | 22 | Q    And then you have a sister by the name of Ruth; is that |
| 10:58 | 23 | right? |
| 10:58 | 24 | A    That's right. |
| 10:58 | 25 | Q    And around this time period that we met for the first |

86

10:58  1    time -- well, strike that.  When did we meet for the first

10:58  2    time?

10:58  3    A    I guess 2011.

10:58  4    Q    And when I came to the jail to meet with you, I had

10:58  5    Mr. Richard Beada with me; didn't I?

10:58  6    A    I believe so, yes.

10:58  7    Q    And we met with you in a private room of the jail.  Do

10:58  8    you remember that?

10:59  9    A    I thought it was in the group.  My recollection is it

10:59  10   was in the group meeting where there's multiple defendants.

10:59  11   Q    Do you recall, Mr. Johnson, that the first time we ever

10:59  12   met, I was with Mr. Beada, and the only other person in the

10:59  13   room was you?  And at the time you were confined to a

10:59  14   gurney, a flat gurney.  Do you recall that?

10:59  15   A    Yes, I do.

10:59  16   Q    And that was the very first time we ever met; wasn't

10:59  17   it?

10:59  18   A    I believe so.

11:00  19   Q    And during that meeting I informed you that --

11:00  20            MR. WYMAN:  Objection.  Hearsay.

11:00  21            THE COURT:  Overruled.

11:00  22   BY MR. AVENATTI:

11:00  23   Q    Mr. Johnson, during that meeting I informed you that

11:00  24   your family had reached out to me and they wanted me to come

11:00  25   and meet with you to see if we could help you.  Do you

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:00   1   remember that?

11:00   2   A   I don't recall that exact statement.

11:00   3   Q   At the time that we met, you were heavily medicated;

11:00   4   were you not?

11:00   5   A   I was on medication, yes.

11:00   6   Q   Do you disagree with me that you were heavily medicated

11:00   7   when we met the first time?

11:00   8   A   I just don't know how to evaluate heavily.

11:00   9   Q   At the time that we first met, what medications were

11:00   10   you taking?

11:01   11   A   I believe it was Abilify and Wellbutrin maybe.

11:01   12   Q   Do you recall anything else?

11:01   13   A   No.

11:01   14   Q   And what did you ask me and Mr. Beada, if anything, to

11:01   15   do for you when we met with you?

11:01   16   A   I just don't remember what I asked you.

11:01   17   Q   Do you recall asking us to do everything we could to

11:01   18   get you out of jail?

11:01   19   A   I just don't remember.

11:02   20   Q   At that time did you want to get out of jail?

11:02   21   A   Absolutely.

11:02   22   Q   Why is that?

11:02   23   A   Because jail --

11:02   24           MR. WYMAN:  Objection, Your Honor.

11:02   25           THE COURT:  Overruled.

11:02   1          THE WITNESS:  Because jail is hell.

11:02   2   BY MR. AVENATTI:

11:02   3   Q    Any other reason, sir?

11:02   4          MR. WYMAN:  Objection, Your Honor.  This is

11:02   5   getting close to the Court's ruling.

11:02   6          THE COURT:  Sustained.

11:02   7   BY MR. AVENATTI:

11:02   8   Q    And up until that point in time, despite everything you

11:02   9   and your family had tried, you had not been able to get out

11:02   10  of jail; is that right?

11:02   11  A    That's correct.

11:02   12  Q    And I told you at the time as you laid on the gurney

11:02   13  that Mr. Beada and I were going to do everything we could to

11:03   14  get you out of jail; didn't I?

11:03   15  A    I just don't remember the exact conversation.

11:03   16  Q    You are not disputing that I may have told you that,

11:03   17  though, right?

11:03   18  A    I just don't remember.

11:03   19  Q    I understand.  Are you aware of anything that suggests

11:03   20  to you that I did not tell you that?

11:03   21  A    No.

11:03   22  Q    Did we get you out of jail?

11:03   23  A    Yes.

11:03   24  Q    What is your understanding as to how we got you out of

11:03   25  jail?

89

| | | |
|---|---|---|
| 11:03 | 1 | A    From my end of things it was an unknown.  I didn't know |
| 11:04 | 2 | how you did it. |
| 11:04 | 3 | Q    Now, at the time you had been arrested, you had no job; |
| 11:04 | 4 | is that right? |
| 11:04 | 5 | A    That's correct. |
| 11:04 | 6 | Q    And your family had abandoned you financially; isn't |
| 11:04 | 7 | that true? |
| 11:04 | 8 | MR. WYMAN:  Objection.  Relevance. |
| 11:04 | 9 | THE COURT:  Overruled. |
| 11:04 | 10 | THE WITNESS:  My family gave me money up until the |
| 11:04 | 11 | time that I was arrested. |
| 11:04 | 12 | BY MR. AVENATTI: |
| 11:04 | 13 | Q    Your father had been giving you money shortly -- up |
| 11:05 | 14 | until shortly before your arrest and then had cut you off; |
| 11:05 | 15 | isn't that true? |
| 11:05 | 16 | A    I don't recall the timing on that. |
| 11:05 | 17 | Q    But it was before your arrest.  You remember that? |
| 11:05 | 18 | A    I just don't remember. |
| 11:05 | 19 | Q    Do you dispute that that is what happened? |
| 11:05 | 20 | A    No. |
| 11:05 | 21 | Q    And shortly after that happened, you were arrested and |
| 11:05 | 22 | you were naked praying in the middle of an intersection, |
| 11:05 | 23 | correct? |
| 11:05 | 24 | MR. WYMAN:  Objection. |
| 11:05 | 25 | THE COURT:  Sustained. |

| | | |
|---|---|---|
| 11:05 | 1 | BY MR. AVENATTI: |
| 11:05 | 2 | Q    Sir, shortly after that happened, you had some |
| 11:06 | 3 | challenges mentally.  Is that fair to say? |
| 11:06 | 4 | A    Yes. |
| 11:06 | 5 | Q    Because you had previously been diagnosed with bipolar |
| 11:06 | 6 | schizophrenia; am I right? |
| 11:06 | 7 | A    My psychiatrist did not share a specific diagnosis with |
| 11:06 | 8 | me. |
| 11:06 | 9 | Q    Have you since learned that you suffer from bipolar |
| 11:06 | 10 | schizophrenia? |
| 11:06 | 11 | A    I don't know that I suffer from schizophrenia. |
| 11:07 | 12 | Q    But you understand that you suffer from being bipolar; |
| 11:07 | 13 | am I right? |
| 11:07 | 14 | A    That is one diagnosis that's been made, yes. |
| 11:07 | 15 | Q    What other mental diagnoses, if any, have been made? |
| 11:07 | 16 | A    Depression and anxiety. |
| 11:07 | 17 | Q    Now, when you met with Mr. Beada and I on that first |
| 11:07 | 18 | day, you had no one to pay your expenses or any of your |
| 11:07 | 19 | bills; did you? |
| 11:07 | 20 | A    Correct. |
| 11:08 | 21 | Q    And do you recall that you were able to get out of jail |
| 11:08 | 22 | because Mr. Beada and I were able to arrange for you to have |
| 11:08 | 23 | a place to live? |
| 11:08 | 24 | A    Yes. |
| 11:08 | 25 | Q    And do you recall that until you met Mr. Beada and I, |

11:08   1   that was one of the things that was preventing you from

11:08   2   getting out of jail?  You had no place to go and nowhere to

11:08   3   live?

11:08   4   A    I didn't know that.

11:08   5   Q    You learned it after the fact, right?

11:08   6   A    I don't recall having learned that.

11:09   7   Q    You don't recall me and Mr. Beada specifically speaking

11:09   8   with you about the fact that the only way we were able to

11:09   9   get you out of jail was by finding a place for you to live?

11:09  10   A    I just don't recall that conversation.

11:09  11   Q    You're not claiming it didn't happen.  You just don't

11:09  12   recall it; is that fair?

11:09  13           MR. WYMAN:  Objection.  Asked and answered.

11:09  14           THE COURT:  Sustained.

11:09  15   BY MR. AVENATTI:

11:09  16   Q    Sir, how did you get from the -- strike that.  What was

11:09  17   the first place that you lived after we got you out of jail?

11:09  18   A    CareMeridian.

11:09  19   Q    And where was that located?

11:09  20   A    I believe it was in Chatsworth.

11:09  21   Q    Was it a nice place?

11:09  22   A    It was a very nice place.

11:09  23   Q    Can you describe it for the jury, please.

11:09  24   A    Well, I had my own room.  There were nurses on staff.

11:10  25   They were present at the facility.  There was a physical

```
11:10   1    therapist and an occupational therapist.  They helped me
11:10   2    learn how to transfer and do various things that paraplegics
11:10   3    need to know.
11:10   4    Q    Were you happy with your care that you got at
11:10   5    CareMeridian?
11:10   6    A    Yes, I was.
11:10   7    Q    You were extremely happy; weren't you?
11:10   8    A    Yes, I was.
11:10   9    Q    How did you physically get from the jail to
11:10   10   CareMeridian?
11:10   11   A    On a gurney.
11:11   12   Q    But how were you transported?
11:11   13   A    My vague recollection is in, like, a nonemergency
11:11   14   vehicle.
11:11   15   Q    Like a van?
11:11   16   A    Yeah.
11:11   17   Q    And I paid for that; didn't I?
11:11   18   A    I did not know that.
11:11   19   Q    Well, you did not pay for it; did you, sir?
11:11   20   A    No, I did not.
11:11   21   Q    Did you have any reason to believe that anyone other
11:11   22   than me paid for it?
11:11   23             MR. WYMAN:  Objection.  Calls for speculation.
11:11   24             THE COURT:  Overruled.
11:11   25             THE WITNESS:  No.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

93

11:11    1    BY MR. AVENATTI:

11:11    2    Q    And once you got to CareMeridian, we checked to make

11:12    3    sure that you were settled in okay; didn't we?

11:12    4    A    I don't recall what visits there were at CareMeridian.

11:12    5    Q    After you got to CareMeridian, you understood that

11:12    6    Mr. Beada was working on getting your charges dismissed,

11:12    7    right?

11:12    8    A    Yes, I did.

11:12    9    Q    And you were not paying Mr. Beada, right?

11:12   10    A    Correct.

11:12   11    Q    You never paid Mr. Beada a single dollar; did you?

11:12   12    A    No, I did not.

11:12   13    Q    You understood that I was taking care of the expenses

11:12   14    associated with Mr. Beada, correct?

11:13   15    A    Yes.

11:13   16    Q    Did we get your charges dismissed?

11:13   17    A    Yes, you did.

11:13   18    Q    Were you happy about that?

11:13   19    A    I was ecstatic.

11:13   20    Q    Please tell the jury why you were ecstatic.

11:13   21    A    Because I didn't want to go back to jail, and not

11:13   22    having charges anymore meant that I was free to go to the

11:13   23    next step in my life.

11:13   24    Q    And just to clarify, sir.  When we first met, when you

11:14   25    were on that gurney, you were already disabled; is that fair

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:14 | 1 | to say? |
| 11:14 | 2 | A    Yes. |
| 11:14 | 3 | Q    Nothing that Mr. Beada or I have ever done led to you |
| 11:14 | 4 | being disabled; is that fair? |
| 11:14 | 5 | A    Yes. |
| 11:14 | 6 |      MR. AVENATTI:  Your Honor, one moment. |
| 11:14 | 7 | BY MR. AVENATTI: |
| 11:14 | 8 | Q    Mr. Johnson, I would like to direct your attention to |
| 11:15 | 9 | Exhibit 1. |
| 11:15 | 10 |      MR. AVENATTI:  For the record, it is in evidence. |
| 11:15 | 11 | BY MR. AVENATTI: |
| 11:15 | 12 | Q    Mr. Johnson, I think we are going to pull it up on the |
| 11:15 | 13 | screen for you.  That may be easier. |
| 11:15 | 14 | A    Okay. |
| 11:16 | 15 | Q    Do you have it there, sir? |
| 11:16 | 16 | A    Yes, I do. |
| 11:16 | 17 | Q    Okay.  And if we go to the last page, if we blow up the |
| 11:16 | 18 | signature block at the bottom with Mr. Johnson's signature, |
| 11:16 | 19 | can you see that, sir? |
| 11:16 | 20 | A    Yes. |
| 11:16 | 21 | Q    Okay.  And Mr. Wyman asked you if you had signed this |
| 11:16 | 22 | document.  Do you remember that? |
| 11:16 | 23 | A    He asked if it was my signature. |
| 11:16 | 24 | Q    Correct.  And that is your signature, correct? |
| 11:16 | 25 | A    I believe it is, yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:17   1   Q    And do you recall that when you signed this document,
11:17   2   you were laying on your back on a gurney at the time that
11:17   3   Mr. Beada and I met you?
11:17   4   A    I don't recall the exact moment.
11:17   5   Q    Do you have anything that suggests to you that that is
11:17   6   not true, namely, that you were laying down and --
11:17   7            MR. WYMAN:  Objection.  Asked and answered.
11:17   8            MR. AVENATTI:  Let me start over with the question
11:17   9   so we have a clean record.
11:17  10            THE COURT:  That's fine.
11:17  11   BY MR. AVENATTI:
11:17  12   Q    Sir, are you aware of any evidence that suggests to you
11:17  13   that you were not laying on your back signing the document
11:17  14   on a gurney when we first met with you?
11:17  15            MR. WYMAN:  Objection.  Asked and answered.
11:17  16            THE COURT:  Overruled.
11:17  17            THE WITNESS:  I just don't recall the
11:18  18   circumstances of me signing the document.
11:18  19   BY MR. AVENATTI:
11:18  20   Q    You are not disputing it, though, correct?
11:18  21            MR. WYMAN:  Same objection.
11:19  22            MR. AVENATTI:  Let me ask a different question,
11:19  23   Your Honor.
11:19  24            Strike that question.
       25

BY MR. AVENATTI:

Q   Mr. Johnson, do you recall signing some documents when Mr. Beada and I met with you on that first day?

A   I just don't recall that.

Q   You don't dispute that may have happened, correct?

A   I don't dispute it.

Q   Now, you're not claiming that Mr. Beada and I somehow solicited you to represent you, correct?

A   Correct.

Q   We never just approached you out of the blue and said, hey, we want to represent you so we can get your money. Nothing like that ever happened; did it?

A   No.

Q   And around this time period of November 2011, December 2011, January, February 2012, your sister Ruth was advocating on your behalf.  Do you remember that?

A   I remember she came to the jail.

Q   And do you remember that she was working behind the scenes to try to get you released on your behalf?

A   Well, I just wasn't privy to what was going on behind the scenes.

Q   But you later learned that she had been working on your behalf during that time period; didn't you?

A   Yes.

Q   And she continued to work on your behalf after you got

11:21  1   out of jail for a short period of time; isn't that true?

11:21  2   A    I don't recall that.

11:21  3   Q    Well, let me show you a document and we'll see if it

11:21  4   refreshes your recollection.

11:21  5        MR. AVENATTI:  Please do not publish this to the

11:21  6   jury yet.  Document number 6, please, for the benefit of the

11:21  7   witness, the Court, and the government.

11:21  8        THE COURT:  I think it's in one of the binders.

11:22  9        MR. AVENATTI:  Actually, Your Honor, it is not in

11:22  10  one of the binders.  We're going to put it on the screen.

11:22  11  It's just to refresh the witness's recollection at this

11:22  12  point.

11:22  13       MR. WYMAN:  Your Honor, I believe it's also in the

11:22  14  exhibits in Binder 1 as Exhibit 3.

11:22  15       MR. AVENATTI:  Thank you.

11:22  16       Mr. Wyman is correct.  It is in the binder as

11:22  17  Exhibit 3.

11:22  18       THE WITNESS:  Okay.  I see it.

11:22  19  BY MR. AVENATTI:

11:22  20  Q    Okay.  Sir, do you see that e-mail at the bottom dated

11:22  21  February 6, 2012, from your sister to me?

11:22  22  A    February 16th?

11:22  23  Q    Yes.

11:22  24  A    Yes.

11:22  25  Q    Does this refresh your recollection that your sister

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:23 | 1 | was advocating on your behalf as of mid February of 2012? |
| 11:23 | 2 | A    I have never seen this e-mail before, but it certainly |
| 11:23 | 3 | seems to indicate that. |
| 11:23 | 4 | MR. AVENATTI:  Your Honor, at this point we offer |
| 11:23 | 5 | Exhibit 3 into evidence. |
| 11:23 | 6 | MR. WYMAN:  Objection.  Hearsay and lack of |
| 11:23 | 7 | foundation and personal knowledge. |
| 11:24 | 8 | THE COURT:  It will be refused at this time for |
| 11:24 | 9 | lack of foundation. |
| 11:24 | 10 | BY MR. AVENATTI: |
| 11:24 | 11 | Q    Sir, as of mid February 2012, you were communicating |
| 11:24 | 12 | with your sister about your present circumstances and my |
| 11:24 | 13 | representation of you, right? |
| 11:24 | 14 | A    Yes.  That's what it seems to say, yes. |
| 11:24 | 15 | Q    And that's your recollection, right, based on reading |
| 11:24 | 16 | the document? |
| 11:24 | 17 | A    I just don't remember what my sister was doing behind |
| 11:24 | 18 | the scenes. |
| 11:24 | 19 | Q    Well, let me ask you this.  Now that you have had a |
| 11:24 | 20 | chance to look at this Exhibit 3, does that help you |
| 11:24 | 21 | remember that around this time period, your sister was |
| 11:24 | 22 | communicating with me on your behalf? |
| 11:24 | 23 | A    Yes. |
| 11:24 | 24 | MR. AVENATTI:  Your Honor, at this point we would |
| 11:25 | 25 | offer Exhibit 3. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:25 | 1 | THE COURT:  It will be refused at this time. |
| 11:25 | 2 | BY MR. AVENATTI: |
| 11:25 | 3 | Q    In February of 2012, sir, did you understand that I was |
| 11:25 | 4 | communicating with certain members of your family in |
| 11:25 | 5 | connection with the legal representation? |
| 11:25 | 6 | A    That would have been something that I would have |
| 11:25 | 7 | assumed. |
| 11:25 | 8 | Q    And you assumed it then, correct? |
| 11:25 | 9 | A    Yes. |
| 11:25 | 10 | Q    And that was authorized by you, correct?  You didn't |
| 11:25 | 11 | have an objection to it? |
| 11:26 | 12 | A    No, I did not. |
| 11:26 | 13 | MR. AVENATTI:  Your Honor, at this point we would |
| 11:26 | 14 | offer Exhibit 3. |
| 11:26 | 15 | THE COURT:  It will be refused.  There's no |
| 11:26 | 16 | foundation as to this specific exhibit. |
| 11:26 | 17 | BY MR. AVENATTI: |
| 11:26 | 18 | Q    Sir, in mid February of 2012, were you thankful for my |
| 11:26 | 19 | assistance? |
| 11:26 | 20 | A    Absolutely. |
| 11:26 | 21 | Q    Did you believe that I was responsible for providing |
| 11:26 | 22 | you with an opportunity or a place for you to lay your head |
| 11:26 | 23 | at night in peace? |
| 11:27 | 24 | A    Yes. |
| 11:27 | 25 | Q    Did you believe that I was working tirelessly with my |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:27 | 1 | team to navigate a system that had cracks wide enough for |
| 11:27 | 2 | whole populations to fall through? |
| 11:27 | 3 |      MR. WYMAN:  Objection.  Vague. |
| 11:27 | 4 |      THE COURT:  Overruled. |
| 11:27 | 5 |      THE WITNESS:  Yes. |
| 11:27 | 6 | BY MR. AVENATTI: |
| 11:27 | 7 | Q    And did you appreciate me and every bit of my time and |
| 11:27 | 8 | energy? |
| 11:27 | 9 | A    Yes. |
| 11:27 | 10 | Q    Because you believed at the time that if it wasn't for |
| 11:27 | 11 | me, you would still be in to use your word "hell"? |
| 11:28 | 12 | A    Yes. |
| 11:28 | 13 | Q    Did I ask you for a single dollar when I met with you |
| 11:28 | 14 | at the jail? |
| 11:28 | 15 | A    No, you didn't. |
| 11:28 | 16 | Q    Did I ask you for a single dollar when I brought |
| 11:28 | 17 | Mr. Beada on board to get you out of hell? |
| 11:28 | 18 | A    No. |
| 11:28 | 19 | Q    Did I ask you for a single dollar when I arranged for |
| 11:28 | 20 | you to be able to live at CareMeridian and have the care |
| 11:28 | 21 | that you described? |
| 11:28 | 22 | A    No. |
| 11:29 | 23 | Q    When I met with you, sir, for the first time, do you |
| 11:29 | 24 | recall that Mr. Beada and I were waiting in the room for |
| 11:29 | 25 | you, for the guards to bring you in, and there was a door |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:29   1    there and the door opened, and they wheeled you in to where

11:30   2    we were standing, and you looked at us and you looked at me

11:30   3    and you asked:  I need you to get me out of hell?  Do you

11:30   4    remember that, sir?

11:30   5    A    I just don't remember the conversation that we had the

11:30   6    first time that we met.

11:30   7    Q    Did you conclude -- strike that.  Did you come to

11:30   8    believe that Mr. Beada and I were going to help you?

11:31   9    A    Absolutely.

11:31   10   Q    And what led you to believe that?

11:31   11   A    Well, you weren't, like, the public defender.  You

11:31   12   seemed to have authority.

11:31   13   Q    And your goal when we first met with you was not to sue

11:31   14   the County.  It was to get out of jail, right?

11:31   15   A    That was the thing on my mind the most.

11:31   16   Q    That was the priority, was to get out of hell, right?

11:32   17   A    Yes.  For me, yes.

11:32   18   Q    Now, after we got you out of jail and we got you to

11:32   19   CareMeridian, what happened next once you got to

11:32   20   CareMeridian?

11:32   21   A    I'm just not sure what you mean by next.

11:32   22   Q    Well, you started living at CareMeridian, right?

11:32   23   A    Yeah.

11:32   24   Q    And you enjoyed it there?

11:32   25   A    Yes.

11:32  1   Q    And you had great care, right?

11:32  2   A    Yes, I did.

11:32  3   Q    And did we ever ask you to pay a single dollar for your

11:33  4   care at CareMeridian?

11:33  5   A    No.

11:33  6   Q    And on at least one occasion we had a conversation

11:33  7   where you talked about how expensive CareMeridian was.  Do

11:33  8   you remember that?

11:33  9   A    I don't remember that.

11:33  10  Q    Did you know how expensive CareMeridian was for you to

11:33  11  live there at that time?

11:33  12  A    People at the facility would talk about that, and so I

11:33  13  just knew what was the sort of rumor.

11:33  14  Q    You had a general understanding that CareMeridian costs

11:33  15  tens of thousands of dollars every month, right?

11:34  16  A    That was the rumor that I heard, yes.

11:34  17  Q    It was incredibly expensive; wasn't it?

11:34  18  A    It was -- yes, it was expensive.

11:34  19  Q    And the care that you received at CareMeridian allowed

11:34  20  you to transition into being disabled and yet functional,

11:34  21  right?

11:34  22  A    I would say yes, beginning to be functional, yes.

11:34  23  Q    Because after your injury this was the most critical

11:34  24  point in your life; wasn't it?

11:35  25  A    It was certainly a crossroads.

11:35   1   Q    You needed the best possible care for you to be able to
11:35   2   figure out how to live, right?
11:35   3   A    Yes, I did.
11:35   4   Q    And I provided that care; didn't I?
11:35   5   A    Yes, you did.
11:35   6   Q    Then after about ten months, someone that we had hired
11:35   7   for you informed you that it was time to leave CareMeridian
11:36   8   and move to another facility.  Am I right?
11:36   9   A    That's right.
11:36  10   Q    And please tell the jury who that person was.
11:36  11   A    I believe you are speaking of Deborah Perlman.
11:36  12   Q    No, I think it was before Ms. Perlman.  Ms. Ronan.  Do
11:36  13   you remember that name?
11:36  14   A    No.
11:36  15   Q    Why don't you tell the jury your best recollection --
11:36  16   well, strike that.  Who is Ms. Perlman?
11:36  17   A    She was appointed as my case manager.
11:36  18   Q    By who?
11:36  19   A    I assumed by you.
11:36  20   Q    Who did you understand Ms. Perlman to work for?
11:36  21   A    She had a company -- I can't remember the name of the
11:36  22   company, but it was a company that she worked for.
11:37  23   Q    And when did you start working with Ms. Perlman?
11:37  24   A    When I was in CareMeridian.
11:37  25   Q    And what did Ms. Perlman do for you?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:37 | 1 | A    She, for instance, helped me get a primary care |
| 11:37 | 2 | physician.  She helped me navigate the healthcare system. |
| 11:37 | 3 | She kind of guided me through the process. |
| 11:37 | 4 | Q    And you were in regular contact with Ms. Perlman, |
| 11:37 | 5 | right? |
| 11:37 | 6 | A    Yes, I was. |
| 11:37 | 7 | Q    And you understood that we were paying for Ms. Perlman, |
| 11:38 | 8 | right? |
| 11:38 | 9 | A    Yes, I did. |
| 11:38 | 10 | Q    Did Ms. Perlman do a good job? |
| 11:38 | 11 | A    She did. |
| 11:38 | 12 | Q    Was she an advocate for you? |
| 11:38 | 13 | A    She absolutely was. |
| 11:38 | 14 | Q    Did you consider her a friend? |
| 11:38 | 15 | A    I -- she helped me a lot. |
| 11:38 | 16 | Q    And you understood that I was making sure that she was |
| 11:38 | 17 | helping you a lot, right? |
| 11:38 | 18 | A    Yes. |
| 11:38 | 19 | Q    And then at some point Ms. Perlman -- strike that.  At |
| 11:38 | 20 | some point you learned from Ms. Perlman that it was time for |
| 11:39 | 21 | you to move to another facility, right? |
| 11:39 | 22 | A    That's right. |
| 11:39 | 23 | Q    It was time for you to graduate, if you will? |
| 11:39 | 24 | A    She -- yeah. |
| 11:39 | 25 | Q    Because you understood that there was levels of care |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:39   1   following the injury that you'd suffered, right?

11:39   2   A    I'm not sure what you mean by that.

11:39   3   Q    That's a terrible question.  I'm sorry, Mr. Johnson.

11:39   4        What I mean is you understood that there was going

11:39   5   to be a time period where you would have one level of care.

11:39   6   And then once you became a little more self-sufficient, you

11:39   7   would go to another level and then perhaps another level

11:39   8   after that.  That was your understanding at the time, right?

11:39   9   A    Well, she just kind of told me that Michael said that

11:39   10  we gotta get out of here.

11:39   11  Q    Well, Mr. Johnson, did you understand that you were

11:40   12  going to stay at CareMeridian the rest of your life?

11:40   13  A    No.

11:40   14  Q    You understood that CareMeridian was temporary, right?

11:40   15  A    Yes.

11:40   16  Q    And had you seen other people come and go during the

11:40   17  ten months that you were at CareMeridian?

11:40   18  A    Other patients?

11:40   19  Q    Yes.

11:40   20  A    Yes.

11:40   21  Q    While you were at CareMeridian, other patients had come

11:40   22  to CareMeridian and then left while you remained at

11:40   23  CareMeridian, right?

11:40   24  A    I believe so, yes.

11:40   25  Q    Other patients who had similar injuries to yours,

11:40    1    right?

11:40    2    A    There were some there were spinal cord injury patients,

11:40    3    yes.

11:40    4    Q    Now, during this entire time period from the moment

11:41    5    that we met you at the jail until the moment that you left

11:41    6    CareMeridian, I was the only one paying any of your expenses

11:41    7    and bills; isn't that true?

11:41    8            MR. WYMAN:  Objection.  Calls for speculation.

11:41    9            THE COURT:  Overruled.

11:41   10            THE WITNESS:  My understanding was that the firm

11:41   11    and you were paying for my bills.

11:41   12    BY MR. AVENATTI:

11:41   13    Q    For everything?

11:41   14    A    Yes.

11:41   15    Q    And then after you left Care Meridian, where did you

11:41   16    live next?

11:41   17    A    Sunrise of West Hills.

11:41   18    Q    Describe Sunrise of West Hills for the benefit of jury,

11:41   19    please.

11:41   20    A    It's an administrative -- I mean, assisted living

11:42   21    facility that has care managers on call.  So you pull a cord

11:42   22    and they come and help you with whatever you need.  They had

11:42   23    a centralized dining room, and it was in Chatsworth.

11:42   24            I'm sorry.  It was in Canoga Park.

11:42   25    Q    And how long did you live at Sunrise?

11:42  1    A    About two and a half years is my recollection.

11:43  2    Q    And who paid for all of your expenses while you were at

11:43  3    Sunrise?

11:43  4    A    Eagan Avenatti.

11:43  5    Q    And did your time at Sunrise also enable you to figure

11:43  6    out how you were going to live the rest of your life?

11:43  7    A    Well, it's a difficult question.  I made a lot of

11:43  8    friends there.  They have good people there.  The staff was

11:43  9    good, but they were not prepared or knowledgeable about how

11:43  10   to take care of someone who is a paraplegic.  I needed

11:43  11   something else.

11:44  12   Q    But you were generally happy there.  That's why you

11:44  13   stayed two-and-a-half years, right?

11:44  14   A    I was generally happy there, yes.

11:44  15   Q    So just so we can establish a timeline for the benefit

11:44  16   of the jury, you lived at CareMeridian until approximately

11:44  17   late 2012; is that right?

11:44  18   A    Yes, I believe so.

11:44  19   Q    And then you moved from CareMeridian to Sunrise for

11:44  20   about two-and-a-half years, which takes us to about mid

11:44  21   2016.  Am I right about that?

11:45  22   A    I would say that it would take us to mid 2015.

11:45  23   Q    You're right.  I'm off on my math -- 2015.

11:45  24        And then in 2015 you informed me and my staff that

11:45  25   you wanted to move to a private residence, right?

| 11:45 | 1 | A No. It was a -- Freedom to Live was not a private |
| 11:45 | 2 | residence. It was a nonprofit that helped you learn how to |
| 11:45 | 3 | live independently. |
| 11:45 | 4 | Q It was a home, though, as opposed to a facility? |
| 11:45 | 5 | A It was a house, yes. |
| 11:45 | 6 | Q Okay. And you're the one that made the choice and |
| 11:46 | 7 | informed us that that's where you wanted to go live? |
| 11:46 | 8 | A Yes. |
| 11:46 | 9 | Q Nobody forced you to go there? |
| 11:46 | 10 | A Oh, no. |
| 11:46 | 11 | Q That was something you really wanted to do? |
| 11:46 | 12 | A Yes, I did. |
| 11:46 | 13 | Q As I recall, you wanted to go and live at Freedom to |
| 11:46 | 14 | Live with some people that you had met at Sunrise? |
| 11:46 | 15 | A No. |
| 11:46 | 16 | Q Strike that. Let me rephrase. You wanted to go and |
| 11:46 | 17 | live at Freedom to Live with some people that you had come |
| 11:46 | 18 | to know? |
| 11:46 | 19 | A I had come to know some people who at various times |
| 11:46 | 20 | lived at Freedom to Live, yes. |
| 11:46 | 21 | Q And they had recommended that that was someplace that |
| 11:46 | 22 | you should go? |
| 11:46 | 23 | A Yes, they did. |
| 11:47 | 24 | Q And you called and you asked me about that, right? |
| 11:47 | 25 | A Yes, I did. |

11:47    1    Q    And I told you:  Geoffrey, wherever you want to live is

11:47    2    fine by me.  Right?

11:47    3    A    You said something -- you said it's okay.  If I wanted

11:47    4    to go there, I could go there.

11:47    5    Q    And then did I begin paying for you to be at Freedom to

11:47    6    Live?

11:47    7    A    You paid for the initial phase where I had

11:47    8    18-hour-a-day care, and then you paid for when it was scaled

11:48    9    back as well.

11:48   10    Q    Because when you first got to Freedom to Live, you had

11:48   11    to have 18-hour-a-day care, meaning you had a nurse present

11:48   12    basically at all times other than when you slept, right?

11:48   13    A    Correct.

11:48   14    Q    And I paid for that?

11:48   15    A    Yes.

11:48   16    Q    And then it got scaled back to what?

11:48   17    A    Then it got scaled back to IHSS hours.

11:48   18    Q    Please explain to the jury what that means.

11:48   19    A    IHSS is in-home supportive services.  It's a County

11:48   20    program, I believe, that supplies caregivers for people in

11:48   21    need.

11:48   22    Q    And you had contacted me and said I really don't need

11:49   23    18-hour care anymore.  I can go to less time.  Right?

11:49   24    A    Well, that was all predetermined.  The length of the

11:49   25    initial phase was predetermined.

11:49  1   Q    I didn't have anything to do with that decision,
11:49  2   correct?
11:49  3   A    No, you didn't.
11:49  4   Q    I didn't encourage you to get less care or anything
11:49  5   like that; did I?
11:49  6   A    No, you didn't.
11:49  7   Q    Okay.  Did I ever suggest to you that you didn't need
11:49  8   care that you thought you needed?
11:49  9   A    No.
11:49  10  Q    That never happened; did it?
11:49  11  A    Not to my recollection.
11:49  12  Q    And nearly every time that we spoke, did I ask you how
11:49  13  you were doing?
11:50  14  A    Yes.
11:50  15  Q    Did I ask about your health?
11:50  16  A    Yes.
11:50  17  Q    Did I ask you if you needed anything?
11:50  18  A    Yes, you did.
11:50  19  Q    And did you come to the conclusion that I really cared
11:50  20  about what happened to you?
11:50  21  A    Absolutely.
11:50  22         MR. AVENATTI:  Your Honor, now is a good time for
11:50  23  a break unless you want me to keep going.
11:50  24         THE COURT:  Keep going, please.
11:50  25  BY MR. AVENATTI:

11:50  1    Q    Then after Freedom to Live, where did you live next?

11:50  2    A    I still live in the house that Freedom to Live

11:50  3    occupied.  They just stopped being Freedom to Live.

11:51  4    Q    And that's because the residence was purchased by

11:51  5    somebody privately; is that correct?

11:51  6    A    No.  It's because the -- as I understand it, it's

11:51  7    because the leaseholder, which is Freedom to Live, failed to

11:51  8    renegotiate the lease.  And so they had to leave.

11:51  9    Q    And can you estimate for the jury when you moved to

11:51  10   Freedom to Live?

11:51  11   A    I think in 2016, '15, '16.

11:52  12   Q    Mr. Johnson, do you recall meeting with the government

11:52  13   concerning me for the first time on March 31st, 2019?

11:52  14   A    I don't recall the date exactly, but I do recall

11:52  15   meeting with the government for the first time.

11:52  16   Q    Do you recall that it was in late March of 2019

11:52  17   generally?

11:52  18   A    That sounds right.

11:52  19   Q    And you didn't call the FBI about me; did you?

11:52  20   A    No.

11:52  21   Q    And you didn't call the IRS about me; did you?

11:52  22   A    No.

11:53  23   Q    And you didn't call the U.S. Attorney's Office about

11:53  24   me; did you?

11:53  25   A    No.

112

| | | |
|---|---|---|
| 11:53 | 1 | Q    You didn't call anybody to report any crime, right? |
| 11:53 | 2 | A    No. |
| 11:53 | 3 | Q    I'm correct about that, right?  You did not call |
| 11:53 | 4 | anybody to report a crime about me, right? |
| 11:53 | 5 | A    Not that I recall. |
| 11:53 | 6 | Q    And you didn't call anybody to report that I had |
| 11:53 | 7 | engaged in any unethical conduct with you whatsoever; did |
| 11:53 | 8 | you? |
| 11:53 | 9 | A    I didn't call, but -- |
| 11:53 | 10 | Q    You didn't e-mail anyone to report a crime involving |
| 11:53 | 11 | Michael Avenatti; did you? |
| 11:53 | 12 | A    No. |
| 11:53 | 13 | Q    They came to you; isn't that true? |
| 11:54 | 14 | MR. WYMAN:  Objection.  Argumentative. |
| 11:54 | 15 | THE COURT:  Overruled. |
| 11:54 | 16 | BY THE WITNESS: |
| 11:54 | 17 | Q    Sir, they came to you; didn't they? |
| 11:54 | 18 | A    I guess you could say it that way. |
| 11:54 | 19 | MR. AVENATTI:  Your Honor, one moment. |
| 11:54 | 20 | BY MR. AVENATTI: |
| 11:54 | 21 | Q    Sir, can you see this date on the flip chart, |
| 11:54 | 22 | March 31st, 2019?  Can you see that? |
| 11:54 | 23 | A    Yes. |
| 11:54 | 24 | MR. AVENATTI:  If we could have number 3 only for |
| 11:55 | 25 | the witness, the Court, and the government.  The first page, |

| | | |
|---|---|---|
| 11:55 | 1 | please. |
| 11:55 | 2 | THE CLERK:  It's not blocked out.  It's easiest |
| 11:55 | 3 | just to use the document. |
| 11:55 | 4 | MR. AVENATTI:  It's not in the exhibit binder. |
| 11:55 | 5 | Your Honor, can I approach? |
| 11:55 | 6 | THE COURT:  I believe Exhibit 3 is in the |
| 11:55 | 7 | government's binder. |
| 11:55 | 8 | MR. AVENATTI:  I'm sorry.  This is internal |
| 11:55 | 9 | numbering system number 3.  This document is not in the |
| 11:55 | 10 | exhibit binder.  It's only being used to refresh. |
| 11:55 | 11 | THE COURT:  You may approach. |
| 11:55 | 12 | MR. AVENATTI:  Thank you. |
| 11:56 | 13 | THE COURT:  Do you have a copy for the Court? |
| 11:56 | 14 | (Document handed to the witness) |
| 11:56 | 15 | MR. AVENATTI:  Mr. Johnson, could you please hand |
| 11:56 | 16 | that to His Honor. |
| 11:56 | 17 | BY MR. AVENATTI: |
| 11:57 | 18 | Q    Sir, do you have the document that was just handed to |
| 11:57 | 19 | you in front of you? |
| 11:57 | 20 | A    Yes. |
| 11:57 | 21 | Q    Does this document refresh your recollection that the |
| 11:57 | 22 | date on which you first met with the government relating to |
| 11:57 | 23 | me was March 31st, 2019? |
| 11:57 | 24 | A    It appears to say that, yes. |
| 11:57 | 25 | Q    Can you please turn to Exhibit 37. |

| | | |
|--|--|--|
| 11:57 | 1 | MR. AVENATTI:  If we could please have 37 for the |
| 11:57 | 2 | jury.  Next page, please. |
| 11:58 | 3 | THE WITNESS:  Okay. |
| 11:58 | 4 | BY MR. AVENATTI: |
| 11:58 | 5 | Q    Do you recall that Mr. Wyman asked you some questions |
| 11:58 | 6 | about Exhibit 37, the settlement agreement with the |
| 11:58 | 7 | $4 million number in the middle of the page?  Do you |
| 11:58 | 8 | remember that? |
| 11:58 | 9 | A    I remember the questions, yes. |
| 11:58 | 10 | Q    Okay.  And if we go to the last -- well, let's go to |
| 11:58 | 11 | the middle of the page. |
| 11:58 | 12 | A    Which page? |
| 11:58 | 13 | Q    The first page, sir. |
| 11:58 | 14 | A    Okay. |
| 11:58 | 15 | Q    Do you see where the amount of $4 million is bolded in |
| 11:58 | 16 | the middle of the page?  Do you see that, sir? |
| 11:58 | 17 | A    I'm in Exhibit 37 in the binder, right? |
| 11:58 | 18 | Q    It's also on the screen, Mr. Johnson.  If you just look |
| 11:58 | 19 | right on the screen. |
| 11:58 | 20 | A    Yeah, I see it.  It's just not on the first page. |
| 11:59 | 21 | Q    I'm sorry.  I meant the first page of the agreement. |
| 11:59 | 22 | The first page of the exhibit is the enclosure letter. |
| 11:59 | 23 | A    Okay.  Yes.  Now I see $4 million, yes. |
| 11:59 | 24 | Q    Do you remember on direct examination Mr. Wyman asked |
| 11:59 | 25 | you about a number of documents that you -- where it |

| 11:59 | 1 | appeared your signature was?  Do you remember that? |
|---|---|---|
| 11:59 | 2 | A    Yes. |
| 11:59 | 3 | Q    And he asked you whether you had signed the document. |
| 11:59 | 4 | Do you remember that? |
| 11:59 | 5 | A    Which document? |
| 11:59 | 6 | Q    The documents that he was asking about generally in the |
| 11:59 | 7 | examination.  Do you remember he asked you if you signed it? |
| 11:59 | 8 | A    Yeah. |
| 11:59 | 9 | Q    Okay.  But let's go to the last page of this document. |
| 11:59 | 10 | And by the way, this was one of the first documents |
| 12:00 | 11 | Mr. Wyman asked you about; wasn't it? |
| 12:00 | 12 | A    I don't recall the exact order. |
| 12:00 | 13 | Q    Okay.  The record will show whatever it shows. |
| 12:00 | 14 | And you recall that Mr. Wyman directed your |
| 12:00 | 15 | attention to this signature block on the document? |
| 12:00 | 16 | A    Yes. |
| 12:00 | 17 | Q    But for this document he didn't ask you whether you had |
| 12:00 | 18 | signed it; did he? |
| 12:00 | 19 | A    He may not have.  I just don't recall. |
| 12:00 | 20 | Q    Instead, Mr. Wyman asked you whether a couple letters |
| 12:00 | 21 | looked different.  Do you remember that? |
| 12:00 | 22 | MR. WYMAN:  Objection.  That misstates the |
| 12:00 | 23 | testimony of the question. |
| 12:01 | 24 | THE COURT:  Overruled. |
| | 25 | |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
| 12:01 | 1  | BY MR. AVENATTI:                                             |
| 12:01 | 2  | Q    Do you remember Mr. Wyman asked you, as it related to  |
| 12:01 | 3  | this document, not whether you had signed it but whether a  |
| 12:01 | 4  | couple letters looked different?  Do you remember that?     |
| 12:01 | 5  | A    Yes.  I remember him asking me about letters looking   |
| 12:01 | 6  | different.                                                   |
| 12:01 | 7  | Q    And when you met with the government on March 31st,    |
| 12:01 | 8  | 2019, there were multiple agents and individuals from the   |
| 12:01 | 9  | government present; wasn't there?                            |
| 12:01 | 10 | A    Yes.                                                    |
| 12:01 | 11 | Q    And at the beginning of the interview they cautioned   |
| 12:01 | 12 | you --                                                       |
| 12:01 | 13 | THE COURT:  Why don't we come back to this                  |
| 12:01 | 14 | interview.  We'll take the lunch break here.                |
| 12:01 | 15 | MR. AVENATTI:  Can I just ask one last question,            |
| 12:01 | 16 | Your Honor?                                                  |
| 12:01 | 17 | THE COURT:  Yes.                                             |
| 12:01 | 18 | MR. AVENATTI:  Thank you.  I'm sorry.  Thank you.           |
| 12:01 | 19 | BY MR. AVENATTI:                                             |
| 12:01 | 20 | Q    Mr. Johnson, didn't you tell the government when you   |
| 12:01 | 21 | met with them on March 31st, 2019, that you may have signed |
| 12:02 | 22 | this document?                                              |
| 12:02 | 23 | A    I just don't recall what I told them.                  |
| 12:02 | 24 | Q    We'll come back to that right after lunch.             |
| 12:02 | 25 | THE COURT:  We will take the lunch break here,              |

| | | |
|---|---|---|
| 12:02 | 1 | ladies and gentlemen.  Please remember the admonition not to |
| 12:02 | 2 | discuss the case with anyone and not to form any opinion on |
| 12:02 | 3 | the issues in the case until it is submitted to you.  And |
| 12:02 | 4 | please don't do any research. |
| 12:02 | 5 | Enjoy your lunch. |
| 12:02 | 6 | (Jury not present) |
| 12:03 | 7 | THE COURT:  How much more do you have with this |
| 12:03 | 8 | witness? |
| 12:03 | 9 | MR. AVENATTI:  I have quite a lot, Your Honor. |
| 12:03 | 10 | It's a very important witness. |
| 12:03 | 11 | THE COURT:  I don't doubt that.  How about an |
| 12:03 | 12 | estimate? |
| 12:03 | 13 | MR. AVENATTI:  Two hours. |
| 12:03 | 14 | THE COURT:  Your right to cross-examine isn't |
| 12:03 | 15 | unlimited. |
| 12:03 | 16 | MR. AVENATTI:  Your Honor, I'm going to be as |
| 12:03 | 17 | efficient and quick as I possibly can.  This is the first |
| 12:03 | 18 | individual that was highlighted in the government's |
| 12:03 | 19 | opening -- |
| 12:03 | 20 | THE COURT:  Sir, I appreciate the significance of |
| 12:03 | 21 | this witness.  I would also suggest when you ask a question, |
| 12:03 | 22 | you only ask it once and don't ask the same question three |
| 12:03 | 23 | or four different ways. |
| 12:03 | 24 | MR. AVENATTI:  Your Honor, I will try to tighten |
| 12:03 | 25 | up my questions.  Understood. |

```
12:04    1              THE COURT:  Okay.

12:04    2              Anything else for the record?

12:04    3              MR. WYMAN:  Your Honor, I would just ask.  We

12:04    4   bring in witnesses based on the time estimate.  We were told

12:04    5   two hours total for Mr. Johnson.  I would just ask for, I

12:04    6   guess, more realistic time frames.  Yesterday they were way

12:04    7   longer than the estimates we were provided.

12:04    8              THE COURT:  Estimates are estimates.

12:04    9              MR. AVENATTI:  Thank you, Your Honor.

12:04   10              THE COURT:  We will be in recess.

12:04   11                    (Recess taken at 12:04 p.m.)

12:04   12                         *     *     *

12:04   13

12:04   14

12:04   15

12:04   16

12:04   17

12:04   18

12:04   19

12:04   20

12:04   21

12:04   22

12:04   23

12:04   24

12:04   25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  July 23, 2021


/s/   Sharon A. Seffens  7/23/21
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**MR. AVENATTI: [85]** 4/8 5/12 5/23 6/1 6/24
8/3 12/21 12/24 13/6 16/5 16/18 17/11 18/14
19/9 19/17 20/6 20/8 20/13 21/10 21/12 22/23
23/3 23/9 23/11 23/16 28/21 29/18 30/7 31/9
33/3 33/14 34/8 37/6 39/14 40/7 41/6 41/8
42/3 42/21 43/18 45/13 46/10 47/16 50/2
50/15 52/9 53/2 54/1 54/16 60/5 61/8 63/5
67/12 72/9 74/1 75/17 78/6 83/24 85/3 85/7
94/6 94/10 95/8 95/22 97/5 97/9 97/15 98/4
98/24 99/13 110/22 112/19 112/24 113/4
113/8 113/12 113/15 114/1 116/15 116/18
117/9 117/13 117/16 117/24 118/9
**MR. HARBUR: [6]** 24/18 24/20 24/23 25/21
26/1 26/3
**MR. SAGEL: [6]** 4/5 11/18 21/18 22/3 24/8
24/11
**MR. WYMAN: [101]** 4/14 5/5 7/7 7/9 8/6 8/13
8/18 8/25 9/5 9/20 10/1 10/10 10/12 10/20
10/25 11/6 11/12 11/25 12/3 12/16 13/20
13/25 14/4 14/9 14/17 14/24 15/2 15/4 15/8
15/14 15/16 15/20 16/21 17/3 17/7 17/10
17/18 17/22 18/7 18/13 18/19 19/4 26/10 27/1
28/25 29/15 29/21 31/6 39/12 39/20 39/22
41/4 41/7 47/14 47/20 49/25 50/21 52/7 52/22
53/3 60/3 61/6 61/12 62/7 63/3 63/8 67/10
67/18 68/10 73/24 75/15 76/25 78/2 78/8 80/2
81/13 83/8 83/10 83/22 84/2 84/8 84/20 85/1
85/18 86/20 87/24 88/4 89/8 89/24 91/13
92/23 95/7 95/15 95/21 97/13 98/6 100/3
106/8 112/14 115/22 118/3
**THE CLERK: [5]** 4/3 26/12 26/15 26/19 113/2
**THE COURT: [152]**
**THE WITNESS: [24]** 26/17 26/23 28/22 30/10
33/5 33/17 34/10 37/8 40/9 42/5 42/24 45/15
46/13 54/3 54/18 85/20 88/1 89/10 92/25
95/17 97/18 100/5 106/10 114/3

**$**

**$1,560 [1]** 63/15
**$1,900 [1]** 60/22
**$1,911,381.30 [1]** 77/17
**$1.9 [1]** 36/8
**$1.9 million [1]** 36/8
**$10,618.79 [1]** 77/19
**$175,000 [1]** 33/13
**$2,000 [3]** 45/8 45/9 45/11
**$200 [1]** 63/16
**$4 [17]** 9/17 35/10 35/13 36/25 37/23 38/6
42/16 46/7 46/9 59/3 59/6 74/22 74/25 75/3
114/7 114/15 114/23
**$4 million [17]** 9/17 35/10 35/13 36/25 37/23
38/6 42/16 46/7 46/9 59/3 59/6 74/22 74/25
75/3 114/7 114/15 114/23
**$46,000 [1]** 36/9
**$7,000 [1]** 62/12

**'**

**'15 [1]** 111/11
**'16 [1]** 111/11

**/**

**/s [1]** 119/16

**0**

**0870 [1]** 1/21

**1**

**1,000 [1]** 51/9
**1,900 [5]** 48/15 60/14 60/18 60/22 63/18
**1-1053 [1]** 1/20
**1.1 [3]** 77/1 81/16 82/4
**1.9 million [2]** 82/6 82/8
**100,000 [1]** 16/19
**103 [5]** 3/12 59/19 60/4 60/7 60/8
**1053 [1]** 1/20
**106 [5]** 3/13 60/24 61/7 61/9 61/11
**107 [1]** 2/16
**108 [4]** 3/14 66/22 67/11 67/17

**10:33 [1]** 81/9
**10:48 [1]** 87/10
**11 [6]** 12/5 12/10 14/11 17/19 18/1 19/6
**11,000 [3]** 16/16 16/17 16/19
**1100 [1]** 2/7
**111 [5]** 3/13 62/21 63/4 63/6 63/7
**118 [3]** 3/11 47/2 47/15 47/18 47/19 50/16
50/17 51/16
**119 [8]** 3/12 51/21 52/8 52/11 52/12 52/14
64/5 70/2
**120 [8]** 3/11 49/1 49/7 49/8 50/1 50/5 50/8
50/22
**121 [5]** 3/14 73/18 73/25 74/2 74/3
**122 [6]** 3/15 75/8 75/16 75/18 75/19 81/15
**12:04 [1]** 118/11
**12th [1]** 62/4
**13th [3]** 53/11 53/13 53/19
**147 [1]** 15/10
**148 [1]** 15/10
**14th [1]** 53/20
**15 [2]** 81/2 81/6
**152 [1]** 15/25
**158 [1]** 15/10
**15th [1]** 54/5
**16th [4]** 47/23 57/12 58/7 97/22
**17 [3]** 22/5 23/8 23/18
**18-hour [1]** 109/23
**180 [1]** 77/20
**19th [1]** 60/17
**1:02 [1]** 53/13
**1st [1]** 67/21

**2**

**2,000 [2]** 48/15 48/18
**2011 [7]** 27/19 31/18 31/25 33/22 86/3 96/14
96/15
**2012 [9]** 65/14 66/18 96/15 97/21 98/1 98/11
99/3 99/18 107/17
**2015 [11]** 36/5 38/1 38/5 38/21 38/23 42/1
42/12 44/20 107/22 107/23 107/24
**2016 [5]** 52/18 68/19 68/21 107/21 111/11
**2017 [6]** 47/25 48/9 50/25 55/1 57/12 58/7
**2018 [4]** 60/17 62/5 66/18 67/21
**2019 [16]** 22/24 45/24 52/1 52/20 63/21 69/7
71/15 71/25 72/13 76/15 111/13 111/16
112/22 113/23 116/8 116/21
**2021 [3]** 1/17 4/1 119/14
**20th at [1]** 19/23
**21 [1]** 119/16
**213 [1]** 2/8
**21st [1]** 70/18
**22 [2]** 1/17 4/1
**22nd [4]** 71/15 71/25 72/13 72/18
**23 [1]** 119/14
**23rd [2]** 72/23 76/15
**25 [1]** 15/23
**25th [4]** 22/24 48/9 52/17 64/7
**26th [2]** 38/1 50/25
**27 [1]** 3/6
**28 [4]** 64/14 64/16 64/19 119/8
**29 [2]** 3/9 70/14

**3**

**30th [1]** 70/13
**31 [1]** 3/9
**312 [1]** 2/7
**31st [5]** 111/13 112/22 113/23 116/7 116/21
**32 [1]** 14/6
**338-3598 [1]** 2/12
**348 [1]** 16/3
**349 [1]** 16/3
**350 [1]** 16/3
**356 [1]** 15/10
**3598 [1]** 2/12
**360 [1]** 15/10
**361 [2]** 15/18 15/21
**37 [5]** 34/16 113/25 114/1 114/6 114/17
**374 [1]** 15/21
**375 [1]** 15/11

**388 [1]** 15/11
**39 [1]** 3/10
**390 [1]** 15/11
**391 [1]** 15/11
**393 [1]** 15/23
**394 [7]** 15/9 15/13 16/8 17/13 18/9 18/15
19/11
**395 [1]** 15/25
**396 [1]** 16/2
**397 [1]** 15/17
**3rd [2]** 63/20 69/7

**4**

**4.1 [2]** 78/3 78/12
**40 [1]** 37/16
**408 [12]** 5/18 6/20 6/22 7/10 10/17 10/20
10/24 11/1 11/4 11/4 11/10 25/25
**41 [7]** 3/10 15/10 17/3 17/13 18/6 18/11 19/11
**411 [2]** 1/20 2/11
**468 [1]** 14/7
**47 [1]** 3/11
**481-4900 [1]** 2/17
**4900 [1]** 2/17
**4th [1]** 1/20

**5**

**5.12 [1]** 80/3
**50 [1]** 3/11
**52 [1]** 3/12
**543-0870 [1]** 1/21
**59 [1]** 3/10 40/24 41/5 41/12

**6**

**60 [5]** 3/10 3/12 39/5 39/13 39/21
**60 percent [1]** 22/13
**61 [1]** 3/13
**63 [1]** 3/13
**6683 [1]** 2/8
**67 [1]** 3/14

**7**

**7/23/21 [1]** 119/16
**714 [2]** 1/21 2/12
**73 [1]** 3/14
**75 [1]** 3/15
**753 [1]** 119/7

**8**

**800 [1]** 48/10
**8000 [1]** 2/11
**83 [1]** 3/6
**894-6683 [1]** 2/8
**8:29 [1]** 4/1
**8:59 [1]** 26/4
**8th [2]** 31/18 31/25

**9**

**900 [1]** 48/16
**90012 [1]** 2/8
**902 [8]** 12/5 12/10 13/18 13/23 14/11 17/19
18/1 19/6
**92672 [1]** 2/16
**92701 [2]** 1/20 2/11
**94 [1]** 56/23
**949 [1]** 2/17
**95 [1]** 57/21
**9:08 [1]** 26/5

**A**

**a.m [6]** 4/1 26/4 26/5 48/7 81/9 81/10
**abandoned [1]** 89/6
**Abilify [1]** 87/11
**able [13]** 27/13 29/4 48/4 60/13 65/8 71/9
83/25 88/9 90/21 90/22 91/8 100/20 103/1
**about [64]** 5/15 8/18 9/7 9/10 10/20 12/8
14/12 15/6 18/10 21/4 22/12 22/23 24/22 25/7
25/10 30/13 32/11 35/1 35/6 36/9 36/17 40/6
41/19 43/10 44/13 47/22 48/4 48/16 48/19
50/24 59/14 60/20 62/5 65/3 66/10 68/20

**A**

**about... [28]** 4/10 73/2 74/16 91/8 93/18
98/12 102/7 102/12 103/6 107/1 107/9 107/20
107/20 107/21 108/24 110/15 110/20 111/19
111/21 111/23 112/3 112/4 114/6 114/25
115/6 115/11 116/5 117/11
**above [3]** 29/25 34/18 119/10
**above-entitled [1]** 119/10
**absolute [1]** 79/11
**absolutely [8]** 37/8 43/4 56/22 87/21 99/20
101/9 104/13 110/21
**accept [2]** 77/17 82/5
**access [6]** 21/13 21/14 23/3 23/7 23/20 29/4
**accessibility [1]** 34/11
**account [8]** 45/11 48/5 48/11 48/11 48/16
60/15 63/18 77/21
**accounting [2]** 76/7 76/14
**accounts [1]** 79/2
**accurate [11]** 29/12 31/3 39/9 47/11 49/22
52/4 60/1 61/4 62/25 67/3 75/13
**accused [2]** 10/8 72/8 72/15
**acknowledges [1]** 80/6
**acknowledgment [2]** 76/6 76/14
**act [1]** 25/12
**action [2]** 79/3 79/4
**actions [1]** 79/3
**actively [1]** 44/9
**actually [5]** 16/9 16/18 32/24 82/12 97/9
**acute [1]** 32/5
**additional [4]** 10/25 13/21 77/17 82/5
**address [3]** 5/4 5/24 69/14
**adequate [1]** 80/9
**administers [1]** 38/17
**Administration [4]** 38/18 49/11 65/17 67/2
**administrative [1]** 106/20
**admission [2]** 9/21 15/20
**admit [21]** 12/4 12/10 13/8 14/2 15/5 15/10
15/17 16/16 16/22 16/25 17/1 39/12 41/5
47/15 50/1 52/8 61/7 63/4 67/11 73/25 75/16
**admitting [1]** 56/24
**admonition [2]** 81/2 117/1
**advance [4]** 11/16 45/2 45/7 46/1
**advanced [4]** 8/7 11/9 77/7 82/12
**advances [1]** 45/4
**advancing [1]** 46/15
**advisory [2]** 2/15 4/9
**advocate [1]** 104/12
**advocated [1]** 74/15
**advocating [3]** 77/13 96/16 98/1
**affiliated [1]** 78/22
**afforded [1]** 4/20
**after [26]** 4/25 7/20 8/7 18/10 28/9 36/2 45/17
59/9 69/19 70/14 72/18 74/16 80/9 89/21 90/2
91/5 91/17 93/5 96/25 101/18 102/23 103/6
105/8 106/15 111/1 116/24
**again [7]** 22/15 22/17 31/22 51/9 57/21 57/23
64/8
**against [7]** 7/13 10/20 11/9 25/2 28/1 28/9
28/10 32/2 33/20 79/21
**Agency [1]** 41/7
**agent [1]** 55/12
**agents [3]** 78/14 78/19 116/8
**ago [5]** 17/25 18/3 18/20 33/19 63/24
**agree [11]** 6/23 7/1 7/9 8/13 10/1 10/14 11/12
14/24 16/12 45/6 65/22
**agreed [1]** 26/1 77/17 82/5
**agreement [35]** 9/24 25/12 25/15 25/20 29/10
29/13 30/5 30/12 30/16 30/20 30/25 31/4
31/17 31/24 35/6 35/16 36/18 69/13 69/24
76/13 76/14 76/22 78/17 79/7 79/8 79/17
79/20 79/24 80/8 80/9 80/10 81/20 82/15
114/6 114/21
**agreements [5]** 6/15 9/13 9/14 9/21 10/2
**aides [2]** 62/13 62/19
**Aircraft [1]** 16/1
**ALEXANDER [2]** 2/5 4/6
**all [26]** 7/9 12/10 12/16 16/11 21/10 21/11
21/11 23/1 24/1 25/8 43/2 43/5 48/22 51/16
61/21 71/5 74/17 75/5 77/15 77/25 78/23 79/9

79/12 107/2 109/12 109/24
**alleged [3]** 8/8 93/6 93/6
**allow [2]** 9/23 25/11
**allowed [2]** 8/21 102/19
**allowing [1]** 50/11
**allows [2]** 38/12 38/13
**almost [3]** 21/23 59/3 59/7
**aloud [1]** 48/2
**already [10]** 34/15 37/15 42/8 42/13 42/15
42/19 48/16 62/13 64/6 93/25
**also [18]** 2/18 4/23 5/1 8/6 12/12 21/6 25/1
34/22 38/19 58/7 61/2 61/19 63/17 69/8 97/13
107/5 114/18 117/21
**am [12]** 5/24 14/9 48/20 54/9 56/6 60/13
61/17 85/6 90/6 90/13 103/8 107/21
**AMERICA [2]** 1/9 4/4
**among [1]** 76/16
**amount [9]** 9/10 35/9 36/20 37/22 62/12
82/11 114/15
**amounts [3]** 45/18 45/20 68/21
**Ana [4]** 1/16 1/20 2/11 4/1
**analysis [1]** 14/16
**ancillary [1]** 8/4
**Angeles [7]** 2/8 28/10 30/14 33/21 36/25
37/20 78/17
**angry [1]** 44/12
**Ann [2]** 62/12 62/14
**another [9]** 6/16 41/2 48/5 61/1 80/12 103/8
104/21 105/7 105/7
**answer [11]** 23/10 23/13 23/15 23/15 23/17
23/17 23/15 25/17 25/18 56/5 83/25
**answered [4]** 12/3 91/13 95/7 95/15
**anxiety [1]** 90/16
**anxious [1]** 64/23
**any [46]** 4/13 4/21 4/23 6/19 8/4 11/21 12/6
16/6 17/8 21/13 22/20 23/6 24/8 25/19 25/25
29/17 30/12 30/16 30/20 31/8 37/12 45/2 51/2
52/12 53/14 69/8 69/11 72/25 78/23 79/6 79/8
79/12 79/21 81/3 81/5 82/16 88/3 90/15 90/18
92/21 95/12 106/6 112/1 112/7 117/2 117/4
**anybody [4]** 43/10 112/1 112/4 112/6
**anymore [3]** 21/13 93/22 109/23
**anyone [7]** 36/20 44/23 80/15 81/3 92/21
112/10 117/2
**anything [14]** 13/18 15/1 24/7 36/17 54/9 83/3
87/12 87/14 88/19 95/5 110/1 110/4 110/17
118/2
**APC [1]** 76/18
**apologies [1]** 15/21
**apologize [1]** 17/22
**appear [4]** 29/24 34/24 49/20 52/25
**APPEARANCES [1]** 2/1
**appeared [1]** 115/1
**appears [7]** 31/5 31/21 52/16 76/3 78/5 81/16
113/24
**application [2]** 58/12 79/12
**applies [2]** 18/22 50/17
**apply [4]** 5/18 6/22 11/1 19/11
**applying [1]** 23/7
**appointed [1]** 103/17
**appreciate [2]** 100/7 117/20
**approach [2]** 113/5 113/11
**approached [1]** 96/10
**Approval [1]** 74/6
**approve [2]** 46/4 74/8
**approved [5]** 55/10 56/11 58/22 62/14 71/22
65/1 65/11 70/14 82/6 82/8 107/16
**approximately [10]** 27/18 32/10 36/4 45/23
65/1 65/11 70/14 82/6 82/8 107/16
**arbitration [2]** 6/9 25/8
**are [72]** 7/18 8/3 8/7 8/10 8/15 9/11 9/12 9/14
10/25 11/13 11/22 12/11 12/12 13/2 13/4
13/24 14/1 14/2 14/5 14/10 14/19 17/8 17/9
20/21 20/22 23/23 27/6 27/10 27/12 27/12
29/3 29/4 40/5 40/6 40/17 41/16 47/9 48/18
48/22 49/9 49/10 49/13 49/14 49/15 51/9
51/25 52/1 52/2 52/16 53/13 63/21 63/24
64/14 68/13 68/15 69/1 69/2 69/15 70/10
81/17 81/18 81/20 81/20 83/18 83/19 88/16

88/19 94/12 95/12 95/20 103/11 118/8
**aren't [1]** 14/18
**argue [2]** 12/8 14/12
**argument [1]** 13/22
**Argumentative [1]** 112/14
**arises [1]** 14/20
**arising [1]** 79/7
**around [7]** 34/12 45/20 51/15 67/23 85/25
96/14 98/21
**arrange [1]** 90/22
**arranged [1]** 100/19
**arrest [3]** 28/1 89/14 89/17
**arrested [4]** 27/24 89/3 89/11 89/21
**arrived [1]** 72/3
**article [1]** 28/18
**as [67]** 4/10 4/10 5/10 5/14 6/21 9/24 10/17
10/17 12/5 12/11 12/12 12/18 13/23 14/2 14/8
16/5 16/5 16/7 17/12 17/18 19/6 19/11 19/11
19/19 19/19 19/24 25/4 25/12 25/24 28/6
30/20 32/7 34/16 37/11 37/15 43/6 43/19
47/17 47/17 50/10 51/16 52/13 63/21 65/15
70/21 70/23 70/23 73/9 76/9 76/15 77/18 79/7
88/12 88/24 97/14 97/16 98/1 98/11 99/16
103/17 108/4 108/13 109/9 111/6 116/2
117/16 117/17
**ask [34]** 7/14 8/14 10/11 23/14 25/9 41/23
46/17 46/19 48/24 50/15 51/18 52/19 54/14
69/14 73/12 74/11 85/8 87/14 95/22 98/19
100/13 100/16 100/19 102/3 110/12 110/15
110/17 115/17 116/15 117/21 117/22 117/22
118/3 118/5
**asked [23]** 22/4 24/24 25/7 25/10 43/16 43/16
83/25 85/11 87/16 91/13 94/21 94/23 95/7
95/15 101/3 108/24 114/5 114/24 115/3 115/7
115/11 115/20 116/2
**asking [8]** 48/23 52/25 56/5 56/6 66/11 87/17
115/6 116/5
**aspects [1]** 74/17
**asserting [1]** 11/14
**assigns [1]** 78/15
**assistance [1]** 99/19
**Assistant [3]** 2/4 2/6 2/10
**assisted [2]** 36/1 106/20
**assisting [1]** 4/11
**associated [1]** 93/14
**Associates [1]** 76/18
**assumed [1]** 99/7 99/8 103/19
**attached [1]** 19/6
**attachment [7]** 39/15 39/18 57/6 57/9 57/24
58/3 58/6
**attempt [1]** 13/8
**attempted [2]** 16/15 23/3
**attempts [1]** 12/6
**attention [2]** 94/8 115/15
**attorney [20]** 2/3 2/4 2/6 2/10 4/22 5/8 7/1 8/7
24/12 24/24 28/6 30/25 33/21 37/11 68/20
74/14 74/18 80/12 82/11 85/6
**Attorney's [1]** 111/23
**attorney/client [3]** 4/22 24/24 33/21
**attorneys [2]** 78/14 78/21
**attorneys' [4]** 30/6 30/13 30/16 30/20
**August [2]** 60/17 62/2
**August 19th [1]** 60/17
**authentication [3]** 47/17 50/3 52/10
**authority [1]** 101/12
**authorization [2]** 57/17 58/11
**authorize [5]** 74/9 82/18 82/21 82/24 83/2
**authorized [1]** 99/10
**automatically [1]** 46/16
**available [1]** 55/5
**AVENATTI [37]** 1/11 2/14 4/4 4/9 5/11 12/15
14/18 17/16 18/9 25/2 25/3 28/14 28/15 29/1
32/14 32/16 32/18 32/21 32/22 32/25 37/20
40/14 40/16 44/25 49/16 52/23 59/1 67/15 74/9
76/3 76/17 76/18 78/20 83/11 84/10 107/4
112/11
**Avenatti's [1]** 41/10
**Avenida [1]** 2/16
**avoidance [1]** 79/9

**A**

**award [1]** 68/17

**B**

**aware [5]** 6/21 12/5 19/20 88/19 95/12
**away [2]** 41/16 63/11

**B**

**back [15]** 30/4 31/22 38/23 50/11 54/6 64/5
70/2 93/21 95/2 95/13 109/9 109/16 109/17
116/13 116/24
**bad [1]** 74/13
**bail [1]** 84/19
**bank [7]** 15/8 15/16 15/22 15/24 17/4 45/11
77/21
**based [6]** 37/10 38/23 69/8 79/23 98/15 118/4
**basic [1]** 63/22
**basically [3]** 5/7 34/13 109/12
**basis [2]** 14/23 16/13
**Bates [4]** 17/24 18/16 18/21 18/22
**be [107]** 4/16 4/18 4/19 4/20 5/9 5/16 5/17
5/22 6/7 6/10 7/1 7/2 7/3 8/9 8/20 9/10 9/22
10/6 10/12 11/7 11/15 11/17 12/12 13/9 13/18
14/23 16/12 16/21 17/13 17/16 19/19 21/17
24/10 24/12 24/24 25/7 25/10 25/13 25/17
25/22 29/19 29/24 30/1 31/5 31/10 31/21
34/12 34/24 36/11 38/14 39/17 39/18 41/11
43/20 45/8 45/9 46/24 47/3 47/18 49/20 50/5
50/7 50/19 51/12 52/11 52/12 52/18 52/25
55/5 55/7 55/9 55/10 55/11 56/14 59/19 60/7
61/9 61/18 63/6 63/16 64/9 67/13 68/24 73/10
74/2 75/18 76/3 77/19 78/5 79/10 79/13 81/2
81/8 83/25 85/15 94/13 98/8 99/1 99/15
100/11 100/20 102/22 103/1 105/5 109/5
117/16 118/10
**Beada [24]** 28/8 30/18 31/14 85/3 85/4 86/5
86/12 87/14 88/13 90/17 90/22 90/25 91/7
93/6 93/9 93/11 93/14 94/3 95/3 96/3 96/7
100/17 100/24 101/8
**bearing [1]** 10/4
**became [1]** 105/6
**because [31]** 5/17 13/5 14/11 16/11 19/19
22/12 22/17 40/18 42/19 44/17 45/10 48/15
55/9 56/4 56/11 58/22 70/21 80/21 82/10
87/23 88/1 90/5 90/22 93/21 100/10 102/23
104/25 109/10 111/4 111/6 111/7
**been [39]** 7/17 9/8 17/23 20/21 20/24 21/6
23/25 24/5 25/24 27/24 28/4 32/2 42/8 42/13
43/17 44/19 44/21 44/23 45/1 46/3 61/23
62/13 68/19 68/23 72/2 72/18 72/14 80/6 84/13
84/16 84/19 88/9 89/3 89/13 90/5 90/14 90/15
96/22 99/6
**before [18]** 11/23 13/1 21/1 23/19 27/16 38/3
40/25 57/9 58/3 58/19 61/23 80/15 80/25 82/1
89/14 89/17 98/2 103/12
**begin [3]** 45/17 51/12 109/5
**beginning [2]** 102/22 116/11
**behalf [14]** 4/6 33/24 37/12 74/16 74/22 77/8
78/13 78/14 96/16 96/19 96/23 96/25 98/1
98/22
**behind [1]** 62/5 96/18 96/20 98/17
**being [10]** 11/8 12/25 12/25 15/6 19/1 90/12
94/4 102/20 111/3 113/10
**belief [1]** 59/15
**believe [34]** 6/22 16/25 17/10 17/25 19/6
23/18 23/21 30/3 36/5 39/2 40/21 41/9 44/8
44/14 44/20 45/24 78/23 85/13 86/6 86/18
87/11 91/20 92/21 94/25 97/13 99/21 99/25
101/8 101/10 103/11 105/24 107/18 109/20
113/6
**believed [1]** 100/10
**believes [2]** 5/1 8/15
**below [7]** 30/2 35/6 57/14 68/10 69/10 77/16
78/1
**beneficiary [1]** 77/18
**benefit [3]** 97/6 106/18 107/15
**benefits [10]** 38/13 38/21 45/15 65/16 65/25
66/3 66/5 66/17 66/20 71/7
**best [4]** 23/22 30/7 103/1 103/15
**better [1]** 85/8
**between [3]** 4/22 49/23 76/16

**beyond [1]** 83/23
**bias [2]** 97/15 105/17
**bigger [1]** 5/19
**bill [2]** 32/24 53/14
**bills [3]** 90/19 106/7 106/11
**binder [11]** 29/7 47/3 57/1 57/2 59/20 97/14
97/16 113/4 113/7 113/10 114/17
**binders [3]** 29/3 97/8 97/10
**bipolar [3]** 90/5 90/9 90/12
**bit [2]** 54/25 100/7
**BLAINE [1]** 2/19
**blanket [1]** 14/23
**block [2]** 94/18 115/15
**blocked [1]** 113/2
**blow [2]** 52/22 94/17
**blue [1]** 96/10
**board [2]** 32/8 100/17
**bolded [2]** 35/9 114/15
**both [3]** 39/15 52/25 85/15
**bottom [7]** 31/13 48/8 52/22 58/5 70/5 94/18
97/20
**Brady [3]** 20/17 22/17 23/23
**BRANDON [1]** 2/4
**breach [1]** 79/8
**break [4]** 81/1 110/23 116/14 116/25
**BRETT [2]** 2/9 4/5
**briefly [1]** 7/7 22/23
**bring [5]** 7/6 9/6 24/14 100/25 118/4
**broad [1]** 84/2
**broadest [1]** 79/11
**brought [3]** 7/20 14/10 100/16
**brown [2]** 28/21 28/22
**Building [1]** 1/17
**bullets [1]** 68/10
**business [1]** 12/7
**businesses [1]** 82/22
**buy [1]** 34/10
**buying [1]** 55/2

**C**

**CA [4]** 1/20 2/8 2/11 2/16
**Cal [3]** 38/13 38/19 38/21
**CALIFORNIA [5]** 1/5 1/16 4/1 15/8 17/4
**call [15]** 16/23 26/8 45/4 69/12 69/13 71/16
71/19 106/21 111/19 111/21 111/23 112/1
112/3 112/6 112/9
**CALLAHAN [2]** 2/19
**called [3]** 6/7 55/19 108/24
**calls [5]** 26/10 45/13 46/22 92/23 106/8
**came [7]** 23/22 71/21 83/17 86/4 96/17
112/13 112/17
**can [53]** 5/9 6/12 8/14 11/9 14/15 15/8 20/6
28/17 29/7 45/7 45/10 47/2 48/2 48/6 48/8
53/3 53/9 53/11 53/15 60/14 62/10 63/16
63/17 64/7 64/9 64/14 64/19 68/11 69/4 69/11
70/18 73/18 74/7 74/11 76/12 77/3 77/14 78/8
84/6 85/8 85/16 91/23 94/19 96/11 107/15
109/23 111/9 112/21 112/22 113/5 113/25
116/15 117/17
**can't [4]** 14/22 48/15 63/17 103/21
**Canoga [1]** 106/24
**capacity [1]** 25/3
**card [1]** 63/16
**care [22]** 69/23 69/25 74/17 92/4 93/13
100/20 102/1 102/4 102/19 103/1 103/4 104/1
104/25 105/5 106/15 106/21 107/10 109/8
109/11 109/23 110/4 110/8
**cared [1]** 110/19
**caregivers [1]** 109/20
**CareMeridian [37]** 32/3 32/4 32/6 32/10 32/13
32/24 33/2 33/8 33/12 36/2 65/3 91/18 92/5
92/10 93/2 93/4 93/5 100/20 101/19 101/20
101/22 102/4 102/17 102/14 102/19
103/7 103/24 105/12 105/14 105/17 105/21
105/22 105/23 106/14 108/5 113/23 113/25
116/15 117/17
**case [16]** 6/7 8/16 10/5 11/6 21/4 30/6 35/12
35/19 37/1 38/3 74/17 81/3 81/4 103/17 117/2
117/3
**cases [5]** 4/24 8/19 9/2 9/9 10/15

**caused [1]** 9/3
**causes [1]** 77/3
**cautioned [1]** 116/11
**Cefali [1]** 4/10
**CENTRAL [1]** 1/5
**centralized [1]** 106/23
**CEO [1]** 40/1
**certain [5]** 9/21 12/10 22/5 65/17 99/4
**certainly [1]** 75/7 98/2 102/25
**CERTIFICATE [1]** 119/5
**CERTIFIED [1]** 1/9
**certify [1]** 119/7
**cetera [4]** 21/6 21/14 73/6 73/7
**chain [2]** 39/9 54/5
**chair [1]** 70/23
**challenges [1]** 90/3
**chance [3]** 18/14 20/10 98/20
**charged [3]** 7/17 8/8 8/16
**charges [10]** 7/13 7/18 28/1 28/7 28/9 31/15
32/2 93/6 93/16 93/22
**chart [1]** 112/21
**Chase [1]** 15/24
**Chatsworth [2]** 91/20 106/23
**check [9]** 36/25 37/3 37/19 37/22 37/24 38/6
62/2 62/11 62/14
**checked [1]** 54/13 93/2
**checks [4]** 45/18 45/20 46/1 46/6
**Chief [1]** 2/5
**choice [1]** 108/6
**choosing [1]** 80/11
**circled [3]** 69/2 69/4 69/10
**circumstances [6]** 60/20 83/20 84/1 84/6
95/18 98/12
**city [2]** 15/16 27/8
**civil [4]** 4/24 7/12 8/19 25/1
**civilly [1]** 7/12
**claiming [2]** 91/11 96/7
**claims [5]** 7/25 77/16 77/25 79/1 79/21
**clarify [1]** 93/24
**clause [1]** 43/19
**clean [1]** 95/9
**clear [3]** 16/14 16/24 23/23
**Clemente [1]** 2/16
**client [8]** 4/22 4/22 11/2 11/7 24/24 33/21
74/6 74/8
**close [3]** 51/10 55/23 88/5
**closing [1]** 55/21
**clothing [1]** 28/18
**Code [1]** 119/8
**collectively [2]** 76/18 76/19
**come [19]** 11/19 14/8 17/9 20/4 24/16 36/9
50/11 71/20 71/23 86/24 101/7 105/16 105/21
106/22 108/17 108/19 110/19 116/13 116/24
**comes [1]** 22/9
**coming [2]** 55/8 64/24
**communicate [1]** 46/20
**communicated [2]** 67/15 74/16
**communicating [4]** 46/23 98/11 98/22 99/4
**companies [1]** 78/22
**company [4]** 16/1 103/21 103/22 103/22
**compelled [1]** 25/18
**competent [1]** 80/7
**compilation [2]** 49/22 52/4
**complaints [1]** 79/1
**completed [1]** 46/3
**complicated [1]** 55/25
**complies [17]** 29/8 30/23 37/18 39/6 41/1
47/4 49/2 51/22 57/4 59/21 60/25 62/22 66/23
68/6 73/19 75/9 75/23
**concern [1]** 24/23 25/6 66/10
**concerned [3]** 65/3 65/5 65/6
**concerning [2]** 67/22 111/13
**concerns [2]** 20/16 24/21
**conclude [1]** 101/7
**conclusion [1]** 110/19
**condition [2]** 20/20 21/5 21/17
**conduct [4]** 4/25 8/20 68/3 112/7
**conference [2]** 11/11 119/12
**conferring [1]** 15/3 71/10 83/9

**C**

confidential [2]  4/23 36/19
confidentiality [1]  9/5 9/9 9/24 25/9 25/12 25/14 25/19 36/18
confined [1]  86/13
conflating [1]  21/20
conformance [1]  119/11
Confrontation [1]  43/19
connection [6]  24/25 25/1 28/11 74/10 80/7 99/5
consider [2]  20/11 104/14
construction [1]  79/11
contact [2]  69/7 104/4
contacted [2]  43/22 109/22
contained [1]  66/11
contends [2]  8/10 9/2
content [3]  39/19 50/20 67/14
contention [1]  7/21
context [2]  5/18 10/19
contingent [2]  78/25 78/25
continue [4]  45/20 59/9 59/14 66/18
continued [1]  96/25
Continuing [1]  54/5
contract [1]  33/21
contracts [1]  79/2
contrary [2]  6/14 6/16
contribution [1]  79/5
control [1]  22/8
conversation [12]  35/21 36/4 36/6 50/10 59/2 67/23 72/7 72/13 88/15 91/10 101/5 102/6
conversations [1]  42/1
convey [1]  59/15
conveyed [1]  50/14
convicted [1]  28/4
copy [11]  29/12 31/3 39/9 47/11 60/1 61/4 62/25 67/3 67/7 75/13 113/13
cord [2]  106/2 106/21
correct [25]  8/3 15/14 36/3 58/24 85/6 88/11 89/5 89/23 90/20 93/10 93/14 94/24 94/24 95/20 96/5 96/8 96/9 97/16 99/8 99/10 109/13 110/2 111/5 112/3 119/9
cost [1]  63/15
costs [4]  77/8 79/2 82/11 102/14
could [59]  5/6 5/8 13/8 17/11 19/9 22/1 22/2 22/3 22/4 22/4 29/23 30/1 30/22 31/19 31/22 33/5 34/12 34/15 35/5 36/23 37/16 39/5 40/20 42/10 44/11 45/15 47/20 48/10 48/12 48/16 49/1 49/12 50/21 51/3 51/8 52/18 53/7 56/24 57/22 59/19 60/24 61/13 61/16 62/7 63/8 67/19 68/5 68/16 69/8 71/22 76/25 86/25 87/17 88/13 109/4 112/18 112/24 113/15 114/1
couldn't [2]  36/19 48/18
counsel [20]  2/1 2/15 4/9 4/17 5/3 5/3 11/15 15/3 21/10 21/12 71/10 76/19 77/4 77/5 77/7 77/7 78/19 80/7 80/10 83/9
County [22]  27/22 28/10 30/14 33/20 36/25 37/19 42/16 44/21 46/2 46/4 55/11 56/12 68/18 73/9 73/11 74/24 76/10 76/20 78/17 79/25 101/14 109/19
couple [3]  12/4 115/20 116/4
course [6]  14/12 23/6 33/7 42/11 44/12 77/12
court [22]  1/4 5/4 5/13 5/24 6/11 9/11 10/11 10/12 12/9 19/23 19/24 20/16 23/7 25/16 25/22 28/15 68/17 72/15 97/7 112/25 113/13 119/17
Court's [1]  19/5 84/20 88/5
Courthouse [1]  1/19 2/7
courtroom [1]  24/15
cover [2]  59/18 63/17
covered [1]  25/14
cracks [1]  100/1
credit [1]  63/15
crime [4]  28/4 112/1 112/4 112/10
criminal [5]  2/5 7/12 28/7 31/14 32/2
criminally [1]  7/17
critical [1]  102/23
cross [6]  3/5 3/16 7/5 8/22 83/12 117/14
cross-examination [3]  7/5 8/22 83/12

cross-examine [1]  117/14
crossroads [1]  102/25
current [1]  78/18
currently [1]  27/10
custodial [1]  13/12
custodian [10]  12/1 12/17 15/9 15/17 15/22 15/24 16/2 17/23 18/6 18/21
custodians [2]  14/20 16/23
cut [1]  89/14

**D**

dad's [1]  62/13
date [10]  31/17 31/23 37/24 60/16 63/19 70/12 111/14 112/21 113/22 119/14
dated [5]  57/11 58/7 70/18 76/14 97/20
day [17]  1/12 11/23 54/5 54/8 56/2 64/18 71/17 71/23 72/15 72/22 72/25 73/20 76/15 90/18 96/3 109/8 109/11
day of [1]  76/15
days [1]  70/14
deal [1]  55/25
dealing [1]  17/20
DEAN [2]  2/15 2/15
Deborah [1]  103/11
debts [1]  79/1
December [2]  65/14 69/7 96/15
December 2011 [1]  96/15
December 3rd [1]  69/7
decided [1]  79/13
decision [1]  110/1
declaration [16]  13/15 14/21 15/12 15/17 15/23 15/25 16/2 16/8 16/9 16/11 16/13 16/13 17/23 18/2 18/18 18/21
declarations [16]  12/12 12/18 13/9 13/12 13/12 13/14 14/14 14/15 14/19 15/9 16/9 17/12 18/9 18/15 18/16 19/10
declarations or [1]  14/14
defendant [99]  1/12 2/13 4/9 4/25 7/13 7/14 7/15 8/8 8/14 8/21 10/5 10/12 11/1 12/5 14/1 14/10 21/19 28/24 29/1 29/9 30/5 30/13 30/17 30/19 32/15 32/21 33/1 33/7 33/11 33/19 33/23 34/1 34/4 35/12 35/15 35/18 36/17 36/24 37/11 38/5 40/22 41/19 42/7 42/12 43/6 44/1 44/9 45/25 46/15 46/17 46/20 46/25 48/24 49/23 51/17 51/18 53/8 53/24 54/15 55/1 56/13 57/17 58/11 59/10 59/16 61/2 62/18 63/22 63/25 65/19 65/22 66/2 66/14 67/7 69/17 69/19 71/12 71/16 72/1 72/7 72/14 73/16 74/21 75/2 76/9 76/22 77/22 79/17 79/21 79/23 80/21 82/1 82/10 82/15 82/19 82/21 83/2 83/6
defendant's [2]  53/22 70/24
defendants [1]  86/10
defender [2]  84/25 101/11
defense [7]  3/16 3/18 6/7 18/20 20/21 20/24 23/25
defer [1]  5/12
demands [1]  79/1
denied [3]  23/4 23/20 84/19
dental [1]  63/14
Department [1]  78/18
Depending [1]  11/13
deposit [18]  48/7 48/10 48/17 51/3 53/1 53/9 53/10 53/12 53/21 53/25 54/7 54/9 54/13 54/15 60/12 60/14 61/20 63/17
deposited [1]  54/21
depositing [1]  48/5
deposition [2]  21/3 21/7
deposits [2]  48/23 51/19
Depression [1]  90/16
describe [5]  56/25 57/22 84/6 91/23 106/18
described [4]  25/24 75/11 100/21
describing [1]  76/8
designated [1]  14/2 77/21
designee [1]  77/18
desperate [2]  60/14 60/18
desperately [1]  74/14
despite [1]  88/8
detail [1]  40/5

detailed [1]  62/3
details [1]  35/20
diagnosed [1]  90/5
diagnoses [1]  90/15
diagnosis [2]  90/7 90/14
did [278]
didn't [36]  10/23 16/21 16/23 36/16 42/24 46/8 55/23 56/7 56/10 86/5 88/14 89/1 91/4 91/11 92/17 93/3 93/21 96/23 99/10 100/15 103/4 110/1 110/3 110/4 110/6 110/7 111/19 111/21 111/23 112/1 112/6 112/9 112/10 112/17 115/17 116/20
different [9]  7/18 8/19 22/4 35/1 95/22 115/21 116/4 116/6 117/23
difficult [1]  107/7
dining [1]  106/23
direct [7]  3/5 3/16 23/14 25/16 27/2 94/8 114/24
directed [2]  77/19 115/14
direction [1]  77/7
directly [1]  41/19
directors [1]  78/21
disabled [3]  93/25 94/4 102/20
disagree [1]  87/6
Disbursements [1]  68/18
discharge [2]  79/10 79/13
discharges [1]  78/16
discovery [1]  22/14
discuss [6]  34/1 36/19 41/24 55/1 81/3 117/2
discussed [1]  12/14
discussion [5]  5/19 5/22 18/5 18/10 18/25
discussions [1]  11/22
dismissed [2]  93/6 93/16
disprove [1]  11/9
dispute [4]  15/5 89/19 96/5 96/6
disputes [1]  79/12
disputing [2]  88/16 95/20
DISTRICT [2]  1/4 1/5
DIVISION [2]  1/6 2/5
do [121]
document [55]  13/24 16/13 16/13 16/24 17/1 17/4 17/6 18/17 22/5 29/24 30/24 34/17 38/3 48/21 50/5 50/6 50/10 51/23 56/25 57/23 59/22 66/11 66/24 73/3 73/8 74/5 74/20 75/6 75/10 75/13 76/5 76/8 77/11 78/7 80/2 80/12 94/22 95/1 95/13 95/18 97/3 97/6 98/16 113/3 113/9 113/14 113/18 113/21 115/3 115/5 115/9 115/15 115/17 116/3 116/22
documents [36]  12/4 12/10 12/15 12/22 13/2 13/5 13/7 13/9 14/1 16/16 16/19 17/24 18/22 19/1 19/15 21/16 23/2 50/4 52/1 65/17 65/20 68/13 68/16 69/23 70/10 70/22 71/3 72/25 73/2 73/3 73/12 73/20 96/2 114/25 115/6 115/10
does [14]  7/2 14/1 19/14 22/9 24/11 29/24 34/24 34/25 49/19 63/15 70/8 97/25 98/20 113/21
doesn't [3]  11/1 18/2 22/17
doing [1]  21/22 98/17 110/13
dollar [5]  93/11 100/13 100/16 100/19 102/3
dollars [1]  102/15
don't [74]  5/2 5/7 6/4 6/22 7/4 9/12 10/10 10/17 12/21 12/23 13/2 13/7 14/7 17/10 17/15 17/16 18/8 18/15 21/2 21/7 21/12 21/15 22/8 22/15 23/9 23/13 25/25 30/3 43/14 43/23 44/6 52/12 56/4 58/17 60/20 70/25 71/4 71/6 77/23 81/5 84/17 87/2 87/8 87/16 87/19 88/5 88/18 89/16 89/18 90/11 91/6 91/7 91/10 91/11 93/4 95/4 95/17 96/4 96/5 96/6 97/2 98/17 101/5 102/9 103/15 109/22 111/14 115/12 115/19 116/13 116/3 117/4 117/11 117/22
done [10]  7/3 16/12 18/10 22/19 53/12 53/15 63/14 73/4 73/6 94/3
door [4]  10/9 85/4 100/25 101/1
doubt [2]  79/9 117/11
down [6]  26/20 31/19 35/5 47/22 50/24 95/6
DREW [2]  2/19 24/20
dropped [4]  28/2 28/7 28/9 32/2
Drum [2]  19/22 20/3

**D**

due **[1]** 70/10
during **[18]** 12/3 13/8 21/4 32/12 36/6 45/25 46/5 46/15 46/23 56/13 59/2 72/13 77/12 86/19 86/23 96/23 105/16 106/4
duties **[1]** 79/7

**E**

e-mail **[31]** 39/7 39/9 39/15 39/22 39/24 40/11 40/12 41/2 44/19 57/5 57/6 57/9 57/24 57/25 58/3 59/24 60/1 60/10 60/16 61/1 61/4 61/17 62/4 62/23 62/25 63/9 63/12 63/19 97/20 98/2 112/10
e-mailing **[1]** 40/11
e-mails **[2]** 46/22 62/4
each **[9]** 14/13 17/19 17/23 35/3 76/19 77/20 78/16 78/18 80/6
Eagan **[8]** 25/3 32/14 32/18 32/23 37/20 40/14 78/20 107/4
earlier **[8]** 59/4 59/7 65/10 69/16 74/22 74/25 75/3 76/8
easier **[2]** 61/18 94/13
easiest **[1]** 113/2
ecstatic **[2]** 93/19 93/20
effective **[1]** 76/15
efficient **[1]** 117/17
efforts **[1]** 74/10
eight **[2]** 13/13 84/17
either **[2]** 12/23 46/17
else **[6]** 15/1 24/7 43/10 87/12 107/11 118/2
embedded **[1]** 52/12
employed **[1]** 27/10
employee **[1]** 41/11
employees **[2]** 78/14 78/19
enable **[1]** 107/5
enclosure **[1]** 114/22
encourage **[1]** 110/4
end **[7]** 20/15 29/23 33/23 55/21 56/6 65/13 89/1
energy **[1]** 100/8
engaged **[1]** 112/7
Enjoy **[1]** 117/5
enjoyed **[1]** 101/24
enough **[4]** 10/10 14/17 23/16 100/1
enter **[1]** 55/18
entered **[3]** 4/24 76/16 80/8
entering **[2]** 6/15 80/8
enters **[1]** 24/15
entertainment **[1]** 54/22
entire **[2]** 46/23 106/4
entirely **[2]** 6/13 83/23
entities **[2]** 14/14 78/23
entitled **[5]** 8/12 20/25 30/6 82/12 119/10
entity **[2]** 13/14 14/19
equitable **[1]** 79/5
equity **[1]** 79/3
Ernest **[1]** 34/18
error **[1]** 70/25
escrow **[3]** 55/18 55/21 55/24
especially **[1]** 19/1
Esquire **[2]** 74/9 76/17
establish **[5]** 9/2 42/19 44/9 44/14 107/15
established **[3]** 43/17 68/20 68/23
establishing **[2]** 41/20 43/11
estate **[1]** 55/12
estimate **[1]** 111/9 117/12 118/4
estimates **[3]** 118/7 118/8 118/8
et **[4]** 21/6 21/14 73/6 73/6
ethical **[1]** 74/18
ethically **[1]** 77/5
evaluate **[1]** 87/8
evaluation **[1]** 68/3
even **[2]** 22/11
ever **[45]** 5/2 28/4 30/12 30/16 33/1 33/7 33/11 34/4 35/12 35/15 36/24 38/3 41/19 42/8 42/12 42/15 42/18 43/10 45/2 46/6 46/9 56/14 57/8 57/17 58/2 58/11 58/14 58/18 62/18 71/2 71/5 71/9 71/12 82/15 82/18 82/21 82/24 83/2 83/6 86/11 86/16 94/3 96/12 102/3 110/7

every **[6]** 14/20 36/9 68/3 100/7 102/15 106/6
everything **[9]** 6/14 11/10 22/6 50/13 80/22 87/17 88/8 88/13 106/13
evicted **[1]** 65/6
evidence **[28]** 6/20 9/25 25/13 29/15 29/20 30/7 31/7 31/11 33/14 34/16 37/15 39/21 41/12 47/19 50/8 52/14 56/24 57/22 60/8 61/11 63/7 64/6 67/17 74/3 75/19 94/10 95/12 98/5
exact **[5]** 60/20 87/2 88/15 95/4 115/12
exactly **[4]** 14/7 14/8 84/17 111/14
examination **[6]** 7/5 8/22 27/2 83/12 114/24 115/7
examine **[1]** 117/14
example **[2]** 9/16 10/4
examples **[1]** 59/18
except **[1]** 79/6
exception **[3]** 5/18 12/7 61/20
exceptional **[1]** 74/18
excited **[1]** 72/6
excluding **[1]** 6/20
excuses **[2]** 64/20 64/22
exhibit **[107]** 3/9 3/9 3/10 3/10 3/11 3/11 3/12 3/12 3/13 3/13 3/14 3/14 3/15 15/9 15/13 15/23 15/23 15/25 15/25 16/2 16/8 17/3 17/13 18/9 18/11 19/6 29/7 29/12 29/16 29/19 29/20 30/4 30/22 31/7 31/10 31/11 31/19 31/22 34/16 34/21 35/7 36/17 37/17 39/5 39/13 39/21 40/24 41/12 47/2 47/5 47/11 47/15 47/19 49/1 49/3 49/5 49/7 49/8 49/13 50/1 50/8 50/22 51/16 51/21 52/8 52/14 56/23 57/21 59/19 60/4 60/8 61/9 61/11 62/21 63/4 63/7 64/5 66/22 67/11 67/17 70/2 70/3 73/18 73/25 74/3 75/8 75/16 75/19 75/22 81/15 94/9 97/14 97/17 98/5 98/20 98/25 99/14 99/16 113/4 113/6 113/10 113/25 114/6 114/17 114/22
Exhibit 1 **[5]** 29/7 29/12 29/16 31/22 94/9
Exhibit 103 **[2]** 59/19 60/4
Exhibit 106 **[2]** 60/24 61/7
Exhibit 108 **[2]** 66/22 67/11
Exhibit 111 **[2]** 62/21 63/4
Exhibit 118 **[3]** 47/2 47/15 51/16
Exhibit 119 **[3]** 52/8 64/5 70/2
Exhibit 120 **[4]** 49/1 49/8 50/1 50/22
Exhibit 121 **[2]** 73/18 73/25
Exhibit 122 **[3]** 75/8 75/16 81/15
Exhibit 152 **[1]** 15/25
Exhibit 2 **[2]** 30/22 31/7
Exhibit 25 **[1]** 15/23
Exhibit 3 **[6]** 97/14 98/5 98/20 98/25 99/14 113/6
Exhibit 37 **[4]** 34/16 113/25 114/6 114/17
Exhibit 393 **[1]** 15/23
Exhibit 394 **[1]** 16/8
Exhibit 395 **[1]** 15/25
Exhibit 396 **[1]** 16/2
Exhibit 40 **[1]** 37/16
Exhibit 41 **[1]** 17/3
Exhibit 59 **[1]** 40/24
Exhibit 60 **[2]** 39/5 39/13
Exhibit 94 **[1]** 56/23
Exhibit 95 **[1]** 17/16
exhibit a **[1]** 47/11
exhibits **[19]** 3/8 3/19 12/11 12/12 12/17 12/18 14/2 14/5 14/6 14/7 14/11 14/15 15/4 15/10 15/18 15/21 16/3 16/11 97/14
existed **[1]** 21/20
expect **[5]** 14/11 23/14 37/11 38/23 69/25
expectation **[1]** 66/14
expected **[3]** 37/13 43/6 43/8
expenses **[19]** 32/13 32/19 33/2 33/9 38/24 39/3 54/22 54/23 59/10 59/15 62/3 63/22 63/25 77/8 79/2 90/18 93/12 106/6 107/2
expensive **[4]** 102/7 102/10 102/17 102/18
explain **[6]** 36/11 76/22 77/22 82/1 82/10 109/18
explaining **[1]** 77/23

express **[1]** 79/9
expressly **[1]** 80/6
extent **[2]** 6/25 8/14
extremely **[1]** 92/7

**F**

facilitate **[1]** 18/4
facility **[8]** 32/7 36/1 91/25 102/12 103/8 104/21 106/21 108/4
fact **[12]** 7/11 7/20 8/11 13/24 21/20 41/10 50/12 50/12 50/14 50/19 91/5 91/8
facto **[1]** 11/11
facts **[3]** 9/21 10/5 11/13
failed **[1]** 111/7
fair **[22]** 10/10 14/17 16/21 23/16 29/12 31/3 39/9 47/11 49/22 52/4 54/23 56/7 60/1 61/4 62/25 67/3 75/13 80/9 90/3 91/12 93/25 94/4
fairly **[1]** 48/23
fall **[1]** 100/2
family **[7]** 44/6 85/10 86/24 88/9 89/6 89/10 99/4
far **[4]** 10/15 10/17 41/16 63/11
fast **[1]** 71/15
fast-forward **[1]** 71/15
father **[3]** 85/14 85/17 89/13
father's **[1]** 62/18
favor **[1]** 79/13
favorable **[1]** 23/24
FBI **[1]** 111/19
February **[8]** 70/21 96/15 97/21 97/22 98/1 98/11 99/3 99/18
February 16th **[1]** 97/22
February 2012 **[2]** 96/15 98/11
February 6 **[1]** 97/21
Federal **[1]** 2/10
FedEx **[3]** 64/9 64/17 70/9
fee **[2]** 31/3 33/21
feel **[1]** 74/19
fees **[6]** 30/6 30/13 30/16 30/20 30/25 82/11
fell **[2]** 58/21 59/9
few **[8]** 6/18 33/19 34/1 59/18 68/10 80/24 81/15 82/18
fiercely **[1]** 74/15
Fifty **[1]** 27/7
Fifty-six **[1]** 27/7
figure **[5]** 16/10 18/17 19/15 103/2 107/5
file **[1]** 28/10
filed **[4]** 6/9 19/21 25/2 78/24
files **[1]** 22/24
filing **[1]** 33/23
final **[7]** 19/3 74/21 77/15 77/25 80/24 81/15 82/18
finalized **[5]** 42/9 42/13 44/21 44/24 45/1
financial **[1]** 38/11
financially **[1]** 89/6
find **[1]** 11/19
finding **[1]** 91/9
fine **[8]** 5/14 5/25 20/7 20/10 53/5 78/10 95/10 109/2
fingerprints **[1]** 17/17
fingertips **[1]** 17/16
finish **[1]** 83/25
firm **[11]** 20/22 21/13 22/25 25/3 25/4 32/15 44/7 45/7 63/15 82/25 106/10
firms **[4]** 76/23 78/14 78/20 79/18
first **[44]** 4/16 4/16 5/21 7/9 16/8 22/13 22/15 26/16 29/23 35/3 46/4 51/10 51/13 51/15 57/2 61/14 61/16 64/6 67/19 67/21 69/4 74/7 74/13 76/4 76/12 77/20 83/20 84/7 84/13 84/24 85/17 85/25 86/1 86/11 86/16 87/7 87/9 90/17 91/17 93/24 95/14 96/3 100/23 101/6 101/13 109/10 111/13 111/15 112/25 113/22 114/13 114/20 114/21 114/22 115/10 117/17
fitted **[1]** 34/11
five **[3]** 13/13 14/13 14/14
fix **[2]** 70/25 71/12
flat **[1]** 86/14
flip **[1]** 112/21
Focusing **[7]** 31/13 34/16 39/24 44/19 52/16

**F**

**Focusing... [2]** 58/5 82/4
**follow [1]** 41/18
**following [5]** 16/7 74/8 77/18 82/6 105/1
**forced [1]** 108/9
**foregoing [1]** 119/8
**forever [1]** 78/15
**form [2]** 81/3 117/2
**formal [1]** 25/22
**format [1]** 119/11
**former [2]** 25/4 78/18
**forth [1]** 50/11
**forthwith [1]** 70/25
**fortunate [1]** 74/19
**Forty [1]** 30/10
**Forty percent [1]** 30/10
**forward [3]** 40/21 56/1 71/15
**forwarded [1]** 40/19
**forwarding [1]** 40/11
**fought [1]** 21/14
**foundation [14]** 14/22 19/2 33/3 33/15 41/8
42/21 46/11 54/1 54/16 72/9 78/7 98/7 98/9
99/16
**four [8]** 8/1 10/8 30/5 61/17 74/22 74/25 75/3
117/23
**four million [1]** 10/8
**Fourth [1]** 2/11
**FOX [1]** 2/4
**frames [1]** 118/6
**frankly [2]** 21/1 21/15
**fraud [1]** 7/18
**Frauds [1]** 2/6
**free [1]** 93/22
**Freedom [15]** 40/1 40/2 40/2 43/16 108/1
108/13 108/17 108/20 109/5 109/10 111/1
111/2 111/3 111/7 111/10
**Friday [3]** 70/13 71/15 71/24
**friend [1]** 104/14
**friends [1]** 107/8
**front [3]** 12/8 29/3 113/19
**full [8]** 8/1 8/11 9/3 46/7 61/14 77/15 77/24
78/8
**functional [2]** 102/20 102/22
**funds [9]** 41/21 53/9 59/3 72/16 82/8 82/19
82/22 82/24 83/3
**furious [1]** 44/5
**further [2]** 18/24 83/10
**future [1]** 78/23

**G**

**G-e-o-f-f-r-e-y [1]** 26/17
**gave [4]** 17/18 21/3 21/22 89/10
**gears [1]** 54/25
**general [5]** 54/23 76/6 76/13 78/13 102/14
**generally [8]** 40/6 46/19 51/13 54/20 107/12
107/14 111/17 115/6
**gentleman [2]** 4/10 43/14
**gentlemen [4]** 26/7 50/9 81/1 117/1
**Geoff [3]** 41/18 60/15 63/18
**GEOFFREY [10]** 3/6 4/16 26/10 26/14 26/17
29/25 34/18 74/8 76/16 109/4
**get [44]** 7/25 8/21 17/11 19/9 21/24 23/3 23/6
34/5 34/11 34/12 34/13 36/8 53/15 53/15
54/14 57/3 60/14 60/18 64/23 65/6 70/23
71/22 72/5 80/22 81/24 87/8 87/20 88/9
88/14 88/22 90/21 91/9 91/16 92/9 93/16
96/11 96/19 100/17 101/3 101/14 101/16
104/1 105/10 110/4
**getting [9]** 8/1 8/18 10/12 21/14 56/14 80/1
88/5 91/2 93/6
**Giglio [3]** 20/17 22/18 23/23
**give [6]** 11/16 45/2 45/6 56/1 57/17 58/11
**given [3]** 13/5 13/6 79/10
**giving [1]** 89/13
**go [40]** 8/4 9/4 16/11 17/13 19/15 21/16 21/23
31/19 31/22 44/6 48/21 51/8 51/16 55/16 56/7
56/10 57/21 64/13 64/16 65/1 70/9 75/21
85/11 91/2 93/21 93/22 94/17 105/7 105/16
108/7 108/9 108/13 108/16 108/22 109/4

109/4 109/23 114/10 114/10 115/9
116/23 117/16 117/25
**Goeders [3]** 55/15 55/16 56/3
**goes [10]** 6/20 7/15 8/24 10/15 10/17 11/10
18/2 18/6 18/17 85/3
**going [42]** 5/17 6/10 6/10 8/4 9/23 10/14
11/16 13/17 14/8 17/9 19/19 20/4 20/17 25/11
30/4 36/8 40/5 48/21 51/16 53/9 53/16 56/1
56/1 56/4 56/20 56/23 59/18 64/20 69/22 72/5
81/23 88/13 94/12 96/20 97/10 101/8 105/4
105/12 107/6 110/23 110/24 117/16
**gone [2]** 22/13 22/4 64/9
**good [16]** 4/5 4/7 4/8 4/12 24/18 26/7 26/24
27/4 27/5 72/4 83/14 83/15 104/10 107/8
107/9 110/22
**got [17]** 16/12 22/12 44/12 73/10 80/22 88/24
91/17 92/4 93/2 93/5 96/25 101/18 101/18
101/19 109/10 109/16 109/17
**gotta [2]** 13/15 105/10
**gotten [4]** 22/1 22/9 22/15 64/17
**government [14]** 4/14 5/1 15/1 15/3 19/20
20/19 20/23 21/6 22/13 22/24 23/21 23/24
24/3 24/3 24/9 26/8 29/15 31/6 38/2 39/12
41/4 47/14 49/25 52/7 52/20 57/8 58/2 58/18
60/3 61/6 63/3 67/10 71/10 73/24 75/15 83/9
97/7 111/12 111/15 112/25 113/22 116/7
116/9 116/20
**government's [7]** 18/3 19/6 21/18 22/18
26/14 113/7 117/18
**graduate [1]** 104/23
**grateful [1]** 73/6
**gray [1]** 28/20
**great [3]** 73/4 73/6 102/1
**green [2]** 69/2 69/4
**Grenada [1]** 27/9
**group [4]** 16/9 40/3 86/9 86/10
**guards [1]** 100/25
**Guerrero [1]** 69/14
**guess [7]** 4/18 9/12 10/2 10/11 86/3 112/18
118/6
**guided [1]** 104/3
**gurney [3]** 86/14 86/14 88/12 92/11 93/25
95/2 95/14

**H**

**had [108]** 5/2 5/3 5/6 18/14 19/23 20/10 20/23
21/1 23/19 24/4 27/24 32/2 35/19 37/3 38/3
38/5 38/6 42/8 42/13 42/15 43/22 44/17 44/21
44/23 45/1 45/8 45/12 46/4 46/6 46/9 46/19
48/13 48/16 53/9 58/2 58/18 58/20 59/2
59/6 61/23 61/24 64/23 64/24 66/10 71/21
72/1 72/2 72/8 72/14 73/2 73/4 73/5 73/20
74/19 74/21 74/24 75/2 75/5 75/10 77/12
82/11 83/21 84/13 84/16 84/19 85/11 86/4
86/24 88/9 88/9 89/3 89/3 89/6 89/13 89/14
90/2 90/5 90/18 91/2 91/24 94/21 96/22 98/19
100/1 101/5 102/1 102/6 102/14 106/3 103/21
105/16 105/21 105/25 106/22 108/14 108/17
108/19 108/21 109/7 109/10 109/11 109/22
111/8 112/6 115/3 115/17 116/3
**hadn't [2]** 46/3 61/23
**half [4]** 52/23 107/1 107/13 107/20
**halfway [1]** 50/24
**hallway [1]** 24/12
**hand [4]** 26/13 76/17 76/18 113/15
**handed [2]** 113/14 113/18
**handle [3]** 61/18 66/16 69/22
**handled [2]** 5/16 61/23
**handling [2]** 44/18 54/12
**handwriting [1]** 30/2 57/14 57/15
**HANNA [1]** 2/3
**happen [5]** 36/22 45/12 65/5 65/7 91/11
**happened [11]** 6/14 10/18 71/7 89/19 89/21
90/2 96/5 96/12 101/19 110/10 110/20
**happening [2]** 46/2 54/9
**happy [11]** 5/24 9/6 11/15 14/9 23/13 72/4
73/25 83/10 89/2 107/1
**HARBUR [2]** 2/19 9/6 24/15 24/20
**has [44]** 6/3 7/9 7/11 7/15 7/16 10/4 12/25 12/6

14/21 15/9 15/16 15/22 15/24 16/1 16/12
16/23 18/16 20/23 20/25 24/12 24/23 24/24
22/15 22/20 23/1 24/8 25/24 28/24 41/9 55/10
62/13 68/19 68/19 68/20 71/18 72/9 74/14
77/5 77/6 77/7 77/16 82/5 82/15 106/21
**hasn't [1]** 64/9
**have [145]**
**having [7]** 13/22 28/6 63/14 67/23 80/9 91/6
93/22
**he [178]**
**he's [4]** 5/21 7/6 25/18 46/5
**head [2]** 40/2 99/22
**heading [2]** 35/6 68/7
**health [1]** 110/15
**healthcare [1]** 104/2
**hear [5]** 9/4 9/7 11/15 23/13 24/11
**heard [5]** 5/17 7/1 7/2 58/19 102/16
**hearing [3]** 20/11 62/13 62/18
**hearsay [13]** 34/8 39/14 41/6 43/18 47/16
50/3 52/9 60/5 61/8 63/5 67/12 86/20 98/6
**heavily [3]** 87/3 87/6 87/8
**held [3]** 11/2 79/25 119/10
**hell [5]** 88/1 100/11 100/17 101/3 101/16
**Hello [2]** 70/6 70/9
**help [8]** 39/3 65/19 65/22 74/14 86/25 98/20
101/8 106/22
**helped [6]** 80/22 92/1 104/1 104/2 104/15
108/2
**helping [1]** 104/17
**helps [1]** 40/3
**her [6]** 43/23 46/24 46/24 47/9 48/6 104/14
**here [16]** 4/18 5/9 7/6 7/19 11/15 24/10 24/14
25/16 25/25 28/15 52/25 64/9 81/1 105/10
116/14 116/25
**hereby [2]** 78/15 119/7
**hey [1]** 96/11
**Hi [8]** 48/4 48/10 51/2 53/11 54/7 60/12 63/13
70/20
**highlighted [1]** 117/18
**highly [5]** 5/19 6/25 8/5 20/25 24/4
**Hills [5]** 27/9 35/24 35/25 106/17 106/18
**him [44]** 4/19 4/22 6/14 7/4 7/6 9/7 9/23 10/8
11/9 11/16 11/16 11/19 14/8 18/1 18/5 21/22
21/22 22/12 24/14 25/13 28/17 37/11 37/13
37/13 41/23 41/24 42/7 43/8 51/8 64/8 64/21
64/24 64/25 72/25 73/5 73/20 74/19 75/10
76/23 77/23 80/21 80/23 82/24 116/5
**himself [2]** 78/13 82/19
**hired [2]** 29/9 103/6
**his [24]** 4/22 6/16 8/1 16/15 17/17 21/4 21/17
22/13 25/2 25/19 43/23 51/6 55/14 74/10
76/23 77/7 77/18 78/14 79/18 82/10 82/22
82/25 83/25 113/16
**hits [1]** 60/14
**hold [3]** 5/7 6/3 6/13
**holding [1]** 6/14
**home [6]** 34/10 65/8 72/14 72/18 108/4
109/19
**Honda [1]** 16/1
**honest [1]** 74/18
**Honor [142]**
**Honor's [2]** 16/24 23/17
**HONORABLE [1]** 1/8
**honoring [1]** 11/4
**Hope [1]** 63/13
**hoping [1]** 14/13
**host [1]** 22/24
**hour [3]** 109/8 109/11 109/23
**hours [3]** 109/17 117/13 118/5
**house [15]** 55/2 55/5 55/18 55/21 56/6 56/10
56/13 56/15 57/19 58/12 58/21 59/9 72/3
108/5 111/2
**houses [1]** 55/16
**how [33]** 8/23 10/15 20/1 27/6 30/5 32/7
32/10 44/4 44/6 46/20 48/24 51/7 51/18 65/1
83/16 84/16 87/8 88/24 89/2 91/16 92/2 92/9
92/12 102/7 102/10 103/2 106/25 107/6 107/9
108/2 110/12 117/7 117/11
**however [1]** 5/13

**J**

I'll [1] 25/13 25/15
I'm [46] 8/3 9/6 9/23 10/2 12/19 13/1 15/20
16/23 19/1 19/18 19/21 20/17 23/13 25/11
26/23 30/19 34/21 44/6 44/11 48/21 50/11
51/16 53/9 56/4 56/5 56/23 56/23 57/2 57/21
59/18 61/19 63/11 63/14 74/11 84/17 101/21
105/2 105/3 106/24 107/23 112/3 113/8
114/17 114/21 116/18 117/16
I've [1] 20/10
I-N-D-E-X [1] 3/3
idea [2] 6/12 22/11
identified [2] 28/24 29/1
identify [2] 20/17 28/17
identifying [2] 17/19 18/21
identity [1] 18/5
IHSS [2] 109/17 109/19
ill [1] 83/19
imagination [1] 6/19
immediate [1] 23/15
immediately [1] 74/15
impact [1] 4/21
important [2] 65/25 117/10
imposed [1] 79/7
impossible [1] 42/18
improper [1] 72/10
improperly [1] 7/22
inability [3] 21/5 21/5 27/15
include [1] 59/12
included [1] 17/13
including [3] 36/20 50/6 78/20
inclusion [1] 79/14
income [2] 38/16 65/11
incorporated [1] 50/18
incredibly [1] 102/17
incurred [1] 8/16
indemnity [1] 79/4
independent [2] 24/6 80/7 80/10
independently [3] 34/13 40/4 108/3
indicate [4] 13/17 25/17 28/23 98/3
individual [1] 25/2 117/18
individuals [2] 7/22 116/8
inform [3] 12/9 14/4 14/9
information [1] 44/4
informed [6] 17/25 86/19 86/23 103/7 107/24
108/7
initial [4] 81/22 81/25 109/7 109/25
initialed [3] 81/20 81/25 82/1
initials [3] 81/17 81/17 81/24
injuries [6] 27/15 27/18 27/20 28/11 38/23
105/25
injury [3] 102/23 105/1 106/2
inquire [1] 19/24
instance [3] 14/21 16/8 104/1
instances [1] 13/13
Instead [1] 115/20
instruct [1] 25/13
instruction [2] 50/16 50/17
instrument [1] 38/11
insulated [1] 11/11
insurers [1] 78/21
intend [10] 12/4 12/9 15/10 15/17 15/19 15/21
15/23 15/25 16/2 16/21
intended [2] 16/22 17/1
intent [1] 57/18
intention [1] 79/9
interaction [1] 53/24
internal [1] 113/8
interpretation [1] 79/11
intersection [1] 89/22
interview [2] 116/11 116/14
invade [1] 24/24
invited [1] 19/13
involve [1] 8/19
involving [2] 4/23 112/10
ipso [1] 11/11
irrelevant [1] 5/1
IRS [1] 111/21
is [240]

isn't [9] 6/19 11/11 23/1 89/6 89/15 97/1
100/12 102/15 104/13
issuance [1] 23/7
issue [11] 4/25 5/14 6/10 7/11 7/19 10/6 12/1
13/1 19/3 20/12 20/13
issued [1] 23/18
issues [5] 17/9 19/18 20/17 81/4 117/3
it [230]
it's [45] 5/13 5/19 6/25 7/19 8/4 9/17 14/16
16/9 16/9 22/20 23/23 23/24 24/1 24/2 32/5
34/21 36/1 38/11 38/11 38/11 47/8 49/6 64/24
67/2 69/22 69/23 84/2 84/8 84/9 97/8 97/11
97/13 106/20 107/7 109/3 109/19 111/6 111/6
113/2 113/2 113/4 113/10 114/18 114/20
117/10
item [5] 4/3 62/1 62/7 62/11 62/13
items [1] 61/21
its [1] 26/8

**J**

J-o-h-n-s-o-n [1] 26/18
jail [32] 27/21 27/22 28/11 80/22 83/17 83/19
84/7 84/14 84/16 85/12 86/4 86/7 87/18 87/20
87/23 88/1 88/10 88/14 88/22 88/25 90/21
91/2 91/9 91/17 92/9 93/21 96/17 97/1 100/14
101/14 101/18 106/5
JAMES [1] 1/8
jammed [1] 54/10
JAMS [1] 6/8
January [5] 38/1 63/20 63/21 70/18 96/15
January 2019 [1] 63/21
January 21st [1] 70/18
January 26th [1] 18/1
January 3rd [1] 63/20
Jencks [1] 21/15
job [4] 73/4 73/6 89/3 104/10
Joe [5] 64/8 64/11 64/12 64/20 64/22
JOHN [2] 1/11 4/4
JOHNSON [61] 3/6 4/17 4/24 6/2 6/12 7/11
7/14 7/15 8/14 9/9 11/7 17/1 17/6 21/3 22/7
24/25 25/6 26/11 26/14 26/17 27/4 29/3 29/25
34/18 43/22 53/7 62/12 62/15 62/16 63/11
67/14 74/8 76/16 76/17 77/6 77/6 77/9 77/16
77/18 77/19 77/21 78/12 78/13 80/24 81/15
82/5 83/14 84/13 85/10 86/11 86/23 94/8
94/12 96/2 105/3 105/11 111/12 113/15
114/18 116/20 118/5
Johnson's [10] 7/1 8/7 10/19 20/14 20/20
24/12 24/22 77/15 77/25 94/18
joint [1] 78/21
judge [1] 1/18 8/7
Judicial [1] 119/12
Judy [20] 40/12 40/12 40/17 40/19 46/22 47/8
48/4 48/10 51/7 52/3 53/23 54/12 60/12 61/25
63/13 63/18 66/12 70/20 70/23 81/23
July [4] 1/17 4/1 48/9 119/14
July 25th [1] 48/9
jumped [1] 83/21
June [1] 47/23
June 16th [1] 47/23
jury [30] 4/2 5/16 7/3 12/9 13/1 13/23 18/12
18/25 19/20 24/10 26/6 41/17 60/11 63/12
81/7 81/11 83/18 84/6 85/16 91/23 93/20 97/6
103/10 103/15 106/18 107/16 109/18 111/9
114/2 117/6
just [61] 6/17 8/20 10/11 10/15 11/11 13/25
16/21 17/22 18/8 18/14 19/9 23/10 50/13 51/9
54/12 55/9 55/10 56/5 59/18 60/20 64/24
69/23 70/14 72/8 78/9 80/24 81/15 81/23
81/24 83/25 85/17 87/8 87/16 87/19 88/15
88/18 89/18 91/10 91/11 93/24 95/17 96/4
96/10 96/20 97/11 98/17 101/5 101/21 102/13
105/9 107/15 111/13 113/3 113/18 114/18
114/20 115/19 116/15 116/23 118/3 118/5
JVS [2] 1/11 4/3

**K**

keep [3] 44/5 110/23 110/24
keeps [3] 21/19 21/21 22/18

kept [1] 66/3
kill [9] 8/23
kind [2] 104/3 105/9
knew [2] 21/25 102/13
know [43] 6/4 6/5 9/12 12/22 13/2 13/4 13/7
14/1 14/18 17/16 18/2 19/19 19/24 22/15
22/17 32/23 34/13 37/4 43/3 52/17 56/21
58/16 64/19 64/21 64/24 71/2 71/4 71/5 71/6
73/5 74/20 74/24 75/2 76/1 87/8 89/1 90/11
91/4 92/3 92/18 102/10 108/18 108/19
know specifically [1] 12/22
knowledge [4] 19/5 71/12 71/14 98/7
knowledgeable [1] 107/9
known [2] 75/5 78/25

**L**

L.A [6] 27/22 44/21 46/2 68/18 74/24 76/20
labeled [1] 29/5
lack [2] 98/6 98/9
Lacks [2] 42/21 46/10
ladies [4] 26/7 50/9 81/1 117/1
laid [1] 88/12
landlord [2] 62/2 64/12
last [15] 6/18 26/16 34/17 34/21 45/24 52/23
54/11 58/5 60/13 72/1 75/21 94/17 114/10
115/9 116/15
lastly [1] 80/2
late [3] 19/21 107/17 111/16
later [5] 20/9 42/2 42/12 54/8 96/22
law [10] 2/15 20/22 21/13 22/25 32/15 76/23
78/19 79/3 79/18 82/25
lawsuit [9] 7/21 10/4 28/10 28/13 33/12 33/20
33/23 34/2 34/5
lawsuits [1] 7/19 10/19 79/1
lawyer [3] 43/6 43/24 44/6
lawyers [1] 23/12
lay [1] 99/22
layers [1] 47/17
laying [5] 42/3 53/2 72/10 83/23 84/10
leading [5] 42/3 53/2 72/10 83/23 84/10
learn [3] 40/4 92/2 108/2
learned [6] 32/1 90/9 91/5 91/6 96/22 104/20
lease [1] 111/8
leaseholder [1] 111/7
least [2] 12/25 50/18 102/6
leave [2] 103/7 111/8
lectern [1] 24/16
led [3] 27/15 94/3 101/10
left [4] 72/18 105/22 106/5 106/15
legal [3] 23/6 79/4 99/5
length [1] 109/24
lengthy [1] 48/21
less [5] 45/8 45/9 45/11 109/23 110/4
let [13] 11/21 18/8 19/16 41/23 52/19 64/19
70/2 85/8 95/8 95/22 97/3 98/19 108/16
let's [5] 9/4 24/14 64/13 114/10 115/9
letter [23] 18/20 19/5 49/6 49/10 49/19 50/6
50/13 50/18 57/18 65/7 66/11 67/2 67/3 67/5
67/7 67/16 68/17 68/20 70/14 70/20 70/23
71/3 114/22
letters [7] 35/3 50/19 66/6 66/8 115/20 116/4
116/5
level [3] 105/5 105/7 105/7
levels [4] 39/16 50/3 60/6 104/25
liabilities [1] 79/1
liability [4] 11/9 73/9 73/10 76/9
liable [1] 79/25
liens [1] 79/2
life [6] 38/24 38/25 93/23 102/24 105/12
107/6
like [28] 4/18 4/19 4/20 5/9 5/23 9/6 9/13
19/25 19/25 20/2 26/21 32/8 32/9 34/22 38/13
40/1 52/18 53/19 70/18 72/2 73/5 83/24 92/13
92/15 94/8 96/12 101/11 110/5
likely [1] 12/19 13/19 19/1
limine [2] 16/15 19/7
limitation [1] 8/21
limited [1] 78/20
line [2] 67/21 84/10

**L**

**liquidated [1]** 78/23
**list [1]** 14/6
**litigation [6]** 7/24 7/25 8/4 8/18 21/9 23/19
**little [3]** 41/16 54/25 105/6
**live [36]** 27/8 32/7 32/13 34/13 40/1 40/2 40/2
40/4 43/16 90/23 91/3 91/9 100/20 102/11
103/2 106/16 106/25 107/6 108/1 108/3 108/7
108/13 108/14 108/17 108/17 108/20 109/1
109/6 109/10 111/1 111/1 111/2 111/2 111/3
111/7 111/10
**lived [3]** 91/17 107/16 108/20
**living [10]** 32/1 32/3 32/6 36/1 54/23 59/10
63/22 63/24 101/22 106/20
**LLP [1]** 78/20
**loan [6]** 56/14 56/17 56/20 57/18 58/12 68/20
**located [2]** 55/18 91/19
**lodge [3]** 5/6 5/8 5/10
**long [6]** 32/10 65/1 72/2 84/14 84/16 106/25
**longer [2]** 79/25 118/7
**look [19]** 13/8 16/6 19/11 29/23 30/22 35/4
40/20 40/24 47/2 55/16 57/23 59/19 60/24
64/5 73/18 80/12 80/15 98/20 114/18
**looked [8]** 33/21 48/11 72/4 74/16 101/2
101/2 115/21 116/4
**looking [4]** 44/20 116/5
**looks [3]** 35/1 53/19 70/18
**Los [7]** 2/8 28/10 30/14 33/20 36/25 37/19
78/17
**lose [4]** 36/23 45/15 66/20 69/8
**loss [2]** 8/15 9/3
**lot [9]** 12/22 13/3 13/6 13/11 13/12 104/15
104/17 107/7 117/9
**lump [2]** 42/16 42/20
**lump-sum [1]** 42/16
**lunch [4]** 116/14 116/24 116/25 117/5

**M**

**made [10]** 16/14 37/20 62/11 74/17 74/24
76/15 90/14 90/15 107/7 108/6
**mail [32]** 39/7 39/9 39/15 39/22 39/24 40/11
40/12 41/2 44/19 57/5 57/6 57/9 57/24 57/25
58/3 59/24 60/1 60/10 60/16 61/1 61/4 61/17
62/4 62/14 62/23 62/25 63/9 63/12 63/19
97/20 98/2 112/10
**mailing [1]** 40/11
**mails [2]** 46/22 62/4
**mainly [1]** 4/20
**maintaining [1]** 65/16
**Major [1]** 2/6
**make [9]** 13/16 48/12 51/3 53/10 60/12 63/17
64/20 66/2 93/2
**making [7]** 4/4 64/22 76/23 104/16
**manager [1]** 103/17
**managers [1]** 106/21
**many [1]** 22/4
**March [14]** 22/24 45/24 71/15 71/25 72/13
72/18 72/23 76/15 111/3 111/16 112/22
113/23 116/7 116/21
**March 2019 [1]** 76/15
**March 22nd [4]** 71/15 71/25 72/13 72/18
**March 23rd [1]** 72/23
**March 25th [1]** 22/24
**March 31st [5]** 111/13 112/22 113/23 116/7
116/21
**marked [5]** 3/8 3/19 12/11 12/12 29/4
**marketing [1]** 74/10
**marketing/media [1]** 74/10
**Marty [1]** 58/14
**Mary [2]** 43/15 43/16
**mask [1]** 26/20
**match [1]** 13/15
**matched [1]** 17/24
**materials [2]** 40/5 40/17
**math [1]** 107/23
**matter [5]** 25/1 25/1 25/4 25/7 119/10
**matters [5]** 4/13 4/21 4/23 11/21 25/10
**matured [1]** 78/24
**may [19]** 6/7 7/7 8/19 9/8 9/10 10/3 13/9 15/4

17/13 22/11 24/12 25/13 69/6 88/16 94/13
96/5/13 /11 /15 /16 /18 /21 /24
**maybe [3]** 72/2 84/17 87/11
**me [79]** 5/14 5/24 6/13 11/21 17/2 18/17
25/21 25/25 37/14 41/23 43/9 43/16 43/17
45/7 51/3 52/19 54/12 60/12 64/9 64/19 64/24
65/6 67/22 70/2 71/20 73/4 73/4 73/6 74/14
74/16 74/19 77/12 77/23 80/22 80/23 81/23
85/8 85/11 85/11 86/5 86/24 86/24 87/6 87/14
89/10 90/8 91/7 92/1 92/22 95/8 95/18 95/22
97/3 97/21 98/19 98/22 100/7 100/11 101/2
101/3 101/17 104/1 104/2 104/3 104/15 105/9
107/24 108/16 108/24 109/2 109/22 110/23
111/13 111/19 111/21 111/24 112/4 113/23
116/5
**mean [11]** 6/18 48/13 50/9 60/19 60/22 61/22
64/22 101/21 105/2 105/4 106/20
**meaning [1]** 109/11
**means [1]** 108/18
**meant [4]** 62/2 77/10 93/22 114/21
**Medi [3]** 38/13 38/19 38/21
**Medi-Cal [3]** 38/13 38/19 38/21
**media [1]** 74/10
**mediation [1]** 10/18
**Medicaid [1]** 69/8
**medical [1]** 38/24
**medicated [2]** 87/3 87/6
**medication [1]** 87/5
**medications [1]** 87/9
**meet [5]** 83/16 85/11 86/1 86/4 86/25
**meeting [11]** 83/22 57/8 58/2 58/18 83/20 84/7
86/10 86/19 86/23 111/12 111/15
**member [1]** 85/10
**members [1]** 99/4
**mental [4]** 20/20 21/4 21/17 90/15
**mentally [2]** 83/19 90/3
**mentioned [1]** 76/20
**Meridian [1]** 106/15
**message [6]** 47/23 48/2 48/9 50/24 70/17
70/19
**messages [16]** 47/8 47/9 48/22 48/23 49/13
49/15 49/23 51/17 51/25 52/2 52/5 52/16
52/20 52/23 53/8 54/11
**met [29]** 13/24 17/25 58/14 74/13 84/13 84/24
85/25 86/7 86/12 86/16 87/3 87/7 87/9 87/15
90/17 90/25 93/24 95/3 95/14 96/3 100/13
100/23 101/6 101/13 106/5 108/14 113/22
116/7 116/21
**MICHAEL [40]** 1/11 2/14 4/4 4/9 25/2 28/14
28/15 32/15 32/22 32/21 32/22 40/16 40/19
41/18 44/25 48/4 48/10 49/16 51/2 52/3 54/12
55/9 55/25 59/1 60/7 62/15 62/14 63/15
66/13 70/20 73/5 74/9 74/13 74/14 76/3 76/17
80/21 81/23 105/9 112/11
**mid [7]** 44/20 81/1 98/1 98/11 99/18 107/20
107/22
**mid-morning [1]** 81/1
**middle [10]** 7/5 35/7 37/24 39/24 64/13 77/24
89/22 114/7 114/11 114/16
**might [2]** 65/6 65/7
**million [23]** 8/2 9/17 9/17 10/8 35/10 35/13
36/8 36/25 37/23 38/6 42/16 46/7 46/9 59/3
59/6 74/22 74/25 75/3 82/6 82/8 114/7 114/15
114/23
**mind [3]** 41/17 63/12 101/15
**mine [1]** 23/12
**minute [1]** 63/24
**minutes [3]** 33/19 81/2 81/6
**Miramar [1]** 2/16
**missing [1]** 6/4
**misstates [3]** 33/14 115/22
**mobile [1]** 34/12
**moment [5]** 15/2 29/21 83/8 94/6 95/4 106/4
106/5 112/19
**Monday [1]** 70/11
**money [28]** 10/3 10/9 37/12 38/7 38/14 39/2
45/17 46/16 48/24 54/24 55/6 55/7 55/11
56/1 64/23 71/22 72/5 73/10 77/12 80/1 82/11
82/13 82/16 83/6 89/10 89/13 96/11

**moneys [1]** 6/4
**monies [1]** 37/6
**month [6]** 51/10 51/14 51/15 77/20 77/20
102/15
**monthly [1]** 68/20
**months [11]** 6/18 17/25 18/20 32/11 62/5
65/2 77/21 84/18 84/18 103/6 105/17
**more [21]** 22/13 45/12 48/15 48/18 51/25 56/1
64/20 73/10 105/6 117/7 118/6
**morning [14]** 4/5 4/7 4/8 4/12 11/24 20/6 20/9
24/18 26/7 27/4 27/5 81/1 83/14 83/15
**most [2]** 101/15 102/23
**mother [2]** 43/15 85/17
**motion [3]** 6/10 16/15 19/7
**move [6]** 12/9 14/11 43/19 103/8 104/21
107/25
**moved [3]** 36/2 107/19 111/9
**moves [12]** 29/15 31/6 39/12 41/4 47/14
49/25 52/7 61/6 63/3 67/10 73/24 75/15
**Moving [1]** 48/8
**Mr [10]** 7/14 7/15 87/6 9/9 12/15 24/15
43/22 84/13 116/20
**Mr. [87]** 4/10 4/24 5/11 6/2 6/12 7/1 7/11 8/14
9/16 10/19 11/7 14/18 17/1 17/6 17/16 18/9
19/13 19/22 20/3 20/14 20/20 21/3 22/7 24/2
24/12 24/22 24/25 25/6 26/25 27/4 29/3 30/18
41/10 53/7 55/16 63/11 67/4 67/15 78/12
80/24 81/12 81/15 83/11 83/14 84/10 85/3
85/4 85/10 86/5 86/11 86/12 86/23 87/14
88/13 90/17 90/22 90/25 91/7 93/6 93/9 93/11
93/14 94/3 94/8 94/12 94/18 94/21 95/3 96/2
96/3 96/7 97/16 100/17 100/24 101/8 105/3
105/11 111/12 113/15 114/5 114/18 114/24
115/11 115/14 115/20 116/2 118/5
**Mr. Avenatti [7]** 5/11 14/18 17/16 18/9 67/15
83/11 84/10
**Mr. Avenatti's [1]** 41/10
**Mr. Beada [21]** 30/18 85/3 85/4 86/12 87/14
88/13 90/17 90/22 90/25 91/7 93/6 93/9 93/11
93/14 94/3 95/3 96/3 96/7 100/17 100/24
101/8
**Mr. Drum [2]** 19/22 20/3
**Mr. Goeders [1]** 55/16
**Mr. Johnson [33]** 4/24 6/2 6/12 7/1 7/11 8/14
11/7 17/1 17/6 21/3 22/7 24/25 25/6 27/4 29/3
53/7 63/11 67/14 78/12 80/24 81/15 83/14
85/10 86/11 86/23 94/8 94/12 96/2 105/3
105/11 111/12 113/15 114/18 118/5
**Mr. Johnson's [7]** 7/1 10/19 20/14 20/20
24/12 24/22 94/18
**Mr. Richard [1]** 86/5
**Mr. Sagel [1]** 24/2
**Mr. Steward [1]** 4/10
**Mr. Wyman [11]** 19/13 26/25 81/12 94/21
97/16 114/5 114/24 115/11 115/14 115/20
116/2
**Mr. X [1]** 9/16
**Ms [2]** 59/14 103/16
**Ms. [28]** 4/10 41/10 41/14 46/17 46/21 47/23
48/3 48/22 53/8 53/16 53/25 59/24 60/10 61/1
63/1 67/8 69/14 69/17 103/12 103/12 103/20
103/23 103/25 104/4 104/7 104/10 104/19
104/20
**Ms. Cefali [1]** 4/10
**Ms. Guerrero [1]** 69/14
**Ms. Perlman [9]** 103/12 103/20 103/23
103/25 104/4 104/7 104/10 104/19 104/20
**Ms. Regnier [15]** 41/10 46/17 46/21 47/23
48/3 48/22 53/8 53/16 53/25 59/24 60/10 61/1
63/1 67/8 69/17
**Ms. Regnier's [1]** 41/14
**Ms. Ronan [1]** 103/12
**much [4]** 30/5 45/6 51/7 117/7
**multiple [9]** 14/19 14/20 39/15 41/24 47/16
50/3 60/6 86/10 116/8
**must [1]** 48/15
**my [56]** 6/2 9/12 11/3 11/16 15/21 21/10
21/13 23/22 22/42 23/1 35/4 35/24 36/23 48/5
48/10 48/11 53/14 60/14 61/17 62/2 62/11

**M**

my... **[38]** 62/13 62/17 63/18 64/12 65/13 68/25 70/21 70/23 71/14 71/22 73/10 74/16 74/16 74/17 80/1 85/13 86/9 89/1 89/10 90/7 91/24 92/13 93/23 94/23 98/12 98/17 99/18 99/25 100/7 101/15 103/17 106/10 106/11 107/1 107/23 124/10 110/11 117/25
myself **[1]** 63/17

**N**

naked **[1]** 89/22
name **[19]** 24/19 26/16 29/25 34/18 35/3 43/14 43/23 55/14 56/18 56/20 57/11 57/18 58/7 58/12 58/19 85/16 85/22 103/13 103/21
named **[1]** 58/14
namely **[3]** 23/7 67/14 95/6
names **[1]** 85/17
Narrow **[1]** 84/3
National **[1]** 15/16
nature **[1]** 79/6
navigate **[2]** 100/1 104/2
nearly **[1]** 110/12
need **[18]** 11/21 11/23 16/10 16/23 21/17 45/7 53/9 53/13 64/20 64/20 68/8 69/23 92/3 101/3 106/22 109/21 109/22 110/1
needed **[7]** 34/12 53/25 74/14 103/1 107/10 110/8 110/17
needs **[20]** 5/22 38/8 38/9 39/3 40/6 40/18 41/20 42/11 42/19 43/11 43/17 44/9 44/15 46/4 55/10 56/11 58/22 68/25 71/22 74/16
negotiated **[1]** 33/11
never **[4]** 93/1 96/10 98/2 110/10
New **[1]** 68/17
next **[21]** 20/5 26/8 34/1 51/8 53/16 54/5 62/1 63/12 63/14 64/18 70/17 72/22 74/1 77/14 81/17 93/23 101/19 101/21 106/16 111/1 114/2
nice **[2]** 91/21 91/22
NICOLA **[1]** 2/3
night **[2]** 53/14 99/23
no **[108]** 6/9 10/4 15/5 16/18 18/16 20/8 22/11 22/14 24/9 27/11 27/14 28/5 29/18 30/15 30/21 31/9 32/25 33/10 33/17 34/25 35/14 35/17 36/13 36/16 37/22 38/4 41/8 42/14 42/17 42/24 44/22 46/8 46/13 53/9 53/21 54/7 54/13 55/22 56/16 56/19 57/10 57/13 57/16 57/20 58/4 58/10 58/13 58/15 58/17 58/20 59/5 59/8 62/20 64/4 69/22 72/17 73/10 74/1 74/23 75/1 75/4 75/17 76/21 76/24 79/19 79/22 79/25 80/14 80/16 82/3 82/14 82/17 82/20 82/23 83/1 83/5 83/7 87/13 88/21 89/3 89/20 90/18 91/2 92/20 92/25 93/12 96/13 99/12 99/15 100/15 100/18 100/22 102/5 103/12 103/14 105/13 108/1 108/10 108/15 110/3 110/6 110/9 111/6 111/20 111/22 111/25 112/2 112/12
Nobody **[1]** 108/9
non **[1]** 78/25
non-contingent **[1]** 78/25
None **[2]** 3/17 3/20
nonemergency **[1]** 92/13
nonprofit **[2]** 40/3 108/2
normal **[1]** 35/2
North **[1]** 2/7
not **[144]**
note **[2]** 14/1 16/7
nothing **[4]** 7/10 83/10 94/3 96/12
notice **[8]** 11/16 14/8 17/18 18/1 18/3 19/5 69/14 69/15
noticed **[1]** 15/6
notified **[1]** 20/15
notwithstanding **[1]** 25/19
November **[14]** 31/18 31/25 33/22 53/11 53/13 53/19 53/20 54/5 64/14 64/16 64/19 67/21 70/13 96/14
November 13th **[2]** 53/11 53/19
November 14th **[1]** 53/20
November 15th **[1]** 54/5
November 1st **[1]** 67/21

November 2011 **[1]** 96/14
November 28th **[1]** 64/16 64/19
November 30th **[1]** 70/13
November 8th **[2]** 31/18 31/25
now **[37]** 5/20 5/22 7/14 14/5 14/10 30/22 34/15 37/15 39/5 40/11 40/24 48/8 48/21 49/1 51/21 54/10 58/21 60/13 60/24 62/21 63/16 64/13 64/14 66/17 69/9 70/2 71/15 75/8 80/1 89/3 90/17 96/7 98/19 101/18 106/4 110/22 114/23
nowhere **[1]** 91/2
number **[9]** 19/20 20/19 20/24 69/15 97/6 112/24 113/9 114/7 114/25
numbering **[1]** 113/9
numbers **[1]** 9/13
nurse **[1]** 43/16 53/14 109/11
nurses **[1]** 91/24

**O**

object **[4]** 4/21 7/2 12/6 12/24
objected **[1]** 6/9
objection **[49]** 5/8 10/24 29/17 29/18 30/7 31/8 31/9 33/3 33/14 34/8 37/6 39/14 40/7 41/6 43/18 46/10 50/2 52/9 54/1 54/16 60/5 61/8 63/5 67/12 72/9 74/1 75/17 78/6 83/22 84/9 84/20 85/1 85/18 86/20 87/24 88/4 89/8 89/24 91/13 92/23 95/7 95/15 95/21 98/6 99/11 100/3 106/8 112/14 115/22
objections **[6]** 5/6 5/10 7/4 11/4 11/4 16/7
obligation **[3]** 24/6 25/16 25/19
obligations **[1]** 79/2
obtained **[1]** 7/22
obtaining **[1]** 65/15
obviously **[2]** 5/9 5/13
occasion **[1]** 102/6
occupational **[1]** 92/1
occupied **[1]** 111/3
October **[6]** 52/17 57/12 58/7 64/7 68/19 68/21
October 16th **[2]** 57/12 58/7
October 2016 **[2]** 68/19 68/21
October 25th **[2]** 52/17 64/7
off **[7]** 9/17 9/18 18/11 21/24 83/21 89/14 107/23
offer **[11]** 15/19 15/20 15/21 15/23 15/25 16/3 45/2 65/19 98/4 98/25 99/14
offered **[2]** 13/18 45/17
offering **[1]** 47/20
offers **[1]** 60/3
office **[2]** 69/13 111/23
officers **[1]** 78/21
OFFICES **[1]** 2/15
often **[2]** 34/2 34/3
Oftentimes **[1]** 54/18
Oh **[2]** 56/11 108/10
okay **[52]** 6/1 8/17 9/5 10/16 11/20 14/25 15/7 15/15 16/4 16/20 17/5 17/8 19/8 20/8 22/22 26/2 26/23 26/24 28/22 29/8 34/23 35/8 37/18 39/6 41/1 47/4 49/2 51/22 57/4 59/21 60/25 62/22 63/13 70/4 73/9 93/3 94/14 94/17 94/21 97/20 97/20 108/6 109/3 110/7 114/3 114/10 114/14 114/23 115/9 115/13 118/1
old **[2]** 27/6 27/7
once **[8]** 19/2 20/10 66/5 73/9 93/2 101/19 105/6 117/22
one **[44]** 11/25 14/16 14/16 15/2 17/1 17/6 19/2 19/20 20/19 20/24 26/21 29/3 29/4 29/5 29/21 40/24 45/24 50/18 56/2 61/17 62/1 63/24 70/9 70/18 73/3 73/8 76/23 79/18 83/8 90/14 90/18 91/1 94/6 97/8 97/10 102/6 105/5 106/6 108/6 112/19 115/10 116/15
ones **[2]** 4/14 81/25
ongoing **[1]** 25/4
only **[16]** 5/8 7/24 16/24 17/5 24/25 45/10 48/16 63/16 79/17 80/9 86/12 91/8 106/6 112/24 113/10 117/22
open **[2]** 9/11 10/9
opened **[2]** 85/4 101/1

opening **[2]** 10/7 117/19
opinion **[1]** 81/4
opinions **[1]** 81/4
opportunities **[1]** 21/23
opportunity **[4]** 4/21 16/6 80/9 99/22
opposed **[2]** 23/21 23/22 108/4
opposition **[1]** 19/21
order **[3]** 16/24 25/22 115/12
other **[41]** 4/24 5/6 5/15 6/3 6/14 7/11 7/16 7/16 7/24 7/25 8/10 8/15 9/2 11/21 12/1 17/8 20/13 25/6 30/12 30/16 30/20 38/24 44/2 47/3 62/3 73/8 75/1 76/18 76/18 78/16 78/18 83/3 86/12 88/3 90/15 92/21 105/16 105/18 105/21 105/25 109/12
others **[3]** 6/6 9/3 81/22
otherwise **[1]** 79/3
our **[4]** 4/16 4/18 17/25 22/19 22/20 69/13 36/9 37/20 43/10 44/1 44/13 51/7 55/16 56/17 56/20 59/14 62/11 64/10 64/16 70/9 70/10 77/8 80/22 85/11 86/24 87/18 87/20 88/9 88/14 88/22 88/24 90/21 91/2 91/9 91/17 96/10 97/1 100/17 101/3 101/14 101/16 101/18 103/2 105/10 107/6 113/2
outcome **[1]** 6/5
outside **[5]** 5/16 7/3 18/11 18/25 44/6
over **[6]** 16/19 20/23 34/1 74/22 74/25 95/8
overdue **[1]** 61/21 61/22
overlapping **[1]** 8/20
Overruled **[29]** 30/9 33/4 33/16 34/9 37/7 40/8 41/9 42/4 42/23 45/14 46/12 47/18 52/11 54/2 54/17 60/7 61/9 63/6 72/11 85/19 86/21 87/25 89/9 92/24 95/16 100/4 106/9 112/15 115/24
owed **[2]** 82/7 83/4
own **[1]** 91/24

**P**

p.m **[1]** 53/13 118/11
page **[51]** 18/20 19/23 30/4 31/1 31/19 31/23 34/16 34/17 34/20 34/21 34/21 35/5 35/7 37/16 39/24 47/20 48/8 49/12 50/21 51/8 52/16 52/23 53/16 54/11 57/11 58/5 64/6 64/13 68/5 69/1 70/2 70/17 75/21 75/21 75/24 76/4 78/3 80/3 94/17 112/25 114/2 114/7 114/11 114/12 114/13 114/16 114/20 114/21 114/22 115/9 119/11
page 1 **[3]** 30/4 52/16 64/6
page 3 **[1]** 47/20
page 4 **[6]** 34/21 48/8 64/13 70/2 80/3
page 5 **[2]** 70/17 75/21
page 6 **[1]** 50/21
page 7 **[1]** 19/23
pages **[3]** 14/7 16/17 16/19
paid **[11]** 10/3 74/24 77/19 82/16 92/17 92/22 93/11 107/2 109/7 109/8 109/14
papers **[1]** 20/11
paragraph **[27]** 30/4 35/6 61/13 61/14 62/1 62/10 67/19 69/4 74/7 74/12 74/12 76/16 76/25 77/16 77/22 77/23 77/24 78/1 78/2 78/5 78/9 78/12 80/3 80/5 81/16 82/4 82/4
paragraphs **[4]** 81/19 81/22 81/24 82/2
paralegal **[3]** 40/14 43/25 44/13
paraplegic **[4]** 27/16 32/8 34/11 107/10
paraplegics **[2]** 40/3 92/2
parent **[1]** 78/22
parents **[1]** 85/13
Park **[1]** 106/24
part **[3]** 41/2 50/10 65/15
Parthenia **[1]** 55/19
particular **[2]** 17/24 85/14
parties **[7]** 4/24 5/15 10/21 76/19 78/16 79/10 79/17
partners **[1]** 25/4 78/14 78/19
party **[5]** 9/24 10/4 21/8 76/19 80/6
Party's **[1]** 78/18
patients **[4]** 105/18 105/21 105/25 106/2
pay **[12]** 33/13 39/3 45/17 53/13 59/10 62/18 64/3 82/25 83/6 90/18 92/19 102/3
paying **[11]** 32/12 32/18 32/24 33/2 33/8 83/3

**P**

**paying...** [5] 93/9 104/7 106/6 106/11 109/5
**payment** [2] 42/16 42/20 45/2
**payments** [4] 36/11 36/15 45/23 46/16
**payroll** [1] 82/25
**peace** [1] 99/23
**peeve** [1] 23/12
**people** [16] 6/3 6/15 7/11 7/16 7/17 7/25 8/10 8/15 83/19 102/12 105/16 107/8 108/14 108/17 108/19 109/20
**Peoples** [1] 15/22
**per** [2] 77/7 77/19
**percent** [2] 22/13 30/10
**perhaps** [1] 105/7
**period** [12] 44/19 45/25 46/5 46/15 77/20 85/25 96/14 96/23 97/1 98/21 105/5 106/4
**periodic** [2] 45/18 46/6
**periodically** [1] 66/6
**periods** [1] 7/18
**Perlman** [11] 103/11 103/12 103/16 103/20 103/23 103/25 104/4 104/7 104/10 104/19 104/20
**person** [8] 14/21 35/21 43/22 43/24 44/2 72/1 86/12 103/10
**personal** [1] 98/7
**personally** [4] 21/24 33/2 33/8 67/5
**peruse** [1] 18/15
**pet** [1] 23/12
**phase** [2] 109/7 109/25
**Philip** [2] 85/14 85/20
**phone** [4] 46/22 53/14 71/16 71/19
**photograph** [1] 49/20
**photos** [1] 50/3
**physical** [1] 91/25
**physically** [1] 92/9
**physician** [1] 104/2
**placate** [1] 56/2
**place** [12] 25/8 35/23 36/4 42/1 74/13 90/23 91/2 91/9 91/17 91/21 91/22 99/22
**placed** [1] 12/25
**places** [1] 22/4
**plaintiff** [3] 1/10 2/2 34/19
**PLAINTIFF'S** [2] 3/5 3/7
**planned** [1] 56/17
**plastic** [1] 26/21
**please** [85] 24/17 24/19 26/9 26/12 26/15 26/21 28/17 29/7 29/23 30/22 34/15 37/16 39/5 39/22 40/24 47/2 48/2 48/6 48/9 49/1 50/22 51/21 52/22 53/7 53/10 53/11 53/23 56/24 57/21 57/22 59/19 60/10 60/24 61/16 62/2 62/8 62/10 62/11 63/24 64/5 64/7 64/15 66/22 67/19 68/15 68/16 69/5 69/11 69/13 70/18 73/18 74/7 74/11 75/8 75/21 76/12 76/25 77/3 77/14 78/2 78/12 80/3 80/5 81/2 81/5 81/6 83/18 85/16 91/23 93/20 97/5 97/6 103/10 106/19 109/18 110/24 113/1 113/15 113/25 114/1 114/2 117/1 117/4
**pleased** [1] 36/8
**plenty** [1] 21/23
**plow** [3] 18/9 19/15 19/16
**pocket** [1] 77/8
**point** [20] 8/10 9/1 9/4 9/6 11/3 23/2 35/18 54/25 56/6 66/20 82/7 85/7 88/8 97/12 98/4 98/24 99/13 102/24 104/19 104/20
**pointed** [1] 81/24
**populations** [1] 100/2
**portion** [1] 69/10
**portions** [1] 7/23 25/7 69/1
**position** [2] 13/9 17/14
**possession** [11] 20/19 21/7 21/19 21/21 22/7 22/18 22/19 22/20 23/24 24/2 24/3
**possible** [3] 19/12 19/19 103/1
**possibly** [1] 117/17
**potential** [1] 10/13
**potentially** [1] 6/16
**practicalities** [1] 17/21
**praying** [1] 89/22
**precisely** [1] 11/22
**predetermined** [2] 109/24 109/25

**preferable** [1] 53/4
**prepared** [1] 109/2
**preparing** [1] 20/14
**presence** [5] 5/16 7/3 13/23 18/12 18/25
**present** [14] 2/18 4/2 4/9 4/17 26/6 68/21 78/23 81/7 81/11 91/25 98/12 109/11 116/9 117/6
**presented** [2] 73/8 76/9 80/17
**PRESIDING** [1] 1/8
**pretrial** [1] 16/22
**prevented** [1] 21/22
**preventing** [1] 91/1
**previous** [1] 62/4
**previously** [2] 77/6 90/5
**primarily** [1] 46/20
**primary** [1] 104/1
**principal** [1] 9/1
**prior** [8] 23/19 38/2 38/2 57/8 58/2 58/18 71/25 84/21
**priority** [1] 101/16
**private** [5] 25/11 85/5 86/7 107/25 108/1
**privately** [1] 111/5
**privilege** [7] 4/22 5/7 11/2 22/8 22/12 24/25 25/25
**privy** [1] 96/20
**PRO** [1] 2/14
**probably** [2] 20/5 21/15
**problem** [4] 12/23 17/5 69/22 71/13
**problems** [1] 13/12
**proceeding** [6] 6/5 6/6 6/7 6/9 6/17 72/15
**proceedings** [4] 1/15 26/5 81/10 119/10
**proceeds** [4] 7/23 8/11 9/3 9/3
**process** [4] 56/13 65/15 65/23 104/3
**produce** [1] 24/6
**produced** [6] 20/21 20/24 21/17 22/14 23/25 24/5
**production** [3] 13/15 22/14 22/16
**program** [1] 109/20
**promised** [1] 64/8
**prosecution** [2] 21/21 22/7
**prospect** [1] 55/1
**protected** [2] 25/9 38/14
**protects** [1] 38/12
**prove** [2] 10/9 11/9
**provide** [2] 18/5 52/19
**provided** [6] 12/16 14/15 19/5 22/12 103/4 118/7
**providing** [1] 99/21
**provision** [1] 79/8
**provisionally** [5] 12/20 12/25 13/19 13/20 19/2
**provisions** [2] 9/9 9/10
**psychiatrist** [1] 90/7
**public** [3] 72/8 84/25 101/11
**publish** [3] 39/22 97/5
**published** [1] 13/18
**pull** [14] 31/20 31/22 47/20 50/21 61/13 62/7 63/8 67/19 68/11 76/25 78/2 80/3 94/12 106/21
**purchase** [8] 55/5 56/6 56/10 56/14 57/18 58/12 58/21 59/9
**purchased** [1] 111/4
**purchasing** [1] 56/13
**purported** [1] 79/20
**purpose** [1] 11/10
**purposely** [1] 21/19
**pursuant** [7] 12/4 12/10 14/11 25/8 77/16 78/1 119/7
**put** [3] 6/17 38/7 97/10
**puts** [1] 14/7
**putting** [1] 39/2 61/17

**Q**

**quadriplegics** [1] 40/3
**qualified** [1] 68/4
**quarter** [1] 36/10
**quarterly** [3] 36/9 36/12 36/15
**quash** [1] 6/10
**question** [26] 4/18 6/24 14/20 23/10 23/13

23/14 23/17 25/18 33/5 42/10 44/11 56/5 84/2 85/24 85/25 86/6 86/22 95/22 103/7 107/7 115/23 116/15 117/21 117/22
**questioning** [2] 8/24 84/11
**questions** [11] 14/22 24/8 24/24 25/10 69/11 80/24 81/15 82/18 114/5 114/9 117/25
**quick** [4] 4/14 19/18 19/19 117/17
**quickly** [4] 18/15 19/11 20/1 31/23
**quite** [3] 45/21 84/14 117/9

**R**

**raise** [4] 6/11 15/1 20/14 26/12
**raised** [5] 41/23 42/7 42/11 61/23 61/24
**raising** [1] 11/24
**range** [3] 17/24 18/21 18/22
**ranges** [1] 18/6
**rather** [2] 12/8 14/12
**reach** [2] 43/10 59/14
**reached** [4] 44/1 74/21 85/11 86/24
**reaching** [1] 44/13
**react** [1] 44/4
**read** [22] 48/2 48/6 48/9 53/3 53/7 60/10 61/16 62/10 64/7 64/15 68/16 69/5 69/11 70/19 74/7 74/11 76/12 77/3 77/14 78/8 78/12 80/5
**reading** [4] 41/17 63/12 78/6 98/15
**Reagan** [1] 2/10
**real** [1] 55/12
**realistic** [1] 118/6
**really** [4] 54/10 108/11 109/22 110/19
**reason** [5] 8/9 10/23 56/9 88/3 92/21
**reasons** [1] 11/1
**recall** [38] 21/5 35/15 65/11 67/23 77/23 84/17 85/10 86/11 86/14 87/2 87/12 87/17 89/16 90/21 90/25 91/6 91/7 91/10 91/12 93/4 95/1 95/4 95/17 96/2 96/4 97/2 100/24 108/13 111/12 111/14 111/14 111/16 112/5 114/5 115/12 115/14 115/19 116/23
**receive** [6] 4/6 12/19 13/19 13/19 19/1 30/6 51/10 51/13 66/6 66/18 70/22 71/16
**received** [49] 3/8 3/19 12/25 29/19 29/20 31/10 31/11 36/24 37/3 37/12 38/6 39/17 39/18 39/21 41/11 41/12 42/15 42/20 46/6 47/18 47/19 50/5 50/8 50/11 50/12 50/19 52/11 52/13 52/14 59/3 60/7 60/8 61/10 61/11 63/6 63/7 66/8 67/5 67/13 67/14 67/17 70/20 74/2 74/3 75/18 75/19 77/6 102/19
**receiving** [8] 8/11 36/11 36/14 38/21 65/10 65/12 66/5 66/17
**recess** [6] 26/4 81/2 81/8 81/9 118/10 118/11
**reciprocal** [2] 22/14
**recognize** [9] 39/7 47/5 49/3 51/23 59/22 62/23 66/24
**recollection** [11] 23/22 86/9 92/13 97/4 97/11 97/25 98/15 103/15 107/1 110/11 113/21
**recommended** [1] 108/21
**record** [16] 5/3 12/11 12/17 15/5 15/9 15/22 15/24 17/12 18/11 18/11 19/7 28/23 94/10 95/9 115/13 118/2
**records** [6] 6/8 12/7 15/17 16/2 17/23 20/20 20/21 21/13
**RECROSS** [2] 3/5 3/16
**rectify** [1] 53/23
**redetermination** [2] 67/22 68/1
**REDIRECT** [2] 3/5 3/16
**refer** [1] 60/22
**reference** [3] 68/1 68/22 68/24
**referral** [1] 73/5
**referred** [1] 49/19
**referring** [1] 48/19
**refresh** [6] 97/11 97/25 113/10 113/21
**refreshes** [1] 97/4
**refused** [4] 12/5 98/8 99/1 99/15
**regard** [3] 10/18 13/24 22/7
**Regnier** [21] 40/12 40/13 40/17 41/10 46/17 46/21 47/8 47/23 48/3 48/22 52/3 53/8 53/16 53/25 59/14 59/24 60/10 61/1 63/1 67/8 69/17
**Regnier's** [1] 41/14
**regular** [1] 104/4

**R**

**regulations** [1] 119/12
**rehab** [1] 32/5
**related** [3] 62/3 78/24 116/2
**relates** [2] 5/14 16/7
**relating** [7] 19/10 19/22 20/16 20/20 79/12
85/4 113/22
**relationship** [1] 37/10
**release** [8] 73/9 76/6 76/9 76/13 78/13 79/10
79/13 79/21
**released** [3] 77/16 77/25 96/19
**releases** [1] 78/16
**relevance** [6] 6/24 7/10 84/20 85/1 85/18 89/8
**relevant** [19] 5/19 6/25 7/12 7/16 7/19 7/24
8/5 8/12 9/15 9/18 9/18 9/22 9/25 10/6 10/20
20/25 22/1 24/5 25/12
**relied** [1] 63/25
**relitigate** [2] 9/2 10/15
**rely** [2] 12/7 59/10
**relying** [1] 63/21
**remainder** [2] 38/25 49/12
**remained** [1] 105/22
**remedies** [1] 79/6
**remember** [38] 21/5 32/1 43/14 43/23 60/20
73/2 81/2 86/8 87/1 87/16 87/19 88/15 88/18
89/17 89/18 94/22 96/16 96/17 96/18 98/17
98/21 101/4 101/5 102/8 102/9 103/13 103/21
114/8 114/9 114/24 115/1 115/4 115/7 115/21
116/2 116/4 116/5 117/1
**render** [1] 14/22
**renegotiate** [1] 111/8
**rent** [7] 59/12 62/3 62/5 63/25 64/9 64/16 65/1
**rental** [1] 68/17
**rents** [1] 64/3
**repeat** [3] 33/5 42/10 44/11
**repeatedly** [2] 23/4 54/14
**rephrase** [1] 108/16
**reply** [4] 19/21 19/24 19/25 20/8
**report** [4] 112/1 112/4 112/6 112/10
**reported** [1] 119/9
**REPORTER** [1] 119/17
**REPORTER'S** [1] 1/15
**represent** [4] 24/25 74/19 96/8 96/11
**representation** [5] 17/12 19/10 20/4 98/13
99/5
**representatives** [2] 78/15 78/19
**represented** [8] 4/17 28/6 28/13 31/14 33/20
77/5 80/7 84/24
**representing** [1] 14/18
**represents** [1] 24/2
**request** [3] 25/21 61/20 69/7
**requested** [2] 70/22 71/3
**requesting** [1] 68/13
**requests** [2] 51/18 61/17
**required** [4] 11/23 17/16 17/18 65/16
**requirement** [1] 16/14
**requirements** [2] 13/23 18/1
**requiring** [1] 33/12
**research** [2] 81/5 117/4
**residence** [3] 107/25 108/2 111/4
**resolution** [2] 9/8 25/7
**resolutions** [1] 10/13
**resolved** [1] 53/18
**respond** [3] 7/7 53/17 69/6
**responded** [2] 71/2 71/5
**response** [5] 41/14 48/6 51/6 53/22 70/24
**responsibility** [1] 6/21
**responsible** [7] 6/3 6/13 6/15 8/1 8/11 8/15
99/21
**rest** [2] 105/12 107/6
**Restate** [1] 84/3
**restrict** [1] 10/12
**result** [1] 79/7
**resume** [1] 71/9
**resumed** [2] 26/5 81/10
**retainer** [2] 29/9 29/13
**return** [1] 72/18
**Returning** [1] 76/4
**review** [4] 20/11 22/8 22/12 80/10

**reviewed** [1] 70/15
**Richard** [2] 1/20 100/3
**right** [71] 5/4 5/20 5/22 12/24 14/3 19/24
19/25 21/11 21/11 26/12 28/19 40/24 53/1
54/10 58/23 63/16 64/1 73/16 80/17 84/14
84/19 84/25 85/14 85/23 85/24 88/10 88/17
89/4 90/6 90/13 91/5 93/7 93/9 98/13 98/15
101/14 101/16 101/22 102/1 102/15 102/21
103/2 103/8 103/9 104/5 104/8 104/17 104/21
104/22 105/1 105/8 105/14 105/23 106/1
107/13 107/17 107/21 107/23 107/25 108/24
109/2 109/12 109/23 111/18 112/1 112/3
112/4 114/17 114/19 116/24 117/14
**rights** [5] 79/4 79/4 79/4 79/5 79/5
**Ronald** [1] 2/10
**Ronan** [1] 103/12
**room** [8] 35/24 48/11 48/13 86/7 86/13 91/24
100/24 106/23
**RPR** [1] 1/19
**rule** [9] 7/10 12/4 12/10 17/19 18/1 22/5 23/8
23/18 48/19
**rules** [1] 45/10
**ruling** [7] 11/16 14/13 16/15 16/23 19/3 84/21
88/5
**rumor** [2] 102/13 102/16
**runs** [1] 14/6
**Ruth** [5] 62/12 62/14 62/16 85/22 96/15

**S**

**SACR** [2] 1/11 4/3
**SACR-19-00061-JVS** [2] 1/11 4/3
**SAGEL** [3] 2/9 4/5 24/2
**said** [48] 5/7 18/19 19/23 31/14 33/19 36/7
36/8 36/19 38/15 38/19 44/5 44/6 44/18 45/7
45/8 46/3 48/10 48/13 55/9 55/25 56/1 56/3
58/21 60/12 60/18 66/16 66/17 69/16 69/22
71/20 71/20 72/4 72/4 72/5 73/5 81/23 96/10
105/9 109/3 109/3 109/22
**same** [12] 10/23 13/14 14/19 16/12 40/7
50/16 50/17 64/18 84/8 84/9 95/21 117/22
**San** [1] 2/16
**Sandy** [1] 85/20
**Santa** [4] 1/16 1/20 2/11 4/1
**Saturday** [1] 70/21
**say** [26] 5/14 8/6 9/14 11/21 13/3 13/11 15/4
15/14 25/15 36/14 36/22 48/18 51/2 53/20
54/23 64/25 70/8 72/3 79/25 90/3 94/1 98/14
100/22 107/22 112/18 113/24
**saying** [10] 9/20 10/2 13/1 17/23 18/1 21/21
22/19 65/7 73/3 78/5
**says** [7] 9/16 31/13 62/1 67/16 67/21 68/7
82/5
**scaled** [3] 108/8 109/16 109/17
**scenes** [3] 96/19 96/21 98/18
**schedule** [1] 20/1
**schizophrenia** [3] 90/6 90/10 90/11
**scope** [4] 22/9 79/11 79/13 83/23
**screen** [6] 34/22 81/16 94/13 97/10 114/18
114/19
**screens** [2] 41/16 63/11
**screenshot** [1] 49/7
**screenshots** [8] 47/9 47/12 49/8 49/9 49/10
49/22 51/25 52/5
**SE** [1] 2/14
**search** [1] 22/8
**seated** [1] 4/19
**second** [8] 35/6 59/20 61/13 61/19 64/13
69/10 70/5 77/3
**Secondly** [1] 21/3
**Section** [2] 2/6 119/7
**security** [14] 38/16 38/18 49/10 50/6 50/18
65/11 65/17 65/20 66/6 67/2 67/24 68/13 71/3
71/13
**see** [39] 8/23 9/4 10/15 16/6 28/15 31/1 34/17
34/22 34/23 35/9 37/19 37/24 40/19 47/22
50/24 51/4 52/12 57/2 57/5 57/23 58/6 58/8
68/4 68/7 69/1 70/5 81/19 85/8 86/25 94/19
97/3 97/18 97/20 112/21 112/22 114/15
114/16 114/20 114/23

**seek** [3] 6/13 15/5 16/22
**seeking** [2] 9/3 13/4
**seemed** [1] 101/12
**seems** [2] 98/3 98/14
**seen** [6] 38/3 57/8 58/2 72/1 98/2 105/16
**SEFFENS** [3] 1/19 119/16 119/17
**seized** [1] 22/24
**self** [1] 105/6
**self-sufficient** [1] 105/6
**seller** [1] 56/2
**SELNA** [1] 1/8
**send** [5] 45/20 62/2 62/11 66/12 66/12
**sending** [4] 40/17 45/18 45/25 46/5
**sense** [1] 12/16
**sensitivity** [2] 9/7 9/8
**sent** [13] 18/20 40/6 46/16 50/19 50/25 53/8
59/24 61/1 63/1 64/24 65/9 69/16 70/10
**sentence** [6] 61/16 61/19 69/12 72/3 77/3
77/14
**separate** [2] 10/19 25/16
**September** [3] 50/25 62/2 62/4
**September 12th** [1] 62/4
**September 26th** [1] 50/25
**server** [2] 21/24 22/1
**servers** [5] 20/22 21/14 22/25 23/20 24/1
**services** [1] 109/19
**settle** [1] 10/3
**settled** [3] 35/12 35/19 93/3
**settlement** [43] 5/15 7/23 9/4 10/19 11/10
10/13 33/12 35/9 36/7 36/20 36/21 36/23
37/12 38/6 39/2 41/20 42/8 42/13 44/21 46/2
46/7 55/6 55/10 59/3 68/17 68/18 71/21 72/16
74/21 74/25 75/3 76/6 76/13 77/15 77/25
80/23 82/8 82/19 82/22 82/24 83/3 83/6 114/6
**settlements** [2] 4/23 5/15
**seven** [1] 84/18
**several** [1] 25/3
**shall** [1] 77/19
**share** [2] 8/1 90/7
**sharing** [1] 30/25
**SHARON** [1] 1/19 119/16 119/17
**she** [23] 40/5 40/14 40/15 40/21 43/15 59/15
96/17 96/18 96/22 96/25 103/17 103/21
103/22 104/1 104/2 104/3 104/11 104/12
104/13 104/15 104/16 104/24 105/9
**She's** [1] 40/1
**Sheriff's** [1] 78/17
**shield** [2] 9/24 25/12
**shields** [1] 26/21
**shift** [1] 54/25
**short** [1] 97/1
**shortly** [6] 24/10 72/19 89/13 89/14 89/21
90/2
**should** [11] 5/16 7/3 8/20 17/16 21/1 23/25
24/5 24/10 25/17 53/18 108/22
**show** [5] 6/21 37/15 56/23 97/3 115/13
**showing** [3] 29/12 31/23 35/15
**shown** [1] 69/15
**shows** [1] 115/13
**Sian** [5] 39/25 40/1 40/12 43/15 43/16
**sign** [8] 29/9 57/17 58/11 73/4 73/12 73/14
73/16 80/17
**signature** [25] 29/24 29/25 30/2 31/1 31/20
31/20 34/18 34/24 35/1 35/2 57/11 57/12
57/14 58/6 58/9 73/22 75/24 76/1 76/1 94/18
94/18 94/23 94/24 115/1 115/15
**signatures** [1] 34/17
**signed** [14] 31/4 74/20 75/5 77/10 79/16
80/15 82/15 94/21 95/1 115/3 115/7 115/18
116/3 116/21
**significance** [1] 117/20
**significant** [4] 20/16 38/24 77/6 77/8
**signing** [3] 95/13 95/18 96/2
**similar** [2] 17/8 105/25
**simply** [1] 18/2
**since** [5] 41/16 51/9 68/18 82/15 90/9
**single** [5] 93/11 100/13 100/16 100/19 102/3
**siphoned** [1] 9/17
**siphoning** [1] 9/18

**S**

**sir [27]** 17/20 19/17 24/16 25/15 26/20 27/6 84/6 88/3 90/2 91/16 92/19 93/24 94/15 94/19 95/12 97/20 98/11 99/3 99/18 100/23 101/4 112/17 112/21 113/18 114/13 114/16 117/20
**SIS [2]** 51/10 51/11
**sister [9]** 62/12 62/17 85/22 96/15 97/21 97/25 98/12 98/17 98/21
**situation [1]** 5/3
**six [3]** 13/13 27/7 65/2
**Sixty [1]** 39/17
**slept [1]** 109/12
**sliding [1]** 32/8
**so [59]** 4/18 5/8 5/23 6/21 6/25 8/9 9/4 9/9 10/15 11/23 12/8 12/24 13/14 14/22 15/5 16/10 17/5 17/10 18/1 18/16 19/7 20/24 21/14 22/14 22/17 25/9 30/3 32/8 34/4 40/19 40/19 48/12 48/16 48/16 50/18 51/9 56/24 57/22 60/14 61/17 63/16 63/21 64/23 65/13 70/14 73/9 81/6 81/25 86/6 86/18 95/9 96/11 102/12 105/24 106/21 107/15 107/15 107/18 111/8
**Social [12]** 38/18 49/10 50/6 50/18 65/17 65/20 66/6 67/2 67/24 68/13 71/2 71/13
**solicited [1]** 96/8
**some [23]** 13/13 14/13 18/3 24/21 35/18 42/1 45/21 54/25 56/6 63/13 66/20 81/19 81/20 81/22 90/2 96/2 104/19 104/20 106/2 108/14 108/17 108/19 114/5
**somebody [2]** 64/19 111/5
**somehow [1]** 7/22 96/7
**someone [5]** 10/3 58/14 67/24 103/6 107/10
**someplace [1]** 108/21
**something [6]** 40/18 64/25 99/6 107/11 108/11 109/3
**soon [4]** 16/5 55/4 55/8 70/23
**sorry [15]** 15/20 19/21 30/19 34/21 44/11 57/2 61/19 63/11 74/11 84/17 105/3 106/24 113/8 114/21 116/18
**sort [2]** 19/2 102/13
**sought [2]** 6/3 6/8
**sounds [1]** 111/18
**SOUTHERN [1]** 1/6
**speak [1]** 25/5
**speaking [3]** 54/20 91/7 103/11
**speaks [1]** 10/20
**special [18]** 38/8 38/9 39/3 40/6 40/18 41/20 42/11 42/19 43/11 43/17 44/9 44/15 46/4 55/10 56/11 58/22 68/25 71/22
**special-needs [18]** 38/8 38/9 39/3 40/6 40/18 41/20 42/11 42/19 43/11 43/17 44/9 44/15 46/4 55/10 56/11 58/22 68/25 71/22
**specific [6]** 12/14 13/24 14/4 25/10 90/7 99/16
**specifically [7]** 6/20 12/22 13/7 13/17 20/18 30/19 91/7
**speculation [5]** 37/6 42/22 45/13 92/23 106/8
**speed [1]** 19/14
**spell [1]** 26/15
**spent [4]** 46/9 59/6 75/2 77/12
**spinal [1]** 106/2
**splitting [1]** 31/3
**spoke [1]** 110/12
**Spring [1]** 2/7
**SSI [22]** 38/13 38/15 38/15 38/17 38/21 45/10 48/19 51/12 51/13 65/12 65/16 65/25 66/5 66/20 68/4 69/6 69/8 69/9 70/10 70/20 70/21 71/7
**staff [3]** 91/24 107/8 107/24
**stale [1]** 6/19
**staleness [1]** 7/10
**stand [1]** 6/13
**standing [4]** 7/4 28/17 28/19 101/2
**start [4]** 34/14 52/17 95/8 103/23
**started [4]** 65/12 66/5 66/17 101/22
**starting [4]** 62/1 69/12 70/5 77/4
**state [3]** 24/19 26/15 45/10
**stated [1]** 12/6
**statement [3]** 10/8 41/7 87/2
**statements [2]** 10/20 11/8

**states [14]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
**stay [4]** 32/10 65/8 65/13 105/12
**stayed [1]** 107/13
**stealing [1]** 10/8 72/15
**stenographically [1]** 119/9
**step [1]** 93/23
**stepped [1]** 74/15
**steps [1]** 23/18
**STEWARD [3]** 2/15 2/15 4/10
**still [7]** 21/1 53/21 63/15 63/21 68/4 100/11 111/2
**stipulate [2]** 13/10 17/14
**stop [4]** 45/23 56/4 69/6 69/8
**stopped [3]** 70/21 71/8 111/3
**street [5]** 1/20 2/7 2/11 55/19 55/19
**stretch [1]** 6/19
**stricken [1]** 43/20
**strike [8]** 43/19 86/1 91/16 95/24 101/7 103/16 104/19 108/16
**sub [1]** 32/5
**sub-acute [1]** 32/5
**subject [3]** 13/20 13/22 14/5
**submit [2]** 20/8 65/16
**submitted [2]** 81/4 117/3
**submitting [1]** 65/19
**subpoena [3]** 22/5 23/8 23/19
**subrogation [1]** 79/5
**subsidiary [1]** 78/22
**successfully [2]** 77/4 77/5
**successors [1]** 78/15
**such [1]** 37/3
**sue [1]** 101/13
**sued [5]** 7/11 7/15 7/16 33/1 33/8
**suffer [3]** 27/15 27/18 90/9 90/11 90/12
**suffered [3]** 27/20 28/11 105/1
**suffices [1]** 13/16
**sufficient [3]** 14/21 25/17 105/6
**suggest [2]** 110/7 117/21
**suggests [3]** 88/19 95/5 95/12
**Suite [3]** 1/20 2/11 2/16
**sum [4]** 42/16 42/20 77/17 82/5
**Sunrise [9]** 35/24 35/25 106/17 106/18 106/25 107/3 107/5 107/19 108/14
**supplemental [2]** 38/16 65/11
**supplies [1]** 109/20
**supportive [1]** 109/19
**suppose [1]** 5/5
**supposed [2]** 36/14 51/12
**sure [10]** 7/8 12/2 13/16 24/18 66/2 74/17 93/3 101/21 104/16 105/2
**surrounding [1]** 84/7
**sustain [1]** 10/24
**Sustained [5]** 84/22 85/2 88/6 89/25 91/14
**sustaining [1]** 11/3
**SWORN [1]** 26/14
**system [3]** 100/1 104/2 113/9

**T**

**take [24]** 4/13 6/12 7/24 11/21 16/6 19/16 21/8 23/6 26/20 35/23 36/4 40/20 42/1 47/2 56/17 56/20 64/5 69/23 69/25 80/25 107/10 107/22 116/14 116/25
**taken [4]** 26/4 74/17 81/9 118/11
**takes [1]** 107/20
**taking [2]** 87/10 93/13
**talk [4]** 41/19 48/4 69/19 102/12
**talked [5]** 21/4 56/2 64/8 67/22 102/7
**taught [1]** 32/7
**team [3]** 22/8 22/12 100/1
**team's [2]** 21/21 22/7
**technology [1]** 4/11
**telephone [1]** 5/21
**tell [39]** 17/2 33/1 33/7 33/11 34/4 35/12 35/18 36/6 36/17 36/24 37/11 37/14 42/8 42/12 42/15 42/18 43/6 43/9 44/1 46/6 46/9 56/14 56/17 59/6 64/21 64/23 69/7 69/21 71/19 72/7 72/14 83/18 85/16 88/20 93/20 103/10 103/15 116/20

**telling [1]** 45/1 46/1
**ten [5]** 13/13 18/20 32/11 103/6 105/17
**ten-page [1]** 18/20
**tens [1]** 102/15
**terms [5]** 9/13 9/14 10/2 77/18 82/6
**terrible [1]** 105/3
**testified [6]** 6/6 6/6 41/10 48/19 63/24 65/10
**testifying [1]** 9/10
**testimonial [2]** 74/6 74/9
**testimony [9]** 6/16 10/18 12/3 13/8 13/21 20/15 24/22 25/24 115/23
**text [32]** 47/8 47/9 47/22 48/2 48/8 49/13 49/15 49/23 50/24 51/8 51/17 51/25 52/2 52/5 52/16 52/19 52/23 53/7 54/11 63/8 64/6 64/14 64/15 64/18 67/7 69/16 70/5 70/8 70/12 70/17 70/19 70/22
**texted [1]** 49/20
**texts [1]** 46/22
**than [17]** 4/25 5/19 7/18 12/8 14/12 20/9 22/13 35/1 45/8 45/9 45/11 48/15 48/18 83/3 92/22 109/12 118/7
**thank [22]** 10/16 11/24 11/25 19/4 19/17 26/2 26/3 26/19 26/23 27/1 28/25 39/20 61/12 67/18 79/15 81/13 83/10 97/15 113/12 116/18 116/18 118/9
**thankful [1]** 99/18
**Thanks [4]** 41/18 48/12 60/15 63/18
**that [562]**
**that's [32]** 6/10 7/15 7/23 7/24 8/12 10/23 11/3 11/9 12/23 16/14 17/3 18/19 20/7 20/10 20/24 53/4 53/5 78/10 85/7 85/24 88/11 89/5 90/14 95/10 98/14 98/15 103/9 104/22 105/3 107/12 108/7 111/4
**their [3]** 15/6 80/10 85/17
**them [31]** 6/15 12/13 12/16 12/25 16/22 17/25 19/16 20/17 21/1 21/12 22/1 22/21 22/21 45/4 46/18 52/25 53/3 56/2 61/16 61/18 61/24 66/9 66/18 71/5 73/14 73/16 81/25 82/1 85/15 116/21 116/23
**then [32]** 9/5 25/3 48/6 51/8 53/16 53/9 54/8 54/11 55/11 57/5 57/24 64/18 65/15 66/12 68/10 69/10 85/22 89/14 99/8 103/6 104/19 105/6 105/7 105/22 106/15 107/19 107/24 109/5 109/8 109/16 109/17 111/1
**theories [3]** 7/17 8/7 8/19
**theory [1]** 7/12
**therapist [2]** 92/1 92/1
**there [62]** 6/8 8/20 9/8 9/18 9/20 10/25 14/10 14/19 17/8 18/16 25/25 28/19 29/3 29/25 31/1 31/13 36/7 39/24 43/14 48/9 51/2 51/24 53/14 54/9 55/11 56/4 57/3 57/5 57/11 57/24 58/6 61/16 64/13 64/15 67/21 68/10 69/1 71/21 73/3 73/10 73/16 91/24 91/25 93/4 94/15 100/25 101/1 101/24 102/11 104/25 105/4 106/2 106/2 107/8 107/8 107/12 107/14 108/9 109/4 109/4 116/8 116/9
**there's [6]** 12/22 13/3 13/11 15/5 86/10 99/15
**thereafter [1]** 72/19
**these [31]** 8/7 10/13 11/22 13/2 16/10 19/1 21/25 22/21 40/15 40/5 40/17 46/1 46/5 47/9 48/22 49/9 49/13 51/17 51/17 51/25 52/2 52/16 52/19 53/7 61/21 65/19 66/17 68/13 73/12 81/24 81/24
**they [61]** 6/9 6/9 9/11 9/12 13/2 13/4 13/13 14/2 14/5 16/15 18/15 20/21 20/22 20/23 21/13 21/17 23/13 24/3 24/5 28/3 40/6 42/5 43/16 43/25 49/10 49/14 49/15 50/19 52/1 56/1 61/23 66/1 66/11 68/3 68/25 69/22 69/23 70/10 70/21 70/22 71/8 80/6 81/18 85/4 86/24 91/25 92/1 101/1 106/2 102/18 106/22 107/8 107/19 108/21 108/23 111/3 111/8 112/13 112/17 112/17 116/11 116/18 116/6
**they're [8]** 9/13 11/23 13/7 14/5 16/11 20/25 21/16 21/18
**they've [3]** 13/5 13/6 24/4
**thing [1]** 101/15
**things [17]** 19/14 21/5 21/6 21/22 21/24 21/25 22/21 32/8 43/2 43/5 43/7 68/8 70/6 70/9 89/1

**T**

things... [2] 91/1 92/2
**think [43]** 5/2 5/18 5/22 6/24 6/25 7/23 8/4
8/12 8/14 8/20 8/23 9/1 9/7 9/17 10/7 10/9
10/11 10/17 10/25 11/18 11/22 14/7 14/16
14/20 16/14 16/17 20/3 20/25 21/15 21/17
25/14 25/17 25/25 28/8 56/12 58/21 69/16
70/10 80/25 94/12 97/8 103/12 111/11
**thinking [1]** 51/9
**third [2]** 9/24 10/4
**third-party [1]** 10/4
**thirds [1]** 47/22
**this [155]**
**those [40]** 5/6 5/10 7/22 9/2 9/8 9/10 9/13
9/14 9/21 10/2 10/15 12/14 12/19 14/22 15/12
23/2 25/10 26/22 27/18 27/20 28/6 39/3 42/1
43/2 43/5 43/6 45/18 45/20 45/23 47/11 50/18
52/5 63/24 66/3 66/8 68/11 68/16 79/6 81/17
82/2
**though [3]** 88/17 95/20 108/4
**thought [2]** 86/9 110/8
**thousand [4]** 48/12 48/12 48/14 48/17
**thousands [1]** 102/15
**three [9]** 18/15 19/10 52/23 53/7 59/3 59/7
62/7 62/11 117/22
**through [20]** 15/10 15/11 15/11 15/21 18/9
19/15 19/16 23/4 46/22 48/22 49/12 51/16
56/7 56/10 58/22 59/9 66/18 71/21 100/2
104/3
**throughout [1]** 14/12
**THURSDAY [3]** 4/1 60/13 61/21
**tie [2]** 28/20 28/22
**tighten [1]** 117/24
**time [69]** 8/10 14/13 18/3 18/25 19/16 32/6
32/12 32/23 32/24 35/18 38/5 43/3 44/8 44/12
44/19 44/20 45/21 45/25 46/5 46/15 46/23
55/4 64/3 67/24 72/1 72/2 74/20 84/14 84/24
85/25 86/1 86/2 86/11 86/13 86/16 87/3 87/7
87/9 87/20 88/18 89/3 89/11 95/2 96/14
96/23 97/1 98/8 98/21 99/1 100/7 100/10
100/23 101/6 102/11 103/7 104/20 104/23
105/5 105/8 106/4 107/5 109/23 110/12
110/22 111/13 111/15 118/4 118/6
**timeline [1]** 6/24
**times [3]** 41/24 108/19 109/12
**timing [1]** 89/16
**tirelessly [1]** 99/25
**title [4]** 30/24 74/5 76/4 119/8
**today [15]** 4/16 7/19 12/3 14/8 16/25 17/7
17/9 19/2 20/15 28/15 53/10 53/12 53/15
60/15 64/8
**told [13]** 32/18 38/5 44/8 44/17 44/23 58/25
79/23 88/12 88/16 105/9 109/1 116/23 118/4
**Tom [2]** 55/15 56/3
**tomorrow [4]** 53/14 53/18 53/23 64/9
**too [1]** 10/12
**took [2]** 23/18 25/8
**top [6]** 31/23 37/25 64/14 68/7 69/15 70/17
**topic [3]** 41/24 42/7 42/11
**total [2]** 63/15 118/5
**toward [1]** 65/13
**towards [1]** 10/5
**Towers [5]** 27/21 83/17 83/18 83/19 84/7
**transcript [4]** 1/9 1/15 119/9 119/11
**transfer [2]** 32/8 92/2
**transition [1]** 102/20
**transmitted [1]** 50/10
**transported [1]** 92/12
**trial [6]** 1/12 4/11 11/23 12/17 14/2 14/12
**trials [1]** 5/6
**tried [1]** 88/9
**true [10]** 23/1 43/2 43/5 89/7 89/15 95/6 97/1
106/7 112/13 119/8
**trust [24]** 15/8 17/4 38/8 38/10 38/11 38/12
39/3 40/18 41/20 42/19 43/11 43/17 44/10
44/15 46/4 55/10 56/11 58/22 66/2 68/19
68/22 68/23 68/25 77/12
**trusted [5]** 37/13 43/8 80/21 80/21 80/23
**trustee [5]** 22/2 22/3 23/1 23/4 23/22

**trusts [2]** 40/6 42/12
**try [3]** 16/10 96/19 117/24
**trying [2]** 44/9 44/14
**Tuesday [6]** 20/6 20/9 53/11 53/13 63/14
63/18
**turn [12]** 29/7 34/15 37/16 39/5 49/1 51/21
62/21 66/22 68/5 70/2 75/8 113/25
**twice [1]** 21/24
**Twin [5]** 27/21 83/17 83/18 83/19 84/7
**two [19]** 4/14 17/25 18/20 19/18 20/23 29/3
47/22 54/11 62/5 69/1 70/6 70/9 70/9 73/3
107/1 107/13 107/20 117/13 118/5
**two hours [1]** 118/5
**two-thirds [1]** 47/22
**type [2]** 25/18 38/12
**types [1]** 11/22
**typical [3]** 48/23 51/18 53/24
**typically [2]** 54/14 66/10

**U**

**U.S [2]** 111/23 119/17
**ultimate [1]** 56/9
**ultimately [3]** 28/2 55/18 65/8
**under [9]** 7/12 7/16 13/18 17/19 18/1 25/22
30/4 30/5 82/6
**underlying [2]** 18/22 21/4
**undermined [1]** 18/3
**understand [23]** 17/20 24/21 25/15 27/12
32/12 40/15 43/23 44/13 46/24 55/4 55/7
68/23 77/10 79/16 79/20 79/24 82/7 88/19
90/12 99/3 103/20 105/11 111/6
**understanding [9]** 6/2 37/10 38/9 55/23 68/2
88/24 102/14 105/8 106/10
**understood [13]** 13/25 18/13 56/9 85/5 85/15
93/5 93/13 104/7 104/16 104/25 105/4 105/14
117/25
**unethical [1]** 112/7
**unfiled [1]** 78/25
**UNITED [13]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
4/3 4/6 26/10 119/8 119/21
**unknown [2]** 78/25 89/1
**unless [4]** 13/17 24/8 81/23 110/23
**unlimited [1]** 6/17 107/15
**unliquidated [1]** 78/24
**unmatured [1]** 78/24
**unpaid [1]** 65/1
**unrelated [1]** 78/24
**until [10]** 20/6 57/3 81/4 88/8 89/10 89/14
90/25 106/5 107/16 117/3
**until shortly [1]** 89/14
**up [36]** 4/13 7/4 11/21 13/15 14/10 17/9 17/24
19/14 22/9 24/16 31/20 31/22 33/23 41/18
47/20 50/21 52/22 54/10 55/21 61/13 62/7
63/8 67/19 68/11 70/23 74/15 76/25 78/2 80/3
81/16 88/8 89/10 89/13 94/12 94/17 117/25
**us [11]** 4/11 13/6 21/14 69/7 69/7 83/20 87/17
87/20 108/4 108/25 109/5
**use [9]** 9/23 10/20 74/9 82/19 82/21 82/24
83/2 100/11 113/3
**used [2]** 63/16 113/10
**using [2]** 12/13 54/20

**V**

**vague [2]** 92/13 100/3
**van [2]** 34/12 92/15
**various [2]** 92/2 108/19
**vehicle [1]** 92/14
**venturers [1]** 78/21
**verification [2]** 68/19 68/22
**versus [1]** 4/4
**very [14]** 5/5 7/18 8/25 10/22 18/7 26/24 34/2
34/3 36/7 61/21 68/7 72/4 72/5 74/13 86/16
91/22 117/10
**via [2]** 46/22 69/16
**violating [1]** 9/10
**visit [5]** 69/12 69/13 71/20 71/23 71/25
**visits [1]** 93/4
**Vol [1]** 1/12

**Volume [3]** 29/4 29/4 29/5
**Volume 1 [2]** 29/4 29/5
**Volume 2 [1]** 29/4
**vs [1]** 1/10

**W**

**wait [1]** 57/3
**waiting [3]** 11/19 19/20 100/24
**walk [2]** 27/13 27/16
**want [57]** 7/2 7/4 18/4 24/11 37/15 54/25
56/4 56/5 57/23 71/15 87/20 93/21 96/11
109/1 110/23
**wanted [19]** 12/9 15/1 19/24 20/14 34/5 34/10
34/11 37/3 43/2 56/21 71/20 73/4 86/24
107/25 108/7 108/11 108/13 108/16 109/3
**wants [4]** 5/13 7/1 7/14 25/14
**was [183]**
**wasn't [9]** 5/3 60/13 86/16 96/20 100/10
102/17 102/24 115/11 116/18
**way [8]** 18/16 47/22 51/2 53/14 91/8 112/18
115/10 118/6
**ways [1]** 117/23
**we [147]**
**We'd [1]** 19/25
**we'll [9]** 10/15 18/8 19/16 20/8 20/11 80/25
97/3 116/14 116/24
**we're [8]** 5/17 6/10 10/14 16/25 17/20 19/20
20/25 97/10
**wearing [2]** 28/18 28/19
**Wednesday [2]** 64/16 64/19
**weeds [1]** 10/13
**week [3]** 20/4 20/5 63/14
**Welch [4]** 39/25 40/1 40/12 43/15
**well [53]** 4/10 5/5 5/10 5/21 6/21 7/6 8/23 8/25
9/16 9/20 10/7 10/11 10/22 10/25 11/3 11/15
12/6 13/4 13/6 14/6 16/25 18/7 18/24 19/13
20/3 20/23 21/16 24/14 41/23 42/19 46/3
47/17 52/19 55/25 63/13 64/23 66/16 68/3
86/1 91/24 92/19 96/20 97/3 98/19 101/11
101/22 103/16 105/9 105/11 107/7 109/9
109/24 114/10
**Wellbutrin [1]** 87/11
**went [2]** 10/9 21/24
**were [105]** 8/1 14/13 20/15 21/8 21/9 21/25
21/25 22/1 23/4 23/20 27/16 27/20 28/1 28/3
28/9 32/1 32/6 33/1 33/8 36/14 38/21 39/10
41/2 43/2 43/5 43/25 46/16 46/23 48/4 50/19
51/9 51/17 54/20 56/1 60/18 62/5 65/3 65/5
65/8 65/10 65/16 65/25 66/1 66/11 69/22 71/8
71/9 73/3 76/8 76/23 79/17 82/7 82/12 83/4
83/20 84/1 84/24 86/13 87/3 87/4 87/6 87/9
88/13 89/21 89/22 90/21 90/22 91/8 91/24
91/25 92/4 92/7 92/12 93/3 93/4 93/9 93/18
93/20 93/25 93/25 95/2 95/6 95/13 98/11
99/18 100/24 101/2 101/8 104/4 104/7 105/11
105/17 105/21 106/2 106/12 106/11 107/2
107/6 107/9 107/12 110/13 116/8 118/4 118/6
118/7
**weren't [2]** 92/7 101/11
**West [6]** 1/20 2/11 35/24 35/25 106/17 106/18
**what [123]**
**what's [4]** 14/8 20/1 22/19 56/25
**whatever [7]** 8/9 8/10 23/15 45/7 66/12
106/22 115/13
**whatsoever [2]** 79/6 112/7
**wheelchair [1]** 27/12
**wheeled [2]** 101/1
**when [58]** 10/7 16/15 21/21 23/14 24/1 27/18
27/20 29/9 32/1 36/4 36/14 41/23 42/7 42/11
45/1 45/23 46/15 48/13 48/18 49/19 51/10
53/25 60/18 60/22 65/2 68/19 71/3 72/2
72/21 74/13 77/10 79/16 80/17 84/13 86/1
86/4 87/7 87/15 90/17 93/24 93/24 95/1 95/14
96/2 100/13 100/16 100/19 100/23 101/13
103/23 103/24 109/8 109/10 109/12 111/9
116/7 116/20 117/21
**where [26]** 4/18 5/3 7/25 9/4 10/9 27/20 28/17
31/13 32/1 34/12 35/23 36/2 38/7 48/23 82/4
86/10 91/19 101/1 102/7 105/5 106/15 108/7

**W**

**where...** [4] 109/7 111/1 114/15 114/25
**wherever** [1] 109/1
**whether** [8] 13/23 19/24 32/23 115/3 115/17
115/20 116/3 116/3
**which** [41] 4/25 5/7 5/9 8/12 10/5 12/11 14/1
14/4 14/14 15/8 15/16 15/22 15/24 16/1 16/10
16/11 17/12 17/24 18/2 18/17 18/17 19/10
20/15 20/22 21/4 34/20 57/1 62/3 64/5 69/10
75/21 78/3 80/3 81/16 81/25 82/4 107/20
111/7 113/22 114/12 115/5
**while** [5] 28/11 45/25 105/21 105/22 107/2
**who** [33] 4/17 5/3 6/7 7/17 11/18 28/6 28/13
31/14 32/12 32/18 38/17 39/25 40/12 40/15
43/13 43/15 44/23 49/15 52/2 58/16 58/25
61/24 62/16 64/11 66/12 103/10 103/16
103/18 103/20 105/25 107/2 107/10 108/19
**who's** [1] 11/14
**whole** [2] 10/8 100/2
**whose** [2] 43/14 76/1
**why** [18] 5/9 11/1 17/16 32/6 36/11 40/17
45/9 55/7 55/23 56/10 69/7 80/20 81/22 87/22
93/20 103/15 107/12 116/13
**wide** [1] 100/1
**will** [57] 4/16 5/12 5/14 12/6 13/3 13/11 13/18
13/18 15/5 16/6 16/7 18/10 18/24 19/3 19/11
19/14 26/15 28/23 29/19 31/10 39/17 39/18
41/11 41/18 43/20 47/2 47/18 48/7 50/5 50/6
50/19 52/11 52/12 55/11 57/3 59/19 60/7 61/9
61/18 63/6 67/13 69/23 70/22 70/25 74/2
75/18 78/12 81/1 81/8 98/8 99/1 99/15 104/23
115/13 116/25 117/24 118/10
**Williams** [1] 43/15
**wire** [1] 7/18
**within** [2] 6/18 17/13
**without** [1] 40/5
**witness** [34] 4/16 5/21 11/18 24/13 26/8
26/14 28/24 29/8 30/23 37/18 39/6 41/1 41/9
47/4 49/2 51/22 53/3 57/4 59/21 60/25 62/22
66/23 68/6 73/19 75/9 75/23 78/8 83/25 97/7
112/25 113/14 117/8 117/10 117/21
**witness's** [2] 5/8 97/11
**witnesses** [3] 3/5 3/16 118/4
**word** [1] 100/11
**words** [1] 69/11
**work** [3] 63/14 96/25 103/20
**worked** [2] 40/15 103/22
**working** [7] 46/24 55/12 93/6 96/18 96/22
99/25 103/23
**works** [1] 19/25
**worry** [1] 71/1
**would** [102] 4/18 4/19 4/20 5/9 5/18 5/23 6/22
7/2 7/25 8/6 9/14 9/22 10/6 10/11 11/7 11/15
12/24 13/25 19/24 19/25 20/1 22/21 24/16
24/19 24/24 25/9 25/21 26/8 26/12 26/20
26/21 34/22 36/11 36/22 37/3 37/13 38/7
38/24 39/3 39/22 40/19 40/21 40/24 41/16
43/2 43/5 43/8 43/8 43/9 45/12 48/24 50/15
51/18 51/21 52/22 54/14 55/4 55/7 56/14
56/20 59/15 60/10 60/12 62/21 64/5 64/8 65/5
66/2 66/5 66/8 66/12 66/12 66/15 66/16 66/22
68/3 69/25 73/10 75/5 75/8 75/21 78/2 80/2
80/5 81/25 83/24 85/11 94/8 98/24 99/6 99/6
99/13 100/11 102/12 102/22 105/5 105/7
107/22 107/22 117/21 118/3 118/5
**wouldn't** [1] 12/12
**write** [1] 54/6
**writing** [1] 77/19
**WYMAN** [13] 2/5 4/6 19/13 26/25 81/12 94/21
97/16 114/5 114/24 115/11 115/14 115/20
116/2

___

**Y**

**yeah** [6] 51/15 92/16 101/23 104/24 114/20
115/8
**year** [5] 21/23 52/17 52/19 68/3 72/2
**years** [13] 4/25 20/23 24/4 27/7 34/1 59/4
59/7 74/22 74/25 75/3 107/1 107/13 107/20
**Yeghishian** [1] 58/14

**yes** [216]
**yesterday** [6] 10/24 19/5 19/21 20/16 64/6
118/6
**yet** [6] 13/1 53/9 54/7 54/13 97/6 102/20
**you** [815]
**you that** [1] 86/19
**you'd** [2] 9/6 105/1
**you're** [6] 40/11 48/23 91/11 96/7 107/23
108/6
**your** [293]
**yours** [1] 105/25
**yourself** [2] 49/17 55/2

___

**Z**

**zero** [1] 82/12