UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

| UNITED STATES OF AMERICA, | ) CERTIFIED TRANSCRIPT |
|---|---|
| Plaintiff, | ) |
| vs. | ) |
| | ) SACR-19-00061-JVS |
| MICHAEL JOHN AVENATTI, | ) |
| Defendant. | ) TRIAL DAY 8, Vol. 1 |
| ------------------------------ | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

July 23, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

```
 1  │  APPEARANCES OF COUNSEL:
    │
 2  │  For the Plaintiff:
    │
 3  │  NICOLA T. HANNA
    │  United States Attorney
 4  │  BRANDON D. FOX
    │  Assistant United States Attorney
 5  │  Chief, Criminal Division
    │  ALEXANDER WYMAN
 6  │  Assistant United States Attorney
    │  Major Frauds Section
 7  │  1100 United States Courthouse
    │  312 North Spring Street
 8  │  Los Angeles, CA  90012
    │  (213) 894-6683
 9  │
    │  BRETT A. SAGEL
10  │  Assistant United States Attorney
    │  Ronald Reagan Federal Building
11  │  411 West Fourth Street, Suite 8000
    │  Santa Ana, CA  92701
12  │  (714) 338-3598
    │
13  │  For the Defendant:
    │
14  │  MICHAEL JOHN AVENATTI, PRO SE
    │
15  │  H. DEAN STEWARD, ADVISORY COUNSEL
    │  H. DEAN STEWARD LAW OFFICES
16  │  107 Avenida Miramar, Suite C
    │  San Clemente, CA  92672
17  │  (949) 481-4900
    │
18  │
    │
19  │
    │
20  │
    │
21  │
    │
22  │
    │
23  │
    │
24  │
    │
25  │
```

3

```
                          I-N-D-E-X


PLAINTIFF'S
WITNESSES:              DIRECT   CROSS   REDIRECT   RECROSS

JOSEPH VARANI            10      20
CARLOS COLORADO          32      48       73         74
ELSA GUERRERO            76      89

PLAINTIFF'S
EXHIBITS:                                MARKED     RECEIVED

Exhibit 11 (Limited purpose)                          15
Exhibits 115 and 116 (Limited purpose)                16
Exhibit 7                                             38
Exhibit 21                                            42
Exhibit 70                                            82


DEFENSE
WITNESSES:            DIRECT    CROSS    REDIRECT    RECROSS

 (None)

DEFENSE
EXHIBITS:                                MARKED     RECEIVED

Exhibit 1005                              98
Exhibit 1006                             107
```

| | |
|---|---|
| 1 | SANTA ANA, CALIFORNIA; FRIDAY, JULY 23, 2021; 8:29 A.M. |
| 2 | **(Jury not present)** |
| 08:29  3 | **THE CLERK:  Item 1, SACR-19-00061-JVS, United** |
| 08:29  4 | **States of America versus Michael John Avenatti.** |
| 08:29  5 | **MR. SAGEL:  Good morning, Your Honor.  Brett Sagel** |
| 08:29  6 | **and Alexander Wyman on behalf of the United States.** |
| 08:29  7 | **THE COURT:  Good morning.** |
| 08:30  8 | **MR. AVENATTI:  Good morning, Your Honor.** |
| 08:30  9 | **Defendant Michael Avenatti present with my advisory counsel,** |
| 08:30 10 | **Mr. Steward, as well as Ms. Cefali.** |
| 08:30 11 | **THE COURT:  Good morning.** |
| 08:30 12 | **Do you have any matters to take up at this time?** |
| 08:30 13 | **MR. SAGEL:  Very briefly, Your Honor.** |
| 08:30 14 | **One, yesterday during the cross-examination of** |
| 08:30 15 | **Mr. Johnson, Mr. Avenatti brought up at least three -- which** |
| 08:30 16 | **were sustained objections -- about underlying facts and** |
| 08:30 17 | **issues that Your Honor has specifically precluded from this** |
| 08:30 18 | **trial.  The fact that he was trying to bring them up will** |
| 08:30 19 | **now put information in the jury's head as if we we're trying** |
| 08:30 20 | **to hide something.** |
| 08:30 21 | **I think it would be appropriate for the Court to** |
| 08:30 22 | **instruct the jury that the Court has precluded any** |
| 08:30 23 | **discussions of the underlying cases, so they shouldn't be** |
| 08:30 24 | **worrying about what the underlying claims and facts were but** |
| 08:30 25 | **just from settlement forward.** |

08:30  1            Again, I don't know what he is going to do with
08:31  2      the other witnesses.  We didn't ask for this before
08:31  3      yesterday, but in light of what he did yesterday, I think
08:31  4      it's now more appropriate to let the jury know that what
08:31  5      happened in the underlying civil cases are not for their
08:31  6      concern.
08:31  7            THE COURT:  Mr. Avenatti.
08:31  8            MR. AVENATTI:  Your Honor, I don't know the
08:31  9      specific questions that he is referring to.
08:31  10            THE COURT:  Well, you asked them, sir.
08:31  11            MR. AVENATTI:  Well, I asked a lot of questions,
08:31  12      Your Honor.  But let me say this.  I did not elicit the fact
08:31  13      that Mr. Johnson was in jail, for instance, at the time that
08:31  14      he met me.  That was elicited by Mr. Wyman on direct.
08:31  15            As I recall, I did not get into any details about
08:31  16      who the defendants were in the case, although it's pretty
08:31  17      apparent from the documents that it was the County of
08:31  18      Los Angeles and the Sheriff's Department.  I have not had a
08:31  19      chance to look at the transcript, but before any instruction
08:32  20      is given, I think I would like to have an opportunity to
08:32  21      look at that.
08:32  22            But I will say this.  I will be especially careful
08:32  23      and mindful of Your Honor's orders relating to not getting
08:32  24      into the underlying facts.  I am respectful of Your Honor's
08:32  25      order.  I understand it.  I have read it.  I will reread it.

08:32   1   But I don't think instructing the jury at this point is

08:32   2   necessary, Your Honor.

08:32   3            MR. SAGEL:  Somehow he must have forgotten that

08:32   4   Mr. Johnson lying naked in the street praying was somehow

08:32   5   relevant to this case.

08:32   6            MR. AVENATTI:  Your Honor, the relevance of that

08:32   7   is it goes to his psychological and mental condition, which

08:32   8   is highly relevant to his competency to testify both now as

08:32   9   well as to what happened around that time period.

08:32   10           THE COURT:  For the present, I'm not going to give

08:32   11  a further instruction.  As part of the general instructions,

08:32   12  the Court tells the jurors not to guess what the answer

08:33   13  might have been if I sustain an objection to a question.

08:33   14           I admonish you and remind you, Mr. Avenatti, that

08:33   15  you are not to get into the facts of the cases of the client

08:33   16  witnesses.

08:33   17           MR. AVENATTI:  Understood, Your Honor.

08:33   18           THE COURT:  Okay.

08:33   19           MR. SAGEL:  There was one other instruction I

08:33   20  think at one point Your Honor said you were going to give.

08:33   21  I don't think you have given it.  It was to alert the jury

08:33   22  that there is a reason we don't acknowledge them when we

08:33   23  walk past them in the hall.

08:33   24           THE COURT:  I will do that.

08:33   25           MR. SAGEL:  Then finally, Your Honor, I bring it

08:33   1   up now because it could come up this afternoon, and it may

08:33   2   also take place next Tuesday.  We will be reading and we

08:33   3   plan on introducing as Your Honor knows some of

08:33   4   Mr. Avenatti's statements from prior -- in this instance, I

08:33   5   will be talking about the judgment debtor exam.  Exhibit 405

08:34   6   versus 407, for example, they are basically identical.  The

08:34   7   difference is the exhibit to which he is testifying about,

08:34   8   which they have shown him and are asking him about, is

08:34   9   attached on one of them.

08:34   10          What our request would be in Your Honor's

08:34   11  discretion is not only to allow us to read in the

08:34   12  transcript, but with this one transcript, we also admit the

08:34   13  transcript and the exhibit.  They are both from the

08:34   14  certified public record.  And the reason is Exhibit 60,

08:34   15  which is attached is -- Exhibit 60 from that proceeding,

08:34   16  which is Exhibit 37 in our proceeding -- the numbering would

08:34   17  be different, and we don't want confusion.  Whereas, if that

08:34   18  exhibit is attached to the transcript, they will know (a)

08:34   19  that is what he is being asked about in his referencing, and

08:34   20  they will know the document that he is looking at.

08:34   21          So the two options that Your Honor has -- there

08:34   22  are multiple options.  But the two options that we are

08:34   23  proposing is we would prefer reading Exhibit 407 and then

08:35   24  have that document, the transcript and the exhibit attached,

08:35   25  introduced.

08:35    1            THE COURT:  Well, these transcripts are not going

08:35    2   to the jury as exhibits.  They're going to be read.  It's

08:35    3   just like any deposition.  You don't send the deposition

08:35    4   transcript back.  Now, if you want to indicate to the jury

08:35    5   what trial exhibit you're talking about -- I don't think

08:35    6   there is any dispute -- you can do that.  And if you want to

08:35    7   show the trial exhibit at that time because it's in

08:35    8   evidence, that's fine, too.

08:35    9            MR. SAGEL:  We can do that as well.  I guess the

08:35   10   question is barring a stipulation -- and obviously Your

08:35   11   Honor can order this.  What is being referenced in the

08:35   12   transcript is Exhibit 60, which in our case is Exhibit 37.

08:35   13            THE COURT:  Well, you're free to tell the jury

08:36   14   that what is referenced as Exhibit 60 is Trial Exhibit 37.

08:36   15            MR. SAGEL:  With that, then we are okay with that,

08:36   16   Your Honor.

08:36   17            MR. AVENATTI:  Your Honor, the only comment I will

08:36   18   make is that I was not aware of this.  I'll look at it.  I

08:36   19   understand this may not come up until this afternoon.  If I

08:36   20   have any issues, I will raise it with the Court.  Hopefully

08:36   21   I won't.

08:36   22            THE COURT:  Okay.  Anything that you want to

08:36   23   raise, Mr. Avenatti?

08:36   24            MR. AVENATTI:  No.  Thank you.

08:36   25            THE COURT:  Okay.  Then we will be recess at this

08:36 1 **time.**

08:36 2    **(Recess taken at 8:36 a.m.)**

08:36 3   (Jury present)

09:03 4   THE CLERK:  Item 1, SACR-19-00061-JVS, United

09:03 5 States of America versus Michael John Avenatti.

09:03 6   MR. SAGEL:  Good morning, Your Honor.  Brett Sagel

09:03 7 and Alexander Wyman on behalf of the United States.  And at

09:03 8 counsel table with us is Special Agent Ramon Carlos.

09:03 9   THE COURT:  Good morning.

09:03 10   MR. AVENATTI:  Good morning, Your Honor.  Michael

09:03 11 Avenatti along with Mr. Steward and Ms. Cefali.  And we also

09:03 12 have Joe to assist us on the technical.

09:03 13   THE COURT:  Good morning.

09:03 14   And good morning, ladies and gentlemen.  Let me

09:03 15 remind you of one additional thing.  Please steer clear of

09:03 16 anyone you perceive to be an attorney or a witness in this

09:03 17 case.  And I'm going to ask counsel to do the same thing.

09:03 18   I do that to preserve your independence as the

09:03 19 fact-finders in this case.  If you find yourself out in the

09:03 20 hall and counsel is just standing there or maybe you've come

09:03 21 up in the elevator and counsel is in the elevator and they

09:03 22 don't talk to you, they're not being rude or disrespectful.

09:04 23 They're simply following my directive to preserve your

09:04 24 independence.

09:04 25   All right.  Would the government call its next

09:04  1   witness, please.

09:04  2           MR. WYMAN:  Yes.  The United States calls Joe

09:04  3   Varani.

09:04  4           JOSEPH VARANI, GOVERNMENT'S WITNESS, SWORN

09:04  5           THE CLERK:  Please speak right into the microphone

09:04  6   and state and spell your first and last name.

09:04  7           THE WITNESS:  Joseph Varani, J-o-s-e-p-h,

09:04  8   V-a-r-a-n-i.

09:05  9           THE COURT:  Mr. Wyman.

09:05  10          MR. WYMAN:  Thank you, Your Honor.

09:05  11                    DIRECT EXAMINATION

09:05  12  BY MR. WYMAN:

09:05  13  Q    Good morning, Mr. Varani.

09:05  14  A    Good morning.

09:05  15  Q    Where do you work?

09:05  16  A    I work in Washington, D.C., for the Cyber Crime Lab,

09:05  17  which is part of the computer crime and intellectual

09:05  18  property section of the Department of Justice.

09:05  19  Q    And what is your title at the DOJ Cyber Crime Lab?

09:05  20  A    I am a senior digital investigative analyst.

09:05  21  Q    And how long have you been a senior digital

09:05  22  investigative analyst?

09:05  23  A    For 11 years now.

09:05  24  Q    And what are your primary duties and responsibilities

09:05  25  in that role?

09:05  1   A    I perform digital forensic examinations as well as
09:05  2   forensic consultations for prosecutors for criminal
09:05  3   investigations.
09:05  4   Q    Did you receive any training prior to assuming those
09:05  5   responsibilities?
09:05  6   A    Yes.  I received over 500 hours of training from
09:06  7   computer forensic tool manufacturers or other independent
09:06  8   organizations that focus on digital forensics training or
09:06  9   cyber security training.
09:06  10  Q    And did much of that training cover forensic
09:06  11  examinations?
09:06  12  A    Yes, it did.
09:06  13  Q    Are you familiar with the government's investigation
09:06  14  into the defendant Michael Avenatti?
09:06  15  A    Yes.
09:06  16  Q    How are you familiar with that investigation?
09:06  17  A    Only in that it exists and in the small part that I
09:06  18  have been asked to participate in.
09:06  19  Q    Did you extract data from various forensic images of
09:06  20  digital devices that have been provided to you as part of
09:06  21  this investigation?
09:06  22  A    Yes, I did.
09:06  23  Q    Who provided those forensic images to you?
09:06  24  A    They were provided by IRS Special Agent Nshan
09:06  25  Tashchyan.

09:07   1   Q    Were the forensic images that were provided to you
09:07   2   labeled so that you could identify which digital devices you
09:07   3   had been provided with?
09:07   4   A    Yes, they were.
09:07   5   Q    Based on the information provided to you by Special
09:07   6   Agent Tashchyan, what kind of devices were these images of?
09:07   7   A    These were images of computer servers and a laptop.
09:07   8   Q    And based on that information, what is your
09:07   9   understanding of where those devices came from?
09:07   10  A    My understanding is that the computer servers came from
09:07   11  a digital data center, and the laptop was seized from
09:07   12  Mr. Avenatti in New York.
09:07   13  Q    Did you understand from that information that the
09:07   14  servers were affiliated with the law firm Eagan Avenatti?
09:07   15  A    Yes.
09:07   16  Q    Once you received the forensic images from the IRS CI,
09:07   17  can you please describe the process that you undertook to
09:08   18  extract data from those images.
09:08   19  A    I first used our forensic tools to import all of the
09:08   20  data and process that data.  And what it does is it locates
09:08   21  all of the files that are inside the alchemies of the images
09:08   22  that we received.  It also indexes the contents of those
09:08   23  files as well so that I am able to perform keyword searches
09:08   24  on the contents of the files.
09:08   25  Q    And did you conduct those keyword searches?

09:08  1   A    Yes.  I received a list of keywords from the

09:08  2   investigation team.  I conducted those searches, and then I

09:08  3   exported the matching files to a hard drive and provided

09:08  4   those to others on the team for review.

09:08  5   Q    The tools you mentioned that you used to extract this

09:09  6   data, were you trained on those extraction tools?

09:09  7   A    Yes.

09:09  8   Q    And had you used those tools before?

09:09  9   A    Yes.  The tool that I used for this I use in most of

09:09  10  the cases over the 11 years that I have done this.

09:09  11  Q    And based on those 11 years of experience and all the

09:09  12  training you have received, is that a commonly accepted and

09:09  13  reliable tool for extracting data?

09:09  14  A    Yes.  The tool is FTK, the forensic tool kit, which is

09:09  15  widely used for digital forensics.

09:09  16  Q    Using that tool, are you able to review the contents of

09:09  17  the digital device images that you receive?

09:09  18  A    Yes.

09:09  19  Q    Could you please take a look at what is Exhibit 11.  It

09:09  20  should be in Volume 1 of the binder right behind you.

09:09  21  A    (Witness complies.)  Yes.

09:09  22  Q    Do you recognize this document?

09:10  23  A    I do, yes.

09:10  24  Q    How do you recognize it?

09:10  25  A    This was a document that I saw on one of the devices

09:10  1   that I reviewed.

09:10  2   Q    Which one of the devices was this document found on?

09:10  3   A    (No response)

09:10  4   Q    Well, let me ask a more specific question.  Was this on

09:10  5   one of the law firm's servers?

09:10  6            MR. AVENATTI:  Objection, Your Honor.  Leading.

09:10  7            THE COURT:  Overruled.

09:10  8            THE WITNESS:  I don't recall specifically which

09:10  9   device.

09:10  10  BY MR. WYMAN:

09:10  11  Q    But you recall it was on one of the digital devices

09:10  12  provided to you by the IRS that was part of this

09:10  13  investigation?

09:10  14  A    Yes.

09:10  15  Q    And is the document in front of you a fair and accurate

09:11  16  copy of that document that you found?

09:11  17  A    Yes, this does look like an accurate copy.

09:11  18            MR. WYMAN:  Your Honor, the government moves to

09:11  19  admit Exhibit 11.

09:11  20            MR. AVENATTI:  Objection, Your Honor.  Hearsay and

09:11  21  lack of authentication, foundation.

09:11  22            THE COURT:  Are you offering it for the truth of

09:11  23  the document?

09:11  24            MR. WYMAN:  I'm not offering it for the truth,

09:11  25  Your Honor.

09:11  1    THE COURT:  It will be received for the limited

09:11  2    purpose that it was found on the server or the computer.

09:11  3    It's not for the truth of the content, just that it was

09:11  4    there.

09:11  5    MR. WYMAN:  Thank you, Your Honor.

09:11  6    (Exhibit 11 received in evidence

09:11  7    for limited purpose)

09:11  8    MR. WYMAN:  If we could please publish the first

09:11  9    page.  Now, if we could focus on the second paragraph at the

09:11  10   beginning.

09:11  11   THE COURT:  I don't think it's appropriate to have

09:11  12   a substantive discussion on this document until it's been

09:11  13   authenticated and received in full.  If you have got general

09:11  14   questions about the document, fine.

09:11  15   MR. WYMAN:  Very well.  We will come back to it

09:12  16   with another witness, Your Honor.

09:12  17   BY MR. WYMAN:

09:12  18   Q    Would you please turn now to Exhibits 115 and 116 which

09:12  19   should be in the other binder, Volume 2.

09:12  20   A    (Witness complies.)  Okay.

09:12  21   Q    Do you recognize these two documents?

09:12  22   A    Yes, I do.

09:12  23   Q    How do you recognize them?

09:13  24   A    These were documents that I saw on the MacBook Pro

09:13  25   laptop.

09:13   1   Q    And based on the information provided to you by the

09:13   2   IRS, where was that MacBook found?

09:13   3   A    That was found in New York, I believe.

09:13   4   Q    Let me ask this.  I think you said earlier that one of

09:13   5   the computers was found in the defendant's apartment.  Is

09:13   6   that the computer you're referring to?

09:13   7   A    As far as I know, the search warrants that I reviewed

09:13   8   said that it was seized from Mr. Avenatti.  That's all that

09:13   9   I know at this point.

09:13   10  Q    Okay.  But you remember that this document was found on

09:13   11  a digital device seized from the defendant?

09:13   12  A    Yes.

09:13   13  Q    And are these fair and accurate copies of documents

09:13   14  found on the digital device from the defendant?

09:13   15  A    Yes.

09:13   16       MR. WYMAN:  Your Honor, the government moves to

09:13   17  admit Exhibits 115 and 116.

09:13   18       MR. AVENATTI:  Objection, Your Honor.  Hearsay,

09:13   19  authentication, and foundation.

09:14   20       MR. WYMAN:  They're not offered for the truth,

09:14   21  Your Honor.

09:14   22       THE COURT:  Again, these two documents will be

09:14   23  received for the fact that they were found on the particular

09:14   24  computer, not for the truth of the documents.

09:14   25       (Exhibits 115 and 116 received in evidence

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:14   1                   for limited purpose)
09:14   2                   MR. WYMAN:  Your Honor, may I publish these
09:14   3   documents?
09:14   4                   MR. AVENATTI:  Your Honor, I have the same
09:14   5   objection in light of the Court's prior comment.
09:14   6                   THE COURT:  You may not at this time.
09:14   7                   MR. WYMAN:  May I ask about the title of these
09:14   8   documents so they're identifiable?
09:14   9                   THE COURT:  You may.
09:14   10  BY MR. WYMAN:
09:14   11  Q    Starting with Exhibit 115, what is the title of this
09:14   12  document?
09:14   13  A    General release settlement agreement and acknowledgment
09:14   14  of accounting.
09:14   15  Q    What type of file was this on the computer?
09:14   16  A    This was a Microsoft Word document.
09:15   17  Q    Mr. Varani, from your training and experience in
09:15   18  forensic examination of digital evidence, do you know what
09:15   19  metadata is?
09:15   20  A    Yes.
09:15   21  Q    What is metadata?
09:15   22  A    Metadata is data that describes other data.
09:15   23  Q    And more specifically with Word documents, for example,
09:15   24  what kind of information did it provide about a particular
09:15   25  document?

09:15  1   A    Sure.  A metadata for a Word document would be when it
09:15  2   was created or the author or how many words might be in that
09:15  3   document or the file size of the file name.
09:15  4   Q    Were you able to review the metadata associated with
09:15  5   Exhibit 115?
09:15  6   A    Yes, I was.
09:15  7   Q    Did the metadata provided indicate when this document
09:15  8   was created?
09:15  9   A    Yes.
09:15  10  Q    When was it created?
09:15  11  A    The document was created on March 29th of 2019, a
09:15  12  little after 9:00 a.m.
09:15  13  Q    You said March 29.  Is that --
09:16  14       MR. AVENATTI:  Objection, Your Honor.  He answered
09:16  15  the question.
09:16  16       THE COURT:  I'm sorry?
09:16  17       MR. AVENATTI:  He was asked about the date, and he
09:16  18  provided an answer to the date.  Counsel is now trying to
09:16  19  coach the witness.
09:16  20       THE COURT:  Overruled.
09:16  21       THE WITNESS:  It may have been March 23rd or
09:16  22  March 29th.
09:16  23  BY MR. WYMAN:
09:16  24  Q    You don't recall sitting here today?
09:16  25  A    Not specifically.

09:16   1   Q    Would it refresh your recollection to look at a report

09:16   2   in the interview you provided to the government?

09:16   3   A    Yes.

09:16   4            MR. WYMAN:  Your Honor, may I approach?

09:16   5            THE COURT:  You may.  Does Mr. Avenatti have a

09:16   6   copy?

09:16   7   BY MR. WYMAN:

09:16   8   Q    Mr. Varani, once you're finished reviewing it, if you

09:17   9   would please turn the document over.

09:17  10   A    (Witness reviewing document)

09:17  11   Q    Did that refresh your recollection?

09:17  12   A    It did, yes.

09:17  13   Q    When was Exhibit 115 created?

09:17  14            MR. AVENATTI:  Objection.  Asked and answered.

09:17  15            THE COURT:  Overruled.

09:17  16            THE WITNESS:  It was created on March 23rd, 2019,

09:17  17   at 9:05 a.m.

09:17  18   BY MR. WYMAN:

09:17  19   Q    Who is listed as the author of this document?

09:17  20   A    The original author was a user named C. Darnell.

09:18  21   Q    Did the metadata also indicate when it was last

09:18  22   modified or saved?

09:18  23   A    Yes.  It indicated that it was last saved on the same

09:18  24   day, March 23rd, 2019, at 12:07 p.m.

09:18  25   Q    Did it say who was the last person to edit that

09:18  1    document?

09:18  2    A    It reported the last user name was Michael Avenatti.

09:18  3    Q    Would you please look at Exhibit 116 now.

09:18  4    A    (Witness complies.)

09:18  5    Q    What is the title of this document?

09:18  6    A    Client testimonial approval.

09:18  7    Q    Was this also a Word document?

09:18  8    A    Yes, it was.

09:18  9    Q    Did you review the metadata for Exhibit 116?

09:18  10   A    Yes.

09:18  11   Q    Based on your review of that metadata, when was this

09:18  12   document created?

09:18  13   A    This document was created on March 23rd, 2019, at

09:19  14   11:16 a.m.

09:19  15   Q    And who is listed as the author?

09:19  16   A    User name was Michael Avenatti.

09:19  17   Q    And when was it last modified?

09:19  18   A    It was last modified on March 23rd, 2019, at 12:07 p.m.

09:19  19   Q    And who did it say was the last person to edit it?

09:19  20   A    The user name was Michael Avenatti.

09:19  21              MR. WYMAN:  One moment, Your Honor.

09:19  22              Nothing further, Mr. Varani.  Thank you.

09:19  23              THE COURT:  Mr. Avenatti.

09:19  24              MR. AVENATTI:  Thank you, Your Honor.

09:19  25                        CROSS-EXAMINATION

| | | |
|---|---|---|
| 09:19 | 1 | BY MR. AVENATTI: |
| 09:19 | 2 | Q    Mr. Varani, good morning. |
| 09:19 | 3 | A    Good morning. |
| 09:19 | 4 | Q    Welcome to California. |
| 09:19 | 5 | A    Thank you. |
| 09:20 | 6 | Q    You work out of Washington, D.C.; is that right? |
| 09:20 | 7 | A    Yes. |
| 09:20 | 8 | Q    And you work for the Department of Justice; is that |
| 09:20 | 9 | right? |
| 09:20 | 10 | A    Yes. |
| 09:20 | 11 | Q    And you traveled all the way from Washington, D.C., to |
| 09:20 | 12 | California at the request of the prosecutors to testify in |
| 09:20 | 13 | this case; is that right? |
| 09:20 | 14 | A    Yes, I did. |
| 09:20 | 15 | Q    And you have been -- unfortunately you've had to be |
| 09:20 | 16 | cooling your heels out in the hallway waiting for your |
| 09:20 | 17 | testimony, right? |
| 09:20 | 18 | A    Yes. |
| 09:20 | 19 |         MR. WYMAN:  Objection.  Relevance. |
| 09:20 | 20 |         THE COURT:  Sustained. |
| 09:20 | 21 | BY MR. AVENATTI: |
| 09:20 | 22 | Q    Sir, how many days have you been here waiting to |
| 09:20 | 23 | testify? |
| 09:20 | 24 |         MR. WYMAN:  Objection. |
| 09:20 | 25 |         THE COURT:  Let's get down to the essence of your |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:20  1    testimony, sir.

09:20  2    BY MR. AVENATTI:

09:20  3    Q    Sir, how many times have you spoken to the government

09:20  4    in the last 48 hours about your testimony here today?

09:20  5    A    Not many.  Maybe once or twice.

09:20  6    Q    And how long have you been working on the investigation

09:20  7    into me?

09:20  8    A    I initially received a request in 2019 sometime.  My

09:21  9    participation has not been constant throughout, though.

09:21  10   Q    So you have been working on the investigation and

09:21  11   criminal prosecution off and on since 2019 up through today;

09:21  12   is that fair?

09:21  13   A    Yes.

09:21  14   Q    And during that two-year time period, did you have

09:21  15   written communications with other individuals and the

09:21  16   government about your work in this case?

09:21  17   A    Yes.

09:21  18   Q    And in what form did those communications take place?

09:21  19   A    There were -- you said written communications?

09:21  20   Q    Yes, sir.

09:21  21   A    Those were e-mails.

09:21  22   Q    Any text messages?

09:21  23   A    No.

09:21  24   Q    So those were e-mails that you would draft and then

09:21  25   send to other government agents and prosecutors, right, in

09:22  1    some instances?

09:22  2    A    Yes -- or receive, yes.

09:22  3    Q    It was both sending and receiving, right?

09:22  4    A    Yes.

09:22  5    Q    And when you sent the e-mails, you would be the one

09:22  6    that would type out the e-mail and send it, right?

09:22  7    A    Yes.  If I sent an e-mail, yes.

09:22  8    Q    And because you wanted to make sure that you were doing

09:22  9    a good job over the last two years, you had fairly

09:22  10   consistent communications in that regard; did you not?

09:22  11   A    Consistent in what way?

09:22  12   Q    Well, you did your job?

09:22  13   A    Yes, I did.

09:22  14   Q    Has anyone ever asked you to gather those

09:22  15   communications for any reason?

09:22  16   A    No.

09:22  17   Q    You weren't asked to do that before you testified here

09:22  18   today, correct?

09:22  19   A    No.

09:23  20         THE COURT:  Wait a minute.

09:23  21         MR. AVENATTI:  Yes.  Let me clarify.

09:23  22   BY MR. AVENATTI:

09:23  23   Q    Before you took the stand here today, no one asked you

09:23  24   to gather your written communications that you drafted in

09:23  25   connection with this case, correct?

09:23   1   A     Correct.

09:23   2   Q     And you are a senior digital investigative analyst; is

09:23   3   that right?

09:23   4   A     Yes.

09:23   5   Q     How long have you held that position?

09:23   6   A     I began in 2010, so 11 years.

09:23   7   Q     You have had the same title for that entire time

09:23   8   period?

09:23   9   A     I believe I was promoted to senior digital

09:23  10   investigative analyst in 2013 or 2014.

09:23  11   Q     And how did you get this assignment?

09:23  12   A     This assignment came in via an e-mail request from one

09:24  13   of the attorneys on the case.

09:24  14   Q     One of the Assistant U.S. Attorneys?

09:24  15   A     Yes.

09:24  16   Q     And did you respond to that e-mail request when you got

09:24  17   it?

09:24  18   A     Yes.

09:24  19   Q     And that was back in 2019?

09:24  20   A     I believe so, yes.

09:24  21   Q     Who has been your primary source of contact in

09:24  22   connection with your work on this case?

09:24  23   A     That contact has changed over time.  I had primarily

09:24  24   dealt with attorneys who were responsible for the privilege

09:24  25   review, and that person has changed over time.

09:24  1    Q    And you have also communicated with Mr. Wyman and

09:24  2    Mr. Sagel; am I right?

09:24  3    A    Yes.

09:24  4    Q    Including in writing, right?

09:24  5    A    Yes.

09:25  6              MR. WYMAN:  Objection.  Relevance, Your Honor.

09:25  7              THE COURT:  Overruled.

09:25  8    BY MR. AVENATTI:

09:25  9    Q    Now, if I understand your testimony correctly -- and

09:25  10   please tell me if I am wrong -- you did not actually extract

09:25  11   the data from any device.  Am I right about that?

09:25  12   A    No.  I did extract the data from the -- well, from

09:25  13   original devices or from copies of data from the devices?

09:25  14   Q    You never extracted any data from any original device?

09:25  15   A    Correct.

09:25  16   Q    And what I mean by that is you never had an actual

09:25  17   cellphone or laptop or computer server physically in your

09:25  18   possession that you then got the data from?

09:25  19   A    Correct.

09:25  20   Q    You only received images from the gentleman that you

09:25  21   mentioned, Mr. Tashchyan; is that correct?

09:25  22   A    That's correct.

09:26  23   Q    So you personally do not know whether the data came

09:26  24   from the device, right?

09:26  25   A    I only know based on information that was provided to

09:26  1  me in reports and other documents.

09:26  2  Q    By Mr. Tashchyan?

09:26  3  A    Yes.

09:26  4  Q    Because you were not physically there when any data was

09:26  5  taken from any device?

09:26  6  A    Correct.

09:26  7  Q    You are relying on what others have told you?

09:26  8       MR. WYMAN:  Objection.  Asked and answered.

09:26  9       THE COURT:  Sustained.

09:26  10  BY MR. AVENATTI:

09:26  11  Q    And how many forensic images were given to you by

09:26  12  Mr. Tashchyan or anyone else in connection with the

09:26  13  investigation and prosecution of this case?

09:26  14  A    There were dozens all together.

09:27  15  Q    And can you describe for the jury -- strike that.  I

09:27  16  think you mentioned on direct that you were given keyword

09:27  17  search terms to look for in the data from the images you

09:27  18  were given; is that right?

09:27  19  A    Yes.

09:27  20  Q    And who gave you those keyword search terms?

09:27  21  A    The Assistant U.S. Attorney that was working on the

09:27  22  case at the time.

09:27  23  Q    Was that Mr. Andre?

09:27  24  A    Yes.

09:27  25  Q    And did you have correspondence back and forth with him

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:27  1   about that process?

09:27  2   A    Yes.

09:27  3   Q    By e-mail?

09:27  4   A    Yes, by e-mail.

09:27  5   Q    And then you would conduct the keyword searches and get

09:28  6   the results, and then you would send that information to

09:28  7   others, correct.

09:28  8   A    Correct.

09:28  9   Q    And would that be by e-mail?

09:28  10  A    No.  Due to the volume of data, the data that was

09:28  11  provided was exported to hard drives and provided directly

09:28  12  by hand.

09:28  13  Q    Did you make sure those searches were conducted

09:28  14  properly before you forwarded that data?

09:28  15  A    Yes, in terms of spot-checking the results to make sure

09:28  16  they contained the keywords.

09:28  17  Q    You were confident that the data -- well, strike that.

09:28  18  You affirmed in your mind that the work you had done was

09:28  19  competent before you sent that information; is that fair?

09:28  20            MR. WYMAN:  Objection.  Asked and answered.

09:28  21            THE COURT:  Overruled.

09:28  22            THE WITNESS:  Yes.

09:28  23  BY MR. AVENATTI:

09:29  24  Q    Now, Mr. Wyman asked you about metadata.  Do you

09:29  25  remember that?

09:29   1    A      I do.

09:29   2    Q      And is there a document that you printed out that

09:29   3    showed the metadata on these documents?

09:29   4    A      No.

09:29   5    Q      How did you access the metadata on the documents?  How

09:29   6    did you discover it?

09:29   7    A      I used my forensic tool called FTK to view the

09:29   8    document.  When I do that, I can also view the metadata

09:29   9    associated with that document.

09:29   10   Q      And when you say you can view the metadata, that's on

09:29   11   your computer screen, right?

09:29   12   A      Yes.

09:29   13   Q      Did you take a screenshot of it?

09:29   14   A      For my own recordkeeping, yes.

09:29   15   Q      You took a screenshot of the metadata?

09:29   16   A      Yes.

09:29   17   Q      Did you print it out?

09:29   18   A      No.

09:29   19   Q      Where did you store the screenshot?

09:29   20   A      On my computer, on my analysis computer.

09:30   21   Q      Did you bring that metadata screenshot with you?

09:30   22   A      Today, no.

09:30   23   Q      You took a screenshot of each piece of metadata that

09:30   24   you viewed relating to these documents that Mr. Wyman asked

09:30   25   you about, right?

| | | |
|---|---|---|
| 09:30 | 1 | A    Yes. |
| 09:30 | 2 | Q    You brought none of them with you here today? |
| 09:30 | 3 | A    I did not. |
| 09:30 | 4 | Q    Because nobody asked you to? |
| 09:30 | 5 | A    Yes. |
| 09:30 | 6 | Q    Now, metadata as it relates to dates and times is |
| 09:30 | 7 | contingent on what? |
| 09:30 | 8 | A    On the time of the device, time that the device is |
| 09:31 | 9 | set to. |
| 09:31 | 10 | Q    So there is no independent time and date that |
| 09:31 | 11 | establishes metadata separate and apart from the date and |
| 09:31 | 12 | time that a particular device is set to.  Am I right about |
| 09:31 | 13 | that? |
| 09:31 | 14 | A    Could you repeat that question. |
| 09:31 | 15 | Q    Sure.  The metadata of a particular document, the date |
| 09:31 | 16 | and the time, there is no independent date and time out |
| 09:31 | 17 | there in the ether that determines what appears on a |
| 09:31 | 18 | document.  It's wholly dependent on what the date and time |
| 09:31 | 19 | is on the device, fair? |
| 09:31 | 20 | A    Yes. |
| 09:31 | 21 | Q    So if I set my laptop to a date of January 1st, 1900, |
| 09:31 | 22 | and a document is created in Microsoft Word, and then |
| 09:32 | 23 | Mr. Tashchyan images that device and he sends the image to |
| 09:32 | 24 | you and you observe the metadata for that document, you will |
| 09:32 | 25 | determine that it was created on January 1st, 1900, |

09:32    1    according to the metadata; is that fair?

09:32    2              MR. WYMAN:  Objection.  Calls for speculation.

09:32    3              THE COURT:  Overruled.

09:32    4              THE WITNESS:  That's what I would -- that's what I

09:32    5    would see.  I would know that that date wouldn't be

09:32    6    accurate.

09:32    7    BY MR. AVENATTI:

09:32    8    Q    Because Microsoft Word didn't exist in 1900?

09:32    9    A    Right.

09:32   10    Q    Okay.  But as you sit here today, you have no way of

09:32   11    knowing whether the date and time on the metadata that you

09:32   12    extracted from the documents was actually the date and time

09:32   13    that the documents were created; do you?

09:32   14    A    With a thorough forensic analysis of an entire

09:33   15    computer, that may be able to be more fully determined.

09:33   16    Q    But you didn't do that; did you?

09:33   17    A    No.

09:33   18    Q    You just looked at the metadata and assumed that that

09:33   19    was the correct date and time, right?

09:33   20    A    Yes.

09:33   21    Q    And then as it relates to who creates a document and

09:33   22    edits the document, you looked at the user name, right?

09:33   23    A    Yes.  There's a field for author and last user.

09:33   24    Q    But there is no way for you to know whether that actual

09:33   25    person created that document or edited the document, right?

09:34  1    A    Right.

09:34  2    Q    So, for instance, if I registered a user name of Donald

09:34  3    Duck on a device, when you pulled up the metadata, you would

09:34  4    see that Donald Duck created the document, right?

09:34  5    A    Yes.

09:34  6    Q    You would have no way of knowing whether the fictional

09:34  7    character Donald Duck or somebody else created or edited the

09:34  8    document, fair?

09:34  9    A    Correct.

09:34  10   Q    Do you have a laptop?

09:34  11   A    I do, yes.

09:34  12   Q    If you loaned your laptop to someone and they created a

09:34  13   Microsoft Word document, it would show that you created the

09:34  14   document if you access the metadata; is that fair?

09:35  15           MR. WYMAN:  Objection.  Relevance.

09:35  16           THE COURT:  Overruled.

09:35  17           THE WITNESS:  Yes, that's correct.

09:35  18   BY MR. AVENATTI:

09:35  19   Q    So if I was doing the analysis, I would pull up the

09:35  20   metadata and it would say that you created the document when

09:35  21   in essence someone else was using your computer, right?

09:35  22   A    Yes.

09:35  23   Q    Because you have no way of knowing based on your

09:35  24   analysis whether the date and time was the real date and

09:35  25   time a document was created and edited or whether I actually

```
09:35   1   created or edited any document, correct?
09:35   2   A    Correct.  I don't know whether you specifically were at
09:35   3   the computer at the time.
09:35   4   Q    Sir, thank you for your candor.
09:35   5              THE COURT:  Redirect.
09:35   6              MR. WYMAN:  No, Your Honor.  Thank you.
09:35   7              THE COURT:  May the witness be excused?
09:35   8              MR. AVENATTI:  We would like to reserve the
09:35   9   opportunity to potentially recall him, Your Honor.
09:36  10              THE COURT:  Sir, you are excused for now but
09:36  11   you're on recall.  Thank you.
09:36  12              Would the government call its next witness,
09:36  13   please.
09:36  14              MR. WYMAN:  Thank you, Your Honor.
09:36  15              The United States calls Carlos Colorado.
09:36  16          CARLOS COLORADO, GOVERNMENT'S WITNESS, SWORN
09:36  17              THE CLERK:  If you will pull the microphone
09:36  18   towards you and state and spell your first and last name.
09:37  19              THE WITNESS:  Carlos Colorado, C-a-r-l-o-s,
09:37  20   C-o-l-o-r-a-d-o.
09:37  21              THE COURT:  Mr. Wyman.
09:37  22              MR. WYMAN:  Thank you, Your Honor.
09:37  23                       DIRECT EXAMINATION
09:37  24   BY MR. WYMAN:
09:37  25   Q    Good morning, Mr. Colorado.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:37  1   A    Good morning.

09:37  2   Q    What do you do for a living?

09:37  3   A    I'm an attorney.

09:37  4   Q    What law firm do you currently work for?

09:37  5   A    I work for a law firm called the X-Law Group.

09:37  6   Q    Between 2012 and March 2019, where did you work?

09:37  7   A    At that time I worked at Eagan Avenatti, LLP.

09:37  8   Q    What kind of cases does Eagan Avenatti handle or did

09:37  9   Eagan Avenatti handle at that time?

09:37  10  A    Usually represented plaintiffs in complex litigation.

09:37  11  Q    Prior to joining Eagan Avenatti, did you interview with

09:37  12  any attorneys at the firm?

09:37  13  A    Yes, I did.

09:37  14  Q    Was the defendant Michael Avenatti one of those

09:37  15  attorneys you interviewed with?

09:38  16  A    He was.

09:38  17  Q    When you joined the firm, what was your title?

09:38  18  A    I was an associate.

09:38  19  Q    Generally speaking, what were your responsibilities as

09:38  20  an associate at Eagan Avenatti?

09:38  21  A    As an associate I was responsible for the day-to-day

09:38  22  handling of the cases that I was assigned to.

09:38  23  Q    So did you work on cases with other more senior

09:38  24  attorneys at the time?

09:38  25  A    Yes, I did.

09:38    1    Q    Did you work on cases with the defendant?

09:38    2    A    I did.

09:38    3    Q    During your time at the firm, how would you describe

09:38    4    the defendant's role at Eagan Avenatti?

09:38    5    A    During the time that I was there, Mr. Avenatti was the

09:38    6    head of the office, the head of the firm, and he was

09:38    7    responsible as far as I could tell for you all the business

09:38    8    decisions and the final word on the legal aspects of the

09:39    9    cases we were handling.

09:39   10    Q    When you worked with the defendant on his cases, how

09:39   11    closely involved was he on the day-to-day operations of the

09:39   12    business?

09:39   13              MR. AVENATTI:   Objection, Your Honor.   Lacks

09:39   14    foundation.

09:39   15              THE COURT:   Overruled.

09:39   16              THE WITNESS:   Generally he would give us --

09:39   17    delegate the day-to-day handling of the sort of routine

09:39   18    aspects of litigation, but he was involved in -- he was

09:39   19    knowledgeable of the details.   We would debrief him on a

09:39   20    daily basis on what was happening.

09:39   21    BY MR. WYMAN:

09:39   22    Q    When you say we, are you referring to yourself and

09:40   23    other attorneys?

09:40   24    A    Correct.

09:40   25    Q    Would the defendant's level of involvement in a case

09:40  1    change as the case neared a resolution?

09:40  2              MR. AVENATTI:  Objection, Your Honor.  Foundation.

09:40  3              THE COURT:  Overruled.

09:40  4              THE WITNESS:  Yes.  Typically his involvement

09:40  5    would increase as cases neared resolution.

09:40  6    BY MR. WYMAN:

09:40  7    Q    And when I am saying resolution, what do you understand

09:40  8    that to mean?

09:40  9    A    When a case is resolved, generally that involves either

09:40  10   going to court and getting a verdict or reaching some kind

09:40  11   of settlement between the parties that ends the case.

09:40  12   Q    As the defendant became more involved as the cases

09:40  13   neared settlement or some resolution, would your role in

09:40  14   those cases change at all?

09:40  15   A    Sure.  As he became more involved, my role diminished.

09:41  16   Q    I want to turn now to a particular case handled by

09:41  17   Eagan Avenatti.  At some point during your time at that

09:41  18   firm, were you assigned to work on a case for a client named

09:41  19   Geoffrey Johnson?

09:41  20   A    Yes, I was.

09:41  21   Q    Did that case involve civil rights allegations against

09:41  22   the County of Los Angeles?

09:41  23   A    It did.

09:41  24   Q    And was this one of the defendant's cases that you

09:41  25   worked on?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:41  1    A    Correct.

09:41  2    Q    Generally speaking, what was your role on that case?

09:41  3    A    As in other cases that I worked on but especially that

09:41  4    case because it was the first case that I was assigned when

09:41  5    I arrived at Eagan Avenatti, I was in charge of the

09:41  6    day-to-day handling of the case, meaning I drafted the

09:41  7    complaint; I drafted discovery that was served on the County

09:42  8    and the defendants and responded to discovery, engaged in

09:42  9    communications with opposing counsel about those day-to-day

09:42  10   aspects.

09:42  11   Q    Did you also communicate with the client, Geoffrey

09:42  12   Johnson?

09:42  13   A    At some point I did communicate with Mr. Johnson.

09:42  14   Q    Did you meet with him in person?

09:42  15   A    Not typically, but once or twice I did.

09:42  16   Q    Let me show you what is already in evidence as

09:42  17   Exhibit 1.  It will be on the screen.  And also if you would

09:42  18   like to review the entire document, it's in Volume 1 of the

09:42  19   binders behind you.

09:42  20   A    Okay.  Is the screen going to come up?  Thank you.

09:42  21   Q    Do you recognize this?

09:42  22   A    Yes.

09:43  23   Q    What is it?

09:43  24   A    It's what we call a retainer agreement, the contract

09:43  25   with the client and an attorney.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:43 | 1 | Q    And who is this retainer agreement with? |
| 09:43 | 2 | A    This is the retainer agreement between Eagan Avenatti |
| 09:43 | 3 | and Mr. Johnson. |
| 09:43 | 4 | MR. WYMAN:  If you could please pull up paragraph |
| 09:43 | 5 | four on page 1. |
| 09:43 | 6 | BY MR. WYMAN: |
| 09:43 | 7 | Q    What amount of attorney fees does this agreement call |
| 09:43 | 8 | for? |
| 09:43 | 9 | MR. AVENATTI:  Objection, Your Honor.  The |
| 09:43 | 10 | document speaks for itself.  Best evidence. |
| 09:43 | 11 | THE COURT:  Overruled. |
| 09:43 | 12 | THE WITNESS:  It states that the attorney will |
| 09:43 | 13 | receive a contingent fee of 40 percent. |
| 09:43 | 14 | BY MR. WYMAN: |
| 09:43 | 15 | Q    To your knowledge was there any other agreement between |
| 09:43 | 16 | Eagan Avenatti and Geoffrey Johnson regarding attorneys' |
| 09:43 | 17 | fees? |
| 09:43 | 18 | A    Not to my knowledge. |
| 09:43 | 19 | Q    If you could please look in the binder behind you, |
| 09:44 | 20 | Volume 1, at what has been marked Government's Exhibit 7. |
| 09:44 | 21 | A    (Witness complies.)  Yes. |
| 09:44 | 22 | Q    Do you recognize this document? |
| 09:44 | 23 | A    Yes, I do. |
| 09:44 | 24 | Q    Is this a fair and accurate copy of an e-mail exchange |
| 09:44 | 25 | that you were on with the defendant? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:44   1   A     It looks to be.
09:44   2            MR. WYMAN:  Your Honor, the government moves to
09:44   3   admit Exhibit 7.
09:44   4            MR. AVENATTI:  Your Honor, objection.  Multiple
09:44   5   levels of hearsay.  Multiple documents.  There is also a
09:45   6   confrontation objection, Your Honor.
09:45   7            THE COURT:  Are you offering just the first page
09:45   8   or the entire document?
09:45   9            MR. WYMAN:  The entire document.  And the
09:45  10   attachment is not offered for the truth, Your Honor.
09:45  11            THE COURT:  Okay.  The first page will be
09:45  12   received.  The remaining pages will be received but not for
09:45  13   the truth of the contents, simply that they're attached.
09:45  14            MR. WYMAN:  Thank you, Your Honor.
09:45  15            (Exhibit 7 received in evidence)
09:45  16   BY MR. WYMAN:
09:45  17   Q     Starting on the first page, who is Catherine Mosby who
09:45  18   is sending this e-mail?
09:46  19   A     Ms. Mosby was at the time Mr. Avenatti's assistant.
09:46  20   Q     And who is she sending this e-mail to?
09:46  21   A     The e-mail includes Mr. Avenatti and other attorneys
09:46  22   and support staff in the office.
09:46  23   Q     Would you please turn now to page 2 two of the exhibit,
09:46  24   which is the first page of the attachment.
09:46  25            MR. AVENATTI:  Your Honor, I object if it's not
```

09:46  1   coming in for the truth revealing the content of the

09:46  2   attachment.

09:46  3            THE COURT:  Mr. Wyman.

09:46  4            MR. WYMAN:  Your Honor, it's offered for the

09:46  5   defendant's knowledge that he received this document.

09:46  6            THE COURT:  Proceed.  The objection is overruled.

09:46  7            MR. WYMAN:  Thank you, Your Honor.

09:46  8   BY MR. WYMAN:

09:46  9   Q    At the top of this page it says Sunrise Assisted Living

09:46  10  of West Hills.  Do you know what that is?

09:47  11  A    It was a facility where Mr. Johnson was residing at the

09:47  12  time.

09:47  13  Q    And does this first page appear to be a fax cover sheet

09:47  14  from that facility?

09:47  15  A    It does.

09:47  16  Q    It says on the portion of the screen there:  "Attention

09:47  17  Judy."  Do you know who Judy is?

09:47  18  A    I do.

09:47  19  Q    Who is that?

09:47  20  A    That was Judy Regnier.

09:47  21  Q    Would you go to page 3 of the exhibit, please, which is

09:47  22  the next page.  What is the document behind the fax cover

09:47  23  sheet?

09:47  24  A    It is correspondence from the Social Security

09:47  25  Administration to Sunrise, the facility where Mr. Johnson

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:47  1  lived.

09:47  2  Q    And if you could scroll down a little bit there, could

09:47  3  you just read the first paragraph of this letter, please.

09:48  4  A    It says:  "This is a very important letter about

09:48  5  keeping your supplemental security income, SSI.  Please read

09:48  6  it carefully.  If there is anything you do not understand,

09:48  7  please get in touch with us right away."

09:48  8  Q    Thank you.  And then flipping to the last page of the

09:48  9  exhibit, can you please read the first paragraph under the

09:48  10  heading, if we do not hear from you.

09:48  11  A    It says:  "We may stop your SSI if you don't respond to

09:48  12  this request or contact us within 30 days to tell us why.

09:48  13  If we stop your SSI, you could also lose any Medicaid you

09:48  14  have now."

09:48  15  Q    Were you aware at this time that Mr. Johnson was

09:48  16  receiving supplemental security income?

09:48  17  A    It was my understanding that he was, yes.

09:48  18  Q    And what was your understanding of why Mr. Johnson was

09:49  19  sending this letter to Ms. Regnier?

09:49  20  A    Because the firm was helping him to fill out forms and

09:49  21  do other administrative things necessary to keep his

09:49  22  benefits.

09:49  23  Q    This e-mail is from December of 2012.  Is that towards

09:49  24  the beginning of Mr. Johnson's case with the firm?

09:49  25  A    I understand that the representation of Mr. Johnson had

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:49    1    started the year before, but the lawsuit against the County
09:49    2    had been filed in October.
09:49    3    Q    At the beginning of the case, was the defendant closely
09:49    4    involved in the case?
09:49    5    A    For some matters, yes.
09:49    6    Q    Who was primarily responsible at that point for
09:50    7    handling the case?
09:50    8    A    At that point, meaning the time period of this --
09:50    9    Q    That time period and for the next year and a half or so
09:50   10    after that.
09:50   11    A    I had a large role in the day-to-day handling of
09:50   12    matters, but occasionally other people in the firm including
09:50   13    Ms. Regnier would be involved as well.
09:50   14    Q    Did there come a time when the defendant became more
09:50   15    closely involved in Mr. Johnson's case?
09:50   16    A    Yes.
09:50   17    Q    When was that?
09:50   18    A    That was -- well, throughout the course of the
09:50   19    litigation, when things escalated and the important matters
09:50   20    came up, for example, some judgment motions, big motions in
09:50   21    the case, Mr. Avenatti would become more involved.  But
09:50   22    generally as the case neared a resolution, he became more
09:51   23    involved.
09:51   24    Q    And did the case reach a settlement?
09:51   25    A    Eventually, yes.

| 09:51 | 1 | Q | And as the case approached that settlement, did the |

09:51    1    Q    And as the case approached that settlement, did the
09:51    2    defendant become more involved?
09:51    3    A    Yes.
09:51    4    Q    I think -- as you said earlier in this particular case
09:51    5    that the defendant became more involved, did your role
09:51    6    change at all?
09:51    7    A    Yes.  I took more of a back seat at the end.
09:51    8    Q    Would you please take a look at Exhibit 21.
09:51    9    A    (Witness complies.)
09:51   10    Q    Do you recognize this document?
09:52   11    A    I do.
09:52   12    Q    Is this a fair and accurate copy of an e-mail you
09:52   13    received from the defendant?
09:52   14    A    Yes.  It seems to be.
09:52   15             MR. WYMAN:  Your Honor, the government moves to
09:52   16    admit Exhibit 21.
09:52   17             MR. AVENATTI:  Your Honor, objection.  Multiple
09:52   18    levels of hearsay.  Also work product.
09:52   19             MR. WYMAN:  Statement of a party opponent, Your
09:52   20    Honor.
09:52   21             THE COURT:  Overruled.  Exhibit 21 will be
09:52   22    received.
09:52   23             MR. WYMAN:  Thank you, Your Honor.
09:52   24             (Exhibit 21 received in evidence)
09:52   25             MR. WYMAN:  If you could please blow up the e-mail

09:52  1    at the bottom.

09:52  2    BY MR. WYMAN:

09:52  3    Q    Do you see an e-mail at the bottom of this page from

09:52  4    the defendant?

09:52  5    A    Yes, I do.

09:53  6    Q    What is the date of that e-mail?

09:53  7    A    It's dated October 22nd, 2014.

09:53  8    Q    Do you recall if that was around the time that the

09:53  9    parties were approaching settlement?

09:53  10   A    Yes.  Generally I recall that.

09:53  11   Q    Who is the defendant e-mailing in this e-mail?

09:53  12   A    He is e-mailing Scott Sims, another lawyer in the firm,

09:53  13   and myself, and copies to Ms. Regnier.

09:53  14   Q    Can you please read that e-mail to the jury.

09:53  15   A    It says:  "Gents, please note that call contact with

09:53  16   Geoff or the family regarding the mediation, settlement, et

09:53  17   cetera, will be handled by Judy or me.  This is important

09:53  18   for a host of reasons."

09:53  19   Q    Did you understand what he meant when he said a host of

09:54  20   reasons?

09:54  21   A    I don't know that I understood it, but my impression

09:54  22   was that typically settlement communications are delicate

09:54  23   and you don't want too many cooks in the kitchen, for lack

09:54  24   of a better word, and that he wanted to present a unified

09:54  25   face for the client before the defendant.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:54  1   Q    And who would that unified face be?

09:54  2   A    It would be Mr. Avenatti.

09:54  3   Q    The subject of this e-mail is Johnson.  Do you see

09:54  4   that?

09:54  5   A    Right.

09:54  6   Q    And right below the subject what does it say?

09:54  7   A    It says importance, high.

09:54  8   Q    He references in that e-mail a mediation and

09:54  9   settlement.  Did this case go to mediation?

09:55  10  A    Yes, it did.

09:55  11  Q    And I think you said earlier that it ultimately reached

09:55  12  a settlement?

09:55  13  A    Right.

09:55  14        MR. WYMAN:  Would you scroll up a little bit to

09:55  15  the next e-mail.

09:55  16  BY MR. WYMAN:

09:55  17  Q    In the middle of the page there, it looks like you

09:55  18  responded just to the defendant.  Do you see that?

09:55  19  A    Yes.

09:55  20  Q    What did you write to him?

09:55  21  A    I wrote:  "I got a message that Geoff called me.

09:55  22  Should Judy call him back?"

09:55  23  Q    And then at the top of the page, what is the

09:55  24  defendant's response?

09:55  25  A    "Yes."

09:55  1   Q    Did you have any discussions with Mr. Johnson about the

09:55  2   settlement of this case?

09:55  3   A    Not about the substance of the settlement.

09:55  4   Q    Why not?

09:55  5   A    Because it was my understanding that Mr. Avenatti and

09:56  6   Ms. Regnier would handle that.

09:56  7   Q    And that understanding was based on this e-mail?

09:56  8   A    Yes.

09:56  9   Q    I'm going to show you now what is already in evidence

09:56  10  as Exhibit 37.

09:56  11             MR. WYMAN:  If we could pull up page 2 of that

09:56  12  exhibit, please.

09:56  13  BY MR. WYMAN:

09:56  14  Q    Do you recognize this document?

09:56  15  A    Yes.

09:56  16  Q    Prior to March of 2019, after you had left the firm,

09:56  17  had you ever seen this settlement agreement between

09:56  18  Mr. Johnson and the County of Los Angeles?

09:56  19  A    I may have seen drafts of it, but I don't believe I saw

09:56  20  the final version.

09:56  21  Q    Did you ever go over this document with Mr. Johnson?

09:56  22  A    No.

09:57  23             MR. WYMAN:  Would you pull up the signature,

09:57  24  please, on the last page.

       25

09:57  1   BY MR. WYMAN:

09:57  2   Q    Do you see that there is a signature above the name

09:57  3   "Geoffrey Ernest Johnson, Plaintiff"?

09:57  4   A    Yes.

09:57  5   Q    Did you ever see Mr. Johnson sign this document?

09:57  6   A    I did not.

09:57  7   Q    Did Mr. Johnson ever tell you that he signed this

09:57  8   document?

09:57  9   A    He did not.

09:57  10  Q    During this time period while the settlement

09:57  11  discussions were ongoing, do you recall the defendant ever

09:57  12  saying anything about a special-needs trust?

09:57  13  A    I do not.

09:57  14  Q    If you could please turn now to what is already in

09:57  15  evidence as Exhibit 40.  And could you go to page 2 of the

09:58  16  exhibit, please.

09:58  17         MR. WYMAN:  If we could blow up the first part of

09:58  18  that.

09:58  19  BY MR. WYMAN:

09:58  20  Q    Do you see that this is a check for $4 million from the

09:58  21  County of Los Angeles?

09:58  22  A    Yes, I see that.

09:58  23  Q    Prior to meeting with the government in this case, had

09:58  24  you ever seen this check before?

09:58  25  A    No.

09:58  1   Q    Do you know what happened to this check?

09:58  2   A    No.

09:58  3   Q    Other than working on this lawsuit against the County

09:58  4   of Los Angeles, did you ever work on any other legal matter

09:58  5   for Mr. Johnson?

09:58  6   A    No.

09:58  7   Q    To your knowledge did anyone at Eagan Avenatti ever

09:58  8   work on another legal matter for Mr. Johnson?

09:58  9   A    Not to my knowledge.

09:58  10  Q    After January of 2015 do you recall having any

09:59  11  conversations with the defendant about Mr. Johnson?

09:59  12  A    I'm sorry.  After what date?

09:59  13  Q    After January of 2015.  I can ask it more specifically.

09:59  14  After the case settled, do you recall having any

09:59  15  conversations with the defendant about Mr. Johnson?

09:59  16  A    Not about Mr. Johnson.  Just occasionally about the

09:59  17  case, some aspect of the case, some pleading that we might

09:59  18  want to replicate in a different case, that sort of thing.

09:59  19  Q    But the substance of Mr. Johnson's case, do you recall

09:59  20  ever talking to the defendant about that?

09:59  21  A    I do not.

09:59  22           MR. WYMAN:  One moment, Your Honor.

09:59  23           (Government counsel conferring)

10:00  24  BY MR. WYMAN:

10:00  25  Q    Let's go back to Exhibit 37 briefly.  On the last page

| 10:00 | 1 | of that exhibit where the signatures are, do you see on the |
| 10:00 | 2 | signature block that your name is listed as an attorney for |
| 10:00 | 3 | plaintiff? |
| 10:00 | 4 | A    Yes. |
| 10:00 | 5 | Q    Is that your signature? |
| 10:00 | 6 | A    No. |
| 10:00 | 7 | Q    Do you know whose signature that is? |
| 10:00 | 8 | A    I'm not certain, but it looks like Mr. Avenatti's |
| 10:00 | 9 | signature. |
| 10:00 | 10 | MR. WYMAN:  Thank you.  No further questions. |
| 10:00 | 11 | THE COURT:  Mr. Avenatti. |
| 10:00 | 12 | MR. AVENATTI:  Thank you, Your Honor. |
| 10:00 | 13 | CROSS-EXAMINATION |
| 10:01 | 14 | BY MR. AVENATTI: |
| 10:01 | 15 | Q    Mr. Colorado, good morning. |
| 10:01 | 16 | A    Good morning. |
| 10:01 | 17 | Q    You and I worked together for a number of years; did we |
| 10:01 | 18 | not? |
| 10:01 | 19 | A    We did. |
| 10:01 | 20 | Q    And I was the one who made the decision to hire you at |
| 10:02 | 21 | my law firm, right? |
| 10:02 | 22 | A    Yes. |
| 10:02 | 23 | Q    And you and I enjoyed a good working relationship |
| 10:02 | 24 | during those years; did we not? |
| 10:02 | 25 | A    We did. |

49

10:02  1    Q    And during the time period that you were at the firm,

10:02  2    you were one of the most junior attorneys at the firm; is

10:02  3    that fair to say?

10:02  4    A    In terms of years of practice, yes.

10:02  5    Q    Your role at the firm was very different than my role

10:02  6    at the firm and the role of other individuals who were much

10:02  7    more experienced and senior, right?

10:02  8    A    Yes.

10:02  9    Q    There wasn't anything unusual about that as it relates

10:02  10   to how that was structured; was there?

10:03  11   A    Not to my mind at the time.

10:03  12   Q    Have you ever given a closing argument in a trial?

10:03  13   A    I have not.

10:03  14   Q    Have you ever given an opening statement in a trial?

10:03  15   A    I have not.

10:03  16   Q    Have you ever been the primary attorney responsible for

10:03  17   a matter at trial?

10:03  18   A    I have not.

10:03  19   Q    When you were working at my law firm, there was a

10:03  20   division of responsibilities among the attorneys generally;

10:03  21   is that true?

10:03  22   A    Yes.

10:03  23   Q    And we had attorneys of varying degrees of experience

10:03  24   and talent; is that fair to say?

10:03  25   A    It is fair.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 10:03 | 1 | Q | Nothing usual about that, right? |

10:03    1    Q    Nothing usual about that, right?

10:04    2    A    Correct.

10:04    3    Q    Now, you are not suggesting to this jury that I wasn't

10:04    4    involved in my cases; are you?

10:04    5    A    Not at all.

10:04    6    Q    Why are you not suggesting to the jury that I was not

10:04    7    involved in my cases?

10:04    8    A    Well, I have testified that you were involved in the

10:04    9    cases.

10:04    10    Q    For the most part I was very involved in my cases;

10:04    11    wasn't I?

10:04    12    A    I think so.

10:04    13    Q    Sir, in your experience isn't it true that almost every

10:04    14    pleading of any significance in any case would be reviewed

10:05    15    by me before it was filed?

10:05    16    A    Yes.  That's true.

10:05    17    Q    No matter where I was in the country, right?

10:05    18    A    Generally true.

10:05    19    Q    No matter where I was in the world?

10:05    20    A    Correct.

10:05    21    Q    At all hours of the day.  You experienced that; did you

10:05    22    not?

10:05    23    A    For the most part, yes.

10:05    24    Q    You would receive e-mails from me sometimes in the

10:05    25    middle of the night and sometimes very early in the morning

10:05   1    relating to my input on matters at the firm that you were

10:05   2    working with me on; isn't that true?

10:05   3    A    That is true.

10:05   4    Q    When it came to the legal filings in our cases, I was

10:06   5    incredibly hands-on; is that fair?

10:06   6    A    That's fair.

10:06   7    Q    Did I appear to you to be devoted to the cases?

10:06   8    A    Also fair.

10:06   9    Q    And it's also fair that I needed help working up the

10:06   10   cases because I wasn't able to do everything on every case

10:06   11   that we had, right?

10:06   12   A    Right.

10:06   13   Q    Because at various points in time we would represent

10:06   14   hundreds if not thousands of plaintiffs, right?

10:06   15   A    Hundreds.

10:06   16   Q    Well, some of our cases had thousands of plaintiffs?

10:06   17   A    Correct.

10:07   18   Q    Okay.  So at any given time we would represent hundreds

10:07   19   and thousands of individuals in cases, right?

10:07   20   A    I think that's fair.

10:07   21   Q    Okay.  And those cases weren't just confined to

10:07   22   California.  Those cases were brought all around the

10:07   23   country, right?

10:07   24   A    Yes.

10:07   25   Q    You worked on cases in California.  You worked on cases

10:07  1   in Texas.  You worked on cases in other states, right?

10:07  2   A    Correct.

10:07  3   Q    And when it came time to travel in connection with

10:07  4   those cases to make court appearances or take depositions

10:07  5   where people give testimony, was that generally -- was that

10:07  6   what you did?

10:07  7   A    Sometimes.

10:07  8   Q    But not most of the time?

10:08  9   A    I honestly am not sure about that.

10:08  10  Q    Okay.  Who would travel more in connection with those

10:08  11  cases, me or you?

10:08  12            MR. WYMAN:  Calls for speculation.

10:08  13            THE COURT:  Overruled.

10:08  14            THE WITNESS:  I honestly don't know.

10:08  15  BY MR. AVENATTI:

10:08  16  Q    Well, Mr. Colorado, you would be in contact with me

10:08  17  when I would be in other locations making court appearances.

10:08  18  You recall that, right?

10:08  19  A    Sure.

10:08  20  Q    Okay.  And as cases got closer to trial, there would be

10:08  21  a ramp-up of activity in connection with a case, right?

10:08  22  A    Yes.

10:08  23  Q    And was that necessary?

10:08  24  A    Absolutely.

10:08  25  Q    Explain to the jury why that would be necessary.

| | | |
|---|---|---|
| 10:09 | 1 | A    As cases escalated and they become more advanced in |
| 10:09 | 2 | litigation, there is usually more need to make appearances |
| 10:09 | 3 | in court and to make filings in court, and all of those |
| 10:09 | 4 | things require a lot of preparation, research, and the |
| 10:09 | 5 | involvement of more experienced and senior lawyers. |
| 10:09 | 6 | Q    And while you were at the firm, there were cases that |
| 10:09 | 7 | went to trial; am I right? |
| 10:09 | 8 | A    Yes. |
| 10:09 | 9 | Q    Big cases? |
| 10:09 | 10 | A    Yes. |
| 10:09 | 11 | Q    Complicated cases? |
| 10:09 | 12 |         MR. WYMAN:  Objection.  Relevance. |
| 10:09 | 13 |         THE COURT:  Overruled. |
| 10:09 | 14 |         THE WITNESS:  Correct. |
| 10:09 | 15 | BY MR. AVENATTI: |
| 10:09 | 16 | Q    Cases involving in some instances millions of pages of |
| 10:09 | 17 | documents, right? |
| 10:09 | 18 | A    Right. |
| 10:09 | 19 | Q    And the primary person who was responsible for |
| 10:09 | 20 | representing those clients at trial was me, right? |
| 10:10 | 21 | A    Yes. |
| 10:10 | 22 | Q    And you observed, did you not, weeks where I would |
| 10:10 | 23 | spend well over a hundred hours a week working on a case in |
| 10:10 | 24 | the middle of trial? |
| 10:10 | 25 | A    Yes. |

| | | |
|---|---|---|
| 10:10 | 1 | Q    And you understood that was because that's what needed |
| 10:10 | 2 | to be done to represent our clients, right? |
| 10:10 | 3 | A    Yes. |
| 10:11 | 4 | Q    Based on your testimony on direct, you don't mean to |
| 10:11 | 5 | suggest that I was lazy in any way; do you? |
| 10:11 | 6 | A    No. |
| 10:11 | 7 | Q    You smile.  Why do you smile? |
| 10:11 | 8 | A    Because I wasn't trying to suggest anything.  I was |
| 10:11 | 9 | being asked questions, and I was answering the questions |
| 10:11 | 10 | directly. |
| 10:11 | 11 | Q    Now, while you were at the firm, you were not involved |
| 10:11 | 12 | with the administrative activities at the law firm; is that |
| 10:11 | 13 | fair? |
| 10:11 | 14 | A    Fair. |
| 10:11 | 15 | Q    So you were not involved with any of the business |
| 10:11 | 16 | decisions at the law firm, right? |
| 10:11 | 17 | A    I was not. |
| 10:11 | 18 | Q    You weren't involved with making sure client retainer |
| 10:12 | 19 | agreements were signed, correct? |
| 10:12 | 20 | A    Correct. |
| 10:12 | 21 | Q    You weren't in any way in charge of disbursing money, |
| 10:12 | 22 | right? |
| 10:12 | 23 | A    I was not. |
| 10:12 | 24 | Q    You were not in any way responsible for administrating |
| 10:12 | 25 | settlement agreements, right? |

10:12    1    A    No, I was not.

10:12    2    Q    You were not in any way responsible for -- primarily

10:12    3    responsible for mediating or settling any cases; were you?

10:12    4    A    There was only one case that I attended the mediation

10:12    5    by myself for.

10:12    6    Q    But that was not Mr. Johnson's case?

10:12    7    A    It was not.

10:12    8    Q    Okay.  Your responsibilities really were geared towards

10:12    9    the day-to-day nuts and bolts of some of the cases, right?

10:12   10    A    That's right.

10:12   11    Q    That's a fair description of what you did?

10:12   12    A    Yes.  I agree.

10:13   13    Q    So when Mr. Wyman was asking you questions about

10:13   14    whether you had seen certain financial documents before and

10:13   15    you answered no, there was nothing unusual about that; was

10:13   16    there?

10:13   17    A    It did not strike me as unusual.

10:13   18    Q    Because it was rare and perhaps it never occurred that

10:13   19    you were privy to any of those types of documents in any of

10:13   20    our cases, right?

10:13   21    A    That is correct.

10:13   22    Q    Now, if you turn to Exhibit 1 -- do you have Exhibit 1,

10:14   23    Mr. Colorado?

10:14   24    A    I do.

10:14   25    Q    You were asked if you had ever seen this document

10:14    1    before by Mr. Wyman.  Do you remember that?

10:14    2    A    Yes, I do.

10:14    3    Q    And you said you had not seen this document before,

10:14    4    right?

10:14    5    A    Correct.

10:14    6    Q    Anything unusual about you not seeing a retention

10:14    7    agreement between a client and the law firm?

10:14    8    A    I don't think I saw any retention agreements at the

10:14    9    firm until the very last year that I was there.

10:14    10    Q    Okay.  So the custom and practice at the firm was that

10:14    11    the retention agreements between a client and the firm were

10:14    12    not shared with you, right?

10:14    13    A    Correct.

10:14    14    Q    Nothing unusual about that in your experience, right?

10:14    15    A    I don't think so.

10:15    16    Q    Because you were not responsible for getting the

10:15    17    retention agreement signed and getting clients to agree to

10:15    18    allow us to represent them.  That wasn't your job.

10:15    19    A    Correct.

10:15    20    Q    Sir, because that wasn't your job, you wouldn't know if

10:15    21    there were any other agreements reached with Mr. Johnson for

10:15    22    any other services or legal services; would you?

10:15    23    A    I would not expect to know that.

10:15    24    Q    So when Mr. Wyman asked you do you know of any other

10:15    25    agreements and you said no, the reason is because you

| | | |
|---|---|---|
| 10:15 | 1 | wouldn't expect to know, right? |
| 10:15 | 2 | A     Right. |
| 10:16 | 3 | Q     Now, if you go to Exhibit 1, there is a paragraph |
| 10:16 | 4 | entitled scope of services.  Do you see that, sir? |
| 10:16 | 5 | A     I do. |
| 10:16 | 6 | Q     And is it your understanding that those are the |
| 10:16 | 7 | services that the firm agreed to represent Mr. Johnson on in |
| 10:16 | 8 | connection with this particular written agreement? |
| 10:16 | 9 | A     It's my understanding based on this document. |
| 10:16 | 10 | Q     You don't have any independent knowledge one way or the |
| 10:16 | 11 | other, right? |
| 10:16 | 12 | A     Other than the work I did seems to fit within this |
| 10:16 | 13 | scope. |
| 10:16 | 14 | Q     But you don't know if there were other people doing |
| 10:16 | 15 | other work for Mr. Johnson outside of what you were working |
| 10:16 | 16 | on, correct? |
| 10:16 | 17 | A     I don't know of anyone else doing any other work. |
| 10:17 | 18 | Q     But you don't know if anyone else was assigned by me to |
| 10:17 | 19 | do other work for Mr. Johnson; do you? |
| 10:17 | 20 | A     I don't. |
| 10:17 | 21 | Q     Who is Scott Sims? |
| 10:17 | 22 | A     Scott Sims is an attorney that worked at the firm |
| 10:17 | 23 | during most of the time that I was there. |
| 10:17 | 24 | Q     Did Mr. Sims work on the Johnson case? |
| 10:17 | 25 | A     Yes, he did. |

10:17  1    Q    Did Mr. Sims have more or less involvement on the
10:17  2    Johnson case than you did?
10:18  3    A    It fluctuated a bit.
10:18  4    Q    At some point in time the hierarchy on the Johnson
10:18  5    case -- well, strike that.  For the last about two years of
10:18  6    the Johnson case, the hierarchy in the Johnson case went me
10:18  7    at the top, and then Mr. Sims, and then you; is that fair?
10:18  8    A    Yes.
10:18  9    Q    Nothing unusual about that, right?
10:18  10   A    No.
10:18  11   Q    And in the Johnson case, like practically every other
10:18  12   case at the firm when you were there, as the case got closer
10:18  13   to trial, I became much more heavily involved, correct?
10:18  14   A    Correct.
10:18  15   Q    Now, Mr. Wyman asked you some questions about whether
10:18  16   my involvement had increased as we got closer to settlement.
10:19  17   Do you recall that?
10:19  18   A    Yes.
10:19  19   Q    Okay.  Well, you recall that the settlement of the
10:19  20   Johnson case occurred on the eve of trial or very close to
10:19  21   trial; isn't that true?
10:19  22   A    That's true.
10:19  23   Q    So my involvement was not necessarily a function of the
10:19  24   potential for settlement.  It was a function of the fact
10:19  25   that we were ramping up for trial.  You recall that, right?

| | | |
|---|---|---|
| 10:19 | 1 | A    Yes. |
| 10:19 | 2 | Q    Now, Exhibit 7.  You were asked some questions about |
| 10:19 | 3 | Exhibit 7, which is correspondence from the Social Security |
| 10:19 | 4 | Administration. |
| 10:19 | 5 |         MR. AVENATTI:  Why don't we go to the third page, |
| 10:20 | 6 | please. |
| 10:20 | 7 | BY MR. AVENATTI: |
| 10:20 | 8 | Q    Now, Mr. Colorado, did you ever communicate with the |
| 10:20 | 9 | Social Security Administration relating to Geoff Johnson? |
| 10:20 | 10 | A    I don't recall doing so. |
| 10:20 | 11 | Q    And this letter is addressed to Mr. Johnson there at |
| 10:20 | 12 | the top, and the date is December 11, 2012.  Do you see |
| 10:20 | 13 | that? |
| 10:20 | 14 | A    Yes. |
| 10:20 | 15 | Q    And then if we go to the body of the document beginning |
| 10:20 | 16 | with "Dear Geoffrey Ernest Johnson," can you see that, |
| 10:20 | 17 | Mr. Colorado? |
| 10:20 | 18 | A    I can. |
| 10:21 | 19 | Q    And under the bolded heading "You have an appointment," |
| 10:21 | 20 | do you see that? |
| 10:21 | 21 | A    I see it. |
| 10:21 | 22 | Q    It says:  We must regularly review the cases of people |
| 10:21 | 23 | who get SSI.  We need information from you to make sure you |
| 10:21 | 24 | are still eligible.  Did I read that correctly? |
| 10:21 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

60

10:21    1    Q    And then it says:  We want to talk to you on

10:21    2    December 27, 2012, at 2:00 p.m.  Do you see that?

10:21    3    A    Yes.

10:21    4    Q    It does not say we want to talk to your attorney; does

10:21    5    it?

10:21    6    A    It does not.

10:21    7    Q    It doesn't say we want Mr. Colorado to call us, right?

10:21    8    A    Correct.

10:21    9    Q    And it doesn't say please have Mr. Avenatti call us.

10:21   10    We don't really need to talk to you, Mr. Johnson.  It

10:21   11    doesn't say that either; does it?

10:21   12    A    It does not say that.

10:21   13    Q    Okay.  They wanted to talk to Mr. Johnson, right?  That

10:22   14    was your understanding when you saw this?

10:22   15    A    Correct.

10:22   16    Q    And then there are some instructions about how they are

10:22   17    going to arrange the call on that date and time, right?

10:22   18    A    Right.

10:22   19    Q    And then there is a paragraph underneath that that

10:22   20    talks about what they needed in connection with that phone

10:22   21    interview with Mr. Johnson.  Do you see that?

10:22   22    A    I do.

10:22   23    Q    And there is a bullet point at the bottom, and it says:

10:22   24    Please be prepared to discuss your living situation.  This

10:22   25    is a phone interview.  You do not have to visit our office.

| | | |
|---|---|---|
| 10:22 | 1 | Did I read that correctly? |
| 10:22 | 2 | A   Yes. |
| 10:22 | 3 | Q   And you knew at the time, sir -- well, strike that. |
| 10:22 | 4 | You had gone to visit Mr. Johnson in his living situation at |
| 10:23 | 5 | that time; had you not? |
| 10:23 | 6 | A   I don't think I had at that time. |
| 10:23 | 7 | Q   Was it later or before? |
| 10:23 | 8 | A   I think I visited him later. |
| 10:23 | 9 | Q   Okay.  But you knew that as of December 2012 that the |
| 10:23 | 10 | firm was paying all of Mr. Johnson's living expenses, right? |
| 10:23 | 11 | A   I did not know that. |
| 10:23 | 12 | Q   Okay.  You didn't have anything that suggested to you |
| 10:23 | 13 | that someone else was paying any of his living expenses; did |
| 10:23 | 14 | you? |
| 10:23 | 15 | A   I did not. |
| 10:23 | 16 | Q   Okay.  You didn't know one way or the other? |
| 10:23 | 17 | A   Correct. |
| 10:23 | 18 | Q   Because again, that was not what you were focused on? |
| 10:23 | 19 | A   Correct. |
| 10:23 | 20 | Q   Do you have any idea what happened in response to this |
| 10:23 | 21 | letter, by anyone? |
| 10:23 | 22 | A   I have some recollection maybe.  I have some |
| 10:24 | 23 | recollection of having received this and having collected |
| 10:24 | 24 | information for -- in connection with his continuing |
| 10:24 | 25 | application for benefits.  But I don't know if it was |

10:24   1   specific to this correspondence or some other

10:24   2   correspondence.

10:24   3   Q    You have a vague recollection of doing that, but you

10:24   4   don't know exactly when it was?

10:24   5   A    That's right.

10:24   6   Q    Okay.  Is there anything else that you recall about

10:24   7   that other than what you just testified to?

10:24   8   A    I recall having a file that had documents relating to

10:24   9   his SSI applications collected all in one binder or folder.

10:24   10   Q    You recall having a file that actually contained

10:24   11   certain medical and mental health records of Mr. Johnson in

10:24   12   connection with his SSI application, right?  That's what the

10:24   13   file contained?

10:24   14   A    I think so.

10:24   15   Q    Okay.  And do you recall giving that file to Judy

10:25   16   Regnier?

10:25   17   A    Yes.

10:25   18   Q    You didn't give that file to me; did you?

10:25   19   A    Either Judy gave it to me or I gave it to her.  My

10:25   20   interactions were with Ms. Regnier.

10:25   21   Q    You were asked about Exhibit 21.

10:25   22        MR. AVENATTI:  Could we have Exhibit 21 for the

10:25   23   jury.  Could you just blow up the entire body, please, Joe.

10:25   24        Thank you, sir.

10:25   25

| | | |
|---|---|---|
| 10:25 | 1 | BY MR. AVENATTI: |
| 10:25 | 2 | Q    Mr. Colorado, can you see that? |
| 10:25 | 3 | A    I can. |
| 10:25 | 4 | Q    Now, Mr. Wyman asked you about this document, and he |
| 10:26 | 5 | was asking whether this was around the time that we were |
| 10:26 | 6 | approaching settlement.  Do you remember that? |
| 10:26 | 7 | A    Yes. |
| 10:26 | 8 | Q    Well, first we were approaching trial, right? |
| 10:26 | 9 | A    Well, as you mentioned, the two things sort of |
| 10:26 | 10 | coincided.  Frankly I conflate the timing for that myself. |
| 10:26 | 11 | Q    Because sometimes as you get closer to trial, that's |
| 10:26 | 12 | when cases are more prone to settle, right?  People's feet |
| 10:26 | 13 | are being held to the fire, as they say? |
| 10:26 | 14 | A    Correct. |
| 10:26 | 15 | Q    And at this time we didn't know whether the case was |
| 10:26 | 16 | going to settle or whether it was going to go to trial? |
| 10:26 | 17 | A    That's true. |
| 10:26 | 18 | Q    And there wasn't anything unusual about me instructing |
| 10:27 | 19 | you and others as we got closer to trial and a potential |
| 10:27 | 20 | settlement that we were going to speak, I think the terms |
| 10:27 | 21 | you used was, with one voice, right?  That wasn't unusual? |
| 10:27 | 22 | A    It didn't strike me as unusual at the time. |
| 10:27 | 23 | Q    And you would have expected that the one voice that we |
| 10:27 | 24 | would be speaking with would be my voice because I was the |
| 10:27 | 25 | lead attorney on the case, right? |

10:27  1   A    That was my expectation.

10:27  2   Q    And you didn't know what communications that I had had

10:27  3   with Mr. Johnson relating to settlement; did you?

10:27  4   A    I did not.

10:27  5   Q    You still don't; do you?

10:27  6   A    I do not.

10:27  7   Q    And you don't know what communications that I had with

10:27  8   Mr. Johnson about what he wanted his family to know or not

10:27  9   know about his case; do you?

10:27  10  A    Sorry.  Again?

10:27  11  Q    You did not know what communications I may have had

10:27  12  with Mr. Geoff Johnson about whether he wanted his family to

10:28  13  know anything about his settlement or his case; is that

10:28  14  fair?

10:28  15          MR. WYMAN:  Objection.  Foundation.  Calls for

10:28  16  speculation.

10:28  17          THE COURT:  Overruled.

10:28  18          THE WITNESS:  That's fair.

10:28  19  BY MR. AVENATTI:

10:28  20  Q    As you sit here today, do you have any idea what

10:28  21  Mr. Johnson may have told me in connection with what he

10:28  22  wanted his family to know about the trial or the settlement?

10:28  23  A    I remember some things but in the -- strictly, no.

10:28  24  Q    Sir, do you have a recollection of learning that

10:29  25  Mr. Johnson's father was attempting to get his hands on

```
10:29   1   Mr. Johnson's money?
10:29   2           MR. WYMAN:  Objection.  Foundation, assumes facts
10:29   3   not in evidence.
10:29   4           THE COURT:  Sustained.
10:29   5   BY MR. AVENATTI:
10:29   6   Q    Mr. Colorado, do you have a recollection of us having a
10:29   7   discussion relating to the family dynamic between
10:29   8   Mr. Johnson at the time as it related to the settlement?
10:29   9           MR. WYMAN:  Asked and answered.
10:29  10           THE COURT:  Overruled.
10:29  11           THE WITNESS:  I do not.
10:29  12   BY MR. AVENATTI:
10:29  13   Q    You don't have a recollection one way or the other?
10:29  14           MR. WYMAN:  Objection.  Asked and answered.
10:29  15           MR. AVENATTI:  I'm just clarifying the record.
10:29  16           THE COURT:  Move on.
10:29  17           I think we will take the mid-morning break here,
10:29  18   ladies and gentlemen.  We will be in recess for 15 minutes.
10:30  19   Please remember the admonition not to discuss the case with
10:30  20   anyone and not to form any opinions on the issues in the
10:30  21   case until it is submitted to you.  And no research, please.
10:30  22           (Jury not present)
10:30  23           THE COURT:  We will be in recess.
10:30  24               (Recess taken at 10:30 a.m.;
10:30  25                proceedings resumed at 10:49 a.m.)
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:30 | 1 | (Jury present) |
| 10:49 | 2 | THE COURT:  Mr. Avenatti. |
| 10:49 | 3 | MR. AVENATTI:  Thank you, Your Honor. |
| 10:49 | 4 | BY MR. AVENATTI: |
| 10:49 | 5 | Q    Mr. Colorado, under direct examination by Mr. Wyman, |
| 10:49 | 6 | you were asked where you currently work.  Do you remember |
| 10:49 | 7 | that? |
| 10:49 | 8 | A    Yes. |
| 10:49 | 9 | Q    And you said that you work at the X-Law Group; is that |
| 10:49 | 10 | right? |
| 10:49 | 11 | A    Correct. |
| 10:49 | 12 | Q    What is the X-Law Group? |
| 10:49 | 13 | A    It's a law firm in South Pasadena. |
| 10:50 | 14 | Q    And who do you report to at the law group? |
| 10:50 | 15 | A    Filippo Marchino. |
| 10:50 | 16 | Q    Mr. Marchino also used to work at the firm, correct, |
| 10:50 | 17 | meaning my firm? |
| 10:50 | 18 | A    I understand he was associated with the firm.  I don't |
| 10:50 | 19 | fully understand the association. |
| 10:50 | 20 | Q    Let me direct your attention if I could to Exhibit 37, |
| 10:50 | 21 | a document Mr. Wyman asked you about. |
| 10:50 | 22 | You will recall that he asked you whether you had |
| 10:50 | 23 | ever seen this document before March 2019.  Do you remember |
| 10:50 | 24 | that? |
| 10:50 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:50    1    Q    And you said that you had not, right?

10:50    2    A    I said I may have seen drafts but I don't recall seeing

10:50    3    the final.

10:50    4    Q    Anything unusual about that in your experience at the

10:51    5    firm?

10:51    6    A    Not in my experience at the firm.

10:51    7    Q    Are you aware of any evidence that I attempted to hide

10:51    8    this document from you or anyone else?

10:51    9    A    No.

10:51   10    Q    Are you aware of any evidence that suggests I ever

10:51   11    attempted to hide anything from Mr. Johnson?

10:51   12    A    I'm not.

10:51   13    Q    Mr. Wyman asked you whether Mr. Johnson ever told you

10:51   14    he signed this document.  Do you remember that question?

10:51   15    A    Yes.

10:51   16    Q    Well, let me ask you a different question.  Did he ever

10:51   17    tell you that he did not sign this document?

10:51   18    A    No.

10:51   19    Q    Mr. Wyman asked you if I had ever spoken to you about a

10:51   20    special-needs trust.  Do you remember that?

10:52   21    A    Yes.

10:52   22    Q    Based on your role in connection with Mr. Johnson's

10:52   23    case, would you have any reason to believe that if there was

10:52   24    a special-needs trust being set up, that I would have

10:52   25    communicated with you about it?

68

| | | |
|---|---|---|
| 10:52 | 1 | A    I can't think of a reason. |
| 10:52 | 2 | Q    Mr. Wyman asked you about a document where there were |
| 10:52 | 3 | multiple attorneys listed. |
| 10:52 | 4 |        MR. AVENATTI:  I think it was actually 37.  If we |
| 10:52 | 5 | can go to 37, the signature block. |
| 10:52 | 6 | BY MR. AVENATTI: |
| 10:52 | 7 | Q    Do you see that, sir? |
| 10:53 | 8 | A    I do. |
| 10:53 | 9 | Q    Okay.  And your name is listed below Mr. Sims' and |
| 10:53 | 10 | below mine; is that right? |
| 10:53 | 11 | A    Correct. |
| 10:53 | 12 | Q    Okay.  Anything unusual in having multiple attorneys |
| 10:53 | 13 | listed in a signature block but only one attorney signs the |
| 10:53 | 14 | document? |
| 10:53 | 15 | A    No. |
| 10:53 | 16 | Q    It happens all the time, right? |
| 10:53 | 17 | A    Yes. |
| 10:53 | 18 | Q    Now, you have met with the government on multiple |
| 10:53 | 19 | occasions prior to your testimony here today; is that right? |
| 10:53 | 20 | A    I met with them three times. |
| 10:53 | 21 | Q    The first time you met with them was in September of |
| 10:53 | 22 | 2019; is that right? |
| 10:53 | 23 | A    It sounds right. |
| 10:53 | 24 | Q    And when you met with the government, you met with |
| 10:53 | 25 | Special Agent Carlos, right? |

10:53   1   A    Yes.

10:53   2   Q    He's the gentleman seated right to my left; is that

10:53   3   right?

10:53   4   A    I believe so.

10:53   5   Q    Okay.  And Mr. Ryan Roberson; is that right?

10:54   6   A    I don't recall if he was at that meeting.  I do not

10:54   7   dispute it.

10:54   8   Q    Okay.  And you recognize him in the courtroom, right?

10:54   9   He's seated to our left of Mr. Kim?

10:54   10   A    I recognize him.

10:54   11   Q    And then you also met with Julian Andre that day,

10:54   12   Mr. Sagel's colleague at the U.S. Attorney's Office,

10:54   13   correct, that first meeting September 2019?

10:54   14   A    I don't recall.

10:54   15   Q    But you don't dispute it?

10:54   16   A    That is correct.

10:54   17   Q    And that meeting lasted from approximately 10:33 a.m.

10:54   18   to 1:44 p.m.  Am I right about that?

10:54   19   A    I don't recall the duration, but I don't dispute it.

10:54   20   Q    Okay.  So a little over three hours, fair?

10:54   21   A    Possible.

10:55   22   Q    I'm sorry?

10:55   23   A    Possible.

10:55   24   Q    And during that meeting about a year and a half or more

10:55   25   ago, you told the government that you never saw any

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:55   1   suspicious funds or red flags while working at my law firm;
10:55   2   didn't you?
10:55   3   A    Sounds consistent with what I generally said.  I don't
10:55   4   recall specifically those words, but I'm sure I said
10:55   5   something to that effect.
10:55   6   Q    Would you like to refresh your recollection?
10:55   7   A    Sure.
10:55   8        MR. AVENATTI:  Your Honor, may I approach?
10:55   9        THE COURT:  You may.
10:55  10   BY MR. AVENATTI:
10:56  11   Q    Sir, I would like to direct your attention to paragraph
10:56  12   five of that document.
10:56  13   A    (Witness reviewing document)  Okay.
10:56  14   Q    I think you testified on direct examination that you
10:56  15   worked at my law firm and with me from 2012 until early
10:56  16   2019; is that right?
10:57  17   A    That's right.
10:57  18   Q    We worked closely together, did we not, on a lot of
10:57  19   different cases?
10:57  20   A    Yes.
10:57  21   Q    Isn't it true that you told the government in
10:57  22   September of 2019 that you never saw any suspicious funds or
10:57  23   red flags while working at my law firm?
10:57  24   A    Again I don't specifically recall saying that, but I
10:57  25   don't dispute that that's consistent with what I generally

| | | |
|---|---|---|
| 10:57 | 1 | said. |
| 10:57 | 2 | Q    Well, looking at the document, does that refresh your |
| 10:57 | 3 | recollection? |
| 10:57 | 4 |              MR. WYMAN:  Asked and answered. |
| 10:57 | 5 |              THE COURT:  Overruled. |
| 10:57 | 6 |              THE WITNESS:  It doesn't particularly refresh my |
| 10:57 | 7 | recollection. |
| 10:57 | 8 | BY MR. AVENATTI: |
| 10:57 | 9 | Q    But you don't dispute it? |
| 10:57 | 10 | A    I do not. |
| 10:57 | 11 | Q    When you met with the government in September of 2019, |
| 10:57 | 12 | multiple agents and the Assistant U.S. Attorney, isn't it |
| 10:57 | 13 | true that you told the government that you are not aware of |
| 10:57 | 14 | me ever forging any signature? |
| 10:58 | 15 | A    I don't recall saying that, but that statement is true. |
| 10:58 | 16 | I have no knowledge of that. |
| 10:58 | 17 | Q    Okay.  Well, let me direct your attention to paragraph |
| 10:58 | 18 | 64.  My focus is on what you told the government a year and |
| 10:58 | 19 | a half ago. |
| 10:58 | 20 |              MR. WYMAN:  Your Honor, this calls for hearsay. |
| 10:58 | 21 | It's also not impeachment on an issue that was presented on |
| 10:58 | 22 | direct. |
| 10:59 | 23 |              THE COURT:  Overruled. |
| 10:59 | 24 | BY MR. AVENATTI: |
| 10:59 | 25 | Q    Mr. Colorado, looking at paragraph 64, does that |

10:59  1    refresh your recollection that you informed the government
10:59  2    over 18 months ago that you were not aware of me ever
10:59  3    forging any signatures?
10:59  4    A    It does not refresh my recollection in the sense that I
10:59  5    did remember something and now I remember from seeing this.
10:59  6    But as I said, I don't deny that I said it.  I very well
10:59  7    probably said it because I believe that to still be true.
10:59  8    Q    Isn't it true that when you met with the government
10:59  9    over 18 months ago, you also told them that you weren't
10:59 10    aware of me ever impersonating anyone else?
10:59 11    A    I don't recall that at all.
10:59 12    Q    But do you dispute it?
10:59 13    A    No.
10:59 14    Q    Isn't it true that you also told the government over 18
10:59 15    months ago that you were not aware of me falsifying or
11:00 16    destroying any documents during the entire time period that
11:00 17    you were working with me at my firm?
11:00 18    A    I don't recall saying it, but I don't recall knowing
11:00 19    that you destroyed documents.
11:00 20    Q    Or falsifying any documents?
11:00 21    A    Or falsifying any documents.
11:00 22    Q    Do you have a recollection of telling the government in
11:00 23    September of 2019 that you were not aware of me ever
11:00 24    engaging in any suspicious conduct during the entire time
11:00 25    period that you worked with me closely at Eagan Avenatti?

| 11:00 | 1 | A | I do remember saying that. |

11:00   1   A    I do remember saying that.

11:00   2   Q    Do you stand behind it?

11:00   3   A    That I do not recall seeing you engage in any

11:00   4   suspicious conduct?

11:00   5   Q    Yes.

11:01   6   A    Yes.

11:01   7   Q    Mr. Colorado, thank you for your candor.

11:01   8           MR. AVENATTI:  Nothing further, Your Honor.

11:01   9           THE COURT:  Redirect.

11:01   10          MR. WYMAN:  Briefly, Your Honor.  Thank you.

11:01   11                   REDIRECT EXAMINATION

11:01   12   BY MR. WYMAN:

11:01   13   Q    Good morning again, Mr. Colorado.

11:01   14   A    Good morning.

11:01   15          MR. WYMAN:  Could you please pull up Exhibit 21,

11:01   16   and if you could blow up the e-mail at the bottom there.

11:01   17   BY MR. WYMAN:

11:01   18   Q    It's on the screen in front of you, if that's easier.

11:01   19   Do you recall the defendant asking you about this e-mail?

11:02   20   A    Yes.

11:02   21   Q    And I believe you discussed how it was on the eve of

11:02   22   trial as well as approaching settlement?

11:02   23   A    Right.

11:02   24   Q    Do you see in his e-mail there how he mentioned the

11:02   25   mediation, settlement, et cetera, and telling you not to

| | | |
|---|---|---|
| 11:02 | 1 | contact Mr. Johnson? |
| 11:02 | 2 | A    Correct. |
| 11:02 | 3 | Q    Do you see any reference to a trial in this e-mail? |
| 11:02 | 4 | A    No reference to trial. |
| 11:02 | 5 | Q    Now, on cross-examination the defendant asked you about |
| 11:02 | 6 | how working long hours during trial was part of what was |
| 11:02 | 7 | required to represent the firm's clients.  Do you remember |
| 11:02 | 8 | that? |
| 11:02 | 9 | A    Yes. |
| 11:02 | 10 | Q    In addition to working long hours, did you believe that |
| 11:02 | 11 | another thing required to represent the firm's clients was |
| 11:02 | 12 | paying them their settlement funds? |
| 11:02 | 13 | MR. AVENATTI:  Objection, Your Honor.  Scope. |
| 11:02 | 14 | THE COURT:  Mr. Wyman. |
| 11:02 | 15 | MR. WYMAN:  The defendant was asking about what |
| 11:03 | 16 | was necessary to represent the clients, Your Honor. |
| 11:03 | 17 | THE COURT:  Overruled. |
| 11:03 | 18 | THE WITNESS:  Yes. |
| 11:03 | 19 | MR. WYMAN:  Thank you. |
| 11:03 | 20 | No further questions. |
| 11:03 | 21 | THE COURT:  Mr. Avenatti. |
| 11:03 | 22 | RECROSS-EXAMINATION |
| 11:03 | 23 | BY MR. AVENATTI: |
| 11:03 | 24 | Q    Mr. Colorado, are you aware of any evidence that |
| 11:03 | 25 | Mr. Johnson did not get the money that he was entitled to? |

11:03  1          MR. WYMAN:  Asked and answered.

11:03  2          THE COURT:  Sustained.

11:03  3  BY MR. AVENATTI:

11:03  4  Q    Mr. Colorado, I want to ask you about the question that

11:03  5  Mr. Wyman just asked you about whether part of our duty was

11:03  6  to make sure that clients got the money they were entitled

11:03  7  to.  Do you have that question in mind, and answer?

11:03  8  A    I do.

11:03  9  Q    Okay.  You told the government 18 months ago that you

11:03  10  were not aware of any suspicious activity that I had engaged

11:03  11  in.  Did that include not being aware of any activity

11:03  12  relating to stiffing clients?

11:04  13          MR. WYMAN:  Asked and answered.  Beyond the scope.

11:04  14          THE COURT:  Overruled.

11:04  15          THE WITNESS:  It included that.

11:04  16  BY MR. AVENATTI:

11:04  17  Q    You were not aware of any such evidence; is that right?

11:04  18          MR. WYMAN:  Asked and answered.

11:04  19          THE COURT:  Sustained.

11:04  20          MR. AVENATTI:  Mr. Colorado, thank you.

11:04  21          THE COURT:  May the witness be excused?

11:04  22          MR. WYMAN:  Yes, Your Honor.

11:04  23          MR. AVENATTI:  Your Honor, we would like him

11:04  24  subject to recall.

11:04  25          THE COURT:  Sir, you are excused for now but you

| | | |
|---|---|---|
| 11:04 | 1 | are subject to recall. |
| 11:04 | 2 | THE WITNESS:  Thank you, Your Honor. |
| 11:04 | 3 | THE COURT:  Thank you. |
| 11:04 | 4 | Would the government call its next witness, |
| 11:04 | 5 | please. |
| 11:04 | 6 | MR. WYMAN:  Thank you, Your Honor. |
| 11:04 | 7 | The United States calls Elsa Guerrero. |
| 11:05 | 8 | ELSA GUERRERO, GOVERNMENT'S WITNESS, SWORN |
| 11:05 | 9 | THE CLERK:  If you will speak directly into the |
| 11:05 | 10 | microphone and state and spell your first and last name. |
| 11:05 | 11 | THE WITNESS:  My name is Elsa Guerrero.  First |
| 11:05 | 12 | name, E-l-s-a.  Last name, G-u-e-r-r-e-r-o. |
| 11:05 | 13 | THE COURT:  Mr. Wyman. |
| 11:05 | 14 | MR. WYMAN:  Thank you, Your Honor. |
| 11:05 | 15 | DIRECT EXAMINATION |
| 11:05 | 16 | BY MR. WYMAN: |
| 11:05 | 17 | Q    Good morning, Ms. Guerrero. |
| 11:05 | 18 | A    Good morning. |
| 11:05 | 19 | Q    Where do you currently work? |
| 11:05 | 20 | A    I work for the Social Security Administration. |
| 11:06 | 21 | Q    What is your title? |
| 11:06 | 22 | A    Management and program support analyst. |
| 11:06 | 23 | Q    How long have you worked for Social Security? |
| 11:06 | 24 | A    Fourteen years. |
| 11:06 | 25 | Q    In 2018 what was your role at the Social Security |

11:06  1    Administration?

11:06  2    A    I was a claims technical expert in the supplemental

11:06  3    security income program.

11:06  4    Q    In that role what were your primary duties and

11:06  5    responsibilities?

11:06  6    A    As a claims technical expert, I would develop,

11:06  7    adjudicate, and authorize some of the most complex cases.

11:06  8    And I also provided training to my colleagues and

11:06  9    performance reviews.

11:06  10   Q    And when you say cases, are you referring to

11:06  11   supplemental security income cases?

11:06  12   A    Yes.  That's correct.

11:06  13   Q    Generally speaking, who receives supplemental security

11:06  14   income, or SSI?

11:06  15   A    SSI is a program for individuals with limited income

11:07  16   and resources and who are also aged, blind, and/or disabled.

11:07  17   Q    How does a person apply for SSI benefits?

11:07  18   A    They contact the Social Security office.  They can

11:07  19   schedule an appointment.  They can go online and apply for

11:07  20   benefits.

11:07  21   Q    And when you apply, what are the required things you

11:07  22   have to show to receive SSI benefits?

11:07  23   A    For SSI you need to prove that you have limited income,

11:07  24   that you have limited resources.  And also we need to know

11:07  25   about your living arrangements.

| | | |
|---|---|---|
| 11:07 | 1 | Q    After someone qualifies for SSI, are there particular |
| 11:07 | 2 | requirements that the person must meet to continue receiving |
| 11:07 | 3 | those benefits? |
| 11:07 | 4 | A    Yes. |
| 11:07 | 5 | Q    Can you give me some examples? |
| 11:07 | 6 | A    An example would be we would make sure that the person |
| 11:08 | 7 | is still eligible for the program.  We would conduct |
| 11:08 | 8 | redeterminations, so we review their non-eligibility |
| 11:08 | 9 | factors.  An example would be income resources under $2,000. |
| 11:08 | 10 | To determine income it's a little bit different, but for |
| 11:08 | 11 | resources it is under $2,000. |
| 11:08 | 12 | Q    And what do you mean by resources?  What goes into that |
| 11:08 | 13 | $2,000 calculation? |
| 11:08 | 14 | A    So resources are if you have more than one property, |
| 11:08 | 15 | that's considered a resource.  Your bank account or bank |
| 11:08 | 16 | accounts.  So depending on the amount of money that you have |
| 11:08 | 17 | in your bank account, that's also resource.  Life insurance |
| 11:08 | 18 | policies.  Those are a few examples. |
| 11:08 | 19 | Q    Now, you mentioned redeterminations for people |
| 11:09 | 20 | receiving SSI.  In 2018 was that redetermination process |
| 11:09 | 21 | part of your responsibility? |
| 11:09 | 22 | A    Yes. |
| 11:09 | 23 | Q    How would you go about initiating a redetermination |
| 11:09 | 24 | process for an individual? |
| 11:09 | 25 | A    We have a system at Social Security where we try to |

11:09   1   select individuals for review.  So the way that we set that

11:09   2   up is we mail a notice to the individual to set up an

11:09   3   appointment for the redetermination.

11:09   4   Q    Are those appointments typically in person or over the

11:09   5   phone or something else?

11:09   6   A    In person or over the phone.

11:09   7   Q    In that initial appointment what kind of questions

11:09   8   would you ask the person?

11:09   9   A    If their address is still correct, if in the past two

11:09   10  years the individual has received any income, any benefits,

11:10   11  money from another person.  We go over their resources and,

11:10   12  as I mentioned, their living arrangement.

11:10   13  Q    What happens if the person or the person's

11:10   14  representative does not follow through with the

11:10   15  redetermination process?

11:10   16  A    Well, if a person does not follow through, then we

11:10   17  provide due process.  And we also, if the person is unable

11:10   18  to provide the information, then at that point we must

11:10   19  suspend benefits.

11:10   20  Q    Does the Social Security Administration maintain

11:10   21  electronic records related to individuals who receive SSI?

11:10   22  A    Yes.

11:10   23  Q    As part of your responsibilities at the Social Security

11:10   24  Administration, do you sometimes review the contents of

11:10   25  those records?

11:10   1   A     Yes.

11:10   2   Q     Generally speaking, what kind of records are kept for

11:11   3   these individuals?

11:11   4   A     Generally speaking, it's maybe copies or documents that

11:11   5   they provide to us such as maybe birth certificates,

11:11   6   passports, or even letters or documents that they provide to

11:11   7   the Social Security Administration.

11:11   8   Q     You mentioned letters.  Are part of those records the

11:11   9   correspondence between the administration and the

11:11   10  individual?

11:11   11  A     Yes.  That's correct.

11:11   12  Q     Are you familiar with a person named Geoffrey Johnson?

11:11   13  A     Yes.

11:11   14  Q     How are you familiar with him?

11:11   15  A     I conducted a redetermination review for his

11:11   16  supplemental security income benefits.

11:11   17  Q     Do you remember approximately when that was?

11:11   18  A     Yes.  It was November 2018.

11:11   19  Q     As part of that redetermination process, did you review

11:12   20  the electronic records related to Mr. Johnson's file?

11:12   21  A     As part of the redetermination, yes.

11:12   22  Q     And approximately when was the last time that you

11:12   23  reviewed Mr. Johnson's records?

11:12   24  A     It was probably two weeks ago.

11:12   25  Q     At the time you last reviewed Mr. Johnson's file, did

| | | |
|---|---|---|
| 11:12 | 1 | it contain any letters, any written correspondence from an |
| 11:12 | 2 | attorney representing Mr. Johnson? |
| 11:12 | 3 | A    Yes. |
| 11:12 | 4 | Q    What was the name of that attorney? |
| 11:12 | 5 | A    Michael Avenatti. |
| 11:12 | 6 | Q    Do you recall approximately when that letter was dated, |
| 11:12 | 7 | or what year? |
| 11:13 | 8 | A    I have two dates in mind, but I don't recall. |
| 11:13 | 9 | Q    Why don't you take a look at what has been marked as |
| 11:13 | 10 | government's Exhibit 70.  It should be in the binder labeled |
| 11:13 | 11 | Volume 1 right behind you. |
| 11:13 | 12 | A    (Witness retrieving document)  Seventy? |
| 11:13 | 13 | Q    Yes, Exhibit 70. |
| 11:13 | 14 | A    Okay. |
| 11:13 | 15 | Q    Do you recognize this document? |
| 11:13 | 16 | A    Yes. |
| 11:13 | 17 | Q    Is this the letter that you are referring to? |
| 11:13 | 18 | A    Yes. |
| 11:13 | 19 | Q    And is this a fair and accurate copy of that letter? |
| 11:13 | 20 | A    Yes. |
| 11:13 | 21 | MR. WYMAN:  Your Honor, the government moves to |
| 11:13 | 22 | admit Exhibit 70. |
| 11:13 | 23 | MR. AVENATTI:  No objection. |
| 11:13 | 24 | THE COURT:  Seventy will be received. |
| 11:13 | 25 | (Exhibit 70 received in evidence) |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:13 | 1 | BY MR. WYMAN: |
| 11:14 | 2 | Q    What is the date of this letter? |
| 11:14 | 3 | A    April 2016, April 13, 2016. |
| 11:14 | 4 | Q    And who is it addressed to? |
| 11:14 | 5 | A    To Social Security Administration, Ms. Warner. |
| 11:14 | 6 | Q    Based on your review of Mr. Johnson's file, did you |
| 11:14 | 7 | understand that this letter related to Mr. Johnson's SSI |
| 11:14 | 8 | benefits? |
| 11:14 | 9 | A    Yes. |
| 11:14 | 10 | Q    Can you please read the second paragraph aloud. |
| 11:14 | 11 | A    "From February 2014 to present, this law firm has been |
| 11:14 | 12 | advancing Mr. Johnson approximately $1,250 a month.  As of |
| 11:14 | 13 | this time, the Court has not entered an award letter to |
| 11:14 | 14 | Mr. Johnson." |
| 11:14 | 15 | Q    And then if you could please read the last paragraph. |
| 11:15 | 16 | A    "Please do not hesitate to contact me if you have any |
| 11:15 | 17 | questions or concerns regarding Mr. Johnson.  All further |
| 11:15 | 18 | inquiries should be directed to my attention." |
| 11:15 | 19 | MR. WYMAN:  If you could blow up the signature |
| 11:15 | 20 | there. |
| 11:15 | 21 | BY MR. WYMAN: |
| 11:15 | 22 | Q    Who is it signed by? |
| 11:15 | 23 | A    Michael Avenatti. |
| 11:15 | 24 | Q    I want to turn now to the redetermination process that |
| 11:15 | 25 | you initiated in November 2018 for Mr. Johnson. |

83

| | | |
|---|---|---|
| 11:15 | 1 | I think that you said that you begin an initiation |
| 11:15 | 2 | process by sending out a notice; is that right? |
| 11:15 | 3 | A    Yes. |
| 11:15 | 4 | Q    Did you do that with Mr. Johnson? |
| 11:15 | 5 | A    Yes. |
| 11:15 | 6 | Q    Could you please take a look at Exhibit 108. |
| 11:15 | 7 | A    It might be in the second volume? |
| 11:15 | 8 | MR. WYMAN:  This is already in evidence.  If you |
| 11:15 | 9 | could please pull it up on the screen. |
| 11:16 | 10 | THE WITNESS:  Should I look at the screen or -- |
| 11:16 | 11 | MR. WYMAN:  Whatever is easier. |
| 11:16 | 12 | If you can blow up the first paragraph there. |
| 11:16 | 13 | BY MR. WYMAN: |
| 11:16 | 14 | Q    Well, maybe it would be easier if you took a look at |
| 11:16 | 15 | the document first just to confirm that this is the letter |
| 11:16 | 16 | you sent to Mr. Johnson. |
| 11:16 | 17 | A    Okay. |
| 11:16 | 18 | Q    Is this the letter you sent Mr. Johnson in |
| 11:16 | 19 | November 2018? |
| 11:16 | 20 | A    Yes. |
| 11:16 | 21 | MR. WYMAN:  If you could please pull up the first |
| 11:16 | 22 | paragraph. |
| 11:16 | 23 | BY MR. WYMAN: |
| 11:16 | 24 | Q    Could you please read the first paragraph to the jury. |
| 11:16 | 25 | A    "On November 1st, 2018, we talked with you and |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:17    1   completed your redetermination for supplemental security
11:17    2   income.  We have stored your redetermination electronically
11:17    3   in our records.  Attached is a summary of your statements
11:17    4   for your review."
11:17    5   Q    And your records indicate a November 1st, 2018,
11:17    6   conversation.  Do you recall speaking to Mr. Johnson at that
11:17    7   time?
11:17    8   A    Yes, I do.
11:17    9   Q    Was that conversation over the phone or in person?
11:17   10   A    Over the phone.
11:17   11   Q    Do you recall what you discussed with Mr. Johnson?
11:17   12   A    We discussed his nonmedical eligibility factors for the
11:17   13   supplemental security income program.
11:17   14   Q    And did you tell him that you would be asking for
11:17   15   particular documents?
11:17   16   A    After the review was completed, yes.
11:17   17   Q    When you say the review, are you referring to the phone
11:17   18   call?
11:17   19   A    To the phone call, the redetermination.
11:18   20   Q    Did Mr. Johnson say anything to you about a settlement
11:18   21   with the County of Los Angeles?
11:18   22   A    Yes, he did.
11:18   23   Q    What did he say?
11:18   24   A    He mentioned that he received a settlement and was --
11:18   25   that he received a settlement from the L.A. County.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:18   1   Q    And did he say how he was getting paid from that
11:18   2   settlement?
11:18   3   A    Yes, he did.
11:18   4   Q    And how did he say he was getting paid from that
11:18   5   settlement?
11:18   6   A    He would receive monthly payments from his attorney.
11:19   7   Q    Do you recall whether he said anything about receiving
11:19   8   quarterly payments from the County?
11:19   9   A    Yes.
11:19  10   Q    Did he say that as well?
11:19  11   A    Yes, he did.
11:19  12   Q    And you mentioned monthly payments from his attorney.
11:19  13   What did you understand those payments to be?
11:19  14   A    From what Mr. Johnson mentioned, he mentioned that they
11:19  15   were a loan from his attorney because he would receive
11:19  16   quarterly statements from the L.A. County settlement.  So
11:19  17   because he needed that money for his living arrangements or
11:19  18   expenses, he mentioned that Mr. Avenatti would loan him the
11:19  19   money and therefore Mr. Avenatti would reimburse himself
11:19  20   once L.A. County disbursed the quarterly payments.
11:19  21   Q    Did he say anything about a trust?
11:19  22   A    Mr. Johnson?  Yes.
11:19  23   Q    What did he say about a trust?
11:20  24   A    He mentioned that he was not sure if Mr. Avenatti
11:20  25   established a special-needs trust.

11:20    1    Q    And this was November of 2018?

11:20    2    A    Yes.

11:20    3    Q    Would you please look at page 2 on this exhibit.  Do

11:20    4    you see at the top there it says:  "Things we need"?

11:20    5    A    Yes.

11:20    6    Q    And then below that there are several bullet points.

11:20    7    Could you please read those.

11:20    8    A    Yes.  "New rental agreement, court settlement award

11:20    9    letter from L.A. County, disbursements from settlement since

11:20   10    October 2016 through present, verification that trust has or

11:20   11    has not been established, letter from attorney about monthly

11:20   12    loan amount from October 2016 through present."

11:20   13    Q    Let's start with the second bullet point.  Based upon

11:20   14    the context of your conversation with Mr. Johnson prior to

11:21   15    this letter, what did you mean by court settlement award

11:21   16    letter?

11:21   17    A    So Mr. Johnson mentioned that his settlement was -- he

11:21   18    should have received -- or it was settled.  The Court --

11:21   19    whatever litigation he had with L.A. County was settled.  So

11:21   20    we needed proof of that, so that's why we requested or I

11:21   21    requested an award letter from L.A. County.  So the award --

11:21   22    meaning how he will be receiving the payments.

11:21   23    Q    And the next bullet point says:  "Disbursements from

11:21   24    settlement since October 2016 through to present."  What did

11:21   25    you mean by that?

11:21  1   A    Well, because Mr. Johnson mentioned that he received

11:21  2   quarterly disbursements from L.A. County, I needed to know

11:21  3   about those disbursements.

11:21  4   Q    And then the next one says:  "Verification that trust

11:22  5   has or has not been established."  Is that the reference to

11:22  6   the special-needs trust that you mentioned a minute ago?

11:22  7   A    That is correct.

11:22  8   Q    And then lastly you asked for a letter from attorney

11:22  9   about monthly loan amounts.  Is that the loans that you're

11:22  10  referring to that you discussed on the call?

11:22  11  A    Yes.

11:22  12  Q    After this list, the letter says:  "If we do not hear

11:22  13  from you" -- do you see that?

11:22  14  A    Yes.

11:22  15  Q    What does it say there?

11:22  16  A    "We may stop your SSI if you do not respond to this

11:22  17  request or contact us by December 3rd, 2018, to tell us why.

11:22  18  If we stop your SSI, you could also lose any Medicaid based

11:22  19  on SSI you have now."

11:22  20  Q    And then just below that -- let's go to the next

11:22  21  paragraph, please -- it lists a Ms. Guerrero as the contact.

11:23  22  Is that you?

11:23  23  A    Yes.

11:23  24  Q    After you sent this letter to Mr. Johnson, did you

11:23  25  receive a call from him?

11:23    1    A    Yes.

11:23    2    Q    When was that?

11:23    3    A    December 2018.

11:23    4    Q    What did he say on that call?

11:23    5    A    He requested more time to submit the information that I

11:23    6    was requesting.

11:23    7    Q    And did you give him an extension?

11:23    8    A    Yes, I did.

11:23    9    Q    Did you ever receive a phone call from the defendant,

11:23    10   Michael Avenatti?

11:23    11   A    No, I did not.

11:23    12   Q    How about an e-mail?

11:23    13   A    No.

11:23    14   Q    Did you receive any contact at all from the defendant?

11:23    15   A    No.

11:23    16   Q    How long was the extension you gave him?

11:23    17   A    I believe it was 60 days.

11:23    18   Q    And did you receive the documents that you requested by

11:23    19   that deadline?

11:23    20   A    No.

11:23    21   Q    Because you did not receive the documents, what did you

11:24    22   do?

11:24    23   A    Suspended his supplemental security income benefits.

11:24    24        MR. WYMAN:  One moment, Your Honor.

11:24    25        (Government counsel conferring)

89

11:24  1              MR. WYMAN:  Nothing further.  Thank you.

11:24  2              THE WITNESS:  Thank you.

11:24  3              THE COURT:  Mr. Avenatti.

11:24  4              MR. AVENATTI:  Thank you, Your Honor.

11:24  5                        CROSS-EXAMINATION

11:24  6   BY MR. AVENATTI:

11:24  7   Q    Good morning.

11:24  8   A    Good morning.

11:25  9   Q    Ms. Guerrero, what did you do to prepare to testify

11:25  10  here today?

11:25  11  A    Maybe reviewed my responsibilities as a management

11:25  12  analyst and claims technical expert.

11:25  13  Q    And you've met with the government on a number of

11:25  14  occasions over the last month, fair?

11:25  15  A    Fair.

11:25  16  Q    How many times have you met with the government in

11:25  17  preparation for your testimony here today?

11:25  18  A    Twice.

11:25  19  Q    You met with the government on July 7th and then on

11:25  20  July 9th, right?

11:25  21  A    Correct.

11:25  22  Q    And when you met with the government, you were present

11:25  23  as well as a gentleman by the name of Joseph Pollack.  Who

11:25  24  is that?

11:25  25  A    He is my acting team leader.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:26 | 1 | Q    At the Social Security Administration? |
| 11:26 | 2 | A    Yes. |
| 11:26 | 3 | Q    And then you had an attorney with you? |
| 11:26 | 4 | A    On the second phone call. |
| 11:26 | 5 | Q    So they were both phone calls as opposed to meetings? |
| 11:26 | 6 | A    The first interview or meeting was over the phone, and |
| 11:26 | 7 | then the second was a video conference. |
| 11:26 | 8 | Q    And the second time you had an attorney with you? |
| 11:26 | 9 | A    Yes. |
| 11:26 | 10 | Q    Whose idea was it to have an attorney present at the |
| 11:26 | 11 | second meeting? |
| 11:26 | 12 | MR. WYMAN:  Objection.  Relevance. |
| 11:26 | 13 | THE COURT:  Overruled. |
| 11:26 | 14 | THE WITNESS:  By Mr. Wyman. |
| 11:26 | 15 | BY MR. AVENATTI: |
| 11:26 | 16 | Q    Mr. Wyman? |
| 11:26 | 17 | A    Yes. |
| 11:26 | 18 | Q    Mr. Wyman suggested that you have an attorney present |
| 11:26 | 19 | for the second meeting? |
| 11:26 | 20 | A    Yes. |
| 11:26 | 21 | Q    And did he tell you why he thought that was a good |
| 11:27 | 22 | idea? |
| 11:27 | 23 | A    It was because of our privacy act.  It was |
| 11:27 | 24 | unproductive -- the first interview was unproductive because |
| 11:27 | 25 | I was unsure of what I could disclose. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:27 | 1 | Q    And during these meetings or telephone conferences, |
| 11:27 | 2 | Mr. Roberson was present, right, Ryan Roberson seated right |
| 11:27 | 3 | here to the left with Mr. Kim? |
| 11:27 | 4 | A    Yes, I believe so. |
| 11:27 | 5 | Q    And Mr. Kim was present as well, right? |
| 11:27 | 6 | A    I do not recall if Mr. Kim was present. |
| 11:27 | 7 | Q    Okay.  You don't remember one way or the other? |
| 11:27 | 8 | A    No. |
| 11:27 | 9 | Q    All right.  Do you recognize Special Agent Carlos |
| 11:27 | 10 | seated to my immediate left? |
| 11:27 | 11 | A    I have not met him face to face. |
| 11:27 | 12 | Q    Have you spoken to him on the phone? |
| 11:27 | 13 | A    Not -- he was on the second video conference. |
| 11:27 | 14 | Q    Fair enough.  And then Mr. Wyman and Mr. Sagel, right? |
| 11:28 | 15 | A    Yes. |
| 11:28 | 16 | Q    In connection with these telephone conferences that you |
| 11:28 | 17 | had with the government, did you review your file relating |
| 11:28 | 18 | to Mr. Johnson? |
| 11:28 | 19 | A    Yes. |
| 11:28 | 20 | Q    Did you review it thoroughly? |
| 11:28 | 21 | A    Not thoroughly. |
| 11:28 | 22 | Q    Well, did you review it to the extent that you felt |
| 11:28 | 23 | comfortable coming to court today and testifying in this |
| 11:28 | 24 | case? |
| 11:28 | 25 | A    Yes. |

| 11:28 | 1 | Q    And do you recall that Mr. Johnson made his initial |
| 11:28 | 2 | application for SSI benefits on or about February 28th of |
| 11:28 | 3 | 2012? |
| 11:28 | 4 | A    I do not recall. |
| 11:29 | 5 |         MR. AVENATTI:  Your Honor, may I approach? |
| 11:29 | 6 |         THE COURT:  You may. |
| 11:29 | 7 | BY MR. AVENATTI: |
| 11:29 | 8 | Q    Ms. Guerrero, do you have the document that I've placed |
| 11:29 | 9 | before you? |
| 11:29 | 10 | A    Yes. |
| 11:29 | 11 | Q    This is just a yes or no question.  Do you recognize |
| 11:29 | 12 | generally the form of this document? |
| 11:29 | 13 | A    Yes. |
| 11:29 | 14 | Q    I would like to direct your attention to the bottom of |
| 11:29 | 15 | the page and ask you if that refreshes your recollection as |
| 11:29 | 16 | to when Mr. Johnson initially applied for benefits. |
| 11:30 | 17 | A    Yes. |
| 11:30 | 18 | Q    February 28, 2012, correct? |
| 11:30 | 19 | A    Correct. |
| 11:30 | 20 | Q    And in reliance on his initial application for |
| 11:30 | 21 | benefits, what did he tell your department? |
| 11:30 | 22 |         MR. WYMAN:  Objection.  Relevance.  Also hearsay. |
| 11:30 | 23 |         THE COURT:  It will be received but not for the |
| 11:30 | 24 | truth. |
| 11:30 | 25 |         THE WITNESS:  Can you repeat the question? |

| | | |
|---|---|---|
| 11:30 | 1 | BY MR. AVENATTI: |
| 11:30 | 2 | Q    In connection with his initial claim to get benefits, |
| 11:30 | 3 | what did he tell your department? |
| 11:30 | 4 | A    I do not take the initial application, so I cannot say. |
| 11:30 | 5 | Q    Well, if you look at the bottom of the document I |
| 11:30 | 6 | placed before you -- let me ask you this question.  Isn't it |
| 11:30 | 7 | true that when Mr. Johnson initially applied for SSI |
| 11:30 | 8 | benefits, he informed your department -- |
| 11:30 | 9 | MR. WYMAN:  Objection.  Foundation and 403. |
| 11:30 | 10 | THE COURT:  State the full question first, please. |
| 11:30 | 11 | MR. AVENATTI:  Thank you. |
| 11:30 | 12 | MR. WYMAN:  He's going to read the document, Your |
| 11:30 | 13 | Honor. |
| 11:31 | 14 | MR. AVENATTI:  Let me ask my question, please. |
| 11:31 | 15 | BY MR. AVENATTI: |
| 11:31 | 16 | Q    Ms. Guerrero, let me ask some foundational questions. |
| 11:31 | 17 | Ms. Guerrero, under direct examination from |
| 11:31 | 18 | Mr. Wyman, you were asked whether you were familiar with |
| 11:31 | 19 | Mr. Johnson's application and his attempts to get SSI |
| 11:31 | 20 | benefits. |
| 11:31 | 21 | MR. WYMAN:  Objection.  Misstates the testimony. |
| 11:31 | 22 | THE COURT:  Overruled. |
| 11:31 | 23 | BY MR. AVENATTI: |
| 11:31 | 24 | Q    Correct? |
| 11:31 | 25 | A    Can you repeat the question?  I'm sorry. |

11:31    1    Q    Sure.  On direct examination from Mr. Wyman, you were

11:31    2    asked whether you were familiar with a claimant by the name

11:31    3    of Geoff Johnson, right?

11:31    4    A    Yes.

11:31    5    Q    Okay.  And you were asked whether you were familiar

11:31    6    with Mr. Johnson's efforts to get SSI benefits, right?

11:31    7    A    Yes.

11:31    8    Q    And you answered that you were familiar with those

11:31    9    efforts, right?  I'm not trying to trick you.  I'm just

11:31   10    asking a foundational question.

11:31   11    A    Yes.

11:32   12    Q    Okay.  And one of the reasons why you are familiar with

11:32   13    that is because you had communications with Mr. Johnson,

11:32   14    correct?

11:32   15    A    Correct.

11:32   16    Q    And another reason why you are familiar with that is

11:32   17    because you reviewed documents in preparation for testifying

11:32   18    here today, correct?

11:32   19    A    Certain documents, yes.

11:32   20    Q    Okay.  So let me direct your attention back to the

11:32   21    document that I put in front of you.  My question is this:

11:32   22    Isn't it true that when Mr. Johnson initially applied to get

11:32   23    SSI benefits back in February 28, 2012, he asked for SSI

11:32   24    benefits due to the fact that he was a paraplegic, was

11:32   25    suffering mental illness, and depression?

11:32  1          MR. WYMAN:  I renew my objection, Your Honor, 403

11:32  2  and lack of foundation.

11:32  3          THE COURT:  Overruled.

11:32  4          THE WITNESS:  Those are his allegations to his

11:32  5  disabilities.

11:32  6  BY MR. AVENATTI:

11:32  7  Q    That's what he told your department back on

11:33  8  February 28th, 2012, right?

11:33  9  A    Yes.

11:33  10  Q    Okay.  And based on those claims, he was ultimately

11:33  11  given SSI benefits, right?

11:33  12  A    Not based on claims.  It's a little bit more --

11:33  13  Q    Based on what Mr. Johnson told your department and the

11:33  14  department's determination based on what he told your

11:33  15  department, he was given benefits, fair?

11:33  16  A    Fair.

11:33  17  Q    Yes.  Are you aware of any involvement that me or my

11:33  18  law firm had whatsoever in getting Mr. Johnson his initial

11:33  19  benefits?

11:33  20  A    I am not aware.

11:33  21  Q    Now, over the course of being involved with

11:33  22  Mr. Johnson's case, have you engaged in written

11:34  23  communications with people other than Mr. Johnson, like

11:34  24  colleagues?

11:34  25  A    No.

11:34  1    Q     Have you sent any e-mails or text messages to other

11:34  2    people you work with in connection with Mr. Johnson's case

11:34  3    or your testimony here today?

11:34  4    A     Only the office of the general counsel at Social

11:34  5    Security Administration.

11:34  6    Q     Now, I believe in response to some questions from

11:34  7    Mr. Wyman, you answered relating to Mr. Johnson's

11:34  8    redetermination process.  Do you remember that?

11:34  9    A     Yes.

11:34  10   Q     And the first document that Mr. Wyman asked you about

11:34  11   as it related to that topic was Exhibit 108.  Can you go

11:34  12   back to 108, please?

11:34  13   A     Okay.

11:35  14   Q     Can we go to the second page, please, the paragraph at

11:35  15   the bottom, the very bottom, please.  There we go.

11:35  16             Joe, if you wouldn't mind blowing up the enclosure

11:35  17   box.

11:35  18             Ms. Guerrero, can you see that?

11:35  19   A     Yes.

11:35  20   Q     Okay.  Now, in 108 in your binder, there are only two

11:35  21   pages; is that right?

11:35  22   A     Yes.

11:35  23   Q     Okay.  That's not everything you sent to Mr. Johnson;

11:35  24   is it?

11:36  25   A     No.

| | | |
|---|---|---|
| 11:36 | 1 | Q    And you told the government that when you met with |
| 11:36 | 2 | them, right?  You made that clear to them that this |
| 11:36 | 3 | redetermination document included a summary? |
| 11:36 | 4 | A    Yes. |
| 11:36 | 5 | Q    You told them that in the first meeting before you had |
| 11:36 | 6 | the second meeting? |
| 11:36 | 7 | A    Not the first meeting. |
| 11:36 | 8 | Q    When did you tell the agents and the government that |
| 11:36 | 9 | 108 was not a complete document? |
| 11:36 | 10 | A    I didn't say it wasn't a complete document.  I just |
| 11:36 | 11 | said that Mr. Johnson received the redetermination summary. |
| 11:36 | 12 | Q    Where is the redetermination summary? |
| 11:36 | 13 | A    Are you asking me?  It's -- Mr. Johnson could possibly |
| 11:36 | 14 | have it, and our agency has a record of it. |
| 11:37 | 15 | Q    Neither Mr. Wyman nor Mr. Sagel nor Mr. Carlos nor |
| 11:37 | 16 | Mr. Kim nor Mr. Roberson ever gave you that document to |
| 11:37 | 17 | review before you took the stand here today; did they? |
| 11:37 | 18 | A    Correct. |
| 11:37 | 19 | Q    Do you recall exactly what that says? |
| 11:37 | 20 | A    The redetermination summary? |
| 11:37 | 21 | Q    Yes.  Exactly do you recall what that says? |
| 11:37 | 22 | A    The redetermination summary? |
| 11:37 | 23 | Q    Yes.  Exactly do you recall what it says? |
| 11:37 | 24 | A    Exactly, no. |
| 11:37 | 25 | Q    Okay. |

| | | |
|---|---|---|
| 11:37 | 1 | MR. AVENATTI:  Your Honor, may I approach? |
| 11:37 | 2 | THE COURT:  You may. |
| 11:37 | 3 | (Exhibit 1005 marked for identification) |
| 11:37 | 4 | BY MR. AVENATTI: |
| 11:37 | 5 | Q    Ms. Guerrero, I have handed you what we have marked for |
| 11:38 | 6 | identification purposes as Exhibit 1005.  Do you have that |
| 11:38 | 7 | there? |
| 11:38 | 8 | A    Yes. |
| 11:38 | 9 | Q    My question is:  Is this the redetermination summary |
| 11:38 | 10 | that is missing from document 108? |
| 11:39 | 11 | A    Yes.  This is a redetermination summary. |
| 11:39 | 12 | Q    From November 1st, 2008; am I right? |
| 11:39 | 13 | A    2018. |
| 11:39 | 14 | Q    2018, yes.  I misspoke.  So this is basically the |
| 11:39 | 15 | document that was included with the letter that we saw at |
| 11:39 | 16 | 108? |
| 11:39 | 17 | A    That's correct. |
| 11:39 | 18 | Q    Based on your experience, what is a better source of |
| 11:39 | 19 | evidence as to what Mr. Johnson told your department around |
| 11:40 | 20 | November 1, 2018?  This document or your recollection? |
| 11:40 | 21 | MR. WYMAN:  Objection.  Calls for speculation. |
| 11:40 | 22 | THE COURT:  Overruled. |
| 11:40 | 23 | THE WITNESS:  Can you repeat the question? |
| 11:40 | 24 | BY MR. AVENATTI: |
| 11:40 | 25 | Q    Sure.  Based on your experience, what is better |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:40   1   evidence of what Mr. Johnson exactly told your department in

11:40   2   November 2018 relating to his benefits?  Your recollection

11:40   3   or this document?

11:40   4   A     The redetermination summary, the document.

11:40   5   Q     And why is that?

11:40   6   A     Because that is the day that I spoke to him and sent

11:40   7   him the letter, the redetermination summary.  So it has the

11:40   8   information that he provided to me that day.

11:40   9   Q     So, for instance, if we go to page 6, it has

11:41   10   typewritten remarks.  Do you see that?

11:41   11   A     Yes.

11:41   12   Q     And those are your remarks that you made

11:41   13   contemporaneous with speaking with Mr. Johnson, right?

11:41   14   A     Yes.

11:41   15   Q     Now, under the remarks there is an entry for March 14th

11:41   16   and November 1st.  Do you see that?

11:41   17   A     Yes.

11:41   18   Q     Did you type both sets of those remarks or only those

11:41   19   for 11/1/18?

11:41   20   A     Only those for November 1, '18.

11:41   21   Q     And on that date this is what Mr. Johnson told you.  He

11:41   22   told you that his case was settled with L.A. County and that

11:41   23   he receives a quarterly payment from the settlement; didn't

11:41   24   he?

11:41   25   A     Yes.

| | | |
|---|---|---|
| 11:41 | 1 | Q    He told you that he will receive this payment for ten |
| 11:41 | 2 | years? |
| 11:41 | 3 | A    Correct. |
| 11:42 | 4 | Q    He also said:  "I need monthly income.  Therefore, my |
| 11:42 | 5 | attorney provides a monthly loan amount, and he is |
| 11:42 | 6 | reimbursed when I receive the quarterly payments from the |
| 11:42 | 7 | L.A. County settlement"; didn't he? |
| 11:42 | 8 | A    Yes. |
| 11:42 | 9 | Q    He said:  "I believe the quarterly payments are |
| 11:42 | 10 | deposited into my attorney's account"; is that right? |
| 11:42 | 11 | A    Yes.  That's what he said. |
| 11:42 | 12 | Q    Then he expressed some skepticism as to whether the |
| 11:42 | 13 | case had been settled because of the letter that I had |
| 11:42 | 14 | submitted to SSA back in 2016; is that right? |
| 11:42 | 15 | A    Yes. |
| 11:42 | 16 | Q    Okay.  Now, when you sent out this summary, it included |
| 11:42 | 17 | other entries relating to what Mr. Johnson had told your |
| 11:42 | 18 | department, right? |
| 11:42 | 19 | A    Yes. |
| 11:42 | 20 | Q    Over the years? |
| 11:42 | 21 | A    Yes. |
| 11:42 | 22 | Q    And why is that?  How does that work?  Can you explain |
| 11:42 | 23 | it to the jury? |
| 11:43 | 24 | A    I cannot explain why it has information from 2016 other |
| 11:43 | 25 | than for November 2018. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:43   1    Q    But you see in the document here there's other entries
11:43   2    for 2012, 2014, other years.  Do you see that?
11:43   3    A    Yes.
11:43   4    Q    And that's commonplace?
11:43   5    A    Yes.
11:43   6    Q    That's how your department maintains their records,
11:43   7    right?
11:43   8    A    Correct.
11:43   9    Q    And what it does is it enables someone like you who
11:43   10   speaks with Mr. Johnson in November 2018 to go back and
11:43   11   review what Mr. Johnson told your department previously?
11:43   12   A    That is correct.
11:43   13   Q    In your experience when someone such as yourself speaks
11:43   14   with a claimant like Mr. Johnson by telephone, do you inform
11:43   15   them that their statements are under penalty of perjury?
11:43   16   A    Yes.
11:43   17   Q    Why do you tell them that?
11:43   18   A    To make sure that they are as truthful as they possibly
11:44   19   can be.  They are under penalty of perjury.  This is their
11:44   20   statement to a government agency.
11:44   21   Q    You expect them to tell you the truth, right?
11:44   22   A    Correct.
11:44   23   Q    Under the same penalty that you and other witnesses are
11:44   24   under, right?
11:44   25   A    Correct.
```

11:44   1   Q    Okay.  Now, I would like to direct your attention to

11:44   2   page 2 of the document.

11:44   3              MR. WYMAN:  Your Honor, I'm sorry.  Is the defense

11:44   4   offering this as an exhibit, or is this impeachment?

11:44   5              THE COURT:  Mr. Avenatti.

11:44   6              MR. AVENATTI:  I'm just asking questions at this

11:44   7   point, Your Honor.

11:44   8              MR. WYMAN:  He is asking her to essentially read

11:44   9   the document.

11:44  10              MR. AVENATTI:  I haven't asked her anything other

11:44  11   than to turn to page 2.

11:44  12              THE COURT:  Proceed.

11:44  13              MR. AVENATTI:  Thank you.

11:44  14   BY MR. AVENATTI:

11:44  15   Q    Ms. Guerrero, when you spoke with Mr. Johnson in

11:44  16   November of 2018, you would have reviewed his prior comments

11:45  17   in connection with your interview of him, right?

11:45  18   A    Not all.

11:45  19   Q    Not all, but you had them at your fingertips in the

11:45  20   system, right?

11:45  21   A    They are in the system, yes.

11:45  22   Q    And is it your custom and practice to look over a

11:45  23   claimant's prior statements in connection with a

11:45  24   redetermination?

11:45  25   A    No.  Only if it's necessary.

| 11:45 | 1 | Q    Okay.  But you don't doubt that these comments were in |
| 11:45 | 2 | the system? |
| 11:45 | 3 | A    With this exhibit that you are showing me? |
| 11:45 | 4 | Q    Yes. |
| 11:45 | 5 | A    No, I do not doubt it. |
| 11:45 | 6 | Q    Because this was actually the document that was sent to |
| 11:45 | 7 | Mr. Johnson in connection with 108.  We already established |
| 11:45 | 8 | that. |
| 11:45 | 9 | A    Yes. |
| 11:45 | 10 | Q    Okay.  Now, in looking at this document, can you |
| 11:46 | 11 | determine what Mr. Johnson stated under penalty of perjury |
| 11:46 | 12 | on May 30th, 2014, relating to whether he was getting any |
| 11:46 | 13 | help or money from any person not living with him? |
| 11:46 | 14 | MR. WYMAN:  Again, Your Honor, he is asking her to |
| 11:46 | 15 | read from a document not in evidence. |
| 11:46 | 16 | THE COURT:  Overruled. |
| 11:46 | 17 | THE WITNESS:  Can you repeat the question again? |
| 11:46 | 18 | BY MR. AVENATTI: |
| 11:46 | 19 | Q    Sure.  If you look at page 2 under the heading May 30, |
| 11:46 | 20 | 2014, can you tell what Mr. Johnson told your department |
| 11:46 | 21 | under penalty of perjury as it related to whether he was |
| 11:46 | 22 | getting any help or money from any person not living with |
| 11:46 | 23 | him? |
| 11:46 | 24 | A    So according to this document, on May 30th, 2014:  "I |
| 11:46 | 25 | did not get help or money from any person not living with me |

11:46 1   or any agency to pay for food, rent, mortgage payment,

11:47 2   property insurance, property taxes, heating fuel, gas,

11:47 3   electricity, garbage removal, water, or sewage."

11:47 4   Q    And he also informed your department under penalty of

11:47 5   perjury:  "I did not need help in personal care, hygiene, or

11:47 6   upkeep of a home," correct?

11:47 7   A    Correct.

11:47 8   Q    Now, if Mr. Johnson was receiving money from me or my

11:47 9   law firm, that statement would not be true; would it?

11:47 10   A    Not necessarily.  It applies to his living arrangement.

11:47 11   So if we want to view his income that he received, we would

11:47 12   go to the income page.

11:47 13   Q    Mr. Guerrero, Mr. Johnson told your department that he

11:47 14   was not getting help or money from any person not living

11:47 15   with him or any agency to pay for food, rent, mortgage

11:47 16   payments, property insurance, property taxes, heating fuel,

11:48 17   gas, electricity, garbage removal, water, or sewage,

11:48 18   correct?  That's what it says?

11:48 19   A    That is what the document states.

11:48 20   Q    That's my question.  That's what it says.  If he was

11:48 21   getting money from any person not living with him for those

11:48 22   items, that's something that your department would want to

11:48 23   know, right?

11:48 24         MR. WYMAN:  Objection.  Asked and answered.

11:48 25   Relevance.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:48    1              THE COURT:  Sustained.

11:48    2    BY MR. AVENATTI:

11:48    3    Q    Go to October 14th, 2014.

11:48    4    A    Okay.

11:48    5    Q    The department had another call with Mr. Johnson under

11:48    6    penalty of perjury; did you not?

11:48    7    A    Yes.

11:48    8    Q    He made the same representation, correct?

11:48    9    A    Correct.

11:48   10    Q    On May 27, 2015, did the department have another call

11:48   11    under penalty of perjury with Mr. Johnson?

11:48   12    A    Yes.

11:48   13    Q    He made the same representation, correct?

11:49   14    A    Correct.

11:49   15    Q    On May 30th, 2015, Mr. Johnson had another call under

11:49   16    penalty of perjury with the department, correct?

11:49   17    A    Correct.

11:49   18    Q    He made the same representation; am I right?

11:49   19    A    Yes.

11:49   20    Q    By the way, are these calls recorded, like audio

11:49   21    recorded?

11:49   22    A    No.

11:49   23    Q    On July 9th, 2015, the department had another call

11:49   24    under penalty of perjury with Mr. Johnson; am I right?

11:49   25    A    Correct.

                 SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 11:49 | 1 | Q | He made the same representation, correct? |

11:49  1  Q    He made the same representation, correct?

11:49  2  A    Correct.

11:49  3  Q    On March 2nd, 2016, the department had another call

11:49  4  with Mr. Johnson under penalty of perjury, right?

11:49  5  A    Yes.

11:49  6  Q    He made the same representation, correct?

11:49  7  A    Yes.

11:50  8  Q    On November 2nd, 2017, the department had another call

11:50  9  under penalty of perjury with Mr. Johnson.  He made the same

11:50  10  representation, correct?

11:50  11  A    Correct.  I'm sorry.  I misspoke.  November 2nd, 2017?

11:50  12  Q    Yes, bottom of page 4.

11:50  13  A    Here it's stated differently.

11:50  14  Q    Well, on November 2nd, 2017, he said:  "I do not get

11:50  15  help or money from any person not living with me or any

11:50  16  agency to pay for food, rent, mortgage payments, property

11:50  17  insurance, property taxes, heating fuel, gas, electricity,

11:50  18  garbage removal, water, or sewage."

11:51  19  A    Yes.  But on the following page it states differently

11:51  20  from what was previously stated.

11:51  21  Q    Well, on the following page it has got a date about a

11:51  22  year later.  You see there is a year difference, 11/1/18

11:51  23  versus November of '17.

11:51  24  A    No.  So that -- on the beginning of the page it applies

11:51  25  to November 2nd, 2017.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 11:51 | 1 | Q    Correct. |

11:51   1   Q    Correct.

11:51   2   A    Yes.  So that's for 2017.

11:51   3   Q    Right.

11:51   4   A    So there's other language there that's not the same as

11:51   5   the previous statement.

11:51   6   Q    Okay.  And then on November 1st of 2018, there is a

11:51   7   statement on page 5.  Do you see that?

11:51   8   A    Yes.

11:51   9   Q    "I am able to pay for my monthly expenses with the

11:51   10   quarterly income I receive from a court settlement"; is that

11:51   11   right?

11:51   12   A    Yes.

11:52   13          MR. AVENATTI:  Your Honor, may I approach?

11:52   14          THE COURT:  You may.

11:52   15          (Exhibit 1006 marked for identification)

11:52   16   BY MR. AVENATTI:

11:53   17   Q    Ms. Guerrero, I am handing you a document we have

11:53   18   marked as defense Exhibit 1006.  Do you have that in front

11:53   19   of you?

11:53   20   A    Yes.

11:53   21   Q    Now, during your prep sessions with the government, you

11:53   22   referenced some documents that you did not have with you; is

11:53   23   that right?

11:53   24   A    During the meeting?  During the meetings?  I wouldn't

11:53   25   call them prep sessions.  But during the meetings?

11:53   1   Q    Well, directing your attention to the first page, who

11:53   2   is Roya -- and the last name, I'm going to spell it --

11:53   3   M-a-s-s-o-u-m-i?

11:53   4   A    She is the regional counsel with the Office of the

11:54   5   Regional Chief Counsel.

11:54   6   Q    Okay.  And did you understand that after your telephone

11:54   7   conferences with the government, that she sent to Mr. Wyman

11:54   8   some documents?

11:54   9   A    Yes, I am aware.

11:54   10  Q    You are aware of that?

11:54   11  A    Yes.

11:54   12  Q    Okay.  And are you aware that she sent to Mr. Wyman,

11:54   13  among other documents, the very summary that we were just

11:54   14  talking about?

11:54   15  A    I am not aware of that.  I am not aware of the

11:54   16  documents that were sent.

11:54   17  Q    Well, take a look at 1006.

11:54   18        MR. WYMAN:  Your Honor, she is not on this e-mail.

11:55   19        THE WITNESS:  Can I speak?

11:55   20        MR. WYMAN:  I guess to clarify my objection, if he

11:55   21  is attempting to refresh her recollection, she already gave

11:55   22  her answer, so it's asked and answered.  And I don't know

11:55   23  how it's going to refresh her recollection if she's not on

11:55   24  this e-mail.

11:55   25        MR. AVENATTI:  I think all I asked was could you

| | | |
|---|---|---|
| 11:55 | 1 | please look at 1006? |
| 11:55 | 2 | THE COURT:  Proceed. |
| 11:55 | 3 | BY MR. AVENATTI: |
| 11:55 | 4 | Q    Ms. Guerrero, you wanted to say something.  Go ahead. |
| 11:55 | 5 | THE COURT:  No, no.  We're going to have a |
| 11:55 | 6 | question. |
| 11:55 | 7 | MR. AVENATTI:  Okay. |
| 11:55 | 8 | BY MR. AVENATTI: |
| 11:55 | 9 | Q    Ms. Guerrero, do you recognize the documents that are |
| 11:55 | 10 | attached to the first page of 1006? |
| 11:55 | 11 | A    Yes. |
| 11:55 | 12 | Q    What are the documents? |
| 11:55 | 13 | A    It is a redetermination summary for Mr. Johnson. |
| 11:55 | 14 | Q    Is that the same summary we were just discussing? |
| 11:56 | 15 | A    I have to make sure. |
| 11:56 | 16 | Q    Take your time. |
| 11:56 | 17 | A    (Witness reviewing document)  It appears to be the same |
| 11:56 | 18 | summary. |
| 11:56 | 19 | Q    What else was sent to Mr. Wyman as part of |
| 11:56 | 20 | Exhibit 1006? |
| 11:56 | 21 | A    As part of the exhibit?  It looks like there's -- |
| 11:56 | 22 | MR. WYMAN:  Foundation, Your Honor.  She is not on |
| 11:56 | 23 | this document. |
| 11:56 | 24 | THE COURT:  Lay the foundation as to her knowledge |
| 11:56 | 25 | of what was sent. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:56   1    BY MR. AVENATTI:
11:56   2    Q    Ms. Guerrero, I believe you testified earlier that you
11:56   3    are aware of documents that were sent to Mr. Wyman?
11:57   4    A    I am not aware of the documents that were sent to
11:57   5    Mr. Wyman.
11:57   6    Q    You are aware of what documents were sent to Mr. Wyman,
11:57   7    correct?  I mean, the fact that -- strike that.  You were
11:57   8    aware that documents were sent to Mr. Wyman, correct?
11:57   9    A    Correct.
11:57  10    Q    Okay.  And how are you aware of that?
11:57  11    A    Because of a consent form.
11:57  12    Q    Mr. Johnson's consent form?
11:57  13    A    Correct.
11:57  14    Q    You obtained Mr. Johnson's consent to send documents to
11:57  15    Mr. Wyman?
11:57  16    A    I did not obtain the consent form.  I reviewed the
11:57  17    consent form.
11:57  18    Q    And when did you review that?
11:57  19    A    I reviewed it during our meeting.
11:57  20    Q    Let me direct your attention to Bates stamped document
11:57  21    USAO1143454 of this document.  It's the second to last page.
11:58  22              MR. WYMAN:  Objection.  Foundation.
11:58  23              MR. AVENATTI:  I'm going to lay it.
11:58  24              THE COURT:  At this point he is simply asking her
11:58  25    to look at a document.
```

| | | |
|---|---|---|
| 11:58 | 1 | MR. WYMAN:  Okay, Your Honor. |
| 11:58 | 2 | THE WITNESS:  Okay. |
| 11:58 | 3 | MR. AVENATTI:  Your Honor, may I approach?  I |
| 11:58 | 4 | think I can shortcut this. |
| 11:58 | 5 | THE COURT:  Ask your question -- you want to put |
| 11:58 | 6 | something else in front of her? |
| 11:58 | 7 | MR. AVENATTI:  Just this one single page, Your |
| 11:58 | 8 | Honor. |
| 11:58 | 9 | THE COURT:  It's in the document; isn't it? |
| 11:58 | 10 | MR. AVENATTI:  Yes, but I may move it into |
| 11:58 | 11 | evidence so it will just be cleaner.  But I'll do it any way |
| 11:58 | 12 | you want to do it. |
| 11:58 | 13 | THE COURT:  Proceed. |
| 11:58 | 14 | MR. AVENATTI:  Okay. |
| 11:58 | 15 | BY MR. AVENATTI: |
| 11:58 | 16 | Q    Do you have that page in front of you? |
| 11:58 | 17 | A    I believe so.  Can you repeat the number? |
| 11:58 | 18 | Q    USAO01143454? |
| 11:58 | 19 | A    Yes. |
| 11:59 | 20 | Q    It looks like a screenshot; am I right? |
| 11:59 | 21 | A    Yes. |
| 11:59 | 22 | Q    What is this a screenshot of? |
| 11:59 | 23 | A    It is our report of contact with the individual, so |
| 11:59 | 24 | with Mr. Johnson. |
| 11:59 | 25 | Q    And your name appears in the middle of the page, |

| | | |
|--|--|--|
| 11:59 | 1 | correct? |
| 11:59 | 2 | A    Correct. |
| 11:59 | 3 | Q    It says name of person preparing report E. Guerrero? |
| 11:59 | 4 | A    Correct. |
| 11:59 | 5 | Q    Did you prepare this? |
| 11:59 | 6 | A    Yes. |
| 11:59 | 7 | Q    And at the top there are some dates and some entries. |
| 11:59 | 8 | Do you see that? |
| 11:59 | 9 | A    Yes. |
| 11:59 | 10 | Q    And one of the entries says "N20"; is that right? |
| 11:59 | 11 | A    Yes. |
| 11:59 | 12 | Q    What does that stand for? |
| 11:59 | 13 | A    It's a code that we use to suspend benefits. |
| 11:59 | 14 | Q    And then there is an entry here on September -- or |
| 12:00 | 15 | August 7, 2019, "High-profile case"? |
| 12:00 | 16 | A    Correct. |
| 12:00 | 17 | Q    What does that mean? |
| 12:00 | 18 | A    That means it can be a possible public relations issue. |
| 12:00 | 19 | Q    What do you mean it can be a public relations issue? |
| 12:00 | 20 |         MR. WYMAN:  Objection.  Relevance. |
| 12:00 | 21 |         THE COURT:  Sustained. |
| 12:00 | 22 | BY MR. AVENATTI: |
| 12:00 | 23 | Q    Go to the bottom of the page, please. |
| 12:00 | 24 | A    (Witness complies.) |
| 12:00 | 25 | Q    These are your notes of your contact with Mr. Johnson |

12:00  1    relating to his reinstatement, correct?

12:00  2    A    Correct.

12:00  3    Q    Did you type these contemporaneous with your contact

12:00  4    with Mr. Johnson?

12:00  5    A    Yes.

12:00  6          THE COURT:  We're going to take the lunch break

12:00  7    here.  Ladies and gentlemen, we will resume at 1:30.  Please

12:00  8    remember the admonition not to discuss the case with anyone

12:00  9    and not to form any opinions on the issues in the case until

12:01  10   it is submitted to you.  And please don't do any research.

12:01  11         So we will see you at 1:30, please.

12:01  12         (Jury not present)

12:01  13         THE COURT:  Anything for the record before we

12:01  14   adjourn?

12:01  15         MR. AVENATTI:  Nothing from the defense, Your

12:01  16   Honor.

12:01  17         MR. SAGEL:  I guess two things, and I will take

12:01  18   part or I can take both.  It's not my witness, but I will

12:02  19   point out that to use these as examples that there is no

12:02  20   impeachment going on right now with this witness.  There is

12:02  21   no reciprocal discovery in this case, which has been pointed

12:02  22   out time and time again.

12:02  23         So if he wants to use a document to impeach, then

12:02  24   he has no reciprocal discovery obligation.  He has these

12:02  25   marked as exhibits.  He knows what he wants to use in this

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:02   1    case.  He has still yet to provide a single document to the

12:02   2    government.

12:02   3         If he is trying to impeach with them or refresh

12:02   4    recollection, he can do that.  What he can't do is ask a

12:02   5    witness to start reading from documents that are hearsay and

12:02   6    then ask them -- and not impeach, not refresh, and not move

12:02   7    them into evidence.  So if he wants to move them in -- but

12:02   8    he also needs to be providing reciprocal discovery pursuant

12:02   9    to the Court's order and Rule 16.

12:02   10        THE COURT:  Exhibits 1005 and 1006 come from the

12:02   11   government's production.

12:03   12        MR. SAGEL:  Correct.  But as Your Honor's order

12:03   13   made clear back in -- and I can look at the date --

12:03   14   reciprocal discovery which has been turned over --

12:03   15        THE COURT:  Six pages.

12:03   16        MR. SAGEL:  His production is six pages.  What we

12:03   17   produced to him is in the hundreds of thousands.  We're not

12:03   18   supposed to just guess because we produced it, which was

12:03   19   based on your decision in Michaels which specifically said

12:03   20   only impeachment information.  He needs to provide back what

12:03   21   he's planning on using even if he got it from the

12:03   22   government.

12:03   23        You may see, for example, with these -- these,

12:03   24   yes, are USAO numbers.  I don't even know how things are

12:03   25   produced to him, if he got them through the Privilege Review

| 12:03 | 1 | Team.  That's the problem we have here.  We're not going to |
| 12:03 | 2 | know until a millisecond before what he's producing or not. |
| 12:03 | 3 | If he's using it for impeachment material, that's |
| 12:03 | 4 | proper to do it at that point.  If he's not, he needs to |
| 12:03 | 5 | produce.  And Your Honor made that abundantly clear back in |
| 12:03 | 6 | October and several times since, and now we're just playing |
| 12:04 | 7 | games, that he's just handing documents at this time. |
| 12:04 | 8 | THE COURT:  Marshal the Court's remarks for me |
| 12:04 | 9 | during the lunch break. |
| 12:04 | 10 | MR. SAGEL:  I will, Your Honor. |
| 12:04 | 11 | MR. AVENATTI:  Your Honor, do you know when we got |
| 12:04 | 12 | these documents? |
| 12:04 | 13 | THE COURT:  No. |
| 12:04 | 14 | MR. AVENATTI:  July 20th.  July 20th, Your Honor. |
| 12:04 | 15 | So how could I have met some reciprocal discovery deadline |
| 12:04 | 16 | even if it is as Mr. Sagel is representing, which I don't |
| 12:04 | 17 | agree with, but we don't even have to go there, Your Honor. |
| 12:04 | 18 | We got these documents on July 20th.  If you look |
| 12:04 | 19 | at the e-mail, on Exhibit 1006, it says July 12th, 2021.  So |
| 12:04 | 20 | the fact of the matter is we could have moved to exclude any |
| 12:05 | 21 | reference to these exhibits, and I think that motion would |
| 12:05 | 22 | have been well taken in light of the discovery obligations |
| 12:05 | 23 | by the government. |
| 12:05 | 24 | Frankly, Your Honor, if you look at some of these |
| 12:05 | 25 | entries, this is Brady.  Now, the government has suggested |

```
12:05    1    to this jury that Mr. Johnson lost his benefits and still
12:05    2    doesn't have benefits.  They suggested that because of me,
12:05    3    and that is not true.  Now we know it is not true.  But the
12:05    4    idea that somehow I had a reciprocal discovery deadline of
12:05    5    six months ago for information that we just got on July 20th
12:05    6    is not well taken in my view, Your Honor.
12:05    7            THE COURT:  We'll proceed on a
12:05    8    document-by-document basis.
12:05    9            MR. AVENATTI:  Thank you, Your Honor.
12:05   10            MR. WYMAN:  Your Honor, may I ask one thing?  The
12:05   11    defendant just represented to the Court that he received
12:05   12    these documents on July 20th.  I don't want to speak out of
12:05   13    turn, but I would like to review our discovery index.  I do
12:05   14    recall on July 20th getting an e-mail from -- I don't
12:05   15    remember who it was from the defense team asking our
12:06   16    paralegal to reproduce a prior production on July 20th.  I
12:06   17    believe that's where that came from.
12:06   18            THE COURT:  Check your files.  If that's correct,
12:06   19    then so advise the Court.
12:06   20            MR. AVENATTI:  Your Honor, I am just informed that
12:06   21    in fact we got them on July 14th, not the 20th.  I was told
12:06   22    the 20th.  I was wrong.
12:06   23            THE COURT:  Let's find out whether it's just a
12:06   24    repeated production at your request or it was an initial
12:06   25    production.  Let's find that out.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:06   1          MR. AVENATTI:  I agree, Your Honor.  I have no

12:06   2   knowledge of this being a repeated production, but let's

12:06   3   figure it out.

12:06   4          THE COURT:  Let me say, as suggested in the

12:06   5   initial jury instructions, this case is not about whether

12:06   6   Mr. Avenatti malpracticed in any way but, rather, did he

12:06   7   commit the crimes?

12:06   8          I'm having trouble seeing how this interrogation

12:06   9   is material to whether he committed the crimes, except with

12:06   10  respect to whatever representations Mr. Johnson may have

12:07   11  made to the Social Security Administration.

12:07   12         But to the extent that -- and I think this has

12:07   13  been the thrust of some of the exam -- that Mr. Avenatti

12:07   14  malpracticed in causing him not to get his Social Security

12:07   15  benefits or not able to maintain the benefits, to me that's

12:07   16  irrelevant.

12:07   17         MR. AVENATTI:  Your Honor, my position is they

12:07   18  opened the door to this, and it can't be left unchecked.

12:07   19  So --

12:07   20         THE COURT:  Well, sir, I'm developing a list of

12:07   21  topics for further specific jury instructions that may need

12:07   22  to be given as a result of the evidence that's come in.

12:07   23  This is number one on my list.

12:07   24         MR. AVENATTI:  And, Your Honor, just for the

12:07   25  Court's information, I don't expect to spend any more than

12:07  1   another two or three minutes on this topic relating to these

12:07  2   documents that I've put before the witness.

12:07  3            THE COURT:  That's fine.  We will be in recess.

12:07  4            (Recess taken at 12:07 p.m.)

12:07  5                         *    *    *

12:07  6

12:07  7

12:07  8

12:07  9

12:07  10

12:07  11

12:07  12

12:07  13

12:07  14

12:07  15

12:07  16

12:07  17

12:07  18

12:07  19

12:07  20

12:07  21

12:07  22

12:07  23

12:07  24

12:07  25

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  July 24, 2021

/s/   Sharon A. Seffens  7/24/21

SHARON A. SEFFENS, U.S. COURT REPORTER

**MR. AVENATTI: [60]** 4/8 5/8 5/11 6/6 6/17
8/17 8/24 9/10 14/6 14/20 16/18 17/4 18/14
18/17 19/14 20/24 23/21 32/8 34/13 35/2 37/9
38/4 38/25 42/17 48/12 59/5 62/22 65/15 66/3
68/4 70/8 73/8 74/13 75/20 75/23 81/23 89/4
92/5 93/11 93/14 98/1 102/6 102/10 102/13
107/13 108/25 109/7 110/23 111/3 111/7
111/10 111/14 113/15 115/11 115/14 116/9
116/20 117/1 117/17 117/24
**MR. SAGEL: [12]** 4/5 4/13 6/3 6/19 6/25 8/9
8/15 9/6 113/17 114/12 114/16 115/10
**MR. WYMAN: [82]** 10/2 10/10 14/8 14/24
15/5 15/8 15/15 16/16 16/20 17/2 17/7 19/4
20/21 21/19 21/24 25/6 26/8 27/20 30/2 31/15
32/6 32/14 32/22 37/4 38/2 38/9 38/14 39/4
39/7 42/15 42/19 42/23 42/25 44/14 45/11
45/23 46/17 47/22 48/10 52/12 53/12 64/15
65/2 65/9 65/14 71/4 71/20 73/10 73/15 74/15
74/19 75/1 75/13 75/18 75/22 76/6 76/14
81/21 82/19 83/8 83/11 83/21 88/24 89/1
90/12 92/22 93/9 93/12 93/21 95/1 98/21
102/3 102/8 103/14 104/24 108/18 108/20
109/22 110/22 111/1 112/20 116/10
**THE CLERK: [5]** 4/3 9/4 10/5 32/17 76/9
**THE COURT: [104]** 4/7 4/11 5/7 5/10 6/10
6/18 6/24 8/1 8/13 8/22 8/25 9/9 9/13 10/9
14/7 14/22 15/1 15/11 16/22 17/6 17/9 18/16
18/20 19/5 19/16 20/5 21/10 21/25 23/20
25/7 26/9 27/21 30/3 31/16 32/5 32/7 32/10
32/21 34/15 35/3 37/11 38/7 38/11 39/3 39/6
42/21 48/11 52/13 53/13 64/18 64/23 65/10
65/16 65/23 66/2 70/9 71/5 71/23 73/9 74/14
74/17 74/21 75/12 75/14 75/19 75/21 75/25
76/3 76/13 81/24 89/3 90/13 92/6 92/23 93/10
93/22 95/3 98/2 98/22 102/5 102/12 103/16
105/1 107/14 109/2 109/5 109/24 110/24
111/5 111/9 111/13 112/21 113/6 113/13
114/10 114/15 115/8 115/13 116/7 116/18
116/23 117/14 117/20 118/3
**THE WITNESS: [29]** 10/7 14/8 18/21 19/16
27/22 30/4 31/17 32/19 34/16 35/4 37/12
52/14 53/14 64/18 65/11 71/6 74/18 75/15
76/2 76/11 83/10 89/2 90/14 92/25 95/4 98/23
103/17 108/19 111/2

**$**

**$1,250 [1]** 82/12
**$2,000 [3]** 78/9 78/11 78/13
**$4 [1]** 46/20
**$4 million [1]** 46/20

**'**

**'17 [1]** 106/23
**'18 [1]** 99/20

**/**

**/s [1]** 119/16

**0**

**0870 [1]** 1/21

**1**

**1-1053 [1]** 1/20
**10 [1]** 3/6
**1005 [4]** 3/17 98/3 98/6 114/10
**1006 [9]** 3/18 107/15 107/18 108/17 109/1
109/10 109/20 114/10 115/19
**1053 [1]** 1/20
**107 [2]** 2/16 3/18
**108 [8]** 83/6 96/11 96/12 96/20 97/9 98/10
98/16 103/7
**10:30 [1]** 65/24
**10:33 a.m [1]** 69/17
**10:49 [1]** 65/25
**11 [9]** 3/10 10/23 13/10 13/11 13/19 14/19
15/6 24/6 59/12
**11/1/18 [2]** 99/19 106/22
**1100 [1]** 2/7

**115 [7]** 3/10 15/18 16/17 16/25 17/11 18/5
18/17
**116 [6]** 3/10 15/18 16/17 16/25 20/3 20/9
**11:16 a.m [1]** 20/14
**12:07 [1]** 118/4
**12:07 p.m [2]** 19/24 20/18
**12th [1]** 115/19
**13 [1]** 82/3
**14th [3]** 99/15 105/3 116/21
**15 [2]** 3/10 65/18
**16 [2]** 3/10 114/9
**18 [6]** 72/2 72/9 72/14 75/9 99/19 106/22
**1900 [3]** 29/21 29/25 30/8
**1:30 [2]** 113/7 113/11
**1:44 p.m [1]** 69/18
**1st [7]** 29/21 29/25 83/25 84/5 98/12 99/16
107/6

**2**

**20 [1]** 3/6
**2008 [1]** 98/12
**2010 [1]** 24/6
**2012 [11]** 33/6 40/23 59/12 60/2 61/9 70/15
92/3 92/18 94/23 95/8 101/2
**2013 [1]** 24/10
**2014 [8]** 24/10 43/7 82/11 101/2 103/12
103/20 103/24 105/3
**2015 [4]** 47/10 47/13 105/10 105/15
**2015, the [1]** 105/23
**2016 [8]** 82/3 82/3 86/10 86/12 86/24 100/14
100/24 106/3
**2017 [5]** 106/8 106/11 106/14 106/25 107/2
**2018 [18]** 76/25 78/20 80/18 82/25 83/19
83/25 84/5 86/1 87/17 88/3 98/13 98/14 98/20
99/2 100/25 101/10 102/16 107/6
**2019 [18]** 18/11 19/16 19/24 20/13 20/16 22/8
22/11 24/19 33/6 45/16 66/23 68/22 69/13
70/16 70/22 71/11 72/23 112/15
**2021 [4]** 1/17 4/1 115/19 119/14
**20th [9]** 115/14 115/14 115/18 116/5 116/12
116/16 116/21 116/22
**21 [9]** 3/11 42/8 42/16 42/21 42/24 62/21
62/22 73/15 119/16
**213 [1]** 2/8
**22nd [1]** 43/7
**23 [2]** 1/17 4/1
**23rd [5]** 18/21 19/16 19/24 20/13 20/18
**24 [1]** 119/14
**27 [2]** 60/2 105/10
**28 [3]** 92/18 94/23 119/8
**28th [2]** 92/2 95/8
**29 [1]** 18/13
**29th [2]** 18/11 18/22
**2:00 p.m [1]** 60/2
**2nd [5]** 106/3 106/8 106/11 106/14 106/25

**3**

**30 [2]** 40/12 103/19
**30th [3]** 103/12 103/24 105/15
**312 [1]** 2/7
**32 [1]** 3/7
**338-3598 [1]** 2/12
**3598 [1]** 2/12
**37 [8]** 7/16 8/12 8/14 45/10 47/25 66/20 68/4
68/5
**38 [1]** 3/11
**3rd [1]** 87/17

**4**

**40 [1]** 46/15
**40 percent [1]** 37/13
**403 [2]** 93/9 95/1
**405 [1]** 7/5
**407 [2]** 7/6 7/23
**411 [2]** 1/20 2/11
**42 [1]** 3/11
**48 [2]** 3/7 62/6
**481-4900 [1]** 2/17
**4900 [1]** 2/17

**4th [1]** 1/20

**5**

**500 [1]** 11/6
**543-0870 [1]** 1/21

**6**

**60 [5]** 7/14 7/15 8/12 8/14 88/17
**64 [2]** 71/18 71/25
**6683 [1]** 2/8

**7**

**7/24/21 [1]** 119/16
**70 [5]** 3/12 81/10 81/13 81/22 81/25
**714 [2]** 1/21 2/12
**73 [1]** 3/7
**74 [1]** 3/7
**753 [1]** 119/7
**76 [1]** 3/7
**7th [1]** 89/19

**8**

**8000 [1]** 2/11
**82 [1]** 3/12
**89 [1]** 3/7
**894-6683 [1]** 2/8
**8:29 [1]** 4/1
**8:36 [1]** 9/2

**9**

**90012 [1]** 2/8
**92672 [1]** 2/16
**92701 [2]** 1/20 2/11
**949 [1]** 2/17
**98 [1]** 3/7
**9:00 [1]** 18/12
**9:05 a.m [1]** 19/17
**9th [2]** 89/20 105/23

**A**

**a.m [8]** 4/1 9/2 18/12 19/17 20/14 65/24 65/25
69/17
**able [7]** 12/23 13/16 18/4 30/15 51/10 107/9
117/15
**about [78]** 4/16 4/24 5/15 7/5 7/7 7/8 7/19 8/5
15/14 17/7 17/24 18/17 22/4 22/16 25/11 27/1
27/24 28/25 29/12 36/9 40/4 45/1 45/3 46/12
47/11 47/15 47/16 47/16 47/20 49/9 52/9 52/9
55/13 55/15 56/6 56/14 58/5 58/9 58/15 59/2
60/16 60/20 62/6 62/21 63/4 63/18 64/8 64/9
64/12 64/13 64/22 66/21 67/4 67/19 67/25
68/2 69/18 69/24 73/19 74/5 74/15 75/4 75/5
77/25 78/23 84/20 85/7 85/21 85/23 86/11
87/3 87/9 88/12 92/2 96/10 106/21 108/14
117/5
**above [2]** 46/2 119/10
**above-entitled [1]** 119/10
**Absolutely [1]** 52/24
**abundantly [1]** 115/5
**accepted [1]** 13/12
**access [2]** 28/5 31/14
**according [2]** 30/1 103/24
**accounting [1]** 17/14
**account [3]** 78/15 78/17 100/10
**accounts [1]** 78/16
**accurate [7]** 14/15 14/17 16/13 30/6 37/24
42/12 81/19
**acknowledge [1]** 6/22
**acknowledgment [1]** 17/13
**act [1]** 90/23
**acting [1]** 89/25
**activities [1]** 54/12
**activity [3]** 52/21 75/10 75/11
**actual [2]** 25/16 30/24
**actually [6]** 25/10 30/12 31/25 62/10 68/4
103/6
**addition [1]** 74/10
**additional [1]** 9/15
**address [1]** 79/9

**A**

addressed [2] 59/11 82/4
adjourn [1] 113/14
adjudicate [1] 77/7
administrating [1] 54/24
administration [13] 39/25 59/4 59/9 76/20
77/1 79/20 79/24 80/7 80/9 82/5 90/1 96/5
117/11
administrative [2] 40/21 54/12
admit [6] 7/12 14/19 16/17 38/3 42/16 81/22
admonish [1] 6/14
admonition [2] 65/19 113/8
advanced [1] 53/1
advancing [1] 82/12
advise [1] 116/19
advisory [2] 2/15 4/9
affiliated [1] 12/14
affirmed [1] 27/18
after [12] 18/12 41/10 45/16 47/10 47/12
47/13 47/14 78/1 84/16 87/12 87/24 108/6
afternoon [2] 7/1 8/19
again [9] 5/1 16/22 61/18 64/10 70/24 73/13
103/14 103/17 113/22
against [1] 35/21 41/1 47/3
aged [1] 77/16
agency [5] 97/14 101/20 104/1 104/15 106/16
Agent [5] 9/8 11/24 12/6 68/25 91/9
agents [3] 22/25 71/12 97/8
ago [9] 69/25 71/19 72/2 72/9 72/15 75/9
80/24 87/6 116/5
agree [4] 55/12 56/17 115/17 117/1
agreed [1] 57/7
agreement [1] 17/13 36/24 37/1 37/2 37/7
37/15 45/17 56/7 56/17 87/8 86/8
agreements [6] 54/19 54/25 56/8 56/11 56/21
56/25
ahead [1] 109/4
alchemies [1] 12/21
alert [1] 6/21
ALEXANDER [3] 2/5 4/6 9/7
all [24] 9/25 12/19 12/21 13/11 16/8 21/11
26/14 34/7 35/14 42/6 50/5 50/21 51/22 53/3
61/10 62/9 68/16 72/11 82/17 88/14 91/9
102/18 102/19 108/25
allegations [2] 35/21 95/4
allow [2] 7/11 56/18
almost [1] 50/13
along [1] 91/11
aloud [1] 82/10
already [1] 36/16 45/9 46/14 83/8 103/7
108/21
also [30] 7/2 7/12 9/11 12/22 19/21 20/7 25/1
28/8 36/11 36/17 38/5 40/13 42/18 51/8 51/9
66/16 69/11 71/21 72/9 72/14 77/8 77/16
77/24 78/17 78/19 87/18 92/22 100/4 104/4
114/8
although [1] 5/16
am [23] 5/24 10/20 12/23 25/2 25/10 25/11
29/12 35/7 52/9 53/7 69/18 95/20 98/12
105/18 105/24 107/9 107/17 108/9 108/15
108/15 110/4 111/20 116/20
AMERICA [3] 1/9 4/4 9/5
among [2] 49/20 108/13
amount [4] 37/7 78/16 86/12 100/5
amounts [1] 87/9
Ana [4] 1/16 1/20 2/11 4/1
analysis [4] 28/20 30/14 31/19 31/24
analyst [6] 10/20 10/22 24/2 24/10 76/22
89/12
Andre [2] 26/23 69/11
Angeles [7] 2/8 5/18 35/22 45/18 46/21 47/4
84/21
another [13] 15/16 43/12 47/8 74/11 79/11
94/16 105/5 105/10 105/15 105/23 106/3
106/8 118/1
answer [4] 6/12 18/18 75/7 108/22
answered [15] 18/14 19/14 26/8 27/20 55/15
65/9 65/14 71/4 75/1 75/13 75/18 94/8 96/7
104/24 108/22

answering [1] 54/9
any [97] 4/17 4/20 5/8 5/18 8/3 8/6 20/1 20/4
22/22 23/15 25/11 25/14 25/14 26/4 26/5 32/1
32/12 37/15 40/13 45/1 47/4 47/10 47/14
50/14 50/14 51/18 54/5 54/15 54/21 54/24
55/2 55/3 55/19 55/19 56/8 56/21 56/22 56/24
57/10 57/17 61/13 61/20 64/20 65/20 67/7
67/10 67/23 69/25 70/22 71/14 72/3 72/16
72/20 72/21 72/24 73/3 74/3 74/24 75/10
75/11 75/17 79/10 79/10 81/1 81/1 82/16
87/18 88/14 95/17 96/1 103/12 103/13 103/22
103/22 103/25 104/1 104/14 104/15 104/21
106/15 106/15 111/11 113/9 113/10 115/20
117/6 117/25
anyone [11] 9/16 23/14 26/12 47/7 57/17
57/18 61/21 65/20 67/8 72/10 113/3
anything [18] 8/22 40/6 46/12 49/9 54/8 56/6
61/12 62/6 63/18 64/13 67/4 67/11 68/12
68/25 85/7 85/21 102/10 113/13
apart [1] 29/11
apartment [1] 5/17
apparent [1] 5/17
appear [2] 39/13 51/7
appearances [4] 2/1 52/4 52/17 53/2
appears [3] 29/17 109/17 111/25
application [6] 61/25 62/12 92/2 92/20 93/4
93/19
applications [1] 62/9
applied [3] 92/16 93/7 94/22
applies [2] 104/10 106/24
apply [3] 77/17 77/19 77/21
appointment [4] 59/19 77/19 79/3 79/7
appointments [1] 79/4
approach [6] 19/4 70/8 92/5 98/1 107/13
111/3
approached [1] 42/1
approaching [4] 43/9 63/6 63/8 73/22
appropriate [3] 4/21 5/4 15/11
approval [1] 20/6
approximately [5] 69/17 80/17 80/22 81/6
82/12
April [2] 82/3 82/3
April 2016 [1] 82/3
are [79] 5/5 6/15 7/6 7/8 7/13 7/22 7/22 8/1
8/15 10/24 11/13 11/16 12/21 13/16 14/22
16/13 24/2 26/7 32/10 34/22 38/7 43/22 48/1
50/3 50/4 50/6 57/6 59/24 60/16 60/16 63/12
63/13 67/7 67/10 71/8 72/4 75/25 76/1
77/10 77/16 77/21 78/1 78/14 78/18 79/4 80/2
80/8 80/12 80/14 81/17 84/17 86/6 94/12
94/16 95/4 95/17 96/20 97/13 99/12 100/9
101/15 101/18 101/19 101/23 102/21 103/3
105/20 108/10 108/12 109/9 109/12 110/3
110/6 110/10 112/7 112/25 114/5 114/24
114/24
argument [1] 49/12
around [5] 6/9 43/8 51/22 63/5 98/19
arrange [1] 60/17
arrangement [2] 79/12 104/10
arrangements [2] 77/25 85/17
arrived [1] 36/5
as [94] 4/10 4/10 4/19 5/6 6/9 6/11 7/3
8/2 8/9 8/14 9/18 11/1 11/1 11/20 12/23 16/7
16/7 19/19 20/15 29/6 30/10 30/21 33/19
33/21 34/7 34/7 35/1 35/5 35/12 35/12 35/15
36/3 36/16 41/13 41/22 42/1 42/4 45/10 46/15
48/2 49/9 52/20 53/1 55/17 58/12 58/16 61/9
63/9 63/11 63/19 63/22 64/20 65/8 72/6
73/22 73/22 77/6 79/12 79/20 80/4 80/19
80/21 81/9 82/12 85/10 87/21 89/11 89/23
89/23 90/5 91/5 92/15 96/21 98/6 98/19
100/12 101/13 101/18 101/18 102/4 103/21
107/4 107/18 109/19 109/21 109/24 113/19
113/25 114/12 115/16 117/4 117/22
ask [17] 5/2 9/17 14/18 50/8 67/16 67/16
75/4 79/8 92/15 93/6 93/14 93/16 111/5 114/4
114/6 116/10
asked [45] 5/10 5/11 7/19 11/18 18/17 19/14
23/14 23/17 23/23 26/8 27/20 27/24 28/24

29/4 54/9 55/25 56/24 58/15 59/2 62/21 63/4
64/6 66/12 66/16 67/13 67/17 67/24 68/2 68/2
71/4 74/5 75/1 75/5 75/13 75/18 87/8 93/18
94/2 94/5 94/23 96/10 102/10 104/24 108/22
108/25
asking [13] 7/8 55/13 63/5 73/19 74/15 84/14
94/10 97/13 102/6 102/8 103/14 110/24
116/15
aspect [1] 47/17
aspects [3] 34/8 34/18 36/10
assigned [4] 33/22 35/18 36/4 57/18
assignment [2] 24/11 24/12
assist [1] 9/12
assistant [2] 2/4 2/6 2/10 24/14 26/21 38/19
71/12
Assisted [1] 39/9
associate [3] 33/18 33/20 33/21
associated [3] 18/4 28/9 66/18
association [1] 66/19
assumed [1] 30/18
assumes [1] 65/2
assuming [1] 11/4
attached [7] 7/9 7/15 7/18 7/24 38/13 84/3
109/10
attachment [3] 38/10 38/24 39/2
attempted [2] 67/7 67/11
attempting [2] 64/25 108/21
attempts [1] 93/19
attended [1] 55/4
attention [10] 39/16 66/20 70/11 71/17 82/18
92/14 94/20 102/1 108/1 110/20
attorney [29] 2/3 2/4 2/6 2/10 9/16 26/21 33/3
36/25 37/7 37/12 48/2 49/16 57/22 60/4 63/25
68/13 71/12 81/2 81/4 85/6 85/12 85/15 86/11
87/8 90/3 90/8 90/10 90/14 108/5
attorney's [2] 69/12 100/10
attorneys [13] 24/13 24/14 24/24 33/12 33/15
33/24 34/23 38/21 44/20 49/23 68/3
68/12
attorneys' [1] 37/16
audio [1] 105/20
August [1] 112/15
August 7 [1] 112/15
authenticated [1] 15/13
authentication [2] 14/21 16/19
author [5] 18/2 19/19 19/20 20/15 30/23
authorize [1] 77/7
AVENATTI [51] 1/11 2/14 4/4 4/9 4/15 5/7
19/5 20/2 20/16 20/20 20/23 33/7 33/8 33/9
33/11 33/14 33/20 34/4 34/5 35/17 36/5 37/2
37/16 38/21 41/1 43/14 44/2 45/5 47/7 48/11 60/9
66/2 72/25 74/21 81/5 82/23 85/18 85/24
85/24 88/10 89/3 102/5 117/6 117/13
Avenatti's [3] 7/4 38/19 48/8
Avenida [1] 2/16
award [5] 82/13 86/8 86/15 86/21 86/21
aware [25] 8/18 40/15 67/7 67/10 71/13 72/2
72/10 72/15 72/23 74/24 75/10 75/11 75/17
95/17 95/20 108/9 109/12 108/12 108/15
108/15 110/3 110/4 110/6 110/8 110/10
away [1] 40/7

**B**

back [16] 8/4 15/15 24/19 26/25 42/7 44/22
47/25 94/20 94/23 95/7 96/12 100/14 101/10
114/13 114/20 115/5
bank [3] 78/15 78/15 78/17
barring [1] 8/10
based [21] 12/5 12/8 13/11 16/1 20/11 25/25
31/23 45/7 54/4 57/9 67/22 82/6 86/13 87/18
95/10 95/12 95/13 95/14 98/18 98/25 114/19
basically [2] 7/6 98/14
basis [2] 34/20 116/8
Bates [1] 110/20
be [69] 4/21 4/23 5/22 7/2 7/5 7/10 7/17 8/2
8/25 9/16 13/20 15/5 15/19 16/22 18/1 18/2
21/15 23/5 27/9 30/5 30/15 30/15 32/7 36/17
38/1 38/11 38/12 39/13 41/13 42/14 42/21

**B**

**be... [38]** 43/17 44/1 44/2 50/14 51/7 52/16
52/17 52/20 52/25 54/2 60/24 63/24 63/24
65/18 65/23 72/7 75/21 78/6 78/9 81/10 81/24
82/18 83/7 83/14 84/14 85/13 86/22 92/23
101/19 104/9 109/17 111/11 112/18 112/19
114/8 117/18 117/22 118/3
**became [6]** 35/12 35/15 41/14 41/22 42/5
58/13
**because [36]** 7/1 8/7 23/8 26/4 29/4 30/8
31/23 36/4 40/20 45/5 51/10 51/13 54/1 54/8
55/18 56/16 56/20 56/25 61/18 63/11 63/24
72/7 85/15 85/17 87/1 88/21 90/23 90/24
94/13 94/17 99/6 100/13 103/6 110/11 114/18
116/2
**become [6]** 41/21 42/2 53/1
**been [25]** 6/13 10/21 11/18 11/20 12/3 15/12
18/21 21/15 21/22 22/6 22/9 22/10 24/21
37/20 41/2 49/16 81/9 82/11 86/11 87/5
100/13 113/21 114/14 115/22 117/13
**before [23]** 5/2 5/19 13/8 23/17 23/23 27/14
27/19 41/1 43/25 46/24 50/15 55/14 56/1 56/3
61/7 66/23 92/9 93/6 97/5 97/17 113/13 115/2
118/2
**began [1]** 24/6
**begin [1]** 83/1
**beginning [5]** 15/10 40/24 41/3 59/15 106/24
**behalf [2]** 4/6 9/7
**behind [6]** 13/20 36/19 37/19 39/22 73/2
81/11
**being [9]** 7/19 8/11 9/22 54/9 63/13 67/24
75/11 95/21 117/2
**believe [16]** 16/3 24/9 24/20 45/19 67/23 69/4
72/7 73/21 74/10 88/17 91/4 96/6 100/9 110/2
111/17 116/17
**below [5]** 44/6 68/9 68/10 86/6 87/20
**benefits [29]** 40/22 61/25 77/17 77/20 77/22
78/3 79/10 79/19 80/16 82/8 88/23 92/2 92/16
92/21 93/2 93/8 93/20 94/6 94/23 94/24 95/11
95/15 95/19 99/2 112/13 116/1 116/2 117/15
117/15
**Best [1]** 37/10
**better [3]** 43/24 98/18 98/25
**between [9]** 33/6 35/11 37/2 37/15 45/17 56/7
56/11 65/7 80/9
**Beyond [1]** 75/13
**big [2]** 41/20 53/9
**binder [6]** 13/20 15/19 37/19 62/9 81/10
96/20
**binders [1]** 36/19
**birth [1]** 80/5
**bit [5]** 40/2 44/14 58/3 78/10 95/12
**blind [1]** 77/16
**block [3]** 48/2 68/5 68/13
**blow [6]** 42/25 46/17 62/23 73/16 82/19 83/12
**blowing [1]** 96/16
**body [2]** 59/15 62/23
**bolded [1]** 59/19
**bolts [1]** 55/9
**both [6]** 6/8 7/13 23/3 90/5 99/18 113/18
**bottom [10]** 43/1 43/3 60/23 73/16 92/14 93/5
96/15 96/15 106/12 112/23
**box [1]** 96/17
**Brady [1]** 115/25
**BRANDON [1]** 2/4
**break [3]** 65/17 113/6 115/9
**BRETT [3]** 2/9 4/5 9/6
**briefly [3]** 4/13 47/25 73/10
**bring [3]** 4/18 6/25 28/21
**brought [3]** 4/15 29/2 51/22
**Building [1]** 1/7
**bullet [4]** 60/23 86/6 86/13 86/23
**business [3]** 34/7 34/12 54/15

**C**

**C-a-r-l-o-s [1]** 32/19
**C-o-l-o-r-a-d-o [1]** 32/20
**CA [4]** 1/20 2/8 2/11 2/16
**calculation [1]** 78/13

**CALIFORNIA [7]** 1/5 1/16 4/1 21/4 21/12
44/20 61/25
**call [24]** 9/25 32/12 36/24 37/7 43/15 44/22
60/7 60/9 60/17 76/4 84/18 84/19 87/10 87/25
88/4 88/9 90/4 105/5 105/10 105/15 105/23
106/3 106/18 107/25
**called [3]** 28/7 33/5 44/21
**calls [10]** 10/2 30/12 32/15 52/12 64/15 71/20
76/7 90/5 98/21 105/20
**came [12]** 12/9 12/10 24/12 25/23 41/20 51/4
52/3 116/17
**can [39]** 8/6 8/9 11/2 11/17 26/15 28/8 28/10
40/9 43/14 47/13 59/16 59/18 63/2 63/3 68/5
77/18 77/19 78/5 82/10 83/12 92/25 93/25
96/11 96/14 96/18 98/23 100/22 101/19
103/10 103/17 103/20 103/19 109/18 111/4 111/17
112/18 112/19 113/18 114/4 114/13
**can't [3]** 68/1 114/4 117/18
**candor [2]** 32/4 73/7
**cannot [1]** 93/4 100/24
**care [1]** 104/5
**careful [1]** 5/22
**carefully [1]** 40/6
**CARLOS [8]** 3/7 9/8 32/15 32/16 32/19 68/25
91/9 97/15
**case [74]** 5/16 6/5 8/12 9/17 9/19 21/13 22/16
23/25 24/13 24/22 26/13 26/22 34/25 35/1
35/9 35/11 35/16 35/18 35/21 36/2 36/4 36/4
36/6 40/24 41/3 41/4 41/7 41/15 41/21 41/22
41/24 42/1 42/4 44/9 45/2 46/23 47/14 47/17
47/17 47/18 47/19 50/14 51/10 52/12 53/13
57/4 55/6 57/24 58/2 58/5 58/6 58/6 58/11
58/12 58/12 58/20 63/15 63/25 64/9 64/13
65/19 65/21 67/23 91/24 95/22 96/2 99/22
100/13 112/15 113/8 113/9 113/21 114/1
117/5
**cases [46]** 4/23 5/5 6/15 13/10 33/8 33/22
33/23 34/1 34/9 34/10 35/5 35/12 35/14 35/24
36/3 50/4 50/7 50/9 50/10 51/4 51/7 51/10
51/16 51/19 51/21 51/22 51/25 51/25 52/1
52/4 52/11 52/20 53/1 53/6 53/9 53/11 53/16
55/3 55/9 55/20 59/22 63/12 70/19 77/7 77/10
77/11
**Catherine [1]** 38/17
**causing [1]** 117/14
**Cefali [2]** 4/10 9/11
**cellphone [1]** 25/17
**center [1]** 12/11
**CENTRAL [1]** 1/5
**certain [4]** 48/8 55/14 62/11 94/19
**CERTIFICATE [1]** 119/5
**certificates [1]** 80/5
**certified [2]** 1/9 7/14
**certify [1]** 119/7
**cetera [2]** 43/17 73/25
**chance [1]** 5/19
**change [3]** 35/1 35/14 42/6
**changed [2]** 24/23 24/25
**character [1]** 31/7
**charge [2]** 36/5 54/21
**check [4]** 46/20 46/24 47/1 116/18
**checking [1]** 27/15
**Chief [2]** 2/5 108/5
**CI [1]** 12/16
**civil [2]** 5/5 35/21
**claim [1]** 93/2
**claimant [2]** 94/2 101/14
**claimant's [1]** 102/23
**claims [4]** 4/24 77/2 77/6 89/12 95/10 95/12
**clarify [2]** 23/21 108/20
**clarifying [1]** 65/15
**cleaner [1]** 111/11
**clear [4]** 9/15 97/2 114/13 115/5
**Clemente [1]** 2/16
**client [5]** 11/5 20/6 35/18 36/11 36/25 43/25
54/18 56/7 56/11
**clients [8]** 53/20 54/2 56/17 74/7 74/11 74/16
75/6 75/12
**close [1]** 58/20

**closely [5]** 34/11 41/3 41/15 70/18 72/25
**closer [1]** 32/25
**closing [1]** 49/12
**coach [1]** 18/19
**code [2]** 112/13 119/8
**coincided [1]** 63/10
**colleague [1]** 69/12
**colleagues [2]** 77/8 95/24
**collected [2]** 61/23 62/9
**COLORADO [20]** 3/7 32/15 32/16 32/19 32/25
48/15 52/16 55/23 59/8 59/17 60/7 63/2 65/6
66/5 71/25 73/7 73/13 74/24 75/4 75/20
**come [8]** 7/1 8/19 9/20 15/15 36/20 41/14
114/10 117/22
**comfortable [1]** 91/23
**coming [2]** 39/1 91/23
**comment [2]** 8/17 17/5
**comments [2]** 102/16 103/1
**commit [1]** 117/7
**committed [1]** 117/9
**commonly [1]** 13/12
**commonplace [1]** 101/4
**communicate [3]** 36/11 36/13 59/8
**communicated [2]** 25/1 67/25
**communications [13]** 22/15 22/18 22/19
23/10 23/15 23/24 36/9 43/22 64/2 64/7 64/11
94/13 95/23
**competency [1]** 6/8
**competent [1]** 27/19
**complaint [1]** 36/7
**complete [2]** 97/9 97/10
**completed [2]** 84/1 84/16
**complex [2]** 33/10 77/7
**Complicated [1]** 53/11
**complies [6]** 13/21 15/20 20/4 37/21 42/9
112/24
**computer [15]** 10/17 11/7 12/7 12/10 15/2
16/6 16/24 17/15 25/17 28/11 28/20 28/20
30/15 31/21 32/3
**computers [1]** 16/5
**concern [1]** 5/6
**concerns [1]** 82/17
**condition [1]** 6/7
**conduct [5]** 12/25 27/5 72/24 73/4 78/7
**conducted [3]** 13/2 27/13 80/15
**conference [3]** 90/7 91/13 119/12
**conferences [3]** 91/1 91/16 108/7
**conferring [2]** 47/23 88/25
**confident [1]** 27/17
**confined [1]** 51/21
**confirm [1]** 83/15
**conflate [1]** 63/10
**conformance [1]** 119/11
**confrontation [1]** 38/6
**confusion [1]** 7/17
**connection [18]** 23/25 24/22 26/12 52/3
52/10 52/21 57/8 60/20 61/24 62/12 64/21
67/22 91/16 93/2 96/2 102/17 102/23 103/7
**consent [5]** 110/11 110/12 110/14 110/16
110/17
**considered [1]** 78/15
**consistent [4]** 23/10 23/11 70/3 70/25
**constant [1]** 22/9
**consultations [1]** 11/2
**contact [14]** 24/21 24/23 40/12 43/15 52/16
74/1 77/18 82/16 87/17 87/21 88/14 111/23
112/25 113/3
**contain [1]** 81/1
**contained [3]** 27/16 62/10 62/13
**contemporaneous [1]** 99/13 113/3
**content [2]** 15/3 39/1
**contents [5]** 12/22 12/24 13/16 38/13 79/24
**context [1]** 86/14
**contingent [2]** 29/7 37/13
**continue [1]** 78/2
**continuing [1]** 61/24
**contract [1]** 36/24
**conversation [3]** 84/6 84/9 86/14
**conversations [2]** 47/11 47/15

**C**

cooks [1] 43/23
cooling [1] 21/16
copies [4] 16/13 25/13 43/13 80/4
copy [6] 14/16 14/17 19/6 37/24 42/12 81/19
correct [89] 23/18 23/25 24/1 25/15 25/19 25/21 25/22 26/6 27/7 27/8 30/19 31/9 31/17 32/1 32/2 34/24 36/1 50/2 50/20 51/17 52/2 53/14 54/19 54/20 55/21 56/5 56/13 56/19 57/16 58/13 58/14 60/8 60/15 61/17 61/19 63/14 66/11 66/16 68/11 69/13 69/16 74/2 77/12 79/9 80/11 87/7 89/21 92/18 92/19 93/24 94/14 94/15 94/18 97/18 98/17 100/3 101/8 101/12 101/22 101/25 104/6 104/7 104/18 105/8 105/9 105/13 105/14 105/16 105/17 105/25 106/1 106/2 106/6 106/10 106/11 107/1 110/7 110/8 110/9 110/13 112/1 112/2 112/4 112/16 113/1 113/2 114/12 116/18 119/9
correctly [3] 25/9 59/24 61/1
correspondence [7] 26/25 39/24 59/3 62/1 62/2 80/9 81/1
could [35] 7/1 12/2 13/19 15/8 15/9 29/14 34/7 37/4 37/19 40/2 40/2 40/13 42/25 45/11 46/14 46/15 46/17 62/22 62/23 66/20 73/15 73/16 82/15 82/19 83/6 83/9 83/21 83/24 86/7 87/18 90/25 97/13 108/25 115/15 115/20
counsel [14] 2/1 2/15 4/9 9/8 9/17 9/20 9/21 18/18 36/9 47/23 88/25 96/4 108/4 108/5
country [2] 50/17 51/23
County [18] 5/17 35/22 36/7 41/1 45/18 46/21 47/3 84/21 84/25 85/8 85/16 85/20 86/9 86/19 86/21 87/2 99/22 100/7
course [2] 41/18 95/21
court [19] 1/4 4/21 4/22 6/12 8/20 35/10 52/4 52/17 53/3 53/3 82/13 86/8 86/15 86/18 91/23 107/10 116/11 116/19 119/17
Court's [4] 17/5 114/9 115/8 117/25
Courthouse [2] 1/19 2/7
courtroom [1] 69/8
cover [3] 11/10 39/13 39/22
created [19] 18/2 18/8 18/10 18/11 19/13 19/16 20/12 20/13 29/22 29/25 30/13 30/25 31/4 31/7 31/12 31/13 31/20 31/25 32/1
creates [1] 30/21
crime [3] 10/16 10/17 10/19
crimes [2] 117/7 117/9
criminal [3] 2/5 11/2 22/11
cross [7] 3/5 3/14 4/14 20/25 48/13 74/5 89/5
cross-examination [5] 4/14 20/25 48/13 74/5 89/5
currently [3] 33/4 66/6 76/19
custom [2] 56/10 102/22
cyber [3] 10/16 10/19 11/9

**D**

D.C [3] 10/16 21/6 21/11
daily [1] 34/20
Darnell [1] 19/20
data [21] 11/19 12/11 12/18 12/20 12/20 13/6 13/13 17/22 17/22 25/11 25/13 25/14 25/18 25/23 26/4 26/17 27/10 27/10 27/14 27/17
data from [1] 25/12
date [23] 18/17 18/18 29/10 29/11 29/15 29/16 29/18 29/21 30/5 30/11 30/12 30/19 31/24 31/24 43/6 47/12 59/12 60/17 82/2 99/21 106/21 114/13 119/14
dated [2] 43/7 81/6
dates [3] 29/6 81/8 112/7
day [20] 1/12 19/24 33/21 33/21 34/11 34/11 34/17 34/17 36/6 36/6 36/9 36/9 41/11 41/11 50/21 55/9 55/9 69/11 99/6 99/8
days [3] 21/22 40/12 88/17
deadline [3] 88/19 115/15 116/4
dealt [1] 24/24
DEAN [2] 2/15 2/15
Dear [2] 59/16
debrief [1] 34/19

**debtor** [1] 7/5

December [5] 60/23 58/24 60/4 61/9 88/1 88/3
December 11 [1] 59/12
December 2012 [1] 61/9
December 2018 [1] 88/3
December 27 [1] 60/2
December 3rd [1] 87/17
December of [1] 40/23
decision [2] 48/20 114/19
decisions [2] 34/8 54/16
defendant [30] 1/12 1/3 4/9 11/14 16/11 16/14 33/14 34/1 34/10 35/12 37/25 41/3 41/14 42/2 42/5 42/13 43/4 43/11 43/25 44/18 46/11 47/11 47/15 47/20 73/19 74/5 74/15 88/9 88/14 116/11
defendant's [6] 16/5 34/4 34/25 35/24 39/5 44/24
defendants [2] 5/16 36/8
defense [6] 3/13 3/16 102/3 107/18 113/15 116/15
degrees [1] 49/23
delegate [1] 34/17
delicate [1] 43/22
deny [1] 72/6
department [24] 5/18 10/18 21/8 92/21 93/3 93/8 95/7 95/13 95/15 98/19 99/1 100/18 101/6 101/11 103/20 104/4 104/13 104/22 105/5 105/10 105/16 105/23 106/3 106/8
department's [1] 95/14
dependent [1] 29/18
depending [1] 78/16
deposited [1] 100/10
deposition [2] 8/3 8/3
depositions [1] 52/4
depression [1] 94/25
describe [3] 12/17 26/15 34/3
describes [1] 17/22
description [1] 55/11
destroyed [1] 72/19
destroying [1] 72/16
details [2] 5/15 34/19
determination [1] 95/14
determine [3] 29/25 78/10 103/11
determined [1] 30/15
determines [1] 29/17
develop [1] 77/6
developing [1] 117/20
device [14] 13/17 14/9 16/11 16/14 25/11 25/14 25/24 26/5 29/8 29/8 29/12 29/19 29/23 31/3
devices [9] 11/20 12/2 12/6 12/9 13/25 14/2 14/11 25/13 25/13
devoted [1] 51/7
did [149]
didn't [13] 5/2 30/8 30/16 61/12 61/16 62/18 63/15 63/22 64/2 70/2 97/10 99/23 100/7
difference [2] 7/7 106/22
different [6] 7/17 47/18 49/5 67/16 70/19 78/10
differently [1] 106/13 106/19
digital [15] 10/20 10/21 11/1 11/8 11/20 12/2 12/11 13/15 13/17 14/11 16/1 16/14 17/18 24/2 24/9
diminished [1] 35/15
direct [20] 3/5 3/14 5/14 10/11 26/16 32/23 54/6 55/6 66/20 70/11 70/14 71/17 71/22 76/15 92/14 93/17 94/1 94/20 102/1 110/20
directed [1] 82/18
directing [1] 108/1
directive [1] 9/23
directly [3] 27/11 54/10 76/9
disabilities [1] 95/5
disabled [1] 77/16
disbursed [1] 85/20
disbursements [4] 86/9 86/23 87/2 87/3
disbursing [1] 54/21
disclose [1] 90/25
discover [1] 28/6

**discovery** [10] 36/7 36/8 113/21 113/24 114/8 114/14 114/15 115/16 115/17 116/4 116/25
discretion [1] 7/11
discuss [3] 60/24 65/19 113/8
discussed [4] 73/21 84/11 84/12 87/10
discussing [1] 109/14
discussion [2] 15/12 65/7
discussions [3] 4/23 45/1 46/11
dispute [7] 8/6 69/7 69/15 69/19 70/25 71/9 72/12
disrespectful [1] 9/22
DISTRICT [2] 1/4 1/5
division [3] 1/6 2/5 49/20
do [156]
document [108] 7/20 7/24 13/22 13/25 14/2 14/15 14/16 14/23 15/12 15/14 16/10 17/12 17/16 17/25 18/1 18/3 18/7 18/11 19/9 19/10 19/19 20/1 20/5 20/7 20/12 20/13 28/2 28/8 28/9 29/15 29/18 29/22 29/24 30/21 30/22 30/25 30/25 31/4 31/8 31/13 31/14 31/20 31/25 32/1 36/18 37/10 37/22 38/8 38/9 39/5 39/22 42/10 45/14 45/21 46/5 46/8 55/25 56/3 57/9 59/15 63/4 66/21 66/23 67/8 67/14 67/17 68/2 68/14 70/12 70/13 71/2 81/12 81/15 83/15 92/8 92/12 93/5 93/12 94/21 96/10 97/3 97/9 97/10 97/16 98/10 98/15 98/20 99/3 99/4 101/1 102/2 102/9 103/6 103/10 103/15 103/24 104/19 107/17 109/7 109/23 110/20 110/21 110/25 111/9 113/23 114/1 116/8 116/8
documents [48] 5/17 15/21 15/24 16/13 16/22 16/24 17/3 17/8 17/23 26/1 28/3 28/5 28/24 30/12 30/13 38/5 53/17 55/14 55/19 62/8 72/16 72/19 72/20 72/21 80/4 80/6 84/15 88/18 88/21 94/17 94/19 107/22 108/8 108/13 108/16 109/9 109/12 110/3 110/4 110/6 110/8 110/14 114/5 115/7 115/12 115/18 116/12 118/2
does [25] 12/20 14/17 19/5 33/8 37/7 39/13 39/15 44/6 60/4 60/4 60/6 60/11 60/12 71/2 71/25 72/4 77/17 79/14 79/16 79/20 87/15 100/22 101/9 112/12 112/17
doesn't [5] 60/7 60/9 60/11 71/6 116/2
doing [6] 23/8 31/19 57/14 57/17 59/10 62/3
DOJ [1] 10/19
don't [63] 5/1 5/8 6/1 6/21 6/22 7/17 8/3 8/5 9/22 14/8 15/11 18/24 32/2 40/11 43/21 43/23 45/19 52/14 54/4 56/8 56/15 57/17 57/17 57/18 57/20 59/5 59/10 60/10 61/6 61/25 62/4 64/5 64/7 65/13 66/18 67/2 69/6 69/14 69/15 69/19 69/19 70/3 70/24 70/25 71/9 71/15 72/6 72/11 72/18 72/18 81/8 81/9 91/7 103/1 108/22 113/10 114/24 115/16 116/12 116/14 117/25
Donald [3] 31/2 31/4 31/7
done [3] 13/10 27/18 54/2
door [1] 117/18
doubt [2] 103/1 103/5
down [2] 21/25 40/2
dozens [1] 26/14
draft [1] 22/24
drafted [3] 23/24 36/6 36/7
drafts [2] 45/19 67/2
drive [1] 13/3
drives [1] 27/11
Duck [3] 31/3 31/4 31/7
due [2] 27/10 79/17 94/24
duration [1] 69/19
during [20] 4/14 22/14 34/3 34/5 35/17 46/10 48/24 49/1 57/23 69/24 72/16 72/24 74/6 91/1 107/21 107/24 107/25 110/19 115/9
duties [2] 10/24 77/4
duty [1] 75/5
dynamic [1] 65/7

**E**

E-l-s-a [1] 76/12
e-mail [31] 23/6 23/7 24/12 24/16 27/3 27/4 27/9 37/24 38/18 38/20 38/21 40/23 42/12

**E**

e-mail... [18]  42/25 43/3 43/6 43/11 43/14
 44/3 44/8 44/15 45/7 73/16 73/19 73/24 74/3
 88/12 108/18 108/24 115/19 116/14
e-mailing [2]  43/11 43/12
e-mails [5]  22/21 22/24 23/5 50/24 96/1
each [1]  28/23
Eagan [13]  12/14 33/7 33/8 33/9 33/11 33/20
 34/4 35/17 36/5 37/2 37/16 47/7 72/25
earlier [4]  16/4 42/4 44/11 110/2
early [2]  50/25 70/15
easier [3]  73/18 83/11 83/14
edit [2]  19/25 20/19
edited [4]  30/25 31/7 31/25 32/1
edits [1]  30/22
effect [2]  94/6 94/9
efforts [2]  94/6 94/9
either [3]  35/9 60/11 62/19
electricity [1]  104/3 104/17 106/17
electronic [2]  79/21 80/20
electronically [1]  84/2
elevator [2]  9/21 9/21
elicit [1]  5/12
elicited [1]  5/14
eligibility [2]  78/8 84/12
eligible [2]  59/24 78/7
ELSA [3]  3/7 76/7 76/8 76/11
else [12]  26/12 31/7 31/21 57/17 57/18 61/13
 62/6 67/8 72/10 79/5 109/19 111/6
enables [1]  101/9
enclosure [1]  96/16
end [1]  42/7
ends [1]  35/11
engage [1]  73/3
engaged [3]  36/8 75/10 95/22
engaging [1]  72/24
enjoyed [1]  48/23
enough [1]  91/14
entered [1]  82/13
entire [8]  24/7 30/14 36/18 38/8 38/9 62/23
 72/16 72/24
entitled [1]  57/4 74/25 75/6 119/10
entries [5]  100/17 101/1 112/7 112/10 115/25
entry [2]  99/15 112/14
Ernest [2]  46/3 59/16
escalated [2]  41/19 53/1
especially [2]  5/22 36/3
essence [2]  21/25 31/21
essentially [1]  102/8
established [4]  85/25 86/11 87/5 103/7
establishes [1]  29/11
et [2]  43/16 73/25
ether [1]  29/17
eve [2]  58/20 73/21
even [5]  80/6 114/21 114/24 115/16 115/17
Eventually [1]  41/25
ever [26]  23/14 45/17 45/21 46/5 46/7 46/11
 46/24 47/4 47/7 47/20 49/12 49/14 49/16
 55/25 59/8 66/23 67/10 67/13 67/16 67/19
 71/14 72/2 72/10 72/23 88/9 97/16
every [2]  50/13 51/10 58/11
everything [2]  51/10 96/23
evidence [23]  8/8 15/6 16/25 17/18 36/16
 37/10 38/15 42/24 45/9 46/15 65/3 67/7 67/10
 74/24 75/17 81/25 83/8 98/19 99/1 103/15
 111/11 114/7 117/22
exactly [6]  62/4 97/19 97/21 97/23 97/24 99/1
exam [2]  7/5 117/13
examination [15]  4/11 4/11 17/18 20/25
 32/23 48/13 66/5 70/14 73/11 74/5 74/22
 76/15 89/5 93/17 94/1
examinations [2]  11/1 11/11
example [7]  7/6 17/23 41/20 78/6 78/9 114/23
examples [3]  78/5 78/18 113/19
except [1]  117/9
exchange [1]  37/24
exclude [1]  115/20
excused [4]  32/7 32/10 75/21 75/25
exhibit [71]  3/10 3/11 3/11 3/12 3/17 3/18 7/5

7/7 7/13 7/14 7/15 7/16 7/18 7/23 7/24 8/5 8/7,
8/11 8/12 8/14 9/6 18/4 18/5 18/6 15/6
18/5 19/13 20/3 20/9 36/17 37/20 38/3 38/15
38/23 39/7 40/9 42/8 42/16 42/21 42/24
45/10 45/12 46/15 46/16 47/25 48/1 55/22
55/22 57/3 59/2 59/3 62/21 62/22 66/20 73/15
81/10 81/13 81/22 81/25 83/6 86/3 96/11 98/3
98/6 102/4 103/3 107/15 107/18 109/20
109/21 115/19
Exhibit 1 [4]  36/17 55/22 55/22 57/3
Exhibit 1005 [1]  98/6
Exhibit 1006 [3]  107/18 109/20 115/19
Exhibit 108 [2]  83/6 96/11
Exhibit 11 [2]  13/19 14/19
Exhibit 115 [2]  18/5 19/13
Exhibit 116 [2]  20/3 20/9
Exhibit 21 [5]  42/8 42/16 62/21 62/22 73/15
Exhibit 37 [5]  7/16 8/12 8/14 45/10 66/20
Exhibit 40 [1]  46/15
Exhibit 407 [1]  7/23
Exhibit 60 [4]  7/14 7/15 8/12 8/14
Exhibit 7 [4]  37/20 38/3 59/2 59/3
Exhibit 70 [3]  81/10 81/13 81/22
exhibits [10]  3/9 3/10 3/16 8/2 15/18 16/17
 16/25 113/25 114/10 115/21
Exhibits 115 [1]  16/17
exist [1]  30/8
exists [1]  11/17
expect [4]  56/23 57/1 101/21 117/25
expectation [1]  64/1
expected [1]  63/23
expenses [4]  61/10 61/13 85/18 107/9
experience [12]  13/11 17/17 49/23 50/13
 56/14 67/4 67/6 98/18 98/25 101/13
experienced [3]  49/7 50/21 53/5
expert [3]  77/2 77/6 89/12
explain [2]  52/25 100/22 100/24
exported [2]  13/3 27/11
expressed [1]  100/12
extension [2]  88/7 88/16
extent [2]  91/22 117/12
extract [5]  11/19 12/18 13/5 25/10 25/12
extracted [2]  25/14 30/12
extracting [1]  13/13
extraction [1]  13/6

**F**

face [4]  43/25 44/1 91/11 91/11
facility [3]  39/11 39/14 39/25
fact [9]  4/17 9/12 9/19 16/23 58/24 94/24
 110/7 115/20 116/21
fact-finders [1]  9/19
factors [2]  78/9 84/12
facts [5]  4/16 4/24 5/24 6/15 65/2
fair [31]  14/15 16/13 22/12 27/19 29/19 30/1
 31/8 31/14 37/24 42/12 49/3 49/24 49/25 51/5
 51/6 51/8 51/9 51/20 54/13 54/14 55/11 58/7
 64/14 64/18 69/20 81/19 89/14 89/15 91/14
 95/15 95/16
fairly [1]  23/9
falsifying [3]  72/15 72/20 72/21
familiar [10]  11/13 11/16 80/12 80/14 93/18
 94/2 94/5 94/8 94/12 94/16
family [5]  43/16 64/8 64/12 64/22 65/7
far [2]  16/7 34/7
father [1]  64/25
fax [2]  39/13 39/22
February [5]  82/11 92/2 92/18 94/23 95/8
February 2014 [1]  82/11
February 28 [2]  92/18 94/23
February 28th [2]  92/2 95/8
Federal [2]  2/10
fee [1]  37/13
fees [2]  37/7 37/17
feet [1]  63/12
felt [1]  91/22
few [1]  78/18
fictional [1]  31/6
field [1]  30/23

figure [1]  117/3
file [12]  13/4 13/5 13/9 13/25 62/8 62/4 62/5
 62/15 62/18 80/20 80/25 82/6 91/17
filed [2]  41/2 50/15
files [5]  12/21 12/23 12/24 13/3 116/18
filings [2]  51/4 53/3
Filippo [1]  66/15
fill [1]  40/20
final [3]  34/8 45/20 67/3
finally [1]  6/25
financial [1]  55/14
find [3]  9/19 116/23 116/25
finders [1]  9/19
fine [3]  8/8 15/14 118/3
fingertips [1]  102/19
finished [1]  19/8
fire [1]  63/13
firm [45]  12/14 33/4 33/5 33/12 33/17 34/3
 34/6 35/18 40/20 40/24 41/12 43/12 45/16
 48/21 49/1 49/2 49/5 49/6 49/19 51/1 53/6
 54/11 54/12 54/16 56/7 56/9 56/10 56/11 57/7
 57/22 58/12 61/10 66/13 66/16 66/17 68/18
 67/5 67/6 70/17 70/15 70/23 72/17 82/11 95/18
 104/9
firm's [3]  14/5 74/7 74/11
first [30]  10/6 12/19 15/8 32/18 36/4 38/7
 38/11 38/17 38/24 39/13 40/3 40/9 46/17 63/8
 68/21 69/13 76/10 76/11 83/12 83/15 83/21
 83/24 90/6 90/24 93/10 96/10 97/5 97/7 108/1
 109/10
fit [1]  57/12
five [2]  70/12
flags [2]  70/1 70/23
flipping [1]  40/8
fluctuated [1]  58/3
focus [3]  11/8 15/9 71/18
focused [1]  61/18
folder [1]  62/9
follow [2]  79/14 79/16
following [4]  9/23 106/19 106/21
food [1]  104/1 104/15 106/16
foregoing [1]  119/8
forensic [14]  11/1 11/2 11/7 11/10 11/19
 11/23 12/1 12/16 12/19 13/14 17/18 26/11
 28/7 30/14
forensics [2]  11/8 13/15
forging [1]  71/14 72/3
forgotten [1]  6/3
form [8]  22/18 65/20 92/12 110/11 110/12
 110/16 110/17 113/9
format [1]  119/11
forms [1]  40/20
forth [1]  26/25
forward [1]  4/25
forwarded [1]  27/14
found [9]  14/2 14/16 15/2 16/2 16/3 16/5
 16/10 16/14 16/23
foundation [11]  14/21 16/19 34/14 35/2 64/15
 65/2 93/9 95/2 109/22 109/24 110/22
foundational [2]  93/16 94/10
four [1]  37/5
Fourteen [1]  76/24
Fourth [1]  2/11
FOX [1]  2/4
Frankly [2]  63/10 115/24
Frauds [2]  2/6
free [1]  8/13
FRIDAY [1]  4/1
front [6]  14/15 73/18 94/21 107/18 111/6
 111/16
FTK [2]  13/14 28/7
fuel [3]  104/2 104/16 106/17
full [2]  15/13 93/10
fully [2]  30/15 66/19
function [2]  58/23 58/24
funds [3]  70/1 70/22 74/12
further [6]  6/11 10/22 48/10 73/8 74/20 82/17
 89/1 117/21

**G**

**games** [1] 115/7
**garbage** [2] 104/3 104/17 106/18
**gas** [3] 104/2 104/17 106/17
**gather** [2] 23/14 23/24
**gave** [6] 26/20 62/19 62/19 88/16 97/16
108/21
**geared** [1] 55/8
**general** [4] 6/11 15/13 17/13 96/4
**generally** [15] 33/19 34/16 35/9 36/2 41/22
43/10 49/20 50/18 52/5 70/3 70/25 77/13 80/2
80/4 92/12
**gentleman** [3] 25/20 69/2 89/23
**gentlemen** [3] 9/14 65/18 113/7
**Gents** [1] 43/15
**Geoff** [5] 43/16 44/21 59/9 64/12 94/3
**Geoffrey** [6] 35/19 36/11 37/16 46/3 59/16
80/12
**get** [17] 5/15 6/15 21/25 24/11 27/5 40/7
59/23 63/11 64/25 74/25 93/2 93/19 94/6
94/22 103/25 106/14 117/14
**getting** [12] 5/23 35/10 56/16 56/17 85/1 85/4
95/18 103/12 103/22 104/14 104/21 116/14
**give** [7] 6/10 6/20 34/16 52/5 62/18 78/5 88/7
**given** [11] 5/20 6/21 26/11 26/16 26/18 49/12
49/14 51/18 95/11 95/15 117/22
**giving** [1] 62/15
**go** [24] 39/21 44/9 45/21 46/15 47/25 57/3
59/5 59/15 63/16 68/5 77/19 78/23 79/11
87/20 96/11 96/14 96/15 99/9 101/10 104/12
105/3 109/4 112/23 115/17
**goes** [2] 6/7 78/12
**going** [21] 5/1 6/10 6/20 8/1 8/2 9/17 35/10
36/20 45/9 60/17 63/10 63/16 63/20 90/12
108/2 108/23 109/5 110/23 113/6 113/20
115/1
**gone** [1] 61/4
**good** [26] 4/5 4/7 4/8 4/11 9/6 9/9 9/10 9/13
9/14 10/13 10/14 21/2 21/3 23/9 32/25 33/1
48/15 48/16 48/23 73/13 73/14 76/17 76/18
89/7 89/8 90/21
**got** [16] 15/13 24/16 25/18 44/21 52/20 58/12
58/16 63/19 75/6 106/21 114/21 114/25
115/11 115/18 116/5 116/21
**government** [41] 9/25 14/18 16/16 19/2 22/3
22/16 22/25 32/12 38/2 42/15 46/23 47/23
68/18 68/24 69/25 70/21 71/11 71/13 71/18
72/1 72/8 72/14 72/22 75/9 76/4 81/21 88/25
89/13 89/19 89/22 91/17 97/17 97/8
101/20 107/21 108/7 114/2 114/22 115/23
115/25
**government's** [7] 10/4 11/13 32/16 37/20
76/8 81/10 114/11
**group** [4] 33/5 66/9 66/12 66/14
**GUERRERO** [19] 3/7 76/7 76/8 76/11 76/17
87/21 89/9 92/8 93/16 93/17 96/18 98/5
102/15 104/13 107/17 109/4 109/9 110/2
112/3
**guess** [5] 6/12 8/9 108/20 113/17 114/18

**H**

**had** [51] 5/18 12/3 13/8 21/15 23/9 24/7 24/23
25/16 27/18 40/25 41/2 41/11 45/16 45/17
46/23 49/23 51/11 51/16 55/14 55/25 56/3
58/16 61/4 61/5 61/6 62/8 64/2 64/2 64/7
64/11 66/22 67/1 67/19 75/10 86/19 90/3 90/8
91/17 94/13 95/18 97/5 100/13 100/13 100/17
102/19 105/5 105/15 105/23 106/13 106/8
116/4
**half** [3] 41/9 69/24 71/19
**hall** [2] 6/23 9/20
**hallway** [1] 21/16
**hand** [1] 27/12
**handed** [1] 98/5
**handing** [2] 107/17 115/7
**handle** [3] 33/8 33/9 45/6
**handled** [2] 35/16 43/17
**handling** [6] 33/22 34/9 34/17 36/6 41/7 41/11
**hands** [2] 51/5 64/25

**hands-on** [1] 51/5
**HANNA** [1] 77/20
**happened** [4] 5/5 6/9 47/1 61/20
**happening** [1] 34/20
**happens** [2] 68/16 79/13
**hard** [2] 13/3 27/11
**has** [29] 4/17 4/22 7/21 22/9 23/14 24/21
24/23 24/25 37/20 79/10 81/9 82/11 82/13
86/10 86/11 87/5 87/5 97/14 99/7 99/9 100/24
106/21 113/21 113/24 113/24 114/1 114/14
115/25 117/12
**have** [112] 4/12 5/18 5/20 5/25 6/3 6/13 6/21
7/8 7/24 8/20 9/12 10/21 11/18 11/20 13/10
13/12 15/11 15/13 17/4 18/21 19/5 21/15
21/22 22/3 22/6 22/10 22/14 24/5 24/7 25/1
26/7 26/25 30/10 31/6 31/10 31/23 40/14 45/5
45/19 49/12 49/13 49/14 49/15 49/16 49/18
50/8 55/22 57/10 58/1 59/19 60/9 60/25 61/12
61/20 61/22 61/22 62/3 62/22 63/23 64/11
64/20 64/21 64/24 65/6 65/13 67/2 67/23
67/24 68/18 71/16 72/22 75/7 76/23 77/22
77/23 77/24 78/14 78/16 78/25 81/8 82/16
84/2 86/18 87/19 89/16 90/10 90/18 91/1
91/12 92/8 95/22 96/1 97/14 98/5 98/5 98/6
102/16 105/10 107/17 107/18 107/22 109/5
109/15 111/16 115/1 115/15 115/17 115/20
115/22 116/2 117/1 117/10
**haven't** [1] 102/10
**having** [9] 47/10 47/14 61/23 61/23 62/8
62/10 65/6 68/12 117/8
**he** [131]
**he's** [8] 69/2 69/9 93/12 114/21 115/2 115/3
117/7
**head** [3] 4/19 34/6 34/6
**heading** [3] 40/10 59/19 103/19
**health** [1] 62/11
**hear** [2] 40/10 87/12
**hearsay** [14] 20/16 18/38 5/5 42/18 71/20
92/22 114/5
**heating** [1] 104/2 104/16 106/17
**heavily** [1] 58/13
**heels** [1] 21/16
**held** [3] 24/5 63/13 119/10
**help** [7] 51/9 103/13 103/22 103/25 104/5
104/14 106/15
**helping** [1] 40/20
**her** [10] 62/19 102/8 102/10 103/14 108/21
108/22 108/23 109/24 110/24 111/6
**here** [21] 18/24 21/22 22/4 23/17 23/23 29/2
30/10 64/20 65/17 68/9 88/19 89/17 91/3
94/18 96/3 97/17 101/1 106/13 112/14 113/7
115/1
**hereby** [1] 119/7
**hesitate** [1] 82/16
**hide** [3] 4/20 67/7 67/11
**hierarchy** [2] 58/4 58/6
**high** [2] 44/7 112/15
**High-profile** [1] 112/15
**highly** [1] 6/8
**Hills** [1] 39/10
**him** [31] 7/8 7/8 26/25 32/9 34/19 36/14 40/20
44/20 44/22 45/18 87/25 88/7 88/16 91/11 91/12
99/6 99/7 102/17 103/13 103/23 104/15
104/21 114/17 114/25 117/14
**himself** [1] 85/19
**hire** [1] 48/20
**his** [43] 6/7 6/8 7/19 34/10 35/4 40/21 61/4
61/13 61/24 62/9 62/12 64/8 64/9 64/12 64/13
64/13 64/22 64/25 73/24 80/15 84/12 85/6
85/12 85/15 85/17 86/17 88/23 92/1 92/20
93/2 93/19 95/4 95/4 95/18 99/2 99/22 102/16
104/10 104/11 113/1 114/16 116/1 117/14
**home** [1] 104/6
**honestly** [2] 52/9 52/14
**Honor** [98] 4/5 4/8 4/13 4/17 5/8 5/12 6/2 6/6
6/17 6/20 6/25 7/3 7/21 8/11 8/16 8/17 9/6
9/10 10/10 14/6 14/18 14/20 14/25 15/5 15/16
16/16 16/18 16/21 17/2 17/4 18/14 19/4 20/21

20/24 25/6 32/6 32/9 32/14 32/22 34/13 35/2
35/7 38/23 43/4 35/6 36/10 36/14 38/25 39/4
39/7 42/15 42/17 42/20 42/23 47/22 48/12
66/3 70/8 71/20 73/8 73/10 74/13 74/16 75/22
75/23 76/2 76/6 76/14 81/21 88/24 89/4 92/5
93/13 95/1 98/1 102/3 102/7 103/14 107/13
108/18 109/22 111/1 111/3 111/8 113/16
115/5 115/10 115/11 115/14 115/17 115/24
116/6 116/9 116/10 116/20 117/1 117/17
117/24
**Honor has** [1] 7/21
**Honor's** [4] 5/23 5/24 7/10 114/12
**HONORABLE** [1] 1/8
**Hopefully** [1] 8/20
**host** [2] 43/18 43/19
**hours** [7] 11/6 22/4 50/21 53/23 69/20 74/6
74/10
**how** [37] 10/21 11/16 13/24 15/23 18/2 21/22
22/3 22/6 24/5 24/11 26/11 28/5 28/5 34/3
34/10 49/10 60/16 73/21 73/24 74/6 76/23
77/17 78/23 80/14 85/1 85/4 86/22 88/12
88/16 89/16 100/22 101/6 108/23 110/10
114/24 115/15 117/8
**hundred** [1] 53/23
**hundreds** [4] 51/14 51/15 51/18 114/17
**hygiene** [1] 104/5

**I**

**I'll** [2] 8/18 111/11
**I'm** [22] 6/10 9/17 14/24 18/16 33/3 45/9
47/12 48/8 65/15 67/12 69/22 70/4 93/25 94/9
94/9 102/3 102/6 106/11 108/2 110/23 117/8
117/20
**I've** [2] 92/8 118/2
**I-N-D-E-X** [1] 3/3
**idea** [5] 61/20 64/20 90/10 90/22 116/4
**identical** [1] 7/6
**identifiable** [1] 17/8
**identification** [3] 98/3 98/6 107/15
**identify** [1] 12/2
**illness** [1] 94/25
**image** [1] 29/23
**images** [13] 11/19 11/23 12/1 12/6 12/7 12/16
12/18 12/21 13/17 25/20 26/11 26/17 29/23
**immediate** [1] 91/10
**impeach** [3] 113/23 114/3 114/6
**impeachment** [5] 71/21 102/4 113/20 114/20
115/3
**impersonating** [1] 72/10
**import** [1] 12/19
**importance** [1] 44/7
**important** [3] 40/4 41/19 43/17
**impression** [1] 43/21
**include** [1] 75/11
**included** [4] 75/15 97/3 98/15 100/16
**includes** [1] 38/21
**including** [2] 25/4 41/12
**income** [18] 40/5 40/16 77/3 77/11 77/14
77/15 77/23 78/9 78/10 79/10 80/16 84/2
84/13 88/23 100/4 104/11 104/12 107/10
**increase** [1] 35/5
**increased** [1] 58/16
**incredibly** [1] 51/5
**independence** [2] 9/18 9/24
**independent** [4] 11/7 29/10 29/16 57/10
**index** [1] 116/13
**indexes** [1] 12/22
**indicate** [4] 8/4 18/7 19/21 84/5
**indicated** [1] 19/23
**individual** [5] 78/24 79/2 79/10 80/10 111/23
**individuals** [7] 22/15 49/6 51/19 77/15 79/1
79/21 80/3
**inform** [1] 101/14
**information** [18] 4/19 12/5 12/8 12/13 16/1
17/24 25/25 27/6 27/19 59/23 61/24 79/18
88/5 99/8 100/24 114/20 116/5 117/25
**informed** [4] 71/2 93/8 104/4 116/20
**initial** [8] 79/7 92/1 92/20 93/2 93/4 95/18
116/24 117/5

**J**

**initially [4]** 22/8 92/16 93/7 94/22
**initiated [1]** 82/25
**initiating [1]** 78/23
**initiation [1]** 83/1
**input [1]** 51/1
**inquiries [1]** 82/18
**inside [1]** 12/21
**instance [4]** 5/13 7/4 31/2 99/9
**instances [2]** 23/1 53/16
**instruct [1]** 4/22
**instructing [2]** 6/1 63/18
**instruction [3]** 5/19 6/11 6/19
**instructions [4]** 6/11 60/16 117/5 117/21
**insurance [4]** 78/17 104/2 104/16 106/17
**intellectual [1]** 10/17
**interactions [1]** 62/20
**interrogation [1]** 117/8
**interview [19]** 19/2 33/11 60/21 60/25 90/6 90/24 102/17
**interviewed [1]** 33/15
**introduced [1]** 7/25
**introducing [1]** 7/3
**investigation [8]** 11/13 11/16 11/21 13/2 14/13 22/6 22/10 26/13
**investigations [1]** 11/3
**investigative [4]** 10/20 10/22 24/2 24/10
**involve [1]** 35/21
**involved [20]** 34/11 34/18 35/12 35/15 41/4 41/13 41/15 41/21 41/23 42/2 42/5 50/4 50/7 50/8 50/10 54/11 54/15 54/18 58/13 95/21
**involvement [7]** 34/25 35/4 53/5 58/1 58/16 58/23 95/17
**involves [1]** 35/9
**involving [1]** 53/16
**irrelevant [1]** 117/16
**IRS [4]** 11/24 12/16 14/12 16/2
**is [238]**
**isn't [10]** 50/13 51/2 58/21 70/21 71/12 72/8 72/14 93/6 94/22 111/9
**issue [3]** 71/21 112/18 112/19
**issues [4]** 4/17 8/20 65/20 113/9
**it [214]**
**it's [31]** 5/4 5/16 8/2 8/7 15/3 15/11 15/12 29/18 36/18 36/24 38/25 39/4 43/7 51/9 57/9 66/13 71/21 73/18 78/10 80/4 95/12 97/13 102/25 106/13 108/22 108/23 110/21 111/9 112/13 113/18 116/23
**Item [2]** 4/3 9/4
**items [1]** 104/22
**its [3]** 9/25 32/12 76/4
**itself [1]** 37/10

**J**

**J-o-s-e-p-h [1]** 10/7
**jail [1]** 5/13
**JAMES [1]** 1/8
**January [4]** 29/21 29/25 47/10 47/13
**January 1st [2]** 29/21 29/25
**Joe [4]** 9/12 10/2 62/23 96/16
**JOHN [4]** 1/11 2/14 4/4 9/5
**Johnson [40]** 4/15 5/13 6/4 35/19 36/12 36/13 37/3 37/16 39/11 39/25 40/15 40/18 40/25 44/3 45/1 45/18 45/21 46/3 46/5 46/7 47/5 47/8 47/11 47/15 47/16 56/21 57/7 57/15 57/19 57/24 58/2 58/4 58/6 58/6 58/11 58/20 59/9 59/11 59/16 60/10 60/13 60/21 61/4 62/11 64/3 64/8 64/12 64/21 65/8 67/11 67/13 74/1 74/25 80/12 81/2 82/12 82/14 82/17 82/25 83/4 83/16 83/18 84/8 84/20 85/14 85/22 86/14 86/17 87/1 87/24 91/18 92/1 92/16 93/7 94/3 94/14 94/22 95/13 95/18 95/23 96/23 97/11 97/13 98/19 99/1 99/13 99/21 100/17 101/10 101/11 101/14 102/15 103/7 103/11 103/20 104/8 104/13 105/5 105/11 105/15 105/24 106/4 106/9 109/13 111/24 112/25 113/4 116/1 117/10
**Johnson's [20]** 40/24 41/15 47/19 55/6 61/10

**K**

64/25 65/1 67/22 80/20 80/23 80/25 82/6 82/7 96/6 99/4/6 95/20 104/11 104/2 104/3 104/5 116/7
**joined [1]** 33/17
**joining [1]** 33/11
**JOSEPH [4]** 3/6 10/4 10/7 89/23
**JUDGE [1]** 1/8
**judgment [2]** 7/5 41/20
**Judicial [1]** 119/12
**Judy [7]** 39/17 39/17 39/20 43/17 44/22 62/15 62/19
**Julian [1]** 69/11
**July [15]** 1/17 4/1 89/19 89/20 105/23 115/14 115/14 115/18 115/19 116/5 116/12 116/14 116/16 116/21 119/14
**July 12th [1]** 115/19
**July 20th [6]** 115/14 115/14 115/18 116/5 116/12 116/14
**July 7th [2]** 89/19
**July 9th [2]** 89/20 105/23
**junior [1]** 49/2
**jurors [1]** 6/12
**jury [23]** 4/2 4/22 5/4 6/1 6/21 8/2 8/4 8/13 9/3 26/15 43/14 50/3 50/6 52/25 62/23 65/22 66/1 83/24 100/23 113/12 116/1 117/5 117/21
**jury's [1]** 4/19
**just [32]** 4/5 8/3 9/20 15/3 30/18 38/7 40/3 44/18 47/16 51/21 62/7 62/23 65/15 75/5 83/15 87/20 92/1 94/9 97/10 102/6 108/13 109/14 111/7 111/11 114/18 115/6 115/7 116/5 116/11 116/20 116/23 117/24
**Justice [2]** 10/18 21/8
**JVS [1]** 1/11 4/3 9/4

**K**

**keep [1]** 40/21
**keeping [1]** 40/5
**kept [1]** 80/2
**keyword [5]** 12/23 12/25 26/16 26/20 27/5
**keywords [2]** 13/1 27/16
**Kim [5]** 69/9 91/3 91/5 91/6 97/16
**kind [6]** 12/6 17/24 33/8 35/10 79/7 80/2
**kit [1]** 13/14
**kitchen [1]** 43/23
**knew [2]** 61/3 61/9
**know [46]** 5/1 5/4 5/8 7/18 7/20 16/7 16/9 17/18 25/23 25/25 30/5 30/24 32/2 39/10 39/17 43/21 47/1 48/7 52/14 56/20 56/23 56/24 57/1 57/14 57/17 57/18 57/18 61/16 61/25 62/4 63/15 64/2 64/7 64/8 64/9 64/11 64/13 64/22 77/24 87/2 104/23 108/22 114/24 115/2 115/11 116/3
**knowing [4]** 30/11 31/6 31/23 72/18
**knowledge [9]** 37/15 37/18 39/5 47/7 47/9 57/10 71/16 104/24 117/2
**knowledgeable [1]** 34/19
**knows [2]** 7/3 113/25

**L**

**L.A [9]** 84/25 85/16 85/20 86/9 86/19 86/21 87/2 99/22 100/7
**Lab [2]** 10/16 10/19
**labeled [2]** 12/2 81/10
**lack [3]** 14/21 43/23 95/2
**Lacks [1]** 34/13
**ladies [3]** 9/14 65/18 113/7
**language [1]** 107/4
**laptop [7]** 12/1 12/11 12/25 25/17 29/21 31/10 31/12
**large [1]** 41/11
**last [25]** 10/6 19/21 19/23 19/25 20/2 20/17 20/18 20/19 22/8 29/3 30/23 32/18 40/8 45/24 47/25 56/9 58/5 76/10 76/12 80/2 80/25 82/15 89/14 108/2 110/21
**lasted [1]** 69/17
**late [1]** 87/8
**later [3]** 61/7 61/8 106/22
**law [21]** 2/15 12/14 14/5 33/4 33/5 33/5 48/21 49/19 54/12 54/16 56/7 66/9 66/12 66/13 66/14 70/1 70/15 70/23 82/11 95/18 104/9

**L**

**lawsuit [2]** 41/1 47/3
**lawyer [1]** 43/11
**lawyers [1]** 53/5
**lay [2]** 109/24 110/23
**lazy [1]** 54/5
**lead [1]** 63/25
**leader [1]** 89/25
**Leading [1]** 14/6
**learning [1]** 64/24
**least [1]** 4/15
**left [6]** 45/16 69/2 69/9 91/3 91/10 117/18
**legal [5]** 34/8 47/4 47/8 51/4 56/22
**less [1]** 58/1
**let [6]** 5/4 5/12 9/14 14/4 16/4 23/21 36/16 66/20 67/16 71/17 93/6 93/14 93/16 94/20 110/20 117/4
**let's [7]** 21/25 47/25 86/13 87/20 116/23 116/25 117/2
**letter [24]** 40/3 40/4 40/19 59/11 61/21 81/6 81/17 81/19 82/2 82/7 82/13 83/15 83/18 86/9 86/11 86/15 86/16 86/21 87/8 87/12 87/24 98/15 99/7 100/13
**letters [3]** 80/6 80/8 81/1
**level [1]** 34/25
**levels [2]** 38/5 42/18
**Life [1]** 78/17
**light [3]** 5/3 17/5 115/22
**like [20]** 5/20 8/3 14/17 32/8 36/18 44/17 48/8 58/11 70/6 70/11 75/23 92/14 95/23 101/9 101/14 102/1 105/20 109/21 111/20 116/13
**limited [8]** 3/10 3/10 15/1 15/7 17/1 77/15 77/23 77/24
**list [13]** 1/87/12 117/20 117/23
**listed [6]** 19/19 20/15 48/2 68/3 68/9 68/13
**lists [1]** 87/21
**litigation [5]** 33/10 34/18 41/19 53/2 86/19
**little [6]** 18/12 40/2 44/14 69/20 78/10 95/12
**lived [1]** 40/1
**living [6]** 33/2 39/9 60/24 64/1 61/10 61/13 77/25 79/12 85/17 103/13 103/22 103/25 104/10 104/14 104/21 106/15
**LLP [1]** 33/7
**loan [5]** 85/15 85/18 86/12 87/9 100/5
**loaned [1]** 31/12
**loans [1]** 87/9
**locates [1]** 12/20
**locations [2]** 52/17
**long [7]** 10/21 22/6 24/5 74/6 74/10 76/23 88/16
**look [24]** 5/19 5/21 8/18 13/19 14/17 19/1 20/3 26/17 37/19 42/8 81/9 83/6 83/10 83/14 86/3 93/5 102/22 103/19 108/17 109/1 110/25 114/13 115/18 115/24
**looked [2]** 30/18 30/22
**looking [4]** 7/20 71/2 71/25 103/10
**looks [5]** 38/1 44/17 48/8 109/21 111/20
**Los [2]** 2/8 5/18 35/22 45/18 46/21 47/4 84/21
**lose [2]** 40/13 87/18
**lost [1]** 116/1
**lot [3]** 5/11 53/4 70/18
**lunch [2]** 113/6 115/9
**lying [1]** 6/4

**M**

**M-a-s-s-o-u-m-i [1]** 108/3
**MacBook [2]** 15/24 16/2
**made [13]** 48/20 92/1 99/12 105/8 105/13 105/18 106/1 106/6 106/9 114/13 115/5 117/11
**mail [32]** 23/6 23/7 24/12 24/16 27/3 27/4 27/9 37/24 38/18 38/20 38/21 40/23 42/12 42/25 43/3 43/6 43/11 43/14 44/3 44/15 45/7 73/16 73/19 73/24 74/3 79/2 88/12 108/18 108/24 115/19 116/14
**mailing [2]** 43/11 43/12
**mails [5]** 22/21 22/24 23/5 50/24 96/1
**maintain [2]** 79/20 117/15
**maintains [1]** 101/6
**Major [1]** 2/6

**M**

**make [12]** 8/18 23/8 27/13 27/15 52/4 53/2 53/3 59/23 75/6 78/6 101/18 109/15
**making [2]** 52/17 54/18
**malpracticed [2]** 117/6 117/14
**management [2]** 76/22 89/11
**manufacturers [1]** 11/7
**many [7]** 18/2 21/22 22/3 22/5 26/11 43/23 89/16
**March [13]** 18/11 18/13 18/21 18/22 19/16 19/24 20/12 23/18 33/6 45/16 66/23 99/15 106/3
**March 14th [1]** 99/15
**March 2019 [2]** 33/6 66/23
**March 23rd [5]** 18/21 19/16 19/24 20/13 20/18
**March 29 [1]** 18/13
**March 29th [2]** 18/11 18/22
**March 2nd [1]** 106/3
**Marchino [2]** 66/15 66/16
**marked [9]** 3/9 3/16 37/20 81/9 98/3 98/5 107/15 107/18 113/25
**Marshal [1]** 115/8
**matching [1]** 13/3
**material [2]** 115/3 117/9
**matter [7]** 47/4 47/8 49/17 50/17 50/19 115/20 119/10
**matters [5]** 4/12 41/5 41/12 41/19 51/1
**may [7]** 7/1 8/19 17/2 17/6 17/7 17/9 18/21 19/4 19/5 30/15 32/7 40/11 45/19 64/11 64/21 67/2 70/8 70/9 75/21 87/16 92/5 92/6 98/1 98/2 103/12 103/19 103/24 105/10 105/15 107/13 107/14 111/3 111/10 114/23 116/10 117/10 117/21
**May 27 [1]** 105/10
**May 30 [1]** 103/19
**May 30th [2]** 103/12 103/24
**maybe [7]** 9/20 22/5 61/22 80/4 80/5 83/14 89/11
**me [55]** 5/12 5/14 9/14 14/4 16/4 22/7 23/21 25/10 26/1 36/16 43/17 44/21 50/15 50/24 51/2 52/11 52/16 53/20 55/17 57/18 58/6 62/18 62/19 63/18 63/22 64/21 66/20 67/16 70/15 71/14 71/17 72/2 72/10 72/15 72/17 72/23 72/25 78/5 82/16 93/6 93/14 93/16 94/20 95/17 97/13 99/8 103/3 103/25 104/8 106/15 110/20 115/8 116/2 117/4 117/15
**mean [9]** 25/16 35/8 54/4 78/12 86/15 86/25 110/7 112/17 112/19
**meaning [4]** 36/6 41/8 66/17 86/22
**means [1]** 112/18
**meant [1]** 43/19
**mediating [1]** 55/3
**mediation [5]** 43/16 44/8 44/9 55/4 73/25
**Medicaid [2]** 40/13 87/18
**medical [1]** 62/11
**meet [2]** 36/14 78/2
**meeting [13]** 46/23 69/6 69/13 69/17 69/24 90/6 90/11 90/19 97/6 97/9 97/7 107/24 110/19
**meetings [4]** 90/5 91/1 107/24 107/25
**mental [3]** 6/7 62/11 94/25
**mentioned [17]** 13/5 25/21 26/16 63/9 73/24 78/19 79/12 80/8 84/24 85/12 85/14 85/14 85/18 85/24 86/17 87/17 87/6
**message [1]** 44/21
**messages [2]** 22/22 96/1
**met [16]** 5/14 68/18 68/20 68/21 68/24 68/24 69/11 71/11 72/8 89/13 89/16 89/19 89/22 91/11 97/1 115/15
**metadata [27]** 17/19 17/21 17/22 18/1 18/4 18/7 19/21 20/9 20/11 27/24 28/3 28/5 28/8 28/10 28/15 28/21 28/23 29/6 29/11 29/15 29/24 30/1 30/11 30/18 31/3 31/14 31/20
**MICHAEL [14]** 1/11 2/14 4/4 4/9 9/5 9/10 11/14 20/2 21/16 20/20 33/14 81/5 82/23 88/10
**Michaels [1]** 114/19
**microphone [3]** 10/5 32/17 76/10

**Microsoft [4]** 17/16 29/22 30/8 31/13
**mid [1]** 65/17
**mid-morning [1]** 65/17
**middle [4]** 44/17 50/25 53/24 111/25
**might [4]** 6/13 18/2 47/17 83/7
**million [1]** 46/20
**millions [1]** 53/16
**millisecond [1]** 115/2
**mind [5]** 27/18 49/11 75/7 81/8 96/16
**mindful [1]** 5/23
**mine [1]** 68/10
**minute [2]** 23/20 87/6
**minutes [2]** 65/18 118/1
**Miramar [1]** 2/16
**missing [1]** 98/10
**misspoke [2]** 98/14 106/11
**Misstates [1]** 93/21
**modified [3]** 19/22 20/17 20/18
**moment [2]** 44/22 88/24
**money [15]** 54/21 65/1 74/25 75/6 78/16 79/11 85/17 85/19 101/19 103/12 103/22 103/25 104/8 104/14 104/21 106/15
**month [2]** 82/12 89/14
**monthly [7]** 85/6 85/12 86/11 87/9 100/4 100/5 107/9
**months [5]** 72/2 72/9 72/15 75/9 116/5
**more [27]** 5/4 14/4 17/23 30/15 33/23 35/12 35/15 41/14 41/21 41/22 42/2 42/5 42/7 47/13 49/7 52/10 53/1 53/2 53/5 58/1 58/13 63/12 69/24 78/14 88/5 95/12 117/25
**morning [25]** 4/5 4/7 4/8 4/11 9/6 9/9 9/10 9/13 9/14 10/13 10/14 21/2 21/3 32/25 33/1 48/15 48/16 50/25 65/17 73/13 73/14 76/17 76/18 89/7 89/8
**mortgage [3]** 104/1 104/15 106/16
**Mosby [2]** 38/17 38/19
**most [7]** 13/9 49/2 50/10 50/23 52/8 57/23 77/7
**motion [1]** 115/21
**motions [2]** 41/20 41/20
**move [4]** 65/16 111/10 114/6 114/7
**moved [1]** 115/20
**moves [5]** 14/18 16/16 38/2 42/15 81/21
**Mr [8]** 5/14 6/14 40/25 58/7 66/5 74/21 94/1 110/8
**Mr. [218]**
**Mr. Andre [1]** 26/23
**Mr. Avenatti [22]** 4/15 5/7 8/23 12/12 16/8 19/5 20/23 34/5 38/21 41/21 44/2 45/5 48/11 60/9 66/2 85/18 85/19 85/24 89/3 102/5 117/6 117/13
**Mr. Avenatti's [3]** 7/4 38/19 48/8
**Mr. Carlos [1]** 97/15
**Mr. Colorado [15]** 32/25 48/15 52/16 55/23 59/8 59/17 60/7 63/2 65/6 71/25 73/7 73/13 74/24 75/4 75/20
**Mr. Geoff [1]** 64/12
**Mr. Guerrero [1]** 104/13
**Mr. Johnson [92]** 4/15 5/13 6/4 36/13 37/3 39/11 39/25 40/15 40/18 45/1 45/18 45/21 46/5 46/7 47/5 47/8 47/11 47/15 47/16 56/21 57/7 57/15 57/19 59/1 60/13 60/21 61/4 62/11 64/3 64/8 64/21 65/8 67/11 67/13 74/1 74/25 81/2 82/12 82/14 82/17 82/25 83/4 83/16 83/18 84/6 84/11 84/20 85/14 85/22 86/14 86/17 87/1 91/18 92/1 92/17 94/13 94/22 95/13 95/18 95/23 96/23 97/11 97/13 98/19 99/1 99/13 99/21 100/17 101/1 101/11 101/14 102/15 103/7 103/11 103/20 104/8 104/13 105/5 105/11 105/15 106/4 106/9 109/13 111/24 112/25 113/4 116/1 117/10
**Mr. Johnson's [20]** 40/24 41/15 47/19 55/6 61/10 64/25 65/1 67/22 80/20 80/23 80/25 82/6 82/7 93/19 94/6 95/22 96/2 96/7 110/12 110/14
**Mr. Kim [5]** 69/9 91/3 91/5 91/6 97/16
**Mr. Marchino [1]** 66/16
**Mr. Roberson [2]** 91/2 97/16

**Mr. Ryan [1]** 69/5
**Mr. Sagel [4]** 25/2 49/4 97/15 118/19
**Mr. Sagel's [1]** 69/12
**Mr. Sims [2]** 57/24 58/1
**Mr. Sims' [1]** 68/9
**Mr. Steward [2]** 4/10 9/11
**Mr. Tashchyan [4]** 25/21 26/2 26/12 29/23
**Mr. Varani [5]** 10/13 17/17 19/8 20/22 21/2
**Mr. Wyman [34]** 10/9 25/17 27/24 28/24 32/21 39/3 55/13 56/1 56/24 58/15 63/4 66/5 66/21 67/13 67/19 68/2 74/14 75/5 76/13 90/14 90/16 90/18 91/14 93/18 96/7 96/10 97/15 108/7 108/12 109/19 110/3 110/5 110/6 110/15
**Ms [1]** 4/10
**Ms. [21]** 9/11 38/19 40/19 41/13 43/13 45/6 62/20 76/17 82/5 87/21 89/9 92/8 93/16 93/17 96/18 98/5 102/15 107/17 109/4 109/9 110/2
**Ms. Cefali [1]** 9/11
**Ms. Guerrero [13]** 76/17 87/21 89/9 92/8 93/16 93/17 96/18 98/5 102/15 107/17 109/4 109/9 110/2
**Ms. Mosby [1]** 38/19
**Ms. Regnier [5]** 40/19 41/13 43/13 45/6 62/20
**Ms. Warner [1]** 82/5
**much [3]** 11/10 49/6 58/13
**multiple [8]** 7/22 38/4 38/5 42/17 68/3 68/12 68/18 71/12
**must [4]** 6/3 59/22 78/2 79/18
**my [60]** 4/9 9/23 12/10 22/8 28/7 28/14 28/20 28/20 29/21 35/13 37/18 40/17 43/21 45/5 47/9 48/21 49/5 49/11 49/19 50/4 50/7 50/10 51/1 57/9 58/16 58/23 62/19 63/24 64/1 66/17 67/6 69/2 70/1 70/15 70/23 71/6 71/18 72/4 72/17 76/11 77/8 82/18 89/11 89/25 91/10 93/14 94/21 95/1 95/17 98/9 100/4 100/10 104/8 104/20 107/9 108/20 113/18 116/6 117/17 117/23
**myself [3]** 43/13 55/5 63/10

**N**

**N20 [1]** 112/10
**naked [1]** 6/4
**name [21]** 10/6 18/3 20/2 20/16 20/20 30/22 31/2 32/18 46/2 48/2 68/9 76/10 76/11 76/12 76/12 81/4 89/23 94/2 108/2 111/25 112/3
**named [1]** 19/20 35/18 80/12
**neared [1]** 35/1 35/5 35/13 41/22
**necessarily [2]** 58/23 104/10
**necessary [6]** 6/2 40/21 52/23 52/25 74/16 102/25
**need [9]** 53/2 59/23 60/10 77/23 77/24 86/4 100/4 104/5 117/21
**needed [6]** 51/9 54/1 60/20 85/17 86/20 87/2
**needs [8]** 46/12 67/20 67/24 85/25 87/6 114/8 114/20 115/4
**Neither [1]** 97/15
**never [5]** 25/14 25/16 55/18 69/25 70/22
**New [3]** 12/12 16/3 86/8
**next [10]** 7/2 9/25 32/12 39/22 41/9 44/15 76/4 86/23 87/4 87/20
**NICOLA [1]** 2/3
**night [1]** 50/25
**no [62]** 8/24 14/3 22/23 23/16 23/19 23/23 25/12 27/10 28/4 28/18 28/22 29/10 29/16 30/10 30/17 30/24 31/6 31/23 32/6 45/22 46/25 47/2 47/6 48/6 48/10 50/17 50/19 54/6 55/1 55/15 56/25 58/10 64/23 65/21 67/9 67/18 68/15 71/16 72/13 74/4 74/20 81/23 88/11 88/13 88/15 88/20 91/8 92/11 95/25 96/25 97/24 102/25 103/5 105/22 106/24 109/5 109/5 113/19 113/21 113/24 115/13 117/1
**nobody [1]** 29/4
**non [1]** 78/8
**non-eligibility [1]** 78/8
**none [2]** 3/15 29/2
**nonmedical [1]** 84/12
**North [1]** 2/7

## N

**not [178]**
**note [1]** 43/15
**notes [1]** 112/25
**nothing [8]** 20/22 50/1 55/15 56/14 58/9 73/8 89/1 113/15
**notice [2]** 79/2 83/2
**November [20]** 80/18 82/25 83/19 83/25 84/5 86/1 98/12 98/20 99/2 99/16 99/20 100/25 101/10 102/16 106/8 106/11 106/14 106/23 106/25 107/6
**November 1 [2]** 98/20 99/20
**November 1st [4]** 83/25 98/12 99/16 107/6
**November 2018 [6]** 80/18 82/25 83/19 99/2 100/25 101/10
**November 2nd [4]** 106/8 106/11 106/14 106/25
**November of [1]** 86/1
**now [47]** 4/19 5/4 6/8 7/1 8/4 10/23 15/9 15/18 18/18 20/3 25/9 27/24 29/6 32/10 35/16 38/23 40/14 45/9 46/14 50/3 54/11 55/22 57/3 58/15 59/2 59/8 63/4 68/18 72/5 74/5 75/25 78/19 82/24 87/19 95/21 96/6 96/20 99/15 100/16 102/1 103/10 104/8 107/21 113/20 115/6 115/25 116/3
**Nshan [1]** 11/24
**number [4]** 48/17 89/13 111/17 117/23
**numbering [1]** 7/16
**numbers [1]** 114/24
**nuts [1]** 55/9

## O

**object [1]** 38/25
**objection [37]** 6/13 14/6 14/20 16/18 17/5 18/14 19/14 21/19 21/24 25/6 26/8 27/20 30/2 31/15 34/13 35/2 37/9 38/4 38/6 39/6 42/17 53/12 64/15 65/2 65/14 74/13 81/23 90/12 92/22 93/9 93/21 95/1 98/21 104/24 108/20 110/22 112/20
**objections [1]** 4/16
**obligation [1]** 113/24
**obligations [1]** 115/22
**observe [1]** 29/24
**observed [1]** 53/22
**obtain [1]** 110/16
**obtained [1]** 110/14
**obviously [1]** 8/10
**occasionally [2]** 41/12 47/16
**occasions [2]** 68/19 89/14
**occurred [2]** 7/16
**October [7]** 41/2 43/7 86/10 86/12 86/24 105/3 115/6
**October 14th [1]** 105/3
**October 2016 [2]** 86/10 86/24
**October 22nd [1]** 43/7
**off [1]** 22/11
**offered [3]** 16/20 38/10 39/4
**offering [1]** 14/22 14/24 38/7 102/4
**office [7]** 34/6 38/22 60/25 69/12 77/18 96/4 108/4
**OFFICES [1]** 2/15
**okay [54]** 6/18 8/15 8/22 8/25 15/20 16/10 30/10 36/20 38/11 51/18 51/21 52/10 52/20 55/8 56/10 58/19 60/13 61/9 61/12 61/16 62/6 62/15 68/9 68/12 69/5 69/8 69/20 70/13 71/17 75/9 81/14 83/17 91/7 94/5 94/12 94/20 95/10 96/13 96/20 96/23 97/25 100/16 102/1 103/1 103/10 105/4 107/6 108/6 108/12 109/7 110/10 111/1 111/2 111/14
**once [5]** 12/16 19/8 22/5 36/15 85/20
**one [38]** 4/14 6/19 6/20 7/9 7/12 9/15 13/25 14/2 14/5 14/11 16/4 20/21 23/5 23/23 24/12 24/14 33/14 35/24 47/22 48/20 49/2 55/4 57/10 61/16 62/9 63/21 63/23 65/13 68/13 78/14 87/4 88/24 91/7 94/12 111/7 112/10 116/10 117/23
**ongoing [1]** 46/11
**online [1]** 77/19
**only [13]** 7/11 8/17 11/17 25/20 25/25 55/4

---

**68/13 96/4 96/20 99/18 99/20 102/25 114/20**
**opened [1]** 49/14
**opening [1]** 49/14
**operations [1]** 34/11
**opinions [2]** 65/20 113/9
**opponent [1]** 42/19
**opportunity [2]** 5/20 32/9
**opposed [1]** 90/5
**opposing [1]** 36/9
**options [3]** 7/21 7/22 7/22
**order [4]** 5/25 8/11 114/9 114/12
**order this [1]** 8/11
**orders [1]** 5/23
**organizations [1]** 11/8
**original [3]** 19/20 25/13 25/14
**other [45]** 5/2 6/19 11/7 15/19 17/22 22/15 22/25 26/1 33/23 34/23 36/3 37/15 38/21 40/21 41/12 47/3 47/4 49/6 52/1 52/17 56/21 56/22 56/24 57/11 57/12 57/13 57/17 57/19 58/11 61/16 62/1 62/7 65/13 91/7 95/23 96/1 100/17 100/24 101/1 101/2 101/23 102/10 107/4 108/13
**others [4]** 13/4 26/7 27/7 63/19
**our [18]** 7/10 7/16 8/12 12/19 51/4 51/16 54/2 55/20 60/25 69/9 75/5 84/3 90/23 97/14 110/19 111/23 116/13 116/15
**out [16]** 9/19 21/6 21/16 23/6 28/2 28/17 29/16 40/20 83/2 100/16 113/19 113/22 116/12 116/23 116/25 117/3
**outside [1]** 57/15
**over [23]** 11/6 13/10 19/9 23/9 24/23 24/25 45/21 53/23 69/20 72/2 72/9 72/14 79/4 79/6 79/11 84/9 84/10 89/14 90/6 95/21 100/20 102/22 114/14
**overruled [25]** 14/7 18/20 19/15 25/7 27/21 30/3 31/16 34/15 35/3 37/11 39/6 42/21 52/13 53/13 64/17 65/15 71/5 71/23 74/17 75/14 90/13 93/22 95/3 98/22 103/16
**own [1]** 28/14

## P

**p.m [5]** 19/24 20/18 60/2 69/18 118/4
**page [41]** 15/9 37/5 38/7 38/11 38/17 38/23 38/24 39/9 39/13 39/21 39/22 40/8 43/3 44/17 44/23 45/11 45/24 46/15 47/25 59/5 86/3 92/15 96/14 99/9 102/2 102/11 103/19 104/12 106/12 106/19 106/21 106/24 107/7 108/1 109/10 110/21 111/7 111/16 111/25 112/23 119/11
**page 1 [1]** 37/5
**page 3 [1]** 39/21
**page 4 [1]** 106/12
**page 5 [1]** 107/7
**page 6 [1]** 99/9
**pages [5]** 38/12 53/16 96/21 114/15 114/16
**paid [2]** 85/1 85/4
**paragraph [16]** 15/9 37/4 40/3 40/9 57/3 60/19 70/11 71/17 71/25 82/10 82/15 83/12 83/22 83/24 87/21 96/14
**paralegal [1]** 116/16
**paraplegic [1]** 94/24
**part [18]** 6/11 10/17 11/17 11/20 14/12 46/17 50/10 50/23 74/6 75/5 78/21 79/23 80/8 80/19 80/21 109/19 109/21 113/18
**participate [1]** 11/18
**participation [1]** 22/9
**particular [9]** 16/23 17/24 29/12 29/15 35/16 42/4 57/8 78/1 84/15
**particularly [1]** 71/12
**parties [2]** 35/11 43/9
**party [1]** 42/14
**Pasadena [1]** 66/13
**passports [1]** 80/6
**past [2]** 6/23 79/9
**pay [4]** 104/1 104/15 106/16 107/9
**paying [3]** 61/10 61/13 74/12
**payment [3]** 99/23 100/1 104/1
**payments [10]** 85/6 85/8 85/12 85/13 85/20 86/22 100/6 100/9 104/16 106/16

---

**penalty [12]** 101/15 101/19 101/23 103/11 103/21 104/2 105/6 105/7 105/16 105/24 106/4 106/9
**people [7]** 41/12 52/5 57/14 59/22 78/19 95/23 96/2
**People's [1]** 63/12
**perceive [1]** 9/16
**percent [1]** 37/13
**perform [2]** 11/1 12/23
**performance [1]** 77/9
**perhaps [1]** 55/18
**period [9]** 6/9 22/14 24/8 41/8 41/9 46/10 49/1 72/16 72/25
**perjury [11]** 101/15 101/19 103/11 103/21 104/5 105/6 105/11 105/16 105/24 106/4 106/9
**person [25]** 19/25 20/19 24/25 30/25 36/14 53/19 77/17 78/2 78/6 79/4 79/6 79/8 79/11 79/13 79/16 79/17 80/12 84/9 103/13 103/22 103/25 104/14 104/21 106/15 112/3
**person's [1]** 79/13
**personal [1]** 104/5
**personally [1]** 25/23
**phone [13]** 60/20 60/25 79/5 79/6 84/9 84/10 84/17 84/19 88/9 90/4 90/5 90/6 91/12
**physically [2]** 25/17 26/4
**piece [1]** 28/23
**place [2]** 7/2 22/18
**placed [2]** 92/8 93/6
**plaintiff [1]** 1/10 2/2 46/3 48/3
**PLAINTIFF'S [2]** 3/5 3/8
**plaintiffs [3]** 33/10 51/14 51/16
**plan [1]** 7/3
**planning [1]** 114/21
**playing [1]** 115/6
**pleading [2]** 47/17 50/14
**please [55]** 9/15 10/1 10/5 12/17 13/19 15/8 15/18 19/9 20/3 25/10 32/13 37/4 37/19 38/23 39/21 40/3 40/5 40/7 40/9 42/8 42/25 43/14 43/15 45/12 45/24 46/14 46/16 59/6 60/9 60/24 62/23 65/19 65/21 73/15 76/5 82/10 82/15 82/16 83/6 83/9 83/21 83/24 86/3 86/7 87/21 93/10 93/14 96/12 96/14 96/15 109/1 112/23 113/7 113/10 113/11
**point [16]** 6/1 6/20 16/9 35/17 36/13 41/6 41/8 58/4 60/23 79/18 86/13 86/23 102/7 110/24 113/19 115/4
**pointed [1]** 113/21
**points [2]** 51/13 86/6
**policies [1]** 78/18
**Pollack [1]** 89/23
**portion [1]** 39/16
**position [2]** 24/5 117/17
**possession [1]** 25/18
**possible [3]** 69/21 69/23 112/18
**possibly [2]** 97/13 101/18
**potential [2]** 58/24 63/19
**potentially [1]** 32/9
**practically [1]** 58/11
**practice [3]** 49/4 56/10 102/22
**praying [1]** 6/4
**precluded [2]** 4/17 4/22
**prefer [1]** 7/23
**prep [2]** 107/21 107/25
**preparation [3]** 53/4 89/17 94/17
**prepare [2]** 89/9 112/5
**prepared [1]** 60/24
**preparing [1]** 112/3
**present [18]** 4/2 4/9 6/10 9/3 43/24 65/22 66/1 82/11 86/10 86/12 86/24 89/22 90/10 90/18 91/2 91/5 91/6 113/12
**presented [1]** 71/21
**preserve [2]** 9/18 9/23
**PRESIDING [1]** 1/8
**pretty [1]** 5/16
**previous [1]** 107/5
**previously [2]** 101/11 106/20
**primarily [2]** 24/23 41/6 55/2
**primary [5]** 10/24 24/21 49/16 53/19 77/4

**P**

**print** [1] 28/17
**printed** [1] 28/2
**prior** [11] 7/4 11/4 17/5 33/11 45/16 46/23 68/19 86/14 102/16 102/23 116/16
**privacy** [1] 90/23
**privilege** [2] 24/24 114/25
**privy** [1] 55/19
**PRO** [2] 2/14 15/24
**probably** [2] 72/7 80/24
**problem** [1] 115/1
**proceed** [5] 39/6 102/12 109/2 111/13 116/7
**proceeding** [2] 7/15 7/16
**proceedings** [1] 1/15 65/25 119/10
**process** [12] 12/17 12/20 27/1 78/20 78/24 79/15 79/17 80/19 82/24 83/2 96/8
**produce** [1] 115/5
**produced** [3] 114/17 114/18 114/25
**producing** [1] 115/2
**product** [1] 42/18
**production** [6] 114/11 114/16 116/16 116/24 116/25 117/2
**profile** [1] 112/15
**program** [5] 76/22 77/3 77/15 78/7 84/13
**promoted** [1] 24/9
**prone** [1] 63/12
**proof** [1] 86/20
**proper** [1] 115/4
**properly** [1] 27/14
**property** [8] 10/18 78/14 104/2 104/2 104/16 104/16 106/16 106/17
**proposing** [1] 7/23
**prosecution** [2] 22/11 26/13
**prosecutors** [3] 11/2 21/12 22/25
**prove** [1] 77/23
**provide** [7] 17/24 79/17 79/18 80/5 80/6 114/1 114/20
**provided** [17] 11/20 11/23 11/24 12/1 12/3 12/5 13/3 14/12 16/1 18/7 18/18 19/2 25/25 27/11 27/11 77/8 99/8
**provides** [1] 100/5
**providing** [1] 114/8
**psychological** [1] 6/7
**public** [5] 7/14 112/18 112/19
**publish** [2] 15/8 17/2
**pull** [8] 31/19 32/17 37/4 45/11 45/23 73/15 83/9 83/21
**pulled** [1] 31/3
**purpose** [5] 3/10 3/10 15/2 15/7 17/1
**purposes** [1] 98/6
**pursuant** [2] 114/8 119/7
**put** [4] 4/19 94/21 111/5 118/2

**Q**

**qualifies** [1] 78/1
**quarterly** [8] 85/8 85/16 85/20 87/2 99/23 100/6 100/9 107/10
**question** [23] 6/13 8/10 14/4 18/15 29/14 67/14 67/16 75/4 75/7 92/11 92/25 93/6 93/10 93/14 93/25 94/10 94/21 98/9 98/23 103/17 104/20 109/6 111/5
**questions** [15] 5/9 5/11 15/14 48/10 54/9 54/9 55/13 58/15 59/2 74/20 79/7 82/17 93/16 96/6 102/6

**R**

**raise** [2] 8/20 8/23
**Ramon** [1] 9/8
**ramp** [1] 52/21
**ramp-up** [1] 52/21
**ramping** [1] 58/25
**rare** [1] 55/18
**rather** [1] 117/6
**reach** [1] 41/24
**reached** [1] 44/11 56/21
**reaching** [1] 35/10
**read** [16] 5/25 7/11 8/2 40/3 40/5 40/9 43/14 59/24 61/1 82/10 82/15 83/24 86/7 93/12 102/8 103/15

**reading** [3] 7/2 7/23 114/5
**Reagan** [1] 9/6
**real** [1] 31/24
**really** [2] 55/8 60/10
**reason** [7] 6/22 7/14 23/15 56/25 67/23 68/1 94/16
**reasons** [3] 43/18 43/20 94/12
**recall** [48] 5/15 14/8 14/11 18/24 32/9 32/11 43/8 43/10 46/11 47/10 47/14 47/19 52/18 58/17 58/19 58/25 59/10 62/6 62/8 62/10 62/15 66/22 67/2 69/6 69/14 69/19 70/4 70/24 71/15 72/11 72/18 72/18 73/3 73/19 75/24 76/1 81/6 81/8 84/6 84/11 85/7 91/6 92/1 92/4 97/19 97/21 97/23 116/14
**receive** [17] 11/4 13/17 23/2 37/13 50/24 77/22 79/21 85/6 85/15 87/25 88/9 88/14 88/18 88/21 100/1 100/6 107/10
**received** [33] 3/9 3/16 11/6 12/16 12/22 13/1 13/12 15/1 15/6 15/13 16/23 16/25 22/8 25/20 38/12 38/12 38/15 39/5 42/13 42/22 42/24 61/23 79/10 81/24 81/25 84/24 84/25 86/18 87/1 92/23 97/11 104/11 116/11
**receives** [2] 117/13 99/23
**receiving** [7] 23/3 40/16 78/2 78/20 85/7 86/22 104/8
**recess** [7] 8/25 9/2 65/18 65/23 65/24 118/3 118/4
**reciprocal** [6] 113/21 113/24 114/8 114/14 115/15 116/4
**recognize** [14] 13/22 13/24 15/21 15/23 36/21 37/22 42/10 45/14 69/8 69/10 81/15 91/9 92/11 109/9
**recollection** [19] 19/1 19/11 61/22 61/23 62/3 64/24 65/6 65/13 70/6 71/3 71/7 72/1 72/4 72/22 92/15 98/20 102/8 108/21 108/23 114/4
**record** [4] 7/14 65/15 97/14 113/13
**recorded** [2] 105/20 105/21
**recordkeeping** [1] 28/14
**records** [6] 62/11 79/21 79/25 80/2 80/8 80/20 80/23 84/3 84/5 101/6
**RECROSS** [3] 3/5 3/14 74/22
**RECROSS-EXAMINATION** [1] 74/22
**red** [2] 70/1 70/23
**redetermination** [23] 78/20 78/23 79/3 79/15 80/15 80/19 80/21 82/24 84/1 84/2 84/19 96/8 97/3 97/11 97/12 97/20 97/22 98/9 98/11 99/4 99/7 102/24 109/13
**redeterminations** [2] 78/8 78/19
**REDIRECT** [5] 3/5 3/14 32/5 73/9 73/11
**reference** [4] 74/3 74/4 87/5 115/21
**referenced** [3] 8/11 8/14 107/22
**references** [1] 44/8
**referencing** [1] 7/19
**referring** [7] 5/9 16/6 34/22 77/10 81/17 84/17 87/10
**refresh** [11] 19/1 19/11 70/6 71/2 71/6 72/1 72/4 108/21 108/23 114/3 114/6
**refreshes** [1] 92/15
**regard** [1] 23/10
**regarding** [3] 37/16 43/16 82/17
**regional** [2] 108/4 108/5
**registered** [1] 31/2
**Regnier** [7] 39/20 40/19 41/13 43/13 45/6 62/16 62/20
**regularly** [1] 59/22
**regulations** [1] 119/12
**reimburse** [1] 85/19
**reimbursed** [1] 100/6
**reinstatement** [1] 113/1
**related** [6] 65/8 79/21 80/20 82/7 96/11 103/21
**relates** [3] 29/6 30/21 49/9
**relating** [5] 5/23 28/24 51/1 59/9 62/8 64/3 65/7 75/12 91/17 96/7 99/2 100/17 103/12 113/1 118/1
**relations** [2] 112/18 112/19
**relationship** [1] 48/23
**release** [1] 17/13
**relevance** [9] 6/6 21/19 25/6 31/15 53/12

90/12 92/22 104/25 112/20
**relevant** [2] 26/5 66/9
**reliable** [1] 13/13
**reliance** [1] 92/20
**relying** [1] 26/7
**remaining** [1] 38/12
**remarks** [5] 99/10 99/12 99/15 99/18 115/8
**remember** [19] 16/10 27/25 56/1 63/6 64/23 65/19 66/6 66/23 67/14 67/20 72/5 73/1 74/7 80/17 91/7 96/8 113/8 116/15
**remind** [2] 6/14 9/15
**removal** [3] 104/3 104/17 106/18
**renew** [1] 95/1
**rent** [3] 104/1 104/15 106/16
**rental** [1] 86/8
**repeat** [6] 29/14 92/25 93/25 98/23 103/17 111/17
**repeated** [2] 116/24 117/2
**replicate** [1] 47/18
**report** [4] 19/1 66/14 111/23 112/3
**reported** [2] 20/2 119/9
**REPORTER** [1] 119/17
**REPORTER'S** [1] 1/15
**reports** [1] 26/1
**represent** [8] 51/13 51/18 54/2 56/18 57/7 74/7 74/11 74/16
**representation** [7] 40/25 105/8 105/13 105/18 106/1 106/6 106/10
**representations** [1] 117/10
**representative** [1] 79/14
**represented** [2] 33/10 116/11
**representing** [3] 53/20 81/2 115/16
**reproduce** [1] 116/16
**request** [8] 7/10 21/12 22/8 24/12 24/16 40/12 87/17 116/24
**requested** [4] 86/20 86/21 88/5 88/18
**requesting** [1] 88/6
**require** [1] 53/4
**required** [3] 74/7 74/11 77/21
**requirements** [1] 78/2
**reread** [1] 5/25
**research** [3] 53/4 65/21 113/10
**reserve** [1] 32/8
**residing** [1] 39/11
**resolution** [5] 35/1 35/5 35/7 35/13 41/22
**resolved** [1] 35/9
**resource** [2] 78/15 78/17
**resources** [7] 77/16 77/24 78/9 78/11 78/12 78/14 79/11
**respect** [1] 117/10
**respectful** [1] 5/24
**respond** [3] 24/16 40/11 87/16
**response** [4] 14/3 44/24 61/20 96/6
**responsibilities** [8] 10/24 11/5 33/19 49/20 55/8 77/5 79/23 89/11
**responsibility** [1] 78/21
**responsible** [10] 24/24 33/21 34/7 41/6 49/16 53/19 54/24 55/2 55/3 56/16
**result** [1] 117/22
**results** [2] 27/6 27/15
**resume** [1] 113/7
**resumed** [1] 65/25
**retainer** [4] 36/24 37/1 37/2 54/18
**retention** [4] 56/6 56/8 56/11 56/17
**retrieving** [1] 81/12
**revealing** [1] 39/1
**review** [25] 13/4 13/16 18/4 20/9 20/11 24/25 36/18 59/22 78/8 79/1 79/24 80/15 80/19 82/6 84/4 84/16 84/17 91/17 91/20 91/22 97/17 101/11 110/18 114/25 116/13
**reviewed** [10] 14/1 16/7 50/14 80/23 80/25 89/11 94/17 102/16 110/16 110/19
**reviewing** [4] 19/8 19/10 70/13 109/17
**reviews** [1] 77/9
**right** [124]
**rights** [1] 35/21
**Roberson** [7] 69/5 91/2 91/2 97/16
**role** [13] 10/25 34/4 35/13 35/15 36/2 41/11

**R**

role... **[7]** 42/5 49/5 49/5 49/6 67/22 76/25 77/4
**Ronald [1]** 2/10
**routine [1]** 34/17
**Roya [1]** 108/2
**RPR [1]** 1/19
**rude [1]** 9/22
**Rule [1]** 114/9
**Ryan [2]** 69/5 91/2

**S**

**SACR [3]** 1/11 4/3 9/4
**SACR-19-00061-JVS [3]** 1/11 4/3 9/4
**SAGEL [7]** 2/9 4/5 9/6 25/2 91/14 97/15 115/16
**Sagel's [1]** 69/12
**said [27]** 6/20 16/4 16/8 18/13 22/19 42/4 43/19 44/11 56/3 56/25 66/9 67/1 67/22 70/3 70/4 71/1 72/6 72/6 72/7 83/1 85/7 97/11 100/4 100/9 100/11 106/14 114/19
**same [14]** 9/17 17/14 19/23 24/7 101/23 105/8 105/13 105/18 106/1 106/6 106/9 107/4 109/14 109/17
**San [1]** 2/16
**Santa [4]** 1/16 1/20 2/11 4/1
**saved [2]** 19/22 19/23
**saw [8]** 13/25 15/24 45/19 56/8 60/14 69/25 70/22 98/15
**say [31]** 5/12 5/22 19/25 20/19 28/10 31/20 34/22 44/6 49/3 49/24 60/4 60/7 60/9 60/11 60/12 63/13 77/10 84/17 84/20 84/23 85/1 85/4 85/10 85/21 85/23 87/15 88/4 93/4 97/10 109/4 117/4
**saying [6]** 35/7 46/12 70/24 71/15 72/18 73/1
**says [21]** 39/9 39/16 40/4 40/11 43/15 44/7 59/22 60/1 60/23 86/4 86/23 87/4 87/12 97/19 97/21 97/23 104/18 104/20 112/3 112/10 115/19
**schedule [1]** 77/19
**scope [4]** 57/4 57/13 74/13 75/13
**Scott [3]** 43/12 57/21 57/22
**screen [7]** 28/11 36/17 36/20 39/16 73/18 83/9 83/10
**screenshot [7]** 28/13 28/15 28/19 28/21 28/23 111/20 111/22
**scroll [2]** 40/2 44/14
**SE [1]** 2/14
**search [3]** 16/7 26/17 26/20
**searches [5]** 12/23 12/25 13/2 27/5 27/13
**seat [1]** 42/7
**seated [4]** 69/2 69/9 91/2 91/10
**second [13]** 15/9 82/10 83/7 86/13 90/4 90/7 90/8 90/11 90/19 91/13 96/14 97/6 110/21
**section [3]** 2/6 10/18 119/7
**security [26]** 11/9 39/24 40/5 40/16 59/3 59/9 76/20 76/23 76/25 77/3 77/11 77/13 77/18 78/25 79/20 79/23 80/7 80/16 82/5 84/1 84/13 88/23 90/1 96/5 117/11 117/14
**see [33]** 30/5 31/4 43/3 44/3 44/18 46/2 46/5 46/20 46/22 48/1 57/4 59/12 59/16 59/20 59/21 60/2 60/21 63/2 68/7 73/24 74/3 86/4 87/13 96/18 99/10 99/16 101/1 101/2 106/22 107/7 112/8 113/11 114/23
**seeing [5]** 56/6 67/2 72/5 73/3 117/8
**seems [2]** 42/14 57/12
**seen [8]** 45/17 45/19 46/24 55/14 55/25 56/3 66/23 67/2
**SEFFENS [3]** 1/19 119/16 119/17
**seized [3]** 12/11 16/8 16/11
**select [1]** 79/1
**SELNA [1]** 1/8
**send [5]** 8/3 22/25 23/6 27/6 110/14
**sending [5]** 23/3 38/18 38/20 40/19 83/2
**sends [1]** 29/23
**senior [7]** 10/20 10/21 24/2 24/9 33/23 49/7 53/5
**sense [1]** 72/4
**sent [20]** 23/5 23/7 27/19 83/16 83/18 87/24

96/1 96/23 99/6 100/18 103/6 108/7 108/12 110/8
**separate [1]** 29/11
**September [6]** 68/21 69/13 70/22 71/11 72/23 112/14
**September 2019 [1]** 69/13
**September of [2]** 68/21 70/22
**served [1]** 36/7
**server [2]** 15/2 25/17
**servers [4]** 12/7 12/10 12/14 14/5
**services [4]** 56/22 56/22 57/4 57/7
**sessions [2]** 107/21 107/25
**set [6]** 29/9 29/12 29/21 67/24 79/1 79/2
**set to [1]** 29/9
**sets [1]** 99/18
**settle [2]** 63/12 63/16
**settled [5]** 47/14 48/16 86/19 99/22 100/13
**settlement [42]** 4/25 17/13 35/11 35/13 41/24 42/1 43/9 43/16 43/22 44/9 44/12 45/2 45/3 45/17 46/10 54/25 58/16 58/19 58/24 63/6 63/20 64/3 64/13 64/22 65/8 73/22 73/25 74/12 84/20 84/24 85/2 85/5 85/16 86/8 86/9 86/15 86/17 86/24 99/23 100/7 107/10
**settling [1]** 55/3
**Seventy [2]** 81/12 81/24
**several [2]** 86/6 115/6
**sewage [3]** 104/3 104/17 106/18
**shared [1]** 56/12
**SHARON [3]** 1/19 119/16 119/17
**she [7]** 38/20 108/4 108/7 108/12 108/18 108/21 109/22
**she's [1]** 108/23
**sheet [3]** 39/13 39/23
**Sheriff's [1]** 5/18
**shortcut [1]** 111/4
**should [7]** 13/20 15/19 44/22 81/10 82/18 83/10 86/18
**shouldn't [1]** 4/23
**show [5]** 8/7 31/13 36/16 45/9 77/22
**showed [2]** 28/3
**showing [1]** 103/3
**shown [1]** 7/8
**sign [2]** 46/5 67/17
**signature [5]** 45/23 46/2 48/2 48/5 48/7 48/9 68/5 68/13 71/14 82/19
**signatures [2]** 48/1 72/3
**signed [5]** 46/7 54/19 56/17 67/14 82/22
**significance [1]** 50/14
**signs [1]** 68/13
**simply [3]** 9/23 38/13 110/24
**Sims [6]** 43/12 57/21 57/22 57/24 58/1 58/7
**Sims' [1]** 68/9
**since [4]** 22/11 86/9 86/24 115/6
**single [2]** 111/7 114/1
**sir [17]** 5/10 21/22 22/1 22/23 22/20 32/4 32/10 50/13 56/20 57/4 61/3 62/24 64/24 68/7 70/11 75/25 117/20
**sit [2]** 30/10 64/20
**sitting [1]** 18/24
**situation [2]** 60/24 61/4
**six [3]** 114/15 114/16 116/5
**size [1]** 18/3
**skepticism [1]** 100/12
**small [1]** 11/17
**smile [2]** 54/7 54/7
**so [60]** 4/23 7/21 12/2 12/23 17/8 22/10 22/24 24/6 24/20 25/23 29/10 29/21 31/2 31/19 33/23 41/9 50/12 51/18 54/15 55/13 56/10 56/15 56/24 58/23 59/10 62/14 69/4 69/20 78/8 78/14 78/16 78/25 80/22 84/18 86/20 86/21 90/5 91/4 93/4 94/20 98/14 99/7 99/9 103/24 104/11 106/24 107/2 107/4 108/22 111/11 111/17 111/23 113/11 113/23 114/7 115/15 115/19 116/19 117/12
**Social [16]** 39/24 59/3 59/9 76/20 76/23 76/25 77/18 78/25 79/20 79/23 80/7 82/5 90/1 96/4 117/11 117/14
**some [33]** 7/3 23/1 35/10 35/13 35/17 36/13

4/1/5 41/20 47/17 47/17 51/16 53/16 55/9 58/4 58/6 58/24 60/16 69/25 70/2 72/2 74/22 77/7 78/5 93/16 96/6 100/12 107/22 108/8 112/7 112/7 115/15 115/24 117/13
**somebody [1]** 31/7
**somehow [3]** 6/3 6/4 116/4
**someone [6]** 31/12 31/21 61/13 78/1 101/9 101/13
**something [7]** 4/20 70/5 72/5 79/5 104/22 109/4 111/6
**sometime [1]** 22/8
**sometimes [5]** 50/24 50/25 52/7 63/11 79/24 102/3 106/11
**sorry [7]** 18/16 47/12 64/10 69/22 93/25 102/3 106/11
**sort [3]** 34/17 47/18 63/9
**sounds [2]** 82/3 70/3
**source [2]** 24/21 98/18
**South [1]** 66/13
**SOUTHERN [1]** 1/6
**speak [3]** 10/5 63/20 76/9 108/19 116/12
**speaking [8]** 33/19 36/2 63/24 77/13 80/2 80/4 84/6 99/13
**speaks [3]** 37/10 101/10 101/13
**special [10]** 9/8 11/24 12/5 46/12 67/20 67/24 68/25 85/25 87/6 91/9
**special-needs [5]** 46/12 67/20 67/24 85/25 87/6
**specific [4]** 5/9 14/4 62/1 117/21
**specifically [4]** 4/17 14/8 17/23 18/25 32/2 47/13 70/4 70/24 114/19
**speculation [4]** 30/2 52/12 64/16 98/21
**spell [4]** 10/6 32/18 76/10 108/2
**spend [2]** 53/23 117/25
**spoke [2]** 99/6 102/15
**spoken [3]** 22/3 67/19 91/12
**spot [1]** 27/15
**spot-checking [1]** 27/15
**Spring [1]** 2/7
**SSA [1]** 100/14
**SSI [25]** 40/5 40/11 40/13 59/23 62/9 62/12 77/14 77/15 77/17 77/22 77/23 78/1 78/20 79/21 82/7 87/16 87/18 87/19 92/2 93/7 93/19 94/6 94/23 94/23 95/11
**staff [1]** 38/22
**stamped [1]** 110/20
**stand [4]** 23/23 73/2 97/17 112/12
**standing [1]** 9/20
**start [2]** 86/13 114/5
**started [1]** 41/1
**Starting [2]** 17/11 38/17
**state [4]** 10/6 32/18 76/10 93/10
**stated [3]** 103/11 106/13 106/20
**statement [7]** 42/19 49/14 71/15 101/20 104/9 107/5 107/7
**statements [5]** 7/4 84/3 85/16 101/15 102/23
**states [21]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/4 4/6 9/5 9/7 10/2 32/15 37/12 52/1 76/7 104/19 106/19 119/8 119/12
**steer [1]** 9/15
**stenographically [1]** 119/9
**STEWARD [4]** 2/15 2/15 4/10 9/11
**stiffing [1]** 75/12
**still [7]** 59/24 64/5 72/7 78/7 79/9 114/1 116/1
**stipulation [1]** 8/10
**stop [4]** 40/11 40/13 87/16 87/18
**store [1]** 28/19
**stored [1]** 84/2
**street [4]** 1/20 2/7 2/11 6/4
**strictly [1]** 64/23
**strike [7]** 26/15 27/17 55/17 58/5 61/3 63/22 110/7
**structured [1]** 49/10
**subject [4]** 44/3 44/6 75/24 76/1
**submit [1]** 88/5
**submitted [3]** 65/21 100/14 113/10
**substance [2]** 45/3 47/19
**substantive [1]** 15/12
**such [3]** 75/17 80/5 101/13
**suffering [1]** 94/25

**S**

**suggest [2]** 54/5 54/8
**suggested [5]** 61/12 90/18 115/25 116/2 117/4
**suggesting [2]** 50/3 50/6
**suggests [1]** 67/10
**Suite [3]** 1/20 2/11 2/16
**summary [15]** 84/3 97/3 97/11 97/12 97/20 97/22 98/9 98/11 99/4 99/7 100/16 108/13 109/13 109/14 109/18
**Sunrise [2]** 39/9 39/25
**supplemental [9]** 40/5 40/16 77/2 77/11 77/13 80/16 84/1 84/13 88/23
**support [2]** 38/22 76/22
**supposed [1]** 114/18
**sure [20]** 18/1 23/8 27/13 27/15 29/15 35/15 52/9 52/19 54/18 59/23 70/4 70/7 75/6 78/6 85/24 94/1 98/25 101/18 103/19 109/15
**suspend [2]** 79/19 112/13
**Suspended [1]** 88/23
**suspicious [5]** 70/1 70/22 72/24 73/4 75/10
**sustain [6]** 6/13
**sustained [8]** 4/16 21/20 26/9 65/4 75/2 75/19 105/1 112/21
**SWORN [3]** 10/4 32/16 76/8
**system [4]** 78/25 102/20 102/21 103/2

**T**

**table [1]** 9/8
**take [16]** 4/12 7/2 13/19 22/18 28/13 42/8 52/4 65/17 81/9 83/6 93/4 108/17 109/16 113/6 113/17 113/18
**taken [6]** 9/2 26/5 65/24 115/22 116/6 118/4
**talent [1]** 49/24
**talk [5]** 9/22 60/1 60/4 60/10 60/13
**talked [3]** 83/25
**talking [4]** 7/5 8/5 47/20 108/14
**talks [1]** 60/20
**Tashchyan [6]** 11/25 12/6 25/21 26/2 26/12 29/23
**taxes [3]** 104/2 104/16 106/17
**team [5]** 13/2 13/4 89/25 115/1 116/15
**technical [4]** 9/12 77/2 77/6 89/12
**telephone [4]** 91/1 91/16 101/14 108/6
**tell [15]** 8/13 25/10 34/7 40/12 46/7 67/17 84/14 87/17 90/21 92/21 93/3 97/8 101/17 101/21 103/20
**telling [2]** 72/22 73/25
**tells [1]** 6/12
**ten [1]** 100/1
**terms [5]** 26/17 26/20 27/15 49/4 63/20
**testified [5]** 23/17 50/8 62/7 70/14 110/2
**testify [4]** 6/8 21/12 21/23 89/9
**testifying [3]** 7/7 91/23 94/17
**testimonial [1]** 20/6
**testimony [10]** 21/17 22/1 22/4 25/9 52/5 54/4 68/19 89/17 93/21 96/3
**Texas [1]** 52/1
**text [2]** 22/22 96/1
**than [10]** 47/3 49/5 57/12 58/2 62/7 78/14 95/23 100/25 102/11 117/25
**thank [34]** 8/24 10/10 15/5 20/22 20/24 21/5 32/4 32/6 32/11 32/14 32/22 36/20 38/14 39/7 40/8 42/23 48/10 48/12 62/24 66/3 73/7 73/10 74/19 75/20 76/2 76/3 76/6 76/14 89/1 89/2 89/4 93/11 102/13 116/9
**that [565]**
**that's [46]** 8/8 16/8 25/22 28/10 30/4 30/4 31/17 50/16 51/6 51/20 54/1 55/10 55/11 58/22 62/5 62/12 63/11 63/17 64/18 70/17 70/25 73/18 77/12 78/15 77/11 80/11 86/20 95/7 96/23 98/17 100/11 101/4 101/6 104/18 104/20 104/20 104/22 107/2 107/4 115/1 115/3 116/18 117/15 117/22 118/3
**their [9]** 5/5 74/12 78/8 79/9 79/11 79/12 101/6 101/15 101/19
**them [26]** 4/18 5/10 6/22 6/23 19/25 29/2 56/18 68/20 68/21 72/9 74/12 97/2 97/2 97/5 101/15 101/17 101/21 102/19 107/25 114/3
**there [66]** 6/19 6/22 7/21 8/6 9/20 15/4 22/19 26/4 26/14 29/10 29/16 29/17 30/24 34/5 37/15 38/5 39/16 40/2 40/6 41/14 44/17 46/2 49/9 49/10 49/19 52/20 53/2 53/6 55/4 55/15 55/16 56/9 56/21 57/3 57/14 57/23 58/12 59/11 60/16 60/19 60/23 62/6 63/18 67/23 68/2 73/16 73/24 78/1 82/20 83/12 86/4 86/6 87/15 96/15 96/20 98/7 99/15 106/22 107/4 107/6 112/7 112/14 113/19 113/20 115/17
**there's [4]** 30/23 101/1 107/4 109/21
**therefore [2]** 85/19 100/4
**these [28]** 8/1 12/6 12/7 15/21 15/24 16/13 16/22 17/2 17/7 28/3 28/24 80/3 91/1 91/16 103/1 105/20 112/25 113/3 113/19 113/24 114/23 114/23 115/12 115/18 115/21 115/24 116/12 118/1
**they [32]** 4/23 7/6 7/8 7/13 7/18 7/20 9/21 11/24 12/4 16/23 27/16 31/12 53/1 60/13 60/16 60/20 63/13 75/6 77/17 78/17 77/19 80/5 80/6 85/14 90/5 97/7 101/18 101/18 101/19 102/21 116/2 117/17
**they're [6]** 8/2 9/22 9/23 16/10 17/8 38/13
**thing [5]** 9/15 9/17 47/18 74/11 116/10
**things [9]** 40/21 41/19 53/4 63/9 64/23 77/21 86/4 113/17 114/24
**think [29]** 4/21 5/3 5/20 6/1 6/20 6/21 8/5 15/11 16/4 26/16 42/4 44/11 50/12 51/20 56/8 56/15 61/6 61/8 62/4 63/20 65/17 68/1 68/4 70/14 83/1 108/25 111/4 115/21 117/12
**third [1]** 59/5
**this [171]**
**thorough [1]** 30/14
**those [46]** 11/4 11/23 12/9 12/18 12/22 12/25 13/2 13/4 13/6 13/8 13/11 22/18 22/21 22/24 23/14 26/20 27/13 33/14 35/14 36/9 48/24 51/21 51/22 52/4 53/18 53/19 55/6 70/4 78/3 78/18 79/4 79/25 80/8 85/13 86/7 87/3 94/8 95/4 95/10 99/12 98/18 99/18 99/20 104/21
**though [4]** 22/9
**thought [1]** 90/21
**thousands [4]** 51/14 51/16 51/19 114/17
**three [4]** 4/15 68/20 69/20 118/1
**through [7]** 22/11 79/14 79/16 86/10 86/12 86/24 114/25
**throughout [2]** 22/9 41/18
**thrust [1]** 117/13
**time [68]** 4/12 5/13 6/9 8/7 9/1 17/6 22/14 24/7 24/23 24/25 26/22 29/8 29/8 29/10 29/12 29/16 29/16 29/18 30/11 30/12 30/19 31/24 31/25 32/3 33/7 33/9 33/24 34/3 34/5 35/17 38/19 39/12 40/15 41/8 41/9 41/14 43/8 46/10 49/1 49/11 51/13 51/18 52/3 52/8 57/23 58/4 60/17 61/3 61/5 61/6 63/5 63/15 63/22 65/8 68/16 68/21 72/16 72/24 80/22 80/25 82/13 84/7 88/5 90/8 109/16 113/22 113/22 115/7
**times [5]** 22/3 29/6 68/20 89/16 115/6
**timing [1]** 63/10
**title [8]** 10/19 17/7 17/11 20/5 24/7 33/17 76/21 119/8
**today [16]** 18/24 22/4 22/11 23/18 23/23 28/22 29/2 30/10 64/20 68/19 89/10 89/17 91/23 94/18 96/17 97/18
**together [3]** 26/14 48/17 70/18
**told [25]** 26/7 64/21 67/13 69/25 70/21 71/13 71/18 72/9 72/14 75/9 95/7 95/13 95/14 97/1 97/5 98/19 99/1 99/21 99/22 100/1 100/17 100/11 103/20 104/13 116/21
**too [2]** 8/8 43/23
**took [6]** 23/23 28/15 28/23 42/7 83/14 97/17
**tool [7]** 11/7 13/9 13/13 13/14 13/14 13/16 

28/7

**tools [4]** 13/19 13/19 13/19 13/6 13/7
**top [6]** 39/9 44/23 58/7 59/12 86/4 112/7
**topic [2]** 96/11 118/1
**topics [1]** 117/21
**touch [1]** 40/7
**towards [3]** 32/18 40/23 55/8
**trained [1]** 13/6
**training [8]** 11/4 11/6 11/8 11/9 11/10 13/12 17/17 77/8
**transcript [12]** 1/9 1/15 5/19 7/12 7/12 7/13 7/18 7/24 8/4 8/12 119/9 119/11
**transcripts [1]** 8/1
**travel [2]** 52/3 52/10
**traveled [1]** 21/11
**trial [25]** 1/12 4/18 8/5 8/7 8/14 49/12 49/14 49/17 52/20 53/7 53/20 53/24 58/13 58/20 58/21 58/25 63/8 63/11 63/16 63/19 64/22 73/22 74/3 74/4 74/6
**trick [1]** 94/9
**trouble [1]** 117/8
**true [21]** 49/21 50/13 50/16 50/18 51/2 51/3 58/21 58/22 63/17 70/21 71/13 71/15 72/7 72/8 72/14 93/7 94/22 104/9 116/3 116/3 119/8
**trust [9]** 46/12 67/20 67/24 85/21 85/23 85/25 86/10 87/4 87/6
**truth [10]** 14/22 14/24 15/3 16/20 16/24 38/10 38/13 39/1 92/24 101/21
**truthful [1]** 101/18
**try [1]** 78/25
**trying [5]** 4/18 4/19 18/18 54/8 94/9 114/3
**Tuesday [1]** 70/2
**turn [9]** 15/18 19/9 35/16 38/23 46/14 55/22 82/24 102/11 116/13
**turned [1]** 114/14
**twice [3]** 22/5 36/15 89/18
**two [15]** 7/21 7/22 15/21 16/22 22/14 23/9 38/23 58/5 63/9 79/9 80/24 81/8 96/20 113/17 118/1
**two-year [1]** 22/14
**type [4]** 17/15 23/6 99/18 113/3
**types [1]** 55/19
**typewritten [1]** 99/10
**typically [4]** 35/4 36/15 43/22 79/4

**U**

**U.S [5]** 24/14 26/21 69/12 71/12 119/17
**ultimately [2]** 44/11 95/10
**unable [1]** 79/17
**unchecked [1]** 117/18
**under [21]** 40/9 59/19 66/5 78/9 78/11 93/17 99/15 101/15 101/19 101/23 101/24 103/11 103/19 103/21 104/4 105/5 105/11 105/15 105/24 106/4 106/9
**underlying [5]** 4/16 4/23 4/24 5/5 5/24
**underneath [1]** 60/19
**understand [13]** 5/25 8/19 12/13 25/9 35/7 40/6 40/25 43/19 66/18 66/19 82/7 85/13 108/6
**understanding [9]** 12/9 12/10 40/17 40/18 45/5 45/7 57/6 57/9 60/14
**understood [6]** 6/17 43/21 54/1
**undertook [1]** 12/17
**unfortunately [1]** 21/15
**unified [2]** 43/24 44/1
**UNITED [17]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/3 4/6 9/4 9/7 10/2 32/15 76/7 119/8 119/12
**unproductive [2]** 90/24 90/24
**unsure [1]** 90/25
**until [7]** 8/19 15/12 56/9 65/21 70/15 113/9 115/2
**unusual [11]** 49/9 55/15 55/17 56/6 56/14 58/9 63/18 63/21 63/22 67/4 68/12
**up [32]** 4/2 4/15 4/18 7/1 7/1 8/19 9/21 22/11 31/3 31/19 36/20 37/4 41/20 42/25 44/14 45/11 45/23 46/17 51/9 52/21 58/25 62/23 67/24 73/15 73/16 79/2 79/8 83/9 83/12 83/21 96/16

**U**

**upkeep [1]** 104/6
**upon [1]** 86/13
**us [14]** 7/11 9/8 9/12 34/16 40/7 40/12 40/12 56/18 60/7 60/9 65/6 80/5 87/17 87/17
**USAO [1]** 114/24
**USAO01143454 [1]** 111/18
**USAO1143454 [1]** 110/21
**use [5]** 13/9 112/13 113/19 113/23 113/25
**used [8]** 12/19 13/5 13/8 13/9 13/15 28/7 63/21 66/16
**user [7]** 19/20 20/2 20/16 20/20 30/22 30/23 31/2
**using [4]** 13/16 31/21 114/21 115/3
**usual [1]** 50/1
**usually [2]** 33/10 53/2

**V**

**V-a-r-a-n-i [1]** 10/8
**vague [1]** 62/3
**VARANI [9]** 3/6 10/3 10/4 10/7 10/13 17/17 19/8 20/22 21/2
**various [2]** 11/19 51/13
**varying [1]** 49/23
**verdict [1]** 35/10
**verification [2]** 86/10 87/4
**version [1]** 45/20
**versus [4]** 4/4 7/6 9/5 106/23
**very [11]** 4/13 15/15 40/4 49/5 50/10 50/25 56/9 58/22 70/6 96/1 105/18 108/13
**via [1]** 24/12
**video [2]** 90/7 91/13
**view [5]** 28/7 28/8 28/10 104/11 116/6
**viewed [1]** 28/24
**visit [2]** 60/25 61/4
**visited [1]** 61/8
**voice [3]** 63/21 63/23 63/24
**Vol [1]** 1/12
**volume [7]** 13/20 15/19 27/10 36/18 37/20 81/11 83/7
**Volume 1 [1]** 36/18 37/20 81/11
**Volume 2 [1]** 15/19
**vs [1]** 1/10

**W**

**Wait [1]** 23/20
**waiting [2]** 21/16 21/22
**walk [1]** 6/13
**want [17]** 7/17 8/4 8/6 8/22 35/16 43/23 47/18 60/1 60/4 60/7 75/4 82/24 104/11 104/22 111/5 111/12 116/12
**wanted [7]** 23/8 43/24 60/13 64/8 64/12 64/22 109/4
**wants [3]** 113/23 113/25 114/7
**Warner [1]** 82/5
**warrants [1]** 16/7
**was [225]**
**Washington [3]** 10/16 21/6 21/11
**wasn't [10]** 49/9 50/3 50/11 51/10 54/8 56/18 56/20 63/18 63/21 97/10
**water [3]** 104/3 104/17 106/18
**way [18]** 21/11 23/11 30/10 30/24 31/6 31/23 54/5 54/21 54/24 55/2 57/3 60/17 61/6 65/13 79/1 91/7 105/20 111/11 117/6
**we [108]** 4/19 5/2 6/22 6/22 7/2 7/2 7/12 7/17 7/22 7/23 8/9 8/15 8/25 9/11 12/22 15/8 15/9 15/15 32/8 34/9 34/19 34/22 36/24 40/10 40/11 40/13 45/11 46/17 47/17 48/17 48/19 48/24 48/25 49/23 51/11 51/13 51/18 58/16 58/25 59/5 59/15 59/22 59/23 60/1 60/4 60/7 60/10 62/22 63/5 63/8 63/15 63/19 63/20 63/23 65/17 65/18 65/23 68/4 70/18 70/18 75/23 77/24 78/6 78/7 78/8 78/25 78/25 79/1 79/2 79/1 79/16 79/17 79/18 83/25 84/2 84/12 86/4 86/20 86/20 87/2 87/16 87/18 96/14 96/15 98/5 98/15 99/9 103/7 104/11 104/11 107/18 109/14 112/13 113/7 113/11 113/13 114/16 114/18 115/1 115/11 115/17 115/18 115/20 116/3 116/5 116/21

118/3
**We [1]** 115/7
**we're [6]** 4/19 109/5 113/6 114/17 115/1 115/6
**week [1]** 53/23
**weeks [2]** 53/22 80/24
**Welcome [1]** 21/4
**well [45]** 4/10 5/10 5/11 6/9 8/1 8/9 8/13 11/1 12/23 14/4 15/15 23/12 25/12 27/17 41/13 41/18 50/8 51/16 52/16 53/23 58/5 58/19 61/3 63/8 63/9 67/16 71/2 71/17 72/6 73/22 79/16 83/14 85/10 87/1 89/23 91/5 91/22 93/5 106/14 106/21 108/1 108/17 115/22 116/6 117/20
**went [2]** 53/7 58/6
**were [98]** 4/16 4/24 5/16 6/20 11/24 12/1 12/1 12/4 12/6 12/7 12/14 13/6 15/24 16/23 18/4 22/19 22/21 22/24 23/8 24/24 26/4 26/11 26/14 26/16 26/18 27/13 27/17 30/13 32/2 33/19 34/9 35/18 37/25 40/15 43/9 46/11 49/1 49/2 49/6 49/19 50/8 51/1 51/22 53/6 53/6 54/11 54/11 54/15 54/19 54/24 55/2 55/3 55/8 55/19 55/25 56/11 56/16 56/21 57/14 57/15 58/12 58/25 59/2 61/18 62/20 62/21 63/5 63/8 63/20 66/6 68/2 72/2 72/15 72/17 72/23 75/6 75/10 75/17 77/4 85/15 89/22 90/5 93/18 93/18 94/1 94/2 94/5 94/5 94/8 103/1 108/13 108/16 109/14 110/3 110/4 110/6 110/7 110/8
**weren't [5]** 23/17 54/1 54/18 54/21 72/9
**West [1]** 1/20 2/11 39/10
**what [140]**
**whatever [1]** 83/11 86/19 117/10
**whatsoever [1]** 95/18
**when [57]** 6/22 18/1 18/7 18/10 19/13 19/21 20/11 20/17 23/5 24/16 26/4 28/8 28/10 31/3 31/20 33/17 34/10 34/22 35/7 35/9 36/4 41/14 41/17 41/19 43/19 49/19 51/4 52/3 52/17 55/13 56/24 58/12 60/14 62/4 63/12 68/24 71/11 72/8 77/10 77/21 80/17 80/22 81/6 84/17 88/2 89/22 92/16 93/7 94/22 97/1 97/8 100/6 100/16 101/13 102/15 110/18 115/10
**where [18]** 10/15 12/9 16/2 28/19 33/6 39/11 39/25 48/1 50/17 50/19 52/5 53/22 66/6 68/2 76/19 78/25 97/12 116/17
**Whereas [1]** 7/17
**whether [26]** 25/23 30/11 30/24 31/6 31/24 31/25 32/2 55/14 58/15 63/5 63/15 63/16 64/12 66/22 67/13 75/5 85/7 93/18 94/2 94/5 100/12 103/12 103/21 116/23 117/5 117/9
**which [21]** 4/15 6/7 7/7 7/8 7/15 7/16 8/12 10/17 12/2 13/14 14/2 14/8 15/18 38/24 39/21 59/3 113/21 114/14 114/18 114/19 115/16
**while [5]** 46/10 53/6 54/11 70/1 70/23
**who [35]** 5/16 11/23 19/19 19/25 20/15 20/19 24/21 24/24 26/20 30/21 37/1 38/17 38/17 38/20 39/17 39/19 41/6 43/11 44/1 48/20 49/6 52/10 53/19 57/21 59/23 66/14 77/13 77/16 79/21 82/4 82/22 89/23 101/9 108/1 116/15
**wholly [1]** 29/18
**whose [2]** 48/7 90/10
**why [17]** 40/12 40/18 45/4 50/6 52/25 54/7 59/5 81/9 86/20 87/17 90/21 94/12 94/16 99/5 100/22 100/24 101/17
**widely [1]** 13/15
**will [39]** 4/18 5/22 5/22 5/25 6/24 7/2 7/5 7/18 7/20 8/17 8/20 8/25 15/1 15/15 16/22 29/24 32/17 36/17 37/12 38/11 38/12 42/21 43/17 65/17 65/18 65/23 66/22 76/9 81/24 86/22 92/23 100/1 111/11 113/7 113/11 113/17 113/18 115/10 118/3
**within [2]** 40/12 57/12
**witness [25]** 9/16 10/1 10/4 13/21 15/16 15/20 18/19 19/10 20/4 32/7 32/12 32/16 37/21 42/9 70/13 75/21 76/4 76/8 81/12 109/17 112/24 113/18 113/20 114/5 118/2
**witnesses [5]** 3/5 3/14 5/2 6/16 101/23
**won't [1]** 8/21
**word [9]** 17/16 17/23 18/1 20/7 29/22 30/8 31/13 34/8 43/24

**words [2]** 18/2 70/4
**work [28]** 5/6 15/16 61/9 62/11 62/18 64/22 27/18 33/4 33/5 33/6 33/23 34/1 35/18 42/18 47/4 47/8 57/12 57/15 57/17 57/19 57/24 66/6 66/9 66/16 76/19 76/20 96/2 100/22
**worked [13]** 33/7 34/10 35/25 36/3 48/17 51/25 51/25 52/1 57/22 70/15 72/25 76/23
**working [15]** 22/6 22/10 26/21 47/3 48/23 49/19 51/2 51/9 53/23 57/15 70/1 70/23 72/17 74/6 74/10
**world [1]** 50/19
**worrying [1]** 4/24
**would [88]** 4/21 5/20 7/10 7/16 7/23 9/25 15/18 18/1 19/1 19/9 20/3 22/24 23/5 23/6 27/5 27/6 27/9 30/4 30/5 30/5 31/3 31/6 31/13 31/19 31/20 32/8 32/12 34/3 34/16 34/19 34/25 35/5 35/13 36/17 38/23 39/21 41/13 41/21 42/8 44/1 44/2 44/14 45/6 45/23 50/14 50/24 51/13 51/18 52/10 52/16 52/17 52/20 56/23 58/22 56/23 63/23 63/24 63/24 67/23 67/24 70/6 70/11 75/23 76/4 77/6 78/6 78/6 78/7 78/9 78/23 78/25 78/19 83/14 84/14 85/6 85/15 85/18 85/19 86/3 92/14 102/1 102/16 104/9 104/9 104/11 104/22 115/21 116/13
**wouldn't [5]** 30/5 56/20 57/1 96/16 107/24
**write [1]** 44/20
**writing [1]** 25/4
**written [6]** 22/15 22/19 23/24 57/8 81/1 95/22
**wrong [2]** 25/10 116/22
**wrote [1]** 44/21
**WYMAN [40]** 2/5 4/6 5/14 9/7 10/9 25/1 27/24 28/24 32/21 39/3 55/13 56/1 56/24 58/15 64/4 66/5 66/21 67/13 67/19 68/2 74/14 75/5 76/13 90/14 90/16 90/18 91/14 93/18 94/1 96/7 96/10 97/16 108/7 108/12 109/19 110/3 110/5 110/6 110/8 110/15

**X**

**X-Law [3]** 33/5 66/9 66/12

**Y**

**year [9]** 22/14 41/1 41/9 56/9 69/24 71/18 81/7 106/22 106/22
**years [14]** 10/23 13/10 13/11 23/9 24/6 48/17 48/24 49/4 58/5 76/24 79/10 100/2 100/20 101/2
**yes [225]**
**yesterday [3]** 4/14 5/3 5/3
**yet [1]** 114/1
**York [2]** 12/12 16/3
**you [715]**
**you're [6]** 8/5 8/13 16/6 19/8 32/11 87/9
**you've [3]** 9/20 21/15 89/13
**your [230]**
**yourself [3]** 9/19 34/22 101/13