UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,      ) CERTIFIED TRANSCRIPT
                     Plaintiff,  )
       vs.                       )
                                 )  SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,           )
                     Defendant.  ) TRIAL DAY 9, VOL. 1
------------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

July 27, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    NICOLA T. HANNA
     United States Attorney
4    BRANDON D. FOX
     Assistant United States Attorney
5    Chief, Criminal Division
     ALEXANDER WYMAN
6    Assistant United States Attorney
     Major Frauds Section
7    1100 United States Courthouse
     312 North Spring Street
8    Los Angeles, CA  90012
     (213) 894-6683
9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25

```
 1

 2                              I-N-D-E-X

 3

 4    PLAINTIFF'S
      WITNESSES:              DIRECT   CROSS   REDIRECT   RECROSS
 5
      TOM GOEDERS
 6      (Continued)                     25       31         38
      JUDY REGNIER          39
 7

      PLAINTIFF'S
 8    EXHIBITS:                            MARKED     RECEIVED

 9    Exhibit 93                                        33
      Exhibit 124                                       34
10    Exhibit 27                                        46
      Exhibit 41                                        52
11    Exhibit 391, pages 1 and 7                        54
      Exhibit 44                                        57
12    Exhibit 43                                        60
      Exhibit 46                                        62
13    Exhibit 48                                        65
      Exhibit 50                                        71
14    Exhibit 5                                         75
      Exhibit 6                                         79
15    Exhibit 11 (In full)                              81
      Exhibit 25                                        85
16    Exhibit 57                                        89
      Exhibit 58                                        90
17    Exhibit 69                                        94
      Exhibit 73                                        95
18    Exhibit 260                                       97
      Exhibits 378, 379, and 380                        98
19    Exhibit 356                                      102
      Exhibit 75                                       104
20    Exhibit 78                                       105
      Exhibit 85                                       108
21    Exhibit 87                                       112
      Exhibit 94                                       116
22    Exhibit 95                                       118
      Exhibit 100                                      120
23    Exhibit 101                                      122
      Exhibit 102                                      124
24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

4

```
1   DEFENSE
    WITNESSES:         DIRECT    CROSS     REDIRECT    RECROSS
2
    (None)
3
    DEFENSE
4   EXHIBITS:                              MARKED     RECEIVED
5   (None)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

|      | 1 | SANTA ANA, CALIFORNIA; TUESDAY, JULY 27, 2021; 8:29 A.M. |

SANTA ANA, CALIFORNIA; TUESDAY, JULY 27, 2021; 8:29 A.M.

08:26   2    (Jury not present)

08:29   3    THE CLERK:  Item 2, SACR-19-00061-JVS, United

08:29   4  States of America versus Michael John Avenatti.

08:29   5    MR. SAGEL:  Good morning, Your Honor.  Brett Sagel

08:29   6  and Alex Wyman.  At counsel table with us is Special Agent

08:29   7  Ramon Carlos.

08:29   8    THE COURT:  Good morning.

08:29   9    MR. AVENATTI:  Good morning, Your Honor.  Michael

08:29  10  Avenatti appearing pro se, with advisory counsel Mr. Dean

08:29  11  Steward, Ms. Cefali.  And we have Joe assisting us with the

08:29  12  technology.

08:29  13    THE COURT:  Good morning.

08:29  14    We have a number of matters to take up occasioned

08:29  15  by the filings made over the past several days.

08:30  16    Number one, there is a request for immediate

08:30  17  inquiry with regard to a tweet.  Do the parties have

08:30  18  anything further to report to the Court on that?

08:30  19    MR. SAGEL:  Yes, Your Honor.  We received your

08:30  20  minute order.  I just would like to clarify a couple things

08:30  21  both prior to that and then with regards to what Your Honor

08:30  22  was asking for.

08:30  23    In the e-mail that we sent to defendant regarding

08:30  24  the tweet, the government even said, "Based on a quick

08:30  25  review of this Twitter account, the person has tweeted at

08:30   1   times in which we are in trial.  So I do not believe this
08:30   2   person is saying they are a juror on our case but just a,
08:30   3   quote, unquote, juror in the sense of listening to the
08:30   4   evidence."  And I provided the link and so forth.
08:30   5          So in addition to defendant having that
08:30   6   information before his filing, the government pulled several
08:30   7   tweets including after, Your Honor, after defendant's filing
08:31   8   of a minute order where the individual commented about
08:31   9   living in New York, New Jersey, not being a juror on this
08:31  10   case.
08:31  11          I would also point out that on -- sorry, give me
08:31  12   one second, Your Honor -- one such tweet that I pulled real
08:31  13   quickly was a tweet at 2:13 p.m. on July 22nd talking about
08:31  14   the multiple cashiers that defendant used to hide money.
08:31  15   Also on July -- well, July 26th, yesterday at 4:27 is when
08:31  16   the tweet started about not being a juror on this case.
08:31  17          If you were to look at a tweet on July 23rd, which
08:31  18   would have been while we were in trial, the person said --
08:31  19   I'm skipping the first half of it -- says, "I was at a
08:31  20   medical appointment so I couldn't follow closely.  I thought
08:32  21   Geoff would be on the stand a little longer.  I was hoping
08:32  22   to hear his perspective."  That was a tweet from July 23rd,
08:32  23   also available to defendant prior to its filing.
08:32  24          If you were to look at this individual's Twitter
08:32  25   account which started on, I think it is, July 7, from pretty

08:32  1    much the beginning of that Twitter account, that person has

08:32  2    been making comments about Mr. Avenatti.  So it is not new

08:32  3    for this individual to be making negative remarks about

08:32  4    Mr. Avenatti two weeks before a jury was even picked in this

08:32  5    case.  I think a review of this person's Twitter account

08:32  6    clearly shows they are not a juror on this case.

08:32  7            I think out of an abundance of caution, if Your

08:32  8    Honor wants to ask the panel as a whole:  Did anybody see,

08:32  9    read, or post anything about this case since we were

08:32  10   together on Friday? that would be sufficient -- and maybe

08:32  11   not even necessary, but sufficient.

08:32  12           THE COURT:  Mr. Avenatti.

08:33  13           MR. AVENATTI:  Your Honor, can I pass up something

08:33  14   to the Court?

08:33  15           THE COURT:  Please.

08:33  16           MR. AVENATTI:  Your Honor, for the record, and

08:33  17   there's two -- it's the same thing, Your Honor.  I passed up

08:33  18   two copies, for the Court and the court staff.

08:33  19           I had passed up a tweet from this -- it appears to

08:33  20   be a tweet from the same individual 6:01 p.m., July 24,

08:33  21   2021.  She is responding to a tweet by a reporter who is

08:33  22   actually here today who has been following the case:  "Great

08:34  23   job.  I'm here every day of MA trials."

08:34  24           Your Honor, my position is as follows:  This is a

08:34  25   serious issue.  Now, if this is just someone who is trolling

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:34   1   me or in the audience or tweeting about the case, that's one

08:34   2   thing.  If this is a person that is on the jury or has

08:34   3   contact with jurors, that is a serious matter that we need

08:34   4   to get to the bottom of.

08:34   5            This issue, Your Honor, should have been brought

08:34   6   to my attention through Mr. Steward immediately, not 24

08:34   7   hours later.

08:34   8            THE COURT:  Sir, I read your paper in that regard.

08:34   9   Getting back to you on the next business day before the

08:34   10  Court's next trial day is sufficient.

08:34   11           MR. AVENATTI:  Okay.  I understand that's the

08:34   12  Court's position, Your Honor.  I don't believe it was

08:34   13  sufficient.

08:34   14           THE COURT:  Sir, move on.

08:34   15           MR. AVENATTI:  Okay.  Separate and apart from

08:34   16  that, Your Honor, I'm going to re-request the relief that I

08:34   17  requested in the trial.  It's not a big ask, Your Honor.

08:35   18  This is a serious, potentially serious matter.  I didn't

08:35   19  post the tweet.  No one on our side posted these tweets.

08:35   20           We just want an inquiry conducted, and we don't

08:35   21  believe that a panel, a generalized panel inquiry is

08:35   22  sufficient.  I think this is a small ask for us to ensure

08:35   23  that this jury is in fact impartial and is sufficient as it

08:35   24  relates to my due process rights.  That's all I'm asking

08:35   25  for, Your Honor.

08:35   1           Thank you.

08:35   2           THE COURT:  I believe that the individual's tweet

08:35   3   subsequent to the issuance of the Court's order denying that

08:35   4   the individual was a juror and the fact that many of the

08:35   5   tweets were inconsistent given the time of the tweets and

08:35   6   the place is consistent with the tweet being made by a

08:35   7   juror.  I'm not going to pursue this any further.

08:35   8           I want filed for the record the individual's tweet

08:35   9   denying that she is a juror.

08:36  10           MR. SAGEL:  I will do that, Your Honor.  Can I

08:36  11   have until the end of the day to do that?

08:36  12           THE COURT:  That's fine.

08:36  13           MR. SAGEL:  Thank you, Your Honor.

08:36  14           THE COURT:  Just so it's in the record the next

08:36  15   day or so.

08:36  16           MR. SAGEL:  Thank you, your Honor.

08:36  17           THE COURT:  Mr. Avenatti.

08:36  18           MR. AVENATTI:  The only request I would make is

08:36  19   that what I handed to the Court be also made part of the

08:36  20   record, Your Honor.

08:36  21           THE COURT:  You're free to file it.

08:36  22           MR. AVENATTI:  Thank you.

08:36  23           THE COURT:  Next is a request by Mr. Avenatti at

08:36  24   docket 580 and a response at 586 for a further instruction

08:36  25   to the jury.  I will give further instruction to the jury in

08:36   1   the closing instructions, but I'm not going to instruct
08:36   2   further at this point with regard to the fact that whether
08:36   3   or not Mr. Avenatti malpracticed is irrelevant.  I believe
08:36   4   it is irrelevant.
08:36   5           As we go forward if objections are made on that
08:36   6   ground to similar inquiry that go only to malpractice or
08:37   7   failure to competently discharge duties, I'm likely to
08:37   8   sustain such an objection.
08:37   9           I feel at this point it would just emphasize what
08:37  10   we're going to tell the jurors to ignore, so I'm not going
08:37  11   to pursue that further.
08:37  12           Comments?
08:37  13           MR. SAGEL:  Just for clarity's sake, for example,
08:37  14   defendant's office manager will be taking the stand today,
08:37  15   which will be another issue we will bring up.
08:37  16           Mr. Johnson was shown several documents.  We
08:37  17   didn't introduce them because he has never seen them.
08:37  18   She'll be able to introduce them because she is on the
08:37  19   e-mails with the defendant and will testify about it's
08:37  20   defendant's handwriting on these documents forging documents
08:37  21   on behalf of Mr. Johnson.
08:37  22           This relates to the home purchase, so it's not
08:38  23   just malpractice or negligence on his part.  It's his
08:38  24   ongoing scheme to lie and lull his client.  So it's not just
08:38  25   purely that he didn't help his client, but it's the ongoing

08:38  1   lying and lulling of his client.

08:38  2        So I just want to clarify that we're not getting

08:38  3   into it because he failed to get his client the house.  It's

08:38  4   the ongoing lies to his client.

08:38  5        THE COURT:  Well, I will have to hear the

08:38  6   questions if there is some other purpose.  But on Friday

08:38  7   there were questions to the effect, questions from which one

08:38  8   could draw the inference that Mr. Avenatti had not acted

08:38  9   competently in assisting Mr. Johnson to obtain social

08:38  10  security or maintain social security.  I don't think that's

08:38  11  lulling.  It seems to me it just goes to an irrelevant

08:38  12  purpose, maybe even below the level of competency.  But

08:38  13  that's not relevant here.

08:39  14       MR. SAGEL:  And I appreciate Your Honor's

08:39  15  comments.  Obviously we believe the inference when Social

08:39  16  Security is asking for the settlement from the County, why

08:39  17  you are making payments, what the payments are for, he has

08:39  18  three options, one of which is to tell the truth which would

08:39  19  uncover his fraud; one of which is to lie, which is what he

08:39  20  was doing to his client; or door number three which

08:39  21  defendant chose, which is ignore it completely and his

08:39  22  client loses his benefits.

08:39  23       It's not just negligence.  It was a conscious

08:39  24  decision not to put in writing either a lie to Social

08:39  25  Security or to provide the truth that would uncover his

08:39 1    fraud.  So it's not just that he's negligent.  There is more
08:39 2    to it, especially when he is saying in his opening
08:39 3    statements, I'm doing all this extra work and I should get
08:39 4    money for this extra work for my client.  If he wants to say
08:39 5    he does extra work, he's got to do that extra work.  He
08:39 6    didn't and he lied, and he lulled his client.
08:40 7            That's our position.  There are other inferences
08:40 8    in that as well.
08:40 9            THE COURT:  Well, let's go forward.  You have my
08:40 10   current thoughts.
08:40 11           MR. SAGEL:  Understood, Your Honor.  Thank you.
08:40 12           THE COURT:  Anything further on that?
08:40 13           MR. AVENATTI:  Your Honor, I think our papers
08:40 14   submitted over the last few months have been fairly clear.
08:40 15           I will note that the scope of the direct
08:40 16   examination on a number of these witnesses has been far
08:40 17   beyond what Mr. Sagel has just indicated.  And the problem
08:40 18   is, Your Honor, that when they open the door or touch on
08:40 19   these issues, then I can't leave them unchecked and I have
08:40 20   to respond with questions about those topics.
08:40 21           Beyond that, Your Honor, I'll submit.
08:40 22           THE COURT:  Fine.  You have my guidance at
08:40 23   present.
08:40 24           The government filed a brief at docket number 592
08:40 25   styled Government's Trial Brief Regarding Cross-examination

08:40  1    and Federal Rule of Evidence 403.  I have indicated a number
08:41  2    of times to you, Mr. Avenatti, that the constitutional right
08:41  3    to confront through cross-examination is not limitless.  I
08:41  4    think the government has pointed to a number of examples
08:41  5    where the same question or essentially the same question has
08:41  6    been asked three or four times.

08:41  7        Sir, I direct you to ask one question once and not
08:41  8    to repeat it for emphasis or any other purpose.  If you do,
08:41  9    I will sustain the objections to it.

08:41  10       MR. AVENATTI:  And, Your Honor, I will take Your
08:41  11   Honor's direction to heart.  I will note the following.  I
08:41  12   think the Sixth Amendment and the confrontation clause is
08:41  13   fairly broad.  I point the Court to Davis versus Alaska, 415
08:41  14   U.S. 308, 1974 Supreme Court case; Delaware v. Van Arsdall,
08:41  15   475 U.S. 673, 1986 Supreme Court case.

08:41  16       Your Honor, there has been no effort to harass,
08:41  17   annoy, or humiliate any of these witnesses.  I have
08:42  18   attempted to be concise in my examination.  As Your Honor
08:42  19   knows, I don't have the benefit of meeting with these
08:42  20   witnesses five, 10, 15 times before they testify.

08:42  21       But I'm going to take Your Honor's direction to
08:42  22   heart.  I will attempt to be as concise as I possibly can.
08:42  23   I think on the few occasions where I have engaged in a
08:42  24   question that has been deemed repetitive, I have been trying
08:42  25   not necessarily, Your Honor, to emphasize the point but

08:42   1   rather to make sure that the record is sufficient relating
08:42   2   to the answer matching my question.
08:42   3            But again, I'm going to do my very best.
08:42   4            THE COURT:  Sir, it's not about harassing or
08:42   5   irritating witnesses.  It's about undue expenditure of time
08:42   6   under Rule 403.  That's what I'm concerned about.
08:42   7            You know, I won't recite the government's several
08:42   8   examples, but four or five questions to establish the day of
08:43   9   the week seems to me a little much.
08:43  10            The parties at the Court's request put in briefs
08:43  11   with regard to the defendant's reciprocal discovery
08:43  12   obligations.  I hold that the defendant's reciprocal
08:43  13   discovery obligation under Rule 16(b)(1) extends to
08:43  14   materials used in cross-examination other than those used to
08:43  15   refresh the witness's recollection or to impeach the
08:43  16   witness.
08:43  17            In part I rely upon United States versus Ellison,
08:43  18   704 Fed. Appx. 616 at 624-625.  There the Court says:  "The
08:44  19   appellants argue that the District Court violated their
08:44  20   constitutional rights by requiring them to provide
08:44  21   reciprocal discovery to the government disclosing
08:44  22   non-impeachment documents they intended to use at trial."
08:44  23   I'll skip the citations.
08:44  24            "The District Court properly refused to limit the
08:44  25   appellants' production obligation to those exhibits they

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:44   1   planned to introduce with their own witnesses by refusing to

08:44   2   cabin their 'case-in-chief' to the period after which they

08:44   3   called their first witness at trial, because a defendant may

08:44   4   establish his defense by cross-examining government

08:44   5   witnesses."  Again I will skip the citations.

08:44   6        "The District Court's order did not violate Rule

08:44   7   16.  Because the District Court's order merely enforced

08:45   8   appellants' reciprocal discovery obligations, it did not

08:45   9   violate their constitutional rights."  See United States

08:45   10  versus Urena, 659 F.3d 903 at 908-909, (Ninth Circuit 2011).

08:45   11       "Moreover, the scope of the order was properly

08:45   12  limited to the production of non-impeachment evidence, i.e.,

08:45   13  to evidence that was 'offered to show an alternative view of

08:45   14  the truth.'"

08:45   15       A number of authorities have taken the same

08:45   16  position, including the extensive discussion by Judge

08:45   17  Friedman in United States versus Crowder, 325 F.Supp.3d 311

08:45   18  at 136 through 137, (District of Columbia 2018).

08:46   19       Similar in point would be -- well, suffice it to

08:46   20  say that there are other cases in point.

08:46   21       The defendant's primary authority argued for

08:46   22  contraposition, and other Courts have recognized

08:46   23  contraposition, that is, that the obligation does not extend

08:46   24  to cross-examination.

08:46   25       He cites United States versus Joseph Givens, 767

08:46  1  F.2d 574 (Ninth Circuit 1985).  Givens is not on point.

08:46  2  One, Givens deals with the government's disclosure

08:47  3  obligations in its rebuttal case, and it says nothing about

08:47  4  the defendant's Rule 16(b)(1) obligation with respect to the

08:47  5  conduct of cross-examination.

08:47  6          The position which I'm taking here should come as

08:47  7  no surprise.  I put the same position in United States

08:47  8  versus Michaels.  That case is SACR-16-76-JVS at Docket No.

08:47  9  768.  I ruled on the question of the defendant's disclosure

08:47  10  obligation.

08:47  11          At page 2 to 3 of that order, I said:  "All

08:47  12  defendants are ordered to produce no later than October 11,

08:47  13  2019, every document or other evidence they intend to use

08:47  14  for examination in the government's case-in-chief or their

08:47  15  case-in-chief, save only true impeachment documents."

08:48  16  Citing United States versus Swenson, 298 F.R.D. 474, 476-77

08:48  17  (District of Idaho 2014); accord United States versus

08:48  18  Ellison, 704 Fed. Appx. 616, 624 (Ninth Circuit 2017).

08:48  19          And it goes on to quote:  "The District Court

08:48  20  properly refused to limit appellant's production obligation

08:48  21  of those exhibits they planned to introduce with their own

08:48  22  witnesses by refusing to cabin their case-in-chief to the

08:48  23  period after which they called their first witness at trial

08:48  24  because the defendant may establish his defense by

08:48  25  cross-examining the government's witnesses."

08:48  1        Mr. Steward was counsel of record in that case.  I

08:48  2  don't recall whether he put in a brief or not.  That issue

08:49  3  was primarily briefed by the defendants Michaels and

08:49  4  Feldman.  In any event Mr. Steward was counsel of record in

08:49  5  that case.

08:49  6        I note two further reasons for this position.

08:49  7  One, a defendant could effectively shield all the

08:49  8  defendant's evidence by bringing it in through

08:49  9  cross-examination and never presenting a case-in-chief.  I

08:49  10 think that frustrates the purpose of the reciprocal

08:49  11 disclosure obligation.

08:49  12       Two, although the term case-in-chief appears in

08:49  13 the current version of Rule 16(b)(1), the former version

08:49  14 referred to evidence-in-chief, which has a broader meaning.

08:49  15 The commentary to the most recent change indicates that --

08:49  16 the change in language as I've indicated, substantive

08:49  17 change.

08:49  18       I may reflect further on this and issue a written

08:49  19 order, but the obligation of the defendant at this point is

08:50  20 to meet his reciprocal discovery obligations with respect to

08:50  21 any materials used in cross-examination.

08:50  22       Anything further on this?

08:50  23       MR. AVENATTI:  Yes, Your Honor, briefly.

08:50  24       Your Honor, I believe that the Court's position on

08:50  25 this is precluding me from using documents on

08:50   1   cross-examination, especially documents that have previously

08:50   2   been produced by the government and that bear USAO Bates

08:50   3   stamp number, that that order is violative of Rule 16, my

08:50   4   constitutional rights, and fundamental due process, Your

08:50   5   Honor.

08:50   6           As it relates to the United States versus Ellison

08:50   7   case as well as Crowder, I don't believe either one of those

08:50   8   cases dealt with a situation where a defendant attempts to

08:50   9   use a document with a USAO Bates stamp number on it that was

08:51   10  produced by the government.

08:51   11          Thus far in the trial that's the only thing that I

08:51   12  have attempted to do.  There has been no effort, Your Honor,

08:51   13  to use thus far in the trial any document that I have just

08:51   14  pulled out of thin air without previously providing it to

08:51   15  the government.

08:51   16          Now, admittedly I don't have access to as much

08:51   17  information as I otherwise would, but I'm not aware of any

08:51   18  case, Your Honor, ever anywhere where a Court has held that

08:51   19  a defendant is precluded from using a document on

08:51   20  cross-examination because the defendant did not effectively

08:51   21  reproduce that same document back to the government.  I'm

08:51   22  not aware of a single case that held that.

08:51   23          Now, I was not obviously part of the Michaels

08:51   24  case.  Mr. Steward was.

08:51   25          THE COURT:  That's why you have advisory counsel,

08:51  1    sir.

08:51  2             MR. AVENATTI:  And, Your Honor, I'm going to get

08:51  3    to that.  Again, I may be wrong with what I am about to say

08:52  4    because I'm at a disadvantage.  My understanding is, and

08:52  5    Mr. Steward I believe checked with one of his co-counsel

08:52  6    yesterday -- and again, if I'm wrong about this, I'm wrong

08:52  7    about it, but I'm not aware that in the Michaels case Your

08:52  8    Honor precluded the defense from using on cross-examination

08:52  9    documents that had originally been produced by the

08:52  10   government that bore a USAO Bates stamp number.

08:52  11            Now, if that's what happened, it is what it is, I

08:52  12   guess.  But I'm not aware that that was the order in that

08:52  13   case.  I never -- I mean, this is very unusual, Your Honor,

08:52  14   to prevent a defendant from using the government's own

08:52  15   documents on cross-examination, documents that they have had

08:52  16   far longer than I have.

08:52  17            THE COURT:  No, sir.  I disagree with that.  All

08:52  18   the documents that came from your files you have had since

08:52  19   the inception of the creation of those documents.

08:53  20            MR. AVENATTI:  Well, Your Honor, actually that's

08:53  21   not correct because I don't have access to those documents.

08:53  22            THE COURT:  Sir, that's not the point.  You have

08:53  23   had access since the inception of those documents.  The

08:53  24   first time you got those documents wasn't when the

08:53  25   government produced back to you documents from your own

08:53  1    files.

08:53  2              MR. AVENATTI:  Your Honor, actually in connection

08:53  3    with the investigation, when the documents were seized and

08:53  4    the servers were seized, they were not returned to me.

08:53  5              THE COURT:  Sir, you're missing my point.  They

08:53  6    were always in your files.

08:53  7              Any other points you want to make at this time?

08:53  8              MR. AVENATTI:  Your Honor, nothing further, but I

08:53  9    just want to be clear.  The Court is precluding me from

08:53  10   using on cross-examination USAO Bates-stamped documents?

08:53  11             THE COURT:  Correct.  The issue is not requiring

08:53  12   you to reproduce a document to the government which was in

08:53  13   the production.  The issue is surprise and a disclosure

08:53  14   requirement.  A surprise, whether it's been produced by the

08:54  15   government previously or not, that's what 16(b)(1) seeks to

08:54  16   eliminate.

08:54  17             Our time is waning.

08:54  18             MR. SAGEL:  Your Honor, can I make one quick

08:54  19   comment on that?  Obviously if the defendant produces to the

08:54  20   government going forward what he thinks he is going to use,

08:54  21   most of it is about the investigative part as well, and it

08:54  22   has to be a document-by-document decision by Your Honor.  I

08:54  23   can think at least off the top of my head of five times the

08:54  24   defendant forged or fabricated documents.  That's why we

08:54  25   need to see it.  Just because it has a USAO number doesn't

08:54  1   mean it's happened in the original course.  So at that
08:54  2   point --
08:54  3            THE COURT:  I think I have the government's
08:54  4   position at this time.
08:54  5            MR. SAGEL:  Thank you.
08:54  6            THE COURT:  Mr. Avenatti put in a brief at docket
08:54  7   587 with regard to the requirements for authorized or other
08:54  8   admissions.  I take the advice in the brief, and the
08:54  9   government will be held to its foundational requirements in
08:54  10  offering statements of allegedly authorized agents.
08:55  11           Finally, at Docket 596, late yesterday
08:55  12  Mr. Avenatti put in a formal objection to the use of certain
08:55  13  business records.  Are we going to get into that issue with
08:55  14  Ms. Regnier?
08:55  15           MR. SAGEL:  Yes, Your Honor.
08:55  16           THE COURT:  The government's filing at 5:06 with
08:55  17  all of the declarations of the various disclosures runs over
08:55  18  200 pages.  Well, let's just see how it develops.
08:55  19           MR. WYMAN:  Your Honor, to be clear, the only
08:55  20  custodian declarations that we're relying on for trial
08:55  21  exhibits are in the trial exhibit binders.  I believe
08:55  22  they're Exhibits 393 to 397.  The objections that the
08:56  23  defendant has lodged in his late filing yesterday only
08:56  24  related to those five declarations.
08:56  25           THE COURT:  Well, we'll deal with it as we go.

08:56   1    It's two minutes to nine.  We will take up this matter

08:56   2    later.

08:56   3           MR. AVENATTI:  Your Honor, there is one witness

08:56   4    issue this morning.

08:56   5           THE COURT:  Yes, sir?

08:56   6           MR. AVENATTI:  Your Honor was very clear last week

08:56   7    as to the fact that witnesses in order was supposed to be

08:56   8    disclosed before we left court.  We now have the third

08:56   9    violation in four days.  On Sunday morning I was told --

08:56  10           THE COURT:  Is Ms. Regnier going to testify first

08:56  11    today?

08:56  12           MR. SAGEL:  No, Your Honor.  What happened is

08:56  13    Friday after court, which he was given 48 hours' notice of,

08:56  14    Friday after court when we tried to reschedule Mr. Sheikh's

08:56  15    travel because things are going different, I learned of a

08:56  16    family vacation that he has next week.

08:56  17           Because of the estimates that defendant has

08:56  18    provided on his cross-examination and what he's actually

08:56  19    done with the numbers, we didn't think we could get

08:57  20    Mr. Sheikh on without putting him in between or trying to

08:57  21    take him out of order with Ms. Regnier.

08:57  22           Friday night I asked them and I asked their travel

08:57  23    people if they would be able to fly him on out Monday so

08:57  24    that he could testify first thing Tuesday so that we don't

08:57  25    have to interrupt any testimony.

08:57  1          Saturday night I learned that they were able to

08:57  2   get him on a flight for last night, yesterday, so he could

08:57  3   testify first thing.  When I learned that, the first thing

08:57  4   Sunday morning at 7:00 a.m. I alerted the defendant that we

08:57  5   would need to call a short witness out of order due to a

08:57  6   conflict in his schedule and so that we would not have to

08:57  7   break up Ms. Regnier's testimony.

08:57  8          THE COURT:  Had he been disclosed as a witness to

08:57  9   come on last week?

08:57  10         MR. SAGEL:  He was going to be a witness this

08:57  11  week.

08:57  12         THE COURT:  No.  Was he disclosed in the lineup

08:57  13  that you provided for the days last week?

08:57  14         MR. SAGEL:  No, Your Honor.

08:57  15         THE COURT:  What's he going to testify about?

08:57  16         MR. SAGEL:  Basically very brief.  He is the

08:58  17  opposing counsel on the Barela-Brock matter.  He is

08:58  18  basically getting in the real settlement agreement and the

08:58  19  payment of the money for it.  He is at best a 30-minute

08:58  20  witness.  The defendant had 48 hours' notice that he would

08:58  21  be testifying.  There is no prejudice to the defendant.

08:58  22         THE COURT:  Mr. Avenatti.

08:58  23         MR. AVENATTI:  Your Honor has set forth a rule.

08:58  24  It has now been violated three out of the last four times,

08:58  25  Your Honor.  My ask is very simple.  If I am given an order

08:58  1   of witnesses, that should be the order.  This is not an
08:58  2   issue of unavailability, Your Honor.  This was a strategic
08:58  3   decision.  That was the problem.  He was never disclosed
08:58  4   last week.
08:58  5          On Sunday morning we get notice that they want to
08:58  6   call him this morning out of order.  This is something that
08:58  7   should have been disclosed on Friday.  Meanwhile I'm in the
08:58  8   middle of trying to submit briefs, Your Honor.  I'm
08:58  9   preparing for Ms. Regnier's testimony.
08:58  10         You know, I got a lot going on in this case.  We
08:59  11  all do.  But, Your Honor, I don't think it's a big ask that
08:59  12  Your Honor's directive be followed.
08:59  13         THE COURT:  Sir, I think we all have to realize
08:59  14  that things are fluid.  That said, bring him on after
08:59  15  Ms. Regnier.
08:59  16         MR. AVENATTI:  Thank you, Your Honor.
08:59  17         MR. WYMAN:  Your Honor --
08:59  18         THE COURT:  That said, bring him on after
08:59  19  Ms. Regnier.  If it comes to it, you can present him in the
08:59  20  defendant's case-in-chief, should there be one, and I will
08:59  21  work to accommodate him.  But we're going to go forward with
08:59  22  Ms. Regnier.
08:59  23         So we will be in recess until the jury is up here.
08:59  24              (Recess taken at 8:59 a.m.;
08:59  25              proceedings resumed at 9:06 a.m.)

| | | |
|---|---|---|
| 08:59 | 1 | (Jury present) |
| 09:06 | 2 | THE COURT:  Good morning, ladies and gentlemen. |
| 09:06 | 3 | THOMAS GOEDERS, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN |
| 09:06 | 4 | THE CLERK:  Sir, you are reminded that you are |
| 09:06 | 5 | still under the oath that you took last week. |
| 09:06 | 6 | THE WITNESS:  Understood. |
| 09:06 | 7 | THE COURT:  Mr. Avenatti. |
| 09:06 | 8 | MR. AVENATTI:  Thank you, Your Honor. |
| 09:06 | 9 | CROSS-EXAMINATION (Continued) |
| 09:06 | 10 | BY MR. AVENATTI: |
| 09:06 | 11 | Q    Good morning, sir. |
| 09:06 | 12 | A    Good morning. |
| 09:06 | 13 | Q    When we left off on Friday, we were speaking about your |
| 09:06 | 14 | communications with the government.  Do you recall that |
| 09:06 | 15 | generally? |
| 09:06 | 16 | A    Yes. |
| 09:06 | 17 | Q    Did you or your attorney have any communications with |
| 09:06 | 18 | the government over the weekend? |
| 09:07 | 19 | A    Not that I'm aware of. |
| 09:07 | 20 | Q    Please turn to Exhibit 96. |
| 09:07 | 21 | MR. AVENATTI:  It's in evidence, so why don't we |
| 09:07 | 22 | bring it up for the jury, please. |
| 09:07 | 23 | Let's focus on the bottom two e-mails, Joe, if you |
| 09:07 | 24 | don't mind, please. |
| | 25 | |

09:07   1   BY MR. AVENATTI:

09:07   2   Q    Mr. Goeders, can you see that?

09:07   3   A    Yes, I can.

09:07   4   Q    And Mr. Wyman asked you about this exhibit on direct

09:07   5   examination; did he not?

09:07   6   A    I don't remember specifically.

09:08   7   Q    I want to direct your attention to the date and time at

09:08   8   the bottom e-mail.  Do you see that?  October 16, 2017, at

09:08   9   11:33 a.m., do you see that?

09:08   10  A    Yes.

09:08   11  Q    And that was an e-mail from Marty to me and you; was it

09:08   12  not?

09:08   13  A    (No response)

09:08   14  Q    Do you see the e-mail above it responding to it?

09:08   15  A    Yes, I do.

09:08   16  Q    Okay.  So Marty sent that e-mail at 11:33.  Do you see

09:08   17  that?

09:08   18  A    Yes.

09:08   19  Q    You don't have any reason to dispute that; do you?

09:08   20  A    No.

09:08   21  Q    And how many minutes passed before I responded to that

09:08   22  e-mail about closing this escrow?

09:08   23  A    Seven minutes.

09:08   24       MR. AVENATTI:  Now, if we go to the e-mail above

09:08   25  that -- Joe, maybe you could bring that up, together with

| | | |
|---|---|---|
| 09:09 | 1 | the e-mail where I responded actually, the middle e-mail. |
| 09:09 | 2 | Perfect. |
| 09:09 | 3 | BY MR. AVENATTI: |
| 09:09 | 4 | Q    When did Marty respond, according to this document? |
| 09:09 | 5 | A    10:53 p.m. |
| 09:09 | 6 | Q    On the same day? |
| 09:09 | 7 | A    On the same day. |
| 09:09 | 8 | Q    Do you have an explanation as to why that response |
| 09:09 | 9 | appears on this document to be before my response at |
| 09:09 | 10 | 11:40 a.m.? |
| 09:09 | 11 | A    I see his response at 10:53 p.m.  That's after, if I'm |
| 09:10 | 12 | understanding correctly. |
| 09:10 | 13 | Q    Almost 12 hours later, right? |
| 09:10 | 14 | A    Correct. |
| 09:10 | 15 | Q    Do you have any idea what was going on during those 12 |
| 09:10 | 16 | hours when we were trying to close that escrow? |
| 09:10 | 17 | MR. WYMAN:  Objection.  Calls for speculation. |
| 09:10 | 18 | BY MR. AVENATTI: |
| 09:10 | 19 | Q    You don't know; do you? |
| 09:10 | 20 | A    I wouldn't want to speculate. |
| 09:10 | 21 | Q    So you don't know? |
| 09:10 | 22 | MR. WYMAN:  Objection.  Asked and answered. |
| 09:10 | 23 | THE COURT:  Sustained. |
| 09:10 | 24 | MR. AVENATTI:  Let's go to Exhibit 97.  That's |
| 09:10 | 25 | admitted.  Thank you, Joe. |

09:11   1   BY MR. AVENATTI:

09:11   2   Q    This is another e-mail that Mr. Wyman asked you about

09:11   3   on direct.  Do you recall that?

09:11   4   A    I don't recall each exhibit during direct.

09:11   5   Q    Well, I will represent to you that it was admitted into

09:11   6   evidence during your direct examination.  So here is my

09:11   7   question.  I believe Mr. Wyman asked you about the bottom

09:11   8   e-mail.  Do you see that?

09:11   9   A    I see the bottom e-mail.

09:11   10  Q    Okay.  And you were asked or you stated in this e-mail,

09:11   11  "Buyer will need to be present during the inspection.

09:11   12  Please confirm buyer will be available and at inspection

09:11   13  tomorrow at 11:30 a.m."  Those are your words, correct?

09:11   14  A    They are not.  That's an e-mail from Marty.

09:11   15  Q    I'm sorry.  From Marty.  You were aware of that fact

09:11   16  because you were monitoring it, correct?

09:11   17  A    Yes.

09:12   18  Q    Do you have any idea whether Mr. Johnson was available

09:12   19  to be present that day or not?

09:12   20  A    I do not know.

09:12   21  Q    Please take a look at Exhibit 124, the text messages.

09:12   22  We touched on them briefly on Friday.

09:12   23       Do you have Exhibit 124, sir?

09:12   24  A    Yes.

09:12   25  Q    And I believe you testified -- I want to make sure that

```
09:13    1    I have this correct -- that Exhibit 124 to the best of your
09:13    2    knowledge is all of the text messages relating -- that I was
09:13    3    a party to from your phone relating to the close of the real
09:13    4    estate transactions and the escrow.  Am I correct about
09:13    5    that?
09:13    6    A    That's correct.
09:13    7    Q    To the best of your knowledge, there is nothing else
09:13    8    relating to those topics other than what is in 124; is that
09:13    9    correct?
09:13   10    A    Nothing else relating to the topics except for what's
09:13   11    in here?
09:13   12    Q    Correct, except what's in 124 from your phone.
09:13   13    A    I can't confirm for sure.
09:13   14    Q    Well, take a moment and look at 124 and tell me if
09:13   15    anything appears to be missing.
09:13   16    A    I don't think I would be able to recall what would be
09:13   17    missing from this from four years ago.  It looks to be
09:14   18    complete, but I don't recall every text.
09:14   19    Q    Well, sir, you had near-perfect recall when Mr. Wyman
09:14   20    was asking you questions.
09:14   21              MR. WYMAN:  Objection.  Argumentative.
09:14   22              THE COURT:  Sustained.
09:14   23    BY MR. AVENATTI:
09:14   24    Q    Sir, here's my question.  Just take a moment and look
09:14   25    at 124 and tell the jury if there is anything within 124
```

09:14  1    that you believe is missing.

09:14  2            MR. WYMAN:  Objection.  Asked and answered.

09:14  3            THE COURT:  Overruled.

09:14  4            THE WITNESS:  I couldn't tell you if anything is

09:14  5    missing.

09:14  6    BY MR. AVENATTI:

09:14  7    Q    Sir, you haven't looked at the document yet, so I'm

09:14  8    just asking you to please take a moment and look at the

09:14  9    document, the text messages, and answer my question.  That's

09:14  10   all I'm asking.

09:14  11   A    If I read every line on this, I would not be able to

09:14  12   tell you if I thought for sure with confidence that anything

09:14  13   was missing.

09:14  14   Q    Sir, my question is this.  Take a moment and look at

09:14  15   this and simply tell me if you see something that pops into

09:14  16   your head that makes you think, you know what, that should

09:14  17   be here and it's not.

09:15  18           MR. WYMAN:  Asked and answered, 403.

09:15  19           THE COURT:  Sustained.

09:15  20   BY MR. AVENATTI:

09:15  21   Q    To the best of your knowledge, there is nothing that's

09:15  22   missing from 124; is there?

09:15  23           MR. WYMAN:  Asked and answered, 403.

09:15  24           THE COURT:  Sustained.

09:15  25           I caution you, sir, to ask the same question only

09:15   1   once, please.

09:15   2   BY MR. AVENATTI:

09:15   3   Q    My last question of my exam, sir.  Did you ever limit

09:15   4   the federal government's ability to get text messages

09:15   5   relating to these topics in any way, shape, or form?  And by

09:15   6   topics, I'm talking about the escrow, the close of the

09:15   7   transaction, real estate transaction, and the loan.

09:15   8             MR. WYMAN:  Objection.  Compound.

09:15   9             THE COURT:  Overruled.

09:15   10             THE WITNESS:  Would you please restate the

09:15   11   question.

09:15   12   BY MR. AVENATTI:

09:15   13   Q    At any point in time did you tell any of the agents or

09:15   14   U.S. attorneys that they were limited in the text messages

09:15   15   they could get from your phone relating to communications

09:15   16   with me concerning the escrow, the closing of the

09:16   17   transaction, or the loan?

09:16   18   A    No.

09:16   19             MR. AVENATTI:  Nothing further.

09:16   20             THE COURT:  Mr. Wyman.

09:16   21             MR. WYMAN:  Thank you, Your Honor.

09:16   22                    REDIRECT EXAMINATION

09:16   23   BY MR. WYMAN:

09:16   24   Q    Good morning, Mr. Goeders.

09:16   25   A    Good morning.

09:16   1   Q    At the beginning of your cross-examination on Friday,

09:16   2   the defendant asked you about the e-mail which you were on

09:16   3   which was Exhibit 93.  Do you recall him asking you about

09:17   4   that e-mail?

09:17   5   A    Let me get 93 up here.

09:17   6   Q    Take your time.

09:17   7   A    (Witness retrieving document)

09:17   8   Q    Do you recall the defendant asking you about this

09:17   9   e-mail?

09:17  10   A    Yes.

09:17  11   Q    And he asked you about a statement you made in this

09:17  12   e-mail chain about how one of the delays of closing escrow

09:17  13   was not his fault.  Do you remember that?

09:17  14   A    Yes.

09:17  15   Q    And I believe you stated in your testimony that that

09:17  16   one specific delay was not his fault; is that right?

09:17  17   A    Correct.

09:17  18   Q    If I recall from your cross-examination, you didn't

09:17  19   remember that e-mail until he showed it to you; is that

09:17  20   fair?

09:18  21   A    I'm sorry.  Can you repeat that?

09:18  22   Q    Sure.  You didn't remember this e-mail chain before he

09:18  23   showed you the document, right?

09:18  24   A    I may have remembered it before while reviewing my

09:18  25   file.

09:18   1   Q    During your cross-examination he quoted the e-mail to
09:18   2   you, right?
09:18   3   A    Yes.
09:18   4   Q    Is this a fair and accurate copy of an e-mail chain
09:18   5   that you were on?
09:18   6   A    Yes.
09:18   7        MR. WYMAN:  Your Honor, the government moves to
09:18   8   admit Exhibit 93.
09:18   9        MR. AVENATTI:  Hearsay.
09:18  10        THE COURT:  Overruled.  Ninety-three will be
09:18  11   received.
09:18  12        MR. WYMAN:  Thank you, Your Honor.
09:18  13        (Exhibit 93 received in evidence)
09:18  14   BY MR. WYMAN:
09:18  15   Q    On Friday the defendant also spent a long period of
09:18  16   time on cross-examination asking you about your text
09:18  17   messages, Exhibit 124.  Do you remember that?
09:18  18   A    Yes.
09:18  19   Q    And then this morning he returned to them again?
09:18  20   A    Yes.
09:19  21   Q    He had you read a number of those text messages; is
09:19  22   that right?  On Friday he had you read them to the jury?
09:19  23   A    Yes.
09:19  24   Q    And he asked you if you sent those text messages; is
09:19  25   that right?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:19   1   A    Yes.
09:19   2   Q    Is Exhibit 124 a fair and accurate copy of many of your
09:19   3   text messages?
09:19   4   A    Yes.
09:19   5          MR. WYMAN:  Your Honor, the government moves to
09:19   6   admit Exhibit 124 into evidence.
09:19   7          MR. AVENATTI:  Objection, Your Honor.  Hearsay.
09:19   8   Authentication.  Incomplete document.
09:20   9          THE COURT:  124?
09:20  10          MR. WYMAN:  Yes, Your Honor.
09:20  11          THE COURT:  124 I have as an extraction report.
09:20  12          MR. WYMAN:  Yes, Your Honor.
09:20  13          THE COURT:  Overruled.  124 will be received.
09:20  14          MR. WYMAN:  Thank you, Your Honor.
09:20  15          (Exhibit 124 received in evidence)
09:20  16   BY MR. WYMAN:
09:20  17   Q    I just want to go over a few of these text messages
09:20  18   before we conclude.  You testified on direct exam on Friday
09:20  19   about how the defendant kept delaying escrow by saying he
09:20  20   was waiting on approval from the County for a special-needs
09:21  21   trust.  Do I have that right?
09:21  22   A    That's correct.
09:21  23          MR. WYMAN:  Would you please pull page 12 of
09:21  24   Exhibit 124.  And if we could please publish that for the
09:21  25   jury, and focusing on line 326 near the bottom.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:21 1 BY MR. WYMAN:

09:21 2 Q Do you see line 326?

09:21 3 A Yes.

09:21 4 Q And is that a text message that you sent to the

09:21 5 defendant?

09:21 6 A Yes.

09:21 7 Q And it looks like it's August 4, 2017?

09:21 8 A Yes.

09:21 9 Q Can you please read your text to the jury.

09:21 10 A "Hi, Michael.  I hope you're well.  Any updates on the

09:21 11 trust?"

09:21 12 Q Is that a reference to the special-needs trust that he

09:21 13 told you about?

09:21 14 A Yes.

09:21 15   MR. WYMAN:  Can you please go to page 13, and

09:21 16 focusing on lines 331 to 340.

09:22 17 BY MR. WYMAN:

09:22 18 Q It looks like this is August 8th and 9th.  What is your

09:22 19 first text to him on line 331 on August 8th?

09:22 20 A "Hi, Michael.  Anything new?"

09:22 21 Q And his response is?

09:22 22 A "Checking."

09:22 23 Q Then on August 9th on line 336, what did you text the

09:22 24 defendant?

09:22 25 A "Did you have that conversation this morning?"

09:22  1   Q    And what is his response?

09:22  2   A    "Still waiting."

09:22  3   Q    And then what did you write back?

09:22  4   A    "Waiting to have the conversation?"

09:22  5   Q    And lastly his reply?

09:22  6   A    "Waiting for a call back."

09:22  7   Q    Based on the context of these text messages, what did

09:22  8   you understand him to mean when he said he was waiting for a

09:22  9   call back?

09:22  10  A    He was waiting for a call back from the attorney for

09:22  11  L.A. County in regards to the approval of the special-needs

09:23  12  trust.

09:23  13  Q    Would you please go down to page 14, line 351.  It

09:23  14  appears there is a text message that you sent on August 19

09:23  15  of 2017.  Do you see that?

09:23  16  A    Yes.

09:23  17  Q    Can you please read that text message.

09:23  18  A    "Did the County get back to you?  If I remember

09:23  19  correctly, they said end of this week.  We have to ask for

09:23  20  another extension, and it would be great to know how much to

09:23  21  ask for if possible."

09:23  22  Q    And then right below that on line 353, we are now on

09:23  23  August 21st of 2017, and I see you wrote to the defendant,

09:23  24  "Anything?"  And then what did he reply?

09:23  25  A    "We are trying to expedite it."

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:23   1   Q   And what did you ask next?

09:23   2   A   "Thanks.  Are they at least responding?"

09:24   3   Q   And how did the defendant reply?

09:24   4   A   "Yes, Tom.  That has never been the problem."

09:24   5   Q   When you said they, who were you referring to?

09:24   6   A   L.A. County.

09:24   7   Q   And then lastly your text in response on line 357?

09:24   8   A   "Adding to the e-mail I have explained to the agent

09:24   9   multiple times that the trust cannot be finalized until the

09:24  10   County approves the terms."

09:24  11   Q   Where did you learn that information from that you

09:24  12   communicated to the agent?

09:24  13   A   Mr. Avenatti.

09:24  14   Q   All right.  Lastly on page 15, lines 364 through 365,

09:25  15   it looks like we are now on August 24th.  Can you please

09:25  16   read your text message to the defendant.

09:25  17   A   "Has the County given any updated ETA since the last

09:25  18   one two weeks ago?"

09:25  19   Q   And what is the defendant's response?

09:25  20   A   "I have checked back, and they have said they are

09:25  21   working on it as fast as they can."

09:25  22   Q   Who did you understand him to be referring to when he

09:25  23   said they?

09:25  24   A   L.A. County.

09:25  25            MR. WYMAN:  Thank you, Mr. Goeders.  No further

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

38

09:25   1   questions.

09:25   2          THE COURT:  Mr. Avenatti.

09:25   3                      RECROSS-EXAMINATION

09:25   4   BY MR. AVENATTI:

09:26   5   Q    Mr. Goeders, you have no idea whatsoever what is

09:26   6   involved in setting up a special-needs trust following a

09:26   7   settlement with a public entity; do you?

09:26   8          MR. WYMAN:  Objection.  Asked and answered.

09:26   9   Beyond the scope.

09:26   10         THE COURT:  Beyond the scope.  Sustained.

09:26   11  BY MR. AVENATTI:

09:26   12  Q    Sir, as you sit there today, you have no idea

09:26   13  whatsoever of whether any steps were being taken

09:26   14  contemporaneous with the text messages you were just asked

09:26   15  about to establish a special-needs trust for Mr. Johnson; do

09:26   16  you?

09:26   17  A    Can you repeat the question?

09:26   18  Q    Sure.  Do you have any idea one way or the other as to

09:26   19  whether any steps were being taken to establish a

09:26   20  special-needs trust for Mr. Johnson at the same time those

09:27   21  text messages were being exchanged?  Yes or no?

09:27   22  A    No.

09:27   23         MR. AVENATTI:  Nothing further.

09:27   24         THE COURT:  May the witness be excused?

09:27   25         MR. WYMAN:  Yes, Your Honor.

09:27  1          MR. AVENATTI:  Your Honor, we would ask him to

09:27  2   remain available for recall.

09:27  3          THE COURT:  Sir, you may be excused for now, but

09:27  4   you are on recall.  Thank you.

09:28  5          MR. SAGEL:  The government calls Judy Regnier,

09:28  6   Your Honor.

09:28  7          JUDY REGNIER, GOVERNMENT'S WITNESS, SWORN

09:28  8          THE CLERK:  If you will pull the microphone

09:28  9   towards you and state and spell your first and last name.

09:29  10         THE WITNESS:  Judy.  Last name is Regnier,

09:29  11  R-e-g-n-i-e-r.

09:29  12         THE CLERK:  Is your first name J-u-d-y?

09:29  13         THE WITNESS:  Yes.

09:29  14         THE CLERK:  Thank you.

09:29  15         THE COURT:  Ms. Regnier, could I ask you to take

09:29  16  your mask down.  We have a plastic shield if you would like

09:29  17  one.  Do you want one?

09:29  18         THE WITNESS:  No.  I will be okay.

09:29  19         THE COURT:  Okay.  Thank you.

09:29  20                       DIRECT EXAMINATION

09:29  21  BY MR. SAGEL:

09:29  22  Q    Good morning, Ms. Regnier.

09:29  23  A    Good morning.

09:29  24  Q    Where do you work?

09:29  25  A    I'm unemployed.

40

| | | |
|---|---|---|
| 09:29 | 1 | Q    When was the last time you worked? |
| 09:29 | 2 | A    March 25th, 2019. |
| 09:29 | 3 | Q    At that time who did you work for? |
| 09:29 | 4 | A    Eagan Avenatti. |
| 09:29 | 5 | Q    And who was your primary supervisor when you worked at |
| 09:29 | 6 | Eagan Avenatti? |
| 09:29 | 7 | A    Michael Avenatti. |
| 09:29 | 8 | Q    And how long as of March 25th, 2019, did you work for |
| 09:29 | 9 | Eagan Avenatti? |
| 09:29 | 10 | A    I believe it was 11 years, approximately 11 years. |
| 09:30 | 11 | Q    And I asked the question Eagan Avenatti.  The name |
| 09:30 | 12 | changed at one point; is that correct? |
| 09:30 | 13 | A    Yes, the name did change. |
| 09:30 | 14 | Q    But when you say 11 years, it's the two different names |
| 09:30 | 15 | at the firm? |
| 09:30 | 16 | A    Yes. |
| 09:30 | 17 | Q    What was your role or your title at the firm? |
| 09:30 | 18 | A    My title was paralegal, but I did a lot of office |
| 09:30 | 19 | management and other things like that, too. |
| 09:30 | 20 | Q    During the entire time that you were there, were you a |
| 09:30 | 21 | paralegal? |
| 09:30 | 22 | A    Yes. |
| 09:30 | 23 | Q    During the entire time you were there, were you also |
| 09:30 | 24 | doing the office managing responsibilities? |
| 09:30 | 25 | A    Pretty much, yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:30   1    Q    I will try and break this into two parts.  As it

09:30   2    related to your paralegal responsibilities, what were your

09:30   3    responsibilities at the firm work-related wise?

09:30   4    A    As a paralegal you're responsible for helping respond

09:30   5    to discovery, talking with clients, addressing various

09:31   6    documents, preparing filings for the court, preparing

09:31   7    exhibits for trial, attending trial, that type of thing.

09:31   8    Q    And as it related to your office managing

09:31   9    responsibilities, what kind of responsibilities did you have

09:31   10   there?

09:31   11   A    I was basically responsible for seeing that the

09:31   12   staff -- that we had proper staff, seeing that everybody had

09:31   13   the proper amount of work to do and the supplies, and

09:31   14   entering costs and fees and that type of thing into the

09:31   15   accounting system and kind of -- that's about it.

09:31   16   Q    Okay.  Let's start with one of the things you just

09:31   17   mentioned.  You said something about entering costs and

09:32   18   fees.  What do you mean by that?

09:32   19   A    If a cost is incurred, it was entered into QuickBooks.

09:32   20   It could be a cost either on a case or it could be just a

09:32   21   firm cost, like it could just be paper or it could be for an

09:32   22   expert.  And it was entered into the QuickBooks, and then it

09:32   23   was coded either to whatever account it needed to be

09:32   24   attributed to.

09:32   25   Q    Let me just back up.  I didn't ask this question.  Were

09:32  1    you familiar with the type of cases and work that Eagan

09:32  2    Avenatti was doing while you were working there?

09:32  3    A    I'm not sure I understand.  I mean, they're civil

09:32  4    cases, yes.

09:32  5    Q    Okay.  It was a civil law firm?

09:32  6    A    Yes, it was.

09:32  7    Q    Do you know what kind of cases?  Like, were they

09:32  8    representing plaintiffs or defendants or the types of cases?

09:32  9    A    Mainly plaintiff work, and there were some business

09:32  10   cases.  There were some more personal injury type cases.  It

09:32  11   kind of was spread out.

09:33  12   Q    In your roles and responsibilities at Eagan Avenatti,

09:33  13   did you have any responsibilities as it related to the

09:33  14   finances of the firm?

09:33  15   A    I was generally -- I had an assistant for a while, and

09:33  16   at other times I didn't.  So I was generally responsible for

09:33  17   cutting checks to make payments, for making deposits at the

09:33  18   bank and, you know, would kind of -- whatever else I needed

09:33  19   to -- what Michael asked me to do having to do with the

09:33  20   finances.

09:33  21   Q    You mentioned, for example, cutting checks.  Were you a

09:33  22   signatory on the Eagan Avenatti bank accounts?

09:33  23   A    On some of the accounts, yes.

09:33  24   Q    And we'll go over various bank accounts, but for the

09:33  25   accounts that you cut checks and deposited checks for, were

09:33  1   you signatories on those bank accounts?

09:34  2   A    Some of them, yes, not all of them that I deposited

09:34  3   checks in.

09:34  4   Q    Do you know an individual by the name of Geoffrey

09:34  5   Johnson?

09:34  6   A    He was a client of Eagan Avenatti.

09:34  7   Q    Have you ever met Geoffrey Johnson?

09:34  8   A    Not personally, no.

09:34  9   Q    Were you familiar -- you said he was a client of Eagan

09:34  10  Avenatti.  Were you familiar with the case?

09:34  11  A    Yes.  I worked on his case.

09:34  12  Q    And when you say you worked on his case, you were

09:34  13  familiar with who the other side of the case was?

09:34  14  A    Yes.

09:34  15  Q    And who was that?

09:34  16  A    The County of Los Angeles.

09:34  17  Q    And you mentioned case, singular.  Were there any other

09:34  18  cases at the office handled for Mr. Johnson?

09:34  19  A    No.  We only had -- I was only aware of one civil case

09:34  20  that we handled.

09:34  21  Q    As part of your responsibilities as kind of the office

09:34  22  manager, you described knowing the workloads of others.

09:34  23  Were you familiar with the cases that the firm was handling?

09:34  24  A    Yes.  As a general rule, yeah.

09:35  25  Q    If I could have -- are there any binders in front of

09:35  1   you?

09:35  2   A    No.

09:35  3   Q    Right behind you is probably Volume 1, Exhibit 21.

09:35  4        MR. SAGEL:  Exhibit 21 is in evidence, Your Honor.

09:35  5   If I could publish 21.

09:35  6   BY MR. SAGEL:

09:35  7   Q    If I could have you focus on the bottom e-mail from

09:35  8   Mr. Avenatti.  You were cc'd on this e-mail; is that

09:35  9   correct?

09:35  10  A    Yes.

09:35  11  Q    Can you read what Mr. Avenatti wrote to Mr. Colorado,

09:35  12  Mr. Sims, and yourself?

09:35  13  A    Yes.  "Jim, please note that all contact with Geoff or

09:36  14  the family regarding the mediation settlement, et cetera,

09:36  15  will be handled by Judy or me.  This is important for a host

09:36  16  of reasons.  Thanks.  Michael."

09:36  17  Q    Do you know why all contact should be with you or

09:36  18  Mr. Avenatti?

09:36  19  A    It's what Michael requested.  And a lot of times

09:36  20  towards the end of the case, Michael would be the only one

09:36  21  having contact with the client.

09:36  22  Q    And how do you know that?

09:36  23  A    From experience working in the office.

09:36  24  Q    And this is dated October 22nd, 2014; is that correct?

09:36  25  A    Yes.

09:36  1   Q    And you see in the e-mail it's talking about mediation

09:36  2   and settlement; is that fair to say?

09:36  3   A    Yes.

09:36  4   Q    Was it your understanding in and around this time, in

09:36  5   the end of 2014, that Mr. Johnson's case was moving towards

09:36  6   mediation or settlement?

09:36  7   A    I believe it was going towards mediation.

09:37  8   Q    If I could have you look at Exhibit 27.

09:37  9   A    (Witness complies.)

09:37  10  Q    Do you see Exhibit 27?

09:37  11  A    Yes.

09:37  12  Q    Is this an e-mail correspondence between you and

09:37  13  Michael Avenatti?

09:37  14  A    Yes.

09:37  15  Q    Is it a fair and accurate copy of an e-mail

09:37  16  correspondence between you and the defendant?

09:37  17  A    Yes.

09:37  18       MR. SAGEL:  Your Honor at this time, the

09:37  19  government moves to admit Exhibit 27.

09:37  20       MR. AVENATTI:  Your Honor, hearsay.  Lacks

09:37  21  foundation, 403.  And severance.

09:37  22       THE COURT:  I don't understand the last point.

09:37  23       MR. AVENATTI:  The severance issue that Your Honor

09:37  24  has previously ruled on.

09:37  25       THE COURT:  Oh, all right.

09:38   1               MR. SAGEL:  I'm not going to ask any questions

09:38   2   about that one line, Your Honor.

09:38   3               THE COURT:  It will be received subject to

09:38   4   redaction.

09:38   5               MR. SAGEL:  Thank you, Your Honor.

09:38   6               (Exhibit 27 received in evidence)

09:38   7               MR. SAGEL:  If we can pull up Exhibit 27.

09:38   8               THE COURT:  Well, I don't want to show that line.

09:38   9               MR. SAGEL:  I won't.  I'll make sure that we're

09:38  10   only showing the top part.

09:38  11               If you can pull up the top part of Exhibit 27.

09:38  12   BY MR. SAGEL:

09:38  13   Q    Ms. Regnier, when did you send this e-mail to the

09:38  14   defendant?

09:38  15   A    November 22nd, 2014.

09:38  16   Q    And what is the subject line of the e-mail?

09:38  17   A    Finances.

09:38  18   Q    Could you please read the first part, the first

09:38  19   sentence of the e-mail that you sent to Mr. Avenatti.

09:39  20   A    "Michael, sorry this took so long to get to you.

09:39  21   Forgot how much time it takes to go through stuff.  Anyway,

09:39  22   here is the quick snapshot of where we are at today and what

09:39  23   I know is due next week."

09:39  24   Q    And then the next section, if we can focus on the next

09:39  25   section, what is the kind of title of that next section?

| 09:39 | 1 | A    The balances are. |

09:39   1   A    The balances are.

09:39   2   Q    And in those -- generally speaking, why are you

09:39   3   providing him the balances there?

09:39   4   A    It's just a snapshot of where we are financially at

09:39   5   that time, that morning.

09:39   6   Q    So as of November 22nd, 2014, you're telling him how

09:39   7   much are in the three accounts that you list here?

09:39   8   A    Yes.

09:39   9        MR. AVENATTI:  Objection, Your Honor.  Court's

09:39  10   prior ruling.  The motion in-limine, Your Honor.

09:40  11        MR. SAGEL:  It's the debts of the law firm at the

09:40  12   time of the case.

09:40  13        MR. AVENATTI:  Your Honor, I would ask for a

09:40  14   sidebar on this issue.  I don't want to have this

09:40  15   discussion.

09:40  16        THE COURT:  Proceed.  The objection is overruled.

09:40  17   BY MR. SAGEL:

09:40  18   Q    At this time, Ms. Regnier --

09:40  19        MR. SAGEL:  I'm sorry, Your Honor.  Could I have

09:40  20   the last question read back?

09:40  21        THE COURT:  Yes.

09:40  22        (Record read)

09:40  23   BY MR. SAGEL:

09:41  24   Q    And how much is in the EA operating account on this

09:41  25   date?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:41  1    A    $41,427.43.

09:41  2    Q    How much is in the EA money market account?

09:41  3    A    $1,294.38.

09:41  4    Q    And how much is in the AA operating account?

09:41  5    A    $42.50.

09:41  6    Q    And when it references EA both times, what does EA

09:41  7    stand for?

09:41  8    A    Eagan Avenatti.

09:41  9    Q    And when it references AA, what does AA stand for?

09:41  10   A    Avenatti and Associates.

09:41  11   Q    And to your understanding what was Avenatti and

09:41  12   Associates?

09:41  13   A    To my understanding it was Michael's own firm.

09:41  14   Q    Is it fair to say that based on what you are providing

09:41  15   here, that between the three banks accounts there is

09:41  16   approximately $43,000?

09:41  17             MR. AVENATTI:  Leading.

09:42  18             THE COURT:  Overruled.

09:42  19             THE WITNESS:  Yes.

09:42  20   BY MR. SAGEL:

09:42  21   Q    And then right under that you say:  "AT&T will pay

09:42  22   $50,300 on November 28th.  This will not hit our bank

09:42  23   account until Monday, 12/1"; is that correct?

09:42  24   A    Yes.

09:42  25   Q    So at least as of -- why are you telling Mr. Avenatti

09:42  1  that?

09:42  2  A    I provided Michael with a snapshot of finances every

09:42  3  day.

09:42  4  Q    And you wanted him to know what would be available?

09:42  5  A    Yes, what's available.

09:42  6  Q    And then the next section is titled "Highlights of what

09:42  7  I know is due next week?"

09:42  8  A    Yes.

09:42  9  Q    What's the first thing you list?  Can you read the

09:42  10  first line under "highlights of what I know is due next

09:43  11  week."

09:43  12  A    "Payroll.  Not sure of exact amount as it will be first

09:43  13  time with Andrew on the payroll, but will be approximately

09:43  14  112,000."

09:43  15  Q    The payroll that is due next week, is that more than

09:43  16  what is available in the accounts?

09:43  17  A    Yes.

09:43  18  Q    I'm not going to put it on the screen, but do you see a

09:43  19  line towards the bottom that starts with "sorry?"

09:43  20  A    Yeah.

09:43  21  Q    Can you read the line that says, "sorry."

09:43  22  A    "Sorry.  I really hate sending this to you on vacation

09:43  23  but just want to make sure you know what's up."

09:43  24  Q    Why would you say to the defendant, "Sorry to send this

09:44  25  to you on vacation," on November 22nd?

09:44  1   A    Because I knew Michael was on vacation, and I generally

09:44  2   didn't like to interrupt people's vacations with things that

09:44  3   weren't going to be pleasant to deal with or to take them

09:44  4   away from their vacation time.

09:44  5   Q    If he was busy prepping for trial, would you have said

09:44  6   that?

09:44  7             MR. AVENATTI:  Objection, Your Honor.  Relevance.

09:44  8             THE COURT:  Overruled.

09:44  9             THE WITNESS:  I wouldn't have said to interrupt

09:44  10  you while you're on vacation, but I would have said, you

09:44  11  know, to bother you while you're in trial.  Yes.

09:44  12  BY MR. SAGEL:

09:44  13  Q    But you said vacation here?

09:44  14  A    Yes.

09:44  15  Q    Did you learn that Mr. Johnson's case settled?

09:44  16  A    Yes.

09:44  17  Q    How did you learn Mr. Johnson's case settled?

09:44  18  A    From Michael.

09:44  19  Q    Did he tell you the terms of the settlement or the

09:44  20  amount of the settlement?

09:44  21  A    I'm sure he did at some point.  I don't remember

09:45  22  exactly when.

09:45  23  Q    Do you remember how much the settlement was for

09:45  24  Mr. Johnson at that time?

09:45  25  A    Four million.

09:45 1   Q    If I could have you look at Exhibit 41, which I believe

09:45 2   is in evidence.

09:45 3             MR. SAGEL:  I'm sorry, 41 is not in evidence.

09:45 4             MR. AVENATTI:  Your Honor, this is one of the

09:45 5   issues that was raised in the filing.  Objection.  Hearsay.

09:45 6   And the objection is in the filing.

09:45 7             THE COURT:  Just a minute.

09:45 8             (Pause in proceedings)

09:45 9   BY MR. SAGEL:

09:45 10  Q    Ms. Regnier, if you could turn to page 2 of the

09:45 11  exhibit.

09:45 12            THE COURT:  It hasn't been offered yet.  We will

09:45 13  get to the objection when it's offered, if it is offered.

09:45 14  BY MR. SAGEL:

09:45 15  Q    Do you recognize the handwriting on page 2?

09:45 16  A    Yes.

09:45 17  Q    Whose handwriting is that?

09:45 18  A    That's mine.

09:45 19  Q    And you recognize this as a deposit slip?

09:46 20  A    Yes.

09:46 21            MR. SAGEL:  Your Honor, at this time the

09:46 22  government moves Exhibit 41 both under 902(11) and

09:46 23  foundation laid by the witness.

09:46 24            MR. AVENATTI:  Your Honor, objection.  Same

09:46 25  objection stated in the filing 596.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:46    1            THE COURT:  I find that the custodian of records
09:46    2   declaration at Exhibit 394 is sufficient to authenticate the
09:46    3   document and to establish the elements of the business
09:46    4   records exception.  Forty-one will be received.
09:46    5            (Exhibit 41 received in evidence)
09:46    6            MR. SAGEL:  Thank you.
09:46    7            And if we could publish the second page first,
09:46    8   just the top half.
09:46    9   BY MR. SAGEL:
09:46   10   Q    Ms. Regnier, is this a deposit slip that you filled
09:46   11   out?
09:46   12   A    Yes.
09:47   13   Q    What's the date of this deposit slip?
09:47   14   A    January 29th, 2015.
09:47   15   Q    And what's the amount?
09:47   16   A    400,000.
09:47   17   Q    Can you check the number of zeros there?
09:47   18   A    Oh, four million.  Sorry.
09:47   19   Q    And if you could look at the first page, do you see the
09:47   20   check on the first page?
09:47   21   A    Yes.
09:47   22   Q    Is that the check that you were depositing here?
09:47   23   A    Yes.
09:47   24   Q    Do you know what this check on January 29th that you
09:47   25   are depositing is?
```

09:47  1   A    This would have been the settlement funds for Geoffrey

09:47  2   Johnson.

09:47  3   Q    Do you know whether or not at the time you saw this

09:47  4   settlement -- at the time the case settled, did you see the

09:47  5   settlement agreement for Mr. Johnson?

09:47  6   A    I have seen it.  I'm not exactly sure when I saw it.

09:48  7   Q    As part of your roles at the firm, did you typically

09:48  8   look at settlement agreements at the time they were settled?

09:48  9   A    Yeah, generally either I would or Catherine that worked

09:48  10  in the office would.  A lot of times if it was a mediation,

09:48  11  we would be kind of typing them up while they were at the

09:48  12  mediation.

09:48  13  Q    I do not know the binder number, but if I could have

09:48  14  you look at Volume 7 behind you.

09:48  15          MR. SAGEL:  Your Honor, at this point the

09:48  16  government is going to want to admit Exhibit 391, with the

09:48  17  records custodian at 394, on page 2.

09:49  18          MR. AVENATTI:  Your Honor, same objection stated

09:49  19  at docket 596.  Hearsay.  It does not qualify as a business

09:49  20  record.

09:49  21          THE COURT:  The objection is overruled.  I have

09:49  22  indicated that a custodian declaration at 394 is sufficient.

09:49  23          MR. AVENATTI:  I will also, Your Honor, lodge an

09:49  24  objection based on relevance and 403.  This exhibit contains

09:49  25  a number of pages that are entirely irrelevant.

09:49  1                    MR. SAGEL:  At this time, Your Honor, the

09:49  2      government only needs to admit page 1 and page 7.

09:49  3                    THE COURT:  Pages 1 and 7 will be received.

09:50  4                    (Exhibit 391, pages 1, 7, received in evidence)

09:50  5                    MR. SAGEL:  If we could publish page 1 of

09:50  6      Exhibit 391.

09:50  7      BY MR. SAGEL:

09:50  8      Q    Let's start with the top.  What's the name of the

09:50  9      account?

09:50  10     A    State Bar of California, Eagan Avenatti, LLP,

09:50  11     attorney/client trust fund.

09:50  12     Q    Based your work at Eagan Avenatti, did you have an

09:50  13     understanding of what an attorney/client trust fund was or

09:50  14     trust account was?

09:50  15     A    That's an account you would deposit client monies into

09:50  16     before distribution.

09:50  17     Q    When you say deposit client monies, what monies do you

09:50  18     mean?

09:50  19     A    Settlements or awards or things of that nature.

09:50  20     Q    When you say before distribution, what do you mean by

09:50  21     before distribution?

09:50  22     A    After the funds are received in there, then they would

09:51  23     be distributed based upon whether they went to the client,

09:51  24     whether they went to the firm, whether they went for costs.

09:51  25                    MR. SAGEL:  If we could blow up the deposits and

09:51  1    charges section.

09:51  2    BY MR. SAGEL:

09:51  3    Q    It's not on the screen, but if you can look on your

09:51  4    document, there is a part that says the previous balance of

09:51  5    this account before this deposit.  What's the previous

09:51  6    balance?

09:51  7    A    Zero.

09:51  8    Q    And then do you see a deposit on January 29th?

09:51  9    A    Yes.

09:51  10   Q    How much is that deposit for?

09:51  11   A    Four million.

09:51  12   Q    Is that the January 29th deposit that we just went over

09:51  13   on Exhibit 41?

09:51  14   A    Yes.

09:51  15   Q    If you could look slightly below on January 30th, do

09:52  16   you see a withdrawal or a charge or debit?

09:52  17   A    Yes.

09:52  18   Q    On January 30th how much is the withdrawal from this

09:52  19   attorney/client trust fund?

09:52  20   A    1.6 million.

09:52  21   Q    What was your understanding of why $1.6 million was

09:52  22   withdrawn from this account?

09:52  23   A    That was probably the attorneys' fees portion of the

09:52  24   settlement.

09:52  25   Q    I didn't tell you you were going to have to do math, so

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:52  1    that's unfair, but do you know what percentage $1.6 million

09:52  2    is of $4 million?

09:52  3    A    Approximately 40 percent.

09:52  4    Q    It says here next to the $1.6 million, it says online

09:53  5    xper to Eagan Avenatti.  Do you know what online xper means?

09:53  6    A    Online transfer.

09:53  7    Q    Do you know where this $1.6 million was being

09:53  8    transferred to?

09:53  9    A    It went to another Eagan Avenatti account.  Just by

09:53  10   looking here, I don't remember the name on the account, but

09:53  11   it was an Eagan Avenatti.

09:53  12   Q    Based on your understanding, when you would transfer

09:53  13   money from an attorney/client trust account or to another

09:53  14   Eagan Avenatti account or another account, why would you do

09:53  15   that?

09:53  16              MR. AVENATTI:  Lacks foundation, Your Honor.

09:53  17              THE COURT:  Overruled.

09:53  18              THE WITNESS:  Michael would provide instructions

09:53  19   as to where to transfer the money.

09:53  20   BY MR. SAGEL:

09:53  21   Q    If I could have you look at Exhibit 44, please.  I'm

09:53  22   sorry.  It's back in binder one.

09:54  23   A    (Witness complies.)  Okay.

09:54  24   Q    Do you recognize Exhibit 44 as an e-mail that you sent

09:54  25   to Mr. Avenatti?

57

09:54  1    A    Yes.

09:54  2    Q    Is it a fair and accurate copy of an e-mail and

09:54  3    attachment that you sent to Mr. Avenatti?

09:54  4    A    Yes.

09:54  5          MR. SAGEL:  At this time, Your Honor, the

09:54  6    government moves Exhibit 44 into evidence.

09:54  7          MR. AVENATTI:  Your Honor, motion in-limine ruling

09:54  8    and hearsay.

09:54  9          THE COURT:  Overruled.  Forty-four will be

09:54 10    received.

09:54 11          (Exhibit 44 received in evidence)

09:54 12    BY MR. SAGEL:

09:54 13    Q    If we can pull up the top part, what's the date of this

09:54 14    e-mail?

09:54 15    A    January 30th, 2015.

09:54 16    Q    And what's the subject line?

09:55 17    A    Wire's at work.

09:55 18    Q    And is there a second page to this?

09:55 19    A    Yes.

09:55 20    Q    Why are you providing an e-mail with an attachment

09:55 21    saying wire's at work to Mr. Avenatti?

09:55 22    A    Michael would have asked me to send wires out, and I

09:55 23    would send him confirmation that they all went out.

09:55 24    Q    If you could look at the second page, are these the

09:55 25    confirmations of the wires that he asked you to send?

| | | |
|---|---|---|
| 09:55 | 1 | MR. AVENATTI:  Same objections, Your Honor. |
| 09:55 | 2 | THE COURT:  Overruled. |
| 09:55 | 3 | THE WITNESS:  Yes. |
| 09:55 | 4 | BY MR. SAGEL: |
| 09:55 | 5 | Q    The first line shows that there is a wire on |
| 09:55 | 6 | January 30th to a Christine Carlin.  Do you see that? |
| 09:55 | 7 | A    Yes. |
| 09:55 | 8 | Q    Do you know who Christine Carlin is? |
| 09:55 | 9 | A    Yes.  That's Michael's ex-wife. |
| 09:55 | 10 | Q    How much is Mr. Avenatti having you wire to Ms. Carlin? |
| 09:55 | 11 | MR. AVENATTI:  Same objections, Your Honor. |
| 09:55 | 12 | THE COURT:  Overruled. |
| 09:56 | 13 | THE WITNESS:  $26,500. |
| 09:56 | 14 | BY MR. SAGEL: |
| 09:56 | 15 | Q    About the fifth line down, on January 30th there is a |
| 09:56 | 16 | wire to GB Autosport, LLC.  Do you see that? |
| 09:56 | 17 | A    Yes. |
| 09:56 | 18 | MR. AVENATTI:  Your Honor, can I have a standing |
| 09:56 | 19 | objection to this line of questioning? |
| 09:56 | 20 | THE COURT:  Yes. |
| 09:56 | 21 | BY MR. SAGEL: |
| 09:56 | 22 | Q    Do you see this wire on January 30th, 2015, to GB |
| 09:56 | 23 | Autosport? |
| 09:56 | 24 | A    Yes. |
| 09:56 | 25 | Q    How much is being wired to GB Autosport? |

| | | |
|---|---|---|
| 09:56 | 1 | A    60,000. |
| 09:56 | 2 | Q    Do you know what GB Autosport, LLC, is? |
| 09:56 | 3 | A    Yes.  It was Michael's -- |
| 09:56 | 4 |           THE COURT:  Just a minute. |
| 09:56 | 5 |           Is there an objection? |
| 09:56 | 6 |           MR. AVENATTI:  Yes, Your Honor.  It's the same |
| 09:56 | 7 | objection that's been lodged. |
| 09:56 | 8 |           THE COURT:  Sustained. |
| 09:56 | 9 |           MR. AVENATTI:  To this entire line of questioning. |
| 09:56 | 10 |           THE COURT:  Sir, make the objections as we go. |
| 09:56 | 11 |           MR. AVENATTI:  Thank you. |
| 09:56 | 12 | BY MR. SAGEL: |
| 09:57 | 13 | Q    If you could look at Exhibit 43. |
| 09:57 | 14 | A    (Witness complies.) |
| 09:57 | 15 | Q    Do you see Exhibit 43? |
| 09:57 | 16 | A    Yes. |
| 09:57 | 17 | Q    Is Exhibit 43 an e-mail that you sent to Mr. Avenatti? |
| 09:57 | 18 | A    Yes. |
| 09:57 | 19 | Q    Also on January 30th, 2015? |
| 09:57 | 20 | A    Yes. |
| 09:57 | 21 | Q    Is it a fair and accurate copy of an e-mail you sent to |
| 09:57 | 22 | Mr. Avenatti on January 30th, 2015? |
| 09:57 | 23 | A    Yes. |
| 09:57 | 24 |           MR. SAGEL:  At this time, Your Honor, the |
| 09:57 | 25 | government moves to admit Exhibit 43. |

09:57  1              MR. AVENATTI:  Same objection, Your Honor.

09:57  2              THE COURT:  State the objection.

09:57  3              MR. AVENATTI:  Hearsay.  Court's prior motion

09:57  4    in-limine ruling.

09:57  5              THE COURT:  Overruled.  Forty-three will be

09:57  6    received.

09:57  7              (Exhibit 43 received in evidence)

09:57  8              MR. AVENATTI:  And 403.

09:57  9              THE COURT:  It will be received.

09:57  10   BY MR. SAGEL:

09:57  11   Q    Why were you sending Mr. Avenatti an e-mail with the

09:57  12   subject line wire?

09:57  13   A    It was another wire confirmation I'm sending him.

09:58  14   Q    And how much is this wire that you sent?

09:58  15   A    250,000.

09:58  16   Q    And who is the wire to?

09:58  17   A    Global Baristas US, LLC.

09:58  18   Q    Based on your work -- let's start with this.  Did you

09:58  19   ever work for Global Baristas US, LLC?

09:58  20   A    I never worked for them.  Michael asked me to do some

09:58  21   things for them and I did that, but I did not work for

09:58  22   Global Baristas.

09:58  23   Q    Do you know what Global Baristas US, LLC, is?

09:58  24   A    It's part of -- it's the owner of Tully's Coffee

09:58  25   stores, I believe.

| | | |
|---|---|---|
| 09:58 | 1 | Q    Based on your understanding, what was your |
| 09:58 | 2 | understanding of what defendant had to do with Global |
| 09:58 | 3 | Baristas US, LLC? |
| 09:58 | 4 | MR. AVENATTI:  Objection.  Relevance.  Court's |
| 09:58 | 5 | prior motion in-limine ruling, 403. |
| 09:58 | 6 | THE COURT:  Overruled. |
| 09:58 | 7 | THE WITNESS:  Michael was the owner. |
| 09:58 | 8 | BY MR. SAGEL: |
| 09:59 | 9 | Q    This was his company? |
| 09:59 | 10 | A    It was his company, yes. |
| 09:59 | 11 | Q    And why would you send $250,000 to Global Baristas US, |
| 09:59 | 12 | LLC? |
| 09:59 | 13 | A    I would have done that on Michael's instructions. |
| 09:59 | 14 | Q    Could you look at Exhibit 46, please. |
| 09:59 | 15 | A    (Witness complies.) |
| 09:59 | 16 | Q    Do you see Exhibit 46? |
| 09:59 | 17 | A    Yes. |
| 09:59 | 18 | Q    Is this an e-mail with an attachment that you sent to |
| 09:59 | 19 | the defendant? |
| 09:59 | 20 | A    Yes. |
| 09:59 | 21 | Q    Is it a fair and accurate copy of an e-mail and |
| 09:59 | 22 | attachment that you sent to Mr. Avenatti? |
| 09:59 | 23 | A    Yes. |
| 09:59 | 24 | MR. SAGEL:  At this time, Your Honor, the |
| 09:59 | 25 | government would move to admit Exhibit 46. |

62

| | | |
|---|---|---|
| 09:59 | 1 | MR. AVENATTI:  No objection. |
| 10:00 | 2 | THE COURT:  Forty-six will be received. |
| 10:00 | 3 | (Exhibit 46 received in evidence) |
| 10:00 | 4 | BY MR. SAGEL: |
| 10:00 | 5 | Q   Do you see the subject line of this e-mail? |
| 10:00 | 6 | A   Yes. |
| 10:00 | 7 | Q   What is the subject line? |
| 10:00 | 8 | A   Johnson fee agreement. |
| 10:00 | 9 | Q   And what is the date that you sent this e-mail to |
| 10:00 | 10 | Mr. Avenatti? |
| 10:00 | 11 | A   February 3rd, 2015. |
| 10:00 | 12 | Q   So this is about five days after you deposited the |
| 10:00 | 13 | check, is that correct, the $4 million check? |
| 10:00 | 14 | A   Yes. |
| 10:00 | 15 | Q   Why were you sending the Johnson fee agreement to the |
| 10:00 | 16 | defendant on February 3rd -- if you remember, why were you |
| 10:00 | 17 | sending the Johnson fee agreement on February 3rd, 2015, to |
| 10:00 | 18 | the defendant? |
| 10:00 | 19 | A   Michael would have asked for a copy, so I sent it to |
| 10:00 | 20 | him. |
| 10:00 | 21 | Q   And if you could look at page 2 real quickly, and if |
| 10:00 | 22 | you look at the part that says legal fees, costs and billing |
| 10:00 | 23 | practices.  Do you see that section? |
| 10:01 | 24 | A   Yes. |
| 10:01 | 25 | Q   It says, "Attorney will receive a contingent fee of |

| | | |
|---|---|---|
| 10:01 | 1 | 40 percent of any recovery."  Do you see that? |
| 10:01 | 2 | A    Yes. |
| 10:01 | 3 | Q    Based on your work at Eagan Avenatti, did you |
| 10:01 | 4 | understand what a contingent fee was? |
| 10:01 | 5 | A    Yes. |
| 10:01 | 6 | Q    In general what was that? |
| 10:01 | 7 | A    Basically a contingency case would be a case where the |
| 10:01 | 8 | firm advances all the costs of the plaintiff, and at the |
| 10:01 | 9 | time of settlement the firm is entitled to a percentage of |
| 10:01 | 10 | the settlement as agreed upon in the agreement and |
| 10:01 | 11 | reimbursed for fees and costs. |
| 10:01 | 12 | Q    And here the percentage is 40 percent; is that correct? |
| 10:01 | 13 | A    Yes. |
| 10:01 | 14 | Q    And that's consistent with what you have described the |
| 10:01 | 15 | $1.6 million to be? |
| 10:01 | 16 | A    Yes. |
| 10:01 | 17 | Q    And then there's a section -- I'm not going to go over |
| 10:01 | 18 | the whole section, but paragraph six on page 3 has a section |
| 10:01 | 19 | called "costs, disbursements, and expenses"; is that |
| 10:02 | 20 | correct? |
| 10:02 | 21 | A    Yes. |
| 10:02 | 22 | Q    And you talked about earlier that one of your |
| 10:02 | 23 | responsibilities at the firm was keeping track of costs and |
| 10:02 | 24 | fees, if I'm saying that correctly; is that right? |
| 10:02 | 25 | A    Yes. |

64

10:02   1    Q    Is your keeping track of costs and fees, is that
10:02   2    related to being able to determine how much a client gets
10:02   3    after the settlement?
10:02   4    A    Yes.  It's so that we can show -- so that it can be
10:02   5    shown what was expended on the case during the course of the
10:02   6    case so the firm can be reimbursed at the end.
10:02   7    Q    How did you know what costs and fees to keep track of?
10:02   8    A    We kept track of all our costs and fees.
10:02   9    Q    When you say we, who are you referring to as we?
10:02   10   A    I would do the entering.  I had an assistant for a
10:02   11   while that did some entering.  All the paralegals,
10:03   12   secretaries, attorneys would save their receipts or the
10:03   13   attorney clock slips, that type of thing, and give them to
10:03   14   me so that they could be entered into the system.
10:03   15   Q    When you entered the costs and the fees and the
10:03   16   receipts into the system, did you ever go over these costs
10:03   17   and receipts with the defendant?
10:03   18   A    We would go over them when we were getting near the end
10:03   19   of the case that looked like a potential settlement in the
10:03   20   case.  A draft would be run and then we could look at what
10:03   21   they were, or before they went to a mediation or something
10:03   22   like that.
10:03   23   Q    Did you understand why you would do it sometimes before
10:03   24   a case is going to mediation or settlement?
10:03   25   A    Because before they settle a case, the client is going

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:03 | 1 | to want to know approximately what they're going to get out |
| 10:03 | 2 | of it, so the attorneys need to have some idea of where |
| 10:03 | 3 | they're at. |
| 10:04 | 4 | Q    If I could have you look at Exhibit 48. |
| 10:04 | 5 | A    (Witness complies.) |
| 10:04 | 6 | Q    Do you see Exhibit 48? |
| 10:04 | 7 | A    Yes. |
| 10:04 | 8 | Q    Is this an e-mail that you sent to defendant on |
| 10:04 | 9 | February 4th, 2015? |
| 10:04 | 10 | A    Yes. |
| 10:04 | 11 | Q    Is it a fair and accurate e-mail -- and there is an |
| 10:04 | 12 | attachment with it as well; is that correct? |
| 10:04 | 13 | A    Yes, there is. |
| 10:04 | 14 | Q    Is it a fair and accurate e-mail and attachment that |
| 10:04 | 15 | you sent to the defendant on February 4th, 2015? |
| 10:04 | 16 | A    Yes. |
| 10:04 | 17 |         MR. SAGEL:  At this time, Your Honor, the |
| 10:04 | 18 | government moves to admit Exhibit 48. |
| 10:04 | 19 |         MR. AVENATTI:  No objection. |
| 10:04 | 20 |         THE COURT:  Forty-eight will be received. |
| 10:04 | 21 |         (Exhibit 48 received in evidence) |
| 10:04 | 22 |         MR. SAGEL:  If I can publish the top of the first |
| 10:04 | 23 | page. |
| 10:04 | 24 | BY MR. SAGEL: |
| 10:04 | 25 | Q    Ms. Regnier, what's the subject of the e-mail to the |

| | | |
|---|---|---|
| 10:04 | 1 | defendant? |
| 10:04 | 2 | A    Updated Johnson cost bill. |
| 10:05 | 3 | Q    So this is February 4th, again approximately a week, |
| 10:05 | 4 | little less than a week after the check was deposited; is |
| 10:05 | 5 | that correct? |
| 10:05 | 6 | A    Yes. |
| 10:05 | 7 | Q    Why are you sending the defendant an updated Johnson |
| 10:05 | 8 | cost bill approximately a week after the check came in? |
| 10:05 | 9 | A    Michael would have requested it. |
| 10:05 | 10 | MR. AVENATTI:  Objection.  Speculation, Your |
| 10:05 | 11 | Honor. |
| 10:05 | 12 | THE COURT:  Overruled. |
| 10:05 | 13 | BY MR. SAGEL: |
| 10:05 | 14 | Q    And there is an attachment; is that correct? |
| 10:05 | 15 | A    Yes. |
| 10:05 | 16 | Q    What is the attachment referred to? |
| 10:05 | 17 | A    It's a draft printout of all the costs and expenses for |
| 10:05 | 18 | the case. |
| 10:05 | 19 | Q    So if we can turn to page 2 -- and we'll just keep the |
| 10:05 | 20 | whole document on the screen for now -- what is the big word |
| 10:05 | 21 | that's across the page on page 2? |
| 10:05 | 22 | A    "Draft." |
| 10:05 | 23 | Q    Yes.  Why is the word "Draft" across that page? |
| 10:05 | 24 | A    Because this is a draft statement.  We print these out |
| 10:06 | 25 | and go over them and make sure there has been no duplication |

10:06   1    and everything was included, because a lot of times when a

10:06   2    mediation is finished, there was still additional costs that

10:06   3    would come in a couple of days after that, after the

10:06   4    mediation.

10:06   5    Q    So one thing that you do when you have it as a draft is

10:06   6    to make sure there's no additional costs that need to be

10:06   7    added; is that fair?

10:06   8    A    Yes.

10:06   9    Q    Is there any work to be done to make sure that these

10:06   10   are accurate cost bills?

10:06   11   A    Yes.  That's why they're reviewed.

10:06   12   Q    And who reviews them?

10:06   13   A    Michael would usually go over them.  Michael and I

10:06   14   would go over them together sometimes.  I would check with

10:06   15   all the attorneys that had been working on the case and make

10:06   16   sure they have turned in everything they had.

10:06   17   Q    In your responsibilities at Eagan Avenatti, did you

10:07   18   ever work on client accountings?

10:07   19   A    Yes.

10:07   20   Q    What is a client accounting?

10:07   21   A    It's basically a document that sets forth the amount of

10:07   22   the settlement less than the amount of attorneys' fees, less

10:07   23   the amount of the costs and advances, and then the total

10:07   24   amount due to the client.  And attached to that would be a

10:07   25   final bill showing what the expenses actually were.

68

| | | |
|---|---|---|
| 10:07 | 1 | Q    And did you do client accountings yourself, putting |
| 10:07 | 2 | together the documents? |
| 10:07 | 3 | A    Generally. |
| 10:07 | 4 | Q    Okay.  After you completed a client accounting, putting |
| 10:07 | 5 | all the information you just described together, where would |
| 10:07 | 6 | you provide that to or who would you provide that to? |
| 10:07 | 7 | A    It depended on the case.  Sometimes I would give it to |
| 10:07 | 8 | Michael and he would send it to the client.  Other times he |
| 10:07 | 9 | would have me send it to the client and copy him. |
| 10:07 | 10 | Q    And I will come back to that.  If you could look at |
| 10:08 | 11 | page 8 of this draft cost bill for Mr. Johnson.  Do you see |
| 10:08 | 12 | that? |
| 10:08 | 13 | A    Yes. |
| 10:08 | 14 | Q    There is a total number there.  Do you see that? |
| 10:08 | 15 | A    Yes. |
| 10:08 | 16 | Q    What is the total number listed for Mr. Johnson? |
| 10:08 | 17 | A    $736,883.89. |
| 10:08 | 18 | Q    And then right above that number there is a part that |
| 10:08 | 19 | says total advances.  Do you see that? |
| 10:08 | 20 | A    Yes. |
| 10:08 | 21 | Q    And what's the number for total advances? |
| 10:08 | 22 | A    $352,866.88. |
| 10:08 | 23 | Q    And if I have you look at page 4, there is a total |
| 10:09 | 24 | expenses number; is that correct? |
| 10:09 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

69

| | | |
|---|---|---|
| 10:09 | 1 | Q   And what's the total expenses? |
| 10:09 | 2 | A   $386,893.38. |
| 10:09 | 3 | Q   So if you were to look at page 1 through -- I'm sorry, |
| 10:09 | 4 | page 2 through 4, those list all the expenses of the firm; |
| 10:09 | 5 | is that correct? |
| 10:09 | 6 | A   Yes. |
| 10:09 | 7 | Q   And then page 4 through 8 are all the advances by the |
| 10:09 | 8 | firm; is that correct? |
| 10:09 | 9 | A   Yes. |
| 10:09 | 10 | Q   And when you add them all together, you get to the |
| 10:09 | 11 | $736,883.89 number? |
| 10:09 | 12 | A   Correct. |
| 10:10 | 13 | Q   Assuming this document is correct, assuming that the |
| 10:10 | 14 | advances and the expenses in this are correct, what would |
| 10:10 | 15 | you do with that number? |
| 10:10 | 16 | A   That number -- I mean, it would have been entered into |
| 10:10 | 17 | the client accounting. |
| 10:10 | 18 | Q   And when you say entered into the client accounting, |
| 10:10 | 19 | why would that be done? |
| 10:10 | 20 | A   It would be to show the client the amount of the |
| 10:10 | 21 | expenses and cost advances that were being deducted from his |
| 10:10 | 22 | settlement for reimbursement to the firm. |
| 10:10 | 23 | Q   If I could have you look at page 2 of the expenses. |
| 10:10 | 24 | A   Yes. |
| 10:10 | 25 | Q   Between April 30th and about November 1st, 2012, there |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:11 | 1 | are about 13 or 14 expenses for CareMeridian.  Do you see |
| 10:11 | 2 | that? |
| 10:11 | 3 | A    Yes. |
| 10:11 | 4 | Q    And they range between about 14 and a half thousand |
| 10:11 | 5 | dollars to about $18,000.  Do you see that? |
| 10:11 | 6 | A    Yes. |
| 10:11 | 7 | Q    And many of them are for $16,695? |
| 10:11 | 8 | A    Yes. |
| 10:11 | 9 | Q    Do you know what CareMeridian was? |
| 10:11 | 10 | A    It was the care facility that Geoff Johnson was |
| 10:11 | 11 | transferred to when he was released. |
| 10:11 | 12 | Q    I will come back to this exhibit.  Let me have you look |
| 10:11 | 13 | at Exhibit 50. |
| 10:11 | 14 | A    Okay. |
| 10:11 | 15 | Q    Actually -- yeah.  Let me have you look at Exhibit 50. |
| 10:11 | 16 | Do you see Exhibit 50? |
| 10:11 | 17 | A    Yes. |
| 10:11 | 18 | Q    Is this an e-mail that you sent to the defendant? |
| 10:12 | 19 | A    Yes. |
| 10:12 | 20 | Q    Is it a fair and accurate copy of an e-mail and an |
| 10:12 | 21 | e-mail thread that you forwarded to the defendant? |
| 10:12 | 22 | A    Yes. |
| 10:12 | 23 | MR. SAGEL:  At this time, Your Honor, the |
| 10:12 | 24 | government moves into evidence Exhibit 50. |
| 10:12 | 25 | MR. AVENATTI:  No objection. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
10:12   1              THE COURT:  Fifty will be received.
10:12   2              (Exhibit 50 received in evidence)
10:12   3   BY MR. SAGEL:
10:12   4   Q    What is the subject line of this e-mail at the top?
10:12   5   A    "Johnson."
10:12   6   Q    And there was a name for the attachment.  Do you see
10:12   7   that?
10:12   8   A    Yes.
10:12   9   Q    What does that say?
10:12  10   A    "Johnson costs advanced."
10:12  11   Q    And what do you write to Mr. Avenatti in your e-mail at
10:12  12   the top?
10:12  13   A    "FYI, total is $2,776.43."
10:12  14   Q    And what is the $2,776.43 that you are referencing to
10:12  15   in your e-mail?
10:12  16   A    It was costs that the McNicholas firm had advanced on
10:13  17   behalf of Mr. Johnson.
10:13  18   Q    And this e-mail is dated February 4 of 2015?
10:13  19   A    Yes.
10:13  20   Q    The same date as Exhibit 48; is that correct?
10:13  21   A    Correct.
10:13  22              MR. SAGEL:  If I could have the agent pull up
10:13  23   Exhibit 391 again.
10:13  24   BY MR. SAGEL:
10:13  25   Q    And, Ms. Regnier, if you can look at page 7 of
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:13 | 1 | Exhibit 391. |
| 10:13 | 2 | A    Yes. |
| 10:13 | 3 | Q    What's the previous balance in February of this |
| 10:13 | 4 | account? |
| 10:13 | 5 | A    2.4 million. |
| 10:13 | 6 | Q    So this is the same State Bar of California |
| 10:14 | 7 | attorney/client trust fund account that we talked about |
| 10:14 | 8 | before; is that correct? |
| 10:14 | 9 | A    Yes. |
| 10:14 | 10 | Q    Do you see two charges or debits on February 4th, 2015? |
| 10:14 | 11 | A    Yes. |
| 10:14 | 12 | Q    What is the amount reduced -- what are the two amounts |
| 10:14 | 13 | reduced on February 4? |
| 10:14 | 14 | A    $736,883.89 and $2,776.43. |
| 10:14 | 15 | Q    Are these the same amounts as what we just looked at in |
| 10:14 | 16 | Exhibit 48 and 49? |
| 10:14 | 17 | A    Yes. |
| 10:14 | 18 | Q    I'm sorry.  I think it's 48 and 46. |
| 10:14 | 19 | A    Yes. |
| 10:14 | 20 | Q    48 and 50. |
| 10:14 | 21 | A    Yes. |
| 10:14 | 22 | Q    These are the same amounts; is that correct? |
| 10:14 | 23 | A    Yes, it is. |
| 10:14 | 24 | Q    And these are on the same date as those e-mails; is |
| 10:15 | 25 | that correct? |

10:15    1    A    Yes.

10:15    2    Q    You mentioned that the cost bill was a draft at that

10:15    3    time?

10:15    4    A    Yes.

10:15    5    Q    Had anything been done to finalize that cost bill

10:15    6    between then and this withdrawal?

10:15    7    A    I don't believe so, not as I sit here, but I don't

10:15    8    remember.

10:15    9    Q    Did you ever send anything to Geoffrey Johnson to have

10:15   10    him approve the cost bill?

10:15   11    A    Not that I recall.

10:15   12    Q    Did the defendant ever ask you to send anything to

10:15   13    Geoffrey Johnson to approve the cost bill?

10:15   14    A    Not that I recall.

10:15   15         THE COURT:  I think we will take the mid-morning

10:15   16    break here, ladies and gentlemen.  We will be in recess for

10:15   17    15 minutes.

10:15   18         Please remember the admonition not to discuss the

10:15   19    case with anyone and not to form any opinions on the issues

10:15   20    in the case until it is submitted to you.  And you are not

10:15   21    to do any research.

10:15   22                   Jury not present)

10:15   23                   (Recess taken at 10:15 a.m.;

10:15   24                   proceedings resumed at 10:33 a.m.)

10:15   25                   (Jury present)

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

74

| | | |
|---|---|---|
| 10:33 | 1 | THE COURT:  Mr. Sagel. |
| 10:33 | 2 | MR. SAGEL:  Thank you, Your Honor. |
| 10:33 | 3 | BY MR. SAGEL: |
| 10:33 | 4 | Q    Ms. Regnier, do you still have Exhibit 391 in front of |
| 10:33 | 5 | you? |
| 10:33 | 6 | A    Yes. |
| 10:33 | 7 | Q    As of February 4th, from the $4 million that was |
| 10:33 | 8 | deposited into this account, there have been three |
| 10:33 | 9 | withdrawals, is that correct, looking at page 1 and page 7? |
| 10:34 | 10 | A    Yes. |
| 10:34 | 11 | Q    And if you were to look at the bottom of page 7 and |
| 10:34 | 12 | daily balances of February 4th, what's the balance of this |
| 10:34 | 13 | account on February 4th? |
| 10:34 | 14 | A    $1,660,339.68. |
| 10:34 | 15 | Q    As of February 4th, the $1.6 million was reduced, and |
| 10:34 | 16 | you said that was the contingency fee; is that correct? |
| 10:34 | 17 | A    Yes. |
| 10:34 | 18 | Q    And on February 4th the two cost amounts both from the |
| 10:34 | 19 | McNicholas firm and from Eagan Avenatti were reduced; is |
| 10:34 | 20 | that correct? |
| 10:34 | 21 | A    Yes. |
| 10:34 | 22 | Q    You have a balance at that point of $1,660,000 and some |
| 10:34 | 23 | change.  What was your understanding of what this number was |
| 10:34 | 24 | at that point? |
| 10:35 | 25 | A    That would be the amount due to the client at that |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:35 | 1 | time. |
| 10:35 | 2 | Q    And that assumes that the costs were accurate; is that |
| 10:35 | 3 | correct? |
| 10:35 | 4 | A    Yes. |
| 10:35 | 5 | Q    So assuming the costs were accurate, on February 4th, |
| 10:35 | 6 | 2015, Geoffrey Johnson was due $1,660,339.68? |
| 10:35 | 7 | A    Yes. |
| 10:35 | 8 | Q    Did the defendant ask you to pay Mr. Johnson that |
| 10:35 | 9 | money? |
| 10:35 | 10 | A    No. |
| 10:35 | 11 | Q    Did you pay Mr. Johnson that money? |
| 10:35 | 12 | A    No. |
| 10:35 | 13 | Q    If I could have you look at Exhibit 5, please. |
| 10:36 | 14 | A    (Witness complies.)  Yes. |
| 10:36 | 15 | Q    Is Exhibit 5 an e-mail that you sent to the defendant |
| 10:36 | 16 | with an attachment? |
| 10:36 | 17 | A    Yes. |
| 10:36 | 18 | Q    Is it a fair and accurate copy of the e-mail you sent |
| 10:36 | 19 | to the defendant on or about October 15th, 2012? |
| 10:36 | 20 | A    Yes. |
| 10:36 | 21 |         MR. SAGEL:  At this time, Your Honor, the |
| 10:36 | 22 | government moves to admit Exhibit 5. |
| 10:36 | 23 |         MR. AVENATTI:  Objection.  Hearsay. |
| 10:36 | 24 |         THE COURT:  Overruled.  Five will be received. |
| 10:36 | 25 |         (Exhibit 5 received in evidence) |

| | | |
|---|---|---|
| 10:36 | 1 | BY MR. SAGEL: |
| 10:36 | 2 | Q    Starting at the top of page 1, this is an e-mail you |
| 10:36 | 3 | sent to Mr. Avenatti; is that correct? |
| 10:36 | 4 | A    Yes. |
| 10:36 | 5 | Q    And it's October 15th, 2012? |
| 10:36 | 6 | A    Yes. |
| 10:36 | 7 | Q    What's the subject line? |
| 10:37 | 8 | A    CareMeridian. |
| 10:37 | 9 | Q    Could you read the e-mail that you sent to Mr. Avenatti |
| 10:37 | 10 | after it says "Michael." |
| 10:37 | 11 | A    "Attached is the spreadsheet as received by them.  We |
| 10:37 | 12 | modified as they did not show application of the security |
| 10:37 | 13 | deposit.  Total amount due without applying securities is |
| 10:37 | 14 | 183,679.  Total due after applying securities, 150,289." |
| 10:37 | 15 | Q    Then is there an attached spreadsheet that you're |
| 10:37 | 16 | referring to that you put together? |
| 10:37 | 17 | A    Yes. |
| 10:37 | 18 | Q    And that's on page 2? |
| 10:37 | 19 | A    Yes. |
| 10:37 | 20 | Q    If you were to look between May 5th -- and on this, |
| 10:37 | 21 | this goes up to September 30th; is that correct? |
| 10:37 | 22 | A    Yes. |
| 10:37 | 23 | Q    What is this chart that you helped put together?  What |
| 10:38 | 24 | is in this chart that you put together? |
| 10:38 | 25 | A    This is -- this started out from CareMeridian and was |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:38 | 1 | sent to me, and it shows payments due for Geoff Johnson's |
| 10:38 | 2 | care at CareMeridian. |
| 10:38 | 3 | Q    And, for example, in column two is the bill amount; is |
| 10:38 | 4 | that correct? |
| 10:38 | 5 | A    Yes. |
| 10:38 | 6 | Q    And between May and September it lists various amounts |
| 10:38 | 7 | of 16,695 and then several that are 17,808; is that correct? |
| 10:38 | 8 | A    Yes. |
| 10:38 | 9 | Q    Were those bills paid? |
| 10:38 | 10 | A    They were eventually, yes. |
| 10:38 | 11 | Q    At this time? |
| 10:38 | 12 | A    At this time they were not paid. |
| 10:38 | 13 | Q    And is this why you're sending it to the defendant, |
| 10:38 | 14 | because -- let's start over.  Why are you sending this chart |
| 10:38 | 15 | to Mr. Avenatti? |
| 10:38 | 16 | A    We had received this from CareMeridian, and I was |
| 10:39 | 17 | sending it to reconcile with what we had paid, and I was |
| 10:39 | 18 | sending it to Michael to let him know what was due |
| 10:39 | 19 | CareMeridian at that time. |
| 10:39 | 20 | Q    When you say to reconcile what you paid, was it also to |
| 10:39 | 21 | reconcile what was not paid? |
| 10:39 | 22 | MR. AVENATTI:  Leading. |
| 10:39 | 23 | THE COURT:  Overruled. |
| 10:39 | 24 | THE WITNESS:  Yes. |
| | 25 | |

10:39  1   BY MR. SAGEL:

10:39  2   Q    And these various entries with nothing in the check

10:39  3   number and nothing in the amount received, were those the

10:39  4   ones that were not paid?

10:39  5   A    Correct.

10:39  6   Q    And both on your chart and in your e-mail, you say

10:39  7   total amount due without applying security is $183,679; is

10:39  8   that correct?

10:39  9   A    Yes.

10:39  10  Q    That's how much defendant or the firm owed

10:39  11  CareMeridian?

10:39  12  A    That's how much the firm owed to CareMeridian.

10:40  13  Q    If you could look at Exhibit 6, please.

10:40  14  A    (Witness complies.)

10:40  15  Q    Is Exhibit 6 an e-mail thread and attachments that you

10:40  16  had with the defendant?

10:40  17  A    Yes.

10:40  18  Q    And is it a fair and accurate copy of e-mails and

10:40  19  attachments that you sent to Mr. Avenatti?

10:40  20  A    Yes, I believe so.

10:40  21         MR. SAGEL:  At this time, Your Honor, the

10:40  22  government would move to admit Exhibit 6.

10:40  23         MR. AVENATTI:  Your Honor, hearsay.  Relevance,

10:40  24  403.

10:41  25         THE COURT:  Overruled.  Six will be received.

| | | |
|---|---|---|
| 10:41 | 1 | (Exhibit 6 received in evidence) |
| 10:41 | 2 | BY MR. SAGEL: |
| 10:41 | 3 | Q    Starting at the top, Ms. Regnier, what's the subject |
| 10:41 | 4 | line? |
| 10:41 | 5 | A    EA/CareMeridian. |
| 10:41 | 6 | Q    And what's the date of this e-mail? |
| 10:41 | 7 | A    July 23rd, 2013. |
| 10:41 | 8 | Q    And what is the attachment? |
| 10:41 | 9 | A    It's a complaint that was filed by CareMeridian against |
| 10:41 | 10 | Michael Avenatti, Eagan Avenatti, and Geoffrey Johnson. |
| 10:41 | 11 | Q    And in and around the e-mails -- if we need to read |
| 10:41 | 12 | them, we can -- are the e-mails work you were doing at Eagan |
| 10:41 | 13 | Avenatti in relationship to this complaint? |
| 10:41 | 14 | A    Yes. |
| 10:41 | 15 | Q    And you were aware at that time that CareMeridian had |
| 10:41 | 16 | sued Michael Avenatti, Eagan Avenatti, and Geoffrey Johnson; |
| 10:42 | 17 | is that correct? |
| 10:42 | 18 | A    Yes, that's correct. |
| 10:42 | 19 | Q    What was the complaint or the suit against the three |
| 10:42 | 20 | individuals we just mentioned for? |
| 10:42 | 21 | A    For breach of contract, basically nonpayment of the |
| 10:42 | 22 | monthly cost. |
| 10:42 | 23 | Q    If I could have you look at page 5, paragraph nine. |
| 10:42 | 24 | THE COURT:  Mr. Sagel, I'm not going to receive |
| 10:42 | 25 | the attachments for the truth. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:42   1            MR. SAGEL:  That's fine, Your Honor.

10:42   2            MR. AVENATTI:  Your Honor, they're published to

10:42   3   the jury now.  I would object.

10:42   4            THE COURT:  Take it down, please.

10:42   5            MR. AVENATTI:  I would object to this, Your Honor.

10:42   6   It's completely improper.

10:42   7            MR. SAGEL:  Mr. Avenatti on three separate

10:42   8   witnesses said he paid for CareMeridian, Your Honor.

10:43   9            MR. AVENATTI:  Your Honor, their speaking

10:43  10   objection is improper as well.  And I did pay for

10:43  11   CareMeridian.  Who do you think paid?

10:43  12            THE COURT:  Sir, it's not the time to make factual

10:43  13   statements.  Do you understand, Mr. Avenatti?

10:43  14            MR. AVENATTI:  Yes, sir.

10:43  15            THE COURT:  The complaint will not be received for

10:43  16   the truth.

10:43  17            MR. SAGEL:  This paragraph I'm just saying for

10:43  18   notice, Your Honor.

10:43  19            THE COURT:  Okay.

10:43  20            Your objection is noted.

10:43  21   BY MR. SAGEL:

10:43  22   Q    Paragraph nine, how much is CareMeridian saying they

10:43  23   are due as of October 31st, 2012?

10:43  24   A    $218,182.

10:43  25   Q    Were you aware that Mr. Avenatti settled the matter

10:43 1  with CareMeridian?

10:43 2  A    Yes.

10:44 3  Q    If I could have you look at Exhibit 11, please.

10:44 4  A    (Witness complies.)

10:44 5  Q    Do you recognize Exhibit 11?

10:44 6  A    Yes.

10:44 7  Q    What is Exhibit 11?

10:44 8  A    The settlement agreement with CareMeridian, Eagan

10:44 9  Avenatti, Michael Avenatti, and Geoff Johnson.

10:44 10           MR. SAGEL:  Your Honor, this has been

10:44 11  provisionally admitted the other day based on foundation.

10:44 12  Now we would move it into evidence in its entirety at this

10:44 13  point, Exhibit 11.

10:44 14           MR. AVENATTI:  Your Honor, objection.  Hearsay,

10:44 15  403, 408.  Relevance.

10:44 16           THE COURT:  Overruled.  Eleven will be received in

10:45 17  full.

10:45 18           (Exhibit 11 received in evidence)

10:45 19  BY MR. SAGEL:

10:45 20  Q    The top line, what is the title of the top line?

10:45 21  A    "Settlement Agreement, General Release, and Stipulation

10:45 22  for Entry of Judgment."

10:45 23  Q    And who are the parties in the first paragraph?

10:45 24  A    Eagan Avenatti, LLC, Michael J. Avenatti, Geoffrey

10:45 25  Johnson, and CareMeridian, LLC.

10:45   1    Q    In paragraph two, would you read the first sentence of

10:45   2    paragraph two.

10:45   3    A    "For purposes of fully and finally settling all claims

10:45   4    against one another, Eagan Avenatti, LLP, Michael J.

10:45   5    Avenatti, and Geoffrey Johnson jointly and severally agree

10:45   6    to remit payment of $175,000 by cashier's check to

10:45   7    CareMeridian, LLC, attention Shawn Habibi, no later than

10:46   8    December 31st, 2013."

10:46   9    Q    If I could have you look back at Exhibit 48, please.

10:46   10   A    (Witness complies.)

10:46   11   Q    The amount you just said part of the settlement was

10:46   12   $175,000; is that correct?

10:46   13   A    Yes, it is.

10:46   14   Q    If I could have you look at page 6 of the cost bills of

10:46   15   Exhibit 48.  Do you see that?

10:46   16   A    Yes.

10:46   17   Q    If I could turn your attention to January 6th, 2014.

10:46   18   What is the entry on the cost bill?

10:46   19   A    Outside professional fee, CareMeridian, $175,000.

10:47   20   Q    So on this cost bill that totaled $736,000 and change,

10:47   21   that included this $175,000 payment to CareMeridian; is that

10:47   22   correct?

10:47   23   A    Yes, it is.

10:47   24   Q    If you were to look back at page 2, this cost bill for

10:47   25   Mr. Johnson that totaled over $736,000, it also included all

83

| | | |
|---|---|---|
| 10:47 | 1 | the payments that were not made; is that correct? |
| 10:47 | 2 | A    Yes, it does. |
| 10:47 | 3 | Q    Mr. Johnson's cost bill has over $200,000 in expenses |
| 10:47 | 4 | that were not paid? |
| 10:47 | 5 | MR. AVENATTI:  Leading, foundation, Your Honor. |
| 10:47 | 6 | Speculation. |
| 10:47 | 7 | THE COURT:  Leading.  Sustained. |
| 10:47 | 8 | BY MR. SAGEL: |
| 10:47 | 9 | Q    Ms. Regnier, on April 30th, 2012, how much is listed |
| 10:47 | 10 | there as an expense for CareMeridian? |
| 10:47 | 11 | A    $16,695. |
| 10:48 | 12 | Q    On June 1st, 2012, how much is charged there as an |
| 10:48 | 13 | expense for CareMeridian? |
| 10:48 | 14 | A    $16,695. |
| 10:48 | 15 | Q    On July 1st, 2012, how much is charged there as an |
| 10:48 | 16 | expense for CareMeridian? |
| 10:48 | 17 | A    $16,695. |
| 10:48 | 18 | Q    And I could do this all the way to November 1st, but |
| 10:48 | 19 | are these the CareMeridian expenses that were not paid? |
| 10:48 | 20 | A    I believe the majority of them are, yes. |
| 10:48 | 21 | Q    You mentioned that this was a draft that needed to be |
| 10:48 | 22 | reviewed for accuracy; is that correct? |
| 10:48 | 23 | A    Yes, it is. |
| 10:48 | 24 | Q    Does it appear that it's accurate? |
| 10:48 | 25 | A    No. |

| | | |
|---|---|---|
| 10:48 | 1 | Q    When we went over that there was $1.6 million |
| 10:48 | 2 | approximately left in the account on February 4th, that |
| 10:48 | 3 | number should actually even be higher; is that correct? |
| 10:49 | 4 | MR. AVENATTI:  Objection, Your Honor.  Calls for |
| 10:49 | 5 | speculation. |
| 10:49 | 6 | THE COURT:  Overruled. |
| 10:49 | 7 | THE WITNESS:  As of February 4th, yes, it should |
| 10:49 | 8 | be higher. |
| 10:49 | 9 | MR. SAGEL:  One second, Your Honor. |
| 10:49 | 10 | (Government counsel conferring) |
| 10:49 | 11 | BY MR. SAGEL: |
| 10:49 | 12 | Q    Ms. Regnier, could you look at Exhibit 25, please. |
| 10:49 | 13 | A    (Witness complies.) |
| 10:49 | 14 | Q    If I could have you look at page 3 of Exhibit 25.  Do |
| 10:49 | 15 | you see that? |
| 10:50 | 16 | A    Yes. |
| 10:50 | 17 | Q    Does this appear to be a chart that you created for the |
| 10:50 | 18 | defendant while you were working at Eagan Avenatti? |
| 10:50 | 19 | A    Yes, it does. |
| 10:50 | 20 | MR. SAGEL:  Your Honor, at this time the |
| 10:50 | 21 | government would move to admit Exhibit 25 based on 902(11) |
| 10:50 | 22 | based on the custodian declaration at 393, pages 1 to 2, as |
| 10:50 | 23 | a bank record and as a statement of defendant. |
| 10:50 | 24 | MR. AVENATTI:  Your Honor, objection. |
| 10:50 | 25 | Authentication.  Hearsay, as well as the objections lodged |

| | | |
|---|---|---|
| 10:50 | 1 | in docket 596 at page 10 of 12. |
| 10:51 | 2 | THE COURT:  The custodian declaration goes to |
| 10:51 | 3 | page 3? |
| 10:51 | 4 | MR. SAGEL:  393, and it's pages 1 to 2 of the |
| 10:51 | 5 | custodian declaration. |
| 10:51 | 6 | THE COURT:  Right, but in support of what?  Page 3 |
| 10:51 | 7 | of Exhibit 25? |
| 10:51 | 8 | MR. SAGEL:  Page 1, 2, and 3 of 25. |
| 10:51 | 9 | THE COURT:  I find that the declaration is |
| 10:51 | 10 | sufficient at Exhibit 393 to authenticate the document and |
| 10:51 | 11 | meet the requirements of the business records exception. |
| 10:51 | 12 | Twenty-five will be received in full. |
| 10:52 | 13 | (Exhibit 25 received in evidence) |
| 10:52 | 14 | BY MR. SAGEL: |
| 10:52 | 15 | Q    Before I turn to the exhibit, Mr. Regnier, were you |
| 10:52 | 16 | familiar with defendant obtaining loans from a bank in |
| 10:52 | 17 | Mississippi? |
| 10:52 | 18 | A    Yes. |
| 10:52 | 19 | Q    Called the Peoples Bank? |
| 10:52 | 20 | A    Yes. |
| 10:52 | 21 | Q    And this e-mail is dated November 12th, 2014; is that |
| 10:52 | 22 | correct? |
| 10:52 | 23 | A    Yes, it is. |
| 10:52 | 24 | Q    On the first page there is an e-mail from the defendant |
| 10:52 | 25 | to an individual named Chevis Swetman at thepeoples.com; is |

10:52   1   that correct?

10:52   2   A    Yes.

10:52   3   Q    Can you read what the defendant says in the paragraph

10:52   4   that says "in furtherance."

10:52   5   A    "In furtherance to my e-mail below, Mark suggested that

10:52   6   I prepare the attached which reflects our expected and

10:52   7   estimated contingency fees in 2015.  Please note that this

10:53   8   does not reflect all of our contingency cases but rather

10:53   9   only those expected to be paid in FY2015.  In addition it

10:53   10  obviously does not reflect our projected gross hourly

10:53   11  revenues from non-contingency cases in 2015."

10:53   12  Q    And what do you understand FY to mean?

10:53   13  A    Fiscal year.

10:53   14  Q    If we could turn to page 3 of Exhibit 25.  I don't know

10:53   15  if I covered this.  This is November 12th, 2014; is that

10:53   16  correct?

10:53   17  A    Yes.

10:53   18  Q    If you could turn to page 3, seven lines down.  Do you

10:53   19  see a reference to a case starting with Johnson?

10:53   20  A    Yes.

10:53   21  Q    What is that line -- well, let's start with the first

10:53   22  column is case name; is that correct?

10:53   23  A    Yes.

10:53   24  Q    The second column is expected gross recovery?

10:54   25  A    Correct.

```
10:54   1   Q    What is the expected gross recovery from the Johnson
10:54   2   versus Los Angeles County case?
10:54   3   A    Four million.
10:54   4   Q    The next column over is called the approximate net cost
10:54   5   and attorneys' fees due EA.  Do you see that?
10:54   6   A    Yes.
10:54   7   Q    What is your understanding of what this column means of
10:54   8   approximate net cost and attorneys' fees due Eagan Avenatti
10:54   9   or EA?
10:54   10  A    That would be the monies due for contingency fee and
10:54   11  any costs and expenses advanced.
10:54   12  Q    What's the number listed in that column for the Johnson
10:54   13  versus County of Los Angeles case?
10:54   14  A    1,810,000.
10:54   15  Q    And what is the expected payment date listed next to
10:54   16  that?
10:54   17  A    Quarter one of 2015.
10:54   18  Q    Do you see a signature at the bottom of the page?
10:54   19  A    Yes.
10:54   20  Q    There is a signature below the part that says:  "The
10:54   21  above is true and correct to the best of my knowledge and
10:55   22  belief as of the date stated above."  And the date stated
10:55   23  above is November 12th, 2014; is that correct?
10:55   24  A    Yes, it is.
10:55   25  Q    Whose signature is right below that?
```

10:55   1    A    Michael's.

10:55   2    Q    Based on your work at Eagan Avenatti, do you know what

10:55   3    a special-needs trust is?

10:55   4    A    A little bit.  Not a lot but, yes, a little.

10:55   5    Q    Did you ever have discussions with the defendant about

10:55   6    setting up a special-needs trust?

10:55   7    A    I don't believe I had a discussion with him, but he

10:55   8    sent me some paperwork that I had sent on to Michael

10:55   9    regarding a special-needs trust.

10:55   10   Q    There were some he's in there, so let me clarify.

10:55   11   A    Okay.

10:55   12   Q    Who sent you documents to send on to Michael?

10:55   13   A    Geoff Johnson sent me some documents to forward to

10:56   14   Michael regarding a special-needs trust.

10:56   15   Q    And you provided those to the defendant?

10:56   16   A    Yes.

10:56   17   Q    If I could have you look at Exhibit 57, please.

10:56   18   A    (Witness complies.)  Yes.

10:56   19   Q    Is this an e-mail that you sent to the defendant on

10:56   20   May 6, 2015?

10:56   21   A    Yes.

10:56   22   Q    And it has an attachment?

10:56   23   A    Yes, it does.

10:56   24   Q    Is it a fair and accurate copy of the e-mail and

10:56   25   attachment that you sent to the defendant on May 6, 2015?

| | | |
|---|---|---|
| 10:56 | 1 | A     Yes. |
| 10:56 | 2 |           MR. SAGEL:  At this time, Your Honor, the |
| 10:56 | 3 | government moves to admit Exhibit 57. |
| 10:56 | 4 |           MR. AVENATTI:  Hearsay, e-mail as well as the |
| 10:56 | 5 | attachment, Your Honor. |
| 10:57 | 6 |           MR. SAGEL:  We are not offering the attachment for |
| 10:57 | 7 | the truth of the matter, Your Honor. |
| 10:57 | 8 |           THE COURT:  57 will be received, but the |
| 10:57 | 9 | attachment will not be received for the truth of the |
| 10:57 | 10 | attachment, simply that it was transmitted to Mr. Avenatti. |
| 10:57 | 11 |           Fifty-seven is received. |
| 10:57 | 12 |           (Exhibit 57 received in evidence) |
| 10:57 | 13 |           MR. SAGEL:  Thank you, Your Honor. |
| 10:57 | 14 | BY MR. SAGEL: |
| 10:57 | 15 | Q     What is the subject of the e-mail that you sent to the |
| 10:57 | 16 | defendant? |
| 10:57 | 17 | A     Geoff Johnson, SSI. |
| 10:57 | 18 | Q     And what's the name of the attachment? |
| 10:57 | 19 | A     "SSI Spotlight on Trusts." |
| 10:57 | 20 | Q     And what's the date you sent this e-mail? |
| 10:57 | 21 | A     May 6, 2015. |
| 10:57 | 22 | Q     What did you write to the defendant? |
| 10:57 | 23 | A     "If we can get a special-needs trust set up correctly, |
| 10:57 | 24 | the money for Geoff can be paid directly into that and it |
| 10:58 | 25 | would not have an effect on his SSI.  We would need someone |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:58 | 1 | who does trusts to make sure it is set up correctly.  I have |
| 10:58 | 2 | read through the related statute and it is confusing, but he |
| 10:58 | 3 | would qualify." |
| 10:58 | 4 | Q    If I could have you look at Exhibit 58. |
| 10:58 | 5 | A    (Witness complies.) |
| 10:58 | 6 | Q    Is Exhibit 58 the defendant's reply e-mail to the same |
| 10:58 | 7 | e-mail we were just looking at in Exhibit 57? |
| 10:58 | 8 | A    Yes. |
| 10:58 | 9 | Q    Is a fair and accurate copy of defendant's reply to you |
| 10:58 | 10 | via e-mail? |
| 10:58 | 11 | A    Yes. |
| 10:58 | 12 | MR. SAGEL:  At this time, Your Honor, the |
| 10:58 | 13 | government would move to admit Exhibit 58. |
| 10:58 | 14 | MR. AVENATTI:  Same objection. |
| 10:58 | 15 | THE COURT:  Fifty-eight will be received. |
| 10:58 | 16 | (Exhibit 58 received in evidence) |
| 10:58 | 17 | BY MR. SAGEL: |
| 10:58 | 18 | Q    What's the date of Mr. Avenatti's reply? |
| 10:58 | 19 | A    May 6, 2015. |
| 10:58 | 20 | Q    Same day? |
| 10:58 | 21 | A    Yes. |
| 10:58 | 22 | Q    What does Mr. Avenatti say -- and is the subject line |
| 10:58 | 23 | the same? |
| 10:58 | 24 | A    Yes, the subject line is the same. |
| 10:59 | 25 | Q    What is Mr. Avenatti's reply to you? |

91

| | | |
|---|---|---|
| 10:59 | 1 | A    "Let me check into this.  Don't do anything for now." |
| 10:59 | 2 | Q    Did Mr. Avenatti ever ask you after this to do anything |
| 10:59 | 3 | to set up a special-needs trust? |
| 10:59 | 4 | A    No, I don't believe so. |
| 10:59 | 5 | Q    During your work at Eagan Avenatti, do you know whether |
| 10:59 | 6 | a special-needs trust was ever set up for Geoffrey Johnson? |
| 10:59 | 7 | A    I am not aware of one being set up. |
| 10:59 | 8 | Q    Even after -- let me start over.  After you deposited |
| 10:59 | 9 | the $4 million into the account in January of 2015, did you |
| 10:59 | 10 | ever make any payments to Geoffrey Johnson? |
| 10:59 | 11 | A    Yes, we made payments to Geoff. |
| 11:00 | 12 | Q    Was it ever the 1.6 million or higher? |
| 11:00 | 13 |           MR. AVENATTI:  Objection.  Speculation. |
| 11:00 | 14 | Foundation. |
| 11:00 | 15 |           THE COURT:  Overruled. |
| 11:00 | 16 |           THE WITNESS:  No. |
| 11:00 | 17 | BY MR. SAGEL: |
| 11:00 | 18 | Q    What kind of payments did you make to Mr. Johnson? |
| 11:00 | 19 | A    We continued to make payments for his rent and his |
| 11:00 | 20 | living expenses. |
| 11:00 | 21 | Q    Why were you making payments for his rent and living |
| 11:00 | 22 | expenses? |
| 11:00 | 23 | A    That was the agreement that Geoff had with Michael, and |
| 11:00 | 24 | Geoff would contact either myself or Michael when he needed |
| 11:00 | 25 | additional monies. |

92

| | | |
|---|---|---|
| 11:00 | 1 | Q    Who told you that that was the agreement between |
| 11:00 | 2 | Mr. Johnson and Mr. Avenatti? |
| 11:00 | 3 | A    Michael. |
| 11:00 | 4 | Q    You mentioned that there were payments that were made |
| 11:00 | 5 | for rent and living expenses.  What responsibility, if any, |
| 11:01 | 6 | did you have in doing it? |
| 11:01 | 7 | A    Geoff was -- like I said, he would either contact |
| 11:01 | 8 | Michael and Michael would direct me to send money to Geoff, |
| 11:01 | 9 | or he would contact me and I would let Michael know, and |
| 11:01 | 10 | Michael would authorize the money to be released to Geoff. |
| 11:01 | 11 | Q    And the latter part is he would contact you and you |
| 11:01 | 12 | would let defendant know.  The he is Geoffrey Johnson? |
| 11:01 | 13 | A    Yes, I'm sorry, Geoff Johnson. |
| 11:01 | 14 | Q    And you just mentioned that the defendant had told you |
| 11:01 | 15 | there was an agreement to pay for the rent and living |
| 11:01 | 16 | expenses.  Did you need permission to make these rent and |
| 11:01 | 17 | living expense payments to Geoffrey Johnson? |
| 11:01 | 18 | A    I needed permission to make all payments, yes. |
| 11:01 | 19 | Q    What do you mean by you needed permission to make all |
| 11:01 | 20 | payments? |
| 11:01 | 21 | A    Michael authorized all payments being made from the |
| 11:01 | 22 | firm. |
| 11:01 | 23 | Q    I would like to have you look -- actually, before I get |
| 11:01 | 24 | there, what accounts did you use to make payments to |
| 11:02 | 25 | Geoffrey Johnson? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

93

| | | |
|---|---|---|
| 11:02 | 1 | MR. AVENATTI:  Lacks foundation, Your Honor, as to |
| 11:02 | 2 | time. |
| 11:02 | 3 | THE COURT:  Overruled. |
| 11:02 | 4 | THE WITNESS:  We used the Eagan Avenatti accounts. |
| 11:02 | 5 | I think they were all Eagan Avenatti accounts.  I'm not a |
| 11:02 | 6 | hundred percent sure, but they were either trust accounts or |
| 11:02 | 7 | operating accounts. |
| 11:02 | 8 | BY MR. SAGEL: |
| 11:02 | 9 | Q    Did the money that came in from Mr. Johnson's |
| 11:02 | 10 | settlement money, was that set aside separately for these |
| 11:02 | 11 | living expenses and rent payments? |
| 11:02 | 12 | A    No, not that I am aware of. |
| 11:02 | 13 | Q    If I could have you look at Exhibit 69. |
| 11:03 | 14 | A    (Witness complies.) |
| 11:03 | 15 | Q    Do you see Exhibit 69? |
| 11:03 | 16 | A    Yes. |
| 11:03 | 17 | Q    Is this an e-mail chain between you and the defendant? |
| 11:03 | 18 | Let me ask it a different way.  Is this an e-mail that you |
| 11:03 | 19 | forwarded to the defendant and the defendant replies to you? |
| 11:03 | 20 | A    Yes. |
| 11:03 | 21 | Q    Is this a fair and accurate copy of the e-mail exchange |
| 11:03 | 22 | you had with the defendant? |
| 11:03 | 23 | A    Yes. |
| 11:03 | 24 | MR. SAGEL:  At this time, Your Honor, the |
| 11:03 | 25 | government moves to admit Exhibit 69. |

| | | |
|---|---|---|
| 11:03 | 1 | MR. AVENATTI:  No objection. |
| 11:03 | 2 | THE COURT:  Sixty-nine will be received. |
| 11:03 | 3 | (Exhibit 69 received in evidence) |
| 11:03 | 4 | BY MR. SAGEL: |
| 11:03 | 5 | Q    If we could start at the bottom e-mail on the page from |
| 11:03 | 6 | Geoffrey Johnson to yourself.  Do you see that? |
| 11:03 | 7 | A    Yes, I do. |
| 11:03 | 8 | Q    What's the date of this e-mail? |
| 11:03 | 9 | A    March 31st, 2016. |
| 11:04 | 10 | Q    And the subject is "address for Freedom to Live?" |
| 11:04 | 11 | A    Yes, it is. |
| 11:04 | 12 | Q    What does Mr. Johnson e-mail you, the first two lines? |
| 11:04 | 13 | A    "Hi, Judy.  Here is address for Freedom to Live.  Can |
| 11:04 | 14 | you send rent for April and May?  It is 550 a month for a |
| 11:04 | 15 | total of 1,100.  Can you also FedEx me a check for $1,900 |
| 11:04 | 16 | for expenses?  Thanks, Judy." |
| 11:04 | 17 | Q    And then the e-mail right above that, what do you do |
| 11:04 | 18 | about one minute after the e-mail that you received from |
| 11:04 | 19 | Mr. Johnson? |
| 11:04 | 20 | A    I forwarded it to Michael for his okay. |
| 11:04 | 21 | Q    Now, you were told that there was an agreement to pay |
| 11:04 | 22 | his expenses and his rent; is that correct? |
| 11:04 | 23 | A    Yes. |
| 11:04 | 24 | Q    Why are you asking Mr. Avenatti if this is okay? |
| 11:04 | 25 | A    All payments that were made, Michael approved, |

| | | |
|---|---|---|
| 11:04 | 1 | especially when it was related to clients.  That's just the |
| 11:05 | 2 | way it was.  He had to approve them before one went out. |
| 11:05 | 3 | Q    And at the top Mr. Avenatti replied to you? |
| 11:05 | 4 | A    Yes.  He wrote, "Yes." |
| 11:05 | 5 | Q    If you would look at Exhibit 73, is Exhibit 73 an |
| 11:05 | 6 | e-mail that you forwarded to Mr. Avenatti and received a |
| 11:05 | 7 | response? |
| 11:05 | 8 | A    Yes. |
| 11:05 | 9 | Q    Is it a fair and accurate copy of the e-mail you had |
| 11:05 | 10 | with Mr. Avenatti? |
| 11:05 | 11 | A    Yes. |
| 11:05 | 12 |        MR. SAGEL:  At this time, Your Honor, the |
| 11:05 | 13 | government moves to admit Exhibit 73. |
| 11:05 | 14 |        MR. AVENATTI:  No objection. |
| 11:05 | 15 |        THE COURT:  Seventy-three will be received. |
| 11:05 | 16 |        (Exhibit 73 received in evidence) |
| 11:05 | 17 | BY MR. SAGEL: |
| 11:05 | 18 | Q    The e-mail at the bottom, is this another e-mail from |
| 11:05 | 19 | Mr. Johnson to you on August 30th, 2016? |
| 11:05 | 20 | A    Yes, it is. |
| 11:05 | 21 | Q    And again you forwarded it to the defendant; is that |
| 11:06 | 22 | right? |
| 11:06 | 23 | A    Correct. |
| 11:06 | 24 | Q    And you asked, "Okay to send?" |
| 11:06 | 25 | A    Yes. |

| | | |
|---|---|---|
| 11:06 | 1 | Q    And he replied, "Yes," again? |
| 11:06 | 2 | A    Yes. |
| 11:06 | 3 | Q    Is this another example of you getting the defendant's |
| 11:06 | 4 | permission to send money to Mr. Johnson? |
| 11:06 | 5 | MR. AVENATTI:  Objection.  Leading. |
| 11:06 | 6 | THE COURT:  Overruled. |
| 11:06 | 7 | THE WITNESS:  Yes. |
| 11:06 | 8 | BY MR. SAGEL: |
| 11:06 | 9 | Q    I have shown you two examples.  How many more e-mails |
| 11:06 | 10 | would you estimate were like this that you would ask for |
| 11:06 | 11 | permission from the defendant? |
| 11:06 | 12 | A    There is quite a few e-mails and texts. |
| 11:06 | 13 | Q    You said texts as well? |
| 11:06 | 14 | A    Yes. |
| 11:06 | 15 | Q    And each time you sent money to Mr. Johnson at his |
| 11:06 | 16 | request, whether for rent or living expenses, did you get |
| 11:06 | 17 | Mr. Avenatti's permission? |
| 11:06 | 18 | A    Yes, I did. |
| 11:07 | 19 | Q    You just mentioned this, so I will have you look at |
| 11:07 | 20 | Exhibit 260, which should be in Volume 4.  Do you see |
| 11:07 | 21 | Exhibit 260? |
| 11:07 | 22 | A    Yes. |
| 11:07 | 23 | Q    Are these text messages that you received from |
| 11:07 | 24 | Mr. Johnson, sent to Mr. Avenatti, and received from |
| 11:07 | 25 | Mr. Avenatti? |

97

| 11:07 | 1 | A    Yes. |
|---|---|---|

11:07   2   Q    Are they a fair and accurate copy of the text messages

11:07   3   between you and Mr. Avenatti on these dates?

11:08   4   A    Yes, it is.

11:08   5            MR. SAGEL:  At this time, Your Honor, the

11:08   6   government moves to admit Exhibit 260.

11:08   7            MR. AVENATTI:  Objection, Your Honor.  Foundation,

11:08   8   authentication.  Hearsay.

11:08   9            THE COURT:  The third e-mail from Mr. Johnson will

11:08   10   be received not for the truth but rather simply for the fact

11:08   11   that he made a request.  Otherwise it will be received.  260

11:08   12   will be received.

11:08   13            MR. SAGEL:  Thank you, Your Honor.

11:08   14            (Exhibit 260 received in evidence)

11:08   15   BY MR. SAGEL:

11:08   16   Q    On November 8, 2017, Mr. Johnson sent you a text

11:08   17   message; is that correct?

11:08   18   A    Yes, he did.

11:08   19   Q    And what did Mr. Johnson request in that text message?

11:09   20   A    "Can you please make that deposit today that I

11:09   21   requested for Monday."

11:09   22   Q    And what did you then do?

11:09   23   A    I sent a text -- I forwarded the text -- I sent a text

11:09   24   to Michael that said, "Geoff pinged me about money.  Do you

11:09   25   want me to tell him I will make deposit tomorrow?"

| | | |
|---|---|---|
| 11:09 | 1 | Q    And what was the defendant's reply? |
| 11:09 | 2 | A    "Yes." |
| 11:09 | 3 | Q    This is an example of the texts you were referring to? |
| 11:09 | 4 | A    Yes. |
| 11:09 | 5 | Q    Ms. Regnier, would you look at Exhibits 378, 379, and |
| 11:10 | 6 | 380. |
| 11:10 | 7 | MR. SAGEL:  Your Honor, while she is pulling those |
| 11:10 | 8 | up, we would be admitting them under 902(11) under the |
| 11:10 | 9 | custodian declaration at Exhibit 394, page 2, for each of |
| 11:10 | 10 | them. |
| 11:10 | 11 | MR. AVENATTI:  Your Honor, foundation, |
| 11:12 | 12 | authentication, hearsay, and the objections lodged in |
| 11:12 | 13 | document 596 at page 10 of 12. |
| 11:12 | 14 | THE COURT:  I have already indicated that the |
| 11:12 | 15 | declaration at 394 is sufficient, and I find it to be |
| 11:12 | 16 | sufficient for purposes of 902 and the business records |
| 11:12 | 17 | exception with respect to these specific documents 378, 379, |
| 11:12 | 18 | and 380, all of which will be received. |
| 11:12 | 19 | (Exhibits 378, 379, 380 received in evidence) |
| 11:12 | 20 | MR. SAGEL:  Just real quickly, let's start with |
| 11:12 | 21 | 378, the first page, just if you will pull up the top check. |
| 11:12 | 22 | BY MR. SAGEL: |
| 11:12 | 23 | Q    Do you recognize this signature on this check? |
| 11:12 | 24 | A    Yes.  That's my signature. |
| 11:12 | 25 | Q    And what's the name of the account in the top left |

| 11:12 | 1 | corner? |

11:12   1   corner?

11:12   2   A    Eagan Avenatti, LLC, Operating Account.

11:13   3   Q    And who is this check made payable to?

11:13   4   A    Freedom to Live.

11:13   5   Q    Do you know what Freedom to Live is?

11:13   6   A    That was one of the places that Geoff Johnson lived at

11:13   7   after he left CareMeridian.

11:13   8   Q    And this exhibit is nine pages, and you can skim

11:13   9   through it if you want.  Are these nine different checks

11:13   10  from the same account all to Freedom to Live that you

11:13   11  signed?

11:13   12  A    Yes.

11:13   13  Q    Your signature is on these checks; is that correct?

11:13   14  A    Yes, it is.

11:13   15  Q    You were a signatory on this Eagan Avenatti Operating

11:13   16  Account?

11:13   17  A    Yes, I was.

11:13   18  Q    Who was the other signatory on the operating account?

11:13   19  A    Michael Avenatti.

11:13   20  Q    Was there any other signatories other than you and the

11:13   21  defendant?

11:13   22  A    No.

11:13   23       MR. AVENATTI:  Objection as to time.

11:13   24       THE COURT:  Overruled.

        25

11:13    1    BY MR. SAGEL:

11:13    2    Q    At any time while you worked at Eagan Avenatti, did

11:13    3    anybody other than yourself or Mr. Avenatti -- sticking with

11:14    4    the Eagan Avenatti name, while the firm was Eagan Avenatti.

11:14    5    At any time while the firm was Eagan Avenatti, LLP, did

11:14    6    anybody have signatory authority on the accounts other than

11:14    7    you and the defendant?

11:14    8    A    I do not believe so.

11:14    9    Q    I would like to have you look at Exhibit 379, and we

11:14   10    will just start with the first page.  What is the first

11:14   11    check on Exhibit 379?

11:14   12    A    It's a check payable to Geoffrey Johnson for a thousand

11:14   13    dollars.

11:14   14    Q    And whose signature is on that?

11:14   15    A    That's my signature.

11:14   16    Q    And what account is this check from?

11:14   17    A    Eagan Avenatti, LLP, Operating Account.

11:15   18    Q    I'm not going to go through every check, but there are

11:15   19    approximately 42 pages or 42 checks here; is that correct?

11:15   20    A    Yes.

11:15   21    Q    And do they all generally look like they contain your

11:15   22    signature on them?

11:15   23    A    Yes, they do.

11:15   24    Q    And they are all from the same Eagan Avenatti, LLP,

11:15   25    Operating Account?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| Time | Line | |
|---|---|---|
| 11:15 | 1 | A    Yes, they are. |
| 11:15 | 2 | Q    If I could have you look at Exhibit 380, the first |
| 11:15 | 3 | page, first check.  Do you recognize the signature on this |
| 11:15 | 4 | check? |
| 11:15 | 5 | A    Yes.  That's my signature. |
| 11:15 | 6 | Q    And who is the check written to? |
| 11:15 | 7 | A    Sunrise of West Hills. |
| 11:15 | 8 | Q    Do you know what Sunrise of West Hills was? |
| 11:16 | 9 | A    It was another facility that Geoff Johnson lived at. |
| 11:16 | 10 | Q    And the date of the first check is January 9, 2015; is |
| 11:16 | 11 | that correct? |
| 11:16 | 12 | A    Yes, it is. |
| 11:16 | 13 | Q    And then the subsequent checks are later in 2015? |
| 11:16 | 14 | A    Yes. |
| 11:16 | 15 | Q    I'm not going to have you go through all of 379 and 378 |
| 11:16 | 16 | individually, but if you want to skim through it, those |
| 11:16 | 17 | checks are all from mid to late 2015 on; is that correct? |
| 11:16 | 18 | A    Yes. |
| 11:16 | 19 | Q    Were these some of the payments that you were paying |
| 11:16 | 20 | for rent and living expenses for Mr. Johnson? |
| 11:16 | 21 | A    Yes.  I didn't sign all of these.  Michael signed some. |
| 11:16 | 22 | Q    If it's not your signature on it, you recognize it to |
| 11:16 | 23 | be someone else's? |
| 11:16 | 24 | A    Michael's, yes. |
| 11:17 | 25 | Q    Whose signature? |

| | | |
|---|---|---|
| 11:17 | 1 | A    Michael's. |
| 11:17 | 2 | Q    Is Exhibit 356 in that same binder?  If not, it looks |
| 11:17 | 3 | like it will be Volume 5. |
| 11:17 | 4 | MR. SAGEL:  Your Honor, the government would move |
| 11:17 | 5 | to admit Exhibit 356, which is from the 394 custodian |
| 11:17 | 6 | declaration, same declaration we just spoke of, and it is on |
| 11:18 | 7 | page 2 of that custodian declaration. |
| 11:18 | 8 | MR. AVENATTI:  Your Honor, hearsay, foundation, |
| 11:18 | 9 | same objections on document 596 on page 10 of 12. |
| 11:18 | 10 | THE COURT:  As indicated, I have found the |
| 11:18 | 11 | custodian declaration sufficient for the necessary purpose |
| 11:18 | 12 | of receipt of this specific document and affirm that 356 |
| 11:18 | 13 | will be received. |
| 11:18 | 14 | (Exhibit 356 received in evidence) |
| 11:18 | 15 | BY MR. SAGEL: |
| 11:18 | 16 | Q    Looking at page 1 of Exhibit 356, what's the account |
| 11:18 | 17 | that this check is from? |
| 11:18 | 18 | A    Avenatti and Associates Operating Account. |
| 11:18 | 19 | Q    And who is it made payable to? |
| 11:19 | 20 | A    Freedom to Live. |
| 11:19 | 21 | Q    Do you recognize the signature on that check? |
| 11:19 | 22 | A    Yes.  That's Michael's signature. |
| 11:19 | 23 | Q    And the date on that check? |
| 11:19 | 24 | A    June 20th, 2017. |
| 11:19 | 25 | Q    If you were to look at, for example -- there's a few |

| | | |
|---|---|---|
| 11:19 | 1 | but let's look at just page 2, the check on page 2. |
| 11:19 | 2 | A    Yes. |
| 11:19 | 3 | Q    Is that from the same account? |
| 11:19 | 4 | A    Yes, it is. |
| 11:19 | 5 | Q    Also to Freedom to Live? |
| 11:19 | 6 | A    Yes. |
| 11:19 | 7 | Q    Do you recognize the signature on that check? |
| 11:19 | 8 | A    I signed that on behalf of Michael. |
| 11:19 | 9 | Q    And when you say you signed that on behalf of Michael, |
| 11:19 | 10 | what do you mean by that? |
| 11:19 | 11 | A    Michael authorized me to sign his name to the check to |
| 11:19 | 12 | Freedom to Live for Geoff Johnson. |
| 11:19 | 13 | Q    Did you ever sign on these checks for Mr. Johnson's |
| 11:19 | 14 | rent and living expenses without defendant's permission? |
| 11:19 | 15 | A    No. |
| 11:20 | 16 | Q    Did you ever sign defendant's name ever without his |
| 11:20 | 17 | authorization? |
| 11:20 | 18 |         MR. AVENATTI:  Objection.  Foundation, Your Honor. |
| 11:20 | 19 |         THE COURT:  Overruled. |
| 11:20 | 20 |         THE WITNESS:  No. |
| 11:20 | 21 | BY MR. SAGEL: |
| 11:20 | 22 | Q    If I could have you look at -- and I apologize.  I'm |
| 11:20 | 23 | going to send you back to the first binder to Exhibit 75. |
| 11:20 | 24 | A    Okay. |
| 11:20 | 25 | Q    Do you have Exhibit 75 in front of you? |

11:20    1    A    Yes, I do.

11:20    2    Q    Is Exhibit 75 an e-mail that you forwarded to the

11:20    3    defendant?

11:20    4    A    Yes, it is.

11:20    5    Q    Is it a fair and accurate copy of the e-mail you sent

11:20    6    to the -- forwarded to the defendant?

11:20    7    A    Yes.

11:21    8              MR. SAGEL:  At this time, Your Honor, the

11:21    9    government moves into evidence Exhibit 75.

11:21   10              MR. AVENATTI:  Objection.  Hearsay, relevance.

11:21   11              THE COURT:  Overruled.  Seventy-five will be

11:21   12    received.  The objection is overruled.

11:21   13              (Exhibit 75 received in evidence)

11:21   14    BY MR. SAGEL:

11:21   15    Q    What's the subject line of the e-mail that you

11:21   16    forwarded to the defendant on March 7, 2017?

11:21   17    A    "Potential homes for Geoff."

11:21   18    Q    And what did you write to the defendant?

11:21   19    A    "FYI."

11:21   20    Q    And in or around this time in 2017, did you learn that

11:22   21    Geoffrey Johnson wanted to purchase a house?

11:22   22    A    Yes.

11:22   23    Q    As part of your responsibilities at Eagan Avenatti, did

11:22   24    you ever type up documents for the defendant?

11:22   25    A    Yes.

| | | |
|---|---|---|
| 11:22 | 1 | Q    How did you know what to include in those documents? |
| 11:22 | 2 | MR. AVENATTI:  Objection.  Foundation, Your Honor. |
| 11:22 | 3 | THE COURT:  Overruled. |
| 11:22 | 4 | THE WITNESS:  Sometimes Michael would dictate what |
| 11:22 | 5 | he wanted.  Other times he would send an e-mail with |
| 11:22 | 6 | basically a text of what he wanted in it, and myself or |
| 11:22 | 7 | someone else in the office would put it on letterhead for |
| 11:22 | 8 | him.  I did a lot of typing while I was there. |
| 11:22 | 9 | BY MR. SAGEL: |
| 11:22 | 10 | Q    Why don't I have you look at Exhibit 78. |
| 11:23 | 11 | A    (Witness complies.) |
| 11:23 | 12 | Q    Is Exhibit 78 an e-mail chain between you and |
| 11:23 | 13 | Mr. Avenatti? |
| 11:23 | 14 | A    Yes, it is. |
| 11:23 | 15 | Q    With an attachment? |
| 11:23 | 16 | A    Yes. |
| 11:23 | 17 | Q    Is it a fair and accurate copy of the e-mail chain and |
| 11:23 | 18 | attachment that you had with Mr. Avenatti? |
| 11:23 | 19 | A    Yes. |
| 11:23 | 20 | MR. SAGEL:  Move to admit Exhibit 78, Your Honor. |
| 11:23 | 21 | MR. AVENATTI:  Hearsay, foundation. |
| 11:23 | 22 | THE COURT:  Overruled.  Seventy-eight will be |
| 11:23 | 23 | received.  The bottom of the chain is by Mr. Avenatti.  It's |
| 11:24 | 24 | a party admission. |
| 11:24 | 25 | (Exhibit 78 received in evidence) |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:24 | 1 | BY MR. SAGEL: |
| 11:24 | 2 | Q    If I could start with that e-mail from the defendant to |
| 11:24 | 3 | Ms. Regnier.  What date did the defendant send you that |
| 11:24 | 4 | e-mail? |
| 11:24 | 5 | A    May 3rd, 2017. |
| 11:24 | 6 | MR. SAGEL:  If you could blow up the portion that |
| 11:24 | 7 | says -- |
| 11:24 | 8 | BY MR. SAGEL: |
| 11:24 | 9 | Q    Well, and what's the subject line? |
| 11:24 | 10 | A    "Need letter on letterhead." |
| 11:24 | 11 | Q    What did you understand need letter on letterhead to |
| 11:24 | 12 | mean? |
| 11:24 | 13 | A    It meant Michael was sending a letter and he would like |
| 11:24 | 14 | it put on letterhead. |
| 11:24 | 15 | Q    And then do you see the information that he includes in |
| 11:24 | 16 | his e-mail to you? |
| 11:24 | 17 | A    Yes. |
| 11:24 | 18 | Q    After the part where it says "Mr. Lewis Taylor," do you |
| 11:24 | 19 | see that? |
| 11:24 | 20 | A    Yes. |
| 11:24 | 21 | Q    Can you read the part starting from "re" down. |
| 11:24 | 22 | A    "Confirmation affirmed.  17330 Hamlin Street, Lake |
| 11:25 | 23 | Balboa, CA, 91406.  Dear Mr. Taylor:  Please be advised that |
| 11:25 | 24 | this firm represents Mr. Geoff Johnson in connection with |
| 11:25 | 25 | various legal matters, including the purchase of the |

11:25  1   above-referenced property (the property).

11:25  2          "This letter is to confirm Mr. Johnson's ability

11:25  3   to purchase the property on an all-cash basis with trust

11:25  4   funds resulting from a settlement reached with the County of

11:25  5   Los Angeles in a matter in which we represent him.  In the

11:25  6   event you have any questions, please do not hesitate to

11:25  7   contact me."

11:25  8   Q    And what did you understand you were supposed to do

11:25  9   after you received this e-mail from the defendant?

11:25  10  A    Put it on letterhead, sign Michael's name, and send it

11:25  11  back to him.  That was the standard practice.  Michael was

11:26  12  out of the office a lot, so he would often do this and have

11:26  13  me send him back a pdf of this document.

11:26  14  Q    And your reply e-mail on the top of the page says,

11:26  15  "Here you go"; is that correct?

11:26  16  A    Yes, it is.

11:26  17  Q    And if you were to look at page 3, is that the

11:26  18  attachment?

11:26  19  A    Yes, it is.

11:26  20  Q    And is this the same language you just read that you

11:26  21  put on the Eagan Avenatti letterhead?

11:26  22  A    Yes, it is.

11:26  23  Q    If you were to look at the bottom, kind of bottom left

11:26  24  corner maybe a third of the way down the page, there are

11:26  25  some letters on the left side?

| | | |
|---|---|---|
| 11:26 | 1 | A     Yes. |
| 11:26 | 2 | Q     What does that say? |
| 11:26 | 3 | A     "MJA:jkr."  It was standard practice in our office that |
| 11:26 | 4 | whoever typed the letter -- whoever signed the letter had |
| 11:26 | 5 | their initials in caps, then a colon, and then small letters |
| 11:26 | 6 | for whoever typed the letter. |
| 11:26 | 7 | Q     And the signature for Mr. Avenatti above his name, who |
| 11:26 | 8 | signed that? |
| 11:26 | 9 | A     I did. |
| 11:26 | 10 | Q     Did you have permission to do so? |
| 11:27 | 11 | A     Yes, I did. |
| 11:27 | 12 | Q     If I could have you look at Exhibit 85. |
| 11:27 | 13 | A     (Witness complies.) |
| 11:27 | 14 | Q     Is 85 an e-mail you received from the defendant? |
| 11:27 | 15 | A     Yes. |
| 11:27 | 16 | Q     Is it a fair and accurate copy of an e-mail you |
| 11:27 | 17 | received from the defendant? |
| 11:27 | 18 | A     Yes. |
| 11:27 | 19 |           MR. SAGEL:  The government moves to admit |
| 11:27 | 20 | Exhibit 85. |
| 11:27 | 21 |           MR. AVENATTI:  No objection. |
| 11:28 | 22 |           THE COURT:  Eighty-five will be received. |
| 11:28 | 23 |           (Exhibit 85 received in evidence) |
| 11:28 | 24 | BY MR. SAGEL: |
| 11:28 | 25 | Q     What's the date of this e-mail from the defendant? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 11:28 | 1 | A | October 2nd, 2017. |

11:28  1   A    October 2nd, 2017.

11:28  2   Q    What's the subject line?

11:28  3   A    "New LLC."

11:28  4   Q    And what is listed in the e-mail that the defendant

11:28  5   sent to you?

11:28  6   A    "21923 Parthenia Street, LLC."

11:28  7   Q    What was your understanding or -- what was your

11:28  8   understanding of what the defendant is sending you on

11:28  9   October 2nd, 2017, in this e-mail?

11:28  10   A    We would have had a conversation prior.  This would be

11:28  11   Michael's request that a new LLC be set up, and I would send

11:28  12   the form to the company that sets them up.

11:28  13   Q    As part of your responsibilities at Eagan Avenatti, did

11:28  14   you set up various LLCs?

11:28  15   A    Yes.  Well, I sent the forms.

11:28  16   Q    What is an LLC?

11:29  17   A    A limited liability company.

11:29  18   Q    When you say you would send the forms, who did you send

11:29  19   the forms to?

11:29  20   A    I don't remember the name of the company.  It may be --

11:29  21   that wasn't it.  I really don't remember the name of the

11:29  22   company, but there are companies that all you do is send the

11:29  23   form and they send you back the required documents.

11:29  24   Q    And when you sent the forms in to set up these LLCs,

11:29  25   who did you get the information from to do so?

11:29  1              MR. AVENATTI:  Foundation, Your Honor.

11:29  2              THE COURT:  Overruled.

11:29  3              THE WITNESS:  Michael.

11:29  4    BY MR. SAGEL:

11:29  5    Q    Do you know why -- you said -- let me back up.  You

11:29  6    said before this e-mail you had a conversation with him

11:29  7    about this; is that correct?

11:29  8    A    Correct.

11:29  9    Q    What did he tell you why he wanted you to set up this

11:29  10   LLC?

11:29  11   A    I don't know if he told me why, or, I wouldn't have

11:29  12   asked.  He set up several of them.

11:30  13   Q    Did you set up this LLC?

11:30  14   A    Yes.  I sent the paperwork in, and it was set up.

11:30  15              MR. SAGEL:  If I could have the agent pull up --

11:30  16   BY MR. SAGEL:

11:30  17   Q    Do you have Exhibit 79?

11:30  18              MR. SAGEL:  I believe 79 is already in evidence.

11:30  19   If I could have the agent pull up page 5 of Exhibit 79.

11:30  20   BY MR. SAGEL:

11:30  21   Q    Do you see the address on this, the real property

11:30  22   address?

11:30  23   A    Yes.

11:30  24   Q    Is that the same street address and numbers as the LLC

11:30  25   you were asked to set up?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:30 | 1 | A    Yes, it is. |
| 11:30 | 2 | Q    What's the date that this is prepared? |
| 11:30 | 3 | A    May 31st, 2017. |
| 11:31 | 4 | Q    So the LLC that he asked you to prepare was about four |
| 11:31 | 5 | months after this? |
| 11:31 | 6 | A    Yeah, I believe so. |
| 11:31 | 7 | Q    If I could have you look at Exhibit 87. |
| 11:31 | 8 | A    (Witness complies.)  Okay. |
| 11:31 | 9 | Q    Is Exhibit 87 an e-mail that you sent and received |
| 11:31 | 10 | along with the defendant? |
| 11:31 | 11 | A    Yes. |
| 11:31 | 12 | Q    The e-mail on the bottom half of the first page, at |
| 11:31 | 13 | whose direction did you send these documents? |
| 11:31 | 14 | A    Michael's direction. |
| 11:31 | 15 | Q    Is this an accurate copy of the e-mail you sent and |
| 11:32 | 16 | received along with the attachments? |
| 11:32 | 17 | A    Yes. |
| 11:32 | 18 | MR. SAGEL:  At this time, Your Honor, the |
| 11:32 | 19 | government moves to admit Exhibit 87. |
| 11:32 | 20 | MR. AVENATTI:  Objection, Your Honor.  Hearsay and |
| 11:32 | 21 | multiple levels. |
| 11:32 | 22 | THE COURT:  The first page will be received for |
| 11:32 | 23 | the truth.  The attachments will just be received for the |
| 11:32 | 24 | fact that they were transmitted and received but not for the |
| 11:32 | 25 | truth. |

| | | |
|---|---|---|
| 11:32 | 1 | (Exhibit 87 received in evidence) |
| 11:32 | 2 | BY MR. SAGEL: |
| 11:32 | 3 | Q   Starting on page 1 at the bottom, do you know who Marty |
| 11:32 | 4 | Yeghishian is? |
| 11:32 | 5 | A   Not really, no. |
| 11:32 | 6 | Q   Why were you sending an e-mail with attachments to |
| 11:32 | 7 | Marty Yeghishian? |
| 11:32 | 8 | A   Michael requested that I send them to him. |
| 11:32 | 9 | Q   And in your e-mail to Marty Yeghishian you say: |
| 11:32 | 10 | "Attached please find the LLC documents, signed LLI, |
| 11:32 | 11 | declaration of nonowner occupancy, and purpose of loan |
| 11:33 | 12 | declaration."  And those are the attachments to this e-mail; |
| 11:33 | 13 | is that correct? |
| 11:33 | 14 | A   Yes, it is. |
| 11:33 | 15 | Q   Where did you get these documents from to provide to |
| 11:33 | 16 | Mr. Yeghishian? |
| 11:33 | 17 | A   I would have received them from Michael. |
| 11:33 | 18 | Q   If I could have you look at page 2. |
| 11:33 | 19 | A   (Witness complies.) |
| 11:33 | 20 | Q   Do you recognize the signature and handwriting -- let's |
| 11:33 | 21 | start with the signature.  At the bottom of page 2 under |
| 11:33 | 22 | "accepted," do you see a signature there? |
| 11:33 | 23 | A   Yes.  That's Michael's signature. |
| 11:33 | 24 | Q   And that's under -- what's the word right above his |
| 11:33 | 25 | signature? |

| | | | |
|--|--|--|--|
| 11:33 | 1 | A | "Borrower." |
| 11:33 | 2 | Q | And what's right below the signature? |
| 11:33 | 3 | A | "21933 Parthenia, LLC." |
| 11:33 | 4 | Q | In the 11 years, approximate 11 years that you worked |
| 11:33 | 5 | | with the defendant, did you see his handwriting a lot? |
| 11:33 | 6 | A | Yes, I did. |
| 11:33 | 7 | Q | Do you recognize the defendant's handwriting? |
| 11:34 | 8 | A | Yes. |
| 11:34 | 9 | Q | Do you recognize whose handwriting the date is to the |
| 11:34 | 10 | | right of the signature? |
| 11:34 | 11 | A | That's Michael's handwriting. |
| 11:34 | 12 | Q | If I could have you look at page 3, paragraph one.  Do |
| 11:34 | 13 | | you see the bolded part at the end of it? |
| 11:34 | 14 | A | Yes. |
| 11:34 | 15 | Q | Can you read the bolded part. |
| 11:34 | 16 | A | "I am completing this form in my own handwriting and |
| 11:34 | 17 | | understand that it may not be completed by my broker or any |
| 11:34 | 18 | | other party." |
| 11:34 | 19 | Q | And do you see the handwriting with the name, the |
| 11:34 | 20 | | street address, the numbers, and the initials? |
| 11:34 | 21 | A | Yes. |
| 11:34 | 22 | Q | Whose handwriting is that? |
| 11:34 | 23 | A | That's Michael's. |
| 11:34 | 24 | Q | And the signature at the bottom for borrower? |
| 11:34 | 25 | A | That's his signature also. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:34   1   Q    Page 4 of the exhibit, paragraph one under the purpose
11:35   2   of the loan declaration, that has the same part about
11:35   3   completing the form in my own handwriting; is that correct?
11:35   4   A    Yes.
11:35   5   Q    If you look at the handwriting on this page from top to
11:35   6   bottom, whose handwriting is on this page?
11:35   7   A    That's Michael's.
11:35   8   Q    And the signature at the bottom?
11:35   9   A    Michael's.
11:35   10  Q    If you were to look at page 5 and 6, is this part of
11:35   11  the LLC documentation that you would have had done for the
11:35   12  Parthenia Street, LLC?
11:35   13  A    Yes.
11:35   14           (Government counsel conferring)
11:36   15  BY MR. SAGEL:
11:36   16  Q    If I could have you look at Exhibit 96.
11:36   17  A    (Witness complies.)
11:36   18  Q    Is Exhibit 96 an e-mail that you received first from --
11:37   19  well, an e-mail chain that you are on along with the
11:37   20  defendant?
11:37   21  A    Yes.
11:37   22           MR. SAGEL:  I'm sorry.  96 is already in evidence,
11:37   23  Your Honor.
11:37   24  BY MR. SAGEL:
11:37   25  Q    I will short-circuit this.
```

| | | |
|---|---|---|
| 11:37 | 1 | The e-mail at the top that Marty Yeghishian is |
| 11:37 | 2 | sending to the defendant and you are cc'd on, do you see |
| 11:37 | 3 | that? |
| 11:37 | 4 | A    Yes, I do. |
| 11:37 | 5 | Q    What's the time of this e-mail? |
| 11:38 | 6 | A    9:10 p.m. |
| 11:38 | 7 | Q    On what date? |
| 11:38 | 8 | A    October 16th, 2017. |
| 11:38 | 9 | Q    And you have no idea if this is in UTC time or regular |
| 11:38 | 10 | time; do you? |
| 11:38 | 11 | A    I don't know, no. |
| 11:38 | 12 | Q    But this e-mail appears to be nine to ten hours after |
| 11:38 | 13 | the e-mail below; do you see that? |
| 11:38 | 14 | A    Yes. |
| 11:38 | 15 | Q    I'm going to have you look at Exhibit 94. |
| 11:38 | 16 | A    (Witness complies.) |
| 11:38 | 17 | Q    Is 94 an e-mail you sent on October 16th at what's |
| 11:38 | 18 | listed as 10:06 p.m.? |
| 11:38 | 19 | A    Yes. |
| 11:38 | 20 | Q    And there is an attachment to that; is that correct? |
| 11:39 | 21 | A    Yes, there is. |
| 11:39 | 22 | Q    And the defendant is also on this e-mail; is that |
| 11:39 | 23 | correct? |
| 11:39 | 24 | A    Yes, he is. |
| 11:39 | 25 | Q    And at whose direction did you send this e-mail? |

| | | |
|---|---|---|
| 11:39 | 1 | A    Michael's.  Michael's direction. |
| 11:39 | 2 | MR. SAGEL:  At this time, Your Honor, the |
| 11:39 | 3 | government moves to admit Exhibit 94. |
| 11:39 | 4 | MR. AVENATTI:  Hearsay. |
| 11:39 | 5 | THE COURT:  The attachments will be received not |
| 11:39 | 6 | for the truth of their content but just for the fact that |
| 11:39 | 7 | they were transmitted.  Ninety-four will be received. |
| 11:39 | 8 | (Exhibit 94 received in evidence) |
| 11:39 | 9 | BY MR. SAGEL: |
| 11:39 | 10 | Q   And we'll start with the first page.  You sent this |
| 11:39 | 11 | e-mail almost an hour after the e-mail we talked about in |
| 11:39 | 12 | Exhibit 96; is that correct? |
| 11:39 | 13 | A    Yes. |
| 11:39 | 14 | Q   And the subject line is the Parthenia Street address? |
| 11:40 | 15 | A    Yes, it is. |
| 11:40 | 16 | Q   If you could look at page 2 of this e-mail, this letter |
| 11:40 | 17 | of interest.  Do you see that? |
| 11:40 | 18 | A    Yes, I do. |
| 11:40 | 19 | Q   Do you see the name that's listed at the bottom as the |
| 11:40 | 20 | borrower? |
| 11:40 | 21 | A    Yes. |
| 11:40 | 22 | Q   What name is listed there? |
| 11:40 | 23 | A    Geoff Johnson. |
| 11:40 | 24 | Q   The handwriting under the signature and the date to the |
| 11:40 | 25 | right, whose handwriting is that? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:40 | 1 | A    I don't know. |
| 11:40 | 2 | Q    Do you recognize the handwriting -- turn to page 5.  Do |
| 11:40 | 3 | you recognize the handwriting next to the signature on |
| 11:40 | 4 | page 5? |
| 11:40 | 5 | A    No, I don't. |
| 11:40 | 6 | Q    Between October 13th and October 16th, did you get in |
| 11:41 | 7 | touch with Geoffrey Johnson? |
| 11:41 | 8 | A    I don't recall. |
| 11:41 | 9 | Q    Did you ever meet with Mr. Johnson to fill out |
| 11:41 | 10 | paperwork for this home purchase? |
| 11:41 | 11 | A    No.  I never met with Mr. Johnson. |
| 11:41 | 12 | Q    If I could have you look at Exhibit 100. |
| 11:41 | 13 | A    (Witness complies.)  Yes. |
| 11:41 | 14 | Q    Actually, before I get to Exhibit 100.  As part of your |
| 11:41 | 15 | responsibilities at Eagan Avenatti, you mentioned you |
| 11:42 | 16 | deposited money and paid bills.  What roles, if any, did you |
| 11:42 | 17 | have as related to wire transfers? |
| 11:42 | 18 | A    I would initiate them and Michael would approve them. |
| 11:42 | 19 | Q    I'm going to go backwards.  I missed a document.  My |
| 11:42 | 20 | pages got stuck. |
| 11:42 | 21 | Would you look at Exhibit 95. |
| 11:42 | 22 | A    (Witness complies.) |
| 11:42 | 23 | Q    Do you have 95 in front of you? |
| 11:42 | 24 | A    Yes, I do. |
| 11:42 | 25 | Q    Is 95 an e-mail that you sent? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

118

| | | |
|---|---|---|
| 11:42 | 1 | A    Yes. |
| 11:42 | 2 | Q    With an attachment? |
| 11:42 | 3 | A    Yes. |
| 11:42 | 4 | Q    At whose direction did you send the e-mail in |
| 11:42 | 5 | Exhibit 95? |
| 11:42 | 6 | A    At Michael's direction. |
| 11:43 | 7 | MR. SAGEL:  The government moves to admit |
| 11:43 | 8 | Exhibit 95, Your Honor. |
| 11:43 | 9 | MR. AVENATTI:  Objection.  Hearsay. |
| 11:43 | 10 | THE COURT:  Exhibit 95 will be received.  The |
| 11:43 | 11 | attachments will not be received for the truth. |
| 11:43 | 12 | (Exhibit 95 received in evidence). |
| 11:43 | 13 | BY MR. SAGEL: |
| 11:43 | 14 | Q    This is another e-mail that you sent to Marty |
| 11:43 | 15 | Yeghishian? |
| 11:43 | 16 | A    Yes. |
| 11:43 | 17 | Q    Also on October 16th, 2017? |
| 11:43 | 18 | A    Yes. |
| 11:43 | 19 | Q    On page 2 the top line is Uniform Residential Loan |
| 11:43 | 20 | Application; is that correct? |
| 11:43 | 21 | A    Yes, it is. |
| 11:43 | 22 | Q    And can you see who it lists as the borrower on this |
| 11:43 | 23 | Uniform Residential Loan Application? |
| 11:43 | 24 | A    Geoff Johnson. |
| 11:43 | 25 | Q    And then in the middle of the page it again says |

| | | |
|---|---|---|
| 11:43 | 1 | borrower and then other.  What's listed there? |
| 11:43 | 2 | A    21933 Parthenia Street, LLC/Geoffrey Johnson. |
| 11:43 | 3 | Q    Thank you. |
| 11:43 | 4 |      When you worked at Eagan Avenatti, how did you do |
| 11:44 | 5 | wire transfers on behalf of Eagan Avenatti? |
| 11:44 | 6 | A    It's changed during the time.  Sometimes we would -- it |
| 11:44 | 7 | would be by an e-mail and it would go directly to the |
| 11:44 | 8 | banker, and then Michael would be copied and he would just |
| 11:44 | 9 | send an e-mail right after saying "approved." |
| 11:44 | 10 |      Sometimes -- eventually it was done online.  And |
| 11:44 | 11 | when it was done online, we had -- I would set up the e-mail |
| 11:44 | 12 | and then Michael would approve it.  The approval was sent a |
| 11:44 | 13 | couple different ways.  Sometimes it was sent by him sending |
| 11:44 | 14 | back an e-mail, and then later we had FOBs. |
| 11:44 | 15 | Q    What do you mean by FOBs? |
| 11:44 | 16 | A    FOBs is different numbers, kind of like a password type |
| 11:44 | 17 | thing.  So when I would log in, I would have to put the |
| 11:44 | 18 | number of my FOB; then Michael would log in and put in his |
| 11:44 | 19 | FOB.  And that's how you basically approve them. |
| 11:45 | 20 | Q    Who had authority to send wire transfers out of the |
| 11:45 | 21 | Eagan Avenatti accounts? |
| 11:45 | 22 |      MR. AVENATTI:  Objection.  Foundation. |
| 11:45 | 23 |      THE COURT:  Overruled. |
| 11:45 | 24 |      THE WITNESS:  I had authority with Michael's |
| 11:45 | 25 | approval, and Michael had full authority. |

| | | |
|---|---|---|
| 11:45 | 1 | BY MR. SAGEL: |
| 11:45 | 2 | Q    While you worked at Eagan Avenatti, did you know if |
| 11:45 | 3 | Michael Avenatti ever sent wire transfers on his own? |
| 11:45 | 4 | A    I don't recall.  He could have, but I honestly don't |
| 11:45 | 5 | recall. |
| 11:45 | 6 | Q    And when you sent a wire transfer, did you ever do so |
| 11:45 | 7 | without his permission? |
| 11:45 | 8 | A    No. |
| 11:45 | 9 | Q    I will have you look at Exhibit 100 now.  Is |
| 11:45 | 10 | Exhibit 100 an e-mail that you sent to the defendant? |
| 11:45 | 11 | A    Yes. |
| 11:46 | 12 | Q    Is it a true and accurate copy of the e-mail you sent |
| 11:46 | 13 | to the defendant? |
| 11:46 | 14 | A    Yes. |
| 11:46 | 15 |         MR. SAGEL:  At this time, Your Honor, the |
| 11:46 | 16 | government would move to admit Exhibit 100. |
| 11:46 | 17 |         MR. AVENATTI:  Your Honor, objection.  Hearsay, |
| 11:46 | 18 | relevance, 403, severance issue.  At a minimum I would ask |
| 11:46 | 19 | that it be redacted. |
| 11:46 | 20 |         THE COURT:  Exhibit 100 will be received.  Confer |
| 11:47 | 21 | with the government as to what you would like redacted. |
| 11:47 | 22 |         MR. AVENATTI:  Thank you, Your Honor. |
| 11:47 | 23 |         (Exhibit 100 received in evidence) |
| 11:47 | 24 | BY MR. SAGEL: |
| 11:47 | 25 | Q    If you could look at the top of the e-mail, this is an |

11:47   1   e-mail that you sent to defendant.  What's the date?

11:47   2   A    March 12th, 2018.

11:47   3   Q    And what's the subject line?

11:47   4   A    "Stuff."

11:47   5   Q    About six lines down there is a sentence that starts,

11:47   6   "I have."  Do you see that?

11:47   7   A    Yes.

11:47   8   Q    Would you read the sentence that starts "I have."

11:47   9   A    "I have a pending wire to Geoff that will need to be

11:47  10   approved as well as a check for his rent at the new place."

11:47  11   Q    When you say "I have a pending wire to Geoff that will

11:47  12   need to be approved," what do you mean by that?

11:47  13   A    Basically I had set up a wire and needed Michael to

11:48  14   approve it to release it.

11:48  15   Q    And the Geoff that's there, is that Mr. Johnson?

11:48  16   A    Yes, it is.

11:48  17   Q    This e-mail was on March 12th --

11:48  18   A    Yes.

11:48  19   Q    -- 2018?  If I could have you look at Exhibit 101.

11:48  20   A    (Witness complies.)

11:48  21   Q    Is Exhibit 101 an e-mail that you sent to the

11:48  22   defendant?

11:48  23   A    Yes, it is.

11:48  24   Q    Is it a fair and accurate copy of an e-mail you sent to

11:48  25   the defendant?

| | | |
|---|---|---|
| 11:48 | 1 | A    Yes. |
| 11:48 | 2 | MR. SAGEL:  At this time, Your Honor, the |
| 11:48 | 3 | government moves into evidence Exhibit 101. |
| 11:49 | 4 | MR. AVENATTI:  Hearsay. |
| 11:49 | 5 | THE COURT:  Overruled.  101 will be received. |
| 11:49 | 6 | (Exhibit 101 received in evidence) |
| 11:49 | 7 | BY MR. SAGEL: |
| 11:49 | 8 | Q    Is this another e-mail you sent to the defendant on |
| 11:49 | 9 | 3/12/2018? |
| 11:49 | 10 | A    Yes. |
| 11:49 | 11 | Q    And the subject line? |
| 11:49 | 12 | A    Yeah. |
| 11:49 | 13 | Q    If you could read the sentence you write right below |
| 11:49 | 14 | "Michael." |
| 11:49 | 15 | A    "I have a wire set up if you would like to send today. |
| 11:50 | 16 | I will just need codes." |
| 11:50 | 17 | Q    What do you mean by "I have a wire set up.  Just need |
| 11:50 | 18 | codes?" |
| 11:50 | 19 | A    Those are the authorization codes from the FOB. |
| 11:50 | 20 | Q    If this what you are referring to of what is needed for |
| 11:50 | 21 | him to authorize the wire? |
| 11:50 | 22 | A    Yes. |
| 11:50 | 23 | Q    Would you look at Exhibit 102. |
| 11:50 | 24 | A    (Witness complies.) |
| 11:50 | 25 | Q    Before I ask you specific questions, let me ask some |

| | | |
|---|---|---|
| 11:50 | 1 | foundational questions.  You mentioned that part of your |
| 11:50 | 2 | responsibilities at Eagan Avenatti is keeping track of costs |
| 11:50 | 3 | and fees; is that correct? |
| 11:50 | 4 | A    Yes. |
| 11:50 | 5 | Q    Are you familiar with a -- I don't know if it's a |
| 11:50 | 6 | program or software called QuickBooks? |
| 11:50 | 7 | A    Yes. |
| 11:50 | 8 | Q    As part of your responsibilities at Eagan Avenatti, did |
| 11:51 | 9 | you keep QuickBooks records for clients? |
| 11:51 | 10 | A    Yes, we did. |
| 11:51 | 11 | Q    When you say we did, the firm did? |
| 11:51 | 12 | A    The firm kept them, yes. |
| 11:51 | 13 | Q    And as part of your responsibilities, just you |
| 11:51 | 14 | individually, did you also have a role in keeping the |
| 11:51 | 15 | QuickBooks for clients? |
| 11:51 | 16 | A    Yes. |
| 11:51 | 17 | Q    And are you familiar with how the QuickBooks accounting |
| 11:51 | 18 | and records were kept by Eagan Avenatti for their clients? |
| 11:51 | 19 | A    Yes. |
| 11:51 | 20 | Q    Now looking at Exhibit 102, do you recognize what |
| 11:51 | 21 | Exhibit 102 is? |
| 11:51 | 22 | A    It appears to be a report created from QuickBooks. |
| 11:51 | 23 | Q    And do you know what client this is a QuickBooks report |
| 11:51 | 24 | for? |
| 11:51 | 25 | A    Geoff Johnson. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:51 | 1 | Q    How do you know that? |
| 11:51 | 2 | A    At the top left corner it says Johnson/001.  That was |
| 11:51 | 3 | the way we named the cases.  It would be the party's last |
| 11:52 | 4 | name, and the 001 would be the first case we have for the |
| 11:52 | 5 | party, 002 the second case, et cetera. |
| 11:52 | 6 | Q    Does this appear to be a fair and accurate copy of the |
| 11:52 | 7 | QuickBooks records kept by Eagan Avenatti on the Geoffrey |
| 11:52 | 8 | Johnson matter? |
| 11:52 | 9 | A    As far as I can tell, yes. |
| 11:52 | 10 | Q    And you reviewed this before today as well; is that |
| 11:52 | 11 | correct? |
| 11:52 | 12 | A    Yes, I have. |
| 11:52 | 13 |         MR. SAGEL:  At this time, Your Honor, the |
| 11:52 | 14 | government moves to admit Exhibit 102. |
| 11:52 | 15 |         MR. AVENATTI:  Objection, Your Honor.  Hearsay. |
| 11:52 | 16 |         THE COURT:  Overruled.  102 will be received. |
| 11:52 | 17 |         (Exhibit 102 received in evidence) |
| 11:52 | 18 |         MR. SAGEL:  Let's just blow up the top section |
| 11:52 | 19 | first. |
| 11:52 | 20 | BY MR. SAGEL: |
| 11:52 | 21 | Q    It says Eagan Avenatti, LLP, and then what's listed |
| 11:52 | 22 | underneath that? |
| 11:52 | 23 | A    "Income by customer detail.  January 2011 through |
| 11:53 | 24 | December 2018." |
| 11:53 | 25 | Q    And if we could look at the part that says Johnson/001. |

11:53   1   That's basically the very first line of this QuickBooks

11:53   2   report; is that correct?

11:53   3   A   Yes, it is.

11:53   4   Q   That's how you know what is the records for that

11:53   5   client?

11:53   6   A   Yes.

11:53   7   Q   And let's start generally.  What is being kept track of

11:53   8   in this report?

11:53   9   A   These are expenses related to the case, expert's fees,

11:53   10   outside consultants, postage, Federal Express.  Some of

11:53   11   these others are case related and case reimbursable, and I

11:53   12   can't really tell exactly what they are because it's not

11:53   13   listed on that sheet, but they're all case-related costs.

11:53   14   Q   Okay.  We talked about, I think it was, Exhibit 48 was

11:54   15   the cost bill for Mr. Johnson.  Do you recall going over

11:54   16   that document?

11:54   17   A   Yes.

11:54   18   Q   Was there more than one way that the firm kept track of

11:54   19   costs and expenses for the client?

11:54   20   A   Yes.  We had another program also that we kept costs

11:54   21   in.  It was called Timeslips.  I believe it was Timeslips.

11:54   22   I'm not sure.  We had two programs.

11:54   23   Q   And in addition to those programs -- was QuickBooks one

11:54   24   of the two, or is QuickBooks another one?

11:54   25   A   QuickBooks is one of the two.

11:54  1    Q    Okay.  So you used QuickBooks to keep track of costs

11:54  2    and expenses?

11:54  3    A    Yes.

11:54  4    Q    At whose direction did you keep track of the costs and

11:54  5    expenses on cases using QuickBooks?

11:54  6    A    At Michael's.  All the cases were in QuickBooks and in

11:54  7    the other programs.  QuickBooks also contained firm

11:54  8    expenses.

11:54  9    Q    And when you have payments, for example, in these

11:55  10   reports and these expenses you went over, do you know how

11:55  11   they were inputted into this report?

11:55  12   A    Like I say, I had an assistant at one point in time,

11:55  13   and she would input them, and then later I would input

11:55  14   them.

11:55  15   Q    When the expenses are being inputted into QuickBooks,

11:55  16   do you know whether or not monies were actually paid?

11:55  17   A    Not always.  Sometimes the expenses were input because

11:55  18   we'd receive a bill for the attorney service, and it's a

11:55  19   very large bill and it's got multiple cases on it.  When

11:55  20   that is put into QuickBooks, it's broken down in different

11:56  21   accounts.  And that bill isn't necessarily paid at that

11:56  22   point.  It would be paid later.

11:56  23   Q    As it relates to the information on this QuickBooks

11:56  24   record -- and let's just stick with this one for now -- what

11:56  25   is the purpose of why you were keeping the expenses and the

11:56   1    costs on the case in QuickBooks?

11:56   2    A    Again, this is for -- to do the cost bills at the

11:56   3    end.

11:56   4    Q    And who are the cost bills at the end for?

11:56   5    A    For the client.

11:56   6    Q    If I could have you turn -- actually, let me ask you a

11:56   7    general question.  If you were to look at, like, the

11:56   8    right-hand side, each time there is an expense or a cost,

11:56   9    it's kind of added -- well, let me ask a better question.

11:56  10    Each time an expense is added, the balance goes up; is that

11:56  11    fair to say?

11:57  12    A    Yes.

11:57  13    Q    Because on a contingency case, the only thing is costs

11:57  14    at that point; is that fair?

11:57  15    A    Yes.

11:57  16    Q    So if I could just have you generally look, the costs

11:57  17    for the Johnson matter that we are looking at generally

11:57  18    speaking continue to go up all the way to page 7; is that

11:57  19    fair?

11:57  20    A    Yes.

11:57  21    Q    And let's go to about six lines down, there is a

11:57  22    negative $467,000 entry.  Do you see that?

11:57  23    A    On page 7?

11:57  24    Q    Page 7 of 9.

11:57  25    A    How much was it for?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:57  1    Q    I believe the last one is negative $467,863.

11:58  2    A    Okay.  Yes, I see that.

11:58  3    Q    What's the date, if you're able to read across, the

11:58  4    date that has a $467,000 in the balance?

11:58  5    A    January 9th, 2015.

11:58  6    Q    Immediately under the January 9th entry, is there a

11:58  7    different word than bill?

11:58  8    A    There is a deposit.

11:58  9    Q    What's the date of that deposit?

11:58  10   A    January 29th, 2015.

11:58  11   Q    What's the amount of that deposit?

11:58  12   A    Four million.

11:58  13   Q    What does that $4 million deposit on January 9th, 2015,

11:58  14   represent?

11:58  15   A    Settlement.

11:58  16   Q    So according to the records of the Eagan Avenatti firm

11:59  17   kept in QuickBooks, as of the date of the deposit, the cost

11:59  18   for Mr. Johnson's matter was $467,000?

11:59  19            MR. AVENATTI:  Objection.  Foundation.  Misstates

11:59  20   the evidence.

11:59  21            THE COURT:  Overruled.

11:59  22            THE WITNESS:  Yes.

11:59  23   BY MR. SAGEL:

11:59  24   Q    Now, you will see in this QuickBooks record after the

11:59  25   deposit is made in 2015 -- let me ask a different question

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:59 | 1 | first and then I'll get to that.  When we were talking about |
| 11:59 | 2 | the cost bills, you said sometimes they're drafts because |
| 11:59 | 3 | there might need to be some additional costs that come in |
| 11:59 | 4 | right after the settlement; is that correct? |
| 11:59 | 5 | A    Yes, it is. |
| 11:59 | 6 | Q    Does that also apply to QuickBooks records? |
| 11:59 | 7 | A    Yes.  If we settle the case on January 19th, we may not |
| 11:59 | 8 | have all of the attorney slips and everything that go |
| 11:59 | 9 | through the date of settlement until the end of the month or |
| 12:00 | 10 | something. |
| 12:00 | 11 | Q    When you say the end of the month, how long does |
| 12:00 | 12 | it usually take to get the final records to do the cost |
| 12:00 | 13 | bill? |
| 12:00 | 14 |            MR. AVENATTI:  Objection.  Foundation. |
| 12:00 | 15 |            THE COURT:  Overruled. |
| 12:00 | 16 |            THE WITNESS:  It varies but anywhere from a few |
| 12:00 | 17 | days to we have had some cases take as long as a month. |
| 12:00 | 18 | BY MR. SAGEL: |
| 12:00 | 19 | Q    So between a few days and a month? |
| 12:00 | 20 | A    Yeah. |
| 12:00 | 21 | Q    Looking at this QuickBooks record, from January 29th |
| 12:00 | 22 | there are entries all the way -- if you would turn to page 9 |
| 12:00 | 23 | -- all the way through 2017 and 2018; is that correct? |
| 12:00 | 24 | A    Yes, there are. |
| 12:00 | 25 | Q    Why were QuickBooks records being kept on the Geoffrey |

| | | |
|---|---|---|
| 12:00 | 1 | Johnson matter for the next three years? |
| 12:00 | 2 | A    Because payments were being made out on his behalf. |
| 12:00 | 3 | Q    Now, are you referring to the living expenses and rent |
| 12:01 | 4 | payments? |
| 12:01 | 5 | A    Yes. |
| 12:01 | 6 | Q    And on these QuickBooks records, for example on page 7, |
| 12:01 | 7 | if you were to look at the bottom third, there are several |
| 12:01 | 8 | entries for a thousand, 1,900, $1,500.  Do you see that? |
| 12:01 | 9 | A    Yes. |
| 12:01 | 10 | Q    And those are, if you were to look to the left, are |
| 12:01 | 11 | checks in August and September and October of 2015.  Do you |
| 12:01 | 12 | see that? |
| 12:01 | 13 | A    Yes, I do. |
| 12:01 | 14 | Q    Why were you keeping track of these rental and living |
| 12:01 | 15 | expense payments on QuickBooks? |
| 12:01 | 16 | A    To keep a record on what was being spent on the Johnson |
| 12:01 | 17 | matter. |
| 12:01 | 18 | Q    Who told you to keep track of those things? |
| 12:01 | 19 | A    Michael. |
| 12:01 | 20 | THE COURT:  I think we will take the lunch break |
| 12:01 | 21 | here. |
| 12:02 | 22 | Ladies and gentlemen, we will be in recess |
| 12:02 | 23 | until 1:30.  Please remember the admonition not to discuss |
| 12:02 | 24 | the case with anyone and not to form any opinions on the |
| 12:02 | 25 | issues in the case until it is submitted to you.  And |

12:02  1   please don't do any research.  So we will see you at 1:30,

12:02  2   please.

12:02  3            (Jury not present)

12:02  4            THE COURT:  At the end of the discussion this

12:02  5   morning with regard to Rule 16(b)(1) and the defendant's

12:02  6   reciprocal obligations, Mr. Avenatti asked me if it were

12:03  7   correct that he would not be able to use in

12:03  8   cross-examination documents bearing government's Bates

12:03  9   numbers, and I said, "correct."  Obviously that's in the

12:03  10  context of not having disclosed that document.

12:03  11           Anything for the record before we adjourn?

12:03  12           MR. AVENATTI:  Your Honor, I'm happy to take this

12:03  13  up after the break, but after the break I'm going to be

12:03  14  moving for a mistrial, and I want to focus the Court's

12:03  15  attention on Exhibits 43 and 44 which were admitted into

12:03  16  evidence over my objection and published to the jury in

12:03  17  violation of Your Honor's ruling before the trial relating

12:03  18  to wealth evidence.

12:03  19           Your Honor, even under -- and I will take it up

12:03  20  now if you'd like, or --

12:03  21           THE COURT:  We'll take it up at the end of the

12:03  22  day.

12:03  23           MR. AVENATTI:  Thank you, Your Honor.  I would

12:03  24  just ask that there be no further instances of monies put

12:04  25  before the jury relating to expenses or personal expenses

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:04  1    without the proper foundation and in continued violation of
12:04  2    Your Honor's order, because those payments should have never
12:04  3    been put before the jury.  Even under their theory, Your
12:04  4    Honor, those payments came out of the $1.6 million attorney
12:04  5    fee.  Even under their theory there was absolutely no reason
12:04  6    to put that information before the jury as to how those
12:04  7    monies were spent.

12:04  8         THE COURT:  You recall that I prevented Mr. Sagel
12:04  9    from asking the question as to what the -- whatever the car
12:04  10   company name was.  I prevented him from asking the question
12:04  11   for what it was for.  If the question were did that money go
12:04  12   to purchase Mr. Avenatti a car, yes, but the fact that he's
12:04  13   moving money around is a different issue.

12:05  14        MR. AVENATTI:  Well, Your Honor, he actually asked
12:05  15   as to whether I made a payment to my ex-wife.  They
12:05  16   published the exhibit to the jury.  It was on the screen so
12:05  17   that everybody could see the payments, including the payment
12:05  18   to an art dealer among other things.

12:05  19        I mean, the exhibit speaks for itself.  It was
12:05  20   purposeful.  And at that point, Your Honor, even under their
12:05  21   theory the only amount of money that was deducted was
12:05  22   $1.6 million, which according to their theory was the
12:05  23   attorney fee.  Now, whether I spent that money on art, my
12:05  24   ex-wife, a car, or blew it gambling in Vegas is of no
12:05  25   relevance to this matter.

12:05   1            That's why we filed the motion.  And it should

12:05   2    have never been put before the jury, and it's highly

12:05   3    prejudicial.

12:05   4            THE COURT:  I will take a look at 43 and 44 and

12:05   5    we'll take it up at the end of the day.

12:05   6            MR. SAGEL:  May I make one comment, Your Honor?

12:05   7    It might be two.

12:05   8            First and foremost, our understanding of the

12:06   9    motion in-limine was anything that was just wealth by

12:06   10   itself, anything that is directly tied to client money, was

12:06   11   appropriate.

12:06   12           Mr. Avenatti, what he thinks our theory is, just

12:06   13   ignores the obvious that he's not entitled to take anything

12:06   14   until he has done things properly with his client.  He can't

12:06   15   just decide he gets 1.6 or take out his costs that are

12:06   16   bogus.  He has to -- and by the rules of California ethics,

12:06   17   which are in the instructions, he needs to go over it with

12:06   18   his client.

12:06   19           He can't just decide I'm going to take what I want

12:06   20   and spend it however I want.  That's why we're tracing the

12:06   21   money.  And just because he took 1.6 first, well, he takes

12:06   22   the full four million within a few months.  So there's no

12:06   23   real reason, then, to differentiate when and how he takes

12:06   24   the money.

12:06   25           THE COURT:  We'll continue the discussion with

```
12:06    1    regard to 43 and 44 at the end of the day.
12:06    2              MR. SAGEL:  Thank you, Your Honor.
12:06    3                   (Recess taken at 12:06 p.m.)
12:06    4                        *     *     *
12:06    5
12:06    6
12:06    7
12:06    8
12:06    9
12:06   10
12:06   11
12:06   12
12:06   13
12:06   14
12:06   15
12:06   16
12:06   17
12:06   18
12:06   19
12:06   20
12:06   21
12:06   22
12:06   23
12:06   24
12:06   25
```

12:06   1

12:06   2

12:06   3

12:06   4

12:06   5                              CERTIFICATE

12:06   6

12:06   7          I hereby certify that pursuant to Section 753,

12:06   8   Title 28, United States Code, the foregoing is a true and

12:06   9   correct transcript of the stenographically reported

12:06   10   proceedings held in the above-entitled matter and that the

12:06   11   transcript page format is in conformance with the

12:06   12   regulations of the Judicial Conference of the United States.

12:06   13

12:06   14   Date:  July 28, 2021

12:06   15

12:06   16
12:06                           /s/   Sharon A. Seffens  7/28/21
12:06   17                      _____
12:06                           SHARON A. SEFFENS, U.S. COURT REPORTER
12:06   18

        19

        20

        21

        22

        23

        24

        25

**MR. AVENATTI: [94]** 5/9 7/13 7/16 8/11 8/15
9/18 9/22 12/13 13/10 17/23 19/2 19/20 20/2
20/8 22/3 22/6 23/23 24/16 25/8 25/21 26/24
27/24 31/19 33/9 34/7 38/23 39/1 45/20 45/23
47/9 47/13 48/17 50/7 51/4 51/24 53/18 53/23
56/16 57/7 58/1 58/11 58/18 59/6 59/9 59/11
60/1 60/3 60/8 61/4 62/1 65/19 66/10 70/25
75/23 77/22 78/23 80/2 80/5 80/9 80/14 81/14
83/5 84/4 84/24 89/4 90/14 91/13 93/1 94/1
95/14 96/5 97/7 98/11 99/23 102/8 103/18
104/10 105/2 105/21 108/21 110/1 111/20
116/4 118/9 119/22 120/17 122/22 122/4
124/15 128/19 129/14 131/12 131/23 132/14
**MR. SAGEL: [76]** 5/5 5/19 9/10 9/13 9/16
10/13 11/14 12/11 20/18 21/5 21/15 22/12
23/10 23/14 23/16 39/5 44/4 45/18 46/1 46/5
46/7 46/9 47/11 47/19 51/3 51/21 52/6 53/15
54/1 54/5 54/25 57/5 59/24 61/24 65/17 65/22
70/23 71/22 74/2 75/21 78/21 80/1 80/7 80/17
81/10 84/9 84/20 85/4 85/8 89/2 89/6 89/13
90/12 93/24 95/12 97/5 97/13 98/7 98/20
102/4 104/8 105/20 106/6 108/19 110/15
110/18 111/18 114/22 116/2 118/7 120/15
122/2 124/13 124/18 133/6 134/2
**MR. WYMAN: [21]** 21/19 24/17 27/17 27/22
29/21 30/2 30/18 30/23 31/8 31/21 33/7 33/12
34/5 34/10 34/12 34/14 34/23 35/15 37/25
38/8 38/25
**THE CLERK: [5]** 5/3 25/4 39/8 39/12 39/14
**THE COURT: [130]** 5/8 5/13 7/12 7/15 8/8
8/14 9/2 9/12 9/14 9/17 9/21 9/23 11/5 12/9
12/12 12/22 14/4 18/25 19/17 19/22 20/5
20/11 21/3 21/6 21/16 21/25 22/5 22/10 23/8
23/12 23/15 23/22 24/13 24/18 25/2 25/7
27/23 29/22 30/3 30/19 30/24 31/9 31/20
33/10 34/9 34/11 34/13 38/2 38/10 38/24 39/3
39/15 39/19 45/22 45/25 46/3 46/8 47/16
47/21 48/18 50/8 51/7 51/12 52/1 53/21 54/3
56/17 57/9 58/2 58/12 58/20 59/4 59/8 59/10
60/2 60/5 60/9 61/6 62/2 65/20 66/12 71/1
73/15 74/1 75/24 77/23 78/25 79/24 80/4
80/12 80/15 80/19 81/16 83/7 84/6 85/2 85/6
85/9 89/8 90/15 91/15 93/3 94/2 95/15 96/6
97/9 98/14 99/4 102/10 103/19 104/11 105/3
105/22 108/22 110/2 111/22 116/5 118/10
119/23 120/20 122/5 124/16 128/21 129/15
130/20 131/14 131/21 132/13 133/4 133/25
**THE WITNESS: [23]** 25/6 30/4 31/10 39/10
39/13 39/18 48/19 56/4 58/3 58/13 61/7
77/24 84/7 91/16 93/4 96/7 103/20 105/4
110/3 119/24 128/22 129/16

**$**

**$1,294.38 [1]** 48/3
**$1,500 [1]** 130/8
**$1,660,000 [1]** 74/22
**$1,660,339.68 [2]** 74/14 75/6
**$1,900 [1]** 94/15
**$1.6 [9]** 55/21 56/1 56/4 56/7 63/15 74/15
84/1 132/4 132/22
**$1.6 million [7]** 55/21 56/1 56/7 74/15 84/1
132/4 132/22
**$16,695 [4]** 70/7 83/11 83/14 83/17
**$175,000 [4]** 82/6 82/12 82/19 82/21
**$18,000 [1]** 70/5
**$183,679 [1]** 78/7
**$2,776.43 [3]** 71/13 71/14 72/14
**$200,000 [1]** 83/3
**$218,182 [1]** 80/24
**$250,000 [1]** 61/11
**$26,500 [1]** 58/13
**$352,866.88 [1]** 68/22
**$386,893.38 [1]** 69/2
**$4 [5]** 56/2 62/13 74/7 91/9 128/13
**$4 million [5]** 56/2 62/13 74/7 91/9 128/13
**$41,427.43 [1]** 48/1
**$42.50 [1]** 48/5
**$43,000 [1]** 48/16

**$467,000 [3]** 127/22 128/4 128/18
**$469,863 [1]** 69/11
**$50,300 [1]** 48/22
**$736,000 [2]** 82/20 82/25
**$736,883.89 [1]** 68/17 69/11 72/14

**'**

**'case [1]** 15/2
**'offered [1]** 15/13

**/**

**/s [1]** 135/16

**0**

**001 [3]** 124/2 124/4 124/25
**002 [1]** 124/5
**0870 [1]** 1/21

**1**

**1,100 [1]** 94/15
**1,810,000 [1]** 87/14
**1,900 [1]** 130/8
**1-1053 [1]** 1/20
**1.6 [2]** 133/15 133/21
**1.6 million [2]** 55/20 91/12
**10 [4]** 13/20 85/1 98/13 102/9
**100 [8]** 3/22 117/12 117/14 120/9 120/10
120/16 120/20 120/23
**101 [6]** 3/23 121/19 121/21 122/3 122/5 122/6
**102 [8]** 3/19 3/23 122/23 123/20 123/21
124/14 124/16 124/17
**104 [1]** 3/19
**105 [1]** 3/20
**1053 [1]** 1/20
**107 [1]** 2/16
**108 [1]** 3/20
**10:06 p.m [1]** 115/18
**10:15 [1]** 73/23
**10:33 [1]** 73/24
**10:53 p.m [2]** 27/5 27/11
**11 [15]** 3/15 16/12 40/10 40/10 40/14 51/22
81/3 81/5 81/7 81/13 81/18 84/21 98/8 113/4
113/4
**1100 [1]** 2/7
**112 [1]** 3/21
**112,000 [1]** 49/14
**116 [1]** 3/21
**118 [1]** 3/22
**11:30 [1]** 28/13
**11:33 [1]** 26/16
**11:33 a.m [1]** 26/9
**11:40 a.m [1]** 27/10
**12 [6]** 27/13 27/15 34/23 85/1 98/13 102/9
**12/1 [1]** 48/23
**120 [1]** 3/22
**122 [1]** 3/23
**124 [19]** 3/9 3/23 28/21 28/23 29/1 29/8 29/12
29/14 29/25 29/25 30/22 33/17 34/2 34/6 34/9
34/11 34/13 34/15 34/24
**12:06 [1]** 134/3
**12th [5]** 85/21 86/15 87/23 121/2 121/17
**13 [2]** 35/15 70/1
**136 [1]** 15/18
**137 [1]** 15/18
**13th [1]** 117/6
**14 [1]** 36/13 70/1 70/4
**15 [1]** 13/20 37/14 73/17
**150,289 [1]** 76/14
**15th [2]** 75/19 76/5
**16 [8]** 14/13 15/7 16/4 17/13 18/3 20/15 26/8
131/5
**16,695 [1]** 77/7
**16th [4]** 115/8 115/17 117/6 118/17
**17,808 [1]** 77/7
**17330 [1]** 106/22
**183,679 [1]** 76/14
**19 [1]** 36/14
**1974 [1]** 13/14
**1985 [1]** 16/1

**1986 [1]** 13/15
**19th [1]** 123/7
**1:30 [2]** 130/23 131/1
**1st [4]** 69/25 83/12 83/15 83/18

**2**

**2.4 million [1]** 72/5
**200 [1]** 21/18
**2011 [2]** 15/10 124/23
**2012 [7]** 69/25 75/19 76/5 80/23 83/9 83/12
83/15
**2013 [2]** 79/7 82/8
**2014 [9]** 16/17 44/24 45/5 46/15 47/6 82/17
85/21 86/15 87/23
**2015 [28]** 52/14 57/15 58/22 59/19 59/22
62/11 62/17 65/9 65/15 71/18 72/10 75/6 86/7
86/11 87/17 88/20 88/25 89/21 90/19 91/9
101/10 101/13 101/17 128/5 128/10 128/13
128/25 130/11
**2016 [2]** 94/9 95/19
**2017 [16]** 16/18 26/8 35/7 36/15 36/23 97/16
102/24 104/16 104/20 106/5 109/1 109/9
111/3 115/8 118/17 129/23
**2018 [6]** 15/18 121/2 121/19 122/9 124/24
129/23
**2019 [3]** 16/13 40/2 40/8
**2021 [4]** 1/17 5/1 7/21 135/14
**20th [1]** 102/24
**21 [4]** 44/3 44/4 44/5 135/16
**213 [1]** 2/8
**21923 [1]** 119/2
**21933 [2]** 113/3 119/2
**21st [1]** 36/23
**22nd [5]** 6/13 44/24 46/15 47/6 49/25
**23rd [3]** 6/17 6/22 79/7
**24 [2]** 7/20 8/6
**24th [1]** 37/15
**25 [9]** 3/6 3/15 84/12 84/14 84/21 85/7 85/8
85/13 86/14
**250,000 [1]** 60/15
**25th [2]** 40/2 40/8
**260 [6]** 3/18 96/20 96/21 97/6 97/11 97/14
**26th [1]** 6/15
**27 [9]** 1/17 3/10 5/1 45/8 45/10 45/19 46/6
46/7 46/11
**28 [2]** 135/8 135/14
**28th [1]** 48/22
**298 [1]** 16/16
**29th [6]** 52/14 52/24 55/8 55/12 128/10
129/21
**2:13 p.m [1]** 6/13
**2nd [2]** 109/1 109/9

**3**

**3/12/2018 [1]** 122/9
**30-minute [1]** 23/19
**308 [1]** 13/14
**30th [12]** 55/15 55/18 57/15 58/6 58/15 58/22
59/19 59/22 69/25 76/21 83/9 95/19
**31 [1]** 3/6
**311 [1]** 15/17
**312 [1]** 2/7
**31st [4]** 80/23 82/8 94/9 111/3
**325 [1]** 15/17
**326 [2]** 34/25 35/2
**33 [1]** 3/9
**331 [2]** 35/16 35/19
**336 [1]** 35/23
**338-3598 [1]** 2/12
**34 [1]** 3/9
**340 [1]** 35/16
**351 [1]** 36/13
**353 [1]** 36/22
**356 [6]** 3/19 102/2 102/5 102/12 102/14
102/16
**357 [1]** 37/7
**3598 [1]** 2/12
**364 [1]** 37/14
**365 [1]** 37/14

**3**
**378** [6] 3/18 98/5 98/17 98/19 98/21 101/15
**379** [7] 3/18 98/5 98/17 98/19 100/9 100/11 101/15
**38** [1] 3/6
**380** [5] 3/18 98/6 98/18 98/19 101/2
**39** [1] 3/6
**391** [7] 3/11 53/16 54/4 54/6 71/23 72/1 74/4
**393** [4] 21/22 84/22 85/4 85/10
**394** [6] 52/2 53/17 53/22 98/9 98/15 102/5
**397** [1] 21/22
**3rd** [4] 62/11 62/16 62/17 106/5

**4**
**40 percent** [3] 56/3 63/1 63/12
**400,000** [1] 52/16
**403** [11] 13/1 14/6 30/18 30/23 45/21 53/24 60/8 61/5 78/24 81/15 120/18
**408** [1] 81/15
**41** [6] 3/10 51/1 51/3 51/22 52/5 55/13
**411** [2] 1/20 2/11
**415** [1] 13/13
**42** [2] 100/19 100/19
**43** [9] 3/12 59/13 59/15 59/17 59/25 60/7 131/15 133/4 134/1
**44** [8] 3/11 56/21 56/24 57/6 57/11 131/15 133/4 134/1
**46** [7] 3/10 3/12 61/14 61/16 61/25 62/3 72/18
**474** [1] 16/16
**475** [1] 13/15
**476-77** [1] 16/16
**48** [14] 3/13 22/13 23/20 65/4 65/6 65/18 65/21 71/20 72/16 72/18 72/20 82/9 82/15 125/14
**481-4900** [1] 2/17
**49** [1] 72/16
**4900** [1] 2/17
**4:27** [1] 6/15
**4th** [13] 1/20 65/9 65/15 66/3 72/10 74/7 74/12 74/13 74/15 74/18 75/5 84/2 84/7

**5**
**50** [7] 3/13 70/13 70/15 70/16 70/24 71/2 72/20
**52** [1] 3/10
**54** [1] 3/11
**543-0870** [1] 1/21
**550** [1] 94/14
**57** [7] 3/11 3/16 88/17 89/3 89/8 89/12 90/7
**574** [1] 16/1
**58** [5] 3/16 90/4 90/6 90/13 90/16
**580** [1] 9/24
**586** [1] 9/24
**587** [1] 21/7
**592** [1] 12/24
**596** [6] 21/11 51/25 53/19 85/1 98/13 102/9
**5:06** [1] 21/16
**5th** [1] 76/20

**6**
**60** [1] 3/12
**60,000** [1] 59/1
**616** [2] 14/18 16/18
**62** [1] 3/12
**624** [1] 16/18
**624-625** [1] 14/18
**625** [1] 14/18
**65** [1] 3/13
**659** [1] 15/10
**6683** [1] 2/8
**673** [1] 13/15
**69** [5] 3/17 93/13 93/15 93/25 94/3
**6:01 p.m** [1] 7/20
**6th** [1] 82/17

**7**
**7/28/21** [1] 135/16
**704** [2] 14/18 16/18
**71** [1] 3/13

**714** [2] 1/21 2/12
**73** [6] 3/17 75/6 75/8 75/9 75/11 75/16
**75** [7] 3/14 3/19 103/23 103/25 104/2 104/9 104/13
**753** [1] 135/7
**767** [1] 15/25
**768** [1] 16/9
**77** [1] 16/16
**78** [5] 3/20 105/10 105/12 105/20 105/25
**79** [4] 3/14 110/17 110/18 110/19
**7:00 a.m** [1] 23/4

**8**
**8000** [1] 2/11
**81** [1] 3/15
**85** [6] 3/15 3/20 108/12 108/14 108/20 108/23
**87** [5] 3/21 111/7 111/9 111/19 112/1
**89** [1] 3/16
**894-6683** [1] 2/8
**8:29** [1] 5/1
**8:59** [1] 24/24
**8th** [2] 35/18 35/19

**9**
**90** [1] 3/16
**90012** [1] 2/8
**902** [4] 52/2 84/21 98/8 98/16
**903** [1] 15/10
**908-909** [1] 15/10
**909** [1] 15/10
**91406** [1] 106/23
**92672** [1] 2/16
**92701** [2] 1/20 2/11
**93** [5] 3/9 32/3 32/5 33/8 33/13
**94** [6] 3/17 3/21 115/15 115/17 116/3 116/8
**949** [1] 2/17
**95** [9] 3/17 3/22 117/1 117/23 117/25 118/5 118/8 118/10 118/12
**96** [5] 3/20 116/14 114/18 114/22 116/12
**97** [2] 3/18 27/24
**98** [1] 3/18
**9:06** [1] 24/25
**9:10 p.m** [1] 115/6
**9th** [4] 35/18 128/5 128/6 128/13

**A**
**a.m** [9] 5/1 23/4 24/24 24/25 26/9 27/10 28/13 73/23 73/24
**AA** [3] 48/4 48/9 48/9
**ability** [2] 31/4 107/2
**able** [8] 10/18 22/23 23/1 29/16 30/11 64/2 128/3 131/7
**about** [58] 6/8 6/13 6/16 7/2 7/3 7/9 8/1 10/19 12/20 14/4 14/5 14/6 16/3 19/3 19/6 19/7 20/21 23/15 25/13 26/4 26/22 28/2 28/7 29/4 31/6 32/2 32/3 32/8 32/11 32/12 33/16 34/19 35/13 38/15 41/15 41/17 45/1 46/2 58/15 62/12 63/22 69/25 70/1 70/4 70/5 72/7 75/19 88/5 94/18 97/24 110/7 111/4 114/2 116/11 121/5 125/14 127/21 129/1
**above** [11] 26/14 26/24 68/18 87/21 87/22 87/23 94/17 107/1 108/7 112/24 135/10
**above-entitled** [1] 135/10
**above-referenced** [1] 107/1
**absolutely** [1] 132/5
**abundance** [1] 7/7
**accepted** [1] 112/22
**access** [3] 18/16 19/21 19/23
**accommodate** [1] 24/21
**accord** [1] 16/17
**according** [3] 27/4 128/16 132/22
**account** [36] 5/25 6/25 7/1 7/5 41/23 47/24 48/2 48/4 48/23 54/9 54/14 54/15 55/5 55/22 56/9 56/10 56/13 56/14 56/14 72/4 72/7 74/8 74/13 84/2 91/9 98/25 99/10 99/16 99/18 100/16 100/17 100/25 102/16 102/18 103/3
**accounting** [6] 41/15 67/20 68/4 69/17 69/18 123/17
**accountings** [2] 67/18 68/1

**accounts** [16] 42/22 42/23 42/24 42/25 43/1 47/18 48/3 48/13 92/10 92/21 93/3 93/6 93/7 100/6 119/21 126/21
**accuracy** [1] 83/22
**accurate** [27] 33/4 34/2 45/15 57/2 59/21 61/21 65/11 65/14 67/10 70/20 75/2 75/5 75/18 78/18 83/24 88/24 90/9 93/21 95/9 97/2 104/5 105/17 108/16 111/15 120/12 121/24 124/6
**across** [3] 66/21 66/23 128/3
**acted** [1] 11/8
**actually** [13] 7/22 19/20 20/2 22/18 27/1 67/25 70/15 84/3 92/23 117/14 126/16 127/6 132/14
**add** [1] 69/10
**added** [3] 67/7 127/9 127/10
**Adding** [1] 37/8
**addition** [3] 6/5 86/9 125/23
**additional** [4] 67/2 67/6 91/25 129/3
**address** [7] 94/10 94/13 110/21 110/22 110/24 113/20 116/14
**addressing** [1] 41/5
**adjourn** [1] 131/11
**admission** [1] 105/24
**admissions** [1] 21/8
**admit** [24] 33/8 34/6 45/19 53/16 54/2 59/25 61/25 65/18 75/22 78/22 84/21 89/3 90/13 93/25 95/13 97/6 102/5 105/20 108/19 111/19 116/3 118/7 120/16 124/14
**admitted** [4] 27/25 28/5 81/11 131/15
**admittedly** [1] 18/16
**admitting** [1] 98/8
**admonition** [2] 73/18 130/23
**advanced** [3] 71/10 71/16 87/11
**advances** [6] 63/8 67/23 68/19 68/21 69/7 69/14 69/21
**advice** [1] 21/8
**advised** [1] 106/23
**advisory** [3] 2/15 5/10 18/25
**affirm** [1] 102/12
**affirmed** [1] 106/22
**after** [34] 6/7 6/7 15/2 16/23 22/13 22/14 24/14 24/18 27/11 54/22 62/12 64/3 66/4 66/8 67/3 67/3 68/4 76/10 76/14 91/2 91/8 91/8 94/18 99/7 106/18 107/9 111/5 115/12 116/11 119/9 128/24 129/4 131/13 131/13
**again** [11] 14/3 15/5 19/3 19/6 33/19 66/3 71/23 95/21 96/1 118/25 127/2
**against** [2] 79/9 79/19 82/4
**agent** [6] 5/6 37/8 37/12 71/22 110/15 110/19
**agents** [2] 21/10 31/13
**ago** [2] 29/17 37/18
**agree** [1] 82/5
**agreed** [1] 63/10
**agreement** [12] 23/18 53/5 62/8 62/15 62/17 63/10 81/8 81/21 91/23 92/1 92/15 94/21
**agreements** [1] 53/8
**air** [1] 18/14
**Alaska** [1] 13/13
**alerted** [1] 23/4
**Alex** [1] 5/6
**ALEXANDER** [1] 2/5
**all** [49] 8/24 12/3 16/11 17/7 19/17 21/17 24/11 24/13 29/2 30/10 37/14 43/2 44/13 44/17 45/25 57/23 63/8 64/8 64/11 66/17 67/15 68/5 69/4 69/7 69/10 82/3 82/25 83/18 86/8 92/18 92/19 92/21 93/5 94/25 98/18 99/10 100/21 100/24 101/15 101/17 101/21 107/3 109/22 125/13 126/6 127/18 129/8 129/22 129/23
**all-cash** [1] 107/3
**allegedly** [1] 21/10
**almost** [2] 27/13 116/11
**along** [3] 111/10 111/16 114/19
**already** [3] 98/14 110/18 114/22
**also** [19] 6/11 6/15 6/23 9/19 33/15 40/23 53/23 59/19 77/20 82/25 94/15 103/5 113/25 115/22 118/17 123/14 125/20 126/7 129/6
**alternative** [1] 15/13

## A

**although [1]** 17/12
**always [2]** 20/6 126/17
**am [6]** 19/3 23/25 29/4 91/7 93/12 113/16
**Amendment [1]** 13/12
**AMERICA [2]** 1/9 5/4
**among [1]** 132/18
**amount [18]** 41/13 49/12 50/20 52/15 67/21 67/22 67/23 67/24 69/20 72/12 74/25 76/13 77/3 78/3 78/7 82/11 128/11 132/21
**amounts [5]** 72/12 72/15 72/22 74/18 77/6
**Ana [4]** 1/16 1/20 2/11 5/1
**Andrew [1]** 49/13
**Angeles [5]** 2/8 43/16 87/2 87/13 107/5
**annoy [1]** 3/17
**another [15]** 10/15 28/2 36/20 56/9 56/13 56/14 60/13 82/4 95/18 96/3 101/9 118/14 122/8 125/20 125/24
**answer [2]** 14/2 30/9
**answered [5]** 27/22 30/2 30/18 30/23 38/8
**any [40]** 9/7 13/8 13/17 17/4 17/21 18/13 18/17 20/7 22/25 25/17 26/19 27/15 28/18 31/5 31/13 31/13 35/10 37/17 38/13 38/18 38/19 42/13 43/17 43/25 46/1 63/1 67/9 73/19 73/21 87/11 91/10 92/5 99/20 100/2 100/5 107/6 113/17 117/16 130/24 131/1
**anybody [3]** 7/8 100/3 100/6
**anyone [2]** 73/19 130/24
**anything [19]** 5/18 7/9 12/12 17/22 29/15 29/25 30/4 30/12 35/20 36/24 73/5 73/9 73/12 91/1 91/2 131/11 133/9 133/10 133/13
**Anyway [1]** 46/21
**anywhere [2]** 18/18 129/16
**apart [1]** 8/15
**apologize [1]** 103/22
**appear [3]** 83/24 84/17 124/6
**APPEARANCES [1]** 2/1
**appearing [1]** 5/10
**appears [7]** 7/19 17/12 27/9 29/15 36/14 115/12 123/22
**appellant's [1]** 16/20
**appellants [1]** 14/19
**appellants' [2]** 14/25 15/8
**application [2]** 76/12 118/20 118/23
**apply [1]** 129/6
**applying [3]** 76/13 76/14 78/7
**appointment [1]** 6/20
**appreciate [1]** 11/14
**appropriate [1]** 133/11
**approval [2]** 36/11 119/12 119/25
**approve [7]** 73/10 73/13 95/2 117/18 119/12 119/19 121/14
**approved [4]** 94/25 119/9 121/10 121/12
**approves [1]** 37/10
**approximate [3]** 87/4 87/8 113/4
**approximately [9]** 40/10 48/16 49/13 56/3 65/1 66/3 66/8 84/2 100/19
**Appx [2]** 14/18 16/18
**April [3]** 69/25 83/9 94/14
**April 30th [2]** 69/25 83/9
**are [89]** 6/1 6/2 7/6 10/5 11/17 11/17 12/7 15/20 16/12 21/13 21/21 22/15 24/14 25/4 25/4 28/13 28/14 36/22 36/25 37/2 37/15 37/20 39/4 43/25 46/22 47/1 47/2 47/4 47/7 48/14 48/25 52/25 53/25 54/22 57/20 57/24 64/9 66/7 67/10 69/7 69/14 70/1 70/7 71/14 72/12 72/15 72/22 72/24 77/14 77/14 79/12 80/23 81/23 83/19 83/20 89/6 94/24 96/23 97/2 99/9 100/18 100/24 101/1 101/13 101/17 107/24 109/22 112/12 114/19 115/2 122/19 122/20 123/5 123/17 125/9 125/11 125/12 126/15 127/4 127/17 129/22 129/24 130/3 130/7 130/10 130/10 133/15 133/17
**argue [1]** 14/19
**argued [1]** 15/21
**Argumentative [1]** 29/21
**around [4]** 45/4 79/11 104/20 132/13
**Arsdall [1]** 13/14
**art [1]** 132/18 132/23

**as [94]** 7/8 7/24 8/23 10/5 12/8 13/18 13/22 20/21 21/25 22/7 23/8 27/8 34/11 37/21 37/21 38/12 38/18 40/8 41/1 41/4 41/8 42/13 43/21 43/21 43/24 47/6 48/25 49/12 51/19 53/7 53/19 56/19 56/24 59/10 63/10 64/9 65/12 67/5 71/20 72/15 72/24 73/7 74/7 74/15 76/11 76/12 80/10 80/23 83/10 83/12 83/15 84/7 84/22 84/23 84/25 84/25 87/22 89/4 89/4 93/1 96/13 99/23 102/10 104/23 109/13 110/24 115/18 116/19 117/14 117/17 118/22 120/21 121/10 121/10 123/8 123/13 124/9 124/9 124/10 126/23 128/17 129/17 129/17 132/6 132/9 132/15
**aside [1]** 93/10
**ask [27]** 7/8 8/17 22/8 13/7 23/25 24/11 30/25 36/19 36/21 37/1 39/1 39/15 41/25 46/1 47/13 73/12 75/8 91/2 93/18 96/10 120/18 122/25 122/25 127/6 127/9 128/25 131/24
**asked [28]** 13/6 22/22 22/22 26/4 27/22 28/2 28/7 28/10 30/8 30/23 32/2 32/11 33/24 38/8 38/14 40/11 42/19 57/22 57/25 60/20 62/19 95/24 110/12 110/25 111/4 131/6 132/14
**asking [12]** 5/22 8/24 11/16 29/20 30/8 30/10 32/3 32/8 33/16 94/24 132/9 132/10
**assistant [6]** 2/4 2/6 2/10 42/15 64/10 126/12
**Associates [3]** 48/10 48/12 102/18
**assumes [1]** 75/2
**assuming [3]** 69/13 69/13 75/5
**attached [5]** 67/24 76/11 76/15 86/6 112/10
**attachment [23]** 57/3 57/20 61/18 61/22 65/12 65/14 66/14 66/16 71/6 75/16 79/8 88/22 88/25 89/5 89/6 89/9 89/10 89/18 105/15 105/18 107/18 115/20 118/2
**attachments [9]** 78/15 78/19 79/25 111/16 111/23 112/6 112/12 116/5 118/11
**attempt [1]** 13/22
**attempted [2]** 13/18 18/12
**attempts [1]** 18/8
**attending [1]** 41/7
**attention [5]** 8/6 26/7 82/7 82/17 131/15
**attorney [17]** 2/3 2/4 2/6 2/10 25/17 36/10 54/11 54/13 55/19 56/13 62/25 64/13 72/7 126/18 129/8 132/4 132/23
**attorney/client [5]** 54/11 54/13 55/19 56/13 72/7
**attorneys [4]** 31/14 64/12 65/2 67/15
**attorneys' [4]** 55/23 67/22 87/5 87/8
**attributed [1]** 41/24
**audience [1]** 8/1
**August [9]** 35/7 35/18 35/19 35/23 36/14 36/23 37/15 95/19 130/11
**August 19 [1]** 36/14
**August 21st [1]** 36/23
**August 24th [1]** 37/15
**August 30th [1]** 95/19
**August 4 [1]** 35/7
**August 8th [2]** 35/18 35/19
**August 9th on [1]** 35/23
**authenticate [2]** 52/2 85/10
**authentication [4]** 34/8 84/25 97/8 98/12
**authorities [1]** 15/15
**authority [5]** 15/21 100/6 119/20 119/24 119/25
**authorization [2]** 103/17 122/19
**authorize [2]** 92/10 122/21
**authorized [4]** 21/7 21/10 92/21 103/11
**Autosport [4]** 58/16 58/23 58/25 59/2
**available [5]** 6/23 28/12 28/18 39/2 49/4 49/5 49/16
**AVENATTI [124]** 1/11 2/14 5/4 5/10 7/2 7/4 7/12 9/17 9/23 10/3 11/8 13/2 21/6 21/12 23/22 25/7 37/13 38/2 40/4 40/6 40/7 40/9 40/11 42/2 42/12 42/22 43/6 43/10 44/8 44/11 44/18 45/13 46/19 48/8 48/10 48/11 48/25 54/10 54/12 56/5 56/9 56/11 56/14 56/25 57/3 57/21 58/10 59/17 59/22 60/11 61/22 62/10

63/1 67/17 71/11 74/19 76/3 76/9 77/15 78/19 80/25 81/9 81/9 81/24 81/24 82/4 82/5 84/18 87/8 88/2 89/10 90/22 91/2 91/5 92/2 93/4 93/5 94/24 95/3 95/6 95/10 96/24 96/25 97/3 99/2 99/15 99/19 100/2 100/3 100/4 100/4 100/5 100/17 100/24 102/18 104/23 105/13 105/18 105/23 107/21 108/7 109/13 117/15 119/4 119/5 119/22 120/2 120/3 123/2 123/8 123/18 124/7 124/21 128/16 131/6 132/12 133/12
**Avenatti's [3]** 90/18 90/25 96/17
**Avenida [2]** 2/16
**awards [1]** 54/19
**aware [11]** 18/17 18/22 19/7 19/12 25/19 28/15 43/19 79/15 80/25 91/7 93/12
**away [1]** 50/4

## B

**back [22]** 8/9 18/21 19/25 36/3 36/6 36/9 36/10 36/18 37/20 41/25 47/20 56/22 68/10 70/12 82/9 82/24 103/23 107/11 107/13 109/23 110/5 119/14
**backwards [1]** 117/19
**balance [2]** 55/4 55/6 72/3 74/12 74/22 127/10 128/4
**balances [3]** 47/1 47/3 74/12
**Balboa [1]** 106/23
**bank [8]** 42/18 42/22 42/24 43/1 48/22 84/23 85/16 85/19
**banker [1]** 119/8
**banks [1]** 48/15
**Bar [2]** 54/10 72/6
**Barela [1]** 23/17
**Barela-Brock [1]** 23/17
**Baristas [5]** 60/17 60/19 60/22 60/23 61/3 61/11
**based [14]** 5/24 36/7 48/14 53/24 54/12 54/23 56/12 60/18 61/1 63/3 81/11 84/21 84/22 88/2
**basically [10]** 23/16 23/18 41/11 63/7 67/21 79/21 105/6 119/19 121/13 125/1
**basis [1]** 107/3
**Bates [5]** 18/2 18/9 19/10 20/10 131/8
**Bates-stamped [1]** 20/10
**be [140]**
**bear [1]** 18/2
**bearing [1]** 131/8
**because [25]** 10/17 10/18 11/3 15/3 15/7 16/24 18/20 19/4 19/21 20/25 22/15 22/17 28/16 50/1 64/25 66/24 67/1 77/14 125/12 126/17 127/13 129/2 130/2 132/2 133/21
**been [29]** 6/18 7/2 7/22 8/5 12/14 12/16 13/6 13/16 13/24 13/24 18/2 18/12 19/9 20/14 23/8 23/24 24/7 37/4 51/12 53/1 59/7 66/25 67/15 69/16 73/5 74/8 81/10 132/3 133/2
**before [31]** 6/6 7/4 8/9 13/20 22/8 26/21 27/9 32/22 32/24 34/18 54/16 54/20 54/21 55/5 64/21 64/23 64/25 72/8 85/15 92/23 95/2 110/6 117/14 122/25 124/10 131/11 131/17 132/5 132/3 132/6 132/9
**beginning [2]** 7/1 32/1
**behalf [6]** 10/21 71/17 103/8 103/9 119/5 130/2
**behind [2]** 44/3 53/14
**being [17]** 6/9 6/16 9/6 38/13 38/19 38/21 56/7 58/25 64/2 69/21 91/7 92/21 125/7 126/15 129/25 130/2 130/16
**belief [1]** 87/22
**believe [28]** 6/1 8/12 8/21 9/2 10/3 11/15 17/24 18/7 19/5 21/21 28/7 28/25 30/1 32/15 40/10 45/7 51/1 60/25 73/7 78/20 83/20 88/7 91/4 100/8 110/18 111/6 125/21 128/1
**below [9]** 11/12 36/22 55/15 86/5 87/20 87/25 113/2 115/13 122/13
**benefit [1]** 13/19
**benefits [1]** 11/22
**best [6]** 14/3 23/19 29/1 29/7 30/21 87/21
**better [1]** 127/9
**between [15]** 22/20 45/12 45/16 48/15 69/25

## B

**between** [10] 70/4 73/6 76/20 77/6 92/1 93/17 97/3 105/12 117/6 129/19
**beyond** [4] 12/17 12/21 38/9 38/10
**big** [3] 8/17 24/11 66/20
**bill** [19] 66/2 66/8 67/25 68/11 73/2 73/5 73/10 73/13 77/3 82/18 82/20 82/24 83/3 125/15 126/18 126/19 126/21 128/7 129/13
**billing** [1] 62/22
**bills** [7] 67/10 77/9 82/14 117/16 127/2 127/4 129/2
**binder** [4] 53/13 56/22 102/2 103/23
**binders** [2] 21/21 43/25
**bit** [1] 88/4
**blew** [1] 132/24
**blow** [3] 54/25 106/6 124/18
**bogus** [1] 133/16
**bolded** [2] 113/13 113/15
**bore** [1] 59/10
**borrower** [5] 113/1 113/24 116/20 118/22 119/1
**both** [5] 5/21 48/6 51/22 74/18 78/6
**bother** [1] 50/11
**bottom** [23] 8/4 25/23 26/8 28/7 28/9 34/25 44/7 49/19 74/11 87/18 94/5 95/18 105/23 107/23 107/23 111/12 112/3 112/21 113/24 114/6 114/8 116/19 130/7
**BRANDON** [1] 2/4
**breach** [1] 79/21
**break** [6] 23/7 41/1 73/16 130/20 131/13 131/13
**BRETT** [2] 9/5 5/5
**brief** [6] 12/24 12/25 17/2 21/6 21/8 23/16
**briefed** [1] 17/3
**briefly** [2] 17/23 28/22
**briefs** [2] 14/10 24/8
**bring** [5] 10/15 24/14 24/18 25/22 26/25
**bringing** [1] 17/8
**broad** [1] 13/13
**broader** [1] 17/14
**Brock** [1] 23/17
**broken** [1] 126/20
**broker** [1] 113/17
**brought** [1] 8/5
**Building** [1] 2/10
**business** [7] 8/9 21/13 42/9 52/3 53/19 85/11 98/16
**busy** [1] 50/5
**buyer** [2] 28/11 28/12

## C

**CA** [5] 1/20 2/8 2/11 2/16 106/23
**cabin** [2] 15/2 16/22
**CALIFORNIA** [6] 1/5 1/16 5/1 54/10 72/6 133/16
**call** [5] 23/5 24/6 36/6 36/9 36/10
**called** [5] 15/3 16/23 63/19 85/19 87/4 123/6 125/21
**calls** [3] 27/17 39/5 84/4
**came** [4] 19/18 66/8 93/9 132/4
**can** [43] 7/13 9/10 13/22 20/18 20/23 24/19 26/2 26/3 32/21 35/9 35/15 36/17 37/15 37/21 38/17 44/11 46/7 46/11 46/24 49/9 49/21 52/17 55/3 57/13 58/18 64/4 64/4 64/6 65/22 66/19 71/25 79/12 86/3 89/23 89/24 94/13 94/15 97/20 99/8 106/21 113/15 118/22 124/9
**can't** [5] 12/19 29/13 125/12 133/14 133/19
**cannot** [1] 37/9
**caps** [1] 108/5
**car** [3] 132/9 132/12 132/24
**care** [2] 70/10 77/2
**CareMeridian** [26] 70/1 70/9 76/8 76/25 77/2 77/16 77/19 78/11 78/12 79/5 79/9 79/15 80/8 80/11 80/22 81/1 81/8 81/25 82/7 82/19 82/21 83/10 83/13 83/16 83/19 99/7
**Carlin** [1] 58/6 58/8 58/10
**Carlos** [1] 5/7
**case** [68] 6/2 6/10 6/16 7/5 7/6 7/9 7/22 8/1 13/14 13/15 16/3 16/8 16/14 16/15 16/22 17/1 17/5 17/9 17/12 18/7 18/18 18/22 18/24 19/7 19/24 19/24 20/1 20/4 20/20 21/14 41/1 43/13 43/17 43/19 44/20 45/5 47/12 50/15 50/17 53/6 63/4 63/7 64/5 64/6 64/9 64/20 64/24 64/25 66/18 67/5 68/7 73/19 73/20 86/19 86/22 87/2 87/13 124/4 124/5 125/8 125/11 125/11 125/13 127/1 127/3 129/7 130/24 130/25
**case-related** [1] 125/13
**cases** [17] 15/20 18/8 42/1 42/4 42/7 42/8 42/10 42/10 43/18 43/23 86/8 86/11 124/3 126/5 126/6 126/19 129/17
**cash** [1] 107/3
**cashier's** [1] 82/6
**cashiers** [1] 6/14
**Catherine** [1] 53/9
**caution** [2] 7/7 30/25
**cc'd** [2] 44/8 115/2
**Cefali** [1] 5/11
**CENTRAL** [1] 1/5
**certain** [1] 21/12
**CERTIFICATE** [1] 135/5
**CERTIFIED** [1] 1/9
**certify** [1] 135/7
**cetera** [2] 44/14 124/5
**chain** [8] 32/12 32/22 33/4 93/17 105/12 105/17 105/23 114/19
**change** [6] 17/15 17/16 17/17 40/13 74/23 82/20
**changed** [2] 40/12 119/6
**charge** [1] 55/16
**charged** [2] 83/12 83/15
**charges** [2] 55/1 72/10
**chart** [5] 76/23 76/24 77/14 78/6 84/17
**check** [31] 52/17 52/20 52/22 52/24 62/13 62/13 66/4 66/8 67/14 78/2 82/6 91/1 94/15 98/21 98/23 99/3 100/11 100/12 100/16 100/18 101/3 101/4 101/6 101/10 102/7 102/21 102/23 103/1 103/7 103/11 121/10
**checked** [2] 19/5 37/20
**Checking** [1] 35/22
**checks** [12] 42/17 42/21 42/25 42/25 43/3 99/9 99/13 100/19 101/13 101/17 103/13 130/11
**Chevis** [1] 85/25
**chief** [8] 2/5 16/14 16/15 16/22 17/9 17/12 17/14 24/20
**chief'** [1] 15/2
**chose** [1] 11/21
**Christine** [2] 58/6 58/8
**circuit** [4] 15/10 16/1 16/18 114/25
**citations** [2] 14/23 15/5
**cites** [1] 15/25
**Citing** [1] 16/16
**civil** [3] 42/3 42/5 43/19
**claims** [1] 82/3
**clarify** [3] 5/20 11/2 88/10
**clarity's** [1] 10/13
**clause** [1] 13/12
**clear** [4] 12/14 20/9 21/19 22/6
**clearly** [1] 7/6
**Clemente** [2] 2/16
**client** [40] 10/24 10/25 11/1 11/3 11/4 11/20 11/22 12/4 12/8 43/6 43/9 44/21 54/13 54/15 54/17 54/23 55/19 56/13 64/2 64/25 67/18 67/20 67/24 68/1 68/4 68/8 68/9 69/17 69/18 69/20 72/7 74/25 123/23 125/5 125/19 127/5 133/10 133/14 133/18
**clients** [5] 41/5 95/1 123/9 123/15 123/18
**clock** [1] 64/13
**close** [3] 27/16 29/3 31/6
**closely** [1] 6/20
**closing** [4] 10/1 26/22 31/16 32/12
**co** [1] 19/5
**co-counsel** [1] 19/5
**Code** [1] 135/8
**coded** [1] 41/23
**codes** [3] 122/16 122/18 122/19
**Coffee** [1] 60/24

**colon** [1] 108/5
**Colorado** [1] 44/14
**Columbia** [1] 15/18
**column** [6] 77/3 86/22 86/24 87/4 87/7 87/12
**come** [6] 16/6 23/9 67/3 68/10 70/12 129/3
**comes** [1] 24/19
**comment** [2] 20/19 133/6
**commentary** [1] 17/15
**commented** [1] 6/8
**comments** [3] 7/2 10/12 11/15
**communicated** [1] 37/12
**communications** [3] 25/14 25/17 31/15
**companies** [1] 109/22
**company** [7] 61/9 61/10 109/12 109/17 109/20 109/22 132/10
**competency** [1] 11/12
**competently** [2] 10/7 11/9
**complaint** [4] 79/9 79/13 79/19 80/15
**complete** [1] 29/18
**completed** [2] 68/4 113/17
**completely** [2] 11/21 80/6
**completing** [2] 113/16 114/3
**complies** [23] 45/9 56/23 59/14 61/15 65/5 75/14 78/14 81/4 82/10 84/13 88/18 90/5 93/14 105/11 108/13 111/8 112/19 114/17 115/16 117/13 117/22 121/20 122/24
**Compound** [1] 31/8
**concerned** [1] 14/6
**concerning** [1] 31/16
**concise** [2] 13/18 13/22
**conclude** [1] 34/18
**conduct** [1] 16/5
**conducted** [1] 8/20
**Confer** [1] 120/20
**Conference** [1] 135/12
**conferring** [2] 84/10 114/14
**confidence** [1] 30/12
**confirm** [3] 28/12 29/13 107/2
**confirmation** [3] 57/23 60/13 106/22
**confirmations** [1] 57/25
**conflict** [1] 23/6
**conformance** [1] 135/11
**confront** [1] 13/3
**confrontation** [1] 13/12
**confusing** [1] 90/2
**connection** [2] 20/2 106/24
**conscious** [1] 11/23
**consistent** [2] 65/14 63/14
**constitutional** [4] 13/2 14/20 15/9 18/4
**consultants** [1] 125/10
**contact** [9] 8/3 44/13 44/17 44/21 91/24 92/7 92/9 92/11 107/7
**contain** [1] 100/21
**contained** [1] 126/7
**contains** [1] 53/24
**contemporaneous** [1] 38/14
**content** [1] 116/6
**context** [2] 36/7 131/10
**contingency** [7] 63/7 74/16 86/7 86/8 86/11 87/10 127/13
**contingent** [2] 62/25 63/4
**continue** [2] 127/18 133/25
**continued** [4] 3/6 25/9 91/19 132/1
**contract** [1] 79/21
**contraposition** [2] 15/22 15/23
**conversation** [4] 35/25 36/4 109/10 110/6
**copied** [1] 119/8
**copies** [1] 7/18
**copy** [23] 33/4 34/2 45/15 57/2 59/21 61/21 62/19 68/9 70/20 75/18 78/18 88/24 90/9 93/21 95/9 97/2 104/5 105/17 108/16 111/15 120/12 121/24 124/6
**corner** [1] 99/1 107/24 124/2
**correct** [81] 19/21 20/11 27/14 28/13 28/16 29/1 29/4 29/6 29/9 29/9 29/12 32/7 34/2 40/12 44/9 44/24 48/23 62/13 63/12 63/20 65/12 66/5 66/14 68/24 69/5 69/8 69/12 69/13 69/14 71/20 71/21 72/8 72/22 72/25 74/9 74/16 74/20 75/3 76/3 76/21 77/4 77/7 78/5 78/8

**C**

correct... [38]  79/17 79/18 82/12 82/22 83/1
83/22 84/3 85/22 86/1 86/16 86/22 86/25
87/21 87/23 94/22 95/23 97/17 99/13 100/19
101/11 101/17 107/15 110/7 110/8 112/13
114/3 115/20 115/23 116/12 118/20 123/3
124/11 125/2 129/4 129/23 131/7 131/9 135/9
correctly [5]  27/12 36/19 63/24 89/23 90/1
correspondence [2]  45/12 45/16
cost [28]  41/19 41/20 41/21 66/2 66/8 67/10
68/11 69/21 73/2 73/5 73/10 73/13 74/18
79/22 82/14 82/18 82/20 82/24 83/3 87/4 87/8
125/15 127/2 127/4 127/8 128/17 129/2
129/12
costs [33]  41/14 41/17 54/24 62/22 63/8
63/11 63/19 63/23 64/1 64/7 64/8 64/15 64/16
66/17 67/2 67/6 67/23 71/10 71/16 75/2 75/5
87/11 123/2 125/13 125/19 125/20 126/1
126/4 127/1 127/13 127/16 129/13 132/11
could [76]  11/8 17/7 22/19 22/24 23/2 26/25
31/15 34/24 39/15 41/20 41/20 41/21 41/21
43/25 44/5 44/7 45/8 46/18 47/19 51/1 51/10
52/7 52/19 53/13 54/5 54/25 55/15 56/21
57/24 59/13 61/14 62/21 64/14 64/20 65/4
68/10 69/23 71/22 75/13 76/9 78/13 79/23
81/3 82/9 82/14 82/17 83/18 84/12 84/14
86/14 86/18 88/17 90/4 93/13 94/5 101/2
103/22 106/2 106/6 108/12 110/15 110/19
111/7 112/18 113/12 114/6 116/16 117/12
120/4 120/25 121/19 122/13 124/25 127/6
127/16 132/17
could have [1]  127/6
couldn't [2]  6/20 30/4
counsel [11]  2/1 2/15 5/6 5/10 17/1 17/4
18/25 19/5 23/17 84/10 114/14
County [2]  11/16 34/20 36/11 36/18 37/6
37/10 37/17 37/24 43/16 87/2 87/13 107/4
couple [3]  5/20 67/3 119/13
course [2]  21/1 64/5
court [20]  1/4 5/18 7/14 7/18 7/18 9/19 13/13
13/14 13/15 14/18 14/19 14/24 16/19 18/18
20/9 22/8 22/13 22/14 41/6 135/17
Court's [11]  8/10 8/12 9/3 14/10 15/6 15/7
17/24 47/9 60/3 61/4 131/14
Courthouse [1]  1/19 2/7
Courts [1]  15/22
covered [1]  86/15
created [2]  84/17 123/22
creation [1]  19/19
Criminal [1]  2/5
cross [23]  3/4 4/1 12/25 13/3 14/14 15/4
15/24 16/5 16/20 17/9 17/21 18/1 18/20 19/8
19/15 20/10 22/18 25/9 32/1 32/18 33/1 33/16
131/8
cross-examination [19]  12/25 13/3 14/14
15/24 16/5 17/9 17/21 18/1 18/20 19/8 19/15
20/10 22/18 25/9 32/1 32/18 33/1 33/16 131/8
cross-examining [2]  15/4 16/25
Crowder [2]  15/17 18/7
current [1]  12/10 17/13
custodian [11]  21/20 52/1 53/17 53/22 84/22
85/2 85/5 98/9 102/5 102/7 102/11
customer [1]  124/23
cut [1]  42/25
cutting [2]  42/17 42/21

**D**

daily [1]  74/12
date [29]  26/7 47/25 52/13 57/13 62/9 71/20
72/24 79/6 87/15 87/22 87/22 89/20 90/18
94/8 101/10 102/23 106/3 108/25 111/2 113/9
115/7 116/24 121/1 128/3 128/4 128/9 128/17
129/9 135/14
dated [3]  44/24 71/18 85/21
dates [1]  97/3
Davis [1]  13/13
day [16]  1/12 7/23 8/9 8/10 9/11 9/15 14/8
27/6 27/7 28/19 49/3 81/11 90/20 131/22
133/5 134/1

days [7]  5/15 22/9 23/13 62/12 67/3 129/17
131/18
deal [2]  21/25 50/3
dealer [1]  132/18
deals [1]  16/2
dealt [1]  18/8
DEAN [3]  2/15 2/15 5/10
Dear [1]  106/23
debit [1]  55/16
debits [1]  72/10
debts [1]  47/11
December [2]  82/8 124/24
December 2018 [1]  124/24
December 31st [1]  82/8
decide [2]  133/15 133/19
decision [3]  11/24 20/22 24/3
declaration [15]  52/2 53/22 84/22 85/2 85/5
85/9 98/9 98/15 102/6 102/6 102/7 102/11
112/11 112/12 114/2
declarations [3]  21/17 21/20 21/24
deducted [2]  62/21 132/21
deemed [1]  13/24
defendant [98]  1/12 2/13 5/23 6/5 6/14 6/23
10/19 11/21 15/3 16/24 17/7 17/19 18/8 18/19
18/20 19/14 20/19 20/24 21/23 22/7 23/3 23/4
23/20 23/21 32/2 32/8 33/15 34/19 35/5 35/24
36/23 37/3 37/16 45/16 46/14 49/24 61/2
61/19 62/16 62/18 64/17 65/8 65/15 66/1 66/7
70/18 70/21 73/12 75/18 75/15 75/19 77/13
78/10 78/16 84/18 84/23 85/16 85/24 86/3
88/5 88/15 88/19 88/25 89/16 89/22 92/12
92/14 93/17 93/19 93/19 93/22 95/21 96/11
99/21 100/7 104/3 104/6 104/16 104/18
104/24 106/2 106/3 107/9 108/14 108/17
108/25 109/4 109/8 111/10 113/5 114/20
115/2 115/22 120/10 120/13 121/1 121/22
121/25 122/8
defendant's [19]  6/7 10/14 10/20 14/11 14/12
15/21 16/4 16/9 17/8 24/20 37/19 90/6 90/9
96/3 98/1 103/14 103/16 113/7 131/5
defendants [3]  16/12 17/3 42/8
defense [5]  4/1 4/3 15/4 16/24 19/8
Delaware [1]  13/14
delay [1]  32/16
delaying [1]  34/19
delays [1]  32/12
denying [1]  9/3 9/9
depended [1]  58/20
deposit [18]  51/19 52/10 52/13 54/15 54/17
55/5 55/8 55/10 55/12 76/13 97/20 97/25
128/8 128/9 128/11 128/13 128/17 128/25
deposited [7]  42/25 43/2 62/12 66/4 74/8
91/8 117/16
depositing [2]  52/22 52/25
deposits [2]  42/17 54/25
described [2]  43/22 63/14 68/5
detail [1]  124/23
determine [1]  64/2
develops [1]  21/18
dictate [1]  15/18
did [102]  7/8 15/6 15/8 18/20 25/17 26/5 27/4
31/3 31/13 35/23 35/25 36/3 36/18 36/24
37/1 37/3 37/11 37/22 40/3 40/8 40/13 40/18
41/9 42/13 46/13 50/15 50/17 50/19 50/21
53/4 53/7 54/12 60/18 60/21 60/21 63/3 64/7
64/11 64/14 64/23 67/17 68/1 73/9 73/12 75/8
75/11 76/12 80/10 88/5 89/22 91/2 91/9 91/18
92/6 92/16 92/24 93/9 96/16 96/18 97/18
97/19 97/22 100/2 100/5 103/13 103/16
104/18 104/20 104/23 105/1 105/8 106/3
106/11 107/8 108/9 108/10 108/11 109/13
109/18 109/25 110/9 110/13 111/13 112/15
113/5 113/6 115/25 117/6 117/9 117/16 118/4
119/4 120/2 120/6 123/8 123/10 123/11
123/11 123/14 126/4 132/11
didn't [12]  8/18 10/17 10/25 12/6 22/19 32/18
32/22 41/25 42/16 50/2 55/25 101/21
different [10]  22/15 40/14 93/18 99/9 119/13
119/16 126/20 128/7 128/25 132/13

differentiate [1]  133/23
direct [12]  3/4 4/3 6/5 7/16 7/20 26/4 28/3
28/4 28/6 34/18 39/20 92/8
direction [9]  13/11 13/21 111/3 111/14
115/25 116/1 118/4 118/6 126/4
directive [1]  24/12
directly [3]  89/24 119/7 133/10
disadvantage [1]  19/4
disagree [1]  19/17
disbursements [1]  63/19
discharge [1]  10/7
disclosed [6]  22/8 23/8 23/12 24/3 24/7
131/10
disclosing [1]  14/21
disclosure [4]  16/2 16/9 17/11 20/13
disclosures [1]  21/17
discovery [6]  14/11 14/13 14/21 15/8 17/20
41/5
discuss [2]  73/18 130/23
discussion [5]  15/16 47/15 88/7 131/4 133/25
discussions [1]  88/5
dispute [1]  26/19
distributed [1]  54/23
distribution [3]  54/16 54/20 54/21
DISTRICT [1]  1/4 1/5 14/19 14/24 15/6 15/7
15/18 16/17 16/19
DIVISION [1]  1/6 2/5
do [176]
docket [7]  9/24 12/24 16/8 21/6 21/11 53/19
85/1
document [28]  16/13 18/9 18/13 18/19 18/21
20/12 20/22 20/22 27/4 27/9 30/7 30/9 32/7
32/23 34/8 52/3 55/4 66/20 67/21 69/13 85/10
98/13 102/9 102/12 107/13 117/19 125/16
131/10
documentation [1]  114/11
documents [31]  10/16 10/20 10/20 14/22
16/15 17/25 18/1 19/9 19/15 19/15 19/18
19/19 19/21 19/23 19/24 19/25 20/3 20/10
20/24 41/6 68/2 88/12 88/13 98/17 104/24
105/1 109/23 111/13 112/10 112/15 131/8
does [21]  12/5 15/23 48/6 48/9 53/19 71/9
83/2 83/24 84/17 84/19 86/8 86/10 88/23 90/1
90/22 94/12 108/2 124/6 128/13 129/6 129/11
does Mr [1]  90/22
doesn't [1]  20/25
doing [6]  11/20 12/3 40/24 42/2 79/12 92/6
dollars [2]  70/5 100/13
don't [42]  8/12 8/20 11/10 13/19 17/2 18/7
18/16 19/21 22/24 24/11 25/21 25/24 26/6
26/19 27/19 27/21 28/4 29/16 29/18 45/22
46/8 47/14 50/21 56/10 73/7 73/7 86/14 88/7
91/1 91/4 105/10 109/20 109/21 110/11
115/11 117/1 117/5 117/8 120/4 120/4 123/5
131/1
done [9]  22/19 61/13 67/9 69/19 73/5 114/11
119/10 119/11 133/14
door [2]  11/20 12/18
down [10]  36/13 39/16 58/15 80/4 86/18
106/21 107/24 121/5 126/20 127/21
draft [9]  64/20 66/17 66/22 66/23 66/24 67/5
68/11 73/2 83/21
drafts [1]  129/2
draw [1]  11/8
due [19]  8/24 18/4 23/5 46/23 49/7 49/10
49/15 67/24 74/25 75/6 76/13 76/14 77/1
77/18 78/7 80/23 87/5 87/8 97/17
duplication [1]  66/25
during [10]  27/15 28/4 28/6 28/11 33/1 40/20
40/23 64/5 91/5 119/6
duties [1]  10/7

**E**

e-mail [134]  5/23 26/8 26/11 26/14 26/16
26/22 26/24 27/1 27/1 28/2 28/8 28/9 28/20
28/14 32/2 32/4 32/9 32/12 32/19 32/22 33/1
33/4 37/8 44/7 44/8 45/1 45/12 45/15 46/13
46/16 46/19 56/24 57/2 57/14 57/20 59/17
59/21 60/11 61/18 61/21 62/5 62/9 65/8 65/11

**E**

e-mail... [90] 65/14 65/25 70/18 70/20 70/21 71/4 71/11 71/15 71/18 75/15 75/18 76/2 76/9 78/6 78/15 79/6 85/21 85/24 86/5 88/19 88/24 89/4 89/15 89/20 90/6 90/7 90/10 93/17 93/18 93/21 94/5 94/8 94/12 94/17 94/18 95/6 95/9 95/18 95/18 97/9 104/2 104/5 104/15 105/5 105/12 105/17 106/2 106/4 106/16 107/9 107/14 108/14 108/16 108/25 109/4 109/9 110/6 111/9 111/12 111/15 112/6 112/9 112/12 114/18 114/19 115/1 115/5 115/12 115/13 115/17 115/22 115/25 116/11 116/11 116/16 117/25 118/4 118/14 119/7 119/9 119/11 119/14 120/10 120/12 120/25 121/1 121/17 121/21 121/24 122/8

e-mails [8] 10/19 25/23 72/24 78/18 79/11 79/12 96/9 96/12

EA [7] 47/24 48/2 48/6 48/6 79/5 87/5 87/9

EA/CareMeridian [1] 79/5

each [5] 28/4 96/15 98/9 127/8 127/10

Eagan [53] 40/4 40/6 40/9 40/11 42/1 42/12 42/22 43/6 43/9 48/8 54/10 54/12 56/5 56/9 56/11 56/14 63/3 67/17 74/19 79/10 79/12 79/16 81/8 81/24 82/4 84/18 87/8 88/2 91/5 93/4 93/5 99/2 99/15 100/2 100/4 100/4 100/5 100/17 100/24 104/23 107/21 109/13 117/15 119/4 119/15 119/21 120/2 123/2 123/8 123/18 124/7 124/21 128/16

earlier [1] 63/22

effect [2] 11/7 89/25

effectively [2] 17/7 18/20

effort [2] 13/16 18/12

eight [3] 65/20 90/15 105/22

Eighty [1] 108/22

Eighty-five [1] 108/22

either [6] 11/24 18/7 41/20 41/23 53/9 91/24 92/7 93/6

elements [1] 52/3

Eleven [1] 81/16

eliminate [1] 21/10

Ellison [3] 14/17 16/18 18/6

else [4] 29/7 29/10 42/18 105/7

else's [1] 101/23

emphasis [1] 13/8

emphasize [2] 10/9 13/25

end [15] 9/11 36/19 44/20 45/5 64/6 64/18 113/13 127/3 127/4 129/9 129/11 131/4 131/21 133/5 134/1

enforced [1] 15/7

engaged [1] 13/23

ensure [1] 8/22

entered [5] 41/19 41/22 64/14 64/15 69/16 69/18

entering [4] 41/14 41/17 64/10 64/11

entire [3] 40/20 40/23 59/9

entirely [1] 53/25

entirety [1] 81/12

entitled [3] 63/9 133/13 135/10

entity [1] 38/7

entries [3] 78/2 129/22 130/8

entry [4] 81/22 82/18 127/22 128/6

escrow [7] 26/22 27/16 29/4 31/6 31/16 32/12 34/19

especially [3] 12/2 18/1 95/1

essentially [1] 13/5

establish [6] 14/8 15/4 16/24 38/15 38/19 52/3

estate [2] 29/4 31/7

estimate [1] 96/10

estimated [1] 86/7

estimates [1] 22/17

et [2] 44/14 124/5

ETA [1] 37/17

ethics [1] 133/16

even [10] 5/24 7/4 7/11 11/12 84/3 91/8 131/19 132/3 132/5 132/20

even under [1] 131/19

event [2] 17/4 107/6

eventually [2] 77/10 119/10

ever [20] 18/18 31/3 43/7 60/19 64/16 67/18 76/9 91/12 89/1 93/22 101/1 102/16 102/18 103/16 103/16 104/24 117/9 120/3 120/6

every [6] 7/23 16/13 29/18 30/11 49/2 100/18

everybody [2] 41/12 132/17

everything [3] 67/1 67/16 129/8

evidence [53] 6/4 13/1 15/12 15/13 16/13 17/8 17/14 25/21 28/6 33/13 34/6 34/15 44/4 46/6 51/2 51/3 52/5 54/4 57/6 57/11 60/7 62/3 65/21 70/24 71/2 75/25 79/1 81/12 81/18 85/13 89/12 90/16 94/3 95/16 97/14 98/19 102/14 104/9 104/13 105/20 108/23 110/18 112/1 114/22 116/8 118/12 120/23 122/3 122/16 124/17 128/20 131/16 131/18

ex [3] 58/9 132/15 132/24

ex-wife [3] 58/9 132/15 132/24

exact [1] 49/12

exactly [3] 50/22 53/6 125/12

exam [2] 31/3 34/18

examination [27] 12/16 12/25 13/3 13/18 14/14 15/24 16/5 17/9 17/21 18/1 19/20 19/8 19/15 20/10 22/18 25/9 26/5 28/6 31/22 32/1 32/18 33/1 33/16 38/3 39/20 131/8

examining [2] 15/4 16/25

example [8] 10/13 42/21 77/3 96/3 98/3 102/25 126/9 130/6

examples [3] 13/4 14/8 96/9

except [2] 29/10 29/12

exception [2] 52/4 85/11 98/17

exchange [1] 93/21

exchanged [1] 38/21

excused [2] 38/24 39/3

exhibit [192]

Exhibit 100 [5] 117/12 117/14 120/9 120/10 120/16

Exhibit 101 [3] 121/19 121/21 122/3

Exhibit 102 [4] 122/23 123/20 123/21 124/14

Exhibit 11 [4] 81/3 81/5 81/7 81/13

Exhibit 124 [7] 28/21 28/23 29/1 33/17 34/2 34/6 34/24

Exhibit 21 [1] 44/3

Exhibit 25 [4] 84/12 84/14 84/21 85/7

Exhibit 260 [3] 96/20 96/21 97/6

Exhibit 27 [5] 45/8 45/10 45/19 46/7 46/11

Exhibit 356 [3] 102/2 102/5 102/16

Exhibit 379 [2] 100/9 100/11

Exhibit 380 [1] 101/2

Exhibit 391 [5] 53/16 54/6 71/23 72/1 74/4

Exhibit 393 [1] 85/10

Exhibit 394 [2] 92/2 98/9

Exhibit 41 [3] 51/1 51/22 55/13

Exhibit 43 [4] 59/13 59/15 59/17 59/25

Exhibit 44 [3] 56/21 56/24 57/6

Exhibit 46 [3] 51/11 54/20 54/23

Exhibit 48 [6] 65/4 65/18 71/20 72/16 82/9 82/15

Exhibit 5 [3] 75/13 75/15 75/22

Exhibit 50 [4] 70/13 70/15 70/16 70/24

Exhibit 57 [3] 88/17 89/3 90/7

Exhibit 58 [3] 90/4 90/6 90/13

Exhibit 6 [3] 78/13 78/15 78/22

Exhibit 69 [3] 93/13 93/15 93/25

Exhibit 73 [3] 95/5 95/5 95/13

Exhibit 75 [4] 103/23 103/25 104/2 104/9

Exhibit 78 [3] 105/10 105/12 105/20

Exhibit 79 [2] 110/17 110/19

Exhibit 85 [2] 108/12 108/20

Exhibit 87 [3] 111/7 111/9 111/19

Exhibit 93 [2] 32/3 33/8

Exhibit 94 [2] 115/15 116/3

Exhibit 95 [4] 117/21 118/5 118/8 118/10

Exhibit 96 [4] 25/20 114/16 114/18 116/12

Exhibit 97 [1] 27/24

exhibits [11] 3/8 3/18 4/4 14/25 16/21 21/21 21/22 41/7 98/5 98/19 131/15

Exhibits 378 [1] 98/5

expected [5] 86/6 86/9 86/24 87/1 87/15

expedite [1] 36/25

expended [1] 64/5

expenditure [1] 14/5

expense [2] 83/10 83/16 83/16 93/4 127/8 127/10 130/15

expenses [35] 63/19 66/17 67/25 68/24 69/1 69/4 69/14 69/21 69/23 70/1 83/3 83/19 87/11 91/20 91/22 92/5 92/16 93/11 94/16 94/22 96/16 101/20 103/14 125/9 125/16 126/2 126/5 126/18 126/18 126/17 126/25 130/3 131/25 131/25

experience [1] 44/23

expert [1] 41/22

expert's [1] 125/9

explained [1] 37/8

explanation [1] 27/8

Express [1] 125/10

extend [1] 15/23

extends [1] 14/13

extension [1] 36/20

extensive [1] 15/16

extra [4] 12/3 12/4 12/5 12/5

extraction [1] 34/11

**F**

F.2d [1] 16/1

F.3d [1] 15/10

F.R.D [1] 16/16

F.Supp.3d [1] 15/17

fabricated [1] 20/24

facility [2] 70/10 101/9

fact [9] 8/23 9/4 10/22 22/7 28/15 97/10 111/24 116/6 132/12

factual [1] 80/12

failed [1] 11/3

failure [1] 10/7

fair [28] 32/20 33/4 34/2 45/2 45/15 48/14 57/2 59/21 61/21 65/11 65/14 67/7 70/20 75/18 78/18 88/24 90/9 93/21 95/9 97/2 104/5 105/17 108/16 121/24 124/6 127/11 127/14 127/19

fairly [2] 12/14 13/13

familiar [8] 42/1 43/9 43/10 43/13 43/23 85/16 123/5 123/17

family [2] 22/16 44/14

far [5] 12/16 18/11 18/13 19/16 124/9

fast [1] 37/21

fault [2] 32/13 32/16

February [18] 62/11 62/16 62/17 65/9 65/15 66/3 71/18 72/3 72/10 72/13 74/7 74/12 74/13 74/15 74/18 75/5 84/2 84/7

February 3rd [2] 62/11 62/17

February 4 [2] 71/18 72/13

February 4th [12] 65/9 65/15 66/3 72/10 74/7 74/12 74/13 74/15 74/18 75/5 84/2 84/7

Fed [2] 14/18 16/18

federal [4] 2/10 13/1 31/4 125/10

FedEx [1] 94/15

fee [10] 62/8 62/15 62/17 62/25 63/4 74/16 82/19 87/10 132/5 132/23

feel [1] 10/9

fees [11] 41/14 41/18 55/23 62/22 63/11 63/24 64/1 64/7 64/8 64/15 67/22 86/7 87/5 87/8 123/3 125/9

Feldman [1] 17/4

few [8] 12/14 13/23 34/17 96/12 102/25 129/16 129/19 133/22

fifth [1] 58/15

Fifty [3] 71/1 89/11 90/15

Fifty-eight [1] 90/15

Fifty-seven [1] 89/11

file [2] 9/21 32/25

filed [4] 9/8 12/24 79/9 133/1

files [3] 19/18 20/1 20/6

filing [8] 6/6 6/7 6/23 21/16 21/23 51/5 51/6 51/25

filings [2] 5/15 41/6

fill [1] 117/9

filled [1] 32/4

final [2] 67/25 129/12

finalize [1] 73/5

**F**

**finalized [1]** 37/9
**finally [2]** 21/11 82/3
**finances [4]** 42/14 42/20 46/17 49/2
**financially [1]** 47/4
**find [4]** 52/1 85/9 98/15 112/10
**fine [3]** 9/12 12/22 80/1
**finished [1]** 67/2
**firm [31]** 40/15 40/17 41/3 41/21 42/5 42/14
43/23 47/11 48/13 53/7 54/24 63/8 63/9 63/23
64/6 69/4 69/8 69/22 71/16 74/19 78/10 78/12
92/22 100/4 100/5 106/24 123/11 123/12
125/18 126/7 128/16
**first [43]** 6/19 15/3 16/23 19/24 22/10 22/24
23/3 23/3 35/19 39/9 39/12 46/18 46/18 49/9
49/10 49/12 52/7 52/19 52/20 58/5 65/22
81/23 82/1 85/24 86/21 94/12 98/21 100/10
100/10 101/2 101/3 101/10 103/23 111/12
111/22 114/18 116/10 124/4 124/19 125/1
129/1 133/8 133/21
**Fiscal [1]** 86/13
**five [9]** 13/20 14/8 20/23 21/24 62/12 75/24
85/12 104/11 108/22
**flight [1]** 23/2
**fluid [1]** 24/14
**fly [1]** 22/23
**FOB [3]** 119/18 119/19 122/19
**FOBs [3]** 119/14 119/15 119/16
**focus [4]** 25/23 44/7 46/24 131/14
**focusing [2]** 34/25 35/16
**follow [1]** 6/20
**followed [1]** 24/12
**following [3]** 7/22 13/11 38/6
**follows [1]** 7/24
**foregoing [1]** 135/8
**foremost [1]** 133/8
**forged [1]** 20/24
**forging [1]** 10/20
**Forgot [1]** 46/21
**form [7]** 31/5 73/19 109/12 109/23 113/16
114/3 130/24
**formal [1]** 21/12
**format [1]** 135/11
**former [1]** 17/13
**forms [4]** 109/15 109/18 109/19 109/24
**forth [3]** 6/4 23/23 67/21
**Forty [5]** 52/4 57/9 60/5 62/2 65/20
**Forty-eight [1]** 65/20
**Forty-four [1]** 57/9
**Forty-one [1]** 52/4
**Forty-six [1]** 62/2
**Forty-three [1]** 60/5
**forward [5]** 10/5 12/9 20/20 24/21 88/13
**forwarded [9]** 70/21 93/19 94/20 95/6 95/21
97/23 104/2 104/6 104/16
**found [1]** 102/10
**foundation [18]** 45/21 51/23 56/16 81/11 83/5
91/14 93/1 97/7 98/11 102/8 103/18 105/2
105/21 110/1 119/22 128/19 129/14 132/1
**foundational [2]** 21/9 123/1
**four [14]** 13/6 14/8 22/9 23/24 29/17 50/25
52/18 55/11 57/9 87/3 111/4 116/7 128/12
133/22
**Four million [3]** 50/25 55/11 128/12
**Fourth [1]** 2/11
**FOX [1]** 2/4
**fraud [2]** 11/19 12/1
**Frauds [1]** 2/6
**free [1]** 9/1
**Freedom [8]** 94/10 94/13 99/4 99/5 99/10
102/20 103/5 103/12
**Friday [12]** 7/10 11/6 22/13 22/14 22/22 24/7
25/13 28/22 32/1 33/15 33/22 34/18
**Friedman [1]** 15/17
**front [4]** 43/25 74/4 103/25 117/23
**frustrates [1]** 17/10
**full [5]** 3/15 81/17 85/12 119/25 133/22
**fully [1]** 82/3
**fund [4]** 54/11 54/13 55/19 72/7

**fundamental [1]** 18/4
**funds [6]** 53/1 54/23 84/17
**further [15]** 5/18 9/7 9/24 9/25 10/2 10/11
12/12 17/6 17/18 17/22 20/8 31/19 37/25
38/23 131/24
**furtherance [2]** 86/4 86/5
**FY [1]** 86/12
**FY2015 [1]** 86/9
**FYI [2]** 71/13 104/19

**G**

**gambling [1]** 132/24
**GB [4]** 58/16 58/22 58/25 59/2
**general [4]** 43/24 63/6 81/21 127/7
**generalized [1]** 8/21
**generally [11]** 25/15 42/15 42/16 47/2 50/1
53/9 68/3 100/21 125/7 127/16 127/17
**gentlemen [3]** 25/2 73/16 130/22
**Geoff [27]** 6/21 44/13 70/10 77/1 81/9 88/13
89/17 89/24 91/11 91/23 91/24 92/7 92/8
92/10 92/13 97/24 99/6 101/9 103/12 104/17
106/24 116/23 118/24 121/9 121/11 121/15
123/25
**Geoffrey [22]** 43/4 43/7 53/1 73/9 73/13 75/6
79/10 79/16 81/24 82/5 91/6 91/10 92/12
92/17 92/25 94/6 100/12 104/21 117/7 119/2
124/7 129/25
**get [25]** 8/4 11/3 12/3 19/2 21/13 22/19 23/2
24/5 31/4 31/15 32/5 36/18 46/20 51/13 65/1
69/10 89/23 92/23 96/16 109/25 112/5 117/6
117/14 129/1 129/12
**gets [2]** 64/2 133/15
**getting [5]** 8/9 11/2 23/18 64/18 96/3
**give [4]** 6/11 9/25 64/13 68/7
**given [4]** 9/5 22/13 23/25 37/17
**Givens [3]** 15/25 16/1 16/2
**Global [6]** 60/17 60/19 60/22 60/23 61/2
61/11
**go [29]** 10/5 10/6 12/9 21/25 24/21 26/24
27/24 34/17 35/15 36/13 42/24 46/21 59/10
63/17 64/16 64/18 66/25 67/13 67/14 100/18
101/15 107/15 117/19 119/7 127/18 127/21
129/8 132/11 133/17
**GOEDERS [6]** 3/5 25/3 26/2 31/24 37/25 38/5
**goes [5]** 11/11 16/19 76/21 85/2 127/10
**going [37]** 8/16 9/7 10/1 10/10 10/10 13/21
14/3 19/2 20/20 20/20 21/13 22/10 22/15
23/10 23/15 24/10 24/21 27/15 45/7 46/1
49/18 50/3 53/16 55/25 63/17 64/24 64/25
65/1 79/24 100/18 101/15 103/23 115/15
117/19 125/15 131/13 133/19
**Good [11]** 5/5 5/8 5/9 5/13 25/2 25/11 25/12
31/24 31/25 39/22 39/23
**got [5]** 12/5 19/24 24/10 117/20 126/19
**government [50]** 5/24 6/6 12/24 13/4 14/21
15/4 18/2 18/10 18/15 18/21 19/10 19/25
20/12 20/15 20/20 21/9 25/14 25/18 33/7 34/5
39/5 45/19 51/22 53/16 54/2 57/6 59/25 61/25
65/18 70/24 75/22 78/22 84/10 84/21 89/3
90/13 93/25 95/13 97/6 102/4 104/9 108/19
111/19 114/14 116/3 118/7 120/16 120/21
122/3 124/14
**government's [12]** 12/25 14/7 16/2 16/14
16/25 19/14 21/3 21/16 25/3 31/4 39/7 131/8
**great [2]** 7/22 36/20
**gross [3]** 86/10 86/24 87/1
**ground [1]** 10/6
**guess [1]** 19/12
**guidance [1]** 12/22

**H**

**Habibi [1]** 82/7
**had [47]** 7/19 11/8 19/9 19/15 19/18 19/23
28/3 28/23 20/20 29/19 33/21 33/22 41/12 41/12
42/15 43/19 61/2 64/10 67/15 67/16 71/16
73/5 77/16 77/17 78/16 79/15 88/7 88/9 91/23
92/14 93/22 95/3 95/2 95/9 105/18 108/4 109/10
110/6 114/11 119/11 119/14 119/20 119/24
119/25 121/13 125/20 125/22 126/12 129/17

**half [4]** 6/19 52/8 70/4 111/12
**Hamlin [1]** 106/23
**hand [1]** 127/8
**handed [1]** 9/19
**handled [3]** 43/18 43/20 44/15
**handling [1]** 43/23
**handwriting [18]** 10/20 51/15 51/17 112/20
113/5 113/7 113/9 113/11 113/16 113/19
113/22 114/3 114/5 114/6 116/24 116/25
117/2 117/3
**HANNA [1]** 2/3
**happened [2]** 19/11 21/1 22/12
**happy [1]** 131/12
**harass [1]** 13/16
**harassing [1]** 14/4
**has [34]** 5/25 7/1 7/22 8/2 10/17 11/17 12/16
12/17 13/4 13/5 13/16 13/24 17/14 18/12
18/18 20/22 20/25 21/23 22/16 22/17 23/23
23/24 37/4 37/17 45/24 63/18 66/25 81/10
83/3 88/22 114/2 128/4 133/14 133/16
**hasn't [1]** 51/12
**hate [1]** 49/22
**have [159]**
**haven't [1]** 30/7
**having [5]** 6/5 42/19 44/21 58/10 131/10
**he [93]** 10/17 10/25 11/3 11/17 11/19 12/2
12/4 12/5 12/15 12/6 12/6 15/25 17/2 20/20
20/20 22/13 22/16 22/24 23/2 23/8 23/10
23/12 23/15 23/16 23/17 23/19 23/20 24/3
26/5 32/11 32/19 32/22 33/1 33/19 33/21
33/22 33/24 34/19 35/12 36/8 36/8 36/10
36/24 37/22 43/6 43/9 50/5 50/19 50/21 57/25
68/8 68/8 70/11 80/8 88/7 90/2 91/24 92/7
92/9 92/11 92/12 95/2 95/4 96/1 97/11 97/18
99/7 105/5 105/5 106/6 106/13 106/15 107/12
110/9 110/9 110/11 110/12 111/4 115/24
119/8 120/4 131/7 132/14 133/12 133/14
133/14 133/15 133/16 133/17 133/19 133/21
133/21 133/23
**he's [6]** 12/1 12/5 22/18 88/10 132/12 133/13
**head [2]** 20/23 30/16
**hear [2]** 6/22 11/5
**hearsay [23]** 33/9 34/7 45/20 51/5 53/19 57/8
60/3 75/23 78/23 81/14 84/25 89/4 97/8 98/12
102/8 104/10 105/21 111/20 116/4 118/9
120/17 122/4 124/15
**heart [2]** 13/11 13/22
**held [4]** 18/18 18/22 21/9 135/10
**help [1]** 10/25
**helped [1]** 76/23
**helping [1]** 41/4
**here [23]** 7/22 7/23 11/13 16/6 24/23 28/6
29/11 30/17 32/5 46/22 47/7 48/15 50/13
52/22 56/4 56/10 63/12 73/7 73/16 94/13
100/19 107/15 130/21
**here's [1]** 29/24
**hereby [1]** 135/7
**hesitate [1]** 107/6
**Hi [3]** 35/10 35/20 94/13
**hide [1]** 6/14
**higher [3]** 84/3 84/8 91/12
**highlights [2]** 49/6 49/10
**highly [1]** 133/2
**Hills [2]** 101/7 101/8
**him [34]** 22/20 22/21 22/23 23/2 24/6 24/14
24/18 24/19 24/21 32/3 35/19 36/8 37/22 39/1
47/3 47/6 49/4 57/23 60/13 62/20 68/9 73/10
77/18 88/7 97/25 105/8 107/5 107/11 107/13
110/6 112/8 119/13 122/21 132/10
**his [57]** 6/6 6/22 10/23 10/23 10/24 10/25
11/1 11/3 11/4 11/19 11/20 11/21 11/22 11/25
12/2 12/6 15/4 16/24 17/20 19/5 21/23 22/18
23/6 27/11 32/13 32/16 35/21 36/1 36/5 43/11
43/12 61/9 61/10 69/21 89/25 91/19 91/19
91/21 94/20 94/22 94/22 96/15 103/11 103/16
106/16 108/7 112/24 113/5 113/25 119/18
120/3 120/7 121/10 130/2 133/14 133/15
133/18
**hit [1]** 48/22

## H

hold [1] 14/12
home [2] 10/22 117/10
homes [1] 104/17
honestly [1] 120/4
Honor [153]
Honor's [6] 11/14 13/11 13/21 24/12 131/17 132/2
HONORABLE [1] 1/8
hope [1] 35/10
hoping [1] 6/21
host [1] 44/15
hour [1] 116/11
hourly [1] 86/10
hours [4] 8/7 27/13 27/16 115/12
hours' [2] 22/13 23/20
house [2] 11/3 104/21
how [40] 21/18 26/21 32/12 34/19 36/20 37/3 40/8 44/22 46/21 47/6 47/24 48/2 48/4 50/17 50/23 55/10 55/18 58/10 58/25 60/14 64/2 64/7 78/10 78/12 80/22 83/9 83/12 83/15 96/9 105/1 119/4 119/19 123/17 124/1 125/4 126/10 127/25 129/11 132/6 133/23
however [1] 133/20
humiliate [1] 13/1
hundred [1] 93/6

## I

I'll [4] 12/21 14/23 46/9 129/1
I'm [58] 6/19 7/23 8/16 8/24 9/7 10/1 10/7 10/10 12/3 13/21 14/3 14/6 16/6 18/17 18/21 19/2 19/4 19/6 19/6 19/7 19/12 24/7 24/8 25/19 27/11 28/15 30/7 30/10 31/6 32/21 39/25 42/3 46/1 47/19 49/18 50/21 51/3 53/6 56/21 60/13 63/17 63/24 69/3 72/18 79/24 80/17 92/13 93/5 100/18 101/15 103/22 114/22 115/15 117/19 125/22 131/12 131/13 133/19
I've [1] 17/16
I-N-D-E-X [1] 3/2
i.e [1] 15/12
Idaho [1] 16/17
idea [7] 27/15 28/18 38/5 38/12 38/18 65/2 115/9
ignore [2] 10/10 11/21
ignores [1] 133/13
immediate [1] 5/16
immediately [2] 8/6 128/6
impartial [1] 8/23
impeach [1] 14/15
impeachment [3] 14/22 15/12 16/15
important [1] 44/15
improper [2] 80/6 80/10
inception [2] 19/19 19/23
include [1] 105/1
included [3] 67/1 82/21 82/25
includes [1] 106/15
including [4] 6/7 15/16 106/25 132/17
Income [1] 124/23
Incomplete [1] 34/8
inconsistent [1] 9/5
incurred [1] 41/19
indicated [6] 12/17 13/1 17/16 53/22 98/14 102/10
indicates [1] 17/15
individual [6] 6/8 7/3 7/20 9/4 43/4 85/25
individual's [3] 6/24 9/2 9/8
individually [2] 101/16 123/14
individuals [1] 79/20
inference [2] 11/8 11/15
inferences [1] 12/7
information [8] 6/6 18/17 37/11 68/5 106/15 109/25 126/23 132/6
initials [2] 108/5 113/20
initiate [1] 117/18
injury [1] 42/10
input [3] 126/13 126/13 126/17
inputted [2] 126/11 126/15
inquiry [4] 5/17 8/20 8/21 10/6

inspection [2] 28/11 28/12
instances [1] 130/20
instruct [1] 10/1
instruction [2] 9/24 9/25
instructions [4] 10/1 56/18 61/13 133/17
intend [1] 16/13
intended [1] 14/22
interest [1] 116/17
interrupt [3] 22/25 50/2 50/9
introduce [4] 10/17 10/18 15/1 16/21
investigation [1] 20/3
investigative [1] 20/21
involved [1] 38/6
irrelevant [4] 10/3 10/4 11/11 53/25
irritating [1] 14/5
is [438]
isn't [1] 126/21
issuance [1] 9/3
issue [14] 7/25 8/5 10/15 17/2 17/18 20/11 20/13 21/13 22/4 24/2 45/23 47/14 120/18 132/13
issues [4] 12/19 51/5 73/19 130/25
it [242]
it's [52] 7/17 8/17 9/14 10/19 10/22 10/23 10/24 10/25 11/3 11/23 12/1 14/4 14/5 20/14 21/1 22/1 24/11 25/21 30/17 35/7 40/14 44/19 45/1 47/4 47/11 51/13 55/3 56/22 59/6 60/24 60/24 64/4 66/17 67/21 72/18 76/5 79/9 80/6 80/12 83/24 85/4 100/12 101/22 105/23 119/6 123/5 125/12 126/18 126/19 126/20 127/9 133/2
Item [1] 5/3
its [4] 6/23 16/3 21/9 81/12
itself [2] 132/19 133/10

## J

J-u-d-y [1] 39/12
JAMES [1] 1/8
January [22] 52/14 52/24 55/8 55/12 55/15 55/18 57/15 58/6 58/15 58/22 59/19 59/22 82/17 91/9 101/10 124/23 128/5 128/6 128/10 128/13 129/7 129/21
January 19th [1] 129/7
January 2011 [1] 124/23
January 29th [6] 52/14 52/24 55/8 55/12 128/10 129/21
January 30th [8] 55/15 55/18 57/15 58/6 58/15 58/22 59/19 59/22
January 6th [1] 82/17
January 9 [1] 101/17
January 9th [3] 128/5 128/6 128/13
Jersey [1] 6/9
Jim [1] 44/13
job [1] 7/23
Joe [4] 5/11 25/23 26/25 27/25
JOHN [3] 1/11 2/14 5/4
Johnson [79] 10/16 10/21 11/9 28/18 38/15 38/20 43/5 43/7 43/18 50/24 53/2 53/5 62/8 62/15 62/17 66/2 66/7 68/11 68/16 70/10 71/5 71/10 71/17 73/9 73/13 75/6 75/8 75/11 79/10 79/16 81/9 81/25 82/5 82/25 86/19 87/1 87/12 88/13 89/17 91/6 91/15 92/8 92/12 92/22 92/13 92/17 92/25 94/6 94/12 94/19 95/19 96/4 96/15 96/24 97/9 97/16 97/19 99/6 100/12 101/9 101/20 103/12 104/21 106/24 116/23 117/7 117/9 117/11 118/24 119/2 121/15 123/25 124/2 124/8 124/25 125/15 127/17 130/1 130/16
Johnson's [9] 45/5 50/15 50/17 77/1 83/3 93/9 103/13 107/2 128/18
Johnson/001 [2] 124/2 124/25
jointly [1] 82/5
Joseph [1] 15/2
JUDGE [2] 1/8 15/16
Judgment [1] 81/22
Judicial [1] 135/12
JUDY [3] 3/6 39/5 39/7 39/10 44/15 94/13 94/16
July [12] 1/17 5/1 6/13 6/15 6/15 6/17 6/22

6/25 7/20 79/7 83/15 135/14
July 21st [1] 83/19
July 22nd [1] 6/13
July 23rd [3] 6/17 6/22 79/7
July 24 [1] 7/20
July 26th [1] 6/15
June [2] 83/12 102/24
June 1st [1] 83/12
June 20th [1] 102/24
juror [8] 6/2 6/3 6/9 6/16 7/6 9/4 9/7 9/9
jurors [2] 8/3 10/10
jury [23] 5/2 7/4 8/2 8/23 9/25 9/25 24/5 25/1 25/22 29/25 33/22 34/25 35/9 73/22 73/25 80/3 131/3 131/16 131/25 132/3 132/6 132/16 133/2
just [64] 5/20 6/2 7/25 8/20 9/14 10/9 10/13 10/23 10/24 12/12 11/11 11/23 12/1 12/17 18/13 20/9 20/25 21/18 29/24 30/8 34/17 38/14 41/16 41/20 41/21 41/25 47/4 49/23 51/7 52/8 55/12 56/9 59/4 66/19 68/5 72/15 79/20 80/17 82/11 90/7 92/14 95/1 96/19 98/20 98/21 100/10 102/6 103/1 107/20 111/23 116/6 119/8 122/16 122/17 123/13 124/18 126/24 127/16 131/24 133/9 133/12 133/15 133/19 133/21
JVS [3] 1/11 5/3 16/8

## K

keep [7] 64/7 66/19 123/9 126/1 126/4 130/16 130/18
keeping [6] 63/23 64/1 123/2 123/14 126/25 130/14
kept [10] 34/19 64/8 123/12 123/18 124/7 125/7 125/18 125/20 128/17 129/25
kind [12] 41/9 41/15 42/7 42/11 42/18 43/21 46/25 53/11 91/18 107/23 119/16 127/9
knew [1] 50/1
know [51] 14/7 24/10 27/19 27/21 28/20 30/16 36/20 42/7 42/18 43/4 44/17 44/22 46/23 49/4 49/7 49/10 49/23 50/11 52/24 53/3 53/13 56/1 56/5 58/7 58/8 59/2 60/23 64/7 65/1 70/9 77/18 86/14 88/2 91/5 92/9 92/12 99/5 101/8 105/1 110/5 110/11 112/3 115/11 117/1 120/2 123/5 123/23 124/1 125/4 126/10 126/16
knowing [1] 43/22
knowledge [4] 29/2 29/7 30/21 87/21
knows [1] 13/19

## L

L.A [3] 36/11 37/6 37/24
Lacks [3] 45/20 56/16 93/1
ladies [3] 25/2 73/16 130/22
laid [1] 51/23
Lake [1] 106/22
language [2] 17/16 107/20
large [1] 126/19
last [17] 12/14 12/24 12/6 23/2 23/9 23/13 23/24 24/4 25/5 31/3 37/17 39/9 39/10 40/1 45/22 47/20 124/3 128/1
lastly [1] 36/5 37/7 37/14
late [3] 21/11 21/23 101/17
later [9] 8/7 16/12 22/2 27/13 82/7 101/13 119/14 126/13 126/22
latter [1] 92/11
law [3] 2/15 42/5 47/11
Leading [5] 48/17 77/22 83/5 83/7 96/5
learn [3] 37/11 50/15 50/17 104/20
learned [2] 22/15 23/1 23/3
least [3] 20/23 37/2 48/25
leave [1] 12/19
left [9] 22/8 25/13 84/2 98/25 99/7 107/23 107/25 124/2 130/10
legal [2] 62/22 106/25
less [3] 66/4 67/22 67/22
let [16] 32/5 41/25 70/12 70/15 77/18 88/10 91/1 91/8 92/9 92/12 93/18 110/5 122/25 127/6 127/9 128/25
let's [16] 12/9 21/18 25/23 27/24 41/16 54/8

**L**

**let's... [10]** 60/18 77/14 86/21 98/20 103/1 112/20 124/18 125/7 126/24 127/21
**letter [8]** 106/10 106/11 106/13 107/2 108/4 108/14 108/6 116/16
**letterhead [6]** 105/7 106/10 106/11 106/14 107/10 107/21
**letters [2]** 107/25 108/5
**level [1]** 11/12
**levels [1]** 111/21
**Lewis [1]** 106/18
**liability [1]** 109/17
**lie [3]** 10/24 11/19 11/24
**lied [1]** 12/6
**lies [1]** 11/4
**like [24]** 5/20 35/7 35/18 37/15 39/16 40/19 41/21 42/7 50/2 64/19 64/22 92/7 92/23 96/10 100/9 100/21 102/3 106/13 119/16 120/21 122/15 126/12 127/7 131/20
**likely [1]** 10/7
**limine [5]** 47/10 57/7 60/4 61/5 133/9
**limit [1]** 14/24 16/20 31/3
**limited [3]** 15/12 31/14 109/17
**limitless [1]** 13/3
**line [38]** 30/11 34/25 35/2 35/19 35/23 36/13 36/22 37/7 46/2 46/8 46/16 49/10 49/19 49/21 57/16 58/5 58/15 58/19 59/9 60/12 62/5 62/7 71/4 76/7 79/4 81/20 81/20 86/21 90/22 90/24 104/15 106/9 109/2 116/14 118/19 121/3 122/11 125/1
**line 351 [1]** 36/13
**lines [2]** 35/16 37/14 86/18 94/12 121/5 127/21
**lineup [1]** 23/12
**link [1]** 6/4
**list [3]** 47/7 49/9 69/4
**listed [11]** 68/16 83/9 87/12 87/15 109/4 115/18 116/19 116/22 119/1 124/21 125/13
**listening [1]** 6/3
**lists [2]** 77/6 118/22
**little [5]** 6/21 14/9 66/4 88/4 88/4
**Live [8]** 94/10 94/13 99/4 99/5 99/10 102/20 103/5 103/12
**lived [2]** 99/6 101/9
**living [12]** 6/9 91/20 91/21 92/5 92/15 92/17 93/11 96/16 101/20 103/14 130/3 130/14
**LLC [24]** 58/16 59/2 60/17 60/19 60/23 61/3 61/12 81/24 81/25 82/7 99/2 109/3 109/6 109/11 109/16 110/10 110/13 110/24 111/4 112/10 113/3 114/1 114/12 119/2
**LLC/Geoffrey [1]** 119/2
**LLCs [2]** 109/14 109/24
**LLI [1]** 112/10
**LLP [6]** 54/10 82/4 100/5 100/17 100/24 124/21
**loan [6]** 31/7 31/17 112/11 114/2 118/19 118/23
**loans [1]** 85/16
**lodge [1]** 53/23
**lodged [4]** 21/23 59/7 84/25 98/12
**log [2]** 119/17 119/18
**long [5]** 33/15 40/8 46/20 129/11 129/17
**longer [2]** 6/21 19/16
**look [77]** 6/17 6/24 28/21 29/14 29/24 30/8 30/14 45/8 51/1 52/19 53/8 53/14 55/3 55/15 56/21 57/24 59/13 61/14 62/21 62/22 64/20 65/4 68/10 68/23 69/3 69/23 70/12 70/15 71/25 74/11 75/13 76/20 78/13 79/23 81/3 82/9 82/14 82/24 84/12 84/18 88/17 90/4 92/23 93/13 95/5 96/19 98/5 100/9 100/21 101/2 102/25 103/1 103/22 105/10 107/17 107/23 108/12 111/7 112/18 113/12 114/5 114/10 114/16 115/15 116/14 116/17 117/21 120/9 120/25 121/19 122/23 124/25 127/7 127/16 130/7 130/10 133/4
**looked [3]** 30/7 64/19 72/15
**looking [7]** 56/10 74/9 90/7 102/16 123/20 127/17 129/21
**looks [5]** 29/17 35/7 35/18 37/15 102/2

**Los [2]** 2/8 43/16 87/2 87/13 107/5
**loss [1]** 11/22
**lot [9]** 24/10 40/18 44/19 53/10 67/1 88/4 105/8 107/12 113/5
**lull [1]** 10/24
**lulled [1]** 12/6
**lulling [2]** 11/1 11/11
**lunch [1]** 130/20
**lying [1]** 11/1

**M**

**MA [1]** 7/23
**made [16]** 5/15 9/6 9/19 10/5 32/11 83/1 91/17 92/4 92/21 94/25 97/11 99/3 102/19 128/25 130/2 132/15
**mail [134]** 5/23 26/8 26/11 26/14 26/16 26/22 26/24 27/1 27/1 28/2 28/8 28/9 28/10 28/14 32/2 32/4 32/9 32/12 32/19 32/22 33/1 33/4 37/8 44/7 44/8 45/1 45/12 45/15 46/13 46/16 46/19 56/24 57/2 57/14 57/20 59/17 59/21 60/1 61/18 61/21 62/2 62/9 65/8 65/11 65/14 65/25 70/18 70/20 70/21 71/4 71/1 71/15 71/18 75/15 75/18 76/19 78/6 78/15 79/6 85/21 85/24 86/5 88/19 88/24 89/4 89/15 89/20 90/6 90/7 90/14 91/8 93/21 94/5 94/8 94/12 94/19 94/18 95/6 95/9 95/18 95/18 97/9 104/2 104/5 104/15 105/5 105/12 105/17 106/2 106/4 106/16 107/9 107/14 108/14 108/16 108/25 109/4 109/9 110/6 111/9 111/12 111/15 112/6 112/9 112/12 114/18 114/8 114/18 119/7 119/9 119/11 119/14 120/10 120/12 120/25 121/1 121/17 121/21 121/24 122/8
**mails [8]** 10/19 25/23 72/24 78/18 79/11 79/12 96/9 96/12
**Mainly [1]** 42/9
**maintain [1]** 11/10
**Major [1]** 2/6
**majority [1]** 83/20
**make [25]** 9/18 14/1 20/7 20/18 28/25 42/17 46/9 49/23 59/10 66/25 67/6 67/9 67/15 80/12 90/1 91/10 91/18 91/19 92/10 92/18 92/19 92/24 97/20 97/25 133/6
**makes [1]** 30/16
**making [5]** 7/2 7/3 11/17 42/17 91/21
**malpractice [2]** 1/16 10/23
**malpracticed [1]** 10/3
**management [1]** 40/19
**manager [2]** 10/14 43/22
**managing [2]** 40/24 41/8
**many [5]** 9/4 26/21 34/2 70/7 96/9
**March [6]** 40/2 40/8 94/9 104/16 121/2 121/17
**March 12th [2]** 121/2 121/17
**March 25th [2]** 40/2 40/8
**March 31st [1]** 94/9
**March 7 [1]** 104/16
**Mark [1]** 86/5
**MARKED [2]** 3/8 4/4
**market [1]** 48/2
**Marty [10]** 26/11 26/16 27/4 28/14 28/15 112/3 112/7 112/9 115/1 118/14
**mask [1]** 39/16
**matching [1]** 14/2
**materials [2]** 14/14 17/21
**math [1]** 55/25
**matter [14]** 8/3 8/18 22/1 23/17 80/25 89/7 107/5 124/8 127/17 128/18 130/1 130/17 132/25 135/10
**matters [2]** 5/14 106/25
**may [20]** 15/3 16/24 17/18 19/3 32/24 38/24 39/3 76/20 77/6 88/20 88/25 89/21 90/19 94/14 106/5 109/20 111/3 113/17 129/7 133/6
**May 31st [1]** 111/3
**May 3rd [1]** 106/5
**May 6 [4]** 88/20 88/25 89/21 90/19
**maybe [4]** 7/10 11/12 26/25 107/24
**McNicholas [2]** 71/16 74/19

**me [43]** 6/11 8/11 11/11 14/9 17/25 20/4 20/9 20/13 24/3 30/1 31/5 32/6 42/5 44/1 44/17 44/15 57/22 60/20 64/14 68/9 70/12 70/15 77/1 88/8 88/10 88/13 91/1 91/8 92/8 92/9 93/18 94/15 97/24 97/25 103/11 107/7 107/13 110/5 110/11 122/25 127/6 127/9 128/25 131/6
**mean [16]** 19/13 21/1 36/8 41/18 42/3 54/18 54/20 69/16 86/12 92/19 103/10 106/12 119/15 121/12 122/17 132/19
**meaning [1]** 17/14
**means [2]** 56/5 87/7
**meant [1]** 106/13
**Meanwhile [1]** 24/7
**mediation [10]** 44/14 45/1 45/6 45/7 53/10 53/12 64/21 64/24 67/2 67/4
**medical [1]** 6/20
**meet [3]** 17/20 85/11 117/9
**meeting [1]** 13/19
**mentioned [11]** 41/17 42/21 43/17 73/2 79/20 83/21 92/4 92/14 96/19 117/15 123/1
**merely [1]** 15/7
**message [6]** 35/4 36/14 36/17 37/16 97/17 97/19
**messages [15]** 28/21 29/2 30/9 31/4 31/14 33/17 33/21 33/24 34/3 34/17 36/7 38/14 38/21 96/23 97/2
**met [2]** 43/7 117/11
**MICHAEL [66]** 1/11 2/14 5/4 5/9 35/10 35/20 40/7 42/19 44/16 44/19 44/20 45/13 46/20 49/2 50/1 50/18 56/18 57/22 60/20 61/7 62/19 66/9 67/13 67/13 68/8 76/10 77/18 79/10 79/16 81/9 81/24 82/4 88/8 88/12 88/14 91/23 91/24 92/3 92/8 92/8 92/9 92/10 92/21 94/20 94/25 97/24 99/19 101/21 103/8 103/9 103/11 105/4 106/13 107/11 110/3 112/8 112/17 117/18 119/8 119/12 119/18 119/25 120/3 121/13 122/14 130/19
**Michael's [21]** 48/13 58/9 59/3 61/13 88/1 101/24 102/1 102/22 107/10 109/11 111/14 112/23 113/11 113/23 114/7 114/9 116/1 116/1 118/6 119/24 126/6
**Michaels [4]** 16/8 17/3 18/23 19/7
**microphone [1]** 39/8
**mid [2]** 73/15 101/17
**mid-morning [1]** 73/15
**middle [2]** 24/8 27/1 118/25
**might [2]** 129/3 133/7
**million [23]** 50/25 52/18 55/11 55/20 55/21 56/1 56/2 56/6 56/8 56/9 62/13 63/15 72/5 74/7 74/15 84/1 87/3 91/9 91/12 128/12 128/13 132/4 132/22 133/22
**mind [1]** 25/24
**mine [1]** 51/18
**minimum [1]** 120/18
**minute [5]** 5/20 6/8 23/19 51/7 59/4 94/18
**minutes [4]** 22/1 26/21 26/23 73/17
**Miramar [1]** 2/16
**missed [1]** 117/19
**missing [7]** 20/5 29/15 29/17 30/1 30/5 30/13 30/22
**Mississippi [1]** 85/17
**Misstates [1]** 128/19
**mistrial [1]** 131/14
**MJA:jkr [1]** 108/3
**modified [1]** 76/12
**moment [4]** 29/14 29/24 30/8 30/14
**Monday [3]** 22/23 48/23 97/21
**money [24]** 6/14 12/4 23/19 48/2 56/13 56/19 75/9 75/11 89/24 92/8 92/10 93/9 93/10 96/4 96/15 97/24 117/16 132/11 132/13 132/21 132/23 133/10 133/21 133/24
**monies [5]** 54/15 54/17 54/17 87/10 91/25 126/16 131/24 132/7
**monitoring [1]** 28/16
**month [5]** 94/14 129/9 129/11 129/17 129/19
**monthly [1]** 79/22
**months [3]** 12/14 111/5 133/22
**more [5]** 12/1 42/10 49/15 96/9 125/18

**M**

**Moreover [1]** 15/11

**morning [21]** 5/5 5/8 5/9 5/13 22/4 22/9 23/4 24/5 24/6 25/2 25/11 25/12 31/24 31/25 33/19 35/25 39/22 39/23 47/5 73/15 131/5

**most [2]** 17/15 20/21

**motion [6]** 47/10 57/7 60/3 61/5 133/1 133/9

**move [9]** 8/14 61/25 78/22 81/12 84/21 90/13 102/4 105/20 120/16

**moves [20]** 33/7 34/5 45/19 51/22 57/6 59/25 65/18 70/24 75/22 89/3 93/25 95/13 97/6 104/9 108/19 111/19 116/3 118/7 122/3 124/14

**moving [3]** 45/5 131/14 132/13

**Mr [7]** 9/17 21/6 60/11 80/13 85/15 90/22 103/13

**Mr. [118]** 5/10 7/2 7/4 7/12 8/6 9/23 10/3 10/16 10/21 11/8 11/9 12/17 13/2 17/1 17/4 18/24 19/5 21/12 22/14 22/20 23/22 25/7 26/2 26/4 28/2 28/7 28/18 29/19 31/20 31/24 37/13 37/25 38/2 38/5 38/15 38/20 43/18 44/8 44/11 44/11 44/12 44/18 45/5 46/19 48/25 50/15 50/17 50/24 53/5 56/25 57/3 57/21 58/10 59/17 59/22 61/22 62/10 68/11 68/16 71/11 71/17 74/1 75/8 75/11 76/3 76/9 77/15 78/19 79/24 80/7 80/25 82/25 83/3 89/10 90/18 90/25 91/2 91/18 92/2 92/2 93/9 94/12 94/19 94/24 95/3 95/6 95/10 95/19 96/4 96/15 96/17 96/24 96/24 96/25 97/3 97/9 97/16 97/19 100/3 101/20 105/13 105/18 105/23 106/18 106/23 106/24 107/2 108/7 112/16 117/9 117/11 121/15 125/15 126/18 131/6 132/8 132/12 133/12

**Mr. Avenatti [50]** 7/2 7/4 7/12 9/23 10/3 11/8 13/2 21/12 23/22 25/7 37/13 38/2 44/8 44/11 44/18 46/19 48/25 56/25 57/3 57/21 58/10 59/17 59/22 61/22 62/10 71/11 76/3 76/9 77/15 78/19 80/7 80/25 89/10 91/2 92/2 94/24 95/3 95/6 95/10 96/24 96/25 97/3 100/3 105/13 105/18 105/23 106/18 131/6 132/12 133/12

**Mr. Avenatti's [3]** 90/18 90/25 96/17

**Mr. Colorado [1]** 44/11

**Mr. Dean [1]** 5/10

**Mr. Geoff [1]** 106/24

**Mr. Goeders [4]** 26/2 31/24 37/25 38/5

**Mr. Johnson [31]** 10/16 10/21 11/9 28/18 38/15 38/20 43/18 50/24 53/5 68/11 68/16 71/17 75/8 75/11 82/25 91/18 92/2 94/12 94/19 95/19 96/4 96/15 96/24 97/9 97/16 97/19 101/20 117/9 117/11 121/15 125/15

**Mr. Johnson's [7]** 45/5 50/15 50/17 83/3 93/9 107/2 128/18

**Mr. Lewis [1]** 106/18

**Mr. Sagel [4]** 12/17 74/1 79/24 132/8

**Mr. Sheikh [1]** 22/20

**Mr. Sheikh's [1]** 22/14

**Mr. Sims [1]** 44/12

**Mr. Steward [5]** 8/6 17/1 17/4 18/24 19/5

**Mr. Taylor [1]** 106/23

**Mr. Wyman [5]** 26/4 28/2 28/7 29/19 31/20

**Mr. Yeghishian [1]** 112/16

**Ms [3]** 23/7 24/9 24/22

**Ms. [21]** 5/11 21/14 22/10 22/21 24/15 24/19 39/15 39/22 46/13 47/18 51/10 52/10 58/10 65/25 71/25 74/4 79/3 83/9 84/12 98/5 106/3

**Ms. Carlin [1]** 58/10

**Ms. Cefali [1]** 5/11

**Ms. Regnier [19]** 21/14 22/10 22/21 24/15 24/19 39/15 39/22 46/13 47/18 51/10 52/10 65/25 71/25 74/4 79/3 83/9 84/12 98/5 106/3

**much [24]** 7/1 14/9 18/16 36/20 40/25 46/21 47/7 47/24 48/2 48/4 50/23 55/10 55/18 58/10 58/25 60/14 64/2 78/10 78/12 80/22 83/9 83/12 83/15 127/25

**multiple [4]** 6/14 37/9 111/21 126/19

**my [37]** 7/24 8/6 8/24 12/4 12/9 12/22 13/18 14/2 14/13 18/3 19/4 20/5 20/23 23/25 27/9 28/6 29/24 30/9 30/14 31/3 31/3 32/24 40/18

48/13 86/5 87/21 98/24 100/15 101/5 113/16 104/3 104/16 109/9 84/13 116/17 132/6 132/23

**myself [2]** 91/24 105/6

**N**

**name [24]** 39/9 39/10 39/12 40/11 40/13 43/4 54/8 56/10 71/6 86/22 89/18 98/25 100/4 103/11 103/16 107/10 108/7 109/20 109/21 113/19 116/19 116/22 124/4 132/10

**named [2]** 85/25 124/3

**names [1]** 40/14

**nature [1]** 54/19

**near [3]** 29/19 34/25 64/18

**near-perfect [1]** 29/19

**necessarily [2]** 13/25 126/21

**necessary [2]** 7/11 102/11

**need [16]** 8/3 20/25 23/5 28/11 65/2 67/6 79/11 89/25 92/16 100/16 106/11 121/9 121/12 122/16 122/17 129/3

**needed [8]** 41/23 42/18 83/21 91/24 92/18 92/19 121/13 122/20

**needs [15]** 34/20 35/12 36/11 38/6 38/15 38/20 54/2 88/3 88/6 88/9 88/14 89/23 91/3 91/6 133/17

**negative [1]** 7/3 127/22 128/1

**negligence [2]** 10/23 11/23

**negligent [1]** 12/1

**net [2]** 87/4 87/8

**never [9]** 10/17 17/9 19/13 24/3 37/4 60/20 117/11 132/2 133/2

**new [7]** 6/9 6/9 7/2 35/20 109/3 109/11 121/10

**next [19]** 8/9 8/10 9/14 9/23 22/16 37/1 46/23 46/24 46/24 46/25 49/9 49/7 49/10 49/15 56/4 87/4 87/15 117/3 130/1

**NICOLA [1]** 2/3

**night [3]** 22/22 23/1 23/2

**nine [7]** 22/1 79/23 80/22 94/2 99/8 99/9 115/12

**Ninety [1]** 33/10 116/7

**Ninety-four [1]** 116/7

**Ninety-three [1]** 33/10

**Ninth [3]** 15/10 16/1 16/18

**no [51]** 8/19 13/16 16/7 16/8 16/12 18/12 19/17 22/12 23/12 23/14 23/21 26/13 26/20 31/18 37/25 38/5 38/12 38/21 38/22 39/18 43/8 43/19 44/2 62/1 65/19 66/25 67/6 70/25 75/10 75/12 82/7 83/25 91/4 91/16 93/12 94/1 95/14 99/22 103/15 103/20 108/21 112/5 115/9 115/11 117/5 117/11 120/8 131/24 132/22 133/22

**non [3]** 14/22 15/12 86/11

**non-contingency [1]** 86/11

**non-impeachment [2]** 14/22 15/12

**None [2]** 4/2 4/5

**nonowner [1]** 112/11

**nonpayment [1]** 79/21

**North [1]** 2/7

**not [117]** 5/2 6/1 6/9 6/16 7/2 7/6 7/11 8/6 8/17 9/7 10/1 10/3 10/10 10/22 10/24 11/2 11/8 11/13 11/23 12/14 12/1 13/3 13/7 13/25 14/4 15/6 15/8 15/23 16/1 17/2 18/17 18/20 18/22 18/23 19/7 19/12 19/21 19/22 20/4 20/11 20/15 23/6 24/1 25/19 26/5 26/12 28/14 28/19 28/20 30/11 30/17 32/13 42/6 42/3 43/2 43/8 46/1 48/22 49/12 49/18 51/3 53/3 53/6 53/13 53/19 55/3 60/21 63/17 73/7 73/11 73/14 73/18 73/19 73/20 73/22 76/12 77/12 77/21 78/4 79/24 80/12 80/15 83/1 83/4 84/19 86/8 86/10 88/6 89/9 89/25 91/7 93/5 93/12 97/10 100/8 100/18 101/15 101/22 102/2 107/6 111/24 112/5 113/17 116/5 118/11 125/12 125/22 126/16 126/17 129/7 130/23 130/24 131/3 131/7 131/10 133/13

**note [5]** 12/15 13/11 17/6 44/13 86/7

**noted [1]** 80/20

**nothing [9]** 16/3 20/8 29/7 29/10 30/21 31/9 38/23 78/2 78/3

**notice [4]** 22/13 23/20 24/5 80/18 89/25 91/1

**November [10]** 46/16 65/8 76/8 82/13 83/18 85/21 86/15 87/23 97/6

**November 12th [3]** 85/21 86/15 87/23

**November 1st [2]** 69/25 83/18

**November 22nd [3]** 46/15 47/6 49/25

**November 28th [1]** 48/22

**November 8 [1]** 97/16

**now [22]** 7/25 18/16 18/23 19/11 22/8 23/24 26/24 36/22 37/15 39/3 66/20 80/3 81/12 91/1 94/21 120/9 123/20 126/24 128/24 130/3 131/20 132/23

**number [29]** 5/14 5/16 11/20 12/16 12/24 13/1 13/4 15/15 18/3 18/9 19/16 20/25 33/21 52/17 53/13 53/25 68/14 68/16 68/18 68/21 68/24 69/11 69/15 69/16 74/23 78/3 84/3 87/12 119/18

**numbers [5]** 22/19 110/24 113/20 119/16 131/9

**O**

**oath [1]** 25/5

**object [2]** 80/3 80/5

**objection [56]** 10/8 21/12 27/17 27/22 29/21 30/2 31/8 34/7 38/8 47/9 47/16 50/7 51/5 51/6 51/13 51/24 51/25 53/18 53/21 53/24 58/19 59/5 59/7 60/1 60/2 61/4 62/1 65/16 65/10 70/25 75/23 80/10 80/20 81/14 84/4 84/24 90/14 91/13 94/1 95/14 96/5 97/7 99/23 103/18 104/10 104/12 105/2 108/21 111/20 118/9 119/22 120/17 124/15 128/19 129/14 131/16

**objections [9]** 10/5 13/9 21/22 58/1 58/11 59/10 84/25 98/12 102/9

**obligation [8]** 14/13 14/25 15/23 16/4 16/10 16/20 17/11 17/19

**obligations [5]** 54/12 15/8 16/3 17/20 131/6

**obtain [1]** 11/9

**obtaining [1]** 85/16

**obvious [1]** 133/13

**obviously [5]** 11/15 18/23 20/19 86/10 131/9

**occasioned [1]** 5/14

**occasions [1]** 13/23

**occupancy [1]** 112/11

**October [14]** 16/12 26/8 44/24 75/19 76/5 80/23 109/1 109/9 115/8 115/17 117/6 117/6 118/17 130/11

**October 13th [1]** 117/6

**October 15th [2]** 75/19 76/5

**October 16 [1]** 26/8

**October 16th [4]** 115/8 115/17 117/6 118/17

**October 22nd [1]** 44/24

**October 2nd [1]** 109/1 109/9

**October 31st [1]** 80/23

**off [2]** 20/23 25/13

**offered [3]** 51/12 51/13 51/13

**offering [1]** 21/10 89/6

**office [10]** 10/14 40/18 40/24 41/8 43/18 43/21 44/23 53/10 105/7 107/12 108/3

**OFFICES [1]** 2/15

**often [1]** 107/12

**Oh [2]** 45/25 52/18

**okay [21]** 8/11 8/15 26/16 28/10 39/18 39/19 41/16 42/5 56/23 68/4 70/14 80/19 88/11 94/20 94/24 95/24 103/24 111/8 125/14 126/1 128/2

**once [2]** 13/7 31/1

**one [49]** 5/16 6/12 6/12 8/1 8/19 11/7 11/18 11/19 13/7 16/2 17/7 18/7 19/5 20/18 22/3 24/20 32/12 32/16 37/18 38/18 39/17 39/17 40/12 41/16 43/19 44/20 46/2 51/4 52/4 56/22 63/22 67/5 82/4 84/9 87/17 91/7 94/18 95/2 99/6 113/12 114/1 125/8 125/23 125/24 125/25 126/12 126/24 128/1 133/6

**ones [1]** 78/4

**ongoing [3]** 10/24 10/25 11/4

**online [5]** 54/8 56/5 56/6 119/10 119/11

**only [15]** 9/18 10/6 16/15 18/11 21/19 21/23 30/25 43/19 43/19 44/20 46/10 54/2 86/9

**Q**

**only...** [2] 127/13 132/21
**open** [1] 12/18
**opening** [1] 12/2
**operating** [9] 47/24 48/4 93/7 99/2 99/15
99/18 100/17 100/25 102/18
**opinions** [2] 73/19 130/24
**opposing** [1] 23/17
**options** [1] 11/18
**order** [17] 5/20 6/8 9/3 15/6 15/7 15/11 16/11
17/19 18/3 19/12 22/7 22/21 23/5 23/25 24/1
24/6 132/2
**ordered** [1] 16/12
**original** [1] 21/1
**originally** [1] 19/9
**other** [27] 11/6 12/7 13/8 14/14 15/20 15/22
16/13 20/7 21/7 29/8 38/18 40/19 42/16 43/13
43/17 68/8 81/11 99/18 99/20 99/20 100/3
100/6 105/5 113/18 119/1 126/7 132/18
**others** [2] 43/22 125/11
**otherwise** [2] 18/17 97/11
**our** [13] 6/2 8/19 12/7 12/13 20/17 48/22 64/8
86/6 86/8 86/10 108/3 133/8 133/12
**out** [22] 6/11 7/7 18/14 22/21 22/23 23/5
23/24 24/6 42/11 52/11 57/22 57/23 65/1
66/24 76/25 95/2 107/12 117/9 119/20 130/2
132/4 133/15
**outside** [2] 82/19 125/10

**over** [23] 5/15 12/14 21/17 25/18 34/17 42/24
55/12 63/17 64/16 64/18 66/25 67/13 67/14
77/14 82/25 83/3 84/1 87/4 91/8 125/15
126/10 131/16 133/17
**overruled** [35] 30/3 31/9 33/10 34/13 47/16
48/18 50/8 53/21 56/17 57/9 58/22 58/12 60/5
61/6 66/12 75/24 77/23 78/25 81/16 84/6
91/15 93/3 96/6 99/24 103/19 104/11 104/12
105/3 105/22 110/2 119/23 122/5 124/16
128/21 129/15
**owed** [2] 78/10 78/12
**own** [8] 15/1 16/21 19/14 19/25 48/13 113/16
114/3 120/3
**owner** [2] 60/24 61/7

**P**

**p.m** [7] 6/13 7/20 27/5 27/11 115/6 115/18
134/3
**page** [84] 16/11 34/23 35/15 36/13 37/14
51/10 51/15 52/7 52/19 52/20 53/17 54/2 54/2
54/5 57/18 57/24 62/21 63/18 65/23 66/19
66/21 66/21 66/23 67/16 68/19 69/3 69/4 69/7
69/23 71/25 74/9 74/9 74/11 76/2 76/18 79/23
82/14 82/24 84/14 85/5 85/6 85/8 85/24
86/14 86/18 87/18 94/5 98/9 98/13 98/21
100/10 101/3 102/7 102/9 102/16 103/1 103/1
107/14 107/17 107/24 110/19 111/12 111/22
112/3 112/18 112/21 113/12 114/1 114/5
114/6 114/10 116/10 116/16 117/2 117/4
118/19 118/25 127/18 127/23 127/24 129/22
130/6 135/11
**page 1** [8] 54/2 54/5 69/3 74/9 76/2 85/8
102/16 112/3
**page 10** [3] 85/1 98/13 102/9
**page 12** [1] 34/23
**page 13** [1] 35/15
**page 14** [1] 36/13
**page 15** [1] 37/14
**page 2** [2] 116/16 118/19
**page 3** [7] 63/18 84/14 85/3 85/6 86/18
107/17 113/12
**page 4** [3] 68/23 69/7 114/1
**page 5** [5] 79/23 110/19 114/10 117/2 117/4
**page 6** [1] 82/14
**page 7** [8] 54/2 71/25 74/9 74/11 127/18
127/23 127/24 130/6
**page 8** [1] 68/11
**page first** [1] 52/7
**pages** [10] 3/11 21/18 53/25 54/3 54/4 84/22
85/4 99/8 100/19 117/20
**pages 1** [3] 54/3 84/22 85/4

**paid** [16] 77/9 77/12 77/17 77/20 77/21 78/4
80/3 80/11 83/12 83/13 88/6 91/24 117/9
126/16 126/21 126/22
**panel** [3] 7/8 8/21 8/21
**paper** [2] 8/8 41/21
**papers** [1] 12/13
**paperwork** [3] 88/8 110/14 117/10
**paragraph** [10] 63/18 79/23 80/17 80/22
81/23 82/1 82/2 86/3 113/12 114/1
**paralegal** [4] 40/18 40/21 41/2 41/4
**paralegals** [1] 64/11
**part** [31] 9/19 10/23 14/17 18/23 20/21 43/21
46/10 46/11 46/18 53/7 55/4 57/13 60/24
62/22 68/18 82/11 87/20 92/11 104/23 106/18
106/21 109/13 113/13 113/15 114/2 114/10
117/14 123/1 123/8 123/11 131/24
**Parthenia** [5] 109/6 113/3 114/12 116/14
119/2
**parties** [3] 5/17 14/10 81/23
**parts** [1] 41/1
**party** [4] 29/3 105/24 113/18 124/5
**party's** [1] 124/3
**pass** [1] 7/13
**passed** [3] 7/17 7/19 26/21
**password** [1] 119/16
**past** [1] 5/15
**Pause** [1] 51/8
**pay** [6] 48/21 75/8 75/11 80/10 92/15 94/21
**payable** [3] 99/3 100/12 102/19
**paying** [1] 101/19
**payment** [6] 23/19 82/6 82/21 87/15 132/15
132/17
**payments** [26] 11/17 11/17 42/17 77/1 83/1
91/10 91/11 91/18 91/19 91/21 92/4 92/17
92/18 92/20 92/21 92/24 93/11 94/25 101/19
126/9 130/2 130/4 130/15 132/2 132/4 132/17
**payroll** [3] 49/12 49/13 49/15
**pdf** [1] 107/13
**pending** [2] 121/9 121/11
**people** [1] 22/23
**people's** [1] 50/2
**Peoples** [1] 85/19
**percent** [4] 56/3 63/1 63/12 93/6
**percentage** [3] 56/1 63/9 63/12
**perfect** [2] 27/2 29/19
**period** [3] 15/2 16/23 33/15
**permission** [9] 92/16 92/18 92/19 96/4 96/11
96/17 103/14 108/10 120/7
**person** [5] 5/25 6/2 6/18 7/1 8/2
**person's** [1] 7/5
**personal** [2] 42/10 131/25
**personally** [1] 43/8
**perspective** [1] 6/22
**phone** [3] 29/3 29/12 31/15
**picked** [1] 7/4
**pinged** [1] 97/24
**place** [2] 9/6 121/10
**places** [1] 99/6
**plaintiff** [4] 1/10 2/2 42/9 63/8
**PLAINTIFF'S** [2] 3/4 3/7
**plaintiffs** [1] 42/8
**planned** [2] 15/1 16/21
**plastic** [1] 39/16
**pleasant** [1] 50/3
**please** [36] 7/15 25/20 25/22 25/24 28/12
28/21 30/8 31/1 31/10 34/23 34/24 35/9 35/15
36/13 36/17 37/15 44/13 46/18 56/21 61/14
73/18 75/13 78/13 80/4 81/3 82/9 84/12 86/7
88/17 97/20 106/23 107/6 117/10 123/23
131/1 131/2
**point** [24] 6/11 10/2 10/9 13/13 13/25 15/19
15/20 16/1 17/19 19/22 20/5 21/2 31/13 40/12
45/22 50/21 53/15 74/22 74/24 81/13 126/12
126/22 127/14 132/20
**pointed** [1] 13/4
**points** [1] 20/7
**pops** [1] 30/15
**portion** [2] 55/23 106/6
**position** [9] 7/24 8/12 12/7 15/16 16/6 16/7

17/6 17/24 21/4
**possible** [2] 36/2
**possibly** [1] 13/22
**post** [2] 7/9 8/19
**postage** [1] 125/10
**posted** [1] 8/19
**potential** [2] 64/19 104/17
**potentially** [1] 8/18
**practice** [2] 107/11 108/3
**practices** [1] 62/23
**precluded** [2] 18/19 19/8
**precluding** [2] 17/25 20/9
**prejudice** [1] 23/21
**prejudicial** [1] 133/3
**prepare** [2] 86/6 111/4
**prepared** [1] 111/2
**preparing** [3] 24/9 41/6 41/6
**prepping** [1] 50/5
**present** [9] 5/2 12/23 24/19 25/1 28/11 28/19
73/22 73/25 131/3
**presenting** [1] 17/9
**PRESIDING** [1] 1/8
**pretty** [6] 6/25 40/25
**prevent** [1] 19/14
**prevented** [2] 132/8 132/10
**previous** [3] 55/4 55/5 72/3
**previously** [5] 18/1 18/14 20/15 25/3 45/24
**primarily** [1] 17/3
**primary** [2] 12/21 40/5
**print** [1] 66/24
**printout** [1] 66/17
**prior** [6] 5/21 6/23 47/10 60/3 61/5 109/10
**pro** [2] 2/14 5/10
**probably** [2] 44/3 55/23
**problem** [3] 12/17 24/3 37/4
**Proceed** [2] 47/16
**proceedings** [5] 1/15 24/25 51/8 73/24
135/10
**process** [2] 8/24 18/4
**produce** [1] 16/12
**produced** [5] 18/2 18/10 19/9 19/25 20/14
**produces** [1] 20/19
**production** [4] 14/25 15/12 16/20 20/13
**professional** [1] 82/19
**program** [2] 123/6 125/20
**programs** [3] 125/22 125/23 126/7
**projected** [1] 86/10
**proper** [3] 41/12 41/13 132/1
**properly** [4] 14/24 15/11 16/20 133/14
**property** [4] 107/1 107/1 107/3 110/21
**provide** [6] 11/25 14/20 56/18 68/6 68/6
112/15
**provided** [5] 6/4 22/18 23/13 49/2 88/15
**providing** [4] 18/14 47/3 48/14 57/20
**provisionally** [1] 81/11
**public** [1] 38/7
**publish** [5] 34/24 44/5 52/7 54/5 65/22
**published** [3] 80/2 131/16 132/16
**pull** [9] 34/23 39/8 46/7 46/11 57/13 71/22
98/21 110/15 110/19
**pulled** [3] 6/6 6/12 18/14
**pulling** [1] 98/7
**purchase** [6] 10/22 104/21 106/25 107/3
117/10 132/12
**purely** [1] 10/25
**purpose** [8] 11/6 11/12 13/8 17/10 102/11
112/11 114/1 126/25
**purposeful** [1] 132/20
**purposes** [2] 82/3 98/16
**pursuant** [1] 135/7
**pursue** [2] 9/7 10/11
**put** [21] 11/24 14/10 16/7 17/2 21/6 21/12
49/18 76/16 76/23 76/24 105/7 106/14 107/10
107/21 119/17 119/18 126/20 131/24 132/3
132/6 133/2
**putting** [3] 22/20 68/1 68/4

**Q**

**qualify** [2] 53/19 90/3

## Q

**Quarter [1]** 87/17
**question [23]** 13/5 13/5 13/7 13/24 14/2 16/9 28/7 29/24 30/9 30/14 30/25 31/3 31/11 38/17 40/11 41/25 47/20 127/7 127/9 128/25 132/9 132/10 132/11
**questioning [2]** 58/19 59/9
**questions [11]** 11/6 11/7 11/7 12/20 14/8 29/20 38/1 46/1 107/6 122/25 123/1
**quick [3]** 5/24 20/18 46/22
**QuickBooks [28]** 41/19 41/22 123/6 123/9 123/15 123/17 123/22 123/23 124/7 125/1 125/23 125/24 126/15 126/1 126/5 126/6 126/7 126/15 126/20 126/23 127/1 128/17 128/24 129/6 129/21 129/25 130/6 130/15
**quickly [3]** 6/13 62/21 98/20
**quite [1]** 96/12
**quote [2]** 6/3 16/19
**quoted [1]** 33/1

## R

**R-e-g-n-i-e-r [1]** 39/11
**raised [1]** 51/5
**Ramon [1]** 5/7
**range [1]** 70/4
**rather [3]** 14/1 86/8 97/10
**re [2]** 8/16 106/21
**re-request [1]** 8/16
**reached [1]** 107/4
**read [25]** 7/9 8/8 30/11 33/21 33/22 35/9 36/17 37/16 44/11 46/18 47/20 47/22 49/9 49/21 76/9 79/11 82/1 86/3 90/2 106/21 107/20 113/15 121/8 122/13 128/3
**Reagan [1]** 2/10
**real [8]** 6/12 23/18 29/3 31/7 62/21 98/20 110/21 133/23
**realize [1]** 24/13
**really [4]** 49/22 109/21 112/5 125/12
**reason [3]** 26/19 132/5 133/23
**reasons [2]** 17/6 44/16
**rebuttal [1]** 16/3
**recall [19]** 17/2 25/14 28/3 28/4 29/16 29/18 29/19 32/3 32/8 32/18 39/2 39/4 73/11 73/14 117/8 120/4 120/5 125/15 132/8
**receipt [1]** 102/12
**receipts [3]** 64/12 64/16 64/17
**receive [3]** 62/25 79/24 126/18
**received [88]** 3/8 4/4 5/19 33/11 33/13 34/13 34/15 46/3 46/6 52/4 52/5 54/3 54/4 54/22 57/10 57/11 60/6 60/7 60/9 62/2 62/3 65/20 65/21 71/1 71/2 75/24 75/25 76/11 77/16 78/3 78/25 79/1 80/15 81/16 81/18 85/12 85/13 89/8 89/9 89/11 89/12 90/15 90/16 94/2 94/3 94/18 95/6 95/15 95/16 96/23 96/24 97/10 97/11 97/12 97/14 98/18 98/19 102/13 102/14 108/17 108/22 108/23 111/9 111/16 111/22 111/23 111/24 112/1 112/17 114/18 116/5 116/7 116/18 117/4 118/12 120/20 120/23 122/5 122/6 124/16 124/17
**recent [1]** 17/15
**recess [6]** 24/23 24/24 73/16 73/23 130/22 134/3
**reciprocal [7]** 14/11 14/12 14/21 15/8 17/10 17/20 131/6
**recite [1]** 14/7
**recognize [15]** 51/15 51/19 56/24 81/5 98/23 101/3 101/22 102/21 103/7 112/20 113/7 113/9 117/2 117/3 123/20
**recognized [1]** 15/22
**recollection [1]** 74/17
**reconcile [3]** 77/17 77/20 77/21
**record [15]** 7/16 9/8 9/14 9/20 14/1 17/1 17/4 47/22 53/20 84/23 126/24 128/24 129/21 130/16 131/11
**records [15]** 21/13 52/1 52/4 53/17 85/11 98/16 123/9 123/18 124/7 125/4 128/16 129/6 129/12 129/25 130/6
**recovery [3]** 63/1 86/24 87/1

## RECROSS

**RECROSS [3]** 3/4 4/1 38/3
**RECROSS-EXAMINATION [1]** 38/3
**redacted [2]** 120/19 120/21
**redaction [1]** 46/4
**REDIRECT [3]** 3/4 4/1 31/22
**reduced [4]** 72/12 72/13 74/15 74/19
**reference [1]** 35/12 86/19
**referenced [1]** 107/1
**references [2]** 48/6 48/9
**referencing [1]** 71/14
**referred [2]** 17/14 66/16
**referring [7]** 37/5 37/22 64/9 76/16 98/3 122/20 130/3
**reflect [3]** 17/18 86/8 86/10
**reflects [1]** 86/6
**refresh [1]** 14/15
**refused [1]** 14/24 16/20
**refusing [2]** 15/1 16/22
**regard [7]** 5/17 8/10 12/10 14/11 21/7 131/5 134/1
**regarding [5]** 5/23 12/25 44/14 88/9 88/14
**regards [2]** 5/21 36/11
**REGNIER [25]** 3/6 21/14 22/10 22/21 24/15 24/19 24/22 39/5 39/7 39/10 39/15 39/22 46/13 47/18 51/10 52/10 65/25 71/25 74/4 79/3 83/9 84/12 85/15 98/5 106/3
**Regnier's [2]** 23/7 24/9
**regular [1]** 115/9
**regulations [1]** 44/2
**reimbursable [1]** 125/11
**reimbursed [2]** 63/11 64/6
**reimbursement [1]** 69/22
**related [12]** 21/24 41/2 41/3 41/8 42/13 64/2 90/2 95/1 117/17 125/9 125/11 125/13
**relates [4]** 8/24 10/22 18/6 126/23
**relating [5]** 14/1 29/2 29/3 29/8 29/10 31/5 31/15 131/17 131/25
**relationship [1]** 79/13
**release [2]** 81/21 121/14
**released [2]** 70/11 92/10
**relevance [8]** 50/7 53/24 61/4 78/23 81/15 104/10 120/18 132/25
**relevant [1]** 11/13
**relief [1]** 8/16
**rely [1]** 14/17
**relying [1]** 21/20
**remain [1]** 39/2
**remarks [1]** 7/3
**remember [15]** 26/6 32/13 32/19 32/22 33/17 36/18 50/21 50/23 56/10 62/16 73/8 73/18 109/20 109/21 130/23
**remembered [1]** 32/24
**reminded [1]** 25/4
**remit [1]** 82/6
**rent [13]** 91/19 91/21 92/5 92/15 92/16 93/11 94/14 94/22 96/16 101/20 103/14 121/10 130/3
**rental [1]** 130/14
**repeat [3]** 13/8 32/21 38/17
**repetitive [1]** 13/24
**replied [2]** 95/3 96/1
**replies [1]** 93/19
**reply [9]** 36/5 36/24 37/3 90/6 90/9 90/18 90/25 98/1 107/14
**report [7]** 5/18 34/11 123/22 123/23 125/2 125/8 126/11
**reported [1]** 135/9
**reporter [2]** 7/21 135/17
**REPORTER'S [1]** 1/15
**reports [1]** 126/10
**represent [3]** 28/5 107/5 128/14
**representing [1]** 42/8
**represents [1]** 106/24
**reproduce [2]** 18/21 20/12
**request [9]** 5/16 8/16 9/18 9/23 14/10 96/16 97/11 97/19 109/11
**requested [5]** 8/17 44/19 66/9 97/21 112/8
**required [1]** 109/23
**requirement [1]** 20/14

## requirements

**requirements [3]** 21/7 21/9 85/11
**requiring [2]** 14/20 58/18
**reschedule [1]** 22/14
**research [2]** 73/21 131/1
**Residential [2]** 118/19 118/23
**respect [3]** 16/4 17/20 98/17
**respond [3]** 12/20 27/4 41/4
**responded [2]** 26/21 27/1
**responding [3]** 7/21 26/14 37/2
**response [10]** 9/24 26/13 27/8 27/9 27/11 35/21 36/1 37/7 37/19 95/7
**responsibilities [16]** 40/24 41/2 41/3 41/9 41/9 42/12 42/13 43/21 63/23 67/17 104/23 109/13 117/15 123/2 123/8 123/13
**responsibility [1]** 92/5
**responsible [3]** 41/4 41/11 42/16
**restate [1]** 31/10
**resulting [1]** 107/4
**resumed [2]** 24/25 73/24
**retrieving [1]** 32/7
**returned [1]** 20/4 33/19
**revenues [1]** 86/11
**review [2]** 5/25 7/5
**reviewed [3]** 67/11 83/22 124/10
**reviewing [1]** 32/24
**reviews [1]** 67/12
**right [27]** 13/2 27/13 32/16 32/23 33/2 33/22 33/25 34/21 36/22 37/14 44/3 45/25 48/21 63/24 68/18 85/6 87/25 94/17 95/22 112/24 113/2 113/10 116/25 119/9 122/13 127/8 129/4
**right-hand [1]** 127/8
**rights [4]** 8/24 14/20 15/9 18/4
**role [2]** 40/17 123/14
**roles [3]** 42/12 53/7 117/16
**Ronald [1]** 2/10
**RPR [1]** 1/19
**rule [10]** 13/1 14/6 14/13 15/6 16/4 17/13 18/3 23/23 43/24 131/5
**Rule 16 [4]** 14/13 16/4 17/13 131/5
**ruled [2]** 16/9 45/24
**rules [1]** 133/16
**ruling [5]** 47/10 57/7 60/4 61/5 131/17
**run [1]** 64/20
**runs [1]** 21/17

## S

**SACR [3]** 1/11 5/3 16/8
**SACR-16-76-JVS [1]** 16/8
**SACR-19-00061-JVS [2]** 1/11 5/3
**SAGEL [6]** 2/9 5/5 12/17 74/1 79/24 132/8
**said [26]** 5/24 6/18 16/11 24/14 24/18 36/8 36/19 37/5 37/20 37/23 41/17 43/9 50/5 50/9 50/10 50/13 74/16 80/8 82/11 92/7 96/13 97/24 110/5 110/6 129/2 131/9
**sake [1]** 10/13
**same [36]** 7/17 7/20 13/5 13/5 15/15 16/7 18/21 27/6 27/7 30/25 38/20 51/24 53/18 58/1 58/11 59/6 60/1 71/20 72/6 72/15 72/22 72/24 90/6 90/14 90/20 90/23 90/24 99/10 100/24 102/2 102/6 102/9 103/3 107/20 110/24 114/2
**San [1]** 2/16
**Santa [4]** 1/16 1/20 2/11 5/1
**Saturday [1]** 23/1
**save [2]** 16/15 64/12
**saw [2]** 53/3 53/6
**say [26]** 12/4 15/20 19/3 40/14 43/12 45/2 48/14 48/21 49/24 54/17 54/20 64/9 69/18 71/9 77/20 78/6 90/22 103/9 108/2 109/18 112/9 121/11 123/11 126/12 127/11 129/11
**saying [8]** 6/2 12/2 34/19 57/21 63/24 80/17 80/22 119/9
**says [24]** 6/19 14/18 16/3 49/21 55/4 56/4 56/4 62/22 62/25 68/19 76/10 86/3 86/4 87/20 106/7 106/18 107/14 118/25 124/2 124/21 124/25
**schedule [1]** 23/6
**scheme [1]** 10/24
**scope [4]** 12/15 15/11 38/9 38/10

**S**

**screen** [4] 49/18 55/3 66/20 132/16

**se** [2] 2/14 5/10

**second** [7] 6/12 52/7 57/18 57/24 84/9 86/24 124/5

**secretaries** [1] 64/12

**section** [12] 2/6 46/24 46/25 46/25 49/6 55/1 62/23 63/17 63/18 63/18 124/18 135/7

**securities** [2] 76/13 76/14

**security** [6] 11/10 11/10 11/16 11/25 76/12 78/7

**see** [68] 7/8 15/9 20/25 21/18 26/2 26/8 26/9 26/14 26/16 27/11 28/8 28/9 30/9 35/15 36/23 45/1 45/10 49/18 52/19 53/4 55/8 55/16 58/6 58/16 58/22 59/15 61/16 62/5 62/23 63/1 65/6 68/11 68/14 68/19 70/1 70/5 70/16 71/6 72/10 82/15 84/15 86/19 87/5 87/18 93/15 94/6 96/20 106/15 106/19 110/21 112/22 113/5 113/13 113/19 115/2 115/13 116/17 116/19 118/22 121/6 127/22 128/2 128/24 130/8 130/12 131/1 132/17

**seeing** [2] 41/11 41/12

**seeks** [1] 20/15

**seems** [2] 11/11 14/9

**seen** [2] 10/17 53/6

**SEFFENS** [3] 1/19 135/16 135/17

**seized** [2] 20/3 20/4

**SELNA** [1] 1/8

**send** [32] 46/13 49/24 57/22 57/23 57/25 61/11 68/8 68/9 73/9 73/12 88/12 92/8 94/14 95/24 96/4 103/23 105/5 106/3 107/10 107/13 109/11 109/18 109/18 111/3 111/13 111/23 111/3 112/8 115/25 118/4 119/9 119/20 122/15

**sending** [15] 49/22 60/11 60/13 62/15 62/17 66/7 77/13 77/14 77/17 77/18 106/13 109/8 112/6 115/2 119/13

**sense** [1] 6/3

**sent** [58] 5/23 26/16 33/24 35/4 36/14 46/19 56/24 57/3 59/17 59/21 60/14 61/18 61/22 62/9 62/19 65/8 65/15 70/18 75/15 75/18 76/3 76/9 77/1 78/19 88/8 88/8 88/12 88/13 88/19 88/25 89/15 89/20 96/15 96/24 97/16 97/23 97/23 104/5 109/5 109/15 109/24 110/14 111/9 111/15 115/17 116/10 117/25 118/14 119/12 119/13 120/3 120/6 120/10 120/12 121/1 121/21 121/24 122/8

**sentence** [5] 46/19 82/1 121/5 121/8 122/13

**separate** [2] 8/15 80/7

**separately** [1] 93/10

**September** [3] 76/21 77/6 130/11

**September 30th** [1] 76/21

**serious** [4] 7/25 8/3 8/18 8/18

**servers** [1] 20/4

**service** [1] 126/18

**set** [19] 23/23 89/23 90/1 91/3 91/6 91/7 93/10 109/11 109/14 109/24 110/9 110/12 110/13 110/14 110/25 119/11 121/13 122/15 122/17

**sets** [2] 67/21 109/12

**setting** [2] 38/6 88/6

**settle** [2] 64/25 129/7

**settled** [5] 50/15 50/17 53/4 53/8 80/25

**settlement** [29] 11/16 23/18 38/7 44/14 45/2 45/6 50/19 50/20 53/3 53/1 53/4 53/5 53/8 55/24 63/9 63/10 64/3 64/19 64/24 67/22 69/22 81/8 81/21 82/11 93/10 107/4 128/15 129/4 129/6

**Settlements** [1] 54/19

**settling** [1] 82/3

**seven** [3] 26/23 86/18 89/11

**Seventy** [3] 95/15 104/11 105/22

**Seventy-eight** [1] 105/22

**Seventy-five** [1] 104/11

**Seventy-three** [1] 95/15

**several** [7] 5/15 6/6 10/16 14/7 77/7 110/12 130/7

**severally** [1] 82/5

**severance** [3] 45/21 45/23 120/18

**shape** [1] 31/5

**SHARON** [3] 1/19 135/16 135/17

**shawn** [1] 82/24

**she** [5] 7/21 9/9 10/18 99/7 126/13

**She'll** [1] 10/18

**sheet** [1] 125/13

**Sheikh** [1] 22/20

**Sheikh's** [1] 22/14

**shield** [2] 17/7 39/16

**short** [2] 23/5 114/25

**short-circuit** [1] 114/25

**should** [8] 8/5 12/3 16/6 24/1 24/7 24/20 30/16 44/17 84/3 84/7 96/20 132/2 133/1

**show** [5] 15/13 46/8 64/4 69/20 76/12

**showed** [2] 32/19 32/23

**showing** [2] 46/10 67/25

**shown** [3] 10/16 64/5 96/9

**shows** [3] 7/6 58/5 77/1

**side** [4] 8/19 43/13 107/25 127/8

**sidebar** [1] 47/14

**sign** [5] 101/21 103/11 103/13 103/16 107/10

**signatories** [2] 41/1 99/20

**signatory** [4] 42/22 99/15 99/18 100/6

**signature** [29] 87/18 87/20 87/25 98/23 98/24 99/13 100/14 100/15 100/22 101/3 101/5 101/22 101/25 102/21 102/22 103/7 108/7 112/20 112/21 112/22 112/23 112/25 113/2 113/10 113/24 113/25 114/8 116/24 117/3

**signed** [17] 99/11 101/21 103/8 103/9 108/4 108/8 112/10

**similar** [2] 10/6 15/19

**simple** [1] 23/25

**simply** [3] 30/15 89/10 97/10

**Sims** [1] 44/12

**since** [4] 7/9 19/18 19/23 37/17

**single** [1] 18/22

**singular** [1] 43/17

**sir** [24] 8/8 8/14 13/7 14/4 19/1 19/17 19/22 20/5 22/5 24/13 25/4 25/11 28/23 29/19 29/24 30/7 30/14 30/25 31/3 38/12 39/3 59/10 80/12 80/14

**sit** [2] 38/12 73/7

**situation** [1] 18/8

**six** [5] 62/2 63/18 78/25 121/5 127/21

**Sixth** [1] 13/12

**Sixty** [1] 94/2

**Sixty-nine** [1] 94/2

**skim** [2] 99/8 101/16

**skip** [2] 14/23 15/5

**skipping** [1] 6/19

**slightly** [1] 55/15

**slip** [3] 51/19 52/10 52/13

**slips** [2] 64/13 129/8

**small** [2] 8/22 108/5

**snapshot** [3] 46/22 47/4 49/2

**so** [62] 6/1 6/4 6/5 6/20 7/2 9/14 9/15 10/10 10/22 10/24 11/2 12/1 21/1 22/23 22/24 23/2 23/6 24/23 25/21 26/16 27/21 28/6 30/7 42/16 46/20 47/6 48/25 55/25 62/12 64/9 64/4 64/4 64/14 65/2 66/3 66/19 67/5 69/3 72/6 73/7 75/5 78/20 82/20 89/14 91/6 91/9 96/18 107/12 108/10 109/25 111/4 111/6 119/17 120/6 126/1 127/16 128/16 129/19 131/1 132/16 133/22

**social** [4] 11/9 11/10 11/15 11/24

**software** [1] 123/6

**some** [20] 11/6 42/9 42/10 42/23 43/2 50/21 60/20 64/11 65/2 74/22 88/8 88/10 88/13 101/19 101/21 107/25 122/25 125/10 129/3 129/17

**someone** [4] 7/25 89/25 101/23 105/7

**something** [6] 7/13 24/6 30/15 41/17 64/21 129/10

**sometimes** [9] 64/23 67/14 68/7 105/4 119/6 119/10 119/13 126/17 129/2

**sorry** [6] 6/11 28/15 32/21 46/20 47/19 49/19 49/21 49/22 49/24 51/3 52/18 56/22 69/3 72/18 92/13 114/22

**SOUTHERN** [1] 1/6

**speaking** [4] 25/13 47/2 80/9 127/18

**speaks** [1] 132/19

**special** [14] 2/5 35/4 36/4 36/6 38/20 38/20 88/3 88/6 88/9 88/14 89/23 91/3 91/6

**special-needs** [13] 34/20 35/12 36/11 38/6 38/15 38/20 88/3 88/6 88/9 88/14 89/23 91/3 91/6

**specific** [4] 32/16 98/17 102/12 122/25

**specifically** [1] 26/6

**speculate** [1] 27/20

**speculation** [5] 27/17 66/10 83/6 84/5 91/13

**spell** [1] 39/9

**spend** [1] 133/20

**spent** [4] 33/15 130/16 132/7 132/23

**spoke** [1] 102/6

**Spotlight** [1] 89/19

**spread** [1] 42/17

**spreadsheet** [2] 76/11 76/15

**Spring** [1] 2/7

**SSI** [3] 89/17 89/19 89/25

**staff** [3] 7/18 41/12 41/12

**stamp** [3] 18/3 18/9 19/10

**stamped** [1] 20/10

**stand** [4] 6/21 10/14 48/7 48/9

**standard** [2] 107/11 108/3

**standing** [1] 58/18

**start** [13] 41/16 54/8 60/18 77/14 86/21 91/8 94/5 98/20 100/10 106/2 112/21 116/10 125/7

**started** [5] 6/16 6/25 76/25

**starting** [5] 76/2 79/3 86/19 106/21 112/3

**starts** [2] 49/19 121/5 121/8

**state** [4] 39/9 54/10 60/2 72/6

**STATES** [19] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 5/4 14/17 15/9 15/17 15/25 16/7 16/16 16/17 18/6 135/8 135/12

**statute** [1] 90/2

**stenographically** [1] 135/9

**steps** [2] 38/13 38/19

**STEWARD** [8] 2/15 2/15 5/11 8/6 17/1 17/4 18/24 19/5

**stick** [1] 126/24

**sticking** [1] 100/3

**still** [4] 25/5 36/2 67/2 74/4

**Stipulation** [1] 81/21

**stores** [1] 60/25

**strategic** [1] 24/2

**street** [10] 1/20 2/7 2/11 106/22 109/6 110/24 113/20 114/12 116/14 119/2

**stuck** [1] 117/20

**stuff** [2] 46/21 121/4

**styled** [1] 12/25

**subject** [20] 46/3 46/16 57/16 60/12 62/5 62/7 65/25 71/4 76/7 79/3 89/15 90/22 90/24 94/10 104/15 106/9 109/2 116/14 121/3 122/11

**submit** [2] 12/21 24/8

**submitted** [5] 12/14 73/20 130/25

**subsequent** [2] 9/3 101/13

**substantive** [1] 17/16

**such** [2] 6/12 10/8

**sued** [1] 79/16

**suffice** [1] 15/19

**sufficient** [13] 7/10 7/11 8/10 8/13 8/22 8/23 14/1 52/2 53/22 85/10 98/15 98/16 102/11

**suggested** [1] 86/5

**suit** [1] 79/19

**Suite** [1] 1/20 2/11 2/16

**Sunday** [3] 22/9 23/4 24/5

**Sunrise** [2] 101/7 101/8

**supervisor** [1] 40/5

**supplies** [1] 41/13

**support** [1] 85/6

**supposed** [2] 22/7 107/8

**Supreme** [2] 13/14 13/15

**sure** [19] 14/1 28/25 29/13 30/12 32/22 38/18 42/3 46/9 49/12 49/23 50/21 53/6 66/25 67/6 67/9 67/16 90/1 93/6 125/22

**S**

surprise [3]  16/7 20/13 20/14
sustain [2]  10/8 13/9
Sustained [7]  27/23 29/22 30/19 30/24 38/10
 59/8 83/7
Swenson [1]  16/16
Swetman [1]  85/25
SWORN [2]  25/3 39/7
system [3]  41/15 64/14 64/16

**T**

table [1]  5/6
take [27]  5/14 13/10 13/21 21/8 22/1 22/21
 28/21 29/14 29/24 30/8 30/14 32/6 39/15 50/3
 73/15 80/4 129/12 129/17 130/20 131/12
 131/19 131/21 133/4 133/5 133/13 133/15
 133/19
taken [6]  15/15 24/24 38/13 38/19 73/23
 134/3
takes [3]  46/21 133/21 133/23
taking [2]  58/14 116/6
talked [4]  63/22 72/7 116/11 125/14
talking [5]  6/13 31/6 41/5 45/1 129/1
Taylor [2]  106/18 106/23
technology [1]  5/12
tell [14]  10/10 11/18 29/14 29/25 30/4 30/12
 30/15 31/13 50/19 55/25 97/25 110/9 124/9
 125/12
telling [2]  47/6 48/25
ten [1]  115/12
term [1]  17/12
terms [2]  37/10 50/19
testified [2]  28/25 34/18
testify [6]  10/19 13/20 12/10 22/24 23/3 23/15
testifying [1]  23/21
testimony [4]  22/25 23/7 24/9 32/15
text [30]  28/21 29/2 29/18 30/9 31/4 31/14
 33/16 33/21 33/24 34/3 34/17 35/4 35/9 35/19
 35/23 36/7 36/14 36/17 37/7 37/16 38/14
 38/21 96/23 97/2 97/16 97/19 97/23 97/23
 97/23 105/6
texts [3]  96/12 96/13 98/3
than [13]  14/14 16/12 19/16 29/8 49/15 66/4
 67/22 82/7 99/20 100/3 100/6 125/18 128/7
Thank [26]  9/1 9/13 9/16 9/22 12/11 21/5
 24/16 25/8 27/25 31/21 32/12 34/14 37/25
 39/4 39/14 39/19 46/5 52/6 59/11 74/2 89/13
 97/13 119/3 122/23 131/23 134/2
Thanks [3]  37/2 44/16 94/16
that [545]
that's [55]  8/1 8/11 8/24 9/12 11/10 11/13
 12/7 14/6 18/11 18/25 19/1 19/20 19/22
 20/15 20/24 27/11 27/24 28/14 29/6 30/9
 30/21 34/22 41/15 51/18 54/15 56/1 58/9 59/7
 63/14 66/21 67/11 76/18 78/10 78/12 79/18
 80/1 95/1 98/24 100/15 101/5 102/22 112/23
 112/24 113/11 113/23 113/25 114/7 116/19
 119/19 121/15 125/1 125/4 131/9 133/1
 133/20
their [20]  14/19 15/1 15/2 15/3 15/9 16/14
 16/21 16/22 16/23 22/22 50/4 64/12 80/9
 108/5 116/6 123/18 132/3 132/5 132/20
 132/22
them [40]  10/17 10/17 10/18 12/19 14/20
 22/22 28/22 33/19 39/10 33/22 43/2 43/2 50/3 53/11
 60/20 60/21 64/13 64/18 66/25 67/12 67/13
 67/14 69/10 70/7 76/11 79/12 83/20 95/2 98/8
 98/10 100/22 109/12 110/12 112/8 112/17
 117/18 117/18 119/19 123/12 126/13 132/10
then [38]  5/21 12/19 33/19 35/23 36/3 36/22
 36/24 37/7 41/22 46/24 48/21 49/6 54/22 55/8
 63/17 64/20 67/23 68/18 69/7 73/6 76/15 77/7
 94/17 97/22 101/13 106/15 108/5 108/5
 118/25 119/1 119/8 119/12 119/14 119/18
 124/21 126/13 129/1 133/23
theory [5]  132/3 132/5 132/21 132/22 133/12
thepeoples.com [1]  85/25
there [85]  5/16 11/6 11/7 12/1 12/7 13/16
 14/18 15/20 18/12 22/3 23/21 24/20 29/7

 29/25 30/21 30/22 36/14 38/12 40/20 40/23
 41/6 42/12 42/18 43/15 47/13 50/15 52/4
 52/17 54/22 55/4 57/18 58/5 58/15 59/5 65/11
 65/13 66/14 66/25 67/2 67/9 68/14 68/14
 68/18 68/23 69/25 71/6 74/8 76/15 83/10
 83/12 83/15 84/1 85/24 87/20 88/10 88/10
 92/4 92/15 92/24 94/21 96/12 99/20 100/18
 105/8 107/24 109/22 112/22 115/20 115/21
 116/22 119/1 121/5 121/15 125/18 127/8
 127/21 128/6 128/19 129/13 129/22 129/24
 130/7 131/24 132/5
there's [5]  7/17 63/17 67/6 102/25 133/22
these [37]  8/19 10/20 12/16 12/19 13/17
 13/19 31/5 34/17 36/7 57/24 64/16 66/24 67/9
 72/15 72/22 72/24 78/2 83/19 92/16 93/10
 96/23 97/3 98/17 99/9 99/13 101/19 101/21
 103/13 109/24 111/13 112/15 125/9 125/11
 126/9 126/10 130/6 130/14
they [59]  6/2 7/6 12/18 13/20 14/22 14/25
 15/2 16/13 16/21 16/23 19/15 20/4 20/5 22/23
 23/1 24/5 28/14 31/14 31/15 36/19 37/2 37/5
 37/20 37/20 37/21 37/23 42/7 53/8 53/11
 54/22 54/23 54/24 57/23 64/14 64/21 64/21
 64/21 64/25 67/16 67/16 70/4 76/12 77/10
 77/12 80/22 93/5 93/6 97/2 100/21 100/21
 100/23 100/24 101/1 109/23 111/24 116/7
 120/10 132/14 132/15 132/16
they're [8]  21/22 42/3 65/1 65/3 67/11 80/2
 125/13 129/2
thin [1]  18/14
thing [13]  7/17 8/2 18/11 22/24 23/3 23/4 41/7
 41/14 49/9 64/13 67/5 119/17 127/13
thing you [1]  49/9
things [4]  5/20 22/15 24/14 40/19 41/16 50/2
 54/19 60/21 130/18 132/18 133/14
think [23]  6/25 7/5 7/7 8/22 11/10 12/13 13/4
 13/12 13/23 17/10 20/23 21/3 22/19 24/11
 24/13 29/16 30/16 72/18 73/15 80/11 93/5
 125/14 130/20
thinks [2]  20/20 133/12
third [2]  42/8 97/9 107/24 130/7
this [245]
THOMAS [1]  25/3
those [35]  12/20 14/14 14/25 16/21 18/7
 19/19 19/21 19/23 19/24 21/24 27/15 28/13
 29/8 33/21 33/24 38/20 43/1 47/2 69/4 72/24
 77/9 78/3 86/9 88/15 98/7 101/16 105/1
 112/12 122/19 125/23 130/10 130/18 132/2
 132/4 132/6
thought [2]  6/20 30/12
thoughts [1]  12/10
thousand [3]  70/4 100/12 130/8
thread [2]  70/21 78/15
three [13]  11/18 11/20 13/6 23/24 33/10 47/7
 48/15 60/5 74/8 79/19 80/7 95/15 130/1
through [17]  8/6 13/3 15/18 17/8 37/14 46/21
 69/3 69/4 69/7 90/2 99/9 100/18 101/15
 116/10 123/9 129/23 129/23
thus [2]  18/11 18/13
tied [1]  133/10
time [69]  9/5 14/5 19/24 20/7 20/17 21/4 26/7
 31/13 32/6 33/16 38/20 40/1 40/3 40/20 40/23
 45/4 45/18 46/21 47/5 47/12 47/18 49/13 50/4
 50/24 51/21 53/3 53/4 53/8 54/1 57/5 59/24
 61/24 63/9 65/17 70/23 73/3 75/1 75/21 77/11
 77/17 77/19 78/21 79/15 80/12 84/20 89/2
 90/12 93/2 93/24 95/12 96/15 97/5 99/23
 100/2 100/5 104/8 104/20 111/18 115/5 115/9
 115/10 116/2 119/6 122/11 124/1 124/13
 126/12 127/8 127/10
times [24]  13/2 13/6 13/20 20/23 23/24
 37/9 42/16 44/19 48/6 53/10 67/1 68/8 105/5
Timeslips [2]  125/21 125/21
title [5]  40/17 40/18 46/25 81/20 135/8
titled [1]  49/6
today [8]  7/22 10/14 22/11 38/12 46/22 97/20
 122/15 124/10
together [9]  7/10 26/25 67/14 68/2 68/5 69/10
 76/16 76/23 76/24

told [7]  22/9 35/13 92/1 92/14 94/21 110/11
 125/25
TOM [2]  3/5 37/4
tomorrow [2]  28/13 97/25
too [1]  40/19
took [3]  25/5 46/20 133/25
top [23]  20/23 46/10 46/11 52/8 54/8 57/13
 65/22 71/4 71/12 76/2 79/3 81/20 81/20 95/3
 98/21 98/25 107/14 114/5 115/1 118/19
 120/25 124/2 124/18
topics [5]  12/20 29/8 29/10 31/5 31/6
total [12]  67/23 68/14 68/16 68/19 68/21
 68/23 69/1 71/13 76/13 76/14 78/7 94/15
totaled [2]  82/20 82/25
touch [2]  12/18 117/7
touched [1]  28/22
towards [5]  39/9 44/20 45/5 45/7 49/19
tracing [1]  133/20
track [11]  63/23 64/1 64/7 64/8 123/2 125/7
 125/18 126/1 126/4 130/14 130/18
transaction [3]  31/7 31/7 31/17
transactions [1]  29/4
transcript [4]  1/9 1/15 135/9 135/11
transfer [4]  56/6 56/12 56/19 120/6
transferred [2]  56/8 70/11
transfers [4]  117/17 119/5 119/20 120/3
transmitted [3]  89/10 111/24 116/7
travel [2]  22/15 22/22
trial [18]  1/12 6/1 6/18 8/10 8/17 12/25 14/22
 15/3 16/23 18/11 18/13 21/20 21/21 41/7 41/7
 50/5 50/11 131/17
trials [1]  7/23
tried [1]  22/14
trolling [1]  7/25
true [4]  16/15 87/21 120/12 135/8
trust [23]  34/21 35/11 35/12 36/12 37/9 38/6
 38/15 38/20 54/11 54/13 54/14 55/19 56/13
 72/7 88/3 88/6 88/9 88/14 89/23 91/3 91/6
 93/6 107/3
trusts [2]  89/19 90/1
truth [11]  11/18 11/25 79/25 80/16 89/7 89/9
 97/10 111/23 111/25 116/6 118/11
truth.' [1]  15/14
try [1]  41/1
trying [3]  13/24 22/20 24/8 27/16 36/25
TUESDAY [2]  5/1 22/24
Tully's [1]  60/24
turn [10]  25/20 51/10 66/19 82/17 85/15
 86/14 86/18 117/2 127/6 129/22
turned [1]  67/16
tweet [14]  5/17 5/24 6/12 6/13 6/16 6/17 6/22
 7/19 7/20 7/21 8/19 9/2 9/6 9/8
tweeted [1]  5/25
tweeting [1]  8/1
tweets [4]  6/7 8/19 9/5 9/5
Twenty [1]  85/12
Twenty-five [1]  85/12
Twitter [4]  5/25 6/24 7/1 7/5
two [22]  7/4 7/17 7/18 17/6 17/12 22/1 25/23
 37/18 40/14 41/1 72/10 72/12 74/18 77/3 82/1
 82/2 94/12 96/9 125/22 125/24 125/25 133/7
type [7]  41/7 41/14 42/1 42/10 64/13 104/24
 119/16
typed [2]  108/4 108/6
types [1]  42/8
typically [1]  53/7
typing [2]  53/11 105/8

**U**

U.S [4]  13/14 13/15 31/14 135/17
unavailability [1]  24/2
unchecked [1]  12/19
uncover [2]  11/19 11/25
under [17]  14/6 14/13 25/5 48/21 49/10 51/22
 98/8 98/8 112/21 124/4 114/1 116/24 128/6
 131/19 132/3 132/5 132/20
underneath [1]  14/17
understand [12]  8/11 36/8 37/22 42/3 45/22
 63/4 64/23 80/13 86/12 106/11 107/8 113/17

**U**

**understanding [15]** 19/4 27/12 45/4 48/11
48/13 54/13 55/21 56/12 61/1 61/2 74/23 87/7
109/7 109/8 133/8
**Understood [2]** 12/11 25/6
**undue [1]** 14/5
**unemployed [1]** 39/25
**unfair [1]** 56/1
**Uniform [2]** 118/19 118/23
**UNITED [19]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
5/3 14/17 15/9 15/17 15/25 16/7 16/16 16/17
18/6 135/8 135/12
**unquote [1]** 6/3
**until [10]** 9/11 24/23 32/19 37/9 48/23 73/20
129/9 130/23 130/25 133/14
**unusual [1]** 19/13
**up [54]** 5/14 7/13 7/17 7/19 10/15 22/1 23/7
24/23 25/22 26/25 32/5 38/6 41/25 46/7 46/11
49/23 53/11 54/25 57/13 71/22 76/21 88/6
89/23 90/1 91/3 91/6 91/7 98/8 98/21 104/24
106/6 109/11 109/12 109/14 109/24 110/5
110/9 110/12 110/13 110/14 110/15 110/19
110/25 119/11 121/13 122/15 122/17 124/18
127/10 127/18 131/13 131/19 131/21 133/5
**updated [3]** 37/17 66/2 66/7
**updates [1]** 35/10
**upon [3]** 14/17 54/23 63/10
**Urena [1]** 15/10
**us [8]** 5/6 5/11 8/22 60/17 60/19 60/23 61/3
61/11
**USAO [5]** 18/2 18/9 19/10 20/10 20/25
**use [8]** 14/13 14/13 18/9 18/13 20/20 21/12
92/24 131/7
**used [6]** 6/14 14/14 14/17 21/1 93/4 126/1
**using [6]** 17/25 18/19 19/8 19/14 20/10 126/5
**usually [2]** 67/13 129/12
**UTC [1]** 115/9

**V**

**vacation [7]** 22/16 49/22 49/25 50/1 50/4
50/10 50/13
**vacations [1]** 50/2
**Van [1]** 13/14
**varies [1]** 129/16
**various [7]** 21/17 41/5 42/24 77/6 78/2 106/25
109/14
**Vegas [1]** 132/24
**version [2]** 17/13 17/13
**versus [12]** 5/4 13/13 14/17 15/10 15/17
15/25 16/8 16/16 16/17 18/6 87/2 87/13
**very [7]** 14/3 19/13 22/6 23/16 23/25 125/1
126/19
**via [1]** 90/10
**view [1]** 15/13
**violate [2]** 15/6 15/9
**violated [1]** 14/19 23/24
**violation [3]** 22/9 131/17 132/1
**violative [1]** 18/3
**VOL [1]** 1/12
**Volume [4]** 44/3 53/14 96/20 102/3
**Volume 4 [1]** 96/20
**Volume 5 [1]** 102/3
**Volume 7 [1]** 53/14
**vs [1]** 1/10

**W**

**waiting [6]** 34/20 36/2 36/4 36/6 36/8 36/10
**waning [1]** 20/17
**want [22]** 8/20 9/8 11/2 20/7 20/9 24/5 26/7
27/20 28/25 34/17 39/17 46/8 47/14 49/23
53/16 65/1 97/25 99/9 101/16 131/14 133/19
133/20
**wanted [5]** 49/4 104/21 105/5 105/6 110/9
**wants [2]** 7/8 12/4
**was [174]**
**wasn't [2]** 19/24 109/21
**way [11]** 31/5 38/18 83/18 93/18 95/2 107/24
124/3 125/18 127/18 129/22 129/23
**ways [1]** 119/13

**we [117]** 5/11 5/14 5/19 5/23 6/1 6/18 7/9 8/3,
11/24 11/25 12/1 12/3 13/1 20/20 21/5 21/20
21/25 22/1 22/8 22/8 22/14 22/19 22/19 22/24
23/4 23/6 24/5 24/10 24/13 24/23 25/3 25/15
25/21 26/24 27/16 28/22 34/18 34/24 36/19
36/22 36/25 37/15 39/1 39/16 41/12 43/19
43/20 46/7 46/22 46/24 47/4 51/12 52/7 53/11
54/5 54/25 55/12 57/13 59/10 64/4 64/8 64/9
64/9 64/18 64/18 64/20 66/19 66/24 72/7
72/15 73/15 73/16 76/11 77/16 77/17 79/11
79/12 79/20 81/12 84/1 86/14 89/6 89/23
89/25 90/7 91/1 91/19 93/4 94/5 98/8 100/9
102/6 107/5 109/10 116/11 119/6 119/11
119/14 123/10 123/11 124/3 124/4 124/25
125/14 125/20 125/20 125/22 127/17 129/1
129/7 129/7 129/17 130/17 130/20 132/1 131/1
131/11 133/1
**we'd [1]** 126/18
**we'll [7]** 21/25 42/24 66/19 116/10 131/21
133/5 133/25
**we're [6]** 10/10 11/2 21/20 24/21 46/9 133/20
**wealth [2]** 131/18 133/9
**week [16]** 14/9 22/6 22/16 23/9 23/11 23/13
24/4 25/5 36/19 46/23 49/7 49/11 49/15 66/3
66/4 66/8
**weekend [1]** 25/18
**weeks [2]** 7/4 37/18
**well [29]** 6/15 11/5 12/8 12/9 15/19 18/7 19/20
20/21 21/18 21/25 28/5 29/14 29/19 35/10
46/8 65/12 80/10 84/25 86/21 89/4 96/13
106/9 109/15 114/19 121/10 124/10 127/9
132/14 133/21
**went [10]** 54/23 54/24 54/24 55/12 56/9 57/23
64/21 84/1 95/2 126/10
**were [113]** 6/17 6/18 6/24 7/9 9/5 11/7 20/3
20/4 20/4 20/6 23/1 25/13 27/16 28/10 28/15
28/16 31/14 32/2 33/5 37/5 38/13 38/14 38/19
38/21 40/20 40/20 40/23 40/23 41/2 41/25
42/2 42/7 42/8 42/21 42/25 43/9 43/10
43/12 43/17 43/23 44/8 52/22 53/8 53/11
55/25 60/11 62/1 62/16 64/18 64/21 67/25
69/3 69/21 74/11 74/19 75/2 75/5 76/20 77/9
77/10 77/12 78/3 78/4 79/12 79/15 80/25
82/24 83/1 83/4 83/19 84/18 85/15 88/10 90/7
91/21 92/4 92/4 93/5 93/6 94/21 94/25 96/10
107/17 107/23 110/25 111/24 112/6 114/10
116/7 123/18 126/16 126/11 126/16 126/17
126/25 127/7 129/1 129/25 130/2 130/7
130/10 130/14 131/6 131/15 132/7 132/11
**weren't [1]** 50/3
**West [1]** 1/20 2/11 101/7 101/8
**what [155]**
**what's [43]** 23/15 29/10 29/12 49/5 49/9
49/23 52/13 52/15 54/8 55/5 57/13 57/16
65/25 68/21 69/1 72/3 74/12 76/7 79/3 79/6
87/12 89/18 89/20 90/18 94/8 98/25 102/16
104/15 106/9 108/25 109/2 111/2 112/24
113/2 115/5 115/17 119/1 121/1 121/3 124/21
128/3 128/9 128/11
**whatever [3]** 41/23 42/18 132/9
**whatsoever [2]** 38/5 38/13
**when [55]** 6/15 11/15 12/2 12/18 19/24 20/3
22/14 23/3 25/13 27/4 27/9 29/19 36/8 37/5
37/22 40/1 40/5 40/14 43/12 46/13 48/6 48/9
50/22 51/13 53/8 54/25 56/12 64/4 9
64/15 64/18 67/1 67/5 69/10 69/18 70/11
77/20 84/1 91/24 95/1 103/9 109/18 109/24
119/4 119/11 119/17 120/6 121/1 123/11
126/9 126/15 126/19 129/1 129/1 133/23
**where [17]** 6/8 13/5 13/23 18/8 18/18 27/1
37/11 39/24 46/22 47/4 56/7 56/19 63/7 65/2
68/5 106/18 112/15
**whether [15]** 10/2 17/2 20/14 28/18 38/13
38/19 53/3 54/23 54/24 54/24 91/5 96/16
126/16 132/15 132/23
**which [28]** 6/1 6/17 6/25 10/15 11/7 11/18
11/18 11/19 11/19 11/20 11/21 15/2 16/6
16/23 17/14 20/12 22/13 32/2 32/3 51/1 86/6

**we'd [1]** 126/18... (column 3)
**96/20 98/18 102/5 107/5 131/15 132/22**
**while [15]** 6/18 32/24 42/2 42/15 50/10 50/11
53/11 64/11 84/18 98/7 100/2 100/4 100/5
105/8 120/2
**who [31]** 7/21 7/22 7/25 37/5 37/22 40/3 40/5
43/13 43/15 58/8 60/16 64/9 67/12 68/6 80/11
81/23 88/12 90/1 92/1 99/3 99/18 101/6
102/19 108/7 109/18 109/25 112/3 118/22
119/20 127/4 130/18
**whoever [3]** 108/4 108/4 108/6
**whole [3]** 7/8 63/18 66/20
**whose [12]** 51/17 87/25 100/14 101/25
111/13 113/9 113/22 114/6 115/25 116/25
118/4 126/4
**why [35]** 11/16 18/25 20/24 25/21 27/8 44/17
47/2 48/25 49/24 55/21 56/14 57/20 60/11
61/11 62/15 62/16 64/23 66/7 66/23 67/11
69/19 77/13 77/14 91/21 94/24 105/10 110/5
110/9 110/11 112/6 126/25 129/25 130/14
133/1 133/20
**wife [3]** 58/9 132/15 132/24
**will [89]** 9/10 9/25 10/14 10/15 10/15 10/19
11/5 12/15 13/9 13/10 13/11 13/22 15/5 21/9
22/1 24/20 24/23 28/5 28/11 28/12 33/10
34/13 39/8 39/18 41/1 44/15 46/3 48/21 48/22
49/12 49/13 51/12 53/24 53/23 54/3 57/9 60/5
60/9 62/2 62/25 65/20 68/10 70/12 71/1 73/5
73/16 75/24 78/25 80/15 81/16 85/12 89/8
89/9 90/15 94/2 95/15 96/19 97/9 97/11 97/12
97/25 98/18 98/21 100/10 102/3 102/13
104/11 105/22 108/22 111/22 111/23 114/25
116/5 116/7 118/10 118/11 120/9 120/20
121/9 121/11 122/5 122/16 124/16 128/24
130/20 130/22 131/1 131/19 133/4
**wire [19]** 58/5 58/10 58/16 58/22 60/12 60/13
60/14 60/16 117/17 119/5 119/20 120/3 120/6
121/9 121/11 121/13 122/15 122/17 122/21
**wire's [2]** 57/17 57/21
**wired [1]** 58/25
**wires [2]** 57/22 57/25
**wise [1]** 41/3
**withdrawal [3]** 55/16 55/18 73/6
**withdrawals [1]** 74/9
**withdrawn [1]** 55/22
**within [2]** 29/25 133/22
**without [8]** 18/14 22/20 76/13 78/7 103/14
103/16 120/7 132/1
**witness [36]** 14/16 15/3 16/23 22/3 23/5 23/8
23/10 23/20 25/3 32/7 38/24 39/7 45/9 51/23
56/23 59/14 61/15 65/5 75/14 78/14 81/4
82/10 84/13 88/18 90/5 93/14 105/11 108/13
111/8 112/19 114/17 115/16 117/13 117/22
121/20 122/24
**witness's [1]** 14/15
**witnesses [13]** 3/4 4/1 12/16 13/17 13/20
14/5 15/1 15/5 16/22 16/25 22/7 24/1 80/8
**won't [2]** 14/7 46/9
**word [4]** 66/20 66/23 112/24 128/7
**words [1]** 28/13
**work [24]** 12/3 12/4 12/5 12/5 24/21 39/24
40/3 40/8 41/3 41/13 42/1 42/9 54/12 57/17
57/21 60/18 60/19 60/21 63/3 67/9 67/18
79/12 88/2 91/5
**work-related [1]** 41/3
**worked [10]** 40/1 40/5 43/11 43/12 53/9 60/20
100/2 113/4 119/4 120/2
**working [5]** 37/21 42/2 44/23 67/15 84/18
**workloads [1]** 43/22
**would [133]** 5/20 6/11 6/18 6/21 7/10 9/18
10/9 11/18 11/25 15/19 18/17 22/23 23/5 23/6
23/20 29/16 29/16 30/11 31/10 34/23 36/13
36/20 39/1 39/16 42/18 44/20 47/13 49/4
49/24 50/5 50/10 53/1 53/9 53/10 53/11 54/15
54/22 56/12 56/14 56/18 57/22 62/21 61/11
61/13 61/25 62/19 63/7 64/10 64/12 64/18
64/20 64/23 66/9 67/3 67/13 67/14 67/14
67/24 68/5 68/6 68/7 68/8 68/9 69/14 69/16
69/19 69/20 74/25 78/22 80/3 80/5 81/12 82/1

**W**

**would... [60]**  84/21 87/10 89/25 89/25 90/3
90/13 91/24 92/7 92/8 92/9 92/9 92/10 92/11
92/12 92/23 95/5 96/10 96/10 98/5 98/8 100/9
102/4 105/4 105/5 105/7 106/13 107/12
109/10 109/10 109/11 109/18 112/17 114/11
117/18 117/18 117/21 119/6 119/7 119/7
119/8 119/8 119/11 119/12 119/17 119/17
119/18 120/16 120/18 120/21 121/8 122/15
122/23 124/3 124/4 126/13 126/13 126/22
129/22 131/7 131/23
**wouldn't [3]**  27/20 50/9 110/11
**write [5]**  36/3 71/11 89/22 104/18 122/13
**writing [1]**  11/24
**written [2]**  17/18 101/6
**wrong [3]**  19/3 19/6 19/6
**wrote [3]**  36/23 44/11 95/4
**WYMAN [7]**  2/5 5/6 26/4 28/2 28/7 29/19
31/20

**X**

**xper [2]**  56/5 56/5

**Y**

**yeah [7]**  43/24 49/20 53/9 70/15 111/6 122/12
129/20
**year [1]**  86/13
**years [7]**  29/17 40/10 40/10 40/14 113/4
113/4 130/1
**Yeghishian [6]**  112/4 112/7 112/9 112/16
115/1 118/15
**yes [310]**
**yesterday [5]**  6/15 19/6 21/11 21/23 23/2
**yet [2]**  30/7 51/12
**York [1]**  6/9
**you [674]**
**you'd [1]**  131/20
**you're [10]**  9/21 20/5 35/10 41/4 47/6 50/10
50/11 76/15 77/13 128/3
**your [235]**
**yourself [4]**  44/12 68/1 94/6 100/3

**Z**

**Zero [1]**  55/7
**zeros [1]**  52/17