1

2

3

4                    UNITED STATES DISTRICT COURT

5                  CENTRAL DISTRICT OF CALIFORNIA

6                        SOUTHERN DIVISION

7                            - - -

8          THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9
        UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
10                          Plaintiff, )
             vs.                      )
11                                    )  SACR-19-00061-JVS
        MICHAEL JOHN AVENATTI,        )
12                          Defendant. )TRIAL DAY 10, VOL. 1
        ------------------------------)
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  Santa Ana, California

17                    July 28, 2021

18

19                      SHARON A. SEFFENS, RPR
                        United States Courthouse
20                      411 West 4th Street, Suite 1-1053
                        Santa Ana, CA  92701
21                      (714) 543-0870

22

23

24

25

1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    NICOLA T. HANNA
     United States Attorney
4    BRANDON D. FOX
     Assistant United States Attorney
5    Chief, Criminal Division
     ALEXANDER WYMAN
6    Assistant United States Attorney
     Major Frauds Section
7    1100 United States Courthouse
     312 North Spring Street
8    Los Angeles, CA  90012
     (213) 894-6683
9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25

          SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1

 2                              I-N-D-E-X

 3

 4    PLAINTIFF'S
      WITNESSES:               DIRECT   CROSS   REDIRECT   RECROSS
 5
      JUDY REGNIER
 6      (Continued)             12       73

 7    PLAINTIFF'S
      EXHIBITS:                                MARKED    RECEIVED
 8
      Exhibit 22                                            13
 9    Exhibits 368, 369                                     23
      Exhibit 269                                           26
10    Exhibit 270                                           28
      Exhibit 367                                           30
11    Exhibit 275                                           35
      Exhibit 276                                           40
12    Exhibit 387                                           42
      Exhibit 279                                           44
13    Exhibit 280                                           48
      Exhibit 281                                           53
14    Exhibits 282, 283, 286                                60
      Exhibit 288                                           65
15    Exhibit 290                                           69

16    DEFENSE
      WITNESSES:         DIRECT   CROSS   REDIRECT   RECROSS
17
       (None)
18
      DEFENSE
19    EXHIBITS:                             MARKED    RECEIVED

20     (None)

21

22

23

24

25
```

|   |   |
|---|---|
| | 1 |
| 08:32 | 3 |
| 08:32 | 4 |
| 08:32 | 5 |
| 08:32 | 6 |
| 08:32 | 7 |
| 08:32 | 8 |
| 08:32 | 9 |
| 08:32 | 10 |
| 08:32 | 11 |
| 08:32 | 12 |
| 08:32 | 13 |
| 08:32 | 14 |
| 08:32 | 15 |
| 08:32 | 16 |
| 08:32 | 17 |
| 08:32 | 18 |
| 08:32 | 19 |
| 08:32 | 20 |
| 08:33 | 21 |
| 08:33 | 22 |
| 08:33 | 23 |
| 08:33 | 24 |
| 08:33 | 25 |

1    SANTA ANA, CALIFORNIA; WEDNESDAY, JULY 28, 2021; 8:32 A.M.

2          (Jury not present)

3          THE CLERK:  Calling Item 1, SACR-19-00061-JVS,

4    United States of America versus Michael John Avenatti.

5          MR. SAGEL:  Good morning, Your Honor.  Brett Sagel

6    and Alexander Wyman on behalf of the United States.  And

7    Special Agent Ramon Carlos is at government's counsel table.

8          THE COURT:  Good morning.

9          MR. AVENATTI:  Good morning, Your Honor.

10   Defendant Michael Avenatti present with advisory counsel,

11   Mr. Steward, as well as Ms. Cefali.  I apologize for being a

12   couple minutes late.  I was in the bathroom.

13         THE COURT:  Good morning.

14         I see you have all got the word with regard to

15   CDC's new recommendations.  I'm going to require that

16   everyone in the courtroom, fully vaccinated or not, wear a

17   mask or a shield.

18         If a witness testifies, the witness will be

19   provided a shield.  I believe that a shield provides counsel

20   full ability to observe the witnesses' facial expressions

21   and body language and does not impede materially or

22   otherwise the ability to assess the testimony of the

23   witness.

24         MR. AVENATTI:  Could I be heard on that briefly?

25         THE COURT:  Sure.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:33  1          MR. AVENATTI:  Your Honor, for the record I would

08:33  2    object.  I think that requiring me to wear a mask during

08:33  3    these proceedings is a violation of my right to due process

08:33  4    and a fair trial.  I think requiring the jurors to wear

08:33  5    masks is likewise a violation of that right because I don't

08:33  6    have the ability to gauge the reaction of the jury during

08:33  7    the testimony.

08:33  8          And for that reason I would object to the use of

08:33  9    those protocols, Your Honor.  And if they're mandatory, then

08:33 10    I would move for a mistrial.

08:33 11          THE COURT:  One, I find that in the times of the

08:34 12    COVID pandemic and the spike occasioned by the delta

08:34 13    variant, these precautionary measures are appropriate in

08:34 14    terms of preserving public health.

08:34 15          I find that they do not constitute an infringement

08:34 16    of the defendant's due process rights or otherwise.  I note

08:34 17    that I distinguished between others in the courtroom and the

08:34 18    witness.  I believe that the use of a shield provides

08:34 19    virtually the same ability to assess the witness as if a

08:34 20    shield were not worn.

08:34 21          Now, if any juror wants to wear a mask, we provide

08:34 22    any juror with a mask or with a shield.  If anybody else

08:35 23    wants to wear a shield, that's perfectly acceptable to me.

08:35 24    I believe we have shields to pass out if people don't

08:35 25    presently have shields.

08:35  1           I deny the request for a mistrial particularly

08:35  2    given the availability of the alternative shields to

08:35  3    Mr. Avenatti and any juror who would like one.

08:35  4           I have several matters.  I received two filings of

08:35  5    note with regard to the tweet issue.  The government

08:35  6    provided additional Slingshot from the Twitter account of

08:35  7    Ella Louise at ellalou 59086966.  Mr. Avenatti provided at

08:35  8    Docket No. 601 an additional page which was referred to

08:35  9    addressing this issue yesterday.  I confirm my view that no

08:36  10   further inquiry is required.

08:36  11          Mr. Avenatti made an additional filing overnight

08:36  12   bringing to the Court's attention the professional rule of

08:36  13   conduct in effect at the time of the relevant events in this

08:36  14   case indicating that a lawyer had a duty to withdraw the

08:36  15   lawyer's -- the funds entrusted to a lawyer in a trust

08:36  16   account at the earliest possible moment.

08:36  17          I was invited to take a look at Professional Rule

08:36  18   of Conduct 1.15(c)(2).  The quoted language doesn't appear

08:36  19   there.  Rather, it appears in the Professional Rule of

08:36  20   Conduct that was in effect at the time governing trust

08:36  21   accounts, and that's at Rule 4-100.

08:37  22          The rule reads in part -- 4-100(A))(2) says in

08:37  23   part:  "In the case of funds belonging in part to a client

08:37  24   and in part presently or potentially to the member or the

08:37  25   law firm, the portion belonging to the member or law firm

08:37    1    must be withdrawn at the earliest reasonable time after the

08:37    2    member's interest in the portion becomes fixed."

08:37    3        While objecting to the Court instructing on the

08:38    4    rules of professional conduct, Mr. Avenatti provided an

08:38    5    alternate which quoted in part the former Rule 4-100.  In

08:38    6    the part that was presented to me, only a portion of the

08:38    7    rule was quoted.  And the language that Mr. Avenatti now

08:38    8    brings to my attention was not presented to the Court at

08:38    9    that time.

08:38   10        However, rather than instructing in the

08:38   11    alternative, as Mr. Avenatti requested, and using his text,

08:38   12    the Court went to the full rule as in effect at that time,

08:38   13    and the Court in fact instructed at page 9 of the initial

08:39   14    jury instructions concerning the obligation of a lawyer to

08:39   15    withdraw funds at the earliest possible date.

08:39   16        In fact, the Court has already given the requested

08:39   17    instruction with a continuing objection to including that

08:39   18    instruction in the final jury instructions.  Nevertheless

08:39   19    the Court will instruct as consistent with the initial

08:39   20    instruction and will give a portion of the rule which

08:39   21    Mr. Avenatti now brings to my attention and which the Court

08:39   22    in fact instructed on as part of the initial instructions.

08:39   23        Any comment?

08:39   24       MR. AVENATTI:  A question and one comment, Your

08:39   25    Honor.  I think I may have misheard.  We had directed -- I'm

08:39  1    sorry.  I had directed the Court's attention to 1.15(c)(2).

08:40  2          THE COURT:  The current rule does not contain the

08:40  3    language that you attributed to that rule.  In fact, the

08:40  4    language does exist in the rule that went into effect at the

08:40  5    time of the conduct in this case, and that appears in Rule

08:40  6    4-100(A)(2).

08:40  7          MR. AVENATTI:  Okay.  I'll go back and check.  I

08:40  8    must have been mistaken, Your Honor.  I thought it was in

08:40  9    1.15(c)(2)

08:40  10         THE COURT:  That's not the numbering system that

08:40  11   was in effect formerly.  That's the current rule.

08:40  12         MR. AVENATTI:  Right.  I think it took effect

08:40  13   sometime in early 2018 if I'm not mistaken.

08:40  14         THE COURT:  That's correct.

08:40  15         MR. AVENATTI:  Your Honor, my objection is a

08:40  16   little more nuanced.

08:40  17         THE COURT:  Sir, I'm not going to entertain any

08:40  18   objections to that instruction at this time.  I will hear

08:40  19   you at the end of the case.

08:40  20         MR. AVENATTI:  I understand.

08:40  21         THE COURT:  My point is you brought that portion

08:40  22   of the rule to my attention.  I in fact instructed with

08:41  23   regard to the then current rule, and I included the language

08:41  24   that you brought to my attention with your filings last

08:41  25   night.

08:41  1          MR. AVENATTI:  And, Your Honor, my point is more

08:41  2   nuanced.  It's not about the jury instruction.  My point as

08:41  3   I raised it yesterday was --

08:41  4          THE COURT:  Sir, you are making a substantive

08:41  5   argument with regard to the timing of your withdrawal of

08:41  6   funds and what the legal effect of that is.  As I indicated

08:41  7   yesterday, you're entitled to pursue that through other

08:41  8   witnesses through cross-examination or otherwise.  I'm not

08:41  9   going to revisit that.

08:41  10          MR. AVENATTI:  Understood, Your Honor.

08:41  11          THE COURT:  Sir, your argument basically is a

08:41  12   Rule 29 motion at this time and a Rule 29 motion with

08:41  13   respect to withdrawals at this point.

08:41  14          MR. AVENATTI:  Understood.

08:41  15          THE COURT:  Is there anything else anyone would

08:41  16   like to bring to the Court's attention?

08:42  17          MR. WYMAN:  Not from the government, Your Honor.

08:42  18          THE COURT:  Mr. Avenatti, you will have the option

08:42  19   of wearing a shield if you prefer to do that rather than

08:42  20   wearing a mask.

08:42  21          MR. AVENATTI:  Understood.

08:42  22          THE COURT:  Okay.

08:42  23          MR. SAGEL:  Just for clarification.  I think I

08:42  24   know the answer.  When we are questioning, we're wearing a

08:42  25   mask and not being behind plexiglass?

08:42  1              THE COURT:  If you want the plexiglass, we will
08:42  2   put it up again.  The reason we took it down is it seemed to
08:42  3   obstruct the lawyers' views of the jurors, particularly
08:42  4   since we have them spread not only in the jury box but out
08:42  5   in my right side of the courtroom.
08:42  6              MR. SAGEL:  Even with the plexiglass we would be
08:42  7   wearing a mask, right?
08:42  8              THE COURT:  Right.
08:42  9              MR. SAGEL:  We do not want the plexiglass, Your
08:42 10   Honor.
08:42 11              THE COURT:  Do you want the plexiglass,
08:42 12   Mr. Avenatti?
08:42 13              MR. AVENATTI:  I agree with Mr. Sagel.  We do not
08:42 14   want the plexiglass.
08:42 15              THE COURT:  Okay.  And, again, I reiterate that if
08:42 16   you prefer a shield rather than a mask, you're free to do
08:43 17   that.
08:43 18              Anything else at this time?
08:43 19              MR. SAGEL:  No, Your Honor.
08:43 20              MR. AVENATTI:  Nothing from the defendant, Your
08:43 21   Honor.
08:43 22              THE COURT:  Okay.  Then we will be in recess until
08:43 23   the jury gets up here.
08:43 24                     (Recess taken at 8:43 a.m.;
08:43 25                      proceedings resumed at 9:04 a.m.)

| | | |
|---|---|---|
| 08:43 | 1 | (Jury present) |
| 09:04 | 2 | THE CLERK:  Item 1, SACR-19-00061-JVS, United |
| 09:04 | 3 | States of America versus Michael John Avenatti. |
| 09:04 | 4 | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel |
| 09:04 | 5 | and Alexander Wyman on behalf of the United States.  And at |
| 09:04 | 6 | counsel table is Special Agent Ramon Carlos. |
| 09:04 | 7 | THE COURT:  Good morning. |
| 09:04 | 8 | MR. AVENATTI:  Good morning, Your Honor.  Michael |
| 09:04 | 9 | Avenatti joined by Mr. Dean Steward, Ms. Cefali.  And we |
| 09:04 | 10 | have Joe assisting us on the technology today. |
| 09:04 | 11 | THE COURT:  Good morning. |
| 09:04 | 12 | Good morning, ladies and gentlemen.  I'm sure you |
| 09:04 | 13 | are aware the ground rules have changed.  Everyone will be |
| 09:04 | 14 | required to wear a mask regardless of their vaccination |
| 09:04 | 15 | status.  We also have shields like the one I'm wearing.  If |
| 09:04 | 16 | you would be more comfortable wearing a shield, I think we |
| 09:04 | 17 | have one.  That's an available option.  That's an available |
| 09:05 | 18 | option for everyone in the courtroom.  A mask is not |
| 09:05 | 19 | necessary if you prefer a shield. |
| 09:05 | 20 | Mr. Sagel. |
| 09:05 | 21 | MR. SAGEL:  Thank you, Your Honor. |
| 09:05 | 22 | JUDY REGNIER, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN |
| 09:05 | 23 | THE CLERK:  Ms. Regnier, you are reminded that |
| 09:05 | 24 | you're still under the oath you took yesterday. |
| 09:05 | 25 | THE WITNESS:  Yes. |

09:05  1                   THE CLERK:  If you could please state your name

09:05  2      again.

09:05  3                   THE WITNESS:  Judy Regnier, R-e-g-n-i-e-r.

09:05  4                   THE COURT:  Mr. Sagel.

09:05  5                   MR. SAGEL:  Thank you, Your Honor.

09:05  6           JUDY REGNIER, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN

09:05  7                       REDIRECT EXAMINATION (Continued)

09:05  8      BY MR. SAGEL:

09:05  9      Q    When we left off yesterday, we were on Exhibit 224.  So

09:05  10     if I can pull up Exhibit 224.  This was the e-mail in which

09:05  11     you asked for permission to send Mr. Barela his signed

09:05  12     agreement; is that correct?

09:05  13     A    Yes, I did.

09:05  14     Q    And after defendant told you no, did you provide

09:05  15     Mr. Barela with this signed settlement agreement?

09:06  16     A    No, I did not.

09:06  17     Q    And what is the date of this e-mail requesting it?

09:06  18     A    June 29, 2018.

09:06  19     Q    If you could look at Exhibit 225.

09:06  20     A    (Witness complies.)

09:06  21     Q    Is Exhibit 225 an e-mail you received and forwarded to

09:06  22     the defendant?

09:06  23     A    Yes, it is.

09:06  24     Q    Is it a fair and accurate copy of an e-mail you

09:06  25     forwarded to defendant?

09:06   1    A    Yes, it is.

09:06   2          MR. SAGEL:  At this time, Your Honor, the

09:06   3    government moves to admit Exhibit 225.

09:06   4          MR. AVENATTI:  Objection, Your Honor.  Hearsay.

09:06   5          THE COURT:  It will be received for the truth but

09:06   6    not for the truth of the content.

09:06   7          (Exhibit 225 received in evidence)

09:06   8          MR. SAGEL:  If we can publish the bottom e-mail

09:06   9    first.

09:06   10   BY MR. SAGEL:

09:06   11   Q    What's the date of this e-mail?

09:06   12   A    July 20th, 2018.

09:06   13   Q    And who is it from and who is it to?

09:06   14   A    It's from Greg Barela, and it is to me.

09:07   15   Q    And t's the subject line?

09:07   16   A    Second request.

09:07   17   Q    Could you read what Mr. Barela wrote to you.

09:07   18   A    "Hi, Judy.  I have requested this once before and never

09:07   19   heard back.  Please send me the last and final Brock versus

09:07   20   Barela signed settlement agreement.  I need it for my

09:07   21   records."

09:07   22   Q    And what did you do after you received this e-mail from

09:07   23   Mr. Barela?

09:07   24   A    I forwarded it to Mr. Avenatti.

09:07   25   Q    And that's on the top portion?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:07  1    A    Yes, it is.

09:07  2    Q    And why did you forward this e-mail to Mr. Avenatti?

09:07  3    A    The same as the first one, to obtain Michael's

09:07  4    permission to send Mr. Barela the signed agreement.

09:07  5    Q    And in response to this request, did you send

09:08  6    Mr. Barela the signed final settlement agreement?

09:08  7    A    No.

09:08  8    Q    And why not?

09:08  9    A    Michael told me not to.

09:08  10   Q    Do you recall if you ever actually provided a

09:08  11   settlement agreement to Mr. Barela?

09:08  12   A    I believe he was provided one when he was at the office

09:08  13   at some point.

09:08  14   Q    Do you recall if you had any involvement in bringing

09:08  15   that to Mr. Barela?

09:08  16   A    I would have made a copy or printed out a copy of what

09:08  17   we had on the system and brought it into the conference room

09:08  18   and handed it to Michael to give to Mr. Barela.

09:08  19   Q    And why would you have given it to the defendant first?

09:08  20   A    Anytime an attorney, whether it's Michael or anyone

09:08  21   else, if they're in a deposition or a conference and they

09:08  22   requested additional documents, I always walked in and,

09:09  23   unless you were directed as you walked in, you would hand

09:09  24   them directly to the attorney who requested it.

09:09  25   Q    Do you know who John Harden is?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|--|--|--|
| 09:09 | 1 | A    Yes, I do. |
| 09:09 | 2 | Q    Who is John Harden? |
| 09:09 | 3 | A    He was an attorney with Eagan Avenatti. |
| 09:09 | 4 | Q    Do you know who Ahmed Ibrahim is? |
| 09:09 | 5 | A    Yes, I do. |
| 09:09 | 6 | Q    Who is Ahmed Ibrahim? |
| 09:09 | 7 | A    He was another attorney with Eagan Avenatti. |
| 09:09 | 8 | Q    To your knowledge do you know if Mr. Harden and |
| 09:09 | 9 | Mr. Ibrahim worked on the Barela and Brock matter? |
| 09:09 | 10 | A    Yes.  They both did. |
| 09:09 | 11 | Q    On November 14th, 2018, were you part of a phone call |
| 09:09 | 12 | with Mr. Harden, Mr. Ibrahim, and Mr. Barela? |
| 09:09 | 13 | A    I was called in to the office towards the end of the |
| 09:09 | 14 | call, yes. |
| 09:09 | 15 | Q    And when you say you were called in towards the end of |
| 09:09 | 16 | the call, does that mean you were not on the whole phone |
| 09:09 | 17 | call? |
| 09:09 | 18 | A    I was not on the entire phone call. |
| 09:10 | 19 | Q    During that phone call on November 14th, 2018, what, if |
| 09:10 | 20 | anything, did Greg Barela say about not getting the |
| 09:10 | 21 | settlement money? |
| 09:10 | 22 |         MR. AVENATTI:  Objection.  Hearsay, Your Honor. |
| 09:10 | 23 |         THE COURT:  Sustained. |
| 09:10 | 24 | BY MR. SAGEL: |
| 09:10 | 25 | Q    Did you learn that night that there was an accusation |

09:10  1    that Greg Barela didn't get his money?

09:10  2          MR. AVENATTI:  Objection, Your Honor.  Hearsay,

09:10  3    seeks hearsay.

09:10  4          THE COURT:  Overruled.

09:10  5          THE WITNESS:  Yes, I did.

09:10  6    BY MR. SAGEL:

09:10  7    Q    After that phone call that night, after what you

09:10  8    learned that night, did you have a conversation with the

09:10  9    defendant?

09:10  10   A    Not that evening, no.

09:10  11   Q    When did you next talk to the defendant?

09:10  12   A    I believe it was the following day.

09:10  13   Q    What happened the following day when you met with the

09:10  14   defendant?

09:10  15   A    Michael was absolutely livid with Ahmed, John, and I

09:11  16   because we didn't notify him immediately that Greg had

09:11  17   called.  And honestly there was a lot going on the day

09:11  18   before, and it slipped everybody's mind.

09:11  19   Q    Did he say specifically why he was so livid with you?

09:11  20   A    That he is to be notified of all client calls, anything

09:11  21   that goes on with the client.  And he needed to be notified

09:11  22   immediately, and we didn't do it.  And that's why he was so

09:11  23   upset.

09:11  24   Q    During -- was this in person?

09:11  25   A    Yes.

09:11  1    Q    During this in-person meeting with the defendant, did
09:11  2    he say anything about the conversation relating to the
09:11  3    settlement money?
09:11  4    A    He said that now he had to work things out with Greg
09:12  5    and he would handle it.
09:12  6    Q    Do you know whether, shortly after the phone call and
09:12  7    meeting, whether or not Greg Barela obtained new attorneys?
09:12  8    A    Yes, he did.
09:12  9    Q    How do you know that he obtained new attorneys?
09:12  10   A    They sent a letter to the firm stating that
09:12  11   Mr. Barela --
09:12  12              MR. AVENATTI:  Objection.  Seeks hearsay, Your
09:12  13   Honor.
09:12  14              THE COURT:  Mr. Sagel, do you want to respond?
09:12  15              MR. SAGEL:  I will just rephrase the question.
09:12  16   BY MR. SAGEL:
09:12  17   Q    After he sought new counsel, did you have any
09:12  18   conversations with the defendant about what Mr. Barela's new
09:12  19   counsel was looking for?
09:12  20   A    His new counsel sent a letter requesting copies --
09:13  21              MR. AVENATTI:  Objection, Your Honor.  Seeks
09:13  22   hearsay.
09:13  23              THE COURT:  Mr. Sagel.
09:13  24              MR. SAGEL:  It's for the actions she takes
09:13  25   thereafter.

09:13  1          THE COURT:  It will be received not for the truth

09:13  2    but to explain what actions the witness took in response.

09:13  3    BY MR. SAGEL:

09:13  4    Q    Please continue.

09:13  5    A    They requested that we send copies of Mr. Barela's

09:13  6    entire file.

09:13  7    Q    And did you talk to defendant about whether or not you

09:13  8    should comply with that?

09:13  9    A    Yes.

09:13  10   Q    What did he say?

09:13  11   A    He told me to hold off at that time.

09:13  12   Q    At that time or around that time after Mr. Barela

09:13  13   obtained new counsel -- strike that.  Let me go back.

09:14  14          At Eagan Avenatti how were files kept with regard

09:14  15   to settlement agreements and records?

09:14  16   A    There were settlement agreements kept on the computer

09:14  17   under a confidential file, and hard copies were kept in the

09:14  18   client's file.

09:14  19   Q    And what about accounting records?

09:14  20   A    All accounting records were on the computer.

09:14  21   Q    And after Mr. Barela got new counsel and requested

09:14  22   information be provided, did you go on the system to look

09:14  23   for records in the Barela matter?

09:14  24   A    At that exact time, no, I didn't.  We were in the

09:14  25   process of moving out of the offices.  And so at the time

09:14   1   the letter was received, I didn't necessarily go on to see
09:14   2   what was there.
09:14   3   Q    Did you do so later?
09:15   4   A    Later I did, and later I believe we did provide copies
09:15   5   of the documents.
09:15   6   Q    And why do you say that?
09:15   7   A    Because I believe -- I recall making an electronic copy
09:15   8   of all of the pleadings that had been filed in Mr. Barela's
09:15   9   matter and correspondence and some other things.  I don't
09:15   10  know exactly what was made.
09:15   11  Q    Did you personally provide that to Barela's counsel?
09:15   12  A    Did I personally send it over to him?
09:15   13  Q    Yes.
09:15   14  A    I probably did.  I probably mailed it or sent a
09:15   15  messenger over with it.  I'm not sure which.
09:16   16  Q    In January 2019 --
09:16   17          MR. SAGEL:  One second, Your Honor.
09:16   18          (Government counsel conferring)
09:16   19  BY MR. SAGEL:
09:17   20  Q    In January 2019 did you become aware of Greg Barela
09:17   21  filing a civil lawsuit against Eagan Avenatti and the
09:17   22  individuals at Eagan Avenatti?
09:17   23  A    Yes, I did.
09:17   24  Q    Did you talk to the defendant about that?
09:17   25  A    Yes, I did.

09:17    1    Q    What was your understanding of the lawsuit Mr. Barela

09:17    2    filed against Eagan Avenatti and the defendant?

09:17    3    A    That the lawsuit was because -- he filed a lawsuit

09:18    4    because he did not receive the settlement funds.

09:18    5    Q    And what did the defendant say at that time?

09:18    6    A    Michael said he was working on it.  He would handle

09:18    7    it -- same answer we always got.

09:18    8    Q    Did he ever say anything that he did pay Mr. Barela the

09:18    9    settlement money?

09:18   10    A    No.  He said that Barela wasn't owed what he claimed,

09:18   11    but he didn't come right out and say "because I paid him all

09:18   12    the money."  He said Barela was not owed what he claimed he

09:18   13    was owed.

09:18   14    Q    In February, February to March 2018, just going back in

09:19   15    time --

09:19   16    A    Okay.

09:19   17    Q    -- is Eagan Avenatti still in bankruptcy?

09:19   18    A    I believe so.

09:19   19    Q    Right before it gets out of bankruptcy -- and we'll get

09:19   20    to the date -- did Mr. Avenatti ever talk to you about his

09:19   21    plans for exiting the bankruptcy?

09:19   22    A    I'm not really sure I understand.

09:19   23    Q    Okay.  Well, let me ask it a little differently.  What,

09:19   24    if anything, did he tell you he would need to do to get the

09:19   25    firm out of bankruptcy?

09:19  1    A    He needed to basically reach a settlement with one of

09:19  2    the creditors.

09:19  3    Q    Just one of the creditors?

09:19  4    A    It may have been two, two creditors actually that I

09:19  5    know of.

09:20  6    Q    At the time he says this to you, were you still keeping

09:20  7    track of the firm's financials, the bank records and the

09:20  8    money in the firm?

09:20  9    A    Yes.

09:20  10   Q    At that time did the firm have the money to pay the

09:20  11   creditors he mentioned?

09:20  12              MR. AVENATTI:  Objection.  Calls for speculation,

09:20  13   conjecture.  Foundation, Your Honor.

09:20  14              THE COURT:  Overruled.

09:20  15              THE WITNESS:  No, they did not.  And I think one

09:20  16   of creditors was to be paid over time.

09:20  17   BY MR. SAGEL:

09:20  18   Q    Do you know who Michelle Phan is?

09:20  19   A    She was a client of Michael's, yes.

09:20  20   Q    You just said a client of the defendant's?

09:20  21   A    Yes.

09:20  22   Q    Why do you say that?

09:20  23   A    I don't believe she was actually a client of Eagan

09:20  24   Avenatti.  I believe she was a client of Michael's.

09:21  25   Q    How did you learn that he was representing her?

09:21  1    A    I believe -- well, Michael told me.  That's how.

09:21  2    Q    At some point did you learn that there would be money

09:21  3    coming into a bank account in relationship to Michelle Phan?

09:21  4    A    Yes.

09:21  5    Q    And how did you learn that?

09:21  6    A    From Michael.

09:21  7    Q    What, if anything, did you do or were asked to do to

09:21  8    set up a trust account for Michelle Phan?

09:21  9    A    I believe I went to the bank, gave them the specifics

09:21  10   that Michael had given me, and then they provided us with

09:21  11   paperwork that Michael had to sign.

09:21  12   Q    When you say paperwork to be signed, was that to be

09:21  13   signatories on the account?

09:21  14   A    Yeah.  Every time a new account was opened, they needed

09:22  15   additional paperwork.

09:22  16        MR. SAGEL:  At this time, Your Honor, the

09:22  17   government is going to be moving in Exhibits 368 and 369.

09:22  18   They are the City National Bank documents.  It's the

09:22  19   custodian declaration at 397, pages 3 and 4, for both 368

09:22  20   and 369.

09:23  21        MR. AVENATTI:  Objection, Your Honor.  Hearsay, as

09:23  22   well as the objections to the business record exception

09:23  23   outlined in docket 596 on page 10 of 12.

09:23  24        THE COURT:  I find that the custodian's

09:23  25   declaration is sufficient for purposes of 902 and the

23

09:23  1    business records exception.  The exhibits will be received.

09:23  2              (Exhibits 368 and 369 received in evidence)

09:23  3    BY MR. SAGEL:

09:23  4    Q    Let's start with Exhibit 368.  Let's start with the

09:24  5    part where it says the account, under Michael J. Avenatti,

09:24  6    Esquire.  Do you see that?

09:24  7    A    Yes.

09:24  8    Q    What is the account called under that?

09:24  9    A    Attorney/client trust account, MLP settlement trust.

09:24  10   Q    The address, is that the same address of Eagan

09:24  11   Avenatti?

09:24  12   A    Yes, it is.

09:24  13   Q    And if you were to look in the kind of right corner,

09:24  14   what is the last four numbers of that account?

09:24  15   A    4705.

09:24  16   Q    And what did you understand this account being set up

09:24  17   for?

09:24  18   A    It was set up for Michelle Phan.

09:24  19   Q    If you were to look at, whether it be in that section

09:24  20   where it says this statement or the beginning balance just

09:24  21   below it, do you understand this account was set up on

09:24  22   September 15th, 2017?

09:24  23   A    Yes.

09:25  24   Q    If you were to look at the electronic credit section --

09:25  25   A    Yes.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:25 | 1 | Q    -- do you see the dates of the incoming wires? |
| 09:25 | 2 | A    Yes, I do. |
| 09:25 | 3 | Q    And what's the dates of the incoming wires? |
| 09:25 | 4 | A    September 18th, 2017. |
| 09:25 | 5 | Q    And the first one at the top is $475,000? |
| 09:25 | 6 | A    Yes. |
| 09:25 | 7 | Q    I'm going to skip one and go to the third one.  What's |
| 09:25 | 8 | that amount for? |
| 09:25 | 9 | A    What's it for? |
| 09:25 | 10 | Q    What's the amount? |
| 09:25 | 11 | A    Oh, just the amount, $984,750. |
| 09:25 | 12 | Q    And the fourth one on 9/18? |
| 09:25 | 13 | A    $27,414,668.32. |
| 09:26 | 14 | Q    And if I could now turn your attention to Exhibit 369, |
| 09:26 | 15 | page 1, the second column -- I'm sorry, the fourth column |
| 09:26 | 16 | which says credit account.  Is that the same 4705 account we |
| 09:26 | 17 | are talking about? |
| 09:26 | 18 | A    Yes, it is. |
| 09:26 | 19 | Q    And that's the MLP settlement trust? |
| 09:26 | 20 | A    Yes. |
| 09:26 | 21 | Q    Do you see on the right side three incoming wires from |
| 09:26 | 22 | Personalized Beauty Discovery, Incorporated? |
| 09:26 | 23 | A    Yes. |
| 09:26 | 24 | Q    On September 18th, 2017? |
| 09:27 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:27   1   Q    How much is the first one from Personalized Beauty

09:27   2   Discovery, Inc., the amount of the incoming wire?

09:27   3   A    $27,414,668.32.

09:27   4   Q    And that's the same number we looked at on the bank

09:27   5   statement; is that correct?

09:27   6   A    That's correct.

09:27   7   Q    And the other two incoming wires on September 18th that

09:27   8   are listed here are the other two incoming wires we saw on

09:27   9   the bank statements; is that correct?

09:27   10   A    Yes, that's correct.

09:28   11   Q    If I could have you look at Exhibit 269.

09:28   12   A    (Witness complies.)

09:28   13   Q    Do you have 269 in front of you?

09:28   14   A    Yes, I do.

09:28   15   Q    Is 269 an e-mail and an attachment that defendant sent

09:28   16   to you?

09:28   17   A    Yes, it is.

09:28   18   Q    He forwarded a message and an attachment to you?

09:28   19   A    Yes, he did.

09:28   20   Q    With instructions to you as well?

09:28   21   A    Yes.

09:28   22   Q    And is this a fair and accurate copy of the e-mail and

09:28   23   attachment that the defendant sent to you?

09:29   24   A    Yes, it is.

09:29   25        MR. SAGEL:  At this time, Your Honor, the

09:29  1    government moves to admit Exhibit 269.

09:29  2              MR. AVENATTI:  Objection, Your Honor.  Hearsay,

09:29  3    multiple levels.

09:29  4              THE COURT:  Overruled.  269 will be received.

09:29  5              (Exhibit 269 received in evidence)

09:29  6    BY MR. SAGEL:

09:29  7    Q    Let's start at the top with the message to you.  What's

09:29  8    the date of the e-mail from defendant to you?

09:29  9    A    September 18th, 2017.

09:29  10   Q    What's the subject line?

09:29  11   A    Wire instructions.

09:29  12   Q    And then let's go to the body of the e-mail that

09:29  13   defendant sent to you.  Can you read what the defendant

09:29  14   wrote to you.

09:29  15   A    "Will call you on this.  Amounts are as follows:  Long

09:29  16   Tran, $899,795.85; Promise Phan, $439,375.  We are not

09:30  17   sending anything to Michelle yet.  Have to chat with her

09:30  18   business manager."

09:30  19   Q    And if you were to look at the second page, are these

09:30  20   the wire instructions that are attached to this?

09:30  21   A    Yes.

09:30  22   Q    Do you know why he is sending you these wire

09:30  23   instructions with this e-mail?

09:30  24   A    Because we were going to be sending wires out.

09:30  25   Q    To these individuals?

| | | |
|---|---|---|
| 09:30 | 1 | A    Yes. |
| 09:30 | 2 | Q    For these amounts? |
| 09:30 | 3 | A    Yes. |
| 09:30 | 4 | Q    At this time with this bank account, defendant wanted |
| 09:30 | 5 | you to wire money out.  What did you need to do? |
| 09:30 | 6 | A    I believe -- I don't know if I could have done this |
| 09:30 | 7 | online or I would have to go down at that point in time. |
| 09:30 | 8 | Sometimes it took them a while to get it set up online, so I |
| 09:31 | 9 | may have had to go down to the bank with a wire instruction |
| 09:31 | 10 | sheet to be filled out so that they could send the wires. |
| 09:31 | 11 | Q    Could you do it on your own? |
| 09:31 | 12 | A    Could I send the wires on my own?  No.  Everything was |
| 09:31 | 13 | double approval on those accounts. |
| 09:31 | 14 | Q    And when you say double approval, were you one part of |
| 09:31 | 15 | the double? |
| 09:31 | 16 | A    Yes. |
| 09:31 | 17 | Q    Who was the other half of the double? |
| 09:31 | 18 | A    Michael. |
| 09:31 | 19 | Q    Did Mr. Avenatti need to be present to approve your |
| 09:31 | 20 | wire transfers? |
| 09:31 | 21 | A    No, he did not. |
| 09:31 | 22 | Q    If money was in the accounts and you had the double |
| 09:31 | 23 | approvals, could you wire money out of the account? |
| 09:31 | 24 | A    Yes. |
| 09:32 | 25 | Q    If I could have you look at Exhibit 270. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:32 | 1 | A      Okay. |
| 09:32 | 2 | Q      Do you recognize Exhibit 270? |
| 09:32 | 3 | A      Yes, I do. |
| 09:32 | 4 | Q      Is this an e-mail defendant sent to you in which he |
| 09:32 | 5 | forwarded you an e-mail? |
| 09:32 | 6 | A      Yes. |
| 09:32 | 7 | Q      Is it a fair and accurate copy of an e-mail the |
| 09:32 | 8 | defendant sent to you? |
| 09:32 | 9 | A      Yes, it is. |
| 09:32 | 10 |          MR. SAGEL:  At this time, Your Honor, the |
| 09:32 | 11 | government moves to admit Exhibit 270. |
| 09:32 | 12 |          MR. AVENATTI:  Objection, Your Honor.  Hearsay, |
| 09:32 | 13 | multiple levels. |
| 09:32 | 14 |          THE COURT:  Overruled.  270 will be received. |
| 09:32 | 15 |          (Exhibit 270 received in evidence) |
| 09:32 | 16 | BY MR. SAGEL: |
| 09:32 | 17 | Q      Let's start at the top.  What's the date that defendant |
| 09:32 | 18 | is sending you this e-mail? |
| 09:32 | 19 | A      September 21st, 2017. |
| 09:33 | 20 | Q      And what's the subject line? |
| 09:33 | 21 | A      "Wire info." |
| 09:33 | 22 | Q      And if you were to look below, is he sending you, |
| 09:33 | 23 | forwarding you an e-mail first from Long Tran, or the most |
| 09:33 | 24 | recent e-mail is from Long Tran? |
| 09:33 | 25 | A      Yes. |

09:33  1    Q    And then if you were to look, there is further

09:33  2    information for an account; is that correct?

09:33  3    A    Yes, there is.

09:33  4    Q    Turning back to Exhibit 369, on page 2 of 369.

09:34  5    A    Okay.

09:34  6    Q    Now, in the second column here for debit account,

09:34  7    that's the 4705 account; is that correct?

09:34  8    A    Yes, it is.

09:34  9    Q    That's the MLP settlement trust account we're talking

09:34  10   about?

09:34  11   A    Yes.

09:34  12   Q    Now going to the right side of these outgoing wires,

09:34  13   between September 18th and October 3rd, 2017, do you see

09:34  14   five outgoing wire transfers?

09:34  15   A    Yes.

09:34  16   Q    Starting with the first one to Long Tran, how much is

09:34  17   the outgoing wire from this account to Long Tran?

09:34  18   A    $899,795.85.

09:34  19   Q    And here the name is Pratigya Phan?

09:35  20   A    Yes.

09:35  21   Q    How much is being sent to her?

09:35  22   A    $439,375.

09:35  23   Q    And are those two numbers the same numbers as defendant

09:35  24   sent you in Exhibit 269?

09:35  25   A    Yes.

| | | |
|---|---|---|
| 09:35 | 1 | Q    Then you will see three outgoing wires in a row, one to |
| 09:35 | 2 | Michelle Phan; is that correct? |
| 09:35 | 3 | A    Yes. |
| 09:35 | 4 | Q    And what are the next two wires below Michelle Phan? |
| 09:35 | 5 | A    Divinium Labs, LLC. |
| 09:35 | 6 | Q    And how much were the two wires to Divinium Labs? |
| 09:35 | 7 | A    $10 million each, I believe. |
| 09:35 | 8 | Q    Two wire transfers for $10 million? |
| 09:35 | 9 | A    Yes. |
| 09:35 | 10 | Q    And the one to Michelle Phan individually is how much? |
| 09:35 | 11 | A    $4,747,466.50. |
| 09:36 | 12 | Q    How did you know to send these various wires to |
| 09:36 | 13 | Michelle Phan and Divinium Labs? |
| 09:36 | 14 | A    Michael was providing me with the amount information. |
| 09:36 | 15 | Q    If I could have you look at Exhibit 367. |
| 09:36 | 16 |      MR. SAGEL:  Your Honor, the government would move |
| 09:36 | 17 | 367 in, and that's the same custodian declaration at 397, |
| 09:36 | 18 | pages 3 to 4. |
| 09:36 | 19 |      MR. AVENATTI:  Objection, Your Honor.  Hearsay, |
| 09:36 | 20 | same objections lodged on docket 596, page 10 of 12. |
| 09:36 | 21 |      THE COURT:  Overruled.  367 be will be received. |
| 09:36 | 22 |      (Exhibit 367 received in evidence) |
| 09:36 | 23 | BY MR. SAGEL: |
| 09:36 | 24 | Q    If we could just look at the check at the top. |
| 09:36 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:36   1    Q    Do you recognize the signature on this counter check?
09:37   2    A    Yes.  It's Michael Avenatti.
09:37   3    Q    And what's it paid to?
09:37   4    A    To operating.
09:37   5    Q    And do you understand what counter checks were at this
09:37   6    bank?
09:37   7    A    Yeah.  A counter check was given to you if you did not
09:37   8    receive checks on the account yet, printed checks.  So you
09:37   9    could get a counter check from the bank.
09:37   10   Q    And if this is a counter check to operating, what was
09:37   11   your understanding as to what was happening with this money?
09:37   12   A    It would be going probably to the operating account we
09:37   13   had at this bank.
09:37   14   Q    And how much is this check that defendant signed for?
09:37   15   A    $2,787,650.87.
09:38   16   Q    If we could just look at 368 again, on page 1.  You had
09:38   17   mentioned that the incoming wires -- if I did not ask you,
09:38   18   what was the date of the counter check on 367?
09:38   19   A    September 18th, 2017.
09:38   20   Q    So on the same date that the incoming wires into the
09:38   21   account happened is when the counter check took place; is
09:38   22   that correct?
09:38   23   A    Yes.
09:38   24   Q    And at the very bottom of page 1 you see the checks
09:38   25   paid out for that amount?
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:38  1    A     Yes.

09:38  2    Q     If you were to look at page 4 --

09:38  3    A     Yes.

09:38  4    Q     -- after the five outgoing wires that we talked about

09:39  5    in 369, taking us to October 3rd or 4th -- let's look at

09:39  6    October 4th -- how much money was left in the account on

09:39  7    October 4th?

09:39  8    A     Zero.

09:39  9    Q     After these financial transactions in September 2017,

09:39  10   did you know -- let me ask the first question.  Did you know

09:39  11   the details of the agreement between the defendant and

09:39  12   Ms. Phan or anybody else?

09:39  13   A     No, I did not.

09:39  14   Q     After your part in these wire transfers and so forth

09:39  15   that we're talking about, did you know what if anything else

09:39  16   was going to take place, if anything?

09:39  17   A     I did not know of anything else that was going to take

09:39  18   place.

09:40  19   Q     If you could look at Exhibit 100.

09:40  20          MR. SAGEL:  Which I believe is in evidence, Your

09:40  21   Honor.

09:40  22          MR. AVENATTI:  Your Honor, it's in evidence, but

09:40  23   it needs to be redacted before it's published to the jury.

09:41  24          THE COURT:  What part should be redacted?

09:41  25          MR. AVENATTI:  Your Honor, it was pursuant to your

09:42  1   directive yesterday.  Give me a minute.  I may be able to

09:42  2   point it to the Court.

09:42  3            MR. SAGEL:  Your Honor, that's incorrect.  We can

09:42  4   take it up at sidebar, but that's not correct.

09:42  5            MR. AVENATTI:  Your Honor, this dealt with the

09:42  6   severance issue, among other things, including some

09:42  7   privilege issues.

09:42  8            THE COURT:  It's admitted.  I ruled on that in the

09:42  9   evidentiary objections.

09:42  10           MR. AVENATTI:  I understood that, Your Honor.  You

09:42  11  provided that it was to be redacted.

09:43  12           MR. SAGEL:  Exhibit 27 was the one subject to

09:43  13  redaction, Your Honor.

09:43  14           THE CLERK:  Exhibit 100, it says:

09:43  15           "Mr. Sagel:  The government will move to admit

09:43  16  Exhibit 100.

09:43  17           "Mr. Avenatti:  Your Honor, objection."  And it

09:43  18  goes on.

09:43  19           "The Court:  Exhibit 100 will be received.  Confer

09:43  20  with the government as to what you would like redacted."

09:43  21           THE COURT:  Have you conferred with the

09:43  22  government?

09:43  23           MR. AVENATTI:  Not yet, Your Honor.  I wasn't

09:43  24  aware it was going to be used today.

09:43  25           MR. SAGEL:  Actually --

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:43   1                    THE COURT:  Well, confer right now.
09:43   2                    (Counsel conferring)
09:44   3                    MR. AVENATTI:  No objection, Your Honor.
09:44   4                    THE COURT:  Okay.  Proceed.
09:44   5        BY MR. SAGEL:
09:44   6        Q    Ms. Regnier, is this an e-mail that you sent to
09:44   7        defendant on March 12th, 2018?
09:44   8        A    Yes, it is.
09:44   9        Q    The top part says financial?
09:44  10        A    Yes.
09:44  11        Q    And there is four lines down a part that says, "I have
09:44  12        not."  Do you see that?
09:44  13        A    Yes.
09:44  14        Q    Actually there are two in a row.  It's the second one
09:44  15        that says, "I have not."
09:45  16        A    Okay.
09:45  17        Q    Can you read what you sent to the defendant there.
09:45  18        A    "I have not sent the tax check to the trustee."
09:45  19        Q    What did you mean when you said to the defendant, "I
09:45  20        have the tax check to the trustee"?
09:45  21        A    That was part of the bankruptcy, and it was an
09:45  22        agreement for repayment of taxes.  And I had not yet sent
09:45  23        the check yet to go to the trustee.
09:45  24        Q    As of March 12, 2018, was there any money for you to
09:45  25        cut the tax check to the trustee?
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:45   1          MR. AVENATTI:  Objection.  Speculation,

09:45   2   conjecture.  Lack of foundation, Your Honor.

09:45   3          THE COURT:  Overruled.

09:45   4          THE WITNESS:  I do not believe so.

09:45   5   BY MR. SAGEL:

09:46   6   Q    In or around the same time -- we just looked at an

09:46   7   e-mail on March 12th, 2018.  At any point around this time

09:46   8   did you learn more money would be coming in related to

09:46   9   Michelle Phan's case?

09:46   10   A    At some point I did, yes.

09:46   11   Q    If I could have you look at Exhibit 275.

09:46   12   A    (Witness complies.)  Okay.

09:46   13   Q    Is Exhibit 275 an e-mail you received along with the

09:46   14   defendant?

09:46   15   A    Yes, it is.

09:46   16   Q    Is it a fair and accurate copy of an e-mail you

09:46   17   received along with the defendant?

09:46   18   A    Yes, it is.

09:46   19          MR. SAGEL:  The government moves to admit

09:46   20   Exhibit 275.

09:47   21          MR. AVENATTI:  Objection.  Hearsay.

09:47   22          THE COURT:  Overruled.  275 will be received.

09:47   23          (Exhibit 275 received in evidence)

09:47   24   BY MR. SAGEL:

09:47   25   Q    What's the date of this e-mail?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:47 | 1 | A    March 14th, 2018. |
| 09:47 | 2 | Q    And who is it from? |
| 09:47 | 3 | A    Long Tran. |
| 09:47 | 4 | Q    Who did you know Long Tran to be? |
| 09:47 | 5 | A    He was an associate of Michelle Phan. |
| 09:47 | 6 | Q    And this e-mail from Long Tran is to three individuals; |
| 09:47 | 7 | is that correct? |
| 09:47 | 8 | A    Yes, it is. |
| 09:47 | 9 | Q    Who did Long Tran send this e-mail to? |
| 09:47 | 10 | A    Michael Avenatti, myself, and Filippo Marchino. |
| 09:47 | 11 | Q    And let's start with the first sentence that he writes |
| 09:47 | 12 | to you.  What does he say? |
| 09:47 | 13 | A    "Hi, guys.  Here is the wire info for myself and |
| 09:47 | 14 | Michelle.  Payment was sent from IPSY today." |
| 09:48 | 15 | Q    And who did you understand Michelle to be? |
| 09:48 | 16 | A    Michelle Phan. |
| 09:48 | 17 | Q    And then below there is wire information for both |
| 09:48 | 18 | Ms. Phan and Long Tran; is that correct? |
| 09:48 | 19 | A    Yes, it is. |
| 09:48 | 20 | Q    Focusing on the wire information for Michelle Phan or |
| 09:48 | 21 | below the wire information, is there an amount listed? |
| 09:48 | 22 | A    Yes. |
| 09:48 | 23 | Q    How much is Long Tran requesting to be wired to |
| 09:48 | 24 | Michelle Phan? |
| 09:48 | 25 | A    $8,146,288. |

| 09:48 | 1 | Q   And how much is he requesting to be wired to himself? |
| 09:48 | 2 | A   $147,972. |
| 09:48 | 3 | Q   If this money is in the MLP settlement trust account, |
| 09:48 | 4 | what did you need to do to send this to Michelle Phan and |
| 09:48 | 5 | Long Tran? |
| 09:48 | 6 | A   It's just to set up a wire and have it approved. |
| 09:48 | 7 | Q   Have it approved by who? |
| 09:48 | 8 | A   Michael. |
| 09:49 | 9 | Q   When you received this e-mail from Long Tran asking for |
| 09:49 | 10 | these dollar amounts to be sent to himself and Michelle |
| 09:49 | 11 | Phan, did you know the terms of their agreement with the |
| 09:49 | 12 | defendant? |
| 09:49 | 13 | A   No, I did not. |
| 09:49 | 14 | Q   Did you know how much they were due under their |
| 09:49 | 15 | agreement? |
| 09:49 | 16 | A   No, I did not. |
| 09:49 | 17 | Q   If I could have you turn back to Exhibit 369, page 1. |
| 09:49 | 18 | On March -- I'm sorry. |
| 09:49 | 19 | A   Okay. |
| 09:49 | 20 | Q   And this is the incoming wires into the MLP settlement |
| 09:50 | 21 | account; is that correct? |
| 09:50 | 22 | A   Yes, it is. |
| 09:50 | 23 | Q   If you were to look on March 14th, 2018, are there two |
| 09:50 | 24 | incoming wires into the MLP settlement trust account? |
| 09:50 | 25 | A   Yes, there are. |

09:50  1  Q    And are they both from Personalized Beauty Discovery,
09:50  2  Inc.?
09:50  3  A    Yes, they are.
09:50  4  Q    And the first one is for $8,146,288?
09:50  5  A    Correct.
09:50  6  Q    And the other one is $147,972?
09:50  7  A    Yes.
09:50  8  Q    These are the exact same amounts Long Tran requested in
09:50  9  the e-mail to you and the defendant and Filippo Marchino to
09:50  10 forward to himself and Michelle Phan?
09:50  11 A    Yes, it is.
09:50  12 Q    On March 14th after this money was deposited into the
09:51  13 MLP settlement trust account and Mr. Tran asked for it to be
09:51  14 sent to them, did you wire them that money?
09:51  15 A    I don't believe I wired it at that time, no.
09:51  16 Q    And if you look at the second page, those are the
09:51  17 outgoing wires.  Feel free to look at page 2 of 369, and
09:51  18 specifically March 14th or soon thereafter.
09:51  19 A    (Witness complies.)
09:51  20 Q    Did you send any money to Michelle Phan or Long Tran
09:51  21 after receiving the money on March 14th and the date
09:51  22 thereafter?
09:51  23 A    Long Tran was sent money on April 23rd.  There was no
09:51  24 money sent to Michelle Phan.
09:51  25 Q    So we'll get back to that.  After this money came into

| | | |
|---|---|---|
| 09:52 | 1 | the MLP settlement account, did the defendant ask you to |
| 09:52 | 2 | wire any money out of it? |
| 09:52 | 3 | A    Yes, he did. |
| 09:52 | 4 | Q    Do you know where he asked you to wire the money out of |
| 09:52 | 5 | it? |
| 09:52 | 6 | A    Do I know where he asked me? |
| 09:52 | 7 | Q    What did he tell you to do? |
| 09:52 | 8 | A    He gave me a list of wires and asked me to send them. |
| 09:52 | 9 | Q    On March 15th, 2018, the day after this money came in, |
| 09:52 | 10 | is there an outgoing wire? |
| 09:52 | 11 | A    Yes, there is. |
| 09:52 | 12 | Q    For how much money? |
| 09:52 | 13 | A    For three million. |
| 09:52 | 14 | Q    And where is that $3 million being wired out to? |
| 09:52 | 15 | A    Eagan Avenatti, LLP. |
| 09:53 | 16 | Q    And if I could have you look at Exhibit 276. |
| 09:53 | 17 | A    (Witness complies.)  Yes. |
| 09:53 | 18 | Q    Is 276 an e-mail that you sent to the defendant? |
| 09:53 | 19 | A    Yes, it is. |
| 09:53 | 20 | Q    Is it a fair and accurate copy of an e-mail you sent to |
| 09:53 | 21 | the defendant? |
| 09:53 | 22 | A    Yes. |
| 09:53 | 23 | MR. SAGEL:  At this time, Your Honor, the |
| 09:53 | 24 | government moves to admit Exhibit 276. |
| 09:53 | 25 | MR. AVENATTI:  Objection.  Hearsay. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:53   1              THE COURT:  276 will be received.  Overruled.

09:53   2              (Exhibit 276 received in evidence)

09:53   3   BY MR. SAGEL:

09:53   4   Q    Let's start with the date that's listed on the e-mail.

09:53   5   What's the date of this e-mail?

09:53   6   A    March 15th, 2018.

09:54   7   Q    What's the subject of the e-mail you sent to the

09:54   8   defendant?

09:54   9   A    "Due today-tomorrow."

09:54  10   Q    Is this an example of the communications you had with

09:54  11   the defendant on the financial condition of the firm?

09:54  12   A    Yes.

09:54  13   Q    Can you read the first paragraph that you write to

09:54  14   defendant.

09:54  15   A    "Here is what we have to pay.  I won't release check

09:54  16   until this afternoon, but not sure how you want me to pay

09:54  17   Marie as it is usually a wire from CNB.  The real issue is

09:54  18   payroll because those that bank at Wells will have their

09:54  19   funds placed on hold if they remote deposit tonight and the

09:54  20   money's not in our account.  The system Wells uses pings the

09:55  21   other banks immediately and will tell their customer they

09:55  22   won't credit the funds for ten days as check in nsf even if

09:55  23   check is never returned."

09:55  24   Q    And when you say they will have their funds placed on

09:55  25   hold if they remote deposit tonight and the monies are not

09:55   1    in our account, what did you mean by "the money's not in our
09:55   2    account"?
09:55   3    A     At this point in time monies we were depositing would
09:55   4    not register until the next day.  So if they left the bank
09:55   5    at 5:00 and put their check in an ATM or if they did it from
09:55   6    their phone immediately, if the funds weren't paid in our
09:55   7    account until the next day, there was no way that their
09:55   8    check would clear.
09:55   9    Q     When you say when we deposited the money, at this time
09:55   10   was there money in the account to pay payroll?
09:55   11   A     There was not money in the account to pay payroll.
09:55   12   That was the issue.
09:55   13   Q     And then you list below the amount for payroll and
09:56   14   other people's -- the other expenses of the firm?
09:56   15   A     Yes.
09:56   16   Q     And on March 15th after the defendant had you wire
09:56   17   $3 million into the Eagan Avenatti account, did he ask you
09:56   18   to do anything else with that money?
09:56   19   A     I'm not sure if he did on that day or a subsequent day
09:56   20   but, yes, he did ask me to do other things with the money.
09:56   21          MR. SAGEL:  Your Honor, the government would move
09:56   22   to admit Exhibit 387, which is the custodian declaration at
09:57   23   394, page 2, the California Bank & Trust custodian.
09:57   24          MR. AVENATTI:  Objection.  Hearsay, as well as the
09:57   25   objections we lodged, Your Honor, at docket 596, page 11 of

09:57   1   12.

09:57   2              THE COURT:  384?

09:57   3              MR. SAGEL:  387 is the exhibit and 394 is the

09:57   4   custodian declaration.

09:58   5              THE COURT:  387 will be received.  I previously

09:58   6   indicated the declaration at 394 is sufficient.

09:58   7              (Exhibit 387 received in evidence)

09:58   8   BY MR. SAGEL:

09:58   9   Q    Let's look briefly on the first page of the title of

09:58   10  this account.  What's the title of this account?

09:58   11  A    State Bar of California, Eagan Avenatti, LLP,

09:58   12  attorney/client trust account.

09:58   13  Q    The same address as the law firm?

09:58   14  A    Yes, it is.

09:58   15  Q    Turning to page 13 in the deposits or credit section,

09:58   16  is there a deposit on March 15th?

09:58   17  A    Yes.

09:58   18  Q    What is the deposit into this Eagan Avenatti

09:58   19  attorney/client trust account?

09:58   20  A    It's $3 million.

09:58   21  Q    And does it -- in the description is it a wire in?

09:59   22  A    Wire in from org, which is originator, Michael J.

09:59   23  Avenatti, the trust, and some other numbers.

09:59   24  Q    To your understanding is this $3 million wire that we

09:59   25  just talked about coming out of the MLP trust account?

43

09:59   1    A    Yes, it is.

09:59   2    Q    And then if you were to look at page 15 in the charges

09:59   3    and debits section on page 15, are there three transfers out

09:59   4    of the account on March 15th?

09:59   5    A    Yes.

09:59   6    Q    Let's start with the first one.  Is the first one

09:59   7    listed as a wire out?

09:59   8    A    Yes.  This is a wire out for $2,828,423.30.

10:00   9    Q    And do you see after the numbers after wire out who

10:00   10   this wire out is to?

10:00   11   A    Yes.  It's to Sulmeyer Kupetz, I believe, trust

10:00   12   account.

10:00   13   Q    And the defendant asked you to send this approximately

10:00   14   $2.8 million wire to Sulmeyer Kupetz?

10:00   15   A    Yes, he did.

10:00   16   Q    Do you know who Sulmeyer Kupetz is?

10:00   17   A    They represented the firm in the bankruptcy.

10:00   18   Q    They were involved in the bankruptcy?

10:00   19   A    They were involved in the bankruptcy, yes.

10:00   20   Q    And do you know what the reason was for this

10:00   21   $2.8 million wire transfer to Sulmeyer Kupetz, the firm that

10:00   22   was related to the bankruptcy?

10:00   23   A    This was the tax payment.

10:00   24   Q    Then on the same day -- I'm going to go two lines

10:00   25   down -- there is a $171,000 transfer.  Do you see that?

| | | |
|---|---|---|
| 10:01 | 1 | A    Yes, I do. |
| 10:01 | 2 | Q    Did defendant ask you to transfer that to a different |
| 10:01 | 3 | Eagan Avenatti account? |
| 10:01 | 4 | A    Yes.  That would be to the operating account, I |
| 10:01 | 5 | believe. |
| 10:01 | 6 | Q    And where did you make payroll payments out of? |
| 10:01 | 7 | A    The operating account. |
| 10:01 | 8 | Q    Would you look at Exhibit 279, please. |
| 10:01 | 9 | A    (Witness complies.)  Yes. |
| 10:01 | 10 | Q    Is 279 an e-mail that you sent to the defendant? |
| 10:01 | 11 | A    Yes, it is. |
| 10:01 | 12 | Q    Is it a fair and accurate copy of an e-mail you sent to |
| 10:01 | 13 | the defendant? |
| 10:01 | 14 | A    Yes. |
| 10:02 | 15 | MR. SAGEL:  At this time, Your Honor, the |
| 10:02 | 16 | government moves to admit Exhibit 279. |
| 10:02 | 17 | MR. AVENATTI:  Objection, Your Honor.  Hearsay. |
| 10:02 | 18 | THE COURT:  Overruled.  279 will be received. |
| 10:02 | 19 | (Exhibit 279 received in evidence) |
| 10:02 | 20 | BY MR. SAGEL: |
| 10:02 | 21 | Q    What is the date of this e-mail to the defendant? |
| 10:02 | 22 | A    April 23rd, 2018. |
| 10:02 | 23 | Q    And what's the subject line? |
| 10:02 | 24 | A    "Funds - just a recap.  All okay." |
| 10:02 | 25 | Q    And then below there is maybe about eight to ten |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:02 | 1 | different things with numbers behind it.  What exactly are |
| 10:02 | 2 | you sending to the defendant? |
| 10:02 | 3 | A    Those are the names of various bank accounts and the |
| 10:02 | 4 | balance in each account as of that morning. |
| 10:02 | 5 | Q    And you list on the last one the Tran trust.  What is |
| 10:02 | 6 | the Tran trust? |
| 10:02 | 7 | A    That would be the account we have been talking about. |
| 10:03 | 8 | Q    The MLP settlement? |
| 10:03 | 9 | A    The MLP settlement account, yes. |
| 10:03 | 10 | Q    And how much is in the Tran trust on April 23rd, 2018? |
| 10:03 | 11 | A    $4,299,988. |
| 10:03 | 12 | Q    And if you were to exclude the trust accounts, so just |
| 10:03 | 13 | looking at the ones in the middle that are not trust |
| 10:03 | 14 | accounts, is it fair to say there is less than $10,000? |
| 10:03 | 15 | A    Yes. |
| 10:03 | 16 | Q    If you could turn back to Exhibit 369, page 2. |
| 10:03 | 17 | A    (Witness complies.) |
| 10:03 | 18 | Q    You mentioned an outgoing wire for $3 million on |
| 10:04 | 19 | March 15th.  Between March 20th and April 17th, are there |
| 10:04 | 20 | seven additional outgoing wire transfers? |
| 10:04 | 21 | A    Yes, there are. |
| 10:04 | 22 | Q    And are any of those outgoing wire transfers to Long |
| 10:04 | 23 | Tran? |
| 10:04 | 24 | A    No, they are not. |
| 10:04 | 25 | Q    Are any of those outgoing wire transfers to Michelle |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

46

10:04   1   Phan?

10:04   2   A   No, they are not.

10:04   3   Q   Are all of those outgoing wire transfers to Eagan

10:04   4   Avenatti?

10:04   5   A   Yes, they are, to the Eagan Avenatti account.

10:04   6   Q   Then after those seven wire transfers to various Eagan

10:04   7   Avenatti trust accounts, on April 23rd is there an outgoing

10:04   8   wire to Long Tran?

10:04   9   A   Yes, there is.

10:05   10   Q   How much is the outgoing wire to Long Tran on

10:05   11   April 23rd?

10:05   12   A   $147,972.

10:05   13   Q   That's the amount that Mr. Tran asked to be wired to

10:05   14   him in Exhibit 275 a month and a half earlier; is that

10:05   15   correct?

10:05   16   A   Yes, it is.

10:05   17   Q   On that date are there any outgoing wire transfers to

10:05   18   Michelle Phan?

10:05   19   A   No, there is not.

10:05   20   Q   Did you wire this money to Long Tran on April 23rd?

10:05   21   A   Yes.  I would have initiated the wire, yes.

10:05   22   Q   And why would you have -- why would you have initiated

10:05   23   the wire on April 23rd to Long Tran?

10:05   24   A   Because Michael would have said for me to send this to

10:05   25   Long Tran.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 10:05 | 1 | Q    And are those seven wire transfers to Eagan Avenatti, |
|---|---|---|
| 10:06 | 2 | various Eagan Avenatti bank accounts, between March 20th and |
| 10:06 | 3 | April 17th well over $800,000? |
| 10:06 | 4 | MR. AVENATTI:  Objection.  Speculation, |
| 10:06 | 5 | foundation, Your Honor. |
| 10:06 | 6 | THE COURT:  Overruled. |
| 10:06 | 7 | THE WITNESS:  Yes. |
| 10:06 | 8 | BY MR. SAGEL: |
| 10:06 | 9 | Q    If I could have you look at Exhibit 280. |
| 10:07 | 10 | A    (Witness complies.)  Okay. |
| 10:07 | 11 | Q    280 is an e-mail chain that you are on with the |
| 10:07 | 12 | defendant? |
| 10:07 | 13 | A    Yes, it is. |
| 10:07 | 14 | Q    And does that e-mail chain include an e-mail that |
| 10:07 | 15 | defendant wrote? |
| 10:07 | 16 | A    Yes, it does. |
| 10:07 | 17 | Q    Is this a fair and accurate copy of the e-mail chain |
| 10:07 | 18 | you were on with the defendant, including an e-mail that |
| 10:07 | 19 | defendant wrote? |
| 10:07 | 20 | A    Yes, it is. |
| 10:07 | 21 | MR. SAGEL:  At this time, Your Honor, the |
| 10:07 | 22 | government moves to admit Exhibit 280. |
| 10:07 | 23 | MR. AVENATTI:  Objection, Your Honor.  Hearsay, |
| 10:07 | 24 | multiple levels. |
| 10:07 | 25 | THE COURT:  The e-mail from Mr. Avenatti will be |

| | | |
|---|---|---|
| 10:08 | 1 | received for the truth.  The other two will just be received |
| 10:08 | 2 | for notice. |
| 10:08 | 3 | (Exhibit 280 received in evidence) |
| 10:08 | 4 | BY MR. SAGEL: |
| 10:08 | 5 | Q    Let's start with the very top e-mail just so that we |
| 10:08 | 6 | have the names and the dates. |
| 10:08 | 7 | This is an e-mail from Long Tran to you and the |
| 10:08 | 8 | defendant; is that correct? |
| 10:08 | 9 | A    Yes, it is. |
| 10:08 | 10 | Q    What's the date of Mr. Tran's e-mail to you and the |
| 10:08 | 11 | defendant? |
| 10:08 | 12 | A    April 25th, 2018. |
| 10:08 | 13 | Q    This is two days after the wire transfer you sent to |
| 10:08 | 14 | Mr. Tran? |
| 10:08 | 15 | A    Yes. |
| 10:08 | 16 | Q    What does Mr. Tran say to you and the defendant on |
| 10:08 | 17 | April 25th? |
| 10:08 | 18 | A    "Hi, Judy.  Can you please provide me with the fed ref |
| 10:08 | 19 | number for Michelle's wire from Monday.  Thanks." |
| 10:08 | 20 | Q    Did you do -- do you know what a fed ref number is? |
| 10:08 | 21 | A    Yes, I do. |
| 10:08 | 22 | Q    What is a fed ref number? |
| 10:08 | 23 | A    It's just the ID number on a wire. |
| 10:09 | 24 | Q    It says:  "Can you please provide me with a fed |
| 10:09 | 25 | reference number for Michelle's wire from Monday."  Do you |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
10:09    1    know why he believed that Michelle Phan received a wire on
10:09    2    Monday?
10:09    3    A    I do not.
10:09    4    Q    Did you ever tell him that you sent a wire to Michelle
10:09    5    Phan on Monday?
10:09    6    A    I don't believe so, no.
10:09    7    Q    Did you send a wire to Michelle Phan two days prior, on
10:09    8    that Monday?
10:09    9    A    No, I did not.
10:09   10    Q    In response to Mr. Tran's e-mail, did defendant reply?
10:09   11    A    Yes.  He said, "Please handle."
10:09   12    Q    What --
10:09   13    A    I think this is backwards.
10:09   14    Q    What do you mean by it's backwards?
10:09   15    A    Michael responded to the wire at the bottom, not the
10:09   16    one at the top.
10:09   17    Q    Why do you believe that?  Do you see the timestamps of
10:09   18    each of the e-mails?
10:09   19    A    Yeah.  Well, I don't know which way it goes.  Obviously
10:10   20    not.  Okay.  Sorry.
10:10   21    Q    Okay.  So about 45 minutes after the Wednesday,
10:10   22    April 25th, e-mail, what does the defendant reply?
10:10   23    A    "Please handle."
10:10   24    Q    Did you have any conversations -- well, let's start
10:10   25    with the e-mail itself.  What did you understand defendant
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:10   1   to be telling you to please handle?

10:10   2   A    Michael had probably already called me or called me

10:10   3   right after he said "please handle" to tell me what he

10:10   4   wanted done.

10:10   5   Q    Whether it happened before or after this e-mail, do you

10:10   6   remember having a conversation with him about this e-mail

10:10   7   request?

10:10   8   A    Yes.

10:10   9   Q    What did defendant say to you as it related to this

10:10   10  "please handle" e-mail?

10:10   11  A    That basically he said please handle, and then Michael

10:10   12  says, "I will work on it.  I will handle it."  So I didn't

10:11   13  do anything at this time.

10:11   14  Q    And why didn't you do anything at that time?

10:11   15  A    Because Michael said he would take care of it.

10:11   16  Q    And then in response to Mr. Avenatti's please handle,

10:11   17  Long Tran sends a reply the next day; is that correct?

10:11   18  A    Yes, he did.

10:11   19  Q    And what did Long Tran say on April 26th in reply?

10:11   20  A    "Hi, Judy and Michael.  We have been in contact with

10:11   21  the bank all week, and they have not been able to track the

10:11   22  wire.  Please provide the fed ref number with immediacy.

10:11   23  This is becoming very urgent.  There is $8 million of

10:11   24  Michelle's money in the ether somewhere, and we have been

10:11   25  given the runaround for over six weeks.  I'm becoming

10:11  1   extremely concerned.  Please advise ASAP.  Best.  Long."

10:12  2   Q    Now, when he says he's been trying to track the wire

10:12  3   all week, did you ever tell him that there was a wire that

10:12  4   was sent to Michelle Phan that week?

10:12  5   A    I don't believe I did.

10:12  6   Q    Did you have any direct communications other than

10:12  7   e-mails with Long Tran?

10:12  8   A    No, I did not.

10:12  9   Q    When he's asking you to provide the fed reference

10:12  10  number with immediacy, do you understand what he's asking

10:12  11  for?

10:12  12  A    Yes.

10:12  13  Q    Was there a fed reference number to provide him?

10:12  14  A    No, because the wire had not been sent.

10:12  15  Q    Did you tell him a wire had been sent?

10:12  16  A    I don't believe I did, no.

10:12  17  Q    "There is $8 million of Michelle's money in the ether

10:12  18  somewhere, and we have been given the runaround for over six

10:12  19  weeks."  Did you give Long Tran the runaround for six weeks?

10:12  20  A    No, I did not.

10:12  21  Q    Did you give Michelle Phan the runaround for over six

10:12  22  weeks?

10:12  23  A    No.  I don't believe I have ever spoken with her.

10:13  24  Q    Do you know why Long Tran received a wire on April 23rd

10:13  25  and Michelle Phan did not?

52

| | | |
|---|---|---|
| 10:13 | 1 | A     No, I do not. |
| 10:13 | 2 | Q     If I could have you look at Exhibit 368, page 12. |
| 10:13 | 3 | A     (Witness complies.) |
| 10:14 | 4 |          MR. SAGEL:  It's already in evidence, Your Honor. |
| 10:14 | 5 | BY MR. SAGEL: |
| 10:14 | 6 | Q     Exhibit 368, page 12, there is a section for daily |
| 10:14 | 7 | balances for the MLP settlement account; is that correct? |
| 10:14 | 8 | A     Yes. |
| 10:14 | 9 | Q     And this is for the April 2018 period; is that correct? |
| 10:14 | 10 | A     Yes, it is. |
| 10:14 | 11 | Q     From April 17th through April 30th, was there ever |
| 10:14 | 12 | 8 million in this account? |
| 10:14 | 13 | A     No, there was not. |
| 10:14 | 14 | Q     As of April 23rd, how much is in this account? |
| 10:14 | 15 | A     $4,152,004. |
| 10:14 | 16 | Q     And that's how much is in the account through the end |
| 10:15 | 17 | of the month? |
| 10:15 | 18 | A     Yes, it is. |
| 10:15 | 19 | Q     If I could have you look at Exhibit 281, please. |
| 10:15 | 20 | A     (Witness complies.) |
| 10:15 | 21 | Q     Do you have that in front of you? |
| 10:15 | 22 | A     Yes. |
| 10:15 | 23 | Q     Is this an e-mail chain that you were on with the |
| 10:15 | 24 | defendant? |
| 10:15 | 25 | A     Yes, it is. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:15 | 1 | Q    Including at least two of those e-mails being written |
| 10:15 | 2 | by the defendant? |
| 10:16 | 3 | A    Yes. |
| 10:16 | 4 | Q    Is this a fair and accurate e-mail chain that you were |
| 10:16 | 5 | on with the defendant in which he wrote at least two of the |
| 10:16 | 6 | e-mails? |
| 10:16 | 7 | A    Yes. |
| 10:16 | 8 |          MR. SAGEL:  The government moves to admit |
| 10:16 | 9 | Exhibit 281, Your Honor. |
| 10:16 | 10 |          MR. AVENATTI:  Objection.  Hearsay. |
| 10:16 | 11 |          THE COURT:  Overruled.  281 will be received.  The |
| 10:16 | 12 | e-mails by Mr. Avenatti will be received for the truth, the |
| 10:16 | 13 | others just for notice. |
| 10:16 | 14 |          (Exhibit 281 received in evidence) |
| 10:16 | 15 | BY MR. SAGEL: |
| 10:16 | 16 | Q    Let's start with the top.  Who is on this e-mail chain? |
| 10:16 | 17 | A    Michael Avenatti, myself, and Long Tran. |
| 10:16 | 18 | Q    And if you kind of look and the way gmail keeps it, the |
| 10:16 | 19 | subject line is along with the five messages; do you see |
| 10:16 | 20 | that? |
| 10:16 | 21 | A    Yes.  It's Michelle wire. |
| 10:16 | 22 | Q    So the subject of these e-mails are Michelle wire? |
| 10:16 | 23 | A    Yes. |
| 10:16 | 24 | Q    On April 30th, 2018, what does defendant write? |
| 10:17 | 25 | A    "Judy, I know you are trying to dig out from last week, |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:17   1    but please get with Long and figure out what the issue is on

10:17   2    the CNB wire.  This needs to be a priority.  If I need to do

10:17   3    something or find a branch on the East Coast, let me know,

10:17   4    but I want this resolved.  Thanks."

10:17   5    Q    What did you understand defendant saying when he says

10:17   6    he wants to make this a priority?

10:17   7    A    Michael sent that, and then he would contact me and

10:17   8    tell me through that e-mail when we were going to do the

10:17   9    wire but just to hold off.

10:17  10    Q    So after the defendant sent this e-mail to Long Tran

10:17  11    that you're on, you had a conversation with him?

10:17  12    A    Either after or before.

10:17  13    Q    What did he say at that time to you in relationship to

10:17  14    this e-mail?

10:17  15    A    That we weren't sending the wire right now.  He would

10:18  16    get back with me as to when we would release the wire.

10:18  17    Q    So as of April 30th when he's sending you this e-mail,

10:18  18    to you and Long Tran, had you sent any wires to Michelle

10:18  19    Phan?

10:18  20    A    No.

10:18  21    Q    Then he says:  "If I need to do something or find a

10:18  22    branch on the East Coast, let me know, but I want to get

10:18  23    this resolved."  What would the defendant need to do if he

10:18  24    wanted to send a wire to Michelle Phan?

10:18  25           MR. AVENATTI:  Speculation.  Conjecture, Your

| | | |
|---|---|---|
| 10:18 | 1 | Honor. |
| 10:18 | 2 | THE COURT:  Overruled. |
| 10:18 | 3 | THE WITNESS:  I would just have to initiate it and |
| 10:18 | 4 | he would approve it. |
| 10:18 | 5 | BY MR. SAGEL: |
| 10:18 | 6 | Q    Did he do that? |
| 10:18 | 7 | A    No. |
| 10:18 | 8 | Q    In response to defendant's e-mail on April 30th, did |
| 10:18 | 9 | Long Tran reply? |
| 10:18 | 10 | A    Yes.  He said, "Thanks, Michael.  Hi, Judy.  The wire |
| 10:18 | 11 | hasn't come through, and we can only trace it via the fed |
| 10:19 | 12 | ref number.  Please provide ASAP so we can see where it got |
| 10:19 | 13 | held up.  This is very urgent.  Thank you." |
| 10:19 | 14 | Q    Was there a fed reference number to provide at that |
| 10:19 | 15 | time? |
| 10:19 | 16 | A    No, there was not. |
| 10:19 | 17 | Q    And in an e-mail subsequent, you replied to Long Tran; |
| 10:19 | 18 | is that correct? |
| 10:19 | 19 | A    Yes, I did. |
| 10:19 | 20 | Q    Let's start with what did you say to Long Tran? |
| 10:19 | 21 | A    What I said was:  "Long, I asked the bank to put a |
| 10:19 | 22 | trace on it.  As soon as I get the result, I will let you |
| 10:19 | 23 | know ASAP." |
| 10:19 | 24 | Q    Why did you tell Long Tran that you asked the bank to |
| 10:19 | 25 | put a trace on it? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | | |
|---|---|---|---|
| 10:19 | 1 | A | Because that's what Michael had me write. |
| 10:19 | 2 | Q | So why did you write it? |
| 10:19 | 3 | A | That's what Michael wanted to send to the client. |
| 10:19 | 4 | Q | Was there any wire to put a trace on? |
| 10:19 | 5 | A | Not at that time, no. |
| 10:20 | 6 | Q | On page 2, a couple hours later Long Tran replies to |
| 10:20 | 7 | | you and to the defendant again.  Do you see that? |
| 10:20 | 8 | A | Yes, I do. |
| 10:20 | 9 | Q | At 5:15 p.m.? |
| 10:20 | 10 | A | Yes. |
| 10:20 | 11 | Q | What did Mr. Tran say at that point? |
| 10:20 | 12 | A | "Please provide the tracking number so we can trace on |
| 10:20 | 13 | | our end as well.  If you initiated the wire, you should have |
| 10:20 | 14 | | that information readily available." |
| 10:20 | 15 | Q | Had you initiated the wire, is that correct that you |
| 10:20 | 16 | | would have had it readily available? |
| 10:20 | 17 | A | Yes. |
| 10:20 | 18 | Q | And why did you not have it readily available? |
| 10:20 | 19 | A | The wire had not been initiated as of that time. |
| 10:20 | 20 | Q | And in response to Long Tran's e-mail on May 1st, did |
| 10:20 | 21 | | defendant reply again? |
| 10:20 | 22 | A | Yes. |
| 10:20 | 23 | Q | What did he say? |
| 10:20 | 24 | A | "Please handle." |
| 10:20 | 25 | Q | Did you have a conversation with defendant at this time |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:20  1    when he said "Please handle"?

10:21  2    A    Yes.

10:21  3    Q    What did he say?

10:21  4    A    Michael said he was taking care of it.  This was his

10:21  5    way of making me be the scapegoat for whatever he was doing.

10:21  6    Q    If I could have you turn back to Exhibit 369, page 2.

10:21  7    A    (Witness complies.)

10:21  8    Q    On May 4th of 2018, the last two lines of this chart,

10:21  9    are there two outgoing wires?

10:21  10   A    Yes, there are.

10:21  11   Q    What are the amounts of the two outgoing wires?

10:21  12   A    $4 million and $146,288.

10:21  13   Q    Do you know if these were the wires to Michelle Phan?

10:22  14   A    Yes.  They were to her account, yes.

10:22  15   Q    And if you were to look at 275, this was the account

10:22  16   information that was provided to you by Long Tran for

10:22  17   Michelle Phan?

10:22  18   A    Yes, it is.

10:22  19   Q    But on March 14th it asks for the amount to be

10:22  20   $8,146,288; is that correct?

10:22  21   A    Yes, it is.

10:22  22   Q    And on May 4th, 2018, there were two wires that totaled

10:22  23   $4,146,288; is that correct?

10:22  24   A    Yes, it is.

10:22  25   Q    Why did you only send $4,146,288?

10:22  1    A    That's the amount Michael instructed me to send.

10:22  2    Q    Why did you send it in two wires, one for 4 million and

10:23  3    one for $146,288?

10:23  4    A    Michael requested I send them in two wires.

10:23  5    Q    Now, if you look back up the chart in the previous

10:23  6    year, for example, in October of 2017, you were able to send

10:23  7    a $10 million wire?

10:23  8    A    Correct.

10:23  9    Q    Is there any reason that you had to split up this

10:23  10   $4 million and $146,288 wire?

10:23  11   A    No.

10:23  12   Q    And why did you split them up?

10:23  13   A    Michael wanted them sent in two separate wires.

10:23  14   Q    Did you tell Long Tran on that day how much was wired

10:23  15   to him -- or, to Michelle Phan?

10:23  16   A    I don't believe I did.

10:23  17   Q    Did you have any communications -- let me ask it a

10:23  18   different way.  Did you ever tell Long Tran that you sent

10:23  19   $8,146,000 on that day?

10:24  20   A    No.

10:24  21   Q    Did you ever tell anybody that you sent two $4 million

10:24  22   wires on that day?

10:24  23   A    No.

10:24  24   Q    How many $4 million wire transfers did you do on that

10:24  25   day?

| | | | |
|---|---|---|---|
| 10:24 | 1 | A | One. |
| 10:24 | 2 | Q | If you could look at Exhibit 368, page 14. |
| 10:24 | 3 | A | (Witness complies.) |
| 10:24 | 4 | Q | Do you see the daily balances? |
| 10:24 | 5 | A | Yes. |
| 10:24 | 6 | Q | As of May 1st of 2018, how much is in the account? |
| 10:24 | 7 | A | $4,100,000. |
| 10:25 | 8 | Q | Is there $8 million in the account to send to Michelle |
| 10:25 | 9 | | Phan? |
| 10:25 | 10 | A | No, there is not. |
| 10:25 | 11 | Q | After you sent the two wire transfers on May 4th, 2018, |
| 10:25 | 12 | | how much money is left in the account? |
| 10:25 | 13 | A | $23. |
| 10:25 | 14 | Q | Is there another $4 million to transfer to Michelle |
| 10:25 | 15 | | Phan in her trust account? |
| 10:25 | 16 | A | No, there is not. |
| 10:25 | 17 | Q | I'm going to have you look at Exhibit -- maybe it will |
| 10:25 | 18 | | be quicker to do them together.  If you could look at |
| 10:25 | 19 | | Exhibits 282, 283, and 286. |
| 10:25 | 20 | A | (Witness complies.) |
| 10:25 | 21 | Q | Have you seen all three? |
| 10:26 | 22 | A | Yes, I have. |
| 10:26 | 23 | Q | And are these all e-mails and attachments you sent to |
| 10:26 | 24 | | defendant? |
| 10:26 | 25 | A | Yes, they are. |

10:26   1   Q    Are these all e-mails and attachments you sent to
10:26   2   defendant at his direction?
10:26   3   A    Yes, they are.
10:26   4   Q    And are these fair and accurate copies of the e-mails
10:26   5   and attachments you sent to defendant?
10:26   6   A    Yes.
10:26   7           MR. SAGEL:  At this time, Your Honor, the
10:26   8   government moves to admit Exhibits 282, 283, and 286.
10:26   9           MR. AVENATTI:  Objection, Your Honor.  Hearsay.
10:26  10           THE COURT:  Overruled.  282, 283, and 286 will be
10:26  11   received.
10:26  12           MR. SAGEL:  Thank you.
10:26  13           (Exhibits 282, 283, 286 received in evidence)
10:26  14           THE COURT:  I think we will take the mid-morning
10:26  15   break here.
10:26  16           MR. SAGEL:  Yes, Your Honor.
10:26  17           THE COURT:  I think we will take the mid-morning
10:26  18   break here.
10:26  19           MR. SAGEL:  Yes, Your Honor.
10:26  20           THE COURT:  We'll be in recess for 15 minutes,
10:27  21   ladies and gentlemen.  Please remember the admonition not to
10:27  22   discuss the case with anyone and not to form any opinions on
10:27  23   the issues in the case until it is submitted to you.  And
10:27  24   please don't do any research.
10:27  25           (Jury not present)

10:27  1                    (Recess taken at 10:27 a.m.;

10:27  2                    proceedings resumed at 10:46 a.m.)

10:27  3                    (Jury present)

10:46  4               THE COURT:  Mr. Sagel.

10:46  5               MR. SAGEL:  Thank you, Your Honor.

10:46  6    BY MR. SAGEL:

10:46  7    Q    Ms. Regnier, before we left off, we were looking at

10:46  8    three exhibits.  So let me have you look at Exhibit 283

10:46  9    first.

10:46  10   A    Okay.

10:46  11   Q    Is this an e-mail you sent to defendant?

10:46  12   A    Yes, it is.

10:46  13   Q    Do you see the date and the time listed on this e-mail?

10:46  14   A    May 10, 2018, at 9:38 p.m.

10:46  15   Q    I'm sorry.  You're looking at 282.  Can you look at

10:46  16   283.

10:46  17   A    That's May 10th, 2018, at 3:18 p.m.

10:47  18   Q    So at 3:18 on May 10th, you sent him this e-mail with

10:47  19   an attachment; is that correct?

10:47  20   A    Yes, I did.

10:47  21   Q    And looking at page 2, is page 2 -- well, why don't you

10:47  22   tell us, what is page 2?

10:47  23   A    Page 2 is a -- it's a confirmation of a wire having

10:47  24   been sent.

10:47  25   Q    And on the right, top right side, does it say the date

                SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

62

10:47    1    the wire was sent?

10:47    2    A    May 4th, 2018.

10:47    3    Q    And on the left side, the debit amount, how much is the

10:47    4    wire for?

10:47    5    A    $4 million.

10:47    6    Q    And if you look at the account, debit account, in the

10:47    7    middle it says ends in 4705; is that correct?

10:47    8    A    Yes, it is.

10:47    9    Q    That's the MLP settlement account?

10:47    10   A    Yes, it is.

10:47    11   Q    So this is the $4 million wire we were talking about

10:47    12   from May 4th from the MLP settlement account?

10:47    13   A    Yes.

10:47    14   Q    Do you know why on May 10th you were sending an e-mail

10:48    15   with this wire confirmation to the defendant?

10:48    16   A    He requested it.

10:48    17   Q    And then -- I didn't cover this, so let me just cover

10:48    18   it real quickly.  In the middle of the top section there is

10:48    19   a part that says "Fed reference number"?

10:48    20   A    Yes.

10:48    21   Q    So when you do a wire, this is the fed reference number

10:48    22   you were referring to?

10:48    23   A    Yes, it is.

10:48    24   Q    If and when you actually did a wire, you would have

10:48    25   this available to you from the confirmation page?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

63

| | | |
|---|---|---|
| 10:48 | 1 | A    Yes, you would. |
| 10:48 | 2 | Q    Now let's look at 282.  What's the date and time of |
| 10:48 | 3 | this e-mail? |
| 10:48 | 4 | A    May 10th, 2018, at 9:38 p.m. |
| 10:48 | 5 | Q    And this is from you to the defendant? |
| 10:48 | 6 | A    Yes. |
| 10:48 | 7 | Q    And why were you sending this e-mail to the defendant |
| 10:48 | 8 | approximately six hours later? |
| 10:48 | 9 | A    Because he requested it. |
| 10:49 | 10 | Q    And what do you say in the -- and do you attach the |
| 10:49 | 11 | same wire confirmation information to the defendant? |
| 10:49 | 12 | A    Yes, I do. |
| 10:49 | 13 | Q    And what do you say -- and what do you say to the |
| 10:49 | 14 | defendant in the e-mail? |
| 10:49 | 15 | A    "The detail attached shows the exact number," and then |
| 10:49 | 16 | I give the fed confirmation number. |
| 10:49 | 17 | Q    And that's the fed reference number that's listed on |
| 10:49 | 18 | the wire confirmation? |
| 10:49 | 19 | A    Yes, it is. |
| 10:49 | 20 | Q    Now, based on your understanding of doing wires, did |
| 10:49 | 21 | each wire transfer that you did have its own fed reference |
| 10:49 | 22 | number? |
| 10:49 | 23 | A    Yes, it did. |
| 10:49 | 24 | Q    Then if you could look at 286. |
| 10:49 | 25 | A    (Witness complies.) |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:49 | 1 | Q    This is another e-mail you sent to the defendant? |
| 10:49 | 2 | A    Yes. |
| 10:49 | 3 | Q    And what's the date and time of this e-mail? |
| 10:49 | 4 | A    May 11th, 2018, at 7:35 p.m. |
| 10:50 | 5 | Q    And what's the subject of this e-mail? |
| 10:50 | 6 | A    "E-mailing Avenatti, wire trs 5/4/18 to Michelle Phan." |
| 10:50 | 7 | Q    Does that stand for wire transfer? |
| 10:50 | 8 | A    Yes. |
| 10:50 | 9 | Q    On May 4th, 2018, $4 million? |
| 10:50 | 10 | A    On May 4th, 2018, yes. |
| 10:50 | 11 | Q    And why are you sending this to the defendant on |
| 10:50 | 12 | May 11th? |
| 10:50 | 13 | A    Because he requested it. |
| 10:50 | 14 | Q    And what is the attachment to this e-mail? |
| 10:50 | 15 | A    A more detailed printout of the wire transfer. |
| 10:50 | 16 | Q    In each of these three e-mails and the attachments you |
| 10:50 | 17 | did, there is only one $4 million wire transfer that you are |
| 10:50 | 18 | sending him; is that correct? |
| 10:50 | 19 | A    Yes, it is. |
| 10:50 | 20 | Q    Did you ever tell anybody on May 10th and 11th that |
| 10:51 | 21 | there were two $4 million wire transfers? |
| 10:51 | 22 | A    No. |
| 10:51 | 23 | Q    Did you ever use these documents to provide to anybody |
| 10:51 | 24 | else to make them believe there were two $4 million wire |
| 10:51 | 25 | transfers? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
10:51   1   A     No.  I just sent this to Michael.
10:51   2   Q     As you sit here, do you know what Michael Avenatti was
10:51   3   telling Long Tran at this time?
10:51   4   A     No, I don't.
10:51   5   Q     After this time, after sending these e-mails, did you
10:51   6   know that there was anything wrong in the Michelle Phan or
10:51   7   Long Tran matter at that time?
10:51   8   A     No, I did not.
10:51   9   Q     If I could have you look at Exhibit 288.
10:52  10   A     (Witness complies.)
10:52  11   Q     Exhibit 288, is that an e-mail that you sent to
10:52  12   defendant with an attachment?
10:52  13   A     Yes, it is.
10:52  14   Q     Is it a fair and accurate copy of the e-mail and
10:52  15   attachment you sent to defendant?
10:52  16   A     Yes, it is.
10:52  17         MR. SAGEL:  At this time, Your Honor, the
10:52  18   government moves to admit Exhibit 288.
10:52  19         MR. AVENATTI:  Objection, Your Honor.  Hearsay, as
10:52  20   well as 408.
10:52  21         THE COURT:  It will be received for notice only --
10:52  22   that is, that Mr. Avenatti received it.
10:53  23         (Exhibit 288 received in evidence)
10:53  24   BY MR. SAGEL:
10:53  25   Q     Looking at the first part, Ms. Regnier, when did you
```

| | | |
|---|---|---|
| 10:53 | 1 | send this e-mail to defendant? |
| 10:53 | 2 | A    August 7th, 2018. |
| 10:53 | 3 | Q    And what is the subject line? |
| 10:53 | 4 | A    "Corr from Orrick - Phan." |
| 10:53 | 5 | Q    And then it says, "State sent to you by e-mail also"; |
| 10:53 | 6 | is that correct? |
| 10:53 | 7 | A    Yes, it is. |
| 10:53 | 8 | Q    If you could look at the attachment, is this a letter |
| 10:53 | 9 | that was sent to the office from a law firm called Orrick |
| 10:53 | 10 | Herrington & Sutcliffe, LLP? |
| 10:53 | 11 | A    Yes, it is. |
| 10:53 | 12 | Q    Let's start with after you sent this to defendant, do |
| 10:53 | 13 | you discuss this letter that you sent to him? |
| 10:53 | 14 | A    No, I did not. |
| 10:53 | 15 | Q    The paragraph that starts, "After several" -- |
| 10:53 | 16 | A    Yes. |
| 10:53 | 17 | Q    -- can you read that paragraph, please. |
| 10:53 | 18 | MR. AVENATTI:  Objection, Your Honor.  Foundation. |
| 10:54 | 19 | THE COURT:  Overruled. |
| 10:54 | 20 | THE WITNESS:  "After several weeks of unjustified |
| 10:54 | 21 | delays and repeated requests made by Mr. Tran for the funds |
| 10:54 | 22 | to be disbursed to Ms. Phan, Ms. Phan eventually received |
| 10:54 | 23 | only a portion of the $8,146,288 by wire.  To date Ms. Phan |
| 10:54 | 24 | still has not received $4 million to which she is entitled |
| 10:54 | 25 | and which you are required to be holding in trust for her." |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:54 | 1 | BY MR. SAGEL: |
| 10:54 | 2 | Q    Would you read the next bolded and underlined part? |
| 10:54 | 3 |            MR. AVENATTI:  Same objection, Your Honor. |
| 10:54 | 4 |            THE COURT:  Overruled. |
| 10:54 | 5 |            THE WITNESS:  "The remaining $4 million must be |
| 10:54 | 6 | provided to Ms. Phan immediately." |
| 10:54 | 7 | BY MR. SAGEL: |
| 10:54 | 8 | Q    And the final paragraph on the first page and then the |
| 10:54 | 9 | first word on the next page. |
| 10:55 | 10 | A    "To date Ms. Phan's funds have not yet been delivered |
| 10:55 | 11 | and are presumably still in the Michael J. Avenatti, Esq., |
| 10:55 | 12 | attorney/client trust account.  As you know, in addition to |
| 10:55 | 13 | fiduciary and contractual duties, the law imposes on all |
| 10:55 | 14 | lawyers the duty to promptly pay or deliver to a client |
| 10:55 | 15 | funds to which the client is entitled." |
| 10:55 | 16 | Q    Did you review this letter before you sent it to the |
| 10:55 | 17 | defendant? |
| 10:55 | 18 | A    Yes, I did. |
| 10:55 | 19 | Q    Did this letter concern you? |
| 10:55 | 20 | A    Yes, it did. |
| 10:55 | 21 | Q    Is this the -- let me ask, why did it concern you? |
| 10:55 | 22 | A    Because it appears that the $4 million that was not |
| 10:55 | 23 | sent should have been sent. |
| 10:55 | 24 | Q    At any point did the defendant talk to you about what |
| 10:56 | 25 | was being represented in this letter? |

| | | |
|---|---|---|
| 10:56 | 1 | A    Well, Michael's standard response was, "I will handle |
| 10:56 | 2 | it." |
| 10:56 | 3 | Q    Did he give you that response in relation to this |
| 10:56 | 4 | letter? |
| 10:56 | 5 | A    Yes. |
| 10:56 | 6 | Q    After receiving this letter on August 7th, 2018, that |
| 10:56 | 7 | you forwarded to defendant, what, if anything, did you do on |
| 10:56 | 8 | the Michelle Phan case? |
| 10:56 | 9 | A    I didn't do anything at that point. |
| 10:56 | 10 | Q    Did the defendant ask you to do anything on this |
| 10:56 | 11 | matter? |
| 10:56 | 12 | A    I don't believe he did, no. |
| 10:56 | 13 | Q    Did you believe he would handle it? |
| 10:56 | 14 | A    Yes.  I assumed he would handle it. |
| 10:56 | 15 | Q    If I could have you look at Exhibit 290. |
| 10:56 | 16 | A    (Witness complies.) |
| 10:56 | 17 | Q    Is 290 an e-mail that you forwarded to the defendant? |
| 10:57 | 18 | A    Yes, it is. |
| 10:57 | 19 | Q    Is it a fair and accurate copy of an e-mail you |
| 10:57 | 20 | forwarded and you wrote to the defendant? |
| 10:57 | 21 | A    Yes, it is. |
| 10:57 | 22 | MR. SAGEL:  The government at this time, Your |
| 10:57 | 23 | Honor, moves to admit Exhibit 290. |
| 10:57 | 24 | MR. AVENATTI:  Objection.  Hearsay, Your Honor. |
| 10:57 | 25 | THE COURT:  290 will be received for notice, that |

| | | |
|---|---|---|
| 10:57 | 1 | is, that Mr. Avenatti received it. |
| 10:57 | 2 | (Exhibit 290 received in evidence) |
| 10:57 | 3 | BY MR. SAGEL: |
| 10:57 | 4 | Q    Let's start at the top, Ms. Regnier.  What's the date |
| 10:57 | 5 | of the e-mail? |
| 10:57 | 6 | A    December 12th, 2018. |
| 10:58 | 7 | Q    Did you say December 12th? |
| 10:58 | 8 | A    Yes. |
| 10:58 | 9 | Q    And what's the subject? |
| 10:58 | 10 | A    "NBPD No. 18009037." |
| 10:58 | 11 | Q    And what was your understanding of what NBPD was? |
| 10:58 | 12 | A    I assume it's their number, report number or something. |
| 10:58 | 13 | I'm not sure. |
| 10:58 | 14 | Q    Very bad question by myself.  Do you see below, does |
| 10:58 | 15 | NBPD stand for Newport Beach Police Department? |
| 10:58 | 16 | A    Yes, it does. |
| 10:58 | 17 | Q    Why did you forward this e-mail to the defendant? |
| 10:58 | 18 | A    To find out what was going on. |
| 10:58 | 19 | Q    Had you been contacted by the Newport Beach Police |
| 10:58 | 20 | Department? |
| 10:58 | 21 | A    Yes, I was. |
| 10:58 | 22 | Q    And what were you contacted by the Newport Beach Police |
| 10:58 | 23 | Department about? |
| 10:58 | 24 | A    It was about wire transfers with Michelle Phan. |
| 10:59 | 25 | Q    And did you talk to the defendant after you sent this |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:59 | 1 | e-mail? |
| 10:59 | 2 | A     Yes, I did. |
| 10:59 | 3 | Q     And what did he say? |
| 10:59 | 4 | A     Again Michael said he would handle it. |
| 10:59 | 5 | Q     Based on your understanding of your reading of the |
| 10:59 | 6 | letter and being contacted by the Newport Beach P.D. in |
| 10:59 | 7 | August and in December of 2018, did you understand that |
| 10:59 | 8 | Michelle Phan was accusing the defendant of stealing |
| 10:59 | 9 | $4 million from her? |
| 10:59 | 10 | A     By the time I got this message, yes. |
| 10:59 | 11 | Q     So in March -- on March 22nd, 2019, Michelle Phan had |
| 10:59 | 12 | accused defendant of stealing $4 million; is that correct? |
| 11:00 | 13 | A     On March 22nd, 2019? |
| 11:00 | 14 | Q     Three months after this. |
| 11:00 | 15 | A     Oh, I'm assuming so, yes. |
| 11:00 | 16 | Q     Let's stick with this date.  By this point, in |
| 11:00 | 17 | December 2018 she had already accused him of stealing |
| 11:00 | 18 | $4 million? |
| 11:00 | 19 | A     Yes.  I'm assuming that's what it was. |
| 11:00 | 20 | MR. AVENATTI:  Objection.  Speculation, Your |
| 11:00 | 21 | Honor. |
| 11:00 | 22 | THE COURT:  Overruled. |
| 11:00 | 23 | BY MR. SAGEL: |
| 11:00 | 24 | Q     So if defendant had testified under oath that Michelle |
| 11:00 | 25 | Phan had not accused him of stealing $4 million in March of |

| | | |
|---|---|---|
| 11:00 | 1 | 2019, that would be false? |
| 11:00 | 2 | MR. AVENATTI:  Objection.  Speculation, |
| 11:00 | 3 | conjecture, Your Honor. |
| 11:00 | 4 | THE COURT:  Overruled. |
| 11:00 | 5 | THE WITNESS:  Yes. |
| 11:00 | 6 | BY MR. SAGEL: |
| 11:00 | 7 | Q    During the time you worked at Eagan Avenatti, how were |
| 11:01 | 8 | you paid? |
| 11:01 | 9 | A    I was a salaried employee. |
| 11:01 | 10 | Q    Who determined your salary? |
| 11:01 | 11 | A    Michael Avenatti. |
| 11:01 | 12 | Q    What ownership interest did you have in Eagan Avenatti? |
| 11:01 | 13 | A    None. |
| 11:01 | 14 | Q    What ownership interest did you have in Avenatti & |
| 11:01 | 15 | Associates? |
| 11:01 | 16 | A    None. |
| 11:01 | 17 | Q    What ownership interest did you have in Global |
| 11:01 | 18 | Baristas, LLC? |
| 11:01 | 19 | A    None. |
| 11:01 | 20 | Q    What ownership interest did you have in Global Baristas |
| 11:01 | 21 | US, LLC? |
| 11:01 | 22 | A    None. |
| 11:01 | 23 | Q    What ownership interest did you have in Passport 420, |
| 11:01 | 24 | LLC? |
| 11:01 | 25 | A    None. |

```
11:01   1    Q    Do you know anybody who had an ownership interest in
11:01   2    each and every one of those companies I just mentioned?
11:01   3    A    I don't know if I know of everybody that had an
11:01   4    ownership interest, but I know Michael had an ownership
11:01   5    interest in each of those companies and William Parrish had
11:02   6    an ownership interest in Passport 420.
11:02   7    Q    Is there one individual who had, whether it was whole
11:02   8    or part, an ownership interest in each and every one of
11:02   9    those companies?
11:02   10   A    Yes.  Michael Avenatti.
11:02   11   Q    When you made wire transfers of any settlement monies
11:02   12   to any of those entities, what benefit did you receive?
11:02   13   A    None.
11:02   14   Q    In addition to the salary you received at Eagan
11:02   15   Avenatti, what benefit did you get from the Geoffrey Johnson
11:02   16   case?
11:02   17   A    None.
11:02   18   Q    Other than your salary, what extra money or benefit did
11:02   19   you get from the Alexis Gardner case?
11:02   20   A    None.
11:02   21   Q    Other than your salary, what extra money or benefit did
11:02   22   you get from the Gregory Barela case?
11:02   23   A    I was reimbursed my expenses that I had expended during
11:03   24   the case.
11:03   25   Q    Other than that?
```

| | | |
|---|---|---|
| 11:03 | 1 | A    None. |
| 11:03 | 2 | Q    In addition to your salary, what benefit or money did |
| 11:03 | 3 | you receive from the Michelle Phan matter? |
| 11:03 | 4 | A    None. |
| 11:03 | 5 | MR. SAGEL:  No further questions, Your Honor. |
| 11:03 | 6 | THE COURT:  Mr. Avenatti. |
| 11:03 | 7 | MR. AVENATTI:  Thank you, Your Honor. |
| 11:03 | 8 | (Pause in proceedings) |
| 11:03 | 9 | MR. AVENATTI:  Your Honor, may I proceed? |
| 11:04 | 10 | THE COURT:  You may. |
| 11:04 | 11 | CROSS-EXAMINATION |
| 11:04 | 12 | BY MR. AVENATTI: |
| 11:04 | 13 | Q    Ms. Regnier, good morning. |
| 11:04 | 14 | A    Good morning. |
| 11:04 | 15 | Q    If at any point in time during the exam you need a |
| 11:04 | 16 | break, just ask us.  Okay? |
| 11:04 | 17 | A    Okay. |
| 11:04 | 18 | Q    Can you please explain to the jury what your |
| 11:04 | 19 | educational background is. |
| 11:04 | 20 | A    I have an Associate's Degree in Paralegal Studies. |
| 11:04 | 21 | Q    Are you a CPA? |
| 11:05 | 22 | A    No. |
| 11:05 | 23 | Q    Do you have an MBA? |
| 11:05 | 24 | A    No. |
| 11:05 | 25 | Q    Do you have a four-year degree? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 11:05 | 1 | A | No, I do not. |
| 11:05 | 2 | Q | Do you have a degree in finance? |
| 11:05 | 3 | A | No, I do not. |
| 11:05 | 4 | Q | Do you have any degree relating to accounting? |
| 11:05 | 5 | A | No. |

11:05  6   Q    Now, you started at the firm, which was then known as

11:05  7   Eagan O'Malley & Avenatti, in August of 2007; am I correct?

11:05  8   A    Yes.

11:05  9   Q    Was that the beginning of the firm?

11:05  10  A    Yes, it was.

11:05  11  Q    Can you please describe to the jury how the firm began.

11:05  12       MR. SAGEL:  Objection.  Relevance.

11:05  13       THE COURT:  Sustained.

11:05  14  BY MR. AVENATTI:

11:05  15  Q    How is it that you became -- how is it that you came to

11:05  16  work with me in 2007?

11:05  17  A    The prior firm I was at, we worked on a case with the

11:06  18  firm you were currently at.

11:06  19  Q    And what was your salary range at the firm from

11:06  20  August 2007 until March of 2019?

11:06  21  A    I believe it went from, like, $90,000 annually to

11:06  22  $185,000 annually.

11:06  23  Q    And when did you start making $185,000 a year at Eagan

11:06  24  Avenatti, LLC?

11:06  25  A    I don't remember the exact year.

| | | |
|---|---|---|
| 11:06 | 1 | Q    Can you estimate for us? |
| 11:06 | 2 | A    2016, 2015 maybe. |
| 11:06 | 3 | Q    And you were the highest paid employee at the law firm |
| 11:07 | 4 | other than attorneys; am I correct? |
| 11:07 | 5 | A    Yes. |
| 11:07 | 6 | Q    And that was true from August of 2007 until early 2019; |
| 11:07 | 7 | wasn't it? |
| 11:07 | 8 | A    Yes, it was. |
| 11:07 | 9 | Q    What was the single largest bonus you received while |
| 11:07 | 10 | you were working at Eagan Avenatti, LLP? |
| 11:07 | 11 | A    I received a $90,000 bonus. |
| 11:07 | 12 | Q    No, I meant for a single bonus. |
| 11:07 | 13 | A    A single bonus? |
| 11:07 | 14 | Q    $90,000, right? |
| 11:07 | 15 | A    Yes.  That's what I said, $90,000. |
| 11:07 | 16 | Q    And when did you receive a $90,000 single bonus? |
| 11:07 | 17 | A    That was early on in the firm.  I'm thinking it was |
| 11:07 | 18 | around 2013 maybe.  I'm not really sure.  I don't recall. |
| 11:07 | 19 | Q    And you received other bonuses throughout the years; |
| 11:08 | 20 | did you not? |
| 11:08 | 21 | A    Yes, I received other bonuses. |
| 11:08 | 22 | Q    And you understood that your bonuses were contingent on |
| 11:08 | 23 | the success of the firm; did you not? |
| 11:08 | 24 | A    Yes. |
| 11:08 | 25 | Q    During the 12 years that we worked together, did you |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:08   1   ever tell anyone how thankful you were to be working at the

11:08   2   firm?

11:08   3   A    Yes.  When we first started the firm, it was very

11:08   4   enjoyable.

11:08   5   Q    Ms. Regnier, did you ever tell anyone between 2014 and

11:08   6   2019 how thankful you were to be working at the firm?

11:08   7   A    I very well may have, but I really don't recall.

11:08   8   Q    Did you ever express appreciation for how generous I

11:09   9   was with you when you were working at the law firm?

11:09  10   A    Yes.  You were generous with all the employees.

11:09  11   Q    Do you recall while working at the firm that from time

11:09  12   to time you would give me greeting cards or thank-you cards

11:09  13   in appreciation?

11:09  14   A    Yes.

11:09  15   Q    How many?  Can you estimate for the jury how many did

11:09  16   you give me over the course of your employment?

11:09  17   A    I have no idea.

11:09  18   Q    There were many, correct?

11:09  19   A    There were several, yes.

11:09  20   Q    Do you recall giving me a card, a thank-you card that

11:09  21   read:  "Michael, I just wanted to say thank you.  This has

11:09  22   been an incredible experience.  You are a wonderful, caring

11:10  23   person despite what you want the world to think.  Looking

11:10  24   forward to many years of success.  Judy"?  Do you recall

11:10  25   giving me a card that said that?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:10 | 1 | A    I don't doubt that I did.  I don't recall when I gave |
| 11:10 | 2 | it to, but I'm sure I did. |
| 11:10 | 3 | Q    I want to take you to the morning of March 25th, 2019. |
| 11:10 | 4 | Do you recall that morning? |
| 11:10 | 5 | A    Yes, I do. |
| 11:10 | 6 | Q    What happened on the morning of March 25th, 2019? |
| 11:10 | 7 | A    My house was raided by federal agents. |
| 11:10 | 8 | Q    How many agents? |
| 11:10 | 9 | A    I believe there were 11.  I'm not sure -- and a |
| 11:11 | 10 | helicopter. |
| 11:11 | 11 | Q    What do you mean, a helicopter? |
| 11:11 | 12 | A    There was a helicopter overhead. |
| 11:11 | 13 | Q    Over your house? |
| 11:11 | 14 | A    Yes. |
| 11:11 | 15 | Q    How did the raid start? |
| 11:11 | 16 | A    Somebody banging on the door. |
| 11:11 | 17 | Q    What happened next? |
| 11:11 | 18 | A    I opened the door.  They said they had a warrant to |
| 11:11 | 19 | search.  I asked them to wait just a second as I had two |
| 11:11 | 20 | puppies, and they allowed me to lock my dogs up.  Then I |
| 11:11 | 21 | opened the door, and they took me out of the house and they |
| 11:11 | 22 | proceeded to search my home.  They gave me a copy of the |
| 11:11 | 23 | warrant. |
| 11:11 | 24 | Q    What were they wearing? |
| 11:11 | 25 | A    Jeans generally with -- some had uniforms.  Some had, |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:11  1    like, a polo shirt on.

11:12  2    Q    Were they armed?

11:12  3    A    Yes.

11:12  4    Q    How do you know?

11:12  5    A    I could see the weapons.

11:12  6    Q    Did they give you any instructions?

11:12  7    A    As to -- yes.  I mean, they asked me to sit down.

11:12  8    First I was outside, and then they asked me to come in and

11:12  9    sit down.  They told me my husband could not come in.  Then

11:12  10   they asked me if they could question me.

11:12  11   Q    What do you mean when you say they told you your

11:12  12   husband could not come in?  Was your husband home?

11:12  13   A    Well, he came home.  We have security cameras.  He saw

11:12  14   them come in, and he came home.

11:12  15   Q    Did they allow you to speak with your husband

11:12  16   immediately when he came home?

11:12  17   A    No.

11:12  18   Q    Did you try?

11:12  19   A    I asked if I could, and they said they didn't want me

11:13  20   to because they didn't want anything or anyone to change my

11:13  21   opinion or anything.

11:13  22   Q    Who told you you couldn't speak with your husband?

11:13  23   A    I don't remember which agent that was.

11:13  24   Q    Was it -- was Special Agent Carlos to my left, was he

11:13  25   present that day?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

79

| | | |
|---|---|---|
| 11:13 | 1 | A     Yes, he was. |
| 11:13 | 2 | Q     And Mr. Sagel was there as well; was he not? |
| 11:13 | 3 | A     Yes. |
| 11:13 | 4 | Q     Did one of those two gentlemen tell you that you |
| 11:13 | 5 | couldn't speak with your husband Robert? |
| 11:13 | 6 | A     Yes. |
| 11:13 | 7 | Q     Did you or your husband have any unregistered firearms |
| 11:13 | 8 | in the house at the time of the warrant? |
| 11:13 | 9 | MR. SAGEL:  403, Your Honor. |
| 11:13 | 10 | THE COURT:  Sustained. |
| 11:13 | 11 | BY MR. AVENATTI: |
| 11:13 | 12 | Q     Did the agents do anything to secure any firearms in |
| 11:13 | 13 | the house when they executed the warrant? |
| 11:14 | 14 | A     Yes. |
| 11:14 | 15 | Q     What do you recall them doing? |
| 11:14 | 16 | A     My husband keeps a gun for protection, and they took |
| 11:14 | 17 | the ammunition out of it and put the ammunition in one room |
| 11:14 | 18 | and left the gun in the other room. |
| 11:14 | 19 | Q     Did they do anything else relating to any firearms? |
| 11:14 | 20 | MR. SAGEL:  403, Your Honor. |
| 11:14 | 21 | THE COURT:  Sustained. |
| 11:14 | 22 | BY MR. AVENATTI: |
| 11:14 | 23 | Q     Now, had you ever met Special Agent Carlos or Assistant |
| 11:14 | 24 | U.S. Attorney Mr. Brett Sagel before that morning? |
| 11:14 | 25 | A     No, I had not. |

80

| | | |
|---|---|---|
| 11:14 | 1 | Q    Had anyone from the United States Department of Justice |
| 11:14 | 2 | reached out to you to ask you any questions about me or the |
| 11:14 | 3 | firm prior to that morning? |
| 11:14 | 4 | A    No, they had not. |
| 11:14 | 5 | Q    Were you shocked that morning when approximately |
| 11:14 | 6 | 11 agents showed up at your home? |
| 11:14 | 7 | A    Yes, I was. |
| 11:14 | 8 | Q    How big is your home? |
| 11:15 | 9 | MR. SAGEL:  Objection.  Relevance. |
| 11:15 | 10 | THE COURT:  Sustained. |
| 11:15 | 11 | BY MR. AVENATTI: |
| 11:15 | 12 | Q    One of the very first things that Mr. Sagel told that |
| 11:15 | 13 | morning as 11 agents were rifling through your home was |
| 11:15 | 14 | that -- |
| 11:15 | 15 | MR. SAGEL:  Objection.  Argumentative, Your Honor. |
| 11:15 | 16 | THE COURT:  Sustained. |
| 11:15 | 17 | BY MR. AVENATTI: |
| 11:15 | 18 | Q    Ms. Regnier, one of the very first things that |
| 11:15 | 19 | Mr. Sagel told you as the agents were searching your home |
| 11:15 | 20 | was that they had not decided whether they were going to |
| 11:15 | 21 | charge you or not; isn't that true? |
| 11:15 | 22 | A    Yes. |
| 11:15 | 23 | Q    And you took that to mean that you should probably talk |
| 11:15 | 24 | to them, right? |
| 11:15 | 25 | A    I would have talked to them anyway. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:16  1  Q   Were you concerned about being charged that morning,

11:16  2  Ms. Regnier?

11:16  3  A   I don't know if that even registered.  I was scared to

11:16  4  death to have 11 people just barge into my home.  I was

11:16  5  there by myself.

11:16  6  Q   You were terrified, right?

11:16  7  A   Yes.

11:16  8  Q   I think you said that they gave you a copy of the

11:16  9  search warrant?

11:16  10  A   Yes, when they got there.

11:16  11  Q   And you understood that they had gone to court to get a

11:16  12  search warrant in order to conduct this search on that

11:17  13  morning, right?

11:17  14  A   Yes.

11:17  15  Q   And you have since become aware that Special Agent

11:17  16  Carlos to my left told a magistrate judge in connection with

11:17  17  obtaining that warrant that you had substantial involvement

11:17  18  in the alleged criminal conduct; isn't that true?

11:17  19         MR. SAGEL:  Objection.  Foundation, Your Honor.

11:17  20         THE COURT:  Overruled.

11:17  21         THE WITNESS:  I don't know what he told them.

11:17  22  BY MR. AVENATTI:

11:17  23  Q   You later learned, did you not, Ms. Regnier, that

11:17  24  Special Agent Carlos in his affidavit to the judge had said

11:17  25  that you were personally involved in many of the events at

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:17 | 1 | issue in the government's investigation, including directing |
| 11:18 | 2 | or executing transfer of funds between various entities |
| 11:18 | 3 | associated with me, Avenatti, directing the actions of GB US |
| 11:18 | 4 | employees, and transmitting signed contracts and agreements |
| 11:18 | 5 | on behalf of GB US; GB, LLC; EA, LLP; or A&A to other |
| 11:18 | 6 | parties?  You have become aware of that since then, correct? |
| 11:18 | 7 | MR. SAGEL:  Objection.  Foundation, 403. |
| 11:18 | 8 | THE COURT:  Overruled. |
| 11:18 | 9 | THE WITNESS:  No, I did not. |
| 11:18 | 10 | BY MR. AVENATTI: |
| 11:18 | 11 | Q    Do you have any reason to dispute what I just read? |
| 11:18 | 12 | MR. SAGEL:  403, Your Honor. |
| 11:18 | 13 | THE COURT:  Sustained. |
| 11:18 | 14 | BY MR. AVENATTI: |
| 11:19 | 15 | Q    Did you later learn that based on the representations |
| 11:19 | 16 | of Special Agent Carlos, the government had been tracking |
| 11:19 | 17 | you by way of your cell phone from March 18, 2019, until |
| 11:19 | 18 | March 22, 2019? |
| 11:19 | 19 | A    I did not know that. |
| 11:19 | 20 | Q    Have you ever asked anyone whether you are going to be |
| 11:19 | 21 | charged criminally? |
| 11:19 | 22 | A    Have I asked?  I have been told that I am not a target |
| 11:19 | 23 | as I didn't benefit from any of the money. |
| 11:20 | 24 | Q    But you've never asked anyone whether you were going to |
| 11:20 | 25 | be criminally charged after the 11 agents raided your house? |

11:20   1   A    I spoke with an attorney.

11:20   2   Q    We're going to get to this in a minute, but can you

11:20   3   estimate for the jury how many times you have met or

11:20   4   communicated with Mr. Sagel?

11:20   5   A    Probably six, maybe seven.

11:20   6   Q    And you have never asked him:  Mr. Sagel, are you going

11:20   7   to criminally charge me?

11:20   8   A    No, I have never asked that question of him.

11:20   9   Q    Now, one of the things that Mr. Sagel told you -- well,

11:21   10  strike that.  Can you describe for us how it was that you

11:21   11  first came to meet Mr. Sagel in your home on the morning of

11:21   12  March 25, 2019?

11:21   13  A    He arrived with the agents.

11:21   14  Q    At the time they initially appeared at your door?

11:21   15  A    Yes.

11:21   16  Q    And what happened next?

11:21   17  A    Like I said, they let me put my dogs away and they took

11:21   18  me outside.  And then they brought me back inside, and they

11:21   19  handed me a copy of the warrant and they asked if they could

11:21   20  question me.

11:21   21  Q    And one of the things that Mr. Sagel told you was that

11:21   22  the clients of the firm had waived the attorney/client

11:21   23  privilege, so you should be free to speak with him, right?

11:21   24  A    I don't doubt that.  I don't know.  I really don't

11:22   25  remember, but --

84

11:22   1   Q    Well, let me see if I can refresh your recollection.

11:22   2   Now, before I get to that, you understand generally what the

11:22   3   attorney/client privilege is, correct?

11:22   4   A    Yes.

11:22   5   Q    And is it fair to say that the attorney/client

11:22   6   privilege protects communications between clients and their

11:22   7   attorneys?

11:22   8   A    Yes.

11:22   9   Q    And that was your understanding on the morning of

11:22  10   March 25th, correct?

11:22  11   A    Yes.

11:22  12   Q    So unless you had a representation that that privilege

11:22  13   had been waived by the client, you understood that you were

11:22  14   not at liberty to discuss attorney/client privilege

11:22  15   communications with people outside the law firm, correct?

11:22  16   A    Yes.

11:23  17            MR. AVENATTI:  Your Honor, may I approach?

11:23  18            THE COURT:  For what purpose?

11:23  19            MR. AVENATTI:  For refreshing recollection as to

11:23  20   what Mr. Sagel told her about the waiver of the

11:23  21   attorney/client privilege.

11:23  22            THE COURT:  I don't think there has been any lapse

11:23  23   of memory to this point based on questions you have asked.

11:23  24            MR. AVENATTI:  Let me see if I can ask a cleanup

11:23  25   question, Your Honor.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:23  1  BY MR. AVENATTI:

11:23  2  Q    Ms. Regnier, do you have a recollection that when you

11:24  3  first sat down with Mr. Sagel, he represented to you that

11:24  4  the client had waived the attorney/client privilege?

11:24  5  A    I don't know if he represented it then or not or at

11:24  6  some point during the day, but I'm sure he did.

11:24  7         MR. AVENATTI:  May I refresh, Your Honor?

11:24  8         THE COURT:  The testimony is she was told that at

11:24  9  some point during the day.

11:24  10  BY MR. AVENATTI:

11:24  11  Q    And because Mr. Sagel gave you that representation,

11:24  12  that's why you felt it free to speak with him about

11:24  13  attorney/client privilege matters, correct?

11:24  14  A    Yes.

11:24  15         MR. SAGEL:  Actually, Your Honor, if he wants to

11:24  16  show her what was said, I don't object.

11:24  17         THE COURT:  Proceed if you wish to.  If you want

11:24  18  to show it to her, fine.

11:25  19         MR. AVENATTI:  I think we have the testimony now,

11:25  20  Your Honor.  I will move on.

11:25  21  BY MR. AVENATTI:

11:25  22  Q    Now, you are currently being sued for fraud by

11:25  23  Mr. Johnson and Mr. Barela; isn't that true?

11:25  24  A    Yes.

11:25  25  Q    Have you read their allegations in their civil

| | | |
|---|---|---|
| 11:25 | 1 | complaint? |
| 11:25 | 2 | A    Yes. |
| 11:25 | 3 | Q    Are they true, what they say about you in those |
| 11:25 | 4 | complaints? |
| 11:25 | 5 | MR. SAGEL:  Objection.  Calls for hearsay and 403. |
| 11:25 | 6 | THE COURT:  Overruled. |
| 11:25 | 7 | THE WITNESS:  I did not take any of their money. |
| 11:25 | 8 | BY MR. AVENATTI: |
| 11:25 | 9 | Q    Well, what about the other allegations that they make |
| 11:25 | 10 | about you in the complaints; are those true? |
| 11:25 | 11 | A    I don't believe so, no.  And I don't have one in front |
| 11:25 | 12 | of me to even read to be able to go over. |
| 11:26 | 13 | Q    Okay.  Well, let me see if I can refresh your |
| 11:26 | 14 | recollection. |
| 11:26 | 15 | MR. AVENATTI:  Your Honor, may I approach? |
| 11:26 | 16 | THE COURT:  You may. |
| 11:26 | 17 | (Document handed to the witness) |
| 11:26 | 18 | BY MR. AVENATTI: |
| 11:26 | 19 | Q    Now, Ms. Regnier, you have seen this document before; |
| 11:26 | 20 | have you not? |
| 11:26 | 21 | A    Yes, I have. |
| 11:27 | 22 | Q    Do you recognize this document as a civil complaint |
| 11:27 | 23 | that names you as a defendant in a case brought by Gregory |
| 11:27 | 24 | Barela and his wife? |
| 11:27 | 25 | A    Yes, it names me amongst others. |

```
11:27   1    Q    And one of the things that this document accuses you of
11:27   2    is making misrepresentations to Mr. Barela, correct?
11:27   3    A    I'm looking for that.
11:27   4         MR. SAGEL:  If he is using this to refresh
11:27   5    recollection, I'd ask that he point to a specific area that
11:27   6    he's asking to refresh.
11:27   7         THE COURT:  Mr. Avenatti.
11:27   8    BY MR. AVENATTI:
11:27   9    Q    Take a look at paragraph 55, page 12.
11:28   10   A    That's stating that Mr. Barela reached out to me to --
11:28   11   Q    Don't read the document.  Isn't it true, Ms. Regnier,
11:28   12   that Mr. Barela filed suit against you back in November of
11:28   13   2019, and one of the accusations he made against you was
11:28   14   that on June 29th, 2018, he reached out to you via e-mail
11:28   15   and he asked you for a copy of the signed settlement
11:28   16   agreement which included the signatures from the settling
11:28   17   party's representatives?  Isn't it true that's one of the
11:29   18   allegations he's made against you?
11:29   19   A    That he reached out to me and asked for it, yes.
11:29   20   Q    Isn't it also true that Mr. Barela stated that you
11:29   21   provided him with a copy of the fully executed settlement
11:29   22   agreement which contained falsified payment dates of
11:29   23   March 10, 2018; March 10, 2019; March 10, 2020; and
11:29   24   March 10, 2021?  Isn't that one of his accusations against
11:29   25   you?
```

11:29  1   A    Yes.  I provided him with a copy of the fully executed
11:29  2   settlement agreement that --
11:29  3   Q    I'm just asking you whether that's an accusation
11:29  4   against you.
11:29  5   A    Yes.
11:29  6   Q    And he also states that you provided him that
11:29  7   settlement agreement when in reality the settlement
11:29  8   agreement called for the payments from the settling party to
11:29  9   be made by January 10th of each year.  That is his
11:30  10  accusation against you, Judy Regnier, right?
11:30  11  A    This is in his statement section.  I don't know that
11:30  12  this is an accusation.
11:30  13  Q    Go to page 6.  Do you see at the top where it says
11:30  14  general allegations?
11:30  15  A    Yes.
11:30  16  Q    Okay.  That's one of Mr. Barela's allegations against
11:30  17  you; isn't it?
11:30  18  A    It's an allegation.  It's not an accusation, yes.
11:30  19  Q    Okay.  It's an allegation, correct?
11:30  20  A    Correct.
11:30  21  Q    All right.  And another allegation that Mr. Barela has
11:30  22  made against you is that you were aware that the settling
11:30  23  party had made the initial $1.6 million payment into the
11:30  24  client trust account on January 5th, 2018, yet never told
11:30  25  him or his wife in your numerous communications to

```
11:31   1   Mr. Barela.  That's another allegation Mr. Barela made
11:31   2   against you, right?
11:31   3   A    Yes.
11:31   4   Q    Another allegation that Mr. Barela has made against you
11:31   5   is that at no time did you inform Mr. Barela that the
11:31   6   settling party had paid the settlement money, correct?  I
11:32   7   direct your attention to paragraph 92.
11:32   8   A    That's correct.
11:32   9             MR. SAGEL:  Are we refreshing recollection
11:32  10   anymore, Your Honor?  This is inappropriate refreshing of
11:32  11   recollection at this point.
11:32  12             THE COURT:  She hasn't indicated that she doesn't
11:32  13   have a recollection of that.  What's the relevance of this
11:32  14   line of questioning?  What's the relevance to this case?
11:32  15             MR. AVENATTI:  Your Honor, it's highly relevant.
11:32  16             THE COURT:  Tell me what the relevance is.
11:32  17             MR. AVENATTI:  Sure.  It's highly relevant for the
11:32  18   following reason, Your Honor.  This is one of the
11:32  19   individuals that they are accusing me of committing this
11:32  20   conduct over when in essence this gentleman is also pointing
11:32  21   to Ms. Regnier as an individual that likewise committed
11:32  22   improper and fraudulent acts, Your Honor.
11:32  23             THE COURT:  Move on to another line of
11:32  24   questioning.
11:32  25             MR. AVENATTI:  Your Honor, I will also note for
```

11:33  1   the record that on direct the testimony was that I had

11:33  2   provided the settlement agreement, and Mr. Barela claims in

11:33  3   his own legal document that it was Ms. Regnier.

11:33  4            THE COURT:  Move on to another line of

11:33  5   questioning, sir.

11:33  6   BY MR. AVENATTI:

11:33  7   Q    Now, Mr. Johnson has also accused you of fraud; is that

11:33  8   correct?

11:33  9   A    He has also sued me in a lawsuit.

11:33  10  Q    And he named you as a defendant in that lawsuit; did he

11:33  11  not, Ms. Regnier?

11:33  12  A    Yes, amongst others.

11:33  13           MR. SAGEL:  403 as to any additional questioning

11:33  14  at this point, Your Honor.

11:33  15           THE COURT:  Sustained.  The question doesn't have

11:33  16  sufficient probative value to outweigh the time taken.

11:34  17           MR. AVENATTI:  Your Honor, you're precluding me

11:34  18  from asking any questions about Mr. Johnson's allegations

11:34  19  against Mr. Regnier relating to the fraudulent conduct?

11:34  20           THE COURT:  I find they're not relevant and an

11:34  21  undue expenditure of time.

11:34  22  BY MR. AVENATTI:

11:34  23  Q    I think you testified that you estimate that you have

11:34  24  met with the government six or seven times; is that correct?

11:34  25           MR. SAGEL:  That's not what the question was that

| | | |
|---|---|---|
| 11:34 | 1 | she answered, Your Honor. |
| 11:34 | 2 | THE COURT:  Overruled. |
| 11:34 | 3 | THE WITNESS:  You had asked me if I had met with |
| 11:34 | 4 | Mr. Sagel.  I have met with other members of the government |
| 11:34 | 5 | at other times. |
| 11:34 | 6 | BY MR. AVENATTI: |
| 11:35 | 7 | Q   We're going to go through the list in a minute, but I |
| 11:35 | 8 | want to go back to March 25th, 2019, when you were sitting |
| 11:35 | 9 | in your home speaking with Mr. Sagel. |
| 11:35 | 10 | Do you recall telling Mr. Sagel and Mr. Carlos and |
| 11:35 | 11 | Special Agent Melinda Ball that you just worked for me and |
| 11:35 | 12 | did not know a lot? |
| 11:35 | 13 | A   I think that's taken out of context.  I'm not sure what |
| 11:35 | 14 | I said that in response to. |
| 11:35 | 15 | MR. AVENATTI:  Your Honor, can I refresh the |
| 11:35 | 16 | witness's recollection? |
| 11:35 | 17 | THE COURT:  You may. |
| 11:35 | 18 | (Document handed to the witness) |
| 11:35 | 19 | BY MR. AVENATTI: |
| 11:36 | 20 | Q   Directing your attention, Ms. Regnier, to paragraph |
| 11:36 | 21 | eight.  Do you recall Mr. Sagel informing you that you were |
| 11:36 | 22 | talking to federal agents and it was important that you tell |
| 11:36 | 23 | the truth and to let them know if you don't know or are |
| 11:37 | 24 | unsure about something?  Do you recall that? |
| 11:37 | 25 | A   Yes. |

92

| | | |
|---|---|---|
| 11:37 | 1 | Q    And do you recall that you stated that you just worked |
| 11:37 | 2 | for me and did not know a lot? |
| 11:37 | 3 | A    I must have stated that.  I mean, I don't recall. |
| 11:37 | 4 | Q    In all of your communications with Mr. Sagel and the |
| 11:37 | 5 | other federal agents investigating me, you never lied to any |
| 11:37 | 6 | of them; did you? |
| 11:37 | 7 | A    No. |
| 11:37 | 8 | Q    You were always a hundred percent accurate and |
| 11:37 | 9 | truthful; were you not? |
| 11:37 | 10 | A    I was always a hundred percent truthful as to what my |
| 11:38 | 11 | memory of events were, yes. |
| 11:38 | 12 | Q    One of the other things that you told the agents on the |
| 11:38 | 13 | morning of March 25th was that you knew that I did business |
| 11:38 | 14 | dealings with Mr. Barela outside of that one case but you |
| 11:38 | 15 | didn't know the details, correct? |
| 11:38 | 16 | A    Correct. |
| 11:38 | 17 | Q    What did you tell the federal agents that morning |
| 11:38 | 18 | relating to how the financial records of the law firm were |
| 11:38 | 19 | kept? |
| 11:38 | 20 | A    I believe I told them they were kept on QuickBooks. |
| 11:38 | 21 | Q    Did you mention Tabs? |
| 11:39 | 22 | A    Probably, yes. |
| 11:39 | 23 | Q    Why do you think you mentioned Tabs? |
| 11:39 | 24 | A    Because records were also kept on Tabs. |
| 11:39 | 25 | Q    For what purpose? |

93

11:39  1   A    That had more to do -- that had a lot to do with the

11:39  2   hourly billing, and it was a double-entry system on the

11:39  3   costs and expenses.

11:39  4   Q    We're going to get to this momentarily, but a number of

11:39  5   the documents you were asked about were not printouts from

11:39  6   QuickBooks.  They were printouts from Tabs, right?

11:39  7   A    Could be, yes.

11:39  8   Q    Well, do you remember yesterday you were asked about --

11:39  9   you were asked a question and you said that there was

11:39  10  another program that was used but you couldn't remember the

11:39  11  name of it and you thought it might be Timeslips?

11:39  12  A    Yes, I remember that.

11:39  13  Q    Now is your recollection refreshed that in fact it was

11:39  14  Tabs?

11:39  15  A    Yes.

11:40  16  Q    When you had to figure out costs for a case, you would

11:40  17  look at Tabs; would you not?

11:40  18  A    No.  I would look at both Tabs and QuickBooks.

11:40  19  Q    Why would you look at both QuickBooks and Tabs?

11:40  20  A    To make sure that we had encompassed all of the costs.

11:40  21  Q    You couldn't rely on just one.  You had to look at

11:40  22  both, right?

11:40  23  A    Yes.

11:40  24  Q    Otherwise the calculation could be off?

11:40  25  A    Correct.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

94

| | | |
|---|---|---|
| 11:40 | 1 | Q    Now, after the morning of March 25th, the next |
| 11:40 | 2 | communication that you had with the government was on |
| 11:40 | 3 | March 26th.  Do you recall that? |
| 11:41 | 4 | A    Yes. |
| 11:41 | 5 | Q    What happened on March 26th? |
| 11:41 | 6 | A    There was an additional box of documents that needed to |
| 11:41 | 7 | be retrieved from my house. |
| 11:41 | 8 | Q    So what did you do? |
| 11:41 | 9 | A    I contacted, I think, Mr. Carlos and advised him that |
| 11:41 | 10 | they needed to pick up that one box. |
| 11:41 | 11 | Q    Why did you do that? |
| 11:41 | 12 | A    Because it was one of the boxes they had wanted to |
| 11:41 | 13 | take, and it was still at my house. |
| 11:41 | 14 | Q    So they had left behind a box mistakenly? |
| 11:41 | 15 | A    Yes. |
| 11:41 | 16 | Q    The next contact you had with the government relating |
| 11:41 | 17 | to me was on March -- on April 9th, 2019, right? |
| 11:42 | 18 | A    I guess.  I don't know as I sit here. |
| 11:42 | 19 | Q    Do you recall that they returned some electronic |
| 11:42 | 20 | devices to you, approximately 12 of them on that date? |
| 11:42 | 21 | A    Yes. |
| 11:42 | 22 | Q    Then on June 14th, 2019, you had a call with |
| 11:42 | 23 | Mr. Carlos, correct? |
| 11:42 | 24 | A    I don't know the date. |
| 11:42 | 25 | Q    Let me see if I can refresh your recollection. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:42  1          MR. AVENATTI:  May I approach, Your Honor?

11:42  2          THE COURT:  You may.

11:42  3          MR. AVENATTI:  I'm sure Mr. Sagel will correct me

11:42  4  if I am wrong.

11:43  5  BY MR. AVENATTI:

11:43  6  Q    You have a recollection that you had a call with

11:43  7  Mr. Carlos from 8:10 a.m. to 8:20 a.m. on or about

11:43  8  June 14th, 2019?

11:43  9  A    I recall having a call with him.  I can't tell you the

11:43  10  time and the date, but, yes.

11:43  11  Q    And at that time you told Mr. Carlos that you had been

11:43  12  named in this Geoffrey Johnson lawsuit, correct?

11:43  13  A    Yes.

11:44  14  Q    And you told Mr. Carlos about six to seven boxes of

11:44  15  documents that you still had at your residence, right?

11:44  16  A    Okay, yes.

11:44  17  Q    And you described those documents as correspondence

11:44  18  from fans, personal records, MA finances, other companies,

11:44  19  and a ton of EA records case related.  That's how you

11:44  20  described the documents to Special Agent Carlos, correct?

11:44  21  A    Okay.

11:44  22  Q    Do you see that?

11:44  23  A    I see the notes, yeah.

11:44  24  Q    Does that refresh your recollection?

11:44  25  A    I said okay, yes.

11:45   1   Q    Then you told him that you wanted those documents moved
11:45   2   or burned or trashed?
11:45   3   A    Yes.
11:45   4   Q    And you also said you were willing to hand over
11:45   5   the miscellaneous or the -- strike that.  You also said you
11:45   6   were willing to hand over the boxes, right, the six to seven
11:45   7   boxes?
11:45   8   A    Yes.
11:45   9   Q    What happened to those boxes?
11:45   10  A    I don't know.  We have moved, and I don't have them
11:45   11  anymore.  I looked for them.
11:45   12  Q    Well, wait a minute.  At the time that you spoke with
11:45   13  Mr. Carlos, you had them, correct?
11:45   14  A    Yes.  That was over two years ago.
11:46   15  Q    And you told him that you had them?
11:46   16  A    Yes, I did.
11:46   17  Q    And did he say, we'll be right over to pick them up?
11:46   18  A    No.
11:46   19  Q    Okay.  Let me ask another question.  Did he say, I
11:46   20  don't want you to move them or destroy them?
11:46   21  A    No.  He said he can't advise me what to do with those
11:46   22  boxes.  They were outside the scope of the warrant.
11:46   23  Q    Did you describe every document contained in the six to
11:46   24  seven boxes when you spoke with Mr. Carlos?
11:46   25  A    No, I did not describe the documents.

97

| 11:46 | 1 | Q    Did Mr. Carlos ask you any questions about the specific |
| 11:46 | 2 | documents in the six to seven boxes of documents? |
| 11:46 | 3 | A    No, he did not.  They had already been through those |
| 11:46 | 4 | boxes during the raid. |
| 11:47 | 5 | Q    Did you offer to give the boxes to me?  Yes or no? |
| 11:47 | 6 | A    I was not to be in contact with you. |
| 11:47 | 7 | Q    Ms. Regnier, did you offer to give them to me or my |
| 11:47 | 8 | attorney? |
| 11:47 | 9 | A    No. |
| 11:47 | 10 | Q    Did you offer to give the boxes to anyone associated |
| 11:47 | 11 | with the law firm? |
| 11:47 | 12 | A    What law firm? |
| 11:47 | 13 | Q    The Eagan Avenatti firm or any other law firm.  Did you |
| 11:47 | 14 | offer to give the documents to any law firm? |
| 11:47 | 15 | A    No. |
| 11:47 | 16 | Q    Ms. Regnier, you caused boxes of documents to be |
| 11:47 | 17 | destroyed; did you not? |
| 11:47 | 18 | A    I did not cause them to be destroyed. |
| 11:47 | 19 | Q    Well, what happened to them? |
| 11:47 | 20 | A    I don't know.  There may still be some buried in our |
| 11:48 | 21 | garage.  The others were probably shredded when we moved. |
| 11:48 | 22 | Q    Who shredded them? |
| 11:48 | 23 | A    I can't think of the name of the place.  It's a place |
| 11:48 | 24 | near Yorba Linda that took a bunch of old records and |
| 11:48 | 25 | everything out of the garage.  I had people help me because |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:48 | 1 | I couldn't lift anything at the time. |
| 11:48 | 2 | Q    And when was that? |
| 11:48 | 3 | A    That would have been probably a year ago. |
| 11:48 | 4 | Q    And no one from the government ever told you to |
| 11:48 | 5 | preserve them, correct? |
| 11:48 | 6 | A    No. |
| 11:48 | 7 | Q    Meaning I'm correct, that no one from the government |
| 11:48 | 8 | ever told you to preserve them?  Am I correct? |
| 11:48 | 9 | A    Yes, you are correct. |
| 11:48 | 10 | Q    Now, while you worked for me at the firm, you |
| 11:49 | 11 | maintained a file or a box of thank-you cards and |
| 11:49 | 12 | appreciation e-mails and things of that nature from clients; |
| 11:49 | 13 | did you not? |
| 11:49 | 14 | A    I had -- we had boxes on the Stormy Daniels case. |
| 11:49 | 15 | There was a file of others. |
| 11:49 | 16 | Q    When you say there was a file of others, over the |
| 11:49 | 17 | course of the years when we would receive appreciation cards |
| 11:49 | 18 | and thank-you notes, you would maintain that file, correct? |
| 11:49 | 19 | A    Yes. |
| 11:49 | 20 | MR. SAGEL:  Objection.  403, Your Honor. |
| 11:49 | 21 | THE COURT:  Overruled. |
| 11:49 | 22 | BY MR. AVENATTI: |
| 11:49 | 23 | Q    What happened to that file? |
| 11:49 | 24 | A    It went to storage when we moved -- excuse me.  When |
| 11:49 | 25 | the firm moved out of the office, it went to storage with |

| | | |
|---|---|---|
| 11:50 | 1 | the other boxes. |
| 11:50 | 2 | Q    As you sit there today, you don't know which clients |
| 11:50 | 3 | provided communications complimentary of me or the firm |
| 11:50 | 4 | among those documents.  Is that fair to say? |
| 11:50 | 5 | A    That's fair to say, yes. |
| 11:50 | 6 | Q    You don't know if there is anything in there relating |
| 11:50 | 7 | to the clients at issue in this case; do you? |
| 11:50 | 8 | A    No, I do not. |
| 11:51 | 9 | Q    The next contact that you had with the government was |
| 11:51 | 10 | on July 25th, 2019; am I correct? |
| 11:51 | 11 | A    I'm not sure of the date, but I did have further |
| 11:51 | 12 | contact with them. |
| 11:51 | 13 |          MR. AVENATTI:  Your Honor, can I approach? |
| 11:51 | 14 |          MR. SAGEL:  Is the specific date relevant, Your |
| 11:51 | 15 | Honor? |
| 11:51 | 16 |          MR. AVENATTI:  It is. |
| 11:51 | 17 |          THE COURT:  You may. |
| 11:51 | 18 |          (Document handed to the witness) |
| 11:51 | 19 | BY MR. AVENATTI: |
| 11:52 | 20 | Q    Does that refresh your recollection that your next |
| 11:52 | 21 | contact was on July 25th, 2019? |
| 11:52 | 22 | A    Okay, if that's the date it says. |
| 11:52 | 23 | Q    Well, do you have any reason to -- |
| 11:52 | 24 | A    No, I don't have any reason to doubt the date. |
| 11:52 | 25 | Q    Okay.  And at that point Special Agent Carlos and |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:52 | 1 | Special Agent Kim, Assistant U.S. Attorney Sagel, and his |
| 11:52 | 2 | colleague Mr. Andre, contacted you to discuss the law firm |
| 11:52 | 3 | server and how client files are created and maintained on |
| 11:53 | 4 | the server, correct? |
| 11:53 | 5 | A    Yes. |
| 11:53 | 6 | Q    And you spoke with them for about 40 minutes; did you |
| 11:53 | 7 | not? |
| 11:53 | 8 | A    Okay. |
| 11:53 | 9 | Q    And if you look at the top of the third page -- |
| 11:53 | 10 | MR. SAGEL:  Objection, Your Honor.  Improper |
| 11:53 | 11 | refreshing recollection. |
| 11:53 | 12 | MR. AVENATTI:  Let me ask this other question, |
| 11:53 | 13 | Your Honor.  Strike that. |
| 11:53 | 14 | BY MR. AVENATTI: |
| 11:53 | 15 | Q    During that call you specifically told all four of |
| 11:53 | 16 | those gentlemen that the firm used Tabs for client billing |
| 11:53 | 17 | and client accounting; did you not? |
| 11:53 | 18 | A    Yes. |
| 11:54 | 19 | Q    Did any of those four gentlemen ever ask you any |
| 11:54 | 20 | questions about Tabs before the trial or before your |
| 11:54 | 21 | testimony yesterday? |
| 11:54 | 22 | A    I don't understand.  Do you mean during this time or at |
| 11:54 | 23 | any point in time since I talked to them? |
| 11:54 | 24 | Q    Prior to taking the stand yesterday, do you have a |
| 11:54 | 25 | specific recollection of anyone with the government asking |

| 11:54 | 1 | you about Tabs? |
| 11:54 | 2 | A     We discussed it, yes. |
| 11:54 | 3 | Q     When did you generally discuss it? |
| 11:54 | 4 | A     During one of the meetings going over financial |
| 11:54 | 5 | records, I explained that we had a double-entry system into |
| 11:54 | 6 | the two programs for the fees and expenses. |
| 11:55 | 7 | Q     Do you have a recollection that next in October of |
| 11:55 | 8 | 2019, Mr. Sagel and Mr. Carlos called and spoke to you about |
| 11:55 | 9 | scheduling another interview? |
| 11:55 | 10 | A     Yes, they very well could have. |
| 11:55 | 11 | Q     Do you have a recollection that you then sat down for |
| 11:55 | 12 | over eight hours on November 19th, 2019, to be interviewed |
| 11:55 | 13 | by the government? |
| 11:55 | 14 | A     I know I did sit down.  I'm not sure of the date, but, |
| 11:56 | 15 | yes. |
| 11:56 | 16 | Q     By the way, a question I didn't ask, and I apologize. |
| 11:56 | 17 | After that initial discussion where you talked about |
| 11:56 | 18 | the six to seven boxes of documents, did that topic ever |
| 11:56 | 19 | come up again in any of your conversations with the |
| 11:56 | 20 | government? |
| 11:56 | 21 | A     I do not believe so, no. |
| 11:56 | 22 | Q     So you don't have a recollection of them ever asking |
| 11:56 | 23 | any questions about that after that date; am I right? |
| 11:56 | 24 | A     Correct. |
| 11:56 | 25 | Q     And during that interview on November 19th, 2019, you |

| | | |
|---|---|---|
| 11:56 | 1 | were informed that it was important that you told the agents |
| 11:56 | 2 | the truth, correct? |
| 11:56 | 3 | A     I'm sure I was, yes. |
| 11:56 | 4 | Q     You told them at that time that you had been taking |
| 11:57 | 5 | Xanax three times daily over the past few months; is that |
| 11:57 | 6 | right? |
| 11:57 | 7 | A     Correct. |
| 11:57 | 8 | Q     And you told them that you had set up Mr. Johnson's |
| 11:57 | 9 | living and care situation with Mr. Richard Beada; am I |
| 11:57 | 10 | right? |
| 11:57 | 11 | A     I don't believe that's quite what I said. |
| 11:57 | 12 | MR. AVENATTI:  Your Honor, may I approach? |
| 11:57 | 13 | THE COURT:  You may. |
| 11:57 | 14 | (Document handed to the witness) |
| 11:57 | 15 | BY MR. AVENATTI: |
| 11:58 | 16 | Q     Directing your attention to paragraph four, |
| 11:58 | 17 | Ms. Regnier, isn't it true that on November 19th, |
| 11:58 | 18 | 2019 -- |
| 11:58 | 19 | THE COURT:  Sir, you have offered it to her to |
| 11:58 | 20 | refresh her recollection; have you not? |
| 11:58 | 21 | BY MR. AVENATTI: |
| 11:58 | 22 | Q     Ms. Regnier, please take a moment and read paragraph |
| 11:58 | 23 | four to yourself.  Then I'm going to ask you a couple of |
| 11:58 | 24 | questions. |
| 11:58 | 25 | A     (Witness complies.)  Okay.  I have read it. |

| 11:58 | 1 | Q    Isn't it true that on November 19th, 2019, you told |
| 11:58 | 2 | Mr. Sagel, Agent Carlos, and Agent Roberson that you |
| 11:58 | 3 | had helped set up Mr. Johnson's living and care situation |
| 11:58 | 4 | with Richard Beada, Mr. Johnson's criminal defense |
| 11:58 | 5 | attorney? |
| 11:58 | 6 | A    I probably stated I helped set up the transfer from the |
| 11:59 | 7 | jail facility to the living facility with Mr. Beada. |
| 11:59 | 8 | Q    Do you dispute that you told them that you actually |
| 11:59 | 9 | helped set up Mr. Johnson's living and care situation with |
| 11:59 | 10 | Richard Beada? |
| 11:59 | 11 | MR. SAGEL:  Asked and answered, Your Honor. |
| 11:59 | 12 | THE COURT:  Overruled. |
| 11:59 | 13 | THE WITNESS:  Richard Beada was involved.  You |
| 11:59 | 14 | were involved.  I was involved.  We were all involved |
| 11:59 | 15 | getting this set up for Mr. Johnson. |
| 11:59 | 16 | THE COURT:  Please listen to the question. |
| 11:59 | 17 | BY MR. AVENATTI: |
| 11:59 | 18 | Q    Ms. Regnier, isn't it true that you told Mr. Sagel |
| 11:59 | 19 | Mr. Carlos, and Mr. Roberson on November 19th, 2019, |
| 11:59 | 20 | that you helped set up Mr. Johnson's living and care |
| 11:59 | 21 | situation with Richard Beada, Mr. Johnson's criminal defense |
| 11:59 | 22 | attorney? |
| 11:59 | 23 | A    I did help set up some of the care and living situation |
| 11:59 | 24 | with Richard Beada. |
| 12:00 | 25 | Q    Isn't it true that's what you told them on |

| 12:00 | 1 | November 19th, 2019? |
|---|---|---|

12:00   1    November 19th, 2019?

12:00   2    A    Yes.

12:00   3         THE COURT:  I think we are going to take the lunch

12:00   4    break here.  Ladies and gentlemen, we will be in recess

12:00   5    until 1:30.  Please remember the admonition not to discuss

12:00   6    the case with anyone and not to form any opinions on the

12:00   7    issues in the case until it is submitted to you.  And please

12:00   8    do not do any research.

12:00   9         So we will see you at 1:30.

12:00  10         (Jury not present)

12:01  11         THE COURT:  Anything for the record before we

12:01  12    adjourn?

12:01  13         MR. AVENATTI:  Your Honor, I do want to have a

12:01  14    discussion if possible or raise the issue relating to her

12:01  15    being a defendant in the two civil cases.  But I'm happy to

12:01  16    do that when we come back.

12:01  17         THE COURT:  Sir, make a written submission.  She's

12:01  18    going to be here for a while.  I believe that the fact that

12:01  19    she's been accused of certain things in the civil suits

12:01  20    doesn't shed any light on whether the crimes were or were

12:01  21    not committed and therefore are not relevant.

12:01  22         MR. AVENATTI:  I understand that, Your Honor.

12:01  23    I'll make a written submission.  Among other things, it goes

12:01  24    to bias, but I will be happy to file something with the

12:01  25    Court.

```
12:01    1              THE COURT:  Very good.  We will be in
12:01    2    recess.
12:01    3                   (Recess taken at 12:01 p.m.)
12:01    4                        *     *     *
12:01    5
12:01    6
12:01    7
12:01    8
12:01    9
12:01   10
12:01   11
12:01   12
12:01   13
12:01   14
12:01   15
12:01   16
12:01   17
12:01   18
12:01   19
12:01   20
12:01   21
12:01   22
12:01   23
12:01   24
12:01   25
```

```
12:01   1
12:01   2
12:01   3
12:01   4
12:01   5                        CERTIFICATE
12:01   6
12:01   7        I hereby certify that pursuant to Section 753,
12:01   8   Title 28, United States Code, the foregoing is a true and
12:01   9   correct transcript of the stenographically reported
12:01  10   proceedings held in the above-entitled matter and that the
12:01  11   transcript page format is in conformance with the
12:01  12   regulations of the Judicial Conference of the United States.
12:01  13
12:01  14   Date:  July 29, 2021
12:01  15
12:01  16
12:01  17                        /s/   Sharon A. Seffens  7/29/21
12:01  18                        _____
                                 SHARON A. SEFFENS, U.S. COURT REPORTER
       19
       20
       21
       22
       23
       24
       25
```

**MR. AVENATTI: [68]** 4/9 4/24 5/1 7/24 8/7
8/12 8/13 8/20 9/1 9/10 9/14 9/21 10/13 10/20
11/8 13/4 15/22 16/2 17/12 17/21 21/12 22/21
26/2 28/12 30/19 32/22 32/25 33/5 33/10
33/23 34/3 35/1 35/21 39/25 41/24 44/17 47/4
47/23 53/10 54/25 60/9 65/19 66/18 67/3
68/24 70/20 71/2 73/7 73/9 84/17 84/19 84/24
85/7 85/19 86/15 89/15 89/17 89/25 90/17
91/15 95/1 95/3 99/13 99/16 100/12 102/12
104/13 104/22
**MR. SAGEL: [55]** 4/5 9/23 10/6 10/9 10/19
11/4 11/17 12/3 13/2 13/8 17/15 17/24 19/17
22/16 25/25 28/10 30/16 32/20 33/3 33/12
33/25 35/19 39/23 41/21 42/3 44/15 47/21
52/4 53/8 60/7 60/12 60/16 60/19 61/5 65/17
68/22 73/5 74/12 79/9 79/20 80/9 80/15 81/19
82/7 82/12 85/15 86/5 87/4 89/9 90/13 90/25
98/20 99/14 100/10 103/11
**MR. WYMAN: [1]** 9/17
**THE CLERK: [5]** 4/3 11/2 11/23 12/1 33/14
**THE COURT: [95]** 4/8 4/13 4/25 5/11 8/2
8/10 8/14 8/17 8/21 9/4 9/11 9/15 9/18 9/22
10/1 10/8 10/11 10/15 10/22 11/7 11/11 12/4
13/5 15/23 16/4 17/14 17/23 18/1 21/24 22/24
26/4 28/14 30/21 32/24 33/8 33/21 34/1 34/4
35/3 35/22 40/1 42/2 42/5 44/18 47/6 47/25
53/11 55/2 60/10 60/14 60/17 60/20 61/4
65/21 66/19 67/4 68/25 70/22 71/4 73/6 73/10
74/13 79/10 79/21 80/10 80/16 81/20 82/8
82/13 84/18 84/22 85/8 85/17 86/6 86/16 87/7
89/12 89/16 89/23 90/4 90/15 90/20 91/2
91/17 95/2 98/21 99/17 102/13 102/19 103/12
103/16 104/3 104/11 104/17 105/1
**THE WITNESS: [15]** 11/25 12/3 16/5 21/15
35/4 47/7 55/3 66/20 67/5 71/5 81/21 82/9
86/7 91/3 103/13

**$**

**$1.6 [1]** 88/23
**$1.6 million [1]** 88/23
**$10 [3]** 30/7 30/8 58/7
**$10 million [3]** 30/7 30/8 58/7
**$10,000 [1]** 45/14
**$146,288 [3]** 57/12 58/3 58/10
**$147,972 [1]** 37/2 38/6 46/12
**$171,000 [1]** 43/25
**$185,000 [2]** 74/22 74/23
**$2,787,650.87 [1]** 31/15
**$2,828,423.30 [1]** 43/8
**$2.8 [2]** 43/14 43/21
**$2.8 million [1]** 43/21
**$23 [1]** 59/13
**$27,414,668.32 [2]** 24/13 25/3
**$3 [5]** 39/14 41/17 42/20 42/24 45/18
**$3 million [5]** 39/14 41/17 42/20 42/24 45/18
**$4 [18]** 57/12 58/10 58/21 58/24 59/14 62/5
62/11 64/9 64/17 64/21 64/24 66/24 67/5
67/22 70/9 70/12 70/18 70/25
**$4 million [15]** 57/12 58/10 58/21 58/24 59/14
62/5 62/11 64/24 66/24 67/5 67/22 70/9 70/12
70/18 70/25
**$4,100,000 [1]** 59/7
**$4,146,288 [2]** 57/23 57/25
**$4,152,004 [1]** 52/15
**$4,299,988 [1]** 45/11
**$4,747,466.50 [1]** 30/11
**$439,375 [2]** 26/16 29/22
**$475,000 [1]** 24/5
**$8 [3]** 50/23 51/17 59/8
**$8 million [2]** 51/17 59/8
**$8,146,000 [1]** 58/19
**$8,146,288 [4]** 36/25 38/4 57/20 66/23
**$800,000 [1]** 47/3
**$899,795.85 [2]** 26/16 29/18
**$90,000 [5]** 74/21 75/11 75/14 75/15 75/16
**$984,750 [1]** 24/11

**/**

**/s [1]** 106/16

**0**

**0870 [1]** 1/21

**1**

**1-1053 [1]** 1/20
**1.15 [3]** 6/18 8/1 8/9
**10 [8]** 1/12 22/23 30/20 61/14 87/23 87/23
**100 [8]** 6/21 6/22 7/5 8/6 32/19 33/14 33/16
33/19
**1053 [1]** 1/20
**107 [1]** 2/16
**10:27 [1]** 61/1
**10:46 [1]** 61/2
**10th [6]** 61/17 61/18 62/14 63/4 64/20 88/9
**11 [5]** 41/25 77/9 80/13 81/4 82/25
**11 agents [1]** 80/6
**1100 [1]** 2/7
**11th [3]** 64/4 64/12 64/20
**12 [10]** 3/6 22/23 30/20 34/24 42/1 52/2 52/6
75/25 87/9 94/20
**12:01 [1]** 105/3
**12th [4]** 34/7 35/7 69/6 69/7
**13 [2]** 3/8 42/15
**14 [1]** 59/2
**14th [10]** 15/11 15/19 36/1 37/23 38/12 38/18
38/21 57/19 94/22 95/8
**15 [3]** 43/2 43/3 60/20
**15th [7]** 23/22 39/9 40/6 41/16 42/16 43/4
45/19
**17th [3]** 45/19 47/3 52/11
**18 [3]** 24/12 64/6 82/17
**18009037 [1]** 69/10
**18th [6]** 24/4 24/24 25/7 26/9 29/13 31/19
**19th [6]** 101/12 101/25 102/17 103/1 103/19
104/1
**1:30 [2]** 104/5 104/9
**1st [2]** 56/20 59/6

**2**

**2007 [4]** 74/7 74/16 74/20 75/6
**2013 [1]** 75/18
**2014 [1]** 76/5
**2015 [1]** 75/2
**2016 [1]** 75/2
**2017 [9]** 23/22 24/4 24/24 26/9 28/19 29/13
31/19 32/9 58/6
**2018 [37]** 8/13 12/18 13/12 15/11 15/19 20/14
34/7 34/24 35/7 36/1 37/23 39/9 40/6 44/22
45/10 48/12 52/9 53/24 57/8 57/22 59/6 59/11
61/14 61/17 62/2 63/4 64/4 64/9 64/10 66/2
68/6 69/6 70/7 70/17 87/14 87/23 88/24
**2019 [28]** 19/16 19/20 70/11 70/13 71/1 74/20
75/6 76/6 77/3 77/6 82/17 82/18 83/12 87/13
87/23 91/8 94/17 94/22 95/8 99/10 99/21
101/8 101/12 101/25 102/18 103/1 103/19
104/1
**2020 [1]** 87/23
**2021 [4]** 1/17 4/1 87/24 106/14
**20th [3]** 13/12 45/19 47/2
**21 [1]** 106/16
**213 [1]** 2/8
**21st [1]** 28/19
**22 [2]** 3/8 42/12
**224 [2]** 12/9 12/10
**225 [4]** 12/19 12/21 13/3 13/7
**22nd [2]** 70/11 70/13
**23 [1]** 3/9
**23rd [9]** 38/23 44/22 45/10 46/7 46/11 46/20
46/23 51/24 52/14
**25 [1]** 83/12
**25th [11]** 48/12 48/17 49/22 77/3 77/6 84/10
91/8 92/13 94/1 99/10 99/21
**26 [1]** 3/9
**269 [8]** 3/9 25/11 25/13 25/15 26/1 26/4 26/5
29/24

**26th [3]** 50/19 94/3 94/5
**270 [6]** 3/10 27/25 28/2 28/11 28/14 28/15
**275 [8]** 3/11 35/11 35/13 35/20 35/22 35/23
46/14 57/15
**276 [6]** 3/11 39/16 39/18 39/24 40/1 40/2
**279 [6]** 3/12 44/8 44/10 44/16 44/18 44/19
**28 [4]** 1/17 3/10 4/1 106/8
**280 [5]** 3/13 47/9 47/11 47/22 48/3
**281 [5]** 3/13 52/19 53/9 53/11 53/14
**282 [7]** 3/14 59/19 60/8 60/10 60/13 61/15
63/2
**283 [7]** 3/14 59/19 60/8 60/10 60/13 61/8
61/16
**286 [6]** 3/14 59/19 60/8 60/10 60/13 63/24
**288 [5]** 3/14 65/9 65/11 65/18 65/23
**29 [4]** 9/12 9/12 12/18 106/14
**290 [6]** 3/15 68/15 68/17 68/23 68/25 69/2
**29th [1]** 87/14

**3**

**30 [1]** 3/10
**30th [4]** 52/9 52/11 53/24 54/17 55/8
**312 [1]** 2/7
**338-3598 [1]** 2/12
**35 [1]** 3/11
**3598 [1]** 2/12
**367 [6]** 3/10 30/15 30/17 30/21 30/22 31/18
**368 [9]** 3/9 22/17 22/19 23/2 23/4 31/16 52/2
52/6 59/2
**369 [12]** 3/9 22/17 22/20 23/2 24/14 29/4 29/4
32/5 37/17 38/17 45/16 57/6
**384 [1]** 42/2
**387 [5]** 3/12 41/22 42/3 42/5 42/7
**394 [3]** 41/23 42/3 42/6
**397 [2]** 22/19 30/17
**3:18 [1]** 61/18
**3:18 p.m [1]** 61/17
**3rd [2]** 29/13 32/5

**4**

**4 million [1]** 58/2
**4-100 [4]** 6/21 6/22 7/5 8/6
**40 [2]** 3/11 100/6
**403 [7]** 79/9 79/20 82/7 82/12 86/5 90/13
98/20
**408 [1]** 65/20
**411 [2]** 1/20 2/11
**42 [1]** 3/12
**420 [2]** 71/23 72/6
**44 [1]** 3/12
**45 [1]** 49/21
**4705 [4]** 23/15 24/16 29/7 62/7
**48 [1]** 3/13
**481-4900 [1]** 2/17
**4900 [1]** 2/17
**4th [11]** 1/20 32/5 32/6 32/7 57/8 57/22 59/11
62/2 62/12 64/9 64/10

**5**

**5/4/18 [1]** 64/6
**53 [1]** 3/13
**543-0870 [1]** 1/21
**55 [1]** 87/9
**59086966 [1]** 6/7
**596 [3]** 22/23 30/20 41/25
**5:00 and [1]** 41/5
**5:15 p.m [1]** 56/9
**5th [1]** 88/24

**6**

**60 [1]** 3/14
**601 [1]** 6/8
**65 [1]** 3/14
**6683 [1]** 2/8
**69 [1]** 3/15

**7**

**7/29/21 [1]** 106/16

**7**
**714** [2]  1/21 2/12
**73** [1]  3/6
**753** [1]  106/7
**7:35 p.m** [1]  64/4
**7th** [2]  66/2 68/6

**8**
**8 million** [1]  52/12
**8000** [1]  2/11
**894-6683** [1]  2/8
**8:10 a.m** [1]  95/7
**8:20** [1]  95/7
**8:32** [1]  4/1
**8:43** [1]  10/24

**9**
**9/18** [1]  24/12
**90012** [1]  2/8
**902** [1]  22/25
**92** [1]  89/7
**92672** [1]  2/16
**92701** [2]  1/20 2/11
**949** [1]  2/17
**9:04** [1]  10/25
**9:38 p.m** [2]  61/14 63/4
**9th** [1]  94/17

**A**
**a.m** [7]  4/1 10/24 10/25 61/1 61/2 95/7 95/7
**ability** [4]  4/20 4/22 5/6 5/19
**able** [4]  33/1 50/21 58/6 86/12
**about** [41]  9/2 15/20 17/2 17/18 18/7 18/19 19/24 20/20 24/17 29/10 32/14 32/15 42/25 44/25 45/7 49/21 50/6 62/11 67/24 69/23 69/24 80/2 81/1 84/20 85/12 86/3 86/10 90/18 91/24 93/5 93/8 95/7 95/14 97/1 100/6 100/20 101/1 101/8 101/17 101/23
**above** [1]  106/10
**above-entitled** [1]  106/10
**absolutely** [1]  16/15
**acceptable** [1]  5/23
**account** [67]  6/6 6/16 22/3 22/8 22/13 22/14 23/5 23/8 23/9 23/14 23/16 24/15 24/21 24/16 24/16 27/4 27/23 29/2 29/6 29/7 29/9 29/17 31/8 31/12 31/21 32/6 37/3 37/21 37/24 38/15 39/1 40/20 41/1 41/2 41/7 41/10 41/11 41/17 42/10 42/10 42/12 42/19 42/25 43/4 43/12 44/3 44/4 44/7 45/4 45/7 45/9 46/5 52/7 52/12 52/14 52/16 57/14 57/15 59/6 59/8 59/12 59/15 62/6 62/6 62/9 62/12 67/12 88/24
**accounting** [4]  18/19 18/20 74/4 100/17
**accounts** [8]  6/21 27/13 27/22 45/3 45/12 45/14 46/7 47/2
**accurate** [12]  12/24 25/22 28/7 35/16 39/20 44/12 47/17 53/4 60/4 65/14 68/19 92/8
**accusation** [5]  15/25 88/3 88/10 88/12 88/18
**accusations** [2]  87/13 87/24
**accused** [5]  70/12 70/17 70/25 90/7 104/19
**accuses** [1]  87/1
**accusing** [2]  70/8 89/19
**actions** [3]  17/24 18/2 82/3
**acts** [1]  89/22
**actually** [8]  14/10 21/4 21/23 33/25 34/14 62/24 85/15 103/8
**addition** [1]  67/12 74/14 73/2
**additional** [8]  6/6 6/8 6/11 14/22 22/15 45/20 90/13 94/6
**address** [3]  23/10 23/10 42/13
**addressing** [1]  6/9
**adjourn** [1]  104/12
**admit** [13]  13/3 26/1 28/11 33/15 35/19 39/24 41/22 44/16 47/22 53/8 60/8 65/18 68/23
**admitted** [1]  33/8
**admonition** [2]  60/21 104/5
**advise** [2]  51/1 96/21
**advised** [1]  94/9
**advisory** [2]  17/5 4/10
**affidavit** [1]  81/24

**after** [39]  7/1 12/14 13/22 16/7 16/7 17/6 17/9 38/21 38/25 39/9 41/16 43/9 43/9 46/6 48/13 49/21 50/3 50/5 54/10 54/12 59/11 65/5 65/5 66/12 66/15 66/20 68/6 69/25 70/14 82/25 94/1 101/17 101/23
**afternoon** [1]  40/16
**again** [8]  10/2 10/15 12/2 31/16 56/7 56/21 70/4 101/19
**against** [13]  19/21 20/2 87/12 87/13 87/18 87/24 88/4 88/10 88/16 88/22 89/2 89/4 90/19
**agent** [14]  4/7 11/6 78/23 78/24 79/4 81/5 81/24 82/16 91/11 95/20 99/25 100/1 103/2 103/2
**agents** [13]  77/7 77/8 79/12 80/6 80/13 80/19 82/25 83/13 91/22 92/5 92/12 92/17 102/1
**ago** [2]  96/14 98/3
**agree** [1]  10/13
**agreement** [16]  12/12 12/15 13/20 14/4 14/6 14/11 32/11 34/22 37/11 37/15 87/16 87/22 88/2 88/7 88/8 90/2
**agreements** [3]  18/15 18/16 82/4
**Ahmed** [3]  15/4 15/6 16/15
**ALEXANDER** [3]  2/5 4/6 11/5
**Alexis** [1]  72/19
**all** [19]  4/14 16/20 18/20 19/8 20/11 44/24 46/3 50/21 51/3 59/21 59/23 60/1 67/13 76/10 88/21 92/4 93/20 100/15 103/14
**allegation** [5]  88/18 88/19 88/21 89/1 89/4
**allegations** [6]  85/25 86/9 87/18 88/14 88/16 90/18
**alleged** [1]  81/18
**allow** [1]  78/15
**allowed** [1]  77/20
**along** [3]  35/13 35/17 53/19
**already** [5]  7/16 50/2 52/4 70/17 97/3
**also** [11]  11/15 66/5 87/20 88/6 89/20 89/25 90/7 90/9 92/24 96/4 96/5
**alternate** [1]  7/5
**alternative** [2]  6/2 7/11
**always** [4]  14/22 20/7 92/8 92/10
**am** [8]  74/7 75/4 82/22 95/4 98/8 99/11 101/23 102/9
**AMERICA** [3]  1/9 4/4 11/3
**ammunition** [2]  79/17 79/17
**among** [3]  33/6 99/4 104/23
**amongst** [1]  86/25 90/12
**amount** [12]  24/8 24/10 24/11 25/2 30/14 31/25 36/21 41/13 46/13 57/19 58/1 62/3
**amounts** [5]  26/15 27/2 37/10 38/8 57/11
**Ana** [1]  1/16 1/20 2/11 4/1
**Andre** [1]  100/2
**Angeles** [1]  2/8
**annually** [2]  74/21 74/22
**another** [11]  15/7 59/14 64/1 88/21 89/1 89/4 89/23 90/4 93/10 96/19 101/9
**answer** [2]  9/24 20/7
**answered** [2]  91/1 103/11
**any** [52]  5/21 5/22 6/3 7/23 8/17 14/14 17/17 34/24 35/7 38/20 39/2 45/22 45/25 46/17 49/24 51/6 54/18 56/4 58/9 58/17 60/22 60/24 67/24 72/11 72/12 73/17 74/4 74/6 78/6 79/7 79/12 79/19 80/2 82/11 82/23 84/22 86/7 90/13 90/18 92/5 97/1 97/13 97/14 99/23 99/24 100/19 100/19 100/23 101/19 101/23 104/6 104/8 104/20
**anybody** [6]  5/22 32/12 58/21 64/20 64/23 72/1
**anymore** [2]  89/10 96/11
**anyone** [12]  9/15 14/20 60/22 76/1 76/5 78/20 80/1 82/20 82/24 97/10 100/25 101/9
**anything** [26]  9/15 10/18 15/20 16/20 17/2 20/8 20/24 22/7 26/17 32/15 32/16 32/17 41/18 50/13 50/14 65/6 68/7 68/9 68/10 78/20 78/21 79/12 79/19 98/1 99/6 104/11
**Anytime** [1]  14/20
**anyway** [1]  83/22
**apologize** [2]  4/11 101/16
**appear** [1]  6/18

**APPEARANCES** [1]  2/1
**appeared** [1]  83/16
**appears** [3]  6/19 8/5 67/22
**appreciation** [2]  76/8 76/13 98/12 98/17
**approach** [5]  84/17 86/15 95/1 99/13 102/12
**appropriate** [1]  5/13
**approval** [2]  27/13 27/14
**approvals** [1]  27/23
**approve** [2]  27/19 55/4
**approved** [2]  37/6 37/7
**approximately** [4]  43/13 63/8 80/5 94/20
**April** [22]  38/23 44/22 45/10 45/19 46/7 46/11 46/20 46/23 47/3 48/12 48/17 49/22 50/19 51/24 52/9 52/11 52/11 52/14 53/24 54/17 55/8 94/17
**April 17th** [3]  45/19 47/3 52/11
**April 2018** [1]  52/9
**April 23rd** [9]  38/23 44/22 45/10 46/7 46/11 46/20 46/23 51/24 52/14
**April 25th** [3]  48/12 48/17 49/22
**April 26th** [1]  50/19
**April 30th** [4]  52/11 53/24 54/17 55/8
**April 9th** [1]  94/17
**are** [66]  5/13 9/4 9/24 11/13 11/23 22/18 24/17 25/8 25/8 26/15 26/16 26/19 26/20 29/23 30/4 34/14 37/23 37/25 38/1 38/8 38/16 40/25 43/5 45/1 45/3 45/13 45/15 45/22 45/24 45/25 46/2 46/3 46/5 46/17 47/1 47/11 53/22 53/25 57/9 57/10 57/11 59/23 59/25 60/1 60/3 60/4 64/11 64/17 66/25 67/11 73/21 76/22 82/6 86/10 89/7 89/19 91/23 98/9 100/3 104/3 104/21
**area** [1]  87/5
**argument** [1]  9/5 9/11
**Argumentative** [2]  80/15
**armed** [1]  78/2
**around** [4]  18/12 35/6 35/7 75/18
**arrived** [1]  83/13
**as** [56]  4/11 4/11 5/19 7/11 7/12 7/19 7/22 9/2 9/6 14/3 14/23 22/21 22/22 25/20 26/15 29/23 31/11 33/20 34/14 40/17 40/22 41/24 41/24 42/13 43/7 45/4 50/9 52/14 54/16 54/17 55/22 55/22 56/13 56/19 59/6 65/2 65/19 65/20 67/12 74/6 77/19 78/7 79/2 80/13 80/19 82/23 84/19 86/22 86/23 89/21 90/13 92/10 94/18 95/17 99/2
**ASAP** [3]  51/1 55/12 55/23
**ask** [20]  20/23 31/17 32/10 39/1 41/17 41/20 44/2 58/17 67/21 68/10 73/16 80/2 84/24 87/5 96/19 97/1 100/12 100/19 101/16 102/23
**asked** [29]  12/11 22/7 38/13 39/4 39/6 39/8 43/13 46/13 55/21 55/24 77/19 78/7 78/8 78/10 78/19 82/20 82/22 82/24 83/6 83/8 83/19 84/23 87/15 87/19 91/3 93/5 93/8 93/9 103/11
**asking** [8]  37/9 51/9 51/10 87/6 88/3 90/18 100/25 101/22
**asks** [1]  57/19
**assess** [2]  4/22 5/19
**Assistant** [5]  2/4 2/6 2/10 79/23 100/1
**assisting** [1]  11/10
**associate** [1]  36/5
**Associate's** [1]  73/20
**associated** [2]  82/3 97/10
**Associates** [1]  71/15
**assume** [1]  69/12
**assumed** [1]  68/14
**assuming** [2]  70/15 70/19
**ATM** [1]  41/5
**attach** [1]  63/10
**attached** [2]  26/20 63/15
**attachment** [8]  25/15 25/18 25/23 61/19 64/14 65/12 65/15 66/8
**attachments** [4]  59/23 60/1 60/5 64/16
**attention** [11]  6/12 7/8 7/21 8/1 8/22 8/24 9/16 24/14 89/7 91/20 102/16
**attorney** [25]  2/3 2/4 2/6 2/10 14/20 14/24 15/3 15/7 23/9 42/12 42/19 67/12 79/24 83/1 83/22 84/3 84/5 84/14 84/21 85/4 85/13 97/8

## A

attorney... [3] 100/1 103/5 103/22
attorney/client [11] 23/9 42/12 42/19 67/12 83/22 84/3 84/5 84/14 84/21 85/4 85/13
attorneys [4] 17/7 17/9 75/4 84/7
attributed [1] 8/3
August [6] 66/2 68/6 70/7 74/7 74/20 75/6
August 2007 [1] 74/20
August 7th [2] 66/2 68/6
availability [1] 6/2
available [6] 11/17 11/17 56/14 56/16 56/18 62/25
AVENATTI [65] 1/11 2/14 4/4 4/10 6/3 6/7 6/11 7/4 7/7 7/11 7/21 9/18 10/12 11/3 11/9 13/24 14/2 15/3 15/7 18/4 18/15 19/17 20/2 20/17 20/20 21/24 23/5 23/11 27/19 31/2 33/17 36/10 39/15 41/17 42/11 42/18 42/23 44/3 46/4 46/5 46/7 47/1 47/2 47/25 53/12 53/17 64/6 65/2 65/22 67/11 69/1 71/7 71/11 71/12 71/14 72/10 72/15 73/6 73/12 74/7 74/24 75/10 82/3 87/7 97/13
Avenatti's [1] 50/16
Avenida [1] 2/16
aware [6] 11/13 19/20 33/24 81/15 82/6 88/22
away [1] 83/17

## B

back [15] 8/7 13/19 18/13 20/14 29/4 37/17 38/25 45/16 54/16 57/6 58/5 83/18 87/12 91/8 104/16
background [1] 73/19
backwards [2] 49/13 49/14
bad [1] 69/14
balance [2] 23/20 45/4
balances [2] 52/7 59/4
Ball [1] 91/13
banging [1] 77/16
bank [19] 21/7 22/3 22/9 22/18 25/4 25/9 27/4 27/9 31/6 31/9 31/13 40/18 41/4 41/23 45/3 47/2 50/21 55/21 55/24
bankruptcy [9] 20/17 20/19 20/21 20/25 34/21 43/17 43/18 43/19 43/22
banks [1] 40/21
Bar [1] 42/11
Barela [39] 12/11 12/15 13/14 13/17 13/20 13/23 14/4 14/6 14/11 14/15 14/18 15/9 15/12 15/20 16/1 17/7 17/11 18/12 18/21 18/23 19/20 20/1 20/8 20/10 20/12 22/2 85/23 86/24 87/2 87/10 87/12 87/20 88/21 89/1 89/1 89/4 89/5 90/2 92/14
Barela's [5] 17/18 18/5 19/8 19/11 88/16
barge [1] 81/4
Baristas [2] 71/18 71/20
based [4] 63/20 70/5 82/15 84/23
basically [3] 9/11 21/1 50/11
bathroom [1] 4/12
be [85] 4/18 4/24 7/1 10/6 10/22 11/13 11/16 13/5 16/20 16/21 18/1 18/22 21/16 22/2 22/12 22/12 22/17 23/1 23/19 25/6 26/24 26/24 27/10 27/19 28/14 30/21 30/21 31/12 32/3 32/24 33/1 33/11 33/19 33/24 34/8 34/6 36/15 36/23 37/1 37/10 38/13 40/1 42/5 44/4 44/18 45/7 46/13 47/25 48/1 50/1 51/3 51/12 54/2 57/5 57/19 59/18 60/10 60/20 65/21 66/22 66/25 67/5 68/25 71/1 76/1 76/6 82/20 82/25 83/23 86/12 88/9 93/7 93/11 93/24 94/7 96/17 97/6 97/16 97/18 97/20 101/12 104/4 104/18 104/24 105/1
Beach [4] 69/15 69/19 69/22 70/6
Beada [7] 102/9 103/4 103/7 103/10 103/13 103/21 103/24
Beauty [3] 24/22 25/1 38/1
became [1] 74/15
because [20] 5/5 16/16 19/7 20/3 20/4 20/11 26/24 40/18 46/24 50/15 51/14 56/1 63/9 64/13 67/22 78/20 85/11 92/24 94/12 97/25
become [3] 19/20 81/15 82/6
becomes [1] 7/2
becoming [2] 50/23 50/25

## C

CA [4] 1/20 2/8 2/11 2/16
calculation [1] 93/24
CALIFORNIA [5] 1/5 1/16 4/1 41/23 42/11
call [15] 15/11 15/14 15/16 15/17 15/18 15/19 16/7 17/6 26/15 94/22 95/6 95/9 100/15
called [9] 15/13 15/15 16/17 23/8 50/2 50/2 66/9 88/8 101/8
Calling [1] 4/3
calls [3] 16/20 21/12 86/5
came [7] 38/25 39/9 74/15 78/13 78/14 78/16 83/11
cameras [1] 78/13
can [25] 12/10 13/8 26/13 33/3 34/17 40/13 48/18 48/24 55/11 55/12 56/12 61/15 66/17 73/18 74/11 75/1 76/15 83/2 83/10 84/1 84/24 86/13 91/15 94/25 99/13
can't [3] 95/9 96/21 97/23
card [3] 76/20 76/20 76/25
cards [2] 76/12 76/12 98/1 98/17
care [7] 50/15 57/14 102/9 103/3 103/9 103/20 103/23

been [26] 8/8 19/8 21/4 45/7 50/20 50/21 50/24 51/7 57/10 57/21 57/22 58/12 58/14 67/10 67/23 69/19 76/22 82/16 82/22 84/13 84/22 95/11 97/3 98/3 102/4 104/19
before [14] 13/18 16/18 20/19 32/23 50/5 54/12 61/7 67/16 79/24 84/2 86/19 100/20 100/20 104/11
began [1] 74/11
beginning [2] 23/20 74/9
behalf [3] 4/6 11/5 82/5
behind [1] 9/25 45/1 94/14
being [1] 4/11 9/25 23/16 29/21 39/14 53/1 67/25 70/6 81/1 85/22 104/15
believe [35] 4/11 5/18 5/24 14/12 16/12 19/4 19/7 20/18 21/23 21/24 22/1 22/9 27/6 30/7 32/20 35/4 38/15 43/11 44/5 49/6 49/17 51/5 51/16 51/23 58/16 64/24 68/12 68/13 74/21 77/9 86/11 92/20 101/21 102/11 104/18
believed [1] 49/1
belonging [2] 6/23 6/25
below [8] 23/21 28/22 30/4 36/17 36/21 41/13 44/25 69/14
benefit [6] 72/12 72/15 72/18 72/21 73/2 82/23
Best [1] 51/1
between [8] 5/17 29/13 32/11 45/19 47/2 76/5 92/2 84/6
bias [1] 104/24
big [1] 80/8
billing [2] 93/2 100/16
body [2] 4/21 26/12
bolded [1] 67/2
bonus [5] 75/9 75/11 75/12 75/13 75/16
bonuses [3] 75/19 75/21 75/22
both [7] 15/10 22/19 36/17 38/1 93/18 93/19 93/22
bottom [3] 13/8 31/24 49/15
box [5] 10/4 94/6 94/10 94/14 98/11
boxes [15] 94/12 95/14 96/6 96/7 96/9 96/22 96/24 97/2 97/4 97/5 97/10 97/16 98/14 99/1 101/18
branch [2] 54/3 54/22
BRANDON [1] 2/4
break [4] 60/15 60/18 73/16 104/4
BRETT [2] 2/9 4/5 11/4 79/24
briefly [2] 4/24 42/9
bring [1] 9/16
bringing [2] 6/12 14/14
brings [2] 7/8 7/21
Brock [2] 13/19 15/9
brought [5] 8/21 8/24 14/17 83/18 86/23
Building [1] 2/10
bunch [1] 97/24
buried [1] 97/20
burned [1] 96/2
business [4] 22/22 23/1 26/18 92/13

caring [1] 76/22
Carlos [4] 4/7 11/3 67/23 94/24 Carlos [1] 1/17 71/5 27/23 94/11 82/16 91/10 94/9 94/23 95/7 95/11 95/14 95/20 96/13 96/24 97/1 99/25 101/8 103/2 103/19
case [22] 6/14 6/23 8/5 8/19 35/9 60/22 60/23 68/8 72/16 72/19 72/22 72/24 74/17 86/23 89/14 92/14 93/16 95/19 98/14 99/7 104/6 104/7
cases [1] 104/15
cause [1] 97/18
caused [1] 97/16
CDC's [1] 4/15
Cefali [2] 4/11 11/9
cell [1] 82/17
CENTRAL [1] 1/5
certain [1] 104/19
CERTIFICATE [1] 106/5
CERTIFIED [1] 1/9
certify [1] 106/7
chain [6] 47/11 47/14 47/17 52/23 53/4 53/16
change [1] 78/20
changed [1] 11/13
charge [2] 80/21 83/7
charged [3] 81/1 82/21 82/25
charges [1] 43/2
chart [2] 57/8 58/5
chat [1] 26/17
check [18] 8/7 30/24 31/1 31/7 31/9 31/10 31/14 31/18 31/21 34/18 34/20 34/23 34/25 40/15 40/22 40/23 41/5 41/8
checks [4] 31/5 31/8 31/8 31/24
Chief [1] 2/5
City [1] 22/18
civil [5] 19/21 85/25 86/22 104/15 104/19
claimed [2] 20/10 20/12
claims [1] 90/2
clarification [1] 9/23
cleanup [1] 84/24
clear [1] 41/8
Clemente [1] 2/16
client [27] 6/23 16/20 16/21 21/19 21/20 21/23 21/24 23/9 42/12 42/19 56/3 67/12 67/14 67/15 83/22 84/3 84/5 84/13 84/14 84/21 85/4 85/4 85/13 88/24 100/3 100/16 100/17
client's [1] 18/18
clients [5] 83/22 84/6 98/12 99/2 99/7
CNB [2] 40/17 54/2
Coast [2] 54/3 54/22
Code [1] 106/8
colleague [1] 100/2
column [3] 24/15 24/15 29/6
come [20] 20/11 55/11 78/8 78/9 78/12 78/14 101/19 104/16
comfortable [1] 11/16
coming [3] 22/3 35/8 42/25
comment [2] 7/23 7/24
committed [2] 89/21 104/21
committing [1] 89/19
communicated [1] 83/4
communication [1] 94/2
communications [8] 40/10 51/6 58/17 84/6 84/15 88/25 92/4 99/3
companies [4] 72/2 72/5 72/9 95/18
complaint [2] 86/1 86/22
complaints [2] 86/4 86/10
complies [17] 12/20 25/12 35/12 38/19 39/17 44/9 45/17 47/10 52/3 52/20 57/7 59/3 59/20 63/25 65/10 68/16 102/25
complimentary [1] 99/3
comply [1] 18/8
computer [2] 18/16 18/20
concern [2] 67/19 67/21
concerned [2] 51/1 81/1
concerning [1] 7/14
condition [1] 40/11
conduct [9] 6/13 6/18 6/20 7/4 8/5 81/12 81/18 89/20 90/19

## C

**confer [2]** 33/19 34/1
**conference [3]** 14/17 14/21 106/12
**conferred [1]** 33/21
**conferring [2]** 19/18 34/2
**confidential [1]** 18/17
**confirm [1]** 6/9
**confirmation [6]** 61/23 62/15 62/25 63/11 63/16 63/18
**conformance [1]** 106/11
**conjecture [4]** 21/13 35/2 54/25 71/3
**connection [1]** 81/16
**consistent [1]** 7/19
**constitute [1]** 5/15
**contact [7]** 50/20 54/7 94/16 97/6 99/9 99/12 99/21
**contacted [5]** 69/19 69/22 70/6 94/9 100/2
**contain [1]** 8/2
**contained [2]** 87/22 96/23
**content [1]** 13/6
**context [1]** 91/13
**contingent [1]** 75/22
**continue [1]** 18/4
**Continued [2]** 3/6 12/7
**continuing [1]** 7/17
**contracts [1]** 82/4
**contractual [1]** 67/13
**conversation [5]** 16/8 17/2 50/6 54/11 56/25
**conversations [3]** 17/18 49/24 101/19
**copies [5]** 17/20 18/5 18/17 19/4 60/4
**copy [18]** 12/24 14/16 14/16 19/7 25/22 28/7 35/16 39/20 44/12 47/17 65/14 68/19 77/22 81/8 83/19 87/15 87/21 88/1
**corner [1]** 23/13
**Corr [1]** 66/4
**correct [64]** 8/14 12/12 25/5 25/6 25/9 25/10 29/2 29/7 30/2 31/22 33/4 36/7 36/18 37/21 38/5 46/15 48/8 50/17 52/7 52/9 55/18 56/15 57/20 57/23 58/8 61/19 62/7 64/18 66/6 70/12 74/7 75/4 76/18 82/6 84/3 84/10 84/15 85/13 87/2 88/19 88/20 89/6 89/8 90/8 90/24 92/15 92/16 93/25 94/23 95/3 95/12 95/20 96/13 98/5 98/7 98/8 98/9 98/18 99/10 100/4 101/24 102/2 102/7 106/9
**correspondence [2]** 19/9 95/17
**costs [3]** 93/3 93/16 93/20
**could [40]** 4/24 12/1 12/19 13/17 24/14 25/11 27/6 27/10 27/11 27/12 27/23 27/25 30/15 30/24 31/9 31/16 32/19 35/11 37/17 39/16 45/16 47/9 52/22 52/19 57/6 59/2 59/18 63/24 65/9 66/8 68/15 78/5 78/9 78/10 78/12 78/19 83/19 93/7 93/24 101/10
**couldn't [5]** 78/22 79/5 93/10 93/21 98/1
**counsel [14]** 2/1 2/15 4/7 4/10 4/19 11/6 17/17 17/19 17/20 18/13 18/21 19/11 19/18 34/2
**counter [7]** 31/1 31/5 31/7 31/9 31/10 31/18 31/21
**couple [2]** 4/12 56/6 102/23
**course [2]** 76/16 98/17
**court [11]** 1/4 7/3 7/8 7/12 7/13 7/16 7/19 7/21 33/2 33/19 81/1 104/25 106/17
**Court's [3]** 6/12 8/1 9/16
**Courthouse [2]** 1/19 2/7
**courtroom [4]** 4/16 5/17 10/5 11/18
**cover [2]** 62/17 62/17
**COVID [1]** 5/12
**CPA [1]** 73/21
**created [1]** 100/3
**credit [4]** 23/24 24/16 40/22 42/15
**creditors [5]** 21/2 21/3 21/4 21/11 21/16
**crimes [1]** 104/20
**criminal [4]** 2/5 81/18 103/4 103/21
**criminally [3]** 82/21 82/25 83/7
**cross [1]** 3/4 3/16 9/8 73/11
**cross-examination [2]** 9/8 73/11
**current [1]** 8/2 8/11 8/23
**currently [2]** 74/18 85/22
**custodian [5]** 22/19 30/17 41/22 41/23 42/4

**custodian's [1]** 22/24
**customer [1]** 66/23
**cut [1]** 34/25

## D

**daily [3]** 52/6 59/4 102/5
**Daniels [1]** 98/14
**date [33]** 7/15 12/17 13/11 20/20 26/8 28/17 31/18 31/20 35/25 38/21 40/4 40/5 44/21 46/17 48/10 61/13 61/25 63/2 64/3 66/23 67/10 69/4 70/16 94/20 94/24 95/10 99/11 99/14 99/22 99/24 101/11 101/23 106/14
**dates [2]** 24/1 24/3 48/6 87/22
**day [18]** 1/12 16/12 16/13 16/17 39/9 41/4 41/7 41/19 41/19 43/24 50/17 58/14 58/19 58/22 58/25 78/25 85/6 85/9
**days [3]** 40/22 48/13 49/7
**dealings [1]** 92/14
**dealt [1]** 33/5
**DEAN [3]** 2/15 2/15 11/9
**death [1]** 81/4
**debit [3]** 29/6 62/3 62/6
**debits [1]** 43/3
**December [4]** 69/6 69/7 70/7 70/17
**December 12th [2]** 69/6 69/7
**December 2018 [1]** 70/17
**decided [1]** 80/20
**declaration [2]** 22/19 22/25 30/17 41/22 42/4 42/11 42/25 45/5
**defendant [99]** 1/12 2/13 4/10 10/20 12/14 12/22 12/25 14/19 16/9 16/11 16/14 17/1 17/18 18/7 19/24 20/2 20/5 25/15 25/23 26/8 26/13 26/13 27/4 28/4 28/8 28/17 29/23 31/14 32/11 34/7 34/17 34/19 35/14 35/17 37/12 38/9 39/1 39/18 39/21 40/8 40/11 40/14 41/16 43/13 44/2 44/10 44/13 44/21 45/2 47/12 47/15 47/18 47/19 48/8 48/11 48/16 49/10 49/22 49/25 50/9 52/24 53/2 53/5 53/24 54/5 54/10 54/23 56/7 56/21 56/25 59/24 60/2 60/5 61/11 62/15 63/5 63/7 63/11 63/14 64/1 64/11 65/12 65/15 66/1 66/7 67/14 67/24 68/7 68/10 68/17 68/20 69/17 69/25 70/8 70/12 70/24 86/23 90/10 104/15
**defendant's [3]** 5/16 21/20 55/8
**defense [4]** 3/16 3/18 103/4 103/21
**degree [4]** 73/20 73/25 74/2 74/4
**delays [1]** 66/21
**deliver [1]** 67/14
**delivered [1]** 67/10
**delta [1]** 5/12
**deny [1]** 6/1
**Department [4]** 69/15 69/20 69/23 80/1
**deposit [4]** 40/19 40/25 42/16 42/18
**deposited [2]** 38/12 41/9
**depositing [1]** 41/3
**deposition [1]** 14/21
**deposits [1]** 42/15
**describe [4]** 74/11 83/10 96/23 96/25
**described [2]** 95/17 95/20
**description [1]** 42/21
**despite [1]** 76/23
**destroy [1]** 96/20
**destroyed [2]** 97/17 97/18
**detail [1]** 63/15
**detailed [1]** 64/15
**details [2]** 32/11 92/15
**determined [1]** 71/10
**devices [1]** 94/20
**did [217]**
**didn't [15]** 16/1 16/16 16/22 18/24 19/1 20/11 50/12 50/14 62/17 68/9 78/19 78/20 82/23 92/15 101/16
**different [5]** 44/2 45/1 58/18
**differently [1]** 20/23
**dig [1]** 53/25
**direct [5]** 3/4 3/16 51/6 89/7 90/1
**directed [1]** 7/25 8/1 14/23
**directing [4]** 82/1 82/3 91/20 102/16
**direction [1]** 60/2

**directive [1]** 33/1
**directly [4]** 84/24
**disbursed [1]** 66/22
**Discovery [3]** 24/22 25/2 38/1
**discuss [6]** 60/2 62/2 66/13 84/14 100/2 101/3 104/5
**discussed [1]** 101/2
**discussion [2]** 101/17 104/14
**dispute [2]** 82/11 103/8
**distinguished [1]** 5/17
**DISTRICT [2]** 1/4 1/5
**Divinium [3]** 30/5 30/6 30/13
**DIVISION [2]** 1/6 2/5
**do [144]**
**docket [2]** 6/8 22/23 30/20 41/25
**document [10]** 86/17 86/19 86/22 87/1 87/11 90/3 91/18 96/23 99/18 102/14
**documents [17]** 14/22 19/5 22/18 64/23 93/5 94/6 95/15 95/17 95/20 96/1 96/25 97/2 97/2 97/14 97/16 99/4 101/18
**does [17]** 4/21 8/2 8/4 15/16 36/12 42/21 47/14 47/16 48/16 49/22 53/24 61/25 64/7 69/14 69/16 95/24 99/20
**doesn't [4]** 6/18 89/12 90/15 104/20
**dogs [1]** 92/14
**doing [3]** 57/5 63/20 79/15
**dollar [1]** 37/10
**don't [49]** 5/5 5/24 19/9 21/23 27/6 38/15 49/6 49/19 51/5 51/16 51/23 58/16 60/24 61/21 65/4 68/12 72/3 74/25 75/18 76/7 77/1 77/1 78/23 81/3 81/21 83/24 83/24 84/22 85/5 85/16 86/11 86/11 87/11 88/11 91/23 92/3 94/18 94/24 96/10 96/10 96/20 97/20 99/2 99/6 99/24 100/22 101/22 102/11
**done [2]** 27/6 50/4
**door [4]** 77/16 77/18 77/21 83/14
**double [5]** 27/13 27/14 27/15 27/17 27/22 93/2 101/5
**double-entry [2]** 93/2 101/5
**doubt [3]** 77/1 83/24 99/24
**down [10]** 10/2 27/7 27/9 34/11 43/25 78/7 78/9 85/3 101/11 101/14
**due [4]** 5/3 5/16 37/14 40/9
**during [16]** 5/2 5/6 15/19 16/24 17/1 71/7 72/23 73/15 75/25 85/6 85/9 97/4 100/15 100/22 101/4 101/25
**duties [1]** 67/13
**duty [2]** 6/14 67/14

## E

**e-mail [82]** 12/10 12/17 12/21 12/24 13/8 13/11 13/22 14/2 25/15 25/22 26/8 26/12 26/23 28/4 28/5 28/7 28/18 28/23 28/24 34/6 35/7 35/13 35/16 35/25 36/6 36/9 37/9 38/3 39/18 39/20 40/4 40/5 40/7 44/10 44/12 44/21 47/11 47/14 47/14 47/17 47/18 47/25 48/4 48/7 48/10 49/10 49/22 49/25 50/5 50/6 50/10 52/23 53/4 53/16 54/8 54/10 54/14 54/17 55/8 55/17 56/20 61/11 61/13 61/18 62/14 63/3 63/7 63/14 64/1 64/3 64/5 64/6 64/14 65/11 65/14 66/1 66/5 68/17 68/19 69/5 69/17 70/1 87/14 E-mailing [1] 64/6
**e-mails [12]** 49/18 51/7 53/1 53/6 53/12 53/22 59/23 60/1 60/4 64/16 65/9 98/12
**EA [2]** 82/5 95/19
**each [9]** 30/7 45/4 49/18 63/21 64/16 72/2 72/5 72/8 88/9
**Eagan [26]** 15/3 15/7 18/14 19/21 19/22 20/2 20/17 21/23 23/10 39/15 41/17 42/17 42/18 44/3 46/3 46/5 46/6 47/1 47/2 71/7 71/12 72/14 74/7 74/23 75/10 97/13
**earlier [1]** 46/14
**earliest [3]** 6/16 7/1 7/15
**early [3]** 8/13 75/6 75/17
**East [2]** 54/3 54/22
**educational [1]** 73/19
**effect [7]** 6/13 6/20 7/12 8/4 8/11 8/12 9/6
**eight [4]** 44/25 91/21 101/17
**Either [1]** 54/12

**E**
electronic [3] 19/7 23/24 94/19
Ella [1] 6/7
ellalou [1] 6/7
else [10] 5/22 9/15 10/18 14/21 32/12 32/15 32/17 41/18 64/24 79/19
employee [2] 71/9 75/3
employees [2] 76/10 82/4
employment [1] 76/16
encompassed [1] 93/20
end [5] 8/19 15/13 15/15 52/16 56/13
ends [1] 62/7
enjoyable [1] 76/4
entertain [1] 8/17
entire [2] 15/18 18/6
entities [2] 72/12 82/2
entitled [1] 9/7 66/24 67/15 106/10
entrusted [1] 6/15
entry [2] 93/2 101/5
Esq [1] 67/11
Esquire [1] 23/6
essence [1] 89/20
estimate [4] 75/1 76/15 83/3 90/23
ether [2] 50/24 51/17
even [4] 10/6 40/22 81/3 86/12
evening [1] 16/10
events [3] 6/13 81/25 92/11
eventually [1] 66/22
ever [21] 14/10 20/8 20/20 49/4 51/3 51/23 52/11 58/18 58/21 64/20 64/23 76/1 76/5 76/8 79/23 82/20 98/4 98/8 100/19 101/18 101/22
every [4] 22/14 72/2 72/8 96/23
everybody [1] 72/3
everybody's [1] 16/18
everyone [3] 4/16 11/13 11/18
everything [2] 27/12 97/25
evidence [17] 13/7 23/2 26/5 28/15 30/22 32/20 32/22 35/23 40/2 42/7 44/19 48/3 52/4 53/14 60/13 65/23 69/2
evidentiary [1] 33/9
exact [4] 18/24 38/8 63/15 74/25
exactly [2] 19/10 45/1
exam [1] 73/15
examination [3] 9/8 12/7 73/11
example [2] 40/10 58/6
exception [2] 22/22 23/1
exclude [1] 45/12
excuse [1] 98/24
executed [3] 79/13 87/21 88/1
executing [1] 82/2
exhibit [71] 3/8 3/9 3/10 3/10 3/11 3/11 3/12 3/12 3/13 3/13 3/14 3/15 12/9 12/10 12/19 12/21 13/3 13/7 23/4 24/14 25/11 26/1 26/5 27/25 28/2 28/11 28/15 29/4 29/24 30/15 30/22 32/19 33/12 33/14 33/16 33/19 35/11 35/13 35/20 35/23 37/17 39/16 39/24 40/2 41/22 42/3 42/7 44/8 44/16 44/19 45/16 46/14 47/9 47/22 48/3 52/2 52/6 52/19 53/9 53/14 57/6 59/2 59/17 61/8 65/9 65/11 65/18 65/23 68/15 68/23 69/2
Exhibit 100 [4] 32/19 33/14 33/16 33/19
Exhibit 224 [1] 12/10
Exhibit 225 [3] 12/19 12/21 13/3
Exhibit 269 [3] 25/11 26/1 29/24
Exhibit 27 [1] 33/12
Exhibit 270 [3] 27/25 28/2 28/11
Exhibit 275 [4] 35/11 35/13 35/20 46/14
Exhibit 276 [2] 39/16 39/24
Exhibit 279 [2] 44/8 44/16
Exhibit 280 [2] 47/9 47/22
Exhibit 281 [2] 52/19 53/9
Exhibit 283 [1] 61/8
Exhibit 288 [3] 65/9 65/11 65/18
Exhibit 290 [2] 68/15 68/23
Exhibit 367 [1] 30/15
Exhibit 368 [3] 52/2 52/6 59/2
Exhibit 369 [5] 24/14 29/4 37/17 45/16 57/6
Exhibit 387 [1] 41/22
exhibits [11] 3/7 3/9 3/14 3/19 22/17 23/1 23/2 59/19 60/8 60/13 61/8
Exhibits 282 [2] 59/5 59/8
Exhibits 368 [1] 22/17
exist [1] 8/4
exiting [1] 20/21
expended [1] 72/23
expenditure [1] 90/21
expenses [4] 41/14 72/23 93/3 101/6
experience [1] 76/22
explain [2] 18/2 73/18
explained [1] 101/5
express [1] 76/8
expressions [1] 4/20
extra [2] 72/18 72/21
extremely [1] 51/1

**F**
facial [1] 4/20
facility [2] 103/7 103/7
fact [7] 7/13 7/16 7/22 8/3 8/22 93/13 104/18
fair [16] 5/4 12/24 25/22 28/7 35/16 39/20 44/12 45/14 47/17 53/4 60/4 65/14 68/19 84/5 99/4 99/5
false [1] 71/1
falsified [1] 87/22
fans [1] 95/18
February [2] 20/14 20/14
fed [14] 48/18 48/20 48/22 48/24 50/22 51/9 51/13 55/11 55/14 62/19 62/21 63/16 63/17 63/21
federal [5] 2/10 77/7 91/22 92/5 92/17
Feel [1] 38/17
fees [1] 101/6
felt [1] 85/12
few [1] 102/5
fiduciary [1] 67/13
figure [2] 54/1 93/16
file [9] 18/6 18/17 18/18 98/11 98/15 98/16 98/18 98/23 104/24
filed [4] 19/8 20/2 20/3 87/12
files [2] 18/14 100/3
filing [2] 6/11 19/21
filings [2] 6/4 8/24
Filippo [2] 36/10 38/9
filled [1] 27/10
final [4] 7/18 13/19 14/6 67/8
finance [1] 74/2
finances [1] 15/18
financial [5] 32/9 34/9 40/11 92/18 101/4
financials [1] 21/7
find [7] 5/11 5/15 22/24 54/3 54/21 69/18 90/20
fine [1] 85/18
firearms [3] 79/7 79/12 79/19
firm [40] 6/25 6/25 17/10 20/25 21/8 21/10 40/11 41/14 42/13 43/17 43/21 66/9 74/6 74/9 74/11 74/17 74/18 74/19 75/3 75/17 75/23 76/2 76/3 76/6 76/9 76/11 80/3 83/22 84/15 92/18 97/11 97/12 97/13 97/13 97/14 98/10 98/25 99/3 100/2 100/16
firm's [1] 21/7
first [24] 13/9 14/3 14/19 24/5 25/1 28/23 29/16 32/10 36/11 38/4 40/13 42/9 43/6 43/6 61/9 65/25 67/8 67/9 76/3 78/8 80/12 80/18 83/11 85/3
five [3] 29/14 32/4 53/19
fixed [1] 7/2
Focusing [1] 36/20
following [2] 16/12 16/13 89/18
follows [1] 26/15
foregoing [1] 106/8
form [2] 60/22 104/6
format [1] 106/11
former [1] 7/5
formerly [1] 32/14
forth [1] 32/14
forward [4] 14/2 38/10 69/17 76/24
forwarded [8] 12/21 12/25 13/24 25/18 28/5 68/7 68/17 68/20
forwarding [1] 28/23
foundation [6] 21/23 26/14 46/11 47/19 82/7
four [7] 23/14 34/11 73/25 100/15 100/19 102/16 102/23
four-year [1] 73/25
fourth [3] 2/11 24/12 24/15
FOX [1] 2/4
fraud [2] 85/22 90/7
Frauds [1] 2/6
fraudulent [1] 89/22 90/19
free [4] 10/16 38/17 83/23 85/12
front [3] 25/13 52/21 86/11
full [2] 4/20 7/12
fully [3] 4/16 87/21 88/1
funds [14] 6/15 6/23 7/15 9/6 20/4 40/19 40/22 40/24 41/6 44/24 66/21 67/10 67/15 82/2
further [4] 6/10 29/1 73/5 99/11

**G**
garage [2] 97/21 97/25
Gardner [1] 72/19
gauge [1] 5/6
gave [6] 22/9 39/8 77/1 77/22 81/8 85/11
GB [3] 82/3 82/5 82/5
general [1] 88/14
generally [3] 77/25 84/2 101/3
generous [2] 76/8 76/10
gentleman [1] 89/20
gentlemen [6] 11/12 60/21 79/4 100/16 100/19 104/4
Geoffrey [2] 72/15 95/12
get [17] 16/1 20/19 20/24 27/8 31/9 38/25 54/1 54/16 54/22 55/22 72/15 72/19 72/22 81/11 83/2 84/2 93/4
gets [2] 10/23 20/19
getting [2] 15/20 103/15
give [14] 7/20 14/18 33/1 51/19 51/21 63/16 68/3 76/12 76/16 78/6 97/5 97/7 97/10 97/14
given [7] 6/2 7/16 14/19 22/10 31/7 50/25 51/18
giving [2] 76/20 76/25
Global [2] 71/17 71/20
gmail [1] 53/18
go [14] 8/7 18/13 18/22 19/1 24/7 26/12 27/7 27/9 34/23 43/24 86/12 88/13 91/7 91/8
goes [4] 16/21 33/18 49/19 104/23
going [28] 4/15 8/17 9/9 16/17 20/14 22/7 24/7 26/24 29/12 31/12 32/16 32/17 33/24 43/24 54/8 59/17 69/18 80/20 82/20 82/24 83/2 83/6 91/7 93/4 101/4 102/23 104/3 104/18
gone [1] 81/11
good [12] 4/5 4/8 4/9 4/13 11/4 11/7 11/8 11/11 11/12 73/13 73/14 105/1
got [6] 4/14 18/21 20/7 55/12 70/10 81/10
governing [1] 6/20
government [31] 6/5 9/17 13/3 19/18 22/17 26/1 28/11 30/16 33/15 33/20 33/22 35/9 39/24 41/21 44/16 47/22 53/8 60/8 65/18 68/22 82/16 90/24 91/4 94/2 94/16 98/4 98/7 99/9 100/25 101/13 101/20
government's [4] 4/7 11/22 12/6 82/1
greeting [1] 76/12
Greg [7] 13/14 15/20 16/1 16/16 17/4 17/7 19/20
Greg Barela [1] 15/20
Gregory [2] 72/22 86/23
ground [1] 11/13
guess [1] 94/18
gun [2] 79/16 79/18
guys [1] 36/13

**H**
had [84] 6/14 7/25 8/1 14/14 14/17 16/16 17/4 19/8 22/10 22/11 27/9 27/22 31/13 31/16 34/22 40/10 41/16 50/2 51/14 51/15 54/11 54/18 56/1 56/15 56/16 56/19 58/9 69/19

**H**

**had...** **[56]** 70/11 70/17 70/24 70/25 72/1 72/3
72/4 72/5 72/7 72/23 77/18 77/19 77/25 77/25
79/23 79/25 80/1 80/4 80/20 81/11 81/17
81/24 82/16 83/22 84/12 84/13 85/4 88/23
89/6 90/1 91/3 91/3 93/1 93/1 93/16 93/20
93/21 94/2 94/12 94/14 94/16 94/22 95/6
95/11 95/15 96/13 96/15 97/3 97/25 98/14
98/14 99/9 101/5 102/4 102/8 103/3
**half [2]** 27/17 46/14
**hand [3]** 14/23 96/4 96/6
**handed [6]** 14/18 83/19 86/17 91/18 99/18
102/14
**handle [16]** 17/5 20/6 49/11 49/23 50/1 50/3
50/10 50/11 50/12 50/16 56/24 57/1 68/1
68/13 68/14 70/4
**HANNA [1]** 2/3
**happened [10]** 16/13 31/21 50/5 77/6 77/17
83/16 94/5 96/9 97/19 98/23
**happening [1]** 31/11
**happy [2]** 104/15 104/24
**hard [1]** 18/17
**Harden [4]** 14/25 15/2 15/8 15/12
**has [8]** 7/16 66/24 76/21 84/22 88/21 89/4
90/7 90/9
**hasn't [2]** 55/11 89/12
**have [129]**
**having [3]** 50/6 61/23 95/9
**he [116]**
**he's [6]** 51/2 51/9 51/10 54/17 87/6 87/18
**health [1]** 5/14
**hear [1]** 8/18
**heard [2]** 4/24 13/19
**hearsay [20]** 13/4 15/22 16/2 16/3 17/12
17/22 22/21 26/2 28/12 30/19 35/21 39/25
41/24 44/17 47/23 53/10 60/9 65/19 68/24
86/5
**held [2]** 55/13 106/10
**helicopter [3]** 77/10 77/11 77/12
**help [2]** 97/25 103/23
**helped [4]** 103/3 103/6 103/9 103/20
**her [14]** 21/25 26/17 29/21 51/23 57/14 59/15
66/25 70/9 84/20 85/16 85/18 102/19 102/20
104/14
**here [12]** 10/23 25/8 29/6 29/19 36/13 40/15
60/15 60/18 65/2 94/18 104/4 104/18
**hereby [1]** 106/7
**Herrington [1]** 66/10
**Hi [5]** 13/18 36/13 48/18 50/20 55/10
**highest [1]** 75/3
**highly [2]** 89/15 89/17
**him [28]** 16/16 19/12 20/11 46/14 49/4 50/6
51/3 51/13 51/15 54/11 58/15 61/18 64/18
66/13 70/17 70/25 83/6 83/8 83/23 85/12
87/21 88/1 88/6 88/25 94/9 95/9 96/1 96/15
**himself [3]** 37/1 37/10 38/10
**his [15]** 7/11 12/11 16/1 17/20 20/20 57/4
60/2 81/24 86/24 87/24 88/9 88/11 88/25 90/3
100/1
**hold [4]** 18/11 40/19 40/25 54/9
**holding [1]** 66/25
**home [12]** 77/22 78/12 78/13 78/14 78/16
80/6 80/8 80/13 80/19 81/4 83/11 91/9
**home was [1]** 80/13
**honestly [1]** 16/17
**Honor [101]** 4/5 4/9 5/1 5/9 7/25 8/8 8/15 9/1
9/10 9/17 10/10 10/19 10/21 11/4 11/8 11/21
12/5 13/2 13/4 15/22 16/2 17/13 17/21 19/17
21/13 22/16 22/21 25/25 26/2 28/10 28/12
30/16 30/19 32/21 32/22 32/25 33/3 33/5
33/10 33/13 33/17 33/23 34/3 35/2 39/23
41/21 41/25 44/15 44/17 47/5 47/21 47/23
52/4 53/9 55/1 60/7 60/9 60/16 60/19 61/5
65/17 65/19 66/18 67/3 68/23 68/24 70/21
71/3 73/5 73/7 73/9 79/9 79/20 82/4 82/19
82/12 84/17 84/25 85/7 85/15 85/20 86/15
89/10 89/15 89/18 89/22 89/25 90/14 90/17
91/1 91/15 95/1 98/20 99/13 99/15 100/10
100/13 102/12 103/11 104/13 104/22

**HONORABLE [1]** 1/8
**hour [1]** 93/2
**hours [3]** 56/6 63/8 101/12
**house [8]** 77/7 77/13 77/21 79/8 79/13 82/25
94/7 94/13
**how [45]** 17/9 18/14 21/25 22/1 22/5 25/1
29/16 29/21 30/6 30/10 30/12 31/14 32/6
36/23 37/1 37/14 39/12 40/16 45/10 46/10
52/14 52/16 58/14 58/24 59/6 59/12 62/3 71/7
74/11 74/15 74/15 76/6 76/8 76/15 76/15
77/8 77/15 78/4 80/8 83/3 83/10 92/18 95/19
100/3
**However [1]** 7/10
**hundred [2]** 92/8 92/10
**husband [8]** 78/9 78/12 78/12 78/15 78/22
79/5 79/7 79/16

**I**

**I'd [1]** 87/5
**I'll [2]** 8/7 104/23
**I'm [35]** 4/15 7/25 8/13 8/17 9/8 11/12 11/15
19/15 20/22 24/7 24/15 37/18 41/19 43/24
50/25 59/17 61/15 69/13 70/15 71/17 75/17
75/18 77/2 77/9 85/6 87/3 88/3 91/13 95/3
98/7 99/11 101/14 102/3 102/23 104/15
**I-N-D-E-X [1]** 3/2
**Ibrahim [4]** 15/4 15/6 15/9 15/12
**ID [1]** 48/23
**idea [1]** 76/17
**immediacy [2]** 50/22 51/10
**immediately [6]** 16/16 16/22 40/21 41/6 67/6
78/16
**impede [1]** 4/21
**important [2]** 91/22 102/1
**imposes [1]** 67/13
**improper [2]** 89/22 100/10
**inappropriate [1]** 89/10
**Inc [2]** 25/2 38/2
**include [1]** 47/14
**included [2]** 8/23 87/16
**including [5]** 7/17 33/6 47/18 53/1 82/1
**incoming [10]** 24/1 24/3 24/21 25/2 25/7 25/8
31/17 31/20 37/20 37/24
**Incorporated [1]** 24/22
**incorrect [1]** 33/3
**incredible [1]** 76/22
**indicated [3]** 9/6 42/6 89/12
**indicating [1]** 6/14
**individual [2]** 72/7 89/21
**individually [1]** 30/10
**individuals [4]** 19/22 26/25 36/6 89/19
**info [2]** 28/21 36/13
**inform [1]** 89/5
**information [9]** 18/22 29/2 30/14 36/17 36/20
36/21 56/14 57/16 63/11
**informed [1]** 102/1
**informing [1]** 91/21
**infringement [1]** 5/15
**initial [5]** 7/13 7/19 7/22 88/23 101/17
**initially [1]** 83/14
**initiate [1]** 55/3
**initiated [5]** 46/21 46/22 56/13 56/15 56/19
**inquiry [1]** 6/10
**inside [1]** 83/18
**instruct [1]** 7/19
**instructed [4]** 7/13 7/22 8/22 58/1
**instructing [1]** 7/3 7/10
**instruction [6]** 7/17 7/18 7/20 8/18 9/2 27/9
**instructions [8]** 7/14 7/18 7/22 25/20 26/11
26/20 26/23 78/6
**interest [11]** 7/2 71/12 71/14 71/17 71/20
71/23 72/1 72/4 72/5 72/6 72/8
**interview [2]** 101/9 101/25
**interviewed [1]** 101/12
**investigating [1]** 92/5
**investigation [1]** 82/1
**invited [1]** 6/17
**involved [7]** 43/18 43/19 81/25 103/13 103/14
103/14 103/14

**involvement [2]** 14/14 81/17
**IPSY [1]** 13/14
**is [250]**
**is maybe [1]** 44/25
**isn't [12]** 80/21 81/18 85/23 87/11 87/17
87/20 87/24 88/17 102/17 103/1 103/18
103/25
**issue [9]** 6/5 6/9 33/6 40/17 41/12 54/1 82/1
99/7 104/14
**issues [3]** 33/7 60/23 104/7
**it [206]**
**it's [25]** 9/2 13/14 14/20 17/24 22/18 31/2
32/22 32/23 33/8 34/14 37/6 42/20 43/11
48/23 49/14 52/4 53/21 61/23 69/12 88/18
88/18 88/19 89/15 89/17 97/23
**Item [2]** 4/3 11/2
**its [1]** 63/21
**itself [1]** 49/25

**J**

**jail [1]** 103/7
**JAMES [1]** 1/8
**January [4]** 19/16 19/20 88/9 88/24
**January 10th [1]** 88/9
**January 2019 [2]** 19/16 19/20
**January 5th [1]** 88/24
**Jeans [1]** 77/25
**Joe [1]** 11/10
**JOHN [7]** 1/11 2/14 4/4 11/3 14/25 15/2 16/15
**Johnson [5]** 72/15 85/23 90/7 95/12 103/15
**Johnson's [7]** 90/18 102/8 103/3 103/4 103/9
103/20 103/21
**joined [1]** 11/9
**judge [3]** 1/8 81/16 81/24
**Judicial [1]** 106/12
**JUDY [11]** 3/5 11/22 12/3 12/6 13/18 48/18
50/20 53/25 55/10 76/24 88/10
**July [6]** 1/17 4/1 13/12 99/10 99/21 106/14
**July 20th [1]** 13/12
**July 25th [1]** 99/10 99/21
**June [4]** 12/18 87/14 94/22 95/8
**June 14th [2]** 94/22 95/8
**June 29 [1]** 12/18
**June 29th [1]** 87/14
**juror [3]** 5/21 5/22 6/3
**jurors [2]** 5/4 10/3
**jury [16]** 4/2 5/6 7/14 7/18 9/2 10/4 10/23 11/1
32/23 60/25 61/3 73/18 74/11 76/15 83/3
104/10
**just [32]** 9/23 17/15 20/14 21/3 21/20 23/20
24/11 30/24 31/16 35/6 37/6 42/25 44/24
45/12 48/1 48/5 48/23 53/13 54/9 55/3 62/17
65/1 72/2 73/16 76/21 77/19 81/4 82/11 88/3
91/11 92/1 93/21
**Justice [1]** 80/1
**JVS [3]** 1/11 4/3 11/2

**K**

**keeping [1]** 21/6
**keeps [2]** 53/18 79/16
**kept [6]** 18/14 18/16 18/17 92/19 92/20 92/24
**Kim [1]** 100/1
**kind [2]** 23/13 53/18
**knew [1]** 92/13
**know [59]** 9/24 14/25 15/4 15/8 17/6 17/9
19/10 21/5 21/18 26/22 27/6 30/12 32/10
32/10 32/15 32/17 36/4 37/11 37/14 39/4 39/6
43/16 43/20 48/20 49/1 49/19 51/24 53/25
54/3 54/22 55/23 57/13 62/14 65/2 65/6 67/12
72/1 72/3 72/3 72/4 78/4 81/3 81/21 82/19
83/24 85/5 88/11 91/12 91/23 91/23 92/2
92/15 94/18 94/24 96/10 97/20 99/2 99/6
101/14
**knowledge [1]** 15/8
**known [1]** 74/6
**Kupetz [4]** 43/11 43/14 43/16 43/21

**L**

**Labs [3]** 30/5 30/6 30/13

**L**

**Lack [1]** 35/2
**ladies [3]** 11/12 60/21 104/4
**language [6]** 4/21 6/18 7/7 8/3 8/4 8/23
**lapse [1]** 84/22
**largest [1]** 75/9
**last [6]** 8/24 13/19 23/14 45/5 53/25 57/8
**late [1]** 4/12
**later [7]** 19/3 19/4 19/4 56/6 63/8 81/23 82/15
 76/9 84/15 92/18 97/11 97/12 97/13 97/14
 100/2
**lawsuit [7]** 19/21 20/1 20/3 20/3 90/9 90/10
 95/12
**lawyer [3]** 6/14 6/15 7/14
**lawyer's [1]** 6/15
**lawyers [1]** 67/14
**lawyers' [1]** 10/3
**learn [6]** 15/25 21/25 22/2 22/5 35/8 82/15
**learned [2]** 16/8 81/23
**least [2]** 53/1 53/5
**left [10]** 12/9 32/6 41/4 59/12 61/7 62/3 78/24
 79/18 81/16 94/14
**legal [2]** 9/6 90/3
**less [1]** 45/14
**let [18]** 18/13 20/23 32/10 54/3 54/22 55/22
 58/17 61/8 62/17 67/21 83/17 84/1 84/24
 86/13 91/23 94/25 96/19 100/12
**let's [18]** 23/4 23/4 26/7 26/12 28/17 32/5
 36/11 40/4 42/9 43/6 44/8 45/24 53/16 55/20
 63/2 66/12 69/4 70/16
**letter [11]** 17/10 17/20 19/1 66/8 66/13 67/16
 67/19 67/25 68/4 68/6 70/6
**levels [3]** 26/3 28/13 47/24
**liberty [1]** 84/14
**lied [1]** 92/5
**lift [1]** 98/1
**light [1]** 104/20
**like [7]** 6/3 9/16 11/15 33/20 74/21 78/1 83/17
**likewise [2]** 5/5 89/21
**Linda [1]** 97/24
**line [9]** 13/15 26/10 28/20 44/23 53/19 66/3
 89/14 89/23 90/4
**lines [3]** 34/11 43/24 57/8
**list [4]** 39/8 41/13 45/5 91/7
**listed [6]** 25/8 36/21 40/4 43/7 61/13 63/17
**listen [1]** 103/16
**little [2]** 8/16 20/23
**livid [2]** 16/15 16/19
**living [6]** 102/9 103/3 103/7 103/9 103/20
 103/23
**LLC [6]** 30/5 71/18 71/21 71/24 74/24 82/5
**LLP [5]** 39/15 42/11 66/10 75/10 82/5
**lock [1]** 77/20
**lodged [3]** 30/20 41/25
**Long [45]** 26/15 28/23 28/24 29/16 29/17 36/3
 36/4 36/6 36/9 36/18 36/23 37/5 37/9 38/8
 38/20 38/23 45/22 46/8 46/10 46/20 46/23
 46/25 48/7 50/17 50/19 51/1 51/7 51/9 51/24
 53/17 54/1 54/10 54/18 55/9 55/17 55/20
 55/21 55/24 56/6 56/20 57/16 58/14 58/18
 65/3 65/7
**look [48]** 6/17 12/19 18/22 23/13 23/19 23/24
 25/11 26/19 27/25 28/22 29/1 30/15 30/24
 31/16 32/2 32/5 32/19 35/11 37/23 38/16
 38/17 39/16 42/9 43/2 44/8 47/9 52/2 52/19
 53/18 57/15 58/5 59/2 59/17 59/18 61/8 61/15
 62/6 63/2 63/24 65/9 66/8 68/15 87/9 93/17
 93/18 93/19 93/21 100/9
**looked [3]** 25/4 35/6 96/11
**looking [8]** 17/19 45/13 61/7 61/15 61/21
 65/25 76/23 87/3
**Los [1]** 2/8
**lot [4]** 16/17 91/12 92/2 93/1
**Louise [1]** 6/7
**lunch [1]** 104/3

**M**

**MA [1]** 95/18

**made [12]** 6/11 14/16 19/10 66/21 72/11
 87/13 87/18 89/6 89/23 95/18 98/1 99/11
**magistrate [1]** 81/16
**mail [82]** 12/10 12/17 12/21 12/24 13/8 13/11
 13/22 14/2 25/15 25/22 26/8 26/12 26/23 28/4
 28/5 28/7 28/18 28/23 28/24 34/6 35/12 35/13
 35/16 35/25 36/6 36/9 37/9 38/9 39/18 39/20
 40/4 40/5 40/7 44/10 44/12 44/21 47/11 47/14
 47/14 47/17 47/18 47/25 48/5 48/7 48/10
 49/10 49/22 49/25 50/5 50/6 50/10 52/23 53/4
 53/16 54/8 54/10 54/14 54/17 55/8 55/17
 56/20 61/11 61/13 61/18 62/1 62/5 63/3 63/7
 63/14 64/1 64/3 64/5 64/14 65/11 65/14 66/1
 66/5 68/17 68/19 69/5 69/17 70/1 87/14
**mailed [1]** 19/14
**mailing [1]** 64/6
**mails [12]** 49/18 51/7 53/1 53/6 53/12 53/22
 59/23 60/1 60/4 64/16 65/5 98/12
**maintain [1]** 98/18
**maintained [2]** 98/11 100/3
**Major [1]** 2/6
**make [7]** 44/6 54/6 64/24 86/9 93/20 104/17
 104/23
**making [5]** 9/4 19/7 57/5 74/23 87/2
**manager [1]** 26/18
**mandatory [1]** 5/9
**many [8]** 58/24 76/15 76/15 76/18 76/24 77/8
 81/25 83/3
**March [40]** 20/14 34/7 34/24 35/7 36/1 37/18
 37/23 38/12 38/18 38/21 39/9 40/6 41/16
 42/16 43/4 45/19 45/19 47/2 57/19 70/11
 70/11 70/13 70/25 74/20 77/3 77/6 82/17
 82/18 83/12 84/10 87/23 87/23 87/23 87/24
 91/8 92/13 94/1 94/3 94/5 94/17
**March 10 [4]** 87/23 87/23 87/23 87/24
**March 12 [1]** 34/24
**March 12th [2]** 34/7 35/7
**March 14th [6]** 36/1 37/23 38/12 38/18 38/21
 57/19
**March 15th [6]** 39/9 40/6 41/16 42/16 43/4
 45/19
**March 18 [1]** 82/17
**March 2018 [1]** 20/14
**March 20th [2]** 45/19 47/2
**March 22 [1]** 82/18
**March 22nd [2]** 70/11 70/13
**March 25 [1]** 83/12
**March 25th [6]** 77/3 77/6 84/10 91/8 92/13
 94/1
**March 26th [2]** 94/3 94/5
**March of [1]** 70/25
**Marchino [2]** 36/10 38/9
**Marie [1]** 40/17
**MARKED [2]** 3/7 3/19
**mask [10]** 4/17 5/2 5/21 5/22 9/20 9/25 10/7
 10/16 11/14 11/18
**masks [1]** 5/5
**materially [1]** 4/21
**matter [7]** 15/9 18/23 19/9 65/7 68/11 73/3
 106/10
**matters [2]** 6/4 85/13
**may [35]** 7/25 21/4 27/9 33/1 56/20 57/8
 57/22 59/6 59/11 61/14 61/17 61/18 62/2
 62/12 62/14 63/4 64/16 64/18 64/20 64/20
 73/9 73/10 76/7 84/17 85/7 86/15 86/16 91/17
 95/1 95/2 97/20 99/17 102/12 102/13
**May 10 [1]** 61/14
**May 10th [5]** 61/17 61/18 62/14 63/4 64/20
**May 11th [2]** 64/4 64/12
**May 1st [2]** 56/20 59/6
**May 4th [6]** 17/18 57/22 59/11 62/2 62/12
 64/10
**maybe [5]** 44/25 59/17 75/2 75/18 83/5
**MBA [1]** 73/23
**me [86]** 5/2 5/23 7/6 13/14 13/19 14/9 18/11
 18/13 20/23 22/1 22/10 30/14 32/10 33/1 39/6
 39/8 39/8 40/16 41/20 46/24 48/18 48/24 50/2
 50/2 50/3 54/3 54/7 54/8 54/16 54/22 56/1
 57/5 58/1 58/17 61/8 62/17 67/21 74/16 76/12

 76/16 76/20 76/25 77/20 77/21 77/22 78/7
 78/9 78/18 79/10 79/16 81/14 82/20 82/22
 83/17 83/18 83/18 83/19 83/20 84/1 84/24
 86/12 86/13 86/25 87/10 87/19 89/16 89/19
 90/9 90/17 91/3 91/11 92/2 92/5 94/17 94/25
 95/3 96/19 96/21 97/5 97/7 97/25 98/10 98/24
 99/3 100/12
**me to [1]** 87/10
**mean [10]** 15/16 34/19 41/1 49/14 77/11 78/7
 78/11 80/23 92/3 100/22
**Meaning [1]** 98/7
**meant [1]** 75/12
**measures [1]** 5/13
**meet [1]** 83/11
**meeting [2]** 17/1 17/7
**meetings [1]** 101/4
**Melinda [1]** 91/11
**member [2]** 6/24 6/25
**member's [1]** 7/2
**members [1]** 91/4
**memory [2]** 84/23 92/11
**mention [1]** 92/21
**mentioned [5]** 21/11 31/17 45/18 72/2 92/23
**message [3]** 25/18 26/7 70/10
**messages [1]** 53/19
**messenger [1]** 19/15
**met [6]** 16/13 79/23 83/3 90/24 91/3 91/4
**MICHAEL [45]** 1/11 2/14 4/4 4/10 11/3 11/8
 14/9 14/18 14/20 16/15 20/6 22/1 22/9 22/10
 22/11 23/5 27/18 30/14 31/2 36/10 37/8 42/22
 46/24 49/15 50/2 50/11 50/15 50/25 53/7
 54/7 55/10 56/1 56/3 57/4 58/1 58/4 58/13
 65/1 65/2 67/11 70/4 71/11 72/4 72/10 76/21
**Michael's [4]** 14/3 21/19 21/24 68/1
**Michelle [46]** 21/18 22/3 22/8 23/18 26/17
 30/2 30/4 30/10 30/13 35/9 36/5 36/14 36/15
 36/16 36/20 36/24 37/4 37/10 38/10 38/20
 38/24 45/25 46/18 49/1 49/4 49/7 51/4 51/21
 51/25 53/21 53/22 54/18 54/24 57/13 57/17
 58/15 59/8 59/14 64/6 65/6 68/8 69/24 70/8
 70/11 70/24 73/3
**Michelle's [4]** 48/19 48/25 50/24 51/17
**mid [2]** 60/14 60/17
**mid-morning [2]** 60/14 60/17
**middle [3]** 45/13 62/7 62/18
**might [1]** 93/11
**million [35]** 30/7 30/8 39/13 39/14 41/17
 42/20 42/24 43/14 43/21 45/18 50/23 51/17
 52/12 57/12 58/2 58/7 58/10 58/21 58/24 59/8
 59/14 62/5 62/11 64/9 64/17 64/21 64/24
 66/24 67/5 67/22 70/9 70/12 70/18 70/25
 88/23
**mind [1]** 16/18
**minute [4]** 33/1 83/2 91/7 96/12
**minutes [4]** 4/12 49/21 60/20 100/6
**Miramar [1]** 2/16
**miscellaneous [1]** 96/5
**misheard [1]** 7/25
**misrepresentations [1]** 87/2
**mistaken [2]** 8/8 8/13
**mistakenly [1]** 94/14
**mistrial [2]** 5/10 6/1
**MLP [14]** 23/9 24/19 29/9 37/3 37/20 37/24
 38/13 39/1 42/25 45/8 45/9 52/7 62/9 62/12
**moment [2]** 6/16 102/22
**momentarily [1]** 93/4
**Monday [5]** 48/19 48/25 49/2 49/5 49/8
**money [42]** 15/21 16/1 17/3 20/9 20/12 21/8
 21/10 22/2 27/5 27/22 27/23 31/11 32/6 34/24
 35/8 37/3 38/12 38/14 38/20 38/21 38/23
 38/24 38/25 39/2 39/4 39/9 39/12 41/9 41/10
 41/11 41/18 41/20 46/20 50/24 51/17 59/12
 72/18 72/21 72/25 82/23 86/7 89/6
**money's [2]** 40/20 41/1
**monies [3]** 40/25 41/3 72/11
**month [2]** 46/14 52/17
**months [2]** 70/14 102/5
**more [6]** 8/16 9/1 11/16 35/8 64/15 93/1
**morning [28]** 4/5 4/8 4/9 4/13 11/4 11/7 11/8

## M

**morning.. [21]** 11/11 11/12 44/4 60/14 60/17 73/13 73/14 77/3 77/4 77/6 79/24 80/3 80/5 80/13 81/1 81/13 83/11 84/9 92/13 92/17 94/1
**most [1]** 28/23
**motion [2]** 9/12 9/12
**move [8]** 5/10 30/16 33/15 41/21 85/20 89/23 90/4 96/20
**moved [5]** 96/1 96/10 97/21 98/24 98/25
**moves [11]** 13/3 26/1 28/11 35/19 39/24 44/16 47/22 53/8 60/8 65/18 68/23
**moving [2]** 18/25 22/17
**Mr [9]** 12/4 17/14 17/23 33/15 33/17 69/1 73/12 95/3 103/21
**Mr. [112]**
**Mr. Andre [1]** 100/2
**Mr. Avenatti [18]** 6/3 6/7 6/11 7/4 7/7 7/11 7/21 9/18 10/12 13/24 14/2 20/20 27/19 47/25 53/12 65/22 73/6 87/7
**Mr. Avenatti's [1]** 50/16
**Mr. Barela [27]** 12/11 12/15 13/17 13/23 14/4 14/6 14/11 14/15 14/18 15/12 17/11 18/12 18/21 20/1 20/8 85/23 87/2 87/10 87/12 87/20 88/21 89/1 89/1 89/4 89/5 90/2 92/14
**Mr. Barela's [4]** 17/18 18/5 19/8 88/16
**Mr. Beada [1]** 103/7
**Mr. Brett [1]** 79/24
**Mr. Carlos [11]** 91/10 94/9 94/23 95/7 95/11 95/14 96/13 96/24 97/1 101/8 103/19
**Mr. Dean [1]** 11/9
**Mr. Harden [2]** 15/8 15/12
**Mr. Ibrahim [2]** 15/9 15/12
**Mr. Johnson [3]** 85/23 90/7 103/15
**Mr. Johnson's [6]** 90/18 102/8 103/3 103/4 103/9 103/20
**Mr. Regnier [1]** 90/19
**Mr. Richard [1]** 102/9
**Mr. Roberson [1]** 103/19
**Mr. Sagel [22]** 10/13 11/20 61/4 79/2 80/12 80/19 83/4 83/6 83/9 83/11 83/21 84/20 85/3 85/11 91/4 91/9 91/10 91/21 92/4 103/3 103/18
**Mr. Steward [1]** 4/11
**Mr. Tran [6]** 38/13 46/13 48/14 48/16 56/11 66/21
**Mr. Tran's [2]** 48/10 49/10
**Ms [20]** 11/23 34/6 61/7 65/25 69/4 73/13 76/5 80/18 81/2 83/19 86/19 87/11 89/21 90/3 90/11 91/20 97/7 97/16 102/22 103/18
**Ms. [11]** 4/11 11/9 32/12 36/18 66/22 66/22 66/23 67/6 67/10 85/2 102/17
**Ms. Cefali [2]** 4/11 11/9
**Ms. Phan [6]** 32/12 36/18 66/22 66/22 66/23 67/6
**Ms. Phan's [1]** 67/10
**Ms. Regnier [2]** 85/2 102/17
**much [19]** 25/1 29/16 29/21 30/6 30/10 31/14 32/6 36/23 37/1 37/14 39/12 45/10 46/10 52/14 52/16 58/14 59/6 59/12 62/3
**multiple [3]** 26/3 28/13 47/24
**must [4]** 7/1 8/8 67/5 92/3
**my [28]** 5/3 6/9 7/8 7/21 8/15 8/21 8/22 8/24 9/1 9/2 10/5 13/20 27/12 72/23 77/7 77/10 77/22 78/9 78/20 78/24 79/16 81/4 81/16 83/17 92/10 94/7 94/13 97/7
**myself [5]** 36/10 36/13 53/17 69/14 81/5

## N

**name [4]** 12/1 29/19 93/11 97/23
**named [2]** 90/10 95/12
**names [4]** 45/3 48/6 86/23 86/25
**National [1]** 22/18
**nature [1]** 98/12
**NBPD [3]** 69/10 69/11 69/15
**NBPD stand [1]** 69/15
**near [1]** 97/24
**necessarily [1]** 19/1
**necessary [1]** 11/19
**need [9]** 13/20 20/24 27/5 27/19 37/4 54/2

54/21 54/23 73/15
**needed [5]** 16/20 22/9 84/6 94/19 98/24
**needs [2]** 32/23 54/2
**never [7]** 13/18 40/23 82/24 83/6 83/8 88/24 92/5
**Nevertheless [1]** 7/18
**new [9]** 4/15 17/7 17/9 17/17 17/18 17/20 18/13 18/21 22/14
**Newport [4]** 69/15 69/19 69/22 70/6
**next [14]** 16/11 30/4 41/4 41/7 50/17 67/2 67/9 77/17 83/16 94/1 94/16 99/9 99/20 101/7
**NICOLA [1]** 2/3
**night [4]** 8/25 15/25 16/7 16/8
**no [77]** 6/8 6/9 10/19 12/14 12/16 14/7 16/10 18/24 20/10 21/15 27/12 27/21 32/13 34/3 37/13 37/16 38/15 38/23 41/7 45/24 46/2 46/19 49/6 49/9 51/8 51/14 51/16 51/20 51/23 52/1 52/13 54/20 55/7 55/16 56/5 58/11 58/20 58/23 59/10 59/16 64/22 65/1 65/8 66/14 68/12 69/10 73/5 73/22 73/24 74/1 74/3 74/5 75/12 76/17 78/17 79/25 80/4 82/9 83/8 86/11 89/5 92/7 93/18 96/18 96/21 96/25 97/3 97/9 97/15 98/4 98/6 98/7 99/8 99/24 101/21 101/25
**None [12]** 3/17 3/20 71/13 71/16 71/19 71/22 71/25 72/13 72/17 72/20 73/1 73/4
**North [1]** 2/7
**not [137]**
**note [3]** 5/16 6/5 89/25
**notes [2]** 95/23 98/18
**Nothing [1]** 10/20
**notice [4]** 48/2 53/13 65/21 68/25
**notified [2]** 16/20 16/21
**notify [1]** 16/16
**November [9]** 15/11 15/19 87/12 101/12 101/25 102/17 103/1 103/19 104/1
**November 14th [2]** 15/11 15/19
**November 19th [5]** 101/12 101/25 103/1 103/19 104/1
**now [24]** 5/21 7/17 7/17 24/14 29/6 29/12 34/1 51/2 54/15 58/5 63/2 63/20 74/6 79/23 83/9 84/2 85/19 85/22 86/19 90/7 93/13 94/1 98/10
**nsf [1]** 40/22
**nuanced [2]** 8/16 9/2
**number [21]** 25/4 48/19 48/20 48/22 48/23 48/25 50/22 51/10 51/13 55/12 55/14 56/12 62/19 62/21 63/15 63/16 63/17 63/20 69/12 69/12 93/4
**numbering [1]** 8/10
**numbers [6]** 23/14 29/23 29/23 42/23 43/9 45/1
**numerous [1]** 88/25

## O

**O'Malley [1]** 74/7
**oath [2]** 11/24 70/24
**object [3]** 5/2 5/8 85/16
**objecting [1]** 7/3
**objection [37]** 7/17 8/15 13/4 15/22 16/2 17/12 17/21 21/12 22/21 26/2 28/12 30/19 33/17 34/3 35/1 35/21 39/25 41/24 44/17 47/4 47/23 53/10 60/9 61/9 66/18 67/3 68/24 70/20 71/2 74/12 80/9 80/15 81/19 82/7 86/5 98/20 100/10
**objections [8]** 8/18 22/22 30/20 33/9 41/25
**obligation [1]** 7/14
**observe [1]** 4/20
**obstruct [1]** 10/3
**obtain [1]** 14/3
**obtained [3]** 17/7 17/9 18/13
**obtaining [1]** 5/12
**Obviously [1]** 49/19
**occasioned [1]** 5/12
**October [6]** 29/13 32/5 32/6 32/7 58/6 101/7
**October 3rd [2]** 29/13 32/5
**October 4th [1]** 32/7
**October of [1]** 58/6
**off [5]** 12/9 18/11 54/9 61/7 93/24
**offer [4]** 97/5 97/7 97/10 97/14

**offered [1]** 102/19
**office [4]** 14/12 15/2 69/9 98/23
**offices [2]** 2/15 18/25
**Oh [2]** 24/11 70/15
**okay [30]** 8/7 9/22 10/15 10/22 20/16 20/23 28/1 29/5 34/4 34/16 35/2 37/19 44/24 47/10 49/20 49/21 61/10 73/16 73/17 86/13 88/16 88/19 95/16 95/21 95/25 96/19 99/22 99/25 100/8 102/25
**old [1]** 97/24
**once [1]** 13/18
**one [56]** 5/11 6/3 7/24 11/15 11/17 14/3 14/12 19/17 21/11 21/3 21/15 24/5 24/7 24/7 24/12 25/1 27/14 29/6 30/10 33/12 34/14 38/4 38/6 43/6 43/6 45/5 49/16 58/2 58/3 59/1 64/17 72/2 72/7 72/8 79/4 79/17 80/7 80/18 83/9 83/21 86/11 87/1 87/13 87/17 87/24 88/16 89/18 92/12 92/14 93/21 94/10 94/12 98/4 98/7 101/4
**ones [1]** 45/13
**online [2]** 27/7 27/8
**only [7]** 7/6 10/4 55/11 57/25 64/17 65/21 66/23
**opened [3]** 22/14 77/18 77/21
**operating [5]** 31/4 31/10 31/12 44/4 44/7
**opinion [1]** 78/21
**opinions [2]** 60/22 104/6
**option [3]** 9/18 11/17 11/18
**order [1]** 81/12
**org [1]** 42/22
**originator [1]** 42/22
**Orrick [2]** 66/4 66/9
**other [32]** 9/7 19/9 25/7 25/8 27/17 33/6 38/6 40/21 41/14 41/14 41/20 42/23 48/1 51/6 72/18 72/21 72/25 75/4 75/19 75/21 79/18 82/5 86/9 91/4 91/5 92/5 92/12 95/18 97/13 99/1 100/12 104/23
**others [5]** 5/17 53/13 86/25 90/12 97/21 98/15 98/16
**otherwise [4]** 4/22 5/16 9/8 93/24
**our [6]** 40/20 41/1 41/1 41/6 56/13 97/20
**out [36]** 5/24 10/4 14/16 17/4 18/25 20/11 20/19 20/25 26/24 27/5 27/10 27/23 31/25 39/2 39/4 39/14 42/25 43/3 43/7 43/8 43/9 43/10 44/6 53/25 54/1 69/18 77/21 79/17 80/2 87/10 87/14 87/19 91/13 93/16 97/5 97/25 98/25
**outgoing [17]** 29/12 29/14 29/17 30/1 32/4 38/17 39/10 45/18 45/20 45/22 45/25 46/3 46/7 46/10 46/17 57/9 57/11
**outlined [1]** 22/23
**outside [5]** 78/8 83/18 84/15 92/14 96/22
**outweigh [1]** 90/16
**over [19]** 19/12 19/15 21/16 47/3 50/25 51/18 51/21 76/16 77/13 86/12 89/20 96/4 96/6 96/14 96/17 98/16 101/4 101/12 102/5
**overhead [1]** 77/12
**overnight [1]** 6/11
**Overruled [23]** 16/4 21/14 26/4 28/14 30/21 35/3 35/22 40/1 44/18 47/6 53/11 55/2 60/10 66/19 67/4 70/22 71/4 81/20 82/8 86/6 91/2 98/21 103/12
**owed [2]** 20/10 20/12 20/13
**own [4]** 27/11 27/12 63/21 90/3
**ownership [10]** 71/12 71/14 71/17 71/20 71/23 72/1 72/4 72/4 72/6 72/8

## P

**P.D [1]** 70/6
**p.m [6]** 56/9 61/14 61/17 63/4 64/4 105/3
**page [36]** 6/8 7/13 22/23 24/15 26/19 29/4 30/20 31/16 31/24 32/2 37/17 38/16 38/17 41/23 41/25 42/9 42/15 43/2 43/3 45/16 52/2 52/6 56/6 57/6 59/2 61/21 61/21 61/22 61/23 62/25 67/8 67/9 87/9 88/13 100/9 106/11
**page 1 [4]** 24/15 31/16 31/24 37/17
**page 10 [2]** 22/23 30/20
**page 11 [1]** 41/25
**page 12 [3]** 52/2 52/6 87/9
**page 13 [1]** 42/15

**P**

page 14 [1]  59/2
page 15 [2]  43/2 43/3
page 4 [1]  32/2
page 6 [1]  88/13
page 9 [1]  7/13
pages [2]  22/19 30/18
pages 3 [1]  30/18
paid [8]  20/11 21/16 31/3 31/25 41/6 71/8 75/3 89/6
pandemic [1]  5/12
paperwork [3]  22/11 22/12 22/15
paragraph [9]  40/13 66/15 66/17 67/8 87/9 89/7 91/20 102/16 102/22
Paralegal [1]  73/20
Parrish [1]  72/5
part [19]  6/22 6/23 6/23 6/24 7/5 7/6 7/22 15/11 23/5 27/14 32/14 32/24 34/9 34/11 34/21 62/19 65/25 67/2 72/8
particularly [2]  6/1 10/3
parties [1]  82/6
party [3]  88/8 88/23 89/6
party's [1]  87/17
pass [1]  5/24
Passport [2]  71/23 72/6
past [1]  102/5
Pause [1]  73/8
pay [7]  20/8 21/10 40/15 40/16 41/10 41/11 67/14
payment [4]  36/14 43/23 87/22 88/23
payments [2]  44/6 88/8
payroll [5]  40/18 41/10 41/11 41/13 44/6
people [4]  5/24 81/4 84/15 97/25
people's [1]  41/14
percent [2]  92/8 92/10
perfectly [1]  5/23
period [1]  52/9
permission [2]  12/11 14/4
person [3]  16/24 17/1 76/23
personal [1]  95/18
Personalized [3]  24/22 25/1 38/1
personally [3]  19/11 19/12 81/25
Phan [49]  21/18 22/3 22/8 23/18 26/16 29/19 30/2 30/4 30/10 30/13 32/12 36/5 36/16 36/18 36/20 36/24 37/4 37/11 38/10 38/20 38/24 46/1 46/18 49/1 49/5 49/7 51/4 51/21 51/25 54/19 54/24 57/13 57/17 58/15 59/9 59/15 64/6 65/6 66/4 66/22 66/22 66/23 67/6 68/8 69/24 70/8 70/11 70/25 73/3
Phan's [2]  35/9 67/10
phone [8]  15/11 15/16 15/18 15/19 16/7 17/6 41/6 82/17
pick [1]  94/10 96/17
pings [1]  40/20
place [5]  31/21 32/16 32/18 97/23 97/23
Plaintiff [2]  1/10 2/2
PLAINTIFF'S [2]  3/4 3/7
plans [1]  20/21
pleadings [1]  19/8
please [30]  12/1 13/19 18/4 44/8 48/18 48/24 49/11 49/23 50/1 50/3 50/10 50/11 50/16 50/22 51/1 52/19 54/1 55/12 56/12 56/24 57/1 60/21 60/24 66/17 73/18 74/11 102/22 103/16 104/5 104/7
plexiglass [6]  9/25 10/1 10/6 10/9 10/11 10/14
point [24]  8/21 9/1 9/2 9/13 14/13 22/2 27/7 33/2 35/7 35/10 41/3 56/11 67/24 68/9 70/16 73/15 84/23 85/6 85/9 87/5 89/11 90/14 99/25 100/23
pointing [1]  89/20
Police [3]  69/15 69/19 69/22
polo [1]  78/1
portion [7]  6/25 7/2 7/6 7/20 8/21 13/25 66/23
possible [3]  6/16 7/15 104/14
potentially [1]  6/24
Pratigya [1]  29/19
precautionary [1]  5/13

precluding [1]  90/17
prefer [3]  9/19 60/10 94/3
present [8]  4/2 4/10 11/1 27/19 60/25 61/3 78/25 104/10
presented [2]  7/6 7/8
presently [2]  5/25 6/24
preserve [2]  98/5 98/8
preserving [1]  5/14
PRESIDING [1]  1/8
presumably [1]  67/11
previous [1]  58/5
previously [3]  11/22 12/6 42/5
printed [2]  14/16 31/8
printout [1]  64/15
printouts [2]  93/5 93/6
prior [4]  49/7 74/17 80/3 100/24
priority [2]  54/2 54/6
privilege [9]  33/7 83/23 84/3 84/6 84/12 84/14 84/21 85/4 85/13
PRO [1]  2/14
probably [10]  19/14 19/14 31/12 50/2 80/23 83/5 92/22 97/21 98/3 103/6
probative [1]  90/16
proceed [3]  34/4 73/9 85/17
proceeded [1]  77/22
proceedings [6]  1/15 5/3 10/25 61/2 73/8 106/10
process [5]  5/3 5/16 18/25
professional [4]  6/12 6/17 6/19 7/4
program [1]  93/10
programs [1]  101/6
Promise [1]  26/16
promptly [1]  67/14
protection [1]  79/16
protects [1]  84/6
protocols [1]  5/9
provide [5]  12/12 14/4 19/4 19/11 48/18 48/24 50/22 51/9 51/13 55/12 55/14 56/12 64/23
provided [16]  4/19 6/6 6/7 7/4 14/10 14/12 18/22 22/10 33/11 57/16 67/6 87/21 88/1 88/6 90/2 99/3
provides [2]  4/19 5/18
providing [1]  30/14
public [1]  5/14
publish [1]  13/8
published [1]  32/23
pull [1]  12/10
puppies [1]  77/20
purpose [2]  84/18 92/25
purposes [1]  22/25
pursuant [2]  22/25 106/7
pursue [1]  9/7
put [7]  10/2 41/5 55/21 55/25 56/4 79/17 83/17

**Q**

question [15]  7/24 17/15 32/10 69/14 78/10 83/8 83/20 84/25 90/15 90/25 93/9 96/19 100/12 101/16 103/16
questioning [5]  9/24 89/14 89/24 90/5 90/13
questions [8]  73/5 80/2 84/23 90/18 97/1 100/20 101/23 102/24
QuickBooks [4]  92/20 93/6 93/18 93/19
quicker [1]  59/18
quickly [1]  62/18
quite [1]  102/11
quoted [3]  6/18 7/5 7/7

**R**

R-e-g-n-i-e-r [1]  12/3
raid [2]  77/15 97/4
raided [2]  77/7 82/25
raise [1]  104/14
raised [1]  9/3
Ramon [2]  4/7 11/6
range [1]  74/19
rather [4]  6/19 7/10 9/19 10/16
reach [1]  21/1

reached [4]  80/2 87/10 87/14 87/19
reaction [4]  75/6 75/6
read [13]  13/17 26/13 34/17 40/13 66/17 67/2 76/21 82/11 85/25 86/12 87/11 102/22 102/25
readily [3]  56/14 56/16 56/18
reading [1]  70/5
reads [1]  6/22
Reagan [1]  2/10
real [2]  40/17 62/18
reality [1]  88/7
really [4]  20/22 75/18 76/7 83/24
reason [2]  5/8 10/2 43/20 58/9 82/11 89/18 99/23 99/24
reasonable [1]  7/1
recall [19]  14/10 14/14 19/7 75/18 76/7 76/11 76/20 76/24 77/1 77/14 79/15 91/10 91/21 91/24 92/1 92/3 94/3 94/19 95/9
recap [1]  44/24
receive [6]  20/4 31/8 72/12 73/3 75/16 98/17
received [52]  3/7 3/19 6/4 12/21 13/5 13/7 13/22 18/1 19/1 23/1 23/2 26/4 26/5 28/14 28/15 30/21 30/22 33/19 35/13 35/17 35/22 35/23 37/9 40/1 40/2 42/5 42/7 44/18 44/19 48/1 48/1 48/3 49/1 51/24 53/11 53/12 53/14 60/11 60/13 65/21 65/23 66/22 66/24 68/25 69/1 69/2 72/14 75/9 75/11 75/19 75/21 106/10
receiving [2]  38/21 68/6
recent [1]  28/24
recess [3]  10/22 10/24 60/20 61/1 104/4 105/2 105/3
recognize [3]  28/2 31/1 86/22
recollection [20]  84/1 84/19 85/2 86/14 87/5 89/9 89/11 89/13 91/16 93/13 94/25 95/6 95/24 99/20 100/11 100/25 101/7 101/11 101/22 102/20
recommendations [1]  4/15
record [4]  5/1 22/22 90/1 104/11
records [13]  13/21 18/15 18/19 18/20 18/23 21/7 23/1 92/18 92/24 95/18 95/19 97/24 101/5
RECROSS [2]  3/4 3/16
redacted [4]  32/23 32/24 33/11 33/20
redaction [1]  33/13
REDIRECT [3]  3/4 3/16 12/7
ref [5]  48/18 48/20 48/22 50/22 55/12
reference [8]  48/25 51/9 51/13 55/14 62/19 62/21 63/17 63/21
referred [1]  6/8
referring [1]  62/22
refresh [10]  84/1 85/7 86/13 87/4 87/6 91/15 94/25 95/24 99/20 102/20
refreshed [1]  93/13
refreshing [4]  84/19 89/9 89/10 100/11
regard [5]  4/14 6/5 8/23 9/5 18/14
regardless [1]  11/14
register [1]  41/4
registered [1]  81/3
REGNIER [28]  3/5 11/22 11/23 12/3 12/6 34/6 61/7 65/25 69/4 73/13 76/5 80/18 81/2 81/23 85/2 86/19 87/11 88/10 89/21 90/3 90/11 90/19 91/20 97/7 97/16 102/17 102/22 103/18
regulations [1]  106/12
reimbursed [1]  72/23
reiterate [1]  10/15
related [4]  35/8 43/22 50/9 95/19
relating [8]  17/2 74/4 79/19 90/19 92/18 94/16 99/6 104/14
relation [1]  68/3
relationship [2]  22/3 54/13
release [2]  40/15 54/16
relevance [5]  74/12 80/9 89/13 89/14 89/16
relevant [6]  6/13 89/15 89/17 90/20 99/14 104/21
rely [1]  93/21
remaining [1]  67/5
remember [9]  50/6 60/21 74/25 78/23 83/25 93/8 93/10 93/12 104/5
reminded [1]  11/23
remote [2]  40/19 40/25

**R**

repayment [1] 34/22
repeated [1] 66/21
rephrase [1] 17/15
replied [1] 55/17
replies [1] 56/6
reply [6] 49/10 49/22 50/17 50/19 55/9 56/21
report [1] 69/12
reported [1] 106/9
REPORTER [1] 106/17
REPORTER'S [1] 1/15
representation [2] 84/12 85/11
representations [1] 82/15
representatives [1] 87/17
represented [4] 43/17 67/25 85/3 85/5
representing [1] 21/25
request [4] 6/1 13/16 14/5 50/7
requested [12] 7/11 7/16 13/18 14/22 14/24
18/5 18/21 38/8 58/4 62/16 63/9 64/13
requesting [4] 12/17 17/20 36/23 37/1
requests [1] 80/19
require [1] 4/15
required [3] 6/10 11/14 66/25
requiring [1] 5/2 5/4
research [2] 60/24 104/8
residence [1] 95/15
resolved [2] 54/4 54/23
respect [1] 9/13
respond [1] 17/14
responded [1] 49/15
response [9] 14/5 18/2 49/10 50/16 55/8
56/20 68/1 68/3 91/14
result [1] 55/22
resumed [2] 10/25 61/2
retrieved [1] 94/7
returned [2] 40/23 94/19
review [1] 67/16
revisit [1] 9/9
Richard [2] 102/9 103/4 103/10 103/13
103/21 103/24
rifling [1] 80/13
right [33] 5/3 5/5 8/12 10/5 10/7 10/8 20/11
20/19 23/13 24/21 29/12 34/1 50/3 54/15
61/25 61/25 75/14 80/24 81/6 81/13 83/23
88/10 88/21 89/2 93/6 93/22 94/17 95/15 96/6
96/17 101/23 102/6 102/10
rights [1] 5/16
Roberson [2] 103/2 103/19
Robert [1] 79/5
Ronald [1] 2/10
room [3] 14/17 79/17 79/18
row [2] 30/1 34/14
RPR [1] 1/19
rule [18] 6/12 6/17 6/19 6/21 6/22 7/5 7/7 7/12
7/20 8/2 8/3 8/4 8/5 8/11 8/22 8/23 9/12 9/12
Rule 29 [1] 9/12
ruled [1] 33/8
rules [2] 7/4 11/13
runaround [4] 50/25 51/18 51/19 51/21

**S**

SACR [3] 1/11 4/3 11/2
SACR-19-00061-JVS [3] 1/11 4/3 11/2
SAGEL [32] 2/9 4/5 10/13 11/4 11/20 12/4
17/14 17/23 33/15 61/4 79/2 79/24 80/12
80/19 83/4 83/6 83/9 83/11 83/21 84/20 85/3
85/11 91/4 91/9 91/10 91/21 92/4 95/3 100/1
101/8 103/2 103/18
said [31] 17/4 20/6 20/10 20/12 21/20 34/19
46/24 49/11 50/3 50/11 50/15 55/10 55/21
57/1 57/4 70/4 75/15 76/25 77/18 79/19 81/8
81/24 83/17 85/16 91/14 93/9 95/25 96/4 96/5
96/21 102/11
salaried [1] 71/9
salary [5] 71/10 72/14 72/18 72/21 73/2 74/19
same [16] 5/19 14/3 20/7 23/10 24/16 25/4
29/23 30/17 30/20 31/20 35/6 38/8 42/13
43/24 63/11 67/3
San [1] 2/16

Santa [4] 1/16 1/20 2/11 4/1
sat [2] 35/3 106/17
saw [2] 25/8 78/13
say [39] 15/15 15/20 16/19 17/2 18/10 19/6
20/5 20/8 20/11 21/22 22/12 27/14 36/12
40/24 41/9 45/14 48/16 50/9 50/19 54/13
55/20 56/11 56/23 57/3 61/25 63/10 63/13
63/13 69/7 70/3 76/21 78/11 84/5 86/3 96/17
96/19 98/16 99/4 99/5
say in [1] 63/10
saying [1] 54/5
says [19] 6/22 21/6 23/5 23/20 24/16 33/14
34/9 34/11 34/15 48/24 50/12 51/2 54/5 54/21
62/7 62/19 66/5 88/13 99/22
scapegoat [1] 57/5
scared [1] 81/3
scheduling [1] 101/9
scope [1] 96/22
SE [1] 2/14
search [5] 77/19 77/22 81/9 81/12 81/12
searching [1] 80/19
second [8] 13/16 19/17 24/15 26/19 29/6
34/14 38/16 77/19
section [9] 2/6 23/19 23/24 42/15 43/3 52/6
62/18 88/11 106/7
secure [1] 79/12
security [1] 78/13
see [27] 4/14 19/1 23/6 24/1 24/21 29/13 30/1
31/24 34/12 43/9 43/25 49/17 53/19 55/12
56/7 59/4 61/13 69/14 78/5 84/1 84/24 86/13
88/13 94/25 95/22 95/23 104/9
seeks [3] 16/3 17/12 17/21
seemed [1] 10/2
seen [2] 59/21 86/19
SEFFENS [3] 1/19 106/16 106/17
SELNA [1] 1/8
send [25] 12/11 13/19 14/4 14/5 18/5 19/12
27/10 27/12 30/12 36/9 37/4 38/20 39/8 43/13
46/24 49/7 54/24 56/3 57/25 58/1 58/2 58/4
58/6 59/8 66/1
sending [13] 26/17 26/22 26/24 28/18 28/22
45/2 54/15 54/17 62/14 63/7 64/11 64/18 65/5
sends [1] 50/17
sent [55] 17/10 17/20 19/14 25/15 25/23
26/13 28/4 28/8 29/21 29/24 34/6 34/17 34/18
34/22 36/14 37/10 38/14 38/20 38/24 39/18
39/20 40/7 44/10 44/12 48/13 49/4 51/4 51/14
51/15 54/7 54/10 54/18 58/13 58/18 58/21
59/11 59/23 60/1 60/5 61/11 61/18 61/24 62/1
64/1 65/1 65/11 65/15 66/5 66/9 66/12 66/13
67/16 67/23 67/23 69/25
sentence [1] 36/11
separate [1] 58/13
September [9] 23/22 24/4 24/24 25/7 26/9
28/19 29/13 31/19 32/9
September 15th [1] 23/22
September 18th [6] 24/4 24/24 25/7 26/9
29/13 31/19
September 2017 [1] 32/9
September 21st [1] 28/19
server [2] 100/3 100/4
set [13] 22/8 23/16 23/18 23/21 27/8 37/6
102/8 103/3 103/6 103/9 103/15 103/20
103/23
settlement [32] 12/15 13/20 14/6 14/11 15/21
17/3 18/15 18/16 20/4 20/9 21/13 24/3 29/19
29/9 37/3 37/20 37/24 38/13 39/1 45/8 45/9
52/7 62/9 62/12 72/11 87/15 87/21 88/2 88/7
88/7 89/6 90/2
settling [4] 87/16 88/8 88/22 89/6
seven [10] 45/20 46/6 47/1 83/5 90/24 95/14
96/6 96/24 97/2 101/18
several [4] 6/4 66/15 66/20 76/19
severance [1] 33/6
SHARON [3] 1/19 106/16 106/17
she [10] 17/24 21/19 21/23 21/24 66/24 70/17
85/8 89/12 89/12 91/1
she's [2] 104/17 104/19
shed [1] 104/20

sheet [1] 27/10
shield [14] 4/17 4/19 4/24 5/1 5/8 5/23
9/19 10/16 11/16 11/19
shields [4] 5/24 5/25 6/2 11/15
shirt [1] 78/1
shocked [1] 80/5
shortly [1] 17/6
should [6] 18/8 32/24 56/13 67/23 80/23
83/23
show [2] 85/16 85/18
showed [1] 80/6
shows [1] 63/15
shredded [2] 97/21 97/22
side [5] 10/5 24/21 29/12 61/25 62/3
sidebar [1] 33/4
sign [1] 22/11
signatories [1] 22/13
signature [1] 31/1
signatures [1] 87/16
signed [9] 12/11 12/15 13/20 14/4 14/6 22/12
31/14 82/4 87/15
since [4] 10/4 81/15 82/6 100/23
single [4] 75/9 75/12 75/13 75/16
sir [6] 8/17 9/4 9/11 90/5 102/19 104/17
sit [6] 65/2 78/7 78/9 94/18 99/2 101/14
sitting [1] 91/8
situation [5] 102/9 103/3 103/9 103/21
103/23
six [12] 50/25 51/18 51/19 51/21 63/8 83/5
90/24 95/14 96/6 96/23 97/2 101/18
skip [1] 24/7
Slingshot [1] 6/6
slipped [1] 16/18
so [41] 12/9 16/19 16/22 18/25 19/3 20/18
27/8 27/10 31/8 31/20 32/14 35/4 38/25 41/4
45/12 48/5 49/6 49/21 50/12 53/22 54/10
54/17 55/12 56/2 56/12 61/8 61/18 62/11
62/17 62/21 70/11 70/15 70/24 83/23 84/12
86/11 94/8 94/14 101/21 101/22 104/9
some [13] 14/13 19/9 22/2 33/6 35/10 42/23
77/25 77/25 85/6 85/9 94/19 97/20 103/23
Somebody [1] 77/16
something [5] 54/3 54/21 69/12 91/24 104/24
sometime [1] 8/13
Sometimes [1] 27/8
somewhere [2] 50/24 51/18
soon [2] 38/18 55/22
sorry [5] 8/1 24/15 37/18 49/20 61/15
sought [1] 17/17
SOUTHERN [1] 1/6
speak [5] 78/15 78/22 79/5 83/23 85/12
speaking [1] 91/9
Special [11] 4/7 11/6 78/24 79/23 81/15 81/24
82/16 91/11 95/20 99/25 100/1
specific [4] 87/5 97/1 99/14 100/25
specifically [3] 16/19 38/18 100/15
specifics [1] 22/9
speculation [6] 21/12 35/1 47/4 54/25 70/20
71/2
spike [1] 5/12
split [2] 58/9 58/12
spoke [5] 83/1 96/12 96/24 100/6 101/8
spoken [1] 51/23
spread [1] 10/4
Spring [1] 2/7
stand [3] 64/7 69/15 100/24
standard [1] 68/1
start [15] 23/4 23/4 26/7 28/17 36/11 40/4
43/6 48/5 49/24 53/16 55/20 66/12 69/4 74/23
77/15
started [2] 74/6 76/3
Starting [1] 29/16
starts [1] 66/15
state [3] 12/1 42/11 66/5
stated [4] 37/20 92/1 92/3 103/6
statement [3] 23/20 25/5 88/11
statements [1] 25/9
states [16] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
4/4 4/6 11/3 11/5 80/1 88/6 106/8 106/12

**S**

stating [2] 17/10 87/10
status [1] 11/15
stealing [4] 70/8 70/12 70/17 70/25
stenographically [1] 106/9
stick [1] 70/16
still [8] 11/24 20/17 21/6 66/24 67/11 94/13 95/15 97/20
storage [2] 98/24 98/25
Stormy [1] 98/14
Street [3] 1/20 2/7 2/11
strike [4] 18/13 83/10 96/5 100/13
Studies [1] 73/20
subject [11] 13/15 26/10 28/20 33/12 40/7 44/23 53/19 53/22 64/5 66/3 69/9
submission [2] 104/17 104/23
submitted [2] 60/23 104/7
subsequent [2] 41/19 55/17
substantial [1] 81/17
substantive [1] 9/4
success [2] 75/23 76/24
sued [2] 85/22 90/9
sufficient [2] 22/25 42/6 90/16
suit [1] 87/12
Suite [3] 1/20 2/11 2/16
suits [1] 104/19
Sulmeyer [4] 43/11 43/14 43/16 43/21
sure [18] 4/25 11/12 19/15 20/24 41/6 41/19 69/13 75/18 77/2 77/9 85/6 89/17 91/13 93/20 95/3 99/11 101/14 102/3
Sustained [8] 15/23 74/13 79/10 79/21 80/10 80/16 82/13 90/15
Sutcliffe [1] 66/10
SWORN [2] 11/22 12/6
system [6] 8/10 14/17 18/22 40/20 93/2 101/5

**T**

t's [1] 13/15
table [2] 4/7 11/6
Tabs [11] 92/21 92/23 92/24 93/6 93/14 93/17 93/18 93/19 100/16 100/20 101/1
take [13] 6/17 32/16 32/17 33/4 50/15 60/14 60/17 77/3 86/4 87/9 94/13 102/2 104/19
taken [5] 10/24 61/1 90/16 91/13 105/3
takes [1] 17/24
taking [4] 32/5 57/4 100/24 102/4
talk [7] 16/11 18/7 19/24 20/20 67/24 69/25 80/23
talked [5] 32/4 42/25 80/25 100/23 101/17
talking [6] 24/17 29/9 32/15 45/7 62/11 91/22
target [1] 82/22
tax [4] 34/18 34/20 34/25 43/23
taxes [1] 34/22
technology [1] 11/10
tell [21] 20/24 39/7 40/21 49/4 50/3 51/3 51/15 54/8 58/5 58/14 58/18 58/21 61/22 64/20 76/1 76/5 79/4 89/16 91/22 92/17 95/9
telling [3] 50/1 65/3 91/10
ten [2] 40/22 44/25
terms [2] 5/14 37/11
terrified [1] 81/6
testified [2] 70/24 90/23
testifies [1] 4/18
testimony [6] 4/22 5/7 85/8 85/19 90/1 100/21
text [1] 7/11
than [9] 7/10 9/19 10/16 45/14 51/6 72/18 72/21 72/25 75/4
thank [11] 11/21 12/5 55/13 60/12 61/5 73/7 76/12 76/20 76/21 98/1 98/18
thank-you [4] 76/12 76/20 98/11 98/18
thankful [2] 76/1 76/6
Thanks [3] 48/19 54/4 55/10
that [399]
that's [45] 5/23 6/21 8/10 8/11 8/14 11/17 11/17 13/25 16/22 22/1 24/19 25/4 25/6 25/10 29/7 29/9 30/17 33/3 33/4 40/4 46/13 52/16 56/1 56/3 58/1 61/17 62/9 63/17 70/19 75/15 85/12 87/10 87/17 88/3 88/16 89/1 89/8

90/25 91/13 95/19 99/5 99/22 102/11 103/25
them [2] 17/13 20/11 20/18 40/23 40/24 41/5 41/6 41/7 69/12 84/6 85/25 85/25 86/7
them [43] 10/4 14/24 22/9 27/8 38/14 38/14 39/8 58/4 58/12 58/13 59/18 64/24 77/19 78/14 79/15 80/24 80/25 81/21 91/23 92/6 92/20 94/20 96/10 96/11 96/13 96/15 96/17 96/20 96/20 97/7 97/18 97/19 97/22 98/5 98/8 99/12 100/6 100/23 101/22 102/4 102/8 103/8 103/25
then [36] 5/9 8/23 10/22 12/10 26/12 29/1 30/1 36/17 41/13 43/2 43/24 44/25 46/6 50/11 50/16 54/7 54/21 62/17 63/15 63/24 66/5 67/8 74/6 77/20 78/8 78/9 82/6 83/18 85/5 94/22 96/1 101/11 102/3
there [74] 6/19 9/15 15/25 16/17 18/16 19/2 22/2 29/1 29/3 34/11 34/14 34/17 34/24 36/17 36/21 37/23 37/25 38/23 39/10 39/11 41/7 41/10 41/11 42/16 43/3 43/25 44/25 45/14 45/19 45/21 46/7 46/9 46/17 46/19 50/23 51/3 51/13 51/17 52/6 52/11 52/13 55/14 55/16 56/4 57/9 57/10 57/22 58/9 59/8 59/10 59/14 59/16 62/18 64/17 64/21 64/24 65/6 72/7 76/18 76/19 77/9 77/12 79/2 81/5 81/10 84/22 93/9 94/6 97/20 98/15 98/16 99/2 99/6 99/6
thereafter [3] 17/25 38/18 38/22
therefore [1] 104/21
these [20] 5/3 5/13 26/19 26/22 26/25 27/2 29/12 30/12 32/9 32/14 37/10 38/8 53/22 57/13 59/23 60/1 60/4 64/16 64/23 65/15
they [77] 5/15 14/21 15/10 17/10 18/5 21/15 22/10 22/14 22/18 27/10 37/14 38/1 38/3 40/19 40/21 40/24 40/25 41/4 41/5 43/17 43/18 43/19 45/24 46/2 46/5 50/21 57/14 59/25 60/3 77/18 77/18 77/20 77/21 77/21 77/22 77/24 78/2 78/6 78/7 78/8 78/9 78/10 78/11 78/15 78/19 78/19 78/20 79/13 79/16 79/19 80/4 80/20 80/21 81/8 81/10 81/11 83/14 83/17 83/17 83/18 83/18 83/19 83/19 86/3 86/3 86/9 89/19 92/20 93/6 94/10 94/12 94/14 94/19 96/22 97/3 101/10
they're [3] 5/9 14/21 90/20
things [14] 17/4 19/9 33/6 41/20 45/1 80/12 80/18 83/9 83/21 87/1 92/12 98/12 104/19 104/23
think [20] 5/2 5/4 7/25 8/12 9/23 11/16 21/15 49/13 60/14 60/17 76/23 81/8 84/22 85/19 90/23 91/13 92/23 94/9 97/23 104/3
thinking [1] 75/17
third [2] 24/7 100/9
this [165]
those [27] 5/9 27/13 29/23 38/16 40/18 45/3 45/22 45/25 46/3 46/6 47/1 53/1 72/2 72/5 72/9 72/12 79/4 86/3 86/10 95/17 96/1 96/9 96/21 97/3 99/4 100/16 100/19
thought [2] 8/8 93/11
three [10] 24/21 30/1 36/6 39/13 43/3 59/21 61/8 64/16 70/14 102/5
three million [1] 59/21
through [9] 9/7 9/8 52/11 52/16 54/8 55/11 80/13 91/7 97/3
throughout [1] 75/19
time [67] 6/13 6/20 7/1 7/9 7/12 8/5 8/18 9/12 10/18 13/2 18/11 18/12 18/12 18/24 18/25 20/5 20/15 21/6 21/10 21/16 22/14 22/16 25/25 27/4 27/7 28/10 35/6 35/7 38/15 39/23 41/3 41/9 44/15 47/21 50/13 50/14 54/13 55/15 56/5 56/19 56/25 60/7 61/5 63/7 65/5 65/7 65/7 65/17 68/22 70/10 71/7 73/15 76/11 76/12 79/8 83/14 89/5 90/16 90/21 95/10 95/11 96/12 98/1 100/22 100/23 102/4
times [5] 5/11 83/3 90/24 91/5 102/5
Timeslips [1] 93/11
timestamps [1] 49/17
timing [1] 9/5
title [3] 42/9 42/10 106/8
today [5] 11/10 33/24 36/14 40/9 99/2
today-tomorrow [1] 40/9

together [2] 59/18 75/25
told [33] 14/14 14/22 15/7 15/7 15/17 78/22 80/12 80/19 81/16 81/21 82/22 83/9 83/21 84/20 85/24 88/24 92/12 92/20 95/11 95/14 96/1 96/15 98/4 98/8 100/15 102/1 102/4 102/8 103/1 103/8 103/18 103/25
tomorrow [1] 40/9
ton [1] 95/19
tonight [2] 40/19 40/25
took [11] 8/12 10/2 11/24 18/2 27/8 31/21 77/21 79/16 80/23 83/17 97/24
top [12] 13/25 24/5 26/7 28/17 30/24 34/9 48/5 49/16 53/16 61/25 62/18 69/8 88/13 100/9
topic [1] 101/18
totaled [1] 57/22
towards [2] 15/13 15/15
trace [5] 55/11 55/22 55/25 56/4 56/12
track [3] 21/7 50/21 51/2
tracking [2] 56/12 82/16
Tran [50] 26/16 28/23 28/24 29/16 29/17 36/3 36/4 36/6 36/9 36/18 36/23 37/5 37/9 38/8 38/13 38/20 38/23 45/5 45/6 45/10 45/23 46/8 46/10 46/13 46/20 46/23 46/25 48/7 48/14 48/16 50/17 50/19 51/7 51/19 51/24 53/17 54/10 54/18 55/9 55/17 55/20 55/24 56/6 56/11 57/16 58/14 58/18 65/3 65/7 66/21
Tran's [3] 48/10 49/10 56/20
transactions [1] 32/9
transcript [4] 1/9 1/15 106/9 106/11
transfer [11] 43/21 43/25 44/2 48/13 59/14 63/21 64/7 64/15 64/17 82/2 103/6
transfers [18] 27/20 29/14 30/8 32/14 43/3 45/20 45/22 45/25 46/6 46/17 47/1 58/24 59/11 64/21 64/25 69/24 72/11
transmitting [1] 82/4
trashed [1] 96/2
trial [3] 1/12 5/4 100/20
trs [1] 89/22
true [14] 75/6 80/21 81/18 85/23 86/3 86/10 87/11 87/17 87/20 102/17 103/1 103/18 103/25 106/8
trust [26] 6/15 6/20 22/8 23/9 23/9 24/19 29/9 37/3 37/24 38/13 41/23 42/12 42/19 42/23 42/25 43/11 45/5 45/6 45/10 45/12 45/13 46/7 59/15 66/25 67/12 68/24
trustee [4] 34/18 34/20 34/23 34/25
truth [7] 13/5 13/6 18/1 48/1 53/12 91/23 102/2
truthful [2] 92/9 92/10
try [1] 78/18
trying [2] 51/2 53/25
turn [4] 24/14 37/17 45/16 57/6
Turning [2] 29/4 42/15
tweet [1] 6/5
Twitter [1] 6/6
two [33] 6/4 21/4 21/4 25/7 25/8 29/23 30/4 30/6 30/8 34/14 37/23 43/24 48/1 48/13 49/7 53/1 53/5 57/8 57/9 57/11 57/22 58/2 58/4 58/13 58/21 59/1 64/21 64/24 77/19 79/4 96/14 101/6 104/15

**U**

U.S [3] 79/24 100/1 106/17
under [6] 11/24 18/17 23/5 23/8 37/14 70/24
underlined [1] 67/2
understand [13] 8/20 20/22 23/16 23/21 31/5 36/15 49/25 51/14 50/7 70/7 84/2 100/22 104/22
understanding [7] 20/1 31/11 42/24 63/20 69/11 70/5 84/9
understood [7] 9/10 9/14 9/21 33/10 75/22 81/11 84/13
undue [1] 90/21
uniforms [1] 77/25
UNITED [15] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/4 4/6 11/2 11/5 80/1 106/8 106/12
unjustified [1] 66/20
unless [2] 14/23 84/12

## U

**unregistered [1]** 79/7
**unsure [1]** 91/24
**until [10]** 10/22 40/16 41/4 41/7 60/23 74/20 75/6 82/17 104/5 104/7
**up [26]** 10/2 10/23 12/10 22/8 23/16 23/18 23/21 27/8 33/4 37/6 55/18 55/8 58/9 58/12 77/20 80/6 94/10 96/17 101/19 102/8 103/3 103/6 103/9 103/15 103/20 103/23
**up this [1]** 58/9
**upset [1]** 16/23
**urgent [2]** 50/23 55/13
**us [10]** 11/10 22/10 32/5 61/22 71/21 73/16 75/1 82/3 82/5 83/10
**use [3]** 5/8 5/18 64/23
**used [3]** 33/24 93/10 100/16
**uses [1]** 40/20
**using [2]** 7/11 87/4
**usually [1]** 40/17

## V

**vaccinated [1]** 4/16
**vaccination [1]** 11/14
**value [1]** 90/16
**variant [1]** 5/13
**various [5]** 30/12 45/3 46/6 47/2 82/2
**versus [3]** 4/4 11/3 13/19
**very [11]** 31/24 48/5 50/23 55/13 69/14 76/3 76/7 80/12 80/18 101/10 105/1
**via [1]** 55/11 87/14
**view [1]** 6/9
**views [1]** 10/3
**violation [2]** 5/3 5/5
**virtually [1]** 5/19
**VOL [1]** 1/12
**vs [1]** 1/10

## W

**wait [2]** 77/19 96/12
**waived [3]** 83/22 84/13 85/4
**waiver [1]** 84/20
**walked [2]** 14/22 14/23
**want [16]** 10/1 10/9 10/11 10/14 17/14 40/16 54/4 54/22 76/23 77/3 78/19 78/20 85/17 91/8 96/20 104/13
**wanted [8]** 27/4 50/4 54/24 56/3 58/13 76/21 94/12 96/1
**wants [4]** 5/21 5/23 54/6 85/15
**warrant [9]** 77/18 77/23 79/8 79/13 81/9 81/12 81/17 83/19 96/22
**was [164]**
**wasn't [3]** 20/10 33/23 75/7
**way [7]** 41/7 49/19 53/18 57/5 58/18 82/17 101/16
**we [77]** 5/21 5/24 7/25 9/24 10/1 10/2 10/4 10/6 10/9 10/13 10/22 11/9 11/15 11/16 12/9 12/9 13/8 14/17 16/16 16/22 18/24 19/4 20/7 24/16 25/4 25/8 26/16 26/24 30/24 31/12 31/16 32/4 33/3 35/6 40/15 41/3 41/9 41/25 42/24 45/7 48/5 50/20 50/24 51/18 54/8 54/15 54/16 55/11 55/12 56/12 60/14 60/17 61/7 61/7 62/11 74/17 75/25 76/3 78/13 85/19 89/9 93/20 96/10 97/21 98/14 98/17 98/24 101/2 101/5 103/14 103/14 104/9 104/11 104/16 105/1
**we'll [4]** 20/19 38/25 60/20 96/17
**we're [6]** 9/24 29/9 32/15 83/2 91/7 93/4
**weapons [1]** 78/5
**wear [6]** 4/16 5/2 5/4 5/21 5/23 11/14
**wearing [7]** 9/19 9/20 9/24 10/7 11/15 11/16 77/24
**WEDNESDAY [2]** 4/1 49/21
**week [4]** 50/21 51/3 51/4 53/25
**weeks [5]** 50/25 51/19 51/19 51/22 66/20
**well [26]** 4/11 20/23 22/1 22/22 25/20 34/1 41/24 47/3 49/19 49/24 56/13 61/21 65/20 68/1 76/7 78/13 79/2 83/9 84/1 86/9 86/13 93/8 96/12 97/19 99/23 101/10
**Wells [2]** 40/18 40/20

**went [6]** 7/12.8/4 22/9 74/21 98/24 98/25
**were [93]** 5/20 5/24 6/18 6/20 16/11 15/16 16/6 18/14 18/16 18/17 18/20 18/24 21/6 22/7 23/13 23/19 23/24 26/19 26/24 27/8 28/20 29/1 30/6 31/5 32/2 37/14 37/23 41/3 43/2 43/18 43/19 45/12 47/18 52/23 53/4 54/8 57/13 57/14 57/15 57/22 58/6 61/7 62/11 62/14 62/22 63/7 64/21 64/24 69/22 71/7 74/18 75/3 75/10 75/22 76/1 76/6 76/9 76/10 76/18 76/19 77/9 77/24 78/22 80/5 80/13 80/19 80/20 81/1 81/6 81/25 82/24 84/13 88/22 91/8 91/21 92/8 92/11 92/18 92/20 92/24 93/5 93/5 93/6 93/8 93/9 96/4 96/6 96/22 97/21 102/1 103/14 103/14 104/20 104/20
**weren't [2]** 41/6 54/15
**West [2]** 1/20 2/11
**what [129]**
**what's [23]** 13/11 24/3 24/7 24/9 24/10 26/7 26/10 28/17 28/20 31/3 35/25 40/5 40/7 42/10 44/23 48/10 63/2 64/3 64/5 69/4 69/9 89/13 89/14
**whatever [1]** 57/5
**when [49]** 9/24 12/9 14/12 15/15 16/11 16/13 22/12 27/14 31/21 34/19 37/9 40/24 41/9 41/9 51/2 51/9 54/5 54/8 54/16 54/17 57/1 62/21 62/24 65/25 72/11 74/23 75/16 76/3 76/9 77/1 78/11 78/16 79/13 81/10 85/2 88/7 89/20 91/8 93/16 96/24 97/21 98/2 98/16 98/17 98/24 98/24 101/3 104/16
**where [9]** 23/5 23/20 39/4 39/6 39/14 44/6 55/12 88/13 101/17
**whether [12]** 14/20 17/6 17/7 18/7 23/19 50/5 72/7 80/20 82/20 82/24 88/3 104/20
**which [21]** 6/8 7/5 7/20 7/21 12/10 19/15 24/16 28/4 32/20 41/22 42/22 49/19 53/5 66/24 66/25 67/15 74/6 78/23 87/16 87/22 99/2
**while [6]** 7/3 27/8 75/9 76/11 98/10 104/18
**who [23]** 6/3 13/13 13/13 14/24 15/2 15/2 15/4 15/6 21/18 27/17 36/2 36/4 36/9 36/15 37/7 43/9 43/16 53/16 71/10 72/1 72/7 78/22 97/22
**whole [2]** 15/16 72/7
**why [30]** 14/2 14/8 14/19 16/19 16/22 19/6 21/22 26/22 46/22 46/22 49/1 49/17 50/14 51/24 55/24 56/2 56/18 57/25 58/2 58/12 61/21 62/14 63/7 64/11 67/21 69/17 85/12 92/23 93/19 94/11
**wife [2]** 86/24 88/25
**will [47]** 4/18 7/19 7/20 8/18 9/18 10/1 10/22 11/13 13/5 17/15 18/1 23/1 26/4 26/15 28/14 30/1 30/21 33/15 33/19 35/22 40/1 40/18 40/21 40/24 42/5 44/18 47/25 48/1 50/12 50/17 51/13 53/12 55/22 59/17 60/10 60/14 60/17 65/21 68/1 68/25 85/20 89/25 95/3 104/4 104/9 104/24 105/1
**William [1]** 72/5
**willing [2]** 96/4 96/6
**wire [95]** 25/2 26/11 26/20 26/22 27/5 27/9 27/20 27/23 28/21 29/14 29/17 30/8 32/14 36/13 36/17 36/20 36/21 37/6 38/14 39/2 39/4 39/10 40/17 41/16 42/21 42/22 42/24 43/7 43/8 43/9 43/10 43/14 43/21 45/18 45/20 45/22 45/25 46/3 46/6 46/8 46/10 46/17 46/20 46/21 46/23 47/1 48/13 48/19 48/23 48/25 49/1 49/4 49/7 49/15 50/22 51/2 51/3 51/14 51/15 51/24 53/21 53/22 54/2 54/9 54/15 54/16 54/24 55/10 56/4 56/15 56/19 58/7 58/10 58/24 59/1 61/23 62/1 62/4 62/11 62/15 62/21 62/24 63/11 63/18 63/21 64/6 64/7 64/15 64/17 64/21 64/24 66/23 69/24 72/11
**wired [6]** 36/23 37/1 38/15 39/14 46/13 58/14
**wires [30]** 24/1 24/3 24/21 25/7 25/8 26/24 27/10 27/12 29/12 30/1 30/4 30/6 30/12 31/17 31/20 32/4 37/20 37/24 38/17 39/8 56/18 57/9 57/11 57/13 57/22 58/2 58/4 58/13 58/22 63/20
**wish [1]** 85/17

**withdraw [2]** 6/14 7/15
**withdrawal [1]** 7/5
**withdrawals [1]** 9/13
**withdrawn [1]** 7/1
**witness [29]** 4/18 4/18 4/23 5/18 5/19 11/22 12/6 12/20 18/2 25/12 35/12 38/19 39/17 44/9 45/17 47/10 52/3 52/20 57/7 59/3 59/20 63/25 65/10 68/16 86/17 91/18 99/18 102/14 102/25
**witness's [1]** 91/16
**witnesses [3]** 3/4 3/16 9/8
**witnesses' [1]** 4/20
**won't [2]** 40/15 40/22
**wonderful [1]** 76/22
**word [2]** 4/14 67/9
**work [3]** 17/4 50/12 74/16
**worked [7]** 15/9 71/7 74/17 75/25 91/11 92/1 98/10
**working [6]** 20/6 75/10 76/1 76/6 76/9 76/11
**world [1]** 76/23
**worn [1]** 5/20
**would [53]** 5/1 5/8 5/10 6/3 9/15 10/6 11/16 14/16 14/19 14/23 17/5 20/6 20/24 22/2 27/7 31/16 31/12 33/20 35/8 41/3 41/8 41/21 44/4 44/8 45/7 46/21 46/22 46/22 46/24 50/15 54/7 54/15 54/16 54/23 55/3 55/4 56/16 62/24 63/1 67/2 68/13 68/14 70/4 71/1 76/12 80/25 93/16 93/17 93/18 93/19 98/3 98/17 98/18
**write [4]** 40/13 53/24 56/1 56/2
**writes [1]** 36/11
**written [3]** 53/1 104/17 104/23
**wrong [2]** 65/6 95/4
**wrote [6]** 13/17 26/14 47/15 47/19 53/5 68/20
**WYMAN [3]** 2/5 4/6 11/5

## X

**Xanax [1]** 102/5

## Y

**yeah [4]** 22/14 31/7 49/19 95/23
**year [6]** 58/6 73/25 74/23 74/25 88/9 98/3
**years [5]** 75/19 75/25 76/24 96/14 98/17
**yes [247]**
**yesterday [9]** 6/9 9/3 9/7 11/24 12/9 33/1 93/8 100/21 100/24
**yesterday was [1]** 9/3
**yet [7]** 26/17 31/8 33/23 34/22 34/23 67/10 88/24
**Yorba [1]** 97/24
**you [643]**
**you're [6]** 9/7 10/16 11/24 54/11 61/15 90/17
**you've [1]** 82/24
**your [158]**
**yourself [1]** 102/23

## Z

**Zero [1]** 32/8