UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
                    Plaintiff, )
     vs.                       )
                               )  SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,         )
                    Defendant. )TRIAL DAY 11, VOL. 1
------------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

July 29, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

```
 1    APPEARANCES OF COUNSEL:

 2    For the Plaintiff:

 3    NICOLA T. HANNA
      United States Attorney
 4    BRANDON D. FOX
      Assistant United States Attorney
 5    Chief, Criminal Division
      ALEXANDER WYMAN
 6    Assistant United States Attorney
      Major Frauds Section
 7    1100 United States Courthouse
      312 North Spring Street
 8    Los Angeles, CA  90012
      (213) 894-6683
 9
      BRETT A. SAGEL
10    Assistant United States Attorney
      Ronald Reagan Federal Building
11    411 West Fourth Street, Suite 8000
      Santa Ana, CA  92701
12    (714) 338-3598

13    For the Defendant:

14    MICHAEL JOHN AVENATTI, PRO SE

15    H. DEAN STEWARD, ADVISORY COUNSEL
      H. DEAN STEWARD LAW OFFICES
16    107 Avenida Miramar, Suite C
      San Clemente, CA  92672
17    (949) 481-4900

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1

 2                            I-N-D-E-X

 3

 4   PLAINTIFF'S
     WITNESSES:            DIRECT   CROSS   REDIRECT   RECROSS
 5
     JUDY REGNIER
 6     (Continued)                    23

 7   PLAINTIFF'S
     EXHIBITS:                             MARKED     RECEIVED
 8
     (None)
 9
     DEFENSE
10   WITNESSES:     DIRECT   CROSS   REDIRECT   RECROSS

11   (None)

12   DEFENSE
     EXHIBITS:                             MARKED     RECEIVED
13
     Exhibit 1019                          34
14   Exhibit 1017                          34
     Exhibit 1023                          38
15   Exhibit 1084                          40
     Exhibit 1032                          41
16   Exhibit 1034 (As redacted)           42          90
     Exhibit 381                                       57
17   Exhibit 1037 (As redacted)           84          85
     Exhibit 1036                          88
18

19

20

21

22

23

24

25
```

4

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | SANTA ANA, CALIFORNIA; THURSDAY, JULY 29, 2021, 8:31 A.M.   |
|       | 2  | (Jury not present)                                         |
| 08:31 | 3  | THE CLERK:  Item 1, SACR-19-00061-JVS, United              |
| 08:31 | 4  | States of America versus Michael John Avenatti.           |
| 08:31 | 5  | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel         |
| 08:31 | 6  | and Alexander Wyman on behalf of the United States.  And at |
| 08:32 | 7  | counsel table is Special Agent Ramon Carlos.              |
| 08:32 | 8  | THE COURT:  Good morning.                                  |
| 08:32 | 9  | MR. AVENATTI:  Good morning, Your Honor.                   |
| 08:32 | 10 | Defendant Michael Avenatti present with his advisory       |
| 08:32 | 11 | counsel, Mr. Dean Steward and Ms. Cummings-Cefali.  And Joe |
| 08:32 | 12 | is assisting us on technology.                            |
| 08:32 | 13 | THE COURT:  Good morning.                                  |
| 08:32 | 14 | As requested by the Court, Mr. Avenatti filed a           |
| 08:32 | 15 | copy of Judge Gardephe's opinion at Docket 336.  I reviewed |
| 08:32 | 16 | the relevant passages, and it seems to me it doesn't change |
| 08:32 | 17 | the ground rules I laid down yesterday for further        |
| 08:32 | 18 | examination with regard to the number of times Ms. Regnier |
| 08:32 | 19 | met with the government.                                  |
| 08:32 | 20 | I indicated that on redirect the government could         |
| 08:32 | 21 | establish that at some of those meetings other litigations |
| 08:33 | 22 | or other matters were discussed, and they are entitled to  |
| 08:33 | 23 | establish roughly how much time was spent either on this    |
| 08:33 | 24 | case or on other matters.                                 |
| 08:33 | 25 | I don't see any reason to change the ground rules         |

08:33   1   I laid down yesterday.

08:33   2           MR. SAGEL:  Thank you, Your Honor.

08:33   3           Just for clarification, since I will be the one

08:33   4   and I don't want to run afoul.  For example, with I think

08:33   5   about five of them, almost every question was asked by other

08:33   6   AUSAs and other federal agents and not by anybody here.

08:33   7           Am I allowed to (a) get into those?  Half of those

08:33   8   interviews were by other federal agents and other federal

08:33   9   prosecutors.

08:33   10          THE COURT:  I think we're just going to stick to

08:33   11  other matters.  I think Mr. Avenatti is attempting to

08:34   12  establish the number of times Mr. Regnier met with federal

08:34   13  agents for this case and how much time she spent with them.

08:34   14  I think you're entitled to bring out that there were other

08:34   15  matters discussed and the approximate amount of time spent

08:34   16  on other matters versus this case.

08:34   17          I think that's sufficient to put into perspective

08:34   18  the time Ms. Regnier spent with government representatives

08:34   19  on this case.

08:34   20          MR. SAGEL:  And then also two of those meetings --

08:34   21  I think February 4th and February 5th of 2020 -- were for --

08:34   22  the easiest way to describe them is witness prep or final

08:34   23  prep sessions in advance of testifying I believe the

08:34   24  following day in Mr. Avenatti's other criminal case.

08:34   25          Are we allowed to say that these two meetings,

08:34   1   that there's almost nothing in these reports because there's

08:34   2   just no new information.  Some were prep sessions in advance

08:34   3   of testifying in another matter.

08:35   4           THE COURT:  Sessions devoted to her testimony in

08:35   5   that other matter?

08:35   6           MR. SAGEL:  Yes.

08:35   7           THE COURT:  I think I have laid down the line.  If

08:35   8   there are meetings that dealt with other matters, how much

08:35   9   time was spent on other matters.  I don't think there is a

08:35  10   need to go any further than that.

08:35  11           Mr. Avenatti.

08:35  12           MR. AVENATTI:  Your Honor, I think that your

08:35  13   statements this morning are crystal clear.  I hope they are.

08:35  14   They are clear to me.

08:35  15           THE COURT:  I try to make them clear.

08:35  16           MR. AVENATTI:  And normally Your Honor has no

08:35  17   problem making things clear in my experience.  Obviously

08:35  18   this is a highly sensitive issue.  It has the risk of

08:35  19   significant and --

08:35  20           THE COURT:  Do you disagree with what the Court

08:35  21   has proposed?

08:35  22           MR. AVENATTI:  I don't believe that --

08:35  23           THE COURT:  Do you disagree with what the Court

08:35  24   has proposed?

08:35  25           MR. AVENATTI:  In part, yes.

08:35    1              THE COURT:  Tell me.

08:36    2              MR. AVENATTI:  Your Honor, I don't believe any of

08:36    3    this, that the government is entitled to get into any of

08:36    4    this for the following reason.  There must have been a

08:36    5    reason why the AUSAs from this district were involved in

08:36    6    these meetings and interviews and prep sessions with

08:36    7    Ms. Regnier.

08:36    8              They had to have something to do with this case.

08:36    9    Otherwise, it begs the question why were they there, and

08:36   10    what were they doing there and what was their involvement?

08:36   11              My general questions, Your Honor, were just that.

08:36   12    They were very general.

08:36   13              THE COURT:  But, sir, are you not trying to

08:36   14    establish that Ms. Regnier spent a lot of meetings and a lot

08:36   15    of time with the government either in providing information

08:36   16    or in preparing for her testimony?

08:37   17              MR. AVENATTI:  Yes, sir.

08:37   18              THE COURT:  I think the government is entitled to

08:37   19    put that into perspective if --

08:37   20              MR. AVENATTI:  And I understand the Court's ruling

08:37   21    this morning.  I'm going to respect it.  I'm hopeful the

08:37   22    government is going to respect it.  My point is this, Your

08:37   23    Honor.  I don't want any slip of the tongue or anything of

08:37   24    that nature relating to other criminal charges, other

08:37   25    criminal case, other testimony, anything of that nature,

08:37   1   because it runs the risk of being highly prejudicial in this

08:37   2   case.

08:37   3           THE COURT:  Sir, I think the ground rule I have

08:37   4   laid out reflects that.  The reference will be other

08:37   5   matters, period.

08:37   6           MR. AVENATTI:  And I would like the witness's

08:37   7   counsel advised before she takes the stand that I don't want

08:37   8   to have a slip of the tongue by the witness that, you know,

08:37   9   all of a sudden she blurts out something about --

08:37   10           THE COURT:  With your agreement, the government

08:37   11   shall advise her of the Court's ruling.  That's in deference

08:37   12   to my earlier indication that there be no substantive

08:37   13   discussion with the witness from the time the witness takes

08:38   14   the stand until the witness completes his or her testimony.

08:38   15   But, fine, let's make sure she understands the Court's

08:38   16   ruling.

08:38   17           MR. AVENATTI:  And, Your Honor, in light of Your

08:38   18   Honor's ruling, I will state that I may bring it out on

08:38   19   cross.  Otherwise, I would not do that in light of -- if

08:38   20   Your Honor would have held differently, I would not be doing

08:38   21   that, but now I may.

08:38   22           THE COURT:  Well, sir, I have laid down the ground

08:38   23   rules for the government.  If you wish to expand the scope

08:38   24   of the testimony going beyond what the Court is going to

08:38   25   allow the government to do, so be it, but that may open the

08:38  1    door with an increasing degree with respect to what further

08:38  2    went on in those meetings.  It's your call.

08:38  3            MR. AVENATTI:  Your Honor, I'm not proposing to

08:38  4    expand this.  I'm just proposing to potentially hang a

08:38  5    lantern on it, as they say.  But I haven't decided yet.

08:38  6    I'll just note that the only reason I would do that is in

08:39  7    light of the Court's ruling and in light of Mr. Sagel's

08:39  8    statements that he plans on getting into it.

08:39  9            THE COURT:  No, no, no, no.  He stated his

08:39  10   intentions and the Court told him what the ground rule was.

08:39  11   A lantern may light more than you intend.  Let's see what

08:39  12   lantern you put on this.

08:39  13           Let's move on.  I invited a submission yesterday

08:39  14   with regard to the Court's curtailing cross-examination with

08:39  15   regard to private suits brought by Mr. Johnson and

08:39  16   Mr. Barela.

08:39  17           I believe that the interrogation with regard to

08:39  18   the Johnson civil suit was sufficient for the defendant to

08:39  19   argue the prejudice therein, namely, that it's in

08:39  20   Ms. Regnier's interest to facilitate a conviction here with

08:39  21   the thought that it may reduce her civil liability in that

08:40  22   case.

08:40  23           With regard to Mr. Barela, I think there were only

08:40  24   two questions that I permitted, and then I told Mr. Avenatti

08:40  25   to move on to another line of questioning.  I think you are

08:40  1  entitled to go back to the Barela lawsuit and establish she
08:40  2  was a defendant and briefly what the allegations were
08:40  3  against her.  I agree that that could have a facially valid
08:40  4  theory of prejudice that would justify that inquiry.
08:40  5          MR. AVENATTI:  Your Honor, I appreciate the
08:40  6  Court's ruling.  I'm going to check the transcript.  I am
08:40  7  probably wrong about this, but I think I actually started
08:40  8  with the Barela case and you granted me some latitude, and
08:40  9  then I went to Johnson and you --
08:40  10         THE COURT:  I may have it backwards, but --
08:40  11         MR. AVENATTI:  Okay.  Whatever the second case
08:40  12  was, whether it was Barela or Johnson --
08:40  13         THE COURT:  You were curtailed, yes.
08:40  14         MR. AVENATTI:  Okay.  And now you're permitting me
08:40  15  to go back there?
08:40  16         THE COURT:  Briefly into what the allegations are
08:41  17  against Ms. Regnier.
08:41  18         MR. AVENATTI:  I just want to make sure that I
08:41  19  understood, Your Honor.
08:41  20         THE COURT:  Okay.
08:41  21         MR. AVENATTI:  Thank you.
08:41  22         THE COURT:  Anything else at the moment?
08:41  23         MR. SAGEL:  Very briefly.  Again, just so I make
08:41  24  sure I'm clear, I was only referencing the other matter in
08:41  25  New York, but the defendant also talked about the five hours

08:41   1   of the first meeting and the eight hours of the second

08:41   2   meeting.  I'm also permitted to say that most of that time

08:41   3   in those meetings were on other matters here?

08:41   4           THE COURT:  No.  You are prevented from asking

08:41   5   that question.  I don't think you expressed what you

08:41   6   intended to express.  I think you are entitled to inquire as

08:41   7   to how much of the time was spent on other matters.  You are

08:41   8   not entitled to say --

08:41   9           MR. SAGEL:  Yes, Your Honor, that I am entitled to

08:41  10   ask that?

08:41  11           THE COURT:  Right.

08:41  12           MR. SAGEL:  Thank you.

08:42  13           THE COURT:  Okay.  Anything else?

08:42  14           MR. AVENATTI:  Two issues briefly, Your Honor.  In

08:42  15   response to the government eliciting testimony on direct

08:42  16   relating to the financial condition of the firm and the

08:42  17   expected fees from various matters, I responded on

08:42  18   cross-examination by asking about a number of those matters,

08:42  19   and I also bought up the Kimberly-Clark verdict that

08:42  20   occurred in early 2017 for $454 million.

08:42  21           THE COURT:  Right.

08:42  22           MR. AVENATTI:  I elicited testimony related to the

08:42  23   project fee in that case.  I intend on going back now and

08:42  24   eliciting testimony relating to the fact that that amount,

08:42  25   that the verdict amount had been reduced by Judge Gee to

08:42   1    $25 million.

08:42   2          I don't think that's controversial.  The reason

08:42   3    why I --

08:42   4          THE COURT:  Well, I think it's proper for you to

08:42   5    bring out other victories that you had that would produce

08:42   6    income to the firm to rebut the contention that the firm was

08:42   7    in some kind of financial trouble, motivating the conduct

08:42   8    alleged here.  But that's fine.  If you want to establish

08:43   9    that the verdict was cut down, fine.

08:43  10          MR. AVENATTI:  The reason why I bring it up is as

08:43  11    follows, Your Honor.  The reduction to $25 million occurred

08:43  12    before my arrest on the charges March 25.  The Ninth Circuit

08:43  13    later tossed the entirety of the verdict in 2020.

08:43  14          I want to make sure that that fact is not elicited

08:43  15    by the government because that would be irrelevant because

08:43  16    it's post arrest and it has nothing to do with the financial

08:43  17    condition of the firm at the time of the alleged conduct.

08:43  18    So I want to make sure that we have an understanding that on

08:43  19    redirect the government is not going to elicit any testimony

08:43  20    that the Ninth Circuit ultimately threw it out, because

08:43  21    that's a post-date occurrence.

08:43  22          THE COURT:  Do you want to -- you told me you want

08:43  23    to bring out the fact that Judge Gee reduced the judgment.

08:44  24    Did I hear you correctly?

08:44  25          MR. AVENATTI:  The 25 million, because that

08:44   1   occurred --

08:44   2          THE COURT:  Right.  Right.  I don't think it

08:44   3   matters when it occurred, but I think you're entitled to

08:44   4   establish that.  I think the government is entitled or

08:44   5   you're entitled to establish that the entire verdict was

08:44   6   ultimately set aside.

08:44   7          MR. AVENATTI:  So, Your Honor, I object and I

08:44   8   disagree for the following reason.  We're talking about the

08:44   9   financial condition of the firm as it relates to the

08:44   10  criminal conduct, so the temporal time period is up until

08:44   11  the date of my arrest.

08:44   12         THE COURT:  I disagree, sir.

08:44   13         MR. AVENATTI:  So, Your Honor, if I won the

08:44   14  lottery two weeks after my arrest, then I could bring up the

08:44   15  fact that I won the lottery two weeks after my arrest?  Your

08:44   16  Honor would never let me do that because it has no bearing

08:44   17  on the alleged motivation, which is the whole reason why

08:45   18  we're down this road.

08:45   19         THE COURT:  But you suggested in your question

08:45   20  that the firm really wasn't in financial trouble because it

08:45   21  obtained the Kimberly-Clark judgment among other things.  I

08:45   22  think the government or you are entitled to establish what

08:45   23  the reality of the situation was.

08:45   24         You indicate -- you'll establish that it was

08:45   25  reduced to 25 million by Judge Gee, and the further reality

08:45    1    is that the Ninth Circuit reduced it to zero and sent it

08:45    2    back.

08:45    3              MR. AVENATTI:  But, Your Honor, the reduction --

08:45    4              THE COURT:  That's going to be the Court's ruling.

08:45    5              MR. AVENATTI:  Okay.  The reduction to zero, just

08:45    6    to be clear, was more than a year after my arrest and the

08:45    7    alleged criminal conduct, so it can't have any bearing on

08:45    8    the temporal time period at issue, Your Honor.

08:45    9              THE COURT:  It rebuts the point you made that the

08:45   10    firm had reason to believe it was not in financial

08:45   11    difficulty because it had secured this judgment.

08:46   12              Is there another point you wanted to raise?

08:46   13              MR. AVENATTI:  I raise this now, Your Honor, out

08:46   14    of an abundance of caution because I don't want to run afoul

08:46   15    of the Court especially in the middle of the questioning.

08:46   16              Your Honor, I maintain that under Kyles v. Whitley

08:46   17    and its progeny in the Ninth Circuit, I am entitled as part

08:46   18    of my defense to call into question the government's

08:46   19    investigation, how it was conducted, whether it was sloppy

08:46   20    or shoddy, as well as the motivation behind it and whether

08:46   21    this prosecution and the investigation was pursued in good

08:46   22    faith or bad faith.

08:46   23              In light of that --

08:46   24              THE COURT:  I agree that you are entitled to get

08:46   25    into those things.  What I objected to in your opening was

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:46   1   saying that you had been targeted.  Targeted is a loaded

08:47   2   term.  If you want to establish that the government's

08:47   3   investigation was faulty or that it didn't follow procedures

08:47   4   or any of that, I agree you are entitled to get into it.

08:47   5           MR. AVENATTI:  I thank you for that, Your Honor.

08:47   6           THE COURT:  Sir, please, nobody thank me for my

08:47   7   rulings.  I just -- it sounds strange to me as if I am

08:47   8   granting somebody a favor.  I'm just making a ruling of law

08:47   9   as I see it.

08:47   10          MR. AVENATTI:  It's just a phrase of speech, Your

08:47   11  Honor.

08:47   12          THE COURT:  I know.  Mr. Sagel has been using it.

08:47   13  Mr. Wyman has been using it.  I would just ask -- I'm not

08:47   14  going to call you on it every time, but it just seems to me

08:47   15  to be inappropriate to thank me for doing my duty.

08:47   16          Continue.

08:47   17          MR. AVENATTI:  Understood, Your Honor.

08:47   18          I recognize what the Court has just said.  I want

08:47   19  to be a little more directed in what I plan on getting into.

08:48   20          THE COURT:  The litany of items you've listed is

08:48   21  appropriate.

08:48   22          MR. AVENATTI:  Okay.  I also plan on getting into,

08:48   23  Your Honor, as it relates to whether this investigation and

08:48   24  prosecution was pursued in good faith or whether it was

08:48   25  pursued for an ulterior motive.  And included within that is

08:48  1   whether the government engaged in what, to use William

08:48  2   Barr's term, is described as head hunting, mainly where the

08:48  3   government and the prosecutors take a particular interest in

08:48  4   a high-profile defendant and engage in investigatory

08:48  5   techniques and a prosecution that is outside the norm and

08:48  6   pursues charges because the person is high profile.

08:48  7          I believe that's exactly what happened here, and I

08:48  8   believe I'm entitled to get into that.  And I think I'm also

08:48  9   entitled to get into the fact that Mr. Sagel has a personal

08:48  10  relationship with an individual who I had terminated from my

08:48  11  law firm and had an ax to grind with me -- Mr. Andrew

08:49  12  Stolper.

08:49  13         I think under Kyles v. Whitley and its progeny,

08:49  14  I'm entitled to get into those areas.  And I intend on doing

08:49  15  that with Ms. Regnier today.  So I think that is fair game,

08:49  16  and I want to make sure that I don't run afoul of Your Honor

08:49  17  in doing so.

08:49  18         THE COURT:  Sir, I'm not giving you carte blanche.

08:49  19  I'm indicating that that's an appropriate line of inquiry.

08:49  20  Let's see where the questioning goes.

08:49  21         MR. AVENATTI:  Fair enough.

08:49  22         MR. SAGEL:  Your Honor, I understand that he's an

08:49  23  unlicensed lawyer who doesn't have anything to lose and he's

08:49  24  not a lawyer of record.  He still has the obligation, as

08:49  25  you've mentioned during the Faretta hearing, to be able to

08:49  1  act in the capacity of lawyer.

08:49  2       I say that in the sense of he would be required to

08:49  3  have a good-faith basis in asking a question as if this

08:49  4  witness has a foundation.  And I say that because of two

08:49  5  things.

08:49  6       THE COURT:  My thinking is that any litigant,

08:49  7  whether -- well, any representation of record, that person

08:50  8  and counsel has an obligation to have a good-faith basis for

08:50  9  asking a question.  I don't think Mr. Avenatti's immune from

08:50  10  that obligation because he's presently suspended.

08:50  11       MR. SAGEL:  Correct, Your Honor.  So I say that

08:50  12  with the sense of what Your Honor does know.  Over two years

08:50  13  of hundreds of filings by them and countless accusations,

08:50  14  they've never filed anything about the targeting or my

08:50  15  relationship with Mr. Stolper, even though both things they

08:50  16  said -- and I'll tell you why.

08:50  17       Defendant knows that the fraud referral and the

08:50  18  IRS case started before Stormy Daniels was ever filed.  It

08:50  19  was done a year before it ever happened.  You know that.

08:50  20  What he also knows is -- again, he knows but he keeps going

08:50  21  back to the Andrew Stolper thing -- this has nothing to do

08:50  22  with these client accounts.

08:50  23       He stole Geoffrey Johnson's money three years

08:50  24  before any of this.  So him asking Judy Regnier if she knows

08:50  25  if I know Andrew Stolper is just him trying to say something

08:51  1   when he has no facts to back it up.

08:51  2           THE COURT:  Well, you know, I'm not going to make

08:51  3   any factual findings as to what occurred and didn't occur.

08:51  4   That's for the parties to present to the jury.

08:51  5           MR. SAGEL:  And I'm just saying right now --

08:51  6           THE COURT:  Well, sir, you're contesting a factual

08:51  7   matter, whether he has a basis to ask questions about

08:51  8   Mr. Stolper at the moment of the government's investigation.

08:51  9   I think he is entitled to ask those questions provided, of

08:51  10  course, he has a good-faith basis.

08:51  11          MR. SAGEL:  Right -- and to that witness.  So the

08:51  12  question is, as Mr. Regnier is here under oath any questions

08:51  13  of Andrew Stolper, for example, (a) is outside the scope.

08:51  14          THE COURT:  Well, make that objection.  Fine.  I

08:51  15  think it's appropriate.  Make whatever objection you wish to

08:51  16  make.

08:51  17          MR. SAGEL:  And then the final thing which has

08:51  18  been going on throughout this entire trial and we've kind of

08:52  19  let it go because it is what it is, defendant spends his

08:52  20  entire cross-examinations trying to testify from the

08:52  21  lectern.  That's exactly what he's going to attempt to do

08:52  22  again here, is use his questions to attempt to testify

08:52  23  instead of actually testifying himself.

08:52  24          THE COURT:  The jury is instructed that the

08:52  25  questions are not evidence.  The answer is the evidence.  I

| | | |
|---|---|---|
| 08:52 | 1 | will instruct the same -- I believe I gave that in the |
| 08:52 | 2 | initial instructions and I will certainly give that in the |
| 08:52 | 3 | concluding instructions. |
| 08:52 | 4 | MR. SAGEL:  Thank you, Your Honor.  Well, not to |
| 08:52 | 5 | thank you, but -- |
| 08:52 | 6 | THE COURT:  Anything further? |
| 08:52 | 7 | MR. AVENATTI:  Nothing at this time, Your Honor. |
| 08:52 | 8 | THE COURT:  Thank you.  I get to thank you. |
| 08:52 | 9 | Juror number ten, Mr. S.C., called in and left a |
| 08:52 | 10 | voicemail last night about 11:00 saying that his wife was |
| 08:52 | 11 | ill.  She was congested and coughing.  Ms. Bredahl called |
| 08:53 | 12 | the juror again this morning.  He confirmed the wife's |
| 08:53 | 13 | condition, said it wasn't allergies.  He was concerned that |
| 08:53 | 14 | it was possibly the COVID virus and that he had been exposed |
| 08:53 | 15 | to her conditions. |
| 08:53 | 16 | Based on that description, I'm inclined to release |
| 08:53 | 17 | him. |
| 08:53 | 18 | THE CLERK:  It's actually his roommate. |
| 08:53 | 19 | THE COURT:  His roommate, not his wife.  It's his |
| 08:53 | 20 | roommate. |
| 08:53 | 21 | MR. AVENATTI:  We agree, Your Honor.  We think the |
| 08:53 | 22 | risk is too high. |
| 08:53 | 23 | MR. SAGEL:  We will defer to the Court. |
| 08:53 | 24 | THE COURT:  Okay.  I'm going to excuse him.  It |
| 08:53 | 25 | still leaves us with three alternates, so that's what we're |

08:53  1    going to do.

08:53  2         MR. SAGEL:  Your Honor, if I can take up one more

08:53  3    quick thing.  Defendant wants to get into the targeting and

08:53  4    get into the reasoning.  He should also be able -- he's also

08:54  5    opening the door that what Ms. Regnier knows is he was being

08:54  6    audited by the IRS as early as 2015, he, his company, and

08:54  7    Global Baristas.

08:54  8         THE COURT:  Sir, I'm not going to make any rulings

08:54  9    right now as to what you can get into or not get into.

08:54  10        MR. SAGEL:  I understand.  I want him to be on

08:54  11   notice of what he may be opening the door to.

08:54  12        MR. AVENATTI:  Your Honor, we may be able to

08:54  13   shortcut this.  If I can get a representation on the record

08:54  14   that Main Justice in Washington, D.C., was not involved in

08:54  15   the decision to charge me and did not specifically, Your

08:54  16   Honor, approve the search warrants in this case and were not

08:54  17   notified about the warrants, if Mr. Sagel is prepared to

08:54  18   tell the Court that Main Justice in Washington had nothing

08:54  19   to do with this and did not approve the search warrants,

08:54  20   then we may be able to dispense with this if I can get that

08:54  21   representation on the record.

08:54  22        MR. SAGEL:  I'm not aware of any of that.

08:55  23   Mr. Julian Andre and I wrote every single one of the search

08:55  24   warrants.  The only person who was approving our search

08:55  25   warrants that I'm aware of is Ranee Katzenstein, the chief

08:55  1   of the major frauds section.  My U.S. Attorney was obviously

08:55  2   aware of our investigation.  What he does, I have no idea.

08:55  3          At zero times, zero times -- and he knows this --

08:55  4   was I ever directed by anybody to do anything in this case.

08:55  5   I handled the search warrants along with Julian Andre and

08:55  6   did it in the exact same way I've done every case for 21

08:55  7   years.  The only person who keeps making allegations of

08:55  8   misconduct is this convicted felon who doesn't have a law

08:55  9   license.

08:55  10         MR. AVENATTI:  Your Honor, I will just note that I

08:55  11  think it's department policy, DOJ policy, Your Honor, that

08:55  12  you can't execute a search warrant on an attorney without

08:55  13  approval from Main Justice.  That's number one.  And when is

08:55  14  the last time a helicopter was used to execute a search

08:55  15  warrant --

08:55  16         MR. SAGEL:  We didn't use a --

08:55  17         MR. AVENATTI:  -- and 11 agents in a --

08:56  18         THE COURT:  Sir, one at a time.  One at a time.

08:56  19         The representation has been made that Main Justice

08:56  20  had no involvement.  You have indicated that that will

08:56  21  shorten things and curtail somewhat your examination.

08:56  22  You've got that representation.

08:56  23         MR. SAGEL:  Let me clarify one thing, Your Honor,

08:56  24  for tax cases and DOJ tax approval, DOJ tax and tax-related

08:56  25  things.  So the Tax Division is aware of what we're doing as

22

08:56   1   well.  I don't know who he's referring to by Main Justice.

08:56   2   That's about 6,000 people.  The DOJ Tax Division --

08:56   3           THE COURT:  They don't even fit in the building on

08:56   4   Constitution Avenue.

08:56   5           MR. SAGEL:  I think it's Constitution and many

08:56   6   other buildings, yes, Your Honor.

08:56   7           MR. AVENATTI:  Your Honor, we don't have to debate

08:56   8   when this went from a civil tax matter to a criminal tax

08:56   9   matter and the timing of that associated --

08:56   10          THE COURT:  It's not part of this severed trial.

08:56   11          MR. AVENATTI:  I understand, Your Honor.  I'm not

08:56   12  going to sit here and engage in a tit for tat with Mr. Sagel

08:57   13  relating to the timing of these things.  Suffice it to say

08:57   14  that I don't agree, and I do have a good-faith basis.

08:57   15          THE COURT:  Okay.

08:57   16          We will be in recess until the jury is seated.

08:57   17                  (Recess taken at 8:57 a.m.;

08:57   18                  proceedings resumed at 9:08 a.m.)

08:57   19                  (Jury present)

09:00   20          THE CLERK:  Calling Item 1, SACR-19-00061-JVS,

09:08   21  United States of America versus Michael John Avenatti.

09:08   22          MR. SAGEL:  Good morning, Your Honor.  Brett Sagel

09:08   23  and Alexander Wyman on behalf of the United States.  With us

09:08   24  at counsel table is Special Agent Ramon Carlos.

09:08   25          THE COURT:  Good morning.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:08    1              MR. AVENATTI:  Good morning, Your Honor.  Michael

09:08    2    Avenatti.  And I'm joined by Mr. Dean Steward, Ms. Cefali,

09:08    3    as well as Joe on the technology.

09:08    4              THE COURT:  Good morning.

09:08    5              And good morning, ladies and gentlemen.  Mr. S.C.

09:08    6    called late last night and early this morning and indicated

09:09    7    that his roommate had fever-like symptoms.  He feared it was

09:09    8    possibly COVID.  I have excused Mr. S.C. to be just be on

09:09    9    the safe side.  So that means Mr. B.S. is now part of the

09:09   10    jury of 12.  That will constitute the jury.  We still have

09:09   11    three alternates, so we're in good shape, ladies and

09:09   12    gentlemen.

09:09   13              Mr. Avenatti.

09:09   14              MR. AVENATTI:  Thank you, Your Honor.

09:09   15              THE COURT:  One other thing.  Should any of you

09:09   16    experience symptoms you think are COVID-like, please report

09:09   17    it to Ms. Bredahl.

09:10   18              Okay, Mr. Avenatti.  Proceed, please.

09:10   19              MR. AVENATTI:  Thank you, Your Honor.

09:10   20         JUDY REGNIER, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN

09:10   21                  CROSS-EXAMINATION (Continued)

09:10   22    BY MR. AVENATTI:

09:10   23    Q    Good morning, Ms. Regnier.

09:10   24    A    Good morning.

09:10   25    Q    One of the things that you were asked about yesterday

24

| | | |
|---|---|---|
| 09:10 | 1 | in the afternoon was about a $454 million jury verdict that |
| 09:10 | 2 | had been obtained in the spring of 2017.  Do you remember |
| 09:10 | 3 | that? |
| 09:10 | 4 | A    Yes. |
| 09:10 | 5 | Q    And over the course of you working at the firm, the |
| 09:10 | 6 | firm would sometimes obtain verdicts in cases; is that fair |
| 09:10 | 7 | to say? |
| 09:10 | 8 | A    Yes. |
| 09:10 | 9 | Q    And sometimes those verdicts might be reduced by a |
| 09:10 | 10 | subsequent order of the Court or a Court of Appeal order; is |
| 09:10 | 11 | that right? |
| 09:10 | 12 | A    That's correct. |
| 09:10 | 13 | Q    And the Kimberly-Clark verdict was ultimately reduced |
| 09:10 | 14 | from $454 million; is that true? |
| 09:10 | 15 | A    Yes, it was.  Yes, it is. |
| 09:10 | 16 | Q    And at the time the search warrant was executed at your |
| 09:10 | 17 | home, the fees due the firm had not been specifically |
| 09:11 | 18 | decided; is that right?  That's a yes-or-no question. |
| 09:11 | 19 | A    Yes. |
| 09:11 | 20 | Q    And at the time the search warrant was executed on your |
| 09:11 | 21 | home, the firm had a number of other cases that the firm was |
| 09:11 | 22 | working on; is that right?  Well, strike that. |
| 09:11 | 23 |      At the time -- as of January 1, 2018, let's say, |
| 09:11 | 24 | the firm had a number of cases that it was working on; is |
| 09:11 | 25 | that right? |

09:11   1   A    Yes.  They had a few cases they were still working on.

09:11   2   Q    And you have no way of estimating what the potential

09:11   3   fees from those cases were as of January 1, 2018; do you?

09:11   4   A    No, I don't.

09:11   5   Q    And as a general proposition, in light of your job

09:11   6   duties and the role that you played at the firm, is it fair

09:12   7   to say that you generally did not have the ability to give

09:12   8   an estimate as to the fees from the totality of the cases

09:12   9   that the firm was handling at any given time?

09:12   10   A    Correct.

09:12   11   Q    Please turn to Exhibit 21.  This was an exhibit that

09:12   12   Mr. Sagel asked you about on direct.

09:12   13           MR. AVENATTI:  If we could just see the top

09:12   14   e-mail, Joe.

09:12   15           THE WITNESS:  Yes.

09:12   16   BY MR. AVENATTI:

09:12   17   Q    Now, Ms. Regnier, at the top the first name is my name,

09:12   18   right?

09:12   19   A    Yes.

09:12   20   Q    And then it was to Mr. Colorado, Carlos Colorado.  He

09:13   21   was an attorney who worked at the firm, correct?

09:13   22   A    Yes.

09:13   23   Q    And I will represent to you that he has actually

09:13   24   testified in this case.  Then we have cc's here, and one of

09:13   25   the cc's is you?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:13   1    A     Yes.

09:13   2    Q     Okay.  And another cc is to a gentleman by the name of

09:13   3    Scott Sims?

09:13   4    A     Correct.

09:13   5    Q     And Mr. Sims was an attorney who worked at the firm on

09:13   6    various matters including Mr. Johnson's matter, right?

09:13   7    A     Right.

09:13   8    Q     And Mr. Sims was terminated from the law firm by me in

09:13   9    May of 2016.  Do you recall that?

09:13   10              MR. SAGEL:  Objection.  Relevance, Your Honor.

09:13   11              THE COURT:  Overruled.

09:13   12              THE WITNESS:  Yes.

09:13   13   BY MR. AVENATTI:

09:13   14   Q     And he was terminated with two other attorneys after

09:13   15   you caught them forming their own law firm behind our back,

09:13   16   right?

09:13   17   A     Correct.

09:13   18   Q     And what were the names of the other two attorneys?

09:13   19   A     Jason Frank and Andrew --

09:14   20   Q     Stolper?

09:14   21   A     Yes, Andrew Stolper.  Thank you.

09:14   22   Q     And who is Andrew Stolper?

09:14   23   A     He was an attorney that worked for the firm.

09:14   24   Q     And he was an attorney that had been fired after

09:14   25   leaving the Assistant U.S. Attorney's Office, right?

09:14  1          MR. SAGEL:  Objection.  Vague.  Fired from where?

09:14  2          THE COURT:  Clarify.

09:14  3  BY MR. AVENATTI:

09:14  4  Q    Andrew Stolper was an individual who had been pushed

09:14  5  out of the U.S. Attorney's Office after committing this

09:14  6  conduct in a case and then subsequently fired by me; isn't

09:14  7  that true?

09:14  8          MR. SAGEL:  Objection.  Foundation.  Calls for

09:14  9  speculation and assumes facts not in evidence.

09:14  10          THE COURT:  Sustained.

09:14  11  BY MR. AVENATTI:

09:14  12  Q    Ms. Regnier, do you recall that Mr. Stolper, when I

09:14  13  hired him, had left the U.S. Attorney's Office, this same

09:15  14  U.S. Attorney's Office?

09:15  15  A    I know when he was hired that he had worked with the

09:15  16  U.S. Attorney's Office.

09:15  17  Q    And did I subsequently fire him in May of 2016 with

09:15  18  Mr. Sims and Mr. Frank?  Correct?

09:15  19  A    Yes.

09:15  20  Q    And you were there -- well, strike that.  Isn't it true

09:15  21  you called me on the phone after you had discovered what

09:15  22  they had been doing?

09:15  23  A    Yes.

09:15  24  Q    And I subsequently asked that they be locked out of the

09:15  25  computer system immediately, correct?

09:15   1    A    Yes.

09:15   2    Q    And I then escorted them from the offices immediately

09:15   3    and terminated them.  Do you recall that?

09:15   4    A    I believe only one of them was in the office, possibly

09:15   5    two.  Yes, I recall some were being escorted out and someone

09:15   6    else being called on the phone and advised not to come back

09:16   7    in.

09:16   8    Q    And they were never permitted again into the office

09:16   9    without someone being present, correct?

09:16   10   A    Correct.

09:16   11   Q    Are you aware that at that time and thereafter

09:16   12   Mr. Stolper, who had been terminated, was a close friend of

09:16   13   Mr. Sagel's?

09:16   14   A    No, I was not.

09:16   15   Q    It is true, though, that after that date Mr. Stolper

09:16   16   and Mr. Frank pursued an action against me and the law firm

09:16   17   for civil damages; is that right?

09:17   18   A    Yes.  I believe all three of them did.

09:17   19   Q    Prior to testifying, did you come to learn about the

09:17   20   circumstances of Mr. Stolper's departure from the U.S.

09:17   21   Attorney's Office?

09:17   22            MR. SAGEL:  Objection.  Asked and answered.

09:17   23   Relevance.

09:17   24            THE COURT:  Sustained.  Irrelevant.

        25

09:17   1    BY MR. AVENATTI:

09:17   2    Q    I want to shift topics if I could with you,

09:17   3    Ms. Regnier.  Now, you were asked a question about various

09:18   4    bank accounts that you had knowledge about on direct.  Do

09:18   5    you recall that?

09:18   6    A    Yes.

09:18   7    Q    And I believe that Mr. Sagel asked you a question as to

09:18   8    whether you had knowledge of all of my accounts.  Do you

09:18   9    recall that generally?

09:18   10   A    Generally.

09:18   11   Q    And isn't it true that you only had knowledge about

09:18   12   specific accounts?  You did not have knowledge about all of

09:18   13   my other accounts or assets; is that fair?

09:18   14   A    That's fair.

09:18   15   Q    So you had no idea during the time period you worked at

09:18   16   the firm what other assets or monies I may have available

09:18   17   from other sources; did you?

09:18   18   A    Correct.

09:18   19   Q    And from time to time over the time period 2014, for

09:18   20   instance, through 2019, I would arrange to have funds from

09:19   21   other accounts or sources wired into the firm to cover

09:19   22   expenses; is that right?

09:19   23   A    That's correct.

09:19   24   Q    And in your experience we generally did not keep a lot

09:19   25   of money on deposit at the firm; is that correct?

09:19   1    A    That's correct.

09:19   2    Q    Even when millions of dollars in fees would be paid, as

09:19   3    a general proposition we didn't keep millions of dollars on

09:19   4    deposit at the firm; is that right?

09:19   5    A    That's correct.

09:19   6    Q    And that was true from 2007 until 2019, correct?

09:19   7    A    Yes.

09:19   8    Q    So, for instance, even though we might get paid a

09:19   9    10- or 11-million-dollar fee award on a case, we wouldn't

09:20   10   necessarily keep on deposit millions of dollars generally;

09:20   11   is that right?

09:20   12   A    That's correct.

09:20   13   Q    As a general proposition, money would come in.  It

09:20   14   would go to pay expenses, in some instances bonuses to the

09:20   15   staff or the people that worked at the firm, and then

09:20   16   distributions would be made, as a general proposition; is

09:20   17   that right?

09:20   18   A    Yes.  Those would be paid, yes.

09:20   19   Q    Now, on direct examination -- and I wrote this down,

09:20   20   but I probably wrote it down wrong, so I just want to

09:21   21   clarify.  Did you testify on direct examination that,

09:21   22   "Nobody ever communicated with clients without Michael's

09:21   23   approval?"  Did I write that down wrong?  That's a yes-or-no

09:21   24   question.  Did I write that down wrong?

09:21   25   A    I don't know if that's the exact words but to that

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:21  1   effect, yes.

09:21  2   Q    Okay.  Is it your testimony -- well, strike that.  Over

09:21  3   the course of the time period that you worked at the firm,

09:21  4   from 2007 to 2019 is it fair to say that the firm, including

09:21  5   in the class actions that we worked on, had thousands of

09:21  6   clients?

09:21  7   A    Yes.

09:21  8   Q    You are not suggesting to the jury that every time

09:21  9   somebody wanted to communicate with one of those thousands

09:21  10  of people, that I had to specifically authorize it before it

09:21  11  could happen; are you?

09:21  12  A    Not in the class actions, no.

09:22  13  Q    Okay.  Well, are you suggesting that in other non-class

09:22  14  actions that I was monitoring every communication that was

09:22  15  made to every client and I had to approve every

09:22  16  communication before any client was called for any reason?

09:22  17  Are you suggesting that?

09:22  18  A    I'm saying that from where I sat and the communications

09:22  19  I had, you had to approve.  And I know I had heard the same

09:22  20  from other attorneys.

09:22  21  Q    Okay.  Well, we'll get to some e-mails momentarily.

09:22  22  Are you suggesting to the jury that nobody was able to send

09:22  23  an e-mail to a client about anything having to do with their

09:22  24  case without me preapproving the e-mail or the

09:22  25  communication?  Is that what you are suggesting,

| | | |
|---|---|---|
| 09:22 | 1 | Ms. Regnier? |
| 09:22 | 2 | A     I'm suggesting in my -- |
| 09:22 | 3 | Q     Just answer my question.  Is that what you are |
| 09:22 | 4 | suggesting?  Yes or no? |
| 09:22 | 5 | A     In my position, yes. |
| 09:22 | 6 | Q     Okay.  But you don't know -- well, strike that.  Isn't |
| 09:22 | 7 | it true that other attorneys and other staff members had |
| 09:22 | 8 | regular contact with clients without my approval? |
| 09:22 | 9 | A     I don't know. |
| 09:23 | 10 | Q     We will get to some e-mails in a minute.  Maybe we can |
| 09:23 | 11 | clarify that. |
| 09:23 | 12 |          MR. AVENATTI:  Your Honor, one moment, please. |
| 09:23 | 13 |          (Pause in proceedings) |
| 09:24 | 14 | BY MR. AVENATTI: |
| 09:24 | 15 | Q     Do you have a recollection that on January 11, 2013, |
| 09:24 | 16 | Mr. Colorado sent you an e-mail and he asked you for |
| 09:24 | 17 | Mr. Johnson's phone number so that he could call him? |
| 09:24 | 18 | A     Okay.  I don't dispute it. |
| 09:24 | 19 | Q     Well, let me see if I can refresh your recollection. |
| 09:24 | 20 |          MR. AVENATTI:  Can I approach, Your Honor? |
| 09:24 | 21 |          THE COURT:  You may. |
| 09:24 | 22 |          (Document handed to the witness) |
| 09:24 | 23 | BY MR. AVENATTI: |
| 09:25 | 24 | Q     Ms. Regnier, does this document refresh your |
| 09:25 | 25 | recollection that on January 11th, 2013, Mr. Colorado |

33

09:25  1  contacted you directly and asked you for Mr. Johnson's phone

09:25  2  number?

09:25  3  A    Yes.

09:25  4  Q    And do you have a recollection that I wasn't privy to

09:25  5  that communication?

09:25  6  A    That wasn't a communication with a client.  That was a

09:25  7  communication between me and someone else in the office.

09:25  8  Q    Well, he was asking for Mr. Johnson's phone number,

09:25  9  right?

09:25  10  A    Yes, but I discussed this with Mr. Colorado.

09:25  11  Q    Ms. Regnier, that's not my question.  Okay?  My

09:25  12  question is this:  Mr. Colorado contacted you and said, can

09:25  13  I have Mr. Johnson's phone number; right?

09:25  14  A    Correct.

09:25  15  Q    I was not copied on that communication; was I?

09:25  16  A    No.

09:26  17  Q    Do you have a recollection that attorneys at the firm

09:26  18  would communicate with the clients regularly about responses

09:26  19  to what is called written discovery in connection with their

09:26  20  cases?

09:26  21  A    Yes.

09:26  22  Q    Was I generally part of those communications, if you

09:26  23  know?

09:26  24  A    I don't know if you were part of them or not.

09:26  25  Q    Do you have a recollection that Mr. Colorado in

34

09:26   1   February of 2013 was in contact with Mr. Johnson about some

09:26   2   documents that he needed signed in connection with

09:26   3   Mr. Johnson's case?

09:27   4   A    I don't remember, but I don't doubt that it happened.

09:27   5           MR. AVENATTI:  May I approach, Your Honor?

09:27   6           THE COURT:  You may.

09:27   7           (Document handed to the witness)

09:27   8           THE WITNESS:  (Witness reading document)  Okay.

09:27   9   BY MR. AVENATTI:

09:27   10  Q    Ms. Regnier, does this document refresh your

09:27   11  recollection that in February 2013 you and Mr. Colorado were

09:27   12  engaging by e-mail with Mr. Sims regarding some documents

09:27   13  that we needed signed, that the firm needed signed for

09:27   14  Mr. Johnson?

09:27   15  A    Okay.  Yes.

09:28   16  Q    This refreshes your recollection, correct?

09:28   17  A    It's here in the e-mail, yes.

09:28   18          MR. AVENATTI:  Your Honor, we would offer Defense

09:28   19  Exhibit 1019 in light of the witness's testimony that it

09:28   20  refreshed her recollection on the stand.

09:28   21          THE COURT:  It will be refused.  There is no

09:28   22  foundation, no basis for it.  Defendant's 1019 is refused.

09:28   23          MR. AVENATTI:  Your Honor, we would also offer

09:28   24  1017 for the same reason.

09:28   25          THE COURT:  It will be refused for the same

09:28   1    reason.

09:28   2    BY MR. AVENATTI:

09:28   3    Q    Ms. Regnier, 1019 reflects an e-mail communication that

09:28   4    you had with Mr. Colorado and Mr. Sims relating to

09:28   5    Mr. Johnson; is that correct?

09:28   6            MR. SAGEL:  Objection, Your Honor.  He is now

09:28   7    trying to ask about a document that is not in evidence.

09:28   8            THE COURT:  Sustained.

09:29   9            MR. AVENATTI:  Your Honor, I'm trying to lay the

09:29   10   foundation so I can move it into evidence.

09:29   11           THE COURT:  Sustained.

09:29   12           MR. AVENATTI:  For the record, Your Honor, it's

09:29   13   USAO 739958-959.

09:29   14   BY MR. AVENATTI:

09:29   15   Q    Ms. Regnier, do you recall that in 2013 Mr. Colorado

09:29   16   was communicating with Mr. Johnson in an effort to get some

09:29   17   documents signed?

09:29   18   A    I mean, yes.

09:29   19   Q    Was I a party to any of those communications that have

09:29   20   refreshed your recollection on Exhibit 1019?

09:29   21   A    I don't know what you were a party to, what

09:29   22   communications between you and Mr. Colorado and Mr. Johnson.

09:29   23   Q    I'm asking about 1019.  Does that refresh your

09:29   24   recollection that I was not a party to any of those

09:30   25   communications?

09:30   1   A    The interoffice communications, no.

09:30   2   Q    Do you have a recollection that other attorneys in the

09:30   3   office were communicating with Mr. Johnson's family members

09:30   4   without me being present?

09:31   5   A    I know that there was communications with Mr. Johnson's

09:31   6   family members.  I don't know who was present and exactly

09:31   7   who was communicating with them.

09:31   8   Q    Let me see if I can refresh your recollection.

09:31   9          MR. AVENATTI:  May I approach, Your Honor?

09:31   10          MR. SAGEL:  Your Honor, she didn't say her

09:31   11   recollection needs to be refreshed.  She answered the

09:31   12   question.

09:31   13          MR. AVENATTI:  Let me ask another foundational

09:31   14   question, Your Honor.

09:31   15   BY MR. AVENATTI:

09:31   16   Q    Ms. Regnier, do you recall whether Mr. Scott Sims was

09:31   17   communicating directly with Ruth Ann Johnson, a member of

09:31   18   Mr. Johnson's family, without my involvement?

09:31   19   A    I don't know if it was without your involvement.  I do

09:31   20   recall that he was communicating with her.

09:31   21          MR. AVENATTI:  Your Honor, can I approach to

09:31   22   refresh?

09:31   23          MR. SAGEL:  She answered the question.  There's

09:32   24   nothing to refresh.

09:32   25          MR. AVENATTI:  The issue is whether I was involved

37

| | | |
|---|---|---|
| 09:32 | 1 | or not, Your Honor. |
| 09:32 | 2 | THE COURT: Request refused. |
| 09:32 | 3 | BY MR. AVENATTI: |
| 09:32 | 4 | Q   Do you have a recollection that in November of 2013 |
| 09:32 | 5 | Mr. Colorado was attempting to communicate directly with |
| 09:32 | 6 | Mr. Johnson by fax relating to something that needed to be |
| 09:32 | 7 | signed? |
| 09:32 | 8 | A   It's quite possible. |
| 09:32 | 9 | MR. AVENATTI: Your Honor, can I approach? |
| 09:32 | 10 | THE COURT: You may. |
| 09:32 | 11 | (Document handed to the witness) |
| 09:32 | 12 | MR. SAGEL: I will also note for the record that |
| 09:33 | 13 | none of these documents have been produced in reciprocal |
| 09:33 | 14 | discovery, and they are not for impeachment purposes. |
| 09:33 | 15 | THE COURT: Proceed. |
| 09:33 | 16 | MR. AVENATTI: They all have USAO Bates stamp |
| 09:33 | 17 | numbers on them, Your Honor. |
| 09:33 | 18 | THE COURT: Sir, proceed. |
| 09:33 | 19 | BY MR. AVENATTI: |
| 09:33 | 20 | Q   Ms. Regnier, does this document refresh your |
| 09:33 | 21 | recollection that on or about 11/22 of 2013, Mr. Colorado |
| 09:33 | 22 | was communicating with you about trying to get something to |
| 09:33 | 23 | Mr. Johnson by fax this afternoon or evening to have him |
| 09:33 | 24 | sign? |
| 09:33 | 25 | A   I don't know if was to have it signed.  He was trying |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:33    1   to fax something to him, yes.
09:34    2   Q    Do you have a recollection that on or about
09:34    3   December 10th, 2013, Mr. Sims, Mr. Colorado -- well,
09:34    4   Mr. Sims and Mr. Colorado were going to meet with
09:34    5   Mr. Johnson by themselves without me present?
09:34    6   A    No, I don't.
09:34    7   Q    Let me see if I can refresh your recollection.
09:34    8            MR. AVENATTI:  May I approach, Your Honor?
09:34    9            THE COURT:  You may.
09:34   10            (Document handed to the witness)
09:34   11   BY MR. AVENATTI:
09:34   12   Q    Ms. Regnier, does this document refresh your
09:35   13   recollection?
09:35   14   A    It refreshes that somebody was going to go meet with
09:35   15   Geoff.  It doesn't say exactly who.
09:35   16   Q    Was I copied on the e-mail?
09:35   17   A    No.
09:35   18   Q    You were copied on the e-mail, correct?
09:35   19   A    Yes.
09:35   20            MR. AVENATTI:  Your Honor, at this time we would
09:35   21   offer 1023 at USAO 740341.
09:35   22            MR. SAGEL:  Objection.  Hearsay.  Lacks
09:35   23   foundation, and Rule 16.
09:35   24            THE COURT:  It will be refused on the basis of
09:35   25   Rule 16.
```

09:35   1   BY MR. AVENATTI:

09:35   2   Q    Ms. Regnier, what is an errata sheet?

09:35   3   A    It's used generally for a deposition to make changes

09:36   4   where things were incorrectly recorded or misstated.

09:36   5   Q    After an individual gives a deposition in a civil case,

09:36   6   they are given an opportunity to review the transcript and

09:36   7   then make corrections or additions; is that right?

09:36   8   A    That's correct.

09:36   9   Q    And if they make corrections or additions, it's called

09:36   10  an errata sheet, right?

09:36   11  A    Correct.

09:36   12  Q    Do you have a recollection that on February 7, 2014,

09:36   13  Mr. Colorado was dealing directly with Mr. Johnson as it

09:36   14  related to getting his errata sheet from his deposition

09:36   15  signed?

09:36   16  A    He very well could be.  I don't doubt that.

09:36   17          MR. AVENATTI:  Your Honor, can I approach to

09:36   18  refresh?

09:36   19          MR. SAGEL:  We will object at this point on 403,

09:36   20  Your Honor.  It's cumulative and a waste of time.

09:36   21          THE COURT:  You may approach.  Overruled.

09:37   22          (Document handed to the witness)

09:37   23  BY MR. AVENATTI:

09:37   24  Q    Ms. Regnier, does this refresh your recollection?

09:37   25  A    Yes.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:37  1   Q     And do you recall that on or about February 7th,

09:37  2   Mr. Colorado informed you and Mr. Sims that he was waiting

09:37  3   to get back Mr. Johnson's errata sheet and that Mr. Colorado

09:37  4   was going to be speaking directly with Mr. Johnson that

09:38  5   afternoon?

09:38  6   A     That's what the e-mail says.

09:38  7   Q     Do you have any reason to dispute it?

09:38  8   A     No, and I don't know the conversations you had with the

09:38  9   attorneys.

09:38  10            MR. AVENATTI:  Move to strike the last part, Your

09:38  11  Honor.

09:38  12            THE COURT:  The last remark will be stricken.

09:38  13  BY MR. AVENATTI:

09:38  14  Q     Ms. Regnier, just answer my questions, please.

09:38  15            MR. AVENATTI:  Your Honor, we would offer 1084.

09:38  16  It refreshed the witness's recollection.

09:38  17            THE COURT:  I'm not going to approve the admission

09:38  18  on that basis.

09:38  19            MR. AVENATTI:  I believe it's 602, Your Honor.  I

09:38  20  can check at the break.

09:38  21            THE COURT:  It will be refused under Rule 16.

09:38  22  BY MR. AVENATTI:

09:39  23  Q     Ms. Regnier, do you have a recollection that in

09:39  24  November 2016 individuals from the firm were communicating

09:39  25  directly with Mr. Barela outside of my involvement?

09:39  1   A      Yes.

09:39  2   Q      And do you have a specific recollection that on

09:39  3   November 22nd, 2016, Ms. Cathy Mosby was communicating with

09:40  4   Mr. Barela about his deposition transcript from his matter

09:40  5   that we were handling?

09:40  6   A      No, I don't.

09:40  7              MR. AVENATTI:  Your Honor, may I approach?

09:40  8              THE COURT:  You may.

09:40  9              (Document handed to the witness)

09:40  10  BY MR. AVENATTI:

09:40  11  Q      Ms. Regnier, does this document refresh your

09:40  12  recollection?

09:40  13  A      Yes.

09:40  14  Q      Isn't it true that on November 22nd, 2016, Ms. Mosby

09:40  15  was communicating with Mr. Barela with copies to

09:41  16  Mr. Ibrahim, Mr. Arden, yourself, and Ms. Garcia relating to

09:41  17  his deposition transcript, and I was not a party to those

09:41  18  communications?  Isn't that true?

09:41  19  A      You are not on the e-mail, correct.

09:41  20              MR. AVENATTI:  Your Honor, we would offer 1032.

09:41  21              MR. SAGEL:  Same objections, Your Honor.

09:41  22              THE COURT:  Rule 602 does not apply.  Rule 16

09:41  23  does.  It will be refused.

09:41  24  BY MR. AVENATTI:

09:41  25  Q      That was in 2016; right, Ms. Regnier?

09:41   1    A    Yes.

09:41   2    Q    Do you have a recollection that in 2017 attorneys at

09:41   3    the firm were communicating with Mr. Barela about another

09:42   4    deposition transcript in his case without my involvement?

09:42   5    A    I don't doubt that they were.

09:42   6    Q    Do you have a recollection that in July of 2017

09:42   7    Mr. John Arden, another attorney at the firm, was

09:42   8    communicating with Mr. Barela without my involvement

09:42   9    regarding an affidavit that we needed signed by him?

09:42   10   A    I have no reason to doubt that he was.

09:42   11   Q    But you don't have a specific recollection of that?

09:42   12   A    No, I don't.

09:42   13             MR. AVENATTI:  Your Honor, can I approach?

09:42   14             THE COURT:  You may.

09:42   15             (Document handed to the witness)

09:42   16   BY MR. AVENATTI:

09:43   17   Q    Ms. Regnier, I have showed you what we have marked as

09:43   18   1034.  It begins at USAO 603580 on the first page.  Does

09:43   19   this refresh your recollection?

09:43   20   A    Yes.

09:43   21   Q    Isn't it true that on or about July 28th, 2017,

09:43   22   Mr. Arden was communicating with Mr. Barela with copies to

09:43   23   you, Mr. Ibrahim, Ms. Garcia, and Ms. Bonilla regarding an

09:43   24   affidavit that needed to be signed in one of his cases?

09:43   25   A    You are not on this e-mail.

09:43   1    Q     And they were, right?

09:43   2    A     Yes.

09:43   3            MR. AVENATTI:  Your Honor, we would offer 1034.

09:44   4            MR. SAGEL:  Same objections, Your Honor.

09:44   5            THE COURT:  It will be refused, Rule 16.

09:44   6    BY MR. AVENATTI:

09:44   7    Q     Let's return to the exhibits that we were speaking

09:44   8    about yesterday.  Do you recall that Mr. Sagel on direct

09:44   9    asked you about a number of exhibits?  Do you recall that

09:44   10   generally?

09:44   11   A     Yes.

09:44   12   Q     And I think we left off at Exhibit 200.  Could you turn

09:44   13   to Exhibit 200?

09:44   14   A     (Witness complies.)

09:44   15   Q     Ms. Regnier, you were asked about this on direct.  You

09:45   16   are not aware of what communications preceded this e-mail to

09:45   17   you, correct?

09:45   18   A     Regarding this e-mail, no, I don't know.

09:45   19   Q     Let's go to Exhibit 370.  Now, as you sit here on the

09:46   20   stand today, Ms. Regnier, you don't have instant recall of

09:46   21   every transaction included in Exhibit 370; do you?

09:46   22   A     No.

09:46   23   Q     Because it's fair to say that while you were at the

09:46   24   firm, there were a lot of financial transactions; is that

09:46   25   right?

09:46  1    A    Yes.

09:47  2    Q    I mean, isn't it true that during your tenure at the

09:47  3    firm, there were well over hundreds of millions of dollars

09:47  4    in financial transactions that flowed in and out of the law

09:47  5    firm during the 11 years that you were there?

09:47  6    A    They were quite a few, yes.

09:47  7    Q    Well over a $100 million, right?

09:47  8    A    I don't know.

09:47  9    Q    Well, we resolved one case for $39 million.  Do you

09:47  10   remember that?

09:47  11   A    Yes.

09:47  12   Q    And then we talked about the cemetery case yesterday

09:47  13   that related to 85 -- the value of the settlement was

09:47  14   $85 million.  Do you remember that?

09:47  15   A    Yes, but that wasn't the amount received.

09:47  16         MR. AVENATTI:  Your Honor, move to strike the last

09:47  17   part.

09:47  18         THE COURT:  It will be stricken.

09:47  19         MR. AVENATTI:  Thank you.

09:47  20   BY MR. AVENATTI:

09:47  21   Q    Ms. Regnier, there were tens of millions of dollars

09:47  22   received in connection with the cemetery case.  Do you

09:47  23   recall that?

09:47  24   A    Yes.

09:47  25   Q    And there were a number of other cases where we

09:48    1    received seven- and ten-figure dollar amounts; isn't that
09:48    2    right, into the firm?
09:48    3    A    Yes.
09:48    4    Q    As you sit there today, can you -- without looking at
09:48    5    financial records, can you recall the exact amount of money
09:48    6    that flowed in and out of the law firm for any given year?
09:48    7    A    No.
09:48    8    Q    In order to determine that, you would have to look at
09:48    9    the QuickBooks records and the banking records, right?
09:48    10   A    Yes.
09:49    11   Q    So if I gave you a particular year, you could not tell
09:49    12   us what the fees received by the law firm were for that
09:49    13   year; is that fair to say?
09:49    14   A    Yes.
09:49    15   Q    And if I were to ask you a particular year and a
09:49    16   client, you couldn't tell me what the exact costs were for
09:49    17   that client either; could you?
09:49    18   A    No, I could not.
09:49    19   Q    And why is that?  Why could you not do that just
09:49    20   sitting there on the stand?
09:49    21   A    I don't have recollection of what anything was during a
09:49    22   particular year or a particular day.
09:49    23   Q    Or a particular client?
09:49    24   A    Correct.
09:49    25   Q    That's why you would have to look at the electronic

46

09:50  1   data, correct?

09:50  2   A    Yes.

09:51  3   Q    Ms. Regnier, I don't want to waste additional time by

09:51  4   searching for the transaction, but do you remember a matter

09:51  5   relating to a family by the last name of Huettner,

09:51  6   H-u-e-t-t-n-e-r, the Huettner matter?

09:51  7   A    No, I don't.

09:51  8   Q    Do you remember a matter that I handled at the firm in

09:51  9   approximately 2017 or '18 relating to a mother and father

09:51  10  who had lost their son to an overdose and it was alleged

09:51  11  that it occurred at the hands of a son of a very famous

09:51  12  comedian?

09:51  13  A    Yes, I do.

09:52  14  Q    Does that refresh your recollection that it was the

09:52  15  Huettner matter?

09:52  16  A    Yes.

09:52  17  Q    In looking through the documents that Mr. Sagel asked

09:52  18  you about, did you recall a payment made to the Huettner

09:52  19  family?

09:52  20  A    No.

09:52  21  Q    What happened in the Huettner case?

09:52  22  A    The case was settled.

09:52  23  Q    Was a payment made to the Huettner family for the

09:52  24  tragic death of their son?

09:52  25  A    I believe so, yes.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:52  1    Q    Did you ever communicate with Ms. Huettner?

09:52  2    A    I don't believe I communicated with her but potentially

09:52  3    her husband.

09:52  4    Q    You were aware, were you not, that I was heavily

09:52  5    involved in assisting that family through settlement, right?

09:52  6              MR. SAGEL:  At this time, Your Honor, objection.

09:52  7    403.

09:53  8              THE COURT:  Sustained.  Cumulative.

09:53  9    BY MR. AVENATTI:

09:53  10   Q    Ms. Regnier, you are not aware of any evidence that the

09:53  11   Huettner family did not receive any of their settlement

09:53  12   monies; are you?

09:53  13   A    No.

09:53  14   Q    Are you aware of what agreements existed, if any,

09:53  15   between me or the law firm and Michelle Phan or her business

09:53  16   manager?

09:53  17   A    No, I'm not.

09:54  18   Q    Do you have any knowledge as to how the dispute between

09:54  19   Michelle Phan and her company was resolved?

09:54  20   A    No, I don't.

09:54  21   Q    Do you recall a gentleman by the name of Jim Massena

09:54  22   come into the office to meet with me?

09:54  23   A    The name sounds familiar.  I don't quite recall, but it

09:54  24   does sound familiar.

09:55  25   Q    Do you recall that Mr. Massena was an advisor to an

09:55   1    equity company who had invested in Ms. Phan's company by the

09:55   2    name of SoftBank?

09:55   3    A    I'm not aware of that.

09:55   4    Q    Do you have any idea how long it took to resolve

09:55   5    Ms. Phan's dispute with her company?

09:55   6    A    No, I don't.

09:55   7    Q    Do you have any knowledge as to anything having to do

09:55   8    with that process?

09:55   9    A    No, I don't.

09:55   10   Q    Do you have any knowledge as to when the money was

09:55   11   supposed to be paid?

09:55   12   A    No, I don't believe I do.

09:56   13   Q    Please turn to 269.

09:56   14        MR. AVENATTI:  It's in evidence, Exhibit 269.

09:56   15        Joe, if we could have that for the benefit of the

09:56   16   jury.  And if we could blow up the top part down to where my

09:56   17   name appears in the signature block.

09:56   18   BY MR. AVENATTI:

09:56   19   Q    Can you see that, Ms. Regnier?

09:56   20   A    Yes.

09:56   21   Q    Now, who is Long Tran again?

09:56   22   A    He was a partner related to Michelle Phan.

09:57   23   Q    Michelle what?

09:57   24   A    Michelle Phan.

09:57   25   Q    And who was Promise Phan?

49

09:57  1    A    I don't know.

09:57  2    Q    Then there is in red here, "We are not sending anything

09:57  3    to Michelle yet.  Have to chat with her business manager."

09:57  4    Do you see that?

09:57  5    A    Yes.

09:57  6    Q    Did you ever learn that was a false statement?

09:57  7    A    No.

09:57  8    Q    Were you ever privy to any communications that I had

09:57  9    with Ms. Phan's business manager?

09:57  10   A    I don't believe so.

09:57  11   Q    Do you have any idea as to why there was a delay in

09:57  12   sending that money to Michelle Phan?

09:57  13   A    No.

09:57  14   Q    Did you ever learn that Michelle Phan's business

09:58  15   manager wanted the money sent in a particular manner and

09:58  16   timing for tax reasons?

09:58  17        MR. SAGEL:  Objection, foundation.  She says she

09:58  18   doesn't know anything about this transaction.

09:58  19        MR. AVENATTI:  She was asked about the exhibit,

09:58  20   Your Honor.

09:58  21        THE COURT:  Lay the foundation.

09:58  22   BY MR. AVENATTI:

09:58  23   Q    You recall on direct examination Mr. Sagel asked you

09:58  24   some questions about this exhibit, right?

09:58  25   A    Yes.

50

| | | |
|---|---|---|
| 09:58 | 1 | Q    And this is one of the exhibits that the government met |
| 09:58 | 2 | with you about before you testified, correct? |
| 09:58 | 3 | A    Yes. |
| 09:58 | 4 | Q    Did you tell them at the time, I had no involvement, |
| 09:58 | 5 | or, I don't know anything about this transaction?  Did you |
| 09:58 | 6 | tell the government that?  That's a yes-or-no question. |
| 09:58 | 7 | A    I told them I wasn't aware of the terms of your |
| 09:58 | 8 | agreement with them, yes. |
| 09:58 | 9 | Q    So it's safe to say that you have no knowledge |
| 09:59 | 10 | whatsoever as to why the money was sent and when it was sent |
| 09:59 | 11 | and the way that it was sent; is that fair? |
| 09:59 | 12 | A    That's fair. |
| 09:59 | 13 | Q    Directing your attention to 369, another document that |
| 09:59 | 14 | you were asked about by Mr. Sagel, the second page. |
| 10:00 | 15 | MR. AVENATTI:  And if we could get the top five |
| 10:00 | 16 | transactions.  I don't know if the jury can see that.  Maybe |
| 10:00 | 17 | we could blow it up a little bigger, Joe.  Yeah, I think |
| 10:01 | 18 | that's a little better. |
| 10:01 | 19 | BY MR. AVENATTI: |
| 10:01 | 20 | Q    Ms. Regnier, can you see that? |
| 10:01 | 21 | A    Yes. |
| 10:01 | 22 | Q    Now, this shows five outgoing wires between July 9th |
| 10:01 | 23 | and July 10th of 2018; is that right -- 2017? |
| 10:01 | 24 | MR. SAGEL:  Objection.  Misstates the dates. |
| 10:01 | 25 | MR. AVENATTI:  I'm sorry.  One of the few times I |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:01 | 1 | will agree with Mr. Sagel. |
| 10:01 | 2 | BY MR. AVENATTI: |
| 10:01 | 3 | Q    September 18, 18, 21, and then October 2nd and 3rd, |
| 10:01 | 4 | 2017.  Do I have that right? |
| 10:01 | 5 | A    Yes. |
| 10:01 | 6 | Q    Okay.  There is one payment to Long Tran for |
| 10:01 | 7 | $899,795.85, right? |
| 10:01 | 8 | A    Yes. |
| 10:01 | 9 | Q    The next payment -- and I'm going to spell it -- is to |
| 10:01 | 10 | P-r-a-t-i-g-y-a, last name Phan, P-h-a-n, $439,375, right? |
| 10:02 | 11 | A    Yes. |
| 10:02 | 12 | Q    Do you know why that payment was sent to that person? |
| 10:02 | 13 | A    No, I don't. |
| 10:02 | 14 | Q    The next payment is to Michelle Phan individually? |
| 10:02 | 15 | A    Correct. |
| 10:02 | 16 | Q    $4,747,466, and it's cut off, but I believe that's 60 |
| 10:02 | 17 | cents.  Do you see that? |
| 10:02 | 18 | A    Yes. |
| 10:02 | 19 | Q    Do you know why that payment was sent to Michelle Phan |
| 10:02 | 20 | at that account on that date? |
| 10:02 | 21 | A    No, I don't. |
| 10:02 | 22 | Q    And then there are two payments, both for $10 million. |
| 10:02 | 23 | Do you see that? |
| 10:02 | 24 | A    Yes, I do. |
| 10:02 | 25 | Q    One on October 2nd and one on October 3rd; is that |

| | | |
|---|---|---|
| 10:03 | 1 | right? |
| 10:03 | 2 | A    Yes. |
| 10:03 | 3 | Q    And they're both for $10 million? |
| 10:03 | 4 | A    Correct. |
| 10:03 | 5 | Q    Why were two $10 million wire transfers sent as opposed |
| 10:03 | 6 | to one $20 million wire transfer? |
| 10:03 | 7 | A    That's how you instructed me to send them. |
| 10:03 | 8 | Q    Do you have any idea the reason behind those wire |
| 10:03 | 9 | transfers being divided? |
| 10:03 | 10 | A    No. |
| 10:03 | 11 | Q    Did you ever ask why two successive $10 million wire |
| 10:03 | 12 | transfers were being sent to the same account as opposed to |
| 10:03 | 13 | just one wire transfer for $20 million? |
| 10:03 | 14 | A    No, I did not. |
| 10:03 | 15 | Q    Do you know if that was at the request of Ms. Phan's |
| 10:03 | 16 | business manager? |
| 10:03 | 17 | A    No, I do not. |
| 10:03 | 18 | Q    Do you know if there was a tax reason that they wanted |
| 10:04 | 19 | it paid that way? |
| 10:04 | 20 | A    No, I do not. |
| 10:04 | 21 | Q    Do you know if there was a corporate government reason |
| 10:04 | 22 | that they wanted it paid that way? |
| 10:04 | 23 | A    No, I do not. |
| 10:04 | 24 | Q    Now, these two payments were made to a company called |
| 10:04 | 25 | Divinium Labs, LLC.  Do you see that? |

| | | |
|---|---|---|
| 10:04 | 1 | A    Yes. |
| 10:04 | 2 | Q    Is that my company to the best of your knowledge? |
| 10:04 | 3 | A    No. |
| 10:04 | 4 | Q    You don't know whose company that was; do you? |
| 10:04 | 5 | A    No, I don't. |
| 10:04 | 6 | Q    Do you know if that company was chosen by Ms. Phan's |
| 10:04 | 7 | business manager to receive the money for tax or other |
| 10:04 | 8 | reasons? |
| 10:04 | 9 | A    I don't know. |
| 10:05 | 10 | Q    Do you know why all the money was not just sent to |
| 10:05 | 11 | Michelle Phan? |
| 10:05 | 12 | A    No, I don't. |
| 10:05 | 13 | Q    Same exhibit, page 1 at the top, the top two |
| 10:05 | 14 | transactions on September 18th.  Do you see that, |
| 10:06 | 15 | Ms. Regnier? |
| 10:06 | 16 | A    Yes. |
| 10:06 | 17 | Q    There's two transactions that total approximately 28 |
| 10:06 | 18 | and a half million dollars, right? |
| 10:06 | 19 | A    Yes. |
| 10:06 | 20 | Q    One for $27,414,668.32 and another for $984,750.  Did I |
| 10:06 | 21 | get that right? |
| 10:06 | 22 | A    Yes, you did. |
| 10:07 | 23 | Q    What is 20 percent of that number roughly? |
| 10:07 | 24 | Twenty percent of 28-and-a-half million dollars is how much? |
| 10:07 | 25 | A    I'm sorry. |

54

| | | |
|---|---|---|
| 10:07 | 1 | Q    Let me see if I can help you.  $5.6 million is |
| 10:07 | 2 | 20 percent, right? |
| 10:07 | 3 | A    Okay. |
| 10:07 | 4 | Q    Fair? |
| 10:07 | 5 | A    Fair. |
| 10:07 | 6 | Q    Ten percent of 28-and-a-half million dollars is |
| 10:07 | 7 | $2.85 million, right? |
| 10:07 | 8 | A    Yes. |
| 10:07 | 9 | Q    So 10 percent is 2.85.  Twenty percent is 5.7, right? |
| 10:07 | 10 | A    Correct. |
| 10:07 | 11 | Q    And then 30 percent is 5.7 plus another $2.85 million, |
| 10:07 | 12 | or roughly $8.6 million, right? |
| 10:08 | 13 | A    Yes. |
| 10:08 | 14 | Q    And then if it was 40 percent, it would even be higher |
| 10:08 | 15 | than that, right? |
| 10:08 | 16 | A    Yes. |
| 10:08 | 17 | Q    And I think you said this earlier but just to clarify, |
| 10:08 | 18 | you have no idea what the agreement with Michelle Phan or |
| 10:08 | 19 | Mr. Tran was relating to what we were going to get paid for |
| 10:08 | 20 | assisting them in their case; do you? |
| 10:08 | 21 | A    Correct. |
| 10:08 | 22 | Q    Did you ever see any e-mails or documents relating to |
| 10:09 | 23 | what the agreement was concerning the Phan matter? |
| 10:09 | 24 | A    I don't believe I did. |
| 10:09 | 25 | Q    Ms. Regnier, do you have a recollection that in |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

55

10:09  1   connection with resolving the Phan matter, that Mr. Long

10:09  2   Tran and I flew to the Bay Area to sit down with one of the

10:10  3   executives of her company to attempt to negotiate a payment?

10:10  4   A    I know that you flew to the Bay Area, but I did not

10:10  5   know what for.

10:10  6   Q    Do you know if Mr. Tran was with me?

10:10  7   A    I do not know.

10:10  8   Q    Let me see if I can skip ahead.

10:11  9        MR. AVENATTI:  Let's go back to 369, page 1 of 2,

10:11  10  the two transactions, one from the bottom, Joe, please.

10:12  11  BY MR. AVENATTI:

10:12  12  Q    You were asked about these transactions.  Do you recall

10:12  13  that?

10:12  14  A    Yes.

10:12  15  Q    Do you have any independent knowledge as to what these

10:12  16  transactions were for?

10:12  17  A    No.

10:12  18  Q    Do you have any knowledge as to why they were divided

10:12  19  like this?

10:12  20  A    No, I don't.

10:12  21        MR. AVENATTI:  Let's go to the second page of the

10:13  22  transaction to Long Tran for $147,972.

10:13  23  BY MR. AVENATTI:

10:13  24  Q    Ms. Regnier, do you have any knowledge as to what this

10:13  25  payment was for in this amount?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
10:13    1   A    No.
10:13    2          MR. AVENATTI:  Let's take a look at the last two
10:13    3   transactions.
10:13    4   BY MR. AVENATTI:
10:13    5   Q    Ms. Regnier, do you have any independent knowledge as
10:13    6   to what these two amounts specifically were for?
10:14    7   A    The one for the trust?
10:14    8   Q    No.  The two payments to the --
10:14    9          MR. AVENATTI:  I'm sorry.  Joe, it's the one on
10:14   10   the bottom and then the next one.
10:14   11          THE WITNESS:  No, I do not.
10:14   12   BY MR. AVENATTI:
10:14   13   Q    Let me just make sure you can see them.
10:14   14   A    Yes.
10:14   15   Q    There's two transactions here to IM&T Operations
10:14   16   Clearing Account.  Do you see that?
10:14   17   A    Yes.
10:14   18   Q    You don't have any independent knowledge as to what
10:14   19   these were for; do you?
10:14   20   A    No, I don't.
10:15   21          MR. AVENATTI:  Let's go to Exhibit 387, page 15 of
10:15   22   40.  Joe, there is a $120,000 payment in the middle of the
10:15   23   page, about eight lines down, March 20th.  I need the payee
10:16   24   as well for the benefit of the jury, please.
10:16   25
```

57

| | | |
|---|---|---|
| 10:16 | 1 | BY MR. AVENATTI: |
| 10:16 | 2 | Q    Ms. Regnier, can you see that? |
| 10:16 | 3 | A    Yes. |
| 10:16 | 4 | Q    That's a payment that you caused to be made to Glenn |
| 10:16 | 5 | and Patricia Huettner, right? |
| 10:17 | 6 | A    Yes. |
| 10:17 | 7 | Q    Does that payment relate to the settlement of the |
| 10:17 | 8 | matter that we were touching on earlier? |
| 10:17 | 9 | A    Yes, it would. |
| 10:17 | 10 | Q    Do you know of anything improper about that payment? |
| 10:17 | 11 | A    No, I don't. |
| 10:18 | 12 | MR. AVENATTI:  Let's go to Exhibit 381, please. |
| 10:18 | 13 | MR. SAGEL:  Your Honor, we would stipulate to its |
| 10:18 | 14 | admission under the custodian record. |
| 10:19 | 15 | MR. AVENATTI:  Well, Your Honor, I don't know |
| 10:19 | 16 | about that, but let me see if I can lay a foundation and |
| 10:19 | 17 | then hopefully we can get it in evidence. |
| 10:19 | 18 | MR. SAGEL:  We are stipulating for it to come into |
| 10:19 | 19 | evidence. |
| 10:19 | 20 | THE COURT:  The government is willing to |
| 10:19 | 21 | stipulate. |
| 10:19 | 22 | MR. AVENATTI:  No problem.  Great. |
| 10:19 | 23 | THE COURT:  It will be received. |
| 10:19 | 24 | (Exhibit 381 received in evidence) |
| 10:19 | 25 | MR. AVENATTI:  Can we publish 381 for the jury. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:19 | 1 | BY MR. AVENATTI: |
| 10:19 | 2 | Q    Ms. Regnier, do you recognize 381? |
| 10:19 | 3 | A    It's a signature card for California Bank & Trust. |
| 10:19 | 4 | Q    Does your signature appear on the signature card? |
| 10:19 | 5 | A    Yes. |
| 10:19 | 6 | Q    And you signed this around the 12th of January 2015; is |
| 10:19 | 7 | that right? |
| 10:19 | 8 | A    Yes, that would be correct. |
| 10:20 | 9 | Q    Ms. Regnier, is there any limitation to your ability to |
| 10:20 | 10 | move money out of this account listed on the document as it |
| 10:20 | 11 | relates to amount? |
| 10:20 | 12 | A    I don't see anything relating to amount. |
| 10:21 | 13 | Q    Let's go to 282, please.  282 is a wire confirm for |
| 10:22 | 14 | $4 million.  I will give you a moment to get the document. |
| 10:22 | 15 | A    (Witness retrieving document)  Okay. |
| 10:22 | 16 | Q    If you go to the second page. |
| 10:22 | 17 | A    Okay. |
| 10:22 | 18 | MR. AVENATTI:  It's in evidence.  Can we publish |
| 10:22 | 19 | it to the jury, please. |
| 10:22 | 20 | BY MR. AVENATTI: |
| 10:22 | 21 | Q    Ms. Regnier, did you fabricate this document? |
| 10:22 | 22 | A    It's a printout. |
| 10:23 | 23 | Q    You didn't create this document, correct? |
| 10:23 | 24 | A    No, I did not. |
| 10:23 | 25 | Q    Let's go to 283, the second page. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

59

| | | |
|---|---|---|
| 10:23 | 1 | Ms. Regnier, did you fabricate this document? |
| 10:23 | 2 | A    No.  This is the same document. |
| 10:23 | 3 | Q    Did you fabricate it? |
| 10:23 | 4 | A    No. |
| 10:23 | 5 | Q    Let's go to 286. |
| 10:23 | 6 | A    (Witness complies.) |
| 10:23 | 7 | Q    Look at the subject on the first page.  This is from |
| 10:23 | 8 | your e-mail, right? |
| 10:23 | 9 | A    Yes. |
| 10:24 | 10 | Q    Let's go to the next page.  There are six pages, pages |
| 10:24 | 11 | 2 through 7.  Do you see that? |
| 10:24 | 12 | A    Yes. |
| 10:24 | 13 | Q    Did you fabricate any of these pages? |
| 10:24 | 14 | A    No.  These are all printouts from the bank. |
| 10:24 | 15 | Q    Did you ever fabricate any documents relating to Long |
| 10:24 | 16 | Tran or Michelle Phan? |
| 10:24 | 17 | A    No. |
| 10:24 | 18 | Q    Now, Mr. Sagel asked you about this letter that we had |
| 10:25 | 19 | received from a new lawyer for Michelle Phan.  Do you |
| 10:25 | 20 | remember that? |
| 10:25 | 21 | A    Yes. |
| 10:25 | 22 | Q    Isn't it true that our law firm initiated an |
| 10:25 | 23 | arbitration proceeding against Michelle Phan relating to the |
| 10:25 | 24 | fees due from the settlement that we had negotiated?  Isn't |
| 10:25 | 25 | that true?  Yes or no? |

```
10:25   1   A    I don't recall, but I believe so.
10:25   2   Q    Isn't it true that you were involved in preparing a
10:25   3   lawsuit against Michelle Phan relating to monies that the
10:25   4   firm claimed they were due from the settlement in 2018?
10:25   5   A    I don't recall a lawsuit but the arbitration.
10:25   6   Q    Can you tell the jury generally what an arbitration is.
10:25   7   A    It's both parties pay to appear before a private judge
10:26   8   so that you can have -- it's a much faster result of going
10:26   9   through the legal process.
10:26  10   Q    Do you have a recollection of preparing a claim by the
10:26  11   firm in which the firm alleged that it was due money from
10:26  12   Michelle Phan and Long Tran related to what we had
10:26  13   negotiated with them?
10:26  14   A    Yes, I do now.
10:26  15   Q    And do you have a recollection of assisting me in
10:26  16   filing that with the arbitration company?
10:26  17   A    Yes.
10:26  18   Q    In late 2018, correct, or sometime in 2018?
10:26  19   A    Sometime in 2018.  I'm not sure when, but, yes.
10:26  20        MR. AVENATTI:  Your Honor, now is a good time for
10:26  21   a break.
10:26  22        THE COURT:  We will take the mid-morning break
10:26  23   here, ladies and gentlemen.  We will be in recess for 15
10:26  24   minutes.  Please remember the admonition not to discuss the
10:27  25   case with anyone and not to form any opinions on the issues
```

```
10:27   1    in the case until it is submitted to you.  And please do not
10:27   2    do any research.
10:27   3              (Jury not present)
10:27   4              THE COURT:  For the record, Rule 602 of the
10:27   5    Federal Rules of Evidence doesn't provide a basis for
10:27   6    admitting a document on the ground to refresh the
10:27   7    recollection of the witness.
10:27   8              "Rule 602:  A witness may testify to a matter only
10:27   9    if evidence is introduced to support a finding that the
10:28  10    witness has personal knowledge of the matter.  Evidence to
10:28  11    prove personal knowledge may consist of the witness's own
10:28  12    testimony.  This rule does not apply to a witness's expert
10:28  13    testimony under Rule 703."
10:28  14              Rule 602 doesn't have anything to do with
10:28  15    refreshing recollection.
10:28  16              MR. AVENATTI:  Your Honor, I may have cited the
10:28  17    wrong rule.  It may be 604, but I'm going to look at it on
10:28  18    the break.
10:28  19              THE COURT:  Okay.
10:28  20              MR. AVENATTI:  There's a rule that provides that
10:28  21    if a witness refreshes his or her recollection on the stand
10:28  22    that the document is supposed to come into evidence.  But
10:28  23    I'm going to check the rule, Your Honor.
10:28  24              THE COURT:  Okay.  That's fine.
10:28  25              MR. AVENATTI:  I may have quoted the wrong rule.
```

| | | |
|---|---|---|
| 10:28 | 1 | I have one request relating to the dismissed |
| 10:28 | 2 | juror.  If we could have the court staff inform the juror |
| 10:28 | 3 | that if the juror tests positive for COVID in the next week |
| 10:29 | 4 | or ten days, to let us know.  I think that would be |
| 10:29 | 5 | important for people to know. |
| 10:29 | 6 | THE COURT:  Is it the juror or the roommate? |
| 10:29 | 7 | THE CLERK:  The roommate is taking a test |
| 10:29 | 8 | tomorrow, and he will let me know the results of that.  He |
| 10:29 | 9 | said two to three days. |
| 10:29 | 10 | MR. AVENATTI:  Either the roommate or the juror, |
| 10:29 | 11 | if there is any positive test, I think we have to let people |
| 10:29 | 12 | know. |
| 10:29 | 13 | THE COURT:  I agree. |
| 10:29 | 14 | MR. SAGEL:  Just for witness scheduling purposes, |
| 10:29 | 15 | how long do we still have on cross-examination? |
| 10:29 | 16 | MR. AVENATTI:  I will probably take Ms. Regnier |
| 10:29 | 17 | through to the lunch break and maybe 15 minutes after that. |
| 10:29 | 18 | And then I will turn her back over to Mr. Sagel for |
| 10:29 | 19 | redirect.  That's my plan.  If it changes, I will let |
| 10:29 | 20 | Mr. Sagel know. |
| 10:29 | 21 | THE COURT:  That's fine. |
| 10:29 | 22 | MR. SAGEL:  Thank you, Your Honor. |
| 10:29 | 23 | MR. AVENATTI:  I don't know where we are on the |
| 10:29 | 24 | timing.  I think I'm still under my estimate.  My estimate |
| 10:30 | 25 | was eight.  I think they went six and a half on direct.  I |

| | | |
|---|---|---|
| 10:30 | 1 | think I'm going to be well under my eight, I hope. |
| 10:30 | 2 | THE COURT:  That's fine. |
| 10:30 | 3 | We will be in recess. |
| 10:30 | 4 | (Recess taken at 10:30 a.m.; |
| 10:30 | 5 | proceedings resumed at 10:45 a.m.) |
| 10:30 | 6 | (Jury not present) |
| 10:45 | 7 | MR. AVENATTI:  Your Honor, I looked up the rule. |
| 10:45 | 8 | It's 612. |
| 10:45 | 9 | THE COURT:  That's fine. |
| 10:45 | 10 | MR. AVENATTI:  It's the wrong rule. |
| 10:45 | 11 | (Jury present) |
| 10:46 | 12 | THE COURT:  Mr. Avenatti. |
| 10:46 | 13 | MR. AVENATTI:  Yes, Your Honor. |
| 10:46 | 14 | BY MR. AVENATTI: |
| 10:46 | 15 | Q    Ms. Regnier, I want to ask you about some documents |
| 10:46 | 16 | that Mr. Sagel did not ask you about, and we will start with |
| 10:46 | 17 | Exhibit 197, please. |
| 10:47 | 18 | A    Okay. |
| 10:47 | 19 | Q    Ms. Regnier, this is a document from -- strike that. |
| 10:47 | 20 | This appears to be a printout from QuickBooks dated July 26, |
| 10:47 | 21 | 2019; correct? |
| 10:47 | 22 | A    Correct. |
| 10:47 | 23 | Q    And as you sit here today, you have no idea whether |
| 10:47 | 24 | this is accurate or not, correct? |
| 10:47 | 25 | A    Correct. |

64

| | | |
|---|---|---|
| 10:47 | 1 | Q    Again, you didn't have any QuickBooks records in your |
| 10:47 | 2 | possession as of July 26, 2019; is that right? |
| 10:47 | 3 | A    Correct. |
| 10:47 | 4 | Q    Let's go to 321, please. |
| 10:48 | 5 | A    (Witness complies.)  Okay. |
| 10:48 | 6 | Q    You're faster than I am.  I apologize.  Do you have 321 |
| 10:48 | 7 | in front of you? |
| 10:48 | 8 | A    Yes, I do. |
| 10:49 | 9 | MR. AVENATTI:  Your Honor, one moment. |
| 10:49 | 10 | (Pause in proceedings) |
| 10:49 | 11 | BY MR. AVENATTI: |
| 10:49 | 12 | Q    Let's go to 329, please.  I'm sorry.  Do you have 329? |
| 10:49 | 13 | A    Yes, I do. |
| 10:49 | 14 | Q    This appears to be a printout from QuickBooks, right? |
| 10:49 | 15 | A    Yes, it does. |
| 10:49 | 16 | Q    Do you have any idea whether this is accurate or not? |
| 10:49 | 17 | A    I do not. |
| 10:49 | 18 | Q    And the date in the upper left-hand corner is again |
| 10:49 | 19 | July 26, 2019, right? |
| 10:49 | 20 | A    Right. |
| 10:49 | 21 | Q    You didn't have any QuickBooks records in your |
| 10:49 | 22 | possession as of that date, correct? |
| 10:49 | 23 | A    Correct. |
| 10:49 | 24 | MR. AVENATTI:  Your Honor, one moment, please. |
| 10:49 | 25 | (Pause in proceedings) |

|       |    |                                                             |
|-------|----|-------------------------------------------------------------|
| 10:49 | 1  | BY MR. AVENATTI:                                            |
| 10:49 | 2  | Q    Let's try 221 instead of 321.  Do you have 221?        |
| 10:51 | 3  | A    Yes, I do.                                             |
| 10:51 | 4  | Q    Ms. Regnier, this appears to be another printout from a |
| 10:51 | 5  | QuickBooks record of some sort perhaps, right?             |
| 10:51 | 6  | A    Yes.                                                  |
| 10:51 | 7  | Q    You have no idea whether this is accurate; do you?    |
| 10:51 | 8  | A    No, I don't.                                          |
| 10:51 | 9  | Q    And there is a date in the upper left-hand corner,    |
| 10:51 | 10 | again July 26, 2019, same date.  You didn't have any      |
| 10:51 | 11 | QuickBooks records in your possession as of that date,     |
| 10:51 | 12 | correct?                                                   |
| 10:51 | 13 | A    Correct.                                               |
| 10:52 | 14 | Q    Ms. Regnier, in connection with your communications   |
| 10:52 | 15 | with the government relating to me, did you have occasion to |
| 10:52 | 16 | send e-mails to any agents or Assistant U.S. Attorneys?    |
| 10:52 | 17 | A    I believe I did.                                       |
| 10:52 | 18 | Q    Did you have occasion to send any text messages to any |
| 10:52 | 19 | agents or Assistant U.S. Attorneys?                        |
| 10:52 | 20 | A    I may have.                                            |
| 10:52 | 21 | Q    You have a recollection of perhaps doing so?  That's  |
| 10:52 | 22 | just a yes-or-no question.                                 |
| 10:52 | 23 | A    I believe I did, yes.                                 |
| 10:53 | 24 | Q    Can you estimate how many text messages you sent?  Just |
| 10:53 | 25 | a number.                                                  |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

66

| | | | |
|---|---|---|---|
| 10:53 | 1 | A | No. |
| 10:53 | 2 | Q | Between one and five?  Is that a fair estimate? |
| 10:53 | 3 | A | I really don't know. |
| 10:53 | 4 | Q | Less than ten? |
| 10:53 | 5 | A | I really don't know. |
| 10:53 | 6 | Q | If you wanted to find out, do you think you would have |
| 10:53 | 7 | | them in your phone? |
| 10:53 | 8 | A | No, I would not. |
| 10:53 | 9 | Q | Why do you think you would no longer have your text |
| 10:53 | 10 | | messages to the government in your phone? |
| 10:53 | 11 | A | Because they only save for so long. |
| 10:53 | 12 | Q | So your understanding is your text messages to the |
| 10:53 | 13 | | government during the last two years have been destroyed? |
| 10:53 | 14 | A | I have actually changed phones within the last year. |
| 10:53 | 15 | Q | And you didn't save your old phone? |
| 10:54 | 16 | A | No, I didn't. |
| 10:54 | 17 | Q | And you think that those text messages were on that old |
| 10:54 | 18 | | phone? |
| 10:54 | 19 | A | I don't know if they were on the old phone.  I don't |
| 10:54 | 20 | | know if there is any on the new phone. |
| 10:54 | 21 | Q | The government has never asked you to look for those |
| 10:54 | 22 | | text messages; is that correct? |
| 10:54 | 23 | A | No. |
| 10:54 | 24 | Q | Meaning I'm correct? |
| 10:54 | 25 | A | They have never asked me to look for those text |

| | | |
|---|---|---|
| 10:54 | 1 | messages, correct. |
| 10:54 | 2 | Q    So do you think that they may be on your current phone? |
| 10:54 | 3 | A    Could be.  I don't know.  I have never looked for them. |
| 10:54 | 4 | There were sent and either replied to or whatever, and I've |
| 10:54 | 5 | never looked for them again. |
| 10:55 | 6 | Q    Ms. Regnier, could you tell the -- strike that.  Could |
| 10:55 | 7 | you please tell the jury the names of the government agents |
| 10:55 | 8 | and Assistant U.S. Attorneys, if there are any, that you |
| 10:56 | 9 | texted with about me.  Just the names, names only. |
| 10:56 | 10 | A    I don't remember all the texts.  I texted with people |
| 10:56 | 11 | having to do with -- |
| 10:56 | 12 | Q    I am asking for the names, Ms. Regnier. |
| 10:56 | 13 | A    Okay.  I texted with Ramon Carlos, and I don't remember |
| 10:56 | 14 | the names of the other people. |
| 10:56 | 15 | Q    Mr. Carlos is the only person whose name you remember? |
| 10:56 | 16 | A    Correct. |
| 10:56 | 17 | Q    When do you recall texting with Mr. Carlos? |
| 10:56 | 18 | A    It was back shortly after all of this started. |
| 10:57 | 19 | Q    So in 2019? |
| 10:57 | 20 | A    2019. |
| 10:57 | 21 | Q    It was after you were interviewed by Mr. Carlos and |
| 10:57 | 22 | Mr. Sagel on March 25, right? |
| 10:57 | 23 | A    Yes, it was. |
| 10:58 | 24 | Q    Now, I know we touched on this yesterday as related to |
| 10:58 | 25 | a different date, but do you recall that you met with the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:59 | 1 | government on November 19th, 2019? |
| 10:59 | 2 | A    Yes. |
| 10:59 | 3 | Q    And do you recall that at that meeting you again told |
| 10:59 | 4 | them about Tabs? |
| 10:59 | 5 | A    Okay.  Yes, I probably did. |
| 10:59 | 6 | Q    Are you unsure about that? |
| 10:59 | 7 | A    I don't doubt that I did. |
| 10:59 | 8 | MR. AVENATTI:  Your Honor, can I approach? |
| 10:59 | 9 | THE COURT:  You may. |
| 10:59 | 10 | (Document handed to the witness) |
| 10:59 | 11 | MR. AVENATTI:  Your Honor, I previously provided a |
| 11:00 | 12 | copy to the Court. |
| 11:00 | 13 | THE COURT:  Thank you. |
| 11:00 | 14 | BY MR. AVENATTI: |
| 11:00 | 15 | Q    Ms. Regnier, I direct your attention to paragraph 14. |
| 11:00 | 16 | My question is:  Does this refresh your recollection? |
| 11:00 | 17 | A    Yes. |
| 11:00 | 18 | Q    And it is true, is it not, that on November 19th, 2019, |
| 11:00 | 19 | you informed Mr. Sagel, Mr. Carlos, and Mr. Roberson that |
| 11:00 | 20 | the firm used Tabs to track expenses for clients? |
| 11:01 | 21 | A    Tabs and QuickBooks, yes. |
| 11:02 | 22 | Q    Now, Ms. Regnier, yesterday I asked you some questions |
| 11:02 | 23 | about you being sued by Mr. Barela.  Do you recall that |
| 11:02 | 24 | generally? |
| 11:02 | 25 | A    Yes. |

69

| | | |
|---|---|---|
| 11:02 | 1 | Q    And then I started to ask you some questions about you |
| 11:02 | 2 | being sued by Mr. Johnson.  Do you recall that? |
| 11:02 | 3 | A    Yes. |
| 11:02 | 4 | Q    And you are currently a defendant in a lawsuit brought |
| 11:02 | 5 | by Mr. Johnson relating to his settlement monies, right? |
| 11:02 | 6 | A    Yes. |
| 11:02 | 7 | Q    And you are a defendant along with me, correct? |
| 11:02 | 8 | A    Yes. |
| 11:02 | 9 | Q    Eagan Avenatti, right? |
| 11:02 | 10 | A    Yes. |
| 11:02 | 11 | Q    Michael Q. Eagan, right? |
| 11:03 | 12 | A    Yes. |
| 11:03 | 13 | Q    Jason Frank, who we spoke about earlier, right? |
| 11:03 | 14 | A    Yes. |
| 11:03 | 15 | Q    And Scott Sims, who we also spoke about earlier, |
| 11:03 | 16 | correct? |
| 11:03 | 17 | A    Yes. |
| 11:03 | 18 | Q    And Mr. Johnson accuses you of hiding his $4 million |
| 11:03 | 19 | settlement from him; doesn't he?  Yes or no? |
| 11:03 | 20 | A    I don't know if that's the accusation or not as I sit |
| 11:03 | 21 | here. |
| 11:03 | 22 | Q    Do you have any reason to dispute that? |
| 11:03 | 23 | A    No. |
| 11:04 | 24 | Q    Meaning that that's what Mr. Johnson has accused |
| 11:04 | 25 | you of? |

| 11:04 | 1 | A    No. |
| 11:04 | 2 | Q    Mr. Johnson has also accused you of making false |
| 11:04 | 3 | statements to the Social Security Administration.  Do you |
| 11:04 | 4 | recall that? |
| 11:04 | 5 | A    No, I don't. |
| 11:04 | 6 |          MR. AVENATTI:  Your Honor, may I approach? |
| 11:04 | 7 |          THE COURT:  You may. |
| 11:04 | 8 |          (Document handed to the witness) |
| 11:04 | 9 |          MR. AVENATTI:  Your Honor, I think that the Court |
| 11:04 | 10 | already has a copy. |
| 11:05 | 11 | BY MR. AVENATTI: |
| 11:05 | 12 | Q    My question to you, Ms. Regnier, is does paragraph 14 |
| 11:05 | 13 | of this document refresh your recollection that one of the |
| 11:05 | 14 | allegations Mr. Johnson made against you is that you |
| 11:05 | 15 | falsified information to the Social Security Administration? |
| 11:05 | 16 | Yes or no? |
| 11:05 | 17 | A    That's what the paragraph says. |
| 11:05 | 18 | Q    That's what he has accused you of in this paragraph? |
| 11:05 | 19 | Yes or no? |
| 11:05 | 20 | A    That's his allegation in that paragraph. |
| 11:05 | 21 | Q    To the best of your knowledge, is Mr. Johnson telling |
| 11:05 | 22 | the truth as it relates to that allegation?  Yes or no? |
| 11:06 | 23 | A    No. |
| 11:06 | 24 | Q    Mr. Johnson has also accused you in that case of |
| 11:06 | 25 | intentional fraud against him; is that true? |

| 11:07 | 1 | A    It may be one of the allegations. |
| 11:07 | 2 | Q    Do you agree with Mr. Johnson that you committed |
| 11:07 | 3 | intentional fraud against him?  Yes or no? |
| 11:07 | 4 | A    No. |
| 11:07 | 5 | Q    Isn't it true that Mr. Johnson claims that you |
| 11:07 | 6 | intentionally deceived him by making false statements to him |
| 11:07 | 7 | and writing checks or otherwise causing payments to him of |
| 11:07 | 8 | nominal amounts when you knew and had reason to know that |
| 11:07 | 9 | the settlement funds had been paid and that this was all |
| 11:07 | 10 | part of a scheme to hide from him the taking of his money? |
| 11:08 | 11 | Isn't that true, that he has accused you of that?  Yes or |
| 11:08 | 12 | no? |
| 11:08 | 13 | A    That may be what's in the Complaint. |
| 11:08 | 14 | Q    That's my question.  Has he accused you of that, |
| 11:08 | 15 | Ms. Regnier?  Yes or no? |
| 11:08 | 16 | A    I am represented by counsel in this.  I don't know what |
| 11:08 | 17 | I can say about this. |
| 11:08 | 18 | MR. AVENATTI:  Your Honor, can I approach? |
| 11:08 | 19 | THE COURT:  You may. |
| 11:08 | 20 | (Document handed to the witness) |
| 11:08 | 21 | MR. AVENATTI:  It's paragraph 96, Your Honor. |
| 11:08 | 22 | Same document. |
| 11:08 | 23 | THE COURT:  Okay. |
| 11:08 | 24 | BY MR. AVENATTI: |
| 11:08 | 25 | Q    Ms. Regnier, does paragraph 96 refresh your |

11:08   1   recollection that those are the allegations Mr. Johnson has

11:08   2   made against you?  Yes or no?

11:08   3   A    No.

11:09   4   Q    That does not refresh your recollection?

11:09   5   A    No.  That's what the paragraph states, but it does not

11:09   6   refresh my recollection.

11:09   7   Q    You received this document shortly after it was filed,

11:09   8   correct?  You were served with it?

11:09   9   A    I was served with it.  I don't know when.

11:09   10  Q    Well, have you been charged with any crimes relating to

11:09   11  your role as it relates to Mr. Johnson?  Yes or no?

11:09   12  A    No.

11:09   13  Q    In fact, Mr. Johnson is claiming damages of over

11:10   14  $9.5 million as relates to your alleged conduct; isn't that

11:10   15  true?

11:10   16  A    To my individual alleged conduct?  I don't know.  I

11:10   17  cannot answer that question.

11:10   18  Q    You don't have a recollection of reading in the

11:10   19  complaint that your conduct and the conduct of Mr. Frank and

11:10   20  Mr. Eagan and Mr. Sims caused damage to Mr. Johnson in an

11:10   21  amount no less than $9.5 million?  You don't recall that?

11:10   22  A    I believe you were included in that also.

11:10   23          MR. AVENATTI:  Move to strike, Your Honor.

11:10   24          THE COURT:  It's stricken.

        25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:10  1    BY MR. AVENATTI:

11:10  2    Q   Ms. Regnier, here's my question:  Isn't it true that in

11:10  3    paragraph 108 of this lawsuit against you, it was alleged by

11:10  4    Mr. Johnson that you and Mr. Frank and Mr. Eagan and

11:10  5    Mr. Sims caused damage to Mr. Johnson as a result of your

11:11  6    conduct in an amount no less than $9.5 million?

11:11  7    A   I don't recall that.

11:11  8              MR. AVENATTI:  May I approach, Your Honor?

11:11  9              THE COURT:  You may.

11:11  10             (Document handed to the witness)

11:11  11             MR. AVENATTI:  Your Honor, paragraph 108, same

11:11  12   document.

11:11  13             THE COURT:  Okay.

11:11  14   BY MR. AVENATTI:

11:11  15   Q   Ms. Regnier, my question is does paragraph 108 refresh

11:11  16   your recollection that Mr. Johnson has claimed that you,

11:11  17   Mr. Eagan, Mr. Frank, and Mr. Sims caused his damages in

11:11  18   excess of $9.5 million?

11:11  19             MR. SAGEL:  Objection.  Misstates what paragraph

11:11  20   108 says or claims.

11:11  21             THE COURT:  Sustained.

11:12  22   BY MR. AVENATTI:

11:12  23   Q   Ms. Regnier, did you have a chance to look at the

11:12  24   document?

11:12  25   A   Yes.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

74

| | | |
|---|---|---|
| 11:12 | 1 | Q    What are the damages claimed in the lawsuit against you |
| 11:12 | 2 | in an amount; do you recall? |
| 11:12 | 3 | A    As an individual, no, I don't recall. |
| 11:12 | 4 | Q    Do you recall that Mr. Johnson is claiming damages in |
| 11:12 | 5 | that case in excess of $9.5 million?  Yes or no? |
| 11:12 | 6 | A    Yes, against all the defendants. |
| 11:12 | 7 | MR. AVENATTI:  Your Honor, move to strike the last |
| 11:12 | 8 | part as nonresponsive. |
| 11:12 | 9 | THE COURT:  Denied. |
| 11:12 | 10 | BY MR. AVENATTI: |
| 11:12 | 11 | Q    Ms. Regnier, does my name appear in paragraph 108? |
| 11:12 | 12 | A    No. |
| 11:12 | 13 | Q    Does the damage amount of $9.5 million appear in |
| 11:12 | 14 | paragraph 108? |
| 11:12 | 15 | A    It appears on that page but it's against all |
| 11:13 | 16 | defendants. |
| 11:13 | 17 | Q    Ms. Regnier, your name appears in 108; doesn't it? |
| 11:13 | 18 | A    It does.  As I said before -- |
| 11:13 | 19 | Q    Thank you.  That's my question. |
| 11:13 | 20 | Now, Ms. Regnier, here's my next question.  Isn't |
| 11:13 | 21 | it true as you testified here today that it's in your best |
| 11:13 | 22 | interest to make sure that I go down for this and not you |
| 11:13 | 23 | because it will result in you owing Mr. Johnson less money? |
| 11:13 | 24 | Isn't that true? |
| 11:13 | 25 | A    No. |

11:13   1   Q    That's not true?

11:13   2              THE COURT:  Sir, ask the question once.

11:13   3   BY MR. AVENATTI:

11:13   4   Q    Ms. Regnier, you don't have the understanding as you

11:13   5   sit there today that any money that I am ordered to pay

11:13   6   Mr. Johnson reduces the amount of money that you may be

11:13   7   ordered to pay Mr. Johnson?  You don't have that

11:13   8   understanding as you sit here today?  Yes or no?

11:13   9              MR. SAGEL:  Objection.  Asked and answered.

11:13  10              THE COURT:  Overruled.

11:13  11   BY MR. AVENATTI:

11:13  12   Q    Yes or no?

11:13  13   A    I have counsel in this matter and I have discussed it

11:13  14   with my attorney, and I'm not at liberty to discuss that.

11:13  15   It's attorney/client privilege.

11:13  16   Q    So it's your testimony as you sit here today that you

11:14  17   don't have the understanding that any money that me or

11:14  18   others are ordered to pay Mr. Johnson, you don't have the

11:14  19   understanding that that reduces your financial exposure to

11:14  20   Mr. Johnson?  Is that true?

11:14  21   A    I just gave you my answer.

11:14  22              MR. AVENATTI:  Your Honor, I would like a

11:14  23   direction that she answer the question.

11:14  24              THE COURT:  I believe she has the right at this

11:14  25   point to confer with her counsel.

```
11:14   1            So we will take a short break.  Ten minutes,
11:14   2   ladies and gentlemen.
11:14   3            MR. AVENATTI:  Thank you.
11:14   4            (Jury not present)
11:15   5            MR. AVENATTI:  Your Honor, can I retrieve my
11:15   6   document?
11:15   7            THE COURT:  Sure.
11:15   8            MR. SAGEL:  Just for the record, Your Honor, there
11:15   9   are two separate counsel.  There is her civil counsel who, I
11:15  10   don't actually know who the gentleman is, so I don't know if
11:15  11   he's here or not.  And then there is John Barton who
11:15  12   represents her in this.  So I'm assuming what she is
11:15  13   alluding to is Mr. Donahue who represents her in the civil
11:15  14   case.
11:15  15            If her understanding is something comes from a
11:15  16   privileged communication, I think she mentioned that and
11:15  17   there's nothing more that can be inquired into.  He made his
11:15  18   point on what the bias is.
11:15  19            MR. BARTON:  Your Honor, Mr. Donahue is here, and
11:16  20   he will confer with her.
11:16  21            THE COURT:  Okay.
11:16  22            MR. SAGEL:  And I apologize.  I didn't even know
11:16  23   who he was.
11:16  24            THE COURT:  With regard to Rule 612, 612 of the
11:16  25   Federal Rules of Evidence provides for the admission of any
```

11:16  1    portion that relates to a witness's testimony.

11:16  2           With regard to the documents that I have refused,

11:16  3    I direct you to consult with the government and identify

11:16  4    what portions of the documents you believe should come in

11:16  5    under 612.  Obviously the entire Complaints are not coming

11:16  6    in.

11:16  7           MR. AVENATTI:  Your Honor, I understand.  I'm

11:16  8    making an application for the use of 612 as to the other

11:16  9    documents that I quoted the wrong rule on.

11:16  10          THE COURT:  Okay.  It doesn't provide for the

11:17  11   wholesale admission.  It provides only for the portion that

11:17  12   relates to the witness's testimony.  So if you want to

11:17  13   confer with the government, maybe you can agree.

11:17  14          MR. AVENATTI:  Fair enough, Your Honor.

11:17  15          I had one other question.  I understand the

11:17  16   Court's prior ruling that as a discovery sanction I can't

11:17  17   use documents with the USAO Bates stamp number unless

11:17  18   they're used to refresh recollection or impeachment.  I'm

11:17  19   not here to debate that with Your Honor again.

11:17  20          THE COURT:  Sir, you stated precisely the Court's

11:17  21   ruling.

11:17  22          MR. AVENATTI:  I understand.  I'm just trying to

11:17  23   make sure that I have an adequate record, Your Honor.

11:17  24   Rather than me continue to offer documents and have the

11:17  25   government object based on that ruling and have Your Honor

11:17   1   basically not allow me to put in the document, is it

11:17   2   acceptable that I don't have to proffer every document?

11:18   3              THE COURT:  I think -- well, I think to perfect

11:18   4   your record, you need to proffer the document.

11:18   5              MR. AVENATTI:  Well, can we do that outside the

11:18   6   presence of the jury so that we don't, you know, further

11:18   7   prolong them having to sit there as I talk?  I have got, you

11:18   8   know, probably 50 documents, Your Honor.  I don't want to do

11:18   9   that in front of the jury, and I don't want to waste the

11:18  10   Court's time.

11:18  11              THE COURT:  Make your proffer in writing.

11:18  12              MR. AVENATTI:  Okay.  That will be sufficient from

11:18  13   your perspective, Your Honor?

11:18  14              THE COURT:  It's your determination as to whether

11:18  15   or not that's sufficient for appellate purposes, not mine.

11:18  16              MR. AVENATTI:  I understand, Your Honor.  I

11:18  17   understand it's a global order as to any documents that --

11:18  18   as to what Your Honor has excluded.  That's my

11:18  19   understanding, and I'm governed by that understanding as it

11:18  20   relates to figuring out my cross-examination and planning

11:18  21   what I am going to use.

11:18  22              But I will take Your Honor's directive to heart,

11:18  23   and I will submit a written proffer.

11:19  24              THE COURT:  Well, I think that's the most

11:19  25   expeditious way to do it rather than take an undue amount of

11:19    1    the jurors' time.

11:19    2           Mr. Sagel.

11:19    3           MR. SAGEL:  I would just point out again -- I

11:19    4    don't know how many times I've pointed it out -- the Howe

11:19    5    case in the Ninth Circuit even talks about the cat-and-mouse

11:19    6    game of not turning over.  He's got 50 documents.  If he can

11:19    7    turn them over --

11:19    8           THE COURT:  Sir --

11:19    9           MR. SAGEL:  -- we can look at them and maybe give

11:19   10    it to him.

11:19   11           THE COURT:  Okay.  But by making the proffer --

11:19   12    well --

11:19   13           MR. SAGEL:  It's not a wholesale exclusion like he

11:19   14    keeps trying to say.  He's still not providing documents to

11:19   15    us prior to a witness.  If he wants to provide those to us,

11:19   16    we can look at them, and we're not seeing them for the first

11:19   17    time when the witness is getting them.  That's what's

11:19   18    happening.

11:19   19           MR. AVENATTI:  Your Honor, it is a wholesale

11:19   20    exclusion.  Your Honor was clear in his orders.  Your

11:19   21    Honor's order says what it says.

11:19   22           THE COURT:  Well, sir, it's not a wholesale

11:19   23    exclusion.  It's just that you have not identified to the

11:19   24    government in advance of the witness what documents you

11:20   25    intend to use.  Now, if you identify those 50 to the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:20   1   government in a timely fashion, there is no reason why they

11:20   2   couldn't be used.  There may be some argument with the

11:20   3   timing compliance with Rule 16, but it's a nominal

11:20   4   compliance with Rule 16 if you do.

11:20   5          MR. AVENATTI:  So the Court did not exclude me

11:20   6   from using all documents, even the ones with the USAO Bates

11:20   7   stamp number on it, because we didn't comply with the

11:20   8   December 1 deadline?  I thought that was the Court's ruling.

11:20   9          THE COURT:  Sir, we can debate the timeliness of

11:20  10   identification.  If you can establish good cause for not

11:20  11   making your reciprocal discovery obligation by December 1, I

11:20  12   potentially will allow you to introduce and use those

11:20  13   documents.

11:20  14          But, sir, you have done this before.  I'm not

11:21  15   ordering wholesale exclusion of documents which were

11:21  16   previously produced by the government under their Bates

11:21  17   numbers.  I'm precluding those documents for which you have

11:21  18   not been timely compliant with the reciprocal discovery

11:21  19   obligation.

11:21  20          MR. AVENATTI:  And by timely compliance, you're

11:21  21   referring to the December 1st, 2020, deadline; am I correct?

11:21  22          THE COURT:  Correct.  I will await a showing that

11:21  23   there is good cause reason for failing to identify documents

11:21  24   as reciprocal discovery on that date.  That's not been done.

11:21  25          MR. SAGEL:  I would also point out the four to

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 11:21 | 1 | seven months since then. |

11:21  1   seven months since then.

11:21  2        MR. AVENATTI:  Your Honor, I am not here to

11:21  3   belabor the point.  I'm not going to reargue points.  You

11:22  4   issued your ruling.  I'm cognizant of what you said, and I

11:22  5   will conduct myself accordingly.

11:22  6        THE COURT:  Sir, if you believe you have good

11:22  7   cause for making a reciprocal discovery obligation

11:22  8   subsequent to the December cutoff date, you are free to make

11:22  9   that showing.

11:22  10        MR. AVENATTI:  Your Honor, I understand that.

11:22  11   Just to be clear, my position is --

11:22  12        THE COURT:  Sir, you don't need to restate your

11:22  13   position.

11:22  14        MR. AVENATTI:  Which is why I was just said that I

11:22  15   was not going to belabor the point, Your Honor.

11:22  16        MR. SAGEL:  I have been told, Your Honor, that the

11:22  17   witness can proceed at any time.  There is nothing else

11:22  18   needed.

11:22  19        MR. AVENATTI:  Your Honor, can I have a bathroom

11:22  20   break real quick?

11:22  21        THE COURT:  Sure.

11:22  22             (Recess taken at 11:22 a.m.;

11:22  23             proceedings resumed at 11:28 a.m.)

11:22  24        (Jury not present)

11:22  25        MR. AVENATTI:  Your Honor, how do you want me to

```
11:28    1    handle the proffering of these documents?  I need to do it
11:28    2    before I get done with my cross.  I can read them into the
11:28    3    record now.
11:28    4              MR. SAGEL:  Mr. Avenatti is representing himself.
11:28    5    He needs to know how to handle his own case on his own
11:28    6    behalf.
11:28    7              MR. AVENATTI:  What does that mean, Your Honor?  I
11:28    8    mean, what does that mean?  Is that helpful?
11:28    9              MR. SAGEL:  Whatever Faretta requires of you that
11:28   10    you chose to represent yourself.
11:29   11              MR. AVENATTI:  Is that helpful?
11:29   12              THE COURT:  Sir, whether it's helpful or not, he
11:29   13    is correct.  The Court advised you that the Court cannot be
11:29   14    your lawyer.
11:29   15              MR. AVENATTI:  Okay.  Well, then, I will offer
11:29   16    them one at a time.  I guess we'll do it in front of the
11:29   17    jury.  I'd prefer not to do it that way, Your Honor.  I
11:29   18    don't think that's in anybody's best interest.
11:29   19              (Jury present)
11:29   20              THE COURT:  Mr. Avenatti.
11:30   21    BY MR. AVENATTI:
11:30   22    Q    Ms. Regnier, during the break -- this is just a
11:30   23    yes-or-no question -- did you have an opportunity to confer
11:30   24    with your counsel?
11:30   25    A    Yes.
```

```
11:30    1    Q    Ms. Regnier, yes or no, you understand that any amount
11:30    2    that me or others are ordered to pay Mr. Johnson reduces
11:30    3    your potential exposure?
11:30    4    A    No.
11:30    5    Q    Yes or no.  Your understanding is that no matter what
11:30    6    monies are ordered by me or others to pay has no bearing on
11:30    7    what you might be ordered to pay Mr. Johnson?
11:30    8    A    Correct.
11:31    9    Q    Have you ever asked Mr. Barela why he is suing you?
11:31   10    Yes or no?
11:31   11              MR. SAGEL:  Objection.  Relevance, Your Honor,
11:31   12    and 403.
11:31   13              THE COURT:  Sustained.
11:31   14    BY MR. AVENATTI:
11:31   15    Q    Have you ever asked Mr. Johnson why he is suing you?
11:31   16              MR. SAGEL:  Same objection.
11:31   17              THE COURT:  Sustained.
11:31   18    BY MR. AVENATTI:
11:31   19    Q    Did you ever communicate with Mr. Barela's spouse
11:31   20    regarding his case?
11:31   21    A    Regarding what we are sitting here on today?
11:31   22    Q    No.  Have you ever communicated with Mr. Barela's
11:31   23    spouse concerning any matter that the firm was working on
11:31   24    for Mr. Barela?
11:31   25    A    I had e-mail communication with her regarding wires,
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 11:32 | 1 | and that was it. |
| 11:32 | 2 | Q    Did you have such an e-mail communication with her on |
| 11:32 | 3 | May 25th, 2018? |
| 11:32 | 4 | A    I may have.  I don't know for sure. |
| 11:32 | 5 | MR. AVENATTI:  May I approach, Your Honor? |
| 11:32 | 6 | THE COURT:  You may. |
| 11:32 | 7 | (Document handed to the witness) |
| 11:32 | 8 | BY MR. AVENATTI: |
| 11:32 | 9 | Q    Ms. Regnier, I have given you a copy of what has been |
| 11:32 | 10 | marked as defendant's 1037 beginning with USAO 644915.  Do |
| 11:33 | 11 | you have that? |
| 11:33 | 12 | A    Yes. |
| 11:33 | 13 | Q    My question is does this refresh your recollection that |
| 11:33 | 14 | on or about May 25th, 2018, you had communications with |
| 11:33 | 15 | Mr. Barela's wife? |
| 11:33 | 16 | A    Correct. |
| 11:33 | 17 | Q    You e-mailed with her and Mr. Barela; is that correct? |
| 11:33 | 18 | A    Yes, I did. |
| 11:33 | 19 | MR. AVENATTI:  Your Honor, at this time the |
| 11:33 | 20 | defense offers Exhibit 1037. |
| 11:33 | 21 | MR. SAGEL:  Your Honor, the same e-mail |
| 11:33 | 22 | communication is government's Exhibit 216.  Government's |
| 11:33 | 23 | Exhibit 216 properly redacts identifiers, cell phone numbers |
| 11:33 | 24 | and e-mail addresses, unlike 1037.  If defendant wants to |
| 11:33 | 25 | move in Exhibit 216, we have no objection. |

85

| | | |
|---|---|---|
| 11:33 | 1 | MR. AVENATTI:  Your Honor, I'm moving for the |
| 11:33 | 2 | admission of Exhibit 1037 subject to redaction. |
| 11:34 | 3 | THE COURT:  Mr. Sagel, are you acquiescent subject |
| 11:34 | 4 | to redaction? |
| 11:34 | 5 | MR. SAGEL:  Yes.  The exhibit is already here. |
| 11:34 | 6 | But if he wants to do it that way, that's fine. |
| 11:34 | 7 | THE COURT:  In the absence of an objection from |
| 11:34 | 8 | the government, it will be received subject to redaction. |
| 11:34 | 9 | (Exhibit 1037, as redacted, received in evidence) |
| 11:34 | 10 | MR. AVENATTI:  Thank you, Your Honor. |
| 11:34 | 11 | Joe, could we publish the top half of 1037, the |
| 11:34 | 12 | top three e-mails, please. |
| 11:34 | 13 | MR. SAGEL:  Your Honor, 1037 has personal |
| 11:35 | 14 | identifiers and e-mails and phone numbers, Your Honor. |
| 11:35 | 15 | MR. AVENATTI:  Your Honor, there is a number of |
| 11:35 | 16 | exhibits that the government was allowed to put before the |
| 11:35 | 17 | jury subject to redaction. |
| 11:35 | 18 | THE COURT:  Sir, we have to deal with them one at |
| 11:35 | 19 | a time.  The personal information in the top third of the |
| 11:35 | 20 | document may not be displayed at this time. |
| 11:35 | 21 | MR. AVENATTI:  Are we talking about the personal |
| 11:35 | 22 | information related to the e-mail address for Mr. Barela's |
| 11:35 | 23 | wife?  I don't see any other information. |
| 11:35 | 24 | THE COURT:  Telephone number. |
| 11:35 | 25 | MR. AVENATTI:  For Mr. Barela?  I think that's |

| | | |
|---|---|---|
| 11:35 | 1 | already been displayed. |
| 11:35 | 2 | THE COURT:  Why don't you just redact it right now |
| 11:35 | 3 | by hand and use the elmo. |
| 11:35 | 4 | MR. AVENATTI:  No problem, Your Honor. |
| 11:35 | 5 | MR. SAGEL:  Or he could use 216, Your Honor. |
| 11:35 | 6 | Your Honor, the government's objection is not our |
| 11:37 | 7 | objection.  It's the Central District's order. |
| 11:37 | 8 | THE COURT:  The government's version redacts |
| 11:37 | 9 | e-mail addresses as well as telephone numbers. |
| 11:38 | 10 | BY MR. AVENATTI: |
| 11:38 | 11 | Q    Ms. Regnier, can you see that? |
| 11:38 | 12 | A    Yes. |
| 11:38 | 13 | MR. AVENATTI:  For the record, we are displaying |
| 11:38 | 14 | 1037 by way of the elmo. |
| 11:38 | 15 | BY MR. AVENATTI: |
| 11:38 | 16 | Q    This is an e-mail chain that you had with Mr. Barela |
| 11:38 | 17 | and his wife on or about May 25th, 2018; am I correct? |
| 11:38 | 18 | A    Yes.  You are also on the e-mail chain. |
| 11:38 | 19 | Q    Ms. Regnier, I didn't ask you about that.  I just asked |
| 11:38 | 20 | you if you were on the e-mail chain.  You understand that, |
| 11:38 | 21 | right? |
| 11:38 | 22 | A    You named three people and there's four on it.  So, |
| 11:38 | 23 | yes, I was on the e-mail chain. |
| 11:38 | 24 | Q    Okay.  Well, my name is right there.  No question about |
| 11:39 | 25 | it.  My question is this.  The bottom e-mail, you responded |

87

11:39  1    to Mr. Barela relating to this wire, "I handled this.  We

11:39  2    are good," right?

11:39  3    A    Yes.

11:39  4    Q    Then Mr. Barela's wife responded:  "Confirmed.  The

11:39  5    transfer just hit my account.  Thank you, Judy.  He needs an

11:39  6    admin."  Do you see that?

11:39  7    A    Yes.

11:39  8    Q    And when you received this, did you understand her to

11:39  9    be referring to Mr. Barela when she said "he"?

11:39  10   A    Yes, I did.

11:39  11   Q    And how did Mr. Barela respond?

11:39  12   A    "Thank you, Judy.  Remember my wife is the head

11:39  13   administrator for the head legal counsel for the west area

11:39  14   for Verizon.  I get in trouble a lot.  Thanks to everyone."

11:40  15   Q    Do you recall having other communications with

11:40  16   Mr. Barela's wife from time to time relating to wire

11:40  17   transfers?

11:40  18   A    There may have been one or two others.

11:40  19   Q    What work was the firm doing for Mr. Barela as related

11:40  20   to Quix Supply?

11:40  21            MR. SAGEL:  Asked and answered yesterday, Your

11:40  22   Honor.

11:40  23            THE COURT:  Sustained.

11:40  24   BY MR. AVENATTI:

11:40  25   Q    Do you have a recollection, Ms. Regnier, of the firm

11:40  1  forming a company for Mr. Barela?

11:40  2  A    I'm not sure of all the work that was being done for

11:40  3  Mr. Barela.  I don't have an independent recollection of

11:41  4  that.

11:41  5          MR. AVENATTI:  Your Honor, can I approach to

11:41  6  refresh?

11:41  7          THE COURT:  You may.

11:41  8          (Document handed to the witness)

11:41  9  BY MR. AVENATTI:

11:41  10  Q    Ms. Regnier, I have showed you what has been marked as

11:41  11  defendant's 1036 at USAO 644837.  Do you have the document

11:41  12  in front of you?

11:41  13  A    Yes, I do.

11:41  14  Q    Does this refresh your recollection that one of the

11:41  15  things that the firm was doing for Mr. Barela in May 2018

11:41  16  was creating a company for him by the name of Quix Supply

11:41  17  and filing the records for that at the Delaware Secretary of

11:42  18  State?

11:42  19  A    Yes, it refreshes.  Yes.

11:42  20          MR. AVENATTI:  Your Honor, at this time the

11:42  21  defense offers 1036.

11:42  22          MR. SAGEL:  Objection.  Hearsay, 403, and Rule 16,

11:42  23  Your Honor.

11:42  24          THE COURT:  1036 will be refused for failure to

11:42  25  comply with Rule 16.

89

11:42   1    BY MR. AVENATTI:

11:42   2    Q    Ms. Regnier, generally what is the purpose of an

11:43   3    affidavit in litigation?

11:43   4    A    It's basically the same as a declaration, attesting to

11:43   5    what they know.

11:43   6    Q    Do you recall if the firm ever had Mr. Barela sign an

11:43   7    affidavit in connection with his case?

11:43   8    A    I believe there was one signed, yes.

11:44   9    Q    Do you recall what the purpose of that was?

11:44   10   A    No, I don't.

11:44   11               MR. AVENATTI:  Your Honor, may I approach?

11:44   12               THE COURT:  You may.

11:44   13               (Document handed to the witness)

11:44   14   BY MR. AVENATTI:

11:44   15   Q    Ms. Regnier, does 1034 refresh your recollection that

11:44   16   in connection with Mr. Barela's litigation matter, we sought

11:44   17   to have him sign an affidavit?

11:45   18   A    Yes, but it doesn't reflect anything as to what it was

11:45   19   regarding.

11:45   20   Q    But it refreshes a recollection that we had him sign

11:45   21   one?

11:45   22   A    Yes.

11:45   23               MR. AVENATTI:  Your Honor, we offer 1034 under

11:45   24   Rule 612.

11:45   25               MR. SAGEL:  Objection, Your Honor.  403,

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
| 11:45 | 1  | relevance, hearsay, and failure to comply with Rule 16.              |
| 11:45 | 2  | THE COURT:  It will be received for the purposes                     |
| 11:45 | 3  | of 612.  I direct you to meet and confer with the government          |
| 11:45 | 4  | as to what portions should be received.                              |
| 11:45 | 5  | (Exhibit 1034, as redacted, received in evidence)                    |
| 11:45 | 6  | MR. AVENATTI:  Your Honor, can I publish a portion                   |
| 11:45 | 7  | to the jury?                                                         |
| 11:45 | 8  | THE COURT:  What portion do you want to publish?                     |
| 11:45 | 9  | MR. AVENATTI:  Can I grab the document?                              |
| 11:45 | 10 | THE COURT:  Yes.                                                     |
| 11:45 | 11 | MR. SAGEL:  The document also has personal e-mail                    |
| 11:45 | 12 | addresses on it, Your Honor.                                         |
| 11:45 | 13 | MR. AVENATTI:  Your Honor, the portion of the                       |
| 11:46 | 14 | document that I wish to use is the bottom portion beginning          |
| 11:46 | 15 | with July 27 from Mr. Arden at his work address down to              |
| 11:46 | 16 | John.  There is no personal information within that portion          |
| 11:46 | 17 | of the document.                                                    |
| 11:46 | 18 | THE COURT:  There is an e-mail address there.                        |
| 11:46 | 19 | MR. AVENATTI:  I'll redact the e-mail, Your Honor.                   |
| 11:46 | 20 | MR. SAGEL:  We would make a 403 objection, Your                     |
| 11:46 | 21 | Honor.                                                              |
| 11:46 | 22 | THE COURT:  Overruled.                                               |
| 11:46 | 23 | MR. AVENATTI:  Can I publish it?                                     |
| 11:46 | 24 | THE COURT:  You can publish just that part with                      |
| 11:46 | 25 | the e-mail address redacted.                                        |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

91

| | | |
|---|---|---|
| 11:46 | 1 | MR. AVENATTI:  Fair enough, Your Honor. |
| 11:46 | 2 | BY MR. AVENATTI: |
| 11:47 | 3 | Q    Can you see that, Ms. Regnier? |
| 11:47 | 4 | A    Yes, I can. |
| 11:47 | 5 | Q    Can you please read what that says, including the date |
| 11:47 | 6 | and time? |
| 11:47 | 7 | A    Thursday, July 27, 2017, 9:53 a.m.  "Greg, attached is |
| 11:47 | 8 | the pdf of your affidavit per our conversation yesterday. |
| 11:47 | 9 | Please sign and send it back to us today.  Thank you. |
| 11:47 | 10 | John." |
| 11:47 | 11 | Q    And that's from Mr. John Arden, one of the attorneys |
| 11:47 | 12 | that was assisting on the Barela matter, correct? |
| 11:47 | 13 | A    Yes. |
| 11:47 | 14 | Q    And do you have a recollection as to whether I was |
| 11:47 | 15 | involved in any way in preparing that affidavit? |
| 11:47 | 16 | A    No.  I don't know. |
| 11:47 | 17 | Q    Do you have a recollection as you sit here today of |
| 11:47 | 18 | what that affidavit says? |
| 11:48 | 19 | A    No, I don't. |
| 11:48 | 20 | Q    Did the government ask you about this document when you |
| 11:48 | 21 | conversed with them? |
| 11:48 | 22 | A    I'm not sure.  They may have. |
| 11:48 | 23 | Q    Do you have a recollection of them doing so as you sit |
| 11:48 | 24 | there now? |
| 11:48 | 25 | A    Not that particular document, no. |

| | | |
|---|---|---|
| 11:48 | 1 | Q    Do you recall in preparing to testify in this case |
| 11:48 | 2 | being shown the actual affidavit that Mr. Barela signed? |
| 11:48 | 3 | A    No, I don't recall. |
| 11:48 | 4 | Q    Did Ms. Mosby converse with Mr. Barela about his matter |
| 11:48 | 5 | when she worked at the firm? |
| 11:48 | 6 | MR. SAGEL:  Objection.  Foundation. |
| 11:49 | 7 | THE COURT:  Overruled. |
| 11:49 | 8 | THE WITNESS:  I don't know. |
| 11:49 | 9 | BY MR. AVENATTI: |
| 11:49 | 10 | Q    Was Ms. Mosby involved in communicating with clients |
| 11:49 | 11 | while she was employed at the firm? |
| 11:49 | 12 | A    Yes, at times she was. |
| 11:49 | 13 | Q    How did Ms. Mosby's role differ from yours, if at all? |
| 11:49 | 14 | A    She handled more of your personal stuff and that type |
| 11:49 | 15 | of thing.  I handled a little bit more of the administration |
| 11:49 | 16 | in the office.  That was about it, I mean -- and as a |
| 11:49 | 17 | paralegal I went to trial, and she basically stayed and held |
| 11:49 | 18 | down the fort at the office. |
| 11:49 | 19 | Q    Did Ms. Mosby have regular contact with clients? |
| 11:50 | 20 | MR. SAGEL:  Asked and answered, Your Honor. |
| 11:50 | 21 | THE COURT:  Overruled. |
| 11:50 | 22 | THE WITNESS:  She had contact at times.  I don't |
| 11:50 | 23 | know how regular it was, but, yes, she had contact with |
| 11:50 | 24 | clients. |
| | 25 | |

93

| | | |
|---|---|---|
| 11:50 | 1 | BY MR. AVENATTI: |
| 11:50 | 2 | Q    Did Ms. Mosby prepare legal documents for filing in our |
| 11:50 | 3 | cases? |
| 11:50 | 4 | A    Yes. |
| 11:50 | 5 | Q    Did Ms. Mosby from time to time deal with financial |
| 11:50 | 6 | matters relating to clients and the law firm? |
| 11:50 | 7 | A    Yes.  She assisted. |
| 11:50 | 8 | Q    If Ms. Mosby were to take the stand in this case and |
| 11:50 | 9 | testify that in fact I did not have to approve every client |
| 11:50 | 10 | communication, would you agree or disagree with that |
| 11:50 | 11 | testimony? |
| 11:50 | 12 | MR. SAGEL:  Objection.  Calls for speculation. |
| 11:50 | 13 | Improper question. |
| 11:50 | 14 | THE COURT:  Sustained. |
| 11:50 | 15 | BY MR. AVENATTI: |
| 11:50 | 16 | Q    When is the last time you communicated with Ms. Mosby? |
| 11:51 | 17 | A    2018. |
| 11:51 | 18 | Q    Did Ms. Mosby play any role in the Johnson case? |
| 11:51 | 19 | A    Yes. |
| 11:51 | 20 | Q    What did she do in the Johnson case? |
| 11:51 | 21 | A    She was a legal assistant, secretary within the firm, |
| 11:51 | 22 | and she worked on the cases like everyone else. |
| 11:51 | 23 | Q    Do you know if she ever communicated with Geoff |
| 11:51 | 24 | Johnson? |
| 11:51 | 25 | A    I do not recall. |

94

11:51  1   Q    Do you know if she ever communicated with Mr. Johnson's

11:51  2   parents?

11:51  3   A    No, I don't.

11:51  4   Q    Do you know if she ever communicated with Tim Meridian?

11:51  5   A    I do not.

11:51  6   Q    How about Sunrise of West Hills?

11:51  7   A    I do not.

11:51  8   Q    Now, some of the costs that are incurred in connection

11:52  9   with the Johnson matter related to experts, correct?

11:52  10  A    Yes.

11:52  11  Q    And why did the firm incur costs for experts in

11:52  12  connection with the Geoff Johnson matter?

11:52  13  A    I'm not sure I understand.

11:52  14  Q    Let me see if I can ask a better question.  In

11:52  15  connection with Mr. Johnson's matter, the firm had to retain

11:52  16  various experts to consult and provide testimony; am I

11:52  17  right?

11:52  18  A    Yes.

11:52  19  Q    And do you recall how many experts were retained?

11:52  20  A    No, I don't.

11:52  21  Q    Do you recall the names of any of the experts that were

11:52  22  retained?

11:52  23       MR. SAGEL:  Objection, 403 at this point, Your

11:52  24  Honor.

11:52  25       THE COURT:  Overruled.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:52   1              THE WITNESS:  No, I don't.

11:52   2   BY MR. AVENATTI:

11:52   3   Q    Do you recall how much those experts cost?

11:52   4   A    No.

11:53   5   Q    You will recall, will you not, that while you were at

11:53   6   the firm, it was a regular occurrence that the firm would

11:53   7   retain experts in its cases for clients?

11:53   8   A    Correct.

11:53   9   Q    And sometimes those expert fees cost hundreds of

11:53   10  thousands of dollars for one case and one client, right?

11:53   11  A    Yes.

11:53   12  Q    And sometimes the firm required multiple experts in

11:53   13  connection with a case, right?

11:53   14  A    Correct.

11:53   15  Q    There were some cases in which the firm had to retain

11:53   16  four, five, six, seven experts or more in connection with a

11:53   17  matter; isn't that true?

11:53   18  A    That's true.

11:53   19  Q    And some of those experts were local, and some of those

11:53   20  experts were from around the country, right?

11:53   21  A    Correct.

11:53   22  Q    And generally speaking, did you deal with any of those

11:53   23  experts, or was that left to the attorneys?

11:53   24  A    I generally only dealt with the experts when it came

11:54   25  time for payment.  Most of it was with the attorneys.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:54 | 1 | Q    And do you have a recollection of you dealing with any |
| 11:54 | 2 | experts in connection with the Johnson or Barela matter? |
| 11:54 | 3 | A    No, I don't. |
| 11:54 | 4 | Q    Do you have a general recollection, though, that |
| 11:54 | 5 | experts were retained in the Barela matter? |
| 11:54 | 6 | A    Yes. |
| 11:54 | 7 | Q    Why was that? |
| 11:54 | 8 | A    I wasn't that involved in the Barela matter, so I don't |
| 11:54 | 9 | know exactly what they did, but their expertise was needed |
| 11:54 | 10 | as to the case. |
| 11:54 | 11 | Q    Do you recall that we had to have an expert on damages |
| 11:54 | 12 | in the Barela matter? |
| 11:54 | 13 | MR. SAGEL:  Objection, Your Honor.  Your Honor's |
| 11:54 | 14 | motion in-limine on the underlying cases. |
| 11:54 | 15 | MR. AVENATTI:  Goes to the cost, Your Honor. |
| 11:54 | 16 | MR. SAGEL:  He is not asking about the cost, Your |
| 11:54 | 17 | Honor. |
| 11:55 | 18 | THE COURT:  Sustained. |
| 11:55 | 19 | BY MR. AVENATTI: |
| 11:55 | 20 | Q    As you sit there today, you don't know how many experts |
| 11:55 | 21 | in either case were retained; is that fair? |
| 11:55 | 22 | A    That's fair. |
| 11:55 | 23 | Q    Do you know if any experts were retained in connection |
| 11:55 | 24 | with the Phan matter? |
| 11:55 | 25 | A    No, I don't. |

| | | |
|---|---|---|
| 11:55 | 1 | Q    Do you know if any experts were retained in connection |
| 11:55 | 2 | with the Gardner matter? |
| 11:55 | 3 | A    No, I don't. |
| 11:55 | 4 | Q    Do you have any independent knowledge of the total |
| 11:55 | 5 | costs incurred with the Phan matter? |
| 11:55 | 6 | A    No, I do not. |
| 11:55 | 7 | Q    Do you have any independent knowledge relating to the |
| 11:55 | 8 | total costs incurred in connection with the Gardner matter? |
| 11:55 | 9 | A    No, I do not. |
| 11:56 | 10 | MR. AVENATTI:  Let's go back to 102, please.  Now |
| 11:56 | 11 | I want to go to the last page, please. |
| 11:56 | 12 | THE WITNESS:  Okay. |
| 11:56 | 13 | MR. AVENATTI:  And just the last two entry dates, |
| 11:57 | 14 | Joe, just on the left-hand side, please.  If you can just go |
| 11:57 | 15 | to the far left actually. |
| 11:57 | 16 | BY MR. AVENATTI: |
| 11:57 | 17 | Q    Ms. Regnier, I just want to make sure I understand. |
| 11:57 | 18 | You testified yesterday that you don't know if this is |
| 11:57 | 19 | accurate or not, correct? |
| 11:57 | 20 | A    Yes. |
| 11:57 | 21 | Q    Okay.  Now, there's two dates here.  One is |
| 11:57 | 22 | February 28, 2017, and then the next one is June 25th, 2018. |
| 11:57 | 23 | A    Correct. |
| 11:57 | 24 | Q    And in the upper left-hand corner there's that famous |
| 11:57 | 25 | date, July 26th, 2019.  Do you recall that? |

| | | |
|---|---|---|
| 11:57 | 1 | A     Yes, I do. |
| 11:57 | 2 | Q     Okay.  There are no entries in this document from |
| 11:57 | 3 | February 28th, 2017, until June 25th, 2018; is there? |
| 11:58 | 4 | That's a yes-or-no question. |
| 11:58 | 5 | A     Correct. |
| 11:58 | 6 | Q     Do you recall if payments were made to Mr. Johnson |
| 11:58 | 7 | between February 28, 2017, and June 25, 2018?  Do you know? |
| 11:58 | 8 | A     Yes.  There were. |
| 11:58 | 9 | Q     The June 25th, 2018, payment is the last payment on |
| 11:58 | 10 | this document; is that right? |
| 11:58 | 11 | A     Yes, it is. |
| 11:58 | 12 | Q     Do you recall, yes or no, whether payments were made to |
| 11:58 | 13 | Mr. Johnson after June 25th, 2018? |
| 11:58 | 14 | A     Yes, they were. |
| 11:58 | 15 |           MR. AVENATTI:  Let's go to Exhibit 48. |
| 11:59 | 16 |           If we could go to page 4 of 9, the middle of the |
| 11:59 | 17 | page, the last two entries, 12/11/2014 and 12/15/2014. |
| 11:59 | 18 |           THE WITNESS:  Okay. |
| 11:59 | 19 | BY MR. AVENATTI: |
| 11:59 | 20 | Q     Do you have that, Ms. Regnier? |
| 11:59 | 21 | A     Yes, I do. |
| 11:59 | 22 | Q     Were there payments made for the benefit of Mr. Johnson |
| 11:59 | 23 | after December 15th, 2014? |
| 12:00 | 24 | A     Yes, there was. |
| 12:00 | 25 | Q     Meaning just in general.  I'm not talking about this |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 12:00 | 1 | document.  I'm just talking about in general. |
| 12:00 | 2 | A    Yes, there were payments made. |
| 12:00 | 3 | Q    Those payments are not reflected on this page, correct? |
| 12:00 | 4 | A    Correct. |
| 12:00 | 5 | Q    Let's go to page 8 of 9 -- well, strike that.  Yes, |
| 12:00 | 6 | page 8 of 9, Exhibit 48. |
| 12:00 | 7 | A    Okay. |
| 12:00 | 8 | Q    The last two entries, January 30th, 2015, and |
| 12:00 | 9 | February 3, 2015 -- |
| 12:00 | 10 | A    Yes. |
| 12:00 | 11 | Q    -- those are the last two entries on this document, |
| 12:00 | 12 | right? |
| 12:00 | 13 | A    Right.  This document is dated February 14, 2015. |
| 12:01 | 14 | Q    I understand that.  Here's my question.  There were |
| 12:01 | 15 | payments made for the benefit of Mr. Johnson after these two |
| 12:01 | 16 | dates, correct? |
| 12:01 | 17 | A    Yes. |
| 12:01 | 18 | Q    Those payments are not reflected on this document; are |
| 12:01 | 19 | they? |
| 12:01 | 20 | A    No. |
| 12:01 | 21 | Q    And without looking at the actual Tabs software, you |
| 12:01 | 22 | can't tell what those payments were; can you? |
| 12:01 | 23 | A    No, I can't. |
| 12:01 | 24 |         THE COURT:  We'll take the lunch break here. |
| 12:01 | 25 | Ladies and gentlemen, we'll be in recess for just an hour. |

12:01  1   We will resume at 1:00, and we'll conclude for the day at

12:01  2   3:50.  Please remember the admonition not to discuss the

12:01  3   case with anyone and not to form any opinions on the issues

12:01  4   in the case until it is submitted to you.  And do not do any

12:02  5   research.

12:02  6            (Jury not present)

12:02  7            THE COURT:  With respect to documents that have

12:02  8   been offered on the basis of Rule 612, I direct the parties

12:02  9   to meet and confer as to which portions of those documents

12:02  10  should come in.  Some I rejected before.  Mr. Avenatti

12:02  11  raised Rule 612.  He's offering on the basis of 602.

12:02  12           I will reconsider those rulings under 612, but I

12:02  13  would like to have before me either agreed or disputed parts

12:03  14  that you think should come in.  I think we can do that

12:03  15  outside the presence of the jury, and I prefer to do that

12:03  16  tomorrow morning.

12:03  17           With regard to documents that I have rejected

12:03  18  wholly on the basis of failure to comply with Rule 16(b), I

12:03  19  find that none of those documents were presented to the

12:03  20  government or identified to the government prior to the

12:03  21  commencement of Ms. Regnier's testimony.

12:03  22           No offer was made as to whether there was good

12:03  23  cause to excuse prior disclosure.  And I indicated in my

12:03  24  order dealing with this issue at Docket 371 on October 20,

12:03  25  2020 -- I ordered the following:  "Avenatti shall commence a

12:03  1   rolling production of Rule 16(b) material within seven days
12:04  2   and shall complete production no later than December 1,
12:04  3   2020.  This specifically includes all materials for use at
12:04  4   trial other than impeachment evidence.  Dalliance is no
12:04  5   substitute for performance."
12:04  6          So with that ruling in mind with respect to
12:04  7   Ms. Regnier, if you want to make a proffer of what you would
12:04  8   offer that would be subject to my Rule 16 ruling, you're
12:04  9   free to make that.  You don't have to proffer every one if
12:04  10  you just want to make a record.
12:04  11         MR. AVENATTI:  I can do that in writing, Your
12:04  12  Honor?
12:04  13         THE COURT:  That's fine.
12:04  14         MR. AVENATTI:  Okay.
12:04  15         THE COURT:  But I reiterate no effort to comply
12:04  16  with Rule 16 was made prior to Ms. Regnier's commencement of
12:04  17  her testimony, and I believe that no good cause has been
12:04  18  shown.  And I believe that disclosure is consistent with
12:04  19  Rule 16(b)(1)'s effort to eliminate surprise.
12:05  20         MR. AVENATTI:  Your Honor, I have one issue I
12:05  21  would like to raise.
12:05  22         THE COURT:  Okay.
12:05  23         MR. AVENATTI:  I'm going to move to strike and, in
12:05  24  the alternative, a mistrial for failure to comply with the
12:05  25  Jencks Act in Rule 26.2.  In particular as it relates to

12:05  1  Mr. Regnier but also a number of other witnesses, we're

12:05  2  going to be filing that motion.  I want to draw the Court's

12:05  3  attention, though, on the break to what Ms. Regnier

12:05  4  testified to.

12:05  5       She testified that she had text message

12:05  6  communication with Mr. Carlos, Special Agent Carlos, as well

12:05  7  as other individuals at the government.  Those text

12:05  8  messages, Your Honor, are Jencks.  They're covered by Jencks

12:05  9  and they're covered by 26.2.  They should have been produced

12:05  10  before I began the cross-examination of Ms. Regnier.

12:05  11       The record is replete with us raising this Jencks

12:05  12  and 26.2 issue.  We have been produced no text messages by

12:06  13  the government relating to Ms. Regnier, not one.  They

12:06  14  should have been produced.  They are clear statements of a

12:06  15  witness.  She sent the text messages.

12:06  16       We are entitled to them.  I want them immediately

12:06  17  produced.  And if they're not immediately produced, then I'm

12:06  18  going to move to strike her testimony and I'm going to move

12:06  19  for a mistrial.

12:06  20       THE COURT:  I will reserve on those issues and

12:06  21  give the government an opportunity to respond, and you

12:06  22  indicated you wanted to make that in writing in any event.

12:06  23       MR. AVENATTI:  Correct, Your Honor.  But as I'm in

12:06  24  the middle of the cross-examination of Ms. Regnier, I was

12:06  25  entitled to those documents before she took the stand.  We

| | | |
|---|---|---|
| 12:06 | 1 | made the requisite motion.  The record is replete with this. |
| 12:06 | 2 | I would like over the break whatever text messages that the |
| 12:06 | 3 | government has from Ms. Regnier.  I would like them produced |
| 12:06 | 4 | so I can examine them and potentially use them during |
| 12:06 | 5 | cross-examination. |
| 12:06 | 6 | THE COURT:  When we come back, the government |
| 12:07 | 7 | shall affirm or explain its compliance with Jencks and |
| 12:07 | 8 | Rule 26.2. |
| 12:07 | 9 | MR. AVENATTI:  Thank you, Your Honor. |
| 12:07 | 10 | (Recess taken at 12:07 p.m.) |
| 12:07 | 11 | *   *   * |
| 12:07 | 12 | |
| 12:07 | 13 | |
| 12:07 | 14 | |
| 12:07 | 15 | |
| 12:07 | 16 | |
| 12:07 | 17 | |
| 12:07 | 18 | |
| 12:07 | 19 | |
| 12:07 | 20 | |
| 12:07 | 21 | |
| 12:07 | 22 | |
| 12:07 | 23 | |
| 12:07 | 24 | |
| 12:07 | 25 | |

CERTIFICATE


          I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  July 30, 2021



                    /s/   Sharon A. Seffens  7/30/21
                    _____
                    SHARON A. SEFFENS, U.S. COURT REPORTER

**MR. AVENATTI: [151]**
**MR. SAGEL: [68]**  4/5 5/2 5/20 6/6 10/23 11/9
11/12 16/22 17/11 18/5 18/11 18/17 19/4
19/23 20/2 20/10 20/22 21/16 21/23 22/5
22/22 26/10 27/1 27/8 28/22 35/6 36/10 36/23
37/12 38/22 39/19 41/21 43/4 47/6 49/17
50/24 57/13 57/18 62/14 62/22 73/19 75/9
76/8 76/22 79/3 79/9 79/13 80/25 81/16 82/4
82/9 83/11 83/16 84/21 85/5 85/13 86/5 87/21
88/22 89/25 90/11 90/20 92/6 92/20 93/12
94/23 96/13 96/16
**THE CLERK: [4]**  4/3 19/18 22/20 62/7
**THE COURT: [155]**
**THE WITNESS: [9]**  25/15 26/12 34/8 56/11
92/8 92/22 95/1 97/12 98/18

**$**
**$10 [4]**  51/22 52/3 52/5 52/11
**$10 million [4]**  51/22 52/3 52/5 52/11
**$100 [1]**  44/7
**$100 million [1]**  44/7
**$120,000 [1]**  56/22
**$147,972 [1]**  55/22
**$2.85 [2]**  54/7 54/11
**$2.85 million [2]**  54/7 54/11
**$20 [2]**  52/6 52/13
**$20 million [2]**  52/6 52/13
**$25 [2]**  12/1 12/11
**$25 million [2]**  12/1 12/11
**$27,414,668.32 [1]**  53/20
**$39 [1]**  44/9
**$39 million [1]**  44/9
**$4 [2]**  58/14 69/18
**$4 million [2]**  58/14 69/18
**$4,747,466 [1]**  51/16
**$439,375 [1]**  51/10
**$454 [3]**  11/20 24/1 24/14
**$454 million [2]**  24/1 24/14
**$5.6 [1]**  54/1
**$5.6 million [1]**  54/1
**$8.6 [1]**  54/12
**$8.6 million [1]**  54/12
**$85 [1]**  44/14
**$85 million [1]**  44/14
**$899,795.85 [1]**  51/7
**$9.5 [6]**  72/14 72/21 73/6 73/18 74/5 74/13
**$9.5 million [6]**  72/14 72/21 73/6 73/18 74/5
74/13
**$984,750 [1]**  53/20

**'**
**'18 [1]**  46/9
**'s [1]**  101/19

**/**
**/s [1]**  104/16

**0**
**0870 [1]**  1/21

**1**
**1-1053 [1]**  1/20
**10 percent [1]**  54/9
**10- or [1]**  30/9
**1017 [2]**  3/14 34/24
**1019 [6]**  3/13 34/19 34/22 35/3 35/20 35/23
**102 [1]**  97/10
**1023 [2]**  3/14 38/21
**1032 [2]**  3/15 41/20
**1034 [6]**  3/16 42/18 43/3 89/15 89/23 90/5
**1036 [4]**  3/17 88/11 88/21 88/24
**1037 [9]**  3/17 84/10 84/20 84/24 85/2 85/9
85/11 85/13 86/14
**1053 [1]**  1/20
**107 [1]**  2/16
**108 [7]**  73/3 73/11 73/15 73/20 74/11 74/14
74/17
**1084 [2]**  3/15 40/15

**10:30 [1]**  63/4
**10:45 [1]**  63/18
**10th [2]**  38/3 50/23
**11 [4]**  1/12 21/17 32/15 44/5
**11-million-dollar [1]**  30/9
**11/22 [1]**  37/21
**1100 [1]**  2/7
**11:00 saying [1]**  19/10
**11:22 [1]**  81/22
**11:28 [1]**  81/23
**11th [1]**  32/25
**12 [1]**  23/10
**12/11/2014 [1]**  98/17
**12/15/2014 [1]**  98/17
**12:07 [1]**  103/10
**12th [1]**  58/6
**14 [3]**  68/15 70/12 99/13
**15 [3]**  56/21 60/23 62/17
**15th [1]**  98/2
**16 [15]**  38/23 38/25 40/21 41/22 43/5 80/3
80/4 88/22 88/25 90/1 100/18 101/1 101/8
101/16 101/19
**18 [2]**  51/3 51/3
**18th [1]**  53/14
**197 [1]**  63/17
**19th [2]**  68/1 68/18
**1:00 [1]**  19/1
**1st [1]**  80/21

**2**
**2.85 [1]**  54/9
**20 [1]**  100/24
**20 percent [2]**  53/23 54/2
**200 [2]**  43/12 43/13
**2007 [2]**  30/6 31/4
**2013 [8]**  32/15 32/25 34/1 34/11 35/15 37/4
37/21 38/3
**2014 [5]**  29/19 39/12 98/17 98/17 98/23
**2015 [5]**  20/6 58/6 99/8 99/9 99/13
**2016 [6]**  26/9 27/17 40/24 41/3 41/14 41/25
**2017 [12]**  11/20 24/2 42/2 42/6 42/21 46/9
50/23 51/4 91/7 97/22 98/3 98/7
**2018 [17]**  24/23 25/3 50/23 60/4 60/18 60/18
60/19 84/3 84/14 86/17 88/15 93/17 97/22
98/3 98/7 98/9 98/13
**2019 [12]**  29/20 30/6 31/4 63/21 64/2 64/19
65/10 67/19 67/20 68/1 68/18 97/25
**2020 [5]**  5/21 12/13 80/21 100/25 101/3
**2021 [3]**  1/17 4/1 104/14
**20th [1]**  56/23
**21 [4]**  21/6 25/11 51/3 104/16
**213 [1]**  2/8
**216 [4]**  84/22 84/23 84/25 86/5
**22 [1]**  37/21
**221 [2]**  65/2 65/2
**22nd [2]**  41/3 41/14
**23 [1]**  3/6
**25 [3]**  12/12 67/22 98/7
**25 million [2]**  12/25 13/25
**25th [7]**  84/3 84/14 86/17 97/22 98/3 98/9
98/13
**26 [4]**  63/20 64/2 64/19 65/10
**26.2 [4]**  101/25 102/9 102/12 103/8
**269 [2]**  48/13 48/14
**26th [1]**  97/25
**27 [2]**  90/15 91/7
**28 [4]**  53/17 97/22 98/7 104/8
**282 [2]**  58/13 58/13
**283 [1]**  58/25
**286 [1]**  59/5
**28th [2]**  42/21 98/3
**29 [2]**  1/17 4/1
**2nd [2]**  51/3 51/25

**3**
**30 [1]**  104/14
**30 percent [1]**  54/11
**30th [1]**  99/8
**312 [1]**  2/7

**321 [3]**  64/4 64/6 65/2
**333 [2]**  64/12 64/20
**336 [1]**  4/15
**338-3598 [1]**  2/12
**34 [2]**  3/13 3/14
**3598 [1]**  2/12
**369 [2]**  50/13 55/9
**370 [2]**  43/19 43/21
**371 [1]**  100/24
**38 [1]**  3/14
**381 [5]**  3/16 57/12 57/24 57/25 58/2
**387 [1]**  56/21
**3:50 [1]**  100/2
**3rd [2]**  51/3 51/25

**4**
**40 [2]**  3/15 56/22
**40 percent [1]**  54/14
**403 [7]**  39/19 47/7 83/12 88/22 89/25 90/20
94/23
**41 [1]**  3/15
**411 [2]**  1/20 2/11
**42 [1]**  3/16
**48 [2]**  98/15 99/6
**481-4900 [1]**  2/17
**4900 [1]**  2/17
**4th [2]**  1/20 5/21

**5**
**5.7 [2]**  54/9 54/11
**50 [3]**  78/8 79/6 79/25
**543-0870 [1]**  1/21
**57 [1]**  3/16
**5th [1]**  5/21

**6**
**6,000 [1]**  22/2
**60 [1]**  51/16
**602 [6]**  40/19 41/22 61/4 61/8 61/14 100/11
**603580 [1]**  42/18
**604 [1]**  61/17
**612 [10]**  63/8 76/24 76/24 77/5 77/8 89/24
90/3 100/8 100/11 100/12
**644837 [1]**  88/11
**644915 [1]**  84/10
**6683 [1]**  2/8

**7**
**7/30/21 [1]**  104/16
**703 [1]**  61/13
**714 [2]**  1/21 2/12
**739958-959 [1]**  35/13
**740341 [1]**  38/21
**753 [1]**  104/7
**7th [1]**  40/1

**8**
**8000 [1]**  2/11
**84 [1]**  3/17
**85 [2]**  3/17 44/13
**88 [1]**  3/17
**894-6683 [1]**  2/8
**8:31 [1]**  4/1
**8:57 [1]**  22/17

**9**
**90 [1]**  3/16
**90012 [1]**  2/8
**92672 [1]**  2/16
**92701 [2]**  1/20 2/11
**949 [1]**  2/17
**959 [1]**  35/13
**96 [2]**  71/21 71/25
**9:08 [1]**  22/18
**9:53 a.m [1]**  91/7
**9th [1]**  50/22

**A**
**a.m [8]**  4/1 22/17 22/18 63/4 63/5 81/22 81/23

**A**

**a.m....** [1] 91/7
**ability** [2] 25/7 58/9
**able** [5] 16/25 20/4 20/12 20/20 31/22
**about** [70] 5/5 8/9 10/7 10/25 11/18 13/8 17/14 18/7 19/10 20/17 22/2 23/25 24/1 25/12 28/19 29/3 29/4 29/11 29/12 31/23 34/18 34/1 35/7 35/23 37/21 37/22 38/2 40/1 41/4 42/3 42/21 43/8 43/9 43/15 44/12 46/8 46/18 47/18 49/19 49/24 50/2 50/5 50/14 55/12 56/23 57/10 57/16 59/18 63/15 63/16 67/9 68/4 68/6 68/23 69/1 69/13 69/15 71/17 79/5 84/14 85/21 86/17 86/19 86/24 91/20 92/4 92/16 94/6 96/16 98/25 99/1
**above** [1] 104/10
**above-entitled** [1] 104/10
**absence** [1] 85/7
**abundance** [1] 14/14
**acceptable** [1] 78/2
**accordingly** [1] 81/5
**account** [5] 51/20 52/12 56/16 58/10 87/5
**accounts** [6] 17/22 29/4 29/8 29/12 29/13 29/21
**accurate** [4] 63/24 64/16 65/7 97/19
**accusation** [1] 69/20
**accusations** [1] 17/13
**accused** [6] 69/24 70/2 70/18 70/24 71/11 71/14
**accuses** [1] 69/18
**acquiescent** [1] 85/3
**act** [2] 17/1 101/25
**action** [1] 28/16
**actions** [3] 31/5 31/12 31/14
**actual** [2] 92/2 99/21
**actually** [7] 10/7 18/23 19/18 25/23 66/14 76/10 97/15
**additional** [1] 46/3
**additions** [2] 39/7 39/9
**address** [4] 85/22 90/15 90/18 90/25
**addresses** [3] 84/24 86/9 90/12
**adequate** [1] 77/23
**admin** [1] 87/6
**administration** [3] 70/3 70/15 92/15
**administrator** [1] 87/13
**admission** [5] 40/17 57/14 76/25 77/11 85/2
**admitting** [1] 61/6
**admonition** [2] 60/24 100/2
**advance** [3] 5/23 6/2 79/24
**advise** [1] 8/11
**advised** [3] 8/7 28/6 82/13
**advisor** [1] 47/25
**advisory** [2] 2/15 4/10
**affidavit** [9] 42/9 42/24 89/3 89/7 89/17 91/8 91/15 91/18 92/2
**affirm** [1] 103/7
**afoul** [3] 5/4 14/14 16/16
**after** [16] 13/14 13/15 14/6 26/14 26/24 27/5 27/21 28/15 39/5 62/17 67/18 67/21 72/7 98/13 98/23 99/15
**afternoon** [3] 24/1 37/23 40/5
**again** [13] 10/23 17/20 22/18 28/8 48/21 64/1 64/18 65/10 67/5 68/3 77/19 79/3 90/8 92/13 98/23 99/15
**against** [13] 10/3 10/17 28/16 59/23 60/3 70/14 70/25 71/3 72/2 73/3 74/1 74/6 74/15
**Agent** [3] 4/7 22/24 102/6
**agents** [7] 5/6 5/8 5/13 21/17 65/16 65/19 67/7
**agree** [10] 10/3 14/24 15/4 19/21 22/14 51/1 62/13 71/2 77/13 93/10
**agreed** [1] 100/13
**agreement** [4] 8/10 50/8 54/18 54/23
**agreements** [1] 47/14
**ahead** [1] 55/8
**ALEXANDER** [3] 2/5 4/6 22/23
**all** [16] 8/9 28/18 29/18 37/16 53/10 59/14 67/10 67/18 71/9 74/6 74/15 80/6 88/2 92/13 101/3
**allegation** [2] 70/20 70/22
**allegations** [6] 10/2 10/16 21/7 70/14 71/1

72/1
**alleged** [9] 11/17 21/2 46/10 69/11 70/4 70/8 71/4 71/5 71/7
**allegedly** [1] 47/8
**allergies** [1] 19/13
**allow** [3] 8/25 78/1 80/12
**allowed** [3] 5/7 5/25 85/16
**alluding** [1] 76/13
**almost** [2] 5/6 6/1
**along** [2] 21/5 69/7
**already** [3] 97/10 85/5 86/1
**also** [19] 5/20 10/25 11/2 11/19 15/22 16/8 17/20 20/4 20/4 34/23 37/12 69/15 70/2 70/24 72/22 80/25 86/18 90/11 102/1
**alternates** [2] 19/25 23/11
**alternative** [1] 101/24
**am** [14] 5/7 10/6 11/9 14/17 15/7 64/6 67/12 71/16 75/5 78/21 80/21 81/2 86/17 94/16
**AMERICA** [3] 1/9 4/4 22/21
**among** [1] 13/21
**amount** [15] 5/15 11/24 11/25 44/15 45/5 55/25 58/11 58/12 72/21 73/6 74/2 74/13 75/6 78/25 83/1
**amounts** [3] 45/1 56/6 71/8
**Ana** [4] 1/16 1/20 2/11 4/1
**Andre** [2] 20/23 21/5
**Andrew** [8] 16/11 17/21 17/25 18/13 26/19 26/21 26/22 27/4
**Angeles** [1] 2/8
**Ann** [1] 36/17
**another** [11] 6/3 9/25 14/12 26/2 36/13 42/3 42/7 50/13 53/20 54/11 65/4
**answer** [6] 18/25 32/3 40/14 72/17 75/21 75/23
**answered** [6] 28/22 36/11 36/23 75/9 87/21 92/20
**any** [76] 4/25 6/10 7/2 7/3 7/23 12/19 14/7 15/4 17/6 17/7 17/24 18/3 18/12 20/8 20/22 23/15 25/9 31/16 31/16 35/19 35/24 40/22 45/5 47/10 47/11 47/14 47/18 48/4 48/7 48/10 49/8 49/11 52/8 54/22 55/15 55/18 55/24 56/5 56/18 58/9 59/13 59/15 60/25 61/2 62/11 64/1 64/16 64/21 65/10 65/16 65/18 65/18 66/20 67/8 69/22 72/10 75/5 75/17 76/25 78/17 81/17 83/1 83/23 85/23 91/15 93/18 94/21 95/22 96/1 96/23 97/1 97/9 97/17 100/3 100/4 102/22
**anybody** [2] 5/6 21/4
**anybody's** [1] 82/18
**anyone** [2] 60/25 100/3
**anything** [18] 7/23 7/25 10/22 11/13 16/23 17/14 19/6 21/4 31/23 45/21 48/7 49/2 49/18 50/5 57/10 58/12 61/14 89/18
**apologize** [2] 64/6 76/22
**Appeal** [1] 24/10
**appear** [4] 58/4 60/7 74/11 74/13
**APPEARANCES** [1] 2/1
**appears** [6] 48/17 63/20 64/14 65/4 74/15 74/17
**appellate** [1] 78/15
**application** [1] 77/8
**apply** [2] 41/22 61/12
**appreciate** [1] 10/5
**approach** [17] 32/20 34/5 36/9 36/21 37/9 38/8 39/17 39/21 41/7 42/13 68/8 70/6 71/18 73/8 84/5 88/5 89/11
**appropriate** [3] 15/21 16/19 18/15
**approval** [4] 21/13 21/24 30/23 32/8
**approve** [6] 20/16 20/19 31/15 31/19 40/17 93/9
**approving** [1] 20/24
**approximate** [1] 5/15
**approximately** [2] 46/9 53/17
**arbitration** [4] 59/23 60/5 60/6 60/16
**Arden** [5] 41/16 42/7 42/22 90/15 91/11
**are** [66] 4/22 5/25 6/8 6/13 6/15 6/17 6/19 7/13 9/25 10/16 11/4 11/6 11/7 13/22 14/24 15/4 18/25 23/16 24/18 31/8 31/11 31/8 31/17 31/22 31/25 32/3 37/14 39/6 41/19 42/25 43/16 47/10 47/12 47/14 49/2 51/22 57/18

59/10 59/14 62/23 67/8 68/6 69/4 69/7 72/1 73/9 74/6 77/4 77/13 78/6 78/6 80/2 85/3 85/21 86/13 86/18 87/2 94/8 98/2 99/3 99/11 99/18 99/18 102/8 102/14 102/16
**area** [3] 55/2 55/4 87/13
**areas** [1] 16/14
**argue** [1] 9/19
**argument** [1] 80/2
**around** [2] 58/6 95/20
**arrange** [1] 29/20
**arrest** [6] 12/12 12/16 13/11 13/14 13/15 14/6
**as** [97] 3/16 3/17 4/14 9/5 11/6 12/10 13/9 14/17 14/20 14/20 15/7 15/9 15/23 16/2 16/24 17/3 18/3 18/12 20/6 20/6 20/9 21/25 23/3 23/3 24/23 25/3 25/5 25/8 29/7 30/2 30/13 30/16 39/13 42/17 43/19 45/4 47/18 48/7 48/10 49/11 50/10 52/5 52/12 55/15 55/18 55/24 56/5 56/11 67/24 69/20 70/22 72/11 72/14 73/5 74/3 74/8 74/18 74/21 75/4 75/8 75/16 77/8 77/16 78/7 78/14 78/17 78/18 78/19 80/24 84/10 85/9 86/9 86/9 87/19 88/10 89/4 89/18 90/4 90/5 91/14 91/17 91/23 92/16 96/10 96/20 100/9 100/22 101/25 102/6 102/7 102/23
**aside** [1] 13/6
**ask** [15] 11/10 15/13 18/7 18/9 35/7 36/13 45/15 52/11 63/15 63/16 69/1 75/2 86/19 91/20 94/14
**ask that** [1] 11/10
**asked** [26] 5/5 23/25 25/12 27/24 28/22 29/3 29/7 32/16 33/1 43/9 43/15 46/17 49/19 49/23 50/14 55/12 59/18 66/21 66/25 68/22 75/9 83/9 83/15 86/19 87/21 92/20
**asking** [9] 11/4 11/18 17/3 17/9 17/24 33/8 35/23 67/12 96/16
**assets** [2] 29/13 29/16
**assistant** [8] 2/4 2/6 2/10 26/25 65/16 65/19 67/8 93/21
**assisted** [1] 93/7
**assisting** [5] 4/12 47/5 54/20 60/15 91/12
**associated** [1] 22/9
**assumes** [1] 27/9
**assuming** [1] 76/12
**attached** [1] 91/7
**attempt** [3] 18/21 18/22 55/3
**attempting** [2] 5/11 37/5
**attention** [3] 50/13 68/15 102/3
**attesting** [1] 89/4
**attorney** [13] 2/3 2/4 2/6 2/10 21/1 21/12 25/21 26/5 26/23 26/24 42/7 75/14 75/15 28/21
**Attorney's** [6] 26/25 27/5 27/13 27/14 27/16 28/21
**attorney/client** [1] 75/15
**attorneys** [14] 26/14 26/18 31/20 32/7 33/17 36/2 40/9 42/2 65/16 65/19 67/8 91/11 95/23 95/25
**audited** [1] 20/6
**AUSAs** [2] 5/6 7/5
**authorize** [1] 31/10
**available** [1] 29/16
**AVENATTI** [18] 1/11 2/14 4/4 4/10 4/14 5/11 6/11 9/24 22/21 23/2 23/13 23/18 63/12 69/9 82/4 82/20 100/10 100/25
**Avenatti's** [2] 5/24 17/9
**Avenida** [1] 2/16
**Avenue** [1] 22/4
**await** [1] 80/22
**award** [1] 30/9
**aware** [11] 20/22 20/25 21/2 21/25 28/11 43/16 47/4 47/10 47/14 48/3 50/7
**ax** [1] 16/11

**B**

**B.S** [1] 23/9
**back** [15] 10/1 10/15 11/23 14/2 17/21 18/1 26/15 28/6 40/3 55/9 62/18 67/18 91/9 97/10 103/6
**backwards** [1] 10/10

**B**
**bad [1]** 14/22
**bank [3]** 29/4 58/3 59/14
**banking [1]** 45/9
**Barela [32]** 9/16 9/23 10/1 10/8 10/12 40/25
41/4 41/15 42/3 42/8 42/22 68/23 83/9 83/24
84/17 85/25 86/16 87/1 87/9 87/11 87/19 88/1
88/3 88/15 89/6 91/12 92/2 92/4 96/2 96/5
96/8 96/12
**Barela's [7]** 83/19 83/22 84/15 85/22 87/4
87/16 89/16
**Baristas [1]** 20/7
**Barr's [1]** 16/2
**Barton [2]** 76/11 76/19
**based [2]** 9/16 77/25
**basically [3]** 78/1 89/4 92/17
**basis [12]** 17/3 17/8 18/7 18/10 22/14 34/22
38/24 40/18 61/5 100/8 100/11 100/18
**Bates [4]** 37/16 77/17 80/6 80/16
**bathroom [1]** 81/19
**Bay [2]** 55/2 55/4
**be [72]** 5/3 8/4 8/20 8/25 12/15 14/4 14/6
15/15 15/19 16/25 17/2 20/4 20/10 20/11
20/12 20/20 22/16 23/8 23/8 24/9 27/24 30/2
30/16 30/18 34/21 34/25 36/11 37/6 38/24
39/16 40/4 40/12 40/21 41/23 42/24 43/5
44/18 48/11 54/14 57/4 57/23 58/8 60/23
61/17 62/4 63/1 63/3 63/20 64/14 65/4 67/2
67/3 71/1 71/13 75/6 76/17 78/12 80/2 80/2
81/11 82/13 83/7 85/8 85/20 87/8 88/24 90/2
90/4 99/25 101/8 102/2
**bearing [3]** 13/16 14/7 83/6
**because [18]** 6/1 8/1 12/15 12/15 12/20 12/25
13/16 13/20 14/11 14/14 16/6 17/4 17/10
18/19 43/23 66/11 74/23 80/7
**been [30]** 7/4 11/25 15/1 15/12 15/13 18/18
19/14 21/19 24/2 24/17 26/24 27/4 27/22
28/12 37/13 66/13 71/9 72/10 80/18 80/24
81/16 84/9 86/1 87/18 88/10 100/8 101/17
102/9 102/12 102/14
**before [17]** 8/7 12/12 17/18 17/19 17/24
31/10 31/16 50/2 60/7 74/18 80/14 82/2 85/16
100/10 100/13 102/10 102/25
**began [1]** 102/10
**beginning [2]** 84/10 90/14
**begins [1]** 42/18
**begs [1]** 7/9
**behalf [3]** 4/6 22/23 82/6
**behind [3]** 14/20 26/15 52/8
**being [12]** 8/1 20/5 28/5 28/6 28/9 36/4 52/9
52/12 68/23 69/2 88/2 92/2
**belabor [2]** 81/3 81/15
**believe [28]** 5/23 6/22 7/2 9/17 14/10 16/7
16/8 19/1 28/4 28/18 29/7 40/19 46/25 47/2
48/12 49/10 51/16 54/24 60/1 65/17 65/23
72/22 75/24 77/4 81/6 89/8 101/17 101/18
**benefit [4]** 48/15 56/24 98/22 99/15
**best [4]** 53/2 70/21 74/21 82/18
**better [2]** 50/18 94/14
**between [7]** 33/7 35/22 47/15 47/18 50/22
66/2 98/7
**beyond [1]** 8/24
**bias [1]** 76/18
**bigger [1]** 50/17
**bit [1]** 92/15
**blanche [1]** 16/18
**block [1]** 48/17
**blow [2]** 48/16 50/17
**blurts [1]** 8/9
**Bonilla [1]** 42/23
**bonuses [1]** 30/14
**both [4]** 17/15 51/22 52/3 60/7
**bottom [4]** 55/10 56/10 86/25 90/14
**bought [1]** 11/19
**BRANDON [1]** 2/4
**break [11]** 40/20 60/21 60/22 61/18 62/17
76/1 81/20 82/22 102/4 102/3 103/2
**Bredahl [2]** 19/11 23/17
**BRETT [3]** 2/9 4/5 22/22

**briefly [4]** 10/2 10/16 10/23 11/14
**bring [4]** 5/11 8/23 12/14 13/16
**brought [2]** 9/15 69/4
**building [2]** 2/10 22/3
**buildings [1]** 22/6
**business [6]** 47/15 49/3 49/9 49/14 52/16
53/7

**C**
**CA [4]** 1/20 2/8 2/11 2/16
**CALIFORNIA [4]** 1/5 1/16 4/1 58/3
**call [6]** 9/2 14/18 15/14 32/17
**called [9]** 19/9 19/11 23/6 27/21 28/6 31/16
33/19 39/9 52/24
**Calling [1]** 22/20
**Calls [2]** 27/8 93/12
**came [1]** 95/24
**can [62]** 20/2 20/9 20/13 20/20 32/10 32/19
32/20 33/12 35/10 36/8 36/21 37/9 38/7 39/17
40/20 42/13 45/4 45/5 48/19 50/16 50/20 54/1
55/8 56/13 57/2 57/16 57/17 57/25 58/18 60/6
60/8 65/24 68/8 71/7 71/18 76/5 76/17 77/13
78/5 79/6 79/9 79/16 80/9 80/10 81/7 81/19
82/2 86/11 88/5 90/6 90/9 90/23 90/24 91/3
91/4 91/5 94/14 97/14 99/22 100/14 101/11
103/4
**can't [5]** 14/7 21/12 77/16 99/22 99/23
**cannot [2]** 72/17 82/13
**capacity [1]** 17/1
**card [2]** 58/3 58/4
**Carlos [10]** 4/7 22/24 25/20 67/13 67/15
67/17 67/21 68/19 102/6 102/6
**carte [1]** 16/18
**case [48]** 4/24 5/13 5/16 5/19 5/24 7/8 7/25
8/2 9/22 10/8 10/11 11/23 17/18 20/4 21/4
21/6 25/24 27/6 30/9 31/24 34/3 39/5 42/4
44/9 44/12 44/22 46/21 46/22 54/20 60/25
61/1 70/24 74/5 76/14 79/5 82/5 83/20 89/7
92/1 93/8 93/18 93/20 95/10 95/13 96/10
96/21 100/3 100/4
**cases [15]** 21/24 24/6 24/21 24/24 25/1 25/3
25/8 33/20 42/24 44/25 93/3 93/22 95/7 95/15
96/14
**cat [1]** 79/5
**Cathy [1]** 41/3
**caught [1]** 26/15
**cause [5]** 80/10 80/23 81/7 100/23 101/17
**caused [4]** 57/4 72/20 73/5 73/17
**causing [1]** 71/7
**caution [1]** 14/14
**cc [1]** 26/2
**cc's [2]** 25/24 25/25
**Cefali [2]** 4/11 23/2
**cell [1]** 84/23
**cemetery [2]** 44/12 44/22
**CENTRAL [1]** 1/5 86/7
**cents [1]** 51/17
**certainly [1]** 19/2
**CERTIFICATE [1]** 104/5
**CERTIFIED [1]** 1/9
**certify [1]** 104/7
**chain [4]** 86/16 86/18 86/20 86/23
**chance [1]** 73/23
**change [2]** 4/16 4/25
**changed [1]** 66/14
**changes [2]** 39/3 62/19
**charge [1]** 20/15
**charged [1]** 72/10
**charges [3]** 7/24 12/12 16/6
**chat [1]** 49/3
**check [3]** 10/6 40/20 61/23
**checks [1]** 71/7
**chief [2]** 2/5 20/25
**chose [1]** 82/10
**chosen [1]** 53/6
**Circuit [5]** 12/12 12/20 14/1 14/17 79/5
**circumstances [1]** 28/20
**cited [1]** 61/16
**civil [7]** 9/18 9/21 22/8 28/17 39/5 76/9 76/13

**claim [1]** 60/10
**claimed [3]** 60/4 74/25 74/7
**claiming [2]** 72/13 74/4
**claims [2]** 71/5 73/20
**clarification [1]** 5/3
**clarify [5]** 21/23 27/2 30/21 32/11 54/17
**Clark [3]** 11/19 13/21 24/13
**class [3]** 31/5 31/12 31/13
**clear [9]** 6/13 6/14 6/15 6/17 10/24 14/6 79/20
81/11 102/14
**Clearing [1]** 56/16
**Clemente [2]** 2/16
**client [11]** 17/22 31/15 31/16 31/23 33/6
45/16 45/17 45/23 75/15 93/9 95/10
**clients [10]** 30/22 31/6 32/8 33/18 68/20
92/10 92/19 92/24 93/6 95/7
**close [1]** 28/12
**Code [1]** 104/8
**cognizant [1]** 81/4
**Colorado [18]** 25/20 25/20 32/16 32/25 33/10
33/12 33/25 34/11 35/4 35/15 35/22 37/5
37/21 38/3 38/4 39/13 40/2 40/3
**come [10]** 28/6 28/19 30/13 47/22 57/18
61/22 77/4 100/10 100/14 103/6
**comedian [1]** 46/12
**comes [1]** 76/15
**coming [1]** 77/5
**commence [1]** 100/25
**commencement [2]** 100/21 101/16
**committed [1]** 71/2
**committing [1]** 27/5
**communicate [1]** 31/9 33/18 37/5 47/1 83/19
**communicated [7]** 30/22 47/2 83/22 93/16
93/23 94/1 94/4
**communicating [13]** 35/16 36/3 36/7 36/17
36/20 37/22 40/24 41/3 41/15 42/3 42/8 42/22
92/10
**communication [14]** 31/14 31/16 31/25 33/5
33/6 33/7 33/15 35/3 76/16 83/25 84/2 84/22
93/10 102/6
**communications [13]** 31/18 33/22 35/19
35/22 35/25 36/1 36/5 41/18 43/16 49/8 65/14
84/14 87/15
**company [13]** 20/6 47/19 48/1 48/1 48/5
52/24 53/2 53/4 53/6 55/3 60/16 88/1 88/16
**complaint [2]** 71/13 72/19
**Complaints [1]** 77/5
**complete [1]** 101/2
**completes [1]** 8/14
**compliance [4]** 80/3 80/4 80/20 103/7
**compliant [1]** 80/18
**complies [3]** 43/14 59/6 64/5
**comply [6]** 80/7 88/25 90/1 100/18 101/15
101/24
**computer [1]** 27/25
**concerned [1]** 19/13
**concerning [2]** 54/23 83/23
**conclude [1]** 100/1
**concluding [1]** 19/3
**condition [4]** 11/16 12/17 13/9 19/13
**conditions [1]** 19/15
**conduct [11]** 12/7 12/17 13/10 14/7 27/6
72/14 72/16 72/19 72/19 73/6 81/5
**conducted [1]** 14/19
**confer [6]** 75/25 76/20 77/13 82/23 90/3
100/9
**Conference [1]** 104/12
**confirm [1]** 58/13
**confirmed [2]** 19/12 87/4
**conformance [1]** 104/11
**congested [1]** 19/11
**connection [16]** 33/19 34/2 44/22 55/1 65/14
89/7 89/16 94/8 94/12 94/15 95/13 95/16 96/2
96/23 97/1 97/8
**consist [1]** 61/11
**consistent [1]** 101/18
**constitute [1]** 23/10
**Constitution [2]** 22/4 22/5
**consult [2]** 77/3 94/16

**C**

**contact [5]** 32/8 34/1 92/19 92/22 92/23
**contacted [2]** 33/1 33/12
**contention [1]** 12/6
**contesting [1]** 18/6
**continue [2]** 15/16 77/24
**Continued [2]** 3/6 23/21
**controversial [1]** 12/2
**conversation [1]** 91/8
**conversations [1]** 40/8
**converse [1]** 92/4
**conversed [1]** 91/21
**convicted [1]** 21/8
**conviction [1]** 9/20
**copied [3]** 33/15 38/16 38/18
**copies [2]** 41/15 42/22
**copy [4]** 4/15 68/12 70/10 84/9
**corner [3]** 64/18 65/9 97/24
**corporate [1]** 52/21
**correct [71]** 17/11 24/12 25/10 25/21 26/4
26/17 27/18 27/25 28/9 28/10 29/8 29/21
29/25 30/1 30/5 30/6 30/12 33/14 34/16 35/5
38/18 39/8 39/11 41/19 43/17 45/24 46/1 50/2
51/15 52/4 54/10 54/21 58/8 58/23 60/18
63/21 63/22 63/24 63/25 64/3 64/22 64/23
65/12 65/13 66/22 66/24 67/1 67/16 69/7
69/16 72/8 80/21 80/22 82/13 83/8 84/16
84/17 86/17 91/12 94/9 95/8 95/14 95/21
97/19 97/23 98/5 99/3 99/4 99/16 102/23
104/9
**corrections [2]** 39/7 39/9
**correctly [1]** 12/24
**cost [4]** 95/3 95/6 96/15 96/16
**costs [3]** 45/16 94/8 94/11 97/5 97/8
**coughing [1]** 19/11
**could [24]** 4/20 10/3 13/14 25/13 29/2 31/11
32/17 39/16 43/12 45/11 45/17 45/18 45/19
48/15 48/16 50/15 50/17 62/2 67/3 67/6 67/6
85/11 86/5 98/16
**couldn't [2]** 45/16 80/2
**counsel [14]** 2/1 2/15 4/7 4/11 8/7 17/8 22/24
71/16 75/13 75/25 76/9 76/9 82/24 87/13
**countless [1]** 17/13
**country [1]** 95/20
**course [3]** 18/10 24/5 31/3
**court [19]** 1/4 4/14 6/20 6/23 8/24 9/10 14/15
15/18 19/23 20/18 24/10 24/10 62/2 68/12
70/9 80/5 82/13 82/13 104/14
**Court's [12]** 7/20 8/11 8/15 9/7 9/14 10/6 14/4
77/16 77/20 78/10 80/8 102/2
**Courthouse [2]** 1/19 2/7
**cover [1]** 29/21
**covered [1]** 102/8 102/9
**COVID [1]** 19/14 23/8 23/16 62/3
**COVID-like [1]** 23/16
**create [1]** 58/23
**creating [1]** 78/16
**crimes [1]** 72/10
**criminal [7]** 2/5 5/24 7/24 7/25 13/10 14/7
22/8
**cross [13]** 3/4 3/10 8/19 9/14 11/18 18/20
23/21 62/15 78/20 82/2 102/10 102/24 103/5
**cross-examination [8]** 9/14 11/18 23/21
62/15 78/20 102/10 102/24 103/5
**cross-examinations [1]** 18/20
**crystal [1]** 6/13
**Cummings [1]** 4/11
**Cummings-Cefali [1]** 4/11
**cumulative [2]** 39/20 47/8
**current [1]** 67/2
**currently [1]** 69/4
**curtail [1]** 21/21
**curtailed [1]** 10/13
**curtailing [1]** 9/14
**custodian [1]** 57/14
**cut [2]** 12/9 51/16
**cutoff [1]** 81/8

**D**

**D.C [1]** 20/14
**Dalliance [1]** 101/4
**damage [3]** 72/20 73/5 74/13
**damages [6]** 28/17 72/13 73/17 74/1 74/4
96/11
**Daniels [1]** 17/18
**data [1]** 46/1
**date [15]** 12/21 13/11 28/15 51/20 64/18
64/22 65/9 65/10 65/11 67/25 80/24 81/8 91/5
97/25 104/14
**dated [2]** 63/20 99/13
**dates [5]** 50/24 97/13 97/21 99/16
**day [4]** 1/12 5/24 45/22 100/1
**days [5]** 62/4 62/9 101/1
**deadline [2]** 80/8 80/21
**deal [3]** 85/18 93/5 95/22
**dealing [3]** 39/13 96/1 100/24
**dealt [2]** 6/8 95/24
**DEAN [4]** 2/15 2/15 4/11 23/2
**death [1]** 46/24
**debate [3]** 22/7 77/19 80/9
**deceived [1]** 71/6
**December [7]** 38/3 80/8 80/11 80/21 81/8
98/23 101/2
**December 1 [2]** 80/8 80/11
**December 10th [1]** 38/3
**December 15th [1]** 98/23
**December 1st [1]** 80/21
**decided [2]** 9/5 24/18
**decision [1]** 20/15
**declaration [1]** 89/4
**defendant [13]** 1/12 2/13 4/10 9/18 10/2
10/25 16/4 17/17 18/19 19/20 23/6 49/9 69/7 84/24
**defendant's [3]** 34/22 84/10 88/11
**defendants [2]** 74/6 74/16
**defense [6]** 3/9 3/12 14/18 34/18 84/20 88/21
**defer [1]** 19/23
**deference [1]** 8/11
**degree [1]** 9/1
**Delaware [1]** 88/17
**delay [1]** 49/11
**Denied [1]** 74/9
**department [1]** 21/11
**departure [1]** 28/20
**deposit [3]** 29/25 30/4 30/10
**deposition [6]** 39/3 39/5 39/14 41/4 41/17
42/4
**describe [1]** 5/22
**described [1]** 16/2
**description [1]** 19/16
**destroyed [1]** 66/13
**determination [1]** 78/14
**determine [1]** 45/8
**devoted [1]** 6/4
**did [62]** 12/24 20/15 20/19 21/6 25/7 27/17
28/18 28/19 29/12 29/17 29/24 30/21 30/23
30/24 46/18 47/1 47/11 49/6 49/14 50/4 50/5
52/11 52/14 53/20 53/22 54/22 54/24 55/4
58/21 58/24 59/1 59/3 59/13 59/15 63/16
65/15 65/17 65/18 65/23 68/5 68/7 73/23 80/5
82/23 83/19 84/2 84/18 87/8 87/10 87/11
91/20 92/4 92/13 92/19 93/2 93/5 93/9 93/18
93/20 94/11 95/22 96/9
**didn't [14]** 15/3 18/3 21/16 30/3 36/10 58/23
64/1 64/21 65/10 66/15 66/15 76/22 80/7
86/19
**differ [1]** 92/13
**different [1]** 67/25
**differently [1]** 8/20
**difficulty [1]** 14/11
**direct [15]** 3/4 3/10 11/15 25/12 29/4 30/19
30/21 43/8 43/15 49/23 62/25 68/15 77/3 90/3
100/8
**directed [2]** 15/19 21/4
**Directing [1]** 50/13
**direction [1]** 75/23
**directive [1]** 78/22
**directly [6]** 33/1 36/17 37/5 39/13 40/4 40/25

**D**

**disagree [5]** 6/20 6/23 13/8 13/12 93/10
**disclosure [2]** 100/20 100/24
**discovered [1]** 27/21
**discovery [7]** 33/19 37/14 77/16 80/11 80/18
80/24 81/7
**discuss [3]** 60/24 75/14 100/2
**discussed [4]** 4/22 5/15 33/10 75/13
**discussion [1]** 8/13
**dismissed [1]** 62/1
**dispense [1]** 20/20
**displayed [2]** 85/20 86/1
**displaying [1]** 86/13
**dispute [5]** 32/18 40/7 47/18 48/5 69/22
**disputed [1]** 100/13
**distributions [1]** 30/16
**district [1]** 1/4 1/5 7/5
**District's [1]** 86/7
**divided [2]** 52/9 55/18
**Divinium [1]** 52/25
**DIVISION [4]** 1/6 2/5 21/25 22/2
**do [177]**
**Docket [2]** 4/15 100/24
**document [55]** 32/22 32/24 34/7 34/8 34/10
35/7 37/11 37/20 38/10 38/12 39/22 41/9
41/11 42/15 50/13 58/10 58/14 58/15 58/21
58/23 59/1 59/2 61/6 61/22 63/19 68/10 70/8
70/13 71/20 71/22 72/7 73/10 73/12 73/24
76/6 78/1 78/2 78/4 84/7 85/20 88/8 88/11
89/13 90/9 90/11 90/14 90/17 91/20 91/25
98/2 98/10 99/1 99/11 99/13 99/18
**documents [30]** 34/2 34/12 35/17 37/13
46/17 54/22 59/15 63/15 77/2 77/4 77/9 77/17
77/24 78/8 78/17 79/6 79/14 79/24 80/6 80/13
80/15 80/17 80/23 82/1 93/2 100/7 100/9
100/17 100/19 102/25
**does [32]** 17/12 21/2 32/24 34/10 35/23 37/20
38/12 39/24 41/11 41/22 41/23 42/18 46/14
47/24 57/7 58/4 61/12 64/15 68/16 70/12
71/25 72/4 72/5 73/15 74/11 74/13 74/18 82/7
82/8 84/13 88/14 89/15
**doesn't [11]** 4/16 16/23 21/8 38/15 49/18 61/5
61/14 69/19 74/17 77/10 89/18
**doing [11]** 7/10 8/20 15/15 16/14 16/17 21/25
27/22 65/21 87/19 88/15 91/23
**DOJ [4]** 21/11 21/24 21/24 22/2
**dollar [2]** 30/9 45/1
**dollars [9]** 30/2 30/3 30/10 44/3 44/21 53/18
53/24 54/6 95/10
**don't [119]**
**Donahue [2]** 76/13 76/19
**done [6]** 17/19 21/6 80/14 80/24 82/2 88/2
**door [3]** 9/1 20/5 20/11
**doubt [5]** 34/4 39/16 42/5 42/10 68/7
**down [16]** 4/17 5/1 6/7 8/22 12/9 13/18 30/19
30/20 30/23 30/24 48/16 55/2 56/23 74/2 92/2
90/15 92/18
**draw [1]** 102/2
**due [4]** 24/17 59/24 60/4 60/11
**during [8]** 16/25 29/15 44/2 44/5 45/21 66/13
82/22 103/4
**duties [1]** 25/6
**duty [1]** 15/15

**E**

**e-mail [30]** 25/14 31/23 31/24 32/16 34/12
34/17 35/3 38/16 38/18 40/6 41/19 42/25
43/16 43/18 59/8 83/25 84/2 84/21 84/24
85/22 86/9 86/16 86/18 86/20 86/23 86/25
90/11 90/18 90/19 90/25
**e-mailed [1]** 84/17
**e-mails [6]** 31/21 32/10 54/22 65/16 85/12
85/14
**Eagan [5]** 69/9 69/11 72/20 73/4 73/17
**earlier [5]** 8/12 54/17 57/8 69/13 69/15
**early [1]** 11/20 20/6 23/6
**easiest [1]** 5/22
**effect [1]** 31/1
**effort [3]** 35/16 101/15 101/19
**eight [4]** 11/1 56/23 62/25 63/1

**E**

either [7]  4/23 7/15 45/17 62/10 67/4 96/21 100/13
electronic [1]  45/25
elicit [1]  12/19
elicited [2]  11/22 12/14
eliciting [2]  11/15 11/24
eliminate [1]  101/19
elmo [2]  86/3 86/14
else [6]  10/22 11/13 28/6 33/7 81/17 93/22
employed [1]  92/11
engage [2]  16/4 22/12
engaged [1]  16/1
engaging [1]  34/12
enough [3]  16/21 77/14 91/1
entire [4]  13/5 18/18 18/20 77/5
entirety [1]  12/13
entitled [22]  4/22 5/14 7/3 7/18 10/1 11/6 11/8 11/9 13/3 13/4 13/5 13/22 14/17 14/24 15/4 16/8 16/9 16/14 18/9 102/16 102/25 104/10
entries [4]  98/2 98/17 99/8 99/11
entry [1]  97/13
equity [1]  48/1
errata [4]  39/2 39/10 39/14 40/3
escorted [2]  28/2 28/5
especially [1]  14/15
establish [12]  4/21 4/23 5/12 7/14 10/1 12/8 13/4 13/5 13/22 13/24 15/2 80/10
estimate [2]  25/8 62/24 62/24 65/24 66/2
estimating [1]  25/2
even [8]  17/15 22/3 30/2 30/8 54/14 76/22 79/5 80/6
evening [1]  37/23
event [1]  102/22
ever [19]  17/18 17/19 21/4 30/22 47/1 49/6 49/8 49/14 52/11 54/22 59/15 83/9 83/15 83/19 83/22 89/6 93/23 94/1 94/4
every [12]  5/5 15/14 20/23 21/6 31/8 31/14 31/15 31/15 43/21 78/2 93/9 101/9
everyone [2]  87/14 93/22
evidence [19]  18/25 18/25 27/9 35/7 35/10 47/10 48/14 57/17 57/19 57/24 58/18 61/5 61/9 61/10 61/22 76/25 85/9 90/5 101/4
exact [4]  21/6 30/25 45/5 45/16
exactly [5]  16/7 18/21 36/6 38/15 96/9
examination [13]  4/18 9/14 11/18 21/21 23/21 30/19 30/21 49/23 62/15 78/20 102/10 102/24 103/5
examinations [1]  18/20
examine [1]  103/4
example [2]  5/4 18/13
excess [2]  73/18 74/5
exclude [1]  80/5
excluded [1]  78/18
exclusion [4]  79/13 79/20 79/23 80/15
excuse [2]  19/24 100/23
excused [1]  23/8
execute [2]  21/12 21/14
executed [2]  24/16 24/20
executives [1]  55/3
exhibit [35]  3/13 3/14 3/14 3/15 3/15 3/16 3/16 3/17 3/17 25/11 25/11 34/19 35/20 43/12 43/13 43/19 43/21 48/14 49/19 49/24 53/13 56/21 57/12 57/24 63/17 84/20 84/22 84/23 84/25 85/2 85/5 85/9 90/5 98/15 99/6
Exhibit 1019 [2]  34/19 35/20
Exhibit 1037 [2]  84/20 85/2
Exhibit 197 [1]  63/17
Exhibit 200 [2]  43/12 43/13
Exhibit 21 [1]  25/11
Exhibit 216 [3]  84/22 84/23 84/25
Exhibit 269 [1]  48/14
Exhibit 370 [2]  43/19 43/21
Exhibit 381 [1]  57/12
Exhibit 387 [1]  56/21
Exhibit 48 [1]  98/15
exhibits [6]  3/7 3/12 43/7 43/9 50/1 85/16
existed [1]  47/14
expand [2]  8/23 9/4
expected [1]  11/17
expeditious [1]  81/19
expenses [3]  29/22 30/14 68/20
experience [3]  6/17 23/16 29/24
expert [3]  61/12 95/9 96/11
expertise [1]  96/9
experts [18]  94/9 94/11 94/16 94/19 94/21 95/3 95/7 95/12 95/16 95/19 95/20 95/23 95/24 96/2 96/5 96/20 96/23 97/1
explain [1]  103/7
exposed [1]  19/14
exposure [2]  75/19 83/3
express [1]  11/6
expressed [1]  11/5

**F**

fabricate [5]  58/21 59/1 59/3 59/13 59/15
facially [1]  10/3
facilitate [1]  9/20
fact [7]  11/24 12/14 12/23 13/15 16/9 72/13 93/9
facts [2]  18/1 27/9
factual [2]  18/3 18/6
failing [1]  80/23
failure [4]  88/24 90/1 100/18 101/24
fair [18]  16/15 16/21 24/6 25/6 29/13 29/14 31/4 43/23 45/13 50/11 50/12 54/4 54/5 66/2 77/14 91/1 96/21 96/22
faith [7]  14/22 14/22 15/24 17/3 17/8 18/10 22/14
false [3]  49/6 70/2 71/6
falsified [1]  70/15
familiar [2]  47/23 47/24
family [8]  36/3 36/6 36/18 46/5 46/19 46/23 47/5 47/11
famous [2]  46/1 97/24
far [1]  97/15
Faretta [1]  16/25 82/9
fashion [1]  80/1
faster [2]  60/8 64/6
father [1]  46/9
faulty [1]  15/3
favor [1]  15/8
fax [1]  37/6 37/23 38/1
feared [1]  23/7
February [11]  5/21 5/21 34/1 34/11 39/12 40/1 97/22 98/3 98/7 99/9 99/13
February 14 [1]  99/13
February 2013 [1]  34/11
February 28 [2]  97/22 98/7
February 28th [1]  98/3
February 3 [1]  99/9
February 4th [1]  5/21
February 5th [1]  5/21
February 7 [1]  39/12
February 7th [1]  40/1
federal [7]  2/10 5/6 5/8 5/8 5/12 61/5 76/25
fee [2]  11/23 30/9
fees [8]  11/17 24/17 25/3 25/8 30/2 45/12 59/24 95/9
felon [1]  21/8
fever [1]  23/7
fever-like [1]  23/7
few [3]  25/1 44/6 50/25
figure [1]  45/1
figuring [1]  78/20
filed [4]  4/14 17/14 17/18 72/7
filing [4]  60/16 88/17 93/2 102/2
filings [1]  17/13
final [2]  5/22 18/17
financial [11]  11/16 12/7 12/16 13/9 13/20 14/10 43/24 44/4 45/5 75/19 93/5
find [2]  66/6 100/19
finding [1]  61/9
findings [1]  18/3
fine [10]  8/15 12/8 12/9 18/14 61/24 62/21 62/3 63/9 85/6 101/13
fire [1]  27/17
fired [3]  26/24 27/1 27/6
firm [62]  11/16 12/6 12/6 12/17 13/9 13/20 14/10 14/11 24/5 24/6 24/17 24/17 24/24 24/24 25/6 25/9 25/21 26/5 26/8 26/15 26/23 28/16 29/16 29/21 29/25 30/4 30/15 31/3 31/4 33/17 34/13 40/24 42/3 42/7 43/24 44/3 44/5 45/2 45/6 45/12 46/8 47/15 59/22 60/4 60/11 60/11 68/20 83/23 87/19 87/25 88/15 89/6 92/5 92/11 93/6 93/21 94/11 94/15 95/6 95/6 95/12 95/15
first [5]  11/1 25/17 42/18 59/7 79/16
fit [1]  22/3
five [5]  5/5 10/25 50/15 50/22 66/2 95/16
flew [2]  55/2 55/4
flowed [2]  44/4 45/6
follow [1]  15/3
following [4]  5/24 7/4 13/8 100/25
follows [1]  12/11
foregoing [1]  104/8
form [2]  60/25 100/3
format [1]  104/11
forming [2]  26/15 88/1
fort [1]  92/18
foundation [9]  17/4 27/8 34/22 35/10 38/23 49/17 49/21 57/16 92/6
foundational [1]  36/13
four [3]  80/25 86/22 95/16
Fourth [1]  2/11
FOX [1]  2/4
Frank [5]  26/19 27/18 28/16 69/13 72/19 73/4 73/17
fraud [3]  17/17 70/25 71/3
frauds [2]  2/6 21/1
free [2]  81/8 101/9
friend [1]  28/12
front [4]  64/7 78/9 82/16 88/12
funds [2]  29/20 71/9
further [6]  4/17 6/10 9/1 13/25 19/6 78/6

**G**

game [2]  16/15 79/6
Garcia [2]  41/16 42/23
Gardephe's [1]  4/15
Gardner [2]  97/2 97/8
gave [3]  19/1 45/11 75/21
Gee [3]  11/25 12/23 13/25
general [9]  7/11 7/12 25/5 30/3 30/13 30/16 96/4 98/25 99/1
generally [11]  25/7 29/9 29/10 29/24 30/10 33/22 39/3 43/10 60/6 68/24 89/2 95/22 95/24
gentleman [2]  26/2 47/21 76/10
gentlemen [5]  23/5 23/12 60/23 76/2 99/25
Geoff [3]  38/15 93/23 94/12
Geoffrey [1]  17/23
get [27]  5/7 7/3 14/24 15/4 16/8 16/9 16/14 19/8 20/3 20/4 20/9 20/9 20/13 20/20 30/8 31/21 32/10 35/16 37/22 44/3 50/15 53/21 54/19 57/17 58/14 82/2 87/14
getting [5]  9/8 15/19 15/22 39/14 79/17
give [5]  19/2 25/7 58/14 79/9 102/21
given [2]  25/9 39/6 45/6 84/9
gives [1]  39/5
giving [1]  16/7
Glenn [1]  57/4
global [2]  20/7 78/17
go [25]  10/10 10/1 10/15 18/19 30/14 38/14 43/19 55/9 55/21 56/21 57/12 58/13 58/16 58/25 59/5 59/10 64/4 64/12 74/22 97/10 97/11 97/14 98/15 98/16 99/5
goes [2]  16/20 96/15
going [35]  5/10 7/21 7/22 8/24 8/24 10/6 11/23 12/19 14/4 15/14 17/20 18/2 18/18 18/21 19/24 20/1 20/8 22/12 38/4 38/14 40/4 40/17 51/9 54/19 60/8 61/17 61/23 63/17 78/21 81/3 81/15 101/23 102/2 102/18 102/18
good [25]  4/5 4/8 4/9 4/13 14/21 15/24 17/3 17/8 18/10 22/14 22/22 22/25 23/1 23/4 23/5 23/11 23/23 23/24 60/20 80/10 80/23 81/6 87/2 100/22 101/17
good-faith [4]  17/3 17/8 18/10 22/14

## G

**got** [3]  21/22 78/7 79/6
**governed** [1]  78/19
**government** [44]  4/19 4/20 5/18 7/3 7/15 7/18
7/22 8/10 8/23 8/25 11/15 12/15 12/19 13/4
13/22 16/1 16/3 50/1 50/6 52/21 57/20 65/15
66/10 66/13 66/21 67/7 68/1 77/3 77/13 77/25
79/24 80/1 80/16 85/8 85/16 90/3 91/20
100/20 100/20 102/7 102/13 102/21 103/3
103/6
**government's** [8]  14/18 15/2 18/8 23/20
84/22 84/22 86/6 86/8
**grab** [1]  90/9
**granted** [1]  10/8
**granting** [1]  15/8
**Great** [1]  57/22
**Greg** [1]  91/7
**grind** [1]  16/11
**ground** [6]  4/17 4/25 8/3 8/22 9/10 61/6
**guess** [1]  82/16

## H

**H-u-e-t-t-n-e-r** [1]  46/6
**had** [58]  7/8 11/25 12/5 14/10 14/11 15/1
16/10 16/11 19/14 20/18 21/20 23/7 24/2
24/17 24/21 24/24 25/1 26/24 27/4 27/13
27/15 27/21 27/22 28/12 29/4 29/8 29/11
29/15 31/5 31/10 31/15 31/19 31/19 31/19
32/7 35/4 40/8 46/10 48/1 49/8 50/4 59/8
59/24 60/12 71/8 71/9 77/15 83/25 84/14
86/16 89/6 89/20 92/22 92/23 94/15 95/15
96/11 102/5
**half** [6]  5/7 53/18 53/24 54/6 62/25 85/11
**hand** [5]  64/18 65/9 86/3 97/14 97/24
**handed** [14]  32/22 34/7 37/11 38/10 39/22
41/9 42/15 68/10 70/8 71/20 73/10 84/7 88/8
89/13
**handle** [2]  82/1 82/5
**handle the** [1]  82/1
**handled** [5]  21/5 46/8 87/1 92/14 92/15
**handling** [2]  25/9 41/5
**hands** [1]  46/11
**hang** [1]  9/4
**HANNA** [1]  2/3
**happen** [1]  31/11
**happened** [4]  16/7 17/19 34/4 46/21
**happening** [1]  79/18
**has** [40]  6/16 6/18 6/21 6/24 12/16 13/16
15/12 15/13 15/18 16/9 16/24 17/4 17/8 17/21
18/1 18/7 18/10 18/17 21/19 25/23 61/10
66/21 69/24 70/2 70/10 70/18 70/24 71/1
71/14 72/1 73/16 75/24 78/18 83/6 84/9 85/13
88/10 90/11 101/17 103/3
**have** [158]
**haven't** [1]  9/5
**having** [5]  31/23 48/7 67/1 78/7 87/15
**he** [61]  9/8 9/9 16/24 17/2 17/20 17/20 17/20
17/23 18/1 18/7 18/9 18/10 19/12 19/13 19/14
20/4 20/5 20/6 20/11 21/2 23/7 25/20 25/20
25/23 26/14 26/23 26/24 27/15 27/15 32/16
32/17 33/8 34/2 35/6 40/2 40/5 40/17 40/2
42/10 48/22 62/8 62/8 69/19 70/18 71/11
71/14 76/17 76/20 76/23 79/6 79/15 79/15
82/5 82/12 83/9 83/15 85/6 86/5 87/5 87/9
96/16
**he's** [10]  16/22 16/23 17/10 18/21 20/4 22/1
76/11 79/6 79/14 100/11
**head** [3]  16/2 87/12 87/13
**hear** [1]  12/24
**heard** [1]  31/19
**hearing** [1]  16/25
**hearsay** [3]  38/22 88/22 90/1
**heart** [1]  78/22
**heavily** [1]  47/4
**held** [3]  8/20 92/17 104/10
**helicopter** [1]  21/14
**help** [1]  54/1
**helpful** [3]  82/8 82/11 82/12
**her** [31]  6/4 7/16 8/11 8/14 9/21 10/3 19/15

34/20 36/10 36/20 47/2 47/3 47/15 47/19 48/5
48/6 53/3 61/2 61/2 69/21 69/23 76/11 76/15
76/15 76/20 83/25 84/2 84/17 87/8 101/17
102/18
**here** [28]  5/6 9/20 11/3 12/8 16/7 18/12 18/22
22/12 25/24 34/17 43/19 49/2 56/15 60/23
63/23 69/21 74/21 75/8 75/16 76/11 76/19
77/19 81/2 83/21 85/5 91/17 97/21 99/24
**here's** [3]  73/2 74/20 99/14
**hereby** [1]  104/7
**hide** [1]  71/10
**hiding** [1]  69/18
**high** [3]  16/4 16/6 19/22
**high-profile** [1]  16/4
**higher** [1]  54/14
**highly** [2]  6/18 8/1
**Hills** [1]  94/6
**him** [23]  9/10 17/24 17/25 19/17 19/24 20/10
27/13 27/17 32/17 37/23 38/1 42/9 69/19
70/25 71/3 71/6 71/6 71/7 71/10 79/10 88/16
89/17 89/20
**himself** [2]  18/23 82/4
**hired** [2]  27/13 27/15
**his** [34]  4/10 8/14 9/9 18/19 18/22 19/10
19/18 19/19 19/19 19/19 20/6 23/7 39/14
39/14 41/4 41/4 41/17 42/4 42/24 61/21 69/5
69/18 70/20 71/10 73/17 76/17 79/20 82/5
82/5 83/20 86/17 89/7 90/15 92/4
**hit** [1]  87/5
**home** [2]  24/17 24/21
**Honor** [157]
**Honor's** [4]  8/18 78/22 79/21 96/13
**HONORABLE** [1]  1/8
**hope** [2]  6/13 63/1
**hopeful** [1]  72/21
**hopefully** [1]  57/17
**hour** [1]  99/25
**hours** [2]  10/25 11/1
**how** [21]  4/23 5/13 6/8 11/7 14/19 47/18 48/4
52/7 53/24 62/15 65/24 79/4 81/25 82/5 87/11
92/13 92/23 94/6 94/19 95/3 96/20
**Howe** [1]  79/4
**Huettner** [9]  46/5 46/6 46/15 46/18 46/21
46/23 47/1 47/11 57/5
**hundreds** [3]  17/13 44/3 95/9
**hunting** [1]  16/2
**husband** [1]  47/3

## I

**I'd** [1]  82/17
**I'll** [3]  9/6 17/16 90/19
**I'm** [61]  7/21 7/21 9/3 9/4 10/6 10/24 11/2
15/8 15/13 16/8 16/8 16/14 16/18 16/19 18/2
18/5 19/16 21/3 22/14 22/20 22/25 22/11 23/2
31/18 32/2 35/9 35/23 40/17 47/17 48/3 50/25
51/9 53/25 56/9 60/19 61/17 61/23 62/24 63/1
64/12 66/24 75/14 76/12 77/7 77/18 77/22
78/19 80/14 80/17 81/3 81/4 85/1 88/2 91/22
94/13 98/25 99/1 101/23 102/17 102/18
102/23
**I've** [3]  21/6 67/4 79/4
**I-N-D-E-X** [1]  3/2
**Ibrahim** [2]  41/16 42/23
**idea** [9]  21/2 29/15 48/4 49/11 52/8 54/18
63/23 64/16 65/7
**identification** [1]  80/10
**identified** [2]  79/23 100/20
**identifiers** [2]  84/23 85/14
**identify** [3]  77/3 79/25 80/23
**ill** [1]  19/11
**IM** [1]  56/15
**immediately** [4]  27/25 28/2 102/16 102/17
**immune** [1]  17/9
**impeachment** [3]  37/14 77/18 101/4
**important** [1]  62/5
**improper** [2]  57/10 93/13
**inappropriate** [1]  15/15
**inclined** [1]  19/16
**included** [3]  15/25 43/21 72/22

**includes** [1]  101/3
**income** [1]  12/6
**incorrectly** [1]  39/4
**increasing** [1]  9/1
**incur** [1]  94/11
**incurred** [3]  94/8 97/5 97/8
**independent** [6]  55/15 56/5 56/18 88/3 97/4
97/7
**indicate** [1]  13/24
**indicated** [5]  4/20 21/20 23/6 100/23 102/22
**indicating** [1]  16/19
**indication** [1]  8/12
**individual** [5]  16/10 27/4 39/5 72/16 74/3
**individually** [1]  51/14
**individuals** [2]  40/24 102/7
**inform** [1]  62/2
**information** [7]  6/2 7/15 70/15 85/19 85/22
85/23 90/16
**informed** [2]  40/2 68/19
**initial** [1]  19/2
**initiated** [1]  59/22
**inquire** [1]  11/6
**inquired** [1]  76/17
**inquiry** [2]  10/4 16/19
**instance** [2]  29/20 30/8
**instances** [1]  30/14
**instant** [1]  43/20
**instead** [2]  18/23 65/2
**instruct** [1]  19/1
**instructed** [2]  18/24 52/7
**instructions** [2]  19/2 19/3
**intend** [4]  9/11 11/23 16/14 79/25
**intended** [1]  11/6
**intentional** [2]  70/25 71/3
**intentionally** [1]  71/6
**intentions** [1]  9/10
**interest** [4]  9/20 16/3 74/22 92/10
**interoffice** [1]  36/1
**interrogation** [1]  9/17
**interviewed** [1]  67/21
**interviews** [2]  5/8 7/6
**introduce** [1]  80/12
**introduced** [1]  61/9
**invested** [1]  48/1
**investigation** [6]  14/19 14/21 15/3 15/23 18/8
21/2
**investigatory** [1]  16/4
**invited** [1]  9/13
**involved** [8]  7/5 20/14 36/25 47/5 60/2 91/15
92/10 96/8
**involvement** [7]  7/10 21/20 36/18 36/19 40/25
42/4 42/8 50/4
**irrelevant** [2]  12/15 28/24
**IRS** [2]  17/18 20/6
**is** [198]
**isn't** [19]  27/6 27/20 29/11 32/6 41/14 41/18
42/21 44/2 45/1 59/22 59/24 60/2 71/5 71/11
72/14 73/2 74/20 74/24 95/17
**issue** [6]  6/18 14/8 36/25 100/24 101/20
102/12
**issued** [1]  81/4
**issues** [4]  11/14 60/25 100/3 102/20
**it** [178]
**it's** [45]  9/2 9/19 12/4 12/16 15/10 18/15
19/18 19/19 21/11 22/5 22/10 34/17 35/12
37/8 39/3 39/9 39/20 40/19 43/23 48/14 50/9
51/16 56/9 58/3 58/18 58/22 60/7 60/8 63/8
63/10 71/21 72/24 74/15 74/21 75/15 75/16
78/14 78/17 79/13 79/22 79/23 80/3 82/12
103/7
**Item** [2]  4/3 22/20
**items** [1]  15/20
**its** [5]  14/17 16/13 57/13 95/7 103/7

## J

**JAMES** [1]  1/8
**January** [6]  24/23 25/3 32/15 32/25 58/6 99/8
**January 1** [2]  24/23 25/3

**J**

**January 11** [1] 32/15
**January 11th** [1] 32/25
**January 30th** [1] 99/8
**Jason** [2] 26/19 69/13
**Jencks** [5] 101/25 102/8 102/8 102/11 103/7
**Jim** [1] 47/21
**job** [1] 25/5
**Joe** [10] 4/11 23/3 25/14 48/15 50/17 55/10 56/9 56/22 85/11 97/14
**JOHN** [9] 1/11 2/14 4/4 22/21 42/7 76/11 90/16 91/10 91/11
**Johnson** [5] 9/15 9/18 10/9 10/12 34/1 34/14 35/5 35/16 35/22 36/17 37/6 37/23 38/5 39/13 40/4 69/2 69/5 69/18 69/24 70/2 70/14 70/21 70/24 71/2 71/5 72/1 72/11 72/13 72/20 73/4 73/5 73/16 74/4 74/23 75/6 75/7 75/18 75/20 83/2 83/7 83/15 93/18 93/20 93/24 94/9 94/12 96/2 98/6 98/13 98/22 99/15
**Johnson's** [13] 17/23 26/6 32/17 33/1 33/8 33/13 34/3 36/3 36/5 36/18 40/3 94/1 94/15
**joined** [1] 23/2
**judge** [6] 1/8 4/15 11/25 12/23 13/25 60/7
**judgment** [3] 12/23 13/21 14/11
**Judicial** [1] 104/12
**JUDY** [5] 3/5 17/24 23/20 87/5 87/12
**Julian** [2] 20/23 21/5
**July** [14] 1/17 4/1 42/6 42/21 50/22 50/23 63/20 64/2 64/19 65/10 90/15 91/7 97/25 104/14
**July 10th** [1] 50/23
**July 26** [4] 63/20 64/2 64/19 65/10
**July 26th** [1] 97/25
**July 27** [2] 90/15 91/7
**July 28th** [1] 42/21
**July 9th** [1] 50/22
**June** [5] 97/22 98/3 98/7 98/9 98/13
**June 25** [1] 98/7
**June 25th** [4] 97/22 98/3 98/9 98/13
**juror** [7] 19/9 19/12 62/2 62/2 62/3 62/6 62/10
**jurors'** [1] 79/1
**jury** [30] 4/2 18/4 18/24 22/16 22/19 23/10 23/10 24/1 31/8 31/22 48/16 50/16 56/24 57/25 58/19 60/6 61/3 63/6 63/11 67/4 76/6 78/6 78/9 81/24 82/17 82/19 85/17 90/7 100/6 100/15
**just** [52] 5/3 5/10 6/2 7/11 9/4 9/6 10/18 10/23 14/5 15/7 15/8 15/10 15/13 15/14 15/18 17/25 18/5 21/10 23/8 25/13 30/20 32/3 40/14 45/19 52/13 53/10 54/17 56/13 62/14 65/22 65/24 67/9 75/21 76/8 77/22 79/3 79/23 81/11 81/14 82/22 86/2 86/19 87/5 90/24 97/13 97/14 97/17 97/17 98/25 99/1 99/25 101/10
**Justice** [5] 20/14 20/18 21/13 21/19 22/1
**justify** [1] 10/4
**JVS** [3] 1/11 4/3 22/20

**K**

**Katzenstein** [1] 20/25
**keep** [3] 29/24 30/3 30/10
**keeps** [3] 17/20 21/7 79/14
**Kimberly** [3] 11/19 13/21 24/13
**Kimberly-Clark** [3] 11/19 13/21 24/13
**kind** [2] 12/7 18/18
**knew** [1] 71/8
**know** [79] 8/8 15/12 17/12 17/19 17/25 18/2 22/1 27/15 30/25 31/19 32/6 32/9 33/23 33/24 35/21 36/5 36/6 36/19 37/25 40/8 43/18 44/8 49/1 49/18 50/5 50/16 51/2 51/19 52/15 52/18 52/21 53/4 53/6 53/9 53/10 55/4 55/5 55/6 55/7 57/10 57/15 62/4 62/9 62/12 62/20 62/23 66/3 66/5 66/19 66/20 67/3 67/24 69/20 71/8 71/16 72/7 73/22 73/24 76/10 76/22 78/6 78/8 79/4 82/5 84/4 89/5 91/16 92/8 92/23 93/23 94/1 94/4 96/9 96/20 96/23 97/1 97/18 98/7
**knowledge** [19] 29/4 29/8 29/11 29/12 47/18 48/7 48/10 50/9 53/2 55/15 55/18 55/24 56/5 56/18 61/10 61/11 70/21 97/4 97/7

**L**

**Labs** [1] 52/25
**Lacks** [1] 38/22
**ladies** [5] 23/5 23/11 60/23 76/2 99/25
**laid** [5] 4/17 5/1 6/7 8/4 8/22
**lantern** [3] 9/5 9/11 9/12
**last** [19] 19/10 21/14 23/6 40/10 40/12 44/16 46/5 51/10 56/2 66/13 66/14 74/7 93/16 97/11 97/13 98/9 98/17 99/8 99/11
**late** [2] 23/6 60/18
**later** [2] 12/13 101/2
**latitude** [1] 10/8
**law** [13] 2/15 15/8 16/11 21/8 26/8 26/15 28/16 44/4 45/6 45/12 47/15 59/22 93/6
**lawsuit** [6] 10/1 60/3 60/5 69/4 73/3 74/1
**lawyer** [5] 16/23 16/24 17/1 59/19 82/14
**lay** [3] 35/9 49/21 57/16
**learn** [3] 28/19 49/6 49/14
**leaves** [1] 19/25
**leaving** [1] 26/25
**lectern** [1] 18/21
**left** [9] 19/9 27/13 43/12 64/18 65/9 95/23 97/14 97/15 97/24
**left-hand** [4] 64/18 65/9 97/14 97/24
**legal** [4] 60/9 87/13 93/2 93/21
**less** [4] 66/4 72/21 73/6 74/23
**let** [16] 13/16 18/19 21/23 32/19 36/8 36/13 38/7 54/1 55/8 56/13 57/16 62/4 62/8 62/11 62/19 94/14
**let's** [22] 8/15 9/11 9/13 16/23 24/3 43/7 43/19 55/9 55/21 56/2 56/21 57/12 58/13 58/25 59/5 59/10 64/4 64/12 65/2 97/10 98/15 99/5
**letter** [1] 59/18
**liability** [1] 9/21
**liberty** [1] 75/14
**license** [1] 21/9
**light** [8] 8/17 8/19 9/7 9/7 9/11 14/23 25/5 34/19
**like** [11] 8/6 23/7 23/16 55/19 75/22 79/13 93/22 100/13 101/21 103/2 103/3
**limine** [1] 96/14
**limitation** [1] 58/9
**line** [3] 6/7 9/25 16/19
**lines** [1] 56/23
**listed** [2] 15/20 58/10
**litany** [1] 15/20
**litigant** [1] 17/6
**litigation** [2] 89/3 89/16
**litigations** [1] 4/21
**little** [4] 15/19 50/17 50/18 92/15
**LLC** [1] 52/25
**loaded** [1] 15/1
**local** [1] 95/19
**locked** [1] 27/24
**long** [9] 48/4 48/21 51/6 55/1 55/22 59/15 60/12 62/15 66/11
**longer** [1] 66/9
**look** [10] 45/8 45/25 56/2 59/7 61/17 66/21 66/25 73/23 79/9 79/16
**looked** [3] 63/7 67/3 67/5
**looking** [3] 45/4 46/17 99/21
**Los** [1] 2/8
**lose** [1] 16/23
**lost** [1] 46/10
**lot** [5] 7/14 7/14 29/24 43/24 87/14
**lottery** [2] 13/14 13/15
**lunch** [2] 62/17 99/24

**M**

**made** [19] 14/9 21/19 30/16 31/15 46/18 46/23 52/24 57/10 74/12 72/2 76/17 98/8 98/12 98/22 99/2 99/15 100/22 101/16 103/1
**mail** [30] 25/14 31/23 31/24 34/12 34/17 35/3 38/16 38/18 40/6 41/19 42/25 43/16 43/18 59/8 83/25 84/2 84/21 84/24

**knows** [6] 17/17 17/20 17/20 17/24 20/5 21/3
**Kyle** [48] 14/18 ... 38/1 ...

85/22 86/9 86/16 86/18 86/20 86/23 86/25 90/19 90/19 90/19 93/2...
**mailed** [1] 84/17
**mails** [6] 31/21 32/10 54/22 65/16 85/12 85/14
**Main** [5] 20/14 20/18 21/13 21/19 22/1
**mainly** [1] 16/2
**maintain** [1] 14/16
**major** [2] 2/6 21/1
**make** [26] 6/15 8/15 10/18 10/23 12/14 12/18 16/16 18/2 18/14 18/15 18/16 20/8 39/3 39/7 39/9 56/13 74/22 77/23 78/11 81/8 90/20 97/17 101/7 101/9 101/10 102/22
**making** [6] 6/17 15/8 21/7 70/2 71/6 77/8 79/11 80/11 81/7
**manager** [6] 47/16 49/3 49/9 49/15 52/16 53/7
**manner** [1] 49/15
**many** [5] 22/5 65/24 79/4 94/19 96/20
**March** [3] 12/12 56/23 67/22
**March 20th** [1] 56/23
**March 25** [2] 12/12 67/22
**marked** [5] 3/7 3/12 42/17 84/10 88/10
**Massena** [2] 47/21 47/25
**material** [1] 101/1
**materials** [1] 101/3
**matter** [36] 6/3 6/5 10/24 18/7 22/8 22/9 26/6 41/4 46/4 46/6 46/8 46/15 54/23 55/1 57/8 61/8 61/10 75/13 83/5 83/23 89/16 91/12 92/4 94/9 94/12 94/15 95/17 96/2 96/5 96/8 96/12 96/24 97/2 97/5 97/8 98/12
**matters** [15] 4/22 4/24 5/11 5/15 5/16 6/8 6/9 8/5 11/3 11/7 11/17 11/18 13/3 26/6 93/6
**may** [53] 8/18 8/21 8/25 9/11 9/21 10/10 20/11 20/12 20/20 26/9 27/7 29/16 32/21 34/5 34/6 36/9 37/10 38/8 38/9 39/21 41/7 41/8 42/14 61/8 61/11 61/16 61/17 61/25 65/20 67/2 68/9 70/6 70/7 71/1 71/13 71/19 73/8 73/9 75/6 80/2 84/3 84/5 84/6 84/14 85/20 86/17 87/18 88/7 88/15 89/11 89/12 91/22
**May 2018** [1] 88/15
**May 25th** [3] 84/3 84/14 86/17
**maybe** [5] 32/10 50/16 62/17 77/13 79/9
**me** [50] 4/16 6/14 7/1 10/8 10/14 12/22 13/16 15/6 15/7 15/14 15/15 16/11 20/15 21/23 26/8 27/6 27/21 28/16 31/24 32/19 33/7 36/4 36/8 36/13 38/5 38/7 45/16 47/15 47/22 52/7 54/1 55/6 55/8 56/13 57/16 60/15 62/8 65/15 66/25 67/9 69/7 71/7 77/24 78/1 80/5 81/25 83/2 83/6 94/14 100/13
**mean** [5] 35/18 44/2 82/7 82/8 82/8 92/16
**Meaning** [3] 66/24 69/24 98/25
**means** [1] 23/9
**meet** [5] 38/4 38/14 47/22 90/3 100/9
**meeting** [3] 11/1 11/2 68/3
**meetings** [8] 4/21 5/20 5/25 6/8 7/6 7/14 9/2 11/3
**member** [1] 36/17
**members** [3] 32/7 36/3 36/6
**mentioned** [2] 16/25 76/16
**Meridian** [1] 94/4
**message** [1] 102/5
**messages** [11] 65/16 65/24 66/10 66/12 66/17 66/22 67/1 102/8 102/12 102/15 103/2
**met** [4] 4/19 5/12 50/1 67/25
**MICHAEL** [7] 1/11 2/14 4/4 4/10 22/21 23/1 69/11
**Michael's** [1] 30/22
**Michelle** [17] 47/15 47/19 48/22 48/23 48/24 49/3 49/14 51/19 53/11 54/18 59/16 59/19 59/23 60/3 60/12
**mid** [1] 60/22
**mid-morning** [1] 60/22
**middle** [4] 14/15 56/22 98/16 102/24
**might** [3] 24/9 30/8 83/7
**million** [32] 11/22 12/11 12/25 13/25 24/1 24/14 30/9 44/7 44/9 44/14 51/22 52/3 52/5 52/6 52/11 52/13 53/18 53/24 54/1 54/6

**M**

**million... [1]** 54/7 54/11 54/12 58/14 69/18
72/14 72/21 73/6 73/18 74/5 74/13
**millions [2]** 30/2 30/3 30/10 44/3 44/21
**mind [1]** 101/6
**mine [1]** 78/15
**minute [1]** 32/10
**minutes [3]** 60/24 62/17 76/1
**Miramar [1]** 2/16
**misconduct [1]** 21/8
**misstated [1]** 39/4
**Misstates [2]** 50/24 73/19
**mistrial [2]** 101/24 102/19
**moment [6]** 10/22 18/8 32/12 58/14 64/9
64/24
**momentarily [1]** 31/21
**money [17]** 17/23 29/25 30/13 45/5 48/10
49/12 49/15 50/10 53/7 53/10 58/10 60/11
71/10 74/23 75/5 75/6 75/17
**monies [5]** 29/16 47/12 60/3 69/5 83/6
**monitoring [1]** 31/14
**months [1]** 81/1
**more [8]** 9/11 14/6 15/19 20/2 76/17 92/14
92/15 95/16
**morning [17]** 4/5 4/8 4/9 4/13 7/21 19/12
22/22 22/25 23/1 23/4 23/5 23/6 23/23 23/24
60/22 100/16
**Mosby [10]** 41/3 41/14 92/4 92/10 92/19 93/2
93/5 93/8 93/16 93/18
**Mosby's [1]** 92/13
**most [3]** 11/2 78/24 95/25
**mother [1]** 46/9
**motion [3]** 96/14 102/2 103/1
**motivating [1]** 12/7
**motivation [2]** 13/17 14/20
**motive [1]** 15/25
**mouse [1]** 79/5
**move [12]** 9/13 9/25 35/10 40/10 44/16 58/10
72/23 74/7 84/25 101/23 102/18 102/18
**moving [1]** 85/1
**Mr [12]** 16/11 23/18 26/8 28/13 34/12 35/4
38/3 40/2 72/20 73/17 76/19 79/2
**Mr. [180]**
**Mr. Arden [3]** 41/16 42/22 90/15
**Mr. Avenatti [9]** 4/14 5/11 6/11 9/24 23/13
63/12 82/4 82/20 100/10
**Mr. Avenatti's [2]** 5/24 17/9
**Mr. B.S [1]** 23/9
**Mr. Barela [24]** 9/16 9/23 40/25 41/4 41/15
42/3 42/8 42/22 68/23 83/9 83/24 84/17 85/25
86/16 87/1 87/9 87/11 87/19 88/1 88/3 88/15
89/6 92/2 92/4
**Mr. Barela's [7]** 83/19 83/22 84/15 85/22 87/4
87/16 89/16
**Mr. Carlos [5]** 67/15 67/17 67/21 68/19 102/6
**Mr. Colorado [17]** 25/20 32/16 32/25 33/10
33/12 33/25 34/11 35/4 35/15 35/22 37/5
37/21 38/3 38/4 39/13 40/2 40/3
**Mr. Dean [2]** 4/11 23/2
**Mr. Donahue [2]** 76/13 76/19
**Mr. Eagan [3]** 72/20 73/4 73/17
**Mr. Frank [5]** 27/18 28/16 72/19 73/4 73/17
**Mr. Ibrahim [2]** 41/16 42/23
**Mr. John [2]** 42/7 91/11
**Mr. Johnson [41]** 9/15 34/1 34/14 35/5 35/16
35/22 37/6 37/23 38/5 39/13 40/4 69/2 69/5
69/18 69/24 70/2 70/14 70/21 70/24 71/2 71/5
72/1 72/11 72/13 72/20 73/4 73/5 73/16 74/4
74/23 75/6 75/7 75/18 75/20 83/2 83/7 83/15
98/6 98/13 98/22 99/15
**Mr. Johnson's [12]** 26/6 32/17 33/1 33/8
33/13 34/3 36/3 36/5 36/18 40/3 94/1 94/15
**Mr. Julian [1]** 20/23
**Mr. Long [1]** 55/1
**Mr. Massena [1]** 47/25
**Mr. Regnier [3]** 5/12 18/12 102/1
**Mr. Roberson [1]** 68/19
**Mr. S.C [3]** 19/9 23/5 23/8
**Mr. Sagel [18]** 15/12 16/9 20/17 22/12 25/12
29/7 43/8 46/17 49/23 50/14 51/1 59/18 62/18
66/2 82/3 101/3 102/9 103/1
**Mr. Sagel's [1]** 9/7
**Mr. Scott [1]** 36/16
**Mr. Sims [4]** 26/5 27/18 38/4 73/5
**Mr. Stolper [5]** 17/15 18/8 27/12 28/12 28/15
**Mr. Stolper's [1]** 28/20
**Mr. Tran [2]** 54/19 55/6
**Mr. Wyman [1]** 15/13
**Ms [77]** 4/11 4/18 5/18 7/14 10/17 20/5 23/23
25/17 27/12 32/24 33/11 34/10 35/3 35/15
36/16 37/20 38/12 39/2 39/24 40/14 40/23
41/11 41/16 41/25 42/17 42/23 43/15 43/20
46/3 47/10 48/19 57/10 52/24 56/5 57/2
58/2 58/9 58/21 59/1 62/16 63/15 63/19 65/14
67/6 67/12 68/15 68/22 70/12 71/25 73/2
73/15 73/23 74/11 74/20 75/4 82/22 83/1 84/9
86/11 86/19 87/25 88/10 89/2 89/15 91/3 93/8
93/18 97/17 98/20 100/21 101/16 102/3
102/10 102/13 102/24 103/3
**Ms. [30]** 7/7 9/20 16/15 19/11 23/2 23/17 29/3
32/1 41/3 41/14 42/23 44/21 47/1 48/1 48/5
49/9 52/15 53/6 53/15 65/4 71/15 74/17 92/4
92/10 92/13 92/19 93/2 93/5 93/16 101/7
**Ms. Bonilla [1]** 42/23
**Ms. Bredahl [2]** 19/11 23/17
**Ms. Cathy [1]** 41/3
**Ms. Cefali [1]** 23/2
**Ms. Huettner [1]** 47/1
**Ms. Mosby [7]** 41/14 92/4 92/10 92/19 93/2
93/5 93/16
**Ms. Mosby's [1]** 92/13
**Ms. Phan's [5]** 48/1 48/5 49/9 52/15 53/6
**Ms. Regnier [10]** 7/7 16/15 29/3 32/1 44/21
53/15 65/4 71/15 74/17 101/7
**Ms. Regnier's [1]** 9/20
**much [7]** 4/23 5/13 6/8 11/7 53/24 60/8 95/3
**multiple [1]** 95/12
**must [1]** 7/4
**my [61]** 6/17 7/11 7/22 8/12 12/12 13/11
13/14 13/15 14/6 14/18 15/6 15/15 16/10 17/6
17/14 21/1 25/17 29/8 29/13 32/2 32/3 32/5
32/8 33/11 33/11 36/18 40/14 40/25 42/4 42/8
48/16 53/2 62/19 62/24 63/2 63/1 68/16
70/12 71/14 72/6 72/16 73/2 73/15 74/11
74/19 74/20 75/14 75/21 76/5 78/18 78/20
81/11 82/2 84/13 86/24 86/25 87/5 87/12
99/14 100/23 101/8
**myself [1]** 81/5

**N**

**name [14]** 25/17 25/17 26/2 46/5 47/21 47/23
48/2 48/17 51/10 67/15 74/11 74/17 86/24
88/16
**named [1]** 86/22
**namely [1]** 9/19
**names [7]** 26/18 67/7 67/9 67/9 67/12 67/14
94/21
**nature [2]** 7/24 7/25
**necessarily [1]** 30/10
**need [5]** 6/10 56/23 78/4 81/12 82/1
**needed [8]** 34/2 34/13 34/13 37/6 42/9 42/24
81/18 96/9
**needs [3]** 36/11 82/5 87/5
**negotiate [1]** 55/3
**negotiated [2]** 59/24 60/13
**never [7]** 13/16 17/14 28/8 66/21 66/25 67/3
67/5
**new [4]** 6/2 10/25 59/19 66/20
**next [7]** 51/9 51/14 56/10 59/10 62/3 74/20
97/22
**NICOLA [1]** 2/3
**night [2]** 19/10 23/6
**Ninth [2]** 12/12 12/20 14/1 14/17 79/5
**no [144]**
**nobody [3]** 15/6 30/22 31/22
**nominal [2]** 71/8 80/3
**non [1]** 31/13
**non-class [1]** 31/13
**none [4]** 3/8 3/11 37/13 100/19
**nonresponsive [1]** 101/8
**norm [1]** 16/5
**normally [1]** 6/16
**North [1]** 2/7
**not [133]**
**note [3]** 9/6 21/10 37/12
**nothing [6]** 6/1 12/16 17/21 19/7 20/18 36/24
76/17 81/17
**notice [1]** 20/11
**notified [1]** 20/17
**November [6]** 37/4 40/24 41/3 41/14 68/1
68/18
**November 19th [2]** 68/1 68/18
**November 2016 [1]** 40/24
**November 22nd [2]** 41/3 41/14
**now [28]** 8/21 10/14 11/23 14/13 18/5 20/9
23/9 25/17 29/3 30/19 35/6 43/19 48/21 50/22
52/24 59/18 60/14 60/20 67/24 68/22 74/20
79/25 82/3 86/2 91/24 94/8 97/10 97/21
**number [20]** 4/18 5/12 11/18 19/9 21/13
24/21 24/24 32/17 33/2 33/8 33/13 43/9 44/25
53/23 65/25 77/17 80/7 85/15 85/24 102/1
**numbers [5]** 37/17 80/7 84/23 85/14 86/9

**O**

**oath [1]** 18/12
**object [3]** 13/7 39/19 77/25
**objected [1]** 14/25
**objection [26]** 18/14 18/15 26/10 27/1 27/8
28/22 35/6 38/22 47/6 49/17 50/24 73/19 75/9
83/11 83/16 84/25 85/7 86/6 86/7 88/22 89/25
90/20 92/6 93/12 94/23 96/13
**objections [2]** 41/21 43/4
**obligation [6]** 16/24 17/8 17/10 80/11 80/19
81/7
**obtain [1]** 24/6
**obtained [2]** 13/21 24/2
**obviously [3]** 6/17 21/1 77/5
**occasion [2]** 65/15 65/18
**occur [1]** 18/3
**occurred [6]** 11/20 12/11 13/1 13/3 18/3
46/11
**occurrence [2]** 12/21 95/6
**October [4]** 51/3 51/25 51/25 100/24
**October 20 [1]** 100/24
**October 2nd [2]** 51/3 51/25
**October 3rd [1]** 51/25
**off [2]** 43/12 51/16
**offer [11]** 34/18 34/23 38/21 40/15 41/20 43/3
77/24 82/15 89/23 100/22 101/8
**offered [1]** 100/8
**offering [1]** 100/11
**offers [2]** 84/20 88/21
**office [13]** 26/25 27/5 27/13 27/14 27/16 28/4
28/8 28/21 33/7 36/3 47/22 92/16 92/18
**offices [2]** 2/15 28/2
**Okay [43]** 10/11 10/14 10/20 11/13 14/5 15/22
19/24 22/15 23/18 26/2 31/2 31/13 31/21 32/6
32/18 33/11 34/8 34/15 51/6 54/3 58/6 58/17
61/19 61/24 63/18 64/5 67/13 68/5 71/23
73/13 76/21 77/10 78/12 79/11 82/15 86/24
97/12 97/21 98/2 98/18 99/7 101/14 101/22
**old [3]** 66/15 66/17 66/19
**once [1]** 75/2
**one [49]** 5/3 20/2 20/23 21/13 21/18 21/18
21/23 23/15 23/25 25/24 28/4 31/9 32/12
42/24 44/9 50/1 50/25 51/6 51/25 51/25 52/6
52/13 53/20 55/2 55/10 56/7 56/9 56/10 62/1
64/9 64/24 66/2 70/13 71/1 77/15 82/16 85/18
87/18 88/14 89/8 89/21 91/11 95/10 95/10
97/21 97/22 101/9 101/20 102/13
**ones [1]** 80/6
**only [13]** 9/6 9/23 10/24 20/24 21/7 28/4
29/11 61/8 66/11 67/9 67/15 77/11 95/24
**open [1]** 8/25
**opening [3]** 14/25 20/5 20/11
**Operations [1]** 56/15
**opinion [1]** 4/15

## O

**opinions** [1] 60/25 100/3
**opportunity** [3] 39/6 82/23 102/21
**opposed** [2] 52/5 52/12
**order** [7] 24/10 24/10 45/8 78/17 79/21 86/7 100/24
**ordered** [7] 75/5 75/7 75/18 83/2 83/6 83/7 100/25
**ordering** [1] 80/15
**orders** [1] 79/20
**other** [47] 4/21 4/22 4/24 5/5 5/6 5/8 5/8 5/11 5/14 5/16 5/24 6/5 6/8 6/9 7/24 7/24 7/25 8/4 10/24 11/3 11/7 12/5 13/21 22/6 23/15 24/21 26/14 26/18 29/13 29/16 29/17 29/21 31/13 31/20 32/7 32/7 36/2 44/25 53/7 67/14 77/8 77/15 85/23 87/15 101/4 102/1 102/7
**others** [4] 75/18 83/2 83/6 87/18
**otherwise** [3] 7/9 8/19 71/7
**our** [7] 20/24 21/2 26/15 59/22 86/6 91/8 93/2
**out** [19] 5/14 8/4 8/9 8/18 12/5 12/20 12/23 14/13 27/5 27/24 28/5 44/4 45/6 58/10 66/6 78/20 79/3 79/4 80/25
**outgoing** [1] 50/22
**outside** [5] 16/5 18/13 40/25 78/5 100/15
**over** [11] 17/12 24/5 29/19 31/2 44/3 44/7 62/18 72/13 79/6 79/7 103/2
**overdose** [1] 46/10
**Overruled** [7] 26/11 39/21 75/10 90/22 92/7 92/21 94/25
**owing** [1] 74/23
**own** [4] 26/15 61/11 82/5 82/5

## P

**P-r-a-t-i-g-y-a** [1] 51/10
**p.m** [1] 103/10
**page** [19] 42/18 50/14 53/13 55/9 55/21 56/21 56/23 58/16 58/25 59/7 59/10 74/15 97/11 98/16 98/17 99/3 99/5 99/6 104/11
**page 1** [2] 53/13 55/9
**page 15** [1] 56/21
**page 4** [1] 98/16
**page 8** [1] 99/5
**pages** [3] 59/10 59/10 59/13
**paid** [8] 30/2 30/8 30/18 48/11 52/19 52/22 54/19 71/9
**paragraph** [14] 68/15 70/12 70/17 70/18 70/20 71/21 71/25 72/5 73/3 73/11 73/15 73/19 74/11 74/14
**paralegal** [1] 92/17
**parents** [1] 94/2
**part** [12] 6/25 14/17 22/10 23/9 33/22 33/24 40/10 44/17 48/16 71/10 74/8 90/24
**particular** [9] 16/3 45/11 45/15 45/22 45/22 45/23 49/15 91/25 101/25
**parties** [3] 18/4 60/7 100/8
**partner** [1] 48/22
**parts** [1] 100/13
**party** [4] 35/19 35/21 35/24 41/17
**passages** [1] 4/16
**Patricia** [1] 57/5
**Pause** [3] 32/13 64/10 64/25
**pay** [8] 30/14 60/7 75/5 75/7 75/18 83/2 83/6 83/7
**payee** [1] 56/23
**payment** [16] 46/18 46/23 51/6 51/9 51/12 51/14 51/19 55/3 55/25 56/22 57/4 57/7 57/10 95/25 98/9 98/9
**payments** [12] 51/22 52/24 56/8 71/7 98/6 98/12 98/22 99/2 99/3 99/15 99/18 99/22
**pdf** [1] 91/8
**people** [8] 22/2 30/15 31/10 62/5 62/11 67/10 67/14 86/22
**per** [1] 91/8
**percent** [8] 53/23 53/24 54/2 54/6 54/9 54/9 54/11 54/14
**perfect** [1] 78/3
**performance** [1] 101/5
**perhaps** [2] 65/5 65/21
**period** [6] 8/5 13/10 14/8 29/15 29/19 31/3

**permitted** [3] 9/24 11/2 28/8
**permitting** [1] 62/8
**person** [6] 16/6 17/7 20/24 21/7 51/12 67/15
**personal** [9] 16/9 61/11 61/11 85/13 85/19 85/21 90/11 90/16 92/14
**perspective** [3] 5/17 7/19 78/13
**Phan** [20] 47/15 47/19 48/22 48/24 48/25 49/12 51/10 51/14 51/19 53/11 54/18 54/23 55/1 59/16 59/19 59/23 60/3 60/12 96/24 97/5
**Phan's** [6] 48/1 48/5 49/9 49/14 52/15 53/6
**phone** [15] 27/21 28/6 32/17 33/1 33/8 33/13 66/7 66/10 66/15 66/18 66/19 66/20 67/2 84/23 85/14
**phones** [1] 66/14
**phrase** [1] 15/10
**Plaintiff** [1] 1/10 2/2
**PLAINTIFF'S** [2] 3/4 3/7
**plan** [3] 15/19 15/22 62/19
**planning** [1] 78/20
**plans** [1] 9/8
**play** [1] 93/18
**played** [1] 25/6
**please** [26] 15/6 23/16 23/18 25/11 32/12 40/14 48/13 55/10 56/24 57/12 58/13 58/19 60/24 61/1 63/17 64/4 64/12 64/24 67/7 85/12 91/5 91/9 97/10 97/11 97/14 100/2
**plus** [1] 54/11
**point** [11] 7/22 14/9 14/12 39/19 75/25 76/18 79/3 80/25 81/3 81/15 94/23
**pointed** [1] 79/4
**points** [1] 81/3
**policy** [2] 21/11 21/11
**portion** [7] 77/1 77/11 90/6 90/8 90/13 90/14 90/16
**portions** [3] 77/4 90/4 100/9
**position** [3] 32/5 81/11 81/13
**positive** [2] 62/3 62/11
**possession** [3] 64/2 64/22 65/11
**possible** [1] 37/8
**possibly** [3] 19/14 23/8 28/4
**post** [2] 12/16 12/21
**post-date** [1] 12/21
**potential** [2] 25/2 83/3
**potentially** [4] 9/4 47/2 80/12 103/4
**preapproving** [1] 31/24
**preceded** [1] 43/16
**precisely** [1] 77/20
**precluding** [1] 80/17
**prefer** [2] 82/17 100/15
**prejudice** [2] 9/19 10/4
**prejudicial** [1] 8/1
**prep** [4] 5/22 5/23 6/2 7/6
**prepare** [1] 93/2
**prepared** [1] 20/17
**preparing** [5] 7/16 60/2 60/10 91/15 92/1
**presence** [2] 78/6 100/15
**present** [15] 4/2 4/10 18/4 22/19 28/9 36/4 36/6 38/5 61/3 63/6 63/11 76/4 81/24 82/19 100/6
**presented** [1] 100/19
**presently** [1] 17/10
**PRESIDING** [1] 1/8
**prevented** [1] 11/4
**previously** [3] 23/20 68/11 80/16
**printout** [4] 58/22 63/20 64/14 65/4
**printouts** [1] 59/14
**prior** [6] 28/19 77/16 79/15 100/20 100/23 101/16
**private** [2] 9/15 60/7
**privilege** [1] 75/15
**privileged** [1] 76/16
**privy** [2] 33/4 49/8
**PRO** [1] 2/4
**probably** [5] 10/7 30/20 62/16 68/5 78/8
**problem** [3] 6/17 57/22 86/4
**procedures** [1] 15/3
**proceed** [4] 23/18 37/15 37/18 81/17
**proceeding** [1] 59/23
**proceedings** [8] 1/15 22/18 32/13 63/5 64/10

64/25 81/23 104/10
**process** [2] 74/8 80/9
**produce** [1] 12/5
**produced** [8] 37/13 80/16 102/9 102/12 102/14 102/17 102/17 103/3
**production** [2] 101/1 101/2
**proffer** [7] 78/2 78/4 78/11 78/23 79/11 101/7 101/9
**proffering** [1] 82/1
**profile** [2] 16/4 16/6
**progeny** [2] 14/17 16/13
**project** [1] 11/23
**prolong** [1] 78/7
**Promise** [1] 48/25
**proper** [1] 12/4
**properly** [1] 84/23
**proposed** [2] 6/21 6/24
**proposing** [1] 9/3 9/4
**proposition** [4] 25/5 30/3 30/13 30/16
**prosecution** [3] 14/21 15/24 16/5
**prosecutors** [2] 5/9 16/3
**prove** [1] 61/11
**provide** [4] 61/5 77/10 79/15 94/16
**provided** [2] 18/9 68/11
**provides** [3] 61/20 76/25 77/11
**providing** [2] 7/15 79/14
**publish** [7] 57/25 58/18 85/11 90/6 90/8 90/23 90/24
**purpose** [2] 89/2 89/9
**purposes** [4] 37/14 62/14 78/15 90/2
**pursuant** [1] 104/7
**pursued** [4] 14/21 15/24 15/25 28/16
**pursues** [1] 16/6
**pushed** [1] 27/4
**put** [5] 5/17 7/19 9/12 78/1 85/16

## Q

**question** [38] 5/5 7/9 11/5 13/19 14/18 17/3 17/9 18/12 24/18 29/3 29/7 30/24 32/3 33/11 33/12 36/12 36/14 36/23 50/6 65/22 68/16 70/12 71/14 72/17 73/2 73/15 74/19 74/20 75/2 75/23 77/15 82/23 84/13 86/24 86/25 93/13 94/14 98/4
**questioning** [3] 9/25 14/15 16/20
**questions** [11] 7/11 9/24 18/7 18/9 18/12 18/22 18/25 40/14 49/24 68/22 69/1
**quick** [2] 20/3 81/20
**QuickBooks** [8] 45/9 63/20 64/1 64/14 64/21 65/5 65/11 68/21
**quite** [3] 37/8 44/6 47/23
**Quix** [2] 87/20 88/16
**quoted** [2] 61/25 77/9

## R

**raise** [3] 14/12 14/13 101/21
**raised** [1] 100/11
**raising** [1] 102/11
**Ramon** [3] 4/7 22/24 67/13
**Ranee** [1] 20/25
**rather** [2] 77/24 78/25
**read** [2] 82/2 91/5
**reading** [2] 34/8 72/18
**Reagan** [1] 2/10
**real** [1] 81/20
**reality** [2] 13/23 13/25
**really** [3] 13/20 66/3 66/5
**reargue** [1] 81/3
**reason** [21] 4/25 5/7 5/7 5/9 9/6 12/2 12/10 13/8 13/17 14/10 31/16 34/24 35/1 40/7 42/10 52/8 52/18 52/21 69/22 71/8 80/1 80/23
**reasoning** [1] 20/4
**reasons** [2] 49/16 53/8
**rebut** [1] 12/6
**rebuts** [1] 14/9
**recall** [48] 26/9 27/12 28/3 28/5 29/5 29/9 35/15 36/16 36/20 40/1 43/8 43/9 43/20 44/23 45/5 46/18 47/21 47/23 47/25 49/23 55/12 60/1 60/5 67/17 67/25 68/3 68/23 69/2 70/4 72/21 73/7 74/2 74/3 74/4 87/15 89/6 89/9

**R**

**recall... [11]** 92/1 92/3 93/25 94/19 94/21 95/3 95/5 96/11 97/25 98/6 98/12
**receive [2]** 47/11 53/7
**received [16]** 3/7 3/12 44/15 44/22 45/1 45/12 57/23 57/24 59/19 72/7 85/8 85/9 87/8 90/2 90/4 90/5
**recess [8]** 22/16 22/17 60/23 63/3 63/4 81/22 99/25 103/10
**reciprocal [5]** 37/13 80/11 80/18 80/24 81/7
**recognize [2]** 15/18 58/2
**recollection [57]** 32/15 32/19 32/25 33/4 33/17 33/25 34/11 34/16 34/20 35/20 35/24 36/2 36/8 36/11 37/4 37/21 38/2 38/7 38/13 39/12 39/24 40/16 40/23 41/2 41/12 42/2 42/6 42/11 42/19 45/21 46/14 54/25 60/10 60/15 61/7 61/15 61/21 65/21 68/16 70/13 72/1 72/4 72/6 72/18 73/16 77/18 84/13 87/25 88/3 88/14 89/15 89/20 91/14 91/17 91/23 96/1 96/4
**reconsider [1]** 100/12
**record [17]** 16/24 17/7 20/13 20/21 35/12 37/12 57/14 61/4 65/5 76/8 77/23 78/4 82/3 86/13 101/10 102/11 103/1
**recorded [1]** 9/19
**records [7]** 45/5 45/9 45/9 64/1 64/21 65/11 88/17
**RECROSS [2]** 3/4 3/10
**red [1]** 49/2
**redact [2]** 86/2 90/19
**redacted [5]** 3/16 3/17 85/9 90/5 90/25
**redaction [4]** 85/2 85/4 85/8 85/17
**redacts [2]** 84/23 86/8
**redirect [5]** 3/4 3/10 4/20 12/19 62/19
**reduce [1]** 9/21
**reduced [6]** 11/25 12/23 13/25 14/1 24/9 24/13
**reduces [3]** 75/6 75/19 83/2
**reduction [3]** 12/11 14/3 14/5
**reference [1]** 8/4
**referencing [1]** 10/24
**referral [1]** 17/17
**referring [3]** 22/1 80/21 87/9
**reflect [1]** 89/18
**reflected [2]** 99/3 99/18
**reflects [2]** 8/4 35/3
**refresh [27]** 32/19 32/24 34/10 35/23 36/8 36/22 36/24 37/20 38/7 38/19 38/24 41/11 42/19 46/14 61/6 68/16 70/13 71/25 72/4 72/6 73/15 77/18 84/13 88/6 88/14 89/15
**refreshed [4]** 34/20 35/20 36/11 40/16
**refreshes [5]** 34/16 38/14 61/21 88/19 89/20
**refreshing [1]** 61/15
**refused [10]** 34/21 34/22 34/25 37/2 38/24 40/21 41/23 43/5 77/2 88/24
**regard [8]** 4/18 9/14 9/15 9/17 9/23 76/24 77/2 100/17
**regarding [8]** 34/12 42/9 42/23 43/18 83/20 83/21 83/25 89/19
**REGNIER [86]** 3/5 4/18 5/12 5/18 7/7 7/14 10/17 16/15 17/24 18/12 20/5 23/20 23/23 25/17 27/12 29/3 32/1 32/24 33/11 34/10 35/3 35/15 36/16 37/20 38/12 39/2 39/24 40/14 40/23 41/11 41/25 42/17 43/15 43/20 44/21 46/3 47/10 48/19 50/20 53/15 54/25 55/24 56/5 57/2 58/2 58/9 58/21 59/1 62/16 63/15 63/19 65/4 65/14 67/6 67/12 68/15 68/22 70/12 71/15 71/25 73/2 73/15 73/23 74/11 74/17 74/20 75/4 82/22 89/11 86/19 87/25 88/10 89/22 89/15 91/3 97/17 98/20 101/7 102/1 102/13 102/10 102/13 102/24 103/3
**Regnier's [3]** 9/20 100/21 101/16
**regular [4]** 32/8 92/19 92/23 95/6
**regularly [1]** 33/18
**regulations [1]** 104/12
**reiterate [1]** 101/15
**rejected [2]** 100/10 100/17
**relate [1]** 57/7

**related [10]** 11/22 21/24 39/14 44/13 48/22 60/6 67/24 68/20 69/14 94/2
**relates [10]** 13/9 15/23 58/11 70/22 72/11 72/14 77/1 77/12 78/20 101/25
**relating [24]** 7/24 11/16 11/24 22/13 35/4 37/6 41/16 46/5 46/9 54/19 54/22 58/12 59/15 59/23 60/3 62/1 65/15 69/5 72/10 87/1 87/16 93/6 97/7 102/13
**relationship [2]** 16/10 17/15
**release [1]** 19/16
**relevance [4]** 26/10 28/23 83/11 90/1
**relevant [1]** 4/16
**remark [1]** 40/12
**remember [13]** 24/2 34/4 44/10 44/14 46/4 46/8 59/20 60/24 67/10 67/13 67/15 87/12 100/2
**replete [2]** 102/11 103/1
**replied [1]** 67/4
**report [1]** 23/16
**reported [1]** 104/9
**REPORTER [1]** 104/17
**REPORTER'S [1]** 1/15
**reports [1]** 6/1
**represent [2]** 25/23 82/10
**representation [5]** 17/7 20/13 20/21 21/19 21/22
**representatives [1]** 5/18
**represented [1]** 71/16
**representing [1]** 82/4
**represents [2]** 76/12 76/13
**request [3]** 37/2 52/15 62/1
**requested [1]** 4/14
**required [2]** 17/2 95/12
**requires [1]** 82/9
**requisite [1]** 103/1
**research [2]** 61/2 100/5
**reserve [1]** 102/20
**resolve [1]** 48/4
**resolved [2]** 44/9 47/19
**resolving [1]** 55/1
**respect [5]** 7/21 72/2 9/1 100/7 101/6
**respond [2]** 87/11 102/21
**responded [3]** 11/17 86/25 87/4
**response [1]** 11/15
**responses [1]** 33/18
**restate [1]** 81/12
**result [3]** 60/8 73/5 74/23
**results [1]** 62/8
**resume [1]** 100/1
**resumed [3]** 22/18 63/5 81/23
**retain [3]** 94/15 95/7 95/15
**retained [6]** 94/19 94/22 96/5 96/21 96/23 97/1
**retrieve [1]** 76/5
**retrieving [1]** 58/15
**return [1]** 43/7
**review [1]** 39/6
**reviewed [1]** 4/15
**right [70]** 11/11 11/21 13/2 13/2 18/5 18/11 20/9 24/11 24/18 24/22 24/25 25/18 26/6 26/7 26/16 26/25 28/17 29/22 30/4 30/11 30/17 33/9 33/13 39/7 39/10 41/3 43/25 44/7 45/2 45/9 47/5 49/24 50/23 51/4 51/7 51/10 52/1 53/18 53/22 54/7 54/9 54/17 55/4 57/5 58/7 59/8 64/2 64/14 64/19 64/20 65/5 67/22 69/5 69/9 69/11 69/13 75/24 86/2 86/21 86/24 87/2 94/17 95/10 95/13 95/20 98/10 99/12 99/13
**risk [3]** 6/18 8/1 19/22
**road [1]** 13/18
**Roberson [1]** 68/19
**role [4]** 25/6 72/11 92/13 93/18
**rolling [1]** 101/1
**Ronald [1]** 2/10
**roommate [7]** 19/18 19/19 19/20 23/7 62/6 62/7 62/10
**roughly [4]** 4/23 53/23 54/12
**RPR [1]** 1/19
**rule [36]** 8/3 9/10 38/23 38/25 40/21 41/22

41/22 43/5 61/4 61/8 61/12 61/13 61/14 61/17 62/1 62/3 63/3 67/11 73/25 80/1 80/3 80/4 88/22 88/25 89/24 90/1 100/8 100/11 100/18 101/1 101/8 101/16 101/19 101/25 103/8
**Rule 16 [2]** 101/1 101/19
**Rule 26.2 [1]** 103/8
**rules [5]** 4/17 4/25 8/23 61/5 76/25
**ruling [15]** 7/20 8/11 8/16 8/18 9/7 10/6 14/4 15/8 77/16 77/21 77/25 80/8 81/4 101/6 101/8
**rulings [3]** 15/7 20/8 100/12
**run [3]** 5/4 14/14 16/16
**runs [3]** 8/1
**Ruth [1]** 36/17

**S**

**S.C [3]** 19/9 23/5 23/8
**SACR [3]** 1/11 4/3 22/20
**SACR-19-00061-JVS [3]** 1/11 4/3 22/20
**safe [2]** 23/9 50/9
**SAGEL [22]** 2/9 4/5 15/12 16/9 20/17 22/12 22/21 22/25 25/12 29/7 43/8 46/17 49/23 50/14 51/1 59/18 62/18 62/20 63/16 67/22 68/19 79/2 85/3
**Sagel's [2]** 9/7 28/13
**said [10]** 15/18 17/16 19/13 33/12 54/17 62/9 74/18 81/4 81/14 87/9
**same [17]** 19/1 21/6 27/13 31/19 34/24 34/25 41/21 43/4 52/12 53/13 59/2 65/10 71/22 73/11 83/16 84/21 89/4
**San [1]** 2/16
**sanction [1]** 77/16
**Santa [3]** 1/14 1/20 2/11 4/1
**sat [1]** 31/18
**save [2]** 66/11 66/15
**say [20]** 5/25 9/5 11/2 11/8 17/2 17/4 17/11 17/25 22/13 24/7 24/23 25/7 31/4 36/10 38/15 43/23 45/13 50/9 71/17 79/14 79/14
**saying [4]** 15/1 18/5 19/10 31/18
**says [8]** 40/6 49/17 70/17 73/20 79/21 79/21 91/5 91/18
**scheduling [1]** 62/14
**scheme [1]** 71/10
**scope [2]** 8/23 18/13
**Scott [3]** 26/3 36/16 69/15
**SE [2]** 2/14
**search [9]** 20/16 20/19 20/23 20/24 21/5 21/12 21/14 24/16 24/20
**searching [1]** 46/4
**seated [1]** 22/16
**second [6]** 10/11 11/1 50/14 55/21 58/16 58/25
**secretary [1]** 88/17 93/21
**section [3]** 2/6 21/1 104/7
**secured [1]** 14/11
**Security [2]** 70/3 70/15
**see [30]** 4/25 9/11 15/9 16/20 25/13 32/19 36/8 38/7 48/19 49/4 50/16 50/20 51/17 51/23 52/25 53/14 54/1 54/22 55/8 56/13 56/16 57/2 57/16 58/12 59/11 85/23 86/11 87/6 91/3 94/14
**seeing [1]** 79/16
**seems [2]** 4/16 15/14
**SEFFENS [3]** 1/19 104/16 104/17
**SELNA [1]** 1/8
**send [5]** 31/22 52/7 65/16 65/18 91/9
**sending [2]** 49/2 49/12
**sense [2]** 17/2 17/12
**sensitive [1]** 6/18
**sent [14]** 14/1 32/16 49/15 50/10 50/11 51/12 51/19 52/5 52/12 53/10 65/24 67/4 102/15
**separate [1]** 76/9
**September [2]** 51/3 53/14
**September 18 [1]** 51/3
**September 18th [1]** 53/14
**served [2]** 72/8 72/9
**sessions [4]** 5/23 6/2 6/4 7/6
**set [1]** 13/6

**S**

settled [1]  46/22
settlement [9]  44/13 47/5 47/11 57/7 59/24
  60/4 69/5 69/19 71/9
seven [4]  45/1 81/1 95/16 101/1
severed [1]  22/10
shall [4]  8/11 100/25 101/2 103/7
shape [1]  23/11
SHARON [3]  1/19 104/16 104/17
she [36]  5/13 8/7 8/9 8/15 10/1 17/24 19/11
  36/10 36/11 36/23 49/17 49/17 49/19 75/23
  75/24 76/12 76/16 87/9 92/5 92/11 92/12
  92/14 92/17 92/22 92/23 93/9 93/20 93/21
  93/22 93/23 94/1 94/4 102/5 102/5 102/15
  102/25
sheet [4]  39/2 39/10 39/14 40/3
shift [1]  29/2
shoddy [1]  14/20
short [1]  76/1
shortcut [1]  20/13
shorten [1]  21/21
shortly [2]  67/18 72/7
should [8]  20/4 23/15 77/4 90/4 100/10
  100/14 102/9 102/14
showed [2]  42/17 88/10
showing [2]  80/22 81/9
shown [2]  92/2 101/18
shows [1]  50/22
side [2]  23/9 97/14
sign [5]  37/24 89/6 89/17 89/20 91/9
signature [4]  48/17 58/3 58/4 58/4
signed [5]  34/2 34/13 34/14 37/1 37/7
  37/25 39/15 42/9 42/24 58/6 89/8 92/2
significant [1]  6/19
Sims [14]  26/3 26/5 26/8 27/18 34/12 35/4
  36/16 38/3 38/4 40/2 69/15 72/20 73/5 73/17
since [2]  5/3 81/1
single [1]  20/23
sir [21]  7/13 7/17 8/3 8/22 13/12 15/6 16/18
  18/6 20/8 21/18 37/18 75/2 77/20 79/8 79/22
  80/9 80/14 81/6 81/12 82/12 85/18
sit [13]  22/12 43/19 45/4 55/2 63/23 69/20
  75/5 75/8 75/16 78/7 91/7 91/17 91/23 96/20
sitting [2]  45/20 83/21
situation [1]  13/23
six [3]  59/10 62/25 95/16
skip [1]  55/8
slip [2]  7/23 8/8
sloppy [1]  14/19
so [45]  8/25 10/23 12/18 13/7 13/10 13/13
  14/7 16/15 16/17 17/11 17/24 18/11 19/25
  21/25 23/9 23/11 29/15 30/8 30/20 32/17
  35/10 45/11 46/25 49/10 50/9 54/9 60/1 60/8
  65/21 66/11 66/12 67/2 67/19 75/16 76/1
  76/10 76/12 77/12 78/6 80/5 86/22 91/23 96/8
  101/6 103/4
Social [2]  70/3 70/15
SoftBank [1]  48/2
software [1]  99/21
some [22]  4/21 6/2 10/8 12/7 28/5 30/14
  31/21 32/10 34/1 34/12 35/16 49/24 63/15
  65/5 68/22 69/1 80/2 94/8 95/15 95/19 95/19
  100/10
somebody [3]  15/8 31/9 38/14
someone [3]  28/5 28/9 33/7
something [7]  7/8 8/9 17/25 37/6 37/22 38/1
  76/15
sometime [2]  60/18 60/19
sometimes [4]  24/6 24/9 95/9 95/12
somewhat [1]  21/21
son [3]  46/10 46/11 46/24
sorry [4]  50/25 53/25 56/9 64/12
sort [1]  65/5
sought [1]  89/16
sound [1]  47/24
sounds [2]  15/7 47/23
sources [2]  29/17 29/21
SOUTHERN [1]  1/6
speaking [3]  40/4 43/7 95/22

**Special [3]**  4/7 22/24 102/6
specific [2]  20/17 99/14
specifically [5]  20/15 24/17 31/10 56/6 101/3
speculation [2]  27/9 93/12
speech [1]  15/10
spell [1]  51/9
spends [1]  18/19
spent [4]  4/23 5/13 5/15 5/18 6/9 7/14 11/7
spoke [2]  69/13 69/15
spouse [2]  83/19 83/23
spring [2]  2/7 24/2
staff [3]  30/15 32/7 62/2
stamp [2]  37/16 77/17 80/7
stand [8]  8/7 8/14 34/20 43/20 45/20 61/21
  93/8 102/25
start [1]  63/16
started [4]  10/7 17/18 67/18 69/1
state [2]  8/18 88/18
stated [2]  9/9 77/20
statement [1]  49/6
statements [5]  6/13 9/8 70/3 71/6 102/14
states [15]  1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
  4/4 4/6 22/21 22/23 72/5 104/8 104/12
stayed [1]  92/17
stenographically [1]  104/9
STEWARD [4]  2/15 2/15 4/11 23/2
stick [1]  5/10
still [7]  16/24 19/25 23/10 25/1 62/15 62/24
  79/14
stipulate [2]  57/13 57/21
stipulating [1]  57/18
stole [1]  17/23
Stolper [13]  16/12 17/15 17/21 17/25 18/8
  18/13 26/20 26/21 26/22 27/4 27/12 28/12
  28/15
Stolper's [1]  28/20
Stormy [1]  17/18
strange [1]  15/7
Street [3]  1/20 2/7 2/11
stricken [3]  40/12 44/18 72/24
strike [13]  24/22 27/20 31/2 32/6 40/10 44/16
  63/19 67/6 72/23 74/7 99/5 101/23 102/18
stuff [1]  92/14
subject [6]  59/7 85/2 85/3 85/8 85/17 101/8
submission [1]  9/13
submit [1]  78/23
submitted [2]  61/1 100/4
subsequent [2]  24/10 81/8
subsequently [3]  27/6 27/17 27/24
substantive [1]  8/12
substitute [1]  101/5
successive [1]  52/11
such [1]  84/2
sudden [1]  8/9
sued [2]  68/23 69/2
Suffice [1]  22/13
sufficient [4]  5/17 9/18 78/12 78/15
suggested [1]  13/19
suggesting [7]  31/8 31/13 31/17 31/22 31/25
  32/2 32/4
suing [2]  83/9 83/15
suit [1]  9/18
Suite [3]  1/20 2/11 2/16
suits [1]  9/15
Sunrise [1]  94/6
Supply [2]  87/20 88/16
support [1]  61/9
supposed [2]  48/11 61/22
sure [17]  8/15 10/18 10/24 12/14 12/18 16/16
  56/13 60/19 74/22 76/7 77/23 81/21 84/4 88/2
  91/22 94/13 97/17
surprise [1]  101/19
suspended [1]  17/10
Sustained [11]  27/10 28/24 35/8 35/11 47/8
  73/21 83/13 83/17 87/23 93/14 96/18
SWORN [1]  23/20
symptoms [2]  23/7 23/16
system [1]  27/25

**T**

table [2]  4/7 22/24
Tabs [2]  68/4 68/20 68/21 99/21
take [10]  16/3 20/2 56/2 60/22 62/16 76/1
  78/22 78/25 93/8 99/24
taken [4]  22/17 63/4 81/22 103/10
takes [2]  8/7 8/13
taking [2]  62/7 71/10
talk [1]  78/7
talked [1]  10/25 44/12
talking [3]  4/18 85/21 98/25 99/1
talks [1]  79/5
targeted [2]  15/1 15/1
targeting [2]  17/14 20/3
tat [2]  22/12
tax [11]  21/24 21/24 21/24 21/24 21/25 22/2
  22/8 22/8 49/16 52/18 53/7
tax-related [1]  21/24
techniques [1]  16/5
technology [2]  4/12 23/3
telephone [1]  15/5
tell [11]  7/1 17/16 20/18 45/11 45/16 50/4
  50/6 60/6 67/6 67/7 99/22
telling [1]  70/21
temporal [2]  13/10 14/8
ten [6]  19/9 45/1 54/6 62/4 66/4 76/1
Ten percent [1]  54/6
ten-figure [1]  45/1
tens [1]  44/21
tenure [1]  44/2
term [2]  15/2 16/2
terminated [5]  16/10 26/8 26/14 28/3 28/12
terms [1]  50/7
test [2]  62/7 62/11
testified [6]  25/24 50/2 74/21 97/18 102/4
  102/5
testify [6]  18/20 18/22 30/21 61/8 92/1 93/9
testifying [4]  5/23 6/3 18/23 28/19
testimony [21]  6/4 7/16 7/25 8/14 8/24 11/15
  11/22 11/24 12/19 31/2 34/19 61/2 61/13
  75/16 77/1 77/12 93/11 94/16 100/21 101/17
  102/18
tests [1]  62/3
text [12]  65/18 65/24 66/9 66/12 66/17 66/22
  66/25 102/5 102/7 102/12 102/15 103/2
texted [3]  67/9 67/10 67/13
texting [1]  67/17
texts [1]  67/10
than [12]  6/10 9/11 14/6 54/15 64/6 66/4
  72/21 73/6 77/24 78/25 101/2 101/4
thank [23]  5/2 10/21 11/12 15/5 15/6 15/15
  19/4 19/5 19/8 19/8 19/8 23/14 23/19 26/21 44/19
  62/22 68/13 74/19 76/3 85/10 87/12 91/9
  103/9
Thanks [1]  87/14
that [516]
that's [60]  5/17 8/11 12/2 12/8 12/21 14/4
  16/7 16/19 18/4 18/21 19/25 21/13 22/2 24/12
  24/18 29/14 29/23 30/1 30/5 30/12 30/23
  30/25 33/11 39/8 40/6 45/25 50/6 50/12 50/18
  51/16 52/7 57/4 61/24 62/19 62/21 63/2 63/9
  65/21 69/20 69/24 70/17 70/18 70/20 71/14
  72/5 74/19 75/1 78/15 78/18 78/24 79/7
  80/24 82/18 85/6 85/25 91/11 95/18 96/22
  98/4 101/13
their [10]  7/10 26/15 31/23 33/19 46/10 46/24
  47/11 54/20 80/16 96/9
them [40]  5/5 5/13 5/22 6/15 17/13 26/15 28/2
  28/3 28/4 28/18 33/24 36/7 37/17 50/4 50/7
  50/8 52/7 54/20 56/13 60/13 66/7 67/3 67/5
  68/4 78/7 79/7 79/9 79/16 79/16 79/17 82/2
  82/16 85/18 91/21 91/23 102/16 102/16 103/3
  103/4 103/4
themselves [1]  38/5
then [28]  5/20 9/24 10/9 13/14 18/17 20/20
  25/20 25/24 27/6 28/2 30/15 39/7 44/12 49/2
  51/3 51/22 54/11 54/14 56/10 57/17 62/18
  69/1 76/11 81/1 81/7 87/4 97/22 102/17
theory [1]  10/4

**T**

**there [61]** 5/14 6/8 6/9 7/4 7/9 7/10 8/12 9/23 10/15 14/12 27/20 34/21 36/5 43/24 44/3 44/5 44/21 44/25 45/4 45/20 49/2 49/11 51/6 51/22 52/18 52/21 56/22 58/9 59/10 62/11 65/9 66/20 67/4 67/8 75/5 76/8 76/9 76/11 78/7 80/1 80/2 80/23 81/17 85/16 86/24 87/18 89/8 90/16 90/18 90/18 91/24 95/15 96/20 98/2 98/3 98/8 98/22 98/24 99/2 99/14 100/22
**there's [10]** 6/1 6/1 36/23 53/17 56/15 61/20 76/17 86/22 97/21 97/24
**thereafter [1]** 28/11
**therein [1]** 9/19
**these [15]** 5/25 6/1 7/6 17/22 22/13 37/13 52/24 55/12 55/15 56/6 56/19 59/13 59/14 82/1 99/15
**they [40]** 4/22 6/13 6/14 7/8 7/9 7/10 7/12 9/5 17/15 22/3 25/1 25/1 27/22 27/24 28/8 37/14 37/16 39/6 39/9 42/5 43/1 44/6 52/18 52/22 55/18 60/4 62/25 66/11 66/19 66/25 67/2 80/1 89/5 91/22 96/9 98/14 99/19 102/9 102/13 102/14
**they're [5]** 52/3 77/18 102/8 102/9 102/17
**they've [1]** 17/14
**thing [6]** 17/21 18/17 20/3 21/23 23/15 92/15
**things [11]** 6/17 13/21 14/25 17/5 17/15 21/21 21/25 22/13 23/25 39/4 88/15
**think [53]** 5/4 5/10 5/11 5/14 5/17 5/21 6/7 6/9 6/12 7/18 8/3 9/23 9/25 10/7 11/5 11/6 12/2 12/4 13/2 13/3 13/4 13/22 16/8 16/13 16/15 17/9 18/9 18/15 19/21 21/11 22/5 23/16 43/12 50/17 54/17 62/4 62/11 62/24 62/25 63/1 66/6 66/9 66/17 67/2 70/9 76/16 78/3 78/3 78/24 82/18 85/25 100/14 100/14
**thinking [1]** 17/6
**third [1]** 85/19
**this [127]**
**those [42]** 4/21 5/7 5/7 5/20 9/2 11/3 11/18 14/25 16/14 18/9 24/9 25/3 30/18 31/9 33/22 35/19 35/24 41/17 52/8 66/17 66/21 66/25 72/1 79/15 79/25 80/12 80/17 95/3 95/9 95/19 95/19 95/22 99/3 99/11 99/18 99/22 100/9 100/12 100/19 102/7 102/20 102/25
**though [5]** 17/15 28/15 30/8 96/4 102/3
**thought [2]** 9/21 80/8
**thousands [3]** 31/5 31/9 95/10
**three [7]** 17/23 19/25 23/11 28/18 62/9 85/12 86/22
**threw [1]** 12/20
**through [6]** 29/20 46/17 47/5 59/11 60/9 62/17
**throughout [1]** 18/18
**THURSDAY [2]** 4/1 91/7
**Tim [1]** 94/4
**time [50]** 4/23 5/13 5/15 5/18 6/9 7/15 8/13 11/2 11/7 12/17 13/10 14/8 15/14 19/7 21/14 21/18 21/18 24/16 24/20 24/23 25/9 28/11 29/15 29/19 29/19 29/19 31/3 31/8 38/20 39/20 46/3 47/6 50/4 60/20 78/10 79/1 79/17 81/17 82/16 84/19 85/19 85/20 87/16 87/16 88/20 91/6 93/5 93/15 93/16 95/25
**timeliness [1]** 80/9
**timely [3]** 80/1 80/18 80/20
**times [8]** 4/18 5/12 21/3 21/3 50/25 79/4 92/12 92/22
**timing [5]** 22/9 22/13 49/16 62/24 80/3
**tit [1]** 22/12
**Title [1]** 104/8
**today [12]** 16/15 43/20 45/4 63/23 74/21 75/5 75/8 75/16 83/21 91/9 91/17 96/20
**told [6]** 9/10 9/24 12/22 50/7 68/3 81/16
**tomorrow [2]** 62/8 100/16
**tongue [2]** 7/23 8/8
**too [1]** 19/22
**took [2]** 48/4 102/25
**top [9]** 25/13 25/17 48/16 50/15 53/13 53/13 85/11 85/12 85/19
**topics [1]** 29/2
**tossed [1]** 12/13

**total [3]** 53/17 97/4 97/8
**totally [1]** 25/6
**touched [1]** 67/24
**touching [1]** 57/8
**track [1]** 68/20
**tragic [1]** 46/24
**Tran [8]** 48/21 51/6 54/19 55/2 55/6 55/22 59/16 60/12
**transaction [5]** 43/21 46/4 49/18 50/5 55/22
**transactions [10]** 43/24 44/4 50/16 53/14 53/17 55/10 55/12 55/16 56/3 56/15
**transcript [9]** 1/9 1/15 10/6 39/6 41/4 41/17 42/4 104/9 104/11
**transfer [3]** 52/6 52/13 87/5
**transfers [4]** 52/5 52/9 52/12 87/17
**trial [5]** 1/12 18/18 22/10 92/17 101/4
**trouble [3]** 12/7 13/20 87/14
**true [27]** 24/14 27/7 27/20 28/15 29/11 30/6 32/7 41/14 41/18 42/21 44/2 59/22 59/25 60/2 68/18 70/25 71/5 71/11 72/15 73/2 74/21 74/24 75/1 75/20 95/17 95/18 104/8
**trust [2]** 56/7 58/3
**truth [1]** 70/22
**try [2]** 6/15 65/2
**trying [9]** 7/13 17/25 18/20 35/7 35/9 37/22 37/25 77/22 79/14
**turn [5]** 25/11 43/12 48/13 62/18 79/7
**turning [1]** 79/6
**Twenty [2]** 53/24 54/9
**Twenty percent [2]** 53/24 54/9
**two [32]** 5/20 5/25 9/24 11/14 13/14 13/15 17/4 17/12 26/14 26/18 28/5 51/22 52/5 52/11 52/24 53/13 53/17 55/10 56/2 56/6 56/8 56/15 62/9 66/13 76/9 87/18 97/13 97/21 98/17 99/8 99/11 99/15
**type [1]** 92/14

**U**

**U.S [11]** 21/1 26/25 27/5 27/13 27/14 27/16 28/20 65/16 65/19 67/8 104/17
**uestion [1]** 99/14
**ulterior [1]** 15/25
**ultimately [3]** 12/20 13/6 24/13
**under [12]** 14/16 16/13 18/12 40/21 57/14 61/13 62/24 63/1 77/5 80/16 89/23 100/12
**underlying [1]** 96/14
**understand [16]** 7/20 16/22 20/10 22/11 77/7 77/15 77/22 78/16 78/17 81/10 83/1 86/20 87/8 94/13 97/17 99/14
**understanding [10]** 12/18 66/12 75/4 75/8 75/17 75/19 76/15 78/19 78/19 83/5
**understands [1]** 77/14
**understood [2]** 10/19 15/17
**undue [1]** 78/25
**UNITED [14]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/3 4/6 22/21 22/23 104/8 104/12
**unless [1]** 77/17
**unlicensed [1]** 16/23
**unlike [1]** 84/24
**unsure [1]** 68/6
**until [7]** 8/14 13/10 22/16 30/6 61/1 98/3 100/4
**up [9]** 11/19 12/10 13/10 13/14 18/1 20/2 48/16 50/17 63/7
**upper [3]** 64/18 65/9 97/24
**us [9]** 4/12 19/25 22/23 45/12 62/4 79/15 79/15 91/9 102/11
**USAO [8]** 35/13 37/16 38/21 42/18 77/17 80/6 84/10 88/11
**use [13]** 16/1 18/22 21/16 77/8 77/17 78/21 79/25 80/12 86/3 86/5 90/14 101/3 103/4
**used [5]** 21/14 39/3 68/20 77/18 80/2
**using [3]** 15/12 15/13 80/6

**V**

**Vague [1]** 27/1
**valid [1]** 10/3
**value [1]** 44/13
**various [4]** 11/17 26/6 29/3 94/16

**verdict [7]** 11/19 11/25 12/9 12/13 13/5 24/1 12/3/ of 117
**verdicts [2]** 24/6 92/9
**Verizon [1]** 87/14
**version [1]** 86/8
**versus [2]** 4/4 5/16 22/21
**very [4]** 7/12 10/23 39/16 46/11
**victories [1]** 12/5
**virus [1]** 19/14
**voicemail [1]** 19/10
**VOL [1]** 1/12
**vs [1]** 1/10

**W**

**waiting [1]** 40/2
**want [29]** 5/4 7/23 8/7 10/18 12/8 12/14 12/18 12/22 12/22 14/14 15/2 15/18 16/16 20/10 29/2 30/20 46/3 63/15 77/12 78/8 78/9 81/25 90/8 97/11 97/17 101/7 101/10 102/2 102/16
**wanted [7]** 14/12 31/9 49/15 52/18 52/22 66/6 102/22
**wants [4]** 20/3 79/15 84/24 85/6
**warrant [4]** 21/12 21/15 24/16 24/20
**warrants [5]** 20/16 20/17 20/19 20/24 20/25 21/5
**was [170]**
**Washington [2]** 20/14 20/18
**wasn't [7]** 13/20 19/13 33/4 33/6 44/15 50/7 96/8
**waste [3]** 39/20 46/3 78/9
**way [12]** 5/22 21/6 25/2 50/11 52/19 52/22 78/25 82/17 85/6 86/14 91/15
**we [88]** 5/25 12/18 19/21 19/21 19/23 20/12 20/20 21/16 22/7 22/16 23/10 25/13 25/24 29/24 30/3 30/8 30/9 31/5 32/10 32/10 34/13 34/18 34/23 38/20 39/19 40/15 41/5 41/20 42/9 42/17 43/3 43/7 43/12 44/9 44/12 44/25 48/15 48/16 49/2 50/15 50/17 54/19 57/8 57/13 57/17 57/18 57/25 58/18 59/18 59/24 60/12 60/22 60/23 62/2 62/11 62/15 62/23 63/3 63/16 67/24 69/13 69/15 76/1 78/5 78/6 79/9 79/16 80/7 80/9 83/21 84/25 85/11 85/6 85/21 86/13 87/1 89/16 89/20 89/23 90/20 96/11 98/16 100/1 100/14 102/12 102/16 102/25 103/6
**we'll [5]** 31/21 82/16 99/24 99/25 100/1
**we're [8]** 5/10 13/8 13/18 19/25 21/25 23/11 79/16 102/1
**we've [1]** 18/18
**week [1]** 62/3
**weeks [2]** 13/14 13/15
**well [37]** 8/22 12/4 14/20 17/7 18/2 18/6 18/14 19/4 22/1 23/3 24/22 27/20 31/2 31/13 31/21 32/6 32/19 33/8 38/3 39/16 44/3 44/7 44/9 56/24 57/15 63/1 72/10 78/3 78/5 78/24 79/12 79/22 82/15 86/9 86/24 94/9 95/21
**went [5]** 9/2 10/9 22/8 62/25 92/17
**were [91]** 4/22 5/8 5/14 5/21 6/2 7/5 7/9 7/10 7/11 7/12 9/23 10/2 10/13 11/3 20/16 23/25 25/1 25/3 26/18 27/20 28/5 28/8 29/3 33/24 34/11 35/21 36/3 38/4 38/18 39/4 40/24 41/5 42/3 42/5 43/1 43/7 43/15 43/23 43/24 44/3 44/5 44/6 44/21 44/25 45/12 45/15 45/16 47/4 47/4 49/8 50/14 52/5 52/12 52/24 54/19 55/12 55/16 55/18 56/6 56/19 57/8 60/2 60/4 66/17 66/19 67/4 67/21 72/8 72/22 80/15 86/20 93/8 94/19 94/21 95/5 95/15 95/19 95/20 96/5 96/21 96/23 97/1 98/6 98/8 98/12 98/14 98/22 99/2 99/14 99/22 100/19
**west [4]** 1/20 2/11 87/13 94/6
**what [94]** 6/20 6/23 7/10 7/10 8/24 9/1 9/10 9/11 10/2 10/16 11/5 13/22 14/25 15/18 15/19 20/5 20/9 20/11 21/2 21/25 25/2 26/18 27/21 29/16 31/25 32/3 33/19 35/21 35/21 39/2 40/6 42/17 43/16 45/12 45/16 45/21 46/21 47/14 48/23 53/23 54/18 54/19 54/23 55/5 55/15 55/24 56/6 56/18 60/6 60/12 69/24 70/17 70/18 71/16 72/5 73/19 74/1 76/12 76/18 77/4

**W**

**what... [26]** 78/18 78/21 79/21 79/24 81/4
82/7 82/8 83/5 83/7 83/21 84/9 87/19 88/10
89/2 89/5 89/9 89/18 90/4 90/8 91/5 91/18
93/20 96/9 99/22 101/7 102/3
**what's [2]** 71/13 79/17
**whatever [5]** 10/11 18/15 67/4 82/9 103/2
**whatsoever [1]** 50/10
**when [21]** 13/3 18/1 21/13 22/8 27/12 27/15
30/2 48/10 50/10 60/19 67/17 71/8 72/9 79/17
87/8 87/9 91/20 92/5 93/16 95/24 103/6
**where [8]** 16/2 16/20 27/1 31/18 39/4 44/25
48/16 62/23
**whether [19]** 10/12 14/19 14/20 15/23 15/24
16/1 17/7 18/7 29/8 36/16 36/25 63/23 64/16
65/7 78/14 82/12 91/14 98/12 100/22
**which [8]** 13/17 18/17 60/11 80/15 80/17
81/14 95/15 100/9
**while [3]** 43/23 92/11 95/5
**Whitley [2]** 14/16 16/13
**who [25]** 16/10 16/23 20/24 21/7 21/8 22/1
25/21 26/5 26/22 27/4 28/12 36/6 36/7 38/15
46/10 48/1 48/21 48/25 69/13 69/15 76/9
76/10 76/11 76/13 76/23
**whole [1]** 13/17
**wholesale [5]** 77/11 79/13 79/19 79/22 80/15
**wholly [1]** 100/18
**whose [2]** 53/4 67/15
**why [25]** 7/5 7/9 12/3 12/10 13/17 17/16
45/19 45/19 45/25 49/11 50/10 51/12 51/19
52/5 52/11 53/10 55/18 66/9 80/1 81/14 83/9
83/15 86/2 94/11 96/7
**wife [8]** 19/10 19/19 84/15 85/23 86/17 87/4
87/12 87/16
**wife's [1]** 19/12
**will [51]** 5/3 8/4 8/18 19/1 19/2 19/23 21/10
21/20 22/16 23/10 25/23 32/10 34/21 34/25
37/12 38/24 39/19 40/12 40/21 41/23 43/5
44/18 51/1 57/23 58/14 60/22 60/23 62/8
62/16 62/18 62/19 63/3 63/16 74/23 76/1
76/20 78/12 78/22 78/23 80/12 80/22 81/5
82/15 85/8 88/24 90/2 95/5 95/5 100/1 100/12
102/20
**William [1]** 16/1
**willing [1]** 57/20
**wire [8]** 52/5 52/6 52/8 52/11 52/13 58/13
87/1 87/16
**wired [1]** 29/21
**wires [2]** 50/22 83/25
**wish [3]** 8/23 18/15 90/14
**within [5]** 15/25 66/14 90/16 93/21 101/1
**without [13]** 21/12 28/9 30/22 31/24 32/8 36/4
36/18 36/19 38/5 42/4 42/8 45/4 99/21
**witness [37]** 5/22 8/8 8/13 8/13 8/14 17/4
18/11 23/20 32/22 34/7 34/8 37/11 38/10
39/22 41/9 42/15 43/14 58/15 59/6 61/7 61/8
61/10 61/21 62/14 64/5 68/10 70/8 71/20
73/10 79/15 79/17 79/24 81/17 84/7 88/8
89/13 102/15
**witness's [7]** 8/6 34/19 40/16 61/11 61/12
77/1 77/12
**witnesses [3]** 3/4 3/10 102/1
**won [2]** 13/13 13/15
**words [1]** 30/25
**work [3]** 87/19 88/2 90/15
**worked [10]** 25/21 26/5 26/23 27/15 29/15
30/15 31/3 31/5 92/5 93/22
**working [5]** 24/5 24/22 24/24 25/1 83/23
**would [47]** 8/6 8/19 8/20 8/20 9/6 10/4 12/5
12/15 13/16 15/13 17/2 24/6 29/20 30/2 30/13
30/14 30/16 30/18 33/18 34/18 34/23 38/20
40/15 41/20 43/3 45/8 45/25 54/14 57/9 57/13
58/8 62/4 66/6 66/8 66/9 75/22 79/3 80/25
90/20 93/10 95/6 100/13 101/7 101/8 101/21
103/2 103/3
**wouldn't [1]** 30/9
**write [2]** 30/23 30/24
**writing [4]** 71/7 78/11 101/11 102/22
**written [2]** 33/19 78/23
**wrong [8]** 10/7 30/20 30/23 30/24 61/17 61/25
66/6 87/9
**wrote [3]** 20/23 30/19 30/20
**WYMAN [4]** 2/5 4/6 15/13 22/23

**Y**

**Yeah [1]** 50/17
**year [8]** 14/6 17/19 45/6 45/11 45/13 45/15
45/22 66/14
**years [5]** 17/12 17/23 21/7 44/5 66/13
**yes [175]**
**yesterday [11]** 4/17 5/1 9/13 23/25 43/8 44/12
67/24 68/22 87/21 91/8 97/18
**yet [2]** 9/5 49/3
**York [1]** 10/25
**you [474]**
**you of [1]** 69/25
**you'll [1]** 13/24
**you're [8]** 5/14 10/14 13/3 13/5 18/6 64/6
80/20 101/8
**you've [3]** 15/20 16/25 21/22
**your [236]**
**yours [1]** 92/13
**yourself [2]** 41/16 82/10

**Z**

**zero [4]** 14/1 14/5 21/3 21/3