Michael J. Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, TO STRIKE THE TESTIMONY OF NINE GOVERNMENT WITNESSES DUE TO VIOLATIONS OF THE JENCKS ACT AND RULE 26.2 |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, hereby files this motion for mistrial or, in the alternative, to strike the testimony of nine government witnesses due to violations of the Jencks Act and Rule 26.2. Defendant's motion is based on the attached memorandum of points and authorities; the exhibits filed concurrently herewith; the files, records and transcripts in this case; and such further evidence and argument as the Court may permit at a hearing on this matter.

Dated: August 2, 2021                    Respectfully submitted,

                                         /s/ Michael J. Avenatti

                                         Defendant
                                         MICHAEL JOHN AVENATTI

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………..……………ii

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………2

    I.     INTRODUCTION………………………………………………………..2

    II.    LEGAL STANDARD……………...…………………………………….3

    III.   GOVERNMENT WITNESSES WITH ESTABLISHED VIOLATIONS…….7

         1.  Joseph Varani……………………...…………………………...…7

         2.  Nshan Taschyan………...……...…………………………………...7

         3.  Judy Regnier…………………………………………………...…8

         4.  Patrick McNicholas………………………………………………...9

         5.  Thomas Hurrell…………………………………………………10

         6.  Geoffrey Johnson………………………...……………………..11

         7.  Thomas Goeders…………………………….…………………...12

         8.  Carlos Colorado……………………………………………....13

         9.  Joel Weiner……………………………………………………....13

    IV.   RELIEF REQUESTED……...……………………………………...14

    V.    CONCLUSION………………………………………………………17

# TABLE OF AUTHORITIES

**CASES:**                                                                                                    **Page**

*Campbell v. United States*,
365 U.S. 85 (1961)……………………………………………………….....3,16,17

*Goldberg v. United States*,
425 U.S. 94 (1976)……………………………………………………………..4

*Jencks v. United States*,
353 U.S. 657 (1957)……………………………………………………………3

*Palermo v. United States*,
360 U.S. 343 (1959)……………………………………………………………4

*First Cmty. Bank v. Gaughan (In Re Miller)*,
853 F.3d 508 (9th Cir. 2017)………………………………………………14

*United States v. Andrews*,
532 F.3d 900 (D.C. Cir. 2008)……………………………………………….6

*United States v. Bibbero*,
749 F.2d 581 (9th Cir. 1984)……………………………………………….4

*United States v. Bobadilla-Lopez*,
954 F.2d 519 (9th Cir. 1992)……………………………………………….4

*United States v. Carrasco*,
537 F.2d 372 (9th Cir. 1976)…………………………………………….....16

*United States v. Hamilton*,
2012 U.S. Dist. LEXIS 167591(W.D. Wash. 2012)…………………………..……5

*United States v. Harris*,
543 F.2d 1247 (9th Cir. 1976)……………………………………………….5,6,15

*United States v. Harrison*,
524 F.2d 421 (D.C. Cir. 1975)……………………..…………………………6

*United States v. Johnson*,
200 F.3d 529 (7th Cir. 2000)………………………………………………………4

*United States v. Johnson*,
521 F.2d 1318 (9th Cir. 1975)……………………………………………………14

*United States v. Kimoto*,
588 F.3d 464 (7th Cir. 2009)………………………………………………………4

*United States v. Losch*,
2019 U.S. Dist. LEXIS 208926 (D. Az. 2019)……………………………………5

*United States v. Merlino*,
349 F.3d 144 (3d Cir. 2003)...……………………………………………………5

*United States v. Ogbuehi*,
18 F.3d 807 (9th Cir. 1994)………………………………………………………4

*United States v. Pac. Gas &. Elec. Co.*,
2016 U.S. Dist. 75467 (N.D. Cal. 2016)…………………………………………5

*United States v. Pisello*,
877 F2d 762 (9th Cir. 1989)………………………………………………………5

*United States v. Pisello*,
877 F2d 762 (9th Cir. 1989)(H. Pregerson, dissenting)…………………………6

*United States v. Serv. Deli*,
151 F.3d 938 (9th Cir. 1998)………………………………………………………6

*United States v. Toilolo*,
2015 U.S. Dist. LEXIS 85100 (D. Haw. 2015)……………………………………5

*United States v. Waters*,
2006 U.S. Dist. LEXIS 102198 (W.D. Wash. 2006)………………………………5

*United States v. Well*,
572 F.2d 1383 (9th Cir. 1978)……………………………………………………15

**FEDERAL RULES:**

Fed. R. Crim. P. 26.2………………………………….........................…*passim*

**FEDERAL STATUTORY AUTHORITY:**

18 U.S.C. § 3500…………………………………………………...…*passim*

**OTHER AUTHORITES:**

James M. Cole, DOJ *Guidance on the Use, Preservation, and Disclosure of Electronic Communications in Federal Criminal Cases* (March 30, 2011)…………………………5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On January 25, 2021, the Court issued an Order continuing Mr. Avenatti's jury trial from February 23, 2021 until July 13, 2021. [Dkt. 407]. In that same Order, the Court indicated that the "Deadline to Disclose Jencks Act Materials and Witness Statements" was set for June 14, 2021. [Dkt. 407, p. 3].

Since this time, Mr. Avenatti has made repeated demands that the government comply with its obligations under the Jencks Act and Rule 26.2. [Dkt. 511 (Defendant's Status Report for June 28, 2021 Status Conference), Dkt. 535 (Defendant's Trial Brief), Dkt. 561 (Trial Motion for Disclosure of Jencks Act / 26.2 Materials)]. Indeed, early in the trial, in response to Mr. Avenatti again raising the issue, the Court instructed Mr. Avenatti: "The Government's under an ongoing obligation with respect to each witness to provide any *Jencks* material that has not been provided by the time the witness finishes his direct. There's no need to make that request every time, Mr. Avenatti." *See*, *e.g.*, Trial Tr. (7/21/21, Vol. 2) 5.

Of the eleven government witnesses that have testified thus far, testimony has been elicited on cross-examination from **nine** of the witnesses that establishes that materials and information required to be provided to the defendant before cross-examination began were withheld and continue to be withheld.  The trial record is replete with witness testimony about statements and communications that qualify as textbook Jencks/Rule 26.2 information and yet, inexplicably, were not produced.  *See*, *infra*.  As demonstrated below, these failures have been pervasive and lead to one inescapable conclusion – there has been a deliberate effort by the government to ignore their Jencks and Rule 26.2 obligations for the purpose of denying defendant adequate due process and a fair trial.

Accordingly, pursuant to the Jencks Act and Rule 26.2, Mr. Avenatti requests that the Court declare a mistrial.  In the alternative, Mr. Avenatti requests that the Court strike the testimony of Joseph Varani, Nshan Taschyan, Judy Regnier, Patrick

McNicholas, Thomas Hurrell, Geoffrey Johnson, Thomas Goeders, Carlos Colorado, and Joel Weiner as required under the Act and the rule. Further, pursuant to the Supreme Court's holding in *Campbell v. United States*, 365 U.S. 85, 95 (1961), Mr. Avenatti respectfully requests that this Court hold an immediate evidentiary hearing and take sworn testimony outside the presence of the jury, regarding the text messages, email correspondence, and handwritten notes that the government has failed to produce to the defendant despite Mr. Avenatti's repeated requests.

## II. LEGAL STANDARD

The Supreme Court's holding in *Jencks v. United States*, 353 U.S. 657 (1957), 18 U.S.C. § 3500 (the "Jencks Act"), and Fed. R. Crim. P. 26.2 are all clear as to the requirement of production of witness statements immediately after a government witness testifies. Equally clear are the consequences for non-compliance – striking a witness's testimony and/or ordering a mistrial. Indeed, under the clear language of the Act and the Rule, once a violation is discovered, the Court is <u>required</u> to either strike the testimony or declare a mistrial. *See, e.g.*, Rule 26.2(e) ("Sanction for Failure to Produce or Deliver a Statement. If the party who called the witness disobeys an order to produce or deliver a statement, the court **must** strike the witness's testimony from the record. If an attorney for the government disobeys the order, the court **must** declare a mistrial if justice so requires.")(emphasis added); 18 U.S.C. § 3500(d) ("If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court **shall** strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.")(emphasis added).

The Jencks Act requires the government to produce all statements "which relate to the subject matter as to which the witness [will] testif[y]." 18 U.S.C. § 3500(b). Importantly, "the statement need relate only *generally* to the events and activities testified by the witness to come within [the] sweep" of 18 U.S.C. § 3500. *United*

*States v. Bibbero*, 749 F.2d 581, 585 (9th Cir. 1984)(emphasis added). "The act requires the government, upon the defendant's motion, to produce statements made by any of its witnesses which the particular witness *signed, adopted or approved*, and which pertain to their testimony at trial. The hope is that these statements will afford the defense a basis for effective cross-examination of government witnesses and the possible impeachment of their testimony . . ." *United States v. Kimoto*, 588 F.3d 464, 475 (7th Cir. 2009)(emphasis added)(citing *United States v. Johnson*, 200 F.3d 529, 534 (7th Cir. 2000)(internal citations omitted)." *See also*, Fed.R.Crim.P. 26.2(f) (defining "statement" to include any "written statement that the witness makes and signs, *or otherwise adopts or approves*," as well as any substantially verbatim, contemporaneously recorded recital of the witness's oral statement)(emphasis added); *United States v. Ogbuehi*, 18 F.3d 807, 811 (9th Cir. 1994)("where it is shown that a witness adopted notes that were not provided to the defendant, court is required to remand so that district court can conduct an in camera review to determine if the notes are 'statements'"). Rather than limiting *Jencks*, the Jencks Act "reaffirms the Jencks case in its holding that provides that a defendant on trial in a criminal prosecution is entitled to relevant and competent reports and statements in possession of the government *touching the events and activities* as to which a government witness has testified at the trial." *Goldberg v. United States*, 425 U.S. 94, 96 (1976)(emphasis added); *See also, United States v. Bobadilla-Lopez*, 954 F.2d 519, 524 (9th Cir. 1992)("the Court has noted explicitly that the legislative history of the Jencks Act indicates clearly that the statute 'was not intended to limit the *Jencks* decision"); *Palermo v. United States*, 360 U.S. 343, 353 n.10 (1959)("the statute does not provide that inconsistency between the statement and the witness' testimony is to be a relevant consideration" in determining which statements are to be produced).

Accordingly, "statements" often include, but are not limited to, notes of witness interviews (handwritten and typed), audio and video recordings of the witness, and letters, text messages and emails from the witness, adopted by the witness, or approved by the witness. The Jencks Act defines statements as (1) writings made by the witness and signed, adopted or approved by a witness; (2) accounts which are substantially

verbatim of the witnesses' oral statements. *United States v. Pac. Gas &. Elec. Co.*, 2016 U.S. Dist. 75467, at *7 (N.D. Cal. 2016).

Emails generally are written statement that the witness makes and signs, or otherwise adopts or approves. *See United States v. Hamilton*, 2012 U.S. Dist. LEXIS 167591, at *18 (W.D. Wash. 2012); *citing* Fed. R. Crim. P. 26.2(f)(1); 18 U.S.C. 3500(e)(1); *United States v. Toilolo*, 2015 U.S. Dist. LEXIS 85100, *30-31 (D. Haw. 2015)(e-mail communications should have been provided to the defendant as *Jencks* and *Giglio* material as the e-mails were the witness' statements). A text message similarly often meets the definition of a "statement" as defined by the Jencks Act. *United States v. Losch*, 2019 U.S. Dist. LEXIS 208926, at *6 (D. Az. 2019)("the Court agrees that a text message may meet the definition of 'statement' as outlined in the Jencks Act."). Even statements regarding "meeting times, meeting locations, and other logistical arrangements may potentially relate to the subject matter of a witness' testimony." *Id.* The government's obligations under the Jencks Act extends to statements possessed by the prosecutorial arm of the federal government. *United States v. Merlino*, 349 F.3d 144, 146 (3d Cir. 2003); *see also, United States v. Waters*, 2006 U.S. Dist. LEXIS 102198, at *4 (W.D. Wash. 2006).

In concert with these principles, the United States Department of Justice has directed their prosecutors that "members of the prosecution team should err on the side of preservation when deciding which e-communications to preserve for review." James M. Cole, DOJ *Guidance on the Use, Preservation, and Disclosure of Electronic Communications in Federal Criminal Cases* (March 30, 2011). This includes substantive e-communications created or received in the course of an investigation and prosecution and those communications sent to or received from potential witnesses who are not law enforcement personnel. *Id.* Even logistical communications may be discoverable when their content includes *Brady, Giglio, Jencks* or Rule 16 content. *Id.* at p. 8.

Further, handwritten notes taken by government agents "in interviews with prospective government witnesses may contain such statements." *United States v. Pisello*, 877 F2d 762 (9th Cir. 1989); *citing United States v. Harris*, 543 F.2d 1247, 1252

(9th Cir. 1976). It is sometimes the case that "because the typed memorandum contain Jencks statements, the handwritten notes from which the memoranda derive also must contain Jencks statements… the district court could determine, based on an *in camera* inspection of the handwritten notes, whether the handwritten notes are Jencks Act materials." *United States v. Pisello*, 877 F2d 762, 769 (9th Cir. 1989)(H. Pregerson, dissenting).

In addition, notes taken by the FBI or other law enforcement agencies during interviews with prospective government witnesses or with the accused "constitute potentially discoverable materials." *United States v. Harris*, 543 F.2d 1247, 1248 (9th Cir. 1976); *See also, United States v. Harrison*, 524 F.2d 421 (D.C. Cir. 1975). Rough notes may be used to impeach a witness, may showcase discrepancies between the notes and the typed summaries, and the notes' value is not diminished where "the notes form the basis of a final report that the prosecution turns over to the defense." *United States v. Andrews*, 532 F.3d 900, 906 (D.C. Cir. 2008). In *United States v. Serv. Deli*, 151 F.3d 938 (9th Cir. 1998), the Defendant was tried and convicted of filing a false statement with the United States Defense Commission Agency. On appeal, the Defendant argued that the trial court erred by refusing to require the government to produce all of its handwritten notes taken during interviews. Prior to denying the Defendant's request, the trial court reviewed the relevant handwritten notes and compared them to the summary of interview produced by the government and found that there was nothing in the notes that was "material to the matter at hand…" *Id.* at 943. The Ninth Circuit reviewed the relevant hand-written notes and determined there were discrepancies between the notes and the typewritten summaries. The court then determined, "the government violated the due process rights of defendant by failing to disclose material information contained in the … notes." *Id.* Defendant was granted a new trial. *Id.* at 944. The need for handwritten notes is even more necessary when the government has failed to convert the handwritten notes into adequate typed summaries.

## III.   GOVERNMENT WITNESSES WITH ESTABLISHED VIOLATIONS

### 1.  Joseph Varani

On July 23, 2021, government witness Joesph Varani was called to testify within his capacity as a senior digital investigative analyst at the DOJ Cyber Crime Lab. *See, e.g.*, Trial Tr. (7/23/21, Vol. 1), p. 10. Mr. Varani indicated that he had been working on this investigation and criminal prosecution off and on since 2019. *See, e.g.*, Trial Tr. (7/23/21, Vol. 1), p. 22. Mr. Varani affirmatively responded "yes" to the question, "and during that two-year time period, did you have written communications with other individuals and the government about your work in this case?" *See, e.g.*, Trial Tr. (7/23/21, Vol. 1), p. 22. He also indicated that he sent and received emails about this case with other government agents but was never asked to gather his written communications that he drafted in connection with this case. *See, e.g.*, Trial Tr. (7/23/21, Vol. 1), p. 22-24.

Mr. Avenatti has not been provided **<u>any</u>** e-mail communications between Mr. Varani and members of the prosecution/investigation teams involving this case or the subject of his testimony. Prior to beginning his cross-examination, Mr. Avenatti received a single, one-page report from the government as it relates to Mr. Varani. Despite Mr. Varani's work on this case for over two years and his vast communications, the government produced only a single page from a July 20, 2021 interview where Mr. Varani described his work on government exhibits 115 and 116. The e-mail communications and other written reports generated and/or written by Mr. Varani are statements that were required to be pursuant to the Jencks Act and Rule 26.2. Instead, the government ignored their obligations.

### 2.  Nshan Taschyan

On July 22, 2021, Special Agent Nshan Taschyan of the IRS Criminal Investigation Division was called to testify as a government witness. *See, e.g.*, Trial Tr. (7/22/21, Vol. 2), p. 67. Special Agent Taschyan testified in connection with his position as a computer investigative specialist and his role in performing forensic analysis on various electronics at issue in this case. During cross-examination, Special Agent

7

Taschyan indicated that he had been working on the investigation of this case since 2019. *See, e.g.*, Trial Tr. (7/22/21, Vol. 2), p. 90. During this time, Special Agent Taschyan "most likely" generated e-mails and text messages with others about his work in connection with this case. *See, e.g.*, Trial Tr. (7/22/21, Vol. 2), p. 91. He stated that the communications, "they would have been e-mails. They might have been e-mails with prosecutors or agents" in connection with this case and issues related to his testimony. *See, e.g.*, Trial Tr. (7/22/21, Vol. 2), p. 91.

Mr. Avenatti has not been provided **any** e-mail communications between Special Agent Tashchyan and other members of the prosecution/investigation teams involving this case or the subject of his testimony. These should have been produced before cross-examination began and yet were not.  Instead, it appears that the government made no effort to comply with their obligations under the Jencks Act and Rule 26.2.

### 3.  Judy Regnier

On July 29, 2021, through cross examination, it was revealed that government witness Ms. Judy Regnier exchanged text message correspondence with government agents during the pendency of this case, beginning in 2019. Ms. Regnier testified that she believed that she exchanged text messages with government agents or Assistant U.S. Attorneys. *See*, *e.g.*, Trial Tr. (7/29/21, Vol. 1) p. 66-67. Ms. Regnier later testified that she did not have access to the text messages any longer and she had previously "texted with Ramon [Karlous], and I don't remember the names of other people." *See*, *e.g.*, Trial Tr. (7/29/21, Vol. 1) p. 66-67.

On July 22, 2021, AUSA Sagel and Special Agents Roberson and Karlous spoke with Ms. Regnier via teleconference. The meeting lasted 13 minutes and a typed memorandum was produced. Aside from relaying that Mr. Avenatti had chosen to represent himself, the report conveyed that "No new information was provided by JR." *See e.g.,* Exhibit A – Interview Memorandum of Judy Regnier.

Mr. Avenatti has not been provided **any** text message correspondence between Ms. Regnier, any government agent or any Assistant United States Attorney. On July 30, 2021, Mr. Avenatti filed another submission regarding the failure of the government to

produce these statements. [Dkt. 609]. Mr. Avenatti renews the objections and requests for relief that were filed within those pleadings as well.

Further, Mr. Avenatti asks that the Court order the government to produce to the Court the notes from the July 22, 2021 interaction in order for the Court to perform an in-camera review to determine whether any information was provided to the prosecution team during that meeting.  Any handwritten notes in connection with this interview are, by their very nature, not captured by the language of the report which says no new information was provided. Unless the handwritten notes only read "no new information was provided," they likely contain variations in statements, inconsistencies, and other information that by their very nature were not captured by the conclusory report.

### 4.  Patrick McNicholas

On July 21, 2021, the government called Patrick McNicholas to testify regarding his work on the civil matter involving Geoffrey Johnson where Mr. McNicholas served as co-counsel alongside Mr. Avenatti. During the cross-examination of Mr. McNicholas, it was revealed that he met with the government on two occasions and communicated with the government between five and ten times. *See, e.g.*, Trial Tr. (7/21/21, Vol. 2), p. 10. Mr. McNicholas also stated that he had e-mail communications with the government. *See, e.g.*, Trial Tr. (7/21/21, Vol. 2), p. 11. During cross-examination, Mr. McNicholas was asked about his meeting with the government on July 12, 2021. *See, e.g.*, Trial Tr. (7/21/21, Vol. 2), p. 16. Mr. McNicholas stated that during the 1.5 hour meeting, he reviewed the same documents and went over them with the prosecution team in preparation for trial. *See, e.g.*, Trial Tr. (7/21/21, Vol. 2), p. 18. Mr. McNicholas indicated that despite going over similar topics, it was possible that his answers may have included "different language" and agreed with the notion that "no one ever gives the exact same answer twice…." *See, e.g.*, Trial Tr. (7/21/21, Vol. 2), p. 18-20.

On July 12, 2021, AUSAs Sagel and Wyman, along with Special Agents Roberson, Kim and Karlous met with Mr. McNicholas in preparation for his testimony at trial. A report was produced in connection with this meeting. The report showed that the meeting lasted from 3:32 until 5:00 p.m. The report reads as follows: "In addition to

information McNicholas already provided in prior interviews, McNicholas voluntarily provided the following additional information: No new information was provided by McNicholas." *See e.g.,* Exhibit B – Interview Memorandum of Patrick McNicholas.

Mr. McNicholas' testimony established that he agreed that witnesses, including himself, rarely provide the same answers twice. It is unreasonable to believe that Mr. McNicholas provided the same information to the prosecution on each of his meetings with the government and provided *no information* during an interview that took place for nearly an hour and a half.  More importantly, the obligation of the government under the Jencks Act and Rule 26.2 to produce <u>all statements of a witness</u> does not hinge in any way on the government's determination of whether "new information" was provided in the statement.  The obligation is to produce <u>all statements</u>, regardless of whether anything is "new" in the statement according to the government.  Indeed, a repeated false statement concerning an alleged fact by a witness on multiple occasions may be far more useful on cross-examination than any piece of new information.

Mr. Avenatti has not been provided any email correspondence between Mr. McNicholas, his agents and members of the prosecution team involving the substance of this testimony since April 9, 2019. These materials, if they exist, are "statements" as defined by Jencks and Rule 26.2 and should have been produced.

Further, Mr. Avenatti asks that the Court order the government to produce to the Court the notes from the July 12, 2021 interview in order for the Court to perform an in-camera review to determine whether any information was provided to the prosecution team during that meeting.  Any handwritten notes in connection with this interview are, by their very nature, not captured by the language of the report which says no new information was provided. Unless the handwritten notes only read "no new information was provided," they likely contain variations in statements, inconsistencies, and other information that by their very nature were not captured by the conclusory report.

### 5.  Thomas Hurrell

On July 21, 2021, Attorney Thomas Hurrell was called as a government witness. *See, e.g.*, Trial Tr. (7/21/21, Vol. 2), p. 68. Mr. Hurrell testified in connection with his

representation of the County of Los Angeles as it related to Mr. Geoffrey Johnson's underlying civil lawsuit. *See, e.g.*, Trial Tr. (7/21/21, Vol. 2), p. 69. Mr. Hurrell indicated that there have been "quite a few communications over the course of time this case has been pending" with the government. *See, e.g.*, Trial Tr. (7/21/21, Vol. 2), p. 106. Mr. Hurrell testified that he had approximately "seven or eight" communications with members of the prosecution team and "five or six" of them "were just by e-mail." *See, e.g.*, Trial Tr. (7/21/21, Vol. 2), p. 107.

On July 14, 2021, AUSAs Wyman as well as Special Agents Roberson and Kim met with Thomas Hurrell by way of teleconference. A report was produced after this interview. The report indicated that the meeting lasted 39 minutes and "Hurrell voluntarily provided the following additional information: No new information was provided by Hurrell." *See e.g.,* Exhibit C – Interview Memorandum of Thomas Hurrell. Mr. Avenatti has only been provided four e-mail chains between Mr. Hurrell and the prosecution that occurred in April of 2020, November of 2020, June of 2020 and February of 2021 despite Mr. Hurrell's testimony that he communicated with the government on five or six occasions.

Further, Mr. Avenatti asks that the Court order the government to produce to the Court the notes from the July 21, 2021 interview in order for the Court to perform an in-camera review to determine whether any information was provided to the prosecution team during that meeting.  Any handwritten notes in connection with this interview are, by their very nature, not captured by the language of the report which says no new information was provided. Unless the handwritten notes only read "no new information was provided," they likely contain variations in statements, inconsistencies, and other information that by their very nature were not captured by the conclusory report.

### 6.  Geoffrey Johnson

On July 22, 2021, government witness Geoffrey Johnson was called to testify regarding his former attorney-client relationship with Mr. Avenatti. *See*, *e.g.*, Trial Tr. (7/22/21, Vol. 1) p. 27. During Mr. Johnson's testimony, Mr. Johnson indicated that he previously met with the government on July 19, 2021, three days prior to his appearance

11

at trial.  *See*, *e.g.*, Trial Tr. (7/22/21, Vol. 2) p. 47-48. Mr. Avenatti was provided a report in connection with this interview, which was authored by Special Agent Roberson. The report indicated that the meeting lasted from 9:30 a.m. until 11:12 a.m. AUSAs Wyman and Sagel as well as Special Agents Roberson and Karlous were present during the interview. Despite the nearly 2 hour inquiry, Special Agent Roberson notes merely state, "In addition to information Johnson already provided in a prior interview, Johnson voluntarily provided the following additional information: No new information was provided by Johnson."  *See e.g.,* Exhibit D – Interview Memorandum of Geoffrey Johnson.

Mr. Avenatti asks that the Court order the government to produce to the Court the notes from the July 19, 2021 interaction in order for the Court to perform an in-camera review to determine whether any information was provided to the prosecution team during that meeting.  Any handwritten notes in connection with this interview are, by their very nature, not captured by the language of the report which says no new information was provided. Unless the handwritten notes only read "no new information was provided," they likely contain variations in statements, inconsistencies, and other information that by their very nature were not captured by the conclusory report.

### 7.  Thomas Goeders

On July 23, 2021, the government called Thomas Goeders testified as a witness. Mr. Goeders testified that he works as a real estate agent and worked with Mr. Aveantti in connection with Geoffrey Johnson. *See, e.g.*, Trial Tr. (7/23/21, Vol. 2), p. 31.

In connection with his prior communications with members of the prosecution team, Mr. Goeders testified that between April 1, 2019 and June 2021, he had contact with members of "the federal government relating to [Mr. Avenatti] or this case." *See, e.g.*, Trial Tr. (7/23/21, Vol. 2), p. 100-101. Mr. Goeders indicated that he had multiple e-mail "communications with any member of the government's prosecution or investigative team … as it relates to the topics in this case, including [his] work on the real estate transactions." *See, e.g.*, Trial Tr. (7/23/21, Vol. 2), p. 100-102.

Mr. Avenatti has only been provided a single e-mail string between Mr. Goeders

and the government from July of 2021. The other e-mail correspondence referenced by Mr. Goeders was required to be produced before Mr. Avenatti began his cross-examination but was not and remains unproduced.

### 8.  Carlos Colorado

On July 23, 2021, attorney Carlos Colorado testified as a government witness regarding his prior working relationship with the defendant. *See*, *e.g.*, Trial Tr. (7/23/21, Vol. 1) p. 32. Mr. Colorado testified that he met with the government in September of 2019 for over three hours. *See*, *e.g.*, Trial Tr. (7/23/21, Vol. 1) p. 32. In addition to this meeting, AUSAs Sagel and Wyman along with Special Agents Kim and Karlous met with Mr. Colorado on July 1, 2021 at approximately 4:30 p.m. A memorandum was produced in connection with this meeting. It is unknown how long this meeting lasted as Agent Kim did not include the length of the interview or the time the interview was concluded. Agent Kim indicated, "No new information was provided by Colorado." There was no reference to any questions posed, documents reviewed or statements made by Colorado. *See e.g.,* Exhibit E – Interview Memorandum of Carlos Colorado.

Mr. Avenatti asks that the Court order the government to produce to the Court the notes from the July 23, 2021 interview in order for the Court to perform an in-camera review to determine whether any information was provided to the prosecution team during that meeting.  Any handwritten notes in connection with this interview are, by their very nature, not captured by the language of the report which says no new information was provided. Unless the handwritten notes only read "no new information was provided," they likely contain variations in statements, inconsistencies, and other information that by their very nature were not captured by the conclusory report.

### 9.  Joel Weiner

On July 29, 2021, attorney Mr. Weiner was called to testify as a government witness. *See*, *e.g.*, Trial Tr. (7/29/21, Vol. 2) p. 68. Mr. Weiner testified regarding his representation of Hassan Whiteside in the civil suit involving alleged victim Alexis Gardner. On July 30, 2021, Mr. Avenatti cross-examined Mr. Weiner. During a break, in the middle of Mr. Weiner's testimony, the defendant informed the Court that he had only

13

received a single memorandum of interview that took place on July 6, 2021. *See*, *e.g.*, Trial Tr. (7/30/21, Vol. 1) p. 56. Mr. Avenatti alerted the Court that the defendant had "no memorandum of interview or notes from any interview of Mr. Weiner that took place in 2019 or 2020" despite Mr. Weiner's just-provided testimony that he did have communications with the government during this period. *See*, *e.g.*, Trial Tr. (7/30/21, Vol. 1) p. 56-57. AUSA Brett Sagel represented to the Court that earlier communications with Mr. Weiner "were to obtain the records of the settlement agreement…" and for other logistical purposes. *See*, *e.g.*, Trial Tr. (7/30/21, Vol. 1) p. 57. Mr. Avenatti continued to object to this representation claiming that there was obviously additional e-mail correspondence that should have been provided pursuant to Jencks and 26.2.

In connection with the other email communications between Mr. Weiner and government agents, regarding the substance of the case, the Court indicated, "[t]he representation was that any Jencks material, that is, communications between the government and Mr. Weiner that go to the substance of the case, were produced. I would ask the government if there are e-mails that don't fall in that category, present it to the Court for in-camera review." *See*, *e.g.*, Trial Tr. (7/30/21, Vol. 1) p. 63. Mr. Avenatti indicated to the Court at that time that he did not wish to limit his demand to e-mail communications and renews that position now.

## IV.   RELIEF REQUESTED

It is "the function of the trial court to determine the issue of producibility, *i.e.*, to decide whether the notes in question constitute a 'statement' within the meaning of the Act." *United States v. Johnson*, 521 F.2d 1318, 1319 (9th Cir. 1975)(holding that because "the notes may have constituted a Jencks Act statement was sufficient to trigger further investigation" the trial court erred in conducting no additional inquiry - the conviction was vacated and remanded). Critically, based on considerations of fairness, the law "does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *First Cmty. Bank v. Gaughan (In Re Miller)*, 853 F.3d 508, 518, n.4 (9th Cir. 2017).

Despite this, however, Mr. Avenatti has successfully made a prima facie showing that of the eleven government witnesses that have testified thus far, the government failed to adhere to their obligations under the Jencks Act and Rule 26.2 for at least nine of the witnesses. Several of these witnesses testified under oath that they engaged in text message and/or e-mail correspondence with the government about this case. Additionally, several witnesses testified that they met with members of the prosecution team and made statements about this case that were not produced. It is also unreasonable to believe that a meeting with a witness, often exceeding an hour, would result in absolutely no information. In the alternative, it is nearly impossible that a witness would provide the same statements *verbatim* with no variation in their language that could qualify as *Giglio* information. Further, a repeated false statement concerning an alleged fact by a witness on multiple occasions may be far more useful on cross-examination than any piece of new information.

The mandated relief described in Rule 26.2(e) and 18 U.S.C. § 3500(d) could not be more clear  - "Sanction for Failure to Produce or Deliver a Statement. If the party who called the witness disobeys an order to produce or deliver a statement, the court **must** strike the witness's testimony from the record. If an attorney for the government disobeys the order, the court **must** declare a mistrial if justice so requires"(emphasis added) and "If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court **shall** strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared"(emphasis added). *See also*, *United States v. Well*, 572 F.2d 1383, 1384 (9th Cir. 1978) (holding that if the "government fails to produce such statements, the court is **required** to strike the testimony of the witness.").

Moreover, a trial judge's failure to impose sanctions upon the government for noncompliance with the Jencks Act, whether intentional or not, has been found to constitute error. In other words, when a statement is not furnished by the government for

whatever reason pursuant to a Jencks Act request from the defense, the provisions of § 3500(d) come into operation and require, at a minimum, the striking of the witness's testimony. *United States v. Well,* 572 F.2d 1383 (9th Cir. 1978); *United States v. Harris,* 543 F.2d 1247 (9th Cir. 1976); *United States v. Carrasco,* 537 F.2d 372 (9th Cir. 1976).

The Supreme Court's ruling in *Campbell v. United States*, 365 U.S. 85, 95 (1961) is likewise instructive.  There, the Court found that the lower court had committed error in failing to conduct an adequate inquiry after the defendant's cross examination of a government witness, as in this case, had "shown a *prima facie* case of their entitlement to a statement . . ."  The Court was clear in holding that "at least, the judge should have required the Government to come forward <u>with sufficient evidence</u> to answer that case." *Id.* at 96 (emphasis added). Instead, in response to the showing on cross-examination that a statement may not have been properly supplied to the defendant, the "trial judge conducted an inquiry without the jury present to take testimony and hear argument of counsel. Plainly enough <u>this was a proper, even a required, proceeding in the circumstances.</u>" *Id.* at 93. (emphasis added). But the Court failed to call the agent to testify, which the Supreme Court found was error.  The Court noted that the government agent was the "obvious witness to call" and that the inquiry was a "proceeding necessary to aid the judge to discharge the responsibility laid upon him to enforce the statute."  As a result, the case was remanded to the district court for additional proceedings in order to determine whether a *Jencks* violation supported the defendant's motion to strike.

Mr. Avenatti was entitled to production of every statement for every witness as required by the Jencks Act and Rule 26.2 and he was entitled to receive such materials <u>before</u> he began his cross-examination.  Having failed to produce the materials as required, and having repeatedly violated Mr. Avenatti's right to due process, the government must now suffer the consequences outlined in the Act and the rule.  At a minimum, this requires the striking of the testimony of the nine witnesses listed above.  Due to the pervasive nature of the government's failures, however, coupled with the importance of the witnesses, justice requires that that Court declare a mistrial.  No other

16

reasonable or permissible remedy exists.[1]

Further, pursuant to the Supreme Court's holding in *Campbell v. United States*, 365 U.S. 85, 95 (1961), Mr. Avenatti respectfully requests that this Court hold an immediate evidentiary hearing and take sworn testimony outside the presence of the jury regarding the text messages, email correspondence, and handwritten notes that the government has failed to produce to the defendant despite Mr. Avenatti's repeated requests.

## V.   CONCLUSION

For each of the reasons set forth above, Mr. Avenatti requests that the Court declare a mistrial.  In the alternative, Mr. Avenatti requests that the Court strike the testimony of Joseph Varani, Nshan Taschyan, Judy Regnier, Patrick McNicholas, Thomas Hurrell, Geoffrey Johnson, Thomas Goeders, Carlos Colorado, and Joel Weiner as required under the Act and the rule.  Further, pursuant to the Supreme Court's holding in *Campbell v. United States*, 365 U.S. 85, 95 (1961), Mr. Avenatti respectfully requests that this Court hold an immediate evidentiary hearing and take sworn testimony outside the presence of the jury.


Dated: August 2, 2021                              Respectfully submitted,

                                        /s/ Michael J. Avenatti

                                        Defendant
                                        MICHAEL JOHN AVENATTI

---

[1] The Court previously made reference to recalling Ms. Regnier if Jencks violations were found to have occurred.  This is contrary to the relief required under the Act and the rule and does not cure the prejudicial impact of the government's misconduct.  There is a reason why the Act and the rule require production of the material before cross-examination begins – namely so that a defendant can make strategic choices on how to conduct the examination, what questions and themes to use, which exhibits to inquire about and the direction in which to take the defense.  By repeatedly failing to adhere to their obligations, the government deprived Mr. Avenatti of the ability to make informed choices as to his defense and violated his fundamental right to due process.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A (Under Seal)**

**Exhibit B (Under Seal)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**Exhibit C (Under Seal)**

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit D (Under Seal)**

**Exhibit E (Under Seal)**

### CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California 92660.  I am not a party to the above-entitled action.  I have caused, on August 2, 2021, service of the:

DEFENDANT'S MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, TO STRIKE THE TESTIMONY OF NINE GOVERNMENT WITNESSES DUE TO VIOLATIONS OF THE JENCKS ACT AND RULE 26.2

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 2, 2021

/s/ H. Dean Steward

H. Dean Steward