Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 497-6753

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S OPPOSITION TO THE MOTION TO QUASH THE SUBPOENA [DKT. 610] |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, hereby files this opposition to third party Drew Harbur's Motion to Quash Subpoena in a Criminal Case. [Dkt. 610].

Dated:  August 3, 2021                     Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

On July 26, 2021, the defendant issued a subpoena to Mr. Drew Harbur to appear and to produce the subpoenaed materials on August 3, 2021. [Dkt. 611, p. 7]. Mr. Avenatti requested that Mr. Harbur produce the following documentation: (1) the transcripts and recordings of any sworn testimony provided by Mr. Geoff Johnson in connection with his recent JAMS arbitration proceeding against Mr. Michael Q. Eagan et al. relating to his claims of fraud/theft of his settlement monies (the "Arbitration"); (2) the decision(s), award(s), and findings of the arbitrator in the Arbitration; (3) any submission made by Mr. Johnson in connection with the Arbitration directly, or through counsel, in which Mr. Johnson claimed that individuals other than Mr. Avenatti were responsible, in whole or in part, for any fraud, theft or financial damages suffered by Mr. Johnson; and, (4) the transcripts and recordings of any sworn testimony provided in connection with the Arbitration by any former employee or partner of Eagan Avenatti, LLP.

On July 28, 2021, advisory counsel was electronically served a copy of Mr. Harbur's "objections to subpoena in a criminal case." [Dkt. 611]. On July 29, 2021, counsel for Mr. Harbor filed a "Third Party Drew Harbur's Notice of Motion and Motion to Quash Subpoena in Criminal Case." [Dkt. 610]. This entry was entered on the electronic docket on July 30, 2021. The Court indicated that the matter would be heard on August 4, 2021 at 8:30 a.m. *See, e.g.,* Trial Tr. (7/30/21, Vol. 1) 5. The Court directed Mr. Avenatti to file an opposition by August 3, 2021. *See, e.g.,* Trial Tr. (7/30/21, Vol. 1) 5.

Comes now, Mr. Avenatti, through his advisory counsel of record, Mr. H. Dean Steward, opposing the motion to quash the subpoena filed by third-party Drew Harbur.

## II.   __LEGAL STANDARD__

A criminal defendant has the power to issue a subpoena pursuant to Federal Rule of Criminal Procedure 17. A subpoena may "order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. Proc. 17(c)(1). Both the government and the defendant "have the right to call witnesses, and the power to compel witness testimony is essential to our system of justice." *Barnett v. Norman*, 782 F.3d 417, 422 (9th Cir. 2015); *citing Blair v. United States*, 250 U.S. 273, 281-82 (1919). The "interest in full disclosure and the fair administration of justice overrides concerns that testimony might be inconvenient, burdensome, or harmful to a witness's social or economic status." *Id.; citing United States v. Calandra*, 414 U.S. 338, 345 (1974). The Ninth Circuit has made it clear, "[f]ew witnesses want to testify, and if given the choice, almost never would … But much like jury service, witness testimony is not optional in our justice system – it is essential." *Barnett v. Norman*, 782 F.3d 417, 424-25 (9th Cir. 2015).

Upon the motion of a subpoenaed party, "the Court may quash or modify the subpoena if 'compliance would be unreasonable or oppressive.'" *United States v. Cota*, 2009 U.S. Dist. LEXIS 18736, at *4 (N.D. Cal. 2009). A decision to enforce or quash criminal subpoena rests within the discretion of the district court. *United States v. Bentacount*, 277 Fed. Appx. 708, 711 (9th Cir. 2008). The Supreme Court has previously determined that the proponent of the subpoena must "clear three hurdles: (1) relevance, (2) admissibility; and (3) specificity." *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006); *quoting United States v. Nixon*, 418 U.S. 683 (1974). The subpoena must be brought in good faith and cannot be intended as a general fishing expedition. *United States v. Scovis*, 743 Fed. Appx. 795, 800 (9th Cir. 2018).

Each of the subpoenaed materials relate to a complaint filed by Mr. Johnson against Mr. Avenatti and seven other entities/individuals for six causes of action: professional negligence, breach of fiduciary duty, breach of contract, intentional fraud,

conversion, and aiding and abetting. *See e.g.,* Exhibit A – Johnson Complaint. Within the complaint, Mr. Johnson alleged that as a result of the conduct of Mr. Avenatti, Michael Eagan, Judy Regnier, Scott Sims and Jason Frank, he suffered $4,000,000 in lost settlement funds and other compensatory damages amounting to a total of "at least $9,500,000…" Mr. Johnson sought to hold each party jointly and severally liable for the conduct described. The allegations made in the complaint mirror portions of the conduct alleged in the Indictment. Although the instant Indictment places Mr. Avenatti solely responsible for the misappropriation of Mr. Johnson's settlement funds, the civil action filed by Mr. Johnson distributes the blame, jointly and severally, between Mr. Avenatti and seven other entities/individuals. Following the filing of the complaint, a number of the defendants successfully moved to compel arbitration pursuant to the arbitration clause contained within Mr. Johnson's agreement with Eagan Avenatti, LLP. (Government Exhibit 1, p. 2).

Based on the following, the subpoenaed materials are relevant, admissible, and sufficiently specific. Each request will be reviewed below.

## III.   **ARGUMENT**

### A.   **Mr. Avenatti Seeks Mr. Harbur's Testimony only as a Foundational Witness**

Within the relevant subpoena, Mr. Avenatti subpoenaed the personal appearance and testimony of attorney Drew Harbur. To be clear, Mr. Avenatti did not subpoena Mr. Harbur for the purpose of eliciting his testimony as a fact witness or regarding any substantive information in connection with his attorney-client relationship with Mr. Johnson. Instead, Mr. Avenatti only seeks to obtain foundational testimony from Mr. Harbur for the sole purpose of authenticating the documents Mr. Avenatti seeks to introduce which were contemporaneously subpoenaed (and addressed below). Mr. Avenatti does not seek to cross-examine Mr. Harbur about any substantive information

3

as it relates to Mr. Johnson or the on-going civil suit between Mr. Johnson, Mr. Avenatti and other third-parties.

**B.     Mr. Avenatti's Request for the Prior Sworn Testimony of Mr. Johnson is Relevant, Admissible and Specific**

In connection with request number 1, Mr. Avenatti subpoenaed records related to the transcripts and recordings of any sworn testimony provided by Mr. Geoff Johnson in connection with his recent JAMS arbitration proceeding against Mr. Michael Q. Eagan and others relating to his claims of fraud/theft of his settlement monies (the "Arbitration"). In connection with this request, the responding party indicated that this information was subject to a stipulated protective and/or confidentiality order and was irrelevant to the instant action. During Mr. Johnson's testimony, he revealed that in 2020 Mr. Johnson testified under oath during a deposition and also participated in an arbitration proceeding against Michael Eagan. *See, e.g.*, Trial Tr. (7/22/21, Vol. 2) 22-25. Mr. Johnson indicated that during the deposition he provided testimony regarding the contingency agreement with Mr. Avenatti, his relationship with Mr. Avenatti, his expectations as it related to funds, the services provided to him and the costs incurred by the law firm in connection with his case. *See, e.g.*, Trial Tr. (7/22/21, Vol. 2) 27-28. Mr. Johnson also answered affirmatively when asked "you stand behind whatever you testified to then, don't you?" *See, e.g.*, Trial Tr. (7/22/21, Vol. 2) 28-29.

First, these materials are relevant and Mr. Harbur cannot use the confidentiality order as a shield to otherwise relevant evidence in a serious criminal matter. Mr. Avenatti previously alerted the Court that "Mr. Johnson has sought to hold other people responsible for the alleged missing moneys that he did not receive." *See, e.g.*, Trial Tr. (7/22/21, Vol. 1) 6. In response to an inquiry about whether evidence that other individuals were held responsible for the misappropriation of Mr. Johnson's settlement funds, the Court indicated, "I think that's relevant. I take it that's the only other litigation you would get into, litigation where he claims that other people were responsible for not

getting his full share of the four million." *See*, *e.g.*, Trial Tr. (7/22/21, Vol. 1) 7-8. The Court continued, "If for whatever reason whatever point in time he contends that other people are in fact responsible for not receiving the full proceeds to which he was entitled, I think that's relevant." *See*, *e.g.*, Trial Tr. (7/22/21, Vol. 1) 8. In connection with confidentially provisions of Mr. Johnson's settlements with other related parties, the Court indicated, "I'm not going to allow him to use a confidentiality agreement with a third party as a shield to relevant evidence."[1] *See*, *e.g.*, Trial Tr. (7/22/21, Vol. 1) 9. Mr. Johnson's own statements made under oath regarding the litigation underlying this criminal action are relevant. Mr. Johnson's acts of holding other, third-parties responsible for the conduct charged in this Case is relevant to whether Mr. Avenatti misappropriated Mr. Johnson's settlement funds. Second, the requested materials are admissible as statements by a party opponent.

The relevant materials are admissible by way of Federal Rule of Evidence 801(d)(1). Under this Rule, a prior statement is not hearsay when it is "inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing or other proceeding or in a deposition." Mr. Avenatti reserved the right to call Mr. Johnson during his defense case. Mr. Avenatti may call Mr. Johnson and lay the necessary foundation to admit this out-of-court statement, made under oath, inconsistent with his prior testimony that Mr. Avenatti was responsible for the misappropriation of his settlement funds. This evidence may also be used to impeach Mr. Johnson and provide jurors within an insight into his bias as well as his pecuniary interest in the testimony.

Finally, the request is specific. The responding party makes no effort to rebut the specificity of the items required. The responding party makes no argument that he is unaware of the documents defendant seeks nor could he.  Mr. Avenatti merely seeks sworn testimony from a case that dealt with the exact same subject matter at issue here.

---

[1] The arbitration was never confidential in any event because the arbitration clause in Mr. Johnson's agreement with Eagan Avenatti, LLP (Government Exhibit 1, p. 2) does not contain a confidentiality provision.

Mr. Avenatti respectfully requests that the Court deny Mr. Harbur's Motion to Quash as it relates to request to the defendant's request number one.

### C.   Mr. Avenatti's Request for the Decision, Awards and Findings of the Arbitrator is Relevant, Admissible and Specific

In connection with request number 2, Mr. Avenatti subpoenaed records related to the decision(s), award(s), and findings of the arbitrator in connection with the civil proceeding of Mr. Johnson against Mr. Avenatti's former employees and partners of Eagan Avenatti, LLP. In his objection as it relates to request number 2, Mr. Harbur argues only that these materials are not relevant to Mr. Avenatti's guilt or innocence and the responsive materials are inadmissible hearsay.

First, as described in detail above, the Court has previously determined that Mr. Johnson's act of holding others responsible for the misappropriation of his settlement funds is relevant to this case. *See*, *e.g.*, Trial Tr. (7/22/21, Vol. 1) 8 ("[i]f for whatever reason whatever point in time [Mr. Johnson] contends that other people are in fact responsible for not receiving the full proceeds to which he was entitled, I think that's relevant."). If a neutral and detached arbitrator has determined that individuals, other than Mr. Avenatti, were responsible for embezzling Mr. Johnson's settlement proceeds, the findings, decision and awards of the arbitrator are relevant to Mr. Avenatti's criminal culpability in this action.

Second, these materials are admissible. As indicated above, Mr. Avenatti has reserved the right to call government witness Mr. Johnson during his defense case. Mr. Avenatti intends on using evidence that an independent and detached arbitrator made a determination, decision, award or finding that individuals, other than Mr. Avenatti were responsible for the misappropriation of Mr. Johnson's settlement funds. The requested information may be properly used for the purposes of impeachment and to establish bias of Mr. Johnson. *See* Fed. R. Evid. 607 ("any party, including the party that called the witness, may attack the witness's credibility."). Impeachment by contradiction is

properly considered under Federal Rule of Evidence 607 and allows "admitting extrinsic evidence to impeach specific errors or falsehoods in a witness' direct testimony…" *United States v. Castillo*, 181 F.3d 1129, 1133 (9th Cir. 1999).

Finally, the request is specific. The responding party makes no effort to rebut the specificity of the items required. The responding party makes no argument that he is unaware of the documents defendant seeks.

Mr. Avenatti respectfully requests that the Court deny Mr. Harbur's Motion to Quash as it relates to request to the defendant's request number two.

### D.  Mr. Avenatti's Request for Submissions Made by Mr. Johnson in Connection with the Arbitration is Relevant, Admissible and Specific

In connection with request number 3, Mr. Avenatti subpoenaed records related to any submission made by Mr. Johnson in connection with the Arbitration directly, or through counsel, in which Mr. Johnson claimed that individuals other than Mr. Avenatti were responsible, in whole or in part, for any fraud, theft or financial damages suffered by Mr. Johnson. In response, Mr. Harbur indicates that Mr. Johnson did not personally prepare any records and only presented oral testimony. Next, Mr. Harbur indicates that the briefs and pleadings prepared by counsel are irrelevant and improperly inject civil theories of joint and several liability into this case. [Dkt. 610, 10-11].

First, these materials are relevant. As described in detail above, the Court has previously determined that Mr. Johnson's act of holding others responsible for the misappropriation of his settlement funds is relevant to this case. *See, e.g.*, Trial Tr. (7/22/21, Vol. 1) 8 ("[i]f for whatever reason whatever point in time [Mr. Johnson] contends that other people are in fact responsible for not receiving the full proceeds to which he was entitled, I think that's relevant."). Documents prepared by counsel, that were submitted to the Arbitrator, are relevant to the determination of whether, and under what theories of liability, Mr. Johnson has held other parties responsible for the misappropriation of his settlement funds.

Second, these materials are admissible. As established above, Mr. Avenatti has a right to impeach adverse witnesses regarding bias, pecuniary interest and a motivation to lie. Although the district court can exercise its discretion to avoid undue consumption of time, "these legitimate concerns cannot justify so severe a limitation as to prevent the jury from finding out what it needs in order to judge rationally whether the witnesses might be lying…" *United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999). Mr. Avenatti asks that the Court order the requested materials be provided to Mr. Avenatti so that the defendant may impeach Mr. Johnson with statements that indicate that other individuals were responsible, in whole or in part, for any fraud, theft or financial damages suffered by Mr. Johnson. Mr. Avenatti needs access to these materials to make additional proffers regarding their admissibility. Additionally, many of these statements may be considered non-hearsay statements or fall within one of the many exceptions to the general ban on hearsay.

Finally, the request is specific. The responding party makes no effort to rebut the specificity of the items required. The responding party makes no argument that he is unaware of the documents defendant seeks.

Mr. Avenatti respectfully requests that the Court deny Mr. Harbur's Motion to Quash as it relates to request to the defendant's request number three.

**E.    Mr. Avenatti's Request for Sworn Testimony of Former EA Employees is Relevant, Admissible and Specific**

In connection with request number 4, Mr. Avenatti the transcripts and recordings of any sworn testimony provided in connection with the Arbitration by any former employee or partner of Eagan Avenatti, LLP. In response, Mr. Harbur argued that because it is unclear whether or not any of these individuals will be called to testify during the defendant's trial, their testimony is inadmissible and irrelevant.

First, these materials are relevant. As described in detail above, the Court has previously determined that Mr. Johnson's act of holding others responsible for the

misappropriation of his settlement funds is relevant to this case. Statements made by these parties including admissions, testimony that places blame on others, or other concessions regarding the actions giving rise to this case is relevant to whether Mr. Avenatti misappropriate Mr. Johnson's settlement funds.

Second, these materials are admissible. As described in connection with the requests referenced above, Mr. Avenatti has reserved the right to call Mr. Johnson during his defense case. Mr. Avenatti also reserves the right to call a former employee or partner of Eagan Avenatti, LLP during his defense case. Depending on the nature of these statements, which may only be properly analyzed after their receipt, these statements may be used to establish that other individuals have taken responsibility, while under oath, for the conduct Mr. Avenatti is charged with in this action. These statements may also be used to establish inconsistencies, bias, and a pecuniary interest that is highly relevant to this case. Additionally, many of these statements, depending on their nature, may be considered non-hearsay statements or fall within one of the many exceptions to the general ban on hearsay.

Finally, the request is specific. The responding party makes no effort to rebut the specificity of the items required. The responding party makes no argument that he is unaware of the documents defendant seeks.

Mr. Avenatti respectfully requests that the Court deny Mr. Harbur's Motion to Quash as it relates to request to the defendant's request number four.

## IV.   **CONCLUSION**

Based upon the foregoing, Mr. Avenatti respectfully requests that this Court deny Drew Harbur's motion to quash and order that the third party produce the four categories of requested materials to the Defendant.

Dated:  August 3, 2021                    Respectfully submitted,

9

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

EXHIBIT A

1   **CALLAHAN & BLAINE, APLC**
    Daniel J. Callahan (SBN 91490)
2   Edward Susolik (SBN 151081)
    Raphael Cung (SBN 201829)
3   3 Hutton Centre Drive, Ninth Floor
    Santa Ana, California 92707
4   Telephone (714) 241-4444

5   Attorneys for Plaintiff GEOFFREY E. JOHNSON

6

7

8                       **SUPERIOR COURT OF CALIFORNIA**

9              **COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

10

11   GEOFFREY E. JOHNSON, an individual,        Case No.

12                      Plaintiff,              **COMPLAINT FOR:**

13        v.                                    **(1)      Professional Negligence**
                                                **(2)      Breach of Fiduciary Duties**
14   MICHAEL J. AVENATTI, an individual;        **(3)      Breach of Contract**
     AVENATTI & ASSOCIATES, APC, a              **(4)      Intentional Fraud**
15   California corporation; JASON M. FRANK,    **(5)      Conversion**
     an individual; JASON FRANK LAW, PLC, a     **(6)      Aiding and Abetting**
16   California corporation; MICHAEL Q.
     EAGAN, an individual; SCOTT H. SIMS, an
17   individual; EAGAN AVENATTI, LLP (aka       **DEMAND FOR JURY TRIAL**
     THE TRIAL GROUP, LLP), a California
18   limited liability partnership; JUDITH K.
     REGNIER, an individual; and DOES 1
19   through 25, inclusive,

20                      Defendants.

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

**INTRODUCTION**

1.      Plaintiff GEOFFREY E. JOHNSON ("JOHNSON") was victimized the first time when he was severely injured, rendered a paraplegic, and otherwise physically and mentally traumatized by the acts and omissions of the Los Angeles County Sheriff's Department. Wrongfully arrested by County law enforcement (which eventually dismissed all charges), JOHNSON was driven to attempt suicide, twice, by flinging himself from an elevated floor, after the County's Sheriff Deputies failed to care for him, and such Deputies and other prisoners abused JOHNSON during his unwarranted incarceration.

2.      JOHNSON hired attorneys to seek justice and compensation. Little did JOHNSON know that he would be victimized a second time when his own attorneys turned against him. They took, and/or allowed the taking of, the vast majority of a $4,000,000 settlement payment that, unbeknownst to JOHNSON, Los Angeles County had agreed to pay for his benefit, and did in fact pay to his attorneys' client trust account in January 2015.

3.      JOHNSON did not discover this taking until late March-early April 2019, when such facts were revealed in connection with a dispute between some of his former attorneys and a federal criminal investigation of one of those attorneys.

4.      The most notorious of the attorneys who harmed JOHNSON is Defendant MICHAEL J. AVENATTI ("AVENATTI"), the former fixture on cable TV best known for representing adult actress Stormy Daniels, and for about five minutes an aspiring Presidential candidate. AVENATTI is now facing more than 300 years in prison after being indicted by federal prosecutors on both coasts for a host of wrongful conduct, including against JOHNSON, who is identified as "Client 1" in a 36-count indictment filed by the U.S. Attorney's Office on April 10, 2019 in the Central District of California for wire fraud, tax evasion, and related criminal offenses.

5.      Through his influence over Defendant law firm EAGAN AVENATTI, LLP, sometimes also known as "THE TRIAL GROUP, LLP" ("EAGAN AVENATTI"), AVENATTI played a primary role in refusing to pay to JOHNSON the settlement funds allocated to him, and then siphoning off those funds. AVENATTI then repeatedly lied to JOHNSON in falsely stating

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

that Los Angeles County would pay only in installments over years and years, and that it would not begin such payments until the County approved of a special needs trust created for JOHNSON. AVENATTI also paid, and caused EAGAN AVENATTI to pay, JOHNSON the minimal amounts of approximately $1,900 once a month to lull JOHNSON into thinking that the underlying case and any settlement from it were being properly handled. AVENATTI claimed to JOHNSON that such minimal payments represented an "advance" against any potential future settlement payment from Los Angeles County -- when in fact Los Angeles County had already paid $4,000,000 for the benefit of JOHNSON to EAGAN AVENATTI's client trust account. AVENATTI has since drained EAGAN AVENATTI's client trust account and any other bank accounts of this money earmarked for JOHNSON.

6.      While AVENATTI was the main bad actor, he could not have done what he did to JOHNSON and other clients had the other attorneys at EAGAN AVENATTI not turn a blind eye and allow AVENATTI to direct those predatory actions against JOHNSON.

7.      Defendant JASON M. FRANK ("FRANK") has stated the following on the record: "I was also counsel for Mr. Johnson"; "Mr. Johnson was "a client that I actually brought to the firm"; and "Jeffrey [sic] Johnson was a client that I brought into Eagan Avenatti."

8.      Despite admittedly serving as JOHNSON's counsel, and being aware of the inflow of funds into and out of EAGAN AVENATTI by reason of his revenue and profit participation agreement with EAGAN AVENATTI and the other attorneys there, FRANK negligently failed to ensure that JOHNSON would be paid the moneys that were allocated to JOHNSON, and failed to monitor the actions of AVENATTI and EAGAN AVENATTI with respect to such payments and report the same to client JOHNSON. Indeed, FRANK did not care about the circumstances of the payment from Los Angeles County for JOHNSON's benefit until he had a dispute with AVENATTI concerning his share of the profits from EAGAN AVENATTI, since FRANK sought to claim a portion of the contingency fees arising from the JOHNSON settlement due to his origination of the client. As such, FRANK breached his fiduciary duties to JOHNSON, and violated multiple ethical rules to which he is bound as a California-licensed attorney.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

9.      Defendant SCOTT H. SIMS ('SIMS") personally worked on the underlying action on behalf of JOHNSON against Los Angeles County.  Thus, SIMS knew, and was in the position to know, the resolution of that action by way of a $4 million settlement payment for JOHNSON's benefit.  Yet SIMS, too, covered his eyes and kept silent, because he hoped to continue riding on the success of AVENATTI and EAGAN AVENATTI.  In so doing, SIMS was also negligent and breached numerous duties owing to JOHNSON as the client.

10.     Defendant MICHAEL Q. EAGAN ("EAGAN") was a partner and managing agent of EAGAN AVENATTI.  By the time of the events in question, EAGAN had been practicing law for approximately 40 years.  He was supposed to be the "adult in the room" providing stability and management to EAGAN AVENATTI while AVENATTI acted as its more public face.  By dint of his position as a partner and managing agent, EAGAN at least shared in controlling the funds that came in and out of EAGAN AVENATTI, including payments made to its client trust account for the ultimate benefit of clients such as JOHNSON.

11.     Any reasonable partner and managing agent of a firm who has seen $4 million in funds coming into his firm's client trust account would work with the other attorneys and personnel at the firm to ensure that payment would be made expeditiously to the client.  Only at that point could the attorneys have properly taken whatever contingency fees were earned from the settlement.  However, EAGAN abdicated his responsibility, and was content to simply lend his seniority and apparent respectability, and share in the profits of EAGAN AVENATTI.  Even though he knew that Los Angeles County had made a large settlement payment for the benefit of JOHNSON, he sat on his hands, turned away his eyes, closed his mouth, and did nothing as AVENATTI subsequently caused those funds to be drained away.

12.     Defendant JUDITH K. REGNIER ("REGNIER") acted as office manager, paralegal, and administrator at EAGAN AVENATTI.  Among REGNIER's duties was to sign checks on behalf of EAGAN AVENATTI, and she had such check-signing authority from AVENATTI, EAGAN, FRANK, SIMS, and others.  REGNIER aided and abetted the deception against JOHNSON and the siphoning of his settlement money by, among other things, signing the checks for $1,900 and causing electronic transfers that were paid occasionally to JOHNSON as a

1    way to hide from him that $4,000,000 in settlement funds had been paid to EAGAN

2    AVENATTI's client trust account.  To the extent that REGNIER carried out only AVENATTI's

3    illegal orders, FRANK, EAGAN, and SIMS breached their duties to properly supervise her, thus

4    allowing REGNIER to aid and abet AVENATTI in wrongful conduct that significantly harmed

5    JOHNSON.

6        13.    Due to this scheme to take JOHNSON's settlement funds, JOHNSON also lost his

7    supplemental security income benefits.  When in 2018, the Social Security Administration

8    ("SSA") became aware of the monthly payments of approximately $1,900 received by

9    JOHNSON, SSA asked JOHNSON for information on such payments, to confirm his eligibility

10   for supplemental security income.  JOHNSON asked AVENATTI and REGNIER to provide such

11   information to the SSA, and otherwise to ensure that he would continue to receive supplemental

12   security income, given that the monthly payments made to him were represented as "advances"

13   against the settlement payment (and therefore *not* "income").

14       14.    AVENATTI and REGNIER promised to contact SSA to clear up the matter and

15   ensure the continuance of JOHNSON's supplemental security income.  However, AVENATTI

16   and REGNIER made false statements to SSA, because they believed that if they disclosed true

17   facts about the advances received by JOHNSON, that would have exposed the scheme to siphon

18   away JOHNSON's $4 million settlement funds.

19       15.    Thus, JOHNSON ended up in a worse situation than before he engaged the

20   foregoing attorneys.  Not only was JOHNSON deprived of a large settlement payment that

21   otherwise would have come to him, but JOHNSON also lost the modest supplemental security

22   income that partially sustained him after being injured by Los Angeles County.

23       16.    Accordingly, JOHNSON brings this action for at least $9,500,000 in compensatory

24   damages: $4,000,000 in lost settlement funds; at least $500,000 in lost Social Security benefits;

25   and at least $5,000,000 in general damages, including severe emotional distress.  Due to the

26   intentional wrongful conduct of AVENATTI and REGNIER, and the gross negligence and

27   reckless disregard of JOHNSON's rights by FRANK, EAGAN, and SIMS, JOHNSON also seeks

28   punitive damages to the maximum extent allowed under the Constitution.  Only in such manner

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   can JOHNSON be compensated for harm that was inflicted on him due to the shocking conduct

2   that was engaged in by Defendants.

3   **THE PARTIES**

4      17.    Plaintiff GEOFFREY E. JOHNSON ("JOHNSON") is an individual who resides in

5   the County of Los Angeles.

6      18.    Defendant MICHAEL J. AVENATTI ("AVENATTI") is an individual who, on

7   information and belief, resides and/or does business in this County.  AVENATTI is an attorney

8   admitted and licensed by the State Bar of California.

9      19.    Defendant AVENATTI & ASSOCIATES, APC is a purported corporation formed

10  under California law, and based in this County, through which AVENATTI acted and operated,

11  and continues to act and operate.  In reality, AVENATTI was and is the sole shareholder of

12  AVENATTI & ASSOCIATES, APC, and AVENATTI has treated the alleged corporation as his

13  "alter ego" rather than as a separate entity.  As such, upholding the corporate form and allowing

14  AVENATTI to avoid liability for AVENATTI & ASSOCIATES, APC's debts and liability would

15  sanction a fraud and/or promote an injustice.  AVENATTI & ASSOCIATES, APC shall be

16  included in the term "AVENATTI" in this Complaint unless stated otherwise.

17     20.    Defendant JASON M. FRANK ("FRANK") is an individual who, on information

18  and belief, resides and/or does business in this County.  FRANK is an attorney admitted and

19  licensed by the State Bar of California.

20     21.    Defendant JASON FRANK LAW, PLC is a purported professional corporation

21  formed under California law, and based in this County, through which FRANK acted and

22  operated, and continues to act and operate.  In actuality, FRANK was and is the sole shareholder

23  of JASON FRANK LAW, PLC, and FRANK has treated the alleged corporation as his "alter ego"

24  rather than as a separate entity.  As such, upholding the corporate form and allowing FRANK to

25  avoid liability for JASON FRANK LAW, PLC's debts and liability would sanction a fraud and/or

26  promote an injustice.  JASON FRANK LAW, PLC shall be included in the term "FRANK" in this

27  Complaint unless stated otherwise.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

22.     Defendant MICHAEL Q. EAGAN ("EAGAN") is an individual who, on information and belief, resides and/or does business in the City and County of San Francisco, and does business in this County.  EAGAN is an attorney admitted and licensed by the State Bar of California.

23.     Defendant SCOTT H. SIMS ("SIMS") is an individual who, on information and belief, resides and/or does business in this County.  SIMS is an attorney admitted and licensed by the State Bar of California.

24.     Defendant EAGAN AVENATTI, LLP ("EAGAN AVENATTI") purports to be a limited liability partnership formed under California, and based in this County, through which AVENATTI, FRANK, EAGAN, and SIMS acted and operated.  EAGAN AVENATTI, LLP sometimes goes by the name "The Trial Group, LLP" and/or other names, but it is referred to here as "EAGAN AVENATTI."

25.     During the time periods relevant to this action, AVENATTI, FRANK, EAGAN, and SIMS, were all attorneys employed by, agents of, and/or acting on behalf of EAGAN AVENATTI, including with respect to all conduct directed toward and/or affecting JOHNSON.

26.     Alternatively, or in addition, during all time periods relevant to this action, AVENATTI, FRANK, and EAGAN were shareholders and/or controlling persons of EAGAN AVENATTI, and AVENATTI, FRANK, and EAGAN treated the alleged limited liability partnership as their "alter ego" rather than as a separate entity.  As such, upholding the LLP entity and allowing AVENATTI, FRANK, and EAGAN to avoid liability for EAGAN AVENATTI's debts and liability would sanction a fraud and/or promote an injustice.

27.     Defendant JUDITH REGNIER ("REGNIER") is an individual who, on information and belief, resides and/or does business in this County.

28.     During the time periods relevant to this action, REGNIER was employed by, an agent of, and/or acting on behalf of EAGAN AVENATTI and the foregoing attorneys AVENATTI, FRANK, EAGAN, and SIMS, including with respect to all conduct directed toward and/or affecting JOHNSON.  During such time periods, REGNIER held the positions and duties of office manager, administrator, and paralegal.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 7 -

29.     JOHNSON has no knowledge of the true names and capacities of the defendants sued herein as DOES 1-25 (the "Doe Defendants"), and therefore, pursuant C.C.P. § 474, sues these Doe Defendants by such fictitious names.  JOHNSON shall seek leave to amend this Complaint to allege the true names and capacities of said Doe Defendants if and when their identities and roles are ascertained.  Each of said fictitiously named Doe Defendants are legally responsible in some manner for the occurrences and damages alleged herein, and JOHNSON's damages as herein alleged were proximately caused by the acts of these Doe Defendants.

30.     At all times herein mentioned, all Defendants were the agents, servants, employees, instrumentalities, representatives, co-venturers, partners, and/or alter egos of the other Defendants. In doing the things hereafter alleged, such Defendants were acting in the scope of their authority as agents, servants, employees, instrumentalities, representatives, co-venturers, partners, and/or alter egos, and with the permission and consent of all other Defendants, and as such share liability with each other in respect to the matters complained of herein.

## JURISDICTION AND VENUE

31.     The Court has personal jurisdiction over all Defendants because they are all citizens of California.

32.     Pursuant to C.C.P. § 395.5, venue is proper as to all Defendants because their principal residences and/or places of business are in this County and judicial district, and/or their liability to JOHNSON arises in this County and judicial district.

## COMMON ALLEGATIONS

33.     In April 2011, JOHNSON suffered from mental health issues, which led to his improper arrest by the Los Angeles Sheriff's Department and incarceration in the Men's Central Jail in downtown Los Angeles.

34.     On August 30, 2011, JOHNSON was driven into twice attempting suicide by the abuse of deputies of the Los Angeles Sheriff's Department as well as other inmates while in custody.  JOHNSON became severely injured and rendered a paraplegic when he jumped from an elevated floor at the jail.  JOHNSON's resulting injuries left him unable to work or support himself.  They also left him physically and mentally devastated.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

35.     In approximately early 2012, JOHNSON entered into a retainer agreement and engaged the law firm of EAGAN AVENATTI, LLP ("EAGAN AVENATTI") and the attorneys therein to represent him with respect to claims against the County of Los Angeles arising from the above injury.

36.     FRANK has stated that it was he who personally "brought" JOHNSON into EAGAN AVENATTI as a client.

37.     At this inception stage, FRANK and AVENATTI interacted with JOHNSON and/or JOHNSON's relatives who helped him to look for an attorney.  However, neither FRANK nor AVENATTI ever explained to JOHNSON the terms of the representation.  While JOHNSON understood that EAGAN AVENATTI and the attorneys therein would represent him on a contingency basis (as is the case with the vast majority of plaintiff's personal injury actions), neither FRANK nor AVENATTI, nor anyone else at EAGAN AVENATTI, explained to JOHNSON the calculation of his fees and costs (including the contingency percentage), or how any settlement or judgment funds would be handled.

38.     During all relevant time periods, including during the course of representing JOHNSON, AVENATTI and EAGAN were partners and/or managing agents of EAGAN AVENATTI.  AVENATTI and EAGAN had control over funds coming into and flowing out of EAGAN AVENATTI, including such funds deposited into or paid out of EAGAN AVENATTI's client trust account.

39.     During all relevant time periods, including during the course of representing JOHNSON, FRANK had a revenue and profit sharing arrangement with EAGAN AVENATTI, first orally and then in writing.  In sum and substance, such agreement between FRANK and EAGAN AVENATTI and its other attorneys entailed FRANK receiving a certain percentage of fees from clients who were originated by him.  Thus, FRANK had an incentive to and did keep apprised of and determine which funds were received by EAGAN AVENATTI, from or with respect to which clients, and EAGAN AVENATTI's expenses or payouts with respect to such clients, since his compensation depended on such funds.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

40.     The attorneys at EAGAN AVENATTI who personally worked on JOHNSON's matter included AVENATTI, FRANK, and SIMS.  Additionally, EAGAN monitored the progress and handling of the matter, including after litigation was filed on JOHNSON's behalf as elaborated below.

41.     On or about October 9, 2012, represented by EAGAN AVENATTI and AVENATTI, FRANK, and SIMS personally, JOHNSON filed a lawsuit against the County of Los Angeles and its officials, including former Los Angeles County Sheriff Leroy "Lee" Baca. JOHNSON alleged the deprivation of his constitutional due process rights, civil rights violations, and failure to provide immediate medical care, in the matter entitled *Johnson v. Baca, et al.*, Los Angeles Superior Court, Case No. BC493409.  On or about June 21, 2013, defendants removed that action to the United States District Court for the Central District of California, as *Johnson v. Baca, et al.*, Case No. 13-CV-4496-MMM.  The foregoing action filed and maintained on JOHNSON's behalf shall be referred to as the "Underlying Action."

42.     EAGAN AVENATTI, through attorneys AVENATTI, FRANK, and SIMS personally, litigated the action, including preparing JOHNSON for deposition, until approximately January 2015.

43.     In about late October to early November 2014, EAGAN AVENATTI, through AVENATTI, FRANK, and SIMS personally, reached an agreement in principle with Los Angeles County on all material terms of a settlement, including the settlement sum of $4 million for JOHNSON.  Due to the nature of how the County's governing authorities operate, the County initially took the position that it would take a minimum of six months for its Board of Supervisors to meet and approve the settlement (or until at least May 2015).  EAGAN AVENATTI, through attorneys AVENATTI, FRANK, and SIMS personally, demanded from the County that payment be made within 60 days, or by approximately January 2015.  For instance, in a court hearing on November 7, 2014 to review the status and results of mediation, AVENATTI represented to the Court that payment was needed expeditiously because client JOHNSON "is a paraplegic and is in need of the funds."

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

44. The County of Los Angeles ultimately relented to an expeditious payment. On or about January 21, 2015, EAGAN AVENATTI, through attorneys AVENATTI, FRANK, and SIMS personally, entered into a written settlement agreement with Los Angeles County supposedly on behalf of JOHNSON (see Exhibit A).

45. Consistent with the settlement agreement, on or about January 26, 2015, the County of Los Angeles issued a check for $4 million, made payable to the attorney client trust account of EAGAN AVENATTI (see Exhibit B). Such check was deposited into the bank account for EAGAN AVENATTI's client trust account on or about January 29, 2015.

46. Although AVENATTI, FRANK, and SIMS were all knowledgeable regarding the material terms of the settlement agreement, none of them informed JOHNSON of Los Angeles County's agreement to make a lump sum payment of $4 million for the benefit of JOHNSON. AVENATTI, FRANK, SIMS, and EAGAN also knew about but did not inform JOHNSON that Los Angeles County actually did issue payment in the amount of $4 million for the benefit of JOHNSON, and that EAGAN AVENATTI was in possession of such amount in its client trust account.

47. Instead, AVENATTI met with JOHNSON and lied to him about the disposition of the Underlying Action. AVENATTI falsely stated to JOHNSON that Los Angeles County would pay any settlement money only in quarterly installments over ten or more years, and that Los Angeles County would begin such payments only upon the establishment of a special needs trust for JOHNSON, and the County's approval of such trust. AVENATTI also falsely assured JOHNSON that he and his colleagues would create such a special needs trust so that such payments could be received from Los Angeles County.

48. Those statements were lies designed to buy enough time to siphon off these funds, and to prevent JOHNSON from look into the handling of his case. In reality, EAGAN AVENATTI had already received and cashed a lump sum payment from Los Angeles County for $4 million.

49. FRANK, EAGAN, and SIMS were aware of AVENATTI's misstatements to JOHNSON and acquiesced to them. At the very least, FRANK, EAGAN, and SIMS failed to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   consult with their client JOHNSON regarding the disposition of the Underlying Action.  If one of

2   them had simply reached out to JOHNSON and learned what AVENATTI had said to him

3   (falsely) about the required conditions for Los Angeles County to make payment, JOHNSON

4   would have learned that his funds had already been received and taken steps to secure them.

5         50.    Instead, FRANK, EAGAN, and SIMS deferred to AVENATTI and took a hands-

6   off approach to the matter after the settlement agreement was entered into, even though they all

7   had individual and personal duties toward JOHNSON, including a duty to inform that $4 million

8   had been paid and received for his benefit.

9         51.    The "see-no-evil, hear-no-evil" approach of FRANK and SIMS was engaged in by

10   EAGAN as well.  Even though EAGAN shared control of EAGAN AVENATTI's finances,

11   including funds flowing into and out of the client trust account, he refused to do anything to

12   ensure that the client was being paid the settlement funds paid by Los Angeles County.  EAGAN

13   knew that $4 million paid by Los Angeles County for JOHNSON was deposited into EAGAN

14   AVENATTI's bank account (no one could miss that), but he refused to exercise any control or

15   supervision over such funds, despite EAGAN AVENATTI being counsel of record for JOHNSON

16   in the Underlying Action.

17         52.    AVENATTI told JOHNSON that while EAGAN AVENATTI was working to set

18   up and obtain Los Angeles County's approval of a special needs trust, he would "advance" from

19   EAGAN AVENATTI's own funds certain amounts to partially cover Johnson's living expenses.

20   Beginning in or about July 2015, mostly once a month, AVENATTI and/or EAGAN AVENATTI

21   caused checks or electronic transfers, typically in amounts of $1,900 each, to be sent to

22   JOHNSON.  The total amount of these payments from July 2015 to March 2019 was

23   approximately $124,000.

24         53.    REGNIER helped in making these minimal payments to JOHNSON to hide the

25   siphoning off of his $4 million settlement payment, and to lull JOHNSON into the false

26   impression that such settlement funds from Los Angeles County would be forthcoming only after

27   the County approved his special needs trust.  AVENATTI, FRANK, EAGAN, and SIMS gave

28   REGNIER check-signing authority, as well as authority to cause electronic payments made from

1   EAGAN AVENATTI's bank accounts.  REGNIER, acting on the unlawful direction of

2   AVENATTI, signed such checks and otherwise caused the periodic payments of $1,900 to

3   JOHNSON, knowing that they were designed to buy time and prevent JOHNSON from learning

4   that the $4 million settlement made for his benefit had been paid but was being drained away.

5          54.     While EAGAN, FRANK, and SIMS may not have explicitly ordered REGNIER to

6   act illegally with respect to JOHNSON's settlement money, they knew and had a reason to know

7   that there were irregularities, to say the least, with the disposition of such funds.  They knew that

8   $4 million had been paid to EAGAN AVENATTI's client trust account for the benefit of

9   JOHNSON.  EAGAN, FRANK, and SIMS also knew, and had reason to know, that REGNIER

10  was signing checks and making electronic payments to JOHNSON for only about $1,900 each

11  month, at which rate it would take over 100 years to complete the settlement payments to

12  JOHNSON.

13         55.     In particular, FRANK and EAGAN had access to information concerning the

14  inflows and outflows of money from EAGAN AVENATTI and its client trust account.  SIMS

15  personally represented JOHNSON as a client in the Underlying Action and could have easily

16  found out from JOHNSON what he was receiving or not receiving with respect to resolution of the

17  lawsuit against Los Angeles County.  Given their knowledge of the circumstances, FRANK,

18  EAGAN, and SIMS breached their duty to inform JOHNSON of all material developments, duty

19  to inform the client of a settlement payment, and duty to supervise REGNIER, thereby allowing

20  her to aid AVENATTI in the misappropriation scheme against JOHNSON.

21         56.     In 2017, JOHNSON sought to purchase a house with the settlement funds, which

22  he was hoping to receive sometime shortly, as it had been two years since he had started receiving

23  the "advances" from EAGAN AVENATTI.  AVENATTI encouraged JOHNSON to look for real

24  property and helped him find a real estate agent for this purpose.  Believing that the settlement

25  would be paid shortly, and based on the false reassurances of AVENATTI, JOHNSON signed a

26  contract to buy a house.  AVENATTI later told him that Los Angeles County was still delaying

27  approval of the special needs trust and therefore, payment of the funds to that trust.  The house

28  sale eventually fell through.  In retrospect, AVENATTI's encouragement that JOHNSON look for

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

real property was another part of the deception to hide that his settlement funds had been siphoned off.

57.     In 2018, the federal Social Security Administration ("SSA") was conducting a redetermination of JOHNSON's eligibility for supplemental security income benefits.  On or about November 1, 2018, SSA sent JOHNSON a letter regarding the redetermination, asking him for information about his apparent monthly payments and related matters.  JOHNSON forwarded such communications to AVENATTI and REGNIER, who agreed to provide the requested information to SSA so as to prevent JOHNSON losing his supplemental security income benefits.

58.     On or about January 16, 2019, SSA wrote another letter to JOHNSON, stating that because he had not provided the information that SSA had requested, it was eliminating his supplemental security income benefits as of February 2019.  SSA's letter added that there was still time to prevent this, but JOHNSON would have to contact SSA right away to provide the requested information.  JOHNSON again contacted AVENATTI and REGNIER, who said they would take care of the issue.

59.     However, AVENATTI and REGNIER provided SSA with false information concerning JOHNSON, and did so in a further attempt to hide the siphoning of JOHNSON's settlement funds and the successful, years-long effort to cover it up.  As a result, JOHNSON lost such social security benefits beginning in February 2019.

60.     In approximately February 2019, JOHNSON asked AVENATTI again about the status of the special needs trust and settlement payment.  AVENATTI falsely told him that Los Angeles County had not yet begun releasing the settlement funds.

61.     On March 22, 2019, AVENATTI testified at a debtor's examination arising from a financial dispute with FRANK.  At that examination, AVENATTI took the position that the periodic payments of $1,900 to JOHNSON constituted "an advance on future settlement monies."

62.     However, apparently concerned that details about the dealings with JOHNSON would now become publicly known (as AVENATTI's various legal issues were being covered by the press), AVENATTI went to meet in person with JOHNSON during the next few days, March 22-24, 2019.  During those meetings, AVENATTI stated falsely to JOHNSON that the special

needs trust has now been established and Los Angeles County was prepared to make settlement payment, but JOHNSON would have to sign additional documents, including a "Client Testimonial Approval" attesting that AVENATTI is an "exceptional, honest and ethical attorney…"  Under duress, JOHNSON signed such documents because he was induced by AVENATTI to believe that his settlement funds were forthcoming.  Aside from the "Client Testimonial Approval," JOHNSON is unaware of what were the other documents that AVENATTI forced him to sign during this period, and AVENATTI did not provide JOHNSON with any copies of them.

63. On or about April 10, 2019, the U.S. Attorney's Office for the Central District of California released an indictment of AVENATTI on thirty-six counts of criminal offenses, including with respect to the misappropriation of the settlement funds of JOHNSON, who is referred to the indictment as "Client 1."  Shortly after such indictment was announced, AVENATTI posted on-line the "Client Testimonial Approval" that he had extracted from JOHNSON using duress and deception.

64. It was not until at least late-March to April 2019, through the government's investigation of AVENATTI and JOHNSON's consultation with new counsel, did JOHNSON begin to discover what had actually happened to his settlement funds.  JOHNSON did not learn until March-April 2019 that Los Angeles County had paid $4 million in settlement funds to EAGAN AVENATTI's client trust account in January 2015, and that such funds had been drained thereafter, through the acts and omissions of Defendants AVENATTI, FRANK, EAGAN, SIMS, REGNIER, and EAGAN AVENATTI.

65. JOHNSON had no knowledge, and had no reason to know, of the above acts and omissions because Defendants willfully concealed them from him.  In particular, as set forth above, AVENATTI falsely informed JOHNSON on repeated occasions that the settlement money from Los Angeles County had not been paid, and supported such false statements with "advances" to JOHNSON of $1,900 every month or so.

66. In addition, as evidenced by AVENATTI's meetings and discussions with JOHNSON during March 22-24, 2019, there was continuing representation of JOHNSON until at

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

least March-April 2019, and therefore all applicable statutes of limitation were tolled until at least such period.

67.     Alternatively, or in addition, during all relevant periods, JOHNSON was under a physical disability that restricted his ability to commence legal action, and therefore all applicable statutes of limitation were tolled for that separate and independent reason as well.

68.     JOHNSON's monetary losses total at least $4,500,000: $4,000,000 from the lost settlement funds and $500,000 in lost social security benefits.

69.     Additionally, JOHNSON suffers from severe emotional distress due to being defrauded for four years, and learning that among the people who he had trusted the most, his attorneys, were the ones who had victimized him.  Such emotional distress comes on top of the mental trauma that JOHNSON already suffered, and continues to suffer, due to the injuries inflicted by Los Angeles County at issue in the Underlying Action.  Accordingly, JOHNSON seeks compensation of at least $5,000,000 for general damages, for total compensatory damages of $9,500,000.

70.     JOHNSON also seeks punitive damages against Defendants for their acts of malice, oppression, and fraud against him.

## FIRST CAUSE OF ACTION

## PROFESSIONAL NEGLIGENCE

(Against Defendants AVENATTI, FRANK, EAGAN, SIMS, EAGAN AVENATTI,

and DOES 1-10)

71.     JOHNSON incorporates by reference paragraphs 1-70 above as though they are fully set forth herein.

72.     AVENATTI, FRANK, EAGAN, and SIMS were attorneys who had an attorney-client relationship with JOHNSON.  JOHNSON engaged them to represent him in connection with personal injury claims against Los Angeles County, and in litigation against the County in the Underlying Action.  As such, AVENATTI, FRANK, EAGAN, and SIMS owed a duty of care to JOHNSON, including but not limited to the duty to protect JOHNSON's best interests in all

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   circumstances.  EAGAN AVENATTI was the law firm that represented JOHNSON, acting

2   through individual attorneys AVENATTI, FRANK, EAGAN, and SIMS.

3        73.     The misrepresentations, concealment, and other fraudulent conduct of AVENATTI

4   and REGNIER were engaged in by them at the behest of and/or with the authorization of EAGAN

5   AVENATTI, and therefore EAGAN AVENATTI is liable for such conduct as well.

6        74.     AVENATTI, FRANK, EAGAN, SIMS, and EAGAN AVENATTI breached the

7   following duties to JOHNSON, as set forth under the following California Rules of Professional

8   Conduct ("CRPC"): duty to communicate to the client about significant developments (Rule 1.4);

9   duty to communicate settlement offers (Rule 1.4.1); duty not to charge or take unconscionable fee

10  (Rule 1.5); duty to refrain from certain business transactions with the client and pecuniary interests

11  adverse to the client (Rule 1.8.1); duty to safeguard and duly account for funds in which a client

12  has interest, including promptly notifying the client of the receipt of such funds (Rule 1.15); duty

13  to supervise other lawyers in a law firm, and take reasonable remedial action when necessary

14  (Rule 5.1); duty to comply with ethical rules notwithstanding the direction of another lawyer (Rule

15  5.2); and duty to supervise nonlawyer personnel in a law firm (Rule 5.3).  In particular, attorneys

16  are required to "promptly" distribute to the client funds that the latter is entitled to receive (Rule

17  1.15(d)).

18       75.     Additionally, AVENATTI took client funds without JOHNSON's consent, and

19  made false statements to JOHNSON.  However, because all the compensation of AVENATTI,

20  FRANK, EAGAN, and SIMS included some portion of the settlement proceeds to which

21  JOHNSON was entitled, AVENATTI, FRANK, EAGAN, and SIMS all breached their duty to

22  JOHNSON by in effect taking unearned fees from him.

23       76.     AVENATTI and EAGAN AVENATTI breached the duty to competently perform

24  legal services when AVENATTI promised that he, and paralegal REGNIER acting under his

25  direction, would provide information and otherwise rectify matters with the Social Security

26  Administration so as to prevent the discontinuation of JOHNSON's supplemental security income

27  benefits.  AVENATTI failed to do so, and in fact provided false information to SSA.  As a result,

28  JOHNSON was deprived of such governmental benefits.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

77.     Further, AVENATTI, FRANK, and EAGAN. who had managerial authority, and SIMS. who had at least "intermediate managerial authority," breached their duty to supervise other lawyers and non-attorney staff at EAGAN AVENATTI.

78.     In violating the above duties to client JOHNSON, AVENATTI, FRANK, EAGAN, SIMS, and EAGAN AVENATTI engaged in professional negligence.

79.     JOHNSON did not discover the misconduct against him until no earlier than March-April 2019, because such wrongful conduct was concealed from him.  Among other things, AVENATTI lied to JOHNSON that the settlement funds had not been paid by Los Angeles County and would not be paid until a special needs trust was established and approved by the County, and AVENATTI and REGNIER caused the payment of minimal funds to JOHNSON to lull him into a false sense of security.  FRANK, EAGAN, and SIMS refused to inform JOHNSON that the County of Los Angeles had paid $4 million for his benefit, and therefore JOHNSON could not know of Defendants' acts and omissions causing him harm until recent events in March-April 2019, including the government's investigation of the circumstances surrounding the loss of JOHNSON's settlement funds.  All of such wrongful acts and omissions by AVENATTI, FRANK, EAGAN, and SIMS were engaged in as employees and/or agents of EAGAN AVENATTI, and therefore EAGAN AVENATTI is liable for such conduct as well.

80.     The acts and omissions of JOHNSON, AVENATTI, FRANK, EAGAN. SIMS, and EAGAN AVENATTI that constituted legal malpractice actually and proximately caused damage to JOHNSON, in an amount to be determined at trial but no less than $9,500,000.

## SECOND CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTIES

### (Against Defendants AVENATTI, FRANK, EAGAN. SIMS, EAGAN AVENATTI, and DOES 1-10)

81.     JOHNSON incorporates by reference paragraphs 1-80 above as though they are fully set forth herein.

82.     AVENATTI, FRANK, EAGAN, and SIMS owed fiduciary duties toward JOHNSON because they were his attorneys. and he was their client.  As such, AVENATTI,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   FRANK, EAGAN, and SIMS had a duty to act with the utmost good faith and in the best interests

2   of JOHNSON, and with undivided loyalty toward him.  As EAGAN AVENATTI was the law

3   from through which AVENATTI, FRANK, EAGAN, and SIMS acted toward JOHNSON,

4   EAGAN AVENATTI had such fiduciary duties toward JOHNSON.

5       83.    In engaging in the acts and omissions set forth above, AVENATTI, FRANK,

6   EAGAN, SIMS, and EAGAN AVENATTI breached their fiduciary duties to JOHNSON,

7   including their duties to act in his best interests and with loyalty.

8       84.    Among other things, AVENATTI caused the misappropriation of the settlement

9   funds that were paid into EAGAN AVENATTI's client trust account for the benefit of

10  JOHNSON.  FRANK, EAGAN, and SIMS knew and had reason to know about such actions but

11  failed to take any steps to safeguard JOHNSON.  In particular, FRANK, EAGAN, and SIMS

12  knew about Los Angeles County's payment of $4 million for the benefit of JOHNSON, but

13  refused or otherwise failed to disclose those facts to him, thus allowing AVENATTI to carry out

14  his scheme.

15      85.    AVENATTI, FRANK, EAGAN, SIMS, and EAGAN AVENATTI's breaches of

16  their fiduciary duties to JOHNSON actually and proximately caused damage to him, in an amount

17  to be determined at trial but no less than $9,500,000.

18      86.    Additionally, the above Defendants engaged in the above breaches of fiduciary

19  duties owing to JOHNSON with malice, oppression, or fraud.  AVENATTI intended to defraud

20  and harm JOHNSON.  FRANK, EAGAN, and SIMS acted with gross negligence and/or in

21  reckless disregard for JOHNSON's rights.  AVENATTI, FRANK, EAGAN, SIMS, and EAGAN

22  AVENATTI engaged in the foregoing intentional, fraudulent, and/or grossly negligent conduct at

23  the behest of and/or with the authorization of EAGAN AVENATTI.  Accordingly, pursuant to

24  Civil Code § 3294, JOHNSON is entitled to recover punitive and exemplary damages against

25  those Defendants, in an amount to be proven at trial consistent with Constitutional requirements.

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT

(Against Defendants AVENATTI, EAGAN AVENATTI, FRANK, EAGAN, and DOES 1-10)

87.  JOHNSON incorporates by reference paragraphs 1-86 above as though they are fully set forth herein.

88.  JOHNSON entered into a retainer agreement with EAGAN AVENATTI and the attorneys therein to represent him and provide him legal services in connection with JOHNSON's claims against the County of Los Angeles.  Such contract was with the law firm of EAGAN AVENATTI but also with the following managing agents thereof, particularly as they were and are alter egos of EAGAN AVENATTI: AVENATTI, EAGAN, and FRANK.

89.  JOHNSON performed all of his obligations under such contract, including cooperating with the above-mentioned Defendants in prosecuting the action.

90.  EAGAN AVENATTI, AVENATTI, EAGAN, and FRANK breached and otherwise failed to perform their obligations under the retainer agreement with JOHNSON, including the contractual duty to pay over to him all amounts recovered from the County of Los Angeles from the underlying action.

91.  The refusal or failure of EAGAN AVENATTI, AVENATTI, EAGAN, and FRANK to perform their contractual duties owing to JOHNSON under the retainer agreement actually and proximately caused him harm, including but not limited to the loss of the $4 million in settlement funds paid by the County of Los Angeles for JOHNSON's benefit.

## FOURTH CAUSE OF ACTION

## INTENTIONAL FRAUD

(Against Defendant AVENATTI, REGNIER, EAGAN AVENATTI, and DOES 11-25)

92.  JOHNSON incorporates by reference paragraphs 1-91 above as though they are fully set forth herein.

93.  AVENATTI made multiple misrepresentations to JOHNSON; notably, that the County of Los Angeles would not pay any settlement funds until a special needs trust was established for JOHNSON, and the County approved such trust.  AVENATTI also misled

- 20 -

1 JOHNSON by paying him minimal "advances" on the settlement funds so as to lull him into a

2 false sense of security, and so that JOHNSON would not look into the circumstances of any

3 settlement with Los Angeles County.

4    94.    In actual fact, AVENATTI concealed from JOHNSON that the County of Los

5 Angeles had paid $4 million to the client trust account of EAGAN AVENATTI in January 2015.

6 AVENATTI, aided and abetted by others, subsequently caused the funds allocated for JOHNSON

7 to be drained.

8    95.    AVENATTI intended for JOHNSON to rely on his misrepresentations and other

9 deceptive conduct with respect to the settlement funds, and JOHNSON did justifiably rely on such

10 representations and conduct of AVENATTI.

11    96.    REGNIER intentionally deceived JOHNSON by also making false statements to

12 him similar to those made by AVENATTI, and writing checks or otherwise causing payments to

13 JOHNSON of the nominal amounts that were claimed as "advances" on any future settlement

14 proceeds from Los Angeles County, when she knew and had reason to know that the settlement

15 funds had been paid, and this was all part of a scheme to hide from JOHNSON the taking of such

16 funds.

17    97.    The misrepresentations, concealment, and other fraudulent conduct of AVENATTI

18 and REGNIER were engaged in by them at the behest of and/or with the authorization of EAGAN

19 AVENATTI, and therefore EAGAN AVENATTI is liable for such conduct as well.

20    98.    The misrepresentations, concealment, and other fraudulent conduct of AVENATTI,

21 REGNIER, and EAGAN AVENATTI actually and proximately caused damage to JOHNSON, in

22 an amount to be determined at trial but no less than $9,500,000.

23    99.    AVENATTI and REGNIER engaged in the above fraudulent acts with malice,

24 oppression, or fraud, in that they intended to defraud and harm JOHNSON.  Additionally,

25 AVENATTI and REGNIER engaged in such acts at the behest of and/or with the authorization of

26 EAGAN AVENATTI.  Accordingly, pursuant to Civil Code § 3294, JOHNSON is entitled to

27 recover punitive and exemplary damages against AVENATTI, REGNIER, and EAGAN

28 AVENATTI in an amount to be proven at trial consistent with Constitutional requirements.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**FIFTH CAUSE OF ACTION**

**CONVERSION**

(Against Defendant AVENATTI, EAGAN AVENATTI, and DOES 11-25)

100.    JOHNSON incorporates by reference paragraphs 1-99 above as though they are fully set forth herein.

101.    JOHNSON had the right to possess settlement money of $4,000,000 that was paid by Los Angeles County for his benefit, which check was paid to and cashed by EAGAN AVENATTI's client trust account in approximately 2015.

102.    AVENATTI engaged in wrongful acts that converted and dispossessed JOHNSON of the settlement funds from the firm's client trust account, when he improperly diverted to himself and others the foregoing settlement funds to which JOHNSON was entitled.  EAGAN AVENATTI is liable for AVENATTI's acts of conversion, because AVENATTI was a managing agent of EAGAN AVENATTI, and/or EAGAN AVENATTI ratified such conduct by him with knowledge.

103.    AVENATTI and EAGAN AVENATTI's conversion actually and proximately caused damage to JOHNSON, in an amount to be determined at trial but no less than $9,000,000.

104.    AVENATTI and EAGAN AVENATTI engaged in the above acts conversion with malice, oppression, or fraud, in that he intended to defraud and harm JOHNSON.  Accordingly, pursuant to Civil Code § 3294, JOHNSON is entitled to recover punitive and exemplary damages against AVENATTI and EAGAN AVENATTI in an amount to be proven at trial consistent with Constitutional requirements.

**SIXTH CAUSE OF ACTION**

**AIDING AND ABETTING**

(Against Defendants FRANK, EAGAN, SIMS, and REGNIER and DOES 11-25)

105.    JOHNSON incorporates by reference paragraphs 1-104 above as though they are fully set forth herein.

106.    FRANK, EAGAN, SIMS, and REGNIER knew that certain tortious, wrongful acts were being committed or would be committed by AVENATTI against JOHNSON; namely,

1   intentional fraud and conversion with respect to the settlement funds to which JOHNSON was

2   entitled.

3       107.   FRANK, EAGAN, SIMS, and REGNIER gave substantial assistance or

4   encouragement to AVENATTI in engaging in such tortious, wrongful acts against JOHNSON.

5       108.   The aiding and abetting of FRANK, EAGAN, SIMS, and REGNIER actually and

6   proximately caused damage to JOHNSON, in an amount to be determined at trial but no less than

7   $9,500,000.

8       109.   FRANK, EAGAN, SIMS, and REGNIER engaged in the above fraudulent acts

9   with malice, oppression, or fraud, in that REGNIER intended to defraud and harm JOHNSON,

10  and FRANK, EAGAN, SIMS acted with gross negligence and in reckless disregard of

11  JOHNSON's rights.  Accordingly, pursuant to Civil Code § 3294, JOHNSON is entitled to

12  recover punitive and exemplary damages against FRANK, EAGAN, SIMS, and REGNIER in an

13  amount to be proven at trial consistent with Constitutional requirements.

14                          **PRAYER FOR RELIEF**

15      Whereas, based on the foregoing factual allegations and causes of action asserted here,

16  Plaintiff GEOFFREY JOHNSON prays for the following relief against all Defendants, jointly and

17  severally.

18      (a)    Compensatory damages in an amount to be proven at trial, but no less than

19  $9,500,000;

20      (b)    Punitive damages in an amount to be proven at trial up to Constitutional limits;

21      (c)    An award of litigation costs;

22      (d)    An award of attorneys' fees to the extent allowable by law;

23      (e)    Any and all other relief that the Court may deem appropriate.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

1

Dated:  June 11, 2019

2

CALLAHAN & BLAINE, APLC

3

By:

4

Daniel J. Callahan
Edward Susolik
Raphael Cung
Attorneys for Plaintiff GEOFFREY E.
JOHNSON

5

6

7

8

9

**DEMAND FOR JURY TRIAL**

10

Pursuant to the Seventh Amendment of the United States Constitution, the Constitution of

11

California, and any and all other applicable law, Plaintiff GEOFFREY JOHNSON hereby requests

12

a jury trial in this action for all claims so triable.

13

14

15

Dated:  June 11, 2019

CALLAHAN & BLAINE, APLC

16

By:

17

Daniel J. Callahan
Edward Susolik
Raphael Cung
Attorneys for Plaintiff GEOFFREY E.
JOHNSON

18

19

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT FOR PROFESSIONAL NEGLIGENCE

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Settlement Agreement And Release of All Claims ("Agreement") is entered into between the following parties ("the Parties"): Plaintiff Geoffrey Ernest Johnson ("Plaintiff"), and Defendants County of Los Angeles, Los Angeles Sheriff's Department (also known as the Los Angeles County Sheriff's Department), and Leroy Baca (collectively hereafter, "Defendants").

### RECITALS

Plaintiff filed a civil action against Defendants, entitled *Geoffrey Ernest Johnson v. Leroy Baca, et al.,* Los Angeles County Superior Court Case No. BC493409 ("State Action").

On or about June 21, 2013, Defendants removed the State Action to the United States District Court for the Central District of California with a Case Number of CV-13-4496 MMM (AJWx) (the "Lawsuit").

To avoid the time and expense of further litigation, the Parties desire to resolve their differences and reach an end, compromise, and settlement for all disputes existing and potentially existing between them from the incident giving rise to the Lawsuit.

### AGREEMENT

In consideration of the execution of this Agreement and the releases and promises made in the Agreement by the Parties, the Parties agree as follows:

In exchange for a complete resolution of the Lawsuit, Defendants, by and through the County of Los Angeles, shall pay to Plaintiff **Four Million Dollars ($4,000,000.00)** (the "Settlement Funds"), subject to approval by the Los Angeles County Board of Supervisors. The parties acknowledge that the Court in this matter has issued an order outlining a time table to present this settlement for approval by the Los Angeles County Board of Supervisors, and thereafter issuance of a settlement draft. It is understood by the parties that if the time table is not complied with, this settlement agreement may be revoked by either party.

The Parties expressly agree that the Lawsuit shall not be dismissed until five (5) business days following receipt by Eagan Avenatti of the Settlement Funds as provided above.

The Plaintiff, being of lawful age, does hereby, and for his heirs, executors, administrators, successors and assigns, release, acquit and forever discharge Defendants, as well as their respective agents, servants, successors, heirs, attorney, executors, administrators and all other persons, firms, corporations, associations or partnerships, or any other entity connected therewith, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expense and/or compensation, of any nature whatsoever which the undersigned Plaintiff now has or which may hereafter accrue to the undersigned Plaintiff on account of, or in any way growing out of, any and all known or unknown, foreseen and unforeseen, injuries and/or damages and the consequences thereof resulting from, or to result from, the incidents, casualties or events which occurred or arose while in custody of the Los Angeles County Sheriff's Department from April 2011 through February 2012 in Los Angeles,

California, and which has resulted in a claim and/or lawsuit being brought by the Plaintiff and against Defendants as described in Case No. CV-13-4496 MMM (AJWx), entitled *Geoffrey Ernest Johnson v. Leroy Baca, et al.,* venued in the United States District Court for the Central District of California.

The Plaintiff agrees that this Agreement extends to any claims which the Plaintiff does not know or suspect to exist in his favor at the time of executing the document, which if known by him may materially affect this settlement.  In that regard, the Plaintiff agrees to waive any rights he may have under California *Civil Code* § 1542, which provides as follows: "General release; extent - A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which is known by him must have materially affected his settlement with the debtor." The Plaintiff fully understands that he cannot hereafter make any further claim or seek any further recovery from the parties being released herein by reason of the aforesaid matters, and expressly waives all unknown claims caused by, or alleged to be caused by, the aforesaid Lawsuit.

Plaintiff acknowledges that all liens or other claims of third-parties have been disclosed and agrees to hold harmless and indemnify Defendants, Hurrell Cantrall LLP, and their attorneys and agents, of any and all liens or other claims of third-parties which have been or may be asserted for services which have been or may be rendered on behalf of the Plaintiff.

The Parties agree that they have received no inducement, promise or offer of any kind whatsoever for the consideration delineated hereinabove other than what is stated herein, and that this Agreement is executed without reliance on any statement or representation by those released or their representatives, or anyone, other than the sole consideration described herein.

The Parties agree that no party will be deemed the "prevailing party" for any purpose.

It is understood and agreed that this settlement is the compromise of a disputed claim and that the consideration furnished is not to be construed as an admission of liability on the part of Defendants, and that Defendants have denied liability on the claim herein and intend merely to avoid further litigation by this compromise.

The compromise and settlement which forms the basis of this Agreement have been arrived at after thorough bargaining and negotiation and represents a final, mutually agreeable compromise.

The Parties agree that this Agreement contains the entire agreement between the Parties and that the terms of this Agreement are contractual and not a mere recital.

/ / /

/ / /

/ / /

The Parties further agree that they have read and fully understand this Agreement, that the opportunity has been afforded to discuss the terms and contents of this Agreement with legal counsel and/or that such a discussion with legal counsel has occurred. This release may be executed in multiple counterparts, each of which shall be deemed an original, and all of that shall constitute one agreement to be effective on the date of the final signature hereto.

## CAUTION: READ BEFORE SIGNING

DATED: 1/2/15

By: _____
Geoffrey Ernest Johnson, Plaintiff

DATED: 1/21/15

_____
Authorized Representative of the Defendants

This Settlement Agreement and Release of All Claims has been read and approved as to form and content.

DATED: 1-21-15

By: _____
Michael Avenatti, Esq.
Scott Sims, Esq.
Carlos Colorado, Esq.
Eagan Avenatti, LLP
Attorneys for Plaintiff

DATED: 1/21/15

By: _____
Thomas C. Hurrell, Esq.
Charles Phan, Esq.
Rebecca H. Snader, Esq.
Hurrell Cantrall LLP
Attorneys for Defendants

# EXHIBIT B

REX Previewer - Output Basket Results



THIS IS WATERMARKED PAPER · DO NOT ACCEPT WITHOUT NOTING WATERMARK · HOLD TO LIGHT TO VERIFY WATERMARK

COUNTY OF LOS ANGELES
AUDITOR CONTROLLER'S GENERAL WARRANT
WARRANT CLEARANCE FUND  LOS ANGELES, CALIFORNIA

TS 0021400949

THE TREASURER OF THE COUNTY OF LOS ANGELES
500 W  TEMPLE ST  ROOM 602, LOS ANGELES, CA 90012

**January 26, 2015**

NOT PAYABLE AFTER TWO
YEARS FROM DATE ISSUED

CONTROLLED DISBURSEMENT
PAYABLE THROUGH BANK OF AMERICA, N A
NORTH BROOK, ILLINOIS

70-2328
0719

PAY TO THE ORDER OF:

EAGAN AVENATTI, LLP ATTORNEY CLIENT TRUST ACCOUNT
C/O COUNTY COUNSEL
LOS ANGELES, CA 90012

MISC-BD CLAIMS

191

PAY:    **Four Million  And 00/100 Dollars**

Amount

$***4,000,000.00

APPROVED
JOHN NAIMO  AUDITOR-CONTROLLER BY

3808631

PAY TO THE ORDER OF
CALIFORNIA BANK AND TRUST
TORRANCE CA 90503-6500
FOR DEPOSIT ONLY
EAGAN AVENATTI, LLP

Date:01 29 15 Seq #:53040022 Account          848 Serial #:21400949 Amount:$4,000,000.00 Dep Seq #:53040021

## **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on August 3, 2021, service of the:

DEFENDANT'S OPPOSITION TO THE MOTION TO QUASH THE SUBPOENA
[DKT. 610]

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL, AUSA ALEXANDER WYMAN AND THIRD PARTY DREW HARBUR

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 3, 2021

/s/ H. Dean Steward

H. Dean Steward