1

2

3

4                    UNITED STATES DISTRICT COURT

5                   CENTRAL DISTRICT OF CALIFORNIA

6                        SOUTHERN DIVISION

7                            - - -

8        THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

           UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
10                          Plaintiff,  )
             vs.                          )
11                                        )  SACR-19-00061-JVS
           MICHAEL JOHN AVENATTI,         )
12                          Defendant.  )TRIAL DAY 14, VOL. 1
           ------------------------------)
13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    Santa Ana, California

17                     August 4, 2021

18

19                     SHARON A. SEFFENS, RPR
                       United States Courthouse
20                     411 West 4th Street, Suite 1-1053
                       Santa Ana, CA  92701
21                     (714) 543-0870

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

 1 | APPEARANCES OF COUNSEL:

 2 | For the Plaintiff:

 3 | NICOLA T. HANNA
   | United States Attorney
 4 | BRANDON D. FOX
   | Assistant United States Attorney
 5 | Chief, Criminal Division
   | ALEXANDER WYMAN
 6 | Assistant United States Attorney
   | Major Frauds Section
 7 | 1100 United States Courthouse
   | 312 North Spring Street
 8 | Los Angeles, CA  90012
   | (213) 894-6683
 9 |
   | BRETT A. SAGEL
10 | Assistant United States Attorney
   | Ronald Reagan Federal Building
11 | 411 West Fourth Street, Suite 8000
   | Santa Ana, CA  92701
12 | (714) 338-3598

13 | For the Defendant:

14 | MICHAEL JOHN AVENATTI, PRO SE

15 | H. DEAN STEWARD (ADVISORY COUNSEL)
   | H. DEAN STEWARD LAW OFFICES
16 | 107 Avenida Miramar, Suite C
   | San Clemente, CA  92672
17 | (949) 481-4900

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

```
 1
 2                            I-N-D-E-X
 3
 4    PLAINTIFF'S
      WITNESSES:             DIRECT   CROSS   REDIRECT   RECROSS
 5
      FILIPPO MARCHINO
 6      (Continued)           27       43
 7    PLAINTIFF'S
      EXHIBITS:                              MARKED     RECEIVED
 8
      Exhibit 284                                          32
 9    Exhibit 285                                          34
      Exhibit 287                                          40
10
      DEFENSE
11    WITNESSES:           DIRECT   CROSS    REDIRECT   RECROSS
12     (None)
13    DEFENSE
      EXHIBITS:                              MARKED     RECEIVED
14
      1053                                     73
15
16
17
18
19
20
21
22
23
24
25
```

|    |    |
|----|----|
| 1  | SANTA ANA, CALIFORNIA; WEDNESDAY, AUGUST 4, 2021; 8:16 A.M. |
| 2  | (Jury not present) |
| 08:16  3 | THE CLERK:  Item 1, SACR-19-00061-JVS, United |
| 08:16  4 | States of America versus Michael John Avenatti. |
| 08:16  5 | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel |
| 08:16  6 | and Alexander Wyman on behalf of the United States.  And at |
| 08:16  7 | counsel table is Special Agent Ramon Carlos. |
| 08:16  8 | THE COURT:  Good morning. |
| 08:16  9 | MR. AVENATTI:  Good morning, Your Honor.  Michael |
| 08:16  10 | Avenatti, present with advisory counsel Mr. Dean Steward as |
| 08:16  11 | well as Ms. Cummings-Cefali. |
| 08:16  12 | THE COURT:  Good morning. |
| 08:16  13 | Perhaps I wasn't clear enough, but at 8:15 I'm |
| 08:16  14 | going to take up the in-camera hearing with respect to |
| 08:16  15 | in-camera filings which the government has made.  So I'm |
| 08:16  16 | going to excuse everyone else and direct that this part of |
| 08:17  17 | the transcript be separately prepared and sealed. |
| 08:17  18 | MR. SAGEL:  Your Honor, in the front row is Ranee |
| 08:17  19 | Katzenstein, our supervisor.  Is she allowed to stay for |
| 08:17  20 | this proceedings? |
| 08:17  21 | THE COURT:  Yes. |
| 08:17  22 | MS. KATZENSTEIN:  Thank you, Your Honor. |
| 08:17  23 | THE COURT:  Good morning. |
| 08:17  24 | (Courtroom closed) |
| 08:17  25 | (The following proceedings were under seal:) |

| | | |
|---|---|---|
| 08:24 | 1 | (End of sealed proceedings) |
| 08:25 | 2 | (Courtroom reopened) |
| 08:26 | 3 | THE COURT:  We have concluded the in-camera |
| 08:26 | 4 | portion of this hearing.  In the in-camera portion, I |
| 08:26 | 5 | reviewed the government's submission on August -- |
| 08:26 | 6 | MR. SAGEL:  August 2nd, Your Honor. |
| 08:27 | 7 | THE COURT:  -- on August 2, 2021.  I asked the |
| 08:27 | 8 | government to produce any additional e-mails between the |
| 08:27 | 9 | government -- or communications between the government and |
| 08:27 | 10 | Mr. Weiner.  The government made a filing of all the e-mails |
| 08:27 | 11 | that had been produced and all the e-mails that had not been |
| 08:27 | 12 | produced. |
| 08:27 | 13 | I read each of those e-mails.  The e-mails made |
| 08:27 | 14 | reference to two voice mails.  The government requested |
| 08:27 | 15 | copies of the voice mails to be transmitted to the |
| 08:27 | 16 | government, and they were in fact produced to the defense |
| 08:27 | 17 | and were used during the course of Mr. Weiner's examination. |
| 08:27 | 18 | Those are Exhibits 145 and 151. |
| 08:27 | 19 | I conclude that there was no violation of Jencks |
| 08:27 | 20 | with respect to the materials for Mr. Weiner. |
| 08:28 | 21 | The government also made a filing on 7/23 with |
| 08:28 | 22 | regard to the memorandum of interview dated March 31, 2019, |
| 08:28 | 23 | prepared by Special Agent Jerry Carmona.  That interview |
| 08:28 | 24 | memorandum was produced by the government at USAO 00133556. |
| 08:28 | 25 | The government produced the underlying notes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:28  1          I reviewed the underlying notes of the agent, and
08:28  2    I concluded that all substantive material is reflected in
08:28  3    the agent's report.  I found no separate Jencks, Giglio, or
08:29  4    other material that would require production under the
08:29  5    government's obligation.
08:29  6          Moreover, I find that the notes would not be
08:29  7    subject to production in any event.  Under United States
08:29  8    versus Robertson, 895 F.3d 1206 (Ninth Circuit 2018) at
08:29  9    1217, the Court adopts the following analysis at 217:  "An
08:29  10   agent's rough notes will not be Jencks Act statements when
08:29  11   they are not complete, are truncated in nature, or have
08:29  12   become an unsiftable mix of witness testimony,
08:29  13   investigator's allegations, interpretations, and
08:30  14   interpolations."
08:30  15         I find that the rough notes fall under that
08:30  16   description in Robertson, and they are not subject to
08:30  17   production.  I independently determine that there is no
08:30  18   Brady, Giglio, or other material that would separately
08:30  19   require production of those notes.
08:30  20         Accordingly, I find that the government has met
08:30  21   its production obligations with respect to the memorandum
08:30  22   that has been produced.
08:30  23         Now let's turn to the third-party Motion to Quash.
08:30  24         Mr. Harbur.
08:31  25         MR. HARBUR:  Good morning, Your Honor.  Drew

08:31   1   Harbur on the third party that was subpoenaed and my firm

08:31   2   has made a Motion to Quash on my behalf.

08:31   3          If the Court is ready -- I've read the opposition,

08:31   4   and I'd like to revise the position I outlined in my

08:31   5   original moving papers -- I'd like to bring the Court up to

08:31   6   speed if that's okay.

08:31   7          THE COURT:  Okay.  For the record, let me just

08:31   8   note that your motion was filed at Docket 610 along with the

08:31   9   supporting declaration at 611.  An opposition was presented

08:31   10  at Docket 626.

08:31   11         I will be happy to hear you.

08:31   12         MR. HARBUR:  Thank you, Your Honor.

08:31   13         Obviously the Court has read the moving papers and

08:31   14  hopefully can understand my consternation and concern when I

08:31   15  received the subpoena, especially given that I represent a

08:31   16  victim in this matter who has already testified, and

08:31   17  especially because I also represent that same victim in an

08:31   18  ongoing civil lawsuit against the defendant related to money

08:32   19  that he stole from my client.

08:32   20         I have read the defendant's opposition, and in

08:32   21  light of that my position is this.  And with respect to

08:32   22  Request No. 1, which is for my client's testimony in the

08:32   23  context of the arbitration proceeding --

08:32   24         THE COURT:  Let me ask you about that.

08:32   25  Mr. Avenatti was a party to the arbitration; was he not?

08:32  1          MR. HARBUR:  He was not a party to the

08:32  2    arbitration.

08:32  3          THE COURT:  Who's the other party?

08:32  4          MR. HARBUR:  The arbitration was against Michael

08:32  5    Q. Eagan --

08:32  6          THE COURT:  Okay.

08:32  7          MR. HARBUR:  -- Jason Frank, Jason Frank Law, and

08:32  8    Scott Sims.

08:32  9          THE COURT:  Okay.

08:32  10          MR. HARBUR:  So the original lawsuit was filed

08:32  11    against those individuals.  Those four parties moved to

08:32  12    compel arbitration.  The defendant and Eagan Avenatti did

08:32  13    not, which is why it was bifurcated.

08:32  14          THE COURT:  Okay.

08:32  15          MR. HARBUR:  So at this point, Your Honor, I do

08:32  16    believe the defendant is entitled to my client's testimony,

08:32  17    deposition, and trial hearing with respect to the

08:33  18    arbitration.  I have those documents on a thumb drive.  I

08:33  19    can provide a copy to the defendant and a copy to the

08:33  20    government.

08:33  21          However, I continue to believe that my oral

08:33  22    testimony is completely unnecessary to authenticate those

08:33  23    documents, and I think all of the other requests -- requests

08:33  24    two, three, and four -- are frankly a fishing expedition,

08:33  25    not made in good faith, and the Court should quash those

08:33   1    requests in addition to any additional oral testimony.

08:33   2          The reasons for my position on two, three, and

08:33   3    four versus my position on one, essentially what the

08:33   4    defendant is looking for are deposition transcripts and

08:33   5    hearing transcripts from individuals who have not testified

08:33   6    in this case and who, it's my understanding, are not going

08:33   7    to testify.

08:33   8          Thus, it's an attempt by the defendant to use the

08:33   9    trial subpoena as an investigative tool.  And to the extent

08:33  10    he wants impeachment, there can be no impeachment because

08:33  11    Frank, Sims, and Eagan haven't testified at this point.

08:34  12          Moreover, to the extent the defendant wants legal

08:34  13    pleadings and briefs submitted in connection with the

08:34  14    arbitration, there is no relevance or admissibility as to

08:34  15    those statements, me by myself and other lawyers at my firm

08:34  16    in the context of civil liability in a private arbitration,

08:34  17    certainly not for this jury in terms of what the task of

08:34  18    this jury is to do.

08:34  19          Similarly, as to the arbitrator's ruling, first of

08:34  20    all, I don't know how I can authenticate or be a basis for

08:34  21    the admission of that statement, but a private arbitrator's

08:34  22    findings in term of civil liability primarily based on the

08:34  23    joint and several liability of Mr. Avenatti's former

08:34  24    partners would not appear to be relevant or admissible in

08:34  25    terms of the task of this jury in the context of criminal

08:34   1    proceedings.

08:34   2           So quickly to recap, if Mr. Avenatti seeks only

08:34   3    Mr. Johnson, my client's, arbitration deposition and

08:35   4    testimony at the arbitration hearing, I'm willing to provide

08:35   5    it.  I don't think my oral testimony is necessary, and I am

08:35   6    asking the Court to quash Requests 2, 3, and 4, in addition

08:35   7    to any further requests for my oral testimony.  My view is

08:35   8    that the authentication issue can be resolved by stipulation

08:35   9    without the need for Mr. Avenatti to put me in front of this

08:35   10   jury.

08:35   11          THE COURT:  With respect to number four,

08:35   12   transcripts in accordance with any sworn testimony provided

08:35   13   in connection with the arbitration by any former employee or

08:35   14   partner of Eagan Avenatti, is there anything there?

08:35   15          MR. HARBUR:  There is, Your Honor.  Mr. Frank, who

08:35   16   is a former partner in the firm or who I guess had the title

08:35   17   of partner in the firm, testified at deposition, testified

08:35   18   at the arbitration hearing.

08:35   19          Similarly, Mr. Sims testified in the deposition

08:35   20   and also at the arbitration hearing.  Mr. Eagan testified in

08:36   21   part at a deposition that was then ended, and there is no

08:36   22   further testimony from him.  And the final employee --

08:36   23   former employee, I should say, who testified was an

08:36   24   individual named Catherine Mosby, M-o-s-b-y.  She was not

08:36   25   deposed.  She did testify at the hearing itself.

08:36  1        And as I point out in my papers, Ms. Regnier, who

08:36  2    I understand has testified here, did not provide a

08:36  3    deposition and did not testify at the arbitration hearing.

08:36  4        THE COURT:  Number three deals with submissions

08:36  5    made by Mr. Johnson in connection with the arbitration in

08:36  6    which Johnson claims individuals other than Avenatti were

08:36  7    responsible for or in part of any brought.  I assume there

08:36  8    are such pleadings.

08:36  9        MR. HARBUR:  I assume there are pleadings as well,

08:36 10    Your Honor, in which my firm took the position that based on

08:36 11    principles of negligence or joint and several liability,

08:37 12    others could be found liable for Mr. Avenatti's conduct, not

08:37 13    that they themselves actively participated in the crime or

08:37 14    the fraud.

08:37 15        THE COURT:  Okay.  Thank you.

08:37 16        MR. HARBUR:  Thank you.

08:37 17        THE COURT:  Mr. Avenatti.

08:37 18        MR. AVENATTI:  Thank you, Your Honor.

08:37 19        A few points.  First of all, to touch on the

08:37 20    question that Your Honor last asked Mr. Harbur, any filings

08:37 21    by Mr. Johnson's attorneys on his behalf in that proceeding

08:37 22    are attributable to Mr. Johnson because the attorneys are

08:37 23    his agents.

08:37 24        THE COURT:  Authorized statements?

08:37 25        MR. AVENATTI:  Authorized statements, Your Honor.

08:37 1   So it makes no difference if they were made by Mr. Johnson

08:37 2   directly or by his attorneys.  That's number one.

08:37 3           Number two, Mr. Harbur made a statement about

08:38 4   individuals not testifying.  Mr. Harbur does not have

08:38 5   knowledge as to who is going to testify or who is not going

08:38 6   to testify.

08:38 7           THE COURT:  Well, are you going to call those

08:38 8   people?

08:38 9           MR. AVENATTI:  I intend on calling these people.

08:38 10  I do, Your Honor, especially Ms. Mosby, likely Mr. Sims.  We

08:38 11  have already heard testimony elicited from the government

08:38 12  about their involvement in the Johnson matter.

08:38 13          THE COURT:  The question is are you going to call

08:38 14  them?

08:38 15          MR. AVENATTI:  I'm anticipating calling them.

08:38 16          THE COURT:  Mr. Stolper, Mr. Frank, all those

08:38 17  folks?

08:38 18          MR. AVENATTI:  Probably not all those folks, no,

08:38 19  Your Honor, but we're going to put on a robust defense case.

08:38 20  There's no question about that.  I'm probably not going to

08:38 21  call Mr. Frank.  I haven't made a decision about Mr. Stolper

08:38 22  yet.  My understanding is Mr. Stolper would not -- and

08:38 23  Mr. Harbur can correct me if I'm wrong -- I don't believe

08:38 24  Mr. Stolper testified in the arbitration proceeding either

08:38 25  in deposition or in the proceeding.

08:39  1          My understanding, Your Honor -- well, let me back

08:39  2  up.  The action that's filed in Superior Court, you have a

08:39  3  copy of the complaint.  Certain parties moved to compel

08:39  4  arbitration.

08:39  5          For some reason the plaintiff made a strategic

08:39  6  decision to bifurcate the proceeding and not have everything

08:39  7  proceed in arbitration.  The arbitration proceeded on a

08:39  8  parallel track with this criminal proceeding.  Ultimately a

08:39  9  decision was rendered by the arbitrator that did not reach

08:39  10  the other defendants, meaning me, certain entities, and

08:39  11  Ms. Regnier, as well as the law firm of Eagan Avenatti.

08:39  12          Then something happened that at least in my

08:39  13  experience was highly unusual.  I know -- I believe Your

08:39  14  Honor used to be on the Superior Court bench as well.  The

08:39  15  ruling from the arbitrator was never filed on the public

08:39  16  record.  I found that to be frankly unusual.

08:40  17          But in any event, Your Honor, the arbitration is

08:40  18  not confidential.  I think the relevancy of this information

08:40  19  is beyond dispute, and we would like to see -- I would like

08:40  20  to see what the testimony was relating to the potential

08:40  21  liability and fault and actions of others other than me.

08:40  22          THE COURT:  Okay.

08:40  23          MR. HARBUR:  May I respond briefly, Your Honor?

08:40  24          THE COURT:  Sure.

08:40  25          MR. HARBUR:  So as to Mr. Avenatti's statement

08:40  1   about wanting to see the testimony of Frank, Sims, and
08:40  2   others --
08:40  3          THE COURT:  Sounds like a fishing expedition.
08:40  4          MR. HARBUR:  -- it sounds like a fishing
08:40  5   expedition.  I'll stop my argument there, then.
08:40  6          THE COURT:  I'm going to quash the subpoena as to
08:40  7   Item No. 2.  I don't think the arbitrator's award would be
08:40  8   admissible in front of the jury in this case.
08:40  9          With respect to No. 2, I ask Mr. Harbur and you,
08:41  10  Mr. Avenatti, and the government to brief the issue as to
08:41  11  whether compensation by a joint tortfeasor is a defense to
08:41  12  wire fraud.  We've had testimony, I think, that Mr. Eagan
08:41  13  paid a million, five.  The evidence would indicate here that
08:41  14  some of these other individuals paid Mr. Johnson something.
08:41  15  I would like the parties to brief at their earliest
08:41  16  convenience the issue as to whether that's any defense to
08:41  17  wire fraud.
08:41  18         MR. HARBUR:  To provide a bit more detail -- this
08:41  19  may be helpful for the Court -- Mr. Sims, Mr. Frank, and
08:41  20  Frank Law were found not liable by the arbitrator.  That is
08:42  21  on the record.  Mr. Eagan, as I said, did not participate in
08:42  22  the arbitration hearing.  That matter resolved prior to
08:42  23  that.
08:42  24         THE COURT:  Did he find anyone liable?
08:42  25         MR. HARBUR:  No.  I raise that because I think it

08:42  1  further shows the irrelevancy of the information being

08:42  2  sought.

08:42  3          MR. AVENATTI:  Your Honor, as it relates to these

08:42  4  agency principles that the Court has been deciding in

08:42  5  connection with this case, especially as it relates to

08:42  6  various evidentiary objections that I have made, if the

08:42  7  arbitrator found none of these people liable, depending on

08:42  8  their agency relationship with me, that may constitute a

08:42  9  finding that I wasn't liable, depending on the scope of the

08:42  10  ruling and what their role was in connection with the law

08:42  11  firm, Your Honor.

08:42  12          THE COURT:  In other words, you would like to

08:42  13  collaterally estop the government?

08:42  14          MR. AVENATTI:  I'm not proposing collaterally

08:42  15  estopping the government.

08:43  16          THE COURT:  What's your theory then?  What's your

08:43  17  theory as to why the ruling of the arbitrator would have any

08:43  18  binding effect in this proceeding?

08:43  19          MR. AVENATTI:  Your Honor, for the exact reason I

08:43  20  just said.  If the arbitrator found that individuals that he

08:43  21  deemed to be partners of the law firm and their quasi the

08:43  22  law firm did not defraud Mr. Johnson, depending on his

08:43  23  findings, that could be highly relevant as to my purported

08:43  24  guilt or innocence in connection with this case, Your Honor.

08:43  25          THE COURT:  You can brief that but, you know, No.

08:43  1  1 for collateral estoppel, similarity of the parties or

08:43  2  party equivalents, I don't see that here at all.  For

08:43  3  present purposes, I'm quashing No. 2.

08:43  4          With respect to Nos. 3 and 4, I will await the

08:44  5  parties' briefing on the issue that I have outlined.

08:44  6          MR. AVENATTI:  And in the interim, Your Honor, I

08:44  7  understand we are going to be getting the responses back as

08:44  8  to No. 1 based on Mr. Harbur's representation?

08:44  9          MR. HARBUR:  I have thumb drives.  I can prepare

08:44  10  that in the hallway and deliver a copy to the government and

08:44  11  a copy to Mr. Avenatti.  So what it's going to be is my

08:44  12  client's deposition testimony, related exhibits, and his

08:44  13  testimony at the arbitration itself.

08:44  14          MR. AVENATTI:  And, Your Honor, I'll just note

08:44  15  that I specifically asked Mr. Johnson on the stand whether

08:44  16  he testified once or twice in the arbitration.  He testified

08:44  17  before this jury that he had only testified one time.  So

08:44  18  among other things, it's impeachment.  But we can deal with

08:44  19  that later.

08:44  20          MR. HARBUR:  I will give it to him.

08:44  21          THE COURT:  Mr. Harbur is going to provide you

08:44  22  what's there, whether he testified once, twice, or 200

08:44  23  times.  He's going to provide it.

08:45  24          Do we need Mr. Harbur to authenticate these

08:45  25  documents?

08:45  1          MR. AVENATTI:  Provided that the government will

08:45  2     stipulate to the authentication and foundation, then I won't

08:45  3     need to call Mr. Harbur.  I have no desire to call

08:45  4     Mr. Harbur.

08:45  5          MR. WYMAN:  We will so stipulate, Your Honor.

08:45  6          THE COURT:  Okay.

08:45  7          Then, sir, you will be excused from a further

08:45  8     appearance unless the Court determines that it should

08:45  9     require you to comply with Items 3 and 4.

08:45  10          MR. HARBUR:  Thank you, Your Honor.

08:45  11          I have one final request before I go in the

08:45  12     hallway and prepare those thumb drives.  Can you order the

08:45  13     parties to not use any documents I provide other than in

08:45  14     connection with this criminal matter?  As you know, I have

08:45  15     an ongoing lawsuit where my client goes against

08:45  16     Mr. Avenatti, and so I would these to not be used in other

08:45  17     proceedings that don't relate to this proceeding and this

08:45  18     Court's order for me to provide those documents.

08:45  19          THE COURT:  Any objection to that?

08:45  20          MR. AVENATTI:  Your Honor, no objection to that

08:46  21     with the proviso that obviously that does not present their

08:46  22     use in a subsequent civil matter, for instance, the matter

08:46  23     against me if so ordered by some other judicial officer.

08:46  24          THE COURT:  I can't control what other judicial

08:46  25     officers do.  Any production he makes shall be used

08:46   1   exclusively for this case and shall not be disseminated to

08:46   2   others, any and all uses of the production anyway in this

08:46   3   case.

08:46   4           MR. HARBUR:  Thank you, Your Honor.

08:46   5           THE COURT:  Okay.  Thank you.

08:46   6           Mr. Avenatti put in a brief yesterday at Docket

08:46   7   641 with regard to Special Agents DeLeassa Penland and Chris

08:46   8   Harper.  From the chart which Mr. Avenatti prepared, he

08:46   9   represents that at the five meetings at which one or more of

08:47   10  those agents were present, that there is no Central District

08:47   11  agent present.  A Melissa Galicia is identified in two of

08:47   12  the meetings.  Where is Ms. Galicia?

08:47   13          MR. AVENATTI:  She is in New York, Your Honor.

08:47   14          THE COURT:  Okay.  And references are made to

08:47   15  documents related to each meeting.  Would you please produce

08:47   16  those.

08:47   17          MR. AVENATTI:  No problem, Your Honor.

08:47   18          THE COURT:  Okay.  I had previously asked you to

08:47   19  make an offer of proof with respect to each of these agents.

08:47   20  I will delay that request until I have reviewed the content

08:47   21  of the documents.  For now, all I need is the documents.

08:48   22          MR. SAGEL:  Is defendant required to make an offer

08:48   23  of proof?

08:48   24          THE COURT:  I'm going to review the documents, and

08:48   25  then I'm going to determine whether I want an offer of

08:48  1    proof.  If there is obvious discussion in those notes of the

08:48  2    interview of this case, I would likely not quash the

08:48  3    subpoenas.  If there is none there, I would likely quash the

08:48  4    subpoenas.

08:48  5          MR. SAGEL:  I understand, Your Honor, and that was

08:48  6    going to be my point.  Is Your Honor asking him to make an

08:48  7    offer of proof of how it relates to this case?

08:48  8          THE COURT:  Right.

08:48  9          MR. SAGEL:  And these do not.  So that's why --

08:48  10         THE COURT:  Well, let's take a look at them.

08:48  11         MR. SAGEL:  Understood.

08:48  12         MR. AVENATTI:  Your Honor, when you talk about

08:48  13   relating to this case, I assume we're talking about relating

08:48  14   to the topics that the government elicited testimony from

08:48  15   Ms. Regnier about on direct.

08:48  16         THE COURT:  Sir, I'm going to review them and make

08:48  17   a determination as to whether the content of those meetings

08:49  18   as reflected in the documents related to this case.

08:49  19         MR. AVENATTI:  Understood, Your Honor.

08:49  20         THE COURT:  Okay.  How quickly can you do that?

08:49  21   Well, you're not going to call these people until your

08:49  22   case-in-chief, so early next week.

08:49  23         MR. AVENATTI:  Yes, sir.  That's correct.

08:49  24         THE COURT:  Okay.

08:49  25         MR. AVENATTI:  Your Honor, just a point of

08:49  1   clarification.  Initially they were quashed based on Touhy.

08:49  2   Are they just being held in abeyance now or --

08:49  3           THE COURT:  I think you have to have some basis to

08:49  4   subpoena somebody.  If there is no basis, I will quash the

08:49  5   subpoenas.  Let's see if there is a basis.  I would not --

08:49  6   moreover, the cases where the Court has quashed the subpoena

08:49  7   for failure to comply with Touhy, the Court -- Mr. Harbur

08:49  8   indicated that even if that's appropriate, some balancing

08:50  9   considerations need to be made.  I think the relevance or

08:50  10  lack of relevance would go into that balancing decision.

08:50  11          Moreover, I think if these people have nothing

08:50  12  relevant to offer, that's a basis in and of itself for

08:50  13  quashing the subpoenas without regard to whether Touhy

08:50  14  compliance is required.

08:50  15          MR. AVENATTI:  Understood, Your Honor.

08:50  16          THE COURT:  Okay.  Anything else we should take up

08:50  17  at this time?

08:50  18          MR. SAGEL:  Very briefly, Your Honor.  In light of

08:50  19  Your Honor's ruling yesterday with regards to Special Agent

08:50  20  Kim and Special Agent Roberson, we just want to make sure

08:50  21  that we're not -- that we understand Your Honor's position.

08:50  22          Obviously they are case agents on this matter.

08:50  23  They're not in this courtroom.  They're not going to be

08:50  24  following along obviously here.

08:50  25          THE COURT:  Right.

08:50  1            MR. SAGEL:  We are still working with them.  We
08:50  2    want to make sure that we can continue to communicate with
08:50  3    them about the case.  They know what the case is about, and
08:51  4    we can proceed as usual just without them being in the
08:51  5    courtroom.  I just want to make sure that we're not running
08:51  6    afoul.
08:51  7            THE COURT:  That's the only restriction.  Just
08:51  8    because Mr. Avenatti may wish to call them, there is no
08:51  9    basis to exclude them from their ongoing regular duties in
08:51  10   this case.
08:51  11           MR. SAGEL:  Thank you, Your Honor.
08:51  12           MR. AVENATTI:  And, Your Honor, I understand the
08:51  13   Court's ruling, but I would object to any communication of
08:51  14   any witness testimony by any witness in this matter to any
08:51  15   individual who has been excluded under 615, including those
08:51  16   two agents.
08:51  17           THE COURT:  Sir, you can't co-op them from doing
08:51  18   their normal duties.
08:51  19           MR. AVENATTI:  I'm not attempting to do so, Your
08:51  20   Honor.  I'm just --
08:51  21           THE COURT:  Sir, to the extent they need to know
08:51  22   what's going on in the courtroom to perform their duties,
08:51  23   you can't co-op them from doing that.  Moreover, you have
08:51  24   yet to file a witness list.  You have yet to commit to any
08:52  25   single witness.

08:52    1        MR. AVENATTI:  Your Honor, I'm not aware of a

08:52    2   witness list deadline, number one.  And, number two --

08:52    3        THE COURT:  Sir, I'm not saying that there is one.

08:52    4   I'm simply pointing out at this point that you have yet to

08:52    5   file one and you've yet to commit to the Court and to the

08:52    6   government any single individual you are in fact going to

08:52    7   call in your case-in-chief.

08:52    8        Indeed, although you said you intend to put on a

08:52    9   vigorous defense, we all know you don't have to make that

08:52   10   decision until the government rests.  True?

08:52   11        MR. AVENATTI:  That's true, Your Honor, but I have

08:52   12   every intention of calling witness and putting on the

08:52   13   defense case.  I'm not under an obligation to file a witness

08:52   14   list, and I'm not under an obligation to make a showing

08:52   15   before every witness that I want to call in connection with

08:52   16   my defense case similar to the fact that the government

08:52   17   wasn't required to do any of that before they started their

08:52   18   case.

08:52   19        THE COURT:  We have subpoenas here, and that's the

08:52   20   focus of the inquiry.  I agree you're not required to

08:53   21   disclose in advance the subject matter of your testimony,

08:53   22   essentially your defense.  But in the context of a subpoena,

08:53   23   I think you need to show some relevance to have those

08:53   24   enforced.

08:53   25        Now, as I indicated, I'm not requiring you to do

08:53  1    that because I want to take the first step, which may

08:53  2    eliminate the need for that, that is, to review the

08:53  3    associated interview memoranda.

08:53  4              Anything else, Mr. Sagel?

08:53  5              MR. SAGEL:  Not from the government, Your Honor.

08:53  6              THE COURT:  Mr. Avenatti.

08:53  7              MR. AVENATTI:  A few items, Your Honor.  First of

08:53  8    all, I have not been provided all of the information that I

08:53  9    am entitled to under Jencks, Brady, and Giglio as it relates

08:53  10   to Mr. Marchino.  In particular, Your Honor, I have not been

08:53  11   provided all of the e-mails and text messages relating to

08:53  12   the subject areas of Mr. Marchino's testimony as elicited by

08:53  13   Mr. Wyman on direct.

08:53  14             I have not been provided with the agreement that

08:54  15   Mr. Marchino had with Eagan Avenatti relating to how he was

08:54  16   to get paid fees and costs.  That was a topic area that

08:54  17   Mr. Wyman elicited on direct.  I don't have that agreement

08:54  18   or the correspondence about it.

08:54  19             I don't have Mr. Marchino's employment agreement

08:54  20   that touched on those same issues.  I don't have the e-mails

08:54  21   from him relating to the topics the government asked about

08:54  22   on direct.  I cannot conduct, Your Honor, a meaningful

08:54  23   cross-examination without all of the e-mails and the

08:54  24   documents that I am entitled to under Jencks and Brady and

08:54  25   Giglio.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:54   1            I just simply can't, and I can't be asked to.

08:54   2   It's a violation of my due process rights, and it's not

08:54   3   enough for the government to simply stand up and say, Your

08:54   4   Honor, we have given him everything.  I would like to see,

08:54   5   for instance, Your Honor, give me the Bates stamp number of

08:54   6   the agreement that provided that Mr. Marchino was to receive

08:55   7   50 percent of all of the cases that he sourced.

08:55   8            I would like to see the Bates stamp number of that

08:55   9   agreement because he testified to it on the stand, and I

08:55   10  don't have it.

08:55   11           THE COURT:  Sir, you are assuming that the

08:55   12  government has all these documents.  It may or it may not.

08:55   13  If it has, I agree that the government should go look for

08:55   14  those things, and I will ask the government to confirm that

08:55   15  it doesn't have any of those things.  But, sir, the

08:55   16  government's production obligation is limited to what it

08:55   17  has.

08:55   18           MR. AVENATTI:  Your Honor, I understand that and I

08:55   19  agree.  But let us be clear as to the scope of the

08:55   20  information that the government gathered beginning in 2019.

08:55   21  Your Honor, they took the entirety --

08:55   22           THE COURT:  Sir, I'm directing them to make

08:55   23  further inquiry.  We will take this up when I have heard

08:55   24  back from them.

08:55   25           MR. AVENATTI:  Understood, Your Honor.

08:55  1          I have two other very quick matters.

08:56  2          THE COURT:  Quick.

08:56  3          MR. AVENATTI:  First, Your Honor, I would like to

08:56  4    file or I would like to ensure that the demonstratives that

08:56  5    are being used on the flip chart are marked and made part of

08:56  6    the record.  I don't know what Your Honor's preference is.

08:56  7          THE COURT:  They will be marked.  You can do

08:56  8    8 x 10's of them, and they'll be marked as demonstratives,

08:56  9    except for the chart that Ms. Gardner filled out.  All the

08:56  10   stuff you have on the butcher paper is a demonstrative.  If

08:56  11   you want to mark it with an exhibit number as a

08:56  12   demonstrative, fine, but it's not going to be received as an

08:56  13   exhibit, and it won't go back to the jury.

08:56  14         MR. AVENATTI:  Your Honor, would it be acceptable

08:56  15   for me to have Ms. Cummings-Cefali just take a photograph of

08:57  16   each one and we can then file it that way?

08:57  17         THE COURT:  That's fine, you know, if it's large

08:57  18   enough to use here in court to see what's really there.

08:57  19         MR. AVENATTI:  I didn't want to run afoul of the

08:57  20   prohibition of taking pictures, Your Honor.  That's why I'm

08:57  21   asking.

08:57  22         THE COURT:  Well, you can take a picture in here,

08:57  23   or you can take the easel down to the attorneys' room where

08:57  24   you're working.

08:57  25         MR. AVENATTI:  Okay.  Thank you, Your Honor.

08:57  1          At Docket 640 the government filed a pleading -- I

08:57  2     guess it was last night -- relating to this summary that

08:57  3     they wish to -- a summary witness they wish to call next

08:57  4     Tuesday concerning Exhibits 457 and 460 through 468.  We'd

08:57  5     like an opportunity to respond to that.  They indicate

08:57  6     they're not going to call a witness until Tuesday.  Can we

08:57  7     submit a response by noon on Monday, Your Honor?

08:57  8          THE COURT:  That's fine.

08:57  9          MR. AVENATTI:  Thank you.

08:57  10         And then lastly, Your Honor, on cross-examination

08:57  11    with Mr. Marchino, I have done this before in other trials,

08:57  12    but I want to make sure I don't run afoul of Your Honor.  I

08:58  13    intend on using a page or two from the transcript on the

08:58  14    elmo.  This is from his testimony yesterday --

08:58  15         THE COURT:  That's fine.

08:58  16         MR. AVENATTI:  -- before the jury.

08:58  17         THE COURT:  That's fine.

08:58  18         MR. AVENATTI:  Okay.  Thank you.

08:58  19         THE COURT:  Okay.  We will be in recess until the

08:58  20    jury comes up.

08:58  21              (Recess taken at 8:58 a.m.;

08:58  22              proceedings resumed at 9:05 a.m.)

08:58  23         (Jury present)

09:05  24         THE CLERK:  Item 1, SACR-19-00061-JVS, United

09:05  25    States of America versus Michael John Avenatti.

09:05  1          MR. WYMAN:  Good morning, Your Honor.  Alex Wyman

09:05  2     and Brett Sagel on behalf of the United States.  And with us

09:05  3     at counsel table is Special Agent Ramon Carlos.

09:05  4          THE COURT:  Good morning.

09:05  5          MR. AVENATTI:  Good morning, Your Honor.  Michael

09:05  6     Avenatti, present with advisory counsel Mr. Dean Steward and

09:05  7     Ms. Cummings-Cefali.

09:05  8          THE COURT:  Good morning.

09:05  9          And good morning, ladies and gentlemen.

09:05  10     FILIPPO MARCHINO, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN

09:05  11          THE CLERK:  Sir, you are reminded that you are

09:05  12     still under the oath that you took yesterday.

09:05  13          THE WITNESS:  Yes, ma'am.

09:05  14          MR. WYMAN:  May I proceed, Your Honor?

09:05  15          THE COURT:  You may.

09:05  16               DIRECT EXAMINATION (Continued)

09:05  17     BY MR. WYMAN:

09:05  18     Q    Good morning, Mr. Marchino.

09:06  19     A    Good morning.

09:06  20     Q    We left off yesterday on Exhibit 274, which were your

09:06  21     text messages with Mr. Tran.  Do you recall that?

09:06  22     A    I do, yes.

09:06  23     Q    Would you please pull up Exhibit 274.  And if we could

09:06  24     go to page 14 where we left off.

09:06  25     A    (Witness complies.)  Okay.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:06    1    Q    I think at the end of the day yesterday, you read this
09:06    2    message from you, sort of taking up the second half of this
09:06    3    page.  And it reads:  "Hi.  Please give this to Long," and
09:06    4    then there's a long sequence of numbers and letters.  And
09:06    5    then it says, "This is what I received."
09:06    6    A    That's correct.
09:06    7    Q    Who drafted this message?
09:06    8    A    So the "Hi" and the "This is what I received," was my
09:06    9    doing.  The "Please give this to Long," and the sequence of
09:06   10    numbers was copied and pasted from a different text or a
09:07   11    different messaging app.
09:07   12    Q    And who was that message from?
09:07   13    A    From Mr. Avenatti.
09:07   14    Q    You mentioned yesterday that there were a few instances
09:07   15    like that where you would receive a message from the
09:07   16    defendant on a different messaging app.  What messaging app
09:07   17    was that?
09:07   18    A    It's called Signal.
09:07   19    Q    And the messages that you had with the defendant on
09:07   20    Signal, do you still have those?
09:07   21    A    I do not.
09:07   22    Q    Why is that?
09:07   23    A    It's an encrypted app, and they self-destruct.
09:07   24    Basically they erase themselves.
09:07   25    Q    Okay.  Now, this long sequence of letters and numbers,

09:07  1   do you have an understanding of what that is?

09:07  2   A    I believe that it was a tracking number or something of

09:07  3   the sort that's supposed to help find the wire.

09:07  4   Q    And when you say the wire, I know we talked about it

09:07  5   yesterday, but could you please remind the jury what you are

09:07  6   referring to?

09:07  7   A    Sure.  So there were a second set of payments that were

09:07  8   due.  The money for Michelle Phan was divided into three

09:08  9   different wires, one for about a hundred and something

09:08  10  thousand dollars, two of them for $4 million each.  The

09:08  11  hundred thousand something was received.  The first

09:08  12  $4 million one was received.  We were hunting for the second

09:08  13  $4 million one.

09:08  14  Q    So this long sequence of letters and numbers you

09:08  15  thought was some sort of tracking number for the second

09:08  16  $4 million wire?

09:08  17  A    Correct.  Yes.

09:08  18  Q    Could you go now to page 15.  At the top there it looks

09:08  19  like it's the bottom of that last text message we just

09:08  20  reviewed.  It appears to have been sent on May 10th; is that

09:08  21  right?

09:08  22  A    Yes.

09:08  23  Q    What does Mr. Tran say in response to that?

09:08  24  A    "Thanks.  I will forward to my bank."

09:08  25  Q    And your response to him?

09:08  1    A    "Okay.  Keep me posted."

09:08  2    Q    Okay.  Let's go to the next page, page 16, which

09:08  3    appears to still be on May 10th.  And you are asking for

09:09  4    news.  I take it that is still about the same missing

09:09  5    $4 million wire payment?

09:09  6    A    Yes, the news from the bank.

09:09  7    Q    And what does Mr. Tran respond to you?

09:09  8    A    He tells me that, "The bank is tracking.  Haven't heard

09:09  9    back yet."

09:09  10   Q    When he said tracking, what did you understand him to

09:09  11   mean?

09:09  12   A    Using the number that was given in the text message

09:09  13   before, on the page before or two pages before, that

09:09  14   sequence of numbers, to try and find the wire.

09:09  15   Q    And then it looks like you respond, "Okay."  And then

09:09  16   what is his next text to you?

09:09  17   A    He says, "That's not it."

09:09  18   Q    What did you do after receiving that text message from

09:09  19   Mr. Tran saying that, "That's not it"?

09:09  20   A    Well, I sent him a question mark, meaning asking,

09:09  21   trying to figure out what was happening and what he meant,

09:09  22   the fact that that's not it.

09:09  23   Q    And after you sent the question mark -- well, did you

09:10  24   talk to the defendant about Mr. Tran's message that that is

09:10  25   not it?

09:10  1            MR. AVENATTI:  Leading.

09:10  2            THE COURT:  Overruled.

09:10  3            THE WITNESS:  I did.

09:10  4  BY MR. WYMAN:

09:10  5  Q    And what did he say?

09:10  6  A    Well, at the beginning I was unclear as to whether the

09:10  7  number was the wrong number or whether the number was for

09:10  8  the wrong wire.  When he clarified that the number was just

09:10  9  nothing, I checked in with Mr. Avenatti, and I believe that

09:10  10  I received an e-mail from Mr. Avenatti that I then forwarded

09:10  11  to Mr. Tran.

09:10  12  Q    Okay.  If we could look at page 17 now, right below the

09:10  13  question mark.  It looks like you wrote, "Check your

09:10  14  e-mail," on May 11th?

09:10  15  A    Yes.  That's correct.

09:10  16  Q    Would you please turn now to Exhibit 284.

09:10  17  A    (Witness complies.)

09:10  18  Q    Do you recognize this?

09:11  19  A    I do.

09:11  20  Q    Is this an e-mail that was sent to Mr. Tran?

09:11  21  A    I do.

09:11  22  Q    And is this the same day as the text messages we were

09:11  23  just looking at on May 11th of 2018?

09:11  24  A    It is.  It's the e-mail that's referenced.

09:11  25  Q    Is it a fair and accurate copy of that e-mail?

09:11  1    A    I believe it to be, yes.

09:11  2            MR. WYMAN:  Your Honor, the government moves to

09:11  3    admit Exhibit 284.

09:11  4            MR. AVENATTI:  Objection, Your Honor.  Hearsay.

09:11  5            THE COURT:  It will be received.  Overruled.

09:11  6            (Exhibit 284 received in evidence)

09:11  7            MR. WYMAN:  If we could please pull up the first

09:12  8    e-mail.

09:12  9    BY MR. WYMAN:

09:12  10   Q    Mr. Marchino, it looks like you are forwarding an

09:12  11   e-mail to Mr. Tran that you received from the defendant; is

09:12  12   that right?

09:12  13   A    Yes, that's correct.

09:12  14   Q    And focusing on the e-mail from the defendant, was is

09:12  15   the date of that e-mail?

09:12  16   A    It's May 11, 2018.

09:12  17   Q    What is the subject of the e-mail?

09:12  18   A    Wire confirmation.pdf.

09:12  19   Q    It looks like there is an attachment to this e-mail of

09:12  20   the same title, wire confirmation; is that right?

09:12  21   A    Yes, wire confirmation.pdf.

09:12  22   Q    Going to page 2, the attachment, what is this document?

09:12  23   A    It's the attachment that was on the prior -- to the

09:12  24   e-mail rather.

09:12  25           MR. WYMAN:  If we can blow up the top portion.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:12   1   BY MR. WYMAN:

09:12   2   Q    It looks like it says amt $4 million.  Do you see that?

09:12   3   A    Where are you pointing at?

09:12   4   Q    In the middle portion below the first dotted line where

09:13   5   it says, "Amt. $4 million"?

09:13   6   A    Oh, yes.  Okay.  I see that.  Thank you.

09:13   7   Q    Do you understand that to be the amount of this wire?

09:13   8   A    Yes.

09:13   9   Q    What is the date listed on this page?

09:13   10  A    I think it's 18/05/04, which I interpret as May 4th,

09:13   11  2018.

09:13   12  Q    All right.  If you could return now to Exhibit 274,

09:13   13  your text messages, and going to page 18, please.  Now, it

09:13   14  looks like at the top there another text message from

09:13   15  Mr. Tran on the same day, May 11th.  Is this in response to

09:14   16  your e-mail?

09:14   17  A    Yes.

09:14   18  Q    What does he say?

09:14   19  A    "Great.  Thank you.  Will have our bank track this.

09:14   20  Much appreciated."

09:14   21  Q    Then at the top of page 19, it appears that Mr. Tran

09:14   22  writes, "Please check your e-mail."  Do you see that?

09:14   23  A    I do.

09:14   24  Q    Can you please look now at Exhibit 285.

09:14   25  A    (Witness complies.)  Yes.

09:14  1  Q    Do you recognize this document?

09:14  2  A    I do, yes.

09:14  3  Q    Is it an e-mail that you received from Mr. Tran on

09:14  4  May 11, 2018, that same day?

09:14  5  A    It is.

09:14  6  Q    Is it a fair and accurate copy of that e-mail?

09:14  7  A    I believe it to be, yes.

09:14  8        MR. WYMAN:  Your Honor, the government moves to

09:14  9  admit Exhibit 285.

09:14  10        MR. AVENATTI:  Objection, Your Honor.  Hearsay.

09:15  11        THE COURT:  285 will be received for notice only.

09:15  12        (Exhibit 285 received in evidence)

09:15  13        MR. WYMAN:  If you could pull up the subject of

09:15  14  the e-mail, please.

09:15  15  BY MR. WYMAN:

09:15  16  Q    Mr. Marchino, what is the subject of this e-mail?

09:15  17  A    It's a forward to Michelle Phan.

09:15  18  Q    And can you please read Mr. Tran's e-mail to you.

09:15  19  A    Sure.  It says, "Your side will need to call in to get

09:15  20  the tracking number.  It's not on the sheet, which we

09:15  21  verified with your bank."

09:15  22  Q    And below that message it looks like he forwarded the

09:15  23  e-mail to you?

09:16  24  A    He did, yes.

09:16  25  Q    And what is this e-mail that he's forwarding to you?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:16  1   A    It's an e-mail from the client advisor associate at the

09:16  2   bank where the monies were supposed to be received at.

09:16  3          MR. WYMAN:  If we could go back now, please, to

09:16  4   Exhibit 274, and now to page 22.

09:16  5   BY MR. WYMAN:

09:16  6   Q    It appears to be the same day, May 11th.  Can you

09:16  7   please read what Mr. Tran writes to you in the top there.

09:16  8   A    Sure.  He says, "Your bank is not cooperating much with

09:16  9   our bank.  They can only verify that it's a valid IMAD.

09:16  10  Could be from the first 4 million.  So we need to get both

09:16  11  IMAD numbers to reference both 4 million transactions.  The

09:16  12  only fed reference we have is 20180504A1B7A31C00013" --

09:17  13  Q    You referenced a fed ref, which I think you said

09:17  14  yesterday was to your understanding some kind of tracking

09:17  15  number.

09:17  16  A    Correct.

09:17  17  Q    And then also an IMAD or I-M-A-D.  Do you understand

09:17  18  that also to be some kind of tracking number?

09:17  19  A    Yes.  I am not much of a bank expert, but I understood

09:17  20  them to be working together, if you will.

09:17  21  Q    Okay.  If we could go to the next page, page 23 of the

09:17  22  exhibit, what is your response to Mr. Tran's message?

09:17  23  A    "Hi.  What do you mean they're not cooperating?  It's

09:17  24  2018.  How the hell can they not be in contact?  I will text

09:17  25  Michael now to get the other fed refs on this.  But have

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:17  1  they verified that it's a valid wire?"

09:17  2  Q   When you refer to Michael there, are you referring to

09:18  3  the defendant, Michael Avenatti?

09:18  4  A   I am, yes.

09:18  5  Q   And did you talk to him after this message?

09:18  6  A   I believe I did, yes.

09:18  7  Q   And what did you discuss?

09:18  8  A   The same issue, being that the numbers were not the

09:18  9  right numbers to track that second wire.

09:18  10  Q   If we could please go to page 24 now.  Toward the

09:18  11  bottom there appears to be a message from you.  Can you

09:18  12  please read what that says.

09:18  13  A   Sure.  I say, "Can you use what I e-mailed you

09:18  14  earlier?"

09:18  15  Q   I believe -- and were you referring to the e-mail you

09:18  16  received a minute ago that you forwarded from the defendant,

09:18  17  Exhibit 284?

09:18  18          MR. AVENATTI:  Objection, leading.

09:18  19          THE COURT:  Overruled.

09:19  20          THE WITNESS:  I'm just going to look at 284 just

09:19  21  to be -- yes, that's it.

09:19  22  BY MR. WYMAN:

09:19  23  Q   And what does Mr. Tran respond to you?

09:19  24  A   He says, "No.  It's only a receipt.  No IMAD or fed ref

09:19  25  on it."

09:19  1   Q    What did you understand him to mean by that?

09:19  2   A    I understood that to mean that the document that is in

09:19  3   284 was just a confirmation that the wire had been sent, but

09:19  4   it didn't have the tracking information on it, almost like a

09:19  5   payment receipt.

09:19  6   Q    Going to page 25 -- we're almost done with these -- it

09:19  7   looks like it's still May 11th.  Do you see that?

09:19  8   A    Yes.

09:19  9   Q    What does Mr. Tran text you here?

09:19  10  A    He says, "You would need to authorize your bank to talk

09:19  11  to ours.  They won't let us through as we are not the

09:19  12  client."

09:19  13  Q    And what is your response?

09:19  14  A    I respond, "But you have the federal reference number

09:20  15  and it's not my bank.  It's Michael's bank."

09:20  16  Q    What did you mean by that, that "It's not my bank.

09:20  17  It's Michael's bank"?

09:20  18  A    That I had no access, no control.  I couldn't call the

09:20  19  bank.  I couldn't look up the accounts.  I couldn't do

09:20  20  anything with it.  I could just pass information along.

09:20  21  Q    When you say Michael, again you're referring to the

09:20  22  defendant?

09:20  23  A    Mr. Avenatti, yes.

09:20  24  Q    So if it's not your bank and you couldn't communicate

09:20  25  with the bank, where are you getting information about the

09:20   1   bank that you're conveying to Mr. Tran?

09:20   2   A      From Mr. Avenatti.

09:20   3   Q      All right.  On page 26 below the end of that text

09:20   4   message we just read, what does Mr. Tran respond to you?

09:20   5   A      He says, "There should be a total of three reference

09:20   6   numbers for the individual transactions of 4 million,

09:21   7   4 million, and 168,000."

09:21   8   Q      And what did you understand him to mean by that?

09:21   9   A      That there would be three different tracking numbers,

09:21   10  one for each one of the wires.

09:21   11  Q      I want to skip ahead a few pages to page 31 of the

09:21   12  exhibit.  Is this still May 11, 2018?

09:21   13  A      Yes.

09:21   14  Q      And in the middle there, what does Mr. Tran write to

09:21   15  you?

09:21   16  A      "But this is why it would be good to authorize the

09:21   17  banks to speak to each other and figure it out."

09:21   18  Q      What is your response below that?

09:21   19  A      "I've texted Michael but nothing so far."

09:21   20  Q      Turning to page 33, are we still on May 11th?

09:22   21  A      Yes.

09:22   22  Q      What does Mr. Tran write to you here?

09:22   23  A      "Neither of us nor Michael should be spending time on

09:22   24  this.  Know you guys are busy and want to respect that.

09:22   25  Banks are closed now, so nothing we can do until Monday.

09:22  1    I'll sit tight until then."

09:22  2    Q    All right.  So that was May 11th.  Would you please

09:22  3    turn now to page 35.  At the top there it looks like the end

09:22  4    of the texts also on May 11th, and then it goes to May 14th;

09:22  5    is that right?

09:22  6    A    Yes.

09:22  7    Q    And what does Mr. Tran write to you on May 14th?

09:22  8    A    He asks if there is any update.

09:22  9    Q    What was he asking for an update on?

09:22  10   A    Finding those federal reference numbers and -- at least

09:22  11   that's what I understood it to be, that he was asking about

09:23  12   the tracking information for the missing wire.

09:23  13   Q    What did you respond to him?

09:23  14   A    "Hey.  Sorry.  None.  Checking now."

09:23  15   Q    Who were you checking with?

09:23  16   A    Mr. Avenatti.

09:23  17   Q    Go to page 36 now, please.  It appears this is still

09:23  18   May 14th?

09:23  19   A    It is.

09:23  20   Q    What does Mr. Tran ask you at the top there in that

09:23  21   text?

09:23  22   A    "What about Michael or anybody else from your office?

09:23  23   I can't wait any longer on this."

09:23  24   Q    Were you still in contact with the defendant at this

09:23  25   point about the missing wire transfer?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:23  1   A     Yes, I was.

09:23  2   Q     What was he telling you at this point?

09:23  3   A     It was difficult to communicate with him just because

09:23  4   he was very busy at that time, so it would just be very

09:23  5   sporadic answers.  But the gist of it was that the funds had

09:23  6   been sent and that they were going to track them down.

09:24  7   Q     And when you said the funds, are you referring

09:24  8   specifically to that second $4 million wire transfer?

09:24  9   A     Yes.

09:24  10  Q     Can you please take a look at Exhibit 287.

09:24  11  A     (Witness complies.)  Okay.

09:24  12  Q     Do you recognize this document?

09:24  13  A     Yes.

09:24  14  Q     Is this an e-mail chain that you forwarded to the

09:24  15  defendant?

09:24  16  A     It is.

09:24  17  Q     Is it a fair and accurate copy of that e-mail chain?

09:24  18  A     Yes, I believe it to be.

09:24  19         MR. WYMAN:  Your Honor, the government moves to

09:24  20  admit Exhibit 287.

09:24  21         MR. AVENATTI:  Objection, Your Honor.  Hearsay.

09:24  22         THE COURT:  287 will be received for notice only.

09:24  23         (Exhibit 287 received in evidence)

09:24  24  BY MR. WYMAN:

09:24  25  Q     Focusing on the e-mail at the bottom of page 1, who is

09:25   1   this an e-mail from?

09:25   2   A    From the same client associate, Boston Private, to

09:25   3   Long, to Mr. Tran.

09:25   4   Q    And what did you understand Boston Private to be?

09:25   5   A    I had asked them earlier what bank they were at,

09:25   6   meaning what bank Michelle banked at, and it was Boston

09:25   7   Private.

09:25   8   Q    So Boston Private was Michelle Phan's bank?

09:25   9   A    Yes, I understood that to be.

09:25   10  Q    Can you please read the e-mail from that banking

09:25   11  associate.

09:25   12  A    Sure.  "Dear Long.  Per our conversation the 800 number

09:25   13  for City National Bank wire department is 575-5501.  I spoke

09:25   14  with a gentleman named Oscar today and the other days that I

09:25   15  have called City National to inquire about the wire.  Please

09:25   16  let me know if I can be of any further assistance.  Thank

09:26   17  you."

09:26   18  Q    And a little bit further up the page in the middle

09:26   19  there, it looks like Mr. Tran forwarded that e-mail to you

09:26   20  with no message.  Is that right?

09:26   21  A    That's correct.

09:26   22  Q    What was your understanding of why Mr. Tran was

09:26   23  forwarding this e-mail to you?

09:26   24  A    He had been asking to put the banks in contact, and I

09:26   25  was then forwarding the information to Mr. Avenatti.  I

09:26   1    think he was sending it to me to send to Mr. Avenatti.

09:26   2    Q    Why did Mr. Tran want the banks to be in communication

09:26   3    with each other to your understanding?

09:26   4              MR. AVENATTI:  Objection, Your Honor.

09:26   5    Speculation, conjecture.

09:26   6              THE COURT:  Overruled.

09:26   7              THE WITNESS:  It was the quickest way to resolve

09:26   8    the finding of the $4 million wire.

09:26   9    BY MR. WYMAN:

09:26   10   Q    In May of 2018 when all this communication is

09:26   11   happening, did the defendant ever explain to you what

09:26   12   happened to Michelle Phan's missing $4 million wire

09:27   13   transfer?

09:27   14   A    No.

09:27   15   Q    Fast-forwarding to the end of 2018, did you have a

09:27   16   conversation with the defendant about Ms. Phan's money?

09:27   17   A    I did.

09:27   18   Q    What did he say during that conversation?

09:27   19   A    That the funds had been received and everything was

09:27   20   okay.

09:27   21   Q    To your knowledge did Ms. Phan ever receive her missing

09:27   22   $4 million wire transfer?

09:27   23             MR. AVENATTI:  Lacks foundation, Your Honor.

09:27   24             THE COURT:  Overruled.

09:27   25             THE WITNESS:  I don't believe she did.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:27  1                MR. WYMAN:  One moment, Your Honor.

09:27  2                (Government counsel conferring)

09:27  3                MR. WYMAN:  No further questions.  Thank you.

09:27  4                THE COURT:  Mr. Avenatti.

09:28  5                (Pause in proceedings)

09:28  6                MR. AVENATTI:  Your Honor, may I begin?

09:28  7                THE COURT:  You may.

09:28  8                          CROSS-EXAMINATION

09:28  9   BY MR. AVENATTI:

09:28  10  Q    Mr. Marchino, good morning.

09:28  11  A    Good morning.

09:28  12  Q    Now, when you began your testimony yesterday, you took

09:28  13  an oath to tell the truth, the whole truth, and nothing but

09:28  14  the truth; did you not?

09:28  15  A    I did.

09:28  16  Q    And you took that oath as seriously as you did when you

09:29  17  met with the government agents in connection with this case

09:29  18  and they told you that at all times you had to be a hundred

09:29  19  percent truthful, right?

09:29  20  A    Yes.

09:29  21  Q    And, in fact, you knew when you met with the government

09:29  22  agents in this case that if you lied to them, you could be

09:29  23  charged under what's called 18 USC 1001, which is making a

09:29  24  false statement to a federal agent, and it carries a penalty

09:29  25  of up to five years in prison.  You knew that; didn't you?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:29  1   A    Not with the code section, but I --yes, I guess, the

09:29  2   substance of it, yes.

09:29  3   Q    You knew if you lied to a federal agent, you could be

09:29  4   sent to prison, right?

09:29  5   A    Yes.  I mean, the substance of that, yes.

09:29  6   Q    Now, how long have you been an attorney?

09:30  7   A    About 13 years.

09:30  8   Q    Have you ever given an opening statement in a jury

09:30  9   trial?

09:30  10  A    I have not.

09:30  11  Q    Have you ever given a closing argument in a jury trial?

09:30  12  A    I have not.

09:30  13  Q    Have you ever cross-examined a witness like I'm doing

09:30  14  here today in a jury trial?

09:30  15  A    I have, yes.

09:30  16  Q    How many?  How many witnesses have you cross-examined?

09:30  17  A    A handful.

09:30  18  Q    What's a handful?  Five?

09:30  19  A    Yeah, four or five.

09:30  20  Q    Across 13 years?

09:30  21  A    Well, technically across the last two years, but, yes.

09:30  22  Q    Now, Mr. Wyman asked you about when Eagan Avenatti

09:31  23  started paying for some of the employees at the X-Law Group.

09:31  24  Do you recall that?

09:31  25  A    I do, yes.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:31  1   Q    And at that time you were in the process of winding
09:31  2   down your law practice; isn't that true?
09:31  3   A    As a result of the --
09:31  4   Q    Sir, just answer my question.  Isn't that true?
09:31  5   A    No.
09:31  6   Q    Isn't it true that at the time that Eagan Avenatti
09:31  7   started paying the overhead expenses for employees from the
09:31  8   X-Law Group, you no longer wanted to be personally
09:31  9   responsible for those expenses; isn't that true?
09:31  10  A    No.
09:31  11  Q    Did you ever tell anybody that?
09:31  12  A    I don't believe so.
09:31  13  Q    Did you ever tell Damon Rogers that?
09:31  14  A    I don't believe so.
09:31  15  Q    Who is Damon Rogers?
09:31  16  A    A friend of mine and a guy that worked with us.
09:32  17  Q    He was a guy who was working for you, and then he
09:32  18  subsequently came to work at Eagan Avenatti, correct?
09:32  19  A    Yes, that's correct.
09:32  20  Q    So why was it, sir, that you decided to have the
09:32  21  employees of the X-Law Group have their expenses paid by
09:32  22  Eagan Avenatti?
09:32  23  A    So right before that, several attorneys at Eagan
09:32  24  Avenatti had left.  And you and I met and you needed work
09:32  25  for us, and I didn't like the day-to-day.  So that's where

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

46

```
09:32   1    it came from.  You needed help.
09:32   2    Q    You didn't like the day-to-day, meaning you didn't like
09:32   3    the administrative aspects of running a law firm, right?
09:32   4    A    It's not --
09:32   5    Q    Just answer my question, sir.  You didn't like the
09:32   6    day-to-day administrative aspects of running a law firm,
09:33   7    right?
09:33   8    A    No.
09:33   9              THE COURT:  Wait a minute.  It's unclear.
09:33   10   Ambiguous.
09:33   11   BY MR. AVENATTI:
09:33   12   Q    Sir, isn't it true that one of the reasons why you
09:33   13   wanted to have Eagan Avenatti take over the overhead
09:33   14   expenses from the X-Law Group was because you did not want
09:33   15   to run the day-to-day administrative tasks?
09:33   16   A    No.
09:33   17              THE COURT:  Still ambiguous.
09:33   18   BY MR. AVENATTI:
09:33   19   Q    So that is not true; is that right?
09:33   20   A    That's correct, yes.
09:33   21   Q    Now, you testified on direct by Mr. Wyman that there
09:33   22   was an agreement between you and me that for every case that
09:33   23   you -- I think you used the word -- sourced, you would
09:34   24   personally receive 50 percent of the fees from that case.
09:34   25   Do you recall that?  Do you recall that testimony?
```

47

```
09:34   1    A    So, yes, but it wasn't me personally.  It was the X-Law
09:34   2    Group.
09:34   3    Q    Sir, what document reflects the agreement that you had
09:34   4    told the jury about relating to our supposed agreement that
09:34   5    every case that you sourced, the X-Law Group would receive
09:34   6    50 percent of the attorneys' fees?  Identify for me the
09:34   7    document.
09:34   8    A    I don't have it.
09:34   9    Q    Did you ever have a document?  Yes or no?
09:34   10   A    I never had it, no.
09:34   11   Q    Who is Kareen Graham?
09:35   12   A    I don't know.  Actually I take that back.  I think it's
09:35   13   Ms. Gardner's mom.
09:35   14   Q    Well, do you think or do you know?
09:35   15   A    I know her as Ms. Graham.  I don't know her first name.
09:35   16   So if it's Kareen, then that would be Ms. Gardner's mom.
09:35   17   Q    How many times have you communicated with her?
09:35   18   A    Several.
09:35   19   Q    How many times did you communicate with her before
09:35   20   April 1st, 2019?
09:35   21   A    None.
09:35   22   Q    Not once, right?
09:35   23   A    Yes.  That's none.
09:35   24   Q    No phone call, right?
09:35   25        MR. WYMAN:  Objection.  Asked and answered.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:35 | 1 | THE COURT:  Sustained. |
| 09:35 | 2 | BY MR. AVENATTI: |
| 09:36 | 3 | Q   Now, I want to ask you about some of the answers you |
| 09:36 | 4 | gave Mr. Wyman under that oath that you took yesterday on |
| 09:36 | 5 | direct examination. |
| 09:36 | 6 | A   Sure. |
| 09:36 | 7 | Q   Mr. Marchino, you are aware of the fact that every |
| 09:36 | 8 | question that's asked during the trial and each answer that |
| 09:36 | 9 | is given is taken down by this very able court reporter who |
| 09:36 | 10 | is sitting in front of you, right? |
| 09:36 | 11 | A   Yes, I am aware of that. |
| 09:36 | 12 | Q   And you're aware that after each day, she prepares a |
| 09:36 | 13 | transcript, a written record of all the questions that are |
| 09:36 | 14 | asked and the answers that are given.  You are aware of |
| 09:36 | 15 | that, right? |
| 09:36 | 16 | A   Of course, yes. |
| 09:37 | 17 | Q   And by the way, before you took the stand yesterday, |
| 09:37 | 18 | you reviewed the questions that Mr. Wyman was going to ask |
| 09:37 | 19 | you and generally what your answers were going to be; did |
| 09:37 | 20 | you not? |
| 09:37 | 21 | A   I did not. |
| 09:37 | 22 | Q   You had no idea what he was going to ask you when you |
| 09:37 | 23 | took the stand?  Is that your testimony? |
| 09:37 | 24 | A   No. |
| 09:37 | 25 | Q   Okay.  Thank you. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:37    1    A    That was not the question that --

09:37    2    Q    Sir, the answer is, no, that's not your testimony; is

09:37    3    that correct?

09:37    4    A    That was not the question.

09:37    5    Q    Let me ask the question.  Sir, yes or no, you had no

09:37    6    idea when you took the stand yesterday what questions

09:37    7    Mr. Wyman was going to ask you?

09:37    8    A    I had an idea of the subject matter, yes.

09:37    9    Q    (Indicating)  Can you see that, sir?

09:38   10    A    I can, yes.

09:38   11    Q    Mr. Wyman asked you about the agreement relating to the

09:38   12    sourcing of cases to the law firm?

09:38   13    A    Yes.

09:38   14    Q    And you said that there was an agreement to split them

09:38   15    50/50, right?

09:38   16    A    Yes.

09:38   17    Q    And then Mr. Wyman asked you what you meant by the term

09:38   18    source.  You recall that, right?

09:38   19    A    Yes.

09:39   20    Q    Then you were asked this question.

09:39   21            "Q    I see.  Was Ms. Gardner's case one

09:39   22         of the cases that was sourced through you?"

09:39   23            You were asked that question, right?

09:39   24    A    Yes.

09:39   25    Q    And you said?

09:39  1              "A      Indirectly so, yes."

09:39  2              That was your answer, right?

09:39  3  A    That's correct, yes.

09:39  4  Q    And then he asked you:

09:39  5              "Q      So for her case you expected to

09:39  6        receive half of the contingency fee?"

09:39  7              And you answered:

09:39  8              "A      That's correct."

09:39  9              Right?

09:39 10  A    Yes.  That's correct.

09:40 11  Q    And then you were asked:

09:40 12              "Q      When you were first hired by

09:40 13        Ms. Gardner, I think you said late 2016, where did

09:40 14        you understand her to be living at that time?

09:40 15              "A      Well, nowhere.  She was living in a

09:40 16        car."

09:40 17              Do you see that?

09:40 18  A    Yes, I see it.

09:40 19  Q    So, Mr. Marchino, please tell the jury about that very

09:40 20  first call with Ms. Kareen Graham where she retained you to

09:40 21  represent her daughter.  It never happened; did it?

09:41 22  A    Yes.  I never had a call with her before mid 2019.

09:41 23  Q    Did you ever have a call with Ms. Gardner --

09:41 24  A    I think --

09:41 25  Q    Wait.  I'm not done.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:41 | 1 | A    Sorry. |
| 09:41 | 2 | Q    Strike that.  Did you have a call with Ms. Gardner in |
| 09:41 | 3 | late 2016 during which she hired you?  Yes or no? |
| 09:41 | 4 | A    No. |
| 09:41 | 5 | Q    Ms. Gardner never hired you, sir; did she? |
| 09:41 | 6 | A    That's not correct, no. |
| 09:41 | 7 | Q    How was it that Ms. Gardner -- strike that.  Did you |
| 09:41 | 8 | have a written agreement with Ms. Gardner, sir, you? |
| 09:42 | 9 | A    I do now, yes. |
| 09:42 | 10 | Q    No.  I'm talking about back then. |
| 09:42 | 11 | A    2016? |
| 09:42 | 12 | Q    In 2016 did you have a written agreement with |
| 09:42 | 13 | Ms. Gardner? |
| 09:42 | 14 | A    I did not, no. |
| 09:42 | 15 | Q    Did you have a written agreement with her mother? |
| 09:42 | 16 | A    I did not, no. |
| 09:42 | 17 | Q    So, sir, how is it -- well, strike that.  You had no |
| 09:42 | 18 | communications with Ms. Gardner or Ms. Graham relating to |
| 09:42 | 19 | Ms. Gardner until I contacted you; isn't that true? |
| 09:42 | 20 | MR. WYMAN:  Objection.  Asked and answered. |
| 09:42 | 21 | THE COURT:  Overruled. |
| 09:42 | 22 | THE WITNESS:  That's correct.  You were the first |
| 09:42 | 23 | one to inform me about the case. |
| 09:42 | 24 | BY MR. AVENATTI: |
| 09:42 | 25 | Q    So, sir, if I was the first one that informed you, then |

```
09:42   1   how was it that you sourced the case and thus were entitled
09:42   2   to 50 percent of the fee?
09:42   3   A     So that's part of the indirectly part.  I had brought a
09:42   4   prior case to the firm of Eagan Avenatti that you had filed
09:43   5   and obtained quite a bit of publicity on.  And as a result
09:43   6   of that case is how Ms. Gardner's mom got in touch with me.
09:43   7   Q     Well, explain this to the jury.  What do you mean when
09:43   8   you say that was how she had gotten a hold of Eagan Avenatti
09:43   9   thus entitling you to 50 percent of the fee?
09:43  10   A     There was an agreement with you that the cases that I
09:43  11   would have sourced to Eagan Avenatti either directly or
09:43  12   indirectly, I would be receiving through the X-Law Group
09:43  13   50 percent of the fee.  This case fell within that.
09:43  14   Q     So your position before the jury is because you had
09:43  15   referred another case that the firm had filed and there was
09:43  16   publicity and Ms. Gardner's mother saw that publicity, that
09:44  17   somehow that entitled you to 50 percent of the fees for
09:44  18   Ms. Gardner's case?  Is that your position, sir?
09:44  19   A     That was my understanding, yes.
09:44  20   Q     And where is that understanding documented?
09:44  21   A     Between you and I?
09:44  22   Q     No, sir.  My question is where is it documented?  Do
09:44  23   you have a document that says that?
09:44  24   A     I do not have a document that says that, no.
09:44  25   Q     You took direction from me in connection with the
```

```
09:44    1    Gardner case, correct?
09:44    2    A    Yes, it is.
09:44    3    Q    You were not physically at the mediation with Judge
09:45    4    Meisinger; were you?  Yes or no, sir?
09:45    5    A    No.  I was in Italy.
09:45    6    Q    Sir, you don't know who else I spoke to in connection
09:45    7    with the Gardner case; do you?
09:45    8    A    I do not, no.
09:45    9    Q    You don't know what other direction I gave to other
09:45   10    attorneys in connection with the Gardner case; do you?
09:45   11    A    I do not, no.
09:45   12    Q    You don't know what other experts I spoke to in
09:45   13    connection with the Gardner case; do you?
09:45   14    A    That's correct, yes.
09:45   15    Q    You don't know what other work was done in connection
09:45   16    with the Gardner case other than what I told you to do,
09:45   17    right?
09:45   18    A    That's correct, yes.
09:45   19    Q    You don't know what other costs were incurred on the
09:45   20    Gardner case other than the expenses that you incurred; is
09:45   21    that right?
09:45   22    A    That's correct, yes.
09:46   23    Q    You have no firsthand knowledge about my communications
09:46   24    with Ms. Gardner; is that right?
09:46   25    A    That's true.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:46 | 1 | Q    You have no firsthand knowledge of what happened at the |
| 09:46 | 2 | mediation; do you? |
| 09:46 | 3 | A    Aside from what I partook in, no. |
| 09:46 | 4 | Q    Were you at the mediation? |
| 09:46 | 5 | A    No, but I -- |
| 09:46 | 6 | Q    Thank you. |
| 09:46 | 7 | MR. AVENATTI:  Move to strike everything after no |
| 09:46 | 8 | as nonresponsive. |
| 09:46 | 9 | THE COURT:  It will be stricken. |
| 09:46 | 10 | BY MR. AVENATTI: |
| 09:46 | 11 | Q    Now, the case that you just told the jury about where I |
| 09:46 | 12 | had filed a case and received some publicity which led to |
| 09:46 | 13 | Ms. Gardner's mother to call me, that was a case against Jim |
| 09:46 | 14 | Carrey, right? |
| 09:46 | 15 | A    That's correct, yes. |
| 09:46 | 16 | Q    And, sir, in connection with that case, isn't it true |
| 09:47 | 17 | that you presented falsified lab records in an effort to |
| 09:47 | 18 | extort the actor Jim Carrey? |
| 09:47 | 19 | MR. WYMAN:  Objection, 401, 403, and 608. |
| 09:47 | 20 | THE COURT:  Sustained. |
| 09:47 | 21 | BY MR. AVENATTI: |
| 09:47 | 22 | Q    Sir, isn't it true that as a result of that case, you |
| 09:47 | 23 | were sued for extortion and fraud by Mr. Carrey for your |
| 09:47 | 24 | conduct in presenting false evidence? |
| 09:47 | 25 | MR. WYMAN:  Same objections, Your Honor. |

09:47  1          THE COURT:  Sustained.

09:47  2   BY MR. AVENATTI:

09:47  3   Q    Isn't it true that they attempted to take your bar

09:47  4   license for your conduct in connection with that case,

09:47  5   Mr. Marchino?

09:47  6          MR. WYMAN:  Same objections, Your Honor.

09:47  7          THE COURT:  Sustained.

09:47  8          MR. AVENATTI:  Your Honor, could I have a sidebar,

09:47  9   please?

09:47  10         THE COURT:  I have read your memorandum on the

09:47  11  subject.  The law which you cite doesn't apply to those

09:48  12  questions.

09:48  13  BY MR. AVENATTI:

09:48  14  Q    Sir, isn't it true that you lied in connection with the

09:48  15  Jim Carrey case?

09:48  16         MR. WYMAN:  Same objections, Your Honor.

09:48  17         THE COURT:  Sustained.

09:48  18  BY MR. AVENATTI:

09:48  19  Q    Sir, you have a long history of presenting false

09:48  20  evidence and testimony to Courts; don't you?

09:48  21         MR. WYMAN:  Same objections, Your Honor.

09:48  22         THE COURT:  Sustained.

09:48  23  BY MR. AVENATTI:

09:48  24  Q    Sir, you entered into what is called a proffer

09:48  25  agreement in this case; did you not?

09:48  1    A    I think it was a proffer letter, yes.

09:48  2    Q    And that was an agreement that you signed with the

09:49  3    government where you acknowledge that you would provide

09:49  4    information to the government and they agreed not to use the

09:49  5    information against you in any subsequent criminal

09:49  6    proceeding, right?

09:49  7    A    I'm not quite sure of the benefits of the proffer

09:49  8    letter.  I did sign it, but I have a loose understanding of

09:49  9    it.

09:49  10   Q    Well, you understood that you signed it because you

09:49  11   believe that you potentially had criminal exposure; isn't

09:49  12   that true?

09:49  13   A    No.

09:49  14   Q    That's not true?

09:49  15              MR. WYMAN:  Asked and answered.

09:49  16              THE COURT:  Sustained.

09:49  17   BY MR. AVENATTI:

09:49  18   Q    And, sir, after you signed that proffer agreement with

09:49  19   the government, you met with the government, right?

09:49  20   A    Yes.

09:50  21   Q    Do you recall signing the agreement on or about

09:50  22   September 2nd, 2019?

09:50  23   A    Give or take, yes.

09:50  24   Q    And do you recall that you met with the government two

09:50  25   days later on September 4th, 2019?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:50 | 1 | A    I don't recall the exact date, but it's about there, |
| 09:50 | 2 | yes.  Mr. Avenatti, just to be clear, there were two |
| 09:50 | 3 | meetings. |
| 09:50 | 4 | Q    Mr. Marchino, there is no question pending. |
| 09:50 | 5 | MR. AVENATTI:  Your Honor, move to strike. |
| 09:50 | 6 | THE COURT:  It will be stricken. |
| 09:50 | 7 | BY MR. AVENATTI: |
| 09:50 | 8 | Q    And when you met with the government on September 4th, |
| 09:50 | 9 | 2019, that meeting took place for about six hours, right? |
| 09:50 | 10 | A    It was an all-day meeting, yes. |
| 09:51 | 11 | Q    You were there, Mr. Roberson, Mr. Carlos, Mr. Sagel, |
| 09:51 | 12 | and Mr. Andre, correct? |
| 09:51 | 13 | A    I don't recognize the first name, but the other three I |
| 09:51 | 14 | do recognize, yes. |
| 09:51 | 15 | Q    And at the beginning of that meeting, the government |
| 09:51 | 16 | told you about the importance of being truthful with the |
| 09:51 | 17 | government, right? |
| 09:51 | 18 | A    Yes. |
| 09:51 | 19 | Q    Just like that oath you took yesterday, right? |
| 09:51 | 20 | A    That's correct, yes. |
| 09:51 | 21 | Q    And then you had another meeting with the government |
| 09:51 | 22 | about five weeks later on October 10th, 2019, right? |
| 09:51 | 23 | A    I can't remember the date, but it sounds about right. |
| 09:52 | 24 | Q    Sir, I have written on the page the date of this |
| 09:52 | 25 | meeting, October 10th, 2019.  Do you see that? |

58

09:52  1   A    Yes, I see it.  I don't recognize the date, but it was
09:53  2   about there.
09:53  3          MR. AVENATTI:  Your Honor, one moment.  Let me see
09:53  4   if I can refresh Mr. Marchino's recollection.  Just one
09:53  5   minute.
09:53  6          (Pause in proceedings)
09:53  7          MR. AVENATTI:  Your Honor, can I approach?
09:53  8          THE COURT:  You may.
09:53  9          (Document handed to the witness)
09:53  10  BY MR. AVENATTI:
09:53  11  Q    Sir, does that document refresh your recollection that
09:54  12  you met with the government on October 10th, 2019?
09:54  13  A    That's what the document shows, yes.
09:54  14  Q    Well, do you have any reason to dispute that?
09:54  15  A    No.  I just don't have an independent recollection of
09:54  16  that date.
09:54  17  Q    And, sir, yes or no, during that meeting you
09:54  18  acknowledge that information that you had told the
09:54  19  government five weeks earlier when you met with them was
09:55  20  false?
09:55  21  A    No.
09:55  22  Q    It's about 9:58 a.m., right?
09:55  23  A    Something like that, yes.
09:55  24  Q    What's today's date?
09:55  25          MR. WYMAN:  Objection.  Relevance.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:55    1          THE COURT:  Overruled.

09:55    2          THE WITNESS:  It's August 5th, I think, or 6th --

09:55    3   4th, August 4th.

09:55    4   BY MR. AVENATTI:

09:56    5   Q    Did I write that down correctly, 9:58 a.m., August 4th,

09:56    6   sir?

09:56    7   A    Yes, you did.

09:56    8   Q    And this answer that you have just given this jury,

09:56    9   that's as truthful as all the other testimony you have given

09:56   10   in the case; isn't that true?  Yes or no?

09:56   11   A    I believe it to be, yes.

09:56   12   Q    Who is Richard Marshack?

09:57   13   A    He is the trustee in charge of the Eagan Avenatti

09:57   14   bankruptcy right now.

09:57   15   Q    And Mr. Marshack is presently suing you alleging that

09:57   16   you committed fraud associated with stealing cases and fees

09:57   17   from the law firm; isn't he?

09:57   18          MR. WYMAN:  Objection, 401, 403.

09:57   19          THE COURT:  Sustained.

09:57   20   BY MR. AVENATTI:

09:57   21   Q    Mr. Marshack is claiming that you stole fees from a

09:57   22   $10 million settlement from Eagan Avenatti; isn't he?

09:57   23          MR. WYMAN:  Same objections, Your Honor.

09:57   24          THE COURT:  Sustained.

09:57   25   BY MR. AVENATTI:

09:58   1   Q    Mr. Marshack has claimed that you submitted false

09:58   2   evidence in documents in order to keep money out of Eagan

09:58   3   Avenatti; isn't he?

09:58   4        MR. WYMAN:  Same objections, Your Honor.  I would

09:58   5   ask for a direction that the defendant move on.

09:58   6        THE COURT:  Sustained.

09:58   7   BY MR. AVENATTI:

09:58   8   Q    Now, you still represent Ms. Gardner; is that right?

09:58   9   A    That's correct, yes.

09:58   10  Q    And since April of 2019, how much money has Ms. Gardner

09:58   11  received in connection with her dispute with Mr. Whiteside?

09:59   12  A    I don't think I'm at liberty to answer that without

09:59   13  violating attorney/client.

09:59   14        MR. AVENATTI:  Your Honor, I would ask for a

09:59   15  direction, please.

09:59   16        THE COURT:  He has asserted the privilege.

09:59   17        MR. WYMAN:  Also object on 403, Your Honor.

09:59   18        MR. AVENATTI:  Your Honor, I don't think the fact

09:59   19  of the amount is privileged.  And I also believe that

09:59   20  Ms. Gardner, to the extent there was a privilege, she waived

09:59   21  it when she testified.

09:59   22        THE COURT:  Sustained.

09:59   23  BY MR. AVENATTI:

09:59   24  Q    Sir, to the best of your knowledge, did Ms. Gardner

09:59   25  receive the $250,000 provided for in the settlement

| | | |
|---|---|---|
| 09:59 | 1 | agreement with Mr. Whiteside? |
| 09:59 | 2 | MR. WYMAN:  Objection, 403. |
| 09:59 | 3 | THE COURT:  Overruled. |
| 09:59 | 4 | THE WITNESS:  Not in its entirety. |
| 09:59 | 5 | BY MR. AVENATTI: |
| 09:59 | 6 | Q    How much did she receive of that amount? |
| 10:00 | 7 | A    I do not know off the top of my head. |
| 10:00 | 8 | Q    Well, can you estimate for the jury? |
| 10:00 | 9 | A    Probably about 60 percent. |
| 10:00 | 10 | Q    So it's your testimony she received about 150 of the |
| 10:00 | 11 | 250 thousand? |
| 10:00 | 12 | A    I'm doing the math in my head.  But give or take, I |
| 10:00 | 13 | would think so, yes. |
| 10:01 | 14 | Q    Let's take a look at Exhibit 130.  Mr. Wyman asked you |
| 10:01 | 15 | about Exhibit 130 on direct. |
| 10:01 | 16 | A    Just give me one moment.  Okay. |
| 10:01 | 17 | Q    And at the top this says HondaJet 026.  Do you see |
| 10:02 | 18 | that? |
| 10:02 | 19 | A    I do, yes. |
| 10:02 | 20 | Q    Now, did you ever wire any money for the purchase of |
| 10:02 | 21 | HondaJet 026?  Yes or no? |
| 10:02 | 22 | A    No. |
| 10:02 | 23 | Q    Do you know if HondaJet 026 was ever sold? |
| 10:02 | 24 | A    I don't know. |
| 10:03 | 25 | Q    Do you know what ever happened to HondaJet 026? |

62

| | | |
|---|---|---|
| 10:03 | 1 | A    I do not, no. |
| 10:03 | 2 | Q    There is a picture at the bottom of the e-mail and on |
| 10:03 | 3 | the next page that the jury was shown when Mr. Wyman was |
| 10:03 | 4 | asking you questions.  Do you remember that? |
| 10:03 | 5 | A    I do. |
| 10:03 | 6 | Q    Yes or no, did you ever wire any money in connection |
| 10:03 | 7 | with the purchase of that jet, the jet in the picture that |
| 10:03 | 8 | Mr. Wyman showed? |
| 10:03 | 9 |         MR. WYMAN:  Asked and answered. |
| 10:03 | 10 |         THE COURT:  Overruled. |
| 10:03 | 11 | BY MR. AVENATTI: |
| 10:03 | 12 | Q    Yes or no? |
| 10:03 | 13 | A    No, I did not. |
| 10:04 | 14 | Q    Sir, Mr. Wyman asked you questions as to whether you |
| 10:04 | 15 | had been paid anything in connection with the Gardner or |
| 10:05 | 16 | Phan cases.  Do you remember that? |
| 10:05 | 17 | A    Yes. |
| 10:05 | 18 | Q    And you told this jury that you had received no money |
| 10:05 | 19 | from either one of those cases; isn't that true? |
| 10:05 | 20 | A    That's correct, yes. |
| 10:05 | 21 | Q    You received a million dollars from Eagan Avenatti on |
| 10:05 | 22 | or about June 18th, 2018; didn't you? |
| 10:05 | 23 | A    I'm not personally the X-Law Group.  But, yes, that's |
| 10:05 | 24 | correct. |
| 10:05 | 25 | Q    And it's your testimony that that million-dollar wire |

| | | |
|---|---|---|
| 10:05 | 1 | transfer had nothing to do with either the Gardner or the |
| 10:05 | 2 | Tran/Phan matter; is that correct?  Yes or no? |
| 10:06 | 3 | A    Can you repeat the question again. |
| 10:06 | 4 | Q    It is your testimony under oath before this jury that |
| 10:06 | 5 | the million dollars that you received on or about June 18th |
| 10:06 | 6 | had absolutely nothing to do with the Gardner or the |
| 10:06 | 7 | Tran/Phan matter?  Is that your testimony? |
| 10:06 | 8 | A    Yes. |
| 10:06 | 9 | Q    If we wanted to know what the purpose of the million |
| 10:06 | 10 | dollars was, what documents should we look at? |
| 10:06 | 11 | A    There was an accrual of fees owed to the X-Law Group |
| 10:06 | 12 | that I believe you and I were both keeping track of.  It |
| 10:06 | 13 | started with cases from 2013 that were settled and that were |
| 10:06 | 14 | never paid to the X-Law Group.  By the time of that wire, |
| 10:06 | 15 | the outstanding balance was about $4 million, and that |
| 10:06 | 16 | million was towards that 4 million. |
| 10:07 | 17 | MR. AVENATTI:  Your Honor, move to strike.  That |
| 10:07 | 18 | wasn't responsive to the question. |
| 10:07 | 19 | THE COURT:  It will be stricken. |
| 10:07 | 20 | MR. WYMAN:  Your Honor, he asked an open-ended |
| 10:07 | 21 | question.  That was his answer. |
| 10:07 | 22 | MR. AVENATTI:  I was asking about documentation. |
| 10:07 | 23 | BY MR. AVENATTI: |
| 10:07 | 24 | Q    Mr. Marchino, I am talking about documents. |
| 10:07 | 25 | A    So I -- |

| | | |
|---|---|---|
| 10:07 | 1 | Q    Here's my question. |
| 10:07 | 2 | A    Sure. |
| 10:07 | 3 | Q    If we wanted to show the jury the documents, whether |
| 10:07 | 4 | it's a text message or an e-mail or an agreement, a document |
| 10:07 | 5 | that reflected what the million dollars was for, what |
| 10:07 | 6 | documents are you aware of that would reflect that? |
| 10:07 | 7 | A    The retainer agreements in the Avon matter |
| 10:07 | 8 | class-action, the retainer agreements in the Majak Hieb |
| 10:07 | 9 | (phonetic) matter, and the settlement agreements in both |
| 10:07 | 10 | those matters.  Those total about 1.8 million. |
| 10:08 | 11 |           MR. AVENATTI:  Move to strike everything after |
| 10:08 | 12 | matters as nonresponsive. |
| 10:08 | 13 |           THE COURT:  It will be stricken. |
| 10:08 | 14 | BY MR. AVENATTI: |
| 10:08 | 15 | Q    Sir, are you aware of an e-mail communication |
| 10:08 | 16 | establishing what the million dollars was for?  Yes or no? |
| 10:08 | 17 | A    No. |
| 10:08 | 18 | Q    Are you aware of a spreadsheet establishing what the |
| 10:08 | 19 | million dollars was for? |
| 10:08 | 20 | A    Yes. |
| 10:08 | 21 | Q    Do you still have the spreadsheet?  Yes or no? |
| 10:08 | 22 | A    I believe I probably do, yes. |
| 10:08 | 23 | Q    Have you ever given it to the government? |
| 10:08 | 24 | A    I don't know.  Maybe.  I can't recall as I sit here. |
| 10:08 | 25 | Q    Did they ever ask you for the spreadsheet that shows |

10:08  1    what this million-dollar payment in June of 2018 was for?

10:08  2    A    I can't recall honestly.  I don't know.

10:09  3    Q    Now, before you incurred costs in connection with the

10:09  4    Gardner matter, there were a number of cases that you had

10:09  5    referred to the firm or asked the firm, meaning Eagan

10:09  6    Avenatti, to get involved with, right?

10:09  7    A    I don't understand the question.

10:09  8    Q    Sir, before early 2017, before your trip to Italy,

10:09  9    there were a number of cases that you had referred to Eagan

10:10  10   Avenatti; is that right?

10:10  11   A    Yes.

10:10  12   Q    And there were a number of cases that you had asked me

10:10  13   and Eagan Avenatti to get involved with, right?

10:10  14   A    That's correct, yes.

10:10  15   Q    And in connection with a number of those cases, the

10:10  16   firm Eagan Avenatti expended monies, right?

10:10  17   A    Yes, I believe so.

10:10  18   Q    And in connection with those matters, me and the other

10:10  19   attorneys at Eagan Avenatti expended a lot of time, right?

10:10  20   A    I don't know what cases you're talking about, but, yes.

10:10  21   Generally, yes.

10:10  22   Q    One of the cases around this time period was the Jim

10:10  23   Carrey case that we referenced earlier, correct?  It's just

10:10  24   a yes-or-no question.

10:10  25           MR. WYMAN:  401 and 403.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:10 | 1 | THE COURT:  Overruled. |
| 10:10 | 2 | THE WITNESS:  Can you ask the question again? |
| 10:10 | 3 | BY MR. AVENATTI: |
| 10:10 | 4 | Q    Sure.  One of the cases around this time period was the |
| 10:10 | 5 | Jim Carrey case, correct? |
| 10:11 | 6 | A    That's correct, yes. |
| 10:11 | 7 | Q    And you're aware that in connection with that case, a |
| 10:11 | 8 | lot of time was spent by me and other attorneys at the firm |
| 10:11 | 9 | on that matter, correct? |
| 10:11 | 10 | A    Yes. |
| 10:11 | 11 | Q    And you're aware that a lot of expenses were incurred |
| 10:11 | 12 | in connection with that matter, right? |
| 10:11 | 13 | A    Yes. |
| 10:11 | 14 | Q    There was another case that you had -- well, strike |
| 10:11 | 15 | that.  And how much money was recovered for the fees and the |
| 10:11 | 16 | costs spent in connection with the Jim Carrey matter? |
| 10:11 | 17 | MR. WYMAN:  Objection, relevance. |
| 10:11 | 18 | THE COURT:  Overruled. |
| 10:11 | 19 | THE WITNESS:  As I sit here, I don't recall. |
| 10:11 | 20 | BY MR. AVENATTI: |
| 10:11 | 21 | Q    Let me help you.  How about zero?  Does that sound |
| 10:11 | 22 | about right, Mr. Marchino?  You don't recall zero? |
| 10:11 | 23 | A    What I was about to say is I don't recall the monetary |
| 10:11 | 24 | part, but there was no recovery on my behalf. |
| 10:12 | 25 | Q    Mr. Marchino, you were at the mediation of that matter, |

10:12  1    right?

10:12  2    A    I was, yes.

10:12  3    Q    Okay.  It's your testimony under oath that you don't

10:12  4    recall that after all the work and all the expenses by

10:12  5    people at Eagan Avenatti, that we got nothing?

10:12  6    A    That's what I said.  Yes, you didn't get anything.

10:12  7    Q    And we didn't get anything because of the fraudulent

10:12  8    lab records that you caused to be interjected into the case;

10:12  9    isn't that true?

10:12  10           MR. WYMAN:  Objection, 401, 403, 608.  I would ask

10:12  11   the Court to direct the defendant to move on from this line

10:12  12   of questioning.

10:12  13           THE COURT:  Sustained.

10:12  14           We'll take the mid-morning break here.

10:12  15           Ladies and gentlemen, we will be recess for 15

10:12  16   minutes.  Please remember the admonition not to discuss the

10:13  17   case with anyone and not to form any opinions on the issues

10:13  18   in the case until it is submitted to you.  And please do not

10:13  19   do any research on the case.

10:13  20           (Jury not present)

10:13  21           MR. SAGEL:  May the witness step down?

10:13  22           THE COURT:  You may step down, sir.

10:13  23           I want to revisit my ruling on two questions.  The

10:14  24   witness is asked:  "Sir, isn't it true that in that case,

10:14  25   the Carrey case, you were sued for extortion and fraud by

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:14   1   Mr. Carrey for your conduct in presenting false evidence?"

10:14   2           Why wouldn't that be under 608(b) where the Court

10:14   3   may on cross-examination allow them to be inquired into if

10:14   4   they are probative of the character for truthfulness or

10:14   5   untruthfulness?

10:14   6           MR. WYMAN:  The fact that he was sued, Your Honor?

10:14   7           THE COURT:  Right.

10:14   8           MR. WYMAN:  Your Honor, I guess our position on

10:14   9   that particular issue is that the fact that he was sued

10:14  10   simply establishes unproven allegations.  I don't believe

10:14  11   the defendant has a good-faith basis for asking if he

10:14  12   actually did that.

10:15  13           MR. AVENATTI:  Your Honor, my good-faith basis is

10:15  14   I lived it.  Let me just finish.

10:15  15           THE COURT:  You're not putting yourself forward as

10:15  16   a witness; are you?

10:15  17           MR. AVENATTI:  I'm not, Your Honor, but let me

10:15  18   explain for the record my good-faith basis.  Mr. Marchino

10:15  19   brought that case to the firm.  We filed the case based on

10:15  20   what Mr. Marchino told us and the information that he

10:15  21   provided.

10:15  22           Mr. Carrey was initially represented by an

10:15  23   attorney by the name of Marty Singer.  He then changed

10:15  24   lawyers to an attorney by the name of Ray Boucher.

10:15  25   Mr. Boucher was an attorney I'd known for a long time.

10:15  1        Mr. Boucher called me on a Friday afternoon as I
10:15  2   recall, and he told me that they had figured out that the
10:15  3   documentation that Mr. Marchino had provided, the lab
10:15  4   records from the decedent who he was a former girlfriend of
10:16  5   Mr. Carrey's, had been falsified, doctored.
10:16  6        Mr. Boucher said that he didn't believe I had
10:16  7   anything to do with it because he knew me and knew -- and
10:16  8   had known me a long time and knew how I practiced law.
10:16  9        You know, Mr. Sagel, I don't think your laughing
10:16  10  is appropriate, frankly.  This is a serious case and --
10:16  11       MR. SAGEL:  More serious than any other criminal
10:16  12  case in the country, I agree.
10:16  13       MR. AVENATTI:  I'm going to ignore that, Your
10:16  14  Honor.
10:16  15       Mr. Boucher said, however, they had significant
10:16  16  evidence that Mr. Marchino knew about this and was involved.
10:16  17  In the weeks that followed it was discovered in fact that
10:16  18  Mr. Marchino did know about it and he was involved.
10:16  19       THE COURT:  I have enough on that.  It seems to be
10:17  20  in the same category of questions about:  Mr. Marshack is
10:17  21  presently suing you for allegedly committing fraud
10:17  22  associated with stealing cases from the law firm.
10:17  23       MR. AVENATTI:  And, Your Honor, I think that's
10:17  24  even more relevant for this reason.  Mr. Marshack is a
10:17  25  bankruptcy trustee who is operating under the U.S. Trustee

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:17  1  who is part of the Department of Justice.  So the government

10:17  2  has called a witness to the stand who is being sued

10:17  3  basically by the U.S. Trustee's Office for fraud associated

10:17  4  with hiding and stealing fees.

10:17  5      I think it goes directly to his trustworthiness

10:17  6  and his credibility before the jury.

10:17  7      THE COURT:  I'm going to let you go back and reask

10:17  8  the Carrey questions.  We're not going to go very long into

10:17  9  that.  The same thing with the Marshack lawsuit, you can go

10:18  10  into it but we're not going to go into it for any extended

10:18  11  period.

10:18  12      MR. AVENATTI:  Thank you, Your Honor.

10:18  13      THE COURT:  I think it does fall within 608.

10:18  14      MR. SAGEL:  It's not my witness, but just with

10:18  15  regards to the Marshack one because I am very familiar, I

10:18  16  just want to point out that he may be opening the door

10:18  17  because he's involved in that fraud with regards to the

10:18  18  allegation.

10:18  19      MR. AVENATTI:  I don't agree with that.

10:18  20      THE COURT:  I can only rule on things that are

10:18  21  before me.  If it turns out as you suggest, you can argue

10:18  22  it.

10:18  23      MR. SAGEL:  Thank you.

10:18  24      MR. WYMAN:  Your Honor, I just have one question.

10:18  25  I understand that the Court is going to allow the defendant

10:18   1   to ask limited questions on those two areas.  I would ask,

10:18   2   though, that in instances in which the Court sustains

10:18   3   objections to lines of questioning that the defendant be

10:18   4   required to move on.

10:18   5          For both of those Your Honor sustained the

10:18   6   objections and he continued to ask the questions simply to

10:18   7   put it before the jury.  It's particularly important given

10:18   8   that the defendant is representing himself, and so he is

10:19   9   essentially attempting to testify to the jury about things

10:19   10  that are not in evidence.  I would just ask that the Court

10:19   11  direct him to move on when the Court sustains objections.

10:19   12          MR. AVENATTI:  Your Honor, I'd ask the Court --

10:19   13          THE COURT:  The Court will exercise its discretion

10:19   14  to either terminate or to admit further questioning after

10:19   15  the Court has sustained an objection.

10:19   16          MR. WYMAN:  Thank you, Your Honor.

10:19   17          MR. AVENATTI:  Your Honor, when would you like us

10:19   18  back?

10:19   19          THE COURT:  How much time do you need?

10:19   20          MR. AVENATTI:  If I could have until 10:35, that

10:19   21  would be great.

10:19   22          THE COURT:  That's fine.

10:19   23          MR. AVENATTI:  Thank you.

10:19   24              (Recess taken at 10:19 a.m.;

10:19   25               proceedings resumed at 10:37 a.m.)

| | | |
|---|---|---|
| 10:19 | 1 | (Jury present) |
| 10:37 | 2 | THE COURT:  Ladies and gentlemen, I'm going to |
| 10:37 | 3 | allow Mr. Avenatti to go back to a couple of very select |
| 10:37 | 4 | areas to do some questioning. |
| 10:37 | 5 | Mr. Avenatti. |
| 10:37 | 6 | MR. AVENATTI:  Thank you, Your Honor. |
| 10:37 | 7 | BY MR. AVENATTI: |
| 10:37 | 8 | Q    Mr. Marchino, isn't it true that on or about |
| 10:37 | 9 | September 29, 2017, Jim Carrey sued you and the X-Law Group |
| 10:37 | 10 | claiming that you had engaged in fraud and extortion as part |
| 10:37 | 11 | of an attempt to obtain millions of dollars from Mr. Carrey? |
| 10:38 | 12 | Isn't that true?  Yes or no, sir? |
| 10:38 | 13 | A    Yes, I believe so. |
| 10:38 | 14 | Q    And one of the allegations in that claim was that you |
| 10:38 | 15 | had made demands upon Mr. Carrey to pay several million |
| 10:38 | 16 | dollars to you and your client, and if he refused to pay, |
| 10:38 | 17 | you were going to go to the press and accuse him of giving |
| 10:38 | 18 | your client STDs when you knew that to be false.  Wasn't |
| 10:38 | 19 | that one of the allegations made against you, sir? |
| 10:38 | 20 | A    I don't remember.  I don't have the Complaint, but it |
| 10:38 | 21 | sounds familiar. |
| 10:38 | 22 | MR. AVENATTI:  Your Honor, can I approach? |
| 10:38 | 23 | THE COURT:  You may. |
| 10:38 | 24 | (Document handed to the witness) |
| 10:39 | 25 | BY MR. AVENATTI: |

| | | |
|---|---|---|
| 10:39 | 1 | Q    Directing your attention to paragraph 17, sir.  My |
| 10:39 | 2 | question to you is:  Does that refresh your recollection? |
| 10:39 | 3 | A    Give me one second so I can read it. |
| 10:39 | 4 |          (Witness reading document)  It does, yes. |
| 10:40 | 5 | Q    And it is true, is it not, that one of the allegations |
| 10:40 | 6 | was exactly as I stated?  Correct?  Yes or no? |
| 10:40 | 7 | A    No. |
| 10:40 | 8 | Q    Isn't it true that one of the allegations was that in |
| 10:40 | 9 | February and March 2013, you and the X-Law Group began |
| 10:40 | 10 | making demands upon Mr. Carrey to pay your client several |
| 10:40 | 11 | million dollars or she would publicly accused Mr. Carrey of |
| 10:40 | 12 | giving her STDs, and at the time that you made those |
| 10:41 | 13 | representations, that you knew them to be false?  Isn't that |
| 10:41 | 14 | one of the allegations sir?  Yes or no? |
| 10:41 | 15 | A    No.  It's not the entirety of the allegation. |
| 10:41 | 16 | Q    Sir, I'm not asking you if that's the entirety of the |
| 10:41 | 17 | allegation.  Isn't that one of the allegations that |
| 10:41 | 18 | Mr. Carrey made against you on or about September 29th, |
| 10:41 | 19 | 2017? |
| 10:41 | 20 | A    No. |
| 10:41 | 21 |          MR. AVENATTI:  Your Honor, at this time I would |
| 10:41 | 22 | like to use paragraph 17 only of the document marked as |
| 10:41 | 23 | Exhibit 1053 as impeachment. |
| 10:41 | 24 |          MR. WYMAN:  Objection.  Hearsay. |
| 10:41 | 25 |          THE COURT:  Overruled. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:41  1          MR. AVENATTI:  Thank you, Your Honor.

10:42  2          MR. WYMAN:  Your Honor, he asked for paragraph 17,

10:42  3  and he's displaying the face of the Complaint.

10:42  4          MR. AVENATTI:  Your Honor, for foundational

10:42  5  purposes --

10:42  6          THE COURT:  That's fine.

10:42  7          MR. AVENATTI:  I'm sorry?

10:42  8          THE COURT:  That's fine.

10:42  9          MR. AVENATTI:  Thank you.

10:42  10  BY MR. AVENATTI:

10:42  11  Q    That's the date on the first page; right, sir?

10:42  12          THE COURT:  Do you have the page 17 -- or

10:42  13  paragraph 17?

10:42  14  BY MR. AVENATTI:

10:42  15  Q    Sir, please read paragraph 17 as displayed presently

10:42  16  for the jury.  Please read that paragraph into the record.

10:42  17  A    The entirety?

10:42  18  Q    Yes.

10:42  19  A    Okay.

10:42  20          "Soon after in February and March 2013, after Cat

10:43  21  and Jim had broken up for good, Cat, through cross-defendant

10:43  22  Filippo Marchino, the X-Law Group, and Does 1 through 10,

10:43  23  began making demands upon Jim to pay her several millions of

10:43  24  dollars or she would publicly accuse him of giving her STDs.

10:43  25  At the time she falsely claimed that she had been tested

| | | |
|---|---|---|
| 10:43 | 1 | prior to meeting Jim and was completely clean. |
| 10:43 | 2 | "She and cross-defendant Filippo Marchino made |
| 10:43 | 3 | these representations, knowing them to be false.  In fact |
| 10:43 | 4 | they knew she had herpes I and herpes II before meeting Jim |
| 10:43 | 5 | and a history of breakouts and infections. |
| 10:43 | 6 | During this time cross-defendant Filippo Marchino |
| 10:43 | 7 | and Mark Burton, along with her therapist Cynthia Cohen, |
| 10:44 | 8 | encouraged, pressured, and/or pushed Cat to get millions of |
| 10:44 | 9 | dollars from Jim and to take him for all that she could. |
| 10:44 | 10 | For her part Cat was angry and upset by the breakup and |
| 10:44 | 11 | wanted to hurt Jim as badly as she could." |
| 10:44 | 12 | Q    Mr. Carrey also alleged that for over a year, a year |
| 10:44 | 13 | and a half, in fact, that you and the X-Law Group had |
| 10:44 | 14 | conspired with Cat to extort money and property from |
| 10:44 | 15 | Mr. Carrey through false and fraudulent representations. |
| 10:44 | 16 | Isn't that true, that that is what he alleged? |
| 10:44 | 17 | A    Are you referring to paragraph 18? |
| 10:45 | 18 | Q    I'm just asking you if that's what he alleged.  Yes or |
| 10:45 | 19 | no? |
| 10:45 | 20 | A    Sort of.  That's part of it, yes. |
| 10:45 | 21 | THE COURT:  Let's move on to another topic. |
| 10:45 | 22 | MR. AVENATTI:  Your Honor, can I have one |
| 10:45 | 23 | question? |
| 10:45 | 24 | THE COURT:  Move on to another topic, please. |
| 10:45 | 25 | BY MR. AVENATTI: |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:45    1    Q    Did the government ever ask you about these allegations
10:45    2    when you met with them?
10:45    3    A    They did not, no.
10:46    4    Q    Please take a look at Exhibit 265.
10:47    5    A    (Witness complies.)  Okay.  I have it.
10:47    6         MR. AVENATTI:  Can we please have 265 for the
10:47    7    benefit of the jury.
10:47    8    BY MR. AVENATTI:
10:47    9    Q    Do you recall that Mr. Wyman asked you some questions
10:48   10    about this e-mail and the attachment?  Do you remember that?
10:48   11    A    I don't recall there being an attachment, but I
10:48   12    remember the e-mail.
10:48   13         MR. AVENATTI:  Well, let's blow up the top,
10:48   14    please.
10:48   15         THE WITNESS:  What I meant is we don't have the
10:48   16    attachment to this exhibit.
10:48   17    BY MR. AVENATTI:
10:48   18    Q    Why not?
10:48   19    A    What?
10:48   20    Q    Why not?
10:48   21         MR. WYMAN:  Objection.  Relevance.  Calls for
10:48   22    speculation.
10:48   23         THE COURT:  Overruled.
10:48   24         THE WITNESS:  I have no idea.  I didn't produce
10:48   25    this e-mail.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:49   1   BY MR. AVENATTI:

10:49   2   Q    You answered questions about it, though, right?

10:49   3   A    I did, yes.

10:49   4   Q    Okay.  Do you see at the bottom there is an attachment

10:49   5   there, right?  Do you see that?  That's a zip file, right?

10:49   6   A    Yes, that's correct.

10:49   7   Q    But that's not part of this exhibit; is it?

10:49   8   A    It's not, not that I can see.

10:49   9   Q    Now let's go down further on the page, the next e-mail.

10:49   10  Those are three more attachments, right?

10:49   11  A    That's correct, yes.

10:49   12  Q    Where are those?

10:49   13  A    Same answer.  I don't know.

10:49   14  Q    Let's go to the top of the third page.  There is

10:50   15  another attachment there at the top of the third page.  Do

10:50   16  you see that?

10:50   17  A    I do, yes.

10:50   18  Q    Where is that attachment?

10:50   19  A    Same answer.  I don't know.

10:50   20  Q    Did you speak with the government about Exhibit 265

10:50   21  before you took the stand yesterday?

10:50   22  A    I'm not sure.  I can't recall.  It was 2019 when I met

10:50   23  with them, so I can't really recall.

10:50   24  Q    Well, you met with them also in July; did you not,

10:50   25  Mr. Marchino?

| | | |
|---|---|---|
| 10:50 | 1 | A    I did, yes. |
| 10:50 | 2 | Q    Okay.  Thank you.  And you don't have a recollection of |
| 10:51 | 3 | what documents you reviewed with the government in the last |
| 10:51 | 4 | six weeks in preparation for your testimony in this federal |
| 10:51 | 5 | criminal trial; is that right? |
| 10:51 | 6 | A    I don't recall this being one of them.  It could have |
| 10:51 | 7 | been, but I don't have a specific recollection of it. |
| 10:51 | 8 | Q    Do you ever have a recollection of asking the |
| 10:51 | 9 | government -- well, strike that.  Do you have a recollection |
| 10:51 | 10 | of ever asking anyone at the government for the attachments |
| 10:51 | 11 | before you started answering questions about the e-mail? |
| 10:51 | 12 | A    No. |
| 10:51 | 13 | Q    Take a look at 266 -- well, actually go back to 265 for |
| 10:51 | 14 | a minute.  I apologize. |
| 10:52 | 15 |      You were a party to these e-mails that are |
| 10:52 | 16 | attached at 265, right? |
| 10:52 | 17 | A    Yes, I was. |
| 10:52 | 18 | Q    Well, do you have a recollection of anyone ever asking |
| 10:52 | 19 | you for the attachments? |
| 10:52 | 20 | A    No. |
| 10:52 | 21 | Q    Let's go to 266.  You recall you were asked about 266 |
| 10:52 | 22 | on direct from Mr. Wyman, right? |
| 10:52 | 23 | A    Yes. |
| 10:52 | 24 | Q    And you were asked about this attorney/client fee |
| 10:52 | 25 | contract that is attached at pages 3 through 5 of |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:52 | 1 | Exhibit 266.  Do you recall that? |
| 10:52 | 2 | A    I do, yes. |
| 10:52 | 3 | Q    Sir, you had no involvement in the negotiation of this |
| 10:53 | 4 | agreement; did you? |
| 10:53 | 5 | A    That's correct. |
| 10:53 | 6 | Q    So you have no idea what communications occurred about |
| 10:53 | 7 | this agreement.  Am I right about that? |
| 10:53 | 8 | A    I was copied on some of them, but the majority I was |
| 10:53 | 9 | not. |
| 10:53 | 10 | Q    But you don't have any firsthand knowledge about what I |
| 10:53 | 11 | said or what others may have said in connection with this |
| 10:53 | 12 | agreement.  Is that fair? |
| 10:53 | 13 | A    That's correct. |
| 10:53 | 14 | Q    And you are not a party to this agreement, meaning a |
| 10:53 | 15 | signatory; are you? |
| 10:53 | 16 | A    I'm not a signatory.  You're right. |
| 10:53 | 17 | Q    So is it fair to say that you have no idea what my |
| 10:53 | 18 | intention was in entering into this agreement?  Is that |
| 10:53 | 19 | right? |
| 10:54 | 20 | A    Yes. |
| 10:54 | 21 | Q    Okay.  And you don't have any knowledge of what |
| 10:54 | 22 | Mr. Tran or Ms. Phan's intentions were when they entered |
| 10:54 | 23 | into this agreement either; do you? |
| 10:54 | 24 | A    You are right.  Yes, I have no idea. |
| 10:54 | 25 | Q    Mr. Wyman asked you about the circumstances under which |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:54   1    Mr. Tran had contacted you looking for an attorney.  I

10:54   2    believe you said it was in either late 2016 or early 2017;

10:54   3    is that right?

10:54   4    A    That's correct, yes.

10:54   5    Q    And I believe what you testified to was that there were

10:55   6    issues at IPSY and Michelle, meaning Ms. Phan, wanted out.

10:55   7    They wanted to get a buyout, correct?

10:55   8    A    Yes.

10:55   9    Q    And then I think Mr. Wyman asked you a couple of

10:55   10   additional questions about that, and you said that they

10:55   11   wanted to sell their equity, right?

10:55   12   A    Yes, their shares.

10:55   13   Q    And at the time the company was not permitting them to

10:55   14   sell their equity, right?

10:55   15        MR. WYMAN:  Objection -- the Court's prior ruling

10:55   16   on the motion in-limine, Your Honor.

10:55   17        MR. AVENATTI:  I'm just following up on the

10:55   18   questions on direct, Your Honor.  It's going to be limited.

10:55   19        THE COURT:  Overruled.

10:55   20   BY MR. AVENATTI:

10:55   21   Q    The question is:  At the time the company was not

10:55   22   permitting Mr. Tran or Ms. Phan to sell their equity,

10:55   23   correct?

10:56   24   A    Correct.

10:56   25   Q    And at that time the company was not -- meaning IPSY --

10:56  1    they were not publicly traded, so this was not something
10:56  2    where you could just go to a brokerage house and sell your
10:56  3    shares, right?
10:56  4    A    That's correct.
10:56  5    Q    It was going to require a negotiation; is that right?
10:56  6    A    Yes.
10:56  7    Q    And is it fair to say that at the time it was a very
10:56  8    contentious situation?  Yes or no?
10:56  9    A    Yes.
10:56  10   Q    And you testified that your expectation was that
10:56  11   because, according to you, you had sourced this client, that
10:56  12   you were going to get 50 percent of the fee, right?
10:57  13   A    That's correct.
10:57  14   Q    Are you aware of a written document, either typed or in
10:57  15   handwriting, establishing that you were going to get
10:57  16   50 percent of the fee?  Yes or no?
10:57  17   A    Yes.
10:57  18   Q    What document are you aware of?
10:57  19   A    I believe there was a 2-200 signed to bring us to the
10:57  20   agreement.
10:57  21   Q    What is a 2-200?
10:57  22   A    It's a fee-sharing notification letter that's given to
10:57  23   the client in terms of the disbursement of their fees, if
10:57  24   you will, the attorney fees.
10:57  25   Q    Where is that agreement, if it exists?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:58   1   A    Actually I take that back.  I think it was -- now that
10:58   2   I think about it --
10:58   3   Q    Wait.  Wait.
10:58   4            THE COURT:  Let him finish his answer, please.
10:58   5            MR. AVENATTI:  That's fine, Your Honor.  It's
10:58   6   nonresponsive.
10:58   7            THE COURT:  He didn't finish his answer.
10:58   8            THE WITNESS:  I was saying that now that I have
10:58   9   just a second to think about it, I think this contract
10:58  10   constituted the 2-200 because it mentioned me by name in it.
10:58  11   It said that the firm was free to hire me and that should
10:58  12   suffice for the 2-200 purpose.
10:58  13   BY MR. AVENATTI:
10:58  14   Q    Well, it has no reference to 2-200 in it; does it?
10:58  15   A    It does not.
10:58  16   Q    Okay.  So now you recall that there was no 2-200 in
10:58  17   connection with this agreement; is that right?
10:58  18   A    That's correct, yes.
10:58  19   Q    My question initially was what document you are aware
10:59  20   of that stated that you were entitled to 50 percent of the
10:59  21   fees from this matter, and you answered, "the 2-200."  Do
10:59  22   you recall that testimony?  Yes or no?
10:59  23   A    Yes.
10:59  24   Q    All right.  Now that we have established there was no
10:59  25   2-200, what is the document that we could direct the jury's

| 10:59 | 1 | attention to that supposedly reflects that you were entitled |
| 10:59 | 2 | to 50 percent of the fees from this matter? |
| 10:59 | 3 | A    I don't think there is one. |
| 10:59 | 4 | Q    Around the time of the execution of this agreement, you |
| 10:59 | 5 | had the understanding that the fees from this matter were |
| 10:59 | 6 | likely to be in the millions of dollars; did you not?  Yes |
| 10:59 | 7 | or no? |
| 10:59 | 8 | A    Yes. |
| 11:00 | 9 | Q    Mr. Wyman then asked you a number of questions about |
| 11:00 | 10 | what had happened relating to the negotiation of the |
| 11:00 | 11 | settlement with IPSY.  Do you recall those questions |
| 11:00 | 12 | generally? |
| 11:00 | 13 | A    Yes. |
| 11:00 | 14 | Q    Mr. Marchino, you really weren't involved with the |
| 11:00 | 15 | negotiations as they related to the matter; were you? |
| 11:00 | 16 | A    I was, yes. |
| 11:00 | 17 | Q    You were involved? |
| 11:00 | 18 | A    I was, yes. |
| 11:00 | 19 | Q    Tell me about your communications that you had with the |
| 11:00 | 20 | executives at IPSY relating to the resolution? |
| 11:00 | 21 | A    I was on several phone calls.  I was copied on a few of |
| 11:01 | 22 | the e-mails that were substantive.  I was taking care of |
| 11:01 | 23 | Michelle and Long when we had to meet with them.  So I think |
| 11:01 | 24 | I was involved, yes. |
| 11:01 | 25 | Q    Mr. Marchino, my question is a little different.  I |

84

11:01  1    want to know about your communications on behalf of Mr. Tran

11:01  2    and Ms. Phan with the other side in what you described as

11:01  3    the very contentious situation, quote, to say the least.

11:01  4    That's what I'm getting at.  You didn't have any of those

11:01  5    communications; did you?

11:01  6    A    I did have them, with you.

11:01  7    Q    I'm not asking about your communications with me, sir.

11:01  8    My communications are -- my question is very simple and

11:01  9    straightforward.  Let me ask it again so that you're not

11:01  10   confused.

11:01  11           Mr. Marchino, I was the one that was negotiating

11:01  12   the resolution with the executives and the attorneys at

11:02  13   IPSY, correct?

11:02  14   A    You were taking the lead.  That's correct.

11:02  15   Q    Your involvement as it relates to negotiating the terms

11:02  16   with the other side was de minimis at best; isn't that true?

11:02  17   A    I mean, no, I would not describe it as de minimis but

11:02  18   not as involved as yours.

11:02  19   Q    Which terms did you negotiate with the other side

11:02  20   relating to the resolution?

11:02  21   A    By myself, none.

11:03  22   Q    Prior to this date how much involvement or experience

11:03  23   did you have negotiating exits -- equity entrance/exits from

11:03  24   privately-held companies in connection with very contentious

11:03  25   situations?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:03   1    A    Almost none.  None.

11:03   2    Q    You mentioned EM Cosmetics in response to one of the

11:03   3    questions by Mr. Wyman.  Do you remember that?

11:03   4    A    Yes, I do.

11:04   5    Q    What was EM Cosmetics?

11:04   6    A    I think -- it still is, but it's a cosmetics brand.

11:04   7    Q    And what did that have to do with this transaction

11:04   8    involving Ms. Phan?

11:04   9    A    I think, as I said yesterday, part of the desire of

11:04   10   Ms. Phan was not only to sell back her shares but also keep

11:04   11   the ownership and control over EM Cosmetics which had just

11:04   12   been bought back by IPSY from the company L'Oréal.

11:04   13   Q    And did Ms. Phan get EM Cosmetics back as part of the

11:04   14   negotiation that I led?

11:04   15   A    She did, yes.

11:04   16   Q    Did Ms. Phan and Mr. Tran and others close to them

11:05   17   receive tens of millions of dollars as a result of the

11:05   18   negotiation that I led?

11:05   19   A    They did, yes.

11:05   20   Q    And your recollection is that pursuant to the

11:05   21   negotiated settlement, there was going to be multiple

11:05   22   disbursements from IPSY in order to resolve the dispute,

11:06   23   correct?

11:06   24   A    Yes.

11:06   25   Q    And after the first of the multiple disbursements came

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:06  1    in, you learned that Mr. Tran had received his money,

11:06  2    correct?

11:06  3    A    I did, yes.

11:06  4    Q    And you learned that Ms. Phan had also received her

11:06  5    money, correct?

11:06  6    A    I don't know if you told me that, but I assumed so.

11:06  7    Q    I think you testified on direct that the way you found

11:06  8    out that Mr. Tran had got his money was that he sent you a

11:06  9    picture of a new sports car that he had just purchased,

11:06  10   right?

11:06  11   A    Yes.

11:07  12          MR. AVENATTI:  Your Honor, one moment, please.

11:07  13          (Pause in proceedings)

11:07  14   BY MR. AVENATTI:

11:08  15   Q    Mr. Marchino, I think you testified on direct, one of

11:08  16   the things you testified to, was that after the first set of

11:08  17   payments had been made, that Mr. Tran reached out to you

11:08  18   about the next tranche of payments; is that right?

11:08  19   A    That's correct, yes.

11:08  20   Q    No one from IPSY reached out to you in connection with

11:08  21   that; is that right?

11:08  22   A    Yes, that's correct.

11:09  23   Q    By the way, do you recall the names of any of the

11:09  24   people that you allegedly dealt with at IPSY in connection

11:09  25   with this negotiation, whether it be them or any of their

11:09  1   attorneys?

11:09  2   A    The only person I remember is the CEO of IPSY, Marcelo,

11:09  3   but that's the only person I remember.

11:09  4   Q    Mr. Marchino, you're not suggesting that Marcelo was

11:09  5   involved in the negotiation of the exit directly with our

11:09  6   side; are you?

11:09  7   A    I think that he was at some point, yes.

11:09  8   Q    Did you ever converse with Marcelo in connection with

11:09  9   the exit, sir?

11:09  10  A    No, I did not.

11:09  11  Q    Have you ever met him?

11:09  12  A    No, I don't believe so.  No.

11:09  13  Q    Have you ever talked to him on the phone?

11:09  14  A    Not that I can recall, no.

11:10  15  Q    And I believe you testified that IPSY was anticipating

11:10  16  a public offering and wanted to accelerate the second set of

11:10  17  payments; is that right?

11:10  18  A    Yes.

11:10  19  Q    Who did you learn that from?

11:10  20  A    From Long -- Mr. Tran.

11:10  21  Q    You didn't learn that from me; did you?

11:10  22  A    I don't believe so.  Maybe, but I think I learned it

11:10  23  from Mr. Tran.

11:11  24  Q    Let me digress for a minute back to Ms. Gardner.  As it

11:11  25  related to Ms. Gardner, before February of 2019 your

11:11  1   involvement on the Gardner case was assisting her in getting

11:11  2   settled at the Sofitel Hotel.  That was one of the things

11:11  3   you did, right?

11:11  4   A    That's correct, yes.

11:11  5   Q    Assisting her in getting settled at an Airbnb, that was

11:11  6   one of the other things you did, right?

11:11  7   A    That's correct, yes.

11:11  8   Q    And then traveling to Italy at my direction in order to

11:11  9   gather some evidence in connection with the case; is that

11:11  10  right?

11:11  11  A    That's correct, yes.

11:11  12  Q    And just to be clear, the reason why I directed you to

11:11  13  go to Italy was not for some vacation but rather because one

11:11  14  of the events at issue had allegedly occurred in Italy,

11:12  15  right?

11:12  16  A    That's correct, yes.

11:12  17  Q    Other than those three things that I just listed, what

11:12  18  other work did you do in connection with the Gardner case

11:12  19  before it was settled?

11:12  20  A    As I sit here, I can't really recall, but there was not

11:12  21  a ton more.  I think there were some doctors involved, but

11:12  22  that was about it.

11:12  23  Q    What do you mean when you say doctors involved?

11:12  24  A    I can't expand beyond that.  I'm sorry.

11:12  25  Attorney/client.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:12  1   Q    Well, I'm talking about doctors at the time prior to

11:12  2   Ms. Gardner's settlement with Mr. Whiteside.  There has been

11:12  3   a privilege relating to that time period.  You understand

11:12  4   that; right, sir?

11:12  5              MR. WYMAN:  Objection, 403, and the Court's prior

11:13  6   ruling, Your Honor.

11:13  7              THE COURT:  Sustained.

11:13  8   BY MR. AVENATTI:

11:13  9   Q    Do you know who paid for the doctors?  You don't know;

11:13  10  do you?

11:13  11  A    I do not, not as I sit here.  I know that I didn't or

11:13  12  the X-Law Group didn't.

11:13  13  Q    Now, let's take a look at 274.  Do you remember

11:13  14  Mr. Wyman spent a lot of time asking you about these text

11:13  15  messages as part of 274?  Do you recall that?

11:13  16  A    I do, yes.

11:13  17  Q    And I wrote this down, but I may have written it down

11:14  18  wrong.  I'm just going to ask you about it.

11:14  19              During the direct examination I think you said

11:14  20  that about 90 percent of your text messages with Mr. Tran

11:14  21  were via an app.  Did I write that down wrong?

11:14  22  A    Yes, I think you did.

11:14  23  Q    Okay.  You reference 90 percent as it related to your

11:14  24  communications with Mr. Tran.  Do you remember that?

11:14  25  A    Yes.

90

| | | |
|---|---|---|
| 11:14 | 1 | Q    What was that in relation to? |
| 11:14 | 2 | A    The fact we texted a lot.  The rest was e-mails or |
| 11:14 | 3 | calls. |
| 11:14 | 4 | Q    And when you texted with Mr. Tran, what app would you |
| 11:14 | 5 | use? |
| 11:14 | 6 | A    Just text message, SMS. |
| 11:15 | 7 | Q    So I take it that 274 as far as you know are just |
| 11:15 | 8 | regular text messages as opposed to utilizing some app; is |
| 11:15 | 9 | that right? |
| 11:15 | 10 | A    Yes, I believe it to be. |
| 11:15 | 11 | Q    Well, the fact of the matter is you don't know because |
| 11:15 | 12 | these aren't your text messages; are they?  Yes or no?  Yes |
| 11:15 | 13 | or no? |
| 11:15 | 14 | A    I don't know how to answer that because they are my |
| 11:15 | 15 | text messages -- |
| 11:15 | 16 | MR. AVENATTI:  Move to strike as nonresponsive. |
| 11:15 | 17 | THE COURT:  It will be stricken. |
| 11:15 | 18 | BY MR. AVENATTI: |
| 11:15 | 19 | Q    Mr. Marchino, 274 did not come from you; did it? |
| 11:15 | 20 | A    Correct.  It's not a screenshot of my phone. |
| 11:15 | 21 | Q    You did not produce the text messages at Exhibit 274 to |
| 11:15 | 22 | the government; did you? |
| 11:16 | 23 | A    Not this copy, no. |
| 11:16 | 24 | Q    Do you know where 274 came from? |
| 11:16 | 25 | A    I assume Mr. Tran, but I don't know. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:16   1    Q    You have no idea; do you?

11:16   2    A    I just said I do not know.

11:16   3    Q    Did the government ever ask you for your text

11:16   4    communications with Mr. Tran?

11:16   5    A    They did, yes.

11:16   6    Q    Did you give them all of your text communications with

11:16   7    Mr. Tran?

11:16   8    A    I believe so, yes, I did.

11:16   9    Q    How did you do that?

11:16   10   A    I took pictures of them, a screenshot of the phone,

11:16   11   pdf'd it, sent it to my lawyer.  He Bates stamped it and

11:16   12   sent it to the government.

11:17   13   Q    Did you use any software to download the text messages

11:17   14   from your phone as opposed to screenshotting them?  Yes or

11:17   15   no?

11:17   16   A    No.

11:17   17   Q    Did anyone ever ask you to image your phone for your

11:17   18   text messages?

11:17   19   A    No.

11:17   20   Q    When the government executed the search warrant at your

11:17   21   offices, did they ask you for your phone?

11:17   22   A    They did not.

11:17   23   Q    To the best of your knowledge, has anyone from the

11:17   24   government ever asked you for your phone?

11:17   25   A    No.

11:17  1    Q    Is it fair to say that around this time period of 2018,
11:17  2    you regularly texted with a lot of people throughout the
11:18  3    day?
11:18  4    A    Yes.
11:18  5    Q    And you would text with people using regular iMessage,
11:18  6    correct?
11:18  7    A    Yes.
11:18  8    Q    You would text with people using Signal, correct?
11:18  9    A    Yes.
11:18  10   Q    Including people other than me, right?
11:18  11   A    Yes.
11:18  12   Q    You would text with people using WhatsApp; am I right?
11:18  13   A    Yes.
11:18  14   Q    What other apps did you use to send text messages
11:18  15   around this time period other than those three?
11:18  16   A    I would think that's about it.
11:18  17   Q    Did you ever use telegram or something similar to that
11:18  18   around this time period?
11:18  19   A    No.
11:18  20   Q    If I gave you a set of text messages obtained from
11:18  21   someone else, let's say 35 pages or so, would you be able to
11:19  22   tell the jury that that is all of the text messages?
11:19  23   A    I don't know, no.
11:19  24   Q    You would need to look at your phone to see what text
11:19  25   messages were on your phone, correct?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:19   1   A    Yes.

11:19   2   Q    So, sir, as you sit there right now, you can't tell the

11:19   3   jury that these are all of the text messages that you had

11:19   4   with Mr. Tran around that time period; can you?

11:19   5   A    That's correct.  I can't represent that.

11:19   6   Q    Do you know why there is no times listed for any of the

11:20   7   text messages contained within 274?  Do you know?

11:20   8   A    I don't.

11:20   9   Q    Do you know whether you ever communicated with Mr. Tran

11:20  10   via WhatsApp?

11:20  11   A    I don't believe so.

11:20  12   Q    How about Signal?

11:20  13   A    No.

11:20  14   Q    Now, I want to make sure that I understand your

11:21  15   testimony correctly.

11:21  16        Are you claiming that every message you sent as

11:21  17   part of 274 was at my specific direction?

11:21  18   A    No.

11:21  19   Q    In fact, your testimony is that very few of these text

11:21  20   messages were sent at my specific direction; is that true?

11:21  21   A    That's true.

11:21  22   Q    And I see the first text message was March 12, and

11:21  23   that's 2018, right?

11:21  24   A    That's correct, yes.

11:21  25   Q    Did you have any communications with Mr. Tran about the

11:21    1    negotiation or the settlement before March 12th?

11:21    2    A    Yes, I believe so.

11:22    3    Q    Where are those text messages?

11:22    4    A    They are not part of 274.

11:22    5    Q    Do you know where those text messages are as it relates

11:22    6    to Mr. Tran?

11:22    7    A    I do not.

11:22    8    Q    Mr. Marchino, in 2018 did you ever utilize a spoofing

11:23    9    app that would enable you to call someone or communicate

11:23    10    with them and make it look on their phone like someone

11:23    11    different than you were calling them?  Did you ever do that

11:23    12    in 2018?  Yes or no?

11:23    13    A    I don't believe so, no.

11:23    14    Q    That's your testimony under oath to this jury; is that

11:23    15    right?

11:23    16    A    Correct.

11:23    17    Q    It's about 11:25, right, give or take?

11:23    18    A    Yes.

11:24    19    Q    Now, let's go through some of these text messages in

11:24    20    274 that you were asked about by Mr. Wyman.

11:25    21         Now, you inquired of Mr. Tran in the middle of the

11:25    22    first page -- well, first of all, at the top Mr. Tran asked

11:25    23    you:  "You got a minute to chat?"  You responded, "Yes."

11:25    24    You then responded the next day:  "Hi.  Did Michael call you

11:25    25    yet?"  Do you see that?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:25  1    A    Yes.

11:25  2    Q    Why did you ask Mr. Tran if I had called him yet?

11:25  3    A    To see if you had called him.

11:25  4    Q    About what?

11:25  5    A    This what we just talked about, the acceleration of the

11:25  6    IPSY wanted to go public and then trying to get Long and

11:25  7    Michelle off their books.

11:25  8    Q    So your recollection is that on March 12th Mr. Tran

11:25  9    called you and told you that IPSY wanted to accelerate the

11:25  10   second group of payments; is that right?

11:26  11   A    That's correct.

11:26  12   Q    And that you in turn informed me of that.  That's your

11:26  13   testimony, right?

11:26  14   A    That's correct, yes.

11:26  15   Q    Do you know if Mr. Tran and I spoke about that on

11:26  16   March 12th?

11:26  17   A    I assume no because he said "not yet" on the 15th.

11:26  18   Q    But you don't know?

11:26  19   A    I don't.

11:26  20   Q    Now, around this time period of March 2018, did you

11:26  21   have the understanding that I was focused on the details

11:27  22   relating to financial and banking transactions at Eagan

11:27  23   Avenatti?

11:27  24   A    I don't understand your question.

11:27  25   Q    You testified on direct that around this time period

11:27  1   you understood that I was busy -- extremely busy, I think

11:27  2   you said -- with other matters.  Do you remember that?

11:27  3   A    Yes.

11:27  4   Q    Was it your understanding, sir, in March of 2018 that

11:27  5   instead of attending to these other matters, I was focused

11:27  6   on the details of banking transactions at the law firm?  Was

11:27  7   that your understanding?

11:27  8   A    No.

11:27  9   Q    You understood that Ms. Judy Regnier was the primary

11:27  10  person at the firm who was focused on those matters on a

11:27  11  day-to-day basis, correct?

11:27  12  A    I understood this, yes.

11:27  13  Q    And you understood, did you not, for a significant

11:28  14  amount of time preceding this that I relied in a

11:28  15  considerable way on Ms. Regnier when it came to accounting

11:28  16  matters, correct?

11:28  17  A    That is my understanding, yes.

11:28  18  Q    And that was your understanding as it related to these

11:28  19  issues concerning Mr. Tran and Ms. Phan generally, correct?

11:28  20  A    This was about --

11:28  21  Q    Sir, just answer my question.  If I'm wrong, say no.

11:28  22  A    I don't understand your question.  Could you rephrase

11:28  23  it.

11:28  24  Q    All right.  You understood that as it related to

11:28  25  keeping track of wire payments, that I would rely in

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:28 | 1 | considerable measure on Ms. Regnier.  Did you not know that? |
| 11:28 | 2 | MR. WYMAN:  Calls for speculation. |
| 11:28 | 3 | THE COURT:  Overruled. |
| 11:28 | 4 | THE WITNESS:  Generally that was my understanding, |
| 11:28 | 5 | yes. |
| 11:28 | 6 | BY MR. AVENATTI: |
| 11:28 | 7 | Q    Now, I want to ask you about page 3 of 37. |
| 11:29 | 8 | A    Okay. |
| 11:29 | 9 | Q    Mr. Wyman asked you about this communication from |
| 11:29 | 10 | Mr. Tran that the wires had just been sent.  Do you see |
| 11:29 | 11 | that? |
| 11:29 | 12 | A    I do, yes. |
| 11:29 | 13 | Q    And you responded, "Will check shortly," right? |
| 11:29 | 14 | A    Yes. |
| 11:29 | 15 | Q    Then on the next page he responded, "I'll send you wire |
| 11:29 | 16 | info," right? |
| 11:29 | 17 | A    Yes. |
| 11:29 | 18 | Q    And you responded, "Okay.  Thank you," right? |
| 11:29 | 19 | A    That's correct. |
| 11:29 | 20 | Q    And you responded, "Okay.  Thank you," on March 14th? |
| 11:29 | 21 | A    That's correct. |
| 11:30 | 22 | Q    Do you see that date? |
| 11:30 | 23 | A    Yes. |
| 11:30 | 24 | Q    And Mr. Tran responded how many days later? |
| 11:30 | 25 | A    Six. |

| | | |
|---|---|---|
| 11:30 | 1 | Q    Do you know what happened during those six days? |
| 11:30 | 2 | A    I do not, no. |
| 11:30 | 3 | Q    Do you know what communications I had with the bank |
| 11:30 | 4 | during those six days? |
| 11:30 | 5 | A    I do not, no. |
| 11:30 | 6 | Q    Do you know what my communications with Ms. Regnier |
| 11:30 | 7 | were during those six years? |
| 11:30 | 8 | A    I do not, no. |
| 11:30 | 9 | Q    Do you know what my communications with Mr. Tran were |
| 11:30 | 10 | during those six days? |
| 11:30 | 11 | A    I do not, no. |
| 11:30 | 12 | Q    How about Ms. Phan?  Do you know anything about any |
| 11:30 | 13 | communications that might have occurred during those six |
| 11:30 | 14 | days? |
| 11:30 | 15 | A    I do not, no. |
| 11:30 | 16 | Q    As you sit here today, do you know whether you had any |
| 11:30 | 17 | text message communications with Mr. Tran during that |
| 11:30 | 18 | interim six-day time period? |
| 11:30 | 19 | A    I don't believe I did. |
| 11:30 | 20 | Q    Well, you don't know; do you, sir? |
| 11:31 | 21 | A    As I sit here right now, I don't. |
| 11:31 | 22 | Q    It was over three years ago, right? |
| 11:31 | 23 | A    Yes. |
| 11:31 | 24 | Q    Without looking at your text messages, you can't tell |
| 11:31 | 25 | the jury whether you actually had communications during that |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:31  1    time period with Mr. Tran; can you?

11:31  2    A    That's correct.

11:31  3    Q    By the way, I forgot to ask you this, and I'm sorry.

11:31  4    In the course of your work as an attorney, have you ever

11:31  5    been involved in the forensic collection of text messages?

11:31  6    A    I have not, no.

11:31  7    Q    You have never had a client's phone imaged in

11:31  8    connection with any of your work, sir?

11:31  9    A    No.  I do personal injury, so ...

11:32  10   Q    Let's go to page 6.

11:32  11   A    Okay.

11:32  12   Q    You were asked about this text message -- well,

11:32  13   actually before we get to that, let's go to page 5.  You

11:33  14   said, "I will pay him shortly," and that's on March 20th.

11:33  15   And Mr. Tran responds, "Thanks," on March 20th, right?

11:33  16   A    Yes.

11:33  17   Q    According this document that Mr. Wyman was asking you

11:33  18   about, what's the next communication between you and

11:33  19   Mr. Tran at least according to this government exhibit?

11:33  20   A    April 9th.

11:33  21   Q    So about 20 days; is that right?  March 20th to

11:33  22   April 9th, 20 days passed, right, according to this?

11:33  23   A    Yes.

11:34  24   Q    Twenty days pass.  You communicate with Mr. Tran

11:34  25   90 percent of the time by text.  There is not a single text

11:34   1   within this exhibit relating to this alleged

11:34   2   multi-million-dollar payment that is missing.  Do I have

11:34   3   that right?

11:34   4             MR. WYMAN:  Objection.  Argumentative.  Asked and

11:34   5   answered.

11:34   6             THE COURT:  Sustained.

11:34   7   BY MR. AVENATTI:

11:34   8   Q    Sir, as you sit there today, do you know if there were

11:34   9   any text messages between you and Mr. Tran during this

11:34  10   20-day time period?

11:34  11             MR. WYMAN:  Asked and answered.

11:34  12             THE COURT:  Overruled.

11:34  13             THE WITNESS:  Without checking the text messages,

11:34  14   no.

11:34  15   BY MR. AVENATTI:

11:34  16   Q    Without checking the text messages on your phone,

11:34  17   right?

11:34  18   A    Meaning, yes, the ones that I provided, yes.

11:35  19   Q    What's the next date after April 9th?

11:35  20   A    April 22nd.

11:35  21   Q    Do you know if there were any text messages between you

11:35  22   and Mr. Tran between April 9 and April 22nd?

11:35  23   A    I don't believe so, but without checking mine, I

11:35  24   wouldn't know for sure.

11:35  25   Q    So according to this document you would agree that

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:35   1   between March 20th and April 22, almost a month, there is

11:35   2   one text message on April 9th, right?

11:35   3   A    That's correct, yes.

11:35   4   Q    Then Mr. Tran says he is concerned and losing patience.

11:35   5   Do you see that?  Mr. Wyman asked you about that.

11:35   6   A    Yes.

11:35   7   Q    That's on April 22, right?

11:35   8   A    That's correct.

11:36   9   Q    Let's go to the next page.  After April 22 what is the

11:36   10  next date that according to this document there is a text

11:36   11  exchange?

11:36   12  A    May 3rd.

11:36   13  Q    So about another 11 days pass, right?

11:36   14  A    Yes.

11:36   15  Q    Do you know if there were any text messages or

11:36   16  communications during those 11 days?

11:36   17  A    Same answer as before -- I don't.

11:36   18  Q    Do you have a recollection of any of the communications

11:36   19  that took place during that specific 11-day time period?

11:36   20  A    Meaning phone conversations?

11:36   21  Q    Well, according to this there were no text

11:36   22  communications, right, at least according to this document?

11:37   23  A    If I recall correctly, I think we spoke after this text

11:37   24  message of April 22nd, but that's as far as I can recall as

11:37   25  I sit here today.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:37   1    Q    You were asked about page 8.

11:37   2    A    Yes.

11:37   3    Q    By the way, before we get to 8, sir, you would agree

11:37   4    with me, would you not, that if you wanted to know what

11:38   5    happened relating to a particular subject and what people

11:38   6    had communicated about at least via text about that subject,

11:38   7    that you would need all of their text messages about that

11:38   8    subject?  You would agree with that general proposition;

11:38   9    would you not?

11:38   10   A    Yes, generally.

11:38   11   Q    Let's go to page 8.  You were asked about these text

11:38   12   messages in the center of the page.  "Banks are closed now.

11:38   13   Will know first thing Monday."

11:38   14   A    Yes.

11:38   15   Q    Were those messages sent by you or Mr. Tran?

11:38   16   A    Mr. Tran.

11:39   17   Q    How can you tell, looking at this document?

11:39   18   A    Because the page right after that it carries on, "Will

11:39   19   know first thing Monday."  And then, "Thanks for checking

11:39   20   in," and there's a black dot next to it.  The black dot is

11:39   21   inserted as the last entry of the person.

11:39   22   Q    Do you have any idea when that was sent on May 4th,

11:39   23   meaning the time?

11:39   24   A    I assume after the banks were closed, but I don't know.

11:39   25   Q    And then you responded -- so Mr. Tran was saying that

11:39   1   he would check first thing on Monday, right?

11:39   2   A    Yes.

11:39   3   Q    And then you gave Mr. Tran a hard time because he

11:39   4   didn't have online access to his bank account, right?

11:40   5   A    Yes.

11:40   6   Q    And then on page 10 of 37 Mr. Tran responded, "I don't

11:40   7   manage it, but I can get the credentials from the financial

11:40   8   manager."  Do you see that?

11:40   9   A    Yes.

11:40   10  Q    What did you understand Mr. Tran to be saying when he

11:40   11  wrote you that?

11:40   12  A    That it was Michelle's account and that he didn't have

11:40   13  access to it.

11:40   14  Q    Did you find that suspicious?

11:40   15  A    No.

11:40   16  Q    Why not?

11:40   17         MR. WYMAN:  Objection.  Relevance.

11:40   18         THE COURT:  Sustained.

11:40   19  BY MR. AVENATTI:

11:40   20  Q    There wasn't anything unusual about that in your mind,

11:40   21  right?

11:41   22  A    Yes.  It did not register as a problem.

11:41   23  Q    Then on May 7, page 11 of 37, after Mr. Tran had told

11:41   24  you that he was going to check with the bank first thing on

11:41   25  Monday, did Mr. Tran contact you or did you contact

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:41 | 1 | Mr. Tran? |
| 11:41 | 2 | A    I contacted him. |
| 11:41 | 3 | Q    And he informed you that he was waiting for a call back |
| 11:42 | 4 | from his bank, right? |
| 11:42 | 5 | A    I don't know if it was from his bank but, yes, he was |
| 11:42 | 6 | waiting for a call back. |
| 11:42 | 7 | Q    You didn't know who he was waiting for a call back |
| 11:42 | 8 | from? |
| 11:42 | 9 | A    That's correct. |
| 11:42 | 10 | Q    Now, while this is going on, are you communicating with |
| 11:42 | 11 | any of the banks? |
| 11:42 | 12 | A    No. |
| 11:42 | 13 | Q    You weren't communicating with Mr. Tran's bank or |
| 11:42 | 14 | Ms. Phan's bank or Eagan Avenatti's bank, right? |
| 11:42 | 15 | A    That's correct. |
| 11:42 | 16 | Q    And you weren't privy to any of those communications; |
| 11:42 | 17 | is that right? |
| 11:42 | 18 | A    That's correct. |
| 11:42 | 19 | Q    So you don't know what was being communicated to the |
| 11:42 | 20 | respective banks, right? |
| 11:42 | 21 | A    That's correct. |
| 11:42 | 22 | Q    So, for instance, you don't know whether I was on the |
| 11:42 | 23 | phone with Eagan Avenatti's bank as it relates to these wire |
| 11:42 | 24 | transfers; do you? |
| 11:42 | 25 | A    I don't. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:42 | 1 | Q     And you don't know what I was being told by Ms. Regnier |
| 11:42 | 2 | as it relates to these wire transfers either; do you? |
| 11:42 | 3 | A     I don't. |
| 11:42 | 4 | Q     Did you have any understanding that I was the one |
| 11:42 | 5 | sending the wires relating to this transaction as opposed to |
| 11:43 | 6 | Ms. Regnier? |
| 11:43 | 7 | A     I don't think I had an understanding either way. |
| 11:43 | 8 | Q     Now, what is the first text message that you claim that |
| 11:43 | 9 | you copied and pasted from me to send to Mr. Long? |
| 11:43 | 10 | A     I would have to go through 274 to tell you. |
| 11:43 | 11 | Q     Okay.  Go ahead.  Take your time.  I think the first |
| 11:43 | 12 | one you testified to on direct is on page 14, but I may be |
| 11:43 | 13 | mistaken. |
| 11:44 | 14 | A     I think page 13, "Just got a text from the bank.  We |
| 11:44 | 15 | should have fed number shortly."  I think that may have been |
| 11:44 | 16 | the first one. |
| 11:44 | 17 | Q     Before that message none of these others were copied |
| 11:44 | 18 | and pasted; is that right? |
| 11:44 | 19 | A     The only one I -- I can't recall as I sit here, but |
| 11:44 | 20 | there was one on page number 3, but I don't think so.  Yeah, |
| 11:45 | 21 | I think page 13 would probably be the first message. |
| 11:45 | 22 | Q     If we wanted to confirm that for the jury, that in fact |
| 11:45 | 23 | you had copied a text from me and pasted it into a text to |
| 11:45 | 24 | Mr. Tran, we couldn't do that now because your testimony is |
| 11:45 | 25 | that the alleged text from me is deleted; is that right? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:45 | 1 | A     That's correct. |
| 11:45 | 2 | Q     And then you were asked about page 14, "Please give |
| 11:45 | 3 | this to Long," and there is a number there in the center of |
| 11:46 | 4 | the page, page 14? |
| 11:46 | 5 | A     Yes. |
| 11:46 | 6 | Q     Did you ever determine whether that was a bogus number? |
| 11:46 | 7 | Yes or no? |
| 11:46 | 8 | A     I did not, no. |
| 11:46 | 9 | Q     Where did that number come from originally?  Do you |
| 11:46 | 10 | know? |
| 11:46 | 11 | A     I do not, no. |
| 11:46 | 12 | Q     Do you know if the bank provided it to me or |
| 11:46 | 13 | Ms. Regnier? |
| 11:46 | 14 | A     I do not, no. |
| 11:47 | 15 | Q     Mr. Marchino, are you aware of any evidence of me |
| 11:47 | 16 | calling or texting or e-mailing or communicating with anyone |
| 11:47 | 17 | at any bank and telling them not to provide information |
| 11:47 | 18 | relating to these transactions? |
| 11:47 | 19 | A     No, not that I know of. |
| 11:48 | 20 |         MR. AVENATTI:  Page 22, please.  Would you blow |
| 11:48 | 21 | that up, please. |
| 11:48 | 22 | BY MR. AVENATTI: |
| 11:48 | 23 | Q     You were asked about this text message.  Do you recall |
| 11:48 | 24 | that? |
| 11:48 | 25 | A     Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:48  1    Q    And there is a message from Mr. Tran to you on or about

11:48  2    May 11, right?

11:48  3    A    That's correct.

11:48  4    Q    And he says, "Your bank is not cooperating much with

11:48  5    our bank."  Do you see that?

11:48  6    A    I do.

11:48  7    Q    And then he goes on to describe what Eagan Avenatti's

11:48  8    bank had informed their bank.  Do you remember that?

11:48  9    A    Sure.

11:48  10   Q    So does this refresh your recollection that in fact the

11:49  11   banks were in communication with one another?

11:49  12   A    I guess they were, yes.

11:49  13   Q    Well, that was your understanding when you read this

11:49  14   text message, right?  Namely, that the banks were in touch

11:49  15   with one another about these payments?

11:49  16   A    I don't know if this actually spoke about the banks

11:49  17   being in touch, but, yes, I understood that there was some

11:49  18   communication going on.

11:49  19   Q    Well, it reads:  "Your bank is not cooperating much

11:49  20   with our bank.  They can only verify that it's a valid IMAD.

11:49  21   Could be from the first 4M, so we need to get both IMAD

11:49  22   numbers," and then it continues.  Do you see that?

11:49  23   A    Yes, it does.

11:49  24   Q    Okay.  So when you got this, you understood that at

11:49  25   least at some level the banks were communicating with one

11:49   1   another, right?

11:49   2   A    Again, I don't know if they were communicating to one

11:50   3   another or if there was somebody in between.  But, yes,

11:50   4   generally that was my understanding.

11:50   5   Q    Well, did you ever come to understand that I was on the

11:50   6   phone with both banks like some puppet master trying to

11:50   7   figure out what information was provided to Mr. Tran or

11:50   8   Ms. Phan?  Did you ever come to learn that, sir?

11:50   9   A    I did not, no.

11:50   10  Q    Okay.  Did you ever come to learn that I was involved

11:50   11  or on the phone with both banks at any point in time?

11:50   12  A    No.

11:51   13  Q    Would you go to page 26.  I want to ask you about some

11:51   14  text messages that Mr. Wyman did not ask you about.  He

11:51   15  asked you about this text message, "There should be a total

11:51   16  of three ref numbers for the individual transactions."  Do

11:51   17  you see that?

11:51   18  A    Yes.

11:51   19  Q    Then on the next page and the page that follows, you

11:51   20  make it a point to tell Mr. Tran this was the first time he

11:52   21  had asked for all three reference numbers, right?

11:52   22  A    Yes.  On the following page, yes.

11:52   23  Q    Page 28?

11:52   24  A    That's correct, yes.

11:52   25  Q    You say, "I didn't know you needed all three," right?

| | | |
|---|---|---|
| 11:52 | 1 | A     That's correct. |
| 11:52 | 2 | Q     That's the reason you had not given him the other |
| 11:52 | 3 | reference numbers prior to that; is that right? |
| 11:52 | 4 | A     That's why I hadn't asked for them. |
| 11:52 | 5 | Q     He had not asked you, which is why you had not asked me |
| 11:52 | 6 | or Ms. Regnier, right? |
| 11:52 | 7 | A     I would have asked you, yes. |
| 11:52 | 8 | Q     And then at the top of 33 -- by the way, during this |
| 11:53 | 9 | whole time period did you understand that Mr. Tran had |
| 11:53 | 10 | gotten a hundred percent of his money? |
| 11:53 | 11 | A     I think so, yes. |
| 11:53 | 12 | Q     At the top of 33, Mr. Tran writes, "Neither of us nor |
| 11:53 | 13 | Michael should be spending time on this."  Do you see that? |
| 11:53 | 14 | A     Yes. |
| 11:53 | 15 | Q     What did you understand -- strike that.  Why did you |
| 11:53 | 16 | understand Mr. Tran to be making the point that neither he |
| 11:53 | 17 | nor you nor me should be spending time on this? |
| 11:54 | 18 | A     I understood it to mean that this was simple enough to |
| 11:54 | 19 | fix or should be simple enough to fix, that none of us had |
| 11:54 | 20 | to spend a ton of time on it. |
| 11:54 | 21 | Q     You understood that it was something that could be |
| 11:54 | 22 | fixed by others that were focused generally on these things, |
| 11:54 | 23 | right? |
| 11:54 | 24 | A     That was what Long believed, yes -- Mr. Tran. |
| 11:54 | 25 |        MR. AVENATTI:  Your Honor, now is a good breaking |

11:54  1    time.

11:54  2              THE COURT:  That's fine.

11:54  3              Ladies and gentlemen, we will take the lunch break

11:54  4    here.  We will resume at 1:30.  Please remember the

11:54  5    admonition not to discuss the case with anyone and not to

11:54  6    form any opinions on the issues in the case until it is

11:54  7    submitted to you.  And please do no research.

11:54  8              We'll see you at 1:30.  Thank you.

11:54  9              (Recess taken at 11:55 a.m.)

11:55  10                  *    *    *

11:55  11

11:55  12

11:55  13

11:55  14

11:55  15

11:55  16

11:55  17

11:55  18

11:55  19

11:55  20

11:55  21

11:55  22

11:55  23

11:55  24

11:55  25

CERTIFICATE


        I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  August 5, 2021



                        /s/   Sharon A. Seffens  8/5/21
                        _____
                        SHARON A. SEFFENS, U.S. COURT REPORTER


SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**MR. AVENATTI: [79]** 4/9 11/18 11/25 12/9
12/15 12/18 15/3 15/14 15/19 16/6 16/14 17/1
17/20 18/13 18/17 19/12 19/19 19/23 19/25
20/15 21/12 21/19 22/1 22/11 23/7 24/18
24/25 25/3 25/14 25/19 25/25 26/9 26/16
26/18 27/5 31/1 32/4 34/10 36/18 40/21 42/4
42/23 43/6 54/7 55/8 57/5 58/3 58/7 60/14
60/18 63/17 63/22 64/11 68/13 68/17 69/13
69/23 70/12 70/19 71/12 71/17 71/20 71/23
72/6 72/22 73/21 74/1 74/4 74/7 74/9 75/22
76/6 76/13 80/17 82/5 86/12 90/16 106/20
109/25
**MR. HARBUR: [19]** 6/25 7/12 8/1 8/4 8/7
8/10 8/15 10/15 11/9 11/16 13/23 13/25 14/4
14/18 14/25 16/9 16/20 17/10 18/4
**MR. SAGEL: [15]** 4/5 4/18 5/6 18/22 19/5
19/9 19/11 20/18 21/1 21/11 23/5 67/21 69/11
70/14 70/23
**MR. WYMAN: [44]** 17/5 27/1 27/14 32/2 32/7
32/25 34/8 34/13 35/3 40/19 43/1 43/3 47/25
51/20 54/19 54/25 55/6 55/16 55/21 56/15
58/25 59/18 59/23 60/4 60/17 61/2 62/9 63/20
65/25 66/17 67/10 68/6 68/8 70/24 71/16
73/24 74/2 76/21 80/15 89/5 97/2 100/4
100/11 103/17
**THE CLERK: [3]** 4/3 26/24 27/11
**THE COURT: [128]**
**THE WITNESS: [15]** 27/13 31/3 36/20 42/7
42/25 51/22 59/2 61/4 66/2 66/19 76/15 76/24
82/8 97/4 100/13

**$**
**$10 [1]** 59/22
**$10 million [1]** 59/22
**$250,000 [1]** 60/25
**$4 [12]** 29/10 29/12 29/13 29/16 30/5 33/2
33/5 40/8 42/8 42/12 42/22 63/15
**$4 million [11]** 29/10 29/12 29/16 30/5 33/2
33/5 40/8 42/8 42/12 42/22 63/15

**/**
**/s [1]** 111/15

**0**
**00133556 [1]** 5/24
**026 [4]** 61/17 61/21 61/23 61/25
**04 [1]** 33/10
**0870 [1]** 1/21

**1**
**1-1053 [1]** 1/20
**1.8 million [1]** 64/10
**10 [2]** 74/22 103/6
**10's [1]** 25/8
**1001 [1]** 43/23
**1053 [3]** 1/20 3/14 73/23
**107 [1]** 2/16
**10:19 [1]** 71/24
**10:35 [1]** 71/20
**10:37 [1]** 71/25
**10th [5]** 29/20 30/3 57/22 57/25 58/12
**11 [7]** 32/16 34/4 38/12 101/13 101/16 103/23
107/2
**11-day [1]** 101/19
**1100 [1]** 2/7
**11:25 [1]** 94/17
**11:55 [1]** 110/9
**11th [8]** 31/14 31/23 33/15 35/6 37/7 38/20
39/2 39/4
**12 [1]** 93/22
**1206 [1]** 6/8
**1217 [1]** 6/9
**12th [3]** 94/1 95/8 95/16
**13 [4]** 44/7 44/20 105/14 105/21
**130 [2]** 61/14 61/15
**14 [5]** 1/12 27/24 105/12 106/2 106/4
**145 [1]** 5/18
**14th [4]** 39/4 39/7 39/18 97/20

**15 [2]** 29/18 67/15
**150 [1]** 61/16
**151 [1]** 5/18
**15th [1]** 95/17
**16 [1]** 30/2
**168,000 [1]** 38/7
**17 [7]** 31/12 73/1 73/22 74/2 74/12 74/13
74/15
**18 [3]** 33/13 43/23 75/17
**18/05/04 [1]** 33/10
**18th [2]** 62/22 63/5
**19 [1]** 33/21
**1:30 [2]** 110/4 110/8
**1st [1]** 47/20

**2**
**2-200 [8]** 81/19 81/21 82/10 82/12 82/14
82/16 82/21 82/25
**20 [2]** 99/21 99/22
**20-day [1]** 100/10
**200 [9]** 16/22 81/19 81/21 82/10 82/12 82/14
82/16 82/21 82/25
**2013 [3]** 63/13 73/9 74/20
**2016 [5]** 50/13 51/3 51/11 51/12 80/2
**2017 [4]** 65/8 72/9 73/19 80/2
**2018 [7]** 6/8 31/23 32/16 33/11 34/4 35/24
38/12 42/12 42/15 62/22 65/1 92/1 93/23 94/8
94/12 95/20 96/4
**20180504A1B7A31C00013 [1]** 35/12
**2019 [13]** 5/22 24/20 47/20 50/22 56/22 56/25
57/9 57/22 57/25 58/12 60/10 77/22 87/25
**2021 [4]** 1/17 4/1 5/7 111/13
**20th [4]** 99/14 99/15 99/21 101/1
**21 [1]** 111/15
**213 [1]** 2/8
**217 [1]** 6/9
**22 [5]** 35/4 101/1 101/7 101/9 106/20
**22nd [3]** 100/20 100/22 101/24
**23 [1]** 35/21
**24 [1]** 36/10
**25 [1]** 37/6
**250 [1]** 61/11
**26 [2]** 38/3 108/13
**265 [5]** 76/4 76/6 77/20 78/13 78/16
**266 [4]** 78/13 78/21 78/21 79/1
**27 [1]** 3/6
**274 [15]** 27/20 27/23 33/12 35/4 89/13 89/15
90/7 90/19 90/21 90/24 93/7 93/17 94/4 94/20
105/10
**28 [2]** 108/23 111/7
**284 [7]** 3/8 31/16 32/3 32/6 36/17 36/20 37/3
**285 [5]** 3/9 33/24 34/9 34/11 34/12
**287 [5]** 3/9 40/10 40/20 40/22 40/23
**29 [1]** 72/9
**29th [1]** 73/18
**2nd [2]** 5/6 56/22

**3**
**31 [2]** 5/22 38/11
**312 [1]** 2/7
**32 [1]** 3/8
**33 [3]** 38/20 109/8 109/12
**338-3598 [1]** 2/12
**34 [1]** 3/9
**35 [2]** 39/3 92/21
**3598 [1]** 2/12
**36 [1]** 39/17
**37 [3]** 97/7 103/6 103/23
**3rd [1]** 101/12

**4**
**4 million [5]** 35/10 35/11 38/6 38/7 63/16
**40 [1]** 3/9
**401 [4]** 54/19 59/18 65/25 67/10
**403 [7]** 54/19 59/18 60/17 61/2 65/25 67/10
89/5
**411 [2]** 1/20 2/11
**43 [1]** 3/6
**457 [1]** 26/4

**460 [1]** 26/4
**468 [2]** 1/21
**481-4900 [1]** 2/17
**4900 [1]** 2/17
**4M [1]** 107/21
**4th [7]** 1/20 3/10 56/25 57/8 59/3 59/5
102/22
**4th, August 4th [1]** 59/3

**5**
**50 [1]** 49/15
**50 percent [11]** 24/7 46/24 47/6 52/2 52/9
52/13 52/17 81/12 81/16 82/20 83/2
**50/50 [1]** 49/15
**543-0870 [1]** 1/21
**5501 [1]** 41/13
**575-5501 [1]** 41/13
**5th [1]** 59/2

**6**
**60 percent [1]** 61/9
**608 [4]** 54/19 67/10 68/2 70/13
**610 [1]** 7/8
**611 [1]** 7/9
**615 [1]** 21/15
**626 [1]** 7/10
**640 [1]** 26/1
**641 [1]** 18/7
**6683 [1]** 2/8
**6th [1]** 59/2

**7**
**7/23 with [1]** 5/21
**714 [2]** 1/21 2/12
**73 [1]** 3/14
**753 [1]** 111/6

**8**
**8 x 10's [1]** 25/8
**8/5/21 [1]** 111/15
**800 [1]** 41/12
**8000 [1]** 2/11
**894-6683 [1]** 2/8
**895 [1]** 6/8
**8:15 [1]** 4/13
**8:16 [1]** 4/1
**8:58 [1]** 26/21

**9**
**90 percent [3]** 89/20 89/23 99/25
**90012 [1]** 2/8
**92672 [1]** 2/16
**92701 [2]** 1/20 2/11
**949 [1]** 2/17
**9:05 [1]** 26/22
**9:58 a.m [2]** 58/22 59/5
**9th [4]** 99/20 99/22 100/19 101/2

**A**
**a.m [8]** 4/1 26/21 26/22 58/22 59/5 71/24
71/25 110/9
**abeyance [1]** 20/2
**able [2]** 48/9 92/21
**about [116]**
**above [1]** 111/9
**above-entitled [1]** 111/9
**absolutely [1]** 63/6
**accelerate [2]** 87/16 95/9
**acceleration [1]** 95/5
**acceptable [1]** 25/14
**access [3]** 37/18 103/4 103/13
**accordance [1]** 10/12
**according [8]** 81/11 99/17 99/19 99/22
100/25 101/10 101/21 101/22
**Accordingly [1]** 6/20
**account [2]** 103/4 103/12
**accounting [1]** 96/15
**accounts [1]** 37/19
**accrual [1]** 63/11

**A**

accurate [4] 31/25 34/6 40/17
accuse [2] 72/17 74/24
accused [1] 73/11
acknowledge [2] 56/3 58/18
across [2] 44/20 44/21
Act [1] 6/10
action [2] 13/2 64/8
actions [1] 13/21
actively [1] 11/13
actor [1] 54/18
actually [7] 47/12 68/12 78/13 82/1 98/25
99/13 107/16
addition [2] 9/1 10/6
additional [3] 5/8 9/1 80/10
administrative [3] 46/3 46/6 46/15
admissibility [1] 9/14
admissible [2] 9/24 14/8
admission [1] 9/21
admit [4] 32/3 34/9 40/20 71/14
admonition [2] 67/16 110/5
adopts [1] 6/9
advance [1] 22/21
advisor [1] 35/1
advisory [3] 2/15 4/10 27/6
afoul [3] 21/6 25/19 26/12
after [19] 30/18 30/23 36/5 48/12 54/7 56/18
64/11 67/4 71/14 74/20 74/20 85/25 86/16
100/19 101/9 101/23 102/18 102/24 103/23
afternoon [1] 69/1
again [5] 37/21 63/3 66/2 84/9 108/2
against [9] 7/18 8/4 8/11 17/15 17/23 54/13
56/5 72/19 73/18
agency [2] 15/4 15/8
agent [9] 4/7 5/23 6/1 18/11 20/19 20/20 27/3
43/24 44/3
agent's [2] 6/3 6/10
agents [8] 11/23 18/7 18/10 18/19 20/22
21/16 43/17 43/22
ago [2] 36/16 98/22
agree [8] 22/20 24/13 24/19 69/12 70/19
100/25 102/3 102/8
agreed [1] 56/4
agreement [30] 23/14 23/17 23/19 24/6 24/9
46/22 47/3 47/4 49/11 49/14 51/8 51/12 51/15
52/10 55/25 56/2 56/18 56/23 61/1 64/4 79/4
79/7 79/12 79/14 79/18 79/23 81/20 81/25
82/17 83/4
agreements [3] 64/7 64/8 64/9
ahead [2] 38/11 105/11
Airbnb [1] 88/5
Alex [1] 27/1
ALEXANDER [2] 2/5 4/6
all [39] 5/10 5/11 6/2 8/23 9/20 11/19 12/16
12/18 16/2 18/2 18/21 22/9 23/8 23/8 23/11
23/23 24/7 24/12 25/9 33/12 38/3 39/2 42/10
43/18 48/13 57/10 59/9 67/4 67/9 75/9 82/24
91/6 92/22 93/3 94/22 96/24 102/7 108/21
108/25
all-day [1] 57/10
allegation [1] 70/18 73/15 73/17
allegations [9] 6/13 68/10 72/14 72/19 73/5
73/8 73/14 73/17 76/1
alleged [5] 75/12 75/16 75/18 100/1 105/25
allegedly [3] 69/21 86/24 88/14
alleging [1] 59/15
allow [3] 68/3 70/25 72/3
allowed [1] 4/19
almost [4] 37/17 67/6 85/1 101/1
along [4] 7/8 20/24 37/20 75/7
already [2] 7/16 12/11
also [12] 5/21 7/17 10/20 35/17 35/18 39/4
60/17 60/19 75/12 77/24 85/10 86/4
although [1] 22/8
am [10] 10/5 23/9 23/24 35/19 36/4 48/11
63/24 70/15 79/7 92/12
ambiguous [2] 46/10 46/17
AMERICA [3] 1/9 4/4 26/25
among [1] 16/18

amount [4] 33/7 60/19 61/6 96/14
an [93] 33/2 / 36d
Ana [4] 1/16 1/20 2/11 4/1
analysis [1] 6/9
Andre [1] 57/12
Angeles [1] 2/8
angry [1] 75/10
another [12] 33/14 52/15 57/21 66/14 75/21
75/24 77/15 101/13 107/11 107/15 108/1
108/3
answer [15] 45/4 46/5 48/8 49/2 50/2 59/8
60/12 63/21 77/13 77/19 82/4 82/7 90/14
96/21 101/17
answered [7] 42/25 50/7 51/20 56/15 62/9
77/2 82/21 100/5 100/11
answering [1] 78/11
answers [4] 40/5 48/3 48/14 48/19
anticipating [2] 12/15 87/15
any [57] 5/8 6/7 9/1 10/7 10/12 10/13 11/7
11/20 13/17 14/16 15/17 17/13 17/19 17/25
18/2 21/13 21/14 21/14 21/14 21/24 22/6
22/17 24/15 39/8 39/23 41/16 56/5 58/14
61/20 62/6 67/17 67/19 69/11 70/10 79/10
79/21 84/4 86/23 86/25 91/13 93/6 93/25
98/12 98/16 99/8 100/9 100/21 101/15 101/18
102/22 104/11 104/16 105/4 106/15 106/17
108/11 110/6
anybody [2] 39/22 45/11
anyone [8] 14/24 67/17 78/10 78/18 91/17
91/23 106/16 110/5
anything [10] 10/14 20/16 23/4 37/20 62/15
67/6 67/7 69/7 98/12 103/20
anyway [1] 18/2
apologize [2] 78/14
app [8] 28/11 28/16 28/16 28/23 89/21 90/4
90/8 94/9
appear [1] 9/24
appearance [1] 17/8
APPEARANCES [2] 2/1
appears [6] 29/20 30/3 33/21 35/6 36/11
39/17
apply [1] 55/11
appreciated [1] 33/20
approach [2] 58/7 72/22
appropriate [2] 20/8 69/10
Apps [1] 92/14
Apps [13] 47/20 60/10 99/20 99/22 100/19
100/20 100/22 100/22 101/1 101/2 101/7
101/9 101/24
April 1st [1] 47/20
April 22 [3] 101/1 101/7 101/9
April 22nd [3] 100/20 100/22 101/24
April 9 [1] 100/22
April 9th [4] 99/20 99/22 100/19 101/2
arbitration [23] 7/23 7/25 8/2 8/4 8/12 8/18
9/14 9/16 10/3 10/4 10/13 10/18 10/20 11/3
11/5 12/24 13/4 13/7 13/7 13/17 14/22 16/13
16/16
arbitrator [6] 13/9 13/15 14/20 15/7 15/17
15/20
arbitrator's [3] 9/19 9/21 14/7
are [69] 5/18 6/11 6/11 6/16 8/24 9/4 9/6 11/8
11/9 11/22 11/22 12/7 12/13 16/7 18/14 20/2
20/22 21/1 22/4 24/15 25/5 27/15 27/21 27/11
29/5 30/3 32/10 33/3 36/2 37/11 37/25 38/20
38/24 38/25 40/7 48/7 48/13 48/14 48/14 64/6
64/15 64/18 68/4 68/16 70/20 71/10 75/17
77/10 77/12 78/15 79/14 79/15 79/24 81/14
81/18 82/19 84/8 87/6 90/7 90/12 90/14 93/3
93/16 94/3 94/4 94/5 102/12 104/10 106/15
area [1] 23/16
areas [3] 23/12 71/1 72/4
aren't [1] 90/12
argue [1] 70/21
argument [2] 14/5 44/11
Argumentative [1] 100/4
around [7] 52/22 66/4 83/4 92/1 92/15 92/18
93/4 95/20 95/25
as [97] 4/10 4/11 9/9 9/14 9/19 11/1 11/9 12/5

13/11 13/11 13/14 13/25 14/6 14/10 14/16
14/19 14/19 14/24
19/18 21/4 22/25 23/9 23/12 24/19 25/8 25/11
25/12 31/6 31/22 33/10 37/11 43/16 43/16
45/3 47/15 52/5 54/8 54/22 59/9 59/9 62/14
64/12 64/24 64/19 68/15 69/1 70/21 72/10
73/6 73/22 73/23 74/15 75/11 75/11 83/15
84/2 84/15 84/17 84/18 84/18 85/9 85/13
85/17 87/24 88/20 89/11 89/15 89/23 90/7
90/7 90/8 90/16 91/14 93/2 93/16 94/5 96/18
96/24 98/16 98/21 99/14 100/8 101/17 101/24
101/24 101/24 102/21 103/22 104/23 105/2
105/5 105/19
Aside [1] 54/3
ask [30] 7/24 14/9 24/14 39/20 48/3 48/18
48/22 49/5 49/7 60/5 60/14 64/25 66/2 67/10
71/1 71/1 71/6 71/10 71/12 76/1 84/9 89/18
91/3 91/17 91/21 95/2 97/7 99/3 108/13
108/14
asked [51] 5/7 11/20 16/15 18/18 23/21 24/1
41/5 44/22 47/25 48/8 48/14 49/11 49/17
49/20 49/23 50/4 50/11 51/20 56/15 61/14
62/9 62/14 63/20 65/5 65/12 67/24 74/2 76/9
78/21 78/24 79/20 83/9 83/9 91/24 94/20
94/22 97/9 99/12 100/4 100/11 101/5 102/1
102/11 106/2 106/23 108/15 108/21 109/4
109/5 109/5 109/7
asking [19] 10/6 19/6 25/21 30/3 30/20 39/9
39/11 41/24 62/4 63/22 68/11 73/16 75/18
78/8 78/10 78/18 84/7 89/14 99/17
asks [1] 39/8
aspects [2] 46/3 46/6
asserted [1] 60/16
assistance [1] 41/16
Assistant [3] 2/4 2/6 2/10
assisting [2] 88/1 88/5
associate [3] 35/1 41/2 41/11
associated [4] 23/3 59/16 69/22 70/3
assume [1] 11/7 11/9 19/13 90/25 95/17
102/24
assumed [1] 86/6
assuming [1] 24/11
attached [2] 78/16 78/25
attachment [9] 32/19 32/22 32/23 76/10
76/11 76/16 77/4 77/15 77/18
attachments [3] 77/10 78/10 78/19
attempt [2] 9/8 72/11
attempted [1] 55/3
attempting [2] 21/19 71/9
attending [1] 96/5
attention [2] 73/1 83/1
attorney [14] 2/3 2/4 2/6 2/10 44/6 60/13
68/23 68/24 68/25 78/24 80/1 81/24 88/25
99/4
attorney/client [3] 60/13 78/24 88/25
attorneys [9] 11/21 11/22 12/2 45/23 53/10
65/19 66/8 84/12 87/1
attorneys' [2] 25/23 47/6
attributable [1] 11/22
August [9] 1/17 4/1 5/5 5/6 5/7 59/2 59/3 59/5
111/13
August 2 [1] 5/7
August 2nd [1] 5/6
August 4th [1] 59/5
August 5th [1] 59/2
authenticate [3] 8/22 9/20 16/24
authentication [1] 10/8 17/2
authorize [2] 37/10 38/16
Authorized [2] 11/24 11/25
AVENATTI [55] 1/11 2/14 4/4 4/10 7/25 8/12
10/2 10/9 10/14 11/6 11/17 13/11 14/10 16/11
17/16 18/6 18/8 21/8 23/6 23/15 26/25 27/6
28/13 31/9 31/10 36/3 37/23 38/2 39/16 41/25
42/1 43/4 44/22 45/6 45/18 45/22 45/24 46/13
52/4 52/8 52/11 57/2 59/13 59/22 60/3 62/21
65/6 65/10 65/13 65/16 65/19 67/5 72/3 72/5
95/23
Avenatti's [6] 9/23 11/12 13/25 104/14 104/23
107/7

**A**

**Avenida [1]** 2/16
**Avon [1]** 64/7
**await [1]** 16/4
**award [1]** 14/7
**aware [14]** 22/1 48/7 48/11 48/12 48/14 64/6 64/15 64/18 66/7 66/11 81/14 81/18 82/19 106/15

**B**

**back [20]** 13/1 16/7 24/24 25/13 30/9 35/3 47/12 51/10 70/7 71/18 72/3 78/13 82/1 85/10 85/12 85/13 87/24 104/3 104/6 104/7
**badly [1]** 75/11
**balance [1]** 63/15
**balancing [2]** 20/8 20/10
**bank [40]** 29/24 30/6 30/8 33/19 34/21 35/2 35/8 35/9 35/19 37/10 37/15 37/15 37/16 37/17 37/19 37/24 37/25 38/1 41/5 41/6 41/8 41/13 98/3 103/4 103/24 104/4 104/5 104/13 104/14 104/24 104/23 105/14 106/12 106/17 107/4 107/5 107/8 107/8 107/19 107/20
**banked [1]** 41/6
**banking [3]** 41/10 95/22 96/6
**bankruptcy [2]** 59/14 69/25
**banks [14]** 38/17 38/25 41/24 42/2 102/12 102/24 104/11 104/20 107/11 107/14 107/16 107/25 108/6 108/11
**bar [1]** 55/3
**based [5]** 9/22 11/10 16/8 20/1 68/19
**basically [2]** 28/24 70/3
**basis [10]** 9/20 20/3 20/4 20/5 20/12 21/9 68/11 68/13 68/18 96/11
**Bates [3]** 24/5 24/8 91/11
**be [101]** 4/17 5/15 6/6 6/10 7/11 9/10 9/20 9/24 10/8 11/12 13/14 13/16 14/7 14/9 15/21 15/23 16/7 16/11 17/7 17/16 17/25 18/1 19/6 20/9 20/23 24/1 24/19 25/7 25/8 25/12 25/14 26/19 30/3 32/1 32/5 33/7 34/7 34/11 35/2 35/6 35/10 35/18 35/20 35/24 36/11 36/21 38/5 38/9 38/16 38/23 39/11 40/4 40/18 40/22 41/4 41/9 41/16 42/2 43/18 43/22 44/3 45/8 47/16 48/19 50/14 52/12 54/9 57/2 57/6 59/11 63/19 64/13 67/8 67/15 68/2 69/19 70/16 71/3 71/21 72/18 73/13 75/3 80/18 83/6 85/21 86/25 88/12 90/10 90/17 92/21 103/10 105/12 105/21 107/21 108/15 109/3 109/16 109/17 109/19 109/21
**because [24]** 7/17 9/10 11/22 14/25 21/8 23/1 24/9 40/3 46/14 52/14 56/10 67/7 69/7 70/15 70/17 81/11 82/10 88/13 90/11 90/14 99/17 102/18 103/3 105/24
**become [1]** 6/12
**been [24]** 5/11 5/11 6/22 15/4 21/15 23/8 23/10 23/14 29/20 37/3 40/6 41/24 42/19 44/6 62/15 69/5 74/25 78/7 85/12 86/17 89/2 97/10 99/5 105/15
**before [31]** 16/17 17/11 22/15 22/17 26/11 26/16 30/13 30/13 30/13 45/23 47/19 48/17 50/22 52/14 63/4 65/3 65/8 65/8 70/6 70/21 71/7 75/4 77/21 78/11 87/25 88/19 94/1 99/13 101/17 102/3 105/17
**began [3]** 43/12 73/9 74/23
**begin [1]** 43/6
**beginning [3]** 24/20 31/6 57/15
**behalf [6]** 4/6 7/2 11/21 27/2 66/24 84/1
**being [12]** 15/1 20/2 21/4 25/5 36/8 57/16 70/2 76/11 78/6 104/19 105/1 107/17
**believe [36]** 8/16 8/21 12/23 13/13 29/2 31/9 32/1 34/7 36/6 36/15 40/18 42/25 45/12 45/14 56/11 59/11 60/16 62/13 64/22 65/17 68/10 69/6 72/13 80/2 80/5 81/19 87/12 87/15 87/22 90/10 91/8 93/11 94/2 94/13 98/19 100/23
**believed [1]** 109/24
**below [5]** 31/12 33/4 34/22 38/3 38/18
**bench [1]** 13/14
**benefit [1]** 76/7
**benefits [1]** 56/7
**best [3]** 60/24 84/16 91/23

**between [101]** 5/8 5/9 46/22 52/21 99/18 100/9 100/23 100/24 100/25 101/6
**beyond [2]** 13/19 88/24
**bifurcate [1]** 13/6
**bifurcated [1]** 8/13
**binding [1]** 15/18
**bit [3]** 14/18 41/18 52/5
**black [2]** 102/20 102/20
**blow [3]** 32/25 76/13 106/20
**bogus [1]** 106/6
**books [1]** 95/7
**Boston [4]** 41/2 41/4 41/6 41/8
**both [4]** 35/10 35/11 63/12 64/9 71/5 107/21 108/6 108/11
**bottom [5]** 29/19 36/11 40/25 62/2 77/4
**Boucher [5]** 68/24 68/25 69/1 69/6 69/15
**bought [1]** 85/12
**Brady [3]** 6/18 23/9 23/24
**brand [1]** 85/6
**BRANDON [1]** 2/4
**break [2]** 67/14 110/3
**breaking [1]** 109/25
**breakouts [1]** 75/5
**breakup [1]** 75/10
**BRETT [3]** 2/9 4/5 27/2
**brief [4]** 14/10 14/15 15/25 18/6
**briefing [1]** 16/5
**briefly [2]** 13/23 20/18
**briefs [1]** 9/13
**bring [2]** 7/5 81/19
**broken [1]** 74/21
**brokerage [1]** 81/2
**brought [3]** 11/7 52/3 68/19
**Building [1]** 2/10
**Burton [1]** 75/7
**busy [4]** 38/24 40/4 96/1 96/1
**butcher [1]** 75/5
**buyout [1]** 80/7

**C**

**CA [4]** 1/20 2/8 2/11 2/16
**CALIFORNIA [3]** 1/5 1/16 4/1
**call [24]** 12/7 12/13 12/21 17/3 17/3 19/21 21/8 22/7 22/15 26/3 26/6 34/19 37/18 47/24 50/20 50/22 50/23 51/2 54/13 94/9 94/24 104/3 104/6 104/7
**called [9]** 28/18 41/15 43/23 55/24 69/1 70/2 95/2 95/3 95/9
**calling [5]** 12/9 12/15 22/12 94/11 106/16
**calls [4]** 76/21 83/21 90/3 97/2
**came [5]** 45/18 46/1 85/25 90/24 96/15
**camera [4]** 4/14 4/15 5/3 5/4
**can [52]** 7/14 8/19 9/10 9/20 10/8 12/23 15/25 16/9 16/18 17/18 21/1 21/4 25/7 25/16 25/22 25/23 26/6 32/25 33/24 34/18 35/6 35/9 35/24 36/11 36/13 38/20 40/10 41/10 41/16 49/9 49/10 54/8 58/7 61/8 63/3 66/2 70/9 70/20 70/21 72/3 75/22 76/6 77/8 87/14 93/4 99/1 101/24 102/17 103/7 107/20
**can't [17]** 17/24 21/17 21/23 24/1 24/1 39/23 57/23 64/24 65/2 77/22 77/23 88/20 88/24 93/2 93/5 98/24 105/19
**cannot [1]** 23/22
**car [2]** 50/16 86/9
**care [1]** 83/22
**Carlos [3]** 4/7 27/3 57/11
**Carmona [1]** 5/23
**Carrey [19]** 54/14 54/18 54/23 55/15 65/23 66/5 66/16 67/25 68/1 68/22 70/8 72/9 72/11 72/15 73/10 73/11 73/18 75/12 75/15
**Carrey's [1]** 69/5
**carries [1]** 43/24 102/18
**case [68]** 9/6 12/19 14/8 15/5 15/24 18/1 18/3 19/17 19/13 19/18 19/22 20/22 21/3 21/3 21/10 22/7 22/16 22/18 43/17 43/22 46/22 46/24 47/5 49/21 50/5 51/23 52/1 52/4 52/6 52/13 52/16 53/1 53/7 53/10 53/13 53/16 53/20 54/11 54/12 54/13 54/16 54/22 55/4 55/15 55/25 59/10 65/23 66/5 66/7 66/14

**67/8 67/17 67/18 67/19 67/24 67/25 68/19 69/16 69/24 69/2 69/4 69/8 69/4 85/13 110/6**
**cases [17]** 20/6 64/7 49/12 49/22 52/10 59/16 62/16 62/19 63/13 65/4 65/9 65/12 65/15 65/20 65/22 66/4 69/22
**Cat [5]** 74/20 74/21 75/8 75/10 75/14
**category [1]** 69/20
**Catherine [1]** 10/24
**caused [1]** 67/8
**Cefali [3]** 4/11 25/15 27/7
**center [2]** 102/12 106/3
**CENTRAL [2]** 1/5 18/10
**CEO [1]** 87/2
**certain [1]** 13/3 13/10
**certainly [1]** 9/17
**CERTIFICATE [1]** 111/4
**CERTIFIED [1]** 1/9
**certify [1]** 111/6
**chain [2]** 40/14 40/17
**changed [1]** 68/23
**character [1]** 68/4
**charge [1]** 59/13
**charged [1]** 43/23
**chart [3]** 18/8 25/5 25/9
**chat [1]** 94/23
**check [5]** 31/13 33/22 97/13 103/1 103/24
**checked [1]** 31/9
**checking [6]** 39/14 39/15 100/13 100/16 100/23 102/19
**chief [3]** 2/5 19/22 22/7
**Chris [1]** 18/7
**Circuit [1]** 6/8
**circumstances [1]** 79/25
**cite [1]** 55/11
**City [2]** 41/13 41/15
**civil [4]** 7/18 9/16 9/22 17/22
**claim [2]** 72/14 105/8
**claimed [2]** 60/1 74/25
**claiming [3]** 59/21 72/10 93/16
**claims [1]** 11/6
**clarification [1]** 20/1
**clarified [1]** 31/8
**class [1]** 64/8
**class-action [1]** 64/8
**clean [1]** 75/1
**clear [4]** 4/13 24/19 57/2 88/12
**Clemente [1]** 2/16
**client [13]** 7/19 17/15 35/1 37/12 41/2 60/13 72/16 72/18 72/19 78/20 84/8 84/11 81/23 88/25
**client's [5]** 7/22 8/16 10/3 16/12 99/7
**close [1]** 85/16
**closed [4]** 4/24 38/25 102/12 102/24
**closing [1]** 44/11
**co [2]** 21/17 21/23
**co-op [2]** 21/17 21/23
**code [1]** 44/1 111/7
**Cohen [1]** 75/7
**collateral [1]** 16/1
**collaterally [2]** 15/13 15/14
**collection [1]** 99/5
**come [5]** 90/19 106/9 108/5 108/8 108/10
**comes [1]** 26/20
**commit [2]** 21/24 22/5
**committed [1]** 59/16
**committing [1]** 69/21
**communicate [6]** 21/2 37/24 40/3 47/19 94/9 99/24
**communicated [4]** 47/17 93/9 102/6 104/19
**communicating [5]** 104/10 104/13 106/16 107/25 108/2
**communication [8]** 21/13 42/2 42/10 64/15 97/9 99/18 107/11 107/18
**communications [23]** 5/9 51/18 53/23 79/6 83/19 84/1 84/5 84/7 84/8 89/24 91/4 91/6 93/25 98/3 98/6 98/9 98/13 98/17 98/25 101/16 101/18 101/22 104/16
**companies [1]** 84/24
**company [4]** 80/13 80/21 80/25 85/12

**C**

**compel** [2] 8/12 13/3
**compensation** [1] 14/11
**complaint** [3] 13/3 72/20 74/3
**complete** [1] 6/11
**completely** [2] 8/22 75/1
**compliance** [1] 20/14
**complies** [5] 27/25 31/17 33/25 40/11 76/5
**comply** [2] 17/19 20/7
**concern** [1] 7/14
**concerned** [1] 101/4
**concerning** [2] 26/4 96/19
**conclude** [1] 5/19
**concluded** [2] 5/3 6/2
**conduct** [5] 11/12 23/22 54/24 55/4 68/1
**Conference** [1] 111/11
**conferring** [1] 43/2
**confidential** [1] 13/18
**confirm** [2] 24/14 105/22
**confirmation** [2] 32/20 37/3
**confirmation.pdf** [2] 32/18 32/21
**conformance** [1] 111/10
**confused** [1] 84/10
**conjecture** [1] 42/5
**connection** [35] 9/13 10/13 11/5 15/5 15/10 15/24 17/14 22/15 43/17 52/25 53/6 53/10 53/13 53/15 54/16 55/4 55/14 60/11 62/6 62/15 65/3 65/15 65/18 66/7 66/12 66/16 79/11 82/17 84/24 86/20 86/24 87/8 88/9 88/18 99/8
**considerable** [2] 96/15 97/1
**considerations** [1] 20/9
**conspired** [1] 75/14
**consternation** [1] 7/14
**constitute** [1] 15/8
**constituted** [1] 82/10
**contact** [5] 35/24 39/24 41/24 103/25 103/25
**contacted** [3] 51/19 80/1 104/2
**contained** [1] 93/7
**content** [2] 18/20 19/17
**contentious** [3] 81/8 84/3 84/24
**context** [7] 7/23 9/16 9/25 22/22
**contingency** [1] 50/6
**continue** [2] 8/21 21/2
**continued** [3] 3/6 27/16 71/6
**continues** [1] 107/22
**contract** [2] 78/25 82/9
**control** [3] 17/24 37/18 85/11
**convenience** [1] 14/16
**conversation** [3] 41/12 42/16 42/18
**conversations** [1] 101/20
**converse** [1] 87/8
**conveying** [1] 38/1
**cooperating** [4] 35/8 35/23 107/4 107/19
**copied** [6] 28/10 79/8 83/21 105/9 105/17 105/23
**copies** [1] 5/15
**copy** [9] 8/19 8/19 13/3 16/10 16/11 31/25 34/6 40/17 90/23
**correct** [82] 12/23 19/23 28/6 29/17 31/15 32/13 35/16 41/21 45/18 45/19 46/20 49/3 50/3 50/8 50/10 51/6 51/22 53/1 53/14 53/18 53/22 54/15 57/12 57/20 60/9 62/20 62/24 63/2 65/14 65/23 66/5 66/6 66/9 73/6 77/6 77/11 79/5 79/13 80/4 80/7 80/20 80/24 81/4 81/13 82/18 84/13 84/14 85/23 86/2 86/5 86/19 86/22 88/4 88/7 88/11 88/16 90/20 92/6 92/8 92/25 93/5 93/24 94/16 95/11 95/14 96/11 96/16 96/19 97/19 97/21 99/2 101/3 101/8 104/9 104/15 104/18 104/21 106/1 107/3 108/24 109/1 111/8
**correctly** [3] 59/5 93/15 101/23
**correspondence** [1] 23/18
**cosmetics** [5] 85/2 85/5 85/6 85/11 85/13
**costs** [4] 23/16 53/19 65/3 66/16
**could** [26] 11/12 15/23 27/23 29/5 29/18 31/12 32/7 33/12 34/13 35/3 35/21 36/10 37/20 43/22 44/3 55/8 71/20 75/9 75/11 78/6 81/2 82/25 96/22 107/21 109/21
**couldn't** [5] 37/18 37/19 37/19 37/24 105/24
**counsel** [7] 12/6 14/7 18/3 27/8 62/1 107/10
**country** [1] 69/12
**couple** [2] 72/3 80/9
**course** [5] 5/17 48/16 99/4
**court** [27] 1/4 6/9 7/3 7/5 7/13 8/25 10/6 13/2 13/14 14/19 15/4 17/8 20/6 20/7 22/5 25/18 48/9 67/11 68/2 70/25 71/2 71/10 71/11 71/12 71/13 71/15 111/16
**Court's** [4] 17/18 21/13 80/15 89/5
**Courthouse** [1] 1/19 2/7
**courtroom** [5] 4/24 5/2 20/23 21/5 21/22
**Courts** [1] 55/20
**credentials** [1] 103/7
**credibility** [1] 70/6
**crime** [1] 11/13
**criminal** [8] 2/5 9/25 13/8 17/14 56/5 56/11 69/11 78/5
**cross** [5] 3/4 3/11 23/23 26/10 43/8 44/13 44/16 68/3 74/21 75/2 75/6
**cross-defendant** [1] 74/21 75/2 75/6
**cross-examination** [4] 23/23 26/10 43/8 68/3
**cross-examined** [1] 44/13 44/16
**Cummings** [1] 4/11 25/15 27/7
**Cynthia** [1] 75/7

**D**

**Damon** [2] 45/13 45/15
**date** [14] 32/15 33/9 57/1 57/23 57/24 58/1 58/16 58/24 74/11 84/22 97/22 100/19 101/10 111/13
**dated** [1] 5/22
**daughter** [1] 50/21
**day** [23] 1/12 28/1 31/22 33/15 34/4 35/6 45/25 45/25 46/2 46/2 46/6 46/6 46/15 46/15 48/12 57/10 92/3 94/24 96/11 96/11 98/18 100/10 101/19
**days** [12] 41/14 56/25 97/24 98/1 98/4 98/10 98/14 99/21 99/22 99/24 101/13 101/16
**de** [2] 84/16 84/17
**deadline** [1] 22/2
**deal** [1] 16/18
**deals** [1] 11/4
**dealt** [1] 86/24
**DEAN** [2] 2/15 2/15 4/10 27/6
**Dear** [1] 41/12
**decedent** [1] 69/4
**decided** [1] 45/20
**deciding** [1] 15/4
**decision** [5] 12/21 13/6 13/9 20/10 22/10
**declaration** [1] 7/9
**deemed** [1] 15/21
**defendant** [31] 1/12 2/13 7/18 8/12 8/16 8/19 9/4 9/8 9/12 18/22 28/16 28/19 30/24 32/11 32/14 36/3 36/16 37/22 39/24 40/15 42/11 42/16 60/5 67/11 68/11 70/25 71/3 71/8 74/21 75/2 75/6
**defendant to** [1] 67/11
**defendant's** [1] 7/20
**defendants** [1] 13/10
**defense** [10] 3/10 3/13 5/16 12/19 14/11 14/16 22/9 22/13 22/16 22/22
**defraud** [1] 15/22
**delay** [1] 18/20
**DeLeassa** [1] 18/7
**deleted** [1] 105/25
**deliver** [1] 16/10
**demands** [3] 72/15 73/10 74/23
**demonstrative** [2] 25/10 25/12
**demonstratives** [2] 25/4 25/8
**department** [2] 41/13 70/1
**depending** [3] 15/7 15/9 15/22
**deposed** [1] 10/25
**deposition** [9] 8/17 9/4 10/3 10/17 10/19 10/21 11/3 12/25 16/12
**describe** [2] 84/17 107/7
**described** [1] 84/2
**description** [1] 6/16
**desire** [2] 17/3 85/9
**destruct** [1] 28/23
**detail** [1] 41/18
**details** [2] 95/21 96/6
**determination** [1] 19/17
**determine** [3] 6/17 18/25 106/6
**determines** [1] 17/8
**did** [129]
**didn't** [21] 25/19 37/4 43/25 45/25 46/2 46/2 46/5 62/22 67/6 67/7 69/6 76/24 82/7 84/4 87/21 89/11 89/12 103/4 103/12 104/7 108/25
**difference** [1] 12/1
**different** [7] 28/10 28/11 28/16 29/9 38/9 83/25 94/11
**difficult** [1] 40/3
**digress** [1] 87/24
**direct** [21] 3/4 3/11 4/16 19/15 23/13 23/17 23/22 27/16 46/21 48/5 61/15 67/11 71/11 78/22 80/18 82/25 86/7 86/15 89/19 95/25 105/12
**directed** [1] 88/12
**directing** [2] 24/22 73/1
**direction** [7] 52/25 53/9 60/5 60/15 88/8 93/17 93/20
**directly** [4] 12/2 52/11 70/5 87/5
**disbursement** [1] 81/23
**disbursements** [2] 85/22 85/25
**disclose** [1] 22/21
**discovered** [1] 69/17
**discretion** [1] 71/13
**discuss** [3] 36/7 67/16 110/5
**discussion** [1] 19/1
**displayed** [1] 74/15
**displaying** [1] 74/3
**dispute** [4] 13/19 58/14 60/11 85/22
**disseminated** [1] 18/1
**DISTRICT** [3] 1/4 1/5 18/10
**divided** [1] 29/8
**DIVISION** [2] 1/6 2/5
**do** [153]
**Docket** [4] 7/8 7/10 18/6 26/1
**doctored** [1] 69/5
**doctors** [4] 88/21 88/23 89/1 89/9
**document** [25] 32/22 34/1 37/2 40/12 47/3 47/7 47/9 52/23 52/24 58/9 58/11 58/13 64/4 72/24 73/4 73/22 81/14 81/18 82/19 82/25 99/17 100/25 101/10 101/22 102/17
**documentation** [2] 63/22 69/3
**documented** [2] 52/20 52/22
**documents** [18] 8/18 8/23 16/25 17/13 17/18 18/15 18/21 18/21 18/24 19/18 23/24 24/12 60/2 63/10 63/24 64/3 64/6 78/3
**does** [22] 12/4 17/21 29/23 30/7 33/18 36/23 37/9 38/4 38/14 38/22 39/7 39/20 58/11 66/21 70/13 73/2 73/4 74/22 82/14 82/15 107/10 107/23
**doesn't** [2] 24/15 55/11
**doing** [5] 21/17 21/23 28/9 44/13 61/12
**dollar** [2] 62/25 65/1 100/2
**dollars** [14] 29/10 62/21 63/5 63/10 64/5 64/16 64/19 72/11 72/16 73/11 74/24 75/9 83/6 85/17
**don't** [87] 9/20 10/5 12/23 14/7 16/2 17/17 22/9 23/17 23/19 23/20 24/10 25/6 26/12 42/25 45/12 45/14 47/8 47/12 47/15 53/6 53/9 53/12 53/15 53/19 55/20 57/1 57/13 58/1 58/15 60/12 60/18 61/24 64/24 65/2 65/7 65/20 66/19 66/22 66/23 67/3 68/10 69/9 70/19 72/20 72/20 76/11 76/15 77/13 77/19 78/2 78/6 78/7 78/8 78/11 80/14 81/17 87/22 89/9 90/11 90/14 90/25 92/23 93/8 93/11 94/13 95/18 95/19 95/24 96/22 98/19 98/20 98/21 100/23 101/17 102/24 103/6 104/5 104/19 104/24 105/1 105/3 105/7 105/20 107/16 108/2
**done** [6] 26/11 37/6 50/25 53/15
**door** [1] 70/16
**dot** [2] 102/20 102/20
**dotted** [1] 33/4
**down** [11] 25/23 40/6 45/2 48/9 59/5 67/21

## D

**down... [5]** 67/22 77/9 89/17 89/17 89/21
**download [1]** 91/13
**drafted [1]** 28/7
**Drew [1]** 6/25
**drive [1]** 8/18
**drives [2]** 16/9 17/12
**due [2]** 24/2 29/8
**during [18]** 5/17 42/18 48/8 51/3 58/17 75/6 89/19 98/1 98/4 98/7 98/10 98/13 98/17 98/25 100/9 101/16 101/19 109/8
**duties [3]** 21/9 21/18 21/22

## E

**e-mail [38]** 31/10 31/14 31/20 31/24 31/25 32/8 32/11 32/14 32/15 32/17 32/19 32/24 33/16 33/22 34/3 34/6 34/14 34/16 34/18 34/23 34/25 35/1 36/15 40/14 40/17 40/25 41/1 41/10 41/19 41/23 62/2 64/4 64/15 76/10 76/12 76/25 77/9 78/11
**e-mailed [1]** 36/13
**e-mailing [1]** 106/16
**e-mails [11]** 5/8 5/10 5/11 5/13 5/13 23/11 23/20 23/23 78/15 83/22 90/2
**each [10]** 5/13 18/15 18/19 25/16 29/10 38/10 38/17 42/3 48/8 48/12
**Eagan [32]** 8/5 8/12 9/11 10/14 10/20 13/11 14/12 14/21 23/15 44/22 45/6 45/18 45/22 45/23 46/13 52/4 52/8 52/11 59/13 59/22 60/2 62/21 65/5 65/9 65/13 65/16 65/19 67/5 95/22 104/14 104/23 107/7
**earlier [4]** 36/14 41/5 58/19 65/23
**earliest [1]** 14/15
**early [3]** 19/22 65/8 80/2
**easel [1]** 25/23
**effect [1]** 15/18
**effort [1]** 54/17
**either [10]** 12/24 52/11 62/19 63/1 71/14 79/23 80/2 81/14 105/2 105/7
**elicited [4]** 12/11 19/14 23/12 23/17
**eliminate [1]** 23/2
**elmo [1]** 26/14
**else [6]** 4/16 20/16 23/4 39/22 53/6 92/21
**EM [4]** 85/2 85/5 85/11 85/13
**employee [1]** 10/13 10/22 10/23
**employees [3]** 44/23 45/7 45/21
**employment [1]** 23/19
**enable [1]** 94/9
**encouraged [1]** 75/8
**encrypted [1]** 28/23
**end [5]** 5/1 28/1 38/3 39/3 42/15
**ended [2]** 10/21 63/20
**enforced [1]** 22/24
**engaged [1]** 72/10
**enough [6]** 4/13 24/3 25/18 69/19 109/18 109/19
**ensure [1]** 25/4
**entered [2]** 55/24 79/22
**entering [1]** 79/18
**entirety [5]** 24/21 61/4 73/15 73/16 74/17
**entities [1]** 13/10
**entitled [8]** 8/16 23/9 23/24 52/1 52/17 82/20 83/1 111/9
**entitling [1]** 52/9
**entrance [1]** 84/23
**entrance/exits [1]** 84/23
**entry [1]** 102/21
**equity [4]** 80/11 80/14 80/22 84/23
**equivalents [1]** 16/2
**erase [1]** 28/24
**especially [4]** 7/15 7/17 12/10 15/5
**essentially [3]** 9/3 22/22 71/9
**established [1]** 82/24
**establishes [1]** 68/10
**establishing [3]** 64/16 64/18 81/15
**estimate [1]** 61/8
**estop [1]** 15/13
**estoppel [1]** 16/1
**estopping [1]** 15/15

**even [2]** 20/8 69/24
**events [1]** 88/14
**ever [34]** 42/11 42/21 44/8 44/11 44/13 45/11 45/13 47/9 50/23 61/20 61/23 61/25 62/6 64/23 64/25 76/1 78/8 78/10 78/18 87/8 87/11 87/13 91/3 91/17 91/24 92/17 93/9 94/8 94/11 99/4 106/6 108/5 108/8 108/10
**every [6]** 22/12 22/15 46/22 47/5 48/7 93/16
**everyone [1]** 4/16
**everything [5]** 13/6 24/4 42/19 54/7 64/11
**evidence [12]** 14/13 32/6 34/12 40/23 54/24 55/20 60/2 68/1 69/16 71/10 88/9 106/15
**evidentiary [1]** 15/6
**exact [2]** 15/19 57/1
**exactly [1]** 73/6
**examination [8]** 5/17 23/23 26/10 27/16 43/8 48/5 68/3 89/19
**examined [2]** 44/13 44/16
**except [1]** 25/9
**exchange [1]** 101/11
**exclude [1]** 21/9
**excluded [1]** 21/15
**exclusively [1]** 18/1
**excuse [1]** 4/16
**excused [1]** 17/7
**executed [1]** 93/4
**execution [1]** 83/20 84/12
**executives [2]** 83/20 84/12
**exercise [1]** 71/13
**exhibit [32]** 3/8 3/9 3/9 25/11 25/13 27/20 27/23 31/16 32/3 32/6 33/12 33/24 34/9 34/12 35/4 35/22 36/17 40/10 40/20 40/23 61/14 61/15 73/23 76/4 76/16 77/7 77/20 79/1 90/21 99/19 100/1
**Exhibit 1053 [1]** 73/23
**Exhibit 130 [2]** 61/14 61/15
**Exhibit 265 [2]** 76/4 77/20
**Exhibit 266 [1]** 79/1
**Exhibit 274 [5]** 27/20 27/23 33/12 35/4 90/21
**Exhibit 284 [3]** 31/16 32/3 36/17
**Exhibit 285 [2]** 33/24 34/9
**Exhibit 287 [2]** 40/10 40/20
**exhibits [5]** 3/7 3/13 5/18 16/12 26/4
**exists [1]** 81/25
**exit [2]** 87/5 87/9
**exits [2]** 84/23 84/23
**expand [1]** 81/10
**expectation [1]** 81/10
**expected [1]** 50/5
**expedition [3]** 8/24 14/3 14/5
**expended [2]** 65/15 65/19
**expenses [7]** 45/7 45/9 45/21 46/14 53/20 66/11 67/4
**experience [2]** 13/13 84/22
**expert [1]** 35/19
**experts [1]** 53/12
**explain [2]** 42/11 52/7 68/18
**exposure [1]** 56/11
**extended [1]** 70/10
**extent [4]** 9/9 9/12 21/21 60/20
**extort [2]** 54/18 75/14
**extortion [3]** 54/23 67/25 72/10
**extremely [1]** 96/1

## F

**F.3d [1]** 6/8
**face [1]** 74/3
**fact [17]** 5/16 22/6 22/16 30/22 43/21 48/7 60/18 68/6 68/9 69/17 75/3 75/13 90/2 90/11 93/19 105/22 107/10
**failure [1]** 20/7
**fair [7]** 31/25 34/6 40/17 79/12 79/17 81/7 92/1
**faith [4]** 8/25 68/11 68/13 68/18
**fall [2]** 6/15 70/13
**false [10]** 43/24 54/24 55/19 58/20 60/1 68/1 72/18 73/13 75/3 75/15
**falsely [1]** 74/25

**falsified [2]** 54/17 69/5
**familiar [2]** 50/16 70/8
**far [1]** 38/19 90/7 101/24
**Fast [1]** 42/15
**Fast-forwarding [1]** 42/15
**fault [1]** 13/21
**February [3]** 73/9 74/20 87/25
**fed [5]** 35/12 35/13 35/25 36/24 105/15
**federal [6]** 2/10 37/14 39/10 43/24 44/3 78/4
**fee [6]** 50/6 52/2 52/9 52/13 78/24 81/12 81/16 81/22
**fee-sharing [1]** 81/22
**fees [14]** 23/16 46/24 47/6 52/17 59/16 59/21 63/11 66/15 70/4 81/23 81/24 82/21 83/2 83/5
**fell [1]** 52/13
**few [6]** 11/19 23/7 28/14 38/11 83/21 93/19
**figure [3]** 30/21 38/17 108/7
**figured [1]** 69/2
**file [6]** 21/24 22/5 22/13 25/4 25/16 77/5
**filed [9]** 7/8 8/10 13/2 13/15 26/1 52/4 52/15 54/12 68/19
**filing [2]** 5/10 5/21
**filings [2]** 4/15 11/20
**FILIPPO [3]** 3/5 27/10 74/22 75/2 75/6
**filled [1]** 25/9
**final [2]** 10/22 17/11
**financial [2]** 95/22 103/7
**find [7]** 6/6 6/15 6/20 14/24 29/3 30/14 103/14
**finding [5]** 15/9 39/10 42/8
**findings [2]** 9/22 15/23
**fine [12]** 25/12 25/17 26/8 26/15 26/17 71/22 74/6 74/8 82/5 110/2
**finish [3]** 68/14 82/4 82/7
**firm [24]** 7/1 9/15 10/16 10/17 11/10 13/11 15/11 15/21 45/3 46/3 46/9 49/12 52/2 52/15 59/17 65/5 65/5 65/16 66/8 68/19 69/22 82/11 96/6 96/10
**first [31]** 9/19 11/19 23/1 23/7 25/3 29/11 32/7 33/4 35/10 47/15 50/12 50/20 51/22 51/25 57/13 74/11 85/25 86/16 93/22 94/22 94/22 102/13 102/19 103/1 103/24 105/8 105/11 105/16 105/21 107/21 108/20
**firsthand [2]** 53/23 54/1 79/10
**fishing [3]** 8/24 14/3 14/4
**five [7]** 14/13 18/9 43/25 44/18 44/19 57/22 58/19
**fix [2]** 109/19 109/19
**fixed [1]** 109/22
**flip [1]** 25/5
**focus [1]** 22/20
**focused [4]** 95/21 96/5 96/10 109/22
**focusing [2]** 32/14 40/25
**folks [2]** 12/17 12/18
**followed [1]** 69/17
**following [5]** 4/25 6/9 20/24 80/17 108/22
**follows [1]** 108/19
**foregoing [1]** 111/7
**forensic [1]** 99/3
**forgot [1]** 99/3
**form [2]** 67/17 110/6
**format [1]** 111/10
**former [5]** 9/23 10/13 10/16 10/23 69/4
**forward [3]** 29/24 34/17 68/15
**forwarded [5]** 31/10 34/22 36/16 40/14 41/19
**forwarding [5]** 32/10 34/25 41/23 41/25 42/15
**found [7]** 6/3 11/12 13/16 14/20 15/7 15/20 86/7
**foundation [2]** 17/2 42/23
**foundational [1]** 74/4
**four [5]** 8/11 8/24 9/3 10/11 44/19
**Fourth [1]** 2/11
**FOX [1]** 2/4
**Frank [9]** 8/7 8/7 9/11 10/15 12/16 12/21 14/1 14/19 14/20
**frankly [3]** 8/24 14/3 14/4
**fraud [10]** 11/14 14/12 14/17 54/23 59/16 67/25 69/21 70/3 70/17 72/10
**Frauds [2]** 2/6
**fraudulent [2]** 67/7 75/15

**F**

free [1] 82/11
Friday [1] 69/1
friend [1] 45/16
front [4] 4/18 10/9 14/8 48/10
funds [3] 40/5 40/7 42/19
further [10] 10/7 10/22 15/1 17/7 24/23 41/16
41/18 43/3 71/14 77/9

**G**

Galicia [2] 18/11 18/12
Gardner [29] 25/9 50/13 50/23 51/2 51/5 51/7
51/8 51/13 51/18 51/19 53/1 53/17 53/10 53/13
53/16 53/20 53/24 60/8 60/10 60/20 60/24
62/15 63/1 63/6 65/4 87/24 87/25 88/1 88/18
Gardner's [8] 47/13 47/16 49/21 52/6 52/16
52/18 54/13 89/2
gather [1] 88/9
gathered [1] 24/20
general [1] 102/8
generally [8] 48/19 65/21 83/12 96/19 97/4
102/10 108/4 109/22
gentleman [1] 41/14
gentlemen [4] 27/9 67/15 72/2 110/3
get [18] 23/16 34/19 35/10 35/25 65/6 65/13
67/6 67/7 75/8 80/7 81/12 81/15 85/13 95/6
99/13 102/3 103/7 107/21
getting [5] 16/7 37/25 84/4 88/1 88/5
Giglio [4] 6/3 6/18 23/9 23/25
girlfriend [1] 69/4
gist [1] 40/5
give [11] 16/20 24/5 28/3 28/9 56/23 61/12
61/16 73/3 91/6 94/17 106/2
given [13] 7/15 24/4 30/12 44/8 44/11 48/9
48/14 59/8 59/9 64/23 71/7 81/22 109/2
giving [3] 72/17 73/12 74/24
go [32] 17/11 20/10 24/13 25/13 27/24 29/18
30/2 35/3 35/21 36/10 39/17 70/7 70/8 70/9
70/10 72/3 72/17 77/9 77/14 78/13 78/21 81/2
88/13 94/19 95/6 99/10 99/13 101/9 102/11
105/10 105/11 108/13
goes [4] 17/15 39/4 70/5 107/7
going [49] 4/14 4/16 9/6 12/5 12/5 12/7 12/13
12/19 12/20 14/6 16/7 16/11 16/21 16/23
18/24 18/25 19/6 19/16 19/8 22/21 22/21
22/6 25/12 26/6 32/22 33/13 36/20 37/6 40/6
48/18 48/19 48/22 49/7 69/13 70/7 70/8 70/10
70/25 72/2 72/17 80/18 81/5 81/12 81/15
85/21 89/18 103/24 107/14 107/18
good [22] 4/5 4/8 4/9 4/12 4/23 6/25 8/25 27/1
27/4 27/5 27/8 27/9 27/18 27/19 38/16 43/10
43/11 68/11 68/13 68/18 74/21 109/25
good-faith [3] 68/11 68/13 68/18
got [6] 52/6 67/5 86/8 94/23 105/14 107/24
gotten [2] 52/8 109/10
government [60] 4/15 5/8 5/9 5/9 5/10 5/14
5/16 5/21 5/24 5/25 6/20 8/20 12/11 14/10
15/13 15/15 16/10 17/1 19/14 22/6 22/10
22/16 23/5 23/21 24/3 24/12 24/13 24/14
24/20 26/1 32/2 34/8 40/19 43/2 43/17 43/21
56/3 56/4 56/19 56/19 56/24 57/8 57/15 57/17
57/21 58/12 58/13 69/16 70/1 76/1 77/20 78/3
78/9 78/10 90/22 91/3 91/12 91/20 91/24
99/19
government's [4] 5/5 6/5 24/16 27/10
Graham [4] 47/11 47/15 50/20 51/18
great [2] 33/19 71/21
group [16] 44/23 45/8 45/21 46/14 47/2 47/5
52/12 62/23 63/11 63/14 72/9 73/9 74/22
75/13 89/12 95/10
guess [5] 10/16 26/2 44/1 68/8 107/12
guilt [1] 15/24
guy [2] 45/16 45/17
guys [1] 38/24

**H**

had [85] 5/11 5/11 10/16 14/12 16/17 18/18
23/15 28/19 37/3 37/18 40/5 41/5 41/24 42/19

43/18 45/24 47/3 47/17 48/22 49/5 49/8 50/22
51/6 52/3 52/22 52/25 54/1 56/25 56/14 57/15
57/21 58/18 62/15 62/18 63/1 63/6 65/4 65/9
65/12 66/14 69/2 69/3 69/5 69/6 69/8 69/18
72/10 72/15 74/21 74/25 75/4 75/13 79/3 80/1
81/11 83/5 83/10 83/19 83/23 85/11 86/1 86/4
86/8 86/9 86/17 88/14 93/3 95/2 95/3 97/10
98/3 98/16 98/25 99/7 102/6 103/23 105/7
105/23 107/8 108/21 109/2 109/5 109/5 109/9
109/19
hadn't [1] 109/4
half [3] 28/2 50/6 75/13
hallway [1] 16/10 17/12
handed [2] 58/9 72/24
handful [4] 44/17 44/18
handwriting [1] 81/15
HANNA [1] 2/3
happened [8] 13/12 42/12 50/21 54/1 61/25
83/10 98/1 102/5
happening [1] 30/21 42/11
happy [1] 7/11
Harbur [12] 6/24 7/1 11/20 12/3 12/4 12/23
14/9 16/21 16/24 17/3 17/4 20/7
Harbur's [1] 16/8
hard [1] 103/3
Harper [1] 18/8
has [22] 4/15 6/20 6/22 7/2 7/13 7/16 11/2
15/24 20/6 21/15 24/12 24/13 24/17 60/1 60/10
60/16 68/11 70/2 71/15 82/14 89/2 91/23
have [134]
haven't [1] 9/11 12/21 30/8
he [86] 7/19 7/25 8/1 9/10 14/24 15/20 16/16
16/16 16/17 16/22 17/25 18/8 23/15 24/7 24/9
30/8 30/10 30/17 30/21 31/5 31/8 33/18 34/22
34/24 35/8 36/24 37/10 38/5 39/8 39/9 39/11
40/2 40/4 41/24 42/1 42/18 45/17 45/17 48/22
50/4 59/13 59/19 64/23 71/7 75/20 76/8 76/25
68/9 68/11 68/20 68/23 69/2 69/4 69/6 69/7
69/18 70/16 71/6 71/8 72/16 74/2 75/16 75/18
82/7 86/8 86/9 87/7 91/11 95/17 97/15 101/4
103/1 103/3 103/10 103/12 103/24 104/3
104/3 104/5 104/7 107/7 107/7 108/14 108/20
109/5 109/16
he's [4] 16/23 34/25 70/17 74/3
head [2] 61/7 61/12
hear [1] 7/11
heard [2] 12/11 24/23 30/8
hearing [10] 4/14 5/4 8/17 9/5 10/4 10/18
10/20 10/25 11/3 14/22
Hearsay [4] 32/4 34/10 40/21 73/24
held [3] 20/2 84/24 111/9
hell [1] 35/24
help [3] 29/3 46/1 66/21
helpful [1] 14/19
her [20] 42/21 47/15 47/15 47/17 47/19 50/5
50/14 50/21 52/9 55/1 60/11 73/12 74/23
74/24 75/7 75/10 85/10 86/4 88/1 88/5
here [20] 11/2 14/13 16/2 20/24 22/19 25/18
25/22 37/9 38/22 44/14 64/24 66/19 75/17
88/20 89/11 98/16 98/21 101/25 105/19 110/4
Here's [1] 64/1
hereby [1] 111/6
herpes [1] 75/4 75/4
Hey [1] 39/14
Hi [4] 28/3 28/8 35/23 94/24
hiding [1] 70/4
Hieb [1] 64/8
highly [2] 13/13 15/23
him [25] 10/22 16/20 19/6 23/21 24/4 29/25
30/10 30/20 36/5 37/1 38/8 39/13 40/3 71/11
72/17 74/24 75/9 82/4 87/11 87/13 95/2 95/3
99/14 104/2 109/2
himself [1] 82/11
hire [1] 82/11
hired [3] 50/12 51/3 51/5
his [18] 11/21 11/23 12/2 15/22 16/12 26/14
30/16 63/21 70/5 70/6 82/4 82/7 86/1 86/8
103/4 104/4 104/5 109/10
history [1] 55/19 75/5

hold [1] 52/8
honestly [1] 65/2
Honor [112]
Honor's [3] 20/19 20/21 25/6
HONORABLE [1] 1/8
hopefully [1] 7/14
Hotel [1] 88/2
hours [1] 57/9
house [1] 81/2
how [28] 9/20 19/7 19/20 23/15 35/24 44/6
44/16 44/14 47/19 51/7 51/17 52/1 52/6
52/8 60/10 61/6 66/15 66/21 69/8 71/19 84/22
90/14 91/9 93/12 97/24 98/12 102/17
however [8] 8/21 69/15
hundred [4] 29/9 29/11 43/18 109/10
hunting [1] 7/1
hurt [1] 75/11

**I**

I --yes [1] 44/1
I'd [4] 7/4 7/5 68/25 71/12
I'll [4] 14/5 16/14 39/1 97/15
I'm [47] 4/13 4/15 10/4 12/15 12/20 12/23
14/6 15/14 16/3 18/24 18/25 19/16 21/19
21/20 22/1 22/3 22/4 22/13 22/14 22/25 24/22
25/20 36/20 44/13 50/25 51/10 56/7 60/12
61/12 62/23 68/17 69/13 70/7 72/2 73/16 74/7
75/18 77/22 79/16 80/17 84/4 84/7 88/24 89/1
89/18 96/21 99/3
I've [2] 7/3 38/19
I-N-D-E-X [1] 3/2
idea [9] 48/22 49/6 49/8 76/24 79/6 79/17
79/24 91/1 102/22
identified [1] 18/11
Identify [1] 47/6
ignore [1] 69/13
II [1] 75/4
IMAD [6] 35/9 35/11 35/17 36/24 107/20
107/21
image [1] 91/17
imagine [1] 99/7
iMessage [1] 92/5
impeachment [4] 9/10 9/10 16/18 73/23
importance [1] 57/16
important [1] 71/7
including [2] 21/15 92/10
incurred [4] 53/19 53/20 65/3 66/11
Indeed [1] 22/8
independent [1] 58/15
independently [1] 6/17
indicate [2] 14/13 26/5
indicated [2] 20/8 22/25
Indicating [1] 49/9
indirectly [1] 50/1 52/3 52/12
individual [5] 10/24 21/15 22/6 38/6 108/16
individuals [6] 8/11 9/5 11/6 12/4 14/14 15/20
infections [1] 75/5
info [1] 97/16
inform [1] 51/23
information [15] 13/18 15/1 23/8 24/20 37/4
37/20 37/25 39/12 41/25 56/4 56/5 58/18
68/20 106/17 108/7
informed [4] 51/25 95/12 104/3 107/8
initially [3] 20/1 68/22 82/19
injury [1] 99/9
innocence [1] 15/24
inquire [1] 41/15
inquired [2] 68/3 94/21
inquiry [2] 22/20 24/23
inserted [1] 102/21
instance [3] 17/22 24/5 104/22
instances [2] 28/14 71/2
instead [1] 96/5
intend [2] 1/9 22/8 26/13
intention [2] 22/12 79/18
intentions [1] 79/22
interim [1] 16/6 98/18
interjected [1] 67/8

**J**

**interpolations [1]** 6/14
**interpret [1]** 33/10
**interpretations [1]** 6/13
**interview [4]** 5/22 5/23 19/2 23/3
**investigative [1]** 9/9
**investigator's [1]** 6/13
**involved [14]** 65/6 65/13 69/16 69/18 70/17
83/14 83/17 83/24 84/18 87/5 88/21 88/23
99/5 108/10
**involvement [5]** 12/12 79/3 84/15 84/22 88/1
**involving [1]** 85/8
**IPSY [13]** 80/6 80/25 83/11 83/20 84/13 85/12
85/22 86/20 86/24 87/2 87/15 95/6 95/9
**irrelevancy [1]** 15/1
**is [214]**
**isn't [25]** 45/2 45/4 45/6 45/9 46/12 51/19
54/16 54/22 55/3 55/14 56/11 59/10 59/17
59/22 60/3 62/19 67/9 67/24 72/8 72/12 73/8
73/13 73/17 75/16 84/16
**issue [7]** 10/8 14/10 14/16 16/5 36/8 68/9
88/14
**issues [5]** 23/20 67/17 80/6 96/19 110/6
**it [211]**
**it's [51]** 9/6 9/8 16/11 16/18 24/2 24/2 25/2
25/17 28/18 28/23 29/19 31/24 32/16 32/23
33/10 34/17 34/20 35/1 35/9 35/23 36/1 36/24
37/7 37/15 37/15 37/16 37/17 37/24 46/4 46/9
47/12 47/16 57/1 58/22 59/2 61/10 62/25 64/4
65/23 67/3 70/14 71/7 73/15 77/8 80/18 81/22
82/5 85/6 90/20 94/17 107/20
**Italy [5]** 53/5 65/8 88/8 88/13 88/14
**item [4]** 4/3 14/7 26/24
**items [2]** 17/9 23/7
**its [3]** 6/21 61/4 71/13
**itself [3]** 10/25 16/13 20/12

**J**

**JAMES [1]** 1/8
**Jason [2]** 8/7 8/7
**Jencks [5]** 5/19 6/3 6/10 23/9 23/24
**Jerry [1]** 5/23
**jet [2]** 62/7 62/7
**Jim [5]** 13/13 54/18 55/15 65/22 66/5 66/16
72/9 74/21 74/23 75/1 75/4 75/9 75/11
**JOHN [4]** 1/11 2/14 4/4 26/25
**Johnson [9]** 10/3 11/5 11/6 11/22 12/1 12/12
14/14 15/22 16/15
**Johnson's [1]** 11/21
**joint [3]** 9/23 11/11 14/11
**JUDGE [1]** 1/8 53/3
**judicial [3]** 17/23 17/24 111/11
**Judy [1]** 96/9
**July [1]** 77/24
**June [3]** 62/22 63/5 65/1
**June 18th [2]** 62/22 63/5
**jury [38]** 4/2 9/17 9/18 9/25 10/10 14/8 16/17
25/13 26/16 26/20 26/23 29/5 44/8 44/11
44/14 47/14 50/19 52/7 52/14 54/11 59/8 61/8
62/3 62/18 63/4 64/3 67/20 70/6 71/7 71/9
72/1 74/16 76/7 92/22 93/3 94/14 98/25
105/22
**jury's [1]** 82/25
**just [53]** 7/7 15/20 16/14 19/25 20/2 20/20
21/4 21/5 21/7 21/20 24/1 25/5 31/8 31/8
31/23 36/20 36/20 37/3 37/20 38/4 40/3 40/4
45/4 46/5 54/11 57/2 57/19 58/4 58/15 59/8
61/16 65/23 68/14 70/14 70/16 70/24 71/10
75/18 80/17 81/2 82/9 85/11 86/9 88/12 88/17
89/18 90/6 90/7 91/2 95/9 95/21 97/10 105/14
**Justice [1]** 70/1
**JVS [3]** 1/11 4/3 26/24

**K**

**Kareen [3]** 47/11 47/16 50/20
**Katzenstein [2]** 4/19 4/22
**keep [3]** 30/1 60/2 85/10
**keeping [2]** 63/12 96/25
**Kim [1]** 20/20

**kind [2]** 35/14 35/18
**kinds [1]** 43/20
**knew [10]** 43/20 63/25 64/3 64/4 69/7 69/8
69/16 72/18 73/13 75/4
**know [78]** 9/20 13/13 15/25 17/14 21/3 21/21
22/9 25/6 25/17 29/4 38/24 41/16 47/12 47/14
47/15 47/15 53/6 53/9 53/12 53/15 53/19 61/7
61/23 61/24 61/25 63/9 64/24 65/2 65/20 69/9
69/18 77/13 77/19 84/1 86/6 89/9 89/9 89/11
90/7 90/11 90/14 90/24 90/25 91/2 92/23 93/6
93/7 93/9 94/5 95/15 95/18 97/1 98/1 98/3
98/6 98/9 98/12 98/16 98/20 100/8 100/21
100/24 101/15 102/4 102/13 102/19 102/24
104/5 104/7 104/19 104/22 105/1 106/10
106/12 106/19 107/16 108/2 108/25
**knowing [1]** 75/3
**knowledge [8]** 12/5 42/21 53/23 54/1 60/24
79/10 79/21 91/23
**known [2]** 68/25 69/8

**L**

**L'Oréal [1]** 85/12
**lab [3]** 54/17 67/8 69/3
**lack [1]** 20/10
**Lacks [1]** 42/23
**ladies [4]** 27/9 67/15 72/2 110/3
**large [1]** 25/17
**last [6]** 11/20 26/2 29/19 44/21 78/3 102/21
**lastly [1]** 26/10
**late [3]** 50/13 51/3 80/2
**later [4]** 16/19 56/25 57/22 97/24
**laughing [1]** 69/9
**law [31]** 2/15 8/7 13/11 14/20 15/10 15/21
15/22 44/23 45/2 45/8 46/3 46/6 46/14
47/1 47/5 49/12 52/12 55/11 59/17 62/23
63/11 63/14 69/8 69/22 72/9 73/9 74/22 75/13
89/12 96/6
**lawsuit [7]** 7/18 8/10 17/15 70/9
**lawyer [1]** 91/11
**lawyers [2]** 9/15 68/24
**lead [1]** 84/14
**leading [2]** 31/1 36/18
**learn [4]** 87/19 87/21 108/8 108/10
**learned [3]** 86/1 86/4 87/22
**least [7]** 13/12 39/10 84/3 99/19 101/22 102/6
107/25
**led [3]** 54/12 85/14 85/18
**left [3]** 27/20 27/24 45/24
**let [15]** 7/7 7/24 13/1 24/19 37/11 41/16 49/5
58/3 66/21 68/14 68/17 70/7 82/4 84/9 87/24
**let's [17]** 6/23 19/10 20/5 30/2 61/14 75/21
76/13 77/9 77/14 78/21 89/13 92/21 94/19
99/10 99/13 101/9 102/11
**letter [3]** 56/1 56/8 81/22
**letters [3]** 28/4 28/25 29/14
**level [1]** 107/25
**liability [9]** 9/16 9/22 9/23 11/11 13/21
**liable [5]** 11/12 14/20 14/24 15/7 15/9
**liberty [1]** 60/12
**license [1]** 55/4
**lied [3]** 43/22 44/3 55/14
**light [2]** 7/21 20/18
**like [37]** 7/4 7/5 13/19 13/19 14/3 14/4 14/15
15/12 24/4 24/8 25/3 25/4 26/5 28/15 29/19
30/15 31/13 32/10 32/19 33/9 34/11 34/22
37/4 37/7 39/3 41/19 44/13 45/25 46/2 46/2
46/5 57/19 58/23 71/17 73/22 94/10 108/6
**likely [4]** 12/10 19/2 19/3 83/6
**limine [1]** 80/16
**limited [3]** 24/16 71/1 80/18
**lines [2]** 33/4 67/11
**lines [1]** 71/3
**list [3]** 21/24 22/2 22/14
**listed [3]** 33/9 88/17 93/6
**little [2]** 41/18 83/25
**lived [1]** 68/14
**living [2]** 50/14 50/15
**long [18]** 28/3 28/4 28/9 28/25 29/14 41/3
41/12 44/6 55/19 68/25 69/8 70/8 83/23 87/20

**95/6 105/9 106/3 109/24**
**longer [2]** 35/23 108/5
**look [14]** 19/10 24/13 31/12 33/24 36/20
37/19 40/10 61/14 63/10 76/4 78/13 89/13
92/24 94/10
**looking [5]** 9/4 31/23 80/17 98/24 102/17
**looks [11]** 29/18 30/15 31/13 32/10 32/19
33/2 33/14 34/22 37/7 39/3 41/19
**loose [1]** 56/8
**Los [1]** 2/8
**losing [1]** 101/4
**lot [6]** 65/19 66/8 66/11 89/14 90/2 92/2
**lunch [1]** 110/3

**M**

**M-o-s-b-y [1]** 10/24
**ma'am [1]** 27/13
**made [21]** 4/15 5/10 5/13 5/21 7/2 8/25 11/5
12/1 12/3 12/21 13/5 15/6 18/14 20/9 25/5
72/15 72/19 73/12 73/18 75/2 86/17
**mail [38]** 31/10 31/14 31/20 31/24 31/25 32/8
32/11 32/14 32/15 32/17 32/19 32/24 33/16
33/22 34/3 34/6 34/14 34/16 34/18 34/23
34/25 35/1 36/15 40/14 40/17 40/25 41/1
41/10 41/19 41/23 62/2 64/4 64/15 76/10
76/12 76/25 77/9 78/11
**mailed [1]** 36/13
**mailing [1]** 106/16
**mails [13]** 5/8 5/10 5/11 5/13 5/13 5/14 5/15
23/11 23/20 23/23 78/15 83/22 90/2
**Majak [1]** 64/8
**Major [1]** 2/6
**majority [1]** 79/8
**make [14]** 18/19 18/22 19/6 19/16 20/20 21/2
21/5 22/9 22/14 24/22 26/12 93/14 94/10
108/20
**makes [2]** 12/1 17/25
**making [4]** 43/23 73/10 74/23 109/16
**manage [1]** 103/7
**manager [1]** 103/8
**many [5]** 44/16 44/16 47/17 47/19 97/24
**Marcelo [1]** 87/2 87/4 87/8
**March [14]** 5/22 73/9 74/20 93/22 94/1 95/8
95/16 95/20 96/4 97/20 99/14 99/15 99/21
101/1
**March 12 [1]** 93/22
**March 12th [3]** 94/1 95/8 95/16
**March 14th [1]** 97/20
**March 2013 [2]** 73/9 74/20
**March 2018 [1]** 95/20
**March 20th [4]** 99/14 99/15 99/21 101/1
**March 31 [1]** 5/22
**MARCHINO [35]** 3/5 23/10 23/15 24/6 26/11
27/10 27/18 32/10 34/16 43/10 48/7 50/19
55/5 57/4 63/24 66/22 66/25 68/18 68/20 69/3
69/16 69/18 72/8 74/22 75/2 75/6 77/25 83/14
83/25 84/11 86/15 87/4 90/19 94/8 106/15
**Marchino's [3]** 23/12 23/19 58/4
**mark [5]** 25/11 30/20 30/23 31/13 75/7
**marked [6]** 3/7 3/13 25/5 25/7 25/8 73/22
**Marshack [5]** 59/12 59/15 59/21 60/1 69/20
69/24 70/9 70/15
**Marty [1]** 68/23
**master [1]** 108/6
**material [3]** 6/2 6/4 6/18
**materials [1]** 5/20
**math [1]** 61/12
**matter [25]** 7/16 12/12 14/22 17/14 17/22
17/22 20/22 21/14 22/21 49/8 63/2 63/7 64/7
64/9 65/4 66/9 66/12 66/16 66/25 82/21 83/2
83/5 83/15 90/11 111/9
**matters [8]** 25/1 64/10 64/12 65/18 96/2 96/5
96/10 96/16
**may [43]** 13/23 14/19 15/8 21/8 23/1 24/12
24/12 27/14 27/15 29/20 30/3 31/14 31/23
32/16 33/10 33/15 34/4 35/6 37/7 38/12 38/20
39/2 39/4 39/4 39/7 39/18 42/10 43/6 43/7
58/8 67/21 67/22 68/3 70/16 72/23 79/11
89/17 101/12 102/22 103/23 105/12 105/15

**M**

**may... [1]** 107/2
**May 10th [2]** 29/20 30/3
**May 11 [4]** 32/16 34/4 38/12 107/2
**May 11th [8]** 31/14 31/23 33/15 35/6 37/7 38/20 39/2 39/4
**May 14th [3]** 39/4 39/7 39/18
**May 3rd [1]** 101/12
**May 4th [2]** 33/10 102/22
**May 7 [1]** 103/23
**Maybe [2]** 64/24 87/22
**me [57]** 7/7 7/24 9/15 10/9 12/23 13/1 13/10 13/21 15/8 17/18 17/23 24/5 25/5 30/1 30/8 41/16 42/1 46/22 47/1 47/6 49/5 51/23 52/6 52/25 54/13 58/3 61/16 62/12 65/18 66/8 66/21 68/14 68/17 69/1 69/2 69/18 69/8 70/21 73/3 82/10 82/11 83/19 84/7 84/9 86/6 87/21 87/24 92/10 95/12 102/4 105/9 105/23 105/25 106/12 106/15 109/5 109/14
**mean [11]** 30/11 35/23 37/1 37/2 37/16 38/8 44/5 52/7 84/17 88/23 109/18
**meaning [11]** 13/10 30/20 41/6 46/2 65/5 79/14 80/6 80/25 100/18 101/20 102/23
**meaningful [1]** 23/22
**meant [3]** 30/21 49/17 76/15
**measure [1]** 97/1
**mediation [4]** 53/3 54/2 54/4 66/25
**meet [1]** 83/23
**meeting [9]** 18/15 57/9 57/10 57/15 57/21 57/25 58/17 75/1 75/4
**meetings [4]** 18/9 18/12 19/17 57/3
**Meisinger [1]** 53/4
**Melissa [1]** 18/11
**memoranda [1]** 23/3
**memorandum [4]** 5/22 5/24 6/21 55/10
**mentioned [3]** 28/14 82/10 85/2
**message [30]** 28/2 28/7 28/12 28/15 29/19 30/12 30/18 30/24 33/14 34/22 35/22 36/5 36/11 38/4 41/20 64/4 90/6 93/16 93/22 98/17 99/12 101/2 101/24 105/8 105/17 105/21 106/23 107/1 107/14 108/15
**messages [34]** 23/11 27/21 28/19 31/22 33/13 89/15 89/20 90/8 90/12 90/15 90/21 91/13 91/18 92/14 92/20 92/22 92/25 93/3 93/7 93/20 94/3 94/5 94/19 98/24 99/5 100/9 100/13 100/16 100/15 102/7 102/12 102/15 108/14
**messaging [3]** 28/11 28/16 28/16
**met [13]** 6/20 43/17 43/21 45/24 56/19 56/24 57/8 58/12 58/19 76/2 77/22 77/24 87/11
**MICHAEL [16]** 1/11 2/14 4/4 4/9 8/4 26/25 27/5 35/25 36/2 36/3 37/21 38/19 38/23 39/22 94/24 109/13
**Michael's [2]** 37/15 37/17
**Michelle [8]** 29/8 34/17 41/6 41/8 42/12 80/6 83/23 95/7
**Michelle's [1]** 103/12
**mid [2]** 50/22 67/14
**mid-morning [1]** 67/14
**middle [4]** 33/4 38/14 41/18 94/21
**might [1]** 98/13
**million [32]** 14/13 29/10 29/12 29/13 29/16 30/5 33/2 33/5 35/10 35/11 38/6 38/7 40/8 42/8 42/12 42/22 59/22 62/21 62/25 63/5 63/9 63/15 63/16 63/16 64/5 64/10 64/16 64/19 65/1 72/15 73/11 100/2
**million-dollar [2]** 62/25 65/1
**millions [5]** 72/11 74/23 75/8 83/6 85/17
**mind [1]** 103/20
**mine [2]** 45/16 100/23
**minimis [2]** 84/16 84/17
**minute [6]** 36/16 46/9 58/5 78/14 87/24 94/23
**minutes [1]** 67/16
**Miramar [1]** 2/16
**missing [4]** 30/4 39/12 39/25 42/12 42/21 100/2
**mistaken [1]** 105/13
**mix [1]** 6/12
**mom [3]** 47/13 47/16 52/6

**moment [4]** 43/1 58/3 61/16 86/12
**Monday [6]** 28/25 35/2 102/19 102/21 103/21 103/25
**monetary [1]** 66/23
**money [14]** 7/18 29/8 42/16 60/2 60/10 61/20 62/6 62/18 66/15 75/14 86/1 86/5 86/8 109/10
**monies [2]** 35/2 65/16
**month [1]** 101/1
**more [6]** 14/18 18/9 69/11 69/24 77/10 88/21
**moreover [5]** 6/6 9/12 20/6 20/11 21/23
**morning [16]** 4/5 4/8 4/9 4/12 4/23 6/25 27/1 27/4 27/5 27/8 27/9 27/18 27/19 43/10 43/11 67/14
**Mosby [2]** 10/24 12/10
**mother [3]** 51/15 52/16 54/13
**motion [4]** 6/23 7/2 7/8 80/16
**move [11]** 54/7 57/5 60/5 63/17 64/11 67/11 71/4 71/11 75/21 75/24 90/16
**moved [2]** 8/11 13/3
**moves [3]** 32/2 34/8 40/19
**moving [2]** 7/5 7/13
**Mr [26]** 6/24 10/9 10/19 12/10 12/16 14/12 14/19 14/19 16/11 17/3 20/7 23/4 23/6 30/19 34/16 41/3 43/10 69/5 72/11 72/15 73/10 73/11 75/12 86/8 95/15 101/5
**Mr. [208]**
**Mr. Andre [1]** 54/12
**Mr. Avenatti [20]** 7/25 10/2 11/17 14/10 17/16 18/6 18/8 21/8 28/13 31/9 31/10 37/23 38/2 39/16 41/25 42/1 43/4 57/2 72/3 72/5
**Mr. Avenatti's [3]** 9/23 11/12 13/25
**Mr. Boucher [4]** 68/25 69/1 69/6 69/15
**Mr. Carlos [1]** 57/11
**Mr. Carrey [5]** 54/23 68/1 68/22 73/18 75/15
**Mr. Dean [2]** 4/10 27/6
**Mr. Eagan [2]** 10/20 14/21
**Mr. Frank [2]** 10/15 12/21
**Mr. Harbur [8]** 11/20 12/3 12/4 12/23 14/9 16/21 16/24 17/4
**Mr. Harbur's [1]** 16/8
**Mr. Johnson [7]** 10/3 11/5 11/22 12/1 14/14 15/22 16/15
**Mr. Johnson's [1]** 11/21
**Mr. Long [1]** 105/9
**Mr. Marchino [28]** 23/10 23/15 24/6 26/11 27/18 32/10 48/7 50/19 55/5 57/4 63/24 66/22 66/25 68/18 68/20 69/3 69/16 69/18 72/8 77/25 83/14 83/25 84/11 86/15 87/4 90/19 94/8 106/15
**Mr. Marchino's [3]** 23/12 23/19 58/4
**Mr. Marshack [5]** 59/15 59/21 60/1 69/20 69/24
**Mr. Roberson [1]** 57/11
**Mr. Sagel [2]** 57/15 69/9
**Mr. Stolper [4]** 12/16 12/21 12/22 12/24
**Mr. Tran [73]** 27/21 29/23 30/7 31/11 31/20 32/11 33/15 33/21 34/3 35/7 36/23 37/9 38/1 38/4 38/14 38/22 39/20 41/19 41/22 42/2 79/22 80/1 80/22 84/1 85/16 86/1 86/17 87/20 87/23 89/20 89/24 90/4 90/25 91/4 91/7 93/4 93/9 93/25 94/6 94/21 94/22 95/2 95/8 96/19 97/10 97/24 98/9 98/17 99/11 99/15 99/19 99/24 100/9 100/22 101/4 102/15 102/16 102/25 103/3 103/6 103/10 103/23 103/25 104/1 105/24 107/1 108/7 108/20 109/9 109/19 109/24
**Mr. Tran's [4]** 30/24 34/18 35/22 104/13
**Mr. Weiner [2]** 5/10 5/20
**Mr. Weiner's [1]** 5/17
**Mr. Whiteside [3]** 60/11 61/1 89/2
**Mr. Wyman [24]** 23/13 23/17 44/22 46/21 48/4 48/18 49/7 49/11 49/17 61/14 62/3 62/8 62/14 76/9 78/22 79/25 80/9 83/9 85/3 89/14 94/20 97/9 99/17 108/14
**MS [10]** 4/22 11/1 19/15 96/15 97/1 98/6 98/12 105/1 105/6 109/6
**Ms. [50]** 4/11 12/10 13/11 18/12 25/9 25/15 27/7 42/16 42/21 47/13 47/15 47/16 49/21 50/13 50/20 50/23 51/2 51/5 51/7 51/8 51/13 51/18 51/18 51/19 52/6 52/16 52/18 53/24 57/3 64/6 80/16 80/16 80/16 80/24 82/1 82/24 82/25 92/6 96/19 96/19 107/14 106/11 108/8 107/23 109/5

51/22 84/2 85/8 85/10 85/13 85/16 86/4 87/24 87/25 89/2 96/9 96/19 104/14 106/13 108/8
**Ms. Cummings-Cefali [3]** 4/11 25/15 27/7
**Ms. Galicia [1]** 18/12
**Ms. Gardner [17]** 25/9 50/13 50/23 51/2 51/5 51/7 51/8 51/13 51/18 51/19 53/24 60/8 60/10 60/20 60/24 87/24 87/25
**Ms. Gardner's [8]** 47/13 47/16 49/21 52/6 52/16 52/18 54/13 89/2
**Ms. Graham [2]** 47/15 51/18
**Ms. Judy [1]** 96/9
**Ms. Kareen [1]** 50/20
**Ms. Mosby [1]** 12/10
**Ms. Phan [11]** 42/21 47/16 80/24 82/1 85/8 85/10 85/13 85/16 86/4 96/19 108/8
**Ms. Phan's [3]** 42/16 79/22 104/14
**Ms. Regnier [2]** 13/11 106/13
**much [10]** 33/20 35/8 35/19 60/10 61/6 66/15 71/19 84/22 107/4 107/19
**multi [1]** 100/2
**multi-million-dollar [1]** 100/2
**multiple [2]** 85/21 85/25
**my [64]** 7/1 7/2 7/4 7/14 7/19 7/21 7/22 8/16 8/21 9/2 9/3 9/6 9/15 10/3 10/5 10/7 10/7 11/1 11/10 12/22 13/1 13/12 14/5 15/23 16/11 17/15 19/6 22/16 24/2 28/8 29/24 37/15 37/16 45/4 46/5 52/9 52/22 53/23 61/7 61/12 64/1 66/24 67/23 68/13 68/18 70/14 73/1 79/17 82/19 83/25 84/8 84/8 88/8 90/14 90/20 91/13 93/17 93/20 96/17 96/21 97/4 98/6 98/9 108/4 **myself [2]** 9/15 84/21

**N**

**name [5]** 47/15 57/13 68/23 68/24 82/10
**named [2]** 10/24 14/14
**Namely [1]** 107/14
**names [1]** 86/23
**National [2]** 41/13 41/15
**nature [1]** 6/11
**necessary [1]** 10/5
**need [15]** 10/9 16/24 17/3 18/21 20/9 21/21 22/23 23/2 34/19 35/10 37/10 71/19 92/24 102/7 107/21
**needed [3]** 45/24 46/1 108/25
**negligence [1]** 11/11
**negotiate [1]** 84/19
**negotiated [1]** 85/21
**negotiating [3]** 84/11 84/15 84/23
**negotiation [8]** 79/3 81/5 83/10 85/14 85/18 85/25 87/5 94/1
**negotiations [1]** 83/15
**neither [3]** 38/23 109/12 109/16
**never [7]** 13/15 47/10 50/21 50/22 51/5 63/14 99/7
**new [2]** 18/13 86/9
**news [2]** 30/4 30/6
**next [16]** 19/22 26/3 30/2 30/16 35/21 62/3 77/9 86/18 94/24 97/15 99/18 100/19 101/9 101/10 102/20 108/19
**next text [1]** 30/16
**NICOLA [1]** 2/3
**night [2]** 26/2
**Ninth [1]** 6/8
**no [144]**
**none [11]** 3/12 15/7 19/3 39/14 47/21 47/23 84/21 85/1 85/1 105/17 109/19
**nonresponsive [4]** 54/8 64/12 82/6 90/16
**noon [1]** 26/7
**normal [1]** 21/18
**North [1]** 2/7
**Nos [1]** 16/4
**not [182]**
**not personally [1]** 62/23
**note [2]** 7/8 16/14
**notes [5]** 5/25 6/1 6/6 6/10 6/15 6/19 19/11
**nothing [8]** 20/11 31/9 38/19 38/25 43/13 63/1 63/6 67/5

## N

notice [2] 34/11 40/22
notification [1] 81/22
now [48] 6/23 18/21 20/2 22/25 28/25 29/18
31/12 31/16 33/12 33/13 33/24 35/3 35/4
35/25 36/10 38/25 39/3 39/14 39/17 43/12
44/6 44/22 46/21 48/3 51/9 54/11 59/14 60/8
61/20 65/3 77/9 82/1 82/8 82/16 82/24 89/13
93/2 93/14 94/19 94/21 95/20 97/7 98/21
102/12 104/10 105/8 105/24 109/25
nowhere [1] 50/15
number [31] 10/11 11/4 12/2 12/3 22/2 22/2
24/5 24/8 25/11 29/2 29/15 30/12 31/7 31/7
31/7 31/8 34/20 35/15 35/18 37/14 41/12 65/4
65/9 65/12 65/15 83/9 105/15 105/20 106/3
106/6 106/9
numbers [15] 28/4 28/10 28/25 29/14 30/14
35/11 36/8 36/9 38/6 38/9 39/10 107/22
108/16 108/21 109/3

## O

oath [8] 27/12 43/13 43/16 48/4 57/19 63/4
67/3 94/14
object [2] 21/13 60/17
objection [22] 17/19 17/20 32/4 34/10 36/18
40/21 42/4 47/25 51/20 54/19 58/25 59/18
61/2 66/17 67/10 71/15 73/24 76/21 80/15
89/5 100/4 103/17
objections [10] 15/6 54/25 55/6 55/16 55/21
59/23 60/4 71/3 71/6 71/11
obligation [4] 6/5 22/13 22/14 24/16
obligations [1] 6/21
obtain [1] 72/11
obtained [2] 52/5 92/20
obvious [1] 19/1
obviously [4] 7/13 17/21 20/22 20/24
occurred [2] 79/6 88/14 98/13
October [3] 57/22 57/25 58/12
October 10th [3] 57/22 57/25 58/12
off [4] 27/20 27/24 61/7 95/7
offer [5] 18/19 18/22 18/25 19/7 20/12
offering [1] 87/16
office [2] 39/22 70/3
officer [1] 17/23
officers [1] 17/25
offices [2] 2/15 91/21
Oh [1] 33/6
okay [44] 7/6 7/7 8/6 8/9 8/14 11/15 13/22
17/6 18/5 18/14 18/14 18/18 19/20 19/24 20/16
25/25 26/18 26/19 27/25 28/25 30/1 30/2
30/15 31/12 33/6 35/21 40/11 42/20 48/25
61/16 67/3 74/19 76/5 77/4 78/2 79/21 82/16
89/23 97/8 97/18 97/20 99/11 105/11 107/24
108/10
once [3] 16/16 16/22 47/22
one [55] 9/3 12/2 16/17 17/11 18/9 22/2 22/3
22/5 25/16 29/9 29/12 29/13 38/10 38/10 43/1
46/12 49/21 51/23 51/25 58/3 58/4 61/16
62/19 65/22 66/4 70/15 70/24 72/14 72/19
73/3 73/5 73/8 73/14 73/17 75/22 78/6 83/3
84/11 85/2 86/12 86/15 86/20 88/2 88/6 88/13
101/2 105/4 105/12 105/16 105/19 105/20
107/11 107/15 107/25 108/2
one l [1] 105/19
ones [1] 100/18
ongoing [3] 7/18 17/15 21/9
online [1] 103/4
only [15] 10/2 16/17 21/7 34/11 35/9 35/12
36/24 40/22 70/20 73/22 85/10 87/2 87/3
105/19 107/20
op [2] 21/17 21/23
open [1] 63/20
open-ended [1] 63/20
opening [1] 44/8 70/16
operating [1] 69/25
opinions [2] 67/17 110/6
opportunity [1] 26/5
opposed [3] 90/8 91/14 105/5
opposition [3] 7/3 7/9 7/20

oral [4] 8/21 9/1 10/5 10/7
order [5] 17/10 48/10 65/24 88/8
ordered [1] 17/23
original [2] 7/5 8/10
originally [1] 106/9
Oscar [1] 41/14
other [45] 6/4 6/18 8/3 8/23 9/15 11/6 13/10
13/21 14/14 15/12 16/18 17/13 17/16 17/23
17/24 25/1 26/11 35/25 38/17 41/14 42/3 53/9
53/9 53/12 53/15 53/16 53/19 53/20 57/13
59/9 65/18 66/8 69/11 84/2 84/16 84/19 88/6
88/17 88/18 92/10 92/14 92/15 96/2 96/5
109/2
others [8] 11/12 13/21 14/2 18/2 79/11 85/16
105/17 109/22
our [9] 4/19 33/19 35/9 41/12 47/4 68/8 87/5
107/5 107/20
ours [1] 37/11
out [14] 11/1 22/4 25/9 30/21 38/17 60/2 69/2
70/16 70/21 80/6 86/8 86/17 86/20 108/7
outlined [1] 7/4 16/5
outstanding [1] 63/15
over [4] 46/13 75/12 85/11 98/22
overhead [2] 45/7 46/13
Overruled [16] 31/2 32/5 36/19 42/6 42/24
51/21 59/1 61/3 62/10 66/1 66/18 73/25 76/23
82/10 89/17 97/3 100/12
owed [1] 63/11
ownership [1] 85/11

## P

page [57] 26/13 27/24 28/3 29/18 30/2 30/2
30/13 31/12 32/22 33/9 33/13 33/21 35/4
35/21 35/21 36/10 37/6 38/3 38/11 38/20 39/3
39/17 40/25 41/9 73/20 73/22 74/11 74/12
77/9 77/14 77/15 94/22 97/7 97/15 99/10
99/13 101/9 102/1 102/11 102/12 102/18
103/6 103/23 105/12 105/14 105/20 105/21
106/2 106/4 106/4 106/20 108/13 108/19
108/19 108/22 108/23 111/10
page 1 [1] 40/25
page 10 [1] 103/6
page 11 [1] 103/23
page 13 [2] 105/14 105/21
page 14 [4] 27/24 105/12 106/2 106/4
page 15 [1] 29/18
page 17 [1] 31/12
page 18 [1] 33/13
page 19 [1] 33/21
page 24 [1] 36/10
page 25 [1] 37/6
page 26 [2] 38/3 108/13
page 28 [1] 108/23
page 3 [1] 97/7
page 31 [1] 38/11
page 33 [1] 38/20
page 35 [1] 39/3
page 36 [1] 39/17
page 5 [1] 99/13
page 6 [1] 99/10
page 8 [2] 102/1 102/11
pages [4] 30/13 38/11 78/25 92/21
pages 3 [1] 78/25
paid [7] 14/13 14/14 23/16 45/21 62/15 63/14
63/14
paper [1] 25/10
papers [3] 7/5 7/13 11/1
paragraph [2] 73/1 73/22 74/2 74/13 74/15
74/16 75/17
parallel [1] 13/8
part [12] 4/16 10/21 11/7 25/5 52/3 52/3 66/24
70/1 72/10 75/10 75/20 77/7 85/9 85/13 95/15
93/17 94/4
participate [1] 14/21
participated [1] 11/13
particular [3] 23/10 68/9 102/5
particularly [1] 71/7
parties [5] 8/11 13/4 13/14/15 16/1 17/13
parties' [1] 16/5

partner [3] 10/14 10/16 10/17
partners [2] 9/24 26/2
partook [1] 54/3
party [8] 6/23 7/1 7/25 8/1 8/3 16/2 78/15
79/14
pass [3] 37/20 99/24 101/13
passed [1] 99/22
pasted [4] 28/10 105/9 105/18 105/23
patience [1] 101/4
Pause [3] 43/5 58/6 86/13
pay [5] 72/15 72/16 73/10 74/23 99/14
paying [2] 44/23 45/7
payment [4] 30/5 37/5 65/1 100/2
payments [21] 29/7 86/17 86/18 87/17 95/10
96/25 107/15
pdf'd [1] 91/11
penalty [1] 43/24
pending [1] 57/4
Penland [1] 18/7
people [13] 12/8 12/9 15/7 19/21 20/11 67/5
86/24 92/2 92/5 92/8 92/10 92/12 102/5
Per [1] 41/12
percent [17] 24/7 43/19 46/24 47/6 52/2 52/9
52/13 52/17 61/9 81/12 81/16 82/20 83/2
89/20 89/23 99/25 109/10
perform [1] 21/22
Perhaps [1] 4/13
period [15] 65/2 62 66/4 70/11 89/3 92/1 92/15
92/18 93/4 95/20 95/25 98/18 99/1 100/10
101/19 109/9
permitting [2] 80/13 80/22
person [4] 87/2 87/3 96/10 102/21
personal [1] 99/9
personally [4] 45/8 46/24 47/1 62/23
Phan [21] 29/8 34/17 42/21 62/16 63/2 63/7
80/6 80/22 84/2 85/8 85/10 85/13 85/16 86/4
96/19 98/12 108/8
Phan's [5] 41/8 42/12 42/16 79/22 104/14
phone [18] 47/24 83/21 87/13 90/20 91/10
91/14 91/17 91/21 91/24 92/24 92/25 94/10
99/7 100/16 101/20 104/23 108/6 108/11
phonetic [1] 64/9
photograph [1] 25/15
physically [1] 53/3
picture [4] 25/22 62/2 62/7 86/9
pictures [2] 25/20 91/10
place [2] 57/9 101/19
plaintiff [2] 1/10 2/2 13/5
PLAINTIFF'S [2] 3/4 3/7
pleading [1] 26/1
pleadings [3] 9/13 11/8 11/9
please [39] 18/15 27/23 28/3 28/9 29/5 31/16
32/7 33/13 33/22 33/24 34/14 34/18 35/3 35/7
36/10 36/12 39/2 39/17 40/10 41/10 41/15
50/19 55/9 60/15 67/16 67/18 74/15 74/16
75/24 76/4 76/6 76/14 82/4 86/12 106/2
106/20 106/21 110/4 110/7
point [13] 8/15 9/11 11/1 19/6 19/25 22/4
39/25 40/2 70/16 87/7 108/11 108/20 109/16
pointing [2] 22/4 33/3
points [1] 11/19
portion [4] 5/4 32/25 33/4
position [9] 7/4 7/21 9/2 9/3 11/10 20/21
52/14 52/18 68/8
posted [1] 30/1
potential [1] 13/20
potentially [1] 56/11
practice [1] 45/2
practiced [1] 69/8
preceding [1] 96/14
preference [1] 25/6
preparation [1] 78/4
prepare [2] 16/9 17/12
prepared [3] 4/17 5/23 18/8
prepares [1] 48/12
present [10] 4/2 4/10 16/3 17/21 18/10 18/11
26/23 27/6 67/20 72/1
presented [2] 7/9 54/17
presenting [1] 54/24 55/19 68/1

**P**

**presently [1]** 1/8
**PRESIDING [1]**
**press [1]** 72/17
**pressured [1]** 75/8
**previously [2]** 18/18 27/10
**primarily [1]** 9/22
**primary [1]** 96/9
**principles [2]** 11/11 15/4
**prior [9]** 14/22 32/23 52/4 75/1 80/15 84/22 89/1 89/5 109/3
**prison [2]** 43/25 44/4
**private [6]** 9/16 9/21 41/2 41/4 41/7 41/8
**privately [1]** 84/24
**privately-held [1]** 84/24
**privilege [3]** 60/16 60/20 89/3
**privileged [1]** 60/19
**privy [1]** 104/16
**PRO [1]** 2/14
**probably [5]** 12/18 12/20 61/9 64/22 105/21
**probative [1]** 68/4
**problem [2]** 18/17 103/22
**proceed [3]** 13/7 21/4 27/14
**proceeded [1]** 13/7
**proceeding [9]** 7/23 11/21 12/24 12/25 13/6 13/8 15/18 17/17 56/6
**proceedings [12]** 1/15 4/20 4/25 5/1 10/1 17/17 26/22 43/5 58/6 71/25 86/13 111/9
**process [2]** 24/2 45/1
**produce [4]** 5/8 18/15 76/24 90/21
**produced [6]** 5/11 5/12 5/16 5/24 5/25 6/22
**production [8]** 6/4 6/7 6/17 6/19 6/21 17/25 18/2 24/16
**proffer [4]** 55/24 56/1 56/7 56/18
**prohibition [1]** 25/20
**proof [4]** 18/19 18/23 19/1 19/7
**property [1]** 75/14
**proposing [1]** 15/14
**proposition [1]** 102/8
**provide [10]** 8/19 10/4 11/2 14/18 16/21 16/23 17/13 17/18 56/3 106/17
**provided [12]** 10/12 17/1 23/8 23/11 23/14 24/6 60/25 68/21 69/3 100/18 106/12 108/7
**proviso [1]** 17/21
**public [3]** 13/15 87/16 95/6
**publicity [4]** 52/5 52/16 52/16 54/12
**publicly [3]** 73/11 74/24 81/1
**pull [3]** 27/23 32/7 34/13
**puppet [1]** 108/6
**purchase [2]** 61/20 62/7
**purchased [1]** 86/9
**purported [1]** 15/23
**purpose [2]** 63/9 82/12
**purposes [2]** 16/3 74/5
**pursuant [2]** 85/20 111/6
**pushed [1]** 75/8
**put [6]** 10/9 12/19 18/6 22/8 41/24 71/7
**putting [2]** 22/12 68/15

**Q**

**quash [8]** 6/23 7/2 8/25 10/6 14/6 19/2 19/3 20/4
**quashed [2]** 20/1 20/6
**quashing [2]** 16/3 20/13
**quasi [1]** 15/21
**question [33]** 11/20 12/13 12/20 30/20 30/23 31/13 45/4 46/5 48/8 49/1 49/4 49/5 49/20 49/23 52/22 57/4 63/3 63/18 63/21 64/1 65/7 65/24 66/22 70/24 73/2 75/23 80/21 82/19 83/25 84/8 95/24 96/21 96/22
**question that [1]** 49/1
**questioning [4]** 67/12 71/3 71/14 72/4
**questions [20]** 43/3 48/13 48/14 48/18 49/6 55/12 62/4 62/14 67/23 69/20 70/8 71/1 71/6 76/9 77/2 78/11 80/10 80/18 83/9 83/11 85/3
**quick [2]** 25/1 25/2
**quickest [1]** 42/7
**quickly [2]** 10/2 19/20
**quite [2]** 52/5 56/7

**quote [1]** 84/3

**R**

**raise [1]** 14/25
**Ramon [2]** 4/7 27/3
**Ranee [1]** 4/18
**rather [2]** 32/24 88/13
**Ray [1]** 68/24
**reach [1]** 13/9
**reached [2]** 86/17 86/20
**read [5]** 5/13 7/3 7/13 7/20 28/1 34/18 35/7 36/12 38/4 41/10 55/10 73/3 74/15 74/16 107/13
**reading [1]** 73/4
**reads [2]** 28/3 107/19
**ready [1]** 7/3
**Reagan [1]** 2/10
**really [4]** 25/18 77/23 83/14 88/20
**reask [1]** 70/7
**reason [6]** 13/5 15/19 58/14 69/24 88/12 109/2
**reasons [2]** 9/2 46/12
**recall [33]** 27/21 44/24 46/25 46/25 49/18 56/21 56/24 57/1 64/24 65/2 66/19 66/22 66/23 67/4 69/2 76/9 76/11 77/22 77/23 78/6 78/21 79/1 82/16 82/22 83/11 83/24 87/14 88/20 89/15 101/23 101/24 105/19 106/23
**recap [1]** 10/2
**receipt [2]** 36/24 37/5
**receive [9]** 24/6 28/15 42/21 46/24 47/5 50/6 60/25 61/6 85/17
**received [28]** 3/7 3/13 7/15 25/12 28/5 28/8 29/11 29/12 31/10 32/5 32/6 32/11 34/3 34/11 34/12 35/2 36/16 40/22 40/23 42/19 54/12 60/11 61/10 62/18 62/21 63/5 86/1 86/4
**receiving [2]** 30/18 52/12
**recess [6]** 26/19 26/21 67/15 71/24 110/9
**recognize [6]** 31/18 34/1 40/12 57/13 57/14 58/1
**recollection [13]** 58/4 58/11 58/15 73/2 78/2 78/7 78/8 78/9 78/18 85/20 95/8 101/18 107/10
**record [7]** 7/7 13/16 14/21 25/6 48/13 68/18 74/16
**records [3]** 54/17 67/8 69/4
**recovered [1]** 66/15
**recovery [1]** 66/24
**RECROSS [2]** 3/4 3/11
**REDIRECT [2]** 3/4 3/11
**ref [3]** 35/13 36/24 108/16
**refer [1]** 36/2
**reference [9]** 5/14 35/11 35/12 37/14 38/5 39/10 82/14 89/23 108/21 109/3
**referenced [3]** 31/24 35/13 65/23
**references [1]** 18/14
**referred [3]** 52/15 65/5 65/9
**referring [6]** 29/6 36/2 36/15 37/21 40/7 75/17
**reflect [1]** 64/6
**reflected [3]** 6/2 19/18 64/5
**reflects [2]** 47/3 83/1
**refresh [4]** 58/4 58/11 73/2 107/10
**refs [1]** 35/25
**refused [1]** 72/16
**regard [3]** 5/22 18/7 20/13
**regards [2]** 20/19 70/15 70/17
**register [1]** 103/22
**Regnier [11]** 11/1 13/11 19/15 96/9 96/15 97/1 98/6 105/1 105/6 106/13 109/6
**regular [3]** 21/9 90/8 92/5
**regularly [1]** 92/2
**regulations [1]** 111/11
**relate [1]** 17/17
**related [9]** 17/18 16/12 18/15 19/18 83/15 87/25 89/23 96/18 96/24
**relates [8]** 15/3 15/5 19/7 23/9 84/15 94/5 104/23 105/2
**relating [19]** 13/20 19/13 19/13 23/11 23/15 23/21 26/2 47/4 49/11 51/18 83/10 83/20 84/20 89/3 95/22 100/1 102/5 105/5 106/18

**relation [1]** 90/1
**relationships [1]** 105/7
**relevance [8]** 9/14 20/9 20/10 22/23 58/25 66/17 76/21 103/17
**relevancy [1]** 13/18
**relevant [4]** 9/24 15/23 20/12 69/24
**relied [1]** 96/14
**rely [1]** 96/25
**remember [15]** 57/23 62/4 62/16 67/16 72/20 76/10 76/12 85/3 87/2 87/3 89/13 89/24 96/2 107/8 110/4
**remind [1]** 29/5
**reminded [1]** 27/11
**rendered [1]** 13/9
**reopened [1]** 5/2
**repeat [1]** 63/3
**rephrase [1]** 96/22
**report [1]** 6/3
**reported [1]** 111/8
**reporter [2]** 48/9 111/16
**REPORTER'S [1]** 1/15
**represent [7]** 7/15 7/17 50/21 60/8 93/5
**representation [1]** 16/8
**representations [3]** 73/13 75/3 75/15
**represented [1]** 68/22
**representing [1]** 71/8
**represents [1]** 18/9
**request [3]** 7/22 17/11 18/20
**requested [1]** 5/14
**requests [5]** 8/23 8/23 9/1 10/6 10/7
**require [4]** 6/4 6/19 17/9 81/5
**required [5]** 18/22 20/14 22/17 22/20 71/4
**requiring [1]** 22/25
**research [2]** 67/19 110/7
**resolution [3]** 83/20 84/12 84/20
**resolve [2]** 42/7 85/22
**resolved [2]** 10/8 14/22
**respect [10]** 4/14 5/20 6/21 7/21 8/17 10/11 14/9 16/4 18/19 38/24
**respective [1]** 104/20
**respond [8]** 13/23 26/5 30/7 30/15 36/23 37/14 38/4 39/13
**responded [9]** 94/23 94/24 97/13 97/15 97/18 97/20 97/24 102/25 103/6
**responds [1]** 99/15
**response [8]** 26/7 29/23 29/25 33/15 35/22 37/13 38/18 85/2
**responses [1]** 16/7
**responsible [2]** 11/7 45/9
**responsive [2]** 63/18
**rest [1]** 90/2
**restriction [1]** 21/7
**rests [1]** 22/10
**result [4]** 45/3 52/5 54/22 85/17
**resume [1]** 110/4
**resumed [2]** 26/22 71/25
**retained [1]** 50/20
**retainer [2]** 64/7 64/8
**return [1]** 33/12
**review [3]** 18/24 19/16 23/2
**reviewed [6]** 5/5 6/1 18/20 29/20 48/18 78/3
**revise [1]** 7/4
**revisit [1]** 67/23
**Richard [1]** 59/12
**right [121]**
**rights [1]** 24/2
**Roberson [2]** 20/20 57/11
**Robertson [2]** 6/8 6/16
**robust [1]** 12/19
**Rogers [2]** 45/13 45/15
**role [1]** 15/10
**Ronald [1]** 2/10
**room [1]** 25/23
**rough [2]** 6/10 6/15
**row [1]** 4/18
**RPR [1]** 1/19
**rule [1]** 70/20
**ruling [9]** 9/19 13/15 15/10 15/17 20/19 21/13 67/23 80/15 89/6

**R**

**run [3]** 25/19 26/12 46/15
**running [3]** 21/5 46/3 46/6

**S**

**SACR [3]** 1/11 4/3 26/24
**SACR-19-00061-JVS [3]** 1/11 4/3 26/24
**SAGEL [6]** 2/9 4/5 23/4 27/2 57/11 69/9
**said [23]** 14/21 15/20 22/8 30/10 35/13 40/7 49/14 49/25 50/13 67/6 69/6 69/15 79/11 79/11 80/2 80/10 82/11 85/9 89/19 91/2 95/17 96/2 99/14
**same [21]** 7/17 23/20 30/4 31/22 32/20 33/15 34/4 35/6 36/8 41/2 54/25 55/6 55/16 55/21 59/23 60/4 69/20 70/9 77/13 77/19 101/17
**San [1]** 2/16
**Santa [4]** 1/16 1/20 2/11 4/1
**saw [1]** 52/16
**say [19]** 10/23 24/3 29/4 29/23 31/5 33/18 36/13 37/21 42/18 52/8 66/23 79/17 81/7 84/3 88/23 92/17 92/21 96/21 108/25
**saying [5]** 22/3 30/19 82/8 102/25 103/10
**says [15]** 28/5 30/17 33/2 33/5 34/19 35/8 36/12 36/24 37/10 38/5 52/23 52/24 61/17 101/4 107/4
**scope [2]** 15/9 24/19
**Scott [1]** 8/8
**screenshot [2]** 90/20 91/10
**screenshotting [1]** 91/14
**SE [1]** 2/14
**seal [1]** 4/25
**sealed [2]** 4/17 5/1
**search [1]** 91/20
**second [10]** 28/2 29/7 29/12 29/15 36/9 40/8 73/3 82/9 87/16 95/10
**section [3]** 2/6 44/1 111/6
**see [37]** 13/19 13/20 14/1 16/2 20/5 24/4 24/8 25/18 33/2 33/6 33/22 37/7 49/9 49/21 50/17 50/18 57/25 58/1 58/3 61/17 77/4 77/5 77/8 77/16 92/24 93/22 94/25 95/3 97/10 97/22 101/5 103/8 107/5 107/22 108/17 109/13 110/8
**seeks [1]** 10/2
**seems [1]** 69/19
**SEFFENS [3]** 1/19 111/15 111/16
**select [1]** 72/3
**self [1]** 28/23
**self-destruct [1]** 28/23
**sell [5]** 80/11 80/14 80/22 81/2 85/10
**SELNA [1]** 1/8
**send [4]** 42/1 92/14 97/15 105/9
**sending [2]** 42/1 105/5
**sent [15]** 29/20 30/20 30/23 31/20 37/3 40/6 44/4 86/8 91/11 91/12 93/16 93/20 97/10 102/15 102/22
**separate [1]** 6/3
**separately [2]** 4/17 6/18
**September [5]** 56/22 56/25 57/8 72/9 73/18
**September 29 [1]** 72/9
**September 29th [1]** 73/18
**September 2nd [1]** 56/22
**September 4th [2]** 56/25 57/8
**sequence [5]** 28/4 28/9 28/25 29/14 30/14
**serious [2]** 69/10 69/11
**seriously [1]** 43/16
**set [4]** 29/7 86/16 87/16 92/20
**settled [4]** 63/13 88/2 88/5 88/19
**settlement [7]** 59/22 60/25 64/9 83/11 85/21 89/2 94/1
**several [8]** 9/23 11/11 45/23 47/18 72/15 73/10 74/23 83/21
**shall [2]** 17/25 18/1
**shares [3]** 80/12 81/3 85/10
**sharing [1]** 81/22
**SHARON [3]** 1/19 111/15 111/16
**she [24]** 4/19 10/24 10/25 18/13 42/25 48/12 50/15 50/20 51/3 51/5 52/8 60/20 60/21 61/6 61/10 73/11 74/24 74/25 74/25 75/2 75/4 75/9 75/11 85/15

**sheet [1]** 34/20
**shortly [3]** 97/13 99/4 103/11
**should [14]** 8/25 10/23 17/8 20/16 24/13 38/5 38/23 63/10 82/11 105/15 108/15 109/13 109/17 109/19
**show [2]** 22/23 64/3
**showed [1]** 62/8
**showing [1]** 22/14
**shown [1]** 62/3
**shows [5]** 15/1 58/13 64/25
**side [5]** 34/19 84/2 84/16 84/19 87/6
**sidebar [1]** 55/8
**sign [1]** 56/8
**Signal [2]** 28/18 28/20 92/8 93/12
**signatory [2]** 79/15 79/16
**signed [4]** 56/2 56/10 56/18 81/19
**significant [2]** 69/15 96/13
**signing [1]** 56/21
**similar [2]** 12/16 92/17
**similarity [1]** 16/1
**Similarly [2]** 9/10 10/19
**simple [3]** 84/8 109/18 109/19
**simply [5]** 22/4 24/1 24/3 68/10 71/6
**Sims [6]** 8/8 9/11 10/19 12/10 14/1 14/19
**since [1]** 60/10
**Singer [1]** 68/23
**single [3]** 21/25 22/6 99/25
**sir [61]** 17/7 19/16 19/23 21/17 21/21 22/3 24/11 24/15 24/22 27/11 45/4 45/20 46/5 46/12 47/3 49/2 49/5 49/9 51/5 51/8 51/17 51/25 52/18 52/22 53/4 53/6 54/16 54/22 55/14 55/19 55/24 56/18 57/24 58/11 58/17 59/6 60/24 62/14 64/5 65/8 67/22 67/24 72/12 72/19 73/1 73/14 73/16 74/11 74/15 79/3 84/7 87/9 89/4 93/2 96/4 96/21 98/20 99/8 100/8 102/3 108/8
**sit [11]** 39/1 64/24 66/19 88/20 89/11 93/2 98/16 98/21 100/8 101/25 105/19
**sitting [2]** 48/10
**situation [2]** 81/8 84/3
**situations [1]** 84/25
**six [9]** 57/9 78/4 97/25 98/1 98/4 98/7 98/10 98/13 98/18
**six-day [1]** 98/18
**skip [1]** 38/11
**SMS [1]** 90/6
**so [78]** 4/5 8/10 8/15 10/2 12/1 13/25 16/11 16/17 17/5 17/16 17/23 19/9 19/22 21/19 28/8 29/7 29/14 35/10 37/24 38/19 38/25 39/2 40/4 41/8 45/12 45/14 45/20 45/23 45/25 46/19 47/1 47/16 50/1 50/5 50/19 51/17 51/25 52/3 52/14 61/10 61/13 63/25 65/17 70/1 71/8 72/13 73/3 77/23 79/6 79/17 81/1 82/16 83/23 84/9 86/6 87/12 87/22 90/7 91/8 92/21 93/2 93/11 94/2 94/13 95/8 99/9 99/21 100/23 100/25 101/13 102/25 104/19 104/22 105/20 107/10 107/21 107/24 109/11
**Sofitel [1]** 88/2
**software [1]** 91/13
**sold [1]** 61/23
**some [25]** 13/5 14/14 17/23 20/3 20/8 22/23 29/15 35/14 35/18 44/23 48/3 54/12 72/4 76/9 79/8 87/7 88/9 88/13 88/21 90/8 94/19 107/17 107/25 108/6 108/13
**somebody [2]** 20/4 108/3
**somehow [1]** 52/17
**someone [3]** 92/21 94/9 94/10
**something [9]** 13/12 14/14 29/2 29/9 29/11 62/15 81/1 92/17 109/21
**Soon [1]** 74/20
**sorry [5]** 39/14 51/1 74/7 88/24 99/3
**sort [4]** 28/2 29/3 29/15 75/20
**sought [1]** 15/2
**sound [1]** 66/21
**sounds [4]** 14/3 14/4 57/23 72/21
**source [1]** 49/18
**sourced [7]** 24/7 46/23 47/5 49/22 52/1 52/11 81/11
**sourcing [1]** 49/12

**SOUTHERN [1]** 1/6
**speak [2]** 43/17 71/7
**Special [6]** 4/7 5/23 18/7 20/19 20/20 27/3
**specific [4]** 78/7 93/17 93/20 101/19
**specifically [2]** 16/15 40/8
**speculation [2]** 42/5 76/22 97/2
**speed [1]** 7/6
**spend [1]** 109/20
**spending [3]** 38/23 109/13 109/17
**spent [5]** 66/8 66/16 89/14
**split [1]** 49/14
**spoke [6]** 41/13 53/6 53/12 95/15 101/23 107/16
**spoofing [1]** 94/8
**sporadic [1]** 40/5
**sports [1]** 86/9
**spreadsheet [3]** 64/18 64/21 64/25
**Spring [1]** 2/7
**stamp [2]** 24/5 24/8
**stamped [1]** 91/11
**stand [8]** 16/15 24/3 24/9 48/17 48/23 49/6 70/2 77/21
**started [5]** 22/17 44/23 45/7 63/13 78/11
**stated [2]** 73/6 82/20
**statement [5]** 9/21 12/3 13/25 43/24 44/8
**statements [4]** 6/10 9/15 11/24 11/25
**STATES [15]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/4 4/6 6/7 26/25 27/2 111/7 111/11
**stay [1]** 4/19
**STDs [3]** 72/18 73/12 74/24
**stealing [3]** 59/16 69/22 70/4
**stenographically [1]** 111/8
**step [3]** 23/1 67/21 67/22
**STEWARD [4]** 2/15 2/15 4/10 27/6
**still [14]** 21/1 27/12 28/20 30/3 30/4 37/7 38/12 38/20 39/17 39/24 46/17 60/8 64/21 85/6
**stipulate [2]** 17/2 17/5
**stipulation [1]** 10/8
**stole [2]** 7/19 59/21
**Stolper [4]** 12/16 12/21 12/22 12/24
**stop [1]** 14/5
**straightforward [1]** 84/9
**strategic [1]** 13/5
**Street [3]** 1/20 2/7 2/11
**stricken [5]** 54/9 57/6 63/19 64/13 90/17
**strike [11]** 51/2 51/7 51/17 54/7 57/5 63/17 64/11 66/14 78/9 90/16 109/15
**stuff [1]** 25/10
**subject [12]** 6/7 6/16 22/21 23/12 32/17 34/13 34/16 49/8 55/11 102/5 102/6 102/8
**submission [1]** 5/5
**submissions [1]** 11/4
**submit [1]** 26/7
**submitted [4]** 9/13 60/1 67/18 110/7
**subpoena [6]** 7/15 9/9 14/6 20/4 20/6 22/22
**subpoenaed [1]** 7/1
**subpoenas [5]** 19/3 19/4 20/5 20/13 22/19
**subsequent [2]** 17/22 56/5
**subsequently [1]** 45/18
**substance [2]** 44/2 44/5
**substantive [2]** 6/2 83/22
**such [1]** 11/8
**sued [6]** 54/23 67/25 68/6 68/9 70/2 72/9
**suffice [1]** 82/12
**suggest [1]** 70/21
**suggesting [1]** 87/4
**suing [2]** 59/15 69/21
**Suite [3]** 1/20 2/11 2/16
**summary [2]** 26/2 26/3
**Superior [2]** 13/2 13/14
**supervisor [1]** 4/19
**supporting [1]** 7/9
**supposed [3]** 29/3 35/2 47/4
**supposedly [1]** 83/1
**sure [18]** 13/24 20/20 21/2 21/5 26/12 29/7 34/19 35/8 36/13 41/12 48/6 56/7 64/2 66/4 77/22 93/14 100/24 107/9
**suspicious [1]** 103/14

**S**

sustained [17] 48/1 54/20 55/1 55/7 55/17
55/22 56/16 59/19 59/24 60/6 60/22 67/13
71/5 71/15 89/7 100/6 103/18
sustains [2] 71/2 71/11
sworn [2] 10/12 27/10

**T**

table [2] 4/7 27/3
take [26] 4/14 19/10 20/16 23/1 24/23 25/15
25/22 25/23 30/4 40/10 46/13 47/12 55/3
56/23 61/12 61/14 67/14 75/9 76/4 78/13 82/1
89/13 90/7 94/17 105/11 110/3
taken [4] 26/21 48/9 71/24 110/9
taking [4] 25/20 28/2 83/22 84/14
talk [4] 19/12 30/24 36/5 37/10
talked [3] 29/4 87/13 95/5
talking [5] 19/13 51/10 63/24 65/20 89/1
task [2] 9/17 9/25
tasks [1] 46/15
technically [1] 44/21
telegram [1] 92/17
tell [11] 43/13 45/11 45/13 50/19 83/19 92/22
93/2 98/24 102/17 105/10 108/20
telling [2] 40/2 106/17
tells [1] 30/8
tens [1] 85/17
term [2] 9/22 49/17
terminate [1] 71/14
terms [5] 9/17 9/25 81/23 84/15 84/19
tested [1] 74/25
testified [25] 7/16 9/5 9/11 10/17 10/17 10/19
10/20 10/23 11/2 12/24 16/16 16/16 16/17
16/22 24/9 46/21 60/21 80/5 81/10 86/7 86/15
86/16 87/15 95/25 105/12
testify [6] 9/7 10/25 11/3 12/5 12/6 71/9
testifying [1] 12/4
testimony [39] 6/12 7/22 8/16 8/22 9/10
10/5 10/7 10/12 12/2 12/11 13/20 14/1 14/12
16/12 16/13 19/14 21/14 22/21 23/12 26/14
43/12 46/25 48/23 49/2 55/20 59/9 61/10
62/25 63/4 63/7 67/3 78/4 82/22 93/15 93/19
94/14 95/13 105/24
text [67] 23/11 27/21 28/10 29/19 30/12 30/16
30/18 31/22 33/13 33/14 35/24 37/9 38/3
39/21 64/4 89/14 89/20 90/6 90/8 90/12 90/15
90/21 91/3 91/6 91/13 91/18 92/5 92/8 92/12
92/14 92/20 92/22 92/24 93/3 93/7 93/19
93/22 94/3 94/5 94/19 98/17 98/24 99/5 99/12
99/25 99/25 100/9 100/13 100/16 100/21
101/2 101/10 101/15 101/21 101/23 102/6
102/7 102/11 105/8 105/14 105/23 105/23
105/25 106/23 107/14 108/14 108/15
texted [4] 38/19 90/2 90/4 92/2
texting [1] 106/16
texts [1] 39/4
than [10] 11/6 13/21 17/13 53/16 53/20 69/11
88/17 92/10 92/15 94/11
Thank [29] 4/22 7/12 11/15 11/16 11/18 17/10
18/4 18/5 21/11 25/25 26/9 26/18 33/6 33/19
41/16 43/3 48/25 54/6 70/12 70/23 71/16
71/23 72/6 74/1 74/9 78/2 97/18 97/20 110/8
Thanks [3] 29/24 99/15 102/19
that [618]
that's [111] 7/6 12/2 13/2 14/16 19/9 19/23
20/8 20/12 21/7 22/11 22/19 25/17 25/20 26/8
26/15 26/17 28/6 29/3 30/17 30/19 30/22
31/15 31/24 32/13 36/21 39/11 41/21 45/19
45/25 46/20 47/23 48/8 49/2 50/5 50/8 50/10
51/6 51/22 52/3 53/14 53/18 53/22 53/25
54/15 56/14 57/20 65/14 66/6 67/6 69/23 71/22 73/16 74/6
74/8 74/11 75/18 75/20 77/5 77/7 77/7 77/11
79/5 79/13 80/4 81/4 81/13 81/22 82/5 82/18
84/4 84/14 86/19 86/22 87/3 88/4 88/7 88/11
88/16 92/16 93/5 93/21 93/23 93/24 94/14
95/11 95/12 95/14 97/19 97/21 99/2 99/14
101/3 101/7 101/8 101/24 104/9 104/15
104/18 104/21 106/1 107/3 108/24 109/1

109/2 109/4 110/2
them [21] 12/10 15/13 15/19 15/22 18/22
21/9 21/18 21/22 22/17 45/21 80/1 80/12
80/14 80/22 83/22 86/25 94/10 95/7 102/7
107/8
them [41] 12/14 12/15 19/10 19/16 21/1 21/3
21/4 21/8 21/9 21/17 21/23 24/22 24/24 25/8
29/10 35/20 40/6 41/5 43/22 49/14 58/19 68/3
73/13 75/3 76/2 77/23 77/24 78/6 79/8 80/13
83/23 84/6 85/16 86/25 91/6 91/10 91/14
94/10 94/11 106/17 109/4
themselves [2] 11/13 28/24
then [46] 10/21 13/12 14/5 15/16 17/2 17/7
18/25 25/16 26/10 28/4 28/5 30/15 30/15
31/10 33/21 35/17 39/1 39/4 41/25 45/17
47/16 49/17 49/20 50/4 50/11 51/10 51/25
57/21 68/23 80/9 83/9 88/8 94/24 95/6 97/15
101/4 102/10 102/25 103/3 103/6 103/23
106/2 107/7 107/22 108/19 109/8
theory [2] 15/16 15/17
therapist [1] 75/7
there [85] 5/19 6/19 7/10 9/10 14/10 14/14
10/15 10/21 11/7 11/9 14/5 16/22 18/10 19/1
19/3 19/3 20/4 20/5 21/8 22/3 25/18 28/14
29/7 29/18 32/19 33/14 35/7 36/2 36/11 38/5
38/9 38/14 39/3 39/8 39/20 41/19 46/21 49/14
52/10 52/15 57/1 57/14 57/11 58/2 60/20
62/2 63/11 65/4 65/9 65/12 66/14 66/24 76/11
77/4 77/5 77/14 77/15 80/8 81/9 82/16 82/24
83/3 85/21 88/20 88/21 89/2 93/2 93/6 99/25
100/8 100/8 100/21 101/1 101/10 101/15
101/21 103/20 105/20 106/3 106/3 107/1
107/17 108/3 108/15
there's [3] 12/20 28/4 102/20
these [29] 12/9 14/14 15/3 15/7 16/24 17/16
18/19 19/9 19/21 20/11 24/12 37/6 75/3 76/1
78/15 89/14 90/12 93/3 93/19 94/19 96/5
96/18 102/11 104/23 105/2 105/17 106/18
107/15 109/22
they [48] 5/16 6/11 6/16 11/13 12/1 20/1 20/2
20/22 21/3 21/21 22/17 24/21 25/7 26/3 26/3
26/5 28/23 28/24 35/9 35/24 36/1 37/11 40/6
41/5 43/18 55/3 56/4 64/25 68/4 69/2 69/15
75/4 76/3 79/22 80/7 80/10 81/1 83/15 85/19
90/12 90/14 91/5 91/21 91/22 94/4 107/12
they'll [1] 25/8
they're [52] 70/9 102/13 102/19 103/1 103/24
things [10] 16/18 24/14 24/15 70/20 71/9
86/16 88/2 88/6 88/17 109/22
think [54] 8/23 10/5 13/18 14/7 14/12 14/25
20/3 20/9 20/11 22/23 28/1 33/10 35/13 42/1
46/23 47/12 47/14 50/24 56/1 59/2
60/12 60/18 61/13 69/9 69/23 70/5 70/13 80/9
82/1 82/2 82/9 82/9 83/3 83/23 85/6 85/9 86/7
86/15 87/7 87/22 88/21 89/19 89/22 92/16
96/1 101/23 105/7 105/11 105/14 105/15
105/20 105/21 109/11
think it [1] 82/1
third [4] 6/23 7/1 77/14 77/15
third-party [1] 6/23
this [161]
those [52] 5/13 5/18 6/19 8/11 8/11 8/18 8/22
8/25 9/15 12/7 12/16 12/18 17/12 17/18 18/10
18/16 19/1 19/17 21/15 22/23 23/20 24/14
24/15 28/20 39/10 45/9 55/11 62/19 64/10
64/10 65/15 65/18 71/1 71/5 73/12 77/10
77/12 83/11 84/4 88/17 92/15 94/3 94/5 96/10
98/1 98/4 98/7 98/10 98/13 101/16 102/15
104/16
though [2] 71/2 77/2
thought [1] 29/15
thousand [3] 29/10 29/11 61/11
three [14] 8/24 9/2 11/4 29/8 38/5 38/9 57/13
77/10 88/17 92/15 98/22 108/16 108/21
108/25
through [10] 26/4 37/11 49/22 52/12 74/21
74/22 75/15 78/25 94/19 105/10

throughout [1] 92/2
thus [3] 9/8 52/1 52/9
tight [1] 39/1
time [49] 16/17 20/17 38/23 40/4 45/1 45/6
50/14 63/14 65/19 65/22 66/4 66/8 66/25 69/8
71/19 73/12 73/21 74/25 75/6 80/13 80/21
80/25 81/7 83/4 89/1 89/3 89/14 92/1 92/15
92/18 93/4 95/20 95/25 96/14 98/18 99/1
99/25 100/10 101/19 102/23 103/3 105/11
108/11 108/20 109/9 109/13 109/17 109/20
110/1
times [5] 16/23 43/18 47/17 47/19 93/6
title [3] 10/16 32/20 111/7
today [1] 41/14 44/14 98/16 100/8 101/25
today's [1] 58/24
together [1] 35/20
told [13] 43/18 47/4 53/16 54/11 57/16 58/18
62/18 68/20 69/2 86/6 95/9 103/23 105/1
ton [2] 88/21 109/20
took [15] 11/10 24/21 27/12 43/12 43/16 48/4
48/17 48/23 49/6 52/25 57/9 57/19 77/21
91/10 101/19
tool [1] 9/9
top [15] 29/18 32/25 33/14 33/21 35/7 39/3
39/20 61/7 61/17 76/13 77/14 77/15 94/22
109/8 109/12
topic [3] 23/16 75/21 75/24
topics [2] 19/14 23/21
tortfeasor [1] 14/11
total [3] 38/5 64/10 108/15
touch [4] 11/19 52/6 107/14 107/17
touched [1] 23/20
Touhy [3] 20/1 20/7 20/13
Toward [1] 36/10
towards [1] 63/16
track [6] 13/8 33/19 36/9 40/6 63/12 96/25
tracking [10] 29/2 29/15 30/8 30/10 34/20
35/14 35/18 37/4 38/9 39/12
traded [1] 81/1
Tran [79] 27/21 29/23 30/7 30/19 31/11 31/20
32/11 33/15 33/21 34/3 35/7 36/23 37/9 38/1
38/4 38/14 38/22 39/7 39/20 41/3 41/19 41/22
42/2 63/2 63/7 79/22 80/1 80/22 84/1 85/16
86/1 86/8 86/17 87/20 87/23 89/20 89/24 90/4
90/25 91/4 91/7 93/4 93/9 93/25 94/6 94/21
94/22 95/2 95/8 95/15 96/19 97/10 97/24 98/9
98/17 99/1 99/15 99/19 99/24 100/9 100/22
101/4 102/15 102/16 102/25 103/3 103/6
103/10 103/23 103/25 104/1 105/24 107/1
108/7 108/20 109/9 109/12 109/16 109/24
Tran's [4] 30/24 34/18 35/22 104/13
Tran/Phan [2] 63/2 63/7
tranche [1] 86/18
transaction [2] 85/7 105/5
transactions [6] 35/11 38/6 95/22 96/6
106/18 108/16
transcript [7] 1/9 1/15 4/17 26/13 48/13 111/8
111/10
transcripts [1] 9/4 9/5 10/12
transfer [5] 39/25 40/8 42/13 42/22 63/1
transfers [2] 104/24 105/2
transmitted [1] 5/15
traveling [1] 88/8
trial [8] 1/12 8/17 9/9 44/9 44/11 44/14 48/8
78/5
trials [1] 26/11
trip [1] 65/8
true [29] 22/10 22/11 45/2 45/4 45/6 45/9
46/12 46/19 51/19 53/25 54/16 54/22 55/3
72/8 72/12 73/5 73/8 75/16 84/19 93/20 93/21
111/7
truncated [1] 6/11
trustee [13] 59/13 69/25 69/25
Trustee's [1] 70/3
trustworthiness [1] 70/5
truth [3] 43/13 43/13 43/14
truthful [3] 43/19 57/16 59/9

**T**

truthfulness [1] 68/4
try [1] 30/14
trying [3] 30/21 95/6 108/6
Tuesday [2] 26/4 26/6
turn [4] 6/23 31/16 39/3 95/12
Turning [1] 38/20
turns [1] 70/21
Twenty [1] 99/24
twice [2] 16/16 16/22
two [36] 5/14 8/24 9/2 12/3 18/11 21/16 22/2 25/1 26/13 29/10 30/13 44/21 56/24 57/2 67/23 71/1
typed [1] 81/14

**U**

U.S [3] 69/25 70/3 111/16
Ultimately [1] 13/8
unclear [2] 31/6 46/9
under [18] 4/25 6/4 6/7 6/15 21/15 22/13 22/14 23/9 23/24 27/12 43/23 48/4 63/4 67/3 68/2 69/25 79/25 94/14
underlying [2] 5/25 6/1
understand [25] 7/14 11/2 16/7 19/5 20/21 21/12 24/18 30/10 33/7 37/17 37/1 38/8 41/4 50/14 65/7 70/25 89/3 93/14 95/24 96/22 103/10 108/5 109/9 109/15 109/16
understanding [21] 9/6 12/22 13/1 29/1 35/14 41/22 42/3 52/19 52/20 56/8 83/5 95/21 96/4 96/7 96/17 96/18 97/13 97/13 108/4
understood [18] 19/11 19/19 20/15 24/25 35/19 37/2 39/11 41/9 56/10 96/1 96/9 96/12 96/13 96/24 107/17 107/24 108/9 109/21
UNITED [15] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/3 4/6 6/7 26/24 27/2 111/7 111/11
unless [1] 17/8
unnecessary [1] 8/22
unproven [1] 68/10
unsiftable [1] 6/12
until [11] 18/20 19/21 22/10 26/6 26/19 38/25 39/1 51/19 67/18 71/20 110/6
untruthfulness [1] 68/5
unusual [3] 13/13 13/16 103/20
up [19] 4/14 7/5 13/2 20/16 24/3 24/23 26/20 27/23 28/2 32/7 32/25 34/3 37/19 41/18 43/25 74/21 76/13 80/17 106/21
update [2] 39/8 39/9
upon [3] 72/15 73/10 74/23
upset [1] 75/10
us [11] 24/19 27/2 37/11 38/23 45/16 45/25 68/20 71/17 81/19 109/12 109/19
USAO [1] 5/24
USC [1] 43/23
use [11] 9/8 17/13 17/22 25/18 36/13 56/4 73/22 90/5 91/13 92/14 92/17
used [6] 5/17 13/14 17/16 17/25 25/5 46/23
uses [1] 18/2
using [5] 26/13 30/12 92/5 92/8 92/12
usual [1] 21/4
utilize [1] 94/8
utilizing [1] 90/8

**V**

vacation [1] 88/13
valid [3] 35/9 36/1 107/20
various [1] 15/6
verified [1] 34/21 36/1
verify [2] 35/9 107/20
versus [4] 4/4 6/8 9/3 26/25
very [14] 20/18 25/1 40/4 40/4 48/9 50/19 70/8 70/15 72/3 81/7 84/3 84/8 84/24 93/19
via [3] 89/21 93/10 102/6
victim [2] 7/16 7/17
view [1] 10/7
vigorous [1] 22/9
violating [1] 60/13
violation [2] 5/19 24/2
voice [2] 5/14 5/15

**VOL [1]** 1/12
vs [5] 1/5 1/10

**W**

wait [5] 39/23 46/9 50/25 82/3 82/3
waiting [3] 104/3 104/6 104/7
waived [1] 60/20
want [20] 18/25 20/20 21/2 21/5 22/15 23/1 25/11 25/19 26/12 38/11 38/24 42/2 46/14 48/3 67/23 70/16 84/1 93/14 97/7 100/6 80/7 80/11 87/16 95/6 95/9 102/4 105/22
wanted [13] 45/8 46/13 63/9 64/3 75/11 80/6 80/7 80/11 87/16 95/6 95/9 102/4 105/22
wanting [1] 14/1
wants [2] 9/10 9/12
warrant [1] 91/20
was [212]
wasn't [7] 4/13 15/9 22/17 47/1 63/18 72/18 103/20
way [10] 25/16 42/7 48/17 86/7 86/23 96/15 99/3 102/3 105/7 109/8
we [65] 5/3 12/10 13/19 16/7 16/18 16/24 17/16 20/10 20/20 20/21 21/1 21/1 21/2 21/4 22/9 22/19 23/24 24/23 25/16 26/6 26/19 27/20 27/23 27/24 29/4 29/12 29/19 31/12 31/22 32/7 32/25 34/10 35/1 35/10 35/12 35/21 36/10 37/11 38/4 38/20 38/25 63/9 63/10 64/3 65/23 67/5 67/7 67/15 68/19 76/6 76/15 82/24 82/25 83/23 90/2 95/5 99/13 101/23 102/3 105/12 105/22 105/24 107/21 110/3 110/4
We'd [1] 26/4
We'll [2] 67/14 110/8
we're [7] 12/19 19/13 20/21 21/5 37/6 70/8 70/10
We've [1] 14/12
WEDNESDAY [1] 4/1
week [1] 19/22
weeks [4] 57/22 58/19 69/17 78/4
Weiner [2] 5/10 5/20
Weiner's [1] 5/17
well [36] 4/11 11/9 12/7 13/1 13/11 13/14 19/10 19/21 25/22 30/20 30/23 31/6 44/21 47/14 50/15 51/17 52/7 56/10 58/14 61/8 66/14 76/13 77/24 78/9 78/13 78/18 82/14 89/1 90/11 94/22 98/20 99/12 101/21 107/13 107/19 108/5
were [87] 4/25 5/16 5/17 11/6 12/1 14/20 18/10 20/1 27/20 28/14 29/7 29/7 29/12 31/22 35/2 36/8 36/15 39/15 39/24 40/6 41/5 45/1 48/19 49/20 49/23 50/11 50/12 51/22 52/1 53/3 53/4 53/19 54/4 54/23 57/2 57/11 63/12 63/13 63/13 65/4 65/9 65/12 66/11 66/25 72/9 75/3 75/4 76/6 77/3 78/21 78/24 79/22 80/5 81/1 81/12 81/15 82/20 83/1 83/5 83/15 83/17 83/22 84/14 88/21 89/21 92/25 93/20 94/11 94/20 98/7 98/9 99/12 100/8 100/21 101/15 101/21 102/1 102/11 102/13 102/24 105/17 106/2 106/23 107/11 107/12 107/14 107/23 108/2 109/22
weren't [2] 83/14 104/13 104/16
West [2] 1/20 2/11
what [127]
what's [10] 15/16 15/16 16/22 21/22 25/18 43/23 44/18 58/24 99/18 100/19
WhatsApp [2] 92/12 93/10
when [38] 6/10 7/14 19/12 24/23 29/4 30/10 31/8 36/2 37/21 40/7 42/10 43/12 43/16 43/21 44/22 48/22 49/6 50/12 52/7 57/8 58/19 60/21 62/3 71/11 71/17 72/18 76/2 77/22 79/22 83/23 88/23 90/4 91/20 96/15 102/22 103/10 107/13 107/24
where [26] 17/15 18/12 20/6 25/23 27/24 28/15 33/3 33/4 35/2 37/25 45/25 50/13 50/20 52/20 52/22 54/11 56/3 68/2 77/12 77/18 81/2 81/25 90/24 94/3 94/5 106/9
whether [17] 14/11 14/16 16/15 18/25 19/17 20/13 31/6 31/7 62/14 64/3 86/25 93/9 98/16 98/25 102 104/8
which [22] 4/15 7/22 8/13 11/6 11/10 18/8 18/9 23/1 27/20 30/2 33/10 34/20 35/13 43/23

51/3 54/12 55/11 71/2 79/25 84/19 85/11 90/8
while [1] 104/10
Whiteside [3] 60/11 61/1 89/2
who [28] 7/16 9/5 9/6 10/15 10/16 10/23 11/1 12/5 12/5 15/11 28/7 28/12 39/15 40/25 45/15 45/17 47/11 48/9 53/6 59/12 69/4 69/25 70/1 70/2 87/19 89/9 96/10 104/7
Who's [1] 8/3
whole [2] 43/13 109/9
why [20] 8/13 15/17 19/9 25/20 28/22 38/16 41/22 42/2 45/24 62/10 68/2 76/18 76/20 88/12 93/6 95/2 103/16 109/4 109/5 109/15
will [35] 6/10 7/11 16/4 16/20 17/1 17/5 17/7 18/20 20/4 24/14 24/23 25/7 26/19 29/24 32/5 33/19 34/11 34/19 35/20 35/24 40/22 54/9 57/6 63/19 64/13 67/15 71/13 81/24 90/17 97/13 99/14 102/13 102/18 110/3 110/4
willing [1] 10/4
winding [1] 45/1
wire [31] 14/12 14/17 29/3 29/4 29/16 30/5 30/14 31/8 32/18 32/20 32/21 33/7 36/1 36/9 37/3 39/12 39/25 40/8 41/13 41/15 42/8 42/12 42/22 61/20 62/5 63/14 96/25 97/15 104/23 105/2
wires [4] 29/9 38/10 97/10 105/5
wish [3] 21/8 26/3 26/3
within [4] 52/13 70/13 93/7 100/1
without [9] 10/9 20/13 21/4 23/23 60/12 98/24 100/13 100/16 100/23
witness [26] 6/12 21/14 21/14 21/24 21/25 22/2 22/12 22/13 22/15 26/3 26/6 27/10 27/25 31/17 33/25 40/11 44/13 58/9 67/21 67/24 68/16 70/2 70/14 72/24 73/4 76/5
witnesses [3] 3/4 3/11 44/16
won't [3] 17/2 25/13 37/11
word [1] 46/23
words [1] 15/12
work [17] 45/18 45/24 53/15 67/4 88/18 99/4 99/8
worked [1] 45/16
working [4] 21/1 25/24 35/20 45/17
would [72] 6/4 6/6 6/18 9/24 12/22 13/19 13/19 14/7 14/13 14/15 15/12 15/17 17/16 18/15 19/2 19/3 20/5 20/10 21/13 24/4 24/8 25/3 25/4 25/14 27/23 28/15 31/16 37/10 38/9 38/16 39/2 40/4 46/23 47/5 47/16 52/11 52/12 56/3 60/4 60/14 61/13 64/6 67/10 71/1 71/10 71/17 71/21 73/11 73/21 74/24 84/17 90/4 92/5 92/8 92/12 92/16 92/21 92/24 94/9 96/25 100/25 102/3 102/4 102/7 102/8 102/9 103/1 105/10 105/21 106/20 108/13 109/7
wouldn't [2] 68/2 100/24
write [5] 38/14 38/22 39/7 59/5 89/21
writes [3] 33/22 35/7 109/12
written [7] 48/13 51/8 51/12 51/15 57/24 81/14 89/17
wrong [6] 12/23 31/7 31/8 89/18 89/21 96/21
wrote [3] 31/13 89/17 103/11
WYMAN [28] 2/5 4/6 23/13 23/17 27/1 44/22 46/21 48/4 48/18 49/7 49/11 49/17 61/14 62/3 62/8 62/14 76/9 78/22 79/25 80/9 83/9 85/3 89/14 94/20 97/9 99/17 101/5 108/14

**X**

X-Law [15] 44/23 45/8 45/21 46/14 47/1 47/5 52/12 62/23 63/11 63/14 72/9 73/9 74/22 75/13 89/12

**Y**

Yeah [2] 44/19 105/20
year [2] 75/12 75/12
years [6] 43/25 44/7 44/20 44/21 98/7 98/22
yes [219]
yesterday [16] 16/20 19 26/14 27/12 27/20 28/1 28/14 29/5 35/14 43/12 48/4 48/17 49/6 57/19 77/21 85/9
yet [9] 12/22 21/24 21/24 22/4 22/5 30/9 94/25 95/2 95/17

## Y

**York [1]** 18/13
**you [689]**
**you're [13]**  19/21 22/20 25/24 37/21 38/1
 48/12 65/20 66/7 66/11 68/15 79/16 84/9 87/4
**you've [1]**  22/5
**your [212]**
**yours [1]** 84/18
**yourself [1]**  68/15

## Z

**zero [2]**  66/21 66/22
**zip [1]** 77/5