1

```
 1
 2
 3
 4                UNITED STATES DISTRICT COURT
 5               CENTRAL DISTRICT OF CALIFORNIA
 6                     SOUTHERN DIVISION
 7                         - - -
 8      THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING
 9
        UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
10                      Plaintiff,  )
           vs.                       )
11                                   )  SACR-19-00061-JVS
        MICHAEL JOHN AVENATTI,       )
12                      Defendant.  )TRIAL DAY 15, VOL. 1
        ------------------------------)
13
14
15         REPORTER'S TRANSCRIPT OF PROCEEDINGS
16                 Santa Ana, California
17                  August 5, 2021
18
19                    SHARON A. SEFFENS, RPR
                      United States Courthouse
20                    411 West 4th Street, Suite 1-1053
                      Santa Ana, CA  92701
21                    (714) 543-0870
22
23
24
25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    NICOLA T. HANNA
     United States Attorney
4    BRANDON D. FOX
     Assistant United States Attorney
5    Chief, Criminal Division
     ALEXANDER WYMAN
6    Assistant United States Attorney
     Major Frauds Section
7    1100 United States Courthouse
     312 North Spring Street
8    Los Angeles, CA  90012
     (213) 894-6683
9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

3

```
 1
 2                              I-N-D-E-X
 3
 4    PLAINTIFF'S
      WITNESSES:              DIRECT   CROSS   REDIRECT   RECROSS
 5
      GREGORY BARELA
 6      (Continued)            13      86
 7    PLAINTIFF'S
      EXHIBITS:                               MARKED     RECEIVED
 8
      Exhibit 222                                          17
 9    Exhibit 228                                          24
      Exhibit 229                                          28
10    Exhibit 230                                          36
      Exhibit 231                                          40
11    Exhibit 232                                          43
      Exhibit 233                                          48
12    Exhibit 236                                          59
      Exhibit 237                                          61
13    Exhibit 238                                          64
      Exhibit 239                                          65
14    Exhibit 256                                          67
      Exhibit 257                                          72
15    Exhibit 250                                          76
16    DEFENSE
      WITNESSES:          DIRECT   CROSS   REDIRECT   RECROSS
17
       (None)
18
      DEFENSE
19    EXHIBITS:                               MARKED     RECEIVED
20    Exhibit 1056 (As redacted)                          97
21
22
23
24
25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| | 1 | SANTA ANA, CALIFORNIA; THURSDAY, AUGUST 5, 2021; 8:30 A.M. |
| | 2 | (Jury not present) |
| 08:30 | 3 | THE CLERK:  Item 1, SACR-19-00061-JVS, United |
| 08:30 | 4 | States of America versus Michael John Avenatti. |
| 08:30 | 5 | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel |
| 08:30 | 6 | and Alexander Wyman on behalf of the United States.  And at |
| 08:30 | 7 | counsel table is Special Agent Ramon Carlos. |
| 08:30 | 8 | THE COURT:  Good morning. |
| 08:30 | 9 | MR. AVENATTI:  Good morning, Your Honor.  Michael |
| 08:30 | 10 | Avenatti present with advisory counsel, Mr. Dean Steward, as |
| 08:30 | 11 | well as Ms. Cummings-Cefali. |
| 08:30 | 12 | THE COURT:  Good morning. |
| 08:30 | 13 | At docket 645 the government provides a further |
| 08:30 | 14 | explanation with regard to the production of Exhibit 4 in |
| 08:30 | 15 | the notes from the interview with Mr. Barela.  I'm satisfied |
| 08:31 | 16 | that the government in fact produced Exhibit 4.  The |
| 08:31 | 17 | government has attached a copy to its filing at Docket 645. |
| 08:31 | 18 | Anything further on this, Mr. Avenatti? |
| 08:31 | 19 | MR. AVENATTI:  Briefly, Your Honor.  I believe you |
| 08:31 | 20 | are referring to, but I may be wrong, 643. |
| 08:31 | 21 | THE COURT:  Yes, you are correct, 643. |
| 08:31 | 22 | MR. AVENATTI:  Your Honor, before Your Honor took |
| 08:31 | 23 | the bench, I handed to your clerk just a couple documents. |
| 08:31 | 24 | I just wanted to point out a couple of things that -- |
| 08:31 | 25 | THE COURT:  Sir, has the government in fact |

08:31  1  produced the Exhibit 4 that you questioned about yesterday?

08:31  2          MR. AVENATTI:  I don't know.

08:31  3          THE COURT:  Why is it that you don't know?

08:31  4          MR. AVENATTI:  Because for the following reason,

08:32  5  Your Honor, and that's why I handed the documents to your

08:32  6  clerk.  The spreadsheet that was attached to 643 has no

08:32  7  identifier on it that it is Exhibit 4.  It was produced at

08:32  8  Bates stamp in the lower right-hand corner.  The last six

08:32  9  digits are 183391.

08:32  10          It was produced about five months before, Your

08:32  11  Honor, the interview with Mr. Marchino.

08:32  12          THE COURT:  Okay.

08:32  13          MR. AVENATTI:  If you look at the interview with

08:32  14  Mr. Marchino, if you look at the Bates stamp number, Your

08:32  15  Honor, it's 270,000 pages later in the production.  The

08:32  16  spreadsheet was never produced with the interview notes, so

08:32  17  how could we expect to know supposedly that this spreadsheet

08:33  18  goes with these notes?

08:33  19          Furthermore, Your Honor, I will note this.  If you

08:33  20  look at the page 454780 on the interview notes, you will see

08:33  21  that the documents -- it's paragraphs 138, 139, 140 on the

08:33  22  interview notes, Your Honor.

08:33  23          The interview notes when they refer to Bates stamp

08:33  24  numbered documents, they include the Bates stamp number from

08:33  25  the Filippo Marchino production.  However, when it talks

08:33  1    about the spreadsheet, it says Exhibit 4.  So I don't know
08:33  2    if this spreadsheet is Exhibit 4, and we have no way of
08:33  3    knowing whether it was Exhibit 4.  We can't expect to go
08:33  4    through over 1.4 million pages.
08:33  5         How could we possibly know that this spreadsheet
08:34  6    was supposedly Exhibit 4?  It should have been produced with
08:34  7    the interview memorandum, and the exhibit should not have
08:34  8    been produced months before the actual memorandum.  There's
08:34  9    no way to tell this, Your Honor.
08:34  10        THE COURT:  The matter is closed.  I believe the
08:34  11   record has established that the government met its
08:34  12   obligation and that you now have what the government
08:34  13   represents to be Exhibit 4.  You're obviously free to
08:34  14   examine the witness and determine whether it is in fact the
08:34  15   Exhibit 4 that he presented during that interview or not.
08:34  16        We're going to move on to the next issue.
08:34  17        I want to take up the motion at -- Mr. Avenatti's
08:34  18   motion at 629 with regard to compliance with Jencks with
08:34  19   regard to Ninth Circuit witnesses.  The government replied
08:34  20   yesterday at 644.
08:34  21        Do you wish to be heard further on that,
08:34  22   Mr. Avenatti?
08:35  23        MR. AVENATTI:  I do, Your Honor.  I understood
08:35  24   that it was going to be taken up tomorrow after the
08:35  25   government filed their response today.  I would like an

| | | |
|---|---|---|
| 08:35 | 1 | opportunity to put in a reply of no greater than five pages |
| 08:35 | 2 | by 6:00 this evening. |
| 08:35 | 3 | THE COURT:  Fine. |
| 08:35 | 4 | MR. AVENATTI:  Thank you. |
| 08:35 | 5 | THE COURT:  At the conclusion of Mr. Barela's |
| 08:35 | 6 | testimony, I will read the stipulation that we discussed |
| 08:35 | 7 | yesterday. |
| 08:35 | 8 | MR. SAGEL:  Thank you, Your Honor. |
| 08:35 | 9 | MR. AVENATTI:  Is that at the conclusion of direct |
| 08:35 | 10 | or his total testimony? |
| 08:35 | 11 | THE COURT:  What's your preference? |
| 08:35 | 12 | MR. AVENATTI:  I'm not certain, Your Honor. |
| 08:35 | 13 | THE COURT:  Sir, the position you seemed to |
| 08:35 | 14 | espouse yesterday was that it should be read between |
| 08:35 | 15 | witnesses so it wouldn't interrupt one witness's testimony. |
| 08:35 | 16 | MR. AVENATTI:  I have to agree with that, Your |
| 08:35 | 17 | Honor. |
| 08:35 | 18 | THE COURT:  That's the position you took |
| 08:35 | 19 | yesterday.  What's your position today? |
| 08:36 | 20 | MR. AVENATTI:  It's the same position, Your Honor. |
| 08:36 | 21 | THE COURT:  Okay.  As I said, we will read it at |
| 08:36 | 22 | the conclusion of Mr. Barela's testimony. |
| 08:36 | 23 | Does the government have anything it wants to |
| 08:36 | 24 | raise at this time? |
| 08:36 | 25 | MR. SAGEL:  Very briefly.  In our prior -- I |

08:36  1    mentioned this either yesterday morning or the day before.

08:36  2    I can't remember which morning I raised it.  In our trial

08:36  3    memo we referenced Mr. Barela's misdemeanor conviction

08:36  4    from -- I'll have to look back, but I think we're talking

08:36  5    about 17-ish years ago by now.

08:36  6            He has been convicted of a felony.  That would be

08:36  7    an impeachable offense under 609.  The misdemeanor from the

08:36  8    early 2000s is not a crime of dishonesty.  It's more than

08:36  9    ten years.  Under the 403 balancing test, we can don't think

08:36  10   it should come in, and especially since he will be impeached

08:37  11   on other felonies, that would go towards excluding that

08:37  12   conviction.

08:37  13           THE COURT:  Mr. Avenatti.

08:37  14           MR. AVENATTI:  Your Honor, Mr. Barela was

08:37  15   convicted, I believe, in 2006 of a misdemeanor relating to

08:37  16   contracting without a license, which is a crime of fraud in

08:37  17   the state of California.

08:37  18           He was subsequently convicted, Your Honor, in

08:37  19   2018.  He pled guilty to two charges.  One was a felony

08:37  20   relating to diversion of --

08:37  21           THE COURT:  The government has conceded that

08:37  22   point.  What we're talking about is the early 2000s

08:37  23   misdemeanor conviction.

08:37  24           MR. AVENATTI:  Your Honor, there's an additional

08:37  25   misdemeanor in connection with 2018.  That's why I was

08:37  1   trying to give the background to the Court.  That's all I'm

08:37  2   trying to do.

08:37  3         In 2018 he pled guilty to a felony and a

08:37  4   misdemeanor.  When he pled guilty to the misdemeanor in

08:37  5   2018, it was the same misdemeanor that he pled guilty to

08:37  6   back in the mid 2000s.  They both involved allegations of

08:37  7   dishonesty.  They both go to fraud.  They both go to his

08:38  8   trustworthiness and his propensity not to be truthful, Your

08:38  9   Honor.

08:38  10        So for that reason I believe that I should be able

08:38  11  to get into the 2006 as well as the 2018 charges and

08:38  12  convictions.

08:38  13        THE COURT:  Mr. Sagel.

08:38  14        MR. SAGEL:  Other than defendant saying that the

08:38  15  misdemeanor from 15 plus years ago is a crime of dishonesty,

08:38  16  the statute itself is not.  It's just --

08:38  17        THE COURT:  It's a strict liability statute; is it

08:38  18  not?

08:38  19        MR. SAGEL:  That is correct.  It is a misdemeanor

08:38  20  for a person to engage in a business of or acting in the

08:38  21  capacity of a contractor.  The person is not licensed in

08:38  22  accordance with this chapter.  That doesn't require any act

08:38  23  of dishonesty.  The pure elements of it and the pleading to

08:38  24  it does not involve the dishonesty that would be required

08:39  25  for it to fall within 609(a)(2), I believe.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:39   1          THE COURT:  I'm going to exclude the 2006

08:39   2   misdemeanor conviction.  (A) I don't believe it's a crime of

08:39   3   fraud.  There is no element of fraud in the statute itself.

08:39   4   It's a strict liability statute.  If you perform the work of

08:39   5   the contractor without a license, you're liable under the

08:39   6   statute.

08:39   7          What about the 2018 conviction, the misdemeanor

08:39   8   conviction?

08:39   9          MR. SAGEL:  To tell you the truth, Your Honor, I

08:39   10  was assuming both 2018 convictions were coming in.  I guess

08:39   11  I didn't look closely enough to know which one was a

08:39   12  misdemeanor or which one was -- or they were both felonies.

08:39   13  They're all part of the same allegations.  We aren't even --

08:39   14  we won't contest those.

08:39   15         THE COURT:  Okay.  I think that resolves that.

08:39   16         One, I find that it's not a crime -- the 2006

08:40   17  conviction is not a crime of fraud; and, two, exercising the

08:40   18  balancing requirements under 403, I find it more prejudicial

08:40   19  than probative mainly because it doesn't shed any light on

08:40   20  his propensity for veracity or the lack thereof.

08:40   21         Anything else the government wants to take up at

08:40   22  this time?

08:40   23         MR. SAGEL:  Nothing from the government, Your

08:40   24  Honor.

08:40   25         THE COURT:  Mr. Avenatti.

08:40  1          MR. AVENATTI:  Yes, Your Honor, one question.  I'm

08:40  2  assuming -- I want to make sure I'm correct -- that when we

08:40  3  file things with the Court that have been produced in

08:40  4  discovery but have not been marked as public exhibits in the

08:40  5  trial, that they should be filed under seal.  Is that

08:40  6  correct?

08:40  7          THE COURT:  I don't know why that should be so as

08:40  8  a general rule.

08:40  9          MR. AVENATTI:  Well, given the protective order in

08:40  10  the case.

08:41  11          THE COURT:  The protective order limits you to

08:41  12  using a document for this case, I believe.  Why does that

08:41  13  preclude you from filing any exhibit that's part of the

08:41  14  production without filing it under seal?

08:41  15          MR. AVENATTI:  I just wanted -- I didn't want to

08:41  16  run --

08:41  17          THE COURT:  I'm asking you what your rationale is

08:41  18  for asking the question.

08:41  19          MR. AVENATTI:  Because I understood the protective

08:41  20  order precluded the parties from filing documents absent a

08:41  21  sealing request if they had not been used in open court.

08:41  22  And I don't know want to run afoul of Your Honor or the

08:41  23  Court.

08:41  24          When I saw the filing relating to Mr. Marchino

08:41  25  last night, that's what caused me to think, oh, I guess we

08:41   1   can file documents without seal.  And I don't want to run

08:41   2   afoul as it relates to filing other documents, Your Honor.

08:41   3   That's what I'm trying to --

08:41   4            THE COURT:  All right.  As far as I'm concerned,

08:41   5   it's part of the public production.  Unless there is some

08:41   6   separate restriction on the document, you can file it in the

08:41   7   public record.

08:42   8            MR. AVENATTI:  Thank you.

08:42   9            THE COURT:  Assuming the appropriate redactions

08:42   10  are made for personal information.

08:42   11           Anything else?

08:42   12           MR. AVENATTI:  Nothing from the defendant, Your

08:42   13  Honor.

08:42   14           THE COURT:  All right.  We will be in recess.

08:42   15                (Recess taken at 8:42 a.m.;

08:42   16                proceedings resumed at 9:04 a.m.)

08:42   17           (Jury present)

08:42   18  GREGORY A. BARELA, JR, GOVERNMENT'S WITNESS, PREVIOUSLY

08:42   19  SWORN

09:04   20           THE CLERK:  Sir, you are reminded you are still

09:04   21  under the oath that you took yesterday.

09:04   22           THE WITNESS:  Yes.

09:04   23           THE COURT:  Good morning, ladies and gentlemen.

09:04   24           THE JURY:  Good morning.

09:04   25           THE COURT:  Mr. Sagel.

| | | |
|---|---|---|
| 09:04 | 1 | MR. SAGEL:  Thank you, Your Honor. |
| 09:04 | 2 | DIRECT EXAMINATION (Continued) |
| 09:04 | 3 | BY MR. SAGEL: |
| 09:04 | 4 | Q    Good morning, Mr. Barela. |
| 09:04 | 5 | A    Good morning. |
| 09:04 | 6 | Q    If you could turn to Exhibit 176.  They were the text |
| 09:04 | 7 | messages we were looking at. |
| 09:04 | 8 | A    (Witness complies.)  Okay. |
| 09:04 | 9 | Q    And let me ask you a question.  Where we left off |
| 09:05 | 10 | yesterday, we were in May of 2018.  I'm going to turn to |
| 09:05 | 11 | June of 2018 now. |
| 09:05 | 12 | By June of 2018 how much of your settlement money |
| 09:05 | 13 | had you received? |
| 09:05 | 14 | A    Zero. |
| 09:05 | 15 | Q    What was your financial situation in June of 2018? |
| 09:05 | 16 | A    Dire. |
| 09:05 | 17 | Q    What do you mean by that? |
| 09:05 | 18 | A    Barely could make my own personal bills, let alone fund |
| 09:05 | 19 | a company. |
| 09:05 | 20 | Q    In June of 2018 were you explaining -- did you have any |
| 09:05 | 21 | discussions about that with the defendant? |
| 09:05 | 22 | A    Of course. |
| 09:05 | 23 | Q    Did there become a different problem in your life in |
| 09:05 | 24 | June of 2018? |
| 09:05 | 25 | A    Yes. |

09:05  1            MR. SAGEL:  If we can look at page 33 of

09:05  2  Exhibit 176.

09:05  3            THE WITNESS:  Okay.

09:05  4  BY MR. SAGEL:

09:06  5  Q    Do you see line 397 on June 15th, 2018?

09:06  6  A    Yes.

09:06  7  Q    You sent the defendant a text message on line 397 that

09:06  8  says, "I really need you, Michael.  Thanks.  I'm looking

09:06  9  forward to talking."  Do you see that?

09:06  10  A    I do.

09:06  11  Q    Do you know what you really needed to talk to the

09:06  12  defendant about at that time?

09:06  13  A    It was probably my legal troubles in San Diego.

09:06  14  Q    And if you look up on the page to line 382, defendant

09:06  15  sent you a text message on June 22nd.  Do you see that, the

09:06  16  top text on the page?

09:06  17  A    I do.

09:06  18  Q    Do you know what he is sending you there?

09:06  19  A    Yes.  It's a criminal defense lawyer in Los Angeles.

09:06  20  Q    I'm just learning that you and I are the only ones

09:07  21  seeing this, so I just turned on the overhead.

09:07  22            Between the message on June 15th and defendant

09:07  23  sending you this criminal defense lawyer in L.A. on

09:07  24  June 22nd, did you have a discussion with the defendant?

09:07  25  A    I did.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:07  1    Q    What did you discuss with the defendant?

09:07  2    A    I discussed that the County of San Diego was pursuing

09:07  3    me for two things.  One they called diversion of funds for a

09:07  4    contracting company I worked for, and two was contracting

09:07  5    without a license.

09:07  6    Q    Did you eventually plead guilty to those two crimes?

09:07  7    A    I did.

09:07  8    Q    Did the defendant know that you pled guilty to those

09:07  9    two crimes?

09:08  10   A    He did.

09:08  11   Q    How did he know?

09:08  12   A    Because I had a discussion with him and he had made us

09:08  13   an offer, and he said it was a good deal and I should take

09:08  14   it.

09:08  15   Q    At this time when you pled guilty to the two crimes --

09:08  16   let me see if I heard you right.  Were the two crimes you

09:08  17   pled guilty to diversion of funds and contracting without a

09:08  18   license?

09:08  19   A    Yes, they were.

09:08  20   Q    At the time you pled guilty, was defendant still

09:08  21   working with you on your Quix Supply business?

09:08  22   A    He was.

09:08  23   Q    After you pled guilty for these two crimes, did

09:08  24   defendant continue working with you on your Quix Supply

09:08  25   business?

| | | |
|---|---|---|
| 09:08 | 1 | A    He did. |
| 09:08 | 2 | Q    What reservations, if any, did defendant have with |
| 09:08 | 3 | dealing with you after you pled guilty? |
| 09:08 | 4 | MR. AVENATTI:  Objection, Your Honor. |
| 09:08 | 5 | Speculation. |
| 09:08 | 6 | THE COURT:  Sustained. |
| 09:08 | 7 | BY MR. SAGEL: |
| 09:08 | 8 | Q    Let me rephrase.  What reservations did defendant tell |
| 09:08 | 9 | you he had with working with you after your convictions? |
| 09:09 | 10 | A    None. |
| 09:09 | 11 | Q    If I could have you look at Exhibit 222. |
| 09:09 | 12 | A    It's in a different notebook. |
| 09:09 | 13 | Q    It may be in the next volume, Volume 4. |
| 09:09 | 14 | A    Did you say 224? |
| 09:09 | 15 | Q    222. |
| 09:09 | 16 | A    Oh, 222.  Okay. |
| 09:09 | 17 | Q    Is Exhibit -- do you have 222 in front of you? |
| 09:09 | 18 | A    I do. |
| 09:09 | 19 | Q    Is Exhibit 222 an e-mail that you sent to the defendant |
| 09:09 | 20 | with a cc to Judy Regnier? |
| 09:10 | 21 | A    It is. |
| 09:10 | 22 | Q    Is it a fair and accurate copy of the e-mail you sent |
| 09:10 | 23 | to the defendant and Ms. Regnier? |
| 09:10 | 24 | A    It is. |
| 09:10 | 25 | MR. SAGEL:  At this time, Your Honor, the |

09:10   1   government moves Exhibit 222 into evidence and only for
09:10   2   notice purposes.
09:10   3              MR. AVENATTI:  Objection, Your Honor.  Hearsay.
09:10   4              THE COURT:  Overruled.  It will be received for
09:10   5   notice.
09:10   6              (Exhibit 222 received in evidence)
09:10   7   BY MR. SAGEL:
09:10   8   Q    Let's pull up the top part.  What's the date of this
09:10   9   e-mail that you send to the defendant?
09:10   10  A    June 25th, 2018.
09:10   11  Q    Now, yesterday we looked at a wire that you received on
09:10   12  May 25th, 2018, that you received for $30,000.  Do you
09:10   13  remember that?
09:10   14  A    I do.
09:10   15  Q    And in the e-mail preceding that, you had asked for
09:10   16  $60,000; is that correct?
09:10   17  A    That's correct.
09:10   18  Q    What did defendant tell you when you would receive the
09:10   19  other $30,000 you had asked for?
09:11   20  A    He was working on it.  He didn't have the exact timing.
09:11   21  Q    And this e-mail, what is the subject line?
09:11   22  A    "Greg Barela list."
09:11   23  Q    Then the e-mail starts with, "Per our discussion and
09:11   24  your request, here is the list of reminders for the week."
09:11   25              What do you mean by, "Per our discussion and your

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:11  1   request, here is the list of reminders for the week"?

09:11  2   A    He asked me to put together a short list of what I was

09:11  3   working on and what I needed.

09:11  4   Q    What do you list for number one?

09:11  5   A    "Advance on Tuesday for 30,000.  Judy, same account as

09:11  6   last time.  Thanks."

09:11  7   Q    And what do you mean when you say "advance?"

09:11  8   A    Advance on the 1.6 million.

09:11  9   Q    And number three, what did you say in number three?

09:11  10  A    "Brock filing for Tuesday, 1.6 million due."

09:12  11  Q    And what did you mean when you said, "Brock" -- and it

09:12  12  might actually say filling, but did you mean filing?

09:12  13  A    I did.

09:12  14  Q    "Brock filing for Tuesday," what did you mean by that?

09:12  15  A    Whatever motion we were going to file to try and get

09:12  16  the collection of funds.

09:12  17  Q    And who told you that there would be a filing on

09:12  18  Tuesday?

09:12  19  A    Mr. Avenatti.

09:12  20  Q    And why did you say $1.6 million due in June of 2018?

09:12  21  A    Because I had not received my settlement funds.

09:12  22  Q    That e-mail is June 25th.  I'm going to turn you back

09:13  23  towards Exhibit 176 and the text messages that took place on

09:13  24  June 27th.  They're on page 32.  Do you see line 373?

09:13  25  A    Yes.

09:13  1   Q    What do you text the defendant on line 373 on

09:13  2   June 27th, 2018?

09:13  3   A    I said, "No worries.  Only one worry this morning is

09:13  4   the wire.  I'm getting in a bit of trouble.  If you can help

09:13  5   with that?  Thanks."

09:13  6   Q    And what was the bit of trouble you're referring to?

09:13  7   A    Financial.

09:13  8   Q    And what's the "help with that" that you're asking him?

09:13  9   A    Help with an advance.

09:13  10  Q    And right above that the defendant texts you back on

09:13  11  line 372.

09:13  12  A    Yes.

09:13  13  Q    What did defendant say?

09:14  14  A    "Okay.  On it."

09:14  15  Q    And if you look at the next two texts that you send on

09:14  16  June 27, lines 371 to 370, first you say, "Thanks,"

09:14  17  immediately after his, "Okay.  On it."  And then several

09:14  18  hours later you say, "Thanks, Michael.  Received.  Let me

09:14  19  know when we can talk.  I know you're busy."  In the second

09:14  20  one where you say "received," what are you referring to?

09:14  21  A    The wire that we received.

09:14  22  Q    And to possibly make it easier, I'll just put it on the

09:14  23  screen, Exhibit 235, page 3.  According to Exhibit 235,

09:14  24  page 3, on June 27th, 2018, did you receive a wire into one

09:15  25  of your Bank of America accounts?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:15  1    A    I did.

09:15  2    Q    And for how much?

09:15  3    A    30,000.

09:15  4    Q    And who did you believe was sending you this money?

09:15  5    A    Mr. Avenatti.

09:15  6    Q    What was the basis for this $30,000 he was providing

09:15  7    you?

09:15  8    A    An advance on the 1.6 million.

09:15  9    Q    We talked yesterday about after your original meeting

09:15  10   in December of 2018, about not getting a copy of your

09:15  11   settlement agreement.  By June of 2018 had defendant

09:15  12   provided you a copy of your settlement agreement?

09:15  13   A    No.

09:15  14   Q    Had you asked for it?

09:15  15   A    Yes.

09:15  16   Q    Who did you ask for a copy of your settlement agreement

09:15  17   from?

09:15  18   A    Mr. Avenatti and Judy.

09:15  19   Q    Let's start with the defendant.  When you asked

09:15  20   defendant for a copy of your settlement agreement, did he

09:15  21   provide it to you?

09:16  22   A    No.

09:16  23   Q    Did he tell you why?

09:16  24   A    No.

09:16  25   Q    When you asked Ms. Regnier, his office manager, for a

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:16   1    copy of your settlement agreement, what did she tell you?

09:16   2    A    That I needed to talk to Mr. Avenatti.

09:16   3    Q    If you could look at Exhibit 224.

09:16   4          MR. SAGEL:  This is already in evidence, Your

09:16   5    Honor.

09:16   6    BY MR. SAGEL:

09:16   7    Q    Let's start at the bottom e-mail.

09:16   8    A    Okay.

09:16   9    Q    Did you send Judy Regnier an e-mail on June 29, 2018?

09:16  10    A    I did.

09:16  11    Q    What's the subject line?

09:16  12    A    "Brock signed agreement."

09:17  13    Q    And then could you read the e-mail that you sent to

09:17  14    Ms. Regnier on June 29th.

09:17  15    A    Yes.  It says, "Good morning, Judy.  Could you forward

09:17  16    me the signed agreement from Brock with Richard Runkles'

09:17  17    signature?  Thanks."

09:17  18    Q    Now, six months after you signed the document with the

09:17  19    defendant, why are you sending this e-mail to Ms. Regnier?

09:17  20    A    Because nobody was giving me a copy of the signed

09:17  21    agreement.

09:17  22    Q    When you sent this e-mail to Ms. Regnier, did you get a

09:17  23    copy back in response to this e-mail?

09:17  24    A    No.

09:17  25    Q    Did you know at the time the reason Ms. Regnier did not

09:17   1    provide it to you was because defendant told her not to?

09:17   2    A    No.

09:17   3    Q    The top part of this e-mail, had you ever seen it?

09:17   4    A    No.

09:18   5    Q    Would you look at Exhibit 225?

09:18   6         MR. SAGEL:  And I believe 225 is already in

09:18   7    evidence, Your Honor.

09:18   8    BY MR. SAGEL:

09:18   9    Q    The bottom e-mail, is that an e-mail that you sent to

09:18   10   Ms. Regnier?

09:18   11   A    It is.

09:18   12   Q    And what is the date of this e-mail?

09:18   13   A    July 20th, 2018.

09:18   14   Q    And what is your subject line in that e-mail?

09:18   15   A    "Second request."

09:18   16   Q    So about three weeks after your last e-mail, you sent

09:18   17   another e-mail to Ms. Regnier?

09:18   18   A    I did.

09:18   19   Q    And this says, "Second request."  And you say, "Hi,

09:18   20   Judy.  I have requested this once before and never heard

09:18   21   back.  Please send me the last and final Brock versus Barela

09:19   22   signed settlement agreement.  I need it for my records."

09:19   23        Why on July 20th are you sending this e-mail?

09:19   24   A    Because I was starting to worry that possibly something

09:19   25   like this had happened and the money had come in, and I

09:19  1    needed to see a copy of it so I could figure out what was

09:19  2    going on.

09:19  3    Q    Did you have a copy of it at that time?

09:19  4    A    I did not.

09:19  5    Q    Did you know at the time that Ms. Regnier was asking

09:19  6    defendant for permission to provide it to you?

09:19  7    A    No.

09:19  8    Q    Did there come a time where you met with the defendant

09:19  9    to obtain a copy of your settlement agreement?

09:19  10   A    Yes.

09:19  11   Q    Did you have a discussion before that meeting that you

09:20  12   wanted to get a copy of the settlement agreement from the

09:20  13   defendant when you met with him?

09:20  14   A    Yes.

09:20  15   Q    And what did the defendant tell you?

09:20  16   A    That I could pick it up at the office.

09:20  17   Q    Did you eventually meet with the defendant at the

09:20  18   office to get that settlement agreement?

09:20  19   A    Yes.

09:20  20   Q    Can you describe what happened when you got that

09:20  21   settlement agreement.

09:20  22   A    Yes.  Myself and Mr. Avenatti was sitting in a

09:20  23   conference room and we were going over some other matters,

09:20  24   and Judy came into the office, and I was sitting closest to

09:20  25   the door.  And she had the documents in her hand, which was

09:20  1    the settlement agreement, and I went to reach for it.  She

09:20  2    reached around me and handed it to Michael.  Michael

09:20  3    reviewed the document before handing it to me.  Once he

09:20  4    reviewed it, he handed it to me and had the signature pages.

09:21  5    Q    Can I have you look at Exhibit 228.

09:21  6    A    Okay.

09:21  7    Q    Do you recognize Exhibit 228?

09:21  8    A    I do.

09:21  9    Q    And if you can look at pages 8 and 9 in addition to the

09:21  10   first seven pages.

09:21  11   A    (Witness complies.)  Okay.

09:21  12   Q    Was this the settlement agreement that defendant handed

09:21  13   you that day in his office?

09:21  14   A    It is.

09:21  15   Q    Is this a true and correct copy of the settlement

09:21  16   agreement defendant handed to you in his office that day?

09:21  17   A    It is.

09:21  18           MR. SAGEL:  At this time, Your Honor, the

09:21  19   government moves to admit Exhibit 228.

09:21  20           MR. AVENATTI:  Objection, Your Honor.  Hearsay.

09:21  21           THE COURT:  Overruled.  228 will be received.

09:21  22           (Exhibit 228 received in evidence)

09:21  23   BY MR. SAGEL:

09:22  24   Q    Now, let's start at the back, page 9 of 9.

09:22  25   A    Okay.

09:22  1    Q    Is that your signature on page 9 of 9 on 12/28/17?

09:22  2    A    It is.

09:22  3    Q    And do you recall when you signed this page that said

09:22  4    12/28/17?

09:22  5    A    December of the previous year, 2017.

09:22  6    Q    Was that when you met with the defendant the first time

09:22  7    to go over the settlement agreement?

09:22  8    A    Yes.

09:22  9    Q    Now, if you look at page 8, there is a signature there

09:22  10   for an individual named Richard Runkles, the president of

09:22  11   Brock USA.  Do you see that?

09:22  12   A    I do.

09:22  13   Q    Prior to receiving this document in defendant's office,

09:22  14   had you ever seen the settlement agreement with the other

09:22  15   side's signature on it?

09:22  16   A    Never.

09:23  17   Q    If you can look at page 3 -- well, let me ask you a

09:23  18   general question first.  Based on what you could tell at the

09:23  19   time and as you sit here now, were the first seven pages of

09:23  20   this document the same first seven pages that the defendant

09:23  21   provided you in December of the previous year?

09:23  22   A    They are.

09:23  23   Q    If I can have you look at page 3, the section that says

09:23  24   payments to Barela.  Paragraph 12 with the four subsections

09:23  25   says, "Brock will pay the total sum of USD $1,900,000 to

09:23  1  Barela as follows," and then it has four subsections.  Do

09:23  2  you see that?

09:23  3  A    I do.

09:24  4  Q    What are the four dates that this settlement agreement

09:24  5  that defendant provided you have for when you were supposed

09:24  6  to receive the four payments from Brock?

09:24  7  A    (a) Would be March 10th, 2018; (b) would be March 10th,

09:24  8  2019; (c) would be March 10, 2020; and (d) is March 10th,

09:24  9  2021.

09:24  10  Q    And when you met with the defendant and received this

09:24  11  settlement agreement from him with the signatures on it, did

09:24  12  he tell you at that time the true dates of the settlement

09:24  13  agreement were January 10th of those four years?

09:24  14  A    He did not.

09:24  15  Q    When you met with the defendant to get this copy of the

09:24  16  settlement agreement, did he tell you that Brock had already

09:24  17  paid the $1.6 million in January of 2018?

09:24  18  A    He had not.

09:24  19  Q    Would you have expected him to tell you that?

09:25  20  A    Of course.

09:25  21  Q    Why?

09:25  22  A    Because he's my lawyer.

09:25  23  Q    If you could turn back to Exhibit 176, the text

09:25  24  messages.

09:25  25  A    Okay.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:25   1   Q    I'm going to have you go to page 25.

09:25   2   A    Okay.

09:25   3   Q    And if I could have you look at lines 253 and 252.

09:25   4   Those are text messages between you and the defendant on

09:25   5   August 10th, 2018; is that correct?

09:26   6   A    Yes.

09:26   7   Q    On August 10, line 253 -- 253 and 252.

09:26   8   A    Yep.

09:26   9   Q    I'm trying to get the agent caught up to you.  Okay.

09:26  10   You sent a text message to the defendant saying, "I have a

09:26  11   list of things to review with you.  Can you do Saturday or

09:26  12   Sunday?  If yes, what time?  I have court next week in SD.

09:26  13   I think my deal is done but want to discuss details.

09:26  14   Thanks."

09:26  15            Did defendant reply to you?

09:26  16   A    Yes.

09:26  17   Q    What did he say?

09:26  18   A    He said, "Sunday afternoon."

09:26  19   Q    So let's start with your text message.  "I have court

09:27  20   next week in SD.  I think my deal is done but want to

09:27  21   discuss details.  Thanks."  What are you referring to there?

09:27  22   A    I'm referring to the deal that the D.A. offered me in

09:27  23   San Diego and the partners of the business.

09:27  24   Q    Did you wind up talking to defendant regarding your

09:27  25   list of things you wanted to go over?

09:27  1    A    Yes.

09:27  2    Q    If you could look at Exhibit 229.

09:27  3    A    Okay.

09:27  4    Q    Is 229 an e-mail chain between you and the defendant on

09:28  5    August 15th and August 22nd?

09:28  6    A    Yes.

09:28  7    Q    Including the first two e-mails from you, and then

09:28  8    defendant replies in the third e-mail; is that correct?

09:28  9    A    Yes.

09:28  10   Q    Is this a fair and accurate copy of the e-mail chain

09:28  11   between you and the defendant in August of 2018?

09:28  12   A    Yes.

09:28  13         MR. SAGEL:  The government moves to admit

09:28  14   Exhibit 229, Your Honor.

09:28  15         MR. AVENATTI:  Objection, Your Honor.  Hearsay.

09:28  16         THE COURT:  Mr. Avenatti's e-mail will be received

09:28  17   for the truth.  The others from Mr. Barela will be received

09:28  18   for notice but not for the truth of the content.

09:28  19         (Exhibit 229 received in evidence)

09:28  20         MR. SAGEL:  If we can start at the very bottom of

09:28  21   page 1 just to get the subject and the date.

09:28  22   BY MR. SAGEL:

09:28  23   Q    What is the date of this e-mail?

09:29  24   A    August 15th, 2018.

09:29  25   Q    And this is an e-mail from you to the defendant; is

09:29  1   that correct?

09:29  2   A     That is correct.

09:29  3   Q     What is the subject line?

09:29  4   A     "Greg Barela List.  Tomorrow is my big scary day!"

09:29  5   Q     What did you mean by your big scary day?

09:29  6   A     It was my day of being sentenced and accepting the plea

09:29  7   deal in San Diego.

09:29  8   Q     Are you again discussing that with the defendant?

09:29  9   A     Yes.

09:29  10  Q     If you would go to the second page of the body of the

09:29  11  e-mail.  You say, "Hi, Michael.  Tomorrow is my day in court

09:29  12  and I will keep you posted.  I am" -- is that supposed to be

09:29  13  nervous?

09:29  14  A     Yes.

09:29  15  Q     "I am nervous but will have my wife call you if it goes

09:29  16  bad."  Is this still about your San Diego case?

09:30  17  A     It is.

09:30  18  Q     "Here is the list we discussed," and it has "old

09:30  19  business."  Do you see that?

09:30  20  A     I do.

09:30  21  Q     What do you write under old business to defendant?

09:30  22  A     "Brock filing, you said it would happen Wednesday, yes

09:30  23  or no?  I'm short 14K for the week.  I borrowed 80,000 and

09:30  24  have a short period to pay it back.  Can you help me with

09:30  25  the 14?  This is the hottest one for me."

| | | |
|---|---|---|
| 09:30 | 1 | Q    When you say, "I borrowed 80K," what are you referring |
| 09:30 | 2 | to there? |
| 09:30 | 3 | A    I took a loan for 80,000 from a friend. |
| 09:30 | 4 | Q    And why did you take an 80,000 loan? |
| 09:30 | 5 | A    One is to help fund the company and pay some bills. |
| 09:30 | 6 | And then two was I had to pay restitution in San Diego. |
| 09:30 | 7 | Q    And that was part of your plea deal? |
| 09:30 | 8 | A    It was. |
| 09:30 | 9 | Q    Did defendant know you borrowed money to pay off your |
| 09:31 | 10 | restitution? |
| 09:31 | 11 | A    Yes. |
| 09:31 | 12 | Q    How did he know that? |
| 09:31 | 13 | A    Because I told him. |
| 09:31 | 14 | Q    At the beginning of that section you said, "Brock |
| 09:31 | 15 | filing, you said it would happen Wednesday, yes or no?" |
| 09:31 | 16 | What was the Brock filing he said would happen on Wednesday? |
| 09:31 | 17 | A    He said we were going to file in court to go after the |
| 09:31 | 18 | money because we still hadn't had a response for the |
| 09:31 | 19 | 1.6 million. |
| 09:31 | 20 | Q    Did he tell you whether or not there was a filing at |
| 09:31 | 21 | that time? |
| 09:31 | 22 | A    He did not. |
| 09:31 | 23 | Q    If I could have you look back at Exhibit 176. |
| 09:32 | 24 | A    Okay. |
| 09:32 | 25 | Q    And the e-mail we just went over, we're probably going |

09:32   1   to come back to it, but that e-mail was August 15.  I'm

09:32   2   going to have you look at line 244 and 243 -- I'm sorry,

09:32   3   page 25.

09:32   4   A    Yep, I got it.

09:32   5   Q    Do you send text messages to defendant starting on

09:32   6   August 13th on line 244?

09:32   7   A    I do.

09:32   8   Q    In that text message you say, "Please let me know when.

09:32   9   This is a big week for me on many fronts.  Thursday is my

09:32  10   court date.  I am borrowing 80,000K tomorrow to get out of

09:32  11   this.  I have some much good going on but this crap over my

09:32  12   head.  I really need you now more than ever.  Thanks.  G."

09:33  13          Then you sent another text the next day.  Do you

09:33  14   see that -- or at least eight hours later?  Do you see that?

09:33  15   A    I do.

09:33  16   Q    What did you say in your next text?

09:33  17   A    I said, "Michael," question mark.

09:33  18   Q    And why are you sending the second text?

09:33  19   A    Because he hadn't responded to my first text.

09:33  20   Q    In the first text about needing him more than ever,

09:33  21   what were you referring to?

09:33  22   A    For the case in San Diego and collecting money because

09:33  23   I was going to have to pay those funds back quickly.

09:33  24   Q    Then if you go up a couple lines, you said, "I sent you

09:33  25   an e-mail.  I have court at 8:00 a.m. tomorrow.  I'm nervous

09:33  1    a bit.  Hoping we can talk tonight or tomorrow before eight.

09:33  2    Let me know.  Thanks.  G."  Do you see that?

09:33  3    A    I do.

09:33  4    Q    And is the e-mail you're referring to the one we just

09:34  5    went over from August 15th?

09:34  6    A    It is.

09:34  7    Q    And then your next text to defendant says, "Thanks for

09:34  8    the advice.  My wife has your number if it goes bad.  You

09:34  9    are doing good work by the way.  Proud to be part of the

09:34  10   team with you."

09:34  11          What did you mean when you said "proud to be part

09:34  12   of the team with you?"

09:34  13   A    Him being involved with us at the Quix Supply.

09:34  14   Q    And what did you mean when you said, "You are doing

09:34  15   good work by the way?"

09:34  16   A    I meant the advice that he had been giving me and

09:34  17   trying to collect the money.

09:34  18   Q    If you had known that Brock had paid the $1.6 million

09:34  19   in January of 2018, would you have told defendant in August

09:34  20   of 2018 that he was doing good work and you were proud that

09:35  21   he was part of your team?

09:35  22   A    Of course not.

09:35  23   Q    On line 240 in response to your text message, did

09:35  24   defendant write you a text message?

09:35  25   A    He did.

09:35  1   Q    That's on August 15th.  What does the defendant write

09:35  2   back to you?

09:35  3   A    "Thanks, brother.  Just landed."

09:35  4   Q    After you were pleading guilty to the crimes in San

09:35  5   Diego, what did defendant refer to you as?

09:35  6   A    Brother.

09:35  7   Q    Mr. Barela, I apologize.  I forgot to ask you a

09:35  8   question.  The individual that you met at the office in

09:36  9   December of 2017 and again later in 2018 to get the

09:36  10  settlement agreement that we talked about, is he in the

09:36  11  courtroom?

09:36  12  A    He is.

09:36  13  Q    Would you point out who that individual who handed you

09:36  14  those settlement agreements was?

09:36  15  A    Michael Avenatti.

09:36  16  Q    Is he standing in the courtroom?

09:36  17  A    He is.

09:36  18       THE COURT:  The record will indicate that the

09:36  19  witness has identified the defendant.

09:36  20       (Defendant Avenatti identified)

09:36  21  BY MR. SAGEL:

09:36  22  Q    Turning back to Exhibit 229, the first August 22nd

09:36  23  e-mail, which is about two-thirds of the way down the page.

09:36  24  A    Yes.

09:36  25  Q    You sent defendant another e-mail saying, "I know

```
09:36   1   you're busy.  Need to get things done.  Time when we can
09:37   2   talk would be great."  Is that correct?
09:37   3   A    Yes.
09:37   4   Q    And did defendant reply to your e-mail?
09:37   5   A    Yes.
09:37   6   Q    What did defendant say?
09:37   7   A    "I am chat in a.m. at seven your time."
09:37   8   Q    And then did you reply at the top to defendant?
09:37   9   A    I did.
09:37  10   Q    Again, this is still on the e-mail chain, the "Greg
09:37  11   Barela list.  Tomorrow is my big scary day"?
09:37  12   A    Yes.
09:37  13   Q    And then you say, "Okay.  Thanks.  I need you now more
09:37  14   than ever.  Please have me as a priority and make sure you
09:37  15   receive the list.  Need big help.  You have not had time for
09:37  16   me.  Let me know when if you can.  Thanks.  G."
09:37  17            Why were you asking him to make you a priority?
09:37  18   A    Because I felt like I was being put on the back burner
09:37  19   from the collection of Brock to the completion and formation
09:37  20   of the businesses and any other matter that he was working
09:38  21   on.  He was very busy.
09:38  22   Q    Then did you wind up talking to defendant after these
09:38  23   e-mails?
09:38  24   A    Yes.
09:38  25   Q    If I could have you look at Exhibit 176, page 23, lines
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:38  1    211 and 210.

09:38  2    A    Okay.

09:38  3    Q    Were those text messages you sent to defendant and he

09:38  4    sent back to you after the phone call you had after this

09:38  5    August 22nd?

09:38  6    A    Yes.

09:38  7    Q    Line 211, on August 24th you texted -- maybe 23rd, you

09:39  8    texted defendant, "Thanks for the time today.  Hope you know

09:39  9    I really care about what you have done and are doing."

09:39  10           When you said "what you have done," were you

09:39  11   referring to the $1.6 million he took from your settlement

09:39  12   account?

09:39  13   A    Of course not.

09:39  14   Q    What were you referring to?

09:39  15   A    The work I thought he was doing, the filings and, you

09:39  16   know, pursuing Brock still.

09:39  17   Q    And what did defendant say in reply to you?

09:39  18   A    He said, "All good, brother."

09:39  19   Q    In September -- would you look at Exhibit 230.

09:40  20   A    (Witness complies.)  Okay.

09:40  21   Q    Is this an e-mail chain between you and Judy Regnier in

09:40  22   September of 2018?

09:40  23   A    It is.

09:40  24   Q    And the first couple of e-mails -- when I say the first

09:40  25   couple, it's later on the page, but in time, the first

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:40  1   couple e-mails, was defendant also in those e-mails?

09:40  2   A    In the beginning.

09:40  3        MR. SAGEL:  At this time, Your Honor, the

09:41  4   government moves to admit Exhibit 230 and the e-mails from

09:41  5   Judy Regnier as an agency admission.

09:41  6        MR. AVENATTI:  Objection, Your Honor.  Hearsay.

09:41  7        THE COURT:  The e-mail from Ms. Regnier is

09:41  8   dated --

09:41  9        MR. SAGEL:  September 10th.

09:41  10        THE COURT:  What is the one from Ms. Regnier?

09:41  11        MR. SAGEL:  Well, there are two.  The bottom of

09:41  12   the first page that goes onto the top of the second page is

09:41  13   an e-mail from Ms. Regnier on September 10th, and then two

09:42  14   above that she sent another one at 2:16 p.m.  And the three

09:42  15   that overlap that are from Mr. Barela.

09:42  16        THE COURT:  The e-mails sent by Ms. Regnier will

09:42  17   be received for the truth and the others just for notice.

09:42  18        (Exhibit 230 received in evidence)

09:42  19   BY MR. SAGEL:

09:42  20   Q    If we could look at page 2, you sent an e-mail to the

09:42  21   defendant on September 10th.  Do you see that?

09:42  22   A    I do.

09:42  23   Q    And Ms. Regnier is cc'd on that e-mail?

09:42  24   A    She is.

09:42  25   Q    What was the subject?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:42  1   A    Wire.

09:42  2   Q    And you say, "Hi, Michael.  I really need the help on

09:42  3   this wire as discussed.  Please let me know when it happens

09:42  4   today."

09:42  5          Did you have a discussion at this time about

09:42  6   getting a wire from the defendant?

09:42  7   A    Yes.

09:42  8   Q    And what did he tell you he would provide you with?

09:42  9   A    I told him I needed 14,000, and he said he would give

09:43  10  me 14,000.

09:43  11  Q    And what does defendant refer to the $14,000 as?

09:43  12  A    An advance.

09:43  13  Q    An advance on what?

09:43  14  A    The $1.6 million that we hadn't collected from Brock.

09:43  15          MR. SAGEL:  And I'll have the agent put on the

09:43  16  screen Exhibit 235, page 4.

09:43  17  BY MR. SAGEL:

09:43  18  Q    Actually, do you have Exhibit 230 still in front of

09:43  19  you?

09:43  20  A    230?  I do now.

09:43  21  Q    After you received the wire, at the very top of that

09:43  22  you sent an e-mail back to Judy Regnier.  Do you see that?

09:43  23  A    I do.

09:43  24  Q    You said, "You're the best.  Was it 14K?" question

09:44  25  mark.

09:44    1    A    Yes.

09:44    2    Q    Why did you ask if it was 14K?

09:44    3    A    Because in the past the amount always seemed to go

09:44    4    down.

09:44    5    Q    And what do you mean by go down?

09:44    6    A    That it was less than what we discussed each time.

09:44    7    Q    And now if we can look at 235, page 4.  On

09:44    8    September 11th, 2018, did you receive a wire?

09:44    9    A    I did.

09:44    10   Q    And how much did you receive that wire for?

09:44    11   A    6,000.

09:44    12   Q    And was that less than what defendant told you he was

09:44    13   going to send you?

09:44    14   A    Yes.

09:45    15   Q    If you could look at Exhibit 176, page 20, starting at

09:45    16   line 165 and 164.

09:45    17   A    I'm there.

09:45    18   Q    Did you send a text message to defendant on

09:45    19   September 17th, and he replied right back?

09:45    20   A    Yes.

09:45    21   Q    Your text message to defendant is, "FYI, I have my

09:45    22   sentencing hearing in San Diego tomorrow.  I think it's all

09:45    23   going to be fine, but I give my wife your number if it

09:45    24   doesn't work out.  Thanks again.  Talk soon.  G."

09:45    25        Did defendant reply to you?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:45  1    A    Yes.

09:45  2    Q    What did he say to you?

09:46  3    A    He said, "I'm sure you will be okay.  Don't stress."

09:46  4    Q    And then two up from that on 9/19 you sent defendant a

09:46  5    text message, and he relied on 9/19.  Do you see that?

09:46  6    A    Yes.

09:46  7    Q    You wrote defendant on line 162, "I am just getting

09:46  8    home from SD.  It was okay, but I need to talk about a few

09:46  9    things.  Can we talk tomorrow?  Thanks.  G."

09:46  10          I'm assuming each time it says G, that's referring

09:46  11    to Greg?

09:46  12    A    Correct.

09:46  13    Q    And what did defendant say to you in reply?

09:46  14    A    "Sure."

09:46  15    Q    Then if you just look at the next few texts, that's

09:46  16    setting up a time to talk?

09:46  17    A    Yes.

09:46  18    Q    What was it that you wanted to talk to defendant about

09:47  19    in September of 2018?

09:47  20    A    The collection of Brock.

09:47  21    Q    Was this something that was constantly on your mind?

09:47  22    A    Of course.

09:47  23    Q    And why is that?

09:47  24    A    Because I needed the money.

09:47  25    Q    And why did you need the money?

40

```
09:47   1   A    To pay my bills and to get caught up on loans and pay
09:47   2   off credit cards.
09:47   3   Q    Did you explain to defendant the financial struggles
09:47   4   you were facing at that time?
09:47   5   A    Yes.
09:47   6   Q    I'm going to fast-forward to October.  If you could
09:47   7   look at Exhibit 231.
09:48   8   A    (Witness complies.)  Okay.
09:48   9   Q    Is this an e-mail you sent to defendant on
09:48   10  October 10th, 2018?
09:48   11  A    It is.
09:48   12  Q    Is it a true and accurate copy of the e-mail you sent
09:48   13  to defendant on October 10th, 2018?
09:48   14  A    It is.
09:48   15           MR. SAGEL:  At this time, Your Honor, the
09:48   16  government moves to admit Exhibit 231 for notice to the
09:48   17  defendant.
09:48   18           MR. AVENATTI:  Objection.  Hearsay.
09:48   19           THE COURT:  Overruled.  231 will be received for
09:48   20  notice.
09:48   21           (Exhibit 231 received in evidence)
09:48   22  BY MR. SAGEL:
09:48   23  Q    What's the subject line of the e-mail you sent to
09:48   24  defendant?
09:48   25  A    "Need some help."
```

09:48  1   Q    And then you write, "Michael, I was hoping to have an
09:48  2   update on Brock and get our money.  Do you have an update?
09:48  3   But I know things take longer than we want sometimes.  I
09:48  4   need around 8K to get current and keep moving.  Can you help
09:48  5   with this until we have an update?  Thanks, and hope you can
09:49  6   help."
09:49  7            What did you mean when you said, "I was hoping to
09:49  8   have an update on Brock and get our money?"
09:49  9   A    I was wondering what we were doing and how we were
09:49  10  trying to collect the $1.6 million.
09:49  11  Q    When you said, "I know things take longer than we want
09:49  12  sometimes," what did you think would take longer than we
09:49  13  wanted?
09:49  14  A    To collect from Brock the 1.6 million.
09:49  15  Q    At this time when you were talking about the time it
09:49  16  takes, did defendant ever respond to you and say:  We're not
09:49  17  waiting on anything.  That money came in nine months
09:49  18  earlier?
09:49  19  A    No.
09:49  20  Q    Would you have wanted to know that?
09:49  21  A    Of course.
09:49  22  Q    In and around October -- I will leave it as
09:50  23  October 2018 -- did you ever specifically ask or accuse
09:50  24  defendant of whether or not the Brock money did come in?
09:50  25  A    One time I kind of accused him, yes.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

42

09:50    1    Q    What happened when you, as you've described, kind of

09:50    2    accused him?

09:50    3    A    I was cautious because if he had taken the money, I was

09:50    4    hoping I could get it, and he was upset that I would ask

09:50    5    such a thing.

09:50    6    Q    What do you mean by he was upset?

09:50    7    A    Told me that, of course not, he didn't get the money.

09:50    8    Q    How would you describe his tone when he was talking to

09:50    9    you?

09:50   10    A    Angry.

09:50   11    Q    If I could have you look at Exhibit 232.

09:50   12    A    I'm there.

09:50   13    Q    Is 232 an e-mail that you sent to defendant?

09:51   14    A    Yes.

09:51   15    Q    Is it a true and accurate copy of an e-mail that you

09:51   16    sent to defendant?

09:51   17    A    Yes.

09:51   18         MR. SAGEL:  At this time, Your Honor, the

09:51   19    government moves to admit Exhibit 232 for notice to the

09:51   20    defendant.

09:51   21         MR. AVENATTI:  Objection.  Hearsay.

09:51   22         THE COURT:  Overruled.  232 will be received for

09:51   23    notice only.

09:51   24              (Exhibit 232 received in evidence)

        25

09:51   1   BY MR. SAGEL:

09:51   2   Q    What is the subject of this e-mail?

09:51   3   A    "Action list."

09:51   4   Q    What's the date?

09:51   5   A    October 14th, 2018.

09:51   6   Q    And it starts with, "Hi, Michael.  Here is a list of

09:51   7   items to discuss."  Why were you sending defendant an e-mail

09:51   8   with a list of items to discuss?

09:51   9   A    These are the things that I needed completed.

09:52   10   Q    Did you ever have any discussions with him about you

09:52   11   putting together a list for him for your meetings?

09:52   12   A    Of course.

09:52   13   Q    Were these lists your idea or his ideas?

09:52   14   A    I would primarily put them together because I was

09:52   15   trying to give him a quicker way to reference things so he

09:52   16   could respond quicker.

09:52   17   Q    And then you have a section called "Personal"?

09:52   18   A    Yes.

09:52   19   Q    Number one under "Personal" says, "I am in need of 8K

09:52   20   ASAP.  If this could happen Monday, it would give me a

09:52   21   little more time.  I need a total of 27K between now and

09:52   22   January 1 to keep things moving, less the 8K.  I am working

09:52   23   on a few other things, but the 8K is needed now.  I am

09:52   24   funding this thing on my own because I thought we would have

09:52   25   Brock in hand by now.  Once again, a lesson for me.  Don't

09:53  1   count your chickens."

09:53  2          Why are you telling defendant about how you

09:53  3   need -- let me ask a question first.  When you have K after

09:53  4   the numbers, does that mean thousand?

09:53  5   A    It does.

09:53  6   Q    Why are you telling the defendant you need 8,000

09:53  7   immediately and a total of 27,000 by the end of the year?

09:53  8   A    That was to make my personal bills and minimum credit

09:53  9   card payments on the money that I borrowed.

09:53  10  Q    Did defendant ever ask you to provide him with numbers

09:53  11  like this?

09:53  12  A    Yes.

09:53  13  Q    So why were you providing him these numbers?

09:53  14  A    Because that's what I needed to survive.

09:53  15  Q    Did he ever ask you to itemize those numbers for him as

09:53  16  the numbers you needed to survive?

09:53  17  A    No.

09:53  18          MR. AVENATTI:  Objection.  Leading.

09:53  19          THE COURT:  Overruled.

09:53  20          THE WITNESS:  No.

09:53  21  BY MR. SAGEL:

09:53  22  Q    You were just telling him so that he knew?

09:53  23  A    Yes.

09:53  24  Q    When you said, "I'm funding this thing on my own

09:54  25  because I thought we would have Brock in hand by now," what

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:54  1    are you referring to there?

09:54  2    A    I'm referring to the $1.6 million.

09:54  3    Q    Number two in your personal list says, "Brock, did they

09:54  4    respond?  If not, what is our next action?  It will be one

09:54  5    year in December, and they will owe the second payment in

09:54  6    March.  Are we still dealing with Judge Boyd Boland and

09:54  7    David Scheck?  Can we discuss a go-forward strategy til this

09:54  8    is handled?"

09:54  9          Let me ask it part by part.  What are you

09:54  10   referring to when you say, "Did Brock respond?"

09:54  11   A    They had told me that we had filed -- I should say

09:54  12   Mr. Avenatti had told me that they had filed paperwork in

09:54  13   court, and I was waiting for a response.

09:54  14   Q    Who did he say had filed paperwork in court?

09:54  15   A    Ahmed -- Mr. Ibrahim.

09:55  16   Q    And who is Ahmed Ibrahim?

09:55  17   A    He's one of the lawyers that works for Mr. Avenatti.

09:55  18   Q    And when you said, "If not, what is our next action?"

09:55  19   what were you referring to there?

09:55  20   A    What we were going to do, how we were going to pursue

09:55  21   it.

09:55  22   Q    When you say, "It will be one year in December and they

09:55  23   will owe the second payment in March," what do you mean when

09:55  24   you say the second payment in March?

09:55  25   A    I was referring to the March 10th, first

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:55   1   hundred-thousand-dollar payment.

09:55   2   Q    Why did you think that they would owe their second

09:55   3   payment in March, March 10th?

09:55   4   A    Because that was what was on my settlement agreement

09:55   5   that I received from Mr. Avenatti.

09:55   6   Q    In response to this e-mail or anytime did defendant

09:55   7   ever tell you that the dates aren't in March; they're in

09:56   8   January?

09:56   9   A    Never.

09:56  10   Q    You then say, "Are we still dealing with Judge Boyd

09:56  11   Boland and David Scheck?"  Who are those individuals?

09:56  12   A    Judge Boyd was the negotiator for the arbitrations, and

09:56  13   David Scheck was the lead attorney for Brock, Brock USA.

09:56  14   Q    And you say, "Can we discuss a go-forward strategy til

09:56  15   this is handled?"  What is "til this is handled?"

09:56  16   A    Until the collection of the $1.6 million.

09:56  17   Q    And then number three says, "can you send me a copy of

09:56  18   the last thing that we filed?"  What did you mean by that?

09:56  19   A    Well, I suspected at this point that nothing had been

09:56  20   done, and I was wanting a copy of whatever Ahmed had filed,

09:57  21   Mr. Ibrahim.

09:57  22   Q    And who had told you something had been filed?

09:57  23   A    Mr. Avenatti.

09:57  24   Q    In response to this request or any request, did

09:57  25   defendant ever provide you with a copy of something that had

47

09:57   1   been filed?

09:57   2   A    He did not.

09:57   3   Q    And I will ask you now and I'll allow the e-mail to be

09:57   4   looked at.  There are other sections and other information

09:57   5   on the e-mails including on this one.  Do you see that?

09:57   6   A    I do.

09:57   7   Q    There is a section about Quix and there's a section

09:57   8   about upcoming meetings.  Do you see those?

09:57   9   A    I do.

09:57  10   Q    Do those relate to your ongoing business?

09:57  11   A    They do.

09:57  12   Q    And why are you providing this information to the

09:57  13   defendant?

09:57  14   A    Because he was supposed to be a partner working on the

09:57  15   company.

09:57  16   Q    If I could have you look at Exhibit 233.  Do you have

09:58  17   Exhibit 233 in front of you?

09:58  18   A    I do.

09:58  19   Q    Is this an e-mail that you sent to defendant

09:58  20   approximately eight days later than the e-mail we just

09:58  21   talked about?

09:58  22   A    It is.

09:58  23   Q    Is it a true and accurate copy of the e-mail you sent

09:58  24   to defendant approximately eight days later?

09:58  25   A    It is.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:58    1           MR. SAGEL:  At this time, Your Honor, the

09:58    2    government moves to admit Exhibit 233 for notice to the

09:58    3    defendant.

09:58    4           MR. AVENATTI:  Objection, Your Honor.  Hearsay.

09:58    5           THE COURT:  The objection is overruled.  233 will

09:58    6    be received for notice.

09:58    7           (Exhibit 233 received in evidence)

09:58    8    BY MR. SAGEL:

09:58    9    Q    And this e-mail that you wrote to the defendant is on

09:58   10    October 22nd, 2018?

09:58   11    A    Yes.

09:58   12    Q    And the subject line is "List?"

09:58   13    A    Yes.

09:58   14    Q    Can you read the first sentence of your e-mail to the

09:59   15    defendant after it says "Michael."

09:59   16    A    Yes.  It says, "I was waiting for your call, and I know

09:59   17    you get busy."

09:59   18    Q    And the second sentence?

09:59   19    A    Okay.  "I send updates like this so you don't have to

09:59   20    dig up your old e-mail."

09:59   21    Q    And then one more sentence.

09:59   22    A    "I know you are under pressure, so let's discuss what

09:59   23    you can or can't do?" question mark.

09:59   24    Q    And then jumping down to the next paragraph that says,

09:59   25    "I just."

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:59  1  A    "I just, so you know, I'm in real financial trouble.  I
09:59  2  am working on trying to get another loan.  I'm trying to use
09:59  3  the Brock agreement to secure it.  I need to know that we
09:59  4  really have the ability to collect and the timing to the
09:59  5  best of your opinion."
09:59  6  Q    And why are you -- what are you referring to when
10:00  7  you're saying you're trying to get another loan?
10:00  8  A    I was trying to get a hard money loan on the signature
10:00  9  for the future collection of the 1.6 million.
10:00  10  Q    Did you discuss that with the defendant?
10:00  11  A    I did.
10:00  12  Q    What did defendant tell you about your idea of using
10:00  13  the settlement agreement to get a hard money loan?
10:00  14           MR. AVENATTI:  Asked and answered, Your Honor.
10:00  15           THE COURT:  Overruled.
10:00  16           THE WITNESS:  As I stated before, he said that
10:00  17  it's confidential, the settlement agreement, and I can't
10:00  18  share the agreement with the hard money lenders because it
10:00  19  could cost us $100,000.
10:00  20  BY MR. SAGEL:
10:00  21  Q    When you said, "I need to know that we really have the
10:00  22  ability to collect and the timing to the best of your
10:00  23  opinion," what are you referring to there?
10:00  24  A    I was worried that we didn't have the ability to
10:00  25  collect because it's been taking so long; and if we were

50

10:00  1    going to have the ability to collect, what the timing would

10:01  2    be so I could make a deal for the loan, so I understood when

10:01  3    I could pay them back.

10:01  4    Q    In response to this "I need to know that we really have

10:01  5    the ability to collect and the timing," did defendant say to

10:01  6    you:  We have no ability to collect because they already

10:01  7    paid?

10:01  8    A    Never.

10:01  9    Q    Did he say:  The timing to the best of my opinion is it

10:01  10   happened in January of 2018?

10:01  11   A    No.

10:01  12   Q    Then you have a section that says "Personal."  You say,

10:01  13   "I am in need of 8K as discussed ASAP.  I need a total of

10:01  14   27K."  Is this the same information that you had provided

10:01  15   him about eight days earlier?

10:01  16   A    It is.

10:01  17   Q    And then number two, "Brock, did they respond?  If not,

10:01  18   what is our next action?  Are we still dealing with Judge

10:02  19   Boyd Boland and David Scheck?"

10:02  20            Is that basically the same thing you had provided

10:02  21   a week before?

10:02  22   A    Correct.

10:02  23   Q    Number three, "I need copies of all the paperwork or

10:02  24   whatever we have done on Brock on any filing.  Can you have

10:02  25   Judy e-mail me, or I can come by and pick them up this week.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
10:02   1   I need them if I am going to get a loan."
10:02   2          Is this also what you had been asking for for the
10:02   3   prior week?
10:02   4   A    Yes.
10:02   5   Q    Had defendant provided you with the information you
10:02   6   were looking for at this time?
10:02   7   A    No.
10:02   8   Q    After defendant told you that a hard money loan was a
10:02   9   bad idea and you could be in breach of your confidential
10:02  10   agreement, did defendant provide you with any options?
10:02  11   A    Yes.  He suggested that he could find me the money.
10:03  12   Q    And how was he going to find you the money?
10:03  13   A    I don't -- he said that he had some other ideas and he
10:03  14   could get me a loan.
10:03  15   Q    And why would you need to get a loan?  Why was the
10:03  16   defendant telling you you would need to get a loan?
10:03  17   A    To carry me over until we collected the $1.6 million.
10:03  18   Q    If you could look at Exhibit 176, page 14, and start on
10:03  19   line 58.
10:04  20   A    (Witness complies.)  Okay.
10:04  21   Q    Is that a text message you sent to defendant on
10:04  22   October 28th, 2018?
10:04  23   A    Yes.
10:04  24   Q    And you say -- well, let me start with this.  When it
10:04  25   says "S***," does that stand for shit?
```

10:04  1   A    It does stand for shit.

10:04  2   Q    Last question.  "I'm in deep shit.  As far as the cash

10:04  3   is concerned, I need 8K by Tuesday or I am in deep shit.

10:04  4   Any luck on helping get that loan for the bigger money

10:04  5   and/or helping with the smaller loan?"

10:04  6         And then you send another text saying, "I know the

10:04  7   other loan is not a good deal, but I am desperately needing

10:04  8   it.  Can you please forward what we filled on Brock in the

10:04  9   morning.  I need it to secure the loan.  Thanks."

10:04  10        What are you referring to when you are saying that

10:04  11  you are in deep shit?

10:05  12  A    That I was basically going to get kicked out of my own

10:05  13  house.  I didn't have money to pay my bills, and we wasn't

10:05  14  even paying credit cards at this point.  This was just

10:05  15  survival.

10:05  16  Q    And when you were asking for the paperwork to obtain

10:05  17  the loan and saying that you know it's not a good deal, who

10:05  18  told you that the loan was not a good deal?

10:05  19  A    Mr. Avenatti.

10:05  20  Q    Even though he told you it wasn't a good deal, why were

10:05  21  you still thinking about it?

10:05  22  A    I had no other option.

10:05  23  Q    You go up to the next text exchange between you and the

10:05  24  defendant about finding a time to talk; is that fair?

10:05  25  A    Yes.

| | | |
|---|---|---|
| 10:05 | 1 | Q   And then going up to line 51, on October 30th defendant |
| 10:06 | 2 | sent you a text message.  Do you see that? |
| 10:06 | 3 | A   I do. |
| 10:06 | 4 | Q   What does defendant say to you on line 51 on |
| 10:06 | 5 | October 30th? |
| 10:06 | 6 | A   He said, "Let's chat in the AM.  Working on a |
| 10:06 | 7 | solution." |
| 10:06 | 8 | Q   What did you understand the solution he was working on |
| 10:06 | 9 | to be? |
| 10:06 | 10 | A   Getting me a loan. |
| 10:06 | 11 | Q   And then you replied after that, "I need it by |
| 10:06 | 12 | Wednesday at the latest or my life goes upside down.  I need |
| 10:06 | 13 | this Brock thing done.  Please, please, please help me |
| 10:06 | 14 | button this thing up.  G." |
| 10:06 | 15 | When you say you need it by Wednesday at the |
| 10:06 | 16 | latest or my life goes upside down, what you did you mean by |
| 10:06 | 17 | that? |
| 10:06 | 18 | A   I would be evicted from my home. |
| 10:06 | 19 | Q   When you said, "I need this Brock thing done.  Please, |
| 10:07 | 20 | please, please help me button this thing up," what are you |
| 10:07 | 21 | referring to? |
| 10:07 | 22 | MR. AVENATTI:  Objection, Your Honor, 403. |
| 10:07 | 23 | THE COURT:  Overruled. |
| 10:07 | 24 | THE WITNESS:  The collection of the $1.6 million. |
| 10:07 | 25 | BY MR. SAGEL: |

| | | |
|---|---|---|
| 10:07 | 1 | Q    And then one line above that, after defendant told you |
| 10:07 | 2 | he was working on a solution, and you sent a text saying, |
| 10:07 | 3 | "Checking in.  Any word?  Thanks.  G." |
| 10:07 | 4 | A    Yes. |
| 10:07 | 5 | Q    And then defendant sent you two texts in a row on lines |
| 10:07 | 6 | 47 and 48 -- actually 48 and then 47.  Do you see that? |
| 10:07 | 7 | A    Yes. |
| 10:07 | 8 | Q    What does defendant say to you after you said, |
| 10:07 | 9 | "Checking in"? |
| 10:08 | 10 | A    He said "Yes.  Update at three." |
| 10:08 | 11 | Q    And then what did he say next? |
| 10:08 | 12 | A    "Making progress." |
| 10:08 | 13 | Q    And what did you think his progress and the update was |
| 10:08 | 14 | about? |
| 10:08 | 15 | A    About getting me a loan. |
| 10:08 | 16 | Q    If I could have you look at page 13, on November 1st, |
| 10:08 | 17 | on line 39. |
| 10:08 | 18 | A    Yes. |
| 10:08 | 19 | Q    Actually, let me start on line 40.  On line 40 on |
| 10:08 | 20 | November 1st, you sent a text to defendant saying, "Thanks |
| 10:09 | 21 | for the time today.  Look forward to talking tomorrow." |
| 10:09 | 22 | When you said, "Thanks for the time today," what |
| 10:09 | 23 | are you referring to? |
| 10:09 | 24 | A    Me speaking with Mr. Avenatti. |
| 10:09 | 25 | Q    Then the next text on line 39 you say, "Hi, Mike.  Here |

10:09   1    is the account for the 8K.  Thank again.  G."  Why are you
10:09   2    sending him a text with an account information for $8,000?
10:09   3    A    Because he said he would help me with a smaller loan
10:09   4    until we got the bigger one.
10:09   5    Q    And what did he tell you the 8,000 was?  How did he
10:09   6    describe it?
10:09   7    A    An advance on the 1.6 million.
10:09   8    Q    And then in the next text you say, "Do you think I can
10:09   9    get the 8K?  Thanks, and good luck."  Then on line 37 what
10:09   10   did defendant say?
10:09   11   A    "Working on it.  Call you shortly."
10:10   12   Q    Then if you go up to line 34 on November 2nd.
10:10   13   A    Yes.
10:10   14   Q    There is a text that you send to defendant that starts
10:10   15   with "my wife."  Do you see that?
10:10   16   A    I do.
10:10   17   Q    Can you read that text message you sent to defendant.
10:10   18   A    Yeah.  It says, "My wife and I have til Friday for the
10:10   19   three-day pay or quit.  If this is not going to happen,
10:10   20   please let me know so we can prepare.  Thanks, Michael.  G."
10:10   21   Q    And what did you mean when you said your wife and you
10:10   22   had til Friday for the three-day pay or quit?
10:10   23   A    That's when we were going to get our notice from the
10:10   24   landlord of where we lived, and we needed that money to pay
10:10   25   the rent.  If we weren't going to pay it, I was running out

56

| | | |
|---|---|---|
| 10:10 | 1 | of options because I had pretty much borrowed from every |
| 10:10 | 2 | friend and family that I have, so I didn't have anywhere to |
| 10:11 | 3 | go for money. |
| 10:11 | 4 | Q    And you were asking for 8,000 in these text messages; |
| 10:11 | 5 | is that correct? |
| 10:11 | 6 | A    That's correct. |
| 10:11 | 7 | Q    Did defendant tell you how much he would pay you or how |
| 10:11 | 8 | much he would give you as an advance? |
| 10:11 | 9 | A    8,000. |
| 10:11 | 10 | Q    If I could have you look at Exhibit 235, page 5.  On |
| 10:11 | 11 | November 5th of 2018, did defendant provide you a cashier's |
| 10:11 | 12 | check? |
| 10:11 | 13 | A    He did. |
| 10:11 | 14 | Q    How much did the defendant provide you a cashier's |
| 10:11 | 15 | check for? |
| 10:11 | 16 | A    $4,000. |
| 10:11 | 17 | Q    In November of 2018 did you continue to discuss your |
| 10:11 | 18 | financial problems with the defendant? |
| 10:11 | 19 | A    Of course. |
| 10:12 | 20 | Q    Did he ever suggest to you of an option he had of |
| 10:12 | 21 | giving you a $100,000 loan? |
| 10:12 | 22 | A    He did. |
| 10:12 | 23 | Q    What in November of 2018 did the defendant tell you |
| 10:12 | 24 | about a $100,000 loan? |
| 10:12 | 25 | A    He said that he could get me $100,000 at a ten percent |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:12  1    interest rate.

10:12  2    Q    When did he tell you you would be able to get the

10:12  3    hundred thousand dollars at the interest rate from him?

10:12  4    A    In January.

10:12  5    Q    In November of 2018 when he told you he could get you

10:12  6    this $100,000 loan in January 2019, did he tell you that

10:12  7    Brock's second payment would be due in January of 2019?

10:12  8    A    He did not.

10:12  9    Q    Did you know what the source of that $100,000 he was

10:12  10   offering to loan you was?

10:12  11          MR. AVENATTI:  Calls for speculation, Your Honor.

10:12  12          THE COURT:  Overruled.

10:13  13          THE WITNESS:  I did not.

10:13  14   BY MR. SAGEL:

10:13  15   Q    Would you have wanted to know that Brock was scheduled

10:13  16   to make their second payment in January of 2019?

10:13  17   A    Of course.

10:13  18   Q    If I could have you look at page 11 of Exhibit 176,

10:13  19   line 13 and line 12.  You sent two text messages in a row to

10:13  20   defendant, one on November 8th and then one on

10:13  21   November 12th.  Do you see those?

10:13  22   A    I do.

10:14  23   Q    I'm going to start with the November 8th text you sent

10:14  24   to defendant.  "Hi, Michael.  I'm traveling to Chicago from

10:14  25   tomorrow til Tuesday working on our project."  What do you

10:14   1   mean by "our project?"

10:14   2   A    Quix Supply.

10:14   3   Q    "Can we talk Saturday or Sunday, please before Monday?

10:14   4   I have a few questions.  I need to make some decisions."

10:14   5         What are you referring to by needing to make some

10:14   6   decisions?

10:14   7   A    I believed at this point in time that he had received

10:14   8   the money, and I was going to retain new counsel to try and

10:14   9   figure out what was going on.

10:14   10  Q    And then you sent him another text on November 12th.

10:14   11  "Good morning, Michael.  I'm still in Chicago til tomorrow,

10:14   12  but I would like to speak with you at some point today.  Do

10:14   13  you have some time this afternoon?  Thanks.  G."

10:14   14        Had defendant responded to you in those four days?

10:14   15  A    No.

10:15   16  Q    If you could look at Exhibit 236, please.

10:15   17  A    (Witness complies.)  Okay.

10:15   18  Q    Is 236 an e-mail that you sent to defendant?

10:15   19  A    It is.

10:15   20  Q    Is it an e-mail that you put together at defendant's

10:15   21  direction?

10:15   22  A    Yes.

10:15   23  Q    Is it a true and accurate copy of the e-mail you put

10:15   24  together at defendant's direction?

10:15   25  A    It is.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:15   1           MR. SAGEL:  The government moves to admit

10:15   2   Exhibit 236, Your Honor.

10:15   3           MR. AVENATTI:  Objection, Your Honor.  Hearsay.

10:15   4           THE COURT:  Overruled.  Exhibit 236 will be

10:16   5   received for notice only.

10:16   6           (Exhibit 236 received in evidence)

10:16   7   BY MR. SAGEL:

10:16   8   Q    What's the date you sent this e-mail to the defendant?

10:16   9   A    November 14th, 2018.

10:16   10  Q    What's the subject line?

10:16   11  A    "Brock and Barela."

10:16   12  Q    After you say, "Hi, Michael," you say, "As discussed

10:16   13  with Brock not paying, here is the minimum payment for us to

10:16   14  survive.  I need gas and am really worried.  I have never

10:16   15  been in such a bad spot."

10:16   16           What did you mean when you said "the minimum

10:16   17  payment for us to survive?"

10:16   18  A    This was to continue paying my personal bills and

10:16   19  minimum credit card payments for the business.

10:16   20  Q    When you said, "I have never been in such a bad spot,"

10:16   21  what did you mean?

10:16   22  A    I have never put myself in such a position to where I

10:17   23  couldn't pay my bills like this.

10:17   24  Q    Then you have a list of the monies you need.  You say,

10:17   25  "Last week we needed 8K.  You sent 4K."

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
10:17   1               Why did you write that?
10:17   2    A    Because he had sent half the money that we thought we
10:17   3    were going to receive, which barely covered our rent.
10:17   4    Q    And then you list out five additional payments that you
10:17   5    need between November 16th and the end of the year; is that
10:17   6    correct?
10:17   7    A    That's correct.
10:17   8    Q    Why are you providing those dollar amounts and dates?
10:17   9    A    Because that's how he always asked me to do it, was to
10:17   10   tell him when I needed it by.
10:17   11   Q    And in your request you say $4,000 and then various
10:17   12   $5,000 payments.  Why didn't you ask for your portion of the
10:17   13   settlement money?
10:17   14   A    Because he said we have not received it.
10:18   15   Q    This e-mail is on November 14th.  I'm going to have you
10:18   16   look at a text message you sent to defendant on
10:18   17   November 16th, page 11, line 3.
10:18   18   A    Yes.
10:18   19   Q    Do you see that?
10:18   20   A    Yes.
10:18   21   Q    You say, "Hate to bother you, but did you see the
10:18   22   e-mail I needed the cash?  I'm in deep S***.  Let me know.
10:19   23   Thanks.  Good luck."
10:19   24               What e-mail are you referring to there?
10:19   25   A    The November 14th, 2018, e-mail at 4:53 p.m.
```

| | | |
|---|---|---|
| 10:19 | 1 | Q    Was defendant at this time, these text messages and |
| 10:19 | 2 | your e-mails that you're sending him in November of 2018, |
| 10:19 | 3 | was he responsive to you? |
| 10:19 | 4 | A    No, he is not. |
| 10:19 | 5 | Q    Did you wind up hiring a different lawyer? |
| 10:19 | 6 | A    I did. |
| 10:19 | 7 | Q    If you could look at Exhibit 237. |
| 10:19 | 8 | A    (Witness complies.)  Okay. |
| 10:19 | 9 | Q    Do you recognize Exhibit 237? |
| 10:19 | 10 | A    I do. |
| 10:19 | 11 | Q    Is that your signature on Exhibit 237 at the bottom? |
| 10:19 | 12 | A    It is. |
| 10:19 | 13 | Q    And is this a true and accurate copy of a letter that |
| 10:20 | 14 | you sent to the defendant on November 17th, 2018? |
| 10:20 | 15 | A    It is. |
| 10:20 | 16 | MR. SAGEL:  At this time, Your Honor, the |
| 10:20 | 17 | government moves to admit Exhibit 237 for notice to the |
| 10:20 | 18 | defendant. |
| 10:20 | 19 | MR. AVENATTI:  Objection.  Hearsay. |
| 10:20 | 20 | THE COURT:  237 will be received for notice. |
| 10:20 | 21 | The objection is overruled. |
| 10:20 | 22 | (Exhibit 237 received in evidence) |
| 10:20 | 23 | BY MR. SAGEL: |
| 10:20 | 24 | Q    Let's start with the top.  It has Larson O'Brien LLP |
| 10:20 | 25 | and a different name at the top.  Are these the new lawyers |

10:20   1   or law firm you hired?

10:20   2   A     It is.

10:20   3   Q     And it's dated November 17th, 2018?

10:20   4   A     It is.

10:20   5   Q     And the re line, the subject line, "Confidential

10:20   6   Settlement Agreement, Barela versus Brock USA, LLC"; is that

10:20   7   correct?

10:20   8   A     That is correct.

10:21   9   Q     The body of the letter says, "Our firm has been engaged

10:21   10  by Gregory Barela in connection with his efforts to collect

10:21   11  the proceeds due him pursuant to the terms of a confidential

10:21   12  settlement agreement executed by Mr. Barela and Brock USA on

10:21   13  December 28, 2017.  Settlement agreement.

10:21   14        "We understand that Mr. Barela has been advised by

10:21   15  you that Brock USA did not make the initial $1.6 million

10:21   16  payment due under the terms of the settlement agreement.  We

10:21   17  request that you provide written confirmation of Brock USA's

10:21   18  failure to make such payment.

10:21   19        "We further ask that you promptly provide us with

10:21   20  a true and correct copy of the settlement agreement and any

10:21   21  fee agreement that you have with Mr. Barela.

10:21   22        "Finally, in the event Brock USA made the initial

10:22   23  $1.6 million payment provided for by the settlement

10:22   24  agreement, we ask that you provide an immediate accounting

10:22   25  concerning such funds."

| | | |
|--|--|--|
| 10:22 | 1 | At this time when you hired new lawyers, did you |
| 10:22 | 2 | know that Brock had paid the $1.6 million? |
| 10:22 | 3 | A    No. |
| 10:22 | 4 | Q    Had defendant ever provided you an accounting of the |
| 10:22 | 5 | costs and the expenses on the Brock matter? |
| 10:22 | 6 | A    Never. |
| 10:22 | 7 | Q    Do you know if defendant received this e-mail, this |
| 10:22 | 8 | letter e-mailed to him? |
| 10:22 | 9 | A    Yes, he did. |
| 10:22 | 10 | Q    Now, you mentioned you were not hearing back from |
| 10:22 | 11 | defendant in November to your various text messages and |
| 10:22 | 12 | e-mails.  After you sent this letter to defendant, did you |
| 10:22 | 13 | hear from him? |
| 10:22 | 14 | A    More than I ever heard from him ever. |
| 10:23 | 15 | Q    Would you look at Exhibit 238. |
| 10:23 | 16 | A    (Witness complies.)  Okay. |
| 10:23 | 17 | Q    Is 238 an e-mail you received from defendant after you |
| 10:23 | 18 | sent the letter from your new attorneys? |
| 10:23 | 19 | A    Yes. |
| 10:23 | 20 | Q    Is it a true and accurate copy of an e-mail defendant |
| 10:23 | 21 | sent you after you sent the letter from your new attorneys? |
| 10:23 | 22 | A    Yes. |
| 10:23 | 23 | MR. SAGEL:  The government moves to admit |
| 10:23 | 24 | Exhibit 238. |
| 10:23 | 25 | MR. AVENATTI:  Objection.  Hearsay, Your Honor. |

10:23  1          THE COURT:  What's the basis for the hearsay

10:23  2   objection?

10:23  3          MR. SAGEL:  Are you asking me, Your Honor?

10:23  4          THE COURT:  No.  I'm asking Mr. Avenatti.

10:23  5          MR. AVENATTI:  Foundation, Your Honor.

10:23  6          THE COURT:  Overruled.  238 will be received.

10:23  7          (Exhibit 238 received in evidence)

10:23  8   BY MR. SAGEL:

10:24  9   Q    What is the date that defendant sent you this e-mail?

10:24  10  A    November 17th, 2018.

10:24  11  Q    The time?

10:24  12  A    11:26 p.m.

10:24  13  Q    That's the same date that you sent the letter?

10:24  14  A    Yes.

10:24  15  Q    What did defendant e-mail you?

10:24  16  A    "Greg, I just tried to call your cell.  Please call me

10:24  17  when you receive this.  Thanks, Michael."

10:24  18  Q    And if you were to look at Exhibit 176, did defendant

10:24  19  text you after receiving this letter?

10:24  20  A    Yes.

10:24  21  Q    Lines 2 and 1.  In response to you sending the letter

10:24  22  to defendant from your new attorneys, did defendant send you

10:24  23  two text messages?

10:24  24  A    Yes.

10:24  25  Q    What did defendant text you?  Start with line 2 and

| | | |
|---|---|---|
| 10:24 | 1 | then go up to line 1. |
| 10:24 | 2 | A    At line 2, "PLS, please call me." |
| 10:25 | 3 | Q    And then what did he text you? |
| 10:25 | 4 | A    "What is this all about?  PLS, please call me ASAP." |
| 10:25 | 5 | Q    In addition to these e-mails, the e-mail and the text |
| 10:25 | 6 | messages I just went over, did defendant also leave you a |
| 10:25 | 7 | voice mail? |
| 10:25 | 8 | A    He did. |
| 10:25 | 9 | Q    Have you provided -- did defendant leave you this voice |
| 10:25 | 10 | mail also on November 17th, 2018? |
| 10:25 | 11 | A    Yes. |
| 10:25 | 12 | Q    And did you provide a copy of this voice mail to the |
| 10:25 | 13 | government? |
| 10:25 | 14 | A    I did. |
| 10:25 | 15 | Q    And is the voice mail that you provided to the |
| 10:25 | 16 | government a true and accurate recording of defendant's |
| 10:25 | 17 | voice mail that you left you on November 17th, 2018? |
| 10:25 | 18 | A    It is. |
| 10:25 | 19 | MR. SAGEL:  At this time, Your Honor, the |
| 10:25 | 20 | government moves to admit Exhibit 239, which is the voice |
| 10:25 | 21 | mail on November 17th, 2018, and would ask to play it. |
| 10:25 | 22 | MR. AVENATTI:  No objection. |
| 10:25 | 23 | THE COURT:  239 will be received. |
| 10:26 | 24 | (Exhibit 239 received in evidence) |
| 10:26 | 25 | (Audio recording played) |

| | | |
|---|---|---|
| 10:26 | 1 | BY MR. SAGEL: |
| 10:26 | 2 | Q    In response to the letter on November 17th, 2018, did |
| 10:26 | 3 | defendant provide you an accounting as requested? |
| 10:26 | 4 | A    Never. |
| 10:26 | 5 | Q    Did defendant provide you with any written information |
| 10:26 | 6 | about what happened with the $1.6 million? |
| 10:26 | 7 | A    Never. |
| 10:27 | 8 | Q    Would you have needed to obtain new attorneys to reach |
| 10:27 | 9 | out to defendant if you already had that information? |
| 10:27 | 10 | A    Of course not. |
| 10:27 | 11 | Q    Would you look at Exhibit 256, please. |
| 10:27 | 12 | A    (Witness complies.)  Okay. |
| 10:27 | 13 | Q    Is 256 another letter that you sent via e-mail or that |
| 10:27 | 14 | your lawyer sent via e-mail to the defendant? |
| 10:27 | 15 | A    Yes. |
| 10:27 | 16 | Q    And is it dated November 19th, 2018? |
| 10:28 | 17 | A    Yes, it is. |
| 10:28 | 18 | Q    And is that your signature on this document? |
| 10:28 | 19 | A    It is. |
| 10:28 | 20 | Q    Is it a true and correct letter that was sent to the |
| 10:28 | 21 | defendant via e-mail on November 19, 2018? |
| 10:28 | 22 | A    It is. |
| 10:28 | 23 |         MR. SAGEL:  The government moves to admit |
| 10:28 | 24 | Exhibit 256 for notice, Your Honor. |
| 10:28 | 25 |         MR. AVENATTI:  Objection, Your Honor.  Hearsay. |

```
10:28   1              THE COURT:  Overruled.  256 will be received for
10:28   2    notice.
10:28   3              (Exhibit 256 received in evidence)
10:28   4              THE COURT:  And we will take the mid-morning break
10:28   5    here, ladies and gentlemen.
10:28   6              Please remember the admonition not to discuss the
10:28   7    case with anyone and not to form any opinions on the issues
10:28   8    in the case until it is submitted to you.  And please do not
10:28   9    do any research.
10:28   10             So we will be in recess for 15 minutes.
10:28   11             (Jury not present)
10:29   12             THE COURT:  Sir, you may step down.
10:29   13                  (Recess taken at 10:29 a.m.;
10:29   14                  proceedings resumed at 10:46 a.m.)
10:46   15                  (Jury not present)
10:46   16             THE COURT:  Mr. Avenatti.
10:46   17             MR. AVENATTI:  Your Honor, I didn't realize the
10:46   18   witness was in the box.
10:46   19             THE COURT:  What?
10:46   20             MR. AVENATTI:  I didn't realize the witness was in
10:46   21   the box.
10:46   22             THE COURT:  Sir, would you step out, please.
10:46   23             (Witness exits courtroom)
10:46   24             MR. AVENATTI:  Your Honor, before I begin my
10:46   25   cross-examination -- because I anticipate Mr. Sagel
```

68

10:46  1  finishing before the next break --

10:46  2          THE COURT:  Right.

10:46  3          MR. AVENATTI:  -- I wanted to raise an issue.  I

10:46  4  think the government, Your Honor, has opened the door as it

10:46  5  relates to the details of the criminal conviction down in

10:46  6  San Diego and what Mr. Barela told me about that conviction

10:46  7  and his prior conviction.

10:47  8          Mr. Sagel asked about the plea agreement and he

10:47  9  asked about the sentencing.  He asked about the details

10:47  10 of --

10:47  11         THE COURT:  Sir, ask what questions you want in

10:47  12 the scope of the direct examination, and I'll rule question

10:47  13 by question.  It's clearly part of the record, and you're

10:47  14 entitled to cross on all subjects addressed during the

10:47  15 direct.

10:47  16         MR. AVENATTI:  Your Honor, I was just being

10:47  17 careful.  I just didn't want to run afoul, Your Honor.

10:47  18 That's all.

10:47  19         THE COURT:  Well, it's the usual rule.  You're

10:47  20 free to cross-examine within the scope of the direct.

10:47  21         MR. AVENATTI:  I didn't want you to think I was

10:47  22 trying to get around your order or showing any disrespect to

10:47  23 Your Honor.  That's all.  Thank you.

10:47  24         MR. SAGEL:  There is no reference to the 2006

10:47  25 conviction, Your Honor, or whatever year it was -- 2004.

10:47  1          THE COURT:  I have ruled that that's out, so we're
10:47  2  not going to get into that.
10:47  3          MR. AVENATTI:  Well, Your Honor, that was one of
10:47  4  the things he talked about in --
10:47  5          THE COURT:  Sir, you're not going to get into the
10:47  6  2006 conviction.  It's too old.  I've stated on the record
10:47  7  that I made a balance in the judgment that it was more
10:48  8  prejudicial than probative given the age, and we're not
10:48  9  going to revisit that.  I don't believe it's appropriate to
10:48  10  revisit any of my rulings unless you've got new material to
10:48  11  present to the Court that could have been presented at the
10:48  12  time we discussed the issue.
10:48  13          MR. AVENATTI:  And the new material, Your Honor,
10:48  14  was --
10:48  15          THE COURT:  Sir, I've ruled.  The direct
10:48  16  examination was presented with no new material with respect
10:48  17  to the 2006 conviction.
10:48  18          Let's bring the jury in, please.
10:48  19          (Jury present)
10:49  20          THE COURT:  Mr. Sagel.
10:49  21          MR. SAGEL:  Thank you, Your Honor.
10:49  22  BY MR. SAGEL:
10:49  23  Q    Mr. Barela, when we left off, I think we had just moved
10:49  24  into evidence Exhibit 256, which is what you sent via
10:49  25  e-mail, or your lawyers did, on November 19th, 2018.  Do you

```
10:49   1   see that?
10:49   2   A    I do.
10:49   3   Q    And in this -- I'm not going to go line by line -- you
10:49   4   were requesting that all your case files be transferred to
10:49   5   your new attorney and any balance of the funds from the
10:49   6   settlement be turned over to your new attorneys; is that
10:50   7   correct?
10:50   8   A    That is correct.
10:50   9   Q    At this time in response to this, in November of 2018
10:50  10   did defendant provide your records and your files to your
10:50  11   new attorneys?
10:50  12   A    He did not.
10:50  13   Q    Did he provide the balance of the funds from your
10:50  14   settlement agreement to your new attorneys?
10:50  15   A    He did not.
10:50  16   Q    After you obtained new counsel, did you ever learn from
10:51  17   the attorneys representing Brock -- let me ask it a
10:51  18   different way.  After you obtained new counsel, did you ever
10:51  19   receive a different settlement agreement from the attorneys
10:51  20   representing Brock?
10:51  21   A    Yes.
10:51  22   Q    What was different about the settlement agreement you
10:51  23   received from the attorneys for Brock from the settlement
10:51  24   agreement that the defendant had provided you?
10:51  25   A    The due dates for the payments were January 10th, 2018.
```

| | | |
|---|---|---|
| 10:51 | 1 | Q    And the three subsequent payments were due on what day? |
| 10:51 | 2 | A    January 10th. |
| 10:52 | 3 | Q    Did you authorize your new lawyers to send a follow-up |
| 10:52 | 4 | letter to defendant in December? |
| 10:52 | 5 | A    Yes. |
| 10:52 | 6 | Q    Would you look at Exhibit 257. |
| 10:52 | 7 | A    (Witness complies.)  Okay. |
| 10:52 | 8 | Q    Is 257 a letter -- the e-mail that you authorized your |
| 10:52 | 9 | lawyers to send to the defendant? |
| 10:52 | 10 | A    Yes. |
| 10:52 | 11 | Q    Is it a true and accurate copy of the letter sent via |
| 10:52 | 12 | e-mail on December 3rd, 2018? |
| 10:52 | 13 | A    Yes. |
| 10:52 | 14 |         MR. SAGEL:  The government moves to admit |
| 10:52 | 15 | Exhibit 257 for notice. |
| 10:52 | 16 |         MR. AVENATTI:  Objection, Your Honor.  Hearsay and |
| 10:52 | 17 | 403. |
| 10:52 | 18 |         THE COURT:  403 is overruled.  The hearsay |
| 10:52 | 19 | objection is overruled.  Is there any other objection? |
| 10:53 | 20 | What's the basis for the hearsay?  It's offered for notice. |
| 10:53 | 21 |         MR. AVENATTI:  Lack of foundation, Your Honor. |
| 10:53 | 22 |         THE COURT:  The witness has testified to the |
| 10:53 | 23 | authenticity of the document and stated he authorized it. |
| 10:53 | 24 |         Overruled. |
| 10:53 | 25 |         MR. AVENATTI:  Notice is not an issue. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:53  1          THE COURT:  Well, sir, that was the purpose for

10:53  2   which it was offered.

10:53  3          (Exhibit 257 received in evidence)

10:53  4   BY MR. SAGEL:

10:53  5   Q    The first paragraph -- at the top it says December 3rd;

10:53  6   is that correct?

10:53  7   A    Yes.

10:53  8   Q    And I believe -- on Exhibit 237, the November 17th

10:53  9   letter, the subject line is:  "Confidential Settlement

10:53  10  Agreement, Barela versus Brock USA."  On this one the

10:53  11  subject line is:  "Proceeds From Confidential Settlement

10:54  12  Agreement, Barela versus Brock USA, LLC."  Do you see that?

10:54  13  A    I do.

10:54  14  Q    By December 3rd, 2018, had you learned of the true

10:54  15  terms from the attorneys from Brock?

10:54  16  A    Yes, we had.

10:54  17  Q    And had you learned at this point that Brock had paid

10:54  18  the money?

10:54  19  A    Yes, we had.

10:54  20  Q    The first paragraph says:  "On November 17th, 2018, we

10:54  21  sent you a letter advising you of our firm's engagement by

10:54  22  your former client, Gregory Barela, in connection with his

10:54  23  efforts to collect the proceeds due him under the

10:54  24  confidential settlement agreement executed by Mr. Barela and

10:54  25  Brock USA LLC on December 28th, 2017.  Settlement agreement.

| 10:54 | 1 | "In our letter we asked you to" and then it lists |

10:54    1    "In our letter we asked you to" and then it lists

10:54    2    three things about the payment of the money, the settlement

10:55    3    agreement, and an accounting; is that correct?

10:55    4    A    That is correct.

10:55    5    Q    Those are the three things that were asked in the prior

10:55    6    letter?

10:55    7    A    Yes.

10:55    8    Q    And then in the letter you authorized sent to the

10:55    9    defendant, you said, "You have not responded to our letter.

10:55   10    You have likewise not responded to Mr. Barela's

10:55   11    November 17th, 2018, request for transfer of files and

10:55   12    client funds to our firm.  Your silence speaks volumes."

10:55   13         Had defendant responded to you at this point?

10:55   14    A    No.

10:55   15    Q    I'm going to turn your attention back to Exhibit 176.

10:55   16    Do you have 176 in front of you?

10:55   17    A    Yes.

10:55   18    Q    Actually all the way back to page 46, line 610, do you

10:56   19    see the text message you sent to defendant on or about

10:56   20    January 25th, 2018?  On here it's January 26th at 2:00 a.m.

10:56   21    UTC time.

10:56   22    A    On line 610, yes.

10:56   23    Q    The text message you sent to defendant in January of

10:56   24    2018, you said, "I don't want to talk to you about any of my

10:56   25    deals.  I want you to be part of the team, so let's talk

74

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
| 10:56 | 1  | about how that works moving forward.  I have another one,            |
| 10:56 | 2  | two few other things.  Thanks."                                      |
| 10:56 | 3  | In January of 2018 when you sent this text message                   |
| 10:56 | 4  | to him, you had already signed the settlement agreement in           |
| 10:56 | 5  | the Brock versus Barela matter; is that correct?                     |
| 10:57 | 6  | A    That's correct.                                                 |
| 10:57 | 7  | Q    Were you happy with your lawyer at that time, with the          |
| 10:57 | 8  | defendant?                                                           |
| 10:57 | 9  | A    Yeah.                                                           |
| 10:57 | 10 | Q    And when you say you don't want to talk to him about            |
| 10:57 | 11 | your deals, you want him to be part of the team, what were          |
| 10:57 | 12 | you referring to?                                                   |
| 10:57 | 13 | A    To the Quix Supply and his equity position.                    |
| 10:57 | 14 | Q    And at that time did he agree to be part of the team?          |
| 10:57 | 15 | A    Yes.                                                            |
| 10:57 | 16 | Q    What was the agreement you worked out with the                 |
| 10:57 | 17 | defendant for him to be part of the team?                           |
| 10:57 | 18 | A    He would handle our legal work, setup of the entity,           |
| 10:57 | 19 | put all the paperwork together, help us with any                    |
| 10:57 | 20 | negotiations because we were dealing with some very large           |
| 10:57 | 21 | corporations worldwide.  And he would get a ten percent             |
| 10:57 | 22 | equity for performing those services.                               |
| 10:57 | 23 | Q    At any point did he tell you in addition he would be           |
| 10:57 | 24 | able to take money from the Brock settlement for his work on        |
| 10:58 | 25 | the team?                                                            |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:58 | 1 | A    Of course not. |
| 10:58 | 2 | Q    If you could look at Exhibit 250. |
| 10:58 | 3 | A    (Witness complies.) |
| 10:58 | 4 | Q    Do you see Exhibit 250? |
| 10:58 | 5 | A    I'm here. |
| 10:58 | 6 | Q    Is Exhibit 250 an e-mail chain where the most recent |
| 10:58 | 7 | e-mail was sent by the defendant at the top of page 1? |
| 10:58 | 8 | A    Yes. |
| 10:58 | 9 | Q    Do you know who Matt Waterman is? |
| 10:58 | 10 | A    He is Quix's corporate attorney, my corporate attorney. |
| 10:58 | 11 | Q    And the three previous e-mails in Exhibit 250 were sent |
| 10:59 | 12 | by Mr. Waterman to the defendant; is that correct? |
| 10:59 | 13 | A    That's correct. |
| 10:59 | 14 | Q    And you were on each of the e-mails both that |
| 10:59 | 15 | Mr. Waterman sent as well as defendant's reply? |
| 10:59 | 16 | A    Yes. |
| 10:59 | 17 | Q    Are these true and accurate copies of the e-mails |
| 10:59 | 18 | Mr. Waterman sent to defendant and defendant's reply to |
| 10:59 | 19 | Mr. Waterman? |
| 10:59 | 20 | A    Yes. |
| 10:59 | 21 |          MR. SAGEL:  The government moves to admit |
| 10:59 | 22 | Exhibit 250, Your Honor. |
| 10:59 | 23 |          MR. AVENATTI:  Objection, Your Honor.  Hearsay. |
| 11:00 | 24 |          THE COURT:  Mr. Avenatti's e-mail will be received |
| 11:00 | 25 | for the truth.  The other e-mails will be received simply |

| 11:00 | 1 | for notice, not for the truth of their content.  Exhibit 250 |
| 11:00 | 2 | is received. |
| 11:00 | 3 | (Exhibit 250 received in evidence) |
| 11:00 | 4 | BY MR. SAGEL: |
| 11:00 | 5 | Q    Let's start at the bottom of page 2.  The first e-mail |
| 11:00 | 6 | is November 30th, 2018.  Do you see that? |
| 11:00 | 7 | A    I do. |
| 11:00 | 8 | Q    And this is an e-mail from Mr. Waterman to the |
| 11:00 | 9 | defendant as well as to Judy Regnier? |
| 11:00 | 10 | A    Yes, it is. |
| 11:00 | 11 | Q    You are cc'd on it? |
| 11:00 | 12 | A    I am. |
| 11:00 | 13 | Q    What's the subject line? |
| 11:00 | 14 | A    "Client file transfer request regarding Quix Supply, |
| 11:00 | 15 | Inc." |
| 11:00 | 16 | Q    And I'm not going to go through the details, but is it |
| 11:00 | 17 | fair to say that this e-mail is requesting the defendant to |
| 11:00 | 18 | provide the books and records for Quix Supply to your |
| 11:00 | 19 | corporate counsel? |
| 11:00 | 20 | A    Yes. |
| 11:00 | 21 | Q    And then if you look up, on December 6th does Matt |
| 11:01 | 22 | Waterman send another e-mail to defendant and Judy Regnier |
| 11:01 | 23 | about the client file transfer regarding Quix Supply? |
| 11:01 | 24 | A    Yes. |
| 11:01 | 25 | Q    And is he filing that because he still had not received |

| | | |
|---|---|---|
| 11:01 | 1 | the client files? |
| 11:01 | 2 | A    That's correct. |
| 11:01 | 3 | Q    And if you look on the bottom of page 1, Mr. Waterman |
| 11:01 | 4 | sends another e-mail to defendant and Ms. Regnier on |
| 11:01 | 5 | December 10th, 2018; is that correct? |
| 11:01 | 6 | A    Yes. |
| 11:01 | 7 | Q    And this is after you had hired new counsel in the |
| 11:01 | 8 | Brock matter; is that correct? |
| 11:01 | 9 | A    That's correct. |
| 11:01 | 10 | Q    And after you learned of the true settlement agreement? |
| 11:01 | 11 | A    That's correct. |
| 11:01 | 12 | Q    The e-mail from Mr. Waterman, the third e-mail from |
| 11:02 | 13 | Mr. Waterman to defendant on December 10th says, "Michael, |
| 11:02 | 14 | et al.  Michael is the sole incorporator of Quix Supply, |
| 11:02 | 15 | Inc., as evidenced by the attached certificate of |
| 11:02 | 16 | incorporation filed with the Delaware Secretary of State on |
| 11:02 | 17 | May 22nd, 2018. |
| 11:02 | 18 | "If Michael has not already prepared and executed |
| 11:02 | 19 | a sole incorporator's action under Section 108 of the |
| 11:02 | 20 | Delaware General Corporation law, then please have him date |
| 11:02 | 21 | and sign the attached sole incorporator's action which I |
| 11:02 | 22 | prepared.  Quix Supply needs to have this executed in order |
| 11:02 | 23 | to finish its corporate organization. |
| 11:02 | 24 | "Please e-mail the signed incorporator's actions |
| 11:02 | 25 | to me in reply to this e-mail."  And then it goes on to ask |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 11:03 | 1 | about other documentation; is that correct? |
|---|---|---|
| 11:03 | 2 | A     That's correct. |
| 11:03 | 3 | Q     And then on December 11th after three e-mails from |
| 11:03 | 4 | Mr. Waterman, did defendant reply? |
| 11:03 | 5 | A     Yes. |
| 11:03 | 6 | Q     And it starts with, "Matt, thank you for your e-mail. |
| 11:03 | 7 | A couple points of clarification."  Do you see that? |
| 11:03 | 8 | A     Yes. |
| 11:03 | 9 | Q     Can you read number one. |
| 11:03 | 10 | A     "Other corporate documents have been prepared but have |
| 11:03 | 11 | not been executed.  Indeed we were in the process of |
| 11:03 | 12 | finalizing those documents when Mr. Barela stopped |
| 11:03 | 13 | communicating with me and our office abruptly and failed to |
| 11:03 | 14 | return numerous phone calls and messages left for him." |
| 11:03 | 15 | Q     These incorporation documents for Quix, as we've |
| 11:03 | 16 | covered below, referenced May of 2018.  When did you stop |
| 11:04 | 17 | communicating with defendant? |
| 11:04 | 18 | A     About the time of the text messages when he started |
| 11:04 | 19 | communicating with me finally after I stopped communicating |
| 11:04 | 20 | with him.  So I guess that's when. |
| 11:04 | 21 | Q     Are you referring to after your new attorneys sent the |
| 11:04 | 22 | letter to him? |
| 11:04 | 23 | A     Correct. |
| 11:04 | 24 | Q     If you look at Exhibit 237. |
| 11:04 | 25 | A     (Witness complies.)  I'm there. |

79

| | | |
|---|---|---|
| 11:04 | 1 | Q    Does that refresh your recollection? |
| 11:04 | 2 | A    Yes, November 17th, around November. |
| 11:04 | 3 | Q    Then turning back to Exhibit 250, could you read number |
| 11:04 | 4 | three for us. |
| 11:04 | 5 | A    "Pursuant to prior agreements and numerous documents, I |
| 11:05 | 6 | was provided a board seat and ten percent of the interest in |
| 11:05 | 7 | the company for a significant amount of work performed at |
| 11:05 | 8 | Mr. Barela's request.  The action you request that I sign |
| 11:05 | 9 | does not account for this agreement." |
| 11:05 | 10 | Q    So when the defendant said, "Pursuant to prior |
| 11:05 | 11 | agreements and numerous documents, I was provided a board |
| 11:05 | 12 | seat and ten percent of the interest in the company for a |
| 11:05 | 13 | significant amount of work performed at Mr. Barela's |
| 11:05 | 14 | request," what was your understanding of what he's talking |
| 11:05 | 15 | about there? |
| 11:05 | 16 | A    That would be his ten percent interest in a board seat |
| 11:05 | 17 | in Quix Supply, Inc. |
| 11:05 | 18 | Q    Did defendant ever at this time or at any time you know |
| 11:05 | 19 | of tell you that the work he did on Quix Supply should come |
| 11:05 | 20 | out of your settlement with Brock? |
| 11:05 | 21 | A    No. |
| 11:06 | 22 | Q    Anywhere in defendant's e-mail here where he is saying |
| 11:06 | 23 | what the agreements were and the numerous documents, does he |
| 11:06 | 24 | say anywhere here that he is entitled to some of your Brock |
| 11:06 | 25 | settlement for the work he did? |

11:06   1              MR. AVENATTI:  Misstates the evidence.  Best

11:06   2   evidence, Your Honor.

11:06   3              THE COURT:  Overruled.

11:06   4              THE WITNESS:  No.

11:06   5   BY MR. SAGEL:

11:06   6   Q    In January of 2019 did you file a public lawsuit or

11:06   7   complaint against defendant?

11:06   8   A    We did.

11:06   9   Q    Did he make any statements publicly about you in

11:06   10  response to your filing?

11:06   11  A    Yes.

11:06   12  Q    What did defendant say at that time after you filed the

11:06   13  complaint against him?

11:06   14  A    He said that I was a career criminal and just beat me

11:07   15  up and told them I'm a liar.  He said very negative things

11:07   16  about me to all the press.

11:07   17  Q    How did he know about what he referred to as your past?

11:07   18  A    Because he gave me advice on how to proceed to create

11:07   19  that past.

11:07   20  Q    Prior to you filing the lawsuit against the defendant,

11:07   21  had defendant ever said anything about not trusting you

11:07   22  because of your felony conviction?

11:07   23  A    No.  He called me his brother.

11:07   24  Q    Do you know who Ed Ricci is?

11:07   25  A    (No response)

| | | |
|---|---|---|
| 11:07 | 1 | Q    Let me ask it a different way.  Prior to the government |
| 11:08 | 2 | showing you documents, did you know who Ed Ricci was? |
| 11:08 | 3 | A    No. |
| 11:08 | 4 | Q    Were you aware of the attorneys who worked on your |
| 11:08 | 5 | matter, on the Brock matter? |
| 11:08 | 6 | A    No. |
| 11:08 | 7 | Q    Let me ask it in a different way because I think I |
| 11:08 | 8 | asked a confusing question. |
| 11:08 | 9 | What attorneys at Eagan Avenatti worked on the |
| 11:08 | 10 | Brock matter? |
| 11:08 | 11 | A    John Arden and Ahmed Ibrahim. |
| 11:08 | 12 | Q    Anybody else? |
| 11:08 | 13 | A    Mr. Avenatti. |
| 11:08 | 14 | Q    To your knowledge were there any attorneys outside of |
| 11:08 | 15 | Eagan Avenatti who worked on the Brock matter? |
| 11:08 | 16 | A    Not that I'm aware of. |
| 11:08 | 17 | Q    And were you involved in the litigation to know what |
| 11:08 | 18 | was going on? |
| 11:08 | 19 | A    No. |
| 11:08 | 20 | Q    Did you have communications with lawyers about your |
| 11:08 | 21 | ongoing litigation? |
| 11:08 | 22 | A    Just Mr. Avenatti and John Arden. |
| 11:09 | 23 | Q    Do you know who Richard Beada is? |
| 11:09 | 24 | A    I don't recall. |
| 11:09 | 25 | Q    Is he an attorney that you know of worked on your |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

82

| | | |
|---|---|---|
| 11:09 | 1 | matter in the Brock matter? |
| 11:09 | 2 | A    No. |
| 11:09 | 3 | Q    Do you know who an attorney by the name of James Gailey |
| 11:09 | 4 | is? |
| 11:09 | 5 | A    No. |
| 11:09 | 6 | Q    Did he work on your Brock matter that you know of? |
| 11:09 | 7 | A    No. |
| 11:09 | 8 | Q    Do you know who Dennis Brader is? |
| 11:09 | 9 | A    No. |
| 11:09 | 10 | Q    Do you know if he was working on your Brock matter? |
| 11:09 | 11 | A    No. |
| 11:09 | 12 | Q    The law firm of Coblentz Patch Duffy & Bass, or |
| 11:09 | 13 | Coblentz Law, do you know who they are? |
| 11:09 | 14 | A    Never heard of them. |
| 11:09 | 15 | Q    To your knowledge were they working on your Brock |
| 11:09 | 16 | matter? |
| 11:09 | 17 | A    No. |
| 11:09 | 18 | Q    Do you know a law firm by the name of the X-Law Group |
| 11:09 | 19 | or Filippo Marchino? |
| 11:10 | 20 | A    Never heard of them. |
| 11:10 | 21 | Q    To your knowledge were they working on your Brock |
| 11:10 | 22 | matter? |
| 11:10 | 23 | A    Not that I know of. |
| 11:10 | 24 | Q    Did you ever authorize defendant to pay Edward Ricci, |
| 11:10 | 25 | James Gailey, Richard Beada, Dennis Brader, Coblentz Patch |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:10   1    Duffy & Bass, or the X-Law Group out of your settlement
11:10   2    proceeds?
11:10   3    A    Never.
11:10   4    Q    Do you know if -- at the time did you know who Global
11:10   5    Baristas was?
11:10   6    A    Yes.
11:10   7    Q    What did you understand Global Baristas to be?
11:10   8    A    Michael's -- I think it's his equity position in
11:10   9    Tully's coffee.
11:10   10   Q    Did you ever authorize defendant to use proceeds of
11:10   11   your settlement with Brock USA to pay money to Global
11:11   12   Baristas?
11:11   13   A    Never.
11:11   14   Q    Did you ever authorize defendant to use proceeds from
11:11   15   your settlement money with Brock USA to pay Dillanos Coffee
11:11   16   Roasters?
11:11   17   A    Of course not.
11:11   18   Q    What about Alki Bakery?
11:11   19   A    Never.
11:11   20   Q    We looked at a lot of text messages and e-mails where
11:11   21   you were describing your financial situation to the
11:11   22   defendant.  Why were you confiding or why were you telling
11:11   23   the defendant about the financial condition you were in?
11:11   24            MR. AVENATTI:  Objection, Your Honor, 403.
11:11   25            THE COURT:  Sustained.
```

11:11  1   BY MR. SAGEL:

11:11  2   Q    In response to telling defendant about your financial

11:11  3   condition, did you expect your lawyer to tell you when the

11:12  4   settlement money would come in?

11:12  5            MR. AVENATTI:  403, Your Honor.

11:12  6            THE COURT:  Sustained.

11:12  7   BY MR. SAGEL:

11:12  8   Q    In addition to the Quix Supply case, did defendant work

11:12  9   on other matters for you?

11:12  10  A    Yes, one more.

11:12  11  Q    How much work did defendant put in on that one more

11:12  12  matter?

11:12  13            MR. AVENATTI:  Calls for speculation.  Conjecture.

11:12  14            THE COURT:  Overruled.

11:12  15            THE WITNESS:  The truth is I don't really know or

11:12  16  I didn't know in the beginning until we requested certain

11:12  17  documents.  When we requested the documents, Michael did

11:12  18  provide us with those documents because he wanted not to

11:12  19  have to keep going back to court on my behalf for this one

11:12  20  case.

11:12  21            MR. AVENATTI:  Move to strike, Your Honor.

11:13  22            THE COURT:  Denied.

11:13  23  BY MR. SAGEL:

11:13  24  Q    On that one case that you're talking about, did

11:13  25  defendant ever tell you that your funds from the Brock

11:13  1  matter would be used to pay the fees on that?

11:13  2  A    Never.

11:13  3  Q    At any time that defendant was your lawyer, from

11:13  4  December 2017 when you signed the settlement agreement until

11:13  5  November 2018 when you got new lawyers, did he ever tell you

11:13  6  that you were not entitled to your share of the Brock

11:13  7  settlement money?

11:13  8  A    Never.

11:13  9  Q    Did he ever provide you during that same window of

11:13 10  time, December 2017 to November 2018, did he ever provide

11:13 11  you with any kind of an accounting that showed what costs,

11:13 12  expenses, or work on other matters entitled you to no money

11:13 13  from your settlement agreement?

11:14 14  A    Never.

11:14 15  Q    Did he ever say he could charge you interest or that

11:14 16  you don't get your settlement money?

11:14 17  A    Of course not.

11:14 18  Q    In the same window of time, December 2017 to

11:14 19  November 2018, did defendant ever tell you Brock paid the

11:14 20  initial settlement money?

11:14 21        MR. AVENATTI:  Objection, Your Honor, 403.

11:14 22        THE COURT:  Overruled.

11:14 23        THE WITNESS:  Never.

11:14 24  BY MR. SAGEL:

11:14 25  Q    Same window, December 2017 to November 2018, did the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:14 | 1 | defendant ever tell you he received the initial |
| 11:14 | 2 | $1.6 million? |
| 11:14 | 3 | A    No, never. |
| 11:14 | 4 | Q    Would you have expected him to tell you these things? |
| 11:15 | 5 | MR. AVENATTI:  403, Your Honor. |
| 11:15 | 6 | THE COURT:  Sustained. |
| 11:15 | 7 | BY MR. SAGEL: |
| 11:15 | 8 | Q    Why during that entire time did you trust the |
| 11:15 | 9 | defendant? |
| 11:15 | 10 | MR. AVENATTI:  403, Your Honor. |
| 11:15 | 11 | THE COURT:  Overruled. |
| 11:15 | 12 | THE WITNESS:  Because I believed in him and he was |
| 11:15 | 13 | my most closest advisor, and I couldn't believe that you |
| 11:15 | 14 | can't trust your lawyer. |
| 11:15 | 15 | MR. SAGEL:  No further questions, Your Honor. |
| 11:15 | 16 | THE COURT:  Mr. Avenatti. |
| 11:15 | 17 | (Pause in proceedings) |
| 11:15 | 18 | MR. AVENATTI:  Your Honor, may I begin? |
| 11:16 | 19 | THE COURT:  You may. |
| 11:16 | 20 | MR. AVENATTI:  Thank you. |
| 11:16 | 21 | CROSS-EXAMINATION |
| 11:16 | 22 | BY MR. AVENATTI: |
| 11:16 | 23 | Q    Mr. Barela, good morning. |
| 11:16 | 24 | A    Good morning. |
| 11:16 | 25 | Q    Now, yesterday when you were called to testify, before |

11:16   1   you began your testimony, the clerk gave you an oath.  Do

11:17   2   you remember that?

11:17   3   A    I do.

11:17   4   Q    And did you understand that oath before you agreed to

11:17   5   it?

11:17   6   A    Yes.

11:17   7   Q    What was your understanding -- well, strike that.  What

11:17   8   is your understanding of what that oath means?

11:17   9   A    To tell the truth, the whole truth, and nothing but the

11:17   10  truth, so help you God.

11:17   11  Q    And has it been your understanding during direct

11:17   12  examination that that oath only applied to some questions

11:17   13  and answers or to all of your answers?

11:17   14          MR. SAGEL:  Objection.  Argumentative.

11:17   15          THE COURT:  Overruled.

11:17   16          THE WITNESS:  All of them.

11:17   17  BY MR. AVENATTI:

11:17   18  Q    And you understood that every answer that you provided

11:17   19  on direct examination had to be a hundred percent truthful,

11:18   20  right?

11:18   21  A    Correct.

11:18   22  Q    And as you sit there right now, do you know of any

11:18   23  answer you gave to Mr. Sagel either yesterday or today that

11:18   24  was in any way, shape, or form not a hundred percent

11:18   25  truthful?

88

| | | |
|---|---|---|
| 11:18 | 1 | A    No. |
| 11:18 | 2 | Q    So in your view every answer that you gave today and |
| 11:18 | 3 | earlier this morning the jury can take it to the bank? |
| 11:18 | 4 | MR. SAGEL:  Objection.  Asked and answered. |
| 11:18 | 5 | THE COURT:  Sustained. |
| 11:19 | 6 | Let's move on, Mr. Avenatti. |
| 11:19 | 7 | BY MR. AVENATTI: |
| 11:19 | 8 | Q    Mr. Barela, who is Steve Howard? |
| 11:19 | 9 | A    Steve Howard is a client we had in San Diego. |
| 11:19 | 10 | Q    What do you mean when you say a client you had in San |
| 11:19 | 11 | Diego? |
| 11:19 | 12 | A    He was a customer that the company that I was with |
| 11:19 | 13 | provided services for. |
| 11:19 | 14 | Q    Steve Howard was an elderly gentleman that you |
| 11:19 | 15 | defrauded out of over $33,000; isn't that true, Mr. Barela? |
| 11:19 | 16 | Yes or no? |
| 11:19 | 17 | A    Yes. |
| 11:19 | 18 | Q    Who is Eamonn Rappaport? |
| 11:19 | 19 | A    A client in San Diego. |
| 11:19 | 20 | Q    Mr. Rappaport was an elderly gentleman that you |
| 11:19 | 21 | defrauded out of $25,000; isn't that true? |
| 11:19 | 22 | A    That's correct. |
| 11:20 | 23 | Q    And prior to Mr. Howard and Mr. Rappaport, you had |
| 11:20 | 24 | defrauded other elderly individuals out of money; hadn't |
| 11:20 | 25 | you? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:20  1          MR. SAGEL:  Objection, Your Honor.  Improper 609
11:20  2   and Your Honor's ruling from this morning.
11:20  3          MR. AVENATTI:  608, Your Honor.  Different.
11:20  4          THE COURT:  Clarify the question with specifics.
11:20  5   BY MR. AVENATTI:
11:20  6   Q    Mr. Barela, prior to defrauding Mr. Howard and
11:20  7   Mr. Rappaport, had you ever defrauded anyone else out of any
11:20  8   money?
11:20  9   A    Yes.
11:20  10  Q    How many people?
11:20  11  A    One.
11:20  12  Q    Were they elderly?
11:21  13          MR. SAGEL:  Objection.  403, Your Honor.
11:21  14          THE COURT:  Overruled.
11:21  15          THE WITNESS:  They were.
11:21  16  BY MR. AVENATTI:
11:21  17  Q    How old were they?
11:21  18  A    I don't know.  I've never met them.
11:21  19  Q    And you are presently a convicted felon; is that right?
11:21  20  A    Not currently.
11:21  21  Q    You were convicted of stealing people's money through
11:21  22  diversion in 2018, right?
11:21  23  A    Yes.
11:22  24  Q    And in connection with that, you were placed on four
11:22  25  years' felony probation; is that right?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:22   1   A     Eighteen months.
11:22   2   Q     So it is incorrect to say that when you were
11:22   3   sentenced -- it is incorrect that you were sentenced to four
11:22   4   years probation.  Is that incorrect?  Yes or no?
11:22   5   A     That is correct.
11:22   6   Q     Now, you were also sued in 2018 in a case called
11:22   7   Carthey versus Pirch for fraud, right?
11:23   8   A     I don't know what they were suing for exactly.  I don't
11:23   9   know if they called it fraud, but they did sue me, yes.
11:23  10   Q     You don't recall that in 2018 multiple people together
11:23  11   with the company Pirch sued you for fraud?  You don't
11:23  12   remember that?
11:23  13   A     No.  I remember that we were being sued.  I don't
11:23  14   remember the fraud.
11:23  15             MR. AVENATTI:  Your Honor, one moment, please.
11:23  16             (Pause in proceedings)
11:23  17   BY MR. AVENATTI:
11:24  18   Q     We'll come back to that.
11:24  19             Now, on direct examination you were asked about
11:24  20   this meeting that we had on December 28, 2017, at my office.
11:24  21   Do you recall those questions by Mr. Sagel?
11:24  22   A     I do.
11:24  23   Q     Now, you have previously provided testimony in legal
11:24  24   proceedings prior to taking the stand yesterday, right?
11:24  25   A     Yes.
```

11:24   1   Q    So you're aware that every time a question is asked or

11:24   2   His Honor states something or you provide an answer, the

11:25   3   court reporter who is seated in front of you, she takes down

11:25   4   everything that is said.  You know that, right?

11:25   5   A    Correct.

11:25   6   Q    And you knew yesterday after you took that oath and you

11:25   7   were providing answers, you knew at that time that

11:25   8   everything you said would be recorded on a transcript,

11:25   9   correct?

11:25   10  A    Correct.

11:25   11  Q    Do you recall testifying that you came to my office on

11:25   12  December 28th, 2017?

11:26   13  A    Yes.

11:26   14  Q    And do you recall that Mr. Sagel made it a point to ask

11:26   15  you about whether the office was closed at the time and

11:26   16  whether you could get in the door?  Do you remember that?

11:26   17  A    Yes.

11:26   18  Q    And do you recall that December 28th was between

11:26   19  Christmas and New Year's of that year and basically every

11:26   20  other year?

11:26   21  A    Yes.

11:26   22  Q    Okay.  Now, do you know if my office -- strike that.

11:26   23  Do you know if it was a policy at my firm that we would

11:26   24  close between Christmas and New Year's in order to give

11:26   25  people time off?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:26 | 1 | A    No, I do not recall. |
| 11:26 | 2 | Q    Now, at the time of that meeting on December 28th -- |
| 11:27 | 3 | well, strike that.  You testified both yesterday and today |
| 11:27 | 4 | that at the time of that meeting on December 28th, 2017, you |
| 11:27 | 5 | were not provided a copy of the settlement agreement.  That |
| 11:27 | 6 | was your testimony, right? |
| 11:27 | 7 | A    It was not. |
| 11:27 | 8 |         THE COURT:  Wait a minute.  Clarify.  Ambiguous. |
| 11:27 | 9 |         Sir, were you provided a copy of the settlement |
| 11:27 | 10 | agreement on that date? |
| 11:27 | 11 |         THE WITNESS:  I was provided a copy of the |
| 11:27 | 12 | settlement agreement. |
| 11:27 | 13 |         THE COURT:  Okay. |
| 11:27 | 14 | BY MR. AVENATTI: |
| 11:27 | 15 | Q    Sir, you testified earlier today repeatedly between |
| 11:28 | 16 | 9:16 a.m -- I wrote it down -- and 9:25 a.m. that you had |
| 11:28 | 17 | not been given a copy of a settlement agreement before June |
| 11:28 | 18 | or July of 2018.  Didn't you testify to that?  Yes or no? |
| 11:28 | 19 | A    No. |
| 11:28 | 20 | Q    Sir, isn't it true that on December 28th, 2017, you |
| 11:28 | 21 | were provided a fully executed copy of a settlement |
| 11:28 | 22 | agreement with Brock?  Yes or no? |
| 11:28 | 23 | A    No. |
| 11:29 | 24 |         MR. AVENATTI:  Your Honor, can I approach for |
| 11:29 | 25 | impeachment, please? |

93

| | | |
|---|---|---|
| 11:29 | 1 | THE COURT:  You may approach. |
| 11:29 | 2 | (Document handed to the witness) |
| 11:29 | 3 | MR. AVENATTI:  Your Honor, directing Your Honor's |
| 11:30 | 4 | attention to paragraph five, that is the portion that I wish |
| 11:30 | 5 | to use for impeachment, together with the exhibit. |
| 11:30 | 6 | THE COURT:  Proceed, please. |
| 11:30 | 7 | MR. AVENATTI:  I'm going to use the elmo. |
| 11:30 | 8 | BY MR. AVENATTI: |
| 11:31 | 9 | Q    Sir, paragraph five of this document reads: |
| 11:31 | 10 | "The settlement agreement that respondent |
| 11:31 | 11 | presented to me on December 28th, 2017, to sign required the |
| 11:31 | 12 | settling party to make an initial payment of $1,600,000 by |
| 11:31 | 13 | March 10, 2018, and three additional payments of $100,000," |
| 11:31 | 14 | and then it repeats the March dates, "for a total of |
| 11:31 | 15 | $1,900,000." |
| 11:31 | 16 | Did I read that correctly? |
| 11:31 | 17 | A    You did. |
| 11:31 | 18 | Q    Then it goes on to say: |
| 11:31 | 19 | "A true and correct, though redacted, copy of the |
| 11:31 | 20 | partial settlement agreement that respondent provided to me |
| 11:31 | 21 | on December 28th, 2017, is attached to this declaration as |
| 11:32 | 22 | Exhibit 2." |
| 11:32 | 23 | Did I read that correctly? |
| 11:32 | 24 | A    You did. |
| 11:32 | 25 | Q    And you declared under penalty of perjury under the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|--|--|--|
| 11:32 | 1 | laws of the State of California that that was true and |
| 11:32 | 2 | correct as of the date that you executed this document, |
| 11:32 | 3 | which was the 24th day of May 2019 at Irvine, California; |
| 11:32 | 4 | didn't you? |
| 11:32 | 5 | A    Yes. |
| 11:32 | 6 | Q    And you understood that that penalty of perjury was |
| 11:32 | 7 | just as important as your obligation to tell the truth to |
| 11:32 | 8 | this jury in this courtroom; didn't you? |
| 11:32 | 9 | A    I did. |
| 11:32 | 10 | Q    We have Exhibit 2 attached to that document which was |
| 11:33 | 11 | referenced in the portion I just read? |
| 11:33 | 12 | A    Yes. |
| 11:33 | 13 | Q    Is that the first page of Exhibit 2? |
| 11:33 | 14 | A    Yes. |
| 11:33 | 15 | Q    Is that the second page of Exhibit 2? |
| 11:33 | 16 | A    Yes. |
| 11:34 | 17 | Q    The third page of Exhibit 2, right? |
| 11:34 | 18 | A    Yes. |
| 11:34 | 19 | Q    Fourth page of Exhibit 2, correct? |
| 11:34 | 20 | A    Yes. |
| 11:34 | 21 | Q    Fifth page, right? |
| 11:34 | 22 | A    Yes. |
| 11:34 | 23 | Q    Sixth page, right? |
| 11:34 | 24 | A    Yes. |
| 11:34 | 25 | Q    Seventh page, right? |

95

| | | |
|---|---|---|
| 11:34 | 1 | A    Yes. |
| 11:34 | 2 | Q    The eighth page with a signature redacted in the |
| 11:35 | 3 | right-hand corner, right? |
| 11:35 | 4 | A    Yes. |
| 11:35 | 5 | Q    And then the last page with your signature, Mr. Barela; |
| 11:35 | 6 | isn't that right? |
| 11:35 | 7 | A    That's right. |
| 11:36 | 8 | Q    Sir, let me show you pages 54 and 55 from yesterday's |
| 11:36 | 9 | transcript when Mr. Sagel was asking you questions under |
| 11:36 | 10 | oath on direct.  Can you see those pages? |
| 11:36 | 11 | A    I can. |
| 11:36 | 12 | Q    You were asked: |
| 11:36 | 13 | "Q    And what did you do -- what happened |
| 11:36 | 14 | to the signature pages?" |
| 11:36 | 15 | Do you see that? |
| 11:36 | 16 | A    I do. |
| 11:36 | 17 | Q    And you answered: |
| 11:36 | 18 | "A    Michael hung onto it because the copy |
| 11:36 | 19 | machine wasn't working." |
| 11:36 | 20 | Did I read that correctly? |
| 11:37 | 21 | A    You did. |
| 11:37 | 22 | Q    Then he asked: |
| 11:37 | 23 | "Q    And what did he tell you about when |
| 11:37 | 24 | you would get a copy of the full settlement |
| 11:37 | 25 | agreement? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:37   1              "A    He said I could ask for it and I could

11:37   2         pick it up."

11:37   3              Did I read that correctly?

11:37   4    A    You did.

11:37   5    Q    And earlier this morning between 9:16 a.m. and

11:37   6    9:25 a.m., you testified that before June or July you had

11:38   7    never seen any signature page relating to Mr. Runkles'

11:38   8    signature.  Isn't that what you told this jury?  Yes or no?

11:38   9    A    Yes.

11:38   10             MR. AVENATTI:  Your Honor, for the record the

11:38   11   impeachment exhibit is defense Exhibit 1056.  I would move

11:39   12   those portions that I showed the witness into evidence at

11:39   13   this time.

11:39   14             THE COURT:  Any objection?

11:39   15             MR. SAGEL:  We have a full document.  So when he

11:39   16   shows us the redacted, as long as it's only paragraph five

11:39   17   and Exhibit 2, we have no objection.

11:39   18             MR. AVENATTI:  It's paragraph five as well as the

11:39   19   attestation and the attachment.

11:39   20             THE COURT:  Right.

11:39   21             MR. SAGEL:  No objection to that.

11:39   22             THE COURT:  1056?

11:39   23             MR. AVENATTI:  Yes, sir.

11:39   24             THE COURT:  Okay.  Those portions of 1056 will be

11:39   25   received.

| | | |
|---|---|---|
| 11:39 | 1 | (Exhibit 1056, as redacted, received in evidence) |
| 11:39 | 2 | BY MR. AVENATTI: |
| 11:39 | 3 | Q    Now, Mr. Barela, in the lower right-hand corner of this |
| 11:39 | 4 | document, at least the page -- well, strike that.  In the |
| 11:39 | 5 | lower right-hand corner on the portion that we were just |
| 11:40 | 6 | looking at, there are some initials.  Do you see those? |
| 11:40 | 7 | A    I do. |
| 11:40 | 8 | Q    Are those your initials? |
| 11:40 | 9 | A    They are. |
| 11:40 | 10 | Q    And why do your initials appear on each page of this |
| 11:40 | 11 | document? |
| 11:40 | 12 | A    All but the signature page?  Oh, that's the exhibit. |
| 11:40 | 13 | Excuse me.  I always initial each page so that I make sure |
| 11:40 | 14 | that the pages are not changed. |
| 11:40 | 15 | Q    You initialed the pages in the right-hand corner at the |
| 11:40 | 16 | time that you signed the document, right? |
| 11:40 | 17 | A    Yes, I did. |
| 11:40 | 18 | Q    That's your custom and practice? |
| 11:40 | 19 | A    It is. |
| 11:40 | 20 | Q    And how long has that been your custom and practice |
| 11:40 | 21 | when you sign a document? |
| 11:40 | 22 | A    For a long time. |
| 11:40 | 23 | Q    Ten years? |
| 11:40 | 24 | A    It could be more. |
| 11:40 | 25 | Q    At least ten years? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:40  1    A    Yeah.

11:41  2    Q    Now, separate and apart from accusing me of committing

11:41  3    fraud in connection with your settlement, you have also

11:41  4    accused Judy Regnier, John Arden, and Ahmed Ibrahim of

11:41  5    committing fraud in connection with that settlement, right?

11:41  6    Isn't that true?  Yes or no?

11:41  7    A    No.

11:41  8    Q    Do you remember Mr. Sagel asked you about that lawsuit

11:42  9    you filed?

11:42  10   A    Yes.

11:42  11   Q    Isn't it true that in connection with that lawsuit, you

11:42  12   also claimed that Judy Regnier, John Arden, and Ahmed

11:42  13   Ibrahim had also committed fraud against you in connection

11:42  14   with the settlement?

11:42  15   A    I said they had knowledge of it.

11:42  16   Q    You accused each of them of stealing your money, right?

11:43  17   A    No.  I accused them of having knowledge.

11:43  18   Q    Let me see if I can refresh your recollection.

11:43  19        MR. AVENATTI:  Your Honor, can I approach?

11:43  20        THE COURT:  You may.

11:43  21        (Document handed to the witness)

11:43  22   BY MR. AVENATTI:

11:44  23   Q    Sir, if you go to page 23 of the document that I have

11:44  24   placed before you --

11:44  25   A    I'm here.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:44   1   Q      -- there is a title there that says conversion.  Do you
11:44   2   see that?
11:44   3   A      Yes, conversion, sixth cause of action.
11:44   4   Q      Against all defendants.  Do you see that?
11:44   5   A      I do.
11:44   6   Q      And Ms. Regnier and Mr. Arden and Mr. Ibrahim are all
11:44   7   defendants in this action; aren't they?
11:44   8   A      They are.
11:44   9   Q      And you understand that conversion is another word for
11:44  10   stealing, right?
11:45  11          MR. SAGEL:  Objection.  Calls for a legal
11:45  12   conclusion.  And he also said he is using this to refresh
11:45  13   recollection, which he's not doing.
11:45  14          THE COURT:  Sustained.
11:45  15   BY MR. AVENATTI:
11:45  16   Q      Sir, does this document refresh your recollection that
11:45  17   in fact in that lawsuit that Mr. Sagel asked you about, you
11:45  18   accuse Judy Regnier, John Arden, and Ahmed Ibrahim of
11:45  19   conversion or theft?
11:45  20   A      It would appear so.
11:45  21   Q      And do you recall previously testifying under oath that
11:45  22   you stood behind the allegations in this document?
11:45  23   A      Yes.
11:45  24   Q      And do you stand behind the allegations in this
11:45  25   document?
```

11:45  1   A    I did.  I filed it.

11:46  2   Q    Now, in March of -- strike that.  Mr. Sagel asked you a

11:46  3   number of questions about various facts and events relating

11:46  4   to what you claim were your efforts to get monies that were

11:46  5   owed to you.  Do you recall those questions generally?

11:46  6   A    I do.

11:46  7   Q    I want to ask you about something related to that.

11:46  8   Now, you had claimed that in March of 2018 you came to the

11:46  9   law firm, my law firm, Eagan Avenatti.  Do you recall that?

11:46  10  A    I believe so.

11:46  11  Q    And you met with Mr. Ibrahim, who had worked on your

11:46  12  case; is that true?

11:47  13  A    I believe so.

11:47  14  Q    And you have previously claimed under oath that

11:47  15  Mr. Ibrahim congratulated you on the settlement at that

11:47  16  time, right?

11:47  17  A    That's correct.

11:47  18  Q    And that at the time -- and we're talking about

11:47  19  March 2018 -- Mr. Ibrahim led you to believe that the

11:47  20  initial settlement payment of $1.6 million had been made; is

11:47  21  that true?

11:47  22  A    Yes.

11:47  23  Q    And where did you meet with Mr. Ibrahim?

11:47  24  A    When I was walking into the lobby, he was sitting there

11:47  25  reading the Wall Street Journal.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:47 | 1 | Q    And I think you testified that the individuals that you |
| 11:48 | 2 | understood from Eagan Avenatti who had worked on your matter |
| 11:48 | 3 | were me, Mr. Ibrahim, and Mr. John Arden; right? |
| 11:48 | 4 | A    Correct. |
| 11:48 | 5 | Q    And you have previously claimed, sir, have you not, |
| 11:48 | 6 | including under oath that during your conversation with |
| 11:48 | 7 | Mr. Ibrahim, you saw Mr. Arden's reflection in the glass |
| 11:48 | 8 | wall of the conference room? |
| 11:48 | 9 | A    Correct. |
| 11:48 | 10 | Q    And you observed Mr. Arden gesturing towards |
| 11:48 | 11 | Mr. Ibrahim by waving his hand across his throat to signal |
| 11:48 | 12 | to him to stop discussing your settlement payment.  That's |
| 11:48 | 13 | what you claim, right? |
| 11:48 | 14 | A    Correct. |
| 11:48 | 15 | Q    And you claim that under oath, correct? |
| 11:48 | 16 | A    That is correct. |
| 11:48 | 17 | Q    So if I call Mr. Ibrahim and Mr. Arden to the stand and |
| 11:48 | 18 | they say that's fabricated and never happened, they would be |
| 11:49 | 19 | lying according to you; is that right? |
| 11:49 | 20 |          MR. SAGEL:  Objection.  Calls for speculation. |
| 11:49 | 21 | Assumes facts not in evidence. |
| 11:49 | 22 |          THE COURT:  Sustained. |
| 11:49 | 23 | BY MR. AVENATTI: |
| 11:49 | 24 | Q    Now, you are clear that this happened, right? |
| 11:49 | 25 | A    I'm clear. |

11:49  1   Q    And then according to you, after Mr. Ibrahim saw

11:49  2   Mr. Arden's gesture in the glass of the conference room,

11:49  3   what happened?

11:49  4   A    He abruptly stopped talking to me.

11:49  5   Q    And according to you, that's because they were trying

11:49  6   to keep the details of the settlement from you; is that

11:49  7   right?

11:49  8   A    I believe so.

11:49  9   Q    And then also according to you, after March 2018 they

11:50  10  did everything they could to avoid you, right?

11:50  11  A    Correct.

11:50  12  Q    And despite the fact that you were often in the

11:50  13  offices, according to your sworn testimony, Mr. Arden and

11:50  14  Mr. Ibrahim would avoid eye contact with you, right?

11:50  15  A    Correct.

11:50  16  Q    And you claim that that's because they knew that the

11:50  17  $1.6 million had been paid but you were not told about it,

11:51  18  right?

11:51  19  A    I believe so.

11:51  20  Q    And you have made those claims regarding the, we'll

11:51  21  call it, the conference room glass event now under oath

11:51  22  twice, right?

11:51  23  A    Yes.

11:51  24  Q    And in numerous filings with various Courts, correct?

11:51  25  A    Yes.

| | | |
|---|---|---|
| 11:51 | 1 | Q    And those details, Mr. Barela, as far as you're |
| 11:51 | 2 | concerned, they are as truthful and accurate as everything |
| 11:52 | 3 | you have testified to under direct examination by Mr. Sagel, |
| 11:52 | 4 | right? |
| 11:52 | 5 | MR. SAGEL:  Objection.  Argumentative. |
| 11:52 | 6 | THE COURT:  Overruled. |
| 11:52 | 7 | THE WITNESS:  Yes. |
| 11:52 | 8 | BY MR. AVENATTI: |
| 11:52 | 9 | Q    Now, we were going to get into the details after the |
| 11:52 | 10 | lunch break, but I want to make sure that I wrote this down |
| 11:52 | 11 | correctly.  You claimed under oath when Mr. Sagel was asking |
| 11:53 | 12 | you questions this morning that I was not responsive to you |
| 11:53 | 13 | in November of 2018 when you were texting me, right? |
| 11:53 | 14 | A    I would have to go back and verify, but I don't believe |
| 11:53 | 15 | you were very responsive. |
| 11:53 | 16 | Q    Well, now, you didn't say I wasn't very responsive. |
| 11:53 | 17 | You said that I wasn't responding to you.  I wasn't |
| 11:53 | 18 | responsive.  Do you recall that, sir? |
| 11:53 | 19 | A    I do. |
| 11:53 | 20 | Q    So I take it that if we were to look at your phone |
| 11:53 | 21 | records or my phone records, we would not find any phone |
| 11:53 | 22 | calls between you and I in November of 2018; is that right? |
| 11:53 | 23 | A    That's not true. |
| 11:53 | 24 | Q    We would not find any text messages that I sent to you |
| 11:54 | 25 | in November of 2018; is that right? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:54 | 1 | A    That's not true. |
| 11:54 | 2 | Q    We would not find any e-mails from me to you in |
| 11:54 | 3 | November of 2018; is that right? |
| 11:54 | 4 | A    I would have to verify that. |
| 11:54 | 5 | Q    So you don't know? |
| 11:54 | 6 | A    I don't know. |
| 11:54 | 7 | Q    Sir, in 2018 was it your custom to invite someone who |
| 11:55 | 8 | you thought had stolen your money and was not responding to |
| 11:55 | 9 | you out to have a martini?  Was that your custom in November |
| 11:55 | 10 | of 2018, sir?  Yes or no? |
| 11:55 | 11 | A    No. |
| 11:55 | 12 | Q    Isn't it true that you sent me a text on November 15th, |
| 11:55 | 13 | 2018, telling me that you could not wait to see me and |
| 11:55 | 14 | inviting me out for a martini?  Is that true?  Yes or no? |
| 11:55 | 15 | A    I would have to verify the e-mail, but possibly. |
| 11:55 | 16 | Q    Take a look at 176, page 11 of 47.  It's not a text |
| 11:55 | 17 | message that Mr. Sagel asked you about, but take a look at |
| 11:55 | 18 | line -- |
| 11:56 | 19 | A    146? |
| 11:56 | 20 | Q    -- line 7.  No, Exhibit 176, page 11 of 47. |
| 11:56 | 21 | A    I'm sorry.  Can you repeat what section? |
| 11:56 | 22 | Q    Exhibit 176, line 7, page 11 of 47.  And my question is |
| 11:56 | 23 | just this:  Does that refresh your recollection that you |
| 11:56 | 24 | sent a text that read in part that you could not wait to see |
| 11:56 | 25 | me and inviting me out to have a martini? |

| | | |
|--|--|--|
| 11:56 | 1 | And while you're looking for that, I'm going to |
| 11:56 | 2 | get my flip chart. |
| 11:56 | 3 | A    (Witness retrieving document) |
| 11:56 | 4 | (Pause in proceedings) |
| 11:56 | 5 | BY MR. AVENATTI: |
| 11:58 | 6 | Q    Sir, does that refresh your recollection that on |
| 11:58 | 7 | November 15th, 2018, you sent me a text saying you couldn't |
| 11:58 | 8 | wait to see me and you invited me out for a martini? |
| 11:58 | 9 | A    Give me the number on the line, please. |
| 11:58 | 10 | Q    Line 7.  Exhibit 176, page 11. |
| 11:58 | 11 | A    Yeah, I did say that. |
| 11:58 | 12 | Q    All right.  Can you see my flip chart here? |
| 11:58 | 13 | A    I sure can. |
| 11:58 | 14 | Q    All right.  The date 11/15/2018, and then a terrible |
| 11:58 | 15 | drawing of a martini glass with the word "martini."  Do you |
| 11:58 | 16 | see that? |
| 11:58 | 17 | A    I do. |
| 11:58 | 18 | Q    Okay.  And it is high noon on August 5th right now, |
| 11:58 | 19 | right? |
| 11:58 | 20 | A    Yes. |
| 11:59 | 21 | THE COURT:  I think we will take the lunch break |
| 11:59 | 22 | here, ladies and gentlemen.  We will resume at 1:30.  Please |
| 11:59 | 23 | remember the admonition not to discuss the case with anyone |
| 11:59 | 24 | and not to form any opinions on the issues in the case until |
| 11:59 | 25 | it is submitted to you.  And please do not do any research. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | |
|---|---|
| 11:59 | 1 |
| 11:59 | 2 |
| 11:59 | 3 |
| 11:59 | 4 |
| 11:59 | 5 |

11:59   1            We'll see you at 1:30, please.

11:59   2            (Jury not present)

11:59   3            THE COURT:  We will be in recess.

11:59   4                (Recess taken at 11:59 a.m.)

11:59   5                     *   *   *

CERTIFICATE


        I hereby certify that pursuant to Section 753,
Title 28, United States Code, the foregoing is a true and
correct transcript of the stenographically reported
proceedings held in the above-entitled matter and that the
transcript page format is in conformance with the
regulations of the Judicial Conference of the United States.


Date:  August 6, 2021


                        /s/   Sharon A. Seffens  8/6/21
                        _____
                        SHARON A. SEFFENS, U.S. COURT REPORTER

**MR. AVENATTI: [69]** 4/9 4/19 4/22 5/2 5/4
5/13 6/23 7/4 7/9 7/12 7/16 7/20 8/14 8/24
11/1 11/9 11/15 11/19 12/8 12/12 16/4 17/3
24/20 28/15 36/6 40/18 42/21 44/18 48/4
49/14 53/22 57/11 59/3 61/19 63/25 64/5
65/22 66/25 67/17 67/20 67/24 68/3 68/16
68/21 69/3 69/13 71/16 71/21 71/25 75/23
80/1 83/24 84/5 84/13 84/21 85/21 86/5 86/10
86/18 86/20 89/3 90/15 92/24 93/3 93/7 96/10
96/18 96/23 98/19
**MR. SAGEL: [42]** 4/5 7/8 7/25 9/14 9/19 10/9
10/23 13/1 14/1 16/25 21/24 22/6 24/18 28/13
28/20 36/3 36/9 36/11 37/15 40/15 42/18 48/1
59/1 61/16 63/23 64/3 65/19 66/23 68/24
69/21 71/14 75/21 86/15 87/14 88/4 88/1
89/13 96/15 96/21 99/11 101/20 103/5
**THE CLERK: [2]** 4/3 12/20
**THE COURT: [94]** 4/8 4/12 4/21 4/25 5/3
5/12 6/10 7/3 7/5 7/11 7/13 7/18 7/21 8/13
8/21 9/13 9/17 10/1 10/15 10/25 11/7 11/11
11/17 12/4 12/9 12/14 12/23 12/25 16/6 17/4
24/21 28/16 33/18 36/7 39/14 39/16 40/19
42/22 44/19 48/5 49/15 53/23 57/12 59/4
61/20 64/1 64/4 64/6 65/23 67/1 67/4 67/12
67/16 67/19 67/22 68/2 68/11 68/19 69/1 69/5
69/15 69/20 71/18 71/22 72/1 75/24 80/3
83/25 84/6 84/14 84/22 85/22 86/6 86/11
86/16 86/19 87/15 88/5 89/4 89/12 92/8 92/13
93/1 93/6 96/14 96/20 96/22 96/24 98/20
99/14 101/22 103/6 105/21 106/3
**THE JURY: [1]** 12/24
**THE WITNESS: [14]** 12/22 14/3 44/20 49/16
53/24 57/13 80/4 84/15 85/23 86/12 87/16
89/15 92/11 103/7

**$**
**$1,600,000 [1]** 93/12
**$1,900,000 [2]** 25/25 93/15
**$1.6 [17]** 18/20 26/17 32/18 35/11 37/14
41/10 45/2 46/16 51/17 53/24 62/15 62/23
63/2 66/6 86/2 100/20 102/17
**$1.6 million [17]** 18/20 26/17 32/18 35/11
37/14 41/10 45/2 46/16 51/17 53/24 62/15
62/23 63/2 66/6 86/2 100/20 102/17
**$100,000 [7]** 49/19 56/21 56/24 56/25 57/6
57/9 93/13
**$14,000 [1]** 37/11
**$25,000 [1]** 88/21
**$30,000 [3]** 17/12 17/19 20/6
**$33,000 [1]** 88/15
**$4,000 [2]** 56/16 60/11
**$5,000 [1]** 60/12
**$60,000 [1]** 17/16
**$8,000 [1]** 55/2

**/**
**/s [1]** 107/15

**0**
**0870 [1]** 1/21

**1**
**1-1053 [1]** 1/20
**1.4 million [1]** 6/4
**1.6 million [7]** 18/8 18/10 20/8 30/19 41/14
49/9 55/7
**10 [3]** 26/8 27/7 93/13
**1053 [1]** 1/20
**1056 [5]** 3/20 96/11 96/22 96/24 97/1
**107 [1]** 2/16
**108 [1]** 77/19
**10:29 [1]** 67/13
**10:46 [1]** 67/14
**10th [16]** 26/7 26/7 26/8 26/13 27/5 36/9
36/13 36/21 40/10 40/13 45/25 46/3 70/25
71/2 77/5 77/13
**11 [6]** 57/18 60/17 104/16 104/20 104/22
105/10

**11/15/2018 [1]** 105/14
**11:09 a.m [1]** 2/7
**11:26 p.m [1]** 64/12
**11:59 [1]** 106/4
**11th [2]** 38/8 78/3
**12 [2]** 25/24 57/19
**12/28/17 [2]** 25/1 25/4
**12th [2]** 57/21 58/10
**13 [3]** 3/6 54/16 57/19
**138 [1]** 5/21
**139 [1]** 5/21
**13th [1]** 31/6
**14 [2]** 29/25 51/18
**14,000 [2]** 37/9 37/10
**140 [1]** 5/21
**146 [1]** 104/19
**14K [3]** 29/23 37/24 38/2
**14th [4]** 43/5 59/9 60/15 60/25
**15 [4]** 1/12 9/15 31/1 67/10
**15th [8]** 14/5 14/22 28/5 28/24 32/5 33/1
104/12 105/7
**162 [1]** 39/7
**164 [1]** 38/16
**165 [1]** 38/16
**16th [2]** 60/5 60/17
**17 [3]** 3/8 25/1 25/4
**17-ish [1]** 8/5
**176 [16]** 13/6 14/2 18/23 26/23 30/23 34/25
38/15 51/18 57/18 64/18 73/15 73/16 104/16
104/20 104/22 105/10
**17th [12]** 38/19 61/14 62/3 64/10 65/10 65/17
65/21 66/2 72/8 72/20 73/11 79/2
**183391 [1]** 5/19
**19 [2]** 39/5 66/21
**19th [2]** 66/16 69/25
**1:30 [2]** 105/22 106/1
**1st [2]** 54/16 54/20

**2**
**20 [1]** 38/15
**2000s [2]** 3/8 8/22 9/6
**2004 [1]** 68/25
**2006 [7]** 8/15 9/11 10/1 10/16 68/24 69/6
69/17
**2017 [14]** 25/5 33/9 62/13 72/25 85/4 85/10
85/18 85/25 90/20 91/12 92/4 92/20 93/11
93/21
**2018 [92]** 8/19 8/25 9/3 9/5 9/11 10/7 10/10
13/10 13/11 13/12 13/15 13/20 13/24 14/5
17/10 17/12 18/20 19/2 19/24 20/20 21/10
21/9 22/13 26/7 26/17 27/5 28/11 28/24 32/19
32/20 33/9 35/22 38/8 39/19 40/10 40/13
41/23 43/5 48/10 50/10 51/22 56/11 56/17
56/23 57/5 59/9 60/25 61/2 61/24 62/3 64/10
65/10 65/17 65/21 66/2 66/16 66/21 69/25
70/9 70/25 71/12 72/19 72/20 73/11 73/20
73/24 74/3 76/6 77/5 77/17 78/16 85/5 85/10
85/19 85/25 89/22 90/6 90/10 92/18 93/13
100/8 100/19 102/9 103/13 103/22 103/25
104/3 104/7 104/10 104/13 105/7 105/14
**2019 [6]** 26/8 57/6 57/7 57/16 80/6 94/3
**2020 [1]** 26/8
**2021 [4]** 1/17 4/1 26/9 107/13
**20th [2]** 22/13 22/23
**21 [1]** 107/15
**210 [1]** 35/1
**211 [2]** 35/1 35/7
**213 [1]** 2/8
**222 [8]** 3/8 16/11 16/15 16/16 16/17 16/19
17/1 17/6
**224 [2]** 16/14 21/3
**225 [2]** 22/5 22/6
**228 [6]** 3/9 24/5 24/7 24/19 24/21 24/22
**229 [6]** 3/9 28/2 28/4 28/14 28/19 33/22
**22nd [7]** 14/15 14/24 28/5 33/22 35/5 48/10
77/17
**23 [2]** 34/25 98/23
**230 [6]** 3/10 35/19 36/4 36/18 37/18 37/20
**231 [5]** 3/10 40/7 40/16 40/19 40/21

**232 [6]** 3/11 42/11 42/13 42/19 42/22 42/24
**233 [6]** 3/11 47/7 47/9 47/11 47/13 47/14
**235 [7]** 19/23 19/23 37/16 38/7 56/10
**236 [6]** 3/12 58/16 58/18 59/2 59/4 59/6
**237 [9]** 3/12 61/7 61/9 61/11 61/17 61/20
61/22 72/8 78/24
**238 [6]** 3/13 63/15 63/17 63/24 64/6 64/7
**239 [4]** 3/13 65/20 65/23 65/24
**23rd [1]** 35/7
**24 [1]** 3/9
**240 [1]** 32/23
**243 [1]** 31/2
**244 [2]** 31/2 31/6
**24th [2]** 35/7 94/3
**25 [2]** 27/1 31/3
**250 [9]** 3/15 75/2 75/4 75/6 75/11 75/22 76/1
76/3 79/3
**252 [2]** 27/3 27/7
**253 [3]** 27/3 27/7 27/7
**256 [7]** 3/14 66/11 66/13 66/24 67/1 67/3
69/24
**257 [5]** 3/14 71/6 71/8 71/15 72/3
**25th [4]** 17/10 17/12 18/22 73/20
**26th [1]** 73/20
**27 [1]** 19/16
**27,000 [1]** 44/7
**270,000 [1]** 5/15
**27K [2]** 43/21 50/14
**27th [3]** 18/24 19/2 19/24
**28 [4]** 3/9 62/13 90/20 107/7
**28th [9]** 51/22 72/25 91/12 91/18 92/2 92/4
92/20 93/11 93/21
**29 [1]** 21/9
**29th [1]** 21/14
**2:00 [1]** 73/20
**2:16 p.m [1]** 36/14
**2nd [1]** 55/12

**3**
**30,000 [2]** 18/5 20/3
**30th [3]** 53/1 53/5 76/6
**312 [1]** 2/7
**32 [1]** 18/24
**33 [1]** 14/1
**338-3598 [1]** 2/12
**34 [1]** 55/12
**3598 [1]** 2/12
**36 [1]** 3/10
**37 [1]** 55/9
**370 [1]** 19/16
**371 [1]** 19/16
**372 [1]** 19/11
**373 [2]** 18/24 19/1
**382 [1]** 14/14
**39 [2]** 54/17 54/25
**397 [2]** 14/5 14/7
**3rd [3]** 71/12 72/5 72/14

**4**
**40 [3]** 3/10 54/19 54/19
**403 [11]** 8/9 10/18 53/22 71/17 71/18 83/24
84/5 85/21 86/5 86/10 89/13
**411 [2]** 1/20 2/11
**43 [1]** 3/11
**454780 [1]** 5/20
**46 [1]** 73/8
**47 [5]** 54/6 54/6 104/16 104/20 104/22
**48 [3]** 3/11 54/6 54/6
**481-4900 [1]** 2/17
**4900 [1]** 2/17
**4:53 p.m [1]** 60/25
**4K [1]** 59/25
**4th [1]** 1/20

**5**
**51 [2]** 53/1 53/4
**54 [1]** 95/8
**543-0870 [1]** 1/21
**55 [1]** 95/8

**5**

**58** [1] 51/19
**59** [1] 3/12
**5th** [2] 56/11 105/18

**6**

**6,000** [1] 38/11
**608** [1] 89/3
**609** [3] 8/7 9/25 89/1
**61** [1] 3/12
**610** [2] 73/18 73/22
**629** [1] 6/18
**64** [1] 3/13
**643** [3] 4/20 4/21 5/6
**644** [1] 6/20
**645** [2] 4/13 4/17
**65** [1] 3/13
**6683** [1] 2/8
**67** [1] 3/14
**6:00 this** [1] 7/2
**6th** [1] 76/21

**7**

**714** [2] 1/21 2/12
**72** [1] 3/14
**753** [1] 107/6
**76** [1] 3/15

**8**

**8,000** [4] 44/6 55/5 56/4 56/9
**8/6/21** [1] 107/15
**80,000** [3] 29/23 30/3 30/4
**80,000K** [1] 31/10
**8000** [1] 2/11
**80K** [1] 30/1
**86** [1] 3/6
**894-6683** [1] 2/8
**8:00** [1] 31/25
**8:30** [1] 4/1
**8:42** [1] 12/15
**8K** [8] 43/19 43/22 43/23 50/13 52/3 55/1 55/9 59/25
**8th** [2] 57/20 57/23

**9**

**9/19** [1] 39/5
**9/19 you** [1] 39/4
**90012** [1] 2/8
**92672** [1] 2/16
**92701** [2] 1/20 2/11
**949** [1] 2/17
**97** [1] 3/20
**9:04** [1] 12/16
**9:16** [2] 92/16 96/5
**9:25 a.m** [2] 92/16 96/6

**A**

**a.m** [13] 4/1 12/15 12/16 31/25 34/7 67/13 67/14 73/20 92/16 92/16 96/5 96/6 106/4
**ability** [6] 49/4 49/22 49/24 50/1 50/5 50/6
**able** [3] 9/10 57/2 74/24
**about** [68] 5/1 5/10 6/1 8/5 8/22 10/7 13/21 14/12 20/9 20/10 22/16 29/16 31/20 33/10 33/23 35/9 37/5 39/8 39/18 41/15 43/10 44/2 47/7 47/8 47/21 49/12 50/15 52/21 52/24 54/14 54/15 56/24 65/4 66/6 68/6 68/8 68/9 68/9 69/4 70/22 73/2 73/19 73/24 74/1 74/10 76/23 78/1 78/18 79/15 80/9 80/16 80/17 80/21 81/20 83/18 83/23 84/2 84/24 90/19 91/15 95/23 98/8 99/17 100/3 100/7 100/18 102/17 104/17
**above** [4] 19/10 36/14 54/1 107/9
**above-entitled** [1] 107/9
**abruptly** [2] 78/13 102/4
**absent** [1] 11/20
**accepting** [1] 29/6
**accordance** [1] 9/22
**according** [6] 19/23 101/19 102/1 102/5 102/9 102/13
**account** [5] 18/5 35/12 55/1 55/2 79/9
**accounting** [5] 62/24 63/7 63/7 73/3 73/9
**accounts** [1] 19/25
**accurate** [12] 16/22 28/10 47/6 42/15 47/23 58/23 61/13 63/20 65/16 71/11 75/17 103/2
**accuse** [1] 41/23 99/19
**accused** [5] 41/25 42/2 98/4 98/16 98/17
**accusing** [1] 98/2
**across** [1] 101/11
**act** [1] 9/22
**acting** [1] 9/20
**action** [9] 43/3 45/4 45/18 50/18 77/19 77/21 79/8 99/3 99/7
**actions** [1] 77/24
**actual** [1] 6/8
**actually** [5] 18/12 37/18 54/6 54/19 73/18
**addition** [4] 24/9 65/5 74/23 84/8
**additional** [3] 8/24 60/4 93/13
**addressed** [1] 68/14
**admission** [1] 36/5
**admit** [13] 24/19 28/13 36/4 40/16 42/19 48/2 59/1 61/17 63/23 65/20 66/23 71/14 75/21
**admonition** [2] 67/6 105/23
**advance** [9] 18/5 18/7 18/8 19/9 20/8 37/12 37/13 55/7 56/8
**advice** [3] 32/8 32/16 80/18
**advised** [1] 62/14
**advising** [1] 72/21
**advisor** [1] 86/13
**advisory** [2] 2/15 4/10
**afoul** [1] 11/22 12/2 68/17
**after** [37] 6/24 15/23 16/3 16/9 19/17 20/9 21/18 22/16 30/17 33/4 34/22 35/3 37/21 44/3 48/15 51/8 53/11 54/1 54/8 59/12 63/12 63/17 63/21 64/19 70/16 70/18 77/7 77/10 78/3 78/19 78/21 80/12 91/6 102/1 102/9 103/9
**afternoon** [2] 27/18 58/13
**again** [9] 29/8 33/9 34/10 38/24 43/25 55/1
**against** [8] 80/7 80/13 80/20 98/13 99/4
**age** [1] 69/8
**agency** [1] 36/5
**agent** [3] 4/7 27/9 37/15
**ago** [2] 8/5 9/15
**agree** [2] 7/16 74/14
**agreed** [1] 87/4
**agreement** [60] 20/11 20/12 20/16 20/20 21/1 21/12 21/16 21/21 22/22 23/9 23/12 23/18 23/21 24/1 24/12 24/16 25/7 25/14 26/4 26/11 26/13 26/16 33/10 44/6 49/3 49/13 49/17 49/18 51/10 62/6 62/12 62/13 62/16 62/20 62/21 62/24 64/8 70/14 70/19 70/22 70/24 72/10 72/12 72/24 72/25 73/3 74/4 74/16 77/10 79/9 85/4 85/13 92/5 92/10 92/12 92/17 92/22 93/10 93/20 95/25
**agreements** [4] 33/14 79/5 79/11 79/23
**Ahmed** [7] 45/15 45/16 46/20 81/11 98/4 99/5 99/18
**al** [1] 77/14
**ALEXANDER** [2] 2/5 4/6
**Alki** [1] 83/18
**all** [52] 9/1 10/13 12/4 12/14 35/18 38/22 50/23 65/4 68/14 68/18 68/23 70/4 73/18 74/19 80/16 87/13 87/16 97/12 99/4 99/6 105/12 105/14
**allegations** [4] 9/6 10/13 99/22 99/23
**allow** [1] 47/3
**alone** [1] 13/18
**already** [7] 21/4 22/6 26/16 50/6 66/9 74/4 77/18
**also** [10] 36/1 51/2 65/6 65/10 90/6 98/3 98/12 98/13 99/12 102/9
**always** [3] 38/3 60/9 97/13
**am** [16] 29/12 29/15 31/10 34/7 39/7 43/19 43/22 43/23 49/2 50/13 51/1 52/3 52/7 53/6 59/14 76/12
**Ambiguous** [1] 92/8
**AMERICA** [3] 1/9 4/4 19/25
**amount** [3] 38/3 79/7 79/13
**amounts** [1] 60/8
**Angeles** [2] 2/8 14/19
**Angry** [1] 42/10
**another** [13] 22/17 31/13 33/25 36/14 49/2 49/7 52/6 58/10 66/13 74/1 76/22 77/4 99/9
**answer** [4] 87/18 87/23 88/2 91/2
**answered** [2] 49/14 88/4 95/17
**answers** [3] 87/13 87/13 91/7
**anticipate** [1] 67/25
**any** [38] 9/22 10/19 11/13 13/20 16/2 34/20 43/10 46/24 50/24 51/10 52/4 54/3 62/20 66/5 67/7 67/9 68/22 69/10 70/5 71/19 73/24 74/19 74/23 79/18 80/9 81/14 85/3 85/11 87/22 87/24 89/7 96/7 96/14 103/21 103/24 104/2 105/24 105/25
**Anybody** [1] 81/12
**anyone** [3] 67/7 89/7 105/23
**anything** [6] 4/18 7/23 10/21 12/11 41/17 80/21
**anytime** [1] 46/6
**anywhere** [3] 56/2 79/22 79/24
**apart** [1] 98/2
**apologize** [1] 33/7
**appear** [2] 97/10 99/20
**APPEARANCES** [1] 2/1
**applied** [1] 87/12
**approach** [3] 92/24 93/1 98/19
**appropriate** [2] 12/9 69/9
**approximately** [2] 47/20 47/24
**arbitrations** [1] 46/12
**Arden** [10] 81/11 81/22 98/4 98/12 99/6 99/18 101/3 101/10 101/17 102/13
**Arden's** [2] 101/7 102/2
**are** [62] 4/20 4/21 5/9 12/10 12/20 12/20 14/20 19/20 21/19 22/23 25/22 26/4 27/4 27/21 29/8 30/1 31/18 32/9 32/14 35/9 36/11 36/15 43/9 44/2 44/6 45/1 45/6 45/9 46/10 46/11 47/4 47/12 48/22 49/6 49/6 49/23 50/18 52/10 52/10 52/11 53/20 54/23 55/1 58/5 60/8 60/24 61/25 64/3 73/5 75/17 76/11 78/21 82/13 89/19 97/6 97/8 97/9 97/14 99/6 99/8 101/24 103/2
**aren't** [3] 10/13 46/7 99/7
**Argumentative** [2] 87/14 103/5
**around** [5] 24/2 41/4 41/22 68/22 79/2
**around 8K to** [1] 41/4
**as** [51] 3/20 4/10 4/11 7/21 9/11 9/11 11/4 11/7 12/2 12/4 12/4 18/5 25/19 26/1 33/5 34/14 36/5 37/3 37/11 41/22 42/1 44/15 49/16 50/13 52/2 52/2 56/8 59/12 66/3 68/4 75/15 75/15 76/9 76/9 77/15 78/15 80/17 87/22 93/21 94/2 94/7 94/7 96/16 96/16 98/16 96/17 97/1 103/1 103/1 103/2 103/2
**ASAP** [3] 43/20 50/13 65/4
**ask** [24] 13/9 20/16 25/17 33/7 38/2 41/23 42/4 44/3 44/10 44/15 45/9 47/3 60/12 62/19 62/24 65/21 68/11 70/17 77/25 81/1 81/7 91/14 96/1 100/7
**asked** [23] 17/15 17/19 18/2 20/14 20/19 20/25 49/14 60/9 68/8 68/9 73/1 73/5 81/8 88/4 90/19 91/1 95/12 95/22 98/8 99/17 100/2 104/17
**asking** [12] 11/17 11/18 19/8 23/5 34/17 51/2 52/16 56/4 64/3 64/4 95/9 103/11
**Assistant** [3] 2/4 2/6 2/10
**Assumes** [1] 101/21
**assuming** [4] 10/10 11/2 12/9 39/10
**attached** [4] 4/17 5/6 77/15 77/21 93/21 94/10
**attachment** [1] 96/19
**attention** [2] 73/15 93/4
**attestation** [1] 96/19
**attorney** [10] 2/3 2/4 2/6 2/10 46/13 70/5 75/10 75/10 81/25 82/3
**attorneys** [15] 63/18 63/21 64/22 66/8 70/6 70/11 70/14 70/17 70/19 70/23 72/15 78/21 81/4 81/9 81/14
**Audio** [1] 65/25
**August** [18] 1/17 4/1 27/5 27/7 28/5 28/5

**A**

**August... [12]** 28/11 28/24 31/1 31/6 32/5
33/9 33/13 33/22 35/5 35/7 105/18 107/13
**August 10 [1]** 27/7
**August 10th [1]** 27/5
**August 13th [1]** 31/6
**August 15 [1]** 31/1
**August 15th [4]** 28/5 28/24 32/5 33/1
**August 22nd [3]** 28/5 33/22 35/5
**August 24th [1]** 35/7
**August 5th [1]** 105/18
**authenticity [1]** 71/23
**authorize [4]** 71/3 82/24 83/10 83/14
**authorized [3]** 71/8 71/23 73/8
**AVENATTI [31]** 1/11 2/14 4/4 4/10 4/18 6/22
8/13 10/25 18/19 20/5 20/18 21/2 23/22 33/15
33/20 45/12 45/17 46/5 46/23 52/19 54/24
64/4 67/16 81/9 81/13 81/15 81/22 86/16 88/6
100/9 101/2
**Avenatti's [3]** 6/17 28/16 75/24
**Avenida [1]** 2/16
**avoid [2]** 102/10 102/14
**aware [3]** 81/4 81/16 91/1

**B**

**back [26]** 8/4 9/6 18/22 19/10 21/23 22/21
24/24 26/23 29/24 30/23 31/1 31/23 33/2
33/22 34/18 35/4 37/22 38/19 50/3 63/10
73/15 73/18 83/19 84/19 90/18 103/14
**background [1]** 9/1
**bad [5]** 29/16 32/8 51/9 59/15 59/20
**Bakery [1]** 83/18
**balance [3]** 69/7 70/5 70/13
**balancing [2]** 8/9 10/18
**bank [2]** 19/25 88/3
**BARELA [35]** 3/5 4/15 8/14 12/18 13/4 17/22
22/21 25/24 26/1 28/17 29/4 33/7 34/11 36/15
59/11 62/6 62/10 62/12 62/14 62/21 68/6
69/23 72/10 72/12 72/22 72/24 74/5 78/12
86/23 88/8 88/15 89/6 95/5 97/3 103/1
**Barela's [6]** 7/5 7/22 8/3 73/10 79/8 79/13
**barely [2]** 13/18 60/3
**Baristas [3]** 83/5 83/7 83/12
**Based [1]** 25/18
**basically [3]** 50/20 52/12 91/19
**basis [2]** 20/6 64/1 71/20
**Bass [2]** 82/12 83/1
**Bates [4]** 5/8 5/14 5/23 5/24
**be [66]** 4/20 6/13 6/21 6/24 7/14 8/6 8/10 9/8
9/10 9/24 11/5 11/7 12/14 16/13 17/4 18/17
24/21 26/7 26/7 26/8 28/16 28/17 29/12 32/9
32/11 34/2 34/17 38/23 39/3 40/19 42/22 45/4
45/22 47/3 47/14 48/6 50/2 51/9 53/9 53/18
57/2 57/7 59/4 61/20 64/6 65/23 67/1 67/10
70/4 70/6 73/25 74/11 74/14 74/17 74/23
75/24 75/25 79/16 83/7 85/1 87/19 91/8 96/24
97/24 101/18 106/3
**Beada [2]** 81/23 82/25
**beat [1]** 80/14
**because [42]** 5/4 10/19 11/19 15/12 18/21
21/20 22/1 22/24 22/22 30/13 30/18 31/19
31/22 34/18 38/3 39/24 42/3 43/14 43/24
44/14 44/25 46/4 47/14 49/18 49/25 50/6 55/3
56/1 60/2 60/9 60/14 67/25 74/20 76/25 80/18
80/22 81/7 84/18 86/12 95/18 102/5 102/16
**become [1]** 13/23
**been [24]** 6/6 6/8 8/6 11/3 11/4 11/21 32/16
46/19 46/22 47/1 49/25 51/2 59/15 59/20 62/9
62/14 69/11 78/10 78/11 87/11 92/17 97/20
100/20 102/17
**before [18]** 4/22 5/10 6/8 8/1 22/20 23/11
24/3 32/1 49/16 50/21 58/3 67/24 68/1 86/25
87/4 92/17 96/6 98/24
**began [1]** 87/1
**begin [2]** 67/24 86/18
**beginning [3]** 30/14 36/2 84/16
**behalf [2]** 4/6 84/19
**behind [2]** 99/22 99/24
**being [5]** 29/6 32/13 34/18 68/16 90/13

**believe [18]** 4/19 6/10 8/15 9/10 9/25 10/2
100/13 100/19 102/8 102/19 103/14
**believed [2]** 58/7 86/12
**below [1]** 78/16
**bench [1]** 4/23
**best [5]** 37/24 49/5 49/22 50/9 80/1
**between [14]** 12/12 14/22 27/4 28/4 28/11
35/21 43/21 52/23 60/5 91/18 91/24 92/15
96/5 103/22
**big [5]** 29/4 29/5 31/9 34/11 34/15
**bigger [1]** 52/4 55/4
**bills [7]** 13/18 30/5 40/1 44/8 52/13 59/18
59/23
**bit [3]** 19/4 19/6 32/1
**board [3]** 79/6 79/11 79/16
**body [2]** 29/10 62/9
**books [1]** 76/18
**borrowed [5]** 29/23 30/1 30/9 44/9 56/1
**borrowing [1]** 31/10
**both [7]** 9/6 9/7 9/7 10/10 10/12 75/14 92/3
**bother [1]** 60/21
**bottom [7]** 21/7 22/9 28/20 36/11 61/11 76/5
77/3
**box [2]** 67/18 67/21
**Boyd [4]** 45/6 46/10 46/12 50/19
**Brader [2]** 82/8 82/25
**BRANDON [1]** 2/4
**breach [1]** 51/9
**break [4]** 67/4 68/1 103/10 105/21
**BRETT [2]** 2/9 4/5
**briefly [4]** 4/19 7/25
**bring [1]** 69/18
**Brock [71]** 18/10 18/11 18/14 21/12 21/16
22/21 25/11 25/25 26/6 26/16 29/22 30/14
30/16 32/18 34/16 37/14 39/20 41/2
41/8 41/14 41/24 43/25 44/25 45/3 45/10
46/13 46/13 49/3 50/17 50/24 52/8 53/13
53/19 57/15 59/11 59/13 62/6 62/12 62/15
62/17 62/22 63/2 63/5 70/17 70/20 70/23
72/10 72/12 72/15 72/17 72/25 74/5 74/24
77/8 79/20 79/24 81/5 81/10 81/15 82/1 82/6
82/10 82/15 82/21 83/11 83/15 84/25 85/6
85/19 92/22
**Brock's [1]** 57/7
**brother [4]** 33/3 33/6 35/18 80/23
**Building [1]** 2/10
**burner [1]** 34/18
**business [8]** 9/20 15/21 15/25 27/23 29/19
29/21 47/10 59/19
**businesses [1]** 34/20
**busy [4]** 19/19 34/1 34/21 48/17
**button [2]** 53/14 53/20

**C**

**CA [4]** 1/20 2/8 2/11 2/16
**CALIFORNIA [6]** 1/5 1/16 4/1 8/17 94/1 94/3
**call [10]** 29/15 35/4 48/16 55/11 64/16 64/16
65/2 65/4 101/17 102/21
**called [6]** 15/3 43/17 80/23 86/25 90/6 90/9
**calls [6]** 57/11 78/14 84/13 99/11 101/20
103/22
**came [4]** 23/24 41/17 91/11 100/8
**can [43]** 8/9 12/1 12/6 14/1 19/4 19/19 23/20
24/5 24/9 25/17 25/23 27/11 32/8 32/21 34/1
34/1 34/16 38/7 39/9 41/4 41/5 45/7 46/14
46/17 48/14 48/23 50/24 50/25 52/8 55/8
55/19 58/3 58/3 78/9 88/3 92/24 95/10 95/11
98/18 98/19 104/21 105/12 105/13
**can't [5]** 6/3 8/2 48/23 49/17 86/14
**capacity [1]** 9/21
**capital [2]** 44/9 59/19
**cards [2]** 40/2 52/14
**care [1]** 35/9
**career [1]** 80/14
**careful [1]** 68/17
**Carlos [1]** 4/7
**carry [1]** 51/17

**Carthey [1]** 90/7
**case [14]** 4/9 10/10 18/2 22/7 22/9 67/8
70/4 84/8 84/20 84/24 90/6 100/12 105/23
105/24
**cash [2]** 52/2 60/22
**cashier's [2]** 56/11 56/14
**caught [2]** 27/9 40/1
**cause [1]** 99/3
**caused [1]** 11/25
**cautious [2]** 42/3
**cc [1]** 16/20
**cc'd [2]** 36/23 76/11
**Cefali [1]** 4/11
**cell [1]** 64/16
**CENTRAL [1]** 1/5
**certain [2]** 7/12 84/16
**certificate [2]** 77/15 107/4
**CERTIFIED [1]** 1/9
**certify [1]** 107/6
**chain [5]** 28/4 28/10 34/10 35/21 75/6
**changed [1]** 97/14
**chapter [1]** 9/22
**charge [1]** 85/15
**charges [2]** 8/19 9/11
**chart [2]** 105/2 105/12
**chat [2]** 34/7 53/6
**check [2]** 56/12 56/15
**Checking [2]** 54/3 54/9
**Chicago [2]** 57/24 58/11
**chickens [1]** 44/1
**Chief [1]** 2/5
**Christmas [2]** 91/19 91/24
**Circuit [1]** 6/19
**claim [4]** 100/4 101/13 101/15 102/16
**claimed [5]** 98/12 100/8 100/14 101/5 103/11
**claims [1]** 102/20
**clarification [1]** 78/7
**Clarify [2]** 89/4 92/8
**clear [2]** 101/24 101/25
**clearly [1]** 68/13
**Clemente [1]** 2/16
**clerk [3]** 4/23 5/6 87/1
**client [8]** 72/22 73/12 76/14 76/23 77/1 88/9
88/10 88/19
**close [1]** 91/24
**closed [2]** 6/10 91/15
**closely [1]** 10/11
**closest [2]** 23/24 86/13
**Coblentz [3]** 82/12 82/13 82/25
**Code [1]** 107/7
**coffee [2]** 83/9 83/15
**collect [11]** 32/17 41/10 41/14 49/4 49/22
49/25 50/1 50/5 50/6 62/10 72/23
**collected [2]** 37/14 51/17
**collecting [1]** 31/22
**collection [6]** 18/16 34/19 39/20 46/16 49/9
53/24
**come [9]** 6/10 22/25 23/8 31/1 41/24 50/25
79/19 84/4 90/18
**coming [1]** 10/10
**committed [1]** 98/13
**committing [1]** 98/2 98/5
**communicating [4]** 78/13 78/17 78/19 78/19
**communications [1]** 81/20
**company [8]** 13/19 15/4 30/5 47/15 79/7
79/12 88/12 90/11
**complaint [2]** 80/7 80/13
**completed [1]** 43/9
**completion [1]** 34/19
**compliance [1]** 6/18
**complies [12]** 13/8 24/11 35/20 40/8 51/20
58/17 61/8 63/16 66/12 71/7 75/3 78/25
**conceded [1]** 8/21
**concerned [3]** 12/4 52/3 103/2
**concerning [1]** 62/25
**conclusion [4]** 7/5 7/9 7/22 99/12
**condition [1]** 83/23 84/3
**conference [5]** 23/23 101/8 102/2 102/21
107/11

**C**

**confidential [7]** 49/17 51/9 62/5 62/11 72/9 72/17 72/24
**confiding [1]** 83/22
**confirmation [1]** 62/17
**conformance [1]** 107/10
**confusing [1]** 81/8
**congratulated [1]** 100/15
**Conjecture [1]** 84/13
**connection [8]** 8/25 62/10 72/22 89/24 98/3 98/5 98/11 98/13
**constantly [1]** 39/21
**contact [1]** 102/14
**content [2]** 28/18 76/1
**contest [1]** 10/14
**continue [3]** 15/24 56/17 59/18
**Continued [2]** 3/6 13/2
**contracting [4]** 8/16 15/4 15/4 15/17
**contractor [2]** 9/21 10/5
**conversation [1]** 101/6
**conversion [4]** 99/1 99/3 99/9 99/19
**convicted [5]** 8/6 8/15 8/18 89/19 89/21
**conviction [14]** 8/3 8/12 8/23 10/2 10/7 10/8 10/17 68/5 68/6 68/7 68/25 69/6 69/17 80/22
**convictions [3]** 9/12 10/10 16/9
**copies [2]** 50/23 75/17
**copy [36]** 4/17 16/22 20/10 20/12 20/16 20/20 21/1 21/20 21/23 23/1 23/3 23/9 23/12 24/15 26/15 28/10 40/12 42/15 46/17 46/20 46/25 47/23 58/23 61/13 62/20 63/20 65/12 71/11 92/5 92/9 92/11 92/17 92/21 93/19 95/18 95/24
**corner [5]** 5/8 95/3 97/3 97/5 97/15
**corporate [5]** 75/10 75/10 76/19 77/23 78/10
**Corporation [1]** 77/20
**corporations [1]** 74/21
**correct [58]** 4/21 9/19 11/2 11/6 17/16 17/17 24/15 27/5 28/8 29/1 29/2 34/2 39/12 50/22 56/5 56/6 60/6 60/7 62/7 62/8 62/20 66/20 70/7 70/8 72/6 73/3 73/4 74/5 74/6 75/12 75/13 77/2 77/5 77/8 77/9 77/11 78/1 78/2 78/23 87/21 88/22 90/5 91/5 91/9 91/10 93/19 94/2 94/19 100/17 101/4 101/9 101/14 101/15 101/16 102/11 102/14 102/24 107/8
**correctly [5]** 93/16 93/23 95/20 96/3 103/11
**cost [1]** 49/19
**costs [2]** 63/5 85/11
**could [49]** 5/17 6/5 13/6 13/18 16/11 21/3 21/13 21/15 23/1 23/16 25/18 26/23 27/3 28/2 30/23 34/25 36/20 38/15 40/6 42/4 42/11 43/16 43/20 47/16 49/19 50/2 50/3 51/9 51/11 51/14 51/18 54/16 56/10 56/25 57/5 57/18 58/16 61/7 69/11 75/2 79/3 85/15 91/16 96/1 96/17 102/10 104/13 104/24
**couldn't [3]** 59/23 86/13 105/7
**counsel [9]** 2/1 2/15 4/7 4/10 58/8 70/16 70/18 76/19 77/7
**count [1]** 44/1
**County [1]** 15/2
**couple [7]** 4/23 4/24 31/24 35/24 35/25 36/1 78/7
**course [14]** 13/22 26/20 32/22 35/13 39/22 41/21 42/7 43/12 56/19 57/17 66/10 75/1 83/17 85/17
**court [17]** 1/4 9/1 11/3 11/21 11/23 27/12 27/19 29/11 30/17 31/10 31/25 45/13 45/14 69/11 84/19 91/3 107/16
**Courthouse [2]** 1/19 2/7
**courtroom [4]** 33/11 33/16 67/23 94/8
**Courts [1]** 102/24
**covered [2]** 60/3 78/16
**crap [1]** 31/11
**create [1]** 80/18
**credit [4]** 40/2 44/8 52/14 59/19
**crime [6]** 8/8 8/16 9/15 10/2 10/16 10/17
**crimes [6]** 15/6 15/9 15/15 15/16 15/23 33/4
**criminal [5]** 2/5 14/19 14/23 68/5 80/14
**cross [6]** 3/4 3/16 67/25 68/14 68/20 86/21
**cross-examination [2]** 67/25 86/21

**cross-examine [1]** 68/20
**Cummings [1]** 1/8
**current [1]** 41/4
**currently [1]** 89/20
**custom [4]** 97/18 97/20 104/7 104/9
**customer [1]** 88/12

**D**

**D.A [1]** 27/22
**date [14]** 17/8 22/12 28/21 28/23 31/10 43/4 59/8 64/9 64/13 77/20 92/10 94/2 105/14 107/13
**dated [3]** 36/8 62/3 66/16
**dates [6]** 26/4 26/12 46/7 60/8 70/25 93/14
**David [6]** 45/7 46/11 46/13 50/19
**day [14]** 1/12 8/1 24/13 24/16 29/4 29/6 29/11 31/13 34/11 55/19 55/22 71/1 94/3
**days [4]** 47/20 47/24 50/15 58/14
**deal [11]** 15/13 27/13 27/20 27/22 29/7 30/7 50/2 52/7 52/17 52/18 52/20
**dealing [5]** 16/3 45/6 46/10 50/18 74/20
**deals [2]** 73/25 74/11
**DEAN [2]** 2/15 2/15 4/10
**December [28]** 20/10 25/5 25/21 33/9 45/5 45/22 62/13 71/4 71/12 72/5 72/14 72/25 76/21 77/5 77/13 78/3 85/4 85/10 85/18 85/25 90/20 91/12 91/18 92/2 92/4 92/20 93/11 93/21
**December 10th [2]** 77/5 77/13
**December 11th [1]** 78/3
**December 2017 [4]** 85/4 85/10 85/18 85/25
**December 28 [2]** 62/13 90/20
**December 28th [7]** 72/25 91/12 92/2 92/4 92/20 93/11 93/21
**December 3rd [3]** 71/12 72/5 72/14
**December 6th [1]** 76/21
**decisions [2]** 58/4 58/6
**declaration [1]** 93/21
**declared [1]** 93/25
**deep [4]** 52/2 52/3 52/11 60/22
**defendant [191]**
**defendant's [7]** 25/13 58/20 58/24 65/16 75/15 75/18 79/22
**defendants [2]** 99/4 99/7
**defense [5]** 3/16 3/18 14/19 14/23 96/11
**defrauded [4]** 88/15 88/21 88/24 89/7
**defrauding [1]** 89/6
**Delaware [2]** 77/16 77/20
**Denied [1]** 84/22
**Dennis [2]** 82/8 82/25
**describe [3]** 23/20 42/8 55/6
**described [1]** 42/1
**describing [1]** 83/21
**desperately [1]** 52/7
**despite [1]** 102/12
**details [8]** 27/13 27/21 68/5 68/9 76/16 102/6 103/1 103/9
**determine [1]** 6/14
**did [203]**
**didn't [17]** 10/11 11/15 17/20 42/7 49/24 52/13 56/2 60/12 67/17 67/20 68/17 68/21 84/16 92/18 94/4 94/8 103/16
**Diego [13]** 14/13 15/2 27/23 29/7 29/16 30/6 31/22 33/5 38/22 68/6 88/9 88/11 88/25
**different [10]** 13/23 16/12 61/5 61/25 70/18 70/19 70/22 81/1 81/7 89/3
**dig [1]** 48/20
**digits [1]** 5/9
**Dillanos [1]** 83/15
**Dire [1]** 13/16
**direct [13]** 3/4 3/16 7/9 13/2 68/12 68/15 68/20 69/15 87/11 87/19 90/19 95/10 103/3
**directing [1]** 93/25
**direction [2]** 58/21 58/24
**discovery [1]** 11/4
**discuss [12]** 5/1 27/13 27/21 43/7 43/8 45/7 46/14 48/22 49/10 56/17 67/6 105/23
**discussed [8]** 7/6 15/22 29/18 37/3 38/6 50/13 59/12 69/12

**discussing [2]** 29/8 101/12
**discussion [6]** 13/13 16/5/17 28/17 25/23/11 37/5
**discussions [2]** 13/21 43/10
**dishonesty [5]** 8/8 9/7 9/15 9/23 9/24
**disrespect [1]** 68/22
**DISTRICT [2]** 1/4 1/5
**diversion [4]** 8/20 15/3 15/17 89/22
**DIVISION [2]** 1/6 2/5
**do [129]**
**docket [2]** 4/13 4/17
**document [23]** 11/12 12/6 21/18 24/3 25/13 25/20 66/18 71/23 93/2 93/9 94/2 94/10 96/15 97/4 97/11 97/16 97/21 98/21 98/23 99/16 99/22 99/25 105/3
**documentation [1]** 78/1
**documents [18]** 4/23 5/5 5/21 5/24 11/20 12/1 12/2 23/25 78/10 78/12 78/15 79/5 79/11 79/23 81/2 84/17 84/17 84/18
**does [18]** 7/23 9/24 11/12 33/1 37/11 44/4 44/5 51/25 52/1 53/4 54/8 76/21 79/1 79/9 79/23 99/16 104/23 105/6
**doesn't [3]** 9/22 10/19 38/24
**doing [7]** 32/9 32/14 32/20 35/9 35/15 41/9 99/13
**dollar [2]** 46/1 60/8
**dollars [1]** 57/3
**don't [27]** 5/2 5/3 6/1 8/9 10/2 11/7 11/22 12/1 39/3 43/25 48/19 51/13 69/9 70/14 70/10 81/24 84/15 85/16 89/18 90/8 90/8 90/10 90/11 90/13 103/14 104/5 104/6
**done [9]** 27/13 27/20 34/1 35/9 35/10 46/20 50/24 53/13 53/19
**door [2]** 23/25 68/4 91/16
**down [11]** 33/23 34/8 38/5 48/24 53/12 53/16 67/12 68/5 91/3 92/16 103/10
**drawing [1]** 105/15
**due [8]** 18/10 18/20 57/7 62/11 62/16 70/25 71/1 72/23
**Duffy [2]** 82/12 83/1
**during [6]** 6/15 68/14 85/9 86/8 87/11 101/6

**E**

**e-mail [92]** 16/19 16/22 17/9 17/15 17/21 17/23 18/22 21/7 21/9 21/13 21/19 21/22 21/23 22/3 22/9 22/9 22/12 22/14 22/16 22/17 22/23 28/4 28/8 28/10 28/16 28/23 28/25 29/11 30/25 31/1 31/23 32/8 33/25 34/4 34/10 35/21 36/7 36/13 36/20 36/23 37/22 40/9 40/12 40/23 42/13 42/15 43/2 43/7 46/6 47/3 47/19 47/20 47/23 48/9 48/14 48/20 50/25 58/18 58/20 58/23 59/8 60/15 60/22 60/24 60/25 63/7 63/17 63/20 64/9 64/15 65/5 66/14 66/21 69/25 71/8 71/12 75/6 75/7 75/24 76/5 76/8 76/17 76/22 77/4 77/12 77/12 77/24 77/25 78/6 79/22 104/15
**e-mail or [1]** 66/13
**e-mailed [1]** 63/8
**e-mails [18]** 28/7 34/23 35/24 36/1 36/1 36/4 36/16 47/5 61/2 63/12 65/5 75/11 75/14 75/17 75/25 78/3 83/20 104/2
**each [6]** 38/6 39/10 75/14 97/10 97/13 98/16
**Eagan [4]** 81/9 81/15 100/9 101/2
**Eamonn [1]** 88/18
**earlier [5]** 41/18 50/15 88/3 92/15 96/5
**early [2]** 8/8 8/22
**easier [1]** 19/22
**Ed [2]** 80/24 81/2
**Edward [1]** 82/24
**efforts [3]** 62/10 72/23 100/4
**eight [5]** 31/14 32/1 47/20 47/24 50/15
**Eighteen [1]** 90/1
**eighth [1]** 95/2
**either [2]** 8/1 87/23
**elderly [4]** 88/14 88/20 88/24 89/12
**element [1]** 10/3
**elements [1]** 9/23
**elmo [1]** 93/7
**else [4]** 10/21 12/11 81/12 89/7

**E**

**end** [2] 44/7 60/5
**engage** [1] 9/20
**engaged** [1] 62/9
**engagement** [1] 72/21
**enough** [1] 10/11
**entire** [1] 86/8
**entitled** [5] 68/14 79/24 85/6 85/12 107/9
**entity** [1] 74/18
**equity** [3] 74/13 74/22 83/8
**especially** [1] 8/10
**espouse** [1] 7/14
**established** [1] 6/11
**et** [1] 77/14
**even** [3] 10/13 52/14 52/20
**evening** [1] 7/2
**event** [2] 62/22 102/21
**events** [1] 100/3
**eventually** [2] 15/6 23/17
**ever** [31] 22/3 25/14 31/12 31/20 34/14 41/16 41/23 43/10 44/10 44/15 46/7 46/25 56/20 63/4 63/14 63/14 70/16 70/18 79/18 80/21 82/24 83/10 83/14 84/25 85/5 85/9 85/10 85/15 85/19 86/1 89/7
**every** [5] 56/1 87/18 88/2 91/1 91/19
**everything** [4] 91/4 91/8 102/10 103/2
**evicted** [1] 53/18
**evidence** [23] 17/1 17/6 21/4 22/7 24/22 28/19 36/18 40/21 42/24 48/7 59/6 61/22 64/7 65/24 67/3 69/24 72/3 76/1 80/1 80/2 96/12 97/1 101/21
**evidenced** [1] 77/15
**exact** [1] 17/20
**exactly** [1] 90/8
**examination** [9] 13/2 67/25 68/12 69/16 86/21 87/12 87/19 90/19 103/3
**examine** [2] 6/14 68/20
**exchange** [1] 52/23
**exclude** [1] 10/1
**excluding** [1] 8/11
**Excuse** [1] 97/13
**executed** [7] 62/12 72/24 77/18 77/22 78/11 92/21 94/2
**exercising** [1] 10/17
**exhibit** [117]
**Exhibit 1056** [1] 96/11
**Exhibit 176** [14] 13/6 14/2 18/23 26/23 30/23 34/25 38/15 51/18 57/18 64/18 73/15 104/20 104/22 105/10
**Exhibit 2** [7] 93/22 94/10 94/13 94/15 94/17 94/19 96/17
**Exhibit 222** [3] 16/11 16/19 17/1
**Exhibit 224** [1] 21/3
**Exhibit 225** [1] 22/5
**Exhibit 228** [2] 24/7 24/19
**Exhibit 229** [3] 28/2 28/14 33/22
**Exhibit 230** [3] 35/19 36/4 37/18
**Exhibit 231** [2] 40/7 40/16
**Exhibit 232** [2] 42/11 42/19
**Exhibit 233** [3] 47/16 47/17 48/2
**Exhibit 235** [4] 19/23 19/23 37/16 56/10
**Exhibit 236** [3] 58/16 59/2 59/4
**Exhibit 237** [6] 61/7 61/9 61/11 61/17 72/8 78/24
**Exhibit 238** [2] 63/15 63/24
**Exhibit 239** [1] 65/20
**Exhibit 250** [5] 75/2 75/4 75/6 75/11 75/22
**Exhibit 258** [3] 66/11 66/24 69/24
**Exhibit 257** [2] 71/6 71/15
**Exhibit 4** [9] 4/14 4/16 5/1 5/7 6/1 6/2 6/3 6/6 6/15
**exhibits** [3] 3/7 3/19 11/4
**exits** [1] 67/23
**expect** [3] 5/17 6/3 84/3
**expected** [2] 26/19 86/4
**expenses** [2] 63/5 85/12
**explain** [1] 40/3
**explaining** [1] 13/20
**explanation** [1] 4/14

**eye** [1] 102/14

**F**

**fabricated** [1] 101/18
**facing** [1] 40/4
**fact** [4] 4/16 42/5 6/14 99/17 102/12
**facts** [2] 100/3 101/21
**failed** [1] 78/13
**failure** [1] 62/18
**fair** [4] 16/22 28/10 52/24 76/17
**fall** [1] 9/25
**family** [1] 56/2
**far** [3] 12/4 52/2 103/1
**fast** [1] 40/6
**fast-forward** [1] 40/6
**Federal** [2] 2/10
**fee** [1] 62/21
**fees** [1] 85/1
**felon** [1] 89/19
**felonies** [2] 8/11 10/12
**felony** [5] 8/6 8/19 9/3 80/22 89/25
**felt** [1] 34/18
**few** [5] 39/8 39/15 43/23 58/4 74/2
**Fifth** [1] 94/21
**figure** [2] 23/1 58/9
**file** [8] 11/3 12/1 12/6 18/15 30/17 76/14 76/23 80/6
**filed** [18] 6/25 11/5 45/11 45/12 45/14 46/18 46/20 46/22 47/1 77/16 80/12 98/9 100/1
**files** [4] 70/4 70/10 73/11 77/1
**filing** [18] 4/17 11/13 11/14 11/20 11/24 12/2 18/10 18/12 18/14 18/17 29/22 30/15 30/16 30/20 50/24 76/20 80/18 80/20
**filings** [2] 35/15 102/24
**Filippo** [2] 5/25 82/19
**filled** [1] 52/8
**filling** [1] 18/12
**final** [1] 22/21
**finalizing** [1] 78/12
**finally** [2] 62/22 78/19
**financial** [8] 13/15 19/7 40/3 49/1 56/18 83/21 83/23 84/2
**find** [7] 10/16 10/18 51/11 51/12 103/21 103/24 104/2
**finding** [1] 52/24
**fine** [2] 7/3 38/23
**finish** [1] 77/23
**finishing** [1] 68/1
**firm** [8] 62/1 62/9 73/12 82/12 82/18 91/23 100/9 100/9
**firm's** [1] 72/21
**first** [21] 19/16 24/10 25/6 25/18 25/19 25/20 28/7 31/19 31/20 33/22 35/24 35/24 35/25 36/12 44/3 45/25 48/14 72/5 72/20 76/5 94/13
**five** [5] 5/10 7/1 60/4 93/4 93/9 96/16 96/18
**flip** [2] 105/2 105/12
**follow** [1] 71/3
**follow-up** [1] 71/3
**following** [1] 5/4
**follows** [1] 26/1
**foregoing** [1] 107/7
**forgot** [1] 33/7
**form** [3] 67/7 87/24 105/24
**format** [1] 107/10
**formation** [1] 34/19
**former** [1] 72/2
**forward** [8] 14/9 21/15 40/6 45/7 46/14 52/8 54/21 74/1
**foundation** [2] 64/5 71/21
**four** [8] 25/24 26/1 26/4 26/6 26/13 58/14 89/24 90/3
**Fourth** [2] 2/11 94/19
**FOX** [1] 2/4
**fraud** [12] 8/16 9/7 10/3 10/3 10/17 90/7 90/9 90/11 90/14 98/2 98/5 98/13
**Frauds** [1] 2/6
**free** [2] 6/13 68/20
**Friday** [2] 55/18 55/22
**friend** [2] 30/3 56/2

**front** [5] 16/17 37/18 47/17 73/16 91/3
**frone** [1] 59/9
**full** [2] 95/24 96/15
**fully** [1] 92/21
**fund** [2] 13/18 30/5
**funding** [2] 43/24 44/24
**funds** [10] 15/3 15/17 18/16 18/21 31/23 62/25 70/5 70/13 72/12 84/25
**further** [5] 4/13 4/18 6/21 62/19 86/15
**Furthermore** [1] 5/19
**future** [1] 49/9
**FYI** [1] 38/21

**G**

**Gailey** [2] 82/3 82/25
**gas** [1] 59/14
**gave** [4] 80/18 87/1 87/23 88/2
**general** [3] 11/8 25/18 77/20
**generally** [1] 100/5
**gentleman** [2] 88/14 88/20
**gentlemen** [3] 12/23 67/5 105/22
**gesture** [1] 102/2
**gesturing** [1] 101/10
**get** [43] 9/11 18/15 21/22 23/12 23/18 26/15 27/9 28/21 31/10 33/9 34/1 40/1 41/2 41/4 41/8 42/4 42/7 48/17 49/2 49/7 49/8 49/13 51/1 51/14 51/15 51/16 52/4 52/12 55/9 55/23 56/25 57/2 57/5 68/22 69/2 69/5 74/21 85/16 91/16 95/24 100/4 103/9 105/2
**getting** [6] 19/4 20/10 37/6 39/7 53/10 54/15
**give** [8] 9/1 37/9 38/23 43/15 43/20 56/8 91/24 105/9
**given** [3] 11/9 69/8 92/17
**giving** [3] 21/20 32/16 56/21
**glass** [4] 101/7 102/2 102/21 105/15
**Global** [3] 83/4 83/7 83/11
**go** [22] 6/3 8/11 9/7 9/7 25/7 27/1 27/25 29/10 30/17 31/24 38/3 38/5 45/7 46/14 52/23 55/12 56/3 65/1 70/3 76/16 98/23 103/14
**go-forward** [2] 45/7 46/14
**God** [1] 87/10
**goes** [8] 5/18 29/15 32/8 36/12 53/12 53/16 77/25 93/18
**going** [43] 6/16 6/24 10/1 13/10 18/15 18/22 23/2 23/23 27/1 30/17 30/25 31/2 31/11 31/23 38/13 38/23 44/3 45/20 45/20 50/1 51/1 51/12 52/12 53/1 55/19 55/23 55/25 57/23 58/8 58/9 60/3 60/15 69/2 69/5 69/9 70/3 73/15 76/16 81/18 84/19 93/7 103/9 105/1
**good** [24] 4/5 4/8 4/9 4/12 12/23 12/24 13/4 13/5 15/3 21/15 31/11 32/9 32/15 32/20 35/18 52/7 52/17 52/18 58/10 59/11 60/23 86/23 86/24
**got** [5] 23/20 31/4 55/4 69/10 85/5
**government** [30] 4/13 4/16 4/17 4/25 6/11 6/12 6/19 6/25 7/23 8/21 10/21 10/23 17/1 24/19 28/13 36/4 40/16 42/19 48/2 59/1 61/17 63/23 65/13 65/16 65/20 66/23 68/4 71/14 75/21 81/1
**GOVERNMENT'S** [1] 12/18
**great** [1] 34/2
**greater** [1] 7/1
**Greg** [5] 17/22 29/4 34/10 39/11 64/16
**GREGORY** [4] 3/5 12/18 62/10 72/22
**Group** [2] 82/18 83/1
**guess** [3] 10/10 11/25 78/20
**guilty** [12] 8/19 9/3 9/4 9/5 15/6 15/8 15/15 15/17 15/20 15/23 16/3 33/4

**H**

**had** [79] 11/21 13/13 15/12 15/12 16/9 17/15 17/19 18/21 20/11 20/14 22/3 22/25 22/25 23/25 24/4 25/14 26/16 26/18 30/8 32/16 32/16 32/18 34/15 35/4 42/3 45/11 45/11 45/12 45/13 45/14 46/19 46/22 46/22 46/25 50/14 50/20 51/2 51/5 51/13 52/22 55/22 56/1 56/20 58/7 58/14 60/2 63/2 63/4 66/9 69/23 70/24 72/14 72/16 72/17 72/17 72/19 73/13 74/4 76/25 77/7 80/21

## H

**had...** [16] 87/19 88/9 88/10 88/23 89/7 90/20 92/16 96/6 98/13 98/15 100/8 100/11 100/20 101/2 102/17 104/8
**hadn't** [4] 30/18 31/19 37/14 88/24
**half** [1] 60/2
**hand** [9] 5/8 23/25 43/25 44/25 95/3 97/3 97/5 97/15 101/11
**handed** [4] 4/23 5/5 24/2 24/4 24/12 24/16 33/13 93/2 98/21
**handing** [1] 24/3
**handle** [1] 74/18
**handled** [3] 45/8 46/15 46/15
**HANNA** [1] 2/3
**happen** [5] 29/22 30/15 30/16 43/20 55/19
**happened** [9] 22/25 23/20 42/1 50/10 60/6 95/13 101/18 101/24 102/3
**happens** [1] 37/3
**happy** [1] 74/7
**hard** [4] 49/8 49/13 49/18 51/8
**has** [18] 4/17 4/25 5/6 6/11 8/6 8/21 26/1 29/18 32/8 33/19 61/24 62/9 62/14 68/4 71/22 77/18 87/11 97/20
**Hate** [1] 60/21
**have** [115]
**having** [1] 98/17
**he** [159]
**he's** [4] 26/22 45/17 79/14 99/13
**head** [1] 31/12
**hear** [1] 63/13
**heard** [6] 6/21 15/16 22/20 63/14 82/14 82/20
**hearing** [2] 38/22 63/10
**hearsay** [16] 17/3 24/20 28/15 36/6 40/18 42/21 48/4 59/3 61/19 63/25 64/1 66/25 71/16 71/18 71/20 75/23
**held** [1] 107/9
**help** [15] 19/4 19/8 19/9 29/24 30/5 34/15 37/2 40/25 41/4 41/6 53/13 53/20 55/3 74/19 87/10
**helping** [2] 52/4 52/5
**her** [2] 22/1 23/25
**here** [15] 17/24 18/1 25/19 29/18 43/6 54/25 59/13 67/5 73/20 75/5 79/22 79/24 98/25 105/12 105/22
**hereby** [1] 107/6
**Hi** [7] 22/19 29/11 37/2 43/6 54/25 57/24 59/12
**high** [1] 105/18
**him** [42] 15/12 19/8 23/13 26/11 26/19 30/13 31/20 32/13 34/17 37/25 42/15 42/2 43/10 43/11 43/15 44/10 44/13 44/15 44/22 50/15 55/2 57/3 58/10 60/10 61/2 62/11 63/8 63/13 63/74 72/23 74/4 74/10 74/11 74/17 77/20 78/14 78/20 78/22 80/13 86/4 86/12 101/12
**hired** [3] 62/1 63/1 77/7
**hiring** [1] 61/5
**his** [22] 7/10 9/7 9/8 10/20 19/17 20/25 24/13 24/16 42/8 43/13 54/13 62/10 68/7 72/22 74/13 74/24 79/16 80/23 83/8 91/2 101/11 101/11
**home** [2] 39/8 53/18
**Honor** [86] 4/5 4/9 4/19 4/22 4/22 5/5 5/11 5/15 5/19 5/22 6/9 6/23 7/8 7/12 7/17 7/20 8/14 8/18 8/24 9/9 10/9 10/24 11/1 11/22 12/2 12/13 13/1 14/6 16/25 17/3 21/5 22/7 24/18 24/20 28/14 28/15 36/3 36/6 40/15 42/18 48/1 48/4 49/14 52/12 57/11 59/2 59/3 61/16 63/25 64/3 64/5 65/19 66/24 66/25 67/17 67/24 68/4 68/16 68/17 68/23 68/25 69/6 69/21 71/16 71/21 75/22 75/23 80/2 83/24 84/5 84/21 85/21 86/5 86/10 86/16 88/9 89/1 89/3 89/13 90/15 91/2 92/24 93/3 96/10 98/19
**Honor's** [2] 89/2 93/3
**HONORABLE** [1] 1/8
**hope** [1] 35/8 41/5
**hoping** [4] 32/1 41/1 41/7 42/4
**hottest** [1] 29/25
**hours** [2] 19/18 31/14
**house** [1] 52/13

## how

**how** [24] 5/17 6/5 13/12 15/11 20/2 30/12 36/25 47/2 47/24 48/9 47/4 55/3 56/7 56/14 60/9 74/1 80/17 80/18 84/11 89/10 89/17 97/20
**Howard** [5] 88/8 88/9 88/14 88/23 89/6
**However** [1] 5/25
**hundred** [4] 46/1 57/3 87/19 87/24
**hundred-thousand-dollar** [1] 46/1
**hung** [1] 95/18

## I

**I'll** [5] 8/4 19/22 37/15 47/3 68/12
**I'm** [49] 4/15 7/12 9/1 10/1 11/1 11/2 11/17 12/3 12/4 13/10 14/8 14/20 18/22 19/4 27/1 27/9 27/22 29/23 31/1 31/2 31/25 38/17 39/3 39/10 40/6 42/12 44/24 45/2 49/1 49/2 52/2 57/23 57/24 58/11 60/1 55 60/22 64/4 70/3 73/15 75/5 76/16 78/25 80/15 81/16 93/7 98/25 101/25 104/21 105/1
**I've** [3] 69/6 69/15 89/18
**I-N-D-E-X** [1] 3/2
**Ibrahim** [18] 45/15 45/16 46/21 81/11 98/4 98/13 99/6 99/18 100/11 100/15 100/19 100/23 101/3 101/7 101/11 101/17 102/1 102/14
**idea** [3] 43/13 49/12 51/9
**ideas** [1] 43/13 51/13
**identified** [2] 33/19 33/20
**identifier** [1] 6/7
**immediate** [1] 62/24
**immediately** [2] 19/17 44/7
**impeachable** [1] 8/7
**impeached** [1] 8/10
**impeachment** [2] 92/25 93/5 96/11
**important** [1] 94/7
**Improper** [1] 89/1
**Inc** [3] 76/15 77/15 79/17
**include** [1] 5/24
**including** [3] 28/7 47/5 101/6
**incorporation** [2] 77/16 78/15
**incorporator** [1] 77/14
**incorporator's** [3] 77/19 77/21 77/24
**incorrect** [3] 90/2 90/3 90/4
**Indeed** [1] 78/11
**indicate** [1] 33/18
**individual** [3] 25/10 33/8 33/13
**individuals** [3] 46/11 88/24 101/1
**information** [8] 12/10 47/4 47/12 50/14 51/5 55/2 66/5 66/9
**initial** [7] 62/15 62/22 85/20 86/1 93/12 97/13 100/20
**initialed** [1] 97/15
**initials** [3] 97/6 97/8 97/10
**interest** [6] 57/1 57/3 79/6 79/12 79/16 85/15
**interrupt** [1] 7/15
**interview** [9] 4/15 5/11 5/13 5/16 5/20 5/22 5/23 6/7 6/15
**invite** [1] 104/7
**invited** [1] 105/8
**inviting** [2] 104/14 104/25
**involve** [1] 9/24
**involved** [3] 9/16 32/13 81/17
**Irvine** [1] 94/3
**is** [233]
**ish** [1] 8/5
**isn't** [8] 88/15 88/21 92/20 95/6 96/8 98/6 98/11 104/12
**issue** [4] 6/16 68/3 69/12 71/25
**issues** [2] 67/7 105/24
**it** [186]
**it's** [28] 5/15 5/21 7/20 8/8 9/16 9/17 10/2 10/4 10/16 12/5 14/19 16/12 35/25 38/22 49/17 49/25 52/17 62/3 68/13 68/19 69/6 69/9 71/20 73/20 83/8 96/16 96/18 104/16
**Item** [1] 4/3
**itemize** [1] 44/15
**items** [2] 44/3 44/11
**its** [3] 4/17 6/11 77/23
**itself** [2] 9/16 10/3

## J

**JAMES** [3] 1/8 82/3 82/25
**January** [17] 26/13 26/17 32/19 43/22 46/8 50/10 57/4 57/6 57/7 57/19 70/25 71/2 73/20 73/20 73/23 74/3 80/6
**January 1** [1] 43/22
**January 10th** [3] 26/13 70/25 71/2
**January 2019** [1] 57/6
**January 25th** [1] 73/20
**January 26th** [1] 73/20
**January of** [2] 50/10 57/7
**Jencks** [1] 6/18
**JOHN** [8] 1/11 2/14 4/4 81/11 81/22 98/4 98/12 99/12 99/18 101/3
**Journal** [1] 100/25
**JR** [1] 12/18
**JUDGE** [5] 1/8 45/6 46/10 46/12 50/18
**judgment** [1] 69/7
**Judicial** [1] 107/11
**Judy** [16] 16/20 18/5 20/18 21/9 21/15 22/20 23/24 35/21 36/5 37/22 50/25 76/9 76/22 98/4 98/12 99/18
**July** [4] 22/13 22/23 92/18 96/6
**July 20th** [2] 22/13 22/23
**jumping** [1] 48/24
**June** [21] 13/11 13/12 13/15 13/20 13/24 14/5 14/15 14/22 14/24 17/10 18/20 18/22 18/24 19/2 19/16 19/24 20/11 21/9 21/14 92/17 96/6
**June 15th** [2] 14/5 14/22
**June 22nd** [2] 14/15 14/24
**June 25th** [2] 17/10 18/22
**June 27th** [3] 18/24 19/2 19/24
**June 29** [1] 21/9
**June 29th** [1] 21/14
**June of** [5] 13/11 13/12 13/15 13/24 18/20
**jury** [10] 4/2 12/17 67/11 67/15 69/18 69/19 88/3 94/8 96/8 106/2
**just** [30] 4/23 4/24 9/16 11/10 14/21 19/22 28/21 30/25 32/4 33/3 36/17 39/7 39/15 44/22 47/20 48/25 49/1 52/14 64/16 65/6 68/16 68/17 69/23 80/14 92/4 94/11 97/5 104/23
**JVS** [2] 1/11 4/3

## K

**keep** [5] 29/12 41/4 43/22 84/19 102/6
**kicked** [1] 52/12
**kind** [3] 41/25 42/1 85/11
**knew** [4] 44/22 91/6 91/7 102/16
**know** [70] 5/2 5/3 5/17 6/1 6/5 10/11 11/7 11/22 14/11 14/18 15/8 15/11 19/19 19/19 21/25 23/5 30/9 30/12 33/8 32/22 33/25 34/16 35/8 35/16 37/3 41/3 41/11 41/20 48/16 48/22 49/1 49/3 49/21 50/4 52/6 52/17 55/20 57/9 57/15 60/22 63/2 63/7 75/9 79/18 80/17 80/24 81/2 81/17 81/23 81/25 82/3 82/6 82/8 82/10 82/13 82/18 82/23 83/4 84/15 84/16 87/22 89/18 90/8 90/9 91/4 91/22 91/23 104/5 104/6
**knowing** [1] 6/3
**knowledge** [5] 8/1 82/15 82/21 98/15 98/17
**known** [1] 32/18

## L

**L.A** [1] 14/23
**lack** [2] 10/20 71/21
**ladies** [3] 12/23 67/5 105/22
**landed** [1] 33/3
**landlord** [1] 55/24
**large** [1] 74/20
**Larson** [1] 61/24
**last** [9] 5/8 11/25 18/6 22/16 22/21 46/18 52/2 59/25 95/5
**later** [7] 5/15 19/18 31/14 33/9 35/25 47/20 47/24
**latest** [2] 53/12 53/16
**law** [10] 2/15 62/1 77/20 82/12 82/13 82/18 82/18 83/1 100/9 100/9
**laws** [1] 94/1

**L**

**lawsuit [5]** 80/6 80/20 98/8 98/11 99/17
**lawyer [9]** 14/19 14/23 26/22 61/5 66/14 74/7 84/3 85/3 86/14
**lawyers [8]** 45/17 61/25 63/1 69/25 71/3 71/9 81/20 85/5
**lead [1]** 46/13
**Leading [1]** 44/18
**learn [1]** 70/16
**learned [3]** 72/14 72/17 77/10
**learning [1]** 14/20
**least [3]** 31/14 97/4 97/25
**leave [3]** 41/22 65/6 65/9
**led [1]** 100/19
**left [4]** 13/9 65/17 69/23 78/14
**legal [4]** 14/13 74/18 90/23 99/11
**lenders [1]** 49/18
**less [3]** 38/6 38/12 43/22
**lesson [1]** 43/25
**let [21]** 13/9 13/18 15/16 16/8 19/18 25/17 31/8 32/2 34/16 37/3 44/3 45/24 54/19 55/20 60/22 70/17 81/1 81/7 95/8 98/18
**let's [12]** 17/8 20/19 21/7 24/24 27/19 48/22 53/6 61/24 69/18 73/25 76/5 88/6
**letter [22]** 61/13 62/9 63/8 63/12 63/18 63/21 64/13 64/19 64/21 66/2 66/13 66/20 71/4 71/8 71/11 72/9 72/21 73/1 73/6 73/8 73/9 78/22
**liability [2]** 9/17 10/4
**liable [1]** 9/6
**liar [1]** 80/15
**license [4]** 8/16 10/5 15/5 15/18
**licensed [1]** 9/21
**life [3]** 13/23 53/12 53/16
**light [1]** 10/19
**like [7]** 6/25 22/25 34/18 44/11 48/19 58/12 59/23
**likewise [1]** 73/10
**limits [1]** 11/11
**line [50]** 14/5 14/7 14/14 17/21 18/24 19/1 19/11 21/11 22/14 27/7 32/4 32/16 32/23 35/7 38/16 39/7 40/23 48/12 51/19 53/1 53/4 54/1 54/17 54/19 54/19 54/25 55/9 55/12 57/19 57/19 59/10 60/17 62/5 62/5 64/25 65/1 65/2 70/3 70/3 72/9 72/11 73/18 73/22 76/13 104/18 104/20 104/22 105/9 105/10
**line 1 [1]** 65/1
**line 12 [1]** 57/19
**line 165 [1]** 38/16
**line 2 [2]** 64/25 65/2
**Line 211 [1]** 35/7
**line 244 [1]** 31/2
**line 253 [1]** 27/7
**line 3 [1]** 60/17
**line 34 [1]** 55/12
**line 373 [1]** 18/24
**line 51 [1]** 53/1
**line 610 [1]** 73/18
**line 7 [2]** 104/22 105/10
**lines [6]** 19/16 27/3 31/24 34/25 54/5 64/21 27/25 29/4 29/18 34/11 34/15 43/3 43/6 43/8 43/11 45/3 48/12 59/24 60/4
**lists [2]** 43/13 73/1
**litigation [2]** 81/17 81/21
**little [1]** 43/21
**lived [1]** 55/24
**LLC [2]** 62/6 72/12 72/25
**LLP [1]** 61/24
**loan [25]** 30/3 30/4 49/2 49/7 49/8 49/13 50/2 51/1 51/8 51/14 51/15 51/16 52/4 52/5 52/7 52/9 52/17 52/18 53/10 54/15 55/3 56/21 56/24 57/6 57/10
**loans [1]** 40/1
**lobby [1]** 100/24
**long [4]** 49/25 96/16 97/20 97/22
**longer [3]** 41/3 41/11 41/12
**look [48]** 5/13 5/14 5/20 6/11 10/11 14/1 14/14 16/11 19/15 21/3 22/5 24/5 24/9 25/9 25/17 25/23 27/3 28/2 30/23 31/2 31/24 35/19 36/20

---

38/7 38/15 39/15 40/7 42/11 47/16 51/18 54/6 54/21 58/6 59/8 59/13 59/16 61/6 62/20 63/15 64/18 66/11 71/6 75/2 76/21 77/3 78/24 103/20 104/16 104/17
**looked [3]** 17/11 47/4 83/20
**looking [5]** 13/7 14/8 51/6 97/6 105/1
**Los [2]** 2/8 14/19
**lot [1]** 31/22
**lower [3]** 5/8 97/3 97/5
**luck [3]** 52/4 55/9 60/23
**lunch [2]** 103/10 105/21
**lying [1]** 101/19

**M**

**machine [1]** 95/19
**made [7]** 12/10 15/12 62/22 69/7 91/14 100/20 102/20
**mail [99]** 16/19 16/22 17/9 17/15 17/21 17/23 18/22 21/7 21/9 21/13 21/19 21/22 21/23 22/3 22/9 22/9 22/12 22/14 22/16 22/17 22/23 28/4 28/8 28/10 28/16 28/18 28/22 40/9 40/12 40/23 42/13 42/15 43/2 43/7 46/6 47/3 47/19 47/20 47/23 48/9 48/14 48/20 50/25 58/18 58/20 58/23 59/8 60/15 60/22 60/24 60/25 63/7 63/17 63/20 64/15 65/5 65/7 65/10 65/12 65/15 65/17 65/21 66/13 66/14 66/21 69/25 71/8 71/12 75/6 75/7 75/24 76/5 76/8 76/17 76/22 77/4 77/12 77/12 77/24 77/25 78/6 79/22 104/15
**mailed [1]** 63/8
**mails [18]** 28/7 34/23 35/24 36/1 36/1 36/4 36/16 47/5 61/2 63/12 65/5 75/11 75/14 75/17 75/25 78/3 83/20 104/2
**mainly [1]** 10/19
**Major [1]** 2/6
**make [16]** 11/2 13/18 19/22 34/14 34/17 44/8 50/2 57/16 58/4 58/5 62/15 62/18 80/9 93/12 97/13 103/10
**Making [1]** 54/12
**manager [1]** 20/25
**many [2]** 31/9 89/10
**March [17]** 26/7 26/7 26/8 26/8 45/6 45/23 45/24 45/25 46/3 46/3 46/7 93/13 93/14 100/2 100/8 100/19 102/9
**March 10 [2]** 26/8 93/13
**March 10th [5]** 26/7 26/7 26/8 45/25 46/3
**March 2018 [2]** 100/19 102/9
**March of [1]** 100/2
**Marchino [5]** 5/11 5/14 5/25 11/24 82/19
**mark [3]** 31/17 37/25 48/23
**marked [3]** 3/7 3/19 11/4
**martini [6]** 104/9 104/14 104/25 105/8 105/15 105/15
**material [6]** 69/10 69/13 69/16
**Matt [3]** 75/9 76/21 78/6
**matter [19]** 6/10 34/20 63/5 74/5 77/8 81/5 81/5 81/10 81/15 82/1 82/1 82/6 82/10 82/16 82/22 84/12 85/1 101/2 107/9
**matters [3]** 23/23 84/9 85/12
**may [12]** 4/20 13/10 16/13 17/12 67/12 77/7 78/16 86/10 86/19 93/1 94/3 98/20
**May 2019 [1]** 94/3
**May 22nd [1]** 77/17
**May 25th [1]** 77/12
**May of [1]** 13/10
**maybe [1]** 35/7
**me [86]** 11/25 13/9 15/3 15/16 16/8 18/2 18/21 18/21 21/16 21/20 22/21 24/2 24/3 24/4 25/17 27/22 29/24 29/25 31/5 32/3 32/16 34/14 34/16 34/16 37/3 37/10 42/7 43/20 43/25 44/3 45/9 45/11 45/12 46/14 46/23 50/25 51/11 51/14 51/17 51/24 53/10 53/13 53/20 54/15 54/19 54/24 55/3 55/20 56/20 64/9 64/11 65/2 65/4 68/6 70/17 77/25 78/13 78/19 80/14 80/16 80/18 80/23 81/1 87/17 90/9 93/11 93/20 95/8 97/13 98/2 98/18 101/3 102/4 103/13 104/2 104/12 104/13 104/13 104/14 104/25

---

104/25 105/7 105/8 105/8 105/9
**mean [21]** 9/17 12/2 13/24 13/24 18/14 29/5 32/11 32/14 38/5 41/7 42/6 44/4 45/23 46/18 53/16 55/21 58/1 59/16 59/21 88/10
**means [1]** 87/8
**meant [1]** 32/16
**meet [2]** 23/17 100/23
**meeting [5]** 20/9 23/11 90/20 92/2 92/4
**meetings [2]** 43/11 47/8
**memo [1]** 8/3
**memorandum [2]** 6/7 6/8
**mentioned [2]** 8/1 63/10
**message [19]** 14/7 14/15 14/22 27/10 27/19 31/8 32/23 32/24 38/18 38/21 39/5 51/21 53/2 55/17 60/16 73/19 74/3 104/17
**messages [16]** 13/7 18/23 26/24 27/4 31/5 35/3 56/4 57/19 61/1 63/11 64/23 65/6 78/14 78/18 83/20 103/24
**met [9]** 6/11 23/8 23/13 25/6 26/10 26/15 33/8 89/18 100/11
**MICHAEL [25]** 1/11 2/14 4/4 4/9 14/8 19/18 24/2 24/2 29/11 31/17 33/15 37/2 41/1 43/6 48/15 55/20 57/24 58/11 59/12 64/17 77/13 77/14 77/18 84/17 95/18
**Michael's [1]** 83/8
**mid [2]** 9/6 67/4
**mid-morning [1]** 67/4
**might [1]** 18/12
**Mike [1]** 54/25
**million [25]** 6/4 18/8 18/10 18/20 20/8 26/17 30/19 32/18 35/11 37/14 41/10 41/14 45/2 46/16 49/9 51/17 53/24 55/7 62/15 62/23 63/2 66/6 86/2 100/20 102/17
**mind [1]** 39/21
**minimum [4]** 44/8 59/13 59/16 59/19
**minute [1]** 92/8
**minutes [1]** 67/10
**Miramar [1]** 2/16
**misdemeanor [13]** 8/3 8/7 8/15 8/23 8/25 9/4 9/4 9/5 9/15 9/19 10/2 10/7 10/12
**Misstates [1]** 80/1
**moment [1]** 90/15
**Monday [2]** 43/20 58/3
**money [44]** 13/12 20/4 22/25 30/9 30/18 31/22 32/17 39/24 39/25 41/2 41/8 41/17 41/24 42/3 42/7 44/9 49/8 49/13 49/18 51/8 51/11 51/12 52/4 52/13 55/4 56/9 58/8 60/2 60/13 72/18 73/2 74/24 83/11 83/15 84/4 85/7 85/12 85/16 85/20 88/24 89/8 89/21 98/16 104/8
**monies [2]** 59/24 100/4
**months [5]** 5/10 6/8 21/18 41/17 90/1
**more [12]** 8/8 10/18 31/12 31/20 34/13 43/21 48/21 63/14 69/7 84/10 84/11 97/24
**morning [21]** 4/5 4/8 4/9 4/12 8/1 8/2 12/23 12/24 13/4 13/5 19/3 21/15 52/9 58/11 67/4 86/23 86/24 88/3 89/2 96/5 103/12
**most [7]** 75/6 86/13
**motion [3]** 6/17 6/18 18/15
**move [4]** 6/16 84/21 88/6 96/11
**moved [1]** 69/23
**moves [14]** 17/1 24/19 28/13 36/4 40/16 42/19 48/2 59/1 61/17 63/23 65/20 66/23 71/14 75/21
**moving [3]** 41/4 43/22 74/1
**Mr [5]** 45/15 45/17 46/21 64/4 89/6
**Mr. [99]** 4/10 4/15 4/18 5/11 5/14 6/17 6/22 7/5 7/22 8/3 8/13 8/14 9/13 10/25 11/24 12/25 13/4 18/19 20/5 20/18 21/2 23/22 28/16 28/17 33/7 36/15 45/12 46/5 46/23 52/19 54/24 62/12 62/14 62/21 67/16 67/25 68/6 68/8 69/20 69/23 72/24 73/10 75/12 75/15 75/18 75/19 75/24 76/8 77/3 77/12 77/13 78/4 78/12 79/8 79/13 81/13 81/22 86/16 86/23 87/23 88/6 88/8 88/15 88/20 88/23 88/23 89/6 89/7 90/21 91/14 95/5 95/9 96/7 97/3 98/9 99/6 99/6 99/7 100/2 100/11 100/15 100/19 100/23 101/3 101/3 101/7 101/7 101/10

## M

**Mr....** [11] 101/11 101/17 101/17 102/1 102/2 102/13 102/14 103/1 103/3 103/11 104/17
**Mr. Arden** [4] 99/6 101/10 101/17 102/13
**Mr. Arden's** [2] 101/7 102/2
**Mr. Avenatti** [19] 4/18 6/22 8/13 10/25 18/19 20/5 20/18 21/2 23/22 45/12 46/5 46/23 52/19 54/24 67/16 81/13 81/22 86/16 88/6
**Mr. Avenatti's** [3] 6/17 28/16 75/24
**Mr. Barela** [20] 4/15 8/14 13/4 28/17 33/7 36/15 62/12 62/14 62/21 68/6 69/23 72/24 78/12 86/23 88/8 88/15 89/6 95/5 97/3 103/1
**Mr. Barela's** [6] 7/5 7/22 8/3 73/10 79/8 79/13
**Mr. Dean** [1] 4/10
**Mr. Howard** [1] 88/23
**Mr. Ibrahim** [11] 99/6 100/11 100/15 100/19 100/23 101/3 101/7 101/11 101/17 102/1 102/14
**Mr. John** [1] 101/3
**Mr. Marchino** [3] 5/11 5/14 11/24
**Mr. Rappaport** [3] 88/20 88/23 89/7
**Mr. Runkles'** [1] 96/7
**Mr. Sagel** [15] 9/13 12/25 67/25 68/8 69/20 87/23 90/21 91/14 95/9 98/8 99/17 100/2 103/3 103/11 104/17
**Mr. Waterman** [9] 75/12 75/15 75/18 75/19 76/8 77/3 77/12 77/13 78/4
**Ms** [14] 16/23 20/25 21/19 21/22 21/25 22/17 23/5 36/7 36/10 36/13 36/16 36/23 77/4 99/6
**Ms.** [3] 4/11 21/14 22/10
**Ms. Cummings-Cefali** [1] 4/11
**Ms. Regnier** [2] 21/14 22/10
**much** [9] 13/12 20/2 31/11 38/10 56/1 56/7 56/8 56/14 84/11
**multiple** [1] 90/10
**my** [48] 13/18 14/13 18/21 22/22 26/22 27/13 27/20 29/4 29/6 29/11 29/15 31/9 31/11 31/19 32/8 34/11 38/21 38/23 40/1 43/24 44/8 44/24 46/4 50/9 52/12 52/13 53/12 53/16 53/18 55/15 55/18 59/18 59/23 67/24 69/10 73/24 75/10 84/19 86/13 90/20 91/11 91/22 91/23 100/9 103/21 104/22 105/2 105/12
**myself** [2] 23/22 59/22

## N

**name** [3] 61/25 82/3 82/18
**named** [1] 25/10
**need** [34] 14/8 22/22 31/12 34/1 34/13 34/15 37/2 39/8 39/25 40/25 41/4 43/19 43/21 44/3 44/6 49/3 49/21 50/4 50/13 50/23 51/1 51/15 51/16 52/3 52/9 53/11 53/12 53/15 53/19 58/4 59/14 59/24 60/5
**needed** [15] 14/11 18/3 21/2 23/1 37/9 39/24 43/9 43/23 44/14 44/16 55/24 59/25 60/10 60/22 66/8
**needing** [3] 31/20 52/7 58/5
**needs** [1] 77/22
**negative** [2] 80/15
**negotiations** [1] 74/20
**negotiator** [1] 46/12
**nervous** [3] 29/13 29/15 31/25
**never** [24] 5/16 22/20 25/16 46/9 50/8 59/14 59/20 59/22 63/6 66/4 66/7 82/14 82/23 83/13 83/19 85/2 85/8 85/14 85/23 86/3 89/18 96/7 101/18
**new** [22] 58/8 61/25 63/1 63/18 63/21 64/22 66/8 69/10 69/13 69/16 70/5 70/6 70/11 70/14 70/16 70/18 71/3 77/7 78/21 85/5 91/19 91/24
**next** [18] 6/16 16/13 19/15 27/12 27/20 31/13 31/16 32/7 39/15 45/4 45/18 48/24 50/18 52/23 54/11 54/25 55/8 68/1
**NICOLA** [1] 2/3
**night** [1] 11/25
**nine** [1] 41/17
**Ninth** [1] 6/19
**no** [65] 5/6 6/2 6/9 7/1 10/3 19/3 20/13 20/22 20/24 21/24 22/2 22/2 23/22 24/19 24/19 44/17 44/20 50/6 50/11 51/7 52/22 58/15 61/4 63/3 64/4 65/22 68/24 69/16 73/14 79/21 80/4

80/23 80/25 81/3 81/6 81/19 82/2 82/5 82/7 82/18 83/11 82/10 83/8 83/8 83/15 85/10 89/15 90/4 90/13 92/1 92/18 92/19 92/22 92/23 96/8 96/17 96/21 98/6 98/7 98/17 104/10 104/11 104/14 104/20
**nobody** [1] 21/20
**None** [2] 3/17 16/10
**noon** [1] 105/18
**North** [1] 2/7
**not** [99] 4/2 6/7 6/15 7/12 8/8 9/8 9/16 9/18 9/21 9/24 10/16 10/17 11/4 11/21 18/21 20/10 21/25 22/1 23/24 26/14 26/18 28/18 30/20 30/22 32/22 34/15 35/13 41/16 41/24 42/7 45/4 45/18 47/2 50/17 52/7 52/17 52/18 55/19 57/8 57/13 59/13 60/14 61/4 62/15 63/10 66/10 67/6 67/7 67/8 67/11 67/15 69/2 69/5 69/8 70/3 70/12 70/15 71/25 73/9 73/10 75/1 76/1 76/16 76/25 77/18 78/11 79/9 80/21 81/16 82/23 83/17 84/18 85/6 85/17 87/24 89/20 92/1 92/5 92/7 92/17 97/14 99/13 101/5 101/21 102/17 103/12 103/21 103/23 103/24 104/1 104/2 104/8 104/13 104/16 104/24 105/23 105/24 105/25 106/2
**note** [1] 5/19
**notebook** [1] 77/19
**notes** [6] 4/15 5/16 5/18 5/20 5/22 5/23
**nothing** [4] 10/23 12/12 46/19 87/9
**notice** [20] 17/2 17/5 28/18 36/17 40/16 40/20 42/19 42/23 48/2 48/6 55/23 59/5 61/17 61/20 66/24 67/2 71/15 71/20 71/25 76/1
**November** [46] 54/16 54/20 55/12 56/11 56/17 56/23 57/5 57/20 57/21 57/23 58/10 59/9 60/5 60/16 60/17 60/25 61/2 61/14 62/3 63/11 64/10 65/10 65/17 65/21 66/2 66/16 66/21 69/25 70/9 72/8 72/20 73/11 76/6 79/2 79/2 85/5 85/10 85/19 85/25 103/13 103/22 103/25 104/3 104/9 104/12 105/7
**November 12th** [2] 57/21 58/10
**November 14th** [3] 59/9 60/15 60/25
**November 15th** [2] 104/12 105/7
**November 16th** [2] 60/5 60/17
**November 17th** [11] 61/14 62/3 64/10 65/10 65/17 65/21 66/2 72/8 72/20 73/11 79/2
**November 19** [1] 66/21
**November 19th** [2] 66/16 69/25
**November 1st** [2] 54/16 54/20
**November 2018** [4] 85/5 85/10 85/19 85/25
**November 2nd** [1] 55/12
**November 30th** [1] 76/6
**November 5th** [1] 56/11
**November 8th** [2] 57/20 57/23
**November of** [2] 61/2 103/22
**now** [34] 6/12 8/5 13/11 17/11 21/18 24/24 25/9 25/19 31/12 34/13 37/20 38/7 43/21 43/23 43/25 44/25 47/3 63/10 86/25 87/22 90/6 90/19 90/23 91/22 92/2 97/3 98/2 100/2 100/8 101/24 102/21 103/9 103/16 105/18
**number** [16] 5/14 5/24 18/4 18/9 18/9 32/8 38/23 43/19 45/3 46/17 50/17 50/23 79/3 100/3 105/9
**numbered** [1] 5/24
**numbers** [5] 44/4 44/10 44/13 44/15 44/16
**numerous** [5] 78/14 79/5 79/11 79/23 102/24

## O

**O'Brien** [1] 61/24
**oath** [13] 12/21 87/1 87/4 87/8 87/12 91/6 95/10 99/21 100/14 101/6 101/15 102/21 103/11
**objection** [34] 16/4 17/3 24/20 28/15 36/6 40/18 42/21 44/18 48/4 48/5 53/22 59/3 61/19 61/21 63/25 64/2 65/22 66/25 71/16 71/19 71/19 75/23 83/24 85/21 87/14 88/4 89/7 89/13 96/14 96/17 96/21 99/11 101/20 103/5
**obligation** [2] 6/12 94/7
**observed** [1] 101/10
**obtain** [3] 23/9 52/16 66/8
**obtained** [2] 70/16 70/18
**obviously** [1] 6/13

**October** [10] 40/6 40/10 40/13 41/22 41/23 43/18 45/13 53/1 53/5
**October 10th** [2] 40/10 40/13
**October 14th** [1] 43/5
**October 2018** [1] 41/23
**October 22nd** [1] 48/10
**October 28th** [1] 51/22
**October 30th** [2] 53/1 53/5
**off** [5] 13/9 30/9 40/2 69/23 91/25
**offense** [1] 8/7
**offer** [1] 15/13
**offered** [3] 27/22 71/20 72/2
**offering** [1] 57/10
**office** [13] 20/25 23/16 23/18 23/24 24/13 24/16 25/13 33/8 78/13 90/20 91/11 91/15 91/22
**offices** [2] 2/15 102/13
**often** [1] 102/12
**oh** [3] 11/25 16/16 97/12
**okay** [34] 5/12 7/21 10/15 13/8 14/3 16/16 19/14 19/17 21/8 24/6 24/11 24/25 26/25 27/2 27/9 28/3 30/24 34/13 35/2 35/20 39/3 39/8 40/8 48/19 51/20 58/17 61/8 63/16 66/12 71/7 91/22 92/13 96/24 105/18
**old** [5] 29/18 29/21 48/20 69/6 89/17
**once** [3] 22/20 24/3 43/25
**one** [37] 7/15 8/19 10/11 10/12 10/16 11/1 15/3 18/4 19/3 19/20 19/24 29/25 30/5 32/4 36/10 36/14 41/25 43/19 45/4 45/17 45/22 47/5 48/21 54/1 55/4 57/20 57/20 69/3 72/10 74/1 78/9 84/10 84/11 84/19 84/24 89/11 90/15
**ones** [1] 14/20
**ongoing** [2] 47/10 81/21
**only** [7] 14/20 17/1 19/3 42/23 59/5 87/12 96/16
**open** [1] 11/21
**opened** [1] 68/4
**opinion** [3] 49/5 49/23 50/9
**opinions** [2] 67/7 105/24
**opportunity** [1] 7/1
**option** [2] 52/22 56/20
**options** [2] 51/10 56/1
**order** [16] 11/9 11/11 11/20 68/22 77/22 91/24
**organization** [1] 77/23
**original** [1] 20/9
**other** [22] 8/11 9/14 12/2 17/19 23/23 25/14 34/20 43/23 47/4 47/4 51/13 52/7 52/22 71/19 74/2 75/25 78/1 78/10 84/9 85/12 88/24 91/20
**others** [2] 28/17 36/17
**our** [20] 7/25 8/2 17/23 17/25 41/2 41/8 45/4 45/18 50/18 55/23 57/25 58/1 60/3 62/9 72/21 73/1 73/9 73/12 74/18 78/13
**out** [23] 4/24 23/1 31/10 33/13 38/24 52/12 55/25 58/9 60/4 66/9 67/22 69/17 74/6 79/20 83/1 88/15 88/21 88/24 89/7 104/9 104/14 104/25 105/8
**outside** [1] 81/14
**over** [11] 6/4 23/23 25/7 27/25 30/25 31/11 32/5 51/17 65/6 70/6 88/15
**overhead** [1] 14/21
**overlap** [1] 36/15
**overruled** [23] 17/4 24/21 40/19 42/22 44/19 48/5 49/15 53/23 57/12 59/4 61/21 64/6 67/1 71/18 71/19 71/24 80/3 84/14 85/22 86/1 87/15 89/14 103/6
**owe** [3] 45/5 45/23 46/2
**owed** [1] 100/5
**own** [4] 13/18 43/24 44/24 52/12

## P

**p.m** [3] 36/14 60/25 64/12
**page** [55] 5/20 14/1 14/14 14/16 18/24 19/23 19/24 24/24 25/1 25/3 25/9 25/17 25/23 27/1 28/21 29/10 31/3 33/23 34/25 35/25 36/12 36/12 36/20 37/16 38/7 38/15 51/18 54/16 56/10 57/18 60/17 73/18 75/7 76/5 77/3 94/13 94/15 94/17 94/19 94/21 94/23 94/25 95/2 95/5 96/7 97/4 97/10 97/12 97/13 98/23

**P**

page... **[5]** 104/16 104/20 104/22 105/10
  107/10
**page 1 [3]** 28/21 75/7 77/3
**page 11 [6]** 57/18 60/17 104/16 104/20
  104/22 105/10
**page 13 [1]** 54/16
**page 14 [1]** 51/18
**page 20 [1]** 38/15
**page 23 [2]** 34/25 98/23
**page 25 [2]** 27/1 31/3
**page 3 [4]** 19/23 19/24 25/17 25/23
**page 32 [1]** 18/24
**page 33 [1]** 14/1
**page 4 [2]** 37/16 38/7
**page 454780 [1]** 5/20
**page 46 [1]** 73/18
**page 5 [1]** 56/10
**page 8 [1]** 25/9
**page 9 [2]** 24/24 25/1
**page to [1]** 14/14
**pages [13]** 5/15 6/4 7/1 24/4 24/9 24/10 25/19
  25/20 95/8 95/10 95/14 97/14 97/15
**pages 54 [1]** 95/8
**pages 8 [1]** 24/9
**paid [7]** 26/17 32/18 50/7 63/2 72/17 85/19
  102/17
**paperwork [5]** 45/12 45/14 50/23 52/16 74/19
**paragraph [8]** 25/24 48/24 72/5 72/20 93/4
  93/9 96/16 96/18
**paragraphs [1]** 5/21
**part [17]** 10/13 11/13 12/5 17/8 22/3 30/7 32/9
  32/11 32/22 45/9 45/9 68/13 73/25 74/11
  74/14 74/17 104/24
**partial [1]** 93/20
**parties [1]** 11/20
**partner [1]** 47/14
**partners [1]** 27/23
**party [1]** 93/12
**past [3]** 38/3 80/17 80/19
**Patch [2]** 82/12 82/25
**Pause [5]** 86/17 90/16 105/4
**pay [20]** 25/25 29/24 30/5 30/6 30/9 31/23
  40/1 40/1 50/3 52/13 55/19 55/22 55/24 55/25
  56/7 59/23 82/24 83/11 83/15 85/1
**paying [3]** 52/14 59/13 59/18
**payment [16]** 45/5 45/23 45/24 46/1 46/3 57/7
  57/16 59/13 59/17 62/16 62/18 62/23 73/2
  93/12 100/20 101/12
**payments [9]** 25/24 26/6 44/9 59/19 60/4
  60/12 70/25 71/1 93/13
**penalty [2]** 93/25 94/6
**people [3]** 89/10 90/10 91/25
**people's [1]** 89/21
**Per [2]** 17/23 17/25
**percent [7]** 56/25 74/21 79/6 79/12 79/16
  87/19 87/24
**perform [1]** 10/4
**performed [2]** 79/7 79/13
**performing [1]** 74/22
**period [1]** 29/24
**perjury [2]** 93/25 94/6
**permission [1]** 23/6
**person [2]** 9/20 9/21
**personal [8]** 12/10 13/18 43/17 43/19 44/8
  45/3 50/12 59/18
**phone [5]** 35/4 78/14 103/20 103/21 103/21
**pick [3]** 23/16 50/25 96/2
**Pirch [2]** 90/7 90/11
**place [1]** 18/23
**placed [2]** 89/24 98/24
**Plaintiff [1]** 1/10 2/2
**PLAINTIFF'S [2]** 3/4 3/7
**play [1]** 65/21
**played [1]** 65/25
**plea [3]** 29/6 30/7 68/8
**plead [1]** 15/6
**pleading [2]** 9/23 33/4
**please [31]** 22/21 31/8 34/14 37/3 52/8 53/13

53/13 53/13 53/19 53/20 53/20 55/20 58/3
58/5 61/24 61/25 66/1 67/3 67/3 69/2 69/16
69/18 77/20 77/24 90/15 92/25 93/6 105/9
105/22 105/25 106/1
**pled [10]** 8/19 9/3 9/4 9/5 15/8 15/15 15/17
  15/20 15/23 16/3
**PLS [2]** 65/2 65/4
**plus [1]** 9/15
**point [11]** 4/24 8/22 33/13 46/19 52/14 58/7
  58/12 72/17 73/13 74/23 91/14
**points [1]** 78/7
**policy [1]** 91/23
**portion [4]** 60/12 93/4 94/11 97/5
**portions [1]** 96/12 96/24
**position [7]** 7/13 7/18 7/19 7/20 59/22 74/13
  83/8
**possibly [4]** 6/5 19/22 22/24 104/15
**posted [1]** 29/12
**practice [2]** 97/18 97/20
**preceding [1]** 17/15
**preclude [1]** 11/13
**precluded [1]** 11/20
**preference [1]** 7/11
**prejudicial [2]** 10/18 69/8
**prepare [1]** 55/20
**prepared [3]** 77/18 77/22 78/10
**present [8]** 4/2 4/10 12/17 67/11 67/15 69/11
  69/19 106/2
**presented [4]** 6/15 69/11 69/16 93/11
**presently [1]** 89/19
**president [1]** 25/10
**PRESIDING [1]** 1/8
**press [1]** 80/16
**pressure [1]** 48/22
**pretty [1]** 56/1
**previous [3]** 25/5 25/21 75/11
**previously [5]** 12/18 90/23 99/21 100/14
  101/5
**primarily [1]** 43/14
**prior [12]** 7/25 25/13 51/3 68/7 73/5 79/5
  79/10 80/20 81/1 88/23 89/6 90/24
**priority [2]** 34/14 34/17
**PRO [1]** 2/14
**probably [2]** 14/13 30/25
**probation [2]** 89/25 90/4
**probative [2]** 10/19 69/8
**problem [1]** 13/23
**problems [1]** 59/18
**proceed [2]** 80/18 93/6
**proceedings [8]** 1/15 12/16 67/14 86/17
  90/16 90/24 105/4 107/9
**proceeds [6]** 62/11 72/11 72/23 83/2 83/10
  83/14
**process [1]** 78/11
**produced [8]** 4/16 5/1 5/7 5/10 5/16 6/6 6/8
  11/3
**production [5]** 4/14 5/15 5/25 11/14 12/5
**progress [2]** 54/12 54/13
**project [2]** 57/25 58/1
**promptly [1]** 62/19
**propensity [2]** 9/8 10/20
**protective [3]** 11/9 11/11 11/19
**proud [3]** 32/9 32/11 32/20
**provide [22]** 20/21 22/1 23/6 37/8 44/10 46/25
  51/10 56/11 56/14 62/17 62/19 62/24 65/12
  66/3 66/5 70/10 70/13 76/18 84/18 85/9 85/10
  91/2
**provided [21]** 20/12 25/21 26/5 50/14 50/20
  51/5 62/23 63/4 65/9 65/15 70/6 79/6 79/11
  87/18 88/13 90/23 92/5 92/9 92/11 92/21
  93/20
**provides [1]** 4/13
**providing [5]** 20/6 44/13 47/12 60/8 91/7
**public [4]** 11/4 12/5 12/7 80/6
**publicly [1]** 80/9
**pull [1]** 17/8
**pure [1]** 9/23
**purpose [1]** 72/1
**purposes [1]** 17/2

**pursuant [4]** 62/11 79/5 79/10 107/6
**pursue [1]** 45/22
**pursuing [2]** 15/2 35/16
**put [11]** 7/1 18/2 19/22 34/18 37/15 43/14
  58/20 58/23 59/22 74/19 84/11
**putting [1]** 43/11

**Q**

**question [16]** 11/1 11/18 13/9 25/18 31/17
  33/8 37/24 44/3 48/23 52/2 68/12 68/13 81/8
  89/4 91/1 104/22
**questioned [1]** 5/1
**questions [9]** 58/4 68/11 86/15 87/12 90/21
  95/9 100/3 100/5 103/12
**quicker [2]** 43/15 43/16
**quickly [1]** 31/23
**quit [2]** 55/19 55/22
**Quix [15]** 15/21 15/24 32/13 47/7 58/2 74/13
  76/14 76/18 76/23 77/14 77/22 78/15 79/17
  79/19 84/8
**Quix's [1]** 75/10

**R**

**raise [2]** 7/24 68/3
**raised [1]** 8/2
**Ramon [1]** 4/7
**Rappaport [4]** 88/18 88/20 88/23 89/7
**rate [2]** 57/1 57/3
**rationale [1]** 11/17
**re [1]** 62/5
**reach [2]** 24/1 66/8
**reached [1]** 24/2
**read [7]** 7/6 7/14 7/21 21/13 48/14 55/17
  78/9 79/3 93/16 93/23 94/11 95/20 96/3
  104/24
**reading [1]** 100/25
**reads [1]** 93/9
**Reagan [1]** 2/10
**real [1]** 49/1
**realize [2]** 67/17 67/20
**really [10]** 14/8 14/11 31/12 35/9 37/2 49/4
  49/21 50/4 59/14 84/15
**reason [3]** 5/4 9/10 21/25
**recall [12]** 25/3 81/24 90/10 90/21 91/11
  91/14 91/18 92/1 99/21 100/5 100/9 103/18
**receive [9]** 17/18 19/24 26/6 34/15 38/8 38/10
  60/3 64/17 70/19
**received [51]** 3/7 3/19 13/13 17/4 17/6 17/11
  17/12 18/21 19/18 19/20 19/21 24/21 24/22
  26/10 28/16 28/17 28/19 34/25 38/18 38/21
  40/19 40/21 42/22 42/24 46/5 48/6 48/7 58/7
  59/5 59/6 60/14 61/20 61/22 63/7 63/14 64/6
  64/7 65/23 65/24 67/1 67/3 70/23 72/3 75/24
  75/25 76/2 76/3 76/25 86/1 96/25 97/1
**receiving [2]** 25/13 64/19
**recent [1]** 75/6
**recess [6]** 12/14 12/15 67/10 67/13 106/3
  106/4
**recognize [2]** 24/7 61/9
**recollection [6]** 79/1 98/18 99/13 99/16
  104/23 105/6
**record [6]** 6/11 12/7 33/18 68/13 69/6 96/10
**recorded [1]** 91/8
**recording [2]** 65/16 65/25
**records [5]** 22/22 70/10 76/18 103/21 103/21
**RECROSS [2]** 3/4 3/16
**redacted [5]** 3/20 93/19 95/2 96/16 97/1
**redactions [1]** 12/9
**REDIRECT [2]** 3/4 3/16
**refer [3]** 5/23 33/5 37/11
**reference [2]** 43/15 68/24
**referenced [3]** 8/3 78/16 94/11
**referred [1]** 80/17
**referring [25]** 4/20 19/6 19/20 27/21 27/22
  30/1 31/21 34/4 35/11 35/14 39/10 45/1 45/2
  45/10 45/19 45/25 49/6 49/23 52/10 53/21
  54/23 58/5 60/24 74/12 78/21
**reflection [1]** 101/7
**refresh [6]** 79/1 98/18 99/12 99/16 104/23

**R**

**refresh...** [1] 105/6
**regard** [3] 4/14 6/18 6/19
**regarding** [4] 27/24 76/14 76/23 102/20
**Regnier** [26] 16/20 16/23 20/25 21/9 21/14 21/19 21/22 21/25 22/10 22/17 23/5 35/21 36/5 36/7 36/10 36/13 36/16 36/23 37/22 76/9 76/22 77/4 98/4 98/12 99/6 99/18
**regulations** [1] 107/11
**relate** [1] 47/10
**related** [1] 100/7
**relates** [2] 12/2 68/5
**relating** [5] 8/15 8/20 11/24 96/7 100/3
**relied** [1] 39/5
**remember** [10] 8/2 17/13 67/6 87/2 90/12 90/13 90/14 91/16 98/8 105/23
**reminded** [1] 12/20
**reminders** [2] 17/24 18/1
**rent** [2] 55/25 60/3
**repeat** [1] 104/21
**repeatedly** [1] 92/15
**repeats** [1] 93/14
**rephrase** [1] 16/8
**replied** [3] 6/19 38/19 53/11
**replies** [1] 28/8
**reply** [11] 7/1 27/15 34/4 34/8 35/17 38/25 39/13 75/15 75/18 77/25 78/4
**reported** [1] 107/8
**reporter** [2] 91/3 107/16
**REPORTER'S** [1] 1/15
**representing** [2] 70/17 70/20
**represents** [1] 6/13
**request** [14] 11/21 17/24 18/1 22/15 22/19 46/24 46/24 60/11 62/17 73/11 76/14 79/8 79/8 79/14
**requested** [4] 22/20 66/3 84/16 84/17
**requesting** [2] 70/4 76/17
**require** [1] 9/22
**required** [2] 9/24 93/11
**requirements** [1] 10/18
**research** [2] 67/9 105/25
**reservations** [2] 16/2 16/8
**resolves** [1] 10/15
**respect** [1] 69/16
**respond** [5] 41/16 43/16 45/4 45/10 50/17
**responded** [5] 31/19 58/14 73/9 73/10 73/13
**respondent** [2] 93/10 93/20
**responding** [2] 103/17 104/8
**response** [14] 6/25 21/23 30/18 32/23 45/13 46/6 46/24 50/4 64/21 66/2 70/9 80/10 80/25 84/2
**responsive** [5] 61/3 103/12 103/15 103/16 103/18
**restitution** [2] 30/6 30/10
**restriction** [1] 12/6
**resume** [1] 105/22
**resumed** [2] 12/16 67/14
**retain** [1] 58/8
**retrieving** [1] 105/3
**return** [1] 78/14
**review** [1] 27/11
**reviewed** [2] 24/3 24/4
**revisit** [2] 69/9 69/10
**Ricci** [3] 80/24 81/2 82/24
**Richard** [1] 21/16 25/10 81/23 82/25
**right** [51] 5/8 12/4 12/14 15/16 19/10 38/19 68/2 87/20 87/22 89/19 89/22 89/25 90/7 90/24 91/4 92/6 94/17 94/21 94/23 94/25 95/3 95/3 95/6 95/7 96/20 97/3 97/5 97/15 97/16 98/5 98/16 99/10 100/16 101/3 101/13 101/19 101/24 102/7 102/10 102/14 102/18 102/22 103/4 103/13 103/22 103/25 104/3 105/12 105/14 105/18 105/19
**right-hand** [5] 5/8 95/3 97/3 97/5 97/15
**Roasters** [1] 83/16
**Ronald** [1] 2/10
**room** [4] 23/23 101/8 102/2 102/21
**row** [2] 54/5 57/19
**RPR** [1] 1/19

**rule** [3] 11/8 68/12 68/19
**ruled** [2] 69/1 90/14
**ruling** [1] 89/2
**rulings** [1] 69/10
**run** [4] 11/16 11/22 12/1 68/17
**Runkles** [1] 25/10
**Runkles'** [1] 21/16 96/7
**running** [1] 55/25

**S**

**SACR** [2] 1/11 4/3
**SACR-19-00061-JVS** [2] 1/11 4/3
**SAGEL** [17] 2/9 4/5 9/13 12/25 67/25 68/8 69/20 87/22 90/21 91/14 95/9 98/8 99/17 100/2 103/3 103/11 104/17
**said** [50] 7/21 15/13 18/11 19/3 25/3 27/18 22/22 30/14 30/15 30/16 30/17 31/17 31/24 32/11 32/14 35/10 35/18 37/9 37/24 39/3 41/7 41/11 44/24 45/18 46/19 49/21 51/13 53/6 53/19 54/8 54/10 54/22 55/3 55/21 56/25 59/16 59/20 60/14 73/9 73/24 79/10 80/14 80/15 80/21 91/4 91/8 96/1 98/15 99/12 103/17
**same** [11] 7/20 9/5 10/13 18/5 25/20 50/14 50/20 64/13 85/9 85/18 85/25
**San** [14] 2/16 14/13 15/2 27/23 29/7 29/16 30/6 31/22 33/4 38/22 68/6 88/9 88/10 88/19
**Santa** [4] 1/16 1/20 2/11 4/1
**satisfied** [2] 4/15
**Saturday** [2] 27/11 58/3
**saw** [3] 11/24 101/7 102/1
**say** [57] 16/14 18/7 18/9 18/12 18/20 19/13 19/16 19/18 19/20 22/19 27/17 29/11 30/1 31/8 31/16 34/6 34/13 35/17 35/24 37/2 39/2 39/13 41/16 45/10 45/11 45/14 45/22 45/24 46/10 46/14 50/5 50/9 50/12 51/24 53/4 53/15 54/8 54/11 54/25 55/8 55/10 59/12 59/12 59/24 60/11 60/21 74/10 76/17 79/24 80/12 85/15 88/10 90/2 93/18 101/18 103/16 105/11
**saying** [11] 9/14 27/10 33/25 49/7 52/6 52/10 52/17 54/2 54/22 59/24 79/22 105/7
**says** [22] 6/1 14/8 21/15 22/19 25/23 25/25 32/7 39/10 43/19 45/3 46/17 48/15 48/16 48/24 50/12 51/25 55/18 62/9 72/5 72/20 77/13 99/1
**scary** [3] 29/4 29/5 34/11
**Scheck** [4] 45/7 46/11 46/13 50/19
**scheduled** [1] 57/15
**scope** [2] 68/12 68/20
**screen** [2] 19/23 37/16
**SD** [3] 27/12 27/20 39/8
**SE** [1] 2/14
**seal** [3] 11/5 11/14 12/1
**sealing** [1] 11/21
**seat** [3] 79/6 79/12 79/16
**seated** [1] 91/3
**second** [14] 19/19 22/15 22/19 29/10 31/18 36/12 45/5 45/23 45/24 46/2 48/18 57/7 57/16 94/15
**Secretary** [1] 77/16
**section** [10] 2/6 25/23 30/14 43/17 47/7 47/7 50/12 77/19 104/21 107/6
**sections** [1] 47/4
**secure** [2] 49/3 62/9
**see** [42] 5/20 14/5 14/9 14/15 15/16 18/24 23/1 25/11 26/2 29/19 31/14 31/14 32/2 36/21 37/22 39/5 47/5 47/8 53/2 54/6 55/15 57/21 60/19 60/21 70/1 72/12 73/19 75/4 76/6 78/7 95/10 95/15 97/6 98/18 99/2 99/4 104/13 104/24 105/8 105/12 105/16 106/1
**seeing** [1] 14/21
**seemed** [2] 7/13 38/3
**seen** [3] 22/3 25/14 96/7
**SEFFENS** [3] 1/19 107/15 107/16
**SELNA** [1] 1/8
**send** [15] 17/9 19/15 21/9 22/21 31/5 38/13 38/18 46/17 48/19 52/6 55/14 64/22 71/3 71/9 76/22
**sending** [10] 14/18 14/23 20/4 21/19 22/23

**sent** [66] 14/7 14/15 16/19 16/22 21/13 21/22 22/9 22/16 27/10 31/13 31/24 33/11 33/25 35/4 36/14 36/16 36/20 37/22 39/4 40/9 40/12 40/23 42/13 42/16 47/19 47/23 51/21 53/2 54/2 54/5 54/20 55/17 57/19 57/23 58/10 58/18 59/8 59/25 60/2 60/16 61/14 63/12 63/18 63/21 63/21 64/9 64/13 66/13 66/14 66/20 69/14 71/11 72/21 73/19 73/23 74/3 75/7 75/11 75/15 75/18 78/21 103/24 104/12 104/24 105/7
**sentence** [3] 48/14 48/18 48/21
**sentenced** [3] 29/6 90/3 90/3
**sentencing** [2] 38/22 68/9
**separate** [2] 12/6 98/2
**September** [8] 35/19 35/22 36/9 36/13 36/21 38/8 38/19 39/19
**September 10th** [3] 36/9 36/13 36/21
**September 11th** [1] 38/8
**September 17th** [1] 38/19
**services** [2] 74/22 88/13
**setting** [1] 39/16
**settlement** [73] 13/12 18/21 20/11 20/12 20/16 20/20 21/1 22/22 23/9 23/12 23/18 23/21 24/1 24/12 24/15 25/7 25/14 26/4 26/11 26/12 26/16 33/10 33/14 35/11 46/4 49/13 49/17 60/13 62/6 62/12 62/13 62/16 62/20 62/23 70/6 70/14 70/19 70/22 72/11 72/24 72/25 73/2 74/4 74/24 77/10 79/20 79/25 83/1 83/11 83/15 84/4 85/4 85/7 85/13 85/16 85/20 92/5 92/9 92/12 92/17 92/21 93/10 93/20 95/24 98/3 98/5 98/14 100/15 100/20 101/12 102/6
**settling** [1] 93/12
**setup** [1] 74/18
**seven** [4] 24/10 25/19 25/20 34/7
**Seventh** [1] 94/25
**several** [1] 19/17
**shape** [1] 87/24
**share** [2] 49/18 85/6
**SHARON** [3] 1/19 107/15 107/16
**she** [6] 21/1 23/25 24/1 36/14 36/24 91/3
**shed** [1] 10/19
**shit** [5] 51/25 52/1 52/2 52/3 52/11
**short** [3] 18/2 29/23 29/24
**shortly** [1] 55/11
**should** [10] 6/6 6/7 7/14 8/10 9/10 11/5 11/7 15/13 45/11 79/19
**show** [1] 95/8
**showed** [2] 85/11 96/12
**showing** [2] 68/22 81/2
**shows** [1] 96/16
**side's** [1] 25/15
**sign** [4] 77/21 79/8 93/11 97/21
**signal** [1] 101/11
**signature** [14] 21/17 24/4 25/1 25/9 25/15 49/8 61/11 66/18 95/2 95/5 95/14 96/7 96/8 97/12
**signatures** [1] 26/11
**signed** [10] 21/12 21/16 21/18 21/20 22/22 25/3 74/4 77/24 85/4 97/16
**significant** [2] 79/7 79/13
**silence** [1] 73/12
**simply** [1] 75/25
**since** [1] 8/10
**sir** [22] 4/25 7/13 12/20 67/12 67/22 68/11 69/5 69/15 72/1 92/9 92/15 92/20 93/9 95/8 96/23 98/23 99/16 101/5 103/18 104/7 104/10 105/6
**sit** [2] 25/19 87/22
**sitting** [3] 23/22 23/24 100/24
**situation** [2] 13/15 83/21
**six** [2] 5/8 21/18
**sixth** [2] 94/23 99/3
**smaller** [2] 52/5 55/3
**so** [39] 5/16 6/1 7/15 9/10 11/7 14/21 22/16 23/17 27/19 43/15 44/13 44/22 48/19 48/22 49/1 49/25 50/2 50/2 55/20 56/2 67/10 69/1

**S**

**so...** [17] 73/25 78/20 79/10 87/10 88/2 90/2 91/1 96/15 97/13 99/20 100/10 100/13 101/17 102/8 102/19 103/20 104/5
**sole** [3] 77/14 77/19 77/21
**solution** [3] 53/7 53/8 54/2
**some** [14] 12/5 23/23 30/5 31/11 40/25 51/13 58/4 58/5 58/12 58/13 74/20 79/24 87/12 97/6
**someone** [1] 104/7
**something** [6] 22/24 39/21 46/22 46/25 91/2 100/7
**sometimes** [2] 41/3 41/12
**soon** [1] 38/24
**sorry** [2] 31/2 104/21
**source** [1] 57/9
**SOUTHERN** [1] 1/6
**speak** [1] 58/12
**speaking** [1] 54/24
**speaks** [1] 73/12
**Special** [1] 4/7
**specifically** [1] 41/23
**specifics** [1] 89/4
**speculation** [4] 16/5 57/11 84/13 101/20
**spot** [2] 59/15 59/20
**spreadsheet** [6] 5/6 5/16 5/17 6/1 6/2 6/5
**Spring** [1] 2/7
**stamp** [4] 5/8 5/14 5/23 5/24
**stand** [5] 51/25 52/1 90/24 99/24 101/17
**standing** [1] 33/16
**start** [12] 20/19 21/7 24/24 27/19 28/20 51/18 51/24 54/19 57/23 61/24 64/25 76/5
**started** [1] 78/18
**starting** [1] 22/24 31/5 38/15
**starts** [4] 17/23 43/6 55/14 78/6
**state** [3] 8/17 77/16 94/1
**stated** [3] 49/16 69/6 71/23
**statements** [1] 80/9
**states** [13] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/4 4/6 91/2 107/7 107/11
**statute** [5] 9/16 9/17 10/3 10/4 10/6
**stealing** [1] 89/21 98/16 99/10
**stenographically** [1] 107/8
**step** [2] 67/12 67/22
**Steve** [3] 88/8 88/9 88/14
**STEWARD** [3] 2/15 2/15 4/10
**still** [13] 12/20 15/20 29/16 30/18 34/10 35/16 37/18 45/6 46/10 50/18 52/21 58/11 76/25
**stipulation** [1] 7/6
**stolen** [1] 104/8
**stood** [1] 99/22
**stop** [2] 78/16 101/12
**stopped** [3] 78/12 78/19 102/4
**strategy** [2] 45/7 46/14
**Street** [4] 1/20 2/7 2/11 100/25
**stress** [1] 39/3
**strict** [2] 9/17 10/4
**strike** [6] 84/21 87/7 91/22 92/3 97/4 100/2
**struggles** [1] 40/3
**subject** [14] 17/21 21/11 22/14 28/21 29/3 36/25 40/23 43/2 48/12 59/10 62/5 72/9 72/11 76/13
**subjects** [1] 68/14
**submitted** [2] 67/8 105/25
**subsections** [2] 25/24 26/1
**subsequent** [1] 71/1
**subsequently** [1] 8/18
**such** [6] 42/5 59/15 59/20 59/22 62/18 62/25
**sue** [1] 90/9
**sued** [3] 90/6 90/11 90/13
**suggest** [1] 56/20
**suggested** [1] 51/11
**suing** [1] 90/8
**Suite** [3] 1/20 2/11 2/16
**sum** [1] 25/25
**Sunday** [3] 27/12 27/18 58/3
**Supply** [13] 15/21 15/24 32/13 58/2 74/13 76/14 76/18 76/23 77/14 77/22 79/17 79/19 84/8
**supposed** [3] 26/5 29/12 47/14

**supposedly** [2] 5/17 6/6
**sure** [17] 11/2 44/4 49/19 55/14 57/13 78/10 105/13
**survival** [1] 52/15
**survive** [4] 44/14 44/16 59/14 59/17
**suspected** [1] 46/19
**Sustained** [7] 16/6 83/25 84/6 86/6 88/5 99/14 101/22
**sworn** [2] 12/19 102/13

**T**

**table** [1] 4/7
**take** [14] 6/17 10/21 15/13 30/4 41/3 41/11 41/12 67/4 74/24 88/3 103/20 104/16 104/17 105/21
**taken** [5] 6/24 12/15 42/3 67/13 106/4
**takes** [2] 41/16 91/3
**taking** [2] 49/25 90/24
**talk** [15] 14/11 19/19 21/2 32/1 34/2 38/24 39/8 39/9 39/16 39/18 52/24 58/3 73/24 73/25 74/10
**talked** [2] 20/9 33/10 47/21 69/4
**talking** [12] 8/4 8/22 14/9 27/24 34/22 41/15 42/8 54/21 79/14 84/24 100/18 102/4
**talks** [1] 5/25
**team** [8] 32/10 32/12 32/21 73/25 74/11 74/14 74/17 74/25
**tell** [32] 6/9 10/9 16/8 17/18 20/23 21/1 23/15 25/18 26/12 26/16 26/19 30/20 37/8 46/7 49/12 55/5 56/7 56/23 57/2 57/6 60/10 74/23 79/19 84/3 84/25 85/5 85/19 86/1 86/4 87/9 94/7 95/23
**telling** [1] 44/2 44/6 44/22 51/16 83/22 84/2 104/13
**ten** [8] 8/9 56/25 74/21 79/6 79/12 79/16 97/23 97/25
**ten percent** [5] 56/25 74/21 79/6 79/12 79/16
**terms** [2] 62/11 62/16 72/15
**terrible** [1] 105/14
**test** [1] 8/9
**testified** [6] 71/22 92/3 92/15 96/6 101/1 103/3
**testify** [2] 86/25 92/18
**testifying** [2] 91/11 99/21
**testimony** [8] 7/6 7/10 7/15 7/22 87/1 90/23 92/6 102/13
**text** [57] 13/6 14/7 14/15 14/16 18/23 19/1 26/23 27/4 27/10 27/19 31/5 31/8 31/13 31/16 31/18 31/19 31/20 32/7 32/23 32/24 35/3 38/18 38/21 39/5 52/11 52/6 52/23 53/2 54/2 54/20 54/25 55/2 55/8 55/14 55/17 56/4 57/9 57/23 58/10 60/16 61/1 63/11 64/19 64/23 64/25 65/3 65/5 73/19 73/23 74/3 78/18 83/20 103/24 104/12 104/16 104/24 105/7
**texted** [2] 35/7 35/8
**texting** [1] 103/13
**texts** [4] 19/10 19/15 39/15 54/5
**than** [15] 7/1 8/8 9/14 10/19 31/12 31/20 34/14 38/6 38/12 41/3 41/11 41/12 47/20 63/14 69/8
**thank** [9] 7/4 7/8 12/8 13/1 55/1 68/23 69/21 78/6 86/20
**Thanks** [28] 14/8 18/6 19/5 19/16 19/18 21/17 27/14 27/21 31/12 32/2 32/7 33/3 34/13 34/16 35/8 38/24 39/9 41/5 52/9 54/3 54/20 54/2 55/9 55/20 58/13 60/23 64/17 74/2
**that** [429]
**that's** [38] 5/5 7/18 8/25 9/1 11/13 11/25 12/3 17/17 33/1 39/10 39/15 44/14 55/23 56/6 60/7 60/9 64/13 68/18 68/23 69/1 74/6 75/13 77/2 77/9 77/11 78/2 78/20 88/22 95/7 97/12 97/18 100/17 101/12 101/18 102/5 102/6 103/23 104/1
**theft** [1] 99/19
**their** [6] 6/25 46/2 57/16 76/1
**them** [11] 43/14 50/3 50/25 51/1 80/15 82/14 82/20 87/16 89/18 98/16 98/17
**then** [55] 17/23 19/17 21/13 26/1 28/7 30/6 31/13 31/24 32/7 34/8 34/13 34/22 36/13 39/4

**3** 9/15 41/1 43/17 46/10 46/17 48/21 48/24 50/2 54/2 52/5 53/3 53/6 54/1 54/4 54/11 54/25 55/8 55/9 55/12 57/20 58/10 59/24 60/4 60/15 63/3 73/1 73/8 76/21 77/20 77/25 78/3 79/3 93/14 93/18 95/5 95/22 102/1 102/9 105/14
**there** [31] 10/3 12/5 13/23 14/18 18/17 23/8 25/9 25/9 27/21 30/2 30/20 36/11 38/17 42/12 45/1 45/19 47/4 47/7 49/23 55/14 60/24 68/24 71/19 78/25 79/15 81/14 87/22 97/6 99/1 99/1 100/24
**there's** [3] 6/8 8/24 47/7
**thereof** [1] 10/20
**these** [15] 5/18 15/23 34/22 43/9 43/13 44/13 56/4 61/1 61/25 65/5 75/17 78/15 86/4
**they** [41] 5/23 5/24 9/6 9/7 9/7 10/12 11/5 11/21 13/6 15/3 15/19 25/22 45/3 45/5 45/11 45/12 45/22 46/2 47/11 50/6 50/17 82/13 82/15 82/21 89/12 89/15 89/17 90/8 90/9 90/9 97/9 98/15 99/7 99/8 101/18 101/18 102/5 102/9 102/10 102/16 103/2
**they're** [3] 10/13 18/24 46/7
**thing** [9] 42/5 43/24 44/24 46/18 50/20 53/13 53/14 53/19 53/20
**things** [19] 4/24 11/3 15/3 27/11 27/25 34/1 39/9 41/3 41/11 43/9 43/15 43/22 43/23 69/4 73/2 73/5 74/2 80/15 86/4
**things that** [1] 4/24
**think** [18] 8/4 8/9 10/15 11/25 27/13 27/20 38/22 41/12 46/2 54/13 55/8 68/4 68/21 69/23 81/7 83/8 101/1 105/21
**thinking** [1] 52/21
**third** [3] 28/8 77/12 94/17
**thirds** [1] 33/23
**this** [149]
**those** [29] 10/14 15/6 15/8 26/13 27/4 31/23 33/14 35/3 36/1 44/15 46/11 46/17 47/10 57/21 58/14 60/8 73/5 74/22 78/12 84/18 90/21 95/10 96/12 96/24 97/6 97/8 100/5 102/20 103/1
**though** [2] 52/20 93/19
**thought** [5] 35/15 43/24 44/25 60/2 104/8
**thousand** [3] 44/4 46/1 57/3
**three** [16] 18/9 18/9 22/16 36/14 46/17 50/23 54/10 55/19 55/22 71/1 73/2 73/5 75/11 78/3 79/4 93/13
**three-day** [2] 55/19 55/22
**throat** [1] 101/11
**through** [3] 6/4 76/16 89/21
**THURSDAY** [2] 4/1 31/9
**til** [7] 45/7 46/14 46/15 55/18 55/22 57/25 58/11
**time** [71] 7/24 10/22 14/12 15/15 15/20 16/25 18/6 21/25 23/3 23/5 23/8 24/18 25/6 25/19 26/12 27/12 30/21 34/1 34/7 34/15 35/8 35/25 36/3 37/5 38/6 39/10 39/16 40/4 40/15 41/15 41/15 41/25 42/18 43/21 48/1 51/6 52/24 54/21 54/22 58/7 58/13 61/1 61/16 63/1 64/11 65/19 69/12 70/9 73/21 74/7 74/14 78/18 79/18 79/20 82/14 85/3 85/10 85/18 86/8 91/1 91/7 91/15 91/25 92/2 92/4 96/13 97/16 97/22 100/10 100/18
**timing** [6] 17/20 49/4 49/22 50/1 50/5 50/9
**title** [2] 99/1 107/7
**today** [11] 6/25 7/19 35/8 37/4 54/21 54/22 58/12 87/23 88/2 92/3 92/15
**together** [8] 18/2 43/11 43/14 58/20 58/24 74/19 90/10 93/5
**told** [19] 18/17 22/1 30/13 32/19 37/9 38/12 42/7 45/11 45/12 46/22 51/8 52/18 52/20 54/1 57/5 68/8 90/15 96/8 102/17
**tomorrow** [12] 6/24 29/4 29/11 31/10 31/25 32/1 34/11 38/22 39/9 54/21 57/25 58/11
**tone** [1] 42/8
**tonight** [1] 32/1
**too** [1] 69/6
**took** [7] 4/22 7/18 12/21 18/23 30/3 35/11 91/6
**top** [10] 14/16 17/8 22/3 34/8 36/12 37/21

**T**
top... [4] 61/24 61/25 72/5 75/7
total [6] 7/10 25/25 43/21 44/7 50/13 93/14
towards [3] 8/11 18/23 101/10
transcript [6] 1/9 1/15 91/8 95/9 107/8 107/10
transfer [3] 73/11 76/14 76/23
transferred [1] 70/4
traveling [1] 57/24
trial [3] 1/12 8/2 11/5
tried [1] 64/16
trouble [3] 19/4 19/6 49/1
troubles [1] 14/13
true [29] 24/15 26/12 40/12 42/15 47/23 58/23 61/13 62/20 63/20 65/16 66/20 71/1 72/14 75/17 77/10 88/15 88/21 92/20 93/19 94/1 98/6 98/11 100/12 100/21 103/23 104/1 104/12 104/14 107/7
trust [2] 86/8 86/14
trusting [1] 80/21
trustworthiness [1] 9/8
truth [11] 10/9 28/17 28/18 36/17 75/25 76/1 84/15 87/9 87/9 87/10 94/7
truthful [4] 9/8 87/19 87/25 103/2
try [2] 18/15 58/8
trying [11] 9/1 9/2 12/3 27/9 32/17 41/10 43/15 49/2 49/2 49/7 49/8 68/22 102/5
Tuesday [6] 18/5 18/10 18/14 18/18 52/3 57/25
Tully's [1] 83/9
turn [5] 13/6 13/10 18/22 26/23 73/15
turned [2] 14/21 70/6
turning [2] 31/22 79/3
twice [1] 102/22
two [22] 8/19 10/17 15/3 15/4 15/6 15/9 15/15 15/16 15/23 19/15 28/7 30/6 33/23 36/11 36/13 39/4 45/3 50/17 54/5 57/19 64/23 74/2
two-thirds [1] 33/23

**U**
U.S [1] 107/16
under [23] 8/7 8/9 10/5 10/18 11/5 11/14 12/21 29/21 43/19 48/22 62/16 72/23 77/19 93/25 93/25 95/9 99/21 100/14 101/6 101/15 102/21 103/3 103/11
understand [5] 53/8 62/14 83/7 87/4 99/9
understanding [4] 79/14 87/7 87/8 87/11
understood [6] 6/23 11/19 50/2 87/18 94/6 101/2
UNITED [12] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/3 4/6 107/7 107/11
unless [2] 12/5 69/10
until [8] 41/5 46/16 51/17 55/4 67/8 84/16 85/4 105/24
up [26] 6/17 6/24 10/21 14/14 17/8 23/16 27/9 27/24 31/24 34/22 39/4 39/16 40/1 48/20 50/25 52/23 53/1 53/14 53/20 55/12 61/5 65/1 71/3 76/21 80/15 96/2
upcoming [1] 47/8
update [6] 41/2 41/2 41/5 41/8 54/10 54/13
updates [1] 48/19
upset [2] 42/4 42/6
upside [2] 53/12 53/16
us [10] 15/12 32/13 49/19 59/3 59/17 62/19 74/19 79/4 84/18 96/16
USA [10] 25/11 46/13 62/6 62/12 62/15 62/22 72/10 72/12 72/25 83/11 83/15
USA's [1] 62/17
USD [1] 25/25
use [5] 49/2 83/10 83/14 93/5 93/7
used [2] 11/21 85/1
using [3] 11/12 49/12 99/12
usual [1] 68/19
UTC [1] 73/21

**V**
various [4] 60/11 63/11 100/3 102/24
veracity [1] 10/20
verify [3] 103/14 104/4 104/15
versus [7] 4/4 22/21 62/6 72/10 72/12 74/5

90/7
try [20] 7/24 13/20 64/7 67/21 74/20 80/15 103/15 103/16
via [5] 60/13 66/14 66/21 69/24 71/11
view [1] 88/2
voice [6] 65/7 65/9 65/12 65/15 65/17 65/20
VOL [1] 1/12
volume [2] 16/13 16/13
Volume 4 [1] 16/13
volumes [1] 73/12
vs [1] 1/10

**W**
wait [4] 92/8 104/13 104/24 105/8
waiting [3] 41/17 45/13 48/16
walking [1] 100/24
wall [2] 100/25 101/8
want [18] 6/17 11/2 11/15 11/22 12/1 27/13 27/20 41/3 41/11 68/11 68/17 68/21 73/24 73/25 74/10 74/11 100/7 103/10
wanted [4] 4/24 11/15 23/12 27/25 39/18 41/13 41/20 57/15 68/3 84/18
wanting [1] 46/20
wants [2] 7/23 10/21
was [155]
wasn't [6] 52/13 52/20 95/19 103/16 103/17 103/17
Waterman [11] 75/9 75/12 75/15 75/18 75/19 76/8 76/22 77/3 77/12 77/13 78/4
waving [1] 101/11
way [11] 6/2 6/9 32/9 32/15 33/23 43/15 70/18 73/18 81/1 81/7 87/24
we [111]
we'll [3] 90/18 102/20 106/1
we're [6] 6/16 8/4 8/22 30/25 41/16 69/1 69/8 100/18
we've [1] 78/15
Wednesday [5] 29/22 30/15 30/16 53/12 53/15
week [10] 17/24 18/1 27/12 27/20 29/23 31/9 50/21 50/25 51/3 59/25
weeks [1] 22/16
well [17] 4/11 9/11 11/9 25/17 36/11 46/19 51/24 68/19 69/3 72/1 75/15 76/9 87/7 92/3 96/18 97/4 103/16
went [4] 24/1 30/25 32/5 65/6
were [90] 10/10 10/12 13/6 13/7 13/10 13/20 15/16 15/19 18/15 23/23 25/19 26/5 26/13 30/17 31/21 32/20 33/4 34/17 35/3 35/10 35/14 40/4 41/9 41/15 43/7 43/13 44/13 44/22 45/19 45/20 45/20 49/25 51/6 52/16 52/20 55/23 56/4 60/3 63/10 64/8 70/4 70/25 71/1 73/5 74/7 74/11 74/20 75/11 75/14 78/11 79/23 81/4 81/14 81/17 82/15 82/21 83/21 83/22 83/22 83/23 85/6 86/25 89/12 89/15 89/17 89/21 89/24 90/2 90/3 90/6 90/8 90/10 90/19 91/7 92/5 92/9 92/21 95/6 97/8 100/4 100/4 101/3 102/5 102/12 102/17 103/9 103/13 103/15 103/20
weren't [1] 81/14
West [2] 1/20 2/11
what [149]
what's [12] 7/11 7/19 17/8 19/8 21/11 40/23 43/4 59/8 59/10 64/1 71/20 76/13
whatever [4] 18/15 46/20 50/24 68/25
when [80] 5/23 5/25 9/4 11/2 11/24 15/15 17/18 18/7 18/11 19/19 20/19 20/25 21/22 23/13 23/20 25/3 25/6 26/5 26/10 26/15 30/1 31/8 32/11 32/14 34/14 34/16 35/6 37/3 41/7 41/11 41/15 42/1 42/8 44/3 44/24 45/10 45/18 45/22 45/23 49/6 49/21 50/2 51/24 52/10 52/16 53/15 53/19 54/22 55/21 55/23 57/2 57/5 59/16 59/25 60/1 63/1 64/17 69/23 74/3 74/10 78/12 78/16 78/18 78/20 79/10 84/3 84/17 85/4 85/5 86/25 88/10 90/2 95/9 95/23 96/15 97/21 100/24 103/11 103/13
where [19] 13/9 19/20 23/8 55/24 59/22 75/6 79/22 83/20 100/23
whether [6] 6/3 6/14 30/20 41/24 91/15 91/16

which [14] 8/2 8/16 10/11 10/12 23/25 33/23 62/3 65/16 69/2 72/2 90/7 94/3 94/6 99/13
while [1] 105/1
who [26] 18/17 20/4 20/16 33/13 33/13 45/14 45/16 46/11 46/22 52/17 75/9 80/24 81/2 81/4 81/15 81/23 82/3 82/8 82/13 83/4 88/8 88/18 91/3 100/11 101/2 104/7
whole [1] 87/9
why [34] 5/3 5/5 5/8 25/11 7 11/12 18/20 20/23 21/19 22/23 26/21 30/4 31/18 34/17 38/2 39/23 39/25 43/7 44/2 44/6 44/13 46/2 47/12 49/6 51/15 51/15 52/20 55/1 60/1 60/8 60/12 83/22 83/22 86/8 97/10
wife [25] 37/24 32/8 38/23 55/15 55/18 55/21 63/3 65/26 69/2 72/19 73/4 74/13 74/3 90/9
will [38] 5/19 5/20 7/6 7/21 8/10 12/14 17/4 24/21 25/25 28/16 28/17 29/12 29/15 33/18 36/16 39/3 40/19 41/22 42/22 45/4 45/5 45/22 45/23 47/3 48/5 59/4 61/20 64/6 65/23 67/1 67/4 67/10 75/24 75/25 96/24 105/21 105/22 106/3
wind [3] 27/24 34/22 61/5
window [3] 85/9 85/18 85/25
wire [10] 17/11 19/4 19/21 19/24 37/1 37/3 37/6 37/21 38/8 38/10
wish [2] 6/21 93/4
within [2] 9/25 68/20
without [6] 8/16 10/5 11/14 12/1 15/5 15/17
witness [23] 6/14 12/18 13/8 24/11 33/19 35/20 40/8 51/20 58/17 61/8 63/16 66/12 67/18 67/20 67/23 71/7 71/22 75/3 78/25 93/2 96/12 98/21 105/3
witness's [1] 7/15
witnesses [4] 3/4 3/16 6/19 7/15
won't [1] 10/14
wondering [1] 41/9
word [3] 54/3 99/9 105/15
work [16] 10/4 32/9 32/15 32/20 35/19 35/24 74/18 74/24 79/7 79/13 79/19 79/25 82/6 84/8 84/11 85/12
worked [8] 15/4 74/16 81/4 81/9 81/15 81/25 100/11 101/2
working [18] 15/21 15/24 16/9 17/20 18/3 34/20 43/22 47/14 49/2 53/6 53/8 54/2 55/11 57/25 82/10 82/15 82/21 95/19
works [2] 45/17 74/1
worldwide [1] 74/21
worried [2] 49/24 59/14
worries [1] 19/3
worry [2] 19/3 22/24
would [67] 6/25 8/6 8/11 9/24 17/18 18/17 22/5 26/7 26/7 26/8 26/19 29/10 29/22 30/15 30/16 32/19 33/12 34/2 35/19 37/8 37/9 41/12 41/20 42/4 42/8 43/14 43/20 43/24 44/25 46/2 50/1 51/15 51/16 53/18 55/3 56/7 56/8 57/2 57/7 57/15 58/12 63/15 65/21 66/8 66/11 67/22 71/6 74/18 74/21 74/23 79/16 84/4 85/1 86/4 91/8 91/23 95/24 96/11 99/20 101/18 102/14 103/14 103/21 103/24 104/2 104/4 104/15
wouldn't [1] 7/15
write [5] 29/21 32/24 33/1 41/1 60/1
written [2] 62/17 66/5
wrong [1] 4/20
wrote [4] 39/7 48/9 92/16 103/10
WYMAN [2] 2/5 4/6

**X**
X-Law [2] 82/18 83/1

**Y**
Yeah [4] 55/18 74/9 98/1 105/11
year [9] 25/5 25/21 44/7 45/5 45/22 60/5 68/25 91/19 91/20
Year's [2] 91/19 91/24
years [7] 8/5 8/9 9/15 26/13 90/4 97/23 97/25
years' [1] 89/25
Yep [2] 27/8 31/4
yes [134]
yesterday [15] 5/1 6/20 7/7 7/14 7/19 8/1

## Y

**yesterday... [9]** 12/21 13/10 17/11 20/9 86/25
87/23 90/24 91/6 92/3
**yesterday's [1]** 95/8
**you [815]**
**you explaining [1]** 13/20
**you're [18]** 6/13 10/5 19/6 19/8 19/19 32/4
34/1 37/24 49/7 49/7 61/2 68/13 68/19 69/5
84/24 91/1 103/1 105/1
**you've [2]** 42/1 69/10
**your [231]**

## Z

**Zero [1]** 13/14