UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
                    Plaintiff,  )
      vs.                       )
                                )  SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,          )
                    Defendant.  )TRIAL DAY 16, VOL. 1
-----------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

August 6, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     ALEXANDER WYMAN
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25
```

```
 1

 2                                I-N-D-E-X

 3

 4   PLAINTIFF'S
     WITNESSES:              DIRECT    CROSS   REDIRECT    RECROSS
 5
     GREGORY BARELA
 6     (Continued)            28        88

 7   PLAINTIFF'S
     EXHIBITS:                                 MARKED      RECEIVED
 8
      (None)
 9
     DEFENSE
10   WITNESSES:         DIRECT    CROSS     REDIRECT    RECROSS

11    (None)

12   DEFENSE
     EXHIBITS:                               MARKED      RECEIVED
13
     Exhibit 1073                                          48
14   Exhibit 1058                             54
     Exhibit 1068                             70
15

16

17

18

19

20

21

22

23

24

25
```

|     |     |     |
| --- | --- | --- |
|         | 1  | SANTA ANA, CALIFORNIA; FRIDAY, AUGUST 6, 2021; 8:30 A.M. |
|         | 2  | (Jury not present) |
| 08:30   | 3  | THE CLERK:  Item 1, SACR-19-00061-JVS, United |
| 08:30   | 4  | States of America versus Michael John Avenatti. |
| 08:30   | 5  | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel |
| 08:30   | 6  | and Alexander Wyman on behalf of the United States.  And at |
| 08:30   | 7  | counsel table is Special Agent Ramon Carlos. |
| 08:30   | 8  | THE COURT:  Good morning. |
| 08:30   | 9  | MR. AVENATTI:  Good morning, Your Honor.  Michael |
| 08:30   | 10 | Avenatti, present with advisory counsel Mr. Dean Steward as |
| 08:31   | 11 | well as Ms. Cummings-Cefali. |
| 08:31   | 12 | THE COURT:  Good morning. |
| 08:31   | 13 | This morning the government filed a brief in |
| 08:31   | 14 | response to the Court's request as to whether third-party |
| 08:31   | 15 | compensation was a defense to fraud. |
| 08:31   | 16 | When can I expect your brief, Mr. Avenatti? |
| 08:31   | 17 | MR. AVENATTI:  Your Honor, can we file it by 9:00 |
| 08:31   | 18 | a.m. on Monday? |
| 08:31   | 19 | THE COURT:  That's fine.  I mean, this issue |
| 08:31   | 20 | affects not only the relevance of the evidence but also the |
| 08:31   | 21 | instructions.  But that's fine. |
| 08:31   | 22 | MR. AVENATTI:  You will have it by 9:00 a.m., Your |
| 08:31   | 23 | Honor. |
| 08:31   | 24 | THE COURT:  Okay. |
| 08:31   | 25 | Let's take up at this time the defendant's motion |

08:31    1    at docket 629 for a mistrial or an order to strike the

08:31    2    testimony of nine specific witnesses for alleged failure to

08:32    3    comply with the government's Jencks obligation.  I'm aware

08:32    4    of the moving papers in the government's response at Docket

08:32    5    644, as well as the reply filed by Mr. Avenatti yesterday at

08:32    6    Docket 647.

08:32    7            Mr. Avenatti, I would be happy to hear you

08:32    8    briefly.

08:32    9            MR. AVENATTI:  Your Honor, I'm not going to repeat

08:32   10    everything in the pleadings.  I know Your Honor, as the

08:32   11    Court has just indicated, has read the pleadings.

08:32   12            I do want to make the following point.  Especially

08:32   13    as it relates to Mr. Tashchyan and Mr. Varani, there is no

08:32   14    question, Your Honor, that those two gentlemen had e-mail

08:32   15    communications about this case and about the subject matters

08:33   16    of their testimony before they took the stand.

08:33   17            That is clear from the transcript, and the

08:33   18    government offers no response as it relates to where those

08:33   19    communications are.

08:33   20            THE COURT:  Well, you would agree that the mere

08:33   21    fact that there was communication is insufficient to cause

08:33   22    the Court to order an in-camera hearing or further

08:33   23    production.

08:33   24            MR. AVENATTI:  Your Honor, actually I would

08:33   25    disagree.  I think --

08:33  1          THE COURT:  Well, didn't the Ninth Circuit reject

08:33  2   that view in Robertson --

08:33  3          MR. AVENATTI:  Your Honor --

08:33  4          THE COURT:  Just a minute.

08:33  5          MR. AVENATTI:  I'm sorry.

08:33  6          THE COURT:  -- Robertson being United States

08:33  7   versus Robertson, 895 F.3d at 1206 (2018).

08:33  8          MR. AVENATTI:  Your Honor, I would disagree for

08:34  9   this reason.

08:34  10         THE COURT:  Didn't they specifically reject the

08:34  11  holding in Johnson that said an in-camera inquiry was always

08:34  12  required?

08:34  13         MR. AVENATTI:  Your Honor, I think they did reject

08:34  14  the idea that it's always required.

08:34  15         THE COURT:  Okay.

08:34  16         MR. AVENATTI:  However, in this case, we have two

08:34  17  government witnesses who were called to the stand who are

08:34  18  government employees who testified that they had performed

08:34  19  extensive work in the case, have been involved in the case

08:34  20  for years, had communications about the case including

08:34  21  e-mail communications, written communication.  There is no

08:34  22  question those are statements.  There is no question it

08:34  23  relates to the --

08:34  24         THE COURT:  Well, sir, that's not quite accurate.

08:34  25  The way the Jencks Act defines statements, it's not just

08:34   1   merely an utterance to a communication to qualify as a

08:34   2   statement.  It must have content that relates directly to

08:35   3   the witness's testimony.  True?

08:35   4            MR. AVENATTI:  That is true, Your Honor.  And my

08:35   5   point is this.  Their e-mail communications relating to the

08:35   6   work they did on the case are Jencks statements because they

08:35   7   were called to testify, Your Honor, about the work they did

08:35   8   on the case.  And they testified under oath that they had

08:35   9   these communications.  E-mails are statements.

08:35   10            THE COURT:  For Jencks Act purposes as long as

08:35   11   they relate to the testimony, yes.  I agree.

08:35   12            MR. AVENATTI:  Correct.  And they testified that

08:35   13   they had communications -- well, let me back up.  They were

08:35   14   called, Your Honor, by the government to talk about their

08:35   15   work on the case.  Then on cross-examination I established

08:35   16   that for the better part of two years they had been working

08:35   17   on the case and had engaged in communications, written

08:36   18   communications sent from them about the case.  That is

08:36   19   classic Jencks.

08:36   20            I think what is especially problematic for the

08:36   21   government is the government has not filed a declaration or

08:36   22   any statement with the Court that says that there are no

08:36   23   e-mails that these two individuals sent in connection with

08:36   24   the subject matter of the case or their testimony.  It's

08:36   25   clear that this information existed.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:36  1          And they also testified that nobody ever asked

08:36  2   them for it before they testified.  So at a minimum those

08:36  3   two witnesses' testimony should be struck for violation of

08:36  4   26.2 and the Jencks Act.  They have been e-mailing for the

08:36  5   better part of two years.  We don't have any of it.  We were

08:36  6   entitled to that before --

08:36  7          THE COURT:  I appreciate your position with

08:36  8   respect to those two witnesses.

08:37  9          MR. AVENATTI:  Thank you.  We were entitled to

08:37  10  that before they testified.

08:37  11         Your Honor, as it relates to Ms. Regnier, we still

08:37  12  don't have a representation from the government, either from

08:37  13  Mr. Wyman or Mr. Sagel or from Special Agent Carlos, that

08:37  14  they never received any text messages from Ms. Regnier

08:37  15  relating to this case and relating to the subject matters --

08:37  16         THE COURT:  Not relating to the case.  It's

08:37  17  relating to the testimony.

08:37  18         MR. AVENATTI:  Your Honor, her testimony was

08:37  19  incredibly broad.  She testified about a whole host of

08:37  20  things, about the finances of the firm, her authorization,

08:37  21  about individual clients, about the operation of the office.

08:37  22  I mean, it was very, very broad, the testimony that the

08:37  23  government elicited on direct from Ms. Regnier.

08:37  24         We don't have a representation from the government

08:37  25  and in particular from Special Agent Carlos that he never

08:38  1  received any text messages from Ms. Regnier.  We have

08:38  2  Ms. Regnier's testimony on the stand  --

08:38  3          THE COURT:  Sir, let's be precise.  You don't have

08:38  4  a declaration from Mr. Carlos that there are no

08:38  5  communications that related to the substance of her

08:38  6  testimony.  Isn't that the appropriate question?

08:38  7          MR. AVENATTI:  Yes, Your Honor.  But to be clear,

08:38  8  we don't have a declaration from Mr. Carlos at all.

08:38  9          THE COURT:  I understand that.  Okay.

08:38  10          MR. AVENATTI:  Okay.  So -- and I believe that

08:38  11  we're entitled, in light of the testimony of the witness, to

08:38  12  what she testified to, namely, that she had communications.

08:38  13  She put the time frame around 2019.  So we're not talking

08:38  14  about I'm in the parking garage waiting to come up and

08:38  15  testify at trial.  Of course, now it's 2021.  There was no

08:38  16  trial in 2019.

08:38  17          We have the testimony of the witness.  She says

08:38  18  she couldn't really estimate.  She said maybe around ten, I

08:39  19  think.  I don't remember exactly what she said.  Then she

08:39  20  said she doesn't think she has them any longer because she

08:39  21  discarded her phone.

08:39  22          We then served a subpoena on Ms. Regnier.  Not

08:39  23  surprisingly we don't have those text messages that she

08:39  24  referred to because, of course, she testified that she

08:39  25  didn't have them anymore.

08:39    1          THE COURT:  She bought a new phone.

08:39    2          MR. AVENATTI:  I think that's what she testified

08:39    3   to, yes, sir.  But that doesn't -- that's neither here nor

08:39    4   there because --

08:39    5          THE COURT:  You're looking at the other end, what

08:39    6   the government has.

08:39    7          MR. AVENATTI:  Yes, sir.  That's exactly right.

08:39    8   And if the government received text messages from

08:39    9   Ms. Regnier relating to the subject areas of her testimony,

08:39   10   and if those text messages (a) have not been produced,

08:39   11   that's a violation of 26.2 and Jencks; and (b) if they were

08:39   12   destroyed, that's a whole other kettle of fish.  It's a

08:39   13   violation of --

08:39   14          THE COURT:  It depends on who destroys them.

08:39   15          MR. AVENATTI:  Well, presumably if they were sent,

08:40   16   they were sent to, according to Ms. Regnier, Special Agent

08:40   17   Carlos.  Now, he is the lead agent on the case.  If he

08:40   18   destroyed them and did not preserve them, that's a very

08:40   19   serious issue.

08:40   20          If someone else on the prosecution team did not

08:40   21   preserve them, that's likewise a very serious issue.  That's

08:40   22   a violation of Jencks, 26.2.  We may be entitled to a

08:40   23   spoliation jury instruction.  I don't know.  The bottom line

08:40   24   is we don't know what happened, and we're entitled to know

08:40   25   what happened.

08:40   1          THE COURT:  Okay.

08:40   2          MR. AVENATTI:  And then lastly, Your Honor, as it

08:40   3   relates to this issue of the typewritten summary versus the

08:40   4   handwritten notes, here is what I do not think the

08:40   5   government is permitted to do under the law of the Ninth

08:40   6   Circuit.

08:40   7          In an effort to avoid producing handwritten notes,

08:40   8   the government is not permitted to meet with witnesses for

08:40   9   hours on end, record in their handwritten notes statements

08:41  10   of those witnesses, and then make the determination that

08:41  11   none of that is new information.

08:41  12          So, therefore, instead of producing the

08:41  13   handwritten notes, what we're going to do is we're going to

08:41  14   type up a one-sentence basically interview memorandum,

08:41  15   substantive sentence that says no new information was

08:41  16   provided.  Therefore, all we have to do is produce the

08:41  17   summary, and we don't have to produce any of the handwritten

08:41  18   notes.

08:41  19          I don't think that is permitted.  It's certainly

08:41  20   not in the spirit of the rule, and it appears to be an

08:41  21   effort to circumvent Jencks and 26.2.  So our position, Your

08:41  22   Honor, is those handwritten notes that underlie the supposed

08:41  23   no-new-information memoranda, those should be provided to

08:41  24   Your Honor so Your Honor can determine (a) whether they're

08:42  25   Jencks and should have been produced under Jencks and 26.2;

08:42   1   and also if they contain Brady information, Your Honor,

08:42   2   because even if the government determines it's no new

08:42   3   information, Your Honor knows that if a witness repeatedly

08:42   4   makes a misrepresentation in subsequent interviews, that can

08:42   5   be Brady.  It can be Giglio.  That's another reason why we

08:42   6   are entitled to know what happened during those interviews.

08:42   7   That's my position, Your Honor.

08:42   8              THE COURT:  Thank you.

08:42   9              Who is going to address this?

08:42   10              MR. SAGEL:  I can, Your Honor.  And I will be

08:42   11   brief, and I will respond to anything that Your Honor wants

08:42   12   because obviously we briefed this multiple times.

08:42   13              I will start with the last part that almost every

08:42   14   sentence started with, if, it may, it could.  And the word

08:42   15   "if" was used to start about six different sentences.  That

08:43   16   proves the point that this is all speculation by the

08:43   17   defendant, and he hasn't gotten to his threshold position.

08:43   18              The reason there was nothing put forward by the

08:43   19   government is because we don't have to, because he can't

08:43   20   even -- he's wildly speculating about what's going on.

08:43   21              Even the testimony he's referencing, for example,

08:43   22   with Ms. Regnier, which he quotes:  I may have had a text

08:43   23   message with him, and I think I had maybe this number or

08:43   24   that number of text messages with agents, Your Honor has now

08:43   25   seen them through the submission of counsel that they're not

08:43   1    substantive.

08:43   2            Your Honor has seen what we have produced and what

08:43   3    we didn't produce with regards to at least two different

08:43   4    witnesses.  Time and time again throughout this case there

08:43   5    are accusations after accusations based on wild conjecture

08:43   6    that have never been founded on anything, and that's the

08:43   7    same thing with this case and with these witnesses.  So he's

08:43   8    been produced everything that's substantive.

08:44   9            With regards to the last part about these memos

08:44   10   where we say no new information, we are doing that for his

08:44   11   sake because he is claiming, as we can see and assumed he

08:44   12   would, that a meeting with the government means something to

08:44   13   his defense, the number of times they have met with the

08:44   14   government.

08:44   15           So we wanted to make sure we are documenting for

08:44   16   him that we have met with a witness either to prep for trial

08:44   17   or whatever.  There is nothing new.  Yes, we know our

08:44   18   obligations under Brady, Jencks, Giglio, and a whole host of

08:44   19   discovery obligations.

08:44   20           If nothing new happens in those interviews, we are

08:44   21   at least documenting to the defendant that we met with the

08:44   22   witness on that date, and we are still saying how long we

08:44   23   met with them.  So he has that information.  If they said

08:44   24   something that becomes Brady, we have given it to him.  And

08:44   25   he has seen this time and time again with some of our

08:44  1  witnesses.

08:44  2       If we met with Greg Barela in trial prep and he

08:45  3  says three new things, he gets a report that says three new

08:45  4  things in it.  If the witness says nothing new, it's no new

08:45  5  information.  But he gets time and time again whatever the

08:45  6  meeting is and what happens at the meeting.  And he knows

08:45  7  that.

08:45  8       With regards to some of his statements here and if

08:45  9  you look at his filings -- and Your Honor obviously hones in

08:45 10  on it -- he keeps saying that the substantive information --

08:45 11  that the cross-examination are that they be substantive

08:45 12  information about the -- no, they said it's about the case.

08:45 13       There has never been anything either on

08:45 14  cross-examination or elicited that anybody has testified to

08:45 15  something that he isn't aware of because it has been

08:45 16  produced each and every time.  So he knows what these people

08:45 17  are saying.

08:45 18       There hasn't been a when have you ever told the

08:45 19  government that?  The reason is that every statement they're

08:45 20  giving he's been reading for two years that they've given to

08:45 21  us and has been produced to him.

08:45 22       I can answer any other questions, Your Honor.

08:46 23       THE COURT:  Well, what about the specifics

08:46 24  concerning Varani and Tashchyan?

08:46 25       MR. SAGEL:  So two parts to that.  One, I would

08:46  1    probably disagree with what they were called for.  They

08:46  2    weren't called to discuss their work on the case.  One was

08:46  3    called as a foundational witness for the metadata of two

08:46  4    documents.  One was called to show how we did the

08:46  5    extractions of the cell phone.

08:46  6           When it comes to their communications, both of

08:46  7    them, because they worked on everything on the evidentiary

08:46  8    side, if you want to call it that, they're on the taint

08:46  9    side.  They don't have communications with us because we

08:46  10   can't.  We're on the prosecution team.  They're on the taint

08:46  11   side.

08:46  12          So they -- I'll start with -- I don't know if Joe

08:46  13   Varani was a special agent or not, but Joe Varani, he is

08:46  14   getting all of the original computers, servers, documents,

08:46  15   and so forth.  The only thing he is getting any

08:46  16   communication that would be from the prosecution team is

08:46  17   basically the procedures for conducting the search and the

08:47  18   manner, not substantive to his testimony and not substantive

08:47  19   to the testimony we called him for.

08:47  20          His communications, which he didn't ask about,

08:47  21   wouldn't have been with the prosecution team about his

08:47  22   testimony because we didn't communicate.

08:47  23          Same thing with Special Agent Tashchyan, because

08:47  24   he is extracting on the taint side.  Now, obviously any

08:47  25   communications as it related to the cell phone extraction he

08:47  1    does have and we did produce.  There is nothing else to it,
08:47  2    Your Honor.
08:47  3           And anything about trial prep that related to what
08:47  4    they were going to testify to, we did, which we don't always
08:47  5    do, we did do a memorandum of interview of what they would
08:47  6    be testifying about and the substance of their testimony and
08:47  7    provided that to the defendant.
08:47  8           THE COURT:  Are you saying because they were on
08:47  9    the taint team, you had no substantive communications with
08:48  10   them about anything other than the narrow scope of their
08:48  11   testimony?
08:48  12          MR. SAGEL:  If I understand the question
08:48  13   correctly, that is correct.  The substantive communications
08:48  14   that we had with them are all in the last month or two, and
08:48  15   I don't even know -- yes, I will call it substantive.  It
08:48  16   was all about to prepare for what they would testify to as
08:48  17   it related to the two documents we were looking for, the
08:48  18   metadata; or the phones, we were looking to have them
08:48  19   testify about the extractions.  So generally I would say
08:48  20   yes.
08:48  21          Substantively -- I don't know if I would use the
08:48  22   word "substantively."  In 2019, there were probably e-mails
08:48  23   we were sending to them, us to them.  Here are the terms of
08:48  24   the search warrant.  Here's what's allowed.  Here are your
08:48  25   date restrictors.  Here are the search terms, for example.

08:49    1    But it wouldn't have been related to what they were

08:49    2    testifying about either.

08:49    3            THE COURT:  What about the text messages that

08:49    4    Ms. Regnier testified about that she had on her phone?  She

08:49    5    bought a new phone, discarded the phone.  At least on her

08:49    6    end the text messages are gone.

08:49    7            MR. SAGEL:  I will start with this:  Her testimony

08:49    8    was, "I may have."  It wasn't "I did."  I may have.  In this

08:49    9    case, as defendant knows and he even filed a motion on this,

08:49   10    I don't know, by now six or nine months ago, when we turned

08:49   11    over text messages that Special Agent Ramon Carlos got from

08:49   12    various witnesses who are more of the Global Baristas tax

08:49   13    side.

08:49   14            Every time Special Agent Carlos got a text

08:49   15    message, he put it in discovery; we printed it out.  We are

08:49   16    not aware of any text messages from Judy Regnier other than

08:49   17    the ones that the Court has now seen scheduling related.  We

08:49   18    didn't receive any from her.  The text messages she did

08:49   19    have, which have now been produced, were with primarily the

08:50   20    New York special agents, not on this case and not about her

08:50   21    testimony here and not substantive.

08:50   22            Unless Your Honor has any other questions, we

08:50   23    would submit on our papers.

08:50   24            THE COURT:  Are there no text messages from Varani

08:50   25    and Tashchyan about the narrow scope of what they testified

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:50    1   to, basically foundation testimony?

08:50    2           MR. SAGEL:  I would confer, but I highly doubt it.

08:50    3   You're saying text messages or e-mail?

08:50    4           (Government counsel conferring)

08:51    5           MR. SAGEL:  I think the answer -- and we can

08:51    6   double-check this and I can provide you the certainty, but

08:51    7   there would be no text messages.  As it relates to e-mails,

08:51    8   the only e-mails basically would have been contained in the

08:51    9   report such as, here are the screenshots, or, here is the

08:51   10   document that we were looking for to get the metadata for.

08:51   11           So that then when we interview them, yes, I have

08:51   12   gone onto it and I've looked at it.  We might have also

08:51   13   produced that, too, but it's definitely in the report.  He

08:51   14   received a screenshot of this document or that document, and

08:51   15   he looked up the metadata to determine it was created on

08:51   16   March 23rd, 2019, or something along those lines.

08:52   17           THE COURT:  Why don't you go back and look for

08:52   18   those two, just the e-mails, to see if you can confirm your

08:52   19   representation that there are no e-mails dealing with the

08:52   20   limited but nevertheless substantive part of their

08:52   21   testimony.

08:52   22           MR. SAGEL:  Understood, Your Honor.

08:52   23           THE COURT:  Does the government have anything

08:52   24   else?

08:52   25           MR. SAGEL:  Unless Your Honor had any other

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:52   1   questions, then --

08:52   2           THE COURT:  No.

08:52   3           MR. AVENATTI:  Your Honor, two quick points.

08:52   4   First, Jencks and 26.2 does not require only the production

08:52   5   of communications to the prosecution team.  That's not the

08:52   6   standard.  The standard is statements in the possession of

08:52   7   the government.  And the government has been defined in this

08:52   8   context as the Department of Justice.

08:52   9           So, therefore, this argument by Mr. Sagel that

08:52   10  somehow that these agents that they called as witnesses had

08:52   11  statements that were not sent to the prosecution team, that

08:53   12  somehow that means they're excepted out and we weren't

08:53   13  entitled to them, there is no basis in the law for that.  In

08:53   14  fact, it's directly contrary to the requirements of Jencks

08:53   15  and 26.2.  That's my first point.

08:53   16          My second point is this.  Mr. Sagel stated that

08:53   17  he --

08:53   18          THE COURT:  Well, wait a minute.  They're

08:53   19  responsible to produce what they get.  In this case what

08:53   20  they got from the subpoenaed documents was filtered by the

08:53   21  taint team to ensure what the prosecution team got was in

08:53   22  fact responsive to the subpoenas.  And they also screened

08:53   23  for privileged material.

08:53   24          MR. AVENATTI:  Your Honor, I think we're talking

08:53   25  about two different things.  Maybe I wasn't clear.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:53   1          THE COURT:  I understand.  I think what you are

08:53   2   telling me is you're entitled to their communications with

08:53   3   the taint team.

08:53   4          MR. AVENATTI:  You are correct, Your Honor.  I am

08:53   5   entitled to that.  I'm entitled to any statements in the

08:54   6   possession of the Department of Justice relating to the

08:54   7   subject areas of their testimony, these two individuals,

08:54   8   whatever e-mails they have.

08:54   9          And, look, their testimony is what it is relating

08:54   10  to the fact.  The idea -- just to be clear, the idea that in

08:54   11  today's day and age these two agents worked on this case for

08:54   12  two years and never had any e-mail communications about the

08:54   13  subject area of their testimony is ludicrous.  We all know

08:54   14  that's not true, and they testified that they had had those

08:54   15  communications.

08:54   16         My last point is this, Your Honor.  Mr. Sagel told

08:54   17  the Court that we had been provided e-mail communications

08:54   18  relating to the cell phone extractions performed by Agent

08:54   19  Tashchyan.  I wrote it down.  Now he's saying he didn't say

08:54   20  that.  The transcript is what it is.

08:54   21         THE COURT:  Well, fine.  I direct the government

08:54   22  to go back and confirm the representations that have been

08:55   23  made here today with regard to Tashchyan and Varani.  I'm

08:55   24  also going to ask that they contact the taint team and see

08:55   25  if they have any e-mails or communications of any variety

08:55   1   from either witness that went to the narrow subject for

08:55   2   which you put them on.

08:55   3           MR. AVENATTI:  And, Your Honor, my last request is

08:55   4   this.  At a minimum, I would ask that Special Agent Carlos

08:55   5   be required to submit a declaration to the Court under

08:55   6   penalty of perjury that he never had any text communications

08:55   7   with Ms. Regnier.  That's the representation that's been

08:55   8   made.  I would like it -- well, it's been made by Mr. Sagel.

08:55   9           I will tell Your Honor that we have not been

08:55   10  provided any text messages that were sent to Special Agent

08:56   11  Carlos.  If the representation is it never happened, then

08:56   12  it's directly contrary to what the witness believed

08:56   13  happened.

08:56   14          THE COURT:  There are two issues.  Just because

08:56   15  there are communications via e-mails or text messages

08:56   16  doesn't necessarily mean that they are statements for the

08:56   17  purposes of Jencks.

08:56   18          MR. AVENATTI:  Well, I think we can agree that

08:56   19  it's a statement of a witness when the witness sends a text

08:56   20  message --

08:56   21          THE COURT:  No, no, no.  Statements for the

08:56   22  purposes of Jencks requires that the statement relate to the

08:56   23  subject matter of the testimony.

08:56   24          MR. AVENATTI:  Agreed, Your Honor, but --

08:56   25          THE COURT:  An e-mail that they're going to be

08:56    1   called next Wednesday, yeah, it relates to this case and

08:56    2   it's a communication, but for Jencks Act purposes it is not

08:56    3   a statement; isn't that correct?

08:56    4          MR. AVENATTI:  Well, Your Honor, I think there are

08:56    5   some cases that hold that even the scheduling

08:56    6   communications are --

08:56    7          THE COURT:  No, no, no.  The case you cite is

08:56    8   communications relevant to the subject matter of the crime.

08:57    9   That case does not apply here.  It's page 5 of your

08:57   10   memorandum.  You cite to United States versus Losch.

08:57   11          The Court wrote:  "The Court agrees that a text

08:57   12   message may meet the definition of a 'statement' as defined

08:57   13   by the Jencks Act.  Even statements regarding 'meeting

08:58   14   times, meeting locations, and other logistical arrangements

08:58   15   may potentially relate to the subject matter of a witness's

08:58   16   testimony.'"

08:58   17          That just doesn't apply to scheduling e-mails.

08:58   18          MR. AVENATTI:  Your Honor, I'm focused in

08:58   19   particular on the communications that took place in 2019,

08:58   20   and my point is this.  If Ms. Regnier is not communicating

08:58   21   with Special Agent Carlos about this case and the subject

08:58   22   matters of her testimony, then what is she communicating

08:58   23   with him about?

08:58   24          I mean, it strains credibility frankly for the

08:58   25   argument to be made that somehow Ms. Regnier was

08:58   1   communicating with Special Agent Carlos about something

08:58   2   other than this case and the topics of her testimony.

08:58   3           THE COURT:  I will direct the government to confer

08:58   4   with Agent Carlos and, if appropriate, submit a declaration

08:59   5   as to what text message communications went back and forth

08:59   6   between him and Ms. Regnier.

08:59   7           Now, with respect to the overall motion, I will be

08:59   8   guided by further information I receive with regard to

08:59   9   Regnier text messages, and I will be further guided by the

08:59   10  government's inquiry with respect to Varani and Tashchyan.

08:59   11          Putting this matter aside for the second, I deny

08:59   12  the motion.  I find that the mere fact of communication is

08:59   13  not sufficient to invoke a Jencks obligation, and the mere

08:59   14  fact of communication is not sufficient to carry the

08:59   15  threshold showing necessary to conduct an in-camera hearing.

08:59   16          At 1217, the Robertson Court says:  "Robertson

08:59   17  contends that the Jencks Act required the District Court to

08:59   18  conduct an in-camera hearing of Longton's notes before

09:00   19  determining the notes were subject to production.  We

09:00   20  disagree.  Although our case law is this area has not been

09:00   21  entirely clear, we have previously stated that a defendant

09:00   22  must make a threshold showing that notes pursuant to the

09:00   23  Jencks Act constitute a 'statement' before the district

09:00   24  court will be required to review the notes in-camera.'"

09:00   25          With respect to all the other witnesses cited in

09:00   1    the motion, there has been identification of communications

09:00   2    but there has not been a sufficient threshold showing as

09:00   3    required by Robertson to conduct an in-camera review or

09:00   4    further inquiry with respect to those other witnesses.

09:00   5         To that extent the motion is denied.  I am

09:00   6    reserving with respect to Regnier, Varani, and Tashchyan.

09:00   7         We will discuss when we take up the 106 issue and

09:01   8    the government's forensic expert.

09:01   9         MR. SAGEL:  Your Honor, can I just raise one real

09:01   10   quick thing, because I don't know if there will be an

09:01   11   opportunity to raise it later.

09:01   12        Yesterday -- and I can point to the specific

09:01   13   areas -- defendant raised November 15, 2018, three times in

09:01   14   asking about the martini text, which, he didn't read the

09:01   15   whole thing.  He only asked for part of it.

09:01   16        Then he said:  Mr. Sagel didn't ask you about this

09:01   17   text.  And then about the phone call that took place, he

09:01   18   said:  I wasn't on that phone call.

09:01   19        Mr. Avenatti was in jail that night.  That's why

09:01   20   he wasn't on the phone call, and that's why the phone call

09:01   21   took place.  The text message was Mr. Barela actually being

09:01   22   a good person saying:  You should hold your head up.  Don't

09:01   23   let them get you down -- and so forth, about the arrest.

09:01   24        Defendant is trying purposefully to insert a

09:01   25   prejudicial matter that the government is avoiding,

09:02  1    purposefully.  We are trying to avoid inserting these

09:02  2    prejudicial areas.  He is inviting error by going there, and

09:02  3    I think the government is getting to a point where we need

09:02  4    to clarify the statements he is making to the witness.  Why

09:02  5    are you asking him out to a martini?  Why is he not on that

09:02  6    phone call?

09:02  7            I raise it to Your Honor because I believe he has

09:02  8    opened the door.

09:02  9            THE COURT:  Let's leave it where it is.  I think

09:02  10   going into that is going to be more prejudicial than

09:02  11   probative.  I think it prejudices the defendant if we go

09:02  12   into the particulars of him being arrested.

09:02  13           I'll continue to listen to the questions as they

09:02  14   come in, and you can bring the issue up again, but for the

09:02  15   time being we're going to leave those questions alone.

09:02  16           MR. SAGEL:  Understood, Your Honor.

09:02  17           THE COURT:  Okay, we will be in recess until the

09:03  18   jury is here.

09:03  19           Just a minute.  I need two things.  In coming to

09:03  20   the determination that a sufficient showing has not been

09:03  21   made, I've taken into account the government -- the

09:03  22   Court-ordered production with respect to Joel Weiner's

09:03  23   communications.

09:03  24           Not a single document that was the subject of

09:03  25   Jencks was in the additional material.  The additional

09:03  1    materials, as I said several days ago, is identified as two

09:03  2    e-mails.  Those e-mails have been produced.  There was

09:03  3    nothing of substance in the additional e-mails which the

09:03  4    government produced at the Court's direction.

09:03  5          With respect to Regnier, the underlying notes to

09:03  6    one of the meetings was produced, and I concluded it wasn't

09:03  7    Jencks material under the standard enunciated in Robertson.

09:03  8    They were a mixture of editorial and other comments with

09:04  9    notes with regard to what the witness said.  I determine

09:04  10   that the substance there is reflected in the memorandum.

09:04  11         In other words, the challenge was made.  There was

09:04  12   no Jencks material.  A challenge was made with regard to

09:04  13   Weiner.  Jencks material wasn't there.  A challenge has been

09:04  14   made within the past few days with regard to Exhibit 4 and

09:04  15   the interview notes of Mr. Barela.  There was no Jencks

09:04  16   violation.  The spreadsheet was there.

09:04  17         While Mr. Avenatti complained that he had

09:04  18   difficulty in finding it, that's not a violation of Jencks

09:04  19   material because that spreadsheet had in fact been

09:04  20   testified.

09:04  21         In determining whether a sufficient threshold

09:04  22   showing has been made, I take into account where the Court

09:04  23   has gone farther and engaged in an in-camera review, it has

09:04  24   produced nothing in terms of any Jencks material not having

09:05  25   been produced or required to be produced -- in other words,

09:05  1    three "dry holes," an oil company term for drilling a well

09:05  2    that doesn't come in.

09:05  3                MR. SAGEL:  Understood, Your Honor.  Just to

09:05  4    clarify the record, it was Mr. Johnson's underlying notes,

09:05  5    not Ms. Regnier's.

09:05  6                THE COURT:  Oh, right.  You are correct.

09:05  7                MR. SAGEL:  And then I think it was Mr. Marchino's

09:05  8    Exhibit 4, not Mr. Barela's.

09:05  9                THE COURT:  Okay.

09:05  10               MR. SAGEL:  But it's been a long few weeks, so I

09:05  11   understand.

09:05  12               THE COURT:  The point is the same.

09:05  13               MR. SAGEL:  Yes, Your Honor.

09:05  14               THE COURT:  Okay.  We'll be in recess.

09:05  15                    (Recess taken at 9:05 a.m.;

09:05  16                     proceedings resumed at 9:14 a.m.)

09:05  17                    (Jury present)

09:14  18               THE CLERK:  Item 1, SACR-19-00061-JVS, United

09:14  19   States of America versus Michael John Avenatti.

09:14  20               MR. SAGEL:  Good morning, Your Honor.  Brett Sagel

09:15  21   and Alexander Wyman on behalf of the United States.  And at

09:15  22   counsel table is Special Agent Ramon Carlos.

09:15  23               THE COURT:  Good morning.

09:15  24               MR. AVENATTI:  Good morning, Your Honor.  Michael

09:15  25   Avenatti present, along with Mr. Dean Steward,

09:15  1    Ms. Cummings-Cefali, and Ms. Hernandez.

09:15  2            THE COURT:  Good morning.

09:15  3            And good morning, ladies and gentlemen.

09:15  4      GREGORY BARELA, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN

09:15  5            THE CLERK:  Sir, you are reminded that you are

09:15  6    still under the oath that you previously took.

09:15  7            THE WITNESS:  Yes.

09:15  8            THE COURT:  Mr. Avenatti.

09:15  9            MR. AVENATTI:  Thank you, Your Honor.

09:15  10                   CROSS-EXAMINATION (Continued)

09:15  11   BY MR. AVENATTI:

09:15  12   Q    Mr. Barela, since we broke yesterday afternoon until

09:15  13   you took the stand here this morning, did you communicate

09:15  14   with anybody about your trial testimony?

09:15  15   A    No.

09:15  16   Q    Prior to testifying on the stand in this case, have you

09:16  17   been following what's been going on in this case at all in

09:16  18   the media or on social media?

09:16  19   A    I would say whatever pops up on Google from time to

09:16  20   time, but, no, not specifically.

09:16  21   Q    Let me ask you about 176.  You were asked a number of

09:16  22   questions by Mr. Sagel and then by me yesterday relating to

09:16  23   your text communications that are part of Exhibit 176.  Do

09:16  24   you recall that testimony generally?

09:16  25   A    I do.

09:16  1  Q    Take a look at -- turn to 176 for me.

09:16  2  A    Okay.

09:16  3  Q    Do you have it?

09:16  4  A    Yes.

09:16  5  Q    I want to ask you some general questions.  How was it

09:16  6  that the government obtained your cell phone in order to

09:17  7  extract text messages from it?

09:17  8  A    I met them at their office and they took it from me and

09:17  9  took down what they needed.

09:17  10 Q    And who was there; do you recall?

09:17  11 A    My attorney.  I can't remember the two gentlemen, but I

09:17  12 think Special Agent Ramon Carlos was there.

09:17  13 Q    And do you recall that that was in February of 2019?

09:17  14 A    Approximately.

09:17  15 Q    February 13th, 2019.  Does that sound about right?

09:17  16 A    Probably.

09:17  17 Q    And when you showed up that day, did you understand

09:17  18 that the purpose of you going to the office was so that the

09:17  19 government could take an image of your phone?

09:18  20 A    Yes.

09:18  21 Q    You understood they'd made that request, right?

09:18  22 A    Correct.

09:18  23 Q    And did you agree to allow them to do that?

09:18  24 A    I did.

09:18  25 Q    Did you put any parameters on the government as far as

30

09:18   1   what they could copy or forensically download?

09:18   2   A    I did not.

09:18   3   Q    You just handed your phone over to them and you

09:18   4   understood that they could copy whatever they wanted?  Was

09:18   5   that your understanding?

09:18   6   A    They made a request of what they wanted, and I agreed.

09:18   7   Q    Okay.  So they made a request to you before you got

09:18   8   there of what they wanted to copy; is that right?

09:18   9   A    That is correct.

09:18   10   Q    And what did they ask you to copy?

09:18   11   A    Anything dealing with my case with Brock and Michael

09:18   12   Avenatti.

09:18   13   Q    And how did they make that request to you?

09:18   14   A    I think it was through my lawyer.

09:19   15   Q    Did you sign a consent or something to allow them to do

09:19   16   that?

09:19   17   A    I don't recall.

09:19   18   Q    Do you recall ever being provided a document whereby

09:19   19   you agreed to allow them to copy certain information from

09:19   20   your phone?

09:19   21   A    I don't recall.

09:19   22   Q    Now, when they made the request of you as to what they

09:19   23   wanted to copy, did they ask you or did they request only to

09:19   24   copy text messages between you and me, or was the request

09:19   25   broader than that?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

31

| | | |
|---|---|---|
| 09:19 | 1 | A    It was broader. |
| 09:19 | 2 | Q    What was the breadth of the request? |
| 09:19 | 3 | A    If I recall, it was anything that was related to Eagan |
| 09:19 | 4 | Avenatti and Michael Avenatti and Brock. |
| 09:19 | 5 | Q    Even if it was a text message with somebody else about |
| 09:19 | 6 | those topics?  That was your understanding? |
| 09:20 | 7 | A    Yes. |
| 09:20 | 8 | Q    And that's what you agreed to allow them to do, right? |
| 09:20 | 9 | A    Yes. |
| 09:20 | 10 | Q    Now, if you take a look at 176 -- |
| 09:20 | 11 |         MR. AVENATTI:  Maybe we can blow up the top box |
| 09:20 | 12 | for the benefit of the jury. |
| 09:20 | 13 | BY MR. AVENATTI: |
| 09:20 | 14 | Q    -- there is a report creation time there.  Do you see |
| 09:20 | 15 | that? |
| 09:20 | 16 | A    Yes. |
| 09:20 | 17 | Q    And a date? |
| 09:20 | 18 | A    Yes. |
| 09:20 | 19 | Q    February 13th, 2019; is that correct? |
| 09:20 | 20 | A    That's what it says. |
| 09:20 | 21 | Q    And is that your best recollection of when this |
| 09:20 | 22 | happened now that you've had the benefit of it? |
| 09:20 | 23 | A    I believe so. |
| 09:20 | 24 | Q    All right.  And then there is an examiner name here, |
| 09:20 | 25 | SA-CIS Nshan Tashchyan.  Do you see that? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:20  1    A    I do.

09:20  2    Q    Do you recall meeting him that day?

09:20  3    A    I don't remember what his name is.

09:21  4    Q    Then I want to direct your attention if I could to the

09:21  5    next page.  There is a box here titled "Contents."  Do you

09:21  6    see that, sir?

09:21  7    A    I do.

09:21  8    Q    And under "Contents," there is a column that says:

09:21  9    "Type, Contacts Included in Report, 2; Total, 362."  Do you

09:21  10   see that?

09:21  11   A    I do.

09:21  12   Q    Then "MMS Messages Included in Report, 59; Total,

09:21  13   4,991."  Do you see that?

09:21  14   A    I do.

09:21  15   Q    And then under "Type, SMS Messages, 631; Total, 7,990."

09:22  16   Do you see that?

09:22  17   A    I do.

09:22  18   Q    Then if we go to the box underneath this, there's two

09:22  19   contacts listed.  Do you see that?

09:22  20   A    I do.

09:22  21   Q    John Arden and Michael Avenatti, right?

09:22  22   A    Yes.

09:22  23   Q    And you can take a moment if you would like to, but my

09:22  24   question is if you look through 176 which Mr. Sagel was

09:22  25   asking you about on direct, there is no other text messages

09:22   1   included within 176 other than your text communications with

09:22   2   Mr. Arden and with me; is that true?  Take a moment.

09:23   3   A    I haven't analyzed it like that, but --

09:23   4   Q    Well, let me rephrase.  Every text message in 176

09:23   5   either I'm on or Mr. Arden is on; is that fair?

09:23   6   A    That's fair.

09:23   7   Q    Now, you were asked to agree to allow them to image --

09:23   8   I think I heard your testimony correctly -- all text

09:23   9   messages relating to Eagan Avenatti, Michael Avenatti, your

09:23  10   settlement, and Brock; right?

09:23  11   A    Yes.

09:23  12   Q    Okay.  You had communications by text, Mr. Barela,

09:23  13   before February 2019 with people other than me and Mr. Arden

09:23  14   from time to time about those topics, right?

09:23  15   A    I would assume so, yes.

09:24  16   Q    Well, I mean, you know that to be true, right?

09:24  17   A    Correct.

09:24  18   Q    Okay.  None of those text messages are included within

09:24  19   176; are they?

09:24  20   A    No.

09:24  21   Q    Before February 2019 who had you communicated with

09:24  22   about those topics other than me and John Arden?

09:24  23   A    I'm sure many people.  I couldn't even recall.  Many

09:24  24   people.

09:24  25   Q    Do you know where those many people text messages are?

09:24  1   A    Deleted, in my phone, still there, some maybe.  I don't
09:24  2   know.
09:25  3   Q    Now, I want to ask you another question about
09:25  4   Exhibit 176.  If you go to the last page, page 47, you will
09:25  5   see line 631.  This listing is in reverse chronological
09:25  6   order, right?
09:26  7   A    Yes.
09:26  8   Q    So the most recent text message is first, and the last
09:26  9   text message or the oldest text message is last, right?
09:26  10  A    Correct.
09:26  11  Q    And the date on this text message at line 631 is
09:26  12  December 28th, 2017.  Do you see that?
09:26  13  A    Yes.
09:26  14  Q    Okay.  Did we have text messages between the two of us
09:26  15  before December 28, 2017, relating to Brock, the settlement,
09:26  16  my work for you?
09:26  17  A    Yes.
09:26  18  Q    How many?
09:26  19  A    I don't recall.
09:26  20  Q    A lot.  Would you agree with that?
09:26  21  A    Yeah, probably.
09:26  22  Q    Do you know where those text messages are?
09:26  23  A    I have a new phone, so I would assume it would be in
09:26  24  the old phone that broke.
09:26  25  Q    Do you still have your old phone?

35

09:27  1    A    I do not.

09:27  2    Q    When did your old phone break?

09:27  3    A    Sometime in December.

09:27  4    Q    You didn't back up any of your text messages before

09:27  5    December 2017?

09:27  6    A    I think my phone backed up part of it through the

09:27  7    Verizon network, but a lot of it didn't come through.

09:27  8    Q    You're not testifying that in December of 2017 when

09:27  9    your phone broke, you lost all the text messages you had

09:27  10   before that date; are you?

09:27  11   A    No.

09:27  12   Q    So some of them were preserved?

09:27  13   A    Yes.

09:27  14   Q    In the cloud?

09:27  15   A    Yes.

09:27  16   Q    Did the government ever ask you for those text

09:27  17   messages?

09:27  18   A    I don't recall.

09:27  19   Q    You don't recall that ever happening; do you?

09:27  20   A    No.

09:28  21   Q    Let me clarify that answer.  As you sit here today, do

09:28  22   you have a recollection of the government ever asking you

09:28  23   for those text messages in the cloud?

09:28  24   A    No.

09:28  25   Q    When you met with the government in February 2019 and

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:28  1    they made this request for all of your communications, did

09:28  2    you tell them, hey, you guys should know my phone just

09:28  3    broke.  I lost a bunch of text messages, but there is

09:28  4    probably some text messages with Mr. Avenatti in the cloud.

09:28  5    Do you want those?

09:28  6         Did you say anything like that?

09:28  7    A    No.

09:28  8    Q    Did Special Agent Carlos or any of the Assistant U.S.

09:28  9    Attorneys or Mr. Tashchyan, did any of those folks ever say,

09:28  10   hey, we see that the last text message here is

09:28  11   December 28th.  What happened to all the other text

09:29  12   messages?  Did anybody ever ask you that?

09:29  13   A    No.

09:29  14   Q    Now, I want to make sure that we are precise and clear.

09:29  15   Let's go to pages 10 and 11 of this report.

09:29  16        By the way, Mr. Barela, you would agree with me,

09:30  17   would you not, that when it comes to the issue of the

09:30  18   communications between me and you as it related to Brock and

09:30  19   the work that I did and the work that Eagan Avenatti

09:30  20   performed, you would agree that it is important that because

09:30  21   of the seriousness of this matter, that we be precise and

09:30  22   clear?  You would agree with that, right?

09:30  23   A    I do.

09:30  24   Q    Now, if you look at page 10 and page 11.

09:30  25        MR. AVENATTI:  Mr. Hernandez, if we could please

09:30   1   blow up on page 10 starting with line 59 through 58 --

09:31   2   actually just a big box of 59 through 58.

09:31   3   BY MR. AVENATTI:

09:31   4   Q    While Ms. Hernandez is pulling that up, Mr. Barela, let

09:31   5   me ask you this question.  Do you see in Exhibit 176 that

09:32   6   the report is divided into two parts?  There is MMS messages

09:32   7   and SMS messages.  Do you see that?

09:32   8   A    Yes.

09:32   9   Q    In the MMS messages, if you look on page 3, there's 59

09:32   10   total in this report of MMS messages.  Maybe we could --

09:32   11          MR. AVENATTI:  Ms. Hernandez, I'm sorry.  I'm

09:32   12   being difficult today and I apologize.  Could you turn to

09:32   13   page 3 and could you just show the jury the top of the

09:32   14   header at page 3.

09:32   15   BY MR. AVENATTI:

09:32   16   Q    Do you see that, sir?

09:32   17   A    Yes.

09:32   18   Q    Okay.  There are many more SMS messages than MMS

09:33   19   messages in this report, right?

09:33   20   A    Yes.

09:33   21   Q    If you would turn to page 11, there's 631 SMS messages

09:33   22   listed.  Do you see that?

09:33   23   A    That's what it says.

09:33   24   Q    And I was just talking to you about the fact that there

09:33   25   were no SMS messages before December 28th.  Do you remember?

09:33   1    A     Yes.

09:33   2    Q     All right.  But if we look at the MMS messages, because

09:33   3    we need to be precise, if we look at the MMS messages, we

09:33   4    will see that in fact there are a handful of messages before

09:33   5    December 28th that are MMS messages, right?  Go to line 54

09:33   6    on page 10 of 47, for instance.  Do you see the date?  It's

09:34   7    December 22nd, 2017.  Do you see that?

09:34   8    A     I do.

09:34   9    Q     And then line 55 is December 18th, 2017; line 56,

09:34   10   December 18th.  Line 57 is the same, line 58.  And then

09:34   11   line 59 on the next page is 12/18/2017.

09:34   12            MR. AVENATTI:  Maybe we could have that for the

09:34   13   benefit of the jury, please, page 11, the last MMS message

09:34   14   at line 59.

09:34   15   BY MR. AVENATTI:

09:34   16   Q     Do you see that, sir?

09:34   17   A     I do.

09:34   18   Q     Now, we certainly had text messages about these topics

09:34   19   before this date as well of December 18, 2017; did we not?

09:34   20   A     Yes.

09:35   21   Q     Do you know why this report contains only the MMS

09:35   22   messages during this time period between December 18th and

09:35   23   December -- I'm sorry.  Do you have an explanation as to why

09:35   24   the report seems to contain some MMS messages before

09:35   25   December 28th but does not contain any SMS messages before

09:35  1    December 28th?

09:35  2    A    I do not.

09:35  3    Q    Mr. Barela, did you at any point in time ever go back

09:36  4    to the messages that you said was stored in the cloud to see

09:36  5    what was in the cloud relating to the communications that

09:36  6    you and I had?

09:36  7    A    No.

09:36  8    Q    Are those messages still there?

09:36  9    A    You know, I don't know.  I haven't looked for them.

09:36  10   Q    Are you aware of any of them being deleted?

09:36  11   A    No.

09:36  12   Q    Let's go to Exhibit 171.

09:36  13   A    Okay.

09:37  14   Q    You will recall that this --

09:37  15         MR. AVENATTI:  Let's go to the next page, please.

09:37  16   BY MR. AVENATTI:

09:37  17   Q    You will recall that this is the retainer agreement

09:37  18   that Mr. Sagel asked you about and I briefly asked you about

09:37  19   yesterday.  Do you remember that?

09:37  20   A    I do.

09:37  21   Q    Mr. Barela, did you ever tell anyone that you did not

09:37  22   get a fully executed copy of this agreement back and did not

09:38  23   even think to get a copy back?

09:38  24   A    I don't recall.

09:38  25   Q    You don't recall saying that or -- I don't understand

09:38    1    when you say "I don't recall."

09:38    2    A    I don't remember ever having that discussion.

09:38    3              MR. AVENATTI:  Your Honor, can I approach to

09:38    4    refresh?

09:38    5              THE COURT:  You may.

09:38    6              MR. AVENATTI:  Thank you.

09:38    7              (Document handed to the witness)

09:38    8    BY MR. AVENATTI:

09:39    9    Q    Directing your attention, sir, to the bottom of the

09:39   10    first page, paragraph three, does that refresh your

09:39   11    recollection that in fact you did state previously that you

09:39   12    did not get a fully executed copy of this agreement back and

09:39   13    did not even think to get a copy back?

09:39   14    A    That's what it says.

09:39   15    Q    My question is, does that refresh your recollection

09:39   16    that in fact you did make that statement?

09:39   17    A    It does now, yes.

09:39   18    Q    In fact, Mr. Barela, when you met with the government

09:39   19    on March 15, 2019, including Mr. Carlos and Mr. Sagel, you

09:39   20    told them after they told you the importance of being

09:40   21    truthful that you did not get a copy of this agreement back

09:40   22    and you did not even think to get a copy back; isn't that

09:40   23    true?

09:40   24    A    Correct.

09:40   25    Q    Was that true when you told the government agents that

41

09:40  1   in March of 2019?

09:40  2   A    Yes.

09:40  3   Q    You stand behind it, right?

09:40  4   A    Yes.

09:40  5   Q    The same way you stand behind all of your other

09:40  6   statements to the jury on direct and cross thus far, right?

09:40  7          MR. SAGEL:  Objection.  Argumentative.  Asked and

09:40  8   answered.

09:40  9          THE COURT:  Sustained.

09:40  10         MR. AVENATTI:  Ms. Hernandez, could we please have

09:40  11  the first page -- actually, you know what.  I'll just put it

09:40  12  on the elmo -- oh, great.  Could we blow up the top portion,

09:41  13  please.  Keep going.  Perfect.

09:41  14  BY MR. AVENATTI:

09:41  15  Q    Sir, you were provided a fully executed copy of this

09:41  16  agreement on September 16th, 2014; weren't you?

09:41  17  A    No.

09:41  18  Q    Sir, it's your testimony --

09:41  19  A    Hold on.  Are you talking about the retainer agreement?

09:41  20  Q    Sir, there is no question pending.

09:41  21  A    Okay.

09:41  22  Q    You told the government in March of 2019 that you did

09:42  23  not get a copy, a fully executed copy of this agreement when

09:42  24  in truth you had been given a fully executed copy on

09:42  25  September 16th, 2014; isn't that true?

| | | |
|---|---|---|
| 09:42 | 1 | A    Can you repeat the question. |
| 09:42 | 2 | MR. AVENATTI:  May I have it read back, please? |
| 09:43 | 3 | THE COURT:  Yes. |
| 09:43 | 4 | (Record read) |
| 09:43 | 5 | THE WITNESS:  It appears to be correct. |
| 09:43 | 6 | BY MR. AVENATTI: |
| 09:44 | 7 | Q    One of the first questions that Mr. Sagel asked you was |
| 09:44 | 8 | about your educational background.  I think it was the |
| 09:44 | 9 | fourth or fifth question he asked you.  Do you remember |
| 09:44 | 10 | that? |
| 09:44 | 11 | A    I do. |
| 09:44 | 12 | Q    And you told him that you have an 11th grade education; |
| 09:44 | 13 | is that right, sir? |
| 09:44 | 14 | A    Correct. |
| 09:44 | 15 | Q    Did you ever tell the government that in fact you had a |
| 09:44 | 16 | high school diploma from Long Beach Wilson High School and |
| 09:44 | 17 | you had actually completed high school? |
| 09:44 | 18 | A    No. |
| 09:44 | 19 | MR. AVENATTI:  Your Honor, at this time I would |
| 09:44 | 20 | offer a portion of 1072 as impeachment.  Actually, you know |
| 09:45 | 21 | what.  I'll do it this way, Your Honor.  It will be cleaner. |
| 09:45 | 22 | I'm sorry. |
| 09:45 | 23 | BY MR. AVENATTI: |
| 09:45 | 24 | Q    Mr. Barela, please take a look at paragraph one from |
| 09:45 | 25 | your interview on March 15th, 2019. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:45    1    A    (Witness complies.)   Okay.

09:45    2    Q    Sir, isn't it true -- does that refresh your

09:45    3    recollection that in fact you did tell the government that

09:45    4    your highest level of completed education was a high school

09:45    5    diploma from Long Beach Wilson High School?

09:45    6    A    I don't recall.

09:45    7    Q    Do you dispute that you told the government that,

09:45    8    including Mr. Sagel and Special Agent Carlos, on March 15th,

09:46    9    2019?

09:46   10    A    It's what it says.

09:46   11    Q    Do you dispute that you told the government that?

09:46   12    A    I don't recall.

09:46   13    Q    Do you have a high school diploma from Long Beach

09:46   14    Wilson High School?

09:46   15    A    I do not.

09:46   16    Q    Is it your position that if that's what the agents

09:46   17    wrote down, they are wrong that you said that?

09:46   18    A    Highly unlikely.   I must have said it.   I mean, I don't

09:46   19    recall.

09:46   20    Q    Well, why would you have said such a thing to federal

09:46   21    agents investigating a serious criminal matter after they

09:46   22    told you you had to be truthful?

09:46   23         MR. SAGEL:   Objection.   Calls for speculation.

09:46   24    Argumentative.

09:46   25              THE COURT:   Overruled.

09:46  1              THE WITNESS:  I don't recall.

09:47  2              THE COURT:  Let's move on to another subject.

09:47  3    BY MR. AVENATTI:

09:47  4    Q    We talked about this $80,000 that you had to borrow.

09:47  5    Do you recall that?

09:47  6    A    I do.

09:47  7    Q    Did you ever tell the government when you met with them

09:47  8    in March of 2019 that the $80,000 was for the restitution

09:47  9    for your criminal matter as opposed to partial restitution

09:47  10   and other things?

09:47  11   A    I don't recall.

09:47  12   Q    Did you ever tell the government that you had to pay

09:47  13   $80,000 for restitution for your criminal legal matter?

09:47  14   A    I don't recall.

09:48  15   Q    Take a look at paragraph 39 and tell me if that

09:48  16   refreshes your recollection that those are the statements

09:48  17   you made to the federal agents and the Assistant U.S.

09:48  18   Attorneys.

09:48  19   A    (Witness reading)  Yes.

09:48  20   Q    So when you met with the federal agents and the

09:48  21   Assistant U.S. Attorneys, you told them that you had to pay

09:48  22   $80,000 for restitution for your criminal legal matter.  And

09:48  23   then when you came to court before the jury, you told them

09:48  24   that only a portion of it was for your restitution, right?

09:48  25   A    Correct.

09:48  1          MR. SAGEL:  Your Honor, he's displaying the

09:49  2     document, but he only asked that paragraph five come into

09:49  3     evidence.

09:49  4          MR. AVENATTI:  That's all I'm showing.

09:49  5     BY MR. AVENATTI:

09:50  6     Q    Mr. Barela, we spoke about this yesterday relating to

09:50  7     this paragraph in a declaration that you signed attaching a

09:50  8     copy of the settlement agreement.  Do you recall that?

09:50  9     A    I do.

09:50  10          MR. AVENATTI:  For the record, this is 1056,

09:50  11    paragraph five.

09:50  12    BY MR. AVENATTI:

09:50  13    Q    And you attested under penalty of perjury that that

09:50  14    exhibit was the settlement agreement you had received, and

09:51  15    you attested to that on the 24th day of May 2019.

09:51  16          MR. SAGEL:  Objection --

09:51  17          MR. AVENATTI:  Foundational, Your Honor.

09:51  18          MR. SAGEL:  -- asked and answered.  And it's

09:51  19    already in evidence, Your Honor.

09:51  20          THE COURT:  Sustained.

09:51  21    BY MR. AVENATTI:

09:51  22    Q    Do you recall signing this document on that date?

09:51  23          MR. SAGEL:  Asked and answered, Your Honor.

09:51  24          THE COURT:  Overruled.

09:51  25          THE WITNESS:  Yes.

46

| | | |
|---|---|---|
| 09:51 | 1 | BY MR. AVENATTI: |
| 09:51 | 2 | Q    Then on October 4th, 2019, so five months later, you |
| 09:51 | 3 | said something different, right? |
| 09:52 | 4 | A    What do you mean? |
| 09:52 | 5 | Q    Five months after you signed that declaration under |
| 09:52 | 6 | penalty of perjury, you said something different than you |
| 09:52 | 7 | had in paragraph five previously, right? |
| 09:52 | 8 | A    It would appear so. |
| 09:52 | 9 | Q    Well, it would appear so based on what?  Just my |
| 09:52 | 10 | question? |
| 09:52 | 11 | A    Exhibit 2. |
| 09:52 | 12 | Q    So five months after you made that statement under |
| 09:52 | 13 | oath, you then filed a different statement claiming that a |
| 09:52 | 14 | different version of the settlement agreement is what you |
| 09:52 | 15 | had received in my office in December; isn't that true? |
| 09:52 | 16 | A    I believe it was attached in error. |
| 09:52 | 17 | MR. AVENATTI:  Move to strike, Your Honor. |
| 09:52 | 18 | THE COURT:  It will be stricken. |
| 09:52 | 19 | BY MR. AVENATTI: |
| 09:52 | 20 | Q    Sir, five months after you submitted that sworn |
| 09:52 | 21 | declaration, you then stated under penalty of perjury that a |
| 09:53 | 22 | different version of the settlement agreement was really the |
| 09:53 | 23 | one that you had received in late December of 2017; isn't |
| 09:53 | 24 | that true?  Yes or no? |
| 09:53 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:53    1    Q    Do you remember if you had any communications with AUSA

09:53    2    Sagel or anyone from the government during that interim

09:53    3    five-month time period?  Do you remember one way or the

09:53    4    other?

09:53    5    A    I don't recall.

09:54    6    Q    Sir, there is a blank pad of paper and a pen there to

09:54    7    your right-hand side.  Do you see that?

09:54    8    A    I do.

09:54    9    Q    I would like you to, if possible, provide for the jury

09:54   10    a calculation of what you claim you are due as you sit there

09:54   11    today from the Brock settlement.

09:54   12    A    You want me to write down what I think I deserve or

09:54   13    what is owed to me?

09:54   14    Q    That's exactly what I want you to do.  And if you need

09:54   15    a calculator, I think we can probably get one for you.

09:54   16    A    Yeah, I would love a calculator.

09:55   17         THE WITNESS:  I have my phone, but I would have to

09:55   18    turn it on, Your Honor.

09:55   19    BY MR. AVENATTI:

09:55   20    Q    Does your phone have those missing text messages?

09:55   21         (Pause in proceedings)

09:55   22         THE WITNESS:  From the 1.6 million --

09:56   23         MR. AVENATTI:  Hold on a minute.  Are you done

09:56   24    with the calculation?

09:56   25         THE WITNESS:  I am.

09:56  1           MR. AVENATTI:  Your Honor, can I approach?

09:56  2           THE COURT:  You may.

09:56  3   BY MR. AVENATTI:

09:57  4   Q    Before I get to the substance of this, Mr. Barela, has

09:57  5   the government ever asked you to perform a similar

09:57  6   calculation like this?

09:57  7   A    No.

09:57  8   Q    And this document is the document that you just wrote

09:57  9   in your own handwriting on the stand, correct?

09:57  10  A    Correct.

09:57  11          MR. AVENATTI:  Your Honor, we are marking this as

09:58  12  1073.  At this time I would move 1073 into evidence.

09:58  13          THE COURT:  Any objection?

09:58  14          MR. SAGEL:  I haven't even seen the document, Your

09:58  15  Honor.

09:58  16          (Government counsel reviewing document)

09:58  17          MR. SAGEL:  No objection, Your Honor.

09:58  18          THE COURT:  1073 will be received.

09:58  19          (Exhibit 1073 received in evidence)

09:58  20  BY MR. AVENATTI:

09:58  21  Q    Mr. Barela, can you see the document that's been marked

09:58  22  as 1073?

09:58  23  A    Yes.

09:58  24  Q    I want to walk through this document if I could.  The

09:58  25  top number is $1,600,000.  That's the number that you

| | | |
|---|---|---|
| 09:59 | 1 | maintain my office received, right? |
| 09:59 | 2 | A    Correct. |
| 09:59 | 3 | Q    And then you have $960,000, right? |
| 09:59 | 4 | A    Yes. |
| 09:59 | 5 | Q    What is $960,000? |
| 09:59 | 6 | A    Sixty percent of $1.6 million. |
| 09:59 | 7 | Q    And then you have $120,000 in costs, and that is what |
| 09:59 | 8 | you claim I told you the costs were, right? |
| 09:59 | 9 | A    Correct. |
| 09:59 | 10 | Q    As you sit there today, you don't know what the actual |
| 09:59 | 11 | costs were; do you?  Yes or no? |
| 10:00 | 12 | A    No. |
| 10:00 | 13 | Q    Then you have a line, advance.  Do you see that? |
| 10:00 | 14 | A    I do. |
| 10:00 | 15 | Q    And that's $130,000 according to you, correct? |
| 10:00 | 16 | A    Correct. |
| 10:00 | 17 | Q    And where do you get that number from? |
| 10:00 | 18 | A    I'm approximating.  I would have to look at the deposit |
| 10:00 | 19 | slips again. |
| 10:00 | 20 | Q    Which deposit slips? |
| 10:00 | 21 | A    The wires from you. |
| 10:00 | 22 | Q    So as you sit there today, that's a guesstimate on your |
| 10:00 | 23 | part? |
| 10:00 | 24 | A    Yes, it is a guesstimate without going back to it. |
| 10:00 | 25 | Q    And then that takes you to $710,000, right? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | | |
|---|---|---|---|
| 10:00 | 1 | A | Correct. |
| 10:00 | 2 | Q | How confident are you in this calculation? |
| 10:00 | 3 | A | Very. |
| 10:01 | 4 | Q | In your view is this calculation clear and concise? |
| 10:01 | 5 | A | Yes. |
| 10:01 | 6 | Q | And according to you this is the deal that we agreed |
| 10:01 | 7 | | to, right? |
| 10:01 | 8 | A | Yes. |
| 10:01 | 9 | Q | Now, you also pursuant to the settlement agreement were |
| 10:01 | 10 | | to receive an additional $300,000.  Do you recall that? |
| 10:01 | 11 | A | I do. |
| 10:01 | 12 | Q | Did you receive that money? |
| 10:01 | 13 | A | I did. |
| 10:02 | 14 | | MR. AVENATTI:  Let's go back to Exhibit 171. |
| 10:02 | 15 | | BY MR. AVENATTI: |
| 10:02 | 16 | Q | I'll do it this way.  Do you see that, sir? |
| 10:03 | 17 | A | I do. |
| 10:03 | 18 | Q | Now, according to this agreement which you claim was |
| 10:03 | 19 | | never amended, the law firm was entitled to 40 percent of |
| 10:03 | 20 | | any recovery, right? |
| 10:03 | 21 | A | Yes. |
| 10:03 | 22 | Q | Then there is a definition of recovery, right, meaning |
| 10:03 | 23 | | what is a recovery?  Right? |
| 10:03 | 24 | A | Yes. |
| 10:04 | 25 | Q | The total settlement was for $1,900,000, right? |

| | | |
|---|---|---|
| 10:04 | 1 | A    Yes. |
| 10:04 | 2 | Q    And according to your calculation, the total attorney |
| 10:04 | 3 | fee was $640,000, right?  $1,600,000 minus $960,000, |
| 10:04 | 4 | correct? |
| 10:04 | 5 | A    Correct. |
| 10:04 | 6 | Q    And you're certain about that, right? |
| 10:04 | 7 | A    Yes. |
| 10:05 | 8 | Q    Sir, what is 40 percent of $1,900,000? |
| 10:05 | 9 | A    I need the calculator again.  I can't do it right off |
| 10:05 | 10 | the top of my head. |
| 10:05 | 11 | Q    I don't want you to guess.  We gotta be clear and |
| 10:05 | 12 | concise. |
| 10:05 | 13 | A    The calculator is locked.  My phone is locked, so I |
| 10:05 | 14 | can't get to the calculator. |
| 10:05 | 15 | (Pause in proceedings) |
| 10:05 | 16 | THE WITNESS:  Forty percent of 1.9 million is |
| 10:06 | 17 | $760,000. |
| 10:06 | 18 | BY MR. AVENATTI: |
| 10:06 | 19 | Q    So in your calculation you didn't account for the |
| 10:06 | 20 | attorneys' fees on the $300,000; did you?  Yes or no? |
| 10:06 | 21 | A    I did not. |
| 10:06 | 22 | Q    Did you ever agree that the attorneys' fees on the |
| 10:06 | 23 | entire amount would be deducted from the first payment if |
| 10:07 | 24 | the payment was split up? |
| 10:07 | 25 | A    I believe that's what the agreement says. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:07 | 1 | Q    And according to you there was never any amendment to |
| 10:07 | 2 | that agreement, right? |
| 10:07 | 3 | A    That's correct. |
| 10:07 | 4 | Q    So your calculation is not done pursuant to the terms |
| 10:07 | 5 | of the agreement?  Yes or no? |
| 10:07 | 6 | A    No. |
| 10:07 | 7 | MR. AVENATTI:  Your Honor, one moment, please. |
| 10:07 | 8 | (Pause in proceedings) |
| 10:07 | 9 | BY MR. AVENATTI: |
| 10:08 | 10 | Q    Mr. Barela, do you know if any experts were hired in |
| 10:08 | 11 | connection with your matter involving Brock? |
| 10:08 | 12 | A    I do not. |
| 10:08 | 13 | Q    Do you have a recollection that in connection with the |
| 10:08 | 14 | matter involving Brock, there was a very complicated |
| 10:08 | 15 | question relating to the measure of damages? |
| 10:08 | 16 | A    Yes. |
| 10:08 | 17 | Q    Do you recall whether my firm had to retain a damages |
| 10:08 | 18 | expert in connection with that? |
| 10:08 | 19 | A    I do not. |
| 10:08 | 20 | Q    Do you recall if there was any travel costs associated |
| 10:08 | 21 | with litigating your matter? |
| 10:09 | 22 | A    There was. |
| 10:09 | 23 | Q    Do you recall whether -- well, strike that.  Do you |
| 10:09 | 24 | have a recollection of telling the government in March of |
| 10:09 | 25 | 2019 that the Brock litigation was a long fight and there |

10:09  1    were videotapes of depositions?

10:09  2    A    Yes.

10:09  3    Q    As those bills came in for the depositions, did you pay

10:09  4    them?

10:09  5    A    I did not.

10:09  6    Q    You understood that the law firm was paying all that,

10:09  7    right?

10:09  8    A    Correct.

10:09  9    Q    In the last two years have you ever asked the

10:10  10   government, hey, have you guys figured out what the costs

10:10  11   were on my case?

10:10  12   A    I have not.

10:10  13   Q    Sir, on direct examination I counted four -- but there

10:11  14   may have been more than that, and if it was, please correct

10:11  15   me -- you repeatedly stated that the $1.6 million was your

10:11  16   money.  Do you recall that?  Yes or no?

10:11  17   A    Yes.

10:11  18   Q    At the time of the payment of the $1.6 million, the

10:11  19   entirety of it was not your money; was it?  Yes or no?

10:11  20   A    No.

10:12  21   Q    So if someone were to say that you had $1.6 million

10:12  22   stolen from you, that would be neither clear nor concise;

10:12  23   would it?

10:12  24   A    Correct.

10:12  25   Q    Sir, were you ever advised that you were not properly

54

```
10:12   1   communicating with me in connection with any legal matter?
10:12   2   A    What do you mean?
10:13   3   Q    Were you ever advised by anyone that -- strike that.
10:13   4   Did anyone ever tell you or communicate to you that you were
10:13   5   failing to properly communicate with me about any legal
10:13   6   matter?
10:13   7   A    No.
10:13   8   Q    Did anyone ever advise you that you had failed to
10:13   9   properly compensate me and my firm for the time and expense
10:13   10  we had incurred on your behalf?
10:13   11  A    No.
10:13   12          MR. AVENATTI:  Your Honor, can I approach, please?
10:13   13          THE COURT:  You may.
10:14   14          MR. AVENATTI:  Your Honor, at this point the
10:14   15  defense offers Exhibit 1058 for impeachment.
10:14   16          MR. SAGEL:  It's quintessential hearsay, Your
10:14   17  Honor.
10:14   18          MR. AVENATTI:  It's not offered for the truth.
10:14   19  It's offered for impeachment.
10:14   20          MR. SAGEL:  He specifically asked for it for the
10:14   21  truth, Your Honor.
10:15   22          THE COURT:  I think there's a difficulty when
10:15   23  you're offering your own statements.
10:15   24          MR. AVENATTI:  Your Honor, it's offered for
10:15   25  impeachment.  It's direct impeachment of what the witness
```

| | | |
|---|---|---|
| 10:15 | 1 | just testified to under oath. |
| 10:15 | 2 | THE COURT:  It's your statement. |
| 10:15 | 3 | MR. AVENATTI:  I understand that, but he testified |
| 10:15 | 4 | to it and it's not true. |
| 10:15 | 5 | MR. SAGEL:  And obviously, Your Honor, there is a |
| 10:15 | 6 | confrontation issue as well. |
| 10:15 | 7 | MR. AVENATTI:  Your Honor, there's been a host of |
| 10:15 | 8 | documents that have been admitted in this case under similar |
| 10:15 | 9 | circumstances. |
| 10:15 | 10 | THE COURT:  It will be refused as hearsay.  If you |
| 10:15 | 11 | want to use it in some other fashion, that's fine. |
| 10:15 | 12 | BY MR. AVENATTI: |
| 10:15 | 13 | Q    Sir, isn't it true that on January 15th, 2019, I |
| 10:16 | 14 | informed you that you had failed to communicate with me and |
| 10:16 | 15 | my office regarding our representation of you in the Pirch |
| 10:16 | 16 | matter? |
| 10:16 | 17 | MR. SAGEL:  Objection.  Calls for hearsay. |
| 10:16 | 18 | THE COURT:  Sustained. |
| 10:16 | 19 | BY MR. AVENATTI: |
| 10:16 | 20 | Q    Sir, does Exhibit 1058 refresh your recollection as to |
| 10:16 | 21 | the answers that you previously provided related to you not |
| 10:16 | 22 | being informed? |
| 10:16 | 23 | A    Yes. |
| 10:16 | 24 | Q    And in January of 2019 did you become informed that |
| 10:16 | 25 | there was a claim that you had not properly communicated |

10:17    1    with me and my office regarding our representation of you in

10:17    2    the Pirch matter?

10:17    3              MR. SAGEL:  Objection.  Calls for hearsay, Your

10:17    4    Honor.

10:17    5              THE COURT:  Sustained.

10:17    6    BY MR. AVENATTI:

10:17    7    Q    Sir, in January of 2019 did you come to understand that

10:17    8    there was a complaint about you not properly communicating

10:17    9    and compensating?

10:17   10              MR. AVENATTI:  It goes to state of mind.

10:17   11              MR. SAGEL:  Objection, Your Honor.  Same.

10:17   12              THE COURT:  Overruled.

10:17   13              THE WITNESS:  Can you repeat the question.

10:17   14              MR. AVENATTI:  May I have it read back, Your

10:17   15    Honor?

10:17   16              THE COURT:  Yes.

10:17   17              (Record read)

10:17   18    BY MR. AVENATTI:

10:17   19    Q    Yes or no?

10:17   20    A    No.

10:17   21              MR. AVENATTI:  Your Honor, I offer 1058 as

10:18   22    impeachment.

10:18   23              MR. SAGEL:  Same objections, Your Honor.

10:18   24              THE COURT:  Sustained.

        25

| | | |
|---|---|---|
| 10:18 | 1 | BY MR. AVENATTI: |
| 10:18 | 2 | Q    Sir, do you recall that Mr. Sagel asked you a number of |
| 10:18 | 3 | questions about whether your files had been provided to you? |
| 10:18 | 4 | Do you remember that? |
| 10:18 | 5 | A    Vaguely. |
| 10:18 | 6 | Q    And I believe you testified that the files were not |
| 10:18 | 7 | provided to you.  Do you recall that? |
| 10:18 | 8 | A    I do. |
| 10:18 | 9 | Q    Was that truthful? |
| 10:18 | 10 | A    I believe so. |
| 10:18 | 11 |         MR. AVENATTI:  Your Honor, I offer 1058 as |
| 10:18 | 12 | impeachment. |
| 10:18 | 13 |         MR. SAGEL:  Same objections, Your Honor. |
| 10:18 | 14 |         THE COURT:  It will be refused. |
| 10:18 | 15 | BY MR. AVENATTI: |
| 10:18 | 16 | Q    Mr. Barela, isn't it true that in fact you were |
| 10:18 | 17 | provided a dropbox link with all of your files, your client |
| 10:19 | 18 | files, in January of 2019? |
| 10:19 | 19 | A    That's incorrect. |
| 10:19 | 20 | Q    Isn't it true that in January of 2019 you were provided |
| 10:19 | 21 | with a dropbox link with documents from your various legal |
| 10:19 | 22 | matters? |
| 10:19 | 23 | A    Yes. |
| 10:19 | 24 | Q    And at that time you were requested to immediately sign |
| 10:19 | 25 | a substitution of counsel so that I could withdraw from the |

58

| | | |
|---|---|---|
| 10:19 | 1 | Pirch case, right? |
| 10:19 | 2 | A    Correct. |
| 10:19 | 3 | Q    And you took about a week to sign it -- strike that. |
| 10:19 | 4 | And you took about a week to sign it; is that right? |
| 10:19 | 5 | A    I don't recall. |
| 10:19 | 6 | Q    You didn't sign it right away; did you? |
| 10:19 | 7 | A    I don't recall. |
| 10:20 | 8 | MR. AVENATTI:  One moment, Your Honor, please. |
| 10:20 | 9 | (Pause in proceedings) |
| 10:20 | 10 | MR. AVENATTI:  May I approach, Your Honor? |
| 10:20 | 11 | THE COURT:  You may. |
| 10:20 | 12 | (Document handed to the witness) |
| 10:20 | 13 | MR. AVENATTI:  Your Honor, I used it briefly |
| 10:21 | 14 | yesterday.  I think you may have a copy. |
| 10:21 | 15 | BY MR. AVENATTI: |
| 10:21 | 16 | Q    Mr. Barela, does that document refresh your |
| 10:21 | 17 | recollection that it took you about a week to sign that |
| 10:21 | 18 | document so that I could no longer serve as your attorney in |
| 10:21 | 19 | the Pirch matter? |
| 10:21 | 20 | A    Yes. |
| 10:21 | 21 | Q    And that was in late January of 2019, right? |
| 10:21 | 22 | A    Correct. |
| 10:21 | 23 | MR. AVENATTI:  Your Honor, now is actually a good |
| 10:22 | 24 | time to take a break. |
| 10:22 | 25 | THE COURT:  That's fine. |

10:22   1          We will take the mid-morning break here, ladies

10:22   2   and gentlemen.  Please remember the admonition not to

10:22   3   discuss the case with anyone and not to form any opinions on

10:22   4   the issues in the case until it is submitted to you.  And

10:22   5   please do not do any research.

10:22   6          So we will be in recess for 15 minutes.

10:22   7          (Jury not present)

10:23   8          THE COURT:  You may step down.

10:24   9          MR. SAGEL:  There is at least one thing that we

10:24   10  want to take up before we adjourn for the weekend because

10:24   11  it's somewhat time sensitive.

10:24   12          THE COURT:  Let's take it up now.

10:24   13          MR. SAGEL:  One is regarding the agents from the

10:24   14  Southern District of New York.  From what I have been told,

10:24   15  I believe their subpoenas say August 10th.  So where we

10:24   16  stand right now, I want to be able to at least advise them

10:24   17  there is no obligation under those as of the 10th -- or

10:24   18  maybe later, but that's for the next step.

10:24   19          THE COURT:  Well, let's get that out of the way.

10:24   20          You don't need them on the 10th?

10:24   21          MR. AVENATTI:  Absolutely not, sir.  I don't think

10:24   22  their case is going to be done by the 10th, so you are

10:25   23  correct.

10:25   24          THE COURT:  Okay.

10:25   25          MR. SAGEL:  So then we'll decide when we need to

10:25  1  take that up.

10:25  2          THE COURT:  I'm waiting for Mr. Avenatti to

10:25  3  produce the documents recited in his memorandum with regard

10:25  4  to the agents.

10:25  5          MR. AVENATTI:  We're filing them today, Your

10:25  6  Honor.  It will probably be at the end of the day.

10:25  7          THE COURT:  All right.

10:25  8          MR. SAGEL:  And then obviously the redaction issue

10:25  9  because of our witnesses coming up which we have now filed

10:25 10  on multiple occasions about what we have or haven't done.

10:25 11  And then obviously one other thing that isn't as time

10:25 12  sensitive but we don't have an exhibit list even, let alone

10:25 13  a witness list.  I don't know how the Court is keeping track

10:25 14  of what's being provided or shown.

10:25 15          We don't even have a generic list to be writing

10:25 16  on.  Some of these things are obviously not pure

10:25 17  impeachment.  So if we could get some kind of a list so that

10:26 18  we know what we're getting, and then a witness list.

10:26 19          He has obviously subpoenaed individuals.  He is

10:26 20  using the Court's authority.  I'm not sure why that wouldn't

10:26 21  be disclosed if he is using the Court's authority for

10:26 22  subpoenas at a minimum.

10:26 23          I'll give you an example.  He subpoenaed

10:26 24  Mr. Barela's wife when she came into court and then told her

10:26 25  she needed to leave under a 615 order.  If he is truly going

10:26  1    to call her, that's his prerogative.  I'm not sure he could

10:26  2    provide a basis, but he is at least serving people with

10:26  3    subpoenas and telling them not to come into court.  So I

10:26  4    think he should be providing a witness list at least as it

10:26  5    relates to that.

10:26  6         MR. AVENATTI:  Your Honor, I don't think I'm under

10:26  7    any obligation to provide a witness list at this point

10:26  8    before the government rests their case.  We're not abusing

10:26  9    the subpoena power of the Court.  We have a good-faith basis

10:26  10   to subpoena folks.

10:26  11        As it relates to exhibits, I'm not aware of any

10:27  12   obligation for us to provide an exhibit list at this point.

10:27  13   I am happy to provide obviously a chart of anything that

10:27  14   we've attempted to use with witnesses.  You know, for the

10:27  15   benefit of the record, I'm happy to address that.

10:27  16        THE COURT:  Well, I'm not going to require you to

10:27  17   do anything further at this point.  I will look for that

10:27  18   memorandum and the documents that I requested.

10:27  19        MR. AVENATTI:  The interview notes.

10:27  20        THE COURT:  Right.

10:27  21        MR. AVENATTI:  Yes, sir.  And you'll have that.

10:27  22        THE COURT:  By the end of the day.

10:27  23        MR. AVENATTI:  It may be 5:30-ish, if that's okay.

10:27  24        THE COURT:  All right.

10:27  25        MR. AVENATTI:  Thank you.  Appreciate it.

| | | |
|---|---|---|
| 10:27 | 1 | (Recess taken at 10:27 a.m.; |
| 10:27 | 2 | proceedings resumed at 10:43 a.m.) |
| 10:43 | 3 | MR. AVENATTI:  Your Honor, there is one exhibit we |
| 10:43 | 4 | need to address before the next witness. |
| 10:43 | 5 | (Jury present) |
| 10:44 | 6 | THE COURT:  Mr. Avenatti. |
| 10:45 | 7 | BY MR. AVENATTI: |
| 10:45 | 8 | Q    Mr. Barela, do you have your calculation there? |
| 10:45 | 9 | A    I do. |
| 10:45 | 10 | Q    Would you please sign and date it for me. |
| 10:45 | 11 | A    (Witness complies.) |
| 10:46 | 12 | Q    Mr. Barela, one of the things that Mr. Sagel was asking |
| 10:46 | 13 | you about was my efforts to raise financing for you in |
| 10:46 | 14 | connection with your business.  Do you recall that? |
| 10:46 | 15 | A    I do. |
| 10:46 | 16 | Q    Did I ever make any efforts in that regard? |
| 10:46 | 17 | A    You did. |
| 10:46 | 18 | Q    And in fact, in July of 2018 I attempted to raise some |
| 10:46 | 19 | money for you for your business from a Mr. Josh Viner.  Do |
| 10:46 | 20 | you recall that? |
| 10:46 | 21 | A    I do. |
| 10:46 | 22 | Q    And who was Josh Viner? |
| 10:46 | 23 | A    Founder of Wag!, the dog-walking service, Wag!. |
| 10:47 | 24 | Q    And you understood that I had represented Mr. Viner and |
| 10:47 | 25 | his brother in connection with their position at Wag!, |

| | | |
|---|---|---|
| 10:47 | 1 | correct? |
| 10:47 | 2 | MR. SAGEL:  Objection, 403, Your Honor. |
| 10:47 | 3 | THE COURT:  Overruled. |
| 10:47 | 4 | THE WITNESS:  Yes. |
| 10:47 | 5 | BY MR. AVENATTI: |
| 10:47 | 6 | Q    And I arranged for you to have some communications with |
| 10:47 | 7 | Mr. Viner to see if he wanted to invest in Quix Supply, |
| 10:47 | 8 | correct? |
| 10:47 | 9 | A    You did. |
| 10:47 | 10 | Q    And ultimately he decided not to invest; is that right? |
| 10:47 | 11 | A    That's correct. |
| 10:47 | 12 | Q    Do you know if that decision had anything to do with |
| 10:47 | 13 | me? |
| 10:47 | 14 | A    I do not. |
| 10:48 | 15 | Q    Do you have a recollection that in May of 2018 I was |
| 10:48 | 16 | dealing with the legal department at Wirecard as it relates |
| 10:48 | 17 | to the Quix Supply business? |
| 10:48 | 18 | A    I don't recall. |
| 10:48 | 19 | MR. AVENATTI:  Your Honor, can I approach? |
| 10:48 | 20 | THE COURT:  You may. |
| 10:48 | 21 | (Document handed to the witness) |
| 10:48 | 22 | BY MR. AVENATTI: |
| 10:48 | 23 | Q    Sir, does this refresh your recollection that in May of |
| 10:49 | 24 | 2018 I was working with you in connection with dealing with |
| 10:49 | 25 | the legal department at Wirecard? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:49  1    A     Yes, I do recall this.  And I believe we had two

10:49  2    meetings with them.

10:49  3                MR. AVENATTI:  Move to strike everything after

10:49  4    "Yes, I do recall this" as nonresponsive.

10:49  5                THE COURT:  It will be stricken.

10:49  6    BY MR. AVENATTI:

10:49  7    Q     Now, at some point in September of 2018 you asked me to

10:49  8    get involved with a venture in Mexico.  Do you recall that?

10:49  9    A     I do.

10:49  10   Q     And what was that venture that you asked me to get

10:49  11   involved in in Mexico?

10:49  12   A     I was dealing with Carlos Slim, the cellphone industry,

10:49  13   and a credit card company that was across the border.

10:50  14   Q     And you wanted me to -- well, strike that.  Who is

10:50  15   Carlos Slim?

10:50  16   A     He owns the largest telecom in South America.

10:50  17   Q     One of the world's wealthiest individuals, right?

10:50  18   A     Correct.

10:50  19   Q     And you wanted me to interface with Mr. Slim and the

10:50  20   people that worked for him at an executive level to further

10:50  21   the efforts of Quix, right?

10:50  22   A     Correct.

10:50  23   Q     And do you recall there were a number of communications

10:50  24   in connection with that?

10:50  25   A     I do.

65

| | | |
|---|---|---|
| 10:50 | 1 | Q    And do you recall that you asked me to travel to Mexico |
| 10:50 | 2 | in connection with that effort? |
| 10:50 | 3 | A    I do. |
| 10:50 | 4 | Q    And that was all in about September of 2018, right? |
| 10:50 | 5 | A    It was. |
| 10:51 | 6 | Q    In September of 2018 was I responsive to your |
| 10:51 | 7 | communications generally? |
| 10:51 | 8 | A    Yes. |
| 10:51 | 9 | Q    Even late at night or very early in the morning, right? |
| 10:51 | 10 | A    That's mainly when we would communicate, correct. |
| 10:51 | 11 | Q    Do you have a recollection of sending me requests very |
| 10:51 | 12 | late at night in September of 2018 as it related to the |
| 10:52 | 13 | matters that you needed assistance with? |
| 10:52 | 14 | A    I would typically do them at night.  I don't recall |
| 10:52 | 15 | specifics. |
| 10:52 | 16 | Q    Who is Rick Armstrong? |
| 10:52 | 17 | A    My CPA and CFO of Quix Supply. |
| 10:52 | 18 | Q    When you say your CPA, what do you mean? |
| 10:52 | 19 | A    Certified public accountant. |
| 10:52 | 20 | Q    But what do you mean when you say your CPA? |
| 10:52 | 21 | A    He's handled my taxes and everything for years, |
| 10:52 | 22 | 20 years. |
| 10:52 | 23 | Q    Did you ever ask me to communicate with Mr. Armstrong |
| 10:52 | 24 | in connection with your legal matters? |
| 10:53 | 25 | A    Of course. |

66

| | | |
|---|---|---|
| 10:53 | 1 | Q    Did I communicate with him? |
| 10:53 | 2 | A    You did. |
| 10:53 | 3 | Q    Did we hold meetings with Mr. Armstrong in my offices |
| 10:53 | 4 | relating to a host of issues? |
| 10:53 | 5 | A    Yes. |
| 10:53 | 6 | Q    Do you recall a meeting that took place on |
| 10:53 | 7 | September 27th, 2018? |
| 10:53 | 8 | A    I don't recall it specifically, no. |
| 10:53 | 9 | MR. AVENATTI:  Your Honor, can I approach? |
| 10:53 | 10 | THE COURT:  You may. |
| 10:53 | 11 | (Document handed to the witness) |
| 10:53 | 12 | BY MR. AVENATTI: |
| 10:54 | 13 | Q    Mr. Barela, does that refresh your recollection about a |
| 10:54 | 14 | meeting that took place on September 27th, 2018? |
| 10:54 | 15 | A    Yes, it does. |
| 10:54 | 16 | Q    And do you recall during that meeting it was me, you, |
| 10:54 | 17 | and Mr. Armstrong? |
| 10:54 | 18 | A    Yes, it was. |
| 10:54 | 19 | Q    And we discussed a number of issues, including relating |
| 10:54 | 20 | to Quix Supply, right? |
| 10:54 | 21 | A    Correct. |
| 10:54 | 22 | Q    And one of the things that we spoke about during that |
| 10:54 | 23 | meeting was who was going to need employment agreements and |
| 10:54 | 24 | restricted stock agreements, right? |
| 10:54 | 25 | A    Correct. |

| | | |
|---|---|---|
| 10:54 | 1 | Q    And then Mr. Armstrong memorialized what needed to be |
| 10:55 | 2 | done in an e-mail that was sent to you and me the next day, |
| 10:55 | 3 | on September 28th, 2018; right? |
| 10:55 | 4 | A    Correct. |
| 10:55 | 5 | MR. AVENATTI:  Your Honor, can I retrieve that |
| 10:55 | 6 | document? |
| 10:55 | 7 | THE COURT:  Sure. |
| 10:55 | 8 | MR. AVENATTI:  Actually, you know what?  If we |
| 10:55 | 9 | could just put it face down if you don't mind. |
| 10:56 | 10 | THE WITNESS:  Yes. |
| 10:56 | 11 | MR. AVENATTI:  Great. |
| 10:56 | 12 | BY MR. AVENATTI: |
| 10:56 | 13 | Q    I want to ask you about Exhibit 176, line 165. |
| 10:56 | 14 | MR. AVENATTI:  Ms. Hernandez, if we could have |
| 10:56 | 15 | that, Exhibit 176, page 20 of 47. |
| 10:56 | 16 | THE WITNESS:  Line 165, right? |
| 10:56 | 17 | BY MR. AVENATTI: |
| 10:56 | 18 | Q    Yes. |
| 10:56 | 19 | A    Okay.  I'm here. |
| 10:56 | 20 | Q    Can you read that, sir? |
| 10:56 | 21 | A    "FYI, have" -- |
| 10:57 | 22 | Q    I wasn't clear.  Can you make it out? |
| 10:57 | 23 | A    Oh, yes. |
| 10:57 | 24 | Q    Okay.  And this was a line item that Mr. Sagel asked |
| 10:57 | 25 | you about on direct about your sentencing hearing, remember? |

| | | |
|---|---|---|
| 10:57 | 1 | A    Correct. |
| 10:57 | 2 | Q    And this related to the San Diego case that we were |
| 10:57 | 3 | talking about previously, right, yesterday? |
| 10:57 | 4 | A    Correct. |
| 10:57 | 5 | Q    And at the sentencing hearing is when -- and I asked |
| 10:57 | 6 | you about this yesterday -- is when the judge said that you |
| 10:57 | 7 | were not to have any further contact with Mr. Ross, right? |
| 10:57 | 8 | A    Correct. |
| 10:57 | 9 | Q    And you told the jury that as of that date, you didn't |
| 10:57 | 10 | have any further business contact with Mr. Ross, right? |
| 10:57 | 11 | A    Correct. |
| 10:57 | 12 | Q    And that was truthful, right? |
| 10:57 | 13 | A    Truthful. |
| 10:57 | 14 | Q    Hundred percent? |
| 10:57 | 15 | A    Hundred percent. |
| 10:57 | 16 | Q    Okay.  And after that date you didn't take any efforts |
| 10:57 | 17 | to make sure that Mr. Ross was working with you on Quix |
| 10:57 | 18 | Supply because you knew that would be a violation of the |
| 10:57 | 19 | order from the judge, right? |
| 10:58 | 20 | A    Correct. |
| 10:58 | 21 | Q    Then why was it on September 27th, Mr. Barela, that you |
| 10:58 | 22 | had a discussion with me and Mr. Armstrong about giving |
| 10:58 | 23 | Mr. Ross an employment agreement and a restricted stock |
| 10:58 | 24 | agreement with Quix? |
| 10:58 | 25 | MR. SAGEL:  Objection.  Assumes facts not in |

| | | |
|---|---|---|
| 10:58 | 1 | evidence.  Calls for speculation. |
| 10:58 | 2 | THE COURT:  Overruled. |
| 10:58 | 3 | THE WITNESS:  I don't recall. |
| 10:58 | 4 | BY MR. AVENATTI: |
| 10:58 | 5 | Q    Take a look at 1065 -- you can flip that over -- |
| 10:58 | 6 | towards the bottom of the page and see if that refreshes |
| 10:58 | 7 | your recollection that indeed ten days after your sentencing |
| 10:58 | 8 | hearing, you were talking about the employment agreement and |
| 10:59 | 9 | restricted stock agreement with Steve Ross who you had been |
| 10:59 | 10 | ordered not to have any business contact with? |
| 10:59 | 11 | A    We were going to give him his equity, but he wasn't -- |
| 10:59 | 12 | MR. AVENATTI:  Move to strike. |
| 10:59 | 13 | THE COURT:  It will be stricken. |
| 10:59 | 14 | BY MR. AVENATTI: |
| 10:59 | 15 | Q    Sir, does this refresh your recollection that in fact |
| 10:59 | 16 | in direct violation of a Court order in connection with your |
| 10:59 | 17 | sentencing, you had discussions with me and Mr. Armstrong |
| 10:59 | 18 | ten days later about giving Mr. Ross an employment agreement |
| 10:59 | 19 | at Quix?  Yes or no? |
| 10:59 | 20 | A    No. |
| 11:00 | 21 | Q    After you received the e-mail from Mr. Armstrong on |
| 11:00 | 22 | September 28th, 2018, did you respond with an e-mail telling |
| 11:00 | 23 | Mr. Armstrong that Steve Ross was not to be part of the |
| 11:00 | 24 | company?  Did you do that, sir? |
| 11:00 | 25 | A    I did not. |

70

| | | |
|---|---|---|
| 11:00 | 1 | Q    In fact, on September 27, 2018, you and me and |
| 11:00 | 2 | Mr. Armstrong discussed that you wanted Steve Ross to be the |
| 11:00 | 3 | executive vice president of operations and customer |
| 11:00 | 4 | relations at Quix; isn't that true? |
| 11:01 | 5 | A    Yes. |
| 11:01 | 6 | Q    And at that time you knew exactly what you had been |
| 11:01 | 7 | ordered, prohibited from doing by the judge in San Diego; |
| 11:01 | 8 | isn't that true? |
| 11:01 | 9 | A    It's true. |
| 11:01 | 10 | MR. AVENATTI:  Your Honor, I think I said 1065.  I |
| 11:02 | 11 | meant 1068 for identification purposes, just so we have a |
| 11:02 | 12 | clear record. |
| 11:02 | 13 | THE COURT:  Correct, 1068. |
| 11:02 | 14 | BY MR. AVENATTI: |
| 11:02 | 15 | Q    Sir, you received 1068 on or about September 28th, |
| 11:02 | 16 | 2018, correct? |
| 11:02 | 17 | A    Correct. |
| 11:02 | 18 | MR. AVENATTI:  Your Honor, the defense offers |
| 11:02 | 19 | 1068, state of mind. |
| 11:02 | 20 | MR. SAGEL:  Objection.  Rule 16 and hearsay. |
| 11:02 | 21 | THE COURT:  It will be refused, Rule 16. |
| 11:02 | 22 | BY MR. AVENATTI: |
| 11:03 | 23 | Q    Do you recall that in fact you sent me a text to make |
| 11:03 | 24 | sure that I had received this e-mail from Mr. Armstrong, |
| 11:03 | 25 | which included the request that I prepare an employment |

| | | |
|---|---|---|
| 11:03 | 1 | agreement for Mr. Ross? |
| 11:03 | 2 | MR. SAGEL:  Objection.  Calls for hearsay, and 403 |
| 11:03 | 3 | at this point, Your Honor. |
| 11:03 | 4 | THE COURT:  Overruled. |
| 11:03 | 5 | MR. AVENATTI:  May I have it read back, Your |
| 11:03 | 6 | Honor? |
| 11:03 | 7 | THE COURT:  Yes. |
| 11:03 | 8 | (Record read) |
| 11:03 | 9 | THE WITNESS:  I don't recall. |
| 11:03 | 10 | BY MR. AVENATTI: |
| 11:03 | 11 | Q    Go to 176, line 131, page 18 of 47, please. |
| 11:04 | 12 | A    I see that. |
| 11:04 | 13 | Q    I'm sorry, line 131.  You wrote to me after this e-mail |
| 11:04 | 14 | and you said, "Just checking in on your schedule.  Did you |
| 11:04 | 15 | see Rick's e-mail?  Thanks.  G."  Right? |
| 11:04 | 16 | A    Yes. |
| 11:04 | 17 | Q    And do you recall that one of the things in this e-mail |
| 11:04 | 18 | that you were checking with me to see if I had seen it was |
| 11:05 | 19 | that Mr. Armstrong had indicated that, "Rick and Greg will |
| 11:05 | 20 | meet with each prospect to get agreements executed ASAP," |
| 11:05 | 21 | meaning the employment agreement, including with Mr. Ross? |
| 11:05 | 22 | A    Is there a question? |
| 11:05 | 23 | Q    Yeah.  Let's have it read back. |
| 11:05 | 24 | MR. AVENATTI:  Is that okay with Your Honor? |
| 11:05 | 25 | THE COURT:  That's fine. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:05 | 1 | (Record read) |
| 11:05 | 2 | THE WITNESS:  That's what the e-mail says, but I |
| 11:06 | 3 | don't recall. |
| 11:06 | 4 | BY MR. AVENATTI: |
| 11:06 | 5 | Q    Do you recall generally that the e-mail was about |
| 11:06 | 6 | getting Quix set up? |
| 11:06 | 7 | A    I do. |
| 11:07 | 8 | Q    Take a look at line 118, page 18 of 47, please. |
| 11:07 | 9 | A    Yes.  I see it. |
| 11:07 | 10 | Q    After you sent me the text on October 1st, you then |
| 11:07 | 11 | followed up again three days later about the work that |
| 11:07 | 12 | needed to be done in connection with Quix, including the |
| 11:07 | 13 | employment agreements, right? |
| 11:07 | 14 | A    I don't recall. |
| 11:07 | 15 | Q    Well, let's take a look at 118.  You sent me a text, |
| 11:07 | 16 | did you not, on October 4th, 2018? |
| 11:07 | 17 | A    Yes. |
| 11:07 | 18 | Q    "We also hope to have updates on status of corporate |
| 11:07 | 19 | setup.  Please help me on that.  I need to update the team. |
| 11:08 | 20 | Thanks again.  G."  Those are your words, right? |
| 11:08 | 21 | A    Correct. |
| 11:08 | 22 | Q    And the corporate setup we're talking about or you're |
| 11:08 | 23 | talking about is Quix, right? |
| 11:08 | 24 | A    Yes. |
| 11:08 | 25 | Q    The issues we discussed with Mr. Armstrong, right? |

| | | |
|---|---|---|
| 11:08 | 1 | A    I don't recall. |
| 11:08 | 2 | Q    Take a look at line 109, page 17 of 47. |
| 11:09 | 3 | A    (Witness complies.)  Okay.  I see it. |
| 11:09 | 4 | Q    Two days later you sent me another text message:  "Can |
| 11:09 | 5 | you give me a status on the paperwork for the company and |
| 11:09 | 6 | the team."  Did I read that correctly, the first sentence? |
| 11:09 | 7 | A    Yes. |
| 11:09 | 8 | Q    And the paperwork for the company, you're talking about |
| 11:09 | 9 | the paperwork that was discussed with me and Mr. Armstrong, |
| 11:09 | 10 | and the company is Quix, right? |
| 11:09 | 11 | A    Yes. |
| 11:09 | 12 | Q    And that's October 8, 2018, right? |
| 11:09 | 13 | A    Correct. |
| 11:09 | 14 | Q    About three weeks after your sentencing, right? |
| 11:09 | 15 | A    Correct. |
| 11:10 | 16 | Q    Now, well before you sent this text message and well |
| 11:10 | 17 | before we had that meeting with Mr. Armstrong, isn't it true |
| 11:10 | 18 | that I had told you in no uncertain terms that Mr. Ross |
| 11:10 | 19 | could not be involved with Quix, period?  Yes or no? |
| 11:10 | 20 | A    Yes. |
| 11:10 | 21 | Q    And I told you that the reason why he could not be |
| 11:11 | 22 | involved with Quix was because of the judge's order in your |
| 11:11 | 23 | criminal case in San Diego; isn't that true? |
| 11:11 | 24 | A    Yes. |
| 11:11 | 25 | Q    Do you have a recollection that on October 19th -- |

| | | |
|---|---|---|
| 11:11 | 1 | well, strike that.  I never prepared an employment agreement |
| 11:11 | 2 | or any other agreement for Mr. Ross and the company; did I? |
| 11:12 | 3 | A    No. |
| 11:12 | 4 | MR. AVENATTI:  Move to strike, Your Honor. |
| 11:12 | 5 | THE COURT:  Overruled.  Denied. |
| 11:12 | 6 | BY MR. AVENATTI: |
| 11:12 | 7 | Q    Sir, I want to be clear.  Did I ever prepare an |
| 11:12 | 8 | employment agreement or a consulting agreement for Mr. Ross |
| 11:12 | 9 | and Quix?  Yes or no? |
| 11:12 | 10 | A    No. |
| 11:12 | 11 | Q    Do you have a recollection that in October, mid October |
| 11:12 | 12 | of 2018 you asked me to get involved with a bank down in |
| 11:12 | 13 | Mexico that you were interested in doing business with? |
| 11:12 | 14 | A    I believe so. |
| 11:12 | 15 | MR. AVENATTI:  Can I approach, Your Honor? |
| 11:12 | 16 | THE COURT:  You may. |
| 11:12 | 17 | (Document handed to the witness) |
| 11:12 | 18 | BY MR. AVENATTI: |
| 11:13 | 19 | Q    Sir, does this document refresh your recollection that |
| 11:13 | 20 | in fact -- |
| 11:13 | 21 | MR. SAGEL:  The witness said yes to the question. |
| 11:13 | 22 | There is no need to refresh his recollection. |
| 11:13 | 23 | MR. AVENATTI:  He said, "I believe so." |
| 11:13 | 24 | MR. SAGEL:  He said yes. |
| 11:13 | 25 | MR. AVENATTI:  Your Honor, what would you like me |

| | | |
|---|---|---|
| 11:13 | 1 | to do? |
| 11:13 | 2 | THE COURT:  He said, "I believe so." |
| 11:13 | 3 | MR. SAGEL:  He didn't say he needed his |
| 11:13 | 4 | recollection refreshed. |
| 11:13 | 5 | MR. AVENATTI:  I'll just ask another question. |
| 11:14 | 6 | BY MR. AVENATTI: |
| 11:14 | 7 | Q    Mr. Barela, do you have a recollection that in mid |
| 11:14 | 8 | October of 2018 you asked me to get involved in your efforts |
| 11:14 | 9 | to do business with a Grupo Carso bank in Mexico? |
| 11:14 | 10 | A    I do. |
| 11:14 | 11 | Q    And that was in connection with raising funding for |
| 11:14 | 12 | Quix, right? |
| 11:14 | 13 | A    Correct. |
| 11:14 | 14 | Q    Do you have a recollection that on October 31st, 2018, |
| 11:14 | 15 | you asked me to review a press release that was going to be |
| 11:14 | 16 | issued by Wirecard relating to their relationship with Quix? |
| 11:14 | 17 | A    I do. |
| 11:14 | 18 | Q    Did I review it? |
| 11:14 | 19 | A    Yes. |
| 11:14 | 20 | Q    Did I provide input? |
| 11:14 | 21 | A    Yes. |
| 11:15 | 22 | MR. AVENATTI:  Your Honor, one moment, please. |
| 11:15 | 23 | (Pause in proceedings) |
| 11:16 | 24 | BY MR. AVENATTI: |
| 11:16 | 25 | Q    Mr. Barela, take a look at line 14 on page 12 of 47 on |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:17 | 1 | Exhibit 176. |
| 11:17 | 2 | A    Which number? |
| 11:17 | 3 | Q    Well, let's take a look at actually -- |
| 11:17 | 4 |         MR. AVENATTI:  Ms. Hernandez, if we could look at |
| 11:17 | 5 | 14 through 17 at the top. |
| 11:17 | 6 | BY MR. AVENATTI: |
| 11:17 | 7 | Q    This is in November of 2018 when according to you I was |
| 11:18 | 8 | not responding to your text messages.  Do you remember that? |
| 11:18 | 9 | A    Yeah. |
| 11:18 | 10 | Q    On the 5th of November at 11:53 p.m. UTC time, you send |
| 11:18 | 11 | me a text message:  "Keep pushing forward.  Good luck the |
| 11:18 | 12 | next few days.  We'll talk soon.  Thanks.  G."  Do you see |
| 11:18 | 13 | that? |
| 11:18 | 14 | A    I do. |
| 11:18 | 15 | Q    Less than two minutes later I respond, "Thanks, Greg." |
| 11:18 | 16 | Do you see that? |
| 11:18 | 17 | A    I do. |
| 11:18 | 18 | Q    Then I responded, "Appreciate it."  Do you see that? |
| 11:18 | 19 | A    I do. |
| 11:18 | 20 | Q    You then you sent me the text at line 14; is that |
| 11:18 | 21 | right? |
| 11:18 | 22 | A    I did. |
| 11:18 | 23 | Q    "I am praying for you.  May God bless you and give you |
| 11:18 | 24 | strength.  Do what is right for mankind.  Love Michael as a |
| 11:18 | 25 | brother.  Fight back..."  Did I read that correctly? |

| | | |
|---|---|---|
| 11:19 | 1 | A    You did. |
| 11:19 | 2 | Q    That had nothing to do with pursuing the Brock |
| 11:19 | 3 | settlement; did it?  Yes or no? |
| 11:19 | 4 | A    No. |
| 11:19 | 5 | Q    Take a look at Exhibit 250, please. |
| 11:20 | 6 | A    (Witness complies.)  Okay. |
| 11:20 | 7 | Q    This is one of the exhibits that Mr. Sagel asked you |
| 11:20 | 8 | about on direct.  Do you recall that? |
| 11:20 | 9 | A    I do. |
| 11:20 | 10 | Q    These were the communications -- strike that.  These |
| 11:20 | 11 | were some e-mails between Mr. Waterman and me and |
| 11:20 | 12 | Ms. Regnier, right? |
| 11:20 | 13 | A    Yes. |
| 11:20 | 14 | Q    And, in fact, you are copied on these e-mails, right? |
| 11:20 | 15 | A    Correct. |
| 11:20 | 16 | Q    In realtime, right? |
| 11:20 | 17 | A    What do you mean, realtime? |
| 11:20 | 18 | Q    Meaning they weren't just forwarded to you later.  You |
| 11:20 | 19 | actually received the copies when they were sent by other |
| 11:20 | 20 | people in the string? |
| 11:20 | 21 | A    Yes. |
| 11:20 | 22 | Q    And Rick Armstrong, who you were just talking about, |
| 11:20 | 23 | he's also copied; is that right? |
| 11:20 | 24 | A    Correct. |
| 11:21 | 25 | Q    Take a look at the top e-mail that Mr. Sagel asked you |

78

| | | |
|---|---|---|
| 11:21 | 1 | about.  Did you receive this e-mail on or about |
| 11:21 | 2 | December 11th, 2018? |
| 11:21 | 3 | A    Yes. |
| 11:21 | 4 | Q    Mr. Sagel asked you about the portion about the board |
| 11:21 | 5 | seat and the ten percent of the interest in the company.  Do |
| 11:21 | 6 | you see that? |
| 11:21 | 7 | A    I do. |
| 11:21 | 8 | Q    Did you ever respond to this e-mail?  Yes or no? |
| 11:21 | 9 | A    I did not. |
| 11:21 | 10 | Q    Did Mr. Armstrong ever respond to this e-mail? |
| 11:21 | 11 | A    I don't believe so. |
| 11:21 | 12 | Q    Do you see at the bottom where it says, "Please let me |
| 11:21 | 13 | know what you suggest"? |
| 11:21 | 14 | A    Yes. |
| 11:21 | 15 | Q    Did Mr. Waterman ever respond to this e-mail? |
| 11:22 | 16 | A    I don't recall. |
| 11:22 | 17 | Q    How about Mr. Bledsoe or Mr. Larson, some of the other |
| 11:22 | 18 | attorneys that you testified about?  Did they ever respond |
| 11:22 | 19 | to the e-mail? |
| 11:22 | 20 | A    I don't recall. |
| 11:22 | 21 | Q    As you sit here today, you don't recall any such |
| 11:22 | 22 | response, right? |
| 11:22 | 23 | A    I do not. |
| 11:22 | 24 | Q    Did you ever cause any documents to be presented to me |
| 11:22 | 25 | in connection with this ten percent equity interest? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:22 | 1 | A    No. |
| 11:22 | 2 | Q    How about in connection with the board seat? |
| 11:22 | 3 | A    No. |
| 11:22 | 4 | Q    So your position, Mr. Barela, is that for the work that |
| 11:23 | 5 | was done in connection with Quix, no payment is due?  Yes or |
| 11:23 | 6 | no? |
| 11:23 | 7 | A    No payment is due. |
| 11:23 | 8 | Q    And I think you said that Quix is still in business, |
| 11:23 | 9 | right?  Yes or no? |
| 11:23 | 10 | A    Yes. |
| 11:24 | 11 | Q    Did you ever tell the government that Ms. Regnier |
| 11:24 | 12 | managed my law office and the staff reported to her? |
| 11:24 | 13 | A    I don't recall. |
| 11:24 | 14 | Q    Do you have Exhibit 1072 in front of you, sir? |
| 11:24 | 15 | A    Yes. |
| 11:24 | 16 | Q    Take a look at paragraph 11 and see if that refreshes |
| 11:24 | 17 | your recollection that you told the government that. |
| 11:24 | 18 | A    Yes. |
| 11:25 | 19 | Q    Did you ever tell the government that Ms. Regnier |
| 11:25 | 20 | handled the banking and wires for the law office? |
| 11:25 | 21 | A    Yes. |
| 11:25 | 22 | Q    Now, yesterday on direct you were asked about being in |
| 11:25 | 23 | a conference room with me and Ms. Regnier walking in with a |
| 11:25 | 24 | copy of the settlement agreement.  Do you remember that? |
| 11:25 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

80

11:25   1   Q    And you testified that Ms. Regnier walked in and she

11:26   2   went to go hand the document to you but I reached around you

11:26   3   to grab the document.

11:26   4   A    That's not what I said.

11:26   5   Q    You testified that somebody reached around somebody.

11:26   6   You don't remember that?

11:26   7   A    I do.  Do you want me to repeat what I said?

11:26   8   Q    I just want you to just answer my question.

11:26   9   A    That's not what I said.

11:26   10  Q    Well, what is your recollection, then, relating to this

11:26   11  moment -- well, strike that.  Do you know that Ms. Regnier

11:26   12  has already testified in this case?

11:26   13  A    I believe so, yes.

11:26   14  Q    How do you know that?

11:26   15  A    I don't recall, but somebody had told me.

11:26   16  Q    You don't remember who told you that?

11:26   17  A    I don't.

11:27   18  Q    Well, whoever told you that, they were right.  So

11:27   19  here's my question:  What is your recollection of what

11:27   20  happened when Ms. Regnier brought this document into the

11:27   21  conference room?

11:27   22  A    I was sitting in front of you.  You were behind me.

11:27   23  She walked in closest to the door.  I was before you, and

11:27   24  she reached around me and handed the document to you.  As

11:27   25  you reviewed, you scanned through it, and then you handed it

11:27  1   to me directly.  That's what I stated.

11:27  2   Q     That part about the reach-around, alleged reach-around,

11:27  3   that's not what you told the government in March of 2019;

11:27  4   was it?

11:27  5   A     I don't know.

11:27  6   Q     Take a look at paragraph 11 and see if that refreshes

11:27  7   your recollection.

11:27  8   A     (Witness complies.)

11:27  9   Q     My question is:  Does this refresh your recollection

11:28  10  that when you met with the government in March of 2019, you

11:28  11  didn't mention anything about this alleged reach-around?

11:28  12  A     It just doesn't have all the details.

11:28  13           MR. AVENATTI:  Move to strike, Your Honor.

11:28  14           THE COURT:  It will be stricken.

11:28  15  BY MR. AVENATTI:

11:28  16  Q     Sir, my question is:  Does this refresh your

11:28  17  recollection that when you met with the government, you did

11:28  18  not mention anything about this alleged reach-around?

11:28  19  A     Correct.

11:29  20  Q     Did the government ever ask you for all of your bank

11:29  21  records?

11:29  22  A     No.

11:29  23  Q     Did you ever authorize the government to -- well,

11:30  24  strike that.  When I say bank records -- let me clean this

11:30  25  up.  Did the government ever ask you for your bank records

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:30 | 1 | during the time period late December 2017 through early '19, |
| 11:30 | 2 | 2019? |
| 11:30 | 3 | A   No. |
| 11:30 | 4 | Q   Did you ever authorize the government to get those |
| 11:30 | 5 | records? |
| 11:30 | 6 | A   No. |
| 11:30 | 7 | Q   Are you aware of any efforts by the government to look |
| 11:30 | 8 | at your banking records during that time period? |
| 11:30 | 9 | A   I would assume they did. |
| 11:30 | 10 | Q   Well, do you know? |
| 11:30 | 11 | A   I don't. |
| 11:30 | 12 | Q   You would assume that they did because that's what you |
| 11:30 | 13 | would expect them to do in a case like this, right? |
| 11:30 | 14 | A   I wouldn't know. |
| 11:30 | 15 | Q   So, why would you assume that they did that?  You just |
| 11:30 | 16 | said you would assume that they did that.  My question is, |
| 11:30 | 17 | following up on your answer, why would you assume that? |
| 11:31 | 18 | MR. SAGEL:  Calls for speculation.  Irrelevant. |
| 11:31 | 19 | THE COURT:  Sustained. |
| 11:31 | 20 | BY MR. AVENATTI: |
| 11:31 | 21 | Q   Now, you testified that the mediation in the case |
| 11:31 | 22 | spanned a weekend in Denver; is that right? |
| 11:31 | 23 | A   Friday, Saturday, yes.  I think we went home on Sunday |
| 11:31 | 24 | morning. |
| 11:31 | 25 | Q   So you recall it lasting two to three days? |

| | | |
|---|---|---|
| 11:31 | 1 | A    Friday and -- I think it was all day Friday.  I was in |
| 11:31 | 2 | Colorado for the weekend.  That's what I said. |
| 11:31 | 3 | Q    Well, on direct actually you testified that it was a |
| 11:32 | 4 | three-day mediation.  Do you remember that? |
| 11:32 | 5 | A    No. |
| 11:32 | 6 |         MR. SAGEL:  At this time, Your Honor, we will |
| 11:33 | 7 | lodge a 403 objection and ask that he move on. |
| 11:33 | 8 |         THE COURT:  Overruled. |
| 11:33 | 9 | BY MR. AVENATTI: |
| 11:33 | 10 | Q    And I believe you testified, sir, that the mediation, |
| 11:33 | 11 | you were there and I was there, correct? |
| 11:33 | 12 | A    Correct. |
| 11:33 | 13 | Q    And the retired federal magistrate judge was there, |
| 11:33 | 14 | right? |
| 11:33 | 15 | A    Correct. |
| 11:33 | 16 | Q    And there were individuals there from Brock; is that |
| 11:33 | 17 | right? |
| 11:33 | 18 | A    Yes. |
| 11:33 | 19 | Q    Was anybody else there? |
| 11:34 | 20 | A    John Arden. |
| 11:34 | 21 | Q    You didn't mention Arden when Mr. Sagel asked you about |
| 11:34 | 22 | it; did you? |
| 11:34 | 23 | A    I didn't. |
| 11:34 | 24 | Q    And the mediation did not conclude with a settlement |
| 11:34 | 25 | that day, right? |

11:34  1   A    Correct.

11:34  2   Q    And then you understood that after that day there were

11:34  3   ongoing communications between me and the federal

11:34  4   magistrate, retired federal magistrate judge, right?

11:34  5   A    Correct.

11:34  6   Q    And you were aware of those communications at the time;

11:34  7   were you not?

11:34  8   A    I was.

11:34  9   Q    Were they authorized?

11:34  10  A    Yes.

11:34  11  Q    And you also knew that he was also communicating with

11:34  12  the other side, right, meaning -- and when I say he, I mean

11:34  13  the federal magistrate judge, retired?

11:34  14  A    Yes.

11:34  15  Q    And you understood that he was trying to bridge the

11:34  16  gap, right?

11:34  17  A    Correct.

11:34  18  Q    And do you recall when that was approximately?

11:35  19  A    When what was?

11:35  20  Q    The mediation in Colorado.

11:35  21  A    Yeah, in December.

11:35  22  Q    Mid December?

11:35  23  A    It was probably the third week of December or second

11:35  24  week of December, something like that.

11:35  25  Q    It took a number of days after that mediation before a

85

| | | |
|---|---|---|
| 11:35 | 1 | settlement was reached, right? |
| 11:35 | 2 | A    It was either Monday afternoon or Tuesday morning, I |
| 11:35 | 3 | think, after the Friday mediation. |
| 11:35 | 4 | Q    And subsequent to the settlement -- well, strike that. |
| 11:35 | 5 | Subsequent to our meeting in my office in late December that |
| 11:36 | 6 | we have covered, you had a communication with Mr. Armstrong |
| 11:36 | 7 | about the settlement, right? |
| 11:36 | 8 | A    I don't recall. |
| 11:36 | 9 | Q    Take a look at paragraph 16 in your March 15th, 2019, |
| 11:36 | 10 | interview. |
| 11:36 | 11 |           MR. SAGEL:  Objection.  Calls for hearsay.  He's |
| 11:36 | 12 | trying to refresh his recollection on hearsay, Your Honor. |
| 11:36 | 13 |           THE COURT:  For what purpose are you asking him to |
| 11:36 | 14 | look at it? |
| 11:36 | 15 |           MR. AVENATTI:  I am asking whether he recalls |
| 11:36 | 16 | discussing the settlement with Mr. Armstrong.  He said he |
| 11:36 | 17 | didn't recall.  I'm now refreshing his recollection. |
| 11:36 | 18 |           MR. SAGEL:  Same objection. |
| 11:36 | 19 |           THE COURT:  Proceed. |
| 11:36 | 20 | BY MR. AVENATTI: |
| 11:36 | 21 | Q    Take a look at the second to last sentence in your |
| 11:36 | 22 | March 2019 interview, paragraph 16. |
| 11:36 | 23 | A    Yes, I see that. |
| 11:36 | 24 | Q    Does that refresh your recollection that in fact you |
| 11:36 | 25 | did speak with Mr. Armstrong about the settlement? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:37 | 1 | A    Yes. |
| 11:37 | 2 | Q    Did you have any text messages or e-mails with |
| 11:37 | 3 | Mr. Armstrong about the settlement?  Do you recall? |
| 11:37 | 4 | A    I don't recall. |
| 11:37 | 5 | Q    Did the government ever ask you to check? |
| 11:37 | 6 | A    I don't recall. |
| 11:37 | 7 | Q    Now, Mr. Sagel asked you briefly about something called |
| 11:37 | 8 | Oldcastle?  Do you remember that name? |
| 11:37 | 9 | A    I do. |
| 11:37 | 10 | Q    What was or is Oldcastle? |
| 11:37 | 11 | A    Oldcastle is one of the largest cement holding |
| 11:37 | 12 | companies and manufacturers in the world based out of |
| 11:37 | 13 | Ireland. |
| 11:38 | 14 | Q    And the litigation that we were pursuing on your behalf |
| 11:38 | 15 | was not only limited to Brock; was it? |
| 11:38 | 16 | A    I believe it was limited to Brock at the time.  I don't |
| 11:38 | 17 | recall, though. |
| 11:38 | 18 | Q    You don't recall any legal efforts taken on your behalf |
| 11:38 | 19 | to intervene in a federal lawsuit in Atlanta, Georgia, in |
| 11:38 | 20 | connection with Oldcastle, Mr. Barela? |
| 11:38 | 21 | A    Yes, I do.  We had filed a motion to intervene between |
| 11:38 | 22 | Brock and Oldcastle. |
| 11:38 | 23 | MR. AVENATTI:  Move to strike after yes, I do, as |
| 11:38 | 24 | nonresponsive, Your Honor. |
| 11:38 | 25 | THE COURT:  It will be stricken. |

11:38   1   BY MR. AVENATTI:

11:38   2   Q    Mr. Barela, do you recall that in connection with the

11:38   3   Oldcastle litigation there was quite a lot of work that went

11:38   4   into that case?  Do you recall that?

11:38   5   A    Yeah.

11:38   6   Q    And do you recall that because that case was pending in

11:38   7   Atlanta, Georgia, it was necessary for us to involve lawyers

11:38   8   outside of California who were licensed in Georgia in order

11:39   9   to represent you as co-counsel?

11:39   10  A    Yes.

11:39   11  Q    Do you recall how long that case lasted?

11:39   12  A    I do not.

11:39   13  Q    Are you aware of what costs and expenses were incurred

11:39   14  in connection with that case?

11:39   15  A    I am not.

11:39   16  Q    Now, ultimately the settlement agreement that you

11:39   17  entered into only covered Brock.  It did not cover

11:39   18  Oldcastle; did it?

11:39   19  A    Correct.

11:40   20  Q    Here is my last question.  I'm going to call witnesses

11:40   21  in this case about this telephone call that you claim

11:40   22  occurred where they hung up on you, including Ms. Evan

11:40   23  Janess.  Would you like to change any of your testimony,

11:40   24  sir, that you gave to this jury about that call?

11:41   25          MR. SAGEL:  Objection.  Calls for speculation.

| 11:41 | 1 | Argumentative. |

11:41   1    Argumentative.

11:41   2              THE COURT:  Overruled.

11:41   3              THE WITNESS:  Can you read that back, the exact

11:41   4    statement?

11:41   5              (Record read)

11:41   6              THE WITNESS:  I would not, and I look forward to

11:41   7    it.

11:41   8              MR. AVENATTI:  Pass the witness.

11:41   9              THE COURT:  Mr. Sagel.

11:41  10                        REDIRECT EXAMINATION

11:41  11    BY MR. SAGEL:

11:42  12    Q    Good morning, Mr. Barela.

11:42  13    A    Good morning.

11:42  14    Q    The defendant asked you some questions both about a

11:42  15    declaration and about your settlement agreement that you

11:43  16    received when you met with him on December 28th, 2017.

11:43  17              Did the document you got that day, did it have

11:43  18    signatures?

11:43  19    A    It did not.

11:43  20    Q    Exhibit 184 that is in evidence that you testified to

11:43  21    is seven pages long.  Do you see that?

11:43  22    A    I do.

11:43  23    Q    Is that the settlement agreement you received on that

11:43  24    date from the defendant in December of 2017?

11:43  25    A    It is.

| | | |
|---|---|---|
| 11:45 | 1 | Q    I don't know if you have 1056 in front of you.  This is |
| 11:45 | 2 | the part of a declaration that defendant asked you about. |
| 11:45 | 3 | Do you see that? |
| 11:45 | 4 | A    I do. |
| 11:45 | 5 | Q    I'm getting the look that I am not speaking into the |
| 11:45 | 6 | microphone, so I'm going to see if I can move it over to |
| 11:45 | 7 | this side. |
| 11:45 | 8 | Paragraph five says:  "The settlement agreement |
| 11:45 | 9 | that respondent presented to me on December 28, 2017, to |
| 11:45 | 10 | sign required the settling party to make an initial payment |
| 11:45 | 11 | of $1,600,000 by March 10th, 2018, and three additional |
| 11:45 | 12 | payments of a hundred thousand by March 10, 2019, 2020, and |
| 11:45 | 13 | 2021, respectively, for a total of $1,900,000."  I'll stop |
| 11:46 | 14 | there.  Is that part correct? |
| 11:46 | 15 | A    That is correct. |
| 11:46 | 16 | Q    Did defendant ever provide you with a document that had |
| 11:46 | 17 | dates other than March 10th? |
| 11:46 | 18 | A    Never. |
| 11:46 | 19 | Q    "Respondent also told me that the settlement payments |
| 11:46 | 20 | were payable in March of each year."  Is that correct? |
| 11:46 | 21 | A    Yes. |
| 11:46 | 22 | Q    The last line says, "A true and correct, though |
| 11:46 | 23 | redacted, copy of the partial settlement agreement that |
| 11:46 | 24 | respondent provided to me on December 28, 2017, is attached |
| 11:46 | 25 | to this declaration as Exhibit 2." |

11:46  1           Why did you say the word "partial" before

11:46  2   settlement agreement?

11:46  3   A    Because it did not have a signature page.

11:46  4   Q    Do you still have the full 1056 up there with you?

11:46  5   A    Yes, I do.

11:46  6   Q    Did you in that same declaration -- in that same

11:47  7   declaration did you talk about how the defendant provided

11:47  8   you with a fully-executed settlement agreement in his office

11:47  9   later that year?

11:47  10          MR. AVENATTI:  Objection, Your Honor.  Improper.

11:47  11  Hearsay.

11:47  12          THE COURT:  Overruled.

11:47  13          THE WITNESS:  Can you repeat the question?

11:47  14  BY MR. SAGEL:

11:47  15  Q    In the same declaration that defendant was showing you

11:47  16  where we just talked about paragraph five and the partial

11:47  17  settlement agreement, in that same declaration did you say

11:47  18  that defendant later, later in 2018, provided you a

11:48  19  fully-executed copy of the settlement agreement that he

11:48  20  provided to you with the March dates?

11:48  21  A    Yes.

11:48  22  Q    When defendant was asking you questions about whether

11:48  23  you did a supplemental declaration in October of 2019, you

11:48  24  did that because you noticed an error in the May 24th, 2019,

11:48  25  declaration; is that right?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:48   1            MR. AVENATTI:  Objection.  Leading.

11:48   2            THE COURT:  Overruled.

11:48   3            THE WITNESS:  That is correct.

11:48   4   BY MR. SAGEL:

11:48   5   Q    Did you put together a declaration that was submitted

11:48   6   with the attachment?

11:48   7   A    I did not.

11:48   8   Q    And in October of 2019 when you reviewed what was

11:49   9   attached, what did you do?

11:49   10  A    Well, nothing.

11:49   11  Q    Did you notice anything when you reviewed your May

11:49   12  declaration in October?

11:49   13  A    Yes.  It was -- it had signature pages which are not

11:49   14  correct.

11:49   15  Q    And you filed a corrected declaration?

11:49   16  A    I did.

11:49   17           MR. AVENATTI:  Leading.

11:49   18           THE COURT:  Overruled.

11:49   19           THE WITNESS:  I believe I did, yes.

11:49   20  BY MR. SAGEL:

11:49   21  Q    With a new exhibit attached?

11:49   22  A    I believe so.

11:49   23  Q    Without the signature pages?

11:49   24  A    Correct.

11:49   25  Q    When you met with the government in March 15th, 2019,

11:49   1   prior to this declaration defendant just showed you, did you

11:49   2   tell the government that the defendant provided you a

11:50   3   partial agreement without the signature pages?

11:50   4               MR. AVENATTI:  Objection.  Leading.

11:50   5               THE COURT:  Overruled.

11:50   6               THE WITNESS:  Yes.

11:50   7   BY MR. SAGEL:

11:50   8   Q    And at all times you have always said that defendant

11:50   9   provided you with a partial settlement agreement in December

11:50   10  of 2017; is that correct?

11:50   11  A    That is correct.

11:50   12  Q    Defendant went over Exhibit 1061 with you, which was a

11:50   13  letter you received from Mr. Arden and Mr. Ibrahim.  Do you

11:51   14  remember that document?

11:51   15  A    I do.

11:51   16  Q    In it Mr. Arden and Mr. Ibrahim say:  "Mr. Barela was

11:51   17  specifically advised that we did not have knowledge about

11:51   18  any issues related to payment.  This is because neither of

11:51   19  us had any role in finalizing the settlement agreement or

11:51   20  dealing with Brock or its attorneys after the mediation

11:51   21  relating to the settlement."

11:51   22               Who did you understand to have the role finalizing

11:51   23  the settlement agreement?

11:51   24  A    Mr. Avenatti.

11:51   25  Q    Who did you understand to have the role of dealing with

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

93

| | | |
|---|---|---|
| 11:51 | 1 | Brock or its attorneys after the mediation relating to the |
| 11:52 | 2 | settlement? |
| 11:52 | 3 | A    Mr. Avenatti. |
| 11:52 | 4 | Q    The defendant asked you whether you agreed that |
| 11:52 | 5 | defendant could, pursuant to the fee contract, bring in |
| 11:52 | 6 | outside attorneys to work on your case at his discretion, |
| 11:52 | 7 | about his discretion to hire outside counsel.  Do you |
| 11:52 | 8 | remember that? |
| 11:52 | 9 | A    I do. |
| 11:52 | 10 | Q    And if you want me to pull it up, I can.  It's |
| 11:52 | 11 | Exhibit 171 on page 2, which is the what he can do. |
| 11:53 | 12 | The scope of the service is paragraph -- it's the |
| 11:53 | 13 | last sentence:  "In addition attorney may at any time and at |
| 11:53 | 14 | its discretion retain outside counsel whose legal fees will |
| 11:53 | 15 | be deducted from the fees received by attorney," and above |
| 11:53 | 16 | attorney is defined as Eagan Avenatti, LLP. |
| 11:53 | 17 | Did defendant ever tell you as it related to the |
| 11:54 | 18 | Brock matter that he hired outside counsel to work on the |
| 11:54 | 19 | matter? |
| 11:54 | 20 | A    No. |
| 11:54 | 21 | Q    Based on your understanding of the work that was done |
| 11:54 | 22 | on the Brock matter, was there any attorney other than the |
| 11:54 | 23 | three you named -- John Arden, Ahmed Ibrahim, and Michael |
| 11:54 | 24 | Avenatti -- were there any other outside attorneys other |
| 11:54 | 25 | than those three? |

| | | |
|---|---|---|
| 11:54 | 1 | A    No, not that I am aware of. |
| 11:54 | 2 | Q    Based on your understanding of this paragraph, does the |
| 11:54 | 3 | attorney have the discretion to pay expenses of the |
| 11:54 | 4 | defendant's coffee business? |
| 11:54 | 5 | A    No. |
| 11:54 | 6 | Q    Based on your understanding of your fee contract with |
| 11:54 | 7 | the defendant, could he use your fees to pay Dillanos Coffee |
| 11:54 | 8 | Roasters? |
| 11:55 | 9 | A    No. |
| 11:55 | 10 | Q    How about Alki Bakery? |
| 11:55 | 11 | A    No, of course not. |
| 11:55 | 12 | Q    Defendant asked you about your text messages before |
| 11:55 | 13 | December 18th, 2017, prior to getting the phone that was |
| 11:55 | 14 | copied.  Do you remember those questions? |
| 11:55 | 15 | A    Yes. |
| 11:55 | 16 | Q    Prior to December 18th, 2017, did you have a settlement |
| 11:55 | 17 | agreement with Brock? |
| 11:55 | 18 | A    No. |
| 11:55 | 19 | Q    The text messages that you would have had prior to |
| 11:55 | 20 | December 18th, 2017, what, if anything, would it tell about |
| 11:55 | 21 | what happened to the settlement money? |
| 11:55 | 22 | MR. AVENATTI:  Objection.  Speculation, Your |
| 11:55 | 23 | Honor. |
| 11:55 | 24 | THE COURT:  Sustained. |
| | 25 | |

11:55   1   BY MR. SAGEL:

11:55   2   Q    Was there any settlement money to discuss prior to

11:56   3   December 18th, 2017?

11:56   4   A    There was not.

11:56   5   Q    The defendant went over this morning with you

11:56   6   communications he had with you and things he told you in

11:56   7   January of 2019.  Do you recall those questions?

11:56   8   A    I do.

11:56   9   Q    In January of 2019 had you already retained new

11:56   10  counsel?

11:56   11  A    Yes.

11:56   12  Q    In January of 2019 you had already filed a complaint

11:56   13  against the defendant?

11:56   14  A    Yes.

11:56   15  Q    Do you have the piece of paper where you put

11:56   16  calculations up there?

11:56   17  A    I do.

11:56   18          MR. SAGEL:  May I retrieve that, Your Honor?

11:56   19          THE COURT:  You may.

11:57   20          MR. SAGEL:  I'm going to go into new lines, so

11:57   21  I'll let you decide if we should break now or --

11:57   22          THE COURT:  Why don't we break now.

11:57   23          Ladies and gentlemen, we will take the lunch break

11:57   24  here.  We will resume at 1:30.  Please remember the

11:57   25  admonition not to discuss the case with anyone and not to

```
11:57   1    form any opinions on the issues in the case until it is
11:57   2    submitted you.  And please do not do any research.
11:57   3              We'll be in recess until 1:30.  Thank you.
11:58   4              (Jury not present)
11:58   5              THE COURT:  We will be in recess.
11:58   6                    (Recess taken at 11:58 a.m.)
11:58   7                         *    *    *
11:58   8
11:58   9
11:58  10
11:58  11
11:58  12
11:58  13
11:58  14
11:58  15
11:58  16
11:58  17
11:58  18
11:58  19
11:58  20
11:58  21
11:58  22
11:58  23
11:58  24
11:58  25
```

CERTIFICATE


I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  August 7, 2021


/s/   Sharon A. Seffens  8/7/21

SHARON A. SEFFENS, U.S. COURT REPORTER

**MR. AVENATTI: [99]**

**MR. SAGEL: [50]** 4/5 12/10 14/25 16/12 17/7 18/2 18/5 18/22 18/25 24/9 25/16 27/3 27/7 27/10 27/13 27/20 41/7 43/23 45/1 45/16 45/18 45/23 48/14 48/17 54/16 54/20 55/5 55/17 56/3 56/11 56/23 57/13 59/9 59/13 59/25 60/8 63/2 68/25 70/20 71/2 74/21 74/24 75/3 82/18 83/6 85/11 85/18 87/25 95/18 95/20

**THE CLERK: [3]** 4/3 27/18 28/5

**THE COURT: [110]**

**THE WITNESS: [21]** 28/7 42/5 44/1 45/25 47/17 47/22 47/25 51/16 56/11 63/4 67/10 67/16 69/13 71/9 72/2 88/3 88/6 90/13 91/3 91/19 92/6

**$**

**$1,600,000 [3]** 48/25 51/3 89/11
**$1,900,000 [3]** 50/25 51/8 89/13
**$1.6 [4]** 49/6 53/15 53/18 53/21
**$1.6 million [4]** 49/6 53/15 53/18 53/21
**$120,000 [1]** 49/7
**$130,000 [1]** 49/15
**$300,000 [2]** 50/10 51/20
**$640,000 [1]** 51/3
**$710,000 [1]** 49/25
**$760,000 [1]** 51/17
**$80,000 [4]** 44/4 44/8 44/13 44/22
**$960,000 [3]** 49/3 49/5 51/3

**'**

**'19 [1]** 82/1
**'meeting [1]** 22/13
**'statement' [2]** 22/12 23/23

**/**

**/s [1]** 97/15

**0**

**0870 [1]** 1/21

**1**

**1-1053 [1]** 1/20
**1.6 million [1]** 47/22
**1.9 million [1]** 51/16
**10 [5]** 36/15 36/24 37/1 38/6 89/12
**1053 [1]** 1/20
**1056 [3]** 45/10 89/1 90/4
**1058 [5]** 3/14 54/15 55/20 56/21 57/11
**106 [1]** 24/7
**1061 [1]** 92/12
**1065 [2]** 69/5 70/10
**1068 [5]** 3/14 70/11 70/13 70/15 70/19
**107 [1]** 2/16
**1072 [2]** 42/20 79/14
**1073 [6]** 3/13 48/12 48/12 48/18 48/19 48/22
**109 [1]** 73/2
**10:27 [1]** 62/1
**10:43 [1]** 62/2
**10th [6]** 59/15 59/17 59/20 59/22 89/11 89/7
**11 [6]** 36/15 36/24 37/21 38/13 79/16 81/6
**1100 [1]** 2/7
**118 [2]** 72/8 72/15
**11:53 [1]** 76/10
**11:58 [1]** 96/6
**11th [2]** 42/12 78/2
**12 [1]** 75/25
**12/18/2017 [1]** 38/11
**1206 [1]** 6/7
**1217 [1]** 23/16
**131 [2]** 71/11 71/13
**13th [2]** 25/15 31/19
**14 [3]** 75/25 76/5 76/20
**15 [3]** 24/13 40/19 59/6
**15th [5]** 42/25 43/8 55/13 85/9 91/25
**16 [5]** 1/12 70/20 70/21 85/9 85/22
**165 [2]** 67/13 67/16
**16th [2]** 41/16 41/25

**17 [7]** 73/2 76/5
**173 [1]** 39/17 39/4 93/1
**176 [13]** 28/21 28/23 29/1 31/10 32/24 33/1 33/4 33/19 34/4 67/13 67/15 71/11 76/1
**18 [3]** 38/19 71/11 72/8
**184 [1]** 88/20
**18th [7]** 38/9 38/10 38/22 94/13 94/16 94/20 95/3
**19th [1]** 73/25
**1:30 [2]** 95/24 96/3
**1st [1]** 72/10

**2**

**20 [1]** 67/15
**20 years [1]** 65/22
**2014 [2]** 41/16 41/25
**2017 [19]** 34/12 34/15 35/5 35/8 38/7 38/9 38/11 38/19 46/23 82/1 88/16 88/24 89/9 89/24 92/10 94/13 94/16 94/20 95/3
**2018 [24]** 6/7 24/13 62/18 63/15 63/24 64/7 65/4 65/6 65/12 66/7 66/14 67/3 69/22 70/1 70/16 72/16 73/12 74/12 75/8 75/14 76/7 78/2 89/11 90/18
**2019 [39]** 9/13 9/16 16/22 18/16 22/19 29/13 29/15 31/19 33/13 33/21 35/25 40/19 41/1 41/22 42/25 43/9 44/8 45/15 46/2 52/25 55/13 55/24 56/7 57/18 57/20 58/21 81/3 81/10 82/2 85/9 85/22 89/12 90/23 90/24 91/8 91/25 95/7 95/9 95/12
**2020 [1]** 89/12
**2021 [5]** 1/17 4/1 9/15 89/13 97/13
**21 [1]** 97/15
**213 [1]** 2/8
**22nd [1]** 38/7
**23rd [1]** 18/16
**24th [1]** 90/24
**24th day [1]** 45/15
**250 [1]** 77/5
**26.2 [7]** 8/4 10/11 10/22 11/21 11/25 19/4 19/15
**27 [1]** 70/1
**27th [3]** 66/7 66/14 68/21
**28 [5]** 3/6 34/15 89/9 89/24 97/7
**28th [10]** 34/12 36/11 37/25 38/5 38/25 39/1 67/3 69/22 70/15 88/16

**3**

**312 [1]** 2/7
**31st [1]** 75/14
**338-3598 [1]** 2/12
**3598 [2]** 2/12
**362 [1]** 32/9
**39 [1]** 44/15

**4**

**4,991 [1]** 32/13
**40 percent [1]** 50/19 51/8
**403 [2]** 63/2 71/2 83/7
**411 [2]** 1/20 2/11
**47 [7]** 34/4 38/6 67/15 71/11 72/8 73/2 75/25
**48 [1]** 3/13
**481-4900 [1]** 2/17
**4900 [1]** 2/17
**4th [3]** 1/20 46/2 72/16

**5**

**54 [2]** 3/14 38/5
**543-0870 [1]** 1/21
**55 [1]** 38/9
**56 [1]** 38/9
**57 [1]** 38/10
**58 [3]** 37/1 37/2 38/10
**59 [6]** 32/12 37/1 37/2 37/9 38/11 38/14
**5:30-ish [1]** 61/23
**5th [1]** 76/10

**6**

**615 [1]** 60/25
**629 [1]** 5/1

**631 [4]** 32/15 34/5 34/11 37/21
**6441 [1]** 34/9 34/9
**647 [1]** 5/6
**6683 [1]** 2/8

**7**

**7,990 [1]** 32/15
**70 [1]** 3/14
**714 [2]** 1/21 2/12
**753 [1]** 97/6

**8**

**8/7/21 [1]** 97/15
**8000 [1]** 2/11
**88 [1]** 3/6
**894-6683 [1]** 2/8
**895 [1]** 6/7
**8:30 [1]** 4/1

**9**

**90012 [1]** 2/8
**92672 [1]** 2/16
**92701 [2]** 1/20 2/11
**949 [1]** 2/17
**9:00 [2]** 4/17 4/22
**9:05 [1]** 27/15
**9:14 [1]** 27/16

**A**

**a.m [3]** 4/1 4/18 4/22 27/15 27/16 62/1 62/2 96/6
**able [1]** 59/16
**about [112]**
**above [2]** 93/15 97/9
**above-entitled [1]** 97/9
**Absolutely [1]** 59/21
**abusing [1]** 61/8
**according [7]** 10/16 49/15 50/6 50/18 51/2 52/1 76/7
**account [3]** 25/21 26/22 51/19
**accountant [1]** 65/19
**accurate [1]** 6/24
**accusations [2]** 13/5 13/5
**across [1]** 64/13
**Act [7]** 6/25 7/10 8/4 22/2 22/13 23/17 23/23
**actual [1]** 49/10
**actually [11]** 5/24 24/21 37/2 41/11 42/17 42/20 58/23 67/8 76/3 77/19 83/3
**addition [1]** 93/13
**additional [5]** 25/25 25/25 26/3 50/10 89/11
**address [3]** 12/9 61/15 62/4
**adjourn [1]** 59/10
**admitted [1]** 55/8
**admonition [2]** 59/2 95/25
**advance [1]** 49/13
**advise [2]** 54/8 59/16
**advised [3]** 53/25 54/3 92/17
**advisory [2]** 2/15 4/10
**affects [1]** 4/20
**after [19]** 13/5 40/20 43/21 46/5 46/12 46/20 64/3 68/16 69/7 69/21 71/13 72/10 73/14 84/2 84/25 85/3 86/23 92/20 93/1
**afternoon [2]** 28/12 85/2
**again [8]** 13/4 13/25 14/5 25/14 49/19 51/9 72/11 72/20
**against [1]** 95/13
**age [1]** 20/11
**agent [19]** 4/7 8/13 8/25 10/16 10/17 15/13 15/23 17/11 17/14 20/18 21/4 21/10 22/21 23/1 23/4 27/22 29/12 36/8 43/8
**agents [11]** 12/24 17/20 19/10 20/11 40/25 43/16 43/21 44/17 44/20 59/13 60/4
**ago [2]** 17/10 26/1
**agree [10]** 5/20 7/11 21/18 29/23 33/7 34/20 36/16 36/20 36/22 51/22
**agreed [6]** 21/24 30/6 30/19 31/8 50/6 93/4
**agreement [42]** 39/17 39/22 40/12 40/21 41/16 41/19 41/23 45/8 45/14 46/14 46/22 50/9 50/18 51/25 52/2 52/5 68/23 68/24 69/8

**A**

agreement... [23] 69/9 69/18 71/1 71/21 74/1
74/2 74/8 74/8 79/24 87/16 88/15 88/23 89/8
89/23 90/2 90/8 90/17 90/19 92/3 92/9 92/19
92/23 94/17
**agreements [4]** 66/23 66/24 71/20 72/13
**agrees [1]** 22/11
**Ahmed [1]** 93/23
**ALEXANDER [2]** 2/5 4/6 27/21
**Alki [1]** 94/10
**all [26]** 9/8 11/16 12/16 15/14 16/14 16/16
20/13 23/25 28/17 31/24 33/8 35/9 36/1 36/11
38/2 41/5 45/4 53/6 57/17 60/7 61/24 65/4
81/12 81/20 83/1 92/8
**alleged [2]** 5/2 81/21 81/11 81/18
**allow [5]** 29/23 30/15 30/19 31/8 33/7
**allowed [1]** 16/24
**almost [1]** 12/13
**alone [2]** 25/15 60/12
**along [2]** 18/16 27/25
**already [4]** 45/19 80/12 95/9 95/12
**also [12]** 4/20 8/1 12/1 18/12 19/22 20/24
50/9 72/18 77/23 84/11 84/11 89/19
**Although [1]** 23/20
**always [4]** 6/11 6/14 16/4 92/8
**am [9]** 20/4 24/5 47/25 61/13 76/23 85/15
87/15 89/5 94/1
**amended [1]** 50/19
**amendment [1]** 52/1
**AMERICA [4]** 1/9 4/4 27/19 64/16
**amount [1]** 51/23
**Ana [1]** 1/16 1/20 2/11 4/1
**analyzed [1]** 33/3
**Angeles [1]** 2/8
**another [5]** 12/5 34/3 44/2 73/4 75/5
**answer [5]** 14/22 18/5 35/21 80/8 82/17
**answered [3]** 41/8 45/18 45/23
**answers [1]** 55/21
**any [59]** 7/22 8/5 8/14 9/1 9/20 11/17 14/22
15/15 15/24 17/16 17/18 17/22 18/25 20/5
20/12 20/25 20/25 21/6 21/10 26/24 29/25
35/4 36/8 36/9 38/25 39/3 39/10 47/1 48/13
50/20 52/1 52/10 52/20 54/1 54/5 59/3 59/5
61/7 61/11 62/16 68/7 68/18 69/10 74/2
78/21 78/24 82/7 86/2 86/18 87/23 92/18
92/19 93/13 93/22 94/2 95/2 96/1 96/2
**anybody [4]** 14/14 28/14 36/12 83/19
**anymore [1]** 7/6
**anyone [7]** 39/21 47/2 54/3 54/4 54/8 59/3
95/25
**anything [16]** 12/11 13/6 14/13 16/3 16/10
18/23 30/11 31/3 36/6 61/13 61/17 63/12
81/11 81/18 91/11 94/20
**apologize [1]** 37/12
**appear [2]** 46/8 46/9
**APPEARANCES [1]** 2/1
**appears [1]** 11/20 42/5
**apply [2]** 22/9 22/17
**appreciate [3]** 8/7 61/25 76/18
**approach [7]** 40/3 48/1 54/12 58/10 63/19
66/9 74/15
**appropriate [2]** 9/6 23/4
**approximately [2]** 29/14 84/18
**approximating [1]** 49/18
**Arden [10]** 32/21 33/2 33/5 33/13 33/22 83/20
83/21 92/13 92/16 93/23
**are [65]** 5/19 6/17 6/22 7/6 7/9 7/22 9/4 12/6
13/5 13/10 13/15 13/20 13/22 14/11 14/17
16/8 16/14 16/23 16/24 16/24 17/21 19/4 21/15
21/16 22/4 22/6 25/1 25/6 27/6 28/5 28/5
28/23 33/18 33/19 33/25 34/22 35/10 36/14
37/18 38/4 38/5 39/8 39/14 41/19 43/17 44/16
47/10 47/23 48/11 50/2 59/22 60/16 72/20
77/14 82/7 85/13 87/13 91/13
**area [2]** 20/13 23/20
**areas [4]** 10/9 20/7 24/13 25/2
**argument [2]** 19/9 22/25
**Argumentative [3]** 41/7 43/24 88/1

**Armstrong [21]** 65/16 65/23 66/3 66/17 67/1
68/23 69/17 69/23 69/23 70/2 70/24 71/7
72/25 73/9 73/17 77/22 78/10 85/6 85/16
85/25 86/3
**around [9]** 9/13 9/18 80/2 80/5 80/24 81/2
81/2 81/11 81/18
**arranged [1]** 63/6
**arrangements [1]** 22/14
**arrest [1]** 24/23
**arrested [1]** 25/12
**as [65]** 4/10 4/11 4/14 5/5 5/5 5/10 5/13 5/18
7/1 7/10 7/10 8/11 11/12 13/11 15/3 15/25
16/16 17/10 18/7 18/9 19/8 19/10 22/12 23/5
24/2 25/13 26/1 26/1 29/25 29/25 30/22 35/21
36/18 38/19 38/23 42/20 44/9 47/10 48/11
48/22 49/10 49/22 53/3 55/6 55/10 55/20
56/21 57/11 58/18 59/17 60/11 61/4 61/11
63/16 64/4 65/12 68/9 76/24 78/21 80/24
86/23 87/9 89/25 93/16 93/17
**ASAP [1]** 71/20
**aside [1]** 23/11
**ask [19]** 15/20 20/24 21/4 24/16 28/21 29/5
30/10 30/23 34/3 35/16 36/12 37/18 65/23
67/13 75/5 81/20 81/25 83/7 86/5
**asked [34]** 8/1 24/15 28/21 33/7 39/18 39/18
41/7 42/7 42/9 45/2 45/18 45/23 48/5 53/9
54/20 57/2 64/7 64/10 65/1 67/24 68/5 74/12
75/8 75/15 77/7 77/25 78/4 79/22 83/21 86/7
88/14 89/2 93/4 94/12
**asking [8]** 24/14 25/5 32/25 35/22 62/12
85/13 85/15 90/22
**assistance [1]** 65/13
**Assistant [6]** 2/4 2/6 2/10 36/8 44/17 44/21
**associated [1]** 52/20
**assume [4]** 33/15 34/23 82/9 82/12 82/15
82/16 82/17
**assumed [1]** 33/11
**Assumes [1]** 68/25
**Atlanta [2]** 86/19 87/7
**attached [4]** 46/16 89/24 91/9 91/21
**attaching [1]** 45/7
**attachment [1]** 91/6
**attempted [2]** 61/14 62/18
**attention [2]** 32/4 40/9
**attested [2]** 45/13 45/15
**attorney [12]** 2/3 2/4 2/6 2/10 29/11 51/2
58/18 93/13 93/15 93/16 93/22 94/3
**attorneys [8]** 36/9 44/18 44/21 78/18 92/20
93/1 93/6 93/24
**attorneys' [2]** 51/20 51/22
**August [4]** 1/17 4/1 59/15 97/13
**August 10th [1]** 59/15
**AUSA [1]** 47/1
**authority [2]** 60/20 60/21
**authorization [1]** 8/20
**authorize [2]** 81/23 82/4
**authorized [1]** 84/9
**AVENATTI [26]** 1/11 2/14 4/4 4/10 4/16 5/5
5/7 24/19 26/17 27/19 27/25 28/8 30/12 31/4
31/4 32/21 33/9 33/9 36/4 36/19 60/2 62/6
92/24 93/3 93/16 93/24
**Avenida [1]** 2/16
**avoid [2]** 11/7 25/1
**avoiding [1]** 24/25
**aware [9]** 5/3 14/15 17/16 39/10 61/11 82/7
84/6 87/13 94/1
**away [1]** 58/6

**B**

**back [9]** 7/13 18/17 20/22 23/5 35/4 39/3
39/22 39/23 40/12 40/13 40/21 40/22 42/2
49/24 50/14 56/14 71/5 71/23 76/25 88/3
**backed [1]** 35/6
**background [1]** 42/8
**Bakery [1]** 94/10
**bank [5]** 74/12 75/9 81/20 81/24 81/25
**banking [2]** 79/20 82/8
**BARELA [30]** 3/5 14/2 24/21 26/15 28/4 28/12
33/12 36/16 37/4 39/3 39/21 40/18 42/24 45/6

48/4 48/21 52/10 57/16 58/16 62/8 82/12
92/16
**Barela's [2]** 27/8 60/24
**Baristas [1]** 17/12
**based [6]** 13/5 46/9 86/12 93/21 94/2 94/6
**basically [4]** 11/14 15/17 18/1 18/8
**basis [3]** 19/13 61/2 61/9
**be [66]** 5/7 8/3 9/3 9/7 10/22 11/20 11/23 12/5
12/5 12/10 14/16 15/6 16/8 18/7 20/10 21/5
21/25 22/25 23/7 23/9 23/24 24/10 25/10
25/17 26/25 27/14 33/16 34/23 36/21 38/3
42/5 42/21 43/22 46/18 48/18 51/11 51/23
53/22 55/10 57/14 59/6 59/16 59/22 60/6
60/15 60/21 61/4 61/23 64/5 67/1 68/18 69/13
69/23 70/2 70/21 72/12 73/19 73/21 74/7
75/15 78/24 81/14 86/25 93/15 96/3 96/5
**Beach [3]** 42/16 43/5 43/13
**because [30]** 7/6 9/20 9/24 10/4 12/2 12/12
12/19 12/19 13/11 14/15 15/7 15/9 15/22
15/23 16/8 21/14 24/10 25/7 26/19 36/20 38/2
59/10 60/9 68/18 73/22 82/12 87/6 90/3 90/24
92/18
**become [1]** 55/24
**becomes [1]** 13/24
**been [43]** 6/19 7/16 8/4 10/10 11/25 13/6 13/8
14/13 14/15 14/18 14/20 14/21 15/21 17/1
17/19 18/9 17 20/17 20/22 21/7 21/8 21/9
23/20 24/1 24/2 26/2 26/13 26/19 26/22
26/25 27/10 28/17 28/17 41/24 48/21 53/14
55/7 55/8 57/3 59/14 69/9 70/6
**before [28]** 5/16 8/2 8/6 8/10 23/18 23/23
30/7 33/13 33/21 34/15 35/4 35/10 37/25 38/4
38/19 38/24 38/24 44/23 48/4 50/10 61/8 62/4
73/16 73/17 80/23 84/25 90/1 94/12
**behalf [5]** 4/6 27/21 54/10 86/14 86/18
**behind [3]** 41/3 41/5 80/22
**being [11]** 6/6 24/21 25/12 25/15 30/18 37/12
39/10 40/20 55/22 60/14 79/22
**believe [18]** 9/10 25/7 31/23 46/16 51/25 57/6
57/10 59/15 64/1 74/14 74/23 75/2 78/11
80/13 83/10 86/16 91/19 91/22
**believed [1]** 21/12
**benefit [4]** 31/12 31/22 38/13 61/15
**best [1]** 31/21
**better [2]** 7/16 8/5
**between [8]** 23/6 30/24 34/14 36/18 38/22
77/11 84/3 86/21
**big [1]** 37/2
**bills [1]** 53/3
**blank [1]** 47/6
**Bledsoe [1]** 78/17
**bless [1]** 76/23
**blow [3]** 31/11 37/1 41/12
**board [2]** 78/4 79/2
**border [1]** 64/13
**borrow [1]** 44/4
**both [2]** 15/6 88/14
**bottom [4]** 10/23 40/9 69/6 78/12
**bought [2]** 10/1 17/5
**box [4]** 31/11 32/5 32/18 37/2
**Brady [2]** 12/1 12/5 13/18 13/24
**BRANDON [1]** 2/4
**breadth [1]** 31/2
**break [6]** 35/2 58/24 59/1 95/21 95/22 95/23
**BRETT [3]** 2/9 4/5 27/20
**bridge [1]** 84/15
**brief [3]** 4/13 4/16 12/11
**briefed [1]** 12/12
**briefly [4]** 5/8 39/18 58/13 86/7
**bring [2]** 25/14 93/5
**broad [2]** 8/19 8/22
**broader [2]** 30/25 31/1
**Brock [20]** 30/11 31/4 33/10 34/15 36/18
47/11 52/11 52/14 52/25 77/2 82/8 86/15
86/16 86/22 87/17 92/20 93/1 93/18 93/22
94/17
**broke [4]** 28/12 34/24 35/9 36/3
**brother [2]** 62/25 76/25

**B**

brought [1] 80/20
Building [1] 2/10
bunch [1] 36/3
business [9] 62/14 62/19 63/17 68/10 69/10 74/13 75/9 79/8 94/4

**C**

CA [4] 1/20 2/8 2/11 2/16
calculation [9] 47/10 47/24 48/6 50/2 50/4 51/2 51/19 52/4 62/8
calculations [1] 95/16
calculator [5] 47/15 47/16 51/9 51/13 51/14
CALIFORNIA [4] 1/5 1/16 4/1 87/8
call [15] 15/8 16/15 24/17 24/18 24/20 24/20 25/6 61/1 87/20 87/21 87/24
called [16] 6/17 7/7 7/14 15/1 15/2 15/3 15/4 15/19 19/10 22/1 86/7
Calls [8] 43/23 55/17 56/3 69/1 71/2 82/18 85/11 87/25
came [3] 44/23 53/3 60/24
camera [6] 5/22 6/11 23/15 23/18 24/3 26/23
camera.' [1] 23/24
can [37] 4/16 4/17 11/24 12/4 12/5 12/10 13/11 14/22 18/5 18/6 18/18 21/18 24/9 24/12 25/14 31/11 32/23 40/3 42/1 47/15 48/1 48/21 54/12 56/13 63/19 66/9 67/5 67/20 67/22 69/5 73/4 74/15 88/3 89/6 90/13 93/10 93/11
can't [5] 12/19 15/10 29/11 51/9 51/14
card [1] 64/13
Carlos [20] 4/7 8/13 8/25 9/4 9/8 10/17 17/11 17/14 21/14 21/11 22/21 23/1 23/4 27/22 29/12 36/8 40/19 43/8 64/12 64/15
carry [1] 23/14
Carso [1] 75/9
case [51] 5/15 6/16 6/19 6/19 6/20 7/6 7/8 7/15 7/17 7/18 7/24 8/15 8/16 10/17 13/4 13/7 14/12 15/2 17/9 17/20 19/19 20/11 22/1 22/7 22/9 22/21 23/2 23/20 28/16 28/17 30/11 53/11 55/8 58/1 59/3 59/4 59/22 61/8 68/2 73/23 80/12 82/13 82/21 87/4 87/6 87/11 87/14 87/21 93/6 95/25 96/1
cases [1] 22/5
cause [5] 5/21 78/24
Cefali [4] 4/11 28/1
cell [4] 15/5 15/25 20/18 29/6
cellphone [1] 64/12
cement [1] 86/11
CENTRAL [1] 1/5
certain [2] 30/19 51/6
certainly [1] 11/19 38/18
certainty [1] 18/6
CERTIFICATE [1] 97/4
CERTIFIED [2] 1/9 65/19
certify [1] 97/6
CFO [1] 65/17
challenge [3] 26/11 26/12 26/13
change [1] 87/23
chart [1] 61/13
check [2] 18/6 86/5
checking [2] 71/14 71/18
Chief [1] 2/5
chronological [1] 34/5
Circuit [2] 6/1 11/6
circumstances [1] 55/9
circumvent [1] 11/21
CIS [1] 31/25
cite [2] 22/7 22/10
cited [1] 23/25
claim [5] 47/10 49/8 50/18 55/25 87/21
claiming [2] 13/11 46/13
clarify [3] 25/4 27/4 35/21
classic [1] 7/19
clean [1] 81/24
cleaner [1] 42/21
clear [14] 5/17 7/25 9/7 19/25 20/10 23/21 36/14 36/22 50/4 51/11 53/22 67/22 70/12 74/7
Clemente [1] 2/16

client [1] 57/17
clients [1] 87/24
closest [1] 80/23
cloud [5] 35/14 35/23 36/4 39/4 39/5
co [1] 87/9
co-counsel [1] 87/9
Code [1] 97/7
coffee [1] 94/4 94/7
Colorado [2] 83/2 84/20
column [1] 32/8
come [9] 9/14 25/14 27/2 35/7 45/2 56/7 61/3
comes [2] 15/6 36/17
coming [2] 25/19 60/9
comments [1] 26/8
communicate [8] 15/22 28/13 54/4 54/5 55/14 65/10 65/23 66/1
communicated [2] 33/21 55/25
communicating [6] 22/20 22/22 23/1 54/1 56/8 84/11
communication [8] 5/21 6/21 7/1 15/16 22/2 23/12 23/14 85/6
communications [45] 5/15 5/19 6/20 6/21 7/5 7/9 7/13 7/17 7/18 9/5 9/12 15/6 15/9 15/20 15/25 16/9 16/13 19/5 20/2 20/12 20/15 20/17 20/25 21/6 21/15 22/6 22/18 22/19 23/5 24/1 25/23 28/23 33/1 33/12 36/1 36/18 39/5 47/1 63/6 64/23 65/7 77/10 84/3 84/6 95/6
communications are [1] 22/6
companies [1] 86/12
company [8] 27/1 64/13 69/24 73/5 73/8 73/10 74/2 78/5
compensate [1] 54/9
compensating [1] 56/9
compensation [1] 4/15
complained [1] 26/17
complaint [2] 56/8 95/12
completed [2] 42/17 43/4
complicated [1] 52/14
complies [5] 43/1 62/11 73/3 77/6 81/8
comply [1] 5/3
computers [1] 15/14
concerning [1] 14/24
concise [3] 50/4 51/12 53/22
conclude [1] 83/24
concluded [1] 26/6
conduct [3] 23/15 23/18 24/3
conducting [1] 15/17
confer [2] 18/2 23/3
conference [3] 79/23 80/21 97/11
conferring [1] 18/4
confident [1] 50/2
confirm [2] 18/18 20/22
conformance [1] 97/10
confrontation [1] 55/6
conjecture [1] 13/5
connection [26] 7/23 52/11 52/13 52/18 54/1 62/14 62/25 63/24 64/24 65/2 65/24 69/16 72/12 75/11 78/25 79/2 79/5 86/20 87/2 87/14
consent [1] 30/15
constitute [1] 23/23
consulting [1] 74/8
contact [4] 20/24 68/7 68/10 69/10
contacts [2] 32/9 32/19
contain [2] 12/1 38/24 38/25
contained [1] 18/8
contains [1] 38/21
contends [1] 23/17
content [1] 7/2
Contents [2] 32/5 32/8
context [1] 19/8
continue [1] 25/13
Continued [2] 3/6 28/10
contract [2] 93/5 94/6
contrary [2] 19/14 21/12
copied [3] 77/14 77/23 94/14
copies [1] 77/19
copy [22] 30/1 30/4 30/8 30/10 30/19 30/23 30/24 39/22 39/23 40/12 40/13 40/21 40/22 41/15 41/23 41/23 41/24 45/8 58/14 79/24

89/23 90/19
corporate [1] 73/6
corrected [3] 73/8 89/22
correct [71] 7/12 16/13 20/4 22/3 27/6 29/22 30/9 31/19 33/17 34/10 40/24 42/5 42/14 44/25 48/9 48/10 49/2 49/9 49/15 49/16 50/1 51/4 51/5 52/3 53/8 53/14 53/24 58/2 58/22 59/23 63/1 63/8 63/11 64/18 64/22 65/10 66/21 66/25 67/4 68/1 68/4 68/8 68/11 68/20 70/13 70/16 70/17 72/21 73/13 73/15 75/3 77/15 77/24 81/19 83/11 83/12 83/15 84/1 84/5 84/17 87/19 89/14 89/15 89/20 89/22 91/3 91/14 91/24 92/10 92/11 97/8
corrected [1] 91/15
correctly [4] 19/14 43/18 73/6 76/25
costs [6] 49/7 49/8 49/11 52/2 53/10 87/13
could [24] 12/14 29/19 30/1 30/4 32/4 36/25 37/10 37/12 37/13 38/12 41/10 41/12 48/24 57/25 58/18 60/17 61/1 67/9 67/14 73/19 73/21 76/4 93/5 94/7
couldn't [2] 9/18 33/23
counsel [14] 2/1 2/15 4/7 4/10 12/25 18/4 27/22 48/16 57/25 87/9 93/7 93/14 93/18 95/10
counted [1] 53/13
course [4] 9/15 9/24 65/25 94/11
court [21] 1/4 5/11 5/22 7/22 17/17 20/17 21/5 22/11 22/11 23/16 23/17 23/24 25/22 26/22 44/23 60/13 60/24 61/3 61/9 69/16 97/16
Court's [4] 4/14 26/4 60/20 60/21
Court-ordered [1] 25/22
Courthouse [1] 1/19 2/7
cover [1] 87/17
covered [2] 85/6 87/17
CPA [3] 65/17 65/18 65/20
created [1] 18/15
creation [1] 31/14
credibility [1] 22/24
credit [1] 64/13
crime [1] 22/8
criminal [6] 2/5 43/21 44/9 44/13 44/22 73/23
cross [3] 3/4 3/10 7/15 14/11 14/14 28/10 41/6
cross-examination [4] 7/15 14/11 14/14 28/10
Cummings [2] 4/11 28/1
customer [1] 70/3

**D**

damages [2] 52/15 52/17
date [13] 13/22 16/25 31/17 34/11 35/10 38/6 38/19 45/22 62/10 68/9 68/16 88/24 97/13
dates [2] 89/17 90/20
day [13] 1/12 20/11 29/17 32/2 45/15 60/6 61/22 67/2 83/1 83/4 83/25 84/2 88/17
days [9] 26/1 26/14 69/7 69/18 72/11 73/4 76/12 82/25 84/25
deal [1] 50/6
dealing [7] 18/19 30/11 63/16 63/24 64/12 92/20 92/25
DEAN [4] 2/15 2/15 4/10 27/25
December [34] 34/12 34/15 35/3 35/5 35/8 36/11 37/25 38/5 38/7 38/9 38/10 38/19 38/22 38/23 38/25 39/1 46/15 46/23 78/2 82/1 84/21 84/22 84/23 84/24 85/5 88/16 88/24 89/9 89/24 92/9 94/13 94/16 94/20 95/3
December 11th [1] 78/2
December 18 [1] 38/19
December 18th [7] 38/9 38/10 38/22 94/13 94/16 94/20 95/3
December 2017 [2] 35/5 82/1
December 22nd [1] 38/7
December 28 [3] 34/15 89/9 89/24
December 28th [7] 34/12 36/11 37/25 38/5 38/25 39/1 88/16
Decmber of [1] 35/8
decide [2] 59/25 95/21
decided [1] 63/10
decision [1] 63/12

**D**

**declaration [21]** 7/21 9/4 9/8 21/5 23/4 45/7 46/5 46/21 88/15 89/2 89/25 90/6 90/7 90/15 90/17 90/23 90/25 91/5 91/12 91/15 92/1
**deducted [2]** 51/23 93/15
**defendant [29]** 1/12 2/13 12/17 13/21 16/7 17/9 23/21 24/13 24/24 25/11 88/14 88/24 89/2 89/16 90/7 90/15 90/18 90/22 92/1 92/2 92/8 92/12 93/4 93/5 93/17 94/7 94/12 95/5 95/13
**defendant's [2]** 4/25 94/4
**defense [6]** 3/9 3/12 4/15 13/13 54/15 70/18
**defined [3]** 19/7 22/12 93/16
**defines [1]** 6/25
**definitely [1]** 18/13
**definition [2]** 22/12 50/22
**deleted [2]** 34/1 39/10
**denied [2]** 24/5 74/5
**Denver [1]** 82/22
**deny [1]** 23/11
**department [4]** 19/8 20/6 63/16 63/25
**depends [1]** 10/14
**deposit [2]** 49/18 49/20
**depositions [2]** 53/1 53/3
**deserve [1]** 47/12
**destroyed [2]** 10/12 10/18
**destroys [1]** 10/14
**details [1]** 81/12
**determination [2]** 11/10 15/20
**determine [3]** 11/24 18/15 26/9
**determines [1]** 12/2
**determining [2]** 23/19 26/21
**did [128]**
**didn't [21]** 6/1 6/10 9/25 13/3 15/20 15/22 17/18 20/19 24/14 24/16 35/4 35/7 51/19 58/6 68/9 68/16 75/3 81/11 83/21 83/23 85/17
**Diego [3]** 68/2 70/7 73/23
**different [8]** 12/15 13/3 19/25 46/3 46/6 46/13 46/14 46/22
**difficult [1]** 37/12
**difficulty [2]** 26/18 54/22
**Dillanos [1]** 94/7
**diploma [1]** 42/16 43/5 43/13
**direct [15]** 3/4 3/10 8/23 20/21 23/3 32/4 32/25 41/6 53/13 54/25 67/25 69/16 77/8 79/22 83/3
**Directing [1]** 40/9
**direction [1]** 26/4
**directly [4]** 7/2 19/14 21/12 81/1
**disagree [6]** 2/25 6/8 15/1 23/20
**discarded [2]** 9/21 17/5
**disclosed [1]** 60/21
**discovery [2]** 13/19 17/15
**discretion [4]** 93/6 93/7 93/14 94/3
**discuss [5]** 15/2 24/7 59/3 95/2 95/25
**discussed [4]** 66/19 70/2 72/25 73/9
**discussing [1]** 85/16
**discussion [2]** 40/2 68/22
**discussions [1]** 69/17
**displaying [1]** 45/1
**dispute [2]** 43/7 43/11
**district [5]** 1/4 1/5 23/17 23/23 59/14
**divided [1]** 37/6
**DIVISION [2]** 1/6 2/5
**do [191]**
**docket [3]** 5/1 5/4 5/6
**document [29]** 18/10 18/14 18/14 25/24 30/18 40/7 45/2 45/22 48/8 48/8 48/14 48/16 48/21 48/24 52/18 58/16 58/18 63/16 63/11 67/6 74/17 74/19 80/2 80/3 80/20 80/24 88/17 89/16 92/14
**documenting [2]** 13/15 13/21
**documents [9]** 15/4 15/14 16/17 19/20 55/8 57/21 60/3 61/18 78/24
**does [22]** 16/1 18/23 19/4 22/9 29/15 38/25 40/10 40/15 40/17 43/2 47/20 55/20 58/16 63/23 66/13 66/15 69/15 74/19 81/9 81/16 85/24 94/2
**doesn't [9]** 9/20 10/3 21/16 22/17 27/2 81/12

**dog [1]** 62/23
**dog walking [1]** 62/23
**doing [1]** 13/10 70/7 74/13
**don't [78]** 8/5 8/12 8/24 9/3 9/8 9/19 9/23 10/23 10/24 11/17 11/19 12/19 15/9 15/12 16/4 16/15 16/21 17/10 18/17 24/10 24/22 30/17 30/21 32/3 34/1 34/19 35/18 35/19 39/9 39/24 39/25 39/25 40/1 40/2 42/16 43/12 43/18 44/1 44/11 44/14 47/5 49/10 51/11 58/5 58/7 59/20 59/21 60/12 60/13 60/15 61/6 63/18 65/14 66/8 67/9 69/3 71/9 72/3 72/14 73/1 78/11 78/16 78/20 78/21 79/13 80/6 80/15 80/16 80/17 81/5 82/11 85/8 86/4 86/6 86/16 86/18 89/1 95/22
**done [8]** 47/23 52/4 59/22 60/10 67/2 72/12 79/5 93/21
**door [2]** 25/8 80/23
**double [1]** 18/6
**double-check [1]** 18/6
**doubt [1]** 18/2
**down [8]** 20/19 24/23 29/9 43/17 47/12 59/8 67/9 74/12
**download [1]** 30/1
**drilling [1]** 27/1
**dropbox [2]** 57/17 57/21
**dry [1]** 27/1
**due [3]** 47/10 79/5 79/7
**during [7]** 12/6 38/22 47/2 66/16 66/22 82/1 82/8

**E**

**e-mail [22]** 5/14 6/21 7/5 18/3 20/12 20/17 21/25 67/2 69/21 69/22 70/24 71/13 71/15 71/17 72/2 72/5 77/25 78/1 78/8 78/10 78/15 78/19
**e-mailing [1]** 8/4
**e-mails [17]** 7/9 7/23 16/22 18/7 18/8 18/18 18/19 20/8 20/25 21/15 22/17 26/2 26/2 26/3 77/11 77/14 86/2
**each [3]** 14/16 71/20 89/20
**Eagan [4]** 31/3 33/9 36/19 93/16
**early [2]** 65/9 82/1
**editorial [1]** 26/8
**education [2]** 42/12 43/4
**educational [1]** 42/8
**effort [3]** 11/7 11/21 65/2
**efforts [7]** 62/13 62/16 64/21 68/16 75/8 82/7 86/18
**either [7]** 8/12 13/16 14/13 17/2 21/1 33/5 85/2
**elicited [2]** 8/23 14/14
**elmo [1]** 41/12
**else [5]** 10/20 16/1 18/24 31/5 83/19
**employees [1]** 6/18
**employment [9]** 66/23 68/23 69/8 69/18 70/25 71/21 72/13 74/1 74/8
**end [5]** 10/5 11/9 17/6 60/6 61/22
**engaged [2]** 7/17 26/23
**ensure [1]** 19/21
**entered [1]** 87/17
**entire [1]** 51/23
**entirely [1]** 23/21
**entirety [1]** 53/19
**entitled [12]** 8/6 8/9 9/11 10/22 10/24 12/6 19/13 20/2 20/5 20/5 50/19 97/9
**enunciated [1]** 26/7
**equity [2]** 69/11 78/25
**error [3]** 25/2 46/16 90/24
**especially [2]** 5/12 7/20
**established [1]** 7/15
**estimate [1]** 9/18
**Evan [1]** 87/22
**even [16]** 12/2 12/20 12/21 16/15 17/9 22/5 22/13 31/5 33/23 39/23 40/13 40/22 48/14 60/12 60/15 65/9
**even know [1]** 16/15
**ever [38]** 8/1 14/18 30/18 35/16 35/19 35/22 36/9 36/12 39/3 39/21 40/2 42/15 44/7 44/12 48/5 51/22 53/9 53/25 54/3 54/4 54/8 62/16

**65/23 74/7 78/8 78/10 78/15 78/18 78/24 79/1 79/11 79/18 79/20 86/12 88/24 89/5 89/16 93/17**
**every [5]** 12/13 14/16 14/19 17/14 33/4
**everything [5]** 5/10 13/8 15/7 64/3 65/21
**evidence [7]** 4/20 45/3 45/19 48/12 48/19 69/1 88/20
**evidentiary [1]** 15/7
**exact [1]** 88/3
**exactly [4]** 9/19 10/7 47/14 70/6
**examination [6]** 7/15 14/11 14/14 28/10 53/13 88/10
**examiner [1]** 31/24
**example [3]** 12/21 16/25 60/23
**excepted [1]** 19/12
**executed [6]** 39/22 40/12 41/15 41/23 41/24 71/20 90/8 90/19
**executive [2]** 64/20 70/3
**exhibit [28]** 3/13 3/14 3/14 26/14 27/8 28/23 34/4 37/5 39/12 45/14 46/11 48/19 50/14 54/15 55/20 60/12 61/12 62/3 67/13 67/15 76/1 77/5 79/14 88/20 89/25 91/21 92/12 93/11
**Exhibit 1058 [2]** 54/15 55/20
**Exhibit 1061 [1]** 92/12
**Exhibit 1072 [1]** 79/14
**Exhibit 171 [3]** 39/12 50/14 93/11
**Exhibit 176 [5]** 28/23 34/4 67/13 67/15 76/1
**Exhibit 176 that [1]** 37/5
**Exhibit 184 [1]** 88/20
**Exhibit 2 [2]** 46/11 89/25
**Exhibit 250 [1]** 77/5
**Exhibit 4 [2]** 26/14 27/8
**exhibits [4]** 3/7 3/12 61/11 77/7
**existed [1]** 7/25
**expect [2]** 4/16 82/13
**expense [1]** 54/9
**expenses [2]** 87/13 94/3
**expert [2]** 24/8 52/18
**experts [1]** 52/10
**explanation [1]** 38/23
**extensive [1]** 6/19
**extent [1]** 24/5
**extract [1]** 29/7
**extracting [1]** 15/24
**extraction [1]** 15/25
**extractions [3]** 15/5 16/19 20/18

**F**

**F.3d [1]** 6/7
**face [1]** 67/9
**fact [22]** 5/21 19/14 19/22 20/10 23/12 23/14 26/19 37/24 38/4 40/11 40/16 40/18 42/15 43/3 57/16 62/18 69/15 70/1 70/23 74/20 77/14 85/24
**facts [1]** 68/25
**failed [2]** 54/8 55/14
**failing [1]** 54/5
**failure [1]** 5/2
**fair [2]** 33/5 33/6
**faith [1]** 61/9
**far [2]** 29/25 41/6
**farther [1]** 26/23
**fashion [1]** 55/11
**February [6]** 29/13 29/15 31/19 33/13 33/21 35/25
**February 13th [2]** 29/15 31/19
**February 2019 [3]** 33/13 33/21 35/25
**federal [7]** 2/10 43/20 44/17 44/20 83/13 84/3 84/4 84/13 86/19
**fee [5]** 51/3 93/5 94/6
**fees [5]** 51/20 51/22 93/14 93/15 94/7
**few [3]** 26/14 27/10 76/12
**fifth [1]** 42/9
**fight [2]** 52/25 76/25
**figured [1]** 53/10
**file [1]** 4/17
**filed [4]** 4/13 5/5 7/21 17/9 46/13 60/9 86/21 91/15 95/12

**F**

files [4] 57/3 57/6 57/17 57/18
filing [1] 60/5
filings [1] 14/9
filtered [1] 19/20
finalizing [2] 92/19 92/22
finances [1] 8/20
financing [1] 62/13
find [1] 23/12
finding [1] 26/18
fine [6] 4/19 4/21 20/21 55/11 58/25 71/25
firm [5] 8/20 50/19 52/17 53/6 54/9
first [8] 19/4 19/15 34/8 40/10 41/11 42/7
 51/23 73/6
fish [1] 10/12
five [10] 45/2 45/11 46/2 46/5 46/7 46/12
 46/20 47/3 89/8 90/16
five-month [1] 47/3
flip [1] 69/5
focused [1] 22/18
folks [2] 36/9 61/10
followed [1] 72/11
following [3] 5/12 28/17 82/17
foregoing [1] 97/7
forensic [1] 24/8
forensically [1] 30/1
form [2] 59/3 96/1
format [1] 97/10
forth [3] 15/15 23/5 24/23
Forty [1] 51/16
Forty percent [1] 51/16
forward [2] 12/18 76/11 88/6
forwarded [1] 77/18
foundation [1] 18/1
foundational [2] 15/3 45/17
founded [1] 13/6
Founder [1] 62/23
four [1] 53/13
fourth [2] 2/11 42/9
FOX [1] 2/4
frame [1] 9/13
frankly [1] 22/24
fraud [1] 4/15
Frauds [1] 2/6
FRIDAY [5] 4/1 82/23 83/1 83/1 85/3
front [3] 74/14 80/22 89/1
full [1] 90/4
fully [3] 39/22 40/12 41/15 41/23 41/24 90/8
 90/19
fully-executed [1] 90/8 90/19
funding [1] 75/11
further [6] 5/22 23/8 23/9 24/4 61/17 64/20
 68/7 68/10
FYI [1] 67/21

**G**

gap [1] 84/16
garage [1] 9/14
gave [1] 87/24
general [1] 29/5
generally [4] 16/19 28/24 65/7 72/5
generic [1] 60/15
gentlemen [5] 5/14 28/3 29/11 59/2 95/23
Georgia [3] 86/19 87/7 87/8
get [22] 18/10 19/19 24/23 39/22 39/23 40/12
 40/13 40/21 40/22 41/23 47/15 48/4 49/17
 51/14 59/19 60/17 64/8 64/10 71/20 74/12
 75/8 82/4
gets [2] 14/3 14/5
getting [7] 15/14 15/15 25/3 60/18 72/6 89/5
 94/13
Giglio [2] 12/5 13/18
give [6] 60/23 69/11 73/5 76/23
given [3] 13/24 14/20 41/24
giving [3] 14/20 68/22 69/18
Global [1] 17/12
go [14] 18/17 20/22 25/11 32/18 34/4 36/15
 38/5 39/3 39/12 39/15 50/14 71/11 80/2 95/20
God [1] 76/23

**goes** [1] 56/10
going [25] 5/19 11/13 16/5 29/12 29/18
 20/24 21/25 25/2 25/10 25/10 25/15 28/17
 29/18 41/13 49/24 59/22 60/25 61/16 66/23
 69/11 75/15 87/20 89/6 95/20
gone [3] 17/6 18/12 26/23
good [15] 4/5 4/8 4/9 4/12 24/22 27/20 27/23
 27/24 28/2 28/3 58/23 61/9 76/11 88/12 88/13
good-faith [1] 61/9
Google [1] 28/19
got [6] 17/11 17/14 19/20 19/21 30/7 88/17
gotta [1] 51/11
gotten [1] 12/17
government [64] 4/13 5/18 6/17 6/18 7/14
 7/21 7/21 8/12 8/23 8/24 10/6 10/8 11/5 11/8
 12/2 12/19 13/12 13/13 14/13 14/14 14/15 16/17
 19/7 20/21 23/3 24/25 25/3 25/21 26/4 29/6
 29/19 29/25 35/16 35/22 35/25 40/18 40/25
 41/22 42/15 43/13 43/9 43/11 44/7 44/12 47/2
 48/5 48/16 52/24 53/10 61/8 79/11 79/17
 79/19 81/3 81/10 81/17 81/20 81/23 81/25
 82/4 82/7 86/5 91/25 92/2
government's [5] 5/3 5/4 23/10 24/8 28/4
grab [1] 80/3
grade [1] 42/12
great [2] 41/12 67/11
Greg [3] 14/2 71/19 76/15
GREGORY [2] 3/5 28/4
Grupo [1] 75/9
guess [1] 51/11
guesstimate [2] 49/22 49/24
guided [2] 23/8 23/9
guys [2] 36/2 53/10

**H**

had [70] 5/14 6/18 6/20 7/8 7/13 7/16 7/17
 9/12 12/22 12/23 16/9 16/14 17/4 18/25 19/10
 20/12 20/14 20/14 20/17 21/6 26/17 26/19
 31/22 33/12 33/21 35/9 38/18 39/6 41/24
 42/15 42/17 43/22 44/4 44/12 44/21 45/14
 46/7 46/15 46/23 47/1 52/17 53/21 54/8 54/10
 55/14 55/25 57/3 62/24 63/12 64/1 68/22 69/9
 69/17 70/6 70/24 71/18 71/19 73/17 73/18
 77/2 80/15 85/6 86/21 89/16 91/13 92/19
 94/19 95/6 95/9 95/12
hand [2] 47/4 81/15
handed [8] 30/3 40/7 58/12 63/21 66/11 74/17
 80/24 80/25
handful [1] 38/4
handled [2] 65/21 79/20
handwriting [1] 48/9
handwritten [6] 11/4 11/7 11/9 11/13 11/17
 11/22
HANNA [1] 2/3
happened [9] 10/24 10/25 12/6 21/11 21/13
 31/22 36/11 80/20 94/21
happening [1] 35/19
happens [2] 13/20 14/6
happy [3] 5/7 61/13 61/15
has [28] 5/11 5/11 17/21 9/20 10/6 12/24 13/2
 13/23 13/25 14/13 14/14 14/15 14/21 17/17
 17/22 19/7 23/20 24/1 24/2 25/7 25/20 26/13
 26/22 26/23 26/23 48/4 60/19 80/12
hasn't [2] 12/17 14/18
have [115]
haven't [4] 33/3 39/9 48/14 60/10
having [2] 26/24 40/2
he [74] 8/25 10/17 10/17 12/17 12/19 12/22
 13/11 13/11 13/23 13/25 14/2 14/3 14/5 14/8
 14/10 14/15 14/16 15/13 15/15 15/20 15/24
 25/5 25/7 26/17 42/9 45/2 54/20 55/3 60/9
 60/19 60/21 60/23 60/25 61/1 61/2 61/4 63/7
 63/10 64/16 69/17 74/23 74/24 74/25 75/2
 75/3 75/3 83/7 84/11 84/12 84/15 85/15 85/16
 85/19 90/19 93/11 93/18 94/7 95/6 95/6
he's [25] 12/20 12/21 13/7 14/20 20/19 45/1
 65/21 77/23 85/11

**head** [2] 24/22 51/10
header [1] 97/1
hear [1] 5/7
heard [1] 33/8
hearing [6] 5/22 23/15 23/18 67/25 68/5 69/8
hearsay [7] 54/16 55/10 55/17 56/3 70/20
 71/2 85/11 85/12 90/11
held [1] 97/9
help [1] 72/19
her [6] 8/18 8/20 9/5 9/21 10/9 17/4 17/5
 17/7 17/18 17/20 22/22 23/2 60/24 61/1 79/12
here [22] 10/3 11/4 14/8 16/23 16/24 16/25
 17/21 18/9 18/9 20/23 22/9 25/18 28/13 31/24
 32/5 35/21 36/10 59/1 67/19 78/21 87/20
 95/24
here and [1] 14/8
here's [2] 16/24 80/19
hereby [1] 97/6
Hernandez [7] 28/1 36/25 37/4 37/11 41/10
 67/14 76/4
hey [3] 36/2 36/10 53/10
high [7] 42/16 42/16 42/17 43/4 43/5 43/13
 43/14
highest [1] 43/4
highly [2] 18/2 43/18
him [16] 12/23 13/16 13/24 14/21 15/19 22/23
 23/6 25/5 25/12 32/2 42/12 64/20 66/1 69/11
 85/13 88/16
hire [1] 93/7
hired [2] 52/10 93/18
his [20] 12/17 13/13 14/8 14/9 15/18
 15/20 15/21 32/3 60/3 61/1 62/25 69/11 74/22
 75/3 85/12 85/17 90/8 93/6 93/7
hold [5] 22/5 24/22 41/19 47/23 66/3
holding [2] 6/11 86/11
holes [1] 27/1
home [1] 82/23
hones [1] 14/9
Honor [106]
HONORABLE [1] 1/8
hope [1] 72/18
host [4] 8/19 13/18 55/7 66/4
hours [1] 11/9
how [13] 13/22 15/4 29/5 30/13 34/18 50/2
 50/13 78/17 79/2 80/14 87/11 90/7 94/10
However [1] 6/16
hundred [3] 68/14 68/15 89/12
hung [1] 87/22

**I**

I'll [9] 15/12 25/13 41/11 42/21 50/16 60/23
 75/5 89/13 95/21
I'm [29] 5/3 5/9 6/5 9/14 20/5 20/23 22/18
 33/5 33/23 37/11 37/11 38/23 42/22 45/4
 49/18 60/2 60/20 61/1 61/6 61/11 61/15 61/16
 61/22 71/13 85/17 87/20 89/5 89/6 95/20
I've [2] 18/12 25/21
I-N-D-E-X [1] 3/2
Ibrahim [3] 92/13 92/16 93/23
idea [1] 6/14 20/10 20/10
identification [2] 24/1 70/11
identified [1] 26/1
image [2] 29/19 33/7
immediately [1] 57/24
impeachment [8] 42/20 54/15 54/19 54/25
 54/25 56/22 57/12 60/17
importance [1] 40/20
important [1] 36/20
Improper [1] 90/10
included [5] 32/9 32/12 33/1 33/18 70/25
including [5] 6/20 40/19 43/8 66/19 71/21
 72/12 87/22
incorrect [1] 57/19
incredibly [1] 8/19
incurred [2] 54/10 87/13
indeed [1] 69/7
indicated [2] 5/11 71/19
individual [1] 8/21
individuals [5] 7/23 20/7 60/19 64/17 83/16

**I**
industry [1] 64/12
information [13] 7/25 11/11 11/15 11/23 12/1 12/3 13/10 13/23 14/5 14/10 14/12 23/8 30/19
informed [3] 55/14 55/22 55/24
initial [1] 89/10
input [1] 75/20
inquiry [3] 6/11 23/10 24/4
insert [1] 24/24
inserting [1] 25/1
instance [1] 38/6
instead [1] 11/12
instruction [1] 10/23
instructions [1] 4/21
insufficient [1] 5/21
interest [2] 78/5 78/25
interested [1] 74/13
interface [1] 64/19
interim [1] 47/2
intervene [2] 86/19 86/21
interview [8] 11/14 16/5 18/11 26/15 42/25 61/19 85/10 85/22
interviews [3] 12/4 12/6 13/20
invest [2] 63/7 63/10
investigating [1] 43/21
inviting [1] 25/2
invoke [1] 23/13
involve [1] 87/7
involved [7] 6/19 64/8 64/11 73/19 73/22 74/12 75/8
involving [2] 52/11 52/14
Ireland [1] 86/13
Irrelevant [1] 82/18
is [182]
ish [1] 61/23
isn't [16] 9/6 14/15 22/3 40/22 41/25 43/2 46/15 46/23 55/13 57/16 57/20 60/11 70/4 70/8 73/17 73/23
issue [9] 4/19 10/19 10/21 11/3 24/7 25/14 36/17 55/6 60/8
issued [1] 75/16
issues [7] 21/14 59/4 66/4 66/19 72/25 92/18 96/1
it [178]
it's [33] 6/14 6/25 7/24 8/16 9/15 10/12 11/19 12/2 14/4 14/12 18/14 21/8 21/12 21/19 22/2 22/9 27/10 38/6 41/18 43/10 45/18 54/16 54/18 54/19 54/24 54/25 55/2 55/4 59/11 70/9 93/10 93/12
item [1] 4/3 27/18 67/24
its [3] 92/20 93/1 93/14

**J**
jail [1] 24/19
JAMES [1] 1/8
Janess [1] 87/23
January [9] 55/13 55/24 56/7 57/18 57/20 58/21 95/7 95/9 95/12
January 15th [1] 55/13
January of [4] 56/7 57/18 57/20 58/21
Jencks [28] 5/3 6/25 7/6 7/7 9/9 9/24 10/11 10/22 11/21 11/25 13/18 19/4 19/14 21/17 21/22 22/2 22/13 23/17 23/23 25/25 26/7 26/12 26/13 26/15 26/18 26/24
Joe [2] 15/12 15/13
Joel [2] 25/22
JOHN [8] 1/11 2/14 4/4 27/19 32/21 33/22 83/20 93/23
Johnson [1] 6/11
Johnson's [1] 27/4
Josh [2] 62/19 62/22
judge [7] 1/8 68/6 68/19 70/7 83/13 84/4 84/13
judge's [1] 73/22
Judicial [1] 97/11
Judy [1] 17/16
July [1] 62/18
July of [1] 62/18
jury [15] 4/2 10/23 25/18 27/17 31/12 37/13

**J**
just [31] 5/11 6/4 6/25 18/18 20/10 21/14 22/17 22/25 27/3 27/3 30/3 36/2 37/2 37/13 37/24 41/11 46/9 48/8 55/1 67/9 70/11 71/14 75/5 77/18 77/22 80/8 80/8 81/12 82/15 90/16 92/1
Justice [2] 19/8 20/6
JVS [3] 1/11 4/3 27/18

38/13 41/6 44/23 47/9 59/7 62/5 68/9 87/24 96/5

**K**
Keep [2] 41/13 76/11
keeping [1] 60/13
keeps [1] 14/10
kettle [1] 10/12
kind [1] 60/17
knew [3] 68/18 70/6 84/11
know [36] 5/10 10/23 10/24 10/24 12/6 13/17 15/12 16/15 16/21 17/10 20/13 24/10 33/16 33/25 34/2 34/22 36/2 38/21 39/9 39/9 41/11 42/20 49/10 52/10 60/13 60/18 61/14 63/12 67/8 78/13 80/11 80/14 81/5 82/10 82/14 89/1
knowledge [1] 92/17
knows [4] 12/3 14/6 14/16 17/9

**L**
ladies [3] 28/3 59/1 95/23
largest [1] 64/16 86/11
Larson [1] 78/17
last [15] 12/13 13/9 16/14 20/16 21/3 34/4 34/8 34/9 36/10 38/13 53/9 85/21 87/20 89/22 93/13
lasted [1] 87/11
lasting [1] 82/25
lastly [1] 11/2
late [6] 46/23 58/21 65/9 65/12 82/1 85/5
later [11] 24/11 46/2 59/18 69/18 72/11 73/4 76/15 77/18 90/9 90/18 90/18
law [8] 2/15 11/5 19/13 23/20 50/19 53/6 79/12 79/20
lawsuit [1] 86/19
lawyer [1] 30/14
lawyers [1] 87/7
lead [1] 10/17
Leading [3] 91/1 91/17 92/4
least [7] 13/12 13/21 17/5 59/9 59/16 61/2 61/4
leave [2] 25/9 25/15 60/25
legal [10] 44/13 44/22 54/1 54/5 57/21 63/16 63/25 65/24 86/18 93/14
Less [1] 92/9
let [10] 7/13 24/23 28/21 33/4 35/21 37/4 60/12 78/12 81/24 95/21
let's [13] 4/25 9/3 25/9 36/15 39/12 39/15 44/2 50/14 59/12 59/19 71/23 72/15 76/3
letter [1] 92/13
level [2] 43/4 64/20
licensed [1] 87/8
light [1] 9/11
like [10] 21/8 32/23 33/3 36/6 47/9 48/6 74/25 82/13 84/24 87/23
likewise [1] 10/21
limited [3] 18/20 86/15 86/16
line [22] 10/23 34/5 34/11 37/1 38/5 38/9 38/9 38/10 38/10 38/11 38/14 49/13 67/13 67/16 67/24 71/11 71/13 72/8 73/2 75/25 76/20 89/22
line 118 [1] 72/8
line 131 [2] 71/11 71/13
line 14 [2] 75/25 76/20
line 165 [1] 67/13
line 54 [1] 38/5
line 55 [1] 38/9
line 56 [1] 38/9
Line 57 [1] 38/10
line 58 [1] 38/10
line 59 [2] 37/1 38/11
line 631 [1] 34/5
lines [2] 18/16 95/20
link [2] 57/17 57/21

**L**
list [8] 60/12 60/13 60/15 60/17 60/18 61/4 73/18 88/9
listed [2] 32/19 37/22
listen [1] 25/13
listing [1] 34/5
litigating [1] 52/21
litigation [3] 52/25 86/14 87/3
LLP [1] 93/16
locations [1] 22/14
locked [2] 51/13 51/13
lodge [1] 83/7
logistical [1] 22/14
long [9] 7/10 13/22 27/10 42/16 43/5 43/13 52/25 87/11 88/21
longer [1] 9/20 58/18
Longton's [1] 23/18
look [31] 14/9 18/17 20/9 29/1 31/10 32/24 36/24 37/9 38/2 38/3 42/24 44/15 49/18 61/17 69/5 72/8 72/15 73/2 75/25 76/3 76/4 77/5 77/25 79/16 81/6 82/7 85/9 85/14 88/6 89/5
look at [1] 29/1
looked [3] 18/12 18/15 39/9
looking [4] 10/5 16/17 16/18 18/10
Los [1] 2/8
Losch [1] 22/10
lost [2] 35/9 36/3
lot [3] 34/20 35/7 87/3
love [2] 47/16 76/24
luck [1] 76/11
ludicrous [1] 20/13
lunch [1] 95/23

**M**
made [16] 20/23 21/8 21/8 22/25 25/21 26/1 26/12 26/14 26/22 29/21 30/6 30/7 30/22 36/1 44/17 46/12
magistrate [4] 83/13 84/4 84/4 84/13
mail [22] 5/14 6/21 7/5 18/3 20/12 20/17 21/25 67/2 69/21 69/22 70/24 71/13 71/15 71/17 72/2 72/5 77/25 78/1 78/8 78/10 78/15 78/19
mailing [1] 8/4
mails [7] 7/9 7/23 16/22 18/7 18/8 18/18 18/19 20/8 20/25 21/15 22/17 26/2 26/2 26/3 77/11 77/14 86/2
mainly [1] 65/10
maintain [1] 49/1
Major [1] 2/6
make [12] 5/12 11/10 13/15 23/22 30/13 36/14 40/16 62/16 67/22 68/17 70/23 89/10
makes [1] 12/4
making [1] 25/4
managed [1] 79/12
mankind [1] 76/24
manner [1] 15/18
manufacturers [1] 86/12
many [5] 33/23 33/23 33/25 34/18 37/18
March [18] 18/16 40/19 41/1 41/22 42/25 43/8 44/8 52/24 81/3 81/10 85/9 85/22 89/11 89/12 89/17 89/20 90/20 91/25
March 10 [1] 89/12
March 10th [1] 89/11
March 15 [1] 40/19
March 15th [4] 42/25 43/8 85/9 91/25
March 2019 [1] 85/22
March 23rd [1] 18/16
March of [3] 44/8 52/24 81/10
Marchino's [1] 27/7
marked [3] 3/7 3/12 48/21
marking [1] 48/11
martini [2] 24/14 25/5
material [7] 19/23 25/25 26/7 26/12 26/13 26/19 26/24
materials [1] 26/1
matter [23] 7/24 21/23 22/8 22/15 23/11 24/25 36/12 42/21 44/9 44/13 44/22 52/11 52/14 52/21 54/1 54/6 55/16 56/2 58/19 93/18 93/19 93/22 97/9

**M**

matters [6] 5/15 8/15 22/22 57/22 65/13 65/24
may [31] 10/22 12/14 12/22 17/8 17/8 22/12 22/15 40/5 42/2 45/15 48/2 53/14 54/13 56/14 58/10 58/11 58/14 59/8 61/23 63/15 63/20 63/23 66/10 71/5 74/16 76/23 90/24 91/11 93/13 95/18 95/19
May 24th [1] 90/24
May of [2] 63/15 63/23
maybe [8] 9/18 12/23 19/25 31/11 34/1 37/10 38/12 59/18
me [68] 7/13 20/2 28/21 28/22 29/1 29/8 30/24 33/2 33/4 33/13 33/22 35/21 36/16 36/18 37/5 44/15 47/12 47/13 53/15 54/1 54/5 54/9 55/14 56/1 62/10 63/13 64/7 64/10 64/14 64/19 65/1 65/11 65/23 66/16 67/2 68/22 69/17 70/1 70/23 71/13 71/18 72/10 72/15 72/19 73/4 73/5 73/9 74/12 74/25 75/8 75/15 76/11 76/20 77/11 78/12 78/24 79/23 80/7 80/15 80/22 80/24 81/1 81/24 84/3 89/9 89/19 89/24 93/10
mean [12] 4/19 8/22 21/16 22/24 33/16 43/18 46/4 54/2 65/18 65/20 77/17 84/12
meaning [4] 50/22 71/21 77/18 84/12
means [2] 13/12 19/12
meant [1] 70/11
measure [1] 52/15
media [3] 28/18 28/18
mediation [9] 82/21 83/4 83/10 83/24 84/20 84/25 85/3 92/20 93/1
meet [3] 11/8 22/12 71/20
meeting [11] 13/12 14/6 14/6 22/14 32/2 66/6 66/14 66/16 66/23 73/17 85/5
meetings [3] 26/6 64/2 66/3
memoranda [1] 11/23
memorandum [6] 11/14 16/5 22/10 26/10 60/3 61/18
memorialized [1] 67/1
memos [1] 13/9
mention [3] 81/11 81/18 83/21
mere [3] 5/20 23/12 23/13
merely [1] 7/1
message [17] 12/23 17/15 21/20 22/12 23/5 24/21 31/5 33/4 34/8 34/9 34/9 34/11 36/10 38/13 73/4 73/16 76/11
messages [57] 8/14 9/1 9/23 10/8 10/10 12/24 17/3 17/6 17/11 17/16 17/18 17/24 18/3 18/7 21/10 21/15 23/9 29/7 30/24 32/12 32/15 32/25 33/9 33/18 33/25 34/14 34/22 35/4 35/9 35/17 35/23 36/3 36/4 36/12 37/6 37/7 37/9 37/10 37/18 37/19 37/21 37/25 38/2 38/3 38/4 38/5 38/18 38/22 38/24 38/25 39/4 39/8 47/20 76/8 86/2 94/12 94/19
met [14] 13/13 13/16 13/21 13/23 14/2 29/8 35/25 40/18 44/7 44/20 81/10 81/17 88/16 91/25
metadata [4] 15/3 16/18 18/10 18/15
Mexico [5] 64/8 64/11 65/1 74/13 75/9
MICHAEL [12] 1/11 2/14 4/4 4/9 27/19 27/24 30/11 31/4 32/21 33/9 76/24 93/23
microphone [1] 89/6
mid [4] 59/1 74/11 75/7 84/22
mid-morning [1] 59/1
might [1] 18/12
million [6] 47/22 49/6 51/16 53/15 53/18 53/21
mind [3] 56/10 67/9 70/19
minimum [3] 8/2 21/4 60/22
minus [1] 51/3
minute [4] 6/4 19/18 25/19 47/23
minutes [2] 59/6 76/15
Miramar [1] 2/16
misrepresentation [1] 12/4
missing [1] 47/20
mistrial [1] 5/1
mixture [1] 26/8
MMS [11] 32/12 37/6 37/9 37/10 37/18 38/2 38/3 38/5 38/13 38/21 38/24

**N**

name [3] 31/24 32/3 86/8
named [1] 93/23
namely [1] 9/12
narrow [3] 16/10 17/25 21/1
necessarily [1] 21/16
necessary [2] 23/15 87/7
need [11] 25/3 25/19 38/3 47/14 51/9 59/20 59/25 62/4 66/23 72/19 74/22

moment [6] 32/23 33/2 52/7 58/8 75/22 80/11
Monday [2] 1/19 58/11
money [6] 50/12 53/16 53/19 62/19 94/21 95/2
month [2] 16/14 47/3
months [5] 17/10 46/2 46/5 46/12 46/20
more [4] 17/12 25/10 37/18 53/14
morning [18] 4/5 4/8 4/9 4/12 4/13 27/20 27/23 27/24 28/2 28/3 28/13 59/1 65/9 82/24 85/2 88/12 88/13 95/5
most [1] 34/8
motion [7] 4/25 17/9 23/7 23/12 24/1 24/5 86/21
move [10] 44/2 46/17 48/12 64/3 69/12 74/4 81/13 83/7 86/23 89/6
moving [1] 5/4
Mr [8] 4/16 19/16 28/8 33/12 75/7 75/25 86/20 87/2
Mr. [109]
Mr. Arden [5] 33/2 33/5 33/13 92/13 92/16
Mr. Armstrong [19] 65/23 66/3 66/17 67/11 68/22 69/17 69/21 69/23 70/2 70/24 71/19 72/25 73/9 73/18 76/10 85/6 85/16 85/25 86/3 Mr. Avenatti [9] 5/5 5/7 24/19 36/4 60/2 62/6 92/24 93/3
Mr. Barela [22] 24/21 26/15 28/12 36/16 37/4 39/3 39/21 40/18 42/24 45/6 48/4 48/21 52/10 57/16 58/16 62/8 62/12 66/13 68/21 79/4 88/12 92/16
Mr. Barela's [2] 27/8 60/24
Mr. Bledsoe [1] 78/17
Mr. Carlos [3] 9/4 9/8 40/19
Mr. Dean [2] 4/10 27/25
Mr. Hernandez [1] 36/25
Mr. Ibrahim [2] 92/13 92/16
Mr. Johnson's [1] 27/4
Mr. Josh [1] 62/19
Mr. Larson [1] 78/17
Mr. Marchino's [1] 27/7
Mr. Ross [10] 68/7 68/10 68/17 68/23 69/18 71/1 71/21 73/18 74/2 74/8
Mr. Sagel [20] 8/13 19/9 20/16 21/8 24/16 28/22 32/24 39/18 40/19 42/7 43/8 57/2 62/12 67/24 77/7 77/25 78/4 83/21 86/7 88/9
Mr. Slim [1] 64/19
Mr. Tashchyan [2] 5/13 36/9
Mr. Varani [1] 5/13
Mr. Viner [2] 62/24 63/7
Mr. Waterman [2] 77/11 78/15
Mr. Wyman [1] 8/13
Ms [17] 8/11 8/14 8/23 9/1 9/22 10/16 12/22 21/7 22/20 22/25 27/5 79/11 79/19 79/23 80/1 80/11 80/20
Ms. [14] 4/11 9/2 10/9 17/4 23/6 28/1 28/1 37/4 37/11 41/10 67/14 76/4 77/12 87/22
Ms. Cummings-Cefali [2] 4/11 28/1
Ms. Evan [1] 87/22
Ms. Hernandez [6] 28/1 37/4 37/11 41/10 67/14 76/4
Ms. Regnier [4] 10/9 17/4 23/6 77/12
Ms. Regnier's [1] 9/2
multiple [2] 12/12 60/10
must [3] 7/2 23/22 43/18
my [39] 7/4 12/7 17/5 19/16 20/16 21/3 22/20 29/11 30/11 30/14 32/23 34/1 34/16 35/6 36/2 40/15 46/9 46/15 47/17 49/1 51/10 51/13 52/17 53/11 54/9 55/15 56/1 57/8 65/17 65/21 66/3 79/12 80/8 80/19 81/9 81/16 82/16 85/5 87/20

needed [6] 29/9 60/25 65/13 67/1 72/12 75/3
neither [3] 9/3 58/22 79/1
network [1] 35/7
never [11] 8/14 8/25 13/6 14/13 20/12 21/6 21/11 50/19 52/1 74/1 89/18
nevertheless [1] 18/20
new [19] 10/1 11/11 11/15 11/23 12/2 13/10 13/17 13/20 14/3 14/3 14/4 14/4 17/5 17/20 34/23 59/14 91/21 95/9 95/20
next [8] 22/1 32/5 38/11 39/15 59/18 62/4 67/2 76/12
NICOLA [1] 2/3
night [4] 24/19 65/9 65/12 65/14
nine [2] 5/2 17/10
Ninth [2] 6/1 11/5
no [87] 5/13 5/18 6/21 6/22 7/22 9/4 9/15 11/15 11/23 12/2 13/10 14/4 14/12 16/9 17/24 18/7 18/19 19/2 19/13 21/21 21/21 21/21 22/7 22/7 22/7 26/12 26/15 28/15 28/20 32/25 39/7 39/11 41/17 41/20 42/18 46/24 48/7 48/17 49/11 49/12 51/20 52/5 52/6 53/16 53/19 53/20 54/7 54/11 56/19 56/20 58/18 59/17 66/8 69/19 69/20 73/18 73/19 74/3 74/9 74/10 74/22 77/3 77/4 78/8 79/1 79/3 79/5 79/6 79/7 79/9 81/22 82/3 82/6 83/5 93/20 94/1 94/5 94/9 94/11 94/18
no-new-information [1] 11/23
nobody [1] 8/1
none [4] 3/8 3/11 11/11 33/18
nonresponsive [2] 64/4 86/24
North [2] 2/7
not [121]
notes [15] 11/4 11/7 11/9 11/13 11/18 11/22 23/18 23/19 23/22 23/24 26/5 26/9 26/15 27/4 61/19
nothing [9] 12/18 13/17 13/20 14/4 16/1 26/3 26/24 77/2 91/10
notice [1] 91/11
noticed [1] 90/24
November [2] 24/13 76/7 76/10
November 15 [1] 24/13
November at [1] 76/10
November of [1] 76/7
now [33] 9/15 10/17 12/24 15/24 17/10 17/17 17/19 20/19 23/7 30/22 31/10 37/2 33/7 34/3 36/14 36/24 38/18 40/17 50/9 50/18 58/23 59/12 59/16 60/9 64/7 73/16 79/22 82/21 85/17 86/7 87/16 95/21 95/22
Nshan [1] 31/25
number [12] 12/23 12/24 13/13 28/21 48/25 48/25 49/17 57/2 64/23 66/19 76/2 84/25

**O**

oath [4] 7/8 28/6 46/13 55/1
objection [20] 41/7 43/23 45/16 48/13 48/17 55/17 56/3 56/11 63/2 68/25 70/20 71/2 83/7 85/11 85/18 87/25 90/10 91/1 92/4 94/22
objections [2] 56/23 57/13
obligation [5] 5/3 23/13 59/17 61/7 61/12
obligations [2] 13/18 13/19
obtained [1] 29/6
obviously [9] 12/12 14/9 15/24 55/5 60/8 60/11 60/16 60/19 61/13
occasions [1] 60/10
occurred [1] 87/22
October [12] 46/2 72/10 72/16 73/12 73/25 74/11 74/11 75/8 75/14 90/23 91/8 91/12
October 1st [1] 72/10
October 31st [1] 75/14
October 4th [2] 46/2 72/16
October 8 [1] 73/12
October of [1] 75/8
off [1] 51/9
offer [3] 42/20 56/21 57/11
offered [3] 54/18 54/19 54/24
offering [1] 54/23
offers [3] 5/18 54/15 70/18
office [11] 8/21 29/8 29/18 46/15 49/1 55/15

## Q

office... [5] 56/1 79/12 79/20 85/5 90/8
offices [2] 2/15 66/3
oh [3] 27/6 41/12 67/23
oil [1] 27/1
okay [25] 4/24 6/15 9/9 9/10 11/1 25/17 27/9 27/14 29/2 30/7 33/12 33/18 34/14 37/18 39/13 41/21 43/1 59/24 61/23 67/19 67/24 68/16 71/24 73/3 77/6
old [3] 34/24 34/25 35/2
Oldcastle [7] 86/8 86/10 86/11 86/20 86/22 87/3 87/18
oldest [1] 34/9
one [24] 11/14 14/25 15/2 15/4 24/9 26/6 42/7 42/24 46/23 47/3 47/15 52/7 58/8 59/9 59/13 60/11 62/3 62/12 64/17 66/22 71/17 75/22 77/7 86/11
one-sentence [1] 11/14
ones [1] 17/17
ongoing [1] 84/3
only [11] 4/20 15/15 18/8 19/4 24/15 30/23 38/21 44/24 45/2 86/15 87/17
opened [1] 25/8
operation [1] 8/21
operations [1] 70/3
opinions [2] 59/3 96/1
opportunity [1] 24/11
opposed [1] 44/9
order [9] 5/1 5/22 22/9 29/6 34/6 60/25 68/19 69/16 73/22 87/8
ordered [3] 25/22 69/10 70/7
original [1] 15/14
other [32] 10/5 10/12 14/22 16/10 17/16 17/22 18/25 22/14 23/2 23/6 28/6 28/11 26/25 32/25 33/1 33/13 33/22 36/1 41/5 44/10 47/4 55/11 60/11 74/2 77/19 78/17 84/12 89/17 93/22 93/24 93/24
our [9] 11/21 13/17 13/25 17/23 23/20 55/15 56/1 60/9 85/5
out [7] 17/15 19/12 25/5 53/10 59/19 67/22 86/12
outside [6] 87/8 93/6 93/7 93/14 93/18 93/24
over [6] 17/11 30/3 69/5 89/6 92/12 95/5
overall [1] 23/7
Overruled [13] 43/25 45/24 56/12 63/3 69/2 71/4 74/5 83/8 88/2 90/12 91/2 91/18 92/5
owed [1] 47/13
own [2] 48/9 54/23
owns [1] 64/16

## P

p.m [1] 76/10
pad [1] 47/6
page [26] 22/9 32/5 34/4 34/4 36/24 36/24 37/1 37/9 37/13 37/14 37/21 38/6 38/11 38/13 39/15 40/11 41/11 67/15 69/6 71/11 72/8 73/2 75/25 90/3 93/11 97/10
page 10 [3] 36/24 37/1 38/6
page 11 [1] 36/24
page 12 [1] 75/25
page 17 [1] 73/2
page 18 [2] 71/11 72/8
page 20 [1] 67/15
page 3 [3] 37/9 37/13 37/14
page 47 [1] 34/4
page 5 [1] 22/9
pages [5] 36/15 88/21 91/13 91/23 92/3
paper [2] 47/6 95/15
papers [2] 5/14 17/23
paperwork [3] 73/5 73/8 73/9
paragraph [15] 40/10 42/24 44/15 45/2 45/7 45/11 46/7 79/16 81/6 85/9 85/22 89/8 90/16 93/12 94/2
parameters [1] 29/25
parking [1] 9/14
part [13] 7/16 8/5 12/13 13/9 18/20 24/15 28/23 35/6 49/23 69/23 81/2 89/2 89/14
partial [6] 44/9 89/23 90/1 90/16 92/3 92/9
particular [2] 8/25 22/19

particulars [1] 25/12
parts [2] 14/20 60/1
party [2] 4/14 89/10
Pass [1] 88/8
past [1] 26/14
Pause [5] 47/21 51/15 52/8 58/9 75/23
pay [5] 44/12 44/21 53/3 94/3 94/7
payable [1] 89/20
paying [1] 53/6
payment [7] 51/23 51/24 53/18 79/5 79/7 89/10 92/18
payments [2] 89/12 89/19
pen [1] 47/6
penalty [4] 21/6 45/13 46/6 46/21
pending [2] 41/20 87/6
people [8] 14/16 33/13 33/23 33/24 33/25 61/2 64/20 77/20
percent [8] 49/6 50/19 51/8 51/16 68/14 68/15 78/5 78/25
Perfect [1] 41/13
perform [1] 48/5
performed [3] 6/18 20/18 36/20
period [5] 38/22 47/3 73/19 82/1 82/8
perjury [4] 21/6 45/13 46/6 46/21
permitted [3] 11/5 11/8 11/19
person [4] 24/22
phone [29] 9/21 10/1 15/5 15/25 17/4 17/5 17/5 20/18 24/17 24/18 24/20 24/20 25/6 29/6 29/19 30/3 30/20 34/1 34/23 34/24 34/25 35/2 35/6 35/9 36/2 47/17 47/20 51/13 94/13
phones [1] 16/18
piece [1] 95/15
Pirch [2] 55/15 56/2 58/1 58/19
place [5] 22/19 24/17 24/21 66/6 66/14
Plaintiff [2] 1/10 2/2
PLAINTIFF'S [2] 3/4 3/7
pleadings [2] 5/10 5/11
please [22] 36/25 38/13 39/15 41/10 41/13 42/2 42/24 52/7 53/14 54/12 58/8 59/2 59/5 62/10 71/11 72/8 72/19 75/22 77/5 78/12 95/24 96/2
point [17] 5/12 7/5 12/16 19/15 19/16 20/16 22/20 24/12 25/3 27/12 39/3 54/14 61/7 61/12 61/17 64/7 71/3
points [1] 19/3
pops [2] 28/19
portion [4] 41/12 42/20 44/24 78/4
position [4] 8/7 11/21 12/7 12/17 43/16 62/25 79/4
possession [2] 19/6 20/6
possible [1] 47/9
potentially [1] 22/15
power [1] 61/9
praying [1] 76/23
precise [4] 9/3 36/14 36/21 38/3
prejudices [1] 25/11
prejudicial [3] 24/25 25/2 25/10
prep [3] 13/16 14/2 16/3
prepare [3] 16/16 70/25 74/7
prepared [1] 74/1
prerogative [1] 61/1
present [7] 4/2 4/10 27/17 27/25 59/7 62/5 96/4
presented [2] 78/24 89/9
preserve [2] 10/18 10/21
preserved [1] 35/12
president [1] 70/3
PRESIDING [1] 1/8
press [1] 75/15
presumably [1] 10/15
previously [7] 23/21 28/4 28/6 40/11 46/7 55/21 68/3
primarily [1] 17/19
printed [1] 17/15
prior [6] 28/16 92/1 94/13 94/16 94/19 95/2
privileged [1] 19/23
PRO [1] 2/14
probably [6] 15/1 16/22 29/16 34/21 36/4 47/15 60/6 84/23

probative [1] 25/11
problematic [1] 17/20
procedures [1] 15/17
Proceed [1] 85/19
proceedings [9] 1/15 27/16 47/21 51/15 52/8 58/9 62/2 75/23 97/9
produce [6] 11/16 11/17 13/3 16/1 19/19 60/3
produced [14] 10/10 11/25 13/2 13/8 14/16 14/21 17/19 18/13 26/2 26/4 26/6 26/24 26/25 26/25
producing [2] 11/7 11/12
production [4] 5/23 19/4 23/19 25/22
prohibited [1] 70/7
properly [5] 53/25 54/5 54/9 55/25 56/8
prosecution [7] 10/20 15/10 15/16 15/21 19/5 19/11 19/21
prospect [1] 71/20
proves [1] 12/16
provide [8] 18/6 47/9 61/2 61/7 61/12 61/13 75/20 89/16
provided [19] 11/16 11/23 16/7 20/17 21/10 30/18 41/15 55/21 57/3 57/7 57/17 57/20 60/14 89/24 90/7 90/18 90/20 92/2 92/9
providing [1] 61/4
public [1] 65/19
pull [1] 93/10
pulling [1] 37/4
pure [1] 60/16
purpose [2] 29/18 85/13
purposefully [2] 24/24 25/1
purposes [5] 7/10 21/17 21/22 22/2 70/11
pursuant [5] 23/22 50/9 52/4 93/5 97/6
pursuing [2] 77/2 86/14
pushing [1] 76/11
put [9] 9/13 12/18 17/15 21/2 29/25 41/11 67/9 91/5 95/15
Putting [1] 23/11

## Q

qualify [1] 7/1
question [25] 5/14 6/22 6/22 9/6 16/12 32/24 34/3 37/5 40/15 41/20 42/1 42/9 46/10 52/15 56/13 71/22 74/21 75/5 80/8 80/19 81/9 81/16 82/16 87/20 90/13
questions [13] 14/22 17/22 19/1 25/13 25/15 28/22 29/5 42/7 57/3 88/14 90/22 94/14 95/7
quick [2] 19/3 24/10
quintessential [1] 54/16
quite [6] 6/24 87/3
Quix [20] 63/7 63/17 64/21 65/17 66/20 68/17 68/24 69/19 70/4 72/6 72/12 72/23 73/10 73/19 73/22 74/6 75/12 75/16 79/5 79/8
quotes [1] 12/22

## R

raise [5] 24/9 24/11 25/7 62/13 62/18
raised [1] 24/13
raising [1] 75/11
Ramon [4] 4/7 17/11 27/22 29/12
reach [4] 81/2 81/2 81/11 81/18
reach-around [4] 81/2 81/2 81/11 81/18
reached [4] 80/2 80/5 80/24 85/5
read [15] 5/11 24/14 42/2 42/4 56/14 56/17 67/20 71/5 71/8 71/23 72/1 73/6 76/25 88/3 88/5
reading [2] 14/20 44/19
Reagan [1] 2/10
real [1] 24/9
really [2] 9/18 46/22
realtime [2] 77/16 77/17
reason [5] 6/9 12/5 12/18 14/19 73/21
recall [76] 28/24 29/10 29/13 30/17 30/18 30/21 31/3 32/22 33/23 34/19 35/3 39/14 39/17 39/24 39/25 40/1 43/6 43/12 43/19 44/1 44/5 44/11 44/14 45/8 45/22 47/5 50/10 52/17 52/20 52/23 53/16 57/2 57/7 58/5 58/7 62/14 62/20 63/18 64/1 64/4 64/8 64/23 65/1 65/14 66/6 66/8 66/16 69/3 70/23 71/9 71/17 72/3 72/5 72/14 73/1 77/8 78/16 78/20

**R**

recall... [17]  78/21 79/13 80/15 82/25 84/18
85/8 85/17 86/3 86/4 86/6 86/17 86/18 87/2
87/4 87/6 87/11 95/7
recall that [1]  39/14
recalls [1]  85/15
receive [5]  17/18 23/8 50/10 50/12 78/1
received [20]  3/7 3/12 8/14 9/1 10/8 18/14
45/14 46/15 46/23 48/18 48/19 49/1 69/21
70/15 70/24 77/19 88/16 88/23 92/13 93/15
recent [1]  34/8
recess [8]  25/17 27/14 27/15 59/6 62/1 96/3
96/5 96/6
recited [1]  60/3
recollection [32]  31/21 35/22 40/11 40/15
43/3 44/16 52/13 52/24 55/20 58/17 63/15
63/23 65/11 66/13 69/7 69/19 75/15 73/25 74/11
74/19 74/22 75/4 75/7 75/14 79/17 80/10
80/19 81/7 81/9 81/17 85/12 85/17 85/24
record [10]  11/9 27/4 42/4 45/10 56/17 61/15
70/12 71/8 72/1 88/5
records [5]  81/21 81/24 81/25 82/5 82/8
recovery [3]  50/20 50/22 50/23
RECROSS [2]  3/4 3/10
redacted [1]  89/23
redaction [1]  60/8
REDIRECT [3]  3/4 3/10 88/10
referencing [1]  12/21
referred [1]  9/24
reflected [1]  26/10
refresh [15]  40/4 40/10 40/15 43/2 55/20
58/16 63/23 66/13 69/15 74/19 74/22 81/9
81/16 85/12 85/24
refreshed [1]  75/4
refreshes [4]  44/16 69/6 79/16 81/6
refreshing [1]  85/17
refused [1]  55/10 57/14 70/21
regard [7]  20/23 23/8 26/9 26/12 26/14 60/3
62/16
regarding [4]  22/13 55/15 56/1 59/13
regards [3]  13/3 13/9 14/8
Regnier [24]  8/11 8/14 8/23 9/1 9/22 10/9
10/16 12/22 17/4 17/16 21/7 22/20 22/25 23/6
23/9 24/6 26/5 77/12 79/11 79/19 79/23 80/1
80/11 80/20
Regnier's [2]  9/2 27/5
regulations [1]  97/11
reject [3]  6/1 6/10 6/13
relate [3]  7/11 21/22 22/15
related [3]  9/5 15/25 16/3 16/17 17/1 17/17
31/3 36/18 55/21 65/12 68/2 92/18 93/17
relates [11]  5/13 5/18 6/23 7/2 8/11 11/3 18/7
22/1 61/5 61/11 63/16
relating [21]  7/5 8/15 8/18 8/16 8/17 10/9
20/6 20/9 20/18 28/22 33/9 34/15 39/5 45/6
52/15 66/4 66/19 75/16 80/10 92/21 93/1
relations [1]  70/4
relationship [1]  75/16
release [1]  75/15
relevance [1]  4/20
relevant [1]  22/8
remember [22]  9/19 29/11 32/3 37/25 39/19
40/2 42/9 47/1 47/3 57/4 59/2 67/25 76/8
79/24 80/6 80/16 83/4 86/8 92/14 93/8 94/14
95/24
reminded [1]  28/5
repeat [5]  5/9 42/1 56/13 80/7 90/13
repeatedly [2]  12/3 53/15
rephrase [1]  33/4
reply [1]  5/5
report [12]  14/3 18/9 18/13 31/14 32/9 32/12
36/15 37/10 37/19 38/21 38/24
reported [2]  79/12 97/8
REPORTER [1]  97/16
REPORTER'S [1]  1/15
represent [1]  87/9
representation [7]  8/12 8/24 18/19 21/7
21/11 55/15 56/1
representations [1]  20/22
represented [1]  62/24
request [12]  4/6 20/2 29/17 30/9 30/17 30/20
30/22 30/23 30/24 31/2 36/1 70/25
requested [2]  57/24 61/18
requests [1]  65/11
require [2]  19/4 61/16
required [8]  6/12 6/14 21/5 23/17 23/24 24/3
26/25 89/10
requirements [1]  19/14
requires [1]  21/22
research [2]  59/5 96/2
reserving [1]  24/6
respect [8]  8/8 23/7 23/10 23/25 24/4 24/6
25/22 26/5
respectively [1]  89/13
respond [7]  12/11 69/22 76/15 78/8 78/10
78/15 78/18
responded [1]  76/18
respondent [3]  88/9 89/19 89/24
responding [1]  76/8
response [4]  4/14 5/4 5/18 78/22
responsible [1]  19/19
responsive [2]  19/22 65/6
restitution [5]  44/8 44/9 44/13 44/22 44/24
restricted [2]  66/24 68/23 69/9
restrictors [1]  16/25
rests [1]  61/8
resume [1]  95/24
resumed [2]  27/16 62/2
retain [2]  52/17 93/14
retained [1]  95/9
retainer [2]  39/17 41/19
retired [3]  83/13 84/4 84/13
retrieve [2]  67/5 95/18
reverse [1]  34/5
review [5]  23/24 24/3 26/23 75/15 75/18
reviewed [3]  80/25 91/8 91/11
reviewing [1]  48/16
Rick [3]  65/16 71/19 77/22
Rick's [1]  71/15
right [89]  10/7 27/6 29/15 29/21 30/8 31/8
31/24 32/21 33/10 33/14 33/16 34/6 34/9
36/22 37/19 38/2 38/5 41/3 41/6 42/13 44/24
46/3 46/7 47/7 49/1 49/3 49/8 49/25 50/7
50/20 50/22 50/23 50/25 51/3 51/6 51/9 52/2
53/7 58/1 58/4 58/6 58/21 59/16 60/7 61/20
61/24 63/10 64/17 64/21 65/4 65/9 66/20
66/24 67/3 67/16 68/3 68/7 68/10 68/22 69/19
71/15 72/13 72/20 72/23 72/25 73/10 73/12
73/14 75/12 76/21 76/24 77/12 77/14 77/16
77/23 78/22 79/9 80/18 82/13 82/22 83/14
83/17 83/25 84/4 84/12 84/16 85/1 85/7 90/25
right-hand [1]  47/7
Roasters [1]  94/8
Robertson [7]  6/2 6/6 6/7 23/16 23/16 24/3
26/7
role [3]  92/19 92/22 92/25
Ronald [1]  2/10
room [2]  79/23 80/21
Ross [13]  68/7 68/10 68/17 68/23 69/9 69/18
69/23 70/2 71/1 71/21 73/18 74/2 74/8
RPR [1]  1/19
rule [3]  11/20 70/20 70/21

**S**

SA [1]  31/25
SA-CIS [1]  31/25
SACR [3]  1/11 4/3 27/18
SACR-19-00061-JVS [3]  1/11 4/3 27/18
SAGEL [25]  2/9 4/5 8/13 19/9 19/16 20/16
21/8 24/16 27/20 28/22 32/24 39/18 40/18
42/7 43/8 47/2 57/2 62/12 67/24 77/7 77/25
78/4 83/21 86/7 88/9
said [31]  6/11 9/18 9/19 9/20 13/23 14/12
24/16 24/18 26/1 26/9 39/3 41/17 43/18 43/20
46/3 46/6 68/6 70/10 71/14 74/21 74/23 74/24
75/2 79/8 80/4 80/7 80/9 82/16 83/2 85/16
92/8
sake [1]  13/11
same [13]  13/7 15/23 27/12 38/10 41/5 56/11
78/23 81/7 83/15 88/18 90/4 90/15 90/17
San [4]  2/16 68/2 70/7 73/23
Santa [4]  1/16 1/20 2/11 4/1
Saturday [1]  82/23
say [17]  13/10 16/19 20/19 28/19 36/6 36/9
40/1 53/21 59/15 65/18 65/20 75/3 81/24
84/12 90/1 90/17 92/16
saying [8]  13/22 14/10 14/17 16/8 18/3 20/19
24/22 39/25
says [17]  7/22 9/17 11/15 14/3 14/3 14/4
23/16 31/20 32/8 37/23 40/14 43/10 51/25
72/2 78/12 89/8 89/22
scanned [1]  80/25
schedule [1]  71/14
scheduling [3]  17/17 22/5 22/17
school [7]  42/16 42/16 42/17 43/4 43/5 43/13
43/14
scope [3]  16/10 17/25 93/12
screened [1]  19/22
screenshot [1]  18/14
screenshots [1]  18/9
SE [1]  2/14
search [3]  15/17 16/24 16/25
seat [2]  78/5 79/2
second [4]  19/16 23/11 84/23 85/21
Section [2]  2/6 97/6
see [44]  3/11 13/11 18/18 20/24 31/14 31/25 32/6
32/10 32/13 32/16 32/19 34/5 34/12 36/10
37/5 37/7 37/16 37/22 38/4 38/6 38/7 38/16
39/4 47/7 48/21 49/13 50/16 63/7 69/6 71/12
71/15 71/18 72/9 73/3 76/12 76/16 76/18 78/6
78/12 79/16 81/6 85/23 88/21 89/3 89/6
seems [1]  38/24
seen [6]  12/25 13/2 13/25 17/17 48/14 71/18
SEFFENS [3]  1/19 97/15 97/16
SELNA [1]  1/8
send [1]  76/10
sending [2]  16/23 65/11
sends [1]  21/19
sensitive [2]  59/11 60/12
sent [14]  7/18 7/23 10/15 10/16 19/11 21/10
67/2 70/23 72/10 72/15 73/4 73/16 76/20
77/19
sentence [11]  11/14 11/15 12/14 73/6 85/21
93/13
sentences [1]  12/15
sentencing [5]  67/25 68/5 69/7 69/17 73/14
September [13]  41/16 41/25 64/7 65/4 65/6
65/12 66/7 66/14 67/3 68/21 69/22 70/1 70/15
September 16th [2]  41/16 41/25
September 27 [1]  70/1
September 27th [2]  66/7 66/14 68/21
September 28th [3]  67/3 69/22 70/15
September of [3]  64/7 65/4 65/12
serious [3]  10/19 10/21 43/21
seriousness [1]  36/21
serve [1]  58/18
served [1]  9/22
servers [1]  15/14
service [2]  62/23 93/12
serving [1]  61/2
set [1]  72/6
settlement [36]  33/10 34/15 45/8 45/14 46/14
46/22 47/11 50/9 50/25 77/3 79/24 83/24 85/1
85/4 85/7 85/16 85/25 86/3 87/16 88/15 88/23
89/8 89/19 89/23 90/2 90/8 90/17 90/19 92/3
92/19 92/21 92/23 93/2 94/16 94/21 95/2
settling [1]  89/10
setup [2]  72/19 72/22
seven [1]  88/21
several [1]  26/1
SHARON [3]  1/19 97/15 97/16
she [26]  8/19 9/12 9/12 9/13 9/17 9/18 9/18
9/19 9/19 9/20 9/20 9/20 9/23 9/24 9/24 10/1
10/2 17/4 17/4 17/18 22/22 60/24 60/25 80/1
80/23 80/24
should [7]  8/3 11/23 11/25 24/22 36/2 61/4
95/21

**S**

**show [2]** 15/4 37/13
**showed [2]** 29/17 92/1
**showing [7]** 23/15 23/22 24/2 25/20 26/22 45/4 90/15
**shown [1]** 60/14
**side [8]** 15/8 15/9 15/11 15/24 17/13 47/7 84/12 89/7
**sign [8]** 30/15 57/24 58/3 58/4 58/6 58/17 62/10 89/10
**signature [4]** 90/3 91/13 91/23 92/3
**signatures [1]** 88/18
**signed [2]** 45/7 46/5
**signing [1]** 45/22
**similar [2]** 48/5 55/8
**since [1]** 28/12
**single [1]** 25/24
**sir [37]** 6/24 9/3 10/3 10/7 28/5 32/6 37/16 38/16 40/9 41/15 41/18 41/20 42/13 42/3 46/20 47/6 50/16 51/8 53/13 53/25 55/13 55/20 56/7 57/2 59/21 61/21 63/23 67/20 69/15 69/24 70/15 74/7 74/19 79/14 81/16 83/10 87/24
**sit [5]** 35/21 47/10 49/10 49/22 78/21
**sitting [1]** 80/22
**six [2]** 12/15 17/10
**Sixty [1]** 49/6
**Sixty percent [1]** 49/6
**Slim [3]** 64/12 64/15 64/19
**slips [2]** 49/19 49/20
**SMS [6]** 32/15 37/7 37/18 37/21 37/25 38/25
**so [58]** 8/2 9/10 9/13 11/12 11/21 11/24 13/7 13/15 13/23 14/16 14/25 15/12 15/15 16/19 18/11 19/9 24/23 27/10 29/18 30/7 31/23 33/15 34/8 34/23 35/12 44/20 46/2 46/8 46/9 46/12 49/22 51/13 51/19 52/4 53/21 57/10 57/25 58/18 59/6 59/15 59/22 59/25 60/17 60/17 61/3 70/11 74/14 74/22 75/2 78/11 79/4 80/13 80/18 82/15 82/25 89/6 91/22 95/20
**social [1]** 28/18
**some [17]** 13/25 14/8 22/5 29/5 34/1 35/12 36/4 38/24 55/11 60/16 60/17 62/18 63/6 64/7 77/11 78/17 88/14
**somebody [4]** 31/5 80/5 80/5 80/15
**somehow [3]** 19/10 19/12 22/25
**someone [2]** 10/20 53/21
**something [10]** 13/12 13/24 14/15 18/16 23/1 30/15 46/3 46/6 84/24 86/7
**Sometime [1]** 35/3
**somewhat [1]** 59/11
**soon [1]** 76/12
**sorry [5]** 6/5 37/11 38/23 42/22 71/13
**sound [1]** 29/15
**South [1]** 64/16
**SOUTHERN [2]** 1/6 59/14
**spanned [1]** 82/22
**speak [1]** 85/25
**speaking [1]** 89/5
**special [17]** 4/7 8/13 8/25 10/16 15/13 15/23 17/11 17/14 17/20 21/4 21/10 22/21 23/1 27/22 29/12 36/8 43/8
**specific [2]** 5/2 24/12
**specifically [5]** 6/10 28/20 54/20 66/8 92/17
**specifics [1]** 14/23 65/15
**speculating [1]** 12/20
**speculation [6]** 12/16 43/23 69/1 82/18 87/25 94/22
**spirit [1]** 11/20
**split [1]** 51/24
**spoke [2]** 45/6 66/22
**spoliation [1]** 10/23
**spreadsheet [2]** 26/16 26/19
**Spring [1]** 2/7
**staff [1]** 79/12
**stand [5]** 5/16 6/17 9/2 28/13 28/16 41/3 41/5 48/9 59/16
**standard [3]** 19/6 19/6 26/7
**start [4]** 12/13 12/15 15/12 17/7
**started [1]** 12/14

**starting [1]** 37/1
**state [8]** 40/11 66/1 90/3
**stated [3]** 19/16 23/21 46/21 53/15 81/1
**statement [11]** 7/2 7/22 14/19 21/19 21/22 22/3 40/16 46/12 46/13 55/2 88/4
**statements [16]** 6/22 6/25 7/6 7/9 11/9 14/8 19/6 19/11 20/5 21/16 21/21 22/13 25/4 41/6 44/16 54/23
**STATES [16]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/4 4/6 6/6 22/10 27/19 27/21 97/7 97/11
**status [2]** 72/18 73/5
**stenographically [1]** 97/8
**step [2]** 59/8 59/18
**Steve [3]** 69/9 69/23 70/2
**STEWARD [4]** 2/15 2/15 4/10 27/25
**still [8]** 8/11 13/22 28/6 34/1 34/25 39/8 79/8 90/4
**stock [3]** 66/24 68/23 69/9
**stolen [1]** 53/22
**stop [1]** 89/13
**stored [1]** 39/4
**strains [1]** 22/24
**Street [3]** 1/20 2/7 2/11
**strength [1]** 76/24
**stricken [5]** 46/18 64/5 69/13 81/14 86/25
**strike [16]** 5/1 46/17 52/23 54/3 58/3 64/3 64/14 69/12 74/1 74/4 77/10 80/11 81/13 81/24 85/4 86/23
**string [1]** 77/20
**struck [1]** 8/3
**subject [14]** 5/15 7/24 8/15 10/9 20/7 20/13 21/1 21/23 22/8 22/15 22/21 23/19 25/24 44/2
**subject matters [1]** 8/15
**submission [1]** 12/25
**submit [3]** 17/23 21/5 23/4
**submitted [4]** 46/20 59/4 91/5 96/2
**subpoena [3]** 9/22 61/9 61/10
**subpoenaed [3]** 19/20 60/19 60/23
**subpoenas [4]** 19/22 59/15 60/22 61/3
**subsequent [3]** 12/4 85/4 85/5
**substance [5]** 9/5 16/6 26/3 26/10 48/4
**substantive [12]** 11/15 13/1 13/8 14/10 14/11 15/18 15/18 16/9 16/13 16/15 17/21 18/20
**substantively [2]** 16/21 16/22
**substitution [1]** 57/25
**such [3]** 18/9 43/20 78/21
**sufficient [5]** 23/13 23/14 24/2 25/20 26/21
**suggest [1]** 78/13
**Suite [2]** 1/20 2/11 2/16
**summary [2]** 11/3 11/17
**Sunday [1]** 82/23
**supplemental [1]** 90/23
**Supply [5]** 63/7 63/17 65/17 66/20 68/18
**supposed [1]** 11/22
**sure [8]** 13/15 33/23 36/14 60/20 61/1 67/7 68/17 70/24
**surprisingly [1]** 9/23
**Sustained [7]** 41/9 45/20 55/18 56/5 56/24 82/19 94/24
**sworn [1]** 28/4 46/20

**T**

**table [2]** 4/7 27/22
**taint [7]** 15/8 15/10 15/24 16/9 19/21 20/3 20/24
**take [29]** 4/25 24/7 26/22 29/1 29/19 31/10 32/23 33/2 42/24 44/15 58/24 59/1 59/10 59/12 60/1 68/16 69/5 72/8 72/15 73/2 75/25 76/3 77/5 77/25 79/16 81/6 85/9 85/21 95/23
**taken [5]** 25/21 27/15 62/1 86/18 96/6
**takes [1]** 49/25
**talk [3]** 7/14 76/12 90/7
**talked [2]** 44/4 90/16
**talking [10]** 9/13 19/24 37/24 41/19 68/3 69/8 72/22 72/23 73/8 77/22
**Tashchyan [10]** 5/13 14/24 15/23 17/25 20/19 20/23 23/10 24/6 31/25 36/9
**tax [1]** 17/12
**taxes [1]** 65/21

**team [13]** 10/20 15/10 15/16 15/21 16/9 19/5 19/18 19/19 19/21 19/25 20/14 20/17 72/24
**telecom [1]** 64/16
**telephone [1]** 87/21
**tell [14]** 21/9 36/2 39/21 42/15 43/3 44/7 44/12 44/15 54/4 79/14 79/19 92/2 93/17 94/20
**telling [4]** 20/2 52/24 61/3 69/22
**ten [5]** 9/18 69/7 69/18 78/5 78/25
**ten percent [2]** 78/5 78/25
**term [1]** 27/1
**terms [5]** 16/23 16/25 26/24 52/4 73/18
**testified [26]** 6/18 7/8 7/12 8/1 8/2 8/10 8/19 9/12 9/24 10/2 14/14 17/4 17/25 20/14 26/20 55/1 55/3 57/6 78/18 80/1 80/5 80/12 82/21 83/3 83/10 88/20
**testify [5]** 7/7 9/15 16/4 16/16 16/19
**testifying [4]** 16/6 17/2 28/16 35/8
**testimony [35]** 5/2 5/16 7/3 7/11 7/24 8/3 8/17 8/18 8/22 9/2 9/6 9/11 9/17 10/9 12/21 15/18 15/19 15/22 16/6 16/11 17/7 17/21 18/1 18/21 20/7 20/9 20/13 21/23 22/2 22/2 23/2 28/14 28/24 33/8 41/18 87/23
**testimony.' [1]** 22/16
**text [64]** 8/14 9/1 9/23 10/8 10/10 12/22 12/24 17/3 17/6 17/11 17/14 17/16 17/18 17/24 18/3 18/7 21/6 21/10 21/15 21/19 22/12 23/5 23/9 24/14 24/17 24/21 28/23 29/7 30/24 31/5 32/25 33/1 33/4 33/8 33/12 33/18 33/25 34/8 34/9 34/11 34/14 34/22 35/4 35/9 35/16 35/23 36/3 36/4 36/10 36/11 38/18 47/20 70/23 72/10 72/15 73/4 73/16 76/8 76/11 76/20 86/2 94/12 94/19
**than [15]** 16/10 17/16 23/2 25/10 30/25 33/1 33/13 33/22 37/18 46/6 53/14 76/15 89/17 93/22 93/25
**Thank [6]** 8/9 12/8 28/9 40/6 61/25 96/3
**Thanks [4]** 71/15 72/20 76/12 76/15
**that [522]**
**that's [54]** 4/19 4/21 6/24 10/2 10/3 10/7 10/11 10/12 10/18 10/21 10/21 12/5 12/7 13/6 13/8 19/5 19/15 20/14 21/7 21/7 24/19 24/20 26/18 31/8 31/20 33/6 37/23 40/14 43/16 45/4 47/14 48/21 48/25 49/15 49/22 51/25 52/3 55/11 57/19 58/25 59/18 61/1 61/23 63/11 65/10 71/25 72/12 72/13 73/12 80/4 80/9 81/1 81/3 82/12 83/2
**their [20]** 5/16 7/5 7/14 7/24 11/9 15/6 16/6 16/10 18/20 20/2 20/7 20/9 20/13 29/8 59/15 59/22 61/8 62/25 76/5
**them [43]** 7/18 8/2 9/20 9/25 10/14 10/18 10/18 10/21 12/25 13/23 15/7 16/10 16/14 16/18 16/23 16/23 18/11 19/13 21/2 24/23 29/8 29/23 30/3 30/3 30/15 30/19 31/8 33/7 35/12 36/2 39/9 39/10 40/20 44/7 44/21 44/23 53/4 59/16 59/20 60/5 61/3 64/2 65/14 82/13
**then [42]** 7/15 9/19 9/22 11/2 11/10 18/11 19/1 21/11 22/22 24/16 24/17 27/7 28/22 31/24 32/4 32/12 32/15 32/18 38/9 38/10 44/23 46/2 46/13 46/21 49/3 49/13 49/25 50/22 59/25 60/8 60/11 60/18 60/24 67/1 68/21 72/10 76/18 76/20 80/10 80/25 84/2
**there [86]** 5/13 5/21 6/21 6/22 7/22 9/4 9/15 10/4 12/18 13/4 13/17 14/13 14/18 16/1 16/22 17/24 18/7 18/19 19/13 21/14 21/15 22/4 24/1 24/2 24/10 25/2 26/2 26/10 26/11 26/13 26/15 26/16 29/10 29/12 30/8 31/14 31/14 31/24 38/4 39/4 41/20 47/6 47/6 47/10 49/10 49/22 50/22 52/1 52/14 52/20 52/22 52/25 53/13 55/5 55/25 56/8 59/9 59/17 62/3 62/8 64/23 71/22 74/22 83/11 83/11 83/13 83/16 83/16 83/19 84/2 87/3 89/14 90/4 93/22 93/24 95/2 95/4 95/16
**there's [5]** 32/18 37/9 37/21 54/22 55/7
**therefore [1]** 11/12 11/16 19/9
**these [14]** 7/9 7/23 13/7 13/9 14/16 19/10 20/7 20/11 21/5 33/18 67/10 77/10 77/14

## T

**they [80]** 5/16 6/16 6/13 6/18 7/6 7/6 7/7 7/8 7/8 7/11 7/12 7/13 7/13 7/16 8/1 8/2 8/4 8/10 8/14 10/11 10/15 10/16 12/1 13/13 13/23 14/11 14/12 15/1 15/1 15/7 15/9 15/12 16/4 16/5 16/8 16/16 17/1 17/25 19/10 19/19 19/20 19/22 20/8 20/14 20/14 20/24 20/25 21/16 25/13 26/8 29/8 29/9 30/1 30/4 30/4 30/6 30/6 30/7 30/8 30/10 30/13 30/22 30/22 30/23 30/23 33/19 36/1 40/20 43/17 43/21 77/18 77/19 78/18 80/18 82/9 82/12 82/15 82/16 84/9 87/22
**they'd [1]** 29/21
**they're [8]** 11/24 12/25 14/19 15/8 15/10 19/12 19/12 19/18 21/25
**they've [1]** 14/20
**thing [8]** 13/7 15/15 15/23 24/10 24/15 43/20 59/9 60/11
**things [11]** 8/20 14/3 14/4 19/25 25/19 44/10 60/16 62/12 66/22 71/17 95/6
**think [38]** 5/25 6/13 7/20 9/19 9/20 10/2 11/4 11/19 12/23 18/5 19/24 20/1 21/18 22/4 25/3 25/9 25/11 27/7 29/12 30/4 33/8 35/6 39/23 40/13 40/22 42/8 47/12 47/15 54/22 58/14 59/21 61/4 61/6 70/10 79/8 82/23 83/1 85/3
**third [2]** 4/14 84/23
**third-party [1]** 4/14
**this [123]**
**those [39]** 5/14 5/18 6/22 8/2 8/8 9/23 10/10 11/10 11/12 11/23 12/6 13/20 18/16 18/18 20/14 24/4 25/15 26/2 31/6 33/14 33/18 33/22 33/25 34/22 35/16 35/23 36/5 36/9 39/8 44/16 47/20 53/3 59/17 72/20 82/4 84/6 93/25 94/14 95/7
**though [2]** 86/17 89/22
**thousand [1]** 89/12
**three [12]** 14/3 14/3 24/13 27/1 40/10 72/11 73/14 82/25 83/4 89/11 93/23 93/25
**three-day [1]** 83/4
**threshold [5]** 12/17 23/15 23/22 24/2 26/21
**through [11]** 12/25 30/14 32/24 35/6 35/7 37/1 37/2 48/24 76/5 80/25 82/1
**throughout [1]** 13/4
**thus [1]** 41/6
**time [35]** 4/25 9/13 13/4 13/4 13/25 13/25 14/5 14/5 14/16 17/14 25/15 28/19 28/20 31/14 33/14 33/14 38/22 39/3 42/19 47/3 48/12 53/18 54/9 57/24 58/24 59/11 60/11 70/6 76/10 82/1 82/8 83/6 84/6 86/16 93/13
**times [5]** 12/12 13/13 22/14 24/13 92/8
**Title [1]** 97/7
**titled [1]** 32/5
**today [8]** 20/23 35/21 37/12 47/11 49/10 49/22 60/5 78/21
**today's [1]** 20/11
**together [1]** 91/5
**told [25]** 14/18 20/16 40/20 40/20 40/25 41/22 42/12 43/7 43/11 43/22 44/21 44/23 49/8 59/14 60/24 68/9 73/18 77/23 79/17 80/15 80/16 80/18 81/3 89/19 95/6
**too [1]** 18/13
**took [14]** 5/16 22/19 24/17 24/21 28/6 28/13 29/8 29/9 58/3 58/4 58/17 66/6 66/14 84/25
**top [7]** 31/11 37/13 41/12 48/25 51/10 76/5 77/25
**topics [5]** 23/2 31/6 33/14 33/22 38/18
**total [7]** 32/9 32/12 32/15 37/10 50/25 51/2 89/13
**towards [1]** 69/6
**track [1]** 60/13
**transcript [6]** 1/9 1/15 5/17 20/20 97/8 97/10
**travel [2]** 52/20 65/1
**trial [7]** 1/12 9/15 9/16 13/16 14/2 16/3 28/14
**true [22]** 7/3 7/4 20/14 33/2 33/16 40/23 40/25 41/25 43/2 46/15 46/24 55/4 55/13 57/16 57/20 70/4 70/8 70/9 73/17 73/23 89/22 97/7
**truly [1]** 60/2
**truth [3]** 41/24 54/18 54/21
**truthful [5]** 40/21 43/22 57/9 68/12 68/13

## U

**trying [4]** 24/24 25/1 84/15 85/12
**Tuesday [1]** 35/2
**turn [4]** 29/1 37/12 37/21 47/18
**turned [1]** 17/10
**two [31]** 5/14 6/16 7/16 7/23 8/3 8/5 8/8 13/3 14/20 14/25 15/3 16/14 16/17 18/18 19/3 19/25 20/7 20/11 20/12 21/14 25/19 26/1 29/11 32/18 34/14 37/6 53/9 64/1 73/4 76/15 82/25
**type [3]** 11/14 32/9 32/15
**typewritten [1]** 11/3
**typically [1]** 65/14

## U

**U.S [4]** 36/8 44/17 44/21 97/16
**ultimately [1]** 60/10 87/16
**uncertain [1]** 73/18
**under [18]** 7/8 11/5 11/25 13/18 21/5 26/7 28/6 32/8 32/15 45/13 46/5 46/12 46/21 55/1 55/8 59/17 60/25 61/6
**underlie [1]** 11/22
**underlying [2]** 26/5 27/4
**underneath [1]** 32/18
**understand [10]** 9/9 16/12 20/1 27/11 29/17 39/25 55/3 56/7 92/22 92/25
**understanding [5]** 30/5 31/6 93/21 94/2 94/6
**understood [9]** 18/22 25/16 27/3 29/21 30/4 53/6 62/24 84/2 84/15
**UNITED [16]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/3 4/6 6/6 22/10 27/18 27/21 97/7 97/11
**Unless [2]** 17/22 18/25
**unlikely [1]** 43/18
**until [5]** 25/17 28/12 59/4 96/1 96/3
**up [29]** 4/25 7/13 9/14 11/14 18/15 24/7 24/22 25/14 28/19 29/17 31/11 35/4 35/6 37/1 37/3 41/12 51/24 59/10 59/12 60/1 60/9 72/6 72/11 81/25 82/17 87/22 90/4 93/10 95/16
**update [1]** 72/19
**updates [1]** 72/18
**us [14]** 14/21 15/9 16/23 34/14 61/12 87/7 92/19
**use [4]** 16/21 55/11 61/14 94/7
**used [2]** 12/15 58/13
**using [2]** 60/20 60/21
**UTC [1]** 76/10
**utterance [1]** 7/1

## V

**Vaguely [1]** 57/5
**Varani [8]** 5/13 14/24 15/13 15/13 17/24 20/23 23/10 24/6
**variety [1]** 17/12 57/21
**various [2]** 17/12 57/21
**venture [2]** 64/8 64/10
**Verizon [1]** 35/7
**version [2]** 46/14 46/22
**versus [5]** 4/4 6/7 11/3 22/10 27/19
**very [8]** 8/22 8/22 10/18 10/21 50/3 52/14 65/9 65/11
**via [1]** 21/15
**vice [1]** 70/3
**videotapes [1]** 53/1
**view [2]** 6/2 50/4
**Viner [4]** 62/19 62/22 62/24 63/7
**violation [8]** 8/3 10/11 10/13 10/22 26/16 26/18 68/18 69/16
**VOL [1]** 1/12
**vs [1]** 1/10

## W

**Wag [3]** 62/23 62/23 62/25
**wait [1]** 19/18
**waiting [2]** 9/14 60/2
**walk [1]** 48/24
**walked [2]** 80/1 80/23
**walking [2]** 62/23 79/23
**want [19]** 5/12 15/8 29/5 32/4 34/3 36/5 36/14 47/12 47/14 48/24 51/11 55/11 59/10 59/16 67/13 74/7 80/7 80/8 93/10

## W

**wanted [9]** 13/15 30/4 30/6 30/8 30/23 63/7 64/7 64/9 70/12
**wants [1]** 12/11
**warrant [1]** 16/24
**was [142]**
**wasn't [8]** 17/8 19/25 24/18 24/20 26/6 26/13 67/22 69/11
**Waterman [2]** 77/11 78/15
**way [7]** 6/25 36/16 41/5 42/21 47/3 50/16 59/19
**we [133]**
**we'll [4]** 27/14 59/25 76/12 96/3
**we're [12]** 9/11 9/13 10/24 11/13 11/13 15/10 19/24 25/15 60/5 60/18 61/8 72/22
**we've [1]** 61/14
**wealthiest [1]** 64/17
**Wednesday [1]** 22/1
**week [5]** 58/3 58/4 58/17 84/23 84/24
**weekend [3]** 59/10 82/22 83/2
**weeks [2]** 27/10 73/14
**Weiner [1]** 26/13
**Weiner's [1]** 25/22
**well [37]** 4/11 5/5 5/20 6/1 6/24 7/13 10/15 14/23 19/18 20/21 21/8 21/18 22/4 27/1 33/4 33/16 38/19 43/20 46/9 52/23 55/6 59/19 61/16 64/14 72/15 73/16 73/16 74/1 76/3 80/10 80/11 80/18 81/23 82/10 83/3 85/4 91/10
**went [7]** 21/1 23/5 80/2 82/23 87/3 92/12 95/5
**were [67]** 6/17 7/7 7/13 8/5 8/9 10/11 10/15 10/16 15/1 16/4 16/8 16/17 16/18 16/22 16/23 17/1 17/19 18/10 19/11 21/10 23/19 26/8 28/21 33/7 35/12 37/25 41/15 49/8 49/11 50/9 52/10 53/1 53/11 53/21 53/25 53/25 54/3 54/4 57/6 57/16 57/20 57/24 64/23 68/2 68/7 69/8 69/11 71/18 74/13 77/10 77/11 77/19 77/22 79/22 80/18 82/22 83/11 83/16 84/2 84/6 84/7 84/9 86/14 87/8 87/13 89/20 93/24
**weren't [4]** 15/2 19/12 41/16 77/18
**West [2]** 1/20 2/11
**what [99]**
**what's [4]** 12/20 16/24 28/17 60/14
**whatever [5]** 13/17 14/5 20/8 28/19 30/4
**when [44]** 4/16 14/18 15/6 17/10 18/11 21/19 24/7 29/17 30/22 31/21 35/2 35/8 35/25 36/17 40/11 40/18 40/25 41/23 44/7 44/20 44/23 54/22 59/25 60/24 65/10 65/18 65/20 68/5 68/6 76/7 77/19 80/20 81/10 81/17 81/24 83/21 84/12 84/18 84/19 88/16 90/22 91/8 91/11 91/25
**where [13]** 5/18 13/10 25/3 25/9 26/22 33/25 34/22 49/17 59/15 78/12 87/22 90/16 95/15
**whereby [1]** 30/18
**whether [9]** 4/14 11/24 26/17 52/17 52/23 57/3 85/15 90/22 93/4
**which [16]** 12/22 15/20 16/4 17/19 21/2 24/14 26/3 32/24 49/20 50/18 60/9 70/25 76/2 91/13 92/12 93/11
**While [2]** 26/17 37/4
**who [18]** 6/17 6/17 6/18 10/14 12/9 17/12 29/10 33/21 62/22 64/14 65/16 66/23 69/9 77/22 80/16 87/8 92/22 92/25
**whoever [1]** 80/18
**whole [4]** 8/19 10/12 13/18 24/15
**whose [1]** 93/14
**why [16]** 12/5 18/17 24/19 24/20 25/4 25/5 38/21 38/23 43/20 60/20 68/21 73/21 82/15 82/17 90/1 95/22
**wife [1]** 60/24
**wild [1]** 13/5
**wildly [1]** 12/20
**will [38]** 4/22 12/10 12/11 12/13 16/15 17/7 21/9 23/3 23/7 23/9 23/24 24/7 24/10 25/17 34/4 38/4 39/14 39/17 42/21 46/18 48/18 55/10 57/14 59/1 59/6 60/6 61/17 64/5 69/13 70/21 71/19 81/14 83/6 86/25 93/14 95/23 95/24 96/5
**Wilson [3]** 42/16 43/5 43/14
**Wirecard [3]** 63/16 63/25 75/16

**W**

**wires [2]** 49/21 79/20
**withdraw [1]** 57/25
**within [3]** 26/14 33/1 33/18
**without [3]** 49/24 91/23 92/3
**witness [33]** 9/11 9/17 12/3 13/16 13/22 14/4
 15/3 21/1 21/12 21/19 21/19 25/4 26/9 28/4
 40/7 43/1 44/19 54/25 58/12 60/13 60/18 61/4
 61/7 62/4 62/11 63/21 66/11 73/3 74/17 74/21
 77/6 81/8 88/8
**witness's [2]** 7/3 22/15
**witnesses [17]** 3/4 3/10 5/2 6/17 8/8 11/8
 11/10 13/4 13/7 14/1 17/12 19/10 23/25 24/4
 60/9 61/14 87/20
**witnesses' [1]** 8/3
**word [3]** 12/14 16/22 90/1
**words [3]** 26/11 26/25 72/20
**work [14]** 6/19 7/6 7/7 7/15 15/2 34/16 36/19
 36/19 72/11 79/4 87/3 93/6 93/18 93/21
**worked [3]** 15/7 20/11 64/20
**working [3]** 7/16 63/24 68/17
**world [1]** 86/12
**world's [1]** 64/17
**would [55]** 5/7 5/20 5/24 6/8 13/12 14/25
 15/16 16/5 16/16 16/19 16/21 17/23 18/2 18/7
 18/8 21/4 21/8 28/19 32/23 33/15 34/20 34/23
 34/23 36/16 36/17 36/20 36/22 37/21 42/19
 43/20 46/8 46/9 47/9 47/16 47/17 48/12 49/18
 51/23 53/22 53/23 62/10 65/10 65/14 68/18
 74/25 82/9 82/12 82/13 82/15 82/16 82/17
 87/23 88/6 94/19 94/20
**wouldn't [4]** 15/21 17/1 60/20 82/14
**write [1]** 47/12
**writing [1]** 60/15
**written [2]** 6/21 7/17
**wrong [1]** 43/17
**wrote [5]** 20/19 22/11 43/17 48/8 71/13
**WYMAN [4]** 2/5 4/6 8/13 27/21

**Y**

**yeah [7]** 22/1 34/21 47/16 71/23 76/9 84/21
 87/5
**year [2]** 89/20 90/9
**years [8]** 6/20 7/16 8/5 14/20 20/12 53/9
 65/21 65/22
**yes [119]**
**yesterday [10]** 5/5 24/12 28/12 28/22 39/19
 45/6 58/14 68/3 68/6 79/22
**York [2]** 17/20 59/14
**you [575]**
**you'll [1]** 61/21
**you're [8]** 10/5 18/3 20/2 35/8 51/6 54/23
 72/22 73/8
**you've [1]** 31/22
**your [214]**
**your testimony [1]** 41/18