TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2435
     Facsimile: (213) 894-6269
     Email:    Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 19-061-JVS |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S BRIEF REGARDING DEFENDANT'S INTENTION TO CALL GOVERNMENT AGENTS AND OTHER WITNESSES SUBJECT TO RECALL</u> |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Alexander C.K. Wyman, hereby files its brief regarding defendant's intention to call government agents and other witnesses subject to recall.

This Brief is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 11, 2021    Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

                    /s/
BRETT A. SAGEL
ALEXANDER C.K. WYMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant has subpoenaed various special agents who participated in witness interviews in this case and defendant's unrelated other criminal prosecutions and has stated that he plans to call these agents to testify. Defendant has also stated that he plans to recall witnesses, including Joseph Varani of the DOJ Cybercrime lab in Washington, DC. This Court under its inherent authority should require defendant to make a threshold showing that there is admissible evidence defendant can elicit from these witnesses and/or evidence that can survive a Rule 403 challenge when defendant already had significant opportunity to cross-examine the witness(es), especially because, in some instances, these witnesses would need to travel from across the country.

This Court has a duty to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time[] and protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a) (numbering omitted). This Court also has the authority to quash a trial "subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). In short, a court presiding over a criminal trial has discretion to quash a trial subpoena based on a "defendant's failure to state what questions he would ask," where it appears that the subpoena would lead to "a fishing expedition into matters that there was no reason to believe the witness could answer." United States v. Sanchez-Montiel, 168 F.3d 503 (9th Cir. 1999) (unpub.) (citing United States v. Sohappy, 770 F.2d 816, 825 (9th Cir. 1985), and United States v. Merrill, 746 F.2d 458, 465 (9th Cir. 1984)).

This Court's discretion to prevent fishing expeditions is consistent with the general principles that govern the admission of evidence in a criminal trial. A proponent of evidence always bears the burden of establishing the threshold admissibility of that evidence, including its relevance. See Dowling v. United States, 493 U.S. 342, 351 n.3 (1990); see also United States v. Alvarez, 358 F.3d 1194, 1205 (9th Cir. 2004) (district court has "wide discretion" to exclude irrelevant evidence). And while a criminal defendant is guaranteed "a meaningful opportunity to present a complete defense," "well-established rules of evidence" allow trial judges to exclude irrelevant evidence or "to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes v. South Carolina, 547 U.S. 319, 324 (2006). Such relevance rules are "familiar and unquestionably constitutional." Id. at 327 (quoting Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (plurality opinion)).

For example, defendant subpoenaed Special Agent Deleassa Penland for testimony regarding interviews of Judy Regnier. The Court has indicated that the defendant can call Special Agent Penland because she authored reports of interviews of Ms. Regnier that involved, among other topics unrelated to this case, statements by Ms. Regnier about the financial stability of defendant's law firm. Her reports, however, are entirely consistent with what Ms. Regnier already testified to -- and was cross-examined on -- and her subpoena should be quashed unless defendant can proffer or otherwise indicate what admissible testimony Agent Penland might be able to give.

Impeachment by contradiction would be the only basis to call Special Agent Penland as a witness. Special Agent Penland has no personal knowledge about this case that is derived from her own observations; she is not a percipient witness, nor was she involved as an investigating agent in this case. The only testimony she could offer would be about what Ms. Regnier said. That would be hearsay if offered by defendant for its truth. See Fed. R. Evid. 801(c).

Unless this Court grants him an exception, defendant has missed his chance to impeach Ms. Regnier with any prior statement she might have made to Special Agent Penland. Defendant has had Special Agent Penland's notes of the Regnier interviews for well over a year before trial, and Ms. Regnier testified for more than two and half days before this Court: her testimony spans hundreds of transcript pages, more than 150 of which are defendant's cross-examination. At no point in that cross-examination, as far as government counsel are aware, did defendant attempt to question Ms. Regnier about any inconsistency between her testimony before this Court and what she told law enforcement agents from the Southern District of New York. See United States v. Higa, 55 F.3d 448, 452 (9th Cir. 1995) (discussing "impeachment by prior inconsistent statements, or, as it is sometimes called, impeachment by contradiction"); see also Fed. R. Evid. 608, committee notes (2003) (explaining that Rule 608 bars extrinsic evidence "to attack or support the witness' character for truthfulness" but "leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403"). If defendant had sought to confront Ms. Regnier with such an inconsistency, Rule 613(b) would have required that she be

1 "afforded an opportunity to explain or deny" the prior statement.
2 But defendant never did.
3     Finally, even if this Court were inclined to give defendant a
4 second chance to present Ms. Regnier with (arguably) inconsistent
5 prior statements and "afford[]" her "an opportunity to explain or
6 deny" them, Fed. R. Evid. 613(b) -- or to otherwise present such
7 statements "if justice so requires," id. -- defendant must offer some
8 indication that Special Agent Penland has any admissible testimony to
9 offer.  The government does not necessarily need to be a party to
10 such a threshold showing.  But under the circumstances, defendant
11 should at least be required to identify, in camera or otherwise,
12 specific statements in Ms. Regnier's trial testimony, and how
13 defendant expects Special Agent Penland's testimony will contradict
14 those statements (whether based on Agent Penland's reports or some
15 other plausible basis).  And he should do so before Special Agent
16 Penland is required to fly cross-country from New York.  That
17 threshold is not high.  But defendant has not yet met it, and thus
18 far there is no reason to think that he can.
19     There therefore does not appear to be anything to which Special
20 Agent Penland could testify.  And contrary to defendant's claims,
21 this Court has the authority to quash a subpoena on that basis.  The
22 same analysis would apply to any attempts by defendant to call other
23 special agents regarding an interview they conducted of a witness in
24 this, as the witnesses to date have agreed to statements made by them
25 in prior reports when questioned by defendant.
26     Moreover, defendant, through his paralegal, emailed the
27 government at 9:42 p.m. on August 10, 2021, stating: "As you know,
28 Joseph Varani remains subject to recall.  Please have him present to

4

testify in the defense case on Thursday afternoon [August 12, 2021]. He will be called then or on Friday." In addition to failing to comply with this Court's 48-hour notice, the Court should require defendant to make a threshold showing as to why Mr. Varani would need to be recalled when defendant already had a significant opportunity to cross-examine him. This appears to be another example of defendant seeking cumulative evidence and/or wasting time, which the Court can exclude under Rule 403. Finally, defendant has provided the government no authority for which the government is responsible for handling and paying for the travel of a witness to be called by defendant. Although the government will work with the defendant and the witnesses to arrange the times for their testimony (with proper notice), the government is unaware of any requirements to pay for travel of witnesses defendant seeks to call in his case-in-chief.