1

1

2

3

4              UNITED STATES DISTRICT COURT

5             CENTRAL DISTRICT OF CALIFORNIA

6                  SOUTHERN DIVISION

7                       - - -

8      THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

        UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
10                      Plaintiff,  )
          vs.                        )
11                                   )  SACR-19-00061-JVS
        MICHAEL JOHN AVENATTI,       )
12                      Defendant.  )TRIAL DAY 17, VOL. 1
        ------------------------------)
13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              Santa Ana, California

17               August 10, 2021

18

19                   SHARON A. SEFFENS, RPR
                     United States Courthouse
20                   411 West 4th Street, Suite 1-1053
                     Santa Ana, CA  92701
21                   (714) 543-0870

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    NICOLA T. HANNA
     United States Attorney
4    BRANDON D. FOX
     Assistant United States Attorney
5    Chief, Criminal Division
     ALEXANDER WYMAN
6    Assistant United States Attorney
     Major Frauds Section
7    1100 United States Courthouse
     312 North Spring Street
8    Los Angeles, CA  90012
     (213) 894-6683
9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1

 2                              I-N-D-E-X

 3

 4    PLAINTIFF'S
      WITNESSES:            DIRECT    CROSS   REDIRECT    RECROSS
 5
      LONG TRAN
 6      (Continued)           25       46       70          93
      MARK HOROUPIAN           97
 7

 8    PLAINTIFF'S
      EXHIBITS:                              MARKED     RECEIVED
 9    Exhibit 342                                          102
      Exhibit 392                                          108
10
      DEFENSE
11    WITNESSES:          DIRECT   CROSS    REDIRECT    RECROSS

12     (None)

13    DEFENSE
      EXHIBITS:                              MARKED      RECEIVED
14
       (None)
15

16

17

18

19

20

21

22

23

24

25
```

4

| | | |
|---|---|---|
| | 1 | SANTA ANA, CALIFORNIA; TUESDAY, AUGUST 10, 2021; 8:28 A.M. |
| 08:16 | 2 | (Jury not present) |
| 08:28 | 3 | THE CLERK:  Item 1, SACR-19-00061-JVS, United |
| 08:29 | 4 | States of America versus Michael John Avenatti. |
| 08:29 | 5 | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel |
| 08:29 | 6 | and Alexander Wyman on behalf of the United States.  At |
| 08:29 | 7 | counsel table is Special Agent Remoun Karlous. |
| 08:29 | 8 | THE COURT:  Good morning. |
| 08:29 | 9 | MR. AVENATTI:  Good morning, Your Honor.  Michael |
| 08:29 | 10 | Avenatti present with Mr. Steward, advisory counsel.  And |
| 08:29 | 11 | Ms. Cummings-Cefali will be joining us momentarily.  She |
| 08:30 | 12 | just walked down the hall. |
| 08:30 | 13 | THE COURT:  Very good.  Good morning. |
| 08:30 | 14 | I indicated we would take up this morning |
| 08:30 | 15 | Mr. Avenatti's objection to the testimony of John Drum.  The |
| 08:30 | 16 | objection was filed at Docket 546.  The government replied |
| 08:30 | 17 | at Docket No. 564, and then Mr. Avenatti filed a reply at |
| 08:30 | 18 | Docket No. 600. |
| 08:30 | 19 | I would be happy to hear you, Mr. Avenatti. |
| 08:30 | 20 | MR. AVENATTI:  Thank you, Your Honor. |
| 08:30 | 21 | Late in the day on Friday in advance of the Court |
| 08:30 | 22 | hearing my objections relating to Mr. Drum's testimony, the |
| 08:30 | 23 | Court did a preliminary indication relating to the allowance |
| 08:30 | 24 | of Mr. Drum to rely on certain bank records that have |
| 08:31 | 25 | previously been admitted over the defendant's objection. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:31    1            In response to that -- and this discussion took

08:31    2    place at pages 109 and 110 of the transcript late in the day

08:31    3    on Friday -- I had indicated that I wanted to file something

08:31    4    to focus the Court's attention on a few issues relating to

08:31    5    Mr. Drum that I thought were important before he testified.

08:31    6    And the Court had indicated that that would be helpful.

08:31    7            I then did so yesterday, and Your Honor struck the

08:31    8    submission, including the objections.

08:31    9            THE COURT:  I will withdraw the order, given the

08:31    10    colloquy on Friday.

08:31    11            MR. AVENATTI:  Thank you, Your Honor.

08:31    12            So obviously I stand on those objections and the

08:31    13    statements made within the filing, Your Honor.  There is a

08:31    14    number of problems relating to Mr. Drum's testimony.

08:31    15            Frankly, at this point, I'm not sure if the

08:31    16    government is going to still call Mr. Drum, and the reason

08:31    17    why I say that is because we are trying to figure out when

08:32    18    we need to bring our witnesses and when the government is

08:32    19    going to close their case-in-chief.

08:32    20            They indicated yesterday that they may close

08:32    21    tomorrow morning.  I don't know how that's possible if

08:32    22    they're calling Mr. Drum because --

08:32    23            THE COURT:  Well, let's find out.

08:32    24            Does the government presently intend to call

08:32    25    Mr. Drum?

08:32    1          MR. WYMAN:  Yes, we do, Your Honor.

08:32    2          THE COURT:  Okay.  So it's not academic.

08:32    3          MR. AVENATTI:  Fair enough, Your Honor.  Now that

08:32    4    I have that clarify, let me just say there's a number of

08:32    5    problems with Mr. Drum's testimony.  Number one, he relies

08:32    6    on clear hearsay.  We don't believe that's appropriate and

08:32    7    we lodged an objection.

08:32    8          He's relying on documents that are not admissible

08:32    9    and not been found to be admissible.  This includes bank

08:32   10    records and other documents for which --

08:32   11          THE COURT:  Sir, I have read the briefs, and I

08:32   12    appreciate -- if you're going to make new points, make them.

08:33   13    I have read the brief and particularly given additional

08:33   14    consideration to your objection to the bank records as being

08:33   15    authenticated by the various custodian.

08:33   16          I have ruled on that, and my position is the same

08:33   17    with respect to this motion and Mr. Drum's use of those

08:33   18    records.

08:33   19          MR. AVENATTI:  I understand, Your Honor.  I would

08:33   20    like to focus if I could, then, on our objection to Mr. Drum

08:33   21    relying on other bank records for which the Court has not

08:33   22    ruled that those bank records are admissible.

08:33   23          We've raised objections relating to those

08:33   24    declarations, custodial declarations, as being insufficient

08:33   25    to substantiate the business record exception, Your Honor,

08:33  1   to the hearsay rule, including, just by way of example and

08:33  2   we cited this in our papers -- Court's indulgence, please --

08:33  3   that the alleged affidavit from the key bank national

08:34  4   association custodian, Mr. Drum purports to rely on these

08:34  5   bank records that the custodial affidavit and declaration is

08:34  6   woefully insufficient and does not qualify those records for

08:34  7   admission and overcome the hearsay objection relating to

08:34  8   that, Your Honor.

08:34  9        It's a fundamental problem that Mr. Drum cannot

08:34  10  come in testify as a fact witness and cannot rely on bank

08:34  11  records that are not admissible in the case.  They don't

08:34  12  necessarily have to be admitted, but they have to be

08:34  13  admissible.  And the government has to -- it's their burden

08:34  14  and they have to overcome that as to each of these bank

08:34  15  records.

08:34  16        Just to be clear, I'm talking about bank records

08:35  17  that the Court has not ruled on or a custodial declaration

08:35  18  that the Court has not ruled to satisfy the rules.  So

08:35  19  that's my first point, maybe my second.

08:35  20        Additionally, Your Honor, to have Mr. Drum come

08:35  21  in -- and we raised this in the filing yesterday --

08:35  22        THE COURT:  Notwithstanding it will be stricken as

08:35  23  I read it.

08:35  24        MR. AVENATTI:  The Court read it?

08:35  25        THE COURT:  Yes.

08:35  1          MR. AVENATTI:  Okay.  Thank you, Your Honor.  So
08:35  2  as indicated in that filing, and I think the case law is
08:35  3  fairly clear on this, to have Mr. Drum come in and discuss
08:35  4  with the jury, testify as to transfers of monies that were
08:35  5  legitimate, that should not be permitted under --
08:35  6          THE COURT:  Sir, I have addressed this in the
08:35  7  original motion that was filed in October.  I addressed that
08:35  8  very point.
08:36  9          MR. AVENATTI:  Your Honor, I don't recall the
08:36  10  Court -- well, Your Honor, I'm not quibbling with you.  I'm
08:36  11  not arguing with you.  I want to be clear about that.  I
08:36  12  don't recall that exact point being addressed, but I will
08:36  13  say is this.  I think it's become even more -- it has risen
08:36  14  to the forefront, Your Honor, as a result of the testimony
08:36  15  and the evidence that has come into the case.
08:36  16          And the example that I would give, Your Honor, is
08:36  17  this.  We will take Mr. Johnson's settlement as an example.
08:36  18  Mr. Johnson -- there was a $4 million settlement in
08:36  19  connection with Mr. Johnson's case.  The government now is
08:37  20  proposing to have Mr. Drum come in and talk about how the
08:37  21  first $1.6 million of that settlement money was spent.  What
08:37  22  is the possible relevance of that?  There is no possible
08:37  23  relevance, Your Honor, and that is a fundamental problem.
08:37  24  It doesn't pass 403.
08:37  25          How the first $1.6 million was spent is completely

08:37   1   irrelevant to whether there was any violation of any federal

08:37   2   criminal statute.

08:37   3           THE COURT:  Sir, I disagree.  It's at least motive

08:37   4   evidence.

08:37   5           MR. AVENATTI:  Your Honor, again just to be clear,

08:37   6   I'm speaking of the first $1.6 million of the $4 million

08:37   7   settlement.  According to the government, the fee was

08:37   8   $1.6 million.  So how the fee was spent out of the

08:37   9   $4 million is irrelevant and has no bearing on whether any

08:38   10  federal criminal statute was violated, Your Honor.

08:38   11          As we indicated in our filing yesterday, before

08:38   12  Mr. Drum is permitted to testify relating to how monies was

08:38   13  spent, there has to be a threshold determination that in

08:38   14  fact those monies, that I was not entitled to those monies

08:38   15  or the firm was not entitled to those monies.  If those

08:38   16  monies were attorneys' fees or costs, it's irrelevant as to

08:38   17  how they were spent.

08:38   18          And then secondly, Your Honor, to the extent that

08:38   19  Mr. Drum is going to trace monies from other accounts -- and

08:38   20  by other accounts, what I mean is money came into the trust

08:38   21  account, money then went from the trust account to another

08:38   22  account that was not a trust account, and then went to A, B,

08:38   23  C, D, or E.

08:39   24          As we cited the case law yesterday in the filing,

08:39   25  that's irrelevant.  The alleged crime would have been

08:39  1    completed once the transfer was made from the trust account

08:39  2    to the other non-trust account according to the case law.

08:39  3    So there is no relevance to having Mr. Drum talk about what

08:39  4    happened to the money after that, and it's violative of 403.

08:39  5    It's completely irrelevant.

08:39  6          The case law I think is clear when it talks about

08:39  7    that the crime has to have an ending at some point.  So for

08:39  8    each of those reasons, Your Honor, we don't think it's

08:39  9    appropriate to have Mr. Drum testify with such breadth and

08:39  10   on a host of topics that are irrelevant and don't survive

08:39  11   403.

08:39  12         Thank you.

08:39  13         THE COURT:  Thank you.

08:39  14         Mr. Wyman.

08:39  15         MR. WYMAN:  Your Honor, just to respond briefly to

08:39  16   the points that defendant just made, we disagree completely

08:40  17   that how the defendant spent the $1.6 million is not

08:40  18   relevant.  The defendant might have been entitled to that

08:40  19   1.6 million as his fee if he had shown Mr. Johnson the

08:40  20   settlement agreement, if he had provided an accounting of

08:40  21   fees and costs, and if the client had signed off on it

08:40  22   thereby entitling the firm to his fees.

08:40  23         THE COURT:  So you are suggesting there is a

08:40  24   factual issue as to whether in fact Mr. Avenatti was

08:40  25   entitled to withdraw $1.6 million.

08:40  1                MR. WYMAN:  Absolutely, Your Honor.

08:40  2                THE COURT:  Okay.

08:40  3                MR. WYMAN:  With regard to the tracing of the

08:40  4   settlement funds from the trust account to another account,

08:40  5   the government needs to be able to prove that defendant

08:40  6   didn't give the settlement money to his victim, whether it

08:40  7   passed through another account or not.

08:40  8                We are presenting a theory of misappropriation,

08:40  9   meaning that he took the settlement money and then spent it

08:41  10  on himself or his other businesses.  It would be totally

08:41  11  different if he took the money from the trust account, moved

08:41  12  it to an operating account, but then paid the victim.

08:41  13  That's not what he did, and we need to be able to prove that

08:41  14  the money didn't end up with the victim.

08:41  15                It is a very important point, as Your Honor knows,

08:41  16  from the jury instructions, that any of the money that the

08:41  17  victim did receive didn't come from the settlement money.

08:41  18  It came from other accounts.  The defendant commingled them.

08:41  19  He used the victim's money, and then he paid small lulling

08:41  20  payments out of other sources.  That's an important point

08:41  21  and it's highly relevant.

08:41  22                With regard to the other points, Your Honor, we're

08:41  23  happy to submit unless the Court has any questions.  Nothing

08:41  24  that defendant raised in any of his many filings on this

08:41  25  changes the Court's tentative conclusion that these charts

08:41  1   are admissible and based on admissible evidence.

08:41  2          THE COURT:  As I understand it, the charts

08:42  3   provided at the end of May have been modified only to the

08:42  4   extent that all those in the May versions listed all the

08:42  5   documents, the ones you proposed to present to the jury.

08:42  6          MR. WYMAN:  That's largely correct, Your Honor.

08:42  7   Mr. Drum gave finalizing charts, tweaked a few numbers as he

08:42  8   was proofreading his calculations.  Those are minor edits,

08:42  9   minor changes to the actual dollar numbers, but the only

08:42  10  substantive change is the removal of the annotations as Your

08:42  11  Honor instructed.

08:42  12         THE COURT:  Okay.

08:42  13         MR. AVENATTI:  And, Your Honor --

08:42  14         THE COURT:  Just a minute, please.

08:42  15         (Brief pause in proceedings)

08:42  16         THE COURT:  Yes, sir.

08:42  17         MR. AVENATTI:  Your Honor, two quick points.

08:42  18  First of all, counsel's statement that no money could be

08:42  19  deducted without the client's approval is false under

08:42  20  California law.  There is no such law.  There is no bar

08:43  21  rule.  There is no business and professions code regulation.

08:43  22  There is no common law rule.  That is completely false.  It

08:43  23  is a false statement of the law.

08:43  24         The idea that every time a settlement comes in

08:43  25  that you have to get your client's approval to take your fee

08:43   1   or to deduct a cost, there is no basis for that whatsoever,

08:43   2   and it reflects a fundamental misunderstanding of how

08:43   3   plaintiff contingency cases work.  There is no basis for

08:43   4   that -- none.

08:43   5          We have heard it now -- I have heard it three or

08:43   6   four or five times in this case and many times before trial.

08:43   7   There is no basis for it.  That's not the requirement, Your

08:43   8   Honor, and we pointed this fact out to the Court relating to

08:43   9   the fee.

08:43   10         The bar rule is exactly the opposite.  The bar

08:43   11   rule says when you get the settlement, you have to take your

08:43   12   fee out -- I think the words were -- as quickly or as

08:44   13   reasonably quickly as possible.  I'm butchering it, Your

08:44   14   Honor.  I don't have the --

08:44   15         THE COURT:  You have the concept correct.

08:44   16         MR. AVENATTI:  Okay.  So what counsel just

08:44   17   informed the Court is false as a matter of law.  That's not

08:44   18   how it works.  And, Your Honor, it makes sense because if

08:44   19   that was the case, any client that was unhappy with the

08:44   20   settlement amount would just say, well, I'm never going to

08:44   21   approve the attorney getting his fees or costs.  And then

08:44   22   he'd have to wait for an arbitration on it.  That's now how

08:44   23   it works.  It's just not how it works.  So that can't be a

08:44   24   basis for the government's position relating to Mr. Drum.

08:44   25         Secondly, Your Honor, and this is going to become

08:44  1   crystal clear to all involved when I cross-examine Mr. Drum.

08:44  2   And I shouldn't do this, but I'm going to do it anyway

08:44  3   because I don't think it's a big secret.  I'm going to ask

08:44  4   Mr. Drum exactly what he relied on in connection with

08:45  5   preparing these summaries, the exact documents.  He's not

08:45  6   going to be able to answer that question.  He is going to

08:45  7   say I don't have any papers.  I would have to look at my

08:45  8   records.  That's what we're going to hear.

08:45  9          The problem is, Your Honor, I'm entitled to know.

08:45  10  And I've cross-examined a lot of financial experts over the

08:45  11  course of my career, a lot, over 20.  I have never seen a

08:45  12  situation like this.  I have never seen a situation where a

08:45  13  financial expert is paid $600,000.  That's how much the

08:45  14  government paid him, $600,000.

08:45  15         THE COURT:  You're obviously entitled to draw that

08:45  16  out and present it to the jury.

08:45  17         MR. AVENATTI:  And I'm going to, Your Honor.

08:45  18  Here's my point.  I have cross-examined over 20 and I've

08:45  19  probably put up another 30 financial experts.  And every

08:45  20  time the financial expert takes the stand, he has binders

08:46  21  like those that he brings with him to the stand, and they

08:46  22  tie out every number.  Oh, you want to know where the

08:46  23  $4 million was?  It's right here.  Let me get it for you.

08:46  24  And they flip the pack and it's right there.

08:46  25         We're not going to see that here, and that's the

08:46   1   problem.  The problem is how am I going to cross-examine

08:46   2   Mr. Drum when the government refuses to tell us where each

08:46   3   of the numbers come from in the summaries?  The fact that

08:46   4   they provided summaries that have now changed in many ways

08:46   5   in May of last year, that's of no moment, Your Honor.  And

08:46   6   even those were insufficient.

08:46   7        The guy can't just say, I got it from QuickBooks.

08:46   8   That's like saying I got it from a file cabinet.  Well, what

08:46   9   is the document that supports that summary line item?

08:46   10  That's the problem, and I'm entitled to that information.

08:47   11  We're entitled to know it under 1006.  I'm entitled to know

08:47   12  it before he testifies on direct so I can conduct a proper

08:47   13  cross-examination.

08:47   14        THE COURT:  There are two different things here.

08:47   15  The 1006 obligation only requires that the government

08:47   16  present you with documents that underlie the summary.  It's

08:47   17  not required to tell you where each number came from.

08:47   18  Nothing in 1006 says that.  Now, you can cross-examine him.

08:47   19  Maybe he knows the exact source of the particular number and

08:47   20  maybe he doesn't.  But that's not a 1006 violation.

08:47   21        MR. AVENATTI:  Well, Your Honor, I would actually

08:47   22  disagree for this reason.

08:47   23        THE COURT:  Tell me where 1006 says not only does

08:47   24  the government have to present you with the documents that

08:47   25  underlie the summary, but they have to tell you where each

08:47  1    number comes from with respect to the documents they

08:47  2    produced that underlie the summary.  Tell me where that is

08:48  3    in 1006.

08:48  4              MR. AVENATTI:  What they have to tell you is the

08:48  5    documents that support each summary.  That's what they have

08:48  6    to do.

08:48  7              THE COURT:  Sir, answer my question.  Is it your

08:48  8    position that the government not only has to produce all the

08:48  9    documents that underlie the summary, but they have to tie

08:48  10   each number in the summary to a specific document?  Is that

08:48  11   your position?

08:48  12             MR. AVENATTI:  Yes, but I want to explain why

08:48  13   that's my position.

08:48  14             THE COURT:  Okay.

08:48  15             MR. AVENATTI:  All right.  Presently, I think

08:48  16   there's 37 or 44 summary slides that Mr. Drum has prepared,

08:48  17   okay.  For each slide, that's a summary.  For each summary,

08:48  18   I'm entitled to know the documents that support that summary

08:48  19   under 1006 by Bates number, Your Honor.  That is what I am

08:48  20   entitled to, so that I can look at the summary and then I

08:48  21   can look at the documents that supposedly support it because

08:49  22   it may be that the documents that supposedly support it

08:49  23   don't really support it.  Then that is grounds for

08:49  24   cross-examination of the individual.  That's my problem.

08:49  25             THE COURT:  Sir, I think I have your position.  I

08:49   1   believe -- assuming, one, the government has in fact

08:49   2   produced all the documents that underlie the summaries, I

08:49   3   don't believe 1006 says the government has an obligation to

08:49   4   tie each number to a specific document.  Two, you're going

08:49   5   to be able to cross-examine.  Ask the very questions you

08:49   6   said you're going to ask.  That's cross-examination, classic

08:49   7   cross-examination.

08:49   8           MR. AVENATTI:  Your Honor, the problem is for the

08:49   9   current summaries that the government proposes to use, I

08:49   10  have not -- they have not identified which documents support

08:49   11  each summary.  That's the problem.

08:49   12          THE COURT:  Okay.  Notwithstanding the fact that

08:49   13  the drafts produced in May through the government's

08:50   14  representation -- I haven't seen it, but the government

08:50   15  represents that each summary was accompanied by all the

08:50   16  documents.

08:50   17          MR. WYMAN:  Your Honor, they actually were

08:50   18  attached in October of last year to the government's

08:50   19  opposition to the defendant's first --

08:50   20          THE COURT:  Okay.  I think I've heard enough

08:50   21  argument on this motion, and I'm prepared to rule.  I deny

08:50   22  the objection to the use of the summaries that Mr. Drum is

08:50   23  going to present.  I believe the government has performed

08:50   24  its obligation with respect to the underlying documents.

08:50   25          Two, I indicated on Friday that I felt

08:50  1    specifically that the bank records covered by the

08:50  2    declarations at Exhibits 394 through 397 were in fact not

08:50  3    only admissible but admitted by virtue of those declarations

08:50  4    under the business exception rule.

08:50  5           I note that no mention has been made here of Rule

08:51  6    703, which allows an expert to rely upon documents that are

08:51  7    not admitted and also rely on documents that would not be

08:51  8    directly admissible.  No mention has been made of that here.

08:51  9           Mr. Avenatti repeated numerous times and here

08:51  10   today that Mr. Drum cannot be produced as a fact witness.

08:51  11   He is not being offered as a fact witness, nor as I perceive

08:51  12   his testimony will he be testifying as a fact witness.  He

08:51  13   will report on his examination of financial records relating

08:51  14   to Mr. Avenatti and his law firms as a forensic expert does.

08:51  15   He will then trace where the funds went.  That is an

08:51  16   appropriate task for a forensic expert to do.

08:51  17          I find that tracing beyond the first transfer is

08:52  18   appropriate here, and I think the government needs to

08:52  19   establish ultimately that there was a misappropriation.

08:52  20   Moreover, I think that where some of the money went is

08:52  21   directly relevant to motive and other issues.

08:52  22          I have already indicated that certain expenditures

08:52  23   can be identified but not referred to, such as payments to

08:52  24   Mr. Avenatti's racing car company and so on.

08:52  25          So for all those reasons, the motion is denied.

08:52  1        I want to visit very briefly with regard to the

08:52  2   two government agents under subpoena as to whom I'm still

08:52  3   considering the request to quash.

08:52  4        Mr. Avenatti put in the documents which support

08:52  5   the summary chart which he previously presented in docket

08:53  6   641.  I reviewed each of those.  They all relate to

08:53  7   interview sessions with Judy Regnier.  Given the content of

08:53  8   the notes, particularly the extensive notes in Exhibit A of

08:53  9   Mr. Avenatti's under-seal filing, that there was discussion

08:53  10  during the meeting of January 9th, 2020, of the financial

08:53  11  affairs and liabilities of Mr. Avenatti's law firm.

08:53  12       Ms. DeLeassa Penland and Christopher Harper

08:54  13  attended most of those meetings.  Ms. Penland attended them

08:54  14  all.  I'm going to reconsider my ruling with respect to

08:54  15  Mr. Penland, and that subpoena will be outstanding and

08:54  16  viable.  If you're going to call Ms. Penland, I direct that

08:54  17  you provide 48 hours' notice.

08:54  18       With respect to Mr. Chris Harper, I'm going to

08:54  19  quash that subpoena as part of the balancing analysis.

08:54  20  Ms. Penland drafted all the notes in Mr. Avenatti's

08:54  21  under-seal filing.  I believe that her testimony would be

08:54  22  sufficient and that the testimony from Chris Harper would be

08:54  23  cumulative.  Therefore, I sustain the objection.  I overrule

08:55  24  the government's objection to the Harper -- I sustain the

08:55  25  government's objection to the Harper subpoena, 403,

08:55   1   balancing per case law, and cumulative.

08:55   2            Any questions?

08:55   3            MR. SAGEL:  Very briefly, Your Honor.  I guess the

08:55   4   question that we still have is -- and we don't even need to

08:55   5   be present for it, is defendant hasn't and cannot present a

08:55   6   viable basis in which Ms. Penland would have relevant

08:55   7   testimony in this case because -- about statements made to

08:55   8   her outside the presence, which would be hearsay, wouldn't

08:55   9   come in.

08:55   10           They would come in if he had impeached or

08:55   11  attempted to impeach Ms. Regnier about statements she made

08:55   12  to Ms. Penland so that she could come in for those purposes.

08:55   13  That's not the case.  And if his theory is about how an

08:56   14  investigation was done and what this investigation was,

08:56   15  whatever, she is not part of this investigation.

08:56   16           She has never sat in on any interview for this

08:56   17  case.  So anything that she did as it related to Nike or

08:56   18  Stormy Daniels isn't relevant under 401 or 403 for this

08:56   19  case.

08:56   20           THE COURT:  She testified that the firm was in

08:56   21  shaky financial condition.  She visited the topics on a

08:56   22  number of different points in the notes of January 9, 2020.

08:56   23           MR. SAGEL:  I guess what I would say is -- and I

08:56   24  don't want to play a semantical game, but she didn't testify

08:56   25  to anything.  She wrote notes of what Ms. Regnier said.

08:56  1          THE COURT:  Yes.

08:56  2          MR. SAGEL:  Correct.  So Ms. Regnier is the

08:56  3  witness to say those things.  She just took notes of what

08:56  4  Ms. Regnier said about what the firm was in February and

08:56  5  March of 2019 while defendant was trying to get $25 million

08:56  6  from the company.

08:57  7          THE COURT:  To the extent she comes and testifies

08:57  8  and is asked hearsay questions as opposed to questions that

08:57  9  will impeach what Ms. Regnier said, make your objection.

08:57  10         MR. SAGEL:  And I appreciate that, Your Honor.

08:57  11         THE COURT:  I appreciate your distinction.  I

08:57  12  mean, she can't testify as to what Ms. Regnier said

08:57  13  directly.  That's hearsay.  But I think that potentially it

08:57  14  would be impeachment of what Ms. Regnier did testify to.

08:57  15         I'm not prepared to say there is or there isn't on

08:57  16  the basis of those notes.  She was there.  Subject matters

08:57  17  relevant to this case were discussed notwithstanding the

08:57  18  fact that some of them were literally part of another

08:57  19  investigation.

08:58  20         So that's the Court's ruling.  I sustain the

08:58  21  objection to the Harper subpoena.  I overrule the objection

08:58  22  to the Penland subpoena.  If she is going to be called,

08:58  23  provide 48 hours' notice.

08:58  24         MR. SAGEL:  Thank you, Your Honor.

08:58  25         MR. AVENATTI:  Your Honor, I have a quick question

08:58  1   about Mr. Harper.  The Court is sustaining or quashing the

08:58  2   subpoena pursuant to Bahamonde, the balancing under

08:58  3   Bahamonde?

08:58  4            THE COURT:  Right.  Ms. Penland took all the

08:58  5   notes.  I can't fathom that the testimony of Chris Harper

08:59  6   wouldn't be cumulative.

08:59  7            MR. AVENATTI:  Well, we haven't heard the

08:59  8   testimony from Ms. Penland.  I will just make that point and

08:59  9   sit down, Your Honor.

08:59  10           THE COURT:  That's fine.

08:59  11           Anything further before we bring in the jury?

08:59  12           MR. WYMAN:  Briefly, Your Honor.  I had two quick

08:59  13  questions relating to John Drum who is expected to testify

08:59  14  tomorrow.  The first is, as the defendant noted in his

08:59  15  opening statement and then again this morning, the

08:59  16  government has paid Mr. Drum's company, Analysis Group,

08:59  17  approximately $600,000.

08:59  18           THE COURT:  Right.

08:59  19           MR. WYMAN:  Obviously a lot of that was for counts

08:59  20  unrelated to the ten counts here.  The defendant has already

08:59  21  told the jury that we paid $550,000 in his opening

08:59  22  statement, and I think he intends to do it again on

08:59  23  cross-examination.

08:59  24           So we would request the ability to ask on direct

08:59  25  the full amount that Mr. Drum was paid, since the jury has

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:59  1    already been told that, and then elicit that some of that
09:00  2    amount was for other matters.
09:00  3                THE COURT:  I think that's fair.
09:00  4                MR. WYMAN:  Thank you, Your Honor.
09:00  5                THE COURT:  And then just leave it at that, other
09:00  6    matters without getting into the details of what it was with
09:00  7    respect to counts other than 1 through 10.
09:00  8                MR. WYMAN:  Yes, Your Honor.
09:00  9                MR. AVENATTI:  Your Honor, I don't want my silence
09:00 10    to be deemed acquiescent.  We previously briefed the issue,
09:00 11    and we stand on our objections relating to this point and
09:00 12    put it in our trial brief.
09:00 13                I did have two other quick issues I wanted to
09:00 14    raise if that's okay.
09:00 15                THE COURT:  Are they pertinent to this morning's
09:00 16    examination?
09:00 17                MR. AVENATTI:  They are pertinent to the issue of
09:00 18    Mr. Bellis and his testimony.
09:00 19                I think he's going to testify after lunch; is that
09:00 20    right?
09:00 21                THE COURT:  Well, if it's not pertinent to this
09:01 22    morning, we will take it up at the noon break.
09:01 23                MR. WYMAN:  Your Honor, it is possible he will
09:01 24    testify this morning.  We informed the defendant that one of
09:01 25    our morning witnesses had some travel issues yesterday.

09:01  1    He's coming straight from the airport here.  But if for some
09:01  2    reason his flight is delayed -- he's in the air right now,
09:01  3    we believe -- then we may call Special Agent Bellis later
09:01  4    this morning.
09:01  5         MR. AVENATTI:  My understanding of the lineup
09:01  6    today is we're going to finish direct with Mr. Tran, cross.
09:01  7    We'll finish with Mr. Tran.  Then I believe they're going to
09:01  8    call Mr. Horoupian; is that right?
09:01  9         MR. WYMAN:  That's correct.
09:01 10         MR. AVENATTI:  Mr.  Horoupian will probably be up
09:01 11    and down in 40 minutes, Your Honor.  And then I believe they
09:01 12    intend on calling Mr. Bellis?
09:01 13         MR. WYMAN:  We intend to call David Sheikh if he
09:01 14    has arrived.  He had -- his flight was canceled from Chicago
09:01 15    yesterday.  If he's here in time -- I think his flight lands
09:01 16    at 10:40 -- we will put him on next.  But if he hasn't
09:01 17    arrived yet, we will call Special Agent Bellis, who is going
09:01 18    to be here.
09:01 19         MR. AVENATTI:  Let me suggest this, Your Honor.
09:01 20    It will at least take us to the morning break.  We can wait
09:02 21    until then.
09:02 22         THE COURT:  That's fine.
09:02 23              (Recess taken at 9:02 a.m.;
09:02 24              proceedings resumed at 9:10 a.m.)
09:02 25         (Jury present)

```
09:10   1              THE CLERK:  Item 1, SACR-19-00061-JVS, United
09:10   2   States of America versus Michael John Avenatti.
09:10   3              MR. WYMAN:  Good morning, Your Honor.  Alex Wyman
09:10   4   and Brett Sagel on behalf of the United States.  And with us
09:10   5   at counsel table is Special Agent Remoun Karlous.
09:11   6              THE COURT:  Good morning.
09:11   7              MR. AVENATTI:  Good morning, Your Honor.  Michael
09:11   8   Avenatti along with Mr. Steward, Ms. Cummings-Cefali, and
09:11   9   Ms. Hernandez.
09:11  10              THE COURT:  Good morning.
09:11  11              Good morning to you, ladies and gentlemen.
09:11  12              THE JURY:  Good morning.
09:11  13        LONG TRAN, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN
09:11  14              THE CLERK:  Sir, you are reminded that you are
09:11  15   still under the oath you took last week.
09:11  16              THE WITNESS:  I understand.
09:11  17              THE CLERK:  Thank you.
09:11  18              THE COURT:  Mr. Wyman.
09:11  19              MR. WYMAN:  Thank you, Your Honor.
09:11  20                   DIRECT EXAMINATION (Continued)
09:11  21   BY MR. WYMAN:
09:11  22   Q    Good morning, Mr. Tran.
09:11  23   A    Good morning.
09:11  24   Q    Mr. Tran, when we left off on Friday, we were
09:11  25   discussing Exhibit 280, which I believe we had just
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:11 1    introduced.  Do you see that?  It should be on the screen
09:11 2    and then also in Volume 4.
09:12 3    A    What was the exhibit number?
09:12 4    Q    280.
09:12 5    A    Okay.
09:12 6    Q    Focusing on the top e-mail, this is your e-mail from
09:12 7    Wednesday, April 25th of 2018; is that right?
09:12 8    A    Yes.
09:12 9    Q    What did you write there?
09:12 10   A    "Hi, Judy.  Can you please provide me with the Fed Ref
09:12 11   number for Michelle's wire from Monday.  Thanks."
09:12 12   Q    I think you said on Friday that Monday, April 23rd, was
09:12 13   the day that you received your wire payment from the
09:12 14   defendant; is that right?
09:12 15   A    Correct.
09:12 16   Q    In this e-mail here on Wednesday, April 25th, why are
09:12 17   you asking about the Fed Ref number for Michelle's wire?
09:12 18   A    She had not received her wire yet.
09:12 19   Q    And were you under the understanding that the defendant
09:13 20   had also sent a wire to Ms. Phan on Monday, April 23rd?
09:13 21   A    Yes.
09:13 22        MR. WYMAN:  Can we briefly go back to Exhibit 275,
09:13 23   and if we could please pull up the bottom portion under the
09:13 24   name Long Tran.
09:13 25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:13  1    BY MR. WYMAN:

09:13  2    Q    We talked about this e-mail on Friday.  Do you remember

09:13  3    that?

09:13  4    A    Yes.

09:13  5    Q    When you received your wire payment from the defendant

09:13  6    on April 23rd, was it for the entire amount listed here,

09:13  7    $147,972?

09:13  8    A    Yes.

09:13  9         MR. WYMAN:  And if we could please go up now to

09:13  10   the portion under Michelle Phan.

09:13  11   BY MR. WYMAN:

09:13  12   Q    When the defendant told you on April 23rd that he had

09:13  13   also sent a wire for Ms. Phan, did you expect it to be the

09:13  14   full amount listed here, for $8,146,288?

09:13  15        MR. AVENATTI:  Objection, Your Honor.  Lacks

09:13  16   foundation.

09:13  17        THE COURT:  Overruled.

09:13  18        THE WITNESS:  Yes.

09:13  19   BY MR. WYMAN:

09:13  20   Q    Did the defendant tell you it would be that full

09:14  21   amount?

09:14  22   A    Yes.

09:14  23   Q    If it was not going to be that full amount, would you

09:14  24   have expected him to tell you that?

09:14  25   A    Yes.

09:14  1    Q    When he told you that he would be wiring Ms. Phan her

09:14  2    8.1 approximately million dollars, did he tell you that

09:14  3    there was only about $4.1 million of Ms. Phan's money left?

09:14  4    A    No.

09:14  5    Q    And if that were truth, would you have expected him to

09:14  6    tell you that?

09:14  7    A    Yes.

09:14  8    Q    Okay.

09:14  9         MR. WYMAN:  Let's go back to Exhibit 280 now,

09:14  10   please.

09:14  11   BY MR. WYMAN:

09:14  12   Q    After your top e-mail, what was his response to you in

09:14  13   the middle?

09:14  14   A    "Please handle."

09:14  15   Q    And then let's look at the e-mail on the bottom there

09:14  16   on April 26.  In the second sentence you said, "Please

09:14  17   provide the Fed Ref number with immediacy."  And then you

09:15  18   say, "This is becoming very urgent."  What did you mean by

09:15  19   that?

09:15  20   A    That the wire had not been received yet, and I was

09:15  21   becoming concerned.

09:15  22   Q    In your next sentence, "There is $8 million of

09:15  23   Michelle's money in the ether somewhere, and we have been

09:15  24   given the runaround for over six weeks."  What did you mean

09:15  25   by that?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:15  1    A    There were just constant excuses of why the money

09:15  2    hadn't been sent yet.

09:15  3    Q    Who were those excuses coming from?

09:15  4    A    Mr. Avenatti.

09:15  5    Q    And when you said you had been given the runaround, who

09:15  6    were you saying had been giving you the runaround?

09:15  7    A    Mr. Avenatti and Judy Regnier.

09:15  8    Q    Did Ms. Phan receive the 8.1 million approximately that

09:15  9    she was owed on that day?

09:15  10   A    No.

09:16  11   Q    Could you please turn to Exhibit 281.

09:16  12            MR. WYMAN:  And, Your Honor, this is already in

09:16  13   evidence.

09:16  14   BY MR. WYMAN:

09:16  15   Q    Do you recognize this as an e-mail chain that you were

09:16  16   on with the defendant and Judy Regnier?

09:16  17   A    Yes.

09:16  18   Q    What is the date of this e-mail exchange, the top

09:16  19   e-mail?

09:16  20   A    April 30th, 2018.

09:16  21   Q    And what is the subject of the e-mail chain?

09:16  22   A    "Michelle wire."

09:16  23   Q    Can you please read the defendant's e-mail at the top

09:16  24   on April 30th.

09:16  25   A    "Judy, I know you are trying to dig out from last week,

09:16  1   but please get with Long and figure out what the issue is on

09:16  2   the CNB wire.  This needs to be a priority.  If I need to do

09:16  3   something or find a branch on the East Coast, let me know,

09:16  4   but I want this resolved.  Thanks."

09:16  5   Q    What did you understand the defendant to mean when he

09:16  6   said, "If I need to do something or find a branch on the

09:17  7   East Coast, let me know"?

09:17  8   A    My understanding is that he would need to physically be

09:17  9   at a bank branch to issue the wire.

09:17  10  Q    What was that understanding based on?

09:17  11  A    Based on what Mr. Avenatti told me.

09:17  12  Q    Moving to the second e-mail on this page, what did you

09:17  13  say in response to the defendant?

09:17  14  A    "Thanks, Michael.  Hi, Judy.  The wire hasn't come

09:17  15  through, and we can only trace it via the Fed Ref number.

09:17  16  Please provide ASAP so we can see where it got held up.

09:17  17  This is very urgent.  Thank you."

09:17  18  Q    And then at the bottom of the page, what was

09:17  19  Ms. Regnier's response?

09:17  20  A    "Long, I asked the bank to put a trace on it.  As soon

09:17  21  as I get the results, I will let you know ASAP."

09:17  22  Q    Please turn now to page 2.  It looks like you replied

09:18  23  on May 1st, that same day.  Do you see that?

09:18  24  A    Yes.

09:18  25  Q    What did you say there?

| | | |
|---|---|---|
| 09:18 | 1 | A     "Judy, please provide the tracking number so we can |
| 09:18 | 2 | trace on our end as well.  If you initiated the wire, you |
| 09:18 | 3 | should have that information readily available." |
| 09:18 | 4 | Q     And then lastly on this chain, what did the defendant |
| 09:18 | 5 | reply to that e-mail? |
| 09:18 | 6 | A     "Please handle." |
| 09:18 | 7 | Q     Did you receive the Fed Ref number from Ms. Regnier |
| 09:18 | 8 | that you requested? |
| 09:18 | 9 | A     No. |
| 09:18 | 10 | Q     And in the top e-mail of the first page that you just |
| 09:18 | 11 | read, when the defendant referred to the CNB wire, did you |
| 09:19 | 12 | understand the defendant to be referring to the wire to |
| 09:19 | 13 | Michelle Phan? |
| 09:19 | 14 | MR. AVENATTI:  Objection.  Leading. |
| 09:19 | 15 | THE COURT:  Sustained. |
| 09:19 | 16 | BY MR. WYMAN: |
| 09:19 | 17 | Q     If the defendant never sent a wire payment to Michelle |
| 09:19 | 18 | Phan on April 23rd, what did you understand he was talking |
| 09:19 | 19 | about here? |
| 09:19 | 20 | MR. AVENATTI:  Objection, Your Honor.  Lacks |
| 09:19 | 21 | foundation. |
| 09:19 | 22 | THE COURT:  Overruled. |
| 09:19 | 23 | THE WITNESS:  Please repeat the question. |
| 09:19 | 24 | BY MR. WYMAN: |
| 09:19 | 25 | Q     Sure.  If the defendant never sent a wire to Michelle |

09:19  1  Phan on April 23rd, what did you understand his e-mail would

09:19  2  be about?

09:19  3  A    That there was a problem with Michelle's wire.

09:19  4  Q    After this e-mail exchange on May 1st, did you reach

09:19  5  back out to Mr. Marchino about that missing wire payment?

09:20  6  A    Yes.

09:20  7  Q    And why did you reach out to Mr. Marchino?

09:20  8  A    Mr. Avenatti seemed very busy at the time, so I

09:20  9  contacted another associate at the firm.  I had a

09:20  10  relationship with Mr. Marchino.

09:20  11  Q    When you texted with Mr. Marchino, who if anyone did

09:20  12  you understand he would be sharing his communications with?

09:20  13  A    Mr. Avenatti.

09:20  14        MR. WYMAN:  Can we please go back to Exhibit 274.

09:20  15  BY MR. WYMAN:

09:20  16  Q    We discussed on Friday the text messages with

09:20  17  Mr. Marchino.  If you could please go to page 7 of that

09:20  18  exhibit.  At the top there it looks like you send

09:20  19  Mr. Marchino a text message on May 3rd.  What did you say

09:20  20  there?

09:20  21  A    "Please call me back ASAP."

09:21  22  Q    Do you remember what you were contacting Mr. Marchino

09:21  23  about on May 3rd?

09:21  24  A    About the missing wires.

09:21  25  Q    And what is Mr. Marchino's response?

09:21  1    A    "I put a call in.  Will have news shortly.  Hang tight

09:21  2    until tomorrow and I will get this sorted for you."

09:21  3    Q    When Mr. Marchino said he had put a call in, who did

09:21  4    you understand him to be saying he called?

09:21  5    A    Either Mr. Avenatti or Judy Regnier.

09:21  6    Q    Around this time in early May, did Ms. Phan receive

09:21  7    wire payments from the defendant?

09:21  8    A    As of May 3rd?

09:21  9    Q    Well, in early May.  At some point in early May, did

09:21  10   Ms. Phan receive wire payments from the defendant?

09:21  11   A    Yes, I believe it was early May.

09:21  12   Q    And how many wire payments did she receive?

09:21  13   A    Two.

09:21  14   Q    Approximately how much were these wire payments for?

09:22  15   A    One for 4 million and the second for approximately

09:22  16   146,000.

09:22  17   Q    Going to the top of page 8 of this exhibit, it looks

09:22  18   like Mr. Marchino writes to you on May 4th.  Do you see that

09:22  19   at the top?

09:22  20   A    Yes.

09:22  21   Q    What does he write to you there?

09:22  22   A    "Hi.  Did the other four arrive?"

09:22  23   Q    What did you understand him to mean by that?

09:22  24   A    The remainder of the 8.1 million, just 4 million.

09:22  25   Q    So when you say the remainder, what do you mean by the

09:22  1    remainder?

09:22  2    A    Of the 8.1 million only 4.1 million had been wired, so

09:22  3    there was still 4 million missing.

09:22  4    Q    And it looks like from your response lower on the page,

09:22  5    you said, "The banks are closed now.  We'll know first thing

09:23  6    on Monday"; is that right?

09:23  7    A    Yes.

09:23  8    Q    Then if we could go to page 12, it looks like it is now

09:23  9    May 7th.  What does your message say there towards the top?

09:23  10   A    "No sign of it.  Do you have the Fed Ref number for

09:23  11   tracking?"

09:23  12   Q    And what did you mean by that?

09:23  13   A    That the 4 million had still not been received.

09:23  14   Q    Let's go to the next page.  At the bottom of page 13,

09:23  15   what did Mr. Marchino write to you there?

09:23  16   A    "I just got text from bank.  We should have Fed Ref

09:23  17   number shortly."

09:23  18   Q    And at this time on May 9th, did you understand

09:23  19   Mr. Marchino to still be in contact with the defendant?

09:23  20   A    Yes.

09:24  21   Q    If we could turn to the next page, page 14.  The second

09:24  22   half of the page, what does Mr. Marchino write to you in his

09:24  23   message there?  And you can skip the long number.

09:24  24   A    "Please give this to Long.  This is what I received."

09:24  25   Q    What did you believe that number that he was sending

09:24  1  you was?

09:24  2  A    A Fed Ref number.

09:24  3  Q    And I think you said Friday that a Fed Ref number to

09:24  4  your understanding is like a tracking number for a wire?

09:24  5  A    Correct.

09:24  6  Q    And what did you write back?

09:24  7  A    "Thanks.  I will forward to my bank."

09:24  8  Q    Okay.  Now, on page 16 at the top, it looks like

09:25  9  Mr. Marchino asks you for news on May 10th; is that right?

09:25  10  A    Yes.

09:25  11  Q    And what is your response there?

09:25  12  A    "Bank is tracking.  Haven't heard back yet."

09:25  13  Q    And then a little bit further down, what did you say

09:25  14  there?

09:25  15  A    "That's not it."

09:25  16  Q    What did you mean by that?

09:25  17  A    That that was not a valid Fed Ref number.

09:25  18  Q    Go to page 17, please.  In the middle there it looks

09:25  19  like you get another text message from Mr. Marchino saying,

09:25  20  "Check your e-mail."  Do you see that?

09:25  21  A    Yes.

09:25  22  Q    What is the date of that text?

09:25  23  A    May 10th.

09:25  24  Q    Well, if you could focus on the top of the page, there

09:25  25  is a date below --

09:26   1    A    May 11th.

09:26   2    Q    May 11.

09:26   3         MR. WYMAN:  If we could please pull up what is

09:26   4    already in evidence as Exhibit 284 now.

09:26   5    BY MR. WYMAN:

09:26   6    Q    Do you recognize this as an e-mail exchange between you

09:26   7    and Filippo Marchino?

09:26   8    A    Yes.

09:26   9    Q    What is the date of this e-mail?

09:26   10   A    May 11th, 2018.

09:26   11   Q    So the same day as the text messages we were just

09:26   12   looking at?

09:26   13   A    Yes.

09:26   14   Q    What is the subject of this e-mail?

09:26   15   A    "Wire confirmation."

09:26   16   Q    If we could go back, it looks like Mr. Marchino is

09:26   17   forwarding you an e-mail; is that right?

09:26   18   A    Yes.

09:26   19   Q    Who is he forwarding you an e-mail from?

09:26   20   A    Mr. Avenatti.

09:26   21   Q    Why did you understand Mr. Marchino to be sending you

09:27   22   this e-mail?

09:27   23   A    Because I requested the Fed Ref number.

09:27   24   Q    If we could go to page 2 -- well, first, it looks like

09:27   25   there was an attachment to the e-mail that Mr. Marchino

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:27   1    forwarded you from the defendant; is that right?

09:27   2    A    Yes.

09:27   3    Q    And if we could go to page 2, what is that attachment?

09:27   4    A    It looks like a wire confirmation.

09:27   5    Q    And at the time you received it, what did you

09:27   6    understand it to be a wire confirmation for?

09:27   7    A    The second $4 million payment.

09:27   8    Q    To Ms. Phan?

09:27   9    A    Correct.

09:27   10   Q    I'm going to ask you to go back now to Exhibit 274,

09:27   11   your text message to Mr. Marchino, and page 17.  After in

09:28   12   the middle where Mr. Marchino wrote, "Check your e-mail,"

09:28   13   May 11th, what did you write in response?

09:28   14   A    "Great.  Thank you.  Will have our bank track this.

09:28   15   Much appreciated."

09:28   16   Q    When you wrote that, what did you expect your bank

09:28   17   would be able to do with the information in that attachment

09:28   18   that Mr. Marchino had forwarded to you?

09:28   19   A    That they would be able to track the wire.

09:28   20   Q    And were you able to track that missing $4 million wire

09:28   21   payment?

09:28   22   A    Not for the second 4 million.

09:28   23   Q    What do you mean by that?

09:28   24   A    It was the tracking number for the first 4 million.

09:28   25   Q    You said a few minutes ago that in early May, the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:28  1    defendant sent two wire payments to Ms. Phan, one for

09:28  2    4 million and then one for approximately 146,000.  Are you

09:29  3    saying that that attachment related to that $4 million

09:29  4    transfer?

09:29  5    A    Yes.

09:29  6              MR. WYMAN:  Could we please go now to Exhibit 285.

09:29  7              I believe it's also in evidence, Your Honor.

09:29  8    BY MR. WYMAN:

09:29  9    Q    Do you recognize Exhibit 285 as an e-mail that you sent

09:29  10   to Mr. Marchino on that same day, May 11th, 2018?

09:29  11   A    Yes.

09:29  12   Q    What did you write to him at the top?

09:29  13   A    "Your side will need to call in to get the tracking

09:29  14   number.  It's not on the sheet which we verified with your

09:29  15   bank."

09:29  16   Q    Why are you sending this e-mail to Mr. Marchino?

09:29  17   A    I forwarded him the e-mail from Boston Private bank,

09:29  18   which is Michelle's bank, because I wanted to show him that

09:29  19   what they're -- basically showing him what they're asking

09:30  20   for to track the wire.

09:30  21   Q    Okay.  Now let's go back again to Exhibit 274 at

09:30  22   page 19.  At the top there it looks like it's still

09:30  23   May 11th.  You write, "Please check your e-mail."  Is that a

09:30  24   reference to the e-mail we just reviewed?

09:30  25   A    Yes.

09:30  1  Q    How did Mr. Marchino respond?

09:30  2  A    It says, "The IMAD is the number of yesterday, no?"

09:30  3  Q    And after that long number that he provides again, what

09:30  4  does he say in the rest of the text?

09:30  5  A    "That's what I have from yesterday."

09:30  6  Q    When Mr. Marchino provided you with bank information

09:31  7  like this, where did you understand he was getting that

09:31  8  information?

09:31  9  A    Either Mr. Avenatti or City National Bank.

09:31  10  Q    Did the number that he provided you here enable you to

09:31  11  find that missing $4 million wire payment?

09:31  12  A    No.

09:31  13  Q    Let's go to page 22, now, please.  It looks like it's

09:31  14  still May 11th.  What does your text message at the top here

09:31  15  say?

09:31  16  A    "Your bank is not cooperating much with our bank.  They

09:31  17  can only verify that it's a valid IMAD.  Could be from the

09:31  18  first 4 million, so we need to get both IMAD numbers to

09:31  19  reference both 4 million transactions.  The only Fed Ref we

09:31  20  have is" -- these two numbers.  "Need second one of these as

09:32  21  well."

09:32  22  Q    In the first sentence when you said, "Your bank is not

09:32  23  cooperating much with our bank," what did you mean by that?

09:32  24  A    That our representative of Boston Private bank had

09:32  25  contacted City National Bank to try to track this wire.

09:32  1    Q    And in the remainder of the text message, what do you

09:32  2    mean by the rest of your message there to Mr. Marchino?

09:32  3    A    That they can only verify that it's a valid tracking

09:32  4    number, but they won't give us any more information than

09:32  5    that.

09:32  6    Q    And when you say, "Could be from the first 4M," what

09:32  7    does that mean?

09:32  8    A    That we never got the Fed Ref number for the first one,

09:32  9    so presumably that IMAD number is for the first one.

09:32  10   Q    And when you said the first 4M, when you wrote that

09:33  11   text message, did you still believe that there had been two

09:33  12   $4 million wire transfers?

09:33  13   A    I did.

09:33  14   Q    Would you please go down to page 24.  Still May 11th;

09:33  15   is that right?

09:33  16   A    Yes.

09:33  17   Q    In the middle there it looks like Mr. Marchino text

09:33  18   messages you, "Can you use what I e-mailed you earlier?"  Do

09:33  19   you see that?

09:33  20   A    Yes.

09:33  21   Q    And what is your response?

09:33  22   A    "No.  It is only a receipt.  No IMAD or Fed Ref on it."

09:33  23   Q    And if we could go to the next page, would you mind

09:33  24   please reading the remainder of your response.

09:33  25   A    "You would need to authorize your bank to talk to ours.

09:33    1    They won't let us through as we are not the client."

09:33    2    Q    What did Mr. Marchino write back to that?

09:34    3    A    "But you have the Fed Ref."

09:34    4    Q    And the rest of it?

09:34    5    A    "And it's not my bank.  It's Michael's bank."

09:34    6    Q    And then on the next page in the middle, what is your

09:34    7    response to Mr. Marchino?

09:34    8    A    "There should be a total of three ref numbers for the

09:34    9    individual transactions of 4 million, 4 million, 168,000.

09:34   10    Q    Then we're not going to go over each of the pages, but

09:34   11    over the next few pages it appears that you and Mr. Marchino

09:34   12    continue to go back and forth about the information that

09:34   13    you're missing; is that fair?

09:34   14    A    Yes.

09:34   15            MR. WYMAN:  If we could skip ahead to page 31,

09:34   16    please.

09:34   17    BY MR. WYMAN:

09:34   18    Q    What did you write in the middle there to Mr. Marchino?

09:34   19    A    "But this is why it would be good to authorize the

09:35   20    banks to speak to each other and figure it out."

09:35   21    Q    And what did Mr. Marchino write in response?

09:35   22    A    "I have texted Michael but nothing so far."

09:35   23    Q    On May 11th after all this back and forth over text

09:35   24    messages and e-mails, were you able to locate that missing

09:35   25    second $4 million wire payment?

| | | |
|---|---|---|
| 09:35 | 1 | A    No. |
| 09:35 | 2 | Q    Please go to page 35 now toward the end of the exhibit. |
| 09:35 | 3 | It looks like it's now May 14th, and you are asking for an |
| 09:35 | 4 | update.  Do you see that? |
| 09:35 | 5 | A    Yes. |
| 09:35 | 6 | Q    What were you asking for an update on? |
| 09:35 | 7 | A    On the wire. |
| 09:35 | 8 | Q    And what is Mr. Marchino's response? |
| 09:35 | 9 | A    "Hey, sorry.  None.  Checking now." |
| 09:35 | 10 | Q    Who did you understand him to be checking with when he |
| 09:35 | 11 | said that? |
| 09:35 | 12 | A    With the firm. |
| 09:36 | 13 | Q    Which firm? |
| 09:36 | 14 | A    Eagan Avenatti. |
| 09:36 | 15 | Q    Lastly on this exhibit, top of page 36, what did you |
| 09:36 | 16 | write there? |
| 09:36 | 17 | A    "What about Michael or anybody else from your office? |
| 09:36 | 18 | I can't wait any longer on this." |
| 09:36 | 19 | Q    Were you ever able to locate that missing second |
| 09:36 | 20 | $4 million wire payment from the defendant? |
| 09:36 | 21 | A    No. |
| 09:36 | 22 | Q    To your knowledge was there ever a second $4 million |
| 09:36 | 23 | wire payment? |
| 09:36 | 24 | A    No. |
| 09:36 | 25 | Q    During this time period between March and May of 2018 |

```
09:36    1    when you were communicating with the defendant and
09:36    2    Mr. Marchino about finding that wire transfer, did the
09:36    3    defendant ever say that Michelle Phan was only owed
09:36    4    4.146 million from the second set of payments?
09:37    5    A    No.
09:37    6    Q    In any of your communications during that time, did the
09:37    7    defendant ever tell you that he had already spent $4 million
09:37    8    from Michelle Phan's second payment from IPSY?
09:37    9    A    No.
09:37   10         MR. AVENATTI:  Objection, Your Honor.  Assuming
09:37   11    guilt hypothetical, argumentative.
09:37   12         THE COURT:  Overruled.
09:37   13    BY MR. WYMAN:
09:37   14    Q    The answer was no?
09:37   15    A    No.
09:37   16    Q    Would you have expected him to tell you that?
09:37   17    A    Yes.
09:37   18         MR. AVENATTI:  Same objections, Your Honor.
09:37   19         THE COURT:  Overruled.
09:37   20    BY MR. WYMAN:
09:37   21    Q    Why would you have expected him to tell you that?
09:37   22         MR. AVENATTI:  Same objections.
09:37   23         THE COURT:  Overruled.
09:37   24         THE WITNESS:  Because that is Michelle's money.
        25
```

09:37  1   BY MR. WYMAN:

09:37  2   Q    At some point did you file a police report about this?

09:37  3   A    Yes.

09:37  4   Q    Approximately when was that?

09:37  5   A    I believe it was the fall of that same year.

09:37  6   Q    2018?

09:37  7   A    Yes.

09:38  8   Q    And which law enforcement agency did you file a report

09:38  9   with?

09:38  10  A    Newport Beach Police Department.

09:38  11  Q    To your knowledge did Ms. Phan ever receive the

09:38  12  remaining $4 million that she was owed by the defendant?

09:38  13  A    No.

09:38  14  Q    Prior to March 2019 did you have any idea what happened

09:38  15  to that money?

09:38  16  A    No.

09:38  17  Q    Okay.  I'm going to ask you a few final questions based

09:38  18  on your role as Ms. Phan's business partner and chief

09:38  19  operating officer.  You testified on Friday, I believe, that

09:38  20  you are generally familiar with the law firms, businesses,

09:38  21  and individuals that she transacted with; is that correct?

09:38  22  A    Yes.

09:38  23  Q    To your knowledge has Ms. Phan ever hired a law firm

09:39  24  called Sulmeyer & Kupetz?

09:39  25  A    Not that I have heard of.

| | | |
|---|---|---|
| 09:39 | 1 | Q    Had she ever had business dealings with a company |
| 09:39 | 2 | called Global Baristas? |
| 09:39 | 3 | A    No. |
| 09:39 | 4 | Q    Does she have any affiliation with an entity called |
| 09:39 | 5 | Passport 420? |
| 09:39 | 6 | A    No. |
| 09:39 | 7 | Q    To your knowledge does she have any financial |
| 09:39 | 8 | relationship with an individual named Geoffrey Johnson? |
| 09:39 | 9 | A    No. |
| 09:39 | 10 | Q    Does she have any financial relationship with an |
| 09:39 | 11 | individual named Alexis Gardner? |
| 09:39 | 12 | A    No. |
| 09:39 | 13 | Q    How about Gregory Barela or the entity Waypoint -- |
| 09:39 | 14 | A    No. |
| 09:39 | 15 | Q    As Ms. Phan's business partner and COO, did you ever |
| 09:39 | 16 | authorize the defendant to use Michelle Phan's money to pay |
| 09:39 | 17 | the defendant's creditors? |
| 09:39 | 18 | A    No. |
| 09:39 | 19 | Q    Did you ever authorize the defendant to use Michelle |
| 09:39 | 20 | Phan's money to pay for his coffee business? |
| 09:39 | 21 | A    No. |
| 09:40 | 22 | Q    How about the defendant's other clients? |
| 09:40 | 23 | A    No. |
| 09:40 | 24 | Q    His law firm? |
| 09:40 | 25 | A    No. |

| 09:40 | 1 | Q    Did you ever authorize the defendant to use Michelle |
|---|---|---|
| 09:40 | 2 | Phan's money to pay anyone else besides her? |
| 09:40 | 3 | A    No. |
| 09:40 | 4 | Q    To your knowledge did Michelle Phan ever authorize the |
| 09:40 | 5 | defendant to use her money for anything else besides paying |
| 09:40 | 6 | her what she was owed? |
| 09:40 | 7 | A    No. |
| 09:40 | 8 | MR. WYMAN:  Thank you.  No further questions. |
| 09:40 | 9 | THE COURT:  Mr. Avenatti. |
| 09:40 | 10 | CROSS-EXAMINATION |
| 09:40 | 11 | BY MR. AVENATTI: |
| 09:41 | 12 | Q    Mr. Tran, good morning. |
| 09:41 | 13 | A    (No response) |
| 09:41 | 14 | Q    You have to answer audibly. |
| 09:41 | 15 | A    Good morning. |
| 09:41 | 16 | Q    I want to ask you questions about a number of exhibits |
| 09:41 | 17 | and a number of topics.  First I want to start with |
| 09:41 | 18 | Exhibit 265.  Could you please turn to Exhibit 265. |
| 09:41 | 19 | A    (Witness complies.) |
| 09:41 | 20 | Q    Sir, do you have 265? |
| 09:41 | 21 | A    Yes. |
| 09:41 | 22 | Q    You were asked some questions by Mr. Wyman relating to |
| 09:41 | 23 | Exhibit 265.  Do you recall that generally on Friday?  I |
| 09:41 | 24 | know it seems a long time ago. |
| 09:42 | 25 | A    Yes. |

09:42   1   Q    And do you have a recollection that we first met

09:42   2   relating to this transaction in early February of 2017?  Do

09:42   3   you remember that?

09:42   4   A    Yes.

09:42   5   Q    And we met at my office; is that right?

09:42   6   A    I believe so.

09:42   7   Q    Okay.  And who was present?

09:42   8   A    On what date?

09:42   9   Q    On that first date, February -- well, strike that.  You

09:42   10  see 265 here at the top?

09:42   11          MR. AVENATTI:  Let's blow up the top e-mail for

09:42   12  the benefit of the jury, please.

09:42   13  BY MR. AVENATTI:

09:42   14  Q    Do you see at the top where it says "Hi, guys.  Thanks

09:42   15  for taking the time."  Do you see that?

09:42   16  A    Yes.

09:42   17  Q    All right.  Does that refresh your recollection that

09:42   18  you sent this e-mail almost immediately after we had a

09:42   19  meeting in my office about this potential transaction?

09:43   20  A    I actually don't recall meeting at your office then.

09:43   21  Q    Do you have a recollection that this e-mail you sent

09:43   22  shortly after us discussing your desire and Ms. Phan's

09:43   23  desire for an exit from IPSY, correct?

09:43   24  A    At this time we were discussing the purchase of EM

09:43   25  Cosmetics.

09:43  1   Q    It's your testimony that you were not interested nor

09:43  2   was Ms. Phan interested at that time in exiting IPSY,

09:43  3   meaning getting paid for your equity?  Is that your

09:43  4   testimony, sir?

09:43  5   A    Oh, we were interested in that as well.

09:43  6   Q    In fact, that was Ms. Phan's and your chief interest,

09:43  7   right?  You wanted to get paid your money.  You wanted to

09:44  8   exit IPSY because you were dissatisfied and Ms. Phan was

09:44  9   dissatisfied, right?

09:44  10  A    Yes.

09:44  11  Q    And the problem was that because IPSY wasn't publicly

09:44  12  traded, they had no obligation to pay you your equity,

09:44  13  right?

09:44  14  A    Yes.

09:44  15  Q    And a very contentious situation had developed between

09:44  16  Ms. Phan and the executives at IPSY; isn't that right?

09:44  17         MR. WYMAN:  Objection.  The Court's prior ruling

09:44  18  on the underlying facts.

09:44  19         THE COURT:  Sustained.

09:44  20  BY MR. AVENATTI:

09:44  21  Q    Now, in response to our initial communications, you

09:44  22  requested that I represent you and Ms. Phan, correct?

09:45  23  A    Yes.

09:45  24  Q    And during those initial communications that we had,

09:45  25  before I would agree to represent you and Ms. Phan in this

09:45  1    contentious situation, I asked you for various information,

09:45  2    correct?

09:45  3    A    Yes.

09:45  4    Q    And that's what this e-mail is; is it not?  This is

09:45  5    your e-mail to me forwarding some of the information that I

09:45  6    had asked for?

09:45  7    A    Yes.

09:45  8    Q    One of the things I had asked for in item three --

09:45  9    strike that.  One of the things I asked for when we met was

09:45  10   that I wanted to see a cap table.  Do you remember that?

09:46  11   A    I don't recall.

09:46  12   Q    Well, you see here in item three you specifically state

09:46  13   "Have not seen the cap table to verify."  Do you see that?

09:46  14   A    Yes.

09:46  15   Q    And you understand that a cap table, otherwise known as

09:46  16   a capitalization table, is a chart that lists all the people

09:46  17   that own stock in a company and how much they own and their

09:46  18   percentage of ownership; and if there's different types of

09:46  19   ownership, it will list that as well.  You understand that,

09:46  20   right?

09:46  21   A    Yes.

09:46  22   Q    Then later in the e-mail you sent additional

09:46  23   documentation for me to review in connection with my

09:46  24   determination as to whether I would agree to represent you

09:46  25   and Michelle, right?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:46  1   A     Could you repeat that, please.

09:46  2          MR. AVENATTI:  May I have it read back, Your

09:46  3   Honor?

09:46  4          THE COURT:  You may.

09:46  5          (Record read)

09:46  6          THE WITNESS:  I recall that at this time we were

09:47  7   seeking advice.

09:47  8   BY MR. AVENATTI:

09:47  9   Q     You were seeking advice as to what you or Michelle

09:47  10  could do to accomplish your goals, right?

09:47  11  A     Correct.

09:47  12  Q     And your goals, your collective goals, were to

09:47  13  liquidate your equity, meaning get paid a lot of money, for

09:47  14  your interest in IPSY.  That was one of your goals, right?

09:47  15  A     Yes.

09:47  16  Q     And the second goal was for Michelle to get EC

09:47  17  Cosmetics, right?

09:47  18  A     EM Cosmetics.

09:48  19  Q     EM Cosmetics.  And Michelle wanted EM Cosmetics because

09:48  20  she wanted to take EM Cosmetics and go develop it and make

09:48  21  it successful, right?

09:48  22          MR. WYMAN:  Objection.  Relevance.

09:48  23          THE COURT:  Overruled.

09:48  24          THE WITNESS:  Yes.

09:48  25          MR. AVENATTI:  And if we go to the e-mail below,

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:48  1    the top e-mail, Ms. Hernandez.

09:48  2    BY MR. AVENATTI:

09:48  3    Q    Do you remember that this was an ongoing process,

09:48  4    meaning from time to time I would ask you for additional

09:48  5    documents and you would send additional documents in

09:48  6    connection with the advice that you were seeking?

09:48  7    A    Yes.

09:48  8    Q    And this went on for a number of weeks and months; did

09:48  9    it not?

09:48  10   A    Yes.

09:48  11   Q    Because between the time that we initially met and the

09:49  12   time that I approached IPSY, many months passed; did they

09:49  13   not?

09:49  14   A    Yes.

09:49  15   Q    And one of the reasons why many months passed was

09:49  16   because you and Michelle were figuring out exactly how you

09:49  17   wanted to handle approaching IPSY for this liquidation,

09:49  18   right?

09:49  19   A    One of the reasons, yes.

09:49  20   Q    This was not a situation where you came; you met with

09:49  21   me; I said please sign here; and then the next day we did

09:49  22   the transaction with IPSY; was it?

09:50  23   A    No.

09:50  24   Q    Do you recall when we first approached IPSY.  Well,

09:50  25   strike that.  Do you recall when I first approached IPSY?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:50   1   A     August 16th, 2017.

09:50   2   Q     About six months after we had initially met in

09:50   3   February, right?

09:50   4   A     Yes.

09:50   5   Q     And how did we approach IPSY?

09:50   6   A     You flew to San Francisco to speak directly with

09:50   7   Marcelo.

09:50   8   Q     With the CEO, Mr. -- what was his name again?  Do you

09:50   9   remember?

09:50   10  A     Marcelo Camberos.

09:50   11  Q     You and I went to sit down with Mr. Camberos in an

09:50   12  effort to convince him to accomplish your goals relating to

09:51   13  EM Cosmetics and getting paid a lot of money, right?

09:51   14  A     Yes.

09:51   15  Q     And at that meeting did the CEO of IPSY say:  No

09:51   16  problem.  We'll give you EM Cosmetics and we'll pay you over

09:51   17  $30 million?  Is that what happened?

09:51   18              MR. WYMAN:  Objection, 403, and the Court's prior

09:51   19  ruling.

09:51   20              THE COURT:  Sustained.

09:51   21  BY MR. AVENATTI:

09:51   22  Q     Now, ultimately some documents were entered into in

09:51   23  order to accomplish your goals and Ms. Phan's goals relating

09:51   24  to this transaction; is that right?

09:51   25  A     Yes.

09:52    1    Q     And if you look at Exhibit 268, this is one of the
09:52    2    documents that Mr. Wyman asked you about.
09:52    3              MR. AVENATTI:  Maybe we can blow it up at the top
09:52    4    for the benefit the jury, please, together with the first
09:52    5    paragraph.
09:52    6    BY MR. AVENATTI:
09:52    7    Q     Can you see that, sir?
09:52    8    A     Yes.
09:52    9    Q     And when was this document -- well, strike that.  What
09:52   10    is this document?
09:52   11    A     Common stock repurchase agreement.
09:52   12    Q     This related to Ms. Phan, correct?
09:52   13    A     Yes.
09:52   14    Q     Did you have one similar?
09:52   15    A     Yes.
09:52   16    Q     And I think that was at 296.
09:52   17              MR. AVENATTI:  If you could just turn to 296,
09:52   18    Ms. Hernandez.  Why don't we just keep this one up for the
09:53   19    benefit of the jury.
09:53   20    BY MR. AVENATTI:
09:53   21    Q     Is 296 your similar agreement?
09:53   22    A     Yes.
09:53   23    Q     Now, going back to 268 at the top, what's the date of
09:53   24    this common stock purchase agreement?
09:53   25    A     September 17th, 2017.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

54

09:53  1    Q    So at this point we are about seven months after we

09:53  2    initially met, correct?

09:53  3    A    Yes.

09:53  4    Q    Now, thus far we have two documents relating to this

09:53  5    transaction.  We have a common stock purchase agreement for

09:53  6    Ms. Phan and we have a common stock purchase agreement for

09:53  7    you, right?  That's Exhibits 268 and 296, correct?

09:54  8    A    Yes.

09:54  9    Q    But these aren't all the transaction documents relating

09:54  10   to this transaction; are they?

09:54  11   A    No.

09:54  12   Q    There were a number of other documents relating to the

09:54  13   deal that I negotiated for you and Ms. Phan, right?

09:54  14   A    Yes.

09:54  15   Q    What other documents were there?

09:54  16   A    Asset purchase agreements, transition services,

09:54  17   separation release.

09:54  18   Q    And the asset purchase agreement, that was an agreement

09:54  19   whereby Ms. Phan was able to acquire EM Cosmetics, right?

09:54  20   A    Correct.

09:54  21   Q    And that was one of the things that she got in the

09:54  22   deal, right?

09:54  23   A    Yes.

09:54  24   Q    As part of the deal they accommodated Ms. Phan's

09:54  25   request that she take over that company and be able to run

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:55  1   it, right?

09:55  2   A    Yes.

09:55  3   Q    If you look at the bottom of the common stock purchase

09:55  4   agreement, we will use 268 -- well, strike that.  Let me ask

09:55  5   you a different question.

09:55  6           These common stock purchase agreements, they're

09:55  7   basically identical with the exception of your name and

09:55  8   Ms. Phan's name being interchanged as well as the amount of

09:55  9   equity that you were selling; is that right?

09:55  10  A    Yes.

09:55  11  Q    All right.  Now, if at any point in time I ask you

09:55  12  about one and you believe that the other one is different, I

09:55  13  want you to tell me that, okay?

09:55  14  A    Okay.

09:55  15  Q    All right.  So let's take a look at the bottom of

09:55  16  page 1 of Exhibit 268.

09:56  17  A    Okay.

09:56  18           MR. AVENATTI:  Maybe we could blow that up for the

09:56  19  benefit of the jury, please.

09:56  20  BY MR. AVENATTI:

09:56  21  Q    Can you see that, sir?

09:56  22  A    Yes.

09:56  23  Q    The agreements that you and Ms. Phan entered into

09:56  24  provided that the money for your shares, your shares and

09:56  25  Ms. Phan's shares, were going to be -- that money was going

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:56  1   to be made in multiple disbursements, correct?

09:56  2   A    In two payments, yes.

09:56  3   Q    Multiple disbursements, correct?

09:56  4   A    Yes.

09:56  5        MR. AVENATTI:  Your Honor, one moment, please.

09:57  6        (Pause in proceedings)

09:57  7   BY MR. AVENATTI:

09:57  8   Q    And included among these multiple disbursements were

09:58  9   these payments on a sheet here that Mr. Wyman asked you

09:58  10  about, correct?

09:58  11  A    Yes.

09:58  12  Q    Five total disbursements totaling over 37 million

09:58  13  dollars, right?

09:58  14  A    Yes.

09:58  15  Q    Now, when the first set of multiple disbursements came

09:58  16  in as part of the stock purchase agreement in September of

09:58  17  2017, some of that money was paid to Divinium Labs, LLC,

09:58  18  from my trust account, correct?

09:59  19  A    Yes.

09:59  20  Q    And do you recall that out of those first multiple

09:59  21  disbursements, you received your money and Ms. Phan -- not

09:59  22  Michelle but her sister, right?

10:00  23  A    Sister-in-law.

10:00  24  Q    Right, her sister-in-law.  You received your money

10:00  25  right away, correct?

| | | |
|---|---|---|
| 10:00 | 1 | A    Yes. |
| 10:00 | 2 | Q    And Michelle's money was not sent right away, correct? |
| 10:00 | 3 | A    Yes. |
| 10:00 | 4 | Q    Now, you were interviewed by the government in |
| 10:00 | 5 | connection with this case in April of 2019.  Do you remember |
| 10:00 | 6 | that? |
| 10:00 | 7 | A    Yes. |
| 10:00 | 8 | Q    And Mr. Karlous was present, right? |
| 10:00 | 9 | A    Yes. |
| 10:00 | 10 | Q    Mr. Sagel, correct? |
| 10:00 | 11 | A    Yes. |
| 10:00 | 12 | Q    Mr. Sagel's colleague, Mr. Andre, another Assistant |
| 10:00 | 13 | U.S. Attorney; is that right? |
| 10:00 | 14 | A    Yes. |
| 10:00 | 15 | Q    And Mr. James Kim, a special agent.  Do you remember |
| 10:00 | 16 | that? |
| 10:00 | 17 | A    Yes. |
| 10:00 | 18 | Q    Isn't it true what when you were interviewed on that |
| 10:00 | 19 | day, April 4th, 2019, you told the agents and the Assistant |
| 10:01 | 20 | U.S. Attorneys that you didn't know why Michelle Phan's |
| 10:01 | 21 | money was delayed from that payment?  Isn't it true you told |
| 10:01 | 22 | them that, sir?  Yes or no? |
| 10:01 | 23 | A    I don't recall. |
| 10:01 | 24 | Q    Now, do you recall at the beginning of the meeting that |
| 10:01 | 25 | you had with the agents that they told you that it was |

| | | |
|---|---|---|
| 10:01 | 1 | important that you told them the truth and that if you were |
| 10:01 | 2 | not honest with them, you could be charged with a crime? |
| 10:01 | 3 | A    I don't recall them saying that. |
| 10:01 | 4 | Q    You don't recall Assistant U.S. Attorney Julian Andre |
| 10:01 | 5 | telling you that it was important that you answered all of |
| 10:01 | 6 | their questions truthfully and completely to the best of |
| 10:01 | 7 | your ability and advising you that you could be potentially |
| 10:02 | 8 | charged with a crime if you lied to federal law enforcement |
| 10:02 | 9 | agents?  You don't recall them telling you that? |
| 10:02 | 10 | MR. WYMAN:  Objection.  Asked and answered. |
| 10:02 | 11 | THE COURT:  Sustained. |
| 10:02 | 12 | MR. AVENATTI:  Your Honor, can I approach? |
| 10:02 | 13 | THE COURT:  You may. |
| 10:02 | 14 | (Document handed to the witness) |
| 10:02 | 15 | BY MR. AVENATTI: |
| 10:02 | 16 | Q    Mr. Tran, please take a look at the first paragraph on |
| 10:02 | 17 | the first page.  My question is:  Does that refresh your |
| 10:02 | 18 | recollection that in fact you were told when you met with |
| 10:02 | 19 | the government in April that you had to tell them the truth |
| 10:03 | 20 | and you could be charged with a crime if you failed to do |
| 10:03 | 21 | so? |
| 10:03 | 22 | A    I remember the first part of that.  I don't remember |
| 10:03 | 23 | them telling me that I could be charged with a crime, but it |
| 10:03 | 24 | looks like it's in the transcript, so -- |
| 10:03 | 25 | Q    Do you dispute that they told you that? |

```
10:03   1    A    I'm not disputing it.
10:03   2    Q    And when you met with them, you understood that it was
10:03   3    important that you be accurate in response to their
10:03   4    questions, right?
10:03   5    A    Yes.
10:03   6    Q    You understood that it was a serious matter that they
10:03   7    were meeting you on, right?
10:03   8    A    Yes.
10:04   9    Q    Isn't it true that you told the Assistant U.S.
10:04   10   Attorneys and the agents at that time that you did not know
10:04   11   why Michelle Phan's money was not paid immediately?
10:04   12              MR. WYMAN:  Again, asked and answered.
10:04   13              THE COURT:  Overruled.
10:04   14              THE WITNESS:  I may have said that at the time.
10:04   15   BY MR. AVENATTI:
10:04   16   Q    Take a look at paragraph 22 and tell me if that
10:04   17   refreshes your recollection that in fact that is exactly
10:04   18   what you said.
10:04   19   A    It looks familiar.
10:05   20   Q    So isn't it true that that's what you told them?  Yes
10:05   21   or no?
10:05   22   A    Yes.
10:05   23   Q    I'm sorry?
10:05   24   A    Yes.
10:05   25   Q    Okay.  Now, Mr. Tran, you knew exactly why Ms. Phan's
```

| | | |
|---|---|---|
| 10:05 | 1 | money was not paid immediately upon the first set of |
| 10:05 | 2 | payments; didn't you?  Yes or no? |
| 10:05 | 3 | A     Please ask that again. |
| 10:05 | 4 | MR. AVENATTI:  Can I have it read back, Your |
| 10:05 | 5 | Honor? |
| 10:05 | 6 | THE COURT:  You may. |
| 10:05 | 7 | (Record read) |
| 10:05 | 8 | MR. WYMAN:  Objection.  Vague as to time. |
| 10:05 | 9 | THE COURT:  Overruled. |
| 10:05 | 10 | THE WITNESS:  At the time I didn't. |
| 10:05 | 11 | BY MR. AVENATTI: |
| 10:06 | 12 | Q     And the reason why the first money was not paid |
| 10:06 | 13 | immediately to Michelle Phan was because you and Ms. Phan |
| 10:06 | 14 | and Ms. Phan's business advisors didn't want the money paid |
| 10:06 | 15 | immediately to her because of tax reasons; isn't that right? |
| 10:06 | 16 | A     Yes. |
| 10:06 | 17 | Q     And, in fact, you and Ms. Phan and her business |
| 10:06 | 18 | advisors asked me not to pay the money immediately because |
| 10:06 | 19 | of tax reasons; isn't that right?  Yes or no, sir? |
| 10:06 | 20 | A     That's not really a yes-or-no question. |
| 10:06 | 21 | Q     Sir, isn't it true that in an effort to avoid paying |
| 10:06 | 22 | taxes on the majority of the money received in the first |
| 10:06 | 23 | tranche, you asked that a company be set up so that the |
| 10:07 | 24 | money could be sheltered in the company in order to avoid |
| 10:07 | 25 | federal income taxes?  Isn't that true, Mr. Tran?  Yes or |

| | | |
|---|---|---|
| 10:07 | 1 | no? |
| 10:07 | 2 |         MR. WYMAN:  Objection.  Argumentative. |
| 10:07 | 3 |         THE COURT:  Overruled. |
| 10:07 | 4 |         MR. WYMAN:  Compound. |
| 10:07 | 5 |         THE COURT:  Overruled. |
| 10:07 | 6 |         THE WITNESS:  That was your suggestion. |
| 10:07 | 7 |         MR. AVENATTI:  Move to strike, Your Honor. |
| 10:07 | 8 |         THE COURT:  It will be stricken. |
| 10:07 | 9 | BY MR. AVENATTI: |
| 10:07 | 10 | Q    Mr. Tran, you don't have a recollection of you and |
| 10:07 | 11 | Ms. Phan asking to set up a company that could receive the |
| 10:07 | 12 | money?  Yes or no? |
| 10:07 | 13 | A    No. |
| 10:07 | 14 | Q    At any point in time did you or Ms. Phan ask that my |
| 10:07 | 15 | office establish Divinium Labs, LLC, for receipt of the |
| 10:07 | 16 | money? |
| 10:07 | 17 | A    Yes. |
| 10:07 | 18 | Q    And you understood that the purpose of setting up |
| 10:07 | 19 | Divinium Labs, LLC, was that it would enable Ms. Phan to |
| 10:08 | 20 | avoid paying income taxes on approximately $20 million?  You |
| 10:08 | 21 | understood that at the time; did you not?  Yes or no? |
| 10:08 | 22 | A    Again, that's not a yes-or-no question. |
| 10:08 | 23 | Q    Sir, did you understand at the time that Divinium Labs |
| 10:08 | 24 | was established -- that the establishment of the company |
| 10:08 | 25 | would enable Michelle Phan to avoid paying income taxes on |

| | | |
|---|---|---|
| 10:08 | 1 | $20 million?  Did you understand that?  Yes or no? |
| 10:08 | 2 | A     Yes. |
| 10:08 | 3 | Q     And you understood that until that company was set up, |
| 10:08 | 4 | Michelle Phan's money would have to sit in the trust |
| 10:08 | 5 | account.  You understood that, right? |
| 10:08 | 6 | A     Yes. |
| 10:08 | 7 | Q     And that was the reason why Michelle Phan's money was |
| 10:09 | 8 | not paid immediately; isn't it? |
| 10:09 | 9 | A     Yes. |
| 10:09 | 10 | Q     And after Divinium Labs, LLC, was established at the |
| 10:09 | 11 | request of you and Ms. Phan, a bank account had to be |
| 10:09 | 12 | established, right? |
| 10:09 | 13 | A     Yes. |
| 10:09 | 14 | Q     And that took a few days; did it not? |
| 10:09 | 15 | A     Yes. |
| 10:09 | 16 | Q     Did I have anything to do with establishing that bank |
| 10:09 | 17 | account? |
| 10:09 | 18 | A     No. |
| 10:09 | 19 | Q     Who did that? |
| 10:09 | 20 | A     Michelle's financial managers. |
| 10:10 | 21 | Q     Now let's talk about the second set of disbursements. |
| 10:10 | 22 | Let's go to 273.  Now, if you look at the bottom e-mail, |
| 10:11 | 23 | this is one of the exhibits the government asked you about |
| 10:11 | 24 | on direct.  There is an e-mail here on the bottom, March 8, |
| 10:11 | 25 | 2018.  It starts, "Hi, Michael." |

| | | |
|---|---|---|
| 10:11 | 1 | A    Yes. |
| 10:11 | 2 | Q    And this was forwarding an e-mail that you had received |
| 10:11 | 3 | from IPSY about their desire to make the second set of |
| 10:11 | 4 | disbursements early, right? |
| 10:11 | 5 | A    Yes. |
| 10:11 | 6 | Q    And you sent an e-mail and you said, "Is the below your |
| 10:11 | 7 | escrow account?  We would prefer to pass it through like |
| 10:12 | 8 | before in order to keep consistent with tax treatment of the |
| 10:12 | 9 | first tranche."  Did I read that correctly? |
| 10:12 | 10 | A    Yes. |
| 10:12 | 11 | Q    And when you said we, were you referring to you and |
| 10:12 | 12 | Michelle? |
| 10:12 | 13 | A    Yes. |
| 10:12 | 14 | Q    And you wanted to pass it through, to use your words, |
| 10:12 | 15 | the law firm's trust account in order to avoid paying income |
| 10:12 | 16 | taxes on million of additional dollars; isn't that true, |
| 10:12 | 17 | sir?  Yes or no? |
| 10:12 | 18 | A    No. |
| 10:12 | 19 | Q    Now, when you met with the government, they asked you |
| 10:13 | 20 | about this second set of payments in your interview.  Do you |
| 10:13 | 21 | remember that? |
| 10:13 | 22 | A    Yes. |
| 10:13 | 23 | Q    And according to this e-mail, you wanted to pass it |
| 10:13 | 24 | through like before in order to keep consistent with tax |
| 10:13 | 25 | treatment, right?  Those are your words? |

| | | |
|---|---|---|
| 10:13 | 1 | A    Yes. |
| 10:13 | 2 | Q    But when the government asked you about why you wanted |
| 10:13 | 3 | the money to go into the trust account at the firm, you |
| 10:13 | 4 | didn't mention anything about tax treatment; did you?  Yes |
| 10:13 | 5 | or no? |
| 10:13 | 6 | A    I don't recall. |
| 10:13 | 7 | Q    You told the government that it was because you wanted |
| 10:13 | 8 | a paper trail.  Do you remember that? |
| 10:14 | 9 | A    Yes. |
| 10:14 | 10 | Q    Take a look at paragraph 26 and see if that refreshes |
| 10:14 | 11 | your recollection that you never said anything to the |
| 10:14 | 12 | government about tax treatment.  The question is:  Does that |
| 10:14 | 13 | refresh your recollection?  Yes or no? |
| 10:14 | 14 | A    Yes. |
| 10:14 | 15 | Q    And does that refresh your recollection that when the |
| 10:14 | 16 | agents and the AUSAs asked you about the second payment, you |
| 10:14 | 17 | didn't say anything at that time about tax treatment?  Yes |
| 10:14 | 18 | or no? |
| 10:14 | 19 | A    That I did not say? |
| 10:14 | 20 |         MR. AVENATTI:  Could I have the question read |
| 10:14 | 21 | back, Your Honor? |
| 10:14 | 22 |         THE COURT:  You may. |
| 10:14 | 23 |         (Record read) |
| 10:14 | 24 |         THE WITNESS:  No. |
| | 25 | |

10:15   1   BY MR. AVENATTI:

10:15   2   Q   Looking at paragraph 26 you didn't say anything about

10:15   3   tax treatment; did you?

10:15   4   A   I did not.

10:16   5   Q   Now, in response to this e-mail that you sent me, the

10:16   6   one that's on the screen -- strike that.

10:16   7         Do you recall that when you sent me this e-mail,

10:16   8   this was the first I learned that IPSY was going to

10:16   9   accelerate the next set of disbursements?

10:16   10   A   Yes.

10:16   11   Q   So keeping with the government's theory, do you recall

10:16   12   that I immediately responded and said:  Fantastic.  I'm

10:16   13   going to get my hands on these millions of dollars.  Have

10:16   14   them send it in right now.  Do you recall that that's how I

10:16   15   responded?

10:16   16   A   No.

10:16   17   Q   Well, I responded that same day because I was hot to

10:16   18   get my hands on your money, right?

10:16   19         MR. WYMAN:  Objection.  Lacks foundation.

10:16   20   Argumentative.

10:16   21         MR. AVENATTI:  Argumentative.

10:16   22         Rephrase the question.

10:16   23   BY MR. AVENATTI:

10:16   24   Q   Sir, I responded within minutes; didn't I?

10:16   25   A   No.

10:17   1   Q    Well, I mean, within a couple of hours, right?

10:17   2   A    No.

10:17   3   Q    Well, surely by the next morning I had responded and

10:17   4   said:  When can we get the money?  Right?

10:17   5            MR. WYMAN:  Objection.  Argumentative.

10:17   6            THE COURT:  Overruled.

10:17   7            THE WITNESS:  No.

10:17   8   BY MR. AVENATTI:

10:17   9   Q    Well, you sent this e-mail on March 8th, right?

10:17   10  A    Yes.

10:17   11  Q    All right.  Well, what about by March 10th?  I mean, I

10:17   12  had responded by March 10th and said:  How quick can we get

10:17   13  the money?  Right?

10:17   14  A    No.

10:17   15  Q    How about March 11th?  I mean, that's three days later.

10:17   16  According to the government I was hot to get my hands on

10:17   17  your money.  I responded by March 11th, right?

10:17   18  A    No.

10:17   19  Q    In fact, you had to send another e-mail to me on

10:18   20  March 12th following up as to this issue, right?  Do you

10:18   21  remember that?

10:18   22  A    Yes.

10:18   23            MR. AVENATTI:  Maybe we can have that for the

10:18   24  benefit of the jury, please.  Actually, Ms. Hernandez, if

10:18   25  you could include the bottom portion as well, please.

| | | |
|---|---|---|
| 10:18 | 1 | BY MR. AVENATTI: |
| 10:18 | 2 | Q    You didn't hear back from me for a few days, and so you |
| 10:18 | 3 | had to send a follow-up e-mail on March 12th, right? |
| 10:18 | 4 | A    Yes. |
| 10:18 | 5 | Q    We'll get to this in a minute, but you understood at |
| 10:18 | 6 | the time that I was dealing with another matter in New York, |
| 10:18 | 7 | correct? |
| 10:18 | 8 | A    My understanding. |
| 10:18 | 9 | Q    So on March 12th you sent me this e-mail that read: |
| 10:19 | 10 | "Just wanted to follow up here.  They will be sending |
| 10:19 | 11 | earlier this week.  Thanks.  Best, Long"; correct? |
| 10:19 | 12 | A    Yes. |
| 10:19 | 13 | Q    And I immediately responded to you and said: |
| 10:19 | 14 | Fantastic.  When are we getting the millions, right?  Do you |
| 10:19 | 15 | remember that? |
| 10:19 | 16 | A    No. |
| 10:19 | 17 | Q    That never happened; did it? |
| 10:19 | 18 | A    No. |
| 10:19 | 19 | Q    I responded right away and said:  Make sure they've got |
| 10:19 | 20 | my wire transfer information because I want the money in my |
| 10:19 | 21 | account? |
| 10:19 | 22 |             MR. WYMAN:  Objection, 403. |
| 10:19 | 23 |             THE COURT:  Overruled. |
| 10:19 | 24 |             THE WITNESS:  No. |
| | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:19  1   BY MR. AVENATTI:

10:19  2   Q    The morning or the next day I sent you an e-mail and I

10:19  3   said:  "What time can we chat this a.m.?  Thanks."  Do you

10:19  4   remember that?  Do you see it at the top of 273?

10:20  5   A    Yes.

10:20  6   Q    And you responded:  "Please give me a call anytime"; is

10:20  7   that right?

10:20  8   A    Yes.

10:20  9   Q    So this is five days after you had initially told me

10:20  10  that IPSY was ready to pay the money early, correct?

10:20  11  A    Yes.

10:20  12  Q    Now, we're going to get into some more details here

10:20  13  shortly, but I want to make sure that we are clear about

10:21  14  something.

10:21  15        You are not owed -- you personally do not maintain

10:21  16  you are owed any money from this transaction from me or the

10:21  17  law firm; is that correct?

10:21  18  A    You don't owe me any money.

10:21  19  Q    But I want to make sure we have a clear record.  Am I

10:21  20  correct when I say that as you sit there today, you have

10:21  21  received all of the money that you believe you are entitled

10:21  22  to from Michael Avenatti and Eagan Avenatti, LLP?

10:21  23  A    Yes.

10:21  24  Q    And as of April of 2018, you had received all of the

10:21  25  money that you believe you were entitled to from me or the

| | | |
|---|---|---|
| 10:22 | 1 | law firm; am I correct? |
| 10:22 | 2 | A    Yes. |
| 10:22 | 3 | Q    So if someone were to say that I had stolen your money, |
| 10:22 | 4 | Mr. Tran's money, or the firm had stolen your money, |
| 10:22 | 5 | Mr. Tran's money, that would not be true; would it? |
| 10:22 | 6 | A    Yes. |
| 10:22 | 7 | Q    Meaning, yes, it would not be true? |
| 10:22 | 8 | A    Yes, it would not be true. |
| 10:22 | 9 | Q    And when you met with the government in April of 2019, |
| 10:22 | 10 | you told them that you had received all of your money, |
| 10:23 | 11 | correct? |
| 10:23 | 12 | A    Yes. |
| 10:23 | 13 | MR. AVENATTI:  Your Honor, I know it's a little |
| 10:23 | 14 | early, but is this a good breaking spot? |
| 10:23 | 15 | THE COURT:  We will take the mid-morning break |
| 10:23 | 16 | here, ladies and gentlemen.  Please remember the admonition |
| 10:23 | 17 | not to discuss the case with anyone and not to form any |
| 10:23 | 18 | opinions on the issues in the case until it is submitted to |
| 10:23 | 19 | you.  And please do not do any research.  Fifteen minutes. |
| 10:23 | 20 | (Jury not present) |
| 10:24 | 21 | THE COURT:  Do we need to take up Mr. Avenatti's |
| 10:24 | 22 | issue at this point?  How much more do you have? |
| 10:24 | 23 | MR. AVENATTI:  Probably about 45 minutes, Your |
| 10:24 | 24 | Honor, and then whatever the redirect is, the recross.  And |
| 10:24 | 25 | then if they're going to call Mr. Bellis afterwards, that's |

| | | |
|---|---|---|
| 10:24 | 1 | where the issue is. |
| 10:24 | 2 | THE COURT:  Okay. |
| 10:24 | 3 | MR. WYMAN:  Our next witness is Mark Horoupian, |
| 10:24 | 4 | which is a short witness.  I think our estimate is about 20 |
| 10:24 | 5 | minutes.  I believe the defense's cross is about the same. |
| 10:24 | 6 | THE COURT:  Okay. |
| 10:24 | 7 | MR. WYMAN:  So it's possible we will get to him. |
| 10:24 | 8 | MR. AVENATTI:  I think it's unlikely, Your Honor. |
| 10:24 | 9 | The only issue I'll raise related to Mr. Horoupian, because |
| 10:24 | 10 | Mr. Horoupian represented me, I want us to be especially |
| 10:24 | 11 | careful relating to privilege issues.  I'm just previewing |
| 10:24 | 12 | that for the Court. |
| 10:24 | 13 | THE COURT:  That's fine.  Thank you. |
| 10:24 | 14 | (Recess taken at 10:24 a.m.; |
| 10:24 | 15 | proceedings resumed at 10:44 a.m.) |
| 10:24 | 16 | (Jury present) |
| 10:44 | 17 | THE COURT:  Mr. Avenatti. |
| 10:44 | 18 | MR. AVENATTI:  Thank you, Your Honor. |
| 10:44 | 19 | BY MR. AVENATTI: |
| 10:44 | 20 | Q    Mr. Tran, if you could take a look at Exhibit 274. |
| 10:44 | 21 | These are some text messages between you and Mr. Marchino. |
| 10:44 | 22 | You were asked about a number of those.  Do you recall that? |
| 10:44 | 23 | A    Yes. |
| 10:44 | 24 | MR. AVENATTI:  If we could go to page 3, please. |
| | 25 | |

| 10:44 | 1 | BY MR. AVENATTI: |
|---|---|---|
| 10:44 | 2 | Q    Can you see that, Mr. Tran? |
| 10:44 | 3 | A    Yes. |
| 10:45 | 4 | Q    And do you recall you were asked a number of questions |
| 10:45 | 5 | by Mr. Wyman on direct relating to the fact that you were |
| 10:45 | 6 | concerned -- in mid to late March you were concerned that |
| 10:45 | 7 | this wire had not been sent.  Do you remember that? |
| 10:45 | 8 | A    Yes. |
| 10:45 | 9 | Q    And you were so concerned that on or about March 30th, |
| 10:45 | 10 | you bought me a gift.  Do you remember that? |
| 10:45 | 11 | A    March 30th?  I don't recall buying you any gifts. |
| 10:45 | 12 | Q    Well, do you recall buying anything for me to use? |
| 10:45 | 13 | A    Yes. |
| 10:46 | 14 | Q    On or about March 30, you contacted me and you asked |
| 10:46 | 15 | when I was going to be back from New York.  Do you remember |
| 10:46 | 16 | that? |
| 10:46 | 17 | A    I don't recall specifically. |
| 10:46 | 18 | Q    Well, do you recall generally in late March of 2018 |
| 10:46 | 19 | inquiring as to when I was going to return from New York? |
| 10:46 | 20 | A    Yes. |
| 10:46 | 21 | Q    And do you recall telling me that you had something for |
| 10:46 | 22 | me? |
| 10:46 | 23 | A    Yes. |
| 10:46 | 24 | Q    Do you recall telling me that you had purchased |
| 10:46 | 25 | something for me to use? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:46  1    A    I had purchased something and offered for you to use

10:46  2    it, yes.

10:46  3    Q    Well, when had you purchased it?

10:46  4    A    I don't recall exactly when I purchased it.

10:46  5    Q    Well, had you purchased it months prior or shortly

10:46  6    before contacting me?

10:46  7    A    Shortly before.

10:46  8    Q    Within a week or two?

10:46  9    A    I can't recall.

10:46  10   Q    Within a month, sir?

10:47  11   A    Likely.

10:47  12   Q    Okay.  So sometime during March?

10:47  13   A    Sounds right.

10:47  14   Q    Okay.  And what you purchased for me to use was a V6

10:47  15   fully-armored against grenades, land mines, and assault

10:47  16   rifles Suburban SUV; isn't that true?  Yes or no?

10:47  17   A    Yes.

10:47  18   Q    Complete with a smoke-screen system and electrified

10:47  19   door handles; is that right?

10:47  20   A    Yes.

10:47  21   Q    And did I ask you to purchase that?

10:47  22   A    No.

10:47  23   Q    That was something you went out and purchased with the

10:48  24   idea that I would use it, right?  Yes or no, sir?

10:48  25   A    I don't know.

73

| | | |
|---|---|---|
| 10:48 | 1 | Q    So you just went and purchased it on your own and then |
| 10:48 | 2 | after the fact thought:  I'll give it to Michael Avenatti to |
| 10:48 | 3 | use? |
| 10:48 | 4 | A    Yes. |
| 10:48 | 5 | Q    And why did you decide that I needed such a thing? |
| 10:48 | 6 |         MR. WYMAN:  Objection.  Relevance. |
| 10:48 | 7 |         THE COURT:  Sustained. |
| 10:48 | 8 | BY MR. AVENATTI: |
| 10:48 | 9 | Q    And do you recall that that was in late March, early |
| 10:48 | 10 | April of 2018? |
| 10:48 | 11 | A    Around there.  Sounds right. |
| 10:49 | 12 | Q    Did you and I see each other on or about April 20th of |
| 10:49 | 13 | 2018? |
| 10:49 | 14 | A    Yes. |
| 10:49 | 15 | Q    Where did we see each other? |
| 10:49 | 16 | A    Bill Maher. |
| 10:49 | 17 | Q    What do you mean, Bill Maher? |
| 10:49 | 18 | A    You were on as a guest. |
| 10:49 | 19 | Q    And you attended that event, right? |
| 10:49 | 20 | A    Yes. |
| 10:49 | 21 | Q    Did you ask me anything about any alleged missing money |
| 10:49 | 22 | or wires at that event, sir?  Yes or no? |
| 10:49 | 23 | A    I don't recall. |
| 10:49 | 24 | Q    You don't recall doing so as you sit here today, |
| 10:49 | 25 | correct? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:49 | 1 | A    I'm sorry? |
| 10:49 | 2 | Q    You do not recall doing so as you sit here today, |
| 10:49 | 3 | correct? |
| 10:49 | 4 | A    Yes. |
| 10:50 | 5 | Q    Now, looking through Exhibit 274, what are or what is |
| 10:50 | 6 | Exhibit 274 generally? |
| 10:50 | 7 | A    Text messages between me and Filippo Marchino. |
| 10:50 | 8 | Q    All of your text messages between you and Mr. Marchino |
| 10:50 | 9 | or some of them? |
| 10:50 | 10 | A    Some of them. |
| 10:50 | 11 | Q    Now, what apps or program did these text messages come |
| 10:51 | 12 | from? |
| 10:51 | 13 | A    Standard SMS messaging. |
| 10:51 | 14 | Q    From an iPhone or Android? |
| 10:51 | 15 | A    My phone is an Android. |
| 10:51 | 16 | Q    Did you ever give the government all of your text |
| 10:51 | 17 | messages between you and Mr. Marchino? |
| 10:51 | 18 | A    No. |
| 10:51 | 19 | Q    Did they ever ask you for all of your text messages |
| 10:51 | 20 | between you and Mr. Marchino? |
| 10:51 | 21 | A    No. |
| 10:51 | 22 | Q    Who determined which text messages -- well, strike |
| 10:51 | 23 | that.  Are these screenshots, 274? |
| 10:51 | 24 | A    Yes. |
| 10:51 | 25 | Q    This isn't any forensic download of your phone, right? |

| | | |
|---|---|---|
| 10:51 | 1 | A    No. |
| 10:52 | 2 | Q    Meaning I'm correct?  It is not a forensic download, |
| 10:52 | 3 | correct? |
| 10:52 | 4 | A    No.  Correct. |
| 10:52 | 5 | Q    Okay.  Did the government ever ask to forensically |
| 10:52 | 6 | download your phone? |
| 10:52 | 7 | A    They did ask if I have still had the phone, yes. |
| 10:52 | 8 | MR. AVENATTI:  Move to strike as nonresponsive. |
| 10:52 | 9 | THE COURT:  It will be stricken. |
| 10:52 | 10 | BY MR. AVENATTI: |
| 10:52 | 11 | Q    Sir, my question is:  Did the government ever ask to |
| 10:52 | 12 | forensically download text messages from your cell phone? |
| 10:52 | 13 | A    No. |
| 10:52 | 14 | Q    Even after you gave them the screenshots of |
| 10:52 | 15 | Exhibit 274; isn't that right?  They did not ask? |
| 10:52 | 16 | A    Correct. |
| 10:52 | 17 | Q    Who screenshot or screenshotted the text messages that |
| 10:52 | 18 | comprise 274? |
| 10:52 | 19 | A    I did. |
| 10:53 | 20 | Q    Where were you physically when you did that? |
| 10:53 | 21 | A    I don't know how to answer that. |
| 10:53 | 22 | Q    I mean, were you by yourself or were other people with |
| 10:53 | 23 | you? |
| 10:53 | 24 | A    I was by myself. |
| 10:53 | 25 | Q    Were you meeting with any government agents when you |

| | | |
|---|---|---|
| 10:53 | 1 | did that? |
| 10:53 | 2 | A    No. |
| 10:53 | 3 | Q    So you were at your residence or some other private |
| 10:53 | 4 | location? |
| 10:53 | 5 | A    Yes. |
| 10:53 | 6 | Q    Now, take a look at Exhibit 278.  Exhibit 278 are |
| 10:53 | 7 | select screenshots of your communications with me, correct? |
| 10:54 | 8 | A    Yes. |
| 10:54 | 9 | Q    And who took these screenshots? |
| 10:54 | 10 | A    I did. |
| 10:54 | 11 | Q    Were you in a private location, or were you meeting |
| 10:54 | 12 | with the government? |
| 10:54 | 13 | A    Private -- well, with my attorneys. |
| 10:54 | 14 | Q    And did the government ever ask you to make a forensic |
| 10:54 | 15 | copy of all the communications between me and you? |
| 10:54 | 16 | A    No. |
| 10:54 | 17 | Q    Are you the one that determined which screenshots to |
| 10:54 | 18 | take relating to communications between me and you? |
| 10:54 | 19 | A    Not entirely, no.  My attorneys as well. |
| 10:54 | 20 | Q    And 278 is not all of the text communications between |
| 10:54 | 21 | me and you; are they? |
| 10:54 | 22 | A    No. |
| 10:55 | 23 | Q    There are many more text communications between me and |
| 10:55 | 24 | you other than what's included in 278, right? |
| 10:55 | 25 | A    It depends on how you define many. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:55 | 1 | Q   More than 25? |
| 10:55 | 2 | A   I can't say for sure. |
| 10:55 | 3 | Q   Well, what's your best estimate, sir? |
| 10:55 | 4 | A   I don't have an estimate. |
| 10:55 | 5 | Q   So you don't know if it's more or less than 25? |
| 10:55 | 6 | A   I don't. |
| 10:55 | 7 | Q   When is the last time -- well, strike that.  How about |
| 10:55 | 8 | your communications with Mr. Marchino?  You had many more |
| 10:55 | 9 | text communications with Mr. Marchino other than what is |
| 10:55 | 10 | part of 274, what you gave the government; isn't that right? |
| 10:56 | 11 | A   Yes. |
| 10:56 | 12 | Q   If we wanted to see the other text messages between you |
| 10:56 | 13 | and Mr. Marchino other than what you provided the |
| 10:56 | 14 | government, how would we go about doing that? |
| 10:56 | 15 | A   You could look on my phone. |
| 10:56 | 16 | Q   Which phone? |
| 10:56 | 17 | A   The phone in this era and previous phones.  I have |
| 10:56 | 18 | known Mr. Marchino for over 15 years, so there are lots of |
| 10:56 | 19 | text messages. |
| 10:56 | 20 | Q   Did the government ever ask you to see those phones? |
| 10:56 | 21 | A   Yes. |
| 10:57 | 22 | Q   When? |
| 10:57 | 23 | A   Earlier this year. |
| 10:57 | 24 | Q   You mean, like, in June? |
| 10:57 | 25 | A   Yes. |

| | | |
|---|---|---|
| 10:57 | 1 | Q    Okay.  Not before June, right? |
| 10:57 | 2 | A    I don't believe so. |
| 10:57 | 3 | Q    Okay.  That was the first time they asked you to see |
| 10:57 | 4 | these other text messages, right? |
| 10:57 | 5 | A    Yes. |
| 10:57 | 6 | Q    So you met with the government for the first time in |
| 10:57 | 7 | April of 2019, and the first time they asked you to see |
| 10:57 | 8 | other text messages was over two years later in June of this |
| 10:57 | 9 | year; is that right? |
| 10:57 | 10 | MR. WYMAN:  Objection.  Asked and answered. |
| 10:57 | 11 | THE COURT:  Sustained. |
| 10:57 | 12 | BY MR. AVENATTI: |
| 10:57 | 13 | Q    Prior to June of this year, had the government asked |
| 10:58 | 14 | you to see any other text messages between me and you other |
| 10:58 | 15 | than what has been marked as 278? |
| 10:58 | 16 | A    I can't say for sure. |
| 10:58 | 17 | Q    Do you have a recollection of the government ever |
| 10:58 | 18 | asking you that before June of this year? |
| 10:58 | 19 | A    They communicated through my attorneys. |
| 10:58 | 20 | Q    Sir, that's not my question. |
| 10:58 | 21 | MR. AVENATTI:  Move to strike, Your Honor. |
| 10:58 | 22 | THE COURT:  It will be stricken. |
| 10:58 | 23 | BY MR. AVENATTI: |
| 10:58 | 24 | Q    Sir, as you sit there today, do you have any |
| 10:58 | 25 | recollection of the government ever asking before June of |

| | | |
|---|---|---|
| 10:58 | 1 | this year to see any other text messages that you had with |
| 10:58 | 2 | me? |
| 10:58 | 3 | A    I don't recall. |
| 10:58 | 4 | Q    Do you have a recollection that the first time the |
| 10:58 | 5 | government asked you to see other text messages between me |
| 10:58 | 6 | and you was on June 18th, 2021, when you met with the |
| 10:59 | 7 | government? |
| 10:59 | 8 | MR. WYMAN:  Objection.  Asked and answered, 403. |
| 10:59 | 9 | THE COURT:  Sustained.  Asked and answered. |
| 10:59 | 10 | BY MR. AVENATTI: |
| 10:59 | 11 | Q    After the government provided you -- strike that. |
| 10:59 | 12 | After the government asked you for the first time in June of |
| 10:59 | 13 | 2018 about the text messages, did you provide the government |
| 10:59 | 14 | with any additional text messages?  Yes or no? |
| 10:59 | 15 | A    I don't believe I did. |
| 10:59 | 16 | Q    Do you have a recollection that when you met with the |
| 10:59 | 17 | government in April of 2019, you were asked about two phone |
| 11:00 | 18 | calls that you had placed to me, one on or about May 29th, |
| 11:00 | 19 | 2018, and one on or about June 4th, 2018? |
| 11:00 | 20 | A    Could you repeat the dates. |
| 11:00 | 21 | Q    May 29th, 2018, and June 4th, 2018, two phone calls. |
| 11:00 | 22 | A    I don't recall. |
| 11:00 | 23 | Q    Take a look at the first sentence of paragraph 63.  Do |
| 11:00 | 24 | you have still have the April 4th, 2019, document, sir? |
| 11:00 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:00   1    Q    Take a look at the first sentence of paragraph 63.  My
11:00   2    question is:  Does that refresh your recollection that you
11:00   3    were asked about two phone calls as I indicated?
11:01   4    A    Yes.
11:01   5    Q    And the purpose of those two phone calls was for, you
11:01   6    told the government, to get your vehicle back, correct?
11:01   7    A    Yes.
11:01   8    Q    You made no request during either one of those phone
11:01   9    calls for this supposed missing money; did you?
11:01  10    A    I don't believe I did.
11:01  11    Q    Did you ever -- strike that.  During 2018 did you ever
11:01  12    use any other means to communicate with me and Mr. Marchino
11:01  13    via text other than SMS text messages?
11:02  14    A    Phone calls, e-mails, and texts.
11:02  15    Q    Did you ever use any apps to communicate with either
11:02  16    Mr. Marchino or me during that time period?  And by apps,
11:02  17    what I'm talking about is WhatsApp, Telegram, Signal, things
11:02  18    of that nature.
11:02  19    A    No.
11:02  20    Q    Sir, you have predominantly dealt with Mr. Marchino and
11:02  21    Ms. Regnier relating with these wire transfers in 2018;
11:02  22    isn't that true?
11:02  23    A    Yes.
11:02  24    Q    More so than me, correct?
11:03  25    A    Yes.
```

| | | |
|---|---|---|
| 11:03 | 1 | Q    And you told the government that that was true because |
| 11:03 | 2 | you were closer with Marchino and that you understood that I |
| 11:03 | 3 | was very busy, right? |
| 11:03 | 4 | A    Yes. |
| 11:03 | 5 | Q    Now, we're going to talk about some other exhibits, but |
| 11:03 | 6 | before we do, I want to focus your attention on Exhibit 281. |
| 11:05 | 7 | Can you see that, sir? |
| 11:05 | 8 | A    Yes. |
| 11:05 | 9 | Q    And you were asked about Exhibit 281 on direct by |
| 11:05 | 10 | Mr. Wyman, right? |
| 11:05 | 11 | A    Yes. |
| 11:05 | 12 | Q    And 281 is a series of e-mails, all of which are dated |
| 11:05 | 13 | either April 30th or May 1st, 2018.  Do you see that? |
| 11:05 | 14 | A    Yes. |
| 11:05 | 15 | Q    Is that correct, what I said? |
| 11:05 | 16 | A    Yes. |
| 11:05 | 17 | Q    I want to direct your attention to the bottom e-mail on |
| 11:05 | 18 | the first page.  By the way, before we get there, do you |
| 11:05 | 19 | recall that when Mr. Wyman, before he asked you these |
| 11:05 | 20 | questions about 281, do you recall that he said something |
| 11:06 | 21 | along the lines of:  Mr. Tran, I want to direct your |
| 11:06 | 22 | attention to Exhibit 281 -- and, Your Honor, it's in |
| 11:06 | 23 | evidence?  Do you remember generally him saying that from |
| 11:06 | 24 | time to time related to exhibits? |
| 11:06 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:06 | 1 | Q    And you understand what that means is that Exhibit 281, |
| 11:06 | 2 | other witnesses or at least one other witness has been asked |
| 11:06 | 3 | about it and it has been admitted, meaning it's before the |
| 11:06 | 4 | jury.  You understood that, right, when he asked you that? |
| 11:06 | 5 | MR. WYMAN:  Objection.  401, 403. |
| 11:06 | 6 | THE COURT:  Sustained. |
| 11:06 | 7 | BY MR. AVENATTI: |
| 11:06 | 8 | Q    Now, you see the bottom e-mail here on 281? |
| 11:06 | 9 | A    Yes. |
| 11:06 | 10 | Q    Now, are you aware that Judy Regnier has testified in |
| 11:06 | 11 | the case? |
| 11:06 | 12 | MR. WYMAN:  Same objection. |
| 11:06 | 13 | THE COURT:  Overruled. |
| 11:06 | 14 | THE WITNESS:  I don't know. |
| 11:06 | 15 | BY MR. AVENATTI: |
| 11:06 | 16 | Q    Okay.  Well, I will represent to you that she has, and |
| 11:06 | 17 | Mr. Wyman will correct me if I'm wrong. |
| 11:07 | 18 | Now, I want to talk to you -- well, strike that. |
| 11:07 | 19 | You were asked about this e-mail from Judy Regnier |
| 11:07 | 20 | on direct from Mr. Wyman.  Do you remember that? |
| 11:07 | 21 | A    Yes. |
| 11:07 | 22 | Q    Okay.  Now, this is an e-mail from Ms. Regnier to you, |
| 11:07 | 23 | right? |
| 11:07 | 24 | A    Yes. |
| 11:07 | 25 | Q    And Ms. Regnier writes:  "I asked the bank to put a |

| | | |
|---|---|---|
| 11:07 | 1 | trace on it.  As soon as I get the results, I will let you |
| 11:07 | 2 | know ASAP."  Do you see that? |
| 11:07 | 3 | A    Yes. |
| 11:07 | 4 | Q    And you received this e-mail about that time, correct? |
| 11:07 | 5 | A    Yes. |
| 11:07 | 6 | Q    Now, in the month of April, in March and April of 2018, |
| 11:08 | 7 | you understood that I was spending more time in New York |
| 11:08 | 8 | than in California, correct? |
| 11:08 | 9 | A    I don't know if it was more but it was substantial. |
| 11:08 | 10 | Q    It was a lot, right? |
| 11:08 | 11 | A    Yes. |
| 11:08 | 12 | Q    Okay.  Now, and we're going to get to this with at |
| 11:08 | 13 | least one other witness, but here is my question. |
| 11:08 | 14 |         Ms. Regnier testified in front of this jury -- |
| 11:08 | 15 |         MR. WYMAN:  Objection. |
| 11:08 | 16 |         MR. AVENATTI:  I haven't even asked my question |
| 11:08 | 17 | yet.  How do you even know what I'm going to ask? |
| 11:08 | 18 |         MR. WYMAN:  Objection.  Defendant is testifying |
| 11:08 | 19 | from the lectern, Your Honor. |
| 11:08 | 20 |         THE COURT:  Finish your question. |
| 11:08 | 21 |         MR. AVENATTI:  Thank you, Your Honor. |
| 11:08 | 22 | BY MR. AVENATTI: |
| 11:08 | 23 | Q    Ms. Regnier testified under oath that I typed this |
| 11:09 | 24 | e-mail, may have typed this e-mail on her computer and sent |
| 11:09 | 25 | it to you.  Do you know whether that testimony was true or |

84

| 11:09 | 1 | not? |
| 11:09 | 2 | MR. WYMAN:  Same objection, Your Honor. |
| 11:09 | 3 | THE COURT:  Overruled. |
| 11:09 | 4 | THE WITNESS:  I don't. |
| 11:09 | 5 | BY MR. AVENATTI: |

11:09   6   Q    Do you know if that was even possible, for me to have

11:09   7   typed this e-mail on her computer, because I wasn't even in

11:09   8   California as of this date?  Do you know that?

11:09   9   A    Well, you could certainly log in.

11:09   10           MR. AVENATTI:  Move to strike.

11:09   11           THE COURT:  It will be stricken.

11:09   12   BY MR. AVENATTI:

11:09   13   Q    Sir, I'm not asking about logging in.  Listen to my

11:09   14   question.

11:09   15           Ms. Regnier testified to this jury that I typed

11:09   16   this e-mail on her computer here in California and sent it

11:10   17   to you.  My question is:  Do you know if that was even

11:10   18   possible based on where I was at as of this date?  That's my

11:10   19   question.

11:10   20           MR. WYMAN:  Objection.  Lacks foundation.

11:10   21           THE COURT:  Overruled.

11:10   22           THE WITNESS:  It would not be possible if you were

11:10   23   not in California.

11:10   24   BY MR. AVENATTI:

11:10   25   Q    Assuming that Ms. Regnier typed this e-mail, do you

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:10   1   know what her communications were with the bank relating to

11:10   2   putting a trace on the wire?

11:10   3   A    No.

11:10   4   Q    You were also asked about this e-mail on the second

11:11   5   page at the bottom that says, "Please handle."

11:11   6   A    Yes.

11:11   7   Q    When you received this, you understood that I wasn't

11:11   8   telling you to handle something.  I was instructing

11:11   9   Ms. Regnier to handle something, correct?

11:11   10  A    Yes.

11:11   11  Q    There are a couple of other instances of this.  You

11:11   12  never understood when I said, "Please handle," you never

11:11   13  understood I was instructing you to do anything; did you?

11:11   14  A    No.

11:12   15  Q    Sir, are you aware -- strike that.  You are not aware

11:12   16  of the communications that took place between me and

11:12   17  Ms. Regnier relating to any of the wires having to do with

11:12   18  you or Ms. Phan; are you?

11:12   19  A    No.

11:12   20  Q    You are not aware of any communications that took place

11:12   21  between me and Mr. Marchino relating to that same topic; are

11:12   22  you, firsthand?

11:12   23  A    No.

11:12   24  Q    You are not aware of the communications that I had with

11:12   25  any bank relating to your wires; are you?

| | | |
|---|---|---|
| 11:12 | 1 | A    No. |
| 11:12 | 2 | Q    Are you aware of what Ms. Regnier told me in connection |
| 11:12 | 3 | with the wires? |
| 11:12 | 4 | A    No. |
| 11:12 | 5 | Q    Are you aware of what the bank told her in connection |
| 11:12 | 6 | with the wires? |
| 11:12 | 7 | A    No. |
| 11:13 | 8 | Q    Are you aware of what the bank told me in connection |
| 11:13 | 9 | with the wires? |
| 11:13 | 10 | A    I do recall something that you told me the bank told |
| 11:13 | 11 | you. |
| 11:13 | 12 | Q    What was the date of this alleged conversation, sir? |
| 11:13 | 13 | A    (No response) |
| 11:13 | 14 | Q    Strike that.  Do you have a text message relating to |
| 11:13 | 15 | that? |
| 11:13 | 16 | A    No. |
| 11:13 | 17 | Q    What was the date of this alleged conversation that you |
| 11:13 | 18 | now recall? |
| 11:13 | 19 | A    It was either late April or early May.  I believe it |
| 11:13 | 20 | was in April. |
| 11:14 | 21 | Q    Did you ever tell the government about this alleged |
| 11:14 | 22 | conversation when you met with the government? |
| 11:14 | 23 | A    I don't recall. |
| 11:14 | 24 | Q    You met with the government for over two hours on |
| 11:14 | 25 | April 4, 2019, correct? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:14 | 1 | A    Yes. |
| 11:14 | 2 | Q    Did you make an effort to tell the government all of |
| 11:14 | 3 | the important details that you could remember at that time |
| 11:14 | 4 | relating to the transaction? |
| 11:14 | 5 | A    Yes. |
| 11:15 | 6 | Q    Go ahead and take a look at 274 for me, please.  Take a |
| 11:16 | 7 | look at page 13, please. |
| 11:16 | 8 | A     (Witness complies.) |
| 11:16 | 9 | Q    Are you there? |
| 11:16 | 10 | A    Yes. |
| 11:16 | 11 | Q    Do you recall that Mr. Wyman asked you a bunch of |
| 11:16 | 12 | questions about what was going on on May 11th relating to |
| 11:16 | 13 | these wires?  Do you remember that? |
| 11:16 | 14 | A    Yes. |
| 11:16 | 15 | Q    And you remember he was asking you about text messages |
| 11:17 | 16 | starting on page 13 between you and Mr. Marchino on May 9th, |
| 11:17 | 17 | through page 23 on May 11th, and continuing past page 23 on |
| 11:17 | 18 | May 11th.  Do you recall that? |
| 11:17 | 19 | A    Yes. |
| 11:17 | 20 | Q    There's all these text messages back and forth between |
| 11:17 | 21 | Mr. Marchino, right? |
| 11:17 | 22 | A    Yes. |
| 11:17 | 23 | Q    On May 9th, 10th, and 11th, right? |
| 11:17 | 24 | A    Yes. |
| 11:17 | 25 | Q    There's probably, what, 25, 30 text messages during |

11:17    1    that time period between the two of you?

11:17    2    A    Yes, it looks like it.

11:18    3    Q    Take a look at 278.  I want to ask you what your text

11:18    4    messages show relating to your communications with me during

11:18    5    that time period.  Go to page 8 of 8.

11:18    6    A    Okay.

11:18    7              MR. AVENATTI:  Ms. Hernandez, could we please pull

11:18    8    up the top two.

11:18    9    BY MR. AVENATTI:

11:18   10    Q    You sent me a text message on April 30th that said,

11:19   11    "Good luck," correct?

11:19   12    A    Yes.

11:19   13    Q    You then sent me a text message 24 days later that

11:19   14    said, "Good morning, Michael.  Please call me when you have

11:19   15    a chance," right?

11:19   16    A    Yes.

11:19   17    Q    You didn't send me a single text message on May 9th,

11:19   18    May 10th, May 11th, May 12th, or at any other point until

11:19   19    May 24th; isn't that true, sir?  Yes or no?

11:19   20    A    Yes.

11:19   21    Q    And then when you reached out to me on May 24th, it was

11:19   22    according to the government for you to get your car back,

11:19   23    correct, according to what you told the government?

11:19   24    Correct?

11:19   25    A    Correct.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:20   1   Q    The reason why Mr. Wyman didn't ask you about any text
11:20   2   messages on May 11th between me and you was because there
11:20   3   were no text messages on May 11th between me and you, right?
11:20   4   A    Yes.
11:20   5   Q    Did the government ever ask you for your phone records
11:20   6   for 2018 as it relates to your communications with me?
11:20   7   A    Yes.
11:20   8   Q    Did they ask you to provide the bills?
11:21   9   A    Yes.
11:21  10   Q    For what period of time?
11:21  11   A    I don't recall.
11:21  12   Q    For the entire year?
11:21  13   A    Yes.
11:21  14   Q    And did you provide all of your cell phone bills for
11:21  15   the entire year of 2018?
11:21  16   A    Yes.
11:21  17   Q    Who was your carrier at the time?
11:21  18   A    AT&T.
11:21  19   Q    When did you provide that to the government?
11:21  20   A    I believe I provided it through my attorneys.  I don't
11:21  21   recall when.
11:22  22   Q    Sir, in April and May of 2018 you had -- strike that.
11:22  23   In April and May of 2018 you were predominantly relying on
11:22  24   Mr. Marchino to get back to you relating to the payments; is
11:22  25   that true?
```

```
11:22   1    A     Yes.
11:23   2              MR. AVENATTI:  Your Honor, one moment, please.
11:23   3              (Pause in proceedings)
11:23   4    BY MR. AVENATTI:
11:23   5    Q     This is my last question.  As you sit there today, do
11:23   6    you believe you have other text messages presently in your
11:23   7    possession, meaning not physically here but at your
11:23   8    residence or something of that nature, other text messages
11:23   9    with me beyond what is included in Exhibit 278?
11:24   10   A     Yes.
11:24   11   Q     But those have never been given to the government,
11:24   12   right?
11:24   13   A     No.
11:24   14   Q     Meaning I'm correct?
11:24   15   A     Yes.
11:24   16             MR. AVENATTI:  Pass the witness.
11:24   17             THE COURT:  Mr. Wyman.
11:24   18                       REDIRECT EXAMINATION
11:24   19   BY MR. WYMAN:
11:24   20   Q     Good morning again, Mr. Tran.
11:24   21   A     Good morning.
11:24   22   Q     Now, on cross-examination the defendant asked you about
11:25   23   Exhibit 273.
11:25   24             MR. WYMAN:  Would you please pull that up.
        25
```

91

11:25   1    BY MR. WYMAN:

11:25   2    Q    It's an e-mail about the tax treatments, I believe, at

11:25   3    the bottom of page 1.

11:25   4    A    Yes.

11:25   5    Q    Looking at this document, do you know who provided this

11:25   6    to the government?

11:25   7    A    I did.

11:25   8    Q    You provided this to the government?

11:25   9    A    Yes.

11:25   10   Q    The defendant also asked you about how in the first set

11:25   11   of payments you and Ms. Phan didn't want the money paid

11:25   12   immediately because of tax reasons.  Do you remember that?

11:25   13   A    Yes.

11:25   14   Q    Whose idea was it to do it that way?

11:25   15   A    Mr. Avenatti.

11:25   16   Q    Who told you about the tax treatments?

11:26   17   A    Mr. Avenatti.

11:26   18   Q    Whose advice were you following when you decided to do

11:26   19   it that way?

11:26   20   A    Mr. Avenatti.

11:26   21   Q    Now, on the second set of payments, the defendant asked

11:26   22   you about how you received that e-mail from IPSY on

11:26   23   March 8th and you forwarded it to the defendant, and then he

11:26   24   didn't write back for a few days.  Do you recall that?

11:26   25   A    Yes.

11:26    1    Q    And that he finally connected with you on March 13th of
11:26    2    2018; is that right?
11:26    3    A    Yes.
11:26    4    Q    When you spoke to the defendant on March 13th of 2018,
11:26    5    did he tell you that he had just received a reminder from
11:26    6    Judy Regnier the day before about sending a tax check to the
11:26    7    trustee?
11:26    8    A    No.
11:27    9    Q    Now, on cross-examination you told the defendant that
11:27   10    you remembered a conversation, I think you said, in late
11:27   11    April in which the defendant told you what the bank told
11:27   12    him.  Do you remember that?
11:27   13    A    Yes.
11:27   14    Q    He didn't ask you what he said on that conversation, so
11:27   15    I will ask.  What did the defendant say?
11:27   16    A    That City National Bank sent the wire to the incorrect
11:27   17    account and that it would need to be reversed and then be
11:27   18    sent to the correct account.
11:27   19    Q    And which wire did you understand he to mean?
11:27   20    A    At that time it was actually the full 8.1 million.
11:27   21    Q    When the defendant went over the common stock
11:27   22    repurchase agreement for you and Ms. Phan, he asked you
11:27   23    about other transaction documents.  Do you remember that?
11:27   24    A    Yes.
11:27   25    Q    For example, I think he mentioned an asset purchase

| | | |
|---|---|---|
| 11:27 | 1 | agreement? |
| 11:28 | 2 | A   Yes. |
| 11:28 | 3 | Q   Did any of the other documents in this matter entitle |
| 11:28 | 4 | the defendant to additional attorneys' fees? |
| 11:28 | 5 | A   No. |
| 11:28 | 6 | Q   Did any of those documents entitle the defendant to |
| 11:28 | 7 | take $4 million from Michelle Phan? |
| 11:28 | 8 | A   No. |
| 11:28 | 9 | Q   Now, on direct examination we asked you a lot of |
| 11:28 | 10 | questions about that second missing $4 million wire payment |
| 11:28 | 11 | that you and Mr. Marchino were trying to find.  Do you |
| 11:28 | 12 | remember that? |
| 11:28 | 13 | A   Yes. |
| 11:28 | 14 | Q   On cross-examination did the defendant ask you a single |
| 11:28 | 15 | question about that missing second $4 million wire transfer? |
| 11:28 | 16 | A   No. |
| 11:28 | 17 | Q   Thank you.  No further questions. |
| 11:28 | 18 |         THE COURT:  Mr. Avenatti. |
| 11:28 | 19 |                 RECROSS-EXAMINATION |
| 11:28 | 20 | BY MR. AVENATTI: |
| 11:28 | 21 | Q   Mr. Tran, the text messages between you and |
| 11:28 | 22 | Mr. Marchino that I asked you about, do you recall those? |
| 11:29 | 23 | A   Yes. |
| 11:29 | 24 | Q   All of those text messages were about this alleged |
| 11:29 | 25 | missing payment; weren't they, sir?  Yes or no?  Yes or no? |

94

11:29  1   A    No.

11:29  2   Q    Well, let's take a look at them.  It's your testimony

11:29  3   under oath that the text messages on May 11 that I asked you

11:29  4   about did not relate to the alleged missing payment?  Is

11:29  5   that your testimony, sir?

11:29  6   A    If you're talking about just that date.

11:29  7   Q    Well, I asked you about May 9th, 10th, 11th, pages 13

11:29  8   through, I think it was, 22 or 23 of Exhibit 274.  You don't

11:30  9   remember me asking you about those text messages, sir?

11:30  10  A    I do.

11:30  11  Q    Okay.  And all of those text messages relate to this

11:30  12  alleged $4 million missing payment, right?

11:30  13  A    Yes.

11:30  14  Q    Now, you have no idea what the bank informed me before

11:30  15  this alleged phone call that we had; do you, sir?

11:30  16         MR. WYMAN:  Objection.  Beyond the scope.

11:30  17         THE COURT:  Sustained.

11:30  18  BY MR. AVENATTI:

11:30  19  Q    Sir, on redirect you were asked about a conversation

11:30  20  that you claim that you and I had where I said that the bank

11:30  21  informed me that the wire would have to be reversed.  You

11:30  22  just testified to that.  Do you remember that?

11:30  23  A    Yes.

11:30  24  Q    Okay.  You weren't on the phone with me and the bank;

11:30  25  were you?

95

| | | |
|---|---|---|
| 11:30 | 1 | A    No. |
| 11:30 | 2 | Q    So you have no idea what my communications with the |
| 11:30 | 3 | bank were or what they said to me; is that right? |
| 11:30 | 4 | A    No. |
| 11:30 | 5 | Q    Am I right? |
| 11:30 | 6 | A    Yes. |
| 11:30 | 7 | Q    Okay.  And you don't know whether Ms. Regnier was on |
| 11:31 | 8 | that call either; do you? |
| 11:31 | 9 | MR. WYMAN:  Beyond the scope. |
| 11:31 | 10 | THE COURT:  Sustained. |
| 11:31 | 11 | BY MR. AVENATTI: |
| 11:31 | 12 | Q    Mr. Tran, as it relates to this tax issue, is it your |
| 11:31 | 13 | testimony that at no point in time did any of Ms. Phan's |
| 11:31 | 14 | business advisors advocate to put the money in Divinium Labs |
| 11:31 | 15 | in order to avoid taxes?  Is that your testimony, sir? |
| 11:31 | 16 | A    Could you ask that again. |
| 11:31 | 17 | MR. AVENATTI:  Can I have it read back, please? |
| 11:31 | 18 | THE COURT:  You may. |
| 11:31 | 19 | (Record read) |
| 11:31 | 20 | BY MR. AVENATTI: |
| 11:31 | 21 | Q    Let me strike that.  I will ask an easier question. |
| 11:32 | 22 | Mr. Tran, isn't it true that we had multiple communications |
| 11:32 | 23 | with Ms. Phan's financial advisors relating to how this |
| 11:32 | 24 | money would be handled so that it could be sheltered from |
| 11:32 | 25 | taxes? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

96

| | | |
|---|---|---|
| 11:32 | 1 | A    Yes. |
| 11:32 | 2 | Q    Who other than me and you were on those calls? |
| 11:32 | 3 | A    Michelle's CPA. |
| 11:32 | 4 | Q    Who is that? |
| 11:32 | 5 | A    Jamie Cottage. |
| 11:32 | 6 | Q    Would you spell the last name for the court reporter, |
| 11:32 | 7 | please. |
| 11:32 | 8 | A    Jamie Cottage, C-o-t-t-a-g-e. |
| 11:33 | 9 | Q    Where does she work? |
| 11:33 | 10 |          MR. WYMAN:  Objection.  Beyond the scope. |
| 11:33 | 11 | Relevance. |
| 11:33 | 12 |          THE COURT:  Sustained. |
| 11:33 | 13 | BY MR. AVENATTI: |
| 11:33 | 14 | Q    She was involved in the decision related to the taxes, |
| 11:33 | 15 | correct? |
| 11:33 | 16 | A    Yes. |
| 11:33 | 17 | Q    You were -- well, strike that. |
| 11:33 | 18 |          MR. AVENATTI:  Nothing further. |
| 11:33 | 19 |          THE COURT:  May the witness be excused? |
| 11:33 | 20 |          MR. AVENATTI:  Reserve the right to recall him, |
| 11:33 | 21 | Your Honor. |
| 11:33 | 22 |          THE COURT:  Sir, you are excused but you're |
| 11:33 | 23 | subject to recall.  Thank you. |
| 11:34 | 24 |          MR. SAGEL:  The government calls Mark Horoupian. |
| 11:34 | 25 |        MARK HOROUPIAN, GOVERNMENT'S WITNESS, SWORN |

| | | |
|---|---|---|
| 11:34 | 1 | THE CLERK:  If you will please state and spell |
| 11:35 | 2 | your first and last name. |
| 11:35 | 3 | THE WITNESS:  Mark S. Horoupian, |
| 11:35 | 4 | H-o-r-o-u-p-i-a-n. |
| 11:35 | 5 | THE CLERK:  M-a-r-k? |
| 11:35 | 6 | THE WITNESS:  Yes. |
| 11:35 | 7 | THE CLERK:  Thank you. |
| 11:35 | 8 | THE COURT:  Mr. Sagel. |
| 11:35 | 9 | MR. SAGEL:  Thank you. |
| 11:35 | 10 | DIRECT EXAMINATION |
| 11:35 | 11 | BY MR. SAGEL: |
| 11:35 | 12 | Q    Good morning, Mr. Horoupian. |
| 11:35 | 13 | A    Good morning. |
| 11:35 | 14 | Q    How are you employed? |
| 11:35 | 15 | A    I'm an attorney. |
| 11:35 | 16 | Q    And where do you work at? |
| 11:35 | 17 | A    A firm called Sulmeyer Kupetz. |
| 11:36 | 18 | Q    How long have you been a lawyer at Sulmeyer Kupetz for? |
| 11:36 | 19 | A    Approximately 26 years. |
| 11:36 | 20 | Q    And what type of law do you practice or specialize in? |
| 11:36 | 21 | A    Bankruptcy.  I'm not a certified specialist, but that's |
| 11:36 | 22 | the focus of my practice. |
| 11:36 | 23 | Q    Do you know an individual by the name of Michael |
| 11:36 | 24 | Avenatti? |
| 11:36 | 25 | A    I do. |

11:36  1   Q    How do you know who Mr. Avenatti is?

11:36  2   A    He was my client.  And before then, our firm was a

11:36  3   subtenant of Eagan Avenatti in its Newport Beach office

11:36  4   where we had our Orange County office.

11:36  5   Q    When was he a client of yours?

11:36  6   A    During the term of the Eagan Avenatti bankruptcy case

11:36  7   from 2017 to 2018.

11:37  8   Q    And when he was a client of yours, were you still

11:37  9   subletting?  Were you still working in the same location as

11:37  10  Mr. Avenatti?

11:37  11  A    No.

11:37  12  Q    You mentioned the Eagan Avenatti bankruptcy.  Was that

11:37  13  the Eagan Avenatti, LLP, bankruptcy at case number

11:37  14  8:17-bk-11961-CB?

11:37  15  A    Those numbers sound familiar to me.

11:37  16  Q    And who was your client in that bankruptcy matter?

11:37  17  A    Mr. Avenatti personally and Avenatti & Associates.

11:37  18  Q    And did Eagan Avenatti, the law firm, did they have

11:37  19  separate counsel?

11:37  20  A    Yes, they did.

11:37  21  Q    Do you know who was acting as the managing partner on

11:38  22  behalf of Eagan Avenatti during the Eagan Avenatti

11:38  23  bankruptcy?

11:38  24  A    I believe it was Mr. Avenatti.

11:38  25  Q    During your representation of Mr. Avenatti in that

11:38  1    bankruptcy, were you on the docket to receive filings in
11:38  2    that matter?
11:38  3    A    Yes.
11:38  4    Q    And you were also able as an attorney of record to file
11:38  5    documents in that matter; is that correct?
11:38  6    A    Yes.
11:38  7    Q    So whether something was filed by the attorneys
11:38  8    representing Eagan Avenatti or by Mr. Avenatti himself, you
11:38  9    would have received copies of those filings; is that
11:38  10   correct?
11:38  11   A    I would have received a notice from ECF that a document
11:38  12   had been filed and I would have access to it.
11:38  13   Q    And for you and I, we know what a notice from ECF is,
11:38  14   but what do you mean by that?
11:38  15   A    I would receive an e-mail from the bankruptcy court's
11:39  16   filing system that a pleading had been filed with the name
11:39  17   of the pleading and generally provide a link to open the
11:39  18   pleading.
11:39  19   Q    In the Eagan Avenatti bankruptcy matter, do you know
11:39  20   whether in January or on January 30th, 2018, whether
11:39  21   defendant sought to have the Eagan Avenatti bankruptcy
11:39  22   dismissed if certain conditions were met?
11:39  23   A    Yes.
11:39  24   Q    Are you aware that as part of that filing, that
11:39  25   defendant filed a declaration under penalty of perjury

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:39 | 1 | saying that on behalf of Eagan Avenatti he believed |
| 11:39 | 2 | dismissal of the bankruptcy case would be in the best |
| 11:39 | 3 | interest of the law firm? |
| 11:39 | 4 | MR. AVENATTI:  Leading.  Objection. |
| 11:40 | 5 | THE COURT:  Overruled. |
| 11:40 | 6 | THE WITNESS:  Sitting right here today I don't |
| 11:40 | 7 | remember the exact pleading or the declaration that was |
| 11:40 | 8 | filed. |
| 11:40 | 9 | BY MR. SAGEL: |
| 11:40 | 10 | Q    If you could look in Volume 5 -- would seeing the |
| 11:40 | 11 | pleading refresh your memory? |
| 11:40 | 12 | A    It would. |
| 11:40 | 13 | Q    If you could look in Volume 5 of the binders, it's |
| 11:40 | 14 | Exhibit 342.  It might be behind you. |
| 11:40 | 15 | A    Would you repeat that number. |
| 11:40 | 16 | Q    Exhibit 342, possibly focusing your attention on the |
| 11:41 | 17 | cover page of what is page 38 through 41. |
| 11:41 | 18 | A    (Witness retrieving document) |
| 11:41 | 19 | Q    Does that refresh your recollection that the defendant |
| 11:41 | 20 | filed a declaration under penalty of perjury in support of |
| 11:42 | 21 | the motion to dismiss the bankruptcy? |
| 11:42 | 22 | A    Yes. |
| 11:42 | 23 | Q    And that as part of defendant's declaration, that he |
| 11:42 | 24 | believed it was in the best interest of the law firm to have |
| 11:42 | 25 | the bankruptcy dismissed? |

11:42  1   A    Yes.

11:42  2   Q    And that filing was on January 30th, 2018?

11:42  3   A    Yes.

11:42  4   Q    Are you familiar pursuant to defendant's filing on

11:42  5   January 30, 2018, for the bankruptcy to be dismissed, there

11:42  6   were certain conditions that would need to be met?

11:42  7   A    I'm hesitating because those conditions I don't believe

11:42  8   were contained in the motion to dismiss.  They came about

11:42  9   later through a mediation.

11:42  10  Q    So are you saying you don't know whether it was at this

11:42  11  time or if it came later, or you don't -- I'm confused by

11:43  12  your answer.  Do you not know whether or not it was

11:43  13  contained in this filing?

11:43  14  A    My belief is that it was not, that it came about later

11:43  15  through a mediation that occurred before Judge Clarkson with

11:43  16  the subject being this motion.

11:43  17  Q    If you were to look at page 11 of the same exhibit you

11:43  18  were just looking at, the section that starts on page 11

11:43  19  that continues all the way to page 16, does this motion to

11:43  20  dismiss contain conditions that defendant would need to meet

11:43  21  in order to get his bankruptcy dismissed?

11:44  22  A    I will ask you to clarify what page numbers you're

11:44  23  looking it.  Are you looking at the Bates stamp numbers or

11:44  24  the page numbers on the bottom?

11:44  25  Q    Good question.  It's either the page numbers at the

| | | |
|---|---|---|
| 11:44 | 1 | bottom or even the document control page numbers at the top. |
| 11:44 | 2 | They match, so, for example, if you were to look at page 11 |
| 11:44 | 3 | of 67 in either location, all the way through page 16 of 67. |
| 11:44 | 4 | A    (Witness reviewing document) |
| 11:45 | 5 | Q    Maybe I can do this quicker.  Is this a true and |
| 11:45 | 6 | accurate copy of the motion that was filed on January 30th, |
| 11:45 | 7 | 2018, in re, Eagan Avenatti, LLP, bankruptcy? |
| 11:45 | 8 | A    It appears accurate to me. |
| 11:45 | 9 | Q    And based on the top line of every page, it has |
| 11:45 | 10 | document control numbers showing the document, the date, the |
| 11:45 | 11 | case number, and the description; is that correct? |
| 11:45 | 12 | A    That's correct. |
| 11:45 | 13 | Q    And those are things that are listed when something is |
| 11:45 | 14 | filed through the electronic -- the ECF system that you |
| 11:45 | 15 | mentioned; is that correct? |
| 11:45 | 16 | A    That's correct. |
| 11:45 | 17 | Q    And this appears to be a true and correct copy of this |
| 11:45 | 18 | filing on this date through the ECF system? |
| 11:45 | 19 | A    It does. |
| 11:45 | 20 |        MR. SAGEL:  At this time, Your Honor, the |
| 11:45 | 21 | government moves to admit Exhibit 342. |
| 11:45 | 22 |        MR. AVENATTI:  Objection, Your Honor.  Hearsay, |
| 11:45 | 23 | multiple levels, and 403. |
| 11:46 | 24 |        THE COURT:  Overruled.  342 will be received. |
| 11:46 | 25 |        (Exhibit 342 received in evidence) |

11:46   1   BY MR. SAGEL:

11:46   2   Q    Let me start with if we could pull up the first page.

11:46   3   The document we're talking about is "Debtor's Notice of

11:46   4   Motion and Motion for Order Approving Settlement and

11:46   5   Dismissing Case; Memorandum of Points and Authorities;

11:46   6   Declaration of Michael J. Avenatti in Support"; is that

11:46   7   correct?

11:46   8   A    That's correct, yes.

11:46   9   Q    And the debtor that it's referencing is Eagan Avenatti,

11:46   10  LLP?

11:46   11  A    Yes.

11:46   12  Q    And if we turn to page 12, this is under the overall

11:47   13  category dismissal of case up on page 11.  Do you see that?

11:47   14  A    Yes.

11:47   15  Q    It says pending and resolved matters.  Do you see that?

11:47   16  A    Yes.

11:47   17  Q    In the last sentence under there says:  All would be

11:47   18  resolved by the relief requested in this motion.  Did I read

11:47   19  that correctly?

11:47   20  A    Yes.

11:47   21  Q    And the relief requested in this motion is the

11:47   22  dismissal of the bankruptcy?

11:47   23          MR. AVENATTI:  Objection, leading.

11:47   24          THE COURT:  Sustained.

11:47   25  BY MR. SAGEL:

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:47  1    Q    What is the relief requested by this motion?

11:47  2    A    It was twofold.  It was to approve the settlement

11:47  3    between Eagan Avenatti and Mr. Frank's law firm amongst

11:48  4    others, and also in conjunction with that to dismiss the

11:48  5    bankruptcy case.

11:48  6    Q    And if you were to turn to page 13 -- well, it starts

11:48  7    on page 12 -- there is a Category No. 2 that says

11:48  8    "Resolution of United States Claims."  Do you see that?

11:48  9    A    Yes.

11:48  10   Q    Can you read the first two sentences under "Resolution

11:48  11   of United States Claims"?

11:48  12   A    "The United States is the Debtor's only creditor

11:48  13   claiming an interest in cash collateral.  The United States

11:48  14   on behalf of the IRS entered into a supplemented, interim

11:48  15   stipulation and renewed stipulations (the 'IRS Cash

11:49  16   Collateral Stipulations'), authorizing the estate's use of

11:49  17   cash collateral and granting adequate protection to the

11:49  18   United States in the form of monthly payments and

11:49  19   replacement liens; in accordance with its terms, the

11:49  20   supplemented, initial stipulation survives dismissal of the

11:49  21   case."

11:49  22   Q    And then if you go to the next paragraph, I don't want

11:49  23   to make you read all the legalese, but does the next

11:49  24   paragraph talk about what will be paid to the IRS as part of

11:49  25   this resolution of the United States claims?

11:49  1    A    Yes.

11:49  2    Q    If I could have you read the sentence that starts on

11:49  3    line 16 through 19 that starts, "The total."

11:49  4    A    "The total amount of the initial payment is

11:49  5    $1,508,422.30 consisting of all of the trust fund taxes in

11:49  6    the amount of $1,288,276.63 and 20 percent of the non-trust

11:50  7    fund taxes due as of February 28, 2018, in the amount of --

11:50  8    Q    And right before the sentence you read, it refers to

11:50  9    the initial payment due date.  Do you see that?

11:50  10   A    Yes.

11:50  11   Q    As it relates to that $1,508,422.30 payment, what was

11:50  12   your understanding of what would need to happen with that

11:50  13   amount as it related to the dismissal of the bankruptcy?

11:50  14   A    It would need to be paid.

11:50  15   Q    On March 15th, 2018, did your law firm receive a wire

11:50  16   transfer into its attorney/client trust account from Eagan

11:51  17   Avenatti in the amount of $2,828,423.30?

11:51  18   A    Yes.

11:51  19   Q    Why did your law firm's attorney/client trust account

11:51  20   receive that wire?

11:51  21   A    As I referenced before, there was a mediation that

11:51  22   followed the filing of this motion where certain creditors

11:51  23   who had objections to the dismissal of the case, their

11:51  24   issues were raised in the mediation with Judge Clarkson.

11:51  25            At the conclusion of that mediation, the agreement

| | | |
|---|---|---|
| 11:51 | 1 | that came about was that the amount of the initial payment |
| 11:51 | 2 | to the IRS that we just talked about, the amount of |
| 11:51 | 3 | attorneys' fees due to the firm Pachulski Stang who was |
| 11:51 | 4 | representing the law firm Eagan Avenatti in bankruptcy, and |
| 11:52 | 5 | the attorney for the creditors committee, the combined |
| 11:52 | 6 | amount of their fees and initial payment would need to be |
| 11:52 | 7 | paid through our firm's trust account, at which point I was |
| 11:52 | 8 | to file a declaration with the Court attesting to the fact |
| 11:52 | 9 | that our firm's trust account had received those funds. |
| 11:52 | 10 | And at that point, the agreement through the |
| 11:52 | 11 | mediation was that at that point the judge would dismiss the |
| 11:52 | 12 | case, and within ten days thereafter our firm was to |
| 11:52 | 13 | disburse the monies to the three parties -- the Internal |
| 11:52 | 14 | Revenue Service, the Pachulski Stang Firm, and the Dinsmore |
| 11:52 | 15 | Stohl Firm. |
| 11:52 | 16 | Q    I'm going to probably break some of that down in the |
| 11:52 | 17 | next few questions, but let's start with why was the money |
| 11:52 | 18 | sent to your attorney/client trust account? |
| 11:52 | 19 | A    That was what was agreed to at the mediation. |
| 11:53 | 20 | Q    How much of the money that went into -- and when I say |
| 11:53 | 21 | your firm, are we talking about Sulmeyer Kupetz's |
| 11:53 | 22 | attorney/client trust account? |
| 11:53 | 23 | A    Yes. |
| 11:53 | 24 | Q    How much of the money, the 2.8 approximately million |
| 11:53 | 25 | dollars that was wired into Sulmeyer Kupetz's |

| | | |
|---|---|---|
| 11:53 | 1 | attorney/client trust account, was kept by your firm? |
| 11:53 | 2 | A    Zero. |
| 11:53 | 3 | Q    You mentioned based on the agreements and the mediation |
| 11:53 | 4 | that you would be distributing the money; is that correct? |
| 11:53 | 5 | A    Correct. |
| 11:53 | 6 | Q    And did your firm distribute the money based on the |
| 11:53 | 7 | agreements? |
| 11:53 | 8 | MR. AVENATTI:  Objection, Your Honor.  Relevance |
| 11:53 | 9 | and 403. |
| 11:53 | 10 | THE COURT:  Overruled. |
| 11:53 | 11 | THE WITNESS:  Yes. |
| 11:53 | 12 | BY MR. SAGEL: |
| 11:54 | 13 | Q    If you could look at Exhibit 392. |
| 11:54 | 14 | A    Same volume? |
| 11:54 | 15 | Q    Good question.  No.  It looks like it's Volume 7. |
| 11:54 | 16 | A    Did you say 392? |
| 11:54 | 17 | Q    Yes, 392.  Do you recognize Exhibit 392? |
| 11:54 | 18 | A    Yes, I do. |
| 11:54 | 19 | Q    And what is Exhibit 392? |
| 11:54 | 20 | A    This is the copy of a check from our firm's client |
| 11:55 | 21 | trust account to the Internal Revenue Service. |
| 11:55 | 22 | Q    Is it a fair and accurate copy of the check from your |
| 11:55 | 23 | firm's trust account to the Internal Revenue Service? |
| 11:55 | 24 | MR. AVENATTI:  Objection, Your Honor.  Relevance |
| 11:55 | 25 | and 403. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:55 | 1 | THE COURT:  Overruled. |
| 11:55 | 2 | MR. SAGEL:  The government moves to admit |
| 11:55 | 3 | Exhibit 392, Your Honor. |
| 11:55 | 4 | MR. AVENATTI:  Same objection, Your Honor, and |
| 11:55 | 5 | hearsay. |
| 11:55 | 6 | THE COURT:  Overruled.  392 will be received. |
| 11:55 | 7 | (Exhibit 392 received in evidence) |
| 11:55 | 8 | BY MR. SAGEL: |
| 11:55 | 9 | Q    And you mentioned it was paid to the -- who is the |
| 11:55 | 10 | pay to the order of? |
| 11:55 | 11 | A    The Internal Revenue Service. |
| 11:55 | 12 | Q    And what's the date of this check? |
| 11:55 | 13 | A    I'm sorry.  I don't have my glasses. |
| 11:55 | 14 | Q    It might be in the upper left corner of the check. |
| 11:55 | 15 | A    It appears to be March 23rd, 2018.  I'm sorry, |
| 11:56 | 16 | March 26th, 2018. |
| 11:56 | 17 | Q    And then if you can look at the amount on the check, |
| 11:56 | 18 | what's the amount that's on the check? |
| 11:56 | 19 | A    $1,508,422.30. |
| 11:56 | 20 | Q    And this is the same amount as what was agreed to, paid |
| 11:56 | 21 | to the IRS? |
| 11:56 | 22 | A    Yes. |
| 11:56 | 23 | Q    After you and your firm distributed the money pursuant |
| 11:56 | 24 | to the agreement, including this check to the IRS, did you |
| 11:56 | 25 | file the declaration as you mentioned you said you needed to |

11:56  1    do?

11:56  2    A    No.  I think your timeline is off.  The declaration was

11:56  3    filed when the money was received by our firm's trust

11:57  4    account, and the case was then dismissed.  My order from the

11:57  5    Court was to disburse the funds within ten days, I believe,

11:57  6    of the dismissal.

11:57  7            MR. AVENATTI:  Move to strike as nonresponsive,

11:57  8    Your Honor.

11:57  9            THE COURT:  Denied.

11:57  10   BY MR. SAGEL:

11:57  11   Q    Thank you for the clarification.  Did you file the

11:57  12   declaration when you received the funds?

11:57  13   A    Yes.

11:57  14   Q    Do you know what happened to the bankruptcy case of

11:57  15   Eagan Avenatti upon your declaration to the bankruptcy

11:57  16   court?

11:57  17   A    The bankruptcy case was dismissed.

11:57  18   Q    What impact did paying the Internal Revenue Service

11:57  19   their money pursuant to the agreement, what impact did that

11:57  20   have on the dismissal?

11:57  21           MR. AVENATTI:  Objection.  Speculation, Your

11:57  22   Honor.  Vague.

11:57  23           THE COURT:  Overruled.

11:57  24           THE WITNESS:  It was a condition of the dismissal.

        25

11:57  1   BY MR. SAGEL:

11:58  2   Q    Do you know where defendant got the $2.82 million that

11:58  3   he wired in your attorney/client trust account from?

11:58  4   A    No.

11:58  5   Q    Did defendant ever tell you that he used client funds

11:58  6   to send you that money?

11:58  7         MR. AVENATTI:  Objection, Your Honor.  Lacks

11:58  8   foundation.  It's argumentative.

11:58  9         THE COURT:  Overruled.

11:58  10        THE WITNESS:  I think whether he told me or not

11:58  11  would be covered by the attorney/client privilege.

11:58  12        MR. SAGEL:  No further questions, Your Honor.

11:58  13        THE COURT:  We will take the lunch break here,

11:58  14  ladies and gentlemen.  We'll resume at 1:30.  Please

11:58  15  remember the admonition not to discuss the case with anyone

11:58  16  and not to form any opinions on the issues in the case until

11:58  17  it's submitted to you.  And please do not do any research.

11:58  18        So we will see you at 1:30.  Thank you.

11:58  19        (Jury not present)

11:59  20        THE COURT:  Sir, you may step down.

11:59  21        Mr. Avenatti.

11:59  22        MR. AVENATTI:  Yes, sir.

11:59  23        THE COURT:  Do you want to take up an issue

11:59  24  regarding a witness?

11:59  25        MR. AVENATTI:  I'm not certain of the order, but

| | | |
|---|---|---|
| 11:59 | 1 | assuming that Mr. Bellis is going to testify this afternoon, |
| 12:00 | 2 | we had filed on the docket a number of objections relating |
| 12:00 | 3 | to the 1006 summaries that the government intends on having |
| 12:00 | 4 | Mr. Bellis utilize. |
| 12:00 | 5 | So we would like those objections taken up before |
| 12:00 | 6 | Mr. Bellis is permitted to testify and utilize the summaries |
| 12:00 | 7 | that the government only recently provided. |
| 12:00 | 8 | THE COURT:  Do you have a docket number for me? |
| 12:00 | 9 | MR. AVENATTI:  Yes, sir.  One moment, please. |
| 12:00 | 10 | All right, Your Honor.  Docket 666 filed |
| 12:01 | 11 | August 8th, titled defendant's opposition to government's |
| 12:01 | 12 | notice regarding summary exhibits disclosed as trial |
| 12:01 | 13 | Exhibits 457 and 463 and 468, and objection to the use of |
| 12:01 | 14 | such exhibits. |
| 12:01 | 15 | THE COURT:  Why don't you come back at 1:15 and |
| 12:01 | 16 | we'll take it up then. |
| 12:01 | 17 | MR. AVENATTI:  Thank you, sir. |
| 12:01 | 18 | (Recess taken at 12:01 p.m.) |
| 12:01 | 19 | *   *   * |
| 12:01 | 20 | |
| 12:01 | 21 | |
| 12:01 | 22 | |
| 12:01 | 23 | |
| 12:01 | 24 | |
| 12:01 | 25 | |

CERTIFICATE


        I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  August 11, 2021



                    /s/   Sharon A. Seffens  8/11/21
                    _____
                    SHARON A. SEFFENS, U.S. COURT REPORTER

**MR. AVENATTI: [74]** 4/9 4/20 5/11 6/3 6/19 7/24 8/1 8/9 9/5 12/13 12/17 13/16 14/17 15/21 16/4 16/12 16/15 17/8 21/25 22/7 23/9 23/17 24/5 24/10 24/19 25/7 27/15 31/14 31/20 43/10 43/18 43/22 47/11 50/2 50/25 53/3 53/17 55/18 56/5 58/12 60/4 61/7 64/20 65/21 66/23 69/13 69/23 70/8 70/18 70/24 75/8 78/21 83/16 83/21 84/10 88/7 90/2 90/16 95/17 96/18 96/20 100/4 102/22 103/23 107/8 107/24 108/4 109/7 109/21 110/7 110/22 110/25 111/9 111/17
**MR. SAGEL: [11]** 4/5 20/3 20/23 21/2 21/10 21/24 96/24 97/9 102/20 108/2 110/12
**MR. WYMAN: [50]** 6/1 10/15 11/1 11/3 12/6 17/17 22/12 22/19 23/4 23/8 23/23 24/9 24/13 25/3 25/19 26/22 27/9 28/9 29/12 32/14 36/3 38/6 41/15 46/8 48/17 50/22 52/18 58/10 59/12 60/8 61/4 61/9 65/19 66/5 67/22 70/3 70/7 73/6 78/10 79/8 82/5 82/12 83/15 83/18 84/2 84/20 90/24 94/16 95/9 96/10
**THE CLERK: [7]** 4/3 25/1 25/14 25/17 97/1 97/5 97/7
**THE COURT: [103]** 4/8 4/13 5/9 5/23 6/2 6/11 7/22 7/25 8/6 9/3 10/13 10/23 11/2 12/2 12/12 12/14 12/16 13/15 14/15 15/14 15/23 16/7 16/14 16/25 17/12 17/20 20/20 21/1 21/7 21/11 22/4 22/10 22/18 23/3 23/5 23/15 23/21 24/22 25/6 25/18 27/17 31/15 31/22 43/12 43/19 43/23 46/9 48/19 50/4 50/23 52/20 58/11 58/13 59/13 60/6 60/9 61/3 61/5 61/8 64/22 66/6 67/23 69/15 69/21 70/2 70/6 70/13 70/17 73/9 75/9 78/11 78/22 79/9 82/6 82/13 83/20 84/3 84/11 84/21 90/7 93/18 94/17 95/10 95/18 96/12 96/19 96/22 97/8 100/5 102/24 103/24 107/10 108/1 108/6 109/9 109/23 110/9 110/13 110/20 110/23 111/8 111/15
**THE WITNESS: [21]** 25/16 27/18 31/23 43/24 50/6 50/24 59/14 60/10 61/6 64/24 66/7 67/24 82/14 84/4 84/22 97/3 97/6 100/6 107/11 109/24 110/10

**$**
**$1,288,276.63 [1]** 105/6
**$1,508,422.30 [3]** 105/5 105/11 108/19
**$1.6 [6]** 8/21 8/25 9/6 9/8 10/17 10/25
**$1.6 million [6]** 8/21 8/25 9/6 9/8 10/17 10/25
**$147,972 [1]** 27/7
**$2,828,423.30 [1]** 105/17
**$2.82 [1]** 110/2
**$2.82 million [1]** 110/2
**$20 [2]** 61/20 62/1
**$20 million [2]** 61/20 62/1
**$25 [1]** 21/5
**$25 million [1]** 21/5
**$30 [1]** 52/17
**$30 million [1]** 52/17
**$4 [18]** 8/18 9/6 9/9 14/23 37/7 37/20 38/3 39/11 40/12 41/25 42/20 42/22 43/7 44/12 93/7 93/10 93/15 94/12
**$4 million [17]** 8/18 9/6 9/9 14/23 37/7 37/20 38/3 39/11 40/12 41/25 42/20 42/22 44/12 93/7 93/10 93/15 94/12
**$4.1 [1]** 28/3
**$4.1 million [1]** 28/3
**$550,000 [1]** 22/21
**$600,000 [3]** 14/13 14/14 22/17
**$8 [1]** 28/22
**$8 million [1]** 28/22
**$8,146,288 [1]** 27/14

**'**
**'IRS [1]** 104/15

**/**
**/s [1]** 112/15

**0**
**0870 [1]** 1/21

**1**
**1-1053 [1]** 1/20
**1.6 million [1]** 10/19
**10 [3]** 1/17 4/1 23/7
**1006 [7]** 15/11 15/15 15/18 15/20 15/23 16/3 16/19 17/3 111/3
**102 [1]** 3/9
**1053 [1]** 1/20
**107 [1]** 2/16
**108 [1]** 3/9
**109 [1]** 5/2
**10:24 [1]** 70/14
**10:40 [1]** 24/16
**10:44 [1]** 70/15
**10th [7]** 35/9 35/23 66/11 66/12 87/23 88/18 94/7
**11 [7]** 36/2 94/3 101/17 101/18 102/2 103/13 112/13
**110 [1]** 5/2
**11th [18]** 36/1 36/10 37/13 38/10 38/23 39/14 40/14 41/23 66/15 66/17 87/12 87/17 87/18 87/23 88/18 89/2 89/3 94/7
**12 [3]** 34/8 103/12 104/7
**12:01 [1]** 111/18
**12th [4]** 66/20 67/3 67/9 88/18
**13 [5]** 34/14 87/7 87/16 94/7 104/6
**13th [2]** 92/1 92/4
**14 [1]** 34/21
**146,000 [2]** 33/16 38/2
**14th [1]** 42/3
**15 [1]** 77/18
**15th [1]** 105/15
**16 [4]** 35/8 101/19 102/3 105/3
**168,000 [1]** 41/9
**16th [1]** 52/1
**17 [3]** 1/12 35/18 37/11
**17th [1]** 53/25
**18th [1]** 79/6
**19 [2]** 38/22 105/3
**1:15 [1]** 111/15
**1:30 [2]** 110/14 110/18
**1st [3]** 30/23 32/4 81/13

**2**
**2.8 approximately [1]** 106/24
**20 [3]** 14/11 14/18 70/4
**20 percent [1]** 105/6
**2017 [5]** 47/2 52/1 53/25 56/17 98/7
**2018 [35]** 26/7 29/20 36/10 38/10 42/25 44/6 62/25 68/24 71/18 73/10 73/13 79/13 79/14 79/19 79/19 79/21 79/21 80/11 80/21 81/13 83/6 89/6 89/15 89/22 89/23 92/2 92/4 98/7 99/20 101/2 101/5 102/7 105/7 105/15 108/15 108/16
**2019 [9]** 21/5 44/14 57/5 57/19 69/9 78/7 79/17 79/24 86/25
**2020 [2]** 19/10 20/22
**2021 [4]** 1/17 4/1 79/6 112/13
**20th [1]** 73/12
**21 [1]** 112/15
**213 [1]** 2/8
**22 [3]** 39/13 59/16 94/8
**23 [3]** 87/17 87/17 94/8
**23rd [7]** 26/12 26/20 27/6 27/12 31/18 32/1 108/15
**24 [2]** 40/14 88/13
**24th [2]** 88/19 88/21
**25 [4]** 3/6 77/1 77/5 87/25
**25th [2]** 26/7 26/16
**26 [4]** 28/16 64/10 65/2 97/19
**265 [5]** 46/18 46/18 46/20 46/23 47/10
**268 [5]** 53/1 53/23 54/7 55/4 55/16
**26th [1]** 108/16
**273 [3]** 62/22 68/4 90/23
**274 [12]** 32/14 37/10 38/21 70/20 74/5 74/6

74/23 75/15 75/18 77/10 87/6 94/8
**175 [1]** 2/22
**278 [7]** 76/6 76/6 76/20 76/24 78/15 88/3 90/9
**28 [2]** 105/7 112/7
**280 [3]** 25/25 26/4 28/9
**281 [8]** 29/11 81/6 81/9 81/12 81/20 81/22 82/1 82/8
**284 [1]** 36/4
**285 [2]** 38/6 38/9
**296 [4]** 53/16 53/17 53/21 54/7
**29th [2]** 79/18 79/21

**3**
**30 [4]** 14/19 71/14 87/25 101/5
**30th [9]** 29/20 29/24 71/9 71/11 81/13 88/10 99/20 101/2 102/6
**31 [1]** 41/15
**312 [1]** 2/7
**338-3598 [1]** 2/12
**342 [6]** 3/9 100/14 100/16 102/21 102/24 102/25
**35 [1]** 42/2
**3598 [1]** 2/12
**36 [1]** 42/15
**37 [2]** 16/16 56/12
**38 [1]** 100/17
**392 [9]** 3/9 107/13 107/16 107/17 107/17 107/19 108/3 108/6 108/7
**394 [1]** 18/2
**397 [1]** 18/2
**3rd [3]** 32/19 32/23 33/8

**4**
**4 million [10]** 33/15 34/3 34/13 37/22 37/24 38/2 39/18 39/19 41/9 41/9
**4.1 million [1]** 34/2
**4.146 million [1]** 43/4
**40 [1]** 24/11
**401 [2]** 20/18 82/5
**403 [12]** 8/24 10/4 10/11 19/25 20/18 52/18 67/22 79/8 82/5 102/23 107/9 107/25
**41 [1]** 100/17
**411 [2]** 1/20 2/11
**420 [1]** 45/5
**44 [1]** 16/16
**45 [1]** 69/23
**457 [1]** 111/13
**46 [1]** 3/6
**463 [1]** 111/13
**468 [1]** 111/13
**48 [2]** 19/17 21/23
**481-4900 [1]** 2/17
**4900 [1]** 2/17
**4M [2]** 40/6 40/10
**4th [6]** 1/20 33/18 57/19 79/19 79/21 79/24

**5**
**543-0870 [1]** 1/21
**546 [1]** 4/16
**564 [1]** 4/17

**6**
**600 [1]** 4/18
**63 [2]** 79/23 80/1
**641 [1]** 19/6
**666 [1]** 111/10
**6683 [1]** 2/8
**67 [2]** 102/3 102/3

**7**
**70 [1]** 3/6
**703 [1]** 18/6
**714 [2]** 1/21 2/12
**753 [1]** 112/6
**7th [1]** 34/9

**8**
**8.1 [1]** 28/2
**8.1 million [4]** 29/8 33/24 34/2 92/20

**8**
**8/11/21** [1] 112/15
**8000** [1] 2/11
**894-6683** [1] 2/8
**8:17-bk-11961-CB** [1] 98/14
**8:28** [1] 4/1
**8th** [3] 66/9 91/23 111/11

**9**
**90012** [1] 2/8
**92672** [1] 2/16
**92701** [2] 1/20 2/11
**93** [1] 3/6
**949** [1] 2/17
**97** [1] 3/6
**9:02** [1] 24/23
**9:10** [1] 24/24
**9th** [6] 19/10 34/18 87/16 87/23 88/17 94/7

**A**
**a.m** [6] 4/1 24/23 24/24 68/3 70/14 70/15
**ability** [2] 22/24 58/7
**able** [12] 11/5 11/13 14/6 17/5 37/17 37/19 37/20 41/24 42/19 54/19 54/25 99/4
**about** [95] 7/16 8/11 8/20 10/3 10/6 20/7 20/11 20/13 21/4 22/1 26/17 27/2 28/3 31/19 32/2 32/5 32/23 32/24 41/4 42/17 43/2 44/2 45/13 45/22 46/16 47/19 52/2 53/2 54/1 55/12 56/10 62/21 62/23 63/3 63/20 64/2 64/4 64/12 64/16 64/17 65/2 66/11 66/15 68/13 69/23 70/4 70/5 70/22 71/9 71/14 73/12 73/21 77/7 77/14 79/13 79/17 79/18 79/19 80/3 80/17 81/5 81/9 81/20 82/3 82/19 83/4 84/13 85/4 86/21 87/12 87/15 89/4 89/7 90/22 91/2 91/10 91/16 91/22 92/6 92/23 93/10 93/15 93/22 93/24 94/4 94/6 94/7 94/9 94/19 101/8 101/14 103/3 104/24 106/1 106/2 106/21
**above** [1] 112/9
**above-entitled** [1] 112/9
**Absolutely** [1] 11/1
**academic** [1] 6/2
**accelerate** [1] 65/9
**access** [1] 99/12
**accommodated** [1] 54/24
**accompanied** [1] 17/15
**accomplish** [3] 50/10 52/12 52/23
**accordance** [1] 104/19
**according** [6] 9/7 10/2 63/23 66/16 88/22 88/23
**account** [32] 9/21 9/21 9/22 9/22 10/1 10/2 11/4 11/4 11/7 11/11 11/12 56/18 62/5 62/11 62/17 63/7 63/15 64/3 67/21 92/17 92/18 105/16 105/19 106/7 106/9 106/18 106/22 107/1 107/21 107/23 109/4 110/3
**accounting** [1] 10/20
**accounts** [3] 9/19 9/20 11/18
**accurate** [4] 59/3 102/6 102/8 107/22
**acquiescent** [2] 23/10
**acquire** [1] 54/19
**acting** [1] 98/21
**actual** [1] 12/9
**actually** [5] 15/21 17/17 47/20 66/24 92/20
**additional** [7] 6/13 49/22 51/4 51/5 63/16 79/14 93/4
**Additionally** [1] 7/20
**addressed** [3] 8/6 8/7 8/12
**adequate** [1] 104/17
**admissible** [9] 6/8 6/9 6/22 7/11 7/13 12/1 12/1 18/3 18/8
**admission** [1] 7/7
**admit** [2] 102/11 108/2
**admitted** [5] 4/25 7/12 18/3 18/7 82/3
**admonition** [2] 69/16 110/15
**advance** [1] 4/21
**advice** [4] 50/7 50/9 51/6 91/18
**advising** [1] 58/7
**advisors** [4] 60/14 60/18 95/14 95/23
**advisory** [2] 2/15 4/10
**advocate** [1] 95/14

**affairs** [1] 19/11
**affiant** [2] 71/20 76/21
**affiliation** [1] 45/4
**after** [18] 10/4 23/19 28/12 32/4 37/11 39/3 41/23 47/18 47/22 52/2 54/1 62/10 68/9 73/2 75/14 79/11 79/12 108/23
**afternoon** [1] 111/1
**afterwards** [1] 69/25
**again** [11] 9/5 22/15 22/22 38/21 39/3 52/8 59/12 60/3 61/22 90/20 95/16
**against** [1] 72/15
**agency** [1] 44/8
**agent** [5] 4/7 24/3 24/17 25/5 57/15
**agents** [7] 19/2 57/19 57/25 58/9 59/10 64/16 75/25
**ago** [2] 37/25 46/24
**agree** [2] 48/25 49/24
**agreed** [2] 106/19 108/20
**agreement** [16] 10/20 53/11 53/21 53/24 54/5 54/6 54/18 54/18 55/4 56/16 92/22 93/1 105/25 106/10 108/24 109/19
**agreements** [5] 54/16 55/6 55/23 107/3 107/7
**ahead** [2] 41/15 87/6
**air** [1] 24/2
**airport** [1] 24/1
**Alex** [1] 25/3
**ALEXANDER** [2] 2/5 4/6
**Alexis** [1] 45/11
**all** [61] 12/4 12/4 12/18 14/1 16/8 16/15 17/2 17/15 18/25 19/6 19/14 19/20 22/4 41/23 47/17 49/16 54/9 55/11 55/15 58/5 66/11 68/21 68/24 69/10 74/8 74/16 74/9 76/15 76/20 81/12 87/2 87/20 89/4 93/24 94/11 101/19 102/3 103/17 104/23 105/5 111/10
**alleged** [10] 7/3 9/5 72/5 73/21 86/12 86/17 86/21 93/24 94/4 94/12 94/15
**allowance** [4] 4/23
**allows** [1] 18/6
**almost** [1] 47/18
**along** [2] 25/8 81/21
**already** [8] 18/22 22/20 23/1 29/12 36/4 43/7 91/10 99/4 104/4
**also** [9] 18/7 26/2 26/20 27/13 38/7 85/4 91/10 99/4 104/4
**am** [5] 15/1 16/19 68/19 69/1 95/5
**AMERICA** [3] 1/9 4/4 25/2
**among** [1] 56/8
**amongst** [1] 104/3
**amount** [19] 13/20 22/20 22/25 23/2 27/6 27/14 27/21 27/23 55/8 105/4 105/6 105/7 105/13 105/17 106/1 106/2 106/6 108/17 108/7 108/20
**Ana** [1] 1/16 1/20 2/11 4/1
**analysis** [2] 19/19 22/16
**Andre** [2] 57/12 58/4
**Android** [2] 74/14 74/15
**Angeles** [1] 2/8
**annotations** [1] 12/10
**another** [10] 59/21 11/4 11/7 14/19 21/18 32/9 35/19 57/12 66/19 67/6
**answer** [6] 14/6 16/7 43/14 46/14 75/21 101/12
**answered** [6] 58/5 58/10 59/12 78/10 79/8
**any** [61] 9/1 9/1 9/19 11/16 11/23 11/24 13/19 14/7 20/2 20/16 40/4 42/18 43/6 44/14 45/4 45/7 45/10 55/11 61/14 68/16 68/18 69/17 69/19 71/11 73/21 74/25 75/25 78/14 78/24 79/1 79/14 80/12 80/15 85/17 85/20 85/25 88/18 89/1 93/3 93/6 95/13 110/16 110/17
**anybody** [1] 42/17
**anyone** [4] 14/6 46/2 69/17 110/15
**anything** [12] 20/17 20/25 22/11 46/5 62/16 64/4 64/11 64/25 72/5 71/12 73/21 85/13
**anytime** [1] 68/6
**anyway** [1] 14/2
**APPEARANCES** [1] 2/1
**appears** [4] 41/11 102/8 102/17 108/15
**appreciate** [1] 6/12 21/10 21/11
**appreciated** [1] 37/15

**approach** [2] 52/5 58/12
**approaching** [1] 51/17
**appropriate** [4] 6/6 10/9 18/16 18/18
**approval** [2] 12/19 12/25
**approve** [2] 13/21 104/2
**Approving** [1] 103/4
**approximately** [10] 22/17 28/2 29/8 33/14 33/15 38/2 44/4 61/20 97/19 106/24
**apps** [3] 74/11 80/15 80/16
**April** [31] 26/7 26/12 26/16 26/20 27/6 27/12 28/16 29/20 29/24 31/18 32/1 57/5 57/19 58/19 68/24 69/9 73/10 73/12 78/7 79/17 79/24 81/13 83/6 83/6 86/19 86/20 86/25 88/10 89/22 89/23 92/11
**April 20th** [1] 73/12
**April 23rd** [6] 26/12 26/20 27/6 27/12 31/18 32/1
**April 25th** [2] 26/7 26/16
**April 30th** [4] 29/20 29/24 81/13 88/10
**April 4** [1] 86/25
**April 4th** [2] 57/19 79/24
**April of** [2] 78/7 79/17
**arbitration** [1] 13/22
**are** [62] 5/17 6/8 6/22 7/11 10/10 10/23 11/8 12/1 12/8 15/14 18/6 23/15 23/17 25/14 25/14 26/16 29/25 34/5 38/2 38/16 41/1 42/3 44/20 54/1 54/10 63/25 67/14 68/13 68/15 68/16 68/21 70/21 74/5 74/23 76/6 76/17 76/21 76/23 77/18 81/12 82/10 85/1 85/15 85/15 85/18 85/20 85/21 85/24 85/25 86/2 86/5 86/8 87/9 96/22 97/14 99/24 101/4 101/10 101/23 102/13 102/13 106/21
**are or** [1] 74/5
**aren't** [1] 54/9
**arguing** [1] 8/11
**argument** [1] 17/21
**argumentative** [3] 43/11 61/2 65/20 65/21 66/5 110/8
**armored** [1] 72/15
**Around** [2] 33/6 73/11
**arrive** [1] 33/22
**arrived** [2] 24/14 24/17
**as** [91] 6/14 6/24 7/10 7/14 7/22 8/2 8/4 8/14 8/17 9/11 9/16 9/24 10/19 10/24 11/15 12/2 12/7 12/10 13/12 13/12 13/13 13/17 18/10 18/11 18/11 18/12 18/14 18/23 19/2 19/19 20/17 21/8 21/12 22/14 29/15 30/20 30/21 31/2 33/8 36/4 36/6 36/11 38/9 39/20 41/1 44/18 45/15 48/5 49/15 49/19 49/24 50/9 54/24 55/8 55/8 56/16 60/8 66/20 66/25 68/20 68/24 71/19 73/18 73/24 74/2 75/8 76/19 78/15 78/24 80/3 83/1 84/1 84/18 89/6 90/5 95/12 98/9 98/21 99/4 99/24 100/23 104/24 105/7 105/11 105/13 105/21 108/20 108/25 109/7 111/12
**ASAP** [4] 30/16 30/21 32/21 83/2
**ask** [32] 14/3 17/5 17/6 22/24 37/10 44/17 46/16 51/4 55/4 55/11 60/3 61/14 72/21 73/21 74/19 75/5 75/7 75/11 75/15 76/14 77/20 83/17 88/3 89/1 89/5 89/8 92/14 92/15 93/14 95/16 95/21 101/22
**asked** [48] 21/8 30/20 46/22 49/1 49/6 49/8 49/9 53/2 56/9 58/10 59/12 60/18 60/23 62/23 63/19 64/2 64/16 70/22 71/4 71/14 78/3 78/7 78/10 78/13 79/5 79/8 79/9 79/12 79/17 80/3 81/9 81/19 82/2 82/4 82/19 82/25 83/16 85/4 87/11 90/22 91/10 91/21 92/22 93/9 93/22 94/3 94/7 94/19
**asking** [26] 26/17 38/19 42/3 42/6 61/11 78/18 78/25 84/13 87/15 94/9
**asks** [1] 35/9
**assault** [1] 72/15
**asset** [5] 34/6 54/18 92/25
**Assistant** [7] 2/4 2/6 2/10 57/12 57/19 58/4 59/9
**associate** [1] 32/9
**Associates** [1] 98/17

**A**

association [1] 7/4
assuming [4] 17/1 43/10 84/25 111/1
attached [1] 17/18
attachment [4] 36/25 37/3 37/17 38/3
attempted [1] 20/11
attended [3] 19/13 19/13 73/19
attention [5] 5/4 81/6 81/17 81/22 100/16
attesting [1] 106/8
attorney [17] 2/3 2/4 2/6 2/10 13/21 57/13 58/4 97/15 99/4 105/16 105/19 106/5 106/18 106/22 107/1 110/3 110/11
attorney/client [7] 105/16 105/19 106/18 106/22 107/1 110/3 110/11
attorneys [17] 57/20 59/10 76/13 76/19 78/19 89/20 99/7
attorneys' [3] 9/16 93/4 106/3
audibly [1] 46/14
August [5] 1/17 4/1 52/1 111/11 112/13
August 16th [1] 52/1
August 8th [1] 111/11
AUSAs [1] 64/16
authenticated [1] 6/15
Authorities [1] 103/5
authorize [6] 40/25 41/19 45/16 45/19 46/1 46/4
authorizing [1] 104/16
available [1] 31/3
AVENATTI [57] 1/11 2/14 4/4 4/10 4/17 4/19 10/24 18/9 18/14 19/4 25/2 25/8 29/4 29/7 30/11 32/8 32/13 33/5 36/20 39/9 42/14 46/9 68/22 68/22 70/17 73/2 91/15 91/17 91/20 93/18 97/24 98/1 98/3 98/6 98/10 98/12 98/13 98/17 98/17 98/18 98/22 98/22 98/24 98/25 99/8 99/8 99/19 99/21 100/1 102/7 103/6 103/9 104/3 105/17 106/4 109/15 109/15
Avenatti's [6] 4/15 18/24 19/9 19/11 19/20 69/21
Avenida [1] 2/16
avoid [6] 60/21 60/24 61/20 61/25 63/15 95/15
aware [9] 82/10 85/15 85/15 85/20 85/24 86/2 86/5 86/8 99/24
away [3] 56/25 57/2 67/19

**B**

back [26] 26/22 28/9 32/5 32/14 32/21 35/6 35/12 36/16 37/10 38/21 41/2 41/12 41/23 50/2 53/23 60/4 64/21 67/2 71/15 80/6 87/20 88/22 89/24 91/24 91/17 111/15
Bahamonde [2] 22/2 22/3
balancing [3] 19/19 20/1 22/2
bank [46] 4/24 6/9 6/14 6/21 6/22 7/3 7/5 7/10 7/14 7/16 18/1 30/9 30/20 34/16 35/7 35/12 37/14 37/16 38/10 38/17 38/18 39/6 39/9 39/16 39/22 39/23 39/24 39/25 40/25 41/5 41/5 62/11 62/16 82/25 82/25 86/5 86/8 86/10 92/11 92/16 94/14 94/20 94/24 95/3
bankruptcy [23] 97/21 98/6 98/12 98/13 98/16 98/23 99/1 99/15 99/19 99/21 100/2 100/21 100/25 101/5 101/21 102/7 103/22 104/5 105/13 106/4 109/14 109/15 109/17
banks [2] 34/5 41/20
bar [3] 12/20 13/10 13/10
Barela [1] 45/13
Baristas [1] 45/2
based [8] 12/1 30/10 30/11 44/17 84/18 102/9 107/3 107/6
basically [2] 38/19 55/7
basically showing [1] 38/19
basis [6] 13/1 13/3 13/7 13/24 20/6 21/16
Bates [2] 16/19 101/23
be [99] 4/11 4/19 5/6 6/9 7/2 7/12 7/16 7/22 8/5 8/11 9/5 9/13 11/5 11/10 11/13 12/18 13/23 14/6 16/22 17/5 18/7 18/10 18/13 18/23 19/15 19/21 19/22 20/5 20/8 21/14 21/22 22/6 23/10 24/10 24/18 26/1 27/13 27/20 27/23 28/1 30/2 30/8 31/12 32/2 32/12 33/4 34/19

**B** (continued — col 2)

36/21 37/6 37/17 37/18 39/17 40/6 41/8 41/19 40/17 . . . [illegible]

36/5 59/18 59/5 . . . 56/23
59/3 60/23 60/24 61/8 62/11 67/10 69/5 69/7 69/8 70/10 71/15 75/9 78/22 84/11 84/22 92/17 92/17 94/21 95/24 95/24 96/19 100/2 100/14 101/5 101/6 102/17 102/24 103/17 104/24 105/14 106/6 107/4 108/6 108/14 108/15 110/17
Beach [2] 44/10 98/3
bearing [1] 9/9
because [26] 5/17 5/22 13/18 14/3 16/21 20/7 36/23 38/18 43/24 48/8 48/11 50/19 51/11 51/16 60/13 60/15 60/18 64/7 65/17 67/20 70/9 81/1 84/7 89/2 91/12 101/7
become [8] 8/13 13/25
becoming [2] 28/18 28/21
been [24] 4/25 6/9 9/25 10/18 12/3 18/5 18/8 23/1 28/20 28/23 29/2 29/5 29/6 34/2 34/13 40/11 71/7 78/15 82/2 82/3 89/17 99/12 99/16
before [24] 5/5 9/11 13/6 15/12 22/11 48/25 63/8 63/24 72/6 72/7 78/1 78/18 78/25 81/6 81/18 81/19 82/3 92/6 94/14 98/2 101/15 105/8 105/21 111/5
beginning [1] 57/24
behalf [5] 4/6 25/4 98/22 100/1 104/14
behind [1] 101/14
being [6] 6/14 6/24 8/12 18/11 55/8 101/16
belief [1] 101/14
believe [30] 6/6 17/1 17/3 17/23 19/21 24/3 24/7 24/11 25/25 33/1 34/25 38/7 40/11 44/5 44/19 47/6 55/12 68/21 68/25 70/5 78/22 75/15 80/10 86/19 89/20 90/6 91/2 98/24 101/7 109/5
believed [2] 100/1 100/24
Bellis [8] 23/18 24/3 24/12 24/17 69/25 111/1 111/4 111/6
below [3] 35/25 50/25 63/6
benefit [5] 47/12 53/4 53/19 55/19 66/24
besides [2] 46/2 46/5
best [5] 56/7 67/11 77/3 100/2 100/24
between [25] 36/6 42/25 48/15 51/11 70/21 74/7 74/8 74/17 74/20 76/15 76/18 76/20 76/23 77/12 78/14 79/5 85/16 85/21 87/16 87/20 88/1 89/2 89/3 93/21 104/3
beyond [5] 18/17 90/9 94/16 95/9 96/10
big [1] 14/3
Bill [2] 73/16 73/17
bills [2] 89/8 89/14
binders [2] 14/20 100/13
bit [1] 35/13
bk [1] 98/14
blow [3] 47/11 53/3 55/18
Boston [2] 38/17 39/24
both [2] 39/18 39/19
bottom [15] 26/23 28/15 30/18 34/14 55/3 55/15 62/22 62/24 66/25 81/17 82/8 85/5 91/3 101/24 102/1
bought [2] 71/10
branch [3] 30/3 30/6 30/9
BRANDON [1] 2/4
breadth [1] 10/9
break [5] 23/22 24/20 69/15 106/16 110/13
breaking [1] 69/14
BRETT [3] 2/9 4/5 25/4
brief [3] 6/13 12/15 23/12
briefed [1] 23/10
briefly [5] 10/15 19/1 20/3 22/12 26/22
briefs [1] 6/11
bring [2] 5/18 22/11
brings [1] 14/21
Building [1] 2/10
bunch [1] 87/11
burden [1] 7/13
business [10] 6/25 12/21 18/4 44/18 45/1 45/15 45/20 60/14 60/17 95/14
businesses [1] 11/10 44/20
busy [2] 32/8 81/3
butchering [1] 13/13

**C**

buying [2] 71/11 71/12

**C**

C-o-t-t-a-g-e [1] 96/8
CA [4] 1/20 2/8 2/11 2/16
cabinet [1] 15/8
calculations [1] 12/8
CALIFORNIA [8] 1/5 1/16 4/1 12/20 83/8 84/8 84/16 84/23
call [16] 5/16 5/24 19/16 24/3 24/8 24/13 24/17 32/21 33/1 33/3 38/13 68/6 69/25 88/14 94/15 95/8
called [6] 21/22 33/4 44/24 45/2 45/4 97/17
calling [2] 5/22 24/12
calls [8] 79/18 79/21 80/3 80/5 80/9 80/14 96/2 96/24
Camberos [2] 52/10 52/11
came [9] 9/20 11/18 15/17 51/20 56/15 101/8 101/11 101/14 106/1
can [32] 15/12 15/18 16/20 16/21 18/23 24/20 26/10 26/22 29/23 30/15 30/16 31/1 32/14 34/23 39/17 40/3 40/18 53/3 53/7 55/21 58/12 60/4 66/4 66/12 66/23 68/3 71/2 81/7 95/17 102/5 104/10 108/17
can't [8] 13/23 15/7 21/12 22/5 42/18 72/9 77/2 78/16
canceled [1] 24/14
cannot [4] 7/9 7/10 18/10 20/5
cap [3] 49/10 49/13 49/15
capitalization [1] 49/16
car [2] 18/24 88/22
career [1] 14/11
careful [1] 70/11
carrier [1] 89/17
case [35] 5/19 7/11 8/2 8/15 8/19 9/24 10/2 10/6 13/6 13/19 20/1 20/7 20/13 20/17 20/19 21/17 57/5 69/17 69/18 82/11 98/6 98/13 100/2 102/11 103/5 103/13 104/5 104/21 105/23 106/12 109/4 109/14 109/17 110/15 110/16
cases [1] 13/3
cash [3] 104/13 104/15 104/17
category [1] 103/13 104/7
CB [1] 98/14
Cefali [2] 4/11 25/8
cell [2] 75/12 89/14
CENTRAL [1] 1/5
CEO [2] 52/8 52/15
certain [6] 4/24 18/22 99/22 101/6 105/22 110/25
certainly [1] 84/9
CERTIFICATE [1] 112/4
certified [1] 1/9 97/21
certify [1] 112/6
chain [3] 29/15 29/21 31/4
chance [1] 88/15
change [1] 12/10
changed [1] 15/4
changes [1] 11/25 12/9
charged [4] 58/2 58/8 58/20 58/23
chart [1] 19/5 49/16
charts [3] 11/25 12/2 12/7
chat [1] 68/3
check [11] 35/20 37/12 38/23 92/6 107/20 107/22 108/12 108/14 108/17 108/18 108/24
checking [2] 42/9 42/10
Chicago [2] 24/14
chief [4] 2/5 5/19 44/18 48/6
Chris [3] 19/18 19/22 22/5
Christopher [1] 19/12
cited [2] 7/2 9/24
City [3] 39/9 39/25 92/16
claim [1] 94/20
claiming [1] 104/13
claims [3] 104/8 104/11 104/25
clarification [1] 109/11
clarify [2] 6/4 101/22
Clarkson [2] 101/15 105/24
classic [1] 17/6

**C**

clear [9]  6/6 7/16 8/3 8/11 9/5 10/6 14/1 68/13 68/19
Clemente [1]  2/16
client [16]  10/21 13/19 41/1 98/2 98/5 98/8 98/16 105/16 105/19 106/18 106/22 107/1 107/20 110/3 110/5 110/11
client's [2]  12/19 12/25
clients [1]  45/22
close [2]  5/19 5/20
closed [1]  34/5
closer [1]  81/2
CNB [2]  30/2 31/11
Coast [2]  30/3 30/7
code [2]  12/21 112/7
coffee [1]  45/20
collateral [3]  104/13 104/16 104/17
colleague [1]  57/12
collective [1]  50/12
colloquy [1]  5/10
combined [1]  106/5
come [13]  7/10 7/20 8/3 8/15 8/20 11/17 15/3 20/9 20/10 20/12 30/14 74/11 111/15
comes [3]  12/24 16/1 21/7
coming [2]  24/1 29/3
commingled [1]  11/18
committee [1]  106/5
common [8]  12/22 53/11 53/24 54/5 54/6 55/3 55/6 92/21
communicate [2]  80/12 80/15
communicated [1]  78/19
communicating [1]  43/1
communications [19]  32/12 43/6 48/21 48/24 76/7 76/15 76/18 76/20 76/23 77/8 77/9 85/1 85/16 85/20 85/24 88/4 89/6 95/2 95/22
company [11]  18/24 21/6 22/16 45/1 49/17 54/25 60/23 60/24 61/11 61/24 62/3
Complete [1]  72/18
completed [1]  10/1
completely [5]  8/25 10/5 10/16 12/22 58/6
complies [2]  46/19 87/8
Compound [1]  61/4
comprise [1]  75/18
computer [3]  83/24 84/7 84/16
concept [1]  13/15
concerned [4]  28/21 71/6 71/6 71/9
conclusion [2]  11/25 105/25
condition [2]  20/21 109/24
conditions [4]  99/22 101/6 101/7 101/20
conduct [1]  15/12
Conference [1]  112/11
confirmation [3]  36/15 37/4 37/6
conformance [1]  112/10
confused [1]  101/11
conjunction [1]  104/4
connected [1]  92/1
connection [8]  8/19 14/4 49/23 51/6 57/5 86/2 86/5 86/8
consideration [1]  6/14
considering [1]  19/3
consistent [2]  63/8 63/24
consisting [1]  105/5
constant [1]  29/1
contact [1]  34/19
contacted [3]  32/9 39/25 71/14
contacting [2]  32/22 72/6
contain [1]  101/20
contained [2]  101/8 101/13
content [1]  19/7
contentious [2]  48/15 49/1
contingency [1]  13/3
continue [1]  41/12
Continued [2]  3/6 25/20
continues [1]  101/19
continuing [1]  87/17
control [2]  102/1 102/10
conversation [6]  86/12 86/17 86/22 92/10 92/14 94/19
convince [1]  52/12

**COO [1]**  45/15
cooperating [1]  9/9
copies [1]  99/9
copy [5]  76/15 102/6 102/17 107/20 107/22
corner [1]  108/14
correct [64]  12/6 13/15 21/2 24/9 26/15 35/5 37/9 44/21 47/23 48/22 49/2 50/11 53/12 54/2 54/7 54/20 56/1 56/3 56/10 56/18 56/25 57/2 57/10 67/7 67/11 68/10 68/17 68/20 69/1 69/11 73/25 74/3 75/2 75/3 75/4 75/16 76/7 80/6 80/24 81/15 82/17 83/4 83/8 85/9 86/25 88/11 88/23 88/24 88/25 90/14 92/18 96/15 99/5 99/10 102/11 102/12 102/15 102/16 102/17 103/7 103/8 107/4 107/5 112/8
correctly [2]  63/9 103/19
Cosmetics [21]  47/25 50/17 50/18 50/19 50/19 50/20 52/13 52/16 54/19
cost [1]  13/1
costs [3]  9/16 10/21 13/21
Cottage [2]  96/5 96/8
could [46]  6/20 12/18 20/12 26/23 27/9 29/11 32/17 34/8 34/21 35/24 36/3 36/16 36/24 37/3 38/6 39/17 40/6 40/23 41/15 46/18 50/1 50/10 53/17 55/18 58/2 58/7 58/20 58/23 60/24 61/11 64/20 66/25 70/20 70/24 77/15 79/20 84/9 87/3 88/7 95/16 95/24 100/10 100/13 103/2 105/2 107/13
counsel [7]  2/1 2/15 4/7 4/10 13/16 25/5 98/19
counsel's [1]  12/18
counts [3]  22/19 22/20 23/7
County [1]  98/4
couple [2]  66/1 85/11
course [1]  14/11
court [19]  1/4 4/21 4/23 5/6 6/21 7/17 7/18 7/24 8/10 11/23 13/8 13/17 22/1 70/12 96/6 106/8 109/5 109/16 112/16
court's [7]  5/4 7/2 11/25 21/20 48/17 52/18 99/15
Courthouse [2]  1/19 2/7
cover [1]  100/17
covered [2]  18/1 110/11
CPA [1]  96/3
creditor [1]  104/12
creditors [3]  45/17 105/22 106/5
crime [6]  9/25 10/7 58/2 58/8 58/20 58/23
criminal [2]  2/5 9/2 9/10
cross [19]  3/4 3/11 14/1 14/10 14/18 15/1 15/13 15/18 16/24 17/5 17/6 17/7 22/23 24/6 46/10 70/5 90/22 92/9 93/14
cross-examination [9]  15/13 16/24 17/6 17/7 22/23 46/10 90/22 92/9 93/14
cross-examine [4]  14/1 15/1 15/18 17/5
cross-examined [2]  14/10 14/18
crystal [1]  14/1
Cummings [2]  4/11 25/8
cumulative [2]  19/23 20/1 22/6
current [1]  17/9
custodial [3]  6/24 7/5 7/17
custodian [2]  6/15 7/4

**D**

Daniels [1]  20/18
date [17]  29/18 35/22 35/25 36/9 47/8 47/9 53/23 84/8 84/18 86/12 86/17 94/6 102/10 102/18 105/9 108/12 112/13
dated [1]  81/12
dates [1]  79/20
David [1]  24/13
day [13]  1/12 4/21 5/2 26/13 29/9 30/23 36/11 38/10 51/21 57/19 65/17 68/2 92/6
days [8]  62/14 66/15 67/2 68/9 88/13 91/24 106/12 109/5
deal [3]  54/13 54/22 54/24
dealing [1]  67/6
dealings [1]  45/1
dealt [1]  80/20
DEAN [2]  2/15 2/15
debtor [1]  103/9

**Debtor's [2]**  103/3 104/12
decide [1]  9/5
decided [1]  91/18
decision [1]  96/14
declaration [12]  7/5 7/17 99/25 100/7 100/20 100/23 103/6 106/8 108/25 109/2 109/12 109/15
declarations [4]  6/24 6/24 18/2 18/3
deduct [1]  13/1
deducted [1]  12/19
deemed [1]  23/10
defendant [59]  1/12 2/13 10/16 10/17 10/18 11/5 11/18 11/24 20/5 21/5 22/14 22/20 23/24 26/14 26/19 27/5 27/12 27/20 29/16 30/5 30/13 31/4 31/11 31/12 31/17 31/25 33/7 33/10 34/11 37/1 38/1 42/20 43/1 43/3 43/7 44/12 45/16 45/19 46/1 46/5 83/18 90/22 91/10 91/21 91/23 92/4 92/9 92/11 92/15 92/21 93/4 93/6 93/14 99/21 99/25 100/19 101/20 110/2 110/5
defendant's [8]  4/25 17/19 29/23 45/17 45/22 100/23 101/4 111/11
DEFENSE [2]  3/10 3/13
defense's [1]  70/5
define [1]  76/25
delayed [2]  24/2 57/21
DeLeassa [1]  19/12
denied [2]  18/25 109/9
deny [1]  17/21
Department [1]  44/10
depends [1]  76/25
description [1]  102/11
desire [3]  47/22 47/23 63/3
details [3]  23/6 68/12 87/3
determination [2]  9/13 49/24
determined [2]  74/22 76/17
develop [1]  50/20
developed [1]  48/15
did [139]
didn't [18]  11/6 11/14 11/17 20/24 57/20 60/2 60/10 60/14 64/4 64/17 65/2 65/24 67/2 88/17 89/1 91/11 91/24 92/14
different [6]  11/11 15/14 20/22 49/18 55/5 55/12
dig [1]  29/25
Dinsmore [1]  106/14
direct [15]  3/4 3/11 15/12 19/16 22/24 24/6 25/20 62/24 71/5 81/9 81/17 81/21 82/20 93/9 97/10
directly [4]  18/8 18/21 21/13 52/6
disagree [3]  9/3 10/16 15/22
disburse [2]  106/13 109/5
disbursements [9]  56/1 56/3 56/8 56/12 56/15 56/21 62/21 63/4 65/9
disclosed [1]  111/12
discuss [3]  8/3 69/17 110/15
discussed [2]  21/17 32/16
discussing [3]  25/25 47/22 47/24
discussion [2]  5/1 19/9
dismiss [5]  100/21 101/8 101/20 104/4 106/11
dismissal [9]  100/2 103/13 103/22 104/20 105/13 105/23 109/6 109/20 109/24
dismissed [6]  99/22 100/25 101/5 101/21 109/4 109/17
Dismissing [1]  103/5
dispute [1]  58/25
disputing [1]  59/1
dissatisfied [2]  48/8 48/9
distinction [1]  21/11
distribute [1]  107/6
distributed [1]  108/23
distributing [1]  107/4
DISTRICT [2]  1/4 1/5
Divinium [5]  56/17 61/15 61/19 61/23 62/10 95/14
DIVISION [1]  1/6 2/5
do [133]
docket [8]  4/16 4/17 4/18 19/5 99/1 111/2

**D**

**docket...** [2]  111/8 111/10
**document** [15]  15/9 16/10 17/4 53/9 53/10
58/14 79/24 91/5 99/11 100/18 102/1 102/4
102/10 102/10 103/3
**documentation** [1]  49/23
**documents** [31]  6/8 6/10 12/5 14/5 15/16
15/24 16/1 16/5 16/9 16/18 16/21 16/22 17/2
17/10 17/16 17/24 18/6 18/7 19/4 51/5 51/5
52/22 53/2 54/4 54/9 54/12 54/15 92/23 93/3
93/6 99/5
**does** [23]  5/24 7/6 15/23 18/14 33/21 34/9
34/22 39/4 39/14 40/7 45/4 45/7 45/10 47/17
58/17 64/12 64/15 80/2 96/9 100/19 101/19
102/19 104/23
**doesn't** [2]  8/24 15/20
**doing** [3]  73/24 74/2 77/14
**dollar** [1]  12/9
**dollars** [5]  28/2 56/13 63/16 65/13 106/25
**don't** [56]  5/21 6/6 7/11 8/9 8/12 10/8 10/10
13/14 14/3 14/7 16/23 17/3 20/4 20/24 23/9
47/20 49/11 53/18 57/23 58/3 58/4 58/9 58/22
61/10 64/6 68/18 71/11 71/17 72/4 72/25
73/23 73/24 75/21 77/4 77/5 77/6 78/2 79/3
79/15 79/22 80/10 82/14 83/9 84/4 86/23
89/11 89/20 94/8 95/7 100/6 101/7 101/10
101/11 104/22 108/13 111/15
**done** [1]  20/14
**door** [1]  72/19
**down** [8]  4/12 22/9 24/11 35/13 40/14 52/11
106/16 110/20
**download** [4]  74/25 75/2 75/6 75/12
**drafted** [1]  19/20
**drafts** [1]  17/13
**draw** [1]  14/15
**Drum** [26]  4/15 4/24 5/5 5/16 5/22 5/25 6/20
7/4 7/9 7/20 8/3 8/20 9/12 9/19 10/3 10/9 12/7
13/24 14/1 14/4 15/2 16/16 17/22 18/10 22/13
22/25
**Drum's** [5]  4/22 5/14 6/5 6/17 22/16
**due** [1]  105/7 105/9 106/3
**during** [13]  19/10 42/25 43/6 48/24 72/12
80/8 80/11 80/16 87/25 88/4 98/6 98/22 98/25

**E**

**e-mail** [64]  26/6 26/6 26/16 27/2 28/12 28/15
29/15 29/18 29/19 29/21 29/23 30/12 31/5
31/10 32/1 32/4 35/20 36/6 36/9 36/14 36/17
36/19 36/22 36/25 37/12 38/9 38/16 38/17
38/23 38/24 47/11 47/18 47/21 49/4 49/5
49/22 50/25 51/1 62/22 62/24 63/2 63/6 63/23
65/5 65/7 66/9 66/19 67/3 67/9 68/2 81/17
82/8 82/19 82/22 83/4 83/24 83/24 84/7 84/16
84/25 85/4 91/2 91/22 99/15
**e-mailed** [1]  40/18
**e-mails** [3]  41/24 80/14 81/12
**each** [17]  7/14 10/8 15/2 15/17 15/25 16/5
16/10 16/17 16/17 17/4 17/11 17/15 19/6
41/10 41/20 73/12 73/15
**Eagan** [19]  42/14 68/22 98/3 98/6 98/12 98/13
98/18 98/22 98/22 99/9 99/19 99/21 100/1
102/7 103/9 104/3 105/16 106/4 109/15
**earlier** [3]  40/18 67/11 77/23
**early** [11]  33/6 33/9 33/9 33/11 37/25 47/2
63/4 68/10 69/14 73/9 86/19
**easier** [1]  95/21
**East** [2]  30/3 30/7
**EC** [1]  50/16
**ECF** [4]  99/11 99/13 102/14 102/18
**edits** [1]  12/8
**effort** [3]  52/12 60/21 87/2
**either** [9]  33/5 39/9 80/8 80/15 81/13 86/19
95/8 101/25 102/8
**electrified** [1]  72/18
**electronic** [1]  102/14
**elicit** [1]  23/1
**else** [3]  42/17 46/2 46/5
**EM** [8]  47/24 50/18 50/19 50/19 50/20 52/13
52/16 54/19

**employed** [1]  97/14
**enable** [3]  33/10 106/1 106/25
**end** [4]  11/14 12/3 31/2 42/2
**ending** [1]  10/7
**enforcement** [2]  44/8 58/8
**enough** [2]  6/3 17/20
**entered** [3]  52/22 55/23 104/14
**entire** [3]  27/6 89/12 89/15
**entirely** [1]  76/19
**entitle** [2]  93/3 93/6
**entitled** [14]  9/14 9/15 10/18 10/25 14/9 14/15
15/10 15/11 15/11 16/18 16/20 68/21 68/25
112/9
**entitling** [1]  10/22
**entity** [2]  45/4 45/13
**equity** [4]  48/3 48/12 50/13 55/9
**era** [1]  77/17
**escrow** [1]  63/7
**especially** [2]  70/10
**establish** [2]  18/19 61/15
**established** [3]  61/24 62/10 62/12
**establishing** [1]  62/16
**establishment** [1]  61/24
**estate's** [1]  104/16
**estimate** [3]  70/4 77/3 77/4
**ether** [1]  28/23
**even** [10]  8/13 15/6 20/4 75/14 83/16 83/17
84/6 84/7 84/17 102/1
**event** [2]  73/19 73/22
**ever** [25]  42/19 42/22 43/3 43/7 44/11 44/23
45/1 45/15 45/19 46/1 46/4 74/16 74/19 75/5
75/11 76/14 77/20 78/17 78/25 80/11 80/11
80/15 86/21 89/5 110/5
**every** [4]  12/24 14/19 14/22 102/9
**evidence** [5]  8/15 9/4 12/1 29/13 36/4 38/7
81/23 102/25 108/7
**exact** [4]  8/12 14/5 15/19 100/7
**exactly** [6]  13/10 14/4 51/16 59/17 59/25 72/4
**examination** [16]  15/13 16/24 17/6 17/7
18/13 22/23 23/16 25/20 46/10 90/18 90/22
92/9 93/9 93/14 93/19 97/10
**examine** [4]  14/1 15/1 15/18 17/5
**examined** [2]  14/10 14/18
**example** [5]  7/1 8/16 8/17 92/25 102/2
**exception** [3]  6/25 18/4 55/7
**exchange** [3]  29/18 32/4 36/6
**excused** [2]  96/19 96/22
**excuses** [2]  29/1 29/3
**executives** [2]  48/16
**exhibit** [46]  3/9 3/9 19/8 25/25 26/3 26/22
28/9 29/11 32/4 32/18 33/17 36/4 37/10 38/6
38/9 38/21 42/2 42/5 46/18 46/18 46/23 53/1
55/16 70/20 74/5 74/6 75/15 76/6 76/6 81/6
81/9 81/22 82/1 90/9 90/23 94/8 100/14
100/16 101/7 102/21 102/25 107/13 107/17
107/19 108/3 108/7
**Exhibit 265** [2]  46/18 46/18 46/23
**Exhibit 268** [2]  53/1 55/16
**Exhibit 273** [1]  90/23
**Exhibit 274** [8]  32/14 37/10 38/21 70/20 74/5
74/6 75/15 94/8
**Exhibit 275** [1]  26/22
**Exhibit 278** [2]  76/6 90/9
**Exhibit 280** [1]  25/25
**Exhibit 281** [3]  29/11 81/6 81/9 81/22 82/1
**Exhibit 284** [1]  36/4
**Exhibit 285** [1]  38/6
**Exhibit 342** [3]  100/14 100/16 102/21
**Exhibit 392** [3]  107/17 107/19 108/3
**exhibits** [11]  3/8 3/13 18/2 46/16 54/7 62/23
81/5 81/21 111/12 111/13 111/14
**Exhibits 268** [1]  54/7
**exit** [2]  47/23 48/8
**exiting** [1]  48/2
**expect** [2]  27/13 37/16
**expected** [5]  22/13 27/24 28/5 43/16 43/21
**expenditures** [1]  18/22
**expert** [6]  14/13 14/20 18/6 18/14 18/16
**experts** [2]  14/10 14/19

**explain** [1]  16/12
**extensive** [1]  19/8
**extent** [3]  9/18 12/4 21/7

**F**

**fact** [20]  7/10 9/14 10/24 13/8 15/3 17/1 17/12
18/2 18/10 18/11 18/12 21/18 48/6 58/18
59/17 60/17 66/19 71/5 73/2 106/8
**facts** [2]  48/18
**factual** [1]  10/24
**failed** [1]  58/20
**fair** [6]  6/3 23/3 41/13 107/22
**fairly** [1]  8/3
**fall** [1]  44/5
**false** [5]  12/19 12/22 12/23 13/17
**familiar** [4]  44/20 59/19 98/15 101/4
**Fantastic** [2]  65/12 67/14
**far** [2]  41/22 54/4
**fathom** [1]  22/5
**February** [5]  21/4 47/2 47/9 52/3 105/7
**February 28** [1]  105/7
**Fed** [15]  26/10 26/17 28/17 30/15 31/7 34/10
34/16 35/2 35/3 35/17 36/23 39/19 40/8 40/22
41/3
**federal** [5]  2/10 9/1 9/10 58/8 60/25
**fee** [6]  9/7 9/8 10/19 12/25 13/9 13/12
**fees** [9]  9/16 10/21 10/22 13/21 93/4 106/3
106/6
**felt** [1]  17/25
**few** [9]  5/4 12/7 37/25 41/11 44/17 62/14 67/2
91/24 106/17
**Fifteen** [1]  69/19
**figure** [3]  5/17 30/1 41/20
**figuring** [1]  51/16
**file** [8]  5/3 15/8 44/2 44/8 99/4 106/8 108/25
109/11
**filed** [14]  4/16 4/17 8/7 99/7 99/12 99/16
99/25 100/8 100/20 102/6 102/14 109/3 111/2
111/10
**filing** [14]  5/13 7/21 8/2 9/11 9/24 19/9 19/21
99/16 99/24 101/2 101/4 101/13 102/18
105/22
**filings** [3]  11/24 99/1 99/9
**Filippo** [2]  36/7 74/7
**final** [1]  44/17
**finalizing** [1]  12/7
**finally** [1]  92/1
**financial** [11]  14/10 14/13 14/19 14/20 18/13
19/10 20/21 45/7 45/10 62/20 95/23
**find** [6]  5/23 18/17 30/3 30/6 39/11 93/11
**finding** [1]  43/2
**fine** [3]  22/10 24/22 70/13
**finish** [2]  24/6 24/7 83/20
**firm** [30]  9/15 10/22 19/11 20/20 21/4 32/9
42/12 42/13 44/23 45/24 64/3 68/17 69/1 69/4
97/17 98/2 98/18 100/3 100/24 104/3 105/15
106/3 106/4 106/12 106/14 106/15 106/21
107/1 107/6 108/23
**firm's** [7]  63/15 105/19 106/7 106/9 107/20
107/23 109/3
**firms** [2]  18/14 44/20
**first** [46]  7/19 8/21 8/25 9/6 12/18 17/19 18/17
22/14 31/10 34/5 36/24 37/24 39/18 39/22
40/6 40/8 40/9 40/10 46/17 47/1 47/9 51/24
51/25 53/4 56/15 56/20 58/16 58/17 58/22
60/1 60/12 60/22 63/9 65/8 78/3 78/6 78/7
79/4 79/12 79/23 80/1 81/18 91/10 97/2 103/2
104/10
**firsthand** [1]  85/22
**five** [3]  13/6 56/12 68/9
**flew** [1]  52/6
**flight** [3]  24/2 24/14 24/15
**flip** [1]  14/24
**focus** [5]  5/4 6/20 35/24 81/6 97/22
**focusing** [2]  26/6 100/16
**follow** [2]  67/3 67/10
**follow-up** [1]  67/3
**followed** [1]  105/22
**following** [2]  66/20 91/18

## F

**forefront [1]** 8/14
**foregoing [1]** 112/7
**forensic [5]** 18/14 18/16 74/25 75/2 76/14
**forensically [2]** 75/5 75/12
**form [3]** 69/17 104/18 110/16
**format [1]** 112/10
**forth [3]** 41/12 41/23 87/20
**forward [1]** 35/7
**forwarded [4]** 37/1 37/18 38/17 91/23
**forwarding [4]** 36/17 36/19 49/5 63/2
**found [1]** 6/9
**foundation [5]** 27/16 31/21 65/19 84/20 110/8
**four [2]** 13/6 33/22
**Fourth [1]** 2/11
**FOX [1]** 2/4
**Francisco [1]** 52/6
**Frank's [1]** 104/3
**Frankly [1]** 5/15
**Frauds [1]** 2/6
**Friday [4]** 4/21 5/3 5/10 17/25 25/24 26/12 27/2 32/16 35/3 44/19 46/23
**front [1]** 83/14
**full [5]** 22/25 27/14 27/20 27/23 92/20
**fully [1]** 72/15
**fully-armored [1]** 72/15
**fund [2]** 105/5 105/7
**fundamental [3]** 7/9 8/23 13/2
**funds [6]** 11/4 18/15 106/9 109/5 109/12 110/5
**further [6]** 22/11 35/13 46/8 93/17 96/18 110/12

## G

**game [1]** 20/24
**Gardner [1]** 45/11
**gave [3]** 12/7 75/14 77/10
**generally [6]** 44/20 46/23 71/18 74/6 81/23 99/17
**gentlemen [3]** 25/11 69/16 110/14
**Geoffrey [1]** 45/8
**get [28]** 12/25 13/11 14/23 21/5 30/1 30/21 33/2 35/19 38/13 39/18 48/7 50/13 50/16 65/13 65/18 66/4 66/12 66/16 67/5 68/12 70/7 80/6 81/18 83/1 83/12 88/22 89/24 101/21
**getting [5]** 13/21 23/6 39/7 48/3 52/13 67/14
**gift [1]** 71/10
**gifts [1]** 71/11
**give [8]** 8/16 11/6 34/24 40/4 52/16 68/6 73/2 74/16
**given [6]** 5/9 6/13 19/7 28/24 29/5 90/11
**giving [1]** 29/6
**glasses [1]** 108/13
**Global [1]** 45/2
**go [29]** 26/22 27/9 28/9 32/14 32/17 34/8 34/14 35/16 36/16 36/24 37/3 37/10 38/6 38/21 39/13 40/14 40/23 41/2 41/2 42/2 50/20 50/25 62/22 64/3 70/24 77/14 87/6 88/5 104/22
**goal [1]** 50/16
**goals [5]** 50/10 50/12 50/12 50/14 52/12 52/23 52/23
**going [45]** 5/16 5/19 6/12 9/19 13/20 13/25 14/2 14/3 14/6 14/6 14/8 14/17 14/25 15/1 17/4 17/6 17/23 19/14 19/16 19/18 21/22 23/19 24/6 24/7 24/17 27/23 33/17 37/10 41/10 44/17 53/23 55/25 55/25 65/6 65/13 68/12 69/25 71/15 71/19 81/5 83/12 83/17 87/12 106/16 111/5
**going to [1]** 55/25
**good [25]** 4/5 4/8 4/9 4/13 4/13 25/3 25/6 25/7 25/10 25/11 25/12 25/22 25/23 41/19 46/12 46/15 69/14 88/11 88/14 90/20 90/21 97/12 97/13 101/25 107/15
**got [8]** 15/7 15/8 30/16 34/16 40/8 54/21 67/19 110/2
**government [67]** 4/16 5/16 5/18 5/24 7/13 8/19 9/7 11/5 14/14 15/2 15/15 15/24 16/8 17/1 17/3 17/9 17/14 17/23 18/18 19/2 19/16
**government's [9]** 13/24 17/13 17/18 17/18 19/24 19/25 25/13 65/11 96/25 111/11
**granting [1]** 104/17
**Great [1]** 37/14
**Gregory [1]** 45/13
**grenades [1]** 72/15
**grounds [1]** 16/23
**Group [1]** 22/16
**guess [2]** 20/3 20/23
**guest [1]** 73/18
**guilt [1]** 43/11
**guy [1]** 71/7
**guys [1]** 47/14

## H

**had [69]** 5/3 5/6 10/19 10/20 10/21 20/10 22/12 23/25 24/14 25/25 26/18 26/20 27/12 28/20 29/5 29/6 32/9 33/3 34/2 34/13 37/18 39/24 40/11 43/7 45/1 45/1 47/18 48/12 48/15 48/24 49/6 49/8 52/2 57/25 58/19 62/11 63/2 66/3 66/12 66/19 67/3 68/9 68/24 69/3 69/4 69/10 71/7 71/21 71/24 72/3 72/5 75/7 77/8 78/13 79/1 79/18 85/24 89/22 92/5 94/15 94/20 95/22 98/4 99/12 99/16 105/23 106/9 111/2
**hadn't [1]** 29/2
**half [1]** 34/22
**hall [1]** 4/12
**handed [1]** 58/14
**handle [7]** 28/14 31/6 51/17 85/5 85/8 85/9 85/12
**handled [1]** 95/24
**handles [1]** 72/19
**hands [3]** 65/13 65/18 66/16
**Hang [1]** 33/1
**HANNA [1]** 2/3
**happen [1]** 105/12
**happened [5]** 10/4 44/14 52/17 67/17 109/14
**happy [2]** 4/19 11/23
**Harper [8]** 19/12 19/18 19/22 19/24 19/25 21/21 22/1 22/15
**has [30]** 6/21 7/13 7/17 7/18 8/13 8/15 9/9 9/13 10/7 11/23 14/20 16/16 17/1 17/3 17/23 18/5 18/8 20/16 22/16 22/20 22/25 24/14 44/23 78/15 82/2 82/3 82/10 82/16 102/9
**hasn't [3]** 20/5 24/16 30/14
**have [114]**
**haven't [4]** 17/14 22/7 35/12 83/16
**having [1]** 10/3 85/17 111/3
**he [68]** 5/5 6/5 10/19 10/20 11/9 11/11 11/13 11/19 11/19 12/7 14/4 14/6 14/20 14/21 15/12 15/19 15/20 18/11 18/12 18/12 18/15 19/5 20/10 22/22 23/23 24/13 24/14 24/16 27/12 28/1 28/1 28/2 30/5 30/8 33/18 33/22 33/33 33/21 34/25 36/19 39/3 39/4 39/7 39/10 42/10 43/7 81/19 81/20 82/4 87/15 91/23 92/1 92/5 92/5 92/14 92/14 92/19 92/22 92/25 98/2 98/5 98/8 100/1 100/23 110/3 110/5 110/10
**he'd [1]** 13/22
**he's [6]** 6/8 14/5 23/19 24/1 24/2 24/15
**hear [3]** 4/19 14/8 67/2
**heard [6]** 13/5 13/5 17/20 22/7 35/12 44/25
**hearing [1]** 4/22
**hearsay [8]** 6/6 7/1 7/7 20/8 21/8 21/13 102/22 108/5
**held [2]** 30/16 112/9
**helpful [1]** 5/6
**her [16]** 19/21 20/8 26/18 28/1 46/2 46/5 46/6 56/22 56/24 60/15 60/17 83/24 84/7 84/16 85/1 86/5
**here [33]** 14/23 14/25 15/14 18/5 18/8 18/9 18/18 22/20 24/1 24/15 24/18 26/16 27/6 26/21 30/14 33/9 33/10 46/20 49/14 49/17 56/9 62/24 67/10 68/12 69/16 73/24 74/2 82/8 83/13 84/16 90/7 100/6 110/13
**Here's [1]** 14/18
**hereby [1]** 112/6
**Hernandez [5]** 25/9 51/1 53/18 66/24 88/7
**hesitating [1]** 101/7
**Hey [1]** 42/9
**Hi [5]** 26/10 30/14 33/22 47/14 62/25
**highly [1]** 11/21
**him [20]** 14/14 14/21 15/16 27/24 28/5 33/4 33/23 38/12 38/17 38/18 38/19 42/10 43/16 43/21 52/12 70/7 81/23 92/12 96/20
**himself [2]** 11/10 99/8
**hired [1]** 44/23
**his [25]** 10/19 10/22 11/6 11/10 11/24 12/8 13/21 18/12 18/13 18/14 20/13 22/14 22/21 23/18 24/2 24/14 24/15 28/12 32/1 32/12 34/22 45/20 45/24 52/8 101/21
**honest [1]** 58/2
**Honor [90]** 4/5 4/9 4/20 5/7 5/11 5/13 6/1 6/3 6/19 6/25 7/8 7/20 8/1 8/9 8/10 8/14 8/16 8/23 9/5 9/10 9/18 10/8 10/15 11/1 11/15 11/22 12/6 12/11 12/13 12/17 13/8 13/14 13/18 13/25 14/9 14/17 15/5 15/21 16/19 17/8 17/17 20/3 21/10 21/24 21/25 22/9 22/12 23/4 23/8 23/9 23/23 24/11 24/19 25/3 25/7 25/19 27/15 29/12 31/20 38/7 43/15 43/18 50/3 56/5 58/12 60/5 61/7 64/21 69/13 69/24 70/8 70/18 78/21 81/22 83/19 83/21 84/2 90/2 96/21 102/20 102/22 107/8 107/24 108/3 108/4 109/8 109/22 110/7 110/12 111/10
**HONORABLE [1]** 1/8
**HOROUPIAN [10]** 3/6 24/8 24/10 70/3 70/9 70/10 96/24 96/25 97/3 97/12
**host [1]** 10/10
**hot [2]** 65/17 66/16
**hours [2]** 66/1 86/24
**hours' [2]** 19/17 21/23
**how [39]** 5/21 8/20 8/25 9/8 9/12 9/17 10/17 13/2 13/18 13/22 13/23 14/13 15/1 20/13 33/12 33/14 39/1 45/13 45/22 49/17 51/16 52/5 65/14 66/12 66/15 69/22 75/21 76/25 77/7 77/14 83/17 91/10 91/22 95/23 97/14 97/18 98/1 106/20 106/24
**hypothetical [1]** 43/11

## I

**I'll [2]** 70/9 73/2
**I'm [40]** 5/15 7/16 8/10 8/10 9/6 13/13 13/20 14/2 14/3 14/9 14/17 15/10 15/11 16/18 17/21 19/2 19/14 19/18 21/15 37/10 44/17 59/1 59/23 65/12 70/11 74/1 75/2 80/17 82/17 83/17 84/13 90/14 97/15 97/21 101/7 101/11 106/16 108/13 108/15 110/25
**I've [3]** 14/10 14/18 17/20
**I-N-D-E-X [1]** 3/2
**idea [6]** 12/24 44/14 72/24 91/14 94/14 95/2
**identical [1]** 55/7
**identified [2]** 17/10 18/23
**IMAD [5]** 39/2 39/17 39/18 40/9 40/22
**immediacy [1]** 28/17
**immediately [10]** 47/18 59/11 60/1 60/13 60/15 60/18 62/8 65/12 67/13 91/12
**impact [2]** 109/18 109/19
**impeach [2]** 20/11 21/9
**impeached [1]** 20/10
**impeachment [1]** 21/14
**important [7]** 5/5 11/15 11/20 58/1 58/5 59/3 87/3
**include [1]** 66/25
**included [3]** 56/8 76/24 90/9
**includes [1]** 6/9
**including [3]** 5/8 7/1 108/24
**income [4]** 60/25 61/20 61/25 63/15
**incorrect [1]** 92/16
**indicated [4]** 4/14 5/3 5/6 5/20 8/2 9/11 17/25 18/22 80/3

**J**

**indication** [1] 4/23
**individual** [5] 16/24 41/9 45/8 45/11 97/23
**individuals** [1] 44/21
**indulgence** [1] 7/2
**information** [10] 15/10 31/3 37/17 39/6 39/8 40/4 41/12 49/1 49/5 67/20
**informed** [4] 13/17 23/24 94/14 94/21
**initial** [7] 48/21 48/24 104/20 105/4 105/9 106/1 106/6
**initially** [4] 51/11 52/2 54/2 68/9
**inquiring** [1] 71/19
**instances** [1] 85/11
**instructed** [1] 12/11
**instructing** [2] 85/8 85/13
**instructions** [1] 11/16
**insufficient** [3] 6/24 7/6 15/6
**intend** [3] 5/24 24/12 24/13
**intends** [2] 22/22 111/3
**interchanged** [1] 55/8
**interest** [5] 48/6 50/14 100/3 100/24 104/13
**interested** [3] 48/1 48/2 48/5
**interim** [1] 104/14
**Internal** [3] 106/13 107/21 107/23 108/11 109/18
**interview** [3] 19/7 20/16 63/20
**interviewed** [2] 57/4 57/18
**introduced** [1] 26/1
**investigation** [4] 20/14 20/14 20/15 21/19
**involved** [2] 14/1 96/14
**iPhone** [1] 74/14
**IPSY** [18] 43/8 47/23 48/2 48/8 48/11 48/16 50/14 51/12 51/17 51/22 52/5 52/22 52/5 52/15 63/3 65/8 68/10 91/22
**irrelevant** [6] 9/1 9/9 9/16 9/25 10/5 10/10
**IRS** [5] 104/14 104/24 106/2 108/21 108/24
**is** [208]
**isn't** [20] 20/18 21/15 48/16 57/18 57/21 59/9 59/20 60/15 60/19 60/21 60/25 62/8 63/16 72/16 74/25 75/15 77/10 80/22 88/19 95/22
**issue** [11] 10/24 23/10 23/17 30/1 30/9 66/20 69/22 70/1 70/9 95/12 110/23
**issues** [8] 5/4 18/21 23/13 23/25 69/18 70/11 105/24 110/6
**it** [194]
**it's** [41] 6/2 7/9 7/13 8/13 9/3 9/16 10/4 10/5 10/8 11/21 13/23 14/3 14/23 14/24 15/16 23/21 38/7 38/14 38/22 39/13 39/17 40/3 41/5 41/5 42/3 48/1 58/24 69/13 70/7 70/8 77/5 81/22 82/3 91/2 94/2 100/13 101/25 103/9 107/15 110/8 110/17
**item** [5] 4/3 15/9 25/1 49/8 49/12
**its** [4] 17/24 98/3 104/19 105/16

**J**

**JAMES** [2] 1/8 57/15
**Jamie** [2] 96/5 96/8
**January** [7] 19/10 20/22 99/20 99/20 101/2 101/5 102/6
**January 30** [1] 101/5
**January 30th** [3] 99/20 101/2 102/6
**January 9** [1] 20/22
**January 9th** [1] 19/10
**JOHN** [6] 1/11 2/14 4/4 4/15 22/13 25/2
**Johnson** [3] 8/18 10/19 45/8
**Johnson's** [2] 8/17 8/19
**joining** [1] 4/11
**judge** [4] 1/8 101/15 105/24 106/11
**Judicial** [1] 112/11
**Judy** [11] 19/7 26/10 29/7 29/16 29/25 30/14 31/1 33/5 82/10 82/19 92/6
**Julian** [1] 54/4
**June** [10] 77/24 78/1 78/8 78/13 78/18 78/25 79/6 79/12 79/19 79/21
**June 18th** [1] 79/6
**June 4th** [2] 79/19 79/21
**June of** [1] 79/12
**jury** [21] 4/2 8/4 11/16 12/5 14/16 22/11 22/21

22/25 24/25 25/12 47/12 53/4 53/19 55/19 56/2 56/20 70/6 94/6 94/14 94/15 95/8 95/11 95/11
**just** [32] 4/12 6/4 7/1 7/16 9/5 10/15 10/16 12/1 13/16 13/20 13/23 15/7 21/3 22/8 23/5 25/25 29/1 31/10 33/24 34/16 36/11 38/24 53/17 53/18 67/10 70/11 73/1 92/5 94/6 94/22 101/18 106/2
**JVS** [3] 1/11 4/3 25/1

**K**

**Karlous** [3] 4/7 25/5 57/8
**keep** [3] 53/18 63/8 63/24
**keeping** [1] 65/11
**kept** [1] 107/1
**key** [1] 7/3
**Kim** [1] 57/15
**knew** [1] 59/25
**know** [38] 5/21 14/9 14/22 15/11 15/11 16/18 29/25 30/3 30/7 30/21 34/5 46/24 57/20 59/10 69/13 72/25 75/21 77/5 82/14 83/2 83/9 83/17 83/25 84/6 84/8 84/17 85/1 91/5 95/7 97/23 98/1 98/21 99/13 99/19 101/10 101/12 109/14 110/2
**knowledge** [5] 42/22 44/11 44/23 45/7 46/4
**known** [2] 49/15 77/18
**knows** [2] 11/15 15/19
**Kupetz** [1] 44/24 97/17 97/18
**Kupetz's** [2] 106/21 106/25

**L**

**Labs** [1] 56/17 61/15 61/19 61/23 62/10 95/14
**Lacks** [5] 27/15 31/20 65/19 84/20 110/7
**ladies** [3] 25/11 69/16 110/14
**land** [1] 72/15
**lands** [1] 24/15
**largely** [1] 12/6
**last** [9] 15/5 17/18 25/15 29/25 77/7 90/5 96/6 97/2 103/17
**lastly** [2] 31/4 42/15
**late** [7] 4/21 5/2 71/6 71/18 73/9 86/19 92/10
**later** [8] 24/3 49/22 66/15 78/8 88/13 101/9 101/11 101/14
**law** [31] 1/5 8/2 9/24 10/2 10/6 12/20 12/20 12/22 12/23 13/17 18/14 19/11 20/1 44/8 44/20 44/23 45/24 56/23 56/24 58/8 63/15 68/17 69/1 97/20 98/18 100/3 100/24 104/3 105/15 105/19 106/4
**lawyer** [1] 97/18
**leading** [3] 31/14 100/4 103/23
**learned** [1] 65/8
**least** [4] 9/3 24/20 82/2 83/13
**leave** [1] 23/5
**lectern** [1] 83/19
**left** [3] 25/24 28/3 108/14
**legalese** [1] 104/23
**legitimate** [1] 8/5
**less** [1] 77/5
**let** [11] 6/4 14/23 24/19 30/3 30/7 30/21 41/1 55/4 83/1 95/21 103/2
**let's** [12] 5/23 28/9 28/15 34/14 38/21 39/13 47/11 55/15 62/21 62/22 94/2 106/17
**levels** [1] 102/23
**liabilities** [1] 19/11
**lied** [1] 58/8
**liens** [1] 104/19
**like** [27] 6/20 14/12 14/21 15/8 30/22 32/18 33/18 34/4 34/8 35/4 35/8 35/19 36/16 36/24 37/4 38/22 39/7 39/13 40/17 42/3 58/24 63/7 63/24 77/24 88/2 107/15 111/5
**Likely** [1] 72/11
**line** [3] 15/9 102/9 105/3
**lines** [1] 81/21
**lineup** [1] 24/5
**link** [1] 99/17
**liquidate** [1] 50/13
**liquidation** [1] 51/17
**list** [1] 49/19
**listed** [1] 12/4 27/6 27/14 102/13
**Listen** [1] 84/13

**lists** [1] 49/16
**little** [2] 35/13 69/13
**LLC** [2] 56/17 61/15 61/19 62/10
**LLP** [4] 68/22 98/13 102/7 103/10
**locate** [2] 41/24 42/19
**location** [4] 76/4 76/11 98/9 102/3
**lodged** [1] 6/7
**log** [1] 84/9
**logging** [1] 84/13
**long** [11] 3/5 25/13 26/24 30/1 30/20 34/23 34/24 39/3 46/24 67/11 97/18
**longer** [1] 42/18
**look** [26] 14/7 16/20 16/21 28/15 53/1 55/3 55/15 58/16 59/16 62/22 64/10 70/20 76/6 77/15 79/23 80/1 87/6 87/7 88/3 94/2 100/10 100/13 101/17 102/2 107/13 108/17
**looking** [7] 36/12 65/2 74/5 91/5 101/18 101/23 101/23
**looks** [18] 30/22 32/18 33/17 34/4 34/8 35/8 35/18 36/16 36/24 37/4 38/22 39/13 40/17 42/3 58/24 59/19 88/2 107/15
**Los** [1] 2/8
**lot** [7] 14/10 14/11 22/19 50/13 52/13 83/10 93/9
**lots** [1] 77/18
**lower** [1] 34/4
**luck** [1] 88/11
**lulling** [1] 11/19
**lunch** [2] 23/19 110/13

**M**

**M-a-r-k** [1] 97/5
**made** [9] 5/13 10/1 10/16 18/5 18/8 20/7 20/11 56/1 80/8
**Maher** [2] 73/16 73/17
**mail** [64] 26/6 26/6 26/16 27/2 28/12 28/15 29/15 29/18 29/19 29/21 29/23 30/12 31/5 31/10 32/1 32/4 35/20 36/6 36/19 36/14 36/17 36/19 36/22 36/25 37/12 38/9 38/16 38/17 38/23 38/24 47/11 47/18 47/21 48/19 48/25 49/22 50/25 51/1 62/22 62/24 63/2 63/6 63/23 65/5 65/7 66/9 66/19 67/3 67/9 68/2 81/17 82/8 82/19 82/22 83/4 83/24 83/24 84/7 84/16 84/25 85/4 91/2 91/22 99/15
**mailed** [1] 40/18
**mails** [3] 41/24 80/14 81/12
**maintain** [1] 68/15
**Major** [1] 2/6
**majority** [1] 60/22
**make** [12] 6/12 6/12 21/9 22/8 50/20 63/3 67/19 68/13 68/19 76/14 87/2 104/23
**makes** [1] 13/18
**managers** [1] 62/20
**managing** [1] 98/21
**many** [9] 11/24 13/6 15/4 33/12 51/12 51/15 76/23 76/25 77/8
**Marcelo** [2] 52/7 52/10
**March** [26] 21/5 42/25 44/14 62/24 66/9 66/11 66/12 66/15 66/17 66/20 67/3 67/9 71/6 71/9 71/11 71/14 71/18 72/12 73/9 83/6 91/23 92/1 92/4 105/15 108/15 108/16
**March 10th** [2] 66/11 66/12
**March 11th** [2] 66/15 66/17
**March 12th** [3] 66/20 67/3 67/9
**March 13th** [2] 92/1 92/4
**March 15th** [1] 105/15
**March 2019** [1] 44/14
**March 23rd** [1] 108/15
**March 26th** [1] 108/16
**March 30** [1] 71/14
**March 30th** [2] 71/9 71/11
**March 8** [1] 62/24
**March 8th** [2] 66/9 91/23
**Marchino** [52] 32/5 32/7 32/10 32/11 32/17 32/19 32/22 33/3 33/18 34/15 34/19 34/22 35/9 35/19 36/7 36/16 36/21 36/24 37/4 37/12 37/18 38/10 38/16 39/1 39/6 40/2 40/17 41/2 41/7 41/11 41/18 41/21 43/2 70/21 74/7

**M**

**Marchino...** [17] 74/8 74/17 74/20 77/8 77/9
77/13 77/18 80/12 80/16 80/20 81/2 85/21
87/16 87/21 89/24 93/11 93/22
**Marchino's** [2] 32/25 42/8
**MARK** [5] 3/6 70/3 96/24 96/25 97/3
**marked** [3] 3/8 3/13 78/15
**match** [1] 102/2
**matter** [9] 13/17 59/6 67/6 93/3 98/16 99/2
99/5 99/19 112/9
**matters** [4] 21/16 23/2 23/6 103/15
**may** [64] 5/20 12/3 12/4 15/5 16/22 17/13
24/3 30/23 32/4 32/19 32/23 33/6 33/8 33/9
33/9 33/11 33/18 34/9 34/18 35/9 35/23 36/1
36/2 36/10 37/13 37/25 38/10 38/23 39/14
40/14 41/23 42/3 42/25 50/2 50/4 58/13 59/14
60/6 64/22 79/18 79/21 81/13 83/24 86/19
87/12 87/16 87/17 87/18 87/23 88/17 88/18
88/18 88/18 88/19 88/21 89/2 89/3 89/22
89/23 94/3 94/7 95/18 96/19 110/20
**May 10th** [3] 35/9 35/23 88/18
**May 11** [2] 36/2 94/3
**May 11th** [14] 36/1 36/10 37/13 38/10 38/23
39/14 40/14 41/23 87/12 87/17 87/18 88/18
89/2 89/3
**May 12th** [1] 88/18
**May 1st** [3] 30/23 32/4 81/13
**May 24th** [1] 88/21
**May 29th** [2] 79/18 79/21
**May 3rd** [3] 32/19 32/23 33/8
**May 4th** [1] 33/18
**May 7th** [1] 34/9
**May 9th** [5] 34/18 87/16 87/23 88/17 94/7
**maybe** [7] 7/19 15/19 15/20 53/3 55/18 66/23
102/5
**me** [82] 6/4 14/23 15/23 16/2 24/19 26/10
30/3 30/7 30/11 32/21 49/5 49/23 51/21 55/4
55/13 58/23 59/16 60/18 65/5 65/7 66/19 67/2
67/9 68/6 68/9 68/16 68/18 68/25 70/10 71/10
71/12 71/14 71/21 71/22 71/24 71/25 72/6
72/14 73/21 74/7 76/7 76/15 76/18 76/21
76/23 78/14 79/2 79/5 79/18 80/12 80/16
80/24 82/17 84/6 85/16 85/21 86/2 86/8 86/10
87/6 88/4 88/10 88/13 88/14 88/17 88/21 89/2
89/3 89/6 90/9 94/9 94/14 94/21 94/24 95/3
95/21 96/2 98/15 102/8 103/2 110/10 111/8
**mean** [21] 9/20 21/12 28/18 28/24 30/5 33/23
33/25 34/12 35/16 37/23 39/23 40/2 40/7 66/1
66/11 66/15 73/17 75/22 77/24 92/19 99/14
**meaning** [11] 9 48/3 50/13 51/4 69/7 75/2
82/3 90/7 90/14
**means** [2] 80/12 82/1
**mediation** [8] 101/9 101/15 105/21 105/24
105/25 106/11 106/19 107/3
**meet** [1] 101/20
**meeting** [8] 19/10 47/19 47/20 52/15 57/24
59/7 75/25 76/11
**meetings** [1] 19/13
**Memorandum** [1] 103/5
**memory** [1] 100/11
**mention** [3] 18/5 18/8 64/4
**mentioned** [6] 92/25 98/12 102/15 107/3
108/9 108/25
**message** [13] 32/19 34/9 34/23 35/19 37/11
39/14 40/1 40/2 40/11 86/14 88/10 88/13
88/17
**messages** [36] 32/16 36/11 40/18 41/24
70/21 74/7 74/8 74/11 74/17 74/19 74/22
75/12 75/17 77/12 77/19 78/8 78/14 79/1
79/5 79/13 79/14 80/13 87/15 87/20 87/25
88/4 89/2 89/3 90/6 90/8 93/21 93/24 94/3
94/9 94/11
**messaging** [1] 74/13
**met** [18] 47/1 47/5 49/9 51/11 51/20 52/2 54/2
58/18 59/2 63/19 69/9 78/6 79/6 79/16 86/22
86/24 99/2 101/6
**MICHAEL** [15] 1/11 2/14 4/4 4/9 25/2 25/7
30/14 41/22 42/7 62/25 68/22 73/2 88/14
97/23 103/6

**Michael's** [1] 41/5
**Michele** [28] 25/12 30/23 31/7 43/25 43/25
43/3 43/8 45/16 45/19 46/1 46/4 49/25 50/9
50/16 50/19 51/16 56/22 57/20 59/11 60/13
61/25 62/4 62/7 63/12 93/7
**Michelle's** [9] 26/11 26/17 28/23 32/3 38/18
43/24 57/2 62/20 96/3
**mid** [2] 69/15 71/6
**mid-morning** [1] 69/15
**middle** [8] 28/13 35/18 37/12 40/17 41/6
41/18
**might** [3] 10/18 100/14 108/14
**million** [53] 8/18 8/21 8/25 9/6 9/6 9/8 9/9
10/17 10/19 10/25 14/23 21/5 28/2 28/23 28/22
29/8 33/15 33/24 33/24 34/2 34/2 34/3 34/13
37/7 37/20 37/22 37/24 38/2 38/3 39/11 39/18
39/19 40/12 41/9 41/9 41/25 42/20 42/22 43/4
43/7 44/12 52/17 56/12 61/20 62/1 63/16
92/20 93/7 93/10 93/15 94/12 106/24 110/2
**millions** [2] 65/13 67/14
**mind** [1] 40/23
**mines** [1] 72/15
**minor** [1] 12/8 12/9
**minute** [2] 12/14 67/5
**minutes** [6] 24/11 37/25 65/24 69/19 69/23
70/5
**Miramar** [1] 2/16
**misappropriation** [2] 11/8 18/19
**missing** [15] 32/5 32/24 34/3 37/20 39/11
41/13 41/24 42/19 73/21 80/9 93/10 93/15
93/25 94/4 94/12
**misunderstanding** [1] 13/2
**modified** [1] 4/11
**moment** [4] 15/5 56/5 90/2 111/9
**momentarily** [1] 4/11
**Monday** [4] 26/11 26/12 26/20 34/6
**money** [73] 8/21 9/20 9/21 10/4 11/6 11/9
11/11 11/14 11/16 11/17 11/19 12/18 18/20
28/3 28/23 29/1 43/24 44/15 45/16 45/20 46/2
46/5 48/7 50/13 52/13 55/24 55/25 56/17
56/21 56/24 57/2 57/21 59/11 60/1 60/12
60/14 60/18 60/22 60/24 61/12 61/16 62/4
62/7 64/3 65/18 66/4 66/13 66/17 67/20 68/10
68/16 68/18 68/21 69/3 69/4 69/9 69/4 69/4
69/10 73/21 80/9 91/11 95/14 95/24 106/17
106/20 106/24 107/4 107/6 108/23 109/3
109/19 110/6
**monies** [8] 8/4 9/12 9/14 9/14 9/15 9/16 9/19
106/13
**month** [2] 72/10 83/6
**monthly** [1] 104/18
**months** [6] 51/8 51/12 51/15 52/2 54/1 72/5
**more** [11] 8/13 40/4 68/12 69/22 76/23 77/1
77/5 77/8 80/24 83/7 83/9
**Moreover** [1] 18/20
**morning** [30] 4/5 4/8 4/9 4/13 4/14 5/21 22/15
23/22 23/24 23/25 24/4 24/20 25/3 25/6 25/7
25/10 25/11 25/12 25/22 25/23 46/12 46/15
66/3 68/2 69/15 88/14 90/20 90/21 97/12
97/13
**morning's** [1] 23/15
**most** [1] 19/13
**motion** [15] 6/17 8/7 17/21 18/25 100/21
101/8 101/16 101/19 102/6 103/4 103/4
103/18 103/21 104/1 105/22
**motive** [2] 9/3 18/21
**Move** [5] 61/7 75/8 78/21 84/10 109/7
**moved** [1] 11/11
**moves** [2] 102/21 108/2
**Moving** [1] 30/12
**Mr** [12] 18/10 19/11 19/18 22/1 24/6 24/7
24/10 24/12 52/8 52/11 61/10 70/10
**Mr.** [161]
**Mr. Andre** [1] 57/12
**Mr. Avenatti** [27] 4/17 4/19 10/24 18/9 18/14
19/4 29/4 29/7 30/11 32/8 32/13 33/5 36/20
39/9 46/9 77/17 91/15 91/17 91/20 93/18 98/1
98/10 98/17 98/24 98/25 99/8 110/21
**Mr. Avenatti's** [5] 4/15 18/24 19/9 19/20

69/21
**Mr. Avenatti...** [31] 7/8 9/25 12/4 18/14 31/1 1/6
**Mr. Bellis** [5] 23/19 69/25 71/11 110/21/1/6
**Mr. Drum** [23] 4/24 5/5 5/16 5/22 5/25 6/20
7/4 7/9 7/20 8/3 8/20 9/12 9/19 10/3 10/9 12/7
13/24 14/1 14/4 15/2 16/16 17/22 22/25
**Mr. Drum's** [2] 4/22 5/14 6/5 6/17 22/16
**Mr. Frank's** [1] 104/3
**Mr. Horoupian** [2] 24/8 70/9 97/12
**Mr. James** [1] 57/15
**Mr. Johnson** [2] 8/18 10/19
**Mr. Johnson's** [2] 8/17 8/19
**Mr. Karlous** [1] 57/8
**Mr. Marchino** [49] 32/5 32/7 32/10 32/11
32/17 32/19 32/22 33/3 33/18 34/15 34/19
34/22 35/9 35/19 36/16 36/21 36/25 37/11
37/12 37/18 38/10 38/16 39/1 39/6 40/2 40/17
41/2 41/7 41/11 41/18 41/21 42/3 70/21 74/8
74/17 74/20 77/8 77/9 77/13 77/18 80/12
80/16 80/20 80/25 87/16 87/21 89/24 93/11
93/22
**Mr. Marchino's** [2] 32/25 42/8
**Mr. Penland** [1] 19/15
**Mr. Sagel** [2] 57/10 97/8
**Mr. Sagel's** [1] 57/12
**Mr. Steward** [2] 4/10 25/8
**Mr. Tran** [13] 25/22 25/24 46/12 58/16 59/25
60/25 70/20 71/2 81/21 90/20 93/21 95/12
95/22
**Mr. Tran's** [2] 69/4 69/5
**Mr. Wyman** [13] 10/14 25/18 46/22 53/2 56/9
71/5 81/10 81/19 82/17 82/20 87/11 89/1
90/17
**Ms** [20] 19/13 20/11 20/25 21/2 21/4 21/9
21/12 21/14 31/7 54/6 80/21 82/22 82/25
83/14 83/23 84/15 85/6 86/2 88/7 95/7
**Ms.** [58] 4/11 19/12 19/16 19/20 20/6 20/12
22/4 22/8 25/8 25/9 26/20 27/13 28/1 28/3
29/8 30/19 33/6 33/10 37/8 38/1 44/11 44/18
44/23 45/15 47/22 48/2 48/6 48/8 48/16 48/22
48/25 51/1 52/23 53/12 53/18 54/13 54/19
54/24 55/8 55/23 55/25 56/21 59/25 60/13
60/14 60/17 61/11 61/14 61/19 62/11 66/24
85/9 85/17 85/18 91/11 92/22 95/13 95/23
**Ms. Cummings-Cefali** [2] 4/11 25/8
**Ms. DeLeassa** [1] 19/12
**Ms. Hernandez** [4] 25/9 51/1 53/18 66/24
**Ms. Penland** [6] 19/16 19/20 20/6 20/12 22/4
22/8
**Ms. Phan** [29] 26/20 27/13 28/1 29/8 33/6
33/10 37/8 38/1 44/11 44/23 48/2 48/8 48/16
48/22 48/25 53/12 54/13 54/19 55/23 56/21
60/13 60/17 61/11 61/14 61/19 62/11 85/18
91/11 92/22
**Ms. Phan's** [13] 28/3 44/18 45/15 47/22 48/6
52/23 54/24 55/8 55/25 59/25 60/14 95/13
95/23
**Ms. Regnier** [2] 85/9 85/17
**Ms. Regnier's** [1] 30/19
**much** [9] 14/13 33/14 37/15 39/16 39/23
49/17 69/22 106/20 106/24
**multiple** [7] 56/1 56/3 56/8 56/15 56/20 95/22
102/23
**my** [49] 4/22 6/16 7/19 7/19 14/7 14/11 14/18
16/7 16/13 16/24 19/14 23/9 24/5 30/8 35/7
41/5 47/5 47/19 49/23 56/18 58/17 61/14
65/13 65/18 66/16 67/8 67/20 67/20 74/15
75/11 76/13 76/19 77/15 78/19 78/20 80/1
83/13 83/16 84/13 84/17 84/18 89/20 90/5
95/2 97/22 98/2 101/14 108/13 109/4
**myself** [1] 75/24

**N**

**name** [8] 26/24 52/8 55/7 55/8 96/6 97/2
97/23 99/16
**named** [2] 45/8 45/11
**national** [4] 7/3 39/9 39/25 92/16
**nature** [2] 80/18 90/8
**necessarily** [1] 7/12
**need** [17] 5/18 11/13 20/4 30/2 30/6 30/8

**N**

need... [11]  38/13 39/18 39/20 40/25 69/21
  92/17 101/6 101/20 105/12 105/14 106/6
needed [2]  73/5 108/25
needs [3]  11/5 18/18 30/2
negotiated [1]  54/13
never [12]  13/20 14/11 14/12 20/16 31/17
  31/25 40/8 64/11 67/17 85/12 85/12 90/11
new [5]  6/12 67/6 71/15 71/19 83/7
Newport [2]  44/10 98/3
news [2]  33/1 35/9
next [15]  24/16 28/22 34/14 34/21 40/23 41/6
  41/11 51/21 65/9 66/3 68/2 70/3 104/22
  104/23 106/17
NICOLA [1]  2/3
Nike [1]  20/17
no [124]
non [2]  10/2 105/6
non-trust [2]  10/2 105/6
none [4]  3/12 3/14 13/4 42/9
nonresponsive [2]  75/8 109/7
noon [1]  23/22
North [1]  2/7
not [111]  4/2 5/15 6/2 6/8 6/9 6/21 7/6 7/11
  7/17 7/18 8/5 8/10 8/11 9/14 9/15 9/22 10/17
  11/7 11/13 13/7 13/17 13/23 14/5 14/25 15/17
  15/20 15/23 16/8 17/10 17/10 18/12 18/7 18/7
  18/11 18/23 20/13 20/15 21/15 23/21 26/18
  27/23 28/20 34/13 35/15 35/17 37/22 38/14
  39/16 39/22 41/1 41/5 41/10 44/25 48/1 49/4
  49/13 51/9 51/13 51/20 56/21 57/2 58/2 59/1
  59/10 59/11 60/1 60/12 60/18 60/20 61/21
  61/22 62/8 62/14 64/19 65/4 65/18 65/15 69/5
  69/7 69/8 69/17 69/17 69/19 69/20 71/7 74/2
  75/2 75/15 76/19 76/20 78/1 78/20 84/1 84/13
  84/22 84/23 85/15 85/20 85/24 90/7 94/4
  97/21 101/12 101/12 101/14 110/10 110/15
  110/16 110/17 110/19 110/25
note [1]  18/5
noted [1]  22/14
notes [8]  19/8 19/8 19/20 20/22 20/25 21/3
  21/16 22/5
nothing [4]  11/23 15/18 41/22 96/18
notice [6]  19/17 21/23 99/11 99/13 103/3
  111/12
notwithstanding [3]  7/22 17/12 21/17
now [52]  6/3 8/19 13/5 13/22 15/4 15/18 24/2
  27/9 28/9 30/22 34/5 34/8 35/8 36/4 37/10
  38/6 38/21 39/13 42/2 42/3 42/9 48/21 52/22
  53/23 54/4 55/11 56/15 57/4 58/15 59/5
  62/21 62/22 63/19 65/5 65/14 68/12 74/5
  74/11 76/6 81/5 82/8 82/18 82/22 83/6 83/6
  83/12 86/18 90/22 91/21 92/9 93/9 94/14
number [46]  5/14 6/4 6/5 14/22 15/17 15/19
  16/1 16/10 16/19 17/4 20/22 26/3 26/11 26/17
  28/17 30/15 31/1 31/7 34/10 34/17 34/23
  34/25 35/2 35/3 35/4 35/17 36/23 37/24 38/14
  39/2 39/3 39/10 40/4 40/8 40/9 46/16 46/17
  51/8 54/12 70/22 71/4 98/13 100/15 102/11
  111/2 111/8
numbers [13]  12/7 12/9 15/3 19/18 39/20
  41/8 98/15 101/22 101/23 101/24 101/25
  102/1 102/10
numerous [1]  18/9

**O**

oath [3]  25/15 83/23 94/3
objection [47]  4/15 4/16 4/25 6/7 6/14 6/20
  7/7 17/22 19/23 19/24 19/25 21/9 21/21 21/21
  27/15 31/14 31/20 43/10 48/17 50/22 52/18
  58/10 60/8 61/2 65/19 66/5 67/22 73/6 78/10
  79/8 82/5 82/12 83/15 83/18 84/2 84/20 94/16
  96/10 100/4 102/22 103/23 107/8 107/24
  108/4 109/21 110/7 111/13
objections [10]  4/22 5/8 5/12 6/23 23/11
  43/18 43/22 105/23 111/2 111/5
obligation [4]  15/15 17/3 17/24 48/12
obviously [3]  5/12 14/15 22/19
occurred [1]  101/15

October [2]  8/7 17/18
of [318]
offered [2]  18/11 72/1
office [7]  42/17 47/5 47/19 47/20 61/15 98/3
  98/4
officer [1]  44/19
OFFICES [1]  2/15
Oh [2]  14/22 48/5
okay [34]  6/2 8/1 11/2 12/12 13/16 16/14
  16/17 17/12 17/20 23/14 26/5 28/8 35/8 38/21
  44/17 47/7 55/13 55/14 55/17 59/25 70/2 70/6
  72/12 72/14 75/8 78/1 78/3 82/16 82/22 83/12
  88/6 94/11 94/24 95/7
once [1]  10/1
one [31]  6/5 17/1 23/24 33/15 38/1 38/2 39/20
  40/8 40/9 49/8 49/9 50/14 51/15 51/19 53/1
  53/14 53/18 54/21 55/12 55/12 56/5 62/23
  65/6 76/17 79/18 79/19 80/8 82/2 83/13 90/2
  111/9
ones [1]  12/5
ongoing [1]  51/3
only [17]  12/3 12/9 15/15 15/23 16/8 18/3
  28/3 30/15 34/2 39/17 39/19 40/3 40/22 43/3
  70/9 104/12 111/7
open [1]  99/17
opening [2]  22/15 22/21
operating [2]  11/12 44/19
opinions [2]  69/18 110/16
opposed [1]  21/8
opposite [1]  13/10
opposition [2]  17/19 111/11
Orange [1]  98/4
order [12]  5/9 52/23 60/24 63/8 63/15 63/24
  95/15 101/21 103/4 108/10 109/4 110/25
original [1]  8/7
other [47]  6/10 6/21 9/19 9/20 10/2 11/10
  11/18 11/20 11/22 18/21 23/2 23/5 23/7 23/13
  33/22 41/20 45/22 54/12 54/15 55/12 73/12
  73/15 75/22 76/3 76/24 77/7 77/12 77/13 78/4
  78/8 78/14 78/14 79/1 79/5 80/12 80/13 81/5
  82/2 82/2 83/13 85/11 88/18 90/6 90/8 92/23
  93/3 96/2
others [1]  104/4
otherwise [1]  49/15
our [22]  5/18 6/20 7/2 9/11 23/11 23/12 23/25
  31/2 37/14 39/16 39/23 39/24 48/21 70/3 70/4
  98/2 98/4 106/7 106/9 106/12 107/20 109/3
ours [1]  40/25
out [17]  5/17 5/23 9/8 11/20 13/8 13/12 14/16
  14/22 29/25 30/1 32/5 32/7 41/20 51/16 56/20
  72/23 88/21
outside [1]  20/8
outstanding [1]  19/15
over [15]  4/25 14/10 14/11 14/18 28/24 41/10
  41/11 41/23 52/16 54/25 56/12 77/18 78/8
  86/24 92/21
overall [1]  103/12
overcome [2]  7/7 7/14
overrule [2]  19/23 21/21
Overruled [22]  27/17 31/22 43/12 43/19
  43/23 50/23 59/13 60/9 61/3 61/5 66/6 67/23
  82/13 84/3 84/21 100/5 102/24 107/10 108/1
  108/6 109/23 110/9
owe [1]  68/18
owed [6]  29/9 43/3 44/12 46/6 68/15 68/16
own [3]  49/17 49/17 73/1
ownership [2]  49/18 49/19

**P**

p.m [1]  111/18
Pachulski [2]  106/3 106/14
pack [1]  14/24
page [56]  30/12 30/18 30/22 31/10 32/17
  33/17 34/4 34/8 34/14 34/14 34/21 34/21
  34/22 35/8 35/18 35/24 36/24 37/3 37/11
  38/22 39/13 40/14 40/23 41/6 41/15 42/2
  42/15 55/16 58/17 70/24 71/18 85/5 87/7
  87/16 87/17 87/17 88/5 91/3 100/17 100/17
  101/17 101/18 101/19 101/22 101/24 101/25

102/1 102/2 102/3 102/9 103/2 103/12 103/13
  104/8 104/21 104/24
page 1 [2]  55/16 91/3
page 11 [4]  101/17 101/18 102/2 103/13
page 12 [3]  34/8 103/12 104/7
page 13 [4]  34/14 87/7 87/16 104/6
page 14 [1]  34/21
page 16 [3]  35/18 101/19 102/3
page 17 [2]  35/18 37/11
page 19 [1]  38/22
page 23 [2]  87/17 87/17
page 24 [1]  40/14
page 3 [1]  70/24
page 31 [1]  41/15
page 35 [1]  42/2
page 36 [1]  42/15
page 38 [1]  100/17
page 7 [1]  32/17
page 8 [1]  88/5
pages [4]  5/2 41/10 41/11 94/7
pages 109 [1]  5/2
pages 13 [1]  94/7
paid [23]  11/12 11/19 14/13 14/14 22/16
  22/21 22/25 48/3 48/7 50/13 52/13 56/17
  59/11 60/1 60/12 60/14 62/8 91/11 104/24
  105/14 106/7 108/9 108/20
paper [1]  64/8
papers [2]  7/2 14/7
paragraph [9]  53/5 58/16 59/16 64/10 65/2
  79/23 80/1 104/22 104/24
part [10]  19/19 20/15 21/18 54/24 56/16 58/22
  77/10 99/24 100/23 104/24
particular [1]  15/19
particularly [2]  6/13 19/8
parties [1]  106/13
partner [3]  44/18 45/19 98/21
pass [5]  8/24 63/7 63/14 63/23 90/16
passed [3]  11/7 51/12 51/15
Passport [1]  45/5
past [1]  87/17
pause [3]  12/15 56/6 90/3
pay [8]  45/16 45/20 46/2 48/12 52/16 60/18
  68/10 108/10
pay to [1]  108/10
paying [6]  46/5 60/21 61/20 61/25 63/15
  109/18
payment [22]  26/13 27/5 31/17 32/5 37/7
  37/21 39/11 41/25 42/20 42/23 43/8 57/21
  64/16 93/10 93/25 94/4 94/12 105/4 105/9
  105/11 106/1 106/6
payments [16]  11/20 18/23 33/7 33/10 33/12
  33/14 38/1 43/4 56/2 56/9 60/2 63/20 89/24
  91/11 91/21 104/18
penalty [2]  99/25 100/20
pending [1]  103/15
Penland [10]  19/12 19/13 19/15 19/16 19/20
  20/6 20/12 21/22 22/4 22/8
people [2]  49/16 75/22
per [1]  20/1
perceive [1]  18/11
percent [1]  105/6
percentage [1]  49/18
performed [1]  17/23
period [5]  42/25 80/16 88/1 88/5 89/10
perjury [2]  99/25 100/20
permitted [1]  8/5 9/12 111/6
personally [2]  68/15 98/17
pertinent [3]  23/15 23/17 23/21
Phan [39]  26/20 27/10 27/13 28/1 29/8 31/13
  31/18 32/1 33/6 33/10 37/8 38/1 43/3 44/11
  44/23 46/4 48/2 48/8 48/16 48/22 48/25 53/12
  54/6 54/13 54/19 55/23 56/21 60/13 60/13
  60/17 61/11 61/14 61/19 61/25 62/11 85/18
  91/11 92/22 93/7
Phan's [21]  28/3 43/8 44/18 45/15 45/16
  45/20 46/2 47/22 48/6 52/23 54/24 55/8 55/25
  57/20 59/11 59/25 60/14 62/4 62/7 95/13
  95/23
phone [18]  74/15 74/25 75/6 75/7 75/12 77/15

**P**

**phone...** [12] 77/16 77/17 79/17 79/21 80/3
80/5 80/8 80/14 89/5 89/14 94/15 94/24
**phones** [2] 77/17 77/20
**physically** [1] 30/8 75/20 90/7
**place** [3] 5/2 85/16 85/20
**placed** [1] 79/18
**plaintiff** [1] 1/10 2/2 13/3
**PLAINTIFF'S** [2] 3/4 3/7
**play** [1] 20/24
**pleading** [1] 99/16 99/17 99/18 100/7 100/11
**please** [58] 7/2 12/14 26/10 26/23 27/9 28/10
28/14 28/16 29/11 29/23 30/1 30/16 30/22
31/1 31/6 31/23 32/14 32/17 32/21 34/24
35/18 36/3 38/6 38/23 39/13 40/14 40/24
41/16 42/2 46/18 47/12 50/1 51/21 53/4 55/19
56/5 58/16 60/3 66/24 66/25 68/6 69/16 69/19
70/24 85/5 85/12 87/6 87/7 88/7 88/14 90/2
90/24 95/17 96/7 97/1 110/14 110/17 111/9
**point** [21] 5/15 7/19 8/8 8/12 10/7 11/15 11/20
14/18 22/8 23/11 33/9 44/2 54/1 55/11 61/14
69/22 88/18 95/13 106/7 106/10 106/11
**pointed** [1] 13/8
**points** [6] 6/12 10/16 11/22 12/17 20/22 103/5
**police** [2] 44/2 44/10
**portion** [3] 26/23 27/10 66/25
**position** [6] 6/16 13/24 16/8 16/11 16/13
16/25
**possession** [1] 90/7
**possible** [9] 5/21 8/22 8/22 13/13 23/23 70/7
84/6 84/18 84/22
**possibly** [1] 100/16
**potential** [1] 47/19
**potentially** [2] 21/13 58/7
**practice** [2] 97/20 97/22
**predominantly** [2] 80/20 89/23
**prefer** [1] 63/7
**preliminary** [1] 4/23
**prepared** [3] 16/16 17/21 21/15
**preparing** [1] 14/5
**presence** [1] 20/8
**present** [15] 4/2 4/10 12/5 14/16 15/16 15/24
17/23 20/5 20/5 24/25 47/7 57/8 69/20 70/16
110/19
**presented** [1] 19/5
**presenting** [1] 11/8
**presently** [3] 5/24 16/15 90/6
**PRESIDING** [1] 1/8
**presumably** [1] 40/9
**previewing** [1] 70/11
**previous** [1] 77/17
**previously** [4] 4/25 19/5 23/10 25/13
**prior** [5] 44/14 48/17 52/18 72/5 78/13
**priority** [1] 30/2
**private** [5] 8/19 17/24 37/4 76/3 76/11 76/13
**privilege** [2] 70/11 110/11
**PRO** [1] 2/14
**probably** [5] 14/19 24/10 69/23 87/25 106/16
**problem** [12] 7/9 8/23 14/9 15/1 15/1 15/10
16/24 17/8 17/11 32/3 48/11 52/16
**problems** [2] 5/14 6/5
**proceedings** [7] 1/15 12/15 24/24 56/6 70/15
90/3 112/9
**process** [1] 51/3
**produce** [1] 16/8
**produced** [4] 16/2 17/2 17/13 18/10
**professions** [1] 12/21
**program** [1] 74/11
**proofreading** [1] 12/8
**proper** [1] 15/12
**proposed** [1] 12/5
**proposes** [1] 17/9
**proposing** [1] 8/20
**protection** [1] 104/17
**prove** [2] 11/5 11/13
**provide** [11] 19/7 21/23 26/10 28/17 30/16
31/1 79/13 89/8 89/14 89/19 99/17
**provided** [12] 10/20 12/3 15/4 39/6 39/10
55/24 77/13 79/11 89/20 91/5 91/8 111/7

**provides** [1] 39/3
**publicly** [1] 18/6
**pull** [5] 26/23 36/3 88/7 90/24 103/2
**purchase** [11] 47/24 53/24 54/5 54/6 54/16
54/18 55/3 55/6 56/16 72/21 92/25
**purchased** [8] 71/24 72/1 72/3 72/4 72/5
72/14 72/23 73/1
**purports** [1] 7/4
**purpose** [2] 61/18 80/5
**purposes** [1] 20/12
**pursuant** [5] 22/2 101/4 108/23 109/19 112/6
**put** [9] 14/19 19/4 23/12 24/16 30/20 33/1
33/3 82/25 95/14
**putting** [1] 85/2

**Q**

**qualify** [1] 7/6
**quash** [2] 19/3 19/19
**quashing** [1] 22/1
**question** [26] 14/6 16/7 20/4 21/25 31/23
55/5 58/17 60/20 61/22 64/12 64/20 65/22
75/11 78/20 80/2 83/13 83/16 83/20 84/14
84/17 84/19 90/5 93/15 95/21 101/25 107/15
**questions** [19] 11/23 17/5 20/2 21/8 21/8
22/13 44/17 46/8 46/11 46/16 46/22 58/6 59/4 71/4
81/20 87/12 93/10 93/17 106/17 110/12
**quibbling** [1] 8/10
**quick** [5] 12/17 21/25 22/12 23/13 66/12
**QuickBooks** [1] 15/7
**quicker** [1] 102/5
**quickly** [2] 13/12 13/13

**R**

**racing** [1] 18/24
**raise** [2] 23/14 70/9
**raised** [4] 6/23 7/21 11/24 105/24
**re** [1] 102/7
**reach** [2] 32/4 32/7
**reached** [1] 88/21
**read** [21] 6/11 6/13 7/23 7/24 29/23 31/11
50/2 50/5 60/4 60/7 63/9 64/20 64/23 67/9
95/17 95/19 103/18 104/10 104/23 105/2
105/8
**readily** [1] 31/3
**reading** [1] 40/24
**ready** [1] 68/10
**Reagan** [1] 2/10
**really** [2] 16/23 60/20
**reason** [5] 5/16 15/22 24/2 60/12 62/7 89/1
**reasonably** [1] 13/13
**reasons** [7] 10/8 18/25 51/15 51/19 60/15
60/19 91/12
**recall** [47] 8/9 8/12 46/23 47/20 49/11 50/6
51/24 51/25 56/20 57/23 57/24 58/3 58/4 58/9
64/6 65/7 65/11 65/14 70/22 71/4 71/11 71/12
71/17 71/18 71/21 71/24 72/4 72/9 73/9 73/23
73/24 74/2 79/3 79/22 81/19 81/20 86/10
86/18 86/23 87/11 87/18 89/11 89/21 91/24
93/22 96/20 96/23
**receipt** [2] 40/22 61/15
**receive** [12] 11/17 29/8 31/7 33/6 33/10 33/12
44/11 61/11 99/11 99/15 105/15 105/20
**received** [29] 3/8 3/13 26/13 26/18 27/5 28/20
34/13 34/24 37/5 56/21 56/24 60/22 63/20
68/21 68/24 69/10 83/4 85/7 91/22 92/5 99/9
99/11 102/24 102/25 106/9 108/6 108/7 109/3
109/12
**recently** [1] 111/7
**Recess** [3] 24/23 70/14 111/18
**recognize** [4] 29/15 36/6 38/9 107/17
**recollection** [15] 47/1 47/17 47/21 58/18
59/17 61/10 64/11 64/13 64/15 78/17 78/25
79/4 79/16 80/2 108/7
**reconsider** [1] 19/14
**record** [7] 2/5 50/5 60/7 64/23 68/19 95/19
99/4
**records** [15] 4/24 6/10 6/14 6/18 6/21 6/22
7/5 7/6 7/11 7/15 7/16 14/8 18/1 18/13 89/5
**recross** [4] 3/4 3/11 69/24 93/19

**RECROSS-EXAMINATION** [1] 93/19
**redirect** [3] 3/4 67/20 93/14
**ref** [16] 26/10 26/17 28/17 30/15 31/7 34/10
34/16 35/2 35/3 35/17 36/23 39/19 40/8 40/22
41/3 41/8
**reference** [2] 38/24 39/19
**referenced** [1] 105/21
**referencing** [1] 103/9
**referred** [2] 18/23 31/11
**referring** [2] 31/12 63/11
**refers** [1] 105/8
**reflects** [1] 13/2
**refresh** [7] 47/17 58/17 64/13 64/15 80/2
100/11 100/19
**refreshes** [1] 59/17 64/10
**refuses** [1] 15/2
**regard** [3] 11/3 11/22 19/1
**regarding** [2] 110/24 111/12
**Regnier** [26] 19/7 20/11 20/25 21/2 21/4 21/9
21/12 21/14 29/7 29/16 31/7 33/5 80/21 82/10
82/19 82/22 82/25 83/14 83/23 84/15 84/25
85/9 85/17 86/2 92/6 95/7
**Regnier's** [1] 30/19
**regulation** [1] 12/21
**regulations** [1] 112/11
**relate** [3] 19/6 94/4 94/11
**related** [7] 20/17 38/3 53/12 70/9 81/24 96/14
105/13
**relates** [3] 89/6 95/12 105/11
**relating** [34] 4/22 4/23 5/4 5/14 6/23 7/7 9/12
13/8 13/24 18/13 22/13 23/11 46/22 47/2
52/12 52/23 54/4 54/9 54/12 70/11 71/5 76/18
80/21 85/1 85/17 85/21 85/25 86/14 87/4
87/12 88/4 89/24 95/23 111/2
**relationship** [3] 32/10 45/8 45/10
**release** [1] 54/17
**relevance** [8] 8/22 8/23 10/3 50/22 73/6 96/11
107/8 107/24
**relevant** [6] 10/18 11/21 18/21 20/6 20/18
21/17
**relied** [1] 14/4
**relief** [3] 103/18 103/21 104/1
**relies** [1] 6/5
**rely** [5] 4/24 7/4 7/10 18/6 18/7
**relying** [3] 6/8 6/21 89/23
**remainder** [1] 44/12
**remaining** [1] 44/12
**remember** [32] 27/2 32/22 47/3 49/10 51/3
52/9 57/5 57/15 58/22 58/22 63/21 64/8 66/21
67/15 68/4 69/16 71/7 71/10 71/15 81/23
82/20 87/3 87/13 87/15 91/12 92/12 92/23
93/12 94/9 94/22 100/7 110/15
**remembered** [1] 92/10
**reminded** [1] 25/14
**reminder** [1] 92/5
**Remoun** [2] 4/7 25/5
**removal** [1] 12/10
**renewed** [1] 104/15
**repeat** [4] 31/23 50/1 79/20 100/15
**repeated** [1] 18/9
**Rephrase** [1] 65/22
**replacement** [1] 104/19
**replied** [2] 4/16 30/22
**reply** [2] 4/17 31/5
**report** [3] 18/13 44/2 44/8
**reported** [1] 112/8
**reporter** [2] 96/6 112/16
**REPORTER'S** [1] 1/15
**represent** [5] 48/22 48/25 49/24 82/16
**representation** [2] 17/14 98/25
**representative** [1] 39/24
**represented** [1] 70/10
**representing** [2] 99/8 106/4
**represents** [1] 17/15
**repurchase** [2] 53/11 92/22
**request** [5] 19/3 22/24 54/25 62/11 80/8
**requested** [7] 31/8 36/23 48/22 103/18
103/21 104/1
**required** [1] 15/17

**R**

**requirement [1]** 13/7
**requires [1]** 15/15
**research [2]** 69/19 110/17
**Reserve [1]** 96/20
**residence [2]** 76/3 90/8
**resolution [2]** 104/8 104/10 104/25
**resolved [3]** 30/4 103/15 103/18
**respect [6]** 6/17 16/1 17/24 19/14 19/18 23/7
**respond [2]** 10/15 39/1
**responded [10]** 65/12 65/15 65/17 65/24 66/3 66/12 66/17 67/13 67/19 68/6
**response [18]** 5/1 28/12 30/13 30/19 32/25 34/4 35/11 37/13 40/21 40/24 41/7 41/21 42/8 46/13 48/21 59/3 65/5 86/13
**rest [3]** 39/4 40/2 41/4
**result [1]** 8/14
**results [2]** 30/21 83/1
**resume [1]** 110/14
**resumed [2]** 24/24 70/15
**retrieving [1]** 100/18
**return [1]** 71/19
**Revenue [5]** 106/14 107/21 107/23 108/11 109/18
**reversed [2]** 92/17 94/21
**review [1]** 49/23
**reviewed [2]** 19/6 38/24
**reviewing [1]** 102/4
**rifles [1]** 72/16
**right [97]** 14/23 14/24 16/15 22/4 22/18 23/20 24/2 24/8 26/7 26/14 34/6 35/9 36/17 37/1 40/15 47/5 47/17 48/7 48/9 48/13 48/16 49/20 49/25 50/10 50/14 50/17 50/21 51/18 52/3 52/13 52/24 54/7 54/13 54/19 54/24 55/1 55/9 55/11 55/15 56/13 56/22 56/24 56/25 57/2 57/8 57/13 59/4 59/7 60/15 60/19 62/5 62/12 63/4 63/25 65/14 65/18 66/1 66/4 66/9 66/11 66/13 66/17 66/20 67/3 67/14 67/19 68/7 72/13 72/19 72/24 73/11 73/19 74/25 75/15 76/24 77/10 78/1 78/4 78/9 81/3 81/10 82/4 82/23 83/10 87/21 87/23 88/15 89/3 90/12 92/2 94/12 95/3 95/5 96/20 100/6 105/8 111/10
**risen [1]** 8/13
**role [1]** 44/18
**Ronald [1]** 2/10
**RPR [1]** 1/19
**rule [7]** 7/1 12/21 12/22 13/10 13/11 17/21 18/4 18/5
**ruled [4]** 6/16 6/22 7/17 7/18
**rules [1]** 7/18
**ruling [4]** 19/14 21/20 48/17 52/19
**run [1]** 54/25
**runaround [3]** 28/24 29/5 29/6

**S**

**SACR [3]** 1/11 4/3 25/1
**SACR-19-00061-JVS [1]** 1/11 4/3 25/1
**SAGEL [5]** 2/9 4/5 25/4 57/10 97/8
**Sagel's [1]** 57/12
**said [38]** 17/6 20/25 21/4 21/9 21/12 26/12 28/16 29/5 30/6 33/3 34/5 35/3 37/25 39/22 40/10 42/11 51/21 59/14 59/18 63/6 63/11 64/11 65/12 66/4 66/12 67/13 67/19 68/3 81/15 81/20 85/12 88/10 88/14 92/10 92/14 94/20 95/3 108/25
**same [17]** 6/16 30/23 36/11 38/10 43/18 43/22 44/5 65/17 70/5 82/12 84/2 85/21 98/9 101/17 107/14 108/4 108/20
**San [2]** 2/16 52/6
**Santa [1]** 1/16 1/20 2/11 4/1
**sat [1]** 20/16
**satisfy [1]** 7/18
**say [31]** 5/17 6/4 8/13 13/20 14/7 15/7 20/23 21/3 21/15 28/18 30/13 32/3 33/23 34/9 35/13 39/4 39/15 40/6 43/3 52/15 64/17 64/19 65/2 68/20 69/3 77/2 78/16 92/15 106/20 107/16
**saying [9]** 15/8 29/6 33/4 35/19 38/3 58/3

**S** (continued)

**81/23 100/1 101/10**
**says [6]** 13/18 65/8 85/23 87/6 89/23 94/1
**85/5 103/15 103/17 104/7**
**scope [3]** 94/16 95/9 96/10
**screen [3]** 26/1 65/6 72/18
**screenshot [1]** 75/17
**screenshots [5]** 74/23 75/14 76/7 76/9 76/17
**screenshotted [1]** 75/17
**SE [1]** 2/14
**seal [2]** 19/9 19/21
**second [22]** 7/19 28/16 30/12 33/15 34/21 37/7 37/22 39/20 41/25 42/19 42/22 43/4 43/8 50/16 62/21 63/3 63/20 64/16 85/4 91/21 93/10 93/15
**secondly [2]** 9/18 13/25
**secret [1]** 14/3
**section [3]** 2/6 101/18 112/6
**see [37]** 14/25 26/1 30/16 30/23 33/18 35/20 40/19 42/4 47/10 47/14 47/15 49/10 49/12 49/13 53/7 55/21 64/10 68/4 71/2 73/12 73/15 77/12 77/20 78/7 78/14 79/1 79/5 81/7 81/13 82/8 83/2 103/13 103/15 104/8 105/9 110/18
**seeing [1]** 100/10
**seeking [3]** 50/7 50/9 51/6
**seemed [1]** 32/8
**seems [1]** 46/24
**seen [4]** 14/11 14/12 17/14 49/13
**SEFFENS [3]** 1/19 112/15 112/16
**select [1]** 76/7
**selling [1]** 55/9
**SELNA [1]** 1/8
**semantical [1]** 20/24
**send [7]** 32/18 51/5 65/14 66/19 67/3 88/17 110/6
**sending [5]** 34/25 36/21 38/16 67/10 92/6
**sense [1]** 13/18
**sent [25]** 26/20 27/13 29/2 31/17 31/25 38/1 38/9 47/18 47/21 49/22 57/2 63/6 65/5 65/7 66/9 67/9 68/7 71/7 83/24 84/16 88/10 88/13 92/16 92/18 106/16
**sentence [8]** 28/16 28/22 39/22 79/23 80/1 103/17 105/2 105/8
**sentences [1]** 104/10
**separate [1]** 98/19
**separation [1]** 54/17
**September [2]** 53/25 56/16
**September 17th [1]** 53/25
**series [1]** 81/12
**serious [1]** 59/16
**Service [5]** 106/14 107/21 107/23 108/11 109/18
**services [1]** 54/16
**sessions [1]** 19/7
**set [12]** 43/4 56/15 60/1 60/23 61/11 62/3 62/21 63/3 63/20 65/9 91/10 91/21
**setting [1]** 61/18
**settlement [14]** 8/17 8/18 8/21 9/7 10/20 11/4 11/6 11/9 11/17 12/24 13/11 13/20 103/4 104/2
**seven [1]** 54/1
**shaky [1]** 20/21
**shares [1]** 55/24 55/24 55/25
**sharing [1]** 32/12
**SHARON [3]** 1/19 112/15 112/16
**she [31]** 4/11 20/11 20/12 20/15 20/16 20/17 20/20 20/21 20/24 20/25 21/3 21/7 21/12 21/16 21/22 26/18 29/9 33/12 44/12 44/21 45/1 45/4 45/7 45/10 46/6 50/20 54/21 54/25 82/16 96/9 96/14
**sheet [2]** 38/14 56/9
**Sheikh [1]** 24/13
**sheltered [2]** 60/24 95/24
**short [1]** 70/4
**shortly [6]** 33/1 34/17 47/22 68/13 72/5 72/7
**should [8]** 8/5 26/1 31/3 34/16 41/8
**shouldn't [1]** 14/2
**show [2]** 38/18 88/4
**showing [2]** 38/19 102/10

**S** (continued)

**shown [1]** 10/19
**sign [3]** 34/10 51/21
**Signal [1]** 80/17
**signed [1]** 10/21
**silence [1]** 23/9
**similar [2]** 53/14 53/21
**since [1]** 22/25
**single [2]** 88/17 93/14
**sir [92]** 6/11 8/6 9/2 12/16 16/7 16/25 25/14 46/20 48/4 53/7 55/21 57/22 60/19 60/21 61/23 63/17 65/24 72/10 72/24 73/22 75/11 77/3 78/20 78/24 79/24 80/20 81/7 84/13 85/15 86/12 88/19 89/22 93/25 94/5 94/9 94/15 94/19 95/15 96/22 110/20 110/22 111/9 111/17
**sister [3]** 56/22 56/23 56/24
**sit [8]** 22/9 52/11 62/4 68/20 73/24 74/2 78/24 90/5
**Sitting [1]** 100/6
**situation [5]** 14/12 14/12 48/15 49/1 51/20
**six [2]** 28/24 52/2
**skip [2]** 34/23 41/15
**slide [1]** 16/17
**slides [1]** 16/16
**small [1]** 11/19
**smoke [1]** 72/18
**smoke-screen [1]** 72/18
**SMS [2]** 74/13 80/13
**so [61]** 5/7 5/12 6/2 7/18 8/1 9/8 10/3 10/7 10/23 13/16 13/23 15/12 16/20 18/24 18/25 20/12 20/17 21/2 21/20 22/24 30/16 31/1 32/8 33/25 34/2 36/11 39/18 40/9 41/22 47/6 54/1 55/15 58/21 58/24 59/20 60/23 65/11 67/2 67/9 68/9 69/3 70/7 71/9 72/12 73/1 73/24 74/2 76/3 77/5 77/18 78/2 78/6 80/24 92/14 95/2 95/24 99/7 101/10 102/2 110/18 111/5
**some [19]** 10/7 18/20 21/18 23/1 23/25 24/1 33/9 44/2 46/22 49/5 52/22 56/17 68/12 70/21 74/9 74/10 76/3 81/5 106/16
**someone [1]** 69/3
**something [15]** 5/3 30/3 30/6 68/14 71/21 71/25 72/1 72/23 81/20 85/8 85/9 86/10 90/8 99/7 102/13
**sometime [1]** 72/12
**somewhere [1]** 28/23
**soon [2]** 30/20 83/1
**sorry [5]** 42/9 59/23 74/1 108/13 108/15
**sorted [1]** 33/2
**sought [1]** 99/21
**sound [1]** 98/15
**Sounds [2]** 72/13 73/11
**source [1]** 15/19
**sources [1]** 11/20
**SOUTHERN [1]** 1/6
**speak [2]** 41/20 52/6
**speaking [1]** 9/6
**special [5]** 4/7 24/3 24/17 25/5 57/15
**specialist [1]** 97/21
**specialize [1]** 97/20
**specific [2]** 16/10 17/4
**specifically [3]** 18/1 49/12 71/17
**Speculation [1]** 109/21
**spell [2]** 96/6 97/1
**spending [1]** 83/7
**spent [8]** 8/21 8/25 9/8 9/13 9/17 10/17 11/9 43/7
**spent $4 million [1]** 43/7
**spoke [1]** 92/4
**spot [1]** 69/14
**Spring [1]** 2/7
**stamp [1]** 101/23
**stand [4]** 5/12 14/20 14/21 23/11
**Standard [1]** 74/13
**Stang [2]** 106/3 106/14
**start [3]** 46/17 103/2 106/17
**starting [1]** 87/16
**starts [5]** 62/25 101/18 104/6 105/2 105/3
**state [2]** 49/12 97/1

**S**

**statement** [4] 12/18 12/23 22/15 22/22
**statements** [3] 5/13 20/7 20/11
**STATES** [20] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
 4/4 4/6 25/2 25/4 104/8 104/11 104/12 104/13
 104/18 104/25 112/7 112/11
**statute** [2] 9/2 9/10
**stenographically** [1] 112/8
**step** [1] 110/20
**STEWARD** [4] 2/15 2/15 4/10 25/8
**still** [15] 5/16 19/2 20/4 25/15 34/3 34/13
 34/19 38/22 39/14 40/11 40/14 75/7 79/24
 98/8 98/9
**stipulation** [2] 104/15 104/20
**stipulations** [1] 104/15
**Stipulations'** [1] 104/16
**stock** [9] 49/17 53/11 53/24 54/5 54/6 55/3
 55/6 56/16 92/21
**Stohl** [1] 106/15
**stolen** [2] 69/3 69/4
**Stormy** [1] 20/18
**straight** [1] 24/1
**Street** [3] 1/20 2/7 2/11
**stricken** [5] 7/22 61/8 75/9 78/22 84/11
**strike** [21] 47/9 49/9 51/25 53/9 55/4 61/7
 65/6 74/22 75/8 77/7 78/21 79/11 80/11 82/18
 84/10 85/15 86/14 89/22 95/21 96/17 109/7
**struck** [1] 5/7
**subject** [5] 21/16 29/21 36/14 96/23 101/16
**subletting** [1] 98/9
**submission** [1] 5/8
**submit** [1] 11/23
**submitted** [2] 69/18 110/17
**subpoena** [7] 19/2 19/15 19/19 19/25 21/21
 21/22 22/2
**substantial** [1] 83/9
**substantiate** [1] 6/25
**substantive** [1] 12/10
**subtenant** [1] 98/3
**Suburban** [1] 72/16
**successful** [1] 50/21
**such** [5] 10/9 12/20 18/23 73/5 111/14
**sufficient** [1] 19/22
**suggest** [1] 24/19
**suggesting** [1] 10/23
**suggestion** [1] 61/6
**Suite** [3] 1/20 2/11 2/16
**Sulmeyer** [5] 44/24 97/17 97/18 106/21
 106/25
**summaries** [8] 14/5 15/3 15/4 17/2 17/9
 17/22 111/3 111/6
**summary** [16] 15/9 15/16 15/25 16/2 16/5
 16/9 16/10 16/16 16/17 16/17 16/18 16/20
 17/11 17/15 19/5 111/12
**supplemented** [2] 104/14 104/20
**support** [9] 16/5 16/18 16/21 16/22 16/23
 17/10 19/4 100/20 103/6
**supports** [1] 15/9
**supposed** [1] 80/9
**supposedly** [2] 16/21 16/22
**sure** [5] 5/15 31/25 67/19 68/13 68/19 77/2
 78/16
**surely** [1] 66/3
**survive** [1] 10/10
**survives** [1] 104/20
**sustain** [3] 19/23 19/24 21/20
**Sustained** [12] 31/15 48/19 52/20 58/11 73/7
 78/11 79/9 82/6 94/17 95/10 96/12 103/24
**sustaining** [1] 22/1
**SUV** [1] 72/16
**SWORN** [2] 25/13 96/25
**system** [4] 72/18 99/16 102/14 102/18

**T**

**table** [6] 4/7 25/5 49/10 49/13 49/15 49/16
**take** [27] 4/14 8/17 12/25 13/11 23/22 24/20
 50/20 54/25 55/15 58/16 59/16 64/10 69/15
 69/21 70/20 76/6 76/18 79/23 80/1 87/6 87/6
 88/3 93/7 94/2 110/13 110/23 111/16

**taken** [4] 24/23 70/14 111/5 111/18
**takes** [1] 14/21
**taking** [1] 47/15
**talk** [7] 8/20 10/3 40/25 62/21 81/5 82/18
 104/24
**talked** [2] 27/2 106/2
**talking** [6] 7/16 31/18 80/17 94/6 103/3
 106/21
**talks** [1] 10/6
**task** [1] 11/5
**tax** [13] 60/15 60/19 63/8 63/24 64/4 64/12
 64/17 65/3 91/12 91/12 91/16 92/6 95/12
**taxes** [10] 60/22 60/25 61/20 61/25 63/16
 95/15 95/25 96/14 105/5 105/7
**Telegram** [1] 80/17
**tell** [20] 15/2 15/17 15/23 15/25 16/2 16/4
 27/20 27/24 28/2 28/6 43/7 43/16 43/21 55/13
 58/19 59/16 86/21 87/2 92/5 110/5
**telling** [5] 58/5 58/9 58/23 71/21 71/24 85/8
**ten** [3] 22/20 106/12 109/5
**tentative** [1] 11/25
**term** [1] 98/6
**terms** [1] 104/19
**testified** [8] 5/5 20/20 44/19 82/10 83/14
 83/23 84/15 94/22
**testifies** [2] 15/12 21/7
**testify** [12] 7/10 8/4 9/12 10/9 20/24 21/12
 21/14 22/13 23/19 23/24 111/1 111/6
**testifying** [2] 18/12 83/18
**testimony** [19] 4/15 4/22 5/14 6/5 8/14 18/12
 19/21 19/22 20/7 22/6 22/18 23/18 48/1 48/4
 83/25 94/2 94/5 95/13 95/15
**text** [53] 32/16 32/19 34/16 35/19 35/22 36/11
 37/11 39/4 39/14 40/1 40/11 40/17 41/23
 70/21 74/7 74/8 74/11 74/16 74/19 74/22
 75/12 75/17 75/19 76/20 76/23 77/9 77/12 77/19
 78/4 78/8 78/14 79/1 79/5 79/13 79/14 80/13
 80/13 86/14 87/15 87/20 87/25 88/3 88/10
 88/13 88/17 89/1 89/3 90/6 90/8 93/21 93/24
 94/3 94/9 94/11
**texted** [2] 32/11 41/22
**texts** [1] 80/14
**than** [12] 23/7 40/4 76/24 77/1 77/5 77/9
 77/13 78/15 80/13 80/24 83/8 96/2
**Thank** [22] 4/20 5/11 8/1 10/12 10/13 21/24
 23/4 25/17 25/19 39/5 49/4 54/7 59/20 60/13
 70/18 83/21 93/17 96/23 97/7 97/9 109/11
 110/18 111/17
**Thanks** [7] 26/11 30/4 30/14 35/7 47/14 67/11
 68/3
**that** [607]
**that's** [50] 5/21 6/6 7/19 9/25 11/13 11/20
 12/6 13/7 13/17 13/22 14/8 14/13 14/25 15/5
 15/8 15/10 15/20 16/5 16/13 16/17 16/24 17/6
 17/11 20/13 21/13 21/20 22/10 23/3 23/14
 24/9 24/22 35/15 39/5 49/4 54/7 59/20 60/20
 61/22 65/6 65/14 66/15 69/25 70/13 78/20
 84/18 97/21 102/12 102/16 103/18 108/18
**their** [9] 5/19 7/13 49/17 58/6 59/3 63/3
 105/23 106/6 109/19
**them** [9] 6/12 11/18 19/13 21/18 57/22 58/1
 58/2 58/3 58/9 58/19 58/23 59/2 59/20 65/14
 69/10 74/9 74/10 75/14 94/2
**then** [45] 4/17 5/7 6/20 9/18 9/21 9/22 11/9
 11/12 11/19 13/21 16/20 16/23 18/15 22/15
 23/1 23/5 24/3 24/11 24/21 26/2 28/11 28/15
 28/17 30/18 31/4 34/8 35/13 38/2 41/6 41/10
 47/20 49/22 51/21 69/24 69/25 73/1 88/13
 88/21 91/23 92/17 98/2 104/22 108/17 109/4
 111/16
**theory** [1] 11/8 20/13 65/11
**there** [65] 5/13 8/18 8/22 9/1 9/13 10/3 10/23
 12/20 12/20 12/22 12/21 13/1 13/3 13/7 14/24
 15/14 18/19 19/9 21/15 21/15 21/16 26/9 28/3
 28/15 28/22 29/1 30/25 32/3 32/18 32/20
 33/21 34/3 34/9 34/15 34/23 35/11 35/14
 35/18 35/24 36/25 38/22 40/2 40/11 40/17
 41/8 41/18 42/16 42/22 54/12 54/15 62/24
 68/20 73/11 76/23 77/18 78/24 81/18 85/11

**they** [50] 5/20 5/20 7/11 7/12 7/14 9/17 14/21
 14/24 15/4 15/25 16/1 16/4 16/5 16/9 17/10
 17/17 19/6 20/10 23/15 23/17 24/11 37/19
 39/16 40/3 40/4 41/1 48/12 49/17 51/12 54/10
 54/24 57/25 58/25 59/6 63/19 67/10 74/19
 75/7 75/15 76/21 78/3 78/7 78/19 89/8 93/25
 95/3 98/18 98/20 101/8 102/2
**they're** [6] 24/7 38/19 38/19 55/6 69/25
**they've** [1] 67/19
**thing** [2] 34/5 73/5
**things** [7] 21/3 21/3 49/8 49/9 54/21 80/17
 102/13
**think** [26] 8/2 8/13 10/6 10/8 13/12 14/3 16/15
 16/25 17/20 18/18 18/20 21/13 22/22 23/3
 23/19 24/15 26/12 35/3 53/16 70/4 70/8 92/10
 92/25 94/8 109/2 110/10
**this** [165]
**those** [42] 5/12 6/17 6/22 6/23 7/6 9/14 9/14
 9/15 9/15 10/8 12/4 12/8 14/21 15/6 18/3
 18/25 19/6 19/13 20/12 21/3 21/16 29/3 48/24
 56/20 63/25 70/22 77/20 80/5 80/8 90/11 93/6
 93/22 93/24 94/9 94/11 96/2 98/15 99/9 101/7
 102/13 106/9 111/5
**thought** [2] 5/5 73/2
**three** [6] 13/5 41/8 49/8 49/12 66/15 106/13
**threshold** [1] 9/13
**through** [23] 11/7 17/13 18/2 23/7 30/15 41/1
 63/7 63/14 63/24 74/5 78/19 87/17 89/20 94/8
 100/17 101/9 101/15 102/3 102/14 102/18
 105/3 106/7 106/10
**thus** [1] 54/4
**tie** [3] 14/22 16/9 17/4
**tight** [1] 11/3
**time** [49] 12/24 14/20 24/15 32/8 33/6 34/18
 37/5 42/25 43/6 46/24 47/15 47/24 48/2 50/6
 51/4 51/4 51/11 51/12 55/11 59/10 59/14 60/8
 60/10 61/14 61/21 61/23 64/17 67/6 68/3 77/7
 78/3 78/6 78/7 79/4 79/12 80/16 81/24 81/24
 83/4 83/7 87/3 88/1 88/5 89/10 89/17 92/20
 95/13 101/11 102/20
**timeline** [1] 109/2
**times** [3] 13/6 13/6 18/9
**Title** [1] 112/7
**titled** [1] 111/11
**today** [8] 18/10 24/6 68/20 73/24 74/2 78/24
 90/5 100/6
**together** [1] 53/4
**told** [29] 22/21 23/1 27/12 28/1 30/11 57/19
 57/21 57/25 58/1 58/18 58/25 59/9 59/20 64/7
 68/9 69/10 80/6 81/1 86/2 86/5 86/8 86/10
 86/10 88/23 91/16 92/9 92/11 92/11 110/10
**tomorrow** [3] 5/21 22/14 33/2
**took** [10] 5/1 11/9 11/11 21/3 22/4 25/15
 62/14 76/9 85/16 85/20
**top** [25] 26/6 28/12 29/18 29/23 31/10 32/18
 33/17 33/19 34/9 35/8 35/24 38/12 38/22
 39/14 42/15 47/10 47/11 47/14 51/15 53/3
 53/23 68/4 88/8 102/1 102/9
**topic** [1] 85/21
**topics** [3] 10/10 20/21 46/17
**total** [4] 41/8 56/12 105/3 105/4
**totaling** [1] 56/12
**totally** [1] 11/10
**toward** [1] 42/2
**towards** [1] 34/9
**trace** [7] 9/19 18/15 30/15 30/20 31/2 83/1
 85/2
**tracing** [2] 11/3 18/17
**track** [5] 37/14 37/19 37/20 38/20 39/25
**tracking** [7] 31/1 34/11 35/4 35/12 37/24
 38/13 40/3

**T**

**traded** [1] 48/12
**trail** [1] 64/8
**TRAN** [19] 3/5 24/6 24/7 25/13 25/22 25/24 26/24 46/12 58/16 59/25 60/25 61/10 70/20 71/2 81/21 90/20 93/21 95/12 95/22
**Tran's** [2] 69/4 69/5
**tranche** [2] 60/23 63/9
**transacted** [1] 44/21
**transaction** [10] 47/2 47/19 51/22 52/24 54/5 54/9 54/10 68/16 87/4 92/23
**transactions** [2] 39/19 41/9
**transcript** [6] 1/9 1/15 5/2 58/24 112/8 112/10
**transfer** [7] 10/1 18/17 38/4 43/2 67/20 93/15 105/16
**transfers** [3] 8/4 40/12 80/21
**transition** [1] 54/16
**travel** [1] 23/25
**treatment** [6] 63/8 63/25 64/4 64/12 64/17 65/3
**treatments** [2] 91/2 91/16
**trial** [4] 1/12 13/6 23/12 111/12
**true** [20] 57/18 57/21 59/9 59/20 60/21 60/25 63/16 69/5 69/7 69/8 72/16 80/22 81/1 83/25 88/19 89/25 95/22 102/5 102/17 112/7
**trust** [24] 9/20 9/21 9/22 10/1 10/2 11/4 11/11 56/18 62/4 63/15 64/3 105/5 105/6 105/16 105/19 106/7 106/9 106/18 106/22 107/1 107/21 107/23 109/3 110/3
**trustee** [1] 92/7
**truth** [3] 28/5 58/1 58/19
**truthfully** [1] 58/6
**try** [1] 39/25
**trying** [4] 5/17 21/5 29/25 93/11
**TUESDAY** [1] 4/1
**turn** [7] 29/11 30/22 34/21 46/18 53/17 103/12 104/6
**tweaked** [1] 12/7
**two** [23] 12/17 15/14 17/4 17/25 19/2 22/12 23/13 33/13 38/1 39/20 40/11 54/4 56/2 72/8 78/8 79/17 79/21 80/3 80/5 86/24 88/1 88/8 104/10
**twofold** [1] 104/2
**type** [1] 97/20
**typed** [5] 83/23 83/24 84/7 84/15 84/25
**types** [1] 49/18

**U**

**U.S** [5] 57/13 57/20 58/4 59/9 112/16
**ultimately** [2] 18/19 52/22
**under** [21] 8/5 12/19 15/11 16/19 18/4 19/2 19/9 19/21 20/18 22/2 25/15 26/19 26/23 27/10 83/23 94/3 99/25 100/20 103/12 103/17 104/10
**under-seal** [2] 19/9 19/21
**underlie** [5] 15/16 15/25 16/2 16/9 17/2
**underlying** [2] 17/24 48/18
**understand** [21] 6/19 12/2 25/16 30/5 31/12 31/18 32/1 32/12 33/4 34/18 36/21 37/6 39/7 42/10 49/15 49/19 61/23 62/1 82/1 92/19
**understanding** [7] 24/5 26/19 30/8 30/10 35/4 67/8 105/12
**understood** [12] 59/2 59/6 61/18 61/21 62/3 62/5 67/5 81/2 82/4 83/7 85/7 85/12 85/13
**unhappy** [1] 13/19
**UNITED** [20] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/3 4/6 25/1 25/4 104/8 104/11 104/12 104/13 104/18 104/25 112/7 112/11
**unless** [1] 11/23
**unlikely** [1] 70/8
**unrelated** [1] 22/20
**until** [6] 24/21 33/2 62/3 69/18 88/18 110/16
**up** [28] 4/14 11/14 14/19 23/22 24/10 26/23 27/9 30/16 36/3 47/11 53/3 53/18 55/18 60/23 61/11 61/18 62/23 66/20 67/3 67/10 69/21 88/8 90/24 103/2 103/13 110/23 111/5 111/16
**update** [2] 42/4 42/6
**upon** [3] 18/6 60/1 109/15
**upper** [1] 108/14

**urgent** [2] 28/18 30/17
**us** [9] 11/5 21/23 53/4 64/11 71/4 102/2 102/10 103/1 103/17
**use** [26] 6/17 17/9 17/22 40/18 45/16 45/19 46/1 46/5 55/4 63/14 71/12 71/25 72/1 72/14 72/24 73/3 80/12 80/15 104/16 111/13
**used** [2] 11/19 110/5
**utilize** [2] 111/4 111/6

**V**

**V6** [1] 72/14
**Vague** [2] 60/8 109/22
**valid** [3] 35/17 39/17 40/3
**various** [2] 6/15 49/1
**vehicle** [1] 80/6
**verified** [1] 38/14
**verify** [3] 39/17 40/3 49/13
**versions** [1] 12/4
**versus** [2] 4/4 25/2
**very** [11] 4/13 8/8 11/15 17/5 19/1 20/3 28/18 30/17 32/8 48/15 81/3
**via** [2] 30/15 80/13
**viable** [2] 19/6 20/6
**victim** [4] 11/6 11/12 11/14 11/17
**victim's** [1] 11/19
**violated** [1] 9/10
**violation** [2] 9/1 15/20
**violative** [1] 10/4
**virtue** [1] 18/3
**visit** [1] 19/1
**visited** [1] 20/21
**VOL** [1] 1/12
**volume** [26] 26/2 100/10 100/13 107/14 107/15
**Volume 4** [1] 26/2
**Volume 5** [2] 100/10 100/13
**vs** [1] 1/10

**W**

**wait** [3] 13/22 24/20 42/18
**walked** [1] 4/12
**want** [23] 8/11 14/22 16/12 19/1 20/24 23/9 30/4 46/16 46/17 55/13 60/14 67/20 68/13 68/19 70/10 81/6 81/17 81/21 82/18 88/3 91/11 104/22 110/23
**wanted** [15] 5/3 23/13 38/18 48/7 48/7 49/10 50/19 50/20 51/17 63/14 63/23 64/2 64/7 67/10 77/12
**was** [180]
**wasn't** [3] 48/11 84/7 85/7
**way** [6] 7/1 81/18 91/14 91/19 101/19 102/3
**Waypoint** [1] 45/13
**ways** [1] 15/4
**we** [118]
**we'll** [7] 24/7 34/5 52/16 52/16 67/5 110/14 111/16
**we're** [10] 11/22 14/8 14/25 15/11 24/6 41/10 68/12 81/5 83/12 103/3
**We've** [1] 6/23
**Wednesday** [2] 26/7 26/16
**week** [4] 25/15 29/25 67/11 72/8
**weeks** [2] 28/24 51/8
**well** [42] 5/23 8/10 13/20 15/8 15/21 22/7 23/21 31/2 33/9 35/24 36/24 39/21 47/9 48/5 49/12 49/19 51/24 53/9 55/8 65/17 66/1 66/3 66/9 66/11 66/25 71/12 71/18 72/3 72/5 74/22 76/13 76/19 77/3 77/7 82/16 82/18 84/9 94/2 94/7 96/17 104/6
**went** [10] 9/21 9/22 18/15 18/20 51/8 52/11 72/23 73/1 92/21 106/20
**were** [92] 5/5 8/4 9/16 9/17 13/12 15/6 17/17 18/2 21/17 21/18 25/24 26/19 28/5 29/1 29/3 29/6 29/15 32/22 33/14 36/11 37/20 41/24 42/6 42/19 44/1 46/22 47/24 48/7 48/8 50/6 50/9 50/12 51/6 51/16 52/22 54/12 54/15 55/9 55/23 56/17 57/6 57/18 58/1 58/9 59/13 61/8 65/25 69/3 70/22 71/4 71/5 71/6 71/9 73/18 75/20 77/10 78/22 80/11 81/5 84/9 89/23 91/18 93/11 93/24 94/19

**94/25 95/3 96/2 96/17 98/8 98/9 99/1 99/4 105/24**
**weren't** [2] 93/25 94/24
**West** [2] 1/20 2/11
**what** [141]
**what's** [5] 53/23 76/24 77/3 108/12 108/18
**whatever** [2] 20/15 69/24
**WhatsApp** [1] 80/17
**whatsoever** [1] 13/1
**when** [70] 5/17 5/18 10/6 13/11 14/1 15/2 25/24 27/5 27/12 28/1 29/5 30/5 31/11 32/11 33/3 33/25 37/16 39/6 39/22 40/6 40/10 40/10 42/10 43/1 44/4 49/9 51/24 51/25 53/9 56/15 57/18 58/18 59/2 63/11 63/19 64/2 64/15 65/7 66/4 67/14 68/20 69/9 71/15 71/19 72/3 72/4 75/20 75/25 77/7 77/22 79/6 79/16 81/19 82/4 85/7 85/12 86/22 88/14 88/21 89/19 89/21 91/18 92/4 92/21 98/5 98/8 102/10 109/3 109/12
**where** [24] 14/12 14/22 15/2 15/17 15/23 15/25 16/2 18/15 18/20 30/16 37/12 39/7 47/14 51/20 70/1 73/15 75/20 84/18 94/20 96/9 97/16 98/4 105/22 110/2
**whereby** [1] 54/19
**whether** [13] 9/1 9/9 10/24 11/6 49/24 83/25 95/7 99/7 99/20 99/20 101/10 101/12 110/10
**which** [21] 6/10 6/21 17/10 18/6 19/4 19/5 20/6 20/8 25/25 38/14 38/18 42/13 44/8 70/4 74/22 76/17 77/16 81/12 92/11 92/19 106/7
**while** [1] 21/5
**who** [24] 22/13 24/17 29/3 29/5 32/11 33/3 36/19 42/10 47/7 62/19 74/22 75/17 76/9 89/17 91/5 91/16 96/2 96/4 98/1 98/16 98/21 103/8 108/9
**whom** [1] 19/2
**Whose** [1] 91/14 91/18
**why** [22] 5/17 16/12 26/16 29/1 32/7 36/21 38/16 41/19 43/21 51/15 53/18 57/20 59/11 59/25 60/12 62/7 64/2 73/5 89/1 105/19 106/17 111/15
**will** [44] 4/11 5/9 7/22 8/12 8/17 18/12 18/13 18/15 19/15 21/9 22/8 23/22 23/23 24/10 24/16 24/17 24/20 30/21 33/1 33/2 35/7 37/14 38/13 49/19 55/4 61/8 67/10 69/15 70/7 75/9 78/22 82/16 82/17 83/1 84/11 92/15 95/21 97/1 101/22 102/24 104/24 108/6 110/13 110/18
**wire** [50] 26/11 26/13 26/17 26/18 26/20 27/5 27/13 28/20 29/22 30/2 30/9 30/14 31/2 31/11 31/12 31/17 31/25 32/3 32/5 33/7 33/10 33/12 33/14 35/4 36/15 37/4 37/8 37/20 38/1 38/20 39/11 39/25 40/12 41/25 42/7 42/20 42/23 43/2 67/20 71/7 80/21 85/2 92/16 92/19 93/10 93/15 94/21 105/15 105/20
**wired** [3] 34/2 106/25 110/3
**wires** [8] 32/24 73/22 85/17 85/25 86/3 86/6 86/9 87/13
**wiring** [1] 28/1
**withdraw** [1] 9/10 10/25
**within** [7] 5/13 65/24 66/1 72/8 72/10 106/12 109/5
**without** [2] 12/19 23/6
**witness** [7] 7/10 18/10 18/11 18/12 21/3 25/13 46/19 58/14 70/3 70/4 82/2 83/13 87/8 90/16 96/19 96/25 100/18 102/4 110/24
**witnesses** [5] 3/4 3/11 5/18 23/25 82/2
**woefully** [1] 7/6
**won't** [2] 40/4 41/1
**words** [3] 13/12 63/14 63/25
**work** [3] 13/3 96/9 97/16
**working** [1] 98/9
**works** [3] 13/18 13/23 13/23
**would** [72] 4/14 4/19 5/6 6/19 8/16 9/25 11/10 13/20 14/7 15/21 18/7 19/2 19/22 20/20 20/8 20/10 20/23 21/14 22/24 27/20 27/23 28/1 28/5 30/8 32/5 32/12 37/17 37/19 40/14 40/23 40/25 41/19 43/16 43/21 48/25 49/24 51/4 51/5 61/19 61/25 62/4 63/7 69/5 69/5 69/7

## W

**would... [27]**  69/8 72/24 77/14 84/22 90/24
92/17 94/21 95/24 96/6 99/9 99/11 99/12
99/15 100/2 100/10 100/12 100/15 101/6
101/20 103/17 105/12 105/14 106/6 106/11
107/4 110/11 111/5
**wouldn't [2]**  20/8 22/6
**write [13]**  26/9 33/21 34/15 34/22 35/6 37/13
38/12 38/23 41/2 41/18 41/21 42/16 91/24
**writes [2]**  33/18 82/25
**wrong [1]**  82/17
**wrote [4]**  20/25 37/12 37/16 40/10
**WYMAN [16]**  2/5 4/6 10/14 25/3 25/18 46/22
53/2 56/9 71/5 81/10 81/19 82/17 82/20 87/11
89/1 90/17

## Y

**year [10]**  15/5 17/18 44/5 77/23 78/9 78/13
78/18 79/1 89/12 89/15
**years [3]**  77/18 78/8 97/19
**yes [234]**
**yesterday [9]**  5/7 5/20 7/21 9/11 9/24 23/25
24/15 39/2 39/5
**yet [6]**  24/17 26/18 28/20 29/2 35/12 83/17
**York [4]**  67/6 71/15 71/19 83/7
**you [694]**
**you're [9]**  6/12 14/15 17/4 17/6 19/16 41/13
94/6 96/22 101/22
**your [221]**
**yours [2]**  98/5 98/8
**yourself [1]**  75/22

## Z

**Zero [1]**  107/2