1

2

3

4                    UNITED STATES DISTRICT COURT

5                   CENTRAL DISTRICT OF CALIFORNIA

6                          SOUTHERN DIVISION

7                               - - -

8          THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9
           UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
10                          Plaintiff,  )
              vs.                        )
11                                       )  SACR-19-00061-JVS
           MICHAEL JOHN AVENATTI,        )
12                          Defendant.  )TRIAL DAY 19, VOL. 1
           ----------------------------)
13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    Santa Ana, California

17                      August 12, 2021

18

19                         SHARON A. SEFFENS, RPR
                           United States Courthouse
20                         411 West 4th Street, Suite 1-1053
                           Santa Ana, CA  92701
21                         (714) 543-0870

22

23

24

25

```
 1    APPEARANCES OF COUNSEL:

 2    For the Plaintiff:

 3    NICOLA T. HANNA
      United States Attorney
 4    BRANDON D. FOX
      Assistant United States Attorney
 5    Chief, Criminal Division
      ALEXANDER WYMAN
 6    Assistant United States Attorney
      Major Frauds Section
 7    1100 United States Courthouse
      312 North Spring Street
 8    Los Angeles, CA  90012
      (213) 894-6683
 9
      BRETT A. SAGEL
10    Assistant United States Attorney
      Ronald Reagan Federal Building
11    411 West Fourth Street, Suite 8000
      Santa Ana, CA  92701
12    (714) 338-3598

13    For the Defendant:

14    MICHAEL JOHN AVENATTI, PRO SE

15    H. DEAN STEWARD, ADVISORY COUNSEL
      H. DEAN STEWARD LAW OFFICES
16    107 Avenida Miramar, Suite C
      San Clemente, CA  92672
17    (949) 481-4900

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1
 2                          I-N-D-E-X
 3
 4   PLAINTIFF'S
     WITNESSES:              DIRECT   CROSS   REDIRECT   RECROSS
 5
     MICHELLE PHAN             20       52
 6
     PLAINTIFF'S
 7   EXHIBITS:                                 MARKED     RECEIVED
 8   Exhibit 294                                             42
 9   DEFENSE
     WITNESSES:      DIRECT   CROSS   REDIRECT   RECROSS
10
     (None)
11
     DEFENSE
12   EXHIBITS:                                 MARKED     RECEIVED
13   Exhibit 1081, page 1                                  56
     Exhibit 1081 (In Full)                                63
14
15
16
17
18
19
20
21
22
23
24
25
```

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | SANTA ANA, CALIFORNIA; THURSDAY, AUGUST 12, 2021; 8:31 A.M.   |
| 08:26 | 2  | (Jury not present)                                           |
| 08:31 | 3  | THE CLERK:  Item 1, SACR-19-00061-JVS, United                |
| 08:31 | 4  | States of America versus Michael John Avenatti.              |
| 08:31 | 5  | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel           |
| 08:31 | 6  | and Alexander Wyman on behalf of the United States.  And at  |
| 08:31 | 7  | counsel table is Special Agent Remoun Karlous.               |
| 08:31 | 8  | THE COURT:  Good morning.                                    |
| 08:31 | 9  | MR. AVENATTI:  Good morning, Your Honor.  Michael            |
| 08:32 | 10 | Avenatti present with Mr. Dean Steward, advisory counsel, as |
| 08:32 | 11 | well as Ms. Cummings-Cefali.                                 |
| 08:32 | 12 | THE COURT:  Good morning.                                    |
| 08:32 | 13 | We heard back from Juror No. 4 at the end of the            |
| 08:32 | 14 | day yesterday, and the individual who was suspected of       |
| 08:32 | 15 | possibly being COVID positive was tested toward the end of   |
| 08:32 | 16 | the day yesterday and tested negative.  So we will proceed   |
| 08:32 | 17 | with Juror No. 4.                                            |
| 08:32 | 18 | Questions?  Thoughts?                                        |
| 08:32 | 19 | MR. AVENATTI:  Has Juror No. 4 been tested, Your            |
| 08:32 | 20 | Honor?                                                        |
| 08:32 | 21 | THE COURT:  I don't know.                                    |
| 08:32 | 22 | MR. AVENATTI:  Does it make sense for us to                  |
| 08:32 | 23 | request that Juror No. 4 get tested?                         |
| 08:32 | 24 | THE COURT:  I'm not prepared to do that.  I think           |
| 08:32 | 25 | each of the jurors has said that the COVID issue -- if they  |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:32   1   feel symptoms, I'm sure they will report it to the Court.

08:33   2   Point in case, Juror D.C. reported his roommate had

08:33   3   potential symptoms.  I think everybody is sensitized to the

08:33   4   issues and will report to the Court if there are issues to

08:33   5   report.

08:33   6          THE CLERK:  The juror was never in the presence of

08:33   7   this neighbor for any amount of time whatsoever.  It was her

08:33   8   child.

08:33   9          THE COURT:  I sent out yesterday a draft set of

08:33  10   final jury instructions.  I put "Final" on there to

08:33  11   distinguish the jury instructions from the initial

08:33  12   instructions.  Those are by no means final.  I just want to

08:33  13   distinguish the initial instructions I will consider once I

08:33  14   hear the government's suggestions.

08:33  15          There are a number of instructions in there that

08:33  16   may or may not apply.  I have left them in there, because

08:34  17   until I hear all the evidence, I can't tell what may or may

08:34  18   not apply.  I'm not saying I will give any of those ones

08:34  19   that are incomplete or the ones that the government

08:34  20   questioned, but I think I need to hear all the evidence

08:34  21   before I can make any conclusion.

08:34  22          MR. AVENATTI:  And, Your Honor, the defense will

08:34  23   be making a submission in response to those draft

08:34  24   instructions.  I anticipate that will be done over the

08:34  25   weekend but certainly by 9:00 a.m. on Monday if that's

08:34  1   acceptable to the Court.

08:34  2        THE COURT:  That's fine.  Let me be clear.  You

08:34  3   don't need to repeat the objections that were made in the

08:34  4   initial instructions.  I think the parties should narrow in

08:34  5   on what's in play, and there is no need to repeat prior

08:34  6   instructions.  If you want to reference them, fine, but

08:34  7   there is no point in giving me a compendium of material I

08:34  8   already have.

08:34  9        MR. AVENATTI:  Understood, Your Honor.

08:34  10        THE COURT:  At Docket 639, Mr. Avenatti invites

08:35  11   the Court to strike the testimony of Alexis Gardner.  Some

08:35  12   additional tweets were provided in that filing, and a manual

08:35  13   filing was apparently made.

08:35  14        Do you have a filing for that?  Have you delivered

08:35  15   the manual filing?

08:35  16        MR. AVENATTI:  Your Honor, we delivered -- one of

08:35  17   the paralegals delivered the manual filing to the Clerk's

08:35  18   Office yesterday afternoon and was informed that they were

08:35  19   going to bring it up to Your Honor.  Evidently that did not

08:35  20   happen.  We can provide a copy of the manual filing, an

08:35  21   electronic copy, to the Court.

08:35  22        THE CLERK:  That stays with the Clerk's Office.

08:35  23   We need our own copy.

08:35  24        MR. AVENATTI:  We can provide that within 20

08:35  25   minutes, Your Honor.

08:35   1          THE COURT:  That's fine.  I'll review the
08:35   2   additional material.  As I said on the record, I invited the
08:35   3   filing of any additional material so that I have a complete
08:35   4   record.  Mr. Avenatti is responding, and I will review that
08:35   5   material and assume that the government will respond to this
08:36   6   renewed motion.
08:36   7          Any idea when you will be able to do that?
08:36   8          MR. SAGEL:  The close of business Monday if that's
08:36   9   acceptable to Your Honor.
08:36  10          THE COURT:  How about noon Monday?
08:36  11          MR. SAGEL:  That's fine, Your Honor.
08:36  12          THE COURT:  Okay.  At Docket 684, Mr. Avenatti
08:36  13   made a filing concerning Witness No. 1.  I will invite the
08:36  14   government to provide a response.
08:36  15          I query whether the right to confrontation applies
08:37  16   to an individual called by the defendant rather than an
08:37  17   individual called by the government as part of its
08:37  18   case-in-chief, and I ask the parties to address that
08:37  19   question.
08:37  20          I have a couple citations that I will -- I invite
08:37  21   the parties to take a look at United States versus Carter,
08:37  22   907 F.3d 1199 at 1208 (Ninth C(ircuit 2018), and also United
08:37  23   States versus Swisher, 360 F.Appx. 784-786 (Ninth Circuit
08:38  24   2009).  It would appear that confrontation rights are not
08:38  25   symmetric to the rights with respect to a witness called by

08:38  1   the defendant.  So I invite you to take a look at that.

08:38  2            When did you indicate you'd be able to respond?

08:38  3            MR. SAGEL:  Obviously we're in court during these

08:38  4   days with difficulty.

08:38  5            THE COURT:  Right.

08:38  6            MR. SAGEL:  I can do it this weekend.  If we would

08:38  7   need her by tomorrow, which I just don't think is

08:38  8   feasible -- I could do it before then.  But if not, I can do

08:38  9   it anytime by Sunday evening or Monday morning.

08:39  10           THE COURT:  Noon on Monday.

08:39  11           MR. SAGEL:  Thank you, Your Honor.

08:39  12           THE COURT:  One thing that the government's

08:39  13  filings in the declaration of the witness don't answer is

08:39  14  was she vaccinated?

08:39  15           MR. SAGEL:  She had already provided -- when we

08:39  16  spoke to her, she said she had put together a declaration.

08:39  17  She advised me of what she had put in the declaration.  I

08:39  18  didn't feel comfortable asking her that question.  She felt

08:39  19  comfortable writing this up on her own.  I can ask that

08:39  20  question if the Court wants me to.  I just didn't feel it

08:39  21  was my place to ask her anything that she didn't feel

08:39  22  comfortable providing.

08:39  23           THE COURT:  Well, that's fine.  Given that she had

08:39  24  tested positive, I would like the parties to present the

08:39  25  current advice in terms of quarantine from the CDC or any

9

08:39    1    other medical source.

08:40    2              MR. SAGEL:  Yes, Your Honor.

08:40    3              THE COURT:  At Docket 686, Mr. Avenatti filed a

08:40    4    brief regarding his request for relief under 615.  I assume

08:40    5    this is basically for the record.

08:40    6              MR. AVENATTI:  Generally, I would agree with that,

08:40    7    Your Honor, although there is some additional authority that

08:40    8    has been included within that filing that was not presented

08:40    9    to the Court previously relating to presumed prejudice and

08:40   10    the like.

08:40   11              I think that this has become especially important

08:40   12    at this stage because of course I'm trying to determine who

08:40   13    I am going to call in the defense case.  I'm now confronted

08:40   14    with this dilemma of whether I'm going to call these two

08:40   15    agents who had the opportunity to sit in the courtroom for

08:40   16    seven days as a result of the government's conduct.

08:40   17              So it has put me at a severe disadvantage as

08:41   18    outlined in the motion, and that's why I filed it when I

08:41   19    did, Your Honor.

08:41   20              THE COURT:  If the government has a response, I'd

08:41   21    like it -- well, I guess I would like it tomorrow morning.

08:41   22    I would like this issue finally resolved.  I still believe

08:41   23    that Robertson controls, United States versus Robertson, 895

08:41   24    F.3d 1206 at 1216 (Ninth Circuit 2018).

08:41   25              Robertson found that cross-examination was a

08:41  1  sufficient remedy.  That said, I would be happy to receive

08:41  2  any further thoughts the government has by tomorrow morning

08:41  3  so we can get this issue resolved.

08:42  4         I believe that covers the filings that were made

08:42  5  overnight.  Anything else we ought to take up at this time?

08:42  6         MR. SAGEL:  Yes, Your Honor, a couple that -- I'm

08:42  7  not sure if they were made the day before or sometime during

08:42  8  the day yesterday, and I don't have the docket numbers off

08:42  9  the top of my head.  Two of them relate to -- actually both

08:42  10  of them relate to the various special agents and/or

08:42  11  government witnesses.

08:42  12         One was when defendant said yesterday he wanted to

08:42  13  add Special Agent Galicia, which was not included in his

08:42  14  original filing, and whether or not Special Agent Galicia's

08:42  15  subpoena would also be quashed under Your Honor's ruling

08:42  16  from I believe yesterday.

08:42  17         Then also as Mr. Varani would be required to get

08:42  18  on a plane tonight or later today to be here tomorrow, we

08:43  19  obviously planned on filing I believe either two nights ago

08:43  20  or yesterday morning regarding Mr. Varani and Your Honor's

08:43  21  authority under 611 and 403 and your inherent powers.  We

08:43  22  would ask Your Honor at a minimum to take that up with the

08:43  23  defendant so that we know whether or not Mr. Varani would be

08:43  24  required to fly cross country for no reason.

08:43  25         THE COURT:  The government's brief at Docket 677

08:43   1   presents me with authority to the effect that I can compel

08:43   2   an offer of proof to ensure that the defendant is not

08:43   3   engaging in a fishing expedition.  Mr. Avenatti offered to

08:44   4   do that with respect to Special Agent Galicia.  I didn't see

08:44   5   a filing overnight dealing with that.

08:44   6           So with respect to each of the government agents

08:44   7   that you subpoenaed, I'm going to direct you to provide an

08:44   8   offer of proof in camera to the Court.

08:44   9           MR. AVENATTI:  Your Honor, that will be over my

08:44   10  objection.  I don't believe there is authority that requires

08:44   11  me to provide an offer of proof for every witness that I

08:44   12  want to call --

08:44   13          THE COURT:  No, sir, not every witness but just

08:44   14  the three government agents.

08:44   15          MR. AVENATTI:  Well, Your Honor, I'm happy to look

08:44   16  at the government's authority, but I don't believe that

08:44   17  there is authority that exists that holds that every

08:44   18  defendant or that a defendant has to provide an offer of

08:44   19  proof for each government agent who has been subpoenaed who

08:44   20  was involved in the investigation of the case at issue or

08:44   21  who testified on direct, Your Honor.

08:45   22          That is a violation of my due process rights.  I

08:45   23  don't believe it's required under the case law.  And,

08:45   24  frankly, the Court did not require that of the government as

08:45   25  to a single witness the government called in its

08:45  1    case-in-chief.  I am entitled to mount a defense.

08:45  2         I am entitled to call witnesses in my defense

08:45  3    case, Your Honor.  And I don't believe I'm obligated to

08:45  4    provide an offer of proof to the Court in connection with

08:45  5    any witness unless there's a threshold showing that somehow

08:45  6    they have absolutely nothing to do with the case.  And even

08:45  7    then I don't know that I would be required to do it, Your

08:45  8    Honor.

08:45  9         Let me just make this point because I think it is

08:45  10   important, and it's a poignant one.  The government has a

08:45  11   fundamental misunderstanding of what a defendant's rights

08:45  12   are related to presenting his or her defense in a criminal

08:45  13   case.  I am not precluded or limited in calling witnesses

08:45  14   solely for impeachment purposes, which is what Mr. Sagel

08:46  15   continues to tell the Court.  I'm not limited to that in any

08:46  16   way, shape, or form.

08:46  17        Now, Mr. Sagel's experience may be that that's why

08:46  18   sometimes individuals are called in the defense case, but

08:46  19   that's not the law in any way, shape, or form.

08:46  20        THE COURT:  Sir, I agree with you that you're not

08:46  21   limited to calling witnesses simply for impeachment

08:46  22   purposes.  I agree that you are entitled to put on a full

08:46  23   defense, so I have the same understanding as to the scope of

08:46  24   evidence you can offer as you do.

08:46  25        MR. AVENATTI:  And, Your Honor, I have made it

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:46  1    clear from the opening statement in this case that I am

08:46  2    going to put the government on trial in this case as to

08:46  3    their misconduct and the sloppiness of this investigation.

08:46  4              THE COURT:  Sir, I understand your position.  With

08:46  5    respect to the three agents, though, it would appear that

08:47  6    they don't have much to offer at all.  It would appear that

08:47  7    at least with respect to any interview there is nothing that

08:47  8    the agents could offer that would impeach.

08:47  9              You offered with respect to Galicia to make an

08:47  10   offer of proof in camera to the Court.  I'm directing you to

08:47  11   do the same with the other government witnesses.

08:47  12             And, sir, I invite a brief from you distinguishing

08:47  13   the government's cases with respect to the Court's power to

08:47  14   request that an offer of proof such that the Court ensures

08:47  15   that the time of the jury is well used and we're not sitting

08:47  16   here observing a fishing expedition.

08:47  17             So if you want to address their authorities, I

08:47  18   invite you to do so.

08:47  19             MR. AVENATTI:  Your Honor, to be clear, what the

08:47  20   Court is requesting --

08:47  21             THE COURT:  Sir, I've said it.  I'm not going to

08:47  22   hear you.  The record will be clear as to what I've said.  I

08:48  23   don't appreciate you recasting what the Court said and from

08:48  24   time to time not accurately acknowledging what the Court

08:48  25   said.  So if you have any doubt about it, it's in the

08:48  1  transcript, sir.

08:48  2       MR. AVENATTI:  My only question was, does that

08:48  3  include the government agents such as Mr. Karlous and

08:48  4  Mr. Kim and Mr. Roberson, who are clearly involved in the

08:48  5  investigation?

08:48  6       THE COURT:  Not them.

08:48  7       MR. AVENATTI:  That was my question, Your Honor.

08:48  8  I'm not trying to recast anything.  I'm trying to

08:48  9  understand.  So Galicia and Penland and I guess Varani.

08:48  10      THE COURT:  Right.

08:48  11      MR. AVENATTI:  Well, let me say this as it relates

08:48  12  to Mr. Varani.  Mr. Varani was called by the government, and

08:48  13  I reserved the right to recall him.  He's subject to recall

08:48  14  right now.  He is a witness in the case.  The idea that I

08:48  15  have to provide an --

08:48  16      THE COURT:  Sir, if you think the government's

08:48  17  authorities don't cover Mr. Varani, brief it.

08:49  18      MR. AVENATTI:  Well, I expected Mr. Varani to be

08:49  19  here tomorrow.  He is one of the first witnesses I'm going

08:49  20  to call in my case-in-chief.  Never in a million years did I

08:49  21  think I would have to make an offer of proof to recall a

08:49  22  witness who is subject to recall.  That makes no sense to

08:49  23  me.

08:49  24      I will look at the law, Your Honor.  I know of no

08:49  25  authority that holds that in order to recall a witness who's

08:49  1    subject to recall I have to make an offer of proof.

08:49  2            THE COURT:  We will visit this with any additional

08:49  3    authority you want to present me by the end of the day.

08:49  4            MR. AVENATTI:  I would like to make the offer of

08:49  5    proof as it relates to Mr. Varani in camera orally in the

08:49  6    interest of time, Your Honor.

08:49  7            THE COURT:  That's fine.

08:49  8            MR. SAGEL:  The only thing that I will add, he

08:49  9    cross -- I don't have the sheet in front of me, but I think

08:49  10   he cross-examined Mr. Varani for 45 minutes, which would

08:49  11   also not be 403, cumulative.

08:49  12           THE COURT:  I'm not sure that's accurate.  Maybe

08:50  13   my recording was inaccurate, but I believe that the

08:50  14   government examined him for 15 minutes.  Let me just go

08:50  15   back.

08:50  16           MR. SAGEL:  And I may be wrong, Your Honor.  I'm

08:50  17   saying it off the top of my head.

08:50  18           THE COURT:  Well, unless somebody wants me to go

08:50  19   back and check the transcript, I noted that Mr. Varani was

08:50  20   on direct for 15 minutes and on cross for 16 minutes, and

08:50  21   there was no redirect or recross.

08:50  22           MR. SAGEL:  I stand corrected, Your Honor.  The

08:50  23   point being is he did have an opportunity to cross-examine

08:50  24   him.

08:50  25           THE COURT:  He also has a right to call him in his

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:51  1    case-in-chief if he wants to.

08:51  2              MR. SAGEL:  He does.  And when it comes to any

08:51  3    witness that is subject to recall, it's obviously, yes,

08:51  4    subject to recall if there is a reason, not a second bite at

08:51  5    the apple, to ask questions that have already been asked or

08:51  6    already been covered, and he flies someone cross country for

08:51  7    that.

08:51  8              THE COURT:  Asked and answered is the objection.

08:51  9              So if you want me to consider any additional

08:51  10   authorities with respect to Mr. Varani, present them to me

08:51  11   by the end of the day, and you can do that orally.

08:51  12             So we've got a couple minutes now.  Why don't we

08:51  13   clear the courtroom, and I'll let you make the offer of

08:51  14   proof.

08:51  15             MR. AVENATTI:  Well, Your Honor, I'd like to do

08:51  16   that at the lunch break if I could.

08:51  17             THE COURT:  What time does he have to get on the

08:51  18   airplane?

08:51  19             MR. SAGEL:  We told him to book the last flight he

08:51  20   could.  I don't know what that time is.  We can find that

08:51  21   out.

08:51  22             THE COURT:  Probably 5:00 or 6:00, which would be

08:51  23   2:00 here.

08:51  24             MR. SAGEL:  I think that's probably right.

08:51  25             MR. AVENATTI:  Your Honor, the last flight from

08:51  1   the East Coast, from Washington, D.C. to Los Angeles, is

08:52  2   probably 8:00, 9:00 p.m. generally, 9:30, in my experience.

08:52  3   But that's neither here nor there.  I'm happy to make the

08:52  4   offer of proof at the lunch hour.

08:52  5            I want to make this point, though, and that is as

08:52  6   follows.  Mr. Sagel seems to believe that you have to

08:52  7   complete impeachment on cross-examination.  That is a

08:52  8   fallacy.  You do not have to complete impeachment on

08:52  9   cross-examination.  You can set a witness up on

08:52  10  cross-examination and then call them back in your

08:52  11  case-in-chief and complete the impeachment.  It happens all

08:52  12  the time.

08:52  13           So this whole idea that somehow anything that I

08:52  14  ask about or any impeachment that I began has to be

08:52  15  completed on cross and I'm not allowed to call him in my

08:52  16  case-in-chief, I know of no authority that prevents that.

08:52  17           THE COURT:  I agree with you, but still it may be

08:52  18  appropriate to sustain asked-and-answered objections.

08:52  19           MR. AVENATTI:  Understood.  Understood, Your

08:52  20  Honor.

08:52  21           THE COURT:  Okay.

08:52  22           MR. AVENATTI:  There is one other very serious

08:52  23  issue that -- well, I don't know if the government is done,

08:53  24  but the defense would like to raise a very serious issue.

08:53  25           THE COURT:  Please.

08:53   1           MR. AVENATTI:  Your Honor, in preparing for

08:53   2   Mr. Drum's testimony today, it became apparent to me that

08:53   3   the government has not produced the Tabs data relating to

08:53   4   the costs to the various clients.  That is a serious Brady

08:53   5   and Giglio violation.

08:53   6           It's been in their possession for two and a half

08:53   7   years.  You heard the testimony from Ms. Regnier that she

08:53   8   can't figure out what is owed to a client without looking at

08:53   9   QuickBooks and Tabs.  We don't have the Tabs data.

08:53   10          If I am wrong and it has been produced, I would

08:53   11  like to know where on the index it is or what the production

08:53   12  is.  But, Your Honor, I made this clear from the opening

08:53   13  statement of the case.  And, in fact, if you go back and you

08:53   14  look at our pretrial filings, we repeatedly said the

08:54   15  government had not produced all of the financial information

08:54   16  relating to these clients.  And Mr. Sagel and his colleague,

08:54   17  Mr. Andre, repeatedly represented that that was false.

08:54   18          We now have established, Your Honor, the

08:54   19  importance of this Tabs data.  It's critical.  Ms. Regnier

08:54   20  could not have been more clear.  You cannot determine what's

08:54   21  owed to a client unless you have the current QuickBooks data

08:54   22  and the current Tabs data.  I elicited that testimony a

08:54   23  number of times.  We don't have the Tabs data.

08:54   24          We also elicited testimony from Ms. Regnier that

08:54   25  Mr. Karlous, Special Agent Karlous, and the AUSAs were told

08:54  1   about it two years ago, about the Tabs data, and it's

08:54  2   important as it related to determining costs.

08:54  3          THE COURT:  Sir, you made your point.  We'll take

08:54  4   this up at the noon hour, and the government can respond.

08:54  5          MR. AVENATTI:  Well, what I'm asking for is, just

08:54  6   to be clear, I would like to know the production number and

08:55  7   the Bates number of the production of the Tabs data.  If it

08:55  8   has not been produced, if it has not been produced, that is

08:55  9   a serious Brady and Giglio violation, and we're going to

08:55 10   seek substantial relief in connection with that.

08:55 11          THE COURT:  We'll be in recess until the jury

08:55 12   comes in.

08:55 13                    (Recess taken at 8:55 a.m.;

08:55 14                     proceedings resumed at 9:09 a.m.)

08:55 15                  (Jury present)

09:09 16          THE CLERK:  Calling Item 1, SACR-19-00061-JVS,

09:09 17   United States of America versus Michael John Avenatti.

09:09 18          MR. SAGEL:  Good morning, Your Honor.  Brett Sagel

09:09 19   and Alexander Wyman on behalf of the United States.  And at

09:09 20   counsel table is Special Agent Remoun Karlous.

09:09 21          THE COURT:  Good morning.

09:09 22          MR. AVENATTI:  Good morning, Your Honor.  Michael

09:09 23   Avenatti, present with Mr. Dean Steward,

09:09 24   Ms. Cummings-Cefali, and Ms. Hernandez.

09:09 25          THE COURT:  Good morning.

| | | |
|---|---|---|
| 09:09 | 1 | And good morning, ladies and gentlemen. |
| 09:09 | 2 | The individual we were concerned about who |
| 09:10 | 3 | potentially had COVID was tested yesterday and negative.  So |
| 09:10 | 4 | no worries.  We are good to go. |
| 09:10 | 5 | Mr. Sagel. |
| 09:10 | 6 | MR. SAGEL:  Thank you, Your Honor. |
| 09:10 | 7 | The government calls Michelle Phan. |
| 09:10 | 8 | MICHELLE PHAN, GOVERNMENT'S WITNESS, SWORN |
| 09:10 | 9 | THE CLERK:  Thank you.  If you will be seated, |
| 09:10 | 10 | please.  If you will please state and spell your first and |
| 09:11 | 11 | last name. |
| 09:11 | 12 | THE WITNESS:  Michelle Phan, M-i-c-h-e-l-l-e, |
| 09:11 | 13 | P-h-a-n. |
| 09:11 | 14 | THE CLERK:  Thank you. |
| 09:11 | 15 | THE COURT:  Mr. Sagel. |
| 09:11 | 16 | MR. SAGEL:  Thank you, Your Honor. |
| 09:11 | 17 | DIRECT EXAMINATION |
| 09:11 | 18 | BY MR. SAGEL: |
| 09:11 | 19 | Q    Good morning, Ms. Phan. |
| 09:11 | 20 | A    Good morning. |
| 09:11 | 21 | Q    How are you employed? |
| 09:11 | 22 | A    I'm self-employed.  I have a company called EM |
| 09:11 | 23 | Cosmetics. |
| 09:11 | 24 | Q    And what does EM Cosmetics do? |
| 09:11 | 25 | A    It's a cosmetics brand. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:11   1   Q    And how long have you been in the cosmetics industry?
09:11   2   A    Over ten years.
09:11   3   Q    And how did you get started in the cosmetics industry?
09:11   4   A    I got started back in 2007.  I was making makeup
09:11   5   tutorials on YouTube.  And from there it's been my passion,
09:12   6   makeup and beauty, and I got more interested in the
09:12   7   business.
09:12   8   Q    Do you know of a company called IPSY?
09:12   9   A    Yes.
09:12  10   Q    What is IPSY?
09:12  11   A    IPSY is a company I founded.  It's a beauty
09:12  12   subscription company.
09:12  13   Q    You said you founded it.  When did you do that?
09:12  14   A    I founded the company back in 2011.
09:12  15   Q    And do you know of a company called Personalized Beauty
09:12  16   Discovery, Incorporated?
09:12  17   A    Yes.
09:12  18   Q    And what is that?
09:12  19   A    That is the umbrella corp that IPSY is under.
09:12  20   Q    Do you know an individual by the name of Long Tran?
09:12  21   A    Yes.
09:12  22   Q    And who is Long Tran?
09:12  23   A    Long Tran is an employee of IPSY.
09:12  24   Q    Still?
09:12  25   A    Not anymore, no.
```

09:12   1   Q    What relationship work-wise does Long Tran have to you?

09:12   2   A    Long has basically been my right-hand businessperson.

09:13   3   He is currently the COO of Divinium, and he still works with

09:13   4   me.

09:13   5   Q    And what is Divinium?

09:13   6   A    Divinium is my holding company that EM Cosmetics is

09:13   7   under.

09:13   8   Q    Do you know an individual by the name of Michael

09:13   9   Avenatti?

09:13   10  A    Yes.

09:13   11  Q    How do you know who Michael Avenatti is?

09:13   12  A    I know him through Long, and that's how I know him.

09:13   13  Q    Do you remember the first time you met Michael

09:13   14  Avenatti?

09:13   15  A    Yes.  I remember it was in 2016, that year.

09:13   16  Q    And what was the circumstances of meeting him at that

09:13   17  time?

09:13   18  A    I believe Michael was in town, and it was just a meet

09:13   19  and greet.

09:13   20  Q    At that time were you meeting him to hire him for

09:14   21  anything?

09:14   22  A    No.

09:14   23  Q    Moving to 2017, in and around February of 2017, did

09:14   24  there come a time where you were thinking of leaving IPSY?

09:14   25  A    Yes.

09:14   1    Q    When you were thinking of leaving IPSY, what was it
09:14   2    that you were hoping to do?
09:14   3    A    I was hoping to part ways and exit the company and to
09:14   4    also buy my brand and cosmetics with me so I could own it
09:14   5    myself.
09:14   6    Q    And did there come a time where you met with the
09:14   7    defendant to possibly hire him to help you accomplish the
09:14   8    goals you wanted, to leave IPSY?
09:14   9    A    Yes.
09:14   10   Q    And when was that?
09:15   11   A    That was around, I believe, 2017.  I believe Long
09:15   12   engaged with Michael on having him help us, help me exit the
09:15   13   company.
09:15   14   Q    Did you meet with defendant in person to discuss
09:15   15   possibly hiring him?
09:15   16   A    It's been so long.  I don't remember meeting him in
09:15   17   person, but I do remember a lot of phone calls and e-mails.
09:15   18   Q    Where -- in and around February 2017, where was Long
09:15   19   Tran's office at that time?
09:15   20   A    Long Tran's office was in Santa Monica at this time.
09:15   21   Q    And did you ever meet with the defendant and Long Tran
09:15   22   at Long Tran's office in Santa Monica?
09:15   23   A    Yes.  Actually, yes.
09:16   24   Q    And what the circumstances of meeting him at Long
09:16   25   Tran's office at that time?

09:16   1    A    I believe from my memory we were meeting with him and

09:16   2    discussing the possibility of me exiting the company.

09:16   3    Q    Did you describe to the defendant what you were looking

09:16   4    for at that time?

09:16   5    A    Yes.

09:16   6    Q    And what, if anything, did defendant say to you about

09:16   7    what it would take for him to get you out of your agreement

09:16   8    with IPSY?

09:16   9    A    Well, the defendant was very confident.  And because of

09:16  10    his confidence, I seemed also myself confident that he could

09:16  11    get me out of it.  He said it was very easy, so it just made

09:16  12    sense to work with him.

09:16  13    Q    After meeting him and him telling you how easy it would

09:16  14    be, did you have follow-up phone calls about leaving IPSY

09:16  15    with him?

09:16  16    A    Yes.  Most of the detailed phone calls were more

09:17  17    through Long with Michael, but, yes, Long would update me on

09:17  18    the process.

09:17  19    Q    And the comment that you made -- I'm sorry.  Let me

09:17  20    strike that.  The comment that you said he made to you about

09:17  21    that it would be easy, was that something that he said to

09:17  22    you additional times?

09:17  23    A    Yes.

09:17  24    Q    You just mentioned most of the details were handled by

09:17  25    Long Tran.  Why was that?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:17 | 1 | A    Well, during this time my mental health was actually |
| 09:17 | 2 | being affected.  I was a YouTuber for ten years, and it got |
| 09:17 | 3 | to a point where I needed someone just to help me.  So Long |
| 09:17 | 4 | stepped in to help me with the business side and the |
| 09:17 | 5 | logistics, and I trusted him to do it. |
| 09:18 | 6 | Q    And you had hired -- you relied upon Long Tran to be |
| 09:18 | 7 | your agent in this process; is that right? |
| 09:18 | 8 | MR. AVENATTI:  Objection.  Leading. |
| 09:18 | 9 | THE COURT:  Sustained. |
| 09:18 | 10 | BY MR. SAGEL: |
| 09:18 | 11 | Q    What role did you expect Long Tran to play on your |
| 09:18 | 12 | behalf at this point? |
| 09:18 | 13 | A    I trusted Long to make the most objective decisions |
| 09:18 | 14 | working with Michael and just making sure I had a clean exit |
| 09:18 | 15 | from the company.  And I trusted that Long had my best |
| 09:18 | 16 | interests. |
| 09:18 | 17 | Q    I'm going to show you Exhibit 266, which is already in |
| 09:18 | 18 | evidence.  You have a binder.  It should be Volume 4.  If |
| 09:19 | 19 | you could look at Exhibit 266. |
| 09:19 | 20 | A    Oh, 266.  It starts with 151 in this binder. |
| 09:19 | 21 | Q    It should be Volume 4 -- |
| 09:19 | 22 | A    Oh, my gosh.  I have no idea. |
| 09:19 | 23 | Q    -- on the spine.  Don't pull them down yet. |
| 09:19 | 24 | Ms. Bredahl will help you. |
| 09:20 | 25 | A    And you said Exhibit -- |

| | | |
|---|---|---|
| 09:20 | 1 | Q     266. |
| 09:20 | 2 | A     -- 266.  Okay. |
| 09:20 | 3 | Q     And at the very top of the first page is an e-mail from |
| 09:20 | 4 | Long Tran to Michael Avenatti, and the e-mail says, |
| 09:20 | 5 | "Executed copy attached."  Do you see that, on the very |
| 09:20 | 6 | first page? |
| 09:20 | 7 | A     Yes. |
| 09:20 | 8 | Q     And if you were to turn to the third page, which is the |
| 09:20 | 9 | attachment to the e-mail, that's the attorney/client fee |
| 09:20 | 10 | contract contingency between yourself and Michael Avenatti; |
| 09:20 | 11 | is that correct? |
| 09:21 | 12 | A     Yes. |
| 09:21 | 13 | Q     And if you were to look at page 5 of 5, is that your |
| 09:21 | 14 | signature for this agreement? |
| 09:21 | 15 | A     Correct.  Yes. |
| 09:21 | 16 | Q     So then turning back to page 3 and paragraph four, |
| 09:21 | 17 | there is a paragraph or a section that says, "Legal Fees, |
| 09:21 | 18 | Costs, and Billing Practices."  Do you see that? |
| 09:21 | 19 | A     Yes. |
| 09:21 | 20 | Q     Can you read the part right after that starts with |
| 09:21 | 21 | "attorney," just the rest of that sentence. |
| 09:21 | 22 | A     "Attorney will receive a contingent fee for services |
| 09:21 | 23 | rendered of 7.5 percent, seven and one-half percent of the |
| 09:21 | 24 | recovery." |
| 09:21 | 25 | Q     At the time you agreed to the attorney/client fee |

09:21  1    contract here, what was your understanding of how defendant
09:22  2    would be paid for his services?
09:22  3    A    I just understood that the defendant would be paid the
09:22  4    7.5 percent and -- yeah, that was it.  Simple.
09:22  5    Q    And you agreed to that number?
09:22  6    A    That's correct.  I agreed it was fair.
09:22  7    Q    Did you have any discussions with the defendant of
09:22  8    doing it as a contingency versus hourly, paying him hourly?
09:22  9    A    I remember -- I didn't discuss it with him personally,
09:22  10   but just speaking to Long, yes.
09:22  11         MR. AVENATTI:  Your Honor, calls for hearsay.
09:22  12   Move to strike as --
09:22  13         THE COURT:  It will be stricken.
09:22  14   BY MR. SAGEL:
09:22  15   Q    You were comfortable choosing a contingency fee rather
09:22  16   than an hourly fee; is that correct?
09:23  17   A    Correct.
09:23  18   Q    And at this time when you hired the defendant to get
09:23  19   you out of IPSY, were your goals still the same, to get your
09:23  20   cosmetics brand back and to get your fair market value out
09:23  21   of your company?
09:23  22   A    Correct.
09:23  23   Q    And did you have an idea in your head of how much you
09:23  24   believed you were owed at this time or you should get out of
09:23  25   your fair market value of the company?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:23  1    A    Yes.

09:23  2    Q    And how much did you believe you were looking to get at

09:23  3    that time?

09:23  4    A    Around 30 million.

09:23  5    Q    And without getting into the details of the

09:23  6    circumstances, at the time you were looking to leave IPSY,

09:23  7    did you tell defendant that things were stressful and

09:23  8    emotional for you and you wanted to leave the company?

09:23  9            MR. AVENATTI:  Objection.  Leading.

09:24  10           THE COURT:  Overruled.

09:24  11           THE WITNESS:  Yes.  That was actually why I hired

09:24  12   him, because I was just very stressed out.  I was just ready

09:24  13   to leave, and he was very confident he could help me.

09:24  14   BY MR. SAGEL:

09:24  15   Q    And I might not have asked you this, but the date of

09:24  16   the e-mail we just looked at where the draft agreement took

09:24  17   place or the executed agreement was signed, that was

09:24  18   August 15th, 2017; is that correct?

09:24  19   A    Yes.

09:24  20   Q    Do you recall approximately how long after you guys

09:24  21   signed the attorney/client fee contract it took to have an

09:24  22   agreement with IPSY?

09:24  23   A    During this time it was such a blur, but from my memory

09:25  24   it happened -- it was pretty swift, I would say.

09:25  25   Q    I'm going to have you look at Exhibit 268, which also

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:25  1    should be in evidence already.  It is.

09:25  2            Do you recognize Exhibit 268 as the common stock

09:25  3    repurchase agreement you had with IPSY?

09:25  4    A    Yes.

09:25  5    Q    And turning to page 11, is that your signature on this

09:25  6    agreement?

09:25  7    A    Yes.

09:25  8    Q    Then if we could just look back -- and I apologize.

09:25  9    I'm moving all over the place -- back to page 1 at the top.

09:25  10   It says, "This Common Stock Repurchase Agreement (this

09:26  11   agreement) is made as of September 17th, 2017, by and

09:26  12   between Personalized Beauty Discovery, Inc., a Delaware

09:26  13   corporation (the company) and Michelle Phan, the holder."

09:26  14   This is dated September 17th, 2017.

09:26  15           Is that your understanding of when you agreed to

09:26  16   the terms of this agreement with IPSY?

09:26  17   A    Yes.

09:26  18   Q    And other than this agreement -- actually, let me back

09:26  19   up.  The fee agreement we talked about before that was the

09:26  20   7.5 contingency fee, other than that agreement, did you have

09:26  21   any other agreements with the defendant regarding his fees?

09:26  22   A    No.

09:26  23   Q    And with regards to this agreement, were you satisfied

09:27  24   when you signed this agreement that this would pay you what

09:27  25   you were looking for from IPSY?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:27  1    A    Yes.
09:27  2    Q    If I could have you look at the bottom of page 1, it
09:27  3    has a section called repurchase of the shares, and it has
09:27  4    the closing.  Do you see that?
09:27  5    A    Yes.
09:27  6    Q    And it has an initial closing and a subsequent closing.
09:27  7    What did you understand at the time your agreement was going
09:27  8    to call for or what you were going to receive?
09:27  9    A    I remember that essentially my shares, I would sell it
09:27  10   back to them and I would get paid for them.
09:27  11   Q    And did you understand it would happen over two time
09:27  12   periods?
09:27  13   A    Yes.  Correct.
09:27  14   Q    Then if you look at the top of page 2, it talks about
09:27  15   the purchase prices of your shares.  Do you see that?
09:28  16   A    Yes.
09:28  17   Q    And did you understand that your first initial purchase
09:28  18   price would be about 27.4 million on the first payment and a
09:28  19   little over $8 million on the second payment?
09:28  20   A    Yes.
09:28  21   Q    Did you understand, other than you getting your shares
09:28  22   purchased from you, that you had obligations between the
09:28  23   first payment and the second payment?
09:28  24   A    Correct.
09:28  25   Q    And you agreed to that so that you could get the two

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:28 | 1 | payments? |
| 09:28 | 2 | MR. AVENATTI:  Objection.  Leading. |
| 09:28 | 3 | THE COURT:  Overruled. |
| 09:28 | 4 | THE WITNESS:  Correct. |
| 09:28 | 5 | BY MR. SAGEL: |
| 09:28 | 6 | Q    At the time the defendant negotiated your repurchase |
| 09:29 | 7 | stock -- your Common Stock Repurchase Agreement, do you know |
| 09:29 | 8 | if he was negotiating repurchase agreements for anybody else |
| 09:29 | 9 | related to you? |
| 09:29 | 10 | A    Yes. |
| 09:29 | 11 | Q    Who else other than you was he negotiating repurchase |
| 09:29 | 12 | agreements for? |
| 09:29 | 13 | A    My sister-in-law, Promise Phan. |
| 09:29 | 14 | Q    And does she also have a different name she uses? |
| 09:29 | 15 | A    Yes, Pratigya. |
| 09:29 | 16 | Q    You might need to spell that for the court reporter. |
| 09:29 | 17 | A    I don't even know how to spell it.  I'm so sorry.  I |
| 09:29 | 18 | don't know how to spell it. |
| 09:29 | 19 | Q    We'll get it later.  Do you know if Long Tran was also |
| 09:29 | 20 | having common stock purchased back? |
| 09:30 | 21 | A    Yes. |
| 09:30 | 22 | Q    Prior to receiving your first payment, the initial |
| 09:30 | 23 | closing payment under this settlement agreement, did you |
| 09:30 | 24 | have a discussion with the defendant on how you would |
| 09:30 | 25 | receive your money? |

| | | |
|---|---|---|
| 09:30 | 1 | A     Yes. |
| 09:30 | 2 | Q     And what did he tell you? |
| 09:30 | 3 | A     He said the protocol is to send it to him first.  He |
| 09:30 | 4 | would get the payment.  He would take out what he was owed, |
| 09:30 | 5 | and then he would send the rest to us. |
| 09:30 | 6 | Q     And what did you understand -- did you understand how |
| 09:30 | 7 | he would get his payment? |
| 09:30 | 8 | A     Could you rephrase that question? |
| 09:30 | 9 | Q     Let me ask it in a better way.  You were going to get |
| 09:30 | 10 | two payments.  Did you understand how he would receive his |
| 09:31 | 11 | fees from your payments? |
| 09:31 | 12 | A     Oh, yes.  Instead of taking -- because I had two |
| 09:31 | 13 | payments.  So normally you would take a percentage from the |
| 09:31 | 14 | first payment and a percentage from the second payment.  We |
| 09:31 | 15 | were generous and we told him just take the percentage that |
| 09:31 | 16 | you're owed in the first chunk. |
| 09:31 | 17 | Q     And based on your understanding, did defendant take his |
| 09:31 | 18 | fees for all payments out of the first payment? |
| 09:31 | 19 | A     Yes. |
| 09:31 | 20 | Q     From your first payment, the initial payment that IPSY |
| 09:31 | 21 | made, did you receive your money immediately? |
| 09:31 | 22 | A     Yes. |
| 09:31 | 23 | Q     And did you have any problems receiving your first |
| 09:31 | 24 | payment? |
| 09:31 | 25 | A     No. |

| | | |
|---|---|---|
| 09:31 | 1 | Q    At the time you received your first payment, how did |
| 09:32 | 2 | you feel about the defendant at that time? |
| 09:32 | 3 | A    I felt -- I was relieved.  I was happy.  I was happy. |
| 09:32 | 4 | Q    There were no issues? |
| 09:32 | 5 | A    No issues. |
| 09:32 | 6 | Q    Do you still have Exhibit 268 in front of you? |
| 09:32 | 7 | A    Yes. |
| 09:32 | 8 | Q    And at the bottom of page 1, the first payment was |
| 09:32 | 9 | going to be due to you on September 18th, 2017? |
| 09:32 | 10 | A    Yes. |
| 09:32 | 11 | Q    And then the second payment was going to be due to you |
| 09:32 | 12 | approximately one year later, exactly one year later on |
| 09:32 | 13 | September 18th, 2018; do you recall that? |
| 09:33 | 14 | MR. AVENATTI:  Objection.  Leading. |
| 09:33 | 15 | THE COURT:  Overruled. |
| 09:33 | 16 | THE WITNESS:  Yes. |
| 09:33 | 17 | BY MR. SAGEL: |
| 09:33 | 18 | Q    Did you learn at some point that you didn't need to |
| 09:33 | 19 | wait until September 18th, 2018, for your second payment? |
| 09:33 | 20 | A    Yes. |
| 09:33 | 21 | Q    Could I have you look at Exhibit 272? |
| 09:33 | 22 | MR. SAGEL:  This is also in evidence, Your Honor. |
| 09:33 | 23 | BY MR. SAGEL: |
| 09:33 | 24 | Q    If I could have you look at the second e-mail kind of |
| 09:33 | 25 | down from the top from Valen Tong.  Do you see that? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:33   1    A    Yes.

09:33   2    Q    Do you know who Valen Tong is?

09:33   3    A    Yes.  She's the CFO of IPSY.

09:33   4    Q    And did you receive this e-mail from Valen Tong on

09:34   5    March 8th, 2018?

09:34   6    A    Yes.

09:34   7    Q    Can you read the e-mail that Valen Tong sent you there.

09:34   8    A    "Dear Michelle:  Hope this e-mail finds you well.  I'm

09:34   9    the CFO of IPSY.  We have not met.  Nice meeting you here

09:34   10   and plus some good news to share.  As Jen discussed with

09:34   11   Long this morning, we are planning to effect an early

09:34   12   subsequent closing of the common stock repurchase agreement.

09:34   13   As a result we will be repurchasing 107,188 shares for an

09:34   14   aggregate purchase price of $8,146,288 per the common stock

09:34   15   repurchase agreement.  The funds will be wired to you next

09:34   16   week.  Can you please confirm your bank account information

09:34   17   below."

09:34   18   Q    Let me stop you there for a second.  Was this the first

09:34   19   you learned that IPSY was going to be buying back your

09:34   20   shares early?

09:34   21   A    Yes.

09:35   22   Q    Then it lists a bank account below of City National

09:35   23   Bank.  Do you see that?

09:35   24   A    Yes.

09:35   25   Q    Was that your bank account?

09:35   1    A    No.

09:35   2    Q    What was your understanding of whose bank account this

09:35   3    was?

09:35   4    A    It was Michael's.

09:35   5    Q    And then if you look right above this e-mail, do you

09:35   6    see what you did with this e-mail after you received it?

09:35   7    A    Yes.

09:35   8    Q    And what did you do with the e-mail after you received

09:35   9    it?

09:35   10   A    I immediately forwarded it to Long so he could handle

09:35   11   it.

09:35   12   Q    And then if I could have you look on page 2 at the top,

09:35   13   there is an e-mail that you send back that starts with, "Hi,

09:35   14   everyone."  Do you see that?

09:35   15   A    Yes.

09:35   16   Q    You write back, "Hi, everyone.  Yes, the wire info is

09:36   17   correct.  Thank you."  Do you see that?

09:36   18   A    Uh-huh.

09:36   19            THE COURT:  You need to say yes or no, please.

09:36   20            THE WITNESS:  Yes.

09:36   21   BY MR. SAGEL:

09:36   22   Q    Prior to sending the e-mail back saying, "Yes, the wire

09:36   23   information is correct," do you know if you had any

09:36   24   discussion with the defendant?

09:36   25   A    Yes.

36

09:36  1   Q    What was -- was it over the phone or in person?

09:36  2   A    It was over the phone.

09:36  3   Q    During the phone call with the defendant prior to

09:36  4   sending this e-mail, do you recall what he said about the

09:36  5   second payment?

09:36  6   A    I recall he said he gave the green light to wire it to

09:36  7   that bank account, and he would send us the money -- the

09:36  8   same protocol like before.

09:36  9   Q    And during that call did defendant say anything about

09:36  10  taking any fees out of the second payment?

09:37  11  A    No.

09:37  12  Q    How much of the second payment were you expecting to

09:37  13  get?

09:37  14  A    All of it.

09:37  15  Q    And why were you expecting to get all of it?

09:37  16  A    The defendant already took his shares from the first

09:37  17  payment.

09:37  18  Q    If defendant was going to take any money from your

09:37  19  second payment, would you have expected him to tell you that

09:37  20  at that time?

09:37  21  A    Yes.

09:37  22  Q    Then if you could look at the very bottom of page 1 to

09:37  23  the top of page 2, that's a reply to your e-mail on

09:37  24  March 14th, 2018.  Do you see that?

09:37  25  A    Yes.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:37 | 1 | Q    And that's from a Darryl Chang at IPSY? |
| 09:37 | 2 | A    Yes. |
| 09:38 | 3 | Q    And Mr. Chang wrote to you, "Hi, Michelle.  Just wanted |
| 09:38 | 4 | to let you know that the payment was processed today.  If |
| 09:38 | 5 | you have any questions, let us know." |
| 09:38 | 6 | What did you understand this to mean when Darryl |
| 09:38 | 7 | Chang at IPSY told you that the payment was processed on |
| 09:38 | 8 | March 14th? |
| 09:38 | 9 | A    I understood that they wired the money into that bank |
| 09:38 | 10 | account. |
| 09:38 | 11 | Q    And then after you received that e-mail, did you |
| 09:38 | 12 | immediately forward it to Long Tran? |
| 09:38 | 13 | A    Yes. |
| 09:38 | 14 | Q    After the wire was transferred into that bank account |
| 09:38 | 15 | or after you received word that the wire was transferred to |
| 09:38 | 16 | the bank account or payment was processed, what was your |
| 09:39 | 17 | expectation of what would happen next? |
| 09:39 | 18 | A    I expected the money to come to me. |
| 09:39 | 19 | Q    And if we could pull up Exhibit 275, which is in |
| 09:39 | 20 | evidence -- well, let me ask you one additional question |
| 09:39 | 21 | before I ask you this.  I had asked you about in the 2017 |
| 09:39 | 22 | range how Long was acting on your behalf.  In March of 2018 |
| 09:39 | 23 | was Mr. Tran still working in the same capacity? |
| 09:39 | 24 | A    Yes. |
| 09:39 | 25 | Q    And on March 14th, 2018, he sent an e-mail to the |

```
09:39    1    defendant, Judy Regnier, and Filippo Marchino.  Do you see
09:40    2    that?
09:40    3    A    Yes.
09:40    4    Q    Let me start with -- do you know who Filippo Marchino
09:40    5    is?
09:40    6    A    Yes.
09:40    7    Q    Who is he or how do you know who he was?
09:40    8    A    I know Filippo as an associate of Michael's and also a
09:40    9    friend of Long's.
09:40   10    Q    And do you know who Judy Regnier is?
09:40   11    A    At the time I didn't know who she was.
09:40   12    Q    And then the e-mail says, "Hi, guys.  Here is the wire
09:40   13    info for myself and Michelle.  Payment was sent from IPSY
09:40   14    today."  And that's the same date as the e-mail you got from
09:40   15    Mr. Chang?
09:40   16    A    Yes.
09:40   17    Q    And then under your name it has bank account
09:40   18    information.  Do you see that?
09:40   19    A    Yes.
09:40   20    Q    Was that one of your -- a bank account you controlled
09:40   21    at the time?
09:40   22    A    Yes.
09:40   23    Q    And how much is listed here for your payment?
09:40   24    A    $8 million.
09:40   25    Q    $8,146,000 number?
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:41 | 1 | A    Yes. |
| 09:41 | 2 | Q    And what was your understanding of what this number |
| 09:41 | 3 | represented? |
| 09:41 | 4 | A    That was the money I was owed, a hundred percent. |
| 09:41 | 5 | Q    Of the second payment? |
| 09:41 | 6 | A    Yes. |
| 09:41 | 7 | Q    At the time of your phone call with the defendant on |
| 09:41 | 8 | March 13th or right before you sent the March 13th e-mail, |
| 09:41 | 9 | did the defendant tell you his law firm was in bankruptcy? |
| 09:41 | 10 | A    No. |
| 09:41 | 11 | Q    At the time of that, did the defendant tell you he had |
| 09:41 | 12 | told the Bankruptcy Court that he would pay off his |
| 09:41 | 13 | creditors, including the IRS, to get out of bankruptcy? |
| 09:41 | 14 | A    No. |
| 09:42 | 15 | Q    Other than Mr. Chang's e-mail telling you that the |
| 09:42 | 16 | payment was processed, did you learn at some point that the |
| 09:42 | 17 | defendant received the wire, the payment? |
| 09:42 | 18 | A    Yes. |
| 09:42 | 19 | Q    When you learned that the defendant had received the |
| 09:42 | 20 | second payment, what were you expecting at that point? |
| 09:42 | 21 | A    I was expecting a wire to my bank account. |
| 09:42 | 22 | Q    And did you receive that wire immediately? |
| 09:42 | 23 | A    No. |
| 09:42 | 24 | Q    When you didn't receive it immediately, did it cause |
| 09:42 | 25 | you any kind of concern? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:42  1   A     Yes.  I was starting to feel anxious.

09:42  2   Q     How long did it take you to start feeling anxious?

09:43  3   A     I would say four days.  It shouldn't have taken four

09:43  4   days.

09:43  5   Q     And you didn't get paid in four days.  Did you get paid

09:43  6   in a couple weeks?

09:43  7   A     Can you rephrase that question?

09:43  8   Q     Do you recall -- actually, I will just put it on the

09:43  9   screen because it's a different volume.

09:43  10              MR. SAGEL:  If we could pull up Exhibit 369 and on

09:43  11  the first page on 3/14/2018.

09:43  12  BY MR. SAGEL:

09:43  13  Q     On March 14th, 2018, these are the incoming wires into

09:44  14  defendant's attorney/client trust account.  Do you see those

09:44  15  two numbers there?

09:44  16  A     Yes.

09:44  17  Q     Do you recognize what those two numbers represent?

09:44  18  A     Yes.

09:44  19  Q     And what do those two numbers on the far right

09:44  20  represent?

09:44  21  A     The first number is my second payment, and the bottom

09:44  22  number I believe -- sorry.  The bottom number is -- I think

09:44  23  it's Long's payment.

09:45  24  Q     Then if we could look at the second page of

09:45  25  Exhibit 269.  And that was dated March 14th.  If we could

| 09:45 | 1 | look at the last two lines, do you see two payments into |
| 09:45 | 2 | Boston Private Bank and Trust Company? |
| 09:45 | 3 | A    Yes. |
| 09:45 | 4 | Q    And these payments as you can see on the column is |
| 09:45 | 5 | May 4th, 2018? |
| 09:45 | 6 | A    Yes. |
| 09:45 | 7 | Q    Was it your understanding that your payment, any money |
| 09:45 | 8 | you received from the second payment, didn't happen until |
| 09:45 | 9 | May 4th, 2018? |
| 09:45 | 10 | A    Yes. |
| 09:45 | 11 | MR. AVENATTI:  Leading. |
| 09:45 | 12 | THE COURT:  Overruled. |
| 09:45 | 13 | THE WITNESS:  Yes. |
| 09:45 | 14 | BY MR. SAGEL: |
| 09:45 | 15 | Q    Between March 14th, 2018, and May 4th, 2018, do you |
| 09:46 | 16 | know why you did not get your money? |
| 09:46 | 17 | A    No. |
| 09:46 | 18 | Q    Did defendant ever provide you any explanations of why |
| 09:46 | 19 | you did not get your money? |
| 09:46 | 20 | A    No. |
| 09:46 | 21 | Q    Were you at this time, after the second payment, how |
| 09:46 | 22 | often were you talking to the defendant? |
| 09:46 | 23 | A    I wasn't talking to the defendant that much.  Mostly it |
| 09:46 | 24 | was Long, and I was very concerned that we hadn't received |
| 09:46 | 25 | the wire. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:46   1    Q    And was Mr. Tran keeping you updated on his

09:46   2    conversations with the defendant?

09:46   3    A    Yes.

09:46   4    Q    Did there come a time when you were in New York City at

09:47   5    the same time as the defendant?

09:47   6    A    Yes.

09:47   7    Q    I'm going to have you look at Exhibit 294.  It's about

09:47   8    three pages long.  Do you recognize what Exhibit 294 is?

09:47   9    A    Yes.

09:47   10   Q    And just generally what is it?  What are the three

09:47   11   pages of Exhibit 294?

09:47   12   A    These are the text messages between Michael and myself.

09:47   13   Q    Are they a fair and accurate copy of text messages you

09:48   14   had between yourself and the defendant between April 23rd

09:48   15   and April 24th?

09:48   16   A    Yes.

09:48   17             MR. SAGEL:  At this time, Your Honor, the

09:48   18   government moves to admit Exhibit 294, defendant's text

09:48   19   messages, for the truth, and Ms. Phan's messages for notice.

09:48   20             MR. AVENATTI:  Objection.  Hearsay,

09:48   21   authentication.  Best evidence, foundation.

09:48   22             THE COURT:  Overruled.  Exhibit 294 will be

09:48   23   received for the stated purposes.

09:48   24             (Exhibit 294 received in evidence)

09:48   25             MR. SAGEL:  If we could pull up the very first

09:48    1    message.  It says April 23rd.
09:48    2    BY MR. SAGEL:
09:48    3    Q    Do you see that?
09:48    4    A    Yes.
09:48    5    Q    And is this after your second payment had been sent by
09:48    6    IPSY to the defendant's account?
09:48    7    A    Yes.
09:48    8    Q    Can you read what your first message is.
09:49    9    A    "Michael, it's Michelle."
09:49   10    Q    And why did you write who it was that was texting him?
09:49   11    A    I didn't have his number and he didn't have mine.
09:49   12    Q    Do you recall how defendant -- how either you or the
09:49   13    defendant came to know that you were both in New York City
09:49   14    at the same time?
09:49   15    A    From my memory I was already in New York.  I was in a
09:49   16    hotel room and I was on a call with him, and he also told me
09:49   17    he also happened to be in New York, too.
09:49   18    Q    And during that phone call do you know if it was your
09:49   19    phone that you were talking to him from?
09:49   20    A    It wasn't my phone.  It was Long's phone.
09:49   21    Q    And during that phone call did you have a discussion
09:50   22    about meeting up?
09:50   23    A    Yes.
09:50   24    Q    And let me ask you a question.  You had mentioned that
09:50   25    within days of not getting your money, you were concerned;

44

```
09:50   1    is that correct?
09:50   2    A    I was concerned, but when it got different was from my
09:50   3    memory Long received his part of the payment, so there is
09:50   4    this confidence that all is okay, like, I don't have to be
09:50   5    so anxious because he sent the money, and I can engage in
09:50   6    having a conversation with him.
09:50   7              MR. AVENATTI:  Move to strike everything after
09:50   8    concerned as nonresponsive.
09:50   9              THE COURT:  Denied.
09:50  10    BY MR. SAGEL:
09:50  11    Q    And did you agree to meet with the defendant while you
09:50  12    were in New York?
09:50  13    A    Yes.
09:50  14    Q    Looking at 294, after your message defendant replied
09:51  15    back, "Hi, there.  Just done at CNN.  Do you have time for a
09:51  16    dinner?"  Do you see that?
09:51  17    A    Yes.
09:51  18    Q    And what was your reply back to the defendant?
09:51  19    A    "Just wrapped my shoot.  I'm at the Standard Rooftop
09:51  20    having a celebration for finishing the China event.  I added
09:51  21    you to our list.  Dinner is downstairs at the Standard
09:51  22    Restaurant Grill in the Wine Room, 7:30.  Yay."
09:51  23    Q    And is this where you agreed to meet with him that day?
09:51  24    A    Yes.
09:51  25    Q    Then going back to the phone call that you had in the
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:51  1   hotel room on Mr. Tran's phone, do you remember saying

09:52  2   anything to the defendant about your money?

09:52  3              MR. AVENATTI:  Objection.  Leading.

09:52  4              THE COURT:  Overruled.

09:52  5              THE WITNESS:  Just from my memory, I didn't want

09:52  6   to bring up the money.  I was too scared.  But I had faith

09:52  7   that he would honor his word because he sent the money to

09:52  8   Long.  So I was reassured that if he sent the money to him,

09:52  9   he will send it to me.

09:52  10  BY MR. SAGEL:

09:52  11  Q    And did you wind up meeting the defendant at the

09:52  12  Standard Rooftop or the Standard Hotel that day?

09:52  13  A    Yes.  He came to the Rooftop and met with my colleagues

09:52  14  and myself.

09:52  15  Q    And while you were there that day at the Standard -- I

09:52  16  keep saying Standard Hotel.  Is it a Standard Hotel?

09:52  17  A    It's Standard Hotel but it was the Rooftop.

09:52  18  Q    When you were at the Standard Rooftop, did you have any

09:53  19  discussions with the defendant about your money at that

09:53  20  time?

09:53  21  A    No, we didn't.

09:53  22  Q    And why did you not bring it up at that time?

09:53  23  A    From my memory, I -- again I didn't want to bring up

09:53  24  business.  It was a celebration I was having with my

09:53  25  colleagues.  I didn't really want to talk about work.

46

09:53  1    Q    Then if you can turn to page 2 of Exhibit 294, there is
09:53  2    a message at the top.  Do you see your message to the
09:54  3    defendant?
09:54  4    A    Yes.
09:54  5    Q    And what did you text the defendant at that point?
09:54  6    A    "Thank you for coming, Michael.  It was so good to see
09:54  7    you.  See you tomorrow for lunch."
09:54  8    Q    And had you discussed that evening to meet with the
09:54  9    defendant the next day?
09:54  10   A    Yes.  He invited me to lunch the next day.
09:54  11   Q    It looks like there may have been a couple accidental
09:54  12   text messages, and then under those do you see a message
09:54  13   that he wrote back to you?
09:54  14   A    Yes.
09:54  15   Q    And what does it say there?
09:54  16   A    "Of course.  I always love seeing you."
09:54  17   Q    And then you used some heart emojis?
09:54  18   A    Yes.
09:54  19   Q    And then if you look to the next page, does defendant
09:55  20   send you a message at the top?
09:55  21   A    Yes.
09:55  22   Q    And what is he providing you there?
09:55  23   A    That is the restaurant I was to meet him at.
09:55  24   Q    Now, I'm not going to go through the rest, but did you
09:55  25   agree to meet with him at that restaurant for lunch?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:55  1   A    Yes.

09:55  2   Q    When you met with the defendant for lunch that next

09:55  3   day, on April 24th, did you have a discussion with the

09:55  4   defendant about your money then?

09:55  5   A    No.  I didn't specifically ask about the money.

09:55  6           MR. AVENATTI:  Move to strike after no.

09:55  7           THE COURT:  It will be stricken.

09:55  8   BY MR. SAGEL:

09:55  9   Q    What did you ask him about as it related to your second

09:55  10  payment during that lunch?

09:55  11          MR. AVENATTI:  Seeks to ignore the witness's prior

09:56  12  testimony, Your Honor.  Asked and answered.

09:56  13          THE COURT:  Overruled.

09:56  14          THE WITNESS:  I think from my memory -- from what

09:56  15  I can recall, I was just asking if everything was okay about

09:56  16  my payment.  And he said that he would have to go back to

09:56  17  California and go to the bank in person to sign off on the

09:56  18  wire, and he was so busy flying everywhere that he didn't

09:56  19  have time.  And me being in the -- just me understanding how

09:56  20  it is flying everywhere, I empathized and I understood, and

09:57  21  I believed him.

09:57  22  BY MR. SAGEL:

09:57  23  Q    Did he provide you with an explanation of how Long Tran

09:57  24  had gotten paid the day before if he was in New York?

09:57  25  A    He didn't provide an explanation.  And I don't recall

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:57  1    if this was from a conversation during that lunch, but my
09:57  2    recollection of the entire event, I remember understanding
09:57  3    that the amount of money that was owed to me was so high
09:57  4    that he would have to go in person to the bank to sign off
09:57  5    on it.
09:57  6           But, see, for me it didn't make sense because,
09:57  7    like you said, Long just got his money and my other
09:57  8    27 million was wired fast.  I mean, it happened swiftly.  So
09:58  9    why was this taking long?  So I already had a lot of doubt,
09:58  10   but I was reassured by his confidence that all is okay.
09:58  11          MR. AVENATTI:  Your Honor, move to strike the
09:58  12   portion after the first sentence as nonresponsive.
09:58  13          THE COURT:  Denied.
09:58  14   BY MR. SAGEL:
09:58  15   Q    When the defendant was providing you or what you felt
09:58  16   was confidence in what he was explaining to you, did you
09:58  17   confront him in any way?
09:58  18   A    I didn't confront him, no.
09:58  19   Q    When you met with the defendant in New York, either at
09:58  20   the Standard Rooftop or at lunch the next day, did defendant
09:58  21   ever tell you that he had already spent $4 million of your
09:59  22   money?
09:59  23   A    No.
09:59  24   Q    Would you have wanted to know that?
09:59  25   A    Yes.

49

| | | |
|---|---|---|
| 09:59 | 1 | Q    Would you have expected to know that? |
| 09:59 | 2 | A    Yes. |
| 09:59 | 3 | Q    Why is that? |
| 09:59 | 4 | A    Because it's my money. |
| 09:59 | 5 | Q    Did he tell you that when you met with him on |
| 09:59 | 6 | April 23rd, that his office manager had sent him an e-mail |
| 09:59 | 7 | that day with the balances of your money? |
| 09:59 | 8 | MR. AVENATTI:  Objection.  403, argument. |
| 09:59 | 9 | THE COURT:  Overruled. |
| 09:59 | 10 | THE WITNESS:  No. |
| 09:59 | 11 | BY MR. SAGEL: |
| 09:59 | 12 | Q    And he didn't tell you that he knew how much was in |
| 09:59 | 13 | your second -- how much of your second payment was left? |
| 09:59 | 14 | MR. AVENATTI:  Lacks foundation, Your Honor. |
| 09:59 | 15 | THE COURT:  Overruled. |
| 09:59 | 16 | THE WITNESS:  No. |
| 09:59 | 17 | BY MR. SAGEL: |
| 09:59 | 18 | Q    When you met with defendant in New York City on |
| 09:59 | 19 | April 23rd and 24th, did he tell you that the day after he |
| 10:00 | 20 | received your payment, he withdrew 3 million of it to pay |
| 10:00 | 21 | creditors in his bankruptcy? |
| 10:00 | 22 | A    No. |
| 10:00 | 23 | Q    The individual that you met at the Standard Rooftop and |
| 10:00 | 24 | for lunch the next day, is he here in court? |
| 10:00 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:00 | 1 | Q    Can you identify him for the record. |
| 10:00 | 2 | A    Yes. |
| 10:00 | 3 | Q    Can you say where he is or what he is wearing? |
| 10:00 | 4 | A    He is the person standing up right now, wearing a |
| 10:00 | 5 | striped tie. |
| 10:00 | 6 |        THE COURT:  The record will indicate that the |
| 10:00 | 7 | witness has identified the defendant. |
| 10:00 | 8 |          (Defendant Avenatti identified) |
| 10:00 | 9 | BY MR. SAGEL: |
| 10:00 | 10 | Q    We looked at those wires incoming -- I'm sorry, |
| 10:01 | 11 | outgoing wires where you received one wire for 4 million and |
| 10:01 | 12 | one wire for $146,000 on May 4th, 2018.  Do you recall that? |
| 10:01 | 13 | A    Yes. |
| 10:01 | 14 | Q    Did you receive the full amount you were owed at that |
| 10:01 | 15 | time? |
| 10:01 | 16 | A    No.  Only half. |
| 10:01 | 17 | Q    Do you know why you received two separate wires on that |
| 10:01 | 18 | date, one for 4 million and one for $146,000? |
| 10:01 | 19 | A    No. |
| 10:01 | 20 | Q    Do you know why you did not receive your full |
| 10:01 | 21 | $8,146,000 and change? |
| 10:01 | 22 | A    No. |
| 10:01 | 23 | Q    Did defendant tell you at that time why he did not |
| 10:01 | 24 | provide you the full amount? |
| 10:01 | 25 | A    No. |

51

| | | |
|---|---|---|
| 10:02 | 1 | Q    At any time between signing the fee contract with the |
| 10:02 | 2 | defendant and only receiving $4,146,000, did you ever enter |
| 10:02 | 3 | into an agreement with the defendant that would allow him to |
| 10:02 | 4 | keep $4 million of your money? |
| 10:02 | 5 | A    No. |
| 10:02 | 6 | Q    Was there ever an explanation provided to you from the |
| 10:02 | 7 | defendant of why you did not get your remaining $4 million? |
| 10:02 | 8 | A    No. |
| 10:02 | 9 | Q    After receiving the 4 million -- the two wire transfers |
| 10:02 | 10 | totaling approximately $4.146 million, did you ever receive |
| 10:03 | 11 | the additional $4 million? |
| 10:03 | 12 | A    No. |
| 10:03 | 13 | Q    After you didn't receive that money, did you do |
| 10:03 | 14 | anything thereafter? |
| 10:03 | 15 | A    Yes.  I contacted a lawyer. |
| 10:03 | 16 | Q    And did you eventually bring this information to |
| 10:03 | 17 | anybody else? |
| 10:03 | 18 | A    Yes.  We brought it to the police, and my lawyer did |
| 10:03 | 19 | the best he could to try and get my money back. |
| 10:03 | 20 | Q    At any point -- I already asked up to May 4th.  At any |
| 10:03 | 21 | point after May 4th did defendant ever provide an |
| 10:03 | 22 | explanation to you of what happened to the additional |
| 10:04 | 23 | $4 million? |
| 10:04 | 24 | A    No. |
| 10:04 | 25 | Q    Did he ever say to you he was entitled to that |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

52

| | | |
|---|---|---|
| 10:04 | 1 | $4 million? |
| 10:04 | 2 | A    No. |
| 10:04 | 3 | Q    You stated that you hired defendant to get out of a |
| 10:04 | 4 | stressful and an emotional situation.  When you did not |
| 10:04 | 5 | receive your $4 million, how would you describe your |
| 10:04 | 6 | situation at that point? |
| 10:04 | 7 | A    I was absolutely devastated. |
| 10:04 | 8 | Q    And why is that? |
| 10:04 | 9 | A    Because the defendant was someone I believed to be |
| 10:04 | 10 | trustworthy, who upheld the law, who was supposed to protect |
| 10:04 | 11 | me.  I hired him to protect me.  And the idea and the fact |
| 10:05 | 12 | that he took my money like that, it was almost hard to |
| 10:05 | 13 | swallow.  But when the reality hit me, I was just -- I was |
| 10:05 | 14 | utterly shattered. |
| 10:05 | 15 |            MR. SAGEL:  No further questions, Your Honor. |
| 10:05 | 16 |            THE COURT:  Mr. Avenatti. |
| 10:05 | 17 |                       CROSS-EXAMINATION |
| 10:06 | 18 | BY MR. AVENATTI: |
| 10:06 | 19 | Q    Ms. Phan, good morning. |
| 10:06 | 20 |            You understand you're under oath, right? |
| 10:06 | 21 | A    Yes. |
| 10:06 | 22 | Q    And you understand that that oath requires you to tell |
| 10:06 | 23 | the truth, the whole truth, and nothing but the truth, |
| 10:06 | 24 | right? |
| 10:06 | 25 | A    Yes. |

```
10:06   1   Q    And before you began answering questions by Mr. Sagel,
10:07   2   you understood that the importance of that oath applied the
10:07   3   same importance to every answer you provided, correct?
10:07   4   A    Yes.
10:07   5   Q    And each of the answers that you provided had the same
10:07   6   degree of truth in your mind, correct?
10:07   7   A    Yes.
10:07   8   Q    And before we get into any of my questions, is there
10:07   9   any answer that you provided to Mr. Sagel that was untrue in
10:07  10   any way, shape, or form?
10:07  11   A    No.
10:07  12   Q    Everything that you just testified to this jury was a
10:07  13   hundred percent accurate to the best of your knowledge; is
10:07  14   that correct?
10:07  15            MR. SAGEL:  Asked and answered.
10:07  16            THE COURT:  Sustained.
10:08  17            THE WITNESS:  Yes.
10:08  18   BY MR. AVENATTI:
10:08  19   Q    I have a number of questions that I want to ask you,
10:08  20   but why don't we start with Exhibit 294.
10:08  21            MR. AVENATTI:  Maybe we can blow up the top third
10:08  22   of the page -- actually the very top of the page down to
10:08  23   about that same location.
10:08  24   BY MR. AVENATTI:
10:08  25   Q    Can you see that, Ms. Phan?
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

54

10:09   1    A    Yes.

10:09   2    Q    And Mr. Sagel asked you why you sent the text message

10:09   3    that said, "Michael, it's Michelle."  Do you recall that

10:09   4    question?

10:09   5    A    Yes.

10:09   6    Q    And your answer was, "because he didn't have my phone

10:09   7    number, and I didn't have his."  Do you recall giving that

10:09   8    answer?

10:09   9    A    Yes.

10:09   10   Q    And that was truthful, correct?

10:09   11   A    Yes.

10:10   12   Q    This is another version of 294.  Can you see that?

10:10   13   A    Yes.

10:10   14   Q    Now, did you have an iPhone around this time period?

10:10   15   A    Yes.

10:11   16   Q    Do you see these little hash marks that I'm pointing to

10:11   17   on the elmo?

10:11   18   A    Yes.

10:11   19   Q    Are you familiar with -- well, strike that.  As of

10:11   20   April 23 of 2018, were you familiar with the fact that when

10:11   21   you had messages that you were scrolling through on your

10:11   22   iPhone, sometimes it would take the messages time to load

10:11   23   and there would be a little circle with hash marks like the

10:11   24   phone was working before you could get to the text messages

10:11   25   above?  Were you familiar with that concept, Ms. Phan, in

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:11 | 1 | 2018?  Yes or no? |
| 10:11 | 2 | A    Yes. |
| 10:12 | 3 | Q    And you didn't forget about that before you took the |
| 10:12 | 4 | stand today, right?  You remain aware of that, right? |
| 10:12 | 5 | A    Yes. |
| 10:12 | 6 | Q    Do you still have an iPhone? |
| 10:12 | 7 | A    Yes. |
| 10:12 | 8 | MR. AVENATTI:  Your Honor, can I approach? |
| 10:12 | 9 | THE COURT:  You may. |
| 10:12 | 10 | (Document handed to the witness) |
| 10:12 | 11 | MR. AVENATTI:  Your Honor, at this time the |
| 10:13 | 12 | defense offers the first page of Defense Exhibit 1081 as |
| 10:13 | 13 | impeachment. |
| 10:13 | 14 | MR. SAGEL:  Still lacks foundation, Your Honor. |
| 10:13 | 15 | He hasn't asked a question about it. |
| 10:13 | 16 | THE COURT:  Lay the foundation. |
| 10:13 | 17 | BY MR. AVENATTI: |
| 10:13 | 18 | Q    Ms. Phan, please take a look at the first page of |
| 10:13 | 19 | Defense Exhibit 1081.  Do you have it there? |
| 10:13 | 20 | A    Yes. |
| 10:13 | 21 | Q    Isn't it true that seven months before you sent the |
| 10:14 | 22 | text message that Mr. Sagel asked you about and to which you |
| 10:14 | 23 | responded that we didn't have each other's phone numbers, |
| 10:14 | 24 | isn't it true that seven months before you and I had texted |
| 10:14 | 25 | one another on these exact phone numbers?  Isn't that true? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

56

| | | |
|---|---|---|
| 10:14 | 1 | A    This isn't a yes-or-no answer, but I will answer |
| 10:14 | 2 | truthfully. |
| 10:14 | 3 | Q    I'd like a yes or no.  Strike the question. |
| 10:14 | 4 |      Ms. Phan, taking a look at defense Exhibit 1081, |
| 10:14 | 5 | the first page, does that page reflect text messages that |
| 10:14 | 6 | were sent between me and you in September of 2017?  Yes or |
| 10:14 | 7 | no? |
| 10:15 | 8 | A    Yes.  This reflects that, but I never saved the number. |
| 10:15 | 9 |      MR. AVENATTI:  Move to strike. |
| 10:15 | 10 |      THE COURT:  She answered the question. |
| 10:15 | 11 |      MR. AVENATTI:  Your Honor, at this point I would |
| 10:15 | 12 | like to publish the first page of 1081. |
| 10:15 | 13 |      THE COURT:  Do you want to offer it first? |
| 10:15 | 14 |      MR. AVENATTI:  I'm sorry.  I'd like to offer -- |
| 10:15 | 15 |      THE COURT:  The first page of 1081 will be |
| 10:15 | 16 | received. |
| 10:15 | 17 |      (Exhibit 1081, page 1, received in evidence) |
| 10:15 | 18 |      MR. AVENATTI:  Actually, Ms. Hernandez, do we have |
| 10:15 | 19 | 1081?  I think it will be easier for the jury.  Can we blow |
| 10:16 | 20 | up the very top all the way down to the first text message |
| 10:16 | 21 | that Mr. Sagel asked the witness about. |
| 10:16 | 22 | BY MR. AVENATTI: |
| 10:16 | 23 | Q    Ms. Phan, can you see that? |
| 10:16 | 24 | A    Yes. |
| 10:16 | 25 | Q    On September 14th of 2017, you sent me a text message |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

57

| | | |
|---|---|---|
| 10:16 | 1 | that said, "NYT editor is secured," correct? |
| 10:16 | 2 | A     Yes. |
| 10:16 | 3 | Q     And by NYT, you were referring to the New York Times, |
| 10:16 | 4 | right? |
| 10:16 | 5 | A     Yes. |
| 10:16 | 6 | Q     You then sent me a text message that read, "My friend |
| 10:16 | 7 | personally knows her," with an okay emoji, right? |
| 10:17 | 8 | A     Yes. |
| 10:17 | 9 | Q     You then sent me a text message that says, "Let them |
| 10:17 | 10 | know that," right? |
| 10:17 | 11 | A     Yes. |
| 10:17 | 12 | Q     And when you sent this text message from your phone to |
| 10:17 | 13 | my phone seven months before the message Mr. Sagel asked you |
| 10:17 | 14 | about, when you sent me this message that says, "Let them |
| 10:17 | 15 | know that," the "them" that you were referring to was IPSY, |
| 10:17 | 16 | right? |
| 10:17 | 17 | A     I don't recall. |
| 10:17 | 18 | Q     Well, do you recall securing a New York Times editor |
| 10:17 | 19 | for use in you going after IPSY in September of 2017 despite |
| 10:18 | 20 | your testimony on direct from Mr. Sagel that this whole |
| 10:18 | 21 | thing was going to be easy? |
| 10:18 | 22 | MR. SAGEL:  Objection, Your Honor.  Your Honor's |
| 10:18 | 23 | underlying facts to support it. |
| 10:18 | 24 | THE COURT:  Sustained. |
| 10:18 | 25 | THE WITNESS:  No.  I -- |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 10:18 | 1 | THE COURT: Just a minute. When I sustain the |
| 10:18 | 2 | objection, you don't get to answer. Okay? |
| 10:18 | 3 | BY MR. AVENATTI: |
| 10:18 | 4 | Q   Ms. Phan, you testified under oath to this jury that |
| 10:18 | 5 | your exit from IPSY, you understood that it was going to be |
| 10:18 | 6 | easy. You knew in September of 2017 that it was going to be |
| 10:18 | 7 | anything but easy; isn't that true? |
| 10:18 | 8 | A   No, because you said it would be easy. |
| 10:18 | 9 | Q   Ms. Phan, did you conclude in September of 2017 that |
| 10:18 | 10 | you needed to involve the New York Times in order to assist |
| 10:18 | 11 | you in your exit from IPSY? Yes or no? |
| 10:18 | 12 | MR. SAGEL: Same objection, Your Honor. He's |
| 10:18 | 13 | repeating a sustained objection. |
| 10:18 | 14 | THE COURT: Overruled. |
| 10:18 | 15 | MR. AVENATTI: Can I have the question read back, |
| 10:18 | 16 | please. |
| 10:18 | 17 | THE COURT: Yes. |
| 10:18 | 18 | (Record read) |
| 10:18 | 19 | THE WITNESS: This was so long ago. And quite |
| 10:19 | 20 | honestly, I don't remember all of the nuances and details of |
| 10:19 | 21 | my exit with IPSY. |
| 10:19 | 22 | BY MR. AVENATTI: |
| 10:19 | 23 | Q   So you can't answer that question yes or no; is that |
| 10:19 | 24 | right? |
| 10:19 | 25 | A   What question? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

59

| | | |
|---|---|---|
| 10:19 | 1 | Q    The question that we just had read back. |
| 10:19 | 2 | A    Ask it again. |
| 10:19 | 3 |          MR. AVENATTI:  Can I have it read back, Your |
| 10:19 | 4 | Honor? |
| 10:19 | 5 |          THE COURT:  Yes. |
| 10:19 | 6 |          (Record read) |
| 10:19 | 7 |          THE WITNESS:  No. |
| 10:19 | 8 | BY MR. AVENATTI: |
| 10:20 | 9 | Q    Now, I want to ask you some questions about 294.  And |
| 10:20 | 10 | in particular, do you know where the government got 294 |
| 10:20 | 11 | from? |
| 10:21 | 12 | A    Yes.  They got it from me. |
| 10:21 | 13 | Q    Did you provide your phone to the government to get a |
| 10:21 | 14 | forensic image so they could capture all of the text |
| 10:21 | 15 | messages between me and you?  Yes or no? |
| 10:21 | 16 | A    No.  These are screencaps. |
| 10:21 | 17 | Q    Screencaps? |
| 10:21 | 18 | A    Screen captures. |
| 10:21 | 19 | Q    So you gave the government your phone and then they |
| 10:21 | 20 | screen captured text messages from it, and that's how they |
| 10:21 | 21 | got the screen captures?  Is that how it happened, Ms. Phan? |
| 10:21 | 22 | Yes or no? |
| 10:21 | 23 | A    No.  I screen captured them. |
| 10:22 | 24 | Q    So you determined the text messages that you thought |
| 10:22 | 25 | were relevant or important.  You screen captured them and |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
10:22   1   then you gave them to the government; is that true?
10:22   2   A    No.  I screen captured everything I had in my phone,
10:22   3   and I did not see the number.
10:22   4          MR. AVENATTI:  Move to strike everything after no,
10:22   5   Your Honor, as nonresponsive.
10:22   6          THE COURT:  Denied except for the very last part.
10:22   7   BY MR. AVENATTI:
10:22   8   Q    So Exhibit 294 was everything you had?  I think that's
10:22   9   what you just testified to, correct?
10:22   10  A    Yes.
10:23   11  Q    Yes?
10:23   12  A    Yes, this is everything I had.
10:23   13  Q    You're certain about that, right?
10:23   14  A    I was.
10:23   15  Q    And you're as certain about that as everything else you
10:23   16  testified to, correct?
10:23   17  A    Yes.
10:23   18  Q    Okay.
10:23   19  A    I would have sent them everything that was on there.
10:23   20          MR. AVENATTI:  Move to strike.
10:23   21          THE COURT:  It will be stricken.
10:23   22          No question pending.  Wait for him to ask a
10:23   23  question, please.
10:23   24  BY MR. AVENATTI:
10:24   25  Q    This is the last page of 294.  Do you see that?  It
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:24 | 1 | says 3 of 3 at the bottom? |
| 10:24 | 2 | A    Yes. |
| 10:24 | 3 | Q    These are more text messages between me and you, |
| 10:24 | 4 | correct? |
| 10:24 | 5 | A    I don't understand the question. |
| 10:24 | 6 | Q    These are more text messages between me and you, |
| 10:24 | 7 | correct?  Yes or no? |
| 10:24 | 8 | A    It's not a yes or no because you're talking about the |
| 10:24 | 9 | crop?  I just need clarification on your question. |
| 10:24 | 10 | Q    I am talking about these text messages right there. |
| 10:24 | 11 | A    Those, yes. |
| 10:24 | 12 | Q    Yes.  Those are more text messages between me and you, |
| 10:24 | 13 | correct? |
| 10:24 | 14 | A    Yes. |
| 10:24 | 15 | Q    Okay.  And you gave the government this page, correct? |
| 10:25 | 16 | A    Yes. |
| 10:25 | 17 | Q    Please turn to page 3 of 5 of Exhibit 1081. |
| 10:25 | 18 | MR. SAGEL:  Your Honor -- |
| 10:25 | 19 | MR. AVENATTI:  I haven't even asked the question |
| 10:25 | 20 | yet.  Let me ask the question, please. |
| 10:26 | 21 | MR. SAGEL:  -- we would stipulate -- |
| 10:26 | 22 | MR. AVENATTI:  I'm in the middle of my |
| 10:26 | 23 | cross-examination, Mr. Sagel.  Let me continue. |
| 10:26 | 24 | MR. SAGEL:  To move this along, Your Honor, we |
| 10:26 | 25 | would stipulate to the exhibit other than the fact that it |

| | | |
|---|---|---|
| 10:26 | 1 | hasn't redacted out personal identifiers. |
| 10:26 | 2 | BY MR. AVENATTI: |
| 10:26 | 3 | Q    Have you turned to page 3 of 5 of Exhibit 1081? |
| 10:26 | 4 | A    Yes. |
| 10:26 | 5 | THE COURT:  You need to offer it first. |
| 10:26 | 6 | MR. AVENATTI:  This is already in evidence, Your |
| 10:26 | 7 | Honor. |
| 10:26 | 8 | THE COURT:  I received page 1 of 1081. |
| 10:26 | 9 | MR. AVENATTI:  We're talking about two different |
| 10:26 | 10 | exhibits.  When I said this, I'm referring to what I just |
| 10:26 | 11 | put on the elmo, which is 294.  I'm going to compare the |
| 10:26 | 12 | two, and then I'm going to lay the foundation, and then I'm |
| 10:26 | 13 | going to try to admit it. |
| 10:26 | 14 | THE COURT:  That's fine. |
| 10:26 | 15 | MR. AVENATTI:  Okay. |
| 10:26 | 16 | BY MR. AVENATTI: |
| 10:27 | 17 | Q    Now, 294, do you see the text message that says "On |
| 10:27 | 18 | way?" |
| 10:27 | 19 | A    Yes. |
| 10:27 | 20 | Q    On 1081 on page 3 of 5, do you see the text message |
| 10:27 | 21 | that says "On way?" |
| 10:27 | 22 | A    Yes. |
| 10:27 | 23 | Q    And then there are messages underneath that text |
| 10:27 | 24 | message, and those are text messages that you and I |
| 10:27 | 25 | exchanged in 2018; isn't that true?  Yes or no? |

| | | |
|---|---|---|
| 10:27 | 1 | A    Yes. |
| 10:27 | 2 | MR. AVENATTI:  Your Honor, the defense offers the |
| 10:27 | 3 | entirety of 1081 at this time. |
| 10:27 | 4 | MR. SAGEL:  Which we stipulated to three minutes |
| 10:28 | 5 | ago, Your Honor. |
| 10:28 | 6 | THE COURT:  1081 will be received in full. |
| 10:28 | 7 | MR. SAGEL:  Subject to the redactions. |
| 10:28 | 8 | THE COURT:  Subject to the redactions. |
| 10:28 | 9 | (Exhibit 1081 received in evidence) |
| 10:28 | 10 | BY MR. AVENATTI: |
| 10:28 | 11 | Q    Now, just so we're clear, that's 294, right, page 3 |
| 10:28 | 12 | of 3?  Do you see that? |
| 10:28 | 13 | A    Yes. |
| 10:28 | 14 | Q    Okay.  That's the last page of 294, right? |
| 10:28 | 15 | A    Yes. |
| 10:28 | 16 | MR. AVENATTI:  Actually, Ms. Hernandez, could you |
| 10:28 | 17 | please pull up -- I'm going to switch it over.  Why don't we |
| 10:28 | 18 | start with the last text message that Ms. Phan gave the |
| 10:29 | 19 | government during its investigation, "On way," all the way |
| 10:29 | 20 | to the bottom. |
| 10:29 | 21 | BY MR. AVENATTI: |
| 10:29 | 22 | Q    These are additional text messages beyond what was |
| 10:29 | 23 | included within 294; isn't that true? |
| 10:29 | 24 | A    Yes. |
| 10:29 | 25 | Q    Let's go to the next page.  These are yet additional |

```
10:29   1    text messages beyond what was included in 294, correct?
10:30   2    A    Correct.
10:30   3    Q    Why don't we go to the next page.  These are additional
10:30   4    text messages beyond what was included in 294, correct?
10:30   5    A    Yes.
10:30   6            MR. AVENATTI:  Now is a good time for a break if
10:30   7    that's acceptable to Your Honor.
10:30   8            THE COURT:  We will take the mid-morning break
10:30   9    here, ladies and gentlemen.  Please remember the admonition
10:30  10    not to discuss the case with anyone and not to form any
10:30  11    opinions on the issues in the case until it is submitted to
10:30  12    you.  And please do not do any research.
10:30  13            So we will be in recess for 15 minutes.
10:30  14                (Recess taken at 10:30 a.m.;
10:30  15                 proceedings resumed at 10:47 a.m.)
10:40  16                (Jury not present)
10:47  17            MR. AVENATTI:  Your Honor, I would like to raise
10:47  18    one quick issue before the jury is brought back in.  I would
10:47  19    like an instruction from the Court to the witness just to
10:47  20    answer the question that is asked so we don't have repeated
10:47  21    efforts -- this occurred also on direct -- with need to
10:47  22    strike portions of the answer.  Please.
10:47  23            THE COURT:  Let's see how it goes.
10:47  24            (Jury present)
10:50  25            THE COURT:  Mr. Avenatti.
```

65

```
10:50   1              MR. AVENATTI:  Ms. Hernandez, could we have 1081
10:50   2   again, please.
10:50   3   BY MR. AVENATTI:
10:50   4   Q    Ms. Phan, Exhibit 1081 that the defense moved into
10:50   5   evidence, are these all of the text messages between me and
10:50   6   you in 2018 to the best of your knowledge?
10:50   7   A    This isn't a yes-or-no answer, but I will give you my
10:50   8   honest answer.
10:50   9              MR. AVENATTI:  Move to strike.
10:50  10              THE COURT:  Ms. Phan, please just listen to the
10:50  11   question and answer that question.  Okay?
10:50  12   BY MR. AVENATTI:
10:51  13   Q    Ms. Phan, are the text messages reflected in defense
10:51  14   Exhibit 1081 all of the text messages from 2018 and 2017
10:51  15   between me and you to the best of your knowledge?  Yes or
10:51  16   no?
10:51  17   A    To my knowledge, yes, but I changed my phones.  So
10:51  18   sometimes I --
10:51  19              MR. AVENATTI:  After yes, move to strike.
10:51  20              THE COURT:  It will be stricken.  Please just
10:51  21   answer the question.
10:52  22              MR. AVENATTI:  Your Honor, can I approach?
10:52  23              THE COURT:  You may.
10:52  24              (Document handed to the witness)
       25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:52   1   BY MR. AVENATTI:

10:52   2   Q   Ms. Phan, I have handed you what has been marked as

10:52   3   Exhibit 1083.  Do you have Exhibit 1083 in front of you?

10:52   4   A   Yes.

10:52   5   Q   Does Exhibit 1083 represent yet additional text

10:53   6   messages between me and you that you did not provide the

10:53   7   government?  Yes or no?

10:53   8   A   I don't remember these text messages.  No.  I don't

10:53   9   have them on my phone.

10:53  10          MR. AVENATTI:  Move to strike everything after no

10:53  11   as nonresponsive, Your Honor.

10:53  12          THE COURT:  Everything after no will be stricken.

10:53  13   BY MR. AVENATTI:

10:53  14   Q   Do you dispute that you sent and received the text

10:53  15   messages that are reflected as part of Exhibit 1083?

10:53  16   A   Can you ask it one more time.

10:54  17   Q   Sure.

10:54  18          MR. AVENATTI:  Could I have it read back, please?

10:54  19          THE COURT:  Yes.

10:54  20          (Record read)

10:54  21          THE WITNESS:  I truthfully don't remember these

10:54  22   messages.

10:54  23   BY MR. AVENATTI:

10:54  24   Q   My question is:  Do you dispute the accuracy of 1083 as

10:54  25   it reflects text messages?

67

| | | |
|---|---|---|
| 10:54 | 1 | MR. SAGEL:  Lacks foundation, Your Honor. |
| 10:54 | 2 | THE COURT:  Overruled. |
| 10:54 | 3 | THE WITNESS:  No. |
| 10:54 | 4 | MR. AVENATTI:  Your Honor, at this time the |
| 10:54 | 5 | defense offers 1083 into evidence. |
| 10:54 | 6 | MR. SAGEL:  Objection.  Lacks foundation, Your |
| 10:54 | 7 | Honor. |
| 10:54 | 8 | THE COURT:  Lay the foundation. |
| 10:54 | 9 | BY MR. AVENATTI: |
| 10:54 | 10 | Q    Ms. Phan, in 2017 isn't it true that in fact you and me |
| 10:55 | 11 | and Mr. Long Tran would communicate by text message as it |
| 10:55 | 12 | relates to your matter? |
| 10:55 | 13 | A    Yes. |
| 10:55 | 14 | Q    We would have in some instances group text exchanges, |
| 10:55 | 15 | right, the three of us?  Correct? |
| 10:55 | 16 | A    Correct. |
| 10:55 | 17 | Q    And in September of 2017 in connection with your exit |
| 10:55 | 18 | from IPSY, the three of us had text message exchanges, |
| 10:55 | 19 | correct? |
| 10:55 | 20 | A    Yes. |
| 10:55 | 21 | Q    And the text messages reflected in Exhibit 1083 are |
| 10:55 | 22 | some of those text message exchanges; aren't they? |
| 10:55 | 23 | A    I don't remember these text messages, though, that far |
| 10:55 | 24 | back.  And I don't have them on the phone because I have a |
| 10:56 | 25 | new phone. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:56 | 1 | MR. AVENATTI:  Move to strike everything after far |
| 10:56 | 2 | back as nonresponsive. |
| 10:56 | 3 | THE COURT:  It will be stricken. |
| 10:56 | 4 | BY MR. AVENATTI: |
| 10:56 | 5 | Q    Is it your testimony, Ms. Phan, that you have no |
| 10:56 | 6 | recollection of sending the text messages reflected in |
| 10:56 | 7 | Exhibit 1081 to me and Mr. Tran in September of 2017?  Is |
| 10:56 | 8 | that your testimony? |
| 10:56 | 9 | MR. SAGEL:  Objection.  Asked and answered twice. |
| 10:56 | 10 | THE COURT:  Overruled. |
| 10:56 | 11 | THE WITNESS:  Can you ask your question again? |
| 10:56 | 12 | (Record read) |
| 10:56 | 13 | THE WITNESS:  Yes. |
| 10:57 | 14 | BY MR. AVENATTI: |
| 10:57 | 15 | Q    Do you have a recollection of ever directing Mr. Long |
| 10:57 | 16 | Tran to send any message to me on your behalf? |
| 10:57 | 17 | A    No. |
| 10:57 | 18 | MR. AVENATTI:  Your Honor, can I approach? |
| 10:57 | 19 | THE COURT:  You may. |
| 10:57 | 20 | (Document handed to the witness) |
| 10:57 | 21 | BY MR. AVENATTI: |
| 10:58 | 22 | Q    Ms. Phan, I have showed you what we have marked as |
| 10:58 | 23 | Exhibit 1082.  Does that refresh your recollection that on |
| 10:58 | 24 | April 12th, 2018, you had Mr. Tran send me a video from you |
| 10:58 | 25 | on that date?  Yes or no? |

69

| | | |
|---|---|---|
| 10:59 | 1 | A    No, I didn't have Mr. Tran send these videos to you. |
| 10:59 | 2 | These are from our Instagram stories. |
| 10:59 | 3 | MR. AVENATTI:  Move to strike after the first |
| 10:59 | 4 | portion of the answer as nonresponsive, Your Honor. |
| 10:59 | 5 | THE COURT:  Everything after, "No, I didn't have |
| 10:59 | 6 | Mr. Tran send these videos to you," will be stricken. |
| 10:59 | 7 | MR. AVENATTI:  Thank you, Your Honor. |
| 10:59 | 8 | BY MR. AVENATTI: |
| 10:59 | 9 | Q    On April 12th, 2018, you were aware that Mr. Tran had |
| 10:59 | 10 | provided to me a video from you with you blowing me a kiss |
| 10:59 | 11 | with the words, "Thank you, Michael," at the top; isn't that |
| 10:59 | 12 | true?  Yes or no? |
| 11:00 | 13 | A    I don't remember sending him any videos, no. |
| 11:00 | 14 | Q    Ms. Phan, did you ever create a video on April 12th of |
| 11:00 | 15 | 2018 in which you blew me a kiss and said, "Thank you, |
| 11:00 | 16 | Michael," with a heart emoji?  Yes or no? |
| 11:01 | 17 | A    I recall making an Instagram video story of my birthday |
| 11:01 | 18 | that day, and this was on my story. |
| 11:01 | 19 | MR. AVENATTI:  Move to strike, Your Honor. |
| 11:01 | 20 | THE COURT:  It will be stricken. |
| 11:01 | 21 | MR. AVENATTI:  May I have the question read back. |
| 11:01 | 22 | BY MR. AVENATTI: |
| 11:01 | 23 | Q    I simply want an answer to my question, please. |
| 11:01 | 24 | (Record read) |
| 11:01 | 25 | THE WITNESS:  Yes.  I created an Instagram |

| | | |
|---|---|---|
| 11:01 | 1 | story -- |
| 11:01 | 2 | MR. AVENATTI:  Move to strike everything after yes |
| 11:01 | 3 | as nonresponsive. |
| 11:01 | 4 | THE COURT:  It will be stricken. |
| 11:01 | 5 | Ms. Phan, please listen to the question and answer |
| 11:02 | 6 | just the question.  Okay?  Please say yes if you understand. |
| 11:02 | 7 | THE WITNESS:  Yes. |
| 11:02 | 8 | THE COURT:  Okay. |
| 11:02 | 9 | BY MR. AVENATTI: |
| 11:02 | 10 | Q    I want to shift gears to the resolution of your dispute |
| 11:02 | 11 | with IPSY.  The resolution of your dispute which I |
| 11:02 | 12 | negotiated on your behalf involved the payment to you |
| 11:02 | 13 | through multiple disbursements; is that correct? |
| 11:02 | 14 | A    Yes. |
| 11:03 | 15 | Q    And if we go to Exhibit 268 that Mr. Sagel asked you |
| 11:03 | 16 | about, this is the Common Stock Repurchase Agreement.  Do |
| 11:03 | 17 | you recall that? |
| 11:03 | 18 | A    Yes. |
| 11:03 | 19 | Q    And you read this document before you signed it, right? |
| 11:03 | 20 | A    Yes. |
| 11:03 | 21 | Q    And it was your practice in 2018 and 2017 to read any |
| 11:03 | 22 | document before you signed it, correct? |
| 11:04 | 23 | A    No.  I had Long read it. |
| 11:04 | 24 | Q    So sometimes you wouldn't even read things that you |
| 11:04 | 25 | signed?  You would just have Long read it for you, and then |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 11:04 | 1 | if he told you to sign it, you would just sign it? |
| 11:04 | 2 | A    No.  I would read them.  But if I had questions, he |
| 11:04 | 3 | would explain. |
| 11:04 | 4 | Q    Okay.  So I'll go back to my question I asked you a |
| 11:04 | 5 | couple questions ago.  It was your custom and practice in |
| 11:04 | 6 | 2017 and 2018 that before you would sign a document, you |
| 11:04 | 7 | would read it, right? |
| 11:04 | 8 | A    Yes. |
| 11:04 | 9 | Q    Now, if we go to section 6.11 of this document, page 9 |
| 11:04 | 10 | of 14, can you see that? |
| 11:05 | 11 | A    Yes. |
| 11:05 | 12 | Q    And it talks about this agreement.  You understood that |
| 11:05 | 13 | to mean the Common Stock Repurchase Agreement that's on the |
| 11:05 | 14 | screen, right? |
| 11:05 | 15 | A    Yes. |
| 11:05 | 16 | Q    And then it's got a reference to a separation |
| 11:05 | 17 | agreement, an asset purchase agreement, and other agreements |
| 11:05 | 18 | contemplated hereby.  Do you see that? |
| 11:05 | 19 | A    Yes. |
| 11:05 | 20 | Q    Do you have a recollection that in connection with this |
| 11:05 | 21 | negotiation that I led on your behalf, that there were a |
| 11:05 | 22 | number of agreements that you signed in connection with |
| 11:05 | 23 | resolving your dispute with IPSY beyond this common stock |
| 11:05 | 24 | repurchase agreement? |
| 11:06 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:06 | 1 | Q    I want to shift gears for a moment if I could.  I think |
| 11:06 | 2 | you told Mr. Sagel that your goals, you wanted to exit the |
| 11:06 | 3 | company and get EM Cosmetics.  That's what you told me when |
| 11:06 | 4 | we first met, right? |
| 11:06 | 5 | A    From my recollection, yes. |
| 11:06 | 6 | Q    And in connection with the negotiation that I led on |
| 11:06 | 7 | your behalf, were you able to accomplish those two goals; |
| 11:06 | 8 | namely, exit the company, get paid for your equity, and get |
| 11:06 | 9 | EM Cosmetics? |
| 11:06 | 10 | A    Yes. |
| 11:07 | 11 | Q    And you continued to run EM Cosmetics now?  Is that |
| 11:07 | 12 | what I understood from your direct testimony? |
| 11:07 | 13 | A    Yes. |
| 11:07 | 14 | Q    Other than getting paid for your equity in the company |
| 11:07 | 15 | and getting control of EM Cosmetics, did you receive any |
| 11:07 | 16 | other benefits in connection with the transaction? |
| 11:07 | 17 | A    Could you ask that question again, please. |
| 11:07 | 18 | Q    Well, strike that.  We established that in connection |
| 11:07 | 19 | with you exiting IPSY, you got your money and you got EM |
| 11:07 | 20 | Cosmetics, right? |
| 11:07 | 21 | A    Yes. |
| 11:08 | 22 | Q    Did you get anything else other than those two things? |
| 11:08 | 23 | A    No. |
| 11:08 | 24 | Q    I want to make sure that I understand your testimony. |
| 11:08 | 25 | If we go to Exhibit 266, this was the attorney/client fee |

11:09  1    contract that you were asked about.

11:09  2            MR. AVENATTI:  Could we please have the second

11:09  3    page -- third page, please.

11:09  4    BY MR. AVENATTI:

11:09  5    Q    Do you remember Mr. Sagel asked you about this?

11:09  6    A    Yes.

11:09  7    Q    And if we go to the last page, that's your signature on

11:09  8    the document, correct?

11:09  9    A    Yes.

11:09  10   Q    And according to you this document, Exhibit 266,

11:09  11   reflected our deal.  And by our deal, what I'm talking about

11:10  12   is the deal by which I agreed to represent you and Mr. Tran

11:10  13   and the deal by which you agreed to compensate me for my

11:10  14   services, right?

11:10  15   A    Yes.

11:10  16   Q    And it was never amended in any way, shape, or form;

11:10  17   was it?

11:10  18   A    No.

11:10  19   Q    It wasn't amended in writing, was it, to the best of

11:10  20   your knowledge?

11:10  21   A    To the best of my knowledge, Long took care of this

11:10  22   mostly.

11:10  23   Q    Well, you answered a lot of questions on direct

11:10  24   examination from Mr. Sagel, and I don't recall you saying

11:10  25   that Long took care of things in response to those

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

74

| | | |
|---|---|---|
| 11:10 | 1 | questions.  So let me just ask my questions. |
| 11:10 | 2 | MR. SAGEL:  Objection.  Argumentative and doesn't |
| 11:10 | 3 | ask a question. |
| 11:10 | 4 | MR. AVENATTI:  The statement will be stricken. |
| 11:10 | 5 | Questions, please. |
| 11:10 | 6 | BY MR. AVENATTI: |
| 11:10 | 7 | Q    Ms. Phan, are you aware of any written amendment to |
| 11:11 | 8 | Exhibit 266? |
| 11:11 | 9 | A    Can you clarify? |
| 11:11 | 10 | Q    No. |
| 11:11 | 11 | A    No? |
| 11:11 | 12 | Q    Strike the question.  Ms. Phan, this will go a lot |
| 11:11 | 13 | easier if I ask questions and you just provide answers.  So |
| 11:11 | 14 | here's my question. |
| 11:11 | 15 | A    I don't understand your question, sir. |
| 11:11 | 16 | Q    Well, I don't want you to answer anything you don't |
| 11:11 | 17 | understand. |
| 11:11 | 18 | Here's my question.  I think Mr. Sagel asked you |
| 11:11 | 19 | on direct whether 266 had ever been amended.  Do you |
| 11:11 | 20 | remember that? |
| 11:11 | 21 | A    Yes. |
| 11:11 | 22 | Q    Okay.  So I have two follow-up questions.  Are you |
| 11:11 | 23 | aware of any writing that amended 266, anything in writing? |
| 11:11 | 24 | I'm assuming the answer is no, but I want to clarify. |
| 11:11 | 25 | A    I only know of this document.  This is the only |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:12   1   document I'm aware of.

11:12   2   Q    All right.  So you're not aware of any other amendment

11:12   3   in writing, correct?

11:12   4   A    No, not that I can recall.

11:12   5   Q    All right.  Are you aware of any oral amendment or

11:12   6   agreement that amended this agreement?  Are you aware of any

11:12   7   oral conversations between me and you or me and Mr. Tran

11:12   8   that amended 266?

11:12   9   A    No.  I only know of this document.  I can't recall of

11:12  10   any oral agreement.

11:12  11   Q    Or amendment?

11:12  12   A    Or amendment.

11:13  13   Q    Now, this agreement was signed in August of 2017.  Do

11:13  14   you recall Mr. Sagel asked you about that?

11:13  15   A    This document?

11:13  16   Q    Yes.

11:13  17   A    Exhibit 266?

11:13  18   Q    Yes.

11:13  19   A    Yes.

11:13  20   Q    Okay.  But we had started working on your exit from

11:13  21   IPSY back in February; isn't that true?

11:13  22   A    Long has more of the details on that.  The nuances I

11:13  23   can't recall.

11:13  24   Q    Well, do you have a recollection that long before

11:13  25   this -- no pun intended -- agreement was signed, 266, me and

| | | |
|---|---|---|
| 11:14 | 1 | my firm had been working on your exit from IPSY? |
| 11:14 | 2 | A    Yes.  We signed this agreement so that you could work |
| 11:14 | 3 | with us. |
| 11:14 | 4 | MR. AVENATTI:  Move to strike as nonresponsive, |
| 11:14 | 5 | Your Honor. |
| 11:14 | 6 | THE COURT:  It will be stricken. |
| 11:14 | 7 | MR. AVENATTI:  Can I have the question read back, |
| 11:14 | 8 | please. |
| 11:14 | 9 | THE COURT:  Yes. |
| 11:14 | 10 | (Record read) |
| 11:14 | 11 | THE WITNESS:  Can you rephrase that question, |
| 11:14 | 12 | please, so I can understand it better. |
| 11:15 | 13 | BY MR. AVENATTI: |
| 11:15 | 14 | Q    Let me try to do it this way.  Are you aware that |
| 11:15 | 15 | Mr. Tran, Long Tran, has sat in that seat and testified in |
| 11:15 | 16 | front of this jury?  Are you aware of that? |
| 11:15 | 17 | MR. SAGEL:  Objection.  Relevance. |
| 11:15 | 18 | THE COURT:  Sustained. |
| 11:15 | 19 | BY MR. AVENATTI: |
| 11:15 | 20 | Q    Ms. Phan, I will represent to you that Mr. Tran |
| 11:15 | 21 | testified that in fact me and my firm had been working on |
| 11:15 | 22 | this matter for about six months before this agreement was |
| 11:15 | 23 | signed.  Do you have any reason to dispute that? |
| 11:15 | 24 | MR. SAGEL:  Objection, Your Honor.  Improper |
| 11:15 | 25 | question. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

77

| | |
|---|---|
| 11:15 | 1 |
| 11:15 | 2 |
| 11:15 | 3 |
| 11:15 | 4 |

11:15   1         THE COURT:  Overruled.

11:15   2         THE WITNESS:  I don't recall any of the details.

11:15   3  He handled most of this.

11:15   4  BY MR. AVENATTI:

11:15   5  Q    So your answer is you don't know if me and my firm had

11:15   6  been working during that six-month time period; is that

11:15   7  right?

11:15   8  A    On which time period?

11:15   9  Q    Between February of 2017 and the execution of this

11:16  10  agreement in August of 2017.

11:16  11  A    Yes.  If it's signed, then, yes, you did start working

11:16  12  in February of 2017.

11:16  13  Q    Now, Mr. Sagel asked you whether you had brought your

11:16  14  complaint to the police.  Do you remember that?

11:16  15  A    Yes.

11:17  16  Q    And you said that you had, right?

11:17  17  A    Yes.

11:17  18  Q    And on November 1st of 2018, you were interviewed by an

11:17  19  investigator from the Newport Beach Police Department; isn't

11:17  20  that true?

11:17  21  A    I don't remember the nuances, but I do remember talking

11:17  22  to the police, yes.

11:17  23  Q    Well, how often are you interviewed by the -- strike

11:17  24  that.  During 2017 through 2019 were you interviewed by the

11:17  25  police often?

| | | |
|---|---|---|
| 11:17 | 1 | A    No, not often. |
| 11:17 | 2 | Q    Okay.  Do you recall on November 1st, 2018, being |
| 11:17 | 3 | interviewed by an Emily Bledstein, an investigator from the |
| 11:17 | 4 | Newport Beach Police Department? |
| 11:18 | 5 | A    I honestly can't recall her name. |
| 11:18 | 6 |           MR. AVENATTI:  Your Honor, can I approach? |
| 11:18 | 7 |           THE COURT:  You may. |
| 11:18 | 8 | BY MR. AVENATTI: |
| 11:18 | 9 | Q    By the way, before I do, Mr. Sagel didn't ask you any |
| 11:18 | 10 | questions about that interview on direct; did he? |
| 11:18 | 11 | A    The question about what?  Asking me about what? |
| 11:18 | 12 | Q    About the interview that you gave to the Newport Beach |
| 11:18 | 13 | Police Department.  He didn't ask you any of those questions |
| 11:18 | 14 | on direct; did he? |
| 11:18 | 15 |           MR. SAGEL:  Objection, Your Honor, because it's |
| 11:18 | 16 | hearsay. |
| 11:18 | 17 |           THE COURT:  Sustained. |
| 11:18 | 18 |           MR. AVENATTI:  Well, it's not hearsay, but we'll |
| 11:18 | 19 | establish that momentarily, Your Honor. |
| 11:18 | 20 |           (Document handed to the witness) |
| 11:18 | 21 | BY MR. AVENATTI: |
| 11:19 | 22 | Q    Directing your attention to the first page of what has |
| 11:19 | 23 | been marked as 1079, does that refresh your recollection |
| 11:19 | 24 | that on November 1st, 2018, you met with an Emily Bledstein, |
| 11:19 | 25 | an investigator with the Newport Beach Police Department, |

11:19  1    together with two lawyers representing you, Walter Brown and
11:19  2    Andrew Kim?
11:19  3    A    Seeing this, yes, I do.  The memories are coming back
11:19  4    to me.
11:19  5    Q    And are either Mr. Brown or Mr. Kim in the courtroom
11:19  6    today?
11:20  7    A    I don't see them, no.
11:20  8    Q    Now, Ms. Phan, you can set that document aside.  We are
11:20  9    going to get to it, I promise you.
11:20 10         Now, Ms. Phan, do you recall that in connection
11:20 11    with the first set of disbursements made in connection with
11:20 12    your exit from IPSY, that you did not get the money
11:20 13    immediately because you wanted the money sent to Divinium
11:20 14    Labs, LLC?  Do you recall that?
11:20 15    A    No.
11:20 16    Q    Is that not true, what I just said?
11:21 17    A    Long did most of the business dealings, and I entrusted
11:21 18    in him.  And it is true that the money was wired to Divinium
11:21 19    Labs, but we took suggestions from -- I took suggestions
11:21 20    from Long.
11:21 21         MR. AVENATTI:  Move to strike, Your Honor.
11:21 22         THE COURT:  The answer will be stricken except for
11:21 23    the part where she said it was transferred to Divinium Labs.
11:21 24    BY MR. AVENATTI:
11:21 25    Q    Ms. Phan, isn't it true that you were not paid the

11:21    1    money immediately upon its receipt by my law firm due to the

11:21    2    fact that the transfer had to be made to Divinium Labs?

11:21    3    A    How would you define "immediately"?

11:22    4    Q    The next day.

11:22    5    A    No, not the next day.

11:22    6    Q    It was not sent the next day, correct?

11:22    7    A    It was not sent the next day, no.

11:22    8              MR. AVENATTI:  Your Honor, the defense offers a

11:22    9    portion of Exhibit 1079 as impeachment -- page 25, line 23,

11:22   10    through page 26, line 1.

11:22   11              MR. SAGEL:  Could you repeat that?

11:22   12              MR. AVENATTI:  Sure.  Page 25 of the interview,

11:23   13    line 23 -- well, actually line 24, through page 26, line 1,

11:23   14    for impeachment.

11:23   15              MR. SAGEL:  Page 25, line 23 through -- can you

11:23   16    say it again, please.

11:23   17              MR. AVENATTI:  Page 25, line 24, through page 26,

11:23   18    line 1.

11:23   19              THE COURT:  Start at line 23.

11:23   20              MR. SAGEL:  I don't think it's proper in the

11:23   21    manner in which he is asking.  He can ask the question.

11:23   22              MR. AVENATTI:  I did ask the question.  She denied

11:23   23    it.

11:23   24              Can I publish it, Your Honor?

11:24   25              THE COURT:  You may read it.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:24 | 1 | BY MR. AVENATTI: |
| 11:24 | 2 | Q    Ms. Phan, when you were interviewed by the Newport |
| 11:24 | 3 | Beach Police Department, you understood that that was being |
| 11:24 | 4 | recorded by audio, correct? |
| 11:24 | 5 | A    Correct. |
| 11:24 | 6 | Q    And isn't it true that contrary to what you just told |
| 11:24 | 7 | the jury, you told the investigator from the Newport Beach |
| 11:24 | 8 | Police Department, Emily Bledstein, that in fact as it |
| 11:24 | 9 | related to the first payment, you got the money immediately, |
| 11:24 | 10 | like, the next day; isn't that true?  Isn't that what you |
| 11:24 | 11 | told them? |
| 11:24 | 12 | A    I said like the next day, I believe.  I didn't -- |
| 11:24 | 13 | Q    Ms. Phan, please just answer my question. |
| 11:24 | 14 | A    I'm just clarifying. |
| 11:24 | 15 | MR. AVENATTI:  Move to strike, Your Honor. |
| 11:24 | 16 | THE COURT:  It will be stricken. |
| 11:24 | 17 | BY MR. AVENATTI: |
| 11:24 | 18 | Q    Ms. Phan, isn't it true when you were interviewed by |
| 11:24 | 19 | the Newport Beach Police Department, you told them that you |
| 11:24 | 20 | had received the first payment immediately, quote, "like the |
| 11:25 | 21 | next day," closed quote? |
| 11:25 | 22 | A    "Like the next day I believe," closed quote. |
| 11:25 | 23 | MR. AVENATTI:  Move to strike, Your Honor. |
| 11:25 | 24 | THE COURT:  Denied. |
| 11:25 | 25 | BY MR. AVENATTI: |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:25  1   Q    Does your memory generally get better over time?

11:25  2   A    No.  Just this event was so traumatic.

11:25  3              MR. AVENATTI:  Move to strike, Your Honor.

11:25  4              THE COURT:  Everything after no will be stricken.

11:25  5   BY MR. AVENATTI:

11:25  6   Q    Please, Ms. Phan, just answer my questions.

11:25  7         The first interview you gave to law enforcement

11:25  8   was on November 1st of 2018, isn't that true, any law

11:25  9   enforcement?

11:25  10  A    Yes.

11:25  11  Q    Now, this interview that you gave to the Newport Beach

11:25  12  Police Department, that interview generally involved you

11:26  13  answering questions by the investigator as opposed to any

11:26  14  discussion about whether any charges would be brought,

11:26  15  correct?

11:26  16  A    They approached me, asking me --

11:26  17             MR. AVENATTI:  Move to strike.

11:26  18             Can I have the question read back, please.

11:26  19             THE COURT:  Yes.

11:26  20             (Record read)

11:26  21             THE WITNESS:  I don't remember that second part,

11:26  22  if there was any charges.  All I can remember is they just

11:26  23  wanted me to tell the truth, and that's all I did.

11:26  24  BY MR. AVENATTI:

11:26  25  Q    And then following that interview and based in part on

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:27  1    what you learned during that interview from the Newport

11:27  2    Beach Police Department, you then ultimately met with agents

11:27  3    and prosecutors of the federal government, correct?

11:27  4    A    Yes.

11:28  5    Q    And when you met with the investigator from the Newport

11:28  6    Beach Police Department, you understood that you had to be a

11:28  7    hundred percent truthful and honest, right?

11:28  8    A    To the best of my memory, yes.

11:28  9    Q    And were you as truthful and honest with them as you

11:28  10   have been here today testifying?

11:28  11   A    To the best of my memory, yes.

11:28  12   Q    And one of the things that you told the investigator

11:28  13   was that it was my idea to send the second set of

11:28  14   disbursements to my bank account; isn't that true?

11:28  15   A    Where did I say that?  What page?

11:28  16   Q    I haven't asked you about a page.  I'm just asking you

11:29  17   about your recollection.

11:29  18         MR. AVENATTI:  Could I have the question read

11:29  19   back, please.

11:29  20         THE COURT:  Yes.

11:29  21         Mr. Sagel.

11:29  22         MR. SAGEL:  I'll wait to hear it, because I think

11:29  23   it's vague as to form, which is what led to the answer.

11:29  24         THE COURT:  Okay.

11:29  25         Would you read the question back, please.

84

| | | |
|---|---|---|
| 11:29 | 1 | (Record read) |
| 11:29 | 2 | MR. SAGEL:  The vagueness is, is the question |
| 11:29 | 3 | about what she told the investigators, or she's saying |
| 11:29 | 4 | that's true today? |
| 11:29 | 5 | MR. AVENATTI:  Your Honor, I will strike the |
| 11:29 | 6 | question.  I will ask a new question. |
| 11:29 | 7 | THE COURT:  Fine. |
| 11:29 | 8 | BY MR. AVENATTI: |
| 11:29 | 9 | Q    Ms. Phan, isn't it true when you met with the Newport |
| 11:29 | 10 | Beach Police Department, you told the investigator that the |
| 11:29 | 11 | idea to send the second set of disbursement monies to my |
| 11:30 | 12 | bank account, that that was my idea? |
| 11:30 | 13 | A    I don't remember or recall that conversation. |
| 11:30 | 14 | Q    Well, take a look at Exhibit 1079, page 25, lines 17 |
| 11:30 | 15 | through 22. |
| 11:30 | 16 | A    Okay. |
| 11:30 | 17 | Q    Does that refresh your recollection that on |
| 11:30 | 18 | November 1st, you told the Newport Beach police that? |
| 11:30 | 19 | A    If this is what I said, yes. |
| 11:30 | 20 | Q    Well, do you dispute that that's what you said? |
| 11:31 | 21 | A    I don't dispute it, no. |
| 11:31 | 22 | Q    And you told the Newport Beach police that it was my |
| 11:31 | 23 | idea because that's what Mr. Tran had told you, right? |
| 11:31 | 24 | A    I never said on here that this was your idea, though. |
| 11:31 | 25 | MR. AVENATTI:  Your Honor, move to strike as |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:31    1    nonresponsive.

11:31    2            THE COURT:  It will be stricken.

11:31    3    BY MR. AVENATTI:

11:31    4    Q    Did you ever tell, Ms. Phan, the Newport Beach Police

11:31    5    Department in November:  "So, of course, the first person we

11:31    6    contact and we forward the e-mail to is Michael, our lawyer,

11:31    7    because he has been handling this case.  And so he is, like,

11:31    8    great.  They can send me the money.  Wire it to my account,

11:32    9    and I'll wire it to you guys."

11:32   10            Did you tell the Newport Beach Police Department

11:32   11    that in November of 2018?

11:32   12    A    Yes, I said that.

11:32   13    Q    Take a look at Exhibit 273 for me.

11:32   14    A    (Witness complies.)

11:32   15    Q    When you made that statement to the Newport Beach

11:32   16    Police Department, was it true?

11:32   17    A    What statement?

11:32   18    Q    Ms. Phan, the statement that I'm referring to is the

11:32   19    one that I just asked you about and you admitted to telling

11:33   20    them that.

11:33   21    A    I just wanted to be sure.  Yes.

11:33   22    Q    Okay.

11:33   23            MR. AVENATTI:  Now let's turn to 273, the bottom

11:33   24    two e-mails.  Can we have all the way to the bottom of the

11:33   25    page, please.

| | | |
|---|---|---|
| 11:33 | 1 | BY MR. AVENATTI: |
| 11:33 | 2 | Q    Ms. Phan, this document is in evidence.  Do you see |
| 11:33 | 3 | where Mr. Tran writes to me on March 8:  "Hi, Michael.  Is |
| 11:33 | 4 | the below your escrow account?  We would prefer to pass |
| 11:33 | 5 | through it like before in order to keep consistent with tax |
| 11:33 | 6 | treatment of the first tranche.  Let me know.  Thanks." |
| 11:33 | 7 | Do you see that? |
| 11:34 | 8 | A    Yes. |
| 11:34 | 9 | Q    And do you see the e-mail immediately above that that |
| 11:34 | 10 | reads:  "Hi, Michael.  Just wanted to follow up here.  They |
| 11:34 | 11 | will be sending earlier this week.  Thanks." |
| 11:34 | 12 | Did I read that correctly? |
| 11:34 | 13 | A    Yes. |
| 11:34 | 14 | Q    Did Mr. Tran tell you in March of 2018 that he had |
| 11:34 | 15 | reached out to me and he had recommended that the second set |
| 11:34 | 16 | of payments go through my accounts?  Did he tell you that? |
| 11:34 | 17 | Yes or no? |
| 11:34 | 18 | A    I don't recall.  I can't recall. |
| 11:35 | 19 | Q    Do you remember Mr. Long [sic] telling you that I had |
| 11:35 | 20 | advised you to have IPSY wire the money to my account rather |
| 11:35 | 21 | than wiring it straight to your account? |
| 11:35 | 22 | A    I can't remember the exact details, but what I can |
| 11:35 | 23 | recall is that you said this was protocol and this was how |
| 11:35 | 24 | it's done. |
| 11:35 | 25 | MR. AVENATTI:  Your Honor, move to strike. |

87

| | | |
|---|---|---|
| 11:36 | 1 | THE COURT:  Denied. |
| 11:36 | 2 | THE WITNESS:  That's what I remember. |
| 11:36 | 3 | THE COURT:  Stop, please. |
| 11:36 | 4 | BY MR. AVENATTI: |
| 11:36 | 5 | Q    Ms. Phan, isn't it true that you told the Newport Beach |
| 11:36 | 6 | Police Department that Long had told you that I had advised |
| 11:36 | 7 | you to have the wire sent to my account rather than wiring |
| 11:36 | 8 | it straight to your account?  Isn't that what you told the |
| 11:36 | 9 | investigator? |
| 11:36 | 10 | A    I don't recall that. |
| 11:36 | 11 | Q    Please turn to page 49, lines 15 through 17, and see if |
| 11:36 | 12 | that refreshes your recollection. |
| 11:36 | 13 | A    (Witness complies.)  Okay. |
| 11:36 | 14 | Q    Does that refresh your recollection that you told the |
| 11:37 | 15 | investigator in November 2018 that Long had told you that I |
| 11:37 | 16 | had advised you to have the money wired to my account rather |
| 11:37 | 17 | than wiring it straight to your account? |
| 11:37 | 18 | A    I still don't remember this whole conversation, but if |
| 11:37 | 19 | that's what I said, then that's what I said.  Then, yes. |
| 11:37 | 20 | Q    Did you tell the Newport Beach police in November of |
| 11:37 | 21 | 2018 that you actually never really contact Michael, meaning |
| 11:38 | 22 | me? |
| 11:38 | 23 | A    I don't recall the details of this conversation I had |
| 11:38 | 24 | with the investigators. |
| 11:38 | 25 | Q    Take a look at page 27, lines 5 and 6, and see if that |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:38 | 1 | refreshes your recollection. |
| 11:39 | 2 | A    (Witness complies.)  Okay. |
| 11:39 | 3 | Q    Does that refresh your recollection that you told the |
| 11:39 | 4 | Newport Beach Police Department, "I actually never really |
| 11:39 | 5 | contact Michael"? |
| 11:39 | 6 | A    Most of the communications were through Long, so I |
| 11:39 | 7 | didn't even save your number on my phone.  So -- |
| 11:39 | 8 | MR. AVENATTI:  Move to strike. |
| 11:39 | 9 | THE COURT:  Just a minute.  Stop. |
| 11:39 | 10 | Ms. Phan, please do your best to listen to the |
| 11:39 | 11 | precise question you are asked and to then answer that |
| 11:39 | 12 | question and only that question.  Okay? |
| 11:40 | 13 | THE WITNESS:  Yes, sir. |
| 11:40 | 14 | MR. AVENATTI:  May I have it read back, Your |
| 11:40 | 15 | Honor? |
| 11:40 | 16 | THE COURT:  Yes. |
| 11:40 | 17 | MR. AVENATTI:  Thank you. |
| 11:40 | 18 | (Record read) |
| 11:40 | 19 | THE WITNESS:  Yes. |
| 11:40 | 20 | BY MR. AVENATTI: |
| 11:40 | 21 | Q    Do you recall that when you were asked about that |
| 11:40 | 22 | attorney/client contract that we were talking about moments |
| 11:41 | 23 | ago, you told the Newport Beach Police Department that you |
| 11:41 | 24 | leaned on Mr. Long Tran to handle really the nitty-gritty |
| 11:41 | 25 | part; just whatever my signature is needed on, we sign? |

| | |
|---|---|
| 11:41 | 1 |
| 11:41 | 2 |
| 11:41 | 3 |
| 11:41 | 4 |
| 11:41 | 5 |

11:41   1          MR. SAGEL:  Objection, Your Honor.  This is

11:41   2   improper hearsay, improper hearsay and improper impeachment.

11:41   3          THE COURT:  Overruled.

11:41   4          THE WITNESS:  Yes.

11:41   5   BY MR. AVENATTI:

11:42   6   Q    Now, let's go back to 294 for a moment.  Do you

11:42   7   remember Mr. Sagel asked you about this text exchange that

11:42   8   we had while we were in New York, and he asked you questions

11:43   9   about your party and whether I came to your party?  Do you

11:43  10   remember that generally?

11:43  11   A    Yes.

11:43  12   Q    And do you have a recollection that what you told the

11:43  13   Newport Beach Police Department was that I had found out

11:43  14   that you were hosting a beauty event and I wanted to come

11:43  15   and I said, "Hey, can I come to your after-party?"  Do you

11:43  16   recall telling the Newport Beach Police Department that

11:43  17   that's what happened as it related to this meet-up in New

11:43  18   York?

11:43  19   A    I don't recall saying that word to word, but I said

11:43  20   that, yes.

11:43  21   Q    Well, why don't you take a look at the transcript,

11:43  22   1079, page 29, lines 14 through 17.

11:44  23   A    (Witness complies.)

11:44  24          MR. SAGEL:  Your Honor, 403 objection.  She is not

11:44  25   denying she said it.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:44 | 1 | THE COURT:  Mr. Avenatti. |
| 11:44 | 2 | MR. AVENATTI:  I will ask a follow-up question, |
| 11:44 | 3 | Your Honor. |
| 11:44 | 4 | BY MR. AVENATTI: |
| 11:44 | 5 | Q    Ms. Phan, knowing that what had happened in New York |
| 11:44 | 6 | was not that I had found out that you had some beauty event |
| 11:44 | 7 | and I wanted to come to your party, knowing that, you told, |
| 11:44 | 8 | as reflected in the text messages on the screen right now, |
| 11:44 | 9 | you told the Newport Beach Police Department -- are you |
| 11:44 | 10 | reading the transcript? |
| 11:44 | 11 | A    Yes. |
| 11:44 | 12 | Q    Please put that down. |
| 11:44 | 13 | A    (Witness complies.) |
| 11:44 | 14 | Q    Thank you.  Are you reading the part where you said |
| 11:44 | 15 | that? |
| 11:45 | 16 | A    Said what?  I didn't finish reading it.  I'm listening |
| 11:45 | 17 | to you. |
| 11:45 | 18 | Q    Okay.  Isn't it true that knowing that what happened in |
| 11:45 | 19 | New York is as reflected in 294, knowing that, you told the |
| 11:45 | 20 | Newport Beach Police Department an entirely different story; |
| 11:45 | 21 | didn't you? |
| 11:45 | 22 | A    Could I hear back the question, please. |
| 11:45 | 23 | (Record read) |
| 11:45 | 24 | THE WITNESS:  No.  It's not a different story. |
| | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:45 | 1 | BY MR. AVENATTI: |
| 11:46 | 2 | Q    Do you see the text messages on the screen that |
| 11:46 | 3 | Mr. Sagel asked you about? |
| 11:46 | 4 | A    Yes. |
| 11:46 | 5 | Q    Ms. Phan, are you aware of any text message where I |
| 11:46 | 6 | found out you were hosting some beauty event, and I |
| 11:46 | 7 | indicated to you that I wanted to come to your after-party? |
| 11:46 | 8 | A    From my recollection -- |
| 11:46 | 9 | Q    Ms. Phan, something tells me you're not going to answer |
| 11:46 | 10 | my question, so I'm going to strike the question. |
| 11:46 | 11 | Please just answer my question, Ms. Phan.  Are you |
| 11:46 | 12 | aware of any text message that reflects that at this time I |
| 11:47 | 13 | had found out that you had a beauty event and I wanted to |
| 11:47 | 14 | come to your after-party, as you told the Newport Beach |
| 11:47 | 15 | Police Department? |
| 11:47 | 16 | A    Based on my recollection you found out about this event |
| 11:47 | 17 | through a phone call -- |
| 11:47 | 18 | MR. AVENATTI:  Move to strike. |
| 11:47 | 19 | THE WITNESS:  -- not on -- |
| 11:47 | 20 | THE COURT:  Stop, please. |
| 11:47 | 21 | The answer will be stricken. |
| 11:47 | 22 | MR. AVENATTI:  May I have it read back, please. |
| 11:47 | 23 | THE COURT:  Yes. |
| 11:47 | 24 | THE WITNESS:  No, I'm not aware of any text |
| 11:48 | 25 | messages that implied that, about this beauty event. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:48  1   BY MR. AVENATTI:

11:48  2   Q    Ms. Phan, did you tell the Newport Beach Police

11:48  3   Department that I tried to convince you to download Telegram

11:48  4   when we met for lunch, which is an app that allows for the

11:48  5   deletion of communications between the parties?

11:48  6              MR. SAGEL:  Objection.  403, Your Honor.

11:49  7              THE COURT:  Overruled.

11:49  8              THE WITNESS:  Yes, I remember you telling me about

11:49  9   Telegram.

11:49  10             MR. AVENATTI:  Move to strike everything after yes

11:49  11  as nonresponsive.

11:49  12             THE COURT:  Denied.

11:49  13  BY MR. AVENATTI:

11:49  14  Q    You told the Newport Beach Police Department that at

11:49  15  the lunch that Mr. Sagel asked you about, I had told you I

11:49  16  want you to download Telegram, the messaging app where,

11:49  17  like, the messages delete.  And your response was:  "Yes,

11:49  18  sure.  I'll download it."  Right?

11:49  19  A    Yes.

11:49  20  Q    And is that what happened?  Strike that.

11:50  21             MR. AVENATTI:  Your Honor, can I have the last

11:50  22  question and answer read back?

11:50  23             THE COURT:  Yes.

11:50  24             (Record read)

11:50  25             MR. AVENATTI:  Let's have 1081.  I'll just do it

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:51 | 1 | old school. |
| 11:51 | 2 | BY MR. AVENATTI: |
| 11:51 | 3 | Q    Do you have 1081, Ms. Phan? |
| 11:51 | 4 | A    Yes. |
| 11:51 | 5 | Q    You would agree that the messages in green are what I |
| 11:51 | 6 | wrote and the messages on the other side are what you wrote, |
| 11:51 | 7 | correct? |
| 11:51 | 8 | A    Yes. |
| 11:51 | 9 | Q    Now I have page 3 of 5 on the screen.  These messages |
| 11:52 | 10 | relate to you being on your way to the lunch that we were |
| 11:52 | 11 | just talking about, right? |
| 11:52 | 12 | A    Yes. |
| 11:52 | 13 | Q    And these times are Pacific time.  Do you see that? |
| 11:52 | 14 | A    Yes. |
| 11:52 | 15 | Q    So New York is three hours ahead.  You have to add |
| 11:52 | 16 | three hours to the times on these text messages; am I right? |
| 11:52 | 17 | A    Yes. |
| 11:52 | 18 | Q    So at 11:30 we communicate about you coming to lunch, |
| 11:53 | 19 | right? |
| 11:53 | 20 | A    Yes. |
| 11:53 | 21 | Q    I say, "On way"; do you see that? |
| 11:53 | 22 | A    Yes. |
| 11:53 | 23 | Q    Then at 1:06 p.m. -- |
| 11:53 | 24 |         MR. SAGEL:  Your Honor, he's now publishing her |
| 11:53 | 25 | telephone number, which is what we asked to be redacted. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

94

11:53  1          Can you please take it off the screen while you're
11:53  2  doing that.
11:53  3  BY MR. AVENATTI:
11:53  4  Q    Ms. Phan, at 1:06 p.m. you sent me this screenshot with
11:54  5  a message that says, "Find me via user name once you're set
11:54  6  up," right?
11:54  7  A    Yes.
11:54  8  Q    And that's your user name on Telegram; isn't it?
11:54  9          MR. SAGEL:  Your Honor, it's a private user name
11:54  10  that he's now publishing to the jury.  It also should be
11:54  11  redacted.
11:54  12          THE WITNESS:  Yes, it is.
11:54  13          THE COURT:  Redact the user name, please.
11:54  14  BY MR. AVENATTI:
11:54  15  Q    And I responded, "Is this Telegram?"
11:55  16  A    Yes.
11:55  17  Q    And you responded, "Yes," correct?
11:55  18  A    Yes.
11:55  19  Q    Because before you got to lunch, you already had
11:55  20  telegram set up, right?
11:55  21  A    No, I didn't.  I'm setting it up right there.
11:55  22          MR. AVENATTI:  Move to strike, Your Honor, after,
11:55  23  no, I didn't.
11:55  24          THE COURT:  It will be stricken.
11:55  25  BY MR. AVENATTI:

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:55 | 1 | Q    And then I responded, "Will do.  Thank you."  Right? |
| 11:56 | 2 | A    Yes. |
| 11:56 | 3 | MR. AVENATTI:  Your Honor, now is a good time for |
| 11:56 | 4 | a break. |
| 11:56 | 5 | THE COURT:  Very good. |
| 11:56 | 6 | We will take the lunch break here, ladies and |
| 11:56 | 7 | gentlemen.  Please remember the admonition not to discuss |
| 11:56 | 8 | the case with anyone and not to form any opinions on the |
| 11:56 | 9 | issues in the case until it is submitted to you.  And please |
| 11:56 | 10 | do not do any research. |
| 11:56 | 11 | So we will see you at 1:30. |
| 11:56 | 12 | (Jury not present) |
| 11:57 | 13 | THE COURT:  I'll make a copy of this.  This is a |
| 11:57 | 14 | note from Juror No. 1 indicating she has dental problems.  I |
| 11:57 | 15 | want to make a copy.  After you look at it, we'll take it up |
| 11:57 | 16 | before we begin this afternoon. |
| 11:57 | 17 | MR. SAGEL:  Your Honor, we have one issue I just |
| 11:57 | 18 | want to raise.  I have Ms. Phan still standing here because |
| 11:58 | 19 | it may relate to her, and I just want to raise it to you. |
| 11:58 | 20 | THE COURT:  Well, then let's hear from Ms. Phan. |
| 11:58 | 21 | MR. SAGEL:  It relates to her timing. |
| 11:58 | 22 | THE COURT:  Oh, all right. |
| 11:58 | 23 | MR. SAGEL:  She had set aside Tuesday and |
| 11:58 | 24 | Wednesday, thinking those were the days she was going to |
| 11:58 | 25 | testify.  She has moved her schedule.  She has a business -- |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:58    1    I'm not sure of the details, but she has something at 1:00.
11:58    2            We told her we would put her on first.  The
11:58    3    estimate we got for cross was one hour.  She has now been on
11:58    4    the stand for well past that.  I know that she has a matter
11:58    5    at 1:00.  I don't know what her full schedule is, but --
11:58    6            THE COURT:  She's going to have to reorganize
11:58    7    things.  We're going to complete her testimony today.
11:58    8            MR. SAGEL:  I understand that.  I guess my only
11:58    9    question then is if there is a possibility to have her
11:58   10    called back either later in the day if it's possible to
11:58   11    continue versus at 1:30.
11:58   12            THE COURT:  Mr. Avenatti.
11:58   13            MR. AVENATTI:  Your Honor, I object.
11:58   14            THE COURT:  We're going to complete her testimony.
11:59   15            MR. AVENATTI:  Thank you.
11:59   16            THE COURT:  There's something to take up in
11:59   17    camera?
11:59   18            MR. AVENATTI:  Your Honor, can we take that up at
11:59   19    1:00, right before we come back at 1:30?
11:59   20            THE COURT:  It's not going to take that Long.
11:59   21            MR. AVENATTI:  I understand, but I'm in the middle
11:59   22    of my cross.  I just need to confer with my team.
11:59   23            THE COURT:  Come back at 1:20.
11:59   24            MR. AVENATTI:  1:20?
11:59   25            THE COURT:  1:20.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:59   1              MR. AVENATTI:  Thank you, sir.
11:59   2              And, Your Honor, I just want to put also on the
11:59   3    record I know that often I have you repeat things.  It's
11:59   4    because sometimes my hearing is not the best and I just
11:59   5    don't hear you.  So I don't want you to take any offense by
11:59   6    that.  It's just because I can't hear you.  I'm sorry.
11:59   7              THE COURT:  Well, I moved from the regular mic to
11:59   8    a lavalier.  I have the lavalier right under it.  Part of it
11:59   9    is the mask.  But if at any point you can't hear me, let me
12:00  10    know.
12:00  11              MR. AVENATTI:  I just wanted you to know I'm not
12:00  12    trying to be difficult.
12:00  13              THE COURT:  That's fine.
12:00  14                   (Recess taken at 12:00 p.m.)
12:00  15                        *    *    *
12:00  16
12:00  17
12:00  18
12:00  19
12:00  20
12:00  21
12:00  22
12:00  23
12:00  24
12:00  25
```

CERTIFICATE


        I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  August 12, 2021


                        /s/    Sharon A. Seffens  8/12/21
                        _____
                        SHARON A. SEFFENS, U.S. COURT REPORTER

MR. AVENATTI: [110]
MR. SAGEL: [53]  4/5 7/8 7/11 8/3 8/6 8/11
8/15 9/2 10/6 15/8 15/16 15/22 16/2 16/19
16/24 19/18 20/6 20/16 33/22 40/10 42/17
42/25 52/15 53/15 55/14 57/22 58/12 61/18
61/21 61/24 63/4 63/7 67/1 67/6 68/9 74/2
76/17 76/24 78/15 80/11 80/15 80/20 83/22
84/2 89/1 89/24 92/6 93/24 94/9 95/17 95/21
95/23 96/8
THE CLERK: [6]  4/3 5/6 6/22 19/16 20/9
20/14
THE COURT: [135]
THE WITNESS: [32]  20/12 28/11 31/4 33/16
35/20 41/13 45/5 47/14 49/10 49/16 53/17
57/25 58/19 59/7 66/21 67/3 68/11 68/13
69/25 70/7 76/11 77/2 82/21 87/2 88/13 88/19
89/4 90/24 91/19 91/24 92/8 94/12

**$**

**$146,000 [2]** 50/12 50/18
**$4 [7]** 48/21 51/4 51/7 51/11 51/23 52/1 52/5
**$4 million [7]** 48/21 51/4 51/7 51/11 51/23
52/1 52/5
**$4,146,000 [1]** 51/2
**$4.146 [1]** 51/10
**$4.146 million [1]** 51/10
**$8 [2]** 30/19 38/24
**$8 million [2]** 30/19 38/24
**$8,146,000 [2]** 38/25 50/21
**$8,146,288 [1]** 34/14

**/**

**/s [1]** 98/15

**0**

**0870 [1]** 1/21

**1**

**1-1053 [1]** 1/20
**1053 [1]** 1/20
**107 [1]** 2/16
**107,188 [1]** 34/13
**1079 [4]** 78/23 80/9 84/14 89/22
**1081 [22]** 3/13 3/13 55/12 55/19 56/4 56/12
56/15 56/17 56/19 61/17 62/3 62/8 62/20 63/3
63/6 63/9 65/1 65/4 65/14 68/7 92/25 93/3
**1082 [1]** 68/23
**1083 [7]** 66/3 66/3 66/5 66/15 66/24 67/5
67/21
**10:30 [1]** 64/14
**10:47 [1]** 64/15
**11 [1]** 29/5
**1100 [1]** 2/7
**1199 [1]** 7/22
**11:30 [1]** 93/18
**12 [3]** 1/17 4/1 98/13
**1206 [1]** 9/24
**1208 [1]** 7/22
**1216 [1]** 9/24
**12:00 [1]** 97/14
**12th [3]** 68/24 69/9 69/14
**13th [2]** 39/8 39/8
**14 [2]** 71/10 89/22
**14th [7]** 36/24 37/8 37/25 40/13 40/25 41/15
56/25
**15 [4]** 15/14 15/20 64/13 87/11
**151 [1]** 25/20
**15th [1]** 28/18
**16 [1]** 15/20
**17 [3]** 84/14 87/11 89/22
**17th [2]** 29/11 29/14
**18th [3]** 33/9 33/13 33/19
**19 [1]** 1/12
**1:00 [3]** 96/1 96/5 96/19
**1:06 [1]** 93/23
**1:06 p.m [1]** 93/19
**1:20 [3]** 96/23 96/24 96/25
**1:30 [3]** 95/11 96/11 96/19

**1st [5]** 77/18 78/2 78/24 82/8 84/18

**2**

**20 [2]** 3/5 6/24
**2007 [1]** 21/4
**2009 [1]** 7/24
**2011 [1]** 21/14
**2016 [1]** 22/15
**2017 [25]** 22/23 22/23 23/11 23/18 28/18
29/11 29/14 33/9 37/21 56/9 56/25 57/19 58/6
58/9 65/14 67/10 67/17 68/7 70/21 71/6 75/13
77/9 77/10 77/12 77/24
**2018 [33]** 7/22 9/24 33/13 33/19 34/5 36/24
37/22 37/25 40/11 40/13 41/5 41/9 41/15
41/15 50/12 54/20 55/1 62/25 65/6 65/14
68/24 69/9 69/15 70/21 71/6 77/18 78/2 78/24
82/8 85/11 86/14 87/15 87/21
**2019 [1]** 77/24
**2021 [3]** 1/17 4/1 98/13
**21 [1]** 98/15
**213 [1]** 2/8
**22 [1]** 84/15
**23 [5]** 54/20 80/9 80/13 80/15 80/19
**23rd [4]** 42/14 43/1 49/6 49/19
**24 [2]** 80/13 80/17
**24th [2]** 42/15 47/3 49/19
**25 [5]** 80/9 80/12 80/15 80/17 84/14
**26 [3]** 80/10 80/13 80/17
**266 [13]** 25/17 25/19 25/20 26/1 26/2 72/25
73/10 74/8 74/19 74/23 75/8 75/17 75/25
**268 [4]** 28/25 29/2 33/6 70/15
**269 [1]** 40/25
**27 [1]** 87/25
**27 million [1]** 48/8
**27.4 million [1]** 30/18
**272 [1]** 33/21
**273 [2]** 85/13 85/23
**275 [1]** 37/19
**28 [1]** 98/7
**29 [1]** 89/22
**294 [24]** 3/8 42/7 42/8 42/11 42/18 42/22
42/24 44/14 46/1 53/20 54/12 59/9 59/10 60/8
60/25 62/11 62/17 63/11 63/14 63/23 64/1
64/4 89/6 90/19
**2:00 here [1]** 16/23

**3**

**3 million [1]** 49/20
**3/14/2018 [1]** 40/11
**30 [1]** 28/4
**312 [1]** 2/7
**338-3598 [1]** 2/12
**3598 [1]** 2/12
**360 [1]** 7/23
**369 [1]** 40/10

**4**

**4 million [3]** 50/11 50/18 51/9
**403 [5]** 10/21 15/11 49/8 89/24 92/6
**411 [2]** 1/20 2/11
**42 [1]** 3/8
**45 [1]** 15/10
**481-4900 [1]** 2/17
**49 [1]** 87/11
**4900 [1]** 2/17
**4th [7]** 1/20 41/5 41/9 41/15 50/12 51/20
51/21

**5**

**52 [1]** 3/5
**543-0870 [1]** 1/21
**56 [1]** 3/13
**5:00 [1]** 16/22

**6**

**6.11 [1]** 71/9
**611 [1]** 10/21
**615 [1]** 9/4
**63 [1]** 3/13

**639 [1]** 6/10
**6683 [1]** 2/8
**677 [1]** 10/25
**684 [1]** 7/12
**686 [1]** 9/3
**6:00, which [1]** 16/22

**7**

**7.5 [1]** 29/20
**7.5 percent [2]** 26/23 27/4
**714 [2]** 1/21 2/12
**753 [1]** 98/6
**784-786 [1]** 7/23
**786 [1]** 7/23
**7:30 [1]** 44/22

**8**

**8/12/21 [1]** 98/15
**8000 [1]** 2/11
**894-6683 [1]** 2/8
**895 [1]** 9/23
**8:00 [1]** 17/2
**8:31 [1]** 4/1
**8:55 [1]** 19/13
**8th [1]** 34/5

**9**

**90012 [1]** 2/8
**907 [1]** 7/22
**92672 [1]** 2/16
**92701 [2]** 1/20 2/11
**949 [1]** 2/17
**9:00 [1]** 5/25
**9:00 p.m [1]** 17/2
**9:09 [1]** 19/14
**9:30 [1]** 17/2

**A**

**a.m [6]** 4/1 5/25 19/13 19/14 64/14 64/15
**able [3]** 7/7 8/2 72/7
**about [64]** 7/10 13/25 17/14 19/1 19/1 20/2
24/6 24/14 24/20 29/19 30/14 30/18 33/2 36/4
36/9 37/21 42/7 43/22 45/2 45/19 45/25 47/4
47/5 47/9 47/15 53/23 55/3 55/15 55/22 56/21
57/14 59/9 60/13 60/15 61/8 61/10 62/9 70/16
71/12 73/1 73/5 73/11 75/14 76/22 78/10
78/11 78/11 78/12 82/14 83/16 83/17 84/3
85/19 88/21 88/22 89/7 89/9 91/3 91/16 91/25
92/8 92/15 93/11 93/18
**above [4]** 35/5 54/25 86/9 98/9
**above-entitled [1]** 98/9
**absolutely [2]** 12/6 52/7
**acceptable [3]** 6/1 7/9 64/7
**accidental [1]** 46/11
**accomplish [2]** 23/7 72/7
**according [1]** 73/10
**account [23]** 34/16 34/22 34/25 35/2 36/7
37/10 37/14 37/16 38/17 38/20 39/21 40/14
43/6 83/14 84/12 85/8 86/4 86/20 86/21 87/7
87/8 87/16 87/17
**accounts [1]** 86/16
**accuracy [1]** 66/24
**accurate [3]** 15/12 42/13 53/13
**accurately [1]** 13/24
**acknowledging [1]** 13/24
**acting [1]** 37/22
**actually [12]** 10/9 23/23 25/1 28/11 29/18
40/8 53/22 56/18 63/16 80/13 87/21 88/4
**add [3]** 10/13 15/8 93/15
**added [1]** 44/20
**additional [14]** 6/12 7/2 7/3 9/7 15/2 16/9
24/22 37/20 51/11 51/22 63/22 63/25 64/3
66/5
**address [2]** 7/18 13/17
**admit [2]** 42/18 62/13
**admitted [1]** 85/19
**admonition [2]** 64/9 95/7
**advice [1]** 8/25
**advised [4]** 8/17 86/20 87/6 87/16

# A

**advisory [2]** 2/15 4/10
**affected [1]** 25/2
**after [34]** 24/13 26/20 28/20 35/6 35/8 37/11 37/14 37/15 41/21 43/5 44/7 44/14 47/6 48/12 49/19 51/9 51/13 51/21 57/19 60/4 65/19 66/10 66/12 68/1 69/3 69/5 70/2 82/4 89/15 91/7 91/14 92/10 94/22 95/15
**after-party [3]** 89/15 91/7 91/14
**afternoon [2]** 6/18 95/16
**again [6]** 45/23 59/2 65/2 68/11 72/17 80/16 19/20 25/7
**agent [8]** 4/7 10/13 10/14 11/4 11/19 18/25 19/20 25/7
**agents [8]** 9/15 10/10 11/6 11/14 13/5 13/8 14/3 83/2
**aggregate [1]** 34/14
**ago [6]** 10/19 19/1 58/19 63/5 71/5 88/23
**agree [7]** 9/6 12/20 12/22 17/17 44/11 46/25 93/5
**agreed [8]** 26/25 27/5 27/6 29/15 30/25 44/23 73/12 73/13
**agreement [35]** 24/7 26/14 28/16 28/17 28/22 29/3 29/6 29/10 29/11 29/18 29/18 29/19 29/20 29/23 29/24 30/7 31/7 31/23 34/12 34/15 51/3 70/16 71/12 71/13 71/17 71/17 71/24 75/6 75/16 75/10 75/13 75/25 76/2 76/22 77/10
**agreements [5]** 29/21 31/8 31/12 71/17 71/22
**ahead [1]** 93/15
**airplane [1]** 16/18
**ALEXANDER [3]** 2/5 4/6 19/19
**Alexis [1]** 6/11
**all [23]** 5/17 5/20 13/6 17/11 18/15 29/9 32/18 36/14 36/15 44/4 48/10 56/20 58/20 59/14 63/19 65/5 65/14 75/2 75/5 82/22 82/23 85/24 95/22
**allow [1]** 51/3
**allowed [1]** 17/15
**allows [1]** 92/4
**almost [1]** 52/12
**along [1]** 61/24
**already [6]** 6/8 8/15 16/5 16/6 25/17 29/1 36/16 43/15 48/9 48/21 51/20 62/6 94/19
**also [18]** 7/22 10/15 10/17 15/11 15/25 18/24 23/4 24/10 28/25 31/14 31/19 33/22 38/8 43/16 43/17 64/21 94/10 97/2
**although [1]** 9/7
**always [1]** 46/16
**am [8]** 9/13 12/11 12/2 12/13 13/1 18/10 61/10 93/16
**amended [6]** 73/16 73/19 74/19 74/23 75/6 75/8
**amendment [5]** 74/7 75/2 75/5 75/11 75/12
**AMERICA [3]** 1/9 4/4 19/17
**amount [4]** 5/7 48/3 50/14 50/24
**Ana [4]** 1/16 1/20 2/11 4/1
**Andre [1]** 18/17
**Andrew [1]** 79/2
**Angeles [2]** 2/8 17/1
**another [2]** 54/12 55/25
**answer [30]** 8/13 53/3 53/9 54/6 54/8 56/1 56/1 58/2 58/23 64/20 64/22 65/7 65/8 65/11 65/21 69/4 69/23 70/5 74/16 74/24 77/5 79/22 81/13 82/6 83/23 88/11 91/9 91/11 91/21 92/22
**answered [7]** 16/8 17/18 47/12 53/15 56/10 68/9 73/23
**answering [2]** 53/1 82/13
**answers [2]** 53/5 74/13
**anticipate [1]** 5/24
**anxious [2]** 40/1 40/2 44/5
**any [62]** 5/7 5/18 5/21 7/3 7/7 8/25 10/2 12/5 12/15 12/19 13/7 13/25 16/2 16/9 16/19 17/14 27/7 29/21 32/23 35/23 36/10 36/18 37/5 39/25 41/7 41/18 45/18 48/17 51/1 51/20 51/20 53/8 53/9 53/10 60/14 62/18 66/10 69/13 70/21 72/15 73/16 74/7 74/23 75/2 75/5 75/6 75/10 76/23 77/2 78/9 78/13 82/8 82/13 82/14 82/22 91/5 91/12 91/24 95/8 95/10 97/5

97/9
**anybody [2]** 34/8 96/18
**anymore [1]** 21/25
**anyone [2]** 64/10 95/8
**anything [13]** 8/21 10/5 14/8 17/13 22/21 24/6 36/9 45/2 51/14 58/7 72/22 74/16 74/23
**anytime [1]** 8/9
**apologize [1]** 29/8
**app [2]** 92/4 92/16
**apparent [1]** 18/2
**apparently [1]** 6/13
**appear [3]** 7/24 13/5 13/6
**APPEARANCES [1]** 2/1
**apple [1]** 16/5
**applied [1]** 53/2
**applies [1]** 7/15
**apply [2]** 5/16 5/18
**appreciate [1]** 13/23
**approach [4]** 55/8 65/22 68/18 78/6
**approached [1]** 82/16
**appropriate [1]** 17/18
**approximately [3]** 28/20 33/12 51/10
**April [10]** 42/14 42/15 43/1 47/3 49/6 49/19 54/20 68/24 69/9 69/14
**April 12th [3]** 68/24 69/9 69/14
**April 23 [1]** 54/20
**April 23rd [4]** 42/14 43/1 49/6 49/19
**April 24th [2]** 42/15 47/3
**are [49]** 5/4 5/12 5/15 5/19 7/24 12/12 12/18 12/18 14/12 20/4 20/21 34/11 40/13 42/10 42/12 42/13 54/19 56/13 61/6 61/12 62/23 62/24 63/22 63/25 64/3 65/5 65/13 66/15 67/21 69/2 74/7 74/22 75/5 75/6 76/14 76/16 77/23 79/5 79/8 88/11 90/9 90/14 91/5 91/11 93/5 93/6 93/13
**aren't [1]** 67/22
**argument [1]** 49/8
**Argumentative [1]** 74/2
**around [5]** 22/23 23/11 23/18 28/4 54/14
**as [58]** 4/10 4/11 7/2 7/17 9/16 9/17 10/17 11/24 12/23 12/24 13/2 13/22 14/5 15/17 17/5 19/2 27/8 27/12 29/2 29/11 34/10 34/13 38/8 38/14 41/4 42/5 44/8 47/9 48/12 54/19 55/12 60/5 60/15 60/15 66/2 66/11 66/15 66/24 67/11 68/2 68/22 69/4 70/3 76/4 78/23 80/9 81/8 82/13 83/9 83/23 84/25 89/17 90/8 90/19 91/14 92/11
**aside [2]** 79/8 95/23
**ask [29]** 7/18 8/19 8/21 10/22 16/5 17/14 32/9 37/20 37/21 43/24 47/5 47/9 53/19 59/2 59/9 60/22 61/21 66/16 68/11 72/17 74/1 74/3 74/13 78/9 78/13 80/21 82/20 86/4 90/2
**asked [32]** 16/5 16/8 17/18 28/15 37/21 47/12 51/20 53/15 54/6 55/22 56/21 57/13 61/19 64/20 68/9 70/15 71/14 73/5 74/18 75/14 77/13 83/6 89/11 88/21 89/7 89/8 91/3 92/15 93/25
**asking [5]** 8/18 19/5 47/15 78/11 80/21 82/16 83/16
**asset [1]** 71/17
**assist [1]** 58/10
**Assistant [2]** 2/4 2/6 2/10
**associate [1]** 38/8
**assume [2]** 7/5 9/4
**assuming [1]** 74/24
**attached [1]** 26/5
**attachment [1]** 26/9
**attention [1]** 78/22
**attorney [12]** 2/3 2/4 2/6 2/10 26/9 26/21 26/22 26/25 28/21 40/14 72/25 88/22
**attorney/client [1]** 26/9 26/25 28/21 40/14 72/25 88/22
**audio [1]** 81/4
**August [6]** 1/17 4/1 28/18 75/13 77/10 98/13
**August 15th [1]** 28/18
**AUSAs [1]** 18/25
**authentication [1]** 42/21
**authorities [3]** 13/17 14/17 16/10
**authority [9]** 9/7 10/21 11/1 11/10 11/16

11/17 14/25 15/3 17/16
**AVENATTI [21]** 1/6 2/11 4/3 4/6 4/13 4/14 4/14 4/16 4/14 7/12 9/3 11/3 19/17 19/23 22/9 22/11 22/14 26/4 26/10 50/8 52/16 64/25 90/1 96/12
**Avenida [2]** 2/16
**aware [7]** 55/4 69/9 74/7 74/23 75/1 75/2 75/5 75/6 76/14 76/16 91/5 91/12 91/24

# B

**back [47]** 4/13 15/15 15/19 17/10 18/13 21/4 21/14 26/16 27/20 29/8 29/9 29/18 30/10 31/20 34/19 35/13 35/16 35/22 44/15 44/18 44/25 46/13 47/16 51/19 58/15 59/1 59/3 64/18 66/18 67/8 68/2 69/21 71/4 75/21 76/7 79/3 82/18 83/19 83/25 88/14 89/6 90/22 91/22 92/22 96/10 96/19 96/23
**balances [1]** 49/7
**bank [17]** 34/16 34/22 34/23 34/25 35/2 36/7 37/9 37/14 37/16 38/17 38/20 39/21 41/2 47/17 48/4 83/14 84/12
**bankruptcy [4]** 39/9 39/12 39/13 49/21
**based [3]** 32/17 82/25 91/16
**basically [2]** 9/5 22/2
**Bates [1]** 19/7
**be [76]** 5/23 5/24 6/2 7/7 8/2 10/1 10/15 10/17 10/18 10/23 11/9 12/17 12/17 13/19 13/22 14/18 15/11 15/16 16/22 17/14 17/17 19/6 19/11 20/9 24/14 24/21 25/6 25/18 25/21 27/2 27/3 27/13 29/3 30/18 33/9 33/11 34/13 34/15 34/19 42/22 43/17 44/4 47/7 52/9 54/23 56/15 56/19 57/21 58/5 58/6 58/8 60/21 63/6 64/13 65/20 66/12 68/3 69/6 69/20 70/4 74/4 76/6 79/22 80/2 81/16 82/4 82/14 83/4 83/6 85/2 85/21 86/11 91/21 93/25 94/10 94/24 97/12
**Beach [27]** 77/19 78/4 78/12 78/25 81/3 81/7 81/19 82/11 82/23 83/6 84/10 84/18 84/22 85/4 85/10 85/15 87/5 87/20 88/4 88/23 89/13 89/16 90/9 90/20 91/14 92/2 92/14
**beauty [9]** 21/6 21/11 21/15 29/12 89/14 90/6 91/6 91/13 91/25
**became [1]** 18/2
**because [25]** 5/16 9/12 12/9 24/9 28/12 32/12 40/9 44/5 45/7 48/6 49/4 52/9 54/6 58/8 61/8 67/24 78/15 79/13 83/22 84/23 85/7 94/19 95/18 97/4 97/6
**become [1]** 9/11
**been [25]** 4/19 9/8 11/19 16/5 16/6 18/6 18/10 18/20 19/8 19/8 21/1 21/5 22/2 23/16 43/5 46/11 66/2 74/19 76/1 76/21 77/6 78/23 83/10 85/7 96/3
**before [26]** 5/21 8/8 10/7 29/19 36/8 37/21 39/8 47/24 53/1 53/8 54/24 55/3 55/21 55/24 57/13 64/18 70/19 70/22 71/6 75/24 76/22 78/9 86/5 94/19 95/16 96/19
**began [2]** 17/14 53/1
**begin [1]** 95/16
**behalf [8]** 4/6 19/19 25/12 37/22 68/16 70/12 71/21 72/7
**being [4]** 4/15 15/23 25/2 47/19 78/2 81/3 93/10
**believe [18]** 9/22 10/4 10/16 10/19 11/10 11/16 11/23 12/3 12/5 15/13 17/6 22/18 23/11 23/11 24/1 28/2 40/22 81/12 81/22
**believed [3]** 27/24 47/21 52/9
**below [3]** 34/17 34/22 86/4
**benefits [1]** 72/16
**best [12]** 25/15 42/21 51/19 53/13 65/6 65/15 73/19 73/21 83/8 83/11 88/10 97/4
**better [3]** 32/9 76/12 82/1
**between [19]** 26/10 29/12 30/22 41/15 42/12 42/14 42/14 51/1 56/6 59/15 61/3 61/6 61/12 65/5 65/15 66/6 75/7 77/9 92/5
**beyond [4]** 63/22 64/1 64/4 71/23
**Billing [1]** 26/18
**binder [2]** 25/18 25/20
**birthday [1]** 69/17
**bite [1]** 16/4
**Bledstein [3]** 78/3 78/24 81/8
**blew [1]** 69/15

**B**

blow [2] 53/21 56/19
blowing [1] 69/10
blur [1] 28/23
book [1] 16/19
Boston [1] 41/2
both [2] 10/9 43/13
bottom [9] 30/2 33/8 36/22 40/21 40/22 61/1 63/20 85/23 85/24
Brady [2] 18/4 19/9
brand [3] 20/25 23/4 27/20
BRANDON [1] 2/4
break [5] 16/16 64/6 64/8 95/4 95/6
Bredahl [1] 25/24
BRETT [3] 2/9 4/5 19/18
brief [4] 9/4 10/25 13/12 14/17
bring [5] 6/19 45/6 45/22 45/23 51/16
brought [5] 51/18 64/18 77/13 82/14
Brown [2] 79/1 79/5
Building [1] 2/10
business [7] 7/8 21/7 25/4 45/24 79/17 95/25
businessperson [1] 22/2
busy [1] 47/18
buy [1] 23/4
buying [1] 34/19

**C**

CA [4] 1/20 2/8 2/11 2/16
CALIFORNIA [4] 1/5 1/16 4/1 47/17
call [17] 9/13 9/14 11/12 12/2 14/20 15/25 17/10 17/15 30/8 36/3 36/9 39/7 43/16 43/18 43/21 44/25 91/17
called [11] 7/16 7/17 7/25 11/25 12/18 14/12 20/22 21/8 21/15 30/3 96/10
calling [1] 12/13 12/21 19/16
calls [5] 20/7 23/17 24/14 24/16 27/11
came [3] 43/13 45/13 89/9
camera [4] 11/8 13/10 15/5 96/17
can [56] 5/21 6/20 6/24 8/6 8/8 8/19 10/3 11/1 12/24 16/11 16/20 17/9 19/4 26/20 34/7 34/16 40/7 41/4 43/8 44/5 46/1 47/15 50/1 50/3 53/21 53/25 54/12 55/8 56/19 56/23 58/15 59/3 65/22 66/16 68/11 68/18 71/10 74/9 75/4 76/7 76/11 76/12 78/6 79/8 80/15 80/21 80/24 82/18 82/22 85/8 85/24 86/22 89/15 92/21 94/1 96/18
can't [10] 5/17 18/8 58/23 75/9 75/23 78/5 86/18 86/22 97/6 97/9
cannot [1] 18/20
capacity [1] 37/23
capture [1] 59/14
captured [4] 59/20 59/23 59/25 60/2
captures [2] 59/18 59/21
care [2] 73/21 73/25
Carter [1] 7/21
case [23] 5/2 7/18 9/13 11/20 11/23 12/1 12/3 12/6 12/13 12/18 13/1 13/2 14/14 14/20 16/1 17/11 17/16 18/13 64/10 64/11 85/7 95/8 95/9
cases [1] 13/13
cause [1] 39/24
CDC [1] 8/25
Cefali [1] 4/11 19/24
celebration [2] 44/20 45/24
CENTRAL [1] 1/5
certain [2] 60/13 60/15
certainly [1] 5/25
CERTIFICATE [1] 98/4
CERTIFIED [1] 1/9
certify [1] 98/6
CFO [2] 34/3 34/9
Chang [4] 37/1 37/3 37/7 38/15
Chang's [1] 39/15
change [1] 50/21
changed [1] 65/17
charges [2] 82/14 82/22
check [1] 15/19
chief [7] 2/5 7/18 12/1 14/20 16/1 17/11 17/16
child [1] 5/8
China [1] 44/20

choosing [1] 27/15
chunk [1] 32/16
circle [1] 54/23
Circuit [2] 7/23 9/24
circumstances [3] 22/16 23/24 28/6
citations [1] 7/20
City [4] 34/22 42/4 43/13 49/18
clarification [1] 61/9
clarify [2] 74/9 74/24
clarifying [1] 81/14
clean [1] 25/14
clear [9] 6/2 13/1 13/19 13/22 16/13 18/12 18/20 19/6 63/11
clearly [1] 14/4
Clemente [1] 2/16
Clerk's [1] 6/17 6/22
client [8] 18/8 18/21 26/9 26/25 28/21 40/14 72/25 88/22
clients [1] 18/4 18/16
close [1] 7/8
closed [2] 81/21 81/22
closing [5] 30/4 30/6 30/6 31/23 34/12
CNN [1] 44/15
Coast [1] 17/1
Code [1] 98/7
colleague [1] 18/16
colleagues [2] 45/13 45/25
column [1] 41/4
come [11] 22/24 23/6 37/18 42/4 89/14 89/15 90/7 91/7 91/14 96/19 96/23
comes [2] 16/2 19/12
comfortable [4] 8/18 8/19 8/22 27/15
coming [3] 46/6 79/3 93/18
comment [2] 24/19 24/20
common [9] 29/2 29/10 31/7 31/20 34/12 34/14 70/16 71/13 71/23
communicate [1] 67/11 93/18
communications [2] 88/6 92/5
company [19] 20/22 21/8 21/11 21/12 21/14 21/15 22/6 23/3 23/13 24/2 25/15 27/21 27/25 28/8 29/13 41/2 72/3 72/8 72/14
compare [1] 62/11
compel [1] 11/1
compendium [1] 6/7
compensate [1] 73/13
complaint [1] 77/14
complete [6] 7/3 17/7 17/8 17/11 96/7 96/14
completed [1] 17/15
complies [5] 85/14 87/13 88/2 89/23 90/13
concept [1] 54/25
concern [1] 39/25
concerned [5] 20/2 41/24 43/25 44/2 44/8
concerning [1] 7/13
conclude [1] 58/9
conclusion [1] 5/21
conduct [1] 98/11
confer [1] 96/22
Conference [1] 98/11
confidence [4] 24/10 44/4 48/10 48/16
confident [3] 24/9 24/10 28/13
confirm [1] 34/16
conformance [1] 98/10
confront [2] 48/17 48/18
confrontation [2] 71/15 7/24
confronted [1] 9/13
connection [10] 12/4 19/10 67/17 71/20 71/22 72/6 72/16 72/18 79/10 79/11
consider [2] 5/13 16/9
consistent [1] 86/5
contact [3] 85/6 87/21 88/5
contacted [1] 51/15
contemplated [1] 71/18
contingency [2] 26/10 27/8 27/15 29/20
contingent [1] 26/22
continue [2] 46/23 96/11
continued [1] 72/11
continues [1] 12/5
contract [6] 26/10 27/1 28/21 51/1 73/1 88/22
contrary [1] 81/6

control [1] 72/15
controlled [1] 36/20
controls [1] 9/23
conversation [5] 44/6 48/1 84/13 87/18 87/23
conversations [2] 42/2 75/7
convince [1] 92/3
COO [1] 22/3
copy [7] 6/20 6/21 6/23 26/5 42/13 95/13 95/15
corp [1] 21/19
corporation [1] 29/13
correct [42] 26/11 26/15 27/6 27/16 27/17 27/22 28/18 30/13 30/24 31/4 35/17 35/23 44/1 53/3 53/6 53/14 54/10 57/1 60/9 60/16 61/4 61/7 61/13 61/15 64/1 64/2 64/4 67/15 67/16 67/19 70/24 72/20 73/8 75/3 80/6 81/4 81/5 82/15 83/3 93/7 94/17 98/8
corrected [1] 15/22
correctly [1] 86/12
cosmetics [13] 20/23 20/24 20/25 21/1 21/3 22/6 23/4 27/20 72/3 72/9 72/11 72/15 72/20
costs [3] 18/4 19/2 26/18
could [36] 8/8 13/8 16/16 16/20 18/20 23/4 24/10 25/19 28/13 29/8 30/2 30/25 32/8 33/21 33/24 35/10 35/12 36/22 37/19 40/10 40/24 40/25 42/25 51/19 54/24 59/14 63/16 65/1 66/18 72/1 72/17 73/2 76/2 80/11 83/18 90/22
counsel [5] 2/1 2/15 4/7 4/10 19/20
country [2] 10/24 16/6
couple [6] 7/20 10/6 16/12 40/6 46/11 71/5
couple that [1] 10/6
course [3] 9/12 46/16 85/5
court [23] 1/4 5/1 5/4 6/11 6/21 8/3 8/20 9/9 11/8 11/24 12/4 12/15 13/10 13/14 13/20 13/23 13/24 31/16 39/12 49/24 64/19 98/16
Court's [1] 13/13
Courthouse [1] 1/19 2/7
courtroom [3] 9/15 16/13 79/5
cover [1] 14/17
covered [1] 16/6
covers [1] 10/4
COVID [3] 4/15 4/25 20/3
create [1] 69/14
created [1] 69/25
creditors [2] 39/13 49/21
criminal [2] 2/5 12/12
critical [1] 18/19
crop [1] 61/9
cross [17] 3/4 3/9 9/25 10/24 15/9 15/10 15/20 15/23 16/6 17/7 17/9 17/10 17/15 52/17 61/23 96/3 96/22
cross-examination [6] 9/25 17/7 17/9 17/10 52/17 61/23
cross-examine [1] 15/10
cross-examined [1] 15/10
Cummings [2] 4/11 19/24
cumulative [1] 15/11
current [3] 8/25 18/21 18/22
currently [1] 22/3
custom [1] 71/5

**D**

D.C [2] 5/2 17/1
Darryl [2] 37/1 37/6
data [8] 18/3 18/9 18/19 18/21 18/22 18/23 19/1 19/7
date [2] 28/15 38/14 50/18 68/25 98/13
dated [2] 29/14 40/25
day [28] 1/12 4/14 4/16 10/7 10/8 15/3 16/11 44/23 45/12 45/15 46/9 46/10 47/3 47/24 48/20 49/7 49/19 49/24 69/18 80/4 80/5 80/6 80/7 81/10 81/12 81/21 81/22 96/10
days [7] 8/4 9/16 40/3 40/4 40/5 43/25 95/24
deal [4] 73/11 73/11 73/12 73/13
dealing [1] 11/5
dealings [1] 79/17
DEAN [4] 2/15 2/15 4/10 19/23
Dear [1] 34/8
decisions [1] 25/13

**D**

**declaration** [3]  8/13 8/16 8/17
**defendant** [69]  1/12 2/13 7/16 8/1 10/12
10/23 11/2 11/18 11/18 23/7 23/14 23/21 24/3
24/6 24/9 27/1 27/3 27/7 27/18 28/7 29/21
31/6 31/24 32/17 33/2 35/24 36/3 36/9 36/16
36/18 38/1 39/7 39/9 39/11 39/17 39/19 41/18
41/22 41/23 42/2 42/5 42/14 43/12 43/13
44/11 44/14 44/18 45/2 45/11 45/19 46/5 46/5
46/9 46/19 47/2 47/4 48/15 48/19 48/20 49/18
50/7 50/8 50/23 51/2 51/3 51/7 51/21 52/3
52/9
**defendant's** [4]  12/11 40/14 42/18 43/6
**defense** [19]  3/9 3/11 5/22 9/13 12/1 12/2
12/12 12/18 12/23 17/24 55/12 55/12 55/19
56/4 63/2 65/4 65/13 67/5 80/8
**define** [1]  80/3
**degree** [1]  53/6
**Delaware** [1]  29/12
**delete** [1]  92/17
**deletion** [1]  92/5
**delivered** [3]  6/14 6/16 6/17
**denied** [7]  44/9 48/13 60/6 80/22 81/24 87/1
92/12
**dental** [1]  95/14
**denying** [1]  89/25
**Department** [24]  77/19 78/4 78/13 78/25 81/3
81/8 81/19 82/12 83/2 83/6 84/10 85/5 85/10
85/16 87/6 88/4 88/23 89/13 89/16 90/9 90/20
91/15 92/3 92/14
**describe** [2]  24/3 52/5
**despite** [1]  57/19
**detailed** [1]  24/16
**details** [8]  24/24 28/5 58/20 75/22 77/2 86/22
87/23 96/1
**determine** [2]  9/12 18/20
**determined** [1]  59/24
**determining** [1]  19/2
**devastated** [1]  52/7
**did** [103]
**didn't** [57]  8/18 8/20 8/21 11/4 27/9 33/18
38/11 39/24 40/5 41/8 43/11 43/11 45/5 45/21
45/23 45/25 47/5 47/18 47/25 48/6 48/18
49/12 51/13 54/6 54/7 55/3 55/23 69/1 69/5
78/9 78/13 81/12 88/7 90/16 90/21 94/21
94/23
**different** [6]  31/14 40/9 44/2 62/9 90/20 90/24
**difficult** [1]  97/12
**difficulty** [1]  8/4
**dilemma** [1]  9/14
**dinner** [2]  44/16 44/21
**direct** [13]  3/4 3/9 11/7 11/21 15/20 20/17
57/20 64/21 72/12 73/23 74/19 78/10 78/14
**directing** [1]  13/10 68/15 78/22
**disadvantage** [1]  9/17
**disbursement** [1]  84/11
**disbursements** [3]  70/13 79/11 83/14
**Discovery** [2]  21/16 29/12
**discuss** [4]  23/14 27/9 64/10 95/7
**discussed** [2]  34/10 46/8
**discussing** [1]  24/2
**discussion** [5]  31/24 35/24 43/21 47/3 82/14
**discussions** [2]  27/7 45/19
**dispute** [8]  66/14 66/24 70/10 70/11 71/23
76/23 84/20 84/21
**distinguish** [2]  5/11 5/13
**distinguishing** [1]  13/12
**DISTRICT** [2]  1/4 1/5
**Divinium** [7]  22/3 22/5 22/6 79/13 79/18
79/23 80/2
**DIVISION** [2]  1/6 2/5
**do** [124]
**docket** [5]  6/10 7/12 9/3 10/8 10/25
**document** [16]  55/10 65/24 68/20 70/19
70/22 71/6 71/9 73/8 73/10 74/25 75/1 75/9
75/15 78/20 79/8 86/2
**does** [17]  4/22 14/2 16/2 16/17 20/24 22/1
31/14 46/15 46/19 56/5 66/5 68/23 78/23 82/1
84/17 87/14 88/3

**E**

**e-mail** [24]  26/3 26/4 26/9 28/16 33/24 34/4
34/7 34/8 35/5 35/6 35/8 35/13 35/22 36/4
36/23 37/11 37/25 38/12 38/14 39/8 39/15
49/6 85/6 86/9
**e-mails** [2]  23/17 85/24
**each** [5]  4/25 11/6 11/19 53/5 55/23
**earlier** [1]  86/11
**early** [2]  34/11 34/20
**easier** [2]  56/19 74/13
**East** [1]  17/1
**easy** [7]  24/11 24/13 24/21 57/21 58/6 58/7
58/8
**editor** [2]  57/1 57/18
**effect** [2]  11/1 34/11
**efforts** [1]  64/21
**either** [5]  10/19 43/12 48/19 79/5 96/10
**electronic** [1]  66/11
**elicited** [2]  18/22 18/24
**elmo** [2]  54/17 62/11
**else** [6]  10/5 31/8 31/11 51/17 60/15 72/22
**EM** [8]  20/22 20/24 22/6 72/3 72/9 72/11
72/15 72/19
**Emily** [3]  78/3 78/24 81/8
**emoji** [2]  57/7 69/16
**emojis** [1]  46/17
**emotional** [2]  28/8 52/4
**empathized** [1]  47/20
**employed** [2]  21/20 20/22
**employee** [1]  21/23
**end** [4]  4/13 4/15 15/3 15/9
**enforcement** [2]  82/7 82/9
**engage** [1]  44/5
**engaged** [1]  23/12
**engaging** [1]  11/3
**ensure** [1]  11/2
**ensures** [1]  13/14
**enter** [1]  51/2
**entire** [1]  48/2
**entirely** [1]  90/20
**entirety** [1]  63/3
**entitled** [5]  12/1 12/2 12/22 51/25 98/9
**entrusted** [1]  77/12
**equity** [2]  72/8 72/14
**escrow** [1]  86/4
**especially** [1]  9/11
**essentially** [1]  30/9
**establish** [1]  78/19
**established** [2]  18/18 72/18
**estimate** [1]  96/3
**even** [5]  12/6 31/17 61/19 70/24 88/7
**evening** [2]  8/9 46/8
**event** [9]  44/20 48/2 82/2 89/14 90/6 91/6
91/13 91/16 91/25
**eventually** [1]  51/16
**ever** [12]  23/2 41/18 48/21 51/2 51/6 51/10
51/21 51/25 68/15 69/14 74/19 85/4
**every** [4]  11/11 11/13 11/17 53/3

**everybody** [1]  5/3
**everyone** [2]  35/14 89/16
**everything** [16]  44/7 47/15 53/12 60/2 60/4
60/8 60/12 60/15 60/19 66/10 66/12 68/1 69/5
70/2 82/4 92/10
**everywhere** [2]  47/18 47/20
**evidence** [15]  5/17 5/20 12/24 25/18 29/1
33/22 37/20 42/21 42/24 56/17 62/6 63/9 65/5
67/5 86/2
**Evidently** [1]  6/19
**exact** [2]  55/25 86/22
**exactly** [1]  33/12
**examination** [4]  9/25 17/7 17/9 17/10 20/17
52/17 61/23 73/24
**examine** [1]  15/23
**examined** [2]  15/10 15/14
**except** [2]  60/6 79/22
**exchange** [1]  89/7
**exchanged** [1]  62/25
**exchanges** [3]  67/14 67/18 67/22
**executed** [2]  26/5 28/17
**execution** [1]  77/9
**exhibit** [47]  3/8 3/13 3/13 25/17 25/19 25/25
28/25 29/2 33/6 33/21 37/19 40/10 40/25 42/7
42/8 42/11 42/18 42/22 42/24 46/1 53/20
55/12 55/19 56/4 56/17 60/8 61/17 61/25 62/3
63/9 65/4 66/4 66/3 66/3 66/5 66/15 67/21
68/7 68/23 70/15 72/25 73/10 74/8 75/17 80/9
84/14 85/13
**Exhibit 1079** [2]  80/9 84/14
**Exhibit 1081** [8]  55/12 55/19 56/4 61/17 62/3
65/4 65/14 68/7
**Exhibit 1082** [1]  68/23
**Exhibit 1083** [5]  66/3 66/3 66/5 66/15 67/21
**Exhibit 266** [5]  25/17 72/25 73/10 74/8 75/17
**Exhibit 268** [4]  28/25 29/2 33/6 70/15
**Exhibit 269** [1]  40/25
**Exhibit 272** [1]  33/21
**Exhibit 273** [1]  85/13
**Exhibit 275** [1]  37/19
**Exhibit 294** [8]  42/7 42/8 42/11 42/18 42/22
46/1 53/20 60/8
**Exhibit 369** [1]  40/10
**exhibits** [3]  3/7 3/12 62/10
**exists** [1]  11/17
**exit** [12]  23/3 23/12 25/14 58/5 58/11 58/21
67/17 72/2 72/8 75/20 76/1 79/12
**exiting** [2]  24/2 72/19
**expect** [1]  25/11
**expectation** [1]  37/17
**expected** [4]  14/18 36/19 37/18 49/1
**expecting** [4]  36/12 36/15 39/20 39/21
**expedition** [1]  11/3 13/16
**experience** [2]  12/17 17/2
**explain** [1]  71/3
**explaining** [1]  48/16
**explanation** [4]  47/23 47/25 51/6 51/22
**explanations** [1]  41/18

**F**

**F.3d** [2]  7/22 9/24
**F.Appx** [1]  7/23
**fact** [8]  18/13 52/11 54/20 61/25 67/10 76/21
80/2 81/8
**facts** [1]  57/23
**fair** [4]  27/6 27/20 27/25 42/13
**faith** [1]  45/6
**fallacy** [1]  17/8
**false** [1]  18/17
**familiar** [3]  54/19 54/20 54/25
**far** [3]  40/19 67/23 68/1
**fast** [1]  48/8
**feasible** [1]  8/8
**February** [5]  22/23 23/18 75/21 77/9 77/12
**February 2017** [1]  23/18
**February of** [1]  77/12
**federal** [2]  2/10 83/3
**fee** [10]  26/9 26/22 26/25 27/15 27/16 28/21
29/19 29/20 51/1 72/25

doesn't [1]  74/2
doing [3]  27/18 94/2
don't [60]  4/21 6/3 8/7 8/13 10/8 11/10 11/16
11/23 12/3 12/7 13/6 13/23 14/17 15/9 16/12
16/20 17/23 18/9 18/23 23/16 25/23 31/17
31/18 44/4 47/25 53/20 57/17 58/2 58/20 61/5
63/17 64/3 64/20 66/8 66/8 66/21 67/23 67/24
69/13 73/24 74/15 74/16 74/16 77/2 77/5
77/21 79/7 80/20 82/21 84/13 84/21 86/18
87/10 87/18 87/23 89/19 89/21 96/5 97/5 97/5
done [6]  5/24 17/23 44/15 86/24
doubt [2]  13/25 48/9
down [5]  25/23 33/25 53/22 56/20 90/12
download [3]  92/3 92/16 92/18
downstairs [1]  44/21
draft [2]  5/9 5/23 28/16
Drum's [1]  18/2
due [4]  11/22 33/9 33/11 80/1
during [4]  8/3 10/7 25/1 28/23 36/3 36/9
43/18 43/21 47/10 48/1 63/19 77/6 77/24 83/1

**F**

**feel [6]** 5/1 8/18 8/20 8/21 33/2 40/1
**feeling [1]** 40/2
**fees [5]** 26/17 29/21 32/11 32/18 36/10
**felt [3]** 8/18 33/3 48/15
**figure [1]** 18/8
**filed [2]** 9/3 9/18
**filing [12]** 6/12 6/13 6/14 6/15 6/17 6/20 7/3 7/13 9/8 10/14 10/19 11/5
**filings [3]** 8/13 10/4 18/14
**Filippo [3]** 38/1 38/4 38/8
**final [3]** 5/10 5/10 5/12
**finally [1]** 9/22
**financial [1]** 18/15
**find [2]** 16/20 94/5
**finds [1]** 34/8
**fine [9]** 6/2 6/6 7/1 7/11 8/23 15/7 62/14 84/7 97/13
**finish [1]** 90/16
**finishing [1]** 44/20
**firm [5]** 39/9 76/1 76/21 77/5 80/1
**first [42]** 14/19 20/10 22/13 26/3 26/6 30/17 30/18 30/23 31/22 32/3 32/14 32/16 32/18 32/20 32/23 33/1 33/8 34/18 36/16 40/11 40/21 42/25 43/8 48/9 52/10 53/5 56/5 56/12 56/13 56/15 56/20 62/5 69/3 72/4 78/22 79/11 81/9 81/20 82/7 85/5 86/6 96/2
**fishing [2]** 11/3 13/16
**flies [1]** 16/6
**flight [2]** 16/19 16/25
**fly [1]** 10/24
**flying [2]** 47/18 47/20
**follow [4]** 24/14 74/22 86/10 90/2
**follow-up [3]** 24/14 74/22 90/2
**following [1]** 82/25
**follows [1]** 17/6
**foregoing [1]** 98/7
**forensic [1]** 59/14
**forget [1]** 55/3
**form [7]** 12/16 12/19 53/10 64/10 73/16 83/23 95/8
**format [1]** 98/10
**forward [3]** 37/12 85/6
**forwarded [1]** 35/10
**found [6]** 9/25 89/13 90/6 91/6 91/13 91/16
**foundation [8]** 42/21 49/14 55/14 55/16 62/12 67/1 67/6 67/8
**founded [3]** 21/11 21/13 21/14
**four [4]** 26/16 40/3 40/3 40/5
**Fourth [1]** 2/11
**FOX [1]** 2/4
**frankly [1]** 11/24
**Frauds [1]** 2/6
**friend [2]** 38/9 57/6
**front [4]** 15/9 33/6 66/3 76/16
**full [7]** 3/13 12/22 50/14 50/20 50/24 63/6 96/5
**fundamental [1]** 12/11
**funds [1]** 34/15
**further [2]** 10/2 52/15

**G**

**Galicia [4]** 10/13 11/4 13/9 14/9
**Galicia's [1]** 10/14
**Gardner [1]** 6/11
**gave [8]** 36/6 59/19 60/1 61/15 63/18 78/12 82/7 82/11
**gears [2]** 70/1 72/1
**generally [6]** 9/6 17/2 42/10 82/1 82/12 89/10
**generous [1]** 32/15
**gentlemen [3]** 20/1 64/9 95/7
**get [39]** 4/23 10/3 10/17 16/17 21/3 24/7 24/11 27/18 27/19 27/20 27/24 28/2 30/10 30/25 31/19 32/4 32/7 32/9 36/13 36/15 39/13 40/5 40/5 41/16 41/19 51/7 51/19 52/3 53/8 54/24 58/2 59/13 72/3 72/8 72/8 72/22 79/9 79/12 82/1
**getting [5]** 28/5 30/21 43/25 72/14 72/15
**Giglio [2]** 18/5 19/9

**give [2]** 5/18 65/7
**given [3]** 8/23 66/23 91/1
**giving [2]** 6/7 54/7
**go [18]** 15/14 15/18 18/13 20/4 46/24 47/16 47/17 48/4 63/25 64/3 70/15 71/4 71/9 72/25 73/7 74/12 86/16 99/4
**goals [4]** 23/8 27/19 72/2 72/7
**goes [1]** 42/2
**going [36]** 6/19 9/13 9/14 11/7 13/2 13/21 14/19 19/9 25/17 28/25 30/7 30/8 32/9 33/9 33/11 34/19 36/18 42/7 44/25 46/24 57/19 57/21 58/5 58/6 62/11 62/12 62/13 63/17 79/9 91/9 91/10 95/24 96/6 96/7 96/14 96/20
**good [18]** 4/5 4/8 4/9 4/17 19/18 19/21 19/22 19/25 20/1 20/4 20/19 20/20 34/10 46/6 52/19 64/6 95/3 95/5
**gosh [1]** 25/22
**got [16]** 16/12 21/4 21/6 25/2 38/14 44/2 48/7 59/10 59/12 59/21 71/16 72/19 72/19 81/9 94/19 96/3
**gotten [1]** 47/24
**government [32]** 5/19 7/5 7/14 7/17 9/20 10/2 10/11 11/6 11/11 11/19 11/24 11/25 12/10 13/2 13/11 14/3 14/12 15/14 17/23 18/3 18/15 19/4 20/7 42/18 59/10 59/13 59/19 60/1 61/15 63/19 66/7 83/3
**government's [8]** 5/14 8/12 9/16 10/25 11/16 13/13 14/16 20/8
**great [1]** 85/8
**green [2]** 36/6 93/5
**greet [1]** 22/19
**Grill [1]** 44/22
**gritty [1]** 88/24
**group [1]** 67/14
**guess [3]** 9/21 14/9 96/8
**guys [3]** 28/20 38/12 85/9

**H**

**had [69]** 5/2 8/15 8/16 8/17 8/23 9/15 18/15 20/3 25/6 25/14 25/15 29/3 30/22 32/12 35/23 37/21 39/11 39/19 42/14 43/5 43/24 44/25 45/6 46/8 47/24 48/9 48/21 49/6 53/5 54/21 55/24 59/1 60/2 60/8 60/12 67/18 68/24 69/9 70/23 71/2 74/19 75/20 76/1 76/21 77/5 77/13 77/16 80/2 81/20 83/6 84/23 86/14 86/15 86/19 87/6 87/6 87/15 87/16 87/23 89/8 89/13 90/5 90/6 90/6 91/13 91/13 92/15 94/19 95/23
**hadn't [1]** 41/24
**half [3]** 18/6 26/23 50/16
**hand [1]** 22/2
**handed [5]** 55/10 65/24 66/2 68/20 78/20
**handle [2]** 35/10 88/24
**handled [2]** 24/24 77/3
**handling [1]** 85/7
**HANNA [1]** 2/3
**happen [4]** 6/20 30/11 37/17 41/8
**happened [9]** 28/24 43/17 48/8 51/22 59/21 89/17 90/5 90/18 92/20
**happens [1]** 17/11
**happy [5]** 10/1 11/15 17/3 33/3 33/3
**hard [1]** 52/12
**has [33]** 4/19 4/25 9/8 9/11 9/17 9/20 10/2 11/18 11/19 12/10 15/25 17/14 18/3 18/10 19/8 19/8 22/2 30/3 30/6 38/17 50/7 66/2 75/22 76/15 78/22 85/7 95/14 95/25 95/25 96/1 96/3 96/4
**hash [2]** 54/16 54/23
**hasn't [2]** 55/15 62/1
**have [120]**
**haven't [1]** 61/19 83/16
**having [5]** 23/12 31/20 44/6 44/20 45/24
**he [93]** 10/12 14/14 14/19 15/8 15/10 15/23 15/25 16/1 16/2 16/16 16/17 16/19 22/3 22/3 24/10 24/11 24/20 24/21 28/13 28/13 31/8 31/11 32/2 32/3 32/3 32/4 32/4 32/6 32/10 35/10 36/4 36/6 36/6 36/7 37/25 38/7 38/7 39/11 39/12 43/11 43/16 44/7 44/5 45/7 45/7 45/8 45/9 45/13 46/10 46/13 46/22 47/16 47/16 47/18 47/18 47/23 47/24 47/25 48/4

**he's [4]** 14/13 58/12 93/24 94/10
**head [3]** 10/9 15/17 27/23
**health [1]** 25/1
**hear [10]** 5/14 5/17 5/20 13/22 83/22 90/2 95/20 97/5 97/6 97/9
**heard [4]** 4/13 18/7
**hearing [1]** 27/11 42/20 78/16 78/18 89/2 89/2
**heart [4]** 46/17 69/16
**held [1]** 98/9
**help [7]** 23/7 23/12 23/12 25/3 25/4 25/24 28/13
**her [19]** 5/7 8/7 8/16 8/18 8/19 8/21 12/12 57/7 78/5 93/24 95/19 95/21 95/25 96/2 96/2 96/5 96/7 96/9 96/14
**here [16]** 10/18 13/16 14/19 16/23 17/3 27/1 34/9 38/12 38/23 49/24 64/9 83/10 84/24 86/10 95/6 95/18
**here's [2]** 74/14 74/18
**hereby [1]** 71/18 98/6
**Hernandez [4]** 19/24 56/18 63/16 65/1
**Hey [1]** 89/15
**Hi [3]** 35/13 35/16 37/3 38/12 44/15 86/3 86/10
**high [1]** 48/3
**him [49]** 14/13 15/14 15/24 15/25 16/19 17/5 22/12 22/12 24/10 26/10 26/20 22/20 23/7 23/12 23/15 23/16 23/24 24/1 24/7 24/12 24/13 24/13 24/15 25/5 27/8 27/9 27/20 32/3 32/15 36/19 43/10 43/16 43/19 44/6 44/23 45/8 46/23 46/25 47/9 47/21 48/17 48/18 49/5 49/6 50/1 51/3 52/11 60/22 69/13 79/18
**hire [2]** 22/20 23/7
**hired [5]** 25/6 27/18 28/11 52/3 52/11
**hiring [1]** 23/15
**his [24]** 5/2 9/4 10/13 12/12 15/25 18/16 24/10 27/2 29/21 32/7 32/10 32/17 36/16 39/9 39/12 42/1 43/11 44/3 45/7 48/7 48/10 49/6 49/21 54/7
**hit [1]** 52/13
**holder [1]** 29/13
**holding [1]** 22/6
**holds [2]** 11/17 14/25
**honest [3]** 65/8 83/7 83/9
**honestly [2]** 58/20 78/5
**honor [98]** 4/5 4/9 4/20 5/22 6/9 6/16 6/19 6/25 7/9 7/11 8/11 9/2 9/7 9/19 10/6 10/22 11/9 11/15 11/21 12/3 12/8 13/2 13/19 14/7 14/24 15/6 15/16 15/16 16/25 16/25 17/20 18/1 18/12 18/18 19/18 19/22 20/6 20/16 27/11 33/22 42/17 45/7 47/12 48/9 52/15 55/8 55/11 55/14 56/11 57/22 58/12 59/4 60/5 61/18 61/24 62/7 63/2 63/5 64/7 64/17 65/22 66/11 67/1 67/4 67/7 68/18 69/4 69/7 69/19 76/5 76/24 78/6 78/15 78/19 79/21 80/8 80/24 81/5 82/3 84/5 84/25 86/25 88/15 89/1 89/24 90/3 92/6 92/21 93/24 94/9 94/22 95/3 95/17 96/13 96/18 97/2
**Honor's [10]** 10/15 10/20 57/22
**HONORABLE [1]** 1/8
**Hope [1]** 34/8
**hoping [2]** 23/2 23/3
**hosting [2]** 89/14 91/6
**hotel [6]** 43/16 45/1 45/12 45/16 45/16 45/17
**hour [3]** 17/4 19/4 96/3
**hourly [3]** 27/8 27/8 27/16
**hours [2]** 93/15 93/16
**how [36]** 7/10 20/21 21/1 21/3 22/11 22/12 24/13 27/1 27/23 28/2 28/20 31/7 31/18 31/24 32/6 32/10 33/1 36/12 37/22 38/7 38/23 40/2 41/21 43/12 43/12 47/19 47/23 49/12 49/13 52/5 59/20 59/21 64/19 77/23 80/3 86/23

## H

huh [1] 35/18
hundred [2] 39/4 53/13 83/7

## I

I'd [4] 9/20 16/15 56/3 56/14
I'll [8] 7/1 16/13 71/4 83/22 85/9 92/18 92/25 95/13
I'm [54] 4/24 5/1 5/18 9/12 9/13 9/14 10/6 11/7 11/15 12/3 12/15 13/10 13/21 14/8 14/8 14/19 15/12 15/16 17/3 17/15 19/5 20/22 24/19 25/17 28/25 29/9 31/17 34/8 42/7 44/19 46/24 50/10 54/16 56/14 65/14 62/1 62/11 62/12 62/12 63/17 73/11 74/24 75/1 81/14 83/16 85/18 90/16 91/10 91/24 94/21 96/1 96/21 97/6 97/11
I've [2] 13/21 13/22
I-N-D-E-X [1] 3/2
idea [11] 7/7 14/14 17/13 25/22 27/23 52/11 83/13 84/11 84/12 84/23 84/24
identified [2] 50/7 50/8
identifiers [1] 62/1
identify [1] 50/1
ignore [1] 47/11
image [1] 59/14
immediately [11] 32/21 35/10 37/12 39/22 39/24 79/13 80/1 80/3 81/9 81/20 86/9
impeach [1] 13/8
impeachment [10] 12/14 12/21 17/7 17/8 17/11 17/14 55/13 80/9 80/14 89/2
implied [1] 91/25
importance [3] 18/19 53/2 53/3
important [4] 9/11 12/10 19/2 59/25
improper [4] 76/24 89/2 89/2 89/2
inaccurate [1] 15/13
Inc [1] 29/12
include [1] 14/3
included [5] 9/8 10/13 63/23 64/1 64/4
including [1] 39/13
incoming [2] 40/13 50/10
incomplete [1] 5/19
Incorporated [1] 21/16
index [1] 18/11
indicate [2] 8/2 50/6
indicated [1] 91/7
indicating [1] 95/14
individual [7] 4/14 7/16 7/17 20/2 21/20 22/8 49/23
individuals [1] 12/18
industry [2] 21/1 21/3
info [2] 35/16 38/13
information [5] 18/15 34/16 35/23 38/18 51/16
informed [1] 6/18
inherent [1] 10/21
initial [7] 5/11 5/13 6/4 30/6 30/17 31/22 32/20
Instagram [3] 69/2 69/17 69/25
instances [1] 67/14
Instead [1] 32/12
instruction [1] 64/19
instructions [8] 5/10 5/11 5/12 5/13 5/15 5/24 6/4 6/6
intended [1] 75/25
interest [1] 15/6
interested [1] 21/6
interests [1] 25/16
interview [9] 13/7 78/10 78/12 80/12 82/7 82/11 82/12 82/25 83/1
interviewed [6] 77/18 77/23 77/24 78/3 81/2 81/18
investigation [1] 11/20 13/3 14/5 63/19
investigator [10] 77/19 78/3 78/25 81/7 82/13 83/5 83/12 84/10 87/9 87/15
investigators [2] 84/3 87/24
invite [5] 7/13 7/20 8/1 13/12 13/18
invited [2] 7/2 46/10
invites [1] 6/10
involve [1] 58/10

involved [4] 11/20 14/4 70/12 82/12
iPhone [3] 53/14 54/23 55/2
IPSY [37] 21/8 21/10 21/11 21/19 21/23 22/24 23/1 23/8 24/8 24/14 27/19 28/6 28/22 29/3 29/16 29/25 32/20 34/3 34/9 34/19 37/1 37/7 38/13 43/6 57/15 57/19 58/5 58/11 58/21 67/18 70/11 71/23 72/19 75/21 76/1 79/12 80/20
ircuit [1] 7/22
IRS [1] 39/13
is [160]
isn't [24] 55/21 55/24 55/25 56/1 58/7 62/25 63/23 65/7 67/10 69/11 75/21 77/19 79/25 81/6 81/10 81/10 81/18 82/8 83/14 84/9 87/5 87/8 90/18 94/8
issue [4] 4/25 9/22 10/3 11/20 17/23 17/24 64/18 95/17
issues [6] 5/4 5/4 33/4 33/5 64/11 95/9
it's [32] 11/23 12/10 13/25 16/3 18/6 18/19 19/1 20/25 21/5 21/11 23/16 40/9 40/23 42/7 43/9 45/17 49/4 54/3 61/8 71/16 71/11 78/15 78/18 80/20 83/23 86/24 90/24 94/4 94/9 96/10 96/20 97/3 97/6
Item [2] 4/3 19/16
its [4] 7/17 11/25 63/19 80/1

## J

JAMES [1] 1/8
Jen [1] 34/10
JOHN [1] 1/1 2/14 4/4 19/17
JUDGE [1] 1/8
Judicial [1] 98/11
Judy [2] 38/1 38/10
juror [7] 4/13 4/17 4/19 4/23 5/2 5/6 95/14
jurors [1] 4/25
jury [16] 4/2 5/10 5/11 13/15 19/11 19/15 53/12 56/19 58/4 64/16 64/18 64/24 76/16 81/7 94/10 95/12
just [68] 5/12 8/7 8/20 11/13 12/9 15/14 19/5 22/18 24/11 24/24 25/3 25/14 26/17 27/3 27/10 28/12 28/12 28/16 29/8 32/15 37/3 40/8 42/10 44/15 44/19 45/5 47/15 47/19 48/7 52/13 53/12 58/1 59/1 60/9 61/9 62/10 63/11 64/19 65/10 65/20 70/6 70/25 71/1 74/1 74/13 79/16 81/6 81/13 81/14 82/2 82/6 82/22 83/16 85/19 85/21 86/10 88/9 88/25 91/11 92/25 93/11 95/19 96/22 97/4 97/6 97/11
JVS [3] 1/11 4/3 19/16

## K

Karlous [5] 4/7 14/3 18/25 18/25 19/20
keep [3] 45/16 51/4 86/5
keeping [1] 4/21
Kim [3] 14/4 79/2 79/5
kind [2] 33/24 39/25
kiss [2] 69/10 69/15
knew [2] 49/12 58/6
know [48] 4/21 10/23 12/7 14/24 16/20 17/16 17/23 18/11 19/6 21/8 21/15 21/20 22/8 22/11 22/12 22/12 31/7 31/17 31/18 31/19 34/2 35/23 37/4 37/5 38/4 38/7 38/8 38/10 38/11 41/16 43/13 43/18 48/24 49/1 50/17 50/20 57/10 57/15 59/10 74/25 75/9 77/5 86/6 96/4 96/5 97/3 97/10 97/11
knowing [4] 90/5 90/7 90/18 90/19
knowledge [6] 53/13 65/6 65/15 65/17 73/20 73/21
knows [1] 57/7

## L

Labs [4] 79/14 79/19 79/23 80/2
lacks [4] 49/14 55/14 67/1 67/6
ladies [3] 20/1 64/9 95/6
last [10] 16/19 16/25 20/11 41/1 60/6 60/25 63/14 63/18 73/7 92/21
later [5] 10/18 31/19 33/12 33/12 96/10
lavalier [2] 97/8 97/8
law [10] 2/15 11/23 12/19 14/24 31/13 39/9

52/10 80/1 82/7 82/8
lawyer [2] 91/15 91/15
lawyers [1] 79/1
lay [3] 55/16 62/12 67/8
Leading [6] 25/8 28/9 31/2 33/14 41/11 45/3
leaned [1] 88/24
learn [2] 33/18 39/16
learned [3] 34/19 39/19 83/1
least [1] 13/7
leave [4] 23/8 28/6 28/8 28/13
leaving [3] 22/24 23/1 24/14
led [3] 71/21 72/6 83/23
left [2] 5/16 49/13
Legal [1] 26/17
let [22] 6/2 12/9 14/11 15/14 16/13 24/19 29/18 32/9 34/18 37/4 37/5 37/20 38/4 43/24 57/9 57/14 61/20 61/23 74/1 76/14 86/6 97/9
let's [6] 63/25 64/23 85/23 89/6 92/25 95/20
light [1] 36/6
like [28] 8/24 9/10 9/21 9/21 9/22 15/4 16/15 17/24 18/11 19/6 36/8 44/4 46/11 48/7 52/12 54/23 56/3 56/12 56/14 64/17 64/19 81/10 81/12 81/20 81/22 85/7 86/5 92/17
limited [3] 12/13 12/15 12/21
line [9] 80/9 80/10 80/13 80/13 80/15 80/17 80/18 80/19
line 1 [3] 80/10 80/13 80/18
line 23 [3] 80/13 80/15 80/19
line 24 [2] 80/13 80/17
lines [5] 41/1 84/14 87/1 87/25 89/22
list [1] 44/21
listed [1] 38/23
listen [2] 65/10 70/5 88/10
listening [1] 90/16
lists [1] 34/22
little [3] 30/19 54/16 54/23
LLC [1] 79/14
load [1] 54/22
location [1] 53/23
logistics [1] 25/5
long [56] 21/1 21/20 21/22 21/23 22/1 22/2 22/12 23/11 23/16 23/18 23/20 23/21 23/22 23/24 24/17 24/17 24/25 25/3 25/6 25/11 25/13 25/15 26/4 27/10 28/20 31/19 34/11 35/10 37/12 37/22 40/2 41/24 42/8 44/3 45/8 47/23 48/7 48/9 58/19 67/11 68/15 70/23 70/25 73/21 73/25 75/22 75/24 76/15 79/17 79/20 86/19 87/5 88/6 88/24 96/20
Long's [3] 38/9 40/23 43/20
look [27] 7/21 8/1 11/15 14/24 18/14 25/19 26/13 28/25 29/8 30/2 30/14 33/21 33/24 35/5 35/12 36/22 40/24 41/1 42/7 46/19 55/18 56/4 84/14 85/13 87/25 89/21 95/15
looked [2] 28/16 50/10
looking [6] 18/8 24/3 28/2 28/6 29/25 44/14
looks [1] 46/11
Los [2] 2/8 17/1
lot [4] 23/17 48/9 73/23 74/12
love [1] 46/16
lunch [16] 16/16 17/4 46/7 46/10 46/25 47/2 47/10 48/1 48/20 49/24 92/4 92/15 93/10 93/18 94/19 95/6

## M

M-i-c-h-e-l-l-e [1] 20/12
made [16] 6/3 6/13 7/13 10/4 10/7 12/25 18/12 19/3 24/11 24/19 24/20 29/11 32/21 79/11 80/2 85/15
mail [24] 26/3 26/4 26/9 28/16 33/24 34/4 34/7 34/8 35/5 35/6 35/8 35/13 35/22 36/4 36/23 37/11 37/25 38/12 38/14 39/8 39/15 49/6 85/6 86/9
mails [2] 23/17 85/24
Major [1] 2/6
make [18] 4/22 5/21 12/9 13/9 14/21 15/1 15/4 16/13 17/3 17/5 25/13 48/6 72/24 95/13 95/15
makes [1] 14/22
makeup [2] 21/4 21/6

**M**

**making [4]** 5/23 21/4 25/14 69/17
**manager [1]** 49/6
**manner [1]** 80/21
**manual [4]** 6/12 6/15 6/17 6/20
**March [12]** 34/5 36/24 37/8 37/22 37/25 39/8 39/8 40/13 40/25 41/15 86/3 86/14
**March 13th [2]** 39/8 39/8
**March 14th [6]** 36/24 37/8 37/25 40/13 40/25 41/15
**March 8 [1]** 86/3
**March 8th [1]** 34/5
**March of [1]** 86/14
**Marchino [2]** 38/1 38/4
**marked [5]** 3/7 3/12 66/2 68/22 78/23
**market [2]** 27/20 27/25
**marks [2]** 54/16 54/23
**mask [1]** 97/9
**material [4]** 6/7 7/2 7/3 7/5
**matter [4]** 67/12 76/22 96/4 98/9
**may [23]** 5/16 5/16 5/17 5/17 12/17 15/16 17/17 41/5 41/9 41/15 46/11 50/12 51/20 51/21 55/9 65/23 68/19 69/21 78/7 80/25 88/14 91/22 95/19
**May 4th [5]** 41/5 41/9 41/15 50/12 51/21
**Maybe [2]** 15/12 53/21
**me [92]** 6/2 6/7 8/17 8/20 9/17 11/1 11/11 12/9 14/11 14/23 15/3 15/9 15/14 15/18 16/9 16/10 18/2 22/4 23/4 23/12 24/2 24/11 24/17 24/19 25/3 25/4 28/13 29/18 32/9 34/18 37/18 37/20 38/4 43/16 43/24 45/9 46/10 47/19 47/19 48/3 48/6 52/11 52/11 52/13 56/6 56/25 57/6 57/9 57/14 59/12 59/15 61/3 61/6 61/12 61/20 61/23 65/5 65/15 66/6 67/8 67/7 68/16 68/24 69/10 69/10 69/15 72/3 73/13 74/1 75/7 75/7 75/25 76/14 76/17 77/8 79/14 82/14 82/16 82/23 85/8 85/13 86/3 86/6 86/15 87/22 91/9 92/8 94/4 94/5 97/9 97/9
**mean [3]** 37/6 48/8 71/13
**meaning [1]** 87/21
**means [1]** 5/12
**medical [1]** 9/1
**meet [9]** 22/18 23/14 23/21 44/11 44/23 46/8 46/23 46/25 89/17
**meet-up [1]** 89/17
**meeting [7]** 22/16 22/20 23/16 23/24 24/1 24/13 34/9 43/22 45/11
**memories [1]** 79/3
**memory [10]** 24/1 28/23 43/15 44/3 45/5 45/23 47/14 82/1 83/8 83/11
**mental [1]** 25/1
**mentioned [2]** 24/24 43/24
**message [27]** 43/1 43/8 44/14 46/2 46/2 46/12 46/20 54/2 55/22 56/20 56/25 57/6 57/9 57/12 57/13 57/14 62/17 62/20 62/24 63/18 67/11 67/18 67/22 68/16 91/5 91/12 94/5
**messages [40]** 42/12 42/13 42/19 42/19 46/12 54/21 54/22 54/24 56/5 59/15 59/20 59/24 61/3 61/6 61/10 61/12 62/23 62/24 63/22 64/1 64/4 65/5 65/13 65/14 66/6 66/8 66/16 66/22 66/25 67/21 67/23 68/6 90/8 91/2 91/25 92/17 93/5 93/6 93/9 93/16
**messaging [1]** 92/16
**met [15]** 22/13 23/6 34/9 45/13 47/2 48/19 49/5 49/18 49/23 72/4 78/24 83/2 83/5 84/9 92/4
**mic [1]** 97/7
**MICHAEL [26]** 1/11 2/14 4/4 4/9 19/17 19/22 22/8 22/17 22/13 22/18 23/12 24/17 25/14 26/4 26/10 42/12 43/9 46/6 54/3 69/11 69/16 85/6 86/3 86/10 87/21 88/5
**Michael's [2]** 35/4 38/8
**MICHELLE [10]** 3/5 20/7 20/8 20/12 29/13 34/8 37/3 38/13 43/9 54/3
**mid [1]** 64/8
**mid-morning [1]** 64/8
**middle [2]** 61/22 96/21
**might [2]** 28/15 31/16
**million [2]** 14/20 28/4 30/18 30/19 38/24

48/8 48/21 49/20 50/11 50/18/4 51/7 51/9 51/13 51/15 52/9 53/9 54/21
**mind [1]** 53/6
**mine [1]** 43/11
**minimum [1]** 10/22
**minute [2]** 58/1 88/9
**minutes [8]** 6/25 15/10 15/14 15/20 15/20 16/12 63/4 64/13
**Miramar [1]** 2/16
**misconduct [1]** 13/3
**misunderstanding [1]** 12/11
**moment [2]** 72/1 89/6
**momentarily [1]** 78/19
**moments [1]** 31/5
**Monday [5]** 5/25 7/8 7/10 8/9 8/10
**money [37]** 31/25 32/21 36/18 37/9 37/18 39/4 41/7 41/16 41/19 43/25 44/5 45/2 45/6 45/7 45/8 45/19 47/4 47/5 48/3 48/7 48/22 49/4 49/7 51/4 51/13 51/19 52/12 72/19 79/12 79/13 79/18 80/1 81/9 85/8 86/20 87/16
**Monica [2]** 23/20 23/22
**monies [1]** 84/11
**month [1]** 77/6
**months [4]** 55/21 55/24 57/13 76/22
**more [8]** 18/20 21/6 24/16 61/3 61/6 61/12 66/16 75/22
**morning [18]** 4/5 4/8 4/9 4/12 8/9 9/20 10/2 10/20 19/18 19/21 19/22 19/25 20/1 20/19 20/20 34/11 52/19 64/8
**most [4]** 24/16 24/24 25/13 77/3 79/17 88/6
**mostly [2]** 41/23 73/22
**motion [2]** 7/6 9/18
**mount [1]** 12/1
**move [27]** 27/12 44/7 47/6 48/11 56/9 60/4 60/20 61/24 65/9 65/19 66/18 66/18 69/3 69/19 70/2 76/4 79/21 81/15 81/23 82/3 82/17 84/25 86/25 88/8 91/18 92/10 94/24
**moved [3]** 65/4 95/25 97/7
**moves [1]** 42/18
**moving [2]** 22/23 29/9
**Mr [8]** 14/12 14/17 18/25 37/3 61/23 67/11 68/24 83/21
**Mr. [70]** 4/10 6/10 7/4 7/12 9/3 10/17 10/20 10/23 11/3 12/14 12/17 14/3 14/4 14/4 14/12 14/18 15/15 15/10 15/19 16/10 17/6 18/2 18/16 18/17 19/23 20/5 20/15 37/23 38/9 59/15 42/1 45/1 52/16 53/1 53/9 54/2 55/22 56/21 57/13 57/20 64/25 68/18 69/1 69/6 69/9 70/15 72/2 73/5 73/12 73/24 74/18 75/7 75/14 76/15 76/20 77/19 79/5 79/15 84/23 86/3 86/14 86/19 88/24 89/7 90/1 91/3 92/15 96/12
**Mr. Andre [1]** 18/17
**Mr. Avenatti [9]** 6/10 7/4 7/12 9/3 11/3 52/16 64/25 90/1 96/12
**Mr. Brown [1]** 79/5
**Mr. Chang [1]** 38/15
**Mr. Chang's [1]** 39/15
**Mr. Dean [2]** 4/10 19/23
**Mr. Drum's [1]** 18/2
**Mr. Karlous [1]** 14/3
**Mr. Kim [2]** 14/4 79/5
**Mr. Long [3]** 68/15 86/19 88/24
**Mr. Roberson [1]** 14/4
**Mr. Sagel [23]** 12/14 17/6 18/16 20/5 20/15 53/1 53/9 54/2 55/22 56/21 57/13 57/20 70/15 72/2 73/5 73/24 74/18 75/14 77/13 78/9 89/7 91/3 92/15
**Mr. Sagel's [1]** 12/17
**Mr. Tran [13]** 37/23 42/1 68/7 69/1 69/6 69/9 73/12 75/7 76/15 76/20 84/23 86/3 86/14
**Mr. Tran's [1]** 45/1
**Mr. Varani [9]** 10/17 10/20 10/23 14/12 14/18 15/5 15/10 15/19 16/10
**Ms [15]** 18/7 18/19 18/24 19/24 56/4 56/18 59/21 63/16 65/1 81/13 85/4 88/10 91/9 91/11 95/20
**Ms. [41]** 4/11 19/24 20/19 42/19 52/19 53/25 54/25 55/18 56/23 58/4 58/9 63/18 65/4 65/10 65/13 66/2 67/10 68/5 68/22 69/14 70/5

74/7 74/12 76/20 79/8 79/10 79/25 81/2 81/18 82/6 84/8 88/16 89/19 89/20 90/1 91/9 94/4 95/18
**Ms. Bredahl [1]** 25/24
**Ms. Cummings-Cefali [2]** 4/11 19/24
**Ms. Phan [37]** 20/19 52/19 53/25 54/25 55/18 56/23 58/4 58/9 63/18 65/4 65/10 65/13 66/2 67/10 68/5 68/22 69/14 70/5 74/7 74/12 76/20 79/8 79/10 79/25 81/2 81/18 82/6 84/9 85/18 86/2 87/5 90/5 91/5 92/2 93/3 94/4 95/18
**Ms. Phan's [1]** 42/19
**much [3]** 13/6 27/23 28/2 36/12 38/23 41/23 49/12 49/13
**multiple [1]** 70/13
**my [91]** 8/21 10/9 11/9 11/22 12/2 14/2 14/7 14/20 15/13 15/17 17/2 17/15 21/5 22/2 22/6 23/4 24/1 25/1 25/15 25/22 28/23 30/9 31/13 39/21 40/21 43/15 43/20 44/2 44/19 45/5 45/13 45/23 45/24 47/14 47/18 48/7 49/4 51/18 51/19 52/12 53/8 54/6 57/6 57/13 58/21 60/2 61/22 65/7 65/17 66/1 66/24 69/17 69/18 69/23 71/4 72/5 73/13 73/21 74/1 74/14 74/18 76/1 76/25 78/1 80/1 81/13 82/6 83/8 83/11 83/13 83/14 84/11 84/12 84/22 85/8 86/16 86/20 87/7 87/16 88/7 88/25 91/8 91/10 91/11 91/16 96/8 96/22 96/22 97/4
**myself [5]** 23/5 24/10 38/13 42/12 45/14

**N**

**name [10]** 20/11 21/20 22/8 31/14 38/17 78/5 94/5 94/8 94/9 94/13
**namely [1]** 72/8
**narrow [1]** 6/4
**National [1]** 34/22
**need [12]** 5/20 6/3 6/5 6/23 8/7 31/16 33/18 35/19 61/9 62/5 64/21 96/22
**needed [3]** 25/3 58/10 88/25
**negative [2]** 4/16 20/3
**negotiated [2]** 31/6 70/12
**negotiating [1]** 31/8 31/11
**negotiation [2]** 71/21 72/6
**neighbor [1]** 5/7
**neither [1]** 17/3
**never [7]** 5/6 14/20 56/8 73/16 84/24 87/21 88/4
**new [18]** 42/4 43/13 43/15 43/17 44/12 47/24 48/19 49/18 57/3 57/18 58/10 67/25 84/6 89/8 89/17 90/5 90/19 93/15
**Newport [27]** 77/19 78/4 78/12 78/25 81/2 81/7 81/19 82/11 83/1 83/5 84/9 84/18 84/22 85/4 85/10 85/15 87/5 87/20 88/4 88/23 89/13 89/16 90/9 90/20 91/24 92/2 92/14
**news [1]** 34/10
**next [18]** 34/15 37/17 46/9 46/10 46/19 47/2 48/20 49/24 63/25 64/3 80/4 80/5 80/6 80/7 81/10 81/12 81/21 81/22
**Nice [1]** 34/9
**NICOLA [1]** 2/3
**nights [1]** 10/19
**Ninth [3]** 7/22 7/23 9/24
**nitty [1]** 88/24
**nitty-gritty [1]** 88/24
**no [107]**
**None [1]** 3/10
**nonresponsive [10]** 44/8 48/12 60/5 66/11 68/2 69/4 70/3 76/4 85/1 92/11
**noon [2]** 7/10 8/10 19/4
**normally [1]** 32/13
**North [1]** 2/7
**not [78]** 4/2 4/24 5/16 5/18 5/18 6/19 7/24 8/8 9/8 10/7 10/13 10/14 10/23 11/2 11/13 11/24 12/13 12/15 12/19 12/20 13/15 13/21 13/24 14/6 14/8 15/11 15/12 16/4 17/8 17/15 18/3 18/15 18/20 19/8 19/8 21/25 28/15 34/9 41/16 41/19 43/25 44/22 45/24 50/20 50/23 51/7 52/4 60/3 61/8 64/10 64/10 64/12 64/16 66/6 75/2 75/4 78/7 78/16 79/12 79/16 79/25 80/5 80/6 80/7 89/24 90/6 90/24 91/9 91/19 91/24 95/7 95/8 95/10 95/12 96/1 96/20 97/4 97/11

**N**
note [1] 95/14
noted [1] 15/19
nothing [3] 12/6 13/7 52/23
notice [1] 42/19
November [9] 77/18 78/2 78/24 82/8 84/18 85/5 85/11 87/15 87/20
November 1st [5] 77/18 78/2 78/24 82/8 84/18
November 2018 [1] 87/15
November of [1] 87/20
now [27] 9/13 12/17 14/14 16/12 18/18 46/24 50/4 54/14 59/9 62/17 63/3 66/4 71/9 72/11 75/17 77/13 79/8 79/10 82/11 85/23 89/6 90/8 93/9 93/24 94/10 95/3 96/3
nuances [3] 58/20 75/22 77/21
number [18] 5/15 18/23 19/6 19/7 27/5 38/25 39/2 40/21 40/22 40/22 43/11 53/19 54/7 56/8 60/3 71/22 88/7 93/25
number I [1] 40/22
numbers [6] 10/8 40/15 40/17 40/19 55/23 55/25
NYT [2] 57/1 57/3

**O**
oath [4] 52/20 52/22 53/2 58/4
object [1] 96/13
objection [22] 11/10 16/8 25/8 28/9 31/2 33/14 42/20 45/3 49/8 57/22 58/2 58/12 58/13 67/6 68/9 74/2 76/17 76/24 78/15 89/1 89/24 92/6
objections [2] 6/3 17/18
objective [1] 25/13
obligated [1] 12/3
obligations [1] 30/22
observing [1] 13/16
obviously [3] 8/3 10/19 16/3
occurred [1] 64/21
off [6] 10/8 15/17 39/12 47/17 48/4 94/1
offense [1] 97/5
offer [18] 11/2 11/8 11/11 11/18 12/4 12/24 13/6 13/8 13/10 13/14 14/21 15/1 15/4 16/13 17/4 56/13 56/14 62/5
offered [2] 11/3 13/9
offers [4] 55/12 63/2 67/5 80/8
office [6] 6/18 6/22 23/19 23/20 23/22 23/25 49/6
OFFICES [1] 2/15
often [5] 41/22 77/23 77/25 78/1 97/3
Oh [4] 25/20 25/22 32/12 95/22
okay [26] 7/12 17/21 26/2 44/4 47/15 48/10 57/7 58/2 60/18 61/15 62/15 63/4 65/11 70/6 70/8 71/4 74/22 75/20 78/2 83/24 84/16 85/22 87/13 88/2 88/12 90/18
old [1] 93/1
once [2] 5/13 94/5
one [22] 6/16 8/12 10/12 12/10 14/19 17/22 26/23 33/12 33/12 37/20 38/20 50/11 50/12 50/18 50/18 55/25 64/18 66/16 83/12 85/19 95/17 96/3
one-half [1] 26/23
ones [2] 5/18 5/19
only [9] 14/2 15/8 50/16 51/2 74/25 74/25 75/9 88/12 96/8
opening [2] 13/1 18/12
opinions [2] 64/11 95/8
opportunity [2] 9/15 15/23
opposed [1] 82/13
oral [3] 75/5 75/7 75/10
orally [2] 15/5 16/11
order [3] 14/25 58/10 86/5
original [1] 10/14
other [17] 9/1 13/11 17/22 29/18 29/20 29/21 30/21 31/11 39/15 48/7 61/25 71/17 72/14 72/16 72/22 75/2 93/6
other's [1] 55/23
ought [1] 10/5
our [7] 6/23 18/14 44/21 69/2 73/11 73/11 85/6

out [21] 5/9 16/21 18/8 24/7 24/11 27/19 27/20 27/24 28/6 39/6 42/24 52/2 52/20 52/3 62/1 86/15 89/13 90/6 91/6 91/13 91/16
outgoing [1] 50/11
outlined [1] 9/18
over [10] 5/24 11/9 21/2 29/9 30/11 30/19 36/11 36/2 63/17 82/1
overnight [1] 10/5 11/5
Overruled [15] 28/10 31/3 33/15 41/12 42/22 45/4 47/13 49/9 49/15 58/14 67/2 68/10 77/1 89/3 92/7
owed [8] 18/8 18/21 27/24 32/4 32/16 39/4 48/3 50/14
own [3] 6/23 8/19 23/4

**P**
p.m [4] 17/2 93/23 94/4 97/14
Pacific [1] 93/13
page [58] 3/13 26/3 26/6 26/8 26/13 26/16 29/5 29/9 30/2 30/14 33/8 35/12 36/22 36/23 40/11 40/24 46/1 46/19 53/22 53/22 55/12 55/18 56/5 56/5 56/12 56/15 56/17 60/25 61/15 61/17 62/3 62/8 62/10 63/11 63/14 63/25 64/3 71/9 73/3 73/3 73/7 78/22 80/9 80/10 80/12 80/15 80/17 80/17 83/15 83/16 84/14 85/25 87/11 87/25 89/22 93/9 98/10
page 1 [5] 29/9 30/2 33/8 36/22 62/8
page 11 [1] 29/5
page 25 [4] 80/9 80/12 80/15 84/14
page 26 [3] 80/10 80/13 80/17
page 27 [1] 87/25
page 29 [1] 89/22
page 3 [6] 26/16 61/17 62/3 62/20 63/11 93/9
page 49 [1] 71/9
page 5 [1] 26/13
page 9 [1] 71/9
pages [2] 42/8 42/11
paid [9] 27/2 27/3 30/10 40/5 40/5 47/24 72/8 72/14 79/25
paragraph [2] 26/16 26/17
paralegals [1] 6/17
part [12] 7/17 23/3 26/20 44/3 60/6 66/15 79/23 82/21 82/25 88/25 90/14 97/8
particular [1] 59/10
parties [5] 6/4 7/18 7/21 8/24 92/5
party [6] 89/9 89/9 89/15 90/7 91/7 91/14
pass [1] 86/4
passion [1] 21/5
past [1] 96/4
pay [3] 29/24 39/12 49/20
paying [1] 27/8
payment [46] 30/18 30/19 30/23 30/23 31/22 31/23 32/4 32/7 32/14 32/14 32/18 32/20 32/24 33/1 33/8 33/11 33/19 36/5 36/10 36/12 36/17 36/19 37/4 37/7 37/16 38/13 38/23 39/5 39/16 39/17 39/20 40/21 40/23 41/7 41/8 41/21 43/5 44/3 47/10 47/16 49/13 49/20 70/12 81/9 81/20
payments [8] 31/1 32/10 32/11 32/13 32/18 41/1 41/4 86/16
pending [1] 60/22
Penland [1] 14/9
per [1] 34/14
percent [6] 26/23 26/23 27/4 39/4 53/13 83/7
percentage [3] 32/13 32/14 32/15
period [3] 54/14 77/6 77/8
periods [1] 30/12
person [7] 23/14 23/17 36/1 47/17 48/4 50/4 85/5
personal [1] 62/1
Personalized [2] 21/15 29/12
personally [2] 27/9 57/7
PHAN [51] 3/5 20/7 20/8 20/12 20/19 29/13 31/13 52/19 53/25 54/25 55/8 56/4 56/23 58/4 58/9 59/21 63/18 65/4 65/10 65/13 66/2 67/10 68/5 68/22 69/20 74/6 74/12 76/20 79/8 79/10 79/25 81/2 81/13 81/18 82/6 84/9 85/4 85/18 86/2 87/5 88/10 90/5 91/5 91/9

91/11 92/2 93/3 94/4 95/18 95/20
Phan's [1] 20/12
phone [28] 23/17 24/14 24/16 36/1 36/2 36/3 39/7 43/18 43/19 43/20 43/20 43/21 44/25 45/1 54/6 54/24 55/23 55/25 57/12 57/13 59/13 59/19 60/2 66/9 67/24 67/25 88/7 91/17
phones [1] 65/17
place [3] 8/21 28/17 29/9
Plaintiff [1] 1/10 2/2
PLAINTIFF'S [2] 3/4 3/6
plane [1] 10/18
planned [1] 10/19
planning [1] 34/11
play [2] 6/5 25/11
please [46] 17/25 20/10 20/10 34/16 35/19 55/18 58/16 60/23 61/17 61/20 63/17 64/9 64/12 64/22 65/2 65/10 65/20 66/18 69/23 70/5 70/6 72/17 73/2 73/3 74/5 76/8 76/12 80/16 81/13 82/6 88/12 89/13 89/25 89/25 87/3 87/11 88/10 90/12 90/22 91/11 91/20 91/22 94/1 94/13 95/7 95/9
plus [1] 34/10
poignant [1] 12/10
point [17] 5/2 6/7 12/9 15/23 17/5 19/3 25/3 25/12 33/18 39/16 39/20 46/5 51/20 51/21 52/6 56/11 97/9
pointing [1] 54/16
police [31] 51/18 77/14 77/19 77/22 77/25 78/4 78/13 78/25 81/3 81/8 81/19 82/12 82/3 83/6 84/10 84/18 84/22 85/4 85/10 85/16 87/6 88/8 88/23 89/13 89/16 90/9 90/20 91/15 92/2 92/14
portion [3] 48/12 69/4 80/9
portions [1] 64/22
position [1] 13/4
positive [2] 4/15 8/24
possession [1] 18/6
possibility [2] 24/2 96/9
possible [1] 96/10
possibly [3] 4/15 23/7 23/15
potential [1] 5/3
potentially [1] 20/3
power [1] 13/13
powers [1] 10/21
practice [2] 70/21 71/5
Practices [1] 26/18
Pratigya [1] 31/15
precise [1] 88/11
precluded [1] 12/13
prefer [1] 86/4
prejudice [1] 9/9
prepared [1] 4/24
preparing [1] 18/1
presence [1] 36/6
present [10] 4/2 4/10 8/24 15/3 16/10 19/15 19/23 64/16 64/24 95/12
presented [1] 9/8
presenting [1] 12/12
presents [1] 11/1
PRESIDING [1] 1/8
presumed [1] 9/9
pretrial [1] 13/4
pretty [1] 28/24
prevents [1] 17/16
previously [1] 9/9
price [2] 30/18 34/14
prices [1] 30/15
prior [6] 6/5 31/22 35/22 36/3 47/11
private [2] 41/2 94/9
PRO [1] 2/14
probably [3] 16/22 16/24 17/2
problems [2] 32/23 95/14
proceed [1] 4/16
proceedings [4] 1/15 19/14 64/15 98/9
process [3] 11/22 24/18 25/7
processed [4] 37/4 37/7 37/16 39/16
produced [5] 18/3 18/10 18/15 19/8 19/8
production [3] 18/11 19/6 19/7
promise [2] 31/13 79/9

**P**

proof [12]  11/2 11/8 11/11 11/19 12/4 13/10 13/14 14/21 15/1 15/5 16/14 17/4
proper [1]  80/20
prosecutors [1]  83/3
protect [2]  52/10 52/11
protocol [3]  32/3 36/8 86/23
provide [16]  6/20 6/24 7/14 11/7 11/11 11/18 12/4 14/15 41/18 47/23 47/25 50/24 51/21 59/13 66/6 74/13
provided [7]  6/12 8/15 51/6 53/3 53/5 53/9 69/10
providing [3]  8/22 46/22 48/15
publish [2]  56/12 80/24
publishing [2]  93/24 94/10
pull [5]  25/23 37/19 40/10 42/25 63/17
pun [1]  75/25
purchase [4]  30/15 30/17 34/14 71/17
purchased [2]  30/22 31/20
purposes [3]  12/14 12/22 42/23
pursuant [1]  98/6
put [11]  5/10 8/16 8/17 9/17 12/22 13/2 40/8 62/11 90/12 96/2 97/2

**Q**

quarantine [1]  8/25
quashed [1]  10/15
query [1]  7/15
question [63]  7/19 8/18 8/20 14/2 14/7 32/8 37/20 40/7 43/24 54/4 55/15 56/3 56/10 58/15 58/23 58/25 59/1 60/22 60/23 61/5 61/9 61/19 61/20 64/20 65/11 65/11 65/21 66/24 68/11 69/21 69/23 70/5 70/6 71/4 72/17 74/3 74/12 74/14 74/15 74/18 76/7 76/11 76/25 78/11 80/21 80/22 81/13 82/18 83/18 83/25 84/2 84/6 84/6 88/11 88/12 88/12 90/2 90/22 91/10 91/10 91/11 92/22 96/9
questioned [1]  5/20
questions [21]  4/18 16/5 37/5 52/15 53/1 53/8 53/19 59/9 71/2 71/5 73/23 74/1 74/1 74/5 74/13 74/22 78/10 78/13 82/6 82/13 89/8
quick [1]  64/18
QuickBooks [2]  18/9 18/21
quite [1]  58/19
quote [3]  81/20 81/21 81/22

**R**

raise [4]  17/24 64/17 95/18 95/19
range [1]  37/22
rather [5]  7/16 27/15 86/20 87/7 87/16
reached [1]  86/15
read [36]  26/20 34/7 43/8 57/6 58/15 58/18 59/1 59/3 59/6 66/18 66/20 68/12 69/21 69/24 70/19 70/21 70/23 70/24 70/25 71/2 71/7 76/7 76/10 80/25 82/18 82/23 83/18 83/25 84/1 86/12 88/14 88/18 90/23 91/22 92/22 92/24
reading [3]  90/10 90/14 90/16
reads [1]  86/10
ready [1]  28/12
Reagan [1]  2/10
reality [1]  52/13
really [4]  45/25 87/21 88/4 88/24
reason [3]  10/24 16/4 76/23
reassured [2]  45/8 48/10
recall [42]  14/13 14/13 14/21 14/22 14/25 15/1 16/3 16/4 28/20 33/13 36/4 36/6 40/8 43/12 47/15 47/25 50/12 54/3 54/7 57/17 57/18 69/17 70/17 73/24 75/4 75/9 75/14 75/23 77/2 78/2 78/5 79/10 79/14 84/13 86/18 86/18 86/23 87/10 87/23 88/21 89/16 89/19
recast [1]  14/8
recasting [1]  13/23
receipt [1]  80/1
receive [15]  10/1 26/22 30/8 31/25 32/10 32/21 34/4 39/22 39/24 50/14 50/20 51/10 51/13 52/5 72/15
received [24]  3/7 3/12 33/1 35/6 35/8 37/11 37/15 39/17 39/19 41/8 41/24 42/23 42/24 44/3 49/20 50/11 50/17 56/16 56/17 62/8 63/6

63/9 66/14 81/20
receiving [4]  31/22 32/3 51/24 51/9
recess [5]  19/11 19/13 64/13 64/14 97/14
recognize [2]  29/2 40/17 42/8
recollection [17]  48/2 68/6 68/15 68/23 71/20 72/5 75/24 78/23 83/17 84/17 86/17 87/14 88/1 88/3 89/12 91/8 91/16
recommended [1]  96/6
record [18]  7/2 7/4 9/5 13/22 50/1 50/6 58/18 59/6 66/20 68/12 69/24 76/10 82/20 84/1 88/18 90/23 92/24 97/3
recorded [1]  81/4
recording [1]  15/13
recovery [1]  26/24
recross [3]  3/4 3/9 15/21
Redact [1]  94/13
redacted [3]  62/1 93/25 94/11
redactions [2]  63/7 63/8
redirect [3]  3/4 3/9 15/21
reference [2]  6/6 71/16
referring [4]  57/3 57/15 62/10 85/18
reflect [1]  56/5
reflected [7]  65/13 66/15 67/21 68/6 73/11 90/8 90/19
reflects [3]  56/8 66/25 91/12
refresh [5]  68/23 78/23 84/17 87/14 88/3
refreshes [2]  87/12 88/1
regarding [1]  9/4 10/20 29/21
regards [1]  29/23
Regnier [5]  18/7 18/19 18/24 38/1 38/10
regular [1]  97/7
regulations [1]  98/11
relate [4]  10/9 10/10 93/10 95/19
related [2]  12/12 19/2 31/9 47/9 81/9 89/17
relates [4]  14/11 15/5 67/12 95/21
relating [3]  9/9 18/3 18/16
relationship [1]  22/1
Relevance [1]  76/17
relevant [1]  59/25
relied [1]  25/6
relief [2]  9/4 19/10
relieved [1]  33/3
remain [1]  55/4
remaining [1]  51/7
remedy [1]  10/1
remember [30]  22/13 22/15 23/16 23/17 27/9 30/9 45/1 48/2 58/20 64/9 66/8 66/21 67/23 69/13 73/5 74/20 77/14 77/21 77/21 82/21 82/22 84/13 86/19 86/22 87/2 87/18 89/7 89/10 92/8 95/7
Remoun [2]  4/7 19/20
rendered [1]  26/23
renewed [1]  7/6
reorganize [1]  96/6
repeat [4]  6/3 6/5 80/11 97/3
repeated [1]  64/20
repeatedly [2]  18/14 18/17
repeating [1]  58/13
rephrase [3]  32/8 40/7 76/11
replied [1]  64/2
reply [2]  36/23 44/18
report [3]  5/1 5/4 5/5
reported [2]  5/2 98/8
reporter [2]  31/16 98/16
REPORTER'S [1]  1/15
represent [5]  40/17 40/20 66/5 73/12 76/20
represented [2]  18/17 39/3
representing [1]  79/1
repurchase [5]  29/3 29/10 30/3 31/6 31/7 31/8 31/11 34/12 34/15 70/16 71/13 71/24
repurchasing [1]  34/13
request [4]  4/23 9/4 13/14
requesting [1]  13/20
require [1]  11/24
required [4]  10/10 10/24 11/23 12/7
requires [2]  11/10 52/22
research [2]  64/12 95/10
reserved [1]  14/13
resolution [2]  70/10 70/11

resolved [2]  9/22 10/3
resolving [1]  9/23
respect [8]  7/25 11/4 11/6 13/5 13/7 13/9 13/13 16/10
respond [2]  7/5 8/2 19/4
responded [4]  55/23 94/15 94/17 95/1
responding [1]  7/4
response [5]  5/23 7/14 9/20 73/25 92/17
rest [3]  26/21 32/5 46/24
restaurant [3]  44/22 46/23 46/25
result [2]  9/16 34/13
resumed [2]  19/14 64/15
review [2]  7/1 7/4
right [52]  7/15 8/5 14/10 14/13 14/14 15/25 16/24 22/2 25/7 26/20 35/5 39/8 40/19 50/4 52/20 52/24 55/4 55/4 57/4 57/7 57/10 57/16 58/24 60/13 61/10 63/11 63/14 67/15 70/19 71/7 71/14 72/4 72/20 73/14 75/2 75/5 77/7 77/16 83/7 84/23 90/8 92/18 93/11 93/16 93/19 94/6 94/20 94/21 95/1 95/22 96/19 97/8
right-hand [1]  22/2
rights [2]  7/24 7/25 11/22 12/11
Roberson [1]  14/4
Robertson [3]  9/23 9/23 9/25
role [1]  25/11
Ronald [1]  2/10
Rooftop [7]  44/19 45/12 45/13 45/17 45/18 48/20 49/23
room [2]  43/16 44/22 45/1
roommate [1]  5/2
RPR [1]  1/19
ruling [1]  10/15
run [1]  72/11

**S**

SACR [3]  1/11 4/3 19/16
SACR-19-00061-JVS [3]  1/11 4/3 19/16
SAGEL [28]  2/9 4/5 12/14 17/6 18/16 19/18 20/5 20/15 53/1 53/9 54/2 55/22 56/21 57/13 57/20 61/23 70/15 72/2 73/5 73/24 74/18 75/14 77/13 78/9 83/21 89/7 91/3 92/15
Sagel's [1]  12/17
said [41]  4/25 7/2 8/16 10/1 10/12 13/21 13/22 13/23 13/25 18/14 21/13 24/11 24/20 24/21 25/25 32/3 36/4 36/6 47/16 48/7 54/3 57/1 58/8 62/10 69/15 77/16 79/16 79/23 81/12 84/19 84/20 84/24 85/12 86/23 87/19 87/19 89/15 89/19 89/25 90/14 90/16
same [12]  12/23 13/11 27/19 36/8 37/23 38/14 42/5 43/14 53/3 53/5 53/23 58/12
San [2]  2/16
Santa [6]  1/16 1/20 2/11 4/1 23/20 23/22
sat [2]  76/15
satisfied [1]  29/23
save [1]  88/7
saved [1]  56/8
say [13]  14/11 24/6 28/24 35/19 36/9 40/3 46/15 50/3 51/25 70/6 80/16 83/15 93/21
saying [8]  5/18 15/17 35/22 45/1 45/16 73/24 84/3 89/19
says [11]  26/4 26/17 29/10 38/12 43/1 57/9 57/14 61/1 62/17 62/21 94/5
scared [1]  45/6
schedule [2]  95/25 96/5
school [1]  93/1
scope [1]  12/23
screen [12]  40/9 59/18 59/20 59/21 59/23 59/25 60/2 71/14 90/8 91/2 93/9 94/1
screencaps [2]  59/16 59/17
screenshot [1]  94/4
scrolling [1]  54/21
SE [1]  2/14
seat [1]  76/15
seated [1]  20/9
second [27]  16/4 30/19 30/23 32/14 33/11 33/19 33/24 34/18 36/5 36/10 36/12 36/19 39/5 39/20 40/21 40/24 41/8 42/5 43/7 49/13 49/13 73/2 82/21 83/13 84/11 86/15
section [5]  2/6 26/17 30/3 71/9 98/6

**S**

**section 6.11** [1] 71/9
**secured** [1] 57/1
**securing** [1] 57/18
**see** [45]  11/4 26/5 26/18 30/4 30/15 33/25
34/23 35/6 35/14 35/17 36/24 38/1 38/18
40/14 41/1 41/4 43/3 44/16 46/2 46/6 46/7
46/12 48/6 53/25 54/12 54/16 56/23 60/3
60/25 62/17 62/20 63/12 64/23 71/10 71/18
79/7 86/2 86/7 86/9 87/11 87/25 91/2 93/13
93/21 95/11
**seeing** [2]  46/16 79/3
**seek** [1]  19/10
**Seeks** [1]  47/11
**seemed** [1]  24/10
**seems** [1]  17/6
**SEFFENS** [3]  1/19 98/15 98/16
**self** [1]  20/22
**self-employed** [1]  20/22
**sell** [1]  30/9
**SELNA** [1]  1/8
**send** [13]  32/3 32/5 35/13 36/7 45/9 46/20
68/16 68/24 69/1 69/6 83/13 84/11 85/8
**sending** [5]  35/22 36/4 68/6 69/13 86/11
**sense** [4]  4/22 14/22 24/12 48/6
**sensitized** [1]  5/3
**sent** [25]  5/9 34/7 37/25 38/13 39/8 43/5 44/5
45/7 45/8 49/6 54/2 55/21 56/6 56/25 57/6
57/9 57/12 57/14 60/19 66/14 79/13 80/6 80/7
87/7 94/4
**sentence** [2]  26/21 48/12
**separate** [1]  50/17
**separation** [1]  71/16
**September** [12]  29/11 29/14 33/9 33/13 33/19
56/6 56/25 57/19 58/6 58/9 67/17 68/7
**September 14th** [1]  56/25
**September 17th** [1]  29/11 29/14
**September 18th** [3]  33/9 33/13 33/19
**serious** [4]  17/22 17/24 18/4 19/9
**services** [3]  26/22 27/2 73/14
**set** [10]  5/9 17/9 79/8 79/11 83/13 84/11
86/15 94/5 94/20 95/23
**setting** [1]  94/21
**settlement** [1]  31/23
**seven** [5]  9/16 26/23 55/21 55/24 57/13
**severe** [1]  9/17
**shape** [4]  12/16 12/19 53/10 73/16
**share** [1]  34/10
**shares** [7]  30/3 30/9 30/15 30/21 34/13 34/20
36/16
**SHARON** [3]  1/19 98/15 98/16
**shattered** [1]  52/14
**she** [27]  8/14 8/15 8/16 8/16 8/17 8/17 8/18
8/21 8/23 18/7 31/14 31/14 38/11 56/10 79/23
80/22 84/3 89/24 89/25 95/14 95/23 95/24
95/25 95/25 96/1 96/3 96/4
**she's** [3]  34/3 84/3 96/6
**sheet** [1]  15/9
**shift** [2]  70/10 72/1
**shoot** [1]  44/19
**should** [6]  6/4 25/18 25/21 27/24 29/1 94/10
**shouldn't** [1]  40/3
**show** [1]  25/17
**showed** [1]  68/22
**showing** [1]  12/5
**sic** [1]  86/19
**side** [2]  25/4 93/6
**sign** [6]  47/17 48/4 71/1 71/1 71/6 88/25
**signature** [2]  26/14 29/5 73/7 88/25
**signed** [12]  28/17 28/21 29/24 70/19 70/22
70/25 71/22 75/13 75/25 76/2 76/23 77/11
**signing** [1]  51/1
**Simple** [1]  27/4
**simply** [2]  12/21 69/23
**single** [1]  11/25
**sir** [11]  11/13 12/20 13/4 13/12 13/21 14/1
14/16 19/3 74/15 88/13 97/1
**sister** [1]  31/13
**sit** [1]  9/15

**sitting** [1]  13/15
**situation** [2]  31/20 52/6
**six** [2]  76/22 77/6
**six-month** [1]  77/6
**sloppiness** [1]  13/3
**so** [62]  4/16 7/3 8/1 9/17 10/3 10/23 11/6
12/23 13/17 13/18 13/25 14/9 16/9 16/12
17/13 20/3 23/4 23/16 24/11 25/3 26/16 30/25
31/17 32/13 35/10 44/3 44/5 45/8 46/6 47/18
48/3 48/8 48/9 58/19 58/23 59/14 59/19 59/24
60/8 63/11 64/13 64/20 65/17 70/24 71/4 74/1
74/13 74/22 75/2 76/2 76/12 77/5 82/2 85/5
85/7 88/6 88/7 91/10 93/15 93/18 95/11 97/5
**solely** [1]  12/14
**some** [11]  6/11 9/7 33/18 34/10 39/16 46/17
59/9 67/14 67/22 90/6 91/6
**somebody** [1]  15/18
**somehow** [2]  12/5 17/13
**someone** [3]  16/6 25/3 52/9
**something** [4]  24/21 91/9 96/1 96/16
**sometime** [1]  10/7
**sometimes** [5]  12/18 54/22 65/18 70/24 97/4
**sometimes I** [1]  65/18
**sorry** [6]  24/19 31/17 40/22 50/10 56/14 97/6
**source** [1]  9/1
**SOUTHERN** [1]  1/6
**speaking** [1]  27/10
**special** [7]  4/7 10/10 10/13 10/14 11/4 18/25
19/20
**specifically** [1]  47/5
**spell** [4]  20/10 31/16 31/17 31/18
**spent** [1]  48/21
**spine** [1]  25/23
**spoke** [1]  8/16
**Spring** [1]  2/7
**stage** [1]  9/12
**stand** [3]  15/22 55/4 96/4
**Standard** [11]  44/19 44/21 45/12 45/12 45/15
45/16 45/16 45/17 45/18 48/20 49/23
**standing** [1]  50/4 95/18
**start** [6]  38/4 40/2 53/20 63/18 77/11 80/19
**started** [3]  21/3 21/4 75/20
**starting** [1]  40/1
**starts** [3]  25/20 26/20 35/13
**state** [1]  20/10
**stated** [2]  42/23 52/3
**statement** [6]  13/1 18/13 74/4 85/15 85/17
85/18
**STATES** [17]  1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
4/4 4/6 7/21 7/23 9/23 19/17 19/19 98/7 98/11
**stays** [1]  6/22
**stenographically** [1]  98/8
**stepped** [1]  25/4
**STEWARD** [4]  2/15 2/15 4/10 19/23
**still** [11]  9/22 17/17 21/24 22/3 27/19 33/6
37/23 55/6 55/14 87/18 95/18
**stipulate** [2]  61/21 61/25
**stipulated** [1]  63/4
**stock** [10]  29/2 29/10 31/7 31/7 31/20 34/12
34/14 70/16 71/13 71/23
**stop** [4]  34/18 87/3 88/9 91/20
**stories** [1]  69/2
**story** [5]  69/17 69/18 70/1 90/20 90/24
**straight** [3]  86/21 87/8 87/17
**Street** [3]  1/20 2/7 2/11
**stressed** [1]  28/12
**stressful** [2]  28/7 52/4
**stricken** [17]  27/13 47/7 60/21 65/20 66/12
68/3 69/6 69/20 70/4 74/4 76/6 79/22 81/16
82/4 85/2 91/21 94/24
**strike** [37]  6/11 24/20 27/12 44/7 47/6 48/11
54/19 56/3 56/9 60/4 60/20 64/22 65/9 65/19
66/10 68/1 69/3 69/19 70/2 72/18 74/12 76/4
77/23 79/21 81/15 81/23 82/3 82/17 84/5
84/25 86/25 88/8 91/10 91/18 92/10 92/20
94/22
**striped** [1]  50/5
**subject** [7]  14/13 14/22 15/1 16/3 16/4 63/7
63/8

**submission** [1]  5/23
**submitted** [2]  61/3 89/9
**subpoena** [1]  10/15
**subpoenaed** [2]  11/7 11/19
**subscription** [1]  21/12
**subsequent** [2]  30/6 34/12
**substantial** [1]  19/10
**such** [3]  13/14 14/3 28/23
**sufficient** [1]  10/1
**suggestions** [3]  5/14 79/19 79/19
**Suite** [3]  1/20 2/11 2/16
**Sunday** [1]  8/9
**support** [1]  57/23
**supposed** [1]  52/10
**sure** [10]  5/1 10/7 15/12 25/14 66/17 72/24
80/12 85/21 92/18 96/1
**suspected** [1]  4/14
**sustain** [2]  17/18 58/1
**sustained** [6]  25/9 53/16 57/24 58/13 76/18
78/17
**swallow** [1]  52/13
**swift** [1]  28/24
**swiftly** [1]  48/8
**Swisher** [1]  7/23
**switch** [1]  63/17
**SWORN** [1]  20/8
**symmetric** [1]  7/25
**symptoms** [2]  5/1 5/3

**T**

**table** [2]  4/7 19/20
**Tabs** [8]  18/3 18/9 18/9 18/19 18/22 18/23
19/1 19/7
**take** [26]  7/21 8/1 10/5 10/22 19/3 24/7 32/4
32/13 32/15 32/17 36/18 40/2 54/22 55/18
64/8 84/14 85/13 87/25 89/21 94/1 95/6 95/15
95/16 96/18 96/20 97/5
**taken** [4]  19/13 40/3 64/14 97/14
**taking** [4]  32/12 36/10 48/9 56/4
**talk** [1]  45/25
**talked** [1]  29/19
**talking** [10]  41/22 41/23 43/19 61/8 61/10
62/9 73/11 77/21 88/22 93/11
**talks** [2]  30/14 71/12
**tax** [1]  86/5
**team** [1]  96/22
**telegram** [6]  92/3 92/9 92/16 94/8 94/15
94/20
**telephone** [1]  93/25
**tell** [20]  5/17 12/15 28/7 32/2 36/19 39/9
39/11 48/21 49/5 49/12 49/19 50/23 52/22
82/23 85/4 85/10 86/14 86/16 87/20 92/2
**telling** [6]  24/13 39/15 85/19 86/19 92/8 92/8
**tells** [1]  91/9
**ten** [2]  21/2 25/2
**terms** [2]  8/25 29/16
**tested** [6]  4/15 4/16 4/19 4/23 8/24 20/3
**testified** [7]  11/21 53/12 58/4 60/9 60/16
76/15 76/21
**testify** [1]  95/25
**testifying** [1]  83/10
**testimony** [13]  6/11 18/2 18/7 18/22 18/24
47/12 57/20 68/5 68/8 72/12 72/24 96/7 96/14
**text** [50]  42/12 42/13 42/18 46/5 46/12 54/2
54/24 55/22 56/5 56/20 56/25 57/6 57/9 57/12
59/14 59/20 59/24 61/3 61/6 61/10 61/12
62/17 62/20 62/23 62/24 63/18 63/22 64/1
64/4 65/5 65/13 65/14 66/5 66/8 66/14 66/25
67/11 67/14 67/18 67/21 67/22 67/23 68/6
89/7 90/8 91/2 91/5 91/12 91/24 93/16
**texted** [1]  55/24
**texting** [1]  43/10
**than** [13]  7/16 27/16 29/18 29/20 30/21 31/11
39/15 61/25 72/14 72/22 86/21 87/7 87/17
**Thank** [5]  8/11 20/6 20/9 20/14 20/16 35/17
46/6 69/7 69/11 69/15 88/17 90/14 95/1 96/15
97/1
**Thanks** [2]  86/6 86/11
**that** [503]

**T**

**that's [38]** 5/25 6/2 7/1 7/8 7/11 8/23 9/18
12/17 12/19 15/7 15/12 16/24 17/3 22/12 26/9
27/6 36/23 37/1 38/14 59/20 60/8 62/14 63/11
63/14 64/7 71/13 72/3 73/7 82/23 84/4 84/20
84/23 87/2 87/19 87/19 89/17 94/8 97/13
**their [3]** 12/3 13/17 18/6
**them [25]** 5/16 6/6 10/9 10/10 14/6 16/10
17/10 25/23 30/10 30/10 57/9 57/14 57/15
59/23 59/25 60/1 60/19 66/9 67/24 71/2 79/7
81/11 81/19 83/9 85/20
**then [42]** 8/8 10/17 12/7 17/10 26/16 29/8
30/14 32/5 33/11 34/22 35/5 35/12 36/22
37/11 38/12 38/17 40/24 44/25 46/1 46/12
46/17 46/19 47/4 57/6 57/9 59/19 60/1 62/12
62/12 62/23 70/25 71/16 77/11 82/25 83/2
87/19 87/19 88/11 93/23 95/1 95/20 96/9
**there [43]** 5/4 5/10 5/15 5/15 5/16 6/5 6/7 9/7
11/10 11/17 13/7 15/21 16/4 15/13 17/22 21/5
22/24 23/6 26/17 33/4 34/7 34/18 35/13 40/15
42/4 44/3 44/15 45/15 46/1 46/11 46/15 46/22
51/6 53/8 54/23 55/19 60/19 61/10 62/23
71/21 82/22 94/21 96/9
**there's [2]** 12/5 96/16
**thereafter [1]** 51/14
**these [25]** 8/3 9/14 18/16 40/13 41/4 42/12
54/16 55/25 59/16 61/3 61/6 61/10 63/22
63/25 64/3 65/5 66/8 66/21 67/23 69/1 69/2
69/6 93/9 93/13 93/16
**they [17]** 4/25 5/1 6/18 10/7 12/6 13/6 37/9
42/13 59/12 59/14 59/19 59/20 67/22 82/16
82/22 85/8 86/10
**thing [3]** 8/12 15/8 57/21
**things [7]** 28/7 70/24 72/22 73/25 83/12 96/7
97/3
**think [19]** 4/24 5/3 5/20 6/4 8/7 9/11 12/9
14/16 14/21 15/9 16/24 40/22 47/14 56/19
60/8 72/1 74/18 80/20 83/22
**thinking [2]** 22/24 23/1 95/24
**third [3]** 26/8 53/21 73/3
**this [133]**
**those [17]** 5/12 5/18 5/23 40/14 40/17 40/19
46/12 50/10 61/11 61/12 62/24 67/22 72/7
72/22 73/25 78/13 95/24
**though [4]** 13/5 17/5 67/23 84/24
**thought [1]** 59/24
**thoughts [2]** 4/18 10/2
**three [9]** 11/14 13/5 42/8 42/10 63/4 67/15
67/18 93/15 93/16
**threshold [1]** 12/5
**through [17]** 22/12 24/17 46/24 54/21 70/13
77/24 80/10 80/13 80/15 80/17 84/15 86/5
86/16 87/11 88/6 89/22 91/17
**THURSDAY [1]** 4/1
**tie [1]** 50/5
**time [60]** 5/7 10/5 13/15 13/24 13/24 15/6
16/17 16/20 17/12 22/17 22/20 22/24
23/6 23/19 23/20 23/25 24/4 25/1 26/25 27/18
27/24 28/3 28/6 28/23 30/7 30/11 31/6 33/1
33/2 36/20 38/11 38/21 39/7 39/11 41/21 42/4
42/5 42/17 43/14 44/15 45/20 45/22 47/19
50/15 50/23 51/1 54/14 54/20 55/11 63/3 64/6
66/16 67/4 77/6 77/8 82/1 91/12 93/13 95/3
93/16
**times [7]** 18/23 24/22 57/13 57/18 58/10 93/13
93/16
**timing [1]** 95/21
**Title [1]** 98/7
**today [9]** 10/18 18/2 37/4 38/14 55/4 79/6
83/10 84/4 96/7
**together [2]** 8/16 79/1
**told [34]** 16/19 18/25 32/15 37/7 39/12 43/16
71/1 72/2 72/3 81/6 81/7 81/11 81/19 83/12
84/3 84/10 84/18 84/22 84/23 87/5 87/6 87/8
87/14 87/15 88/3 88/23 89/12 90/7 90/9 90/19
91/14 92/14 92/15 96/2
**tomorrow [6]** 8/7 9/21 10/2 10/18 14/19 46/7
**Tong [4]** 33/25 34/2 34/4 34/7
**tonight [1]** 10/18
**too [2]** 43/17 45/6

**took [9]** 21/18 28/16 28/21 36/16 52/12 55/3 73/21
76/25 79/3 79/6
**top [14]** 10/9 15/17 26/3 29/9 30/14 33/25
35/12 36/23 46/2 46/20 53/21 53/22 56/20
69/11
**totaling [1]** 51/10
**toward [1]** 4/15
**town [1]** 22/18
**Tran [30]** 21/20 21/22 21/23 22/1 23/21 24/25
25/6 25/11 26/4 31/19 37/12 37/23 42/1 47/23
67/11 68/7 68/16 68/24 69/1 69/6 69/9 73/12
75/7 76/15 76/15 76/20 84/23 86/3 86/14
88/24
**Tran's [5]** 23/15 23/20 23/22 23/25 45/1
**tranche [1]** 86/6
**transaction [1]** 72/16
**transcript [8]** 1/9 1/15 14/1 15/19 89/21 90/10
98/8 98/10
**transfer [1]** 80/2
**transferred [3]** 37/14 37/15 79/23
**transfers [1]** 51/9
**traumatic [1]** 82/2
**treatment [1]** 86/6
**trial [2]** 1/12 13/2
**tried [1]** 92/3
**true [25]** 55/21 55/24 55/25 58/7 60/1 62/25
63/23 67/10 69/12 75/21 77/20 79/16 79/18
79/25 81/6 81/10 81/18 82/8 83/14 84/4 84/9
85/16 87/5 90/3 90/18 98/7
**trust [2]** 40/14 41/2
**trusted [3]** 25/5 25/13 25/15
**trustworthy [1]** 52/10
**truth [6]** 42/19 52/23 52/23 52/23 53/6 82/23
**truthful [3]** 54/10 83/7 83/9
**truthfully [2]** 56/2 66/21
**try [3]** 51/19 62/13 76/14
**trying [4]** 9/12 14/8 14/8 97/12
**Tuesday [1]** 95/23
**turn [5]** 26/8 46/1 61/17 85/23 87/11
**turned [1]** 62/3
**turning [1]** 26/16 29/5
**tutorials [1]** 21/5
**tweets [1]** 6/12
**twice [1]** 68/9
**two [23]** 9/14 10/9 10/19 18/6 19/1 30/11
30/25 32/10 32/12 40/15 40/17 40/19 41/1
41/1 50/17 51/9 62/9 62/12 72/7 72/22 74/22
79/1 85/24

**U**

**U.S [1]** 98/16
**Uh [1]** 35/18
**Uh-huh [1]** 35/18
**ultimately [1]** 83/2
**umbrella [1]** 21/19
**under [12]** 9/4 10/15 10/21 11/23 21/19 22/7
31/23 38/17 46/12 52/20 58/4 97/8
**underlying [1]** 57/23
**underneath [1]** 62/23
**understand [20]** 13/4 14/9 30/7 30/11 30/17
30/21 32/6 32/6 32/10 37/6 52/20 52/22 61/5
70/6 72/24 74/15 74/17 76/12 96/8 96/21
**understanding [9]** 12/23 27/1 29/15 32/17
35/2 39/2 41/7 47/19 48/2
**understood [12]** 6/9 17/19 17/19 27/3 37/9
47/20 53/2 58/5 71/12 72/12 81/3 83/6
**UNITED [17]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
4/3 4/6 7/21 7/22 9/23 19/17 19/19 98/7 98/11
**unless [3]** 12/5 15/18 18/21
**until [6]** 5/17 19/11 33/19 41/8 64/11 95/9
**untrue [1]** 53/9
**up [31]** 6/19 8/19 10/5 10/22 17/9 19/4 24/14
29/19 37/19 40/14 42/25 43/22 45/6 45/11
45/22 45/23 50/4 51/20 53/21 56/20 63/19
74/22 86/10 89/17 90/2 94/6 94/20 94/21
95/15 96/16 96/18
**update [1]** 24/17
**updated [1]** 42/1
**upheld [1]** 52/10

**upon [2]** 25/6 80/1
**US [1]** 43/15 73/9 79/16 87/15 88/18
76/3
**use [1]** 57/19
**used [2]** 13/15 46/17
**user [4]** 94/5 94/8 94/9 94/13
**uses [1]** 31/14
**utterly [1]** 52/14

**V**

**vaccinated [1]** 8/14
**vague [1]** 83/23
**vagueness [1]** 84/2
**Valen [4]** 33/25 34/2 34/4 34/7
**value [2]** 27/20 27/25
**Varani [12]** 10/17 10/20 10/23 14/9 14/12
14/12 14/17 14/18 15/5 15/10 15/19 16/10
**various [2]** 10/10 18/4
**version [1]** 54/12
**versus [7]** 4/4 7/21 7/23 9/23 19/17 27/8
96/11
**very [15]** 17/22 17/24 24/9 24/11 26/3 26/5
28/12 28/13 36/22 41/24 42/25 53/22 56/20
60/6 95/5
**via [1]** 94/5
**video [4]** 68/24 69/10 69/14 69/17
**videos [3]** 69/1 69/6 69/13
**violation [3]** 11/22 18/5 19/9
**visit [1]** 15/2
**VOL [1]** 1/12
**volume [3]** 25/18 25/21 40/9
**Volume 4 [2]** 25/18 25/21
**vs [1]** 1/10

**W**

**wait [1]** 33/19 60/22 83/22
**Walter [1]** 79/1
**want [25]** 5/12 6/6 11/12 13/17 15/3 16/9 17/5
45/5 45/23 45/25 53/19 56/13 59/9 69/23
70/10 72/1 72/24 74/16 74/24 92/16 95/15
95/18 95/19 97/2 97/5
**wanted [15]** 10/12 23/8 28/8 37/3 48/24 72/2
79/13 82/23 85/21 86/10 89/14 90/7 91/7
91/13 97/11
**wants [3]** 8/20 15/18 16/1
**was [181]**
**Washington [1]** 17/1
**wasn't [3]** 41/23 43/20 73/19
**way [16]** 12/16 12/19 32/9 48/17 53/10 56/20
62/18 62/21 63/19 63/19 73/16 76/14 78/9
85/24 93/10 93/21
**ways [1]** 23/3
**we [92]** 4/13 4/16 6/16 6/20 6/23 6/24 8/6 8/15
10/3 10/5 10/18 10/21 10/23 15/2 16/12 16/19
16/20 18/9 18/14 18/18 18/23 18/24 20/2 20/4
24/1 28/16 29/8 29/19 32/14 32/15 34/9 34/11
34/13 37/19 40/10 40/24 40/25 41/24 42/25
45/21 50/10 51/18 53/8 53/20 53/21 55/23
56/18 56/19 59/1 61/21 61/24 63/4 63/17 64/3
64/8 64/13 64/20 65/1 67/14 68/22 70/15 71/9
72/4 72/18 72/25 73/2 73/7 75/20 76/2 79/8
79/19 85/5 85/6 85/24 86/4 88/22 88/25 89/8
89/8 92/4 93/10 93/18 93/25 95/6 95/11 95/16
95/17 96/2 96/2 96/6 96/19 98/5
**we'll [5]** 19/3 19/11 31/19 78/18 95/15
**we're [7]** 8/3 13/15 19/9 62/9 63/11 96/7
96/14
**we've [1]** 16/12
**wearing [2]** 50/3 50/4
**Wednesday [1]** 95/24
**week [2]** 34/16 86/11
**weekend [2]** 5/25 8/6
**weeks [1]** 40/6
**well [30]** 4/11 8/23 9/21 11/15 13/15 14/11
14/18 15/18 16/15 17/23 19/6 24/9 25/1 34/8
37/20 54/19 57/18 72/18 73/23 74/16 75/24
77/23 78/18 80/13 84/14 84/20 89/21 95/20
96/4 97/7
**were [67]** 6/3 6/12 6/18 10/4 10/7 18/25 20/2

**W**

**were... [60]** 22/20 22/24 23/1 23/2 24/1 24/3
24/16 24/24 26/8 26/13 27/15 27/19 27/24
28/2 28/6 28/7 29/23 29/25 30/8 32/9 32/15
33/4 36/12 36/15 39/20 41/21 41/22 42/4
43/13 43/19 43/25 44/12 45/15 45/18 50/14
54/20 54/21 54/25 56/6 57/3 57/15 59/25 69/9
71/21 72/7 73/1 77/18 77/24 79/25 81/2 81/18
83/9 88/6 88/21 88/22 89/8 89/14 91/6 93/10
95/24
**West [2]** 1/20 2/11
**what [99]**
**what's [2]** 6/5 18/20
**whatever [1]** 88/25
**whatsoever [1]** 5/7
**when [38]** 7/7 8/2 8/15 9/18 10/12 16/2 21/13
23/1 23/10 27/18 29/15 29/24 37/6 39/19
39/24 42/4 44/2 45/18 47/2 48/15 48/19 49/5
49/18 52/4 52/13 54/20 57/12 57/14 58/1
62/10 72/3 81/2 81/18 83/5 84/9 85/15 88/21
92/4
**where [17]** 18/11 22/24 23/6 23/18 23/18 25/3
28/16 44/23 50/3 50/11 59/10 79/23 83/15
86/3 90/14 91/5 92/16
**whether [8]** 7/15 9/14 10/14 10/23 74/19
77/13 82/14 89/9
**which [21]** 8/7 10/13 12/14 15/10 16/22 25/17
26/8 28/25 37/19 55/22 62/11 63/4 69/15
70/11 73/12 73/13 77/8 80/21 83/23 92/4
93/25
**while [4]** 44/11 45/15 89/8 94/1
**who [21]** 4/14 9/12 9/15 11/19 11/19 11/21
14/4 14/22 20/2 21/22 22/11 31/11 34/2 38/4
38/7 38/7 38/10 38/11 43/10 52/10 52/10
**who's [1]** 14/25
**whole [4]** 17/13 52/23 57/20 87/18
**whose [1]** 35/2
**why [22]** 9/18 12/17 16/12 24/25 28/11 36/15
41/16 41/18 43/10 45/22 48/9 49/3 50/17
50/20 50/23 51/7 52/8 53/20 54/2 63/17 64/3
89/21
**will [60]** 4/16 5/1 5/4 5/13 5/18 5/22 5/24 7/4
7/5 7/7 7/13 7/20 11/9 13/22 14/24 15/2 15/8
20/9 20/10 25/24 26/22 27/13 34/13 34/15
40/8 42/22 45/9 47/7 50/6 56/1 56/15 56/19
60/21 63/6 64/8 64/13 65/7 65/20 66/12 68/3
69/6 69/20 70/4 74/4 74/12 76/6 76/20 79/22
81/16 82/4 84/5 84/6 85/2 86/11 90/2 91/21
94/24 95/1 95/6 95/11
**wind [1]** 45/11
**Wine [1]** 44/22
**wire [18]** 35/16 35/22 36/6 37/14 37/15 38/12
39/17 39/21 39/22 41/25 47/18 50/11 50/12
51/9 85/8 85/9 86/20 87/7
**wired [5]** 34/15 37/9 48/8 79/18 87/16
**wires [4]** 40/13 50/10 50/11 50/17
**wiring [3]** 86/21 87/7 87/17
**wise [1]** 22/1
**withdrew [1]** 49/20
**within [4]** 6/24 9/8 43/25 63/23
**without [2]** 18/8 28/5
**witness [25]** 7/13 7/25 8/13 11/11 11/13
11/25 12/5 14/14 14/22 14/25 16/3 17/9 20/8
50/7 55/10 56/21 64/19 65/24 68/20 78/20
85/14 87/13 88/2 89/23 90/13
**witness's [1]** 47/11
**witnesses [8]** 3/4 3/9 10/11 12/2 12/13 12/21
13/11 14/19
**word [4]** 37/15 45/7 89/19 89/19
**words [1]** 69/11
**work [4]** 22/1 24/12 45/25 76/2
**work-wise [1]** 22/1
**working [8]** 25/14 37/23 54/24 75/20 76/1
76/21 77/6 77/11
**works [1]** 22/3
**worries [1]** 20/4
**would [76]** 7/24 8/6 8/24 9/6 9/21 9/22 10/1
10/15 10/17 10/22 10/23 12/7 13/5 13/6 13/8
14/21 15/4 15/10 16/22 17/24 18/10 19/6 24/7

24/13 24/17 24/21 27/2 27/3 28/24 29/24 30/9
30/10 30/11 30/16 30/24 32/21 32/24 32/25
32/10 32/13 36/7 36/19 37/17 39/12 40/3 45/7
47/16 48/4 48/24 49/1 51/3 52/5 54/22 54/23
56/11 58/6 60/19 61/21 61/25 64/17 64/18
67/11 67/14 70/25 71/1 71/2 71/3 71/6 71/7
80/3 82/14 83/25 86/4 93/5 96/2
**wouldn't [1]** 70/24
**wrapped [1]** 44/19
**write [2]** 35/16 43/10
**writes [1]** 86/3
**writing [5]** 8/19 73/19 74/23 74/23 75/3
**written [1]** 74/7
**wrong [2]** 15/16 18/10
**wrote [4]** 37/3 46/13 93/6 93/6
**WYMAN [3]** 2/5 4/6 19/19

**Y**

**Yay [1]** 44/22
**yeah [1]** 27/4
**year [3]** 22/15 33/12 33/12
**years [4]** 14/20 18/7 19/1 21/2 25/2
**yes [236]**
**yesterday [9]** 4/14 4/16 5/9 6/18 10/8 10/12
10/16 10/20 20/3
**yet [4]** 25/23 61/20 63/25 66/5
**York [16]** 42/4 43/13 43/15 43/17 44/12 47/24
48/19 49/18 57/3 57/18 58/10 89/8 89/18 90/5
90/19 93/15
**you [648]**
**you'd [1]** 8/2
**you're [10]** 12/20 32/16 52/20 60/13 60/15
61/8 75/2 91/9 94/1 94/5
**your [238]**
**yourself [2]** 26/10 42/14
**YouTube [1]** 21/5
**YouTuber [1]** 25/2