Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 497-6753

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | |
| v. | DEFENDANT'S MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, TO STRIKE THE TESTIMONY OF ROBERT AMENTA AND JOHN DRUM DUE TO VIOLATIONS OF THE JENCKS ACT, RULE 26.2, *BRADY* AND *GIGLIO* |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, hereby files this motion for mistrial or, in the alternative, to strike the testimony of John Drum and Robert Amenta due to violations of the Jencks Act, Rule 26.2, *Brady* and *Giglio*. Defendant's motion is based on the attached memorandum of points and authorities; the exhibits filed concurrently herewith; the files, records and transcripts in this case; and such further evidence and argument as the Court may permit at a hearing on this matter.

Dated:  August 14, 2021

Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

# **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES…………….….……………………….……………ii

MEMORANDUM OF POINTS AND AUTHORITIES…………………………1

I.     INTRODUCTION…………………………………………………..…1

       1. Robert Amenta…….…………………………………………..…2

       2. John Drum…….……………………………………………3

II.    LEGAL STANDARD……………..…………………………………8

III.   ARGUMENT……………………………………………………..9

     A. The Statements of the Expert Witness are not Shielded by Any Work Product Privilege……………………………………………………9

     B. The Prosecutors' Method of Collecting Statements is Flawed and Fails to Account for all Statements within the Possession of the Government as Required………………………………………………………...11

     C. Striking the Witness Testimony or Granting a Mistrial are the Only Permissible Remedies…………………………………………….13

IV.   CONCLUSION…………………………………………………16

# TABLE OF AUTHORITIES

**CASES:**          **Page**

*Brady v. Maryland,*
373 U.S. 83 (1963)…………………….....................……..6,9,11,16

*Giglio v. United States,*
405 U.S. 150 (1972)…………………………………......................……6,9,11,16

*Goldberg v. United States,*
425 U.S. 94 (1976)…………………………………….................………9,10

*Jencks v. United States,*
353 U.S. 657 (1957)………………….....................…………..…8

*Saunders v. United States,*
316 F.2d 346 (1963)……………………………….. ………......................………..10

*United States v. Bundy,*
968 F.3d 1019 (9th Cir. 2020)…………………………………..………...9

*United States v. Carrasco,*
537 F.2d 372 (9th Cir. 1976)…………………………......................……………14

*United States v. Crosgrove,*
637 F.3d 646 (6th Cir. 2011)…………………………….......................……10

*United States v. Harris,*
543 F.2d 1247 (9th Cir. 1976)………………………..……………14

*United States v. Strahl,*
590 F.2d 10 (1st Cir. 1978)……………………......................………………10

*United States v. Traylor,*
656 F.2d 1326 (9th Cir. 1981)……………………......................……………10

*United States v. Well,*
572 F.2d 1383 (9th Cir. 1978)…………………………………….....................13,14

**FEDERAL RULES:**

Fed. R. Crim. P. 26.2…………………………………….........................…*passim*

**FEDERAL STATUTORY AUTHORITY:**

18 U.S.C. § 3500…………………………………………………………...…*passim*

**OTHER AUTHORITES:**

Department of Justice – Justice Manual, Section  9.5.002 *Criminal Discovery*………..12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  **INTRODUCTION**

On January 25, 2021, the Court issued an Order continuing Mr. Avenatti's jury trial from February 23, 2021 until July 13, 2021. [Dkt. 407]. In that same Order, the Court indicated that the "Deadline to Disclose Jencks Act Materials and Witness Statements" was June 14, 2021. [Dkt. 407, p. 3]. On June 15, 2021, Mr. Dean Steward, trial counsel for the defendant at the time and presently advisory counsel, contacted AUSAs Sagel and Wyman asking for the unproduced 3500 materials related to John Drum and Robert Amenta. *See, e.g.,* Exhibit A. On June 16, 2021, advisory counsel again contacted the prosecution and asked for all "invoices and bills from John Drum and/or his firm, together with all communications with John Drum and/or his firm relating to payment or billing." *See, e.g.,* Exhibit B.  No invoices, bills, emails or attachments were provided.

In the weeks that followed, Mr. Avenatti made repeated demands that the government comply with its obligations under the Jencks Act and Rule 26.2. [Dkt. 511 (Defendant's Status Report for June 28, 2021 Status Conference), Dkt. 535 (Defendant's Trial Brief), Dkt. 561 (Trial Motion for Disclosure of Jencks Act / 26.2 Materials)]. Indeed, early in the trial, in response to Mr. Avenatti again raising the issue, the Court instructed Mr. Avenatti: "The Government's under an ongoing obligation with respect to each witness to provide any *Jencks* material that has not been provided by the time the witness finishes his direct. There's no need to make that request every time, Mr. Avenatti." *See*, *e.g.*, Trial Tr. (7/21/21, Vol. 2) 5.

During cross-examination, Mr Avenatti has elicited testimony from government witnesses Robert Amenta and John Drum that they each engaged in substantive, e-mail communications and prepared "statements" relating to the subject matters of their testimony that were not provided to the defendant.

1

### 1. **Robert Amenta**

2          On August 12, 2021, government witness and Deputy Chief Investigator Robert

3   Amenta from the Federal Reserve Bank of New York testified at trial. *See, e.g.,* Trial Tr.

4   (8/12/21, Vol. 2), p. 39. During cross-examination, Investigator Amenta revealed that he

5   had three meetings with the government and also had e-mail communications with the

6   government leading up to trial. *See, e.g.,* Trial Tr. (8/12/21, Vol. 2), p. 42-43. He

7   indicated that the e-mail communications related to the subject matter of his testimony.

8   *See, e.g.,* Trial Tr. (8/12/21, Vol. 2), p. 43. He further indicated that he had these e-mail

9   communications as recent as July with Special Agent Roberson and AUSA Wyman. *See,*

10  *e.g.,* Trial Tr. (8/12/21, Vol. 2), p. 43-44. He also stated that no one ever asked him to

11  compile the written communications before he testified. *See, e.g.,* Trial Tr. (8/12/21, Vol.

12  2), p. 44-45. Realizing that he had not been provided with the information as required

13  under the Jencks Act and Rule 26.2, i.e. before he began his cross-examination, Mr.

14  Avenatti promptly requested a sidebar.  It was denied. *See, e.g.,* Trial Tr. (8/12/21, Vol.

15  2), p. 44.  Investigator Amenta testified to the unique nature of the IMAD or OMADs for

16  each transaction. *See, e.g.,* Trial Tr. (8/12/21, Vol. 2), p. 46. Investigator Amenta also

17  testified that he was asked to verify the IMAD and OMADs via e-mail. *See, e.g.,* Trial

18  Tr. (8/12/21, Vol. 2), p. 46-47. He indicated that he received a request from agent

19  Roberson and then communicated via e-mail with others to verify the information related

20  to the subject matter of his testimony. *See, e.g.,* Trial Tr. (8/12/21, Vol. 2), p. 47. Mr.

21  Avenatti was then required to complete his cross-examination of the critical government

22  witness without the benefit of any of the material. The government then proceeded to

23  call their next witness, their accounting expert John Drum.

24          At the end of the day, Mr. Avenatti made his position clear, "I think in light of the

25  testimony that was elicited from Mr. Amenta, there are significant concerns relating to

26  whether we have all of the *Jencks* materials from Mr. Amenta. I used the magic words

27  that Your Honor had pointed out relating to subject matter of the testimony … I don't

28

2

believe we have these emails…" *See, e.g.,* Trial Tr. (8/12/21, Vol. 2), p. 65. The Court asked that both parties to verify whether the defendant in fact had these e-mails. Later that evening, on August 12, 2021, the government filed "Government's Filing Regarding Email Communications with Robert Amenta." [Dkt. 690]. In its filing, the government stated that it had failed to provide the defendant two e-mail correspondence between the government and Investigator Amenta regarding the subject matter of the testimony. The government attached two e-mails to its pleadings but failed to include, and still has yet to provide to the defendant, the attachments referenced in these emails.  Further, based on his testimony, it is obvious that this is not all of the written statements by Investigator Amenta.

Equally troubling, the government indicated in its filing that it used the following procedure in order to identify *Jencks* statements: "Prior to Mr. Amenta taking the stand, government counsel conducted a search of government counsel's emails from Mr. Amenta to identify any discoverable emails, and determined that all emails received from Mr. Amenta were logistical in nature and did not relate to the substance of his expected testimony." [Dkt. 690, p. 4]. Because the government "believed that at least one Assistant United States Attorney (AUSA Wyman) was copied on all correspondence with Mr. Amenta," the government only searched through the e-mail accounts of the Assistant United States Attorneys to identify statements by its witness. [Dkt. 690, 4].[1] In its filing, the government also attached omitted e-mail chains (without the accompanying attachments) as well as three memoranda of interviews. The government provided no *Jencks* or 26.2 analysis but instead baldly claimed, without any support, "further cross-examination on the two emails attached … would likely be cumulative or a waste of time and therefore not warranted under Rule 403." [Dkt. 690, p.5]

## 2. **John Drum**

On August 12, 2021 and immediately following the testimony of Investigator

---

[1] This "explanation" in and of itself raises significant issues, which are discussed *infra*.

Amenta, the government called the final witness in their case-in-chief, Mr. John Drum, to testify as an expert. *See, e.g.,* Trial Tr. (8/12/2021, Vol. 2) p. 49. Mr. Drum and his firm have collectively been paid over $600,000 for financial work performed relating to the CDCA prosecution of Mr. Avenatti.  On direct, the government used Mr. Drum as their key financial witness relating to the ten counts in the indictment and introduced **32** demonstrative/summary exhibits (government exhibits 420-450 and 456) that Mr. Drum prepared that the government claims show that Mr. Avenatti misappropriated client funds and committed wire fraud in connection with the ten counts at issue.

Mr. Avenatti began his cross-examination of Mr. Drum in the mid-morning of August 13, 2021 (Trial Tr. (8/13/21, Vol. 1) p. 84), but only after argument earlier that morning regarding the government's *Jencks/*Rule 26.2 failures relating to Investigator Amenta, during which Mr. Avenatti stated as follows: "it's not my job to ask witnesses on the stand as to whether Jencks materials exist so that I can then bring it [sic] the attention of Your Honor … It's not my job to prove that the government is not complying with their obligation."  *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 12. During this argument, which occurred before the continuation of the direct examination of Mr. Drum by the government, the government made no mention of any potential Jencks/Rule 26.2 issues relating to Mr. Drum.

Under cross-examination, Mr. Drum testified that he has been working on this case since "sometime in late 2018." *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 87. Mr. Drum testified that the first time he met with the government in person was the Monday prior to his testimony and all other communications during the approximate two and a half years prior were done by phone and e-mail. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 88. Mr. Drum also answered "yes" to the question, "[a]nd have you over the last two-and-a-half years been in fairly regular communication with the Assistant U.S. Attorneys and the agents in connection with this matter?" *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 94. He indicated that these communications were via e-mail with "Alex Wyman, Brett Sagel,

and prior to that Julian Andre [another AUSA previously assigned to the case]." *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 94. He stated, "[t]here are agents on the e-mails as well." *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 94. He indicated that no one ever asked him to compile those communications that he had sent to the AUSAs and the agents. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 94.  Shockingly, he also testified that his copy of some of the emails with the government about the subject matter of his testimony may have been destroyed <u>during the pendency of the case</u> (i.e. after indictment). *See, e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 11.

Importantly, Mr. Drum also stated that he provided, by e-mail, drafts of the relevant chart summaries that the government had used during direct and which he had prepared. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 95. Mr. Drum also testified that over the last two and half years he made requests for information and for documents by e-mail. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 95. Mr. Drum told the jury that there were times that he consulted with the government regarding the charts that he ultimately described at trial. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 96. Mr. Drum answered affirmatively that there were many e-mails and phone calls with agents as well as prosecutors over the last two-and-a-half years and that he agreed that when he had answered affirmatively to questions regarding those emails, they related to the subject of his testimony. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 98. Mr. Drum also testified that Ms. Carter had regular e-mail communications with the government prosecutors and the agents in connection with Mr. Drum's testimony. *See, e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 10. Mr. Drum stated that these e-mail communications were at his direction as part of his work on this case. *See, e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 10-11.

Mr. Drum also testified his office maintained monthly billing statements, detailing the time he spent on projects and a general description of the tasks that were accomplished, which he personally reviewed and approved before his firm sent to the government. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 97-98. Mr. Drum relayed that no one

ever asked him to gather his bills before taking the stand. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 98.

Realizing that all of these materials had been withheld from the defense in violation of the *Jencks* Act, Rule 26.2, *Brady* and *Giglio*, Mr. Avenatti promptly asked for a sidebar, during which he was going to complain, demand the materials and ask for an immediate adjournment. The Court refused the request for a sidebar. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 99. At the conclusion of the morning session and once the jury had been excused, Mr. Avenatti addressed the Court, "Your Honor, I would ask that the government be directed to immediately provide the *Jencks* materials that were clearly withheld from me. They should have been provided before I began my cross-examination, and it is highly prejudicial that they were not. I reserve all other rights associated with this." *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 120.

AUSA Wyman then told the Court, "Your Honor, Mr. Drum is an expert witness working at the government's prosecution team's direction. To the extent he had substantive conversations relating to his testimony, it's covered by the work product privilege. For an expert witness we're required to give disclosure about opinions that he will testify to, which we did on several occasions, including providing a memorandum of interview covering exactly what the testimony would be a couple weeks ago, which we weren't required to do." *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 119-120 (emphasis added).

Mr. Avenatti then told the Court, "Your Honor, I know of no rule or case that holds that if the government calls an expert, that Jencks and 26.2 do not apply. I know of no such case. I don't believe that's the law." *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 120. Mr. Avenatti alerted the Court, "[w]e don't have the e-mails. We don't have all the drafts. We don't have all the communications from him … that's a statement of a witness under 26.2 and Jencks. So those should have been produced. They're also Brady. They're also Giglio, and they weren't produced. I mean, I'm speechless. And as you

6

know, that's rare. That's rare that I'm speechless." *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 120-121. In response, the Court made no orders and issued no directives.

After the break, Mr. Avenatti raised the issue again, stating: "Following up on what I raised before the break, I'm entitled to these e-mails and these statements from Drum. I was entitled to them before I started my cross-examination. I'd like them produced immediately, and I would like an adjournment so that I can review them before I continue my cross-examination." *See, e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 4. Mr. Avenatti asked that "the Court direct the witness, Mr. Drum, to provide to the Court all written communications with the Government, whether it be the prosecutors or the agents, relating to his testimony in this case. Because, Your Honor, the witness could not have been more clear, for two-and-a-half years he has been communicating by e-mail with the Government relating to this case." *See, e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 6.

AUSA Wyman responded, "I haven't had a chance [sic] research the issue. My understanding with an expert is that substantive work product like the exchange of drafts, for example, falls within the work product exception. But with regard to substantive e-mails, what we were able to find was virtually nothing,[2] and the stuff that we had found was like -- you know, I was asking for the extent of their payment and the breakdown of what that payment was for, and we had copied and pasted that and put that into a disclosure letter to the defense. We're happy to provide in camera what we were

---

[2] It is impossible to reconcile Mr. Wyman's representations to the Court about there being "virtually nothing" with (a) the testimony of the witness as to what had occurred across two and a half years and (b) the fact that work evidently sufficient enough to justify billings over $600,000 was performed during this time period.  To be clear, not a single email from Mr. Drum or his colleagues has been produced to the defense thus far in the case.  Further, none of the extensive two and half years' worth of communications as mentioned by Mr. Drum under cross-examination were produced.  Nor did the government provide any drafts of any of the charts that Mr. Drum testified he had prepared and sent to the government during his engagement, with the exception of one draft set sent by the government in May 2020 without any mention of which draft it was or how it was provided to the government by Mr. Drum.

able to find, which was, as I said, virtually nothing that I don't think has already been disclosed." *See*, *e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 5. Mr. Avenatti responded, "There is no – there is no work product exception to the *Jencks* Act and Rule 26.2. And if counsel has any authority for this proposition, I would ask for it." *See*, *e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 6.

The Court proceeded to deny the request for an adjournment and directed the government to file materials in camera. *See e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 5. Mr. Avenatti was then forced to complete his cross-examination without any of the statements of the key government expert.

## II.   LEGAL STANDARD

The Supreme Court's holding in *Jencks v. United States*, 353 U.S. 657 (1957), 18 U.S.C. § 3500 (the "Jencks Act"), and Fed. R. Crim. P. 26.2 are all clear as to the requirement of production of witness statements immediately after a government witness testifies.  Equally clear are the consequences for non-compliance – striking a witness's testimony and/or ordering a mistrial.  Indeed, under the clear language of the Act and the Rule, once a violation is discovered, the Court is <u>required</u> to either strike the testimony or declare a mistrial.  *See*, *e.g.*, Rule 26.2(e) ("Sanction for Failure to Produce or Deliver a Statement. If the party who called the witness disobeys an order to produce or deliver a statement, the court **<u>must</u>** strike the witness's testimony from the record. If an attorney for the government disobeys the order, the court **<u>must</u>** declare a mistrial if justice so requires.")(emphasis added); 18 U.S.C. § 3500(d) ("If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court **<u>shall</u>** strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.")(emphasis added).

Further, for decades, the law has been clear - there is no "work product exception" to the *Jencks* Act as erroneously claimed by AUSA Wyman. *See*, *e.g.*, *Goldberg v. United States*, 425 U.S. 94, 102 (1976) ("We reject the [work product] argument, since the plain language of the statute, fully buttressed by legislative history, allows no room for the tendered exception.").

In addition, the suppression of evidence favorable to an accused is itself sufficient to amount to a denial of due process. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The prosecution's suppression of evidence that is favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." *Id.* at 88. Under *Brady*, the prosecution is "trusted to turn over evidence to the defense because its interest is not that it shall win a case, but that justice shall be done." *United States v. Bundy*, 968 F.3d 1019, 1023 (9th Cir. 2020)(affirming the district court's dismissal of a twenty-one defendant obstruction case because the government flagrantly disregarded its *Brady* obligations by failing to disclose materials until several days into trial). Further, ***any*** information that could be used to impeach a witness is required to be produced pursuant to *Giglio*. *See, e.g., Giglio v. United States*, 405 U.S. 150 (1972).

## III.   ARGUMENT

### A.   The Statements of the Expert Witness are not Shielded by any Work Product Privilege

Over forty years ago, in *Goldberg v. United States*, 425 U.S. 94 (1976), the Supreme Court specifically precluded the government from claiming, as they did on Friday, that "work product" permits the withholding of materials from the defense that are obligated to be produced pursuant to the Jencks Act:

> We see nothing in the Jencks Act or its legislative history that excepts from production otherwise producible statements on the ground that they constitute "work product" . . . [T]he Government's principal contention seems to be that in any event the principles underlying the "work product"

9

doctrine suggest a narrow construction of "statement" as not to include a lawyer's "work product" even though it fits the statutory definition of a producible statement. **We reject the argument, since the plain language of the statute, fully buttressed by legislative history, allows no room for the tendered exception.**

*Goldberg*, 425 U.S. at 102 (emphasis added).

The *Goldberg* Court then went on to hold, "We therefore conclude that the District Court erred in holding that the work-product doctrine bars production of writings otherwise producible under the Jencks Act" and further stated "The Courts of Appeals that have considered the applicability of the 'work product' doctrine to the Jencks Act have uniformly reached the same conclusion. *Saunders v. United States*, 114 U.S.App.D.C. 345, 349, 316 F.2d 346, 350 (1963) (Reed, J.); *United States v. Aviles*, 315 F.2d 186, 191 (CA2 1963); *United States v. Hilbrich*, 341 F.2d 555, 557 (CA7), cert. denied, 381 U.S. 941 (1965); *United States v. Smaldone*, 484 F.2d 311, 317 (CA10 1973), cert. denied, 415 U.S. 915 (1974)."

In the event the Supreme Court's ruling was not clear enough – it was - the Ninth Circuit, on remand, explained it this way: "In *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976), the Supreme Court reversed, holding that there is no 'work product' exception to the statutory definition of a 'statement' in the Jencks Act . . . ." *United States v. Goldberg*, 582 F.2d 483, 485 (9th Cir. 1978). In fact, even notes "prepared by a government attorney are 'statements' and producible where they relate 'to the subject matter of the testimony of a government witness (and have) been 'signed or otherwise adopted or approved' by the government witness'" *United States v. Traylor*, 656 F.2d 1326, 1336 (9th Cir. 1981); *citing Goldberg*, supra, 425 U.S. at 98. *See also, United States v. Strahl*, 590 F.2d 10 (1st Cir. 1978)("The government attorney's opinion at the bench that his notes were privileged work product and thus not producible under the Jencks Act was clearly without merit in light of *Goldberg*…")(emphasis added); *United States v. Crosgrove*, 637 F.3d 646 (6th Cir. 2011)(supporting the district court's

ruling that "there was no work product exception to the Act's disclosure requirements.")

Accordingly, the government's "work product" justification for not complying with their disclosure obligations is devoid of all merit. Further, not only should all of these statements, including all emails and drafts of the exhibits, have been produced as required by the *Jencks* Act and Rule 26.2, these materials also likely contain statements that were required to have been provided pursuant to *Brady* and *Giglio*. Indeed, it is difficult to comprehend how draft versions of the charts, and the emails, would not have been useful for impeachment of the expert during cross-examination.

**B.    The Prosecutors' Method of Collecting Statements is Flawed and Fails to Account for all Statements within the Possession of the Government As Required**

The government states that AUSAs Wyman and Sagel conducted a search of their emails to determine if there were any discoverable emails related to government Investigator Amenta. Because the government "believed that at least one Assistant United States Attorney (AUSA Wyman) was copied on all correspondence with Mr. Amenta," the government only searched through the e-mail accounts of the Assistant United States Attorneys to identify statements by its witness. [Dkt. 690, 4]. This "explanation" in and of itself raises significant issues. First, if this was actually done, how did this alleged pre-trial search for *Jencks* fail to identify for production one of the Amenta e-mails that specifically includes AUSA Wyman in the string? [Dkt. 690, pp. 19-20]. Second, why have the AUSAs only been searching their individual email accounts for Jencks and Rule 26.2 materials – the requirement is all statements in the possession of the *government* be produced, including case agents and investigators. Third, Investigator Amenta is a *Deputy Chief Investigator* employed by the government and used in connection with this criminal investigation and prosecution. Accordingly, all emails or other statements from Investigator Amenta, in whatever form, relating to the subject matter of his testimony, including his investigation, would qualify as

11

"statements" in the possession of the government, even if they were never sent to CDCA prosecutors or investigators.  Such statements should have been gathered and produced and yet, as Mr. Amenta testified, no one ever asked him to compile the written communications before he testified. *See, e.g.,* Trial Tr. (8/12/21, Vol. 2), p. 44-45.

The Department of Justice outlines the manner in which prosecutors must search for discovery or discoverable information. In a section entitled "Where to look: The Prosecution Team," the DOJ requires the following:

> It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all members of the prosecution team. Members of the prosecution team. Members of the prosecution team include federal, state and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against defendant. This search duty also extends to information prosecutors are required to disclose under Federal Rules of Criminal Procedure 16 and 26.2 and the Jencks Act.

Department of Justice - Justice Manual, Section 9-5.002 *Criminal Discovery*[3]

The prosecution team in this case is vast. It is not limited to AUSA Sagel, AUSA Wyman, former AUSA Andre, or special agents within the Central District of California (Roberson, Kim, and Karlous). Despite this fact, by its own concession, it is clear the government did not contact other members of the prosecution team to search for Jencks/Rule 26.2 statements from Investigator Amenta. Even more disturbing, there is nothing indicating that the process used relating to Investigator Amenta was any different than that used by the government in connection with every other government witness. For every government witness, the prosecution had the obligation to have every member of the prosecution team perform a thorough and diligent search for statements by that witness regarding the subject matter of their testimony, in whatever form, and

---

[3] https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings

then produce such statements to the defendant before cross-examination began.

The procedure followed by the government in connection with Investigator Amenta is blatantly improper and reflects a fundamental misunderstanding of the government's disclosure requirements, which are mandated in order to protect Mr. Avenatti's right to due process. The prosecutors' assumptions and beliefs regarding who Investigator Amenta communicated with were clearly wrong despite the e-mail exchange occurring only a month ago. Mr. Avenatti asks that the Court require the government to provide the Court and the defense, in open court, with a clear explanation of the manner and method in which AUSAs Sagel and Wyman sought out the statements required to be produced under Jencks and 26.2 for each government witness.

## C.   Striking the Witness Testimony or Granting a Mistrial are the Only Permissible Remedies

The mandated relief described in Rule 26.2(e) and 18 U.S.C. § 3500(d) could not be more clear - "Sanction for Failure to Produce or Deliver a Statement. If the party who called the witness disobeys an order to produce or deliver a statement, the court **must** strike the witness's testimony from the record. If an attorney for the government disobeys the order, the court **must** declare a mistrial if justice so requires"(emphasis added) and "If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court **shall** strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared"(emphasis added). *See also*, *United States v. Well*, 572 F.2d 1383, 1384 (9th Cir. 1978) (holding that if the "government fails to produce such statements, the court is **required** to strike the testimony of the witness.").

Moreover, a trial judge's failure to impose sanctions upon the government for noncompliance with the Jencks Act, whether intentional or not, has been found to

constitute error. In other words, when a statement is not furnished by the government for whatever reason pursuant to a Jencks Act request from the defense, the provisions of § 3500(d) come into operation and require, at a minimum, the striking of the witness's testimony. *United States v. Well,* 572 F.2d 1383 (9th Cir. 1978); *United States v. Harris,* 543 F.2d 1247 (9th Cir. 1976); *United States v. Carrasco,* 537 F.2d 372 (9th Cir. 1976).

In the government's filing regarding Investigator Amenta, the prosecution ignores the consequences of a violation of the Jencks Act and Rule 26.2. Although the statements withheld are described by the government as "two emails that relate to the subject matter of Investigator Amenta's testimony," the word "Jencks" does not appear a single time within the government filing. The act of withholding the *Jencks* material triggers one of two remedies - a mistrial or the striking of the testimony. Nor can the government avoid the consequences for their failures by arguing "further cross examination on the two emails … would likely be cumulative or a waste of time and therefore not warranted under Rule 403." [Dkt. 690].  Mr. Avenatti had a right to all of the Jencks/Rule 26.2 materials **before** he began his examination.  This includes, but is not limited to, the two emails, not to mention the attachments and other statements of Investigator Amenta that have yet to be produced.  For instance, Investigator Amenta testified that he communicated with others by way of e-mail to verify the IMADs and OMADs listed on government exhibit 457. *See, e.g.,* Trial Tr. (8/12/21, Vol. 2), p. 46-47. Yet, these statements were never produced.

Had Mr. Avenatti been provided such information, he would have, at a minimum, used it to conduct his cross-examination differently and to impeach Investigator Amenta because what is included in the emails is not consistent with the memoranda of interviews or his trial testimony.[4]  He also would have used it to elicit testimony from Investigator Amenta that would have substantially undermined the accuracy of the

---

[4] Mr. Avenatti can provide a more detailed proffer to the Court *in camera* if requested to do so.

14

government's chart admitted at Exhibit 457,[5] an exhibit which the government used on direct with the witness, as well as the testimony elicited on direct by the government.[6] But because the government withheld the Jencks/Rule 26.2 materials from the defendant, Mr. Avenatti was able to do none of this. The government's failure to timely produce these materials was highly prejudicial.

Turning to Mr. Drum, the government withheld two and a half years of substantive communications from Mr. Drum and his colleagues relating to the subject matter of his testimony, all bills and invoices for their work, and, with the exception of one draft set, all other drafts of the demonstrative and summary exhibits ultimately used on direct and admitted into evidence through Mr. Drum.  They also withheld all written requests for information and questions posed by Mr. Drum from 2018 to the present. They did so despite repeated requests by the defense and multiple false representations made to the defense and the Court that all *Jencks* materials for all witnesses had been produced long before trial.[7]

Further, this was no mere oversight or accident – it was deliberate, as evidenced by AUSA Wyman's admission to the Court that the materials were purposely withheld

---

[5] When Mr. Avenatti realized this information existed, he immediately asked for a sidebar in an effort to acquire the details of Investigator Amenta's communications relating to Exhibit 457. That request was denied, which resulted in Mr. Avenatti being forced to proceed without the benefit of the information. Now, having reviewed the e-mails, it is apparent that Mr. Avenatti could have used the errors in Exhibit 457 as pointed out by Investigator Amenta in his e-mail to further Mr. Avenatti's defense centered on the sloppiness and substandard methods of the government's investigation and prosecution. *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 445-449 (1995); *United States v. Sager* 227 F.3d 1138, 1145-1146 (9th Cir. 2000). Due to the government's misconduct, however, he was prevented from doing so.

[6] The emails demonstrate that the chart, which purports to identify each wire for each count, is not accurate.

[7] The Court will recall that on at least three occasions earlier in the trial, the government denigrated and mocked Mr. Avenatti, claiming he did not know what *Jencks* was and what it required.

by the government through reliance on the work product doctrine, <u>an argument that has</u> <u>been devoid of all merit for at least forty years</u>.  Even worse, once they were caught, only because of the cross-examination questions of the defendant, the government continued to advance the bad faith "work product" theory and refuse to provide the materials to the defendant. The government's failure to timely produce these materials was highly prejudicial.

All of this conduct evidences substantial violations of the *Jencks* Act, Rule 26.2, *Brady* and *Giglio*, as well as defendant's right to due process as guaranteed under the Constitution.  Accordingly, the Court should declare a mistrial.

## IV.    CONCLUSION

For each of these reasons, Mr. Avenatti respectfully requests that this Court declare a mistrial. In the alternative, Mr. Avenatti requests that the Court strike the testimony of Robert Amenta and John Drum for the reasons set forth in the motion and above.  At a minimum, the Court should conduct an evidentiary hearing as required pursuant to the Supreme Court's decision in *Campbell v. United States*, 365 U.S. 85, 95 (1961).

Dated:  August 14, 2021                         Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

**further re discovery**

Dean Steward <deansteward7777@gmail.com>

Tue 6/15/2021 9:58 AM

**To:** Sagel, Brett (USACAC) <brett.sagel@usdoj.gov>; Wyman, Alex (USACAC) <Alex.wyman@usdoj.gov>

Brett and Alex:


Pursuant to the Court's Order (Dkt. 407), please immediately produce all 3500 material (including notes (handwritten and typed), emails, text messages, and recordings) for each of the 36 government witnesses listed on your witness list of last night.  For instance, it is clear that we have not been provided all 3500 material for numerous witnesses, including but not limited to, Rob Amenta, John Drum, Judy Regnier, Geoffrey Johnson, Richard Beada, Michelle Phan, Long Tran, Alexis Gardner, James Gailey, Elsa Guerrero, Mark Horoupian, Filippo Marchino, Louis Meisinger, Greg Barela, Nshan Tashchyan, and Hassan Whiteside (there are others).  To the extent you claim that all of this information for any of the 36 witnesses has already been produced, please promptly provide the Bates stamp ranges for the documents, listed by witness.

Further, please provide the name of the witness from the U.S. Trustee's Office. Yesterday was the deadline for disclosure of all of the government's witnesses.


Thanks,

Dean


--




949-481-4900  www.deansteward.com

**EXHIBIT B**

**Drum & Katzen- Brady etc.**

Dean Steward <deansteward7777@gmail.com>
Wed 6/16/2021 1:31 PM
**To:** Sagel, Brett (USACAC) <brett.sagel@usdoj.gov>; Wyman, Alex (USACAC) <Alex.wyman@usdoj.gov>

Brett and Alex:

Please immediately produce all invoices and bills from John Drum and/or his firm, together with all communications with John Drum and/or his firm relating to payment or billing.  Please also produce the same materials for Susan Katzen.  All of this information is required to be produced under Brady, Giglio and the Court's prior Order.

Thanks,
Dean

--



ATTORNEY- PROFESSIONAL CORPORATION
949-481-4900  www.deansteward.com

## **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on August 14, 2021 service of the:

DEFENDANT'S MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, TO STRIKE THE TESTIMONY OF ROBERT AMENTA AND JOHN DRUM DUE TO VIOLATIONS OF THE JENCKS ACT, RULE 26.2, *BRADY* AND *GIGLIO*

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2021

/s/ H. Dean Steward

H. Dean Steward