KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
ERIC M. STAHL (State Bar No. 292637)
  ericstahl@dwt.com
SAM F. CATE-GUMPERT (State Bar No. 335715)
  samcategumpert@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Non-Party CNN Producer
JACQUELINE ROSE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | Case No.  **SA CR No. 19-061-JVS**<br><br>**DECLARATION OF KELLI L. SAGER IN SUPPORT OF EX PARTE APPLICATION FOR ORDER TO QUASH DEFENDANT'S SUBPOENA WITH EXHIBITS 2-6**<br><br>Hearing Date:  August 17, 2021<br>Time:  8:00 AM<br>Courtroom:  10C<br>Hon. James V. Selna<br><br>[Ex Parte Application For Order To Quash Defendant's Subpoena; Declaration of Jacqueline Rose With Exhibit 1; Notice Of Lodging of Declaration of Krista Kordt Hester With DVD Exhibits A-C; and [Proposed] Order Concurrently Filed]<br><br>Action Filed:  April 10, 2019 |

## DECLARATION OF KELLI L. SAGER

I, Kelli L. Sager, declare and state as follows:

1.     I am a partner with the law firm of Davis Wright Tremaine LLP , and I am one of the attorneys representing non-party journalist Jacqueline Rose in this action.  I submit this declaration in support of Ms. Rose's Ex Parte Application For Order To Quash Defendant's Subpoena For Testimony And Documents ("Motion").  The matters stated below are true of my own personal knowledge, except for those matters stated on information and belief, which I am informed and believe to be true.

2.     The Motion seeks to quash a subpoena that I am informed and believe was emailed to Ms. Rose on behalf of Defendant Michael Avenatti ("Defendant") on August 9, 2021, demanding that she appear to testify at trial in this matter and produce certain text messages, with the return date of August 13, 2021 ("Subpoena").  After I was retained in this matter, I reached out to Defendant and his advisory counsel Dean Steward to discuss the subpoena; during that conversation, Defendant said that he did not "need" Ms. Rose until the following week, and he and Mr. Steward agreed to modify the subpoena return date to August 17, 2021.  Attached as **Exhibit 2** is a true and correct copy of an email I received on August 11, 2021, from Defendant's paralegal Emma Hernandez, confirming Defendant's agreement to modify the subpoena return date to August 17, 2021.

3.     In my discussions with Defendant and Mr. Steward, they told me that Defendant was seeking Ms. Rose's testimony in response to a government witness who, according to Defendant, had testified that Defendant was in a particular place on a particular day, and the text messages would "prove" he was not there.  In subsequent communications, they and a paralegal working for the defense team indicated that Defendant was seeking to prove that Mr. Avenatti was physically in CNN's studios in New York or Washington DC, on each day from April 28 to May 3, 2021.  Attached as **Exhibit 3** is an email I received from Defendant's paralegal,

Emma Hernandez, indicating the dates and appearances that Defendant was seeking to confirm.

4.      Beginning with my first conversation with Defendant and Mr. Steward, and in subsequent conversations, I told them that Ms. Rose objected to the Subpoena on several grounds, including that the Subpoena was not properly served; that Defendant had failed to provide the required witness fee (a point he did not dispute); and that the Subpoena would be unreasonably burdensome because Ms. Rose is the primary caretaker for her one-year-old child, and could not travel across country on short notice even absent concerns about the ongoing pandemic. I also explained that the Subpoena sought information that was protected under the First Amendment's privilege for newsgathering material. In my communications with them, after learning why Defendant sought Ms. Rose's appearance, we discussed whether there were alternatives that could avoid the dispute about the Subpoena that had been emailed to her, and would not require her or anyone from CNN to travel to California. On each occasion, Defendant was dismissive of what he deemed the "inconvenience" to Ms. Rose, and skeptical that there was any other alternative that would satisfy him, unless it involved another live witness.

5.      On August 12, 2021, I informed the defense that in an effort to resolve the objections to the Subpoena Defendant had emailed to Ms. Rose, and to avoid the need to have the Court adjudicate a motion to quash, CNN (Ms. Rose's employer) would be willing to provide Defendant with an alternative means of confirming his appearances on CNN on three dates, using material that had been publicly disseminated, if Defendant agreed to withdraw the Subpoena. Specifically, I told him that CNN would be willing to provide DVDs of the as-telecast footage of his appearances on CNN programs in its New York studio on April 30, May 1, and May 2, 2018, along with a custodian declaration attesting to the video's authenticity, dates, times and location. Attached as **Exhibit 4** is a true and correct copy of my August 12, 2021 email to Mr. Steward and Ms. Hernandez containing this proposal.

DECLARATION OF KELLI L. SAGER
4840-7742-9238v.5 0026517-000213

I also offered to seek an agreement from the government's counsel about stipulating to the DVDs' authenticity, rather than requiring a live witness to appear.

6.  I had two telephone conversations with Defendant and Mr. Steward on Friday, August 13, to discuss my proposal for resolving this dispute.  In both conversations (at approximately 12:30 p.m. and again at approximately 5:30 p.m.), Defendant was again dismissive of the proposal, and insisted that he needed a "live" witness, even though I explained to him that the CNN librarian who located and authenticated the videos is located in Atlanta, Georgia.  He ended the 5:30 p.m. conversation by saying that he needed to "chew on this" more, and indicated he would have an answer an hour later.  He rejected my offer to discuss obtaining a stipulation from the government, even though he simultaneously asserted that he was certain they would not agree.

7.  At approximately 6:39 p.m. on Friday evening, August 13, having not heard anything further from Defendant and Mr. Steward, I emailed Mr. Steward asking that he let me know if Defendant was going to agree to our proposal, since otherwise we would need to file a motion to quash the Subpoena.  I did not receive any response from Mr. Steward or the defense team.  Attached as **Exhibit 5** is a true and correct copy of my email to Mr. Steward.

8.  Attached as **Exhibit 6**, on information and belief, is a true and correct copy of excerpts of the July 28, 2021, transcript from this trial, containing portions of the testimony of Judith Regnier.

9.  On August 16, 2021, at approximately 8:00 a.m., I emailed Assistant United States Attorney Brett A. Sagel and Defendant's advisory attorney H. Dean Steward, providing them notice of Ms. Rose's ex parte application to quash Defendant's subpoena.  I also emailed the notice to Ms. Hernandez.  A few minutes

//

//

DECLARATION OF KELLI L. SAGER
4840-7742-9238v.5 0026517-000213

1  after 8:00 a.m., I also telephoned Mr. Steward and Mr. Sagel to give notice (leaving a

2  voicemail message for Mr. Steward).

3        I declare under penalty of perjury under the laws of the United States of

4  America that the foregoing is true and correct and that this declaration was executed

5  this 16th day of August 2021 in Los Angeles, California.

6

7

8                                    /s/ Kelli L. Sager

9                                    Kelli L. Sager

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# EXHIBIT 2

**From:**        emma hernandez <workingwitheh@gmail.com>
**Sent:**        Wednesday, August 11, 2021 10:07 AM
**To:**          Sager, Kelli
**Subject:**     Re: Update - Avenatti Trial Schedule

**[EXTERNAL]**

Ms. Sager:  Mr. Steward and Mr. Avenatti agree that the return date on the subpoena is modified to Tuesday, August 17.  Thank you.

On Wed, Aug 11, 2021 at 10:00 AM Sager, Kelli <kellisager@dwt.com> wrote:

> Ms. Hernandez –
>
> Thank you for your emails.  I am checking into the information you requested about CNN's programs on which Mr. Avenatti appeared.
>
>
> On the timing, can you please confirm, on behalf of Mr. Avenatti and Mr. Steward, that they agree that the return date for the subpoena is continued to Tuesday, August 17, so no appearance or response is required this week?  As I mentioned to them in our call earlier, we do not agree that the subpoena was properly served, but in any case, we would prefer not to have to respond by Friday, so that we can determine if the information Mr. Avenatti is seeking about his appearances on CNN can be provided through a local custodian.  As I told them, Ms. Rose is in New York and has child-care obligations that would make it extremely burdensome for her to travel, particularly given the ongoing pandemic.  All rights reserved.
>
> Thanks, Kelli
>
>
> **Kelli Sager** | Davis Wright Tremaine LLP
> 865 S Figueroa Street, Suite 2400 | Los Angeles, CA 90017
> Tel: (213) 633-6821 | Fax: (213) 633-6899
> Email: kellisager@dwt.com | Website: www.dwt.com
>
> Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.
>
> **From:** emma hernandez <workingwitheh@gmail.com>
> **Sent:** Wednesday, August 11, 2021 9:45 AM
> **To:** Sager, Kelli <kellisager@dwt.com>
> **Subject:** Update - Avenatti Trial Schedule
>
>
> **[EXTERNAL]**
>
>
> From Mr. Steward and Mr. Avenatti:

1

**Exhibit 2**
**05**

Ms. Sager:

To the extent Mr. Avenatti requires Ms. Rose to testify, which hopefully will not be necessary (see our earlier email), she would not be required before next Tuesday.

Thank you.

--

Emma Hernandez, Paralegal

(626) 622-9371

workingwithEH@gmail.com

--
Emma Hernandez, Paralegal
(626) 622-9371
workingwithEH@gmail.com

**Exhibit 2**
**06**

# EXHIBIT 3

**From:**          emma hernandez <workingwitheh@gmail.com>
**Sent:**          Wednesday, August 11, 2021 9:17 AM
**To:**            Sager, Kelli
**Subject:**       U.S. v. Avenatti - Subpoena for Ms. Rose

**Follow Up Flag:**     Follow up
**Flag Status:**        Flagged

[EXTERNAL]

From Mr. Dean Steward and Mr. Avenatti

Ms. Sager:  Thank you for the call earlier.  We believe there is evidence within the CNN archives that easily shows the following.  If we can get someone local from CNN who can attest to the following, we can hopefully avoid inconveniencing Ms. Rose.

1.  Mr. Avenatti was in Washington, D.C. and appeared live on CNN from Washington, D.C. on Saturday, April 28, 2018
2.  Mr. Avenatti appeared in studio on Jake Tapper's CNN show in Washington, D.C. on Sunday, April 29, 2018.
3.  Mr. Avenatti appeared on CNN with Dana Bash on the evening of Sunday, April 29, 2018 from either New York or Washington, D.C.
4.  Mr. Avenatti appeared in studio on at least one, and possibly 2-3, shows on CNN on the evening of April 30, 2018 from New York.
5.  Mr. Avenatti appeared in studio on CNN's morning show on the morning of May 1 from New York.
6.  Mr. Avenatti appeared in studio on CNN shows from New York on May 2, 2018.
7.  Mr. Avenatti appeared in studio on CNN shows from New York on May 3, 2018.

Please let us know.

Thank you.


--
Emma Hernandez, Paralegal
(626) 622-9371
workingwithEH@gmail.com

**Exhibit 3**
**07**

# EXHIBIT 4

| | |
|---|---|
| **From:** | Sager, Kelli |
| **Sent:** | Thursday, August 12, 2021 11:28 AM |
| **To:** | Dean Steward |
| **Cc:** | emma hernandez |
| **Subject:** | United States v. Avenatti subpoena |
| | |
| **Importance:** | High |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Counsel:

In an attempt to resolve the issues surrounding the subpoena emailed to Jacqueline Rose (including not only service issues, but other objections, including the First Amendment issue I mentioned), CNN has undertaken a reasonable search to determine whether there is aired material that would enable a custodian to verify that Mr. Avenatti appeared in-studio in CNN's east coast studios on the relevant dates in question.  When we spoke yesterday morning, Mr. Avenatti said he believed the relevant dates were **May 1 and 2, 2018**, so we have focused on those dates and **April 30**, 2018.

After conducting a diligent search, we can provide a custodian declaration with as-aired footage from April 30, May 1, and May 2, 2018, which depicts Mr. Avenatti's appearance on CNN programs in-studio in New York on those dates.  In exchange for your agreement to withdraw the subpoena to Ms. Rose (which we do not believe is proper in any event), we will provide this material and a custodian declaration attesting to its authenticity, with the dates and times on which those appearances took place in New York.  We are confident that with this information provided to the parties, you all can stipulate to the fact that Mr. Avenatti was in New York on those dates/times.  This solution should satisfy your needs and avoids putting any undue burden or unnecessary risk on CNN personnel – particularly in light of the ongoing pandemic – which I understand caused the trial to end early yesterday, because of a juror's exposure.

Please let me know at your earliest convenience if this is acceptable.  All rights reserved.

Sincerely, Kelli Sager

**Kelli Sager** | Davis Wright Tremaine LLP
865 S Figueroa Street, Suite 2400 | Los Angeles, CA 90017
Tel: (213) 633-6821 | Fax: (213) 633-6899
Email: kellisager@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

**Exhibit 4**
**08**

# EXHIBIT 5

**From:**           Sager, Kelli
**Sent:**           Friday, August 13, 2021 6:39 PM
**To:**             Dean Steward
**Subject:**        United States v. Avenatti

**Follow Up Flag:**     Follow up
**Flag Status:**        Flagged

Dean:
If you and Mr. Avenatti are willing to accept our proposed solution to address the objections to the subpoena emailed to Jacqueline Rose, please let me know.  As I said, I am certainly wiling to ask the government lawyers if they will accept a custodian declaration authenticating CNN's video in lieu of a live witness, if that is a concern.  But absent an agreement from Mr. Avenatti to withdraw the subpoena to Ms. Rose, we have no choice but to proceed with a motion to quash, for all the reasons I have explained.
Sincerely,
Kelli Sager

**Kelli Sager** | Davis Wright Tremaine LLP
865 S Figueroa Street, Suite 2400 | Los Angeles, CA 90017
Tel: (213) 633-6821 | Fax: (213) 633-6899
Email: kellisager@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

**Exhibit 5**
**09**

# EXHIBIT 6

1

1

2

3

4                    UNITED STATES DISTRICT COURT

5                   CENTRAL DISTRICT OF CALIFORNIA

6                        SOUTHERN DIVISION

7                            - - -

8       THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

10      UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
                            Plaintiff,  )
                vs.                    )
11                                     )  SACR-19-00061-JVS
        MICHAEL JOHN AVENATTI,         )
12                        Defendant.   )TRIAL DAY 10, VOL. 1
        ------------------------------)

13

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                Santa Ana, California

17                  July 28, 2021

18

19                     SHARON A. SEFFENS, RPR
                       United States Courthouse
20                     411 West 4th Street, Suite 1-1053
                       Santa Ana, CA  92701
21                     (714) 543-0870

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 6
10

53

| | | |
|---|---|---|
| 10:15 | 1 | Q    Including at least two of those e-mails being written |
| 10:15 | 2 | by the defendant? |
| 10:16 | 3 | A    Yes. |
| 10:16 | 4 | Q    Is this a fair and accurate e-mail chain that you were |
| 10:16 | 5 | on with the defendant in which he wrote at least two of the |
| 10:16 | 6 | e-mails? |
| 10:16 | 7 | A    Yes. |
| 10:16 | 8 | MR. SAGEL:   The government moves to admit |
| 10:16 | 9 | Exhibit 281, Your Honor. |
| 10:16 | 10 | MR. AVENATTI:   Objection.   Hearsay. |
| 10:16 | 11 | THE COURT:   Overruled.   281 will be received.   The |
| 10:16 | 12 | e-mails by Mr. Avenatti will be received for the truth, the |
| 10:16 | 13 | others just for notice. |
| 10:16 | 14 | (Exhibit 281 received in evidence) |
| 10:16 | 15 | BY MR. SAGEL: |
| 10:16 | 16 | Q    Let's start with the top.   Who is on this e-mail chain? |
| 10:16 | 17 | A    Michael Avenatti, myself, and Long Tran. |
| 10:16 | 18 | Q    And if you kind of look and the way gmail keeps it, the |
| 10:16 | 19 | subject line is along with the five messages; do you see |
| 10:16 | 20 | that? |
| 10:16 | 21 | A    Yes.   It's Michelle wire. |
| 10:16 | 22 | Q    So the subject of these e-mails are Michelle wire? |
| 10:16 | 23 | A    Yes. |
| 10:16 | 24 | Q    On April 30th, 2018, what does defendant write? |
| 10:17 | 25 | A    "Judy, I know you are trying to dig out from last week, |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit 6**

**11**

54

| | | |
|---|---|---|
| 10:17 | 1 | but please get with Long and figure out what the issue is on |
| 10:17 | 2 | the CNB wire.  This needs to be a priority.  If I need to do |
| 10:17 | 3 | something or find a branch on the East Coast, let me know, |
| 10:17 | 4 | but I want this resolved.  Thanks." |
| 10:17 | 5 | Q    What did you understand defendant saying when he says |
| 10:17 | 6 | he wants to make this a priority? |
| 10:17 | 7 | A    Michael sent that, and then he would contact me and |
| 10:17 | 8 | tell me through that e-mail when we were going to do the |
| 10:17 | 9 | wire but just to hold off. |
| 10:17 | 10 | Q    So after the defendant sent this e-mail to Long Tran |
| 10:17 | 11 | that you're on, you had a conversation with him? |
| 10:17 | 12 | A    Either after or before. |
| 10:17 | 13 | Q    What did he say at that time to you in relationship to |
| 10:17 | 14 | this e-mail? |
| 10:17 | 15 | A    That we weren't sending the wire right now.  He would |
| 10:18 | 16 | get back with me as to when we would release the wire. |
| 10:18 | 17 | Q    So as of April 30th when he's sending you this e-mail, |
| 10:18 | 18 | to you and Long Tran, had you sent any wires to Michelle |
| 10:18 | 19 | Phan? |
| 10:18 | 20 | A    No. |
| 10:18 | 21 | Q    Then he says:  "If I need to do something or find a |
| 10:18 | 22 | branch on the East Coast, let me know, but I want to get |
| 10:18 | 23 | this resolved."  What would the defendant need to do if he |
| 10:18 | 24 | wanted to send a wire to Michelle Phan? |
| 10:18 | 25 | MR. AVENATTI:  Speculation.  Conjecture, Your |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit 6**

**12**

| | | |
|---|---|---|
| 10:18 | 1 | Honor. |
| 10:18 | 2 | THE COURT:  Overruled. |
| 10:18 | 3 | THE WITNESS:  I would just have to initiate it and |
| 10:18 | 4 | he would approve it. |
| 10:18 | 5 | BY MR. SAGEL: |
| 10:18 | 6 | Q    Did he do that? |
| 10:18 | 7 | A    No. |
| 10:18 | 8 | Q    In response to defendant's e-mail on April 30th, did |
| 10:18 | 9 | Long Tran reply? |
| 10:18 | 10 | A    Yes.  He said, "Thanks, Michael.  Hi, Judy.  The wire |
| 10:18 | 11 | hasn't come through, and we can only trace it via the fed |
| 10:19 | 12 | ref number.  Please provide ASAP so we can see where it got |
| 10:19 | 13 | held up.  This is very urgent.  Thank you." |
| 10:19 | 14 | Q    Was there a fed reference number to provide at that |
| 10:19 | 15 | time? |
| 10:19 | 16 | A    No, there was not. |
| 10:19 | 17 | Q    And in an e-mail subsequent, you replied to Long Tran; |
| 10:19 | 18 | is that correct? |
| 10:19 | 19 | A    Yes, I did. |
| 10:19 | 20 | Q    Let's start with what did you say to Long Tran? |
| 10:19 | 21 | A    What I said was:  "Long, I asked the bank to put a |
| 10:19 | 22 | trace on it.  As soon as I get the result, I will let you |
| 10:19 | 23 | know ASAP." |
| 10:19 | 24 | Q    Why did you tell Long Tran that you asked the bank to |
| 10:19 | 25 | put a trace on it? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit 6**

**13**

56

| | | | |
|---|---|---|---|
| 10:19 | 1 | A | Because that's what Michael had me write. |
| 10:19 | 2 | Q | So why did you write it? |
| 10:19 | 3 | A | That's what Michael wanted to send to the client. |
| 10:19 | 4 | Q | Was there any wire to put a trace on? |
| 10:19 | 5 | A | Not at that time, no. |
| 10:20 | 6 | Q | On page 2, a couple hours later Long Tran replies to |
| 10:20 | 7 | | you and to the defendant again.  Do you see that? |
| 10:20 | 8 | A | Yes, I do. |
| 10:20 | 9 | Q | At 5:15 p.m.? |
| 10:20 | 10 | A | Yes. |
| 10:20 | 11 | Q | What did Mr. Tran say at that point? |
| 10:20 | 12 | A | "Please provide the tracking number so we can trace on |
| 10:20 | 13 | | our end as well.  If you initiated the wire, you should have |
| 10:20 | 14 | | that information readily available." |
| 10:20 | 15 | Q | Had you initiated the wire, is that correct that you |
| 10:20 | 16 | | would have had it readily available? |
| 10:20 | 17 | A | Yes. |
| 10:20 | 18 | Q | And why did you not have it readily available? |
| 10:20 | 19 | A | The wire had not been initiated as of that time. |
| 10:20 | 20 | Q | And in response to Long Tran's e-mail on May 1st, did |
| 10:20 | 21 | | defendant reply again? |
| 10:20 | 22 | A | Yes. |
| 10:20 | 23 | Q | What did he say? |
| 10:20 | 24 | A | "Please handle." |
| 10:20 | 25 | Q | Did you have a conversation with defendant at this time |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit 6**

**14**

| | | |
|---|---|---|
| 10:20 | 1 | when he said "Please handle"? |
| 10:21 | 2 | A    Yes. |
| 10:21 | 3 | Q    What did he say? |
| 10:21 | 4 | A    Michael said he was taking care of it.  This was his |
| 10:21 | 5 | way of making me be the scapegoat for whatever he was doing. |
| 10:21 | 6 | Q    If I could have you turn back to Exhibit 369, page 2. |
| 10:21 | 7 | A    (Witness complies.) |
| 10:21 | 8 | Q    On May 4th of 2018, the last two lines of this chart, |
| 10:21 | 9 | are there two outgoing wires? |
| 10:21 | 10 | A    Yes, there are. |
| 10:21 | 11 | Q    What are the amounts of the two outgoing wires? |
| 10:21 | 12 | A    $4 million and $146,288. |
| 10:21 | 13 | Q    Do you know if these were the wires to Michelle Phan? |
| 10:22 | 14 | A    Yes.  They were to her account, yes. |
| 10:22 | 15 | Q    And if you were to look at 275, this was the account |
| 10:22 | 16 | information that was provided to you by Long Tran for |
| 10:22 | 17 | Michelle Phan? |
| 10:22 | 18 | A    Yes, it is. |
| 10:22 | 19 | Q    But on March 14th it asks for the amount to be |
| 10:22 | 20 | $8,146,288; is that correct? |
| 10:22 | 21 | A    Yes, it is. |
| 10:22 | 22 | Q    And on May 4th, 2018, there were two wires that totaled |
| 10:22 | 23 | $4,146,288; is that correct? |
| 10:22 | 24 | A    Yes, it is. |
| 10:22 | 25 | Q    Why did you only send $4,146,288? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit 6**

**15**

| | | |
|---|---|---|
| 10:22 | 1 | A    That's the amount Michael instructed me to send. |
| 10:22 | 2 | Q    Why did you send it in two wires, one for 4 million and |
| 10:23 | 3 | one for $146,288? |
| 10:23 | 4 | A    Michael requested I send them in two wires. |
| 10:23 | 5 | Q    Now, if you look back up the chart in the previous |
| 10:23 | 6 | year, for example, in October of 2017, you were able to send |
| 10:23 | 7 | a $10 million wire? |
| 10:23 | 8 | A    Correct. |
| 10:23 | 9 | Q    Is there any reason that you had to split up this |
| 10:23 | 10 | $4 million and $146,288 wire? |
| 10:23 | 11 | A    No. |
| 10:23 | 12 | Q    And why did you split them up? |
| 10:23 | 13 | A    Michael wanted them sent in two separate wires. |
| 10:23 | 14 | Q    Did you tell Long Tran on that day how much was wired |
| 10:23 | 15 | to him -- or, to Michelle Phan? |
| 10:23 | 16 | A    I don't believe I did. |
| 10:23 | 17 | Q    Did you have any communications -- let me ask it a |
| 10:23 | 18 | different way.  Did you ever tell Long Tran that you sent |
| 10:23 | 19 | $8,146,000 on that day? |
| 10:24 | 20 | A    No. |
| 10:24 | 21 | Q    Did you ever tell anybody that you sent two $4 million |
| 10:24 | 22 | wires on that day? |
| 10:24 | 23 | A    No. |
| 10:24 | 24 | Q    How many $4 million wire transfers did you do on that |
| 10:24 | 25 | day? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit 6**

**16**

1        UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

3       HONORABLE JAMES V. SELNA, U.S. DISTRICT JUDGE

4

5   UNITED STATES OF AMERICA,            )
                                         )
6                   Plaintiff,           )   CERTIFIED TRANSCRIPT
                                         )
7         vs.                            )   Case No.
                                         )   SACR-19-00061-JVS
8   MICHAEL JOHN AVENATTI,               )
                                         )   TRIAL DAY 10
9                   Defendant.           )   VOLUME 2
    _____)

10

11

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                 WEDNESDAY, JULY 28, 2021

17                       1:32 P.M.

18                  SANTA ANA, CALIFORNIA

19

20

21

22

23
    _____

24              DEBBIE HINO-SPAAN, CSR 7953, CRR
                  FEDERAL OFFICIAL COURT REPORTER
25              411 WEST 4TH STREET, ROOM 1-053
                      SANTA ANA, CA 92701
                     dhinospaan@yahoo.com

UNITED STATES DISTRICT COURT

Exhibit 6

17

```
 1              THE COURT:  Sustained.
 2   Q     BY MR. AVENATTI:  Then you met with the Government for
 3   about five hours on June 14, 2021; is that correct?
 4   A     Yes.
 5   Q     And that was via Webex videoconference.  Do you remember
 6   that?
 7   A     Yes.
 8   Q     And you were present, your attorney was present, Special
 9   Agent Carlos was present, Special Agent Roberson was present.
10   And Mr. Sagel and Mr. Wyman, they were all present; is that
11   right?
12   A     Yes, I believe so.
13   Q     And at the beginning of that meeting the Government
14   reminded you that it was important for you to tell the truth
15   when communicating with them; right?
16   A     I believe so, yes.
17              MR. AVENATTI:  Your Honor, one moment.
18              (Pause in proceedings.)
19              MR. AVENATTI:  Thank you, Your Honor.
20   Q     And during this meeting on June 14, 2021, you were asked
21   about Exhibit 281.  Go ahead and turn to 281.
22              And, Joe, maybe we can put it up for the jury,
23   please.
24   A     Okay.
25   Q     Do you have 281, Ms. Regnier?
```

01:54PM  5
01:55PM 10
01:56PM 15
01:57PM 20
01:58PM 25

UNITED STATES DISTRICT COURT

**Exhibit 6**

**18**

```
         1    A      Yes, I do.

         2    Q      And do you recall that this is one of the documents that

         3    Mr. Sagel was asking you about earlier today, this morning?  Do

         4    you recall that?

01:58PM  5    A      Yes.

         6               MR. AVENATTI:  And why don't we blow up the bottom

         7    portion, please.

         8    Q      Do you see that, Ms. Regnier?

         9    A      Yes.

01:59PM 10    Q      And that's an e-mail that you sent to Mr. Long Tran on

        11    what date?

        12    A      May 1st, 2018.

        13    Q      And you were asked about this e-mail on this date,

        14    June 14, 2021, weren't you?

01:59PM 15    A      Okay.  I don't dispute that.

        16    Q      And you told the Government that I had used your computer

        17    to send this e-mail, didn't you?

        18    A      I told the Government that I --

        19    Q      Yes or no, did you tell the Government that I had used

02:00PM 20    your computer to send this e-mail?  Yes or no?

        21    A      I can't answer that.

        22    Q      Isn't it true that you told the Government on this date

        23    that occasionally I would use your computer to type up an

        24    e-mail and then say, "Send this"?

02:00PM 25    A      Yes.
```

UNITED STATES DISTRICT COURT

**Exhibit 6**

**19**

```
 1   Q    Do you dispute that you told the Government on that date

 2   that I may have used your computer to send this e-mail?

 3   A    I told the Government --

 4   Q    Do you dispute that, Ms. Regnier?

 5   A    That is not the exact statement I made.

 6   Q    So if it's in the Government's notes, the notes are

 7   wrong?

 8   A    No.

 9   Q    Well, let me show you a document.  We'll see if it

10   refreshes your recollection.

11            MR. AVENATTI:  May I approach, Your Honor?

12            THE COURT:  You may.

13   Q    BY MR. AVENATTI:  Ms. Regnier, I'd like to direct your

14   attention to paragraph 77 of the document.  And then I'm going

15   to ask you a question.

16            THE COURT:  First you need to ask whether it

17   refreshes her recollection.

18            MR. AVENATTI:  That's going to be the first

19   question, Your Honor.

20   Q    Page 11 of 13, Ms. Regnier, paragraph 77.

21   A    Yes.

22   Q    Does that refresh your recollection that you told the

23   Government on this date that I may have used your computer and

24   e-mail to send this e-mail?

25   A    Yes.  I said you may have.
```

02:00PM  5
02:01PM 10
02:01PM 15
02:02PM 20
02:02PM 25

UNITED STATES DISTRICT COURT

**Exhibit 6**
**20**

| | | |
|---|---|---|
| | 1 | Q     And you told the Government that you were not comfortable |
| | 2 | with me doing this, but once the e-mail was sent, it was too |
| | 3 | late for you to do anything.   That's what you told the |
| | 4 | Government; right? |
| 02:02PM | 5 | A     Yes.   I was referring to all -- |
| | 6 | Q     Ms. Regnier, is that what you told the Government? |
| | 7 | A     Yes. |
| | 8 | Q     Just answer my question, please. |
| | 9 | A     Yes. |
| 02:02PM | 10 | Q     Okay.   And you also told the Government that you never |
| | 11 | told the person who was sent the e-mail that the e-mail was |
| | 12 | prepared and sent by me, not you.   That's what you told the |
| | 13 | Government; right? |
| | 14 | A     Yes, I did. |
| 02:03PM | 15 | Q     You next communicated with the Government about this case |
| | 16 | on July 6, 2021; correct? |
| | 17 | A     Yes. |
| | 18 | Q     And that was for about three hours; am I right? |
| | 19 | A     Yes. |
| 02:04PM | 20 | Q     Then two days later, on July 8, 2021, you had another |
| | 21 | meeting with the Government that lasted over three hours with |
| | 22 | Mr. -- Special Agent Roberson, Special Agent Carlos -- |
| | 23 | MR. SAGEL:   Objection.   403.   She met with the |
| | 24 | Government, Your Honor.   I don't know why we need to name |
| 02:04PM | 25 | everybody. |

**UNITED STATES DISTRICT COURT**

**Exhibit 6**
**21**