Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 497-6753

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29 |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, hereby moves and files his Motion for a Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29.  Defendant's motion is based on the attached memorandum of points and authorities; the evidence referenced in the attached; the files, records and transcripts in this case and the other cases cited herein; and such further evidence and argument as the Court may permit at a hearing on this matter.

Dated:  August 16, 2021

Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………….…………………………..…………….ii

MEMORANDUM OF POINTS AND AUTHORITIES…………………………….1

    I.      INTRODUCTION………………………………………………....1

    II.     LEGAL STANDARD……………...…………………………………2

    III.    ARGUMENT…………………………………………….…....6

        A. A Judgment of Acquittal Must be Entered for Count 1 and  Count 2…………6

        B. A Judgment of Acquittal Must be Entered for Count 4 and Count 5...………..9

        C. The Government has Failed to Establish a Specific Intent to Deceive and Cheat and a Judgment of Acquittal Must be Entered as to All Counts…………..…13

        D. The Government has Failed to Establish Federal Jurisdiction in this Case…..14

        E. The Government has Failed to Establish the Other Required Elements……...14

    IV.    CONCLUSION………………………………………………15

# TABLE OF AUTHORITIES

**CASES:**                                                                                    **Page**

*Bascunan v. Elsaca,*
927 F.3d 108 (2d Cir. 2019)………………………………………………………….4

*Morrison v. National Australian Bank Ltd.,*
561 U.S. 247 (2010) ………………………………………………………………4,14

*Pasquantino v. United States,*
544 U.S. 349 (2005) ………………………………………………………………..4

*Schmuck v. United States,*
489 U.S. 705 (1989) ………………………………………………………………..4

*United States v. Amlani,*
111 F.3d 705 (9th Cir. 1997) ……………………………………………………….5

*United States v. Bhatia,*
2007 U.S. Dist. LEXIS 67410 (N.D. Cal. 2007)………………………………….13

*United States v Brandner,*
2016 U.S. Dist. LEXIS 10045 (D. Ak. 2016)………………………………………5

*United States v. Casperson,*
773 F.2d 216 (8th Cir. 1985)………………………………………………………..5

*United States v. Chung Lo,*
231 F.3d 471 (9th Cir. 2000)……………………………………………………….11

*United States v. Dooley,*
578 F.3d 582 (7th Cir. 2009)……………………………………………………….11

*United States v. Dreitzler,*
577 F.2d 539 (9th Cir. 1978)………………………………………………………..2

*United States v. Figueroa-Paz,*
468. F.2d 1055 (9th Cir. 1972)……………………………………………………...2

*United States v. Fletcher,*
1995 U.S. App. LEXIS 3939 (9th Cir. 1995)……………………………………5,14

ii

*United States v. Garlick,*
240 F.3d 789 (9th Cir. 2001)…………………………………………………………4

*United States v. Hussain,*
972 F.3d 1138 (9th Cir. 2020)…....…………………………………………………4

*United States v. Jinian,*
725 F.3d 954 (9th Cir. 2013)………………………………………………..4,11,13,14

*United States v. Lopez,*
625 F.2d 889 (9th Cir. 1980)…………………………………………………………..2

*United States v. Mann,*
884 F.2d 532 (10th Cir. 1989)..………………………………………………………4

*United States v. Mitchell,*
744 F.2d 701(9th Cir. 1984)…………………………………………………………11

*United States v. Miller,*
953 F.3d 1095 (9th Cir. 2020)………………………………………………………13

*United States v. Mills,*
2013 U.S. Dist. LEXIS 156957 (D. Az. 2013)..………………………………………5

*Untied States v. Moran,*
493 F.3d 1002 (9th Cir. 2007)..………………………………………………………5

*United States v. Narum,*
577 Fed. Appx. 689 (9th Cir. 2014)…………………………………………………...5

*United States v. Phillips,*
704 F.3d 754, 763 (9th Cir. 2012)..…………………………………………………5

*United States v. Redcorn,*
528 F.3d 727 (10th Cir. 2008)..……………………………………………………4,5

*United States v. Walker,*
191 F.3d 326 (2d. Cir. 1999)..…………………………………………………...13

## RULES:

Fed. R. Crim. P. 29……………………………………………………………………*passim*

## OTHER AUTHORITIES

Ninth Circuit Model Jury Instruction 8.124…………………………………………...3,14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On April 10, 2019, an Indictment was filed charging Mr. Avenatti with thirty-six counts. [Dkt. 16]. Pursuant to the Court's prior severance Order, the government proceeded to trial on Count 1 through 10. Counts 1 through 10 are alleged violations of 18 U.S.C. 1343, wire fraud. Each of the counts has been listed within government exhibit 457. The counts are also summarized for the Court below.

Count 1 represents a wire transfer of $250,000 sent from A&A Account 0661 to GBUS's Homestreet bank on January 30, 2015. Count 2 describes a wire transfer of $50,000 from A&A Account 0661 to Mr. Avenatti's personal Bank of America account on February 10, 2015. These wires transfers were alleged to have occurred in furtherance of the scheme to defraud Geoffrey Johnson.

Count 3 charges a wire transfer of $2,500,000 from the EA Trust Account 8671 to Mr. Avenatti's personal Bank of America account on January 26, 2017. Count 4 alleges a wire transfer of approximately $1,600,000 sent from Company 1's bank account through the Fedwire system to Mr. Avenatti's Trust Account 5566 on January 5, 2018.

Count 5 represents a wire transfer of approximately $60,000 sent from Avenatti's CNB Trust Account 5566 to EA Trust Account 3714 on January 10, 2018. Count 6 alleges a wire transfer of approximately $3,000,000 from the Avenatti Trust Account to EA CB&T Trust Account 4613 that occurred on March 15, 2018. Count 7 constitutes a wire transfer of approximately $2,828,423 from EA CB&T Trust Account 4613 to an attorney trust account Sulmeyer Kupetz on March 15, 2018. Count 8 accounts for a wire transfer of approximately $200,000 from the Avenatti CNB Trust Account 4705 through the Fedwire system to the EA Trust Account 1613 on March 20, 2018.

Count 9 accounts for a wire transfer of approximately $16,000 from the EA Trust Account to Client 2's Chase bank account on June 18, 2018. Finally, Count 10 accounts

for a wire transfer of approximately $1,900 from the EA Trust Account to Client 1's Bank of America bank account on July 13, 2018.

For the reasons set forth herein, Mr. Avenatti asks that the Court grant his motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The government has failed to prove the required elements of each count beyond a reasonable doubt, the government has not established that Mr. Avenatti was not entitled to funds claimed to be misappropriated, and the government has failed to satisfy the jurisdictional element of the crimes of wire fraud.

## II.    **LEGAL STANDARD**

Federal Rule of Criminal Procedure 29 provides, "after the government closes its evidence or after the close of all the evidence, the court on the defendant's motion <u>must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction</u>." Fed. R. Crim. Pro. 29(a)(emphasis added). The granting of a motion for judgment of acquittal is warranted after evidence presented during the government's case is closed and evidence offered by government will not sustain conviction as to count charged. *United States v. Lopez*, 625 F.2d 889 (9th Cir. 1980). It is "well-settled that a district court does not have unlimited discretion" in deciding a Rule 29 motion for judgment of acquittal. *United States v. Dreitzler*, 577 F.2d 539, 545 (9th Cir. 1978). In deciding a Rule 29(c) motion, the district court is required to determine whether at the time the motion was made, was there relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt, viewing evidence in light favorable to the government. *Id. citing United States v. Figueroa-Paz*, 468. F.2d 1055, 1058 (9th Cir. 1972). Mr. Avenatti asks that the Court determine that this Rule 29 motion should be granted.

The final jury instructions have not been completed by the Court. However, in connection with the offense of wire fraud the Ninth Circuit model jury instructions

2

(Model Instruction No. 8.124) indicates that the government must prove each of the following elements beyond a reasonable doubt:

> "First, the defendant knowingly [participated in][devised][intended to devise] a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises [,or omitted facts.][Deceitful statements of half-truths may constitute false or fraudulent representations];
>
> Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to be part with money or property;
>
> Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and
>
> Fourth, the defendant used, or caused to be used, an interstate [or foreign] wire communication to carry out or attempt to carry out an essential part of the scheme.
>
> [To convict defendant[s] of wire fraud based on omission[s] of material fact[s], you must find that defendant[s] had a duty to disclose the omitted fact[s] arising out of a relationship of trust. That duty can arise either out of a formal fiduciary relationship, or an informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise.]
>
> A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use.
>
> It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate [or foreign] in nature. Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate [or foreign] wire communication must have actually occurred in furtherance of the scheme.

The Ninth Circuit has held that wire fraud consists of three primary elements: "(1) a scheme to defraud, (2) use of wires in furtherance of the scheme and (3) a specific

intent to defraud." *United States v. Hussain*, 972 F.3d 1138, 1143 (9th Cir. 2020); quoting *United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001).

The federal wire fraud statute "is not a general fraud statute, but instead criminalizes frauds that specifically involve the misuse of the wires." *Id.*; citing *Pasquantino v. United States*, 544 U.S. 349, 358 (2005). The wire fraud statute "protect[s] the instrumentalities of communication, making the *use* of the … wires as part of a fraudulent scheme an independent offense quite separate from any other potentially illegal conduct." *Id.* citing *Garlick, supra,* 240 F.3d at 792-93. The regulated conduct is not merely a 'scheme to defraud,' but more precisely *the use of the  … wires in furtherance of a scheme to defraud.*" *Id.* at 1444; citing *Bascunan v. Elsaca*, 927 F.3d 108 (2d Cir. 2019)(emphasis in original). The use of the wires is a substantive and jurisdictional element of the crime, "[t]he requirement that the wires cross state or international lines for purposes of federal jurisdiction does not mean that use of the wires is not the focus of the criminal offense under *Morrison*." *Id.* at 1145; *referencing Morrison v. National Australian Bank Ltd.,* 561 U.S. 247, 262-65 (2010). The fact that "confers federal jurisdiction for wire fraud is the interstate nexus: use of an interstate communication is included in the statute merely as a ground for federal jurisdiction. If the wire employed is an interstate wire the requirements for federal jurisdiction are satisfied." *United States v. Jinian*, 725 F.3d 954, 965 (9th Cir. 2013).

A wire transmission must be "part of the execution of the scheme as conceived by the perpetrator at the time." *United States v. Redcorn*, 528 F.3d 727, 738 (10th Cir. 2008); *quoting Schmuck v. United States*, 489 U.S. 705, 715 (1989). A transmission is part of the scheme "so long as the transmission is incident to the accomplishment of an essential part of the scheme." *Id. citing United States v. Mann*, 884 F.2d 532, 536 (10th Cir. 1989). The perpetrators' subsequent "enjoyment of its fruits – buying groceries, going to the movies, redecorating the bathroom – is not an 'essential' part of the scheme." *Id.* at 739. Once the initial, criminalized wire transfer is complete, the

subsequent use of the wires is not in furtherance of the scheme to defraud, "but instead was meant to allow him to enjoy the fruits of his crime." *United States v. Narum*, 577 Fed. Appx. 689, 691 (9th Cir. 2014)(unpublished)(reversing the wire fraud convictions and rejecting the government's contention that "a wire fraud conviction may be based on any wire transfer taking place during the time period encompassed by the scheme to defraud. Wire fraud requires a use of the wires *in furtherance* of a scheme to defraud, not merely a use of the wires *during* a scheme to defraud."). A scheme is complete once the misappropriate funds are deposited into the personal account, and "the subsequent transfers were merely means of using the stolen money." *United States v. Mills*, 2013 U.S. Dist. LEXIS 156957, at *5 (D. Az. 2013); *See also, United States v. Phillips*, 704 F.3d 754, 763 (9th Cir. 2012)(finding that the defendant's use of the stolen funds, after deposit into his personal account did not in any way effect the scheme to defraud). Any argument that "the use of the wires is illegal if [it is] at all 'in relation to' a scheme to defraud" is improper and incorrect. *Redcorn*, *supra*, 528 F.3d at 741.

Because of the intent element in fraud offenses, a "good faith belief in legality provides a defense to charges of fraud." *United States v. Moran*, 493 F.3d 1002, 1013. *See, e.g., United States v. Amlani*, 111 F.3d 705, 717-18 (9th Cir. 1997). Good faith is recognized as a defense to the charge of wire fraud. *See, e.g., United States v. Casperson*, 773 F.2d 216, 223 (8th Cir. 1985)(holding that good faith "constitutes a complete defense to charges requiring fraudulent intent" and "constitutes a complete defense to such specific defense crimes"); *United States v Brandner*, 2016 U.S. Dist. LEXIS 10045 at *6 (D. Ak. 2016)(supporting the district court's instruction that "good faith is a complete defense to each count of wire fraud" and "the government must prove beyond a reasonable doubt that the defendant did not act in good faith"); *United States v. Fletcher*, 1995 U.S. App. LEXIS 3939, at *29 (9th Cir. 1995)("good faith is a complete defense … since good faith … is inconsistent with intent to defraud or willfulness.")

## III.   **ARGUMENT**

### A.    **A Judgment of Acquittal Must be Entered for Count 1 and Count 2**

The government is required to prove beyond a reasonable doubt that Mr. Avenatti engaged in a scheme to defraud, used interstate wires as an essential part of that scheme and harbored the specific intent to defraud. The government has failed to meet its burden and a judgment of acquittal must be entered in connection with Counts 1 and 2.  The government is unable to establish that Mr. Avenatti engaged in a scheme to defraud by way of these wire transfers. Further, the government is unable to prove that these wires acted as an essential part of any scheme alleged involving Mr. Avenatti's former client Geoffrey Johnson. Instead, the wire transfers alleged in Counts 1 and 2 <u>consisted entirely of funds the government's expert identified as funds legitimately owed to Mr. Avenatti</u>. Mr. Avenatti's lawful entitlement to these funds is established by the following timeline.

On November 11, 2011, Mr. Johnson entered into an "Attorney-Client Fee Contract (Contingency)" with Mr. Avenatti who agreed to represent him in a dispute with the County of Los Angeles. *See, e.g.,* Government Exhibit 1.Within the agreement, the parties agreed that the "Attorney will receive a Contingent Fee of forty percent (40.0%) of any *Recovery*…" *See, e.g.,* Government Exhibit 1, para. 4. Mr. Johnson testified that under paragraph four of this agreement, Mr. Avenatti was entitled to receive attorneys' fees totaling forty percent (40%) for his work on the case. *See, e.g.,* Trial Tr. (7/22/21, Vol. 1), p. 30.

On January 2, 2015, a settlement agreement and release of all claims was executed in connection with Mr. Johnson's claim. *See, e.g.,* Government Exhibit 37. In resolution of the relevant claims the County of Los Angeles agreed to pay $4,000,000. On January 26, 2015, a check was issued to the Eagan Avenatti, LLP Attorney Client Trust Account from the County of Orange in the amount of $4,000,000.00. *See, e.g.,* Government Exhibit 41. On January 29, 2015, the $4,000,000.00 check was deposited into the Eagan Avenatti, LLP California Bank and Trust attorney-client trust account. *See, e.g.,*

Government Trial Exhibit 391, p. 1.

It was Mr. Johnson's understanding that pursuant to his agreement, Mr. Avenatti was entitled to 40 percent of the settlement as attorney's fees. *See, e.g.,* Trial Tr. (7/22/21, Vol. 1), p. 30. Patrick McNicholas, Mr. Avenatti's co-counsel on this case, agreed that the attorneys' fees in connection with this case were 40 percent. *See, e.g.,* Trial Tr. (7/21/21, Vol. 1), p. 100. In this case, Mr. McNicholas testified that 40 percent of 4 million dollars is $1,600,000.00. *See e.g.,* Trial Tr. (7/21/21, Vol. 1), p. 100; Trial Tr. (7/21/21, Vol. 2), p. 52. On direct examination, government expert John Drum answered affirmatively to the question, "And $1.6 million, is that the same amount you calculated Eagan Avenatti would be entitled to in attorney fees under the settlement agreement with Mr. Johnson?" *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 31. Mr. Drum referred to the legal fees in this case as "1,600,000" in government exhibit 420, entitled "Amount Due to Geoffrey Johnson as of 1/29/15."

On January 30, 2015, the $1,600,000.00 contained within the Eagan Avenatti, LLP California Bank and Trust attorney-client trust account was transferred. *See, e.g.,* Government Exhibit 391, p. 1. Also on January 30, 2015, an online transfer was made from "DDA Eagan Avenat [sic]" in the amount of $250,000.00 to the Avenatti & Associates checking account. *See, e.g.,* Government Exhibit 358 (page 1, 1/30/2015 entry); *See, e.g.,* Trial Tr. (8/13/21 Vol. 2) p. 34. Mr. Drum testified that this transfer was demonstrated in government exhibit 424. Mr. Drum agreed that this $250,000 payment to from EA 2851 to AA 0661 "came out of this $1.6 million that had been deposited into EA's account." *See, e.g.,* Trial Tr. (8/13/21 Vol. 2) p. 35. Later on January 30, 2015, $250,000 was sent from an Avenatti & Associates, a Professional Corp. California Bank and Trust to the HomeStreet Bank account in the name of Global Baristas US LLC. *See e.g.*, Government Exhibit 457; Government Exhibit 358 (page 3, 1/30/2015 entry); Government Exhibit 43. This wire is the basis for <u>Count 1</u>.

Mr. Avenatti asked Mr. Drum directly, "<u>So Count One charges me with $250,000</u>

transfer that came directly out of the $1.6 million legal fee that the firm was entitled to in connection with the Johnson matter; isn't that true?" *See, e.g.,* Trial Tr. (8/13/21 Vol. 2) p. 35-36 (emphasis added). Mr. Drum agreed and responded, "The $250,000 withdraw on January 30, 2015, that we pointed to on 424 came from the $1.6 million legal fees." *Id.* Later Mr. Drum repeated this statement, "The source of the $250,000 withdrawal was the 1.6 million." *See, e.g.,* Trial Tr. (8/13/21 Vol. 2) p. 38. This is the entire basis for Count 1.

Then on February 10, 2015, $50,000 was sent from an Avenatti & Associates, a Professional Corp., California Bank and Trust account to a Bank of America account in the name of Michael J. Avenatti. *See e.g.,* Government Exhibit 457; Government Exhibit 358 (page 7, 2/10/2015 entry). This wire is the basis for Count 2. Mr. Drum testified that this money was transferred from "CB&T 0661 to Bank of America account in the name of Michael John Avenatti." *See, e.g.,* Trial Tr. (8/13/21 Vol. 2) p. 36. This transfer is reflected in government exhibit 424. Mr. Drum testified that this money "came from the $100,000 deposit from 2851." *See, e.g.,* Trial Tr. (8/13/21 Vol. 2) p. 37. This $50,000 wire transfer was also from the $1,600,000 legal fees legitimately earned by Mr. Avenatti by way of his contractual agreement with Mr. Johnson. As established by the government's own exhibits and its accounting expert witness, Mr. Avenatti was owed $1.6 million from Geoffrey Johnson's settlement account. Pursuant to the Court's own instructions, Mr. Avenatti had a legal obligation to withdraw his legal fees "at the earliest reasonable time…" *See, e.g.,* Dkt. 562, p. 9.

Accordingly, counts 1 and 2 charge Mr. Avenatti with utilizing wire communications to transfer his own money. Not a single government witness or exhibit demonstrates that Mr. Avenatti was not entitled to $1,600,000.00 pursuant to Mr. Johnson's settlement agreement. Because Mr. Avenatti was entitled to this money, it cannot be argued that Mr. Avenatti engaged in a scheme to defraud Mr. Johnson with the specific intent to deceive and cheat. Mr. Avenatti was entitled to the funds contained

within both the $250,000 and $50,000 wire transfers. Mr. Avenatti's act of transferring his lawfully earned money into another account in no way furthers any scheme to misappropriate client funds. The government has failed to prove the elements of wire fraud in connection with Counts 1 and 2. As a result, a judgment of acquittal must be entered in connection with these counts.

**B.      A Judgment of Acquittal Must be Entered for Count 4 and Count 5**

The government is required to prove beyond a reasonable doubt that Mr. Avenatti engaged in a scheme to defraud, used interstate wires as an essential part of that scheme and had the specific intent to defraud at the time of the commission of the wire communication. The government has failed to meet its burden and a judgment of acquittal must be entered in connection with Counts 4 and 5 related to alleged victim Gregory Barela. The specific wire transfer alleged in Count 4 is a January 5, 2018 wire transfer from Brock USA, LLC to Michael Avenatti's Attorney Client Trust Account (CNB 5566). *See, e.g.,* Government Exhibit 457. Count 5 alleges a wire transfer of $60,000 sent from CNB 5566 Attorney Client Trust Account to the CNB 3714 Eagan Avenatti Attorney Client Trust Account. *See, e.g.,* Government Exhibit 457.

The government's evidence has established that on July 8, 2014, Mr. Avenatti and Mr. Barela entered into attorney-client fee contract. *See, e.g.,* Government Exhibit 171. Mr. Barela testified that he entered into this agreement with Mr. Avenatti to represent him in connection with an intellectual property case against Brock USA. *See, e.g.,* Trial Tr. (8/4/21, Vol. 2) p. 37. Mr. Barela testified that the claim against Brock USA ultimately resulted in a settlement in the amount of 1.9 million dollars. *See, e.g.,* Trial Tr. (8/4/21, Vol. 2) p. 45. Attorney David Sheikh testified that he represented Brock in an intellectual property matter. *See, e.g.,* Trial Tr. (8/10/21, Vol. 2) p. 20.

Ultimately, Mr. Avenatti and Mr. Sheikh approved a final settlement agreement wherein Brock would pay Barela $1.9 million. *See, e.g.,* Trial Tr. (8/10/21, Vol. 2) p. 35; *See also,* Government Exhibit 184. The agreement described by Mr. Sheikh stated that

"Brock will pay the sum of $1,900,000 to Barela. $1,600,000 of this sum will be paid by January 10, 2018…" *See e.g.,* Trial Tr. (8/10/21, Vol. 2) p. 29.  Mr. Shiekh testified that he confirmed that "Brock paid the $1.6 million wire transfer into the defendant's trust account" on January 5th, 2018. *See e.g.,* Trial Tr. (8/10/21, Vol. 2) p. 54. However, there is no evidence that Mr. Shiekh personally transmitted the wire himself. AUSA Sagel asked Mr. Shiekh the question, "What involvement, if any, did you have with Brock paying the $1.6 million to be wired into defendant's trust account?" *See, e.g.,* Trial Tr. (8/10/21, Vol. 2) p. 54. Before being cut off by AUSA Sagel, Mr. Shiekh responded, "Without going into any privileged communications, I can tell you that I made sure –" *See, e.g.,* Trial Tr. (8/10/21, Vol. 2) p. 54. It is clear that Mr. Shiekh did not personally execute the wire transfer.

Government witness and expert John Drum testified that the 1.6 million dollar wire transfer from Brock USA LLA to Michael Avenatti's Attorney Client Trust Account was performed on January 5, 2018. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 54-55; *See also* Government Exhibit 371. Mr. Drum's summary graphic portrayed similarly evidences this transfer of funds from Brock USA to Mr. Avenatti's CNB 5566 account. *See, e.g.,* Government Exhibit 440. This $1,600,000 wire transfer is the basis for Count 4.

Mr. Drum testified that he calculated the fees and cost related expenses associated with Mr. Barela's settlement in order to determine the funds earned by Mr. Avenatti and the money due to Mr. Barela. In his summary chart, Mr. Drum calculated that the legal fees owed to Mr. Avenatti were $760,000 and the case-related expenses amount to $180,797. *See, e.g.,* government exhibit 439. Combined, Mr. Drum testified that he believed that Mr. Avenatti was entitled to approximately "$940,797" in connection with the 1.6 million dollar settlement agreement. *See, e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 57. By the government witness's calculation, Mr. Barela was due $659,203 as of January 5, 2018.

Mr. Drum's analysis, as summarized in government exhibit 441, establishes that on January 10, 2018, a wire transfer was made in the amount of $60,000 to EA account number 3714. This wire acts as the basis for Count 5. After this transfer was made, $777,065 remained in CNB Trust Account number 5566, more than the amount due to Mr. Barela as of January 5, 2018 according to the government.

Based on the testimony and exhibits offered by the government, the prosecution has failed to establish the elements for Counts 4 and 5.

As to Count 4, the government has failed to establish that Mr. Avenatti caused the wire transfer to be effectuated, in furtherance of a scheme, while harboring the specific intent to deceive and cheat. The relevant wire alleged in Count 4 was sent by Brock USA, a third party. In order to be found guilty of Count 4, the government must establish, beyond a reasonable doubt that Mr. Avenatti "used, or caused to be used, an interstate wire communication." To secure a conviction based on a wire communication, it is necessary to establish that but for the defendant's fraudulent conduct, the wire communication "would not have occurred, or would have occurred in a substantially different form…" *United States v. Dooley*, 578 F.3d 582, 588-89 (7th Cir. 2009). *United States v. Mitchell*, 744 F.2d 701, 704 (9th Cir. 1984)(affirming mail fraud conviction where mailings "would not have occurred except as a step in the scheme"). For the purposes of 18 U.S.C. 1343, "the relevant question at all times is whether a wire is part of the execution of the scheme as conceived by the perpetrator at the time…" *United States v. Jinian*, 725 F.3d 954, 960-961 (9th Cir. 2013)(emphasis added). Similar to the notion that a wire communication cannot be part of an "after-the-fact transaction" that is not in furtherance of the scheme, a wire transfer that occurs prior to the execution of any scheme or prior to the formation of a specific intent cannot support a conviction for wire fraud. *Id.* citing *United States v. Chung Lo*, 231 F.3d 471, 478 (9th Cir. 2000).

In connection with Count 4, the government has failed to prove that Mr. Avenatti caused this wire communication to be sent with the specific intent to misappropriate Mr.

Barela's funds. The evidence established that Mr. Sheikh confirmed that Brock had wired $1,600,000.00 to Mr. Avenatti's attorney-client trust account on January 5, 2018. However, there is no evidence of who specifically Mr. Avenatti *caused to* transmit this wire. Although Mr. Sheikh testified that he confirmed the transfer had been made after the fact, the government did not establish who actually transmitted the wire. Without identifying who caused the wire to be transmitted, it is impossible to determine that it was transmitted at Mr. Avenatti's direction.

Further, there is no evidence that on January 5, 2018, Mr. Avenatti had the specific intent to deceive and cheat and in furtherance of any specific scheme. The $1,600,000 wire transfer from Brock to Barela was the result of an email agreement entered into in late December and would have occurred in the absence of any alleged scheme to defraud. The wire transfer alleged in Count 4 occurred prior to any misconduct described by the government and cannot support a finding of a specific intent to defraud. The government has failed to prove the elements of wire fraud in connection with Count 4. A judgment of acquittal must be entered in connection with these counts.

The government has also failed to prove the elements of Count 5. As established by the government's own exhibits and its accounting expert witness, Mr. Avenatti was owed at least $940,797 from Gregory Barela's settlement proceeds. The $60,000 wire transfer performed on January 10, 2018 consisted entirely of funds Mr. Avenatti was entitled to by way of his representation of Mr. Barela. After the completion of this wire transfer, sufficient funds remained in the CNB Trust Account to compensate Mr. Barela in the amount the government claims he was owed. *See, e.g.,* Government Exhibit 441. Because Mr. Avenatti was entitled to these fees, and sufficient funds remained in the account to compensate Mr. Barela for what was due to him under the government's own theory, the $60,000 wire transfer on January 10, 2018 cannot qualify as being in furtherance of any scheme to deceive or cheat. Accordingly, a judgment of acquittal

must be entered in connection with both Counts 4 and 5.

**C.   The Government has Failed to Establish a Specific Intent to Deceive and Cheat and a Judgment of Acquittal Must be Entered as to All Counts**

The element of intent to defraud  must be made in a "more specific context in federal wire fraud. The fraud must utilize the 'wires' of interstate or foreign commerce.." *United States v. Bhatia*, 2007 U.S. Dist. LEXIS 67410, at *22 (N.D. Cal. 2007). In order to prove wire fraud, the government must establish the *mens rea* requirement, the specific intent to defraud. *United States v. Jinian*, 712 F.2d 1255, 1266 (9th Cir. 2013); *citing United States v. Walker*, 191 F.3d 326, 334 (2d. Cir. 1999)("[p]roof of fraudulent intent, or the specific intent to harm or defraud the victims of the scheme, is an essential component of the 'scheme to defraud' element"). The Ninth Circuit requires that the government prove that the defendant had the specific intent to deceive and cheat. The wire fraud statute criminalizes "the use of interstate wires to further, not mere deception, but a scheme or artifice to defraud or obtain money or property … to cheat someone out of something valuable." *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020).

The government has failed to make a showing that Mr. Avenatti harbored the specific intent to harm or defraud his former clients and misappropriate his former clients' funds. In connection with Counts 1 through 10, the government has failed to establish that during the commission of each of the ten wires, Mr. Avenatti had the specific intent to deceive and cheat his clients out of the funds owed to them. The government has also failed to establish precisely the amount of funds due to Mr. Avenatti and each of his respective clients. The government has failed to establish any accurate amount of costs, expenses, hourly work, advances and interest accrued in connection with the work performed for Mr. Johnson, Ms. Gardner, Mr. Barela, Ms. Phan and Mr. Tran. Accordingly, the government did not prove that Mr. Avenatti did not have a legitimate right to the funds in Counts 1 through 10. Because of the government's

failures to prove these amounts with specificity, the government cannot overcome Mr. Avenatti's claimed entitlement to these funds and his good faith belief that he was entitled to the funds at issue in Counts 1 through 10. *See, e.g., United States v. Fletcher*, 1995 U.S. App. LEXIS 3939, at *29 (9th Cir. 1995)("good faith is a complete defense … since good faith … is inconsistent with intent to defraud or willfulness.")

### D.    The Government has Failed to Establish Federal Jurisdiction in this Case

The government is required to prove that the relevant wires "cross state or international lines" in order to establish federal jurisdiction. *Morrison v. National Australian Bank Ltd.,* 561 U.S. 247, 262-65 (2010). The government is required to prove an interstate nexus, "if the wire employed is an interstate wire the requirements for federal jurisdiction are satisfied." *United States v. Jinian*, 725 F.3d 954, 965 (9th Cir. 2013). The Ninth Circuit model jury instruction for wire fraud commands a finding that "the defendant used, or caused to be used, an *interstate* wire communication…" and "an interstate [or foreign] wire communication must have actually occurred in furtherance of the scheme." Ninth Circuit Model Jury Instruction No. 8.124. The government has failed to establish for Counts 1 through 10 that the defendant used, or caused to be used, an interstate wire communication and the interstate wire communication actually occurred.

### E.    The Government has Failed to Establish the Other Required Elements

The government has failed to establish all of the elements to support a finding of wire fraud for Counts 1 through 10. The government has failed to establish that Mr. Avenatti knowingly participated in, devised or intended to devise a scheme to defraud or a scheme to defraud by deceitful means. The government has similarly failed to establish that Mr. Avenatti made material statements or omitted material information as part of this scheme to defraud his former clients of funds. The government has not provided the jury with sufficient information to determine that Mr. Avenatti had the requisite specific intent to deceive and cheat. As argued at length above, the government has failed to

14

establish that the wire transfers that account for Counts 1 through 10 were carried out as an "essential part of the scheme." Based upon the government's omissions and its deficiencies in evidence, accuracy and precision, a judgment of acquittal for Counts 1 through 10 must be entered.

## IV.    **CONCLUSION**

For each of the reasons stated above, defendant respectfully requests that the Court grant the motion and enter a judgment of acquittal for Counts 1 through 10.

Dated:  August 16, 2021                    Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

# **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on August 16, 2021, service of the:

DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 16, 2021

/s/ H. Dean Steward

H. Dean Steward