1   Michael John Avenatti (Pro Se)

2   H. Dean Steward, SBN 85317
    17 Corporate Plaza, Suite 254
3   Newport Beach, California 92660
    Tel (949) 481-4900
4   Fax (949) 497-6753

5   Advisory Counsel for Defendant
    MICHAEL JOHN AVENATTI
6

7

8                  **UNITED STATES DISTRICT COURT**

9              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10  UNITED STATES OF AMERICA,          SA CR No. 19-061-JVS

11              Plaintiff,             DEFENDANT'S SUPPLEMENT TO
                                       MOTION FOR MISTRIAL OR, IN THE
12          v.                         ALTERNATIVE, TO STRIKE THE
                                       TESTIMONY OF ROBERT AMENTA
13  MICHAEL JOHN AVENATTI,             AND JOHN DRUM DUE TO
                                       VIOLATIONS OF THE JENCKS ACT,
14              Defendant.             RULE 26.2, *BRADY* AND *GIGLIO*
                                       [Dkt. 705]
15

16

17

18          Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his

19  advisory counsel of record, H. Dean Steward, hereby files this supplement in response to

20  the Court's inquiry regarding Mr. Avenatti's prior filing, "Defendant's Motion for

21  Mistrial or, in the Alternative, to Strike the Testimony of Robert. Amenta and John

22  Drum due to Violations of the Jencks Act, Rule 26.2, *Brady* and *Giglio*. *See, e.g.,* Dkt.

23  No.  705.

24

25   Dated:  August 17, 2021          Respectfully submitted,

26                                    /s/ Michael J. Avenatti

27                                    Defendant
                                      MICHAEL JOHN AVENATTI
28

On August 12, 2021, the government filed "Government's Filing Regarding Email Communications with Robert Amenta." [Dkt. 690]. In its filing, the government stated that it had failed to provide the defendant two e-mail correspondence between the government and Investigator Amenta regarding the subject matter of the testimony. The government attached two e-mails to its pleadings but failed to include, and still has yet to provide to the defendant, the attachments referenced in these emails. Further, based on Investigatory Amenta's testimony, it is obvious that this is not all of the written statements by Investigator Amenta. For instance, Investigator Amenta testified that he communicated with others by way of e-mail to verify the IMADs and OMADs listed on government exhibit 457. *See, e.g.,* Trial Tr. (8/12/21, Vol. 2), p. 46-47. Yet, these statements were never produced despite the fact that they were required to be produced pursuant to the Jencks Act and Rule 26.2.

On August 14, 2021, Mr. Avenatti filed his "Notice of Motion and Motion for Mistrial, or In the Alternative, to Strike the Testimony of Robert Amenta and John Drum due to Violations of the Jencks Act, Rule 26.2, *Brady* and *Giglio.*" *See, e.g.,* Docket No. 705. On August 17, 2021, the Court requested additional briefing related to the materiality of the untimely production of Investigator Robert Amenta's statements.

Mr. Avenatti comes now, through his advisory counsel of record, H. Dean Steward, with the additional information the Court requested. Mr. Avenatti renews the objections and requests for relief lodged in his original filing including, but not limited to, the following: (1) the government's failure to disclose the statements requires a mistrial be granted or the striking of the witness testimony; and (2) the prosecution's method of collecting statements is flawed and fails to account for all of the statements the government is required to disclose.

The untimely disclosure made by the government reveals emails between Investigator Amenta, Special Agent Roberson, and AUSA Wyman. The emails revealed the following items of information that were not produced to the defendant, contained

material information, could have been used for cross-examination and were not adequately disclosed in the government's interview memoranda.[1]

## I.  MATERIALITY OF UNTIMELY DISCLOSURE – EMAIL CHAIN 1

### 1.  The Government Has Failed to Provide the Attachments to the Untimely Emails

On June 7, 2021, Special Agent Roberson e-mailed Investigator Amenta and attached a spreadsheet of 10 wires. Investigator Amenta reviewed the relevant attachments, adopted/approved portions of the spreadsheet, and gave comments to these spreadsheets. Mr. Avenatti has yet to receive these draft spreadsheets. Mr. Avenatti believes that this would be a draft of government exhibit 457. *See, e.g.,* Dkt. 690, p. 14.

### 2.  The June 16, 2021 MOI Provided by the Government Does Not Capture Investigator Amenta's Prior Statement

On June 8, 2021, in an undisclosed e-mail, Investigator Amenta provided the below statement the government in connection with "[f]or the 4 wires which include IMAD/OMADs" and specifically excluded the other 6 wires because Investigator Amenta simultaneously requested source documents (bank records) for the other 6 wires. The government claims that the content of this e-mail is captured by its memorandum of interview dated June 16, 2021, this is false. *Compare,* Dkt. 690, p. 9-10, Dkt. 690, p. 14-15.  There are marked differences between the documents that could have been used to impeach the witness and the email should have been produced not only under the Jencks Act and Rule 26.2, but *Brady* and *Giglio* as well.

---

[1] The government clearly has a fundamental misunderstanding of the requirements of the Jencks Act and Rule 26.2.  Neither the Act nor the Rule contain any provision stating that if the information in the statements are generally contained within a later produced interview memorandum, they need not be produced.

2

<u>Relevant Language of MOI – June 16, 2021</u>

3.  Since April 27, 2009 the processing of all wire transfers through the Fedwire funds service has involved a multistep process and two data centers located in New Jersey and Texas. For this reason, every Fedwire funds transfer processed through the Fedwire funds transfer processed through the Fedwire funds service after April 27, 2009 has involved an exchange of electronic communications between Fedwire facilities in New Jersey and Texas.

4.  Fedwire keeps records of all transfers made through Fedwire's system, and Amenta has access to these records. Amenta reviewed Fedwire's records and confirmed that all 10 wires identified in the wire fraud count chart went through Fedwire's system. Amenta knows that all 10 wires went through Fedwire's system because he saw that each wire had a specific Input/Output Message Accountability Data (IMAD or OMAD). These are unique numbers given to each Fedwire payment, similar to a fingerprint on a person, and are exclusively used by Fedwire.

<u>Relevant Language of E-mail – June 8, 2021</u>

Are you able to extract the IMADS/OMADS from the source documents (bank records) for the additional six wires, if not I will need approval via a Subpoena to search the additional 6 wires.

For the 4 wires which include IMADS/OMADS the follow statement is true.

"Since April 27, 2009, the processing of all wire transfers through the Fedwire Funds Service has involved a multistep process and two data centers located in New Jersey and Texas, respectively.  The Fedwire Funds Service initially receives Fedwire funds transfers at the service's primary processing site.  The Fedwire Funds Service application then sends a copy of the message to a secondary processing site and waits for a confirmation from the secondary processing site that the replicated copy has arrived at that site.  The Fedwire Funds Service then settles the funds transfer by debiting the Fedwire sender's Federal Reserve Bank account and crediting the Fedwire receiver's Federal Reserve Bank account.

Therefore, every Fedwire funds transfer processed through the Fedwire Funds Service after April 27, 2009 has involved an exchange of electronic communications between Federal Reserve facilities in New Jersey and Texas. "

Rob

3.  <u>Government Memorandum Fails to Identify Requests for Additional Information and Qualifiers to Investigator Amenta's Written Positions</u>

As identified above, Investigator Amenta provided a written statement in connection with the 4 wires identified above. The government then provided a different version of that statement to the defendant in a MOI dated June 16, 2021. The government indicated that "Amenta reviewed FedWire's records and confirmed that all 10 wires identified in the wire fraud count chart went through Fedwire's system.

3

Amenta knows that all 10 wires went through Fedwire's system because he saw that each wire had a specific InPut/OutPut Message Accountability Data (IMAD or OMAD)." Information contained in the e-mail dated June 8, 2021 could have been used to impeach Investigator Amenta and was inconsistent with the government's representations.

Prior to providing the written statement immediately above, Investigator Amenta wrote to Special Agent Roberson that he needed additional information. Therefore, the written statement above was made with the following qualifier, "[f]or the 4 wires which include IMADS/OMADS the following statement is true." This qualifier did not appear within the government's written report and could have been used to establish that prior drafts, and government exhibit 457, were inaccurate, unsupported by sufficient records, and were done in a hasty manner.

<u>Relevant Language of E-mail – June 8, 2021</u>

Hi Ryan,

Are you able to extract the IMADS/OMADS from the source documents (bank records) for the additional six wires, if not I will need approval via a Subpoena to search the additional 6 wires.

For the 4 wires which include IMADS/OMADS the follow statement is true.

## II.     MATERIALITY OF UNTIMELY DISCLOSURE – EMAIL CHAIN 2

1. <u>The Government Has Failed to Provide the Attachments to the Untimely Emails</u>

On July 11, 2021, Special Agent Roberson e-mailed Investigator Amenta and attached a chart of 10 wires. Investigator Amenta reviewed the relevant attachments, adopted/approved portions of the spreadsheet, and gave a suggestion to the chart. Mr. Avenatti has yet to receive this draft chart. Mr. Avenatti believes that this would be a draft of government exhibit 457. *See, e.g.,* Dkt. 690, p. 20.

2.  <u>The August 9, 2021 MOI Provided by the Government Does Not Capture Investigator Amenta's Prior Statements</u>

As supported by the government's filing, the defendant only received a single MOI (dated August 9, 2021) after the undisclosed e-mail was sent on July 11, 2021. In response to the draft chart of wire sent by Special Agent Roberson, Investigator Amenta suggested a change. Specifically, indicated, "I would suggest adding the IMADs or OMADs to the transactions as it's a unique identifiers [sic] specific to Fedwire funds." This information was not included within the August 9, 2021 memorandum that told the defendant "[n]o new information was provided." *See, e.g.,* Dkt. 690,  p. 12. Additional edits to the chart and the failures of the government to include the specific IMAD or OMAD could have been used to impeach Investigator Amenta and establish the sloppiness and lack of precision associated with the creation of government 457.

Again, on July 12, 2021, Special Agent Roberson communicated with Investigator Amenta, thanked him for the feedback and indicated that the OMADs/IMADs were added to the transaction. *See, e.g.,* Dkt. 690, p. 19. Based upon the context of this email and Investigator Amenta's response, it appears that the draft chart was again given. This has not been provided.

On July 14, 2021, Investigator Amenta provided a substantive response with specific issues related to the chart. He indicated that one of the monetary values was incorrect and also indicated that six of the IMADs were missing the leading year identifiers. *See, e.g.,* Dkt. 690, p. 18. This information was not included within the August 9, 2021 memorandum that told the defendant "[n]o new information was provided." *See, e.g.,* Dkt. 690,  p. 12. These suggested changes could have been used to establish the sloppiness and lack of precision associated with the creation of government exhibit 457.  They also could have been used to establish that Exhibit 457 is wrong because without the leading year identifiers, the numbers are incorrect.

3.  <u>Substantive Changes Suggested by Investigator Amenta via Email Were Not Incorporated into Government Exhibit 457</u>

As stated directly above, on July 14, 2021, Investigator Amenta provided substantive challenges to the proposed chart of the 10 wires. Investigator Amenta indicated that several of the IMADs were missing the leading year identifiers and wire 7 did not contain the precise monetary value. <u>These changes suggested by Investigator Amenta via e-mail were not incorporated into Government Exhibit 457</u>.

During his testimony, Investigator Amenta confirmed that he communicated, via e-mail, with the prosecution team regarding Government Exhibit 457. *See, e.g.,* Trial Tr. (8/12/21, Vol. 2) p. 44. Investigator Amenta indicated that he provided feedback on this chart. *See, e.g.,* Trial Tr. (8/12/21, Vol. 2) p. 44. Mr. Avenatti asked Investigator Amenta if the prosecution team "incorporate[d] some of your reviews and feedback on the chart…" to which Investigator responded, "No." *See, e.g.,* Trial Tr. (8/12/21, Vol. 2) p. 44. Investigator Amenta later testified, "So an IMAD is very unique. It is unique by year/month/day, then a sequence that's an endpoint for a financial institution, and then It's that message for that day." *See, e.g.,* Trial Tr. (8/12/21, Vol. 2) p. 46.

At this point, Mr. Avenatti could have used the information contained in the undisclosed e-mail, if he had it, to establish that (1) the government failed to make the changes proposed by Investigator Amenta (i.e., the proper IMAD number and the monetary value change); and, (2) the government's chart marked as Government Exhibit 457 failed to properly state the unique IMAD and OMAD numbers, rendering it incorrect and untrustworthy. The information contained in the undisclosed e-mail also could have been further used to impeach government witness Geffrey Clark who testified to the accuracy of Government Exhibit 457. *See, e.g.,* Trial Tr. (8/12/21, Vol. 2) p. 28. Mr. Clark answered yes to the question, "[i]s this chart that you reviewed and verified summarizing the wire transfers identified in the Indictment?" *See, e.g.,* Trial Tr. (8/12/21, Vol. 2) p. 28. Clearly, Mr. Clark failed to verify this information because the

OMAD and IMAD information was incomplete. **The undisclosed e-mail, which was Brady and Giglio, could have been used to impeach Mr. Clark.**

<u>Changes Proposed by Investigator Amenta July 14, 2021 E-mail</u>

I see that six of the IMADs are missing the leading year identifiers.

IMADS

Wire 1. – 20150103……

Wire 2. – 20150210….

Wire 3. – 20170126…

Wire 4. – ok

Wire 5. – ok

Wire 6. – ok

Wire 7. – 20180318 also the amount for this wire is $2,828,423.30

Wire 8. – ok

Wire 9. – 20180618…..

And

Wire 10. – 20180713…….

<u>Government Exhibit 457[2]</u>

| Date | Wire Transfer | Fedwire OMAD or IMAD |
|------|---------------|----------------------|
| 01/30/2015 | $250,000 sent from CB&T 0661 account in the name "Avenatti & Assoc. A Professional Corp.," to HomeStreet Bank account in Seattle, Washington in the name Global Baristas US LLC | 0130L4B74B1C000483 |
| 02/10/2015 | $50,000 sent from CB&T 0661 account in the name "Avenatti & Assoc. A Professional Corp." to Bank of America account in the name Michael John Avenatti | 0210L4B74B1C000088 |
| 01/26/2017 | $2,500,000 sent from CB&T 8671 account in the name "The State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Account" to JPMC account in the name "The X-Law Group PC" | 0126L4B74B1C000145 |
| 01/05/2018 | $1,600,000 sent from Silicon Valley Bank account in the name Brock USA, LLC to CNB 5566 account in the name "Michael J. Avenatti, Attorney Client Trust Account" | 20180105L1B77D1C003266 |
| 01/10/2018 | $60,000 sent from CNB 5566 account in the name "Michael J. Avenatti, Attorney Client Trust Account" to CB&T 3714 account in the name "The State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Account" | 20180110L2LFCK1C001257 |

---

[2]  The red boxes reveal locations where Amenta's proposed changes were not made.

| Date | Wire Transfer | Fedwire OMAD or IMAD |
|------|---------------|----------------------|
| 03/15/2018 | $3,000,000 sent from CNB 4705 account in the name of "Michael J. Avenatti, Esq., Attorney Client Trust Account" to CB&T 4613 account in the name "State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Account" | 20180315L2LFCK1C001947 |
| 03/15/2018 | $2,828,423 sent from CB&T 4613 account in the name "State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Account" to a bank account with CNB in the name of SulmeyerKupetz | 0315L B74B1C000178 |
| 03/20/2018 | $200,000 sent from CNB 4705 account in the name "Michael J. Avenatti, Esq., Attorney Client Trust Account" to CB&T 4613 account in the name of "State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Account" | 20180320L2LFCK1C000462 |
| 06/18/2018 | $16,000 sent from CB&T 4613 account in the name "State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Account" to a JPMC account in the name of Alexis Gardner | 0618L B74B1C000306 |
| 07/13/2018 | $1,900 sent from CB&T 4613 account in the name "State Bar of California, Eagan Avenatti LLP, Attorney Client Trust Account" to Bank of America account in the name of Geoffrey Johnson | 0713L B74B1C000486 |

Mr. Avenatti respectfully requests that this Court declare a mistrial or strike the testimony of Robert Amenta for the reasons set forth in this motion and "Defendant's Motion for Mistrial or, in the Alternative, to Strike the Testimony of Robert Amenta and John Drum due to Violations of the Jencks Act, Rule 26.2, *Brady* and *Giglio*. *See, e.g.,* Dkt. No. 705.

Dated:  August 17, 2021                          Respectfully submitted,

                                                                    /s/ Michael J. Avenatti

                                                                    Defendant
                                                                    MICHAEL JOHN AVENATTI

8

## CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on August 17, 2021 service of the:

DEFENDANT'S SUPPLEMENT TO MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, TO STRIKE THE TESTIMONY OF ROBERT AMENTA AND JOHN DRUM DUE TO VIOLATIONS OF THE JENCKS ACT, RULE 26.2, *BRADY* AND *GIGLIO* [Dkt. 705]

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 17, 2021

/s/ H. Dean Steward
H. Dean Steward

9