TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2435
     Facsimile: (213) 894-6269
     Email:    Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29 (CR 717) |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Alexander C.K. Wyman, hereby files its Opposition to Defendant's Motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 (CR 717).

This Opposition is based upon the attached memorandum of points and authorities, the evidence and testimony at trial, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 17, 2021    Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

         /s/
_____
BRETT A. SAGEL
ALEXANDER C.K. WYMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On August 16, 2021, following the nineteenth day of trial and after the government rested its case-in-chief, defendant filed a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.  (CR 717.)  On August 17, 2021, the Court directed the government to file a response focusing on Counts 1, 2, 4, and 5 of the Indictment and whether a wire itself must itself be unlawful or simply be a part of the overall scheme.[1]  Defendant ignores the overwhelming evidence against him, the legal standard required under a Rule 29 motion, and the law required to prove wire fraud.  Defendant's arguments are not supported by law or fact, and the Court should deny defendant's motion.

**II.  ARGUMENT**

**A.  Legal Standard**

A motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 must be denied "if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offenses charged beyond a reasonable doubt."  United States v. Rosales, 516 F.3d 749, 751-52 (9th Cir. 2008) (internal quotation marks omitted).  "When viewing the evidence in the light most favorable to the government," a court "may not usurp the role of the finder of fact by considering how [it] would have resolved the conflicts, made the inferences, or considered the evidence at trial."  United States v. H.B., 695 F.3d

---

[1] The evidence and testimony at trial amply support criminal convictions on all ten counts, but the government will focus its opposition on the specific counts and issue the Court raised.  The government will be prepared to respond to any other matter or issue.

931, 935 (9th Cir. 2012). As a result, "in a case involving factual disputes and credibility determinations," a court "must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. The Rule 29 standard is "highly deferential," United States v. Argueta-Rosales, 819 F.3d 1149, 1157 (9th Cir. 2016), and courts applying it "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts," United States v. Alarcon-Simi, 300 F.3d 1172, 1176 (9th Cir. 2002) (internal quotation marks omitted).

The elements of wire fraud, in violation of 18 U.S.C. § 1343, as charged in Counts 1 through 10 are as follows: (1) defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; deceitful statements of half-truths may constitute false or fraudulent representations; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme. Ninth Circuit Model (Criminal) Jury Instruction No. 8.124.[2]

---

[2] The Court has the government's various jury instructions filings and citations for the law relating to wire fraud. For purposes of this Rule 29 opposition, the government only cites to the elements as set forth in the model criminal instructions.

The wire itself need not be illegal; indeed, the Supreme Court has specifically rejected that argument, holding (in the context of the mail-fraud statute) that "any mailing 'incident to an essential part of the scheme' satisfies the mailing element," even if the mailing "contains no false information." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647 (2008) (quoting Schmuck v. United States, 489 U.S. 705, 712, 715 (1989), internal alterations omitted); see also Shaw v. United States, 137 S. Ct. 462, 468 (2016) (construing the wire- and mail-fraud statutes together).

As the Ninth Circuit has explained, "[t]he wire[-]fraud statute protects the instrumentalities of communication, making the use of the wires as part of a fraudulent scheme an independent offense quite separate from any other potentially illegal conduct." United States v. Hussain, 972 F.3d 1138, 1143 (9th Cir. 2020) (internal quotation marks and alterations omitted). The statute requires only that the wire "be made 'for the purpose' of committing the unlawful activity." United States v. Garner, 663 F.2d 834, 838 (9th Cir. 1981) (quoting Ninth Circuit precedent). "A wire communication is 'in furtherance' of a fraudulent scheme if it is incident to the execution of the scheme, meaning that it need not be an essential element of the scheme, just a step in the plot." United States v. Jinian, 712 F.3d 1255, 1260 (9th Cir. 2013) (citations and internal quotation marks omitted). The "relevant question at all times is whether a wire is part of the execution of the scheme as conceived by the perpetrator at the time." Id. (same).

The Ninth Circuit's model instructions reflect this well-established precedent, requiring that "the defendant used, or caused to be used, an interstate [or foreign] wire communication to carry

3

out or attempt to carry out an essential part of the scheme," and explaining that "[a] wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use." Ninth Circuit Model (Criminal) Jury Instruction No. 8.124.

### B. The Evidence Is More than Sufficient to Survive a Rule 29 Challenge on Counts 1, 2, 4, and 5

#### 1. Counts 1-2

Defendant primarily argues that the Court should dismiss wire fraud counts 1 and 2 because the wires were from funds "legitimately" owed to and "lawfully earned" by defendant. (CR 717 at 6, 8, 9.) At the time defendant caused the wires in Count 1 and 2, defendant had, among other things, already: lied to Geoffrey Johnson that a settlement with the County had yet to be finalized; caused Mr. Johnson's signature to be forged on the settlement agreement; and failed to disclose to Mr. Johnson the existence of the settlement agreement, the terms of the settlement agreement, or the payment from the County of Los Angeles. Once defendant obtained money or property, particularly the $4 million settlement payment, based on his false statements and material omissions, any wire in furtherance of his scheme completes the crime.

Defendant did not "legitimately" earn anything from a settlement agreement and terms he <u>never</u> disclosed to his client. Defendant claims Mr. Johnson understood defendant was entitled to 40% of a settlement pursuant to their fee agreement (CR 717 at 7); however, defendant leaves out the fact that defendant never told Mr. Johnson there was a settlement agreement or a settlement payment. Furthermore, although defendant attempts to couch the first couple

4

withdrawals from the attorney-client trust account at "legitimately" earned fees and costs, he fails to point out the overwhelming evidence that defendant paid zero dollars of the settlement to Mr. Johnson.

Defendant stated, in his own testimony under oath, played to the jury, that the client is due their portion of the settlement immediately (Trial Ex. 400F); yet defendant never paid Geoffrey Johnson his portion immediately -- or ever. Defendant only paid himself immediately after lying to his client and concealing material information from him. A jury could easily infer that defendant's attempt to withdraw 40% as his fees, and then the "costs" immediately after receiving draft costs from Judy Regnier, were to conceal his theft of Mr. Johnson's funds -- and to later claim, as he is doing here, that the funds were legitimate. And because defendant purposefully stops his description at the time of his withdrawals after depositing the settlement money, he fails to acknowledge that he paid no settlement money to Mr. Johnson.

Defendant carried out an essential part of the scheme, namely, using the funds for himself, when he caused an interstate wire of $250,000 to defendant's coffee business, specifically a Global Baristas US LLC account, from Geoffrey Johnson's settlement money. When defendant further wired $50,000 that originated from Mr. Johnson's settlement money to personal accounts controlled by defendant, he again caused to be used an interstate wire communication to carry out an essential part of the scheme.

### 2. Counts 4-5

Defendant next claims the Court should dismiss wire fraud counts 4 and 5, the $1.6 million wire transfer from Brock USA, LLC to

5

defendant's attorney-client trust account defendant set up to receive Gregory Barela's settlement money ("CNB 5566"), and a $60,000 wire from CNB 5566 to another trust account defendant controlled. (CR 717 at 9.) As to Count 4, defendant claims "the government has failed to establish that [defendant] caused the wire transfer to be effectuated, in furtherance of a scheme, while harboring the specific intent to deceive and cheat." (Id. at 11.) Ignoring the testimony and evidence in the case, and citing to nothing, defendant claims the wire in Count 4 "occurred prior to any misconduct described by the government." (Id. at 12.) This is simply false.

There is little doubt defendant "caused" the wire because Trial Exhibit 191 is an email defendant sent to counsel for Brock on January 2, 2018, directing where the settlement payment should be wired: CNB 5566.[3] Defendant's wire instruction email takes place a few days after defendant lies to Gregory Barela about the terms of the settlement agreement and provides a fraudulent settlement agreement to Mr. Barela, specifically, that Brock's first payment is not due until March 10, 2018, rather than January 10, 2018 (as well as false statements of when the remaining payments would be made). Defendant obtained the $1.6 million based on false statements and representations to his client, and the wire that defendant caused to be made into CNB 5566 carried out an essential part of his scheme.

Defendant also claims Count 5 is deficient because the $60,000 wire transfer "on January 10, 2018 consisted entirely of funds [defendant] was entitled to by way of his representation of Mr.

---

[3] This email is also after defendant modified the settlement agreement with Brock to state defendant would provide wire instructions to Brock on or before January 3, 2018. (Trial Exhibits 181 at 8, 187 at 4.)

6

Barela . . . [and] sufficient funds remained in the CNB [5566] to compensate Mr. Barela in the amount the government claimed he was owed." (CR 717 at 12.) Defendant had already lied to his client about the settlement agreement and its terms and concealed the material fact that defendant received the $1.6 million settlement payment in the case prior to causing this $60,000 wire transfer. Defendant was hardly "entitled" to money that he obtained through his fraudulent scheme. And just like with Mr. Johnson's money, defendant paid zero dollars to Mr. Barela from the settlement money, so defendant cannot claim a wire from the account early was legitimate because there was sufficient money to be paid to his client, which defendant never paid to his client.

## III. CONCLUSION

The evidence of defendant's wire fraud scheme is overwhelming, and each of the ten wires defendant caused were in furtherance of his wire fraud scheme. For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to dismiss counts of conviction under Rule 29 in its entirety.