TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2435
     Facsimile: (213) 894-6269
     Email:    Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 19-061-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, TO STRIKE THE TESTIMONY OF ROBERT AMENTA AND JOHN DRUM DUE TO VIOLATIONS OF THE JENCKS ACT, RULE 26.2, *BRADY* AND *GIGLIO* (CR 705); EXHIBITS 1-3 |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Alexander C.K. Wyman, hereby files its Opposition to defendant MICHAEL JOHN AVENATTI's Motion for Mistrial or, in the Alternative,

to Strike the Testimony of Robert Amenta and John Drum Due to

Violations of the Jencks Act, Rule 26.2, *Brady* and *Giglio* (CR 705).

This Opposition is based upon the attached memorandum of points

and authorities, the accompanying exhibits, the files and records in

this case, and such further evidence and argument as the Court may

permit.

 Dated: August 18, 2021              Respectfully submitted,

                                     TRACY L. WILKISON
                                     Acting United States Attorney

                                     SCOTT M. GARRINGER
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                     _____/s/_____
                                     BRETT A. SAGEL
                                     ALEXANDER C.K. WYMAN
                                     Assistant United States Attorneys

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant again moves for a mistrial (or, in the alternative, to strike the testimony of two government witnesses) for Jencks Act violations.  (CR 705.)  Once again defaulting to the most extreme remedy possible, defendant claims that the government's failure to produce emails by its Fedwire witness (Robert Amenta) and its financial expert witness (John Drum) warrants either a mistrial or the complete striking of their testimony.  That is not the law, and it is not an appropriate remedy for the violation he claims.

"A trial court has the discretion to refuse to impose sanctions for noncompliance with the Jencks Act." United States v. Echeverry, 759 F.2d 1451, 1456 (9th Cir. 1985); see also United States v. Finnegan, 568 F.2d 637, 642 (9th Cir. 1977) ("Although the interview notes in question may have been a 'statement' within the meaning of the Jencks Act, and thus discoverable, the trial court has broad discretion in determining whether Jencks Act sanctions ought to be imposed." (cleaned up)).  "The decision to strike a witness's testimony for Jencks Act noncompliance will generally depend on (1) a consideration of the culpability of the government, and (2) the injury resulting to the defendants." Echeverry, 759 F.2d at 1456; see United States v. Sterling, 742 F.2d 521, 524 (9th Cir. 1984) (no abuse of discretion to decline imposition of sanction where other available materials enabled a vigorous cross-examination).

To the extent any Jencks violation occurred, defendant is entirely off base in asking for a mistrial or to strike the testimony

of Mr. Drum and Mr. Amenta.[1]  The provision of Rule 26.2 he quotes

applies when "an attorney for the government disobeys the order."

Fed. R. Crim. P. 26.2(e).  Nothing of the sort has happened here, nor

will it.  The government will comply with any order by the Court to

turn over any document or category of documents in its possession, as

it recently did with respect to Mr. Drum's emails.  The appropriate

remedy for any late production of witness statements is therefore to

allow defendant a "reasonabl[e]" "recess" to review the statements

and then recall the witness for further cross-examination.  18 U.S.C.

§ 3500(c); Fed. R. Crim. P. 26.2(d).  There is no basis for any other

remedy, particularly given that the parties are still in trial,

defendant has already received all the information underlying any

emails not produced, and any witness could still be recalled for

further cross-examination.  See, e.g., Rosenberg v. United States,

360 U.S. 367, 371 (1959) ("[W]hen the very same information was

possessed by defendant's counsel as would have been available were

error not committed, it would offend common sense and the fair

administration of justice to order a new trial."); United States v.

Span, 970 F.2d 573, 582 (9th Cir. 1992) ("We will not reverse a

conviction for Jencks Act error where the error is more likely than

not harmless. . . .  [T]he district court gave defense counsel the

opportunity to recall Petrie for further cross-examination.  This

minimized any prejudice from the government's initial failure to

---

[1] Defendant also claims violations of Brady and Giglio, but he
provides no justification for claiming such violations, because there
have been none.  As is evident in the emails related to Mr. Amenta,
while the emails contain "statements" as contemplated by the Jencks
Act, there was no information in the emails not already provided to
defendant, and none of the information in any emails with either Mr.
Amenta or Mr. Drum could be considered "favorable to the defense."

1    produce Petrie's grand jury testimony."); <u>United States v. Riley</u>, 189

2    F.3d 802, 807 (9th Cir. 1999) ("[W]e have not required that testimony

3    be stricken where a substitute for the missing statement was

4    available."); <u>Echeverry</u>, 759 F.2d at 1456 (affirming denial of motion

5    for new trial based on Jencks violation where transcript that had not

6    been produced was "generally duplicative of information previously

7    disclosed to defense counsel," and, consequently, defense counsel was

8    "not deterred from a thorough cross-examination of [the witness]").[2]

9         The Jencks Act, 18 U.S.C. § 3500, requires production of the

10   following types of "statements" made by government witnesses, in the

11   possession of the government, if those statements "relate[] to the

12   subject matter as to which the witness has testified."  18 U.S.C.

13   § 3500(b); <u>see also</u> Fed. R. Crim. P. 26.2 (applying the Jencks Act).

14   There are three Jencks categories (18 U.S.C. § 3500(e)):

15            (1) a written statement made by said witness and
              signed or otherwise adopted or approved by him;
16

17            (2) a stenographic, mechanical, electrical, or other
              recording, or a transcription thereof, which is a
18            substantially verbatim recital of an oral statement made by

19   _____

20        [2] Defendant relies on three cases from the 1970s to claim that
     it is <u>mandatory</u> to strike a witness's testimony in the event of a
     Jencks violation.  (CR 705 at 14.)  Each of these cases is factually
21   inapposite and does not stand for the proposition for which defendant
     cites them, and, to the extent any of them could be read to suggest
22   that such a remedy for Jencks violations is mandatory, they are
     directly inconsistent with subsequent binding Ninth Circuit authority
23   such as <u>Span</u>, <u>Riley</u>, and <u>Echeverry</u>.  <u>See</u> <u>United States v. Well</u>, 572
     F.2d 1383, 1384 (9th Cir. 1978) (government failed to disclose tape-
24   recorded interviews of "all of the government's key witnesses");
     <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976)
25   (affirming "trial judge's refusal to strike the testimony of the FBI
     agent because the notes were not produced [as] harmless error");
26   <u>United States v. Carrasco</u>, 537 F.2d 372, 376-77 & n.2 (9th Cir. 1976)
     (testimony of "key witness" stricken where government agent obtained
27   written statement by witness and then destroyed the document, and
     "the information in the destroyed document relevant for impeachment
28   [wa]s not otherwise available" (quoting <u>Ogden v. United States</u>, 323
     F.2d 818, 820-21 (9th Cir. 1963))).

                                      3

said witness and recorded contemporaneously with the making of such oral statement; or

     (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

Written statements include email communications by a witness.  The Ninth Circuit has explained that "for production to be required under the Jencks Act, the materials should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context."  United States v. Robertson, 895 F.3d 1206, 1217–18 (9th Cir. 2018); see also United States v. Reed, 575 F.3d 900, 921 (9th Cir. 2009) (holding that there was no Jencks Act violation when a government agent "had taken handwritten notes of interviews, converted them into a typed report, and then destroyed the original notes" because there was no evidence that the notes were "adopted or approved by any of the witnesses").

    For similar reasons, draft reports, declarations, or other documents do not constitute Jencks "statements."  See United States v. Kaiser, 660 F.2d 724, 732 (9th Cir. 1981) (holding that a "rough draft of an investigative report did not constitute a violation of the Jencks Act" because "[t]he Jencks Act requires, in part, that the Government produce written statements made by a witness and 'signed or otherwise adopted or approved by him,'" and "[t]he draft of the report here was not intended as a final report"); United States v. Bagnariol, 665 F.2d 877, 890 (9th Cir. 1981) (similar); United States v. Steele, No. MJ20-252MAT-RSL, 2020 WL 4726704, at *5 (W.D. Wash. Aug. 13, 2020) (finding drafts of complaint affidavit not producible under Jencks where "there [wa]s no suggestion that any draft of the

complaint and affidavit [we]re substantially different than the final version" and "there [we]re no allegations that Special Agent LeCompte intended to approve or adopt earlier drafts").  As the D.C. Circuit has explained in this context:

> Not everything a witness has written constitutes his 'statement' within § 3500(e)(1).  The Jencks Act does not apply unless the witness has signed or otherwise adopted or approved the writing.  Apparently neither Somers nor Fitzpatrick signed their drafts.  Exactly when in the drafting process they adopted or approved what they had written is not clear.  Drafts may be tentative.  If the drafting is done on a word processor, for example, it would be foolish to think that each time the witness-to-be adds something to or deletes something from what appears on the screen, he has thereby created a new Jencks Act 'statement.'  The author may reserve judgment about his draft until he reviews it in final, signifying his approval only when he affixes his signature to the completed document.  If so, only the final document qualifies as a statement under § 3500(e)(1).

United States v. Thomas, 97 F.3d 1499, 1502 (D.C. Cir. 1996) (internal citations omitted).

Similarly, not all written messages sent by a witness will "relate[] to the subject matter as to which the witness has testified."  18 U.S.C. § 3500(b).  If a communication memorializes something that the witness did not testify about, that communication is not related to the subject matter of the witness's testimony.  See, e.g., United States v. Ruzicka, 988 F.3d 997, 1007 (8th Cir. 2021) ("report merely memorialized the reverse proffer, and Agent Kinney did not testify about the reverse proffer").

Defendant's claims relate to email correspondence between the government and two of its witnesses: Mr. Amenta and Mr. Drum.  With regard to Mr. Amenta, when defendant elicited the existence of further email correspondence that may exist on cross-examination, the government immediately searched for and found the correspondence, and

then filed publicly what the government had in its possession.  (CR 690.)  Specifically, the government filed two emails that it identified that related to the subject matter of Mr. Amenta's testimony, noting that they did not contain any new information, since all of the information was contained in the memoranda of interviews of Mr. Amenta.  (CR 690 at 2.)  The following morning, the Court addressed the government's filing and the two emails attached, stating, "I don't believe they have anything, certainly the last one. Exhibit 5 doesn't have anything, and Exhibit 4 notes that certain prefixes to the transfer numbers were missing and incomplete.  To me, that's of very little substance."  (RT 8/13/2021, Vol. 1, at 11.)  In response, defendant indicated that he disagreed and would file something (which he subsequently did (CR 705, 720)), but he did not ask for the opportunity to cross-examine Mr. Amenta further on these emails and did not include Mr. Amenta on his witness list filed on August 17, 2021.  And although he now states that he would have conducted his cross-examination differently had he had the emails (CR 705 at 14 & n.4), he does not request the opportunity for further cross-examination in his instant motion or his supplement to the motion, instead resorting to the most drastic remedy possible -- a mistrial or the striking of Mr. Amenta's testimony.[3]

---

[3] Defendant misleadingly refers to the "errors in Exhibit 457 as pointed out by Investigator Amenta" (CR 705 at 15 n.5), but there were no such errors.  Mr. Amenta simply noted that six of the IMADs in Trial Exhibit 457 did not have the leading year identifiers that Fedwire provides in its own records (CR 690 Ex. 5), because the California Bank & Trust and City National Bank records for these wire transfers do not use the same identifiers.  That did not make the chart in any way inaccurate or incomplete, and Mr. Amenta testified on cross-examination about how he provided input to the government on this chart that the government declined to adopt.

1    With regard to Mr. Drum, defendant again spent his cross-

2    examination asking Mr. Drum about what correspondence he had with the

3    government.  Immediately after doing so, defendant raised a Jencks

4    objection, and the government, without having the benefit of

5    researching the issue first, raised the issue of the work product

6    privilege, which government counsel believed would apply.  Upon

7    further review, the government agrees that the work product privilege

8    does not shield statements that would otherwise be producible under

9    the Jencks Act.  See Fed. R. Crim. P. 16(a)(2) ("Nor does this rule

10   authorize the discovery or inspection of statements made by

11   prospective government witnesses except as provided in 18 U.S.C.

12   § 3500." (emphasis added)).[4]  Immediately after defendant raised his

13   Jencks objection, the government began compiling the correspondence

14   it had with Mr. Drum, and, upon returning to court after the lunch

15   break, offered to submit any correspondence with Mr. Drum to the

16   Court for its review, noting that the vast majority of its

17   correspondence appeared to be logistical in nature.  The following

18   day, August 15, 2021, the government submitted its filing in camera,

19   as ordered by the Court.  Per the Court's subsequent order on that

20   filing, the government has since provided the in camera filing to the

21   defense and filed it under seal.  Defendant now has the emails he

22   complains he did not have previously, and to the extent he wishes to

23   cross-examine Mr. Drum further, the government will make Mr. Drum

24   available.[5]  No further remedy is necessary or warranted.

25

26   [4] The government did not deliberately misstate the law with
     regard to these issues; that was counsel's understanding of the law
27   when the issue was raised in court.

     [5] In the event that defendant wishes to cross-examine Mr. Drum
28   further, and for the sake of full disclosure, the government is
                                                    *(footnote cont'd on next page)*

                                    7

1    In his instant motion, defendant also complains that he was

2  never provided with invoices or bills related to Mr. Drum's work.

3  Defendant attaches two emails requesting such materials from June 15

4  and June 16, 2021, but he fails to include the government's response

5  in which the government stated, "To the extent you have authority

6  that the government is required to produce invoices and billing

7  materials of expert witnesses in addition to the information we have

8  already provided to you, please send it to us so that we can review

9  it."  (Ex. 1.)  Defendant provided no authority in his response other

10 than "Brady, Giglio, Bundy, the Jencks Act, and the Court's Orders"

11 (Ex. 2), nor did he ever raise the issue with the Court in the two

12 months since.  Moreover, the government timely produced the only

13 Giglio information related to Mr. Drum -- namely, the amount of money

14 paid to Analysis Group -- which defendant referenced at least half a

15 dozen times during his cross-examination and said out loud again in

16 front of the jury on August 17 (which even the court reporter was

17 able to hear and recorded on the record) during government counsel's

18 cross-examination of a defense witness.  (RT 8/17/2021 at 52:23.)

19    Lastly, defendant incorrectly states that he was only given "one

20 draft set" of Mr. Drum's summary exhibits.  (CR 705 at 15.)  In

21 addition to the fact that drafts do not fall within the scope of

22 Jencks statements, see Kaiser, 660 F.2d at 732, the government

23 provided defendant with an initial set of draft exhibits in March

24 2020, which were bates-stamped USAO_EX_000021-100.  The government

25 then produced a revised draft set in May 2020, and the final set in

26 July 2021.  Despite having these multiple iterations of exhibits,

27

28 attaching as Exhibit 3 to this filing an email government counsel
   received after Mr. Drum finished testifying on Friday, August 13.

defendant did not spend any time during his cross-examination on this issue with Mr. Drum.

Defendant's motion should be denied it its entirety.  It seeks drastic remedies that are neither warranted nor appropriate.  To the extent there has been any violation, it is curable through the basic act of recalling a witness for further cross-examination.

# EXHIBIT 1

**Wyman, Alex (USACAC)**

| | |
|---|---|
| **From:** | Wyman, Alex (USACAC) |
| **Sent:** | Tuesday, June 22, 2021 8:16 PM |
| **To:** | Dean Steward |
| **Cc:** | Sagel, Brett (USACAC) |
| **Subject:** | US v. Avenatti |

Dean,

We write in response to your emails from June 15 and June 16.  As we have repeatedly stated, we have complied with, and will continue to comply with, our discovery obligations and the Court's Orders.  To the extent you have authority that the government is required to produce invoices and billing materials of expert witnesses in addition to the information we have already provided to you, please send it to us so that we can review it.

Thanks,
Alex

**Alex Wyman** | **Assistant United States Attorney**
**Major Frauds Section**
United States Attorney's Office | Central District of California
312 N. Spring St. | Los Angeles, California  90012
T: 213.894.2435 | Alex.Wyman@usdoj.gov

# EXHIBIT 2

**Wyman, Alex (USACAC)**

| | |
|---|---|
| **From:** | Dean Steward <deansteward7777@gmail.com> |
| **Sent:** | Wednesday, June 23, 2021 5:30 AM |
| **To:** | Wyman, Alex (USACAC); Sagel, Brett (USACAC) |
| **Subject:** | experts |

Alex:

Thank you for the email, but the government has not complied with its obligations.  Please promptly address the specific issues we have raised - merely repeating the prepared statement that you "have complied" without any further analysis or comment does not adequately respond in any way to the concerns we have detailed.

Further, the information relating to the experts is required to be produced pursuant to Brady, Giglio, Bundy, the Jencks Act, and the Court's Orders. Please produce it immediately.

Dean

--



949-481-4900  www.deansteward.com

1

# EXHIBIT 3

**From:**      Drum, John <John.Drum@analysisgroup.com>
**Sent:**      Friday, August 13, 2021 5:37 PM
**To:**        Sagel, Brett (USACAC); Wyman, Alex (USACAC); Kim James M; Roberson Ryan (CI)
**Subject:**   CPA mobility


FYI, in case it matters or helps you.  I wish I had remembered to bring this up:
https://www.aicpa.org/advocacy/state/mobility/mobility-implementation-faqs.html

Thanks again for this opportunity.  As I said, when things slow down for you, I'd love some feedback.  Looking forward to seeing this case resolve.

Thanks again,
John