Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 497-6753

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL JOHN AVENATTI, <br><br> Defendant. | SA CR No. 19-061-JVS <br><br> DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MISTRIAL, DUE TO THE GOVERNMENT'S (1) FAILURE TO PRODUCE INFORMATION AS REQUIRED BY RULE 16, *BRADY*, AND *GIGLIO*, AND (2) CONTEMPT OF THIS COURT'S JANUARY 25, 2021 ORDER [DKT. 706] |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti"), by and through his advisory counsel, H. Dean Steward, hereby files his Supplemental Brief in Support of his Motion to Dismiss or, in the Alternative, Motion for Mistrial due to the Government's (1) Failure to Produce Information as Required by Rule 16, *Brady, Giglio*, and (2) Contempt of this Court's January 25, 2021 Order [Dkt. 706].

Dated:  August 18, 2021

Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant brings to the Court's attention the following information that has come to light since the filing of defendant's August 15, 2021 opening brief [Dkt. 706] on the government's failure to timely produce discovery as required under Rule 16, *Brady, Giglio*, and this Court's January 25, 2021 Order.[1]

On the morning of August 17, 2021, the government, through AUSA Brett Sagel, suggested to the Court that at no time prior to Ms. Judy Regnier testifying at trial did she mention "Tabs" to the prosecution and investigative team. *See* Trial Tr. (8/17/21, Vol. 1) pp. 36-38.  The defendant immediately explained to the Court that this suggestion was false and would be shown to be false by way of interview memoranda.  *Id.*

Twenty-four hours later, on the morning of August 18, 2021, Special Agent Remoun Karlous was forced to admit under oath that the government had been aware of the Tabs data being on the law firm's servers for over two years and had been made aware of Tabs by Ms. Regnier during at least two interviews where AUSA Sagel was present.  *See* Exhibit A.  In other words, the testimony of the government's own co-lead agent demonstrates that the representation made by AUSA Sagel is false.  The government has known of the Tabs database in their possession for years.  Despite this, however, and despite the repeated demands of the defendant as outlined in the motion, the government never produced this critical evidence.  Nor did the government produce all of the Quickbooks data. And yet the government repeatedly represented to the Court and the defendant that all information required to be produced pursuant to Rule 16, *Brady*, *Giglio*, and this Court's January 25, 2021 Order had been produced.

---

[1] **In his opening brief, defendant extensively discussed the legal standard applicable to the government's failures and why they warrant a dismissal or, at a minimum, a mistrial.  *See* Dkt. 706 at 11-18.**

Even worse, despite the recent trial testimony and the clear importance of the data to the defense, the government continues to refuse to produce the data to the defendant in a deliberate effort to interfere with his ability to mount a proper defense.

The government suppressed the Tabs database and certain Quickbooks data and failed to produce it for years, despite its obvious importance to the defense, the defendant's repeated demands for the information as described in the motion, and the government's clear obligation to produce the data to the defendant. As of this filing, these failures continue.

The government's misconduct and bad faith is serious and evidences a deliberate attempt to violate Mr. Avenatti's right to due process and interfere with his ability to properly defend himself at trial.  Further, as outlined in the motion, the resulting prejudice has been substantial. Accordingly, for each of these reasons, as well as those set forth in the motion, the Court should dismiss the Indictment.  In the alternative, the Court should declare a mistrial.

Dated:  August 18, 2021                    Respectfully submitted,

                                           /s/ Michael J. Avenatti

                                           Defendant
                                           MICHAEL JOHN AVENATTI

# Exhibit A

1

1

2

3

4                    UNITED STATES DISTRICT COURT

5                   CENTRAL DISTRICT OF CALIFORNIA

6                         SOUTHERN DIVISION

7                              - - -

8       THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9
         UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
10                       Plaintiff,  )
             vs.                      )
11                                    )  SACR-19-00061-JVS
         MICHAEL JOHN AVENATTI,       )
12                       Defendant.  )TRIAL DAY 22, VOL. 1
         ------------------------------)
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                   Santa Ana, California

17                    August 18, 2021

18

19                       SHARON A. SEFFENS, RPR
                         United States Courthouse
20                       411 West 4th Street, Suite 1-1053
                         Santa Ana, CA  92701
21                       (714) 543-0870

22

23

24

25

           SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

2

APPEARANCES OF COUNSEL:

For the Plaintiff:

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER WYMAN
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA  90012
(213) 894-6683

BRETT A. SAGEL
Assistant United States Attorney
Ronald Reagan Federal Building
411 West Fourth Street, Suite 8000
Santa Ana, CA  92701
(714) 338-3598

For the Defendant:

MICHAEL JOHN AVENATTI, PRO SE

H. DEAN STEWARD, ADVISORY COUNSEL
H. DEAN STEWARD LAW OFFICES
107 Avenida Miramar, Suite C
San Clemente, CA  92672
(949) 481-4900

3

```
1

2                                  I-N-D-E-X

3

4    PLAINTIFF'S
     WITNESSES:               DIRECT   CROSS   REDIRECT   RECROSS
5
     (None)
6
     PLAINTIFF'S
7    EXHIBITS:                               MARKED     RECEIVED

8    (None)

9    DEFENSE
     WITNESSES:        DIRECT    CROSS     REDIRECT    RECROSS
10
     REMOUN KARLOUS       18
11
     DEFENSE
12   EXHIBITS:                               MARKED     RECEIVED

13   (None)

14

15

16

17

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:18   1   and Alexander Wyman on behalf of the United States.  And at
09:18   2   counsel table is Special Agent Remoun Karlous.
09:18   3              THE COURT:  Good morning.
09:18   4              MR. AVENATTI:  Good morning, Your Honor.  Michael
09:18   5   Avenatti, present with Mr. Dean Steward and
09:18   6   Ms. Cummings-Cefali.  Ms. Hernandez will be joining us
09:18   7   momentarily.
09:18   8              THE COURT:  Good morning.
09:18   9              And good morning, ladies and gentlemen.
09:18   10             THE JURY:  Good morning.
09:18   11             THE COURT:  Mr. Avenatti, would you call your next
09:18   12  witness, please.
09:18   13             MR. AVENATTI:  Yes, Your Honor.
09:18   14             The defense calls Special Agent Remoun Karlous.
09:18   15              REMOUN KARLOUS, DEFENSE WITNESS, SWORN
09:19   16             THE CLERK:  If you would please state and spell
09:19   17  your first and last name.
09:19   18             THE WITNESS:  Remoun Karlous, R-e-m-o-u-n,
09:19   19  K-a-r-l-o-u-s.
09:19   20             THE CLERK:  Thank you.
09:19   21             THE COURT:  Mr. Avenatti.
09:19   22                      DIRECT EXAMINATION
09:19   23  BY MR. AVENATTI:
09:19   24  Q    Special Agent Karlous, good morning.
09:19   25  A    Good morning.
```

| | | |
|---|---|---|
| 09:36 | 1 | those electronic devices that were removed from |
| 09:37 | 2 | Ms. Regnier's residence after they were taken on the morning |
| 09:37 | 3 | of March 25th? |
| 09:37 | 4 | A    A computer forensic agent took the devices and made an |
| 09:37 | 5 | image of them. |
| 09:37 | 6 | Q    And which agent was that? |
| 09:37 | 7 | A    I believe Special Agent John Weeks. |
| 09:37 | 8 | Q    Can you spell it for the court reporter, please. |
| 09:37 | 9 | A    W-e-e-k-s. |
| 09:37 | 10 | Q    And why were the electronic devices given to Mr. Weeks |
| 09:37 | 11 | for a forensic image to be taken? |
| 09:37 | 12 | A    He was our computer forensics person with the IRS at |
| 09:37 | 13 | the time, and that was his duty and his job. |
| 09:37 | 14 | Q    Were all of the devices removed from Ms. Regnier's home |
| 09:37 | 15 | that day to the best of your knowledge forensically imaged? |
| 09:37 | 16 | A    I don't know.  I wasn't involved. |
| 09:38 | 17 | Q    When was the first time, Special Agent Karlous, that |
| 09:38 | 18 | you ever heard about Tabs? |
| 09:38 | 19 | A    I don't recall. |
| 09:38 | 20 | Q    Before this trial had you ever heard about Tabs? |
| 09:38 | 21 | A    Yes.  I think it was mentioned by Ms. Regnier. |
| 09:38 | 22 | Q    So if someone were to state that before this trial the |
| 09:38 | 23 | government had no idea about Tabs, that would be untrue, |
| 09:39 | 24 | right? |
| 09:39 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

32

| | | |
|---|---|---|
| 09:39 | 1 | Q    Do you recall that Ms. Regnier specifically told you |
| 09:39 | 2 | and Mr. Sagel on November 19th, 2019, almost two years ago, |
| 09:39 | 3 | about Tabs? |
| 09:39 | 4 | A    Yes. |
| 09:39 | 5 | Q    A moment ago you didn't remember the date.  Now you do |
| 09:39 | 6 | remember the date; is that right? |
| 09:39 | 7 | A    I knew it wasn't -- I didn't recall it during the |
| 09:39 | 8 | search warrant.  That's why I was hesitant. |
| 09:39 | 9 | Q    And do you have a recollection that on November 19th of |
| 09:40 | 10 | 2019 you and Special Agent Roberson -- by the way, what |
| 09:40 | 11 | division is he with? |
| 09:40 | 12 | A    The IRS criminal investigation.  He is a special agent. |
| 09:40 | 13 | Q    You and Special Agent Roberson and Mr. Sagel met with |
| 09:40 | 14 | Ms. Regnier from 9:05 a.m. to 5:42 p.m., about eight and a |
| 09:40 | 15 | half hours.  Do you recall that? |
| 09:41 | 16 | A    Yes. |
| 09:41 | 17 | Q    Do you recall during that interview almost two years |
| 09:41 | 18 | ago, Ms. Regnier was asked what systems were used at Eagan |
| 09:41 | 19 | Avenatti to keep track of client expenses? |
| 09:41 | 20 | A    I believe so. |
| 09:41 | 21 | MR. AVENATTI:  Your Honor, can I approach? |
| 09:41 | 22 | THE COURT:  You may. |
| 09:42 | 23 | (Document handed to the witness) |
| 09:42 | 24 | BY MR. AVENATTI: |
| 09:42 | 25 | Q    Sir, directing your attention to Exhibit 1085, |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:43    1   paragraph 14, does this refresh your recollection that on
09:43    2   November 19th, 2019, you and AUSA Brett Sagel was
09:43    3   specifically told about Tabs?
09:43    4   A     Yes.
09:43    5   Q     And to the best of your knowledge, was that the first
09:43    6   time that anyone had mentioned Tabs to you as it related to
09:43    7   Eagan Avenatti?
09:43    8   A     I believe so.
09:44    9   Q     In fact, that document that I just handed you, that's a
09:44   10   memorandum of interview that you prepared and signed,
09:44   11   correct?
09:44   12   A     I don't recall that I prepared this.  It may have been
09:44   13   Special Agent Roberson.  In fact, I think it was him.
09:45   14   Q     Well, sir, you don't dispute that the document says:
09:45   15   "I prepared this memorandum on November 25, 2019, after
09:45   16   refreshing my memory from notes made during and immediately
09:45   17   after the interview with Regnier."
09:45   18           You don't dispute that; do you?
09:45   19   A     No, but I don't think I prepared this.
09:45   20   Q     Well, can you explain, then, why your signature appears
09:45   21   under the statement that I just read above the words special
09:45   22   agent?
09:45   23   A     Yes -- because I was a witness to this interview.  We
09:45   24   usually have two witnesses for interviews.  I read the
09:45   25   report and I concurred with the report.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:48   1   matter asserted.  It's offered for impeachment purposes.
09:48   2         I'm happy to lay more of a foundation if you'd
09:48   3   like.
09:48   4         THE COURT:  Please.
09:48   5   BY MR. AVENATTI:
09:48   6   Q    Special Agent Karlous, do you have what has been marked
09:48   7   as Exhibit 1084 in front of you?
09:48   8   A    Yes.
09:48   9   Q    Isn't it true that November 19th was not the first time
09:48  10   that you learned that the law firm Eagan Avenatti used Tabs
09:48  11   to track client expenses?
09:48  12   A    After reviewing this exhibit, yes, I knew earlier about
09:49  13   Tabs.
09:49  14   Q    And you knew earlier because you and Special Agent
09:49  15   James Kim and AUSAs Julian Andre and Brett Sagel called
09:49  16   Ms. Regnier at approximately 1:30 p.m. on July 25th of 2019
09:49  17   for the specific purpose of asking her questions regarding
09:49  18   the Eagan Avenatti, LLP, server and how client files were
09:49  19   created and maintained on the server; isn't that true?
09:49  20   A    Yes.
09:50  21   Q    Special Agent Karlous, isn't it true that you, Special
09:50  22   Agent Kim, former AUSA Julian Andre, and AUSA Brett Sagel
09:51  23   have known for over two years that client expenses were
09:51  24   maintained on the EA, Eagan Avenatti, server in Tabs?
09:51  25   A    After reviewing this exhibit, it refreshes my memory,
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:51  1  yes.

09:51  2  Q     And the reason why this exhibit refreshes your memory

09:51  3  is because this is your typewritten summary and your

09:51  4  handwritten notes from that call with Ms. Regnier, right?

09:51  5  A     Yes.

09:52  6  Q     Just so we are clear, on July 25th Ms. Regnier did not

09:52  7  call you.  You called Ms. Regnier, right?

09:52  8  A     Yes.

09:52  9  Q     Whose idea was it to call Ms. Regnier that day and ask

09:52  10  about how the information was maintained within the Eagan

09:52  11  Avenatti servers?

09:52  12  A     The investigative team.

09:52  13  Q     Who does that include?

09:52  14  A     That includes who is on this memo of that day.

09:52  15  Q     So it was a joint decision generally?

09:52  16  A     Generally.

09:52  17  Q     All right.  It was a joint decision made by you,

09:52  18  Special Agent Kim, AUSA Julian Andre, and AUSA Brett Sagel,

09:52  19  correct?

09:52  20  A     Yes.

09:53  21  Q     And you understood that one of the reasons why you

09:53  22  wanted to call Ms. Regnier and ask her questions about how

09:53  23  the financial information was maintained on the servers was

09:53  24  to ensure that you did an adequate investigation; is that

09:53  25  right?

09:53   1    A    Yes.

09:53   2    Q    And during that discussion Ms. Regnier explained to you

09:53   3    generally how the client and financial information was

09:53   4    stored on the EA servers, right?

09:53   5    A    Yes.

09:54   6    Q    And as of this date, July 25, 2019, you were aware,

09:54   7    were you not, that the government had in its possession

09:54   8    forensic images of the servers?

09:54   9    A    Yes.

09:54   10   Q    When you spoke with Ms. Regnier on July 25, 2019, did

09:54   11   she refuse to answer any of your questions about how

09:54   12   financial information was stored on the Eagan Avenatti

09:54   13   servers?

09:54   14   A    No.

09:54   15   Q    Was there anything that she said that you thought you

09:54   16   did not understand?

09:54   17   A    I don't recall.

09:54   18   Q    As you sit here today, you do not recall any such

09:54   19   instance of that; is that true?

09:54   20   A    True.

09:55   21   Q    One of the things that you and the rest of the

09:55   22   investigative team, including AUSA Sagel, one of the things

09:55   23   that you learned on that day in July was that attorney time

09:55   24   records were kept in Tabs, not within a program on the

09:55   25   servers called FileSite, right?

38

| | | |
|---|---|---|
| 09:55 | 1 | A      I don't recall that. |
| 09:55 | 2 | Q      Please take a look at the second to the last page, |
| 09:55 | 3 | middle of the page, and see if that refreshes your |
| 09:55 | 4 | recollection. |
| 09:55 | 5 | A      (Witness complies.)  Can you ask your question again. |
| 09:56 | 6 | Q      Yes, sir.  One of the things that you learned that day |
| 09:56 | 7 | together with Mr. Sagel and others was that attorney time |
| 09:56 | 8 | records were kept in Tabs on the EA servers, not on |
| 09:56 | 9 | FileSite? |
| 09:56 | 10 | A      Yes. |
| 09:56 | 11 | Q      And another thing you learned about Tabs was that it |
| 09:56 | 12 | was accessible via a desktop icon at the law firm, right? |
| 09:56 | 13 | A      Yes. |
| 09:56 | 14 | Q      And then you asked Ms. Regnier about client billing and |
| 09:56 | 15 | accounting records.  Do you recall that? |
| 09:57 | 16 | A      Yes. |
| 09:57 | 17 | Q      By the way, during this phone call who was asking the |
| 09:57 | 18 | questions? |
| 09:57 | 19 | A      Probably one of the prosecutors. |
| 09:57 | 20 | Q      So either Mr. Sagel or his former colleague Mr. Andre? |
| 09:57 | 21 | A      I think so. |
| 09:57 | 22 | Q      You were the one taking the notes, right? |
| 09:57 | 23 | A      Yes. |
| 09:57 | 24 | Q      Was anyone else taking notes? |
| 09:57 | 25 | A      No. |

09:57  1    Q    And that was in accordance with that policy and for the

09:57  2    reason that we mentioned earlier, right?

09:57  3    A    Yes.

09:57  4    Q    And when Ms. Regnier was asked about how the client

09:57  5    billing and client accounting records were kept at the law

09:57  6    firm, she identified Tabs; didn't she?

09:57  7    A    Yes.

09:58  8    Q    Sir, during the interview with Ms. Regnier on July 25tj

09:58  9    when you were taking your notes, did you make it a point to

09:58  10   write down what Ms. Regnier said?

09:58  11   A    Yes -- not word for word.

09:58  12   Q    Do you recall anything that she said that you left out?

09:58  13   A    No.

09:58  14   Q    You understood at the time it was important for you to

09:58  15   record anything of any substance that Ms. Regnier said in

09:58  16   response to this inquiry about how the electronic data was

09:58  17   maintained on the servers, right?

09:58  18   A    Yes.

09:59  19   Q    During this 40-minute phone call, Ms. Regnier mentioned

09:59  20   Tabs at least twice, correct?

09:59  21   A    Yes, I believe so.

09:59  22   Q    How many times did she mention QuickBooks during this

09:59  23   interview?

09:59  24   A    (Witness reading document)  I don't see it in my notes.

10:01  25   Q    So as of the conclusion of the interview, you were

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:01 | 1 | aware that according to Ms. Regnier there was Tabs data on |
| 10:01 | 2 | the servers, correct? |
| 10:01 | 3 | A    That's what she said. |
| 10:01 | 4 | Q    Did you have any reason to dispute that? |
| 10:01 | 5 | A    I had no idea whether it was true or not. |
| 10:01 | 6 | Q    What did you do next to find out, sir? |
| 10:02 | 7 | A    I don't recall. |
| 10:02 | 8 | Q    How about nothing?  Does that refresh your |
| 10:02 | 9 | recollection, Special Agent Karlous? |
| 10:02 | 10 | A    No, it does not. |
| 10:03 | 11 | Q    As you sit here today, two years after being told in |
| 10:03 | 12 | the conference call with other members of the investigative |
| 10:03 | 13 | team about the Tabs data, as you sit here today, do you |
| 10:03 | 14 | recall a single thing that you or anyone else did to confirm |
| 10:03 | 15 | or deny the existence of the Tabs data on the servers? |
| 10:03 | 16 | A    I don't know if we have the Tabs data. |
| 10:03 | 17 |         MR. AVENATTI:  Move to strike. |
| 10:03 | 18 |         THE COURT:  It will be stricken. |
| 10:04 | 19 |         MR. AVENATTI:  Can I have it read back, please? |
| 10:04 | 20 |         THE COURT:  Yes. |
| 10:04 | 21 |      (Record read) |
| 10:04 | 22 |         THE WITNESS:  I don't know. |
| 10:04 | 23 | BY MR. AVENATTI: |
| 10:04 | 24 | Q    After you got off that call, do you have a recollection |
| 10:04 | 25 | of sending anyone an e-mail about the Tabs data ever? |

10:04  1    A    I don't recall sending an e-mail, no.

10:04  2    Q    How about a text message?  Do you recall sending a text

10:04  3    message at any point in time between July 25th, 2019, and

10:04  4    this trial, actually until you took the stand today, and

10:04  5    inquiring about the Tabs data?

10:04  6    A    No, I didn't send a text message.  No.

10:04  7    Q    Letter?  Did you send a letter?

10:04  8    A    Me personally?  No.

10:04  9    Q    Did you place a phone call?

10:04  10   A    Me personally?  No.

10:04  11   Q    Okay.  Well, in light of your answer of me personally,

10:04  12   let me ask you this:  Are you aware of anyone on the

10:04  13   investigative team in the last two years making an inquiry

10:05  14   as to whether the Tabs data was included within the forensic

10:05  15   images of the servers?

10:05  16   A    It may have occurred, but I wouldn't know.

10:05  17   Q    Well, a lot of things may have occurred.  My question

10:05  18   is not whether they may have occurred.  My question is, sir:

10:05  19   Do you have a recollection of anyone doing that?

10:05  20   A    Possibly.  I don't know.

10:05  21   Q    Possibly you have a recollection, or you don't have a

10:05  22   recollection but it possibly may have happened?

10:05  23        MR. SAGEL:  Objection, Your Honor.  Argumentative.

10:05  24   asked and answered.

10:05  25        THE COURT:  Overruled.

| | | |
|---|---|---|
| 10:05 | 1 | THE WITNESS:  I don't know. |
| 10:05 | 2 | BY MR. AVENATTI: |
| 10:05 | 3 | Q    As you sit here today, you know of no such instance, |
| 10:05 | 4 | true? |
| 10:05 | 5 | A    I don't -- |
| 10:05 | 6 | Q    Just answer my question. |
| 10:05 | 7 | A    I do not. |
| 10:05 | 8 | Q    Okay.  Over the last two years, was that something that |
| 10:06 | 9 | interested you, namely, whether this data about the expenses |
| 10:06 | 10 | for the clients existed? |
| 10:06 | 11 | A    We wanted all that data, and we were waiting on the |
| 10:06 | 12 | taint team. |
| 10:06 | 13 | MR. AVENATTI:  Move to strike, Your Honor. |
| 10:06 | 14 | THE COURT:  It will be stricken. |
| 10:06 | 15 | MR. AVENATTI:  Can I have it read back, please? |
| 10:06 | 16 | THE COURT:  Yes. |
| 10:06 | 17 | (Record read) |
| 10:06 | 18 | BY MR. AVENATTI: |
| 10:06 | 19 | Q    Yes or no, sir? |
| 10:06 | 20 | A    Yes.  We wanted all financial records. |
| 10:07 | 21 | Q    You wanted all financial records relating to me, the |
| 10:07 | 22 | law firm, and my businesses, right? |
| 10:07 | 23 | A    Yes. |
| 10:07 | 24 | Q    And that was at all times from March 25th, 2019, to the |
| 10:07 | 25 | present, right? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:07 | 1 | A    Yes. |
| 10:07 | 2 | Q    In whatever form those records were, whether it be |
| 10:07 | 3 | electronic or hard copy, right? |
| 10:07 | 4 | A    Yes. |
| 10:08 | 5 | MR. AVENATTI:  One moment, Your Honor, please. |
| 10:08 | 6 | (Pause in proceedings) |
| 10:08 | 7 | BY MR. AVENATTI: |
| 10:08 | 8 | Q    Special Agent Karlous, did you ever have any |
| 10:08 | 9 | discussions with Mr. Sagel or any other member of the |
| 10:09 | 10 | investigative team relating to the need to acquire the Tabs |
| 10:09 | 11 | data? |
| 10:09 | 12 | A    I don't recall. |
| 10:09 | 13 | Q    As you sit here today, you do not recall any such |
| 10:09 | 14 | instance, true? |
| 10:09 | 15 | A    I'm sure we did, but I don't recall specifics. |
| 10:09 | 16 | Q    Well, sir, do you have a recollection of you conversing |
| 10:09 | 17 | about that or not? |
| 10:09 | 18 | A    We must have. |
| 10:09 | 19 | Q    Well, let the record reflect you just held up your |
| 10:09 | 20 | interview notes, right? |
| 10:09 | 21 | A    Exhibit 1084. |
| 10:09 | 22 | Q    1084, the July 25th notes, correct? |
| 10:09 | 23 | A    Yes. |
| 10:09 | 24 | Q    Those notes don't reflect what your communications were |
| 10:09 | 25 | with Mr. Sagel and other members of the investigative team. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:12 | 1 | Q     Sir, isn't it true even before Ms. Regnier told you |
| 10:12 | 2 | what she told you on July 25th of 2019, that you believed |
| 10:12 | 3 | that there was accounting data and programs on the Eagan |
| 10:12 | 4 | Avenatti, LLP, servers? |
| 10:12 | 5 | A     Yes.  That's why we did a search warrant. |
| 10:13 | 6 | MR. AVENATTI:  Move to strike after yes as |
| 10:13 | 7 | nonresponsive, Your Honor. |
| 10:13 | 8 | THE COURT:  It will be stricken. |
| 10:13 | 9 | BY MR. AVENATTI: |
| 10:13 | 10 | Q     Mr. Karlous, do you have a recollection of conversing |
| 10:13 | 11 | with Ms. Regnier about QuickBooks? |
| 10:13 | 12 | A     I believe so. |
| 10:13 | 13 | Q     And do you have a recollection of Ms. Regnier informing |
| 10:13 | 14 | you that the QuickBooks records were incomplete? |
| 10:14 | 15 | A     I don't recall. |
| 10:14 | 16 | Q     Do you still have the interview memorandum from |
| 10:14 | 17 | November 19th, 2019, up there? |
| 10:14 | 18 | A     Yes. |
| 10:14 | 19 | Q     Take a look at paragraphs 16 and 17 and see if that |
| 10:14 | 20 | refreshes your recollection that Ms. Regnier informed you |
| 10:14 | 21 | that the QuickBooks records were incomplete. |
| 10:14 | 22 | A     Yes, because she told us it was. |
| 10:14 | 23 | MR. AVENATTI:  Move to strike, Your Honor. |
| 10:14 | 24 | THE COURT:  It will be stricken. |
| | 25 | |

| | | |
|---|---|---|
| 10:14 | 1 | BY MR. AVENATTI: |
| 10:14 | 2 | Q    Special Agent Karlous, what steps after November 19th, |
| 10:15 | 3 | 2019, did you take to see if there were any QuickBooks |
| 10:15 | 4 | records on the Eagan Avenatti servers? |
| 10:15 | 5 | A    My recollection is the taint team was made aware that |
| 10:15 | 6 | there were QuickBooks or -- and that we wanted them. |
| 10:15 | 7 | Q    Did you ever make anyone aware that there were Tabs |
| 10:15 | 8 | records and, to use your words, you wanted them?  Yes or no? |
| 10:15 | 9 | A    I don't recall. |
| 10:16 | 10 | Q    Mr. Drum testified that he used QuickBooks records in |
| 10:16 | 11 | connection with compiling his summaries.  Were you here for |
| 10:16 | 12 | that testimony? |
| 10:16 | 13 | A    Yes. |
| 10:16 | 14 | Q    Do you know where he got those QuickBooks records? |
| 10:16 | 15 | A    From the government. |
| 10:16 | 16 | Q    What version of the data file did he use?  Do you have |
| 10:16 | 17 | any idea? |
| 10:16 | 18 | A    Whatever the computer forensic people pulled off from |
| 10:16 | 19 | your server. |
| 10:16 | 20 |       MR. AVENATTI:  Move to strike, Your Honor.  It's |
| 10:16 | 21 | nonresponsive. |
| 10:16 | 22 |       THE COURT:  Denied. |
| 10:16 | 23 | BY MR. AVENATTI: |
| 10:16 | 24 | Q    Sir, is it your testimony that the QuickBooks records |
| 10:16 | 25 | that Mr. Drum used came off the Eagan Avenatti server?  Is |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

CERTIFICATE


        I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  August 18, 2021



                    /s/   Sharon A. Seffens  8/18/21
                    _____
                    SHARON A. SEFFENS, U.S. COURT REPORTER

## CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on August 18, 2021, service of the:

DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MISTRIAL, DUE TO THE GOVERNMENT'S (1) FAILURE TO PRODUCE INFORMATION AS REQUIRED BY RULE 16, *BRADY*, AND *GIGLIO*, AND (2) CONTEMPT OF THIS COURT'S JANUARY 25, 2021 ORDER [DKT. 706]

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 18, 2021

/s/ H. Dean Steward

H. Dean Steward

3