FILED
CLERK, U.S. DISTRICT COURT
8/18/21
CENTRAL DISTRICT OF CALIFORNIA
BY: ___LB___ DEPUTY

NINA MARINO, ESQ. (State Bar No. 142815)
CODY ELLIOTT, ESQ. (State Bar No. 334068)
KAPLAN MARINO, PC
1546 North Fairfax Avenue
Los Angeles, CA 90046
Tel: (310) 557-0007
Fax: (310) 861-1776
Email: marino@kaplanmarino.com
       elliott@kaplanmarino.com

Attorneys for Third Party
Evan Carter

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. SACR-19-00061-JVS |
| Plaintiff, | **THIRD PARTY EVAN CARTER'S REPLY TO OPPOSITION TO MOTION TO QUASH DEFENDANT'S SUBPOENA** |
| v. | |
| MICHAEL JOHN AVENATTI, | Hon. James V. Selna |
| Defendant. | Dept: 10C |

    Third Party Evan Carter by and through her attorneys of record Nina Marino and Cody Elliott hereby files this Reply to Defendant's Opposition to Third Party Evan Carter's Notice of Motion and Motion to Quash Subpoena in Criminal Case.

DATED: August 18, 2021

                                                    Respectfully submitted,
                                                  KAPLAN MARINO, PC

                                                  _____/s/_____
                                                  NINA MARINO
                                                  CODY ELLIOTT
                                                  Attorneys for Third Party
                                                  EVAN CARTER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Despite Defendant's heroic efforts to cast Evan Carter as a witness, the facts fail him. Defendant cannot transform Ms. Carter – a 30-year-old mid-level associate who executed tasks at the direction of her superior, John Drum, and coordinated meetings on his behalf – into an investigator on par with an FBI Special Agent. (See Marino Decl. ¶ 2.) Both the testimony of Mr. Drum, occurring over a day and a half, and the FBI 302 that Defendant alludes to, (Dt. No. 724 at 2), confirm that Mr. Drum is the appropriate witness in this case, not Ms. Carter.

## II. ARGUMENT

### A. Ms. Carter is not an FBI Special Agent

Defendant seeks to compare Ms. Carter to an FBI agent to establish her relevance as a witness when he says: "[a] witness need not be personally privy to the underlying criminal conduct but may instead be a witness to the series of events, including the investigation, after the offense has completed. If. [sic] Ms. Carter's interpretation of Rule 602 were correct, most federal agents, investigators, and other foundational or summary witnesses would be excluded as a result of a lack of personal knowledge." (Dkt. No. 724 at 5.) The problem with Defendant's analogy is that Ms. Carter was not a witness to the investigation. Ms. Carter's role was limited to: (1) executing the instructions given to her by Mr. Drum in connection with the summary charts and financial analysis; (2) scheduling meetings; and (3) participating in a mock examination with Mr. Drum to prepare him for testimony. (See Marino Decl. ¶ 2.) None of these tasks are the equivalent of witnessing an investigation.

### B. Mr. Avenatti's Identification of What Ms. Carter Could Testify to is Incorrect

Defendant argues that "Ms. Carter has personal knowledge and could testify regarding the following facts relevant to this case…" (Dkt. No. 724 at 5.) However, any testimony that Ms. Carter has to offer on this matter would be needlessly cumulative of Mr. Drum's testimony and therefore inadmissible under Fed. R. Evid. § 403.

(1) Ms. Carter did not prepare the summary charts. Those charts were prepared by a team at Mr. Drum's direction prior to Ms. Carter's assignment. (Marino Decl. ¶ 2.) During the end of

May or early June 2021, pursuant to the instructions given to her by Mr. Drum, Ms. Carter was tasked with removing exhibits from the May 2020 draft summary that were deemed no longer relevant due to the tax charges being tried separately. (Id.) Ms. Carter performed this function exclusively in accordance with the instruction given to her by Mr. Drum – Ms. Carter did not make any independent decisions. (Id.) Ms. Carter removed references to a "flashy lifestyle" such as Porsche payments and private jets pursuant to the Court's order, and she performed financial analysis at Mr. Drum's direction. (Id.) Ms. Carter was also tasked with making the exhibits more user friendly by removing source citations such as bates number references for bank documents. (Id.) Mr. Drum confirmed when he testified that he prepared "every one" of the exhibits with the assistance of "a team working at [his] direction." (Transcript 8.13.21 Vol. 1 p. 117.)

(2) Any testimony Ms. Carter could offer in connection with the "analysis of Mr. Avenatti and the law firm's finances" would be cumulative of the testimony of John Drum because Ms. Carter did not perform any analysis of the law firm's finances beyond that directed by Mr. Drum to be performed. (Marino Decl. ¶ 2; see Fed. R. Evid. § 403.)

(3) Any testimony Ms. Carter could offer regarding the "mock examination" of Mr. Drum would not be relevant because engaging in a pretend examination does not meet the test for relevance as reflected in Fed. R. Evid. § 401.

(4) Any testimony Ms. Carter could offer regarding "the sources used [by Mr. Drum] in performing the analysis" would be cumulative of Mr. Drum's testimony and therefore not admissible pursuant to Fed. R. Evid. § 403[1].

(5) Any testimony Ms. Carter could offer regarding her communications with the government would likewise be cumulative of Mr. Drum's testimony and therefore not admissible pursuant to Fed. R. Evid. § 403, especially given that Mr. Drum was included on every one of those communications. (Marino Decl. ¶ 2.)

(6) Ms. Carter cannot offer any testimony regarding the "scope and manner of the government's investigation" because Ms. Carter has neither insight nor knowledge of the scope

---

[1] While Rule 403 governs the inadmissibility of otherwise relevant evidence, Ms. Carter **does not** concede that her testimony is relevant.

and manner of the government's investigation and Ms. Carter did not participate in any such investigation. Mr. Drum's testimony does not suggest otherwise.

### C. Defendant's Subpoena for Documents Fails to Articulate Specificity as Required by *Nixon*

The court in *United States v. Nixon* held that a moving party must identify the subpoenaed materials with specificity in order to require disclosure. 418 U.S. 683, 700 (1974); *see also United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (holding that requesting entire files rather than specific documents indicates a fishing expedition); *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980) ("…defendants admitted that they did not know whether the statements . . . contained any exculpatory information. Thus, the defendants' broad request . . . was based solely on the mere hope that some exculpatory material might turn up. We do not think that this 'mere hope' justifies enforcement of a subpoena under rule 17(c)."). Here, Defendant has failed to identify the existence of any exculpatory evidence in Ms. Carter's communications, instead relying on "mere hope" that something will turn up. Such hope does not justify enforcement under Rule 17(c). This is a fishing expedition, and it is what the law clearly seeks to avoid.

### D. Compliance with the Subpoena Would be Burdensome and Oppressive

The fact that Ms. Carter traveled to California once already, during a pandemic, as part of her job duties at Analysis Group, does not diminish the burden of an additional trip during a pandemic for the purpose of providing irrelevant and inadmissible testimony.

### E. Any Burden of Production of Emails Between Analysis Group and the Government Should Fall on the Government

In response to questioning, Mr. Drum explained that at Analysis Group "[t]here's an automatic system that deletes e-mails[]…[a]fter 30 days" and that he has not maintained all emails between him and the government. (Transcript 8.13.21 Vol. 2 p. 11.) Mr. Drum also testified that he did not instruct Ms. Carter to preserve her emails in connection with this matter. (Transcript 8.13.21 Vol. 2 p. 13.) Therefore, Analysis Group is not able to produce all emails with the government.

//

### III. CONCLUSION

For the foregoing reasons, Ms. Carter respectfully requests that this Court grant this Motion to Quash Defendant's Subpoena.

DATED: August 18, 2021

Respectfully submitted,
KAPLAN MARINO, PC

___/s/_____
NINA MARINO
CODY ELLIOTT
Attorneys for Third Party
EVAN CARTER