TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2435
     Facsimile: (213) 894-6269
     Email:     Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:     Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR MOTION FOR A MISTRIAL (CR 706) |
| v. | |
| MICHAEL JOHN AVENATTI, | *Exhibit 1 filed under seal* |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Alexander C.K. Wyman, hereby files its Opposition to Defendant's Motion to dismiss or, in the alternative, motion for a mistrial, for discovery violations (CR 706).

This Opposition is based upon the attached memorandum of points and authorities, Exhibit 1 filed contemporaneously under seal, the evidence and testimony at trial, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 19, 2021                Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


          /s/
_____
BRETT A. SAGEL
ALEXANDER C.K. WYMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On August 15, 2021, defendant filed the present motion to dismiss or alternatively for a mistrial for purported discovery violations that defendant specifically raised for the first time, according to defendant, on August 12, 2021.  Although defendant now claims that the Tabs data is critical for his defense, defendant never once in numerous filings over two years mentioned Tabs data even after the government specifically identified it in a prior filing.  The prosecution team has produced what it has in its possession and has complied with its discovery obligations.  Defendant's filing is not founded in law or fact and the Court should deny it in its entirety.

**II.  ARGUMENT**

**A.   Procedural Background**

On July 28, 2019, defendant sought "unfettered access" to the Eagan Avenatti LLP ("EA LLP") servers claiming access to the servers was critical to defendant's defense.  (CR 50.)  Defendant made no reference to Tabs data or the need for access to Tabs.  On August 12, 2019, the government opposed defendant's request for "unfettered access" because, among other reasons, the servers did not belong to defendant, but noted that the government had offered alternative procedures to defendant for over three months to have access to the servers.  (CR 55.)  The government had offered defendant to work with the Privilege Review Team or the EA LLP receiver, but defendant refused the alternatives.  The government also stated that defendant failed to identify with any specificity any files or documents he believed he were missing or needed, and the government identified the

financial records the government had already produced, including the QuickBooks files. (Id.)[1]

On August 19, 2019, defendant filed a reply and failed to address anything in the government's opposition other than to continue to claim he wanted unfettered access to the EA LLP servers. (CR 62.) The Court denied defendant's motion under Rule 16 or other discovery authority, ruling that neither defendant's "broad brush demand for 'unfettered' access to the Subject Devices nor his list of categories" provided defendant with a right to the EA LLP servers. (CR 63.) The Court remarked that the government was already producing financial discovery, including the QuickBooks records, and defendant had two alternative means to obtain the records he sought, but failed to avail himself to them (including working with the Privilege Review Team or the EA LLP receiver). (Id.)

After the Court denied defendant's request for unfettered access to the EA LLP servers, the government agreed to defendant's request (which he had made for the first time) to review the EA LLP servers and arranged for defendant to meet with the Privilege Review Team at IRS-CI's offices in Los Angeles. To facilitate defendant's review, an IRS-CI computer investigative specialist was able to set up a virtual computer system to access and search the forensic copy of the

---

[1] In defendant's motion, he claims the government only produced one version of QuickBooks in the discovery (CR 706 at 1); however, this is not accurate. The government produced QuickBooks in its native format on two occasions on June 5, 2019 (USAO_00119925), and August 26, 2019 (USAO_00164123), as defendant can certainly see from the detailed discovery index the government provides with each discovery production. Although the native versions of the QuickBooks files are currently in Los Angeles so the undersigned cannot review them at this time to verify, it is the government's understanding that the native QuickBooks files allow the user to see the various versions saved over time -- and the government used and/or provided to its expert the last in time version of the files.

EA LLP server based on what defendant sought.[2]  Defendant visited IRS-CI on two occasions in September and October 2019, and the computer investigative specialist ran searches on the EA LLP servers at defendant's request.  Based on defendant's visits and search requests, he was provided over 51,000 files in October 2019 from the servers.  (See CR 195 at 5.)  After the productions in October 2019, defendant neither requested any further documents or files from the servers nor requested to visit or review the servers again until filing a motion in June 2020.

After the Privilege Review Team produced the search warrant returns from the EA LLP digital devices, including the servers, both the potentially privileged and non-privileged material, on June 15, 2020, defendant sought further access to the EA LLP devices claiming he needed access to critical material for his defense.  (CR 193.)  Defendant again did not mention Tabs.  On June 22, 2020, the government opposed defendant's motion noting, among other reasons, that defendant simply offered vague and conclusory claims that he was entitled to the EA LLP servers.  (CR 195.)  The government even stated that defendant failed to identify any specific evidence or files that he claimed were not produced.  The government described in detail (and attached exhibits) the records that were obtained from the search (and were in the possession of the prosecution team),

---

[2] Defendant claims in his motion that he was permitted access to certain emails and client pleadings on the server, but was not permitted any access to any other files, data, or software programs on the servers.  (CR 706 at 7.)  Not surprisingly, this statement is not supported by any declaration or exhibit as it is simply false.  The computer investigative specialist, who will testify according to defendant today, will state that he provided defendant with what defendant requested and at no point prohibited his access to any files, data, or software programs on the servers.

3

including cost and fee information. The government provided examples of the QuickBooks records produced to defendant (CR 195 Exs. 3-5) as well as the Tabs cost bills attached to emails sent to defendant (id. Exs. 6-7). These emails with Tabs printouts are what the government introduced into evidence at trial. (Trial Exhibits 48, 174). Despite producing these examples of Tabs printouts in June 2020, defendant never once asked for the Tabs data prior to trial.

Defendant did not raise the Tabs data at the hearing on his motion seeking further access to the EA LLP servers. The Court addressed defendant's claims as well as "how th[e] situation came about." (RT 7/6/20 at 11.) The Court first recognized that the government provided defendant opportunities to meet with the Privilege Review Team to search the EA LLP servers, which defendant only availed himself of twice the previous year, but had made no efforts since. (Id.) The Court, citing Pennsylvania v. Ritchey, 480 U.S. 39, 59 (1987), found there was no discovery obligation to provide defendant further access, but if "defendant believes that there is a gap in the production, the defendant flags that for the Court by way of a Motion to Compel." (RT 7/6/20 at 12-13.) The Court denied defendant's motion. (CR 199.)

Defendant filed a civil contempt motion, which included allegations that the government failed to produce "exculpatory financial information relating to fees and expenses." (CR 415 at 8.) The government responded that the information was not in its possession, likely did not exist, or was provided to defendant in the discovery the government previously produced. (CR 418 at 14.) The government detailed the financial records that the government had produced to defendant relating to fees and expenses and remarked that

4

it was not the first time defendant failed to specify any such missing exculpatory financial materials. (Id.) Defendant filed a reply and itemized things he did not believe he received in discovery, but did not identify any financial documents or programs, specifically Tabs. (CR 428.)

As defendant elicited at trial, there were two references to Tabs in memoranda of interviews ("MOI") with Judy Regnier on July 25, 2019, and November 19, 2019. These MOIs were produced to defendant in discovery in this case on October 5, 2019, and March 17, 2020, respectively.[3] At least as of the time of the filing in June 2020, defendant had the reports referencing Tabs data, and after the government filed its opposition on June 22, 2020, defendant knew what the prosecution team had in its possession in relation to the Tabs data -- or printouts of the data attached to emails. Moreover, in drafting this opposition, the government conducted a search in its electronic database for key words similar to the Tabs printouts in Trial Exhibits 48 and 174 and was able to identify approximately 15 similar printouts, which are filed contemporaneously under seal as Exhibit 1. All of these printouts have long since been produced in discovery.

Defendant now claims, "As for Tabs, the government has never produced the data nor has [defendant] ever been given access to the electronic Tabs data despite his requests and its clear relevance and importance to the defense." (CR 706 at 2.) Defendant's motion makes

---

[3] Although the November 19, 2019, MOI of Judy Regnier was not produced to defendant in this case until March 17, 2020, defendant received this MOI as part of his Jencks production in the SDNY Nike matter in December 2019.

clear, however, that the first time defendant ever asked specifically for Tabs data was on August 12, 2021. (Id.)

### B. The Government Has Produced What Is in the Prosecution Team's Possession

The government's discovery obligations generally extend to materials that are in the possession of the government's prosecution team. See United States v. Cano, 934 F.3d 1002, 1023 (9th Cir. 2019) (materials "in the possession of the government" are those that the prosecution team "has 'knowledge of and access to'" (quoting United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989)).

As the government has provided to the Court and defendant in numerous previous filings, defendant received everything the prosecution team received from the EA LLP digital devices and more. The prosecution team did not conduct the review of the digital devices, and at no point in over two years, despite numerous filings, did defendant ever identify Tabs as something he wanted or was missing. Moreover, defendant had access to the forensic image of the EA LLP server and was provided anything he asked for on the server. Defendant only availed himself of the server on two occasions and presumably never asked for anything related to Tabs. The Court can and should see these latest allegations for what they are: baseless.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion in its entirety.