Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 497-6753

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MISTRIAL, DUE TO THE GOVERNMENT'S (1) FAILURE TO PRODUCE INFORMATION AS REQUIRED BY RULE 16, *BRADY*, AND *GIGLIO*, AND (2) CONTEMPT OF THIS COURT'S JANUARY 25, 2021 ORDER |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") filed a Motion to Dismiss or, in the Alternative, Motion for Mistrial due to the Government's (1) Failure to Produce Information as Required by Rule 16, *Brady, Giglio*, and (2) Contempt of this Court's January 25, 2021 Order. The government filed an Opposition. [Dkt. 737]. Mr. Avenatti submits the following Reply.

Dated:  August 19, 2021                    Respectfully submitted,

                                                    /s/ Michael J. Avenatti

                                                    Defendant
                                                    MICHAEL JOHN AVENATTI

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND FACTUAL BACKGROUND

On August 15, 2021, Mr. Avenatti filed a Motion for Mistrial due to the Government's (1) Failure to Produce Information as Required by Rule 16, *Brady, Giglio*, and (2) Contempt of this Court's January 25, 2021 Order. [Dkt. 706]. On August 19, 2021, the government filed an Opposition. [Dkt. 737]. The government makes two primary arguments. <u>First</u>, the government claims that defendant never once mentioned Tabs data. Second, the government claims that that "the prosecution team" has produced what is in its "possession" and has complied with its discovery obligations. The government <u>ignores</u> Mr. Avenatti's specific requests for the accounting data, its well-established duty to investigate exculpatory material, and its obligation to produce materials beyond what is in the possession of AUSA Sagel and AUSA Wyman. Indeed, the government attempts to shift the burden to Mr. Avenatti while ignoring its own, independent obligation to produce Brady information irrespective of what Mr. Avenatti does.  The government also <u>ignores</u> the remedies prescribed under the law as it relates to *Brady* violations. Attached as Exhibit 1, the government provided the Court with various printouts from Tabs including Government Trial Exhibit 48, 174 and fifteen similar draft Tabs printouts. To be clear, Mr. Avenatti has consistently sought access to the Tabs **<u>DATA</u>**, not seventeen, incomplete draft printouts from the Tabs software of unknown origin.

In its opposition and in an effort to avoid having the Court focus on a key assurance the government made to the defendant in the Spring of 2019, the government attempts to begin the story of Mr. Avenatti's attempt to gain access to the servers on July 28, 2019.  In reality, however, and as the government well knows, the saga began well prior to this date.  Indeed, Mr. Avenatti first requested a copy of the data from the servers and all relevant Rule 16, *Brady* and *Giglio* information via a letter from his

counsel dated <u>May 15, 2019</u> (immediately after his counsel was retained in the case). *See* Exhibit A.  The word "servers" is mentioned **ten times** in the letter, as are the words "computers" and "drives."  Further, *Brady* is mentioned at least twice, with a particular *Brady* demand being included at paragraph 19.

One week later, having not received any electronic evidence nor any comfort from the government that such evidence would be forthcoming, Mr. Avenatti's counsel sent another letter to the government specifically addressing the importance of getting a copy of the servers.  *See* Exhibit B.  In the letter, he described the prejudice to the defense caused by the government continuing to withhold the data.  He demanded that the forensic images be provided no later than Tuesday, May 27 and also requested an inventory.  On May 24, 2019, the government provided a response, but refused to provide copies of the data as Mr. Avenatti had requested.  *See* Exhibit C.  Importantly, however, the government promised that it would provide Mr. Avenatti with a copy of all of the relevant information from the servers, stating as follows (their words):

> In connection with the government's investigation, the Court-appointed Receiver for EA LLP (the "EA Receiver") consented to IRS-CI creating forensic image of the six digital devices that comprise the EA LLP server (collectively, the "EA LLP server"), which were being stored by MixinIT, a company in Orange County that stored and managed computer servers. After creating a forensic image of the EA LLP server, the EA LLP server was returned to the EA Receiver. [fn omitted] The government has since obtained a warrant to search the forensic copy of the EA LLP server for relevant evidence. **<u>We will produce any relevant evidence seized from the EA LLP server once the government completes the review protocols set forth in the search warrant</u>**. We, however, have significant concerns regarding producing a forensic copy of the EA LLP server to the defendant at this time.

In other words, the government lulled the defendant into believing that the government understood their obligations and would comply with them.  Indeed, they stated as much.

Two months later, Defendant next filed a motion to compel [Dkt. 50], which defendant referenced in his opening brief on this motion, together with providing a detailed timeline of what transpired following the filing of the motion. [Dkt. 706, p. 6.]. On July 31, 2019, Mr. Avenatti's counsel sent an e-mail to the government explaining the importance of getting a copy of the servers so that Mr. Avenatti can "attempt to access the information" and "prepare his defense." *See* Exhibit D. Counsel further noted "[s]eeing as you have already copied the servers, providing a copy of your copy is hardly burdensome." Counsel concluded by stating, "Time is of the essence, especially in light of the amount of information necessary to review." The government still refused to provide a copy of the data. The motion was later denied by the Court after the government made the same representations to the Court that had been made to the defendant, namely that the government would comply with its obligations. [Dkt. 53, p.3] Further, as set forth in the motion [Dkt. 706, pp. 6-11], defendant continued in the months that followed to attempt to get the data he needed to no avail.[1] And as of this filing, he still does not have the data despite requesting it repeatedly over the last week in open court.

For the reasons set forth below, as well as those described within the defendant's original filing, the Court should dismiss the Indictment. In the alternative, the Court should declare a mistrial.

## II.   LEGAL STANDARD

### A.   The Government Ignores, and Fails to Respond to, Arguments Regarding its Duty to Investigate & Identify Exculpatory Material

The government is not permitted to escape its discovery obligations by imposing on the defendant a duty to investigate exculpatory materials to which the defendant is

---

[1] The defendant will be prepared to address the erroneous claims of the government that defendant was granted unfettered access to the servers at the hearing on this matter.

3

already entitled under *Brady* and which the government already has in their possession. Indeed, the "obligations imposed by *Brady* are not limited to evidence prosecutors are aware of, or have in their possession." *United States v. Bruce*, 984 F.3d 884, 895 (9th Cir. 2021). "Prosecutors cannot turn a blind eye to their discovery obligations." *Id.* at 897 (rejecting the government's argument that because there were references to unproduced materials in the documents the prosecution did produce, it was incumbent upon the defense to investigate and uncover potentially favorable evidence itself). The law under *Brady* places "an affirmative duty on the prosecutor to seek out information in the government's possession that is favorable to the defendant. *United States v. Grace*, 401 F. Supp. 2d 1069, 1075 (D. Mont. 2005). The Supreme Court in *Kyles v. Whitley*, 514 U.S. 419 (1995) made it abundantly clear that, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case … whether, that is, a failure to disclose in good faith or bad faith --  the prosecution's responsibility for failing to disclose known and favorable evidence rising to a material level of importance is inescapable. " *Id.* at 1075-76 (emphasis added).

Further, the government is not relieved of its discovery obligations under *Brady* by "merely providing access to 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack." *United States v. Hsia*, 24 F.Supp. 2d 14, 29 (D.D.C. 1998); *United States v. Cutting*, 2017. U.S. Dist. LEXIS 5006, at *24-25 (N.D. Cal. 2017)(holding that in cases involving large amounts of data including multiple gigabytes and millions of pages of documentary information, the government was required to identify by Bates number the *Brady/Giglio* material in discovery that has been produced); *United States v. Thomas*, 981 F.Supp. 2d 229, 239 ("the government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials."); *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987)("The government did not fulfill its obligations merely by providing mountains of documents to defense counsel who were left unguided."); *United States v.*

*Eghbal Saffarinia*, 424 F.Supp. 3d 46, 86 (D.D.C. 2020)("the government's *Brady* obligations require it to identify any known *Brady* material to the extent that the government knows of any such material in its production of approximately 3.5. million pages.").

In *United States v. Blankenship*, 2015 U.S. Dist. LEXIS 76287, at. (S.D. W. Va. 2015), the defendant sought an order directing the government to identify *Brady* material after claiming that the government was hiding exculpatory materials within four million pages of discovery. The court determined the government should "designate any known *Brady* material as such and disclose the same to defense counsel.  In other words, without more, the United States does not comply with the requirement of *Brady* by merely including all known *Brady* material within the four million plus pages of discovery." *Id.* *16. The government, "having determined the nature of the charges and having the knowledge of the evidence and witnesses it intends to produce to prove those charges, is in a far better position than the Defendant to know what evidence might be exculpatory and/or impeachment material under *Brady*." *Id.* at *17.

In *United. States v. Sayler*, 2010 U.S. Dist. LEXIS 77617, at *12-13(E.D. Cal. 2010), the Court similarly made it clear that mass document dumps with no effort to provide the specific exculpatory materials did not satisfy the government's obligations under *Brady*:

> During the course of any large case investigation, investigators and attorneys are going to have to review and organize the sometimes immense amount of evidence that is acquired. During the course of the years long investigation in this case, the government personnel seemed to be able to segregate that evidence which would be useful in the prosecution in terms of guilt, but apparently made no efforts to segregate that evidence which runs counter to the charges. Assuming for the moment that some *Brady/Giglio* evidence, as the court has defined it below, exists, the reviewing personnel apparently made no note of the evidence, or merely having noted it, "stuck it back" in the ever-increasing pile to be an inevitably hidden part of the mass disclosure. The obligations imposed by *Brady* et al. have been well established for years, and should be anticipated in every case during the investigation phase. If the

government argues that it is now "impossible" to comply with the burden of reviewing evidence for identification purposes, the government more or less made its own bed in this matter by making it impossible.

Even these cases are dissimilar to the cases before the Court because in Mr. Avenatti's matter, according to SA Taschyan's testimony today, the servers total approximately five terabytes of data. This is an enormous amount of data totaling in excess of **over 1 billion pages of printed text (not a typo)**.[2] Not only has the government failed to identify the *Brady* and *Giglio* contained within these files, the government has failed to produce the Tabs data. As demonstrated in Mr. Avenatti's initial filing, beginning in early 2019, defendant has repeatedly demanded that the government produce all financial records relating to the clients identified in the

---

[2] *See Schwartz v. United States*, 828 Fed.Appx. 628, 634 n. 3 (11th Cir. 2020):

> What is a terabyte? Well, it depends on the medium (print, photo, video, etc.), but at bottom it is a number of bytes of information. Three terabytes is approximately thirty with twelve zeros following, or 3 million million, or 3 trillion bytes. According to various cases, printed text gets the best bang for the buck: Three terabytes of plain text would be approximately 3,000 gigabytes (GB), or the equivalent of 1.5 trillion pages of plain (or "typewritten") text. *See Laethem Equip. Co. v. Deere & Co.*, No. 05-10113, 2008 WL 11355558, at *4 n.1 (E.D. Mich. Dec. 3, 2008) (citation omitted); *Haka v. Lincoln Cnty.*, 246 F.R.D. 577, 578 n.1 (W.D. Wis. 2007).

> According to the conversion rate found in *McNulty v. Reddy Ice Holdings, Inc.*, 3 terabytes would equal approximately 660 million pages of "printed text." 271 F.R.D. 569, 570 n.1 (E.D. Mich. 2011). Without delving into the distinctions between "plain" text and "printed" text, let's just say a terabyte is more than a little information. Three terabytes would hold 3,000 copies of the Encyclopedia Britannica, or 30% of the printed collection of the Library of Congress. *United States v. Salyer*, Cr. No. S-10-0061-LKK, 2011 WL 1466887, at *1 n.2 (E.D. Cal. Apr. 18, 2011) (quotation omitted), *report and recommendation adopted*, Cr. No. S-10-061-LKK, 2011 WL 1811211 (E.D. Cal. May 12, 2011).

indictment, including all information relating to the calculation of fees and expenses. These efforts have included filing multiple motions with the Court. Time and time again the government represented to the Court and the defense that all financial information had been produced, including all *Brady* information.  This has now been shown to be demonstrably false, as the government finally admitted that the Tabs data was never produced.  The prejudice resulting from this misconduct cannot be overstated.

**B.     The Government Improperly Limits the Scope of its Discovery Obligation**

The government routinely argues that it has complied with its discovery obligations by stating that it has provided Mr. Avenatti with what is in the "prosecution team's possession." *See, e.g.,* Dkt. 737, p. 8. The government claims that its discovery obligations extend merely to "materials that are in the possession of the government's prosecution team." *Id. citing United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir.  2019) and *United States v. Bryan*, 868 F.2d. 1032, 1036 (9th Cir. 1989). But the government conveniently omits the sentence the follows the passage it quotes, which states, "Knowledge and access are presumed if the agency participates in the investigation of the defendant." *Cano*, 934 F.2d at 1023; *citing Bryan,* 868 F.2d 1036 ("the prosecutor will be deemed to have knowledge of and access to <u>anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant</u>.")(emphasis added).

In addition to its obligations under *Brady*, the Ninth Circuit's interpretation of Rule 16(a)(1)(E) makes it clear that the government's possession, custody or control "extends beyond that which is in the physical possession of the prosecutor. Information in the hands of other federal agencies must also be turned over if the prosecutor has knowledge of and access to the documents sought." *Bryan*, 868 F.2d 1032 (9th Cir. 1989)

The critical inquiry is whether the <u>government</u> has the Tabs data. When asked by the Court whether the <u>government</u> has the Tabs data, AUSA Sagel instead stated, "Everything that is in the prosecution team's possession he has." The Court asked again, "Does the government have the Tabs data?" *See e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 16. AUSA Sagel represented to the Court, "with regard to the Tabs, I don't know where – if it even exists and so forth. So I don't know about the extractions. We don't have anything in our database separate of Tabs and so forth." *See e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 17. This response speaks volumes.

Further, as established by Mr. Avenatti's initial motion, the defendant has requested these materials <u>for years</u>. This is obvious by his numerous letters demanding discovery and his motions before this Court.

Finally, Mr. Avenatti could not have gained access to any materials he sought. As established, Mr. Avenatti was provided minimal access to the servers. Even when he was provided access, the items he was permitted to access were limited. On August 19, 2021, Nshan Taschyan testified in the defense case. SA Taschyan stated that Mr. Avenatti did not have unlimited access to the EA LLP database as the government argues in its brief.[3] Instead, SA Taschyan testified that everything Mr. Avenatti had access to on the physical EA LLP servers in Los Angeles needed to be specifically approved by an attorney within the United States Attorneys' Office. SA Taschyan agreed that MA did not have unlimited access to the servers and would not be permitted to obtain anything he sought.

Mr. Avenatti has now been forced to defend himself during this action without access to these exculpatory materials and has been severely prejudiced as a result. Without knowing the precise calculations contained in both the Tabs and the QuickBooks data, it is impossible to know the costs, fees, expenses and other hourly work performed in connection with each of the alleged victims.

---

[3] At the time of this filing, Mr. Avenatti has not yet received the transcript from today's proceeding and paraphrases the testimony from memory and notes.

## III.   **CONCLUSION**

For each of the reasons set forth above, Mr. Avenatti respectfully requests that the Court dismiss Counts 1 through 10 as a result of the government's misconduct, blatant discovery failures, interference with Mr. Avenatti's right to due process and the resulting severe prejudice.  In the alternative, Mr. Avenatti requests that the Court declare a mistrial.

Dated:  August 19, 2021                          Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**EXHIBIT A**

28

# H. Dean Steward
ATTORNEY AT LAW

107 Avenida Miramar
Suite "C"
San Clemente, CA 92672
949-481-4900

May 15, 2019

Brett Sagel & Julian Andre
Asst. U.S. Attorneys
411 W. 4th St., 8th Floor
Santa Ana, CA 92701

Re: US v. Michael Avenatti discovery

Gentlemen-

I request the following discovery:

1.  All documents, information, materials, electronic information,
etc. referenced in the complaint, including but not limited to
forensic copies of all electronic files, computers, servers, drives,
USB keys, cell phones, and iPads.

2.  All documents, information, materials, electronic information,
etc. referenced in the indictment, including but not limited to
forensic copies of all electronic files,  computers, servers, drives,
USB keys, cell phones, and iPads.

3. All documents, information, materials, electronic information,
etc. obtained from Michael Avenatti at the time of his arrest,
including but not limited to forensic copies of all electronic files,
computers, servers, drives, USB keys, cell phones, and iPads.

1

4. All documents, information, materials, electronic information, etc. obtained from Judy Regnier and/or a search of the residence of Judy Regnier, including but not limited to forensic copies of all electronic files, computers, servers, drives, USB keys, cell phones, and iPads.

5. All documents, information, materials, electronic information, etc. obtained from Filippo Marchino and/or The X-Law Group or any corresponding search including but not limited to forensic copies of all electronic files, computers, servers, drives, USB keys, cell phones, and iPads.

6. All documents, information, materials, electronic information, etc. obtained from Brian Weiss and/or Eagan Avenatti, LLP or any corresponding search including but not limited to forensic copies of all electronic files, computers, servers, drives, USB keys, cell phones, and iPads.

7. All documents, information, materials, electronic information, etc. obtained from the residence of Michael Avenatti, including but not limited to forensic copies of all electronic files, computers, servers, drives, USB keys, cell phones, and iPads.

8. All documents, information, materials, electronic information, etc. obtained from Jason Frank, Andrew Stolper, or Scott Sims, including but not limited to forensic copies of all electronic files, computers, servers, drives, USB keys, cell phones, and iPads.

9. All documents, text messages, emails, materials, etc. relating to or reflecting any communications regarding Mr. Avenatti with Jason Frank, Andrew Stolper, or Scott Sims.

10. All documents, text messages, emails, materials, etc. relating to or reflecting any communications regarding Mr. Avenatti with Donald J. Trump, or any other individual employed at the White House, and William Barr of the Department of Justice.

11. Copies of any search warrants concerning Mr. Avenatti.

12.  Copies of any subpoenas concerning Mr. Avenatti.

13.  Copies of all information and recordings obtained in connection with any wiretap, wire, electronic monitoring or surveillance of Mr. Avenatti, Ms. Regnier, Mr. Marchino or any other witness.

14. All documents, information, materials, electronic information, etc. obtained from David Nold, including but not limited to forensic copies of all electronic files, computers, servers, drives, USB keys, cell phones, and iPads.

15. All documents, text messages, emails, materials, etc. relating to or reflecting any communications regarding Mr. Avenatti with David Nold.

16. All documents, information, materials, electronic information, etc. obtained from any current or former employee associated with any company that you maintain was controlled by Michael Avenatti in whole or in part, including but not limited to forensic copies of all electronic files, computers, servers, drives, USB keys, cell phones, and iPads.

15. All documents, text messages, emails, materials, etc. relating to or reflecting any communications regarding Mr. Avenatti with any current or former employee associated with any company that you maintain was controlled by a Michael Avenatti in whole or in part.

16.  My client's statements:  Under Fed. R. Crim. P. 16(a)(1)(A), the defendant is entitled to disclosure of all copies of any written or recorded statements made by the defendant.

17.  All arrest reports, together with notes.  This request includes, but is not limited to, any rough notes records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained.  This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and *Brady v. Maryland*, 373 U.S. 83 (1963).  See also *Loux v. U.S.* 389 F.2d 911 (9th Cir. 1968); U.S.

v. Johnson, 525 F.2d 999 (2d Cir. 1975); U.S. v. Lewis, 511 F.2d 798 (D.C. Cir. 1975); *U.S. v. Pilnick,* 267 F. Supp. 791 (S.D.N.Y. 1967).

19. *Brady* material:  I request all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. ( i.e. 8, 9 and 10, above). Impeachment as well as exculpatory evidence falls within Brady's definition of evidence favorable to the accused.  See *U.S. v. Bagley*, 473 U.S. 667 (1985); *U.S. v. Agurs*, 427 U.S. 97 (1976).

20.  Tangible objects:  I'd request, under Fed. R. Crim. P. 16(a)(2)(C), the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, buildings, automobiles, or places, or copies, depictions, or portions thereof which are material to the defense or intended for use in the government's case-in-chief, or were obtained for or belong to the defendant.

21.  Information regarding informants and cooperating witnesses:  I'd request that the government provide all relevant information concerning any informants or cooperating witnesses involved in this case.  At a minimum, the government is obligated to disclose the identification and location of any informants or cooperating witnesses, as well as the identity and location of any other percipient witnesses unknown to the defendant.  *Roviaro v. U.S.*, 353 U.S. 53 (1957).  Specifically, the defendant requests all "documents, and information relating to the period between [all potential or actual informer/accomplice/cooperating witness's] initial contact with the government regarding possible cooperation and the point at which the witness and the government reached an agreement concerning [such person's possible] testimony' in this case." *United States v. Sudikoff,* 36 F.Supp.2d 1196 (C.D. Cal. 1999).

4

22.  Evidence of bias or motive to lie-  The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.  *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *U.S. v. Strifler*, 851 F.2d 1197 (9th Cir. 1988).

23.  *Impeachment evidence*:  The defendant requests any evidence that any prospective government witness has engaged in any criminal act, whether or not resulting in a conviction, and whether any witness has made a statement favorable to the defendant.  See Fed. R. Evid. 608, 609 and 613.  Such evidence is discoverable under *Brady*, 373 U.S. at 83.  See *U.S. v. Strifler*, above (witness' prior record), *Thomas v. U.S.*, 353 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

23.  Evidence of criminal investigation of any government witness:  I'd request any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.  *U.S. v. Chitty*, 760 F.2d 425 (2d Cir. 1985).

24.  Names of witnesses favorable to the defendant:  I'd request the name of any witness who has made an arguably favorable statement concerning the defendant.  *Jackson v. Wainwright*, 390 F.2d 288 (5th Cir. 1968); *Chavis v. North Carolina*, 637 F.2d 213, 223 (4th Cir. 1980); *Jones v. Jago*, 575 F.2d 1164, 1168 (6th Cir. 1978); *Hudson v. Blackburn*, 601 F.2d 785 (5th Cir. 1979).

25.  Jencks Act Material:  The defense requests all material to which defendant is entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, and Fed. R. Crim. P. 26.2.  The defendant specifically requests pretrial production of these statements so that the court may avoid unnecessary recesses and delays for defense counsel to properly use any Jencks statements and prepare for cross-examination.

26.  Giglio information:  Pursuant to *Giglio v. U.S.*, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses.

27.  Government examination of law enforcement personnel files: I'd request that the government examine the personnel files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses, including testifying officers and agents who may have been controlling or contacting the confidential information in this case.  The defendant requests that these files be reviewed by the government attorney for evidence of perjurious conduct or other like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory, pursuant to its duty under *U.S. v. Henthorn,* 931 F.2d (9th Cir. 1991).

28.  Expert witness notification and summary of testimony:  I'd request that the government provide notice of any witness it intends to proffer as an expert to give opinion testimony and a summary of the witness's opinion, bases and reasons for the opinions, and the witness's qualifications pursuant to its duty under Federal Rule of Criminal Procedure 16(a)(1)(G).

Thank you in advance for your consideration of each of these requests.


Sincerely,

H. Dean Steward

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

# H. Dean Steward
ATTORNEY AT LAW

107 Avenida Miramar
Suite "C"
San Clemente, CA 92672
949-481-4900

May 22, 2019

Julian Andre & Brett Sagal
Asst. U.S. Attorneys
Via E-mail

Re: Avenatti case

Gentlemen:

    I write relating to the status of the production of the electronic discovery concerning my client, Michael Avenatti. As you know, in connection with his arrest on March 25, from informal demands, and various search warrants obtained by the government before and after that arrest, the government has obtained significant electronic evidence including but not limited to: multiple computer servers, desktop computers, hard drives, cell phones, laptops, and USB drives.

    Some of this evidence has been in the possession of the government for months (prior to my client's arrest) and yet my client has received none of it to date. To be clear, not a single image or electronic file has been produced to date.

• Admitted-California & Hawaii •Fellow-American College of Trial Lawyers •
fax: 949-496-6753 • e-mail: deansteward7777@gmail.com

Mr. Avenatti does not have images of the computer servers for his law firm (which he owns 100 percent), his laptop, his cell phone, other desktop computers, etc. He has been provided nothing.  This is not acceptable and certainly is not in keeping with the government's significant discovery obligations in a criminal case of this magnitude under Rule 16.

This failure to timely provide discovery is highly prejudicial and is not excused by the alleged attorney-client issue you identified during our last court appearance,  nor is it excused by any alleged need for an attorney-client "taint" review.  Mr. Avenatti was counsel for the clients at all relevant times and is still counsel in many instances.

He previously had unfettered access to this information and he has an immediate right to this information now. The government's failure to provide this information is even more egregious considering that I understand that the government has given images of certain electronic files to third-parties who are not attorneys, have no attorney-client relationship with any client, and who, unlike Mr. Avenatti, do not have an urgent need for the information.  This includes providing images to the Receiver for Eagan Avenatti, LLP.

If the government was able to provide this information to those third-parties, there can be no legitimate reason why the government did not provide that same information contemporaneously.

Accordingly, and pursuant to our previous discovery demand letter, I ask that (1) forensic images of all electronic data and information be provided to my office no later than Tuesday, May 27 and (2) you provide an inventory of all electronic devices imaged or

2

accessed, together with the size of each device, at the same time.

Sincerely,

H. Dean Steward

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C**



# United States Department of Justice

## United States Attorney's Office
## Central District of California

*Julian L. André*
Phone:  (213) 894-6683
E-mail:  Julian.L.Andre@usdoj.gov

*1100 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California  90012*

May 24, 2019

**VIA EMAIL**

H. Dean Steward
107 Avenida Miramar, Suite C
San Clemente, California 92672
deansteward7777@gmail.com

Re:     United States v. Michael John Avenatti,
          SA CR No. 19-061-JVS

Dear Counsel:

We write to respond to your May 15, 2019, discovery request and your subsequent May 22, 2019, letter regarding the production of electronic discovery.

## I.     Defendant's May 15, 2019, Discovery Request

As a threshold matter, there is no merit to your claim that the government has failed to provide discovery to your client, defendant MICHAEL JOHN AVENATTI ("defendant"), in a timely manner or has failed to comply with its discovery obligations under Federal Rule of Criminal Procedure 16.  (5/22/19 Letter at 2.)

First, under Rule 16(a), the government is not required to produce discovery until it receives a request for such discovery from defendant.  Although the indictment in this case was filed on April 10, 2019, defendant did not request discovery in this case until May 15, 2019 – over one month later.  Thus, under Rule 16, the government was under no obligation to produce discovery prior to that date.

Second, any purported delay in producing discovery in this case was due to defendant's own inaction and failure to resolve his representation issues.  Although defendant was represented by John Littrell from Beinert Katzman PLC in connection with the criminal complaint and defendant's initial appearance on April 1, 2019, Mr. Littrell repeatedly advised the government that he was unsure whether his law firm would be representing defendant in connection with the indictment.[1]  After Mr. Littrell indicated that he would not be representing defendant going

---

[1] As discussed further below, although the government had preliminary discussions with Mr. Littrell regarding defendant's ability to access to the Eagan Avenatti LLP ("EA LLP")

H. Dean Steward
RE: United States v. Avenatti
May 24, 2019
Page 2

forward, defendant delayed obtaining new counsel for weeks. (See CR 26; CR 27; CR 28; CR 33.) Defendant did not resolve his representation issues until May 15, 2019, when you were retained to represent defendant the morning of the May 15, 2019, status conference.

Third, since you were retained to represent defendant the government has worked diligently to produce discovery to your client in a timely manner. Even before you were retained and requested discovery, the government worked diligently to have discovery prepared in order to produce it in a timely manner upon request. Within hours of the May 15 status conference, the government provided you with a draft stipulation and proposed protective order. You, however, did not return the signed stipulation to us until May 20, 2019, at which point we immediately filed it with the Court that same day. The first round of discovery, which consists of over 110,000 pages of materials, was then made available to be picked up from our Santa Ana office on May 22, 2019 – less than 48 hours after the Court entered the protective order.

As I stated during the May 15 status conference, the government is committed to working with the defense to resolve any discovery issues amicably and to produce all discovery to which defendant is entitled as quickly as possible. Instead of attempting to blame the government for delays defendant himself has caused, we would you encourage you to work with us to resolve these discovery issues in a constructive manner.

## II.    **Production of Digital Evidence Obtained During the Government's Investigation**

In your May 15, 2019, discovery request and May 22, 2019, letter you requested that the government produce, among other things, forensic copies of digital devices the government has obtained during the course of its investigation. The digital devices obtained during the government's investigation fall into the following six categories: (1) digital devices provided by former employees of Global Baristas US LLC ("GBUS"); (2) digital devices seized during defendant's arrest in New York; (3) digital devices seized during the execution of a search warrant at defendant's residence; (4) digital devices constituting the EA LLP server; (5) digital devices seized during the execution of a search warrant at the residence of Judy Regnier; and (6) digital devices seized during the execution of a search warrant at The X-Law Group.

As discussed in greater detail below, we have no objection to providing your client with forensic copies of the GBUS digital devices and any accessible devices seized during defendant's arrest or the execution of the search warrant at defendant's residence. As I stated during the May 15, 2019, status conference, however, we have significant concerns regarding the production of the forensic copies of the EA LLP server and devices seized during the execution of search warrants

---

servers, Mr. Littrell never formally requested the government provide defendant with a copy of the servers. Indeed, Mr. Littrell never requested that the government produce any discovery to defendant – presumably because Mr. Littrell did not know if he would be representing defendant going forward.

H. Dean Steward
RE: <u>United States v. Avenatti</u>
May 24, 2019
Page 3

at Ms. Regnier's residence and The X-Law Group's office, all of which are likely to contain significant amounts of attorney-client information relating to third-parties.

A.    **Global Baristas US LLC Digital Devices**

As set forth in the criminal complaint, in February 2019, the government obtained a warrant to search seven digital devices that former employees of GBUS provided to the Internal Revenue Service – Criminal Investigations. (<u>See</u> CR 1.) In total, we understand that these seven digital devices contain approximately 1 terabyte ("TB") of data. Although the government's review of these digital devices is still ongoing, the government will provide defendant with forensic copies of these devices subject to the existing Protective Order.[2]

B.    **Digital Devices Seized During Defendant's Arrest**

During defendant's arrest on March 25, 2019, in New York, the Federal Bureau of Investigation ("FBI") and United States Attorney's Office for the Southern District of New York ("SDNY USAO") seized the following six digital devices from your client;

1.  A black Apple iPhone X with IMEI No. 357204095086820;

2.  A silver Apple MacBook Pro with Serial No. C02TP26RHTD8;

3.  A black and grey Apple iPad with Serial No. DLXX30YCJ262;

4.  A black USB drive marked "27989;"

5.  A blue and silver USB drive marked "RAEN;" and

6.  A silver and purple USB drive marked "8025328."

The SDNY USAO provided an IRS-CI privilege review agent with copies of the three USB drives (<u>i.e.</u>, items 4 through 6 above) on May 22, 2019. We, however, understand that the SDNY USAO has not yet been able to access defendant's iPhone X, MacBook, or iPad because those three digital devices are encrypted. Accordingly, the SDNY USAO has yet to provide our office or IRS-CI with forensic copies of these devices.

---

[2] GBUS is now controlled by a Court-appointed bankruptcy trustee. Although defendant no longer controls GBUS and some of the GBUS devices may contain personal information relating to former GBUS employees, we are nevertheless willing to provide defendant with copies of these devices because we believe it is unlikely that these devices will contain any attorney-client privileged information of third-parties.

H. Dean Steward
RE: <u>United States v. Avenatti</u>
May 24, 2019
Page 4

The FBI and SDNY USAO also seized various miscellaneous documents from your client's briefcase during his arrest. The SDNY USAO provided an IRS-CI privilege review agent with scanned copies of these documents on or about May 17, 2019.

The government has obtained a warrant to search the three USB drives and miscellaneous documents, and will be reviewing such evidence pursuant to the search and privilege review protocols set forth therein. Although the government's review of these materials is ongoing, the government will provide defendant with a copy of the three USB drives and miscellaneous documents subject to the existing protective order.

As for defendant's iPhone, MacBook Pro, and iPad, we will not be able to provide defendant with a copy of these devices until after the SDNY USAO gains access to the encrypted devices and provides IRS-CI with copies of the resulting forensic images. If defendant would like to expedite this process, we would recommend that you contact the SDNY USAO and provide them with defendant's passwords.

### C.    Digital Devices Seized from Defendant's Residence

On March 25, 2019, IRS-CI executed a search warrant at defendant's residence. A copy of the search warrant inventory was left at defendant's residence and is attached hereto as Exhibit A for your convenience. As detailed in the inventory, IRS-CI seized eight digital devices during the execution of the search warrant, including two Apple iPad Mini tablets; an SD card, two USB drives; three cell phones; an external hard drive; and an Apple iMac computer. We understand that the iPads, SD card, USB drives, cell phones, and external hard drive contain a total of approximately 2 TB of data. Although the government's review of these devices is ongoing, the government will agree to provide defendant with copies of these devices subject to the existing protective order.

IRS-CI, however, has not yet to be able to access the iMac computer because it is encrypted. Accordingly, we will not be able to provide defendant with a useable forensic image of this device until after IRS-CI has cracked the password and accessed the device. If defendant would like to expedite this process, defendant is welcome to provide IRS-CI with the password to access the device.

### D.    The EA LLP Server

In connection with the government's investigation, the Court-appointed Receiver for EA LLP (the "EA Receiver") consented to IRS-CI creating forensic images of the six digital devices that comprise the EA LLP server (collectively, the "EA LLP server"), which were being stored by MixinIT, a company in Orange County that stored and managed computer servers. After creating a forensic image of the EA LLP server, the EA LLP server was returned to the EA

H. Dean Steward
RE: <u>United States v. Avenatti</u>
May 24, 2019
Page 5

Receiver.[3]  The government has since obtained a warrant to search the forensic copy of the EA LLP server for relevant evidence.  We will produce any relevant evidence seized from the EA LLP server once the government completes the review protocols set forth in the search warrant.  We, however, have significant concerns regarding producing a forensic copy of the EA LLP server to defendant at this time.

<u>First</u>, our understanding is that the EA LLP servers are not defendant's personal property, but are instead owned by EA LLP.  Although your May 22, 2019, letter claims that defendant owns "100%" of EA LLP, your letter fails to address or acknowledge the fact that defendant no longer has any legal authority over EA LLP's operations or control over EA LLP's property.  As you are likely aware, EA LLP is currently a Judgment Debtor in litigation with Jason Frank Law ("JFL"), a former partner of EA LLP.  <u>See</u> <u>In re Eagan Avenatti LLP</u>, No. CV 18-1644-VAP (C.D. Cal.).  On February 12, 2019, JFL filed a motion seeking the appointment of a receiver for EA LLP and accusing defendant of bankruptcy fraud.  <u>Id.</u>, Dkt. No. 51.  On February 13, 2019, defendant, acting on behalf of EA LLP, stipulated to the appointment of Brian Weiss as a Receiver for EA LLP (the "EA Receiver") and consented to the jurisdiction of the Honorable Karen E. Scott, United States Magistrate Judge, to enter an order appointing the EA Receiver.  <u>Id.</u>, Dkt. No. 52.  Judge Scott entered the order appointing the EA Receiver later that same day.  <u>Id.</u>, Dkt. No. 53.  The order stated, among other things, that the EA Receiver shall have the power to take possession of and manage the business of EA LLP.  The order further required that EA LLP and defendant immediately turn over all EA LLP property to the EA Receiver and provide access to all EA LLP computer systems.[4]  To the extent you believe defendant is still legally entitled to access the EA LLP server or has an "urgent need" to access the server in connection with a current legal representation, defendant should – if he has not already – raise that issue with the EA Receiver or Judge Scott in the first instance as the EA Receiver is currently in possession of the actual EA LLP server.

<u>Second</u>, we believe the EA LLP server will contain a substantial amount of attorney-client privileged information relating to third-parties, the vast majority of which is likely irrelevant to this prosecution and your client's defense.  Although your letter claims that defendant may still have an attorney-client relationship with some of EA LLP's clients, we understand that

---

[3] Your May 22, 2019, letter claims that the government provided the EA LLP servers to the EA Receiver.  You have this backwards.  The EA Receiver consented to IRS-CI accessing and imaging the EA LLP servers.  IRS-CI then immediately returned the servers to EA LLP, which owns the servers and is controlled by the EA Receiver.  The EA Receiver is not, as you claim, a "third-party."

[4] Despite the Court's stipulated order appointing the EA Receiver and setting forth the terms of the Receivership, the EA Receiver has recently accused defendant of taking actions to prevent the EA Receiver from obtaining access to EA LLP's servers.  <u>See</u> Receiver's Second Interim Report, <u>In re Eagan Avenatti LLP</u>, No. 8:18-CV-1644-VAP, Dkt. No. 81 (filed May 15, 2019).

H. Dean Steward
RE: United States v. Avenatti
May 24, 2019
Page 6

defendant no longer represents a number of EA LLP's former clients.   Indeed, your letter
concedes this point, stating that defendant "is still counsel in many instances." (5/22/19 Letter at
2.) Providing defendant with unfettered access to attorney-client privileged information for
clients whom defendant no longer represents therefore raises significant ethical concerns for us –
particularly in light of the wire fraud charges in the indictment which allege that defendant
repeatedly breached his ethical obligations to his former legal clients.  Indeed, the search warrant
contains very specific privilege review protocols and does not authorize us to seize such
privileged information.

In light of these facts, we do not believe it would be appropriate for the government to provide
defendant with a forensic copy of the EA LLP server without either obtaining consent from the
EA Receiver or a Court order requiring us to do so.  We are also unaware of any legal precedent
that would require us to provide defendant with a copy of the entire EA LLP server at this time.
If you are aware of any such case law or other factual information establishing that defendant has
an independent right to access the EA LLP, please provide it to us as soon as possible so we can
evaluate it.  We would also be glad to discuss alternative procedures to ensure that you are able
to access any information on the EA LLP server that you believe may be relevant to your client's
defense, such as providing you and your client an opportunity to review the forensic image of the
EA LLP server at IRS-CI's offices.

### E.        Digital Devices Seized from Judy Regnier's Residence

On March 25, 2019, IRS-CI executed a search warrant at the residence of Judy Regnier, EA
LLP's former office manager and chief paralegal.  A copy of the search warrant inventory is
attached hereto is Exhibit B.  As detailed in the inventory, IRS-CI seized numerous digital
devices during the execution of the search warrant, including cellphones, computers, iPads, and
USB drives.  Our understanding is that the digital devices seized from Ms. Regnier's residence
contain a total of approximately 2 TB of data.[5]  The government will produce any relevant
evidence from these digital devices once it completes the review protocols set forth in the search
warrant.  We, however, have significant concerns regarding producing a forensic copy of these
devices to defendant at this time.

First, based on our discussions with Ms. Regnier, we understand that all of the digital devices
seized from her residence either belonged to EA LLP or were Ms. Regnier's own personal
property.  We understand that most of the digital devices Ms. Regnier identified as belonging to
EA LLP have been imaged and returned to EA LLP through the EA Receiver.  The devices
belonging to Ms. Regnier have been returned to Ms. Regnier.  As with the EA LLP servers

---

[5] We understand that IRS-CI has not yet been able to access two cell phones which EA
LLP had previously issued to its former employees.  IRS-CI is still attempting to access these
devices.

H. Dean Steward
RE: <u>United States v. Avenatti</u>
May 24, 2019
Page 7

discussed above, the government does not believe that defendant has an independent right to access the materials on the devices found at Ms. Regnier's residence.

<u>Second</u>, as with the EA LLP servers, the government believes that many of the digital devices seized from Ms. Regnier's residence will contain a substantial amount of attorney-client privileged information relating to third-parties, the vast majority of which is likely irrelevant to this prosecution and your client's defense.

In light of these facts, we do not believe it would be appropriate for the government to provide defendant with a forensic copy of these devices without either obtaining consent from the EA Receiver and Ms. Regnier or a Court order requiring us to do so. We, however, would be glad to discuss alternative procedures to ensure that you are able to access any information on the devices that you believe may be relevant to your client's defense, such as providing you and your client an opportunity to review the forensic images of the devices at IRS-CI's offices.

In addition to the items identified above, IRS-CI seized approximately 69 backup tapes, which we believe belong to EA LLP, from Ms. Regnier's residence. We understand specialized equipment may be required to restore and then review the data on the backup tapes. We will attempt to determine what data is stored on the backup tapes, whether such data falls within the scope of the search warrant, and whether the data is duplicative of the data stored on the EA LLP server or other seized devices. Please let us know if you would like to examine the backup tapes at IRS-CI's offices, and we will work with you to make the necessary arrangements.

### F.     Digital Devices Seized from The X-Law Group

On March 25, 2019, IRS-CI executed a search warrant at the business premises of The X-Law Group. A copy of the search warrant inventory is attached hereto as Exhibit C. As detailed in the inventory, IRS-CI seized numerous computers, USB drives, and external hard drives. We understand that these devices contain a total of 12 TB of data. The government will produce any relevant evidence from these digital devices once it completes the review protocols set forth in the search warrant. We, however, have significant concerns regarding producing a forensic copy of these devices to defendant at this time.

<u>First</u>, it is unclear to us whether defendant has any ownership interest in The X-Law Group or its property. Rather, we understand that The X-Law Group and EA LLP shared responsibility over certain cases, but that The X-Law Group remained a separate law firm and owned its own property. If this understanding is incorrect, please let us know and provide us with additional information regarding defendant's contractual relationship with The X-Law Group.

<u>Second</u>, we believe the devices seized from The X-Law Group are likely to contain significant amounts of attorney-client privileged information of third-parties, the vast majority of which would be irrelevant to this prosecution and your client's defense. Indeed, we understand The X-Law Group had its own separate legal clients, none of whom would have had an attorney-client relationship with defendant at any time.

H. Dean Steward
RE: <u>United States v. Avenatti</u>
May 24, 2019
Page 8

In light of these facts, we do not believe it would be appropriate for the government to provide defendant with a forensic copy of these devices without either obtaining consent from The X-Law Group or a Court order requiring us to do so.  As with the EA LLP server and devices from Ms. Regnier's residence, however, we would be glad to discuss alternative procedures to ensure that you are able to access any information on the devices that you believe may be relevant to your client's defense, including providing you t an opportunity to review the forensic images of the devices at IRS-CI's offices.

### III.   <u>Conclusion</u>

As set forth above, the government will agree to provide you with forensic copies of the GBUS devices, the accessible devices seized from defendant's residence, and the accessible devices seized during defendant's arrest.  These devices contain a total of approximately 3 TB of data.  Please provide us with a 5 TB external hard drive that we can use to transmit the forensic copies to you as soon as possible.  Given the volume of data, we expect it could take at least one week to load the images onto the hard drive and would like to start this process as soon as possible.

With respect to the EA LLP server and the devices seized from Ms. Regnier's residence and the X-Law Group, as discussed above, we do not believe it would be appropriate for the government to provide defendant with copies of those devices and unfettered access to attorney-client privileged information of third-parties.  Accordingly, please provide us with any legal support for your request or additional facts you would like to us to consider in analyzing this issue.  We also remain willing to discuss alternative means for you to access any relevant information on those particular devices and to make the devices available for you to review at IRS-CI's offices.  However, if we cannot reach a prompt resolution of this issue, the government believes that the parties should raise the issue with the Court prior to the July 8, 2019, status conference.

Please let me know if you have any questions, or would like to further discuss any of the matters raised above.

Very truly yours,

JULIAN L. ANDRÉ
Assistant United States Attorney
Major Frauds Section

cc:   Assistant United States Attorney Brett A. Sagel

**EXHIBIT D**

 Gmail

**Dean Steward <deansteward7777@gmail.com>**

---

**Avenatti case**
1 message

---

**Dean Steward** <deansteward7777@gmail.com>                    Wed, Jul 31, 2019 at 12:38 PM
To: "Andre, Julian L. (USACAC)" <julian.l.andre@usdoj.gov>, "Sagel, Brett (USACAC)" <brett.sagel@usdoj.gov>
Bcc: Michael Avenatti <m@thefight.us>

Gentlemen:

It is imperative that my client Mr. Avenatti have access to the files and documents that the government has seized, including all of the files and documents located on the EA servers.  As you know, we have a motion to compel relating to getting unfettered access to the servers themselves on file.

 Pending the determination of that motion, we again request that you immediately (this week) provide a forensic copy of the servers in their entirety so my client can attempt to access the information, prepare his defense and provide a list of individuals who should be included in the government's privilege review.  Seeing as you have already copied the servers, providing a copy of your copy is hardly burdensome.  Indeed, we understand that you provided a copy to the Receiver for some unknown reason.

Time is of the essence, especially in light of the amount of information necessary to review.

Thank you in advance.

Dean

--



**H. DEAN STEWARD**
ATTORNEY· PROFESSIONAL CORPORATION

949-481-4900  www.deansteward.com

## <u>CERTIFICATE OF SERVICE</u>

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on August 19, 2021, service of the:

DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO. MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MISTRIAL, DUE TO THE GOVERNMENT'S (1) FAILURE TO PRODUCE INFORMATION AS REQUIRED BY RULE 16, *BRADY*, AND *GIGLIO*, AND (2) CONTEMPT OF THIS COURT'S JANUARY 25, 2021 ORDER

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2021

/s/ H. Dean Steward

H. Dean Steward

10