```
FILED
CLERK, U.S. DISTRICT COURT

8/20/21

CENTRAL DISTRICT OF CALIFORNIA
BY:     LB      DEPUTY
```

**MORGAN WITOS,** *pro se*
2298 Idlewild Drive
Frisco, TX 75036
morganwitos@gmail.com
*Pro se* Third Party

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>                  Defendant. | SA CR No. 19-061-JVS<br><br>**THIRD PARTY MORGAN WITOS'S NOTICE OF MOTION TO QUASH SUBPOENA IN CRIMINAL CASE**<br><br>Hon. James V. Selna<br>Dept: 10C<br>Date: TBD<br>Time: TBD |

TO: THE CLERK OF THE ABOVE-ENTITLED COURT AND ALL PARTIES:

PLEASE TAKE NOTICE that on a date to be determined by the Court, third party MORGAN WITOS, appearing *pro se*, will and hereby does move to quash the Subpoena in a Criminal Case served on her on August 14, 2021.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Morgan Witos, the files and records in this action, and any other evidence that may be presented at or before the hearing on this matter.

                                                  Respectfully submitted,

Dated: August 19, 2021         By:     s/ *Morgan Witos*
                                                   MORGAN WITOS, *pro se*

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant is currently on trial facing various charges, including allegations that he embezzled millions of dollars in client funds. According to the indictment, the "scheme to defraud" began "as early as in or about January 2015 and continu[ed] through at least in or about March 2019." *See* Indictment at ¶6. The indictment further alleges that the Defendant "executed [the] scheme to defraud victim-clients to whom Defendant [] had agreed to provide legal services, including, but not limited to, Client 1, Client 2, Client 3, Client 4, and Client 5, as to material matters, and to obtain money and property from such victim-clients by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts that Defendant [] had a duty to disclose."

In an effort to rebut these allegations as to the embezzlement of "Client 1's" Funds, Defendant has subpoenaed Morgan Witos, who was employed by Defendant from 2009 to 2014, to testify at his trial. Ms. Witos was served the subpoena on Saturday, August 14, 2021 near her home in Frisco, Texas to appear three days later in Santa Ana, California. (*See* Ex. A, Subpoena to Morgan Witos; Witos Decl. ¶ 2). According to representations made to the Court on August 19, 2021, Mr. Avenatti cited AUSA Alex Wyman's five-second cross of Hillary Wolett for why he wants to call Ms. Witos. He reportedly represented that he needs to counter Mr. Wyman pointing out that Wolett has no knowledge of firm finances in Tabs by calling Ms. Witos.

*Rule* 17 provides, "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." *Fed. R. Crim. P.* 17(c)(2). Rule 17 "was not intended to provide [a criminal defendant with] an additional means of discovery" and was not intended to be employed in "a fishing expedition to see what may turn up." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220-21 (1951); *see, e.g.*, *United States v. Fowler*, 932 F.2d 306, 311

(4th Cir. 1991) ("Rule 17(c) . . . is not a discovery device."). To overcome a motion to quash a subpoena, the moving party "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id*. at 700.

### A. Compelling Ms. Witos to Testify Would be Unreasonable and Oppressive

Defendant's subpoena to Ms. Witos is as unreasonable as it is substantively irrelevant, and compliance with same would place an undue burden on her and her children. Ms. Witos resides in Frisco, Texas, where she has lived since February 2020. (Witos Decl. ¶ 7.) She is the sole caretaker of three children, ages 9 years, 3 years, and 8 months old, respectively. (Witos Decl. ¶ 8.) Ms. Witos's eight-month-old child is exclusively breastfed and feeds every two hours each day, her three-year-old child is in pre-school, and her nine-year-old has resumed schooling virtually and must be monitored at all times. (Witos Decl. ¶ 8.) She has no family or friends near her who can care for her children so that she may travel to California alone. (Witos Decl. ¶ 9.) Even if she had the funds to be able to make the trip with her children to California (she does not), it is beyond oppressive to expect her to testify in person in a courtroom some 1,400 miles away, in the middle of a pandemic, on short notice. (Witos Decl. ¶ 10.) Requiring her to travel to California for what would at least be two or three days would also mandate that she bring her children with her, as she does not have childcare arrangements, and would pose an oppressive and unreasonable burden on the whole family. (Witos Decl. ¶ 10.)

On Monday, August 16, 2021, Christopher Adams, an attorney in New Jersey who is a member of the firm that employs Ms. Witos' father, spoke with Defendant and his advisory counsel, Mr. Steward, regarding the subpoena. (Witos Decl. ¶ 3.) Mr. Adams explained that Ms. Witos does not have the means to retain counsel nor to travel to California. (Witos Decl. ¶ 3.) Mr. Adams explained to both lawyers the extreme hardship this subpoena has on Ms. Witos because

of (1) her young children, for which she is the sole caretaker, (2) her husband is employed fulltime and cannot assist, and (3) she has no family in the area. (Witos Decl. ¶ 9.) Defendant acknowledged that it was "inconvenient", but he did not agree to withdraw or recall the subpoena. (Witos Decl. ¶ 4.) To date, Defendant has not suggested any means to address the childcare issue. (Witos Decl. ¶ 9.)

### *B. Compelling Ms. Witos to Testify Would be not Produce Relevant Testimony*

Substantively, it is not clear that Ms. Witos' testimony would be favorable to the Defendant. In his offer of proof, Defendant stated that Ms. Witos's testimony was related to the allegations surrounding his representation of Client 1. (Witos Decl. ¶ 3.) However, the factual allegations in the indictment relating to Client 1 date from January 2015 to 2019. Ms. Witos was employed with Defendant's firm from July 2009 to October 2014 and has no knowledge of Defendant's representation of Client 1 or any of the other allegations in this matter related to the "Johnson matter." (Witos Decl. ¶ 4, 5.) She has no personal knowledge of the facts relating to "Client 1"

Even if Defendant seeks to examine Ms. Witos's experience bookkeeping for his practice, Ms. Witos does not have information that would be favorable to him. During her employment, a significant part of Ms. Witos' responsibilities involved handling administrative tasks, such as dealing with vendors for ordering food and office supplies and answering the phones, in addition to entering lawyers' billable time and expenses into Tabs and QuickBooks. (Witos Decl. ¶ 4.) Ms. Witos did not handle client disbursements or have access to Defendant's personal bank accounts or Global Baristas account, which are the subject inquiries of this matter. (Witos Decl. ¶ 6.) Defendant's efforts should be appropriately directed to an administrator or bookkeeper that

was employed during the relevant period of time alleged in the indictment, not someone who left before the scheme is alleged to have begun.

## CONCLUSION

For the foregoing reasons, Ms. Witos respectfully requests that this Court grant this Motion to Quash Subpoena in a Criminal Case. In the alternative, Ms. Witos would request to participate via remote teleconference technology should the court require her participation.

Respectfully submitted,

Dated:  August 19, 2021           By: s/ *Morgan Witos*
                                       MORGAN WITOS, *pro se*