Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 497-6753

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL JOHN AVENATTI,

Defendant.

SA CR No. 19-061-JVS

DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO PRECLUDE DEFENDANT FROM RECALLING MICHELLE PHAN AS A WITNESS AND NOTICE OF POTENTIAL REBUTTAL WITNESS

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti"), by and through his advisory counsel, H. Dean Steward, hereby files his response to the government's motion to preclude defendant from recalling Michelle Phan as a witness and notice of rebuttal witness [Dkt. 750].

Dated: August 20, 2021

Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

In response to the government's filing regarding government witness Michelle Phan [Dkt. 750], the defendant welcomes the opportunity to provide an *in camera* oral proffer to the Court before re-calling Ms. Phan.

In advance of that proffer, the defendant brings to the attention of the Court the following portions of the transcript from the November 1, 2018 interview of Ms. Phan (who was present with two attorneys) conducted by Newport Beach Police Department, Economic Crimes Division Investigator Emily Bledstein. *See* Exhibit A. Evidently, the government did not review this transcript or the audio recording from the interview before making its filing. Among other things, Investigator Bledstein repeatedly warned Ms. Phan on the audio recording[1] that her allegations had significant problems and may not even rise to the level of being a "fileable case" by the State. For instance:

1. "I'm sure your attorneys have advised you this is kind of one of those gray-area cases. We've actually shopped it over to the Major Fraud Unit, and even they are kind of, unsure as to whether there's enough evidence to prove that there was intent . . ."

2. "So, like I said, we have talked to Major Fraud about it, and even they're on the fence whether this falls into the criminal realm. Most likely, you're going to have to go both routes. I mean, I talked it over with Sergeant Joe. He does want to file at least an incident report to get this started, because, before Major Fraud can, like, make an ultimate decision, we obviously have to send them over, you know, a report to review. So we are going to get it started, but I just want to, you know, forewarn you that even they're not sure that this is a fileable case in the criminal sense."

---

[1] The defendant expects to use the audio recording as impeachment before the jury.

3. "I'm sure that your attorneys have told you that the burden of proof is different in both those realms of court, if you will, but it's much higher in a criminal case, and, you know, the punishments are different. So, like, a civil case, you know, you just would have to pay out the money. On the criminal side, the burden of proof is higher, but, you know, the punishment would be jail time, obviously, and all that. So I just want to make sure that you understand that there are differences, and it may not go the way that you anticipate, because the burden of proof is higher."

4. "Yes, and I understand that, but Sergeant Joe and I have been trying to search, you know, if there's ever been a case where an attorney was arrested for that reason, you know, just to see what the precedent is, you know, or whether that usually goes into the civil realm, or the disbarment, you know, route."

Dated: August 20, 2021

Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

# Exhibit A

NEWPORT BEACH POLICE DEPARTMENT

ECONOMIC CRIMES DIVISION

In Re: ) Case No. 18009037
)
A., M. )
______________________________)

TRANSCRIPT OF WITNESS INTERVIEWS
NOVEMBER 1, 2018
870 SANTA BARBARA DRIVE
NEWPORT BEACH, CALIFORNIA

APPEARANCES:

For the Newport Beach Police Department:
EMILY BLEDSTEIN, INVESTIGATOR
Newport Beach Police Department
Economic Crimes Division
870 Santa Barbara Drive
Newport Beach, California
(949) 644-3681

For Long Tran and Michelle Phan:
WALTER BROWN, ESQ.
Orrick
The Orrick Building
405 Howard Street
San Francisco, California 94105
(415) 773-5995

For Long Tran and Michelle Phan:
ANDREW J. KIM, ESQ.
Orrick
777 South Figueroa Street
Suite 3200
Los Angeles, California 90017
(213) 612-2494

Proceedings recorded by electronic sound recording; transcript produced by transcription service.





Transcriber: Briggs Reporting Company, Inc.
4455 Morena Boulevard
Suite 104
San Diego, California 92117
(310) 410-4151

understands that --

MS. PHAN: Absolutely.

MR. BROWN: -- and maybe you can speak to that. Yes.

MS. BLEDSTEIN: Okay.

MS. PHAN: Absolutely. I mean, I'm okay going public with this, but I wanted to go through you guys first, to see "What should I do?," you know.

MS. BLEDSTEIN: Yes.

MS. PHAN: You guys are the experts at this, and I lean on you guys to help guide me on making the right decision.

MS. BLEDSTEIN: Yes. I'm sure your attorneys have advised you this is kind of one of those gray-area cases. We've actually shopped it over to the Major Fraud Unit, and even they are kind of, unsure as to whether there's enough evidence to prove that there was intent, because, you know, as you know, the first transaction went through flawlessly.

Half of the second transaction went through fine, you know, with a little bit of prodding, but, you know, eventually you did get half of that second transaction, the second wire, and then, you know, I'm sure you've seen in the media that there have been other, you know, lawsuits filed against him which he has lost.

MS. PHAN: Yes.

MS. BLEDSTEIN: I know that recently his ex-partner was awarded, you know, a settlement somewhere upwards of 4,000,000. So, you know --

MS. PHAN: Wow. I didn't know that.

MS. BLEDSTEIN: Yes. Yes. You should read about -- that was only within the last week or so.

MS. PHAN: Wow.

MS. BLEDSTEIN: But, you know, that would be kind of bad for us, in a way, because it shows that, you know, maybe, because all the clients' trust account money was commingled, which probably is not allowed -- the attorneys could tell you better than I could, but, you know, if all that money is in one pot, and then he's paying out for other clients, other settlements, you know, then there goes your money. It may not necessarily be that he intended or had the intent to, you know, not pay you, but maybe he ran out of money, which, unfortunately, happens with businessmen all the time, you know.

So, like I said, we have talked to Major Fraud about it, and even they're on the fence whether this falls into the criminal realm. Most likely, you're going to have to go both routes. I mean, I talked it over with Sergeant Joe. He does want to file at least an incident report to get this started, because, before Major Fraud can, like, make an ultimate decision, we obviously have to send them

over, you know, a report to review. So we are going to get it started, but I just want to, you know, forewarn you that even they're not sure that this is a fileable case in the criminal sense.

MS. PHAN: I mean, I understand what you're saying. Like, I also have a business, so I understand what it's like when you mismanage money and all that, but, I mean, well, correct me if I'm wrong, but wasn't the money in, like --

MS. BLEDSTEIN: Yes.

MS. PHAN: Usually, if you pay out a client, and it's in excess, you're not supposed to touch it.

MS. BLEDSTEIN: Right.

MS. PHAN: It's not really your money.

MR. BROWN: Right.

MS. PHAN: It's the client's money, right?

MR. BROWN: Yes, that's exactly right, and you should -- I mean, I'm sure you can do this, Investigator Bledstein, but, you know, look into how client trust accounts work. But it's not as if the money comes into his general coffers.

MS. BLEDSTEIN: Right.

MR. BROWN: This is money earmarked in Michelle's client trust account. It's her money. It was never his money.

was definitely a big lesson learned, like, you can't always just blindly trust people, but I would have thought, you know, a lawyer, that's someone you should trust. Like, you pay to trust that person.

MS. BLEDSTEIN: Yes.

MS. PHAN: But, had he have told me, I would have helped him.

MS. BLEDSTEIN: Yes. Have your attorneys advised you on the civil route? I kind of feel like this --

MR. BROWN: Yes, we've talked about this. Yes.

MS. PHAN: We have.

MS. BLEDSTEIN: -- this should be -- you should pursue both routes.

MS. PHAN: We want to explore our options.

MS. BLEDSTEIN: Yes.

MS. PHAN: Yes. I wanted to explore all options, and also talk to you guys about this, and see, I mean, what can we do? You guys would know best.

MS. BLEDSTEIN: Yes. I'm sure that your attorneys have told you that the burden of proof is different in both those realms of court, if you will, but it's much higher in a criminal case, and, you know, the punishments are different. So, like, a civil case, you know, you just would have to pay out the money. On the criminal side, the burden of proof is higher, but, you know, the punishment would be

jail time, obviously, and all that.

So I just want to make sure that you understand that there are differences, and it may not go the way that you anticipate, because the burden of proof is higher.

MS. PHAN: Right, right.

MS. BLEDSTEIN: Yes.

MS. PHAN: No, I'm aware.

MS. BLEDSTEIN: Okay.

MS. PHAN: I just want to explore all my options, and my goal, really, is I just want my money back.

MS. BLEDSTEIN: Yes.

MS. PHAN: You know, I have businesses, and him stealing that money has kind of put me in a financial bind, because I'm trying to start -- I'm trying to -- I'm in the middle of trying to hire Ricky Gold (phonetic), who has -- you know, I'm growing small businesses and everything, and he has crippled me in L.A.

MS. BLEDSTEIN: Yes. No, I understand. And, you know, off the record, I would just, you know, recommend googling, you know, like I was telling you about, his current financial situation. I mean, to be honest, I don't even know if the money is there.

MR. BROWN: Right, but doesn't that answer the question itself? He took client trust fund money and used it for some other purpose. That's stealing.

MR. BROWN: So, Investigator Bledstein, if there's anything we can provide you to help understand attorney-client trust accounts and how they work, and how they're different from other accounts, I'm happy to do it, because it really is a very different beast.

It is kept in trust for the specific client, and you can't use it for other purposes, and the fact that he has financial troubles, and uses it to pay other clients that he may have used their money for, for other purposes, doesn't change the fact that it's just converting the money to his own use, and, therefore, theft.

MS. BLEDSTEIN: Right.

MR. BROWN: So I know you know that, but it's a little --

MS. BLEDSTEIN: Yes, and I understand that, but Sergeant Joe and I have been trying to search, you know, if there's ever been a case where an attorney was arrested for that reason, you know, just to see what the precedent is, you know, or whether that usually goes into the civil realm, or the disbarment, you know, route.

Do you have an update -- not for Michelle, but for the attorneys -- do you guys have an update on the disbarment?

MR. BROWN: Yes. So we filed a formal complaint with the State Bar about a month ago. They contacted us

**CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action. I have caused, on August 20, 2021, service of the:

DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO PRECLUDE DEFENDANT FROM RECALLING MICHELLE PHAN AS A WITNESS AND NOTICE OF POTENTIAL REBUTTAL WITNESS

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 20, 2021

/s/ H. Dean Steward

H. Dean Steward