Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 497-6753

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S OPPOSITION TO THIRD PARTY MORGAN WITO'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA IN CRIMINAL CASE |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti"), by and through his advisory counsel of record, H. Dean Steward, hereby files this Opposition to Third Party Morgan Wito's Notice of Motion and Motion to Quash Subpoena in Criminal Case [Dkt. 746.]

Dated:  August 21, 2021                    Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION AND FACTUAL BACKGROUND

On Saturday, August 14, 2021, Morgan Witos ("Ms. Witos") was personally served with a subpoena requiring her testimony on August 17, 2021. Prior to effectuating this personal service, multiple attempts for service were made both informally and formally across many days. For instance, defendant made an unsuccessful attempt over the weekend of August 7-8 to get Ms. Witos to accept service electronically.  Next, between August 11, 2021 and August 14, 2021, six attempts were made by a Dallas process server to contact and serve Ms. Witos at her residence. *See, e.g.,* Exhibit A. The defendant was then forced to use a retired FBI agent and a local Texas private investigator to attempt serve Ms. Witos. *Id.* Ms. Witos was finally served on Saturday, August 14, 2021 outside Dallas, Texas.

On August 17, 2021, counsel for Ms. Witos sent the Court's clerk a letter stating Ms. Wito's informal objection to the subpoena. In the letter, counsel indicated that Ms. Witos did not have the means of coming to California and could not provide testimony relevant to the charges in the Indictment. On August 19, 2021, the Court took up the issue related to Ms. Witos. Mr. Avenatti provided the Court with a detailed explanation relating to Ms. Witos, including the positive, friendly relationship he has enjoyed with her and her father. At that time, the Court stated, "At the appropriate procedural time, we can take this up again." *See, e.g.,* Trial Tr. (8/19/21, Vol. 1).

On August 20, 2021, Ms. Witos filed her "Third Party Morgan Wito's Notice of Motion to Quash. Subpoena in Criminal Case" and attached a corresponding declaration. [Dkt. No. 746]. Ms. Witos makes two arguments in her filing. First, Ms. Witos argues that compelling her testimony would be unreasonable and oppressive. Second, Ms. Witos claims she does not have relevant testimony to provide.  Neither is persuasive or

sufficient enough to quash the subpoena. Accordingly, this Court should deny the motion.

Ms. Witos had an essential role at Eagan Avenatti during relevant time periods. She worked as a CPA at the firm and was responsible for inputting costs and expenses into both QuickBooks and Tabs, as well as financial reporting. She has been referenced by multiple witnesses during the trial.  Her tenure at the firm overlapped the period of time the firm handled the cases for two of the alleged victims in this case, Mr. Johnson and Mr. Barela.  Further, she was responsible for inputting costs and expenses and financial reporting directly relating to Mr. Johnson and Mr. Barela.  For each of this reasons, as well as those set forth below, her motion should be denied.

## II.   LEGAL STANDARD AND ARGUMENT

A criminal defendant has the power to issue a subpoena pursuant to Federal Rule of Criminal Procedure 17. A subpoena may "order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. Proc. 17(c)(1). Both the government and the defendant "have the right to call witnesses, and the power to compel witness testimony is essential to our system of justice." *Barnett v. Norman*, 782 F.3d 417, 422 (9th Cir. 2015); *citing Blair v. United States*, 250 U.S. 273, 281-82 (1919). The "interest in full disclosure and the fair administration of justice overrides concerns that testimony might be inconvenient, burdensome, or harmful to a witness's social or economic status." *Id.; citing United States v. Calandra*, 414 U.S. 338, 345 (1974). The Ninth Circuit has made it clear, "[f]ew witnesses want to testify, and if given the choice, almost never would … But much like jury service, witness testimony is not optional in our justice system – it is essential." *Barnett v. Norman*, 782 F.3d 417, 424-25 (9th Cir. 2015). Indeed, the Supreme Court has repeatedly held that a defendant has a fundamental due process right to mount a defense and call witnesses on his behalf. *See*, *e.g.*, *Taylor v. Illinois*, 484 U.S. 400, 409 (1988).

2

Upon the motion of a subpoenaed party, "the Court may quash or modify the subpoena if 'compliance would be unreasonable or oppressive.'" *United States v. Cota*, 2009 U.S. Dist. LEXIS 18736, at *4 (N.D. Cal. 2009). A decision to enforce or quash criminal subpoena rests within the discretion of the district court. *United States v. Bentacount*, 277 Fed. Appx. 708, 711 (9th Cir. 2008). The Supreme Court has previously determined that the proponent of the subpoena must "clear three hurdles: (1) relevance, (2) admissibility; and (3) specificity." *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006); *quoting United States v. Nixon*, 418 U.S. 683 (1974). The subpoena must be brought in good faith and cannot be intended as a general fishing expedition. *United States v. Scovis*, 743 Fed. Appx. 795, 800 (9th Cir. 2018).

The subpoena at issue directed to Ms. Witos seeks relevant, admissible and specific testimony.

### A.    Mr. Wito's Testimony is Admissible and Relevant

Ms. Witos was a Certified Public Accountant at Eagan Avenatti between 2009 and 2014. For approximately five years, she was responsible for entering costs, fees and expenses into the QuickBooks and Tabs databases, as well as for generating financial and accounting reports. She inputed financial information for several EA clients including two of the alleged victims in this action, Mr. Johnson and Mr. Barela. In her motion to the Court, Ms. Witos confirms, "[d]uring her employment, a significant part of Ms. Wito's responsibilities involved handling administrative tasks . . . <u>in addition to entering lawyers' billable time and expenses into Tabs and QuickBooks</u>." *See, e.g.,* Dkt. 746, p. 4. (emphasis added).

Ms. Wito's role as an accountant at the Eagan Avenatti law firm has been referenced throughout this trial. Kathy Mosby testified that Ms. Witos worked at the EA firm tracking attorney time and expenses in the firm's accounting program. *See, e.g.,* Trial Tr. (8/19/21, Vol. 1) p. 41. Ms. Mosby testified that Ms. Witos assisted with the accounting of the law firm for approximately five years and her primary job was

3

assisting with the accounting and bookkeeping. *See, e.g.,* Trial Tr. (8/19/21, Vol. 1) p. 42. Former EA employee Hillary Wolett testified that Ms. Witos assisted Ms. Regnier with the financial bookkeeping of the law firm. Trial Tr. (8/18/21, Vol. 1) p. 81.

In her Motion to Quash, Ms. Witos argues that her testimony would be irrelevant because she was employed by EA between 2009 and 2014, prior to the scheme alleged in the Indictment. *See, e.g.,* Dkt. 746, p. 2. However, Ms. Witos worked at the law firm, acting within her finance role, on both Mr. Johnson and Mr. Barela's cases and during the time those cases were being litigated and expenses relating to those cases were being incurred.  For instance, Mr. Avenatti and Mr. Johnson entered into a retainer agreement on November 8, 2011. *See, e.g.,* Government Exhibit 1. Mr. Johnson's case was originally filed within the California Superior Court on October 9, 2012 before being removed to federal court on June 21, 2013. Mr. Johnson's case was resolved by way of a settlement that was executed on January 22, 2015. *See, e.g.,* Government Exhibit 37. According to government exhibit 48, multiple costs and expenses were added into the Tabs accounting system between October of 2011 and December of 2014, reflecting the funds incurred in connection with Mr. Johnson's case. Ms. Witos was actively working as a CPA at the firm, including by inputting costs and expenses into Tabs, during this time period.  Indeed, she was the primary person responsible for these entries.

Mr. Avenatti and Mr. Barela entered into a retainer agreement on July 8, 2014. *See,* Government Exhibit 171. According to government exhibit 174, multiple costs and expenses were added into the Tabs accounting system at the end of 2014. Ms. Witos was actively working as a CPA at the firm, including by inputting costs and expenses into Tabs, during this time period.  Indeed, she was the primary person responsible for these entries.

Ms. Witos's testimony is relevant and necessary. Ms. Witos will testify to her custom and practice of entering costs, expenses, hourly work and other expenditures into both Tabs and QuickBooks. Ms. Witos has personal knowledge of the systems, how they

4

worked, and entry of these costs and expenses as it relates to two alleged victims, Mr. Barela and Mr. Johnson. As the Court well knows, the issue of advanced costs and expenses is at the center of this case and the defense.  Ms. Witos's testimony is both relevant and admissible and consistent with the principles of Rule 602. *See, e.g.,* Fed. R. Evid. 602 ("[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")

### B.   Compliance with Defendant's Subpoena Would Not be Unduly Burdensome and Oppressive

Ms. Witos argues that requiring her to travel is unreasonable and compliance with the subpoena would place an undue burden on her and her children. Ms. Witos argues that traveling from Frisco, Texas would be extremely difficult because she has three children and "has no family or friends near her who can care for her children so that she may travel to California alone." *See, e.g.,* Dkt. 746, p. 3. Ms. Witos also claims she does not have the funds to travel to California.  *Mr. Avenatti recognizes that it is inconvenient for Ms. Witos to travel to California to testify in a federal criminal trial and he is very sympathetic to it.*  However, this is a serious case with serious consequences, and thus "convenience" must yield to Mr. Avenatti's need to present his defense as is his constitutional right.

Further, it appears as if Ms. Witos and her husband have sufficient funds to pay for childcare if Ms. Wito's husband is unable to take care of their children in Ms. Witos' brief absence. In early 2020, Ms. Witos and her husband moved to a suburb of Dallas, Texas and purchased a 4,471 square foot home on a quarter acre, complete with a home theater and a mother in-law suite. *See, e.g.,* Exhibit B. Ms. Witos's husband is employed as an executive ("Risk Management Senior Director Information Security at McKesson Corporation") at the seventh largest company in America according to the Fortune 500. And defendant has repeatedly offered, and remains willing, to make arrangements for her travel in order to alleviate any financial burden associated with coming to testify.

5

Ms. Witos has failed to establish that compliance with the relevant subpoena would be unduly burdensome and oppressive. Mr. Avenatti has attempted to, and will continue to, work with Ms. Witos through her counsel to alleviate any unnecessary inconvenience. However, Ms. Wito's testimony is highly relevant and necessary for Mr. Avenatti's defense.

### C.    Video Testimony is Not a Reasonable Alternative

Finally, in her motion, Ms. Witos informs the Court, "[i]n the alternative, Ms. Witos would request to participate via teleconference technology should the court [sic] require her participation." [Dkt. 746, p. 5]. However, it is widely understood among courts that videoconferencing is not a perfect substitute for live hearings. "The immediacy of a living person is lost." *Stoner v. Sowders*, 997 F.2d 209, 213 (6th Cir. 1993). Moreover, "watching an event on the screen remains less than the complete equivalent of actually attending it." *United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001). Further, under the Constitution's Confrontation Clause, a criminal witness must be physically present to testify. See *United States v. Gigante*, 166 F.3d 75, 80 (2d Cir. 1999).

Defendant has a right to compulsory process and to call witnesses in his defense. A criminal defendant has the power to issue a subpoena pursuant to Federal Rule of Criminal Procedure 17 and both the government and the defendant "have the right to call witnesses, and the power to compel witness testimony is essential to our system of justice." *Barnett v. Norman*, 782 F.3d 417, 422 (9th Cir. 2015); citing *Blair v. United States*, 250 U.S. 273, 281-82 (1919). Indeed, the Supreme Court has repeatedly held that a defendant has a fundamental due process right to mount a defense and call witnesses on his behalf. *See*, *e.g.*, *Taylor v. Illinois*, 484 U.S. 400, 409 (1988):

As we noted just last Term, "[o]ur cases establish, at a minimum, that criminal defendants have the right to the government's assistance in

6

compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). Few rights are more fundamental than that of an accused to present witnesses in his own defense, see, e. g., *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Indeed, this right is an essential attribute of the adversary system itself.

"We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense." *United States v. Nixon*, 418 U.S. 683, 709 (1974).

 The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment even though it is not expressly described in so many words:

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967)

A key component of testimony for a finder of fact is being able to perceive the witness and his or her nonverbal cues, behaviors, and reactions upon being asked questions. As Justice Scalia wrote, "The perception that confrontation is essential to

7

fairness has persisted over the centuries because there is much truth to it. A witness may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." *Coy v. Iowa*, 487 U.S. 1012, 1019 (1988) (quoting Zechariah Chafee, Jr., The Blessings of Liberty 35 (1956)). Indeed, remote testimony may have a significant effect on a jury's ability to assess witness credibility, as well as how the witness is perceived.  Thus, Mr. Avenatti objects to video testimony in lieu of her appearance in person.

## III.   **CONCLUSION**

Based upon the foregoing, Mr. Avenatti respectfully requests that this Court deny the request to quash and order Ms. Witos to comply with the subpoena and appear in person on August 24, 2021 to testify.

Dated:  August 21, 2021                    Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

Reference #: **REF-8570621**
Case #: **19-061-JVS**
Your Process Server: **Chad Hatcher**
Person(s) To Be Served: **Morgan Witos**
Date/Time: **August 11 2021 07:30 PM**
Address: ▮▮▮▮▮▮▮▮▮▮▮ **, Frisco, TX 75034**
Outcome: **No answer at door.**

Reference #: **REF-8570621**
Case #: **19-061-JVS**
Your Process Server: **Chad Hatcher**
Person(s) To Be Served: **Morgan Witos**
Date/Time: **August 11 2021 07:33 PM**
Address: ▮▮▮▮▮▮▮▮ **, Frisco, TX 75034**
Outcome: **Per phone call to 657-▮▮▮▮▮▮ left voice mail.**

Reference #: **REF-8570621**
Case #: **19-061-JVS**
Your Process Server: **Chad Hatcher**
Person(s) To Be Served: **Morgan Witos**
Date/Time: **August 11 2021 07:34 PM**
Address: ▮▮▮▮▮▮▮▮ **Frisco, TX 75034**
Outcome: **Per phone call to 732-▮▮▮▮▮▮ left voice mail.**

Reference #: **REF-8570621**
Case #: **19-061-JVS**
Your Process Server: **Chad Hatcher**
Person(s) To Be Served: **Morgan Witos**
Date/Time: **August 12 2021 05:06 PM**
Address: ▮▮▮▮▮▮▮▮▮▮ **, Frisco, TX 75034**
Outcome: **No answer at door.**

Reference #: **REF-8570621**
Case #: **19-061-JVS**
Your Process Server: **Chad Hatcher**
Person(s) To Be Served: **Morgan Witos**
Date/Time: **August 13 2021 12:45 PM**
Address: ▮▮▮▮▮▮▮▮▮▮ **, Frisco, TX 75034**
Outcome: **No answer at door. No neighbors opened door to verify residency**

Reference #: **REF-8570621**
Case #: **19-061-JVS**
Your Process Server: **Chad Hatcher**
Person(s) To Be Served: **Morgan Witos**
Date/Time: **August 13 2021 03:29 PM**
Address ▮▮▮▮▮▮▮▮▮▮ **Frisco, TX 75034**
Outcome: **Per phone call to 201-274-4248. This is the phone of subjects attorney Chris Adam?s, he will accept serve per voicemail he left me**

## PROOF OF SERVICE

| | | |
|---|---|---|
| **Received by Server** | DATE<br>8/13/2021 | PLACE<br>Fort Worth, TX |
| **Served** | DATE<br>8/14/2021 | PLACE<br>BF Phillips Community Park<br>2879 Forest Manor Dr, Frisco, TX |

| SERVED ON (PRINT NAME)<br>Morgan Witos | FEES AND MILEAGE TENDERED TO WITNESS<br>☐ Yes ☑ No Amount $ _____ Ø |
|---|---|
| SERVED BY (PRINT NAME)<br>Monica D. Enriquez | TITLE<br>Private Investigator |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___8/14/2021___     _Monica D Enriquez_
             Date                Signature of Server

Address of Server: 1501 Hall Johnson Rd, #1942, Colleyville, TX 76034

ADDITIONAL INFORMATION

SERVED AT THE DIRECTION OF H. DEAN STEWARD, ESQ., 17 CORPORATE PLAZA, SUITE #250, NEWPORT BEACH, CA. 92660.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**



**Dr,** Frisco, TX 75036

**Sold** | Closed | Single Family | **4** Beds |
**4** Full Baths | **4,471** Sq. Ft. | **0.258** Acres |
**3** Car Garage

## █████████████, Frisco, TX 75034

**4 bd · 4 ba · 4,471 sqft · 11,238 sqft lot**

Stunning 2story traditional DREES HOME situated on a corner lot in Prime West Frisco. Awe-inspiring 19 ft. Ceilings greet you upon arrival with stacked formals. A welcoming living area is open to a gourmet kitchen which offers an abundance of counter space for preparing home-cooked meals. Private master suite is conveniently located on the first floor and features a spacious sitting area and en suite bath. The first floor study could also be used a nursey or mother in-law suite with easy access to a full bath. The upstairs is fit for entertaining with an over-sized game room & wet bar plus home theater with stadium seating for your viewing pleasure. Offering 15K updating allowance with acceptable offer.

## **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on August 21, 2021, service of the:

DEFENDANT'S OPPOSITION TO THIRD PARTY MORGAN WITO'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA IN CRIMINAL CASE

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 21, 2021

/s/ H. Dean Steward
H. Dean Steward

9