UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
                    Plaintiff,  )
     vs.                        )
                                )  SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,          )
                    Defendant.  )TRIAL DAY 21, VOL. 1
------------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

August 18, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    NICOLA T. HANNA
     United States Attorney
4    BRANDON D. FOX
     Assistant United States Attorney
5    Chief, Criminal Division
     ALEXANDER WYMAN
6    Assistant United States Attorney
     Major Frauds Section
7    1100 United States Courthouse
     312 North Spring Street
8    Los Angeles, CA  90012
     (213) 894-6683
9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25

```
 1

 2                              I-N-D-E-X

 3

 4   PLAINTIFF'S
     WITNESSES:              DIRECT   CROSS   REDIRECT   RECROSS
 5
     (None)
 6
     PLAINTIFF'S
 7   EXHIBITS:                                MARKED    RECEIVED

 8   (None)

 9   DEFENSE
     WITNESSES:        DIRECT    CROSS     REDIRECT    RECROSS
10
     EVAN JENNESS        44       49         55
11   JOSEPH VARANI       57
     CARLOS COLORADO     78       93         96
12   JOHN ARDEN          98

13   DEFENSE
     EXHIBITS:                                MARKED    RECEIVED
14
     (None)
15

16

17

18

19

20

21

22

23

24

25
```

|    |    |    |
|----|----|----|
| | 1 | SANTA ANA, CALIFORNIA; TUESDAY, AUGUST 17, 2021; 8:02 A.M. |
| | 2 | (Jury not present) |
| 08:02 | 3 | THE CLERK:  Item 1, SACR-19-00061-JVS, United |
| 08:02 | 4 | States of America versus Michael John Avenatti. |
| 08:02 | 5 | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel |
| 08:02 | 6 | and Alexander Wyman on behalf of the United States. |
| 08:02 | 7 | THE COURT:  Good morning. |
| 08:02 | 8 | MR. AVENATTI:  Good morning, Your Honor.  Michael |
| 08:02 | 9 | Avenatti present with advisory counsel, Mr. Steward, as well |
| 08:02 | 10 | as Ms. Cummings-Cefali and Ms. Hernandez. |
| 08:02 | 11 | THE COURT:  Good morning. |
| 08:02 | 12 | We have a number of matters to take up.  I would |
| 08:02 | 13 | like to begin with Jacqueline Rose's motion to quash. |
| 08:02 | 14 | Ms. Sager. |
| 08:02 | 15 | MS. SAGER:  Thank you, Your Honor.  I appreciate |
| 08:02 | 16 | you hearing us on such short notice.  We tried to give the |
| 08:02 | 17 | Court as much information as we can in our papers about what |
| 08:02 | 18 | this is concerning. |
| 08:02 | 19 | THE COURT:  Take your time. |
| 08:02 | 20 | MS. SAGER:  The Court really needs to go no |
| 08:02 | 21 | further than just to deal with the service issues, but we've |
| 08:03 | 22 | presented several reasons why the subpoena directed to |
| 08:03 | 23 | Ms. Rose was improper. |
| 08:03 | 24 | Among other things, because under Rule 17 it would |
| 08:03 | 25 | be burdensome and a process to require a mother of a |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:03  1   one-year-old to travel cross country on less than a week's
08:03  2   notice, in addition to which the information that's being
08:03  3   proffered by Mr. Avenatti is barely even relevant to this
08:03  4   case based on what I've read in the transcript and
08:03  5   Mr. Avenatti's own presentation, let alone something that
08:03  6   would require that kind of extraordinary effort on behalf of
08:03  7   a nonparty witness.
08:03  8           If the Court needs to reach it, there's a
08:03  9   constitutional issue here that we think justifies having
08:03  10  Ms. Rose not being the witness of choice for Mr. Avenatti
08:03  11  when there's plainly many other alternatives for him to get
08:03  12  the very information of which he is speaking which we've
08:03  13  provided to him and the Court through videotapes that
08:03  14  establish when and where he was on CNN's programming on the
08:04  15  relevant case at issue.
08:04  16          I'm happy to answer any questions the Court has in
08:04  17  response to Mr. Avenatti.  We think we have given the Court
08:04  18  more than ample reason to quash the subpoena.
08:04  19          THE COURT:  The videos that you attached as
08:04  20  Exhibits A and C that put him in New York City, I assume it
08:04  21  was broadcast from New York City.
08:04  22          MS. SAGER:  Correct, Your Honor.  And the
08:04  23  declaration of the custodial witness indicates they were
08:04  24  live from the CNN studios.
08:04  25          THE COURT:  And that puts him in New York City on

08:04   1   April 30th, May 1st --

08:04   2           MS. SAGER:  And May 2nd, correct.  So April 30th,

08:04   3   May 1st, and May 2nd.

08:04   4           THE COURT:  Well, maybe it's just mislabeled, but

08:04   5   Exhibit C says May 30th.

08:04   6           MS. SAGER:  I apologize, Your Honor.  It's April

08:04   7   30th, May 1st, and May 2nd.

08:04   8           THE COURT:  Okay.

08:04   9           MS. SAGER:  The witness had asked for May 1st, so

08:04  10   we were trying to get dates on either side of that in case

08:04  11   there was an issue about one day or the other.  When we

08:04  12   spoke initially, Mr. Avenatti said he believed the relevant

08:04  13   day was May 1st.  It might have been May 2nd.  So we were

08:05  14   trying to sort of book-end those dates.

08:05  15           I would add, Your Honor, because that's

08:05  16   information that is broadcast, we don't have the same

08:05  17   constitutional issues that we do with having a witness

08:05  18   testify about matters which were not published by CNN or by

08:05  19   the witness.  It's broadcast information which we can freely

08:05  20   share.

08:05  21           THE COURT:  Okay.  Thank you.

08:05  22           Mr. Avenatti.

08:05  23           MR. AVENATTI:  Your Honor, a number of points.

08:05  24   First of all, I have both paralegals here present, and

08:05  25   they're prepared to provide testimony to Your Honor if need

08:05   1    be under oath relating to the services of the subpoena.

08:05   2            It was made clear to Ms. Rose that we were

08:05   3    interested in serving her with a subpoena.  We had a very

08:05   4    pleasant conversation with her.  She voiced no opposition.

08:05   5    She agreed to accept service of the subpoena via e-mail.

08:05   6    And both paralegals will testify to that if necessary.

08:05   7            THE COURT:  Was she tendered the appropriate fee?

08:05   8            MR. AVENATTI:  She was not tendered the

08:05   9    appropriate fee for the reason as outlined in my papers,

08:05   10   Your Honor, because I was advised by advisory counsel that

08:06   11   the fee was not required due to my CJA status.  But in any

08:06   12   event, she hasn't traveled anywhere yet.

08:06   13           We're happy to -- if we have to re-serve her and

08:06   14   tender the fee, we're happy to do that.  But that should not

08:06   15   be a reason to quash the subpoena.

08:06   16           THE COURT:  Have you exhausted alternative sources

08:06   17   to place you in New York City on April 30 through May 2,

08:06   18   2018?

08:06   19           MR. AVENATTI:  I have, Your Honor, I mean, you

08:06   20   know, short of me testifying on the stand, and I should not

08:06   21   be put in that position to have to do that.  I have

08:06   22   exhausted alternative means and methods.  I have looked into

08:06   23   other ways that I could show that I was actually in New York

08:06   24   City during those days, and this is unfortunately the only

08:06   25   way that I can figure out how to do that.

08:06  1          I have asked the government to stipulate to these
08:06  2  facts.  I don't think there is any question that I was in
08:06  3  New York City at that time and could not have drafted the
08:07  4  e-mail.
08:07  5          THE COURT:  Why don't the CDs prove that?
08:07  6          MR. AVENATTI:  I'm sorry?
08:07  7          THE COURT:  Why don't the CDs which CNN has
08:07  8  attached to its moving papers prove that?
08:07  9          MR. AVENATTI:  Well, the CDs were not provided
08:07 10  until I received the moving papers, number one, Your Honor.
08:07 11  Number two, here's the problem.  Even though I have a
08:07 12  custodial declaration from CNN, number one, I don't know if
08:07 13  the government is going to object to the admission of the
08:07 14  evidence.  So that's number one.
08:07 15          Number two, even assuming they do not, how am I
08:07 16  supposed to take that declaration and move those exhibits
08:07 17  into evidence without a witness, without a foundational
08:07 18  witness?
08:07 19          So at a minimum I would need a custodial witness
08:07 20  in order to do that.  And what I have told counsel for CNN
08:07 21  is as follows, Your Honor.  I said --
08:07 22          THE COURT:  Why doesn't Rule 902 benefit you just
08:07 23  as it benefits the government in regard to the bank records?
08:07 24          MR. AVENATTI:  Well, they still had to have a
08:07 25  witness in order to move --

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:07   1          THE COURT:  They didn't have a live witness.  They
08:07   2    had a declaration.
08:07   3          MR. AVENATTI:  Well, no.  They actually moved the
08:08   4    records in through a live witness relying on the
08:08   5    declaration, Your Honor.  What they did was they had a
08:08   6    witness on the stand, and they sought to question the
08:08   7    witness about the records, and they then moved the records
08:08   8    in by way of the witness.
08:08   9          THE COURT:  Why doesn't 902 allow you to offer the
08:08   10   declaration and move the exhibits in?
08:08   11         MR. AVENATTI:  Well, my understanding was that it
08:08   12   does not, Your Honor.
08:08   13         THE COURT:  What's the government's position on
08:08   14   that?
08:08   15         MR. SAGEL:  On just that, not on any other --
08:08   16         THE COURT:  Right.
08:08   17         MR. SAGEL:  902(11), if it's a proper
08:08   18   certification, allows the evidence to come in.  That's part
08:08   19   of the reason we did a motion in-limine with Your Honor in
08:08   20   advance of trial.  A lot of times the documents just come in
08:08   21   and they're already part of the record.
08:08   22         THE COURT:  Right.
08:08   23         MR. AVENATTI:  Your Honor, what I informed --
08:08   24         THE COURT:  Doesn't that give you comfort to rely
08:08   25   on the declaration of the custodian to simply move these

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:08   1    disks in?

08:08   2               MR. AVENATTI:  Perhaps, Your Honor.

08:08   3               THE COURT:  What's the qualification?

08:09   4               MR. AVENATTI:  Well, Your Honor, the qualification

08:09   5    is as follows basically, because I want the Court to

08:09   6    understand exactly what happened here.  I have no interest

08:09   7    in inconveniencing Ms. Rose or any other witness in this

08:09   8    case, none whatsoever.

08:09   9               What I told counsel for CNN was as follows:  Get

08:09   10   me a witness.  Get me a custodial witness.  Get me a witness

08:09   11   here locally in Los Angeles.  They have a major bureau here

08:09   12   in Los Angeles.  Get me a witness that I can call to the

08:09   13   stand and who can attest to the fact that I was in the

08:09   14   studio in New York on these dates and we're done.  It's that

08:09   15   simple.

08:09   16               Instead of doing that, we now have this motion to

08:09   17   quash a subpoena.  I offered to take basically any qualified

08:09   18   witness from CNN in order to put this evidence in the record

08:09   19   before the jury.  And I think, as I outlined in my papers,

08:09   20   this is an important point, because Ms. Regnier lied to four

08:09   21   individuals from the government about this alleged creation

08:10   22   of the e-mail.  It was impossible for it to have happened.

08:10   23               I'm going to show that the government knew that

08:10   24   before they called her to the stand.  They knew she had lied

08:10   25   about it and they still called her, and they still asked

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:10    1    questions about it.  So this is not some minor point, Your
08:10    2    Honor.
08:10    3           I need to be able to show that in fact it was an
08:10    4    impossibility for me to have done what Ms. Regnier said that
08:10    5    I did because I was across the country at the time.  That's
08:10    6    what this is about.
08:10    7           To the extent that Ms. Rose is inconvenienced or
08:10    8    it's inconvenient for Mr. Rose, I should be able to subpoena
08:10    9    a custodian of records for CNN, a live witness to put this
08:10   10    before the jury.  I don't think I can just drop evidence in
08:10   11    the record.
08:10   12           THE COURT:  Sir, you try and find out and you'll
08:10   13    find that the Court tends to rule consistently by the given
08:10   14    point of law.
08:10   15           MR. AVENATTI:  I'm not suggesting otherwise, Your
08:10   16    Honor.  I don't think I have suggested otherwise, but they
08:10   17    haven't just admitted records en masse before the jury.
08:11   18    They've done it through witnesses, which makes sense as it
08:11   19    relates to the presentation of evidence.  What am I supposed
08:11   20    to do?  Just drop these DVDs in the record and then argue it
08:11   21    in closing?
08:11   22           THE COURT:  Sir, you are your own counsel.
08:11   23           MR. AVENATTI:  Agreed, Your Honor, but this is the
08:11   24    point here.  The point is I have a right to present my case,
08:11   25    and I have a right to do that through witnesses even if

08:11   1    they're up and down in ten minutes.  There is utility and
08:11   2    there's purpose behind that.
08:11   3            The government was permitted to do that.  I should
08:11   4    be permitted to do it through a witness, put the evidence in
08:11   5    through a witness.  Frankly, Your Honor, I don't know why
08:11   6    this --
08:11   7            THE COURT:  Sir, I appreciate your argument on
08:11   8    that point.  Are there any other points you would like to
08:11   9    make?
08:11   10           MR. AVENATTI:  Beyond what I have included in my
08:11   11   papers, I would just note as follows, Your Honor.  No
08:11   12   witness ever wants to testify in a criminal matter.  I mean,
08:11   13   this is a federal criminal matter, a serious felony criminal
08:12   14   matter.
08:12   15           I don't want to inconvenience Ms. Rose, but I'm
08:12   16   entitled to a live witness.  And I understand that it may be
08:12   17   burdensome for her, and I feel for her.  Again, I don't want
08:12   18   to inconvenience anybody, but I'm entitled to put on my
08:12   19   case.  And I need to be able to put on this evidence because
08:12   20   it's critical as it relates to that e-mail exchange, and
08:12   21   it's critical as it relates to Ms. Regnier's testimony
08:12   22   before this jury, Your Honor.
08:12   23           So if the Court is inclined to quash the subpoena
08:12   24   relating to Ms. Rose, I think the Court should deny the
08:12   25   relief relating to my ability to serve any other CNN

08:12  1    witness.  Let me bring in a custodian witness who can
08:12  2    testify to this before the jury and put the evidence in
08:12  3    before the jury.  And that would be my request.
08:12  4              THE COURT:  Thank you.
08:12  5              Ms. Sager.
08:12  6              MS. SAGER:  It's notable that Mr. Avenatti did not
08:12  7    say during the conversation with Ms. Rose that anyone
08:12  8    explained to her what a subpoena was, what it was that they
08:12  9    were asking her to waive, whether they were demanding that
08:13 10    she get on a plane and come out to California in four days,
08:13 11    because she wasn't told any of those things.
08:13 12              Nor was she paid a witness fee, which the law does
08:13 13    require.  Even for CJA, if the defendant wanted to get
08:13 14    around that, he needed to make an ex parte motion to the
08:13 15    Court under 17(b) and get an order.  He didn't do that
08:13 16    apparently.  He just issued a subpoena on his own by
08:13 17    e-mailing it to the witness.  That's not valid service.
08:13 18              But whether we could or couldn't have a custodial
08:13 19    witness here is really beside the point.  He didn't subpoena
08:13 20    CNN.  We were trying to assist the defense and the Court and
08:13 21    the government by providing what defendant said he needed,
08:13 22    which was evidence that he had been in New York on set at a
08:13 23    particular point in time, which we have provided.
08:13 24              And it sounds like the government does not object
08:13 25    to having this declaration and the DVDs presented to the

08:13   1   jury.  Mr. Avenatti may want theater, but that doesn't

08:13   2   justify their unreasonable and oppressive burden of a

08:13   3   subpoena making a witness cross the country.

08:14   4           And even a custodial witness, as I explained to

08:14   5   Mr. Avenatti, is in Atlanta, Georgia.  That's where CNN is

08:14   6   based.  That's where they keep their records.  That's where

08:14   7   we had someone available to review many hours of videotape

08:14   8   to try to find one that showed Mr. Avenatti's live

08:14   9   appearance on set in New York on these dates.

08:14  10           What he's now asking of the Court is for

08:14  11   permission to make CNN go through that process again.  He

08:14  12   didn't say that last week.  He didn't say that when we filed

08:14  13   our papers, and it's not a reasonable request for the Court

08:14  14   to entertain now.

08:14  15           As to Ms. Rose's subpoena, that's something the

08:14  16   Court should plainly quash for all the reasons we put in our

08:14  17   papers.  Again, I'm happy to answer any questions the Court

08:14  18   may have?

08:14  19           THE COURT:  No.  Thank you.

08:14  20           I'm going to quash the subpoena.  One thing that's

08:14  21   not alluded to by either side is the fact it's a declaration

08:14  22   before me from Ms. Rose indicating that she had no

08:14  23   recollection of any of this and had no substantive testimony

08:15  24   to offer.  No one has suggested that that declaration is not

08:15  25   credible, and it seems to me that she does not personally

08:15   1   have relevant evidence.

08:15   2           I find that the conditions laid down in Shoen v.

08:15   3   Shoen, 5 F.3d 1289-1292 (Ninth Circuit 1993) have not been

08:15   4   met.  There clearly are alternative sources to prove the

08:15   5   point that Mr. Avenatti wants to prove, and indeed CNN has

08:15   6   presented him with what would appear to me a sufficient

08:15   7   declaration under 902 and three disks establishing his

08:15   8   presence on a CNN program on April 30, May 1, and May 2.

08:15   9           Thus, not only has he not exhausted alternative

08:15   10  sources, he chooses to ignore what would appear to be an

08:15   11  entirely sufficient alternative set of sources.

08:16   12          Given that the witness has no information per her

08:16   13  declaration, I also find under Shoen that such evidence is

08:16   14  not clearly relevant to an important issue.  Beyond that, I

08:16   15  find there will be extreme hardship to travel on short

08:16   16  notice with a one-year-old child.

08:16   17          For all those reasons I quash the subpoena.

08:16   18          MS. SAGER:  Thank you, Your Honor.

08:16   19          THE COURT:  Thank you.

08:16   20          MR. AVENATTI:  Your Honor, at this time I move

08:16   21  into evidence the three DVDs in reliance on the custodial

08:16   22  declaration.

08:16   23          THE COURT:  Well, give them an exhibit number.

08:16   24  Are you prepared to do that in front of the jury?

08:16   25          MR. AVENATTI:  I would prefer to do it in front of

08:16   1   the jury.

08:16   2               THE COURT:  Well, let's do it in front of the

08:16   3   jury.

08:16   4               MR. AVENATTI:  That's fine.  Thank you.

08:16   5               MR. SAGEL:  Just for clarification -- I'm not

08:16   6   going to belabor the point, I guess I would say.  We

08:17   7   actually provided the defendant with evidence that has been

08:17   8   in his possession for years, namely, his cell phone records

08:17   9   that show his cell site data and where he was.  We told him

08:17   10  where he was on those various days.  He has had it.

08:17   11              This subpoena was not necessary for him to

08:17   12  establish.  We told him which cities he was in on which

08:17   13  dates, including on May 4th when the wire was actually made.

08:17   14  He also was still not in California.

08:17   15              So this information was provided to Mr. Avenatti

08:17   16  at all times, and he has had it for two years.  So for that.

08:17   17  With regards to these three DVDs and their relevance, we

08:17   18  still would want to make an objection, whether we do it now

08:17   19  or later.

08:17   20              THE COURT:  Later.

08:17   21              MR. SAGEL:  Thank you, Your Honor.

08:17   22              THE COURT:  I would also add that there's

08:17   23  substantial question about the validity of the subpoena

08:17   24  served upon Ms. Rose.

08:17   25              Okay, let's turn now -- there's also a motion to

08:17  1    quash the Evan Carter subpoena.

08:18  2             MR. AVENATTI:  Your Honor, I would ask that the

08:18  3    Evan Carter subpoena issue be delayed until lunch.

08:18  4             THE COURT:  Sir, I'm taking it up now.  We noticed

08:18  5    it for 8:00.

08:18  6             MR. AVENATTI:  I was not aware of it being noticed

08:18  7    for 8:00.  No one informed me that it was noticed for 8:00,

08:18  8    and it was filed yesterday afternoon, sir.

08:18  9             THE COURT:  Ms. Marino is here and we're going to

08:18  10   take it up.

08:18  11            MR. AVENATTI:  There was no notice provided to us,

08:18  12   Your Honor.

08:18  13            THE COURT:  Ms. Marino is here and we're going to

08:18  14   take it up.  The filing was made via ECF, so you clearly got

08:18  15   notice.

08:18  16            Ms. Marino.

08:18  17            MS. MARINO:  Good morning, Your Honor.  Your Honor

08:18  18   has read my moving papers.  I believe they were provided to

08:18  19   Mr. Steward yesterday by e-mail.  I'm prepared to answer any

08:18  20   questions.  I think my moving papers cover our position

08:18  21   rather clearly, Your Honor.

08:18  22            Does the Court have any inquiries that it wants me

08:18  23   to address specifically?

08:18  24            THE COURT:  I will hear you in rebuttal.

08:18  25            MS. MARINO:  Very good, Your Honor.

08:18   1                    THE COURT:  Mr. Avenatti.

08:19   2                    MR. AVENATTI:  Your Honor, I would have

08:19   3   appreciated the opportunity to submit an opposition to this.

08:19   4   Had I known it was going to be taken up this morning, I

08:19   5   would have done so.  So I would ask for an opportunity to

08:19   6   respond in writing before a determination is made by the

08:19   7   Court.

08:19   8                    THE COURT:  I'm going to conditionally quash the

08:19   9   subpoena.

08:19   10                   MR. AVENATTI:  Well, I would like to be heard.

08:19   11                   THE COURT:  Just a minute.  I'm going to

08:19   12  conditionally quash the subpoena.  I find that service was

08:19   13  improper, and I find that the subpoena itself is overbroad.

08:19   14  And it's not apparent that there are any relevant issues

08:19   15  that Ms. Carter can testify to competently.  That said, I

08:19   16  will reserve until I see your papers.

08:19   17                   MR. AVENATTI:  Can I be heard, please?

08:19   18                   THE COURT:  Do you want to be heard now, or do you

08:19   19  want to put a paper in?

08:19   20                   MR. AVENATTI:  I'd like to be heard briefly, and

08:19   21  then I'd like to file something.

08:19   22                   THE COURT:  Proceed.

08:19   23                   MR. AVENATTI:  Your Honor, I'm puzzled by the

08:20   24  statement that service was improper.  Counsel agreed to

08:20   25  accept service of the subpoena after Ms. Carter dodged

                    SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:20  1    service for the better part of seven to ten days.  So there

08:20  2    is no issue as to service.

08:20  3            Counsel contacted Mr. Steward and then

08:20  4    subsequently agreed to accept service.  So any issue that

08:20  5    service was improper I don't think has any basis.  That's

08:20  6    number one.

08:20  7            Number two, Mr. Drum testified at length relating

08:20  8    to the involvement of Ms. Carter, including in connection

08:20  9    with the mock cross-examination, the work that was performed

08:20  10   relating to the summary charts and exhibits that have been

08:20  11   placed before this jury.

08:20  12           She had extensive involvement in this matter in

08:20  13   connection with preparing those exhibits, in connection with

08:20  14   preparing Mr. Drum, in connection with communicating with

08:20  15   the government about the issues that are at the center of

08:21  16   this case.  So I don't know how it can possibly be said that

08:21  17   she doesn't have any relevant information relating to this,

08:21  18   Your Honor.

08:21  19           THE COURT:  Relevant admissible information.

08:21  20           MR. AVENATTI:  And I believe that her

08:21  21   communications with Mr. Drum, for instance, about the work

08:21  22   that he did and they did together, and what documents were

08:21  23   reviewed and not reviewed, I think that's highly relevant

08:21  24   and I think it's highly admissible.  It goes to the heart of

08:21  25   this case.

08:21  1          The idea that somehow this is not relevant, Your

08:21  2    Honor, I don't know how that can possibly be said in light

08:21  3    of Mr. Drum's testimony on the stand.  When I made the

08:21  4    comment to counsel about I had a hunch that Ms. Carter had

08:21  5    done most of the work, that was before I even heard the

08:21  6    testimony from Mr. Drum.

08:21  7          The testimony from Mr. Drum established that my

08:21  8    hunch was sufficiently correct.  Ms. Carter had extensive

08:21  9    involvement in the work in this case, including

08:22  10   communicating with the investigators about the expense

08:22  11   issues, the revenue issues, the settlements, et cetera.  And

08:22  12   I should be permitted to call her in my case-in-chief.

08:22  13         MS. MARINO:  Your Honor, if I can briefly respond.

08:22  14   Counsel is correct on one singular point, and that is that I

08:22  15   did accept service.  He is incorrect that Ms. Carter

08:22  16   attempted to dodge service.  She received some e-mails.

08:22  17   E-mail is not proper service, so there is clearly no dodging

08:22  18   of service.  And I accepted service as soon as I was

08:22  19   contacted.

08:22  20         In terms of the appropriateness of the subpoena,

08:22  21   Your Honor, as we said in our moving papers, Ms. Carter is

08:22  22   certainly not percipient to anything that happened in this

08:22  23   case, and she is not a designated expert.

08:22  24         She is nothing more than a mid-level associate who

08:23  25   assisted Mr. Drum in his preparation for testimony.  That's

21

08:23   1    it.  Her communications are by and large limited to

08:23   2    scheduling.  So I don't see that she has any relevance or

08:23   3    admissible testimony to offer in this case, Your Honor.

08:23   4           I suppose if Mr. Avenatti could point to some

08:23   5    point of impeachment, but he has not done that.  So other

08:23   6    than that, there is really no reason for her testimony.  And

08:23   7    I would add, Your Honor, she lives in Colorado.  So this

08:23   8    kind of notice of, you know, my accepting a subpoena on

08:23   9    Thursday and -- you know, she is an out-of-state witness.

08:23   10   No travel arrangements were attempted.

08:23   11          THE COURT:  There is a family issue; is there not?

08:23   12          MS. MARINO:  Ms. Carter does not have family

08:23   13   issues that I'm aware of, Your Honor.

08:23   14          THE COURT:  Okay.

08:23   15          When can you get your brief in, Mr. Avenatti?

08:24   16          MR. AVENATTI:  Your Honor, I can have it in by

08:24   17   9:00 a.m. tomorrow.

08:24   18          THE COURT:  Can you get any response in by the end

08:24   19   of the day tomorrow, Ms. Marino?

08:24   20          MS. MARINO:  I can, Your Honor.

08:24   21          THE COURT:  Okay.

08:24   22          MS. MARINO:  And then would the Court be ruling on

08:24   23   the papers at that point, Your Honor?

08:24   24          THE COURT:  If further argument is appropriate, I

08:24   25   will inform you tomorrow.

08:24  1          MS. MARINO:  I appreciate that, Your Honor.  I'm
08:24  2   scheduled to be on a plane Thursday morning, so my associate
08:24  3   could cover this hearing if that's necessary -- Cody
08:24  4   Elliott.
08:24  5          THE COURT:  Okay.  Thank you.
08:24  6          MS. MARINO:   Thank you.
08:24  7          THE COURT:  At Docket 679 Mr. Avenatti moved to
08:24  8   strike the testimony of Alexis Gardner or move for a
08:24  9   mistrial.  The government replied at Docket 707.
08:25  10          I reviewed the extensive attachments to the moving
08:25  11   papers and specifically Exhibit B, which is I guess a video
08:25  12   of scrolling tweets made by Ms. Cuniff.  I would be happy to
08:25  13   hear you on that motion at this time, Mr. Avenatti.
08:25  14          MR. AVENATTI:  Your Honor, I'm not going to repeat
08:25  15   what's in the papers.  I'll make a couple quick points.
08:25  16          Your Honor mentioned, I think it was last week,
08:25  17   that we didn't know which of the tweets Ms. Gardner had
08:25  18   viewed.  The reason why we don't know that is because the
08:25  19   Court denied my request to conduct questioning of
08:25  20   Ms. Gardner at the time outside the presence of the jury.
08:26  21          I made that specific request that she be
08:26  22   questioned outside the presence of the jury, and the Court
08:26  23   denied it and insisted that I cross-examine her in the
08:26  24   presence of the jury using social media posts which we have
08:26  25   gone to great lengths in this trial to avoid the jury

08:26  1    seeing.  It would have defeated the entire purpose of that
08:26  2    instruction.
08:26  3            THE COURT:  Is there anything in Robertson, United
08:26  4    States versus Robertson, 895 F.3d 1206-1219 (Ninth Circuit
08:26  5    2018), that would support your request for cross-examination
08:26  6    outside the presence of the jury?
08:26  7            MR. AVENATTI:  No, because it has no applicability
08:26  8    to this situation.
08:26  9            THE COURT:  Okay.
08:26  10           MR. AVENATTI:  And the reason is as follows, Your
08:26  11   Honor.  When you have a witness who has sat in the courtroom
08:27  12   in violation of 615 and heard the testimony --
08:27  13           THE COURT:  Which isn't this case.
08:27  14           MR. AVENATTI:  I know that.  If I could just be
08:27  15   provided 30 seconds, Your Honor, please.  When you have a
08:27  16   witness who has sat in the courtroom and heard actual
08:27  17   testimony or read a transcript, it makes sense to then be
08:27  18   able to cross-examine a witness about that in front of the
08:27  19   jury.  Why?  Because the jury itself heard the testimony.
08:27  20   The jury is already aware of what's in the transcript, so
08:27  21   there is no prejudice or no potential prejudice by
08:27  22   conducting that examination.
08:27  23           That's not this situation.  This situation is you
08:27  24   have a witness who is reading a group of tweets from a
08:27  25   biased reporter that are not accurate generally, okay, in

08:27  1   many ways.  And to then force the defendant to cross-examine
08:28  2   the witness about tweets that the jury is not supposed to be
08:28  3   reading makes no sense.
08:28  4          It opens -- basically it opens a Pandora's box as
08:28  5   it relates to the social media posts and all of the things
08:28  6   that the jury is not supposed to be seeing.  How is one to
08:28  7   conduct a cross-examination utilizing tweets that we have
08:28  8   told these folks they're not supposed to see?
08:28  9          It's an impossibility, Your Honor, and that's why
08:28  10  I asked to do it outside the presence of the jury.  And that
08:28  11  was denied.  At a minimum that inquiry should have been made
08:28  12  at that time outside of the presence of the jury, and she
08:28  13  should have been instructed frankly -- the government has
08:28  14  been aware of Ms. Cuniff's role in this trial for weeks.
08:28  15         They talk to her.  They know what she is doing.
08:28  16  The government should have been instructing their witnesses
08:29  17  not to follow the tweet storm relating to what supposedly
08:29  18  witnesses are testifying to.  They should have instructed
08:29  19  their witnesses not to do that.  They did not do that.
08:29  20         Ms. Gardner purposely availed herself of social
08:29  21  media posts reflecting what other witnesses would testify to
08:29  22  in the trial.  And for the reasons in our papers and for
08:29  23  each of those reasons, Your Honor, her testimony should be
08:29  24  struck.
08:29  25         THE COURT:  Would the government like to be heard?

08:29  1        MR. SAGEL:  I can respond if necessary, or I can

08:29  2   submit on our papers.  If there is anything Your Honor wants

08:29  3   me to respond to, I can.

08:29  4        THE COURT:  Well, you documented the possible

08:29  5   exposure that she had to the e-mails during the course of

08:29  6   the trial.  Anything further you want to make on that point?

08:29  7        MR. SAGEL:  No, Your Honor.  No.  I can submit

08:29  8   unless there is something in response to anything that was

08:29  9   just said or any other questions Your Honor has.

08:30  10        THE COURT:  Okay.

08:30  11        Anything further, Mr. Avenatti?

08:30  12        MR. AVENATTI:  No, sir.

08:30  13        THE COURT:  I deny the motion.  First of all, I

08:30  14   find that Ms. Cuniff's tweets are not the equivalent of

08:30  15   trial transcripts.  There are ongoing snippets, editorial

08:30  16   comments, and other things that run through those.

08:30  17        I did not read all of the tweets in Exhibit B, but

08:30  18   I read a fair sample to understand what's there.  Secondly,

08:30  19   there is a substantial question as to exactly what

08:30  20   Ms. Gardner was exposed to.

08:30  21        The government quotes her testimony from August 3,

08:30  22   starting with when she was asked if she had been following

08:31  23   the case over the last two weeks.  She said:

08:31  24        "A     Yes and no.  It's a bit stressful.  I

08:31  25       try to stay away."

08:31   1          That's the August 3 morning transcript at page 25.

08:31   2   So it's not clear to me that she had blanket exposure to

08:31   3   Ms. Cuniff's tweets.  In any event, I find that the tweets

08:31   4   themselves are not the equivalent of trial transcripts such

08:31   5   that a remedy under 615 should be invoked.  The motion is

08:31   6   denied.

08:32   7          The government provided a response to

08:32   8   Mr. Avenatti's motion at Docket 690, with their response at

08:32   9   705 dealing with Robert Amenta.

08:32  10          Mr. Avenatti, you indicated that you were going to

08:32  11   put in a response to the government's position telling me

08:32  12   why the one e-mail that seemed to have some substantive

08:32  13   information was critical.  In that e-mail, you provide a

08:32  14   corrected I guess wire transfer.

08:32  15          It's at page -- page 18 of Docket No. 690.  Do you

08:32  16   want an opportunity to do that?

08:33  17          MR. AVENATTI:  Your Honor, over the weekend we

08:33  18   filed at Docket 705 my motion for mistrial and to strike

08:33  19   both Mr. Amenta's testimony and that of Mr. Drum due to the

08:33  20   Jencks Act violations.

08:33  21          THE COURT:  I don't recall you addressing any

08:33  22   specific point when I queried you as to whether there was

08:33  23   significant substance to the correction of the IMAD numbers.

08:33  24          MR. AVENATTI:  Your Honor, I'm happy to file

08:33  25   something by --

08:33   1           THE COURT:  I briefly reviewed that, but I don't
08:33   2   recall addressing Mr. Amenta's testimony specifically and
08:33   3   your representation that their IMAD number was significant.
08:33   4           MR. AVENATTI:  Your Honor, I'm happy to submit an
08:33   5   additional brief this evening addressing that specific
08:34   6   point.  I think I touched on it within 705, but I would like
08:34   7   the opportunity to file something specific on that.
08:34   8           THE COURT:  That's fine.
08:34   9           MR. AVENATTI:  Thank you.
08:34   10          THE COURT:  I have a number of filings seeking to
08:34   11  strike John Drum's testimony and/or declare a mistrial.  I
08:34   12  conducted a brief in-camera hearing with the government
08:34   13  yesterday.  The government provided in camera a filing of
08:34   14  about 490 pages.  Having reviewed it, I concluded that there
08:34   15  was no need to have that document remain in camera, and I
08:34   16  directed that service be made on Mr. Avenatti.
08:34   17          So before I rule on the joint motions, I would
08:34   18  like to provide you an opportunity to respond to the
08:35   19  government's filing.
08:35   20          MR. AVENATTI:  So, Your Honor, I was provided a
08:35   21  copy of the government's filing yesterday afternoon.
08:35   22          THE COURT:  I understand.
08:35   23          MR. AVENATTI:  And I was told that that was
08:35   24  pursuant to an order of the Court.
08:35   25          THE COURT:  Correct.

08:35   1          MR. AVENATTI:   There was no written order of the

08:35   2   Court.   I noticed on the sealing request from the government

08:35   3   that it referenced an oral order.

08:35   4          THE COURT:   Correct.

08:35   5          MR. AVENATTI:   We then inquired of Mr. Wyman

08:35   6   yesterday evening as to whether --

08:35   7          THE COURT:   I believe it's also in the minutes,

08:35   8   although I haven't looked at the minutes.

08:35   9          MR. AVENATTI:   Okay.   We inquired of Mr. Wyman as

08:35   10  to whether there had been a hearing.   We didn't get a

08:35   11  response back.   So we had no notice.

08:35   12         THE COURT:   And appropriately so.   The Court

08:35   13  conducted an in-camera inquiry to determine whether those

08:35   14  materials should be provided to you.   Now, if you would like

08:36   15  to put in a response to that, I'm prepared to provide you a

08:36   16  reasonable amount of time to do that.

08:36   17         MR. AVENATTI:   I would like an opportunity to

08:36   18  provide a response to what the government filed in camera

08:36   19  which Your Honor then ordered to be provided to us.   Among

08:36   20  other things, that's an advocacy piece.   It's not a proper

08:36   21  in-camera filing in my view, and it raises a number of

08:36   22  concerns.

08:36   23         The first concern I have is about the other

08:36   24  in-camera filings that have been provided to the Court.   If

08:36   25  they are similar advocacy pieces, that is not appropriate in

08:36    1   my view.  And if they include argument, those should be
08:36    2   provided to the defense so that we can respond.
08:36    3        I know there has been other in-camera filings.
08:36    4   And if they look like what we got last night or late
08:36    5   yesterday, I should say, that's not appropriate.  When the
08:36    6   government is asked to submit documents to the Court, the
08:37    7   government should just be submitting documents, not advocacy
08:37    8   pieces, not explanatory pieces, not anything else.  Not
08:37    9   briefing.
08:37   10        THE COURT:  Sir, that's why I stopped at a brief
08:37   11   in-camera hearing where no substantive issues were taken up.
08:37   12        MR. AVENATTI:  Well, Your Honor, I would make the
08:37   13   following request.  I would like a transcript of the hearing
08:37   14   that took place yesterday relating to this issue, number
08:37   15   one.
08:37   16        Number two, I believe it was structural error and
08:37   17   a violation of Rule 43 and the Sixth Amendment and my
08:37   18   constitutional rights for the Court in the middle of the
08:37   19   trial to have an in-camera, unnoticed hearing with the
08:37   20   government alone without any notice to me as the defendant,
08:37   21   without any opportunity to object to it, completely out of
08:37   22   my presence.
08:37   23        I believe that was structural error and a
08:37   24   violation of Rule 43 and my constitutional rights, Your
08:37   25   Honor.  And I think that in and of itself is grounds for a

08:38   1    mistrial, and I'm happy to brief that issue.  It was in the

08:38   2    middle of the trial, so it's a substantive point.  I had no

08:38   3    notice of it.  None.

08:38   4           It came out of left field when I found out there

08:38   5    had been some oral order.  We went to the docket.  There was

08:38   6    no written order.  I thought:  Oral order?  Where did this

08:38   7    oral order come from?  I thought perhaps Your Honor's clerk

08:38   8    had directed the government to do it.

08:38   9           So it is very disturbing to me that on this

08:38   10   critical issue an in-camera hearing would be held outside of

08:38   11   my presence.  I think it's a significant constitutional

08:38   12   violation and a Rule 43 violation.

08:38   13          Separate and apart from that, Your Honor, what has

08:38   14   now been disclosed relating to Mr. Drum -- and we still

08:38   15   don't have everything, and the Court still doesn't have

08:38   16   everything.  That is clear.  But if you look at what has

08:38   17   just been submitted or was submitted to the Court, Your

08:38   18   Honor -- and I can walk through this with Your Honor.  A

08:39   19   number of these e-mails --

08:39   20          THE COURT:  Sir, let's take it up after you have

08:39   21   had an adequate opportunity to reflect on the content of the

08:39   22   government's filing and put your thoughts on paper.

08:39   23          MR. AVENATTI:  Fair enough, Your Honor, because

08:39   24   this material should have been disclosed under Jencks,

08:39   25   Brady, and Giglio.  And there has been representations made

08:39  1   to Your Honor, including on Friday during the lunch break,

08:39  2   that were demonstrably false, demonstrably false, within

08:39  3   minutes of them learning of the substance of these e-mails.

08:39  4          I'm happy to brief it, Your Honor.  I'm happy to

08:39  5   brief the Rule 43 issue.  But if there has been any other

08:39  6   in-camera meetings, communications --

08:39  7          THE COURT:  There are no other in-camera meetings

08:39  8   that I can recollect.

08:39  9          MR. AVENATTI:  Okay.  So I want to note my

08:39  10  objection on the record relating to that.  We will file the

08:39  11  papers.  We're going to move for a mistrial.  I believe it's

08:40  12  structural error.  I'm not going to repeat myself.  And we

08:40  13  will proceed accordingly.

08:40  14          THE COURT:  Very well.

08:40  15          MR. AVENATTI:  And, Your Honor, one other request

08:40  16  that I have in that regard.  We were given notice on ECF

08:40  17  about a written order from Your Honor directing the Clerk's

08:40  18  Office to make exhibits available to the press.

08:40  19          THE COURT:  Right.

08:40  20          MR. AVENATTI:  I would inquire as to whether there

08:40  21  was a request made before that order was issued.  And if so,

08:40  22  was that a request by the Clerk's Office or a request from a

08:40  23  member of the press?

08:40  24          THE COURT:  A member of the press asked to obtain

08:40  25  copies of the exhibits.  Ms. Bredahl talked to the folks

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:40  1    downtown, and it was concluded that the appropriate way to
08:40  2    allow the press access to public materials was to provide
08:40  3    the exhibits through the Clerk's Office downstairs and allow
08:41  4    anybody who wants to request a copy to request a copy and
08:41  5    pay whatever the appropriate fee is.
08:41  6            I believe that the press, just as the press has a
08:41  7    right to be here and the defendant has a right to a public
08:41  8    trial, that extends to the exhibits in the trial unless
08:41  9    they're under seal for some reason or there's some other
08:41  10   privilege reason why the press shouldn't have them.  I
08:41  11   believe that's part of the defendant's right to a public
08:41  12   trial.
08:41  13           MR. AVENATTI:  I will note my objection to that
08:41  14   order.  But more importantly, I will note my objection to
08:41  15   the process.  If there are any requests made to the Court
08:41  16   relating to the providing of exhibits or anything else of
08:41  17   that nature, I believe that again under Rule 43 I have a
08:41  18   right to know about that.
08:41  19           I have a right to know if a request is made by the
08:41  20   press, because generally in my experience those requests are
08:41  21   made in writing to the Court, and then the Court gives an
08:42  22   opportunity to the parties to respond, even if it's a very
08:42  23   brief opportunity, meaning in a matter of hours.
08:42  24           THE COURT:  If you want to tell me right now why I
08:42  25   shouldn't permit the press, as part of guaranteeing a public

08:42  1    trial, why I shouldn't allow the press to copy exhibits that
08:42  2    are in the public domain, I would be happy to hear you.  And
08:42  3    if you tell me why I should rescind that order, I will
08:42  4    certainly consider the reason.
08:42  5         MR. AVENATTI:  Your Honor, I'll be happy to submit
08:42  6    something in writing.
08:42  7         THE COURT:  Should I rescind that order?
08:42  8         MR. AVENATTI:  I'm sorry?
08:42  9         THE COURT:  Should I rescind that order?
08:42 10         MR. AVENATTI:  Yes, I believe you should rescind
08:42 11    that order, Your Honor, because among other things it was
08:42 12    issued without any notice to the defense.  I should have
08:42 13    been apprised of the request, and I should have been
08:42 14    provided an opportunity to object.  I wasn't given an
08:42 15    opportunity to respond.
08:42 16         THE COURT:  Sir, I don't believe you have any
08:42 17    constitutional basis to object to the press having access to
08:42 18    public records any more than you have a right to object to
08:42 19    the press being present in the courtroom.  That's part of
08:43 20    your constitutional right for a public trial.
08:43 21         MR. AVENATTI:  I understand the Court's position
08:43 22    and I'm happy to brief it, Your Honor.
08:43 23         THE COURT:  Fine.
08:43 24         MR. AVENATTI:  And I will note that we raised a
08:43 25    similar issue before the trial as it related to access by

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

34

08:43   1   the press at sidebars.  So we have raised this concern

08:43   2   previously with the Court.  But at a minimum, Your Honor, I

08:43   3   asked that I be informed of any hearings or any requests or

08:43   4   anything else during the course of the trial.  I think

08:43   5   that's my right to be so informed.

08:43   6           THE COURT:  Well, sir, suppose somebody goes

08:43   7   downstairs right now and asks to take a look at the public

08:43   8   court file and asks the clerk to be able to make a copy.  Is

08:43   9   that impermissible?

08:43   10           MR. AVENATTI:  No, because it's not a request made

08:43   11   to the Court, Your Honor.  That's the issue.

08:43   12           THE COURT:  At Docket 717 Mr. Avenatti filed a

08:43   13   Rule 29 motion at 11:51 last night.

08:44   14           Would the government like an opportunity to

08:44   15   respond in writing?

08:44   16           MR. SAGEL:  Yes, Your Honor.  I guess the answer

08:44   17   is yes with the caveat of I'm not sure what Your Honor's

08:44   18   practice was, whether you were going to defer until the end

08:44   19   of trial and if you want something currently or at the end

08:44   20   of trial.  We will do whatever Your Honor would like.

08:44   21           But, yes, if Your Honor is not putting it off

08:44   22   until the end of trial or deferring it, then we will put

08:44   23   something in writing now.  If not, we will do it at the end

08:44   24   of trial post all evidence in writing.

08:44   25           THE COURT:  I would like to take it up now.  So

08:44  1    can you put on file whatever you want by the end of the day,

08:44  2    and we'll take it up prior to the court day tomorrow.

08:44  3              MR. SAGEL:  The end of the day is tough.  It could

08:45  4    be before the morning, but it's going to probably be late

08:45  5    this evening.

08:45  6              THE COURT:  That's all right.

08:45  7              MR. SAGEL:  Thank you, Your Honor.

08:45  8              THE COURT:  Counsel for Morgan Witos had sent to

08:45  9    the Court and copied the parties with an e-mail

08:45  10   concerning -- well, he's not her counsel.  But a friend of

08:45  11   Ms. Morgan Witos, I'll put it that way, sent an e-mail to

08:45  12   the Court with a copy to the parties addressing the subpoena

08:45  13   that had been served on her.

08:45  14             I would like to hear the parties' response to the

08:46  15   letter.  It doesn't have to be right now.

08:46  16             MR. AVENATTI:  I'm not even aware of what Your

08:46  17   Honor is speaking of.

08:46  18             THE COURT:  It was an August 17 e-mail sent at

08:46  19   7:46 to Mr. Steward, Mr. Sagel, and Mr. Wyman, as well as

08:46  20   Ms. Bredahl.  Subject, United States versus Avenatti;

08:46  21   attachment, letter to James Selna.pdf.  So it was sent to

08:46  22   your advisory counsel.

08:46  23             MR. AVENATTI:  Okay.  I haven't seen it yet.  I

08:46  24   will look at it during the break.

08:46  25             THE COURT:  Okay.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:46  1          Anything else we should take up at this time?

08:46  2          MR. SAGEL:  Briefly, Your Honor, just to get Your

08:46  3   Honor's -- what Your Honor wants from the government.  I

08:47  4   believe defendant -- sorry, I don't have the document

08:47  5   control number.  He filed a motion, I think it was either to

08:47  6   dismiss or something, regarding the Tabs data.  It's

08:47  7   something that we orally addressed with Your Honor.  I

08:47  8   believe it was on Friday.

08:47  9          I don't know what Your Honor -- I believe it's

08:47  10  docket 706, inquiring of the Court if and when you want

08:47  11  something in a written response.  The same response I would

08:47  12  give pretty much from the other day is going to be the

08:47  13  equivalent, where and when.  It's never been brought up.

08:47  14         And what I also point out and defendant ignores is

08:47  15  even Ms. Regnier's testimony, she didn't even know of it as

08:47  16  Tabs until he said the word and she said, yeah, that might

08:47  17  be the name of it.  At no point did she mention Tabs, and it

08:47  18  just jumps to many things.

08:47  19         THE COURT:  If you want to put in a response to

08:48  20  706, I would be happy to receive it.

08:48  21         MR. SAGEL:  Thank you, Your Honor.  Do you have

08:48  22  any immediate deadlines?  If not, we'll do it probably later

08:48  23  this week.

08:48  24         THE COURT:  Today it's all part of the Drum

08:48  25  motion.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:48    1          MR. AVENATTI:  Well, I would argue, Your Honor,
08:48    2    that the lack of production of the Tabs and the QuickBooks
08:48    3    data, the entirety of the QuickBooks data, is bigger than
08:48    4    the Drum motion.  It's certainly an issue in the Drum
08:48    5    motion.
08:48    6          But I just want to note right now for the record
08:48    7    that Mr. Sagel informed the Court that Ms. Regnier never
08:48    8    mentioned Tabs.  That is the representation that was made to
08:48    9    Your Honor.  It is demonstrably false.  The interview notes
08:49   10    from the government include references to Tabs, using the
08:49   11    word Tabs.
08:49   12          THE COURT:  It's easy enough to go back to the
08:49   13    transcript.
08:49   14          MR. AVENATTI:  I'm not speaking of the transcript.
08:49   15          THE COURT:  I think that's what --
08:49   16          MR. AVENATTI:  No -- sorry.  I didn't mean to
08:49   17    interrupt.  That's not what he said.  That's not what he
08:49   18    said, because that's not the issue.  He wants Your Honor to
08:49   19    believe that they had no idea Tabs existed until she finally
08:49   20    remembered the name when I mentioned it.  That's the issue.
08:49   21    That is the issue.  And that's false.
08:49   22          I have the interview notes.  They have the
08:49   23    interview notes.  She told them about Tabs years ago, years
08:50   24    ago, and they never produced it.  And they led Your Honor
08:50   25    to -- they repeatedly said:  We understand our discovery

08:50  1    obligation.

08:50  2              We laid it out in the motion, Your Honor, how many

08:50  3    times we asked for it.  Many, many, many, many times.  And

08:50  4    every time Mr. Sagel said the same thing.  And now it has

08:50  5    been shown to be completely false.

08:50  6              But this idea that Ms. Regnier did not mention

08:50  7    Tabs to Mr. Sagel and the agents, it's in the notes, Your

08:50  8    Honor.  It's in the interview notes, their own interview

08:50  9    notes.  And Mr. Sagel can correct me if I'm wrong.

08:50  10             But this idea that he is leading the Court to

08:50  11   believe that they had no idea about Tabs before she

08:50  12   mentioned the name, that's false.  And I would challenge

08:50  13   Mr. Sagel to tell the Court that they had never heard about

08:50  14   Tabs in the two-and-a-half years of this investigation

08:51  15   before Ms. Regnier took the stand.

08:51  16             I challenge him to make that representation now

08:51  17   again to this Court.

08:51  18             THE COURT:  Anything further at this time?

08:51  19             MR. SAGEL:  We have one other witness issue.

08:51  20             MR. WYMAN:  May I address this briefly?

08:51  21             THE COURT:  Please.

08:51  22             MR. WYMAN:  My understanding is that the

08:51  23   defendant's first witness today is Evan Jenness, and I

08:51  24   understand the purpose of his testimony --

08:51  25             THE COURT:  Her testimony.

08:51  1            MR. WYMAN:  I'm sorry -- her testimony is she is
08:51  2  going to say she was not on a phone call that Gregory Barela
08:51  3  testified he believes she was.  I expect that she will also
08:51  4  testify that she knows Gregory Barela because the defendant
08:51  5  introduced her to him to be essentially her criminal defense
08:51  6  attorney.
08:51  7            So as a result, it's obviously relevant that she
08:51  8  is a criminal defense attorney.  It's also very relevant to
08:51  9  witness bias and generally relevant that she has previously
08:52  10  represented the defendant before their relationship.
08:52  11            I don't intend to elicit what matter or what type
08:52  12  of matter even that she represented him in, but I did want
08:52  13  to flag for the Court that I do intend to elicit on
08:52  14  cross-examination that she is a criminal defense attorney
08:52  15  and that she previously represented the defendant.
08:52  16            Before I ask those questions, I wanted to at least
08:52  17  inform the Court in case there's an objection by the
08:52  18  defendant.
08:52  19            MR. AVENATTI:  Your Honor, I raised this on
08:52  20  Friday, and Your Honor said, well, just make sure your
08:52  21  direct does not open that door or something.  I'm
08:52  22  paraphrasing.
08:52  23            Your Honor, under 403 they should not be able to
08:52  24  get into the fact that she represented me in a matter and
08:52  25  leave the jury with the suggestion that she represented me

08:52  1    in some other criminal matter, especially when that criminal
08:53  2    matter, Your Honor, was a matter in which there were never
08:53  3    any charges.  Never any charges.  So that line of
08:53  4    questioning should be excluded under 403.
08:53  5          If they want to establish that she is an attorney,
08:53  6    that's fine.  If they want to establish that I had referred
08:53  7    Mr. Barela to her, that's fine.  But the idea --
08:53  8          THE COURT:  Sir, it's going to be controlled by
08:53  9    the scope of your direct.
08:53  10         MR. AVENATTI:  Well, Your Honor, I'm obviously
08:53  11   going to ask her:  Are you an attorney?  I'm not going to
08:53  12   ask her if she is a criminal defense attorney.  I'm going to
08:53  13   ask her if she's an attorney.  I'm going to ask her if she
08:53  14   knows Greg Barela.  And then I'm going to get into the fact
08:53  15   that this phone call never happened.
08:53  16         But what I don't want is for the government to
08:53  17   then ask the question, even if the objection is sustained,
08:53  18   suggesting to the jury that she is representing me in some
08:53  19   other criminal matter.  And that's what Mr. Wyman has
08:53  20   indicated he plans on doing, and that would be highly
08:54  21   prejudicial.
08:54  22         THE COURT:  Without a sidebar we're not going to
08:54  23   get into the fact that she is a criminal attorney or that
08:54  24   she has represented Mr. Avenatti in criminal matters.
08:54  25         MR. AVENATTI:  Thank you, Your Honor.

08:54   1          MR. WYMAN:  Your Honor, I don't intend to elicit
08:54   2   that she has represented the defendant in criminal matters.
08:54   3   The fact of her being a criminal defense attorney is why she
08:54   4   knows Greg Barela, because that's why the defendant
08:54   5   introduced her to him.  He introduced Evan Jenness to Greg
08:54   6   Barela when Greg Barela was under investigation by the D.A.
08:54   7          So the defendant introduced her as a possible
08:54   8   criminal defense attorney.  She is also the defendant's
08:54   9   witness.  Bias with her relationship with the defendant is a
08:54  10   quintessential bias point for any witness he puts up there.
08:54  11          So I don't mean to say that she represented him in
08:54  12   another matter, but I think it's totally fair and
08:54  13   appropriate to say she has represented the defendant as an
08:54  14   attorney.  And the fact that she is a criminal defense
08:55  15   attorney is also separately relevant and admissible.
08:55  16          THE COURT:  Let's hear what the direct is.
08:55  17          MR. WYMAN:  Very well, Your Honor.  I will ask for
08:55  18   a sidebar if I believe it's appropriate.
08:55  19          THE COURT:  Okay.
08:55  20          MR. WYMAN:  May I raise one other issue with
08:55  21   regard to Ms. Jenness?
08:55  22          On Sunday evening, I believe it was, we received
08:55  23   an e-mail from Ms. Hernandez providing the two e-mails in
08:55  24   reciprocal discovery.  These e-mails are between Evan
08:55  25   Jenness, Greg Barela, and Michael Avenatti.  They relate to

08:55  1    that introduction I was referring to a minute ago when Greg

08:55  2    Barela was being investigated by the D.A.'s Office and the

08:55  3    defendant introduced her to him.

08:55  4            These e-mails, in addition to being not produced

08:55  5    until now, appear to us to be privileged.  They are

08:55  6    communications between Greg Barela and another attorney,

08:55  7    Evan Jenness.  And Greg Barela to our knowledge has never

08:56  8    waived that privilege.

08:56  9            So we don't believe these should have been

08:56  10   disclosed to us, and we don't believe that they should be

08:56  11   admitted into evidence both for Rule 16 violations because

08:56  12   they are privilege, and they're also hearsay.  But the main

08:56  13   concerns we have are the privilege and the Rule 16

08:56  14   violation.

08:56  15           THE COURT:  What's the date of the e-mails?

08:56  16           MR. WYMAN:  The e-mails are dated June 22nd, 2018.

08:56  17           MR. AVENATTI:  Your Honor, I could shortcut this.

08:56  18   I don't have any desire to use and I'm not planning on using

08:56  19   the e-mails.  The reason I produced them is, unlike the

08:56  20   government, we comply with our discovery obligations under

08:56  21   26.2, sir.  That's what we do.  So that's why they were

08:56  22   provided.

08:56  23           I don't think they were privileged because of the

08:56  24   waiver and a whole host of issues including the testimony

08:56  25   that the government elicited on direct.

| | | |
|---|---|---|
| 08:56 | 1 | THE COURT:  If you're not going to use them, I |
| 08:56 | 2 | think you're suggesting that's the end of the discussion. |
| 08:57 | 3 | MR. AVENATTI:  That's the end of the discussion. |
| 08:57 | 4 | THE COURT:  That's the end of the discussion. |
| 08:57 | 5 | MR. AVENATTI:  Thank you, sir. |
| 08:57 | 6 | THE COURT:  Okay.  We'll be in recess until the |
| 08:57 | 7 | jury comes in. |
| 08:57 | 8 | (Recess taken at 8:57 a.m.; |
| 08:57 | 9 | proceedings resumed at 9:13 a.m.) |
| 09:13 | 10 | (Jury present) |
| 09:13 | 11 | THE CLERK:  Item 1, SACR-19-00061-JVS, United |
| 09:13 | 12 | States of America versus Michael John Avenatti. |
| 09:13 | 13 | MR. SAGEL:  Good morning.  Your Honor.  Brett |
| 09:13 | 14 | Sagel and Alexander Wyman on behalf of the United States. |
| 09:13 | 15 | And at counsel table is Special Agent Remoun Karlous. |
| 09:13 | 16 | THE COURT:  Good morning. |
| 09:13 | 17 | MR. AVENATTI:  Good morning, Your Honor.  Michael |
| 09:13 | 18 | Avenatti present with Mr. Steward, Ms. Cummings-Cefali, and |
| 09:13 | 19 | Ms. Hernandez. |
| 09:13 | 20 | THE COURT:  Good morning. |
| 09:13 | 21 | And good morning, ladies and gentlemen. |
| 09:13 | 22 | THE JURY:  Good morning. |
| 09:13 | 23 | THE COURT:  Mr. Avenatti, would you call your |
| 09:13 | 24 | first witness, please. |
| 09:13 | 25 | MR. AVENATTI:  Yes, Your Honor. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:13 | 1 | The defense calls Evan Jenness. |
| 09:13 | 2 | EVAN JENNESS, DEFENSE WITNESS, SWORN |
| 09:14 | 3 | THE CLERK:  If you will please state and spell |
| 09:15 | 4 | your first and last name.  And if you will pull the |
| 09:15 | 5 | microphone close to you. |
| 09:15 | 6 | THE WITNESS:  Evan, E-v-a-n.  Last name, Jenness, |
| 09:15 | 7 | J-e-n-n-e-s-s. |
| 09:15 | 8 | THE CLERK:  Thank you. |
| 09:15 | 9 | THE COURT:  Mr. Avenatti. |
| 09:15 | 10 | DIRECT EXAMINATION |
| 09:15 | 11 | BY MR. AVENATTI: |
| 09:15 | 12 | Q    Ms. Jenness, good morning. |
| 09:15 | 13 | A    Good morning. |
| 09:15 | 14 | Q    Are you a licensed attorney in the state of California? |
| 09:15 | 15 | A    Yes. |
| 09:15 | 16 | Q    Do you know a gentleman by the name of Greg Barela? |
| 09:15 | 17 | A    Yes. |
| 09:15 | 18 | Q    Have you spoken to Mr. Barela in the past? |
| 09:15 | 19 | A    Yes. |
| 09:15 | 20 | Q    When was the last time that you spoke with Mr. Greg |
| 09:15 | 21 | Barela? |
| 09:15 | 22 | A    June 23rd of 2018. |
| 09:15 | 23 | Q    Now, the government called Mr. Barela to testify before |
| 09:15 | 24 | this jury previously, and I want to ask you about some of |
| 09:16 | 25 | the things that he told the jury under oath. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:16   1            "Q      Do you have a recollection that when
09:16   2       you met with the agents and the Assistant U.S.
09:16   3       Attorneys on March 15th, 2019, you also recounted
09:16   4       a story for them about a phone call that you had
09:16   5       had on or about November 15th, 2018?  Do you
09:16   6       recall that?
09:16   7            "A      I do not.
09:16   8            "Q      Please take a look at paragraph 44.
09:16   9       And my question is:  Does that refresh your
09:16   10      recollection?
09:16   11           "A      Yes, I recall that.
09:16   12           "Q      So according to you, on or about
09:17   13      November 14th, 2018, you called Ms. Regnier and
09:17   14      you asked for Mr. Arden and Mr. Ibrahim, correct?
09:17   15           "A      Correct.
09:17   16           "Q      And you were told that Mr. Arden and
09:17   17      Mr. Ibrahim were not available, so you texted
09:17   18      Mr. Arden; is that right?
09:17   19           "A      That's correct.
09:17   20           "Q      And since this was after March of
09:17   21      2018, according to you Mr. Ibrahim and Mr. Arden
09:17   22      were no longer speaking with you, right?
09:17   23           "A      That's correct.
09:17   24           "Q      And after you texted Mr. Arden, he
09:17   25      responded by calling you with Mr. Ibrahim on the

09:17   1       phone as well as that attorney that came up during

09:17   2       the direct, Evan Jenness; right?

09:17   3          "A     I believe so.

09:17   4          "Q     Well, that's what you told the

09:17   5       federal agents, right?

09:17   6          "A     It sounded like.

09:18   7          "Q     Well, that's what you told the

09:18   8       federal agents; is it not?  You told the federal

09:18   9       agents it was Evan Jenness; did you not, sir?

09:18   10          "A     I believe so."

09:18   11      Ms. Jenness, did you ever participate on a phone

09:18   12 call with Mr. Barela as he told the federal agents?

09:18   13 A    No.

09:18   14      MR. AVENATTI:

09:18   15          "Q     Okay.  And you also told the agents

09:18   16       that this seemed suspicious to you when all three

09:18   17       of them called you, and at that point you knew

09:18   18       that my firm had stole your money.  That's what

09:18   19       you told them, right?

09:18   20          "A     I did.

09:19   21          "Q     And during the call you accused the

09:19   22       firm of stealing your money; is that right?

09:19   23          "A     Correct."

09:19   24 BY MR. AVENATTI:

09:19   25 Q    Ms. Jenness, were you ever on a phone call with

| 09:19 | 1  | Mr. Barela where he accused the law firm of stealing his |
| 09:19 | 2  | money? |
| 09:19 | 3  | MR. WYMAN:  Asked and answered. |
| 09:19 | 4  | THE COURT:  Overruled. |
| 09:19 | 5  | THE WITNESS:  Absolutely not. |
| 09:19 | 6  | BY MR. AVENATTI: |
| 09:19 | 7  | Q    Are you certain of that? |
| 09:19 | 8  | A    Yes. |
| 09:19 | 9  | MR. AVENATTI: |
| 09:19 | 10 | "Q    And Evan Jenness told you on the call |
| 09:19 | 11 | that you could not accuse the law firm because it |
| 09:19 | 12 | was slander, right? |
| 09:19 | 13 | "A    Yes." |
| 09:19 | 14 | BY MR. AVENATTI: |
| 09:19 | 15 | Q    Ms. Jenness, did you ever tell government witness |
| 09:19 | 16 | Mr. Barela that he could not accuse the firm of stealing his |
| 09:20 | 17 | money because it was slander? |
| 09:20 | 18 | A    Absolutely not. |
| 09:20 | 19 | MR. AVENATTI: |
| 09:20 | 20 | "Q    And you responded by telling |
| 09:20 | 21 | Ms. Jenness, the attorney, that she had a conflict |
| 09:20 | 22 | of interest because she had had three conference |
| 09:20 | 23 | calls with you and knew about the Brock matter and |
| 09:20 | 24 | waiting for the settlement proceeds; is that |
| 09:20 | 25 | right? |

| | | |
|---|---|---|
| 09:20 | 1 | "A      Correct." |
| 09:20 | 2 | BY MR. AVENATTI: |
| 09:20 | 3 | Q    Did Mr. Barela ever tell you that? |
| 09:20 | 4 | A    Certainly not. |
| 09:20 | 5 | Q    Did Mr. Barela ever communicate with you about the |
| 09:20 | 6 | Brock settlement? |
| 09:20 | 7 | A    No. |
| 09:21 | 8 | MR. AVENATTI: |
| 09:21 | 9 | "Q      And after you told Ms. Jenness that, |
| 09:21 | 10 | Ms. Jenness, Mr. Arden, and Mr. Ibrahim hung up on |
| 09:21 | 11 | you? |
| 09:21 | 12 | "A      That's correct. |
| 09:21 | 13 | "Q      And that's what happened, right? |
| 09:21 | 14 | "A      Yes. |
| 09:21 | 15 | "Q      You're sure about that? |
| 09:21 | 16 | "A      Yes." |
| 09:21 | 17 | BY MR. AVENATTI: |
| 09:21 | 18 | Q    Ms. Jenness, did you ever hang up on Greg Barela? |
| 09:21 | 19 | A    Absolutely not. |
| 09:22 | 20 | MR. AVENATTI: |
| 09:22 | 21 | "Q      Here is my last question.  I'm going |
| 09:22 | 22 | to call witnesses in this case about this |
| 09:22 | 23 | telephone call that you claim occurred where they |
| 09:22 | 24 | hung up on you, including Ms. Evan Jenness.  Would |
| 09:22 | 25 | you like to change any of your testimony, sir, |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:22   1          that you gave to this jury about that call?
09:22   2              "A    Can you read that back, the exact
09:22   3          statement?"
09:23   4              The question was read back.
09:23   5              "A    I would not, and I look forward to
09:23   6          it."
09:23   7   BY MR. AVENATTI:
09:23   8   Q   My question to you, Ms. Jenness, is:  Is there any
09:23   9   doubt in your mind that what Mr. Barela told this jury was
09:23  10   completely false?
09:23  11   A   What he stated was not correct.
09:23  12              MR. AVENATTI:  Nothing further.
09:23  13              THE COURT:  Mr. Wyman.
09:23  14                     CROSS-EXAMINATION
09:23  15   BY MR. WYMAN:
09:24  16   Q   Good morning, Ms. Jenness.
09:24  17   A   Good morning.
09:24  18   Q   You have been an attorney for a long time; isn't that
09:24  19   right?
09:24  20   A   Yes, I have.
09:24  21   Q   And you're a criminal defense attorney?
09:24  22   A   That's correct.
09:24  23              THE COURT:  Just a minute.  Sidebar.
09:24  24          (Sidebar conference)
09:29  25              THE COURT:  I thought I said we weren't going to
```

09:29   1   get into the facts.

09:29   2           MR. WYMAN:  I don't intend to elicit that she

09:29   3   represented him.

09:29   4           THE COURT:  No, no.  There were two points:

09:29   5   whether she was a criminal defense attorney and then whether

09:29   6   she represented Mr. Avenatti in a criminal matter.

09:29   7           MR. WYMAN:  By my understanding --

09:29   8           THE COURT:  Your understanding is incorrect.

09:30   9           MR. WYMAN:  I apologize, Your Honor.

09:30   10          The defendant has attempted to establish on

09:30   11  cross-examination of Mr. Barela that he was untrustworthy

09:30   12  because he was a convicted felon.  It's relevant that the

09:30   13  defendant knew he was under investigation by the D.A., which

09:30   14  is why he introduced Mr. Barela to Ms. Jenness in 2018.

09:30   15  That's what the defendant elicited on direct, the last time

09:30   16  that Ms. Jenness talked to Mr. Barela, and it was in

09:30   17  connection with her possibly being hired to represent

09:30   18  Mr. Barela in a criminal proceeding.

09:30   19          That was the point of me asking that question.  I

09:30   20  apologize.

09:30   21          THE COURT:  Are you going to go out and make a

09:30   22  point that she represented Mr. Avenatti?

09:30   23          MR. WYMAN:  No, Your Honor.

09:30   24          THE COURT:  Then I don't have a problem with that

09:30   25  question as long as it relates to Mr. Barela.

09:30    1          MR. AVENATTI:  There is no question what Your
09:30    2  Honor --
09:30    3          THE COURT:  I don't think if he's not going into
09:30    4  it that there's any prejudice that she is a criminal defense
09:30    5  lawyer.
09:30    6          MR. AVENATTI:  I did not ask -- I think this is
09:30    7  important as to what I think where counsel is going.  That's
09:30    8  why I'm saying this.  I did not ask Ms. Jenness what she
09:30    9  conversed with Mr. Barela about because those are potential
09:30   10  privilege issues.
09:30   11          As to the last time that she met with him, that
09:30   12  question is not privileged.  What Ms. Jenness spoke to
09:30   13  Mr. Barela about, whether it was a criminal matter or some
09:30   14  other matter, should be off limits.  It's irrelevant what
09:30   15  they conversed about, and I didn't ask about that.  It's
09:30   16  outside the scope of my direct.
09:30   17          I was only asking about the temporal issue.
09:30   18  Counsel should not be able to get into why Mr. Barela
09:30   19  consulted Ms. Jenness, what it was concerning, what the
09:30   20  communications were, or anything else of that nature.  That
09:30   21  was not the scope of the direct.  It would be outside the
09:30   22  scope of the direct, and I would object.
09:30   23          MR. WYMAN:  I would also note there is a text
09:30   24  message I believe from the defendant to Mr. Barela with Ms.
09:30   25  Jenness's name and contact info that's in regard to finding

09:30   1   a criminal defense attorney for Mr. Barela.

09:30   2           THE COURT:  I'm letting you get into that.  Your

09:30   3   objection is noted.

09:30   4           MR. AVENATTI:  The text messages are just about

09:30   5   seeing her and contact information.

09:30   6           THE COURT:  She is a criminal lawyer.  She has

09:30   7   represented Mr. Barela in a criminal matter.  Given that

09:30   8   you're arguing that he's not trustworthy because he is a

09:30   9   felon, I don't see what the harm is.

09:30   10          MR. AVENATTI:  There is going to be no reference

09:30   11  to her ever representing me?

09:30   12          MR. WYMAN:  That's correct.

09:30   13          THE COURT:  So that's clearly understood.

09:30   14          MR. WYMAN:  I apologize, Your Honor.

09:30   15          (End of sidebar conference)

09:30   16  BY MR. WYMAN:

09:30   17  Q    You're a criminal defense attorney, and you practice

09:30   18  primarily in the Los Angeles area; is that correct?

09:30   19  A    Yes.

09:31   20  Q    And so you're sometimes on opposing sides to our

09:31   21  office, the U.S. Attorney's Office?

09:31   22  A    Correct.

09:31   23  Q    And you also sometimes handle state criminal matters?

09:31   24  A    Sometimes.

09:31   25  Q    Now, you were contacted around June of 2018 about the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:31  1    prospect of representing Mr. Barela; is that correct?

09:31  2    A    That's correct.

09:31  3    Q    And you understood that Mr. Barela had a -- was under

09:31  4    criminal investigation at the time by the district attorney

09:31  5    in San Diego; is that right?

09:31  6    A    I think I believed that he had been charged.

09:31  7    Q    And this was around June of 2018, you testified?

09:31  8    A    That's correct.

09:31  9    Q    And it was the defendant who introduced you to

09:31 10    Mr. Barela, correct?

09:31 11    A    I first had contact with Mr. Barela when he sent me an

09:31 12    e-mail, and he did reference Mr. Avenatti and also copied

09:31 13    him.

09:31 14    Q    When you say he, you're referring to Mr. Barela?

09:31 15    A    That's correct.

09:31 16    Q    So Mr. Barela e-mailed you and copied the defendant?

09:31 17    A    That's correct.

09:31 18    Q    And that was about the criminal charges?

09:31 19    A    Correct.

09:31 20    Q    So at the time of that e-mail, the defendant was aware

09:31 21    that Mr. Barela had been charged criminally by the D.A.; is

09:31 22    that right?

09:31 23              MR. AVENATTI:  Calls for speculation.  Objection.

09:31 24              THE COURT:  Overruled.

09:31 25              THE WITNESS:  I don't have a precise recollection

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

54

| | | |
|---|---|---|
| 09:31 | 1 | of this.  It was a long time ago. |
| 09:31 | 2 | BY MR. WYMAN: |
| 09:31 | 3 | Q    Well, the defendant was on the e-mail, correct? |
| 09:31 | 4 | A    Correct. |
| 09:31 | 5 | Q    And the e-mail was about Mr. Barela's charges |
| 09:31 | 6 | criminally, correct? |
| 09:31 | 7 | A    Yes. |
| 09:31 | 8 | Q    And that was in June of 2018, you said? |
| 09:31 | 9 | A    Correct. |
| 09:31 | 10 | Q    Now, on direct you testified about a phone call that |
| 09:31 | 11 | you were not a part of, correct? |
| 09:31 | 12 | A    Yes. |
| 09:31 | 13 | Q    And that phone call, as the testimony that the |
| 09:31 | 14 | defendant read, was between Mr. Barela, Ahmed Ibrahim, and |
| 09:32 | 15 | John Arden; is that right? |
| 09:32 | 16 | MR. AVENATTI:  Objection.  Misstates the testimony |
| 09:32 | 17 | as to what Mr. Barela testified to. |
| 09:32 | 18 | THE COURT:  Overruled. |
| 09:32 | 19 | THE WITNESS:  That's my understanding of what his |
| 09:32 | 20 | testimony was. |
| 09:32 | 21 | BY MR. WYMAN: |
| 09:32 | 22 | Q    Right.  Those were the names that were read to you in |
| 09:32 | 23 | the transcript? |
| 09:32 | 24 | A    Yes. |
| 09:32 | 25 | Q    Are you aware that Judy Regnier was on that call |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:32   1    referenced by Mr. Barela?

09:32   2              MR. AVENATTI:  Objection, Your Honor.  Lacks

09:32   3    foundation.

09:32   4              THE COURT:  Overruled.

09:32   5              THE WITNESS:  I'm not aware of any phone calls, so

09:32   6    I do not know who would be on the phone call or whether it

09:32   7    even took place.

09:32   8    BY MR. WYMAN:

09:32   9    Q    Right, because you weren't on that call?

09:32   10   A    I was not on any such call.

09:32   11   Q    And you also don't know why Mr. Barela thought that it

09:32   12   was you on the call and not Judy Regnier, right?

09:32   13   A    I have no idea why Mr. Barela testified as he did.

09:32   14   Q    Thank you.  No further questions, Ms. Jenness.

09:32   15   A    Thank you.

09:32   16              THE COURT:  Mr. Avenatti.

09:32   17                      REDIRECT EXAMINATION

09:32   18   BY MR. AVENATTI:

09:32   19   Q    Ms. Jenness, Mr. Wyman asked you about the fact that

09:33   20   sometimes you are on opposite sides of the U.S. Attorney's

09:33   21   Office.  Do you recall that?

09:33   22   A    Yes.

09:33   23   Q    Would that fact lead you to come before this jury and

09:33   24   provide false testimony?

09:33   25   A    No.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:33   1   Q    Mr. Wyman asked you about whether Judy Regnier was on
09:33   2   this call that Mr. Barela mentioned.  Do you recall that
09:33   3   question?
09:33   4   A    Yes.
09:33   5   Q    When I read Mr. Barela's testimony before the jury, did
09:33   6   you see any reference to Judy Regnier being on the call as
09:33   7   opposed to Evan Jenness?
09:33   8   A    No.
09:33   9           MR. AVENATTI:  Nothing further.
09:33  10           THE COURT:  Mr. Wyman.
09:33  11           MR. WYMAN:  Nothing further.  Thank you, Your
09:34  12   Honor.
09:34  13           THE COURT:  May the witness be excused?
09:34  14           MR. AVENATTI:  Yes, Your Honor.
09:34  15           MR. WYMAN:  Yes, Your Honor.
09:34  16           THE COURT:  You may be excused.  Thank you.
09:34  17           THE WITNESS:  Thank you, Your Honor.
09:34  18           THE COURT:  Mr. Avenatti.
09:34  19           MR. AVENATTI:  Your Honor, the defense calls
09:34  20   Joseph Varani.
09:34  21           JOSEPH VARANI, DEFENDANT'S WITNESS, SWORN
09:35  22           THE CLERK:  If you would please state and spell
09:35  23   your first and last name.
09:36  24           THE WITNESS:  Joseph Varani, V-a-r-a-n-i.
09:36  25           THE CLERK:  And Joseph, J-o-s-e-p-h?
```

| | | |
|---|---|---|
| 09:36 | 1 | THE WITNESS:  Yes. |
| 09:36 | 2 | THE CLERK:  Thank you. |
| 09:36 | 3 | THE COURT:  Mr. Avenatti. |
| 09:36 | 4 | DIRECT EXAMINATION |
| 09:36 | 5 | BY MR. AVENATTI: |
| 09:36 | 6 | Q    Good morning, Mr. Varani. |
| 09:36 | 7 | A    Good morning. |
| 09:36 | 8 | Q    Now, you previously testified in this case, correct? |
| 09:36 | 9 | A    Yes, I did. |
| 09:36 | 10 | Q    And you are employed by the Department of Justice; is |
| 09:36 | 11 | that correct? |
| 09:36 | 12 | A    Yes, I am. |
| 09:36 | 13 | Q    And to refresh the recollection of the jury, what is |
| 09:36 | 14 | your title? |
| 09:36 | 15 | A    I'm a senior digital investigative analyst. |
| 09:36 | 16 | Q    And how long have you been employed by the Department |
| 09:36 | 17 | of Justice? |
| 09:36 | 18 | A    Since 2005, but in my previous position since 2010. |
| 09:36 | 19 | Q    And what did you do between 2005 and 2010? |
| 09:36 | 20 | A    I worked for the Information Security Office for the |
| 09:36 | 21 | Department of Justice. |
| 09:36 | 22 | Q    And what does that office do? |
| 09:36 | 23 | A    It detects vulnerabilities and compromises on the |
| 09:36 | 24 | department's computer networks in response to them.  It |
| 09:37 | 25 | tries to implement department-wide products to improve the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:37   1    security of the departments and so forth.

09:37   2    Q    And before 2005 where were you employed?

09:37   3    A    That was my first job.  I was in school before that.

09:37   4    Q    And you graduated from college?

09:37   5    A    Yes.

09:37   6    Q    From where?

09:37   7    A    From Syracuse.

09:37   8    Q    With a Bachelor of Arts?

09:37   9    A    Bachelor's of Science and Master's of Science.

09:37   10   Q    Was that in computer science?

09:37   11            MR. WYMAN:  Objection.  Relevance.

09:37   12            THE COURT:  Overruled.

09:37   13            THE WITNESS:  It was in information management

09:37   14   with a focus on information security.

09:37   15   BY MR. AVENATTI:

09:37   16   Q    Have you received training relating to acquiring

09:37   17   financial -- strike that.  Have you received training

09:37   18   relating to acquiring electronic data forensically?

09:37   19   A    Yes.

09:37   20   Q    From where?

09:37   21   A    From vendors, from tools such as FTK access data and

09:38   22   end case as well as the Defense Cyber Crime Center.  They

09:38   23   have a training academy that provided training on acquiring

09:38   24   data.

09:38   25   Q    Did you attend that academy?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:38    1    A    I attended classes, yes.

09:38    2    Q    When?

09:38    3    A    That would have been perhaps sometime in 2008 or early

09:38    4    2010.

09:38    5    Q    And those classes taught you how to forensically

09:38    6    acquire electronic data from devices, correct?

09:38    7    A    Yes.

09:38    8    Q    Including cell phones; am I right?

09:38    9    A    Not so much on cell phones.  Cell phones, that is a

09:39   10    more specialized area.  This was more focused on computers.

09:39   11    Q    Over the course of your career at the Department of

09:39   12    Justice, though, you have dealt with forensic images of cell

09:39   13    phones; am I correct?

09:39   14              MR. WYMAN:  Objection.  Leading.

09:39   15              THE COURT:  Overruled.

09:39   16              THE WITNESS:  On rare instances but it is not my

09:39   17    area of focus.

09:39   18    BY MR. AVENATTI:

09:39   19    Q    You deal with forensic images of electronic devices

09:39   20    generally; am I correct?

09:39   21    A    Yes.

09:39   22    Q    And in connection with this case, you had occasion to

09:39   23    analyze forensic images of computer servers from Eagan

09:39   24    Avenatti; am I right?

09:39   25    A    Yes.  That's right.

60

09:39  1   Q    And what did you do in connection with your work as it

09:39  2   related to the servers from the law firm Eagan Avenatti?

09:39  3   A    I used my forensic tools that we have in the lab to

09:39  4   import the data from the server, forensic images that were

09:39  5   provided to me.  I processed that data, identified the files

09:40  6   on the data, executed keyword searches based on keyword

09:40  7   lists that were provided, and exported the resulting files

09:40  8   and provided them to other members of the investigation

09:40  9   team.

09:40  10  Q    So as I understand it, you receive forensic images of

09:40  11  the servers.  You then utilize tools that you have in your

09:40  12  lab to analyze those images, right?

09:40  13  A    Yes.

09:40  14  Q    And one of the first things you did utilizing those

09:40  15  tools -- well, hold on.  What tools did you utilize?

09:40  16  A    FTK.  That's how we access data.

09:40  17  Q    And what is that?

09:40  18  A    It is a piece of forensic software called forensic tool

09:40  19  kit.

09:40  20  Q    And does that allow you to identify files on a forensic

09:40  21  image?

09:40  22  A    Yes, it does.

09:40  23  Q    And does it identify the types of files?

09:40  24  A    Yes, it does.

09:40  25  Q    So when you used FTK in the lab on these computer

09:41   1    servers -- well, strike that.  Do you remember the size of
09:41   2    the servers or the size of the images that you got from the
09:41   3    computer servers?
09:41   4    A    I don't.  There were many servers.
09:41   5    Q    Do you recall that it was many terabytes of data?
09:41   6    A    Yes.
09:41   7    Q    Please tell the jury what a terabyte of data is.
09:41   8    A    A terabyte is 1,000 gigabytes.  So if you think of the
09:41   9    amount of the data on your computers, it would be multiple
09:41   10   times that most likely.
09:41   11   Q    And when you utilized this tool in the lab, how did you
09:41   12   go about identifying the files?
09:41   13   A    Identifying all of the files on the image?
09:41   14   Q    Well, you stated that one of the first things you did,
09:41   15   if I understand you correctly, was that you utilized the
09:41   16   tools in the lab in an effort to identify the files on the
09:41   17   servers; is that right?
09:42   18   A    Yes.
09:42   19   Q    How did you go about doing that, and what did it yield?
09:42   20   A    So in the forensic tool I choose the add-evidence
09:42   21   option.  I point it at the image file.  It opens up the
09:42   22   image file and it runs through a process to enumerate all of
09:42   23   the files on the device.
09:42   24   Q    When you say enumerate all of the files, is that a
09:42   25   fancy way of saying identify all of the files?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

62

| | | |
|---|---|---|
| 09:42 | 1 | A    Yes.  It identifies all of the files, yes. |
| 09:42 | 2 | Q    Does it identify the files by name and type or just |
| 09:42 | 3 | name or type? |
| 09:42 | 4 | A    It identifies the files based on name, but it does |
| 09:42 | 5 | certain checks to determine the types of files that it sees. |
| 09:42 | 6 | Q    When you utilized this tool on the servers, did it |
| 09:43 | 7 | group the files by the type of file?  What I mean by that |
| 09:43 | 8 | is, did it group the files by Microsoft Excel spreadsheets, |
| 09:43 | 9 | Microsoft Word documents, maybe e-mails, things of that |
| 09:43 | 10 | nature? |
| 09:43 | 11 | A    It does have that option, yes. |
| 09:43 | 12 | Q    Did anyone ever ask you to look for QuickBooks files on |
| 09:43 | 13 | the Eagan Avenatti servers? |
| 09:43 | 14 | A    Not specifically QuickBooks files, no. |
| 09:43 | 15 | Q    You are familiar with QuickBooks; are you not, |
| 09:43 | 16 | generally? |
| 09:43 | 17 | A    I have heard of it, yes. |
| 09:43 | 18 | Q    No one ever asked you to look for the QuickBooks |
| 09:43 | 19 | database files for Eagan Avenatti; is that right, that you |
| 09:44 | 20 | recall? |
| 09:44 | 21 | A    Right, not specifically a QuickBooks file. |
| 09:44 | 22 | Q    Did anyone ever ask you to look for any financial data |
| 09:44 | 23 | relating to a program called Tabs? |
| 09:44 | 24 | A    No. |
| 09:44 | 25 | Q    Sir, over the course of your work, do you recall any |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:45  1    communications from anyone about the need to try to locate

09:45  2    data, financial data, from the Eagan Avenatti servers held

09:45  3    in a program called Tabs?

09:45  4    A    No.  To my knowledge, Tabs was not mentioned.

09:45  5    Q    Did anyone ever ask you to look for the actual program

09:45  6    on the servers as opposed to the data, meaning the program

09:45  7    called Tabs?

09:45  8    A    No.

09:45  9    Q    As you sit here today, do you know if there was the

09:45  10   program Tabs on the servers?

09:45  11   A    I don't know that.

09:45  12   Q    Because you never looked because no one asked you to,

09:45  13   right?

09:45  14   A    Right.

09:45  15   Q    As you sit here today, do you know if any of the Tabs

09:45  16   data was on the servers?

09:46  17   A    I don't.

09:46  18   Q    If you wanted to find out whether the Tabs data was on

09:46  19   the servers and included within the forensic images that

09:46  20   were given to you, how would you go about doing that?

09:46  21   A    I would have looked for the existence of a Tabs

09:46  22   executable in a program files folder, and I would have

09:46  23   looked for files perhaps in a folder named "Tabs" or some

09:46  24   other document that tried to find what the file extension

09:46  25   might be to identify that that type of data file exists on

09:46  1   the server.

09:47  2   Q    To the best of your knowledge, these forensic images

09:47  3   still exist; do they not?

09:47  4   A    Yes.

09:47  5   Q    And isn't it true that if you were instructed to look

09:47  6   for the Tabs data today, you could utilize the forensic

09:47  7   image and find out very quickly whether there was any Tabs

09:47  8   data within that server?  Isn't that true?

09:47  9   A    Within a reasonable amount of time, I think.

09:47  10  Q    What's a reasonable amount of time?  Half hour?

09:47  11  A    If everything was set up and running before me,

09:47  12  probably, yes.

09:47  13  Q    Actually probably a lot less than that.  Maybe five or

09:47  14  ten minutes, right?

09:47  15  A    Depending how quickly things are running on the system

09:48  16  and how long it takes everything to load.

09:48  17  Q    About five or ten minutes?  Assuming that the image is

09:48  18  in front of you and all you have to do is search for the

09:48  19  Tabs executable, that's about five or ten minutes, right?

09:48  20  A    If it appears right away, then, yes.  If it doesn't

09:48  21  come up right away, then certainly the search would take

09:48  22  longer.

09:48  23  Q    It could take less than 30 seconds, right?

09:48  24  A    That might be a bit of a really good day.

09:48  25  Q    Even with your experience?

09:48    1    A    Yeah.  Just moving throughout the tools sometimes takes
09:48    2    a little bit of time.
09:48    3    Q    You would agree it would not take long, though, right?
09:48    4    A    Not too long, no.
09:48    5    Q    And when you did this work attempting to enumerate,
09:48    6    otherwise known as identify, the files on the servers, this
09:49    7    was back in early 2019, right?
09:49    8    A    That sounds about right.
09:49    9    Q    About April or May of 2019; does that sound about
09:49   10    right?
09:49   11    A    It seems reasonable.  I don't recall specifically.
09:49   12    Q    So about 27 months ago?
09:49   13    A    Okay.
09:49   14    Q    Yes?
09:49   15    A    Sure.
09:49   16    Q    In the last 27 months have Mr. Sagel or Mr. Wyman or
09:49   17    Special Agent Karlous or anyone else from the prosecution
09:49   18    team ever asked you to go back and look for any financial
09:49   19    data on the servers?
09:50   20    A    No.
09:50   21    Q    Has a man by the name of John Drum ever contacted you
09:50   22    and asked you to look for any financial information from the
09:50   23    servers?
09:50   24    A    No.
09:50   25    Q    Has a man by the name of John Drum ever contacted you

```
09:50    1   and told you:  I really need to see the most recent version
09:51    2   of the QuickBooks files for the law firm.  Can you help me
09:51    3   find them?
09:51    4   A    No.
09:51    5   Q    Has a man by the name of John Drum ever contacted you
09:51    6   and said:  In order to make sure my analysis is correct, I
09:51    7   need to see all of the Tabs data for the law firm?
09:51    8   A    No.
09:51    9   Q    Please turn to Exhibit 260.  It should be in a
09:51   10   notebook.  It may be behind you.
09:51   11              MR. AVENATTI:  Ms. Hernandez, if we could have it
09:52   12   for the benefit of the jury, please.
09:52   13   BY MR. AVENATTI:
09:52   14   Q    Mr. Varani, you can feel free to refer to the notebook
09:52   15   or to the screen, whatever is more easy.  Okay?
09:52   16   A    Okay.
09:52   17   Q    Sir, do you see the first page of Exhibit 260?
09:52   18   A    Yes.
09:52   19   Q    What is that in your experience?
09:52   20   A    This is the SMS message log or text message log from an
09:52   21   extraction report from an Apple iPhone.
09:52   22   Q    When you say an extraction report, can you please
09:52   23   explain to the jury what that is.
09:53   24   A    This is where a cell phone forensic tool has been used
09:53   25   to extract data from a cell phone and provide it for viewing
```

09:53   1   outside of the cell phone interface in a report like this.

09:53   2   Q    When you say a cell phone forensic tool, what tool was

09:53   3   used for this?

09:53   4   A    I believe this is a Cellebrite tool.

09:53   5   Q    And I believe you testified that that's one of the

09:53   6   tools that you're familiar with, right?

09:53   7   A    I have used it on occasion, but it's not my area of

09:53   8   focus.

09:53   9   Q    You have been trained on it, correct?

09:53  10   A    I have had a training class in cell phones several

09:53  11   years ago.

09:53  12   Q    Okay.  So that would be yes?

09:53  13   A    Yes.

09:53  14   Q    All right.  Now, can you explain generally to the jury

09:54  15   how Cellebrite is used to get one of these extraction

09:54  16   reports.

09:54  17            MR. WYMAN:  Objection, foundation.

09:54  18            THE COURT:  Overruled.

09:54  19            THE WITNESS:  If a cell phone is in hand and is in

09:54  20   an unlock status and it can be connected to an analyst's

09:54  21   computer running the Cellebrite software or other devices

09:54  22   that the Cellebrite company makes, it can interface with the

09:54  23   phone and it can extract things like SMS messages.

09:54  24   Q    And Cellebrite also enables the Department of Justice

09:54  25   to see if any text messages were deleted before the forensic

09:54  1  image is taken; isn't that true?

09:55  2  A    I believe so, given that there is a deleted column on

09:55  3  this report.

09:55  4  Q    And do you utilize -- well, strike that.  We have spent

09:55  5  some time talking about forensic images.  In your experience

09:55  6  why is it important to get a forensic image of a device as

09:55  7  opposed to just dragging and dropping files onto a thumb

09:55  8  drive, for instance?

09:55  9  A    It allows for the preservation of as much of the

09:55  10  original device without alteration, and it also preserves as

09:55  11  much data during the extraction as possible, whereas

09:55  12  dragging and dropping files may change certain metadata.

09:55  13  Q    And it also ensures the validity of the data, right?

09:55  14  A    Yes, that it's an accurate copy, sure.

09:56  15  Q    I mean, generally that's why you use these forensic

09:56  16  tools in the lab, is to make sure that you get all of the

09:56  17  data on the device and that it is forensically sound,

09:56  18  correct?

09:56  19  A    Yes.

09:56  20  Q    It's kind of like the CSI of cell phones and electronic

09:56  21  devices, right?

09:56  22  A    Correct, yes.

09:56  23        MR. AVENATTI:  Exhibit 262, please.  Can we have

09:56  24  the top, please, including the header.  I'm sorry.

09:57  25        Thank you, Ms. Hernandez.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:57    1   BY MR. AVENATTI:

09:57    2   Q    262 is another extraction report from a forensic tool,

09:57    3   namely, Cellebrite, right?

09:57    4   A    Yes.

09:57    5          MR. AVENATTI:  Now 176, please.

09:57    6   BY MR. AVENATTI:

09:57    7   Q    176 is an extraction report utilizing that same

09:57    8   forensic tool Cellebrite, correct?

09:58    9   A    Yes.

09:58   10          MR. AVENATTI:  263, please.

09:58   11   BY MR. AVENATTI:

09:58   12   Q    263 is another extraction report utilizing that same

09:58   13   tool Cellebrite, correct?

09:58   14   A    Yes.

09:58   15          MR. AVENATTI:  Then finally 124.

09:58   16   BY MR. AVENATTI:

09:58   17   Q    124 is a forensic report from a cell phone relating to

09:59   18   or using Cellebrite, correct?

09:59   19   A    Yes.

09:59   20          MR. AVENATTI:  Now let's go to 118.

09:59   21   BY MR. AVENATTI:

09:59   22   Q    118 is not a forensic image of anything; is it?

09:59   23   A    No.  It appears to be a --

10:00   24          MR. AVENATTI:  Move to strike everything after no

10:00   25   as nonresponsive.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

70

| | | |
|---|---|---|
| 10:00 | 1 | THE COURT:  It will be stricken. |
| 10:00 | 2 | BY MR. AVENATTI: |
| 10:00 | 3 | Q    Was 118 acquired using the Department of Justice |
| 10:00 | 4 | forensic tools to the best of your knowledge, sir? |
| 10:00 | 5 | A    No. |
| 10:00 | 6 | Q    This appears to you just to be a picture of a phone, |
| 10:00 | 7 | right? |
| 10:00 | 8 | A    Yes. |
| 10:00 | 9 | MR. AVENATTI:  Let's go to Exhibit 119. |
| 10:00 | 10 | BY MR. AVENATTI: |
| 10:00 | 11 | Q    Was Exhibit 119 acquired utilizing the Department of |
| 10:01 | 12 | Justice's technology Cellebrite? |
| 10:01 | 13 | A    No. |
| 10:01 | 14 | Q    120 -- by the way, before we get to 120, I have to ask |
| 10:01 | 15 | a question that I need to ask, which is:  This Cellebrite |
| 10:01 | 16 | technology, the Department of Justice has had that for a |
| 10:01 | 17 | number of years, correct? |
| 10:01 | 18 | A    Yes. |
| 10:01 | 19 | Q    Long before 2018; isn't that true? |
| 10:01 | 20 | A    Yes. |
| 10:01 | 21 | Q    Directing your attention to Exhibit 120, was |
| 10:01 | 22 | Exhibit 120 acquired utilizing any forensic tool to the best |
| 10:01 | 23 | of your knowledge? |
| 10:01 | 24 | A    No. |
| 10:02 | 25 | MR. AVENATTI:  160, please. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:02 | 1 | BY MR. AVENATTI: |
| 10:02 | 2 | Q    Was Exhibit 160 acquired using any of the Department of |
| 10:02 | 3 | Justice's forensic tools? |
| 10:02 | 4 | A    It does not appear to be. |
| 10:02 | 5 | Q    Cellebrite certainly wasn't used; was it? |
| 10:02 | 6 | A    It doesn't look like it, no. |
| 10:02 | 7 | Q    162, was Cellebrite used in connection with 162? |
| 10:03 | 8 | A    It doesn't look like it. |
| 10:03 | 9 | Q    Was any of the Department of Justice's forensic tools |
| 10:03 | 10 | used in connection with 162 from what you can tell? |
| 10:03 | 11 | A    No. |
| 10:03 | 12 | MR. AVENATTI:  Exhibit 274.  Maybe we can blow up |
| 10:03 | 13 | half of the page, please. |
| 10:04 | 14 | BY MR. AVENATTI: |
| 10:04 | 15 | Q    Is 274 a Cellebrite extraction report? |
| 10:04 | 16 | A    I don't know.  I'm not sure. |
| 10:04 | 17 | Q    So you are not sure of whether 274 is a Cellebrite |
| 10:04 | 18 | extraction report? |
| 10:04 | 19 | MR. WYMAN:  Asked and answered. |
| 10:04 | 20 | THE COURT:  Overruled. |
| 10:04 | 21 | BY THE WITNESS: |
| 10:04 | 22 | Q    Is that your testimony? |
| 10:04 | 23 | A    Yes.  I am not sure. |
| 10:04 | 24 | Q    Okay.  Well, does 274 look anything similar to the |
| 10:04 | 25 | Cellebrite extraction reports that we were speaking about |

| | | |
|---|---|---|
| 10:04 | 1 | earlier, to you? |
| 10:04 | 2 | A    Not the ones we looked at previously. |
| 10:04 | 3 | Q    Can you see at the top in the header of 274?  Does that |
| 10:04 | 4 | look like a screenshot to you or a Cellebrite extraction |
| 10:04 | 5 | report? |
| 10:04 | 6 | A    This looks like a screenshot. |
| 10:04 | 7 | Q    Do you believe that 274 was utilized or -- strike that. |
| 10:05 | 8 | Do you believe that some forensic tool was utilized in |
| 10:05 | 9 | connection with 274 based on your review of the exhibit, |
| 10:05 | 10 | sir? |
| 10:05 | 11 | A    I'm unsure based on I see page numbers at the bottom of |
| 10:05 | 12 | the screenshot, and just taking screenshots wouldn't put |
| 10:05 | 13 | page numbers in. |
| 10:05 | 14 |          MR. AVENATTI:  Ms. Hernandez, could you blow up |
| 10:05 | 15 | the lower right-hand corner for the jury, please. |
| 10:05 | 16 | BY MR. AVENATTI: |
| 10:05 | 17 | Q    Page 1 of 37, is that what you're speaking about? |
| 10:06 | 18 | A    Yes. |
| 10:06 | 19 | Q    So if these were screenshots, they were altered in some |
| 10:06 | 20 | way when the document -- when page numbers were placed on |
| 10:06 | 21 | the document?  Is that your testimony, sir? |
| 10:06 | 22 | A    Yes. |
| 10:06 | 23 | Q    I'm sorry?  Yes? |
| 10:06 | 24 | A    Yes. |
| 10:06 | 25 | Q    Other than the page numbers, is there anything that |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

73

| | | |
|---|---|---|
| 10:06 | 1 | suggests to you that this document 274 is some forensic copy |
| 10:06 | 2 | of text messages? |
| 10:06 | 3 | A    No. |
| 10:07 | 4 |         MR. AVENATTI:  278, maybe we could blow that up, |
| 10:07 | 5 | at least the top half for the jury, please. |
| 10:07 | 6 | BY MR. AVENATTI: |
| 10:07 | 7 | Q    Mr. Varani, was 278 acquired utilizing the Department |
| 10:07 | 8 | of Justice's standard forensic tools. |
| 10:07 | 9 | A    It doesn't look like it. |
| 10:07 | 10 | Q    Was Cellebrite used? |
| 10:07 | 11 | A    It doesn't look like it. |
| 10:07 | 12 | Q    Was any laboratory in Washington, D.C., or anywhere |
| 10:07 | 13 | else used? |
| 10:07 | 14 | A    I don't know.  I did not examine the cell phones in |
| 10:08 | 15 | this case, so I don't know who did or how it happened. |
| 10:08 | 16 | Q    Or if it ever happened? |
| 10:08 | 17 | A    I have no knowledge about cell phones related to this |
| 10:08 | 18 | case. |
| 10:08 | 19 | Q    Sir, my point is you don't know if any cell phone other |
| 10:08 | 20 | than the ones with the extraction reports were ever examined |
| 10:08 | 21 | or analyzed by anybody in the Department of Justice; do you? |
| 10:08 | 22 |         MR. WYMAN:  Objection.  Leading. |
| 10:08 | 23 |         THE COURT:  Overruled. |
| 10:08 | 24 |         THE WITNESS:  Could you repeat the question, |
| 10:08 | 25 | please. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:08   1            MR. AVENATTI:  Your Honor, could I have it read

10:08   2   back, please?

10:08   3            THE COURT:  Yes.  Better yet, rephrase it.

10:08   4   BY MR. AVENATTI:

10:08   5   Q    Mr. Varani, you don't know if any cell phone from any

10:08   6   witness in this case was ever analyzed or examined by any

10:08   7   member of the Department of Justice other than those cell

10:08   8   phones that are reflected in or those messages that are

10:09   9   reflected in the extraction reports; isn't that true?

10:09  10            MR. WYMAN:  Objection.  Leading, foundation.

10:09  11            THE COURT:  Sustained.  Leading.

10:09  12            MR. AVENATTI:  Adverse witness, Your Honor.

10:09  13            I'll rephrase.

10:09  14   BY MR. AVENATTI:

10:09  15   Q    Mr. Varani --

10:09  16            THE COURT:  Incorrect.  Proceed.

10:09  17            MR. AVENATTI:  May I have it read back?

10:09  18            THE COURT:  Yes.

10:09  19            MR. AVENATTI:  Thank you, Your Honor.

10:09  20            (Record read)

10:09  21            THE WITNESS:  I don't even know that the -- I

10:09  22   don't even know the Department of Justice's role in the cell

10:09  23   phone extraction reports that we reviewed previously.

10:10  24   BY MR. AVENATTI:

10:10  25   Q    You understand the Department of Justice is prosecuting

| | | |
|---|---|---|
| 10:10 | 1 | this case, though, correct? |
| 10:10 | 2 | A    Yes. |
| 10:10 | 3 | Q    And turning back to 278, based on your experience 278 |
| 10:10 | 4 | is a screenshot of alleged text messages; is that right? |
| 10:10 | 5 | A    It looks that way, yes. |
| 10:10 | 6 | Q    Were any screenshots taken of the servers? |
| 10:10 | 7 | A    No. |
| 10:10 | 8 | Q    Why were screenshots not taken of the servers? |
| 10:10 | 9 | A    It was not in the request made to the lab. |
| 10:10 | 10 | Q    And because the proper way to acquire forensic |
| 10:11 | 11 | electronic data from a device is not via a screenshot; is |
| 10:11 | 12 | it, sir? |
| 10:11 | 13 | A    Ideally it's not. |
| 10:11 | 14 | Q    Thank you. |
| 10:11 | 15 |         MR. AVENATTI:  294, please. |
| 10:11 | 16 | BY MR. AVENATTI: |
| 10:11 | 17 | Q    I will show you the first page of Exhibit 294, which |
| 10:12 | 18 | are purportedly text messages between Ms. Phan and me.  My |
| 10:12 | 19 | question is:  Is 294 a forensic extraction from any cell |
| 10:12 | 20 | phone? |
| 10:12 | 21 | A    It does not appear to be. |
| 10:12 | 22 | Q    Based on your experience was Exhibit 294 acquired using |
| 10:12 | 23 | Cellebrite or any other Department of Justice forensic tool? |
| 10:12 | 24 | A    No, it does not look like that. |
| 10:13 | 25 | Q    Now, in your lab -- strike that.  Where is your lab |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:13 | 1 | again? |
| 10:13 | 2 | A    It's in Washington, D.C. |
| 10:13 | 3 | Q    Is that a Department of Justice lab? |
| 10:13 | 4 | A    Yes. |
| 10:13 | 5 | Q    How big is the lab? |
| 10:13 | 6 | MR. WYMAN:  Objection.  Relevance. |
| 10:13 | 7 | THE COURT:  Overruled. |
| 10:13 | 8 | THE WITNESS:  We have about 12 employees |
| 10:13 | 9 | currently. |
| 10:13 | 10 | BY MR. AVENATTI: |
| 10:13 | 11 | Q    And within that lab you have, I think you said, FTK and |
| 10:13 | 12 | Cellebrite as well as other forensic tools? |
| 10:13 | 13 | A    Yes. |
| 10:13 | 14 | Q    And does the lab have licenses for those tools, meaning |
| 10:13 | 15 | they have purchased those tools for use in connection with |
| 10:13 | 16 | their criminal investigations? |
| 10:13 | 17 | A    Yes.  That's correct. |
| 10:13 | 18 | Q    And does it cost the Department of Justice -- to the |
| 10:14 | 19 | best of your knowledge, does it cost the department |
| 10:14 | 20 | additional money every time they use one of the tools on a |
| 10:14 | 21 | device? |
| 10:14 | 22 | A    It may on certain features, but for the most part the |
| 10:14 | 23 | tools, once acquired, can be used as needed. |
| 10:14 | 24 | Q    So like Cellebrite, once you acquire a license, you |
| 10:14 | 25 | could use it as many times as you want without additional |

| 10:14 | 1 | cost, right? |
| 10:14 | 2 | A    Yes. |
| 10:14 | 3 | Q    So it doesn't matter whether you use Cellebrite on 10 |
| 10:14 | 4 | cell phones or 10,000 cell phones.  The cost to the |
| 10:14 | 5 | Department of Justice is the same, right? |
| 10:14 | 6 | A    Right. |
| 10:14 | 7 | Q    So based on your knowledge, had the Department of |
| 10:14 | 8 | Justice utilized Cellebrite to extract text messages from |
| 10:15 | 9 | the phones where we just looked at the screenshots of the |
| 10:15 | 10 | text messages, that would not have cost the Department of |
| 10:15 | 11 | Justice any additional money as it relates to the software |
| 10:15 | 12 | Cellebrite; isn't that true? |
| 10:15 | 13 | A    Right.  Correct. |
| 10:15 | 14 | MR. AVENATTI:  Nothing further, Your Honor. |
| 10:15 | 15 | MR. WYMAN:  Nothing from the government, Your |
| 10:15 | 16 | Honor. |
| 10:15 | 17 | THE COURT:  Sir, you may step down.  Thank you. |
| 10:15 | 18 | MR. AVENATTI:  Your Honor -- |
| 10:15 | 19 | THE COURT:  Let's go forward with another witness. |
| 10:15 | 20 | MR. AVENATTI:  All right. |
| 10:15 | 21 | Your Honor, the defense calls Carlos Colorado. |
| 10:16 | 22 | CARLOS COLORADO, DEFENDANT'S WITNESS, SWORN |
| 10:17 | 23 | THE CLERK:  Please state and spell your first and |
| 10:17 | 24 | last name. |
| 10:17 | 25 | THE WITNESS:  Carlos Colorado, C-a-r-l-o-s, |

| | | |
|---|---|---|
| 10:17 | 1 | C-o-l-o-r-a-d-o. |
| 10:17 | 2 | THE CLERK:  Thank you. |
| 10:17 | 3 | THE COURT:  Mr. Avenatti. |
| 10:17 | 4 | DIRECT EXAMINATION |
| 10:17 | 5 | BY MR. AVENATTI: |
| 10:17 | 6 | Q    Mr. Colorado, good morning. |
| 10:17 | 7 | A    Good morning. |
| 10:17 | 8 | Q    You previously testified before the jury in this |
| 10:17 | 9 | matter, correct? |
| 10:17 | 10 | A    I did. |
| 10:17 | 11 | Q    And to refresh their recollection, you were employed at |
| 10:17 | 12 | Eagan Avenatti during what period of time? |
| 10:17 | 13 | A    I was employed at Eagan Avenatti from October 2012 |
| 10:17 | 14 | until approximately March 2019. |
| 10:17 | 15 | Q    So about six and a half years, sir? |
| 10:18 | 16 | A    Correct. |
| 10:18 | 17 | Q    And how many cases did you work on at the firm during |
| 10:18 | 18 | that six-and-a-half-year time period? |
| 10:18 | 19 | A    I don't have the exact number, but I would estimate at |
| 10:18 | 20 | least a dozen or so. |
| 10:18 | 21 | Q    One of those cases was Mr. Johnson's case, correct? |
| 10:18 | 22 | A    That's right. |
| 10:18 | 23 | Q    What other cases do you recall working on at the time? |
| 10:18 | 24 | MR. WYMAN:  Objection.  Relevance. |
| 10:18 | 25 | THE COURT:  Overruled. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 10:18 | 1 | THE WITNESS:  I recall working on a few cases |
| 10:18 | 2 | involving the NFL as a defendant.  I recall working on a |
| 10:19 | 3 | matter, on a few medical malpractice type matters, smaller |
| 10:19 | 4 | cases.  Do you want case names? |
| 10:19 | 5 | BY MR. AVENATTI: |
| 10:19 | 6 | Q    You can just generally describe the cases.  That's |
| 10:19 | 7 | fine. |
| 10:19 | 8 | A    I recall some personal injury cases.  I worked briefly |
| 10:19 | 9 | on a case involving a cemetery as a defendant.  I worked on |
| 10:19 | 10 | a case that was a very small case that I handled exclusively |
| 10:19 | 11 | with Yahoo as a defendant.  That's all I'm recalling at this |
| 10:19 | 12 | moment. |
| 10:19 | 13 | Q    You handled about 15 to 20 cases involving dental |
| 10:20 | 14 | centers here in Southern California, correct? |
| 10:20 | 15 | MR. WYMAN:  Objection.  Leading. |
| 10:20 | 16 | THE COURT:  Sustained. |
| 10:20 | 17 | BY MR. AVENATTI: |
| 10:20 | 18 | Q    Sir, do you have a recollection of handling 15 to -- |
| 10:20 | 19 | well, strike that.  Did you ever work on any cases involving |
| 10:20 | 20 | dental centers here in Southern California? |
| 10:20 | 21 | A    Yes, I did. |
| 10:20 | 22 | Q    How many clients did the firm have in connection with |
| 10:20 | 23 | those cases? |
| 10:20 | 24 | A    It was in the range of 15 to 20. |
| 10:20 | 25 | Q    Fifteen to 20 clients, correct? |

| | | |
|---|---|---|
| 10:20 | 1 | A     Correct. |
| 10:20 | 2 | Q     Did you regularly communicate with those clients |
| 10:20 | 3 | without me present? |
| 10:20 | 4 | A     Yes. |
| 10:20 | 5 | Q     Most of those communications were in Spanish; were they |
| 10:20 | 6 | not? |
| 10:21 | 7 | MR. WYMAN:  Objection.  Leading. |
| 10:21 | 8 | THE COURT:  Overruled. |
| 10:21 | 9 | THE WITNESS:  That's correct.  The clients were |
| 10:21 | 10 | Hispanic. |
| 10:21 | 11 | BY MR. AVENATTI: |
| 10:21 | 12 | Q     And you are a native Spanish speaker; am I right? |
| 10:21 | 13 | A     Correct. |
| 10:21 | 14 | Q     I am not.  You were aware of that at the time; is that |
| 10:21 | 15 | right? |
| 10:21 | 16 | A     Correct. |
| 10:21 | 17 | Q     The cemetery case, how many clients did the firm have |
| 10:21 | 18 | in connection with the cemetery case? |
| 10:21 | 19 | A     I don't know, but it was a class action, so it was a |
| 10:21 | 20 | large number of clients. |
| 10:21 | 21 | Q     Thousands, right? |
| 10:21 | 22 | A     It may have been thousands. |
| 10:21 | 23 | Q     The case involving Yahoo, you handled that case |
| 10:21 | 24 | basically on your own; is that right? |
| 10:21 | 25 | A     That's correct. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:21 | 1 | Q   Did you regularly communicate with the client in that |
| 10:22 | 2 | case without my involvement? |
| 10:22 | 3 | A   Yes, I did. |
| 10:22 | 4 | Q   You mentioned a few NFL cases.  Do you recall that? |
| 10:22 | 5 | A   Yes. |
| 10:22 | 6 | Q   Do you have a recollection of ever communicating with |
| 10:22 | 7 | the clients in those cases without my involvement? |
| 10:22 | 8 | A   On occasion, yes. |
| 10:22 | 9 | Q   From time to time you would meet with Mr. Johnson |
| 10:22 | 10 | without my involvement, right? |
| 10:22 | 11 | A   Yes. |
| 10:23 | 12 | Q   The med mal cases you mentioned, were those different |
| 10:23 | 13 | from the dental center cases? |
| 10:23 | 14 | A   They were. |
| 10:23 | 15 | Q   How many of those were there as far as number of cases? |
| 10:23 | 16 | A   Probably a handful. |
| 10:23 | 17 | Q   So is that five? |
| 10:23 | 18 | A   In that range, but I don't have the exact number. |
| 10:23 | 19 | Q   How many plaintiffs were in those cases?  Well, strike |
| 10:23 | 20 | that.  How many clients did the firm have in connection with |
| 10:23 | 21 | those cases? |
| 10:23 | 22 | A   The ones I have in mind were separate cases, and each |
| 10:23 | 23 | one of them was an individual client.  So about five. |
| 10:23 | 24 | Q   Did you communicate with those clients independent of |
| 10:23 | 25 | me from time to time? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:23 | 1 | A    Yes. |
| 10:23 | 2 | Q    You mentioned a personal injury case.  Do you recall |
| 10:23 | 3 | that? |
| 10:24 | 4 | A    Yes. |
| 10:24 | 5 | Q    What case generally was that? |
| 10:24 | 6 | A    As I recall, it involved a police officer who had -- it |
| 10:24 | 7 | was actually a med mal case.  It was a police officer who |
| 10:24 | 8 | had an injury and surgery. |
| 10:24 | 9 | Q    We represented the police officer, right? |
| 10:24 | 10 | A    Correct. |
| 10:24 | 11 | Q    And did you have regular communication with him in |
| 10:24 | 12 | connection with his case independent of me? |
| 10:24 | 13 | A    Yes. |
| 10:24 | 14 | Q    Can you recall any other cases that you worked on? |
| 10:24 | 15 | A    I worked on a case that involved a defamation claim |
| 10:24 | 16 | against one of our clients, and we defended that client. |
| 10:25 | 17 | Q    And did you have communication with that client from |
| 10:25 | 18 | time to time independent of me? |
| 10:25 | 19 | A    From time to time, yes. |
| 10:25 | 20 | Q    While you were at the firm, did you witness other |
| 10:25 | 21 | attorneys at the firm other than yourself and me have |
| 10:25 | 22 | communications with clients of the firm where I was not |
| 10:25 | 23 | involved? |
| 10:25 | 24 | A    I think the ones that I witnessed would have been ones |
| 10:25 | 25 | that I was also involved in, so I would have been involved |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:26 | 1 | in that. |
| 10:26 | 2 | Q    From time to time you together with other attorneys of |
| 10:26 | 3 | the firm would jointly have communications with clients that |
| 10:26 | 4 | I was not a party to the communications; is that right? |
| 10:26 | 5 | A    Yes, that's right. |
| 10:26 | 6 | Q    That was a fairly regular occurrence as it related to |
| 10:26 | 7 | the operation of the law firm, right? |
| 10:26 | 8 | A    Yes. |
| 10:26 | 9 | Q    Because at any given time the firm could have thousands |
| 10:26 | 10 | of clients; is that right? |
| 10:26 | 11 | MR. WYMAN:  Objection.  Leading. |
| 10:26 | 12 | THE COURT:  Sustained. |
| 10:26 | 13 | BY MR. AVENATTI: |
| 10:26 | 14 | Q    Sir, did you understand while you were at the firm that |
| 10:26 | 15 | at any given time the firm sometimes would have over a |
| 10:26 | 16 | thousand clients? |
| 10:26 | 17 | MR. WYMAN:  Objection.  Leading. |
| 10:26 | 18 | THE COURT:  Overruled. |
| 10:26 | 19 | THE WITNESS:  There were times when a large number |
| 10:26 | 20 | of clients required other attorneys other than yourself to |
| 10:26 | 21 | communicate with the client. |
| 10:26 | 22 | BY MR. AVENATTI: |
| 10:27 | 23 | Q    Did you witness during your time at the firm that in |
| 10:27 | 24 | those instances other attorneys would be running cases as it |
| 10:27 | 25 | related to the day-to-day? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

84

| | | |
|---|---|---|
| 10:27 | 1 | A    As it related to the day -- |
| 10:27 | 2 | MR. WYMAN:  Vague as to leading cases, Your Honor. |
| 10:27 | 3 | THE COURT:  Rephrase the question. |
| 10:27 | 4 | BY MR. AVENATTI: |
| 10:27 | 5 | Q    Sir, during your six and a half years at the firm, did |
| 10:27 | 6 | you witness other attorneys including yourself running the |
| 10:27 | 7 | day-to-day involvement on cases at the law firm? |
| 10:27 | 8 | A    The day-to-day involvement, yes. |
| 10:27 | 9 | Q    Attorney other than me; is that right? |
| 10:27 | 10 | A    That's correct. |
| 10:28 | 11 | Q    Now, since you have left the firm -- strike that. |
| 10:28 | 12 | Since leaving the firm in March of 2019, did you continue to |
| 10:28 | 13 | work with some of the clients who had been clients of the |
| 10:28 | 14 | law firm? |
| 10:28 | 15 | A    Yes. |
| 10:28 | 16 | Q    And did you continue to have communications with those |
| 10:28 | 17 | clients in much the same way that you did while you were at |
| 10:28 | 18 | the law firm? |
| 10:28 | 19 | A    Yes. |
| 10:29 | 20 | Q    Do you presently work with a gentleman by the name of |
| 10:29 | 21 | Filippo Marchino? |
| 10:29 | 22 | MR. WYMAN:  Objection.  Asked and answered a |
| 10:29 | 23 | couple of weeks ago. |
| 10:29 | 24 | THE COURT:  Overruled. |
| 10:29 | 25 | THE WITNESS:  Yes, I do. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:29 | 1 | BY MR. AVENATTI: |
| 10:29 | 2 | Q    And did you ever work with Mr. Marchino in connection |
| 10:29 | 3 | with a case involving Jim Carrey? |
| 10:29 | 4 | MR. WYMAN:  Objection.  Relevance and 608. |
| 10:29 | 5 | THE COURT:  Sustained. |
| 10:29 | 6 | We will take the mid-morning break here, ladies |
| 10:29 | 7 | and gentlemen.  Please remember the admonition not to |
| 10:29 | 8 | discuss the case with anyone and not to form any opinions on |
| 10:30 | 9 | the issues in the case until it is submitted to you.  And |
| 10:30 | 10 | please do not do any research. |
| 10:30 | 11 | (Jury not present) |
| 10:30 | 12 | THE COURT:  You may step down. |
| 10:30 | 13 | Juror No. 5 handed Ms. Bredahl a note indicating |
| 10:31 | 14 | she had been exposed to a newspaper headline concerning |
| 10:31 | 15 | dismissal of a civil suit brought by Mr. Avenatti.  I |
| 10:31 | 16 | propose that we visit with her right before we commence this |
| 10:31 | 17 | afternoon, assuming you want to visit with her. |
| 10:31 | 18 | MR. AVENATTI:  Most certainly, Your Honor.  Are |
| 10:31 | 19 | you proposing that at the end of the lunch break? |
| 10:31 | 20 | THE COURT:  Yeah. |
| 10:31 | 21 | MR. AVENATTI:  Agreed. |
| 10:31 | 22 | MR. SAGEL:  Your Honor will be conducting the voir |
| 10:31 | 23 | dire? |
| 10:31 | 24 | THE COURT:  Yes.  Initially, yes. |
| 10:31 | 25 | MR. SAGEL:  My only suggestion is if Mr. Avenatti |

| | | |
|---|---|---|
| 10:31 | 1 | has any questions he wants posed to the juror, that he |
| 10:31 | 2 | provide them to Your Honor. |
| 10:31 | 3 | MR. AVENATTI:  Your Honor, I think you just |
| 10:31 | 4 | indicated that you would initially.  So if we have |
| 10:31 | 5 | additional questions, then I'm assuming Your Honor will |
| 10:32 | 6 | consider them and make a determination? |
| 10:32 | 7 | THE COURT:  I will allow you to ask them in all |
| 10:32 | 8 | likelihood. |
| 10:32 | 9 | MR. AVENATTI:  Thank you. |
| 10:32 | 10 | THE COURT:  With regard to the Rule 29 motion, my |
| 10:32 | 11 | present thought is to hear argument on Counts 1, 2, 4, and |
| 10:32 | 12 | 5, and to reserve on all other counts and all other |
| 10:32 | 13 | arguments.  So that will narrow the focus of our discussion. |
| 10:32 | 14 | One question in each of those counts raised is: |
| 10:32 | 15 | Need a particular wire transfer itself be unlawful, or is it |
| 10:32 | 16 | sufficient that the wire transfer is part of the overall |
| 10:32 | 17 | scheme? |
| 10:32 | 18 | So I would be happy to hear you on any other |
| 10:32 | 19 | issues relating to those counts, but I would like you to |
| 10:32 | 20 | address those specifically. |
| 10:33 | 21 | Okay.  We will be in recess. |
| 10:33 | 22 | (Recess taken at 10:33 a.m.; |
| 10:33 | 23 | proceedings resumed at 10:53 a.m.) |
| 10:33 | 24 | (Jury present) |
| 10:53 | 25 | THE COURT:  Mr. Avenatti. |

10:53    1           MR. AVENATTI:  Your Honor, could I approach to

10:53    2   refresh recollection?

10:53    3           THE COURT:  Yes.

10:53    4           (Document handed to the witness)

10:53    5   BY MR. AVENATTI:

10:53    6   Q    Mr. Colorado, I have handed you a document.  My

10:54    7   question is:  Does that refresh your recollection as to some

10:54    8   of the other matters you worked on at the firm while you

10:54    9   were there for six and a half years?

10:54   10   A    Yes, it does.

10:54   11   Q    And do you recall that while you were at the firm, you

10:54   12   also worked on a number of matters for the company AT&T?

10:54   13   A    Yes.

10:54   14   Q    And did I have any involvement with any of the AT&T

10:54   15   matters?

10:54   16   A    I don't know.

10:54   17   Q    Well, to the best of your recollection, did I have any

10:54   18   involvement in the AT&T matter?

10:54   19           MR. WYMAN:  Asked and answered.

10:54   20           THE COURT:  Sustained.

10:54   21   BY MR. AVENATTI:

10:54   22   Q    Sir, do you recall who the attorney was in the law firm

10:54   23   who was the lead attorney on the AT&T matter?

10:55   24   A    Yes.  The active attorney on the AT&T matters was

10:55   25   Mr. Frank.

| | | |
|---|---|---|
| 10:55 | 1 | Q    Mr. Jason Frank, correct? |
| 10:55 | 2 | A    Correct. |
| 10:55 | 3 | Q    And when you were working on the AT&T matters, you |
| 10:55 | 4 | worked with him; is that right? |
| 10:55 | 5 | A    That's right. |
| 10:55 | 6 | Q    Did you ever work with me on anything having to do with |
| 10:55 | 7 | any of the AT&T matters? |
| 10:55 | 8 | A    Not that I recall. |
| 10:55 | 9 | Q    And how many of these AT&T matters were you involved |
| 10:55 | 10 | with while you were at the firm? |
| 10:55 | 11 | MR. WYMAN:  Objection.  Relevance, 403. |
| 10:55 | 12 | THE COURT:  Sustained. |
| 10:55 | 13 | BY MR. AVENATTI: |
| 10:56 | 14 | Q    Now that you have had the benefit of this document, |
| 10:56 | 15 | what other matters do you recall working on while you were |
| 10:56 | 16 | at the firm? |
| 10:56 | 17 | MR. WYMAN:  Same objections. |
| 10:56 | 18 | THE COURT:  What's the relevance, Mr. Avenatti? |
| 10:56 | 19 | MR. AVENATTI:  I'm going to establish that he |
| 10:56 | 20 | regularly communicated with clients, contrary to other |
| 10:56 | 21 | testimony the government elicited. |
| 10:56 | 22 | MR. WYMAN:  403 at this point, Your Honor. |
| 10:56 | 23 | MR. AVENATTI:  Well, if they'll stipulate, we can |
| 10:56 | 24 | shortcut it. |
| 10:56 | 25 | THE COURT:  Pursue this just a little bit farther. |

```
10:56    1              MR. AVENATTI:  Thank you, sir.
10:56    2    BY MR. AVENATTI:
10:56    3    Q    Mr. Colorado, the document that I placed in front of
10:56    4    you, now that it has refreshed your recollection, do you
10:56    5    recall other matters that you worked on at the firm while
10:56    6    you were there?
10:56    7    A    Yes.  I recall most of these matters that are on the
10:56    8    document you handed me.
10:56    9    Q    Most of these matters are different than the matters
10:57   10    you testified about earlier, is that right, or at least half
10:57   11    of them?
10:57   12    A    That's correct.
10:57   13    Q    While you were at the firm, did you report to attorneys
10:57   14    that were senior to you other than me from time to time?
10:57   15    A    Yes.
10:57   16    Q    And did you communicate with clients and opposing
10:57   17    parties at their request?
10:57   18              MR. WYMAN:  401, 403.
10:57   19              THE COURT:  Overruled.
10:57   20              THE WITNESS:  Yes.
10:57   21    BY MR. AVENATTI:
10:57   22    Q    Sir, while you were at the firm, in connection with
10:57   23    some matters would you keep track of your time?
10:58   24    A    Yes.
10:58   25    Q    Explain to the jury how you would do that.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:58    1    A    For some of the -- actually for all of the matters, I
10:58    2    tried to keep an Excel spreadsheet that I would log my hours
10:58    3    on for personal reference.  There was no need for billing
10:58    4    purposes on most of the matters to do time entry both in
10:58    5    order to track what I was working on and efficiency and so
10:58    6    forth, I track using those Excel spreadsheets.
10:58    7    Q    For some matters you did track your time for billing
10:58    8    purposes; isn't that true?
10:58    9    A    Correct.
10:58   10    Q    And for the matters that you tracked your time for
10:58   11    billing purposes, how would that work?
10:58   12                MR. WYMAN:  Objection.  Relevance.
10:58   13                THE COURT:  Mr. Avenatti.
10:58   14                MR. AVENATTI:  Your Honor, it goes hand in hand
10:58   15    with Tabs and it goes hand in hand with some of the matters
10:58   16    that were handled that were that were non-contingency, Your
10:59   17    Honor.
10:59   18                THE COURT:  Sustained.
10:59   19    BY MR. AVENATTI:
10:59   20    Q    Mr. Colorado, were you aware of a program called Tabs
10:59   21    while you were at the firm?
10:59   22    A    I was not.
10:59   23    Q    Would you give your time when it was being tracked to
10:59   24    an administrative assistant to be input into a computer
10:59   25    program?

10:59    1              MR. WYMAN:  Relevance, 403.

10:59    2              THE COURT:  Overruled.

10:59    3              THE WITNESS:  Yes.

10:59    4    BY MR. AVENATTI:

10:59    5    Q    So you would keep track of your time and then you would

10:59    6    give it to another individual at the firm who would input it

10:59    7    into a computer program, right?

10:59    8              MR. WYMAN:  Asked and answered.

10:59    9              THE COURT:  Sustained.

10:59   10    BY MR. AVENATTI:

10:59   11    Q    Who did you give your time to in order to be input into

10:59   12    this computer program?

10:59   13    A    I gave my Excel spreadsheets that I used to our

10:59   14    receptionist.

10:59   15    Q    And who was that at the time?

10:59   16    A    It was a woman by the name of Hillary.

10:59   17    Q    Hillary Wolett?

10:59   18    A    Correct.

10:59   19    Q    And you understood that Ms. Wolett would be inputting

11:00   20    that into a computer program, but you did not know the name

11:00   21    of the program; is that right?

11:00   22    A    Correct.

11:00   23    Q    And did you have the understanding that after the time

11:00   24    would be inputted into the computer program, that a bill

11:00   25    would be generated from time to time with a client that

| | | |
|---|---|---|
| 11:00 | 1 | would reflect your time? |
| 11:00 | 2 | MR. WYMAN:  Leading, foundation, and 403. |
| 11:00 | 3 | THE COURT:  Leading, sustained. |
| 11:00 | 4 | BY MR. AVENATTI: |
| 11:00 | 5 | Q    Mr. Colorado, did you understand that your time that |
| 11:00 | 6 | you were tracking that was put into the computer program, |
| 11:00 | 7 | that that time would be used for some purpose ultimately? |
| 11:00 | 8 | A    Yes. |
| 11:00 | 9 | Q    And what purpose did you understand that that time |
| 11:00 | 10 | would be used for? |
| 11:00 | 11 | A    My understanding was that the calculation from the |
| 11:00 | 12 | time, the time that was tracked, would be used at the time |
| 11:01 | 13 | that there was any award or verdict in order to justify the |
| 11:01 | 14 | firm's fees in that case. |
| 11:01 | 15 | Q    Did you also have -- well, strike that.  While you were |
| 11:01 | 16 | at the firm, did you understand that the firm also did |
| 11:01 | 17 | hourly work for clients, meaning billed by the hour? |
| 11:01 | 18 | A    For some of the clients like AT&T, yes. |
| 11:01 | 19 | Q    And did you have the understanding that one of the |
| 11:01 | 20 | purposes for which this time tracking, did you have the |
| 11:01 | 21 | understanding that one of the purposes was so that the hours |
| 11:01 | 22 | could then be billed to the client at an hourly rate? |
| 11:01 | 23 | A    Yes. |
| 11:01 | 24 | Q    Did you have occasion to review draft bills before they |
| 11:01 | 25 | were sent to clients? |

93

| | | |
|---|---|---|
| 11:01 | 1 | A     That I did not. |
| 11:02 | 2 | Q     Now, prior to you being called to testify in this case, |
| 11:02 | 3 | you met with the government on at least one occasion; is |
| 11:02 | 4 | that right? |
| 11:02 | 5 |         MR. WYMAN:  Objection.  Asked and answered. |
| 11:02 | 6 |         MR. AVENATTI:  It's a foundational question. |
| 11:02 | 7 |         THE COURT:  Overruled. |
| 11:02 | 8 |         THE WITNESS:  Correct. |
| 11:02 | 9 | BY MR. AVENATTI: |
| 11:02 | 10 | Q     How many times did you meet with them? |
| 11:02 | 11 | A     Twice in person, and now I don't recall if the third |
| 11:02 | 12 | time was by phone or not.  A total of three times, and one |
| 11:02 | 13 | may have been by phone. |
| 11:02 | 14 | Q     Do you recall any questions from the Assistant U.S. |
| 11:02 | 15 | Attorneys or agents during any of those three times relating |
| 11:03 | 16 | to what accounting systems the law firm used while you were |
| 11:03 | 17 | there? |
| 11:03 | 18 | A     I don't have any specific recollection about that. |
| 11:03 | 19 | Q     As you sit there today, you don't recall any questions |
| 11:03 | 20 | about that topic, do you, meaning the accounting system? |
| 11:03 | 21 | A     I don't recall questions on that topic. |
| 11:03 | 22 |         MR. AVENATTI:  Nothing further, Your Honor. |
| 11:03 | 23 |         THE COURT:  Mr. Wyman. |
| 11:03 | 24 |         MR. WYMAN:  Thank you, Your Honor. |
| 11:03 | 25 |                    CROSS-EXAMINATION |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

94

| | | |
|---|---|---|
| 11:03 | 1 | BY MR. WYMAN: |
| 11:03 | 2 | Q    Good morning, Mr. Colorado. |
| 11:03 | 3 | A    Good morning. |
| 11:03 | 4 | Q    Now, the defendant asked you about various cases in |
| 11:04 | 5 | which you regularly communicated with clients; is that |
| 11:04 | 6 | right? |
| 11:04 | 7 | A    Yes. |
| 11:04 | 8 | Q    In a case that you were working on with the defendant, |
| 11:04 | 9 | if he told you not to communicate with a client, you would |
| 11:04 | 10 | stop communicating with the client, right? |
| 11:04 | 11 | A    I did, yes. |
| 11:04 | 12 | Q    And the cases he asked you about in which you would |
| 11:04 | 13 | communicate with the client, he didn't ask you anything |
| 11:04 | 14 | about communicating with them regarding their settlements, |
| 11:04 | 15 | right? |
| 11:04 | 16 | A    Correct. |
| 11:04 | 17 | Q    And on those cases that you discussed on direct, none |
| 11:04 | 18 | of them had anything to do with Geoffrey Johnson's case, |
| 11:04 | 19 | right? |
| 11:04 | 20 | A    Other than the Johnson case itself, which I believe was |
| 11:04 | 21 | discussed on direct. |
| 11:04 | 22 | Q    Right.  The AT&T case had nothing to do with the |
| 11:05 | 23 | Johnson case, right? |
| 11:05 | 24 | A    Correct. |
| 11:05 | 25 | Q    The cemetery case had nothing to do with Mr. Johnson's |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:05 | 1 | case? |
| 11:05 | 2 | A    Correct. |
| 11:05 | 3 | Q    The med mal cases, no relevance to Mr. Johnson's case? |
| 11:05 | 4 | A    Correct. |
| 11:05 | 5 | Q    And the same is true with regard to the cases of Alexis |
| 11:05 | 6 | Gardner, Gregory Barela, and Michelle Phan, right? |
| 11:05 | 7 | A    I did not work on those cases. |
| 11:05 | 8 | Q    And they had nothing to do with the cases that you did |
| 11:05 | 9 | work on that you talked about, correct? |
| 11:05 | 10 | MR. AVENATTI:  Objection.  Lacks foundation. |
| 11:05 | 11 | THE COURT:  Overruled. |
| 11:05 | 12 | BY MR. WYMAN: |
| 11:05 | 13 | Q    At the end of your direct the defendant asked you some |
| 11:05 | 14 | questions about a timekeeping system that you had.  Do you |
| 11:05 | 15 | recall that? |
| 11:05 | 16 | A    Right. |
| 11:05 | 17 | Q    You said you would put your time in a spreadsheet and |
| 11:05 | 18 | then you would give it to your receptionist, Ms. Ouellette? |
| 11:05 | 19 | A    That's right. |
| 11:05 | 20 | Q    And your understanding was that she would input it into |
| 11:05 | 21 | a the software for your firm's hourly cases, right? |
| 11:06 | 22 | MR. AVENATTI:  Objection.  Misstates the |
| 11:06 | 23 | testimony. |
| 11:06 | 24 | THE COURT:  Overruled. |
| 11:06 | 25 | THE WITNESS:  For the hourly cases and for the |

| | | |
|---|---|---|
| 11:06 | 1 | class-action cases. |
| 11:06 | 2 | BY MR. WYMAN: |
| 11:06 | 3 | Q    Was Geoffrey Johnson's case an hourly case? |
| 11:06 | 4 | A    It was not. |
| 11:06 | 5 | Q    Was it a class action? |
| 11:06 | 6 | A    It was not. |
| 11:06 | 7 | Q    Thank you. |
| 11:06 | 8 | MR. WYMAN:  No further questions. |
| 11:06 | 9 | REDIRECT EXAMINATION |
| 11:06 | 10 | BY MR. AVENATTI: |
| 11:06 | 11 | Q    Mr. Colorado, you don't know what time was tracked by |
| 11:06 | 12 | other attorneys, if any, in connection with the Johnson |
| 11:06 | 13 | case; do you? |
| 11:06 | 14 | MR. WYMAN:  Beyond the scope.  Foundation. |
| 11:06 | 15 | THE COURT:  Overruled. |
| 11:06 | 16 | THE WITNESS:  I do not. |
| 11:06 | 17 | BY MR. AVENATTI: |
| 11:06 | 18 | Q    So you don't know what time was input into this |
| 11:06 | 19 | computer program that you don't know the name of on |
| 11:06 | 20 | Mr. Johnson's case; do you? |
| 11:06 | 21 | MR. WYMAN:  Beyond the scope, and asked and |
| 11:06 | 22 | answered. |
| 11:06 | 23 | THE COURT:  Asked and answered.  Sustained. |
| 11:06 | 24 | BY MR. AVENATTI: |
| 11:07 | 25 | Q    Sir, isn't it true that there were -- well, strike |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:07 | 1 | that.  Do you know if any time was tracked on any |
| 11:07 | 2 | contingency cases that the law firm had?  Do you know? |
| 11:07 | 3 | A    I don't know. |
| 11:07 | 4 | Q    Who would be more knowledgeable based on your |
| 11:07 | 5 | experience about that topic?  Judy Regnier or you? |
| 11:07 | 6 | MR. WYMAN:  Beyond the scope.  Calls for |
| 11:07 | 7 | speculation. |
| 11:07 | 8 | THE COURT:  Sustained. |
| 11:07 | 9 | BY MR. AVENATTI: |
| 11:07 | 10 | Q    Ms. Regnier has testified before this jury that |
| 11:07 | 11 | expenses were tracked in the same computer program that you |
| 11:07 | 12 | don't know the name of.  Do you have any reason to dispute |
| 11:07 | 13 | that? |
| 11:07 | 14 | MR. WYMAN:  Beyond the scope. |
| 11:07 | 15 | THE COURT:  Overruled. |
| 11:08 | 16 | THE WITNESS:  None. |
| 11:08 | 17 | MR. AVENATTI:  Nothing further. |
| 11:08 | 18 | THE COURT:  Mr. Wyman. |
| 11:08 | 19 | MR. WYMAN:  No.  Thank you, Your Honor. |
| 11:08 | 20 | THE COURT:  May the witness be excused? |
| 11:08 | 21 | MR. AVENATTI:  Yes, sir. |
| 11:08 | 22 | MR. WYMAN:  Yes, Your Honor. |
| 11:08 | 23 | THE COURT:  Sir, you may be excused.  Thank you. |
| 11:08 | 24 | Would you call your next witness, please. |
| 11:08 | 25 | MR. AVENATTI:  Yes, Your Honor. |

98

| | | |
|---|---|---|
| 11:08 | 1 | The defense calls John Arden to the stand. |
| 11:08 | 2 | JOHN ARDEN, DEFENDANT'S WITNESS, SWORN |
| 11:09 | 3 | THE CLERK:  If you will please state and spell |
| 11:10 | 4 | your first and last name. |
| 11:10 | 5 | THE WITNESS:  My first name is John, J-o-h-n.  My |
| 11:10 | 6 | last name is Arden, A-r-d-e-n. |
| 11:10 | 7 | THE CLERK:  Thank you. |
| 11:10 | 8 | THE COURT:  Mr. Avenatti. |
| 11:10 | 9 | DIRECT EXAMINATION |
| 11:10 | 10 | BY MR. AVENATTI: |
| 11:10 | 11 | Q    Mr. Arden, good morning. |
| 11:10 | 12 | A    Good morning. |
| 11:10 | 13 | Q    You previously worked as an attorney at Eagan Avenatti, |
| 11:10 | 14 | LLP, correct? |
| 11:10 | 15 | A    Not exactly.  I was an attorney admitted in other |
| 11:11 | 16 | jurisdictions.  But at the time that I worked at Eagan |
| 11:11 | 17 | Avenatti, I was not admitted in California, so I worked in a |
| 11:11 | 18 | more limited role under supervision at the firm. |
| 11:11 | 19 | Q    Well, you were not admitted in California at the time, |
| 11:11 | 20 | but you were admitted in other jurisdictions which you |
| 11:11 | 21 | understood permitted you to perform legal work but not make |
| 11:11 | 22 | court appearances, right? |
| 11:11 | 23 | A    I could do certain tasks. |
| 11:11 | 24 | Q    And did you do certain tasks? |
| 11:11 | 25 | A    Yes, like research and initial drafting of documents. |

| | | |
|---|---|---|
| 11:11 | 1 | Q    And in connection with that work -- well, strike that. |
| 11:11 | 2 | How long were you at the law firm? |
| 11:11 | 3 | A    I believe I started at some point in 2009, and I left |
| 11:11 | 4 | in 2019. |
| 11:11 | 5 | Q    So about ten years; is that right? |
| 11:11 | 6 | A    Almost. |
| 11:11 | 7 | Q    And during that time period, did you work on one or |
| 11:12 | 8 | more matters for Greg Barela? |
| 11:12 | 9 | A    Yes. |
| 11:12 | 10 | Q    What matter or matters do you recall working on for |
| 11:12 | 11 | government witness Greg Barela? |
| 11:12 | 12 | A    I worked on intellectual property disputes.  There was |
| 11:12 | 13 | an arbitration.  And I believe I did a brief amount of work |
| 11:12 | 14 | on another civil action, but I don't remember the details of |
| 11:12 | 15 | it. |
| 11:12 | 16 | Q    How long do you recall working on Mr. Barela's matters? |
| 11:12 | 17 | A    I'm not exactly entirely sure when the matter started. |
| 11:12 | 18 | I don't remember the year that the case was filed, but I |
| 11:12 | 19 | think it was pending for maybe two years.  I'm not sure. |
| 11:13 | 20 | Q    Do you have a recollection that the firm began work for |
| 11:13 | 21 | Mr. Barela in approximately 2014? |
| 11:13 | 22 | A    That doesn't seem necessarily wrong, but I don't |
| 11:13 | 23 | remember the year. |
| 11:13 | 24 | Q    And did you do quite a lot of work on the Barela |
| 11:13 | 25 | intellectual property matter? |

| | | |
|---|---|---|
| 11:13 | 1 | A    I did.  I did a lot of work.  I did research and |
| 11:13 | 2 | initial drafting. |
| 11:13 | 3 | Q    Did you deal with any experts that were hired in |
| 11:13 | 4 | connection with the Barela matter? |
| 11:13 | 5 | A    I had very limited involvement with experts. |
| 11:13 | 6 | Q    Well, that wasn't exactly my question.  Did you work |
| 11:13 | 7 | with experts in connection with the Barela matter, meaning |
| 11:13 | 8 | experts hired to assist in the prosecution of Mr. Barela's |
| 11:13 | 9 | case? |
| 11:13 | 10 | MR. WYMAN:  Objection.  Leading, and asked and |
| 11:13 | 11 | answered. |
| 11:13 | 12 | THE COURT:  Overruled. |
| 11:13 | 13 | THE WITNESS:  I was aware that there were experts |
| 11:14 | 14 | hired.  I did not have primary responsibility working with |
| 11:14 | 15 | those experts. |
| 11:14 | 16 | BY MR. AVENATTI: |
| 11:14 | 17 | Q    Did you ever have any responsibility -- well, strike |
| 11:14 | 18 | that.  Did you ever communicate with any experts hired in |
| 11:14 | 19 | connection with the Barela case? |
| 11:14 | 20 | A    I probably communicated with them at some point. |
| 11:14 | 21 | Q    Do you recall that there was an intellectual -- strike |
| 11:14 | 22 | that.  Do you recall that there was a patent expert hired in |
| 11:14 | 23 | connection with the Barela case? |
| 11:14 | 24 | MR. SAGEL:  Objection, leading. |
| 11:14 | 25 | THE COURT:  Overruled. |

| 11:14 | 1 | THE WITNESS:  I don't really recall the subject |

11:14   1        THE WITNESS:  I don't really recall the subject
11:14   2   matter of the expert testimony.  I recall a damages expert.
11:14   3   BY MR. AVENATTI:
11:14   4   Q    Do you recall the firm had retained a -- well, strike
11:14   5   that.  Do you have a recollection that a damages expert had
11:14   6   to be hired in connection with Mr. Barela's claim?
11:14   7   A    I do remember that there was a damages expert.
11:14   8   Q    Do you recall communicating with the damages expert?
11:14   9   A    In a very limited way.
11:15   10  Q    Do you have any idea how much the damages expert
11:15   11  charged in connection with Mr. Barela's matter?
11:15   12  A    I do not.
11:15   13  Q    Do you have any knowledge as to how much any expert
11:15   14  charged in connection with the Barela matter?
11:15   15  A    I don't have any recollection of that, no.
11:15   16  Q    Did there come a time where you accompanied me and
11:15   17  Mr. Barela to Denver, Colorado, in connection with a
11:15   18  mediation?
11:15   19  A    I did go to Denver for a mediation, yes.
11:15   20  Q    And who was present at the mediation?
11:15   21  A    Generally you were present.  Mr. Barela was present.
11:16   22  Attorneys for the other side were present, and there was a
11:16   23  mediator.
11:16   24  Q    The mediator was a retired federal magistrate judge; do
11:16   25  you recall that?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:16   1    A    I remember there was a retired judge.  I don't remember
11:16   2    whether he was a magistrate or another judge.
11:16   3    Q    Judge Downes.  Does that refresh your recollection?
11:16   4    A    Sound familiar, but I still don't remember what his
11:16   5    background was.
11:16   6    Q    Now, I believe Mr. Barela has testified that that
11:16   7    mediation lasted across a weekend.  Is that your
11:16   8    recollection?
11:16   9          MR. SAGEL:  Objection.  Misstates the testimony.
11:16   10          THE COURT:  Overruled.
11:16   11          THE WITNESS:  The portion of it that I was present
11:16   12    for was one day.
11:16   13    BY MR. AVENATTI:
11:16   14    Q    And do you remember that that was on a Friday?
11:16   15    A    I don't remember for sure that it was on a Friday, but
11:16   16    it sounds possible.
11:16   17    Q    Other than the one day that you were present for, are
11:17   18    you aware of any other day for an in-person mediation?
11:17   19    A    I didn't attend any other in-person mediation, no.
11:17   20    Q    In connection with the Barela matter, did you ever deal
11:17   21    with the lawyers on the other side?
11:17   22    A    Occasionally.
11:17   23    Q    Who do you recall dealing with who represented the
11:17   24    other side, meaning Brock?
11:17   25    A    The name that I remember was David Sheikh, I believe,

| | | |
|---|---|---|
| 11:17 | 1 | and Joe Culig.  I believe it's spelled C-u-l-i-g. |
| 11:17 | 2 | Q    And during your representation of Mr. Barela, did you |
| 11:17 | 3 | communicate with those gentlemen by e-mail and phone? |
| 11:18 | 4 | A    I don't know how many phone calls I had.  If I was on |
| 11:18 | 5 | phone calls, it was usually with someone else as well. |
| 11:18 | 6 | MR. AVENATTI:  Move to strike, Your Honor. |
| 11:18 | 7 | THE COURT:  It will be stricken. |
| 11:18 | 8 | BY MR. AVENATTI: |
| 11:18 | 9 | Q    Mr. Arden, my question is:  Do you have a recollection |
| 11:18 | 10 | of communicating with Mr. Sheikh and Mr. Culig by phone and |
| 11:18 | 11 | e-mail generally in connection with Mr. Barela's matter? |
| 11:18 | 12 | A    Generally I remember that there were communications by |
| 11:18 | 13 | e-mail. |
| 11:18 | 14 | Q    Following the in-person mediation, did you have |
| 11:19 | 15 | anything to do with the finalization of any settlement |
| 11:19 | 16 | involving Brock and Mr. Barela? |
| 11:19 | 17 | A    No, I don't believe I did. |
| 11:19 | 18 | Q    Now, after the settlement with Brock was finalized, do |
| 11:19 | 19 | you have a recollection of seeing Mr. Barela in the law |
| 11:19 | 20 | firm, in the offices of the law firm on a regular basis? |
| 11:20 | 21 | A    I do remember seeing him around.  I don't remember the |
| 11:20 | 22 | time frame or how often. |
| 11:20 | 23 | Q    Mr. Arden, you would from time to time in 2018 see |
| 11:20 | 24 | Mr. Barela in the offices of Eagan Avenatti; is that right? |
| 11:20 | 25 | A    That's correct. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

104

| | | |
|---|---|---|
| 11:20 | 1 | Q    Were you cordial to him when you saw him? |
| 11:20 | 2 | A    I think so. |
| 11:20 | 3 | Q    I want to ask you about some of the testimony the |
| 11:20 | 4 | government witness Barela provided to the jury. |
| 11:20 | 5 | Can you see that, sir? |
| 11:21 | 6 | A    Yes. |
| 11:21 | 7 | MR. AVENATTI: |
| 11:21 | 8 | "Q    Now, in March of -- well, strike |
| 11:21 | 9 | that.  Mr. Sagel asked you a number of questions |
| 11:21 | 10 | about various facts and events relating to what |
| 11:21 | 11 | you claim were your efforts to get monies that |
| 11:21 | 12 | were owed to you.  Do you recall those questions |
| 11:21 | 13 | generally? |
| 11:21 | 14 | "A    I do. |
| 11:21 | 15 | "Q    I want to ask you about something |
| 11:21 | 16 | related to that.  Now, you had claimed that in |
| 11:21 | 17 | March of 2018 you came to the law firm, my law |
| 11:21 | 18 | firm, Eagan Avenatti.  Do you recall that? |
| 11:22 | 19 | "A    I believe so. |
| 11:22 | 20 | "Q    And you met with Mr. Ibrahim, who had |
| 11:22 | 21 | worked on your case; is that true? |
| 11:22 | 22 | "A    I believe so." |
| 11:22 | 23 | BY MR. AVENATTI: |
| 11:22 | 24 | Q    Now, let's stop right there.  Who is Mr. Ibrahim? |
| 11:22 | 25 | A    He was an attorney who worked at the firm. |

```
11:22   1    Q    And he was an attorney who you worked with from time to
11:22   2    time at the firm; is that right?
11:22   3    A    Yes.
11:22   4    Q    And you worked with Mr. Ibrahim on Mr. Barela's matter;
11:22   5    is that true?
11:22   6    A    Yes.
11:22   7             MR. AVENATTI:
11:22   8             "Q    And you previously claimed under oath
11:22   9          that Mr. Ibrahim congratulated you on the
11:22   10         settlement at that time, right?
11:22   11            "A    That's correct.
11:22   12            "Q    And that at the time -- and we're
11:22   13         talking about March 2018 -- Mr. Ibrahim led you to
11:22   14         believe that the initial settlement payment of
11:23   15         1.6 million had been made; is that true?
11:23   16            "A    Yes.
11:23   17            "Q    And where did you meet with
11:23   18         Mr. Ibrahim?
11:23   19            "A    When I was walking into the lobby, he
11:23   20         was sitting there reading the Wall Street Journal.
11:23   21            "Q    And I think you testified that the
11:23   22         individuals that you understood from Eagan
11:23   23         Avenatti who had worked on your matter were me,
11:23   24         Mr. Ibrahim, and Mr. Arden, right?
11:23   25            "A    Correct.
```

```
11:23   1              "Q     And you have previously claimed, sir,
11:23   2         have you not, including under oath, that during
11:23   3         your conversation with Mr. Ibrahim, you saw
11:23   4         Mr. Arden's reflection in the glass wall of the
11:23   5         conference room?
11:23   6              "A     Correct.
11:24   7              "Q     And you observed Mr. Arden gesturing
11:24   8         towards Mr. Ibrahim by waving his hand across his
11:24   9         throat to signal to him to stop discussing your
11:24   10        settlement payment.  That's what you claim, right?
11:24   11             "A     Correct.
11:24   12             "Q     And you claim that under oath,
11:24   13        correct?
11:24   14             "A     That is correct.
11:24   15             "Q     Now, you are clear that this
11:24   16        happened, right?
11:24   17             "A     I'm clear."
11:24   18   BY MR. AVENATTI:
11:24   19   Q    Did I read that correctly?
11:24   20   A    I believe so.
11:24   21   Q    Mr. Arden, at any point in time while Mr. Barela was in
11:24   22   the offices of Eagan Avenatti, did you ever make any gesture
11:25   23   to Mr. Ibrahim or anyone in an attempt to keep information
11:25   24   from Mr. Barela?
11:25   25   A    No, I did not.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:25  1   Q    Did what Mr. Barela tell -- strike that.  Did what
11:25  2   government witness Barela tell this jury, to the best of
11:25  3   your knowledge, was that true?
11:25  4   A    I don't know what Mr. Barela may have seen or thinks he
11:25  5   saw or may have -- I don't know what he thinks he saw.  He
11:25  6   is mistaken about anything that I might have done that would
11:25  7   have been designed to conceal something from Mr. Barela.
11:25  8   Q    Thank you.
11:26  9            "Q    And then according to you, after
11:26 10        Mr. Ibrahim saw Mr. Arden's gesture in the glass
11:26 11        of the conference room, what happened?
11:26 12            "A    He abruptly stopped talking to me.
11:26 13            "Q    And according to you, that's because
11:26 14        they were trying to keep the details of the
11:26 15        settlement from you; is that right?
11:26 16            "A    I believe so."
11:26 17        Mr. Arden, did you ever take any steps to keep the
11:26 18   details of any settlement from Mr. Barela?  Yes or no?
11:26 19   A    No.
11:26 20            MR. AVENATTI:
11:27 21            "Q    And then also according to you, after
11:27 22        March 2018 they did everything they could to avoid
11:27 23        you, right?
11:27 24            "A    Correct."
      25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:27 | 1 | BY MR. AVENATTI: |
| 11:27 | 2 | Q    Mr. Arden, after March 2018 did you do everything you |
| 11:27 | 3 | could to avoid Mr. Barela?  Yes or no? |
| 11:27 | 4 | A    No. |
| 11:27 | 5 | MR. SAGEL:  Objection.  Leading. |
| 11:27 | 6 | THE COURT:  Overruled. |
| 11:27 | 7 | THE WITNESS:  No.  I was not trying to avoid |
| 11:27 | 8 | Mr. Barela.  I thought that his case was done. |
| 11:27 | 9 | MR. AVENATTI:  Move to strike the last part as |
| 11:27 | 10 | nonresponsive, Your Honor. |
| 11:27 | 11 | THE COURT:  It will be stricken. |
| 11:27 | 12 | BY MR. AVENATTI: |
| 11:27 | 13 | Q    Mr. Arden, did you do anything to avoid Mr. Barela in |
| 11:27 | 14 | 2018?  Yes or no? |
| 11:27 | 15 | A    I did not avoid Mr. Barela. |
| 11:27 | 16 | MR. AVENATTI: |
| 11:28 | 17 | "Q    And despite the fact that you were |
| 11:28 | 18 | often in the offices, according to your sworn |
| 11:28 | 19 | testimony Mr. Arden and Mr. Ibrahim would avoid |
| 11:28 | 20 | eye contact with you, right? |
| 11:28 | 21 | "A    Correct." |
| 11:28 | 22 | BY MR. AVENATTI: |
| 11:28 | 23 | Q    Did you ever avoid eye contact with Mr. Barela as he |
| 11:28 | 24 | testified to under oath before this jury? |
| 11:28 | 25 | A    I have no idea whether I ever avoided eye contact with |

11:28    1    Mr. Barela.

11:28    2    Q    Well, do you have a recollection, sir, of purposely

11:28    3    avoiding eye contact with Mr. Barela?  Yes or no?

11:28    4    A    I have no recollection of purposely avoiding eye

11:28    5    contact.

11:28    6              MR. AVENATTI:

11:29    7              "Q    And you claim that's because they

11:29    8         knew that the 1.6 million had been paid but you

11:29    9         were not told about it, right?

11:29   10              "A    I believe so.

11:29   11              "Q    And you made those claims regarding

11:29   12         the, we'll call it, the conference room glass

11:29   13         event now under oath twice, right?

11:29   14              "A    Yes.

11:29   15              "Q    And in numerous filings with various

11:29   16         courts, correct?

11:29   17              "A    Yes."

11:29   18    BY MR. AVENATTI:

11:29   19    Q    Mr. Arden, this claim of you gesturing to Mr. Ibrahim

11:29   20    to shut it down or not to say anything, when I asked you

11:29   21    about it, that's not the first time that you learned that

11:29   22    Mr. Barela had made such a claim; is it?

11:29   23    A    No.

11:30   24    Q    Because Mr. Barela also put that claim in an

11:30   25    arbitration proceeding in a lawsuit that he filed against

11:30  1    you and others, right?
11:30  2              MR. SAGEL:  Leading, Your Honor.
11:30  3              THE COURT:  Sustained.
11:30  4    BY MR. AVENATTI:
11:30  5    Q    Mr. Arden, did you first learn of that claim in
11:30  6    connection with an arbitration proceeding?
11:30  7              MR. SAGEL:  Still leading.
11:30  8              THE COURT:  Overruled.
11:30  9              THE WITNESS:  Yes, I believe so.
11:30  10   BY MR. AVENATTI:
11:30  11   Q    And when you read that claim, you knew that it was
11:30  12   false?
11:30  13   A    I knew I had never made any gesture designed to conceal
11:30  14   anything from Mr. Barela.
11:31  15   Q    And when you met with the government before this trial
11:31  16   started, you told them the same thing; didn't you?
11:31  17   A    Yes, I believe so.  I don't remember everything I told
11:31  18   them.
11:31  19             MR. AVENATTI:  Move to strike this portion as
11:31  20   nonresponsive.
11:31  21             THE COURT:  It will be stricken.
11:31  22             Sir, see if you can get a little bit closer to the
11:31  23   mic.
11:31  24             MR. AVENATTI:
11:31  25             "Q    And those details, Mr. Barela, as far

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:31  1          as you're concerned, they're as truthful and

11:31  2          accurate as everything you have testified to under

11:31  3          direct examination by Mr. Sagel, right?

11:32  4                "A     Yes."

11:32  5   BY MR. AVENATTI:

11:32  6   Q    Did I read that correctly?

11:32  7   A    Yes.

11:32  8                MR. SAGEL:  Actually, objection.  He did not read

11:32  9   it correctly, Your Honor.

11:32  10               MR. AVENATTI:  Well, let me read it again.

11:32  11               "Q     And those details, Mr. Barela, as far

11:32  12         as you're concerned, they are as truthful and

11:32  13         accurate as everything you have testified to under

11:32  14         direct examination by Mr. Sagel, right?

11:32  15               "A     Yes."

11:32  16  BY MR. AVENATTI:

11:32  17  Q    Did I read that correctly?

11:32  18  A    I believe so, yes.

11:33  19  Q    Mr. Arden, do you recall -- well, strike that.  Before

11:33  20  taking the stand today, how many times have you met with the

11:33  21  government in connection with this case or communicated with

11:33  22  them by phone?

11:33  23  A    Three times, I believe.

11:34  24  Q    And up until about two weeks ago, you had expected the

11:34  25  government to call you as a witness in this trial; didn't

11:34   1   you?

11:34   2   A    They subpoenaed me to testify, yes.

11:34   3   Q    And you were expecting to testify as a government

11:34   4   witness, right?

11:34   5   A    I figured there was a good chance of that.

11:34   6   Q    All right.  And then you were contacted through your

11:34   7   attorney around the 28th or 29th of July, which happens to

11:34   8   be around the time that Mr. Barela testified, and you were

11:34   9   informed that the government was no longer going to call you

11:35   10  as a witness, right?

11:35   11  A    I was informed that I was released from the subpoena.

11:35   12  Q    Subpoena from the government, right?

11:35   13  A    Yes.

11:35   14  Q    And then shortly thereafter you learned that I wanted

11:35   15  to call you as a witness and was trying to serve you with a

11:35   16  subpoena, right?

11:35   17  A    Yes, a couple days later.

11:35   18  Q    And that's why you are here today.  You are here in

11:35   19  response to my subpoena to have you testify, not the

11:35   20  government, right?

11:35   21  A    Yes.  I am here because you subpoenaed me.

11:35   22  Q    Going back to government witness Barela's testimony:

11:36   23          "Q    Do you recall that when you met with

11:36   24      those same gentlemen on that same day, you

11:36   25      recounted for them like you did the jury the story

11:36  1    about the reflection in the conference room glass

11:36  2    involving Mr. Arden and Mr. Ibrahim?

11:36  3         "A    I do.

11:36  4         "Q    Do you have a recollection that when

11:36  5    you met with the agents and the Assistant U.S.

11:36  6    Attorneys on March 15, 2019, you also recounted a

11:36  7    story for them about a phone call that you had had

11:36  8    on or about November 15th, 2018?  Do you recall

11:36  9    that?

11:36  10        "A    I do not.

11:36  11        "Q    Please take a look at paragraph 44.

11:36  12   And my question is:  Does that refresh your

11:36  13   recollection?

11:36  14        "A    Yes.  I recall that.

11:37  15        "Q    So according to you, on or about

11:37  16   November 14th, 2018, you called Ms. Regnier and

11:37  17   you asked for Mr. Arden and Mr. Ibrahim, correct?

11:37  18        "A    Correct.

11:37  19        "Q    And you were told that Mr. Arden and

11:37  20   Mr. Ibrahim were not available, so you texted

11:37  21   Mr. Arden; is that right?

11:37  22        "A    That's correct.

11:37  23        "Q    And since this was after March of

11:37  24   2018, according to you, Mr. Ibrahim and Mr. Arden

11:37  25   were no longer speaking with you, right?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:37   1                  "A     That's correct."
11:37   2              Did I read that correctly?
11:37   3   A    I think so.
11:37   4   Q    To the best of your knowledge, is Mr. Barela's sworn
11:37   5   testimony before this jury that you were no longer speaking
11:38   6   with him after March of 2018, was that testimony truthful?
11:38   7              MR. SAGEL:  Asked and answered, Your Honor.
11:38   8              THE COURT:  Overruled.
11:38   9              THE WITNESS:  All I can tell you is that I was not
11:38  10   making any effort to avoid speaking with him.
11:38  11   BY MR. AVENATTI:
11:38  12   Q    That's not my question.  My question is:  Were you no
11:38  13   longer speaking with Mr. Barela after March of 2018 to the
11:38  14   best of your knowledge?
11:38  15   A    No, I was not no longer speaking with him.
11:38  16   Q    Thank you.
11:38  17              "Q     And after you texted Mr. Arden, he
11:38  18         responded by calling you and Mr. Ibrahim on the
11:38  19         phone as well as that attorney that came up during
11:38  20         the direct, Evan Jenness, right?
11:38  21              "A     I believe so."
11:38  22              Mr. Arden, have you ever spoken to Evan Jenness?
11:39  23   A    I don't think that I have ever spoken to Evan Jenness.
11:39  24   Q    Did you ever participate on a conference call with you,
11:39  25   Mr. Ibrahim, Evan Jenness, and Greg Barela?
```

11:39  1   A    No, but the --

11:39  2   Q    Thank you.  Mr. Arden, just answer my questions, okay?

11:39  3   Please.

11:39  4        Did you participate on a conference call in --

11:39  5   well, strike that.  Let me just go back to the transcript

11:39  6   and the sworn testimony of the government witness.

11:39  7        "Q    Well, that's what you told the

11:40  8        federal agents, right?

11:40  9        "A    It sounded like.

11:40  10        "Q    Well, that's what you told the

11:40  11        federal agents; is it not?  You told the federal

11:40  12        agents it was Evan Jenness; did you not, sir?

11:40  13        "A    I believe so.

11:40  14        "Q    And you also told the agents that

11:40  15        this seems suspicious to you when all three of

11:40  16        them called you, and at that point you knew that

11:40  17        my firm had stole your money.  That's what you

11:40  18        told them, right?

11:40  19        "A    I did.

11:40  20        "Q    And during the call, you accused the

11:40  21        firm of stealing your money; is that right?

11:40  22        "A    Correct.

11:40  23        "Q    And Evan Jenness told you on the call

11:40  24        that you could not accuse the law firm because it

11:41  25        was slander, right?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:41    1              "A     Yes."

11:41    2              Mr. Arden, were you ever on a call where Evan

11:41    3    Jenness told Mr. Barela anything?  Yes or no?

11:41    4    A    No.

11:41    5              MR. SAGEL:  Objection.  Leading, Your Honor.

11:41    6              THE COURT:  Overruled.

11:41    7              THE WITNESS:  No, I don't think so.

11:41    8              MR. AVENATTI:

11:41    9              "Q     And you responded by telling

11:41   10         Ms. Jenness, the attorney, that she had a conflict

11:41   11         of interest because she had three conference calls

11:41   12         with you and knew about the Brock matter and

11:41   13         waiting for the settlement proceeds; is that

11:41   14         right?

11:42   15              "A     Correct."

11:42   16    BY MR. AVENATTI:

11:42   17    Q    Were you ever on any phone call where Mr. Barela told

11:42   18    Evan Jenness that she had a conflict of interest because she

11:42   19    had had three conference calls with Mr. Barela and knew

11:42   20    about the Brock matter and waiting for the settlement

11:42   21    proceeds?

11:42   22    A    No, I don't believe so.

11:42   23              MR. AVENATTI:

11:42   24              "Q     And after you told Ms. Jenness that,

11:42   25         Ms. Jenness, Mr. Arden, and Mr. Ibrahim hung up on

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:42 | 1 | you? |
| 11:43 | 2 | "A     That's correct. |
| 11:43 | 3 | "Q     And that's what happened, right? |
| 11:43 | 4 | "A     Yes. |
| 11:43 | 5 | "Q     You're sure about that? |
| 11:43 | 6 | "A     Yes." |
| 11:43 | 7 | BY MR. AVENATTI: |
| 11:43 | 8 | Q    Mr. Arden, did you and Mr. Ibrahim and Evan Jenness |
| 11:43 | 9 | ever hang up on government witness Barela? |
| 11:43 | 10 | A    No, I don't think so. |
| 11:43 | 11 | Q    Well, you say I don't think so.  Do you have any |
| 11:43 | 12 | recollection of ever doing that? |
| 11:43 | 13 | A    No, I don't have any recollection of hanging up on |
| 11:43 | 14 | Mr. Barela. |
| 11:43 | 15 | Q    Do you have a recollection of anyone else ever hanging |
| 11:43 | 16 | up on Mr. Barela? |
| 11:43 | 17 | A    No. |
| 11:43 | 18 | MR. AVENATTI: |
| 11:44 | 19 | "Q     And during that call Mr. Arden and |
| 11:44 | 20 | Mr. Ibrahim told you, according to you, that Brock |
| 11:44 | 21 | did not make the $1.6 million payment; is that |
| 11:44 | 22 | correct? |
| 11:45 | 23 | "A     Yes. |
| 11:45 | 24 | "Q     You're certain about that as well, |
| 11:45 | 25 | right? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:45  1           "A      Yes."

11:45  2    BY MR. AVENATTI:

11:45  3    Q    Mr. Arden, were you ever on any call where you or

11:45  4    Mr. Ibrahim or anyone else told Mr. Barela that the

11:45  5    1.6 million payment had not been made?

11:46  6    A    I never told Mr. Barela that.

11:46  7    Q    Did you ever hear Mr. Ibrahim tell Mr. Barela that?

11:46  8    A    No.

11:46  9    Q    Do you know why he would make that up to this jury?

11:46 10           MR. SAGEL:  Objection, argumentative.

11:46 11           THE COURT:  Sustained.

11:46 12    BY MR. AVENATTI:

11:46 13    Q    Do you know why the government would call him knowing

11:46 14    that he was lying about it?

11:46 15           MR. SAGEL:  Objection.

11:46 16           THE COURT:  Sustained.

11:46 17    BY MR. AVENATTI:

11:46 18    Q    Mr. Barela was then asked about a letter that he had

11:47 19    Mr. Bledsoe write.

11:47 20           "Q      And a few days later you had

11:47 21        Mr. Bledsoe write a letter to each of Mr. Arden

11:47 22        and Mr. Ibrahim about your settlement, correct?

11:47 23           "A      I'd have to verify the dates, but I

11:47 24        believe so."

11:47 25           He was shown the letter.

| | | |
|---|---|---|
| 11:47 | 1 | "Q      So on November 19th you had |
| 11:47 | 2 | Mr. Bledsoe send a letter to Mr. Arden and |
| 11:47 | 3 | Mr. Ibrahim asking them to confirm that they had |
| 11:47 | 4 | represented to you that Brock had not made the |
| 11:47 | 5 | 1.6 million payment, correct? |
| 11:47 | 6 | "A      That is correct." |
| 11:47 | 7 | He is shown the letter which we are going to get |
| 11:47 | 8 | to momentarily. |
| 11:48 | 9 | "Q      Can you see that, sir? |
| 11:48 | 10 | "A      I can. |
| 11:48 | 11 | "Q      And you knew this letter was going |
| 11:48 | 12 | out before it was sent, right? |
| 11:48 | 13 | "A      Yes." |
| 11:48 | 14 | Did I read that correctly? |
| 11:48 | 15 | A   Yes. |
| 11:48 | 16 | MR. AVENATTI:  Can we please have Exhibit 1059, |
| 11:48 | 17 | which is in evidence.  Can we please blow that up at the |
| 11:48 | 18 | top -- well, including the letterhead, please. |
| 11:49 | 19 | BY MR. AVENATTI: |
| 11:49 | 20 | Q   Can you see that, sir? |
| 11:49 | 21 | A   Yes. |
| 11:49 | 22 | Q   And this is a letter that you received via e-mail on |
| 11:49 | 23 | the date indicated on the letter; is that right? |
| 11:49 | 24 | A   Yes.  I haven't had a chance to look at the letter |
| 11:49 | 25 | entirely yet, but that seems correct. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:49 | 1 | Q   Well, take as much time as you like before I ask my |
| 11:49 | 2 | next question of you relating to the document. |
| 11:49 | 3 | A   (Witness reading) |
| 11:49 | 4 | Q   Would you like a hard copy of it? |
| 11:49 | 5 | A   Well, I can't see the whole thing, but I can look at it |
| 11:49 | 6 | on the screen. |
| 11:49 | 7 |         (Witness reading)  I'm not sure of the date, but |
| 11:50 | 8 | that looks like the letter that I remember seeing. |
| 11:50 | 9 | Q   Do you have any reason to dispute that you received |
| 11:50 | 10 | this letter on or about that date? |
| 11:50 | 11 | A   I don't think so. |
| 11:50 | 12 | Q   Page 18, line 4: |
| 11:50 | 13 |         "Q   So I have shown you 1059.  That's the |
| 11:50 | 14 |     letter to Mr. Arden, and that's the identical |
| 11:50 | 15 |     letter to Mr. Ibrahim, right? |
| 11:50 | 16 |         "A   Correct. |
| 11:50 | 17 |         "Q   And according to you, this date -- |
| 11:50 | 18 |     well, strike that.  Mr. Barela, the letter reads: |
| 11:51 | 19 |     'We understand from Mr. Barela that you |
| 11:51 | 20 |     represented to him that Brock USA did not make the |
| 11:51 | 21 |     initial $1.6 million payment due on the settlement |
| 11:51 | 22 |     agreement.'  Did I read that correctly, |
| 11:51 | 23 |     Mr. Barela? |
| 11:51 | 24 |         "A   Yes. |
| 11:51 | 25 |         "Q   Okay.  So that information according |

| | | |
|---|---|---|
| 11:51 | 1 | to this letter, that he got from you, correct? |
| 11:51 | 2 | "A    Correct. |
| 11:51 | 3 | "Q    And you gave him that information? |
| 11:51 | 4 | "A    Yes. |
| 11:51 | 5 | "Q    And you claimed that happened on the |
| 11:51 | 6 | call, right? |
| 11:51 | 7 | "A    Yes. |
| 11:51 | 8 | "Q    And you still claim it happened on |
| 11:51 | 9 | the call? |
| 11:51 | 10 | "A    Yes." |
| 11:51 | 11 | Sir, did that ever happen on the call? |
| 11:51 | 12 | A    I never told Mr. Barela during that call that Brock had |
| 11:52 | 13 | not made a payment. |
| 11:52 | 14 | Q    So it did not happen on the call; did it? |
| 11:52 | 15 | A    No. |
| 11:52 | 16 | MR. AVENATTI: |
| 11:52 | 17 | "Q    Did Mr. Arden or Mr. Ibrahim ever |
| 11:52 | 18 | respond to that accusation? |
| 11:52 | 19 | "A    They did not.  I don't believe they |
| 11:52 | 20 | did.  I believe they forwarded these to you and |
| 11:52 | 21 | you responded." |
| 11:52 | 22 | BY MR. AVENATTI: |
| 11:52 | 23 | Q    Did I read that correctly? |
| 11:53 | 24 | A    Yes. |
| 11:53 | 25 | Q    Sir, you actually -- strike that.  You and Mr. Ibrahim |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:53 | 1 | actually sent a letter back to Mr. Bledsoe the next day.  Do |
| 11:53 | 2 | you recall that? |
| 11:53 | 3 | A    Yes, I do. |
| 11:53 | 4 | MR. AVENATTI:  Can we have 1061, please. |
| 11:53 | 5 | BY MR. AVENATTI: |
| 11:53 | 6 | Q    Mr. Arden, please take a moment to review that |
| 11:54 | 7 | document.  I want to ask you a couple of questions. |
| 11:54 | 8 | A    (Witness reading document)  Okay. |
| 11:54 | 9 | Q    The first question is:  Does your signature appear in |
| 11:54 | 10 | this document? |
| 11:54 | 11 | A    Yes. |
| 11:54 | 12 | Q    Where? |
| 11:54 | 13 | A    At the bottom I wrote my name. |
| 11:54 | 14 | Q    You signed it, correct? |
| 11:54 | 15 | A    Yes. |
| 11:54 | 16 | Q    Did you sign it on the same date at the top? |
| 11:54 | 17 | A    I think I might have signed it the day before. |
| 11:54 | 18 | Q    To the best of your knowledge, was this letter sent to |
| 11:54 | 19 | Mr. Bledsoe? |
| 11:54 | 20 | A    I understood it was being sent to him.  I never |
| 11:54 | 21 | received a copy of it. |
| 11:54 | 22 | Q    Does Mr. Ibrahim's signature appear on the document? |
| 11:55 | 23 | A    I wouldn't be able to recognize Mr. Ibrahim's |
| 11:55 | 24 | signature. |
| 11:55 | 25 | Q    Do you have any reason to believe that that is not |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:55   1    Mr. Ibrahim's signature on the document?

11:55   2              MR. SAGEL:  Objection.  Foundation.

11:55   3              THE COURT:  Overruled.

11:55   4              THE WITNESS:  No, I don't have any reason to

11:55   5    believe that.

11:55   6    BY MR. AVENATTI:

11:55   7    Q    It's addressed to Mr. Bledsoe, correct?

11:55   8    A    Yes.

11:55   9    Q    And this was sent in response to Mr. Bledsoe's letter

11:55  10    to you and Mr. Ibrahim, right?

11:55  11    A    Yes.

11:55  12    Q    Did you review this letter before you signed it?

11:55  13    A    Yes.

11:55  14    Q    At the time you signed it, was everything in it

11:55  15    truthful and accurate to the best of your knowledge?

11:55  16    A    Yes, from my recollection.

11:55  17    Q    As you sit here today, is everything in the letter

11:55  18    still truthful and accurate to the best of your knowledge?

11:56  19    A    Yes.

11:56  20    Q    Please read the first sentence of the letter.

11:56  21    A    "We are in receipt of the letters you sent us dated

11:56  22    November 19, 2018."

11:56  23    Q    And by the letters, you were referring to the letter

11:56  24    that was sent to you which we were just looking at and the

11:56  25    identical one that was sent to Mr. Ibrahim, right?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:56    1    A    I'm not sure if I ever saw the letter sent to

11:56    2    Mr. Ibrahim, but I understood at the time that he received a

11:56    3    similar letter.

11:56    4    Q    Well, at a minimum you were referring to your letter;

11:56    5    is that right?

11:56    6    A    Yes.

11:56    7    Q    All right.

11:56    8         Please read the next sentence.

11:56    9    A    "Contrary to your representation in the letters, we

11:56   10    made no representations to Mr. Barela relating to the Brock

11:56   11    payment under the settlement agreement."

11:57   12    Q    Now I want to ask you about that sentence.  So

11:57   13    basically by that sentence what you were telling Mr. Bledsoe

11:57   14    was, you got your facts wrong.  That never happened, right?

11:57   15    A    His letter gave us the opportunity to confirm or deny

11:57   16    that we made that representation, and I was denying that I

11:57   17    made that representation.

11:57   18    Q    You included that sentence to make it clear to

11:57   19    Mr. Bledsoe that what his client had told him and what he

11:57   20    had written to you was false; isn't that true?

11:57   21         MR. SAGEL:  Objection.  Leading, asked and

11:57   22    answered, and argumentative.

11:57   23         THE COURT:  Sustained.

11:57   24    BY MR. AVENATTI:

11:57   25    Q    Mr. Arden, when you signed this letter, you knew that

```
11:58   1    what Mr. Bledsoe and Mr. Barela had accused you of was
11:58   2    not -- well, strike that.  When you signed the letter, did
11:58   3    you know if what Mr. Barela and Mr. Bledsoe had accused you
11:58   4    of in Mr. Bledsoe's letter was untrue?
11:58   5    A    I knew that what was stated in the letter written by
11:58   6    Mr. Bledsoe was not accurate.
11:58   7    Q    Is that a different way of saying untrue?
11:58   8    A    Untrue or mistaken.
11:58   9    Q    Please read the next sentence.
11:58  10    A    "Rather, Mr. Barela was specifically advised that we do
11:58  11    not have knowledge about any issues related to payment."
11:59  12    Q    Was that accurate?
11:59  13    A    Yes.
11:59  14              THE COURT:  I think we will take the lunch break
11:59  15    here.  Ladies and gentlemen, we will resume at 1:30.
11:59  16              Please remember the admonition not to discuss the
11:59  17    case with anyone and not to form any opinions on the issues
11:59  18    in the case until it's submitted to you.  And please do no
11:59  19    research.
11:59  20              So we'll see you at 1:30.  Thank you.
11:59  21              (Recess taken at 11:59 a.m.)
11:59  22                        *    *    *
11:59  23
11:59  24
11:59  25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

126

CERTIFICATE

        I hereby certify that pursuant to Section 753,
Title 28, United States Code, the foregoing is a true and
correct transcript of the stenographically reported
proceedings held in the above-entitled matter and that the
transcript page format is in conformance with the
regulations of the Judicial Conference of the United States.


Date:  August 18, 2021


                    /s/   Sharon A. Seffens  8/18/21
                    _____
                    SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**1:30 [2]** 125/15 125/20
tial [51] 1/11 16/8 125/23

**2**

**20 [3]** 79/13 79/24 79/25
**2005 [3]** 57/18 57/19 58/2
**2008 [1]** 59/3
**2009 [1]** 99/3
**2010 [3]** 57/18 57/19 59/4
**2012 [1]** 78/13
**2014 [1]** 99/21
**2018 [24]** 7/18 23/5 42/16 44/22 45/5 45/13
45/21 50/14 52/25 53/7 54/8 70/19 103/23
104/17 105/13 107/22 108/2 108/14 113/8
113/16 113/24 114/6 114/13 123/22
**2019 [7]** 45/3 65/7 65/9 78/14 84/12 99/4
113/6
**2021 [3]** 1/17 4/1 126/14
**21 [2]** 1/12 126/16
**213 [1]** 2/8
**22nd [1]** 42/16
**23rd [1]** 44/22
**25 [1]** 26/1
**26.2 [1]** 42/21
**260 [2]** 66/9 66/17
**262 [2]** 68/23 69/2
**263 [2]** 69/10 69/12
**27 [2]** 65/12 65/16
**274 [8]** 71/12 71/15 71/17 71/24 72/3 72/7
72/9 73/1
**278 [4]** 73/4 73/7 75/3 75/3
**28 [1]** 126/8
**28th or [1]** 112/7
**29 [2]** 34/13 86/10
**294 [4]** 75/15 75/17 75/19 75/22
**29th of [1]** 112/7
**2nd [4]** 6/2 6/3 6/7 6/13

**3**

**30 [4]** 7/17 15/8 23/15 64/23
**30th [4]** 6/1 6/2 6/5 6/7
**312 [1]** 2/7
**338-3598 [1]** 2/12
**3598 [1]** 2/12
**37 [1]** 72/17

**4**

**401 [1]** 89/18
**403 [7]** 39/23 40/4 88/11 88/22 89/18 91/1
92/2
**411 [2]** 1/20 2/11
**43 [5]** 29/17 29/24 30/12 31/5 32/17
**44 [3]** 3/10 45/8 113/11
**481-4900 [1]** 2/17
**49 [1]** 3/10
**490 [1]** 27/14
**4900 [1]** 2/17
**4th [2]** 1/20 16/13

**5**

**543-0870 [1]** 1/21
**55 [1]** 3/10
**57 [1]** 3/11

**6**

**608 [1]** 85/4
**615 [2]** 23/12 26/5
**6683 [1]** 2/8
**679 [1]** 2/7
**690 [2]** 26/8 26/15

**7**

**705 [3]** 26/9 26/18 27/6
**706 [2]** 36/10 36/20
**707 [1]** 22/9
**714 [2]** 1/21 2/12
**717 [1]** 34/12
**753 [1]** 126/7
**78 [1]** 3/11

**7:46 [1]** 35/19

**8**

**8/18/21 [1]** 126/16
**8000 [1]** 2/11
**894-6683 [1]** 2/8
**895 [1]** 23/4
**8:00 [3]** 17/5 17/7 17/7
**8:02 [1]** 4/1
**8:57 [1]** 43/8

**9**

**90012 [1]** 2/8
**902 [4]** 8/22 9/9 9/17 15/7
**92672 [1]** 2/16
**92701 [1]** 1/20 2/11
**93 [1]** 3/11
**949 [1]** 2/17
**96 [1]** 3/11
**98 [1]** 3/12
**9:00 [1]** 21/17
**9:13 [1]** 43/9

**A**

**a.m [7]** 4/1 21/17 43/8 43/9 86/22 86/23
125/21
**ability [1]** 12/25
**able [8]** 11/3 11/8 12/19 23/18 34/8 39/23
51/18 122/23
**about [93]** 4/17 6/11 6/18 9/7 10/21 10/25
11/1 11/6 16/23 19/15 19/21 20/4 20/10 23/18
24/2 27/14 28/23 31/17 32/18 37/23 38/1
38/13 44/24 45/4 45/5 45/12 47/23 48/5 48/15
48/22 49/1 51/9 51/13 51/15 51/15 51/17 52/4
52/25 53/18 54/5 54/10 55/19 56/1 61/12
61/19 63/1 63/20 64/17 64/19 65/8 65/9 65/9
65/12 68/5 71/25 72/17 73/17 76/8 78/15
79/13 81/23 89/10 93/18 93/20 94/4 94/12
94/14 95/9 95/14 97/5 99/5 104/3 104/10
104/15 105/13 107/6 109/9 109/21 111/24
113/1 113/7 113/8 113/15 116/12 116/20
117/5 117/24 118/14 118/18 118/22 120/10
124/12 125/11
**above [1]** 126/10
**above-entitled [1]** 126/10
**abruptly [1]** 107/12
**Absolutely [3]** 47/5 47/18 48/19
**academy [2]** 58/23 58/25
**accept [4]** 7/5 18/25 19/4 20/15
**accepted [1]** 20/18
**accepting [1]** 21/8
**access [5]** 32/2 33/17 33/25 58/21 60/16
**accompanied [1]** 101/16
**according [11]** 45/12 45/21 107/9 107/13
107/21 108/18 113/15 113/24 117/20 120/17
120/25
**accordingly [1]** 31/13
**accounting [2]** 93/16 93/20
**accurate [8]** 23/25 68/14 111/2 111/13
123/15 123/18 125/6 125/12
**accusation [1]** 121/18
**accuse [3]** 47/11 47/16 115/24
**accused [5]** 46/21 47/1 115/20 125/1 125/3
**acquire [3]** 59/6 75/10 76/24
**acquired [7]** 70/3 70/11 70/22 71/2 73/7
75/22 76/23
**acquiring [3]** 58/16 58/18 58/23
**across [3]** 11/5 102/7 106/8
**Act [1]** 26/20
**action [4]** 80/19 96/1 96/5 99/14
**active [1]** 87/24
**actual [2]** 23/16 63/5
**actually [10]** 7/23 9/3 16/7 16/13 64/13 82/7
90/1 111/8 121/25 122/1
**add [4]** 6/15 16/22 21/7 61/20
**add-evidence [1]** 61/20
**addition [2]** 5/2 42/4
**additional [5]** 27/5 76/20 76/25 77/11 86/5
**address [3]** 17/23 38/20 86/20

**MR. AVENATTI: [136]**
**MR. SAGEL: [28]** 4/5 9/15 9/17 16/5 16/21
25/1 25/7 34/16 35/3 35/7 36/2 36/21 38/19
43/13 85/22 85/25 100/24 102/9 108/5 110/2
110/7 111/8 114/7 116/5 118/10 118/15 123/2
124/21
**MR. WYMAN: [52]** 38/20 38/22 39/1 41/1
41/17 41/20 42/16 47/3 50/2 50/7 50/9 50/23
51/23 52/12 52/14 56/11 56/15 58/11 59/14
67/17 71/19 73/22 74/10 76/6 77/15 78/24
79/15 80/7 83/11 83/17 84/2 84/22 85/4 87/19
88/11 88/17 88/22 89/18 90/12 91/1 91/20 92/2
93/5 93/24 96/8 96/14 96/21 97/6 97/14 97/19
97/22 100/10
**MS. MARINO: [8]** 17/17 17/25 20/13 21/12
21/20 21/22 22/1 22/6
**MS. SAGER: [8]** 4/15 4/20 5/22 6/2 6/6 6/9
13/6 15/18
**THE CLERK: [11]** 4/3 43/11 44/3 44/8 56/22
56/25 57/2 77/23 78/2 98/3 98/7
**THE COURT: [188]**
**THE WITNESS: [34]** 44/6 47/5 53/25 54/19
55/5 56/17 56/24 57/1 58/13 59/16 67/19
73/24 74/21 76/8 77/25 79/1 80/18 83/19 84/25
89/20 91/3 93/8 95/25 96/16 97/16 98/5
100/13 101/1 102/11 108/7 110/9 114/9 116/7
123/4

**$**

**$1.6 [2]** 117/21 120/21
**.6 million [2]** 117/21 120/21

**'**

**'We [1]** 120/19

**/**

**/s [1]** 126/16

**0**

**0870 [1]** 1/21

**1**

**1,000 [1]** 61/8
**1-1053 [1]** 1/20
**1.6 million [4]** 105/15 109/8 118/5 119/5
**10 [1]** 77/3
**10,000 [1]** 77/4
**1053 [1]** 1/20
**1059 [2]** 119/16 120/13
**1061 [1]** 122/4
**107 [1]** 2/16
**10:33 [1]** 86/22
**10:53 [1]** 86/23
**11 [1]** 9/17
**1100 [1]** 2/7
**118 [3]** 69/20 69/22 70/3
**119 [2]** 70/9 70/11
**11:51 [1]** 34/13
**11:59 [1]** 125/21
**12 [1]** 76/8
**120 [4]** 70/14 70/14 70/21 70/22
**1206-1219 [1]** 23/4
**1219 [1]** 23/4
**124 [2]** 69/15 69/17
**1289-1292 [1]** 15/3
**1292 [1]** 15/3
**14th [2]** 45/13 113/16
**15 [4]** 79/13 79/18 79/24 113/6
**15th [1]** 45/3 45/5 113/8
**16 [2]** 42/11 42/13
**160 [2]** 70/25 71/2
**162 [3]** 71/7 71/7 71/10
**17 [4]** 4/1 4/24 13/15 35/18
**176 [2]** 69/5 69/7
**18 [4]** 1/17 26/15 120/12 126/14
**19 [1]** 123/22
**1993 [1]** 15/3
**19th [1]** 119/1

# A

**addressed** [2] 36/7 123/7
**addressing** [4] 26/21 27/2 27/5 35/12
**adequate** [1] 30/21
**administrative** [1] 90/24
**admissible** [4] 19/19 19/24 21/3 41/15
**admission** [1] 8/13
**admitted** [6] 11/17 42/11 98/15 98/17 98/19 98/20
**admonition** [2] 85/7 125/16
**advance** [1] 9/20
**Adverse** [1] 74/12
**advised** [2] 7/10 125/10
**advisory** [2] 2/15 4/9 7/10 35/22
**advocacy** [3] 28/20 28/25 29/2
**after** [16] 18/25 30/20 45/20 45/24 48/9 69/24 91/23 103/18 107/9 107/21 108/2 113/23 114/6 114/13 114/17 116/24
**afternoon** [3] 17/8 27/21 85/17
**again** [7] 12/17 14/11 14/17 32/17 38/17 76/1 111/10
**against** [2] 82/16 109/25
**Agent** [2] 43/15 65/17
**agents** [13] 38/7 45/2 46/5 46/8 46/9 46/12 46/15 93/15 113/5 115/8 115/11 115/12 115/14
**ago** [8] 37/23 37/24 42/1 54/1 65/12 67/11 84/23 111/24
**agree** [1] 65/3
**agreed** [5] 7/5 11/23 18/24 19/4 85/21
**agreement** [1] 124/11
**agreement.'** [1] 120/22
**Ahmed** [1] 54/14
**ALEXANDER** [3] 2/5 4/6 43/14
**Alexis** [2] 22/8 95/5
**all** [30] 6/24 14/16 15/17 16/16 24/5 25/13 25/17 34/24 35/6 36/24 46/16 61/13 61/22 61/24 61/25 62/1 64/18 66/7 67/14 68/16 77/20 79/11 86/7 86/12 86/12 90/1 112/6 114/9 115/15 124/7
**alleged** [2] 10/21 75/4
**allow** [6] 9/9 32/2 32/3 33/1 60/20 86/7
**allows** [2] 9/18 68/9
**alluded** [1] 14/21
**Almost** [1] 99/6
**alone** [2] 5/5 29/20
**already** [2] 9/21 23/20
**also** [28] 15/13 16/14 16/22 16/25 28/7 36/14 39/3 39/8 41/8 41/15 42/12 45/3 46/15 51/23 52/23 53/12 55/11 67/24 68/10 68/13 82/25 87/12 92/15 92/16 107/21 109/24 113/6 115/14
**alteration** [1] 68/10
**altered** [1] 72/19
**alternative** [5] 7/16 7/22 15/4 15/9 15/11
**alternatives** [1] 5/11
**although** [1] 28/8
**am** [11] 8/15 11/19 57/12 59/8 59/13 59/20 59/24 71/23 80/12 80/14 112/21
**Amendment** [1] 29/17
**Amenta** [1] 26/9
**Amenta's** [2] 26/19 27/2
**AMERICA** [3] 1/9 4/4 43/12
**among** [3] 4/24 28/19 33/11
**amount** [5] 28/16 61/9 64/9 64/10 99/13
**ample** [1] 5/18
**Ana** [4] 1/16 1/20 2/11 4/1
**analysis** [1] 66/6
**analyst** [1] 57/15
**analyst's** [1] 67/20
**analyze** [2] 59/23 60/12
**analyzed** [2] 73/21 74/6
**Angeles** [2] 2/8 10/11 10/12 52/18
**another** [8] 41/12 42/6 69/2 69/12 77/19 91/6 99/14 102/2
**answer** [5] 5/16 14/17 17/19 34/16 115/2
**answered** [11] 41/7 71/19 84/22 87/19 91/8 93/5 96/22 96/23 100/11 114/7 124/22
**any** [107] 5/16 7/11 8/2 9/15 10/7 10/17 12/8

12/25 13/11 14/17 14/23 17/9 17/22 18/14 19/4 19/5 19/14 20/18 23/12 24/3 24/24 29/20 29/21 31/5 32/15 33/12 33/16 33/18 34/3 34/3 36/22 40/3 40/13 41/10 42/18 48/25 49/8 51/4 55/5 55/10 56/6 62/22 62/25 63/15 64/7 65/18 65/22 67/25 70/12 73/4 73/12 73/19 74/5 74/5 74/6 75/6 75/19 75/23 77/1 79/19 82/14 83/9 83/15 85/8 85/10 86/1 86/18 87/14 87/14 87/17 88/7 92/13 93/14 93/15 93/13 93/19 96/12 97/1 97/12 100/3 100/17 100/18 101/10 101/13 101/13 101/15 102/18 102/19 103/15 106/21 106/22 107/17 107/18 110/13 114/10 116/17 117/11 117/13 118/3 120/9 122/25 123/14 125/11 125/17
**anybody** [3] 12/18 32/4 73/21
**anyone** [11] 13/7 62/12 62/22 63/1 63/5 65/17 85/8 106/23 117/15 118/4 125/17
**anything** [24] 20/22 23/3 25/2 25/6 25/8 25/11 29/8 32/16 34/4 36/1 38/18 51/20 69/22 71/24 72/25 88/6 94/13 94/18 103/15 107/6 108/13 109/20 110/14 116/3
**anywhere** [2] 7/12 73/12
**apart** [1] 30/13
**apologize** [1] 6/6 50/9 50/20 52/14
**apparent** [1] 18/14
**apparently** [1] 13/16
**appear** [7] 15/6 15/10 42/5 71/4 75/21 122/9 122/22
**appearance** [1] 14/9
**appearances** [2] 2/1 98/22
**appears** [3] 64/20 69/23 70/6
**Apple** [1] 66/21
**applicability** [1] 14/9
**appreciate** [4] 4/15 12/7 22/1
**appreciated** [1] 18/3
**apprised** [1] 33/13
**approach** [1] 87/1
**appropriate** [9] 7/7 7/9 21/24 28/25 29/5 32/1 32/5 41/13 41/18
**appropriately** [1] 28/12
**appropriateness** [1] 20/20
**approximately** [2] 78/14 99/21
**April** [6] 6/1 6/2 6/6 7/17 15/8 65/9
**April 30** [2] 7/17 15/8
**April 30th** [2] 6/1 6/2
**arbitration** [3] 99/13 109/25 110/6
**ARDEN** [43] 3/12 45/14 45/16 45/18 45/21 45/24 48/10 54/15 98/1 98/2 98/8 98/11 103/9 103/23 105/24 106/7 106/21 107/17 108/2 108/13 108/19 109/19 110/5 111/19 113/2 113/17 113/19 113/21 113/24 114/17 114/22 115/2 116/2 116/25 117/8 117/19 118/3 118/21 119/2 120/14 121/17 122/6 124/25
**Arden's** [2] 106/4 107/10
**are** [49] 11/22 12/8 15/4 15/24 18/14 19/15 21/1 23/25 24/18 25/14 25/15 26/4 28/25 31/7 32/15 32/20 33/2 40/11 41/24 42/5 42/12 42/13 42/16 44/14 47/7 50/21 51/9 52/4 54/25 55/20 57/10 62/15 62/15 64/15 71/17 74/8 74/8 75/18 80/12 85/18 89/7 89/9 102/17 106/15 111/12 112/18 112/18 119/7 123/21
**area** [4] 52/18 59/10 59/17 67/7
**argue** [1] 11/20 37/1
**arguing** [1] 92/13
**argument** [4] 12/7 21/24 29/1 86/11
**argumentative** [1] 118/10 124/22
**arguments** [1] 86/13
**around** [6] 13/14 52/25 53/7 103/21 112/7 112/8
**arrangements** [1] 21/10
**Arts** [1] 58/8
**as** [105] 4/9 4/10 4/17 4/17 5/19 7/9 8/21 8/23 10/5 10/9 10/19 11/4 12/11 12/20 12/21 14/4 14/15 19/2 20/18 20/18 20/21 23/10 24/4 25/19 26/22 28/6 28/9 29/20 31/20 32/6 32/25 33/25 35/19 35/19 36/15 39/7 41/7 41/13 46/1 46/1 46/12 50/20 55/17 51/11 54/13 54/17 55/13 56/6 58/21 58/22 58/22 60/1 60/10 63/6 63/9 63/15 65/6 68/6 68/9 68/10

68/11 69/25 76/1 76/12 76/23 76/25 76/25 77/4 78/5 79/14 80/14 83/6 83/12 83/14 83/24 84/1 84/2 87/7 93/19 98/13 101/13 103/5 108/9 108/23 110/19 110/25 111/1 111/1 111/2 111/11 111/12 111/12 111/13 111/25 112/3 112/10 112/15 114/19 114/19 117/24 120/1 120/1 123/17
**ask** [25] 17/2 18/5 39/16 40/11 40/12 40/13 40/13 40/17 41/17 44/24 51/6 51/8 51/15 62/12 62/22 63/5 70/14 70/15 86/7 94/13 104/3 104/15 120/1 122/7 124/12
**asked** [34] 6/9 8/1 10/25 24/10 25/22 29/6 31/24 34/3 38/3 45/14 47/3 55/19 56/1 62/18 63/12 65/18 65/22 71/19 84/22 87/19 91/8 93/5 94/4 94/12 95/13 96/21 96/23 100/10 104/9 109/20 113/17 114/7 118/18 124/21
**asking** [5] 13/9 14/10 50/19 51/17 119/3
**asks** [2] 34/7 34/8
**assist** [2] 13/20 100/8
**assistant** [7] 2/4 2/6 2/10 45/2 90/24 93/14 113/5
**assisted** [1] 20/25
**associate** [2] 20/24 22/2
**assume** [1] 5/20
**assuming** [4] 8/15 64/17 85/17 86/5
**Atlanta** [1] 14/5
**attached** [2] 5/19 8/8
**attachment** [1] 35/21
**attachments** [1] 22/10
**attempt** [1] 106/23
**attempted** [2] 20/16 21/10 50/10
**attempting** [1] 65/5
**attend** [2] 58/25 102/19
**attended** [1] 59/1
**attention** [1] 70/21
**attest** [1] 10/13
**attorney** [37] 2/3 2/4 2/6 2/10 39/6 39/8 39/14 40/5 40/11 40/12 40/13 40/23 41/3 41/8 41/14 41/15 42/6 44/14 46/1 47/21 49/18 49/21 50/5 52/1 52/17 53/4 84/9 87/22 87/23 87/24 98/13 98/15 104/25 115/7 112/7 114/19 116/10
**Attorney's** [2] 52/21 55/20
**attorneys** [11] 45/3 82/21 83/2 83/20 83/24 84/6 89/13 93/15 96/12 112/10 115/9
**August** [6] 1/17 4/1 25/21 26/1 35/18 126/14
**August 17** [1] 35/18
**August 3** [1] 25/21
**available** [4] 14/7 31/18 45/17 113/20
**availed** [1] 24/20
**AVENATTI** [56] 1/11 2/14 4/4 4/9 5/3 5/10 5/17 6/12 6/22 13/6 14/1 14/5 15/5 16/15 18/1 21/4 21/15 22/7 22/13 25/11 26/10 27/16 34/12 35/20 40/24 41/25 43/12 43/18 43/23 44/9 50/6 50/22 53/12 55/16 56/18 57/3 59/24 60/2 62/13 62/19 63/2 78/3 78/12 78/13 85/15 85/25 86/25 88/18 90/13 98/8 98/13 98/17 103/24 104/18 105/23 106/22
**Avenatti's** [3] 5/5 14/8 26/8
**Avenida** [1] 2/16
**avoid** [9] 22/25 107/22 108/3 108/7 108/13 108/15 108/19 108/23 114/10
**avoided** [1] 108/25
**avoiding** [2] 109/3 109/4
**award** [1] 92/13
**aware** [12] 17/6 21/13 23/20 24/14 35/16 53/20 54/25 55/5 80/14 90/20 100/13 102/18
**away** [3] 25/25 64/20 64/21

# B

**Bachelor** [1] 58/8
**Bachelor's** [1] 58/9
**back** [12] 28/11 37/12 49/2 49/4 65/7 65/18 74/2 74/17 75/3 112/22 115/5 122/1
**background** [1] 102/5
**bank** [1] 8/23
**Barela** [105] 39/2 39/4 40/7 40/14 41/4 41/6 41/6 41/25 42/2 42/6 42/7 44/16 44/18 44/21 44/23 46/12 47/1 47/16 48/3 48/5 48/18 49/9 50/11 50/14 50/16 50/18 50/25 51/9 51/13

**B**

Barela... **[76]** 51/18 51/24 52/1 52/7 53/1 53/3
53/10 53/11 53/14 53/16 53/21 54/14 54/17
55/1 55/11 55/13 56/2 95/6 99/8 99/11 99/21
99/24 100/4 100/7 100/19 100/23 101/14
101/17 101/21 102/6 102/20 103/2 103/16
103/19 103/24 104/4 106/21 106/24 107/1
107/2 107/4 107/7 107/18 108/3 108/8 108/13
108/15 108/23 109/1 109/3 109/22 109/24
110/14 110/25 111/11 112/8 114/13 114/25
116/3 116/17 116/19 117/9 117/14 117/16
118/4 118/6 118/7 118/18 120/18 120/19
120/23 121/12 124/18 125/3 125/10
**Barela's [10]** 54/5 56/5 99/16 100/8 101/6
101/11 103/11 105/4 112/22 114/4
**barely [1]** 5/3
**based [10]** 5/4 14/6 60/6 62/4 72/9 72/11 75/3
75/22 77/7 97/4
**basically [5]** 10/5 10/17 24/4 80/24 124/13
**basis [3]** 19/5 33/17 103/20
**be [102]** 4/25 7/1 7/15 7/21 11/3 11/8 12/4
12/16 12/19 13/3 15/10 15/15 17/3 18/4 18/10
18/17 18/18 18/20 19/4 20/22 20/24 21/12 21/22
22/2 22/12 22/21 23/14 23/17 24/2 24/6 24/23
24/25 26/5 27/16 28/14 28/19 29/1 29/7 30/10
32/7 33/2 33/5 34/3 34/5 34/8 35/4 35/4 35/15
36/12 36/17 36/20 38/5 39/5 39/23 40/4 40/8
40/20 42/5 42/10 43/6 51/14 51/18 51/21
52/10 55/6 56/13 56/16 61/3 63/25 64/24 66/9
66/10 67/12 67/20 69/23 70/1 70/6 71/4 75/21
76/23 83/24 85/22 86/15 86/18 86/21 90/24
91/11 91/19 91/24 91/25 92/7 92/10 92/12
92/22 97/4 97/20 97/23 101/6 103/7 108/11
110/21 112/8 122/23
**because [38]** 4/24 6/15 7/10 10/5 10/20 11/5
12/19 13/11 22/18 23/7 23/19 30/23 32/20
33/11 34/10 37/18 39/4 41/4 42/11 42/23
47/11 47/17 47/22 50/12 51/9 52/8 55/9 63/12
63/12 75/10 83/9 107/13 109/7 109/24 112/21
115/24 116/11 116/18
**been [42]** 6/13 13/22 15/3 16/7 19/10 24/11
24/13 24/14 24/16 25/22 28/10 28/24 29/3
30/5 30/14 30/17 30/24 30/25 31/5 33/13
33/13 35/13 36/13 38/5 42/9 49/18 53/6 53/21
57/16 59/3 66/24 67/9 80/22 82/24 82/25
84/13 85/14 93/13 105/15 107/7 109/8 118/5
**before [40]** 10/19 10/24 11/10 11/17 12/22
13/2 13/3 14/22 18/6 19/11 20/5 27/17 31/21
33/25 35/4 38/11 38/15 39/10 39/16 44/23
55/23 56/5 58/2 58/3 64/4 65/11 67/25 70/14 70/19
78/8 85/16 92/24 97/10 108/24 110/15 111/19
114/5 119/12 120/11 122/17 123/12
**began [1]** 99/20
**begin [1]** 4/13
**behalf [3]** 4/6 5/6 43/14
**behind [2]** 12/2 66/10
**being [12]** 5/2 5/10 17/6 33/19 41/3 42/2 42/4
50/17 56/6 90/23 93/2 122/20
**belabor [1]** 16/6
**believe [53]** 17/18 19/20 28/7 29/16 29/23
31/11 32/6 32/17 33/7 36/6 36/14 36/4 36/8
36/9 37/19 38/11 41/18 41/22 42/9 42/10 46/3
46/10 51/24 67/4 67/5 68/2 72/7 72/8 94/20
99/3 99/13 102/6 102/25 103/1 103/17 104/19
104/22 105/14 106/20 107/16 109/10 110/9
110/17 111/18 111/23 114/21 115/13 116/22
118/24 121/19 121/20 122/25 123/5
**believed [2]** 6/12 53/6
**believes [1]** 39/3
**benefit [3]** 8/22 66/12 88/14
**benefits [1]** 8/23
**beside [1]** 13/19
**best [11]** 64/2 70/4 70/22 76/19 87/17 107/2
114/4 114/14 122/18 123/15 123/18
**better [2]** 19/1 74/3
**between [5]** 41/24 42/6 54/14 57/19 75/18
**Beyond [5]** 12/10 15/14 96/14 96/21 97/6
97/14
**bias [3]** 39/9 41/9 41/10

biased **[1]** 23/25
big **[1]** 96/5
bigger **[1]** 37/3
bill **[1]** 91/24
billed **[2]** 92/17 92/22
billing **[3]** 90/3 90/7 90/11
bills **[1]** 92/24
bit **[5]** 25/24 64/24 65/2 88/25 110/22
blanket **[1]** 26/2
Bledsoe **[11]** 118/19 118/21 119/2 122/1
122/19 123/7 124/13 124/19 125/1 125/3
125/6
**Bledsoe's [2]** 123/9 125/4
blow **[4]** 71/12 72/14 73/4 119/17
book **[1]** 6/14
book-end **[1]** 6/14
both **[5]** 62/4 7/6 26/19 42/11 90/4
bottom **[2]** 72/11 122/13
box **[1]** 24/4
Brady **[1]** 30/25
BRANDON **[1]** 2/4
break **[5]** 31/1 35/24 85/6 85/19 125/14
Bredahl **[3]** 31/25 35/20 85/13
BRETT **[3]** 2/9 4/5 43/13
brief **[10]** 21/15 27/5 27/12 29/10 30/1 31/4
31/5 32/23 33/22 99/13
briefing **[1]** 29/9
briefly **[6]** 18/20 20/13 27/1 36/2 38/20 79/8
bring **[1]** 13/1
broadcast **[2]** 5/21 6/16 6/19
Brock **[12]** 47/23 48/6 102/24 103/16 103/18
116/12 116/20 117/20 119/4 120/20 121/12
124/10
brought **[2]** 36/13 85/15
Building **[1]** 2/10
burden **[1]** 14/2
burdensome **[4]** 4/25 12/17
bureau **[1]** 10/11

**C**

C-a-r-l-o-s **[1]** 77/25
C-o-l-o-r-a-d-o **[1]** 78/1
C-u-l-i-g **[1]** 103/1
CA **[4]** 1/20 2/8 2/11 2/16
calculation **[1]** 92/11
CALIFORNIA **[10]** 1/5 1/6 4/1 13/10 16/14
44/14 79/14 79/20 98/17 98/19
call **[42]** 10/12 20/12 39/2 40/15 43/23 45/4
46/12 46/21 46/25 47/10 48/22 48/23 49/1
54/10 54/13 54/25 55/6 55/9 55/10 55/12 56/2
56/6 97/24 109/12 111/25 112/9 112/15 113/7
114/24 115/4 115/20 115/23 116/2 116/17
117/19 118/3 118/13 121/6 121/9 121/11
121/12 121/14
called **[13]** 10/24 10/25 44/23 45/13 46/17
60/18 62/23 63/3 63/7 90/20 93/2 113/16
115/16
calling **[2]** 45/25 114/18
calls **[12]** 44/1 47/23 53/23 55/5 56/19 77/21
97/6 98/1 103/4 111/1 116/11 116/19
came **[4]** 30/4 46/1 104/17 114/19
camera **[13]** 27/12 27/15 27/15 28/13 28/18
28/21 28/24 29/3 29/11 29/19 30/10 31/6 31/7
can **[51]** 4/17 6/19 7/25 10/12 10/13 11/10
13/1 18/15 18/17 19/16 20/2 20/13 21/15
21/16 21/18 21/25 24/1 25/1 25/3 25/7 29/2
30/18 31/8 35/1 38/9 49/2 66/2 66/14 66/22
67/14 67/20 67/22 67/23 68/23 71/10 71/12
72/3 76/23 79/6 82/14 88/23 104/5 110/22
114/9 119/9 119/10 119/18 119/17 119/20
120/5 122/4
can't **[1]** 120/5
career **[1]** 59/11
CARLOS **[4]** 3/11 77/21 77/22 77/25
Carrey **[1]** 35/3
Carter **[10]** 17/1 17/3 18/15 18/25 19/8 20/4
20/8 20/15 20/21 21/12
case **[64]** 5/4 5/15 6/10 10/8 11/24 12/19
19/16 19/25 20/9 20/12 20/23 21/3 23/13

25/23 39/17 48/22 57/8 58/22 59/22 73/15
23/3 74/4 75/1 75/19 79/6 79/13 79/21 80/10
80/17 80/18 80/23 80/23 81/2 82/2 82/5 82/7
82/12 82/15 85/3 85/8 85/9 92/14 93/2 94/8
94/18 94/20 94/22 94/23 94/25 95/1 95/3 96/3
96/3 96/13 96/20 99/18 100/9 100/19 100/23
104/21 108/8 111/21 125/17 125/18
cases **[33]** 78/17 78/21 78/23 79/1 79/4 79/6
79/8 79/13 79/19 79/23 81/4 81/7 81/12 81/13
81/15 81/19 81/21 81/22 82/14 83/24 84/2
84/7 94/4 94/12 94/17 95/3 95/5 95/7 95/8
95/21 95/25 96/1 97/2
caveat **[1]** 34/17
CDs **[3]** 8/5 8/7 8/9
Cefali **[2]** 4/10 43/18
cell **[23]** 16/8 16/9 59/8 59/9 59/9 59/12 66/24
66/25 67/1 67/2 67/10 67/19 68/20 69/17
73/14 73/17 73/19 74/5 74/7 74/22 75/19 77/4
77/4
Cellebrite **[24]** 67/4 67/15 67/21 67/22 67/24
69/3 69/8 69/13 69/18 70/12 70/15 71/5 71/7
71/15 71/17 71/25 72/4 73/10 75/23 76/12
76/24 77/3 77/8 77/12
cemetery **[4]** 79/9 80/17 80/18 94/25
center **[3]** 19/15 58/22 81/13
centers **[2]** 79/14 79/20
CENTRAL **[1]** 1/5
certain **[7]** 47/7 62/5 68/12 76/22 98/23 98/24
117/24
certainly **[7]** 20/22 33/4 37/4 48/4 64/21 71/5
85/18
CERTIFICATE **[1]** 126/5
certification **[1]** 9/18
CERTIFIED **[1]** 1/9
certify **[1]** 126/7
cetera **[1]** 20/11
challenge **[2]** 38/12 38/16
chance **[2]** 112/5 119/24
change **[2]** 48/25 68/12
charged **[4]** 53/6 53/21 101/11 101/14
charges **[4]** 40/3 40/3 53/18 54/5
charts **[1]** 19/10
checks **[1]** 62/5
chief **[2]** 2/5 20/12
child **[1]** 15/16
choice **[1]** 5/10
choose **[1]** 61/20
chooses **[1]** 15/10
Circuit **[2]** 15/3 23/4
cities **[1]** 16/12
City **[6]** 5/20 5/21 5/25 7/17 7/24 8/3
civil **[2]** 85/15 99/14
CJA **[2]** 7/11 13/13
claim **[13]** 48/23 82/15 101/6 104/11 106/10
106/12 109/7 109/19 109/22 109/24 110/5
110/11 121/8
claimed **[4]** 104/16 105/8 106/1 121/5
claims **[1]** 109/11
clarification **[1]** 16/5
class **[4]** 67/10 80/19 96/1 96/5
class-action **[1]** 96/1
classes **[2]** 59/1 59/5
clear **[6]** 7/2 26/2 30/16 106/15 106/17 124/18
clearly **[6]** 15/4 15/14 17/14 17/21 20/17
52/13
Clemente **[1]** 2/16
clerk **[2]** 30/7 34/8
Clerk's **[3]** 31/17 31/22 32/3
client **[11]** 81/1 81/23 82/16 82/17 83/21
91/25 92/22 94/9 94/10 94/13 124/19
clients **[24]** 79/22 79/25 80/2 80/9 80/17
80/20 81/7 81/20 81/24 82/16 82/22 82/3
83/10 83/16 83/20 84/13 84/13 84/17 88/20
89/16 92/17 92/18 92/25 94/5
close **[1]** 44/5
closer **[1]** 110/22
closing **[1]** 11/21
CNN **[14]** 5/24 6/18 8/7 8/12 8/20 10/9 10/18
11/9 12/25 13/20 14/5 14/11 15/5 15/8

**C**

**CNN's** [1] 5/14
**Code** [1] 126/8
**Cody** [1] 22/3
**college** [1] 58/4
**COLORADO** [13] 3/11 21/7 77/21 77/22 77/25 78/6 87/6 89/3 90/20 92/5 94/2 96/11 101/17
**column** [1] 68/2
**come** [7] 9/18 9/20 13/10 30/7 55/23 64/21 101/16
**comes** [1] 43/7
**comfort** [1] 9/24
**commence** [1] 85/16
**comment** [1] 20/4
**comments** [1] 25/16
**communicate** [10] 48/5 80/2 81/1 81/24 83/21 89/16 94/9 94/13 100/18 103/3
**communicated** [4] 88/20 94/5 100/20 111/21
**communicating** [7] 19/14 20/10 81/6 94/10 94/14 101/8 103/10
**communication** [2] 82/11 82/17
**communications** [12] 19/21 21/1 31/6 42/6 51/20 63/1 80/5 82/22 83/3 83/4 84/16 103/12
**company** [2] 67/22 87/12
**competently** [1] 18/15
**completely** [3] 29/21 38/5 49/10
**comply** [1] 42/20
**compromises** [1] 57/23
**computer** [14] 57/24 58/10 59/23 60/25 61/3 67/21 90/24 91/7 91/12 91/20 91/24 92/6 96/19 97/11
**computers** [1] 59/10 61/9
**conceal** [2] 107/7 110/13
**concern** [2] 28/23 34/1
**concerned** [2] 111/1 111/12
**concerning** [4] 4/18 35/10 51/19 85/14
**concerns** [2] 28/22 42/13
**concluded** [2] 27/14 32/1
**conditionally** [2] 18/8 18/12
**conditions** [1] 15/2
**conduct** [2] 22/19 24/7
**conducted** [2] 27/12 28/13
**conducting** [2] 23/22 85/22
**conference** [12] 47/22 49/24 52/15 106/5 107/11 109/12 113/1 114/24 115/4 116/1 116/19 126/12
**confirm** [1] 119/3 124/15
**conflict** [3] 47/21 116/10 116/18
**conformance** [1] 126/11
**congratulated** [1] 105/9
**connected** [1] 67/20
**connection** [31] 19/8 19/13 19/13 19/14 50/17 59/22 60/1 71/7 71/10 72/9 76/15 79/22 80/18 81/20 82/12 85/2 89/22 96/12 99/1 100/4 100/7 100/19 100/23 101/6 101/11 101/14 101/17 102/20 103/11 110/6 111/21
**consider** [2] 33/4 86/6
**consistently** [1] 11/13
**constitutional** [7] 5/9 6/17 29/18 29/24 30/11 33/17 33/20
**consulted** [1] 51/19
**contact** [8] 51/25 52/5 53/11 108/20 108/23 108/25 109/3 109/5
**contacted** [7] 19/3 20/19 52/25 65/21 65/25 66/5 112/6
**content** [1] 30/21
**contingency** [2] 90/16 97/2
**continue** [2] 84/12 84/16
**contrary** [2] 88/20 124/9
**control** [1] 36/5
**controlled** [1] 40/8
**conversation** [3] 7/4 13/7 106/3
**conversed** [2] 51/9 51/15
**convicted** [1] 50/12
**copied** [3] 35/9 53/12 53/16
**copies** [1] 31/25
**copy** [10] 27/21 32/4 32/4 33/1 34/8 35/12 68/14 73/1 120/4 122/21
**cordial** [1] 104/1

**corner** [1] 72/15
**correct** [100] 16/20 16/22 16/24 17/2 36/11 38/9 45/14 45/15 45/19 45/23 46/23 48/1 48/12 49/11 49/22 52/12 52/18 52/22 53/1 53/2 53/8 53/10 53/15 53/17 53/19 54/3 54/4 54/6 54/9 54/11 57/8 57/11 59/6 59/13 59/20 66/6 67/9 68/18 68/22 69/8 69/13 69/18 70/17 75/1 76/17 77/13 78/9 78/16 78/21 79/14 79/25 80/1 80/9 80/13 80/16 80/25 82/10 84/10 88/1 88/2 89/12 90/19 91/8 91/22 93/8 94/16 94/24 95/2 95/4 95/9 98/14 103/25 105/11 105/25 106/6 106/11 106/13 106/14 107/24 108/21 109/16 113/17 113/18 113/22 114/1 115/22 116/15 117/2 117/22 118/22 119/5 119/6 119/25 120/16 121/1 121/2 122/14 123/7 126/9
**corrected** [1] 26/14
**correction** [1] 26/23
**correctly** [9] 61/15 106/19 111/6 111/9 111/17 114/2 119/14 120/22 121/23
**cost** [5] 76/18 76/19 77/1 77/4 77/10
**could** [25] 7/23 8/3 13/18 21/4 22/3 23/14 35/3 42/17 47/11 47/16 64/6 64/23 66/11 72/14 73/4 73/24 74/1 76/25 83/9 87/1 92/22 98/23 107/22 108/3 115/24
**couldn't** [1] 13/18
**counsel** [17] 2/1 2/15 4/9 7/10 8/20 10/9 11/22 18/24 19/3 20/4 20/14 35/8 35/10 35/22 43/15 51/7 51/18
**country** [3] 5/1 11/5 14/3
**counts** [4] 86/11 86/12 86/14 86/19
**couple** [4] 22/15 84/23 112/17 122/7
**course** [4] 25/5 34/4 59/11 62/25
**court** [48] 1/4 4/17 4/20 5/8 5/13 5/16 5/17 10/5 11/13 12/23 12/24 13/15 13/20 14/10 14/13 14/16 14/17 17/22 18/7 21/22 22/19 22/22 27/24 28/12 28/24 29/6 29/18 30/15 30/17 32/15 32/21 32/21 34/2 34/8 34/11 35/2 35/9 35/12 36/10 37/7 38/10 38/13 38/17 39/13 39/17 98/22 126/17
**Court's** [1] 33/21
**Courthouse** [1] 1/19 2/7
**courtroom** [3] 23/11 23/16 33/19
**courts** [1] 109/16
**cover** [2] 17/20 22/3
**creation** [1] 10/21
**credible** [1] 14/25
**Crime** [1] 58/22
**criminal** [31] 2/5 12/12 12/13 12/13 39/5 39/8 39/14 40/1 40/1 40/12 40/19 40/23 40/24 41/2 41/3 41/8 41/14 49/21 50/5 50/6 50/18 51/4 51/13 52/1 52/6 52/7 52/17 52/23 53/4 53/18 53/18 53/21 54/6 57/16
**criminally** [2] 53/21 54/6
**critical** [4] 12/20 12/21 26/13 30/10
**cross** [14] 3/4 3/9 5/1 14/3 19/9 22/23 23/5 23/18 24/1 24/7 39/14 49/14 50/11 93/25
**cross-examination** [7] 19/9 23/5 24/7 39/14 49/14 50/11 93/25
**cross-examine** [3] 22/23 23/18 24/1
**CSI** [1] 68/20
**Culig** [2] 103/1 103/10
**Cummings** [2] 4/10 43/18
**Cuniff** [1] 22/12
**Cuniff's** [3] 24/14 25/14 26/3
**currently** [2] 34/19 76/9
**custodial** [7] 5/23 8/12 8/19 10/10 13/18 14/4 15/21
**custodian** [3] 9/25 11/9 13/1
**Cyber** [1] 58/22

**D**

**D.A** [3] 41/6 50/13 53/21
**D.A.'s** [1] 42/2
**D.C** [2] 73/12 76/2
**damages** [5] 101/2 101/5 101/7 101/8 101/10
**data** [31] 16/9 36/6 37/3 37/3 58/18 58/24 59/6 60/4 60/5 60/6 60/16 61/5 61/7 61/9 62/22 63/2 63/2 63/6 63/16 63/18 63/25

**64/6 64/8** 65/19 66/7 66/25 68/11 68/13 68/17
**database** [1] 62/19
**date** [7] 42/15 119/23 120/7 120/10 120/17 122/16 126/14
**dated** [2] 42/16 123/21
**dates** [6] 6/10 6/14 10/14 14/9 16/13 118/23
**David** [1] 102/25
**day** [22] 1/12 6/11 6/13 21/9 35/1 35/2 35/3 36/12 64/24 83/25 83/25 84/1 84/7 84/7 84/8 84/8 102/12 102/17 102/18 122/4 122/1 122/17
**days** [6] 7/24 13/10 16/10 19/1 112/17 118/20
**deadlines** [1] 36/22
**deal** [4] 4/21 59/19 100/3 102/20
**dealing** [2] 26/9 102/23
**dealt** [1] 59/12
**DEAN** [2] 2/15 2/15
**declaration** [13] 5/23 8/12 8/16 9/2 9/5 9/10 9/25 13/25 14/21 14/24 15/7 15/13 15/22
**declare** [1] 27/11
**defamation** [1] 82/15
**defeated** [1] 23/1
**defendant** [35] 1/12 2/13 13/13 13/13 13/21 16/7 24/1 29/20 32/7 36/4 36/14 39/4 39/10 39/15 39/18 41/2 41/4 41/7 41/9 41/13 42/3 50/10 50/13 50/15 51/24 53/9 53/16 53/20 54/3 54/14 79/2 79/9 79/11 94/4 94/8 95/21
**defendant's** [6] 32/11 38/23 41/8 56/21 77/22 98/2
**defended** [1] 82/16
**defense** [23] 3/9 3/13 13/20 29/2 33/12 39/5 39/8 39/14 40/12 41/3 41/8 41/14 44/1 44/2 49/21 50/5 51/4 52/1 52/17 56/19 58/22 77/21 98/1
**defer** [1] 34/18
**deferring** [1] 34/22
**delayed** [1] 17/3
**deleted** [2] 67/25 68/2
**demanding** [1] 13/9
**demonstrably** [3] 31/2 31/2 37/9
**denied** [4] 22/19 22/23 24/11 26/6
**dental** [3] 79/13 79/20 81/13
**Denver** [2] 101/17 101/19
**deny** [3] 12/24 25/13 124/15
**denying** [1] 124/16
**department** [23] 57/10 57/16 57/21 57/25 59/11 67/24 70/3 70/11 70/16 71/2 71/9 73/7 73/21 74/7 74/22 74/25 75/23 76/3 76/18 76/19 77/5 77/7 77/10
**department's** [1] 57/24
**department-wide** [1] 57/25
**departments** [1] 58/1
**Depending** [1] 64/15
**describe** [1] 79/6
**designated** [1] 20/23
**designed** [2] 107/7 110/13
**desire** [1] 42/18
**despite** [1] 108/17
**details** [5] 99/14 107/14 107/18 110/25 111/11
**detects** [1] 57/23
**determination** [2] 18/6 86/6
**determine** [2] 23/13 62/5
**device** [6] 61/23 68/6 68/10 68/17 75/11 76/21
**devices** [4] 59/6 59/19 67/21 68/21
**did** [142]
**didn't** [14] 9/1 13/15 13/19 14/12 14/12 22/17 28/10 36/15 37/16 51/15 94/13 102/19 110/16 111/25
**Diego** [1] 53/5
**different** [3] 81/12 89/9 125/7
**digital** [1] 57/15
**dire** [1] 85/23
**direct** [22] 3/4 3/9 39/21 40/9 41/16 42/25 44/10 46/2 50/9 51/11 51/16 51/21 51/22 54/10 57/4 78/4 94/17 94/21 95/13 98/9 111/3 111/14 114/20

**D**

**directed [3]** 4/22 27/16 30/8
**directing [2]** 31/17 70/21
**disclosed [3]** 30/14 30/24 42/10
**discovery [3]** 37/25 41/24 42/20
**discuss [2]** 85/8 125/16
**discussed [2]** 94/17 94/21
**discussing [1]** 106/9
**discussion [4]** 43/2 43/3 43/4 86/13
**disks [2]** 10/1 15/7
**dismiss [1]** 36/6
**dismissal [1]** 85/15
**dispute [2]** 97/12 120/9
**disputes [1]** 99/12
**district [1]** 1/4 1/5 53/4
**disturbing [1]** 30/9
**DIVISION [2]** 1/6 2/5
**do [126]** 6/17 7/14 7/21 7/25 8/15 8/20 11/20
11/25 12/3 12/4 13/15 15/24 15/25 16/2 16/18
18/18 18/18 24/10 24/19 24/19 26/15 26/16
28/16 30/8 30/8 30/23 36/21 36/22 39/15
42/21 44/16 45/1 45/5 45/7 55/6 55/21 56/2
57/19 57/22 60/1 61/1 61/5 62/25 63/9 63/15
64/3 64/18 66/17 68/4 72/7 72/8 73/21 78/23
79/4 79/18 81/4 81/6 82/2 84/20 84/25 85/10
85/10 87/11 87/22 88/6 88/15 89/4 89/25 90/4
93/14 93/20 94/18 94/22 94/25 95/8 95/14
96/13 96/16 96/20 97/1 97/2 97/12 98/23
98/24 99/10 99/16 99/20 99/24 100/21 100/22
101/4 101/5 101/7 101/8 101/10 101/12
101/13 101/24 102/14 102/23 103/9 103/15
103/18 103/21 104/12 104/14 104/18 108/2
108/13 109/2 111/19 112/23 113/3 113/4
113/8 113/10 117/11 117/15 118/9 118/13
120/9 122/1 122/3 122/25 125/10 125/18
**docket [8]** 22/7 22/9 26/8 26/15 26/18 30/5
34/12 36/10
**document [17]** 27/15 36/4 63/24 72/20 72/21
73/1 87/4 87/6 88/14 89/3 89/8 120/2 122/7
122/8 122/10 122/22 123/1
**documented [1]** 25/4
**documents [6]** 9/20 19/22 29/6 29/7 62/9
98/25
**dodge [1]** 20/16
**dodged [1]** 18/25
**dodging [1]** 20/17
**does [31]** 9/12 13/12 13/24 14/25 17/22 21/12
39/21 45/9 57/22 60/20 60/22 60/23 60/24
62/2 62/4 62/11 65/9 71/4 71/24 72/3 75/21
75/24 76/14 76/18 76/19 87/7 87/10 102/3
113/12 122/9 122/22
**doesn't [14]** 8/22 9/9 9/24 14/1 19/17 30/15
35/15 64/20 71/6 71/8 73/9 73/11 77/3 99/22
**doing [6]** 10/16 24/15 40/20 61/19 63/20
117/12
**domain [1]** 33/2
**don't [82]** 6/16 8/2 8/5 8/7 8/12 11/10 11/16
12/5 12/15 12/17 19/5 19/16 20/2 21/2 22/18
26/21 27/1 30/15 33/16 36/4 36/9 39/11 40/16
41/1 41/11 42/9 42/10 42/18 42/23 50/2 50/24
51/3 52/9 53/25 55/11 61/4 63/14 63/17 65/11
71/16 73/14 73/15 73/19 74/5 74/21 74/22
78/19 80/19 81/18 87/16 93/11 93/18 93/19
93/21 96/11 96/18 96/19 97/3 97/12 99/14
99/18 99/22 101/1 101/15 102/1 102/4 102/15
103/4 103/17 103/21 107/4 107/5 110/17
114/23 116/7 116/22 117/10 117/11 117/13
120/11 121/19 123/4
**done [8]** 10/14 11/4 11/18 18/5 20/5 21/5
107/6 108/8
**door [1]** 39/21
**doubt [1]** 49/9
**down [5]** 12/1 15/2 77/17 85/12 109/20
**Downes [1]** 102/3
**downstairs [2]** 32/3 34/7
**downtown [1]** 32/1
**dozen [1]** 78/20
**draft [1]** 92/24
**drafted [1]** 8/3

**drafting [2]** 98/25 100/2
**dragging [2]** 86/9 86/12
**drive [1]** 68/8
**drop [2]** 11/10 11/20
**dropping [2]** 68/7 68/12
**Drum [14]** 19/7 19/14 19/21 20/6 20/7 20/25
26/19 30/14 36/24 37/4 37/4 65/21 65/25 66/5
**Drum's [2]** 20/3 27/11
**due [3]** 7/11 26/19 120/21
**during [21]** 7/24 13/7 25/5 31/1 34/4 35/24
46/1 46/21 68/11 78/12 78/17 83/23 84/5
93/15 99/7 103/2 106/2 114/19 115/20 117/19
121/12
**DVDs [4]** 11/20 13/25 15/21 16/17

**E**

**e-mail [20]** 7/5 8/4 10/22 12/20 17/19 20/17
26/12 26/13 35/9 35/11 35/18 41/23 53/12
53/20 54/3 54/5 103/3 103/11 103/13 119/22
**e-mailed [1]** 53/16
**e-mailing [1]** 13/17
**e-mails [11]** 20/16 25/5 30/19 31/3 41/23
41/24 42/4 42/15 42/16 42/19 62/9
**each [4]** 24/23 81/22 86/14 118/21
**Eagan [13]** 59/23 60/2 62/13 62/19 63/2 78/12
78/13 98/13 98/16 103/24 104/18 105/22
106/22
**earlier [2]** 72/1 89/10
**early [2]** 59/3 60/7
**easy [2]** 37/12 66/15
**ECF [2]** 17/14 31/16
**editorial [1]** 25/15
**efficiency [1]** 90/5
**effort [2]** 5/6 61/16 114/10
**efforts [1]** 104/11
**either [3]** 6/10 14/21 36/5
**electronic [5]** 58/18 59/6 59/19 68/20 75/11
**elicit [4]** 39/11 39/13 41/1 50/2
**elicited [3]** 42/25 50/15 88/21
**Elliott [1]** 22/4
**else [10]** 29/8 32/16 34/4 36/1 51/20 65/17
73/13 103/5 117/15 118/4
**employed [5]** 57/10 57/16 58/2 78/11 78/13
**employees [1]** 76/8
**en [1]** 11/17
**enables [1]** 67/24
**end [15]** 6/14 21/18 34/18 34/19 34/22 34/23
35/1 35/3 43/2 43/3 43/4 52/15 58/22 85/19
95/13
**enough [2]** 30/23 37/12
**ensures [1]** 68/13
**entertain [1]** 14/14
**entire [1]** 23/1
**entirely [3]** 15/11 99/17 119/25
**entirety [1]** 37/3
**entitled [3]** 12/16 12/18 126/10
**entry [1]** 90/4
**enumerate [3]** 61/22 61/24 65/5
**equivalent [2]** 25/14 26/4 36/13
**error [3]** 29/16 29/23 31/12
**especially [1]** 40/1
**essentially [1]** 39/5
**establish [6]** 5/14 16/12 40/5 40/6 50/10
88/19
**established [1]** 20/7
**establishing [1]** 15/7
**estimate [1]** 78/19
**et [1]** 20/11
**EVAN [24]** 3/10 17/1 17/3 38/23 41/5 41/24
42/7 44/1 44/2 44/6 46/2 46/9 47/10 48/24
56/7 114/20 114/22 114/23 114/25 115/12
115/23 116/2 116/18 117/8
**even [17]** 5/3 8/11 8/15 11/25 13/13 14/4 20/5
32/22 35/16 36/15 36/15 39/12 40/17 55/7
64/25 74/21 74/22
**evening [4]** 27/5 28/6 35/5 41/22
**event [2]** 7/12 26/3 109/13
**events [1]** 104/10
**ever [43]** 12/12 46/11 46/25 47/15 48/3 48/5

48/18 52/11 62/2 62/18 62/22 63/5 65/18
65/21 64/25 65/3 73/8 73/20 74/10 74/19 81/6
85/2 88/6 100/17 100/18 102/20 106/22
107/17 108/23 108/25 114/22 114/23 114/24
116/2 116/17 117/9 117/12 117/15 118/3
118/7 121/11 121/17 124/1
**every [2]** 38/4 76/20
**everything [12]** 30/15 30/16 64/11 64/16
69/24 107/22 108/2 110/17 111/2 111/13
123/14 123/17
**evidence [18]** 8/14 8/17 9/18 10/18 11/10
11/19 12/4 12/19 13/2 13/22 15/1 15/13 15/21
16/7 34/24 42/11 61/20 119/17
**ex [1]** 13/14
**exact [3]** 49/2 78/19 81/18
**exactly [5]** 10/6 25/19 98/15 99/17 100/6
**examination [16]** 19/9 23/5 23/22 24/7 39/14
44/10 49/14 50/11 55/17 57/4 78/4 93/25 96/9
98/9 111/3 111/14
**examine [4]** 22/23 23/18 24/1 73/14
**examined [2]** 73/20 74/6
**Excel [4]** 62/8 90/2 90/6 91/13
**exchange [1]** 12/20
**excluded [1]** 40/4
**exclusively [1]** 79/10
**excused [4]** 56/1 56/16 97/20 97/23
**executable [2]** 63/22 64/19
**executed [1]** 60/6
**exhausted [2]** 7/16 7/22 15/9
**exhibit [17]** 6/5 15/23 22/11 25/17 66/9 66/17
68/23 70/9 70/11 70/21 70/22 71/2 71/12 72/9
75/17 75/22 119/16
**Exhibit 1059 [1]** 119/16
**Exhibit 119 [2]** 70/9 70/11
**Exhibit 120 [2]** 70/21 70/22
**Exhibit 260 [2]** 66/9 66/17
**Exhibit 294 [2]** 75/17 75/22
**exhibits [13]** 3/7 3/13 5/20 8/16 9/10 19/10
19/13 31/18 31/25 32/3 32/8 32/16 33/1
**exist [1]** 64/3
**existed [1]** 37/19
**existence [1]** 63/21
**exists [1]** 63/25
**expect [1]** 39/3
**expected [1]** 111/24
**expecting [1]** 112/3
**expense [1]** 20/10
**expenses [1]** 97/11
**experience [7]** 32/20 64/25 66/19 68/5 75/3
75/22 97/5
**expert [9]** 20/23 100/22 101/2 101/2 101/5
101/7 101/8 101/10 101/13
**experts [7]** 100/3 100/5 100/7 100/8 100/13
100/15 100/18
**explain [3]** 66/23 67/14 89/25
**explained [2]** 13/8 14/4
**explanatory [1]** 29/8
**exported [1]** 60/7
**exposed [2]** 25/20 85/14
**exposure [2]** 25/5 26/2
**extends [1]** 32/8
**extension [1]** 19/12 20/8 22/10
**extent [1]** 11/7
**extract [3]** 66/25 67/23 77/8
**extraction [15]** 66/21 66/22 67/15 68/11 69/2
69/7 69/12 71/15 71/18 71/25 72/4 73/20 74/9
74/23 75/19
**extraordinary [1]** 5/6
**extreme [1]** 15/15
**eye [5]** 108/20 108/23 108/25 109/3 109/4

**F**

**F.3d [2]** 15/3 23/4
**fact [10]** 10/13 11/3 14/21 39/24 40/14 40/23
41/3 41/14 55/19 55/23 108/17
**facts [4]** 8/2 50/1 104/10 124/14
**fair [3]** 25/18 30/23 41/12
**fairly [1]** 83/6

## F

false [10] 31/2 31/2 37/9 37/21 38/5 38/12 49/10 55/24 110/12 124/20
familiar [3] 62/15 67/6 102/4
family [2] 21/11 21/12
fancy [1] 61/25
far [3] 81/15 110/25 111/11
farther [1] 88/25
features [1] 76/22
federal [10] 2/10 12/13 46/5 46/8 46/8 46/12 101/24 115/8 115/11 115/11
fee [6] 7/7 7/9 7/11 7/14 13/12 32/5
feel [2] 12/17 66/14
fees [1] 92/14
felon [2] 50/12 52/9
felony [1] 12/13
few [4] 79/1 79/3 81/4 118/20
field [1] 30/4
Fifteen [1] 79/25
figure [1] 7/25
figured [1] 112/5
file [12] 18/21 26/24 27/7 31/10 34/8 35/1 61/21 61/22 62/7 62/21 63/24 63/25
filed [8] 14/12 17/8 26/18 28/18 34/12 36/5 99/18 109/25
files [25] 60/5 60/7 60/20 60/23 61/12 61/13 61/16 61/23 61/24 61/25 62/1 62/2 62/4 62/5 62/7 62/8 62/12 62/14 62/19 63/22 63/23 65/6 66/2 68/7 68/12
filing [6] 17/14 27/13 27/19 27/21 28/21 30/22
filings [4] 27/10 28/24 29/3 109/13
Filippo [1] 84/21
finalization [1] 103/15
finalized [1] 103/18
finally [2] 37/19 69/15
financial [5] 58/17 62/22 63/2 65/18 65/22
find [14] 11/12 11/13 14/8 15/2 15/13 15/15 18/12 18/13 25/14 26/3 63/18 63/24 64/7 66/3
finding [1] 51/25
fine [6] 16/4 27/8 33/23 40/6 40/7 79/7
firm [54] 46/18 46/22 47/1 47/11 47/16 60/2 66/2 66/7 78/17 79/22 80/17 81/20 82/20 82/21 82/22 83/3 83/7 83/9 83/14 83/15 83/23 84/5 84/7 84/11 84/12 84/14 84/18 87/8 87/11 87/22 88/10 88/16 89/5 89/13 89/22 90/21 91/6 92/16 92/16 93/16 97/2 98/18 99/2 99/20 101/4 103/20 103/20 104/17 104/18 104/25 105/2 115/17 115/21 115/24
firm's [2] 92/14 95/21
first [20] 6/24 25/13 28/23 38/23 43/24 44/4 53/11 56/23 58/3 60/14 61/14 66/17 75/17 77/23 98/4 98/5 109/21 110/5 122/9 123/20
five [5] 64/13 64/17 64/19 81/17 81/23
flag [1] 39/13
focus [4] 58/14 59/17 67/8 86/13
focused [1] 59/10
folder [2] 63/22 63/23
folks [2] 24/8 31/25
follow [1] 24/17
following [3] 25/22 29/13 103/14
follows [5] 8/21 10/5 10/9 12/11 23/10
force [1] 24/1
foregoing [1] 126/8
forensic [34] 59/12 59/19 59/23 60/3 60/4 60/10 60/18 60/18 60/20 61/20 63/19 64/2 64/6 66/24 67/2 67/25 68/5 68/6 68/15 69/2 69/8 69/17 69/22 70/4 70/22 71/3 71/9 72/8 73/1 73/8 75/10 75/19 75/23 76/12
forensically [3] 58/18 59/5 68/17
form [2] 85/8 125/17
format [1] 126/11
forth [2] 58/1 90/6
forward [2] 49/5 77/19
forwarded [1] 121/20
found [1] 30/4
foundation [2] 55/3 67/17 74/10 92/2 95/10 96/14 123/2
foundational [2] 8/17 93/6
four [2] 10/20 13/10

## Fourth [1] 2/11
Fox [2] 1/24
frame [1] 103/22
Frank [2] 87/25 88/1
frankly [2] 12/5 24/13
Frauds [1] 2/6
free [1] 66/14
freely [1] 6/19
Friday [5] 31/1 36/8 39/20 102/14 102/15
friend [1] 35/10
front [6] 15/24 15/25 16/2 23/18 64/18 89/3
FTK [4] 58/21 60/16 60/25 76/11
further [13] 4/21 21/24 25/6 25/11 38/18 49/12 55/14 56/9 56/11 77/14 93/22 96/8 97/17

## G

Gardner [6] 22/8 22/17 22/20 24/20 25/20 95/6
gave [4] 49/1 91/13 121/3 124/15
generally [13] 23/25 32/20 39/9 59/20 62/16 67/14 68/15 79/6 82/5 101/21 103/11 103/12 104/13
generated [1] 91/25
gentleman [2] 44/16 84/20
gentlemen [5] 43/21 85/7 103/3 112/24 125/15
Geoffrey [2] 94/18 96/3
Georgia [2] 14/5
gesture [3] 106/22 107/10 110/13
gesturing [2] 106/7 109/19
get [26] 5/11 6/10 10/9 10/10 10/10 10/12 13/10 13/13 13/15 21/15 21/18 28/10 36/2 39/24 40/14 40/23 50/1 51/18 52/2 67/15 68/6 68/20 74/1 74/11 110/22 119/7
gigabytes [1] 61/8
Giglio [1] 30/25
give [8] 4/16 9/24 15/23 36/12 90/23 91/6 91/11 95/18
given [10] 5/17 11/13 15/12 31/16 33/14 52/7 63/20 68/2 83/9 83/15
gives [1] 32/21
glass [4] 106/4 107/10 109/12 113/1
go [13] 4/20 14/11 37/12 50/21 61/12 61/19 63/10 65/18 69/20 70/9 77/19 101/19 115/5
goes [4] 19/24 34/6 90/14 90/15
going [36] 8/13 10/23 14/20 16/6 17/9 17/13 18/4 18/8 18/11 23/2 26/10 31/11 31/12 34/18 35/4 36/12 39/2 40/8 40/11 40/11 40/12 40/13 40/14 40/22 43/1 48/21 49/25 50/21 51/3 51/7 52/10 88/19 112/9 112/22 119/7 119/11
gone [1] 22/25
good [26] 4/5 4/7 4/8 4/11 17/17 17/25 43/13 43/16 43/17 43/20 43/21 43/22 44/12 44/13 49/16 49/17 57/6 57/7 64/24 78/6 78/7 94/2 94/3 98/11 98/12 112/5
got [5] 17/14 29/4 61/2 121/1 124/14
government [48] 8/1 8/13 8/23 10/21 10/23 12/3 13/21 13/24 19/5 22/9 24/13 24/16 24/25 25/21 26/7 27/12 27/13 28/2 28/18 29/6 29/7 29/20 30/8 34/14 36/3 37/10 40/16 42/20 42/25 44/23 47/15 77/15 88/21 93/3 99/11 104/4 107/2 110/15 111/21 111/25 112/3 112/9 112/12 112/20 112/22 115/6 117/9 118/13
government elicited [1] 42/25
government's [5] 9/13 26/11 27/19 27/21 30/22
graduated [1] 58/4
great [1] 126/11
Greg [14] 40/14 41/4 41/5 41/6 41/25 42/1 42/6 42/7 44/16 44/20 48/18 99/8 99/11 114/25
Gregory [3] 39/2 39/4 95/6
grounds [1] 29/25
group [3] 23/24 62/7 62/8
guaranteeing [1] 32/25
guess [4] 16/6 22/11 26/14 34/16

## H

had [90] 6/9 7/3 8/24 9/2 9/5 10/24 13/22 14/7 14/22 14/23 16/10 16/16 18/4 19/12 20/4 20/4 20/8 22/17 25/5 25/22 26/2 28/10 28/11 30/2 30/5 30/8 30/21 35/8 35/13 37/19 38/11 38/13 40/6 45/4 45/5 46/18 47/21 47/22 47/22 53/3 53/6 53/11 53/21 59/22 67/10 70/16 77/7 82/6 82/8 84/13 85/14 88/14 94/18 94/22 94/25 95/8 95/14 97/2 100/5 101/4 101/5 103/4 104/16 104/20 105/15 105/23 109/8 109/22 110/13 111/24 113/7 113/7 115/17 116/10 116/11 116/18 116/19 116/19 118/5 118/18 118/20 119/1 119/3 119/4 119/24 121/12 124/19 124/20 125/1 125/3
had a [1] 53/3
half [9] 38/14 64/10 71/13 73/5 78/15 78/18 84/5 87/9 89/10
hand [7] 67/19 72/15 90/14 90/15 90/15 106/8
handed [4] 85/13 87/4 87/6 89/8
handful [1] 81/16
handle [1] 52/23
handled [4] 79/10 79/13 80/23 90/16
handling [1] 79/18
hang [2] 48/18 117/9
hanging [2] 117/13 117/15
HANNA [1] 2/3
happen [2] 121/11 121/14
happened [13] 10/6 10/22 20/22 40/15 48/13 73/15 73/16 106/16 110/17 117/3 121/5 121/8 124/14
happens [1] 112/7
happy [15] 5/16 7/13 7/14 14/17 22/12 26/24 27/4 30/1 31/4 31/4 33/2 33/5 33/22 36/20 86/18
hard [1] 120/4
hardship [1] 15/15
harm [1] 52/9
has [43] 5/16 8/7 14/24 15/5 15/9 15/12 16/7 16/10 16/16 17/18 19/5 21/2 21/5 23/7 23/11 23/16 24/13 25/9 29/3 30/13 30/16 30/25 31/5 32/6 32/7 38/4 39/9 40/19 40/24 41/2 41/13 42/7 50/10 52/6 65/21 65/25 66/5 66/24 70/16 86/1 89/4 97/10 102/6
hasn't [1] 7/12
have [182]
haven't [4] 11/17 28/8 35/23 119/24
having [5] 5/9 6/17 13/25 27/14 33/17 88/6
he [75] 5/12 5/14 6/12 13/14 13/15 13/16 13/19 13/21 13/22 14/11 14/12 15/9 15/10 16/9 16/10 16/10 16/12 16/14 16/16 19/22 20/15 21/5 36/5 36/16 37/17 37/17 37/18 38/10 39/3 40/20 41/5 41/10 44/25 45/24 46/12 47/1 47/16 49/11 50/11 50/12 50/13 50/14 52/8 53/6 53/11 53/12 53/14 55/13 86/1 86/1 88/19 94/9 94/12 94/13 102/2 104/25 105/1 105/19 107/4 107/5 107/5 107/5 107/12 108/23 109/25 111/8 114/17 118/9 118/14 118/18 118/25 119/7 121/1 124/2 124/19
he's [4] 14/10 35/10 51/3 52/8
header [2] 68/24 72/3
headline [1] 85/14
hear [8] 17/24 22/13 33/2 35/14 41/16 86/11 86/18 118/7
heard [11] 18/10 18/17 18/18 18/20 20/5 23/12 23/16 23/19 24/25 38/13 62/17
hearing [8] 4/16 22/3 27/12 28/10 29/11 29/13 29/19 30/10
hearings [1] 34/3
hearsay [1] 42/12
heart [1] 19/24
held [3] 30/10 63/2 126/10
help [1] 66/2
her [39] 7/3 7/4 7/13 10/24 10/25 12/17 12/17 13/8 13/9 15/12 19/20 20/12 21/6 22/16 22/23 24/15 24/23 25/21 35/10 35/13 38/25 39/1 39/5 39/5 40/7 40/11 40/12 40/13 40/13 41/3 41/5 41/7 41/9 42/3 50/17 52/5 52/11 85/16 85/17

## H

**here [21]** 5/9 6/24 10/6 10/11 10/11 11/24
13/19 17/9 17/13 32/7 48/21 63/9 63/15 79/14
79/20 85/6 112/18 112/18 112/21 123/17
125/15
**here's [1]** 8/11
**hereby [1]** 126/7
**Hernandez [6]** 4/10 41/23 43/19 66/11 68/25
72/14
**herself [1]** 24/20
**highly [3]** 19/23 19/24 40/20
**Hillary [2]** 91/16 91/17
**him [12]** 5/11 5/13 5/20 5/25 15/6 16/9 16/11
16/12 38/16 39/5 39/12 41/5 41/11 42/3 50/3
51/11 53/13 82/11 88/4 103/21 104/1 104/1
106/9 114/6 114/10 114/15 118/13 120/20
121/3 122/20 124/19
**hired [7]** 50/17 100/3 100/8 100/14 100/18
100/22 101/6
**his [17]** 13/16 15/7 16/8 16/8 16/9 20/25
38/24 47/1 47/16 54/19 82/12 102/4 106/8
106/8 108/8 124/15 124/19
**Hispanic [1]** 80/10
**hold [1]** 60/15
**Honor [141]**
**Honor's [3]** 30/7 34/17 36/3
**HONORABLE [1]** 1/8
**host [1]** 42/24
**hour [1]** 64/10 92/17
**hourly [5]** 92/17 92/22 95/21 95/25 96/3
**hours [4]** 14/7 32/23 90/2 92/21
**how [34]** 7/25 8/15 19/16 20/2 24/6 38/2
57/16 59/5 60/16 61/1 61/19 63/20 64/15
64/16 67/15 73/15 76/5 78/17 79/22 80/17
81/15 81/19 81/20 88/9 89/25 90/11 93/10
99/2 99/16 101/10 101/13 103/4 103/22
111/20
**hunch [2]** 20/4 20/8
**hung [3]** 48/10 48/24 116/25

## I

**I'd [3]** 18/20 18/21 118/23
**I'll [4]** 22/15 33/5 35/11 74/13
**I'm [55]** 5/16 8/6 10/23 11/15 12/15 12/18
14/17 14/20 16/5 17/4 17/19 18/8 18/11 18/23
21/13 22/1 22/14 26/24 27/4 29/5 30/1 31/4
31/4 31/12 33/8 33/22 34/17 35/16 37/14 38/9
39/1 39/21 40/10 40/11 40/12 40/13 40/14
42/18 48/21 51/8 52/2 55/5 57/15 68/24 71/16
72/11 72/23 79/11 86/5 88/19 99/17 99/19
106/17 120/7 124/1
**I've [1]** 5/4
**I-N-D-E-X [1]** 3/2
**Ibrahim [38]** 45/14 45/17 45/21 45/25 48/10
54/14 104/20 104/24 105/4 105/9 105/13
105/18 105/24 106/3 106/8 106/23 107/10
108/19 109/19 113/2 113/17 113/20 113/24
114/18 114/25 116/25 117/8 117/20 118/4
118/7 118/22 119/3 120/15 121/17 121/25
123/10 123/25 124/2
**Ibrahim's [3]** 122/22 122/23 123/1
**idea [9]** 20/1 37/19 38/6 38/10 38/11 40/7
55/13 101/10 108/25
**Ideally [1]** 75/13
**identical [2]** 120/14 123/25
**identified [1]** 60/5
**identifies [2]** 62/1 62/4
**identify [7]** 60/20 60/23 61/16 61/25 62/2
63/25 65/6
**identifying [2]** 61/12 61/13
**ignore [1]** 15/10
**ignores [1]** 36/14
**IMAD [2]** 26/23 27/3
**image [9]** 60/21 61/13 61/21 61/22 64/7 64/17
68/1 68/6 69/22
**images [10]** 59/12 59/19 59/23 60/4 60/10
60/12 61/2 63/19 64/2 68/5
**immediate [1]** 36/22
**impeachment [1]** 21/5

**impermissible [1]** 34/9
**implement [1]** 84/20
**import [1]** 60/4
**important [4]** 10/20 15/14 51/7 68/6
**importantly [1]** 32/14
**impossibility [1]** 11/4 24/9
**impossible [1]** 10/22
**improper [4]** 4/23 18/13 18/24 19/5
**improve [1]** 57/25
**inclined [1]** 12/23
**include [2]** 29/1 37/10
**included [3]** 12/10 63/19 124/18
**including [12]** 16/13 19/8 20/9 31/1 42/24
48/24 59/8 68/24 84/6 106/2 119/18
**inconvenience [2]** 12/15 12/18
**inconvenienced [1]** 11/7
**inconveniencing [1]** 10/7
**inconvenient [1]** 11/8
**incorrect [2]** 20/15 50/8 74/16
**indeed [1]** 15/5
**independent [1]** 81/24 82/12 82/18
**indicated [4]** 26/10 40/20 86/4 119/23
**indicates [1]** 5/23
**indicating [2]** 14/22 85/13
**individual [2]** 81/23 91/6
**individuals [2]** 10/21 105/22
**info [1]** 51/25
**inform [2]** 21/25 39/17
**information [18]** 4/17 5/2 5/12 6/16 6/19
15/12 16/15 19/17 19/19 26/13 52/5 57/20
58/13 58/14 65/22 106/23 120/25 121/3
**informed [7]** 9/23 17/7 34/3 34/5 37/7 112/9
112/11
**initial [4]** 98/25 100/2 105/14 120/21
**initially [3]** 6/12 85/24 86/4
**injury [3]** 79/8 82/2 82/8
**input [5]** 90/24 91/6 91/11 95/20 96/18
**inputted [1]** 91/24
**inputting [1]** 91/19
**inquire [1]** 31/20
**inquired [2]** 28/5 28/9
**inquiries [1]** 17/22
**inquiring [1]** 36/10
**inquiry [2]** 24/11 28/13
**insisted [1]** 22/23
**instance [2]** 19/21 68/8
**instances [2]** 59/16 83/24
**instead [1]** 10/16
**instructed [3]** 24/13 24/18 64/5
**instructing [1]** 24/16
**instruction [1]** 23/2
**intellectual [3]** 99/12 99/25 100/21
**intend [4]** 39/11 39/13 41/1 50/2
**interest [4]** 10/6 47/22 116/11 116/18
**interested [1]** 7/3
**interface [2]** 67/1 67/22
**interrupt [1]** 37/17
**interview [5]** 37/9 37/22 37/23 38/8 38/8
**introduced [7]** 39/5 41/5 41/5 41/7 42/3 50/14
53/9
**introduction [1]** 42/1
**investigated [1]** 42/2
**investigation [5]** 38/14 41/6 50/13 53/4 60/8
**investigations [1]** 76/16
**investigative [1]** 57/15
**investigators [1]** 20/10
**invoked [1]** 26/5
**involved [6]** 82/6 82/15 82/23 82/25 82/25
88/9
**involvement [11]** 19/8 19/12 20/9 81/2 81/7
81/10 84/7 84/8 87/14 87/18 100/5
**involving [8]** 79/2 79/9 79/13 79/19 80/23
85/3 103/16 113/2
**iPhone [1]** 66/21
**irrelevant [1]** 51/14
**is [236]**
**isn't [11]** 23/13 49/18 64/5 64/8 68/1 70/19
74/9 77/12 90/8 96/25 124/20
**issue [21]** 5/9 5/15 6/11 15/14 17/3 19/2 19/4

21/11 29/14 30/1 30/10 31/5 33/25 34/11 37/4
37/13 42/20 47/24 55/8 44/20 46/6
**issued [3]** 13/16 31/21 33/12
**issues [14]** 4/21 6/17 18/14 19/15 20/11
20/11 21/13 29/11 42/24 51/10 85/9 86/19
125/11 125/17
**it [248]**
**it's [50]** 6/4 6/6 6/19 9/17 10/14 11/8 12/20
12/21 13/6 14/13 14/21 18/14 19/24 24/9
25/24 26/2 26/15 28/7 28/20 30/2 30/11 31/1
32/22 34/10 35/4 36/6 36/9 36/13 36/24 37/4
37/12 38/7 38/8 39/7 39/8 40/8 41/12 41/18
50/12 51/14 51/15 67/7 68/14 68/20 75/13
76/2 93/6 103/1 123/7 125/18
**Item [2]** 4/3 43/11
**its [1]** 8/8
**itself [5]** 18/13 23/19 29/25 86/15 94/20

## J

**J-e-n-n-e-s-s [1]** 44/7
**J-o-h-n [1]** 98/5
**J-o-s-e-p-h [1]** 56/25
**Jacqueline [1]** 4/13
**JAMES [2]** 1/8 35/21
**Jason [1]** 88/1
**Jencks [2]** 26/20 30/24
**JENNESS [43]** 3/10 38/23 41/5 41/21 41/25
42/7 44/1 44/2 44/6 44/12 46/2 46/9 46/11
46/25 47/10 47/15 47/21 48/9 48/10 48/18
48/24 49/8 49/16 50/14 50/16 51/8 51/12
51/19 55/14 55/19 56/7 114/20 114/22 114/23
114/25 115/12 115/23 116/3 116/10 116/18
116/24 116/25 117/8
**Jenness's [1]** 51/25
**Jim [1]** 85/3
**job [1]** 58/3
**Joe [1]** 103/1
**JOHN [13]** 1/11 2/14 3/12 4/4 27/11 43/12
54/15 65/21 65/25 66/5 98/1 98/2 98/5
**Johnson [4]** 81/9 94/20 94/23 96/12
**Johnson's [6]** 78/21 94/18 94/25 95/3 96/3
96/20
**joint [1]** 27/17
**jointly [1]** 85/13
**JOSEPH [5]** 3/11 56/20 56/21 56/24 56/25
**Journal [1]** 105/20
**judge [5]** 1/8 101/24 102/1 102/2 102/3
**Judicial [1]** 126/12
**Judy [5]** 54/25 55/12 56/1 56/6 97/5
**July [1]** 112/7
**jumps [1]** 36/18
**June [5]** 42/16 44/22 52/25 53/7 54/8
**June 22nd [1]** 42/16
**June 23rd [1]** 44/22
**jurisdictions [2]** 98/16 98/20
**juror [2]** 85/13 86/1
**jury [53]** 4/2 10/19 11/10 11/17 12/22 13/2
13/3 14/1 15/24 16/1 16/3 19/11 22/20 22/22
22/24 22/25 23/6 23/19 23/19 23/20 24/2 24/6
24/10 24/12 39/25 40/18 43/7 43/10 43/22
44/24 44/25 49/1 49/9 55/23 56/5 57/13 61/7
66/12 66/23 67/14 72/15 75/8 78/8 85/11
86/24 89/25 97/10 104/4 107/2 108/24 112/25
114/5 118/9
**just [35]** 4/21 6/4 8/22 9/15 9/20 11/10 11/17
11/20 12/11 13/16 16/5 18/11 23/14 25/9 29/7
30/17 32/6 36/2 36/18 37/6 39/20 49/23 52/4
62/2 65/1 68/7 70/6 72/12 77/9 79/6 86/3
88/25 115/2 115/5 123/24
**Justice [16]** 57/10 57/17 57/21 59/12 67/24
70/3 70/16 73/21 74/7 74/25 75/23 76/3 76/18
77/5 77/8 77/11
**Justice's [5]** 70/12 71/3 71/9 73/8 74/22
**justifies [1]** 5/9
**justify [2]** 14/2 92/13
**JVS [3]** 1/11 4/3 43/11

## K

**Karlous [2]** 43/15 65/17

**K**

**keep [4]** 14/6 89/23 90/2 91/5 106/23 107/14 107/17
**keyword [2]** 60/6 60/6
**kind [3]** 5/6 21/8 68/20
**kit [1]** 60/19
**knew [14]** 10/23 10/24 46/17 47/23 50/13 109/8 110/11 110/13 115/16 116/12 116/19 119/11 124/25 125/5
**know [45]** 7/20 8/12 12/5 19/16 20/2 21/8 21/9 22/17 22/18 23/14 24/15 29/3 32/18 32/19 36/9 36/15 44/16 55/6 55/11 63/9 63/11 63/15 71/16 73/14 73/15 73/19 74/5 74/21 74/22 80/19 87/16 91/20 96/11 96/18 96/19 97/1 97/2 97/3 97/12 103/4 107/4 107/5 118/9 118/13 125/3
**knowing [1]** 118/13
**knowledge [16]** 42/7 63/4 64/2 70/4 70/23 73/17 76/19 77/7 101/13 107/3 114/4 114/14 122/18 123/15 123/18 125/11
**knowledgeable [1]** 97/4
**known [2]** 18/4 65/6
**knows [3]** 39/4 40/14 41/4

**L**

**lab [13]** 60/3 60/12 60/25 61/11 61/16 68/16 75/9 75/25 75/25 76/3 76/5 76/11 76/14
**laboratory [1]** 73/12
**lack [1]** 37/2
**Lacks [2]** 55/2 95/10
**ladies [3]** 43/21 85/6 125/15
**laid [2]** 15/2 38/2
**large [3]** 21/1 80/20 83/19
**last [17]** 14/12 22/16 25/23 29/4 34/13 44/4 44/6 44/20 48/21 50/15 51/11 56/23 65/16 77/24 98/4 98/8 108/9
**lasted [1]** 102/7
**late [2]** 29/4 35/4
**later [5]** 16/19 16/20 36/22 112/17 118/20
**law [21]** 2/15 11/14 13/12 47/1 47/11 60/2 66/2 66/7 83/7 84/7 84/14 84/18 87/22 93/16 97/2 99/2 103/19 103/20 104/17 104/17 115/24
**lawsuit [1]** 109/25
**lawyer [2]** 51/5 52/6
**lawyers [1]** 102/21
**lead [2]** 55/23 87/23
**leading [19]** 38/10 59/14 73/22 74/10 74/11 79/15 80/7 83/11 83/17 84/2 92/2 92/3 100/10 100/24 108/5 110/2 110/7 116/5 124/21
**learn [1]** 110/5
**learned [2]** 109/21 112/14
**learning [1]** 31/3
**least [5]** 39/16 73/5 78/20 89/10 93/3
**leave [1]** 39/25
**leaving [1]** 84/12
**led [2]** 37/24 105/13
**left [3]** 30/4 84/11 99/3
**legal [1]** 98/21
**length [1]** 19/7
**lengths [1]** 22/25
**less [3]** 5/1 64/13 64/23
**let [4]** 5/5 13/1 111/10 115/5
**let's [8]** 16/2 16/25 30/20 41/16 69/20 70/9 77/19 104/24
**letter [32]** 35/15 35/21 118/18 118/21 118/25 119/2 119/7 119/11 119/22 119/23 119/24 120/8 120/10 120/14 120/15 120/18 121/1 122/1 122/18 123/9 123/12 123/17 123/20 123/23 124/1 124/3 124/4 124/15 124/25 125/2 125/4 125/5
**letterhead [1]** 119/18
**letters [3]** 123/21 123/23 124/9
**letting [1]** 52/2
**level [1]** 20/24
**license [1]** 76/24
**licensed [1]** 44/14
**licenses [1]** 76/14
**lied [2]** 10/20 10/24

**light [1]** 20/2
**like [38]** 4/13 1/20 10/24 18/13 18/20 18/23 24/25 27/6 27/18 28/14 28/17 29/4 29/13 34/14 34/20 34/25 35/14 46/6 48/25 67/1 67/23 68/20 71/6 71/8 72/4 72/6 73/9 73/11 75/24 76/24 86/19 92/18 98/25 112/25 115/9 120/1 120/4 120/8
**likelihood [1]** 86/8
**likely [1]** 61/10
**limine [1]** 9/19
**limited [1]** 21/1 98/18 100/5 101/9
**limits [1]** 51/14
**line [2]** 40/3 120/12
**line 4 [1]** 120/12
**lists [1]** 60/7
**little [3]** 65/2 88/25 110/22
**live [6]** 5/24 9/1 9/4 11/9 12/16 14/8
**lives [1]** 21/7
**LLP [1]** 98/14
**load [1]** 64/16
**lobby [1]** 105/19
**locally [1]** 10/11
**locate [1]** 63/1
**log [3]** 66/20 66/20 90/2
**long [10]** 49/18 50/25 54/1 57/16 64/16 65/3 65/4 70/19 99/2 99/16
**longer [7]** 45/22 64/22 112/9 113/25 114/5 114/13 114/15
**look [23]** 29/4 30/16 34/7 35/24 45/8 49/5 62/12 62/18 62/22 63/5 64/5 65/18 65/22 71/6 71/8 71/24 72/4 73/9 73/11 75/24 113/11 119/24 120/5
**looked [7]** 7/22 28/8 63/12 63/21 63/23 72/2 77/9
**looking [1]** 123/24
**looks [3]** 72/6 75/5 120/8
**Los [4]** 2/8 10/11 10/12 52/18
**lot [4]** 9/20 64/13 99/24 100/1
**lower [1]** 72/15
**lunch [4]** 17/3 31/1 85/19 125/14
**lying [1]** 118/14

**M**

**made [27]** 7/2 16/13 17/14 18/6 20/3 22/12 22/21 24/11 27/16 30/25 31/21 32/15 32/19 32/21 34/10 37/8 75/9 105/15 109/11 109/22 110/13 118/5 119/4 121/13 124/10 124/16 124/17
**magistrate [2]** 101/24 102/2
**mail [20]** 7/5 8/14 10/22 12/20 17/19 20/17 26/12 26/13 35/9 35/11 35/18 41/23 53/12 53/20 54/3 54/5 103/3 103/11 103/13 119/22
**mailed [1]** 53/16
**mailing [1]** 17/19
**mails [11]** 20/16 25/5 30/19 31/3 41/23 41/24 42/4 42/15 42/16 42/19 62/9
**main [1]** 42/12
**major [2]** 2/6 10/11
**make [21]** 12/9 13/14 14/11 16/18 22/15 25/6 29/12 31/18 34/8 38/16 39/20 50/21 66/5 68/16 86/6 98/21 106/22 117/21 118/9 120/20 124/18
**makes [4]** 11/18 23/17 24/3 67/22
**making [2]** 11/3 67/22
**mal [3]** 81/12 82/7 95/3
**malpractice [1]** 79/3
**man [3]** 65/21 65/25 66/5
**management [1]** 58/13
**many [2]** 5/11 14/7 24/1 36/18 38/2 38/3 38/3 38/3 38/3 61/4 61/5 76/25 78/17 79/22 80/17 81/15 81/19 81/20 88/9 93/10 103/4 111/20
**March [11]** 45/3 45/20 78/14 84/12 104/8 104/17 105/3 107/22 108/2 113/6 113/23 114/6 114/13
**March 15 [1]** 113/6
**March 15th [1]** 45/3
**March 2018 [3]** 105/13 107/22 108/2
**March 2019 [1]** 78/14

**Marching [2]** 84/21 85/2
**Marino [4]** 1/7 9/17 9/19 21/6
**MARKED [2]** 3/7 3/13
**masse [1]** 11/17
**Master's [1]** 58/9
**material [1]** 30/24
**materials [2]** 28/14 32/2
**matter [38]** 12/12 12/13 12/14 19/12 32/23 39/11 39/12 39/24 40/1 40/2 40/2 40/19 41/12 47/23 50/6 51/13 51/14 52/7 77/3 78/9 79/3 87/18 87/23 99/10 99/17 99/25 100/4 100/7 101/2 101/11 101/14 102/20 103/11 105/4 105/23 116/12 116/20 126/10
**matters [27]** 4/12 6/18 40/24 41/2 52/23 79/3 87/8 87/12 87/15 87/24 88/3 88/7 88/9 88/15 89/5 89/7 89/9 89/9 89/23 90/1 90/4 90/7 90/10 90/15 99/8 99/10 99/16
**may [34]** 6/1 6/2 6/3 6/3 6/5 6/7 6/7 6/9 6/13 6/13 7/17 12/16 14/1 14/18 15/8 15/8 16/13 38/20 41/20 56/13 56/16 65/9 66/10 68/12 74/17 76/22 77/17 80/22 85/12 93/13 97/20 97/23 107/4 107/5
**May 1 [1]** 15/8
**May 1st [4]** 6/1 6/3 6/9 6/13
**May 2 [2]** 7/17 15/8
**May 2nd [3]** 6/2 6/3 6/13
**May 30th [1]** 6/5
**May 4th [1]** 16/13
**maybe [6]** 6/4 62/9 64/13 71/12 73/4 99/19
**me [46]** 7/20 10/10 10/10 10/10 10/12 11/4 13/1 14/22 14/25 15/6 17/7 17/22 25/3 26/2 26/11 29/20 30/9 32/24 33/3 38/9 39/24 39/25 40/18 50/19 52/11 53/11 60/5 64/11 66/2 75/18 80/3 81/25 82/12 82/18 82/21 84/9 88/6 89/8 89/14 101/16 105/23 107/12 111/10 112/2 112/21 115/5
**mean [6]** 7/19 12/12 37/16 41/11 62/7 68/15
**meaning [7]** 32/23 63/6 76/14 92/17 93/20 100/7 102/24
**means [1]** 7/22
**med [3]** 81/12 82/7 95/3
**media [3]** 22/24 24/5 24/21
**mediation [7]** 101/18 101/19 101/20 102/7 102/18 102/19 103/14
**mediator [2]** 101/23 101/24
**medical [1]** 79/3
**meet [3]** 81/9 93/10 105/17
**meetings [1]** 31/6 31/7
**member [3]** 31/23 31/24 74/7
**members [1]** 60/8
**mention [2]** 36/17 38/6
**mentioned [9]** 22/16 37/8 37/20 38/12 56/2 63/4 81/4 81/12 82/2
**message [3]** 51/24 66/20 66/20
**messages [9]** 52/4 67/23 67/25 73/2 74/8 75/4 75/18 77/8 77/10
**met [9]** 15/4 45/2 51/11 93/3 104/20 110/15 111/20 112/23 113/5
**metadata [1]** 68/12
**methods [1]** 7/22
**mic [1]** 110/23
**MICHAEL [1]** 1/11 2/14 4/4 4/8 41/25 43/12 43/17
**Michelle [1]** 95/6
**microphone [1]** 44/5
**Microsoft [2]** 62/8 62/9
**mid [2]** 20/24 85/6
**mid-level [1]** 20/24
**mid-morning [1]** 85/6
**middle [2]** 29/18 30/2
**might [6]** 6/13 36/16 63/25 64/24 107/6 122/17
**million [6]** 105/15 109/8 117/21 118/5 119/5 120/21
**mind [2]** 49/9 81/22
**minimum [4]** 8/19 24/11 34/2 124/4
**minor [1]** 11/1
**minute [3]** 18/11 42/1 49/23
**minutes [7]** 12/1 28/7 28/8 31/3 64/14 64/17

**M**

minutes... [1] 64/19
Miramar [1] 2/16
mislabeled [1] 6/4
Misstates [3] 54/16 95/22 102/9
mistaken [2] 107/6 125/8
mistrial [5] 22/9 26/18 27/11 30/1 31/11
mock [1] 19/9
moment [2] 79/12 122/6
momentarily [1] 119/8
money [8] 46/18 46/22 47/2 47/17 76/20
77/11 115/17 115/21
monies [1] 104/11
months [2] 65/12 65/16
more [10] 5/18 20/24 32/14 33/18 59/10 59/10
66/15 97/4 98/18 99/8
Morgan [2] 35/8 35/11
morning [28] 4/5 4/7 4/8 4/11 17/17 18/4 22/2
26/1 35/4 43/13 43/16 43/17 43/20 43/21
43/22 44/12 44/13 49/16 49/17 57/6 57/7 78/6
78/7 85/6 94/2 94/3 98/11 98/12
most [9] 20/5 61/10 66/1 76/22 80/5 85/18
89/7 89/9 90/4
mother [4] 4/25
motion [17] 4/13 9/19 10/16 13/14 16/25
22/13 25/13 26/5 26/8 26/18 34/13 36/5 36/25
37/4 37/5 38/2 86/10
motions [1] 27/17
move [11] 8/16 8/25 9/10 9/25 15/20 22/8
31/11 69/24 103/6 108/9 110/19
moved [3] 9/3 9/7 22/7
moving [7] 8/8 8/10 17/18 17/20 20/21 22/10
65/1
Mr [14] 5/17 6/12 14/1 18/1 21/4 22/13 43/23
52/7 88/18 92/5 94/25 95/3 98/8 108/13
Mr. [265]
Mr. Amenta's [2] 26/19 27/2
Mr. Arden [37] 45/14 45/16 45/18 45/21 45/24
48/10 98/11 103/9 103/23 105/24 106/7
106/21 107/17 108/2 108/19 109/19 110/5
111/19 113/2 113/17 113/19 113/21 113/24
114/17 114/22 115/2 116/2 116/25 117/8
117/19 118/3 118/21 119/2 120/14 121/17
122/6 124/25
Mr. Arden's [2] 106/4 107/10
Mr. Avenatti [26] 5/3 5/10 6/22 13/6 14/5 15/5
16/15 21/15 22/7 25/11 26/10 27/16 34/12
40/24 44/9 50/6 50/22 53/12 55/16 56/18 57/3
78/3 85/15 85/25 86/25 90/13
Mr. Avenatti's [1] 5/5 14/8 26/8
Mr. Barela [77] 40/7 44/18 44/23 46/12 47/1
47/16 48/3 48/5 49/9 50/1 51/24 52/1 52/18
50/25 51/9 51/13 51/18 51/24 52/1 53/1 53/3
53/10 53/11 53/14 53/16 53/22 54/14 54/17
55/1 55/11 55/13 56/2 99/21 101/17 101/21
102/6 103/2 103/16 103/19 103/24 106/21
106/24 107/1 107/4 107/7 107/18 108/3 108/8
108/13 108/15 108/23 109/1 109/3 109/22
109/24 110/14 110/25 111/11 112/8 114/13
116/3 116/17 116/19 117/14 117/16 118/4
118/6 118/7 118/18 120/18 120/19 120/23
121/12 124/10 125/1 125/3 125/10
Mr. Barela's [9] 54/5 56/5 99/16 100/8 101/6
101/11 103/11 105/4 114/4
Mr. Bledsoe [11] 118/19 118/21 119/2 122/1
122/19 123/7 124/13 124/19 125/1 125/3
125/6
Mr. Bledsoe's [2] 123/9 125/4
Mr. Colorado [6] 78/6 87/6 89/3 90/20 94/2
96/11
Mr. Culig [1] 103/10
Mr. Drum [8] 19/7 19/14 19/21 20/6 20/7
20/25 26/19 30/14
Mr. Drum's [1] 20/3
Mr. Frank [1] 87/25
Mr. Greg [1] 44/20
Mr. Ibrahim [37] 45/14 45/17 45/21 45/25
48/10 104/20 104/24 105/4 105/9 105/13
105/18 105/24 106/3 106/8 106/23 107/10

minutes [1] 64/19
108/19 109/19 110/2 113/17 113/20 113/24
114/14 114/25 115/10 115/23 117/20 118/3
118/7 118/22 119/3 120/15 121/17 121/25
123/10 123/25 124/2
Mr. Ibrahim's [3] 122/22 122/23 123/1
Mr. Jason [1] 88/1
Mr. Johnson [1] 81/9
Mr. Johnson's [2] 78/21 96/20
Mr. Marchino [1] 85/2
Mr. Rose [1] 11/8
Mr. Sagel [10] 35/19 37/7 38/4 38/7 38/9
38/13 65/16 104/9 111/3 111/14
Mr. Sheikh [1] 103/10
Mr. Steward [5] 4/9 17/9 19/3 35/19 43/18
Mr. Varani [5] 57/6 66/14 73/7 74/5 74/15
Mr. Wyman [11] 28/5 28/9 35/19 40/19 49/13
55/19 56/1 56/10 65/16 93/23 97/18
Ms [26] 4/10 4/14 10/20 11/4 12/21 13/5
14/15 17/9 17/13 17/16 20/4 21/19 37/7 38/6
38/15 41/21 41/23 45/13 51/24 55/14 55/19
56/25 66/2 66/15 93/10 97/10 113/16
Ms. [55] 4/10 4/23 5/10 7/2 10/7 11/7 12/15
12/24 13/7 14/22 16/24 18/15 18/25 19/8 20/8
20/15 20/21 21/12 22/12 22/17 22/20 24/14
24/20 25/14 25/20 26/3 31/25 35/11 35/20
36/15 43/18 43/19 44/12 46/11 46/25 47/15
47/21 48/9 48/10 48/18 48/24 49/8 49/16
50/14 50/16 51/8 51/12 51/19 68/25 75/18
106/10 116/10 116/24 116/25
Ms. Bredahl [2] 31/25 35/20
Ms. Carter [7] 18/15 18/25 19/8 20/8 20/15
20/21 21/12
Ms. Cummings-Cefali [2] 4/10 43/18
Ms. Cuniff [1] 22/12
Ms. Cuniff's [3] 24/14 25/14 26/3
Ms. Evan [1] 48/24
Ms. Gardner [4] 22/17 22/20 24/20 25/20
Ms. Hernandez [2] 43/19 68/25
Ms. Jenness [18] 44/12 46/11 46/25 47/15
47/21 48/9 48/10 48/18 49/8 49/16 50/14
50/16 51/8 51/12 51/19 116/10 116/24 116/25
Ms. Morgan [1] 35/11
Ms. Ouellette [1] 95/18
Ms. Phan [1] 75/18
Ms. Regnier's [1] 36/15
Ms. Rose [10] 4/23 5/10 7/2 10/7 11/7 12/15
12/24 13/7 14/22 16/24
Ms. Wolett [1] 91/19
much [4] 4/17 36/12 59/9 68/9 68/11 84/17
101/10 101/13 120/1
multiple [1] 61/9
my [68] 7/9 7/11 9/11 10/19 11/24 12/10
12/18 12/25 13/3 17/18 17/20 20/7 20/12 21/8
22/22 22/19 26/18 28/21 29/1 29/17 29/22
29/24 30/11 31/9 32/13 32/14 32/20 34/5
38/22 45/9 46/18 48/21 49/8 50/7 51/16 54/19
57/18 58/3 59/16 60/3 63/4 66/6 67/7 73/19
75/18 81/2 81/7 81/10 85/25 86/10 87/6 90/2
91/13 92/11 98/5 98/5 100/6 103/9 104/17
112/19 113/12 114/12 114/12 115/2 115/17
120/1 122/13 123/16
myself [1] 31/12

**N**

name [25] 36/17 37/20 38/12 44/4 44/6 44/16
51/25 56/23 62/2 62/3 62/4 65/21 65/25 66/5
77/24 84/20 91/16 91/20 96/19 97/12 98/4
98/5 98/6 102/25 122/13
named [1] 63/23
namely [2] 16/8 69/3
names [2] 54/22 79/4
narrow [1] 86/13
native [1] 80/12
nature [3] 32/17 51/20 62/10
necessarily [1] 99/22
necessary [4] 7/6 16/11 22/3 25/1
need [11] 6/25 8/19 11/3 12/19 27/15 63/1
66/1 66/7 70/15 86/15 90/3
needed [3] 13/14 13/21 76/23

needs [2] 4/20 5/8
networks [1] 57/22
never [14] 36/13 37/7 37/24 38/13 40/2 40/3
40/15 42/7 63/12 110/13 118/6 121/12 122/20
124/14
New [9] 5/20 5/21 5/25 7/17 7/23 8/3 10/14
13/22 14/9
newspaper [1] 85/14
next [5] 97/24 120/2 122/1 124/8 125/9
NFL [2] 79/2 81/4
NICOLA [1] 2/3
night [2] 29/4 34/13
Ninth [2] 15/3 23/4
no [110] 4/20 7/4 9/3 10/6 12/11 14/19 14/22
14/23 14/24 15/12 17/7 17/11 19/2 20/17 21/6
21/10 23/7 23/7 23/21 23/21 24/3 25/7 25/7
25/12 25/24 26/15 27/15 28/1 28/11 29/11
30/2 30/6 31/7 34/10 36/17 37/16 37/19 38/11
45/22 46/13 48/7 50/4 50/4 50/23 51/1 52/10
55/13 55/14 55/25 56/8 62/14 62/18 62/24
63/4 63/8 63/12 65/4 65/20 65/24 66/4 66/8
69/23 69/24 70/5 70/13 70/24 71/6 71/11 73/3
73/17 75/7 75/24 85/13 90/3 95/3 96/8 97/19
101/15 102/19 103/17 106/25 107/18 107/19
108/3 108/4 108/7 108/14 108/25 109/3 109/4
109/23 112/9 113/25 114/5 114/12 114/15
114/15 115/1 116/3 116/4 116/7 116/22
117/10 117/13 117/17 118/8 121/15 123/4
124/10 125/18
non [1] 90/16
non-contingency [1] 90/16
none [7] 3/5 3/8 3/14 10/8 30/3 94/17 97/16
nonparty [1] 5/7
nonresponsive [3] 69/25 108/10 110/20
North [1] 2/7
not [185]
notable [1] 13/6
note [8] 12/11 31/9 32/13 32/14 33/24 37/6
51/23 85/13
notebook [2] 66/10 66/14
noted [1] 52/3
notes [6] 37/9 37/22 37/23 38/7 38/8 38/9
77/15 93/22 94/22 94/25 95/8 97/17
nothing [11] 20/24 49/12 56/9 56/11 77/14
77/15 93/22 94/22 94/25 95/8 97/17
notice [11] 4/16 5/2 15/16 17/17 17/15 21/8
28/11 29/20 30/3 31/16 33/12
noticed [4] 17/4 17/6 17/7 28/2
November [6] 45/5 45/13 113/8 113/16 119/1
123/22
November 14th [1] 45/13
November 15th [2] 45/5 113/8
November 19 [1] 123/22
November 19th [1] 119/1
now [40] 10/16 14/10 14/14 16/18 16/25 17/4
18/18 28/10 30/14 32/24 34/7 34/23 34/25
35/15 37/6 38/4 38/16 42/5 44/23 52/25 54/10
57/8 67/14 69/5 69/20 75/25 84/11 88/14 89/4
93/2 93/11 94/4 102/6 103/18 104/8 104/16
104/24 106/15 109/13 124/12
number [25] 4/12 6/23 8/10 8/11 8/12 8/14
8/15 15/23 19/6 19/7 27/3 27/10 28/21 29/14
29/16 30/19 36/5 70/17 78/19 80/20 81/15
81/18 83/19 87/12 104/9
numbers [5] 26/23 72/11 72/13 72/20 72/25
numerous [1] 109/15

**O**

oath [7] 7/1 44/25 105/8 106/2 106/12 108/24
109/13
object [7] 8/13 13/24 29/21 33/14 33/17 33/18
51/22
objection [38] 16/18 31/10 32/13 32/14 39/17
40/17 52/3 53/23 54/16 55/2 58/11 59/14
67/17 73/22 74/10 76/6 78/24 79/15 80/7
83/11 83/17 84/22 85/4 88/11 90/12 93/5
95/10 95/22 100/10 100/24 102/9 108/5 111/8
116/5 118/10 118/15 122/2 124/21
objections [1] 88/17
obligation [1] 38/1

**O**

obligations [1] 42/20
observed [1] 106/7
obtain [1] 31/24
obviously [2] 39/7 40/10
occasion [5] 59/22 67/7 81/8 92/24 93/3
Occasionally [1] 102/22
occurred [1] 48/23
occurrence [1] 83/6
October [1] 78/13
October 2012 [1] 78/13
off [37] 34/21 51/14
offer [3] 9/9 14/24 21/3
offered [1] 10/17
office [9] 31/18 31/22 32/3 42/2 52/21 52/21 55/21 57/20 57/22
officer [3] 82/6 82/7 82/9
offices [5] 2/15 103/20 103/24 106/22 108/18
often [2] 103/22 108/18
okay [25] 6/8 6/21 16/25 21/14 21/21 22/5 23/9 23/25 25/10 28/9 31/9 35/23 35/25 41/19 43/6 46/15 65/13 66/15 66/16 67/12 71/24 86/21 115/2 120/25 122/8
old [2] 5/1 15/16
once [2] 76/23 76/24
one [37] 5/1 6/11 8/10 8/12 8/14 14/8 14/20 14/24 15/16 17/7 19/6 20/14 24/6 26/12 29/15 31/15 38/19 41/20 60/14 61/14 62/18 63/12 67/5 67/15 76/20 78/21 81/23 82/16 86/14 92/19 92/21 93/3 93/12 99/7 102/12 102/17 123/25
one-year-old [2] 5/1 15/16
ones [5] 72/2 73/20 81/22 82/24 82/24
ongoing [1] 25/15
only [4] 7/24 15/9 51/17 85/25
open [1] 39/21
opens [3] 24/4 24/4 61/21
operation [1] 83/7
opinions [2] 85/8 125/17
opportunity [14] 18/3 18/5 26/16 27/7 27/18 28/17 29/21 30/21 32/22 32/23 33/14 33/15 34/14 124/15
opposed [2] 56/7 63/6 68/7
opposing [2] 52/20 89/16
opposite [1] 55/20
opposition [2] 7/4 18/3
oppressive [1] 14/2
option [2] 61/21 62/11
oral [4] 28/3 30/5 30/6 30/7
orally [1] 30/7
order [22] 8/20 8/25 10/18 13/15 27/24 28/1 28/3 30/5 30/6 30/6 30/7 31/17 31/21 32/14 33/3 33/7 33/9 33/11 66/6 90/5 91/11 92/13
ordered [1] 28/19
original [1] 68/10
other [62] 4/24 5/11 6/11 7/23 9/15 10/7 12/8 12/25 21/5 24/21 25/9 25/16 28/20 28/23 29/3 31/5 31/7 31/15 32/9 33/11 36/12 38/19 40/1 40/19 41/20 51/14 60/8 63/4 67/21 72/25 73/19 74/7 75/23 76/12 78/23 82/14 82/20 82/21 83/2 83/20 83/24 84/6 84/9 86/12 86/12 86/18 87/8 88/15 88/20 89/5 89/14 94/20 96/12 98/15 98/20 101/22 102/17 102/18 102/19 102/21 102/24
others [1] 110/1
otherwise [3] 11/15 11/16 65/6
Ouellette [1] 95/18
our [14] 4/17 14/13 14/16 17/20 20/21 24/22 25/2 37/25 42/7 42/20 52/20 82/16 86/13 91/13
out [13] 7/25 11/12 13/10 21/9 29/21 30/4 30/4 36/14 38/2 50/21 63/18 64/7 119/12
outlined [1] 7/9 10/19
outside [9] 22/20 22/22 23/6 24/10 24/12 30/10 51/16 51/21 67/1
over [5] 25/23 26/17 59/11 62/25 83/15
overall [1] 86/16
overbroad [1] 18/13
Overruled [29] 47/4 53/24 54/18 55/4 58/12

59/15 67/18 71/20 73/23 76/7 78/25 80/8
86/19 94/24 94/25 95/4 95/21 95/22 96/9
96/15 97/15 100/12 100/25 102/10 108/6
110/8 114/8 116/6 123/3
owed [1] 104/12
own [5] 5/5 11/22 13/16 38/8 80/24

**P**

page [13] 26/1 26/15 26/15 66/17 71/13 72/11 72/13 72/17 72/20 72/25 75/17 120/12 126/11
Page 1 [1] 72/17
page 18 [2] 26/15 120/12
page 25 [1] 26/1
pages [1] 27/14
paid [2] 13/12 109/8
Pandora's [1] 24/4
paper [2] 18/19 30/22
papers [18] 4/17 7/9 8/8 8/10 10/19 12/11 14/13 14/17 17/20 18/10 18/16 20/21 21/23 22/11 22/15 24/22 25/2 31/11
paragraph [2] 45/8 113/11
paralegals [2] 6/24 7/6
paraphrasing [1] 39/22
part [11] 9/18 9/21 19/1 32/11 32/25 33/19 36/24 54/11 76/22 86/16 108/9
parte [1] 13/14
participate [3] 46/11 114/24 115/4
particular [2] 13/23 86/15
parties [4] 32/22 35/9 35/12 89/17
parties' [1] 35/14
party [1] 83/4
past [1] 44/18
patent [1] 100/22
pay [1] 32/5
payment [9] 105/14 106/10 117/21 118/5
119/5 120/21 121/13 124/11 125/11
pending [1] 99/19
per [1] 15/12
percipient [1] 20/22
perform [1] 98/21
performed [1] 100/9
perhaps [4] 10/2 30/7 59/3 63/23
period [2] 78/12 78/18 99/7
permission [1] 14/11
permit [1] 32/25
permitted [4] 12/3 12/4 20/12 98/21
person [4] 93/11 102/18 102/19 103/14
personal [3] 79/8 82/2 90/3
personally [1] 14/25
Phan [2] 75/18 95/6
phone [33] 16/8 39/2 40/15 45/4 46/1 46/11
46/25 54/10 54/15 55/6 66/24 66/25 67/1
67/2 67/19 67/23 69/17 70/6 73/19 74/5 74/23
75/20 93/12 93/13 103/3 103/4 103/5 103/10
111/22 113/7 114/19 116/17
phones [12] 59/8 59/9 59/9 59/13 67/10 68/20
73/14 73/17 74/8 77/4 77/4 77/9
picture [1] 70/6
piece [2] 28/20 60/18
pieces [3] 28/25 29/8 29/8
place [3] 7/17 29/14 55/7
placed [3] 19/11 72/20 89/3
plainly [2] 5/11 14/16
Plaintiff [2] 1/10 2/2
PLAINTIFF'S [2] 3/4 3/6
plaintiffs [1] 81/19
plane [2] 13/10 22/2
planning [1] 42/18
plans [1] 40/20
pleasant [1] 7/4
please [39] 18/17 23/15 38/21 43/24 44/3
45/8 56/22 61/7 66/9 66/12 66/22 68/23 68/24
69/5 69/10 70/23 72/15 73/5 73/25 74/2
75/15 77/23 85/7 85/10 97/24 98/3 113/11
115/3 119/16 119/17 119/18 122/4 122/6
123/20 124/8 125/9 125/16 125/18
point [31] 10/11 11/14 11/24 12/4 13/8
13/19 13/23 15/5 16/6 20/14 21/4 21/5 21/23
25/6 26/22 27/6 30/2 36/14 36/17 41/10 46/17

50/19 50/22 61/21 73/19 88/22 99/3 100/20
106/21 143/6
points [4] 6/23 12/8 22/15 50/4
police [3] 82/6 82/7 82/9
portion [2] 102/11 110/19
posed [1] 86/1
position [6] 7/21 9/13 17/20 26/11 33/21
57/18
possession [1] 16/8
possible [6] 25/4 41/7 68/11 102/16
possibly [3] 19/16 20/2 50/17
post [1] 34/24
posts [3] 22/24 24/5 24/21
potential [2] 23/21 51/9
practice [2] 34/18 52/17
precise [1] 53/25
prefer [1] 15/25
prejudice [3] 23/21 23/21 51/4
prejudicial [1] 40/21
preparation [1] 20/25
prepared [4] 6/25 15/24 17/19 28/15
preparing [2] 19/13 19/14
presence [5] 15/8 22/20 22/22 22/24 23/6
24/10 24/12 29/22 30/11
present [17] 4/2 4/9 6/24 11/24 33/19 43/10
43/18 80/3 85/11 86/11 86/24 101/20 101/21
101/21 101/22 102/11 102/17
presentation [2] 5/5 11/19
presented [3] 4/22 13/25 15/6
presently [1] 84/20
preservation [1] 68/9
preserves [1] 68/10
PRESIDING [1] 1/8
press [13] 31/18 31/23 31/24 32/2 32/6 32/6
32/10 32/20 32/25 33/1 33/17 33/19 34/1
pretty [1] 36/12
previous [1] 57/18
previously [11] 34/2 39/9 39/15 44/24 57/8
72/2 74/23 78/8 98/13 105/8 106/1
primarily [2] 52/18
primary [1] 100/14
prior [2] 35/2 93/2
privilege [5] 32/10 42/8 42/12 42/13 51/10
privileged [3] 42/5 42/23 51/12
PRO [1] 2/14
probably [6] 35/4 36/22 64/12 64/13 81/16
100/20
problem [2] 8/11 50/24
proceed [3] 18/22 31/13 74/16
proceeding [3] 50/18 109/25 110/6
proceedings [4] 1/15 43/9 86/23 126/10
proceeds [3] 47/24 116/13 116/21
process [4] 4/25 14/11 32/15 61/22
processed [1] 60/5
produced [3] 37/24 42/4 42/19
production [1] 37/2
products [1] 57/25
proffered [1] 5/3
program [17] 15/8 62/23 63/3 63/5 63/6 63/10
63/22 90/20 90/25 91/7 91/12 91/20 91/21
91/24 92/6 96/19 97/11
programming [1] 5/14
proper [4] 9/17 20/17 28/20 75/10
property [2] 99/12 99/25
propose [2] 85/16
proposing [1] 85/19
prosecuting [1] 74/25
prosecution [2] 65/17 100/8
prospect [1] 53/1
prove [4] 8/5 8/8 15/4 15/5
provide [6] 6/25 26/13 27/18 28/15 28/18 32/2
55/24 66/25 86/2
provided [22] 5/13 8/9 13/23 16/7 16/15
17/11 17/18 23/15 26/7 27/13 27/20 28/14
28/19 28/24 29/2 33/14 42/22 58/23 60/5 60/7
60/8 104/4
providing [3] 13/21 32/16 41/23
public [8] 32/2 32/7 32/11 32/23 33/9 33/18
33/20 34/7

**P**

published [1] 6/18
pull [1] 44/4
purchased [1] 76/15
purportedly [1] 75/18
purpose [5] 12/2 23/1 38/24 92/7 92/9
purposely [5] 24/20 109/2 109/4
purposes [5] 90/4 90/8 90/11 92/20 92/21
pursuant [2] 27/24 126/7
Pursue [1] 88/25
put [21] 5/20 7/21 10/18 11/9 12/4 12/18
12/19 13/2 14/16 18/19 26/11 28/15 30/22
34/22 35/1 35/11 36/19 72/12 92/6 95/17
109/24
puts [2] 5/25 41/10
putting [1] 34/21
puzzled [1] 18/23

**Q**

qualification [2] 10/3 10/4
qualified [1] 10/17
quash [11] 4/13 5/18 7/15 10/17 12/23 14/16
14/20 15/17 17/1 18/8 18/12
queried [1] 26/22
question [28] 8/2 9/6 16/23 25/19 40/17 45/9
48/21 49/4 49/8 50/19 50/25 51/1 51/12 56/3
70/15 73/24 75/19 84/3 86/14 87/7 93/6 100/6
103/9 113/12 114/12 114/12 114/12 120/2 122/9
questioned [1] 22/22
questioning [2] 22/19 40/4
questions [18] 5/16 11/1 14/17 17/20 25/9
39/16 55/14 86/1 86/5 93/19 93/21 93/21
95/14 96/8 104/9 104/12 115/2 122/7
quick [1] 22/15
QuickBooks [8] 37/2 37/3 62/12 62/14 62/15
62/18 62/21 66/2
quickly [1] 64/7 64/15
quintessential [1] 41/10
quite [1] 99/24
quotes [1] 25/21

**R**

raise [1] 41/20
raised [5] 23/24 34/1 39/19 86/14
raises [1] 28/21
range [2] 79/24 81/18
rare [1] 59/16
rate [1] 92/22
rather [1] 17/21 125/10
re [1] 7/13
re-serve [1] 7/13
reach [1] 5/8
read [26] 5/4 17/18 23/17 25/17 25/18 49/2
49/4 54/14 54/22 56/5 74/1 74/17 74/20
106/19 110/11 111/6 111/8 111/10 111/17
114/2 119/14 120/22 121/23 123/20 124/8
125/9
reading [6] 23/24 24/3 105/20 120/3 120/7
122/8
reads [1] 120/18
Reagan [1] 2/10
really [6] 4/20 13/19 21/6 64/24 66/1 101/1
reason [5] 5/18 7/9 7/15 9/19 21/6 22/18
23/10 32/9 32/10 33/4 42/19 97/12 120/9
122/25 123/4
reasonable [5] 14/13 28/16 64/9 64/10 65/11
reasons [5] 4/22 14/16 15/17 24/22 24/23
rebuttal [1] 17/24
recall [46] 26/21 27/2 45/6 45/11 55/21 56/2
61/5 62/20 62/25 65/11 78/23 79/1 79/2 79/8
81/4 82/2 82/6 82/14 87/11 87/22 88/8 88/15
89/5 89/7 93/11 93/14 93/19 93/21 95/15
99/10 99/16 100/21 100/22 101/1 101/2 101/4
101/8 101/25 102/23 104/12 104/18 111/19
112/23 113/8 113/14 122/2
recalling [1] 79/11
receipt [1] 123/21
receive [2] 36/20 60/10
received [11] 3/7 3/13 8/10 20/16 41/22 58/16

58/17 119/22 120/9 122/21 124/2
recent [1] 66/11
receptionist [2] 91/14 95/18
recess [7] 43/6 43/8 86/21 86/22 125/21
reciprocal [1] 41/24
recognize [1] 122/23
recollect [1] 31/8
recollection [28] 14/23 45/1 45/10 53/25
57/13 78/11 79/18 81/6 87/2 87/7 87/17 89/4
93/18 99/20 101/5 101/15 102/2 102/8 103/9
103/19 109/2 109/4 113/4 113/13 117/12
117/13 117/15 123/16
record [9] 9/21 10/18 11/11 11/20 31/10 37/6
74/20
records [9] 8/23 9/4 9/7 9/7 11/9 11/17 14/6
16/8 33/18
recounted [1] 45/3 112/25 113/6
RECROSS [2] 3/4 3/9
REDIRECT [2] 3/4 3/9 55/17 96/9
refer [1] 66/14
reference [4] 52/10 53/12 56/6 90/3
referenced [2] 28/3 55/1
references [1] 37/10
referred [1] 40/6
referring [4] 42/1 53/14 123/23 124/4
reflect [2] 30/21 92/1
reflected [2] 74/8 74/9
reflecting [1] 24/21
reflection [2] 106/4 113/1
refresh [7] 45/9 57/13 78/11 87/2 87/7 102/3
113/12
refreshed [1] 89/4
regard [6] 8/23 31/16 41/21 51/25 86/10 95/5
regarding [3] 36/6 94/14 109/11
regards [1] 16/17
Regnier [13] 10/20 11/4 37/7 38/6 38/15
45/13 54/25 55/12 56/1 56/6 97/5 97/10
113/16
Regnier's [2] 12/21 36/15
regular [3] 82/11 83/6 103/20
regularly [4] 80/2 81/1 88/20 94/5
regulations [1] 126/12
relate [1] 41/25
related [8] 33/26 60/2 73/17 83/6 83/25 84/1
104/16 125/11
relates [6] 11/19 12/20 12/21 24/5 50/25
77/11
relating [20] 7/1 12/24 12/25 19/7 19/10
19/17 24/17 29/14 30/14 31/10 32/16 58/16
58/18 62/23 69/17 86/19 93/15 104/10 120/2
124/10
relationship [2] 39/10 41/9
released [1] 112/11
relevance [11] 16/17 21/2 58/11 76/6 78/24
85/4 88/11 88/18 90/12 91/1 95/3
relevant [15] 5/3 5/16 6/12 15/1 15/14 18/14
19/17 19/19 19/23 20/1 29/7 39/8 39/9 41/15
50/12
reliance [1] 15/21
relief [1] 12/25
rely [1] 9/24
relying [1] 9/4
remain [1] 27/15
remedy [1] 26/5
remember [18] 61/1 85/7 99/14 99/18 99/23
101/7 102/1 102/1 102/4 102/14 102/15
102/25 103/12 103/21 103/21 110/17 120/8
125/16
remembered [1] 37/20
Remoun [1] 43/15
repeat [2] 32/14 31/12 73/24
repeatedly [1] 37/25
rephrase [3] 74/3 74/13 84/3
replied [1] 22/9
report [12] 66/21 66/22 67/1 68/3 69/2 69/7
69/12 69/17 71/15 71/18 72/5 89/13
reported [1] 37/20
reporter [2] 23/25 126/17
REPORTER'S [1] 1/15

reports [5] 67/16 71/25 73/20 74/9 74/23
represent [1] 50/4
representation [7] 27/3 37/8 38/16 103/2
124/9 124/16 124/17
representations [2] 30/25 124/10
represented [17] 39/10 39/12 39/15 39/24
39/25 40/24 41/2 41/11 41/13 50/3 50/6 50/22
52/7 82/9 102/23 119/4 120/20
representing [3] 40/18 52/11 53/1
request [18] 13/3 14/13 22/19 22/21 23/5
28/2 29/13 31/15 31/21 31/22 31/22 32/4 32/4
32/19 33/13 34/10 75/9 87/9
requests [2] 32/15 32/20 34/3
require [3] 4/25 5/6 13/13
required [2] 7/11 83/20
rescind [1] 33/3 33/7 33/9 33/10
research [4] 85/10 98/25 100/1 125/19
reserve [2] 18/16 86/12
respond [10] 18/6 20/13 25/1 25/3 27/18 29/2
32/22 33/15 34/15 121/18
responded [5] 45/25 47/20 114/18 116/9
121/21
response [16] 5/17 21/18 25/8 26/7 26/8
26/11 28/11 28/15 28/18 35/14 36/11 36/1
36/19 57/24 112/19 123/9
responsibility [2] 100/14 100/17
result [1] 39/7
resulting [1] 60/7
resume [1] 125/15
resumed [2] 43/9 86/23
retained [1] 101/4
retired [2] 101/24 102/1
revenue [1] 20/11
review [5] 14/7 72/9 92/24 122/6 123/12
reviewed [6] 19/23 19/23 22/10 27/1 27/14
74/23
right [136]
right-hand [1] 72/15
rights [2] 29/18 29/24
Robert [1] 26/9
Robertson [2] 23/3 23/4
role [3] 24/14 74/22 98/18
Ronald [1] 2/10
room [4] 106/5 107/11 109/12 113/1
Rose [11] 4/23 5/10 7/2 10/7 11/7 11/8 12/15
12/24 13/7 14/22 16/24
Rose's [4] 4/13 14/15
RPR [1] 1/19
rule [13] 4/24 8/22 11/13 27/17 29/17 29/24
30/12 31/5 32/17 34/13 42/11 42/13 86/10
ruling [1] 21/22
run [1] 25/16
running [5] 64/11 64/15 67/21 83/24 84/6
runs [1] 61/22

**S**

SACR [3] 1/11 4/3 43/11
SACR-19-00061-JVS [1] 1/11 4/3 43/11
SAGEL [13] 2/9 4/5 35/19 37/7 38/4 38/7 38/9
38/13 43/14 65/16 104/9 111/3 111/14
Sager [2] 4/14 13/5
said [22] 6/12 8/21 11/4 13/21 18/15 19/16
20/2 20/21 25/9 25/23 36/16 36/16 37/17
37/18 37/25 38/4 39/20 49/25 54/8 66/6 76/11
95/17
same [14] 6/16 36/11 38/4 69/7 69/12 77/5
84/17 88/17 95/11 95/11 110/16 112/24 112/24
122/16
sample [1] 25/18
San [2] 2/16 53/5
Santa [1] 1/16 1/20 2/11 4/1
sat [2] 23/11 23/16
saw [6] 104/1 106/3 107/5 107/5 107/10
124/1
say [13] 3/7 14/12 14/12 16/6 29/5 39/2
41/11 41/13 53/14 61/24 66/22 67/2 109/20
117/11
saying [3] 51/8 61/25 125/7
says [1] 6/5

**S**

scheduled [1] 22/2
scheduling [1] 21/2
scheme [1] 86/17
school [1] 58/3
science [3] 58/9 58/9 58/10
scope [8] 40/9 51/16 51/21 51/22 96/14 96/21 97/6 97/14
screen [2] 66/15 120/6
screenshot [5] 72/4 72/6 72/12 75/4 75/11
screenshots [5] 72/12 72/19 75/6 75/8 77/9
scrolling [1] 22/12
SE [1] 2/14
seal [1] 32/9
sealing [1] 28/2
search [2] 64/18 64/21
searches [1] 60/6
Secondly [1] 25/18
seconds [2] 23/15 64/23
Section [2] 2/6 126/7
security [2] 57/20 58/1 58/14
see [18] 18/16 21/2 24/8 52/9 56/6 66/1 66/7 66/17 67/25 72/3 72/11 103/23 104/5 110/22 119/9 119/20 120/5 125/20
seeing [6] 23/1 24/6 52/5 103/19 103/21 120/8
seeking [1] 27/10
seem [1] 99/22
seemed [2] 26/12 46/16
seems [4] 14/25 65/11 115/15 119/25
seen [2] 35/23 107/4
sees [1] 62/5
SEFFENS [3] 1/19 126/16 126/17
SELNA [1] 1/8
Selna.pdf [1] 35/21
send [1] 119/12
senior [2] 57/15 89/14
sense [3] 11/18 23/17 24/3
sent [15] 35/8 35/11 35/18 35/21 53/11 92/25 119/12 122/1 122/18 122/20 123/9 123/21 123/24 123/25 124/1
sentence [6] 123/20 124/8 124/12 124/13 124/18 125/9
separate [2] 30/13 81/22
separately [1] 41/15
serious [1] 12/13
serve [3] 7/13 12/25 112/15
served [2] 16/24 35/13
server [3] 60/4 64/1 64/8
servers [20] 59/23 60/2 60/11 61/1 61/2 61/3 61/4 61/17 62/6 62/13 63/2 63/6 63/10 63/16 63/19 65/6 65/19 65/23 75/6 75/8
service [16] 4/21 7/5 13/17 18/12 18/24 18/25 19/1 19/2 19/4 19/5 20/15 20/16 20/17 20/18 20/18 27/16
services [1] 7/1
serving [1] 7/3
set [4] 13/22 14/9 15/11 64/11
settlement [14] 47/24 48/6 103/15 103/18 105/10 105/14 106/10 107/15 107/18 116/13 116/20 118/22 120/21 124/11
settlements [2] 20/11 94/14
seven [1] 19/1
several [2] 4/22 67/10
share [1] 6/20
SHARON [3] 1/19 126/16 126/17
she [74] 7/4 7/5 7/7 7/8 7/12 10/24 13/10 13/11 13/12 14/22 14/25 19/12 19/17 20/16 20/23 20/24 21/2 21/7 21/24 22/14 22/14 24/15 25/5 25/22 25/22 25/23 26/2 36/15 36/16 36/17 37/19 37/23 38/11 39/1 39/2 39/3 39/3 39/4 39/7 39/9 39/12 39/14 39/15 39/24 39/25 40/5 40/12 40/13 40/18 40/23 40/24 41/2 41/3 41/8 41/11 41/13 41/14 47/21 47/22 50/2 50/5 50/6 50/22 51/4 51/8 51/11 52/6 52/6 85/14 95/20 116/10 116/11 116/18 116/18
she's [1] 40/13
Sheikh [2] 102/25 103/10
Shoen [3] 15/2 15/3 15/13

short [3] 4/16 7/20 15/15
shortcut [29] 108/24
shortly [1] 112/14
should [32] 7/14 7/20 11/8 12/3 12/24 14/16 20/12 24/11 24/13 24/16 24/18 24/23 26/5 28/14 29/1 29/5 29/7 30/24 33/3 33/7 33/9 33/10 33/12 33/13 36/1 39/23 40/4 42/9 42/10 51/14 51/18 66/9
shouldn't [3] 32/10 32/25 33/1
show [5] 7/23 10/23 11/3 16/9 75/17
showed [1] 14/8
shown [4] 38/5 118/25 119/7 120/13
shut [1] 109/20
side [5] 6/10 14/21 101/22 102/21 102/24
sidebar [5] 40/22 41/18 49/23 49/24 52/15
sidebars [1] 34/1
sides [2] 52/20 55/20
sign [1] 122/16
signal [1] 106/9
signature [4] 122/9 122/22 122/24 123/1
signed [6] 122/14 122/17 123/12 123/14 124/25 125/2
significant [3] 26/23 27/3 30/11
similar [4] 28/25 33/25 71/24 124/3
simple [1] 10/15
simply [1] 9/25
since [6] 45/20 57/18 57/18 84/11 84/12 113/23
singular [1] 20/14
sir [42] 11/12 11/22 12/7 17/4 17/8 25/12 29/10 30/20 33/14 34/6 40/8 42/21 43/5 46/9 48/25 62/25 66/17 70/4 72/10 72/21 73/19 75/12 77/17 78/15 79/18 83/14 84/5 87/22 89/1 89/22 96/25 97/21 97/23 104/5 106/1 109/2 110/22 115/12 119/9 119/20 121/11 121/25
sit [4] 63/9 63/15 93/19 123/17
site [1] 16/9
sitting [1] 105/20
situation [2] 23/8 23/23 23/23
six [4] 78/15 78/18 84/5 87/9
six-and-a-half-year [1] 78/18
Sixth [1] 29/17
size [2] 61/1 61/2
slander [2] 47/12 47/17 115/25
small [1] 79/10
smaller [1] 79/3
SMS [2] 66/20 67/23
snippets [1] 25/15
so [106] 6/2 6/9 6/13 8/14 8/19 11/1 12/23 16/15 16/16 17/14 18/5 18/5 19/1 19/4 19/16 20/17 21/2 21/5 21/7 22/2 23/20 26/2 27/17 27/20 28/11 28/12 29/2 30/2 30/9 31/9 31/21 34/1 34/5 34/25 35/21 39/7 40/3 41/7 41/11 42/9 42/21 45/12 45/17 46/3 46/10 52/13 52/20 53/16 53/20 55/5 58/1 59/9 60/10 60/25 61/8 61/20 65/12 67/12 68/2 71/17 72/19 73/15 76/24 77/3 77/15 78/20 80/19 81/17 81/23 82/25 86/4 86/13 86/18 90/5 91/5 92/21 96/18 98/17 99/5 104/2 104/19 104/22 106/20 107/16 109/10 110/9 110/17 111/18 113/15 113/20 114/3 114/21 115/13 116/7 116/22 117/10 117/11 118/24 119/1 120/11 120/13 120/25 121/14 124/12 125/20
social [3] 22/24 24/5 24/20
software [4] 60/18 67/21 77/11 95/21
some [29] 11/1 20/16 21/4 26/12 30/5 32/9 32/9 40/1 40/18 44/24 51/13 63/23 68/5 72/8 72/19 73/1 79/8 84/13 87/7 89/23 90/1 90/7 90/15 92/7 92/18 95/13 99/3 100/20 104/3
somebody [1] 34/6
somehow [1] 20/1
someone [2] 14/7 103/5
something [15] 5/5 14/15 18/21 25/8 26/25 27/7 33/6 34/19 34/23 36/6 36/7 36/11 39/21 104/15 107/7
sometime [1] 59/3
sometimes [4] 52/20 52/23 52/24 55/20 65/1 83/15

soon [1] 20/18
sorry [7] 5/4 33/8 90/17 96/21 97/6 99/24 123/2
sort [1] 6/14
sought [1] 9/6
sound [3] 65/9 68/17 102/4
sounded [2] 46/6 115/9
sounds [3] 13/24 65/8 102/16
sources [4] 7/16 15/4 15/10 15/11
SOUTHERN [1] 1/6 79/14 79/20
Spanish [2] 80/5 80/12
speaker [1] 80/12
speaking [11] 5/12 35/17 37/14 45/22 71/25 72/17 113/25 114/5 114/10 114/13 114/15
Special [2] 43/15 65/17
specialized [1] 59/10
specific [5] 22/21 26/22 27/5 27/7 93/18
specifically [8] 17/23 22/11 27/2 62/14 62/21 65/11 86/20 125/10
speculation [2] 53/23 97/7
spell [4] 44/3 56/22 77/23 98/3
spelled [1] 103/1
spent [1] 68/4
spoke [3] 6/12 44/20 51/12
spoken [3] 44/18 114/22 114/23
spreadsheet [1] 90/2 95/17
spreadsheets [3] 62/8 90/6 91/13
Spring [1] 2/7
stand [8] 7/20 9/6 10/13 10/24 20/3 38/15 98/1 111/20
standard [1] 73/8
started [3] 99/3 99/17 110/16
starting [1] 25/22
state [7] 21/9 44/3 44/14 52/23 56/22 77/23 98/3
stated [3] 49/11 61/14 125/5
STATES [16] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/4 4/6 23/4 35/20 43/12 43/14 126/8 126/12
status [2] 7/11 67/20
stay [1] 25/25
stealing [4] 46/22 47/1 47/16 115/21
stenographically [1] 126/9
step [2] 77/17 85/12
steps [1] 107/17
STEWARD [7] 2/15 2/15 4/9 17/19 19/3 35/19 43/18
still [12] 8/24 10/25 10/25 16/14 16/18 30/14 30/15 64/3 102/4 107/7 121/8 123/18
stipulate [2] 8/1 88/23
stole [2] 46/18 115/17
stop [3] 94/10 104/24 106/9
stopped [2] 29/10 107/12
storm [1] 24/17
story [3] 45/4 112/25 113/7
Street [4] 1/20 2/7 2/11 105/20
stressful [1] 25/24
stricken [4] 70/1 103/7 108/11 110/21
strike [28] 22/8 26/18 27/11 58/17 64/1 68/4 69/24 72/7 75/25 79/19 81/9 84/11 92/15 96/25 99/1 100/17 100/21 101/4 103/6 104/8 107/1 108/9 110/19 111/19 115/5 120/18 121/25 125/2
struck [1] 24/24
structural [3] 29/16 29/23 31/12
studio [1] 10/14
studios [1] 5/24
subject [2] 35/20 101/1
submit [6] 18/3 25/2 25/7 27/4 29/6 33/5
submitted [4] 30/17 30/17 85/9 125/18
submitting [1] 29/7
subpoena [31] 4/22 5/18 7/1 7/3 7/5 7/15 10/17 11/8 12/23 13/8 13/16 13/19 14/3 14/15 14/20 15/17 16/11 16/23 17/1 17/3 18/9 18/12 18/13 18/25 20/20 21/8 35/12 112/1 112/12 112/16 112/19
subpoenaed [2] 112/2 112/21
subsequently [1] 19/4
substance [2] 26/23 31/3
substantial [2] 16/23 25/19

**S**

**substantive [4]** 14/23 26/12 29/11 30/2

**such [6]** 4/16 15/13 26/4 55/10 58/21 109/22

**sufficient [3]** 15/6 15/11 86/16

**sufficiently [1]** 20/8

**suggested [2]** 11/16 14/24

**suggesting [3]** 11/15 40/18 43/2

**suggestion [2]** 39/25 85/25

**suggests [1]** 73/1

**suit [1]** 85/15

**Suite [1]** 1/20 2/11 2/16

**summary [1]** 19/10

**Sunday [1]** 41/22

**supervision [1]** 98/18

**support [1]** 23/5

**suppose [2]** 21/4 34/6

**supposed [5]** 8/16 11/19 24/2 24/6 24/8

**supposedly [1]** 24/17

**sure [16]** 34/17 39/20 48/15 65/15 66/6 68/14 68/16 71/16 71/17 71/23 99/17 99/19 102/15 117/5 120/7 124/1

**surgery [1]** 82/8

**suspicious [2]** 46/16 115/15

**sustained [16]** 40/17 74/11 79/16 83/12 85/5 87/20 88/12 90/18 91/9 92/3 96/23 97/8 110/3 118/11 118/16 124/23

**sworn [4]** 44/2 56/21 77/22 98/2 108/18 114/4 115/6

**Syracuse [1]** 58/7

**system [3]** 64/15 93/20 95/14

**systems [1]** 93/16

---

**T**

**table [1]** 43/15

**Tabs [27]** 36/6 36/16 36/17 37/2 37/8 37/10 37/11 37/19 37/23 38/7 38/11 38/14 62/23 63/3 63/4 63/7 63/10 63/15 63/18 63/21 63/23 64/6 64/7 64/19 66/7 90/15 90/20

**take [21]** 4/12 4/19 8/16 10/17 17/10 17/14 30/20 34/7 34/25 35/2 36/1 45/8 64/21 64/23 65/3 85/6 107/17 113/11 120/1 122/6 125/14

**taken [8]** 18/4 29/11 43/8 68/1 75/6 75/8 86/22 125/21

**takes [2]** 64/16 65/1

**taking [3]** 17/4 72/12 111/20

**talk [1]** 24/15

**talked [3]** 31/25 50/16 95/9

**talking [3]** 68/5 105/13 107/12

**tasks [2]** 98/23 98/24

**taught [1]** 59/5

**team [2]** 60/9 65/18

**technology [2]** 70/12 70/16

**telephone [1]** 48/23

**tell [11]** 32/24 33/3 38/13 47/15 48/3 61/7 71/10 107/1 107/2 114/9 118/7

**telling [4]** 26/11 47/20 116/9 124/13

**temporal [1]** 51/17

**ten [6]** 12/1 19/1 64/14 64/17 64/19 99/5

**tender [1]** 7/14

**tendered [2]** 7/7 7/8

**tends [1]** 11/13

**terabyte [2]** 61/7 61/8

**terabytes [1]** 61/5

**terms [1]** 20/20

**testified [11]** 19/7 39/3 53/7 54/10 54/17 55/13 57/8 67/5 78/8 89/10 97/10 102/6 105/21 108/24 111/2 111/13 112/8

**testify [12]** 6/18 7/6 12/12 13/2 18/15 24/21 39/4 44/23 93/2 112/2 112/3 112/19

**testifying [1]** 7/20 24/18

**testimony [41]** 6/25 12/21 14/23 20/3 20/6 20/7 20/25 21/3 21/6 22/8 23/12 23/17 23/19 24/23 25/21 26/14 26/18 30/21 38/15 38/24 38/25 39/1 42/24 48/25 54/13 54/16 54/20 55/24 56/5 71/12 72/21 88/21 95/23 101/2 102/9 104/3 108/19 112/22 114/5 114/6 115/6

**text [9]** 51/23 52/4 66/20 67/25 73/2 75/4 75/18 77/8 77/10

**texted [4]** 45/17 45/24 113/20 114/17

**than [19]** 4/21 5/1 5/18 20/24 21/6 33/18 37/3 48/7 54/12 58/9 60/24 61/3 61/12 72/20 84/9 89/9 89/14 94/20 102/17

**Thank [38]** 4/15 6/21 13/4 14/19 15/18 15/19 16/4 16/21 22/5 22/6 27/9 35/7 36/21 40/25 43/5 44/8 55/14 55/15 56/11 56/16 56/17 57/2 68/25 74/19 75/14 77/17 78/2 86/9 89/1 93/24 96/7 97/19 97/23 98/7 107/8 114/16 115/2 125/20

**that [656]**

**that's [95]** 5/2 6/15 8/14 9/18 11/5 13/17 14/5 14/6 14/6 14/15 14/20 16/19 19/23 20/25 22/3 23/23 24/9 26/1 27/8 28/20 29/5 29/10 32/11 33/19 34/5 34/11 35/6 37/15 37/17 37/17 37/18 37/20 37/21 38/12 40/6 40/7 40/19 41/4 42/12 43/2 43/3 43/4 45/19 45/23 46/4 46/7 46/18 48/12 48/13 49/22 50/15 51/7 51/25 52/12 52/13 53/2 53/8 53/15 53/17 54/19 59/25 60/16 64/19 67/5 68/15 76/17 78/22 79/6 79/11 80/9 80/25 83/5 84/10 88/5 89/12 95/19 103/25 105/11 106/10 107/13 109/7 109/21 112/18 113/22 114/1 114/12 115/7 115/10 115/17 117/2 117/3 120/13 120/14

**theater [1]** 14/1

**their [13]** 14/2 14/6 16/17 24/16 24/19 26/8 27/3 38/8 39/10 76/16 78/11 99/12 99/16

**them [29]** 15/23 31/3 32/10 37/23 42/19 43/1 45/4 46/17 46/19 57/24 60/8 63/1 81/23 86/2 86/6 86/7 89/11 93/10 94/14 94/18 100/20 100/23 102/6 104/22 105/1 110/8 111/22 112/25 113/7 115/16 115/18 119/3

**themselves [1]** 26/4

**then [28]** 9/7 11/20 18/21 19/3 21/22 23/17 24/1 28/5 28/19 32/21 34/22 40/14 40/17 50/5 50/24 60/11 64/20 64/21 69/15 86/5 91/5 92/22 95/18 107/9 107/21 112/6 112/14 118/18

**there [65]** 6/11 8/2 12/1 12/8 15/4 15/15 17/11 18/14 19/1 20/17 21/6 21/11 21/11 23/3 23/21 25/2 25/8 25/15 25/18 25/19 26/22 27/14 28/1 28/10 29/3 30/4 30/5 30/25 31/5 31/7 31/20 32/15 40/2 41/10 49/8 50/4 51/1 51/23 52/10 61/4 63/9 64/7 68/2 72/25 81/15 83/9 87/9 89/6 90/3 92/13 93/17 93/19 96/25 99/12 100/13 100/21 100/7 101/1 101/16 101/22 102/1 103/12 104/24 105/20 112/5

**there's [8]** 5/8 5/11 12/2 16/22 16/25 32/9 39/17 51/4

**thereafter [1]** 112/14

**these [21]** 8/1 9/25 10/14 11/20 14/9 16/17 24/8 30/19 31/3 41/24 42/4 42/9 60/25 64/2 67/15 68/15 72/19 88/9 89/7 89/9 121/20

**they [65]** 5/23 8/15 8/24 9/1 9/1 9/3 9/5 9/5 9/7 10/11 10/24 10/24 10/25 10/25 11/16 13/8 13/9 14/6 17/18 19/22 24/15 24/15 24/18 24/19 28/25 29/1 29/4 37/19 37/22 37/24 37/24 37/25 38/11 38/19 39/23 40/5 40/6 41/25 42/5 42/10 42/12 42/21 42/23 48/23 51/15 58/22 64/3 72/19 76/15 76/20 80/5 81/14 92/24 95/8 107/14 107/22 107/22 109/7 111/12 112/2 119/3 121/19 121/19 121/20

**they'll [1]** 88/23

**they're [7]** 6/25 9/21 12/1 24/8 32/9 42/12 111/1

**They've [1]** 11/18

**thing [4]** 14/20 38/4 110/16 120/5

**things [13]** 4/24 13/11 24/5 25/16 28/20 33/11 36/18 44/25 60/14 61/14 62/9 64/15 67/23

**think [41]** 5/9 5/17 8/2 10/19 11/10 11/16 12/24 17/20 19/5 19/25 22/24 22/16 27/6 29/25 30/11 34/4 36/5 37/15 41/12 42/23 43/2 51/3 51/6 51/7 53/6 61/8 64/9 76/11 82/24 86/3 99/19 104/2 105/21 114/3 114/23 116/7 117/10 117/11 120/17 122/11 125/14

**thinks [2]** 107/4 107/5

**third [1]** 93/11

**this [128]**

**those [48]** 6/14 7/24 8/16 13/11 15/17 16/10 19/13 24/23 25/16 28/13 29/1 32/20 39/16 39/22 40/9 60/9 60/10 76/15 78/21 79/23 80/2 80/5 81/7 81/12 81/15 81/19 81/21 81/24 83/24 84/16 86/9 86/20 90/6 93/15 94/17 95/7 100/15 103/3 104/12 109/11 110/25 111/11 111/22 112/6

**though [4]** 8/11 59/12 65/3 75/1

**thought [6]** 30/6 30/7 49/25 55/11 86/11 108/8

**thoughts [1]** 30/22

**thousand [1]** 83/16

**thousands [3]** 80/21 80/22 83/9

**three [11]** 15/7 15/21 16/17 46/16 47/22 93/12 93/15 111/23 115/15 116/11 116/19

**throat [1]** 106/9

**through [13]** 5/13 7/17 9/4 11/18 11/25 12/4 12/5 14/11 25/16 30/18 32/3 61/22 112/6

**throughout [1]** 65/1

**thumb [1]** 68/7

**Thursday [2]** 21/9 22/2

**Thus [1]** 15/9

**time [84]** 4/19 8/3 11/5 13/23 15/20 22/13 22/20 24/12 28/16 36/1 38/4 38/18 44/20 49/18 50/15 51/11 53/4 53/20 54/1 64/9 64/10 65/2 68/5 70/25 78/6 78/18 78/23 80/14 81/9 81/9 81/25 81/25 82/18 82/18 82/19 82/19 83/2 83/3 83/9 89/10 76/16 78/11 89/14 89/23 90/4 90/7 90/10 90/23 91/5 91/11 91/15 91/23 91/25 91/25 92/1 92/5 92/7 92/9 92/12 92/12 92/20 93/12 95/17 96/11 96/18 97/1 98/16 98/19 99/7 101/16 103/22 103/23 103/23 105/1 105/2 105/10 105/12 106/21 109/21 112/8 120/1 123/14 124/2

**timekeeping [1]** 95/14

**times [12]** 9/20 16/16 38/3 38/3 61/10 76/25 83/19 93/10 93/12 93/15 111/20 111/23

**title [2]** 57/14 126/8

**today [9]** 36/24 38/23 63/9 63/15 64/6 93/19 111/20 112/18 123/17

**together [1]** 19/22 83/2

**told [39]** 8/20 10/9 13/11 16/9 16/12 24/8 27/23 37/23 44/25 45/16 46/4 46/7 46/8 46/12 46/15 46/19 47/10 48/9 49/9 66/1 94/9 109/9 110/16 110/17 113/19 115/7 115/10 115/11 115/14 115/18 115/23 116/3 116/17 116/24 117/20 118/4 118/6 121/12 124/19

**tomorrow [4]** 21/17 21/19 21/25 35/2

**too [6]** 65/4

**took [3]** 29/14 38/15 55/7

**tool [14]** 60/18 61/11 61/20 62/6 66/24 67/2 67/2 67/4 69/2 69/8 69/13 70/22 72/8 75/23

**tools [18]** 58/21 60/3 60/11 60/15 60/15 61/16 65/1 67/6 68/16 70/4 71/3 71/9 73/8 76/12 76/14 76/15 76/20 76/23

**top [5]** 68/24 72/3 73/5 119/18 122/16

**topic [3]** 93/20 93/21 97/5

**total [1]** 93/12

**totally [1]** 41/12

**touched [1]** 27/6

**tough [1]** 35/3

**towards [1]** 106/8

**track [5]** 89/23 90/5 90/6 90/7 91/5

**tracked [6]** 90/10 90/23 92/12 96/11 97/1 97/11

**tracking [2]** 92/6 92/20

**trained [1]** 67/9

**training [5]** 58/16 58/17 58/23 58/23 67/10

**transcript [13]** 1/9 1/15 5/4 23/17 23/20 26/1 29/13 37/13 37/14 54/23 115/5 126/9 126/11

**transcripts [2]** 25/15 26/4

**transfer [3]** 26/14 86/15 86/16

**travel [3]** 5/1 15/15 21/10

**traveled [1]** 7/12

**trial [23]** 1/12 9/20 22/25 24/14 24/22 25/6 25/15 26/4 29/19 30/2 32/8 32/8 32/12 33/1 33/20 33/25 34/4 34/19 34/20 34/22 34/24 110/15 111/25

**tried [3]** 4/16 63/24 90/2

**tries [1]** 57/25

## T

**true [15]** 64/5 64/8 68/1 70/19 74/9 77/12 90/8 95/5 96/25 104/21 105/5 105/15 107/3 124/20 126/8
**trustworthy [1]** 52/8
**truthful [5]** 111/1 111/12 114/6 123/15 123/18
**try [4]** 11/12 14/8 25/25 63/1
**trying [6]** 6/10 6/14 13/20 107/14 108/7 112/15
**TUESDAY [1]** 4/1
**turn [2]** 16/25 66/9
**turning [1]** 75/3
**tweet [1]** 24/17
**tweets [9]** 22/12 22/17 23/24 24/2 24/7 25/14 25/17 26/3 26/3
**twice [2]** 93/11 109/13
**two [11]** 8/11 8/15 16/16 19/7 25/23 29/16 38/14 41/23 50/4 99/19 111/24
**type [6]** 59/11 62/2 62/3 62/7 63/25 79/3
**types [2]** 60/23 62/5

## U

**U.S [6]** 45/2 52/21 55/20 93/14 113/5 126/17
**ultimately [1]** 92/7
**under [25]** 4/24 7/1 13/15 15/7 15/13 26/5 30/24 32/9 32/17 39/23 40/4 41/6 42/20 44/25 50/13 53/3 98/18 105/8 106/2 106/12 108/24 109/13 111/2 111/13 124/11
**understand [15]** 10/6 12/16 25/18 27/22 33/21 37/25 38/24 60/10 61/15 74/25 83/14 92/5 92/9 92/16 120/19
**understanding [10]** 9/11 38/22 50/7 50/8 54/19 91/23 92/11 92/19 92/21 95/20
**understood [7]** 52/13 53/3 91/19 98/21 105/22 122/20 124/2
**unfortunately [1]** 7/24
**UNITED [16]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/3 4/6 23/3 35/20 43/11 43/14 126/8 126/12
**unlawful [1]** 86/15
**unless [2]** 25/8 32/8
**unlike [1]** 42/19
**unlock [1]** 67/20
**unnoticed [1]** 29/19
**unreasonable [1]** 14/2
**unsure [1]** 72/11
**until [13]** 8/10 17/3 18/16 34/18 34/22 36/16 37/19 42/5 43/6 78/14 85/9 111/24 125/18
**untrue [3]** 125/6 125/7 125/8
**untrustworthy [1]** 50/11
**up [31]** 4/12 12/1 17/4 17/10 17/14 18/4 29/11 30/20 34/25 35/2 36/1 36/13 41/10 46/1 48/10 48/18 48/24 61/21 64/1 64/21 71/12 72/14 73/4 111/24 114/19 116/25 117/9 117/13 117/16 118/9 119/17
**upon [1]** 16/24
**us [7]** 4/16 17/11 28/19 42/5 42/10 123/21 124/15
**USA [1]** 120/20
**use [7]** 42/18 43/1 68/15 76/15 76/20 76/25 77/3
**used [17]** 60/3 60/25 66/24 67/3 67/7 67/15 71/5 71/7 71/10 73/10 73/13 76/23 91/13 92/7 92/10 92/12 93/16
**using [8]** 22/24 37/10 42/18 69/18 70/3 71/2 75/22 90/6
**usually [1]** 103/5
**utility [1]** 12/1
**utilize [4]** 60/11 60/15 64/6 68/4
**utilized [6]** 61/11 61/15 62/6 72/7 72/8 77/8
**utilizing [1]** 24/7 60/14 69/7 69/12 70/11 70/22 73/7

## V

**V-a-r-a-n-i [1]** 56/24
**Vague [1]** 84/2
**valid [1]** 13/17
**validity [2]** 67/23 68/13
**VARANI [9]** 3/11 56/20 56/21 56/24 57/6 66/14 73/7 74/5 74/15

## various [4] 16/10 94/4 104/10 109/15
**vendors [1]** 58/20
**verdict [1]** 92/13
**verify [1]** 118/23
**version [1]** 66/1
**versus [4]** 4/4 23/4 35/20 43/12
**very [12]** 5/12 7/3 17/25 30/9 31/14 32/22 39/8 41/17 64/7 72/19 100/5 101/9
**via [4]** 7/5 17/14 75/11 119/22
**video [1]** 22/11
**videos [1]** 5/19
**videotape [1]** 14/7
**videotapes [1]** 5/13
**view [2]** 28/21 29/1
**viewed [1]** 22/18
**viewing [1]** 66/25
**violation [6]** 23/12 29/17 29/24 30/12 30/12 42/14
**violations [2]** 26/20 42/11
**visit [2]** 85/16 85/17
**voiced [1]** 7/4
**voir [1]** 85/22
**VOL [1]** 1/12
**vs [1]** 1/10
**vulnerabilities [1]** 57/23

## W

**waiting [3]** 47/24 116/13 116/20
**waive [1]** 13/9
**waived [1]** 42/8
**waiver [1]** 42/24
**walk [1]** 30/18
**walking [1]** 105/19
**wall [2]** 105/20 106/4
**want [28]** 10/5 12/15 12/17 14/1 16/18 18/18 18/19 25/6 26/16 31/9 32/24 34/19 35/1 36/10 36/19 37/6 39/12 40/5 40/6 40/16 44/24 76/25 79/4 85/17 104/3 104/15 122/7 124/12
**wanted [4]** 13/13 39/16 63/18 112/14
**wants [8]** 12/12 15/5 17/22 25/2 32/4 36/3 37/18 86/1
**was [246]**
**Washington [3]** 73/12 76/2
**wasn't [4]** 13/11 33/14 71/5 100/6
**waving [1]** 106/8
**way [12]** 7/25 9/8 32/1 35/11 61/25 70/14 72/20 75/5 75/10 84/17 101/9 125/7
**ways [2]** 7/23 24/1
**we [96]** 4/12 4/16 4/17 5/9 5/17 5/17 6/10 6/11 6/13 6/16 6/17 6/19 7/2 7/3 7/13 9/19 10/16 13/18 13/20 13/23 14/7 14/12 14/16 16/6 16/9 16/12 16/17 16/18 17/1 17/6 17/16 23/24 24/7 26/17 28/5 28/9 28/10 28/11 29/2 29/4 30/5 30/14 31/10 31/12 31/16 33/24 34/1 34/20 34/22 34/23 36/1 36/7 37/25 38/2 38/3 38/19 41/22 42/9 42/10 42/13 42/20 42/21 49/25 60/3 60/16 66/11 68/4 68/23 70/14 71/12 71/25 72/2 73/4 74/3 76/8 77/9 82/9 82/16 85/6 85/16 86/4 86/21 88/23 119/7 119/16 119/17 122/4 123/23 124/9 124/16 125/10 125/14 125/15
**we'll [5]** 35/2 36/22 43/6 109/12 125/20
**we're [8]** 7/13 7/14 10/14 17/9 17/13 31/11 40/22 105/12
**we've [4]** 4/21 5/12
**week [3]** 14/12 22/16 36/23
**week's [1]** 5/1
**weekend [2]** 26/17 102/7
**weeks [4]** 24/14 25/23 84/23 111/24
**well [59]** 4/9 6/4 8/9 8/24 9/3 9/11 10/4 15/23 16/2 18/10 25/4 29/12 31/14 34/6 35/9 35/19 37/1 39/20 40/10 41/17 46/1 46/4 46/7 54/3 58/22 60/15 61/1 61/14 68/4 71/24 76/12 79/19 81/19 87/17 88/23 92/15 96/25 98/19 99/1 100/6 100/17 101/4 103/8 109/2 111/10 111/19 114/19 115/5 115/7 115/10 117/11 117/20 120/1 120/5 120/18 124/4 125/2
**went [1]** 30/5

## were [111]** 5/23 6/10 6/13 6/18 7/2 8/9 13/9 13/13 26/17 /18 30/22 31/6 31/10 31/20 31/21 31/16 34/18 40/2 42/21 42/23 45/16 45/17 45/22 46/25 50/4 52/25 54/11 54/22 54/22 58/2 60/4 60/7 61/4 63/20 64/5 67/25 71/25 72/19 72/19 72/20 73/20 75/6 75/8 78/11 80/5 80/5 80/9 80/14 81/12 81/14 81/15 81/19 81/22 82/20 83/14 83/19 84/17 87/9 87/11 88/3 88/9 88/10 88/15 89/6 89/13 89/14 89/22 90/16 90/16 90/16 90/20 90/21 92/6 92/15 92/25 93/16 94/8 96/25 97/11 98/19 98/20 99/2 100/3 100/13 101/21 101/22 102/17 103/12 104/1 104/11 104/12 105/23 107/14 108/17 109/9 112/3 112/6 112/8 113/19 113/20 113/25 114/5 114/12 116/2 116/17 118/3 123/23 123/24 124/4 124/13
**weren't [2]** 49/25 55/9
**West [1]** 1/20 2/11
**what [100]** 4/17 5/4 8/20 9/5 9/23 10/6 10/9 11/4 11/6 11/19 12/10 13/8 13/8 13/21 14/10 15/6 15/10 19/22 24/15 24/21 25/19 28/18 29/4 30/13 30/16 34/17 35/16 36/3 36/9 36/14 37/15 37/17 39/11 39/11 40/16 40/19 41/16 42/21 46/4 46/7 46/18 48/13 49/9 49/11 50/15 51/1 51/7 51/8 51/12 51/14 51/19 51/19 52/9 54/17 54/19 57/13 57/19 57/22 60/1 60/15 60/17 61/7 61/19 62/7 63/24 66/19 66/23 67/2 71/10 72/17 78/12 78/23 82/5 88/15 90/5 92/9 93/16 96/11 96/18 99/10 102/4 104/10 106/10 107/1 107/1 107/4 107/5 107/11 115/7 115/10 117/3 124/13 124/19 124/19 125/1 125/3 125/5
**what's [8]** 9/13 10/3 22/15 23/20 25/18 42/15 64/10 88/18
**whatever [4]** 32/5 34/20 35/1 66/15
**whatsoever [1]** 10/8
**when [49]** 5/11 5/14 6/11 14/12 16/13 20/3 21/15 23/11 23/15 25/22 26/22 29/5 30/4 36/10 36/13 37/20 40/1 41/6 42/1 44/20 45/1 46/16 53/11 53/14 56/5 59/2 60/25 61/11 61/24 62/6 65/5 66/22 67/2 72/20 72/20 83/19 88/3 90/23 99/17 104/1 105/19 109/20 110/11 110/15 112/23 113/4 115/15 124/25 125/2
**where [25]** 5/14 14/5 14/6 14/6 16/9 16/10 29/11 30/6 36/13 47/1 48/23 51/7 58/2 58/6 58/20 66/24 75/25 77/9 82/22 101/16 105/17 116/2 116/17 118/3 122/12
**whereas [1]** 68/11
**whether [20]** 13/9 13/18 16/18 26/22 28/6 28/10 28/13 31/20 34/18 50/5 50/5 51/13 55/6 56/1 63/18 64/7 71/17 77/3 102/2 108/25
**which [30]** 5/2 5/12 5/12 6/18 6/19 8/7 11/18 13/12 13/22 13/23 16/12 16/12 22/11 22/17 22/24 23/13 28/19 40/2 50/13 70/15 75/17 92/20 94/5 94/12 94/20 98/20 112/7 119/7 119/17 123/24
**while [14]** 82/20 83/14 84/17 87/8 87/11 88/10 88/15 89/5 89/13 89/22 90/21 92/15 93/16 106/21
**who [27]** 10/13 13/1 20/24 23/11 23/16 23/24 32/4 53/9 55/6 73/15 82/6 82/7 84/13 87/22 87/23 91/6 91/11 91/15 97/4 101/20 102/23 102/23 104/20 104/24 104/25 105/1 105/23
**whole [2]** 42/24 120/5
**why [29]** 4/22 8/5 8/7 8/22 9/9 12/5 22/18 23/19 24/9 26/12 29/10 32/10 32/24 33/1 33/3 41/3 41/4 42/21 50/14 51/8 51/18 55/11 55/13 68/6 68/15 75/8 112/18 118/9 118/13
**wide [1]** 57/25
**will [33]** 7/6 15/15 17/24 18/16 21/25 31/10 31/13 32/13 32/14 33/18 34/4 34/20 34/22 34/23 35/24 39/3 41/17 44/3 44/4 70/1 75/17 85/6 85/22 86/5 86/7 86/13 86/21 98/3 103/7 108/11 110/21 125/14 125/15
**wire [16]** 16/13 26/14 86/15 86/16
**within [6]** 27/6 31/2 63/19 64/8 64/9 76/11
**without [12]** 8/17 8/17 29/20 29/21 33/12 40/22 68/10 76/25 80/3 81/2 81/7 81/10
**witness [74]** 5/7 5/10 5/23 6/9 6/17 6/19 8/17

## W

**witness... [67]**  8/18 8/19 8/25 9/1 9/4 9/6 9/7
9/8 10/7 10/10 10/10 10/10 10/12 10/18 11/9
12/4 12/5 12/12 12/16 13/1 13/1 13/12 13/17
13/19 14/3 14/4 15/12 21/9 23/11 23/16 23/18
23/24 24/2 38/19 38/23 39/9 41/9 41/10 43/24
44/2 47/15 56/13 56/21 74/6 74/12 77/19
77/22 82/20 83/23 84/6 87/4 97/20 97/24 98/2
99/11 104/4 107/2 111/25 112/4 112/10
112/15 112/22 115/6 117/9 120/3 120/7 122/8
**witnessed [1]**  82/24
**witnesses [9]**  3/4 3/9 11/18 11/25 24/16
24/18 24/19 24/21 48/22
**Witos [2]**  35/8 35/11
**Wolett [2]**  91/17 91/19
**woman [1]**  91/16
**word [3]**  36/16 37/11 62/9
**work [25]**  19/9 19/21 20/5 20/9 60/1 62/25
65/5 78/17 79/19 84/13 84/20 85/2 88/6 90/11
92/17 95/7 95/9 98/21 99/1 99/7 99/13 99/20
99/24 100/1 100/6
**worked [18]**  57/20 79/8 79/9 82/14 82/15 87/8
87/12 88/4 89/5 98/13 98/16 98/17 99/12
104/21 104/25 105/1 105/4 105/23
**working [10]**  78/23 79/1 79/2 88/3 88/15 90/5
94/8 99/10 99/16 100/14
**would [101]**  4/12 4/24 5/6 6/15 8/19 12/8
12/11 13/3 15/6 15/10 15/25 16/6 16/18 16/22
17/2 18/2 18/5 18/5 18/10 21/7 21/22 22/12
23/1 23/5 24/21 24/25 27/6 27/17 28/14 28/17
29/12 29/13 30/10 31/20 33/2 34/14 34/20
34/25 35/14 36/11 36/20 37/1 38/12 40/20
43/23 48/24 49/5 51/21 51/22 51/23 55/6
55/23 56/22 59/3 61/9 63/20 63/21 63/22
64/21 65/3 65/3 67/12 77/10 78/19 81/9 82/24
82/25 83/3 83/15 83/24 86/4 86/18 86/19
89/23 89/25 90/2 90/11 90/23 91/5 91/5 91/6
91/19 91/24 91/25 92/1 92/7 92/10 92/12 94/9
94/12 95/17 95/18 95/20 97/4 97/24 103/23
107/6 108/19 118/9 118/13 120/4
**wouldn't [2]**  72/12 122/23
**write [2]**  118/19 118/21
**writing [6]**  18/6 32/21 33/6 34/15 34/23 34/24
**written [6]**  28/1 30/6 31/17 36/11 124/20
125/5
**wrong [3]**  38/9 99/22 124/14
**wrote [1]**  122/13
**WYMAN [14]**  2/5 4/6 28/5 28/9 35/19 40/19
43/14 49/13 55/19 56/1 56/10 65/16 93/23
97/18

## Y

**Yahoo [2]**  79/11 80/23
**yeah [3]**  36/16 65/1 85/20
**year [5]**  5/1 15/16 78/18 99/18 99/23
**years [12]**  16/8 16/16 37/23 37/23 38/14
67/11 70/17 78/15 84/5 87/9 99/5 99/19
**yes [155]**
**yesterday [7]**  17/8 17/19 27/13 27/21 28/6
29/5 29/14
**yet [4]**  7/12 35/23 74/3 119/25
**yield [1]**  61/19
**York [9]**  5/20 5/21 5/25 7/17 7/23 8/3 10/14
13/22 14/9
**you [619]**
**you'll [1]**  11/12
**you're [14]**  43/1 43/2 48/15 49/21 52/8 52/17
52/20 53/14 67/6 72/17 111/1 111/12 117/5
117/24
**your [235]**
**yourself [3]**  82/21 83/20 84/6