1

2

3

4

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

**HONORABLE JAMES V. SELNA, U.S. DISTRICT JUDGE**

5    UNITED STATES OF AMERICA,          )
                                        )
6                    Plaintiff,         )    <u>**CERTIFIED TRANSCRIPT**</u>
                                        )
7         vs.                           )    Case No.
                                        )    SACR-19-00061-JVS
8    MICHAEL JOHN AVENATTI,             )
                                        )    **TRIAL DAY 23**
9                    Defendant.         )    **VOLUME 2**
     _____)

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORTER'S TRANSCRIPT OF PROCEEDINGS

THURSDAY, AUGUST 19, 2021

1:29 P.M.

SANTA ANA, CALIFORNIA

23

24

25

**DEBBIE HINO-SPAAN, CSR 7953, CRR**
FEDERAL OFFICIAL COURT REPORTER
411 WEST 4TH STREET, ROOM 1-053
SANTA ANA, CA 92701
dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF:

 4           NICOLA T. HANNA
             United States Attorney
 5           BY:  BRETT SAGEL
                 Assistant United States Attorney
 6           411 West 4th Street
             Suite 8000
 7           Santa Ana, California 92701
             714-338-3598
 8           brett.sagel@usdoj.gov

 9           NICOLA T. HANNA
             United States Attorney
10           BY:  ALEXANDER WYMAN
                 Assistant United States Attorney
11           312 North Spring Street
             Suite 1100
12           Los Angeles, California 90012
             213-894-2435
13           alex.wyman@usdoj.gov

14   FOR THE DEFENDANT IN PRO SE:

15           MICHAEL JOHN AVENATTI, ESQ.

16

17   STANDBY COUNSEL FOR MR. AVENATTI:

18           H. DEAN STEWARD LAW OFFICES
             BY:  H. DEAN STEWARD, ESQ.
19           17 Corporate Plaza
             Suite 254
20           Newport Beach, California 92660
             949-481-4900
21           deansteward7777@gmail.com

22

23

24

25
```

UNITED STATES DISTRICT COURT

1                          **I N D E X**

2   WITNESSES                                                   PAGE

3   **NSHAN TASHCHYAN, CALLED BY THE DEFENSE**
        Direct Examination by Mr. Avenatti (resumed)       7
4       Cross-Examination by Mr. Wyman                     11
        Redirect Examination by Mr. Avenatti               16
5       Recross-Examination by Mr. Wyman                   24

6   **RYAN ROBERSON, CALLED BY THE DEFENSE**
        Direct Examination by Mr. Avenatti                 25
7       Cross-Examination by Mr. Sagel                     44
        Redirect Examination by Mr. Avenatti               45
8       Recross-Examination by Mr. Sagel                   47

9

10

11

12

13

14

15                          **EXHIBITS**

16                       (None offered.)

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**SANTA ANA, CALIFORNIA; THURSDAY, AUGUST 19, 2021**

**1:29 P.M.**

**- - -**

01:29PM   **(Out of the presence of the jury.)**

THE COURT:  Mr. Avenatti.

MR. AVENATTI:  Your Honor, over the break the government filed their response on the *Brady* issue.  In the footnote, Footnote 2, there is a reference to alleged testimony 01:30PM that the government is going to elicit from the witness that is currently on the stand.  I cannot object more strongly to this in front of this jury.  My issue --

THE COURT:  We'll go question by question.  I'm not prepared to make a ruling based on this footnote.

01:30PM   MR. AVENATTI:  Your Honor, I'd just like to be heard on this, because this is a serious issue.  We should not be having an evidentiary hearing in or during the middle of the trial.

THE COURT:  Sir, I'm going to move question by 01:30PM question.  I'm forewarned with respect to your concerns.

MR. AVENATTI:  And, Your Honor, here is the problem that I am put in --

THE COURT:  Sir, we've got the jury waiting.  We're going to bring the jury in.

01:31PM   MR. AVENATTI:  So would you like me to get into this

area with the witness?  Because I don't want to do that.  And
if they're going to do it on cross, then I'm forced to do it
now.  And that's my problem, and we should not be having an
evidentiary hearing on discovery issues in front of the jury.

And what is put in this footnote is false.  And it's
going to create a minitrial in this case.  We're going to call
Mr. Fitzgerald, we may call Mr. Steward.  We're going to call a
whole bunch of other people as to what our access really was or
was not, and I want to avoid doing that.  So that's why I'm
raising it, Your Honor.

THE COURT:  Sir, I'm going to listen to the
questions, and we're going to go as we go.  Whatever advice the
government has provided to you in footnote 2, you're free to
take it into account in constructing and moving through your
examination.

MR. AVENATTI:  Your Honor, it's not appropriate for
Mr. Sagel to stand up and say, "And the defendant had access,
right, to the data during the investigation?"  That's not
appropriate.

THE COURT:  Sir, we'll find out.  The objection is
noted.  We're bringing the jury in.  We'll proceed.

MR. AVENATTI:  What do you mean, "We'll find out,"
Your Honor?

THE COURT:  Sir, ask your questions.

MR. AVENATTI:  I am to going to ask my questions,

```
 1   but that's not appropriate.  To taint this --
 2            THE COURT:  Sir, I'm going to listen to the
 3   questions, and then I'm going to determine whether it's
 4   appropriate or not.  Make your objections as we go.
 5            MR. AVENATTI:  All right.  Well, I'm providing
 6   notice that if the government goes there, I'm putting
 7   Fitzgerald on the list and likely others who had communications
 8   with this taint team.  Because let us be clear, this was not
 9   some third-party-independent body that was doing this.  The
10   taint team was in cooperation, consultation with the
11   prosecution in this case regarding our access to these servers.
12            And what is contained within this paragraph, this
13   footnote, is not accurate.  And I want to avoid a minitrial
14   about this.
15            THE COURT:  Sir, we're going to see where it takes
16   us, based on what you ask and what the government asks.
17            MR. AVENATTI:  Well, I haven't asked him a single
18   question about access.
19            THE COURT:  You've indicated that you may forego
20   some questions.  You may desire to go to some issues prompted
21   by that footnote.  Let's see what you ask, and we'll see what
22   the government asks.
23            Bring the jury in, please.
24            **(In the presence of the jury.)**
25            THE COURT:  Good afternoon, ladies and gentlemen.
```

01:32PM  5
01:32PM 10
01:32PM 15
01:33PM 20
01:34PM 25

|      |                                                                             |
| ---- | --------------------------------------------------------------------------- |
| 1    | **(The jury collectively responded "Good afternoon.")**                     |
| 2    | THE COURT:  Mr. Avenatti.                                                    |
| 3    | **NSHAN TASHCHYAN, WITNESS, RESUMED THE STAND**                             |
| 4    | **DIRECT EXAMINATION (resumed)**                                             |

01:35PM 5    BY MR. AVENATTI:

6    Q     Good afternoon, sir.

7    A     Good afternoon.

8    Q     We spoke briefly before the break about the backup tapes.

9    Do you recall that?

01:35PM 10   A     Yes.

11   Q     And are these physically -- are they actual tapes, or are

12   they a hard drive of some sort?

13   A     They're not hard drives.  I mean, they look like big

14   cassette tapes, basically.  More like VCR tapes.

01:35PM 15   Q     And how were those backups generally made?

16   A     There's a -- there's special, like -- there's a special

17   machine for it.  There's like a -- you know, it's shaped like a

18   VCR.  Those tapes are in there connected to the computer with

19   the software that backs up.  Depending how it's set up, it

01:35PM 20   might do daily backup, weekly backup for the files on the

21   server.

22   Q     The backup tapes that the government seized at

23   Ms. Regnier's home, were they labeled in any way?

24   A     I don't recall.

01:36PM 25   Q     Did you log them on anything?

```
 1    A     They were logged as seized evidence from her residence.
 2    Q     And was that done by you, or was that done by agents on
 3    the scene?
 4    A     Agents on the scene.
 5    Q     Were they given an evidence number of any kind?
 6    A     Believe so, because everything seized is given an evidence
 7    number.
 8    Q     Do you know if each tape had an individual number, or was
 9    it a collective number?
10    A     I don't recall.  It might have been a collective number.
11    Q     And I believe you said that Mr. Weeks delivered those?
12    A     Yes.
13    Q     Was Mr. Weeks present at the time that the tapes were
14    seized?
15    A     Yes.
16    Q     So Mr. Weeks was at the residence at that time?
17    A     Yes.
18    Q     And did he deliver any other electronic information from
19    that search warrant or data?
20    A     He gave me the images, the forensic images of the devices
21    that he imaged.
22    Q     So it was your understanding that he had seized various
23    devices at Ms. Regnier's home, had imaged them and then he gave
24    you the images?
25    A     The device -- he also gave me the devices, because I
```

1    remember returning some of those devices back to Ms. Regnier.

2    Q    To Ms. Regnier?

3    A    Yeah.

4    Q    Why was it that you did not image the tapes and return

01:37PM  5    the tapes?

6    A    The tapes were not imaged because we were able to

7    successfully image the server.  At the time the tapes were

8    taken, we didn't know where the server was.  And the server was

9    then imaged or seized.

01:37PM 10    Q    So as you sit there today, you don't know what is on the

11    tapes?

12    A    No.

13    Q    But you understand that the tapes are a backup of the

14    servers?

01:38PM 15    A    Yes.

16    Q    Is it your understanding that the tapes -- it's not one

17    backup of the servers, it's multiple backups; right?

18    A    Yes.

19    Q    You know that based on the number of tapes?

01:38PM 20    A    Yes.

21    Q    Do you know the time frame that the tapes cover?

22    A    I don't.

23    Q    Do you know if there's any labels on the tapes?

24    A    There are labels on them, but I don't recall what they

01:38PM 25    say.

**UNITED STATES DISTRICT COURT**

1    Q    So the tapes, as they sit today, have labels on them with

2    something on it, but you're not certain what it is?

3    A    Yes.

4    Q    So it could or could not be an indication as to when

01:38PM  5    those backups were made?

6    A    Yes.

7    Q    Do you know the last backup that's reflected on the

8    tapes?

9    A    I don't.

01:38PM 10    Q    I may have asked you this before, and if I did, I

11    apologize.  Has anybody asked you to ever look at any of the

12    data on the tapes?

13    A    No.

14    Q    If you wanted to look at the data on the tapes, what

01:39PM 15    would that involve?

16    A    Most likely would probably have to restore that onto a

17    device or -- another computer.  Because you can't just -- it's

18    not a hard drive.  They can't just plug it in and see what's on

19    there.  I have to restore that -- restore the whole thing from

01:39PM 20    the backup onto another computer and then be able to view

21    what's on there.

22    Q    Did you ever ask Ms. Regnier any questions about the

23    backup procedure relating to the tapes?

24    A    I didn't.  But John Weeks might have, because he was the

01:39PM 25    one who dealt with her.

1    Q     But as you sit there today, you're not certain whether he

2    did or did not, correct?

3    A     No.

4    Q     Do you know if anyone ever asked Ms. Regnier what the

01:40PM 5    backup tapes were or what period of time they covered?

6    A     No.

7                MR. AVENATTI:  Nothing further, Your Honor.

8                THE COURT:  Mr. Wyman.

9                MR. WYMAN:  Thank you, Your Honor.

01:40PM 10                        **CROSS-EXAMINATION**

11   BY MR. WYMAN:

12   Q     Good afternoon, Special Agent Tashchyan.

13   A     Good afternoon.

14   Q     Now, the defendant asked you a lot of questions on direct

01:40PM 15   examination about what you did with the Eagan Avenatti servers;

16   is that right?

17   A     Yes.

18   Q     And you obtained these servers, I think you said, in the

19   spring of 2019?

01:40PM 20   A     Yes.

21   Q     And I think I got this right, but I want to confirm.  You

22   testified that you were able to see virtual machines on a

23   server and then copy those over to a laptop; is that right?

24   A     Yes.  We brought them down -- well, we used the laptop to

01:41PM 25   copy it down.  They were copied down to the hard drives because

```
        1    they wouldn't fit on a laptop because some of those images were

        2    large -- some of those virtual machines were large.  There was

        3    a hard drive connected to the laptop, and from -- used the

        4    laptop to download the stuff and it was copied to a hard drive.

01:41PM  5    Q    Okay.  And then after you do that process, are you able

        6    to review the servers on the laptop?

        7    A    No.  Then after we restore those virtual machines, I have

        8    to restore them, power them on, and then I can see what's on

        9    there.

01:41PM 10    Q    Using that laptop?

       11    A    No.  A different computer.

       12    Q    Okay.

       13    A    It has to be done on a different computer.  The laptop is

       14    only used to communicate with the server and copy the virtual

01:41PM 15    machines down.

       16    Q    I see.  But using that process, you can then set up a

       17    computer to view materials from the server?

       18    A    Yes.  It could be a laptop also.  If the machine is

       19    powerful enough, has a big enough hard drive, it could be done.

01:41PM 20    Q    And then someone can use that other computer to review

       21    all sorts of materials from the servers?

       22    A    Yes.  But you have to understand, the way those servers

       23    were, not all the servers contained data.  The -- some of the

       24    servers were designed to authenticate the user that was logging

01:42PM 25    on to them.  Some of them would contain, like, the database of
```

```
  1    WAH software.  So you have to have all the servers together,

  2    booted up in a certain order, in order for the whole thing to

  3    work.

  4    Q    Okay.  So are you able to select particular information

01:42PM 5    or portions of the servers to put on to a computer for review?

  6    A    No.  It has to be the whole thing.

  7    Q    Now, you testified on direct about how you still have

  8    your working copy of these servers; right?

  9    A    Yes.

01:42PM 10   Q    And at some point, the defendant started asking you about

 11    whether anyone had ever asked you to look for any data from a

 12    program called Tabs.  Do you remember that?

 13                MR. AVENATTI:  Objection.  Misstates the question.

 14                THE COURT:  Overruled.

01:43PM 15              THE WITNESS:  Nobody ever asked me.

 16    Q    BY MR. WYMAN:  Now, at some point in the fall of 2019,

 17    were you asked to set up a remote computer so that -- with

 18    materials from the servers so that the defendant --

 19                MR. AVENATTI:  Objection.  401, 403, Your Honor.

01:43PM 20              THE COURT:  Overruled.

 21                THE WITNESS:  Yes.

 22    Q    BY MR. WYMAN:  In fact, you -- well, you set up the

 23    computer once; is that right?

 24                MR. AVENATTI:  Same objections, Your Honor.

01:43PM 25              THE COURT:  Overruled.
```

1        THE WITNESS:  Yes.

2   Q    BY MR. WYMAN:  And then did the defendant come to the IRS

3   office to review that computer?

4        MR. AVENATTI:  Same objections, Your Honor.

01:43PM 5        THE COURT:  Overruled.

6        THE WITNESS:  Yes.

7   Q    BY MR. WYMAN:  And, in fact, that happened twice; right?

8   A    Yes.

9   Q    They were both in the fall of 2019?

01:44PM 10  A    Yes.

11  Q    Is it your understanding that those meetings were done at

12  the defendant's request?

13  A    Yes.

14  Q    When you set up this computer for the defendant to

01:44PM 15  review, what did you copy over on to the computer?

16  A    All the servers, with the exception of the e-mail server.

17  All the virtual servers were copied over.  I booted them up in

18  a certain order, and there was a database -- special database

19  software on it that contained all the client files.  And I gave

01:44PM 20  them access to those client files.

21        And the e-mails were handled separately.  They were

22  processed in a forensics software.  And I also made that

23  available to him with that forensic software, and he was able

24  to search the e-mails.

01:44PM 25  Q    You mentioned the e-mails and the client files.

1      A      Yes.

2      Q      Were those the materials that you understood the

3      defendant wanted to review?

4      A      Yes.

01:45PM   5      Q      When the defendant reviewed these materials, did he have

6      an attorney present?

7      A      He did.

8      Q      And were you present during both of these meetings?

9      A      Yes.

01:45PM  10      Q      And as the defendant and his counsel conducted searches

11      on his computer -- I'm sorry -- as they reviewed this computer,

12      they asked you to help them conduct searches; is that right?

13      A      Yes.

14      Q      And when they asked you to conduct searches, they also

01:45PM  15      asked you to provide certain materials for them; is that right?

16      A      Yes.  Whatever they wanted, it was exported out and

17      provided to that.

18      Q      Was it a lot of materials?

19      A      I don't recall.  I believe it was.

01:45PM  20      Q      Did you ever tell the defendant or his attorney that they

21      could not have anything that they asked for?

22      A      No.

23      Q      So you gave them everything they asked for?

24      A      Yes.

01:46PM  25      Q      Going back to the question the defendant asked you about

```
 1    whether anyone ever asked you to look for data related to Tabs.
 2    Prior to either of these two meetings that you had with the
 3    defendant and his counsel, to your knowledge did the defendant
 4    ever request that you make a software program called Tabs
01:46PM  5    available for his review?
 6              MR. AVENATTI:  Objection.  401, 403, Your Honor.
 7              THE COURT:  Overruled.
 8              THE WITNESS:  No.
 9    Q    BY MR. WYMAN:  During either of these two meetings, did
01:46PM 10    either the defendant or his attorney ask -- ever ask you for
11    access to a software program called Tabs?
12    A    No.
13    Q    Did you ever hear either of them even mention Tabs?
14    A    No.
01:46PM 15    Q    Thank you.
16              MR. WYMAN:  No further questions.
17                        REDIRECT EXAMINATION
18    BY MR. AVENATTI:
19    Q    Sir, it's your testimony under oath to this jury that
01:47PM 20    there was never anything that either me or my counsel asked for
21    from the server that was not provided.  That's your testimony
22    under oath here today, sir.  I want to make sure I have it
23    right; is that correct?
24    A    It wasn't asked to me specifically.
01:47PM 25    Q    No, that's not what Mr. Wyman just asked you.  That's not
```

```
 1   what he asked you.  I was paying close attention.
 2              THE COURT:  Ask the question.
 3              MR. AVENATTI:  I'm going to.
 4              THE WITNESS:  No.
 5   Q    BY MR. AVENATTI:  Is it your testimony that there was not
 6   a single piece of electronic data that we asked for that we
 7   were denied?  Is that your testimony?
 8   A    Are you asking me if I denied it or somebody else denied
 9   it?
10   Q    Well, let's ask both.  Did you deny it?
11   A    I didn't deny anything.
12   Q    And you didn't approve anything either, did you?
13   A    No.
14   Q    Because your job was not to approve or deny our requests,
15   was it?
16   A    No.
17   Q    Meaning I'm correct?
18   A    Yes.
19   Q    Okay.  Your job was to facilitate access that you were
20   told to provide by your superior to me and my lawyer; right?
21   A    Yes.
22   Q    Okay.  And then you understood that we would make
23   requests, and someone else would either approve or deny the
24   request; right?
25   A    Yes.
```

```
 1   Q    And who was the person who would approve or deny the
 2   request for the information that we wanted?
 3   A    It was the U.S. Attorney's Office.
 4   Q    So you understood that we would ask for information, and
 5   then someone from the U.S. Attorney's Office would decide
 6   whether we actually received it or not; right?
 7   A    Yes.
 8   Q    Now, you don't know if we -- if we received everything we
 9   asked for, do you?
10   A    No.
11   Q    Because you weren't privy to what we asked the
12   U.S. Attorney's Office for, were you?
13   A    No.
14   Q    Meaning you were not -- I'm correct, you were not privy
15   to that?
16   A    No.
17   Q    I'm sorry.  Am I correct?  Is it true that you were not
18   privy to what we asked the U.S. Attorney's Office for?
19   A    No.
20   Q    You were privy to it?
21   A    Oh.  No, I wasn't privy to it.  I'm sorry.
22   Q    Okay.  You just fulfilled whatever request the
23   U.S. Attorney's Office told you you could fulfill; right?
24   A    Yes.
25   Q    So if the U.S. Attorney's Office decided that they didn't
```

1    want us to have something and they told you, "Don't provide
2    it," you didn't provide it?
3    A    They never told me to -- not to provide anything.
4    Q    So is it your testimony, sir, that everything that we
5    asked for we received?  Or do you know?
6    A    I don't know.
7    Q    Now, you said "client files."  You made client files
8    available on the servers.  Do you recall that?
9    A    Yes.
10   Q    In what format were these client files available on the
11   server when you provided this access?
12   A    It was the database software.  I don't recall the name of
13   it.
14   Q    How about FileSite?
15   A    FileSite.  It was FileSite.
16   Q    Right.  And FileSite is a program that is connected to
17   the e-mail program; right?
18   A    Not necessarily e-mail.  You can open up with any
19   Microsoft software.  I think I was able to successfully open it
20   with the Microsoft Word.  You can also open it with Outlook.
21   But I was able to set it up with Microsoft Word, and that's how
22   we opened up the software.
23   Q    So just so the jury is clear, after we were provided
24   whatever access we were provided -- and we'll have other
25   witnesses who are going to now come in and talk about that

```
 1    issue.  But when we were provided this access, we then had to

 2    make a request to actually get a copy of whatever we wanted;

 3    right?

 4    A    Yes.

 5    Q    And then that request had to be approved by somebody in

 6    order for us to actually get a copy; is that right?  That's

 7    what you understood?

 8    A    Yes.

 9    Q    We were not able to just come in and get a copy of

10    something and walk out, were we?

11    A    You -- I remember you -- I was provided with client names,

12    specifically the files that you requested, and it took some

13    time to export that stuff out.

14    Q    Right.  But that's not my question.

15         My question is, you were given a list of what we

16    wanted copies of.  And then it had to be approved and then it

17    had to be exported?

18    A    Yes.

19    Q    At no point in time did you understand that we could get

20    a copy of whatever we wanted off the servers, did you?

21    A    No.

22    Q    You understood that that had to be approved first?

23    A    Yes.

24    Q    And you were not privy through -- you were not privy to

25    that request or approval process; right?
```

| | | |
|---|---|---|
| | 1 | A    No. |
| | 2 | Q    Meaning I'm right; you were not part of it? |
| | 3 | A    No, I was not part of it. |
| | 4 | Q    Do you know what role Mr. Sagel played as it related to |
| 01:52PM | 5 | allowing us access to what we needed for our defense? |
| | 6 | A    I don't. |
| | 7 | Q    Who is Patrick Fitzgerald? |
| | 8 | A    He's an AUSA.  He's an assistant U.S. Attorney. |
| | 9 | Q    Did you take direction from Mr. Fitzgerald as it related |
| 01:53PM | 10 | to what we would be given copies of? |
| | 11 | A    I did. |
| | 12 | Q    And before you would provide a copy of anything, did you |
| | 13 | consult with Mr. Fitzgerald? |
| | 14 | A    I didn't directly consult.  I just received the orders -- |
| 01:53PM | 15 | or the list of what to provide you, and that's what I did. |
| | 16 | Q    And you got that list from Mr. Fitzgerald? |
| | 17 | A    It was Mr. Fitzgerald.  And there was another attorney I |
| | 18 | was working with him.  I don't recall his name right now. |
| | 19 | Q    Mr. Woodring? |
| 01:53PM | 20 | A    Yes. |
| | 21 | Q    And he's no longer with your office; right? |
| | 22 | A    I wouldn't know. |
| | 23 | Q    So unless you got a directive from Mr. Fitzgerald or |
| | 24 | Mr. Woodring, you would not provide a copy of the information; |
| 01:53PM | 25 | correct? |

**UNITED STATES DISTRICT COURT**

```
 1    A    No.  Yeah.
 2          THE COURT:  Ask the question again so we get a clear
 3    record, please.
 4    Q    BY MR. AVENATTI:  Sir, is it true that unless you got a
 5    directive from Mr. -- from either Mr. Woodring or
 6    Mr. Fitzgerald, you would not provide a copy of the
 7    information?
 8    A    Yes.
 9    Q    Now, I'm going to try not to get too far in the weeds on
10    this, but if anything I ask is incorrect, just feel free to
11    correct me.  Okay?
12    A    Okay.
13    Q    All right.  Now, when you copied the servers, right, you
14    copied certain program files?  And by "program files," what I
15    mean is, like, software packages.
16    A    Everything that's on that server.
17    Q    Okay.  So if there is a software program that is on the
18    server, like Microsoft Word --
19    A    Okay.
20    Q    -- we'll use that as an example.  It may not be a good
21    example.  You tell me if it's a bad one, okay?  Because I think
22    you probably understand what I'm going to ask you.
23          Can you launch -- can you launch that program from
24    the server?
25          MR. WYMAN:  Objection.  Beyond the scope.
```

             1              THE COURT:  Overruled.

             2              THE WITNESS:  So once that image is virtual, when I

             3      power on, it would be like powering on the computer.  So

             4      whatever software is on the computer, you can launch it.  You

01:56PM      5      can open it up.  It's as normal as sitting in front of a

             6      computer.

             7      Q    BY MR. AVENATTI:  Now, what about license issues?

             8      A    Well, the licenses are tied to that image.  A lot of

             9      times -- the software will work, but a lot of times, depending

01:56PM     10      how the software is coded, it will recognize as not in the

            11      original machine and it will stop working.

            12      Q    So even if you have a copy of the server, it doesn't

            13      necessarily mean that the software package will load in order

            14      to look at the data, because the license recognizes that you're

01:56PM     15      no longer operating it off of a server?

            16      A    Not necessarily a server.  You're not operating in the

            17      same computer that installed it.  So a lot of times it will not

            18      work.

            19      Q    Okay.  Did you do any analysis to see if any of -- well,

01:56PM     20      strike that.

            21              Did you do any analysis to see which software

            22      programs would work or not work on the servers?

            23      A    No.

            24      Q    So as you sit here today, you don't know which ones would

01:57PM     25      or would not work; correct?

```
 1   A     I wouldn't know.

 2   Q     I just want to clarify one last question.  You said,

 3   "Whatever they wanted was exported out."  Do you remember that?

 4   A     Yes.

 5   Q     That's not entirely true, is it?  Whatever we wanted and

 6   whatever was approved was exported out; right?

 7   A     Correct.

 8   Q     The approval was a prerequisite before we could get

 9   anything, wasn't it?

10   A     Yes.

11         MR. AVENATTI:  Nothing further.

12         THE COURT:  Mr. Wyman.

13                        RECROSS-EXAMINATION

14   BY MR. WYMAN:

15   Q     Special Agent Tashchyan, I think you testified on

16   redirect that you were given a list of things they wanted by

17   the defendant and his counsel?

18   A     Yes.

19   Q     And then you took that list and gave it to the

20   U.S. Attorney's Office for approval?

21   A     Yes.

22   Q     Did anyone ever tell you that you could not provide the

23   defendant with anything on that list?

24   A     No.  Everything on the list was provided.

25   Q     Thank you.
```

01:57PM  5
01:58PM 10
01:58PM 15
01:58PM 20
01:58PM 25

```
 1              MR. WYMAN:  No further questions.
 2              THE COURT:  May the witness be excused?
 3              MR. AVENATTI:  No, sir.
 4              THE COURT:  Sir, you're excused for now, but you're
 5    subject to recall.
 6              MR. AVENATTI:  Your Honor, the defense calls
 7    Mr. Ryan Roberson, please.
 8              THE COURTROOM DEPUTY:  Please stand behind the court
 9    reporter and raise your right hand.
10              RYAN ROBERSON, DEFENSE WITNESS, WAS SWORN
11              THE COURTROOM DEPUTY:  If you'll please state and
12    spell your first and last name.
13              THE WITNESS:  Sorry, what's that?
14              THE COURTROOM DEPUTY:  State and spell your first
15    and last name.
16              THE WITNESS:  Ryan Roberson.  R-y-a-n,
17    R-o-b-e-r-s-o-n.
18              THE COURTROOM DEPUTY:  Thank you.
19              THE COURT:  Mr. Avenatti.
20                         DIRECT EXAMINATION
21    BY MR. AVENATTI:
22    Q    Sir, good afternoon.
23    A    Good afternoon.
24    Q    Where are you employed?
25    A    I am a special agent with IRS criminal investigation.
```

01:58PM 5
01:59PM 10
02:01PM 15
02:01PM 20
02:01PM 25

```
 1   Q    And how long have you held that title?
 2   A    Approximately five years.
 3   Q    And what did you do before becoming a special agent?
 4   A    I was a revenue agent with the IRS.
02:01PM 5   Q    And how long did you hold that role?
 6   A    Approximately seven years.
 7   Q    Do you have a role in this case?
 8   A    I do.
 9   Q    Was is your role?
02:01PM 10  A    To assist the trial team with interviews, memorialize
11   those interviews, coordinate witnesses and other tasks.
12   Q    And how long have you been working on this case?
13   A    Continuously, I'd say, the last three or four months.
14   Q    You said "continuously."  What does that mean?
02:02PM 15  A    Prior to that, I would assist whenever Special
16   Agent Karlous or Special Agent Kim needed my help.
17   Q    When did you first begin working on this case?
18   A    I don't recall exactly when.
19   Q    Was it in 2019?  2020?
02:02PM 20  A    It was -- it was certainly 2019, yes.
21   Q    Do you recall interviewing people in 2019 in connection
22   with this case?
23   A    I do, yes.
24   Q    Have you ever had any text messages or e-mails with any
02:03PM 25  of the witnesses in this case?
```

**UNITED STATES DISTRICT COURT**

```
 1   A     Yes, I have.

 2   Q     Which witnesses?

 3   A     Multiple witnesses.

 4   Q     Which ones?

 5   A     There may be more, but to name a few, Mr. Amenta, Nshan,

 6   Mr. Varani, Ms. Regnier.  Many of the witnesses who have

 7   testified thus far.

 8   Q     And are those text messages or e-mails?

 9   A     With some of them, text messages; with others, e-mails.

10   Q     Let's break it down.  Mr. Amenta, do you recall text

11   messages or e-mails?

12   A     I believe it was both.

13   Q     Mr. Nshan?

14   A     Both.

15   Q     Varani?

16   A     I know I texted with him.  I think I was cc'd on e-mails

17   with him.  I may have also sent e-mails.

18   Q     And was that about the subject matter of his testimony?

19   A     Not Varani.  Not Nshan.  Mr. Amenta, there were e-mails

20   that were about the subject of his testimony.

21   Q     And just so we're clear, when I talked about the subject

22   matter of his testimony, I'm talking about anything other than,

23   "Hey, I'm here at the courthouse to testify," or, "I'm on my

24   way."  Okay?

25   A     Understood.
```

```
 1   Q    All right.  So anything other than purely that type of

 2   stuff, meaning, "I'm in the lobby," something like that.

 3            So my question is, did you have any e-mails with

 4   Mr. Varani that was not about something that I just mentioned?

 5   A    No.

 6   Q    How about Mr. Tashchyan?

 7   A    No.

 8   Q    Mr. Amenta, yes; correct?

 9   A    Yes.

10   Q    How many e-mails do you recall having with Mr. Amenta?

11   A    I believe it was two or three.

12   Q    How about Ms. Regnier?

13   A    I don't believe there were any e-mails with her.

14   Q    Or text messages?

15   A    Not in the way that you just described, no.

16   Q    Okay.  Who else have you communicated, via text or

17   e-mail, about their testimony in this case, other than

18   strictly, "I am here," or something like that?

19   A    I don't recall anybody else.

20   Q    What was the purpose of you communicating with

21   Mr. Amenta?

22   A    We were coordinating interviews with him, I believe.  And

23   then also reviewing a chart with him.

24   Q    Chart 457?

25   A    I don't recall the exact number.
```

| | |
|---|---|
| 1 | Q    Do you recall that you had prepared a chart, and you were |
| 2 | trying to prepare Mr. Amenta to testify about the chart? |
| 3 | A    Yes. |
| 4 | Q    Why did you not testify about the chart? |
| 02:06PM 5 | MR. SAGEL:  Objection.  Relevance, Your Honor. |
| 6 | THE COURT:  Sustained. |
| 7 | Q    BY MR. AVENATTI:  Did you have a discussion with anybody |
| 8 | about the fact that they didn't want you to testify in this |
| 9 | case about that chart? |
| 02:06PM 10 | MR. SAGEL:  Objection.  Same objection, Your Honor, |
| 11 | and calls for hearsay. |
| 12 | THE COURT:  Sustained. |
| 13 | Q    BY MR. AVENATTI:  You prepared the chart; right? |
| 14 | A    In part, yes. |
| 02:07PM 15 | Q    Who else prepared the chart? |
| 16 | A    I believe AUSA Wyman. |
| 17 | Q    Did anyone ever tell you, "Hey, we can't have you testify |
| 18 | because we're going to have to produce your notes if you |
| 19 | testify"? |
| 02:07PM 20 | MR. SAGEL:  Same objections.  Calls for hearsay. |
| 21 | Relevance. |
| 22 | THE COURT:  Sustained. |
| 23 | Q    BY MR. AVENATTI:  But you helped Mr. Amenta prepare to |
| 24 | testify about the chart that you prepared; right? |
| 02:07PM 25 | A    That's not how I would describe it. |

```
 1   Q    Well, would you describe it as you conversing with
 2   Mr. Amenta in preparation for his testimony?
 3   A    We provided the chart to him so he could review it before
 4   we interviewed him.
 5   Q    You provided him the chart, also, so that you could make
 6   sure it was 100 percent accurate; right?
 7   A    We wanted to ensure that he could confirm the wires went
 8   through Fedwire.
 9              MR. AVENATTI:  Move to strike as nonresponsive.
10              THE COURT:  Stricken.
11              MR. AVENATTI:  Can I have it read back, please?
12              THE COURT:  You may.
13              (The question was read by the reporter as follows:
14              "You provided him the chart, also, so that
15          you could make sure it was 100 percent accurate;
16          right?")
17              THE WITNESS:  No, that's -- I disagree with that.
18   Q    BY MR. AVENATTI:  So you didn't care whether the chart
19   that was going to be put in front of the jury was accurate?
20   A    Well, I wanted to make sure it was accurate.  But we
21   provided it to him so that he could ensure the wires went
22   through Fedwire.  It wasn't his role to tell us whether the
23   chart was accurate, just to confirm the wires went through
24   Fedwire.
25   Q    And when he told you the chart wasn't accurate, you
```

02:08PM (lines 5, 10, 15)
02:09PM (lines 20, 25)

UNITED STATES DISTRICT COURT

|      |    |                                                                      |
| ---- | -- | -------------------------------------------------------------------- |
|      | 1  | ignored it, didn't you?                                              |
|      | 2  | MR. SAGEL:  Objection.  Argumentative.  Calls for                    |
|      | 3  | hearsay.                                                             |
|      | 4  | THE COURT:  Sustained.                                               |

02:09PM  5  Q    BY MR. AVENATTI:  Sir, when you gave him the chart and he

6  informed you that, in his view and expertise, it was not

7  accurate, you did not make the changes that he suggested; isn't

8  that true?  Yes or no?

9          MR. SAGEL:  Objection.  Calls for hearsay.

02:09PM 10          THE COURT:  Sustained.

11  Q    BY MR. AVENATTI:  Sir, is it true that at some point in

12  time, Mr. Amenta suggested changes to the chart?  Yes or no?

13  A    Yes.

14  Q    Were those changes made?  Yes or no?

02:10PM 15  A    No.

16  Q    Who made the decision not to make the changes?

17  A    I did.

18  Q    And when was that?

19  A    On the date the chart was finalized.  I don't recall the

02:10PM 20  exact date.  Sometime before the trial.

21  Q    Did you consult with anyone in connection with your

22  decision not to make the changes that Mr. Amenta suggested?

23          MR. SAGEL:  Objection.  Calls for hearsay and work

24  product, Your Honor.

02:11PM 25          THE COURT:  Sustained.

UNITED STATES DISTRICT COURT

32

```
 1    Q    BY MR. AVENATTI:  Did you make the decision on your own?
 2              MR. SAGEL:  Same objections, Your Honor.
 3              THE COURT:  Overruled.
 4              THE WITNESS:  I don't recall if I made it on my own.
02:11PM  5    Q    BY MR. AVENATTI:  So you don't remember whether you made
 6    the decision by yourself or with the consultation of someone
 7    else?
 8    A    I may have talked to the trial team.
 9    Q    Let me ask another question.  You had Mr. Amenta confirm
02:12PM 10    the IMAD and OMAD numbers because that was his area of
11    expertise; right?
12    A    That's correct, yes.
13    Q    You had no experience with confirming IMAD or OMAD
14    numbers; is that right?
02:12PM 15    A    That's correct.  I'm not a Fedwire employee.
16    Q    So you looked to Mr. Amenta to ensure that the
17    information relating to the Fedwires was accurate?
18    A    No.  That's not correct.
19    Q    You just wanted him to attempt to discover whether the
02:12PM 20    wires had gone through the fed system, and you didn't care what
21    his view was relating to whether the Fedwire information was
22    accurate; is that correct?
23    A    His role was to confirm the wires went through Fedwire.
24    My role was to complete the chart based upon the underlying
02:13PM 25    bank records.
```

UNITED STATES DISTRICT COURT

```
 1              MR. AVENATTI:  Move to strike, Your Honor.

 2              THE COURT:  Denied.

 3    Q    BY MR. AVENATTI:  Sir, did you care what Mr. Amenta's

 4    view was relating to the accuracy of the OMAD and IMAD numbers?

 5    Did you care?  Yes or no?

 6              MR. SAGEL:  Objection.  Relevance.

 7              THE COURT:  Overruled.

 8              THE WITNESS:  I cared about him confirming whether

 9    the wires went through Fedwire.

10              MR. AVENATTI:  Move to strike.

11              THE COURT:  Just a minute.

12              Answer will be stricken.

13              MR. AVENATTI:  Can I have it read back, please?

14              THE COURT:  Yes.

15              MR. AVENATTI:  Sir, just answer my question, please.

16              (The question was read by the reporter as follows:

17              "Sir, did you care what Mr. Amenta's view was

18         relating to the accuracy of the OMAD and IMAD

19         numbers?  Did you care?  Yes or no?")

20              THE WITNESS:  No.

21    Q    BY MR. AVENATTI:  Did Mr. Amenta ever ask you if his

22    suggested changes had been made to Exhibit 457?

23    A    I don't believe so, no.

24    Q    The e-mail communications that you referenced earlier

25    with Mr. Amenta, did those take place before he testified?
```

02:13PM (line 5)
02:13PM (line 10)
02:13PM (line 15)
02:13PM (line 20)
02:14PM (line 25)

```
 1   A    They did.
 2   Q    And before Mr. Amenta testified, were you ever asked to
 3   compile your communications with Mr. Amenta?
 4           MR. SAGEL:  Objection.  Relevance.  Are we doing
 5   discovery during testimony?
 6           MR. AVENATTI:  I certainly hope so.
 7           MR. SAGEL:  I think we were just told by defendant
 8   that this wasn't a discovery procedure.
 9           THE COURT:  I'm not having it.  When you speak, you
10   speak to the Court please.
11           Let's hear the question again, please.
12           (The question was read by the reporter as follows:
13           "And before Mr. Amenta testified, were you
14           ever asked to compile your communications with
15           Mr. Amenta?")
16           MR. SAGEL:  Same relevance.
17           THE COURT:  Overruled.
18           THE WITNESS:  No.
19   Q    BY MR. AVENATTI:  Were you ever asked to do so?
20   A    There was a point, maybe the first or second week of
21   trial, where I compiled some text messages.  Beyond that, no.
22   Q    So even after he testified "no"; correct?
23   A    Oh, right after he testified I was, absolutely.
24   Q    Okay.  So you're amending your answer.  You now recall
25   after he testified, you were asked to compile the information;
```

|   | |
|---|---|
| 1 | is that right? |
| 2 | A    After he testified I was asked to compile the information. |
| 3 | Yes. |
| 4 | Q    That was the first time? |
| 02:16PM 5 | A    That was the first time, yes. |
| 6 | Q    How much time did you spend compiling 457 -- Exhibit 457? |
| 7 | A    Maybe an hour or two. |
| 8 | Q    And before Mr. Amenta, did you prepare another individual |
| 9 | to testify about 457? |
| 02:17PM 10 | A    I don't believe so, no. |
| 11 | Q    Did you converse with anyone else about Exhibit 457 |
| 12 | before it was presented to the jury, other than Mr. Amenta and |
| 13 | the AUSAs? |
| 14 | A    I'm sorry, can you repeat that. |
| 02:17PM 15 | Q    Sure.  You understand that 457 was admitted to the jury; |
| 16 | right? |
| 17 | A    Yes. |
| 18 | Q    All right.  Before that was admitted to the jury, did you |
| 19 | converse with anyone about 457 other than Mr. Amenta and |
| 02:17PM 20 | AUSA Wyman and AUSA Sagel? |
| 21 | A    I don't believe I conversed with anybody, no. |
| 22 | Q    How about communicated? |
| 23 | A    I believe I sent an e-mail with the underlying |
| 24 | documentation of Exhibit 457. |
| 02:18PM 25 | Q    To who? |

```
 1   A    I believe I sent e-mails to Special Agent Steve Bellis and
 2   Special Agent Jeff Clark.  And those e-mails, like I said,
 3   contain the underlying bank records and information which
 4   supported.
02:18PM 5          MR. AVENATTI:  Move to strike everything beginning
 6   with "those records" as nonresponsive.
 7          THE COURT:  Denied.
 8   Q    BY MR. AVENATTI:  And what was the purpose of sending
 9   that to Mr. Bellis and Mr. Clark?
02:18PM 10         MR. SAGEL:  Objection.  At this point, 403 and work
11   product, Your Honor.
12          THE COURT:  Sustained.
13   Q    BY MR. AVENATTI:  When did you first learn about Tabs?
14   A    I don't know anything about Tabs.
02:18PM 15         MR. AVENATTI:  I'm sorry, can I have that read back,
16   Your Honor?  Can I just have the answer read back?
17          MR. SAGEL:  Argumentative, Your Honor.  He heard the
18   answer.
19          MR. AVENATTI:  Your Honor, I object to this.  I
02:19PM 20   would just like --
21          THE COURT:  The answer will be read back.
22          MR. AVENATTI:  That's all I'm --
23          THE COURT:  Enough.
24          MR. AVENATTI:  I don't want any comment.
02:19PM 25         THE COURT:  Enough.
```

|   |   |
|---|---|
| 1 | MR. AVENATTI:  Thank you. |
| 2 | Can I please have it read back. |
| 3 | **(The answer was read by the reporter as follows:** |
| 4 | **"I don't know anything about Tabs.")** |
| 02:19PM 5 | Q    BY MR. AVENATTI:  Before this trial, had you ever |
| 6 | heard -- -- well, strike that. |
| 7 | So before this trial, you had never heard anything |
| 8 | about Tabs; right? |
| 9 | A    I heard the word "Tabs" mentioned, but I didn't know |
| 02:19PM 10 | any -- it's like hearing a word and you don't know what it |
| 11 | means. |
| 12 | Q    Well, sometimes when you hear a word and you don't know |
| 13 | what it means, you take steps to find out what it means; right? |
| 14 | A    Fair enough. |
| 02:19PM 15 | Q    When you heard the word "Tabs," did you do anything or |
| 16 | take any steps to find out what it was? |
| 17 | A    I did not, no. |
| 18 | Q    Do you have a recollection that on November 19, 2019, you |
| 19 | met with Ms. Regnier, Special Agent Karlous, and Mr. Sagel? |
| 02:20PM 20 | A    I recall meeting, yeah, in the fall of 2019 with |
| 21 | Ms. Regnier. |
| 22 | Q    And you were charged with taking notes from that meeting; |
| 23 | is that right? |
| 24 | A    I believe I memorialized the interview, yes. |
| 02:20PM 25 | Q    Okay.  And when you say "memorialized the interview," |

1  what do you mean by that?  Is that a different way of saying,

2  "I took notes"?

3  A     I provided the memo -- memorandum of the interview.

4  Q     And you also took handwritten notes during the interview;

02:20PM 5  right?

6  A     I believe so, yes.

7  Q     And then did you take those handwritten notes and turn

8  them into a typewritten memorandum of interview?

9  A     That's typically what I do.

02:21PM 10  Q     And what did you do with your handwritten notes?

11  A     My standard practice is I scan them and then save them

12  with the memo that I prepare.  I don't -- in this instance, I

13  would assume I did that.  I'm not absolutely certain.  But

14  that's my standard practice.

02:21PM 15  Q     Do you have a recollection of learning in November 2019

16  that Eagan Avenatti kept the expenses for its clients' cases in

17  Tabs?

18  A     I don't specifically recall that.  But it wouldn't

19  surprise me if Ms. Regnier mentioned that -- I'm sorry, that

02:21PM 20  she mentioned the word "Tabs."

21           MR. AVENATTI:  Your Honor, can I approach?

22           THE COURT:  You may.

23           Is that 1084 or -85?

24           MR. AVENATTI:  I think it's -84, but here's another

02:22PM 25  copy.

**UNITED STATES DISTRICT COURT**

|  | 1 | THE COURT:  Okay.  Thanks. |

```
         1              THE COURT:  Okay.  Thanks.

         2              MR. AVENATTI:  I don't have my copy marked.  That's

         3    why I can't answer your question.  I'm sorry.

         4              THE COURT:  Oh, okay.

02:22PM  5              MR. AVENATTI:  Your Honor, I'm informed it's 1085.

         6              THE COURT:  Thank you.

         7    Q    BY MR. AVENATTI:  Directing your attention to

         8    paragraph 14, sir, does that refresh your recollection that you

         9    and others were told on November 19, 2019, by Ms. Regnier about

02:22PM 10    Tabs?

        11    A    Yeah, it appears she mentioned -- sorry.  Yeah, it appears

        12    that she mentioned "Tabs."

        13    Q    And in particular, she told you and the other agents that

        14    case expenses were tracked in Tabs at the law firm; correct?

02:23PM 15    A    That's what it says, yes.

        16    Q    You don't dispute that; right?

        17    A    No, I don't.

        18    Q    After this meeting in November of 2019, did you do

        19    anything to attempt to investigate where the Tabs data was?

02:23PM 20    A    No, I did not.

        21    Q    Did you ever have any discussions after November 19,

        22    2019, with anybody about Tabs?

        23    A    No, I didn't.  I should say, not that I recall.

        24    Q    What was your understanding as to where the financial

02:24PM 25    data from the law firm was located?  Or did you ever have an
```

```
 1  understanding?
 2  A    I didn't have an understanding.
 3  Q    Were you involved at all in the acquisition of any
 4  financial information regarding Eagan Avenatti?
 5  A    I don't believe so, no.
 6  Q    What is an IMAD or an OMAD?
 7  A    My understanding, that it's a thumbprint -- it's a way of
 8  describing a thumbprint used by Fedwire in the same way that we
 9  all have thumbprints.  And then it's a -- the IMAD would be, I
10  believe, an incoming wire; and OMAD would be an outgoing
11  message attached to a wire.  That's my understanding.
12  Q    It's a unique identifier for each incoming and outgoing
13  wire.  Is that your understanding?
14  A    I think that's a fair summary, yes.
15  Q    And it's an identifier that has a year at the start of
16  it; right?
17  A    In some instances, yes.
18  Q    That's what Mr. Amenta told you; right?
19  A    That's what Mr. Amenta said, I believe, yes.
20  Q    Did you ever do anything to confirm what Mr. Amenta told
21  you?
22            MR. SAGEL:  Objection.  Asked and answered and 403.
23            THE COURT:  Overruled.
24            THE WITNESS:  No, I didn't.
25            MR. AVENATTI:  Your Honor, one moment, please.
```

        1              **(Pause in proceedings.)**

        2    Q    BY MR. AVENATTI:  Now, at some point in time when you met

        3    with Mr. Amenta -- well, strike that.

        4              Did you conduct an interview with Mr. Amenta at some

02:27PM  5    point in time?

        6    A    Yes.

        7    Q    And was that on the phone or in person?

        8    A    On the phone.

        9    Q    And did you memorialize that conversation in a

02:27PM 10    memorandum?

       11    A    Yes.

       12    Q    And did that memorandum contain what Mr. Amenta told you

       13    during that conversation?

       14    A    Yes.

02:27PM 15    Q    Did it include anything else?

       16    A    The memorandum would include what he said during the

       17    conversation.

       18    Q    Anything else?

       19    A    I don't believe so.

02:28PM 20    Q    Nothing else that you can recall?

       21    A    Yeah, nothing else that I can recall.

       22    Q    So if there is something in the memo, it occurred while

       23    you were interviewing Mr. Amenta; right?

       24    A    That's correct.  Yes.

02:28PM 25    Q    And when you interviewed Mr. Amenta, was anyone else

1   present?

2   A    I know that AUSA Wyman was.  I don't recall if Special

3   Agent Karlous or Special Agent Kim were on the phone as well.

4   Q    Did you do anything to prepare Mr. Amenta for his

02:29PM 5   testimony other than this interview?

6   A    I believe we spoke with him two or three times.

7   Q    I believe on one -- well, I believe there's one

8   memorandum from June 16, 2021.  Do you recall that date

9   generally?

02:29PM 10   A    Generally, yes.

11   Q    Was that the last time?  The first time?  Do you recall?

12   A    My best guess would be the first time.

13   Q    And then you think you had two or three conversations

14   with him afterwards?

02:29PM 15   A    Maybe one or two more after that.

16   Q    And what was the purpose of those conversations?

17          MR. SAGEL:  Objection.  Relevance.

18          THE COURT:  Overruled.

19          THE WITNESS:  I believe -- one of those

02:30PM 20   conversations, he reviewed -- I don't -- actually, I don't

21   recall.

22   Q    BY MR. AVENATTI:  Well, what do you recall him reviewing?

23   A    Well, I recall one of the conversations or one of the

24   interviews, he confirmed that all ten wires in the indictment

02:30PM 25   went through Fedwire.  I think before that, he didn't have the

```
 1   backup information yet.
 2   Q    You said that he reviewed something.  What do you
 3   remember him reviewing?
 4   A    I don't recall.  Do you have the memorandums with you?
 5   Q    Maybe.
 6           What do you recall him reviewing, sir, if anything?
 7   A    I don't recall as I sit here right now.
 8   Q    But you do recall that you had two to three substantive
 9   conversations with Mr. Amenta about his testimony?
10   A    I think there were two that were substantive, and the
11   third one, there was -- I want to say no new information.
12   Nothing new.
13   Q    What do you mean by "no new information"?
14   A    There was nothing new that he hadn't already provided.
15   Q    So he said the exact same thing that he had said
16   before --
17   A    No.
18   Q    -- like exactly?
19   A    No.
20   Q    Well, so why am I wrong when I say "the exact same
21   thing"?
22   A    It doesn't mean he said the exact same thing.  It just
23   means he didn't say anything he hadn't already said.
24   Q    But he may have said it differently.  But that still, in
25   your view, meant no new information; right?
```

```
 1              MR. SAGEL:  Objection.  403 at this time,
 2    Your Honor.
 3              THE COURT:  Sustained.
 4    Q    BY MR. AVENATTI:  Have you communicated with Mr. Amenta
 5    since he testified?
 6    A    I don't believe so, no.
 7              MR. AVENATTI:  Nothing further, Your Honor.
 8              THE COURT:  Mr. Sagel.
 9              MR. SAGEL:  I'm going to have Special Agent Karlous
10    pull up Exhibit 457, which has been admitted into evidence.
11                        CROSS-EXAMINATION
12    BY MR. SAGEL:
13    Q    Is this the chart, this page 1 of the chart that you were
14    being asked about?
15    A    Yes.  This is page 1.
16    Q    Defendant asked if you cared about Mr. Amenta's opinion.
17    Let me ask you a slightly different question, if you care if
18    this chart was correct?
19    A    Yes.
20    Q    And you -- as part of your assisting in preparation --
21    preparing this chart, you made sure that it was entirely
22    accurate based on the underlying bank records; isn't that
23    correct?
24    A    Yes.
25    Q    And these Fedwire OMADs and IMADs that are in this chart
```

are 100 percent accurate based on the bank records that they're

summarizing; isn't that correct?

A    That's correct.

Q    From California Bank & Trust and City National Bank?

A    That's correct.

Q    And the information that Mr. Amenta provided you was a

suggestion, but it wasn't saying that these charts were

inaccurate in any way; correct?

A    That's correct.

         MR. SAGEL:  No further questions.

                    **REDIRECT EXAMINATION**

BY MR. AVENATTI:

Q    Sir, do you see the first three entries on the chart?

You see those red boxes?

A    Yes.

Q    Mr. Amenta informed you that these numbers were incorrect

because they did not have a year, didn't he?

A    I don't --

Q    Just answer my question.

A    I don't recall how he said it or if they were incorrect.

But he offered a suggestion.

Q    Sir, isn't it true that you communicated with Mr. Amenta,

and he told you your chart needed to add the years in order to

properly identify these numbers.  And you chose to ignore his

opinion -- his position as someone who had more experience than

```
 1    you, and you chose not to include the right years; isn't that
 2    true?
 3    A    I don't believe that's correct.
 4    Q    Well, we established on direct that, in fact, you had
 5    made the decision not to include what Mr. Amenta had suggested;
 6    right?
 7    A    That is correct, what you just said.  What he suggested.
 8    Q    And at the time, you understood that Mr. Amenta was more
 9    knowledgeable -- much more knowledgeable about OMAD and IMAD
10    numbers than you; isn't that true?
11    A    He's more knowledgeable about OMAD and IMAD than I am,
12    yes.
13    Q    These are three of the four last rows in the chart.  Do
14    you see that?
15    A    Yes.
16    Q    And these were three more instances where Mr. Amenta
17    advised you that the numbers were incorrect; right?
18    A    Again, that's not -- I believe he suggested adding numbers
19    to the front.
20    Q    He suggested to you that OMAD and IMAD numbers -- strike
21    that.
22         Were you informed by Mr. Amenta that the number, in
23    order to be accurate, had to have the right year; right?
24    A    No.  That's not correct.  I don't believe that's correct.
25    Q    Mr. Amenta informed you that your numbers, these numbers,
```

02:36PM  5
02:36PM 10
02:37PM 15
02:37PM 20
02:38PM 25

1    the ones in the red box, lacked the right year.  He informed

2    you of that; right?

3    A    He did inform us that they didn't have the year in the

4    front.

02:38PM 5    Q    And despite him telling you that, as it relates to these

6    three, you did not add the year; correct?

7    A    That's correct.

8              MR. AVENATTI:  Nothing further, Your Honor.

9              THE COURT:  Mr. Sagel.

02:39PM 10                    **RECROSS-EXAMINATION**

11   BY MR. SAGEL:

12   Q    And despite the year not being included at the front of

13   those, Mr. Amenta was still able to determine that every one of

14   those wires went in interstate commerce; isn't that correct?

02:39PM 15             MR. AVENATTI:  Objection.

16             THE WITNESS:  Absolutely.

17             MR. AVENATTI:  Lacks foundation.

18             THE COURT:  Overruled.

19             THE WITNESS:  Absolutely.

02:39PM 20             MR. SAGEL:  No further questions.

21             THE COURT:  May the witness be excused?

22             MR. AVENATTI:  No, Your Honor.

23             THE COURT:  Sir, you're excused for now, but you're

24   subject to recall.  Thank you.

02:39PM 25             THE WITNESS:  Thank you.

```
 1              THE COURT:  Call your next witness, please.
 2              MR. AVENATTI:  Your Honor, can we have a sidebar?
 3              THE COURT:  No.
 4              MR. AVENATTI:  The defense calls Morgan Witos.
 5              THE COURT:  I understand she was subpoenaed?
 6              MR. AVENATTI:  She was, Your Honor.
 7              THE COURT:  Is she here, to your knowledge?
 8              MR. AVENATTI:  She is not.
 9              THE COURT:  Call your next witness.
10              MR. AVENATTI:  Evan Carter.
11              THE COURT:  I don't think we need to get into the
12    procedural history, but Ms. Carter is going to be here on
13    Tuesday, correct, or is ordered to be here on Tuesday?
14              MR. AVENATTI:  She has been ordered to be here on
15    Tuesday, yes, sir.
16              THE COURT:  Call your next witness.
17              MR. AVENATTI:  John Drum.
18              THE COURT:  We'll take our midafternoon break here,
19    ladies and gentlemen.  Be in recess for 15 minutes.  Please
20    remember the admonition, do not discuss the case with anyone,
21    you're not to form any opinions on the issues of the case until
22    it's submitted to you.  And again, no research.
23              THE COURTROOM DEPUTY:  All rise.
24              (Out of the presence of the jury.)
25              THE COURT:  Is Mr. Drum on your list of witnesses
```

02:40PM (lines 5, 10, 15)
02:41PM (lines 20, 25)

UNITED STATES DISTRICT COURT

|     |                                                                         |
| --- | ----------------------------------------------------------------------- |
| 1   | for today provided to the government?                                   |
| 2   | MR. AVENATTI:  No.  Ms. Carter and Ms. Witos was.                       |
| 3   | Oh, and, Your Honor, he was not on the list for today, but I            |
| 4   | informed the government that we intended on calling him                 |

02:42PM 5  immediately after those two, probably on Friday.

6    THE COURT:  Do you have any other witnesses for

7    today?

8    MR. AVENATTI:  I don't at this time, Your Honor.

9    Unfortunately, I've got, I think, about four or five witnesses

02:42PM 10   left, and I plan on resting after those.

11   THE COURT:  Let the record be correct.  You didn't

12   identify for today Mr. Drum as a witness you intended to call

13   today?

14   MR. AVENATTI:  Well, Your Honor, I didn't --

02:42PM 15   THE COURT:  Sir, answer that question.

16   MR. AVENATTI:  I don't think that's entirely

17   accurate.

18   THE COURT:  Sir, answer that question.

19   MR. AVENATTI:  What is the question?

02:42PM 20   THE COURT:  Did you identify to the government at

21   the close of business yesterday that Mr. Drum would be a

22   witness you desire to have today?

23   MR. AVENATTI:  No, because I didn't think I would

24   need him.  Because I did not anticipate running out of

02:43PM 25   witnesses today, and I've had two other witnesses under

```
 1   subpoena for some time.
 2            THE COURT:  Sir, you knew there was a dispute with
 3   regard to Ms. Carter that we didn't resolve until this morning.
 4   A proper motion was made to quash it, and the Court addressed
 5   that, considered the brief you put in I believe last night, and
 6   allowed -- well, you put a brief in yesterday, and Ms. Carter's
 7   counsel put in a brief later on in the early evening.
 8            Well, we're just going to stop here for today.
 9   Bring the jury back in.
10            (Pause in proceedings.)
11            THE COURT:  We'll be in recess until they come back
12   in.
13            (In the presence of the jury.)
14            THE COURT:  Ladies and gentlemen, it's not common --
15   uncommon in a long trial to run into logistical difficulties
16   with witnesses.  As you perceived, we've had some logistical
17   difficulties today.
18            There are additional logistical difficulties, and
19   there's substantial matters that I need to take up with counsel
20   tomorrow.  And rather than have a truncated day and with
21   logistical problems, I'm going to ask you to come back on
22   Tuesday.
23            I realize that this case is going longer than any of
24   us expected.  I think everyone is doing their best to move it
25   along and to be efficient.  So I regret that it's gone longer
```

**UNITED STATES DISTRICT COURT**

                1   than you anticipated, but I thank you for your perseverance.

                2   I'm going to excuse you for today and ask you to come back

                3   Tuesday at 9:00 o'clock.

                4            Please remember the admonition not to discuss the

02:47PM   5   case with anyone.  You're not to form any opinions on the

                6   issues in the case until it's submitted to you.  So we'll see

                7   you -- and do no research.  We'll see you Tuesday.

                8            THE COURTROOM DEPUTY:  All rise.

                9            **(Out of the presence of the jury.)**

02:48PM  10            THE COURT:  I received the Government's response to

               11   Defendant's Motion at Docket Number 706.  Per your request,

               12   I'll look for your response this evening, Mr. Avenatti.

               13            MR. AVENATTI:  You'll have it by 8:00 p.m.,

               14   Your Honor.

02:48PM  15            THE COURT:  That's good.

               16            MR. AVENATTI:  I think that was the deadline.

               17            THE COURT:  I think you're correct.

               18            MR. AVENATTI:  And then the hearing's in the morning

               19   at 10:30?

02:48PM  20            THE COURT:  Correct.

               21            Anything further for today?

               22            MR. SAGEL:  One thing, Your Honor.  I did find on my

               23   computer the e-mails referenced from Mr. Stolper.  I have them

               24   here.  I feel very confident they don't fall under any

02:49PM  25   discovery obligations.  I can provide them to the Court.  If

1     the Court wants me to provide them to the defense, I can.  If

2     you want me to file them under seal in camera, whatever way you

3     want.  I did -- I was able to find them, and I can proceed

4     however Your Honor believes is appropriate.

02:49PM 5         THE COURT:  If you believe that they're not subject

6     to production under *Brady*, *Giglio* or any other doctrine, make

7     an in-camera filing.  I'll review them and determine whether

8     they're appropriately subject to production.

9         MR. SAGEL:  Thank you, Your Honor.  Will do.

02:49PM 10         MR. AVENATTI:  Your Honor, I just want to state my

11     position for the record, which is any contact that Mr. Stolper

12     had with the U.S. Attorney's Office relating to me, I believe

13     is required to be produced pursuant to *Brady* and Rule 16.

14     Because it has always been my position in this case that it

02:50PM 15     goes to my defense and the good faith, or lack thereof,

16     relating to this prosecution under *Kyles v. Whitley* and the

17     Sager Ninth Circuit case.  I just wanted to state that for the

18     record, Your Honor.  Thank you.

19         THE COURT:  Sir, that's why I'm going to make a

02:50PM 20     detailed review, to see if they're appropriately subject to

21     production.  It doesn't follow that any time Mr. Stolper's name

22     appears that, ipso facto, wherever his name appears is subject

23     to production.  I'm going to make a particularized review.

24         MR. AVENATTI:  Understood, Your Honor.

02:50PM 25         I had one question for the Court at the appropriate

1    time.

2              THE COURT:  Please.

3              MR. AVENATTI:  Unrelated to the --

4              THE COURT:  Please.

02:50PM  5              MR. AVENATTI:  Okay.  We filed -- due to the

6    courtesy of the Court in granting the extension of 130, we

7    filed the supplemental brief relating to Mr. Drum.

8              THE COURT:  Today?

9              MR. AVENATTI:  Yes, sir.

02:51PM 10              THE COURT:  Okay.  I haven't seen that yet.

11              MR. AVENATTI:  Well, we've got a lot of moving

12    pieces here.

13              THE COURT:  Don't worry.  I'll find it.

14              MR. AVENATTI:  We have an extra copy if you'd like

02:51PM 15    it.  Can I approach?

16              THE COURT:  Sure.

17              Thank you.

18              MR. AVENATTI:  You're welcome.

19              My question, Your Honor --

02:51PM 20              THE COURT:  What is it that you are going to then be

21    filing by 8:00 o'clock?

22              MR. AVENATTI:  The reply -- or the document that's

23    filed by 8:00 -- there's two issues, Your Honor.  There's the

24    QuickBooks/Tabs motion, and then there's the Drum/Amenta

02:51PM 25    motion.  You've already ruled on Amenta.  You've reserved on

```
 1   Drum.
 2              THE COURT:  Right.
 3              MR. AVENATTI:  And so we have two issues that have
 4   to be argued.  We have the Tabs/QuickBooks issue.  We're going
 5   to put our papers in by 8:00.  You've set that for 10:30
 6   tomorrow morning and ordered Mr. Fitzgerald to come in.
 7              THE COURT:  Right.
 8              MR. AVENATTI:  And then we have the Drum issue
 9   relating to the Jencks and the statements.
10              THE COURT:  Okay.
11              MR. AVENATTI:  And so what I was going to suggest
12   was that we handle that immediately after Fitzgerald.  But
13   again, I'll --
14              THE COURT:  I'm going to take up the Tabs motion
15   first.
16              MR. AVENATTI:  Okay.  And then we'll wait to hear
17   when the Court wants to hear argument on the other one.
18              THE COURT:  Well, it will probably be right after
19   that.
20              MR. AVENATTI:  Okay.  Tomorrow?
21              THE COURT:  Tomorrow.
22              MR. AVENATTI:  That was my question, Your Honor.
23              THE COURT:  Okay.  Anything further from the
24   government?
25              MR. AVENATTI:  Oh, Your Honor, when do you want to
```

```
 1    have the jury instruction discussion?  And again, I apologize
 2    to the Court for the snafu on the e-mail the other day.  I
 3    apologize --
 4              THE COURT:  Let's see where we are tomorrow, and
 5    let's take that first pass that I wanted to take earlier in the
 6    week tomorrow.  I have a number of questions, a number of
 7    points on which I need discussion from you to advance, to get
 8    closer to a final set of instructions.  So let's see where we
 9    are tomorrow.  But if we don't do it tomorrow, we'll do it
10    Monday.
11              MR. AVENATTI:  For the Court's information and for
12    the Government's information, I'm going to do everything I can
13    to rest on Tuesday.
14              THE COURT:  Okay.
15              MR. AVENATTI:  That's my goal.
16              THE COURT:  Mr. Sagel.
17              MR. SAGEL:  I know Your Honor tells us not to thank
18    Your Honor, but I do appreciate your accommodation for tomorrow
19    morning.  I do appreciate it.
20              THE COURT:  That's not a substantive ruling.
21              MR. SAGEL:  I'll thank you for the non-substantive
22    ruling.  Thank you.
23              THE COURT:  Okay.  Thank you.
24              THE COURTROOM DEPUTY:  All rise.  This court is now
25    in recess.
```



1        (Proceedings concluded at 2:54 p.m.)

2                    --oOo--

1          *CERTIFICATE OF OFFICIAL REPORTER*

2

3    COUNTY OF LOS ANGELES   )
                            )
4    STATE OF CALIFORNIA     )

5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   *Date:  August 19, 2021*

16

17

18

19                          */S/ DEBBIE HINO-SPAAN*
                            _____
20                          *Debbie Hino-Spaan, CSR No. 7953*
                            *Federal Official Court Reporter*
21

22

23

24

25

**UNITED STATES DISTRICT COURT**

## /

**/S** [1] - 57:19

## 1

**1** [2] - 44:13, 44:15
**1-053** [1] - 1:24
**100** [3] - 30:6, 30:15, 45:1
**1084** [1] - 38:23
**1085** [1] - 39:5
**10:30** [2] - 51:19, 54:5
**11** [1] - 3:4
**1100** [1] - 2:11
**130** [1] - 53:6
**14** [1] - 39:8
**15** [1] - 48:19
**16** [3] - 3:4, 42:8, 52:13
**17** [1] - 2:18
**19** [6] - 1:15, 4:1, 37:18, 39:9, 39:21, 57:15
**1:29** [2] - 1:16, 4:2

## 2

**2** [3] - 1:9, 4:9, 5:13
**2019** [12] - 11:19, 13:16, 14:9, 26:19, 26:20, 26:21, 37:18, 37:20, 38:15, 39:9, 39:18, 39:22
**2020** [1] - 26:19
**2021** [4] - 1:15, 4:1, 42:8, 57:15
**213-894-2435** [1] - 2:12
**23** [1] - 1:8
**24** [1] - 3:5
**25** [1] - 3:6
**254** [1] - 2:19
**28** [1] - 57:8
**2:54** [1] - 56:1

## 3

**312** [1] - 2:11

## 4

**401** [2] - 13:19, 16:6
**403** [5] - 13:19, 16:6, 36:10, 40:22, 44:1
**411** [2] - 1:24, 2:6
**44** [1] - 3:7
**45** [1] - 3:7
**457** [10] - 28:24, 33:22, 35:6, 35:9, 35:11,

35:15, 35:19, 35:24, 44:10
**47** [1] - 3:8
**4TH** [1] - 1:24
**4th** [1] - 2:6

## 7

**7** [1] - 3:3
**706** [1] - 51:11
**714-338-3598** [1] - 2:7
**753** [1] - 57:8
**7953** [2] - 1:23, 57:20

## 8

**8000** [1] - 2:6
**84** [1] - 38:24
**85** [1] - 38:23
**8:00** [4] - 51:13, 53:21, 53:23, 54:5

## 9

**90012** [1] - 2:12
**92660** [1] - 2:19
**92701** [2] - 1:25, 2:7
**949-481-4900** [1] - 2:20
**9:00** [1] - 51:3

## A

**able** [11] - 9:6, 10:20, 11:22, 12:5, 13:4, 14:23, 19:19, 19:21, 20:9, 47:13, 52:3
**above-entitled** [1] - 57:11
**absolutely** [4] - 34:23, 38:13, 47:16, 47:19
**access** [11] - 5:8, 5:17, 6:11, 6:18, 14:20, 16:11, 17:19, 19:11, 19:24, 20:1, 21:5
**accommodation** [1] - 55:18
**account** [1] - 5:14
**accuracy** [2] - 33:4, 33:18
**accurate** [14] - 6:13, 30:6, 30:15, 30:19, 30:20, 30:23, 30:25, 31:7, 32:17, 32:22, 44:22, 45:1, 46:23, 49:17
**acquisition** [1] - 40:3
**actual** [1] - 7:11
**add** [2] - 45:23, 47:6
**adding** [1] - 46:18

**additional** [1] - 50:18
**addressed** [1] - 50:4
**admitted** [3] - 35:15, 35:18, 44:10
**admonition** [2] - 48:20, 51:4
**advance** [1] - 55:7
**advice** [1] - 5:12
**advised** [1] - 46:17
**afternoon** [8] - 6:25, 7:1, 7:6, 7:7, 11:12, 11:13, 25:22, 25:23
**afterwards** [1] - 42:14
**agent** [3] - 25:25, 26:3, 26:4
**Agent** [10] - 11:12, 24:15, 26:16, 36:1, 36:2, 37:19, 42:3, 44:9
**agents** [3] - 8:2, 8:4, 39:13
**alex.wyman@usdoj.gov** [1] - 2:13
**ALEXANDER** [1] - 2:10
**alleged** [1] - 4:9
**allowed** [1] - 50:6
**allowing** [1] - 21:5
**amending** [1] - 34:24
**Amenta** [43] - 27:5, 27:10, 27:19, 28:8, 28:10, 28:21, 29:2, 29:23, 30:2, 31:12, 31:22, 32:9, 32:16, 33:21, 33:25, 34:2, 34:3, 34:13, 34:15, 35:8, 35:12, 35:19, 40:18, 40:19, 40:20, 41:3, 41:4, 41:12, 41:23, 41:25, 42:4, 43:9, 44:4, 45:6, 45:16, 45:22, 46:5, 46:8, 46:16, 46:22, 46:25, 47:13, 53:25
**Amenta's** [3] - 33:3, 33:17, 44:16
**AMERICA** [1] - 1:5
**Ana** [1] - 2:7
**ANA** [3] - 1:17, 1:25, 4:1
**analysis** [2] - 23:19, 23:21
**Angeles** [1] - 2:12
**ANGELES** [1] - 57:3
**answer** [11] - 33:12, 33:15, 34:24, 36:16, 36:18, 36:21, 37:3, 39:3, 45:19, 49:15, 49:18
**answered** [1] - 40:22

**anticipate** [1] - 49:24
**anticipated** [1] - 51:1
**apologize** [3] - 10:11, 55:1, 55:3
**APPEARANCES** [1] - 2:1
**appreciate** [2] - 55:18, 55:19
**approach** [2] - 38:21, 53:15
**appropriate** [6] - 5:16, 5:19, 6:1, 6:4, 52:4, 52:25
**appropriately** [2] - 52:8, 52:20
**approval** [3] - 20:25, 24:8, 24:20
**approve** [4] - 17:12, 17:14, 17:23, 18:1
**approved** [4] - 20:5, 20:16, 20:22, 24:6
**area** [2] - 5:1, 32:10
**argued** [1] - 54:4
**argument** [1] - 54:17
**Argumentative** [1] - 31:2
**argumentative** [1] - 36:17
**assist** [2] - 26:10, 26:15
**assistant** [1] - 21:8
**Assistant** [2] - 2:5, 2:10
**assisting** [1] - 44:20
**assume** [1] - 38:13
**attached** [1] - 40:11
**attempt** [2] - 32:19, 39:19
**attention** [2] - 17:1, 39:7
**Attorney** [5] - 2:4, 2:5, 2:9, 2:10, 21:8
**attorney** [4] - 15:6, 15:20, 16:10, 21:17
**Attorney's** [8] - 18:3, 18:5, 18:12, 18:18, 18:23, 18:25, 24:20, 52:12
**August** [1] - 57:15
**AUGUST** [2] - 1:15, 4:1
**AUSA** [5] - 21:8, 29:16, 35:20, 42:2
**AUSAs** [1] - 35:13
**authenticate** [1] - 12:24
**available** [4] - 14:23, 16:5, 19:8, 19:10
**AVENATTI** [104] - 1:8, 2:15, 2:16, 4:7, 4:15,

4:21, 4:25, 5:16, 5:22, 5:25, 6:5, 6:17, 7:5, 11:7, 13:13, 13:19, 13:24, 14:4, 16:6, 16:18, 17:3, 17:5, 22:4, 23:7, 24:11, 25:3, 25:6, 25:21, 29:7, 29:13, 29:23, 30:9, 30:11, 30:18, 31:5, 31:11, 32:1, 32:5, 33:1, 33:3, 33:10, 33:13, 33:15, 33:21, 34:6, 34:19, 36:5, 36:8, 36:13, 36:15, 36:19, 36:22, 36:24, 37:1, 37:5, 38:21, 38:24, 39:2, 39:5, 39:7, 40:25, 41:2, 42:22, 44:4, 44:7, 45:12, 47:8, 47:15, 47:17, 47:22, 48:2, 48:4, 48:6, 48:8, 48:10, 48:14, 48:17, 49:2, 49:8, 49:14, 49:16, 49:19, 49:23, 51:13, 51:16, 51:18, 52:10, 52:24, 53:3, 53:5, 53:9, 53:11, 53:14, 53:18, 53:22, 54:3, 54:8, 54:11, 54:16, 54:20, 54:22, 54:25, 55:11, 55:15
**Avenatti** [11] - 3:3, 3:4, 3:6, 3:7, 4:6, 7:2, 11:15, 25:19, 38:16, 40:4, 51:12
**avoid** [2] - 5:9, 6:13

## B

**backs** [1] - 7:19
**backup** [11] - 7:8, 7:20, 7:22, 9:13, 9:17, 10:7, 10:20, 10:23, 11:5, 43:1
**backups** [3] - 7:15, 9:17, 10:5
**bad** [1] - 22:21
**Bank** [2] - 45:4
**bank** [4] - 32:25, 36:3, 44:22, 45:1
**based** [6] - 4:14, 6:16, 9:19, 32:24, 44:22, 45:1
**Beach** [1] - 2:19
**becoming** [1] - 26:3
**begin** [1] - 26:17
**beginning** [1] - 36:5
**behind** [1] - 25:8

**believes** [1] - 52:4
**Bellis** [2] - 36:1, 36:9
**best** [2] - 42:12, 50:24
**Beyond** [1] - 22:25
**beyond** [1] - 34:21
**big** [2] - 7:13, 12:19
**body** [1] - 6:9
**booted** [2] - 13:2, 14:17
**box** [1] - 47:1
**boxes** [1] - 45:14
**Brady** [3] - 4:8, 52:6, 52:13
**break** [4] - 4:7, 7:8, 27:10, 48:18
**BRETT** [1] - 2:5
**brett.sagel@usdoj. gov** [1] - 2:8
**brief** [4] - 50:5, 50:6, 50:7, 53:7
**briefly** [1] - 7:8
**bring** [3] - 4:24, 6:23, 50:9
**bringing** [1] - 5:21
**brought** [1] - 11:24
**bunch** [1] - 5:8
**business** [1] - 49:21
**BY** [38] - 2:5, 2:18, 3:3, 3:6, 7:5, 11:11, 13:16, 13:22, 14:2, 14:7, 16:9, 16:18, 17:5, 22:4, 23:7, 24:14, 25:21, 29:7, 29:13, 29:23, 30:18, 31:5, 31:11, 32:1, 32:5, 33:3, 33:21, 34:19, 36:8, 36:13, 37:5, 39:7, 41:2, 42:22, 44:4, 44:12, 45:12, 47:11

## C

**CA** [1] - 1:25
**California** [5] - 2:7, 2:12, 2:19, 45:4, 57:7
**CALIFORNIA** [4] - 1:2, 1:17, 4:1, 57:4
**CALLED** [2] - 3:3, 3:6
**camera** [2] - 52:2, 52:7
**cannot** [1] - 4:11
**care** [7] - 30:18, 32:20, 33:3, 33:5, 33:17, 33:19, 44:17
**cared** [2] - 33:8, 44:16
**Carter** [4] - 48:10, 48:12, 49:2, 50:3
**Carter's** [1] - 50:6
**case** [17] - 5:6, 6:11,

26:7, 26:12, 26:17, 26:22, 26:25, 28:17, 29:9, 39:14, 48:20, 48:21, 50:23, 51:5, 51:6, 52:14, 52:17
**Case** [1] - 1:7
**cases** [1] - 38:16
**cassette** [1] - 7:14
**cc'd** [1] - 27:16
**CENTRAL** [1] - 1:2
**Central** [1] - 57:7
**certain** [7] - 10:2, 11:1, 13:2, 14:18, 15:15, 22:14, 38:13
**certainly** [2] - 26:20, 34:6
**CERTIFICATE** [1] - 57:1
**CERTIFIED** [1] - 1:6
**certify** [1] - 57:7
**changes** [6] - 31:7, 31:12, 31:14, 31:16, 31:22, 33:22
**charged** [1] - 37:22
**chart** [27] - 28:23, 28:24, 29:1, 29:2, 29:4, 29:9, 29:13, 29:15, 29:24, 30:3, 30:5, 30:14, 30:18, 30:23, 30:25, 31:5, 31:12, 31:19, 32:24, 44:13, 44:18, 44:21, 44:25, 45:13, 45:23, 46:13
**charts** [1] - 45:7
**chose** [2] - 45:24, 46:1
**Circuit** [1] - 52:17
**City** [1] - 45:4
**clarify** [1] - 24:2
**Clark** [4] - 36:2, 36:9
**clear** [4] - 6:8, 19:23, 22:2, 27:21
**client** [4] - 14:19, 14:20, 14:25, 19:7, 19:10, 20:11
**clients'** [1] - 38:16
**close** [2] - 17:1, 49:21
**closer** [1] - 55:8
**Code** [1] - 57:8
**coded** [1] - 23:10
**collective** [2] - 8:9, 8:10
**collectively** [1] - 7:1
**comment** [1] - 36:24
**commerce** [1] - 47:14
**common** [1] - 50:14
**communicate** [1] - 12:14
**communicated** [4] - 28:16, 35:22, 44:4,

45:22
**communicating** [1] - 28:20
**communications** [4] - 6:7, 33:24, 34:3, 34:14
**compile** [4] - 34:3, 34:14, 34:25, 35:2
**compiled** [1] - 34:21
**compiling** [1] - 35:6
**complete** [1] - 32:24
**computer** [20] - 7:18, 10:17, 10:20, 12:11, 12:13, 12:17, 12:20, 13:5, 13:17, 13:23, 14:3, 14:14, 14:15, 15:11, 23:3, 23:4, 23:6, 23:17, 51:23
**concerns** [1] - 4:20
**concluded** [1] - 56:1
**conduct** [3] - 15:12, 15:14, 41:4
**conducted** [1] - 15:10
**Conference** [1] - 57:12
**confident** [1] - 51:24
**confirm** [6] - 11:21, 30:7, 30:23, 32:9, 32:23, 40:20
**confirmed** [1] - 42:24
**confirming** [2] - 32:13, 33:8
**conformance** [1] - 57:12
**connected** [3] - 7:18, 12:3, 19:16
**connection** [2] - 26:21, 31:21
**considered** [1] - 50:5
**constructing** [1] - 5:14
**consult** [3] - 21:13, 21:14, 31:21
**consultation** [2] - 6:10, 32:6
**contact** [1] - 52:11
**contain** [3] - 12:25, 36:3, 41:12
**contained** [3] - 6:12, 12:23, 14:19
**continuously** [2] - 26:13, 26:14
**conversation** [3] - 41:9, 41:13, 41:17
**conversations** [5] - 42:13, 42:16, 42:20, 42:23, 43:9
**converse** [2] - 35:11, 35:19
**conversed** [1] - 35:21

**conversing** [1] - 30:1
**cooperation** [1] - 6:10
**coordinate** [1] - 26:11
**coordinating** [1] - 28:22
**copied** [5] - 11:25, 12:4, 14:17, 22:13, 22:14
**copies** [2] - 20:16, 21:10
**copy** [16] - 11:23, 11:25, 12:14, 13:8, 14:15, 20:2, 20:6, 20:9, 20:20, 21:12, 21:24, 22:6, 23:12, 38:25, 39:2, 53:14
**Corporate** [1] - 2:18
**correct** [36] - 11:2, 16:23, 17:17, 18:14, 18:17, 21:25, 22:11, 23:25, 24:7, 28:8, 32:12, 32:15, 32:18, 32:22, 34:22, 39:14, 41:24, 44:18, 44:23, 45:2, 45:3, 45:5, 45:8, 45:9, 46:3, 46:7, 46:24, 47:6, 47:7, 47:14, 48:13, 49:11, 51:17, 51:20, 57:9
**counsel** [6] - 15:10, 16:3, 16:20, 24:17, 50:7, 50:19
**COUNSEL** [2] - 2:1, 2:16
**COUNTY** [1] - 57:3
**court** [2] - 25:8, 55:24
**Court** [10] - 34:10, 50:4, 51:25, 52:1, 52:25, 53:6, 54:17, 55:2, 57:6, 57:20
**COURT** [102] - 1:1, 1:24, 4:6, 4:13, 4:19, 4:23, 5:11, 5:20, 5:24, 6:2, 6:15, 6:19, 6:25, 7:2, 11:8, 13:14, 13:20, 13:25, 14:5, 16:7, 17:2, 22:2, 23:1, 24:12, 25:2, 25:4, 25:19, 29:6, 29:12, 29:22, 30:10, 30:12, 31:4, 31:10, 31:25, 32:3, 33:2, 33:7, 33:11, 33:14, 34:9, 34:17, 36:7, 36:12, 36:21, 36:23, 36:25, 38:22, 39:1, 39:4, 39:6, 40:23, 42:18, 44:3, 44:8, 47:9, 47:18,

**conversing** [1] - 30:1
47:21, 47:23, 48:1, 48:3, 48:5, 48:7, 48:9, 48:11, 48:16, 48:18, 48:25, 49:6, 49:11, 49:15, 49:18, 49:20, 50:2, 50:11, 50:14, 51:10, 51:15, 51:17, 51:20, 52:5, 52:19, 53:2, 53:4, 53:8, 53:10, 53:13, 53:16, 53:20, 54:2, 54:7, 54:10, 54:14, 54:18, 54:21, 54:23, 55:4, 55:14, 55:16, 55:20, 55:23, 57:6
**Court's** [1] - 55:11
**courtesy** [1] - 53:6
**courthouse** [1] - 27:23
**COURTROOM** [7] - 25:8, 25:11, 25:14, 25:18, 48:23, 51:8, 55:24
**cover** [1] - 9:21
**covered** [1] - 11:5
**create** [1] - 5:6
**criminal** [1] - 25:25
**CROSS** [2] - 11:10, 44:11
**cross** [1] - 5:2
**Cross** [2] - 3:4, 3:7
**CROSS-EXAMINATION** [2] - 11:10, 44:11
**Cross-Examination** [2] - 3:4, 3:7
**CRR** [1] - 1:23
**CSR** [2] - 1:23, 57:20

## D

**daily** [1] - 7:20
**data** [17] - 5:18, 8:19, 10:12, 10:14, 12:23, 13:11, 16:1, 17:6, 23:14, 39:19, 39:25
**database** [4] - 12:25, 14:18, 19:12
**Date** [1] - 57:15
**date** [3] - 31:19, 31:20, 42:8
**DAY** [1] - 1:8
**deadline** [1] - 51:16
**dealt** [1] - 10:25
**DEAN** [2] - 2:17, 2:18
**deansteward7777@ gmail.com** [1] - 2:20
**DEBBIE** [3] - 1:23, 57:5, 57:19
**Debbie** [1] - 57:20

decide [1] - 18:5
decided [1] - 18:25
decision [5] - 31:16, 31:22, 32:1, 32:6, 46:5
DEFENDANT [1] - 2:14
defendant [18] - 5:17, 11:14, 13:10, 13:18, 14:2, 14:14, 15:3, 15:5, 15:10, 15:20, 15:25, 16:3, 16:10, 24:17, 24:23, 34:7, 44:16
Defendant [1] - 1:9
Defendant's [1] - 51:11
defendant's [1] - 14:12
defense [5] - 21:5, 25:6, 48:4, 52:1, 52:15
DEFENSE [3] - 3:3, 3:6, 25:10
deliver [1] - 8:18
delivered [1] - 8:11
denied [5] - 17:7, 17:8, 33:2, 36:7
deny [5] - 17:10, 17:11, 17:14, 17:23, 18:1
DEPUTY [7] - 25:8, 25:11, 25:14, 25:18, 48:23, 51:8, 55:24
describe [2] - 29:25, 30:1
described [1] - 28:15
describing [1] - 40:8
designed [1] - 12:24
desire [2] - 6:20, 49:22
despite [2] - 47:5, 47:12
detailed [1] - 52:20
determine [3] - 6:3, 47:13, 52:7
device [2] - 8:25, 10:17
devices [4] - 8:20, 8:23, 8:25, 9:1
dhinospaan@yahoo.com [1] - 1:25
different [4] - 12:11, 12:13, 38:1, 44:17
differently [1] - 43:24
difficulties [3] - 50:15, 50:17, 50:18
Direct [2] - 3:3, 3:6
DIRECT [2] - 7:4, 25:20

direct [3] - 11:14, 13:7, 46:4
directing [1] - 39:7
direction [1] - 21:9
directive [2] - 21:23, 22:5
directly [1] - 21:14
disagree [1] - 30:17
discover [1] - 32:19
discovery [4] - 5:4, 34:5, 34:8, 51:25
discuss [2] - 48:20, 51:4
discussion [3] - 29:7, 55:1, 55:7
discussions [1] - 39:21
dispute [2] - 39:16, 50:2
DISTRICT [3] - 1:1, 1:2, 1:3
District [2] - 57:6, 57:7
DIVISION [1] - 1:2
Docket [1] - 51:11
doctrine [1] - 52:6
document [1] - 53:22
documentation [1] - 35:24
done [5] - 8:2, 12:13, 12:19, 14:11
down [5] - 11:24, 11:25, 12:15, 27:10
download [1] - 12:4
drive [5] - 7:12, 10:18, 12:3, 12:4, 12:19
drives [2] - 7:13, 11:25
Drum [7] - 48:17, 48:25, 49:12, 49:21, 53:7, 54:1, 54:8
Drum/Amenta [1] - 53:24
due [1] - 53:5
during [8] - 4:17, 5:18, 15:8, 16:9, 34:5, 38:4, 41:13, 41:16

## E

e-mail [7] - 14:16, 19:17, 19:18, 28:17, 33:24, 35:23, 55:2
e-mails [16] - 14:21, 14:24, 14:25, 26:24, 27:8, 27:9, 27:11, 27:16, 27:17, 27:19, 28:3, 28:10, 28:13, 36:1, 36:2, 51:23
Eagan [3] - 11:15, 38:16, 40:4
early [1] - 50:7

efficient [1] - 50:25
either [8] - 16:2, 16:9, 16:10, 16:13, 16:20, 17:12, 17:23, 22:5
electronic [2] - 8:18, 17:6
elicit [1] - 4:10
employed [1] - 25:24
employee [1] - 32:15
ensure [3] - 30:7, 30:21, 32:16
entirely [3] - 24:5, 44:21, 49:16
entitled [1] - 57:11
entries [1] - 45:13
ESQ [2] - 2:15, 2:18
established [1] - 46:4
Evan [1] - 48:10
evening [2] - 50:7, 51:12
evidence [4] - 8:1, 8:5, 8:6, 44:10
evidentiary [2] - 4:17, 5:4
exact [5] - 28:25, 31:20, 43:15, 43:20, 43:22
exactly [2] - 26:18, 43:18
Examination [8] - 3:3, 3:4, 3:4, 3:5, 3:6, 3:7, 3:7, 3:8
EXAMINATION [8] - 7:4, 11:10, 16:17, 24:13, 25:20, 44:11, 45:11, 47:10
examination [2] - 5:15, 11:15
example [2] - 22:20, 22:21
exception [1] - 14:16
excuse [1] - 51:2
excused [4] - 25:2, 25:4, 47:21, 47:23
Exhibit [5] - 33:22, 35:6, 35:11, 35:24, 44:10
EXHIBITS [1] - 3:15
expected [1] - 50:24
expenses [2] - 38:16, 39:14
experience [2] - 32:13, 45:25
expertise [2] - 31:6, 32:11
export [1] - 20:13
exported [4] - 15:16, 20:17, 24:3, 24:6
extension [1] - 53:6
extra [1] - 53:14

## F

facilitate [1] - 17:19
fact [4] - 13:22, 14:7, 29:8, 46:4
facto [1] - 52:22
fair [2] - 37:14, 40:14
faith [1] - 52:15
fall [4] - 13:16, 14:9, 37:20, 51:24
false [1] - 5:5
far [2] - 22:9, 27:7
fed [1] - 32:20
Federal [1] - 57:20
FEDERAL [2] - 1:24, 57:5
Fedwire [10] - 30:8, 30:22, 30:24, 32:15, 32:21, 32:23, 33:9, 40:8, 42:25, 44:25
Fedwires [1] - 32:17
few [1] - 27:5
file [1] - 52:2
filed [4] - 4:8, 53:5, 53:7, 53:23
files [10] - 7:20, 14:19, 14:20, 14:25, 19:7, 19:10, 20:12, 22:14
FileSite [4] - 19:14, 19:15, 19:16
filing [2] - 52:7, 53:21
final [1] - 55:8
finalized [1] - 31:19
financial [2] - 39:24, 40:4
firm [2] - 39:14, 39:25
first [13] - 20:22, 25:12, 25:14, 26:17, 34:20, 35:4, 35:5, 36:13, 42:11, 42:12, 45:13, 54:15, 55:5
fit [1] - 12:1
Fitzgerald [13] - 5:7, 6:7, 21:7, 21:9, 21:13, 21:16, 21:17, 21:23, 22:6, 54:6, 54:12
five [2] - 26:2, 49:9
follow [1] - 52:21
follows [4] - 30:13, 33:16, 34:12, 37:3
footnote [6] - 4:9, 4:14, 5:5, 5:13, 6:13, 6:21
Footnote [1] - 4:9
FOR [3] - 2:3, 2:14, 2:16
forced [1] - 5:2
forego [1] - 6:19
foregoing [1] - 57:9

forensic [2] - 8:20, 14:23
forensics [1] - 14:22
forewarned [1] - 4:20
form [2] - 48:21, 51:5
format [2] - 19:10, 57:11
foundation [1] - 47:17
four [3] - 26:13, 46:13, 49:9
frame [1] - 9:21
free [2] - 5:13, 22:10
Friday [1] - 49:5
front [7] - 4:12, 5:4, 23:5, 30:19, 46:19, 47:4, 47:12
fulfill [1] - 18:23
fulfilled [1] - 18:22

## G

generally [3] - 7:15, 42:9, 42:10
gentlemen [3] - 6:25, 48:19, 50:14
Giglio [1] - 52:6
given [5] - 8:5, 8:6, 20:15, 21:10, 24:16
goal [1] - 55:15
government [11] - 4:8, 4:10, 5:13, 6:6, 6:16, 6:22, 7:22, 49:1, 49:4, 49:20, 54:24
Government's [2] - 51:10, 55:12
granting [1] - 53:6
guess [1] - 42:12

## H

hand [1] - 25:9
handle [1] - 54:12
handled [1] - 14:21
handwritten [3] - 38:4, 38:7, 38:10
HANNA [2] - 2:4, 2:9
hard [7] - 7:12, 7:13, 10:18, 11:25, 12:3, 12:4, 12:19
hear [5] - 16:13, 34:11, 37:12, 54:16, 54:17
heard [6] - 4:15, 36:17, 37:6, 37:7, 37:9, 37:15
hearing [3] - 4:17, 5:4, 37:10
hearing's [1] - 51:18
hearsay [5] - 29:11, 29:20, 31:3, 31:9,

31:23
**held** [2] - 26:1, 57:10
**help** [2] - 15:12, 26:16
**helped** [1] - 29:23
**hereby** [1] - 57:7
**HINO** [3] - 1:23, 57:5, 57:19
**Hino** [1] - 57:20
**Hino-Spaan** [1] - 57:20
**HINO-SPAAN** [3] - 1:23, 57:5, 57:19
**history** [1] - 48:12
**hold** [1] - 26:5
**home** [2] - 7:23, 8:23
**Honor** [47] - 4:7, 4:15, 4:21, 5:10, 5:16, 5:23, 11:7, 11:9, 13:19, 13:24, 14:4, 16:6, 25:6, 29:5, 29:10, 31:24, 32:2, 33:1, 36:11, 36:16, 36:17, 36:19, 38:21, 39:5, 40:25, 44:2, 44:7, 47:8, 47:22, 48:2, 48:6, 49:3, 49:8, 49:14, 51:14, 51:22, 52:4, 52:9, 52:10, 52:18, 52:24, 53:19, 53:23, 54:22, 54:25, 55:17, 55:18
**HONORABLE** [1] - 1:3
**hope** [1] - 34:6
**hour** [1] - 35:7

### I

**identifier** [2] - 40:12, 40:15
**identify** [3] - 45:24, 49:12, 49:20
**ignore** [1] - 45:24
**ignored** [1] - 31:1
**IMAD** [9] - 32:10, 32:13, 33:4, 33:18, 40:6, 40:9, 46:9, 46:11, 46:20
**IMADs** [1] - 44:25
**image** [4] - 9:4, 9:7, 23:2, 23:8
**imaged** [4] - 8:21, 8:23, 9:6, 9:9
**images** [4] - 8:20, 8:24, 12:1
**immediately** [2] - 49:5, 54:12
**IN** [1] - 2:14
**in-camera** [1] - 52:7
**inaccurate** [1] - 45:8
**include** [4] - 41:15,

41:16, 46:1, 46:5
**included** [1] - 47:12
**incoming** [2] - 40:10, 40:12
**incorrect** [4] - 22:10, 45:16, 45:20, 46:17
**independent** [1] - 6:9
**indicated** [1] - 6:19
**indication** [1] - 10:4
**indictment** [1] - 42:24
**individual** [2] - 8:8, 35:8
**inform** [1] - 47:3
**information** [19] - 8:18, 13:4, 18:2, 18:4, 21:24, 22:7, 32:17, 32:21, 34:25, 35:2, 36:3, 40:4, 43:1, 43:11, 43:13, 43:25, 45:6, 55:11, 55:12
**informed** [7] - 31:6, 39:5, 45:16, 46:22, 46:25, 47:1, 49:4
**installed** [1] - 23:17
**instance** [1] - 38:12
**instances** [2] - 40:17, 46:16
**instruction** [1] - 55:1
**instructions** [1] - 55:8
**intended** [2] - 49:4, 49:12
**interstate** [1] - 47:14
**interview** [7] - 37:24, 37:25, 38:3, 38:4, 38:8, 41:4, 42:5
**interviewed** [2] - 30:4, 41:25
**interviewing** [2] - 26:21, 41:23
**interviews** [4] - 26:10, 26:11, 28:22, 42:24
**investigate** [1] - 39:19
**investigation** [2] - 5:18, 25:25
**involve** [1] - 10:15
**involved** [1] - 40:3
**ipso** [1] - 52:22
**IRS** [3] - 14:2, 25:25, 26:4
**issue** [6] - 4:8, 4:12, 4:16, 20:1, 54:4, 54:8
**issues** [7] - 5:4, 6:20, 23:7, 48:21, 51:6, 53:23, 54:3

### J

**JAMES** [1] - 1:3

**Jeff** [1] - 36:2
**Jencks** [1] - 54:9
**job** [2] - 17:14, 17:19
**John** [2] - 10:24, 48:17
**JOHN** [2] - 1:8, 2:15
**JUDGE** [1] - 1:3
**Judicial** [1] - 57:12
**June** [1] - 42:8
**jury** [20] - 4:5, 4:12, 4:23, 4:24, 5:4, 5:21, 6:23, 6:24, 7:1, 16:19, 19:23, 30:19, 35:12, 35:15, 35:18, 48:24, 50:9, 50:13, 51:9, 55:1

### K

**Karlous** [4] - 26:16, 37:19, 42:3, 44:9
**kept** [1] - 38:16
**Kim** [2] - 26:16, 42:3
**kind** [1] - 8:5
**knowledge** [2] - 16:3, 48:7
**knowledgeable** [3] - 46:9, 46:11
**Kyles** [1] - 52:16

### L

**labeled** [1] - 7:23
**labels** [3] - 9:23, 9:24, 10:1
**lack** [1] - 52:15
**lacked** [1] - 47:1
**lacks** [1] - 47:17
**ladies** [3] - 6:25, 48:19, 50:14
**laptop** [9] - 11:23, 11:24, 12:1, 12:3, 12:4, 12:6, 12:10, 12:13, 12:18
**large** [1] - 12:2
**last** [8] - 10:7, 24:2, 25:12, 25:15, 26:13, 42:11, 46:13, 50:5
**launch** [1] - 22:23, 23:4
**law** [2] - 39:14, 39:25
**LAW** [1] - 2:17
**lawyer** [1] - 17:20
**learn** [1] - 36:13
**learning** [1] - 38:15
**left** [1] - 49:10
**license** [2] - 23:7, 23:14
**licenses** [1] - 23:8
**likely** [2] - 6:7, 10:16

**list** [10] - 6:7, 20:15, 21:15, 21:16, 24:16, 24:19, 24:23, 24:24, 48:25, 49:3
**listen** [2] - 5:11, 6:2
**load** [1] - 23:13
**lobby** [1] - 28:2
**located** [1] - 39:25
**log** [1] - 7:25
**logged** [1] - 8:1
**logging** [1] - 12:24
**logistical** [4] - 50:15, 50:16, 50:18, 50:21
**look** [7] - 7:13, 10:11, 10:14, 13:11, 16:1, 23:14, 51:12
**looked** [1] - 32:16
**LOS** [1] - 57:3
**Los** [1] - 2:12

### M

**machine** [2] - 7:17, 12:18, 23:11
**machines** [4] - 11:22, 12:2, 12:7, 12:15
**mail** [4] - 14:16, 19:17, 19:18, 28:17, 33:24, 35:23, 55:2
**mails** [16] - 14:21, 14:24, 14:25, 26:24, 27:8, 27:9, 27:11, 27:16, 27:17, 27:19, 28:3, 28:10, 28:13, 36:1, 36:2, 51:23
**marked** [1] - 39:2
**materials** [7] - 12:17, 12:21, 13:18, 15:2, 15:5, 15:15, 15:18
**matter** [3] - 27:18, 27:22, 57:11
**matters** [1] - 50:19
**mean** [8] - 5:22, 7:13, 22:15, 23:13, 26:14, 38:1, 43:13, 43:22
**meaning** [4] - 17:17, 18:14, 21:2, 28:2
**means** [4] - 37:11, 37:13, 43:23
**meant** [1] - 43:25
**meeting** [3] - 37:20, 37:22, 39:18
**meetings** [4] - 14:11, 15:8, 16:2, 16:9
**memo** [2] - 38:3, 38:12, 41:22
**memorandum** [6] - 38:3, 38:8, 41:10, 41:12, 41:16, 42:8
**memorandums** [1] -

43:4
**memorialize** [2] - 26:10, 41:9
**memorialized** [1] - 37:24, 37:25
**mention** [1] - 16:13
**mentioned** [7] - 14:25, 28:4, 37:9, 38:19, 38:20, 39:11, 39:12
**message** [1] - 40:11
**messages** [6] - 26:24, 27:8, 27:9, 27:11, 28:14, 34:21
**met** [2] - 37:19, 41:2
**MICHAEL** [2] - 1:8, 2:15
**Microsoft** [4] - 19:19, 19:20, 19:21, 22:18
**midafternoon** [1] - 48:18
**middle** [1] - 4:17
**might** [3] - 7:20, 8:10, 10:24
**minitrial** [2] - 5:6, 6:13
**minute** [1] - 33:11
**minutes** [1] - 48:19
**Misstates** [1] - 13:13
**moment** [1] - 40:25
**Monday** [1] - 55:10
**months** [1] - 26:13
**Morgan** [1] - 48:4
**morning** [4] - 50:3, 51:18, 54:6, 55:19
**most** [1] - 10:16
**Motion** [1] - 51:11
**motion** [4] - 50:4, 53:24, 53:25, 54:14
**move** [6] - 4:19, 30:9, 33:1, 33:10, 36:5, 50:24
**moving** [2] - 5:14, 53:11
**MR** [138] - 2:16, 4:7, 4:15, 4:21, 4:25, 5:16, 5:22, 5:25, 6:5, 6:17, 7:5, 11:7, 11:9, 11:11, 13:13, 13:16, 13:19, 13:22, 13:24, 14:2, 14:4, 14:7, 16:6, 16:9, 16:16, 16:18, 17:3, 17:5, 22:4, 22:25, 23:7, 24:11, 24:14, 25:1, 25:3, 25:6, 25:21, 29:5, 29:7, 29:10, 29:13, 29:20, 29:23, 30:9, 30:11, 30:18, 31:2, 31:5, 31:9, 31:11, 31:23, 32:1, 32:2, 32:5, 33:1,

33:3, 33:6, 33:10, 33:13, 33:15, 33:21, 34:4, 34:6, 34:7, 34:16, 34:19, 36:5, 36:8, 36:10, 36:13, 36:15, 36:17, 36:19, 36:22, 36:24, 37:1, 37:5, 38:21, 38:24, 39:2, 39:5, 39:7, 40:22, 40:25, 41:2, 42:17, 42:22, 44:1, 44:4, 44:7, 44:9, 44:12, 45:10, 45:12, 47:8, 47:11, 47:15, 47:17, 47:20, 47:22, 48:2, 48:4, 48:6, 48:8, 48:10, 48:14, 48:17, 49:2, 49:8, 49:14, 49:16, 49:19, 49:23, 51:13, 51:16, 51:18, 51:22, 52:9, 52:10, 52:24, 53:3, 53:5, 53:9, 53:11, 53:14, 53:18, 53:22, 54:3, 54:8, 54:11, 54:16, 54:20, 54:22, 54:25, 55:11, 55:15, 55:17, 55:21
**multiple** [2] - 9:17, 27:3

## N

**name** [7] - 19:12, 21:18, 25:12, 25:15, 27:5, 52:21, 52:22
**names** [1] - 20:11
**National** [1] - 45:4
**necessarily** [3] - 19:18, 23:13, 23:16
**need** [4] - 48:11, 49:24, 50:19, 55:7
**needed** [3] - 21:5, 26:16, 45:23
**never** [3] - 16:20, 19:3, 37:7
**new** [5] - 43:11, 43:12, 43:13, 43:14, 43:25
**Newport** [1] - 2:19
**next** [3] - 48:1, 48:9, 48:16
**NICOLA** [2] - 2:4, 2:9
**night** [1] - 50:5
**Ninth** [1] - 52:17
**nobody** [1] - 13:15
**non** [1] - 55:21
**non-substantive** [1] - 55:21
**None** [1] - 3:16
**nonresponsive** [2] -

30:9, 36:6
**normal** [1] - 23:5
**North** [1] - 2:11
**noted** [1] - 5:21
**notes** [6] - 29:18, 37:22, 38:2, 38:4, 38:7, 38:10
**nothing** [8] - 11:7, 24:11, 41:20, 41:21, 43:12, 43:14, 44:7, 47:8
**notice** [1] - 6:6
**November** [5] - 37:18, 38:15, 39:9, 39:18, 39:21
**Nshan** [3] - 27:5, 27:13, 27:19
**NSHAN** [2] - 3:3, 7:3
**number** [10] - 8:5, 8:7, 8:8, 8:9, 8:10, 9:19, 28:25, 46:22, 55:6
**Number** [1] - 51:11
**numbers** [12] - 32:10, 32:14, 33:4, 33:19, 45:16, 45:24, 46:10, 46:17, 46:18, 46:20, 46:25

## O

**o'clock** [2] - 51:3, 53:21
**oath** [2] - 16:19, 16:22
**object** [2] - 4:11, 36:19
**objection** [18] - 5:20, 13:13, 13:19, 16:6, 22:25, 29:5, 29:10, 31:2, 31:9, 31:23, 33:6, 34:4, 36:10, 40:22, 42:17, 44:1, 47:15
**objections** [5] - 6:4, 13:24, 14:4, 29:20, 32:2
**obligations** [1] - 51:25
**obtained** [1] - 11:18
**occurred** [1] - 41:22
**OF** [7] - 1:2, 1:5, 1:14, 2:1, 57:1, 57:3, 57:4
**offered** [2] - 3:16, 45:21
**Office** [8] - 18:3, 18:5, 18:12, 18:18, 18:23, 18:25, 24:20, 52:12
**office** [2] - 14:3, 21:21
**OFFICES** [1] - 2:17
**Official** [1] - 57:20
**OFFICIAL** [3] - 1:24, 57:1, 57:5

**OMAD** [9] - 32:10, 32:13, 33:4, 33:18, 40:6, 40:10, 46:9, 46:11, 46:20
**OMADs** [1] - 44:25
**once** [2] - 13:23, 23:2
**one** [16] - 9:16, 10:25, 22:21, 24:2, 40:25, 42:7, 42:15, 42:19, 42:23, 43:11, 47:13, 51:22, 52:25, 54:17
**ones** [3] - 23:24, 27:4, 47:1
**oOo** [1] - 56:2
**open** [4] - 19:18, 19:19, 19:20, 23:5
**opened** [1] - 19:22
**operating** [2] - 23:15, 23:16
**opinion** [2] - 44:16, 45:25
**opinions** [2] - 48:21, 51:5
**order** [7] - 13:2, 14:18, 20:6, 23:13, 45:23, 46:23
**ordered** [3] - 48:13, 48:14, 54:6
**orders** [1] - 21:14
**original** [1] - 23:11
**outgoing** [2] - 40:10, 40:12
**Outlook** [1] - 19:20
**overruled** [12] - 13:14, 13:20, 13:25, 14:5, 16:7, 23:1, 32:3, 33:7, 34:17, 40:23, 42:18, 47:18
**own** [2] - 32:1, 32:4

## P

**P.M** [2] - 1:16, 4:2
**p.m** [2] - 51:13, 56:1
**package** [1] - 23:13
**packages** [2] - 22:15
**page** [3] - 44:13, 44:15, 57:11
**PAGE** [1] - 3:2
**papers** [1] - 54:5
**paragraph** [2] - 6:12, 39:8
**part** [4] - 21:2, 21:3, 29:14, 44:20
**particular** [2] - 13:4, 39:13
**particularized** [1] - 52:23
**party** [1] - 6:9
**pass** [1] - 55:5

**Patrick** [1] - 21:7
**Pause** [2] - 41:1, 50:10
**paying** [1] - 17:1
**people** [2] - 5:8, 26:21
**per** [1] - 51:11
**perceived** [1] - 50:16
**percent** [3] - 30:6, 30:15, 45:1
**period** [1] - 11:5
**perseverance** [1] - 51:1
**person** [2] - 18:1, 41:7
**phone** [3] - 41:7, 41:8, 42:3
**physically** [1] - 7:11
**piece** [1] - 17:6
**pieces** [1] - 53:12
**place** [1] - 33:25
**Plaintiff** [1] - 1:6
**PLAINTIFF** [1] - 2:3
**plan** [1] - 49:10
**played** [1] - 21:4
**Plaza** [1] - 2:18
**plug** [1] - 10:18
**point** [8] - 13:10, 13:16, 20:19, 31:11, 34:20, 36:10, 41:2, 41:5
**points** [1] - 55:7
**portions** [1] - 13:5
**position** [3] - 45:25, 52:11, 52:14
**power** [2] - 12:8, 23:3
**powerful** [1] - 12:19
**powering** [1] - 23:3
**practice** [2] - 38:11, 38:14
**preparation** [2] - 30:2, 44:20
**prepare** [5] - 29:2, 29:23, 35:8, 38:12, 42:4
**prepared** [5] - 4:14, 29:1, 29:13, 29:15, 29:24
**preparing** [1] - 44:21
**prerequisite** [1] - 24:8
**presence** [5] - 4:5, 6:24, 48:24, 50:13, 51:9
**present** [4] - 8:13, 15:6, 15:8, 42:1
**presented** [1] - 35:12
**privy** [7] - 18:11, 18:14, 18:18, 18:20, 18:21, 20:24
**PRO** [1] - 2:14
**problem** [2] - 4:21, 5:3

**problems** [1] - 50:21
**procedural** [1] - 48:12
**procedure** [2] - 10:23, 34:8
**proceed** [2] - 5:21, 52:3
**Proceedings** [1] - 56:1
**proceedings** [3] - 41:1, 50:10, 57:10
**PROCEEDINGS** [1] - 1:14
**process** [2] - 12:5, 12:16, 20:25
**processed** [1] - 14:22
**produce** [1] - 29:18
**produced** [1] - 52:13
**product** [2] - 31:24, 36:11
**production** [4] - 52:6, 52:8, 52:21, 52:23
**program** [9] - 13:12, 16:4, 16:11, 19:16, 19:17, 22:14, 22:17, 22:23
**programs** [1] - 23:22
**prompted** [1] - 6:20
**proper** [1] - 50:4
**properly** [1] - 45:24
**prosecution** [2] - 6:11, 52:16
**provide** [12] - 15:15, 17:20, 19:1, 19:2, 19:3, 21:12, 21:15, 21:24, 22:6, 24:22, 51:25, 52:1
**provided** [17] - 5:13, 15:17, 16:21, 19:11, 19:23, 19:24, 20:1, 20:11, 24:24, 30:3, 30:5, 30:14, 30:21, 38:3, 43:14, 45:6, 49:1
**providing** [1] - 6:5
**pull** [1] - 44:10
**purely** [1] - 28:1
**purpose** [3] - 28:20, 36:8, 42:16
**pursuant** [2] - 52:13, 57:8
**put** [8] - 4:22, 5:5, 13:5, 30:19, 50:5, 50:6, 50:7, 54:5
**putting** [1] - 6:6

## Q

**quash** [1] - 50:4
**questions** [12] - 5:12, 5:24, 5:25, 6:3, 6:20,

10:22, 11:14, 16:16, 25:1, 45:10, 47:20, 55:6
**QuickBooks/Tabs** [1] - 53:24

## R

**R-o-b-e-r-s-o-n** [1] - 25:17
**raise** [1] - 25:9
**raising** [1] - 5:10
**rather** [1] - 50:20
**read** [10] - 30:11, 30:13, 33:13, 33:16, 34:12, 36:15, 36:16, 36:21, 37:2, 37:3
**realize** [1] - 50:23
**really** [1] - 5:8
**REALTIME** [1] - 57:5
**received** [5] - 18:6, 18:8, 19:5, 21:14, 51:10
**recess** [3] - 48:19, 50:11, 55:25
**recognize** [1] - 23:10
**recognizes** [1] - 23:14
**recollection** [3] - 37:18, 38:15, 39:8
**record** [4] - 22:3, 49:11, 52:11, 52:18
**records** [5] - 32:25, 36:3, 36:6, 44:22, 45:1
**Recross** [2] - 3:5, 3:8
**RECROSS** [2] - 24:13, 47:10
**Recross-Examination** [2] - 3:5, 3:8
**RECROSS-EXAMINATION** [2] - 24:13, 47:10
**red** [2] - 45:14, 47:1
**REDIRECT** [2] - 16:17, 45:11
**redirect** [1] - 24:16
**Redirect** [2] - 3:4, 3:7
**reference** [1] - 4:9
**referenced** [2] - 33:24, 51:23
**reflected** [1] - 10:7
**refresh** [1] - 39:8
**regard** [1] - 50:3
**regarding** [2] - 6:11, 40:4
**Regnier** [10] - 9:1, 9:2, 10:22, 11:4, 27:6, 28:12, 37:19, 37:21, 38:19, 39:9

**Regnier's** [2] - 7:23, 8:23
**regret** [1] - 50:25
**regulations** [1] - 57:12
**related** [3] - 16:1, 21:4, 21:9
**relates** [1] - 47:5
**relating** [9] - 10:23, 32:17, 32:21, 33:4, 33:18, 52:12, 52:16, 53:7, 54:9
**Relevance** [4] - 29:5, 33:6, 34:4, 42:17
**relevance** [2] - 29:21, 34:16
**remember** [8] - 9:1, 13:12, 20:11, 24:3, 32:5, 43:3, 48:20, 51:4
**remote** [1] - 13:17
**repeat** [1] - 35:14
**reply** [1] - 53:22
**reported** [1] - 57:10
**REPORTER** [3] - 1:24, 57:1, 57:6
**Reporter** [1] - 57:20
**reporter** [5] - 25:9, 30:13, 33:16, 34:12, 37:3
**REPORTER'S** [1] - 1:14
**request** [9] - 14:12, 16:4, 17:24, 18:2, 18:22, 20:2, 20:5, 20:25, 51:11
**requested** [1] - 20:12
**requests** [2] - 17:14, 17:23
**required** [1] - 52:13
**research** [2] - 48:22, 51:7
**reserved** [1] - 53:25
**residence** [2] - 8:1, 8:16
**resolve** [1] - 50:3
**respect** [1] - 4:20
**responded** [1] - 7:1
**response** [3] - 4:8, 51:10, 51:12
**rest** [1] - 55:13
**resting** [1] - 49:10
**restore** [5] - 10:16, 10:19, 12:7, 12:8
**resumed** [2] - 3:3, 7:4
**RESUMED** [1] - 7:3
**return** [1] - 9:4
**returning** [1] - 9:1
**revenue** [1] - 26:4
**review** [1] - 12:6, 12:20, 13:5, 14:3,

14:15, 15:3, 16:5, 30:3, 52:7, 52:20, 52:23
**reviewed** [4] - 15:5, 15:11, 42:20, 43:2
**reviewing** [4] - 28:23, 42:22, 43:3, 43:6
**rise** [3] - 48:23, 51:8, 55:24
**ROBERSON** [2] - 3:6, 25:10
**Roberson** [2] - 25:7, 25:16
**role** [7] - 21:4, 26:5, 26:7, 26:9, 30:22, 32:23, 32:24
**ROOM** [1] - 1:24
**rows** [1] - 46:13
**Rule** [1] - 52:13
**ruled** [1] - 53:25
**ruling** [3] - 4:14, 55:20, 55:22
**run** [1] - 50:15
**running** [1] - 49:24
**Ryan** [2] - 25:7, 25:16
**RYAN** [3] - 3:6, 25:10, 25:16

## S

**SACR-19-00061-JVS** [1] - 1:7
**SAGEL** [26] - 2:5, 29:5, 29:10, 29:20, 31:2, 31:9, 31:23, 32:2, 33:6, 34:4, 34:7, 34:16, 36:10, 36:17, 40:22, 42:17, 44:1, 44:9, 44:12, 45:10, 47:11, 47:20, 51:22, 52:9, 55:17, 55:21
**Sagel** [3] - 3:7, 3:8, 5:17, 21:4, 35:20, 37:19, 44:8, 47:9, 55:16
**Sager** [1] - 52:17
**SANTA** [3] - 1:17, 1:25, 4:1
**Santa** [1] - 2:7
**save** [1] - 38:11
**scan** [1] - 38:11
**scene** [2] - 8:3, 8:4
**scope** [1] - 22:25
**SE** [1] - 2:14
**seal** [1] - 52:2
**search** [2] - 8:19, 14:24
**searches** [3] - 15:10, 15:12, 15:14

**second** [1] - 34:20
**Section** [1] - 57:8
**see** [17] - 6:15, 6:21, 10:18, 11:22, 12:8, 12:16, 23:19, 23:21, 45:13, 45:14, 46:14, 51:6, 51:7, 52:20, 55:4, 55:8
**seized** [6] - 7:22, 8:1, 8:6, 8:14, 8:22, 9:9
**select** [1] - 13:4
**SELNA** [1] - 1:3
**sending** [1] - 36:8
**sent** [3] - 27:17, 35:23, 36:1
**separately** [1] - 14:21
**serious** [1] - 4:16
**server** [16] - 7:21, 9:7, 9:8, 11:23, 12:14, 12:17, 14:16, 16:21, 19:11, 22:16, 22:18, 22:24, 23:12, 23:15, 23:16
**servers** [20] - 6:11, 9:14, 9:17, 11:15, 11:18, 12:6, 12:21, 12:22, 12:23, 12:24, 13:1, 13:5, 13:8, 13:18, 14:16, 14:17, 19:8, 20:20, 22:13, 23:22
**set** [8] - 7:19, 12:16, 13:17, 13:22, 14:14, 19:21, 54:5, 55:8
**seven** [1] - 26:6
**shaped** [1] - 7:17
**sidebar** [1] - 48:2
**single** [2] - 6:17, 17:6
**sit** [5] - 9:10, 10:1, 11:1, 23:24, 43:7
**sitting** [1] - 23:5
**slightly** [1] - 44:17
**snafu** [1] - 55:2
**software** [17] - 7:19, 13:1, 14:19, 14:22, 14:23, 16:4, 16:11, 19:12, 19:19, 19:22, 22:15, 22:17, 23:4, 23:9, 23:10, 23:13, 23:21
**someone** [5] - 12:20, 17:23, 18:5, 32:6, 45:25
**sometime** [1] - 31:20
**sometimes** [1] - 37:12
**sorry** [9] - 15:11, 18:17, 18:21, 25:13, 35:14, 36:15, 38:19, 39:3, 39:11
**sort** [1] - 7:12

**sorts** [1] - 12:21
**SOUTHERN** [1] - 1:2
**Spaan** [1] - 57:20
**SPAAN** [3] - 1:23, 57:5, 57:19
**special** [6] - 7:16, 14:18, 24:15, 25:25, 26:3
**Special** [9] - 11:12, 26:15, 26:16, 36:1, 36:2, 37:19, 42:2, 42:3, 44:9
**specifically** [3] - 16:24, 20:12, 38:18
**spell** [2] - 25:12, 25:14
**spend** [1] - 35:6
**Spring** [1] - 2:11
**spring** [1] - 11:19
**stand** [3] - 4:11, 5:17, 25:8
**STAND** [1] - 7:3
**standard** [2] - 38:11, 38:14
**STANDBY** [1] - 2:16
**start** [1] - 40:15
**started** [1] - 13:10
**state** [4] - 25:11, 25:14, 52:10, 52:17
**STATE** [1] - 57:4
**statements** [1] - 54:9
**States** [7] - 2:4, 2:5, 2:9, 2:10, 57:6, 57:8, 57:13
**STATES** [2] - 1:1, 1:5
**stenographically** [1] - 57:10
**steps** [2] - 37:13, 37:16
**Steve** [1] - 36:1
**Steward** [1] - 5:7
**STEWARD** [2] - 2:17, 2:18
**still** [3] - 13:7, 43:24, 47:13
**Stolper** [2] - 51:23, 52:11
**Stolper's** [1] - 52:21
**stop** [2] - 23:11, 50:8
**STREET** [1] - 1:24
**Street** [2] - 2:6, 2:11
**stricken** [2] - 30:10, 33:12
**strictly** [1] - 28:18
**strike** [8] - 23:20, 30:9, 33:1, 33:10, 36:5, 37:6, 41:3, 46:20
**strongly** [1] - 4:11
**stuff** [3] - 12:4, 20:13, 28:2

**subject** [9] - 25:5, 27:18, 27:20, 27:21, 47:24, 52:5, 52:8, 52:20, 52:22
**submitted** [2] - 48:22, 51:6
**subpoena** [1] - 50:1
**subpoenaed** [1] - 48:5
**substantial** [1] - 50:19
**substantive** [4] - 43:8, 43:10, 55:20, 55:21
**successfully** [2] - 9:7, 19:19
**suggest** [1] - 54:11
**suggested** [8] - 31:7, 31:12, 31:22, 33:22, 46:5, 46:7, 46:18, 46:20
**suggestion** [2] - 45:7, 45:21
**Suite** [3] - 2:6, 2:11, 2:19
**summarizing** [1] - 45:2
**summary** [1] - 40:14
**superior** [1] - 17:20
**supplemental** [1] - 53:7
**supported** [1] - 36:4
**surprise** [1] - 38:19
**sustained** [8] - 29:6, 29:12, 29:22, 31:4, 31:10, 31:25, 36:12, 44:3
**SWORN** [1] - 25:10
**system** [1] - 32:20

**T**

**Tabs** [19] - 13:12, 16:1, 16:4, 16:11, 16:13, 36:13, 36:14, 37:4, 37:8, 37:9, 37:15, 38:17, 38:20, 39:10, 39:12, 39:14, 39:19, 39:22, 54:14
**Tabs/QuickBooks** [1] - 54:4
**taint** [3] - 6:1, 6:8, 6:10
**tape** [1] - 8:8
**tapes** [23] - 7:8, 7:11, 7:14, 7:18, 7:22, 8:13, 9:4, 9:5, 9:6, 9:7, 9:11, 9:13, 9:16, 9:19, 9:21, 9:23, 10:1, 10:8, 10:12, 10:14, 10:23, 11:5
**TASHCHYAN** [2] - 3:3, 7:3

**Tashchyan** [3] - 11:12, 24:15, 28:6
**tasks** [1] - 26:11
**team** [4] - 6:8, 6:10, 26:10, 32:8
**ten** [1] - 42:24
**testified** [12] - 11:22, 13:7, 24:15, 27:7, 33:25, 34:2, 34:13, 34:22, 34:23, 34:25, 35:2, 44:5
**testify** [8] - 27:23, 29:2, 29:4, 29:8, 29:17, 29:19, 29:24, 35:9
**testimony** [14] - 4:9, 16:19, 16:21, 17:5, 17:7, 19:4, 27:18, 27:20, 27:22, 28:17, 30:2, 34:5, 42:5, 43:9
**text** [7] - 26:24, 27:8, 27:9, 27:10, 28:14, 28:16, 34:21
**texted** [1] - 27:16
**THE** [130] - 2:3, 2:14, 3:3, 3:6, 4:6, 4:13, 4:19, 4:23, 5:11, 5:20, 5:24, 6:2, 6:15, 6:19, 6:25, 7:2, 7:3, 11:8, 13:14, 13:15, 13:20, 13:21, 13:25, 14:1, 14:5, 14:6, 16:7, 16:8, 17:2, 17:4, 22:2, 23:1, 23:2, 24:12, 25:2, 25:4, 25:8, 25:11, 25:13, 25:14, 25:16, 25:18, 25:19, 29:6, 29:12, 29:22, 30:10, 30:12, 30:17, 31:4, 31:10, 31:25, 32:3, 32:4, 33:2, 33:7, 33:8, 33:11, 33:14, 33:20, 34:9, 34:17, 34:18, 36:7, 36:12, 36:21, 36:23, 36:25, 38:22, 39:1, 39:4, 39:6, 40:23, 40:24, 42:18, 42:19, 44:3, 44:8, 47:9, 47:16, 47:18, 47:19, 47:21, 47:23, 47:25, 48:1, 48:3, 48:5, 48:7, 48:9, 48:11, 48:16, 48:18, 48:23, 48:25, 49:6, 49:11, 49:15, 49:18, 49:20, 50:2, 50:11, 50:14, 51:8, 51:10, 51:15, 51:17,

51:20, 52:5, 52:19, 53:2, 53:4, 53:8, 53:10, 53:13, 53:16, 53:20, 54:2, 54:7, 54:10, 54:14, 54:18, 54:21, 54:23, 55:4, 55:14, 55:16, 55:20, 55:23, 55:24
**thereof** [1] - 52:15
**third** [2] - 6:9, 43:11
**third-party-independent** [1] - 6:9
**three** [9] - 26:13, 28:11, 42:6, 42:13, 43:8, 45:13, 46:13, 46:16, 47:6
**thumbprint** [2] - 40:7, 40:8
**thumbprints** [1] - 40:9
**THURSDAY** [2] - 1:15, 4:1
**tied** [1] - 23:8
**Title** [1] - 57:8
**title** [1] - 26:1
**today** [17] - 9:10, 10:1, 11:1, 16:22, 23:24, 49:1, 49:3, 49:7, 49:12, 49:13, 49:22, 49:25, 50:8, 50:17, 51:2, 51:21, 53:8
**together** [1] - 13:1
**tomorrow** [9] - 50:20, 54:6, 54:20, 54:21, 55:4, 55:6, 55:9, 55:18
**took** [4] - 20:12, 24:19, 38:2, 40:3
**tracked** [1] - 39:14
**TRANSCRIPT** [2] - 1:6, 1:14
**transcript** [2] - 57:9, 57:11
**trial** [8] - 4:18, 26:10, 31:20, 32:8, 34:21, 37:5, 37:7, 50:15
**TRIAL** [1] - 1:8
**true** [9] - 18:17, 22:4, 24:5, 31:8, 31:11, 45:22, 46:2, 46:10, 57:9
**truncated** [1] - 50:20
**Trust** [1] - 45:4
**try** [1] - 22:9
**trying** [1] - 29:2
**Tuesday** [7] - 48:13, 48:15, 50:22, 51:3, 51:7, 55:13
**turn** [1] - 38:7
**twice** [1] - 14:7

**two** [13] - 16:2, 16:9, 28:11, 35:7, 42:6, 42:13, 42:15, 43:8, 43:10, 49:5, 49:25, 53:23, 54:3
**type** [1] - 28:1
**typewritten** [1] - 38:8
**typically** [1] - 38:9

**U**

**U.S** [10] - 1:3, 18:3, 18:5, 18:12, 18:18, 18:23, 18:25, 21:8, 24:20, 52:12
**uncommon** [1] - 50:15
**under** [7] - 16:19, 16:22, 49:25, 51:24, 52:2, 52:6, 52:16
**underlying** [4] - 32:24, 35:23, 36:3, 44:22
**understood** [8] - 15:2, 17:22, 18:4, 20:7, 20:22, 27:25, 46:8, 52:24
**unfortunately** [1] - 49:9
**unique** [1] - 40:12
**UNITED** [2] - 1:1, 1:5
**United** [7] - 2:4, 2:5, 2:9, 2:10, 57:6, 57:8, 57:13
**unless** [2] - 21:23, 22:4
**unrelated** [1] - 53:3
**up** [16] - 5:17, 7:19, 12:16, 13:2, 13:17, 13:22, 14:14, 14:17, 19:18, 19:21, 19:22, 23:5, 44:10, 50:19, 54:14
**user** [1] - 12:24

**V**

**Varani** [4] - 27:6, 27:15, 27:19, 28:4
**various** [1] - 8:22
**VCR** [2] - 7:14, 7:18
**via** [1] - 28:16
**view** [7] - 10:20, 12:17, 31:6, 32:21, 33:4, 33:17, 43:25
**virtual** [6] - 11:22, 12:2, 12:7, 12:14, 14:17, 23:2
**VOLUME** [1] - 1:9
**vs** [1] - 1:7

**W**

**WAH** [1] - 13:1
**wait** [1] - 54:16
**waiting** [1] - 4:23
**walk** [1] - 20:10
**wants** [2] - 52:1, 54:17
**warrant** [1] - 8:19
**WAS** [1] - 25:10
**weeds** [1] - 22:9
**week** [4] - 34:20, 55:6
**weekly** [1] - 7:20
**Weeks** [1] - 10:24
**weeks** [3] - 8:11, 8:13, 8:16
**welcome** [1] - 53:18
**West** [1] - 2:6
**WEST** [1] - 1:24
**Whitley** [1] - 52:16
**whole** [4] - 5:8, 10:19, 13:2, 13:6
**wire** [3] - 40:10, 40:11, 40:13
**wires** [8] - 30:7, 30:21, 30:23, 32:20, 32:23, 33:9, 42:24, 47:14
**witness** [9] - 4:10, 5:1, 25:2, 47:21, 48:1, 48:9, 48:16, 49:12, 49:22
**WITNESS** [21] - 7:3, 13:15, 13:21, 14:1, 14:6, 16:8, 17:4, 23:2, 25:10, 25:13, 25:16, 30:17, 32:4, 33:8, 33:20, 34:18, 40:24, 42:19, 47:16, 47:19, 47:25
**witnesses** [12] - 19:25, 26:11, 26:25, 27:2, 27:3, 27:6, 48:25, 49:6, 49:9, 49:25, 50:16
**WITNESSES** [1] - 3:2
**Witos** [2] - 48:4, 49:2
**woodring** [3] - 21:19, 21:24, 22:5
**word** [5] - 37:9, 37:10, 37:12, 37:15, 38:20
**Word** [3] - 19:20, 19:21, 22:18
**worry** [1] - 53:13
**WYMAN** [12] - 2:10, 11:9, 11:11, 13:16, 13:22, 14:2, 14:7, 16:9, 16:16, 22:25, 24:14, 25:1
**Wyman** [8] - 3:4, 3:5, 11:8, 16:25, 24:12, 29:16, 35:20, 42:2

## Y

**year** [7] - 40:15, 45:17, 46:23, 47:1, 47:3, 47:6, 47:12
**years** [4] - 26:2, 26:6, 45:23, 46:1
**yesterday** [2] - 49:21, 50:6
**yourself** [1] - 32:6