1

1

2

3

4                  UNITED STATES DISTRICT COURT

5                CENTRAL DISTRICT OF CALIFORNIA

6                       SOUTHERN DIVISION

7                            - - -

8       THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9
         UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
10                          Plaintiff,  )
            vs.                         )
11                                      )  SACR-19-00061-JVS
         MICHAEL JOHN AVENATTI,         )
12                          Defendant.  )TRIAL DAY 22, VOL. 1
         -----------------------------)
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                 Santa Ana, California

17                  August 19, 2021

18

19                      SHARON A. SEFFENS, RPR
                        United States Courthouse
20                      411 West 4th Street, Suite 1-1053
                        Santa Ana, CA  92701
21                      (714) 543-0870

22

23

24

25

          SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1    APPEARANCES OF COUNSEL:

 2    For the Plaintiff:

 3    NICOLA T. HANNA
      United States Attorney
 4    BRANDON D. FOX
      Assistant United States Attorney
 5    Chief, Criminal Division
      ALEXANDER WYMAN
 6    Assistant United States Attorney
      Major Frauds Section
 7    1100 United States Courthouse
      312 North Spring Street
 8    Los Angeles, CA  90012
      (213) 894-6683
 9
      BRETT A. SAGEL
10    Assistant United States Attorney
      Ronald Reagan Federal Building
11    411 West Fourth Street, Suite 8000
      Santa Ana, CA  92701
12    (714) 338-3598

13    For the Defendant:

14    MICHAEL JOHN AVENATTI, PRO SE

15    H. DEAN STEWARD, ADVISORY COUNSEL
      H. DEAN STEWARD LAW OFFICES
16    107 Avenida Miramar, Suite C
      San Clemente, CA  92672
17    (949) 481-4900

18

19

20

21

22

23

24

25
```

```
 1
 2                          I-N-D-E-X
 3
 4    PLAINTIFF'S
      WITNESSES:              DIRECT   CROSS   REDIRECT   RECROSS
 5
      (None)
 6
      PLAINTIFF'S
 7    EXHIBITS:                                MARKED     RECEIVED
 8    (None)
 9    DEFENSE
      WITNESSES:      DIRECT   CROSS    REDIRECT   RECROSS
10
      REMOUN KARLOUS       18
11
      DEFENSE
12    EXHIBITS:                               MARKED     RECEIVED
13    (None)
14
15
16
17
18
19
20
21
22
23
24
25
```

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | SANTA ANA, CALIFORNIA; WEDNESDAY, AUGUST 18, 2021; 8:28 A.M.          |
| 08:28 | 2  | (Jury not present)                                                   |
| 08:28 | 3  | THE CLERK:  Item 1, SACR-19-00061-JVS, United                        |
| 08:28 | 4  | States of America versus Michael John Avenatti.                      |
| 08:28 | 5  | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel                   |
| 08:28 | 6  | and Alexander Wyman on behalf of the United States.  And             |
| 08:28 | 7  | also at counsel table is Special Agent Remoun Karlous.               |
| 08:28 | 8  | THE COURT:  Good morning.                                            |
| 08:28 | 9  | MR. AVENATTI:  Good morning, Your Honor.  Michael                    |
| 08:29 | 10 | Avenatti present with Mr. Steward and Ms. Cummings-Cefali.           |
| 08:29 | 11 | THE COURT:  Good morning.                                            |
| 08:29 | 12 | The government filed its opposition to the Rule 29                   |
| 08:29 | 13 | motion at Docket 717.  The government's opposition is at             |
| 08:29 | 14 | Docket 726.  And Mr. Avenatti also filed a supplement at             |
| 08:29 | 15 | Docket 727.                                                          |
| 08:29 | 16 | As I indicated yesterday, I'm going to reserve on                    |
| 08:29 | 17 | everything but Counts 1, 2, 4, and 5.                                |
| 08:29 | 18 | Do you want to be heard?                                             |
| 08:29 | 19 | MR. AVENATTI:  Briefly.  Your Honor, I would like                    |
| 08:29 | 20 | the opportunity -- we just got of the government's                   |
| 08:29 | 21 | opposition last night.                                               |
| 08:29 | 22 | THE COURT:  Well, sir, yes, that's true.                             |
| 08:29 | 23 | MR. AVENATTI:  They cited some case law within                       |
| 08:29 | 24 | that document and they cited some facts that I don't believe         |
| 08:29 | 25 | are accurate.  I don't believe the cases stand for the               |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:29   1   propositions that they're cited for.  So what I would like

08:30   2   is an opportunity to submit a reply in support of the

08:30   3   Rule 29 by 6:00 p.m. tonight.

08:30   4           THE COURT:  Where are you in your case-in-chief?

08:30   5           MR. AVENATTI:  Your Honor, I anticipate wrapping

08:30   6   probably on Friday.

08:30   7           THE COURT:  A brief by 6:00 p.m. will be fine.  We

08:30   8   will take it up Thursday, the Rule 29 motion.

08:30   9           MR. AVENATTI:  Your Honor, I appreciate the

08:30   10  briefing opportunity.  I didn't hear the part about -- take

08:30   11  it up in the morning?

08:31   12          THE COURT:  Correct.

08:31   13          MR. AVENATTI:  Okay.  Thank you, sir.

08:31   14          THE COURT:  Mr. Avenatti put in an opposition to

08:31   15  Ms. Carter's motion to quash the subpoena.  I indicated to

08:31   16  Ms. Marino yesterday that she would have until noon to put

08:31   17  in a reply.  So I'll look for that, and I'll rule on it

08:31   18  promptly.  We have a little bit more time if you now expect

08:31   19  your case is going to go into Friday.

08:31   20          MR. AVENATTI:  And in that regard, Your Honor, we

08:31   21  filed a witness list last night.

08:31   22          THE COURT:  Noted.

08:31   23          MR. AVENATTI:  I would like to have the

08:31   24  opportunity if possible to make a proffer in camera relating

08:31   25  to a number of those witnesses because I anticipate that

08:31  1   there may be issues relating to them, and I would like to at
08:31  2   least make the proffer for the benefit of the Court and the
08:31  3   record in order to get some guidance from the Court as to
08:31  4   whether some of those witnesses will be permitted or not.
08:32  5   It will allow me to plan out my case-in-chief over the next
08:32  6   few days, which is of obvious critical importance.
08:32  7            THE COURT:  Does the government have any thoughts
08:32  8   on that?  It's somewhat unusual for a party to have someone
08:32  9   on the witness list and then want to make a proffer.
08:32 10            MR. SAGEL:  I'm sorry.  Did you say unusual?
08:32 11            THE COURT:  Unusual.
08:32 12            MR. SAGEL:  I would agree with that statement.
08:32 13   And to ask whether or not, if I am understanding what was
08:32 14   just said, to ask the Court to give basically a preliminary
08:32 15   ruling on whether it would be admissible under 403 or some
08:32 16   other reason, I don't really know that that's appropriate
08:32 17   especially without the other side in light of what may have
08:33 18   occurred in the last in-camera.
08:33 19            I don't know that the proffer in camera on its own
08:33 20   would be supported by the facts in the record.  I think
08:33 21   that -- I look at some of these people on the witness list
08:33 22   and, I mean, at least for some of them -- well, I won't
08:33 23   guess right now as I sit here, but I don't really know that
08:33 24   that's the mechanism to go forward.
08:33 25            Your Honor obviously has discretion under 611 and

08:33  1    a lot of different modes of how you want to conduct your

08:33  2    courtroom and trials.

08:33  3              THE COURT:  Well, it seems to me from what

08:33  4    Mr. Avenatti presents, I'm going to be called upon to make

08:33  5    determinations about what subjects can or cannot be

08:33  6    addressed, what specific evidence can or cannot come in.

08:34  7              I don't believe doing that ex parte is

08:34  8    appropriate.  So I'm not going to afford you an in-camera

08:34  9    hearing with respect to your witnesses.

08:34  10             MR. AVENATTI:  Understood, Your Honor.  But before

08:34  11   any witness is precluded from my case-in-chief, because it's

08:34  12   so critical to my due process right and my right under the

08:34  13   Sixth Amendment to present a defense, I want to have an

08:34  14   ample opportunity to be heard by the Court and I want to

08:34  15   have an ample opportunity to make a record.

08:34  16             So whether that's in an in-camera proffer or

08:34  17   whether it's before Your Honor in open court like this,

08:34  18   either is fine by me, but I want to have the opportunity to

08:34  19   make a record.

08:34  20             And what I am concerned about is curtailed

08:34  21   discussion about some of these witnesses and just having

08:35  22   them eliminated without my ability to make that record and

08:35  23   explain why they're critical to my defense.

08:35  24             THE COURT:  Sir, no one has made a motion to

08:35  25   exclude any of your witnesses at this point, so we will

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:35  1    proceed in the normal fashion.  Obviously if you perceive
08:35  2    evidentiary issues will come up during the witness's
08:35  3    testimony, you are free to raise that with the Court in the
08:35  4    presence of the government so we can, if at all possible,
08:35  5    deal with the issue and move expeditiously through the
08:35  6    testimony.
08:35  7            MR. AVENATTI:  Understood, Your Honor.  I'm trying
08:35  8    to make this run as smoothly as possible.  I will give an
08:35  9    example.
08:35  10           THE COURT:  Well, my point is due process cuts
08:35  11   both ways.
08:35  12           MR. AVENATTI:  Understood, Your Honor.  I'll give
08:35  13   you an example.  I want to call Ms. Phan back to the stand,
08:35  14   and I want to talk to her about what the Newport Beach
08:36  15   investigator told her.
08:36  16           Now, you sustained objections while she was on the
08:36  17   stand relating to that questioning.  I want to be able to
08:36  18   present argument to Your Honor, preferably before she gets
08:36  19   on the stand, about why that questioning is appropriate and
08:36  20   permissible under the rules of evidence in light of
08:36  21   especially what she's already testified to.
08:36  22           THE COURT:  Sir, you tell me how much time you
08:36  23   think you're going to need, and we'll schedule a hearing
08:36  24   sufficiently in advance of the day she's going to come on to
08:36  25   deal with that.  I have no problem with that.  I think

08:36  1    that's the appropriate way to proceed.

08:36  2              MR. AVENATTI:  Thank you.

08:36  3              THE COURT:  We've been getting together at 8:30

08:36  4    regularly.  We got together at 8:00 yesterday.  We can get

08:36  5    together even earlier if you think you need additional time

08:36  6    to present issues to the Court with regard to the witnesses

08:36  7    on your witness list.

08:37  8              With regard to Mr. Amenta, I have read

08:37  9    Mr. Avenatti's reply to the government shown at Docket 720.

08:37  10   I'm going to deny the motion to strike Mr. Amenta's

08:37  11   testimony or to grant a mistrial.

08:37  12             I believe that the document on which Mr. Avenatti

08:37  13   focuses is -- would have been appropriate ground for

08:37  14   cross-examination, but I don't believe it's material to the

08:37  15   government's overall showing with that witness.  You don't

08:37  16   have Mr. Amenta on your witness list.  If you want to call

08:37  17   him back, so be it.

08:38  18             MR. AVENATTI:  Your Honor, briefly.  The Jencks

08:38  19   Act and 26.2 do not have an exception that states:  If,

08:38  20   however, the information was provided in some other form,

08:38  21   the government need not disclose it.  That is nowhere in the

08:38  22   Jencks Act.  It's nowhere in 26.2.

08:38  23             Those two statutes and the case of Jencks which is

08:38  24   still operative, as Your Honor knows, are very simple and

08:38  25   they are very straightforward, all statements of a witness

08:38   1   in the possession of the government.  That did not happen.

08:38   2         That's beyond dispute.  There was no even attempt

08:38   3   to have it happen.  They didn't even look for the documents.

08:38   4   They didn't even ask the witness for any documents.

08:38   5         THE COURT:  Well, that's not quite true.  In the

08:38   6   filing that the government made at Docket 690, there's five

08:39   7   documents, three of which had been previously produced.  I

08:39   8   don't think it's accurate to say that the government made no

08:39   9   effort.

08:39  10         MR. AVENATTI:  Your Honor, they produced

08:39  11   typewritten interview summaries.  And this is one of the

08:39  12   fundamental problems in this case, and it's been a

08:39  13   fundamental problem.  Despite them mocking me, claiming that

08:39  14   I don't know what Jencks is -- so, Your Honor, Jencks is not

08:39  15   just whatever they type into a summary.  That's not what

08:39  16   Jencks is limited to.

08:39  17         They never looked for the e-mails, and they never

08:39  18   produced the e-mails.  And, Your Honor, it's actually more

08:39  19   serious than that, because we still don't have the e-mails

08:39  20   from the witness relating to the work that he did.  And

08:39  21   those two are Jencks statements, and they're statements

08:39  22   under 26.2.

08:39  23         We don't have the e-mails, for instance,

08:40  24   from Mr. Amenta when he went to go verify the wires.  That's

08:40  25   Jencks.  It's in the possession of the government.  We still

08:40  1    don't have that information.  And I should have had the
08:40  2    benefit of all of that information and the two e-mails
08:40  3    before I began the cross-examination of the witness,
08:40  4    especially in light of the fact that I have repeatedly
08:40  5    complained in this case about not having Jencks information
08:40  6    produced.  And I have now been proven right on at least two
08:40  7    occasions as it relates to Mr. Amenta and Mr. Drum.

08:40  8          So the analysis, Your Honor, under the case law is
08:40  9    very simple.  Were those two e-mails Jencks or not?  I don't
08:40 10    think there is any question that they were Jencks.  If they
08:40 11    were Jencks, were they produced before I began my
08:40 12    cross-examination?  Obviously the answer to that question is
08:41 13    no.

08:41 14          If those two questions are answered yes and no,
08:41 15    there is only two results permitted under the case law and
08:41 16    the statute -- striking the witness, or a mistrial.  That's
08:41 17    it.  There is no other option, and that's what we have asked
08:41 18    for, because the statements were clearly Jencks and they
08:41 19    were not produced.  And we still don't have all the
08:41 20    statements.

08:41 21          And the same thing is going to be true as it
08:41 22    relates to Mr. Drum when we get to Mr. Drum.  So this is
08:41 23    their problem.  This is their fault.  This is their failure,
08:41 24    and they should pay the price that's set forth in the
08:41 25    statute and the case law.  There is no other action.

08:41   1           THE COURT:  Sir, I have your position.

08:41   2           Does the government want to respond?

08:41   3           MR. WYMAN:  Briefly.  Your Honor, we're prepared

08:42   4   to file a written response on Mr. Drum.  Unfortunately,

08:42   5   we've been holding off hoping that the defendant might file

08:42   6   a supplement after we produced what was previously the

08:42   7   in-camera filing about 48 hours ago -- or it's a little bit

08:42   8   less than that -- to the defense.  Because he hasn't filed

08:42   9   anything yet, we will probably --

08:42   10          THE COURT:  Well, I didn't set a specific

08:42   11  deadline.  Mr. Avenatti indicated he was going to file

08:42   12  something in response your, quote, in-camera showing.

08:42   13          MR. WYMAN:  Of course, Your Honor.  I just was

08:42   14  going to say we will probably file something soon so that

08:42   15  the Court has the law in front of it on this issue, because

08:42   16  it's not case that those are the only two remedies.

08:42   17          In fact, the law makes clear that the appropriate

08:42   18  remedy in a situation like this is to make the witness

08:42   19  available for further cross-examination if he so desires.

08:42   20  We will do that with Mr. Amenta and Mr. Drum.  As Your Honor

08:42   21  can see from his witness list, Mr. Amenta isn't on it.  If

08:42   22  he wishes to cross-examine him on these e-mails, we will

08:43   23  make him available.

08:43   24          THE COURT:  He did reserve on Mr. Amenta and he

08:43   25  did reserve on Mr. Drum.

08:43   1              MR. WYMAN:  Yes, Your Honor.

08:43   2              And with regard to his claim that he doesn't have

08:43   3   the e-mails for Mr. Amenta to verify the wire, I understood

08:43   4   Mr. Amenta to be saying those were e-mails he sent

08:43   5   internally at Fed Ref.

08:43   6              If the defendant is suggesting that the Federal

08:43   7   Reserve Bank of New York is somehow within our custody,

08:43   8   possession, and control, I don't believe there's any support

08:43   9   for that whatsoever.  And if he's not suggesting that and if

08:43  10   he's referring to other e-mails, I'm not sure what e-mails

08:43  11   he's referring to.

08:43  12              MR. AVENATTI:  Your Honor, for the record what I'm

08:43  13   referring to is as follows.  Anytime we talk about an

08:43  14   obligation of the prosecution in this case, they prefer that

08:43  15   the Court define government as the two AUSAs sitting at the

08:43  16   table.

08:43  17              That's not the definition of government under the

08:43  18   law when it relates to Jencks or 26.2 or Brady or Giglio.

08:44  19   And the other issue is this, Your Honor.  That e-mail where

08:44  20   he corrected the chart and basically said the IMAD numbers

08:44  21   were wrong because they didn't have the year, that was Brady

08:44  22   and it was Giglio.

08:44  23              I was entitled to that a long time ago.  I was

08:44  24   entitled to that when the e-mail was sent to the government.

08:44  25   It should have been immediately produced as Brady and Giglio

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:44  1  before the trial even began.  I certainly should have been
08:44  2  given it before he took the stand, and I wasn't.
08:44  3         Furthermore, Your Honor, there is a reason why
08:44  4  Jencks and 26.2 has a temporal requirement that the
08:44  5  information be produced before cross-examination begins.
08:44  6  The reason for that is so that you can strategize and
08:44  7  determine how you're going to cross-examine a witness.
08:45  8  That's why the temporal requirement is in place.
08:45  9         Otherwise, Your Honor, if the law was as Mr. Wyman
08:45  10  has stated --
08:45  11         THE COURT:  We'll find out when he presents his
08:45  12  memorandum.
08:45  13         MR. AVENATTI:  And I'm going to submit, Your
08:45  14  Honor, that's not the law, because if that was the law --
08:45  15         THE COURT:  We'll find out when he submits his
08:45  16  memorandum.
08:45  17         MR. AVENATTI:  I understand.  If that was the law,
08:45  18  Your Honor, then every time there was a Jencks violation and
08:45  19  it was discovered during the trial, you would just recall
08:45  20  the witness.  No problem.  That's not the law.  That's not
08:45  21  what it requires.
08:45  22         So we have a Jencks violation, a 26.2 violation, a
08:45  23  Giglio violation, and a Brady violation.  And it's not
08:45  24  enough to say, well, he can just recall him and now
08:45  25  cross-examine him.

08:45  1          THE COURT:  Sir, you have stated your position.

08:45  2          MR. AVENATTI:  Thank you.

08:45  3          Did you want to hear about Drum now, or do you

08:45  4   want to --

08:45  5          THE COURT:  No.  I indicated that I didn't want to

08:46  6   take that up until you had an opportunity to respond to the

08:46  7   396-page filing that the government made in camera and I

08:46  8   ordered be delivered to you.

08:46  9          MR. AVENATTI:  Understood.

08:46  10          THE COURT:  396 pages is a lot of paper.

08:46  11          MR. AVENATTI:  It certainly is.

08:46  12          THE COURT:  And I want to give you a fair

08:46  13   opportunity to assimilate what the government has assembled.

08:46  14          MR. AVENATTI:  It certainly is, Your Honor, and we

08:46  15   still don't have what we're entitled to.  We still don't

08:46  16   have it.  We don't have it.  So at some point that's going

08:46  17   to have to be addressed because we don't have it.

08:46  18          THE COURT:  Sir, we're going to take this up after

08:46  19   you have had a fair opportunity to respond to the

08:46  20   government's filing.

08:46  21          Anything else we can take up at this time?

08:46  22          MR. SAGEL:  Very briefly.  The witness list we

08:47  23   received for today, at least the first witness is Special

08:47  24   Agent Karlous.  I don't know if should have to say this, but

08:47  25   I will say it so that it's clear and Your Honor will know

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:47  1    where we're coming from.

08:47  2            If Mr. Avenatti asks questions that opens the door

08:47  3    to his investigation, what he did, why he did it, the scope,

08:47  4    anything like that, the mere fact that when the case

08:47  5    started, the manner in which it started, the crimes in which

08:47  6    it led to, and so forth, may be open.

08:47  7            THE COURT:  Let's just see what the direct is.

08:47  8            MR. SAGEL:  Understood.  But just so that there is

08:47  9    no question about that that's our anticipation based on

08:47  10   those questions --

08:47  11           THE COURT:  Let's see what the direct is.

08:47  12           MR. SAGEL:  Absolutely, Your Honor.

08:47  13           THE COURT:  Some directs are more surgical than

08:47  14   others.

08:47  15           MR. SAGEL:  Understood.  I just want Your Honor to

08:47  16   know where we'll come from, so especially if we ask

08:48  17   questions or -- to take it up with Your Honor.

08:48  18           THE COURT:  That's fine.

08:48  19           Mr. Avenatti, do any of the witnesses that you

08:48  20   intend to call today raise any of the issues that suggest

08:48  21   they might or should have been taken up in-camera?

08:48  22           MR. AVENATTI:  Not that I can think of right now.

08:48  23           THE COURT:  Okay.

08:48  24           MR. AVENATTI:  I do have one other request.

08:48  25           THE COURT:  Okay.

08:48  1        MR. AVENATTI:  Am I ever going to get the Tabs

08:48  2  data?  It's Brady.  I'm entitled to it.  I should have had

08:48  3  it a long time ago.  Your honor will recall the

08:48  4  representation that Mr. Sagel made yesterday, and we are

08:48  5  going to hear testimony today about this.  We're going to

08:48  6  find out if what he told the Court is true.  Today we're

08:48  7  going to hear it.

08:48  8        But regardless, Your Honor, I'm entitled to the

08:49  9  Tabs data, and it's never been produced.  It should have

08:49  10 been produced, and I want it produced.

08:49  11       THE COURT:  Sir, I understand your position.

08:49  12       MR. AVENATTI:  I need it for my defense.

08:49  13       THE COURT:  There is nothing further to add at

08:49  14 this time on that subject.  You've made your record.

08:49  15       MR. AVENATTI:  Has there been a ruling from the

08:49  16 Court that I'm not entitled to it?

08:49  17       THE COURT:  We're going to take this up as part of

08:49  18 the Drum issue.

08:49  19       Okay, we'll be in recess.

08:49  20             (Recess taken at 8:49 a.m.;

08:49  21             proceedings resumed at 9:18 a.m.)

08:49  22             (Jury present)

09:18  23       THE CLERK:  Item 1, SACR-19-00061-JVS, United

09:18  24 States of America versus Michael John Avenatti.

09:18  25       MR. SAGEL:  Good morning, Your Honor.  Brett Sagel

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:18   1    and Alexander Wyman on behalf of the United States.  And at

09:18   2    counsel table is Special Agent Remoun Karlous.

09:18   3                    THE COURT:  Good morning.

09:18   4                    MR. AVENATTI:  Good morning, Your Honor.  Michael

09:18   5    Avenatti, present with Mr. Dean Steward and

09:18   6    Ms. Cummings-Cefali.  Ms. Hernandez will be joining us

09:18   7    momentarily.

09:18   8                    THE COURT:  Good morning.

09:18   9                    And good morning, ladies and gentlemen.

09:18   10                   THE JURY:  Good morning.

09:18   11                   THE COURT:  Mr. Avenatti, would you call your next

09:18   12   witness, please.

09:18   13                   MR. AVENATTI:  Yes, Your Honor.

09:18   14                   The defense calls Special Agent Remoun Karlous.

09:18   15                    REMOUN KARLOUS, DEFENSE WITNESS, SWORN

09:19   16                   THE CLERK:  If you would please state and spell

09:19   17   your first and last name.

09:19   18                   THE WITNESS:  Remoun Karlous, R-e-m-o-u-n,

09:19   19   K-a-r-l-o-u-s.

09:19   20                   THE CLERK:  Thank you.

09:19   21                   THE COURT:  Mr. Avenatti.

09:19   22                        DIRECT EXAMINATION

09:19   23   BY MR. AVENATTI:

09:19   24   Q    Special Agent Karlous, good morning.

09:19   25   A    Good morning.

| | | | |
|---|---|---|---|
| 09:19 | 1 | Q | Are you employed by the Department of Justice? |
| 09:19 | 2 | A | I am not. |
| 09:19 | 3 | Q | Who are you employed by? |
| 09:19 | 4 | A | The United States Treasury Department. |
| 09:19 | 5 | Q | And how long have you been employed by the Treasury |
| 09:20 | 6 | | Department? |
| 09:20 | 7 | A | Approximately 26 years. |
| 09:20 | 8 | Q | What is your current title? |
| 09:20 | 9 | A | Special agent. |
| 09:20 | 10 | Q | How long have you held that title? |
| 09:20 | 11 | A | Approximately 26 years. |
| 09:20 | 12 | Q | Did you hold that same title in 2018 and '19? |
| 09:20 | 13 | A | Yes. |
| 09:20 | 14 | Q | What did you do to prepare to testify here today? |
| 09:20 | 15 | A | Not much.  I have sat through the trial.  That's about |
| 09:20 | 16 | | it. |
| 09:20 | 17 | Q | You didn't have any discussions with Mr. Sagel or |
| 09:20 | 18 | | Mr. Wyman or anybody in preparation for your testimony here |
| 09:20 | 19 | | today? |
| 09:20 | 20 | A | Just brief discussions that we have every morning. |
| 09:20 | 21 | Q | Did you review any documents in preparation for your |
| 09:20 | 22 | | testimony here today? |
| 09:20 | 23 | A | I did not. |
| 09:20 | 24 | Q | You didn't review anything yesterday or last night in |
| 09:20 | 25 | | preparation to testify, sir? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:21    1    A    No.
09:21    2    Q    Now, in March of 2019 you were present when a search
09:21    3    warrant was executed at the home of Ms. Judy Regnier; is
09:21    4    that correct?
09:21    5    A    That's correct.
09:21    6    Q    And before appearing at Ms. Regnier's home on that
09:21    7    morning, you were involved in the planning of that search
09:21    8    warrant; were you not?
09:21    9    A    No.  There was a team leader who was responsible for
09:21   10    that search warrant site.
09:21   11    Q    And what was his or her name?
09:21   12    A    I don't recall.
09:21   13    Q    Were you generally aware of what was going to happen on
09:21   14    the morning of March 25th before you showed up at
09:21   15    Ms. Regnier's residence?
09:21   16    A    Yes.
09:22   17    Q    Were you aware -- well, strike that.  What was your
09:22   18    understanding as to how many law enforcement individuals
09:22   19    were going to appear at Ms. Regnier's residence on the
09:22   20    morning of March 25th?
09:22   21    A    I didn't prepare any of those details.  That was the
09:22   22    team leader.
09:22   23    Q    So when you showed up at Ms. Regnier's residence, you
09:22   24    thought it was just going to be you and Mr. Sagel?
09:22   25    A    No.  It was a search warrant, so they were well

09:22   1   prepared to execute a search warrant.

09:22   2   Q    And how many people do you recall seeing on the morning

09:22   3   of March 25th from the federal government at Ms. Regnier's

09:22   4   residence?

09:22   5   A    An estimate, 10 to 15.

09:22   6   Q    And that included you and Mr. Sagel, correct?

09:22   7   A    No.  We were not on the search warrant team.

09:23   8   Q    So the 10 to 15 individuals on the search warrant team

09:23   9   were in addition to you and Mr. Sagel, right?

09:23  10   A    Yes.

09:23  11   Q    Was there anyone else from the federal government

09:23  12   present other than the 10 to 15 individuals plus you and

09:23  13   Mr. Sagel?

09:23  14   A    No.

09:23  15   Q    Were you aware that a helicopter was going to be used

09:23  16   in connection with the search warrant?

09:23  17   A    We don't have a helicopter.

09:23  18         MR. AVENATTI:  More move to strike, Your Honor.

09:23  19         THE COURT:  It will be stricken.

09:23  20   BY MR. AVENATTI:

09:23  21   Q    Sir, before you showed up on the morning of March 25th

09:23  22   at Ms. Regnier's front door together with 10 to 15 other

09:23  23   federal law enforcement individuals, were you aware that

09:23  24   there was going to be a helicopter?

09:24  25   A    No.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:24 | 1 | Q    You had no idea?

09:24 | 2 | A    No idea.

09:24 | 3 | Q    So that came as a complete surprise to you, right?

09:24 | 4 | A    Absolutely.  As a matter of fact, I've never seen the

09:24 | 5 | helicopter.

09:24 | 6 | Q    You don't dispute that in fact there was a law

09:24 | 7 | enforcement helicopter; do you?

09:24 | 8 | A    I know of no helicopter.  I did not see a helicopter

09:24 | 9 | that day.

09:24 | 10 | Q    Well, you sat here when Ms. Regnier testified that in

09:24 | 11 | fact there was an Orange County sheriff's helicopter

09:24 | 12 | overhead.  You heard that testimony, correct?

09:24 | 13 | A    I heard her say that.

09:24 | 14 | Q    Do you dispute that?

09:24 | 15 | A    I have no idea.

09:24 | 16 | Q    When you showed up on the morning of March 25th, did

09:24 | 17 | you have a concern that Ms. Regnier would flee her

09:24 | 18 | residence, thus requiring the use of a helicopter?

09:25 | 19 |         MR. SAGEL:  Objection.  Foundation, 403.

09:25 | 20 |         THE COURT:  Sustained.

09:25 | 21 | BY MR. AVENATTI:

09:25 | 22 | Q    Sir, did you have a concern when you showed up at the

09:25 | 23 | residence of Ms. Regnier that there was a risk that she

09:25 | 24 | would attempt to flee the residence?

09:25 | 25 | A    I did not have that concern, no.

09:25  1  Q    But what you did know was that a major press conference

09:25  2  had been scheduled by the U.S. Attorney's Office for later

09:25  3  that morning.  You knew that, right?

09:25  4  A    I don't recall.

09:25  5           MR. SAGEL:  Objection.  Vague as to U.S.

09:25  6  Attorney's Office, Your Honor.

09:25  7           THE COURT:  Overruled.

09:25  8           THE WITNESS:  I don't recall there being a press

09:26  9  conference that day.  I was busy all day.

09:26  10  BY MR. AVENATTI:

09:26  11  Q    So when you appeared at Ms. Regnier's home, you were

09:26  12  not aware that the U.S. Attorney's Office in Los Angeles was

09:26  13  going to be holding a press conference about Michael

09:26  14  Avenatti.  Is that your testimony?

09:26  15  A    I don't recall.

09:26  16  Q    Now, what was your role that day at Ms. Regnier's home?

09:26  17  A    We wanted to give Ms. Regnier an opportunity to speak

09:26  18  with us if she wanted to.

09:26  19  Q    Well, I'm not asking about we.  I'm asking about you,

09:26  20  Special Agent Karlous.  What was your role at Ms. Regnier's

09:27  21  home that day?

09:27  22  A    Attempt an interview of Ms. Regnier.

09:27  23  Q    Together with Mr. Sagel, right?

09:27  24  A    Yes.

09:27  25  Q    Anyone else?

09:27  1    A    There was another agent with us.

09:27  2    Q    Who was that?

09:27  3    A    Melinda Ball.

09:27  4    Q    Anyone else?

09:27  5    A    I don't recall anyone else.

09:27  6    Q    And in connection with your attempt to interview

09:27  7    Ms. Regnier, you separated her from husband who also lived

09:27  8    in the home, right?

09:27  9    A    No.

09:27  10   Q    So when Ms. Regnier testified on the stand under oath

09:27  11   that in fact she had been separated from her husband, that

09:27  12   was untrue to the best of your knowledge; is that right?

09:27  13   A    No, it's not.

09:27  14   Q    So when she stated that she had been separated from her

09:28  15   husband that morning, that was true; am I correct?

09:28  16   A    That may have been true.  I wasn't there at the time.

09:28  17   Q    Well, when you were interviewing her, her husband was

09:28  18   not present; is that right?

09:28  19   A    He was not.

09:28  20   Q    He was outside; is that correct?

09:28  21   A    He was not at the residence when I arrived.

09:28  22   Q    Well, how long were you at the residence that day?

09:28  23   A    Approximately six hours.

09:28  24   Q    And is it your testimony that during that six-hour time

09:28  25   period, Robert Regnier, Ms. Regnier's husband, never came

09:28   1   home?

09:28   2   A    I believe I saw him at the end of the day.

09:28   3   Q    And you saw him outside?

09:28   4   A    Yes.

09:28   5   Q    Did you have the understanding when you saw him outside

09:28   6   that in fact he had been instructed to be outside?

09:28   7   A    I have no idea because I wasn't there during the entry

09:29   8   and clearing of the house.

09:29   9   Q    What do you mean when you say the clearing of the

09:29  10   house?

09:29  11   A    Just making the house safe.  They have gone through.

09:29  12   They know who is in the house and who is not in the house.

09:29  13   Q    And another thing they look for in order to make the

09:29  14   house safe is guns, right?

09:29  15   A    Yes.

09:29  16   Q    Did they locate any guns on the premises of

09:29  17   Ms. Regnier's home on that morning?

09:29  18          MR. SAGEL:  Objection.  403, Your Honor.

09:29  19          THE COURT:  Sustained.

09:29  20   BY MR. AVENATTI:

09:29  21   Q    Sir, isn't it true that unregistered firearms were

09:29  22   found at the residence that morning?

09:29  23          MR. SAGEL:  Objection.  403, Your Honor.

09:29  24          THE COURT:  Sustained.

09:29  25   BY MR. AVENATTI:

26

| | | |
|---|---|---|
| 09:29 | 1 | Q    Now, when you interviewed Ms. Regnier, who did the |
| 09:30 | 2 | talking for the government? |
| 09:30 | 3 | A    Mr. Sagel.  And I asked some questions as well. |
| 09:30 | 4 | Q    And what about Ms. Ball?  Did she ask any questions? |
| 09:30 | 5 | A    She did not. |
| 09:30 | 6 | Q    And where was Ms. Regnier physically located at the |
| 09:30 | 7 | time that you conducted this interview? |
| 09:30 | 8 | A    In her living room. |
| 09:30 | 9 | Q    Was she seated? |
| 09:30 | 10 | A    Yes. |
| 09:30 | 11 | Q    Where? |
| 09:30 | 12 | A    On a chair or on the couch. |
| 09:30 | 13 | Q    Do you remember if it was a chair or a couch? |
| 09:30 | 14 | A    I don't. |
| 09:30 | 15 | Q    Where were you located? |
| 09:30 | 16 | A    On the chair or on the couch. |
| 09:30 | 17 | Q    Where was Mr. Sagel located? |
| 09:30 | 18 | A    In around the same living room. |
| 09:30 | 19 | Q    Well, were you sitting around a table? |
| 09:30 | 20 | A    No.  Sofa, loveseat, and a couple of chairs is what I |
| 09:30 | 21 | recall. |
| 09:30 | 22 | Q    And was Ms. Ball also present during the interview? |
| 09:30 | 23 | A    Yes. |
| 09:30 | 24 | Q    Now, you said that you were on site for approximately |
| 09:31 | 25 | six hours; is that right? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:31    1    A    Approximately.

09:31    2    Q    And the interview lasted approximately six hours?

09:31    3    A    Approximately.

09:31    4    Q    And Mr. Sagel did most of the talking for the

09:31    5    government?  I think that's what you said.

09:31    6    A    Yes.

09:31    7    Q    And from time to time you would ask questions as well,

09:31    8    right?

09:31    9    A    Correct.

09:31   10    Q    And who took notes, if anyone, from the interview?

09:31   11    A    Special Agent Melinda Ball.

09:31   12    Q    You took no notes; am I right?

09:31   13    A    I took no notes.

09:31   14    Q    And Mr. Sagel took no notes, right?

09:31   15    A    I'm unaware of whether he took notes or not.

09:31   16    Q    And that was actually not an accident.  That was agreed

09:31   17    on before you got to Ms. Regnier's home, namely, that only

09:32   18    one person was going to take notes; isn't that right?

09:32   19    A    That's the common practice.

09:32   20             MR. AVENATTI:  Move to strike, Your Honor.

09:32   21             THE COURT:  It will be stricken.

09:32   22             MR. AVENATTI:  Can I have it read back, please?

09:32   23             THE COURT:  Yes.

09:32   24             (Record read)

09:32   25             THE WITNESS:  Yes.

BY MR. AVENATTI:

Q    And you understood that the reason why only one person was going to take notes was because if later we found ourselves in an environment like this and multiple people had taken notes, there might be inconsistencies that could be used.  You understood that was the reason why only one person would take notes; isn't that true?

A    It's part of our policy.

Q    And the reason for the policy is exactly what I just stated, so that if there is a trial, a defendant cannot point to inconsistencies in the notes; isn't that true, sir?

A    Sure.

Q    Now, we're going to talk about this interview in a moment.  But before we do, at the end of the interview -- well, strike that.  Did Ms. Ball take the notes on a laptop or did she handwrite the notes?

A    Handwritten.

Q    Did you review the notes at any point in time?

A    Yes, I believe so.

Q    When did you review her notes?

A    At the very beginning when she was typing up a report.

Q    So at some point she took her handwritten notes and put them in a typewritten report; is that right?

A    Yes.

Q    And before she completed her typewritten report, you

09:34   1    reviewed her handwritten notes; is that right?

09:34   2    A    As well as the report.

09:34   3    Q    Did you review that with Ms. Ball?

09:34   4    A    No.

09:34   5    Q    You reviewed that on your own?

09:34   6    A    Yes.

09:34   7    Q    Do you know if Mr. Sagel reviewed the typewritten

09:34   8    report before it was finalized?

09:34   9    A    I don't know.

09:34   10   Q    Did you find any -- well, strike that.  What do you

09:34   11   recall about the length of these notes from this six-hour

09:34   12   interview?

09:34   13   A    There was several pages.

09:34   14   Q    Ten, 15, 20?

09:34   15   A    I don't recall.

09:34   16   Q    There were a number of pages because the interview

09:34   17   lasted six hours, right?

09:34   18   A    I'm sure there was.

09:34   19   Q    Did you see any errors in Ms. Ball's notes?

09:35   20   A    I don't recall there being any errors.

09:35   21   Q    Do you recall remembering things that Ms. Ball had not

09:35   22   written in her notes?

09:35   23   A    No.

09:35   24   Q    So you made no corrections to the report that Ms. Ball

09:35   25   prepared; is that right?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:35  1    A    I don't recall.

09:35  2    Q    Well, do you recall making any corrections or

09:35  3    suggestions relating to the preparation of Ms. Ball's final

09:35  4    report?

09:35  5    A    I don't recall.

09:35  6    Q    Did you ever learn what information was removed from

09:35  7    Ms. Regnier's residence?

09:35  8    A    Can you ask the question again.

09:35  9           MR. AVENATTI:  Can I have it read back, Your

09:35  10   Honor?

09:35  11          THE COURT:  Yes.

09:35  12          (Record read)

09:36  13          THE WITNESS:  Yes.  At some point I did learn.

09:36  14   BY MR. AVENATTI:

09:36  15   Q    And how did you learn that?

09:36  16   A    I'm not sure when I received it.  There is an inventory

09:36  17   that is taken of the records that were taken from her

09:36  18   residence.  That inventory report, a copy is left at

09:36  19   Ms. Regnier's residence, as well as one is kept in the file

09:36  20   as inventory taken from her residence.

09:36  21   Q    And you learned that among the things that were taken

09:36  22   from her residence were some electronic devices; am I

09:36  23   correct?

09:36  24   A    Yes.

09:36  25   Q    And what is your understanding as to what happened to

| | | |
|---|---|---|
| 09:36 | 1 | those electronic devices that were removed from |
| 09:37 | 2 | Ms. Regnier's residence after they were taken on the morning |
| 09:37 | 3 | of March 25th? |
| 09:37 | 4 | A    A computer forensic agent took the devices and made an |
| 09:37 | 5 | image of them. |
| 09:37 | 6 | Q    And which agent was that? |
| 09:37 | 7 | A    I believe Special Agent John Weeks. |
| 09:37 | 8 | Q    Can you spell it for the court reporter, please. |
| 09:37 | 9 | A    W-e-e-k-s. |
| 09:37 | 10 | Q    And why were the electronic devices given to Mr. Weeks |
| 09:37 | 11 | for a forensic image to be taken? |
| 09:37 | 12 | A    He was our computer forensics person with the IRS at |
| 09:37 | 13 | the time, and that was his duty and his job. |
| 09:37 | 14 | Q    Were all of the devices removed from Ms. Regnier's home |
| 09:37 | 15 | that day to the best of your knowledge forensically imaged? |
| 09:37 | 16 | A    I don't know.  I wasn't involved. |
| 09:38 | 17 | Q    When was the first time, Special Agent Karlous, that |
| 09:38 | 18 | you ever heard about Tabs? |
| 09:38 | 19 | A    I don't recall. |
| 09:38 | 20 | Q    Before this trial had you ever heard about Tabs? |
| 09:38 | 21 | A    Yes.  I think it was mentioned by Ms. Regnier. |
| 09:38 | 22 | Q    So if someone were to state that before this trial the |
| 09:38 | 23 | government had no idea about Tabs, that would be untrue, |
| 09:39 | 24 | right? |
| 09:39 | 25 | A    Yes. |

09:39   1   Q    Do you recall that Ms. Regnier specifically told you
09:39   2   and Mr. Sagel on November 19th, 2019, almost two years ago,
09:39   3   about Tabs?
09:39   4   A    Yes.
09:39   5   Q    A moment ago you didn't remember the date.  Now you do
09:39   6   remember the date; is that right?
09:39   7   A    I knew it wasn't -- I didn't recall it during the
09:39   8   search warrant.  That's why I was hesitant.
09:39   9   Q    And do you have a recollection that on November 19th of
09:40  10   2019 you and Special Agent Roberson -- by the way, what
09:40  11   division is he with?
09:40  12   A    The IRS criminal investigation.  He is a special agent.
09:40  13   Q    You and Special Agent Roberson and Mr. Sagel met with
09:40  14   Ms. Regnier from 9:05 a.m. to 5:42 p.m., about eight and a
09:40  15   half hours.  Do you recall that?
09:41  16   A    Yes.
09:41  17   Q    Do you recall during that interview almost two years
09:41  18   ago, Ms. Regnier was asked what systems were used at Eagan
09:41  19   Avenatti to keep track of client expenses?
09:41  20   A    I believe so.
09:41  21            MR. AVENATTI:  Your Honor, can I approach?
09:41  22            THE COURT:  You may.
09:42  23            (Document handed to the witness)
09:42  24   BY MR. AVENATTI:
09:42  25   Q    Sir, directing your attention to Exhibit 1085,

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:43   1   paragraph 14, does this refresh your recollection that on
09:43   2   November 19th, 2019, you and AUSA Brett Sagel was
09:43   3   specifically told about Tabs?
09:43   4   A    Yes.
09:43   5   Q    And to the best of your knowledge, was that the first
09:43   6   time that anyone had mentioned Tabs to you as it related to
09:43   7   Eagan Avenatti?
09:43   8   A    I believe so.
09:44   9   Q    In fact, that document that I just handed you, that's a
09:44  10   memorandum of interview that you prepared and signed,
09:44  11   correct?
09:44  12   A    I don't recall that I prepared this.  It may have been
09:44  13   Special Agent Roberson.  In fact, I think it was him.
09:45  14   Q    Well, sir, you don't dispute that the document says:
09:45  15   "I prepared this memorandum on November 25, 2019, after
09:45  16   refreshing my memory from notes made during and immediately
09:45  17   after the interview with Regnier."
09:45  18        You don't dispute that; do you?
09:45  19   A    No, but I don't think I prepared this.
09:45  20   Q    Well, can you explain, then, why your signature appears
09:45  21   under the statement that I just read above the words special
09:45  22   agent?
09:45  23   A    Yes -- because I was a witness to this interview.  We
09:45  24   usually have two witnesses for interviews.  I read the
09:45  25   report and I concurred with the report.
```

09:45  1    Q    Did you sign this document?

09:45  2    A    Yes.

09:45  3    Q    Together with Mr. Roberson, right?

09:45  4    A    Yes.

09:45  5    Q    And again, this interview was on November 19th of 2019;

09:45  6    is that correct?

09:46  7    A    Yes.

09:46  8    Q    I believe you testified moments ago -- in fact, I know

09:46  9    you testified moments ago that this was the first date on

09:46  10   which anyone had mentioned Tabs to the best of your

09:46  11   knowledge, correct?

09:46  12   A    To the best of my knowledge, yes.

09:46  13             MR. AVENATTI:  Your Honor, can I approach?

09:46  14             THE COURT:  You may.

09:46  15             (Document handed to the witness)

09:47  16             MR. AVENATTI:  Your Honor, the defense offers 1084

09:47  17   as impeachment of Mr. Karlous, directing the Court's

09:47  18   attention to the second to the last page in the middle of

09:47  19   the page as well as the top of the third page.

09:48  20             MR. SAGEL:  Objection, Your Honor.  Improper

09:48  21   impeachment.  The question called for to the best of his

09:48  22   recollection.  And hearsay.

09:48  23             THE COURT:  Mr. Avenatti.

09:48  24             MR. AVENATTI:  Your Honor, these are his

09:48  25   handwritten notes.  It's not offered for the truth of the

09:48   1    matter asserted.  It's offered for impeachment purposes.

09:48   2            I'm happy to lay more of a foundation if you'd

09:48   3    like.

09:48   4            THE COURT:  Please.

09:48   5    BY MR. AVENATTI:

09:48   6    Q    Special Agent Karlous, do you have what has been marked

09:48   7    as Exhibit 1084 in front of you?

09:48   8    A    Yes.

09:48   9    Q    Isn't it true that November 19th was not the first time

09:48   10   that you learned that the law firm Eagan Avenatti used Tabs

09:48   11   to track client expenses?

09:48   12   A    After reviewing this exhibit, yes, I knew earlier about

09:49   13   Tabs.

09:49   14   Q    And you knew earlier because you and Special Agent

09:49   15   James Kim and AUSAs Julian Andre and Brett Sagel called

09:49   16   Ms. Regnier at approximately 1:30 p.m. on July 25th of 2019

09:49   17   for the specific purpose of asking her questions regarding

09:49   18   the Eagan Avenatti, LLP, server and how client files were

09:49   19   created and maintained on the server; isn't that true?

09:49   20   A    Yes.

09:50   21   Q    Special Agent Karlous, isn't it true that you, Special

09:50   22   Agent Kim, former AUSA Julian Andre, and AUSA Brett Sagel

09:51   23   have known for over two years that client expenses were

09:51   24   maintained on the EA, Eagan Avenatti, server in Tabs?

09:51   25   A    After reviewing this exhibit, it refreshes my memory,

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:51   1   yes.

09:51   2   Q    And the reason why this exhibit refreshes your memory

09:51   3   is because this is your typewritten summary and your

09:51   4   handwritten notes from that call with Ms. Regnier, right?

09:51   5   A    Yes.

09:52   6   Q    Just so we are clear, on July 25th Ms. Regnier did not

09:52   7   call you.  You called Ms. Regnier, right?

09:52   8   A    Yes.

09:52   9   Q    Whose idea was it to call Ms. Regnier that day and ask

09:52   10  about how the information was maintained within the Eagan

09:52   11  Avenatti servers?

09:52   12  A    The investigative team.

09:52   13  Q    Who does that include?

09:52   14  A    That includes who is on this memo of that day.

09:52   15  Q    So it was a joint decision generally?

09:52   16  A    Generally.

09:52   17  Q    All right.  It was a joint decision made by you,

09:52   18  Special Agent Kim, AUSA Julian Andre, and AUSA Brett Sagel,

09:52   19  correct?

09:52   20  A    Yes.

09:53   21  Q    And you understood that one of the reasons why you

09:53   22  wanted to call Ms. Regnier and ask her questions about how

09:53   23  the financial information was maintained on the servers was

09:53   24  to ensure that you did an adequate investigation; is that

09:53   25  right?

09:53   1    A    Yes.

09:53   2    Q    And during that discussion Ms. Regnier explained to you

09:53   3    generally how the client and financial information was

09:53   4    stored on the EA servers, right?

09:53   5    A    Yes.

09:54   6    Q    And as of this date, July 25, 2019, you were aware,

09:54   7    were you not, that the government had in its possession

09:54   8    forensic images of the servers?

09:54   9    A    Yes.

09:54   10   Q    When you spoke with Ms. Regnier on July 25, 2019, did

09:54   11   she refuse to answer any of your questions about how

09:54   12   financial information was stored on the Eagan Avenatti

09:54   13   servers?

09:54   14   A    No.

09:54   15   Q    Was there anything that she said that you thought you

09:54   16   did not understand?

09:54   17   A    I don't recall.

09:54   18   Q    As you sit here today, you do not recall any such

09:54   19   instance of that; is that true?

09:54   20   A    True.

09:55   21   Q    One of the things that you and the rest of the

09:55   22   investigative team, including AUSA Sagel, one of the things

09:55   23   that you learned on that day in July was that attorney time

09:55   24   records were kept in Tabs, not within a program on the

09:55   25   servers called FileSite, right?

09:55  1    A    I don't recall that.

09:55  2    Q    Please take a look at the second to the last page,

09:55  3    middle of the page, and see if that refreshes your

09:55  4    recollection.

09:55  5    A    (Witness complies.)  Can you ask your question again.

09:56  6    Q    Yes, sir.  One of the things that you learned that day

09:56  7    together with Mr. Sagel and others was that attorney time

09:56  8    records were kept in Tabs on the EA servers, not on

09:56  9    FileSite?

09:56  10   A    Yes.

09:56  11   Q    And another thing you learned about Tabs was that it

09:56  12   was accessible via a desktop icon at the law firm, right?

09:56  13   A    Yes.

09:56  14   Q    And then you asked Ms. Regnier about client billing and

09:56  15   accounting records.  Do you recall that?

09:57  16   A    Yes.

09:57  17   Q    By the way, during this phone call who was asking the

09:57  18   questions?

09:57  19   A    Probably one of the prosecutors.

09:57  20   Q    So either Mr. Sagel or his former colleague Mr. Andre?

09:57  21   A    I think so.

09:57  22   Q    You were the one taking the notes, right?

09:57  23   A    Yes.

09:57  24   Q    Was anyone else taking notes?

09:57  25   A    No.

09:57  1   Q    And that was in accordance with that policy and for the
09:57  2   reason that we mentioned earlier, right?
09:57  3   A    Yes.
09:57  4   Q    And when Ms. Regnier was asked about how the client
09:57  5   billing and client accounting records were kept at the law
09:57  6   firm, she identified Tabs; didn't she?
09:57  7   A    Yes.
09:58  8   Q    Sir, during the interview with Ms. Regnier on July 25tj
09:58  9   when you were taking your notes, did you make it a point to
09:58  10  write down what Ms. Regnier said?
09:58  11  A    Yes -- not word for word.
09:58  12  Q    Do you recall anything that she said that you left out?
09:58  13  A    No.
09:58  14  Q    You understood at the time it was important for you to
09:58  15  record anything of any substance that Ms. Regnier said in
09:58  16  response to this inquiry about how the electronic data was
09:58  17  maintained on the servers, right?
09:58  18  A    Yes.
09:59  19  Q    During this 40-minute phone call, Ms. Regnier mentioned
09:59  20  Tabs at least twice, correct?
09:59  21  A    Yes, I believe so.
09:59  22  Q    How many times did she mention QuickBooks during this
09:59  23  interview?
09:59  24  A    (Witness reading document)  I don't see it in my notes.
10:01  25  Q    So as of the conclusion of the interview, you were

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:01    1    aware that according to Ms. Regnier there was Tabs data on
10:01    2    the servers, correct?
10:01    3    A    That's what she said.
10:01    4    Q    Did you have any reason to dispute that?
10:01    5    A    I had no idea whether it was true or not.
10:01    6    Q    What did you do next to find out, sir?
10:02    7    A    I don't recall.
10:02    8    Q    How about nothing?  Does that refresh your
10:02    9    recollection, Special Agent Karlous?
10:02   10    A    No, it does not.
10:03   11    Q    As you sit here today, two years after being told in
10:03   12    the conference call with other members of the investigative
10:03   13    team about the Tabs data, as you sit here today, do you
10:03   14    recall a single thing that you or anyone else did to confirm
10:03   15    or deny the existence of the Tabs data on the servers?
10:03   16    A    I don't know if we have the Tabs data.
10:03   17                MR. AVENATTI:  Move to strike.
10:03   18                THE COURT:  It will be stricken.
10:04   19                MR. AVENATTI:  Can I have it read back, please?
10:04   20                THE COURT:  Yes.
10:04   21           (Record read)
10:04   22                THE WITNESS:  I don't know.
10:04   23    BY MR. AVENATTI:
10:04   24    Q    After you got off that call, do you have a recollection
10:04   25    of sending anyone an e-mail about the Tabs data ever?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

41

| | | |
|---|---|---|
| 10:04 | 1 | A    I don't recall sending an e-mail, no. |
| 10:04 | 2 | Q    How about a text message?  Do you recall sending a text |
| 10:04 | 3 | message at any point in time between July 25th, 2019, and |
| 10:04 | 4 | this trial, actually until you took the stand today, and |
| 10:04 | 5 | inquiring about the Tabs data? |
| 10:04 | 6 | A    No, I didn't send a text message.  No. |
| 10:04 | 7 | Q    Letter?  Did you send a letter? |
| 10:04 | 8 | A    Me personally?  No. |
| 10:04 | 9 | Q    Did you place a phone call? |
| 10:04 | 10 | A    Me personally?  No. |
| 10:04 | 11 | Q    Okay.  Well, in light of your answer of me personally, |
| 10:04 | 12 | let me ask you this:  Are you aware of anyone on the |
| 10:04 | 13 | investigative team in the last two years making an inquiry |
| 10:05 | 14 | as to whether the Tabs data was included within the forensic |
| 10:05 | 15 | images of the servers? |
| 10:05 | 16 | A    It may have occurred, but I wouldn't know. |
| 10:05 | 17 | Q    Well, a lot of things may have occurred.  My question |
| 10:05 | 18 | is not whether they may have occurred.  My question is, sir: |
| 10:05 | 19 | Do you have a recollection of anyone doing that? |
| 10:05 | 20 | A    Possibly.  I don't know. |
| 10:05 | 21 | Q    Possibly you have a recollection, or you don't have a |
| 10:05 | 22 | recollection but it possibly may have happened? |
| 10:05 | 23 | MR. SAGEL:  Objection, Your Honor.  Argumentative. |
| 10:05 | 24 | asked and answered. |
| 10:05 | 25 | THE COURT:  Overruled. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:05 | 1 | THE WITNESS:  I don't know. |
| 10:05 | 2 | BY MR. AVENATTI: |
| 10:05 | 3 | Q    As you sit here today, you know of no such instance, |
| 10:05 | 4 | true? |
| 10:05 | 5 | A    I don't -- |
| 10:05 | 6 | Q    Just answer my question. |
| 10:05 | 7 | A    I do not. |
| 10:05 | 8 | Q    Okay.  Over the last two years, was that something that |
| 10:06 | 9 | interested you, namely, whether this data about the expenses |
| 10:06 | 10 | for the clients existed? |
| 10:06 | 11 | A    We wanted all that data, and we were waiting on the |
| 10:06 | 12 | taint team. |
| 10:06 | 13 | MR. AVENATTI:  Move to strike, Your Honor. |
| 10:06 | 14 | THE COURT:  It will be stricken. |
| 10:06 | 15 | MR. AVENATTI:  Can I have it read back, please? |
| 10:06 | 16 | THE COURT:  Yes. |
| 10:06 | 17 | (Record read) |
| 10:06 | 18 | BY MR. AVENATTI: |
| 10:06 | 19 | Q    Yes or no, sir? |
| 10:06 | 20 | A    Yes.  We wanted all financial records. |
| 10:07 | 21 | Q    You wanted all financial records relating to me, the |
| 10:07 | 22 | law firm, and my businesses, right? |
| 10:07 | 23 | A    Yes. |
| 10:07 | 24 | Q    And that was at all times from March 25th, 2019, to the |
| 10:07 | 25 | present, right? |

10:07    1    A    Yes.

10:07    2    Q    In whatever form those records were, whether it be

10:07    3    electronic or hard copy, right?

10:07    4    A    Yes.

10:08    5              MR. AVENATTI:  One moment, Your Honor, please.

10:08    6              (Pause in proceedings)

10:08    7    BY MR. AVENATTI:

10:08    8    Q    Special Agent Karlous, did you ever have any

10:08    9    discussions with Mr. Sagel or any other member of the

10:09   10    investigative team relating to the need to acquire the Tabs

10:09   11    data?

10:09   12    A    I don't recall.

10:09   13    Q    As you sit here today, you do not recall any such

10:09   14    instance, true?

10:09   15    A    I'm sure we did, but I don't recall specifics.

10:09   16    Q    Well, sir, do you have a recollection of you conversing

10:09   17    about that or not?

10:09   18    A    We must have.

10:09   19    Q    Well, let the record reflect you just held up your

10:09   20    interview notes, right?

10:09   21    A    Exhibit 1084.

10:09   22    Q    1084, the July 25th notes, correct?

10:09   23    A    Yes.

10:09   24    Q    Those notes don't reflect what your communications were

10:09   25    with Mr. Sagel and other members of the investigative team.

10:09  1   Those notes reflect what your communications were with

10:09  2   Ms. Regnier, right?

10:10  3   A    True.

10:10  4   Q    Okay.  I'm talking about after you got off the call

10:10  5   with Ms. Regnier up through this morning when you took the

10:10  6   stand.  Do you have a recollection of ever conversing with

10:10  7   Mr. Sagel or anyone else about the need to actually get the

10:10  8   data from Tabs in connection with a major federal criminal

10:10  9   prosecution, sir?

10:10  10              MR. SAGEL:  Objection.  Argumentative.

10:10  11              THE COURT:  Overruled.

10:10  12              THE WITNESS:  We don't know if we have it or not.

10:10  13              MR. AVENATTI:  Move to strike, Your Honor.

10:10  14              THE COURT:  It will be stricken.

10:10  15              MR. AVENATTI:  Can I have the question read back,

10:10  16   please?

10:10  17              THE COURT:  You may.

10:10  18              (Record read)

10:11  19              THE WITNESS:  No.

10:11  20   BY MR. AVENATTI:

10:11  21   Q    Special Agent Karlous, you made no effort to acquire

10:11  22   and look at the Tabs data because you and the rest of the

10:11  23   members of the investigative team were afraid of what you

10:11  24   might find; isn't that true?

10:11  25   A    No, that's not true.

| | | |
|---|---|---|
| 10:12 | 1 | Q    Sir, isn't it true even before Ms. Regnier told you |
| 10:12 | 2 | what she told you on July 25th of 2019, that you believed |
| 10:12 | 3 | that there was accounting data and programs on the Eagan |
| 10:12 | 4 | Avenatti, LLP, servers? |
| 10:12 | 5 | A    Yes.  That's why we did a search warrant. |
| 10:13 | 6 | MR. AVENATTI:  Move to strike after yes as |
| 10:13 | 7 | nonresponsive, Your Honor. |
| 10:13 | 8 | THE COURT:  It will be stricken. |
| 10:13 | 9 | BY MR. AVENATTI: |
| 10:13 | 10 | Q    Mr. Karlous, do you have a recollection of conversing |
| 10:13 | 11 | with Ms. Regnier about QuickBooks? |
| 10:13 | 12 | A    I believe so. |
| 10:13 | 13 | Q    And do you have a recollection of Ms. Regnier informing |
| 10:13 | 14 | you that the QuickBooks records were incomplete? |
| 10:14 | 15 | A    I don't recall. |
| 10:14 | 16 | Q    Do you still have the interview memorandum from |
| 10:14 | 17 | November 19th, 2019, up there? |
| 10:14 | 18 | A    Yes. |
| 10:14 | 19 | Q    Take a look at paragraphs 16 and 17 and see if that |
| 10:14 | 20 | refreshes your recollection that Ms. Regnier informed you |
| 10:14 | 21 | that the QuickBooks records were incomplete. |
| 10:14 | 22 | A    Yes, because she told us it was. |
| 10:14 | 23 | MR. AVENATTI:  Move to strike, Your Honor. |
| 10:14 | 24 | THE COURT:  It will be stricken. |
| | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

46

| | | |
|---|---|---|
| 10:14 | 1 | BY MR. AVENATTI: |
| 10:14 | 2 | Q    Special Agent Karlous, what steps after November 19th, |
| 10:15 | 3 | 2019, did you take to see if there were any QuickBooks |
| 10:15 | 4 | records on the Eagan Avenatti servers? |
| 10:15 | 5 | A    My recollection is the taint team was made aware that |
| 10:15 | 6 | there were QuickBooks or -- and that we wanted them. |
| 10:15 | 7 | Q    Did you ever make anyone aware that there were Tabs |
| 10:15 | 8 | records and, to use your words, you wanted them?  Yes or no? |
| 10:15 | 9 | A    I don't recall. |
| 10:16 | 10 | Q    Mr. Drum testified that he used QuickBooks records in |
| 10:16 | 11 | connection with compiling his summaries.  Were you here for |
| 10:16 | 12 | that testimony? |
| 10:16 | 13 | A    Yes. |
| 10:16 | 14 | Q    Do you know where he got those QuickBooks records? |
| 10:16 | 15 | A    From the government. |
| 10:16 | 16 | Q    What version of the data file did he use?  Do you have |
| 10:16 | 17 | any idea? |
| 10:16 | 18 | A    Whatever the computer forensic people pulled off from |
| 10:16 | 19 | your server. |
| 10:16 | 20 |        MR. AVENATTI:  Move to strike, Your Honor.  It's |
| 10:16 | 21 | nonresponsive. |
| 10:16 | 22 |        THE COURT:  Denied. |
| 10:16 | 23 | BY MR. AVENATTI: |
| 10:16 | 24 | Q    Sir, is it your testimony that the QuickBooks records |
| 10:16 | 25 | that Mr. Drum used came off the Eagan Avenatti server?  Is |

10:16  1   that your testimony?

10:16  2   A    It came off of one of the computer devices that were

10:16  3   taken during the search warrant.

10:16  4   Q    Well, you just made it a point to tell the jury that it

10:17  5   came off the server.  You just used the word server; did you

10:17  6   not?  Just answer my question.  Did you use the word server?

10:17  7   A    Yes.

10:17  8   Q    All right.  And you don't know whether those records

10:17  9   came off of any server; do you?  Do you, sir?

10:17  10  A    Me, no.  Our forensic people will know.

10:17  11  Q    You don't know if that QuickBooks file was a current

10:17  12  file or an old file; do you?

10:17  13  A    I have no idea.

10:17  14  Q    You don't know if that QuickBooks file was laying

10:17  15  around on a hard drive somewhere or was on somebody's

10:17  16  computer or was on the Eagan Avenatti server; do you?

10:17  17  A    It's on the inventory where it was found.

10:17  18  Q    You don't know where it was found; do you?

10:17  19  A    Sitting here right now, no.

10:18  20  Q    After Ms. Regnier informed you that the QuickBooks data

10:18  21  was not complete, did you take any steps to ensure that you

10:18  22  had the most current, most complete data file?  Yes or no?

10:18  23  A    The forensic agents do that.

10:18  24  Q    Is that Mr. Tashchyan?

10:18  25  A    He would be one of them, yes.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:18 | 1 | Q    Well, did you ask the forensic agents to make sure that |
| 10:18 | 2 | you had the most up-to-date, complete QuickBooks data file? |
| 10:19 | 3 | A    There is a taint process, so, no. |
| 10:19 | 4 | MR. AVENATTI:  Move to strike, Your Honor. |
| 10:19 | 5 | THE COURT:  It will be stricken. |
| 10:19 | 6 | MR. AVENATTI:  Can I have it read back, please? |
| 10:19 | 7 | THE COURT:  Yes. |
| 10:19 | 8 | (Record read) |
| 10:19 | 9 | THE WITNESS:  No. |
| 10:19 | 10 | BY MR. AVENATTI: |
| 10:19 | 11 | Q    Now, you communicated with Ms. Regnier on a number of |
| 10:19 | 12 | occasions during these last two years about this case, true? |
| 10:19 | 13 | A    I have communicated with her.  I don't know how many |
| 10:19 | 14 | times. |
| 10:19 | 15 | Q    It's been more than a few, right? |
| 10:20 | 16 | A    I don't have the number in my head, but, yes. |
| 10:20 | 17 | Q    More than ten? |
| 10:20 | 18 | A    I don't know. |
| 10:20 | 19 | Q    What's your best estimate? |
| 10:20 | 20 | A    Including preparation for trial? |
| 10:20 | 21 | Q    Yes. |
| 10:20 | 22 | A    Less than ten. |
| 10:20 | 23 | Q    More than five? |
| 10:20 | 24 | A    Yes. |
| 10:20 | 25 | Q    Okay.  And one of those meetings took place on |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

49

| | | |
|---|---|---|
| 10:20 | 1 | June 14th of 2021, about two months ago.  Do you recall |
| 10:20 | 2 | that? |
| 10:20 | 3 | A    Not the date, but, yes. |
| 10:20 | 4 | Q    And do you recall that you met with Ms. Regnier with |
| 10:20 | 5 | her attorney, Special Agent Roberson, AUSA Sagel, and AUSA |
| 10:21 | 6 | Wyman?  Do you recall that? |
| 10:21 | 7 | A    Was that on Zoom? |
| 10:21 | 8 |         MR. AVENATTI:  Can I approach, Your Honor? |
| 10:21 | 9 | BY MR. AVENATTI: |
| 10:21 | 10 | Q    According to the memorandum of interview, it is, but if |
| 10:21 | 11 | you would like to refresh your recollection ... |
| 10:21 | 12 | A    I recall it now. |
| 10:21 | 13 | Q    Special Agent Karlous, as a general proposition, is it |
| 10:21 | 14 | important to you when you meet with witnesses especially on |
| 10:21 | 15 | the eve of trial, is it important to you that they tell you |
| 10:21 | 16 | the truth? |
| 10:21 | 17 | A    Yes. |
| 10:22 | 18 | Q    Do you take that obligation seriously when you meet |
| 10:22 | 19 | with witnesses? |
| 10:22 | 20 | A    Yes. |
| 10:22 | 21 | Q    In fact, as a federal agent, you are aware that if a |
| 10:22 | 22 | witness lies to you when you are interviewing them, that is |
| 10:22 | 23 | a serious felony that can be punishable by up to five years |
| 10:22 | 24 | in federal prison, right? |
| 10:22 | 25 | A    Yes, if it's material. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:22   1    Q    And it is common practice to advise witnesses at the

10:22   2    beginning of any interview that it is incredibly important

10:22   3    that they tell the truth when meeting with federal agents

10:22   4    and that there are serious consequences for not doing so,

10:22   5    right?

10:22   6    A    Yes.

10:22   7    Q    And because you are a 20-plus-year federal agent, you

10:22   8    take great offense when you meet with people about serious

10:22   9    federal criminal matters and they lie to you?  You are

10:23   10   offended by that, right?

10:23   11   A    If it's purposefully, yes.

10:23   12   Q    That's a big deal to you, right?

10:23   13   A    Yes.

10:23   14          MR. AVENATTI:  Let's have Exhibit 281, please,

10:23   15   which is in evidence.

10:23   16   BY MR. AVENATTI:

10:23   17   Q    Special Agent Karlous, you can look at it on your

10:23   18   screen or in the binder, whatever is easiest.

10:24   19          Do you have that there, sir?

10:24   20   A    Yes.

10:24   21   Q    And do you have a recollection that when you met with

10:24   22   Ms. Regnier, Mr. Sagel specifically asked Ms. Regnier about

10:24   23   this e-mail exchange that has now been put into evidence by

10:24   24   the government at Exhibit 281 relating to Ms. Phan?

10:25   25   A    Yes.

51

| | | |
|---|---|---|
| 10:25 | 1 | MR. AVENATTI:  Ms. Hernandez, can you please blow |
| 10:25 | 2 | up the bottom e-mail. |
| 10:25 | 3 | BY MR. AVENATTI: |
| 10:25 | 4 | Q    Can you see that, Special Agent Karlous? |
| 10:25 | 5 | A    Yes. |
| 10:25 | 6 | Q    And do you recall that in preparation for trial when |
| 10:26 | 7 | you met with Ms. Regnier together with AUSA Sagel, that |
| 10:26 | 8 | Ms. Regnier was asked about this particular e-mail that is |
| 10:26 | 9 | part of Exhibit 281?  Do you recall that? |
| 10:26 | 10 | A    Yes. |
| 10:26 | 11 | Q    And this e-mail is dated Tuesday, May 1st, 2018, at |
| 10:26 | 12 | 3:08 p.m., correct? |
| 10:26 | 13 | A    Yes. |
| 10:26 | 14 | Q    And it's from Ms. Regnier to Mr. Tran and myself.  Do |
| 10:26 | 15 | you see that? |
| 10:26 | 16 | A    Yes. |
| 10:26 | 17 | Q    And this e-mail reads: "Long, I asked the bank to put a |
| 10:26 | 18 | trace on it.  As soon as I get the results, I will let you |
| 10:26 | 19 | know ASAP.  Judy."  Did I read that correctly? |
| 10:27 | 20 | A    Yes. |
| 10:27 | 21 | Q    Was this another meeting where Mr. Sagel was asking |
| 10:27 | 22 | most of the questions? |
| 10:27 | 23 | A    Yes. |
| 10:27 | 24 | Q    And during that meeting Mr. Sagel asked about this |
| 10:27 | 25 | e-mail that Ms. Regnier had sent and asked for an |

10:27   1   explanation for it; didn't he?

10:27   2   A    Yes, I believe so.

10:27   3   Q    And the explanation that Ms. Regnier gave to you and

10:27   4   Mr. Sagel and to the other federal agents was that I may

10:27   5   have sent this e-mail by typing it on her computer here in

10:28   6   California; isn't that true?

10:28   7   A    Yes -- may have.

10:28   8   Q    And as soon as she told you that, you knew that that

10:28   9   was a lie and was not possible; didn't you?

10:28  10   A    I did not know that at that time.

10:28  11   Q    And you had no evidence in your possession that would

10:28  12   have told you that that was a lie and impossible.  Is that

10:28  13   your testimony?

10:29  14   A    No.

10:29  15            MR. AVENATTI:  Your Honor, now is a good time if

10:29  16   it's acceptable to Your Honor.

10:29  17            THE COURT:  Do you want to take a break now,

10:29  18   ladies and gentlemen, or a little bit later?

10:29  19            THE JURY:  Now.

10:29  20            THE COURT:  Fine.  We'll take the mid-morning

10:29  21   break here.  We'll be in recess for 15 minutes.

10:29  22            Please remember the admonition not to discuss the

10:29  23   case with anyone and not to form any opinions on the issues

10:29  24   in the case until it is submitted to you.  And do not do any

10:29  25   research.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:29 | 1 | (Jury not present) |
| 10:29 | 2 | (Recess taken at 10:29 a.m.; |
| 10:29 | 3 | proceedings resumed at 10:48 a.m.) |
| 10:29 | 4 | (Jury present) |
| 10:48 | 5 | THE COURT:  Mr. Avenatti. |
| 10:48 | 6 | BY MR. AVENATTI: |
| 10:49 | 7 | Q    Special Agent Karlous, before the break I was asking |
| 10:49 | 8 | about this statement that Ms. Regnier had made relating to |
| 10:49 | 9 | this bottom portion of Exhibit 281, the May 1st, 2018, |
| 10:49 | 10 | e-mail.  Do you recall that generally? |
| 10:49 | 11 | A    Yes. |
| 10:49 | 12 | Q    And I asked you if it was your testimony to the jury |
| 10:49 | 13 | that you had no evidence in your possession when you met |
| 10:50 | 14 | with Ms. Regnier that would show that what she said was |
| 10:50 | 15 | untrue.  And your answer right before we broke was that |
| 10:50 | 16 | would not be accurate, or no.  Do you recall that? |
| 10:50 | 17 | A    Yes. |
| 10:50 | 18 | Q    Because the fact of the matter is that at the time that |
| 10:50 | 19 | Ms. Regnier told you and AUSA Sagel and others that I may |
| 10:50 | 20 | have typed that e-mail on her computer, you did have |
| 10:50 | 21 | evidence in your possession showing that that was not |
| 10:50 | 22 | physically possible; didn't you? |
| 10:50 | 23 | A    Yes, I believe so. |
| 10:50 | 24 | Q    And in particular you had in your possession evidence |
| 10:50 | 25 | that showed that on May 1st, I was in New York City; isn't |

| | | |
|---|---|---|
| 10:51 | 1 | that true? |
| 10:51 | 2 | A    I believe so. |
| 10:51 | 3 | Q    And in particular you had data from my cell phone |
| 10:51 | 4 | company showing my locations during the days leading up to |
| 10:51 | 5 | May 1st and the days after May 1st; isn't that true? |
| 10:51 | 6 | A    Yes, I believe so. |
| 10:51 | 7 | MR. SAGEL:  Your Honor, we just had a 15-minute |
| 10:52 | 8 | break.  Could we have a question, please. |
| 10:52 | 9 | BY MR. AVENATTI: |
| 10:52 | 10 | Q    Sir, the government had data from my cell phone company |
| 10:52 | 11 | showing that I was in Washington, D.C., on April 28th, |
| 10:52 | 12 | Washington, D.C., and New York City on April 29th, New York |
| 10:53 | 13 | City on April 30th, New York City on May 1st, and New York |
| 10:53 | 14 | City on May 2nd, all of 2018; isn't that true? |
| 10:53 | 15 | A    Sitting here right now I can't answer that, that I know |
| 10:53 | 16 | that for sure. |
| 10:53 | 17 | Q    Well, after Ms. Regnier told you that I may have typed |
| 10:53 | 18 | this piece of evidence, did you do anything to check? |
| 10:53 | 19 | A    I personally did not. |
| 10:53 | 20 | Q    Are you aware of anyone on the investigative team |
| 10:53 | 21 | making any effort to see if what Ms. Regnier had told you |
| 10:53 | 22 | before trial was true? |
| 10:53 | 23 | A    I don't know. |
| 10:53 | 24 | Q    Is that something you would have wanted to know? |
| 10:53 | 25 | A    We want to know the truth, absolutely. |

10:53   1   Q    Sir, as you sit here today, you know for a fact that I

10:54   2   was not in California on May 1st, 2018; isn't that true?

10:54   3   A    I believe so.

10:54   4   Q    And you know that from two pieces of evidence -- the

10:54   5   cell phone records and video evidence; isn't that true?

10:54   6   A    I'm not sure that I have video evidence.

10:54   7   Q    Are you aware of the existence of video footage that

10:54   8   shows me in New York City on May 1st?

10:54   9   A    I don't have that, no.

10:54   10  Q    Are you aware of it?

10:54   11  A    It might be there, but I don't know.

10:54   12  Q    Have you ever made any effort to find out if there is

10:54   13  any video evidence showing that what Ms. Regnier told you

10:54   14  and the other agents was not true?

10:54   15  A    I personally did not.

10:54   16  Q    Are you aware of anyone doing that?

10:54   17  A    No.

10:55   18  Q    When Ms. Regnier told you that I may have physically

10:55   19  gone to her computer and typed out this e-mail, the one

10:55   20  that's on the screen, didn't that strike you as a little

10:55   21  fantastical? a little crazy?

10:55   22  A    Well, not really because she said "may have."

10:55   23  Q    You didn't think that perhaps Ms. Regnier was trying to

10:55   24  excuse away an e-mail that she had drafted by claiming that

10:55   25  somehow I had physically sent it from her computer?  Did you

| | | |
|---|---|---|
| 10:55 | 1 | ever think of that possibility?  Yes or no? |
| 10:56 | 2 | A    No. |
| 10:56 | 3 | Q    And you knew at the time when Ms. Regnier told you this |
| 10:56 | 4 | story, you knew that around that time period of this e-mail, |
| 10:56 | 5 | May 1st, 2018, that I was spending a lot of time on the East |
| 10:56 | 6 | Coast.  You knew that, right? |
| 10:56 | 7 | A    When she told us this in June? |
| 10:56 | 8 | Q    Yes, in June of 2021.  When you and Mr. Sagel asked her |
| 10:56 | 9 | about this e-mail on May 1st, 2018, as of that time period |
| 10:56 | 10 | you knew that back in 2018 in the spring, I was spending a |
| 10:56 | 11 | lot of time in New York City.  You already knew that, right? |
| 10:56 | 12 | A    Yes. |
| 10:56 | 13 | Q    And it never occurred to you -- when she told you this, |
| 10:56 | 14 | it never occurred to you to say, you know, maybe I should |
| 10:57 | 15 | check if Avenatti was even in California at that time and |
| 10:57 | 16 | whether it was even possible?  That never occurred to you? |
| 10:57 | 17 | Yes or no? |
| 10:57 | 18 | A    No, because she said may have. |
| 10:57 | 19 |     MR. AVENATTI:  Thank you.  Move to strike as |
| 10:57 | 20 | nonresponsive after no. |
| 10:57 | 21 |     THE COURT:  It will be stricken. |
| 10:57 | 22 | BY MR. AVENATTI: |
| 10:57 | 23 | Q    And the reason why that never occurred to you was |
| 10:57 | 24 | because she said may, right? |
| 10:57 | 25 | A    May have, yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

57

| | | |
|---|---|---|
| 10:57 | 1 | Q    And because she said may have, you didn't think that |
| 10:57 | 2 | there was any investigation needed, right? |
| 10:57 | 3 | A    No. |
| 10:57 | 4 | Q    Meaning I'm right? |
| 10:57 | 5 | A    Yes. |
| 10:57 | 6 | Q    Okay.  Special Agent Karlous, I may have killed someone |
| 10:57 | 7 | this morning.  Are you going to investigate?  Or because I |
| 10:58 | 8 | said may have, you just blow it off? |
| 10:58 | 9 | A    Bad example.  It's an e-mail. |
| 10:58 | 10 | Q    I think it's a good example. |
| 10:58 | 11 |         THE COURT:  Sir, ask questions.  Do not comment on |
| 10:58 | 12 | his testimony. |
| 10:58 | 13 |         MR. AVENATTI:  I'm going to move to strike the |
| 10:58 | 14 | answer as nonresponsive. |
| 10:58 | 15 |         THE COURT:  It's stricken. |
| 10:58 | 16 | BY MR. AVENATTI: |
| 10:58 | 17 | Q    Sir, the fact of the matter is you did nothing to |
| 10:58 | 18 | verify whether Ms. Regnier, what she had told you may have |
| 10:58 | 19 | happened was possible; did you? |
| 10:58 | 20 | A    I did not know in June that you were not around on |
| 10:58 | 21 | May 1st, 2018. |
| 10:58 | 22 |         MR. AVENATTI:  Move to strike. |
| 10:58 | 23 |         THE COURT:  Denied. |
| 10:58 | 24 | BY MR. AVENATTI: |
| 10:58 | 25 | Q    My question is:  Did you do anything to find out? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:58 | 1 | A    No.  She was uncertain. |
| 10:59 | 2 | MR. AVENATTI:  Move to strike after no. |
| 10:59 | 3 | THE COURT:  Everything after "No" is stricken. |
| 10:59 | 4 | BY MR. AVENATTI: |
| 10:59 | 5 | Q    Now, before the break I believe you testified that the |
| 10:59 | 6 | government wanted all financial information and evidence |
| 10:59 | 7 | from at least March of 2019 until this trial, right?  Do you |
| 10:59 | 8 | recall that? |
| 10:59 | 9 | A    Yes. |
| 10:59 | 10 | Q    And was that truthful testimony when you gave it? |
| 10:59 | 11 | A    Yes. |
| 10:59 | 12 | Q    And I believe you testified that that related -- that |
| 11:00 | 13 | included financial information for me, the law firm, and my |
| 11:00 | 14 | entities, correct? |
| 11:00 | 15 | A    Yes. |
| 11:00 | 16 | Q    Now, do you recall on March 26, 2019, the day after the |
| 11:00 | 17 | search warrant was executed, do you recall that Ms. Regnier |
| 11:00 | 18 | contacted you about some information that had been left |
| 11:00 | 19 | behind by the agents? |
| 11:00 | 20 | A    Yes. |
| 11:00 | 21 | Q    And do you recall that she had contacted you and told |
| 11:00 | 22 | you that there was a box at her residence that was full of |
| 11:00 | 23 | business records pertaining to the law firm? |
| 11:00 | 24 | A    Yes. |
| 11:00 | 25 | Q    And do you have a recollection of calling another agent |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:00 | 1 | to go retrieve that box that had been left behind? |
| 11:00 | 2 | A    Yes. |
| 11:00 | 3 | Q    And how was it that with 10 to 15 agents plus you and |
| 11:01 | 4 | Mr. Sagel and Ms. Ball, how was it that a box of financial |
| 11:01 | 5 | records from Eagan Avenatti were left at Ms. Regnier's home? |
| 11:01 | 6 | Did you ever find out? |
| 11:01 | 7 | A    Human error. |
| 11:01 | 8 | Q    So you did find out, and you found out it was error; is |
| 11:01 | 9 | that right? |
| 11:01 | 10 | A    That's my understanding. |
| 11:01 | 11 | Q    Did you do anything to actually look into how this |
| 11:01 | 12 | could have happened? |
| 11:01 | 13 | A    No. |
| 11:01 | 14 | Q    Did anyone to the best of your knowledge ever take any |
| 11:01 | 15 | steps to find out how that would be possible, with all of |
| 11:01 | 16 | those federal agents in her home, that a box got left |
| 11:01 | 17 | behind? |
| 11:01 | 18 | A    No. |
| 11:01 | 19 | Q    And you don't know what happened to that box between |
| 11:01 | 20 | the time period that the agents left Ms. Regnier's home and |
| 11:01 | 21 | when she called; do you? |
| 11:01 | 22 | A    No. |
| 11:02 | 23 | Q    While you were at Ms. Regnier's home on March 25th |
| 11:02 | 24 | while the search warrant was being executed, was Ms. Regnier |
| 11:02 | 25 | permitted to have access to any of her files or boxes of |

| | | |
|---|---|---|
| 11:02 | 1 | documents? |
| 11:02 | 2 | A    I don't believe so. |
| 11:02 | 3 | Q    And the reason why she wasn't given access was because |
| 11:02 | 4 | the whole idea behind the search warrant is that you, when |
| 11:02 | 5 | you execute a search warrant, you gather all of the evidence |
| 11:02 | 6 | as it existed at that time; isn't that true? |
| 11:02 | 7 | A    Yes. |
| 11:02 | 8 | Q    And that's why you don't let the target of the search |
| 11:02 | 9 | warrant have access to and potentially tamper with evidence; |
| 11:02 | 10 | is that right? |
| 11:02 | 11 |         MR. SAGEL:  Objection.  Assumes facts not in |
| 11:02 | 12 | evidence, use of the word target. |
| 11:02 | 13 |         THE COURT:  Overruled. |
| 11:02 | 14 |         THE WITNESS:  Yes, and for safety reasons. |
| 11:02 | 15 | BY MR. AVENATTI: |
| 11:03 | 16 | Q    After you got this call from Ms. Regnier the next day, |
| 11:03 | 17 | you contacted a Special Agent Schabilion.  Did I pronounce |
| 11:03 | 18 | that correctly? |
| 11:03 | 19 | A    Schabilion, yes. |
| 11:03 | 20 | Q    And you instructed Ms. Schabilion to go out to |
| 11:03 | 21 | Ms. Regnier's residence and pick up this box of documents |
| 11:03 | 22 | that the 15 agents had left behind, right? |
| 11:03 | 23 | A    Yes. |
| 11:03 | 24 | Q    Because again you wanted to make sure that the |
| 11:03 | 25 | government had all of the financial records relating to the |

| | | |
|---|---|---|
| 11:03 | 1 | law firm, me, and my entities, correct? |
| 11:03 | 2 | A    Yes. |
| 11:04 | 3 | Q    So that was on March 26th. |
| 11:04 | 4 | Then on June 14th, 2019, you had a telephone call |
| 11:04 | 5 | with Ms. Regnier.  Do you recall that? |
| 11:04 | 6 | A    No, I don't recall it. |
| 11:04 | 7 | Q    This would have been before July 25th when she told you |
| 11:04 | 8 | about Tabs.  You don't recall that? |
| 11:04 | 9 | A    I don't recall the telephone call. |
| 11:04 | 10 | MR. AVENATTI:  Your Honor, can I approach? |
| 11:04 | 11 | THE COURT:  You may. |
| 11:04 | 12 | (Document handed to the witness) |
| 11:04 | 13 | BY MR. AVENATTI: |
| 11:05 | 14 | Q    Special Agent Karlous, does this refresh your |
| 11:05 | 15 | recollection that indeed on June 14th, 2019, you had a call |
| 11:05 | 16 | with Ms. Regnier about this case? |
| 11:05 | 17 | A    Yes. |
| 11:05 | 18 | Q    And, in fact, you took handwritten notes on that day; |
| 11:05 | 19 | am I right? |
| 11:05 | 20 | A    Correct. |
| 11:05 | 21 | Q    And do you recall if anyone else was on the call? |
| 11:05 | 22 | A    I don't believe so because the notes don't reflect it. |
| 11:05 | 23 | Q    So you believe it was just you and Ms. Regnier? |
| 11:06 | 24 | A    Yes.  She called me. |
| 11:06 | 25 | Q    And during this call Ms. Regnier told you that she had |

62

11:06   1   six to seven miscellaneous boxes of documents; didn't she?

11:06   2   A    Yes.

11:06   3   Q    And she told you that these boxes included

11:06   4   correspondence from, quote, fans, close quote, personal

11:06   5   records, MA finances, other companies, and a ton of EA

11:07   6   records, as well as other case related, right?

11:07   7   A    Yes.

11:07   8   Q    And she told you that she was going to either move

11:07   9   them, burn them, or possibly trash them; didn't she?

11:07   10   A    Yes.

11:07   11   Q    And she also told you that instead of moving them or

11:07   12   burning them or trashing them, that she was willing to hand

11:07   13   over the boxes to the federal government; didn't she?

11:08   14   A    Yes.

11:08   15   Q    And in your notes you placed an asterisk next to what

11:08   16   Ms. Regnier told you about these boxes and about moving

11:08   17   them, burning them, and trashing them, as well as the fact

11:08   18   that she was willing to hand over the boxes.  You put

11:08   19   asterisks around that; didn't you?

11:08   20   A    Yes.

11:08   21   Q    Please tell the jury about what happened when the

11:08   22   government went out to Ms. Regnier's residence, like it had

11:08   23   done a couple months before to pick up the single box of

11:08   24   documents, please tell the jury what happened when the

11:09   25   government went out to pick up these six to seven boxes of

11:09  1   documents.

11:09  2   A    We never picked them up.

11:09  3   Q    Who met Ms. Regnier when she dropped off the boxes of

11:09  4   documents?

11:09  5   A    These boxes that you're referring to, the six or seven?

11:09  6   Q    Yes.

11:09  7   A    We never picked them up.  She never dropped them off.

11:09  8   Q    Where did Ms. Regnier live when you executed the search

11:09  9   warrant?  What was the city?

11:09  10  A    I believe it was Yorba Linda.

11:10  11  Q    About a half hour from the courthouse?

11:10  12  A    Approximately.

11:10  13  Q    You were here for Ms. Regnier's testimony, correct?

11:10  14  A    Yes.

11:10  15  Q    And you know based on her testimony that after this

11:10  16  phone call and before this trial started, those six to seven

11:10  17  boxes of documents that you did not pick up were shredded?

11:10  18  You know that based on her testimony; don't you, sir?

11:10  19  A    I believe that's what she said.

11:11  20  Q    Did you ever follow up with Ms. Regnier after this

11:11  21  phone call to see if you could send someone over to pick up

11:11  22  the boxes of documents?  Yes or no?

11:11  23  A    No.

11:11  24  Q    Beyond what Ms. Regnier told you as reflected in your

11:11  25  notes, do you know what else was contained within these six

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:11 | 1 | to seven boxes of documents? |
| 11:11 | 2 | A    From what she told me? |
| 11:12 | 3 | Q    Sir, listen to my question.  Strike the question. |
| 11:12 | 4 | You made notes of everything of any substance that |
| 11:12 | 5 | Ms. Regnier told you that day; did you not? |
| 11:12 | 6 | A    Yes. |
| 11:12 | 7 | Q    Beyond what I have asked you about as reflected in your |
| 11:12 | 8 | notes, you had no knowledge of anything else in those boxes; |
| 11:12 | 9 | did you? |
| 11:12 | 10 | A    No other knowledge from her. |
| 11:12 | 11 | Q    You had no other knowledge as to what was contained |
| 11:12 | 12 | within these boxes; did you, sir -- personal knowledge? |
| 11:12 | 13 | A    I found out later -- |
| 11:12 | 14 | MR. AVENATTI:  Move to strike. |
| 11:12 | 15 | THE COURT:  It will be stricken. |
| 11:12 | 16 | BY MR. AVENATTI: |
| 11:12 | 17 | Q    Sir, when you spoke with Ms. Regnier in June of 2019, |
| 11:12 | 18 | the totality of what you were told about what was in these |
| 11:13 | 19 | boxes is what you wrote in your notes; is that right? |
| 11:13 | 20 | MR. SAGEL:  Objection.  Asked and answered twice |
| 11:13 | 21 | now. |
| 11:13 | 22 | THE COURT:  Sustained. |
| 11:13 | 23 | BY MR. AVENATTI: |
| 11:13 | 24 | Q    When is the next time, if ever, you conversed with |
| 11:13 | 25 | Ms. Regnier about what was contained in these boxes? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:13 | 1 | A    I don't recall. |
| 11:13 | 2 | Q    Do you recall ever doing that? |
| 11:13 | 3 | A    I just don't recall. |
| 11:13 | 4 | Q    And the reason why you wanted -- well, strike that. |
| 11:14 | 5 | The reason why according to you the government wanted all of |
| 11:14 | 6 | the financial records was so that you could determine |
| 11:14 | 7 | whether a crime was committed in connection with the ten |
| 11:14 | 8 | counts in this case; is that right? |
| 11:14 | 9 | A    We already had the evidence. |
| 11:14 | 10 |         MR. AVENATTI:  Move to strike, Your Honor. |
| 11:14 | 11 |         THE COURT:  It will be stricken. |
| 11:14 | 12 | BY MR. AVENATTI: |
| 11:14 | 13 | Q    Special Agent Karlous, you understood in 2019 and 2020 |
| 11:14 | 14 | that the reason why you wanted the financial records which |
| 11:14 | 15 | you have already told the jury you wanted was in connection |
| 11:15 | 16 | with your investigation, right? |
| 11:15 | 17 | A    Yes. |
| 11:15 | 18 | Q    And did you have the understanding that the information |
| 11:15 | 19 | relating to the expenses that the law firm incurred for the |
| 11:15 | 20 | clients was important information? |
| 11:15 | 21 | A    Yes. |
| 11:15 | 22 | Q    You understood that that information would help answer |
| 11:15 | 23 | this question, the calculation as to how much money was due |
| 11:15 | 24 | the clients.  Did you understand that?  Yes or no? |
| 11:16 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

66

11:16  1    Q    And despite that knowledge, you never asked for the
11:16  2    Tabs data; did you?  Yes or no?
11:16  3    A    I don't know.
11:16  4    Q    I am asking you, sir, despite that knowledge, did you
11:16  5    ever ask for the Tabs data?
11:16  6            MR. SAGEL:  Objection, Your Honor.  Asked and
11:16  7    answered, 403.
11:16  8            THE COURT:  Overruled.
11:16  9            THE WITNESS:  Me personally, no.
11:16  10   BY MR. AVENATTI:
11:16  11   Q    Do you know of anyone who ever did?
11:16  12   A    I don't know.
11:16  13   Q    Now, during the pendency of this case -- well, strike
11:16  14   that.  Since late March of 2019 up through this morning,
11:17  15   have you exchanged text messages with any witness in this
11:17  16   case?
11:17  17   A    This case?  No, I don't believe so.
11:17  18   Q    So Ms. Regnier's testimony that she recalled exchanging
11:17  19   text messages with you, to the best of your knowledge she is
11:17  20   wrong about that, right?
11:17  21   A    I believe so.
11:17  22   Q    Do you know so?
11:17  23   A    I have had no text messages with her.
11:17  24   Q    So you went back to the phone that you had in 2019 to
11:17  25   check whether you had text exchanges with Ms. Regnier after

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:17   1   you heard her testify to that, right?

11:17   2   A    No, I did not.  I no longer have access to that phone.

11:18   3   Q    What happened to that phone?

11:18   4   A    I don't know.  We get new phones for work and we turn

11:18   5   them in and get a new phone.

11:18   6   Q    When did you turn in this phone?

11:18   7   A    There's been at least two phones since I left the IRS.

11:18   8   Q    Well, let's just talk about the time period March 25th,

11:18   9   2019, until today.  When you executed the search warrant on

11:18  10   Ms. Regnier's home, you had one cell phone, correct?

11:18  11   A    Yes.

11:18  12   Q    By the way, did you give Ms. Regnier your cell phone

11:18  13   number when you left that day?

11:18  14   A    Possibly.

11:18  15   Q    That was your custom and practice at the time?

11:18  16   A    I don't recall whether I gave her my number or not.

11:18  17   Q    And then how long did you have that phone that you had

11:18  18   with you on March 25th?

11:18  19   A    I don't recall.  Maybe six or 12 months.  I don't

11:19  20   recall.

11:19  21   Q    All right.  So that takes us to the latter part of

11:19  22   2019, maybe early 2020.  You then got a new phone?

11:19  23   A    Yes.

11:19  24   Q    What did you do with the old phone?

11:19  25   A    I turned it in and got a new phone.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

68

| | | |
|---|---|---|
| 11:19 | 1 | Q    Was any forensic copy made of your old phone? |
| 11:19 | 2 | A    Not that I'm aware of. |
| 11:19 | 3 | Q    Who did you turn it in to? |
| 11:19 | 4 | A    The tech person. |
| 11:19 | 5 | Q    Then when you got your new phone in 2020, how long did |
| 11:19 | 6 | you have that phone? |
| 11:19 | 7 | A    Until I left in January 2021. |
| 11:19 | 8 | Q    And did you turn that phone in? |
| 11:19 | 9 | A    Yes. |
| 11:19 | 10 | Q    Was any forensic image made of that phone? |
| 11:19 | 11 | A    Not that I'm aware of. |
| 11:20 | 12 | Q    Now, during this two-year time period of 2019, 2020, |
| 11:20 | 13 | end of 2021, were you generally, in the course of your |
| 11:20 | 14 | duties, communicating with witnesses about investigations? |
| 11:20 | 15 | A    Yes. |
| 11:20 | 16 | Q    And were you doing some of that by text message? |
| 11:20 | 17 | A    I don't believe so. |
| 11:20 | 18 | Q    It's not your testimony that you had no text message |
| 11:20 | 19 | communications with witnesses on one or more investigations |
| 11:20 | 20 | during that time period; is it? |
| 11:20 | 21 | A    One or more?  I don't understand your question. |
| 11:20 | 22 | Q    Is it your testimony that during that two-year time |
| 11:20 | 23 | period, you didn't text message with a single witness in a |
| 11:20 | 24 | single one of the cases you were investigating? |
| 11:20 | 25 | A    No.  I have. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

69

| | | |
|---|---|---|
| 11:20 | 1 | Q    Who is Andrew Stolper? |
| 11:21 | 2 | MR. SAGEL:  Objection.  403, Your Honor. |
| 11:21 | 3 | THE COURT:  Overruled. |
| 11:21 | 4 | THE WITNESS:  A former prosecutor in this office. |
| 11:21 | 5 | BY MR. AVENATTI: |
| 11:21 | 6 | Q    Mr. Stolper is a former prosecutor who had a major |
| 11:21 | 7 | criminal case thrown out because of his misconduct; isn't |
| 11:21 | 8 | that true? |
| 11:21 | 9 | MR. SAGEL:  Same objection, Your Honor. |
| 11:21 | 10 | THE COURT:  Sustained. |
| 11:21 | 11 | BY MR. AVENATTI: |
| 11:21 | 12 | Q    Mr. Stolper is a friend of Mr. Sagel; isn't that true? |
| 11:21 | 13 | A    I don't know.  Define friend. |
| 11:22 | 14 | Q    Well, how would you define the word friend? |
| 11:22 | 15 | A    They're colleagues.  They work together in the office. |
| 11:22 | 16 | Q    Well, Mr. Stolper is no longer in the office, right? |
| 11:22 | 17 | A    That's correct. |
| 11:22 | 18 | Q    Okay.  Isn't it true that Mr. Stolper is a friend of |
| 11:22 | 19 | Mr. Sagel's? |
| 11:22 | 20 | A    I believe so. |
| 11:22 | 21 | Q    Have you ever met Mr. Stolper? |
| 11:22 | 22 | A    Yes. |
| 11:22 | 23 | Q    Where have you met him? |
| 11:22 | 24 | A    When he was a prosecutor here in this building. |
| 11:22 | 25 | Q    Did you ever meet Mr. Stolper after he left the office? |

70

| | | |
|---|---|---|
| 11:22 | 1 | A    Once or twice. |
| 11:22 | 2 | Q    Where? |
| 11:22 | 3 | A    Once for lunch shortly after he left, and the second |
| 11:23 | 4 | time is when I picked up deposition records from his office. |
| 11:23 | 5 | Q    Because he's now in private practice, right? |
| 11:23 | 6 | A    Yes. |
| 11:23 | 7 | Q    And when you went to lunch with Mr. Stolper, was |
| 11:23 | 8 | Mr. Sagel present? |
| 11:23 | 9 | A    No. |
| 11:23 | 10 | Q    Are you aware that Mr. Sagel has referred to |
| 11:23 | 11 | Mr. Stolper as one of his closest friends? |
| 11:23 | 12 | A    No. |
| 11:23 | 13 | Q    Are you aware that Mr. Stolper's website has a link to |
| 11:23 | 14 | an article quoting Mr. Sagel saying very nice things about |
| 11:24 | 15 | his close friend, Mr. Stolper? |
| 11:24 | 16 |           MR. SAGEL:  Objection, Your Honor.  403 and calls |
| 11:24 | 17 | for hearsay. |
| 11:24 | 18 |           THE COURT:  Overruled. |
| 11:24 | 19 |           THE WITNESS:  No.  I have never been on his |
| 11:24 | 20 | website. |
| 11:24 | 21 | BY MR. AVENATTI: |
| 11:24 | 22 | Q    And you are aware, are you not, that before you |
| 11:24 | 23 | executed that search warrant in March of 2019, long before |
| 11:24 | 24 | that, I had fired Mr. Stolper for fraud?  You are aware of |
| 11:24 | 25 | that; are you not, sir? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:24   1    A    No, I wasn't aware of that.

11:24   2    Q    Prior to today you had never heard any claim that I

11:25   3    fired Mr. Stolper?  Is that your testimony, sir?

11:25   4    A    No.  I believe earlier you said March 2019.  So if

11:25   5    you're asking as of --

11:25   6    Q    No.  Let me clarify the question.

11:25   7         Are you aware that I fired Mr. Stolper before

11:25   8    March of 2019?

11:25   9    A    No.

11:25   10   Q    Have you ever been made aware of any claim that I

11:25   11   terminated Mr. Stolper from my law firm prior to March of

11:25   12   2019?

11:25   13   A    I think you said that during the trial.

11:25   14        MR. AVENATTI:  Move to strike, Your Honor.

11:25   15        THE COURT:  It will be stricken.

11:25   16   BY MR. AVENATTI:

11:25   17   Q    Other than what you have heard during the trial, are

11:25   18   you aware of any claim that I terminated Mr. Stolper prior

11:25   19   to March of 2019?

11:25   20   A    No.

11:26   21   Q    Now, Mr. Stolper has played a role in this case; hasn't

11:26   22   he?  Yes or no?

11:26   23   A    I don't know.

11:26   24   Q    Has Mr. Stolper ever been interviewed by the

11:26   25   government -- strike that.  Has Mr. Stolper ever had any

```
11:26   1    contact with Mr. Sagel and other members of the
11:26   2    investigative team relating to this criminal prosecution of
11:26   3    me?  Yes or no?
11:26   4    A    Yes.
11:27   5    Q    Now, I want to ask you about a couple days before
11:27   6    March 25th, 2019.  March 25th, 2019, was on a Monday, right?
11:27   7    A    I don't have a calendar in front of me.  I believe so.
11:27   8    Q    Well, I will represent to you that it was.  And if I'm
11:27   9    wrong, Mr. Sagel I'm sure will correct me.
11:27  10         Do you recall that on the preceding Friday --
11:27  11    you're shaking your head.  The preceding Friday do you
11:27  12    recall that you were in Los Angeles?
11:27  13    A    I don't believe so.
11:27  14    Q    Were you ever at any hearing or proceeding where
11:27  15    Mr. Stolper was asking me questions?
11:28  16    A    No.
11:28  17    Q    Are you aware of the fact that three days before the
11:28  18    search warrant was executed, Mr. Stolper was asking me
11:28  19    questions in another proceeding with one or more of your
11:28  20    colleagues sitting in the gallery?
11:28  21    A    Yes, I was aware.
11:28  22    Q    And you were aware of that at the time, correct?
11:28  23    A    Yes.
11:28  24    Q    But you were not there?
11:28  25    A    No.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:28 | 1 | Q    And who was there on that Friday, three days before the |
| 11:28 | 2 | search warrant was executed, on behalf of the government? |
| 11:28 | 3 | A    I believe Special Agent James Kim was sitting listening |
| 11:29 | 4 | to the testimony. |
| 11:29 | 5 | Q    Anyone else? |
| 11:29 | 6 | A    Inside listening? |
| 11:29 | 7 | Q    Yes. |
| 11:29 | 8 | A    No, but there may have been an arrest team outside. |
| 11:29 | 9 | MR. AVENATTI:  Your Honor, move to strike. |
| 11:29 | 10 | THE COURT:  It will be stricken. |
| 11:29 | 11 | BY MR. AVENATTI: |
| 11:29 | 12 | Q    Mr. Kim was there listening to the questions posed by |
| 11:29 | 13 | Mr. Stolper, right? |
| 11:29 | 14 | A    I believe so. |
| 11:29 | 15 | Q    And at the time, just so the jury is clear, Mr. Stolper |
| 11:29 | 16 | wasn't a prosecutor; was he? |
| 11:29 | 17 | A    No. |
| 11:29 | 18 | Q    He wasn't an FBI agent; was he? |
| 11:29 | 19 | A    No. |
| 11:29 | 20 | Q    He wasn't an IRS CID agent; was he? |
| 11:29 | 21 | A    No. |
| 11:29 | 22 | Q    He was a private lawyer who had been fired by me; |
| 11:29 | 23 | wasn't he? |
| 11:30 | 24 | A    I don't know that. |
| 11:30 | 25 | Q    He was a private lawyer, right? |

| | | |
|---|---|---|
| 11:30 | 1 | A    Yes. |
| 11:30 | 2 |           MR. AVENATTI:  One moment, Your Honor. |
| 11:30 | 3 |           (Pause in proceedings) |
| 11:30 | 4 | BY MR. AVENATTI: |
| 11:30 | 5 | Q    Now, you have been sitting here in the trial, correct? |
| 11:30 | 6 | A    Yes. |
| 11:30 | 7 | Q    And do you recall earlier in the trial Mr. Sagel called |
| 11:30 | 8 | one of his colleagues to the stand and they read some |
| 11:30 | 9 | transcript from a preceding hearing in which I had |
| 11:30 | 10 | testified?  Do you remember that? |
| 11:30 | 11 | A    Yes. |
| 11:31 | 12 | Q    And when they did that, do you recall Mr. Sagel |
| 11:31 | 13 | mentioning the person's name who did the questioning? |
| 11:31 | 14 | A    I don't recall. |
| 11:31 | 15 | Q    But you know the person's name who did the questioning |
| 11:31 | 16 | at that hearing; don't you? |
| 11:31 | 17 | A    I'm not sure which hearing transcript you're referring |
| 11:31 | 18 | to. |
| 11:31 | 19 | Q    I'm talking about the hearing transcript from the |
| 11:31 | 20 | Friday before you executed the search warrant on |
| 11:31 | 21 | Ms. Regnier's home, complete with the helicopter. |
| 11:31 | 22 |           MR. SAGEL:  Objection.  Argumentative, Your Honor. |
| 11:31 | 23 |           THE COURT:  Rephrase the question. |
| 11:31 | 24 | BY MR. AVENATTI: |
| 11:31 | 25 | Q    I'm talking about the hearing that took place on Friday |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:31  1  before the search warrant was executed on the Monday, the

11:31  2  one that Mr. Stolper was at.

11:31  3  A    Yes.  That transcript was read, part of it.

11:32  4  Q    Part of it.  And the person doing the questioning in

11:32  5  that hearing was Mr. Stolper, right?

11:32  6  A    I believe so.  I'm not a hundred percent sure.

11:32  7  Q    Do you have any reason to dispute that?

11:32  8  A    No.

11:32  9  Q    Sir, you know that it was no accident that Special

11:32  10  Agent Kim happened to be sitting in the audience that day

11:32  11  listening to the testimony, right?  Yes or no?

11:32  12  A    I don't understand your question.

11:32  13  Q    Well, I'll strike the question.  Maybe I'll ask Special

11:32  14  Agent Kim that question.

11:32  15           Let me go to a different topic.

11:32  16           Have you been present for any interviews that

11:32  17  Mr. Stolper has given the government?

11:33  18  A    No.

11:33  19  Q    Do you know who, if anyone, has?

11:33  20  A    I believe it was former prosecutor Julian Andre and

11:33  21  Special Agent James Kim, I believe.

11:33  22  Q    And you are aware, are you not, that Mr. Stolper

11:33  23  provided documents to the government in connection with an

11:33  24  attempt to criminally prosecute me?

11:33  25  A    He provided documents I believe, yes.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:33 | 1 | Q    How many times has Mr. Stolper met with prosecutors or |
| 11:33 | 2 | agents in an attempt to have me criminally prosecuted? |
| 11:34 | 3 | A    I don't know except for that former interview that |
| 11:34 | 4 | you're referring to. |
| 11:34 | 5 | Q    And you understand that Mr. Stolper represents another |
| 11:34 | 6 | attorney who I had terminated along with Mr. Stolper, right? |
| 11:34 | 7 | A    I don't know who he represents. |
| 11:34 | 8 | Q    Well, did you understand when he was conducting this |
| 11:34 | 9 | hearing that he was representing another attorney who I had |
| 11:34 | 10 | terminated? |
| 11:34 | 11 | MR. SAGEL:  Objection.  Foundation as to |
| 11:34 | 12 | termination? |
| 11:35 | 13 | THE COURT:  Overruled. |
| 11:35 | 14 | BY MR. AVENATTI: |
| 11:35 | 15 | Q    Yes or no? |
| 11:35 | 16 | A    The termination part, no. |
| 11:35 | 17 | Q    You understood he represented another attorney that was |
| 11:35 | 18 | no longer at my firm, right? |
| 11:35 | 19 | A    Yes. |
| 11:35 | 20 | Q    But you didn't have an understanding as to the |
| 11:35 | 21 | circumstances under which they left the firm; is that right? |
| 11:35 | 22 | A    Correct. |
| 11:36 | 23 | Q    Sir, let me show you a portion of the transcript that |
| 11:36 | 24 | Mr. Sagel previously used in the trial. |
| 11:37 | 25 | MR. SAGEL:  Your Honor, the transcript itself is |

| | | |
|---|---|---|
| 11:37 | 1 | not in evidence.  It was read in. |
| 11:37 | 2 | THE COURT:  That's correct. |
| 11:37 | 3 | MR. AVENATTI:  Your Honor, can I approach to |
| 11:37 | 4 | refresh? |
| 11:37 | 5 | THE COURT:  You may. |
| 11:37 | 6 | MR. AVENATTI:  The March 22 transcript.  It's 405 |
| 11:37 | 7 | in the binder. |
| 11:37 | 8 | (Document handed to the witness) |
| 11:37 | 9 | BY MR. AVENATTI: |
| 11:37 | 10 | Q    Special Agent Karlous, does that refresh your |
| 11:37 | 11 | recollection that the individual who was asking me questions |
| 11:37 | 12 | three days before Ms. Regnier's home was searched was Andrew |
| 11:37 | 13 | Stolper? |
| 11:38 | 14 | A    Yes. |
| 11:38 | 15 | Q    Do you know what contact Mr. Stolper had with |
| 11:38 | 16 | Mr. Sagel, Mr. Andre, or Mr. Kim before he decided what |
| 11:38 | 17 | questions to ask on that fateful Friday? |
| 11:38 | 18 | A    I don't know of any contact. |
| 11:38 | 19 | Q    Are you aware of all of the contacts of all of the |
| 11:38 | 20 | members in the investigative team? |
| 11:38 | 21 | A    No. |
| 11:38 | 22 | Q    So you don't know one way or the other; is that true? |
| 11:38 | 23 | A    I don't know of any contact. |
| 11:38 | 24 | MR. AVENATTI:  Move to strike. |
| 11:38 | 25 | THE COURT:  Denied. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:38 | 1 | BY MR. AVENATTI: |
| 11:38 | 2 | Q    Sir, do you know whether there were any contacts? |
| 11:39 | 3 | A    I do not. |
| 11:39 | 4 | Q    So it's possible that there may have been contacts that |
| 11:39 | 5 | you were just not a party to, true? |
| 11:39 | 6 | A    Could be. |
| 11:39 | 7 | Q    When did Mr. Stolper first have contact with the U.S. |
| 11:39 | 8 | Attorney's Office about me?  Just a date. |
| 11:39 | 9 | A    I don't have an exact date.  I would say first quarter |
| 11:39 | 10 | of 2018. |
| 11:39 | 11 | Q    So Mr. Stolper's first contact with the U.S. Attorney's |
| 11:39 | 12 | Office was in the first quarter of 2018, correct? |
| 11:40 | 13 | A    That's an estimate. |
| 11:40 | 14 | Q    That's your best estimate, right? |
| 11:40 | 15 | A    Yes. |
| 11:40 | 16 | Q    About a year before this questioning occurred, right? |
| 11:40 | 17 | A    Yes. |
| 11:40 | 18 | Q    And about a year before the search warrant on |
| 11:40 | 19 | Ms. Regnier's home was executed, right? |
| 11:40 | 20 | A    Yes. |
| 11:40 | 21 | Q    And who did Mr. Stolper first contact in early 2018 |
| 11:40 | 22 | about me -- the name of the person? |
| 11:40 | 23 | A    I believe it was Mr. Sagel initially, and then it was |
| 11:40 | 24 | Mr. Sagel and myself at some point. |
| 11:40 | 25 | Q    And how did that contact occur?  Was it by phone or was |

79

| Time | Line | Text |
|---|---|---|
| 11:40 | 1 | it in person? |
| 11:41 | 2 | A    Possibly by e-mail. |
| 11:41 | 3 | Q    Well, when you say possibly by e-mail, do you have a |
| 11:41 | 4 | recollection of there being an e-mail? |
| 11:41 | 5 | A    It wasn't by phone and it wasn't in person, so I |
| 11:41 | 6 | believe it was by e-mail. |
| 11:41 | 7 | Q    And after you received the e-mail from Mr. Stolper who |
| 11:41 | 8 | was no longer at my firm in early 2018, what happened next? |
| 11:41 | 9 | A    Nothing. |
| 11:41 | 10 | Q    Did anyone have any contact with Mr. Stolper, or do you |
| 11:41 | 11 | know? |
| 11:41 | 12 | A    I did not. |
| 11:41 | 13 | Q    And you don't know if anyone else did, right? |
| 11:41 | 14 | A    I don't know. |
| 11:41 | 15 | Q    Do you know if there were any other e-mails from |
| 11:41 | 16 | Mr. Stolper? |
| 11:41 | 17 | A    I don't know. |
| 11:42 | 18 | Q    Now, you said that that was through Mr. Sagel and |
| 11:42 | 19 | possibly through you, right? |
| 11:42 | 20 | A    I believe so. |
| 11:42 | 21 | Q    Did you have any further contact with Mr. Stolper after |
| 11:42 | 22 | that e-mail? |
| 11:42 | 23 | A    I don't recall there being any. |
| 11:42 | 24 | Q    When you received that e-mail from Mr. Stolper, you |
| 11:42 | 25 | knew of Mr. Stolper's history, right? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:42 | 1 | A    With the U.S. Attorney's Office? |
| 11:42 | 2 | Q    Yes. |
| 11:42 | 3 | A    Yes. |
| 11:42 | 4 | Q    And you knew the circumstances under which he was no |
| 11:42 | 5 | longer at the office; didn't you? |
| 11:43 | 6 | A    No. |
| 11:43 | 7 | Q    Sir, it's your testimony that when you got that e-mail |
| 11:43 | 8 | in early 2018, that you had no knowledge of the |
| 11:43 | 9 | circumstances under which Mr. Stolper had left the U.S. |
| 11:43 | 10 | Attorney's Office? |
| 11:43 | 11 | A    No. |
| 11:43 | 12 | THE COURT:  Let's get that clarified.  It's |
| 11:43 | 13 | ambiguous. |
| 11:43 | 14 | MR. AVENATTI:  Thank you, Your Honor. |
| 11:43 | 15 | BY MR. AVENATTI: |
| 11:43 | 16 | Q    Sir, is it your testimony that when you got that e-mail |
| 11:43 | 17 | from Mr. Stolper in early 2018, that you were not aware that |
| 11:43 | 18 | Mr. Stolper had left the U.S. Attorney's Office in disgrace? |
| 11:43 | 19 | A    I know that he left.  I don't know if he left on his |
| 11:43 | 20 | own or some other reason.  I don't know. |
| 11:43 | 21 | Q    When you got that e-mail, you were aware, were you not, |
| 11:44 | 22 | that Mr. Stolper had got caught committing prosecutorial |
| 11:44 | 23 | misconduct by another judge in this building in connection |
| 11:44 | 24 | with a high-profile case by the name of Broadcom.  You knew |
| 11:44 | 25 | that; did you not? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

81

11:44    1    A    I do recall that.

11:44    2    Q    And when that happened, you knew about it because it

11:44    3    was a big deal; wasn't it?

11:44    4    A    I guess.

11:44    5    Q    Well, it's not every day that a federal judge dismisses

11:44    6    a major criminal prosecution because the prosecutor has

11:44    7    engaged in misconduct and misled the judge.  That doesn't

11:45    8    happen every day in your experience; does it, sir?

11:45    9    A    It does not.

11:45    10    Q    Now, in the 26 years that you have been at the Treasury

11:45    11    Department -- I guess, is that the most accurate way to

11:45    12    describe your 26 years?

11:45    13    A    Twenty-five-plus years with the IRS criminal

11:45    14    investigation.

11:45    15    Q    Right now you're no longer with that division?

11:45    16    A    Correct.

11:45    17    Q    Okay.  So in the 25-plus years when you were with the

11:45    18    Internal Revenue Service, did you ever receive any training

11:46    19    on conflict-of-interest issues?

11:46    20    A    Yes.

11:46    21    Q    And how did you receive that training?

11:46    22    A    I don't recall.

11:46    23    Q    Was it in person? online?

11:46    24    A    Over 25 years it's kind of hard to pinpoint.

11:46    25    Q    Well, did you receive the training on more than one

11:46  1   occasion?

11:46  2   A    Yes.

11:46  3   Q    And generally what do you recall about that training?

11:46  4   A    Not much.

11:46  5   Q    Well, is it fair to say that when you were trained on

11:46  6   conflict-of-interest issues, that you were trained that you

11:46  7   should not be handling investigations for people that you

11:46  8   know?

11:46  9   A    Yes.

11:46  10  Q    And you were generally trained that it is in conflict

11:47  11  for a federal member of law enforcement to attempt to

11:47  12  utilize the power of the federal government and the

11:47  13  Department of Justice to assist a friend.  You learned that,

11:47  14  right?

11:47  15  A    Yes.

11:47  16  Q    Pretty basic stuff, right?

11:47  17  A    Yes.

11:47  18  Q    And one of the reasons -- strike that.  And in the

11:47  19  course of being trained, you have learned that one of the

11:47  20  reasons why that is so important is because of how powerful

11:47  21  the United States government is, right?

11:47  22  A    I don't think it's described that way.

11:47  23  Q    Well, do you believe the Department of Justice and the

11:47  24  Department of Treasury in the United States is powerful?

11:47  25  A    Yes.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:48   1   Q    And what is supposed to happen when a member of the
11:48   2   Department of Justice or the Department of Treasury, what is
11:48   3   supposed to happen if that individual discovers that in fact
11:48   4   a criminal prosecution involves somebody that they know
11:48   5   either as a witness or as a target?  What is generally
11:48   6   supposed to happen?
11:48   7   A    You communicate with your supervisor.  And if need be,
11:48   8   you have someone else handle the case.
11:48   9   Q    In order to avoid a potential conflict, right?
11:48  10   A    Yes.
11:49  11   Q    In fact, you were trained that it was an obligation to
11:49  12   avoid even the appearance of a conflict of interest or
11:49  13   impropriety; isn't that true?
11:49  14   A    Yes.
11:49  15   Q    So even if there wasn't an actual conflict or
11:49  16   impropriety, you understood at all times that there was an
11:49  17   obligation to avoid it even remotely looking like that?
11:49  18   A    Yes.  That's what they advise.
11:49  19   Q    When you received the e-mail, you knew that Mr. Sagel
11:49  20   knew Mr. Stolper, correct?
11:49  21   A    I stated that earlier, that they worked together.
11:50  22            MR. AVENATTI:  Move to strike everything after
11:50  23   "Yes" as nonresponsive, Your Honor.
11:50  24            MR. SAGEL:  He didn't say yes, Your Honor.
11:50  25            THE COURT:  He didn't say yes.  Denied.
```

84

11:50  1    BY MR. AVENATTI:

11:50  2    Q    Sir, did you know if they had a relationship outside of

11:50  3    working together?

11:50  4    A    I don't know that.

11:50  5    Q    And you didn't know it at the time, right?

11:50  6    A    No.

11:50  7    Q    Do you know if any steps were taken by Mr. Sagel or

11:50  8    anyone else on the investigative team relating to

11:50  9    Mr. Stolper's e-mail?  And what I mean by that is, was it

11:50  10   elevated to a supervisor?

11:50  11   A    The investigative team decided that Julian Andre would

11:50  12   handle anything coming from Mr. Stolper.

11:50  13           MR. AVENATTI:  Move to strike.  I asked about a

11:51  14   supervisor.

11:51  15           THE COURT:  It will be stricken.

11:51  16           MR. AVENATTI:  May I have it read back, Your

11:51  17   Honor?

11:51  18           THE COURT:  Yes.

11:51  19            (Record read)

11:51  20           THE WITNESS:  I'm not aware.

11:51  21   BY MR. AVENATTI:

11:51  22   Q    You were not aware of that happening?

11:51  23   A    No.

11:51  24   Q    And I believe you said that there was a subsequent

11:51  25   meeting with Mr. Stolper, but that was with Mr. Andre and

11:51   1   Mr. Kim; is that right?

11:51   2   A    Yes.

11:51   3   Q    And that was after this e-mail in the first quarter of

11:51   4   2018, right?

11:52   5   A    Yes.

11:52   6   Q    Did you read the interview notes from that meeting?

11:52   7   A    I don't recall reading them.

11:52   8   Q    Were you debriefed about what happened during that

11:52   9   meeting?

11:52   10   A    Possibly.

11:52   11   Q    Well, anything is possible.  That's why we're here

11:52   12   trying to find out what happened.

11:52   13        So do you recall learning about what happened at

11:52   14   that meeting?

11:52   15   A    No, I don't recall.

11:52   16   Q    After that meeting did anyone else from the

11:52   17   investigative team have any further contact with

11:52   18   Mr. Stolper?

11:52   19   A    I don't know.

11:52   20   Q    You did not?

11:52   21   A    I did not.

11:53   22   Q    If somebody wanted to find out, how would they do that?

11:53   23   Is there a log of contacts?

11:53   24   A    There is not a log of contacts, no.

11:53   25   Q    So if it's not written down somewhere, then there is

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:53 | 1 | really no way to find out, right? |
| 11:53 | 2 | A    Yes. |
| 11:53 | 3 | Q    Now, when Mr. Barela testified in this trial and you |
| 11:53 | 4 | heard his claims about Ms. Jenness being on the phone call, |
| 11:53 | 5 | when you heard him tell the jury that that happened under |
| 11:53 | 6 | oath, that was not the first time that he had told that |
| 11:54 | 7 | story in front of you; was it? |
| 11:54 | 8 | A    Correct. |
| 11:54 | 9 | Q    You had heard that before? |
| 11:54 | 10 | A    Yes. |
| 11:54 | 11 | Q    Did you believe it when you heard it? |
| 11:54 | 12 | MR. SAGEL:  Objection.  Vague and calls for -- |
| 11:54 | 13 | it's just an improper question, Your Honor. |
| 11:54 | 14 | THE COURT:  Sustained. |
| 11:54 | 15 | BY MR. AVENATTI: |
| 11:54 | 16 | Q    Sir, after Mr. Barela told you this, did you do |
| 11:54 | 17 | anything to figure out if it was true? |
| 11:54 | 18 | A    Yes. |
| 11:54 | 19 | Q    And one of the things you did to figure out whether it |
| 11:54 | 20 | was true was you asked Mr. Arden or somebody asked |
| 11:54 | 21 | Mr. Arden? |
| 11:54 | 22 | A    Yes. |
| 11:55 | 23 | Q    And Mr. Arden told you and others that it did not |
| 11:55 | 24 | happen; isn't that true? |
| 11:55 | 25 | A    He said the phone call happened but that Evan Jenness |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:55 | 1 | was not on the call. |
| 11:55 | 2 | Q    And then you asked Mr. Ahmed Ibrahim, another attorney |
| 11:55 | 3 | that worked at the firm, whether the call had gone down as |
| 11:55 | 4 | Mr. Barela had stated, right? |
| 11:55 | 5 | MR. SAGEL:  Objection, Your Honor.  Calls for |
| 11:55 | 6 | hearsay. |
| 11:55 | 7 | THE COURT:  Overruled. |
| 11:55 | 8 | THE WITNESS:  Yes, we did ask him. |
| 11:55 | 9 | BY MR. AVENATTI: |
| 11:55 | 10 | Q    And Mr. Ibrahim told you the same thing, that the call |
| 11:55 | 11 | did not occur as Mr. Barela had stated; didn't he? |
| 11:55 | 12 | MR. SAGEL:  Same objection, Your Honor. |
| 11:55 | 13 | THE COURT:  It will be received but not for the |
| 11:55 | 14 | truth. |
| 11:55 | 15 | THE WITNESS:  That the call occurred but that Evan |
| 11:55 | 16 | Jenness was not on the call. |
| 11:55 | 17 | THE COURT:  I think we will take the lunch break |
| 11:56 | 18 | here. |
| 11:56 | 19 | Ladies and gentlemen, we will be in recess until |
| 11:56 | 20 | 1:30.  Please remember the admonition not to discuss the |
| 11:56 | 21 | case with anyone and not to form any opinions on the issues |
| 11:56 | 22 | in the case until it is submitted to you.  And please do not |
| 11:56 | 23 | do any research. |
| 11:56 | 24 | (Jury not present) |
| 11:56 | 25 | THE COURT:  Earlier this morning Mr. Avenatti |

| | | |
|---|---|---|
| 11:56 | 1 | filed a brief entitled defendant's objection to public |
| 11:56 | 2 | access to exhibits during trial at Docket No. 727.  He |
| 11:57 | 3 | specifically drew my attention to United States versus |
| 11:57 | 4 | DeLorean, 561 F.Supp. 797-800 (CD Cal. 1983). |
| 11:57 | 5 | In that case the Court did not allow access to |
| 11:57 | 6 | court filings.  It was also a criminal case.  One, DeLorean |
| 11:57 | 7 | is not controlling here.  It may be relevant authority but |
| 11:57 | 8 | it's not controlling. |
| 11:57 | 9 | Two, there is a major distinction in that the |
| 11:57 | 10 | documents in DeLorean, all filed documents were subject to a |
| 11:57 | 11 | sealing order which was in place.  The Court in this case |
| 11:57 | 12 | has issued no such sealing orders, general sealing orders. |
| 11:57 | 13 | With respect to the trial exhibits which I ordered |
| 11:57 | 14 | be available, I disagree with the statements that the |
| 11:58 | 15 | DeLorean Court made. |
| 11:58 | 16 | In part, the DeLorean Court said:  "However, this |
| 11:58 | 17 | Court is unconvinced that public scrutiny of and access to |
| 11:58 | 18 | documents would to any significant degree enhance the |
| 11:58 | 19 | quality of or contribute to the integrity of a criminal |
| 11:58 | 20 | trial when the trial itself, i.e., all in-court proceedings, |
| 11:58 | 21 | is completely open to public scrutiny and criticism, and |
| 11:58 | 22 | when in almost every instance all facts and arguments |
| 11:58 | 23 | contained in the documents, if relevant and probative of the |
| 11:58 | 24 | particular issue at hand, will necessarily stand revealed at |
| 11:58 | 25 | the in-court proceeding." |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:58  1         I disagree with that statement.  I specifically
11:59  2    find that the public's appreciation of this criminal trial
11:59  3    would be materially enhanced by allowing the availability of
11:59  4    the trial exhibits.  I point specifically to the trial
11:59  5    exhibits used with Mr. Drum, including Exhibits 420 through
11:59  6    450, and 456.  Of particular note are what I'll call the
11:59  7    bubble charts that were used to trace funds.
11:59  8         I believe those graphics would materially assist
11:59  9    any member of the press or the public in appreciating what
11:59  10   the charges are and what the government's contentions are.
11:59  11   Those bubble charts are found in Exhibits 425, 431, 433,
11:59  12   440, 442, 445, and 447.
11:59  13        The DeLorean Court also averred that the documents
12:00  14   sought there could mislead the public and contain matters
12:00  15   that had been held inadmissible.  By definition, with
12:00  16   respect to the trial exhibits, they are admissible.  Trial
12:00  17   exhibits don't contain extraneous matter that might be found
12:00  18   in other court filings, particularly other court filings
12:00  19   under seal.
12:00  20        For all those reasons, I direct that the order
12:00  21   which I issued the day before yesterday be filed and that
12:00  22   any member of the public wishing a trial exhibit may contact
12:00  23   the Clerk's Office and request such exhibit and pay the
12:00  24   appropriate fee.  That's the Court's ruling.
12:01  25        MR. AVENATTI:  Understood, Your Honor.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:01   1          I had a related issue that I wanted to raise.

12:01   2          THE COURT:  Please proceed.

12:01   3          MR. AVENATTI:  Your Honor, I would make a request

12:01   4   that under Rule 43 and the Sixth Amendment, Federal Rule of

12:01   5   Criminal Procedure 43 and the Sixth Amendment, I'm objecting

12:01   6   to any further ex-parte communications from the press to the

12:01   7   Court.

12:01   8          To the extent that the press would like access to

12:01   9   anything in this case, if it doesn't go through the Clerk's

12:01   10  Office, if it goes through this Court, I have a right to

12:01   11  know about it contemporaneously, not on an ex-parte basis

12:01   12  and in camera.  I don't believe that is appropriate under

12:01   13  the law, and I am used to members of the press making

12:01   14  requests in writing to the Court and being given notice.

12:01   15         Now, whether I ultimately prevail or not on any

12:02   16  objection I may or may not have is a different issue, but

12:02   17  I'm certainly entitled to know about it when it happens.

12:02   18  And so I'm making that request under Rule 43 and my Sixth

12:02   19  Amendment rights and my right to due process.

12:02   20         THE COURT:  Your position is noted.

12:02   21         MR. AVENATTI:  In addition, Your Honor, can I now

12:02   22  have the Tabs data?  I mean --

12:02   23         THE COURT:  Sir, we're going to take that up, so

12:02   24  you don't need to ask that question repeatedly.  There will

12:02   25  be an answer or there will be a solution.  In that regard I

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 12:02 | 1 | direct the parties to present me with supplemental briefing |
| 12:02 | 2 | with regard to the applicability of the Jencks Act and 26.2 |
| 12:02 | 3 | to the Tabs data. |
| 12:02 | 4 | If the defendant believes they have already |
| 12:03 | 5 | covered that, fine, but it would be very helpful to me to |
| 12:03 | 6 | have a single document with the parties' view with respect |
| 12:03 | 7 | to the Tabs data. If it's more convenient to cite passages |
| 12:03 | 8 | you have already filed, so be it, but it would be of greater |
| 12:03 | 9 | assistance to me if you put your view in a separate |
| 12:03 | 10 | document. Once I have that, we'll have a discussion. |
| 12:03 | 11 | MR. AVENATTI: But, Your Honor, I may be able to |
| 12:03 | 12 | shortcut this. I am not maintaining that the Tabs data is |
| 12:03 | 13 | subject to Jencks or 26.2. |
| 12:03 | 14 | THE COURT: Okay. |
| 12:03 | 15 | MR. AVENATTI: I am maintaining that the Tabs data |
| 12:03 | 16 | was required to be produced under Rule 16, under Brady most |
| 12:03 | 17 | certainly; under Giglio; under Bundy, the Ninth Circuit |
| 12:03 | 18 | case; Price, the Ninth Circuit case; and Olson, the Ninth |
| 12:03 | 19 | Circuit case. I'm sure I probably left a couple out, but |
| 12:04 | 20 | that's good for now. |
| 12:04 | 21 | THE COURT: Whatever your grounds are for seeking |
| 12:04 | 22 | the Tabs data, whether it goes beyond 26.2 and Jencks, I |
| 12:04 | 23 | request that you put it in a single document, and the |
| 12:04 | 24 | government do likewise, and we will discuss all grounds that |
| 12:04 | 25 | relate to production or nonproduction of the Tabs data. |

92

12:04  1            MR. AVENATTI:  I will do it in the form of a

12:04  2  supplement to the motion to dismiss for the Brady

12:04  3  violations.

12:04  4            THE COURT:  That's fine.

12:04  5            MR. AVENATTI:  Okay.

12:04  6            MR. SAGEL:  The only question we have is an

12:04  7  estimate on time.  We were told an hour and a half with this

12:04  8  witness.

12:04  9            MR. AVENATTI:  I expect to wrap up in the next 30

12:04  10  minutes, Your Honor.

12:05  11            THE COURT:  Given that it's apparent that we're

12:05  12  not going to be instructing and arguing on Friday, I'm not

12:05  13  wedded to getting together for a first pass on the jury

12:05  14  instructions.  If it's convenient, we can do that, or you

12:05  15  might want to defer that.  So just let me know before the

12:05  16  mid-afternoon break what you want to do.

12:05  17            MR. AVENATTI:  The defense would ask to defer if

12:05  18  that's acceptable to Your Honor.

12:05  19            THE COURT:  That's fine.

12:05  20            MR. AVENATTI:  Thank you.

12:05  21            MR. SAGEL:  I don't know what Your Honor's

12:05  22  preference is.  I have taken note of every time defendant

12:05  23  has opened the door to outside of this case --

12:05  24            THE COURT:  Sir, ask your question.

12:05  25            MR. SAGEL:  I just wanted to get that permission,

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

93

12:05  1    that I didn't need to have a sidebar before I do it.

12:05  2             THE COURT:  If I think we need a sidebar as we go

12:05  3    along, I will sua sponte direct one.

12:05  4             MR. SAGEL:  I appreciate that, Your Honor.  I just

12:05  5    didn't want to ask before Your Honor's permission.

12:06  6             MR. AVENATTI:  Again, my preference would be if

12:06  7    this is going to be an issue, that it be handled prior to

12:06  8    the question being asked, because I don't think that I have

12:06  9    opened the door, Your Honor.

12:06  10            Now, maybe I will be convinced otherwise, but I

12:06  11   don't know that I have opened the door, and I certainly

12:06  12   don't want the jury tainted with other charges that are not

12:06  13   in the case especially because of how prejudicial they might

12:06  14   be under 403.

12:06  15            THE COURT:  We're in recess.

12:06  16                  (Recess taken at 12:06 p.m.)

12:06  17                      *    *    *

12:06  18

12:06  19

12:06  20

12:06  21

12:06  22

12:06  23

12:06  24

12:06  25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

94

```
12:06   1
12:06   2
12:06   3
12:06   4                         CERTIFICATE
12:06   5
12:06   6        I hereby certify that pursuant to Section 753,
12:06   7   Title 28, United States Code, the foregoing is a true and
12:06   8   correct transcript of the stenographically reported
12:06   9   proceedings held in the above-entitled matter and that the
12:06  10   transcript page format is in conformance with the
12:06  11   regulations of the Judicial Conference of the United States.
12:06  12
12:06  13   Date:  August 18, 2021
12:06  14
12:06  15
12:06                         /s/   Sharon A. Seffens  8/18/21
12:06  16                     _____
12:06                         SHARON A. SEFFENS, U.S. COURT REPORTER
12:06  17
       18
       19
       20
       21
       22
       23
       24
       25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**MR. AVENATTI: [80]** 4/9 4/19 4/23 5/5 5/9 5/13 5/20 5/23 7/10 8/7 8/12 9/2 9/18 10/10 13/12 14/13 14/17 15/2 15/9 15/11 15/14 16/22 16/24 17/1 17/12 17/15 18/4 18/13 34/24 40/17 40/19 42/13 42/15 43/5 44/13 44/15 45/6 45/23 46/20 48/4 48/6 49/8 50/14 51/1 51/5 56/19 57/13 57/22 58/2 61/10 64/14 65/10 71/14 73/9 74/2 77/3 77/6 77/24 80/14 83/22 84/13 84/16 89/25 90/3 90/21 91/11 91/15 92/1 92/5 92/9 92/17 92/20 93/6
**MR. SAGEL: [33]** 4/5 6/10 6/12 15/22 16/8 16/12 16/15 17/25 22/19 23/5 25/18 25/23 34/20 41/23 44/10 54/7 60/11 64/20 66/6 69/2 69/9 70/16 74/22 76/11 76/25 83/24 86/12 87/5 87/12 92/6 92/21 92/25 93/4
**MR. WYMAN: [3]** 12/3 12/13 13/1
**THE CLERK: [4]** 4/3 17/23 18/16 18/20
**THE COURT: [108]**
**THE WITNESS: [16]** 18/18 23/8 27/25 30/13 40/22 42/1 44/12 44/19 48/9 60/14 66/9 69/4 70/19 84/20 87/8 87/15

**'**

**'19 [1]** 19/12

**/**

**/s [1]** 94/15

**0**

**0870 [1]** 1/21

**1**

**1-1053 [1]** 1/20
**10 [5]** 21/5 21/8 21/12 21/22 59/3
**1053 [1]** 1/20
**107 [1]** 2/16
**1084 [4]** 34/16 35/7 43/21 43/22
**1085 [1]** 32/25
**10:29 [1]** 53/2
**10:48 [1]** 53/3
**1100 [1]** 2/7
**12 [1]** 67/19
**12:06 [1]** 93/16
**14 [1]** 33/1
**14th [3]** 49/1 61/4 61/15
**15 [8]** 21/5 21/8 21/12 21/22 29/14 52/21 59/3 60/22
**15-minute [1]** 54/7
**16 [2]** 45/19 91/16
**17 [1]** 45/19
**18 [3]** 3/10 4/1 94/13
**19 [1]** 1/17
**1983 [1]** 88/4
**19th [7]** 32/2 32/9 33/2 34/5 35/9 45/17 46/2
**1:30 [2]** 35/16 87/20
**1st [11]** 51/11 53/9 53/25 54/5 54/5 54/14 55/2 55/8 56/5 56/9 57/21

**2**

**20 [1]** 29/14
**20-plus-year [1]** 50/7
**2018 [16]** 19/12 51/11 53/9 54/14 55/2 56/5 56/9 56/10 57/21 78/10 78/12 78/21 79/8 80/8 80/17 85/4
**2019 [32]** 20/2 32/2 32/10 33/2 33/15 34/5 35/16 37/6 37/10 41/3 42/24 45/2 45/17 46/3 58/7 58/16 61/4 61/15 64/17 65/13 66/14 66/24 67/9 67/22 68/12 70/23 71/4 71/8 71/12 71/19 72/6 72/6
**2020 [4]** 65/13 67/22 68/5 68/12
**2021 [7]** 1/17 4/1 49/1 56/8 68/7 68/13 94/13
**21 [1]** 94/15
**213 [1]** 2/8
**22 [2]** 1/12 77/6
**25 [4]** 33/15 37/6 37/10 81/24
**25-plus [1]** 81/17
**25th [18]** 20/14 20/20 21/3 21/21 22/16 31/3

35/16 36/6 41/3 42/24 43/22 45/2 59/23 61/7 61/8 67/9 77/20 85/6
**25tj [1]** 39/8
**26 [5]** 19/7 19/11 58/16 81/10 81/12
**26.2 [9]** 9/19 9/22 10/22 13/18 14/4 14/22 92/1 91/13 91/22
**26th [1]** 61/3
**28 [1]** 94/7
**281 [4]** 50/14 50/24 51/9 53/9
**28th [1]** 54/11
**29 [3]** 4/12 5/3 5/8
**29th [1]** 54/14
**2nd [1]** 54/14

**3**

**30 [1]** 92/9
**30th [1]** 54/13
**312 [1]** 2/7
**338-3598 [1]** 2/12
**3598 [1]** 2/12
**396 [1]** 10/3
**396-page [1]** 15/7
**3:08 p.m [1]** 51/12

**4**

**40-minute [1]** 39/19
**403 [8]** 6/15 22/19 25/18 25/23 66/7 69/2 70/16 93/14
**405 [1]** 77/6
**411 [2]** 1/20 2/11
**420 [1]** 89/5
**425 [1]** 89/11
**43 [3]** 90/4 90/5 90/18
**431 [1]** 89/11
**433 [1]** 89/11
**440 [1]** 89/12
**442 [1]** 89/12
**445 [1]** 89/12
**447 [1]** 89/12
**450 [1]** 89/6
**456 [1]** 89/6
**48 [1]** 12/7
**481-4900 [1]** 2/17
**4900 [1]** 2/17
**4th [1]** 1/20

**5**

**543-0870 [1]** 1/21
**561 [1]** 88/4
**5:42 p.m [1]** 32/14

**6**

**611 [1]** 6/25
**6683 [1]** 2/8
**690 [1]** 10/6
**6:00 p.m [2]** 5/3 5/7

**7**

**714 [2]** 1/21 2/12
**717 [1]** 4/13
**720 [1]** 9/9
**726 [1]** 4/14
**727 [2]** 4/15 88/2
**753 [1]** 94/6
**797-800 [1]** 88/4

**8**

**8/18/21 [1]** 94/15
**800 [1]** 88/4
**8000 [1]** 2/11
**894-6683 [1]** 2/17
**8:00 [1]** 9/4
**8:28 [1]** 4/1
**8:30 [1]** 9/3
**8:49 [1]** 17/20

**9**

**90012 [1]** 2/8
**92672 [1]** 2/16

**92701 [2]** 1/20 2/11
**93311 [1]** 1/25
**9:05 a.m [1]** 32/14
**9:18 [1]** 17/21

**A**

**a.m [6]** 4/1 17/20 17/21 32/14 53/2 53/3
**ability [1]** 7/22
**able [2]** 8/17 91/11
**about [80]** 5/10 7/5 7/20 7/21 8/14 8/19 11/5 12/7 13/13 15/3 16/9 17/5 19/15 23/13 23/19 23/19 26/4 28/13 29/11 31/18 31/20 31/23 32/3 32/14 33/3 35/12 36/10 36/22 37/11 38/11 38/14 39/4 39/16 40/8 40/13 40/25 41/2 41/5 42/9 43/17 44/4 44/7 45/11 48/12 49/1 50/8 50/22 51/8 51/24 53/8 56/9 58/18 61/8 61/16 62/16 62/16 62/21 63/11 64/7 64/18 64/25 66/20 67/8 68/14 70/14 72/5 74/19 74/25 78/8 78/16 78/18 78/22 81/2 82/3 84/13 85/8 85/13 86/4 90/11 90/17
**above [2]** 33/21 94/9
**above-entitled [1]** 94/9
**absolutely [3]** 16/12 22/4 54/25
**acceptable [2]** 52/16 92/18
**access [8]** 59/25 60/3 60/9 67/2 88/2 88/5 88/17 90/8
**accessible [1]** 38/12
**accident [2]** 27/16 75/9
**accordance [1]** 39/1
**according [3]** 40/1 49/10 65/5
**accounting [3]** 38/15 39/5 45/3
**accurate [4]** 4/25 10/8 53/16 81/11
**acquire [2]** 43/10 44/21
**Act [3]** 9/19 9/22 91/2
**action [1]** 11/25
**actual [1]** 83/15
**actually [5]** 10/18 27/16 41/4 44/7 59/11
**add [1]** 17/13
**addition [2]** 21/9 90/21
**additional [1]** 9/5
**addressed [2]** 7/6 15/17
**adequate [1]** 36/24
**admissible [2]** 6/15 89/16
**admonition [2]** 52/22 87/20
**advance [1]** 8/24
**advise [2]** 50/1 83/18
**ADVISORY [1]** 2/15
**afford [1]** 7/8
**afraid [1]** 44/23
**after [31]** 12/6 15/18 31/2 33/15 33/17 35/12 35/25 40/11 40/24 44/4 45/6 46/2 47/20 54/5 54/17 56/20 58/2 58/3 58/16 60/16 63/15 63/20 66/25 69/25 70/3 79/7 79/21 83/22 85/3 85/16 86/16
**afternoon [1]** 92/16
**again [5]** 30/8 34/5 38/5 60/24 93/6
**agent [46]** 4/7 15/24 18/2 18/14 18/24 19/9 23/20 24/1 27/11 31/14 31/6 31/7 31/17 32/10 32/12 32/13 33/13 33/22 35/6 35/14 35/21 35/22 36/18 40/9 43/8 44/21 46/2 49/5 49/13 49/21 50/7 50/17 51/4 53/7 57/6 58/25 60/17 61/14 65/13 73/3 73/18 73/20 75/10 75/14 75/21 77/10
**agents [11]** 47/23 48/1 50/3 52/4 55/14 58/19 59/3 59/16 59/20 60/22 76/2
**ago [9]** 12/7 13/23 17/3 32/2 32/5 32/18 34/8 34/9 49/1
**agree [1]** 6/12
**agreed [1]** 27/16
**Ahmed [1]** 87/2
**ALEXANDER [3]** 2/5 4/6 18/1
**all [27]** 8/4 9/25 11/2 11/19 23/9 31/14 36/17 42/11 42/20 42/21 42/24 47/8 54/14 58/6 59/15 60/5 60/25 65/5 67/21 77/19 77/19 83/16 88/10 88/20 88/22 89/20 91/24
**allow [2]** 6/5 88/5
**allowing [1]** 89/3
**almost [3]** 32/2 32/17 88/22
**along [2]** 76/6 93/3

## A

**already** [6]  8/21 56/11 65/9 65/15 91/4 91/8
**also** [7]  4/7 4/14 24/7 26/22 62/11 88/6 89/13
**am** [12]  6/13 7/20 17/11 19/2 24/15 27/12 30/22 61/19 66/4 90/13 91/12 91/15
**ambiguous** [1]  80/13
**Amendment** [4]  7/13 90/4 90/5 90/19
**Amenta** [9]  9/8 9/16 10/24 11/7 12/20 12/21 12/24 13/3 13/4
**Amenta's** [1]  9/10
**AMERICA** [1]  1/9 4/4 17/24
**among** [1]  30/21
**ample** [2]  7/14 7/15
**Ana** [4]  1/16 1/20 2/11 4/1
**analysis** [1]  11/8
**Andre** [8]  35/15 35/22 36/18 38/20 75/20 77/16 84/11 84/25
**Andrew** [2]  69/1 77/12
**Angeles** [3]  2/8 23/12 72/12
**another** [11]  24/1 25/13 38/11 51/21 58/25 72/19 76/5 76/9 76/17 80/23 87/2
**answer** [10]  11/12 37/11 41/11 42/6 47/6 53/15 54/15 57/14 65/22 90/25
**answered** [4]  11/14 41/24 64/20 66/7
**anticipate** [2]  5/5 5/25
**anticipation** [1]  16/9
**any** [67]  6/7 7/11 7/25 10/4 11/10 13/8 16/19 16/20 19/17 19/21 20/21 25/16 26/4 28/18 29/10 29/19 29/20 30/2 37/11 37/18 39/15 40/4 41/3 43/8 43/9 43/13 46/3 46/17 47/9 47/21 50/2 52/23 52/24 54/21 55/12 55/13 57/2 59/14 59/25 64/4 66/15 68/1 70/1 71/2 71/10 71/18 71/25 72/14 75/7 75/16 77/18 77/23 78/2 79/10 79/15 79/2 79/23 81/18 84/7 85/17 87/21 87/23 88/18 89/9 89/22 90/6 90/15
**anybody** [1]  19/18
**anyone** [27]  21/11 23/25 24/4 24/5 27/10 33/6 34/10 38/24 40/14 40/25 41/12 41/19 44/7 46/7 52/23 54/20 55/16 59/14 61/21 66/11 73/5 75/19 79/10 79/13 84/8 85/16 87/21
**anything** [15]  12/9 15/21 16/4 19/24 37/15 39/12 39/15 54/18 57/25 59/11 64/8 84/12 85/11 86/17 90/9
**Anytime** [1]  13/13
**apparent** [1]  92/11
**appear** [1]  20/19
**appearance** [1]  83/12
**APPEARANCES** [1]  2/1
**appeared** [1]  27/11
**appearing** [1]  20/6
**appears** [1]  33/20
**applicability** [1]  91/2
**appreciate** [2]  5/9 93/4
**appreciating** [1]  89/9
**appreciation** [1]  89/2
**approach** [5]  32/21 34/13 49/8 61/10 77/3
**appropriate** [8]  6/16 7/8 8/19 9/1 9/13 12/17 89/24 90/12
**approximately** [9]  19/7 19/11 24/23 26/24 27/1 27/2 27/3 35/16 63/12
**April** [3]  54/11 54/12 54/13
**April 28th** [1]  54/11
**April 29th** [1]  54/12
**April 30th** [1]  54/13
**Arden** [3]  86/20 86/21 86/23
**are** [44]  4/25 5/4 8/3 9/24 9/25 10/21 11/14 12/16 16/13 17/4 19/1 19/3 34/24 36/6 41/12 49/21 49/22 50/4 50/7 50/9 54/20 55/7 55/10 55/16 57/7 70/10 70/13 70/22 70/22 70/24 70/25 71/7 71/17 72/17 75/22 75/22 77/19 89/6 89/10 89/10 89/11 89/16 91/21 93/12
**arguing** [1]  92/12
**argument** [1]  8/18
**Argumentative** [3]  41/23 44/10 74/22
**arguments** [1]  88/22
**around** [6]  26/18 26/19 47/15 56/4 57/20 62/19
**arrest** [1]  73/8

**arrived** [1]  24/21
**article** [1]  70/4
**as** [70]  4/16 6/3 6/23 8/8 8/8 9/24 11/7 11/21 12/20 13/13 13/15 13/25 14/9 17/17 20/18 22/3 22/4 23/5 26/3 27/7 29/2 29/2 30/19 35/7 37/6 37/18 39/25 40/11 40/13 41/14 42/3 43/13 45/6 49/13 49/21 51/18 51/18 52/8 52/8 55/1 55/20 56/9 56/19 57/14 60/6 62/6 62/6 62/17 62/17 63/24 64/7 64/11 65/23 70/11 71/5 76/11 76/20 83/5 83/5 83/23 87/3 87/11 93/2
**ASAP** [1]  51/19
**ask** [22]  6/13 6/14 10/4 16/16 26/4 27/7 30/8 36/9 36/22 38/5 41/12 48/1 57/11 66/5 72/5 75/13 77/17 87/8 90/24 92/17 92/24 93/5
**asked** [22]  11/17 26/3 32/18 38/14 39/4 41/24 50/22 51/8 51/17 51/24 51/25 53/12 56/8 64/7 64/22 66/6 66/8 84/13 86/20 86/20 87/2 93/8
**asking** [11]  23/19 23/19 35/17 38/17 51/21 53/7 66/4 71/5 72/15 72/18 77/11
**asks** [1]  16/2
**assembled** [1]  15/13
**asserted** [1]  35/1
**assimilate** [1]  15/13
**assist** [2]  82/13 89/8
**assistance** [1]  91/9
**Assistant** [3]  2/4 2/6 2/10
**Assumes** [1]  60/11
**asterisk** [1]  62/15
**asterisks** [1]  62/19
**attempt** [4]  10/2 22/24 23/22 24/6 75/24 76/2 82/11
**attention** [3]  32/25 34/18 88/3
**attorney** [11]  2/3 2/4 2/6 2/10 37/23 38/7 49/5 76/6 76/9 76/17 87/2
**Attorney's** [8]  23/2 23/6 23/12 78/8 78/11 80/1 80/10 80/18
**audience** [1]  75/10
**August** [3]  1/17 4/1 94/13
**AUSA** [10]  33/2 35/22 35/22 36/18 36/18 37/22 49/5 49/5 51/7 53/19
**AUSAs** [2]  13/15 35/15
**authority** [1]  88/7
**availability** [1]  89/3
**available** [3]  12/19 12/23 88/14
**AVENATTI** [32]  1/11 2/14 4/4 4/10 4/14 5/14 7/4 9/12 12/11 16/2 16/19 17/24 18/5 18/11 18/21 23/14 32/19 33/7 34/23 35/10 35/18 35/24 36/11 37/12 45/4 46/4 46/25 47/16 53/5 56/15 59/5 87/25
**Avenatti's** [1]  9/9
**Avenida** [1]  2/16
**averred** [1]  89/13
**avoid** [3]  83/9 83/12 83/17
**aware** [34]  20/13 20/17 21/15 21/23 23/12 37/6 40/1 41/12 46/5 46/7 49/21 54/20 55/7 55/10 55/16 68/2 68/17 70/10 70/13 70/22 70/24 71/1 71/7 71/10 71/18 72/17 72/21 72/22 75/22 77/19 80/17 80/21 84/20 84/22
**away** [1]  55/24

## B

**back** [11]  8/13 9/17 27/22 30/9 40/19 42/15 44/15 48/6 56/10 66/24 84/16
**Bad** [1]  57/9
**Ball** [9]  24/3 26/4 26/22 27/11 28/15 29/3 29/21 29/24 59/4
**Ball's** [2]  29/19 30/3
**bank** [2]  13/7 51/17
**Barela** [4]  86/3 86/16 87/4 87/11
**based** [3]  16/9 63/15 63/18
**basic** [1]  82/16
**basically** [2]  6/14 13/20
**basis** [1]  90/11
**be** [73]  4/18 5/7 6/1 6/4 6/15 6/20 7/4 7/5 7/14 8/17 9/17 11/21 13/4 14/5 15/8 15/17 16/6 17/19 18/6 20/24 21/15 21/19 21/24 23/13 25/6 27/21 28/5 28/6 31/11 31/23 40/18 42/14

43/2 44/14 45/8 45/24 47/25 48/5 49/23 52/21 53/16 59/3 62/24 62/25 64/1 65/4 68/1 70/15 70/16 70/16 78/6 82/7 83/7 84/15 87/13 87/19 88/7 88/14 89/3 89/17 89/21 90/25 90/25 91/5 91/8 91/8 91/11 91/16 92/12 93/6 93/7 93/7 93/10 93/14
**Beach** [1]  8/14
**because** [34]  5/25 7/11 10/19 11/18 12/8 12/15 13/21 14/14 15/17 25/7 28/3 29/16 33/23 35/14 36/3 44/22 45/22 50/7 53/18 55/22 56/18 56/24 57/1 57/7 60/3 60/24 61/22 69/7 70/5 81/2 81/6 82/20 93/8 93/13
**been** [36]  9/3 9/13 10/7 10/12 11/6 12/5 13/25 14/1 16/21 17/9 17/10 17/15 19/5 23/2 24/11 24/14 24/16 25/6 33/12 35/6 48/15 50/23 58/18 59/1 61/7 67/7 70/19 71/10 71/24 73/8 73/22 74/5 75/16 78/4 81/10 89/15
**before** [42]  7/10 7/17 8/18 11/3 11/11 14/1 14/2 14/5 20/6 20/14 21/21 27/17 28/14 28/25 29/8 31/20 31/22 45/1 53/7 53/15 54/22 58/5 61/7 62/23 63/16 70/22 70/23 71/7 72/5 72/17 73/1 74/20 75/1 77/12 77/16 78/18 86/9 89/21 92/15 93/1 93/5
**began** [1]  11/3 11/11 14/1
**beginning** [2]  18/21 50/2
**begins** [1]  14/5
**behalf** [3]  4/6 18/1 73/2
**behind** [5]  58/19 59/17 60/4 60/22
**being** [10]  23/8 29/20 40/11 59/24 79/4 79/23 82/19 86/4 90/14 93/8
**believe** [47]  4/24 4/25 7/7 9/12 9/14 13/8 25/2 28/19 31/7 32/20 33/8 34/8 39/21 45/12 52/2 52/3 54/2 54/6 55/3 58/5 58/12 60/2 61/22 61/23 63/10 63/19 66/17 66/21 68/17 69/20 71/4 72/7 72/13 73/3 73/14 75/6 75/20 75/21 75/25 78/23 79/6 79/20 82/23 84/24 86/11 89/8 90/12
**believed** [1]  45/2
**believes** [1]  91/4
**benefit** [2]  6/2 11/2
**best** [10]  24/12 31/15 33/5 34/10 34/12 34/21 48/19 59/14 66/19 78/14
**between** [2]  41/3 59/19
**beyond** [4]  10/2 63/24 64/7 91/22
**big** [2]  50/12 81/3
**billing** [2]  38/14 39/5
**binder** [2]  50/18 77/7
**bit** [3]  5/18 12/7 52/18
**blow** [2]  51/1 57/8
**both** [1]  8/11
**bottom** [2]  51/2 53/9
**box** [7]  58/22 59/1 59/4 59/16 59/19 60/21 62/23
**boxes** [16]  59/25 62/1 62/3 62/13 62/16 62/18 62/25 63/3 63/5 63/17 63/22 64/1 64/8 64/12 64/19 64/25
**Brady** [7]  13/18 13/21 13/25 14/23 17/2 91/16 92/2
**BRANDON** [1]  2/4
**break** [7]  52/17 52/21 53/7 54/8 58/5 87/17 92/16
**BRETT** [7]  2/9 4/5 17/25 33/2 35/15 35/22 36/18
**brief** [3]  5/7 19/20 88/1
**briefing** [2]  5/10 91/1
**briefly** [4]  4/19 9/18 12/3 15/22
**Broadcom** [1]  80/24
**broke** [1]  53/15
**bubble** [2]  89/7 89/11
**building** [3]  2/10 69/24 80/23
**Bundy** [1]  91/17
**burn** [1]  62/9
**burning** [2]  62/12 62/17
**business** [1]  58/23
**businesses** [1]  42/22
**busy** [1]  23/9

## C

**CA** [4]  1/20 2/8 2/11 2/16

## C

**Cal [1]** 88/4
**calculation [1]** 65/23
**calendar [1]** 72/7
**CALIFORNIA [6]** 1/5 1/16 4/1 52/6 55/2 56/15
**call [30]** 8/13 9/16 16/20 18/11 36/4 36/7 36/9 36/22 38/17 39/19 40/12 40/24 41/9 44/4 60/16 61/4 61/9 61/15 61/21 61/25 63/16 63/21 86/4 86/25 87/1 87/3 87/10 87/15 87/16 89/6
**called [8]** 7/4 34/21 35/15 36/7 37/25 59/21 61/24 74/7
**calling [1]** 58/25
**calls [4]** 18/14 70/16 86/12 87/5
**came [6]** 22/3 24/25 46/25 47/2 47/5 47/9
**camera [10]** 5/24 6/18 6/19 7/8 7/16 12/7 12/12 15/7 16/21 90/12
**can [30]** 7/5 7/6 8/4 9/4 12/21 14/6 14/24 15/21 16/22 27/22 30/8 30/9 31/8 32/21 33/20 34/13 38/5 40/19 42/15 44/15 48/6 49/8 49/23 50/17 51/1 51/4 61/10 77/3 90/21 92/14
**can't [1]** 54/15
**cannot [3]** 7/5 7/6 28/10
**Carter's [1]** 5/15
**case [38]** 4/23 5/4 5/19 6/5 7/11 9/23 10/12 11/5 11/8 11/15 11/25 12/16 13/14 16/4 48/12 52/23 52/24 61/16 62/6 65/8 66/13 66/16 66/17 69/7 71/21 80/24 83/8 87/21 87/22 88/5 88/6 88/11 90/9 91/18 91/18 91/19 92/23 93/13
**cases [2]** 4/25 68/24
**caught [1]** 80/22
**CD [1]** 88/4
**Cefali [2]** 4/10 18/6
**cell [5]** 54/3 54/10 55/5 67/10 67/12
**CENTRAL [1]** 1/5
**certainly [6]** 14/1 15/11 15/14 90/17 91/17 93/11
**CERTIFICATE [1]** 94/4
**CERTIFIED [1]** 1/9
**chair [3]** 26/12 26/13 26/16
**chairs [1]** 26/20
**charges [2]** 89/10 93/12
**chart [1]** 13/20
**charts [2]** 89/7 89/11
**check [3]** 54/18 56/15 66/25
**chief [4]** 2/5 5/4 6/5 7/11
**CID [1]** 73/20
**Circuit [3]** 91/17 91/18 91/19
**circumstances [3]** 76/21 80/4 80/9
**cite [1]** 91/7
**cited [3]** 4/23 4/24 5/1
**city [8]** 53/25 54/12 54/13 54/13 54/14 55/8 56/11 63/9
**claim [4]** 13/2 71/2 71/10 71/18
**claiming [2]** 10/13 55/24
**claims [1]** 86/4
**clarified [1]** 80/12
**clarify [1]** 71/6
**clear [4]** 12/17 15/25 36/6 73/15
**clearing [2]** 25/8 25/9
**clearly [1]** 11/18
**Clemente [2]** 2/16
**Clerk's [2]** 89/23 90/9
**client [8]** 32/19 35/11 35/18 35/23 37/3 38/14 39/4 39/5
**clients [3]** 42/10 65/20 65/24
**close [2]** 62/4 70/15
**closest [1]** 70/11
**Coast [1]** 56/6
**Code [1]** 94/7
**colleague [1]** 38/20
**colleagues [3]** 69/15 72/20 74/8
**come [4]** 7/6 8/2 8/24 16/16
**coming [2]** 16/1 84/12
**comment [1]** 91/5
**committed [1]** 65/7
**committing [1]** 80/22

**common [2]** 27/19 50/1
**communicate [1]** 63/9
**communicated [2]** 48/11 48/13
**communicating [1]** 68/14
**communications [4]** 43/24 44/1 68/19 90/6
**companies [1]** 62/5
**company [2]** 54/4 54/10
**compiling [1]** 46/11
**complained [1]** 11/5
**complete [5]** 22/3 47/21 47/22 48/2 74/21
**completed [1]** 28/25
**completely [1]** 88/21
**complies [1]** 38/5
**computer [9]** 31/4 31/12 46/18 47/2 47/16 52/5 53/20 55/19 55/25
**concern [3]** 22/17 22/22 22/25
**concerned [1]** 7/20
**conclusion [1]** 39/25
**concurred [1]** 33/25
**conduct [1]** 7/1
**conducted [1]** 26/7
**conducting [1]** 76/8
**conference [5]** 23/1 23/9 23/13 40/12 94/11
**confirm [1]** 40/14
**conflict [6]** 81/19 82/6 82/10 83/9 83/12 83/15
**conformance [1]** 94/10
**connection [8]** 21/16 24/6 44/8 46/11 65/7 65/15 75/23 80/23
**consequences [1]** 50/4
**contact [12]** 72/1 77/15 77/18 77/23 78/7 78/11 78/21 78/25 79/10 79/21 85/17 89/22
**contacted [3]** 58/18 58/21 60/17
**contacts [5]** 77/19 78/2 78/4 85/23 85/24
**contain [2]** 89/14 89/17
**contained [4]** 63/25 64/11 64/25 88/23
**contemporaneously [1]** 90/11
**contentions [1]** 89/10
**contribute [1]** 88/19
**control [1]** 13/8
**controlling [2]** 88/7 88/8
**convenient [2]** 91/7 92/14
**conversed [1]** 64/24
**conversing [3]** 43/16 44/6 45/10
**convinced [1]** 19/3
**copy [3]** 30/18 43/3 68/1
**correct [33]** 5/12 20/4 20/5 21/6 22/12 24/15 24/20 27/9 30/23 33/11 34/6 34/11 36/19 39/20 40/2 43/22 51/12 58/14 61/1 61/20 63/13 67/10 69/17 72/9 72/22 74/5 76/22 77/2 78/12 81/16 83/20 86/8 94/8
**corrected [1]** 13/20
**corrections [2]** 29/24 30/2
**correctly [2]** 51/19 60/18
**correspondence [1]** 62/4
**couch [3]** 26/12 26/13 26/16
**could [7]** 28/5 54/8 59/12 63/21 65/6 78/6 89/14
**counsel [4]** 2/1 2/15 4/7 18/2
**counts [2]** 4/17 65/8
**County [1]** 22/11
**couple [4]** 26/20 62/23 72/5 91/19
**course [2]** 12/13 68/13 82/19
**court [28]** 1/4 6/2 6/3 6/14 7/14 7/17 8/3 9/6 12/15 13/15 17/6 17/16 31/8 88/5 88/6 88/11 88/15 88/16 88/17 88/20 88/25 89/13 89/18 89/18 90/7 90/10 90/14 94/16
**Court's [2]** 34/17 89/24
**courthouse [1]** 1/19 2/7 63/11
**courtroom [1]** 7/2
**covered [1]** 91/5
**crazy [1]** 55/21
**created [1]** 35/19
**crime [1]** 65/7
**crimes [1]** 16/5
**criminal [3]** 2/5 32/12 44/8 50/9 69/7 72/2 81/6 81/13 83/4 88/6 88/19 89/2 90/5
**criminally [1]** 65/7
**critical [3]** 6/6 7/12 7/23
**criticism [1]** 88/21

**cross [10]** 3/4 3/9 9/14 11/3 11/12 12/19 14/5
**cross-examination [5]** 9/14 11/3 11/12 12/19 14/5
**cross-examine [3]** 12/22 14/7 14/25
**Cummings [2]** 4/10 18/6
**Cummings-Cefali [1]** 4/10
**current [3]** 19/8 47/11 47/22
**curtailed [1]** 7/20
**custody [1]** 13/7
**custom [1]** 67/15
**cuts [1]** 8/10

## D

**D.C [2]** 54/11 54/12
**data [31]** 17/2 17/9 39/16 40/1 40/13 40/15 40/16 40/25 41/5 41/14 42/9 42/11 43/11 44/8 44/22 45/3 46/16 47/20 47/22 48/2 54/3 54/10 66/2 66/5 90/22 91/3 91/7 91/12 91/15 91/22 91/25
**date [9]** 32/5 32/6 34/9 37/6 48/2 49/3 78/8 78/9 94/13
**dated [1]** 51/11
**day [23]** 1/12 8/24 22/9 23/9 23/9 23/16 23/21 24/22 25/2 31/15 36/9 36/14 37/23 38/6 58/16 60/16 61/18 64/5 67/13 75/10 81/5 81/8 89/21
**days [7]** 6/6 54/4 54/5 72/5 72/17 73/1 77/12
**deadline [1]** 12/11
**deal [4]** 8/5 8/25 50/12 81/3
**DEAN [3]** 2/15 2/15 18/5
**debriefed [1]** 85/8
**decided [2]** 77/16 84/11
**decision [2]** 36/15 36/17
**defendant [7]** 1/12 2/13 12/5 13/6 28/10 91/4 92/22
**defendant's [1]** 88/1
**defense [10]** 3/9 3/11 7/13 7/23 12/8 17/12 18/14 18/15 34/16 92/17
**defer [2]** 92/15 92/17
**define [3]** 13/15 69/13 69/14
**definition [2]** 13/17 89/15
**degree [1]** 88/18
**delivered [1]** 15/8
**DeLorean [6]** 88/4 88/6 88/10 88/15 88/16 89/13
**Denied [4]** 46/22 57/23 77/25 83/25
**deny [2]** 9/10 40/15
**Department [9]** 19/1 19/4 19/6 81/11 82/13 82/23 82/24 83/2 83/2
**deposition [1]** 70/4
**describe [1]** 81/12
**described [2]** 82/22
**desires [1]** 12/19
**desktop [1]** 38/12
**despite [3]** 10/13 66/1 66/4
**details [1]** 20/21
**determinations [1]** 7/5
**determine [2]** 14/7 65/6
**devices [6]** 30/22 31/1 31/4 31/10 31/14 47/2
**did [118]**
**didn't [32]** 5/10 10/3 10/4 12/10 13/21 15/5 19/17 19/24 20/21 32/5 32/7 39/6 41/6 52/1 52/9 53/22 55/20 55/23 57/1 62/1 62/9 62/13 62/19 68/23 76/20 80/5 83/24 83/25 84/5 87/11 93/1 93/5
**different [3]** 7/1 75/15 90/16
**direct [8]** 3/4 3/9 16/7 16/11 18/22 89/20 91/1 93/3
**directing [2]** 32/25 34/17
**directs [1]** 16/13
**disagree [2]** 88/14 89/1
**disclose [1]** 9/21
**discovered [1]** 14/19
**discovers [1]** 83/3
**discretion [1]** 6/25
**discuss [3]** 52/22 87/20 91/24
**discussion [3]** 7/21 37/2 91/10
**discussions [3]** 19/17 19/20 43/9
**disgrace [1]** 80/18

## D

dismiss [1] 92/2
dismisses [1] 81/5
dispute [7] 10/2 22/6 22/14 33/14 33/18 40/4 75/7
distinction [1] 88/9
DISTRICT [2] 1/4 1/5
division [4] 1/6 2/5 32/11 81/15
do [105]
Docket [6] 4/13 4/14 4/15 9/9 10/6 88/2
document [13] 4/24 9/12 32/23 33/9 33/14 34/1 34/15 39/24 61/12 77/8 91/6 91/10 91/23
documents [20] 10/3 10/4 10/7 19/21 60/1 60/21 62/1 62/21 63/1 63/4 63/17 63/22 64/1 75/23 75/25 88/10 88/10 88/18 88/23 89/13
does [10] 6/7 12/2 33/1 36/13 40/8 40/10 61/14 77/10 81/8 81/9
doesn't [3] 13/2 81/7 90/9
doing [7] 7/7 41/19 50/4 55/16 65/2 68/16 75/4
don't [120]
done [1] 62/23
door [5] 16/2 21/22 92/23 93/9 93/11
down [3] 39/10 85/25 87/3
drafted [1] 55/24
drew [1] 88/3
drive [1] 47/15
dropped [2] 63/3 63/7
Drum [11] 11/7 11/22 11/22 12/4 12/20 12/25 15/3 17/18 46/10 46/25 89/5
due [4] 7/12 8/10 65/23 90/19
during [26] 8/2 14/19 24/24 25/7 26/22 32/7 32/17 33/16 37/2 38/17 39/8 39/19 39/22 47/3 48/12 51/24 54/4 61/25 66/13 68/12 68/20 68/22 71/13 71/17 85/8 88/2
duties [1] 68/14
duty [1] 31/13

## E

e-mail [31] 13/19 13/24 40/25 41/1 50/23 51/2 51/8 51/11 51/17 51/25 52/5 53/10 53/20 55/19 55/24 56/4 56/9 57/9 79/2 79/3 79/4 79/6 79/7 79/22 79/24 80/7 80/16 80/21 83/19 84/9 85/3
e-mails [12] 10/17 10/18 10/19 10/23 11/2 11/9 12/22 13/3 13/4 13/10 13/10 79/15
EA [4] 35/24 37/4 38/6 62/5
Eagan [12] 32/18 33/3 35/24 35/24 36/10 37/12 45/3 46/4 46/25 47/16 59/5
earlier [8] 9/5 35/12 35/14 39/2 71/4 74/7 83/21 87/25
early [5] 67/22 78/21 79/8 80/8 80/17
easiest [1] 50/18
East [1] 56/5
effort [4] 10/9 44/21 54/21 55/12
eight [1] 32/14
either [4] 7/18 38/20 62/8 83/5
electronic [5] 30/22 31/1 31/10 39/16 43/3
elevated [1] 84/10
eliminated [1] 7/22
else [16] 15/21 21/11 23/25 24/4 24/5 38/24 40/14 44/7 61/21 63/25 64/8 73/5 79/13 83/8 84/8 85/16
employed [3] 19/1 19/3 19/5
end [3] 25/2 28/14 68/13
enforcement [4] 20/18 21/23 22/7 82/11
engaged [1] 81/7
enhance [1] 88/18
enhanced [1] 89/3
enough [1] 14/24
ensure [2] 36/24 47/21
entities [2] 58/14 61/1
entitled [9] 13/23 13/24 15/15 17/2 17/8 17/16 88/1 90/17 94/9
entry [1] 25/7
environment [1] 28/4
error [2] 59/7 59/8
errors [2] 29/19 29/20
especially [6] 6/17 8/21 11/4 16/16 49/14

93/13
estimate [5] 12/16 46/3 67/18 68/18 84/14
Evan [2] 86/25 87/15
eve [1] 49/15
even [11] 9/5 10/2 10/3 10/4 14/1 45/1 56/15 56/16 83/12 83/15 83/17
ever [24] 17/1 30/6 31/18 31/20 40/25 43/8 44/6 46/7 55/12 56/1 59/9 59/14 63/20 64/24 65/2 66/5 66/11 69/21 69/25 71/10 71/24 71/25 72/14 81/18
every [4] 14/18 19/20 81/5 81/8 88/22 92/22
everything [4] 4/17 58/3 64/4 83/22
evidence [19] 7/6 8/20 50/15 50/23 52/11 53/13 53/21 53/24 54/18 55/4 55/5 55/6 55/13 58/6 60/5 60/9 60/12 65/9 77/1
evidentiary [1] 8/2
ex [1] 7/7 90/6 90/11
ex-parte [2] 90/6 90/11
exact [1] 78/9
exactly [1] 28/9
examination [9] 9/14 11/3 11/12 12/19 14/5 18/22
examine [3] 12/22 14/7 14/25
example [4] 8/9 8/13 57/9 57/10
except [1] 76/3
exception [1] 9/19
exchange [1] 50/23
exchanged [1] 66/15
exchanges [1] 66/25
exchanging [1] 66/18
exclude [1] 7/25
excuse [1] 55/24
execute [2] 21/1 60/5
executed [11] 20/3 58/17 59/24 63/8 67/9 70/23 72/18 73/4 74/20 75/1 78/19
exhibit [12] 32/25 35/7 35/12 35/25 36/2 43/21 50/14 50/24 51/9 53/9 89/22 89/23
Exhibit 1084 [2] 35/7 43/21
Exhibit 1085 [1] 32/25
Exhibit 281 [4] 50/14 50/24 51/9 53/9
exhibits [10] 3/7 3/12 88/2 88/13 89/4 89/5 89/5 89/11 89/16 89/17
existed [2] 42/10 60/6
existence [2] 40/15 55/7
expect [2] 5/18 92/9
expeditiously [1] 8/5
expenses [5] 32/19 35/11 35/23 42/9 65/19
experience [1] 81/8
explain [2] 7/23 33/20
explained [1] 37/2
explanation [2] 52/1 52/3
extent [1] 90/8
extraneous [1] 89/17

## F

F.Supp [1] 88/4
fact [20] 11/4 12/17 16/4 22/4 22/6 22/11 24/11 25/6 33/9 33/13 34/8 49/21 53/18 55/1 57/17 61/18 62/17 72/17 83/3 83/11
facts [4] 4/24 6/20 60/11 88/22
failure [1] 11/23
fair [3] 15/12 15/19 82/5
fans [1] 62/4
fantastical [1] 55/21
fashion [1] 8/1
fateful [1] 77/17
fault [1] 11/23
FBI [1] 73/18
Fed [1] 13/5
federal [18] 2/10 13/6 21/3 21/11 21/23 44/8 49/21 49/24 50/3 50/7 50/9 52/4 59/16 62/13 81/5 82/11 82/12 90/4
fee [1] 89/24
felony [1] 49/23
few [2] 6/6 48/15
figure [2] 86/17 86/19
file [12] 12/4 12/5 12/11 12/14 30/19 46/16 47/11 47/12 47/12 47/14 47/22 48/2
filed [8] 4/12 4/14 5/21 12/8 88/1 88/10 89/21

91/8
file [2] 95/18 95/23
FileSite [2] 37/25 38/9
filing [4] 10/6 12/7 15/7 15/20
filings [3] 88/6 89/18 89/18
final [1] 30/3
finalized [1] 29/8
finances [1] 62/5
financial [11] 36/23 37/3 37/12 42/20 42/21 58/6 58/13 59/4 60/25 65/6 65/14
find [15] 14/11 14/15 17/6 29/10 40/6 44/24 55/12 57/25 59/6 59/8 59/15 85/12 85/22 86/1 89/2
fine [7] 5/7 7/18 16/18 52/20 91/5 92/4 92/19
firearms [1] 25/21
fired [4] 70/24 71/3 71/7 73/22
firm [13] 35/10 38/12 39/6 42/22 58/13 58/23 61/1 65/19 71/11 76/18 76/21 79/8 87/3
first [16] 15/23 18/17 31/17 33/5 34/9 35/9 78/7 78/9 78/11 78/12 78/21 85/3 86/6 92/13
five [4] 10/6 48/23 49/23 81/13
flee [2] 22/17 22/24
focuses [1] 9/13
follow [1] 63/20
follows [1] 13/13
footage [1] 55/7
foregoing [1] 94/7
forensic [10] 31/4 31/11 37/8 41/14 46/18 47/10 47/23 48/1 68/1 68/10
forensically [1] 31/15
forensics [1] 31/12
form [5] 9/20 43/2 52/23 87/21 92/1
format [1] 94/10
former [6] 35/22 38/20 69/4 69/6 75/20 76/3
forth [2] 11/24 16/6
forward [1] 6/24
found [8] 25/22 28/3 47/17 47/18 59/8 64/13 89/11 89/17
foundation [2] 22/19 35/2 76/11
Fourth [1] 2/11
FOX [1] 2/4
fraud [1] 70/24
Frauds [1] 2/6
free [1] 8/3
Friday [9] 5/6 5/19 72/10 72/11 73/1 74/20 74/25 77/17 92/12
friend [6] 69/12 69/13 69/14 69/18 70/15 82/13
friends [1] 70/11
front [5] 1/15 21/22 35/7 72/7 86/7
full [1] 58/22
fundamental [2] 10/12 10/13
funds [1] 89/7
further [5] 12/19 17/13 79/21 85/17 90/6
Furthermore [1] 14/3

## G

gallery [1] 72/20
gather [1] 60/5
gave [3] 52/3 58/10 67/16
general [2] 49/13 88/12
generally [9] 20/13 36/15 36/16 37/3 53/10 68/13 82/3 82/10 83/5
gentlemen [3] 18/9 52/18 87/19
get [10] 6/3 9/4 11/22 17/1 44/7 51/18 67/4 67/5 80/12 92/25
gets [1] 8/18
Giglio [5] 13/18 13/22 13/25 14/23 91/17
give [6] 6/14 8/8 8/12 15/12 23/17 67/12
given [6] 14/2 31/10 60/3 75/17 90/14 92/11
go [8] 5/19 6/24 10/24 59/1 60/20 75/15 90/9 93/2
goes [2] 90/10 91/22
going [34] 4/16 5/19 7/4 7/8 8/23 8/24 9/10 11/21 12/12 14/14 14/7 14/13 15/16 15/18 17/1 17/5 17/5 17/7 17/12 20/13 20/14 20/24 21/15 21/24 23/13 27/18 28/3 28/13 57/7 57/13 62/8 90/23 92/12 93/7

**G**

**gone [3]** 25/11 55/19 87/3
**good [15]** 4/5 4/8 4/9 4/11 17/25 18/3 18/4 18/8 18/9 18/10 18/24 18/25 52/15 57/10 91/20
**got [15]** 4/20 9/4 27/17 40/24 44/4 46/14 59/16 60/16 67/25 67/25 68/5 80/7 80/16 80/21 80/22
**government [37]** 4/12 6/7 8/4 9/9 9/21 10/1 10/6 10/8 10/25 12/2 13/15 13/17 13/24 15/7 15/13 21/3 21/11 26/2 27/5 31/23 37/7 46/15 50/24 54/10 58/6 60/25 62/13 62/22 62/25 65/5 71/25 73/2 75/17 75/23 82/12 82/21 91/24
**government's [5]** 4/13 4/20 9/15 15/20 89/10
**grant [1]** 9/11
**graphics [1]** 89/8
**great [1]** 50/8
**greater [1]** 91/8
**ground [1]** 9/13
**grounds [2]** 91/21 91/24
**guess [3]** 6/23 81/4 81/11
**guidance [1]** 6/3
**guns [2]** 25/14 25/16

**H**

**had [71]** 10/7 11/1 15/6 15/19 17/2 22/1 23/2 24/11 24/14 25/6 28/5 29/21 31/20 31/23 33/6 34/10 37/7 40/5 47/22 48/2 51/25 52/11 53/8 53/13 53/24 54/3 54/7 54/10 54/21 55/24 55/25 57/18 58/18 58/21 59/1 60/22 60/25 61/4 61/15 61/25 62/22 64/8 64/11 65/9 66/23 66/24 66/25 67/10 67/17 68/18 69/6 70/24 71/2 71/25 73/22 74/9 76/6 76/7 77/15 80/8 80/9 80/18 80/22 84/2 86/6 86/9 87/3 87/4 87/11 89/15 90/1
**half [3]** 32/15 63/11 92/7
**hand [3]** 62/12 62/18 88/24
**handed [5]** 32/23 33/9 34/15 61/12 77/8
**handle [2]** 83/8 84/12
**handled [1]** 93/7
**handling [1]** 82/7
**handwrite [1]** 28/16
**handwritten [6]** 28/17 28/22 29/1 34/25 36/4 61/18
**HANNA [1]** 2/3
**happen [4]** 10/1 10/3 20/13 81/8 83/1 83/3 83/6 86/24
**happened [16]** 30/25 41/22 57/19 59/12 59/19 62/21 62/24 67/5 75/10 79/8 81/2 85/8 85/12 85/13 86/5 86/25
**happening [1]** 84/22
**happens [1]** 90/17
**happy [1]** 35/2
**hard [3]** 43/3 47/15 81/24
**has [20]** 6/25 7/24 12/15 14/4 14/10 15/13 17/15 35/6 50/23 70/10 71/13 71/21 71/24 71/25 75/17 75/19 76/1 81/6 88/12 92/23
**hasn't [2]** 12/8 71/21
**have [160]**
**having [2]** 7/21 11/5
**he [58]** 10/20 10/24 12/8 12/11 12/19 12/22 12/24 12/24 13/2 13/4 13/20 14/2 14/11 14/15 14/24 16/3 16/3 17/6 24/19 24/20 24/21 25/6 27/15 31/12 32/11 32/17 46/10 46/14 46/16 47/25 52/1 69/24 69/25 70/3 71/22 73/16 73/18 73/18 73/20 73/20 73/22 73/23 73/25 75/7 76/8 76/9 76/17 77/16 80/4 80/19 80/19 83/24 83/25 86/6 86/25 87/11 88/2
**he's [4]** 13/9 13/10 13/11 70/5
**head [2]** 48/16 72/11
**hear [4]** 5/10 15/3 17/5 17/7
**heard [13]** 4/18 7/14 22/12 22/13 31/18 31/20 67/1 71/2 71/17 86/4 86/5 86/9 86/11
**hearing [1]** 7/9 8/23 72/14 74/9 74/16 74/17 74/19 74/25 75/5 76/9
**hearsay [3]** 34/22 70/17 87/6
**held [4]** 19/10 43/19 89/15 94/9
**helicopter [10]** 21/15 21/17 21/24 22/5 22/7

22/8 22/8 22/11 22/18 74/21
**help [1]** 45/23
**helpful [1]** 91/5
**her [37]** 8/14 8/15 20/11 22/13 22/17 24/7 24/11 24/14 24/17 24/17 26/8 28/20 28/22 28/25 29/1 29/17 30/10 30/10 30/22 35/17 36/22 48/13 49/5 52/5 53/20 55/19 55/25 56/8 58/22 59/16 59/25 63/15 63/18 64/10 66/23 67/1 67/16
**here [22]** 6/23 19/14 19/18 19/22 22/10 37/18 40/11 40/13 42/3 43/13 46/11 47/19 52/5 52/21 54/15 55/1 63/13 69/24 74/5 85/11 87/18 88/7
**hereby [1]** 94/6
**Hernandez [2]** 18/6 51/1
**hesitant [1]** 32/8
**high [1]** 80/24
**high-profile [1]** 80/24
**him [12]** 9/17 12/22 12/23 14/24 14/25 25/2 25/3 25/5 33/13 69/23 86/5 87/8
**his [21]** 12/21 13/2 14/11 14/15 16/3 20/11 31/13 31/13 34/21 34/24 38/20 46/11 57/12 69/7 70/4 70/11 70/15 70/19 74/8 80/19 86/4
**history [1]** 79/25
**hold [1]** 19/12
**holding [2]** 12/5 23/13
**home [18]** 20/3 20/6 23/11 23/16 23/21 24/8 25/1 25/17 27/17 31/14 59/5 59/16 59/20 59/23 67/10 74/21 77/12 77/12 78/19
**honor [88]** 4/5 4/9 4/19 5/5 5/9 5/20 6/25 7/10 7/17 8/7 8/12 8/18 9/18 9/24 10/10 10/14 10/18 11/8 12/3 12/13 12/20 13/1 13/12 13/19 14/3 14/9 14/14 15/14 15/25 16/12 16/15 16/17 17/3 17/8 17/25 18/4 18/13 21/18 23/6 25/18 25/22 26/20 30/10 32/21 34/13 34/16 34/20 34/24 41/23 42/13 43/5 44/13 45/7 45/23 46/20 48/4 49/8 52/15 52/16 54/7 61/10 65/10 66/6 69/2 69/9 70/16 71/14 73/9 74/2 74/22 76/25 77/3 80/14 83/23 83/24 84/17 86/13 87/5 87/12 89/25 90/3 90/21 91/11 92/10 92/18 93/4 93/9
**Honor's [2]** 92/21 93/5
**HONORABLE [1]** 1/8
**hoping [1]** 12/5
**hour [4]** 24/24 29/11 63/11 92/7
**hours [6]** 12/7 24/23 26/25 27/2 29/17 32/15
**house [6]** 25/8 25/10 25/11 25/12 25/12 25/14
**how [34]** 7/1 8/22 14/7 19/5 19/10 20/18 21/2 24/22 30/15 35/18 36/10 36/22 37/3 37/11 39/4 39/16 39/22 40/8 41/2 48/13 59/3 59/4 59/11 59/15 65/23 67/17 68/5 69/14 76/1 78/25 81/21 82/20 85/22 93/13
**however [2]** 9/20 88/16
**Human [1]** 9/7
**hundred [1]** 75/6
**husband [5]** 24/7 24/11 24/15 24/17 24/25

**I**

**I'll [6]** 5/17 5/17 8/12 75/13 75/13 89/6
**I'm [37]** 4/16 6/10 7/4 7/8 8/7 9/10 13/10 13/12 14/13 17/2 17/8 17/16 23/19 23/19 27/15 29/18 30/16 35/2 43/15 44/4 55/6 57/4 57/13 68/2 68/11 72/8 72/9 74/17 74/19 74/25 75/6 84/20 90/5 90/17 90/18 91/19 92/12
**I've [1]** 22/4
**I-N-D-E-X [1]** 3/2
**i.e [1]** 88/20
**Ibrahim [2]** 87/2 87/10
**icon [1]** 38/12
**idea [10]** 22/1 22/2 22/15 25/7 31/23 36/9 40/5 46/17 41/3 60/4
**identified [1]** 39/6
**IMAD [1]** 13/20
**image [3]** 31/5 31/11 68/10
**imaged [1]** 31/15
**images [2]** 37/8 41/15
**immediately [2]** 13/25 33/16
**impeachment [3]** 34/17 34/21 35/1
**importance [1]** 6/6

**important [6]** 39/14 49/14 49/15 50/2 65/20
**impossible [1]** 52/12
**improper [2]** 34/20 86/13
**impropriety [2]** 83/13 83/16
**inadmissible [1]** 89/15
**include [1]** 36/13
**included [4]** 21/6 41/14 58/13 62/3
**includes [1]** 36/14
**including [3]** 37/22 48/20 89/5
**incomplete [2]** 45/14 45/21
**inconsistencies [2]** 28/5 28/11
**incredibly [1]** 50/2
**incurred [1]** 65/19
**indeed [1]** 61/15
**indicated [4]** 4/16 5/15 12/11 15/5
**individual [2]** 77/11 83/3
**individuals [4]** 20/18 21/8 21/12 21/23
**information [16]** 9/20 11/1 11/2 11/5 14/5 30/6 36/10 36/23 37/3 37/12 58/6 58/13 58/18 65/18 65/20 65/22
**informed [2]** 45/20 47/20
**informing [1]** 45/13
**initially [1]** 78/23
**inquiring [1]** 41/5
**inquiry [2]** 39/16 41/13
**Inside [1]** 73/6
**instance [5]** 10/23 37/19 42/3 43/14 88/22
**instead [1]** 62/11
**instructed [2]** 25/6 60/20
**instructing [1]** 92/12
**instructions [1]** 92/14
**integrity [1]** 88/19
**intend [1]** 16/20
**interest [3]** 81/19 82/6 83/12
**interested [1]** 42/9
**Internal [1]** 81/18
**internally [1]** 13/5
**interview [25]** 10/11 23/22 24/6 26/7 26/22 27/2 27/10 28/13 28/14 29/12 29/16 32/17 33/10 33/17 33/22 33/23 39/3 39/23 39/25 43/20 45/16 49/10 50/2 76/3 85/6
**interviewed [2]** 26/1 71/24
**interviewing [2]** 24/17 49/22
**interviews [2]** 33/24 75/16
**inventory [4]** 30/16 30/18 30/20 47/17
**investigate [1]** 57/7
**investigating [1]** 68/24
**investigation [6]** 16/3 32/12 36/24 57/2 65/16 81/14
**investigations [3]** 68/14 68/19 82/7
**investigative [13]** 36/12 37/22 40/12 41/13 43/10 43/25 44/23 54/20 72/2 77/20 84/8 84/11 85/17
**investigator [1]** 8/15
**involved [2]** 20/7 31/16
**involves [1]** 83/4
**IRS [5]** 31/12 32/12 67/7 73/20 81/13
**is [155]**
**isn't [22]** 12/21 25/21 27/18 28/7 28/11 35/9 35/19 35/21 44/24 45/1 52/6 53/25 54/5 54/14 55/2 55/5 60/6 69/7 69/12 69/18 83/13 86/24
**issue [8]** 8/5 12/15 13/19 17/18 88/24 90/1 90/16 93/7
**issued [2]** 88/12 89/21
**issues [8]** 6/1 8/2 9/6 16/20 52/23 81/19 82/6 87/21
**it [179]**
**it's [43]** 6/8 7/11 7/17 9/14 9/22 10/8 10/12 10/18 10/25 12/7 12/16 14/23 15/25 17/2 17/9 24/13 28/8 34/25 35/1 46/20 47/17 48/15 49/25 50/11 51/14 52/16 57/9 57/10 57/15 68/18 77/6 78/4 80/7 80/12 81/5 81/24 82/22 85/25 86/13 88/8 91/7 92/11 92/14
**Item [2]** 4/3 17/23
**its [3]** 4/12 6/19 37/7
**itself [2]** 76/25 88/20

**J**

**JAMES [4]** 1/8 35/15 73/3 75/21

**J**

**January** [1] 68/7
**January 2021** [1] 68/7
**Jencks** [20] 9/18 9/22 9/23 10/14 10/14 10/16 10/21 10/25 11/5 11/9 11/10 11/11 11/18 13/18 14/4 14/18 14/22 91/2 91/13 91/22
**Jenness** [3] 86/4 86/25 87/16
**job** [1] 31/13
**JOHN** [5] 1/11 2/14 4/4 17/24 31/7
**joining** [1] 18/6
**joint** [2] 36/15 36/17
**judge** [4] 1/8 80/23 81/5 81/7
**Judicial** [1] 94/11
**Judy** [2] 20/3 51/19
**Julian** [5] 35/15 35/22 36/18 75/20 84/11
**July** [10] 35/16 36/6 37/6 37/10 37/23 39/8 41/3 43/22 45/2 61/7
**July 25** [2] 37/6 37/10
**July 25th** [6] 35/16 36/6 41/3 43/22 45/2 61/7
**July 25tj** [1] 39/8
**June** [7] 49/1 56/7 56/8 57/20 61/4 61/15 64/17
**June 14th** [3] 49/1 61/4 61/15
**jury** [16] 4/2 17/22 18/10 47/4 52/19 53/1 53/4 53/12 62/21 62/24 65/15 73/15 86/5 87/24 92/13 93/12
**just** [34] 4/20 6/14 7/21 10/15 12/13 14/19 14/24 16/7 16/8 16/15 19/20 20/24 25/11 28/9 33/9 33/21 36/6 42/6 43/19 47/4 47/5 47/6 54/7 57/8 61/23 65/3 67/8 73/15 78/5 78/8 86/13 92/15 92/25 93/4
**Justice** [4] 19/1 82/13 82/23 83/2
**JVS** [3] 1/11 4/3 17/23

**K**

**K-a-r-l-o-u-s** [1] 18/19
**KARLOUS** [26] 3/10 4/7 15/24 18/2 18/14 18/15 18/18 18/24 23/20 31/17 34/17 35/6 35/21 40/9 43/8 44/21 45/10 46/2 49/13 50/17 51/4 53/7 57/6 61/14 65/13 77/10
**keep** [1] 32/19
**kept** [4] 30/19 37/24 38/8 39/5
**killed** [1] 57/6
**Kim** [10] 35/15 35/22 36/18 73/3 73/12 75/10 75/14 75/21 77/16 85/1
**kind** [1] 81/24
**knew** [16] 23/3 32/7 35/12 35/14 52/8 56/3 56/4 56/6 56/10 56/11 79/25 80/4 80/24 81/2 83/19 83/20
**know** [82] 6/16 6/19 6/23 10/14 15/24 15/25 16/16 22/8 23/1 25/12 29/7 29/9 31/16 34/8 40/16 40/22 41/16 41/20 42/1 42/3 44/12 46/14 47/8 47/10 47/11 47/14 47/18 48/13 48/18 51/19 52/10 54/15 54/23 54/24 54/25 55/1 55/4 55/11 56/14 57/20 59/19 63/15 63/18 63/25 66/3 66/11 66/12 66/22 67/4 69/13 71/23 73/24 74/15 75/9 75/19 76/3 76/7 77/15 77/18 77/22 77/23 78/2 79/11 79/13 79/14 79/15 79/19 80/4 80/9 80/20 82/8 83/4 84/2 84/4 84/5 84/7 85/19 90/11 90/17 92/15 92/21 93/11
**knowledge** [14] 24/12 31/15 33/5 34/11 34/12 59/14 64/8 64/10 64/11 64/12 66/1 66/4 66/19 80/8
**known** [1] 35/23
**knows** [1] 9/24

**L**

**ladies** [3] 18/9 52/18 87/19
**laptop** [1] 28/15
**last** [10] 4/21 5/21 6/18 18/17 19/24 34/18 38/2 41/13 42/8 48/12
**lasted** [2] 27/2 29/17
**late** [1] 66/14
**later** [4] 23/2 28/3 52/18 64/13
**latter** [1] 67/21
**law** [27] 2/15 4/23 11/8 11/15 11/25 12/15 12/17 13/18 14/9 14/14 14/14 14/17 14/20 20/18 21/23 22/6 35/10 38/12 39/5 42/22
**lay** [1] 35/2
**laying** [1] 47/14
**leader** [2] 20/9 20/22
**leading** [1] 54/4
**learn** [3] 30/6 30/13 30/15
**learned** [7] 30/21 35/10 37/23 38/6 38/11 82/13 82/19
**learning** [1] 85/13
**least** [7] 6/2 6/22 11/6 15/23 39/20 58/7 67/7
**led** [1] 16/6
**left** [19] 30/18 39/12 58/18 59/1 59/5 59/16 59/20 60/22 67/7 67/13 68/7 69/25 70/3 76/21 80/9 80/18 80/19 80/19 91/19
**length** [1] 29/11
**less** [2] 12/8 48/22
**let** [8] 41/12 43/19 51/18 60/8 71/6 75/15 75/15 75/23
**let's** [5] 16/7 16/11 50/14 67/8 80/12
**letter** [2] 41/7 41/7
**lie** [3] 50/9 52/9 52/12
**lies** [1] 49/22
**light** [4] 6/17 8/20 11/4 41/11
**like** [13] 4/19 5/1 5/23 6/1 7/17 12/18 16/4 28/4 35/3 49/11 62/22 83/17 90/8
**likewise** [1] 10/16
**limited** [1] 10/16
**Linda** [1] 63/10
**link** [1] 70/13
**list** [5] 6/9 6/21 9/7 9/16 12/21 15/22
**listen** [1] 64/3
**listening** [4] 73/3 73/6 73/12 75/11
**little** [5] 5/18 12/7 52/18 55/20 55/21
**live** [1] 63/8
**lived** [1] 24/7
**living** [2] 26/8 26/18
**LLP** [2] 35/18 45/4
**locate** [1] 25/16
**located** [3] 26/6 26/15 26/17
**locations** [1] 54/4
**log** [2] 85/23 85/24
**long** [9] 13/23 17/3 19/5 19/10 24/22 51/17 67/17 68/5 70/23
**longer** [6] 67/2 69/16 76/18 79/8 80/5 81/15
**look** [9] 5/17 6/21 10/3 25/13 38/2 44/22 45/19 50/17 59/11
**looked** [1] 10/17
**looking** [1] 83/17
**Los** [3] 2/8 23/12 72/12
**lot** [5] 7/1 15/10 41/17 56/5 56/11
**loveseat** [1] 26/20
**lunch** [3] 70/3 70/7 87/17

**M**

**MA** [1] 62/5
**made** [20] 7/24 10/6 10/8 15/7 17/4 17/14 29/24 31/4 33/16 36/17 44/21 46/5 47/4 53/8 55/12 64/4 68/1 68/10 71/10 88/15
**mail** [13] 11/9 13/24 40/25 41/1 50/23 51/2 51/8 51/11 51/17 51/25 52/5 53/10 53/20 55/19 55/24 56/4 56/9 79/2 79/2 79/3 79/4 79/6 79/7 79/22 79/24 80/7 80/16 80/23 83/19 84/9 85/3
**mails** [12] 10/17 10/18 10/19 10/23 11/2 11/9 12/22 13/3 13/4 13/10 13/10 79/15
**maintained** [5] 35/19 35/24 36/10 36/23 39/17
**maintaining** [2] 91/12 91/15
**major** [2] 2/6 23/1 44/8 69/6 81/6 88/9
**make** [16] 5/24 6/2 6/9 7/4 7/15 7/19 7/23 8/22 8/18 12/23 25/13 33/9 46/7 48/1 60/24 90/3
**makes** [1] 77/2
**making** [6] 25/11 30/2 41/13 54/21 90/13 90/18
**manner** [1] 16/5
**many** [5] 2/10 18 21/2 39/22 48/13 76/1
**March** [23] 20/2 20/14 20/20 21/3 21/21 22/16 31/3 42/24 58/7 58/16 59/23 61/3 66/14 67/8
**March 2019** [1] 71/4
**March 22** [1] 77/6
**March 25th** [12] 20/14 20/20 21/3 21/21 22/16 31/3 42/24 59/23 67/8 67/18 72/6 72/6
**March 26** [1] 58/16
**March 26th** [1] 61/3
**Marino** [1] 5/16
**marked** [3] 3/7 3/12 35/6
**material** [2] 9/14 49/25
**materially** [2] 89/3 89/8
**matter** [6] 22/4 35/1 53/18 57/17 89/17 94/9
**matters** [2] 50/9 89/14
**may** [47] 6/1 6/17 16/6 24/16 32/22 33/12 34/14 41/16 41/17 41/18 44/2 44/17 51/11 52/4 52/7 53/9 53/19 53/25 54/5 54/5 54/13 54/14 54/17 55/2 55/8 55/18 55/22 56/5 56/9 56/18 56/24 56/25 57/1 57/6 57/8 57/18 57/21 61/11 73/8 77/5 78/4 84/16 88/7 89/22 90/16 90/16 91/11
**May 1st** [10] 51/11 53/9 53/25 54/5 54/5 54/13 55/2 55/8 56/9 57/21
**May 2nd** [1] 54/14
**maybe** [5] 56/14 67/19 67/22 75/13 93/10
**me** [35] 6/5 7/3 7/18 8/22 10/13 41/8 41/10 41/11 41/12 42/21 47/10 55/8 58/13 61/1 61/24 64/2 66/9 71/6 72/3 72/7 72/9 72/15 72/18 73/22 75/15 75/24 76/2 76/23 77/11 78/8 78/22 91/1 91/5 91/9 92/15
**mean** [4] 6/22 25/9 84/9 90/22
**Meaning** [1] 57/4
**mechanism** [1] 6/24
**meet** [4] 49/14 49/18 50/8 69/25
**meeting** [8] 50/3 51/21 51/24 84/25 85/6 85/9 85/14 85/16
**meetings** [1] 48/25
**Melinda** [2] 24/3 27/11
**member** [5] 43/9 82/11 83/1 89/9 89/22
**members** [6] 40/12 43/25 44/23 72/1 77/20 90/13
**memo** [1] 36/14
**memorandum** [6] 14/12 14/16 33/10 33/15 45/16 49/10
**memory** [3] 33/16 35/25 36/2
**mention** [1] 39/22
**mentioned** [5] 31/21 33/6 34/10 39/2 39/19
**mentioning** [1] 74/13
**mere** [1] 16/4
**message** [6] 41/2 41/3 41/6 68/16 68/18 68/23
**messages** [3] 66/15 66/19 66/23
**met** [9] 32/13 49/4 50/21 51/7 53/13 63/3 69/21 69/23 76/1
**MICHAEL** [7] 1/11 2/14 4/4 4/9 17/24 18/4 23/13
**mid** [2] 52/20 92/16
**mid-afternoon** [1] 92/16
**mid-morning** [1] 52/20
**middle** [2] 34/18 38/3
**might** [8] 12/5 16/21 28/5 44/24 55/11 89/17 92/15 93/13
**minute** [2] 39/19 54/7
**minutes** [2] 52/21 92/10
**Miramar** [1] 2/16
**miscellaneous** [1] 62/1
**misconduct** [3] 69/7 80/23 81/7
**mislead** [1] 89/14
**misled** [1] 81/7
**mistrial** [2] 9/11 11/16
**mocking** [1] 10/13
**modes** [1] 7/1
**moment** [4] 28/14 32/5 43/5 74/2
**momentarily** [1] 18/7
**moments** [2] 34/8 34/9
**Monday** [2] 72/6 75/1
**money** [1] 65/23
**months** [3] 49/1 62/23 67/19
**more** [13] 5/18 10/18 16/13 21/18 35/2 48/15

**M**

**more... [7]** 48/17 48/23 68/19 68/21 72/19 81/25 91/7
**morning [30]** 4/5 4/8 4/9 4/11 5/11 17/25 18/3 18/4 18/8 18/9 18/10 18/24 18/25 19/20 20/7 20/14 20/20 21/2 21/21 22/16 23/3 24/15 25/17 25/22 31/2 44/5 52/20 57/7 66/14 87/25
**most [7]** 27/4 47/22 47/22 48/2 51/22 81/11 91/16
**motion [6]** 4/13 5/8 5/15 7/24 9/10 92/2
**move [22]** 8/5 21/18 27/20 40/17 42/13 44/13 45/6 45/23 46/20 48/4 56/19 57/13 57/22 58/2 62/8 64/14 65/10 71/14 73/9 77/24 83/22 84/13
**moving [2]** 62/11 62/16
**Mr [4]** 12/4 18/11 69/12 87/2
**Mr. [142]**
**Mr. Amenta [8]** 9/8 9/16 11/7 12/20 12/21 12/24 13/3 13/4
**Mr. Amenta's [1]** 9/10
**Mr. Andre [3]** 38/20 77/16 84/25
**Mr. Arden [3]** 86/20 86/21 86/23
**Mr. Avenatti [11]** 4/14 5/14 7/9 12/11 16/2 16/19 18/21 34/23 53/5 87/25
**Mr. Avenatti's [1]** 9/9
**Mr. Barela [4]** 86/3 86/16 87/4 87/11
**Mr. Dean [1]** 18/5
**Mr. Drum [8]** 11/7 11/22 11/22 12/20 12/25 46/10 46/25 89/5
**Mr. Ibrahim [1]** 87/10
**Mr. Karlous [2]** 34/17 45/10
**Mr. Kim [3]** 73/12 77/16 85/1
**Mr. Roberson [1]** 34/3
**Mr. Sagel [39]** 17/4 19/17 20/24 21/6 21/9 21/13 23/23 26/3 26/17 27/4 27/14 29/7 32/2 32/13 38/7 38/20 43/9 43/25 44/7 50/22 51/21 51/24 52/4 56/8 59/4 70/8 70/10 70/14 72/1 72/9 74/7 74/12 76/24 77/16 78/23 78/24 79/18 83/19 84/7
**Mr. Sagel's [1]** 69/19
**Mr. Steward [1]** 4/10
**Mr. Stolper [44]** 69/6 69/12 69/16 69/18 69/21 69/25 70/7 70/11 70/15 70/24 71/3 71/7 71/11 71/18 71/21 71/24 72/15 72/18 73/13 73/15 75/2 75/5 75/17 75/22 76/1 76/5 76/6 77/15 78/7 78/21 79/7 79/10 79/16 79/21 79/24 80/9 80/17 80/18 80/22 83/20 84/12 84/25 85/18
**Mr. Stolper's [4]** 70/13 78/11 79/25 84/9
**Mr. Tashchyan [1]** 47/24
**Mr. Tran [1]** 51/14
**Mr. Weeks [1]** 31/10
**Mr. Wyman [1]** 14/9 19/18
**Ms [85]** 4/10 20/6 20/19 20/23 21/3 21/22 22/10 22/17 22/23 23/11 23/16 23/17 23/20 32/11 32/14 32/18 36/4 36/6 36/7 36/9 36/22 37/2 37/10 38/14 39/4 39/8 39/10 39/15 39/19 40/1 44/5 45/1 45/11 45/13 45/20 47/20 48/11 49/4 50/22 51/1 51/7 51/14 51/25 52/3 53/8 53/19 54/17 54/21 55/13 55/18 55/23 56/3 57/18 58/17 59/5 59/20 59/23 59/24 60/16 61/5 61/16 61/23 61/25 62/4 62/22 63/3 63/8 63/13 63/20 63/24 64/5 64/17 66/18 66/25 67/10 67/12 77/12
**Ms. [33]** 5/15 5/16 8/13 18/6 18/6 20/3 20/15 24/7 25/17 26/4 26/22 28/15 29/19 29/21 29/24 30/13 30/19 31/2 31/21 35/16 44/2 50/22 50/24 51/8 53/14 59/4 60/20 60/21 64/25 74/21 78/19 86/4
**Ms. Ball [7]** 26/4 26/22 28/15 29/3 29/21 29/24 59/4
**Ms. Ball's [2]** 29/19 30/3
**Ms. Carter's [1]** 5/15
**Ms. Cummings-Cefali [1]** 18/6
**Ms. Hernandez [1]** 18/6
**Ms. Jenness [1]** 86/4
**Ms. Judy [1]** 20/3
**Ms. Marino [1]** 5/16

**Ms. Phan [2]** 8/13 50/24
**Ms. Regnier [8]** 24/7 36/16 44/2 50/22 51/8 53/14 64/25
**Ms. Regnier's [7]** 20/15 25/17 30/19 31/2 60/21 74/21 78/19
**Ms. Schabilion [1]** 60/20
**much [4]** 8/22 19/15 65/23 82/4
**multiple [1]** 28/4
**must [1]** 43/18
**my [36]** 6/5 7/11 7/12 7/12 7/22 7/23 8/10 11/11 17/12 33/16 34/12 35/25 39/24 41/17 41/18 42/6 42/22 46/5 47/6 48/16 54/3 54/4 54/10 57/25 58/13 59/10 61/1 64/3 67/16 71/11 76/18 79/8 88/3 90/18 90/19 93/6
**myself [2]** 51/14 78/24

**N**

**name [6]** 18/17 20/11 74/13 74/15 78/22 80/24
**namely [2]** 27/17 42/9
**necessarily [1]** 88/24
**need [10]** 8/23 9/5 9/21 17/12 43/10 44/7 83/7 90/24 93/1 93/2
**needed [1]** 57/2
**never [15]** 10/17 10/17 17/9 22/4 24/25 56/13 56/14 56/16 56/23 63/2 63/7 63/7 66/1 70/19 71/2
**new [13]** 13/7 53/25 54/12 54/12 54/13 54/13 55/8 56/11 67/4 67/5 67/22 67/25 68/5
**Newport [1]** 8/14
**next [8]** 6/5 18/11 40/6 60/16 62/15 64/24 79/8 92/9
**NICOLA [1]** 2/3
**night [3]** 4/21 5/21 19/24
**Ninth [3]** 91/17 91/18 91/18
**no [127]**
**None [3]** 3/5 3/8 3/13
**nonproduction [1]** 91/25
**nonresponsive [5]** 45/7 46/21 56/20 57/14 83/23
**noon [1]** 5/16
**normal [1]** 8/1
**North [1]** 2/7
**not [131]**
**note [2]** 89/6 92/22
**noted [2]** 5/22 90/20
**notes [38]** 27/10 27/12 27/13 27/14 27/15 27/18 28/3 28/5 28/7 28/11 28/15 28/16 28/18 28/20 28/22 29/1 29/11 29/19 29/22 33/16 34/25 36/4 38/22 38/24 39/9 39/24 43/20 43/22 43/24 44/1 61/18 61/22 62/15 63/25 64/4 64/8 64/19 85/6
**nothing [4]** 17/13 40/8 57/17 79/9
**notice [1]** 90/14
**November [8]** 32/2 32/9 33/2 33/15 34/5 35/9 45/17 46/2
**November 19th [7]** 32/2 32/9 33/2 34/5 35/9 45/17 46/2
**November 25 [1]** 33/15
**now [38]** 5/18 6/23 8/16 11/6 14/24 15/3 16/22 20/2 23/16 26/1 26/24 28/13 32/5 47/19 48/11 49/12 50/23 52/15 52/17 52/19 54/15 58/5 58/16 64/21 64/13 68/12 70/5 71/21 72/5 74/5 79/18 81/10 81/15 86/13 90/15 90/21 91/20 93/10
**nowhere [2]** 9/21 9/22
**number [6]** 5/25 29/16 48/11 48/16 67/13 67/16
**numbers [1]** 13/20

**O**

**oath [2]** 24/10 86/6
**objecting [1]** 90/5
**objection [20]** 22/19 23/5 25/18 25/23 34/20 41/23 44/10 60/11 64/20 66/6 69/2 69/9 70/16 74/22 76/11 86/12 87/5 87/12 88/1 90/16
**objections [1]** 8/16
**obligation [4]** 13/14 49/18 83/11 83/17

**obvious [1]** 6/6
**obviously [3] 6/25 40/14 74/2
**occasion [1]** 82/1
**occasions [2]** 11/7 48/12
**occur [2]** 78/25 87/11
**occurred [10]** 6/18 41/16 41/17 41/18 56/13 56/14 56/16 56/23 78/16 87/15
**off [11]** 12/5 40/24 44/4 46/18 46/25 47/2 47/5 47/9 57/8 63/3 63/7
**offended [1]** 50/10
**offense [1]** 50/8
**offered [2]** 34/25 35/1
**offers [1]** 34/16
**office [16]** 23/2 23/6 23/12 69/4 69/15 69/16 69/25 70/4 78/8 78/12 80/1 80/5 80/10 80/18 89/23 90/10
**OFFICES [1]** 2/15
**Okay [13]** 5/13 16/23 16/25 17/19 41/11 42/8 44/4 48/25 57/6 69/18 81/7 91/14 92/5
**old [3]** 47/12 67/24 68/1
**Olson [1]** 91/18
**Once [3]** 70/1 70/3 91/10
**one [34]** 7/24 10/11 16/24 27/18 28/2 28/6 30/19 36/21 37/21 37/22 38/6 38/19 38/22 43/5 47/2 47/25 48/25 55/19 67/10 68/19 68/21 68/24 70/11 72/19 74/2 74/8 75/2 77/22 81/25 82/18 82/19 86/19 88/6 93/3
**online [1]** 81/23
**only [6]** 11/15 12/16 27/17 28/2 28/6 92/6
**open [3]** 7/17 16/6 88/21
**opened [3]** 92/23 93/9 93/11
**opens [1]** 16/2
**operative [1]** 9/24
**opinions [2]** 52/23 87/21
**opportunity [11]** 4/20 5/2 5/10 5/24 7/14 7/15 7/18 15/6 15/13 15/19 23/17
**opposition [4]** 4/12 4/13 4/21 5/14
**option [1]** 11/17
**Orange [1]** 22/11
**order [5]** 6/3 25/13 83/9 88/11 89/20
**ordered [2]** 15/8 88/13
**orders [2]** 88/12 88/12
**other [27]** 6/16 6/17 9/20 11/7 11/25 13/10 13/19 16/24 21/12 21/22 40/12 43/9 43/25 52/4 55/14 62/5 62/6 64/10 64/11 71/17 72/1 77/22 79/15 80/20 89/18 89/18 93/12
**others [4]** 16/14 38/7 53/19 86/23
**otherwise [2]** 14/9 93/10
**our [5]** 13/7 16/9 28/8 31/12 47/10
**ourselves [1]** 28/4
**out [24]** 6/14 14/11 14/15 17/6 39/12 40/6 55/12 55/19 57/25 59/6 59/8 59/8 59/15 60/20 62/22 62/25 64/13 69/7 85/12 85/22 86/1 86/17 86/19 91/14
**outside [7]** 24/20 25/3 25/5 25/6 73/8 84/2 92/23
**over [7]** 6/5 35/23 42/8 62/13 62/18 63/21 81/24
**overall [1]** 9/15
**overhead [1]** 22/12
**Overruled [9]** 23/7 41/25 44/11 60/13 66/8 69/3 70/18 76/13 87/7
**own [3]** 6/19 29/5 80/20

**P**

**p.m [6]** 5/3 5/7 32/14 35/16 51/12 93/16
**page [7]** 15/7 34/18 34/19 34/19 38/2 38/3 94/10
**pages [2]** 15/10 29/13 29/16
**paper [1]** 15/10
**paragraph [1]** 33/1
**paragraphs [1]** 45/19
**part [9]** 5/10 17/17 28/8 51/9 67/21 75/3 75/4 76/16 88/16
**parte [3]** 7/7 90/6 90/11
**particular [5]** 51/8 53/24 54/3 88/24 89/6
**particularly [1]** 89/18
**parties [1]** 91/1
**parties' [1]** 91/6

**P**

party [2]  6/8 78/5
pass [1]  92/13
passages [1]  91/7
Pause [2]  43/6 74/3
pay [2]  11/24 89/23
pendency [1]  66/13
people [7]  6/21 21/2 28/4 46/18 47/10 50/8
82/7
perceive [1]  8/1
percent [1]  75/6
perhaps [1]  55/23
period [8]  24/25 56/4 56/9 59/20 67/8 68/12
68/20 68/23
permissible [1]  8/20
permission [2]  92/25 93/5
permitted [3]  6/4 11/15 59/25
person [10]  27/18 28/2 28/7 31/12 68/4 75/4
78/22 79/1 79/5 81/23
person's [2]  74/13 74/15
personal [2]  62/4 64/12
personally [6]  41/8 41/10 41/11 54/19 55/15
66/9
pertaining [1]  58/23
Phan [2]  8/13 50/24
phone [28]  38/17 39/19 41/9 54/3 54/10 55/5
63/16 63/21 66/24 67/2 67/3 67/5 67/6 67/10
67/12 67/17 67/22 67/24 67/25 68/1 68/5 68/6
68/8 68/10 78/25 79/5 86/4 86/25
phones [2]  67/4 67/7
physically [4]  26/6 53/22 55/18 55/25
pick [5]  60/21 62/23 62/25 63/17 63/21
picked [3]  63/2 63/7 70/4
piece [1]  54/18
pieces [1]  55/4
pinpoint [1]  81/24
place [5]  14/8 41/9 48/25 74/25 88/11
placed [1]  62/15
Plaintiff [1]  1/10 2/2
PLAINTIFF'S [2]  3/4 3/6
plan [1]  6/5
planning [1]  20/7
played [1]  71/21
please [20]  18/12 18/16 27/22 31/8 35/4 38/2
40/19 42/15 43/5 44/16 48/6 50/14 51/1 52/22
54/8 62/21 62/24 87/20 87/22 90/2
plus [5]  21/12 50/7 59/3 81/13 81/17
point [12]  7/25 8/10 15/16 28/11 28/18 28/22
30/13 39/9 41/3 47/4 78/24 89/4
policy [3]  28/8 38/9 39/1
portion [2]  53/9 76/23
posed [1]  73/12
position [4]  12/1 15/1 17/11 90/20
possession [8]  10/1 10/25 13/8 37/7 52/11
53/13 53/21 53/24
possibility [1]  56/1
possible [10]  5/24 8/4 8/8 52/9 53/22 56/16
57/19 59/15 78/4 85/11
possibly [9]  41/20 41/21 41/22 62/9 67/14
79/2 79/3 79/19 85/10
potential [1]  83/9
potentially [1]  60/9
power [1]  82/12
powerful [2]  82/20 82/24
practice [4]  27/19 50/1 67/15 70/5
preceding [3]  72/10 72/11 74/9
precluded [1]  7/11
prefer [1]  13/14
preferably [1]  8/18
preference [2]  92/22 93/6
prejudicial [1]  93/13
preliminary [1]  6/14
premises [1]  25/16
preparation [6]  19/18 19/21 19/25 30/3 48/20
51/6
prepare [1]  19/14 20/21
prepared [7]  12/3 21/1 29/25 33/10 33/12
33/15 33/19
presence [1]  8/4

present [18]  4/2 4/10 7/13 8/18 9/6 17/22
18/3 20/2 21/1 50/4 50/23 52/5 53/6 66/13
70/8 75/16 87/24 91/1
presents [2]  7/4 14/11
PRESIDING [1]  1/8
press [7]  23/1 23/8 23/13 89/9 90/6 90/8
90/13
Pretty [1]  82/16
prevail [1]  90/15
previously [3]  10/7 12/6 76/24
price [2]  11/24 91/18
prior [4]  71/2 71/11 71/18 93/7
prison [1]  49/24
private [3]  70/5 73/22 73/25
PRO [1]  2/14
probably [5]  5/6 12/9 12/14 38/19 91/19
probative [1]  88/23
problem [4]  8/25 10/13 11/23 14/20
problems [1]  10/12
Procedure [1]  90/5
proceed [3]  8/1 9/1 90/2
proceeding [3]  72/14 72/19 88/25
proceedings [7]  1/15 17/21 43/6 53/3 74/3
88/20 94/9
process [4]  7/12 8/10 48/3 90/19
produced [13]  10/7 10/10 10/18 11/6 11/11
11/19 12/6 13/25 14/5 17/9 17/10 17/10 91/16
production [1]  91/25
proffer [5]  5/24 6/2 6/9 6/19 7/16
profile [1]  80/24
program [1]  37/24
programs [1]  45/3
promptly [1]  5/18
pronounce [1]  60/17
proposition [1]  49/13
propositions [1]  5/1
prosecute [1]  75/24
prosecuted [1]  76/2
prosecution [5]  13/14 44/9 72/2 81/6 83/4
prosecutor [6]  69/4 69/6 69/24 73/16 75/20
81/6
prosecutorial [1]  80/22
prosecutors [2]  38/19 76/1
proven [1]  11/6
provided [3]  9/20 75/23 75/25
public [6]  88/1 88/17 88/21 89/9 89/14 89/22
public's [1]  89/2
pulled [1]  46/18
punishable [1]  49/23
purpose [1]  35/17
purposefully [1]  50/11
purposes [1]  35/17
pursuant [1]  94/6
put [8]  5/14 5/16 28/22 50/23 51/17 62/18
91/9 91/23

**Q**

quality [1]  88/19
quarter [3]  78/9 78/12 85/3
quash [1]  5/15
question [27]  11/10 11/12 16/9 30/8 34/21
38/5 41/17 41/18 42/6 44/15 47/6 54/8 57/25
64/3 64/3 65/23 68/21 71/6 74/23 75/12 75/13
75/14 86/13 90/24 92/9 92/24 93/8
questioning [6]  8/17 8/19 74/13 74/15 75/4
78/16
questions [18]  11/14 16/2 16/10 16/17 26/3
26/4 27/7 35/17 36/22 37/11 38/18 51/22
57/11 72/15 72/19 73/12 77/11 77/17
QuickBooks [13]  39/22 45/11 45/14 45/21
46/3 46/6 46/10 46/14 46/24 47/11 47/14
47/20 48/2
quite [1]  10/5
quote [2]  12/12 62/4 62/4
quoting [1]  70/14

**R**

R-e-m-o-u-n [1]  18/18
raise [3]  8/3 16/20 90/1

read [22]  9/8 27/22 27/24 30/9 30/12 33/21
33/24 40/25 40/10 41/6 42/17 44/14 47/18
48/6 48/8 51/19 74/8 75/3 77/1 84/16 84/19
85/6
reading [2]  39/24 85/7
reads [1]  51/17
Reagan [1]  2/10
really [6]  6/16 6/23 55/22 86/1
reason [16]  6/16 14/3 14/6 28/2 28/6 28/9
36/2 39/2 40/4 56/23 60/3 65/4 65/5 65/14
75/7 80/20
reasons [5]  36/21 60/14 82/18 82/20 89/20
recall [72]  14/19 14/24 17/3 20/12 21/2 23/4
23/8 23/15 24/5 26/21 29/11 29/15 29/20
29/21 30/1 30/2 30/5 31/19 32/1 32/7 32/15
32/17 33/12 37/17 37/18 38/1 38/15 39/12
40/7 40/14 41/1 41/2 43/12 43/13 43/15 45/15
46/9 49/1 49/4 49/6 49/12 51/6 51/9 53/10
53/16 58/8 58/16 58/17 58/21 61/5 61/6 61/8
61/9 61/21 65/1 65/2 65/3 67/16 67/19 67/20
72/10 72/12 74/7 74/12 74/14 79/23 81/1
81/22 82/3 85/7 85/13 85/15
recalled [1]  66/18
receive [3]  81/18 81/21 81/25
received [8]  3/7 3/12 15/23 30/16 79/7 79/24
83/19 87/13
recess [7]  17/19 17/20 52/21 53/2 87/19
93/15 93/16
recollection [21]  32/9 33/1 34/22 38/4 40/9
40/24 41/19 41/21 41/22 43/16 44/6 45/10
45/13 45/20 46/5 49/11 50/21 58/25 61/15
77/11 79/4
record [16]  6/3 6/20 7/15 7/19 7/22 13/12
17/14 27/24 30/12 39/15 40/21 42/17 43/19
44/18 48/8 84/19
records [25]  30/17 37/24 38/8 38/15 39/5
42/20 42/21 43/14 45/21 46/4 46/8 46/10
46/14 46/24 47/8 55/5 58/23 59/5 60/25 62/5
62/6 65/6 65/14 70/4
RECROSS [2]  3/4 3/9
REDIRECT [2]  3/4 3/9
Ref [1]  13/5
referred [1]  70/10
referring [3]  13/10 13/11 13/13 63/5 74/17
76/4
reflect [4]  43/19 43/24 44/1 61/22
reflected [2]  63/24 64/7
refresh [6]  33/1 40/8 49/11 61/14 77/4 77/10
refreshes [4]  35/25 36/2 38/3 45/20
refreshing [1]  33/16
refuse [1]  37/11
regard [6]  5/20 9/6 9/8 13/2 90/25 91/2
regarding [1]  35/17
regardless [1]  17/8
Regnier [74]  20/3 22/10 22/17 22/23 23/17
23/22 24/7 24/10 24/25 26/1 26/6 31/21 32/1
32/14 32/18 33/17 35/16 36/4 36/6 36/7 36/9
36/22 37/2 37/10 38/14 39/4 39/8 39/10 39/15
39/19 40/1 44/2 44/5 45/1 45/11 45/13 45/20
47/20 48/11 49/4 50/22 50/22 51/7 51/8 51/14
51/25 52/3 53/8 53/14 53/19 54/17 54/21
55/13 55/18 55/23 56/3 57/18 58/17 59/24
60/16 61/5 61/16 61/23 61/25 62/6 63/3 63/8
63/20 63/24 64/5 64/17 64/25 66/25 67/12
regularly [1]  9/4
regulations [1]  94/11
relate [1]  91/25
related [4]  33/6 58/12 62/6 90/1
relates [3]  11/7 11/22 13/18
relating [13]  5/24 6/1 8/17 10/20 30/3 42/21
43/10 50/24 53/8 60/25 65/19 72/2 84/8
relationship [1]  84/2
relevant [2]  88/7 88/23
remedies [1]  12/16
remedy [1]  12/18

R

**remember [6]** 26/13 32/5 32/6 52/22 74/10
87/20
**remembering [1]** 29/21
**remotely [1]** 83/17
**REMOUN [6]** 3/10 4/7 18/2 18/14 18/15 18/18
**removed [3]** 30/6 31/1 31/14
**repeatedly [2]** 11/4 90/24
**Rephrase [1]** 74/23
**reply [3]** 5/2 5/17 9/9
**report [10]** 28/21 28/23 28/25 29/2 29/8 29/24
30/4 30/18 33/25 33/25
**reported [1]** 94/8
**reporter [2]** 31/8 94/16
**REPORTER'S [1]** 1/15
**represent [1]** 72/8
**representation [1]** 17/4
**represented [1]** 76/7
**representing [1]** 76/9
**represents [2]** 76/5 76/7
**request [5]** 16/24 89/23 90/3 90/18 91/23
**requests [1]** 90/14
**required [1]** 91/16
**requirement [2]** 14/4 14/8
**requires [1]** 14/21
**requiring [1]** 22/18
**research [2]** 52/25 87/23
**reserve [4]** 4/16 12/24 12/25 13/7
**residence [19]** 20/15 20/19 20/23 21/4 22/18
22/23 22/24 24/21 24/22 25/22 30/7 30/18
30/19 30/20 30/22 31/2 58/22 60/21 62/22
**respect [4]** 7/9 88/13 89/16 91/6
**respond [1]** 12/2 15/6 15/19
**response [3]** 12/4 12/12 39/16
**responsible [1]** 20/9
**rest [2]** 37/21 44/22
**results [2]** 11/15 51/18
**resumed [2]** 17/21 53/3
**retrieve [1]** 59/1
**revealed [1]** 88/24
**Revenue [1]** 81/18
**review [5]** 19/21 19/24 28/18 28/20 29/3
**reviewed [3]** 29/1 29/5 29/7
**reviewing [2]** 35/12 35/25
**right [94]** 6/23 7/12 7/12 11/6 16/22 21/9 22/3
23/3 23/23 24/8 24/12 24/18 25/14 26/25 27/8
27/12 27/14 27/18 28/23 29/1 29/17 29/25
31/24 32/6 34/3 36/4 36/7 36/17 36/25 37/4
37/25 38/12 38/22 39/2 39/17 42/22 42/25
43/3 43/20 44/2 47/8 47/19 48/15 49/24 50/5
50/10 50/12 53/15 54/15 56/6 56/11 56/24
57/2 57/4 58/7 59/9 60/10 60/22 61/19 62/6
64/19 65/8 65/16 66/20 67/1 67/21 69/16 70/5
72/6 73/13 73/25 75/5 75/11 76/6 76/18 76/21
78/14 78/16 78/19 79/13 79/19 79/25 81/15
82/14 82/16 82/21 83/9 84/5 85/1 85/4 86/1
87/4 90/10 90/19
**rights [1]** 90/19
**risk [1]** 22/23
**Roberson [5]** 32/10 32/13 33/13 34/3 49/5
**Robert [1]** 24/25
**role [3]** 23/16 23/20 71/21
**Ronald [1]** 2/10
**room [2]** 26/8 26/18
**RPR [1]** 1/19
**rule [8]** 4/12 5/3 5/8 5/17 90/4 90/4 90/18
91/16
**Rule 29 [1]** 5/3
**rules [1]** 8/20
**ruling [3]** 6/15 17/15 89/24
**run [1]** 8/8

S

**SACR [3]** 1/11 4/3 17/23
**SACR-19-00061-JVS [1]** 1/11 4/3 17/23
**safe [2]** 25/11 25/14
**safety [1]** 60/14
**SAGEL [51]** 2/9 4/5 17/4 17/25 19/17 20/24
21/6 21/9 21/13 23/23 26/3 26/17 27/4 27/14

29/7 32/2 32/13 33/2 35/15 35/22 36/18 37/22
36/7 38/20 43/25 49/23 50/8 50/2 50/18 51/2
51/21 51/24 52/4 53/19 56/8 59/4 69/12 70/8
70/10 70/14 72/1 72/9 74/7 74/12 76/24 77/16
78/23 78/24 79/18 83/19 84/7
**Sagel's [1]** 69/19
**said [22]** 6/14 13/20 26/24 27/5 37/15 39/10
39/12 39/15 40/3 53/14 55/2 56/24 56/24
57/1 57/8 63/19 71/4 71/13 79/18 84/24 86/25
88/16
**same [6]** 11/21 19/12 26/18 69/9 87/10 87/12
**San [1]** 2/16
**Santa [4]** 1/16 1/20 2/11 4/1
**sat [2]** 19/15 22/10
**saw [3]** 25/2 25/3 25/5
**say [14]** 6/10 10/8 12/14 14/24 15/24 15/25
22/13 25/9 56/14 78/9 79/3 82/5 83/24 83/25
**saying [2]** 13/4 70/14
**says [1]** 33/14
**Schabilion [3]** 60/17 60/19 60/20
**schedule [1]** 8/23
**scheduled [1]** 23/2
**scope [1]** 16/3
**screen [2]** 50/18 55/20
**scrutiny [2]** 88/17 88/21
**SE [1]** 2/14
**seal [1]** 89/19
**sealing [3]** 88/11 88/12 88/12
**search [24]** 20/5 20/10 20/19 20/25 21/1 21/7
21/8 21/16 32/8 45/5 47/3 58/17 59/24 60/4
60/5 60/8 63/8 67/9 70/23 72/18 73/2 74/20
75/1 78/18
**searched [1]** 77/12
**seated [1]** 26/9
**second [3]** 34/18 38/2 70/3
**Section [2]** 2/6 94/6
**see [13]** 12/21 16/7 16/11 22/8 29/19 38/3
39/24 45/19 46/3 51/4 51/15 54/21 63/21
**seeing [1]** 21/2
**seeking [1]** 91/21
**seems [1]** 7/3
**seen [1]** 22/4
**SEFFENS [3]** 1/19 94/15 94/16
**SELNA [1]** 1/8
**send [3]** 41/6 41/7 63/21
**sending [3]** 40/25 41/1 41/2
**sent [5]** 13/4 13/24 51/25 52/5 55/25
**separate [1]** 91/9
**separated [3]** 24/7 24/11 24/14
**serious [4]** 10/19 49/23 50/4 50/8
**seriously [1]** 49/18
**server [10]** 35/18 35/19 35/24 46/19 46/25
47/5 47/5 47/6 47/9 47/16
**servers [13]** 36/11 36/23 37/4 37/8 37/13
37/25 38/8 39/17 40/2 40/15 41/15 45/4 46/4
**Service [1]** 81/18
**set [2]** 11/24 12/10
**seven [5]** 62/1 62/25 63/5 63/16 64/1
**several [2]** 29/13
**shaking [1]** 72/11
**SHARON [3]** 1/19 94/15 94/16
**she [56]** 5/16 8/16 8/18 22/23 23/18 24/11
24/14 24/14 26/4 26/5 26/9 28/16 28/21 28/22
28/25 37/11 37/15 39/6 39/6 39/12 40/3 40/3
45/2 45/22 52/8 53/14 55/22 55/24 56/7 56/13
56/18 56/24 57/1 57/18 58/1 58/21 59/21 60/3
61/7 61/24 61/25 62/1 62/3 62/8 62/8 62/9
62/11 62/12 62/13 62/18 63/3 63/7 63/19 64/2
66/18 66/19
**she's [2]** 8/21 8/24
**sheriff's [1]** 22/11
**shortcut [1]** 91/12
**shortly [1]** 70/3
**should [10]** 11/1 11/24 13/25 14/1 15/24
16/15 75/14 75/14 82/7
**show [2]** 53/14 76/23
**showed [6]** 20/14 20/23 21/21 22/16 22/22
53/25
**showing [6]** 9/15 12/12 53/21 54/4 54/11

55/13
**shows [1]** 55/8
**shredded [1]** 63/17
**side [1]** 6/17
**sidebar [2]** 93/1 93/2
**sign [1]** 34/1
**signature [1]** 33/20
**signed [1]** 33/10
**significant [1]** 88/18
**simple [2]** 9/24 11/9
**since [2]** 14/6 67/7
**single [6]** 40/14 62/23 68/23 68/24 91/6 91/23
**sir [47]** 4/22 5/13 7/24 8/22 12/1 15/1 15/18
17/11 19/25 21/21 22/22 25/21 28/11 32/25
33/14 38/6 39/8 40/6 41/18 42/19 43/16 44/9
45/1 46/24 47/9 50/19 54/10 55/1 57/11 57/17
63/18 64/3 64/12 64/17 66/4 70/25 71/3 75/9
76/23 78/2 80/7 80/16 81/8 84/2 86/16 90/23
92/24
**sit [7]** 6/23 37/18 40/11 40/13 42/3 43/13 55/1
**site [2]** 20/10 26/24
**sitting [8]** 13/15 26/19 47/19 54/15 72/20 73/3
74/5 75/10
**situation [1]** 12/18
**six [12]** 24/23 24/24 26/25 27/2 29/11 29/17
29/22 62/25 63/5 63/16 63/25 67/19
**six-hour [2]** 24/24 29/11
**Sixth [4]** 7/13 90/4 90/5 90/18
**smoothly [1]** 8/8
**so [82]** 5/1 5/17 7/8 7/12 7/16 7/25 8/4 9/17
10/14 11/8 11/22 12/14 12/19 14/6 14/22
15/16 15/25 16/6 16/8 16/16 20/23 20/25 21/8
22/3 23/11 24/10 24/14 28/10 28/19 28/22
29/24 31/22 32/20 33/8 36/6 36/15 38/20
38/21 39/21 39/25 45/12 48/3 50/4 52/2 52/23
54/2 54/6 55/3 59/8 60/2 61/3 61/22 61/23
65/6 66/17 66/18 66/21 66/22 66/24 67/21
68/17 69/20 71/4 72/7 72/13 73/14 73/15 75/6
77/22 78/4 78/11 79/5 79/20 81/17 82/20
83/15 85/13 85/25 90/18 90/23 91/8 92/15
**Sofa [1]** 26/20
**solution [1]** 90/25
**some [20]** 4/23 4/24 6/3 6/4 6/15 6/21 6/22
7/21 9/20 15/16 16/13 26/3 28/22 30/13 30/22
58/18 68/16 74/8 78/24 80/20
**somebody [3]** 83/4 85/22 86/20
**somebody's [1]** 47/15
**somehow [2]** 13/7 55/25
**someone [5]** 6/8 31/22 57/6 63/21 83/8
**something [4]** 12/12 12/14 42/8 54/24
**somewhat [1]** 6/3
**somewhere [2]** 47/15 85/25
**soon [3]** 12/14 51/18 52/8
**sorry [1]** 6/10
**sought [1]** 89/14
**SOUTHERN [1]** 1/6
**speak [1]** 23/17
**special [38]** 4/7 15/23 18/2 18/14 18/24 19/9
23/20 27/11 31/7 31/17 32/10 32/12 32/13
33/13 33/21 35/6 35/14 35/21 35/21 36/18
40/9 43/8 44/2 46/2 49/5 49/13 50/17 51/4
53/7 57/6 60/17 61/14 65/13 73/3 75/9 75/13
75/21 77/10
**specific [3]** 7/6 12/10 35/17
**specifically [6]** 32/1 33/3 50/22 88/3 89/1
89/4
**specifics [1]** 43/15
**spell [2]** 18/16 31/8
**spending [1]** 56/5 56/10
**spoke [2]** 37/10 64/17
**sponte [1]** 93/3
**spring [2]** 2/7 56/10
**stand [10]** 4/25 8/13 8/17 8/19 14/2 24/10
41/4 44/6 74/8 88/24
**started [2]** 16/5 16/5 63/16
**state [2]** 11/16 31/22
**stated [7]** 14/10 15/1 24/14 28/10 83/21 87/4
87/11

**S**

**statement [4]** 6/12 33/21 53/8 89/1
**statements [6]** 9/25 10/21 10/21 11/18 11/20 88/14
**states [19]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/4 4/6 9/19 17/24 18/1 19/4 82/21 82/24 88/3 94/7 94/11
**statute [2]** 11/16 11/25
**statutes [1]** 9/23
**stenographically [1]** 94/8
**steps [4]** 46/2 47/21 59/15 84/7
**STEWARD [4]** 2/15 2/15 4/10 18/5
**still [7]** 9/24 10/19 10/25 11/19 15/15 15/15 45/16
**Stolper [46]** 69/1 69/6 69/12 69/16 69/18 69/21 69/25 70/7 70/11 70/15 70/24 71/3 71/7 71/11 71/18 71/21 71/24 72/5 72/15 72/18 73/13 73/15 75/2 75/5 75/17 75/22 76/1 76/5 76/6 77/13 77/15 78/7 79/7 79/12 79/17 79/16 79/21 79/24 80/9 80/17 80/18 80/22 83/20 84/12 84/25 85/18
**Stolper's [4]** 70/13 78/11 79/25 84/9
**stored [2]** 37/4 37/12
**story [2]** 56/4 86/7
**straightforward [1]** 9/25
**strategize [1]** 14/6
**Street [3]** 1/20 2/7 2/11
**stricken [16]** 21/19 27/21 40/18 42/14 44/14 45/8 45/24 48/5 56/21 57/15 58/3 64/15 65/11 71/15 73/10 84/15
**strike [31]** 9/10 20/17 21/18 27/20 28/15 29/10 40/17 42/13 44/13 45/6 45/23 46/20 48/4 55/20 56/19 57/13 57/22 58/2 64/3 64/14 65/4 65/10 66/13 71/14 71/25 73/9 75/13 77/24 82/18 83/22 84/13
**striking [1]** 11/16
**stuff [1]** 82/16
**sua [1]** 93/3
**subject [3]** 17/14 88/10 91/13
**subjects [1]** 7/5
**submit [2]** 5/2 14/13
**submits [1]** 14/15
**submitted [2]** 52/24 87/22
**subpoena [1]** 5/15
**subsequent [1]** 84/24
**substance [2]** 39/15 64/4
**such [5]** 37/18 42/3 43/13 88/12 89/23
**sufficiently [1]** 8/24
**suggest [1]** 16/20
**suggesting [2]** 13/6 13/9
**suggestions [1]** 30/3
**Suite [3]** 1/20 2/11 2/16
**summaries [2]** 10/11 46/11
**summary [2]** 10/15 36/3
**supervisor [2]** 83/7 84/10 84/14
**supplement [3]** 4/14 12/6 92/2
**supplemental [1]** 91/1
**support [2]** 5/2 13/8
**supported [1]** 6/20
**supposed [3]** 83/1 83/3 83/6
**sure [13]** 13/10 28/12 29/18 30/16 43/15 48/1 54/16 55/6 60/24 72/9 74/17 75/6 91/19
**surgical [1]** 16/13
**surprise [1]** 22/3
**sustained [7]** 8/16 22/20 25/19 25/24 64/22 69/10 86/14
**SWORN [1]** 18/15
**systems [1]** 32/18

**T**

**table [4]** 4/7 13/16 18/2 26/19
**Tabs [38]** 17/1 17/9 31/18 31/20 31/23 32/3 33/3 33/6 34/10 35/10 35/15 37/24 37/24 38/8 38/11 39/6 39/20 40/1 40/13 40/15 40/16 40/25 41/5 41/14 43/10 44/8 44/22 46/7 61/8 66/2 66/5 90/22 91/3 91/7 91/12 91/15 91/22 91/25
**taint [3]** 42/12 46/5 48/3
**tainted [1]** 93/12
**take [22]** 5/8 5/10 15/6 15/18 15/21 16/17 17/12 17/18 28/24 38/1 43/15 45/1 46/3 47/21 49/18 50/8 52/17 52/20 59/14 87/17 90/23
**taken [14]** 16/21 17/20 28/5 30/17 30/17 30/20 30/21 31/2 31/11 47/3 53/2 84/7 92/22 93/16
**takes [1]** 67/21
**taking [3]** 38/22 38/24 39/9
**talk [8]** 8/14 13/13 28/13 67/8
**talking [5]** 26/2 27/4 44/4 74/19 74/25
**tamper [1]** 60/9
**target [3]** 60/8 60/12 83/5
**Tashchyan [1]** 47/24
**team [20]** 20/9 20/22 21/7 21/8 36/12 37/22 40/13 41/13 42/12 43/10 43/25 44/23 46/5 54/20 72/2 73/8 77/20 84/8 84/11 85/17
**tech [1]** 68/4
**telephone [1]** 61/4 61/9
**tell [7]** 8/22 47/4 49/15 50/3 62/21 62/24 86/5
**temporal [2]** 14/4 14/8
**ten [4]** 29/14 48/17 48/22 65/7
**terminated [4]** 71/11 71/18 76/6 76/10
**termination [2]** 76/12 76/16
**testified [10]** 8/21 22/10 24/10 34/8 34/9 46/10 58/5 58/12 74/10 86/3
**testify [5]** 19/14 19/25 67/1
**testimony [27]** 8/3 8/6 9/11 17/5 19/18 19/22 22/12 23/14 24/24 46/12 46/24 47/1 52/13 53/12 57/12 58/10 63/13 63/15 63/18 66/18 68/18 68/22 71/3 73/3 73/4 71/1 80/7 80/16
**text [10]** 41/2 41/2 41/6 66/15 66/19 66/23 66/25 68/16 68/18 68/23
**than [10]** 10/19 12/8 16/13 21/12 48/15 48/17 48/22 48/23 71/17 81/25
**Thank [7]** 5/13 9/2 15/2 18/20 56/19 80/14 92/20
**that [572]**
**that's [45]** 4/22 6/16 6/24 7/16 9/1 10/2 10/5 10/15 10/24 11/16 11/17 11/24 13/17 14/8 14/14 14/20 14/20 15/16 16/9 16/18 19/15 20/5 27/5 27/19 32/8 33/9 40/3 44/25 45/5 50/12 55/20 59/10 60/8 63/19 69/17 77/2 78/13 78/14 83/18 85/11 89/24 91/20 92/4 92/18 92/19
**their [3]** 11/23 11/23 11/23
**them [24]** 6/1 6/22 7/22 10/13 28/23 31/6 46/6 46/8 47/25 49/22 62/9 62/9 62/9 62/11 62/12 62/12 62/17 62/17 63/2 63/7 65/7 85/7
**then [11]** 6/9 14/18 33/20 38/14 61/4 67/17 67/22 68/5 78/23 85/25 87/2
**there [61]** 6/1 10/2 11/10 11/15 11/17 11/25 14/3 14/18 16/8 17/13 17/15 20/9 21/11 21/24 22/6 22/11 22/23 23/8 24/1 24/16 25/7 28/5 28/10 29/13 29/16 29/18 29/20 30/16 37/15 40/1 45/3 45/17 46/3 46/6 46/7 48/3 50/4 50/19 55/11 55/12 57/2 58/22 72/24 73/1 73/8 73/12 78/2 78/4 79/4 79/4 79/19 79/23 83/15 83/16 84/24 85/23 85/24 85/25 88/9 89/14 90/24 90/25
**there's [3]** 10/6 13/8 67/7
**these [14]** 6/21 7/21 12/22 29/11 34/24 48/12 62/3 62/16 62/25 63/5 63/25 64/12 64/18 64/25
**they [39]** 4/23 4/24 9/25 10/3 10/10 10/15 10/17 10/17 11/10 11/10 11/11 11/18 11/24 13/14 13/21 16/21 20/25 25/11 25/12 25/13 25/16 31/2 41/18 49/15 50/3 50/9 69/15 74/8 74/12 76/21 83/4 83/18 83/21 84/2 85/22 89/16 91/4 93/13
**they're [4]** 5/1 7/23 10/21 69/15
**thing [5]** 11/21 25/13 38/1 40/14 87/10
**things [8]** 29/21 30/21 37/21 37/22 38/6 41/17 70/14 86/19
**think [21]** 6/20 8/23 8/25 9/5 10/8 11/10 16/22 27/5 31/21 33/13 33/19 38/21 55/23 56/1 57/1 57/10 71/13 82/22 87/17 93/2 93/8
**third [1]** 34/19

**this [104]**
**those [28]** 5/25 6/4 9/23 10/2 11/6 11/9 12/16 13/4 16/10 20/21 31/1 43/2 43/24 44/1 46/14 47/8 48/25 59/16 63/16 64/8 89/8 89/11 89/20
**thought [2]** 20/24 37/15
**thoughts [1]** 6/7
**three [4]** 10/7 72/17 73/1 77/12
**through [10]** 8/5 19/15 25/11 44/5 66/14 79/18 79/19 89/5 90/9 90/10
**thrown [1]** 69/7
**Thursday [1]** 5/8
**thus [1]** 22/18
**time [46]** 5/18 8/22 9/5 13/23 14/18 15/21 17/3 17/14 24/16 24/24 26/7 27/7 27/7 28/18 31/13 31/17 33/6 35/9 37/23 38/7 39/14 41/3 52/10 52/15 53/18 56/3 56/4 56/5 56/9 56/11 56/15 59/20 60/6 64/24 67/8 67/15 68/12 68/20 68/22 70/4 72/22 73/15 84/5 86/6 92/7 92/22
**times [3]** 39/22 42/24 48/14 76/1 83/16
**title [4]** 19/8 19/10 19/12 94/7
**today [5]** 15/23 16/20 17/5 17/6 19/14 19/19 19/22 37/18 40/11 40/13 41/4 42/3 43/13 55/1 67/9 71/2
**together [12]** 9/3 9/4 9/5 21/22 22/23 34/3 38/7 51/7 69/15 83/21 84/3 92/13
**told [36]** 8/15 17/6 32/1 33/3 40/11 45/1 45/2 45/22 52/8 52/12 53/19 54/17 54/21 55/13 55/18 56/3 56/7 56/13 57/18 58/21 61/7 61/25 62/3 62/8 62/11 62/16 63/24 64/2 64/5 64/18 65/15 86/6 86/16 86/23 87/10 92/7
**ton [1]** 62/5
**tonight [1]** 5/3
**took [13]** 14/2 27/10 27/12 27/13 27/14 27/15 28/22 31/4 41/4 44/5 48/25 61/18 74/25
**top [1]** 34/19
**topic [1]** 75/15
**totality [1]** 64/18
**trace [2]** 51/18 89/7
**track [2]** 32/19 35/11
**trained [5]** 82/5 82/6 82/10 82/19 83/11
**training [4]** 81/18 81/21 81/25 82/3
**Tran [1]** 51/14
**transcript [11]** 1/9 1/15 74/9 74/17 74/19 75/3 76/23 76/25 77/6 94/8 94/10
**trash [1]** 62/9
**trashing [2]** 62/12 62/17
**Treasury [5]** 19/4 19/5 81/10 82/24 83/2
**trial [30]** 1/12 14/1 14/19 19/15 28/10 31/20 31/22 41/4 48/20 49/15 51/6 54/22 58/7 63/16 71/13 71/17 74/7 76/24 86/3 88/2 88/13 88/20 88/20 89/2 89/4 89/4 89/16 89/16 89/22
**trials [1]** 7/2
**true [41]** 4/22 10/5 11/21 17/6 24/15 24/16 25/21 28/7 28/11 35/9 35/19 35/21 37/19 37/20 40/5 42/4 43/14 44/3 44/24 44/25 45/1 48/12 52/6 54/1 54/5 54/14 54/22 55/2 55/5 55/14 60/6 69/8 69/12 69/18 77/22 78/5 83/13 86/17 86/20 86/24 94/7
**truth [5]** 34/25 49/16 50/3 54/25 87/14
**truthful [1]** 58/10
**trying [3]** 8/7 55/23 85/12
**Tuesday [1]** 51/11
**turn [4]** 67/4 67/6 68/3 68/8
**turned [1]** 67/25
**Twenty [1]** 81/13
**Twenty-five-plus [1]** 81/13
**twice [3]** 39/20 64/20 70/1
**two [23]** 9/23 10/21 11/2 11/6 11/9 11/14 11/15 12/16 13/15 32/2 32/17 33/24 35/23 40/11 41/13 42/8 48/12 49/1 55/4 67/7 68/12 68/22 88/9
**two-year [2]** 68/12 68/22
**type [1]** 10/15
**typed [3]** 53/20 54/17 55/19
**typewritten [5]** 10/11 28/23 28/25 29/7 36/3
**typing [2]** 28/21 52/5

## U

**ultimately [1]** 90/15
**unaware [1]** 27/15
**uncertain [1]** 58/1
**unconvinced [1]** 88/17
**under [23]** 6/15 6/25 7/12 8/20 10/22 11/8
11/15 13/17 24/10 33/21 76/21 80/4 80/9 86/5
89/19 90/4 90/12 90/18 91/16 91/16 91/17
91/17 93/14
**understand [8]** 14/17 17/11 37/16 65/24
68/21 75/12 76/5 76/8
**understanding [7]** 6/13 20/18 25/5 30/25
59/10 65/18 76/20
**understood [16]** 7/10 8/7 8/12 13/3 15/9 16/8
16/15 28/2 28/16 31/21 39/14 65/13 65/22
76/17 83/16 89/25
**Unfortunately [1]** 12/4
**UNITED [18]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
4/3 4/6 17/23 18/1 19/4 82/21 82/24 88/3 94/7
94/11
**unregistered [1]** 25/21
**until [5]** 5/16 15/6 41/4 52/24 58/7 67/9 68/7
87/19 87/22
**untrue [3]** 24/12 31/23 53/15
**unusual [3]** 6/8 6/10 6/11
**up [34]** 5/8 5/11 8/2 15/6 15/18 15/21 16/17
16/21 17/17 20/14 20/23 21/21 22/16 24/22
28/21 43/19 44/5 45/17 48/2 49/23 51/2 54/4
60/21 62/23 62/25 63/2 63/7 63/17 63/20
63/21 66/14 70/4 90/23 92/9
**upon [1]** 7/4
**us [3]** 18/6 23/18 24/1 45/22 56/7 67/21
**use [5]** 22/18 46/8 46/16 47/6 60/12
**used [11]** 21/15 28/6 32/18 35/10 46/10 46/25
47/5 76/24 89/5 89/7 90/13
**usually [1]** 33/24
**utilize [1]** 82/12

## V

**Vague [2]** 23/5 86/12
**verify [3]** 10/24 13/3 57/18
**version [1]** 46/16
**versus [3]** 4/4 17/24 88/3
**very [7]** 9/24 9/25 11/9 15/22 28/21 70/14
91/5
**via [1]** 38/12
**video [4]** 55/5 55/6 55/7 55/13
**view [2]** 91/6 91/9
**violation [5]** 14/18 14/22 14/22 14/23 14/23
**violations [1]** 92/3
**VOL [1]** 1/12
**vs [1]** 1/10

## W

**W-e-e-k-s [1]** 31/9
**waiting [1]** 42/11
**want [24]** 4/18 6/9 7/1 7/13 7/14 7/18 8/13
8/14 8/17 9/16 12/2 15/3 15/4 15/5 15/12
16/15 17/10 52/17 54/25 72/5 92/15 92/16
93/5 93/12
**wanted [18]** 23/17 23/18 36/22 42/11 42/20
42/21 46/6 46/8 54/24 58/6 60/24 65/4 65/5
65/14 65/15 85/22 90/1 92/12
**warrant [24]** 20/3 20/8 20/10 20/25 21/1 21/7
21/8 21/16 32/8 45/5 47/3 58/17 59/24 60/4
60/5 60/9 63/9 67/9 70/23 72/18 73/2 74/20
75/1 78/18
**was [224]**
**Washington [2]** 54/11 54/12
**wasn't [15]** 14/2 24/16 25/7 31/16 32/7 60/3
71/1 73/16 73/18 73/20 73/23 79/5 79/5 81/3
83/15
**way [8]** 9/1 32/10 38/17 67/12 77/22 81/11
82/22 86/1
**ways [1]** 8/11
**we [67]** 4/20 5/7 5/18 5/20 7/25 8/4 9/4 9/4
10/19 10/23 10/25 11/7 11/11 11/19 11/22 12/6
12/9 12/14 12/20 12/22 13/13 14/22 15/14
15/15 15/16 15/17 15/21 15/22 16/16 17/4

19/20 21/7 21/17 23/17 23/19 28/3 28/14
36/23 38/6 39/10 40/9 40/23 42/11 42/20
43/15 43/18 44/12 44/12 45/5 46/6 53/15 54/7
54/8 54/25 63/2 63/7 63/14 67/4 67/4 87/8
87/17 87/19 91/24 92/6 92/7 92/14 93/2 93/2
**we'll [8]** 8/23 14/11 14/15 16/16 17/19 52/20
52/21 91/10
**we're [12]** 12/3 15/15 15/18 16/1 17/5 17/6
17/17 28/13 85/11 90/23 92/17 93/15
**we've [2]** 9/3 12/5
**website [2]** 70/13 70/20
**wedded [1]** 92/13
**WEDNESDAY [1]** 4/1
**Weeks [2]** 31/7 31/10
**well [48]** 4/22 6/22 7/3 8/10 10/5 12/10 14/24
20/17 20/25 22/10 23/19 24/17 24/22 26/3
26/19 27/7 28/15 29/2 29/10 30/2 30/19 33/14
33/20 34/19 41/11 41/17 43/16 43/19 47/4
48/1 54/17 55/22 62/6 62/17 65/4 66/13 67/8
69/14 69/16 72/8 75/13 76/8 79/3 81/5 81/25
82/8 82/23 85/11
**went [5]** 10/24 62/22 62/25 66/24 70/7
**were [88]** 11/9 11/10 11/11 11/11 11/18 11/19
13/4 13/21 20/2 20/7 20/8 20/13 20/17 20/19
20/25 21/7 21/9 21/15 21/23 23/11 24/17
24/22 25/21 26/15 26/19 26/24 29/16 30/17
30/21 30/22 31/1 31/2 31/10 31/14 31/22
32/18 35/18 35/23 37/6 37/7 37/24 38/8 38/22
39/5 39/9 39/25 42/11 43/2 43/24 44/1 44/25
45/14 45/21 46/3 46/6 46/7 46/11 47/2 57/20
59/5 59/23 63/2 64/2 64/7 64/11 64/18 64/18
64/19 64/25 67/3 67/24 71/17 77/15 77/16
79/8 82/3 83/1 83/2 83/5 83/18 84/9 85/8
85/12 85/13 89/6 89/9 89/10 92/16 92/21
**What's [1]** 48/19
**whatever [5]** 10/15 43/2 46/18 50/18 91/21
**whatsoever [1]** 13/9
**when [77]** 10/24 11/22 13/18 13/24 14/11
14/15 16/4 20/2 20/23 22/10 22/16 22/22
23/11 24/10 24/14 24/17 24/21 25/5 25/9 26/1
28/20 28/21 30/16 31/17 37/10 39/4 39/9 44/5
49/14 49/18 49/22 50/3 50/8 50/21 51/6 53/13
55/18 56/3 56/7 56/8 56/13 58/10 59/21 60/4
61/7 62/21 62/24 63/3 63/8 64/17 64/24 67/6
67/9 67/13 68/5 69/24 70/4 70/7 74/12 76/8
78/7 79/3 79/24 80/7 80/16 80/21 81/2 81/17
82/5 83/1 83/19 86/3 86/5 86/11 88/20 88/22
90/17
**where [6]** 5/4 13/19 16/1 16/16 26/6 26/11
26/15 26/17 46/14 47/17 47/18 51/21 63/8
69/23 70/2 72/14
**whether [22]** 6/4 6/13 6/15 7/16 7/17 27/15
40/5 41/14 41/18 42/9 43/2 47/8 56/16 57/18
65/7 66/25 67/16 78/2 86/19 87/3 90/15 91/22
**which [18]** 6/6 9/12 9/23 10/7 16/5 16/5 31/6
34/10 50/15 65/14 74/9 74/17 76/21 80/4 80/9
88/11 88/13 89/21
**while [3]** 8/16 59/23 59/24
**who [27]** 19/3 20/9 24/2 24/7 25/12 25/12
26/1 27/10 36/13 36/14 38/21 63/3 66/11 68/3
69/1 69/6 73/1 73/22 74/13 74/15 75/19 76/6
76/7 76/9 77/11 78/21 79/7
**whole [1]** 60/4
**Whose [1]** 36/9
**why [21]** 7/23 8/19 14/3 14/8 16/3 28/2 28/6
31/10 32/8 33/20 36/2 36/21 45/5 56/23 60/3

60/8 65/4 65/5 65/14 82/20 85/11
**WILL [10]** 8/10 10/7 10/7 12/14 12/14 12/20
12/14 12/20 12/22 12/25 15/25 15/25 17/3 18/6
21/19 27/21 40/18 42/14 44/14 45/24 45/24
47/10 48/5 51/18 56/21 64/15 65/11 71/15
72/8 72/9 73/10 84/15 87/13 87/17 87/19
88/24 90/24 90/25 91/24 92/1 93/9 93/10
**willing [2]** 62/12 62/18
**wire [1]** 13/3
**wires [1]** 10/24
**wishes [1]** 12/22
**wishing [1]** 12/22
**within [7]** 4/23 13/7 36/10 37/24 41/14 63/25
64/12
**without [2]** 6/17 7/22
**witness [32]** 5/21 6/9 6/21 7/11 9/7 9/15 9/16
9/25 10/4 10/20 11/3 11/16 12/18 12/21 14/7
14/20 15/22 15/23 18/12 18/15 32/23 33/23
34/15 38/5 39/24 49/22 61/12 66/15 68/23
77/8 83/5 92/8
**witness's [1]** 8/2
**witnesses [15]** 3/4 3/9 5/25 6/4 7/9 7/21 7/25
9/6 16/19 33/24 49/14 49/19 50/1 68/14 68/19
**won't [1]** 6/22
**word [6]** 39/11 39/11 47/5 47/6 60/12 69/14
**words [2]** 33/21 46/8
**work [5]** 10/20 67/14 69/15
**worked [2]** 83/21 87/3
**working [1]** 84/3
**would [39]** 4/19 5/1 5/16 5/23 6/1 6/12 6/15
6/20 9/13 14/19 18/11 18/16 22/17 22/24 27/7
28/7 31/23 47/25 49/11 52/11 53/14 53/16
54/24 59/15 61/7 65/22 69/14 78/9 84/11
85/22 88/18 89/3 89/8 90/3 90/8 91/5 91/8
92/17 93/6
**wouldn't [1]** 41/16
**wrap [1]** 92/9
**wrapping [1]** 5/5
**write [1]** 39/10
**writing [1]** 90/14
**written [3]** 12/4 29/22 85/25
**wrong [3]** 13/21 66/20 72/9
**wrote [1]** 64/19
**WYMAN [6]** 2/5 4/6 14/9 18/1 19/18 49/6

## Y

**year [6]** 13/21 50/7 68/12 68/22 78/16 78/18
**years [9]** 19/7 19/11 32/2 32/17 35/23 40/11
41/13 42/8 48/12 49/23 81/10 81/12 81/13
81/17 81/24
**yes [172]**
**yesterday [6]** 4/16 5/16 9/4 17/4 19/24 89/21
**yet [1]** 12/9
**Yorba [1]** 63/10
**York [8]** 13/7 53/25 54/12 54/12 54/13 54/13
55/8 56/11
**you [560]**
**you find [1]** 29/10
**you'd [1]** 35/2
**you're [6]** 8/23 14/7 63/5 71/5 72/11 74/17
76/4 81/15
**You've [1]** 17/14
**your [180]**

## Z

**Zoom [1]** 49/7