Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 497-6753

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S STATUS REPORT RE SEARCH OF SERVERS FOR FINANCIAL DATA |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, and as directed by the Court earlier today, hereby files his Status Report re Search of Servers for Financial Data.

On August 15, 2021, Mr. Avenatti filed a Notice of Motion and Motion to Dismiss the Case or In the Alternative Motion for Mistrial due to the Government's (1) Failure to Produce Information as Required by Rule 16, *Brady*, *Giglio*, and (2) Contempt of this Court's January 25, 2021 Order. This motion was brought as a result of the government's alleged failure to produce the Tabs and complete QuickBooks data from the Eagan Avenatti, LLP servers. [Dkt. 706.]  In preparation for the hearing on this motion, the Court ordered:

> "Obviously the Tabs issue is an important one, and I would like Mr. Fitzgerald here or his designee or whoever is heading up the taint team. I want to know whether the Tabs data is in the materials that the taint team holds. The present record would seem to indicate that no inquiry has been made of the taint team with respect to the Tabs data."
>
> *See, e.g.,* Trial Tr. (8/19/21, Vol. 1) p. 23.

On August 20, 2021, the Court held a hearing on the matter with AUSA Patrick Fitzgerald, head of the Privilege Review Team (the "PRT"), present. At the conclusion of the hearing, the Court ordered the PRT to cooperate with the defense over the weekend in order to allow for searches for financial information to be conducted on the Eagan Avenatti, LLP ("EA") servers.

Earlier today, the PRT and the defendant filed an update for the Court [Dkt. 766]. During the hearing that followed shortly thereafter, the Court instructed the defendant to provide an update to the Court late in the day and after the defendant had been provided an opportunity to learn more information about the status of the discovery from the servers: "I would like at least a preliminary report of what Tabs data is there. It doesn't need to be exhaustive, but I would like to have that input before I consider Mr. Avenatti's motion at 706." *See, e.g.,* Trial Tr. (8/23/21) p. 5. In accordance with the Court's directive, defendant provides the following update.

//

### 1.  The Production this Afternoon from the DOJ Computer Lab

At approximately 4:00 p.m. this afternoon, defendant was provided with approximately 6 GB[1] of data that had been located by Mr. Joseph Varani of the Department of Justice Computer Lab in Washington, D.C.  This information consists of approximately 1,992 electronic files, with 1,822 files (in 98 folders) relating to Tabs and 170 files (in 150 folders) relating to QuickBooks. All of this information was obtained from the forensic copies of the EA servers that have been in the possession of the DOJ since the Spring of 2019.[2]  <u>None of the Tabs files were previously produced to the defendant prior to this afternoon.</u>  *Some* of the QuickBooks files are likely duplicates of files that were previously produced, but the defense has not yet had an opportunity to compare the QuickBooks files produced this afternoon with the prior productions in the case.  Further, it was discovered by the PRT and the defendant at approximately 6:00 p.m. this evening that not all of the Tabs data located on the forensic images was captured and produced by Mr. Varani.  There are additional files that have yet to be produced.  It is presently unclear as to when the remaining Tabs data will be provided to the defendant.

### 2.  Defendant's Preliminary Review of the Tabs Data

As of this filing, defendant's review of the Tabs data has been extremely limited. However, even this preliminary review shows that the prejudice to the defendant in not

---

[1] One GB holds a tremendous amount of data.  For instance, E-mail files typically average 100,099 pages *per gigabyte*, while Microsoft Word files typically average 64,782 pages *per gigabyte*. Text files, on average, consist of a whopping 677,963 pages *per gigabyte*. At the opposite end of the spectrum, the average gigabyte of images contains 15,477 pages; the average gigabyte of PowerPoint slides typically includes 17,552 pages.

[2] Mr. Varani previously testified in the trial concerning the timing and method by which the DOJ obtained the forensic copies of the servers. *See, e.g.,* Trial. Tr. (7/23/21, Vol. 1) pp. 11-14; Trial Tr. (8/17/21, Vol. 1) pp. 59-63.

receiving this data long before trial is significant.  Among other things, the data reflects the following:

    a. Exhibits 48 and 174 (the "DRAFT" tabs reports), which the government admitted into evidence early in the trial (July 21, 2021) and has repeatedly referenced and used with multiple witnesses, including Ms. Regnier, Special Agent Remoun Karlous, certain clients and Mr. Drum,[3] are demonstrably false in that they do not reflect all of the expense and cost data;

    b. There are over 111 separate financial transactions in the Tabs data that show monies paid by the firm to clients in the indictment or on behalf of those clients, which were not considered by Mr. Drum and were never included on other exhibits the government moved into evidence;[4]

    c. The Tabs data shows numerous payments made for the benefit of at least two of the clients mentioned in the indictment shortly after settlements were received and yet the government nor its expert ever accounted for these payments;

    d. Mr. Drum's calculations relating to the monies owed to at least two of the clients are erroneous in that Mr. Drum did not account for significant expenses and costs shown in the Tabs data;

    e. Hourly time was billed for at least one client matter for one of the clients in the indictment and yet the client never directly paid the bill (meaning the hourly fees were deducted from the settlement);

    f. Time entries shedding light on the role of other law firm personnel in connection with client settlements were never produced;

---

[3] See Exhibit A.

[4] By way of example only, the government and Mr. Drum never accounted for a $37,724 payment made by the firm on Mr. Johnson's behalf.

3

g. The financial details – costs and time entries – for other work performed for certain of the clients in the indictment was never produced;

h. The Tabs data files showing when costs were input for the clients in the indictment and by whom were never produced; and

i. The Tabs log files and similar files which allow for an "audit trail" for client-related financial transactions were never produced.

### 3. Defendant's Review of the QuickBooks Data

Defendant has not yet had an opportunity to review the large amount of QuickBooks data produced late this afternoon.  It is expected that this review will take considerable time.

### 4. Prejudice to the Defendant

As outlined in defendant's motion and in his reply, the failure of the government to produce this critical financial data until deep into the trial[5] is seriously and substantially prejudicial to the defendant.  This information was required to be produced pursuant to Rule 16, *Brady* and *Giglio* long ago.  It was also required to be produced pursuant to this Court's January 2021 Order, which made clear to the government what was required to be produced and the consequences for failing to do so.  Equally disturbing, the government was on notice of the importance of this information early on in its investigation and yet did nothing to locate it and produce it.  The defendant repeatedly demanded all of the relevant financial data relating to the clients in the indictment and was repeatedly told, along with the Court, that all such information had been produced.  This has now been shown to be false.

---

[5] Even when defendant raised the failure to produce the data during trial repeatedly, the government did nothing to locate the data or attempt to comply with *Brady* and *Giglio*.

The suppression of this information prevented Mr. Avenatti from, among other things,[6] (a) highlighting portions of it in his opening statement; (b) using the information to conduct cross-examinations of, and impeach, multiple clients, Ms. Regnier, Special Agent Remoun Karlous and Mr. Drum; (c) demonstrating before the jury that Exhibits 48 and 174, repeatedly relied on by the government, were demonstrably false; (d) attacking Mr. Drum's credibility by showing that his calculations were wrong because he failed to account for over 111 financial transactions (among other Tabs data); (e) showing that the clients were not owed what the government claims; (f) showing why the government's failure to even look for, and consider, the Tabs data during their alleged "investigation" was so material and egregious (*see, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 445-449 (1995); and (g) formulating and implementing a trial strategy designed around using this exculpatory data to its fullest potential.

For each of these reasons, the Court should grant the defendant's motion at Docket 706.

Dated:  August 23, 2021                          Respectfully submitted,

                                                 /s/ Michael J. Avenatti

                                                 Defendant
                                                 MICHAEL JOHN AVENATTI

---

[6] Because defendant has not yet had an opportunity to review the new information and data in detail, and still does not have all of the information and data as of this filing, defendant is still assessing the full extent of the prejudice he has suffered above "substantial."

**EXHIBIT A**

## Instances Government Used Exhibit 48[1]

1. Trial Tr. July 27, 2021 (Vol. 1) p. 65 – Witness Judy Regnier

2. Trial Tr. July 27, 2021 (Vol. 1) p. 72 – Witness Judy Regnier

3. Trial Tr. July 27, 2021 (Vol. 1) p. 82 – Witness Judy Regnier

4. Trial Tr. July 27, 2021 (Vol. 1) p. 125 – Witness Judy Regnier

5. Trial Tr. July 29, 2021 (Vol. 2) p. 32 – Witness Judy Regnier

6. Trial Tr. August 12, 2021 (Vol. 2) p. 60 – Witness John Drum

7. Trial Tr. August 13, 2021 (Vol. 1) p. 23 – Witness John Drum

8. Trial Tr. August 13, 2021 (Vol. 1) p. 31 – Witness John Drum

9. Trial Tr. August 13, 2021 (Vol. 2) p. 69-70 – Witness John Drum

10. Trial Tr. August 18, 2021 (Vol. 2) p. 28 – Witness Remoun Karlous


## Instances Government Used Exhibit 174[2]

1. Trial Tr. July 27, 2021 (Vol. 2) p. 61 – Witness Judy Regnier

2. Trial Tr. July 27, 2021 (Vol. 2) p. 72 – Witness Judy Regnier

3. Trial Tr. August 6, 2021 (Vol. 2) p. 13 – Witness Gregory Barela

4. Trial Tr. August 17, 2021 (Vol. 2) p. 80 – Witness John Arden

5. Trial Tr. August 18, 2021 (Vol. 2) p. 31 – Witness Remoun Karlous

---

[1] There were other instances where the exhibit was referred to but was not referenced as Exhibit No. 48. These instances are not reflected in this list.

[2] There were other instances where the exhibit was referred to but was not referenced as Exhibit No. 174. These instances are not reflected in this list.

## <u>CERTIFICATE OF SERVICE</u>

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on August 23, 2021, service of the:

DEFENDANT'S STATUS REPORT RE SEARCH OF SERVERS FOR FINANCIAL DATA

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 23, 2021

<u>/s/ H. Dean Steward</u>
H. Dean Steward

6