## DECLARATION OF MORGAN WITOS PURSUANT TO 28 U.S.C. § 1746

I, MORGAN WITOS, hereby declare and state as follows:

1.  I am the individual served with a subpoena to testify in this matter and submit this declaration pursuant to 28 U.S.C. § 1746 to be included with my reply to defendant's opposition to my motion to quash filed *pro se*. This is in further supplement to the letter sent to the Court and counsel by attorney Christopher Adams, who assisted me *pro bono* in connection with the subpoena, as well as my initial declaration.

2.  Defendant repeatedly lies to the Court in suggesting that I am a CPA. I am not a CPA, nor have I ever been. When I applied to Eagan Avenatti, Mr. Avenatti interviewed me personally, so he knew my qualification. I was hired as an entry level bookkeeper, also taking on low-level administrative tasks such as ordering supplies and helping answer phones. I graduated from California State University at Long Beach in May 2009 with a bachelor's degree in business administration, and immediately began working for the firm in July 2009. This was my very first "office job." My employment was the most basic, entry level position at the firm, and my starting salary was $30,000 annually.

3.  I did not have an "Essential Role" at Eagan Avenatti. My role was simply to take some low-level work from Judy Regnier's plate, allowing her to focus on more important things. I was so non-essential in fact that when I left, the firm did not bother to replace me. When I left, my tasks were simply dispersed back between Judy and Hillary, the receptionist.

4.  Also, I have no unique perspective or knowledge of the systems, how they worked, and entry of these costs and expenses as it relates to "Johnson" and "Barela." In fact, I have no recollection of any details of either matter and would have to speculate about both.

5. Judy Regnier, one of the employees whose workload I eased when I started there, assumed most if not all of my tasks after I left the firm. Ms. Regnier possesses the same knowledge as I would have, albeit closer in time, because she handled this after I left. Anything I could add would be duplicative or cumulative of Ms. Regnier.

6. The simple fact remains that I do not have the ability to obtain childcare in my absence. The arrogance that is contained in the opposition is offensive. The defendant seems to think I can snap my fingers and find a stranger to leave my three young children with so that I can travel across the country to participate in this charade. The fact is that my family moved to Texas shortly before the pandemic began. Because of the pandemic and ensuing lockdown, I never secured any local childcare – I didn't need it nor did I want anyone to compromise the health of my children. Securing suitable, vaccinated childcare is not as simple as having the means to pay for it.

7. The Defendant also conveniently ignores the issue surrounding my eight-month-old and her nursing schedule. Sadie, my youngest, has always been a bit "fussy" because she has never, nor will she, even take a bottle. She exclusively nurses and eats about every two hours. Because of the pandemic and the lack of a need to go anywhere, I never really tried to break Sadie of this, nor have I built up a milk supply because I wouldn't need it. Even if she would take a bottle, I have no milk supply to leave with her. If I am required to come to Court and testify, Sadie would have to come with me.

8. Offering to pay for my flight and transportation alone does not alleviate the child related issues. I can't imagine a scenario where I am in court not holding my baby while I testify. I certainly am not willing, nor should I be required to leave her with a stranger while I am asked

questions that I would have to speculate about. These are the realities that the Defendant conveniently ignores.

9. Mr. Avenatti also is lying about my husband and my home. He states in his unsworn opposition that "Ms. Witos and her husband moved to a suburb of Dallas, Texas and purchased a 4,471 square foot home on a quarter acre, complete with a home theater and a mother in-law suite." This is a lie. If I have a mother-in-law suite, I'd love to know where it is. Moreover, the "home theater" that he describes is merely a room with a television in it. The Court should note what Defendant failed to say as well. Although he provided photographs and web descriptions of my home, he omitted the substantial mortgage which is no doubt recorded and a matter of public record.

10. My husband is a very hard worker in a very demanding job. He is not, however, a Fortune 500 Executive as Defendant suggests. My husband, Tim, is a Director of Information Security in the Risk Management department. Again, what Mr. Avenatti fails to address here is very telling. He declines to cite any legal authority for the position that my husband is obligated to fund HIS defense costs.

11. Finally, and equally important, I would be speculating about the Johnson and Barela matters. I have no knowledge regarding either. I have no recollection of details of either matter, and Mr. Avenatti even acknowledges that the settlement in the Johnson matter in the year AFTER I left the firm. My testimony on either matter would lack any personal knowledge.

I declare under penalty of perjury the foregoing is true and correct.

Dated: August 23, 2021            *s/ Morgan Witos*
                                  MORGAN WITOS