UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
                   Plaintiff,  )
     vs.                       )
                               )   SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,         )
                   Defendant.  )TRIAL DAY 21, VOL. 1
-----------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

August 17, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

1 | APPEARANCES OF COUNSEL:

2 | For the Plaintiff:

3 | NICOLA T. HANNA
United States Attorney
4 | BRANDON D. FOX
Assistant United States Attorney
5 | Chief, Criminal Division
ALEXANDER WYMAN
6 | Assistant United States Attorney
Major Frauds Section
7 | 1100 United States Courthouse
312 North Spring Street
8 | Los Angeles, CA  90012
(213) 894-6683
9 |
BRETT A. SAGEL
10 | Assistant United States Attorney
Ronald Reagan Federal Building
11 | 411 West Fourth Street, Suite 8000
Santa Ana, CA  92701
12 | (714) 338-3598

13 | For the Defendant:

14 | MICHAEL JOHN AVENATTI, PRO SE

15 | H. DEAN STEWARD, ADVISORY COUNSEL
H. DEAN STEWARD LAW OFFICES
16 | 107 Avenida Miramar, Suite C
San Clemente, CA  92672
17 | (949) 481-4900

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

```
 1
 2                         I-N-D-E-X
 3
 4   PLAINTIFF'S
     WITNESSES:           DIRECT   CROSS   REDIRECT   RECROSS
 5
     (None)
 6
     PLAINTIFF'S
 7   EXHIBITS:                             MARKED     RECEIVED
 8   (None)
 9   DEFENSE
     WITNESSES:       DIRECT    CROSS    REDIRECT   RECROSS
10
     EVAN JENNESS      44       49         55
11   JOSEPH VARANI     57
     CARLOS COLORADO   78       93         96
12   JOHN ARDEN        98
13   DEFENSE
     EXHIBITS:                            MARKED     RECEIVED
14
     (None)
15
16
17
18
19
20
21
22
23
24
25
```

4

SANTA ANA, CALIFORNIA; TUESDAY, AUGUST 17, 2021; 8:02 A.M.

(Jury not present)

08:02   THE CLERK:  Item 1, SACR-19-00061-JVS, United

08:02   States of America versus Michael John Avenatti.

08:02   MR. SAGEL:  Good morning, Your Honor.  Brett Sagel

08:02   and Alexander Wyman on behalf of the United States.

08:02   THE COURT:  Good morning.

08:02   MR. AVENATTI:  Good morning, Your Honor.  Michael

08:02   Avenatti present with advisory counsel, Mr. Steward, as well

08:02   as Ms. Cummings-Cefali and Ms. Hernandez.

08:02   THE COURT:  Good morning.

08:02   We have a number of matters to take up.  I would

08:02   like to begin with Jacqueline Rose's motion to quash.

08:02   Ms. Sager.

08:02   MS. SAGER:  Thank you, Your Honor.  I appreciate

08:02   you hearing us on such short notice.  We tried to give the

08:02   Court as much information as we can in our papers about what

08:02   this is concerning.

08:02   THE COURT:  Take your time.

08:02   MS. SAGER:  The Court really needs to go no

08:02   further than just to deal with the service issues, but we've

08:03   presented several reasons why the subpoena directed to

08:03   Ms. Rose was improper.

08:03   Among other things, because under Rule 17 it would

08:03   be burdensome and a process to require a mother of a

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:03  1   one-year-old to travel cross country on less than a week's
08:03  2   notice, in addition to which the information that's being
08:03  3   proffered by Mr. Avenatti is barely even relevant to this
08:03  4   case based on what I've read in the transcript and
08:03  5   Mr. Avenatti's own presentation, let alone something that
08:03  6   would require that kind of extraordinary effort on behalf of
08:03  7   a nonparty witness.
08:03  8          If the Court needs to reach it, there's a
08:03  9   constitutional issue here that we think justifies having
08:03  10  Ms. Rose not being the witness of choice for Mr. Avenatti
08:03  11  when there's plainly many other alternatives for him to get
08:03  12  the very information of which he is speaking which we've
08:03  13  provided to him and the Court through videotapes that
08:03  14  establish when and where he was on CNN's programming on the
08:04  15  relevant case at issue.
08:04  16         I'm happy to answer any questions the Court has in
08:04  17  response to Mr. Avenatti.  We think we have given the Court
08:04  18  more than ample reason to quash the subpoena.
08:04  19         THE COURT:  The videos that you attached as
08:04  20  Exhibits A and C that put him in New York City, I assume it
08:04  21  was broadcast from New York City.
08:04  22         MS. SAGER:  Correct, Your Honor.  And the
08:04  23  declaration of the custodial witness indicates they were
08:04  24  live from the CNN studios.
08:04  25         THE COURT:  And that puts him in New York City on

08:04  1   April 30th, May 1st --

08:04  2        MS. SAGER:  And May 2nd, correct.  So April 30th,

08:04  3   May 1st, and May 2nd.

08:04  4        THE COURT:  Well, maybe it's just mislabeled, but

08:04  5   Exhibit C says May 30th.

08:04  6        MS. SAGER:  I apologize, Your Honor.  It's April

08:04  7   30th, May 1st, and May 2nd.

08:04  8        THE COURT:  Okay.

08:04  9        MS. SAGER:  The witness had asked for May 1st, so

08:04  10  we were trying to get dates on either side of that in case

08:04  11  there was an issue about one day or the other.  When we

08:04  12  spoke initially, Mr. Avenatti said he believed the relevant

08:04  13  day was May 1st.  It might have been May 2nd.  So we were

08:05  14  trying to sort of book-end those dates.

08:05  15        I would add, Your Honor, because that's

08:05  16  information that is broadcast, we don't have the same

08:05  17  constitutional issues that we do with having a witness

08:05  18  testify about matters which were not published by CNN or by

08:05  19  the witness.  It's broadcast information which we can freely

08:05  20  share.

08:05  21        THE COURT:  Okay.  Thank you.

08:05  22        Mr. Avenatti.

08:05  23        MR. AVENATTI:  Your Honor, a number of points.

08:05  24  First of all, I have both paralegals here present, and

08:05  25  they're prepared to provide testimony to Your Honor if need

08:05  1   be under oath relating to the services of the subpoena.

08:05  2        It was made clear to Ms. Rose that we were

08:05  3   interested in serving her with a subpoena.  We had a very

08:05  4   pleasant conversation with her.  She voiced no opposition.

08:05  5   She agreed to accept service of the subpoena via e-mail.

08:05  6   And both paralegals will testify to that if necessary.

08:05  7        THE COURT:  Was she tendered the appropriate fee?

08:05  8        MR. AVENATTI:  She was not tendered the

08:05  9   appropriate fee for the reason as outlined in my papers,

08:05  10  Your Honor, because I was advised by advisory counsel that

08:06  11  the fee was not required due to my CJA status.  But in any

08:06  12  event, she hasn't traveled anywhere yet.

08:06  13       We're happy to -- if we have to re-serve her and

08:06  14  tender the fee, we're happy to do that.  But that should not

08:06  15  be a reason to quash the subpoena.

08:06  16       THE COURT:  Have you exhausted alternative sources

08:06  17  to place you in New York City on April 30 through May 2,

08:06  18  2018?

08:06  19       MR. AVENATTI:  I have, Your Honor, I mean, you

08:06  20  know, short of me testifying on the stand, and I should not

08:06  21  be put in that position to have to do that.  I have

08:06  22  exhausted alternative means and methods.  I have looked into

08:06  23  other ways that I could show that I was actually in New York

08:06  24  City during those days, and this is unfortunately the only

08:06  25  way that I can figure out how to do that.

08:06  1          I have asked the government to stipulate to these
08:06  2     facts.  I don't think there is any question that I was in
08:06  3     New York City at that time and could not have drafted the
08:07  4     e-mail.
08:07  5          THE COURT:  Why don't the CDs prove that?
08:07  6          MR. AVENATTI:  I'm sorry?
08:07  7          THE COURT:  Why don't the CDs which CNN has
08:07  8     attached to its moving papers prove that?
08:07  9          MR. AVENATTI:  Well, the CDs were not provided
08:07  10    until I received the moving papers, number one, Your Honor.
08:07  11    Number two, here's the problem.  Even though I have a
08:07  12    custodial declaration from CNN, number one, I don't know if
08:07  13    the government is going to object to the admission of the
08:07  14    evidence.  So that's number one.
08:07  15          Number two, even assuming they do not, how am I
08:07  16    supposed to take that declaration and move those exhibits
08:07  17    into evidence without a witness, without a foundational
08:07  18    witness?
08:07  19          So at a minimum I would need a custodial witness
08:07  20    in order to do that.  And what I have told counsel for CNN
08:07  21    is as follows, Your Honor.  I said --
08:07  22          THE COURT:  Why doesn't Rule 902 benefit you just
08:07  23    as it benefits the government in regard to the bank records?
08:07  24          MR. AVENATTI:  Well, they still had to have a
08:07  25    witness in order to move --

08:07  1          THE COURT:  They didn't have a live witness.  They
08:07  2   had a declaration.
08:07  3          MR. AVENATTI:  Well, no.  They actually moved the
08:08  4   records in through a live witness relying on the
08:08  5   declaration, Your Honor.  What they did was they had a
08:08  6   witness on the stand, and they sought to question the
08:08  7   witness about the records, and they then moved the records
08:08  8   in by way of the witness.
08:08  9          THE COURT:  Why doesn't 902 allow you to offer the
08:08  10  declaration and move the exhibits in?
08:08  11         MR. AVENATTI:  Well, my understanding was that it
08:08  12  does not, Your Honor.
08:08  13         THE COURT:  What's the government's position on
08:08  14  that?
08:08  15         MR. SAGEL:  On just that, not on any other --
08:08  16         THE COURT:  Right.
08:08  17         MR. SAGEL:  902(11), if it's a proper
08:08  18  certification, allows the evidence to come in.  That's part
08:08  19  of the reason we did a motion in-limine with Your Honor in
08:08  20  advance of trial.  A lot of times the documents just come in
08:08  21  and they're already part of the record.
08:08  22         THE COURT:  Right.
08:08  23         MR. AVENATTI:  Your Honor, what I informed --
08:08  24         THE COURT:  Doesn't that give you comfort to rely
08:08  25  on the declaration of the custodian to simply move these

08:08    1    disks in?

08:08    2             MR. AVENATTI:  Perhaps, Your Honor.

08:08    3             THE COURT:  What's the qualification?

08:09    4             MR. AVENATTI:  Well, Your Honor, the qualification

08:09    5    is as follows basically, because I want the Court to

08:09    6    understand exactly what happened here.  I have no interest

08:09    7    in inconveniencing Ms. Rose or any other witness in this

08:09    8    case, none whatsoever.

08:09    9             What I told counsel for CNN was as follows:  Get

08:09   10    me a witness.  Get me a custodial witness.  Get me a witness

08:09   11    here locally in Los Angeles.  They have a major bureau here

08:09   12    in Los Angeles.  Get me a witness that I can call to the

08:09   13    stand and who can attest to the fact that I was in the

08:09   14    studio in New York on these dates and we're done.  It's that

08:09   15    simple.

08:09   16             Instead of doing that, we now have this motion to

08:09   17    quash a subpoena.  I offered to take basically any qualified

08:09   18    witness from CNN in order to put this evidence in the record

08:09   19    before the jury.  And I think, as I outlined in my papers,

08:09   20    this is an important point, because Ms. Regnier lied to four

08:09   21    individuals from the government about this alleged creation

08:10   22    of the e-mail.  It was impossible for it to have happened.

08:10   23             I'm going to show that the government knew that

08:10   24    before they called her to the stand.  They knew she had lied

08:10   25    about it and they still called her, and they still asked

08:10  1   questions about it.  So this is not some minor point, Your
08:10  2   Honor.
08:10  3          I need to be able to show that in fact it was an
08:10  4   impossibility for me to have done what Ms. Regnier said that
08:10  5   I did because I was across the country at the time.  That's
08:10  6   what this is about.
08:10  7          To the extent that Ms. Rose is inconvenienced or
08:10  8   it's inconvenient for Mr. Rose, I should be able to subpoena
08:10  9   a custodian of records for CNN, a live witness to put this
08:10  10  before the jury.  I don't think I can just drop evidence in
08:10  11  the record.
08:10  12         THE COURT:  Sir, you try and find out and you'll
08:10  13  find that the Court tends to rule consistently by the given
08:10  14  point of law.
08:10  15         MR. AVENATTI:  I'm not suggesting otherwise, Your
08:10  16  Honor.  I don't think I have suggested otherwise, but they
08:10  17  haven't just admitted records en masse before the jury.
08:11  18  They've done it through witnesses, which makes sense as it
08:11  19  relates to the presentation of evidence.  What am I supposed
08:11  20  to do?  Just drop these DVDs in the record and then argue it
08:11  21  in closing?
08:11  22         THE COURT:  Sir, you are your own counsel.
08:11  23         MR. AVENATTI:  Agreed, Your Honor, but this is the
08:11  24  point here.  The point is I have a right to present my case,
08:11  25  and I have a right to do that through witnesses even if

08:11   1   they're up and down in ten minutes.  There is utility and
08:11   2   there's purpose behind that.
08:11   3         The government was permitted to do that.  I should
08:11   4   be permitted to do it through a witness, put the evidence in
08:11   5   through a witness.  Frankly, Your Honor, I don't know why
08:11   6   this --
08:11   7         THE COURT:  Sir, I appreciate your argument on
08:11   8   that point.  Are there any other points you would like to
08:11   9   make?
08:11  10         MR. AVENATTI:  Beyond what I have included in my
08:11  11   papers, I would just note as follows, Your Honor.  No
08:11  12   witness ever wants to testify in a criminal matter.  I mean,
08:11  13   this is a federal criminal matter, a serious felony criminal
08:12  14   matter.
08:12  15         I don't want to inconvenience Ms. Rose, but I'm
08:12  16   entitled to a live witness.  And I understand that it may be
08:12  17   burdensome for her, and I feel for her.  Again, I don't want
08:12  18   to inconvenience anybody, but I'm entitled to put on my
08:12  19   case.  And I need to be able to put on this evidence because
08:12  20   it's critical as it relates to that e-mail exchange, and
08:12  21   it's critical as it relates to Ms. Regnier's testimony
08:12  22   before this jury, Your Honor.
08:12  23         So if the Court is inclined to quash the subpoena
08:12  24   relating to Ms. Rose, I think the Court should deny the
08:12  25   relief relating to my ability to serve any other CNN

08:12    1    witness.  Let me bring in a custodian witness who can

08:12    2    testify to this before the jury and put the evidence in

08:12    3    before the jury.  And that would be my request.

08:12    4            THE COURT:  Thank you.

08:12    5            Ms. Sager.

08:12    6            MS. SAGER:  It's notable that Mr. Avenatti did not

08:12    7    say during the conversation with Ms. Rose that anyone

08:12    8    explained to her what a subpoena was, what it was that they

08:12    9    were asking her to waive, whether they were demanding that

08:13   10    she get on a plane and come out to California in four days,

08:13   11    because she wasn't told any of those things.

08:13   12            Nor was she paid a witness fee, which the law does

08:13   13    require.  Even for CJA, if the defendant wanted to get

08:13   14    around that, he needed to make an ex parte motion to the

08:13   15    Court under 17(b) and get an order.  He didn't do that

08:13   16    apparently.  He just issued a subpoena on his own by

08:13   17    e-mailing it to the witness.  That's not valid service.

08:13   18            But whether we could or couldn't have a custodial

08:13   19    witness here is really beside the point.  He didn't subpoena

08:13   20    CNN.  We were trying to assist the defense and the Court and

08:13   21    the government by providing what defendant said he needed,

08:13   22    which was evidence that he had been in New York on set at a

08:13   23    particular point in time, which we have provided.

08:13   24            And it sounds like the government does not object

08:13   25    to having this declaration and the DVDs presented to the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:13   1   jury.  Mr. Avenatti may want theater, but that doesn't
08:13   2   justify their unreasonable and oppressive burden of a
08:13   3   subpoena making a witness cross the country.
08:14   4          And even a custodial witness, as I explained to
08:14   5   Mr. Avenatti, is in Atlanta, Georgia.  That's where CNN is
08:14   6   based.  That's where they keep their records.  That's where
08:14   7   we had someone available to review many hours of videotape
08:14   8   to try to find one that showed Mr. Avenatti's live
08:14   9   appearance on set in New York on these dates.
08:14  10          What he's now asking of the Court is for
08:14  11   permission to make CNN go through that process again.  He
08:14  12   didn't say that last week.  He didn't say that when we filed
08:14  13   our papers, and it's not a reasonable request for the Court
08:14  14   to entertain now.
08:14  15          As to Ms. Rose's subpoena, that's something the
08:14  16   Court should plainly quash for all the reasons we put in our
08:14  17   papers.  Again, I'm happy to answer any questions the Court
08:14  18   may have?
08:14  19          THE COURT:  No.  Thank you.
08:14  20          I'm going to quash the subpoena.  One thing that's
08:14  21   not alluded to by either side is the fact it's a declaration
08:14  22   before me from Ms. Rose indicating that she had no
08:14  23   recollection of any of this and had no substantive testimony
08:14  24   to offer.  No one has suggested that that declaration is not
08:15  25   credible, and it seems to me that she does not personally

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:15   1   have relevant evidence.

08:15   2       I find that the conditions laid down in Shoen v.

08:15   3   Shoen, 5 F.3d 1289-1292 (Ninth Circuit 1993) have not been

08:15   4   met.  There clearly are alternative sources to prove the

08:15   5   point that Mr. Avenatti wants to prove, and indeed CNN has

08:15   6   presented him with what would appear to me a sufficient

08:15   7   declaration under 902 and three disks establishing his

08:15   8   presence on a CNN program on April 30, May 1, and May 2.

08:15   9       Thus, not only has he not exhausted alternative

08:15   10  sources, he chooses to ignore what would appear to be an

08:15   11  entirely sufficient alternative set of sources.

08:16   12      Given that the witness has no information per her

08:16   13  declaration, I also find under Shoen that such evidence is

08:16   14  not clearly relevant to an important issue.  Beyond that, I

08:16   15  find there will be extreme hardship to travel on short

08:16   16  notice with a one-year-old child.

08:16   17      For all those reasons I quash the subpoena.

08:16   18      MS. SAGER:  Thank you, Your Honor.

08:16   19      THE COURT:  Thank you.

08:16   20      MR. AVENATTI:  Your Honor, at this time I move

08:16   21  into evidence the three DVDs in reliance on the custodial

08:16   22  declaration.

08:16   23      THE COURT:  Well, give them an exhibit number.

08:16   24  Are you prepared to do that in front of the jury?

08:16   25      MR. AVENATTI:  I would prefer to do it in front of

08:16    1    the jury.

08:16    2              THE COURT:  Well, let's do it in front of the

08:16    3    jury.

08:16    4              MR. AVENATTI:  That's fine.  Thank you.

08:16    5              MR. SAGEL:  Just for clarification -- I'm not

08:16    6    going to belabor the point, I guess I would say.  We

08:17    7    actually provided the defendant with evidence that has been

08:17    8    in his possession for years, namely, his cell phone records

08:17    9    that show his cell site data and where he was.  We told him

08:17   10    where he was on those various days.  He has had it.

08:17   11              This subpoena was not necessary for him to

08:17   12    establish.  We told him which cities he was in on which

08:17   13    dates, including on May 4th when the wire was actually made.

08:17   14    He also was still not in California.

08:17   15              So this information was provided to Mr. Avenatti

08:17   16    at all times, and he has had it for two years.  So for that.

08:17   17    With regards to these three DVDs and their relevance, we

08:17   18    still would want to make an objection, whether we do it now

08:17   19    or later.

08:17   20              THE COURT:  Later.

08:17   21              MR. SAGEL:  Thank you, Your Honor.

08:17   22              THE COURT:  I would also add that there's

08:17   23    substantial question about the validity of the subpoena

08:17   24    served upon Ms. Rose.

08:17   25              Okay, let's turn now -- there's also a motion to

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:17    1    quash the Evan Carter subpoena.

08:18    2            MR. AVENATTI:  Your Honor, I would ask that the

08:18    3    Evan Carter subpoena issue be delayed until lunch.

08:18    4            THE COURT:  Sir, I'm taking it up now.  We noticed

08:18    5    it for 8:00.

08:18    6            MR. AVENATTI:  I was not aware of it being noticed

08:18    7    for 8:00.  No one informed me that it was noticed for 8:00,

08:18    8    and it was filed yesterday afternoon, sir.

08:18    9            THE COURT:  Ms. Marino is here and we're going to

08:18   10    take it up.

08:18   11            MR. AVENATTI:  There was no notice provided to us,

08:18   12    Your Honor.

08:18   13            THE COURT:  Ms. Marino is here and we're going to

08:18   14    take it up.  The filing was made via ECF, so you clearly got

08:18   15    notice.

08:18   16            Ms. Marino.

08:18   17            MS. MARINO:  Good morning, Your Honor.  Your Honor

08:18   18    has read my moving papers.  I believe they were provided to

08:18   19    Mr. Steward yesterday by e-mail.  I'm prepared to answer any

08:18   20    questions.  I think my moving papers cover our position

08:18   21    rather clearly, Your Honor.

08:18   22            Does the Court have any inquiries that it wants me

08:18   23    to address specifically?

08:18   24            THE COURT:  I will hear you in rebuttal.

08:18   25            MS. MARINO:  Very good, Your Honor.

08:18  1          THE COURT:  Mr. Avenatti.

08:19  2          MR. AVENATTI:  Your Honor, I would have

08:19  3   appreciated the opportunity to submit an opposition to this.

08:19  4   Had I known it was going to be taken up this morning, I

08:19  5   would have done so.  So I would ask for an opportunity to

08:19  6   respond in writing before a determination is made by the

08:19  7   Court.

08:19  8          THE COURT:  I'm going to conditionally quash the

08:19  9   subpoena.

08:19  10          MR. AVENATTI:  Well, I would like to be heard.

08:19  11          THE COURT:  Just a minute.  I'm going to

08:19  12   conditionally quash the subpoena.  I find that service was

08:19  13   improper, and I find that the subpoena itself is overbroad.

08:19  14   And it's not apparent that there are any relevant issues

08:19  15   that Ms. Carter can testify to competently.  That said, I

08:19  16   will reserve until I see your papers.

08:19  17          MR. AVENATTI:  Can I be heard, please?

08:19  18          THE COURT:  Do you want to be heard now, or do you

08:19  19   want to put a paper in?

08:19  20          MR. AVENATTI:  I'd like to be heard briefly, and

08:19  21   then I'd like to file something.

08:19  22          THE COURT:  Proceed.

08:19  23          MR. AVENATTI:  Your Honor, I'm puzzled by the

08:20  24   statement that service was improper.  Counsel agreed to

08:20  25   accept service of the subpoena after Ms. Carter dodged

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:20  1    service for the better part of seven to ten days.  So there
08:20  2    is no issue as to service.
08:20  3         Counsel contacted Mr. Steward and then
08:20  4    subsequently agreed to accept service.  So any issue that
08:20  5    service was improper I don't think has any basis.  That's
08:20  6    number one.
08:20  7         Number two, Mr. Drum testified at length relating
08:20  8    to the involvement of Ms. Carter, including in connection
08:20  9    with the mock cross-examination, the work that was performed
08:20 10    relating to the summary charts and exhibits that have been
08:20 11    placed before this jury.
08:20 12         She had extensive involvement in this matter in
08:20 13    connection with preparing those exhibits, in connection with
08:20 14    preparing Mr. Drum, in connection with communicating with
08:20 15    the government about the issues that are at the center of
08:21 16    this case.  So I don't know how it can possibly be said that
08:21 17    she doesn't have any relevant information relating to this,
08:21 18    Your Honor.
08:21 19         THE COURT:  Relevant admissible information.
08:21 20         MR. AVENATTI:  And I believe that her
08:21 21    communications with Mr. Drum, for instance, about the work
08:21 22    that he did and they did together, and what documents were
08:21 23    reviewed and not reviewed, I think that's highly relevant
08:21 24    and I think it's highly admissible.  It goes to the heart of
08:21 25    this case.

08:21   1          The idea that somehow this is not relevant, Your

08:21   2   Honor, I don't know how that can possibly be said in light

08:21   3   of Mr. Drum's testimony on the stand.  When I made the

08:21   4   comment to counsel about I had a hunch that Ms. Carter had

08:21   5   done most of the work, that was before I even heard the

08:21   6   testimony from Mr. Drum.

08:21   7          The testimony from Mr. Drum established that my

08:21   8   hunch was sufficiently correct.  Ms. Carter had extensive

08:21   9   involvement in the work in this case, including

08:22   10  communicating with the investigators about the expense

08:22   11  issues, the revenue issues, the settlements, et cetera.  And

08:22   12  I should be permitted to call her in my case-in-chief.

08:22   13         MS. MARINO:  Your Honor, if I can briefly respond.

08:22   14  Counsel is correct on one singular point, and that is that I

08:22   15  did accept service.  He is incorrect that Ms. Carter

08:22   16  attempted to dodge service.  She received some e-mails.

08:22   17  E-mail is not proper service, so there is clearly no dodging

08:22   18  of service.  And I accepted service as soon as I was

08:22   19  contacted.

08:22   20         In terms of the appropriateness of the subpoena,

08:22   21  Your Honor, as we said in our moving papers, Ms. Carter is

08:22   22  certainly not percipient to anything that happened in this

08:22   23  case, and she is not a designated expert.

08:22   24         She is nothing more than a mid-level associate who

08:23   25  assisted Mr. Drum in his preparation for testimony.  That's

08:23   1   it.  Her communications are by and large limited to
08:23   2   scheduling.  So I don't see that she has any relevance or
08:23   3   admissible testimony to offer in this case, Your Honor.
08:23   4            I suppose if Mr. Avenatti could point to some
08:23   5   point of impeachment, but he has not done that.  So other
08:23   6   than that, there is really no reason for her testimony.  And
08:23   7   I would add, Your Honor, she lives in Colorado.  So this
08:23   8   kind of notice of, you know, my accepting a subpoena on
08:23   9   Thursday and -- you know, she is an out-of-state witness.
08:23  10   No travel arrangements were attempted.
08:23  11            THE COURT:  There is a family issue; is there not?
08:23  12            MS. MARINO:  Ms. Carter does not have family
08:23  13   issues that I'm aware of, Your Honor.
08:23  14            THE COURT:  Okay.
08:23  15            When can you get your brief in, Mr. Avenatti?
08:24  16            MR. AVENATTI:  Your Honor, I can have it in by
08:24  17   9:00 a.m. tomorrow.
08:24  18            THE COURT:  Can you get any response in by the end
08:24  19   of the day tomorrow, Ms. Marino?
08:24  20            MS. MARINO:  I can, Your Honor.
08:24  21            THE COURT:  Okay.
08:24  22            MS. MARINO:  And then would the Court be ruling on
08:24  23   the papers at that point, Your Honor?
08:24  24            THE COURT:  If further argument is appropriate, I
08:24  25   will inform you tomorrow.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:24    1              MS. MARINO:  I appreciate that, Your Honor.  I'm

08:24    2    scheduled to be on a plane Thursday morning, so my associate

08:24    3    could cover this hearing if that's necessary -- Cody

08:24    4    Elliott.

08:24    5              THE COURT:  Okay.  Thank you.

08:24    6              MS. MARINO:   Thank you.

08:24    7              THE COURT:  At Docket 679 Mr. Avenatti moved to

08:24    8    strike the testimony of Alexis Gardner or move for a

08:24    9    mistrial.  The government replied at Docket 707.

08:25   10              I reviewed the extensive attachments to the moving

08:25   11    papers and specifically Exhibit B, which is I guess a video

08:25   12    of scrolling tweets made by Ms. Cuniff.  I would be happy to

08:25   13    hear you on that motion at this time, Mr. Avenatti.

08:25   14              MR. AVENATTI:  Your Honor, I'm not going to repeat

08:25   15    what's in the papers.  I'll make a couple quick points.

08:25   16              Your Honor mentioned, I think it was last week,

08:25   17    that we didn't know which of the tweets Ms. Gardner had

08:25   18    viewed.  The reason why we don't know that is because the

08:25   19    Court denied my request to conduct questioning of

08:25   20    Ms. Gardner at the time outside the presence of the jury.

08:26   21              I made that specific request that she be

08:26   22    questioned outside the presence of the jury, and the Court

08:26   23    denied it and insisted that I cross-examine her in the

08:26   24    presence of the jury using social media posts which we have

08:26   25    gone to great lengths in this trial to avoid the jury

08:26  1    seeing.  It would have defeated the entire purpose of that
08:26  2    instruction.
08:26  3              THE COURT:  Is there anything in Robertson, United
08:26  4    States versus Robertson, 895 F.3d 1206-1219 (Ninth Circuit
08:26  5    2018), that would support your request for cross-examination
08:26  6    outside the presence of the jury?
08:26  7              MR. AVENATTI:  No, because it has no applicability
08:26  8    to this situation.
08:26  9              THE COURT:  Okay.
08:26  10             MR. AVENATTI:  And the reason is as follows, Your
08:26  11   Honor.  When you have a witness who has sat in the courtroom
08:27  12   in violation of 615 and heard the testimony --
08:27  13             THE COURT:  Which isn't this case.
08:27  14             MR. AVENATTI:  I know that.  If I could just be
08:27  15   provided 30 seconds, Your Honor, please.  When you have a
08:27  16   witness who has sat in the courtroom and heard actual
08:27  17   testimony or read a transcript, it makes sense to then be
08:27  18   able to cross-examine a witness about that in front of the
08:27  19   jury.  Why?  Because the jury itself heard the testimony.
08:27  20   The jury is already aware of what's in the transcript, so
08:27  21   there is no prejudice or no potential prejudice by
08:27  22   conducting that examination.
08:27  23             That's not this situation.  This situation is you
08:27  24   have a witness who is reading a group of tweets from a
08:27  25   biased reporter that are not accurate generally, okay, in

08:27  1    many ways.  And to then force the defendant to cross-examine

08:28  2    the witness about tweets that the jury is not supposed to be

08:28  3    reading makes no sense.

08:28  4                It opens -- basically it opens a Pandora's box as

08:28  5    it relates to the social media posts and all of the things

08:28  6    that the jury is not supposed to be seeing.  How is one to

08:28  7    conduct a cross-examination utilizing tweets that we have

08:28  8    told these folks they're not supposed to see?

08:28  9                It's an impossibility, Your Honor, and that's why

08:28  10   I asked to do it outside the presence of the jury.  And that

08:28  11   was denied.  At a minimum that inquiry should have been made

08:28  12   at that time outside of the presence of the jury, and she

08:28  13   should have been instructed frankly -- the government has

08:28  14   been aware of Ms. Cuniff's role in this trial for weeks.

08:28  15               They talk to her.  They know what she is doing.

08:28  16   The government should have been instructing their witnesses

08:29  17   not to follow the tweet storm relating to what supposedly

08:29  18   witnesses are testifying to.  They should have instructed

08:29  19   their witnesses not to do that.  They did not do that.

08:29  20               Ms. Gardner purposely availed herself of social

08:29  21   media posts reflecting what other witnesses would testify to

08:29  22   in the trial.  And for the reasons in our papers and for

08:29  23   each of those reasons, Your Honor, her testimony should be

08:29  24   struck.

08:29  25               THE COURT:  Would the government like to be heard?

08:29    1          MR. SAGEL:  I can respond if necessary, or I can

08:29    2   submit on our papers.  If there is anything Your Honor wants

08:29    3   me to respond to, I can.

08:29    4          THE COURT:  Well, you documented the possible

08:29    5   exposure that she had to the e-mails during the course of

08:29    6   the trial.  Anything further you want to make on that point?

08:29    7          MR. SAGEL:  No, Your Honor.  No.  I can submit

08:29    8   unless there is something in response to anything that was

08:29    9   just said or any other questions Your Honor has.

08:30   10          THE COURT:  Okay.

08:30   11          Anything further, Mr. Avenatti?

08:30   12          MR. AVENATTI:  No, sir.

08:30   13          THE COURT:  I deny the motion.  First of all, I

08:30   14   find that Ms. Cuniff's tweets are not the equivalent of

08:30   15   trial transcripts.  There are ongoing snippets, editorial

08:30   16   comments, and other things that run through those.

08:30   17          I did not read all of the tweets in Exhibit B, but

08:30   18   I read a fair sample to understand what's there.  Secondly,

08:30   19   there is a substantial question as to exactly what

08:30   20   Ms. Gardner was exposed to.

08:30   21          The government quotes her testimony from August 3,

08:30   22   starting with when she was asked if she had been following

08:31   23   the case over the last two weeks.  She said:

08:31   24          "A    Yes and no.  It's a bit stressful.  I

08:31   25      try to stay away."

08:31   1          That's the August 3 morning transcript at page 25.
08:31   2   So it's not clear to me that she had blanket exposure to
08:31   3   Ms. Cuniff's tweets.  In any event, I find that the tweets
08:31   4   themselves are not the equivalent of trial transcripts such
08:31   5   that a remedy under 615 should be invoked.  The motion is
08:31   6   denied.
08:32   7          The government provided a response to
08:32   8   Mr. Avenatti's motion at Docket 690, with their response at
08:32   9   705 dealing with Robert Amenta.
08:32   10         Mr. Avenatti, you indicated that you were going to
08:32   11  put in a response to the government's position telling me
08:32   12  why the one e-mail that seemed to have some substantive
08:32   13  information was critical.  In that e-mail, you provide a
08:32   14  corrected I guess wire transfer.
08:32   15         It's at page -- page 18 of Docket No. 690.  Do you
08:32   16  want an opportunity to do that?
08:33   17         MR. AVENATTI:  Your Honor, over the weekend we
08:33   18  filed at Docket 705 my motion for mistrial and to strike
08:33   19  both Mr. Amenta's testimony and that of Mr. Drum due to the
08:33   20  Jencks Act violations.
08:33   21         THE COURT:  I don't recall you addressing any
08:33   22  specific point when I queried you as to whether there was
08:33   23  significant substance to the correction of the IMAD numbers.
08:33   24         MR. AVENATTI:  Your Honor, I'm happy to file
08:33   25  something by --

08:33  1         THE COURT:  I briefly reviewed that, but I don't
08:33  2    recall addressing Mr. Amenta's testimony specifically and
08:33  3    your representation that their IMAD number was significant.
08:33  4         MR. AVENATTI:  Your Honor, I'm happy to submit an
08:33  5    additional brief this evening addressing that specific
08:34  6    point.  I think I touched on it within 705, but I would like
08:34  7    the opportunity to file something specific on that.
08:34  8         THE COURT:  That's fine.
08:34  9         MR. AVENATTI:  Thank you.
08:34  10        THE COURT:  I have a number of filings seeking to
08:34  11   strike John Drum's testimony and/or declare a mistrial.  I
08:34  12   conducted a brief in-camera hearing with the government
08:34  13   yesterday.  The government provided in camera a filing of
08:34  14   about 490 pages.  Having reviewed it, I concluded that there
08:34  15   was no need to have that document remain in camera, and I
08:34  16   directed that service be made on Mr. Avenatti.
08:34  17        So before I rule on the joint motions, I would
08:34  18   like to provide you an opportunity to respond to the
08:35  19   government's filing.
08:35  20        MR. AVENATTI:  So, Your Honor, I was provided a
08:35  21   copy of the government's filing yesterday afternoon.
08:35  22        THE COURT:  I understand.
08:35  23        MR. AVENATTI:  And I was told that that was
08:35  24   pursuant to an order of the Court.
08:35  25        THE COURT:  Correct.

08:35   1              MR. AVENATTI:   There was no written order of the

08:35   2    Court.  I noticed on the sealing request from the government

08:35   3    that it referenced an oral order.

08:35   4              THE COURT:  Correct.

08:35   5              MR. AVENATTI:   We then inquired of Mr. Wyman

08:35   6    yesterday evening as to whether --

08:35   7              THE COURT:  I believe it's also in the minutes,

08:35   8    although I haven't looked at the minutes.

08:35   9              MR. AVENATTI:   Okay.  We inquired of Mr. Wyman as

08:35   10   to whether there had been a hearing.  We didn't get a

08:35   11   response back.  So we had no notice.

08:35   12             THE COURT:  And appropriately so.  The Court

08:35   13   conducted an in-camera inquiry to determine whether those

08:35   14   materials should be provided to you.  Now, if you would like

08:36   15   to put in a response to that, I'm prepared to provide you a

08:36   16   reasonable amount of time to do that.

08:36   17             MR. AVENATTI:   I would like an opportunity to

08:36   18   provide a response to what the government filed in camera

08:36   19   which Your Honor then ordered to be provided to us.  Among

08:36   20   other things, that's an advocacy piece.  It's not a proper

08:36   21   in-camera filing in my view, and it raises a number of

08:36   22   concerns.

08:36   23             The first concern I have is about the other

08:36   24   in-camera filings that have been provided to the Court.  If

08:36   25   they are similar advocacy pieces, that is not appropriate in

08:36  1   my view.  And if they include argument, those should be

08:36  2   provided to the defense so that we can respond.

08:36  3          I know there has been other in-camera filings.

08:36  4   And if they look like what we got last night or late

08:36  5   yesterday, I should say, that's not appropriate.  When the

08:36  6   government is asked to submit documents to the Court, the

08:37  7   government should just be submitting documents, not advocacy

08:37  8   pieces, not explanatory pieces, not anything else.  Not

08:37  9   briefing.

08:37  10          THE COURT:  Sir, that's why I stopped at a brief

08:37  11  in-camera hearing where no substantive issues were taken up.

08:37  12          MR. AVENATTI:  Well, Your Honor, I would make the

08:37  13  following request.  I would like a transcript of the hearing

08:37  14  that took place yesterday relating to this issue, number

08:37  15  one.

08:37  16          Number two, I believe it was structural error and

08:37  17  a violation of Rule 43 and the Sixth Amendment and my

08:37  18  constitutional rights for the Court in the middle of the

08:37  19  trial to have an in-camera, unnoticed hearing with the

08:37  20  government alone without any notice to me as the defendant,

08:37  21  without any opportunity to object to it, completely out of

08:37  22  my presence.

08:37  23          I believe that was structural error and a

08:37  24  violation of Rule 43 and my constitutional rights, Your

08:37  25  Honor.  And I think that in and of itself is grounds for a

08:38  1    mistrial, and I'm happy to brief that issue.  It was in the
08:38  2    middle of the trial, so it's a substantive point.  I had no
08:38  3    notice of it.  None.

08:38  4         It came out of left field when I found out there
08:38  5    had been some oral order.  We went to the docket.  There was
08:38  6    no written order.  I thought:  Oral order?  Where did this
08:38  7    oral order come from?  I thought perhaps Your Honor's clerk
08:38  8    had directed the government to do it.

08:38  9         So it is very disturbing to me that on this
08:38  10   critical issue an in-camera hearing would be held outside of
08:38  11   my presence.  I think it's a significant constitutional
08:38  12   violation and a Rule 43 violation.

08:38  13        Separate and apart from that, Your Honor, what has
08:38  14   now been disclosed relating to Mr. Drum -- and we still
08:38  15   don't have everything, and the Court still doesn't have
08:38  16   everything.  That is clear.  But if you look at what has
08:38  17   just been submitted or was submitted to the Court, Your
08:38  18   Honor -- and I can walk through this with Your Honor.  A
08:39  19   number of these e-mails --

08:39  20        THE COURT:  Sir, let's take it up after you have
08:39  21   had an adequate opportunity to reflect on the content of the
08:39  22   government's filing and put your thoughts on paper.

08:39  23        MR. AVENATTI:  Fair enough, Your Honor, because
08:39  24   this material should have been disclosed under Jencks,
08:39  25   Brady, and Giglio.  And there has been representations made

08:39   1    to Your Honor, including on Friday during the lunch break,

08:39   2    that were demonstrably false, demonstrably false, within

08:39   3    minutes of them learning of the substance of these e-mails.

08:39   4            I'm happy to brief it, Your Honor.  I'm happy to

08:39   5    brief the Rule 43 issue.  But if there has been any other

08:39   6    in-camera meetings, communications --

08:39   7            THE COURT:  There are no other in-camera meetings

08:39   8    that I can recollect.

08:39   9            MR. AVENATTI:  Okay.  So I want to note my

08:39   10   objection on the record relating to that.  We will file the

08:39   11   papers.  We're going to move for a mistrial.  I believe it's

08:40   12   structural error.  I'm not going to repeat myself.  And we

08:40   13   will proceed accordingly.

08:40   14           THE COURT:  Very well.

08:40   15           MR. AVENATTI:  And, Your Honor, one other request

08:40   16   that I have in that regard.  We were given notice on ECF

08:40   17   about a written order from Your Honor directing the Clerk's

08:40   18   Office to make exhibits available to the press.

08:40   19           THE COURT:  Right.

08:40   20           MR. AVENATTI:  I would inquire as to whether there

08:40   21   was a request made before that order was issued.  And if so,

08:40   22   was that a request by the Clerk's Office or a request from a

08:40   23   member of the press?

08:40   24           THE COURT:  A member of the press asked to obtain

08:40   25   copies of the exhibits.  Ms. Bredahl talked to the folks

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:40  1   downtown, and it was concluded that the appropriate way to
08:40  2   allow the press access to public materials was to provide
08:40  3   the exhibits through the Clerk's Office downstairs and allow
08:41  4   anybody who wants to request a copy to request a copy and
08:41  5   pay whatever the appropriate fee is.
08:41  6          I believe that the press, just as the press has a
08:41  7   right to be here and the defendant has a right to a public
08:41  8   trial, that extends to the exhibits in the trial unless
08:41  9   they're under seal for some reason or there's some other
08:41 10   privilege reason why the press shouldn't have them.  I
08:41 11   believe that's part of the defendant's right to a public
08:41 12   trial.
08:41 13          MR. AVENATTI:  I will note my objection to that
08:41 14   order.  But more importantly, I will note my objection to
08:41 15   the process.  If there are any requests made to the Court
08:41 16   relating to the providing of exhibits or anything else of
08:41 17   that nature, I believe that again under Rule 43 I have a
08:41 18   right to know about that.
08:41 19          I have a right to know if a request is made by the
08:41 20   press, because generally in my experience those requests are
08:41 21   made in writing to the Court, and then the Court gives an
08:42 22   opportunity to the parties to respond, even if it's a very
08:42 23   brief opportunity, meaning in a matter of hours.
08:42 24          THE COURT:  If you want to tell me right now why I
08:42 25   shouldn't permit the press, as part of guaranteeing a public

08:42  1   trial, why I shouldn't allow the press to copy exhibits that
08:42  2   are in the public domain, I would be happy to hear you.  And
08:42  3   if you tell me why I should rescind that order, I will
08:42  4   certainly consider the reason.
08:42  5       MR. AVENATTI:  Your Honor, I'll be happy to submit
08:42  6   something in writing.
08:42  7       THE COURT:  Should I rescind that order?
08:42  8       MR. AVENATTI:  I'm sorry?
08:42  9       THE COURT:  Should I rescind that order?
08:42  10      MR. AVENATTI:  Yes, I believe you should rescind
08:42  11  that order, Your Honor, because among other things it was
08:42  12  issued without any notice to the defense.  I should have
08:42  13  been apprised of the request, and I should have been
08:42  14  provided an opportunity to object.  I wasn't given an
08:42  15  opportunity to respond.
08:42  16      THE COURT:  Sir, I don't believe you have any
08:42  17  constitutional basis to object to the press having access to
08:42  18  public records any more than you have a right to object to
08:42  19  the press being present in the courtroom.  That's part of
08:43  20  your constitutional right for a public trial.
08:43  21      MR. AVENATTI:  I understand the Court's position
08:43  22  and I'm happy to brief it, Your Honor.
08:43  23      THE COURT:  Fine.
08:43  24      MR. AVENATTI:  And I will note that we raised a
08:43  25  similar issue before the trial as it related to access by

```
08:43   1    the press at sidebars.  So we have raised this concern
08:43   2    previously with the Court.  But at a minimum, Your Honor, I
08:43   3    asked that I be informed of any hearings or any requests or
08:43   4    anything else during the course of the trial.  I think
08:43   5    that's my right to be so informed.
08:43   6             THE COURT:  Well, sir, suppose somebody goes
08:43   7    downstairs right now and asks to take a look at the public
08:43   8    court file and asks the clerk to be able to make a copy.  Is
08:43   9    that impermissible?
08:43  10             MR. AVENATTI:  No, because it's not a request made
08:43  11    to the Court, Your Honor.  That's the issue.
08:43  12             THE COURT:  At Docket 717 Mr. Avenatti filed a
08:43  13    Rule 29 motion at 11:51 last night.
08:44  14             Would the government like an opportunity to
08:44  15    respond in writing?
08:44  16             MR. SAGEL:  Yes, Your Honor.  I guess the answer
08:44  17    is yes with the caveat of I'm not sure what Your Honor's
08:44  18    practice was, whether you were going to defer until the end
08:44  19    of trial and if you want something currently or at the end
08:44  20    of trial.  We will do whatever Your Honor would like.
08:44  21             But, yes, if Your Honor is not putting it off
08:44  22    until the end of trial or deferring it, then we will put
08:44  23    something in writing now.  If not, we will do it at the end
08:44  24    of trial post all evidence in writing.
08:44  25             THE COURT:  I would like to take it up now.  So
```

08:44    1    can you put on file whatever you want by the end of the day,
08:44    2    and we'll take it up prior to the court day tomorrow.
08:44    3            MR. SAGEL:  The end of the day is tough.  It could
08:45    4    be before the morning, but it's going to probably be late
08:45    5    this evening.
08:45    6            THE COURT:  That's all right.
08:45    7            MR. SAGEL:  Thank you, Your Honor.
08:45    8            THE COURT:  Counsel for Morgan Witos had sent to
08:45    9    the Court and copied the parties with an e-mail
08:45   10    concerning -- well, he's not her counsel.  But a friend of
08:45   11    Ms. Morgan Witos, I'll put it that way, sent an e-mail to
08:45   12    the Court with a copy to the parties addressing the subpoena
08:45   13    that had been served on her.
08:45   14            I would like to hear the parties' response to the
08:46   15    letter.  It doesn't have to be right now.
08:46   16            MR. AVENATTI:  I'm not even aware of what Your
08:46   17    Honor is speaking of.
08:46   18            THE COURT:  It was an August 17 e-mail sent at
08:46   19    7:46 to Mr. Steward, Mr. Sagel, and Mr. Wyman, as well as
08:46   20    Ms. Bredahl.  Subject, United States versus Avenatti;
08:46   21    attachment, letter to James Selna.pdf.  So it was sent to
08:46   22    your advisory counsel.
08:46   23            MR. AVENATTI:  Okay.  I haven't seen it yet.  I
08:46   24    will look at it during the break.
08:46   25            THE COURT:  Okay.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:46   1          Anything else we should take up at this time?

08:46   2          MR. SAGEL:  Briefly, Your Honor, just to get Your

08:46   3   Honor's -- what Your Honor wants from the government.  I

08:47   4   believe defendant -- sorry, I don't have the document

08:47   5   control number.  He filed a motion, I think it was either to

08:47   6   dismiss or something, regarding the Tabs data.  It's

08:47   7   something that we orally addressed with Your Honor.  I

08:47   8   believe it was on Friday.

08:47   9          I don't know what Your Honor -- I believe it's

08:47   10  docket 706, inquiring of the Court if and when you want

08:47   11  something in a written response.  The same response I would

08:47   12  give pretty much from the other day is going to be the

08:47   13  equivalent, where and when.  It's never been brought up.

08:47   14         And what I also point out and defendant ignores is

08:47   15  even Ms. Regnier's testimony, she didn't even know of it as

08:47   16  Tabs until he said the word and she said, yeah, that might

08:47   17  be the name of it.  At no point did she mention Tabs, and it

08:47   18  just jumps to many things.

08:47   19         THE COURT:  If you want to put in a response to

08:48   20  706, I would be happy to receive it.

08:48   21         MR. SAGEL:  Thank you, Your Honor.  Do you have

08:48   22  any immediate deadlines?  If not, we'll do it probably later

08:48   23  this week.

08:48   24         THE COURT:  Today it's all part of the Drum

08:48   25  motion.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:48  1          MR. AVENATTI:  Well, I would argue, Your Honor,

08:48  2   that the lack of production of the Tabs and the QuickBooks

08:48  3   data, the entirety of the QuickBooks data, is bigger than

08:48  4   the Drum motion.  It's certainly an issue in the Drum

08:48  5   motion.

08:48  6          But I just want to note right now for the record

08:48  7   that Mr. Sagel informed the Court that Ms. Regnier never

08:48  8   mentioned Tabs.  That is the representation that was made to

08:48  9   Your Honor.  It is demonstrably false.  The interview notes

08:49  10  from the government include references to Tabs, using the

08:49  11  word Tabs.

08:49  12         THE COURT:  It's easy enough to go back to the

08:49  13  transcript.

08:49  14         MR. AVENATTI:  I'm not speaking of the transcript.

08:49  15         THE COURT:  I think that's what --

08:49  16         MR. AVENATTI:  No -- sorry.  I didn't mean to

08:49  17  interrupt.  That's not what he said.  That's not what he

08:49  18  said, because that's not the issue.  He wants Your Honor to

08:49  19  believe that they had no idea Tabs existed until she finally

08:49  20  remembered the name when I mentioned it.  That's the issue.

08:49  21  That is the issue.  And that's false.

08:49  22         I have the interview notes.  They have the

08:49  23  interview notes.  She told them about Tabs years ago, years

08:50  24  ago, and they never produced it.  And they led Your Honor

08:50  25  to -- they repeatedly said:  We understand our discovery

08:50   1    obligation.

08:50   2              We laid it out in the motion, Your Honor, how many

08:50   3    times we asked for it.  Many, many, many, many times.  And

08:50   4    every time Mr. Sagel said the same thing.  And now it has

08:50   5    been shown to be completely false.

08:50   6              But this idea that Ms. Regnier did not mention

08:50   7    Tabs to Mr. Sagel and the agents, it's in the notes, Your

08:50   8    Honor.  It's in the interview notes, their own interview

08:50   9    notes.  And Mr. Sagel can correct me if I'm wrong.

08:50  10              But this idea that he is leading the Court to

08:50  11    believe that they had no idea about Tabs before she

08:50  12    mentioned the name, that's false.  And I would challenge

08:50  13    Mr. Sagel to tell the Court that they had never heard about

08:50  14    Tabs in the two-and-a-half years of this investigation

08:51  15    before Ms. Regnier took the stand.

08:51  16              I challenge him to make that representation now

08:51  17    again to this Court.

08:51  18              THE COURT:  Anything further at this time?

08:51  19              MR. SAGEL:  We have one other witness issue.

08:51  20              MR. WYMAN:  May I address this briefly?

08:51  21              THE COURT:  Please.

08:51  22              MR. WYMAN:  My understanding is that the

08:51  23    defendant's first witness today is Evan Jenness, and I

08:51  24    understand the purpose of his testimony --

08:51  25              THE COURT:  Her testimony.

08:51   1          MR. WYMAN:  I'm sorry -- her testimony is she is
08:51   2   going to say she was not on a phone call that Gregory Barela
08:51   3   testified he believes she was.  I expect that she will also
08:51   4   testify that she knows Gregory Barela because the defendant
08:51   5   introduced her to him to be essentially her criminal defense
08:51   6   attorney.
08:51   7          So as a result, it's obviously relevant that she
08:51   8   is a criminal defense attorney.  It's also very relevant to
08:51   9   witness bias and generally relevant that she has previously
08:52  10   represented the defendant before their relationship.
08:52  11          I don't intend to elicit what matter or what type
08:52  12   of matter even that she represented him in, but I did want
08:52  13   to flag for the Court that I do intend to elicit on
08:52  14   cross-examination that she is a criminal defense attorney
08:52  15   and that she previously represented the defendant.
08:52  16          Before I ask those questions, I wanted to at least
08:52  17   inform the Court in case there's an objection by the
08:52  18   defendant.
08:52  19          MR. AVENATTI:  Your Honor, I raised this on
08:52  20   Friday, and Your Honor said, well, just make sure your
08:52  21   direct does not open that door or something.  I'm
08:52  22   paraphrasing.
08:52  23          Your Honor, under 403 they should not be able to
08:52  24   get into the fact that she represented me in a matter and
08:52  25   leave the jury with the suggestion that she represented me

40

08:52  1  in some other criminal matter, especially when that criminal
08:53  2  matter, Your Honor, was a matter in which there were never
08:53  3  any charges.  Never any charges.  So that line of
08:53  4  questioning should be excluded under 403.
08:53  5        If they want to establish that she is an attorney,
08:53  6  that's fine.  If they want to establish that I had referred
08:53  7  Mr. Barela to her, that's fine.  But the idea --
08:53  8        THE COURT:  Sir, it's going to be controlled by
08:53  9  the scope of your direct.
08:53  10        MR. AVENATTI:  Well, Your Honor, I'm obviously
08:53  11  going to ask her:  Are you an attorney?  I'm not going to
08:53  12  ask her if she is a criminal defense attorney.  I'm going to
08:53  13  ask her if she's an attorney.  I'm going to ask her if she
08:53  14  knows Greg Barela.  And then I'm going to get into the fact
08:53  15  that this phone call never happened.
08:53  16        But what I don't want is for the government to
08:53  17  then ask the question, even if the objection is sustained,
08:53  18  suggesting to the jury that she is representing me in some
08:53  19  other criminal matter.  And that's what Mr. Wyman has
08:53  20  indicated he plans on doing, and that would be highly
08:54  21  prejudicial.
08:54  22        THE COURT:  Without a sidebar we're not going to
08:54  23  get into the fact that she is a criminal attorney or that
08:54  24  she has represented Mr. Avenatti in criminal matters.
08:54  25        MR. AVENATTI:  Thank you, Your Honor.

41

08:54 1        MR. WYMAN:  Your Honor, I don't intend to elicit
08:54 2   that she has represented the defendant in criminal matters.
08:54 3   The fact of her being a criminal defense attorney is why she
08:54 4   knows Greg Barela, because that's why the defendant
08:54 5   introduced her to him.  He introduced Evan Jenness to Greg
08:54 6   Barela when Greg Barela was under investigation by the D.A.
08:54 7        So the defendant introduced her as a possible
08:54 8   criminal defense attorney.  She is also the defendant's
08:54 9   witness.  Bias with her relationship with the defendant is a
08:54 10  quintessential bias point for any witness he puts up there.
08:54 11       So I don't mean to say that she represented him in
08:54 12  another matter, but I think it's totally fair and
08:54 13  appropriate to say she has represented the defendant as an
08:54 14  attorney.  And the fact that she is a criminal defense
08:55 15  attorney is also separately relevant and admissible.
08:55 16       THE COURT:  Let's hear what the direct is.
08:55 17       MR. WYMAN:  Very well, Your Honor.  I will ask for
08:55 18  a sidebar if I believe it's appropriate.
08:55 19       THE COURT:  Okay.
08:55 20       MR. WYMAN:  May I raise one other issue with
08:55 21  regard to Ms. Jenness?
08:55 22       On Sunday evening, I believe it was, we received
08:55 23  an e-mail from Ms. Hernandez providing the two e-mails in
08:55 24  reciprocal discovery.  These e-mails are between Evan
08:55 25  Jenness, Greg Barela, and Michael Avenatti.  They relate to

08:55  1    that introduction I was referring to a minute ago when Greg
08:55  2    Barela was being investigated by the D.A.'s Office and the
08:55  3    defendant introduced her to him.
08:55  4          These e-mails, in addition to being not produced
08:55  5    until now, appear to us to be privileged.  They are
08:55  6    communications between Greg Barela and another attorney,
08:55  7    Evan Jenness.  And Greg Barela to our knowledge has never
08:56  8    waived that privilege.
08:56  9          So we don't believe these should have been
08:56 10    disclosed to us, and we don't believe that they should be
08:56 11    admitted into evidence both for Rule 16 violations because
08:56 12    they are privilege, and they're also hearsay.  But the main
08:56 13    concerns we have are the privilege and the Rule 16
08:56 14    violation.
08:56 15          THE COURT:  What's the date of the e-mails?
08:56 16          MR. WYMAN:  The e-mails are dated June 22nd, 2018.
08:56 17          MR. AVENATTI:  Your Honor, I could shortcut this.
08:56 18    I don't have any desire to use and I'm not planning on using
08:56 19    the e-mails.  The reason I produced them is, unlike the
08:56 20    government, we comply with our discovery obligations under
08:56 21    26.2, sir.  That's what we do.  So that's why they were
08:56 22    provided.
08:56 23          I don't think they were privileged because of the
08:56 24    waiver and a whole host of issues including the testimony
08:56 25    that the government elicited on direct.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
08:56   1              THE COURT:  If you're not going to use them, I
08:56   2   think you're suggesting that's the end of the discussion.
08:57   3              MR. AVENATTI:  That's the end of the discussion.
08:57   4              THE COURT:  That's the end of the discussion.
08:57   5              MR. AVENATTI:  Thank you, sir.
08:57   6              THE COURT:  Okay.  We'll be in recess until the
08:57   7   jury comes in.
08:57   8                      (Recess taken at 8:57 a.m.;
08:57   9                       proceedings resumed at 9:13 a.m.)
09:13  10                      (Jury present)
09:13  11              THE CLERK:  Item 1, SACR-19-00061-JVS, United
09:13  12   States of America versus Michael John Avenatti.
09:13  13              MR. SAGEL:  Good morning.  Your Honor.  Brett
09:13  14   Sagel and Alexander Wyman on behalf of the United States.
09:13  15   And at counsel table is Special Agent Remoun Karlous.
09:13  16              THE COURT:  Good morning.
09:13  17              MR. AVENATTI:  Good morning, Your Honor.  Michael
09:13  18   Avenatti present with Mr. Steward, Ms. Cummings-Cefali, and
09:13  19   Ms. Hernandez.
09:13  20              THE COURT:  Good morning.
09:13  21              And good morning, ladies and gentlemen.
09:13  22              THE JURY:  Good morning.
09:13  23              THE COURT:  Mr. Avenatti, would you call your
09:13  24   first witness, please.
09:13  25              MR. AVENATTI:  Yes, Your Honor.
```

44

```
09:13   1              The defense calls Evan Jenness.
09:13   2               EVAN JENNESS, DEFENSE WITNESS, SWORN
09:14   3              THE CLERK:  If you will please state and spell
09:15   4   your first and last name.  And if you will pull the
09:15   5   microphone close to you.
09:15   6              THE WITNESS:  Evan, E-v-a-n.  Last name, Jenness,
09:15   7   J-e-n-n-e-s-s.
09:15   8              THE CLERK:  Thank you.
09:15   9              THE COURT:  Mr. Avenatti.
09:15  10                        DIRECT EXAMINATION
09:15  11   BY MR. AVENATTI:
09:15  12   Q    Ms. Jenness, good morning.
09:15  13   A    Good morning.
09:15  14   Q    Are you a licensed attorney in the state of California?
09:15  15   A    Yes.
09:15  16   Q    Do you know a gentleman by the name of Greg Barela?
09:15  17   A    Yes.
09:15  18   Q    Have you spoken to Mr. Barela in the past?
09:15  19   A    Yes.
09:15  20   Q    When was the last time that you spoke with Mr. Greg
09:15  21   Barela?
09:15  22   A    June 23rd of 2018.
09:15  23   Q    Now, the government called Mr. Barela to testify before
09:15  24   this jury previously, and I want to ask you about some of
09:16  25   the things that he told the jury under oath.
```

09:16   1          "Q      Do you have a recollection that when

09:16   2      you met with the agents and the Assistant U.S.

09:16   3      Attorneys on March 15th, 2019, you also recounted

09:16   4      a story for them about a phone call that you had

09:16   5      had on or about November 15th, 2018?  Do you

09:16   6      recall that?

09:16   7          "A      I do not.

09:16   8          "Q      Please take a look at paragraph 44.

09:16   9      And my question is:  Does that refresh your

09:16   10     recollection?

09:16   11         "A      Yes, I recall that.

09:16   12         "Q      So according to you, on or about

09:17   13     November 14th, 2018, you called Ms. Regnier and

09:17   14     you asked for Mr. Arden and Mr. Ibrahim, correct?

09:17   15         "A      Correct.

09:17   16         "Q      And you were told that Mr. Arden and

09:17   17     Mr. Ibrahim were not available, so you texted

09:17   18     Mr. Arden; is that right?

09:17   19         "A      That's correct.

09:17   20         "Q      And since this was after March of

09:17   21     2018, according to you Mr. Ibrahim and Mr. Arden

09:17   22     were no longer speaking with you, right?

09:17   23         "A      That's correct.

09:17   24         "Q      And after you texted Mr. Arden, he

09:17   25     responded by calling you with Mr. Ibrahim on the

46

```
09:17   1          phone as well as that attorney that came up during
09:17   2          the direct, Evan Jenness; right?
09:17   3               "A     I believe so.
09:17   4               "Q     Well, that's what you told the
09:17   5          federal agents, right?
09:17   6               "A     It sounded like.
09:18   7               "Q     Well, that's what you told the
09:18   8          federal agents; is it not?  You told the federal
09:18   9          agents it was Evan Jenness; did you not, sir?
09:18  10               "A     I believe so."
09:18  11          Ms. Jenness, did you ever participate on a phone
09:18  12   call with Mr. Barela as he told the federal agents?
09:18  13   A     No.
09:18  14               MR. AVENATTI:
09:18  15               "Q     Okay.  And you also told the agents
09:18  16          that this seemed suspicious to you when all three
09:18  17          of them called you, and at that point you knew
09:18  18          that my firm had stole your money.  That's what
09:18  19          you told them, right?
09:18  20               "A     I did.
09:19  21               "Q     And during the call you accused the
09:19  22          firm of stealing your money; is that right?
09:19  23               "A     Correct."
09:19  24   BY MR. AVENATTI:
09:19  25   Q     Ms. Jenness, were you ever on a phone call with
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:19    1    Mr. Barela where he accused the law firm of stealing his
09:19    2    money?
09:19    3                MR. WYMAN:  Asked and answered.
09:19    4                THE COURT:  Overruled.
09:19    5                THE WITNESS:  Absolutely not.
09:19    6    BY MR. AVENATTI:
09:19    7    Q    Are you certain of that?
09:19    8    A    Yes.
09:19    9                MR. AVENATTI:
09:19   10             "Q     And Evan Jenness told you on the call
09:19   11         that you could not accuse the law firm because it
09:19   12         was slander, right?
09:19   13             "A     Yes."
09:19   14    BY MR. AVENATTI:
09:19   15    Q    Ms. Jenness, did you ever tell government witness
09:19   16    Mr. Barela that he could not accuse the firm of stealing his
09:20   17    money because it was slander?
09:20   18    A    Absolutely not.
09:20   19                MR. AVENATTI:
09:20   20             "Q     And you responded by telling
09:20   21         Ms. Jenness, the attorney, that she had a conflict
09:20   22         of interest because she had had three conference
09:20   23         calls with you and knew about the Brock matter and
09:20   24         waiting for the settlement proceeds; is that
09:20   25         right?
```

09:20  1              "A    Correct."

09:20  2    BY MR. AVENATTI:

09:20  3    Q    Did Mr. Barela ever tell you that?

09:20  4    A    Certainly not.

09:20  5    Q    Did Mr. Barela ever communicate with you about the

09:20  6    Brock settlement?

09:20  7    A    No.

09:21  8              MR. AVENATTI:

09:21  9              "Q    And after you told Ms. Jenness that,

09:21  10        Ms. Jenness, Mr. Arden, and Mr. Ibrahim hung up on

09:21  11        you?

09:21  12             "A    That's correct.

09:21  13             "Q    And that's what happened, right?

09:21  14             "A    Yes.

09:21  15             "Q    You're sure about that?

09:21  16             "A    Yes."

09:21  17    BY MR. AVENATTI:

09:21  18    Q    Ms. Jenness, did you ever hang up on Greg Barela?

09:21  19    A    Absolutely not.

09:22  20             MR. AVENATTI:

09:22  21             "Q    Here is my last question.  I'm going

09:22  22        to call witnesses in this case about this

09:22  23        telephone call that you claim occurred where they

09:22  24        hung up on you, including Ms. Evan Jenness.  Would

09:22  25        you like to change any of your testimony, sir,

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:22   1          that you gave to this jury about that call?
09:22   2              "A    Can you read that back, the exact
09:22   3          statement?"
09:23   4              The question was read back.
09:23   5              "A    I would not, and I look forward to
09:23   6          it."
09:23   7   BY MR. AVENATTI:
09:23   8   Q   My question to you, Ms. Jenness, is:  Is there any
09:23   9   doubt in your mind that what Mr. Barela told this jury was
09:23   10  completely false?
09:23   11  A   What he stated was not correct.
09:23   12              MR. AVENATTI:  Nothing further.
09:23   13              THE COURT:  Mr. Wyman.
09:23   14                      CROSS-EXAMINATION
09:23   15  BY MR. WYMAN:
09:24   16  Q   Good morning, Ms. Jenness.
09:24   17  A   Good morning.
09:24   18  Q   You have been an attorney for a long time; isn't that
09:24   19  right?
09:24   20  A   Yes, I have.
09:24   21  Q   And you're a criminal defense attorney?
09:24   22  A   That's correct.
09:24   23              THE COURT:  Just a minute.  Sidebar.
09:24   24          (Sidebar conference)
09:29   25              THE COURT:  I thought I said we weren't going to
```

```
09:29   1   get into the facts.
09:29   2           MR. WYMAN:  I don't intend to elicit that she
09:29   3   represented him.
09:29   4           THE COURT:  No, no.  There were two points:
09:29   5   whether she was a criminal defense attorney and then whether
09:29   6   she represented Mr. Avenatti in a criminal matter.
09:29   7           MR. WYMAN:  By my understanding --
09:29   8           THE COURT:  Your understanding is incorrect.
09:30   9           MR. WYMAN:  I apologize, Your Honor.
09:30  10           The defendant has attempted to establish on
09:30  11   cross-examination of Mr. Barela that he was untrustworthy
09:30  12   because he was a convicted felon.  It's relevant that the
09:30  13   defendant knew he was under investigation by the D.A., which
09:30  14   is why he introduced Mr. Barela to Ms. Jenness in 2018.
09:30  15   That's what the defendant elicited on direct, the last time
09:30  16   that Ms. Jenness talked to Mr. Barela, and it was in
09:30  17   connection with her possibly being hired to represent
09:30  18   Mr. Barela in a criminal proceeding.
09:30  19           That was the point of me asking that question.  I
09:30  20   apologize.
09:30  21           THE COURT:  Are you going to go out and make a
09:30  22   point that she represented Mr. Avenatti?
09:30  23           MR. WYMAN:  No, Your Honor.
09:30  24           THE COURT:  Then I don't have a problem with that
09:30  25   question as long as it relates to Mr. Barela.
```

09:30   1           MR. AVENATTI:  There is no question what Your
09:30   2   Honor --
09:30   3           THE COURT:  I don't think if he's not going into
09:30   4   it that there's any prejudice that she is a criminal defense
09:30   5   lawyer.
09:30   6           MR. AVENATTI:  I did not ask -- I think this is
09:30   7   important as to what I think where counsel is going.  That's
09:30   8   why I'm saying this.  I did not ask Ms. Jenness what she
09:30   9   conversed with Mr. Barela about because those are potential
09:30   10  privilege issues.
09:30   11          As to the last time that she met with him, that
09:30   12  question is not privileged.  What Ms. Jenness spoke to
09:30   13  Mr. Barela about, whether it was a criminal matter or some
09:30   14  other matter, should be off limits.  It's irrelevant what
09:30   15  they conversed about, and I didn't ask about that.  It's
09:30   16  outside the scope of my direct.
09:30   17          I was only asking about the temporal issue.
09:30   18  Counsel should not be able to get into why Mr. Barela
09:30   19  consulted Ms. Jenness, what it was concerning, what the
09:30   20  communications were, or anything else of that nature.  That
09:30   21  was not the scope of the direct.  It would be outside the
09:30   22  scope of the direct, and I would object.
09:30   23          MR. WYMAN:  I would also note there is a text
09:30   24  message I believe from the defendant to Mr. Barela with Ms.
09:30   25  Jenness's name and contact info that's in regard to finding

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:30  1    a criminal defense attorney for Mr. Barela.

09:30  2           THE COURT:  I'm letting you get into that.  Your

09:30  3    objection is noted.

09:30  4           MR. AVENATTI:  The text messages are just about

09:30  5    seeing her and contact information.

09:30  6           THE COURT:  She is a criminal lawyer.  She has

09:30  7    represented Mr. Barela in a criminal matter.  Given that

09:30  8    you're arguing that he's not trustworthy because he is a

09:30  9    felon, I don't see what the harm is.

09:30  10          MR. AVENATTI:  There is going to be no reference

09:30  11   to her ever representing me?

09:30  12          MR. WYMAN:  That's correct.

09:30  13          THE COURT:  So that's clearly understood.

09:30  14          MR. WYMAN:  I apologize, Your Honor.

09:30  15          (End of sidebar conference)

09:30  16   BY MR. WYMAN:

09:30  17   Q    You're a criminal defense attorney, and you practice

09:30  18   primarily in the Los Angeles area; is that correct?

09:30  19   A    Yes.

09:31  20   Q    And so you're sometimes on opposing sides to our

09:31  21   office, the U.S. Attorney's Office?

09:31  22   A    Correct.

09:31  23   Q    And you also sometimes handle state criminal matters?

09:31  24   A    Sometimes.

09:31  25   Q    Now, you were contacted around June of 2018 about the

09:31  1    prospect of representing Mr. Barela; is that correct?

09:31  2    A    That's correct.

09:31  3    Q    And you understood that Mr. Barela had a -- was under

09:31  4    criminal investigation at the time by the district attorney

09:31  5    in San Diego; is that right?

09:31  6    A    I think I believed that he had been charged.

09:31  7    Q    And this was around June of 2018, you testified?

09:31  8    A    That's correct.

09:31  9    Q    And it was the defendant who introduced you to

09:31  10   Mr. Barela, correct?

09:31  11   A    I first had contact with Mr. Barela when he sent me an

09:31  12   e-mail, and he did reference Mr. Avenatti and also copied

09:31  13   him.

09:31  14   Q    When you say he, you're referring to Mr. Barela?

09:31  15   A    That's correct.

09:31  16   Q    So Mr. Barela e-mailed you and copied the defendant?

09:31  17   A    That's correct.

09:31  18   Q    And that was about the criminal charges?

09:31  19   A    Correct.

09:31  20   Q    So at the time of that e-mail, the defendant was aware

09:31  21   that Mr. Barela had been charged criminally by the D.A.; is

09:31  22   that right?

09:31  23        MR. AVENATTI:  Calls for speculation.  Objection.

09:31  24        THE COURT:  Overruled.

09:31  25        THE WITNESS:  I don't have a precise recollection

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:31   1   of this.  It was a long time ago.

09:31   2   BY MR. WYMAN:

09:31   3   Q    Well, the defendant was on the e-mail, correct?

09:31   4   A    Correct.

09:31   5   Q    And the e-mail was about Mr. Barela's charges

09:31   6   criminally, correct?

09:31   7   A    Yes.

09:31   8   Q    And that was in June of 2018, you said?

09:31   9   A    Correct.

09:31  10   Q    Now, on direct you testified about a phone call that

09:31  11   you were not a part of, correct?

09:31  12   A    Yes.

09:31  13   Q    And that phone call, as the testimony that the

09:31  14   defendant read, was between Mr. Barela, Ahmed Ibrahim, and

09:32  15   John Arden; is that right?

09:32  16        MR. AVENATTI:  Objection.  Misstates the testimony

09:32  17   as to what Mr. Barela testified to.

09:32  18        THE COURT:  Overruled.

09:32  19        THE WITNESS:  That's my understanding of what his

09:32  20   testimony was.

09:32  21   BY MR. WYMAN:

09:32  22   Q    Right.  Those were the names that were read to you in

09:32  23   the transcript?

09:32  24   A    Yes.

09:32  25   Q    Are you aware that Judy Regnier was on that call

09:32   1   referenced by Mr. Barela?

09:32   2           MR. AVENATTI:  Objection, Your Honor.  Lacks

09:32   3   foundation.

09:32   4           THE COURT:  Overruled.

09:32   5           THE WITNESS:  I'm not aware of any phone calls, so

09:32   6   I do not know who would be on the phone call or whether it

09:32   7   even took place.

09:32   8   BY MR. WYMAN:

09:32   9   Q    Right, because you weren't on that call?

09:32  10   A    I was not on any such call.

09:32  11   Q    And you also don't know why Mr. Barela thought that it

09:32  12   was you on the call and not Judy Regnier, right?

09:32  13   A    I have no idea why Mr. Barela testified as he did.

09:32  14   Q    Thank you.  No further questions, Ms. Jenness.

09:32  15   A    Thank you.

09:32  16           THE COURT:  Mr. Avenatti.

09:32  17                   REDIRECT EXAMINATION

09:32  18   BY MR. AVENATTI:

09:32  19   Q    Ms. Jenness, Mr. Wyman asked you about the fact that

09:33  20   sometimes you are on opposite sides of the U.S. Attorney's

09:33  21   Office.  Do you recall that?

09:33  22   A    Yes.

09:33  23   Q    Would that fact lead you to come before this jury and

09:33  24   provide false testimony?

09:33  25   A    No.

| | | |
|---|---|---|
| 09:33 | 1 | Q    Mr. Wyman asked you about whether Judy Regnier was on |
| 09:33 | 2 | this call that Mr. Barela mentioned.  Do you recall that |
| 09:33 | 3 | question? |
| 09:33 | 4 | A    Yes. |
| 09:33 | 5 | Q    When I read Mr. Barela's testimony before the jury, did |
| 09:33 | 6 | you see any reference to Judy Regnier being on the call as |
| 09:33 | 7 | opposed to Evan Jenness? |
| 09:33 | 8 | A    No. |
| 09:33 | 9 | MR. AVENATTI:  Nothing further. |
| 09:33 | 10 | THE COURT:  Mr. Wyman. |
| 09:33 | 11 | MR. WYMAN:  Nothing further.  Thank you, Your |
| 09:34 | 12 | Honor. |
| 09:34 | 13 | THE COURT:  May the witness be excused? |
| 09:34 | 14 | MR. AVENATTI:  Yes, Your Honor. |
| 09:34 | 15 | MR. WYMAN:  Yes, Your Honor. |
| 09:34 | 16 | THE COURT:  You may be excused.  Thank you. |
| 09:34 | 17 | THE WITNESS:  Thank you, Your Honor. |
| 09:34 | 18 | THE COURT:  Mr. Avenatti. |
| 09:34 | 19 | MR. AVENATTI:  Your Honor, the defense calls |
| 09:34 | 20 | Joseph Varani. |
| 09:34 | 21 | JOSEPH VARANI, DEFENDANT'S WITNESS, SWORN |
| 09:35 | 22 | THE CLERK:  If you would please state and spell |
| 09:35 | 23 | your first and last name. |
| 09:36 | 24 | THE WITNESS:  Joseph Varani, V-a-r-a-n-i. |
| 09:36 | 25 | THE CLERK:  And Joseph, J-o-s-e-p-h? |

| | | |
|---|---|---|
| 09:36 | 1 | THE WITNESS:  Yes. |
| 09:36 | 2 | THE CLERK:  Thank you. |
| 09:36 | 3 | THE COURT:  Mr. Avenatti. |
| 09:36 | 4 | DIRECT EXAMINATION |
| 09:36 | 5 | BY MR. AVENATTI: |
| 09:36 | 6 | Q    Good morning, Mr. Varani. |
| 09:36 | 7 | A    Good morning. |
| 09:36 | 8 | Q    Now, you previously testified in this case, correct? |
| 09:36 | 9 | A    Yes, I did. |
| 09:36 | 10 | Q    And you are employed by the Department of Justice; is |
| 09:36 | 11 | that correct? |
| 09:36 | 12 | A    Yes, I am. |
| 09:36 | 13 | Q    And to refresh the recollection of the jury, what is |
| 09:36 | 14 | your title? |
| 09:36 | 15 | A    I'm a senior digital investigative analyst. |
| 09:36 | 16 | Q    And how long have you been employed by the Department |
| 09:36 | 17 | of Justice? |
| 09:36 | 18 | A    Since 2005, but in my previous position since 2010. |
| 09:36 | 19 | Q    And what did you do between 2005 and 2010? |
| 09:36 | 20 | A    I worked for the Information Security Office for the |
| 09:36 | 21 | Department of Justice. |
| 09:36 | 22 | Q    And what does that office do? |
| 09:36 | 23 | A    It detects vulnerabilities and compromises on the |
| 09:36 | 24 | department's computer networks in response to them.  It |
| 09:37 | 25 | tries to implement department-wide products to improve the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:37   1    security of the departments and so forth.

09:37   2    Q    And before 2005 where were you employed?

09:37   3    A    That was my first job.  I was in school before that.

09:37   4    Q    And you graduated from college?

09:37   5    A    Yes.

09:37   6    Q    From where?

09:37   7    A    From Syracuse.

09:37   8    Q    With a Bachelor of Arts?

09:37   9    A    Bachelor's of Science and Master's of Science.

09:37   10   Q    Was that in computer science?

09:37   11            MR. WYMAN:  Objection.  Relevance.

09:37   12            THE COURT:  Overruled.

09:37   13            THE WITNESS:  It was in information management

09:37   14   with a focus on information security.

09:37   15   BY MR. AVENATTI:

09:37   16   Q    Have you received training relating to acquiring

09:37   17   financial -- strike that.  Have you received training

09:37   18   relating to acquiring electronic data forensically?

09:37   19   A    Yes.

09:37   20   Q    From where?

09:37   21   A    From vendors, from tools such as FTK access data and

09:38   22   end case as well as the Defense Cyber Crime Center.  They

09:38   23   have a training academy that provided training on acquiring

09:38   24   data.

09:38   25   Q    Did you attend that academy?

| | | |
|---|---|---|
| 09:38 | 1 | A     I attended classes, yes. |
| 09:38 | 2 | Q     When? |
| 09:38 | 3 | A     That would have been perhaps sometime in 2008 or early |
| 09:38 | 4 | 2010. |
| 09:38 | 5 | Q     And those classes taught you how to forensically |
| 09:38 | 6 | acquire electronic data from devices, correct? |
| 09:38 | 7 | A     Yes. |
| 09:38 | 8 | Q     Including cell phones; am I right? |
| 09:38 | 9 | A     Not so much on cell phones.  Cell phones, that is a |
| 09:39 | 10 | more specialized area.  This was more focused on computers. |
| 09:39 | 11 | Q     Over the course of your career at the Department of |
| 09:39 | 12 | Justice, though, you have dealt with forensic images of cell |
| 09:39 | 13 | phones; am I correct? |
| 09:39 | 14 | MR. WYMAN:  Objection.  Leading. |
| 09:39 | 15 | THE COURT:  Overruled. |
| 09:39 | 16 | THE WITNESS:  On rare instances but it is not my |
| 09:39 | 17 | area of focus. |
| 09:39 | 18 | BY MR. AVENATTI: |
| 09:39 | 19 | Q     You deal with forensic images of electronic devices |
| 09:39 | 20 | generally; am I correct? |
| 09:39 | 21 | A     Yes. |
| 09:39 | 22 | Q     And in connection with this case, you had occasion to |
| 09:39 | 23 | analyze forensic images of computer servers from Eagan |
| 09:39 | 24 | Avenatti; am I right? |
| 09:39 | 25 | A     Yes.  That's right. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

60

09:39    1    Q    And what did you do in connection with your work as it

09:39    2    related to the servers from the law firm Eagan Avenatti?

09:39    3    A    I used my forensic tools that we have in the lab to

09:39    4    import the data from the server, forensic images that were

09:39    5    provided to me.  I processed that data, identified the files

09:40    6    on the data, executed keyword searches based on keyword

09:40    7    lists that were provided, and exported the resulting files

09:40    8    and provided them to other members of the investigation

09:40    9    team.

09:40   10    Q    So as I understand it, you receive forensic images of

09:40   11    the servers.  You then utilize tools that you have in your

09:40   12    lab to analyze those images, right?

09:40   13    A    Yes.

09:40   14    Q    And one of the first things you did utilizing those

09:40   15    tools -- well, hold on.  What tools did you utilize?

09:40   16    A    FTK.  That's how we access data.

09:40   17    Q    And what is that?

09:40   18    A    It is a piece of forensic software called forensic tool

09:40   19    kit.

09:40   20    Q    And does that allow you to identify files on a forensic

09:40   21    image?

09:40   22    A    Yes, it does.

09:40   23    Q    And does it identify the types of files?

09:40   24    A    Yes, it does.

09:40   25    Q    So when you used FTK in the lab on these computer

```
09:41    1    servers -- well, strike that.  Do you remember the size of
09:41    2    the servers or the size of the images that you got from the
09:41    3    computer servers?
09:41    4    A    I don't.  There were many servers.
09:41    5    Q    Do you recall that it was many terabytes of data?
09:41    6    A    Yes.
09:41    7    Q    Please tell the jury what a terabyte of data is.
09:41    8    A    A terabyte is 1,000 gigabytes.  So if you think of the
09:41    9    amount of the data on your computers, it would be multiple
09:41   10    times that most likely.
09:41   11    Q    And when you utilized this tool in the lab, how did you
09:41   12    go about identifying the files?
09:41   13    A    Identifying all of the files on the image?
09:41   14    Q    Well, you stated that one of the first things you did,
09:41   15    if I understand you correctly, was that you utilized the
09:41   16    tools in the lab in an effort to identify the files on the
09:41   17    servers; is that right?
09:42   18    A    Yes.
09:42   19    Q    How did you go about doing that, and what did it yield?
09:42   20    A    So in the forensic tool I choose the add-evidence
09:42   21    option.  I point it at the image file.  It opens up the
09:42   22    image file and it runs through a process to enumerate all of
09:42   23    the files on the device.
09:42   24    Q    When you say enumerate all of the files, is that a
09:42   25    fancy way of saying identify all of the files?
```

62

09:42  1   A     Yes.  It identifies all of the files, yes.

09:42  2   Q     Does it identify the files by name and type or just

09:42  3   name or type?

09:42  4   A     It identifies the files based on name, but it does

09:42  5   certain checks to determine the types of files that it sees.

09:42  6   Q     When you utilized this tool on the servers, did it

09:43  7   group the files by the type of file?  What I mean by that

09:43  8   is, did it group the files by Microsoft Excel spreadsheets,

09:43  9   Microsoft Word documents, maybe e-mails, things of that

09:43  10  nature?

09:43  11  A     It does have that option, yes.

09:43  12  Q     Did anyone ever ask you to look for QuickBooks files on

09:43  13  the Eagan Avenatti servers?

09:43  14  A     Not specifically QuickBooks files, no.

09:43  15  Q     You are familiar with QuickBooks; are you not,

09:43  16  generally?

09:43  17  A     I have heard of it, yes.

09:43  18  Q     No one ever asked you to look for the QuickBooks

09:43  19  database files for Eagan Avenatti; is that right, that you

09:44  20  recall?

09:44  21  A     Right, not specifically a QuickBooks file.

09:44  22  Q     Did anyone ever ask you to look for any financial data

09:44  23  relating to a program called Tabs?

09:44  24  A     No.

09:44  25  Q     Sir, over the course of your work, do you recall any

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:45   1   communications from anyone about the need to try to locate

09:45   2   data, financial data, from the Eagan Avenatti servers held

09:45   3   in a program called Tabs?

09:45   4   A    No.  To my knowledge, Tabs was not mentioned.

09:45   5   Q    Did anyone ever ask you to look for the actual program

09:45   6   on the servers as opposed to the data, meaning the program

09:45   7   called Tabs?

09:45   8   A    No.

09:45   9   Q    As you sit here today, do you know if there was the

09:45   10   program Tabs on the servers?

09:45   11   A    I don't know that.

09:45   12   Q    Because you never looked because no one asked you to,

09:45   13   right?

09:45   14   A    Right.

09:45   15   Q    As you sit here today, do you know if any of the Tabs

09:45   16   data was on the servers?

09:46   17   A    I don't.

09:46   18   Q    If you wanted to find out whether the Tabs data was on

09:46   19   the servers and included within the forensic images that

09:46   20   were given to you, how would you go about doing that?

09:46   21   A    I would have looked for the existence of a Tabs

09:46   22   executable in a program files folder, and I would have

09:46   23   looked for files perhaps in a folder named "Tabs" or some

09:46   24   other document that tried to find what the file extension

09:46   25   might be to identify that that type of data file exists on

64

| | | |
|--|--|--|
| 09:46 | 1 | the server. |
| 09:47 | 2 | Q    To the best of your knowledge, these forensic images |
| 09:47 | 3 | still exist; do they not? |
| 09:47 | 4 | A    Yes. |
| 09:47 | 5 | Q    And isn't it true that if you were instructed to look |
| 09:47 | 6 | for the Tabs data today, you could utilize the forensic |
| 09:47 | 7 | image and find out very quickly whether there was any Tabs |
| 09:47 | 8 | data within that server?  Isn't that true? |
| 09:47 | 9 | A    Within a reasonable amount of time, I think. |
| 09:47 | 10 | Q    What's a reasonable amount of time?  Half hour? |
| 09:47 | 11 | A    If everything was set up and running before me, |
| 09:47 | 12 | probably, yes. |
| 09:47 | 13 | Q    Actually probably a lot less than that.  Maybe five or |
| 09:47 | 14 | ten minutes, right? |
| 09:47 | 15 | A    Depending how quickly things are running on the system |
| 09:48 | 16 | and how long it takes everything to load. |
| 09:48 | 17 | Q    About five or ten minutes?  Assuming that the image is |
| 09:48 | 18 | in front of you and all you have to do is search for the |
| 09:48 | 19 | Tabs executable, that's about five or ten minutes, right? |
| 09:48 | 20 | A    If it appears right away, then, yes.  If it doesn't |
| 09:48 | 21 | come up right away, then certainly the search would take |
| 09:48 | 22 | longer. |
| 09:48 | 23 | Q    It could take less than 30 seconds, right? |
| 09:48 | 24 | A    That might be a bit of a really good day. |
| 09:48 | 25 | Q    Even with your experience? |

09:48   1   A      Yeah.   Just moving throughout the tools sometimes takes
09:48   2   a little bit of time.
09:48   3   Q      You would agree it would not take long, though, right?
09:48   4   A      Not too long, no.
09:48   5   Q      And when you did this work attempting to enumerate,
09:48   6   otherwise known as identify, the files on the servers, this
09:49   7   was back in early 2019, right?
09:49   8   A      That sounds about right.
09:49   9   Q      About April or May of 2019; does that sound about
09:49   10  right?
09:49   11  A      It seems reasonable.   I don't recall specifically.
09:49   12  Q      So about 27 months ago?
09:49   13  A      Okay.
09:49   14  Q      Yes?
09:49   15  A      Sure.
09:49   16  Q      In the last 27 months have Mr. Sagel or Mr. Wyman or
09:49   17  Special Agent Karlous or anyone else from the prosecution
09:49   18  team ever asked you to go back and look for any financial
09:49   19  data on the servers?
09:50   20  A      No.
09:50   21  Q      Has a man by the name of John Drum ever contacted you
09:50   22  and asked you to look for any financial information from the
09:50   23  servers?
09:50   24  A      No.
09:50   25  Q      Has a man by the name of John Drum ever contacted you

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:50   1    and told you:  I really need to see the most recent version

09:51   2    of the QuickBooks files for the law firm.  Can you help me

09:51   3    find them?

09:51   4    A    No.

09:51   5    Q    Has a man by the name of John Drum ever contacted you

09:51   6    and said:  In order to make sure my analysis is correct, I

09:51   7    need to see all of the Tabs data for the law firm?

09:51   8    A    No.

09:51   9    Q    Please turn to Exhibit 260.  It should be in a

09:51   10   notebook.  It may be behind you.

09:51   11          MR. AVENATTI:  Ms. Hernandez, if we could have it

09:52   12   for the benefit of the jury, please.

09:52   13   BY MR. AVENATTI:

09:52   14   Q    Mr. Varani, you can feel free to refer to the notebook

09:52   15   or to the screen, whatever is more easy.  Okay?

09:52   16   A    Okay.

09:52   17   Q    Sir, do you see the first page of Exhibit 260?

09:52   18   A    Yes.

09:52   19   Q    What is that in your experience?

09:52   20   A    This is the SMS message log or text message log from an

09:52   21   extraction report from an Apple iPhone.

09:52   22   Q    When you say an extraction report, can you please

09:52   23   explain to the jury what that is.

09:53   24   A    This is where a cell phone forensic tool has been used

09:53   25   to extract data from a cell phone and provide it for viewing

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:53  1    outside of the cell phone interface in a report like this.

09:53  2    Q    When you say a cell phone forensic tool, what tool was

09:53  3    used for this?

09:53  4    A    I believe this is a Cellebrite tool.

09:53  5    Q    And I believe you testified that that's one of the

09:53  6    tools that you're familiar with, right?

09:53  7    A    I have used it on occasion, but it's not my area of

09:53  8    focus.

09:53  9    Q    You have been trained on it, correct?

09:53  10   A    I have had a training class in cell phones several

09:53  11   years ago.

09:53  12   Q    Okay.  So that would be yes?

09:53  13   A    Yes.

09:53  14   Q    All right.  Now, can you explain generally to the jury

09:54  15   how Cellebrite is used to get one of these extraction

09:54  16   reports.

09:54  17             MR. WYMAN:  Objection, foundation.

09:54  18             THE COURT:  Overruled.

09:54  19             THE WITNESS:  If a cell phone is in hand and is in

09:54  20   an unlock status and it can be connected to an analyst's

09:54  21   computer running the Cellebrite software or other devices

09:54  22   that the Cellebrite company makes, it can interface with the

09:54  23   phone and it can extract things like SMS messages.

09:54  24   Q    And Cellebrite also enables the Department of Justice

09:54  25   to see if any text messages were deleted before the forensic

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:54   1   image is taken; isn't that true?

09:55   2   A    I believe so, given that there is a deleted column on

09:55   3   this report.

09:55   4   Q    And do you utilize -- well, strike that.  We have spent

09:55   5   some time talking about forensic images.  In your experience

09:55   6   why is it important to get a forensic image of a device as

09:55   7   opposed to just dragging and dropping files onto a thumb

09:55   8   drive, for instance?

09:55   9   A    It allows for the preservation of as much of the

09:55   10  original device without alteration, and it also preserves as

09:55   11  much data during the extraction as possible, whereas

09:55   12  dragging and dropping files may change certain metadata.

09:55   13  Q    And it also ensures the validity of the data, right?

09:55   14  A    Yes, that it's an accurate copy, sure.

09:56   15  Q    I mean, generally that's why you use these forensic

09:56   16  tools in the lab, is to make sure that you get all of the

09:56   17  data on the device and that it is forensically sound,

09:56   18  correct?

09:56   19  A    Yes.

09:56   20  Q    It's kind of like the CSI of cell phones and electronic

09:56   21  devices, right?

09:56   22  A    Correct, yes.

09:56   23       MR. AVENATTI:  Exhibit 262, please.  Can we have

09:56   24  the top, please, including the header.  I'm sorry.

09:57   25       Thank you, Ms. Hernandez.

09:57    1    BY MR. AVENATTI:

09:57    2    Q    262 is another extraction report from a forensic tool,

09:57    3    namely, Cellebrite, right?

09:57    4    A    Yes.

09:57    5         MR. AVENATTI:  Now 176, please.

09:57    6    BY MR. AVENATTI:

09:57    7    Q    176 is an extraction report utilizing that same

09:57    8    forensic tool Cellebrite, correct?

09:58    9    A    Yes.

09:58   10         MR. AVENATTI:  263, please.

09:58   11    BY MR. AVENATTI:

09:58   12    Q    263 is another extraction report utilizing that same

09:58   13    tool Cellebrite, correct?

09:58   14    A    Yes.

09:58   15         MR. AVENATTI:  Then finally 124.

09:58   16    BY MR. AVENATTI:

09:58   17    Q    124 is a forensic report from a cell phone relating to

09:59   18    or using Cellebrite, correct?

09:59   19    A    Yes.

09:59   20         MR. AVENATTI:  Now let's go to 118.

09:59   21    BY MR. AVENATTI:

09:59   22    Q    118 is not a forensic image of anything; is it?

09:59   23    A    No.  It appears to be a --

10:00   24         MR. AVENATTI:  Move to strike everything after no

10:00   25    as nonresponsive.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 10:00 | 1 | THE COURT:  It will be stricken. |

```
10:00   1              THE COURT:  It will be stricken.
10:00   2   BY MR. AVENATTI:
10:00   3   Q    Was 118 acquired using the Department of Justice
10:00   4   forensic tools to the best of your knowledge, sir?
10:00   5   A    No.
10:00   6   Q    This appears to you just to be a picture of a phone,
10:00   7   right?
10:00   8   A    Yes.
10:00   9              MR. AVENATTI:  Let's go to Exhibit 119.
10:00  10   BY MR. AVENATTI:
10:00  11   Q    Was Exhibit 119 acquired utilizing the Department of
10:01  12   Justice's technology Cellebrite?
10:01  13   A    No.
10:01  14   Q    120 -- by the way, before we get to 120, I have to ask
10:01  15   a question that I need to ask, which is:  This Cellebrite
10:01  16   technology, the Department of Justice has had that for a
10:01  17   number of years, correct?
10:01  18   A    Yes.
10:01  19   Q    Long before 2018; isn't that true?
10:01  20   A    Yes.
10:01  21   Q    Directing your attention to Exhibit 120, was
10:01  22   Exhibit 120 acquired utilizing any forensic tool to the best
10:01  23   of your knowledge?
10:01  24   A    No.
10:02  25              MR. AVENATTI:  160, please.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:02   1   BY MR. AVENATTI:

10:02   2   Q    Was Exhibit 160 acquired using any of the Department of

10:02   3   Justice's forensic tools?

10:02   4   A    It does not appear to be.

10:02   5   Q    Cellebrite certainly wasn't used; was it?

10:02   6   A    It doesn't look like it, no.

10:02   7   Q    162, was Cellebrite used in connection with 162?

10:03   8   A    It doesn't look like it.

10:03   9   Q    Was any of the Department of Justice's forensic tools

10:03  10   used in connection with 162 from what you can tell?

10:03  11   A    No.

10:03  12        MR. AVENATTI:  Exhibit 274.  Maybe we can blow up

10:03  13   half of the page, please.

10:04  14   BY MR. AVENATTI:

10:04  15   Q    Is 274 a Cellebrite extraction report?

10:04  16   A    I don't know.  I'm not sure.

10:04  17   Q    So you are not sure of whether 274 is a Cellebrite

10:04  18   extraction report?

10:04  19        MR. WYMAN:  Asked and answered.

10:04  20        THE COURT:  Overruled.

10:04  21   BY THE WITNESS:

10:04  22   Q    Is that your testimony?

10:04  23   A    Yes.  I am not sure.

10:04  24   Q    Okay.  Well, does 274 look anything similar to the

10:04  25   Cellebrite extraction reports that we were speaking about

10:04    1    earlier, to you?

10:04    2    A    Not the ones we looked at previously.

10:04    3    Q    Can you see at the top in the header of 274?  Does that

10:04    4    look like a screenshot to you or a Cellebrite extraction

10:04    5    report?

10:04    6    A    This looks like a screenshot.

10:04    7    Q    Do you believe that 274 was utilized or -- strike that.

10:05    8    Do you believe that some forensic tool was utilized in

10:05    9    connection with 274 based on your review of the exhibit,

10:05   10    sir?

10:05   11    A    I'm unsure based on I see page numbers at the bottom of

10:05   12    the screenshot, and just taking screenshots wouldn't put

10:05   13    page numbers in.

10:05   14            MR. AVENATTI:  Ms. Hernandez, could you blow up

10:05   15    the lower right-hand corner for the jury, please.

10:05   16    BY MR. AVENATTI:

10:05   17    Q    Page 1 of 37, is that what you're speaking about?

10:06   18    A    Yes.

10:06   19    Q    So if these were screenshots, they were altered in some

10:06   20    way when the document -- when page numbers were placed on

10:06   21    the document?  Is that your testimony, sir?

10:06   22    A    Yes.

10:06   23    Q    I'm sorry?  Yes?

10:06   24    A    Yes.

10:06   25    Q    Other than the page numbers, is there anything that

| | | |
|---|---|---|
| 10:06 | 1 | suggests to you that this document 274 is some forensic copy |
| 10:06 | 2 | of text messages? |
| 10:06 | 3 | A    No. |
| 10:07 | 4 | MR. AVENATTI:   278, maybe we could blow that up, |
| 10:07 | 5 | at least the top half for the jury, please. |
| 10:07 | 6 | BY MR. AVENATTI: |
| 10:07 | 7 | Q    Mr. Varani, was 278 acquired utilizing the Department |
| 10:07 | 8 | of Justice's standard forensic tools. |
| 10:07 | 9 | A    It doesn't look like it. |
| 10:07 | 10 | Q    Was Cellebrite used? |
| 10:07 | 11 | A    It doesn't look like it. |
| 10:07 | 12 | Q    Was any laboratory in Washington, D.C., or anywhere |
| 10:07 | 13 | else used? |
| 10:07 | 14 | A    I don't know.  I did not examine the cell phones in |
| 10:08 | 15 | this case, so I don't know who did or how it happened. |
| 10:08 | 16 | Q    Or if it ever happened? |
| 10:08 | 17 | A    I have no knowledge about cell phones related to this |
| 10:08 | 18 | case. |
| 10:08 | 19 | Q    Sir, my point is you don't know if any cell phone other |
| 10:08 | 20 | than the ones with the extraction reports were ever examined |
| 10:08 | 21 | or analyzed by anybody in the Department of Justice; do you? |
| 10:08 | 22 | MR. WYMAN:  Objection.  Leading. |
| 10:08 | 23 | THE COURT:  Overruled. |
| 10:08 | 24 | THE WITNESS:  Could you repeat the question, |
| 10:08 | 25 | please. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:08 | 1 | MR. AVENATTI:  Your Honor, could I have it read |
| 10:08 | 2 | back, please? |
| 10:08 | 3 | THE COURT:  Yes.  Better yet, rephrase it. |
| 10:08 | 4 | BY MR. AVENATTI: |
| 10:08 | 5 | Q    Mr. Varani, you don't know if any cell phone from any |
| 10:08 | 6 | witness in this case was ever analyzed or examined by any |
| 10:08 | 7 | member of the Department of Justice other than those cell |
| 10:09 | 8 | phones that are reflected in or those messages that are |
| 10:09 | 9 | reflected in the extraction reports; isn't that true? |
| 10:09 | 10 | MR. WYMAN:  Objection.  Leading, foundation. |
| 10:09 | 11 | THE COURT:  Sustained.  Leading. |
| 10:09 | 12 | MR. AVENATTI:  Adverse witness, Your Honor. |
| 10:09 | 13 | I'll rephrase. |
| 10:09 | 14 | BY MR. AVENATTI: |
| 10:09 | 15 | Q    Mr. Varani -- |
| 10:09 | 16 | THE COURT:  Incorrect.  Proceed. |
| 10:09 | 17 | MR. AVENATTI:  May I have it read back? |
| 10:09 | 18 | THE COURT:  Yes. |
| 10:09 | 19 | MR. AVENATTI:  Thank you, Your Honor. |
| 10:09 | 20 | (Record read) |
| 10:09 | 21 | THE WITNESS:  I don't even know that the -- I |
| 10:09 | 22 | don't even know the Department of Justice's role in the cell |
| 10:09 | 23 | phone extraction reports that we reviewed previously. |
| 10:10 | 24 | BY MR. AVENATTI: |
| 10:10 | 25 | Q    You understand the Department of Justice is prosecuting |

| | | |
|---|---|---|
| 10:10 | 1 | this case, though, correct? |
| 10:10 | 2 | A    Yes. |
| 10:10 | 3 | Q    And turning back to 278, based on your experience 278 |
| 10:10 | 4 | is a screenshot of alleged text messages; is that right? |
| 10:10 | 5 | A    It looks that way, yes. |
| 10:10 | 6 | Q    Were any screenshots taken of the servers? |
| 10:10 | 7 | A    No. |
| 10:10 | 8 | Q    Why were screenshots not taken of the servers? |
| 10:10 | 9 | A    It was not in the request made to the lab. |
| 10:10 | 10 | Q    And because the proper way to acquire forensic |
| 10:11 | 11 | electronic data from a device is not via a screenshot; is |
| 10:11 | 12 | it, sir? |
| 10:11 | 13 | A    Ideally it's not. |
| 10:11 | 14 | Q    Thank you. |
| 10:11 | 15 |         MR. AVENATTI:  294, please. |
| 10:11 | 16 | BY MR. AVENATTI: |
| 10:11 | 17 | Q    I will show you the first page of Exhibit 294, which |
| 10:12 | 18 | are purportedly text messages between Ms. Phan and me.  My |
| 10:12 | 19 | question is:  Is 294 a forensic extraction from any cell |
| 10:12 | 20 | phone? |
| 10:12 | 21 | A    It does not appear to be. |
| 10:12 | 22 | Q    Based on your experience was Exhibit 294 acquired using |
| 10:12 | 23 | Cellebrite or any other Department of Justice forensic tool? |
| 10:12 | 24 | A    No, it does not look like that. |
| 10:13 | 25 | Q    Now, in your lab -- strike that.  Where is your lab |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:13   1   again?

10:13   2   A    It's in Washington, D.C.

10:13   3   Q    Is that a Department of Justice lab?

10:13   4   A    Yes.

10:13   5   Q    How big is the lab?

10:13   6        MR. WYMAN:  Objection.  Relevance.

10:13   7        THE COURT:  Overruled.

10:13   8        THE WITNESS:  We have about 12 employees

10:13   9   currently.

10:13   10  BY MR. AVENATTI:

10:13   11  Q    And within that lab you have, I think you said, FTK and

10:13   12  Cellebrite as well as other forensic tools?

10:13   13  A    Yes.

10:13   14  Q    And does the lab have licenses for those tools, meaning

10:13   15  they have purchased those tools for use in connection with

10:13   16  their criminal investigations?

10:13   17  A    Yes.  That's correct.

10:13   18  Q    And does it cost the Department of Justice -- to the

10:14   19  best of your knowledge, does it cost the department

10:14   20  additional money every time they use one of the tools on a

10:14   21  device?

10:14   22  A    It may on certain features, but for the most part the

10:14   23  tools, once acquired, can be used as needed.

10:14   24  Q    So like Cellebrite, once you acquire a license, you

10:14   25  could use it as many times as you want without additional

| | | |
|---|---|---|
| 10:14 | 1 | cost, right? |
| 10:14 | 2 | A    Yes. |
| 10:14 | 3 | Q    So it doesn't matter whether you use Cellebrite on 10 |
| 10:14 | 4 | cell phones or 10,000 cell phones.  The cost to the |
| 10:14 | 5 | Department of Justice is the same, right? |
| 10:14 | 6 | A    Right. |
| 10:14 | 7 | Q    So based on your knowledge, had the Department of |
| 10:14 | 8 | Justice utilized Cellebrite to extract text messages from |
| 10:15 | 9 | the phones where we just looked at the screenshots of the |
| 10:15 | 10 | text messages, that would not have cost the Department of |
| 10:15 | 11 | Justice any additional money as it relates to the software |
| 10:15 | 12 | Cellebrite; isn't that true? |
| 10:15 | 13 | A    Right.  Correct. |
| 10:15 | 14 | MR. AVENATTI:  Nothing further, Your Honor. |
| 10:15 | 15 | MR. WYMAN:  Nothing from the government, Your |
| 10:15 | 16 | Honor. |
| 10:15 | 17 | THE COURT:  Sir, you may step down.  Thank you. |
| 10:15 | 18 | MR. AVENATTI:  Your Honor -- |
| 10:15 | 19 | THE COURT:  Let's go forward with another witness. |
| 10:15 | 20 | MR. AVENATTI:  All right. |
| 10:15 | 21 | Your Honor, the defense calls Carlos Colorado. |
| 10:16 | 22 | CARLOS COLORADO, DEFENDANT'S WITNESS, SWORN |
| 10:17 | 23 | THE CLERK:  Please state and spell your first and |
| 10:17 | 24 | last name. |
| 10:17 | 25 | THE WITNESS:  Carlos Colorado, C-a-r-l-o-s, |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

78

| | | |
|---|---|---|
| 10:17 | 1 | C-o-l-o-r-a-d-o. |
| 10:17 | 2 | THE CLERK:  Thank you. |
| 10:17 | 3 | THE COURT:  Mr. Avenatti. |
| 10:17 | 4 | DIRECT EXAMINATION |
| 10:17 | 5 | BY MR. AVENATTI: |
| 10:17 | 6 | Q    Mr. Colorado, good morning. |
| 10:17 | 7 | A    Good morning. |
| 10:17 | 8 | Q    You previously testified before the jury in this |
| 10:17 | 9 | matter, correct? |
| 10:17 | 10 | A    I did. |
| 10:17 | 11 | Q    And to refresh their recollection, you were employed at |
| 10:17 | 12 | Eagan Avenatti during what period of time? |
| 10:17 | 13 | A    I was employed at Eagan Avenatti from October 2012 |
| 10:17 | 14 | until approximately March 2019. |
| 10:17 | 15 | Q    So about six and a half years, sir? |
| 10:18 | 16 | A    Correct. |
| 10:18 | 17 | Q    And how many cases did you work on at the firm during |
| 10:18 | 18 | that six-and-a-half-year time period? |
| 10:18 | 19 | A    I don't have the exact number, but I would estimate at |
| 10:18 | 20 | least a dozen or so. |
| 10:18 | 21 | Q    One of those cases was Mr. Johnson's case, correct? |
| 10:18 | 22 | A    That's right. |
| 10:18 | 23 | Q    What other cases do you recall working on at the time? |
| 10:18 | 24 | MR. WYMAN:  Objection.  Relevance. |
| 10:18 | 25 | THE COURT:  Overruled. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:18 | 1 | THE WITNESS:  I recall working on a few cases |
| 10:18 | 2 | involving the NFL as a defendant.  I recall working on a |
| 10:19 | 3 | matter, on a few medical malpractice type matters, smaller |
| 10:19 | 4 | cases.  Do you want case names? |
| 10:19 | 5 | BY MR. AVENATTI: |
| 10:19 | 6 | Q    You can just generally describe the cases.  That's |
| 10:19 | 7 | fine. |
| 10:19 | 8 | A    I recall some personal injury cases.  I worked briefly |
| 10:19 | 9 | on a case involving a cemetery as a defendant.  I worked on |
| 10:19 | 10 | a case that was a very small case that I handled exclusively |
| 10:19 | 11 | with Yahoo as a defendant.  That's all I'm recalling at this |
| 10:19 | 12 | moment. |
| 10:19 | 13 | Q    You handled about 15 to 20 cases involving dental |
| 10:20 | 14 | centers here in Southern California, correct? |
| 10:20 | 15 | MR. WYMAN:  Objection.  Leading. |
| 10:20 | 16 | THE COURT:  Sustained. |
| 10:20 | 17 | BY MR. AVENATTI: |
| 10:20 | 18 | Q    Sir, do you have a recollection of handling 15 to -- |
| 10:20 | 19 | well, strike that.  Did you ever work on any cases involving |
| 10:20 | 20 | dental centers here in Southern California? |
| 10:20 | 21 | A    Yes, I did. |
| 10:20 | 22 | Q    How many clients did the firm have in connection with |
| 10:20 | 23 | those cases? |
| 10:20 | 24 | A    It was in the range of 15 to 20. |
| 10:20 | 25 | Q    Fifteen to 20 clients, correct? |

| | | |
|---|---|---|
| 10:20 | 1 | A    Correct. |
| 10:20 | 2 | Q    Did you regularly communicate with those clients |
| 10:20 | 3 | without me present? |
| 10:20 | 4 | A    Yes. |
| 10:20 | 5 | Q    Most of those communications were in Spanish; were they |
| 10:20 | 6 | not? |
| 10:21 | 7 | MR. WYMAN:  Objection.  Leading. |
| 10:21 | 8 | THE COURT:  Overruled. |
| 10:21 | 9 | THE WITNESS:  That's correct.  The clients were |
| 10:21 | 10 | Hispanic. |
| 10:21 | 11 | BY MR. AVENATTI: |
| 10:21 | 12 | Q    And you are a native Spanish speaker; am I right? |
| 10:21 | 13 | A    Correct. |
| 10:21 | 14 | Q    I am not.  You were aware of that at the time; is that |
| 10:21 | 15 | right? |
| 10:21 | 16 | A    Correct. |
| 10:21 | 17 | Q    The cemetery case, how many clients did the firm have |
| 10:21 | 18 | in connection with the cemetery case? |
| 10:21 | 19 | A    I don't know, but it was a class action, so it was a |
| 10:21 | 20 | large number of clients. |
| 10:21 | 21 | Q    Thousands, right? |
| 10:21 | 22 | A    It may have been thousands. |
| 10:21 | 23 | Q    The case involving Yahoo, you handled that case |
| 10:21 | 24 | basically on your own; is that right? |
| 10:21 | 25 | A    That's correct. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:21 | 1 | Q    Did you regularly communicate with the client in that |
| 10:22 | 2 | case without my involvement? |
| 10:22 | 3 | A    Yes, I did. |
| 10:22 | 4 | Q    You mentioned a few NFL cases.  Do you recall that? |
| 10:22 | 5 | A    Yes. |
| 10:22 | 6 | Q    Do you have a recollection of ever communicating with |
| 10:22 | 7 | the clients in those cases without my involvement? |
| 10:22 | 8 | A    On occasion, yes. |
| 10:22 | 9 | Q    From time to time you would meet with Mr. Johnson |
| 10:22 | 10 | without my involvement, right? |
| 10:22 | 11 | A    Yes. |
| 10:23 | 12 | Q    The med mal cases you mentioned, were those different |
| 10:23 | 13 | from the dental center cases? |
| 10:23 | 14 | A    They were. |
| 10:23 | 15 | Q    How many of those were there as far as number of cases? |
| 10:23 | 16 | A    Probably a handful. |
| 10:23 | 17 | Q    So is that five? |
| 10:23 | 18 | A    In that range, but I don't have the exact number. |
| 10:23 | 19 | Q    How many plaintiffs were in those cases?  Well, strike |
| 10:23 | 20 | that.  How many clients did the firm have in connection with |
| 10:23 | 21 | those cases? |
| 10:23 | 22 | A    The ones I have in mind were separate cases, and each |
| 10:23 | 23 | one of them was an individual client.  So about five. |
| 10:23 | 24 | Q    Did you communicate with those clients independent of |
| 10:23 | 25 | me from time to time? |

10:23   1   A    Yes.

10:23   2   Q    You mentioned a personal injury case.  Do you recall

10:23   3   that?

10:24   4   A    Yes.

10:24   5   Q    What case generally was that?

10:24   6   A    As I recall, it involved a police officer who had -- it

10:24   7   was actually a med mal case.  It was a police officer who

10:24   8   had an injury and surgery.

10:24   9   Q    We represented the police officer, right?

10:24   10  A    Correct.

10:24   11  Q    And did you have regular communication with him in

10:24   12  connection with his case independent of me?

10:24   13  A    Yes.

10:24   14  Q    Can you recall any other cases that you worked on?

10:24   15  A    I worked on a case that involved a defamation claim

10:24   16  against one of our clients, and we defended that client.

10:25   17  Q    And did you have communication with that client from

10:25   18  time to time independent of me?

10:25   19  A    From time to time, yes.

10:25   20  Q    While you were at the firm, did you witness other

10:25   21  attorneys at the firm other than yourself and me have

10:25   22  communications with clients of the firm where I was not

10:25   23  involved?

10:25   24  A    I think the ones that I witnessed would have been ones

10:25   25  that I was also involved in, so I would have been involved

83

```
10:26   1   in that.
10:26   2   Q    From time to time you together with other attorneys of
10:26   3   the firm would jointly have communications with clients that
10:26   4   I was not a party to the communications; is that right?
10:26   5   A    Yes, that's right.
10:26   6   Q    That was a fairly regular occurrence as it related to
10:26   7   the operation of the law firm, right?
10:26   8   A    Yes.
10:26   9   Q    Because at any given time the firm could have thousands
10:26  10   of clients; is that right?
10:26  11               MR. WYMAN:  Objection.  Leading.
10:26  12               THE COURT:  Sustained.
10:26  13   BY MR. AVENATTI:
10:26  14   Q    Sir, did you understand while you were at the firm that
10:26  15   at any given time the firm sometimes would have over a
10:26  16   thousand clients?
10:26  17               MR. WYMAN:  Objection.  Leading.
10:26  18               THE COURT:  Overruled.
10:26  19               THE WITNESS:  There were times when a large number
10:26  20   of clients required other attorneys other than yourself to
10:26  21   communicate with the client.
10:26  22   BY MR. AVENATTI:
10:27  23   Q    Did you witness during your time at the firm that in
10:27  24   those instances other attorneys would be running cases as it
10:27  25   related to the day-to-day?
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

84

| | | |
|---|---|---|
| 10:27 | 1 | A    As it related to the day -- |
| 10:27 | 2 | MR. WYMAN:  Vague as to leading cases, Your Honor. |
| 10:27 | 3 | THE COURT:  Rephrase the question. |
| 10:27 | 4 | BY MR. AVENATTI: |
| 10:27 | 5 | Q    Sir, during your six and a half years at the firm, did |
| 10:27 | 6 | you witness other attorneys including yourself running the |
| 10:27 | 7 | day-to-day involvement on cases at the law firm? |
| 10:27 | 8 | A    The day-to-day involvement, yes. |
| 10:27 | 9 | Q    Attorney other than me; is that right? |
| 10:27 | 10 | A    That's correct. |
| 10:28 | 11 | Q    Now, since you have left the firm -- strike that. |
| 10:28 | 12 | Since leaving the firm in March of 2019, did you continue to |
| 10:28 | 13 | work with some of the clients who had been clients of the |
| 10:28 | 14 | law firm? |
| 10:28 | 15 | A    Yes. |
| 10:28 | 16 | Q    And did you continue to have communications with those |
| 10:28 | 17 | clients in much the same way that you did while you were at |
| 10:28 | 18 | the law firm? |
| 10:28 | 19 | A    Yes. |
| 10:29 | 20 | Q    Do you presently work with a gentleman by the name of |
| 10:29 | 21 | Filippo Marchino? |
| 10:29 | 22 | MR. WYMAN:  Objection.  Asked and answered a |
| 10:29 | 23 | couple of weeks ago. |
| 10:29 | 24 | THE COURT:  Overruled. |
| 10:29 | 25 | THE WITNESS:  Yes, I do. |

10:29  1   BY MR. AVENATTI:
10:29  2   Q    And did you ever work with Mr. Marchino in connection
10:29  3   with a case involving Jim Carrey?
10:29  4            MR. WYMAN:  Objection.  Relevance and 608.
10:29  5            THE COURT:  Sustained.
10:29  6            We will take the mid-morning break here, ladies
10:29  7   and gentlemen.  Please remember the admonition not to
10:29  8   discuss the case with anyone and not to form any opinions on
10:30  9   the issues in the case until it is submitted to you.  And
10:30  10  please do not do any research.
10:30  11            (Jury not present)
10:30  12            THE COURT:  You may step down.
10:30  13            Juror No. 5 handed Ms. Bredahl a note indicating
10:31  14  she had been exposed to a newspaper headline concerning
10:31  15  dismissal of a civil suit brought by Mr. Avenatti.  I
10:31  16  propose that we visit with her right before we commence this
10:31  17  afternoon, assuming you want to visit with her.
10:31  18            MR. AVENATTI:  Most certainly, Your Honor.  Are
10:31  19  you proposing that at the end of the lunch break?
10:31  20            THE COURT:  Yeah.
10:31  21            MR. AVENATTI:  Agreed.
10:31  22            MR. SAGEL:  Your Honor will be conducting the voir
10:31  23  dire?
10:31  24            THE COURT:  Yes.  Initially, yes.
10:31  25            MR. SAGEL:  My only suggestion is if Mr. Avenatti

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
10:31   1   has any questions he wants posed to the juror, that he
10:31   2   provide them to Your Honor.
10:31   3          MR. AVENATTI:  Your Honor, I think you just
10:31   4   indicated that you would initially.  So if we have
10:31   5   additional questions, then I'm assuming Your Honor will
10:32   6   consider them and make a determination?
10:32   7          THE COURT:  I will allow you to ask them in all
10:32   8   likelihood.
10:32   9          MR. AVENATTI:  Thank you.
10:32  10          THE COURT:  With regard to the Rule 29 motion, my
10:32  11   present thought is to hear argument on Counts 1, 2, 4, and
10:32  12   5, and to reserve on all other counts and all other
10:32  13   arguments.  So that will narrow the focus of our discussion.
10:32  14          One question in each of those counts raised is:
10:32  15   Need a particular wire transfer itself be unlawful, or is it
10:32  16   sufficient that the wire transfer is part of the overall
10:32  17   scheme?
10:32  18          So I would be happy to hear you on any other
10:32  19   issues relating to those counts, but I would like you to
10:32  20   address those specifically.
10:33  21          Okay.  We will be in recess.
10:33  22              (Recess taken at 10:33 a.m.;
10:33  23              proceedings resumed at 10:53 a.m.)
10:33  24          (Jury present)
10:53  25          THE COURT:  Mr. Avenatti.
```

| | | |
|---|---|---|
| 10:53 | 1 | MR. AVENATTI:  Your Honor, could I approach to |
| 10:53 | 2 | refresh recollection? |
| 10:53 | 3 | THE COURT:  Yes. |
| 10:53 | 4 | (Document handed to the witness) |
| 10:53 | 5 | BY MR. AVENATTI: |
| 10:53 | 6 | Q    Mr. Colorado, I have handed you a document.  My |
| 10:54 | 7 | question is:  Does that refresh your recollection as to some |
| 10:54 | 8 | of the other matters you worked on at the firm while you |
| 10:54 | 9 | were there for six and a half years? |
| 10:54 | 10 | A    Yes, it does. |
| 10:54 | 11 | Q    And do you recall that while you were at the firm, you |
| 10:54 | 12 | also worked on a number of matters for the company AT&T? |
| 10:54 | 13 | A    Yes. |
| 10:54 | 14 | Q    And did I have any involvement with any of the AT&T |
| 10:54 | 15 | matters? |
| 10:54 | 16 | A    I don't know. |
| 10:54 | 17 | Q    Well, to the best of your recollection, did I have any |
| 10:54 | 18 | involvement in the AT&T matter? |
| 10:54 | 19 | MR. WYMAN:  Asked and answered. |
| 10:54 | 20 | THE COURT:  Sustained. |
| 10:54 | 21 | BY MR. AVENATTI: |
| 10:54 | 22 | Q    Sir, do you recall who the attorney was in the law firm |
| 10:54 | 23 | who was the lead attorney on the AT&T matter? |
| 10:55 | 24 | A    Yes.  The active attorney on the AT&T matters was |
| 10:55 | 25 | Mr. Frank. |

88

| | | |
|---|---|---|
| 10:55 | 1 | Q    Mr. Jason Frank, correct? |
| 10:55 | 2 | A    Correct. |
| 10:55 | 3 | Q    And when you were working on the AT&T matters, you |
| 10:55 | 4 | worked with him; is that right? |
| 10:55 | 5 | A    That's right. |
| 10:55 | 6 | Q    Did you ever work with me on anything having to do with |
| 10:55 | 7 | any of the AT&T matters? |
| 10:55 | 8 | A    Not that I recall. |
| 10:55 | 9 | Q    And how many of these AT&T matters were you involved |
| 10:55 | 10 | with while you were at the firm? |
| 10:55 | 11 | MR. WYMAN:  Objection.  Relevance, 403. |
| 10:55 | 12 | THE COURT:  Sustained. |
| 10:55 | 13 | BY MR. AVENATTI: |
| 10:56 | 14 | Q    Now that you have had the benefit of this document, |
| 10:56 | 15 | what other matters do you recall working on while you were |
| 10:56 | 16 | at the firm? |
| 10:56 | 17 | MR. WYMAN:  Same objections. |
| 10:56 | 18 | THE COURT:  What's the relevance, Mr. Avenatti? |
| 10:56 | 19 | MR. AVENATTI:  I'm going to establish that he |
| 10:56 | 20 | regularly communicated with clients, contrary to other |
| 10:56 | 21 | testimony the government elicited. |
| 10:56 | 22 | MR. WYMAN:  403 at this point, Your Honor. |
| 10:56 | 23 | MR. AVENATTI:  Well, if they'll stipulate, we can |
| 10:56 | 24 | shortcut it. |
| 10:56 | 25 | THE COURT:  Pursue this just a little bit farther. |

| | | |
|---|---|---|
| 10:56 | 1 | MR. AVENATTI:  Thank you, sir. |
| 10:56 | 2 | BY MR. AVENATTI: |
| 10:56 | 3 | Q    Mr. Colorado, the document that I placed in front of |
| 10:56 | 4 | you, now that it has refreshed your recollection, do you |
| 10:56 | 5 | recall other matters that you worked on at the firm while |
| 10:56 | 6 | you were there? |
| 10:56 | 7 | A    Yes.  I recall most of these matters that are on the |
| 10:56 | 8 | document you handed me. |
| 10:56 | 9 | Q    Most of these matters are different than the matters |
| 10:57 | 10 | you testified about earlier, is that right, or at least half |
| 10:57 | 11 | of them? |
| 10:57 | 12 | A    That's correct. |
| 10:57 | 13 | Q    While you were at the firm, did you report to attorneys |
| 10:57 | 14 | that were senior to you other than me from time to time? |
| 10:57 | 15 | A    Yes. |
| 10:57 | 16 | Q    And did you communicate with clients and opposing |
| 10:57 | 17 | parties at their request? |
| 10:57 | 18 | MR. WYMAN:  401, 403. |
| 10:57 | 19 | THE COURT:  Overruled. |
| 10:57 | 20 | THE WITNESS:  Yes. |
| 10:57 | 21 | BY MR. AVENATTI: |
| 10:57 | 22 | Q    Sir, while you were at the firm, in connection with |
| 10:57 | 23 | some matters would you keep track of your time? |
| 10:58 | 24 | A    Yes. |
| 10:58 | 25 | Q    Explain to the jury how you would do that. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:58    1    A    For some of the -- actually for all of the matters, I

10:58    2    tried to keep an Excel spreadsheet that I would log my hours

10:58    3    on for personal reference.  There was no need for billing

10:58    4    purposes on most of the matters to do time entry both in

10:58    5    order to track what I was working on and efficiency and so

10:58    6    forth, I track using those Excel spreadsheets.

10:58    7    Q    For some matters you did track your time for billing

10:58    8    purposes; isn't that true?

10:58    9    A    Correct.

10:58   10    Q    And for the matters that you tracked your time for

10:58   11    billing purposes, how would that work?

10:58   12               MR. WYMAN:  Objection.  Relevance.

10:58   13               THE COURT:  Mr. Avenatti.

10:58   14               MR. AVENATTI:  Your Honor, it goes hand in hand

10:58   15    with Tabs and it goes hand in hand with some of the matters

10:58   16    that were handled that were that were non-contingency, Your

10:59   17    Honor.

10:59   18               THE COURT:  Sustained.

10:59   19    BY MR. AVENATTI:

10:59   20    Q    Mr. Colorado, were you aware of a program called Tabs

10:59   21    while you were at the firm?

10:59   22    A    I was not.

10:59   23    Q    Would you give your time when it was being tracked to

10:59   24    an administrative assistant to be input into a computer

10:59   25    program?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:59 | 1 | MR. WYMAN:  Relevance, 403. |
| 10:59 | 2 | THE COURT:  Overruled. |
| 10:59 | 3 | THE WITNESS:  Yes. |
| 10:59 | 4 | BY MR. AVENATTI: |
| 10:59 | 5 | Q    So you would keep track of your time and then you would |
| 10:59 | 6 | give it to another individual at the firm who would input it |
| 10:59 | 7 | into a computer program, right? |
| 10:59 | 8 | MR. WYMAN:  Asked and answered. |
| 10:59 | 9 | THE COURT:  Sustained. |
| 10:59 | 10 | BY MR. AVENATTI: |
| 10:59 | 11 | Q    Who did you give your time to in order to be input into |
| 10:59 | 12 | this computer program? |
| 10:59 | 13 | A    I gave my Excel spreadsheets that I used to our |
| 10:59 | 14 | receptionist. |
| 10:59 | 15 | Q    And who was that at the time? |
| 10:59 | 16 | A    It was a woman by the name of Hillary. |
| 10:59 | 17 | Q    Hillary Wolett? |
| 10:59 | 18 | A    Correct. |
| 10:59 | 19 | Q    And you understood that Ms. Wolett would be inputting |
| 11:00 | 20 | that into a computer program, but you did not know the name |
| 11:00 | 21 | of the program; is that right? |
| 11:00 | 22 | A    Correct. |
| 11:00 | 23 | Q    And did you have the understanding that after the time |
| 11:00 | 24 | would be inputted into the computer program, that a bill |
| 11:00 | 25 | would be generated from time to time with a client that |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

92

| | | |
|---|---|---|
| 11:00 | 1 | would reflect your time? |
| 11:00 | 2 | MR. WYMAN:  Leading, foundation, and 403. |
| 11:00 | 3 | THE COURT:  Leading, sustained. |
| 11:00 | 4 | BY MR. AVENATTI: |
| 11:00 | 5 | Q    Mr. Colorado, did you understand that your time that |
| 11:00 | 6 | you were tracking that was put into the computer program, |
| 11:00 | 7 | that that time would be used for some purpose ultimately? |
| 11:00 | 8 | A    Yes. |
| 11:00 | 9 | Q    And what purpose did you understand that that time |
| 11:00 | 10 | would be used for? |
| 11:00 | 11 | A    My understanding was that the calculation from the |
| 11:00 | 12 | time, the time that was tracked, would be used at the time |
| 11:01 | 13 | that there was any award or verdict in order to justify the |
| 11:01 | 14 | firm's fees in that case. |
| 11:01 | 15 | Q    Did you also have -- well, strike that.  While you were |
| 11:01 | 16 | at the firm, did you understand that the firm also did |
| 11:01 | 17 | hourly work for clients, meaning billed by the hour? |
| 11:01 | 18 | A    For some of the clients like AT&T, yes. |
| 11:01 | 19 | Q    And did you have the understanding that one of the |
| 11:01 | 20 | purposes for which this time tracking, did you have the |
| 11:01 | 21 | understanding that one of the purposes was so that the hours |
| 11:01 | 22 | could then be billed to the client at an hourly rate? |
| 11:01 | 23 | A    Yes. |
| 11:01 | 24 | Q    Did you have occasion to review draft bills before they |
| 11:01 | 25 | were sent to clients? |

| | | |
|---|---|---|
| 11:01 | 1 | A    That I did not. |
| 11:02 | 2 | Q    Now, prior to you being called to testify in this case, |
| 11:02 | 3 | you met with the government on at least one occasion; is |
| 11:02 | 4 | that right? |
| 11:02 | 5 | MR. WYMAN:  Objection.  Asked and answered. |
| 11:02 | 6 | MR. AVENATTI:  It's a foundational question. |
| 11:02 | 7 | THE COURT:  Overruled. |
| 11:02 | 8 | THE WITNESS:  Correct. |
| 11:02 | 9 | BY MR. AVENATTI: |
| 11:02 | 10 | Q    How many times did you meet with them? |
| 11:02 | 11 | A    Twice in person, and now I don't recall if the third |
| 11:02 | 12 | time was by phone or not.  A total of three times, and one |
| 11:02 | 13 | may have been by phone. |
| 11:02 | 14 | Q    Do you recall any questions from the Assistant U.S. |
| 11:02 | 15 | Attorneys or agents during any of those three times relating |
| 11:03 | 16 | to what accounting systems the law firm used while you were |
| 11:03 | 17 | there? |
| 11:03 | 18 | A    I don't have any specific recollection about that. |
| 11:03 | 19 | Q    As you sit there today, you don't recall any questions |
| 11:03 | 20 | about that topic, do you, meaning the accounting system? |
| 11:03 | 21 | A    I don't recall questions on that topic. |
| 11:03 | 22 | MR. AVENATTI:  Nothing further, Your Honor. |
| 11:03 | 23 | THE COURT:  Mr. Wyman. |
| 11:03 | 24 | MR. WYMAN:  Thank you, Your Honor. |
| 11:03 | 25 | CROSS-EXAMINATION |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:03 | 1 | BY MR. WYMAN: |
| 11:03 | 2 | Q    Good morning, Mr. Colorado. |
| 11:03 | 3 | A    Good morning. |
| 11:03 | 4 | Q    Now, the defendant asked you about various cases in |
| 11:04 | 5 | which you regularly communicated with clients; is that |
| 11:04 | 6 | right? |
| 11:04 | 7 | A    Yes. |
| 11:04 | 8 | Q    In a case that you were working on with the defendant, |
| 11:04 | 9 | if he told you not to communicate with a client, you would |
| 11:04 | 10 | stop communicating with the client, right? |
| 11:04 | 11 | A    I did, yes. |
| 11:04 | 12 | Q    And the cases he asked you about in which you would |
| 11:04 | 13 | communicate with the client, he didn't ask you anything |
| 11:04 | 14 | about communicating with them regarding their settlements, |
| 11:04 | 15 | right? |
| 11:04 | 16 | A    Correct. |
| 11:04 | 17 | Q    And on those cases that you discussed on direct, none |
| 11:04 | 18 | of them had anything to do with Geoffrey Johnson's case, |
| 11:04 | 19 | right? |
| 11:04 | 20 | A    Other than the Johnson case itself, which I believe was |
| 11:04 | 21 | discussed on direct. |
| 11:04 | 22 | Q    Right.  The AT&T case had nothing to do with the |
| 11:05 | 23 | Johnson case, right? |
| 11:05 | 24 | A    Correct. |
| 11:05 | 25 | Q    The cemetery case had nothing to do with Mr. Johnson's |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:05 | 1 | case? |
| 11:05 | 2 | A    Correct. |
| 11:05 | 3 | Q    The med mal cases, no relevance to Mr. Johnson's case? |
| 11:05 | 4 | A    Correct. |
| 11:05 | 5 | Q    And the same is true with regard to the cases of Alexis |
| 11:05 | 6 | Gardner, Gregory Barela, and Michelle Phan, right? |
| 11:05 | 7 | A    I did not work on those cases. |
| 11:05 | 8 | Q    And they had nothing to do with the cases that you did |
| 11:05 | 9 | work on that you talked about, correct? |
| 11:05 | 10 | MR. AVENATTI:  Objection.  Lacks foundation. |
| 11:05 | 11 | THE COURT:  Overruled. |
| 11:05 | 12 | BY MR. WYMAN: |
| 11:05 | 13 | Q    At the end of your direct the defendant asked you some |
| 11:05 | 14 | questions about a timekeeping system that you had.  Do you |
| 11:05 | 15 | recall that? |
| 11:05 | 16 | A    Right. |
| 11:05 | 17 | Q    You said you would put your time in a spreadsheet and |
| 11:05 | 18 | then you would give it to your receptionist, Ms. Ouellette? |
| 11:05 | 19 | A    That's right. |
| 11:05 | 20 | Q    And your understanding was that she would input it into |
| 11:05 | 21 | a the software for your firm's hourly cases, right? |
| 11:06 | 22 | MR. AVENATTI:  Objection.  Misstates the |
| 11:06 | 23 | testimony. |
| 11:06 | 24 | THE COURT:  Overruled. |
| 11:06 | 25 | THE WITNESS:  For the hourly cases and for the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 11:06 | 1 | class-action cases. |

11:06  1  class-action cases.

11:06  2  BY MR. WYMAN:

11:06  3  Q    Was Geoffrey Johnson's case an hourly case?

11:06  4  A    It was not.

11:06  5  Q    Was it a class action?

11:06  6  A    It was not.

11:06  7  Q    Thank you.

11:06  8        MR. WYMAN:  No further questions.

11:06  9                    REDIRECT EXAMINATION

11:06  10  BY MR. AVENATTI:

11:06  11  Q    Mr. Colorado, you don't know what time was tracked by

11:06  12  other attorneys, if any, in connection with the Johnson

11:06  13  case; do you?

11:06  14        MR. WYMAN:  Beyond the scope.  Foundation.

11:06  15        THE COURT:  Overruled.

11:06  16        THE WITNESS:  I do not.

11:06  17  BY MR. AVENATTI:

11:06  18  Q    So you don't know what time was input into this

11:06  19  computer program that you don't know the name of on

11:06  20  Mr. Johnson's case; do you?

11:06  21        MR. WYMAN:  Beyond the scope, and asked and

11:06  22  answered.

11:06  23        THE COURT:  Asked and answered.  Sustained.

11:06  24  BY MR. AVENATTI:

11:07  25  Q    Sir, isn't it true that there were -- well, strike

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:07   1    that.  Do you know if any time was tracked on any

11:07   2    contingency cases that the law firm had?  Do you know?

11:07   3    A    I don't know.

11:07   4    Q    Who would be more knowledgeable based on your

11:07   5    experience about that topic?  Judy Regnier or you?

11:07   6             MR. WYMAN:  Beyond the scope.  Calls for

11:07   7    speculation.

11:07   8             THE COURT:  Sustained.

11:07   9    BY MR. AVENATTI:

11:07  10    Q    Ms. Regnier has testified before this jury that

11:07  11    expenses were tracked in the same computer program that you

11:07  12    don't know the name of.  Do you have any reason to dispute

11:07  13    that?

11:07  14             MR. WYMAN:  Beyond the scope.

11:07  15             THE COURT:  Overruled.

11:08  16             THE WITNESS:  None.

11:08  17             MR. AVENATTI:  Nothing further.

11:08  18             THE COURT:  Mr. Wyman.

11:08  19             MR. WYMAN:  No.  Thank you, Your Honor.

11:08  20             THE COURT:  May the witness be excused?

11:08  21             MR. AVENATTI:  Yes, sir.

11:08  22             MR. WYMAN:  Yes, Your Honor.

11:08  23             THE COURT:  Sir, you may be excused.  Thank you.

11:08  24             Would you call your next witness, please.

11:08  25             MR. AVENATTI:  Yes, Your Honor.

| | | |
|---|---|---|
| 11:08 | 1 | The defense calls John Arden to the stand. |
| 11:08 | 2 | JOHN ARDEN, DEFENDANT'S WITNESS, SWORN |
| 11:09 | 3 | THE CLERK:  If you will please state and spell |
| 11:10 | 4 | your first and last name. |
| 11:10 | 5 | THE WITNESS:  My first name is John, J-o-h-n.  My |
| 11:10 | 6 | last name is Arden, A-r-d-e-n. |
| 11:10 | 7 | THE CLERK:  Thank you. |
| 11:10 | 8 | THE COURT:  Mr. Avenatti. |
| 11:10 | 9 | DIRECT EXAMINATION |
| 11:10 | 10 | BY MR. AVENATTI: |
| 11:10 | 11 | Q    Mr. Arden, good morning. |
| 11:10 | 12 | A    Good morning. |
| 11:10 | 13 | Q    You previously worked as an attorney at Eagan Avenatti, |
| 11:10 | 14 | LLP, correct? |
| 11:10 | 15 | A    Not exactly.  I was an attorney admitted in other |
| 11:11 | 16 | jurisdictions.  But at the time that I worked at Eagan |
| 11:11 | 17 | Avenatti, I was not admitted in California, so I worked in a |
| 11:11 | 18 | more limited role under supervision at the firm. |
| 11:11 | 19 | Q    Well, you were not admitted in California at the time, |
| 11:11 | 20 | but you were admitted in other jurisdictions which you |
| 11:11 | 21 | understood permitted you to perform legal work but not make |
| 11:11 | 22 | court appearances, right? |
| 11:11 | 23 | A    I could do certain tasks. |
| 11:11 | 24 | Q    And did you do certain tasks? |
| 11:11 | 25 | A    Yes, like research and initial drafting of documents. |

11:11  1    Q    And in connection with that work -- well, strike that.
11:11  2    How long were you at the law firm?
11:11  3    A    I believe I started at some point in 2009, and I left
11:11  4    in 2019.
11:11  5    Q    So about ten years; is that right?
11:11  6    A    Almost.
11:11  7    Q    And during that time period, did you work on one or
11:12  8    more matters for Greg Barela?
11:12  9    A    Yes.
11:12  10   Q    What matter or matters do you recall working on for
11:12  11   government witness Greg Barela?
11:12  12   A    I worked on intellectual property disputes.  There was
11:12  13   an arbitration.  And I believe I did a brief amount of work
11:12  14   on another civil action, but I don't remember the details of
11:12  15   it.
11:12  16   Q    How long do you recall working on Mr. Barela's matters?
11:12  17   A    I'm not exactly entirely sure when the matter started.
11:12  18   I don't remember the year that the case was filed, but I
11:12  19   think it was pending for maybe two years.  I'm not sure.
11:13  20   Q    Do you have a recollection that the firm began work for
11:13  21   Mr. Barela in approximately 2014?
11:13  22   A    That doesn't seem necessarily wrong, but I don't
11:13  23   remember the year.
11:13  24   Q    And did you do quite a lot of work on the Barela
11:13  25   intellectual property matter?

```
11:13   1    A    I did.  I did a lot of work.  I did research and
11:13   2    initial drafting.
11:13   3    Q    Did you deal with any experts that were hired in
11:13   4    connection with the Barela matter?
11:13   5    A    I had very limited involvement with experts.
11:13   6    Q    Well, that wasn't exactly my question.  Did you work
11:13   7    with experts in connection with the Barela matter, meaning
11:13   8    experts hired to assist in the prosecution of Mr. Barela's
11:13   9    case?
11:13   10            MR. WYMAN:  Objection.  Leading, and asked and
11:13   11   answered.
11:13   12            THE COURT:  Overruled.
11:13   13            THE WITNESS:  I was aware that there were experts
11:14   14   hired.  I did not have primary responsibility working with
11:14   15   those experts.
11:14   16   BY MR. AVENATTI:
11:14   17   Q    Did you ever have any responsibility -- well, strike
11:14   18   that.  Did you ever communicate with any experts hired in
11:14   19   connection with the Barela case?
11:14   20   A    I probably communicated with them at some point.
11:14   21   Q    Do you recall that there was an intellectual -- strike
11:14   22   that.  Do you recall that there was a patent expert hired in
11:14   23   connection with the Barela case?
11:14   24            MR. SAGEL:  Objection, leading.
11:14   25            THE COURT:  Overruled.
```

| | | |
|---|---|---|
| 11:14 | 1 | THE WITNESS:  I don't really recall the subject |
| 11:14 | 2 | matter of the expert testimony.  I recall a damages expert. |
| 11:14 | 3 | BY MR. AVENATTI: |
| 11:14 | 4 | Q    Do you recall the firm had retained a -- well, strike |
| 11:14 | 5 | that.  Do you have a recollection that a damages expert had |
| 11:14 | 6 | to be hired in connection with Mr. Barela's claim? |
| 11:14 | 7 | A    I do remember that there was a damages expert. |
| 11:14 | 8 | Q    Do you recall communicating with the damages expert? |
| 11:14 | 9 | A    In a very limited way. |
| 11:15 | 10 | Q    Do you have any idea how much the damages expert |
| 11:15 | 11 | charged in connection with Mr. Barela's matter? |
| 11:15 | 12 | A    I do not. |
| 11:15 | 13 | Q    Do you have any knowledge as to how much any expert |
| 11:15 | 14 | charged in connection with the Barela matter? |
| 11:15 | 15 | A    I don't have any recollection of that, no. |
| 11:15 | 16 | Q    Did there come a time where you accompanied me and |
| 11:15 | 17 | Mr. Barela to Denver, Colorado, in connection with a |
| 11:15 | 18 | mediation? |
| 11:15 | 19 | A    I did go to Denver for a mediation, yes. |
| 11:15 | 20 | Q    And who was present at the mediation? |
| 11:15 | 21 | A    Generally you were present.  Mr. Barela was present. |
| 11:16 | 22 | Attorneys for the other side were present, and there was a |
| 11:16 | 23 | mediator. |
| 11:16 | 24 | Q    The mediator was a retired federal magistrate judge; do |
| 11:16 | 25 | you recall that? |

11:16   1    A    I remember there was a retired judge.  I don't remember

11:16   2    whether he was a magistrate or another judge.

11:16   3    Q    Judge Downes.  Does that refresh your recollection?

11:16   4    A    Sound familiar, but I still don't remember what his

11:16   5    background was.

11:16   6    Q    Now, I believe Mr. Barela has testified that that

11:16   7    mediation lasted across a weekend.  Is that your

11:16   8    recollection?

11:16   9         MR. SAGEL:  Objection.  Misstates the testimony.

11:16  10         THE COURT:  Overruled.

11:16  11         THE WITNESS:  The portion of it that I was present

11:16  12    for was one day.

11:16  13    BY MR. AVENATTI:

11:16  14    Q    And do you remember that that was on a Friday?

11:16  15    A    I don't remember for sure that it was on a Friday, but

11:16  16    it sounds possible.

11:16  17    Q    Other than the one day that you were present for, are

11:17  18    you aware of any other day for an in-person mediation?

11:17  19    A    I didn't attend any other in-person mediation, no.

11:17  20    Q    In connection with the Barela matter, did you ever deal

11:17  21    with the lawyers on the other side?

11:17  22    A    Occasionally.

11:17  23    Q    Who do you recall dealing with who represented the

11:17  24    other side, meaning Brock?

11:17  25    A    The name that I remember was David Sheikh, I believe,

11:17  1   and Joe Culig.  I believe it's spelled C-u-l-i-g.

11:17  2   Q    And during your representation of Mr. Barela, did you

11:17  3   communicate with those gentlemen by e-mail and phone?

11:18  4   A    I don't know how many phone calls I had.  If I was on

11:18  5   phone calls, it was usually with someone else as well.

11:18  6          MR. AVENATTI:  Move to strike, Your Honor.

11:18  7          THE COURT:  It will be stricken.

11:18  8   BY MR. AVENATTI:

11:18  9   Q    Mr. Arden, my question is:  Do you have a recollection

11:18  10  of communicating with Mr. Sheikh and Mr. Culig by phone and

11:18  11  e-mail generally in connection with Mr. Barela's matter?

11:18  12  A    Generally I remember that there were communications by

11:18  13  e-mail.

11:18  14  Q    Following the in-person mediation, did you have

11:19  15  anything to do with the finalization of any settlement

11:19  16  involving Brock and Mr. Barela?

11:19  17  A    No, I don't believe I did.

11:19  18  Q    Now, after the settlement with Brock was finalized, do

11:19  19  you have a recollection of seeing Mr. Barela in the law

11:19  20  firm, in the offices of the law firm on a regular basis?

11:20  21  A    I do remember seeing him around.  I don't remember the

11:20  22  time frame or how often.

11:20  23  Q    Mr. Arden, you would from time to time in 2018 see

11:20  24  Mr. Barela in the offices of Eagan Avenatti; is that right?

11:20  25  A    That's correct.

| | | |
|---|---|---|
| 11:20 | 1 | Q    Were you cordial to him when you saw him? |
| 11:20 | 2 | A    I think so. |
| 11:20 | 3 | Q    I want to ask you about some of the testimony the |
| 11:20 | 4 | government witness Barela provided to the jury. |
| 11:20 | 5 | Can you see that, sir? |
| 11:21 | 6 | A    Yes. |
| 11:21 | 7 | MR. AVENATTI: |
| 11:21 | 8 | "Q    Now, in March of -- well, strike |
| 11:21 | 9 | that.  Mr. Sagel asked you a number of questions |
| 11:21 | 10 | about various facts and events relating to what |
| 11:21 | 11 | you claim were your efforts to get monies that |
| 11:21 | 12 | were owed to you.  Do you recall those questions |
| 11:21 | 13 | generally? |
| 11:21 | 14 | "A    I do. |
| 11:21 | 15 | "Q    I want to ask you about something |
| 11:21 | 16 | related to that.  Now, you had claimed that in |
| 11:21 | 17 | March of 2018 you came to the law firm, my law |
| 11:21 | 18 | firm, Eagan Avenatti.  Do you recall that? |
| 11:22 | 19 | "A    I believe so. |
| 11:22 | 20 | "Q    And you met with Mr. Ibrahim, who had |
| 11:22 | 21 | worked on your case; is that true? |
| 11:22 | 22 | "A    I believe so." |
| 11:22 | 23 | BY MR. AVENATTI: |
| 11:22 | 24 | Q    Now, let's stop right there.  Who is Mr. Ibrahim? |
| 11:22 | 25 | A    He was an attorney who worked at the firm. |

```
11:22   1   Q    And he was an attorney who you worked with from time to
11:22   2   time at the firm; is that right?
11:22   3   A    Yes.
11:22   4   Q    And you worked with Mr. Ibrahim on Mr. Barela's matter;
11:22   5   is that true?
11:22   6   A    Yes.
11:22   7        MR. AVENATTI:
11:22   8        "Q    And you previously claimed under oath
11:22   9        that Mr. Ibrahim congratulated you on the
11:22  10        settlement at that time, right?
11:22  11        "A    That's correct.
11:22  12        "Q    And that at the time -- and we're
11:22  13        talking about March 2018 -- Mr. Ibrahim led you to
11:22  14        believe that the initial settlement payment of
11:23  15        1.6 million had been made; is that true?
11:23  16        "A    Yes.
11:23  17        "Q    And where did you meet with
11:23  18        Mr. Ibrahim?
11:23  19        "A    When I was walking into the lobby, he
11:23  20        was sitting there reading the Wall Street Journal.
11:23  21        "Q    And I think you testified that the
11:23  22        individuals that you understood from Eagan
11:23  23        Avenatti who had worked on your matter were me,
11:23  24        Mr. Ibrahim, and Mr. Arden, right?
11:23  25        "A    Correct.
```

11:23   1                  "Q      And you have previously claimed, sir,
11:23   2          have you not, including under oath, that during
11:23   3          your conversation with Mr. Ibrahim, you saw
11:23   4          Mr. Arden's reflection in the glass wall of the
11:23   5          conference room?
11:23   6                  "A      Correct.
11:24   7                  "Q      And you observed Mr. Arden gesturing
11:24   8          towards Mr. Ibrahim by waving his hand across his
11:24   9          throat to signal to him to stop discussing your
11:24   10         settlement payment.  That's what you claim, right?
11:24   11                 "A      Correct.
11:24   12                 "Q      And you claim that under oath,
11:24   13         correct?
11:24   14                 "A      That is correct.
11:24   15                 "Q      Now, you are clear that this
11:24   16         happened, right?
11:24   17                 "A      I'm clear."
11:24   18     BY MR. AVENATTI:
11:24   19     Q    Did I read that correctly?
11:24   20     A    I believe so.
11:24   21     Q    Mr. Arden, at any point in time while Mr. Barela was in
11:24   22     the offices of Eagan Avenatti, did you ever make any gesture
11:25   23     to Mr. Ibrahim or anyone in an attempt to keep information
11:25   24     from Mr. Barela?
11:25   25     A    No, I did not.

                SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:25    1    Q    Did what Mr. Barela tell -- strike that.  Did what
11:25    2    government witness Barela tell this jury, to the best of
11:25    3    your knowledge, was that true?
11:25    4    A    I don't know what Mr. Barela may have seen or thinks he
11:25    5    saw or may have -- I don't know what he thinks he saw.  He
11:25    6    is mistaken about anything that I might have done that would
11:25    7    have been designed to conceal something from Mr. Barela.
11:25    8    Q    Thank you.
11:26    9              "Q    And then according to you, after
11:26   10         Mr. Ibrahim saw Mr. Arden's gesture in the glass
11:26   11         of the conference room, what happened?
11:26   12              "A    He abruptly stopped talking to me.
11:26   13              "Q    And according to you, that's because
11:26   14         they were trying to keep the details of the
11:26   15         settlement from you; is that right?
11:26   16              "A    I believe so."
11:26   17         Mr. Arden, did you ever take any steps to keep the
11:26   18    details of any settlement from Mr. Barela?  Yes or no?
11:26   19    A    No.
11:26   20              MR. AVENATTI:
11:27   21              "Q    And then also according to you, after
11:27   22         March 2018 they did everything they could to avoid
11:27   23         you, right?
11:27   24              "A    Correct."
        25
```

```
11:27   1    BY MR. AVENATTI:
11:27   2    Q    Mr. Arden, after March 2018 did you do everything you
11:27   3    could to avoid Mr. Barela?  Yes or no?
11:27   4    A    No.
11:27   5              MR. SAGEL:  Objection.  Leading.
11:27   6              THE COURT:  Overruled.
11:27   7              THE WITNESS:  No.  I was not trying to avoid
11:27   8    Mr. Barela.  I thought that his case was done.
11:27   9              MR. AVENATTI:  Move to strike the last part as
11:27   10   nonresponsive, Your Honor.
11:27   11             THE COURT:  It will be stricken.
11:27   12   BY MR. AVENATTI:
11:27   13   Q    Mr. Arden, did you do anything to avoid Mr. Barela in
11:27   14   2018?  Yes or no?
11:27   15   A    I did not avoid Mr. Barela.
11:27   16             MR. AVENATTI:
11:28   17                "Q    And despite the fact that you were
11:28   18        often in the offices, according to your sworn
11:28   19        testimony Mr. Arden and Mr. Ibrahim would avoid
11:28   20        eye contact with you, right?
11:28   21                "A    Correct."
11:28   22   BY MR. AVENATTI:
11:28   23   Q    Did you ever avoid eye contact with Mr. Barela as he
11:28   24   testified to under oath before this jury?
11:28   25   A    I have no idea whether I ever avoided eye contact with
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:28   1   Mr. Barela.

11:28   2   Q    Well, do you have a recollection, sir, of purposely

11:28   3   avoiding eye contact with Mr. Barela?  Yes or no?

11:28   4   A    I have no recollection of purposely avoiding eye

11:28   5   contact.

11:28   6            MR. AVENATTI:

11:29   7            "Q    And you claim that's because they

11:29   8        knew that the 1.6 million had been paid but you

11:29   9        were not told about it, right?

11:29   10           "A    I believe so.

11:29   11           "Q    And you made those claims regarding

11:29   12       the, we'll call it, the conference room glass

11:29   13       event now under oath twice, right?

11:29   14           "A    Yes.

11:29   15           "Q    And in numerous filings with various

11:29   16       courts, correct?

11:29   17           "A    Yes."

11:29   18   BY MR. AVENATTI:

11:29   19   Q    Mr. Arden, this claim of you gesturing to Mr. Ibrahim

11:29   20   to shut it down or not to say anything, when I asked you

11:29   21   about it, that's not the first time that you learned that

11:29   22   Mr. Barela had made such a claim; is it?

11:29   23   A    No.

11:30   24   Q    Because Mr. Barela also put that claim in an

11:30   25   arbitration proceeding in a lawsuit that he filed against

11:30   1   you and others, right?

11:30   2           MR. SAGEL:  Leading, Your Honor.

11:30   3           THE COURT:  Sustained.

11:30   4   BY MR. AVENATTI:

11:30   5   Q    Mr. Arden, did you first learn of that claim in

11:30   6   connection with an arbitration proceeding?

11:30   7           MR. SAGEL:  Still leading.

11:30   8           THE COURT:  Overruled.

11:30   9           THE WITNESS:  Yes, I believe so.

11:30  10   BY MR. AVENATTI:

11:30  11   Q    And when you read that claim, you knew that it was

11:30  12   false?

11:30  13   A    I knew I had never made any gesture designed to conceal

11:30  14   anything from Mr. Barela.

11:31  15   Q    And when you met with the government before this trial

11:31  16   started, you told them the same thing; didn't you?

11:31  17   A    Yes, I believe so.  I don't remember everything I told

11:31  18   them.

11:31  19           MR. AVENATTI:  Move to strike this portion as

11:31  20   nonresponsive.

11:31  21           THE COURT:  It will be stricken.

11:31  22           Sir, see if you can get a little bit closer to the

11:31  23   mic.

11:31  24           MR. AVENATTI:

11:31  25            "Q    And those details, Mr. Barela, as far

11:31  1          as you're concerned, they're as truthful and

11:31  2          accurate as everything you have testified to under

11:31  3          direct examination by Mr. Sagel, right?

11:32  4                  "A    Yes."

11:32  5    BY MR. AVENATTI:

11:32  6    Q    Did I read that correctly?

11:32  7    A    Yes.

11:32  8                  MR. SAGEL:  Actually, objection.  He did not read

11:32  9    it correctly, Your Honor.

11:32  10                 MR. AVENATTI:  Well, let me read it again.

11:32  11         "Q    And those details, Mr. Barela, as far

11:32  12        as you're concerned, they are as truthful and

11:32  13        accurate as everything you have testified to under

11:32  14        direct examination by Mr. Sagel, right?

11:32  15                 "A    Yes."

11:32  16   BY MR. AVENATTI:

11:32  17   Q    Did I read that correctly?

11:32  18   A    I believe so, yes.

11:33  19   Q    Mr. Arden, do you recall -- well, strike that.  Before

11:33  20   taking the stand today, how many times have you met with the

11:33  21   government in connection with this case or communicated with

11:33  22   them by phone?

11:33  23   A    Three times, I believe.

11:34  24   Q    And up until about two weeks ago, you had expected the

11:34  25   government to call you as a witness in this trial; didn't

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:34  1   you?

11:34  2   A    They subpoenaed me to testify, yes.

11:34  3   Q    And you were expecting to testify as a government

11:34  4   witness, right?

11:34  5   A    I figured there was a good chance of that.

11:34  6   Q    All right.  And then you were contacted through your

11:34  7   attorney around the 28th or 29th of July, which happens to

11:34  8   be around the time that Mr. Barela testified, and you were

11:34  9   informed that the government was no longer going to call you

11:35  10  as a witness, right?

11:35  11  A    I was informed that I was released from the subpoena.

11:35  12  Q    Subpoena from the government, right?

11:35  13  A    Yes.

11:35  14  Q    And then shortly thereafter you learned that I wanted

11:35  15  to call you as a witness and was trying to serve you with a

11:35  16  subpoena, right?

11:35  17  A    Yes, a couple days later.

11:35  18  Q    And that's why you are here today.  You are here in

11:35  19  response to my subpoena to have you testify, not the

11:35  20  government, right?

11:35  21  A    Yes.  I am here because you subpoenaed me.

11:35  22  Q    Going back to government witness Barela's testimony:

11:36  23          "Q    Do you recall that when you met with

11:36  24       those same gentlemen on that same day, you

11:36  25       recounted for them like you did the jury the story

11:36  1    about the reflection in the conference room glass

11:36  2    involving Mr. Arden and Mr. Ibrahim?

11:36  3          "A    I do.

11:36  4          "Q    Do you have a recollection that when

11:36  5    you met with the agents and the Assistant U.S.

11:36  6    Attorneys on March 15, 2019, you also recounted a

11:36  7    story for them about a phone call that you had had

11:36  8    on or about November 15th, 2018?  Do you recall

11:36  9    that?

11:36  10         "A    I do not.

11:36  11         "Q    Please take a look at paragraph 44.

11:36  12   And my question is:  Does that refresh your

11:36  13   recollection?

11:36  14         "A    Yes.  I recall that.

11:37  15         "Q    So according to you, on or about

11:37  16   November 14th, 2018, you called Ms. Regnier and

11:37  17   you asked for Mr. Arden and Mr. Ibrahim, correct?

11:37  18         "A    Correct.

11:37  19         "Q    And you were told that Mr. Arden and

11:37  20   Mr. Ibrahim were not available, so you texted

11:37  21   Mr. Arden; is that right?

11:37  22         "A    That's correct.

11:37  23         "Q    And since this was after March of

11:37  24   2018, according to you, Mr. Ibrahim and Mr. Arden

11:37  25   were no longer speaking with you, right?

| | | |
|---|---|---|
| 11:37 | 1 |        "A     That's correct." |

11:37   1       "A     That's correct."

11:37   2      Did I read that correctly?

11:37   3  A   I think so.

11:37   4  Q   To the best of your knowledge, is Mr. Barela's sworn

11:37   5  testimony before this jury that you were no longer speaking

11:38   6  with him after March of 2018, was that testimony truthful?

11:38   7      MR. SAGEL:  Asked and answered, Your Honor.

11:38   8      THE COURT:  Overruled.

11:38   9      THE WITNESS:  All I can tell you is that I was not

11:38  10  making any effort to avoid speaking with him.

11:38  11  BY MR. AVENATTI:

11:38  12  Q   That's not my question.  My question is:  Were you no

11:38  13  longer speaking with Mr. Barela after March of 2018 to the

11:38  14  best of your knowledge?

11:38  15  A   No, I was not no longer speaking with him.

11:38  16  Q   Thank you.

11:38  17       "Q    And after you texted Mr. Arden, he

11:38  18       responded by calling you and Mr. Ibrahim on the

11:38  19       phone as well as that attorney that came up during

11:38  20       the direct, Evan Jenness, right?

11:38  21       "A    I believe so."

11:38  22      Mr. Arden, have you ever spoken to Evan Jenness?

11:39  23  A   I don't think that I have ever spoken to Evan Jenness.

11:39  24  Q   Did you ever participate on a conference call with you,

11:39  25  Mr. Ibrahim, Evan Jenness, and Greg Barela?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:39   1    A     No, but the --

11:39   2    Q     Thank you.  Mr. Arden, just answer my questions, okay?

11:39   3    Please.

11:39   4          Did you participate on a conference call in --

11:39   5    well, strike that.  Let me just go back to the transcript

11:39   6    and the sworn testimony of the government witness.

11:39   7          "Q     Well, that's what you told the

11:40   8          federal agents, right?

11:40   9          "A     It sounded like.

11:40  10          "Q     Well, that's what you told the

11:40  11          federal agents; is it not?  You told the federal

11:40  12          agents it was Evan Jenness; did you not, sir?

11:40  13          "A     I believe so.

11:40  14          "Q     And you also told the agents that

11:40  15          this seems suspicious to you when all three of

11:40  16          them called you, and at that point you knew that

11:40  17          my firm had stole your money.  That's what you

11:40  18          told them, right?

11:40  19          "A     I did.

11:40  20          "Q     And during the call, you accused the

11:40  21          firm of stealing your money; is that right?

11:40  22          "A     Correct.

11:40  23          "Q     And Evan Jenness told you on the call

11:40  24          that you could not accuse the law firm because it

11:41  25          was slander, right?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:41   1              "A      Yes."
11:41   2              Mr. Arden, were you ever on a call where Evan
11:41   3   Jenness told Mr. Barela anything?  Yes or no?
11:41   4   A    No.
11:41   5              MR. SAGEL:  Objection.  Leading, Your Honor.
11:41   6              THE COURT:  Overruled.
11:41   7              THE WITNESS:  No, I don't think so.
11:41   8              MR. AVENATTI:
11:41   9              "Q      And you responded by telling
11:41  10         Ms. Jenness, the attorney, that she had a conflict
11:41  11         of interest because she had three conference calls
11:41  12         with you and knew about the Brock matter and
11:41  13         waiting for the settlement proceeds; is that
11:41  14         right?
11:42  15              "A      Correct."
11:42  16   BY MR. AVENATTI:
11:42  17   Q    Were you ever on any phone call where Mr. Barela told
11:42  18   Evan Jenness that she had a conflict of interest because she
11:42  19   had had three conference calls with Mr. Barela and knew
11:42  20   about the Brock matter and waiting for the settlement
11:42  21   proceeds?
11:42  22   A    No, I don't believe so.
11:42  23              MR. AVENATTI:
11:42  24              "Q      And after you told Ms. Jenness that,
11:42  25         Ms. Jenness, Mr. Arden, and Mr. Ibrahim hung up on
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:42 | 1 | you? |
| 11:43 | 2 | "A     That's correct. |
| 11:43 | 3 | "Q     And that's what happened, right? |
| 11:43 | 4 | "A     Yes. |
| 11:43 | 5 | "Q     You're sure about that? |
| 11:43 | 6 | "A     Yes." |
| 11:43 | 7 | BY MR. AVENATTI: |
| 11:43 | 8 | Q    Mr. Arden, did you and Mr. Ibrahim and Evan Jenness |
| 11:43 | 9 | ever hang up on government witness Barela? |
| 11:43 | 10 | A    No, I don't think so. |
| 11:43 | 11 | Q    Well, you say I don't think so.  Do you have any |
| 11:43 | 12 | recollection of ever doing that? |
| 11:43 | 13 | A    No, I don't have any recollection of hanging up on |
| 11:43 | 14 | Mr. Barela. |
| 11:43 | 15 | Q    Do you have a recollection of anyone else ever hanging |
| 11:43 | 16 | up on Mr. Barela? |
| 11:43 | 17 | A    No. |
| 11:43 | 18 |         MR. AVENATTI: |
| 11:44 | 19 |           "Q     And during that call Mr. Arden and |
| 11:44 | 20 |         Mr. Ibrahim told you, according to you, that Brock |
| 11:44 | 21 |         did not make the $1.6 million payment; is that |
| 11:44 | 22 |         correct? |
| 11:45 | 23 |           "A     Yes. |
| 11:45 | 24 |           "Q     You're certain about that as well, |
| 11:45 | 25 |         right? |

11:45  1              "A      Yes."

11:45  2    BY MR. AVENATTI:

11:45  3    Q    Mr. Arden, were you ever on any call where you or

11:45  4    Mr. Ibrahim or anyone else told Mr. Barela that the

11:45  5    1.6 million payment had not been made?

11:46  6    A    I never told Mr. Barela that.

11:46  7    Q    Did you ever hear Mr. Ibrahim tell Mr. Barela that?

11:46  8    A    No.

11:46  9    Q    Do you know why he would make that up to this jury?

11:46  10             MR. SAGEL:  Objection, argumentative.

11:46  11             THE COURT:  Sustained.

11:46  12   BY MR. AVENATTI:

11:46  13   Q    Do you know why the government would call him knowing

11:46  14   that he was lying about it?

11:46  15             MR. SAGEL:  Objection.

11:46  16             THE COURT:  Sustained.

11:46  17   BY MR. AVENATTI:

11:46  18   Q    Mr. Barela was then asked about a letter that he had

11:47  19   Mr. Bledsoe write.

11:47  20             "Q     And a few days later you had

11:47  21         Mr. Bledsoe write a letter to each of Mr. Arden

11:47  22         and Mr. Ibrahim about your settlement, correct?

11:47  23             "A     I'd have to verify the dates, but I

11:47  24         believe so."

11:47  25             He was shown the letter.

| | | |
|---|---|---|
| 11:47 | 1 | "Q So on November 19th you had |
| 11:47 | 2 | Mr. Bledsoe send a letter to Mr. Arden and |
| 11:47 | 3 | Mr. Ibrahim asking them to confirm that they had |
| 11:47 | 4 | represented to you that Brock had not made the |
| 11:47 | 5 | 1.6 million payment, correct? |
| 11:47 | 6 | "A That is correct." |
| 11:47 | 7 | He is shown the letter which we are going to get |
| 11:47 | 8 | to momentarily. |
| 11:48 | 9 | "Q Can you see that, sir? |
| 11:48 | 10 | "A I can. |
| 11:48 | 11 | "Q And you knew this letter was going |
| 11:48 | 12 | out before it was sent, right? |
| 11:48 | 13 | "A Yes." |
| 11:48 | 14 | Did I read that correctly? |
| 11:48 | 15 | A Yes. |
| 11:48 | 16 | MR. AVENATTI: Can we please have Exhibit 1059, |
| 11:48 | 17 | which is in evidence. Can we please blow that up at the |
| 11:48 | 18 | top -- well, including the letterhead, please. |
| 11:49 | 19 | BY MR. AVENATTI: |
| 11:49 | 20 | Q Can you see that, sir? |
| 11:49 | 21 | A Yes. |
| 11:49 | 22 | Q And this is a letter that you received via e-mail on |
| 11:49 | 23 | the date indicated on the letter; is that right? |
| 11:49 | 24 | A Yes. I haven't had a chance to look at the letter |
| 11:49 | 25 | entirely yet, but that seems correct. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:49  1   Q   Well, take as much time as you like before I ask my

11:49  2   next question of you relating to the document.

11:49  3   A   (Witness reading)

11:49  4   Q   Would you like a hard copy of it?

11:49  5   A   Well, I can't see the whole thing, but I can look at it

11:49  6   on the screen.

11:49  7          (Witness reading)  I'm not sure of the date, but

11:50  8   that looks like the letter that I remember seeing.

11:50  9   Q   Do you have any reason to dispute that you received

11:50  10  this letter on or about that date?

11:50  11  A   I don't think so.

11:50  12  Q   Page 18, line 4:

11:50  13         "Q   So I have shown you 1059.  That's the

11:50  14      letter to Mr. Arden, and that's the identical

11:50  15      letter to Mr. Ibrahim, right?

11:50  16         "A   Correct.

11:50  17         "Q   And according to you, this date --

11:50  18      well, strike that.  Mr. Barela, the letter reads:

11:51  19      'We understand from Mr. Barela that you

11:51  20      represented to him that Brock USA did not make the

11:51  21      initial $1.6 million payment due on the settlement

11:51  22      agreement.'  Did I read that correctly,

11:51  23      Mr. Barela?

11:51  24         "A   Yes.

11:51  25         "Q   Okay.  So that information according

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:51    1           to this letter, that he got from you, correct?
11:51    2                 "A    Correct.
11:51    3                 "Q    And you gave him that information?
11:51    4                 "A    Yes.
11:51    5                 "Q    And you claimed that happened on the
11:51    6           call, right?
11:51    7                 "A    Yes.
11:51    8                 "Q    And you still claim it happened on
11:51    9           the call?
11:51   10                 "A    Yes."
11:51   11           Sir, did that ever happen on the call?
11:51   12    A    I never told Mr. Barela during that call that Brock had
11:52   13    not made a payment.
11:52   14    Q    So it did not happen on the call; did it?
11:52   15    A    No.
11:52   16                 MR. AVENATTI:
11:52   17                 "Q    Did Mr. Arden or Mr. Ibrahim ever
11:52   18           respond to that accusation?
11:52   19                 "A    They did not.  I don't believe they
11:52   20           did.  I believe they forwarded these to you and
11:52   21           you responded."
11:52   22    BY MR. AVENATTI:
11:52   23    Q    Did I read that correctly?
11:53   24    A    Yes.
11:53   25    Q    Sir, you actually -- strike that.  You and Mr. Ibrahim
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:53   1    actually sent a letter back to Mr. Bledsoe the next day.  Do

11:53   2    you recall that?

11:53   3    A    Yes, I do.

11:53   4            MR. AVENATTI:  Can we have 1061, please.

11:53   5    BY MR. AVENATTI:

11:53   6    Q    Mr. Arden, please take a moment to review that

11:54   7    document.  I want to ask you a couple of questions.

11:54   8    A    (Witness reading document)  Okay.

11:54   9    Q    The first question is:  Does your signature appear in

11:54   10   this document?

11:54   11   A    Yes.

11:54   12   Q    Where?

11:54   13   A    At the bottom I wrote my name.

11:54   14   Q    You signed it, correct?

11:54   15   A    Yes.

11:54   16   Q    Did you sign it on the same date at the top?

11:54   17   A    I think I might have signed it the day before.

11:54   18   Q    To the best of your knowledge, was this letter sent to

11:54   19   Mr. Bledsoe?

11:54   20   A    I understood it was being sent to him.  I never

11:54   21   received a copy of it.

11:54   22   Q    Does Mr. Ibrahim's signature appear on the document?

11:55   23   A    I wouldn't be able to recognize Mr. Ibrahim's

11:55   24   signature.

11:55   25   Q    Do you have any reason to believe that that is not

| | | |
|---|---|---|
| 11:55 | 1 | Mr. Ibrahim's signature on the document? |
| 11:55 | 2 | MR. SAGEL:  Objection.  Foundation. |
| 11:55 | 3 | THE COURT:  Overruled. |
| 11:55 | 4 | THE WITNESS:  No, I don't have any reason to |
| 11:55 | 5 | believe that. |
| 11:55 | 6 | BY MR. AVENATTI: |
| 11:55 | 7 | Q    It's addressed to Mr. Bledsoe, correct? |
| 11:55 | 8 | A    Yes. |
| 11:55 | 9 | Q    And this was sent in response to Mr. Bledsoe's letter |
| 11:55 | 10 | to you and Mr. Ibrahim, right? |
| 11:55 | 11 | A    Yes. |
| 11:55 | 12 | Q    Did you review this letter before you signed it? |
| 11:55 | 13 | A    Yes. |
| 11:55 | 14 | Q    At the time you signed it, was everything in it |
| 11:55 | 15 | truthful and accurate to the best of your knowledge? |
| 11:55 | 16 | A    Yes, from my recollection. |
| 11:55 | 17 | Q    As you sit here today, is everything in the letter |
| 11:55 | 18 | still truthful and accurate to the best of your knowledge? |
| 11:56 | 19 | A    Yes. |
| 11:56 | 20 | Q    Please read the first sentence of the letter. |
| 11:56 | 21 | A    "We are in receipt of the letters you sent us dated |
| 11:56 | 22 | November 19, 2018." |
| 11:56 | 23 | Q    And by the letters, you were referring to the letter |
| 11:56 | 24 | that was sent to you which we were just looking at and the |
| 11:56 | 25 | identical one that was sent to Mr. Ibrahim, right? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:56   1   A    I'm not sure if I ever saw the letter sent to

11:56   2   Mr. Ibrahim, but I understood at the time that he received a

11:56   3   similar letter.

11:56   4   Q    Well, at a minimum you were referring to your letter;

11:56   5   is that right?

11:56   6   A    Yes.

11:56   7   Q    All right.

11:56   8        Please read the next sentence.

11:56   9   A    "Contrary to your representation in the letters, we

11:56  10   made no representations to Mr. Barela relating to the Brock

11:56  11   payment under the settlement agreement."

11:57  12   Q    Now I want to ask you about that sentence.  So

11:57  13   basically by that sentence what you were telling Mr. Bledsoe

11:57  14   was, you got your facts wrong.  That never happened, right?

11:57  15   A    His letter gave us the opportunity to confirm or deny

11:57  16   that we made that representation, and I was denying that I

11:57  17   made that representation.

11:57  18   Q    You included that sentence to make it clear to

11:57  19   Mr. Bledsoe that what his client had told him and what he

11:57  20   had written to you was false; isn't that true?

11:57  21        MR. SAGEL:  Objection.  Leading, asked and

11:57  22   answered, and argumentative.

11:57  23        THE COURT:  Sustained.

11:57  24   BY MR. AVENATTI:

11:57  25   Q    Mr. Arden, when you signed this letter, you knew that

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:58 | 1 | what Mr. Bledsoe and Mr. Barela had accused you of was |
| 11:58 | 2 | not -- well, strike that.  When you signed the letter, did |
| 11:58 | 3 | you know if what Mr. Barela and Mr. Bledsoe had accused you |
| 11:58 | 4 | of in Mr. Bledsoe's letter was untrue? |
| 11:58 | 5 | A   I knew that what was stated in the letter written by |
| 11:58 | 6 | Mr. Bledsoe was not accurate. |
| 11:58 | 7 | Q   Is that a different way of saying untrue? |
| 11:58 | 8 | A   Untrue or mistaken. |
| 11:58 | 9 | Q   Please read the next sentence. |
| 11:58 | 10 | A   "Rather, Mr. Barela was specifically advised that we do |
| 11:58 | 11 | not have knowledge about any issues related to payment." |
| 11:59 | 12 | Q   Was that accurate? |
| 11:59 | 13 | A   Yes. |
| 11:59 | 14 | THE COURT:  I think we will take the lunch break |
| 11:59 | 15 | here.  Ladies and gentlemen, we will resume at 1:30. |
| 11:59 | 16 | Please remember the admonition not to discuss the |
| 11:59 | 17 | case with anyone and not to form any opinions on the issues |
| 11:59 | 18 | in the case until it's submitted to you.  And please do no |
| 11:59 | 19 | research. |
| 11:59 | 20 | So we'll see you at 1:30.  Thank you. |
| 11:59 | 21 | (Recess taken at 11:59 a.m.) |
| 11:59 | 22 | *   *   * |
| 11:59 | 23 | |
| 11:59 | 24 | |
| 11:59 | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

CERTIFICATE

        I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  August 18, 2021


                    /s/   Sharon A. Seffens  8/18/21
                    _____
                    SHARON A. SEFFENS, U.S. COURT REPORTER

**MR. AVENATTI: [136]**

**MR. SAGEL: [28]** 4/5 9/15 9/17 16/5 16/21
25/1 25/7 34/16 35/3 35/7 36/2 36/21 38/19
43/13 85/22 85/25 100/24 102/9 108/5 110/2
110/7 111/8 114/7 116/5 118/10 118/15 123/2
124/21

**MR. WYMAN: [52]** 38/20 38/22 39/1 41/1
41/17 41/20 42/16 47/3 50/2 50/7 50/9 50/23
51/23 52/12 52/14 56/11 56/15 58/11 59/14
67/17 71/19 73/22 74/10 76/6 77/15 78/24
79/15 80/7 83/11 83/17 84/2 84/22 85/4 87/19
88/11 88/17 88/22 89/18 90/12 91/1 91/12 92/2
93/5 93/24 96/8 96/14 96/21 97/6 97/14 97/19
97/22 100/10

**MS. MARINO: [8]** 17/17 17/25 20/13 21/12
21/20 21/22 22/1 22/6

**MS. SAGER: [8]** 4/15 4/20 5/22 6/2 6/6 6/9
13/6 15/18

**THE CLERK: [11]** 4/3 43/11 44/3 44/8 56/22
56/25 57/2 77/23 78/2 98/3 98/7

**THE COURT: [188]**

**THE WITNESS: [34]** 44/6 47/5 53/25 54/19
55/5 56/17 56/24 57/1 58/13 59/16 67/19
73/24 74/21 76/8 77/25 79/1 83/19 84/25
89/20 91/3 93/8 95/25 96/16 97/16 98/5
100/13 101/1 102/11 108/7 110/9 114/9 116/7
123/4

**$**

**$1.6 [2]** 117/21 120/21

**$1.6 million [2]** 117/21 120/21

**'**

**'We [1]** 120/19

**/**

**/s [1]** 126/16

**0**

**0870 [1]** 1/21

**1**

**1,000 [1]** 61/8
**1-1053 [1]** 1/20
**1.6 million [4]** 105/15 109/8 118/5 119/5
**10 [1]** 77/3
**10,000 [1]** 77/4
**1053 [1]** 1/20
**1059 [2]** 119/16 120/13
**1061 [1]** 122/4
**107 [1]** 2/16
**10:33 [1]** 86/22
**10:53 [1]** 86/23
**11 [1]** 9/17
**1100 [1]** 2/7
**118 [3]** 69/20 69/22 70/3
**119 [2]** 70/9 70/11
**11:51 [1]** 34/13
**11:59 [1]** 125/21
**12 [1]** 76/8
**120 [4]** 70/14 70/14 70/21 70/22
**1206-1219 [1]** 23/4
**1219 [1]** 23/4
**124 [2]** 69/15 69/17
**1289-1292 [1]** 15/3
**1292 [1]** 15/3
**14th [2]** 45/13 113/16
**15 [4]** 79/13 79/18 79/24 113/6
**15th [1]** 45/3 45/5 113/8
**16 [2]** 42/11 42/13
**160 [2]** 70/25 71/2
**162 [3]** 71/7 71/7 71/10
**17 [5]** 1/17 4/1 4/24 13/15 35/18
**176 [2]** 69/5 69/7
**18 [3]** 26/15 120/12 126/14
**19 [1]** 123/22
**1993 [1]** 31/3
**19th [1]** 119/1

**1:30 [2]** 125/15 125/20
**1st [3]** 9/1 116/6 116/8

**2**

**20 [3]** 79/13 79/24 79/25
**2005 [3]** 57/18 57/19 58/2
**2008 [1]** 59/3
**2009 [1]** 99/3
**2010 [3]** 57/18 57/19 59/4
**2012 [1]** 78/13
**2014 [1]** 99/21
**2018 [24]** 7/18 23/5 42/16 44/22 45/5 45/13
45/21 50/14 52/25 53/7 54/8 70/19 103/23
104/17 105/13 107/22 108/2 108/14 113/8
113/16 113/24 114/6 114/13 123/22
**2019 [7]** 45/3 65/7 65/9 78/14 84/12 99/4
113/6
**2021 [3]** 1/17 4/1 126/14
**21 [2]** 1/12 126/16
**213 [1]** 2/8
**22nd [1]** 42/16
**23rd [1]** 44/22
**25 [1]** 26/1
**26.2 [1]** 42/21
**260 [2]** 66/9 66/17
**262 [2]** 68/23 69/2
**263 [2]** 69/10 69/12
**27 [2]** 65/12 65/16
**274 [8]** 71/12 71/15 71/17 71/24 72/3 72/7
72/9 73/1
**278 [4]** 73/4 73/7 75/3 75/3
**28 [1]** 126/8
**28th or [1]** 112/7
**29 [2]** 34/13 86/10
**294 [4]** 75/15 75/17 75/19 75/22
**29th of [1]** 112/7
**2nd [4]** 6/2 6/3 6/7 6/13

**3**

**30 [4]** 7/17 15/8 23/15 64/23
**30th [4]** 6/1 6/2 6/5 6/7
**312 [1]** 2/7
**338-3598 [1]** 2/12
**3598 [1]** 2/12
**37 [1]** 72/17

**4**

**401 [1]** 89/18
**403 [7]** 39/23 40/4 88/11 88/22 89/18 91/1
92/2
**411 [2]** 1/20 2/11
**43 [5]** 29/17 29/24 30/12 31/5 32/17
**44 [3]** 3/10 45/8 113/11
**481-4900 [1]** 2/17
**49 [1]** 3/10
**490 [1]** 27/14
**4900 [1]** 2/17
**4th [2]** 1/20 16/13

**5**

**543-0870 [1]** 1/21
**55 [1]** 3/10
**57 [1]** 3/11

**6**

**608 [1]** 85/4
**615 [2]** 23/12 26/5
**6683 [1]** 2/8
**679 [1]** 22/7
**690 [2]** 26/8 26/15

**7**

**705 [3]** 26/9 26/18 27/6
**706 [2]** 36/10 36/20
**707 [1]** 22/9
**714 [2]** 1/21 2/12
**717 [1]** 34/12
**753 [1]** 126/7
**78 [1]** 3/11

**7:46 [1]** 35/19

**8**

**8/18/21 [1]** 126/16
**8000 [1]** 2/11
**894-6683 [1]** 2/8
**895 [1]** 23/4
**8:00 [3]** 17/5 17/7 17/7
**8:02 [1]** 4/1
**8:57 [1]** 43/8

**9**

**90012 [1]** 2/8
**902 [4]** 8/22 9/9 9/17 15/7
**92672 [1]** 2/16
**93 [1]** 3/11
**949 [1]** 2/17
**96 [1]** 3/11
**98 [1]** 3/12
**9:00 [1]** 21/17
**9:13 [1]** 43/9

**A**

**a.m [7]** 4/1 21/17 43/8 43/9 86/22 86/23
125/21
**ability [1]** 12/25
**able [8]** 11/3 11/8 12/19 23/18 34/8 39/23
51/18 122/23
**about [93]** 4/17 6/11 6/18 9/7 10/21 10/25
11/1 11/6 16/23 19/15 19/21 20/4 20/10 23/18
24/2 27/14 28/23 31/17 32/18 37/23 38/11
38/13 44/24 45/4 45/5 45/12 47/23 48/5 48/15
48/22 49/1 51/9 51/13 51/15 51/15 51/17 52/4
52/25 53/18 54/5 54/10 55/19 56/1 61/12
61/19 63/1 63/20 64/17 64/19 65/8 65/9 65/9
65/12 68/5 71/25 72/17 73/17 76/8 78/15
79/13 81/23 89/10 93/18 93/20 94/4 94/12
94/14 95/9 95/14 97/5 99/5 104/3 104/10
104/15 105/13 107/6 109/9 109/21 111/24
113/1 113/7 113/8 113/15 116/12 116/20
117/5 117/24 118/14 118/18 118/22 120/10
124/12 125/11
**above [1]** 126/10
**above-entitled [1]** 126/10
**abruptly [1]** 107/12
**Absolutely [3]** 47/5 47/18 48/19
**academy [2]** 58/23 58/25
**accept [4]** 7/5 18/25 19/4 20/15
**accepted [1]** 20/18
**accepting [1]** 21/8
**access [5]** 32/2 33/17 33/25 58/21 60/16
**accompanied [1]** 101/16
**according [11]** 45/12 45/21 107/9 107/13
107/21 108/18 113/15 113/24 117/20 120/17
120/25
**accordingly [1]** 31/13
**accounting [2]** 93/16 93/20
**accurate [8]** 23/25 68/14 111/2 111/13
123/15 123/18 125/6 125/12
**accusation [1]** 121/18
**accuse [3]** 47/11 47/16 115/24
**accused [5]** 46/21 47/1 115/20 125/1 125/3
**acquire [3]** 59/6 75/10 76/24
**acquired [7]** 70/3 70/11 70/22 71/2 73/7
75/22 76/23
**acquiring [3]** 58/16 58/18 58/23
**across [3]** 11/5 102/7 106/8
**Act [1]** 26/20
**action [4]** 80/19 96/1 96/5 99/14
**active [1]** 87/24
**actual [2]** 23/16 63/5
**actually [10]** 7/23 9/3 16/7 16/13 64/13 82/7
90/1 111/8 121/25 122/1
**add [4]** 6/15 16/22 21/7 61/20
**add-evidence [1]** 61/20
**addition [2]** 5/2 42/4
**additional [5]** 27/5 76/20 76/25 77/11 86/5
**address [3]** 17/23 38/20 86/20

# A

**addressed** [2] 36/7 123/7
**addressing** [4] 26/21 27/2 27/5 35/12
**adequate** [1] 30/21
**administrative** [1] 90/24
**admissible** [4] 19/19 19/24 21/3 41/15
**admission** [1] 8/13
**admitted** [6] 11/17 42/11 98/15 98/17 98/19 98/20
**admonition** [2] 85/7 125/16
**advance** [1] 9/20
**Adverse** [1] 74/12
**advised** [2] 7/10 125/10
**advisory** [2] 2/15 4/9 7/10 35/22
**advocacy** [3] 28/20 28/25 29/2
**after** [16] 18/25 30/20 45/20 45/24 48/9 69/24 91/23 103/18 107/9 107/21 108/2 113/23 114/6 114/13 114/17 116/24
**afternoon** [3] 17/8 27/21 85/17
**again** [7] 12/17 14/11 14/17 32/17 38/17 76/1 111/10
**against** [2] 82/16 109/25
**Agent** [2] 43/15 65/17
**agents** [13] 38/7 45/2 46/5 46/8 46/9 46/12 46/15 93/15 113/5 115/8 115/11 115/12 115/14
**ago** [8] 37/23 37/24 42/1 54/1 65/12 67/11 84/23 111/24
**agree** [1] 65/3
**agreed** [5] 7/5 11/23 18/24 19/4 85/21
**agreement** [1] 124/11
**agreement.'** [1] 120/22
**Ahmed** [1] 54/14
**ALEXANDER** [3] 2/5 4/6 43/14
**Alexis** [2] 22/8 95/5
**all** [30] 6/24 14/16 15/17 16/16 24/5 25/13 25/17 34/24 35/6 36/24 46/16 61/13 61/22 61/24 61/25 62/1 64/18 66/7 67/14 68/16 77/20 79/11 86/7 86/12 86/12 90/1 112/6 114/9 115/15 124/7
**alleged** [2] 10/21 75/4
**allow** [6] 9/9 32/2 32/3 33/1 60/20 86/7
**allows** [2] 9/18 68/9
**alluded** [1] 14/21
**Almost** [1] 99/6
**alone** [2] 5/5 29/20
**already** [2] 9/21 23/20
**also** [28] 15/13 16/14 16/22 16/25 28/7 36/14 39/3 39/8 41/8 41/15 42/12 45/3 46/15 51/23 52/23 53/12 55/11 67/24 68/10 68/13 82/25 87/12 92/15 92/16 107/21 109/24 113/6 115/14
**alteration** [1] 68/10
**altered** [1] 72/19
**alternative** [5] 7/16 7/22 15/4 15/9 15/11
**alternatives** [1] 5/11
**although** [1] 28/8
**am** [11] 8/15 11/19 57/12 59/8 59/13 59/20 59/24 71/23 80/12 80/14 112/21
**Amendment** [1] 29/17
**Amenta** [1] 26/9
**Amenta's** [2] 26/19 27/2
**AMERICA** [3] 1/9 4/4 43/12
**among** [3] 4/24 28/19 33/11
**amount** [5] 28/16 61/9 64/9 64/10 99/13
**ample** [1] 5/18
**Ana** [4] 1/16 1/20 2/11 4/1
**analysis** [1] 66/6
**analyst** [1] 57/15
**analyst's** [1] 67/20
**analyze** [2] 59/23 60/12
**analyzed** [2] 73/21 74/6
**Angeles** [2] 2/8 10/11 10/12 52/18
**another** [8] 41/12 42/6 69/2 69/12 77/19 91/6 99/14 102/2
**answer** [5] 5/16 14/17 17/19 34/16 115/2
**answered** [11] 40/17 71/19 84/22 87/19 91/8 93/5 96/22 96/23 100/11 114/7 124/22
**any** [107] 5/16 7/11 8/2 9/15 10/7 10/17 12/8 12/25 13/11 14/17 14/23 17/19 17/22 18/14 19/4 19/5 19/10 22/23 26/3 28/21 29/12 29/20 29/21 31/5 32/15 33/12 33/16 33/18 34/3 34/3 36/22 40/3 41/10 42/18 48/25 49/8 51/4 55/5 55/10 56/6 62/22 62/25 63/15 64/7 65/18 65/22 67/25 70/22 71/2 71/9 73/12 73/19 74/5 74/6 75/6 75/19 75/23 77/11 79/19 82/14 83/9 83/15 85/8 85/10 86/1 86/18 87/14 87/14 87/17 88/7 92/13 93/14 93/15 94/3 95/16 96/12 97/1 97/12 100/3 100/17 100/18 101/10 101/13 101/13 101/15 102/18 102/19 103/15 106/6 106/12 107/17 107/18 110/13 114/10 116/17 117/11 117/13 118/3 120/9 122/25 123/4 125/11 125/17
**anybody** [3] 12/18 32/4 73/21
**anyone** [11] 13/7 62/12 62/22 63/1 63/5 65/17 85/8 106/23 117/15 118/4 125/17
**anything** [24] 20/22 23/3 25/2 25/6 25/8 25/11 29/8 32/16 34/4 36/1 38/18 51/20 69/22 71/24 72/25 88/6 94/13 94/18 103/15 107/6 108/13 109/20 110/14 116/3
**anywhere** [2] 7/12 73/12
**apart** [1] 30/13
**apologize** [4] 6/6 50/9 50/20 52/14
**apparent** [1] 18/14
**apparently** [1] 13/16
**appear** [7] 15/6 15/10 42/5 71/4 75/21 122/9 122/22
**appearance** [1] 14/9
**appearances** [2] 2/1 98/22
**appears** [3] 62/20 69/23 70/6
**Apple** [1] 66/21
**applicability** [1] 87/1
**appreciate** [4] 4/15 12/7 22/1
**appreciated** [1] 18/3
**apprised** [1] 33/13
**approach** [1] 87/1
**appropriate** [9] 7/7 7/9 21/24 28/25 29/5 32/1 32/5 41/13 41/18
**appropriately** [1] 28/12
**appropriateness** [1] 20/20
**approximately** [2] 78/14 99/21
**April** [6] 6/1 6/2 6/6 7/17 15/8 65/9
**April 30** [2] 7/17 15/8
**April 30th** [2] 6/1 6/2
**arbitration** [3] 99/13 109/25 110/6
**ARDEN** [43] 3/12 45/14 45/16 45/18 45/21 45/24 48/10 54/15 98/1 98/2 98/8 98/11 103/9 103/23 105/24 106/7 106/21 107/17 108/2 108/13 108/19 109/19 110/5 111/19 113/2 113/17 113/19 113/21 113/24 114/17 114/22 115/2 116/2 116/25 117/8 117/19 118/3 118/21 119/2 120/14 121/17 122/6 124/25
**Arden's** [2] 106/4 107/10
**are** [49] 11/22 12/8 15/4 15/24 18/14 19/15 21/1 23/25 24/18 25/14 25/15 26/4 28/25 31/7 32/15 32/20 33/2 40/11 41/24 42/5 42/12 42/13 42/16 44/16 44/17 50/21 51/9 52/4 54/25 55/20 57/10 62/15 62/15 64/15 71/17 74/8 74/8 75/18 80/12 85/18 89/7 89/9 102/17 106/15 111/12 112/18 112/18 119/7 123/21
**area** [4] 52/18 59/10 59/17 67/7
**argue** [1] 11/20 37/1
**arguing** [1] 37/1
**argument** [4] 12/7 21/24 29/1 86/11
**argumentative** [1] 118/10 124/22
**arguments** [1] 86/13
**around** [6] 13/14 52/25 53/7 103/21 112/7 112/8
**arrangements** [1] 21/10
**Arts** [1] 58/8
**as** [105] 4/9 4/10 4/17 4/17 5/19 7/9 8/21 8/23 10/5 10/9 10/19 11/12 12/20 12/21 14/4 14/15 19/2 20/18 20/18 20/21 23/10 24/4 25/19 26/22 28/6 29/20 31/20 32/6 32/25 33/25 35/19 35/19 36/15 39/7 41/7 41/13 46/1 46/1 46/12 50/25 51/7 51/11 54/13 54/17 55/13 56/6 58/21 58/22 58/22 60/1 60/10 63/6 63/9 63/15 65/6 68/6 68/9 68/10

...

| **answered** — continued entries |

# B

**Bachelor** [1] 58/8
**Bachelor's** [1] 58/9
**back** [12] 28/11 37/12 49/2 49/4 65/7 65/18 74/2 74/17 75/3 112/22 115/5 122/1
**background** [1] 102/5
**bank** [1] 8/23
**Barela** [105] 39/2 39/4 40/7 40/14 41/4 41/6 41/6 41/25 42/2 42/6 42/7 44/16 44/18 44/21 44/23 46/12 47/1 47/16 48/3 48/5 48/18 48/9 50/11 50/14 50/16 50/18 50/25 51/9 51/13

(middle column top — continued from **as**):
12/25 13/11 14/17 14/23 17/19 17/22 18/14 19/4 29/10 29/21 31/5 32/15 33/12 33/16 33/18 34/3 34/3 34/3 36/22 40/3 40/3 41/10 42/18 48/25 49/8 51/4 55/5 55/10 56/6 62/22 62/25 63/15 64/7 65/18 65/22 67/25 70/22 71/2 71/9 73/19 74/5 74/6 75/6 75/6 76/6 79/1 79/19 82/14 83/15 85/6 85/10 86/1 86/14 87/14 87/17 88/7 92/13 93/14 93/15 93/18 93/19 96/12 97/1 97/12 100/3 100/17 100/18 101/10 101/13 101/13 101/15 102/8 102/18 103/13 103/14 110/6 106/12 106/7 106/12 107/17 107/18 110/13 110/14 116/17 117/11 117/13 118/3 118/9 120/9 122/25 123/4 125/11 125/15 125/7

68/11 69/25 76/2 76/12 76/23 76/25 76/25 83/24 84/1 84/2 87/7 93/19 98/13 101/13 103/5 108/9 108/23 110/19 110/25 111/1 111/1 111/2 111/11 111/12 111/12 111/13 111/25 112/3 112/10 112/15 114/19 114/19 117/24 120/1 120/1 123/17
**ask** [25] 17/2 18/5 39/16 40/11 40/12 40/13 40/13 40/17 41/17 44/24 51/6 51/8 51/15 62/12 62/22 63/5 70/14 70/15 86/7 94/13 104/3 104/15 120/1 122/7 124/12
**asked** [34] 6/9 8/1 10/25 24/10 25/22 29/6 31/24 34/3 38/3 45/14 47/3 55/19 56/1 62/18 63/12 65/18 65/22 71/19 84/22 87/19 91/8 93/5 94/4 94/12 95/13 96/21 96/23 100/10 104/9 109/20 113/17 114/7 118/18 124/21
**asking** [5] 13/9 14/10 50/19 51/17 119/3
**asks** [2] 34/7 34/8
**assist** [2] 13/20 100/8
**assistant** [7] 2/4 2/6 2/10 45/2 90/24 93/14 113/5
**assisted** [1] 20/25
**associate** [2] 20/24 22/2
**assume** [1] 5/20
**assuming** [4] 8/15 64/17 85/17 86/5
**Atlanta** [1] 14/5
**attached** [2] 5/19 8/8
**attachment** [1] 35/21
**attachments** [1] 22/10
**attempt** [1] 106/23
**attempted** [2] 20/16 21/10 50/10
**attempting** [1] 65/5
**attend** [2] 58/25 102/19
**attended** [1] 59/1
**attention** [1] 70/21
**attest** [1] 10/13
**attorney** [37] 2/3 2/4 2/6 2/10 39/6 39/8 39/14 40/5 40/11 40/12 40/13 40/23 41/3 41/8 41/14 41/15 42/6 44/14 46/1 47/21 49/18 49/21 50/5 52/1 52/17 53/4 84/9 87/22 87/23 87/24 98/13 98/15 104/25 105/1 112/7 114/19 116/10
**Attorney's** [2] 52/21 55/20
**attorneys** [11] 45/3 82/21 83/2 83/20 83/24 84/6 89/13 93/15 96/12 113/10
**August** [6] 1/17 4/1 25/21 26/1 35/18 126/14
**August 17** [1] 35/18
**August 3** [1] 25/21
**available** [4] 14/7 31/18 45/17 113/20
**availed** [1] 24/20
**AVENATTI** [56] 1/11 2/14 4/4 4/9 5/3 5/10 5/17 6/12 6/22 13/6 14/1 14/5 15/5 16/15 18/1 21/4 21/15 22/7 22/13 25/11 26/10 27/16 34/12 35/20 40/24 41/25 43/12 43/18 43/23 44/9 50/6 50/22 52/9 56/16 56/18 57/3 59/24 60/2 62/13 62/19 63/2 78/3 78/12 78/13 85/15 85/25 86/25 88/18 90/13 98/8 98/13 98/17 103/24 104/18 105/23 106/22
**Avenatti's** [3] 5/5 14/8 26/8
**Avenida** [1] 2/16
**avoid** [9] 22/25 107/22 108/3 108/7 108/13 108/15 108/19 108/23 114/10
**avoided** [1] 108/25
**avoiding** [2] 109/3 109/4
**award** [1] 92/13
**aware** [12] 17/6 21/13 23/20 24/14 35/16 53/20 54/25 55/5 80/14 90/20 100/13 102/18
**away** [3] 25/25 64/20 64/21

41/6 41/25 42/6 42/8 42/9 42/14 44/16 44/18 44/21 44/23 46/12 47/1 47/16 48/3 48/5 48/18 48/9 50/11 50/14 50/16 50/18 50/25 51/9 51/13

**B**

Barela... **[76]** 51/18 51/24 52/1 52/7 53/1 53/3 53/10 53/11 53/14 53/16 53/21 54/14 54/17 55/1 55/11 55/13 56/2 95/6 99/8 99/11 99/21 99/24 100/4 100/7 100/19 100/23 101/14 101/17 101/21 102/6 102/20 103/2 103/16 103/19 103/24 104/4 106/21 106/24 107/1 107/2 107/4 107/7 107/18 108/3 108/8 108/13 108/15 108/23 109/1 109/3 109/22 109/24 110/14 110/25 111/11 112/8 114/13 114/25 116/3 116/17 116/19 117/9 117/14 117/16 118/4 118/6 118/7 118/18 120/18 120/19 120/23 121/12 124/19 125/3 125/10
**Barela's [10]** 54/5 56/5 99/16 100/8 101/6 101/11 103/11 105/4 112/22 114/4
**barely [1]** 5/3
**based [10]** 5/4 14/6 60/6 62/4 72/9 72/11 75/3 75/22 77/7 97/4
**basically [5]** 10/5 10/17 24/4 80/24 124/13
**basis [3]** 19/5 33/17 103/20
**be [102]** 4/25 7/1 7/15 7/21 11/3 11/8 12/4 12/16 12/19 13/3 15/10 15/15 17/3 18/4 18/10 18/17 18/18 18/20 19/16 20/2 20/12 21/22 22/2 22/12 22/21 23/14 23/17 24/2 24/6 24/23 24/25 26/5 27/9 28/6 28/19 29/1 29/7 30/10 32/7 33/2 33/5 34/3 34/5 34/8 35/4 35/4 35/15 36/12 36/17 36/20 38/5 39/5 39/23 40/4 40/8 40/20 42/5 42/10 43/6 51/14 51/18 51/21 52/10 55/6 56/13 56/16 61/9 63/25 64/24 66/9 66/10 67/12 67/20 69/23 70/1 70/6 71/4 75/21 76/23 83/24 85/22 86/15 86/18 86/21 90/24 91/11 91/19 91/24 91/25 92/7 92/10 92/12 92/22 97/4 97/20 97/23 101/6 103/7 108/11 110/21 112/8 122/23
**because [38]** 4/24 6/15 7/10 10/5 10/20 11/5 12/19 13/11 22/18 23/7 23/19 30/23 32/20 33/11 34/10 37/18 39/4 41/4 42/11 42/23 47/11 47/17 47/22 50/12 51/9 52/8 55/9 63/12 63/12 75/10 83/9 107/13 109/7 109/24 112/21 115/24 116/11 116/18
**been [42]** 6/13 13/22 15/3 16/7 19/10 24/11 24/13 24/14 24/16 25/22 28/10 28/24 29/3 30/5 30/14 30/17 30/24 30/25 31/5 33/13 33/13 35/13 36/13 38/5 42/9 49/18 53/6 53/21 57/16 59/3 66/24 67/9 80/22 82/24 82/25 84/13 85/14 93/13 105/15 107/7 109/8 118/5
**before [40]** 10/19 10/24 11/10 11/17 12/22 13/2 13/3 14/22 18/6 19/11 20/5 27/17 31/21 33/25 35/4 38/11 38/15 39/10 39/16 44/23 55/23 56/5 58/2 58/3 64/4 65/11 67/25 70/14 70/19 78/8 85/16 92/24 97/10 108/24 110/15 111/19 114/5 119/12 120/1 122/17 123/12
**began [1]** 99/20
**begin [1]** 4/13
**behalf [3]** 4/6 5/6 43/14
**behind [2]** 12/2 66/10
**being [12]** 5/2 5/10 17/6 33/19 41/3 42/2 42/4 50/17 56/6 90/23 93/2 122/20
**belabor [1]** 16/6
**believe [53]** 17/18 19/20 28/7 29/16 29/23 31/11 32/6 32/11 32/17 33/12 34/16 36/8 36/9 37/19 38/11 41/18 41/22 42/9 42/10 46/3 46/10 51/24 67/4 67/5 68/2 72/7 72/8 94/20 99/3 99/13 102/6 102/25 103/1 103/17 104/19 104/22 105/16 106/20 107/16 109/10 110/9 110/17 111/18 111/23 114/21 115/13 116/22 118/24 121/19 121/20 122/25 123/5
**believed [2]** 6/12 53/6
**believes [1]** 39/3
**benefit [3]** 8/22 66/12 88/14
**benefits [1]** 8/23
**beside [1]** 13/19
**best [11]** 64/2 70/4 70/22 76/19 87/17 107/2 114/4 114/14 122/18 123/15 123/18
**better [2]** 19/1 74/3
**between [5]** 41/24 42/6 54/14 57/19 75/18 75/22 77/7 97/4
**Beyond [1]** 12/10 15/14 96/14 96/21 97/6 97/14
**bias [3]** 39/9 41/9 41/10

**biased [1]** 23/25
**big [1]** 96/5
**bigger [1]** 37/3
**bill [1]** 91/24
**billed [2]** 92/17 92/22
**billing [3]** 90/3 90/7 90/11
**bills [1]** 92/24
**bit [5]** 25/24 64/24 65/2 88/25 110/22
**blanket [1]** 26/2
**Bledsoe [11]** 118/19 118/21 119/2 122/1 122/19 123/7 124/13 124/19 125/1 125/3 125/6
**Bledsoe's [2]** 123/9 125/4
**blow [4]** 71/12 72/14 73/4 119/17
**book [1]** 6/14
**book-end [1]** 6/14
**both [5]** 62/4 7/6 26/19 42/11 90/4
**bottom [2]** 72/11 122/13
**box [1]** 24/4
**Brady [1]** 30/25
**BRANDON [1]** 2/4
**break [5]** 31/1 35/24 85/6 85/19 125/14
**Bredahl [3]** 31/25 35/20 85/13
**BRETT [3]** 2/9 4/5 43/13
**brief [10]** 21/15 27/5 27/12 29/10 30/1 31/4 31/5 32/23 33/22 99/13
**briefing [1]** 29/9
**briefly [6]** 18/20 20/13 27/1 36/2 38/20 79/8
**bring [1]** 13/1
**broadcast [2]** 5/21 6/16 6/19
**Brock [12]** 47/23 48/6 102/24 103/16 103/18 116/12 116/20 117/20 119/4 120/20 121/12 124/10
**brought [2]** 36/13 85/15
**Building [1]** 2/10
**burden [1]** 14/2
**burdensome [2]** 4/25 12/17
**bureau [1]** 10/11

**C**

**C-a-r-l-o-s [1]** 77/25
**C-o-l-o-r-a-d-o [1]** 78/1
**C-u-l-i-g [1]** 103/1
**CA [4]** 1/20 2/8 2/11 2/16
**calculation [1]** 92/11
**CALIFORNIA [10]** 1/5 1/16 4/1 13/10 16/14 44/14 79/14 79/20 98/17 98/19
**call [42]** 10/12 20/12 39/2 40/15 43/23 45/4 46/12 46/21 46/25 47/10 48/22 48/23 49/1 54/10 54/13 54/25 55/6 55/9 55/10 55/12 56/2 56/6 97/24 109/12 111/25 112/9 112/15 113/7 114/24 115/4 115/20 115/23 116/2 116/17 117/19 118/3 118/18 121/6 121/9 121/11 121/12 121/14
**called [13]** 10/24 10/25 44/23 45/13 46/17 60/18 62/23 63/3 63/7 90/20 93/2 113/16 115/16
**calling [2]** 45/25 114/18
**calls [12]** 44/1 47/23 53/23 55/5 56/19 77/21 97/6 98/1 103/4 110/11 116/11 116/19
**came [4]** 30/4 46/1 104/17 114/19
**camera [13]** 27/12 27/13 27/15 28/13 28/18 28/21 28/24 29/3 29/11 29/19 30/10 31/6 31/7
**can [51]** 4/17 6/19 7/25 10/12 10/13 11/10 13/1 18/15 18/17 19/16 20/2 20/13 21/15 21/16 21/18 21/19 24/20 25/1 25/15 25/3 25/7 29/2 30/18 31/8 35/1 38/9 49/2 66/2 66/14 66/22 67/14 67/20 67/22 67/23 68/23 71/10 71/12 72/3 76/23 79/8 82/14 88/23 104/5 110/22 114/9 119/9 119/10 119/16 119/20 120/5 122/4
**can't [1]** 120/5
**career [1]** 59/11
**CARLOS [4]** 3/11 77/21 77/22 77/25
**Carrey [1]** 35/3
**Carter [10]** 17/1 17/3 18/15 18/25 19/8 20/4 20/8 20/15 20/22 21/11
**case [64]** 5/4 5/15 6/10 10/8 11/24 12/19 19/16 19/25 20/9 20/12 20/23 21/3 23/13

25/23,39/17 48/22 57/8 58/22 59/22 73/15 73/23 74/17 75/1 77/21 80/9 80/10 80/10 80/17 80/18 80/23 80/23 81/2 82/2 82/5 82/7 82/12 82/15 85/3 85/8 85/9 92/14 93/2 94/8 94/18 94/20 94/22 94/23 94/25 95/1 95/3 96/3 96/3 96/13 96/20 99/18 100/9 100/19 100/23 104/21 108/8 111/21 125/17 125/18
**cases [33]** 78/17 78/21 78/23 79/1 79/4 79/6 79/8 79/13 79/19 79/23 81/4 81/7 81/12 81/13 81/15 81/19 81/21 81/22 82/14 83/24 84/2 84/7 94/4 94/12 94/17 95/3 95/5 95/8 95/21 95/25 96/1 97/2
**caveat [1]** 34/17
**CDs [3]** 8/5 8/7 8/9
**Cefali [2]** 4/10 43/18
**cell [23]** 16/8 16/9 59/8 59/9 59/9 59/12 66/24 66/25 67/1 67/2 67/10 67/19 68/20 69/17 73/14 73/17 73/19 74/5 74/7 74/22 75/19 77/4 77/4
**Cellebrite [24]** 67/4 67/15 67/21 67/22 67/24 69/3 69/8 69/13 69/18 70/12 70/15 71/5 71/7 71/15 71/17 71/25 72/4 73/10 75/23 76/12 76/24 77/3 77/8 77/12
**cemetery [4]** 79/9 80/17 80/18 94/25
**center [3]** 19/15 58/22 81/13
**centers [2]** 79/14 79/20
**CENTRAL [1]** 1/5
**certain [7]** 47/7 62/5 68/12 76/22 98/23 98/24 117/24
**certainly [7]** 20/22 33/4 37/4 48/4 64/21 71/5 85/18
**CERTIFICATE [1]** 126/5
**certification [1]** 9/18
**CERTIFIED [1]** 1/9
**certify [1]** 126/7
**cetera [1]** 20/11
**challenge [2]** 38/12 38/16
**chance [2]** 112/5 119/24
**change [2]** 48/25 68/12
**charged [4]** 53/6 53/21 101/11 101/14
**charges [4]** 40/3 40/3 53/18 54/5
**charts [1]** 19/10
**checks [1]** 62/5
**chief [2]** 2/5 20/12
**child [1]** 15/16
**choice [1]** 5/10
**choose [1]** 61/20
**chooses [1]** 15/10
**Circuit [2]** 15/3 23/4
**cities [1]** 16/12
**City [6]** 5/20 5/21 5/25 7/17 7/24 8/3
**civil [2]** 85/15 99/14
**CJA [2]** 7/11 13/13
**claim [13]** 48/23 82/15 101/6 104/11 106/10 106/12 109/7 109/19 109/22 109/24 110/5 110/11 121/8
**claimed [4]** 104/16 105/8 106/1 121/5
**claims [1]** 109/11
**clarification [1]** 16/5
**class [4]** 67/10 80/19 96/1 96/5
**class-action [1]** 96/1
**classes [2]** 59/1 59/5
**clear [6]** 7/2 26/2 30/16 106/15 106/17 124/18
**clearly [6]** 15/4 15/14 17/14 17/21 20/17 52/13
**Clemente [1]** 2/16
**clerk [2]** 30/7 34/8
**Clerk's [3]** 31/17 31/22 32/3
**client [11]** 81/1 81/23 82/16 82/17 83/21 91/25 92/22 94/9 94/10 94/13 124/19
**clients [24]** 79/22 79/25 80/2 80/9 80/17 80/20 81/7 81/20 81/24 82/16 82/22 83/3 83/10 83/16 83/20 84/13 84/13 84/17 88/20 89/16 92/17 92/18 92/25 94/5
**close [1]** 44/5
**closer [1]** 110/22
**closing [1]** 11/21
**CNN [14]** 5/24 6/18 8/7 8/12 8/20 10/9 10/18 11/9 12/25 13/20 14/5 14/11 15/5 15/8

**C**
**CNN's [1]** 5/14
**Code [1]** 126/8
**Cody [1]** 22/3
**college [1]** 58/4
**COLORADO [13]** 3/11 21/7 77/21 77/22 77/25 78/6 87/6 89/3 90/20 92/5 94/2 96/11 101/17
**column [1]** 68/2
**come [7]** 9/18 9/20 13/10 30/7 55/23 64/21 101/16
**comes [1]** 43/7
**comfort [1]** 9/24
**commence [1]** 85/16
**comment [1]** 20/4
**comments [1]** 25/16
**communicate [10]** 48/5 80/2 81/1 81/24 83/21 89/16 94/9 94/13 100/18 103/3
**communicated [4]** 88/20 94/5 100/20 111/21
**communicating [7]** 19/14 20/10 81/6 94/10 94/14 101/8 103/10
**communication [2]** 82/11 82/17
**communications [12]** 19/21 21/1 31/6 42/6 51/20 63/1 80/5 82/22 83/3 83/4 84/16 103/12
**company [2]** 67/22 87/12
**competently [1]** 18/15
**completely [3]** 29/21 38/5 49/10
**comply [1]** 42/20
**compromises [1]** 57/23
**computer [14]** 57/24 58/10 59/23 60/25 61/3 67/21 90/24 91/7 91/12 91/20 91/24 92/6 96/19 97/11
**computers [1]** 59/10 61/9
**conceal [2]** 107/7 110/13
**concern [2]** 28/23 34/1
**concerned [2]** 111/1 111/12
**concerning [4]** 4/18 35/10 51/19 85/14
**concerns [2]** 28/22 42/13
**concluded [2]** 27/14 32/1
**conditionally [2]** 18/8 18/12
**conditions [1]** 15/2
**conduct [2]** 22/19 24/7
**conducted [2]** 27/12 28/13
**conducting [2]** 23/22 85/22
**conference [12]** 47/22 49/24 52/15 106/5 107/11 109/12 113/1 114/24 115/4 116/1 116/19 126/12
**confirm [1]** 119/3 124/15
**conflict [3]** 47/21 116/10 116/18
**conformance [1]** 126/11
**congratulated [1]** 105/9
**connected [1]** 67/20
**connection [31]** 19/8 19/13 19/13 19/14 50/17 59/22 60/1 71/7 71/10 72/9 76/15 79/22 80/18 81/20 82/12 85/2 89/22 96/12 99/1 100/4 100/7 100/19 100/23 101/6 101/11 101/14 101/17 102/20 103/11 110/6 111/21
**consider [2]** 33/4 86/6
**consistently [1]** 11/13
**constitutional [7]** 5/9 6/17 29/18 29/24 30/11 33/17 33/20
**consulted [1]** 51/19
**contact [8]** 51/25 52/5 53/11 108/20 108/23 108/25 109/3 109/5
**contacted [7]** 19/3 20/19 52/25 65/21 65/25 66/5 112/6
**content [1]** 30/21
**contingency [2]** 90/16 97/2
**continue [2]** 84/12 84/16
**contrary [2]** 88/20 124/9
**control [1]** 36/5
**controlled [1]** 40/8
**conversation [3]** 7/4 13/7 106/3
**conversed [2]** 51/9 51/15
**convicted [1]** 50/12
**copied [3]** 35/9 53/12 53/16
**copies [1]** 31/25
**copy [10]** 27/21 32/4 33/1 34/8 35/12 68/14 73/1 120/4 122/21
**cordial [1]** 104/1

**corner [1]** 72/15
**correct [100]** 16/20 22/23 23/14 27/23 28/13 38/9 45/14 45/15 45/19 45/23 46/23 48/1 48/12 49/11 49/22 52/12 52/18 52/22 53/1 53/2 53/8 53/10 53/15 53/17 53/19 54/3 54/4 54/6 54/9 54/11 57/8 57/11 59/6 59/13 59/20 66/6 67/9 68/18 68/22 69/8 69/13 69/18 70/17 75/1 76/17 77/13 78/9 78/16 78/21 79/14 79/25 80/1 80/9 80/13 80/16 80/25 82/10 84/10 88/1 88/2 89/12 90/19 91/22 93/8 94/16 94/24 95/2 95/4 95/9 98/14 103/25 105/11 105/25 106/6 106/11 106/13 106/14 107/24 108/25 109/16 113/17 113/18 113/22 114/1 115/22 116/15 117/12 117/22 118/22 119/5 119/6 119/25 120/16 121/1 121/2 122/14 123/7 126/9
**corrected [1]** 26/14
**correction [1]** 26/23
**correctly [9]** 61/15 106/19 111/6 111/9 111/17 114/2 119/14 120/22 121/23
**cost [5]** 76/18 76/19 77/1 77/4 77/10
**could [25]** 7/23 8/3 13/18 21/4 22/3 23/14 35/3 42/17 47/11 47/16 64/6 64/23 66/11 72/14 73/4 73/24 74/1 76/25 83/9 87/1 92/22 98/23 107/22 108/3 115/24
**couldn't [1]** 13/18
**counsel [17]** 2/1 2/15 4/9 7/10 8/20 10/9 11/22 18/24 19/3 20/4 20/14 35/8 35/10 35/22 43/15 51/7 51/18
**country [3]** 5/1 11/5 14/3
**counts [4]** 86/11 86/12 86/14 86/19
**couple [4]** 22/15 84/23 112/17 122/7
**course [4]** 25/5 34/4 59/11 62/25
**court [48]** 1/4 4/17 4/20 5/8 5/13 5/16 5/17 10/5 11/13 12/23 12/24 13/15 13/20 14/10 14/13 14/16 14/17 17/22 18/7 21/22 22/19 22/22 27/24 28/12 28/24 29/6 29/18 30/15 30/17 32/15 32/21 32/21 34/2 34/8 34/11 35/2 35/9 35/12 36/10 37/7 38/10 38/13 38/17 39/13 39/17 98/22 126/17
**Court's [1]** 33/21
**Courthouse [1]** 1/19 2/7
**courtroom [3]** 23/11 23/16 33/19
**courts [1]** 109/16
**cover [1]** 17/20 22/3
**creation [1]** 10/21
**credible [1]** 14/25
**Crime [1]** 58/22
**criminal [31]** 2/5 12/12 12/13 12/13 39/5 39/8 39/14 40/1 40/1 40/12 40/19 40/23 40/24 41/2 41/3 41/8 41/14 49/21 50/5 50/6 50/18 51/4 51/13 52/1 52/6 52/7 52/17 52/23 53/4 53/18 57/16 76/16
**criminally [2]** 53/21 54/6
**critical [4]** 12/20 12/21 26/13 30/10
**cross [14]** 3/4 3/9 5/1 14/3 19/9 22/23 23/5 23/18 24/1 24/7 39/14 49/14 50/11 93/25
**cross-examination [7]** 19/9 23/5 24/7 39/14 49/14 50/11 93/25
**cross-examine [3]** 22/23 23/18 24/1
**CSI [1]** 68/20
**Culig [2]** 103/1 103/10
**Cummings [2]** 4/10 43/18
**Cuniff [1]** 22/12
**Cuniff's [3]** 24/14 25/14 26/3
**currently [2]** 34/19 76/9
**custodial [7]** 5/23 8/12 8/19 10/10 13/18 14/4 15/21
**custodian [1]** 9/25 11/9 13/1
**Cyber [1]** 58/22

**D**
**D.A [3]** 41/6 50/13 53/21
**D.A.'s [1]** 42/2
**D.C [2]** 73/12 76/2
**damages [5]** 101/2 101/5 101/7 101/8 101/10
**data [31]** 16/9 36/6 37/3 37/3 58/18 58/24 58/24 59/6 60/4 60/5 60/6 60/16 61/5 61/7 61/9 62/22 63/2 63/2 63/6 63/16 63/18 63/25

**64/6 64/8 65/19 66/7 66/25 68/11 68/13 68/17 database [1]** 62/19
**date [7]** 42/15 119/23 120/7 120/10 120/17 122/16 126/14
**dated [2]** 42/16 123/21
**dates [6]** 6/10 6/14 10/14 14/9 16/13 118/23
**David [1]** 102/25
**day [22]** 1/12 6/11 6/13 21/9 35/1 35/2 35/3 36/12 64/24 83/25 83/25 84/1 84/7 84/7 84/8 84/8 102/12 102/17 102/18 122/4 122/1 122/17
**days [6]** 7/24 13/10 16/10 19/1 112/17 118/20
**deadlines [1]** 36/22
**deal [4]** 4/21 59/19 100/3 102/20
**dealing [2]** 26/9 102/23
**dealt [1]** 59/12
**DEAN [2]** 2/15 2/15
**declaration [13]** 5/23 8/12 8/16 9/2 9/5 9/10 9/25 13/25 14/21 14/24 15/7 15/13 15/22
**declare [1]** 27/11
**defamation [1]** 82/15
**defeated [1]** 23/1
**defendant [35]** 1/12 2/13 13/13 13/21 16/7 24/1 29/20 32/7 36/4 36/14 39/4 39/10 39/15 39/18 41/2 41/4 41/7 41/9 41/13 42/3 50/10 50/13 50/15 51/24 53/9 53/16 53/20 54/3 54/14 79/2 79/9 79/11 94/4 94/8 95/1
**defendant's [6]** 32/11 38/23 41/8 56/21 77/22 98/2
**defended [1]** 82/16
**defense [23]** 3/9 3/13 13/20 29/2 33/12 39/5 39/8 39/14 40/12 41/3 41/8 41/14 44/1 44/2 49/21 50/5 51/4 52/1 52/17 56/19 58/22 77/21 98/1
**defer [1]** 34/18
**deferring [1]** 34/22
**delayed [1]** 17/3
**deleted [2]** 67/25 68/2
**demanding [1]** 13/9
**demonstrably [3]** 31/2 31/2 37/9
**denied [4]** 22/19 22/23 24/11 26/6
**dental [3]** 79/13 79/20 81/13
**Denver [2]** 101/17 101/19
**deny [3]** 12/24 25/13 124/15
**denying [1]** 124/16
**department [23]** 57/10 57/16 57/21 57/25 59/11 67/24 70/3 70/11 70/16 71/2 71/9 73/7 73/21 74/7 74/22 74/25 75/23 76/3 76/18 76/19 77/5 77/7 77/10
**department's [1]** 57/24
**department-wide [1]** 57/25
**departments [1]** 58/1
**Depending [1]** 64/15
**describe [1]** 79/6
**designated [1]** 20/23
**designed [2]** 107/7 110/13
**desire [1]** 42/18
**despite [1]** 108/17
**details [5]** 99/14 107/14 107/18 110/25 111/11
**detects [1]** 57/23
**determination [2]** 18/6 86/6
**determine [2]** 73/2 62/5
**device [6]** 61/23 68/6 68/10 68/17 75/11 76/21
**devices [4]** 59/6 59/19 67/21 68/21
**did [142]**
**didn't [14]** 9/1 13/15 13/19 14/12 14/12 22/17 28/10 36/15 37/16 51/15 94/13 102/19 110/16 111/25
**Diego [1]** 53/5
**different [3]** 81/12 89/9 125/7
**digital [1]** 57/15
**dire [1]** 85/23
**direct [22]** 3/4 3/9 39/21 40/9 41/16 42/25 44/10 46/2 50/6 51/16 51/21 51/22 54/10 57/4 78/4 94/17 94/21 95/13 98/9 111/3 111/14 114/20

**D**

directed [3] 4/22 27/16 30/8
directing [2] 31/17 70/21
disclosed [3] 30/14 30/24 42/10
discovery [3] 37/25 41/24 42/20
discuss [2] 85/8 125/16
discussed [2] 94/17 94/21
discussing [1] 106/9
discussion [4] 43/2 43/3 43/4 86/13
disks [2] 10/1 15/7
dismiss [1] 36/6
dismissal [1] 85/15
dispute [2] 97/12 120/9
disputes [1] 99/12
district [1] 1/4 1/5 53/4
disturbing [1] 30/9
DIVISION [2] 1/6 2/5
do [126] 6/17 7/14 7/21 7/25 8/15 8/20 11/20
11/25 12/3 12/4 13/15 15/24 15/25 16/2 16/18
18/18 18/18 24/10 24/19 24/19 26/15 26/16
28/16 30/8 30/24 32/23 36/21 36/22 39/15
42/21 44/16 45/1 45/5 45/7 55/6 55/21 56/2
57/19 57/22 60/1 61/1 61/5 62/25 63/9 63/15
64/3 64/18 66/17 68/4 72/7 72/8 73/21 78/23
79/4 79/18 81/4 81/6 82/2 84/20 84/25 85/10
85/10 87/11 87/22 88/6 88/15 89/4 89/25 90/4
93/14 93/20 94/18 94/22 94/25 95/8 95/14
96/13 96/16 96/20 97/1 97/2 97/12 98/23
98/24 99/10 99/16 99/20 99/24 100/21 100/22
101/4 101/5 101/7 101/8 101/10 101/12
101/13 101/24 102/14 102/23 103/9 103/15
103/18 103/21 104/12 104/14 104/18 108/2
108/13 109/2 111/19 112/23 113/3 113/4
113/8 113/10 117/11 117/15 118/9 118/13
120/9 122/1 122/3 122/25 125/10 125/18
docket [8] 22/7 22/9 26/8 26/15 26/18 30/5
34/12 36/10
document [17] 27/15 36/4 63/24 72/20 72/21
73/1 87/4 87/6 88/14 89/3 89/8 120/2 122/7
122/8 122/10 122/22 123/1
documented [1] 25/4
documents [6] 9/20 19/22 29/6 29/7 62/9
98/25
dodge [1] 20/16
dodged [1] 18/25
dodging [1] 20/17
does [31] 9/12 13/12 13/24 14/25 17/22 21/12
39/21 45/9 57/22 60/20 60/22 60/23 60/24
62/2 62/4 62/11 65/9 71/4 71/24 72/3 75/21
75/24 76/14 76/18 76/19 87/7 87/10 102/3
113/12 122/9 122/22
doesn't [14] 8/22 9/9 9/24 14/1 19/17 30/15
35/15 64/20 71/6 71/8 73/9 73/11 77/3 99/22
doing [6] 10/16 24/15 40/20 61/19 63/20
117/12
domain [1] 33/2
don't [82] 6/16 8/2 8/5 8/7 8/12 11/10 11/16
12/5 12/15 12/17 19/5 19/16 20/2 21/2 22/18
26/21 27/1 30/15 33/16 36/4 36/9 39/11 40/16
41/1 41/11 42/9 42/10 42/18 42/23 50/2 50/24
51/3 52/9 53/25 55/11 61/4 63/11 63/17 65/11
71/16 73/14 73/15 73/19 74/5 74/21 74/22
78/19 80/19 81/18 87/16 93/11 93/18 93/19
93/21 96/11 96/18 96/19 97/3 97/12 99/14
99/18 99/22 101/1 101/15 102/1 102/4 102/15
103/4 103/17 103/21 107/4 107/5 110/17
114/23 116/7 116/22 117/10 117/11 117/13
120/11 121/19 123/4
done [8] 10/14 11/4 11/18 18/5 20/5 21/5
107/6 108/8
door [1] 39/21
doubt [1] 49/9
down [5] 12/1 15/2 77/17 85/12 109/20
Downes [1] 102/3
downstairs [2] 32/3 34/7
downtown [1] 32/1
dozen [1] 78/20
draft [1] 92/24
drafted [1] 8/3

drafting [2] 98/25 100/2
dragging [1] 89/9
drawing [1] 106/22
drive [1] 68/8
drop [2] 11/10 11/20
dropping [2] 68/7 68/12
Drum [14] 19/7 19/14 19/21 20/6 20/7 20/25
26/19 30/14 36/24 37/4 37/4 65/21 65/25 66/5
Drum's [2] 20/3 27/11
due [7] 7/11 26/19 120/21
during [21] 7/24 13/7 25/5 31/1 34/4 35/24
46/1 46/21 68/11 78/12 78/17 83/23 84/5
93/15 99/7 103/2 106/2 114/19 115/20 117/19
121/12
DVDs [4] 11/20 13/25 15/21 16/17

**E**

e-mail [20] 7/5 8/4 10/22 12/20 17/19 20/17
26/12 26/13 35/9 35/11 35/18 41/23 53/12
53/20 54/3 54/5 103/3 103/11 103/13 119/22
e-mailed [1] 53/16
e-mailing [1] 13/17
e-mails [11] 20/16 25/5 30/19 31/3 41/23
41/24 42/4 42/15 42/16 42/19 62/9
each [4] 24/23 81/22 86/14 118/21
Eagan [13] 59/23 60/2 62/13 62/19 63/2 78/12
78/13 98/13 98/16 103/24 104/18 105/22
106/22
earlier [2] 72/1 89/10
early [2] 59/3 62/5
easy [2] 37/12 66/15
ECF [2] 17/14 31/16
editorial [1] 25/15
efficiency [1] 90/5
effort [3] 5/6 61/16 114/10
efforts [1] 104/11
either [3] 6/10 14/21 36/5
electronic [5] 58/18 59/6 59/19 68/20 75/11
elicit [4] 39/11 39/13 41/1 50/2
elicited [3] 42/25 50/15 88/21
Elliott [1] 22/4
else [10] 29/8 32/16 34/4 36/1 51/20 65/17
73/13 103/5 117/15 118/4
employed [5] 57/10 57/16 58/2 78/11 78/13
employees [1] 76/8
en [1] 11/17
enables [1] 67/24
end [15] 6/14 21/18 34/18 34/19 34/22 34/23
35/1 35/3 43/2 43/3 43/4 52/15 58/22 85/19
95/13
enough [2] 30/23 37/12
ensures [1] 68/13
entertain [1] 14/14
entire [1] 23/1
entirely [3] 15/11 99/17 119/25
entirety [1] 37/3
entitled [3] 12/16 12/18 126/10
entry [1] 90/4
enumerate [3] 61/22 61/24 65/5
equivalent [2] 25/14 26/4 36/13
error [3] 29/16 29/23 31/12
especially [2] 40/1
essentially [1] 39/5
establish [6] 5/14 16/12 40/5 40/6 50/10
88/19
established [1] 20/7
establishing [1] 15/7
estimate [1] 78/19
et [1] 20/11
EVAN [24] 3/10 17/1 17/3 38/23 41/5 41/24
42/7 44/1 44/2 44/6 46/2 46/9 47/10 48/24
56/7 114/20 114/22 114/23 114/25 115/12
115/23 116/2 116/18 117/8
even [17] 5/3 8/11 8/15 11/25 13/13 14/4 20/5
32/22 35/16 36/15 36/15 39/12 40/17 55/7
64/25 74/21 74/22
evening [4] 27/5 28/6 35/5 41/22
event [3] 7/12 26/3 109/13
events [1] 104/10
ever [43] 12/12 46/11 46/25 47/15 48/3 48/5

48/18 52/11 62/12 62/18 62/22 63/5 65/18
65/21 68/25 66/5 73/6 74/20 74/6 78/18 81/6
85/2 88/6 100/17 100/18 102/20 106/22
107/17 108/23 108/25 114/22 114/23 114/24
116/2 116/17 117/9 117/12 117/15 118/3
118/7 121/11 121/17 124/1
every [2] 38/4 76/20
everything [12] 30/15 30/16 64/11 64/16
69/24 107/22 108/2 110/17 111/2 111/13
123/14 123/17
evidence [18] 8/14 8/17 9/18 10/18 11/10
11/19 12/4 12/19 13/2 13/22 15/1 15/13 15/21
16/7 34/24 42/11 61/20 119/17
ex [1] 13/14
exact [3] 49/2 78/19 81/18
exactly [5] 10/6 25/19 98/15 99/17 100/6
examination [16] 19/9 23/5 23/22 24/7 39/14
44/10 49/14 50/11 55/17 57/4 78/4 93/25 96/9
98/9 111/3 111/14
examine [4] 22/23 23/18 24/1 73/14
examined [2] 73/20 74/6
Excel [4] 62/8 90/2 90/6 91/13
exchange [1] 12/20
excluded [1] 40/4
exclusively [1] 79/10
excused [4] 56/1 56/16 97/20 97/23
executable [2] 63/22 64/19
executed [1] 60/6
exhausted [3] 7/16 7/22 15/9
exhibit [17] 6/5 15/23 22/11 25/17 66/9 66/17
68/23 70/9 70/11 70/21 70/22 71/2 71/12 72/9
75/17 75/22 119/16
Exhibit 1059 [1] 119/16
Exhibit 119 [2] 70/9 70/11
Exhibit 120 [2] 70/21 70/22
Exhibit 260 [2] 66/9 66/17
Exhibit 294 [2] 75/17 75/22
exhibits [13] 3/7 3/13 5/20 8/16 9/10 19/10
19/13 31/18 31/25 32/3 32/8 32/16 33/1
exist [1] 64/3
existed [1] 37/19
existence [1] 63/21
exists [1] 63/25
expect [1] 39/3
expected [1] 111/24
expecting [1] 112/3
expense [1] 20/10
expenses [1] 97/11
experience [7] 32/20 64/25 66/19 68/5 75/3
75/22 97/5
expert [9] 20/23 100/22 101/2 101/2 101/5
101/7 101/8 101/10 101/13
experts [7] 100/3 100/5 100/7 100/8 100/13
100/15 100/18
explain [3] 66/23 67/14 89/25
explained [2] 13/8 14/4
explanatory [1] 29/8
exported [1] 60/7
exposed [2] 25/20 85/14
exposure [2] 25/5 26/2
extends [1] 32/8
extension [1] 19/12 20/8 22/10
extent [1] 11/7
extract [3] 66/25 67/23 77/8
extraction [15] 66/21 66/22 67/15 68/11 69/2
69/7 69/12 71/15 71/18 71/25 72/4 73/20 74/9
74/23 75/19
extraordinary [1] 5/6
extreme [1] 15/15
eye [5] 108/20 108/23 108/25 109/3 109/4

**F**

F.3d [2] 15/3 23/4
fact [11] 10/13 11/3 14/21 39/24 40/14 40/23
41/3 41/14 55/19 55/23 108/17
facts [4] 8/2 50/1 104/10 124/14
fair [3] 25/18 30/23 41/12
fairly [1] 83/6

**F**

false [10] 31/2 31/2 37/9 37/21 38/5 38/12 49/10 55/24 110/12 124/20
familiar [3] 62/15 67/6 102/4
family [2] 21/11 21/12
fancy [1] 61/25
far [3] 81/15 110/25 111/11
farther [1] 88/25
features [1] 76/22
federal [10] 2/10 12/13 46/5 46/8 46/8 46/12 101/24 115/8 115/11 115/11
fee [6] 7/7 7/9 7/11 7/14 13/12 32/5
feel [2] 12/17 66/14
fees [1] 92/14
felon [2] 50/12 52/9
felony [1] 12/13
few [4] 79/1 79/3 81/4 118/20
field [1] 30/4
Fifteen [1] 79/25
figure [1] 7/25
figured [1] 112/5
file [12] 18/21 26/24 27/7 31/10 34/8 35/1 61/21 61/22 62/7 62/21 63/24 63/25
filed [8] 14/12 17/8 26/18 28/18 34/12 36/5 99/18 109/25
files [25] 60/5 60/7 60/20 60/23 61/12 61/13 61/16 61/23 61/24 61/25 62/1 62/2 62/4 62/5 62/7 62/8 62/12 62/14 62/19 63/22 63/23 65/6 66/2 68/7 68/12
filing [6] 17/14 27/13 27/19 27/21 28/21 30/22
filings [4] 27/10 28/24 29/3 109/15
Filippo [1] 84/21
finalization [1] 103/15
finalized [1] 103/18
finally [2] 37/19 69/15
financial [5] 58/17 62/22 63/2 65/18 65/22
find [14] 11/12 11/13 14/8 15/2 15/13 15/15 18/12 18/13 25/14 26/3 63/18 63/24 64/7 66/3
finding [1] 51/25
fine [6] 16/4 27/8 33/23 40/6 40/7 79/7
firm [54] 46/18 46/22 47/1 47/11 47/16 60/2 66/2 66/7 78/17 79/22 80/17 81/20 82/20 82/21 82/22 83/3 83/7 83/9 83/14 83/15 83/23 84/5 84/7 84/11 84/12 84/14 84/18 87/8 87/11 87/22 88/10 88/16 89/5 89/13 89/22 90/21 91/6 92/16 92/16 93/16 97/2 98/18 99/2 99/20 101/4 103/20 103/20 104/17 104/18 104/25 105/2 115/17 115/21 115/24
firm's [2] 92/14 95/21
first [20] 6/24 25/13 28/23 38/23 43/24 44/4 53/11 56/23 58/3 60/14 61/14 66/17 75/17 77/23 98/4 98/5 109/21 110/5 122/9 123/20
five [5] 64/13 64/17 64/19 81/17 81/23
flag [1] 39/13
focus [4] 58/14 59/17 67/8 86/13
focused [1] 59/10
folder [2] 63/22 63/23
folks [2] 24/8 31/25
follow [1] 24/17
following [3] 25/22 29/13 103/14
follows [5] 8/21 10/5 10/9 12/11 23/10
force [1] 24/1
foregoing [1] 126/8
forensic [34] 59/12 59/19 59/23 60/3 60/4 60/10 60/18 60/18 60/20 61/20 61/19 64/2 64/6 66/24 67/2 67/25 68/5 68/6 68/15 69/2 69/8 69/17 69/22 70/4 70/22 71/3 71/9 72/8 73/1 73/8 75/10 75/19 75/23 76/12
forensically [3] 58/18 59/5 68/17
form [2] 85/8 125/17
format [1] 126/11
forth [2] 58/1 90/6
forward [2] 49/5 77/19
forwarded [1] 121/20
found [1] 30/4
foundation [7] 55/3 67/17 74/10 92/2 95/10 96/14 123/2
foundational [2] 8/17 93/6
four [2] 10/20 13/10

**Fourth [1] 2/11**
Fox [1] 2/4
frame [1] 103/22
Frank [2] 87/25 88/1
frankly [2] 12/5 24/13
Frauds [1] 2/6
free [1] 66/14
freely [1] 6/19
Friday [5] 31/1 36/8 39/20 102/14 102/15
friend [1] 35/10
front [6] 15/24 15/25 16/2 23/18 64/18 89/3
FTK [4] 58/21 60/16 60/25 76/11
further [13] 4/21 21/24 25/6 25/11 38/18 49/12 55/14 56/9 56/11 77/14 93/22 96/8 97/17

**G**

Gardner [6] 22/8 22/17 22/20 24/20 25/20 95/6
gave [4] 49/1 91/13 121/3 124/15
generally [13] 23/25 32/20 39/9 59/20 62/16 67/14 68/15 79/6 82/5 101/21 103/11 103/12 104/13
generated [1] 91/25
gentleman [2] 44/16 84/20
gentlemen [5] 43/21 85/7 103/3 112/24 125/15
Geoffrey [2] 94/18 96/3
Georgia [1] 14/5
gesture [3] 106/22 107/10 110/13
gesturing [2] 106/7 109/19
get [26] 5/11 6/10 10/9 10/10 10/10 10/12 13/10 13/10 13/13 13/15 21/15 21/18 28/10 36/2 39/24 40/14 40/23 50/1 51/18 52/2 67/15 68/6 92/10 92/14 104/11 110/22 119/7
gigabytes [1] 61/8
Giglio [1] 30/25
give [8] 4/16 9/24 15/23 36/12 90/23 91/6 91/11 95/18
given [10] 5/17 11/13 15/12 31/16 33/14 52/7 63/20 68/2 83/9 83/15
gives [1] 32/21
glass [4] 106/4 107/10 109/12 113/1
go [13] 4/20 14/11 37/12 50/21 61/12 61/19 63/20 65/18 69/20 70/9 77/19 101/19 115/5
goes [4] 19/24 34/6 90/14 90/15
going [36] 8/13 10/23 14/20 16/6 17/9 17/13 18/4 18/8 18/11 22/14 26/10 31/11 31/12 34/18 35/4 36/12 39/2 40/8 41/9 40/11 40/12 40/13 40/14 40/22 43/1 48/21 49/25 50/21 51/3 51/7 52/10 88/19 112/9 112/22 119/7 119/11
gone [1] 22/25
good [26] 4/5 4/7 4/8 4/11 17/17 17/25 43/13 43/16 43/17 43/20 43/21 43/22 44/12 44/13 49/16 49/17 57/6 57/7 64/24 78/6 78/7 94/2 94/3 98/11 98/12 112/5
got [5] 17/14 29/4 61/2 121/1 124/14
government [48] 8/1 8/13 8/23 10/21 10/23 12/3 13/21 13/24 19/15 22/9 24/13 24/16 24/25 25/21 26/7 27/12 27/13 28/2 28/18 29/6 29/7 29/20 30/8 34/14 36/3 37/10 40/16 42/20 42/25 44/23 47/15 77/15 88/21 93/3 99/11 104/4 107/2 110/15 111/21 111/25 112/3 112/9 112/12 112/20 112/22 115/6 117/9 118/13
government elicited [1] 42/25
government's [5] 9/13 26/11 27/19 27/21 30/22
graduated [1] 58/4
great [1] 22/25
Greg [14] 40/14 41/4 41/5 41/6 41/25 42/1 42/6 42/7 44/16 44/20 48/18 99/8 99/11 114/25
Gregory [3] 39/2 39/4 95/6
grounds [1] 29/25
group [3] 23/24 62/7 62/8
guaranteeing [1] 32/25
guess [4] 16/6 22/11 26/14 34/16

**H**

had [90] 6/9 7/3 8/24 9/2 9/5 10/24 13/22 14/7 14/22 14/23 16/10 16/16 18/4 19/12 20/4 20/4 20/8 22/17 25/5 25/22 26/2 28/10 28/11 30/2 30/5 30/8 30/21 35/8 35/13 37/19 38/11 38/13 40/6 45/4 45/5 46/18 47/21 47/22 47/22 53/3 53/6 53/11 53/21 59/22 67/10 70/16 77/7 82/6 82/8 84/13 85/14 88/14 94/18 94/22 94/25 95/8 95/14 97/2 100/5 101/4 101/5 103/4 104/16 104/20 105/15 105/23 109/8 109/22 110/13 111/24 113/7 113/7 115/17 116/10 116/11 116/18 116/19 116/19 118/5 118/18 118/20 119/1 119/3 119/4 119/24 121/12 124/19 124/20 125/1 125/3
had a [1] 53/3
half [9] 38/14 64/10 71/13 73/5 78/15 78/18 84/5 87/9 89/10
hand [7] 67/19 72/15 90/14 90/14 90/15 90/15 106/8
handed [4] 85/13 87/4 87/6 89/8
handful [1] 81/16
handle [1] 52/23
handled [4] 79/10 79/13 80/23 90/16
handling [1] 79/18
hang [2] 48/18 117/9
hanging [2] 117/13 117/15
HANNA [1] 2/1
happen [2] 121/11 121/14
happened [13] 10/6 10/22 20/22 40/15 48/13 73/15 73/16 106/16 117/3 117/3 121/5 121/8 124/14
happens [1] 112/7
happy [15] 5/16 7/13 7/14 14/17 22/12 26/24 27/4 30/1 31/4 31/4 33/2 33/5 33/22 36/20 86/18
hard [1] 120/4
hardship [1] 15/15
harm [1] 52/9
has [43] 5/16 8/7 14/24 15/5 15/9 15/12 16/7 16/10 16/16 17/18 19/5 21/2 21/5 23/7 23/11 23/16 24/13 25/9 29/3 30/13 30/16 30/25 31/5 32/6 32/7 38/4 39/9 40/19 40/24 41/2 41/13 42/7 50/10 52/6 65/21 65/25 66/5 66/24 70/16 86/1 89/4 97/10 102/6
hasn't [1] 7/12
have [182]
haven't [4] 11/17 28/8 35/23 119/24
having [5] 5/9 6/17 13/25 27/14 33/17 88/6
he [75] 5/12 5/14 6/12 13/14 13/15 13/16 13/19 13/21 13/22 14/11 14/12 15/9 15/10 16/9 16/10 16/10 16/12 16/14 16/16 19/22 20/15 21/5 36/5 36/16 37/17 37/17 37/18 38/10 39/3 40/20 41/5 41/10 44/25 45/24 46/12 47/1 47/16 49/11 50/11 50/12 50/13 50/14 52/8 53/6 53/11 53/12 53/14 55/13 86/1 86/1 88/19 94/9 94/12 94/13 102/2 104/25 105/1 105/19 107/4 107/5 107/5 107/5 107/12 108/23 109/25 111/8 114/17 118/9 118/14 118/18 118/25 119/7 121/1 124/2 124/19
he's [4] 14/10 35/10 51/3 52/8
header [2] 68/24 72/3
headline [1] 85/14
hear [8] 17/24 22/13 33/2 35/14 41/16 86/11 86/18 118/7
heard [11] 18/10 18/17 18/18 18/20 20/5 23/12 23/16 23/19 24/25 38/13 62/17
hearing [8] 4/16 22/3 27/12 28/10 29/11 29/13 29/19 30/10
hearings [1] 34/3
hearsay [1] 42/12
heart [1] 19/24
held [3] 30/10 63/2 126/10
help [1] 66/2
her [39] 7/3 7/4 7/13 10/24 10/25 12/17 12/17 13/8 13/9 15/12 19/20 20/12 21/6 22/16 22/23 24/15 24/23 25/21 35/10 35/13 38/25 39/1 39/5 39/5 40/7 40/11 40/12 40/13 40/13 41/3 41/5 41/7 41/9 42/3 50/17 52/13 52/19 81/16 85/17

**H**

**here [21]** 5/9 6/24 10/6 10/11 10/11 11/24
13/19 17/9 17/13 32/7 48/21 63/9 63/15 79/14
79/20 85/6 112/18 112/18 112/21 123/17
125/15
**here's [1]** 8/11
**hereby [1]** 126/7
**Hernandez [6]** 4/10 41/23 43/19 66/11 68/25
72/14
**herself [1]** 24/20
**highly [3]** 19/23 19/24 40/20
**Hillary [2]** 91/16 91/17
**him [31]** 5/11 5/13 5/20 5/25 15/6 16/9 16/11
16/12 38/16 39/5 39/12 41/5 41/11 42/3 50/3
51/11 53/13 82/11 88/4 103/21 104/1 104/1
106/9 114/6 114/10 114/15 118/13 120/20
121/3 122/20 124/19
**Hispanic [1]** 80/10
**hold [1]** 60/15
**Honor [141]**
**Honor's [3]** 30/7 34/17 36/3
**HONORABLE [1]** 1/8
**host [1]** 42/24
**hour [1]** 64/10 92/17
**hourly [5]** 92/17 92/22 95/21 95/25 96/3
**hours [4]** 14/7 32/23 90/2 92/21
**how [34]** 7/25 8/15 19/16 20/2 24/6 38/2
57/16 59/5 60/16 61/11 61/19 63/20 64/15
64/16 67/15 73/15 76/5 78/17 79/22 80/17
81/15 81/19 81/20 88/9 89/25 90/11 93/10
99/2 99/16 101/10 101/13 103/4 103/22
111/20
**hunch [2]** 20/4 20/8
**hung [3]** 48/10 48/24 116/25

**I**

**I'd [3]** 18/20 18/21 118/23
**I'll [4]** 22/15 33/5 35/11 74/13
**I'm [55]** 5/16 8/6 10/23 11/15 12/12 12/18
14/17 14/20 16/5 17/4 17/19 18/8 18/11 18/23
21/13 22/1 22/14 26/24 27/4 29/13 31/4 31/4
31/4 31/12 33/8 33/22 34/17 35/16 37/14 38/9
39/1 39/21 40/10 40/11 40/12 40/13 40/14
42/18 48/21 51/8 52/2 55/5 57/15 68/24 71/16
72/11 72/23 79/11 86/5 88/19 99/17 99/19
106/17 120/7 124/1
**I've [1]** 5/4
**I-N-D-E-X [1]** 3/2
**Ibrahim [38]** 45/14 45/17 45/21 45/25 48/10
54/14 104/20 104/24 105/4 105/9 105/13
105/18 105/24 106/3 106/8 106/23 107/10
108/19 109/19 113/2 113/17 113/20 113/24
114/18 114/25 116/25 117/8 117/20 118/4
118/7 118/22 119/3 120/15 121/17 121/25
123/10 123/25 124/2
**Ibrahim's [3]** 122/22 122/23 123/1
**idea [9]** 20/1 37/19 38/6 38/10 38/11 40/7
55/13 101/10 108/25
**Ideally [1]** 75/13
**identical [2]** 120/14 123/25
**identified [1]** 60/5
**identifies [2]** 62/1 62/4
**identify [7]** 60/20 60/23 61/16 61/25 62/2
63/25 65/6
**identifying [2]** 61/12 61/13
**ignore [1]** 15/10
**ignores [1]** 36/14
**IMAD [2]** 26/23 27/3
**image [9]** 60/21 61/13 61/21 61/22 64/7 64/17
68/1 68/6 69/22
**images [10]** 59/12 59/19 59/23 60/4 60/10
60/12 61/2 63/19 64/2 68/5
**immediate [1]** 36/22
**impeachment [1]** 21/5

**impermissible [1]** 34/9
**implement [1]** 85/21
**import [1]** 60/4
**important [4]** 10/20 15/14 51/7 68/6
**importantly [1]** 32/14
**impossibility [1]** 11/4 24/9
**impossible [1]** 10/22
**improper [4]** 4/23 18/13 18/24 19/5
**improve [1]** 57/25
**inclined [1]** 12/23
**include [2]** 29/1 37/10
**included [3]** 12/10 63/19 124/18
**including [6]** 16/13 19/8 20/9 31/1 42/24
48/24 59/8 68/24 84/6 106/2 119/18
**inconvenience [2]** 12/15 12/18
**inconvenienced [1]** 11/7
**inconveniencing [1]** 10/7
**inconvenient [1]** 11/8
**incorrect [2]** 20/15 50/8 74/16
**indeed [1]** 15/5
**independent [3]** 81/24 82/12 82/18
**indicated [4]** 26/10 40/20 86/4 119/23
**indicates [1]** 5/23
**indicating [2]** 14/22 85/13
**individual [2]** 81/23 91/6
**individuals [2]** 10/21 105/22
**info [1]** 51/25
**inform [2]** 21/25 39/17
**information [18]** 4/17 5/2 5/12 6/16 6/19
15/12 16/15 19/17 19/19 26/13 52/5 57/20
58/13 58/14 65/22 106/23 120/25 121/3
**informed [7]** 9/23 17/7 34/3 34/5 37/7 112/9
112/11
**initial [4]** 98/25 100/2 105/14 120/21
**initially [5]** 6/12 85/24 86/4
**injury [3]** 79/8 82/2 82/8
**input [5]** 90/24 91/6 91/11 95/20 96/18
**inputted [1]** 91/24
**inputting [1]** 91/19
**inquire [1]** 31/20
**inquired [2]** 28/5 28/9
**inquiries [1]** 17/22
**inquiring [1]** 36/10
**inquiry [2]** 24/11 28/13
**insisted [1]** 22/23
**instance [2]** 19/21 68/8
**instances [2]** 59/16 83/24
**instead [1]** 10/16
**instructed [3]** 24/13 24/18 64/5
**instructing [1]** 24/16
**instruction [1]** 23/2
**intellectual [3]** 99/12 99/25 100/21
**intend [4]** 39/11 39/13 41/1 50/2
**interest [4]** 10/6 47/22 116/11 116/18
**interested [1]** 7/3
**interface [1]** 67/1 67/22
**interrupt [1]** 37/17
**interview [5]** 37/9 37/22 37/23 38/8 38/8
**introduced [7]** 39/5 41/5 41/5 41/7 42/3 50/14
53/9
**introduction [1]** 42/1
**investigated [1]** 42/2
**investigation [5]** 38/14 41/6 50/13 53/4 60/8
**investigations [1]** 76/16
**investigative [1]** 57/15
**investigators [1]** 20/10
**invoked [1]** 26/5
**involved [6]** 82/6 82/15 82/23 82/25 82/25
88/9
**involvement [11]** 19/8 19/12 20/9 81/2 81/7
81/10 84/7 84/8 87/14 87/18 100/5
**involving [8]** 79/2 79/9 79/13 79/19 80/23
85/3 103/16 113/2
**iPhone [1]** 66/21
**irrelevant [1]** 51/14
**is [236]**
**isn't [11]** 23/13 49/18 64/5 64/8 68/1 70/19
74/9 77/12 90/8 96/25 124/20
**issue [21]** 5/9 5/15 6/11 15/14 17/3 19/2 19/4

21/11 29/14 30/1 30/10 31/5 33/25 34/1 37/4
37/7 37/17 37/19 40/6 64/1
**issued [3]** 13/16 31/21 33/12
**issues [14]** 4/21 6/17 18/14 19/15 20/11
20/11 21/13 29/11 42/24 51/10 85/9 86/19
125/11 125/17
**it [248]**
**it's [50]** 6/4 6/6 6/19 9/17 10/14 11/8 12/20
12/21 13/6 14/13 14/21 18/14 19/24 24/9
25/24 26/2 26/15 28/7 28/20 30/2 30/11 31/1
32/22 34/10 35/4 36/6 36/9 36/13 36/24 37/4
37/12 38/7 38/8 39/7 39/8 40/8 41/12 41/18
50/12 51/14 51/15 67/7 68/14 68/20 75/5
76/2 93/6 103/1 123/7 125/18
**Item [2]** 4/3 43/11
**its [1]** 8/8
**itself [5]** 18/13 23/19 29/25 86/15 94/20

**J**

**J-e-n-n-e-s-s [1]** 44/7
**J-o-h-n [1]** 98/5
**J-o-s-e-p-h [1]** 56/25
**Jacqueline [1]** 4/13
**JAMES [2]** 1/8 35/21
**Jason [1]** 88/1
**Jencks [2]** 26/20 30/24
**JENNESS [43]** 3/10 38/23 41/5 41/21 41/25
42/7 44/1 44/2 44/6 44/12 46/2 46/9 46/11
46/25 47/10 47/15 47/21 48/9 48/10 48/18
48/24 49/8 49/16 50/14 50/16 51/8 51/12
51/19 55/14 55/19 56/7 114/20 114/22 114/23
114/25 115/12 115/23 116/3 116/10 116/18
116/24 116/25 117/8
**Jenness's [1]** 51/25
**Jim [1]** 85/3
**job [1]** 58/3
**Joe [1]** 103/1
**JOHN [13]** 1/11 2/14 3/12 4/4 27/11 43/12
54/15 65/21 65/25 66/5 98/1 98/2 98/5
**Johnson [4]** 81/9 94/20 94/23 96/12
**Johnson's [6]** 78/21 94/18 94/25 95/3 96/3
96/20
**joint [1]** 27/17
**jointly [1]** 85/13
**JOSEPH [5]** 3/11 56/20 56/21 56/24 56/25
**Journal [1]** 105/20
**judge [5]** 1/8 101/24 102/1 102/2 102/3
**Judicial [1]** 126/12
**Judy [5]** 54/25 55/12 56/1 56/6 97/5
**July [1]** 112/7
**jumps [1]** 36/18
**June [5]** 42/16 44/22 52/25 53/7 54/8
**June 22nd [1]** 42/16
**June 23rd [1]** 44/22
**jurisdictions [2]** 98/16 98/20
**juror [2]** 85/13 86/1
**jury [53]** 4/2 10/19 11/10 11/17 12/22 13/2
13/3 14/1 15/24 16/1 16/3 19/13 20/22 22/22
22/24 22/25 23/6 23/19 23/19 23/20 24/2 24/6
24/10 24/12 39/25 40/18 43/7 43/10 43/22
44/24 44/25 49/1 49/9 55/23 56/5 57/13 61/7
66/12 66/23 67/14 72/15 75/8 78/8 85/11
86/24 89/25 97/10 104/4 107/2 108/24 112/25
114/5 118/9
**just [35]** 4/21 6/4 8/22 9/15 9/20 11/10 11/17
11/20 12/11 13/16 16/5 18/11 23/14 25/9 29/7
30/17 32/6 36/2 36/18 37/6 39/20 49/23 52/4
62/2 65/1 68/7 70/6 72/12 77/9 79/6 86/3
88/25 115/2 115/5 123/24
**Justice [16]** 57/10 57/17 57/21 59/12 67/24
70/3 70/16 73/21 74/7 74/25 75/23 76/3 76/18
77/5 77/8 77/11
**Justice's [5]** 70/12 71/3 71/9 73/8 74/22
**justifies [1]** 5/9
**justify [2]** 14/2 92/13
**JVS [3]** 1/11 4/3 43/11

**K**

**Karlous [2]** 43/15 65/17

## K

**keep [1]** 14/6 89/23 90/2 91/5 106/23 107/14 107/17
**keyword [2]** 60/6 60/6
**kind [3]** 5/6 21/8 68/20
**kit [1]** 60/19
**knew [14]** 10/23 10/24 46/17 47/23 50/13 109/8 110/11 110/13 115/16 116/12 116/19 119/11 124/25 125/5
**know [45]** 7/20 8/12 12/5 19/16 20/2 21/8 21/9 22/17 22/18 23/14 24/15 29/3 32/18 32/19 36/9 36/15 44/16 55/6 55/11 63/9 63/11 63/15 71/16 73/14 73/15 73/19 74/5 74/21 74/22 80/19 87/16 91/20 96/11 96/18 96/19 97/1 97/2 97/3 97/12 103/4 107/4 107/5 118/9 118/13 125/3
**knowing [1]** 118/13
**knowledge [16]** 42/7 63/4 63/24 70/4 70/23 73/17 76/19 77/7 101/13 107/3 114/4 114/14 122/18 123/15 123/18 125/11
**knowledgeable [1]** 97/4
**known [2]** 18/4 65/6
**knows [3]** 39/4 40/14 41/4

## L

**lab [13]** 60/3 60/12 60/25 61/11 61/16 68/16 75/9 75/25 75/25 76/3 76/5 76/11 76/14
**laboratory [1]** 73/12
**lack [1]** 37/2
**Lacks [2]** 55/2 95/10
**ladies [3]** 43/21 85/6 125/15
**laid [2]** 15/2 38/2
**large [3]** 21/1 80/20 83/19
**last [17]** 14/12 12/16 25/23 29/4 34/13 44/4 44/6 44/20 48/21 50/15 51/11 56/23 65/16 77/24 98/4 98/6 108/9
**lasted [1]** 102/7
**late [2]** 29/4 35/4
**later [5]** 16/19 16/20 36/22 112/17 118/20
**law [21]** 2/15 11/14 13/12 47/1 47/11 60/2 66/2 66/7 83/7 84/7 84/14 84/18 87/22 93/16 97/2 99/2 103/19 103/20 104/17 104/17 115/24
**lawsuit [1]** 109/25
**lawyer [2]** 51/5 52/6
**lawyers [1]** 102/21
**lead [2]** 55/23 87/23
**leading [19]** 38/10 59/14 73/22 74/10 74/11 79/15 80/7 83/11 83/17 84/2 92/2 92/3 100/10 100/24 108/5 110/2 110/7 116/5 124/21
**learn [1]** 110/5
**learned [2]** 109/21 112/14
**learning [1]** 31/3
**least [5]** 39/16 73/5 78/20 89/10 93/3
**leave [1]** 39/25
**leaving [1]** 84/12
**led [2]** 37/24 105/13
**left [3]** 30/4 84/11 99/3
**legal [1]** 98/21
**length [1]** 19/7
**lengths [1]** 22/25
**less [3]** 5/1 64/13 64/23
**let [4]** 5/5 13/1 111/10 115/5
**let's [8]** 16/2 16/25 30/20 41/16 69/20 70/9 77/19 104/24
**letter [32]** 35/15 35/21 118/18 118/21 118/25 119/2 119/7 119/11 119/22 119/23 119/24 120/8 120/10 120/14 120/15 120/18 121/1 122/1 122/18 123/9 123/12 123/17 123/20 123/23 124/1 124/3 124/4 124/15 124/25 125/2 125/5 125/15
**letterhead [1]** 119/18
**letters [3]** 123/21 123/23 124/9
**letting [1]** 52/2
**level [1]** 20/24
**license [1]** 76/24
**licensed [1]** 44/14
**licenses [1]** 76/14
**lied [2]** 10/20 10/24

**light [1]** 20/2
**like [38]** 4/13 10/9 10/24 16/18 20/16 22/2 24/25 27/6 27/18 28/14 28/17 29/4 29/13 34/14 34/20 34/25 35/14 46/6 48/25 67/1 67/23 68/20 71/6 71/8 72/4 72/6 73/9 73/11 75/24 76/24 86/19 92/18 98/25 112/25 115/9 120/1 120/4 120/8
**likelihood [1]** 86/8
**likely [1]** 61/10
**limine [1]** 9/19
**limited [1]** 21/1 98/18 100/5 101/9
**limits [1]** 51/14
**line [2]** 40/3 120/12
**line 4 [1]** 120/12
**lists [1]** 60/7
**little [3]** 65/2 88/25 110/22
**live [6]** 5/24 9/1 9/4 11/9 12/16 14/8
**lives [1]** 21/7
**LLP [1]** 98/14
**load [1]** 64/16
**lobby [1]** 105/19
**locally [1]** 10/11
**locate [1]** 63/1
**log [3]** 66/20 66/20 90/2
**long [10]** 49/18 50/25 54/1 57/16 64/16 65/3 65/4 70/19 99/2 99/16
**longer [7]** 45/22 64/22 112/9 113/25 114/5 114/13 114/15
**look [23]** 29/4 30/16 34/7 35/24 45/8 49/5 62/12 62/18 62/22 63/5 64/5 65/18 65/22 71/6 71/8 71/24 72/4 73/9 73/11 75/24 113/11 119/24 120/5
**looked [7]** 7/22 28/8 63/12 63/21 63/23 72/2 77/9
**looking [1]** 123/24
**looks [3]** 72/6 75/5 120/8
**Los [4]** 2/8 10/11 10/12 52/18
**lot [4]** 9/20 64/13 99/24 100/1
**lower [1]** 72/15
**lunch [4]** 17/3 31/1 85/19 125/14
**lying [1]** 118/14

## M

**made [27]** 7/2 16/13 17/14 18/6 20/3 22/12 22/21 24/11 27/16 30/25 31/21 32/15 32/19 32/21 34/10 37/8 75/9 105/15 109/11 109/22 110/13 118/5 119/4 121/13 124/10 124/16 124/17
**magistrate [2]** 101/24 102/2
**mail [20]** 7/5 8/14 10/22 12/20 17/19 20/17 26/12 26/13 35/9 35/11 35/18 41/23 53/12 53/20 54/3 54/5 103/3 103/11 103/13 119/22
**mailed [1]** 53/16
**mailing [1]** 17/10
**mails [11]** 20/16 25/5 30/19 31/3 41/23 41/24 42/4 42/15 42/16 42/19 62/9
**main [1]** 42/12
**major [2]** 2/6 10/11
**make [21]** 12/9 13/14 14/11 16/18 22/15 25/6 29/12 31/18 34/8 38/16 39/20 50/21 66/5 68/16 86/6 98/21 106/22 117/21 118/9 120/20 124/18
**makes [4]** 11/18 23/17 24/3 67/22
**making [2]** 14/7 24/1
**mal [3]** 81/12 82/7 95/3
**malpractice [1]** 79/3
**man [3]** 65/21 65/25 66/5
**management [1]** 58/13
**many [22]** 5/11 14/7 24/1 36/18 38/2 38/3 38/3 38/3 38/3 61/4 61/5 76/25 78/17 79/22 80/17 81/15 81/19 81/20 88/9 93/10 103/4 111/20
**March [13]** 45/3 45/20 78/14 84/12 104/8 104/17 105/13 107/22 108/2 113/6 113/23 114/6 114/13
**March 15 [1]** 113/6
**March 15th [1]** 45/3
**March 2018 [3]** 105/13 107/22 108/2
**March 2019 [1]** 78/14

**Marching [2]** 84/21 85/2
**Marino [4]** 1/9 7/8 21/19 21/19
**MARKED [2]** 3/7 3/13
**masse [1]** 11/17
**Master's [1]** 58/9
**material [1]** 30/24
**materials [2]** 28/14 32/2
**matter [38]** 12/12 12/13 12/14 19/12 32/23 39/11 39/12 39/24 40/1 40/2 40/2 40/19 41/12 47/23 50/6 51/13 51/14 52/7 77/3 78/9 79/3 87/18 87/23 99/10 99/17 99/25 100/4 100/7 101/2 101/11 101/14 102/20 103/11 105/4 105/23 116/12 116/20 126/10
**matters [27]** 4/12 6/18 40/24 41/2 52/23 79/3 87/8 87/12 87/15 87/24 88/3 88/7 88/9 88/15 89/5 89/7 89/9 89/9 89/23 90/1 90/4 90/7 90/10 90/15 99/8 99/10 99/16
**may [34]** 6/1 6/2 6/3 6/3 6/5 6/7 6/7 6/9 6/13 6/13 7/17 12/16 14/1 14/18 15/8 15/8 16/13 38/20 41/20 56/13 56/16 65/9 66/10 68/12 74/17 76/22 77/17 80/22 85/12 93/13 97/20 97/23 107/4 107/5
**May 1 [1]** 15/8
**May 1st [4]** 6/1 6/3 6/9 6/13
**May 2 [2]** 7/17 15/8
**May 2nd [2]** 6/2 6/3 6/13
**May 30th [1]** 6/5
**May 4th [1]** 16/13
**maybe [6]** 6/4 62/9 64/13 71/12 73/4 99/19
**me [46]** 7/20 10/10 10/10 10/10 10/12 11/4 13/1 14/22 14/25 15/6 17/7 17/22 25/3 26/2 26/11 29/20 30/9 32/24 33/3 38/9 39/24 39/25 40/18 50/19 52/11 53/11 60/5 64/11 66/2 75/18 80/3 81/25 82/12 82/18 82/21 84/9 88/6 89/8 89/14 101/16 105/23 107/12 111/10 112/2 112/21 115/5
**mean [6]** 7/19 12/12 37/16 41/11 62/7 68/15
**meaning [7]** 32/23 63/6 76/14 92/17 93/20 100/7 102/24
**means [1]** 7/22
**med [3]** 81/12 82/7 95/3
**media [3]** 22/24 24/5 24/21
**mediation [7]** 101/18 101/19 101/20 102/7 102/18 102/19 103/14
**mediator [2]** 101/23 101/24
**medical [1]** 79/3
**meet [3]** 81/9 93/10 105/17
**meetings [1]** 31/6 31/7
**member [3]** 31/23 31/24 74/7
**members [1]** 60/8
**mention [2]** 36/17 38/6
**mentioned [9]** 22/16 37/8 37/20 38/12 56/2 63/4 81/4 81/12 82/2
**message [3]** 51/24 66/20 66/20
**messages [9]** 52/4 67/23 67/25 73/2 74/8 75/4 75/18 77/8 77/10
**met [9]** 15/4 45/2 51/11 93/3 104/20 110/15 111/20 112/23 113/5
**metadata [1]** 68/12
**methods [1]** 7/22
**mic [1]** 110/23
**MICHAEL [7]** 1/11 2/14 4/4 4/8 41/25 43/12 43/17
**Michelle [1]** 95/6
**microphone [1]** 44/5
**Microsoft [2]** 62/8 62/9
**mid [2]** 20/24 85/6
**mid-level [1]** 20/24
**mid-morning [1]** 85/6
**middle [2]** 29/18 30/2
**might [6]** 6/13 36/16 63/25 64/24 107/6 122/17
**million [6]** 105/15 109/8 117/21 118/5 119/5 120/21
**mind [2]** 49/9 81/22
**minimum [4]** 8/19 24/11 34/2 124/4
**minor [1]** 11/1
**minute [3]** 18/11 42/1 49/23
**minutes [7]** 12/1 28/7 28/8 31/3 64/14 64/17

**M**

minutes... [1] 64/19
Miramar [1] 2/16
mislabeled [1] 6/4
Misstates [3] 54/16 95/22 102/9
mistaken [2] 107/6 125/8
mistrial [5] 22/9 26/18 27/11 30/1 31/11
mock [1] 19/9
moment [2] 79/12 122/6
momentarily [1] 119/8
money [8] 46/18 46/22 47/2 47/17 76/20 77/11 115/17 115/21
monies [1] 104/11
months [2] 65/12 65/16
more [10] 5/18 20/24 32/14 33/18 59/10 59/10 66/15 97/4 98/18 99/8
Morgan [2] 35/8 35/11
morning [28] 4/5 4/7 4/8 4/11 17/17 18/4 22/2 26/1 35/4 43/13 43/16 43/17 43/20 43/21 43/22 44/12 44/13 49/16 49/17 57/6 57/7 78/6 78/7 85/6 94/2 94/3 98/11 98/12
most [9] 20/5 61/10 66/1 76/22 80/5 85/18 89/7 89/9 90/4
mother [4] 4/25
motion [17] 4/13 9/19 10/16 13/14 16/25 22/13 25/13 26/5 26/8 26/18 34/13 36/5 36/25 37/4 37/5 38/2 86/10
motions [1] 27/17
move [11] 8/16 8/25 9/10 9/25 15/20 22/8 31/11 69/24 103/6 108/9 110/19
moved [3] 9/3 9/7 22/7
moving [7] 8/8 8/10 17/18 17/20 20/21 22/10 65/1
Mr [14] 5/17 6/12 14/1 18/1 21/4 22/13 43/23 52/7 88/18 92/5 94/25 95/3 98/8 108/13
Mr. [265]
Mr. Amenta's [2] 26/19 27/2
Mr. Arden [37] 45/14 45/16 45/18 45/21 45/24 48/10 98/11 103/9 103/23 105/24 106/7 106/21 107/17 108/2 108/19 109/19 110/5 111/19 113/2 113/17 113/19 113/21 113/24 114/17 114/22 115/2 116/2 116/25 117/8 117/19 118/3 118/21 119/2 120/14 121/17 122/6 124/25
Mr. Arden's [2] 106/4 107/10
Mr. Avenatti [26] 5/3 5/10 6/22 13/6 14/5 15/5 16/15 21/15 22/7 25/11 26/10 27/16 34/12 40/24 44/9 50/6 50/22 53/12 55/16 56/18 57/3 78/3 85/15 85/25 86/25 90/13
Mr. Avenatti's [1] 5/5 14/8 26/8
Mr. Barela [77] 40/7 44/18 44/23 46/12 47/1 47/16 48/3 48/5 49/9 50/1 50/12 50/18 50/25 51/9 51/13 51/18 51/24 52/1 53/1 53/3 53/10 53/11 53/14 53/16 53/21 54/14 54/17 55/1 55/11 55/13 56/2 99/21 101/17 101/21 102/6 103/2 103/16 103/19 103/24 106/21 106/24 107/1 107/4 107/7 107/18 108/3 108/8 108/13 108/15 108/23 109/1 109/3 109/22 109/24 110/14 110/25 111/11 112/8 114/13 116/3 116/17 116/19 117/14 117/16 118/4 118/6 118/7 118/18 120/18 120/19 120/23 121/12 124/10 125/1 125/3 125/10
Mr. Barela's [9] 54/5 56/5 99/16 100/8 101/6 101/11 103/11 105/4 114/4
Mr. Bledsoe [11] 118/19 118/21 119/2 122/1 122/19 123/7 124/13 124/19 125/1 125/3 125/6
Mr. Bledsoe's [2] 123/9 125/4
Mr. Colorado [6] 78/6 87/6 89/3 90/20 94/2 96/11
Mr. Culig [1] 103/10
Mr. Drum [8] 19/7 19/14 19/21 20/6 20/7 20/25 26/19 30/14
Mr. Drum's [1] 20/3
Mr. Frank [1] 87/25
Mr. Greg [1] 44/20
Mr. Ibrahim [37] 45/14 45/17 45/21 45/25 48/10 104/20 104/24 105/4 105/9 105/13 105/18 105/24 106/3 106/8 106/23 107/10

108/19 109/19 112/3 113/17 113/20 113/24 114/18 114/20 116/20 116/24 117/20 117/22 118/22 119/3 120/15 121/17 122/10 123/10 123/25 124/2
Mr. Ibrahim's [3] 122/22 122/23 123/1
Mr. Jason [1] 88/1
Mr. Johnson [1] 81/9
Mr. Johnson's [2] 78/21 96/20
Mr. Marchino [1] 85/2
Mr. Rose [1] 11/8
Mr. Sagel [10] 35/19 37/7 38/4 38/7 38/9 38/13 65/16 104/9 111/3 111/14
Mr. Sheikh [1] 103/10
Mr. Steward [5] 4/9 17/19 19/3 35/19 43/18
Mr. Varani [5] 57/6 66/14 73/7 74/5 74/15
Mr. Wyman [11] 28/5 28/9 35/19 40/19 49/13 55/19 56/1 56/10 65/16 93/23 97/18
Ms [26] 4/10 4/14 10/20 11/4 12/21 13/5 14/15 17/9 17/13 17/16 20/4 21/19 37/7 38/6 38/15 41/21 41/23 45/13 51/24 55/14 55/19 55/23 56/13 57/6 63/13 97/10 113/16
Ms. [55] 4/10 4/23 5/10 7/2 10/7 11/7 12/15 12/24 13/7 14/22 16/24 18/15 18/21 20/8 20/15 20/21 21/12 22/12 22/17 22/20 24/14 24/20 25/14 25/20 26/3 31/25 35/11 35/20 36/15 43/18 43/19 44/12 46/11 46/25 47/15 47/21 48/9 48/10 48/18 48/24 49/8 49/16 50/14 50/16 51/8 51/12 51/19 68/25 75/18 116/10 116/10 116/24 116/25
Ms. Bredahl [2] 31/25 35/20
Ms. Carter [7] 18/15 18/25 19/8 20/8 20/15 20/21 21/12
Ms. Cummings-Cefali [2] 4/10 43/18
Ms. Cuniff [1] 22/12
Ms. Cuniff's [3] 24/14 25/14 26/3
Ms. Evan [1] 48/24
Ms. Gardner [4] 22/17 22/20 24/20 25/20
Ms. Hernandez [2] 43/19 68/25
Ms. Jenness [18] 44/12 46/11 46/25 47/15 47/21 48/9 48/10 48/18 49/8 49/16 50/14 50/16 51/8 51/12 51/19 116/10 116/24 116/25
Ms. Morgan [1] 35/11
Ms. Ouellette [1] 95/18
Ms. Phan [1] 75/18
Ms. Regnier's [1] 36/15
Ms. Rose [10] 4/23 5/10 7/2 10/7 11/7 12/15 12/24 13/7 14/22 16/24
Ms. Wolett [1] 91/19
much [9] 4/17 36/12 59/9 68/9 68/11 84/17 101/10 101/13 120/1
multiple [1] 61/9
my [68] 7/9 7/11 9/11 10/19 11/24 12/10 12/18 12/25 13/3 17/18 17/20 20/7 20/12 21/8 22/2 22/19 26/18 28/21 29/1 29/17 29/22 29/24 30/11 31/9 32/13 32/14 32/20 34/5 38/22 45/9 46/18 48/21 49/8 50/7 51/16 54/19 57/18 58/3 59/16 60/3 63/4 66/6 67/7 73/19 75/18 81/2 81/7 81/10 85/25 86/10 87/6 90/2 91/13 92/11 98/5 98/5 100/6 103/9 104/17 112/19 113/12 114/12 115/2 115/17 120/1 122/13 123/16
myself [1] 31/12

**N**

name [25] 36/17 37/20 38/12 44/4 44/6 44/16 51/25 56/23 62/2 62/3 62/4 65/21 65/25 66/5 77/24 84/20 91/16 91/20 96/19 97/12 98/4 98/5 98/6 102/25 122/13
named [1] 63/23
namely [2] 16/8 69/3
names [2] 54/22 79/4
narrow [1] 86/13
native [1] 80/12
nature [3] 32/17 51/20 62/10
necessarily [1] 99/22
necessary [4] 7/6 16/11 22/3 25/1
need [11] 6/25 8/19 11/3 12/19 27/15 63/1 66/1 66/7 70/15 86/15 90/3
needed [3] 13/14 13/21 76/23

needs [1] 4/20 5/8
networks [1] 57/22
never [14] 36/13 37/7 37/24 38/13 40/2 40/3 40/15 42/7 63/12 110/13 118/6 121/12 122/20 124/14
New [9] 5/20 5/21 5/25 7/17 7/23 8/3 10/14 13/22 14/9
newspaper [1] 85/14
next [5] 97/24 120/2 122/1 124/8 125/9
NFL [2] 79/2 81/4
NICOLA [1] 2/3
night [2] 29/4 34/13
Ninth [2] 15/3 23/4
no [101] 4/20 7/4 9/3 10/6 12/11 14/19 14/22 14/23 14/24 15/12 17/7 17/11 19/2 20/17 21/6 21/10 23/7 23/7 23/21 23/21 24/3 25/7 25/7 25/12 25/24 26/15 27/15 28/1 28/11 29/11 30/2 30/6 31/7 34/10 36/17 37/16 37/19 38/11 45/22 46/13 48/7 50/4 50/4 50/23 51/1 52/10 55/13 55/14 55/25 56/8 62/14 62/18 62/24 63/4 63/8 63/12 65/4 65/20 65/24 66/4 66/6 69/23 69/24 70/5 70/13 70/24 71/6 71/11 73/3 73/17 75/7 75/24 85/13 90/3 95/3 96/8 97/19 101/15 102/19 103/17 106/25 107/18 107/19 108/3 108/4 108/7 108/14 108/25 109/3 109/4 109/23 112/9 113/25 114/5 114/12 114/15 114/15 115/1 116/3 116/4 116/7 116/22 117/10 117/13 117/17 118/8 121/15 123/4 124/10 125/18
non [1] 90/16
non-contingency [1] 90/16
none [7] 3/5 3/8 3/14 10/8 30/3 94/17 97/16
nonparty [1] 5/7
nonresponsive [3] 69/25 108/10 110/20
North [1] 2/7
not [185]
notable [1] 13/6
note [8] 12/11 31/9 32/13 32/14 33/24 37/6 51/23 85/13
notebook [2] 66/10 66/14
noted [1] 52/3
notes [5] 37/9 37/22 37/23 38/7 38/8 38/9 77/15 93/22 94/22 94/25 95/8 97/17
nothing [11] 20/24 49/12 56/9 56/11 77/14 77/15 93/22 94/22 94/25 95/8 97/17
notice [11] 4/16 5/2 15/16 17/17 17/15 21/8 28/11 29/20 30/3 31/16 33/12
noticed [4] 17/4 17/6 17/7 28/2
November [6] 45/5 45/13 113/8 113/16 119/1 123/22
November 14th [1] 45/13
November 15th [2] 45/5 113/8
November 19 [1] 123/22
November 19th [1] 119/1
now [40] 10/16 14/10 14/14 16/18 16/25 17/4 18/18 28/10 30/14 32/24 34/7 34/23 34/25 35/15 37/6 38/4 38/16 42/5 44/23 52/25 54/10 57/8 67/14 69/5 69/20 75/25 84/11 88/14 89/4 93/2 93/11 94/4 102/6 103/18 104/8 104/16 104/24 106/15 109/13 124/12
number [25] 4/12 6/23 8/10 8/11 8/12 8/14 8/15 15/23 19/6 19/7 27/3 27/10 28/21 29/14 29/16 30/19 36/5 70/17 78/19 80/20 81/15 81/18 83/19 87/12 104/9
numbers [5] 26/23 72/11 72/13 72/20 72/25
numerous [1] 109/15

**O**

oath [7] 7/1 44/25 105/8 106/2 106/12 108/24 109/13
object [7] 8/13 13/24 29/21 33/14 33/17 33/18 51/22
objection [38] 16/18 31/10 32/13 32/14 39/17 40/17 52/3 53/23 54/16 55/2 58/11 59/14 67/17 73/22 74/10 76/6 78/24 79/15 80/7 83/11 83/17 84/22 85/4 88/11 90/12 93/5 95/10 95/22 100/10 100/24 102/9 108/5 111/8 116/5 118/10 118/15 123/22 124/21
objections [1] 88/17
obligation [1] 38/1

obligations [1] 42/20
observed [1] 106/7
obtain [1] 31/24
obviously [2] 39/7 40/10
occasion [5] 59/22 67/7 81/8 92/24 93/3
Occasionally [1] 102/22
occurred [1] 48/23
occurrence [1] 83/6
October [1] 78/13
October 2012 [1] 78/13
off [2] 34/21 51/14
offer [3] 9/9 14/24 21/3
offered [1] 10/17
office [9] 31/18 31/22 32/3 42/2 52/21 52/21
55/21 57/20 57/22
officer [3] 82/6 82/7 82/9
offices [5] 2/15 103/20 103/24 106/22 108/18
often [2] 103/22 108/18
okay [25] 6/8 6/21 16/25 21/14 21/21 22/5
23/9 23/25 25/10 28/9 31/9 35/23 35/25 41/19
43/6 46/15 65/13 66/15 66/16 67/12 71/24
86/21 115/2 120/25 122/8
old [2] 5/1 15/16
once [2] 76/23 76/24
one [37] 5/1 6/11 8/10 8/12 8/14 14/8 14/20
14/24 15/16 17/7 19/6 20/14 24/6 26/12 29/15
31/15 38/19 41/20 60/14 61/14 62/18 63/12
67/5 67/15 76/20 78/21 81/23 82/16 86/14
92/19 92/21 93/3 93/12 99/7 102/12 102/17
123/25
one-year-old [2] 5/1 15/16
ones [5] 72/2 73/20 81/22 82/24 82/24
ongoing [1] 25/15
only [4] 7/24 15/9 51/17 85/25
open [1] 39/21
opens [3] 24/4 24/4 61/21
operation [1] 83/7
opinions [2] 85/8 125/17
opportunity [14] 18/3 18/5 26/16 27/7 27/18
28/17 29/21 30/21 32/22 32/23 33/14 33/15
34/14 124/15
opposed [3] 56/7 63/6 68/7
opposing [2] 52/20 89/16
opposite [1] 55/20
opposition [2] 7/4 18/3
oppressive [1] 14/2
option [2] 61/21 62/11
oral [4] 28/3 30/5 30/6 30/7
orally [1] 36/7
order [22] 8/20 8/25 10/18 13/15 27/24 28/1
28/3 30/5 30/6 30/6 30/7 31/17 31/21 32/14
33/3 33/7 33/9 33/11 66/6 90/5 91/11 92/13
ordered [1] 28/19
original [1] 68/10
other [62] 4/24 5/11 6/11 7/23 9/15 10/7 12/8
12/25 21/5 24/21 25/9 25/16 28/20 28/23 29/3
31/5 31/7 31/15 32/9 33/11 36/12 38/19 40/1
40/19 41/20 51/14 60/8 63/8 67/21 72/25
73/19 74/7 75/23 76/12 78/23 82/14 82/20
82/21 83/2 83/20 83/20 83/24 84/6 84/9 86/12
86/12 86/18 87/8 88/15 88/20 89/5 89/14
94/20 96/12 98/15 98/20 101/22 102/17
102/18 102/19 102/21 102/24
others [1] 110/1
otherwise [3] 11/15 11/16 65/6
Ouellette [1] 95/18
our [14] 4/17 14/13 14/16 17/20 20/21 24/22
25/2 37/25 42/7 42/20 52/20 82/16 86/13
91/13
out [13] 7/25 11/12 13/10 21/9 29/21 30/4
30/4 36/14 38/2 50/21 63/18 64/7 119/12
outlined [1] 7/9 10/19
outside [9] 22/20 22/22 23/6 24/10 24/12
30/10 51/16 51/21 67/1
over [5] 25/23 26/17 59/11 62/25 83/15
overall [1] 86/16
overbroad [1] 18/13
Overruled [29] 47/4 53/24 54/18 55/4 58/12

59/15 67/18 71/20 73/23 76/7 78/25 80/8
80/18 84/24 85/9 90/3 93/23 94/1 95/20
96/15 97/15 100/12 100/25 102/10 108/6
110/8 114/8 116/6 123/3
owed [1] 104/12
own [5] 5/5 11/22 13/16 38/8 80/24

P
page [13] 26/1 26/15 26/15 66/17 71/13 72/11
72/13 72/17 72/20 72/25 75/17 120/12 126/11
Page 1 [1] 72/17
page 18 [2] 26/15 120/12
page 25 [1] 26/1
pages [1] 27/14
paid [2] 13/12 109/8
Pandora's [1] 24/4
paper [2] 18/19 30/22
papers [18] 4/17 7/9 8/8 8/10 10/19 12/11
14/13 14/17 17/18 17/20 18/16 20/21 21/23
22/11 22/15 24/22 25/2 31/11
paragraph [2] 45/8 113/11
paralegals [2] 6/24 7/6
paraphrasing [1] 39/22
part [11] 9/18 9/21 19/1 32/11 32/25 33/19
36/24 54/11 76/22 86/16 108/9
parte [1] 13/14
participate [3] 46/11 114/24 115/4
particular [2] 13/23 86/15
parties [4] 32/22 35/9 35/12 89/17
parties' [1] 35/14
party [1] 83/4
past [1] 44/18
patent [1] 100/22
pay [1] 32/5
payment [9] 105/14 106/10 117/21 118/5
119/5 120/21 121/13 124/11 125/11
pending [1] 99/19
per [1] 15/12
percipient [1] 20/22
perform [1] 98/21
performed [1] 19/9
perhaps [4] 10/2 30/7 59/3 63/23
period [2] 78/12 78/18 99/7
permission [1] 14/11
permit [1] 32/25
permitted [4] 12/3 12/4 20/12 98/21
person [4] 93/11 102/18 102/19 103/14
personal [3] 79/8 82/2 90/3
personally [1] 14/25
Phan [2] 75/18 95/6
phone [33] 16/8 39/2 40/15 45/4 46/1 46/11
46/25 54/10 54/11 55/5 66/24 66/25 67/11
67/2 67/19 67/23 69/17 70/6 73/19 74/5 74/23
75/20 93/12 93/13 103/3 103/4 103/5 103/10
111/22 113/7 114/19 116/17
phones [12] 59/8 59/9 59/9 59/13 67/10 68/20
73/14 73/17 74/8 77/4 77/4 77/9
picture [1] 70/6
piece [2] 28/20 60/18
pieces [3] 28/25 29/8 29/8
place [3] 7/17 29/14 55/7
placed [3] 19/11 72/20 89/3
plainly [2] 5/11 14/16
Plaintiff [2] 1/10 2/2
PLAINTIFF'S [2] 3/4 3/6
plaintiffs [1] 81/19
plane [2] 13/10 22/2
planning [1] 42/18
plans [1] 40/20
pleasant [1] 7/4
please [39] 18/17 23/15 38/21 43/24 44/3
45/8 56/22 61/7 66/9 66/12 66/22 68/23 68/24
69/5 69/10 70/23 72/15 73/5 73/25 74/2
75/15 77/23 85/7 85/10 97/24 98/3 113/11
115/3 119/16 119/17 119/18 122/4 122/6
123/20 124/8 125/9 125/16 125/18
point [31] 10/21 10/11 11/14 11/24 12/14 13/8
13/19 13/23 15/5 16/6 20/14 21/4 21/5 21/23
25/6 26/22 27/6 30/2 36/14 36/17 41/10 46/17

50/19 50/22 61/21 73/19 88/22 99/3 100/20
106/21 114/6
points [4] 6/23 12/8 22/15 50/4
police [3] 82/6 82/7 82/9
portion [1] 102/11 110/19
posed [1] 86/1
position [6] 7/21 9/13 17/20 26/11 33/21
57/18
possession [1] 16/8
possible [5] 25/4 41/7 68/11 102/16
possibly [3] 19/16 20/2 50/17
post [1] 34/24
posts [3] 22/24 24/5 24/21
potential [2] 23/21 51/9
practice [2] 34/18 52/17
precise [1] 53/25
prefer [1] 15/25
prejudice [3] 23/21 23/21 51/4
prejudicial [1] 40/21
preparation [1] 20/25
prepared [4] 6/25 15/24 17/19 28/15
preparing [1] 19/13 19/14
presence [9] 15/8 22/20 22/22 22/24 23/6
24/10 24/12 29/22 30/11
present [17] 4/2 4/9 6/24 11/24 33/19 43/10
43/18 80/3 85/11 86/11 86/24 101/20 101/21
101/21 101/22 102/11 102/17
presentation [2] 5/5 11/19
presented [3] 4/22 13/25 15/6
presently [1] 84/20
preservation [1] 68/9
preserves [1] 68/10
PRESIDING [1] 1/8
press [13] 31/18 31/23 31/24 32/2 32/6 32/6
32/10 32/20 32/25 33/1 33/17 33/19 34/1
pretty [1] 36/12
previous [1] 57/18
previously [11] 34/2 39/9 39/15 44/24 57/8
72/2 74/23 78/8 98/13 105/8 106/1
primarily [1] 52/18
primary [1] 100/14
prior [1] 35/2 93/2
privilege [5] 32/10 42/8 42/12 42/13 51/10
privileged [3] 42/5 42/23 51/12
PRO [1] 2/14
probably [5] 35/4 36/22 64/12 64/13 81/16
100/20
problem [2] 8/11 50/24
proceed [3] 18/22 31/13 74/16
proceeding [5] 50/18 109/25 110/6
proceedings [4] 1/15 43/9 86/23 126/10
proceeds [3] 47/24 116/13 116/21
process [4] 4/25 14/11 32/15 61/22
processed [1] 60/5
produced [3] 37/24 42/4 42/19
production [1] 37/2
products [1] 57/25
proffered [1] 5/3
program [17] 15/8 62/23 63/3 63/5 63/6 63/10
63/22 90/20 90/25 91/7 91/12 91/20 91/21
91/24 92/6 96/19 97/11
programming [1] 5/14
proper [4] 9/17 20/17 28/20 75/10
property [2] 99/12 99/25
propose [1] 85/16
proposing [1] 85/19
prosecuting [1] 74/25
prosecution [2] 65/17 100/8
prospect [1] 53/1
prove [4] 8/5 8/8 15/4 15/5
provide [9] 6/25 26/13 27/18 28/15 28/18 32/2
55/24 66/25 86/2
provided [22] 5/13 8/9 13/23 16/7 16/15
17/11 17/18 23/15 26/7 27/13 27/20 28/14
28/19 28/24 29/2 33/14 42/22 58/23 60/5 60/7
60/8 104/4
providing [1] 13/21 32/16 41/23
public [8] 32/2 32/7 32/11 32/23 33/18
33/20 34/7

## P

published [1] 6/18
pull [1] 44/4
purchased [1] 76/15
purportedly [1] 75/18
purpose [5] 12/2 23/1 38/24 92/7 92/9
purposely [2] 24/20 109/2 109/4
purposes [5] 90/4 90/8 90/11 92/20 92/21
pursuant [2] 27/24 126/7
Pursue [1] 88/25
put [21] 5/20 7/21 10/18 11/9 12/4 12/18
12/19 13/2 14/16 18/19 26/11 28/15 30/22
34/22 35/1 35/11 36/19 72/12 92/6 95/17
109/24
puts [2] 5/25 41/10
putting [1] 34/21
puzzled [1] 18/23

## Q

qualification [2] 10/3 10/4
qualified [1] 10/17
quash [11] 4/13 5/18 7/15 10/17 12/23 14/16
14/20 15/17 17/1 18/8 18/12
queried [1] 26/22
question [28] 8/2 9/6 16/23 25/19 40/17 45/9
48/21 49/4 49/8 50/19 50/25 51/1 51/12 56/3
70/15 73/24 75/19 84/3 86/14 87/7 93/6 100/6
103/9 113/12 114/12 114/12 120/2 122/9
questioned [1] 22/22
questioning [2] 22/19 40/4
questions [18] 5/16 11/1 14/17 17/20 25/9
39/16 55/14 86/1 86/5 93/19 93/19 93/21
95/14 96/8 104/9 104/12 115/2 122/7
quick [1] 22/15
QuickBooks [8] 37/2 37/3 62/12 62/14 62/15
62/18 62/21 66/2
quickly [1] 64/7 64/15
quintessential [1] 41/10
quite [1] 99/24
quotes [1] 25/21

## R

raise [1] 41/20
raised [5] 4/22 34/1 39/19 86/14
raises [1] 28/21
range [2] 79/24 81/18
rare [1] 59/16
rate [1] 92/22
rather [1] 17/21 125/10
re [1] 7/13
re-serve [1] 7/13
reach [1] 5/8
read [26] 5/4 17/18 23/17 25/17 25/18 49/2
49/4 54/14 54/22 56/5 74/1 74/17 74/20
106/19 110/11 111/6 111/8 110/10 111/17
114/2 119/14 120/22 121/23 123/20 124/8
125/9
reading [6] 23/24 24/3 105/20 120/3 120/7
122/8
reads [1] 120/18
Reagan [1] 2/10
really [6] 4/20 13/19 21/6 64/24 66/1 101/1
reason [5] 5/18 7/9 7/15 9/19 21/6 22/18
23/10 32/9 32/10 33/4 42/19 97/12 120/9
122/25 123/4
reasonable [5] 14/13 28/16 64/9 64/10 65/11
reasons [4] 4/22 14/16 15/17 24/22 24/23
rebuttal [1] 17/24
recall [46] 26/21 27/2 45/6 45/11 55/21 56/2
61/5 62/20 62/25 65/11 78/23 79/1 79/2 79/8
81/4 82/2 82/6 82/14 87/11 87/22 88/8 88/15
89/5 89/7 93/11 93/14 93/19 93/21 95/15
99/10 99/16 100/21 100/22 101/1 101/2 101/4
101/8 101/25 102/23 104/12 104/18 111/19
112/23 113/8 113/14 122/2
recalling [1] 79/11
receipt [1] 123/21
receive [2] 36/20 60/10
received [11] 3/7 3/13 8/10 20/16 41/22 58/16

58/17 119/22 120/9 122/21 124/2
recent [1] 65/16
receptionist [2] 91/14 95/18
recess [7] 43/6 43/8 86/21 86/22 125/21
reciprocal [1] 41/24
recognize [1] 122/23
recollect [1] 31/8
recollection [28] 14/23 45/1 45/10 53/25
57/13 78/11 79/18 81/6 87/2 87/7 87/17 89/4
93/18 99/20 101/5 101/15 102/3 102/8 103/9
103/19 109/2 109/4 113/4 113/13 117/12
117/13 117/15 123/16
record [9] 9/21 10/18 11/11 11/20 31/10 37/6
74/20
records [9] 8/23 9/4 9/7 9/7 11/9 11/17 14/6
16/8 33/18
recounted [1] 45/3 112/25 113/6
RECROSS [2] 3/4 3/9
REDIRECT [4] 3/4 3/9 55/17 96/9
refer [1] 66/14
reference [4] 52/10 53/12 56/6 90/3
referenced [2] 28/3 55/1
references [1] 37/10
referred [1] 40/6
referring [4] 42/1 53/14 123/23 124/4
reflect [2] 30/21 92/1
reflected [2] 74/8 74/9
reflecting [1] 24/21
reflection [2] 106/4 113/1
refresh [7] 45/9 57/13 78/11 87/2 87/7 102/3
113/12
refreshed [1] 89/4
regard [6] 8/23 31/16 41/21 51/25 86/10 95/5
regarding [3] 36/6 94/14 109/11
regards [1] 16/17
Regnier [13] 10/20 11/4 37/7 38/6 38/15
45/13 54/25 55/12 56/1 56/6 97/5 97/10
113/16
Regnier's [2] 12/21 36/15
regular [3] 82/11 83/6 103/20
regularly [4] 80/2 81/1 88/20 94/5
regulations [1] 126/12
relate [1] 41/25
related [8] 33/26 60/2 73/17 83/6 83/25 84/1
104/16 125/11
relates [6] 11/19 12/20 12/21 24/5 50/25
77/11
relating [20] 7/1 12/24 12/25 19/7 19/10
19/17 24/17 29/14 30/14 31/10 32/16 58/16
58/18 62/23 69/17 86/19 93/15 104/10 120/2
124/10
relationship [2] 39/10 41/9
released [1] 112/11
relevance [11] 16/17 21/2 58/11 76/6 78/24
85/4 88/11 88/18 90/12 91/1 95/3
relevant [15] 5/3 5/16 6/12 15/1 15/14 18/14
19/17 19/19 19/23 20/1 29/7 39/8 39/9 41/15
50/12
reliance [1] 15/21
relief [1] 12/25
rely [1] 9/24
relying [1] 9/4
remain [1] 27/15
remedy [1] 26/5
remember [18] 61/1 85/7 99/14 99/18 99/23
101/7 102/1 102/1 102/4 102/14 102/15
102/25 103/12 103/21 103/21 110/17 120/8
125/16
remembered [1] 37/20
Remoun [1] 43/15
repeat [2] 22/14 31/12 73/24
repeatedly [1] 37/25
rephrase [3] 74/3 74/13 84/3
replied [1] 22/9
report [12] 66/21 66/22 67/1 68/3 69/2 69/7
69/12 69/17 71/15 71/18 72/5 89/13
reported [1] 126/22
reporter [2] 23/25 126/17
REPORTER'S [1] 1/15

reports [5] 67/16 71/25 73/20 74/9 74/23
represent [1] 50/10
representation [7] 27/3 37/8 38/16 103/2
124/9 124/16 124/17
representations [2] 30/25 124/10
represented [17] 39/10 39/12 39/15 39/24
39/25 40/24 41/2 41/11 41/13 50/3 50/6 50/22
52/7 82/9 102/23 119/4 120/20
representing [3] 40/18 52/11 53/1
request [18] 13/3 14/13 22/19 22/21 23/5
28/2 29/13 31/15 31/21 31/22 31/22 32/4 32/4
32/19 33/13 34/10 75/9 87/5
requests [2] 32/15 32/20 34/3
require [3] 4/25 5/6 13/13
required [2] 7/11 83/20
rescind [4] 33/3 33/7 33/9 33/10
research [4] 85/10 98/25 100/1 125/19
reserve [2] 18/16 86/12
respond [10] 18/6 20/13 25/1 25/3 27/18 29/2
32/22 33/15 34/15 121/18
responded [5] 45/25 47/20 114/18 116/9
121/21
response [16] 5/17 21/18 25/8 26/7 26/8
26/11 28/11 28/15 28/18 35/14 36/11 36/1
36/19 57/24 112/19 123/9
responsibility [2] 100/14 100/17
result [1] 39/7
resulting [1] 60/7
resume [1] 125/15
resumed [2] 43/9 86/23
retained [1] 101/4
retired [2] 101/24 102/1
revenue [2] 20/11
review [5] 14/7 72/9 92/24 122/6 123/12
reviewed [6] 19/23 19/23 22/10 27/1 27/14
74/23
right [136]
right-hand [1] 72/15
rights [2] 29/18 29/24
Robert [1] 26/9
Robertson [2] 23/3 23/4
role [3] 24/14 74/22 98/18
Ronald [1] 2/10
room [4] 106/5 107/11 109/12 113/1
Rose [11] 4/23 5/10 7/2 10/7 11/7 11/8 12/15
12/24 13/7 14/22 16/24
Rose's [2] 4/13 14/15
RPR [1] 1/19
rule [13] 4/24 8/22 11/13 27/17 29/17 29/24
30/12 31/5 32/17 34/13 42/11 42/13 86/10
ruling [1] 21/22
run [1] 25/16
running [5] 64/11 64/15 67/21 83/24 84/6
runs [1] 61/22

## S

SACR [3] 1/11 4/3 43/11
SACR-19-00061-JVS [3] 1/11 4/3 43/11
SAGEL [13] 2/9 4/5 35/19 37/7 38/4 38/7 38/9
38/13 43/14 65/16 104/9 111/3 111/14
Sager [2] 4/14 13/5
said [22] 6/12 8/21 11/4 13/21 18/15 19/16
20/2 20/21 25/9 25/23 36/16 36/16 37/17
37/18 37/25 38/4 39/20 49/25 54/8 66/6 76/11
95/17
same [14] 6/16 36/11 38/4 69/7 69/12 77/5
84/17 88/17 95/17 95/17 110/16 112/24 112/24
122/16
sample [1] 25/18
San [2] 2/16 53/5
Santa [1] 1/16 1/20 2/11 4/1
sat [2] 23/11 23/16
saw [6] 104/1 106/3 107/5 107/5 107/10
124/1
say [33] 13/7 14/12 14/12 16/6 29/5 39/2
41/11 41/13 53/14 61/24 66/22 67/2 109/20
117/11
saying [3] 51/8 61/25 125/7
says [1] 6/5

**S**

scheduled [1] 22/2
scheduling [1] 21/2
scheme [1] 86/17
school [1] 58/3
science [3] 58/9 58/9 58/10
scope [8] 40/9 51/16 51/21 51/22 96/14 96/21 97/6 97/14
screen [2] 66/15 120/6
screenshot [5] 72/4 72/6 72/12 75/4 75/11
screenshots [5] 72/12 72/19 75/6 75/8 77/9
scrolling [1] 22/12
SE [1] 2/14
seal [1] 32/9
sealing [1] 28/2
search [2] 64/18 64/21
searches [1] 60/6
Secondly [1] 25/18
seconds [2] 23/15 64/23
Section [2] 2/6 126/7
security [3] 57/20 58/1 58/14
see [18] 18/16 21/2 24/8 52/9 56/6 66/1 66/7 66/17 67/25 72/3 72/11 103/23 104/5 110/22 119/9 119/20 120/5 125/20
seeing [6] 23/1 24/6 52/5 103/19 103/21 120/8
seeking [1] 27/10
seem [1] 99/22
seemed [2] 26/12 46/16
seems [4] 14/25 65/11 115/15 119/25
seen [2] 35/23 107/4
sees [1] 62/5
SEFFENS [1] 1/19 126/16 126/17
SELNA [1] 1/8
Selna.pdf [1] 35/21
send [1] 119/12
senior [2] 57/15 89/14
sense [3] 11/18 23/17 24/3
sent [15] 35/8 35/11 35/18 35/21 53/11 92/25 119/12 122/1 122/18 122/20 123/9 123/21 123/24 123/25 124/1
sentence [6] 123/20 124/8 124/12 124/13 124/18 125/9
separate [2] 30/13 81/22
separately [1] 41/15
serious [1] 12/13
serve [3] 7/13 12/25 112/15
served [2] 16/24 35/13
server [3] 60/4 64/1 64/8
servers [20] 59/23 60/2 60/11 61/1 61/2 61/3 61/4 61/17 62/6 62/13 63/2 63/6 63/10 63/16 63/19 65/6 65/19 65/23 75/6 75/8
service [16] 4/21 7/5 13/17 18/12 18/24 18/25 19/11 19/2 19/4 19/5 20/15 20/16 20/17 20/18 20/18 27/16
services [1] 7/1
serving [1] 7/3
set [4] 13/22 14/9 15/11 64/11
settlement [14] 47/24 48/6 103/15 103/18 105/10 105/14 106/10 107/15 107/18 116/13 116/20 118/22 120/21 124/11
settlements [2] 20/11 94/14
seven [1] 19/1
several [2] 4/22 67/10
share [1] 6/20
SHARON [3] 1/19 126/16 126/17
she [74] 7/4 7/5 7/7 7/8 7/12 10/24 13/10 13/11 13/12 14/22 14/25 19/12 19/17 20/16 20/23 20/24 21/2 21/7 21/7 22/14 22/14 24/15 25/5 25/22 25/22 25/23 26/2 36/15 36/16 36/17 37/19 37/23 38/11 39/1 39/2 39/3 39/3 39/4 39/7 39/9 39/12 39/14 39/15 39/24 39/25 40/5 40/12 40/13 40/18 40/23 40/24 41/2 41/3 41/8 41/11 41/13 41/14 47/21 47/22 50/2 50/5 50/6 50/22 51/4 51/8 51/11 52/6 52/6 85/14 95/20 116/10 116/11 116/18 116/18
she's [1] 40/13
Sheikh [2] 102/25 103/10
Shoen [3] 15/2 15/3 15/13

short [3] 4/16 7/20 15/15
shortcut [2] 109/24 114/22
shortly [1] 112/14
should [32] 7/14 7/20 11/8 12/3 12/24 14/16 20/12 24/11 24/13 24/16 24/18 24/23 26/5 28/14 29/1 29/5 29/7 30/24 33/3 33/7 33/9 33/10 33/12 33/13 36/1 39/23 40/4 42/9 42/10 51/14 51/18 66/9
shouldn't [3] 32/10 32/25 33/1
show [5] 7/23 10/23 11/3 16/9 75/17
showed [1] 14/8
shown [4] 38/5 118/25 119/7 120/13
shut [1] 109/20
side [5] 6/10 14/21 101/22 102/21 102/24
sidebar [5] 40/22 41/18 49/23 49/24 52/15
sidebars [1] 34/1
sides [2] 52/20 55/20
sign [1] 122/16
signal [1] 106/9
signature [4] 122/9 122/22 122/24 123/1
signed [5] 122/14 122/17 123/12 123/14 124/25 125/2
significant [3] 26/23 27/3 30/11
similar [4] 28/25 33/25 71/24 124/3
simple [1] 10/15
simply [1] 9/25
since [6] 45/20 57/18 57/18 84/11 84/12 113/23
singular [1] 20/14
sir [42] 11/12 11/22 12/7 17/4 17/8 25/12 29/10 30/20 33/6 14/16 34/6 40/8 42/21 43/5 46/9 48/25 62/25 66/17 70/4 72/10 72/21 73/19 75/12 77/17 78/15 79/18 83/14 84/5 87/22 89/1 89/22 96/25 97/21 97/23 104/5 106/1 109/2 110/22 115/12 119/9 119/20 121/11 121/25
sit [4] 63/9 63/15 93/19 123/17
site [1] 16/9
sitting [1] 105/20
situation [3] 23/8 23/23 23/23
six [4] 78/15 78/18 84/5 87/9
six-and-a-half-year [1] 78/18
Sixth [1] 29/17
size [2] 61/1 61/2
slander [3] 47/12 47/17 115/25
small [1] 79/10
smaller [1] 79/3
SMS [2] 66/20 67/23
snippets [1] 25/15
so [106] 6/2 6/9 6/13 8/14 8/19 11/1 12/23 16/15 16/16 17/14 18/5 18/5 19/1 19/4 19/16 20/17 21/2 21/5 21/7 22/2 23/20 26/5 27/7 27/20 28/11 28/12 29/2 30/2 30/9 31/9 31/21 34/1 34/5 34/25 35/21 39/7 40/3 41/7 41/11 42/9 42/21 45/12 45/17 46/3 46/10 52/13 52/20 53/16 53/20 55/5 58/1 59/9 60/10 60/25 61/8 61/20 65/12 67/12 68/2 71/17 72/19 73/15 76/24 77/3 77/8 77/15 78/20 80/19 81/17 81/23 82/25 86/4 86/13 86/18 90/5 91/5 92/21 96/18 98/17 99/5 104/2 104/19 104/22 106/20 107/16 109/10 110/9 110/17 111/18 113/15 113/20 114/3 114/21 115/13 116/7 116/22 117/10 117/11 118/24 119/1 120/11 120/13 120/25 121/14 124/12 125/20
social [3] 22/24 24/5 24/20
software [4] 60/18 67/21 77/11 95/21
some [29] 11/1 20/16 21/4 26/12 30/5 32/9 32/9 40/1 40/18 44/24 51/13 63/23 68/5 72/8 72/19 73/1 79/8 84/13 87/7 89/23 90/1 90/7 90/15 92/7 92/18 95/13 99/3 100/20 104/3
somebody [1] 34/6
somehow [1] 20/1
someone [2] 14/7 103/5
something [15] 5/5 14/15 18/21 25/8 26/25 27/7 33/6 34/19 34/23 36/6 36/7 36/11 39/21 104/15 107/7
sometime [1] 59/3
sometimes [4] 52/20 52/23 52/24 55/20 65/1 83/15

soon [1] 20/18
sorry [7] 5/5 33/8 40/13 53/4 59/4 68/25 72/23
sort [1] 6/14
sought [1] 9/6
sound [3] 65/9 68/17 102/4
sounded [2] 46/6 115/9
sounds [3] 13/24 65/8 102/16
sources [4] 7/16 15/4 15/10 15/11
SOUTHERN [1] 1/6 79/14 79/20
Spanish [2] 80/5 80/12
speaker [1] 80/12
speaking [11] 5/12 35/17 37/14 45/22 71/25 72/17 113/25 114/5 114/10 114/13 114/15
Special [2] 43/15 65/17
specialized [1] 59/10
specific [5] 22/21 26/22 27/5 27/7 93/18
specifically [8] 17/23 22/11 27/2 62/14 62/21 65/11 86/20 125/10
speculation [2] 53/23 97/7
spell [4] 44/3 56/22 77/23 98/3
spelled [1] 103/1
spent [1] 68/4
spoke [3] 6/12 44/20 51/12
spoken [3] 44/18 114/22 114/23
spreadsheet [1] 90/2 95/17
spreadsheets [5] 62/8 90/6 91/13
Spring [1] 2/7
stand [8] 7/20 9/6 10/13 10/24 20/3 38/15 98/1 111/20
standard [1] 73/8
started [3] 99/3 99/17 110/16
starting [1] 25/22
state [7] 21/9 44/3 44/14 52/23 56/22 77/23 98/3
stated [3] 49/11 61/14 125/5
statement [2] 18/24 49/3
STATES [16] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/4 4/6 23/4 35/20 43/12 43/14 126/8 126/12
status [2] 7/11 67/20
stay [1] 25/25
stealing [4] 46/22 47/1 47/16 115/21
stenographically [1] 126/9
step [2] 77/17 85/12
steps [1] 107/17
STEWARD [7] 2/15 2/15 4/9 17/19 19/3 35/19 43/18
still [12] 8/24 10/25 10/25 16/14 16/18 30/14 30/15 64/3 102/4 110/7 121/8 123/18
stipulate [2] 8/1 88/23
stole [2] 46/18 115/17
stop [3] 94/10 104/24 106/9
stopped [2] 29/10 107/12
storm [1] 24/17
story [3] 45/4 112/25 113/7
Street [4] 1/20 2/7 2/11 105/20
stressful [1] 25/24
stricken [4] 70/1 103/7 108/11 110/21
strike [28] 22/8 26/18 27/11 58/17 61/1 68/4 69/24 72/7 75/25 79/19 81/9 84/11 92/15 96/25 99/1 100/17 100/21 101/4 103/6 104/8 107/1 108/9 110/19 111/19 115/5 120/8 121/25 125/2
struck [1] 24/24
structural [3] 29/16 29/23 31/12
studio [1] 10/14
studios [1] 5/24
subject [2] 35/20 101/1
submit [6] 18/3 25/2 25/7 27/4 29/6 33/5
submitted [4] 30/17 30/17 85/9 125/18
submitting [1] 29/7
subpoena [31] 4/22 5/18 7/1 7/3 7/5 7/15 10/17 11/8 12/23 13/8 13/16 13/19 14/3 14/15 14/20 15/17 16/11 16/23 17/1 17/3 18/9 18/12 18/13 18/25 20/20 21/8 35/12 112/11 112/12 112/16 112/19
subpoenaed [2] 112/2 112/21
subsequently [1] 19/4
substance [2] 26/23 31/3
substantial [2] 16/23 25/19

**S**

substantive [4] 14/23 26/12 29/11 30/2
such [6] 4/16 15/13 26/4 55/10 58/21 109/22
sufficient [3] 15/6 15/11 86/16
sufficiently [1] 20/8
suggested [2] 11/16 14/24
suggesting [3] 11/15 40/18 43/2
suggestion [2] 39/25 85/25
suggests [1] 73/1
suit [1] 85/15
Suite [1] 1/20 2/11 2/16
summary [1] 19/10
Sunday [1] 41/22
supervision [1] 98/18
support [1] 23/5
suppose [2] 21/4 34/6
supposed [5] 8/16 11/19 24/2 24/6 24/8
supposedly [1] 24/17
sure [16] 34/17 39/20 48/15 65/15 66/6 68/14
68/16 71/16 71/17 71/23 99/17 99/19 102/15
117/5 120/7 124/1
surgery [1] 82/8
suspicious [2] 46/16 115/15
sustained [16] 40/17 74/11 79/16 83/12 85/5
87/20 88/12 90/18 91/9 92/3 96/23 97/8 110/3
118/11 118/16 124/23
sworn [4] 44/2 56/21 77/22 98/2 108/18 114/4
115/6
Syracuse [1] 58/7
system [3] 64/15 93/20 95/14
systems [1] 93/16

**T**

table [1] 43/15
Tabs [27] 36/6 36/16 36/17 37/2 37/8 37/10
37/11 37/19 37/23 38/7 38/11 38/14 62/23
63/3 63/4 63/7 63/10 63/15 63/18 63/21 63/23
64/6 64/7 64/19 66/7 90/15 90/20
take [21] 4/12 4/19 8/16 10/17 17/10 17/14
30/20 34/7 34/25 35/2 36/1 45/8 64/21 64/23
65/3 85/6 107/17 113/11 120/1 122/6 125/14
taken [8] 18/4 29/11 43/8 68/1 75/6 75/8
86/22 125/21
takes [2] 64/16 65/1
taking [3] 17/4 72/12 111/20
talk [1] 24/15
talked [3] 31/25 50/16 95/9
talking [3] 68/5 105/13 107/12
tasks [2] 98/23 98/24
taught [1] 59/5
team [2] 60/9 65/18
technology [2] 70/12 70/16
telephone [1] 48/23
tell [11] 32/24 33/3 38/13 47/15 48/3 61/7
71/10 107/1 107/2 114/9 118/7
telling [4] 26/11 47/20 116/9 124/13
temporal [1] 51/17
ten [6] 12/1 19/1 64/14 64/17 64/19 99/5
tender [1] 7/14
tendered [2] 7/7 7/8
tends [1] 11/13
terabyte [1] 61/7 61/8
terabytes [1] 61/5
terms [1] 20/20
testified [4] 19/7 39/3 53/7 54/10 54/17
55/13 57/8 67/5 78/8 89/10 97/10 102/6
105/21 108/24 111/2 111/13 112/8
testify [12] 6/18 7/6 12/12 13/2 18/15 24/21
39/4 44/23 93/2 112/2 112/3 112/19
testifying [1] 7/20 24/18
testimony [41] 6/25 12/21 14/23 20/3 20/6
20/7 20/25 21/3 21/6 22/8 22/12 23/17 23/19
24/23 25/21 26/16 26/19 38/5 38/16 38/24
38/25 39/1 42/24 48/25 54/13 54/16 54/20
55/24 56/5 71/22 72/21 88/21 95/23 101/2
102/9 104/3 108/19 112/22 114/5 114/6 115/6
text [9] 51/23 52/4 66/20 67/25 73/2 75/4
75/18 77/8 77/10
texted [4] 45/17 45/24 113/20 114/17

than [19] 4/21/5 1/5/18 20/24 21/6 33/18 37/3
40/1 58/21 70/19 90/20 91/17 104/25 109/25
117/18 119/18 119/24 120/6 121/2
than [38] 4/15 6/21 13/4 14/19 15/18 15/20
16/4 16/21 22/5 22/6 27/9 35/7 36/21 40/25
43/5 44/8 55/14 55/15 56/11 56/16 56/17 57/2
68/25 74/19 75/14 77/17 78/2 86/9 89/1 93/24
96/7 97/19 97/23 98/7 107/8 114/16 115/2
125/20
that [656]
that's [95] 5/2 6/15 8/14 9/18 11/5 13/17 14/5
14/6 14/6 14/15 14/20 16/14 19/23 20/25
22/3 23/23 24/9 26/1 27/8 28/20 29/5 29/10
32/11 33/19 34/5 34/11 35/6 37/15 37/17
37/17 37/18 37/20 37/21 38/12 40/6 40/7
40/19 41/4 42/2 42/3 43/2 43/3 43/4 45/19
45/23 46/4 46/7 46/18 48/12 48/13 49/22
50/15 51/7 51/25 52/12 52/13 53/2 53/8 53/15
53/17 54/19 59/25 60/16 64/19 67/5 68/15
76/17 78/22 79/6 79/11 80/9 80/25 83/5 84/10
88/5 89/12 95/19 103/25 105/11 106/10
107/13 109/7 109/21 112/18 113/22 114/1
114/12 115/7 115/10 115/17 117/2 117/3
120/13 120/14
theater [1] 14/1
their [13] 14/2 14/6 16/17 24/16 24/19 26/8
27/3 38/8 39/10 76/16 78/11 91/19 116/4
them [29] 15/23 31/3 32/10 37/23 42/19 43/1
45/4 46/17 46/19 57/24 60/8 66/3 81/23 86/2
86/6 86/7 91/1 93/10 94/14 94/18 100/20
112/10 112/18 111/22 112/25 113/7 115/16
115/18 119/3
themselves [1] 26/4
then [28] 9/7 11/20 18/21 19/3 21/22 23/17
24/1 28/5 28/19 32/21 34/22 40/14 40/17 50/5
50/24 60/11 64/20 64/21 69/15 86/5 91/5
92/22 95/18 107/9 107/21 112/6 112/14
118/18
there [65] 6/11 8/2 12/1 12/8 15/4 15/15 17/11
18/14 19/1 20/17 21/6 21/11 21/11 23/3 23/21
25/2 25/8 25/15 25/18 25/19 26/22 27/14 28/1
28/10 29/3 30/4 30/5 30/25 31/5 31/7 31/20
32/15 40/2 41/10 48/8 50/4 51/1 51/23 52/10
61/4 63/9 64/7 68/2 72/25 81/15 83/9 87/9
89/6 90/3 92/13 93/17 93/19 96/25 99/12
100/13 100/21 100/22 101/7 101/16 101/22
102/1 103/12 104/24 105/20 112/5
there's [8] 5/8 5/11 12/2 16/22 16/25 32/9
39/17 51/4
thereafter [1] 112/14
these [21] 8/1 9/25 10/14 11/20 14/9 16/17
24/8 30/19 31/3 41/24 42/4 42/9 60/25 64/2
67/15 68/15 72/19 88/9 89/7 89/9 121/20
they [65] 5/23 8/15 8/24 9/1 9/1 9/3 9/5 9/5
9/7 10/11 10/24 10/24 10/25 10/25 11/16
13/8 13/9 14/6 17/18 19/22 24/15 24/15 24/18
24/19 28/25 29/1 29/4 37/19 37/22 37/24
37/24 37/25 38/11 38/13 39/23 40/5 40/6
41/25 42/5 42/10 42/12 42/21 42/23 48/23
51/15 58/22 64/3 72/19 76/15 76/20 80/15
81/14 92/24 95/8 107/14 107/22 107/22 109/7
111/12 112/2 119/3 121/19 121/19 121/20
they'll [1] 88/23
they're [7] 6/25 9/21 12/1 24/8 32/9 42/12
111/1
They've [1] 11/18
thing [4] 14/20 38/4 110/16 120/5
things [13] 4/24 13/11 24/5 25/16 28/20 33/11
36/18 44/25 60/14 61/14 62/9 64/15 67/23
think [41] 5/9 5/17 8/2 10/19 11/10 11/16
12/24 17/20 19/5 19/8 22/16 22/16 27/6
29/25 30/11 34/4 36/5 37/15 41/12 42/23 43/2
51/3 51/6 51/7 53/6 61/8 64/9 76/11 82/24
83/6 99/19 104/2 105/21 114/3 114/23 116/7
117/10 117/11 120/11 122/17 125/14
thinks [2] 107/4 107/5
third [1] 93/11
this [128]
those [48] 6/14 7/24 8/16 13/11 15/17 16/10

19/13 24/23 25/16 28/13 29/1 32/20 39/16
39/17 44/23 49/5 60/20 71/4 71/4 76/14
76/15 78/21 79/23 80/2 80/5 81/7 81/12 81/15
81/19 81/21 83/24 84/16 86/9 84/19 86/9
86/20 90/6 93/15 94/17 95/7 100/15 103/3
104/12 109/11 110/25 111/11 112/24
though [4] 8/11 59/12 65/3 75/1
thought [6] 30/6 30/7 49/25 55/11 86/11
108/8
thoughts [1] 30/22
thousand [1] 83/16
thousands [3] 80/21 80/22 83/9
three [11] 15/7 15/21 16/17 46/16 47/22 93/12
93/15 111/23 115/15 116/11 116/19
throat [1] 106/9
through [13] 5/13 7/17 9/4 11/18 11/25 12/4
12/5 14/11 25/16 30/18 32/3 61/22 112/6
throughout [1] 65/1
thumb [1] 68/7
Thursday [2] 21/9 22/2
Thus [1] 15/9
time [84] 4/19 8/3 11/5 13/23 15/20 22/13
22/20 24/12 28/16 36/1 38/4 38/18 44/20
49/18 50/15 51/11 53/4 53/20 54/1 64/9 64/10
65/2 68/5 70/25 78/22 78/18 78/23 80/14 81/9
81/9 81/25 81/25 82/18 82/18 82/19 82/19
83/2 83/2 83/9 83/10 76/18 78/11 84/9 84/19 89/23
90/4 90/7 90/10 90/23 91/5 91/11 91/15 91/23
91/25 91/25 92/1 92/5 92/7 92/9 92/12 92/12
92/12 92/20 93/12 95/17 96/11 96/18 97/1
98/16 98/19 99/7 101/16 103/22 103/23
103/23 105/1 105/2 105/10 105/12 106/21
109/21 112/8 124/14 124/2
timekeeping [1] 95/14
times [12] 9/20 16/16 38/3 38/3 61/10 76/25
83/19 93/10 93/12 93/15 111/20 111/23
title [5] 57/14 126/8
today [9] 36/24 38/23 63/9 63/15 64/6 93/19
111/20 112/18 123/17
together [1] 19/22 83/2
told [39] 8/20 10/9 13/11 16/9 16/12 24/8
27/23 37/23 44/25 45/16 46/4 46/7 46/8 46/12
46/15 46/19 47/10 48/9 49/9 66/1 94/9 109/9
110/16 110/17 113/19 115/7 115/10 115/11
115/14 115/18 115/23 116/3 116/17 116/24
117/20 118/4 118/6 121/12 124/19
tomorrow [4] 21/17 21/19 21/25 35/2
too [1] 65/4
took [3] 29/14 38/15 55/7
tool [14] 60/18 61/11 61/20 62/6 66/24 67/2
67/2 67/4 69/2 69/8 69/13 70/22 72/8 75/23
tools [18] 58/21 60/3 60/11 60/15 60/15 61/16
65/1 67/6 68/16 70/4 71/3 71/9 73/8 76/12
76/14 76/15 76/20 76/23
top [5] 68/24 72/3 73/5 119/18 122/16
topic [3] 93/20 93/21 97/5
total [1] 93/12
totally [1] 41/12
touched [1] 27/6
tough [1] 35/3
towards [1] 106/8
track [5] 89/23 90/5 90/6 90/7 91/5
tracked [6] 90/10 90/23 92/12 96/11 97/1
97/11
tracking [2] 92/6 92/20
trained [1] 67/9
training [5] 58/16 58/17 58/23 58/23 67/10
transcript [13] 1/9 1/15 5/4 23/17 23/20 26/1
29/13 37/13 37/14 54/23 115/5 126/9 126/11
transcripts [2] 25/15 26/4
transfer [3] 26/14 46/15 86/16
travel [3] 5/1 15/15 21/10
traveled [1] 7/12
trial [23] 1/12 9/20 22/25 24/14 24/22 25/6
25/15 26/4 29/19 30/2 32/8 32/8 32/12 33/1
33/20 33/25 34/4 34/19 34/20 34/22 34/24
110/15 111/25
tried [3] 4/16 63/24 90/2
tries [1] 57/25

**T**

**true [15]** 64/5 64/8 68/1 70/19 74/9 77/12 90/8 95/5 96/25 104/21 105/5 105/15 107/3 124/20 126/8
**trustworthy [1]** 52/8
**truthful [5]** 111/1 111/12 114/6 123/15 123/18
**try [4]** 11/12 14/8 25/25 63/1
**trying [6]** 6/10 6/14 13/20 107/14 108/7 112/15
**TUESDAY [1]** 4/1
**turn [2]** 16/25 66/9
**turning [1]** 75/3
**tweet [1]** 24/17
**tweets [9]** 22/12 22/17 23/24 24/2 24/7 25/14 25/17 26/3 26/3
**twice [1]** 93/11 109/13
**two [11]** 8/11 8/15 16/16 19/7 25/23 29/16 38/14 41/23 50/4 99/19 111/24
**type [6]** 39/11 62/2 62/3 62/7 63/25 79/3
**types [2]** 60/23 62/5

**U**

**U.S [6]** 45/2 52/21 55/20 93/14 113/5 126/17
**ultimately [1]** 92/7
**under [25]** 4/24 7/1 13/15 15/7 15/13 26/5 30/24 32/9 32/17 39/23 40/4 41/6 42/20 44/25 50/13 53/3 98/18 105/8 106/2 106/12 108/24 109/13 111/2 111/13 124/11
**understand [15]** 10/6 12/16 25/18 27/22 33/21 37/25 38/24 60/10 61/15 74/25 83/14 92/5 92/9 92/16 120/19
**understanding [10]** 9/11 38/22 50/7 50/8 54/19 91/23 92/11 92/19 92/21 95/20
**understood [7]** 52/13 53/3 91/19 98/21 105/22 122/20 124/2
**unfortunately [1]** 7/24
**UNITED [16]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/3 4/6 23/3 35/20 43/11 43/14 126/8 126/12
**unlawful [1]** 86/15
**unless [2]** 25/8 32/8
**unlike [1]** 42/19
**unlock [1]** 67/20
**unnoticed [1]** 29/19
**unreasonable [1]** 14/2
**unsure [1]** 72/11
**until [13]** 8/10 17/3 18/16 34/18 34/22 36/16 37/19 42/5 43/6 78/14 85/9 111/24 125/18
**untrue [3]** 125/2 125/7 125/8
**untrustworthy [1]** 50/11
**up [31]** 4/12 12/1 17/4 17/10 17/14 18/4 29/11 30/20 34/25 35/2 36/1 36/13 41/10 46/1 48/10 48/18 48/24 61/21 64/1 64/21 71/12 72/14 73/4 111/24 114/19 116/25 117/9 117/13 117/16 118/9 119/17
**upon [1]** 16/24
**us [7]** 4/16 17/11 28/19 42/5 42/10 123/21 124/15
**USA [1]** 120/20
**use [7]** 42/18 43/1 68/15 76/15 76/20 76/25 77/3
**used [17]** 60/3 60/25 66/24 67/3 67/7 67/15 71/5 71/7 71/10 73/10 73/13 76/23 91/13 92/7 92/10 92/12 93/16
**using [8]** 22/24 37/10 42/18 69/18 70/3 71/2 75/22 90/6
**usually [1]** 103/5
**utility [1]** 12/1
**utilize [4]** 60/11 60/15 64/6 68/4
**utilized [6]** 61/11 61/15 62/6 72/7 72/8 77/8
**utilizing [1]** 24/7 60/14 69/7 69/12 70/11 70/22 73/7

**V**

**V-a-r-a-n-i [1]** 56/24
**Vague [1]** 84/2
**valid [1]** 13/17
**validity [2]** 16/23 68/13
**VARANI [9]** 3/11 56/20 56/21 56/24 57/6 66/14 73/7 74/5 74/15

**variables [4]** 16/10 94/4 104/10 109/15
**vendors [1]** 78/10
**verdict [1]** 92/13
**verify [1]** 118/23
**version [1]** 66/1
**versus [4]** 4/4 23/4 35/20 43/12
**very [12]** 5/12 7/3 17/25 30/9 31/14 32/22 39/8 41/17 64/7 79/10 100/5 101/9
**via [4]** 7/5 17/14 75/11 119/22
**video [1]** 22/11
**videos [1]** 5/19
**videotape [1]** 14/7
**videotapes [1]** 5/13
**view [2]** 28/21 29/1
**viewed [1]** 22/18
**viewing [1]** 66/25
**violation [6]** 23/12 29/17 29/24 30/12 30/12 42/14
**violations [2]** 26/20 42/11
**visit [2]** 85/16 85/17
**voiced [1]** 7/4
**voir [1]** 85/22
**VOL [1]** 1/12
**vs [1]** 1/10
**vulnerabilities [1]** 57/23

**W**

**waiting [3]** 47/24 116/13 116/20
**waive [1]** 13/9
**waived [1]** 42/8
**waiver [1]** 42/24
**walk [1]** 30/18
**walking [1]** 105/19
**wall [2]** 105/20 106/4
**want [28]** 10/5 12/15 12/17 14/1 16/18 18/18 18/19 25/6 26/16 31/9 32/24 34/19 35/1 36/10 36/19 37/6 39/12 40/5 40/6 40/16 44/24 76/25 79/4 85/17 104/3 104/15 122/7 124/12
**wanted [4]** 13/13 39/16 63/18 112/14
**wants [8]** 12/12 15/5 17/22 25/2 32/4 36/3 37/18 86/1
**was [246]**
**Washington [2]** 73/12 76/2
**wasn't [4]** 13/11 33/14 71/5 100/6
**waving [1]** 106/8
**way [12]** 7/25 9/8 32/1 35/11 61/25 70/14 72/20 75/5 75/10 84/17 101/9 125/7
**ways [2]** 7/23 24/1
**we [96]** 4/12 4/16 4/17 5/9 5/17 5/17 6/10 6/11 6/13 6/16 6/17 6/19 7/2 7/3 7/13 9/19 10/16 13/18 13/20 13/23 14/7 14/12 14/16 16/6 16/9 16/12 16/17 16/18 17/1 31/12 31/16 33/24 34/1 34/20 34/22 34/23 36/1 36/7 37/25 38/2 38/3 38/19 41/22 42/9 42/10 42/13 42/20 42/21 49/25 60/3 60/16 66/11 68/4 68/23 70/14 71/12 71/25 72/2 73/4 74/3 76/8 77/9 82/9 82/16 85/6 85/16 86/4 86/21 88/23 119/7 119/16 119/17 122/4 123/21 123/24 124/9 124/16 125/10 125/14 125/15
**we'll [5]** 35/2 36/22 43/6 109/12 125/20
**we're [8]** 7/13 7/14 10/14 17/9 17/13 31/11 40/22 105/12
**we've [4]** 4/21 5/12
**week [3]** 14/12 22/16 36/23
**week's [1]** 5/1
**weekend [2]** 26/17 102/7
**weeks [4]** 24/14 25/23 84/23 111/24
**well [59]** 4/9 6/4 8/9 8/24 9/3 9/11 10/4 15/23 16/2 18/10 25/4 29/12 31/14 34/8 35/9 35/19 37/1 39/20 40/10 41/17 46/1 46/4 46/7 54/3 58/22 60/15 61/1 61/14 68/4 71/24 76/12 79/19 81/19 87/17 88/23 92/15 96/25 98/19 99/1 100/6 100/17 101/4 103/5 104/8 109/2 111/10 111/19 114/19 115/5 115/7 115/10 117/11 117/22 118/10 120/1 120/5 120/18 124/4 125/2
**went [1]** 30/5

**were [111]** 5/23 6/10 6/13 6/18 7/2 8/9 13/9 13/13 16/1 17/18 19/23 21/24 26/16 29/7 31/2 31/16 34/18 40/2 42/21 42/23 45/16 45/17 45/22 46/25 52/9 52/25 54/11 54/22 54/22 58/2 60/4 60/7 61/4 63/20 64/5 67/25 71/25 72/19 72/19 72/20 73/20 75/6 75/8 78/11 80/5 80/5 80/9 80/14 81/2 81/14 81/15 81/19 81/22 82/20 83/14 83/19 84/17 87/9 87/11 88/3 88/9 88/10 88/15 89/6 89/13 89/14 89/22 90/16 90/16 90/16 90/20 90/21 92/6 92/15 92/25 93/16 94/8 96/25 97/11 98/19 98/20 99/2 100/13 101/21 101/22 102/17 103/12 104/1 104/11 104/12 105/23 107/14 108/17 109/9 112/3 112/6 112/8 113/19 113/20 113/25 114/5 114/12 116/2 116/17 118/3 123/23 123/24 124/4 124/13
**weren't [2]** 49/25 55/9
**West [1]** 1/20 2/11
**what [100]** 4/17 5/4 8/20 9/5 9/23 10/6 10/9 11/4 11/6 11/19 12/10 13/8 13/8 13/21 14/10 15/6 15/10 19/22 24/15 24/17 24/21 25/19 28/18 29/4 30/13 30/16 34/17 35/16 36/3 36/9 36/14 37/15 37/17 37/17 39/11 39/11 40/16 40/19 41/16 42/21 46/4 46/7 46/18 48/13 49/9 49/11 50/15 51/1 51/7 51/8 51/12 51/14 51/19 51/19 52/9 54/17 54/19 57/3 57/19 57/22 60/1 60/15 60/17 61/7 61/19 62/7 63/24 66/19 66/23 67/2 71/10 72/17 78/12 78/23 82/5 88/15 90/5 92/9 93/16 96/11 96/18 99/10 102/4 104/10 106/10 107/1 107/1 107/4 107/5 107/11 115/7 115/10 117/3 117/13 124/19 124/19 125/1 125/3 125/5
**what's [9]** 9/13 10/3 22/15 23/20 25/18 42/15 64/10 88/18
**whatever [4]** 32/5 34/20 35/1 66/15
**whatsoever [1]** 10/8
**when [49]** 5/11 5/14 6/11 14/12 16/13 20/3 21/15 23/11 23/15 25/22 26/22 29/5 30/4 36/10 36/13 37/20 40/1 41/6 42/1 44/20 45/1 46/16 53/11 53/14 56/5 59/2 60/25 61/11 61/24 62/6 65/5 66/22 67/2 72/20 72/20 83/19 88/3 90/23 99/17 104/1 105/19 109/20 110/11 110/15 112/23 113/4 115/15 124/25 125/2
**where [25]** 5/14 14/5 14/6 14/6 16/9 16/10 29/11 30/6 36/13 47/1 48/23 51/7 58/2 58/6 58/20 66/24 75/25 77/9 82/22 101/16 105/17 116/2 116/17 118/3 122/12
**whereas [1]** 68/11
**whether [20]** 13/9 13/18 16/18 26/22 28/6 28/10 28/13 31/20 34/18 50/5 50/5 51/13 55/6 56/1 63/18 64/7 71/17 77/3 102/2 108/25
**which [30]** 5/2 5/12 5/12 6/18 6/19 8/7 11/18 13/12 13/22 13/23 16/12 16/12 22/11 22/17 22/24 23/13 28/19 40/2 50/13 70/15 75/17 92/20 94/5 94/12 94/20 98/20 112/7 119/7 119/17 123/24
**while [14]** 82/20 83/14 84/17 87/8 87/11 88/10 88/15 89/5 89/13 89/22 90/21 92/15 93/16 106/21
**who [27]** 10/13 13/1 20/24 23/11 23/16 23/24 32/4 53/9 55/6 73/15 82/6 82/7 84/13 87/22 87/23 91/6 91/11 91/15 97/4 101/20 102/23 102/23 104/20 104/24 104/25 105/1 105/23
**whole [2]** 42/24 120/5
**why [29]** 4/22 8/5 8/7 8/22 9/9 12/5 22/18 23/19 24/9 26/12 29/10 32/10 32/24 33/1 33/3 41/3 41/4 42/21 50/14 51/8 51/18 55/11 55/13 68/6 68/15 75/8 112/18 118/9 118/13
**wide [1]** 57/25
**will [33]** 7/6 15/15 17/24 18/16 21/25 31/10 31/13 32/13 32/14 33/18 34/20 34/22 34/23 35/24 39/3 41/17 44/3 44/4 70/1 75/17 85/6 85/22 86/5 86/7 86/13 86/21 98/3 103/7 108/11 110/21 125/14 125/15
**wire [16]** 16/13 26/14 86/15 86/16
**within [6]** 27/6 31/2 63/19 64/8 64/9 76/11
**without [12]** 8/17 8/17 29/20 29/21 33/12 40/22 68/10 76/25 80/3 81/2 81/7 81/10
**witness [74]** 5/7 5/10 5/23 6/9 6/17 6/19 8/17

## W

**witness... [67]**  8/18 8/19 8/25 9/1 9/4 9/6 9/7
9/8 10/7 10/10 10/10 10/10 10/12 10/18 11/9
12/4 12/5 12/12 12/16 13/1 13/1 13/12 13/17
13/19 14/3 14/4 15/12 21/9 23/11 23/16 23/18
23/24 24/2 38/19 38/23 39/9 41/9 41/10 43/24
44/2 47/15 56/13 56/21 74/6 74/12 77/19
77/22 82/20 83/23 84/6 87/4 97/20 97/24 98/2
99/11 104/4 107/2 111/25 112/4 112/10
112/15 112/22 115/6 117/9 120/3 120/7 122/8
**witnessed [1]**  82/24
**witnesses [9]**  3/4 3/9 11/18 11/25 24/16
24/18 24/19 24/21 48/22
**Witos [2]**  35/8 35/11
**Wolett [2]**  91/17 91/19
**woman [1]**  91/16
**word [3]**  36/16 37/11 62/9
**work [25]**  19/9 19/21 20/5 20/9 60/1 62/25
65/5 78/17 79/19 84/13 84/20 85/2 88/6 90/11
92/17 95/7 95/9 98/21 99/1 99/7 99/13 99/20
99/24 100/1 100/6
**worked [18]**  57/20 79/8 79/9 82/14 82/15 87/8
87/12 88/4 89/5 98/13 98/16 98/17 99/12
104/21 104/25 105/1 105/4 105/23
**working [10]**  78/23 79/1 79/2 88/3 88/15 90/5
94/8 99/10 99/16 100/14
**would [101]**  4/12 4/24 5/6 6/15 8/19 12/8
12/11 13/3 15/6 15/10 15/25 16/6 16/18 16/22
17/2 18/2 18/5 18/5 18/10 21/7 21/22 22/12
23/1 23/5 24/21 24/25 27/6 27/17 28/14 28/17
29/12 29/13 30/10 31/20 33/2 34/14 34/20
34/25 35/14 36/11 36/20 37/1 38/12 40/20
43/23 48/24 49/5 51/21 51/22 51/23 55/6
55/23 56/22 59/3 61/9 63/20 63/21 63/22
64/21 65/3 65/3 67/12 77/10 78/19 81/9 82/24
82/25 83/3 83/15 83/24 86/4 86/18 86/19
89/23 89/25 90/2 90/11 90/23 91/5 91/5 91/6
91/19 91/24 91/25 92/1 92/7 92/10 92/12 94/9
94/12 95/17 95/18 95/20 97/4 97/24 103/23
107/6 108/19 118/9 118/13 120/4
**wouldn't [2]**  72/12 122/23
**write [2]**  118/19 118/21
**writing [6]**  18/6 32/21 33/6 34/15 34/23 34/24
**written [6]**  28/1 30/6 31/17 36/11 124/20
125/5
**wrong [3]**  38/9 99/22 124/14
**wrote [1]**  122/13
**WYMAN [14]**  2/5 4/6 28/5 28/9 35/19 40/19
43/14 49/13 55/19 56/1 56/10 65/16 93/23
97/18

## Y

**Yahoo [2]**  79/11 80/23
**yeah [3]**  36/16 65/1 85/20
**year [5]**  5/1 15/16 78/18 99/18 99/23
**years [12]**  16/8 16/16 37/23 37/23 38/14
67/11 70/17 78/15 84/5 87/9 99/5 99/19
**yes [155]**
**yesterday [7]**  17/8 17/19 27/13 27/21 28/6
29/5 29/14
**yet [4]**  7/12 35/23 74/3 119/25
**yield [1]**  61/19
**York [9]**  5/20 5/21 5/25 7/17 7/23 8/3 10/14
13/22 14/9
**you [619]**
**you'll [1]**  11/12
**you're [14]**  43/1 43/2 48/15 49/21 52/8 52/17
52/20 53/14 67/6 72/17 111/1 111/12 117/5
117/24
**your [235]**
**yourself [3]**  82/21 83/20 84/6