1

1

2

3

4                UNITED STATES DISTRICT COURT

5              CENTRAL DISTRICT OF CALIFORNIA

6                     SOUTHERN DIVISION

7                         - - -

8        THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

         UNITED STATES OF AMERICA,    )CERTIFIED TRANSCRIPT
10                      Plaintiff,  )
            vs.                      )
11                                   )  SACR-19-00061-JVS
         MICHAEL JOHN AVENATTI,      )
12                      Defendant.  )    TRIAL DAY 26
         ------------------------------)
13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                Santa Ana, California

17                August 24, 2021

18

19                    SHARON A. SEFFENS, RPR
                      United States Courthouse
20                    411 West 4th Street, Suite 1-1053
                      Santa Ana, CA  92701
21                    (714) 543-0870

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    NICOLA T. HANNA
     United States Attorney
4    BRANDON D. FOX
     Assistant United States Attorney
5    Chief, Criminal Division
     ALEXANDER WYMAN
6    Assistant United States Attorney
     Major Frauds Section
7    1100 United States Courthouse
     312 North Spring Street
8    Los Angeles, CA  90012
     (213) 894-6683
9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25
```

```
09:25   1   SANTA ANA, CALIFORNIA; TUESDAY, AUGUST 24, 2021; 8:05 A.M.
09:25   2              (Jury not present)
08:05   3              THE CLERK:  Item 1, SACR-19-00061-JVS, United
08:05   4   States of America versus Michael John Avenatti.
08:05   5              MR. SAGEL:  Good morning, Your Honor.  Brett Sagel
08:05   6   and Alexander Wyman on behalf of the United States and the
08:05   7   Prosecution Team.  And at counsel table is Patrick
08:05   8   Fitzgerald with the Privilege Review Team of the United
08:05   9   States.
08:05  10              THE COURT:  Good morning.
08:05  11              MR. AVENATTI:  Good morning, Your Honor.  Michael
08:05  12   Avenatti, present with Mr. Steward and Ms. Cummings-Cefali.
08:06  13              THE COURT:  Good morning.
08:06  14              I received last night Mr. Avenatti's status
08:06  15   report, Re:  Search of Service for Financial Data at Docket
08:06  16   No. 775.
08:06  17              Any further supplement on the findings yesterday?
08:06  18              MR. FITZGERALD:  Yes, Your Honor.  I would like to
08:06  19   provide further information to the Court and counsel on
08:06  20   three issues:  one, a small what I believe point of
08:06  21   clarification to the defense status report; two, memorialize
08:06  22   certain agreements that the Prosecution Review Team and the
08:06  23   defense reached yesterday; and, third --
08:06  24              THE COURT:  The Privilege Review Team.
08:06  25              MR. FITZGERALD:  Excuse me.  Thank you, Your
```

08:06 **1**  Honor, the Privilege Review Team.  And third, provide a

08:06 **2**  brief supplement for events that happened yesterday after

08:06 **3**  the conclusion of the meeting with the defense at our

08:07 **4**  office.

08:07 **5**      First, as far as the clarifications go -- and once

08:07 **6**  I'm finished, I'll invite the defense to respond.

08:07 **7**      On lines 4 through 6 on page 2, there is a

08:07 **8**  reference to the number of Tabs files and QuickBooks files.

08:07 **9**  My understanding is that at the moment we are not able to

08:07 **10**  determine which of these files relate to the clients at

08:07 **11**  issue in this case and which relate to all the other clients

08:07 **12**  in the case.  It may be that we will need the license and

08:07 **13**  the software from the vendor to be able to do that.

08:07 **14**      The second clarification is on lines 12 through 14

08:08 **15**  about the discovery that we and the defense made at about

08:08 **16**  6:00 p.m.  I believe this refers to the assessment that we

08:08 **17**  made that there is probably information on the virtual

08:08 **18**  system that was not captured by the forensic searches that

08:08 **19**  Mr. Varani made for us yesterday.

08:08 **20**      Then in regard to the agreements of the parties,

08:08 **21**  first, the Privilege Review Team allowed the defense to take

08:08 **22**  iPhone photographs of certain screens on their review of the

08:08 **23**  virtual system, and we're trying to get screenshots.  They

08:08 **24**  said that they would provide those to the Privilege Review

08:08 **25**  Team.

08:08   1            Second, all of this information that was produced
08:09   2    yesterday the parties agreed would be produced pursuant to a
08:09   3    modified Protective Order, which I would like to memorialize
08:09   4    now.
08:09   5            It is largely based on the applicable Protective
08:09   6    Order in this case, Document No. 74, that was filed on
08:09   7    December 31st, 2019, with certain changes.
08:09   8            First, in paragraph three, all of the material
08:09   9    that was produced yesterday will be deemed sensitive
08:09   10   information as that is defined in paragraph three.
08:09   11           Second, the permission in paragraph eight that
08:09   12   defendant and his counsel may provide this information in
08:09   13   other matters relating to Mr. Avenatti is stricken.  The
08:09   14   information that was provided by the Privilege Review Team
08:10   15   over the weekend and then yesterday is for use only in this
08:10   16   case and not for any other criminal, bankruptcy, or civil
08:10   17   proceeding absent further permission from the Court.
08:10   18           And then finally there is a new provision.  The
08:10   19   defense and the government agreed that in accessing this
08:10   20   material, the defense and anyone working on behalf of the
08:10   21   defense would in no way review or look at or attempt to
08:10   22   access any information relating to the clients that were
08:10   23   listed in the search warrant, which I believe is in
08:10   24   paragraph 17, which I will just say collectively is the
08:10   25   Clifford litigation, clients which they should not be

08:11  1  accessing which is set out in paragraph 17 of the search

08:11  2  warrant that was filed on March 25th, 2019.

08:11  3          And then finally as a supplement to what happened

08:11  4  last night after the defense finished reviewing the virtual

08:11  5  system, which is in a conference room in the United States

08:11  6  Attorney's Office, the case agent for the Prosecution Team

08:11  7  was given access to it under my supervision.

08:11  8          He looked at an overall list of clients to

08:11  9  determine which of the clients were applicable to this case.

08:11  10  Then he clicked on the information for those clients and,

08:11  11  after exploring the software, he found material that he

08:11  12  believed was relevant to the Court's inquiry.

08:11  13          He was allowed to put that on a hard drive and

08:12  14  have it exported from the virtual system.  And my

08:12  15  understanding is that that material then was sent to the

08:12  16  Prosecution Team, and it has been produced to the defense.

08:12  17          THE COURT:  Thank you.

08:12  18          Mr. Avenatti.

08:12  19          MR. AVENATTI:  Your Honor, a couple points.  The

08:12  20  defense agrees with the modifications to the Protective

08:12  21  Order relating to this information as Mr. Fitzgerald stated

08:12  22  them in their entirety.  So I wanted to put that on the

08:12  23  record.

08:12  24          THE COURT:  Well, let's follow up when a formal

08:12  25  document gets filed.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:12  1          MR. AVENATTI:  Agreed, Your Honor.

08:12  2          As it related to lines 4 through 6 of the status

08:12  3   report, the number of files that were listed, each of those

08:12  4   Tabs files, Your Honor "relates" to the clients in this

08:13  5   case, because when the files were produced, they were not

08:13  6   produced by client.  All of the Tabs data and files on the

08:13  7   server were produced.  By their very nature, they include

08:13  8   information relating to the clients in this case.  So these

08:13  9   file numbers are correct because each Tabs file, electronic

08:13  10  file, will have some relevance to the clients in this case.

08:13  11  They are not client specific.

08:13  12         We are still in the process -- we got an enormous

08:13  13  amount of data, six gigabytes.  It's going to take us a

08:13  14  while to go through this.

08:13  15         Number two, Your Honor, at lines 12 through 14, as

08:13  16  to this discovery at 6:00 p.m., I want the Court to

08:13  17  understand exactly what happened.  Mr. Varani sent over six

08:13  18  gigabytes of data from Washington, D.C.  While I was in the

08:13  19  offices of the U.S. Attorney's Office in L.A., I said to

08:14  20  Mr. Tashchyan is there a way for us to confirm that

08:14  21  everything that is on this virtual machine is included

08:14  22  within Mr. Varani's files that he just sent over?

08:14  23         We then began a process by which we attempted to

08:14  24  do that.  It became apparent to Mr. Tashchyan and us that

08:14  25  all of the data files on the virtual machine were not

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:14  **1**   included in what Mr. Varani sent over, and it's unclear that

08:14  **2**   those data files were actually accessible on the virtual

08:14  **3**   machine for a technical reason.

08:14  **4**          Rather than -- well, actually it was impossible at

08:14  **5**   that time because of -- in the interest of time to do a full

08:14  **6**   comparison of the two data sets.  It was agreed that that

08:14  **7**   would be done depending on what happens today, this morning,

08:14  **8**   and at a later date.  That still needs to be done.  But

08:14  **9**   there's no question that we don't have data files that were

08:15  **10**  on the virtual machine that are not within Mr. Varani's data

08:15  **11**  set.

08:15  **12**         I'm aware of the production of the government late

08:15  **13**  last night of various reports relating to these clients.

08:15  **14**  I'm going to reserve comment to later as it relates to what

08:15  **15**  those reports show and don't show, and I will leave it at

08:15  **16**  that.

08:15  **17**         THE COURT:  Okay.

08:15  **18**         MR. AVENATTI:  We are in the process of -- due to

08:15  **19**  a computer malfunction, we weren't able to look at any of

08:15  **20**  this data until 4:00 last night at the IRS Office due to a

08:15  **21**  computer misfunction on their end.  But needless to say,

08:15  **22**  it's a lot of information, and there's a lot of different

08:15  **23**  reports that are available now that we have access to the

08:15  **24**  actual date and the software.  There's audit reports.

08:15  **25**  There's entry reports.  There's a bunch of information that

08:15  1    we now have that we did not have from the cold hard page.

08:16  2            THE COURT:  I believe the parties have done what I

08:16  3    requested yesterday.  You've provided me with a sampling of

08:16  4    what's in the collection of documents held by the Privilege

08:16  5    Review Team.  I think that sufficiently informs me to rule

08:16  6    on Mr. Avenatti's motion at 706.

08:16  7            I don't think I need an exhaustive presentation of

08:16  8    exactly what's there.  I think I have enough information to

08:16  9    intelligently rule on 706.

08:16  10           With that said, Mr. Avenatti, would you like to be

08:16  11   heard?

08:16  12           MR. AVENATTI:  I would, Your Honor.  Can I use the

08:16  13   podium?

08:16  14           THE COURT:  Sure.

08:16  15           MR. AVENATTI:  Your Honor, there has obviously

08:16  16   been a fair amount of briefing on this issue and a fair

08:16  17   amount of exhibits.  I'm not going to rehash the entire

08:17  18   timeline of what has gone on over this odyssey of the last

08:17  19   two-plus years, but I do want to bring the Court's attention

08:17  20   to a few important what I would call guideposts.

08:17  21           Number one, on March 25th, 2019, a search warrant

08:17  22   was executed at Ms. Regnier's home.  According to her trial

08:17  23   testimony, she claims that she "probably" told Special Agent

08:17  24   Karlous and AUSA Sagel at that interview on that date about

08:17  25   Tabs.

08:17  1          The Indictment in this case was issued in April of

08:17  2   2019.  In May of 2019 after I retained Mr. Steward as

08:17  3   counsel, he requested all Rule 16 and Brady information.  He

08:17  4   specifically identified the servers as a location where such

08:17  5   information could be found.  That's Exhibits A and B to our

08:18  6   reply on the pending motion at Docket 745.

08:18  7          Assistant U.S. Attorney Julian Andre responded to

08:18  8   those requests on May 24th, 2019, and here is what he said

08:18  9   in particular, Your Honor.  And it's Exhibit C to our reply

08:18  10  at 745.  I've provided a copy for the benefit of the Court.

08:18  11  There should be a packet there.

08:18  12          THE COURT:  Okay.  Thank you.

08:18  13          MR. AVENATTI:  It should be the first document,

08:18  14  May 24th, 2019.  And here is what he said under EA LLP

08:18  15  server: "In connection with the government's investigation,

08:18  16  the Court-appointed Receiver for EA LLP consented to IRS-CI

08:18  17  creating a forensic image of the six digital devices that

08:18  18  comprise the EA LLP server, which were being stored by

08:19  19  MixinIT, a company in Orange County that stored and managed

08:19  20  computer servers.  After creating a forensic image of the EA

08:19  21  LLP server, the EA LLP server was returned to the EA

08:19  22  Receiver.  The government has since obtained a warrant to

08:19  23  search the forensic copy of the EA LLP server for relevant

08:19  24  evidence.  We will produce any relevant evidence seized from

08:19  25  the EA LLP server once the government completes the review

08:19    1    protocols set forth in the search warrant."

08:19    2            That was the representation made by Mr. Andre on

08:19    3    May 24th, 2019, very early on in this case, well over two

08:20    4    years ago.

08:20    5            When he mentioned these forensic images, these are

08:20    6    the forensic images that Mr. Varani testified to during the

08:20    7    trial as having been in the possession of the Department of

08:20    8    Justice computer lab in Washington, D.C.  These are the same

08:20    9    forensic images that Mr. Varani searched yesterday for the

08:20    10   first time for the Tabs data and produced it yesterday

08:20    11   through the Privilege Review Team to the defense.  Those are

08:20    12   the exact same forensic images.

08:20    13           Following this representation by Mr. Andre, the

08:20    14   defense continued to demand copies of the servers and all

08:20    15   Brady information in the case to no avail.

08:20    16           On July 25th, 2019, an interview was conducted of

08:20    17   Ms. Regnier.

08:21    18           THE COURT:  Your Exhibit 1084.

08:21    19           MR. AVENATTI:  1084.  Correct, Your Honor.  The

08:21    20   four most senior individuals from the Prosecution Team were

08:21    21   present for this interview -- Special Agent Karlous, Special

08:21    22   Agent Kim, and both Assistant U.S. Attorneys, Mr. Sagel and

08:21    23   Mr. Andre.

08:21    24           The entire purpose of this call according to the

08:21    25   memorandum was to ask questions regarding the Eagan

08:21  **1**   Avenatti, LLP, server and how client files are created and

08:21  **2**   maintained on the server.  During this call, Your Honor,

08:21  **3**   Ms. Regnier informed all four members of Tabs, not once but

08:22  **4**   twice.  Most importantly, she informed them that the client

08:22  **5**   billing and client accounting was handled through Tabs,

08:22  **6**   quote, "Tabs would be used."  That was July 25th, 2019.

08:22  **7**        A month later -- and this timing is important.  A

08:22  **8**   month after that interview Your Honor denied our motion to

08:22  **9**   compel a copy of the servers.  You only did so after you had

08:22  **10**  been provided repeated assurances by the government that

08:22  **11**  they were going to comply with Brady.

08:22  **12**       In fact, Your Honor's order specifically states:

08:22  **13**  "The government has acknowledged its obligation to produce

08:23  **14**  all documents within the scope of the search warrants, as

08:23  **15**  well as its Brady and Giglio obligations."

08:23  **16**       As of that date that Your Honor made that

08:23  **17**  statement and as of the date of the representations made by

08:23  **18**  the Assistant U.S. Attorneys, they were well aware of the

08:23  **19**  existence and importance of the Tabs data.  Despite that, it

08:23  **20**  was not produced.  Nothing was done to look for it.

08:23  **21**       On November 19, 2019, Special Agent Roberson,

08:24  **22**  Special Agent Karlous, and Assistant U.S. Attorney Sagel had

08:24  **23**  another interview lasting over eight hours with Ms. Regnier.

08:24  **24**       THE COURT:  For the record, that's your

08:24  **25**  Exhibit 1085.

08:24   **1**        MR. AVENATTI:  Correct, Your Honor, 1085.

08:24   **2**        Paragraph 14 reflects that each of those gentlemen

08:24   **3** were advised that there were two systems that were used to

08:24   **4** track expenses, QuickBooks and Tabs.  The data was still not

08:24   **5** produced to the defense, and there does not appear to have

08:24   **6** been any effort whatsoever made to produce it.

08:25   **7**        Your Honor, to be clear, the Tabs data could only

08:25   **8** be exculpatory.  It could never be inculpatory.  It could

08:25   **9** never increase the amount of money that was owed to the

08:25  **10** client.  It could only decrease the amount of money that was

08:25  **11** owed to each of the clients by its very nature because it

08:25  **12** did not track income or revenue.  It only tracked case

08:25  **13** client expenses.

08:25  **14**        I would submit, Your Honor, that is why the

08:25  **15** government never made an effort to produce it or to provide

08:25  **16** it, because by its very nature it was exculpatory.

08:25  **17**        THE COURT:  Well, there could have been other

08:25  **18** reasons why it was exculpatory, but certainly it could be

08:26  **19** exculpatory on that basis.

08:26  **20**        MR. AVENATTI:  It could be exculpatory on that

08:26  **21** basis.  It could be exculpatory on Giglio.  It could be

08:26  **22** exculpatory based on who was working on the case and who had

08:26  **23** costs on the case.  I mean, there's a myriad of reasons why

08:26  **24** or how it could be exculpatory.  I agree.

08:26  **25**        Meanwhile, Your Honor, time and time again we

08:26  **1**  complained that all Brady and Giglio information had not

08:26  **2**  been produced.  And time and time again we were told that

08:26  **3**  all of it had been produced.  I'm not going to go through

08:26  **4**  each and every time we have put it in the papers, but the

08:26  **5**  representations were made to us and this Court repeatedly

08:26  **6**  that all Brady and Giglio information had been produced.

08:26  **7**          In fact, I think on one call, a conference that we

08:26  **8**  had sometime in 2020, Mr. Sagel made the representation

08:26  **9**  there was no Brady.  There was no exculpatory information in

08:27  **10**  the entire case, something that I found to be rather

08:27  **11**  remarkable in light of how much discovery had already been

08:27  **12**  produced in the case.

08:27  **13**          But in any event, after the passage of the Due

08:27  **14**  Process Protection Act, we moved for an order before this

08:27  **15**  Court, and we asked the Court to issue an order directing

08:27  **16**  the government to produce all information required under the

08:27  **17**  DPPA.

08:27  **18**          On January 25th, this Court issued an order at

08:27  **19**  Docket 408, and this order directed the government to

08:27  **20**  produce to the defendant in a timely manner all information

08:28  **21**  or evidence known to the government that is either, one,

08:28  **22**  relevant to the defendant's guilt or punishment; or, two,

08:28  **23**  favorable to the defendant on the issue of guilt or

08:28  **24**  punishment.  The order went on to talk about the

08:28  **25**  consequences for noncompliance.

08:28  **1**      In the event there was any question in the

08:28  **2**  government's mind as to whether the Tabs data and all

08:28  **3**  QuickBooks data needed to be produced, this order made it

08:28  **4**  clear as to what had to be produced, crystal clear.  No Tabs

08:28  **5**  data was produced following this order.

08:29  **6**      The defense subsequently moved for contempt.  One

08:29  **7**  of the items that the defense claimed had not been produced

08:29  **8**  in response to the order was all financial data relating to

08:29  **9**  the expenses of the clients.  The government claimed

08:29  **10** everything had been produced and that we didn't know what we

08:29  **11** were talking about.  I'm paraphrasing.

08:29  **12**     We continued to complain that we were missing

08:29  **13** information, including up through the beginning of the

08:29  **14** trial.  I believe our status report immediately -- final

08:29  **15** status report referenced our concerns in this regard.

08:29  **16**     Then in the middle of trial, it was established

08:30  **17** through cross-examination that the Tabs data was an integral

08:30  **18** part of proving what was owed to the client.  And it's

08:30  **19** important to recognize in my view, Your Honor, how this came

08:30  **20** about.

08:30  **21**     The government admitted Exhibits 48 and 174.

08:30  **22** Exhibit 48 is the cost listing for Johnson, and 174 is the

08:30  **23** cost listing for Barela, at least interim statements.

08:30  **24**     THE COURT:  Draft statements.

08:30  **25**     MR. AVENATTI:  Draft statements.  Correct, Your

08:30   1   Honor.

08:30   2   The defense did not admit those.  The defense did
08:30   3   not seek to use them.  It was the government that
08:30   4   interjected this issue of the costs and expenses first into
08:30   5   the case.

08:30   6   THE COURT:  Well, whether they did it or not,
08:30   7   weren't you entitled to bring that up either in
08:31   8   cross-examination or in your case-in-chief if you decided to
08:31   9   put one on?

08:31   10   MR. AVENATTI:  Absolutely, Your Honor, we would
08:31   11   have been entitled to do that, and we would have been
08:31   12   entitled to use the data.  The only point that I make is
08:31   13   that it was the government that first went down this road of
08:31   14   putting this cost and expense data before the jury.  So
08:31   15   there can be little question at this point that the
08:31   16   government considered it relevant and material.  That's why
08:31   17   they used it.

08:31   18   Now, they then proceeded to use 48 and 174 with a
08:31   19   number of witnesses.  And we attached it as Exhibit A to our
08:31   20   filing last night.  I think there's five or maybe six
08:31   21   witnesses at minimum that they used these two exhibits with,
08:31   22   including Special Agent Karlous, Ms. Regnier, Mr. Barela,
08:31   23   Mr. Johnson, Mr. Arden.  I think that may be all five.  I'm
08:31   24   not certain.

08:31   25   We again demanded the production of the data on

08:32   1   August 12th at the latest.  Nothing happened for eight days,
08:32   2   literally nothing.  The government made no effort to find
08:32   3   out if this data existed and, if so, where it was or how it
08:32   4   could be produced to the defense.
08:32   5        It was not until last Friday when the Court issued
08:32   6   its directive -- its clear directive -- that we started to
08:32   7   get traction and actually get the data produced.  It was
08:32   8   finally produced to the defense yesterday as outlined in the
08:32   9   status report.
08:32   10       We explained to the Court the very limited review
08:32   11   that we have been able to do in the last I guess it's 16
08:32   12   hours or so.  That review continues.  There is a lot of
08:32   13   information to go through, a lot of Tabs information to go
08:32   14   through and a lot of QuickBooks information to go through.
08:33   15       We cited the Court to the Bundy case from the
08:33   16   Ninth Circuit.  I'm sure Your Honor has read the case.  For
08:33   17   the court reporter, it's at 968 F.3d 1019 (Ninth Circuit
08:33   18   2020).
08:33   19       There are many parallels, Your Honor, between this
08:33   20   case and the Bundy case.  But what the Ninth Circuit made
08:33   21   clear in Bundy is the materiality standard is a
08:33   22   post-conviction appellate standard.  Now, even under that
08:33   23   standard, I think this information qualifies easily.  But in
08:33   24   any event, we don't have to meet that standard.  The
08:33   25   question is was this information relevant?  It most

08:34   1   certainly was.  And the question is was it favorable?  It
08:34   2   most certainly was.
08:34   3          Bundy makes clear -- and I will cite Olson and
08:34   4   Price as well, two other Ninth Circuit cases -- that indeed
08:34   5   even if information is not favorable, if it would cause the
08:34   6   defense to change the trial strategy or to use a different
08:34   7   strategy or to abandon a strategy even, that it is required
08:34   8   to be produced pursuant to Rule 16 and Brady and Giglio.
08:34   9          There is no question, Your Honor, this data should
08:34  10   have been produced pursuant to Brady and Giglio.  The
08:34  11   prejudice is substantial as outlined in our report of last
08:34  12   night.
08:34  13          THE COURT:  I think you have very credibly
08:34  14   outlined what use you could have made of that information.
08:35  15          MR. AVENATTI:  Then at this point I will not go
08:35  16   further except to say, Your Honor, we still don't know the
08:35  17   full extent of the prejudice because we haven't been able to
08:35  18   review all of the data.
08:35  19          There is little question, Your Honor, we cannot
08:35  20   proceed with this trial as it stands.  We need time to
08:35  21   review this data.  It changes the entire approach of the
08:35  22   case from the defense perspective.  We would have to recall
08:35  23   at least five, if not seven, witnesses.  The government's
08:35  24   expert would have to be struck.
08:35  25          Again, I'm not going to get into how prejudicial

08:35 **1**  this has been.  It is beyond substantial.

08:35 **2**       THE COURT:  You're not suggesting that this trial

08:35 **3**  could proceed in some fashion?

08:35 **4**       MR. AVENATTI:  No, Your Honor, I do not believe

08:36 **5**  that it is possible for this trial to proceed in this

08:36 **6**  fashion for many, many reasons.

08:36 **7**       This information should have been produced two

08:36 **8**  years ago.  It was not.  There are exhibits now in the case

08:36 **9**  that are demonstrably false.  There are opinions that have

08:36 **10**  been put before the jury that are false, that are not

08:36 **11**  accurate, namely, because the government never had the

08:36 **12**  expert look at any of the Tabs data.

08:36 **13**       The expert, despite claiming to be an expert,

08:36 **14**  never asked for the actual Tabs data, never asked for the

08:36 **15**  cost information, which is frankly shocking.

08:36 **16**       For each of these reasons, Your Honor, I believe

08:36 **17**  that the motion for relief requested in the motion at 706

08:36 **18**  should be granted.

08:37 **19**       Now, Brady speaks of the fact that whether the

08:37 **20**  government acted in good faith or bad faith is really not a

08:37 **21**  consideration when the Court decides motions such as 706.

08:37 **22**  I'm not going to spend time casting aspersions on the

08:37 **23**  government, et cetera, because I don't think it's

08:37 **24**  relevant --

08:37 **25**       THE COURT:  I agree.

08:37   1          MR. AVENATTI:  -- frankly.  What I will say is

08:37   2   this.  This was not an isolated, one-time failure.  This was

08:37   3   not one oversight that occurred in the heat of trial or in

08:37   4   the heat of preparing for trial.  There was a repeated

08:37   5   failure to comply with basic constitutional requirements and

08:37   6   the basic requirements of Bundy, Price, and Olson, and

08:38   7   others by the government over a period of years.

08:38   8          THE COURT:  Well, I want to focus on the Tabs.  As

08:38   9   you recall, you've made a number of motions for a mistrial

08:38   10  with respect to allegedly missing documents.  On a number of

08:38   11  those, I found that the claim wasn't substantiated when the

08:38   12  government made a full showing.  So I prefer to concentrate

08:38   13  on Tabs and QuickBooks.

08:38   14         MR. AVENATTI:  Your Honor, I didn't mean to

08:38   15  suggest otherwise.  When I was speaking of a repeated

08:38   16  failure, I'm speaking strictly in the context of Tabs and

08:38   17  QuickBooks.  I'm not dealing with the other issues that we

08:38   18  have talked about, Jencks and things of that nature.

08:38   19         As to the interview notes that I placed before the

08:38   20  Court, Your Honor is clearly familiar with them.  You know

08:38   21  them by exhibit numbers.  They demonstrate how long this

08:38   22  problem has gone on and the repeated failures of the

08:39   23  government.

08:39   24         I think for all of those reasons, Your Honor, I

08:39   25  would ask that the Court grant defendant's motion at 706.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:39    1    Unless the Court has any further questions --

08:39    2            THE COURT:  No.  Thank you.

08:39    3            Mr. Sagel, wouldn't you agree that the financial

08:39    4    data goes to the heart of this case?

08:39    5            MR. SAGEL:  Partially, and I say that in the

08:39    6    sense --

08:39    7            THE COURT:  Well, if we look to the way you've

08:39    8    summed up the case with Mr. Drum, if we go to Exhibits 430

08:39    9    to 457, and 457 especially, he has analyzed the financial

08:39   10    data available to him to establish the losses on the part of

08:39   11    each of the client victims, and that's almost pure financial

08:40   12    data.

08:40   13            MR. SAGEL:  That's why I say partially.  I will

08:40   14    start with that in the sense of with three of the victims,

08:40   15    while he analyzes and does charts showing what probably

08:40   16    based on the finances should have been paid to them and what

08:40   17    they're entitled to and so forth, part of the analysis is

08:40   18    zero dollars of their settlement money goes to them, as well

08:40   19    as $4 million of Ms. Phan's money does not go to her.

08:40   20            And before anything ever happens with determining

08:40   21    the costs, expenses, and so forth --

08:40   22            THE COURT:  Are you suggesting I grant relief with

08:40   23    respect to the claims of some victims but not as to others,

08:40   24    for example, Ms. Phan?

08:40   25            MR. SAGEL:  No, Your Honor.  And I can go through

08:40  1  some of the finances, too, with regards to what in a short
08:40  2  period of time we were able to find, which I don't believe
08:40  3  substantiates the claims that were made both last night and
08:41  4  today.  I think there's other issues, too, that I would like
08:41  5  to address.  But when it comes to the finances of the costs
08:41  6  and the expenses, it's to put in perspective to the jury
08:41  7  what was going on, how the defendant was doing it, and that
08:41  8  these people were entitled to money.
08:41  9          THE COURT:  But if that perspective were incorrect
08:41  10  because not all of the data was taken into account, wouldn't
08:41  11  that potentially provide a basis to question everything
08:41  12  Mr. Drum did, to question across the board the accuracy of
08:41  13  the government's financial presentation?
08:41  14          MR. SAGEL:  To question, yes, but I guess I would
08:41  15  point to several things that --
08:41  16          THE COURT:  Well, doesn't the defendant have a
08:41  17  right to examination, to question the financial analysis
08:41  18  made by the government?
08:41  19          MR. SAGEL:  He does, Your Honor, but I think we
08:41  20  are skipping several steps in that process, including what
08:41  21  the finances even show.  I would like to address that,
08:41  22  because what he's saying in broadbrush wasn't available to
08:42  23  him is not accurate.
08:42  24          From a very quick review of what was in Tabs for
08:42  25  these clients as of the last reports, they support exactly

08:42 **1**    what Mr. Drum testified to.  And even more so --

08:42 **2**         THE COURT:  Support in a generalized fashion or

08:42 **3**    support for the analysis he actually makes?  If the costs

08:42 **4**    that he calculated were incorrect --

08:42 **5**         MR. SAGEL:  They were not.  They were not, and I

08:42 **6**    have it right here, Your Honor, and I can walk through each

08:42 **7**    and every one of them.

08:42 **8**         THE COURT:  I think the defendant was entitled,

08:42 **9**    even if they are in fact correct -- if there is evidence out

08:42 **10**   there that would have allowed the defendant to make a

08:42 **11**   challenge under any theory, I think the defendant was

08:42 **12**   entitled to have the data to do that, even if in some other

08:42 **13**   fashion you can show prima facie that it was correct.  In

08:42 **14**   other words, I think he is entitled to make non-winning

08:43 **15**   challenges as well as winning challenges.  The point is he

08:43 **16**   is entitled to that data to make the challenges.

08:43 **17**        MR. SAGEL:  So let me go backwards to that first.

08:43 **18**   The defendant on two occasions that he took advantage of --

08:43 **19**   and on more occasions, as many as he wanted, had access to

08:43 **20**   the virtual servers.

08:43 **21**        THE COURT:  Sir, that doesn't convince me.  It's

08:43 **22**   the obligation of the government to produce Brady, Giglio,

08:43 **23**   et cetera.  He is entitled to sit back and wait for you to

08:43 **24**   serve it up on a platter.  Agreed?

08:43 **25**        MR. SAGEL:  If it's in our possession, yes.

08:43   **1**        THE COURT:  And for this discussion -- go ahead.

08:43   **2**        MR. SAGEL:  That's the part when he talks about

08:43   **3**   what Brady says or what he talks about Bundy says or Price

08:43   **4**   or Olson, any of the cases, is that it skips past what's in

08:44   **5**   our possession.

08:44   **6**        We cannot -- and I can focus on various different

08:44   **7**   times in the case, including when he starts talking about

08:44   **8**   August 12th to the present.  We as the Prosecution Team do

08:44   **9**   not have authority to go into the server that the search

08:44   **10**  warrants -- we are beholden on what comes to us in the

08:44   **11**  process, what's in our possession.

08:44   **12**       At the earliest time --

08:44   **13**       THE COURT:  Well, I think you've made a good-faith

08:44   **14**  showing that the Prosecution Team produced all of the Tabs

08:44   **15**  data that it had at Docket No. 737 and the attachment.  I

08:44   **16**  believe you put before the Court and the defendant the

08:44   **17**  totality of the Tabs data that the Prosecution Team had.

08:44   **18**       MR. SAGEL:  Yes, Your Honor.  And also to

08:44   **19**  basically put before the Court and the defendant over -- if

08:44   **20**  I'm doing my math right -- over a year ago of what was in

08:45   **21**  our possession with regard to costs and expenses,

08:45   **22**  including --

08:45   **23**       THE COURT:  Your possession, meaning the

08:45   **24**  Prosecution Team?

08:45   **25**       MR. SAGEL:  The Prosecution Team's possession.  If

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:45 **1** there was a question that there was something was missing --

08:45 **2** this was even discussed at the specific hearing where Your

08:45 **3** Honor said if there is something specific, you file a Motion

08:45 **4** to Compel.

08:45 **5**     Without us having access to the databases

08:45 **6** themselves and without having access to the servers, we are

08:45 **7** in a position where this is what we have.  We have provided

08:45 **8** everything we have.  This is what we have seen.  If there is

08:45 **9** something missing, there is a mechanism for the defendant to

08:45 **10** say this is pertinent information, and I need it.

08:45 **11**     THE COURT:  Don't the events of the last 72 hours

08:45 **12** suggest that there was a mechanism to determine whether the

08:45 **13** Privilege Review Team in its capture of the subpoenaed

08:45 **14** documents had Tabs data?

08:46 **15**     MR. SAGEL:  By whom?

08:46 **16**     THE COURT:  By the Prosecution Team.  What do you

08:46 **17** make of Mr. Andre's statement in his letter of May 4th,

08:46 **18** 2019:  "In connection with the government's investigation,

08:46 **19** the Court-appointed Receiver for EA LLP consented to IRS-CI

08:46 **20** creating a forensic image of the six digital devices that

08:46 **21** comprise the EA LLP server, which were being stored by

08:46 **22** MixinIT, a company in Orange County that stored and managed

08:46 **23** computer servers.  After creating a forensic image of the EA

08:46 **24** LLP server, the EA LLP server was returned to the EA

08:46 **25** Receiver.  The government has since obtained a warrant to

08:46 **1** search the forensic copy of the EA LLP server for relevant

08:46 **2** evidence.  We will produce any relevant evidence seized from

08:46 **3** the EA LLP server once the government completes the review

08:46 **4** protocols set forth in the search warrant."

08:47 **5**      It sounds like this is the same forensic copy I

08:47 **6** think we've been talking about here.

08:47 **7**      MR. SAGEL:  Correct.  So to respond to both that

08:47 **8** statement and --

08:47 **9**      THE COURT:  It seems that Mr. Andre was

08:47 **10** acknowledging an obligation to go beyond what you had and to

08:47 **11** investigate this forensic copy.

08:47 **12**      MR. SAGEL:  I don't know that I read it that way.

08:47 **13** "We will produce any relevant evidence seized once the

08:47 **14** government completes the review protocols set forth in the

08:47 **15** search warrant."  The review protocols does it in a way

08:47 **16** where it provides it to him.

08:47 **17**      I would also point out, Your Honor, if you turn to

08:47 **18** the following page of this same section which discusses the

08:48 **19** Eagan Avenatti servers, the last paragraph says:  "We would

08:48 **20** also be glad to discuss alternative procedures to ensure

08:48 **21** that you are able to access any information on the EA LLP

08:48 **22** server that you believe may be relevant to your client's

08:48 **23** defense, such as providing you and your client an

08:48 **24** opportunity to review the forensic image of the EA LLP

08:48 **25** server at the IRS-CI's Office."

08:48   1        THE COURT:  Would access free you of your
08:48   2   obligation under Brady to produce Brady material?  Does
08:48   3   access free you of your Brady obligation to produce Brady
08:48   4   material?
08:48   5        MR. SAGEL:  Under this circumstance, I have to
08:48   6   believe yes.  And the reason why is because if it's not in
08:49   7   our possession, we -- I don't have -- I have a Brady
08:49   8   obligation to material that I am in the possession of that I
08:49   9   can provide.  I'm not possessing --
08:49  10        THE COURT:  Well, suppose for whatever reason the
08:49  11   Taint Team, the Privilege Review Team, acting in absolute
08:49  12   good faith just misses a substantial volume of relevant data
08:49  13   that should have been passed over to the Prosecution Team.
08:49  14   Don't the sins of one part of the government, meaning the
08:49  15   Taint Team if my facts are accurate, fall upon the
08:49  16   Prosecution Team in terms of the Brady obligation?
08:49  17        MR. SAGEL:  If it did not exist at all, I would
08:49  18   follow your analogy.
08:49  19        THE COURT:  But hasn't it been established that
08:49  20   there does exist relevant Tabs material and potentially
08:49  21   QuickBooks materials that the Privilege Review Team had?
08:50  22        MR. SAGEL:  I'm not sure I know the answer to that
08:50  23   fully, but I don't believe that's correct.
08:50  24        THE COURT:  Well, I believe the representations
08:50  25   Mr. Avenatti has made from an initial review citing the

08:50  **1**    specific pieces of evidence undermine that position.

08:50  **2**         MR. SAGEL:  Well, to the specific -- that's why I

08:50  **3**    would like to get into some of the specific -- I'm not sure

08:50  **4**    that there are specifics, and I have some examples of

08:50  **5**    specifics that that does undermine.

08:50  **6**         May I proceed with that?

08:50  **7**         THE COURT:  Please.

08:50  **8**         MR. SAGEL:  With regards to Exhibit 48, Your

08:50  **9**    Honor, defendant references that he believes -- we put this

08:50  **10**   in through multiple witnesses, and it's demonstrably false.

08:50  **11**        Let me start with the fact that I think several of

08:50  **12**   the witnesses -- we never were saying it was accurate.  It

08:50  **13**   was the costs that he utilized to withdraw checks in the

08:51  **14**   same amount.  Whether it was interim, whether it was -- this

08:51  **15**   was what he was e-mailed and he utilized to withdraw money.

08:51  **16**        THE COURT:  Well, if he used inaccurate input, at

08:51  **17**   a minimum isn't he -- you're saying never mind whether it's

08:51  **18**   accurate or not.  This is what he relied upon.  Fine.  But

08:51  **19**   at a minimum would he not be subject to cross-examination if

08:51  **20**   it were shown that that data was inaccurate or outdated; or,

08:51  **21**   alternatively, under an Daubert analysis, it wasn't

08:51  **22**   reliable?

08:51  **23**        MR. SAGEL:  You're talking about Mr. Drum now?

08:51  **24**        THE COURT:  Right.

08:51  **25**        MR. SAGEL:  Correct.  Mr. Drum specifically said

08:51 **1** and testified to that his analysis is based on the costs and

08:51 **2** expenses of the material up to February 5th after the

08:51 **3** settlement money came in based on all the records that were

08:51 **4** there at the time.  He was cross-examined on whether or not

08:52 **5** he included -- everything that was included after that date.

08:52 **6** There was extensive cross-examination.

08:52 **7** If you look -- and I can show you the Tabs reports

08:52 **8** that are the, quote/unquote "most current," which still show

08:52 **9** drafts where the defendant refers to what was done.  They

08:52 **10** are all loan payments and payments to Mr. Johnson from four

08:52 **11** months and later after his settlement.

08:52 **12** There are no costs and expenses to the case.  They

08:52 **13** are payments for his living expenses, his $1,900 payments to

08:52 **14** him, and FedEx expenses to send him his checks.  There are

08:52 **15** no costs and expenses for the case.

08:52 **16** And even the $27,000 or $37,000 he dropped in a

08:52 **17** footnote is even identified as basically the living expense

08:52 **18** or medical expense to his new living center.  I would have

08:52 **19** to look it up, but it's seven months after the settlement

08:53 **20** when he moves into his new housing facility, Sunrise Living.

08:53 **21** These are not costs and expenses of the case.  These are

08:53 **22** what he's paying Mr. Johnson after he lied to him.

08:53 **23** There are no -- and I can provide Your Honor the

08:53 **24** Tabs data for Mr. Johnson.  I can do it for Mr. Barela, and

08:53 **25** I can do it for Ms. Gardner.  I would like to do that so

08:53  1    that Your Honor has the full --

08:53  2            THE COURT:  Wait a wait.  There is no Tabs data

08:53  3    for Ms. Gardner in the record.  You didn't offer any

08:53  4    support --

08:53  5            MR. SAGEL:  We didn't have it.  I agree.  And what

08:53  6    I'm saying is what he's finding --

08:53  7            THE COURT:  Well, isn't that even more egregious

08:53  8    if it's out there --

08:53  9            MR. SAGEL:  No, because --

08:53  10           THE COURT:  Not if it's perhaps outdated or

08:53  11   mistaken but no Tabs data?  And there's no question there

08:53  12   were costs for Ms. Gardner.

08:53  13           MR. SAGEL:  We used QuickBooks for her, and we

08:53  14   used e-mails from Filippo Marchino who said he paid all the

08:53  15   expenses in the case.  And the Tabs data support is even

08:53  16   less than what we gave him credit for.  But the expenses we

08:53  17   gave him credit for under QuickBooks and Filippo Marchino or

08:54  18   whatever are greater than what's in Tabs.

08:54  19           With Johnson, there is nothing.  I can walk

08:54  20   through each and every one of them.  There is nothing after

08:54  21   February 3rd or 4th, which was before 2015 that relates to

08:54  22   the case.  They are all payments to Mr. Johnson's for his

08:54  23   living expenses, which are even itemized as such in his

08:54  24   data.

08:54  25           The Tabs data for the years of 2012 or '11 or '10

08:54  1  or whatever the start date to February 4th, 2015, are

08:54  2  identical.  The only difference -- and when he talks about

08:54  3  these new transactions, they are paying the loan payments

08:54  4  and the living expenses for Mr. Johnson.

08:54  5      With regards to Mr. Barela, the only difference --

08:54  6  and I can show you this, too, and I have them printed out --

08:54  7  the only difference when you look at the two exhibits that

08:54  8  the government introduced at trial, 174 and 193, 174 is the

08:55  9  draft Barela bills as of 12/19/2017.

08:55  10     Exhibit 193 is Ms. Regnier's e-mail, which she

08:55  11  says are the total costs of the Barela matter to take out a

08:55  12  check for $111,113.22.  The updated Barela Tabs matches to

08:55  13  the penny 193, $111,113.22, exactly what Ms. Regnier

08:55  14  testified to, that the reason for the difference was the

08:55  15  costs that came through in those several weeks.

08:55  16     And the Tabs data supports exactly what was

08:55  17  introduced at trial.  There is nothing in this data that

08:55  18  shows prejudice to the defendant.  There is nothing in this

08:55  19  data that shows anything different at this trial, especially

08:56  20  as it relates to Mr. Drum and it relates Mr. Johnson.  He

08:56  21  even said (a) what his analysis was based on up through when

08:56  22  the settlement comes because that's when the costs would be

08:56  23  there.

08:56  24     He was cross-examined extensively as to whether or

08:56  25  not there could have been costs after the case settled that

08:56   1   he didn't include.  He said that's correct if it existed.
08:56   2   There is nothing to show it existed, Your Honor.
08:56   3           And we hear and we see broad statements about what
08:56   4   this Tabs data is and how concerning they are and so forth.
08:56   5   But the reason he did not show you the -- and I can provide
08:56   6   them for the record -- is because they matched exactly what
08:56   7   was presented at trial.
08:56   8           When it comes to Geoffrey Johnson, the new stuff
08:56   9   doesn't change anything at trial.  It actually supports
08:56  10   what's already been introduced at trial.
08:56  11           Similarly, there was no Tabs data for Michelle
08:57  12   Phan and Long Tran for the very reasons that the evidence at
08:57  13   trial has also established.
08:57  14           THE COURT:  That would delay their contracts a
08:57  15   little bit.
08:57  16           MR. SAGEL:  Correct.  And the only other data in
08:57  17   Tabs that he has referenced repeatedly and that he
08:57  18   references how there are all these other transactions, some
08:57  19   of his lawyers kept time sheets, but these weren't
08:57  20   contingency cases.  So the time sheets are irrelevant.  And
08:57  21   when you look at even some of the Tabs sheets, for example,
08:57  22   with Mr. Barela, they will have John Arden's time and then
08:57  23   how much he would charge if there was an hourly case.  But
08:57  24   then it's not there because it wasn't an hourly case.  So
08:57  25   they only used the expenses, costs, and so forth.

08:57  1          He references at least one client who he did other

08:57  2     work for.  You now have Tabs data to see the work that was

08:57  3     done on the other case.  That other case was this Cafe

08:58  4     Perche case with Mr. Barela.  It was nine and ten months

08:58  5     after Barela's settlement money came in.  So it's hard to

08:58  6     see how that relates to why he didn't get his money nine and

08:58  7     ten months earlier for $944.  So all these other costs were

08:58  8     from another case which was ten months after he should have

08:58  9     provided Mr. Barela his money, $900.

08:58  10          The numbers and the Tabs records do not support

08:58  11    what is being told to the Court.  I fully appreciate what

08:58  12    Your Honor is saying.  I'm not doubting any of the concerns

08:58  13    Your Honor has.  And I will say to you that every time along

08:58  14    the way --

08:58  15          THE COURT:  So your position is my concerns are

08:58  16    baseless?

08:58  17          MR. SAGEL:  No, I'm not saying that, Your Honor.

08:59  18    I am saying that with a review of what Your Honor has taken

08:59  19    a very cautious approach to in allowing him to gain access

08:59  20    to these reports -- with a review of those records, we can

08:59  21    now see why he never asked for these things for two years,

08:59  22    because they don't support any further costs and expenses on

08:59  23    these cases, and they don't support any reduction.

08:59  24          And for the same reason that we put in the

08:59  25    recommended jury instruction the dollar amounts, we don't

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:59 **1**   have to prove that for wire fraud.  What we have to prove is

08:59 **2**   that the defendant obtained money and property by false

08:59 **3**   statements, representations, and material omissions.  That

09:00 **4**   happened in each and every one of these cases.  Whether he

09:00 **5**   was entitled at the end to $1,810,000, $1,910,000, or a

09:00 **6**   number in between, he has had the data for that.

09:00 **7**       His request for Brady and which we've responded

09:00 **8**   every time -- everything in our possession we've provided.

09:00 **9**   If we are missing something, please let us know.  We have

09:00 **10**  even provided the example.  If there was data, we would

09:00 **11**  extract QuickBooks for him.  He has had QuickBooks since

09:00 **12**  2019.

09:00 **13**      If there was something from he thought from the

09:00 **14**  electronic files were missing, he had two years to ask us

09:00 **15**  what we didn't provide which he had access to.  Again, what

09:00 **16**  we don't know as we sit here is he was produced I think a

09:00 **17**  million more files than we were, or whatever the number was,

09:00 **18**  400,000.  We will never know what's in that delta either.

09:01 **19**  I'm not saying it exists, or I'm assuming not because it

09:01 **20**  hasn't been said, but we don't have access to that.  He has

09:01 **21**  had access to this information, and everything that's in our

09:01 **22**  possession has been provided.

09:01 **23**      To use just one example, to compare this to Bundy,

09:01 **24**  which he did again here today -- in Bundy, these were

09:01 **25**  videotapes that were in the government's possession at all

09:01   **1**    times, and they didn't turn it over.  It's night and day to

09:01   **2**    what we're talking about here.

09:01   **3**            The Tabs data -- all we have were the printout

09:01   **4**    sheets that came through the process.  We provided them to

09:01   **5**    him and let him know this is what we have for costs and

09:01   **6**    expenses, along with QuickBooks.

09:01   **7**            In March of 2020 when we did the expert disclosure

09:01   **8**    on John Drum, this is what he's relying upon.  These are the

09:01   **9**    documents that we have that we provided that he is relying

09:01   **10**   upon.  As to all these things, the government has been

09:02   **11**   extremely transparent of what we have, what we're using, and

09:02   **12**   what we've provided, not just to the defendant but by June

09:02   **13**   of 2020 to the Court.

09:02   **14**           At no point were we hiding anything that we didn't

09:02   **15**   believe -- and as it relates to the Tabs data, which

09:02   **16**   Ms. Regnier testified to, QuickBooks versus Tabs.

09:02   **17**   QuickBooks was tied to the bank records when it was paid.

09:02   **18**   Tabs was not.

09:02   **19**           **And you have seen that with regards to**

09:02   **20**   **Mr. Johnson, they double counted a lot of things because**

09:02   **21**   **they actually didn't pay.  It was how they kept track of**

09:02   **22**   **costs but didn't actually pay the costs.**

09:02   **23**           So there's an extra level of why he could also

09:02   **24**   scrutinize these records, which maybe would not change

09:02   **25**   anything because they aren't tied automatically to bank

09:02  **1**  records.

09:02  **2**       But that's I think tertiary of what was beyond the

09:02  **3**  issue.  I do believe -- one second, Your Honor.

09:03  **4**       (Government counsel conferring)

09:03  **5**       MR. SAGEL:  I will take a cue from the Court, but

09:03  **6**  I obviously have printouts with regards to Johnson, Barela,

09:03  **7**  and Gardner.  I would like to either provide them to the

09:03  **8**  Court and go over it with Your Honor now or be afforded the

09:03  **9**  opportunity to lodge it with the Court so that Your Honor

09:03  **10**  can see what is there to make the relevant and proper

09:04  **11**  inquiry to show the analysis that is needed under Brady, so

09:04  **12**  that when making the Brady analysis or the Brady test for

09:04  **13**  prejudice of what would be useful to the defendant, you

09:04  **14**  would be able to see with this that nothing in this changes

09:04  **15**  what did happen and what was provided to the defendant and

09:04  **16**  what he could have used, whether it be cross-examination of

09:04  **17**  Drum, whether it be for use with Ms. Regnier, which he did.

09:04  **18**       **He cross-examined her that you can't know all the**

09:04  **19**  **right things unless you have both.  He fully did that.  He**

09:04  **20**  **did that with several witnesses.  He wants to call more for**

09:04  **21**  **that very reason.**

09:04  **22**       When you really do the prejudice analysis under

09:04  **23**  the Brady prong -- again, there are other parts to the

09:05  **24**  equation that I would not agree have been established

09:05  **25**  either.  But when you look at these -- that's why I am

09:05   **1**   asking the Court if you want me to go over some of them in

09:05   **2**   examples now or to lodge with the Court --

09:05   **3**        THE COURT:  I don't think that's necessary.  If

09:05   **4**   you want to file anything in addition, that's fine.  I

09:05   **5**   believe it's my intention to hear Mr. Avenatti in rebuttal

09:05   **6**   and rule.

09:05   **7**        MR. SAGEL:  If I could just cover a couple of

09:05   **8**   other things very quickly or give me one second to make

09:05   **9**   sure.

09:05   **10**        (Pause in proceedings)

09:05   **11**        MR. SAGEL:  Your Honor, I've obviously been before

09:05   **12**   Your Honor for a long time, so I know that you are not

09:05   **13**   sitting there without knowing what I'm going to say.  But I

09:05   **14**   feel the need for the record that I want to make a couple of

09:05   **15**   comments.

09:05   **16**        With regards to Your Honor on two occasions

09:06   **17**   denying the request for full access to the server -- and I

09:06   **18**   think the representation was it was only because of the

09:06   **19**   government's representation -- I don't think that accurately

09:06   **20**   reflects what happened in both 2019 and 2020.

09:06   **21**        Obviously we represented that anything that was

09:06   **22**   Brady or Giglio in our possession we would turn over, as we

09:06   **23**   did.  But the servers didn't belong to him.  Your Honor gave

09:06   **24**   him the -- mentioned on multiple occasions his availability

09:06   **25**   and access to them, and he either at one point took no

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:06  **1**   advantage of it and the other time saying what he chose on

09:06  **2**   his own to do.  He still had the mechanism.

09:06  **3**          The comments about how Tabs could only be

09:06  **4**   exculpatory, again, this is a statement that's made without

09:06  **5**   referencing the Tabs because they are not exculpatory.  If

09:06  **6**   you want to say they could have been used and would have

09:06  **7**   been used, fine.  The best case scenario is at least to look

09:07  **8**   for it, but they don't change the analysis, especially with

09:07  **9**   regards to what the witnesses specifically testified to.

09:07  **10**  I'm going to conclude with two points, Your Honor.

09:07  **11**  Our special agent was at the virtual server last night for I

09:08  **12**  believe about two hours, maybe less.  And through the

09:08  **13**  virtual servers, he was able to find in there with no

09:08  **14**  experience with Tabs any and all of the Barela items, the

09:08  **15**  Johnson items, the Gardner items, and the lack thereof.  It

09:08  **16**  did not take very long at all to find each and every one of

09:08  **17**  them specific to the client to be able to print out any and

09:08  **18**  all of the related documents that show what they show.

09:08  **19**         It is not a voluminous, time-consuming process.

09:08  **20**  And when we mention the 6,000 files or whatever the numbers

09:08  **21**  are, that's the entirety of the law firm.  That's not

09:08  **22**  Johnson, Barela, Gardner, Phan, and Tran.  It will not

09:08  **23**  require a review of 6,000 client files to see what is

09:09  **24**  relevant for the specific clients.

09:09  **25**         With regards to -- one second, Your Honor.

09:09  **1**           (Government counsel conferring)

09:09  **2**           MR. SAGEL:  And then my final thought, comment,

09:09  **3**   position, is he says what would be of value to him, what

09:09  **4**   would be -- I think his comment was it was the government

09:09  **5**   who interjected costs and expenses in this case.  The

09:10  **6**   government was the one who went down this road, and it's

09:10  **7**   just now that he has to respond.

09:10  **8**           I will respond in this way, Your Honor, twofold.

09:10  **9**   One, his opening statements were when he created the chart

09:10  **10**  where he showed how you need to calculate the expenses.  He

09:10  **11**  has known from -- his defense position from minute one in

09:10  **12**  his opening statement is this is what is necessary.  This is

09:10  **13**  what is necessary to calculate the expenses, the total

09:10  **14**  costs, and so forth.

09:10  **15**          So this isn't anything new.  He has always known

09:10  **16**  what it is and what was going on.  These exhibits and

09:10  **17**  documents that have been in our possession have been

09:10  **18**  provided to him well long before this.  So he still has that

09:10  **19**  opportunity.  He's still in his defense case-in-chief to do

09:10  **20**  what he needs to do to utilize these, to call back John Drum

09:11  **21**  to continue his cross-examination, to continue to do

09:11  **22**  whatever he needs to do.

09:11  **23**          If Your Honor believes a short recess is necessary

09:11  **24**  for that, Your Honor can grant him that.  But there is no

09:11  **25**  reason why this jury who has heard the evidence for as long

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:11  1    as they have heard the evidence with regards to what has
09:11  2    been on the table from the inception -- that anything other
09:11  3    than a short recess is needed to provide him the opportunity
09:11  4    to do whatever he needs to do if Your Honor even believes a
09:11  5    short recess is necessary.
09:11  6          Your Honor would need to have found an actual
09:11  7    violation I believe to get to some of the remedies he is
09:11  8    asking for.  I believe that the record does not show that at
09:11  9    all including, as Your Honor has mentioned, whether or not,
09:11  10   (a) it's in anybody's possession or anybody has acted in bad
09:11  11   faith or --
09:11  12         THE COURT:  Bad faith isn't necessary.
09:12  13         MR. SAGEL:  It's not necessary --
09:12  14         THE COURT:  And I'm not prepared on this record to
09:12  15   find that you were inaccurate when you said that the
09:12  16   Prosecution Team has been transparent.  To the extent of its
09:12  17   knowledge, I believe that's an accurate statement --
09:12  18   accurate to the extent of its knowledge.
09:12  19         MR. SAGEL:  I guess where I respond to Your Honor
09:12  20   in that regard is when you look at the cases that are being
09:12  21   cited and what the remedies are being sought both by the
09:12  22   defendant or in the cases he references, they are --
09:12  23         THE COURT:  I think I have your position.  Thank
09:12  24   you.
09:12  25         MR. SAGEL:  Thank you, Your Honor.

09:12  **1**      THE COURT:  Mr. Fitzgerald, do you want to say
09:12  **2**  something?
09:12  **3**      MR. FITZGERALD:  Yes, I do, Your Honor.  The Court
09:12  **4**  is going to rule.  I need to have before it in the record
09:12  **5**  certain very important facts from the Privilege Review side
09:13  **6**  of the case.
09:13  **7**      The summary of that is to the extent that this
09:13  **8**  Court believes this is a classic Brady case, to the extent
09:13  **9**  that the Court believes that this case is controlled by
09:13  **10**  Bundy, with all due respect, the Court is wrong.  It is
09:13  **11**  wrong on the facts, and it is wrong on the law.
09:13  **12**      Let me start with the facts because that informs
09:13  **13**  why the Court is wrong on the law.  The facts are --
09:13  **14**      MR. AVENATTI:  Your Honor, I'm going to interpose
09:13  **15**  an objection because it's the government who has just
09:13  **16**  opposed the motion.  If Mr. Fitzgerald is here, I don't
09:13  **17**  understand the context of these statements.  This does not
09:13  **18**  sound like this is a factual discussion about what happened
09:13  **19**  with the Privilege Review Team.  Mr. Fitzgerald should not
09:14  **20**  be advocating for either side under these circumstances.
09:14  **21**      THE COURT:  I agree.  Mr. Fitzgerald is here to
09:14  **22**  bring the facts to the Court, not argue the law.
09:14  **23**      MR. FITZGERALD:  Very well, Your Honor.  I will
09:14  **24**  forego the legal part of it, but there are other facts as
09:14  **25**  opposed to just what has happened in the last 36 hours that

09:14   **1**   I think bear directly on the legal issues that are before

09:14   **2**   the Court.

09:14   **3**             THE COURT:  Please.

09:14   **4**             MR. FITZGERALD:  Those are the Privilege Review

09:14   **5**   Team really had two tasks.  The one that we have talked

09:14   **6**   about before -- for example, back in October with clawback

09:14   **7**   documents was taking the material that was found and

09:14   **8**   determining what the privilege consequences were and sending

09:14   **9**   it to the Prosecution Team or sending it to the defense.

09:15   **10**             But the other part that has turned out really in

09:15   **11**   the long-run I think to be more important and also more

09:15   **12**   difficult from my perspective is that we ended up on the

09:15   **13**   Privilege Review side being responsible for a major part of

09:15   **14**   the investigation of the case post-Indictment, namely,

09:15   **15**   making sure that the search warrants were conducted

09:15   **16**   correctly.

09:15   **17**             So we were responsible -- putting the digital

09:15   **18**   things aside, it would be as if we were then responsible to

09:15   **19**   send agents out to a house to seize things that were allowed

09:15   **20**   under the search warrant.  And it turned out in retrospect

09:15   **21**   that the things in the attic weren't seized.  And once they

09:16   **22**   weren't seized, then they are not part of the case.

09:16   **23**           **I don't mean that to make a distinction between**

09:16   **24**   **what the Prosecution Team knew and what I knew.  Obviously**

09:16   **25**   **for purposes of Brady, we can't rely on that distinction,**

09:16   **1**   **and we are not doing that.  But we can rely on the**
09:16   **2**   **distinction between things that were seized and things that**
09:16   **3**   **were not seized.  The things that were seized under the**
09:16   **4**   **search warrant were the things that went through filters,**
09:16   **5**   **went to the relativity database, were presented to a team of**
09:16   **6**   **agents who worked very diligently and as hard as they could**
09:16   **7**   **to fulfill the Court's reasonable request about when the**
09:16   **8**   **case would be ready for trial.**

09:17   **9**           And it was through those two processes, the
09:17   **10**  initial filtering and then the seizure by those agents, that
09:17   **11**  the case material, the things that for legal purposes were
09:17   **12**  in the possession of the government, that was created.

09:17   **13**          Now, again, was that search perfect?  I'm the
09:17   **14**  first to admit now that we know about the Tabs data, no, it
09:17   **15**  was not.  But that is still a difference between having
09:17   **16**  something that was in the government's possession and having
09:17   **17**  something that was not in the government's possession.

09:17   **18**          I may be treading on legal issues, but I would
09:17   **19**  respectfully submit based on this factual analysis there is
09:17   **20**  a legal argument on whether this Tabs data earlier was
09:17   **21**  something that had been, quote/unquote, "seized" and was
09:18   **22**  something that was therefore part of the case.

09:18   **23**          Now, could we have seized it?  Well, obviously
09:18   **24**  yes, because we have been able to do that now.  Should we
09:18   **25**  have seized it and should any consequences of the Privilege

09:18  1   Review Team's inability to find that or know about it or
09:18  2   seize it -- should that be held on behalf of the government?
09:18  3   That respectfully without getting into the merits is a
09:18  4   different argument than a pure Brady/Bundy argument.
09:18  5          In making that determination, the other fact that
09:18  6   needs to be in the record is pursuant to the Court's concern
09:18  7   in denying the defense full access to the servers in its
09:18  8   August 2019 order, it did order the Privilege Review Team to
09:18  9   make them available to the defense.
09:19  10          THE COURT:  I believe that was voluntary on behalf
09:19  11  of the government.  I don't believe I ordered that.  I
09:19  12  thought that was a government offer to have them come in and
09:19  13  sit down with the IRS rep.
09:19  14          MR. FITZGERALD:  I wasn't here when that happened,
09:19  15  but whether it was our suggestion as to a staff backlog that
09:19  16  they got what they needed or whether it was at the direction
09:19  17  or suggestion of the Court, certainly I thought we were
09:19  18  acting under the authority of the Court in making that
09:19  19  happen.
09:19  20          So in September 2019 and then in October 2019,
09:19  21  defense counsel and the defendant came to the IRS Offices,
09:19  22  and the same computer specialist who set up the system that
09:19  23  now exists in our office and which both parties reviewed
09:20  24  last night, a similar system, virtual system was set up in
09:20  25  September and October.  And based on those searches, certain

09:20  1   files were requested by the defense.

09:20  2          I went through and reviewed them.  And based on

09:20  3   the parameters of the search warrant -- because, again, this

09:20  4   was something that was totally outside the search warrant.

09:20  5   Obviously these weren't the protocols to let defense counsel

09:20  6   and the defendant just grab things.

09:20  7          So once they made their requests, I sat down with

09:20  8   my then colleague, and we determined that some of them were

09:20  9   valid, and some of them we thought under the search warrant

09:20  10  were not valid.  There were six of those.  So we told them

09:20  11  no, and we told them why.  And for all the others, we turned

09:20  12  them over to the defense.

09:21  13         The first one on that list I now feel I can

09:21  14  certainly say here in open court was a request for

09:21  15  QuickBooks files, which we produced.  And at that point

09:21  16  after we produced it, we did not get another specific

09:21  17  request from the defense.

09:21  18         So when the Court focuses on the issue of who knew

09:21  19  what and who is responsible for the Tabs data not being

09:21  20  available to the defense, it needs to take into account that

09:21  21  it was the defendant and his counsel who had seen this

09:21  22  virtual system which is now at issue.  They've seen it

09:21  23  twice.

09:21  24         The Prosecution Team has seen it zero.  The

09:21  25  Prosecution Team was not told about the files which were

09:22  1    produced to the defense two years ago.  And I think both

09:22  2    under the law and basic fairness that should really make a

09:22  3    difference.

09:22  4            Thank you, Your Honor.

09:22  5            THE COURT:  Let me ask you this.  If all this new

09:22  6    Tabs data and new QuickBooks data had come to light, if you

09:22  7    were aware of that at the beginning, would you have reviewed

09:22  8    those materials, made a determination whether anything in

09:22  9    those newly identified materials were subject to the

09:22  10   subpoena, and reviewed them and passed on what was

09:22  11   appropriate to the Prosecution Team?

09:22  12           MR. FITZGERALD:  Yes, Your Honor.  A small

09:22  13   correction.  The Court said subpoena.  Again, this was all

09:22  14   through the search warrants.

09:22  15           THE COURT:  Oh, search warrant.  Yes, that's

09:22  16   right.

09:22  17           MR. FITZGERALD:  We understand, Your Honor.

09:22  18           THE COURT:  But because those materials identified

09:22  19   in the past few days weren't identified by the Privilege

09:23  20   Review Team at the time, they have not yet been reviewed by

09:23  21   the Privilege Review Team to determine whether they are

09:23  22   material under the search warrant that was appropriate to

09:23  23   produce and would have been passed on to the Prosecution

09:23  24   Team.

09:23  25           MR. FITZGERALD:  Yes, Your Honor.  Of course, in

09:23 **1** looking at something whether it would have been judged to be

09:23 **2** relevant to the case and fall under the terms of the search

09:23 **3** warrant, that of course can be sometimes a close issue or a

09:23 **4** judgment call.  But here I can definitely say it is not a

09:23 **5** close issue.  It is not a judgment call.

09:23 **6** **If I had found out about the existence of the Tabs**

09:23 **7** **data through the defense request in September of 2019, it**

09:23 **8** **would certainly, like the QuickBooks data, have been**

09:23 **9** **included in what was produced.  If any of the searching**

09:23 **10** **taint agents had seized it and then it had been reviewed by**

09:23 **11** **the Privilege Review Team, we would definitely have said**

09:24 **12** **that it (a) is not privileged; and (b) it is certainly**

09:24 **13** **relevant, and we would have passed it on to the Prosecution**

09:24 **14** **Team.**

09:24 **15** Again, this is not an issue where we are quibbling

09:24 **16** about its relevance or the fact that reasonable prosecutors

09:24 **17** and defense attorneys would like to have this.  It's just

09:24 **18** the fact that it was -- again, in retrospect, certain things

09:24 **19** that I would like to have had seized were not seized.

09:24 **20** But going back to my earlier analogy where

09:24 **21** searching agents went to a house and didn't search the attic

09:24 **22** when one is talking about five terabytes of data, that is

09:24 **23** more similar to having a search warrant for a small town.  I

09:25 **24** think it is fair when you have the former mayor of the town

09:25 **25** on the other side that you can get guidance as to where you

| | | |
|---|---|---|
| 09:25 | 1 | need to look. |
| 09:25 | 2 | Thank you, Your Honor. |
| 09:25 | 3 | THE COURT:  Thank you.  We are going to take about |
| 09:25 | 4 | a ten-minute break here. |
| 09:25 | 5 | (Recess taken at 9:25 a.m.; |
| 09:25 | 6 | proceedings resumed at 9:36 a.m.) |
| 10:10 | 7 | |
| 10:10 | 8 | |
| 10:10 | 9 | |
| 10:10 | 10 | |
| 10:10 | 11 | |
| 10:10 | 12 | |
| 10:10 | 13 | |
| 10:10 | 14 | |
| 10:10 | 15 | |
| 10:10 | 16 | |
| 10:10 | 17 | |
| 10:10 | 18 | |
| 10:10 | 19 | |
| 10:10 | 20 | |
| | 21 | |
| | 22 | |
| 09:35 | 23 | MR. AVENATTI:  Your Honor, can I approach, please? |
| 09:36 | 24 | THE COURT:  Yes. |
| 09:36 | 25 | MR. AVENATTI:  Your Honor, I would like to start |

09:36   1    where Mr. Fitzgerald ended.

09:36   2            Mr. Fitzgerald claimed that this data was not

09:36   3    seized.  There is no question the data was seized.  It was

09:36   4    contained within the forensic images of the servers.  In

09:37   5    fact -- and I have handed the Court a copy of the search

09:37   6    warrant application, which is Document 4-1 on 8:19-MJ-00418.

09:37   7    This is the search warrant application for the ten devices,

09:37   8    which included the Eagan Avenatti servers.

09:37   9            This is the application that the Assistant U.S.

09:37   10   Attorneys prepared and which was supported by the affidavit

09:37   11   of Special Agent Karlous back in the spring of 2019.  This

09:37   12   warrant which was ultimately issued provides in detail as to

09:37   13   what was to be seized and searched and what the government

09:38   14   was to look for.

09:38   15           In particular, it enumerates a number of

09:38   16   categories of information that the government was to search.

09:38   17   This is what the government asked to search for.  This is

09:38   18   what the government claimed in the application they needed

09:38   19   for the prosecution of the case.

09:38   20           I will direct the Court's attention to

09:38   21   paragraphs -- page 7 of 330 at the top, paragraph F:

09:38   22   "Records, documents, programs, applications, or materials

09:39   23   from January 2011 through March 25, 2019, relating to the

09:39   24   accounting records for Avenatti or any of the subject

09:39   25   entities" -- that's a defined term, Your Honor, to include

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:39  1   the law firm -- "including any Microsoft Dynamics NAV,

09:39  2   QuickBooks, or other electronic accounting data, files, or

09:39  3   records" (G) -- I am going to shortcut it -- relating to any

09:39  4   financial transactions, including any proposed or potential

09:39  5   financial transactions, including any of the subject

09:39  6   entities and/or Avenatti.

09:39  7        If you fast-forward to letter (P) on page 9 of

09:39  8   330, this is even more specific.  Paragraph P requires the

09:40  9   "search for documents, records, applications, materials

09:40  10  relating to attorneys' fees or costs, and client billing

09:40  11  records."

09:40  12       If you go on to letter T on page 10 of 330:

09:40  13  "Records, documents, programs, applications, or materials

09:40  14  from April 1st, 2011, to March 25, 2019, relating to

09:40  15  Avenatti and/or EA LLP's representation of Client 1,

09:40  16  including the approximately $4 million settlement payment."

09:41  17       If you go to U immediately underneath that, same

09:41  18  thing relating to Client 2.

09:41  19       If you go to W, same thing as it relates to Client

09:41  20  3.

09:41  21       So there is no question that this data was seized.

09:41  22  It was on our forensic copies.  If it wasn't seized,

09:41  23  Mr. Varani could not have accessed it yesterday and provided

09:41  24  the data to the defense.  There is no question it was

09:41  25  seized.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:41    1          Your Honor, they didn't leave the box behind in
09:41    2    the attic.  They took all of the boxes out of the attic, and
09:41    3    they've been in the possession of the government -- the
09:41    4    boxes from the attic -- for years.
09:41    5          There is discussion about what was made available
09:41    6    by way of the virtual server, Your Honor.  All of the data
09:42    7    from Tabs and QuickBooks was not made available by way of
09:42    8    the virtual server two years ago or in September/October of
09:42    9    2019.
09:42   10          On one occasion a certain e-mail was made
09:42   11    available for us to review.  And, in fact, we know all the
09:42   12    data wasn't made available because the data from Mr. Varani
09:42   13    came from the forensic copies held in Washington, D.C.  We
09:42   14    didn't have access to the forensic copies.
09:42   15          But putting aside the issue of access, as Your
09:42   16    Honor rightfully noted, access does not relieve the
09:42   17    government of its affirmative obligation to seek out
09:42   18    exculpatory information or information favorable to the
09:42   19    defense and to provide it to the defense.  It also doesn't
09:42   20    relieve the government from its obligations under your
09:42   21    January 2021 order, which could not have been more clear.
09:43   22          There is discussion by Mr. Sagel about what this
09:43   23    data shows and what it doesn't show, and I'm happy to get
09:43   24    into some of those details, although our review continues.
09:43   25    There is no question this data was relevant even under his

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:43   1   theory, and that was specifically one of the things that was

09:43   2   ordered by Your Honor to be produced in January of 2021,

09:43   3   relevant information.

09:43   4          As Your Honor rightfully noted in one of Your

09:43   5   Honor's questions, even if it didn't show any differences,

09:43   6   it would still be relevant.  Your Honor also rightfully

09:43   7   noted the existence now of data relating to Ms. Gardner in

09:43   8   Tabs.

09:43   9          Whether the data is the same or not -- and I

09:43   10  submit that it's not.  Whether it's the same or not is of no

09:43   11  consequence.  The issue we now have is that there was

09:43   12  evidence put before the jury that there was no Tabs data for

09:44   13  Gardner.  There was never any Tabs data for Gardner.  We now

09:44   14  know that that's not accurate.

09:44   15         The printouts that the government provided the

09:44   16  defense last night, Your Honor, are not complete.  They do

09:44   17  not contain all of the data for the clients in the

09:44   18  Indictment.  There are unallocated costs within Tabs.  There

09:44   19  are other reports in Tabs.  There's other information even

09:44   20  in the short period of time that I was able to review the

09:44   21  information last night that casts serious doubt as to the

09:44   22  printouts by the government.

09:45   23         The information that was provided by way of the

09:45   24  Tabs data and likely the QuickBooks data goes directly to

09:45   25  motive and intent, Your Honor, among other things.  While it

09:45   **1**   might be true that I in my opening statement referenced the

09:45   **2**   calculations on the chart and talked about what was

09:45   **3**   required, I'm perplexed as to how that helps the government.

09:45   **4**          If the government was aware by way of my opening

09:45   **5**   statement that that was my defense, to the extent that they

09:45   **6**   did not understand the importance of that cost data, the

09:45   **7**   Tabs data and the QuickBooks data, they were certainly on

09:45   **8**   notice at that point in time.  And yet they did nothing to

09:45   **9**   look for the data.  They did nothing to produce it to the

09:45   **10**  defense.

09:45   **11**         They obviously knew the importance of the Tabs

09:45   **12**  data because they had Mr. Drum rely on the two exhibits, one

09:45   **13**  from Mr. Barela and one from Mr. Johnson.  They were on

09:46   **14**  notice from Ms. Regnier of the importance of the Tabs data

09:46   **15**  and the information.

09:46   **16**         Lastly, let me make this point, Your Honor -- and

09:46   **17**  we have another pending filing relating to this issue.

09:46   **18**  There is no question that when the Prosecution Team believed

09:46   **19**  a document existed on those servers or within the

09:46   **20**  information seized that was in the possession of the

09:46   **21**  Privilege Review Team -- there is no question that they had

09:46   **22**  the ability to and in fact did reach out to the Privilege

09:46   **23**  Review Team and inquire as to where A, B, C, D, or E was.

09:46   **24**  That's how Mr. Andre -- we put this in our reply.  That's

09:46   **25**  how Mr. Andre was able to represent to the Court that a

09:46  1   QuickBooks file was on its way to be produced.  He would not

09:46  2   have known that but for communication with the Privilege

09:46  3   Review Team as to that fact because clearly the government

09:47  4   wanted the QuickBooks files produced.

09:47  5        About a month or two before the trial, Your Honor,

09:47  6   we had not heard from Mr. Fitzgerald in some time, and the

09:47  7   defense received notification from Mr. Fitzgerald that all

09:47  8   of a sudden the Privilege Review Team was getting ready to

09:47  9   produce to the Prosecution Team about 20 or 25 documents

09:47  10  that had not been previously produced.

09:47  11       We were puzzled by this because we had not heard

09:47  12  from the Privilege Review Team in some time, and it seemed

09:47  13  odd to us that just out of the blue the Privilege Review

09:47  14  Team would have located these 20 to 25 documents to produce

09:47  15  to the Prosecution Team.

09:47  16       Upon review of the documents, Your Honor, we

09:47  17  discovered that they were relevant, and it told us that the

09:47  18  prosecution wanted to use the documents in the trial.

09:47  19  That's why all of a sudden they were being produced to the

09:48  20  Prosecution Team.  Now, I don't know if that's the case or

09:48  21  not, but there's strong evidence to suggest that it was.

09:48  22       **And the one thing that you haven't heard here**

09:48  23  **today, Your Honor, and the one thing that you've never**

09:48  24  **heard, the representation that's never been made by either**

09:48  25  **Mr. Sagel, Mr. Wyman, Mr. Andre prior, or by**

09:48  **1**   **Mr. Fitzgerald -- the one thing the Court has never heard is**
09:48  **2**   **that the Prosecution Team was not in regular contact with**
09:48  **3**   **the Privilege Review Team for the purpose of gaining**
09:48  **4**   **documents and information that they thought would help their**
09:48  **5**   **case.  That representation has never been made, and I would**
09:48  **6**   **submit, Your Honor, it never will be made, because the fact**
09:48  **7**   **of the matter is that the Privilege Review Team has worked**
09:48  **8**   **closely with the government when it benefited the government**
09:48  **9**   **as it related to preparation for trial.**

09:48  **10**       The prejudice associated with this information not
09:48  **11**  being produced is extraordinary.  Your Honor touched on that
09:49  **12**  through some of your questioning.  I should have had the
09:49  **13**  benefit of this information.  I should have been able to use
09:49  **14**  it in cross-examination and otherwise.  And details matter.

09:49  **15**       I should have been able to use the lack of taking
09:49  **16**  into account various costs and even post-settlement
09:49  **17**  payments, Your Honor.  The $37,000 payment I think was made
09:49  **18**  within a few months of the settlement.  Who's to say that
09:49  **19**  wasn't associated with the settlement?  It's not some minor
09:49  **20**  $1,900 payment.  It's a significant payment.  I should have
09:49  **21**  been able to cross-examine Mr. Drum with the benefit of
09:49  **22**  that.  I should have had the data.  I wasn't provided the
09:49  **23**  data.

09:49  **24**       Even when I complained about it, I was repeatedly
09:49  **25**  told that I had everything when they knew I did not have

09:49  1    everything.  They knew I didn't have the Tabs data.

09:50  2              **For each of those reasons, Your Honor, I would ask**

09:50  3    **that the Court grant the defense motion at 706.  I'm happy**

09:50  4    **to answer any other questions.**

09:50  5              THE COURT:  No.  Thank you.

09:50  6              MR. FITZGERALD:  Your Honor, may I address the

09:50  7    Court?

09:50  8              THE COURT:  Sir, he gets the last word.

09:50  9              MR. FITZGERALD:  But he made representations about

09:50  10   the 25 documents.

09:50  11             THE COURT:  The moving party gets the last word.

09:50  12             I want to review the facts in the case as I see

09:50  13   them before setting out my ruling.

09:50  14             First of all, financial data is critical to this

09:50  15   case.  I don't believe the government disputes that,

09:50  16   although the government suggests that there may be other

09:50  17   critical data.  But if one looks to Mr. Drum's charts,

09:50  18   particularly 430 through 457 that sum up the case, those

09:50  19   charts are based almost exclusively on financial data.

09:51  20             Second, the government was on notice, as

09:51  21   Mr. Avenatti pointed out, for some time of the existence of

09:51  22   Tabs data.  In a July 25, 2019, interview with Ms. Regnier,

09:51  23   the government learned of the Tabs data.  The notes of

09:51  24   Special Agent Karlous indicate that it relates to billing

09:51  25   and accounting.  That particular handwritten memo is

09:51    **1**    attached to Defense 1084.

09:51    **2**         Of more significance I think is the interview with

09:52    **3**    Ms. Regnier on November 19, 2019.  The report of that

09:52    **4**    interview was Defendant's Exhibit 1085.  At paragraph 14,

09:52    **5**    Ms. Regnier indicated -- I will quote the paragraph -- not

09:52    **6**    her quote but a quote from the report:  "EA used two systems

09:52    **7**    to track case expenses.  The first is QuickBooks, and the

09:52    **8**    accounting entries came from expense reports, et cetera.

09:52    **9**    The second system used by EA to track case expenses is

09:52   **10**    Tabs."

09:52   **11**         I believe that between those two interviews the

09:52   **12**    government was fully on notice of the significance of the

09:52   **13**    Tabs data.  The questioning at trial I believe established

09:53   **14**    that no effort was made to secure the Tabs data.  On

09:53   **15**    August 18, the morning session at page 40 provides the

09:53   **16**    following.  The question was being put to Agent Karlous:

09:53   **17**       "Q    As you sit here today two years after being

09:53   **18**         told in a conference call with other members of

09:53   **19**         the investigative team about the Tabs data -- as

09:53   **20**         you sit here today, do you recall a single thing

09:53   **21**         that you or anyone else did to confirm or deny the

09:53   **22**         existence of the Tabs data on the servers?

09:54   **23**       "A    I don't know if we have Tabs data."

09:54   **24**         Then it continues over on page 41:

09:54   **25**       "Q    Okay.  Well, in light of your answer, have

09:54  1          you personally -- let me ask you this.  Are you
09:54  2          aware of anyone on the investigative team in the
09:54  3          last two years making inquiry as to whether the
09:54  4          Tabs data was included within the forensic images
09:54  5          on the servers?
09:54  6          "A     It may have occurred, but I don't know."
09:54  7                 Similar questioning was conducted the next day of
09:54  8    Agent Tashchyan.  It was apparent from their testimony that
09:54  9    no one had gone back to the forensic copies of the servers
09:54  10   to conduct a search.
09:54  11               I think the significance of the Tabs data was
09:54  12   pointed out early in the trial when Ms. Regnier testified on
09:55  13   the morning session on July 28 at page 93:
09:55  14         "Q     When you had to figure out costs for a
09:55  15         case, you would look at Tabs; would you not?
09:55  16         "A     No.  I would look at both Tabs and
09:55  17         QuickBooks.
09:55  18         "Q     Why would you look at both QuickBooks and
09:55  19         Tabs?
09:55  20         "A     To make sure we had encompassed all the
09:55  21         costs.
09:55  22         "Q     You couldn't rely on just one?  You had to
09:55  23         look at both?
09:55  24         "A     Yes.
09:55  25         "Q     Otherwise the calculation could be wrong?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:55  1        "A       Correct."

09:55  2             I think that testimony in and of itself is

09:55  3    sufficient to establish the materiality of the Tabs data,

09:55  4    particularly where at least in the case of three of the

09:55  5    victim clients the costs were an element in determining what

09:55  6    net payment Mr. Avenatti was entitled to out of the

09:56  7    settlement.

09:56  8             The Prosecution Team conducted a search of its

09:56  9    files and provided the Court an extensive filing at Docket

09:56  10   737 of various pieces of Tabs data.  Two of the reports were

09:56  11   identical to the trial exhibits, Exhibit 48, the Johnson

09:57  12   draft, and Exhibit 174, the Barela Tabs data.

09:57  13            All the other Tabs documents related to other

09:57  14   clients and really aren't material to this case.  It shows

09:57  15   that the government did a diligent search for Tabs data in

09:57  16   the materials that the Prosecution Team had, but it by no

09:57  17   means convinced the Court that that was the only Tabs data

09:57  18   that was out there to be had in the materials which were

09:57  19   seized.

09:57  20            Tabs data wasn't used at trial, as I indicated,

09:57  21   Tabs data offered for proving up the Johnson loss, and

09:58  22   similarly for Barela.  No Tabs data was had for Gardner.  I

09:58  23   think that it's significant that the prosecution didn't have

09:58  24   the benefit of other Tabs data relating to those two clients

09:58  25   and relating to Gardner for whom no Tabs data was offered.

09:58  **1**        I also think Tabs data would have been of

09:58  **2**   assistance to the government even with respect to the two

09:58  **3**   other victims, Tran and Phan.

09:58  **4**        MR. AVENATTI:  Your Honor, you said "government"

09:58  **5**   the last two times.  Was that purposeful, or did you mean to

09:58  **6**   say the "defense"?

09:58  **7**        THE COURT:  I meant to say the defense.

09:58  **8**        MR. AVENATTI:  I'm sorry to interrupt.

09:58  **9**        THE COURT:  Thank you for the correction.

09:58  **10**       **The documents would have been of assistance to the**

09:58  **11**  **defense in questioning the appropriate amount that**

09:58  **12**  **Mr. Avenatti drew down for himself, even though with respect**

09:58  **13**  **to Tran and Phan, no costs were relevant because their fee**

09:59  **14**  **contracts simply provided for a straight net percentage out**

09:59  **15**  **of the amounts recovered.**

09:59  **16**       I believe that the data would have been useful in

09:59  **17**  an overall showing that the government's accounting records,

09:59  **18**  the methods of Mr. Drum in particular, weren't accurate.  He

09:59  **19**  wasn't accurate in part of his analysis.  I think the jury

09:59  **20**  could question the accuracy of his methods and results with

09:59  **21**  respect to other clients.

09:59  **22**       It is no answer that the government is not

09:59  **23**  required to prove the exact amount that Mr. Avenatti

09:59  **24**  misappropriated.  The government put forth a number, and I

09:59  **25**  believe the defendant was entitled to challenge that number

09:59  1    and to show that it was not accurate.  It may have shown
09:59  2    that the amount was appropriated was lesser or greater, or
10:00  3    it would have put a question mark there, and I think the
10:00  4    defendant was entitled to have the ability to put that
10:00  5    question mark there.

10:00  6          I think the testimony -- the factual presentations
10:00  7    this morning indicate to me that out of the identified Tabs
10:00  8    material it would likely have been relevant material to
10:00  9    assist the defense in its cross-examination.

10:00  10         Mr. Fitzgerald indicated to me that if the
10:00  11   additional materials for Tabs and QuickBooks were identified
10:00  12   as part of the initial process of screening the search
10:00  13   warrant materials, he would have reviewed these materials,
10:00  14   and if anything were relevant, he would have passed them on
10:00  15   to the Prosecution Team.  We'll never know the answer to
10:00  16   that question because it didn't occur.  It seems to me given
10:00  17   the volume of Tabs and the representations I have received
10:00  18   from the defense this morning that there would have been at
10:01  19   least some data passed on.

10:01  20         The question then is is there a violation of
10:01  21   Brady?  I focus on Brady because I think the analysis of
10:01  22   Brady is sufficient, even though there may be other grounds
10:01  23   which would call for the government's production of
10:01  24   materials from the Tabs data at least be identified.
10:01  25         Brady versus Maryland, 373 U.S. 83-87 (1963),

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:01 **1**   requires production of materials that are advantageous to

10:01 **2**   the defendant or that tend to call into doubt -- call the

10:01 **3**   government's case into doubt.

10:01 **4**          Brady establishes three requirements:  One, the

10:01 **5**   evidence at issue must be favorable to the accused.  I find

10:02 **6**   that the Tabs and other accounting data that was not

10:02 **7**   produced would have been favorable to the defendant.

10:02 **8**          Two, the evidence must have been suppressed by the

10:02 **9**   government willfully or inadvertently.  I find that it was,

10:02 **10**  quote, "suppressed," although I don't think that's the

10:02 **11**  appropriate word in the context.  But it wasn't produced

10:02 **12**  through inadvertence and a failure to appreciate what was

10:02 **13**  there.

10:02 **14**         I find no willful conduct on the part of the

10:02 **15**  Prosecution Team.  I find no willful conduct on the part of

10:02 **16**  the Privilege Review Team.  I think the Taint Team has

10:02 **17**  fairly acknowledged that there may have been some

10:02 **18**  shortcomings in the review process.

10:02 **19**         Finally, there must be a finding that prejudice

10:03 **20**  must have ensued.  I find that prejudice occurred here in a

10:03 **21**  number of ways.  I think the defendant was denied an

10:03 **22**  opportunity to craft his overall theory of the case and

10:03 **23**  presentation, including the opening statement, by not having

10:03 **24**  this additional material.  I believe that the defense was

10:03 **25**  prejudiced in its ability to cross-examine certain

10:03  1   witnesses, in particular, Mr. Drum.

10:03  2        At page 5 of his most recent report at Docket 775,

10:03  3   Mr. Avenatti outlines a number of things that he could have

10:04  4   done had he had the Tabs information, including

10:04  5   cross-examination of certain witnesses, ability to question

10:04  6   the government's preparation techniques generally, and so

10:04  7   on.  I won't repeat those.

10:04  8        The question is what remedy should I adopt?  I do

10:04  9   not believe that an adjournment is an appropriate remedy.

10:04  10  First of all, an adjournment would not solve the problem

10:04  11  that Mr. Avenatti didn't have this material at the front end

10:04  12  to craft his theory of the case, his opening statement, and

10:04  13  examining of the witnesses.  He might have done something

10:04  14  different, or he might not have done something different if

10:04  15  he had this data.  The point is he didn't have the

10:04  16  opportunity to make that choice.

10:04  17       I believe that any adjournment wouldn't be a

10:04  18  short-lived affair but would require a significant amount of

10:05  19  time (a) to complete the production to the defendant of the

10:05  20  newly described materials and then allow the defendant

10:05  21  adequate time to assimilate and craft a strategy based on

10:05  22  the newly produced material.  I am not prepared to say that

10:05  23  that would be a short-lived effort.  Given the volume of new

10:05  24  material, it seems unlikely that effort would be

10:05  25  short-lived.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:05  **1**          The representation to the jury was our best

10:05  **2**    estimate the case would be concluded by August 20.

10:05  **3**    Obviously, we are past that date, and the defense is still

10:05  **4**    on the defense's case-in-chief.  I do not believe it would

10:05  **5**    be appropriate to hold the jury for an extended period of

10:05  **6**    time to allow the defense adequate time to assimilate and

10:05  **7**    prepare in light of the newly produced material.

10:06  **8**          I want to go back and emphasize two points.  I

10:06  **9**    repeat my findings that I find no misconduct on the part of

10:06  **10**   the Prosecution Team and no misconduct on the part of the

10:06  **11**   Taint Team.  Shortcomings there may have been, but I find no

10:06  **12**   misconduct, intentional or otherwise, on the part of the

10:06  **13**   Taint Team in carrying out its activity.

10:06  **14**         For all those reasons, I grant a new trial.  The

10:06  **15**   matter will proceed to trial on October 12, 2021, at 8:30

10:06  **16**   a.m.  That's the current date that we ought to have in place

10:06  **17**   our severed portion of the case.  I set a status conference

10:06  **18**   for September 27, 2021, at 9:00 a.m.  I set a further

10:07  **19**   interim status conference for September 2 at 8:30 a.m. to

10:07  **20**   discuss the overall timing of the case.

10:07  **21**         In terms of a retrial, you should be aware that I

10:07  **22**   will be away from October 17th to October 24th.  If we

10:07  **23**   proceed on October 12th on the victim counts, we could

10:07  **24**   impanel a jury I believe the week before I leave and then

10:07  **25**   start the trial probably the week I come back.  I want to

10:07 **1**  give the parties an opportunity to assimilate the schedule

10:07 **2**  that I have put out there and come back to me with their

10:07 **3**  thoughts.  That's what we will do on September 2.

10:07 **4**  All pending motions are denied or moot at this

10:07 **5**  time.

10:07 **6**  **Anything further?**

10:08 **7**  MR. AVENATTI:  Your Honor, from the defense, I

10:08 **8**  believe that the Motion for Mistrial should be with

10:08 **9**  prejudice.  I have heard Your Honor's directives this

10:08 **10**  morning, but I would like to have an opportunity to at least

10:08 **11**  submit briefing for consideration by the Court on that point

10:08 **12**  once I have had a chance to look at some of the data.  So

10:08 **13**  what I would like to do is collect my thoughts and then

10:08 **14**  propose a briefing schedule to the government and to the

10:08 **15**  Court.

10:08 **16**  THE COURT:  That's fine.  I think we would like to

10:08 **17**  resolve that issue.  The strong presumption is that when a

10:08 **18**  mistrial is granted at the request of the defendant, the

10:08 **19**  grant of a new trial is proper.  But I will afford you an

10:08 **20**  opportunity to move for whatever relief you want.  I don't

10:08 **21**  think we should do it on an expedited basis, but we

10:08 **22**  shouldn't drag it out either.

10:08 **23**  MR. AVENATTI:  I agree, Your Honor.  I'm going to

10:08 **24**  need some time to look at the data, but I agree that it's

10:09 **25**  going to have to be dealt with on a measured approach.

10:09    1            THE COURT:  Anything further from the government?

10:09    2            MR. SAGEL:  No, Your Honor.

10:09    3            THE COURT:  Okay, we will be adjourned.  Thank

10:09    4    you.

10:09    5            MR. AVENATTI:  Your Honor, are you bringing the

10:09    6    jurors in?  Are they here?

10:09    7            THE COURT:  No, they're not here.  I plan to send

10:09    8    them the usual certificate for service, and I plan to send

10:09    9    each one a personal letter indicating that I concluded the

10:09    10   trial and thanking them for their service.

10:09    11           MR. AVENATTI:  Understood.

10:09    12           THE COURT:  I'm not going to get into the merits

10:09    13   of anything.  They put in a significant amount of time, and

10:09    14   I watched these folks.  By and large, they were on time

10:09    15   every day.  They were diligent.  They were watching what was

10:09    16   going on.  I think that the parties' efforts to help the

10:09    17   Court in seating a fair and impartial jury were achieved.

10:09    18   They were diligent, and they should be told that.

10:10    19           Thank you.

10:10    20           **(Whereupon, the proceedings were concluded.)**

10:10    21                        *     *     *

10:10    22

10:10    23

10:10    24

10:10    25

**CERTIFICATE**


I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  August 25, 2021


/s/   Sharon A. Seffens  8/25/21
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

**MR. AVENATTI: [25]** 3/11 6/19 7/1 8/18 9/12
9/15 10/13 11/19 13/1 13/20 15/25 16/10
18/15 19/4 20/1 20/14 41/14 48/23 48/25 60/4
60/8 65/7 65/23 66/5 66/11
**MR. FITZGERALD: [11]** 3/18 3/25 41/3 41/23
42/4 44/14 46/12 46/17 46/25 56/6 56/9
**MR. SAGEL: [35]** 3/5 21/5 21/13 21/25 22/14
22/19 23/5 23/17 23/25 24/2 24/18 24/25
25/15 26/7 26/12 27/5 27/17 27/22 28/2 28/8
28/23 28/25 30/5 30/9 30/13 32/16 33/17 36/5
37/7 37/11 39/2 40/13 40/19 40/25 66/2
**THE CLERK: [1]** 3/3
**THE COURT: [67]** 3/10 3/13 3/24 6/17 6/24
8/17 9/2 9/14 10/12 11/18 12/24 13/17 15/24
16/6 18/13 19/2 19/25 20/8 21/2 21/7 21/22
22/9 22/16 23/2 23/8 23/21 24/1 24/13 24/23
25/11 25/16 26/9 27/1 27/10 27/19 27/24 28/7
28/16 28/24 30/2 30/7 30/10 32/14 33/15 37/3
40/12 40/14 40/23 41/1 41/21 42/3 44/10 46/5
46/15 46/18 48/3 48/24 56/5 56/8 56/11 60/7
60/9 65/16 66/1 66/3 66/7 66/12

---

**$**

**$1,810,000 [1]** 34/5
**$1,900 [2]** 29/13 55/20
**$1,910,000 [1]** 34/5
**$111,113.22 [2]** 31/12 31/13
**$27,000 [1]** 29/16
**$37,000 [2]** 29/16 55/17
**$4 [2]** 21/19 50/16
**$4 million [2]** 21/19 50/16
**$900 [1]** 33/9
**$944 [1]** 33/7

---

**'**

**'10 [1]** 30/25
**'11 [1]** 30/25

---

**/**

**/s [1]** 67/15

---

**0**

**00418 [1]** 49/6
**0870 [1]** 1/21

---

**1**

**1-1053 [1]** 1/20
**10 [1]** 50/12
**1019 [1]** 17/17
**1053 [1]** 1/20
**107 [1]** 2/16
**1084 [3]** 11/18 11/19 57/1
**1085 [3]** 12/25 13/1 57/4
**1100 [1]** 2/7
**12 [3]** 4/14 7/15 64/15
**12/19/2017 [1]** 31/9
**12th [3]** 17/1 24/8 64/23
**14 [4]** 4/14 7/15 13/2 57/4
**16 [3]** 10/3 17/11 18/8
**17 [2]** 5/24 6/1
**174 [6]** 15/21 15/22 16/18 31/8 31/8 59/12
**17th [1]** 64/22
**18 [1]** 57/15
**19 [2]** 12/21 57/3
**193 [3]** 31/8 31/10 31/13
**1963 [1]** 61/25
**1st [1]** 50/14

---

**2**

**20 [3]** 54/9 54/14 64/2
**2011 [2]** 49/23 50/14
**2012 [1]** 30/25
**2015 [2]** 30/21 31/1
**2017 [1]** 31/9
**2019 [24]** 5/7 6/2 9/21 10/2 10/2 10/8 10/14
11/3 11/16 12/6 12/21 25/18 34/12 37/20 44/8
44/20 44/20 47/7 49/11 49/23 50/14 51/9
56/22 57/3

**2020 [5]** 14/8 17/18 35/7 35/13 37/20
**2021 [7]** 1/24 17/5 35/22 65/24 67/1
67/13
**21 [1]** 67/15
**213 [1]** 2/8
**24 [2]** 1/17 3/1
**24th [4]** 10/8 10/14 11/3 64/22
**25 [7]** 49/23 50/14 54/9 54/14 56/10 56/22
67/13
**25th [5]** 6/2 9/21 11/16 12/6 14/18
**26 [1]** 1/12
**27 [1]** 64/18
**28 [2]** 58/13 67/7

---

**3**

**312 [1]** 2/7
**31st [1]** 5/7
**330 [3]** 49/21 50/8 50/12
**338-3598 [1]** 2/12
**3598 [1]** 2/12
**36 [1]** 41/25
**373 [1]** 61/25
**3rd [1]** 30/21

---

**4**

**4-1 [1]** 49/6
**40 [1]** 57/15
**400,000 [1]** 34/18
**408 [1]** 14/19
**41 [1]** 57/24
**411 [2]** 1/20 2/11
**430 [2]** 21/8 56/18
**457 [3]** 21/9 21/9 56/18
**48 [5]** 15/21 15/22 16/18 28/8 59/11
**481-4900 [1]** 2/17
**4900 [1]** 2/17
**4:00 last [1]** 8/20
**4th [4]** 1/20 25/17 30/21 31/1

---

**5**

**543-0870 [1]** 1/21
**5th [1]** 29/2

---

**6**

**6,000 [2]** 38/20 38/23
**6683 [1]** 2/8
**6:00 p.m [2]** 4/16 7/16

---

**7**

**706 [6]** 9/6 9/9 19/17 19/21 20/25 56/3
**714 [2]** 1/21 2/12
**72 [1]** 25/11
**737 [2]** 24/15 59/10
**74 [1]** 5/6
**745 [2]** 10/6 10/10
**753 [1]** 67/8
**775 [2]** 3/16 63/2

---

**8**

**8/25/21 [1]** 67/15
**8000 [1]** 2/11
**83-87 [1]** 61/25
**87 [1]** 61/25
**894-6683 [1]** 2/8
**8:05 [1]** 3/1
**8:19-MJ-00418 [1]** 49/6
**8:30 [1]** 64/15
**8:30 a.m [1]** 64/19

---

**9**

**90012 [1]** 2/8
**92672 [1]** 2/16
**92701 [2]** 1/20 2/11
**93 [1]** 58/13
**949 [1]** 2/17
**968 [1]** 17/17
**9:00 [1]** 64/18
**9:25 [1]** 48/5
**9:36 [1]** 48/6

---

**A**

**a.m [2]** 3/1 48/5 48/6 64/16 64/18 64/19
**abandon [1]** 18/7
**ability [4]** 53/22 61/4 62/25 63/5
**able [16]** 4/9 4/13 8/19 17/11 18/17 22/2
26/21 36/14 38/13 38/17 43/24 52/20 53/25
55/13 55/15 55/21
**about [35]** 4/15 4/15 9/24 14/24 15/11 15/20
20/18 24/2 24/3 24/7 26/6 28/23 31/2 32/3
35/2 38/3 38/12 41/18 42/6 43/7 43/14 44/1
45/25 47/6 47/16 47/22 48/3 51/5 51/22 53/2
54/5 54/9 55/24 56/9 57/19
**above [1]** 67/9
**above-entitled [1]** 67/9
**absent [1]** 5/17
**absolute [1]** 27/11
**Absolutely [1]** 16/10
**access [19]** 5/22 6/7 8/23 23/19 25/5 25/6
26/21 27/1 27/3 33/19 34/15 34/20 34/21
37/17 37/25 44/7 51/14 51/15 51/16
**accessed [1]** 50/23
**accessible [1]** 8/2
**accessing [2]** 5/19 6/1
**according [2]** 9/22 11/24
**account [3]** 22/10 45/20 55/16
**accounting [7]** 12/5 49/24 50/2 56/25 57/8
60/17 62/6
**accuracy [2]** 22/12 60/20
**accurate [18]** 19/11 22/23 27/15 28/12 28/18
40/17 40/18 52/14 60/18 60/19 61/1
**accurately [1]** 37/19
**accused [1]** 66/17
**achieved [1]** 66/17
**acknowledged [2]** 12/13 62/17
**acknowledging [1]** 26/10
**across [1]** 22/12
**Act [1]** 14/14
**acted [2]** 19/20 40/10
**acting [2]** 27/11 44/18
**activity [1]** 64/13
**actual [3]** 8/24 19/14 40/6
**actually [6]** 8/2 8/4 17/7 23/3 32/9 35/1
35/22
**addition [1]** 37/4
**additional [2]** 61/11 62/24
**address [2]** 22/5 22/21 56/6
**adequate [2]** 63/21 64/6
**adjourned [1]** 66/3
**adjournment [3]** 63/9 63/10 63/17
**admit [2]** 16/2 43/14
**admitted [2]** 15/21
**adopt [1]** 63/8
**advantage [2]** 23/18 38/1
**advantageous [1]** 62/1
**advised [1]** 13/3
**ADVISORY [1]** 2/15
**advocating [1]** 41/20
**affair [1]** 63/18
**affidavit [1]** 49/10
**affirmative [1]** 51/17
**afford [1]** 65/19
**afforded [1]** 36/8
**after [20]** 4/2 6/4 6/11 10/2 10/20 12/8 12/9
14/13 25/23 29/2 29/5 29/11 29/19 29/22
30/20 31/25 33/5 33/8 45/16 57/17
**again [13]** 13/25 14/2 16/25 18/25 34/15
34/24 36/23 38/4 43/13 45/3 46/13 47/15
47/18
**agent [12]** 6/6 9/23 11/21 11/22 12/21 12/22
16/22 38/11 49/11 56/24 57/16 58/8
**agents [5]** 42/19 43/6 43/10 47/10 47/21
**ago [5]** 11/4 19/8 24/20 46/1 51/8
**agree [8]** 13/24 19/25 21/3 30/5 36/24 41/21
65/23 65/24
**agreed [5]** 5/2 5/19 7/1 8/6 23/24
**agreements [2]** 3/22 4/20
**agrees [1]** 6/20
**ahead [1]** 24/1
**ALEXANDER [2]** 2/5 3/6

# A

**all [52]** 4/11 5/1 5/8 7/6 7/25 10/3 11/14 12/3
12/14 14/1 14/3 14/6 14/16 14/20 15/2 15/8
16/23 18/18 20/24 22/10 24/14 27/17 29/3
29/10 30/14 30/22 32/18 33/7 34/25 35/3
35/10 36/18 38/14 38/16 38/18 40/9 41/10
45/11 46/5 46/13 51/2 51/6 51/11 52/17 54/7
54/19 56/14 58/20 59/13 63/10 64/14 65/4
**allegedly [1]** 20/10
**allow [2]** 63/20 64/6
**allowed [4]** 4/21 6/13 23/10 42/19
**allowing [1]** 33/19
**almost [2]** 21/11 56/19
**along [2]** 33/13 35/6
**already [2]** 14/11 32/10
**also [9]** 24/18 26/17 26/20 32/13 35/23 42/11
51/19 52/6 60/1
**alternative [1]** 26/20
**alternatively [1]** 28/21
**although [3]** 51/24 56/16 62/10
**always [1]** 39/15
**am [5]** 27/8 33/18 36/25 50/3 63/22
**AMERICA [2]** 1/9 3/4
**among [1]** 52/25
**amount [11]** 7/13 9/16 9/17 13/9 13/10 28/14
60/11 60/23 61/2 63/18 66/13
**amounts [2]** 33/25 60/15
**Ana [4]** 1/16 1/20 2/11 3/1
**analogy [2]** 27/18 47/20
**analysis [13]** 21/17 22/17 23/3 28/21 29/1
31/21 36/11 36/12 36/22 38/8 43/19 60/19
61/21
**analyzed [1]** 21/9
**analyzes [1]** 21/9
**Andre [8]** 10/7 11/2 11/13 11/23 26/9 53/24
53/25 54/25
**Andre's [1]** 25/17
**Angeles [1]** 2/8
**another [4]** 12/23 33/8 45/16 53/17
**answer [5]** 27/22 56/4 57/25 60/22 61/15
**any [33]** 3/17 5/16 5/22 8/19 10/24 13/6 14/13
15/1 17/24 19/12 21/1 23/11 24/4 26/2 26/13
26/21 30/3 33/12 33/22 33/23 38/14 38/17
43/25 47/9 49/24 50/1 50/3 50/4 50/5 52/5
52/13 56/4 63/17
**anybody [1]** 40/10
**anybody's [1]** 40/10
**anyone [3]** 5/20 57/21 58/2
**anything [14]** 21/20 31/19 32/9 35/14 35/25
37/4 37/21 39/15 40/2 46/8 61/14 65/6 66/1
66/13
**apparent [2]** 7/24 58/8
**appear [1]** 13/5
**APPEARANCES [1]** 2/1
**appellate [1]** 17/22
**applicable [2]** 5/5 6/9
**application [4]** 49/6 49/7 49/9 49/18
**applications [3]** 49/22 50/9 50/13
**appointed [2]** 10/16 25/19
**appreciate [2]** 33/11 62/12
**approach [4]** 18/21 33/19 48/23 65/25
**appropriate [6]** 46/11 46/22 60/11 62/11 63/9
64/5
**appropriated [1]** 61/2
**approximately [1]** 50/16
**April [2]** 10/1 50/14
**April 1st [1]** 50/14
**Arden [1]** 16/23
**Arden's [1]** 32/22
**are [71]**
**aren't [2]** 35/25 59/14
**argue [1]** 41/22
**argument [3]** 43/20 44/4 44/4
**as [69]**
**aside [2]** 42/18 51/15
**ask [6]** 11/25 20/25 34/14 46/5 56/2 58/1
**asked [5]** 14/15 19/14 19/14 33/21 49/17
**asking [2]** 37/1 40/8
**aspersions [1]** 19/22
**assessment [1]** 4/16
**assimilate [3]** 22/3 22/4 22/5
**assist [1]** 61/9
**assistance [2]** 60/2 60/10
**Assistant [8]** 2/4 2/6 2/10 10/7 11/22 12/18
12/22 49/9
**associated [2]** 55/10 55/19
**assuming [1]** 34/19
**assurances [1]** 12/10
**attached [2]** 16/19 57/1
**attachment [1]** 24/15
**attempt [1]** 5/21
**attempted [1]** 7/23
**attention [2]** 9/19 49/20
**attic [5]** 42/21 47/21 51/2 51/2 51/4
**Attorney [6]** 2/3 2/4 2/6 2/10 10/7 12/22
**Attorney's [2]** 6/6 7/19
**attorneys [2]** 11/22 12/18 47/17 49/10
**attorneys' [1]** 50/10
**audit [1]** 8/24
**August [8]** 1/17 3/1 17/1 24/8 44/8 57/15 64/2
67/13
**August 12th [2]** 17/1 24/8
**August 18 [1]** 57/15
**August 20 [1]** 64/2
**August 2019 [1]** 44/8
**AUSA [1]** 9/24
**authority [2]** 24/9 44/18
**automatically [1]** 35/25
**avail [1]** 11/15
**availability [1]** 37/24
**available [9]** 8/23 21/10 22/22 44/9 45/20
51/5 51/7 51/11 51/12
**AVENATTI [21]** 1/11 2/14 3/4 3/12 5/13 6/18
9/10 12/1 26/19 27/25 37/5 49/8 49/24 50/6
50/15 56/21 59/6 60/12 60/23 63/3 63/11
**Avenatti's [2]** 3/14 9/6
**Avenida [1]** 2/16
**aware [6]** 8/12 12/18 46/7 53/4 58/2 64/21
**away [1]** 64/22

# B

**back [9]** 23/23 39/20 42/6 47/20 49/11 58/9
64/8 64/25 65/2
**backlog [1]** 44/15
**backwards [1]** 23/17
**bad [3]** 19/20 40/10 40/12
**bank [2]** 35/17 35/25
**bankruptcy [1]** 5/16
**Barela [16]** 15/23 16/22 29/24 31/5 31/9
31/11 31/12 32/22 33/4 33/9 36/6 38/14 38/22
53/13 59/12 59/22
**Barela's [1]** 33/5
**based [5]** 13/22 21/16 29/1 29/3 31/21
43/19 44/25 45/2 56/19 63/21
**baseless [1]** 33/16
**basic [3]** 20/5 20/6 46/2
**basically [2]** 34/9 47/18
**basis [4]** 13/19 13/21 22/11 65/21
**be [76]**
**bear [1]** 42/1
**became [1]** 7/24
**because [34]** 7/5 7/9 8/5 13/11 13/16 18/17
19/11 19/23 22/10 22/22 27/6 30/9 31/9 32/6
32/24 33/22 34/19 35/20 35/25 37/18 38/5
41/12 41/15 43/24 45/3 46/18 51/12 53/12
54/3 54/11 55/6 60/13 61/16 61/21
**been [61]** 6/16 9/16 11/7 12/10 13/6 13/17
14/2 14/3 14/6 14/11 16/5 16/11 16/11
17/11 18/10 18/17 19/1 19/7 19/10 21/16 26/6
27/13 27/19 31/25 32/10 34/20 34/22 35/10
36/24 37/11 38/6 38/7 39/17 39/17 40/2 40/16
43/21 43/24 46/20 46/23 47/1 47/8 47/10 51/3
51/21 54/10 54/24 55/5 55/13 55/15 55/21
60/1 60/10 60/16 61/8 61/18 62/7 62/8 62/17
64/11
**before [17]** 14/14 16/14 19/10 20/19 21/20
24/16 24/19 30/21 37/11 39/18 41/4 42/1 42/6
52/12 54/5 56/13 64/24
**began [1]** 7/23
**beginning [2]** 51/3 56/17
**behalf [4]** 3/6 5/20 44/2 44/10
**behind [1]** 51/1
**beholden [1]** 24/10
**being [4]** 10/18 25/21 33/11 40/20 40/21
42/13 45/19 54/19 55/11 57/16 57/17
**believe [33]** 3/20 4/16 5/23 9/2 15/14 19/4
19/16 22/2 24/16 26/22 27/6 27/23 27/24
35/15 36/3 37/5 38/12 40/7 40/8 40/17 44/10
44/11 56/15 57/11 57/13 60/16 60/25 62/24
63/9 63/17 64/4 64/24 65/8
**believed [2]** 6/12 53/18
**believes [5]** 28/9 39/23 40/4 41/8 41/9
**belong [1]** 37/23
**benefit [4]** 10/10 55/13 55/21 59/24
**benefited [1]** 55/8
**best [2]** 38/7 64/1
**between [6]** 17/19 34/6 42/23 43/2 43/15
57/11
**beyond [3]** 19/1 26/10 36/2
**billing [3]** 12/5 50/10 56/24
**bills [1]** 31/9
**bit [1]** 32/15
**blue [1]** 54/13
**board [1]** 22/12
**both [11]** 11/22 22/3 26/7 36/19 37/20 40/21
44/23 46/1 58/16 58/18 58/23
**box [1]** 51/1
**boxes [2]** 51/2 51/4
**Brady [3]** 10/3 11/15 12/11 12/15 14/1 14/6
14/9 18/8 18/10 19/19 23/22 24/3 27/2 27/2
27/3 27/3 27/7 27/16 34/7 36/11 36/12 36/12
36/23 37/22 41/8 42/25 44/4 61/21 61/21
61/22 61/25 62/4
**Brady/Bundy [1]** 44/4
**BRANDON [1]** 2/4
**break [1]** 48/4
**BRETT [2]** 2/9 3/5
**brief [1]** 4/2
**briefing [3]** 9/16 65/11 65/14
**bring [3]** 9/19 16/7 41/22
**bringing [1]** 66/5
**broad [1]** 32/3
**broadbrush [1]** 22/22
**Building [1]** 2/10
**bunch [1]** 8/25
**Bundy [10]** 17/15 17/20 17/21 18/3 20/6 24/3
34/23 34/24 41/10 44/4

# C

**CA [4]** 1/20 2/8 2/11 2/16
**Cafe [1]** 33/3
**calculate [2]** 39/10 39/13
**calculated [1]** 23/4
**calculation [1]** 58/25
**calculations [1]** 53/2
**CALIFORNIA [3]** 1/5 1/16 3/1
**call [12]** 9/20 11/24 12/2 14/7 36/20 39/20
47/4 47/5 57/18 61/23 62/2 62/2
**came [8]** 15/19 29/3 31/15 33/5 35/4 44/21
51/13 57/8
**can [23]** 9/12 16/15 21/25 23/6 23/13 24/6
27/9 29/7 29/23 29/24 29/25 30/19 31/6 32/5
33/20 36/10 39/24 43/1 45/13 47/3 47/4 47/25
48/23
**can't [2]** 36/18 42/25
**cannot [2]** 18/19 24/6
**capture [1]** 25/13
**captured [1]** 4/18
**carrying [1]** 64/13
**case [70]**
**cases [7]** 18/4 24/4 32/20 33/23 34/4 40/20
40/22
**casting [1]** 7/24
**casts [1]** 52/21
**categories [1]** 49/16
**cause [1]** 18/5
**cautious [1]** 33/19

**C**

**Cefali [1]** 3/12
**center [1]** 29/18
**CENTRAL [1]** 1/5
**certain [10]** 3/22 4/22 5/7 16/24 41/5 44/25 47/18 51/10 62/25 63/5
**certainly [8]** 13/18 18/1 18/2 44/17 45/14 47/8 47/12 53/7
**certificate [2]** 66/8 67/4
**CERTIFIED [1]** 1/9
**certify [1]** 67/6
**cetera [3]** 19/23 23/23 57/8
**challenge [2]** 23/11 60/25
**challenges [3]** 23/15 23/15 23/16
**chance [1]** 65/12
**change [4]** 18/6 32/9 35/24 38/8
**changes [3]** 5/7 18/21 36/14
**charge [1]** 32/23
**chart [2]** 39/9 53/2
**charts [3]** 21/15 56/17 56/19
**check [1]** 31/12
**checks [2]** 28/13 29/14
**chief [4]** 2/5 16/8 39/19 64/4
**choice [1]** 63/16
**chose [1]** 38/1
**CI [2]** 10/16 25/19
**CI's [1]** 26/25
**Circuit [4]** 17/16 17/17 17/20 18/4
**circumstance [1]** 27/5
**circumstances [1]** 41/20
**cite [1]** 18/3
**cited [2]** 17/15 40/21
**citing [1]** 27/25
**civil [1]** 5/16
**claim [1]** 20/11
**claimed [4]** 15/7 15/9 49/2 49/18
**claiming [1]** 19/13
**claims [3]** 9/23 21/23 22/3
**clarification [1]** 3/21 4/14
**clarifications [1]** 4/5
**classic [1]** 41/8
**clawback [1]** 42/6
**clear [7]** 13/7 15/4 15/4 17/6 17/21 18/3 51/21
**clearly [2]** 20/20 54/3
**Clemente [1]** 2/16
**clicked [1]** 6/10
**client [17]** 7/6 7/11 12/1 12/4 12/5 13/10 13/13 15/18 21/11 26/23 33/1 38/17 38/23 50/10 50/15 50/18 50/19
**client's [1]** 26/22
**clients [20]** 4/10 4/11 5/22 5/25 6/8 6/9 6/10 7/4 7/8 7/10 8/13 13/11 15/9 22/25 38/24 52/17 59/5 59/14 59/24 60/21
**Clifford [1]** 58/25
**close [2]** 47/3 47/5
**closely [1]** 55/8
**Code [1]** 67/7
**cold [1]** 9/1
**colleague [1]** 45/8
**collect [1]** 65/13
**collection [1]** 9/4
**collectively [1]** 5/24
**come [4]** 44/12 46/6 64/25 65/2
**comes [4]** 22/5 24/10 31/22 32/8
**comment [3]** 8/14 39/2 39/4
**comments [2]** 37/15 38/3
**communication [1]** 54/2
**company [2]** 10/19 25/22
**compare [1]** 34/23
**comparison [1]** 8/6
**compel [2]** 12/9 25/4
**complain [1]** 15/12
**complained [2]** 14/1 55/24
**complete [2]** 52/16 63/19
**completes [3]** 10/25 26/3 26/14
**comply [2]** 12/11 20/5
**comprise [1]** 10/18 25/21
**computer [6]** 8/19 8/21 10/20 11/8 25/23 44/22

**concentrate [1]** 20/12
**concern [2]** 42/6 ...
**concerning [1]** 32/4
**concerns [3]** 15/15 33/12 33/15
**conclude [1]** 38/10
**concluded [2]** 64/2 66/9 66/20
**conclusion [1]** 4/3
**conduct [3]** 58/10 62/14 62/15
**conducted [4]** 11/16 42/15 58/7 59/8
**conference [6]** 6/5 14/7 57/18 64/17 64/19 67/11
**conferring [2]** 36/4 39/1
**confirm [2]** 7/20 57/21
**conformance [1]** 67/10
**connection [2]** 10/15 25/18
**consented [2]** 10/16 25/19
**consequence [1]** 52/11
**consequences [3]** 14/25 42/8 43/25
**consideration [2]** 19/21 65/11
**considered [1]** 16/16
**constitutional [1]** 20/5
**consuming [1]** 38/19
**contact [1]** 55/2
**contain [1]** 52/17
**contained [1]** 49/4
**contempt [1]** 15/6
**context [2]** 20/16 41/17 62/11
**contingency [1]** 32/20
**continue [2]** 39/21 39/21
**continued [2]** 11/14 15/12
**continues [3]** 17/12 51/24 57/24
**contracts [2]** 32/14 60/14
**controlled [1]** 41/9
**conviction [1]** 17/22
**convince [1]** 23/21
**convinced [1]** 59/17
**copies [5]** 11/14 50/22 51/13 51/14 58/9
**copy [7]** 10/10 10/22 12/9 26/1 26/5 26/11 49/5
**correct [13]** 7/9 11/19 13/1 15/25 23/9 23/13 26/7 27/23 28/25 32/1 32/16 59/1 67/8
**correction [2]** 46/13 60/9
**correctly [1]** 42/16
**cost [5]** 15/22 15/23 16/14 19/15 53/6
**costs [31]** 13/23 16/4 21/21 22/5 23/3 24/21 28/13 29/1 29/12 29/15 29/21 30/12 31/11 31/15 31/22 31/25 32/25 33/7 33/22 35/5 35/8 37/14 39/1 39/14 50/10 52/18 55/16 58/14 58/21 59/5 60/13
**could [28]** 10/5 13/7 13/8 13/8 13/10 13/17 13/18 13/20 13/21 13/21 13/24 17/4 18/14 19/3 31/25 35/23 36/16 37/7 38/3 38/6 43/23 50/23 51/21 58/25 60/20 63/3 64/23
**couldn't [1]** 58/22
**counsel [11]** 2/1 2/15 3/7 3/19 5/12 10/3 36/4 39/1 44/21 45/5 45/21
**counted [1]** 35/20
**counts [1]** 64/23
**County [2]** 10/19 25/22
**couple [2]** 6/19 37/7 37/14
**course [2]** 46/25 47/3
**court [51]** 1/4 3/19 5/17 7/16 10/10 10/16 14/5 14/15 14/15 14/18 17/5 17/10 17/15 17/17 19/21 20/20 20/25 21/1 24/16 24/19 25/19 33/11 35/13 36/5 36/8 36/9 37/1 37/2 41/3 41/8 41/9 41/10 41/13 41/22 42/2 44/17 44/18 45/14 45/18 46/13 49/5 53/25 55/1 56/3 56/7 59/9 59/17 65/11 65/15 66/17 67/16
**Court's [5]** 6/12 9/19 43/7 44/6 49/20
**Court-appointed [1]** 10/16 25/19
**Courthouse [1]** 1/19 2/7
**cover [1]** 37/7
**craft [3]** 62/22 63/12 63/21
**created [2]** 12/1 39/9 43/12
**creating [4]** 10/17 10/20 25/20 25/23
**credibly [1]** 18/13
**credit [2]** 30/16 30/17
**criminal [2]** 2/5 5/16
**critical [2]** 56/14 56/17

**cross [14]** 15/17 16/8 28/19 29/4 29/6 31/24 /36/18 39/25 39/25 ... 45/21 61/10 62/25 63/5
**cross-examination [9]** 15/17 16/8 28/19 29/6 36/16 39/21 55/14 61/9 63/5
**cross-examine [2]** 55/21 62/25
**cross-examined [3]** 29/4 31/24 36/18
**crystal [1]** 15/4
**cue [1]** 36/5
**Cummings [1]** 3/12
**current [2]** 29/8 64/16

**D**

**D.C [3]** 7/18 11/8 51/13
**data [121]**
**database [1]** 43/5
**databases [1]** 25/5
**date [10]** 8/8 8/24 9/24 12/16 12/17 29/5 31/1 64/3 64/16 67/13
**Daubert [1]** 28/21
**day [4]** 1/12 35/1 58/7 66/15
**days [2]** 17/1 46/19
**dealing [1]** 20/17
**dealt [1]** 65/25
**DEAN [2]** 2/15 2/15
**December [1]** 5/7
**December 31st [1]** 5/7
**decided [1]** 16/8
**decides [1]** 19/21
**decrease [1]** 13/10
**deemed [1]** 5/9
**defendant [33]** 1/12 2/13 5/12 14/20 14/23 22/7 22/16 23/8 23/10 23/11 23/18 24/16 24/19 25/9 28/9 29/9 31/18 34/2 35/12 36/13 36/15 40/22 44/21 45/6 45/21 60/25 61/4 62/2 62/7 62/21 63/19 63/20 65/18
**defendant's [5]** 14/22 20/25 57/4
**defense [56]** 3/21 3/23 4/3 4/6 4/15 4/21 5/19 5/20 5/21 6/4 6/16 6/20 11/11 11/14 13/5 15/6 15/7 16/2 16/2 17/4 17/8 18/6 18/22 26/23 39/11 39/19 42/9 44/7 44/9 44/21 45/1 45/5 45/12 45/17 46/20 46/1 47/7 47/17 50/24 51/19 51/19 52/16 53/5 53/10 54/7 56/3 57/1 60/6 60/7 60/11 61/9 61/18 62/24 64/3 64/6 65/7
**defense's [1]** 64/4
**defined [2]** 5/10 49/25
**definitely [2]** 47/4 47/11
**delay [1]** 32/14
**delta [1]** 34/18
**demand [1]** 11/14
**demanded [1]** 16/25
**demonstrably [2]** 19/9 28/10
**demonstrate [1]** 20/21
**denied [3]** 12/8 62/21 65/4
**deny [1]** 57/21
**denying [2]** 37/17 44/7
**Department [1]** 11/7
**depending [1]** 8/7
**described [1]** 63/20
**despite [2]** 12/19 19/13
**detail [1]** 49/12
**details [2]** 51/24 55/14
**determination [2]** 44/5 46/8
**determine [4]** 4/10 6/9 25/12 46/21
**determined [1]** 45/8
**determining [3]** 21/20 42/8 59/5
**devices [3]** 10/17 25/20 49/7
**did [28]** 9/1 12/9 13/12 16/2 16/2 16/6 22/12 27/17 32/5 33/1 34/24 35/7 36/15 36/17 36/19 36/20 37/23 38/16 44/8 45/16 53/6 53/8 53/9 53/22 55/25 57/21 59/15 60/5
**didn't [21]** 15/10 20/14 30/3 30/5 32/1 33/6 34/15 35/1 35/14 35/21 35/22 37/23 47/21 51/1 51/14 52/5 56/1 59/23 61/16 61/11 63/15
**difference [6]** 31/2 31/5 31/7 31/14 43/15 46/3
**differences [1]** 52/5
**different [7]** 8/22 18/6 24/6 31/19 44/4 63/14

**D**

different... [1] 63/14
difficult [1] 42/12
digital [3] 10/17 25/20 42/17
diligent [3] 59/15 66/15 66/18
diligently [1] 43/6
direct [1] 49/20
directed [1] 14/19
directing [1] 14/15
direction [1] 44/16
directive [2] 17/6 17/6
directives [1] 65/9
directly [2] 42/1 52/24
disclosure [1] 35/7
discovered [1] 54/17
discovery [3] 4/15 7/16 14/11
discuss [2] 26/20 64/20
discussed [1] 25/2
discusses [1] 26/18
discussion [4] 24/1 41/18 51/5 51/22
disputes [1] 56/15
distinction [3] 42/23 42/25 43/2
DISTRICT [2] 1/4 1/5
DIVISION [2] 1/6 2/5
do [33] 4/13 7/24 8/5 9/19 16/11 17/11 19/4
  23/12 24/8 25/16 29/24 29/25 29/25 33/10
  36/3 36/22 38/2 39/19 39/20 39/24 40/2 40/4
  40/4 41/1 41/3 43/24 52/16 57/20 63/8 64/4
  65/3 65/13 65/21
Docket [6] 3/15 10/6 14/19 24/15 59/9 63/2
document [5] 5/6 6/25 10/13 49/6 53/19
documents [19] 9/4 12/14 20/10 25/14 35/9
  38/18 39/17 42/7 49/22 50/9 50/13 54/9 54/14
  54/16 54/18 55/4 56/10 59/13 60/10
does [11] 13/5 21/15 21/19 22/19 26/15 27/2
  27/20 28/5 40/8 41/17 51/16
doesn't [5] 22/16 23/21 32/9 51/19 51/23
doing [3] 22/7 24/20 43/1
dollar [1] 33/25
dollars [1] 21/18
don't [29] 8/9 8/15 9/7 17/24 18/16 19/23 22/2
  25/11 26/12 27/7 27/14 27/23 33/22 33/23
  33/25 34/16 34/20 37/3 37/19 38/8 41/16
  42/23 44/11 54/20 56/15 57/23 58/6 62/10
  65/20
done [9] 8/7 8/8 9/2 12/20 29/9 33/3 63/4
  63/13 63/14
double [1] 35/20
doubt [3] 52/21 62/2 62/3
doubting [1] 36/24
down [5] 16/13 39/6 44/13 45/7 60/12
DPPA [1] 14/17
draft [4] 15/24 15/25 31/9 59/12
drafts [1] 29/9
drag [1] 65/22
drew [1] 60/12
drive [1] 6/13
dropped [1] 29/16
Drum [13] 21/8 22/12 23/1 28/23 28/25 31/20
  35/8 36/17 39/20 53/12 55/21 60/18 63/1
Drum's [1] 56/17
due [4] 8/18 8/20 14/13 41/10
during [2] 11/6 12/2
Dynamics [1] 50/1

**E**

e-mail [2] 31/10 51/10
e-mailed [1] 28/15
e-mails [1] 30/14
EA [20] 10/14 10/16 10/18 10/20 10/21 10/21
  10/23 10/25 25/19 25/21 25/23 25/24 25/24
  26/1 26/3 26/21 26/24 50/15 57/6 57/9
each [13] 7/3 7/9 13/2 13/11 14/4 19/16 21/11
  23/6 30/20 34/4 38/16 56/2 66/9
Eagan [3] 11/25 26/19 49/8
earlier [3] 33/7 43/20 47/20
earliest [1] 24/12
early [2] 11/3 58/12
easily [1] 17/23

**E** (second column)

effort [6] 13/6 13/15 17/2 57/14 63/23 63/24
  64/1 66/16
efforts [1] 66/16
egregious [1] 30/7
eight [3] 5/11 12/23 17/1
either [9] 14/21 16/7 34/18 36/7 36/25 37/25
  41/20 54/24 65/22
electronic [3] 7/9 34/14 50/2
element [1] 59/5
else [1] 57/21
emphasize [1] 30/7
encompassed [1] 58/20
end [3] 8/21 34/5 63/11
ended [2] 42/12 49/1
enormous [1] 7/12
enough [1] 9/8
ensued [1] 62/20
ensure [1] 26/20
entire [4] 9/17 11/24 14/10 18/21
entirety [2] 6/22 38/21
entities [2] 49/25 50/6
entitled [7] 16/7 16/11 16/12 21/17 22/8 23/8
  23/12 23/14 23/16 23/23 34/5 59/6 60/25 61/4
  67/9
entries [1] 57/8
entry [1] 8/25
enumerates [1] 49/15
equation [1] 36/24
especially [3] 21/9 31/19 38/8
establish [2] 21/10 59/3
established [5] 15/16 27/19 32/13 36/24
  57/13
establishes [1] 62/4
estimate [1] 64/2
et [3] 19/23 23/23 57/8
even [26] 17/22 18/5 18/7 22/21 23/1 23/9
  23/12 25/2 29/16 29/17 30/7 30/15 30/23
  31/21 32/21 34/10 40/4 50/8 51/25 52/5 52/19
  55/16 55/24 60/2 60/12 61/22
event [3] 14/13 15/11 17/24
events [2] 4/2 25/11
ever [1] 21/20
every [8] 14/4 23/7 30/20 33/13 34/4 34/8
  38/16 66/15
everything [9] 7/21 15/10 22/11 25/8 29/5
  34/8 34/21 55/25 56/1
evidence [15] 10/24 10/24 14/21 23/9 26/2
  26/2 26/13 28/1 32/12 39/25 40/1 52/12 54/21
  62/5 62/8
exact [2] 11/12 60/23
exactly [6] 7/17 9/8 22/25 31/13 31/16 32/6
examination [10] 15/17 16/8 22/17 28/19
  29/6 36/16 39/21 55/14 61/9 63/5
examine [2] 55/21 62/25
examined [3] 29/4 31/24 36/18
examining [1] 63/13
example [5] 21/24 32/11 34/10 34/23 42/6
examples [2] 28/4 37/2
except [1] 18/16
exclusively [1] 56/19
exculpatory [12] 13/8 13/16 13/18 13/19
  13/20 13/21 13/22 13/24 14/9 38/4 38/5 51/18
Excuse [1] 3/25
executed [1] 9/22
exhaustive [1] 49/17
exhibit [11] 10/9 11/18 12/25 15/22 16/19
  20/21 28/8 31/10 57/4 59/11 59/12
Exhibit 1084 [1] 11/18
Exhibit 1085 [2] 12/25 57/4
Exhibit 174 [1] 31/10
Exhibit 193 [1] 31/10
Exhibit 48 [2] 28/8 59/11
exhibits [10] 9/17 10/5 15/21 16/21 19/8 21/8
  31/7 39/16 53/12 59/9
exist [2] 27/17 27/20
existed [4] 17/3 32/1 32/2 53/19
existence [5] 12/19 47/6 52/7 56/21 57/22
exists [2] 34/19 44/23
expedited [1] 65/21
expense [4] 16/14 29/17 29/18 57/8

expenses [25] 13/4 13/13 15/9 16/4 21/21
  22/8 24/25 29/9 29/20 29/22 29/23 29/25
  29/21 30/15 30/16 30/23 31/4 32/25 33/22
  35/6 39/5 39/10 39/13 57/7 57/9
experience [1] 38/14
expert [5] 18/24 19/12 19/13 19/13 35/7
explained [1] 17/10
exploring [1] 6/11
exported [1] 6/14
extended [1] 64/5
extensive [2] 29/6 59/9
extensively [1] 31/24
extent [6] 18/17 40/16 40/18 41/7 41/8 53/5
extra [1] 35/23
extract [1] 34/11
extraordinary [1] 55/11
extremely [1] 35/11

**F**

F.3d [1] 17/17
facie [1] 23/13
facility [1] 29/20
fact [13] 12/12 14/7 19/19 23/9 28/11 44/5
  47/16 47/18 49/5 51/11 53/22 54/3 55/6
facts [8] 27/15 41/5 41/11 41/12 41/13 41/22
  41/24 56/12
factual [3] 41/18 43/19 61/6
failure [4] 20/2 20/5 20/16 62/12
failures [1] 20/22
fair [4] 9/16 9/16 47/24 66/17
fairly [1] 62/17
fairness [1] 46/2
faith [6] 19/20 20/24 24/13 27/12 40/11 40/12
fall [2] 27/15 47/2
false [4] 19/9 19/10 28/10 34/2
familiar [1] 20/20
far [1] 4/5
fashion [4] 19/3 19/6 23/2 23/13
fast [1] 50/7
fast-forward [1] 50/7
favorable [6] 14/23 18/1 18/5 51/18 62/5 62/7
February [3] 29/2 30/21 31/1
February 3rd [1] 30/21
February 4th [1] 31/1
February 5th [1] 29/2
Federal [1] 2/10
FedEx [1] 29/14
fee [1] 60/13
feel [2] 37/14 45/13
fees [1] 30/10
few [3] 9/20 46/19 55/18
figure [1] 58/14
file [6] 7/9 7/9 7/10 25/3 37/4 54/1
filed [3] 5/6 6/2 6/25
files [22] 4/8 4/8 4/10 7/3 7/4 7/5 7/6 7/22
  7/25 8/2 8/9 12/1 34/14 34/17 38/20 38/23
  45/1 45/15 45/25 50/2 54/4 59/9
filing [3] 16/20 53/17 59/9
Filippo [2] 30/14 30/17
filtering [1] 43/10
filters [1] 43/4
final [2] 15/14 39/2
finally [4] 5/18 6/3 17/8 62/9
finances [4] 21/16 22/1 22/5 22/21
financial [11] 3/15 15/8 21/3 21/9 21/11 22/3
  22/17 50/4 50/5 56/14 56/19
find [13] 17/2 22/2 38/13 38/16 40/15 44/1
  62/5 62/9 62/14 62/15 62/20 64/9 64/11
finding [2] 30/6 62/19
findings [2] 3/17 64/9
fine [2] 28/18 37/4 38/7 65/16
finished [2] 4/6 6/4
firm [2] 38/21 50/1
first [13] 4/5 4/21 5/8 10/13 11/10 16/4 16/13
  23/17 43/14 45/13 56/14 57/7 63/10
Fitzgerald [12] 3/8 6/21 41/1 41/16 41/19
  41/21 49/1 49/2 54/6 54/7 55/1 61/10
five [4] 16/20 16/23 18/23 47/22
focus [3] 20/8 24/6 61/21

**F**

focuses [1] 45/18
folks [1] 66/14
follow [2] 6/24 27/18
following [4] 11/13 15/5 26/18 57/16
footnote [1] 29/17
forego [1] 41/24
foregoing [1] 67/7
forensic [20] 4/18 10/17 10/20 10/23 11/5
11/6 11/9 11/12 15/20 25/23 26/1 26/5 26/11
26/24 49/4 50/22 51/13 51/14 58/4 58/9
formal [1] 6/24
format [1] 67/10
former [1] 47/24
forth [9] 11/1 21/17 21/21 26/4 26/14 32/4
32/25 39/14 60/24
forward [1] 50/7
found [7] 6/11 10/5 14/10 20/11 40/6 42/7
47/6
four [3] 11/20 12/3 29/10
Fourth [1] 2/11
FOX [1] 2/4
frankly [2] 19/15 20/1
fraud [1] 34/1
Frauds [1] 2/6
free [2] 27/1 27/3
Friday [1] 17/5
front [1] 63/11
fulfill [1] 43/7
full [6] 8/5 18/17 20/12 30/1 37/17 44/7
fully [4] 27/23 33/11 36/19 57/12
further [9] 3/17 3/19 5/17 18/16 21/1 33/22
64/18 65/6 66/1

**G**

gain [1] 33/19
gaining [1] 55/3
Gardner [11] 29/25 30/3 30/12 36/7 38/15
38/22 52/7 52/13 52/13 59/22 59/25
gave [3] 30/16 30/17 37/23
generalized [1] 23/2
generally [1] 63/6
gentlemen [1] 13/2
Geoffrey [1] 32/8
get [11] 4/23 17/7 17/7 18/25 28/3 33/6 40/7
45/16 47/25 51/23 66/12
gets [6] 6/25 56/8 56/11
getting [2] 44/3 54/8
gigabytes [2] 7/13 7/18
Giglio [8] 12/15 13/21 14/1 14/6 18/8 18/10
23/22 37/22
give [2] 37/8 65/1
given [3] 6/7 61/16 63/23
glad [1] 26/20
go [20] 4/5 7/14 14/3 17/13 17/13 17/14 18/15
21/8 21/19 21/25 23/17 24/1 24/9 26/10 36/8
37/1 50/12 50/17 50/19 64/8
goes [3] 21/4 21/18 52/24
going [20] 7/13 8/14 9/17 12/11 14/3 18/25
19/22 22/7 37/13 38/10 39/16 41/4 41/14
47/20 48/3 50/3 65/23 65/25 66/12 66/16
gone [3] 9/18 20/22 58/9
good [7] 3/5 3/10 3/11 3/13 19/20 24/13 27/12
good-faith [1] 24/13
got [2] 7/12 44/16
government [66] 5/19 8/12 10/22 10/25 12/10
12/13 13/15 14/16 14/19 14/21 15/9 15/21
16/3 16/13 16/16 17/2 19/11 19/20 19/23 20/7
20/12 20/23 22/18 23/22 25/3 26/3 26/14
27/14 31/8 35/10 36/4 39/1 39/4 39/6 41/15
43/12 44/2 44/11 44/12 49/13 49/16 49/17
49/18 51/5 51/17 51/20 52/15 52/22 53/3 53/4
54/3 55/8 55/8 56/15 56/16 56/16 56/23 57/12
59/15 60/2 60/4 60/22 60/24 62/9 65/14 66/1
government's [13] 10/15 15/2 18/23 22/13
25/18 34/25 37/19 43/16 43/17 60/17 61/23
62/3 63/6
grab [1] 45/6
grant [6] 20/25 21/22 39/24 56/3 64/14 65/19

granted [2] 19/18 65/18
greater [2] 30/18 30/20
grounds [1] 61/22
guess [3] 17/11 22/14 40/19
guidance [1] 47/25
guideposts [1] 9/20
guilt [2] 14/22 14/23

**H**

had [51] 12/9 12/22 13/22 14/1 14/3 14/6 14/8
14/11 15/4 15/7 15/10 19/11 23/19 24/15
24/17 25/14 26/10 27/3 34/6 34/11 34/14
34/15 34/21 38/2 42/5 43/21 45/21 46/6 47/6
47/10 47/10 47/19 52/13 52/21 54/6 54/10
54/11 54/12 55/22 55/25 58/9 58/14 58/20
58/22 59/16 59/18 59/22 63/4 63/4 63/15
65/12
handed [1] 49/5
handled [1] 12/5
handwritten [1] 56/25
HANNA [1] 2/3
happen [2] 36/15 44/19
happened [9] 4/2 6/3 7/17 17/1 34/4 37/20
41/18 41/25 44/14
happens [1] 8/7 21/20
happy [2] 51/23 56/3
hard [4] 6/13 9/1 33/5 43/6
has [39] 6/16 9/15 9/18 10/22 12/13 17/16
19/1 20/22 21/1 21/9 25/25 27/25 30/1 32/13
32/17 33/13 33/18 34/6 34/11 34/20 34/22
35/10 39/7 39/11 39/15 39/18 39/25 40/1 40/9
40/10 40/16 41/15 41/25 42/10 45/24 55/1
55/5 55/7 62/16
hasn't [2] 27/19 34/20
have [127]
haven't [2] 18/17 54/22
having [7] 11/7 25/5 25/6 43/15 43/16 47/23
62/23
he [97]
he's [52] 22/22 29/22 30/6 35/8 39/19
hear [2] 32/3 37/5
heard [9] 9/11 39/25 40/1 54/6 54/11 54/22
54/24 55/1 65/9
hearing [1] 21/4
heart [1] 21/4
held [4] 9/4 44/2 51/13 67/9
help [2] 55/4 66/16
helps [1] 53/3
her [5] 9/22 21/19 30/13 36/18 57/6
here [19] 10/8 10/14 23/6 26/6 34/16 34/24
35/2 41/16 41/21 44/14 45/14 47/4 48/4 54/22
57/17 57/20 62/20 66/6 66/7
hereby [1] 67/6
hiding [1] 35/14
him [18] 21/10 22/23 26/16 29/14 29/14 29/22
30/16 30/17 33/19 34/11 35/5 35/5 37/21
37/24 39/3 39/18 39/24 40/3
himself [1] 60/12
his [32] 5/12 25/17 29/1 29/11 29/13 29/13
29/14 29/18 29/20 30/22 30/23 31/21 32/19
33/6 33/9 34/7 37/24 38/2 39/4 39/9 39/11
39/12 39/19 39/21 45/21 51/25 60/19 60/20
62/22 63/2 63/12 63/12
hold [1] 64/5
home [1] 9/22
Honor [96]
Honor's [3] 12/12 52/5 65/9
HONORABLE [1] 1/8
hourly [2] 32/23 32/24
hours [5] 12/23 17/12 25/11 38/12 41/25
house [2] 42/19 47/21
housing [1] 29/20
how [12] 12/1 13/24 14/11 15/19 17/3 18/25
20/21 22/7 32/4 32/18 32/23 33/6 35/21 38/3
39/10 53/3 53/24 53/25

**I**

I'll [1] 4/6

I'm [32] 4/6 8/12 8/14 9/17 14/3 15/11 16/23
17/4 18/25 19/7 19/11 20/9 21/24 22/7 27/9
27/22 28/3 30/6 33/12 33/17 34/19 34/19
37/13 38/10 40/14 41/14 43/13 51/23 53/3
56/3 60/8 65/23 66/12
I've [2] 10/10 37/11
identical [2] 31/2 59/11
identified [8] 10/4 29/17 46/9 46/18 46/19
61/7 61/11 61/24
image [5] 10/17 10/20 25/20 25/23 26/24
images [6] 11/5 11/6 11/9 11/12 49/4 58/4
immediately [2] 15/14 50/17
impanel [1] 64/24
impartial [1] 66/17
importance [4] 12/19 53/6 53/11 53/14
important [5] 9/20 12/7 15/19 41/5 42/11
importantly [1] 12/4
impossible [1] 8/4
inability [1] 44/1
inaccurate [3] 28/16 28/20 40/15
inadvertence [1] 62/12
inadvertently [1] 62/9
inception [1] 40/2
include [3] 7/7 32/1 49/25
included [7] 7/21 8/1 29/5 29/5 47/9 49/8 58/4
including [12] 15/13 16/22 22/20 24/7 24/22
40/9 50/1 50/4 50/5 50/16 62/23 63/4
income [1] 13/12
incorrect [2] 22/9 23/4
increase [1] 13/9
inculpatory [1] 13/8
indeed [1] 18/4
indicate [2] 56/24 61/7
indicated [2] 57/5 59/20 61/10
indicating [1] 66/9
Indictment [3] 10/1 42/14 52/18
individuals [1] 11/20
information [47] 3/19 4/17 5/1 5/10 5/12 5/14
5/22 6/10 6/21 7/8 8/22 8/25 9/8 10/3 10/5
11/15 14/1 14/6 14/9 14/16 14/20 15/13 17/13
17/13 17/14 17/23 17/25 18/5 18/14 19/7
19/15 25/10 26/21 34/21 49/16 51/18 51/18
52/3 52/19 52/21 52/23 53/15 53/20 55/4
55/10 55/13 63/4
informed [2] 12/3 12/4
informs [2] 9/5 41/12
initial [3] 27/25 43/10 61/12
input [1] 28/16
inquire [1] 53/23
inquiry [3] 6/12 36/11 58/3
instruction [1] 33/25
integral [1] 15/17
intelligently [1] 9/9
intent [1] 52/25
intention [1] 37/5
intentional [1] 64/12
interest [1] 8/5
interim [3] 15/23 28/14 64/19
interjected [1] 16/4 39/5
interpose [1] 41/14
interrupt [1] 60/8
interview [9] 9/24 11/16 11/21 12/8 12/23
20/19 56/22 57/2 57/4
interviews [1] 57/11
introduced [3] 31/8 31/17 32/10
investigate [1] 26/11
investigation [3] 10/15 25/18 42/14
investigative [2] 57/19 58/2
invite [1] 4/6
iPhone [1] 4/22
irrelevant [1] 32/20
IRS [6] 8/20 10/16 25/19 26/25 44/13 44/21
IRS-CI [2] 10/16 25/19
IRS-CI's [1] 26/25
is [167]
isn't [4] 28/17 30/7 39/15 40/12
isolated [1] 20/2
issue [16] 4/11 9/16 14/15 14/23 16/4 36/3
45/18 45/22 47/3 47/5 47/15 51/15 52/11

issue... [3]  53/1 57/2 65/17
issued [4]  10/1 14/18 17/5 49/12
issues [5]  3/20 20/17 22/4 42/1 43/18
it [181]
it's [32]  7/13 8/1 8/22 10/9 15/18 17/11 17/17
19/23 22/6 23/21 23/25 27/6 28/10 28/17
29/19 30/8 30/10 32/24 33/5 35/1 37/5 39/6
40/10 40/13 41/15 47/17 52/10 52/10 55/19
55/20 59/23 65/24
Item [1]  3/3
itemized [1]  30/23
items [4]  15/7 38/14 38/15 38/15
its [18]  12/13 12/15 13/11 13/16 17/6 17/6
25/13 40/16 40/18 44/7 47/16 51/17 51/20
54/1 59/8 61/9 62/25 64/13
itself [1]  59/2

**J**

JAMES [1]  1/8
January [4]  14/18 49/23 51/21 52/2
January 2011 [1]  49/23
January 2021 [1]  51/21
January 25th [1]  14/18
Jencks [1]  20/18
JOHN [6]  1/11 2/14 3/4 32/22 35/8 39/20
Johnson [16]  15/22 16/23 29/10 29/22 29/24
30/19 31/4 31/20 32/8 35/20 36/6 38/15 38/22
53/13 59/11 59/21
Johnson's [1]  30/22
JUDGE [1]  1/8
judged [1]  47/1
judgment [2]  47/4 47/5
Judicial [1]  67/11
Julian [1]  10/7
July [4]  11/16 12/6 56/22 58/13
July 25 [1]  56/22
July 25th [2]  11/16 12/6
July 28 [1]  58/13
June [1]  35/12
jurors [1]  66/6
jury [12]  3/2 16/14 19/10 22/6 33/25 39/25
52/12 60/19 64/1 64/5 64/24 66/17
just [13]  5/24 7/22 27/12 34/23 35/12 37/7
39/7 41/15 41/25 45/6 47/17 54/13 58/22
Justice [1]  11/8
JVS [2]  1/11 3/3

**K**

Karlous [7]  9/24 11/21 12/22 16/22 49/11
56/24 57/16
kept [2]  32/19 35/21
Kim [1]  11/22
knew [6]  42/24 42/24 45/18 53/11 55/25 56/1
know [19]  15/10 18/16 20/20 26/12 27/22
34/9 34/16 34/18 35/5 36/18 37/12 43/14 44/1
51/11 52/14 54/20 57/23 58/6 61/15
knowing [1]  37/13
knowledge [2]  40/17 40/18
known [4]  14/21 39/11 39/15 54/2

**L**

L.A [1]  7/19
lab [1]  11/8
lack [2]  38/15 55/15
large [1]  66/14
largely [1]  5/5
last [22]  3/14 6/4 8/13 8/20 9/18 16/20 17/5
17/11 18/11 22/3 22/25 25/11 26/19 38/11
41/25 44/24 52/16 52/21 56/8 56/11 58/3 60/5
lasting [1]  12/23
Lastly [1]  53/16
late [1]  8/12
later [4]  8/8 8/14 12/7 29/11
latest [1]  17/1
law [7]  2/15 38/21 41/11 41/13 41/22 46/2
50/1
lawyers [1]  32/19
learned [1]  56/23

least [8]  15/23 18/23 33/1 38/7 59/4 61/19
63/12 64/10
leave [1]  8/15 51/1 64/24
legal [5]  41/24 42/1 43/11 43/18 43/20
less [1]  30/16 38/12
lesser [1]  61/2
let [29]  23/17 28/11 34/9 35/5 41/12 45/5 46/5
53/16 58/1
let's [1]  6/24
letter [4]  25/17 50/7 50/12 66/9
level [1]  35/23
license [1]  4/12
lied [1]  29/22
light [4]  14/11 46/6 57/25 64/7
like [17]  3/18 5/3 9/10 22/4 22/21 26/5 28/3
65/10 65/13 65/16
likely [2]  52/24 61/8
limited [1]  17/10
lines [4]  4/7 4/14 7/2 7/15
list [2]  6/8 45/13
listed [5]  5/23 7/3
listing [2]  15/22 15/23
literally [1]  17/2
litigation [1]  5/28
little [3]  16/15 18/19 32/15
lived [3]  63/18 63/23 63/25
living [6]  29/13 29/17 29/18 29/20 30/23 31/4
LLP [16]  10/14 10/16 10/18 10/21 10/21 10/23
10/25 12/1 25/19 25/21 25/24 26/1 26/3
26/21 26/24
LLP's [1]  50/15
loan [2]  29/10 31/3
located [1]  54/14
location [1]  10/4
lodge [2]  36/9 37/2
long [10]  20/21 32/12 37/12 38/16 39/18 39/25
42/11
long-run [1]  42/11
look [21]  5/21 8/19 12/20 19/12 21/7 29/7
29/19 31/7 32/21 36/25 38/7 40/20 48/1 49/14
53/9 58/15 58/16 58/18 58/23 65/12 65/24
looked [1]  6/8
looking [1]  47/1
looks [1]  56/17
Los [1]  2/8
loss [1]  59/21
losses [1]  21/10
lot [6]  8/22 8/22 17/12 17/13 17/14 35/20

**M**

machine [4]  7/21 7/25 8/3 8/10
made [33]  4/15 4/17 4/19 11/2 12/16 12/17
13/6 13/15 14/5 14/8 15/3 17/2 17/20 18/14
20/9 20/12 22/3 22/18 24/13 27/25 38/4 45/7
46/8 51/5 51/7 51/10 51/12 54/24 55/5 55/6
55/17 56/9 57/14
mail [2]  31/10 51/10
mailed [1]  28/15
mails [1]  30/14
maintained [1]  12/2
major [2]  2/6 42/13
make [14]  16/12 23/10 23/14 23/16 25/17
36/10 37/8 37/14 42/23 44/9 46/2 53/16 58/20
63/16
makes [2]  18/3 23/3
making [5]  36/12 42/15 44/5 44/18 58/3
malfunction [1]  8/19
managed [1]  19/10 25/22
manner [1]  14/20
many [4]  17/19 19/6 19/6 23/19
March [5]  6/2 9/21 35/7 49/23 50/14
March 25 [2]  49/23 50/14
March 25th [2]  6/2 9/21
Marchino [2]  30/14 30/17
mark [2]  61/3 61/5
Maryland [1]  2/9
matched [1]  32/6
matches [1]  31/12

material [22]  5/8 5/20 6/11 6/15 16/16 27/2
27/4 27/6 27/20 28/3 47/4 47/4 60/5
59/14 61/8 61/8 62/24 63/11 63/22 63/24 64/7
materiality [1]  17/21 59/3
materials [15]  27/21 46/8 46/9 46/18 49/22
50/9 50/13 59/16 59/18 61/11 61/13 61/13
61/24 62/1 63/20
math [1]  24/20
matter [5]  31/11 55/7 55/14 64/15 67/9
matters [1]  5/13
may [18]  4/12 5/12 10/2 10/8 10/14 11/3
16/23 25/17 26/22 42/6 43/18 56/6 56/16 58/6
61/1 61/22 62/17 64/11
May 24th [3]  10/8 10/14 11/3
May 4th [1]  25/17
maybe [3]  16/20 35/24 38/12
mayor [1]  47/24
me [16]  3/25 9/3 9/5 23/17 23/21 28/11 37/1
37/8 41/12 46/5 53/16 58/1 61/7 61/10 61/16
65/2
mean [4]  13/23 20/14 42/23 60/5
meaning [2]  24/23 27/14
means [1]  59/17
meant [1]  60/7
Meanwhile [1]  13/25
measured [1]  65/25
mechanism [2]  25/9 25/12 38/2
medical [1]  29/18
meet [1]  17/24
meeting [1]  4/3
members [2]  23/13 57/18
memo [1]  56/25
memorandum [1]  11/25
memorialize [2]  3/21 5/3
mention [1]  38/20
mentioned [1]  11/5 37/24 40/9
merits [1]  44/3 66/12
methods [1]  60/18 60/20
MICHAEL [4]  1/11 2/14 3/4 3/11
Michelle [1]  32/11
Microsoft [1]  50/1
middle [1]  15/16
might [3]  53/1 63/13 63/14
million [3]  21/19 34/17 50/16
mind [2]  15/2 28/17
minimum [3]  16/21 28/17 28/19
minor [1]  55/19
minute [2]  39/11 48/4
Miramar [1]  2/16
misappropriated [1]  60/24
misconduct [3]  64/9 64/10 64/12
misfunction [1]  8/21
misses [1]  27/12
missing [6]  15/12 20/10 25/1 25/9 34/9 34/14
mistaken [1]  30/11
mistrial [3]  20/9 65/8 65/18
MixinIT [2]  10/19 25/22
MJ [1]  49/6
modifications [1]  6/20
modified [1]  5/3
moment [1]  4/9
money [11]  13/9 13/10 21/18 21/19 22/8
28/15 29/3 33/5 33/6 33/9 34/2
month [3]  12/7 12/8 54/5
months [6]  29/11 29/19 33/4 33/7 33/8 55/18
moot [1]  65/4
more [11]  23/1 23/19 30/7 34/17 36/20 42/11
42/11 47/23 50/8 51/21 57/2
morning [10]  3/5 3/10 3/11 3/13 8/7 57/15
58/13 61/7 61/18 65/10
most [6]  11/20 12/4 17/25 18/2 29/8 63/2
motion [10]  9/6 10/6 12/8 19/17 19/17 20/25
25/3 41/16 56/3 65/8
motions [3]  19/21 20/9 65/4
motive [1]  52/25
move [1]  65/20
moved [2]  14/14 15/6
moves [1]  29/20
moving [1]  56/11

**M**

Mr [6] 6/21 41/16 41/19 53/25 60/18 63/11
Mr. [73]
Mr. Andre [6] 11/2 11/13 11/23 26/9 53/24 54/25
Mr. Andre's [1] 25/17
Mr. Arden [1] 16/23
Mr. Avenatti [10] 5/13 6/18 9/10 27/25 37/5 56/21 59/6 60/12 60/23 63/3
Mr. Avenatti's [2] 3/14 9/6
Mr. Barela [7] 16/22 29/24 31/5 32/22 33/4 33/9 53/13
Mr. Drum [9] 21/8 22/12 23/1 28/23 28/25 31/20 53/12 55/21 63/1
Mr. Drum's [1] 56/17
Mr. Fitzgerald [8] 41/1 41/21 49/1 49/2 54/6 54/7 55/1 61/10
Mr. Johnson [8] 16/23 29/10 29/22 29/24 31/4 31/20 35/20 53/13
Mr. Johnson's [1] 30/22
Mr. Sagel [5] 11/22 14/8 21/3 51/22 54/25
Mr. Steward [2] 3/12 10/2
Mr. Tashchyan [2] 7/20 7/24
Mr. Varani [7] 4/19 7/17 8/1 11/6 11/9 50/23 51/12
Mr. Varani's [2] 7/22 8/10
Mr. Wyman [1] 54/25
Ms [11] 9/22 11/17 12/23 16/22 31/10 31/13 36/17 53/14 57/3 57/5 58/12
Ms. [10] 3/12 12/3 21/19 21/24 29/25 30/3 30/12 35/16 52/7 56/22
Ms. Cummings-Cefali [1] 3/12
Ms. Gardner [2] 29/25 30/3 30/12 52/7
Ms. Phan [1] 21/24
Ms. Phan's [1] 21/19
Ms. Regnier [3] 12/3 35/16 56/22
much [2] 14/11 32/23
multiple [2] 28/10 37/24
must [4] 62/5 62/8 62/19 62/20
my [18] 4/9 6/7 6/14 15/19 24/20 27/15 33/15 37/5 39/2 42/12 45/8 47/20 53/1 53/4 53/5 56/13 64/9 65/13
myriad [1] 13/23

**N**

namely [2] 19/11 42/14
nature [4] 7/7 13/11 13/16 20/18
NAV [1] 50/1
necessary [7] 37/3 39/12 39/13 39/23 40/5 40/12 40/13
need [10] 4/12 9/7 18/20 25/10 37/14 39/10 40/6 41/4 48/1 65/24
needed [5] 15/3 36/11 40/3 44/16 49/18
needless [1] 8/21
needs [6] 8/8 39/20 39/22 40/4 44/6 45/20
net [2] 59/6 60/14
never [17] 13/8 13/9 13/15 19/11 19/14 19/14 28/12 28/17 33/21 34/18 52/13 54/23 54/24 55/1 55/5 55/6 61/15
new [11] 5/18 29/18 29/20 31/3 32/8 39/15 46/5 46/6 63/23 64/14 65/19
newly [4] 46/9 63/20 63/22 64/7
next [1] 58/7
NICOLA [1] 2/3
night [12] 3/14 6/4 8/13 8/20 16/20 18/12 22/3 35/1 38/11 44/24 52/16 52/21
nine [2] 33/4 33/6
Ninth [4] 17/16 17/17 17/20 18/4
no [53] 3/16 5/6 5/21 8/9 11/15 14/9 14/9 15/4 17/2 18/9 19/4 21/2 21/25 24/15 29/12 29/15 29/23 30/2 30/9 30/11 31/11 32/11 33/17 35/14 37/25 38/13 39/24 43/14 45/11 49/3 50/21 50/24 51/25 52/10 54/20 54/21 56/5 57/14 58/9 58/16 59/16 59/22 59/25 60/13 60/22 62/14 62/15 64/9 64/10 64/11 66/2 66/7
non [1] 23/14
non-winning [1] 23/14
noncompliance [1] 14/25

**N**

North [1] 2/7
not [128]
noted [3] 51/16 52/4 52/7
notes [2] 20/19 56/23
nothing [11] 12/20 17/1 17/2 30/19 30/20 31/17 31/18 32/2 36/14 53/8 53/9
notice [4] 53/8 53/14 56/20 57/12
notification [1] 54/7
November [2] 12/21 57/3
November 19 [2] 12/21 63/3
now [24] 5/4 8/23 9/1 16/18 17/22 19/8 19/19 28/23 33/2 33/24 44/23 45/13 45/22 52/7 52/11 52/13 54/20
number [14] 4/8 7/3 7/15 9/21 16/19 20/9 20/10 34/6 34/17 49/15 60/24 60/25 62/21 63/3
numbers [4] 7/9 20/21 33/10 38/20

**O**

objection [1] 41/15
obligation [8] 12/13 23/22 26/10 27/2 27/3 27/8 27/16 51/17
obligations [2] 12/15 51/20
obtained [3] 10/22 25/25 34/2
obviously [9] 9/15 36/6 37/11 37/21 42/24 43/23 45/5 53/11 64/3
occasion [1] 51/10
occasions [4] 23/18 23/19 37/16 37/24
occur [1] 61/16
occurred [3] 20/3 58/6 62/20
October [8] 42/6 44/20 44/25 51/8 64/15 64/22 64/22 64/23
October 12 [1] 64/15
October 12th [1] 64/23
October 17th [1] 64/22
October 2019 [1] 44/20
October 24th [1] 64/22
odd [1] 54/13
odyssey [1] 9/18
offer [2] 30/3 44/12
offered [2] 59/21 59/25
office [6] 4/4 6/6 7/19 8/20 26/25 44/23
offices [3] 2/15 7/19 44/21
Oh [1] 46/15
Okay [4] 8/17 10/12 57/25 66/3
Olson [3] 18/3 20/6 24/4
omissions [1] 34/3
once [8] 4/5 10/25 12/3 26/3 26/13 42/21 45/7 45/16
one [38] 3/20 9/21 14/7 14/21 15/6 16/9 20/2 20/3 23/7 27/14 30/20 33/1 34/4 34/23 36/3 37/8 37/25 38/16 38/25 39/6 39/9 39/11 42/5 45/13 47/23 51/10 52/1 52/4 52/13 53/13 54/22 54/23 55/1 56/17 58/9 58/22 62/4 66/9
one-time [1] 52/1
only [14] 5/15 12/9 13/7 13/10 13/12 16/12 31/2 31/5 31/7 32/16 32/25 37/18 38/3 59/17
open [1] 45/14
opening [6] 39/9 39/12 53/1 53/4 62/23 63/12
opinions [1] 19/9
opportunity [9] 26/24 36/9 39/19 40/3 62/22 63/16 65/1 65/10 65/20
opposed [2] 41/16 41/25
Orange [2] 10/19 25/22
order [15] 5/3 5/6 6/21 12/12 14/14 14/15 14/18 14/19 14/24 15/3 15/5 15/8 44/8 44/8 51/21
ordered [2] 44/11 52/2
other [37] 4/11 5/13 5/16 13/17 18/4 20/17 22/4 23/12 23/14 32/16 32/18 33/1 33/3 33/7 36/23 37/8 38/1 40/2 41/24 42/10 44/5 47/25 50/2 52/19 52/25 56/4 56/16 57/18 59/13 59/13 59/24 60/3 60/21 61/22 62/6
others [2] 30/7 21/23 45/11
otherwise [4] 20/15 55/14 58/25 64/12
ought [1] 64/16
our [25] 4/3 10/5 10/9 12/8 15/14 15/15 16/19

18/11 23/25 24/5 24/11 24/21 27/7 34/8 34/21 37/12 38/20 47/23 60/25
out [27] 6/1 17/3 23/9 26/17 30/8 31/6 31/11 38/17 42/10 42/19 42/20 47/6 51/2 51/17 52/22 54/13 57/3 58/12 58/14 58/18 59/4 59/6 59/18 60/14 61/7 64/13 65/2 65/22
outdated [2] 28/20 30/10
outlined [3] 17/8 18/11 18/14
outlines [1] 63/3
outside [1] 45/4
over [15] 5/15 7/17 7/22 8/1 9/18 11/3 12/23 20/7 24/19 24/20 27/13 35/1 36/8 37/1 37/22 45/12 52/24
overall [4] 6/8 60/17 62/22 64/20
oversight [1] 20/3
owed [2] 13/9 13/11 15/18
own [1] 38/2

**P**

p.m [2] 4/16 7/16
packet [1] 10/11
page [11] 4/7 9/1 26/18 49/21 50/7 50/12 57/15 57/24 58/13 63/2 67/10
page 10 [1] 50/12
page 40 [1] 57/15
page 41 [1] 57/24
page 5 [1] 63/2
page 7 [1] 49/21
page 9 [1] 50/7
page 93 [1] 58/13
paid [3] 21/16 30/14 35/17
papers [1] 14/4
paragraph [11] 5/8 5/10 5/11 5/24 6/1 13/2 26/19 49/21 50/8 57/4 57/5
paragraphs [1] 49/21
parallels [1] 17/19
parameters [1] 45/3
paraphrasing [1] 15/11
part [17] 15/18 21/10 21/17 24/2 27/14 41/24 42/10 42/13 42/22 43/22 60/19 61/12 62/14 62/15 64/9 64/10 64/12
partially [2] 21/5 21/13
particular [5] 10/9 49/15 56/25 60/18 63/1
particularly [2] 56/18 59/4
parties [5] 4/20 5/2 9/2 44/23 65/1
parties' [1] 66/16
parts [1] 36/23
party [1] 56/11
passage [1] 14/13
passed [6] 27/13 46/10 46/23 47/13 61/14 61/19
past [3] 24/4 46/19 64/3
Patrick [1] 3/7
Pause [1] 37/10
pay [2] 35/21 35/22
paying [1] 29/22 31/3
payment [5] 50/16 55/17 55/20 55/20 59/6
payments [7] 29/10 29/10 29/13 29/13 30/22 31/3 55/17
pending [3] 10/6 53/17 65/4
penny [1] 31/13
people [1] 22/8
percentage [1] 60/14
Perche [1] 33/4
perfect [1] 43/13
perhaps [1] 30/10
period [4] 20/7 22/2 52/20 64/5
permission [2] 5/11 5/17
perplexed [1] 53/3
personal [1] 66/9
personally [1] 58/1
perspective [4] 18/22 22/6 22/9 42/12
pertinent [1] 25/10
Phan [5] 21/24 32/12 38/22 60/3 60/13
Phan's [1] 21/19
photographs [1] 4/22
pieces [2] 28/1 59/10
place [1] 64/16

**P**

placed [1] 20/19
Plaintiff [1] 1/10 2/2
plan [2] 66/7 66/8
platter [1] 23/24
please [4] 28/7 34/9 42/3 48/23
plus [1] 9/19
podium [1] 9/13
point [14] 3/20 16/12 16/15 18/15 22/15 23/15
26/17 35/14 37/25 45/15 53/8 53/16 63/15
65/11
pointed [2] 56/21 58/12
points [3] 6/19 38/10 64/8
portion [1] 64/17
position [5] 27/8 28/1 33/15 39/3 39/11 40/23
possessing [1] 27/9
possession [20] 11/7 23/25 24/5 24/11 24/21
24/23 24/25 27/7 27/8 34/8 34/22 34/25 37/22
39/17 40/10 43/12 43/16 43/17 51/3 53/20
possible [1] 19/5
post [3] 17/22 42/14 55/16
post-conviction [1] 17/22
post-Indictment [1] 42/14
post-settlement [1] 55/16
potential [1] 50/4
potentially [2] 22/11 27/20
prefer [1] 20/12
prejudice [9] 18/11 18/17 31/18 36/13 36/22
55/10 62/19 62/20 65/9
prejudiced [1] 62/25
prejudicial [1] 18/25
preparation [2] 55/9 63/6
prepare [1] 64/7
prepared [3] 40/14 49/10 63/22
preparing [1] 20/4
present [4] 3/2 3/12 11/21 24/8
presentation [1] 9/7 22/13 62/23
presentations [1] 61/6
presented [2] 32/7 43/5
PRESIDING [1] 1/8
presumption [1] 65/17
previously [1] 54/10
Price [3] 18/4 20/6 24/3
prima [1] 23/13
print [1] 38/17
printed [1] 31/6
printout [1] 35/3
printouts [3] 36/6 52/15 52/22
prior [1] 54/25
privilege [30] 3/8 3/24 4/1 4/21 4/24 5/14 9/4
11/11 25/13 27/11 27/21 41/5 41/19 42/4 42/8
42/13 43/25 44/8 46/19 46/21 47/11 53/21
53/22 54/2 54/8 54/12 54/13 55/3 55/7 62/16
privileged [1] 47/12
PRO [1] 2/14
probably [4] 4/17 9/23 21/15 64/25
problem [2] 20/22 63/10
procedures [1] 26/20
proceed [6] 18/20 19/3 19/5 28/6 64/15 64/23
proceeded [1] 16/18
proceeding [1] 5/17
proceedings [5] 1/15 37/10 48/6 66/20 67/9
process [10] 7/12 7/23 8/18 14/14 22/20
24/11 35/4 38/19 61/12 62/18
process of [1] 8/18
processes [1] 43/9
produce [15] 10/24 12/13 13/6 13/15 14/16
14/20 23/22 26/2 26/13 27/2 27/3 46/23 53/9
54/9 54/14
produced [41] 5/1 5/2 5/9 6/16 7/5 7/6 7/7
11/10 12/20 13/5 14/2 14/3 14/6 14/12 15/3
15/4 15/5 15/7 15/10 17/4 17/7 17/8 18/8
18/10 19/7 24/14 34/16 45/15 45/16 46/1 47/9
52/2 54/1 54/4 54/10 54/19 55/11 62/7 62/11
63/22 64/7
production [5] 8/12 16/25 61/23 62/1 63/19
programs [2] 49/22 50/13
prong [1] 36/23
proper [1] 36/10 65/19

property [1] 34/2
proposal [1] 49/24
proposed [1] 50/4
prosecution [34] 3/7 3/22 6/6 6/16 11/20 24/8
24/14 24/17 24/24 24/25 25/16 27/13 27/16
40/16 42/9 42/24 45/24 45/25 46/11 46/23
47/13 49/19 53/18 54/9 54/15 54/18 54/20
55/2 59/8 59/16 59/23 61/15 62/15 64/10
prosecutors [1] 47/16
Protection [1] 14/14
protocols [3] 11/1 26/4 26/14 26/15 45/5
prove [3] 34/1 34/1 60/23
provide [13] 3/9 4/1 4/24 5/12 13/15 22/11
27/9 29/23 32/5 34/15 36/7 40/3 51/19
provided [20] 5/14 9/3 10/10 12/10 25/7 33/9
34/8 34/10 34/22 35/4 35/9 35/12 36/15 39/18
50/23 52/15 52/23 55/22 59/9 60/14
provides [3] 26/16 49/12 57/15
providing [1] 26/23
proving [2] 51/18 59/21
provision [1] 5/18
punishment [2] 14/22 14/24
pure [2] 21/11 44/4
purpose [2] 51/24 55/3
purposeful [1] 60/5
purposes [2] 42/25 43/11
pursuant [5] 5/2 18/8 18/10 44/6 67/6
put [18] 6/13 6/22 14/4 16/9 19/10 22/6 24/16
24/19 28/9 33/24 52/12 53/24 57/16 60/24
61/3 61/4 65/2 66/13
putting [3] 16/14 42/17 51/15
puzzled [1] 54/11

**Q**

qualifies [1] 17/23
question [21] 8/9 15/1 16/15 17/25 18/1 18/9
18/19 22/11 22/12 22/14 22/17 25/1 30/11
49/3 50/21 50/24 51/25 53/8 53/21 57/16
60/20 61/3 61/5 61/16 61/20 63/5 63/8
questioning [4] 55/12 57/13 58/7 60/11
questions [4] 11/25 21/1 52/5 56/4
quibbling [1] 47/15
quick [1] 22/24
QuickBooks [27] 4/8 13/4 15/3 17/14 20/13
20/17 27/21 30/13 30/17 34/11 34/11 35/6
35/16 35/17 45/15 46/6 47/8 50/2 51/7 52/24
53/7 54/1 54/4 57/7 58/17 58/18 61/11
quickly [1] 37/8
quote [7] 12/6 29/8 43/21 57/5 57/6 57/6
62/10
quote/unquote [1] 29/8 43/21

**R**

rather [2] 8/4 14/10
Re [1] 3/15
reach [1] 53/22
reached [1] 3/23
read [2] 17/16 26/12
ready [2] 43/8 54/8
Reagan [1] 2/10
really [6] 19/20 36/22 42/5 42/10 46/2 59/14
reason [8] 8/3 27/6 27/10 31/14 32/5 33/24
36/21 39/25
reasonable [2] 43/7 47/16
reasons [8] 13/18 13/23 19/6 19/16 20/24
32/12 56/2 64/14
rebuttal [1] 37/5
recall [3] 18/22 20/9 57/20
received [3] 3/14 54/7 61/17
Receiver [4] 10/16 10/22 25/19 25/25
recent [1] 63/2
recess [4] 39/23 40/3 40/5 48/5
recognize [1] 15/19
recommended [1] 33/25
record [9] 6/23 12/24 30/3 32/6 37/14 40/8
40/14 41/4 44/6
records [13] 29/3 33/10 33/20 35/17 35/24
36/1 49/22 49/24 50/3 50/9 50/11 50/13 60/17

recovered [1] 60/15
reduction [1] 63/22
reference [1] 4/8
referenced [3] 15/15 32/17 53/1
references [4] 28/9 32/18 33/1 40/22
referencing [1] 38/5
refers [2] 4/16 29/9
reflects [2] 13/2 37/20
regard [4] 4/20 15/15 24/21 40/20
regarding [1] 11/25
regards [9] 22/1 28/8 31/5 35/19 36/6 37/16
38/9 38/25 40/1
Regnier [12] 11/17 12/3 12/23 16/22 31/13
35/16 36/17 53/6 56/22 57/3 57/5 58/12
Regnier's [2] 9/22 31/10
regular [1] 55/2
regulations [1] 67/11
rehash [1] 9/17
relate [2] 4/10 4/11
related [4] 7/2 38/18 55/9 59/13
relates [9] 7/4 8/14 30/21 31/20 31/20 33/6
35/15 50/19 56/24
relating [15] 5/13 5/22 6/21 7/8 8/13 15/8
49/23 50/3 50/10 50/14 50/18 52/7 53/17
59/24 59/25
relativity [1] 43/5
relevance [2] 7/10 47/16
relevant [24] 6/12 10/23 10/24 14/22 16/16
17/25 19/24 26/1 26/2 26/13 26/22 27/12
27/20 36/10 38/24 47/2 47/13 51/6 52/3 52/6
54/17 60/13 61/8 61/14
reliable [1] 28/22
relied [1] 28/18
relief [3] 19/17 21/22 65/20
relieve [2] 51/16 51/20
rely [4] 42/25 43/1 53/12 58/22
relying [2] 35/8 35/9
remarkable [1] 14/11
remedies [2] 40/7 40/21
remedy [2] 63/8 63/9
rep [1] 44/13
repeat [2] 63/7 64/9
repeated [4] 12/10 20/15 20/22
repeatedly [3] 14/5 32/17 55/24
reply [3] 10/6 10/9 53/24
report [10] 3/15 3/21 7/3 15/14 15/15 17/9
18/11 57/3 57/6 63/2
reported [1] 67/8
reporter [2] 17/17 67/16
REPORTER'S [1] 1/15
reports [8] 8/13 8/15 8/23 8/24 8/25 22/25
29/7 33/20 52/19 57/8 59/10
represent [1] 53/25
representation [9] 11/2 11/13 14/8 37/18
37/19 50/15 54/24 55/5 64/1
representations [6] 12/17 14/5 27/24 34/3
56/9 61/17
represented [1] 37/21
request [7] 34/7 37/17 43/7 45/14 45/17 47/7
65/18
requested [4] 9/3 10/3 19/17 45/1
requests [2] 10/8 45/7
require [2] 38/23 63/18
required [4] 14/16 18/7 53/3 60/23
requirements [3] 20/5 20/6 62/4
requires [2] 50/8 62/1
reserve [1] 8/14
resolve [1] 65/17
respect [6] 20/10 21/23 41/10 60/2 60/12
60/21
respectfully [2] 43/19 44/3
respond [5] 4/6 26/7 39/7 39/8 40/19
responded [2] 10/7 34/7
response [1] 15/8
responsible [4] 42/13 42/17 42/18 45/19
results [1] 60/20
resumed [1] 48/6
retained [1] 10/2
retrial [1] 64/21

**R**

retrospect [2] 42/20 47/18
returned [2] 10/21 25/24
revenue [1] 13/12
review [52] 3/8 3/22 3/24 4/1 4/21 4/22 4/24
5/14 5/21 9/5 10/25 11/11 17/10 17/12 18/18
18/21 22/24 25/13 26/3 26/14 26/15 26/24
27/11 27/21 27/25 33/18 33/20 38/23 41/5
41/19 42/4 42/13 44/1 44/8 46/20 46/21 47/11
51/11 51/24 52/20 53/21 53/23 54/3 54/8
54/12 54/13 54/16 55/3 55/7 56/12 62/16
62/18
reviewed [7] 44/23 45/2 46/7 46/10 46/20
47/10 61/13
reviewing [1] 6/4
right [6] 22/17 23/6 24/20 28/24 36/19 46/16
rightfully [3] 51/16 52/4 52/6
road [2] 16/13 39/6
Roberson [1] 12/21
Ronald [2] 2/10
room [1] 6/5
RPR [1] 1/19
rule [6] 9/5 9/9 10/3 18/8 37/6 41/4
ruling [1] 56/13
run [1] 42/11

**S**

SACR [2] 1/11 3/3
SACR-19-00061-JVS [2] 1/11 3/3
SAGEL [9] 2/9 3/5 9/24 11/22 12/22 14/8 21/3
51/22 54/25
said [15] 4/24 7/19 9/10 10/8 10/14 25/3
28/25 30/14 31/21 32/1 34/20 40/15 46/13
47/11 60/4
same [11] 11/8 11/12 26/5 26/18 28/14 33/24
44/22 50/17 50/19 52/9 52/10
sampling [1] 9/3
San [1] 2/16
Santa [4] 1/16 1/20 2/11 3/1
sat [1] 45/7
say [17] 5/24 8/21 18/16 20/1 21/5 21/13
25/10 33/13 37/13 38/6 41/1 45/14 47/4 55/18
60/6 60/7 63/22
saying [9] 22/22 28/12 28/17 30/6 33/12
33/17 33/18 34/19 38/1
says [5] 24/3 24/3 26/19 31/11 39/3
scenario [1] 38/7
schedule [2] 65/1 65/14
scope [1] 12/14
screening [1] 61/12
screens [1] 4/22
screenshots [1] 4/23
scrutinize [1] 35/24
SE [1] 2/14
search [33] 3/15 5/23 6/1 9/21 10/23 11/1
12/14 24/9 26/1 26/4 26/15 42/15 42/20 43/4
43/13 45/3 45/4 45/9 46/14 46/15 46/22 47/12
47/21 47/23 49/5 49/7 49/16 49/17 50/9 58/10
59/8 59/15 61/12
searched [1] 11/9 49/13
searches [2] 4/18 44/25
searching [2] 47/9 47/21
seating [1] 66/17
second [8] 4/14 5/1 5/11 36/3 37/8 38/25
56/20 57/9
section [2] 26/18 67/6
secure [1] 57/14
see [8] 32/3 33/2 33/6 33/21 36/10 36/14
38/23 56/12
seek [2] 16/3 51/17
seemed [1] 54/12
seems [3] 26/9 61/16 63/24
seen [5] 25/8 35/19 45/21 45/22 45/24
SEFFENS [3] 1/19 67/15 67/16
seize [2] 42/19 44/2
seized [22] 10/24 26/2 26/13 42/21 42/22
43/2 43/3 43/3 43/21 43/23 43/25 47/10 47/19
47/19 49/3 49/3 49/13 50/21 50/22 50/25
53/20 59/19

seizure [1] 43/10
SELINA [1] 1/8
send [4] 29/14 42/19 66/7 66/8
sending [2] 42/8 42/9
senior [1] 11/20
sense [2] 21/6 21/14
sensitive [1] 5/9
sent [4] 6/15 7/17 7/22 8/1
September [7] 44/20 44/25 47/7 51/8 64/18
64/19 65/3
September 2 [2] 64/19 65/3
September 2019 [1] 44/20
September 27 [1] 64/18
September of [1] 47/7
September/October of [1] 51/8
serious [1] 52/21
serve [1] 23/24
server [21] 7/7 10/15 10/18 10/21 10/21 10/23
10/25 12/1 12/2 24/9 25/21 25/24 25/24 26/1
26/3 26/22 26/25 37/17 38/11 51/6 51/8
servers [17] 10/4 10/20 11/14 12/9 23/20 25/6
25/23 26/19 37/23 38/13 44/7 49/4 49/8 53/19
57/22 58/5 58/9
service [3] 3/15 66/8 66/10
session [2] 57/15 58/13
set [9] 6/1 8/11 11/1 26/4 26/14 44/22 44/24
64/17 64/18
sets [1] 8/6
setting [1] 56/13
settled [1] 31/25
settlement [11] 21/18 29/3 29/11 29/19 31/22
33/5 50/16 55/16 55/18 55/19 59/7
seven [2] 18/23 29/19
several [5] 22/15 22/20 28/11 31/15 36/20
severed [1] 64/17
SHARON [3] 1/19 67/15 67/16
she [4] 9/23 9/23 12/4 31/10
sheets [2] 32/19 32/20 32/21 35/4
shocking [1] 19/15
short [8] 22/1 39/23 40/3 40/5 52/20 63/18
63/23 63/25
short-lived [3] 63/18 63/23 63/25
shortcomings [2] 62/18 64/11
shortcut [1] 50/3
should [24] 5/25 10/11 10/13 18/9 19/7 19/18
21/16 27/13 33/8 41/19 43/24 43/25 44/2 46/2
55/12 55/13 55/15 55/20 55/22 63/8 64/21
65/8 65/21 66/18
shouldn't [1] 65/22
show [16] 8/15 8/15 22/21 23/13 29/7 29/8
31/6 32/2 32/5 36/11 38/18 38/18 40/8 51/23
52/5 61/1
showed [1] 39/10
showing [4] 20/12 21/15 24/14 60/17
shown [2] 28/20 61/1
shows [4] 31/18 31/19 51/23 59/14
side [4] 41/5 41/20 42/13 47/25
significance [3] 57/2 57/12 58/11
significant [5] 55/20 59/23 63/18 66/13
similar [3] 44/24 47/23 58/7
similarly [2] 32/11 59/22
simply [1] 57/20
since [3] 10/22 25/25 34/11
single [1] 57/20
sins [1] 27/14
Sir [2] 23/21 56/8
sit [5] 23/23 34/16 44/13 57/17 57/20
sitting [1] 37/13
six [6] 7/13 7/17 10/17 16/20 25/20 45/10
skipping [1] 22/20
skips [1] 24/4
small [3] 3/20 46/12 47/23
so [35] 6/22 7/8 12/9 16/14 17/3 17/12 20/12
21/17 21/21 23/1 23/17 26/7 29/25 32/4 32/20
32/24 32/25 33/5 33/17 33/15 35/23 36/9 36/11
37/12 39/14 39/15 39/18 42/17 44/20 45/7
45/10 45/18 50/21 63/6 63/16 65/12
software [4] 4/13 6/11 8/24
solve [1] 63/10

some [23] 7/10 19/3 21/23 22/1 23/12 28/3
28/21 32/9 32/14 32/24 32/25 43/6 45/4 45/5
54/6 54/12 55/12 55/19 56/21 61/19 62/17
65/12 65/24
something [15] 14/10 25/1 25/3 25/9 34/9
34/13 41/2 43/16 43/17 43/21 43/22 45/4 47/1
63/13 63/14
sometime [1] 14/8
sometimes [1] 47/3
sorry [1] 60/8
sought [1] 40/21
sound [1] 41/18
sounds [1] 26/5
SOUTHERN [1] 1/6
speaking [2] 20/15 20/16
speaks [1] 19/19
special [9] 9/23 11/21 11/21 12/21 12/22
16/22 38/11 49/11 56/24
specialist [1] 44/22
specific [10] 7/11 25/2 25/3 28/1 28/2 28/3
38/17 38/24 45/16 50/8
specifically [5] 10/4 12/12 28/25 38/9 52/1
specifics [2] 28/4 28/5
spend [1] 19/22
spring [2] 2/7 49/11
staff [1] 44/15
standard [4] 17/21 17/22 17/23 17/24
stands [1] 18/20
start [6] 21/14 28/11 31/1 41/12 48/25 64/25
started [1] 17/6
starts [1] 24/7
stated [1] 6/21
statement [10] 12/17 25/17 26/8 38/4 39/12
40/17 53/1 53/5 62/23 63/12
statements [7] 15/23 15/24 15/25 32/3 34/3
39/9 41/17
states [5] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
3/4 3/6 3/9 6/5 12/12 67/7 67/11
status [8] 3/14 3/21 7/2 15/14 15/15 17/9
64/17 64/19
stenographically [1] 67/8
steps [1] 22/20
STEWARD [4] 2/15 2/15 3/12 10/2
still [17] 7/12 8/8 13/4 18/16 29/8 38/2 39/18
39/19 43/15 52/6 64/3
stored [4] 10/18 10/19 25/21 25/22
straight [1] 60/14
strategy [4] 18/6 18/7 18/7 63/21
Street [3] 1/20 2/7 2/11
stricken [1] 5/13
strictly [1] 20/16
strong [2] 54/21 65/17
struck [1] 18/24
stuff [1] 32/8
subject [4] 28/19 46/9 49/24 50/5
submit [5] 13/14 43/19 52/10 55/6 65/11
subpoena [2] 46/10 46/13
subpoenaed [1] 25/13
subsequently [1] 15/6
substantial [3] 18/11 19/1 27/12
substantiated [2] 20/11
substantiates [1] 22/3
such [4] 10/4 19/21 26/23 30/23
sudden [2] 54/8 54/19
sufficient [2] 59/3 61/22
sufficiently [1] 9/5
suggest [3] 20/15 25/12 54/21
suggesting [2] 19/2 21/22
suggestion [2] 44/15 44/17
suggests [1] 56/16
Suite [3] 1/20 2/11 2/16
sum [1] 56/18
summary [1] 41/7
summed [1] 21/8
Sunrise [1] 29/20
supervision [1] 6/7
supplement [3] 3/17 4/2 6/3
support [8] 22/25 23/2 23/3 30/4 30/15 33/10
33/22 33/23

**S**

support is **[1]** 30/15
supported **[1]** 49/10
supports **[2]** 31/16 32/9
suppose **[1]** 27/10
suppressed **[2]** 62/8 62/10
sure **[7]** 9/14 17/16 27/22 28/3 37/9 42/15 58/20
system **[9]** 4/18 4/23 6/5 6/14 44/22 44/24 44/24 45/22 57/9
systems **[2]** 13/3 57/6

**T**

table **[2]** 3/7 40/2
Tabs **[95]**
taint **[6]** 27/11 27/15 47/10 62/16 64/11 64/13
take **[7]** 4/21 7/13 31/11 36/5 38/16 45/20 48/3
taken **[3]** 22/10 33/18 48/5
taking **[2]** 42/7 55/15
talk **[1]** 14/24
talked **[3]** 20/18 42/5 53/2
talking **[6]** 15/11 24/7 26/6 28/23 35/2 47/22
talks **[3]** 24/2 24/3 31/2
Tashchyan **[3]** 7/20 7/24 58/8
tasks **[1]** 42/5
team **[64]** 3/7 3/8 3/22 3/24 4/1 4/21 4/25 5/14 6/6 6/16 9/5 11/11 11/20 24/8 24/14 24/17 24/24 25/13 25/16 27/11 27/11 27/13 27/15 27/16 27/21 40/16 41/19 42/5 42/9 42/24 43/5 44/8 45/24 45/25 46/11 46/20 46/21 46/24 47/11 47/14 53/18 53/21 53/23 54/5 54/9 54/12 54/14 54/15 54/22 55/2 55/3 55/7 57/19 58/2 59/8 59/16 61/15 62/15 62/16 62/16 64/10 64/11 64/13
Team's **[2]** 24/25 44/1
technical **[1]** 8/3
techniques **[1]** 63/6
ten **[5]** 33/4 33/7 33/8 48/4 49/7
ten-minute **[1]** 48/4
tend **[1]** 62/2
terabytes **[1]** 47/22
term **[1]** 49/25
terms **[3]** 27/16 47/2 64/21
tertiary **[1]** 36/2
test **[1]** 36/12
testified **[1]** 11/6 23/1 29/1 31/14 35/16 38/9 58/12
testimony **[4]** 9/23 58/8 59/2 61/6
than **[6]** 8/4 30/16 30/18 34/17 40/3 64/4
Thank **[13]** 3/25 6/17 10/12 21/2 40/23 40/25 46/4 48/2 48/3 56/5 60/9 66/3 66/19
thanking **[1]** 66/10
that **[395]**
that's **[31]** 10/5 12/24 16/16 21/11 21/13 24/2 27/23 28/2 31/22 32/1 34/21 36/2 36/25 37/3 37/4 38/4 38/21 38/21 40/17 46/15 49/25 52/14 53/24 53/24 54/19 54/20 54/24 62/10 64/16 65/3 65/16
their **[12]** 4/22 6/22 7/7 8/21 21/18 32/14 45/7 55/4 58/8 60/13 64/22
them **[29]** 6/22 12/4 16/3 20/20 20/21 21/16 21/18 23/7 30/20 31/6 32/6 35/4 36/7 37/1 37/25 38/17 44/9 44/12 45/2 45/8 45/9 45/10 45/11 45/12 46/10 56/13 61/14 66/8 66/9
themselves **[1]** 25/6
then **[24]** 4/20 5/15 5/18 6/3 6/10 6/15 7/23 15/16 16/18 18/15 32/22 32/24 39/2 42/18 42/22 43/10 44/20 45/8 47/10 57/24 61/20 63/20 64/24 65/13
theory **[4]** 23/11 52/1 62/22 63/12
there **[86]**
there's **[12]** 8/9 8/22 8/24 8/25 8/25 13/23 16/20 22/4 30/11 35/23 52/19 54/21
therefore **[1]** 43/22
thereof **[1]** 38/15
these **[33]** 4/10 7/8 8/13 11/5 11/5 11/8 16/21 19/16 22/8 22/25 29/21 29/21 31/3 32/18 32/19 33/7 33/20 33/21 33/23 34/4 34/24 35/8

35/10 35/24 36/25 39/16 39/20 41/17 41/20 48/5 48/4 61/11 66/10
they **[70]**
they're **[2]** 21/17 66/7
they've **[2]** 45/22 51/3
thing **[6]** 50/18 50/19 54/22 54/23 55/1 57/20
things **[20]** 20/18 22/15 33/21 35/10 35/20 36/19 37/8 42/18 42/19 42/21 43/2 43/3 43/4 43/11 45/6 47/18 52/1 52/25 63/3
think **[45]** 9/5 9/7 9/8 14/7 16/20 16/23 17/22 18/13 19/23 20/24 22/4 22/19 23/8 23/11 23/14 24/13 26/6 28/11 34/16 34/18 37/18 37/19 39/4 40/23 42/1 42/11 46/1 47/24 55/17 57/2 58/11 59/2 59/23 60/1 60/19 61/3 61/6 61/21 62/10 62/16 62/21 65/15 65/21 66/16
third **[2]** 3/23 4/1
this **[130]**
those **[19]** 4/24 6/10 7/3 8/2 8/15 10/8 11/11 13/2 16/2 20/11 20/24 31/15 33/20 42/4 43/9 43/10 44/25 45/10 46/8 46/9 46/18 51/24 53/19 56/2 56/18 57/11 59/24 63/7 64/4
though **[6]** 60/12 61/22
thought **[6]** 34/13 39/2 44/12 44/17 45/9 55/4
thoughts **[2]** 65/3 65/13
three **[6]** 3/20 5/8 5/10 21/14 59/4 62/4
through **[30]** 4/7 4/14 7/2 7/14 7/15 11/11 12/5 14/3 15/13 16/17 17/13 17/14 17/14 21/25 23/6 28/10 30/20 31/15 31/21 35/4 38/12 43/4 43/9 45/2 46/14 47/7 49/23 55/12 56/18 62/12
tied **[2]** 35/17 35/25
time **[36]** 8/5 8/5 11/10 13/25 13/25 14/2 14/2 14/4 18/20 19/22 20/22 24/12 29/4 32/19 32/20 32/22 33/13 34/8 37/12 38/1 38/19 46/20 52/20 53/8 54/6 54/12 56/21 63/19 63/21 64/6 64/6 65/5 65/24 66/13 66/14
time-consuming **[1]** 38/19
timeline **[1]** 9/18
timely **[1]** 14/20
times **[3]** 24/7 35/1 60/5
timing **[2]** 12/7 64/20
Title **[1]** 67/7
today **[6]** 8/7 22/4 34/24 54/23 57/17 57/20
told **[10]** 9/25 12/3 33/11 45/10 45/11 45/25 54/17 55/25 57/18 66/18
too **[3]** 22/1 22/4 31/6
took **[3]** 23/18 37/25 51/2
top **[1]** 49/21
total **[2]** 31/11 39/13
totality **[1]** 24/17
totally **[1]** 45/4
touched **[1]** 55/11
town **[2]** 47/23 47/24
track **[5]** 13/4 13/12 35/21 57/7 57/9
tracked **[1]** 13/12
traction **[1]** 17/7
Tran **[4]** 32/12 38/22 60/3 60/13
transactions **[4]** 31/3 32/18 50/4 50/5
transcript **[4]** 1/9 1/15 67/8 67/10
transparent **[2]** 35/11 40/16
treading **[1]** 43/18
trial **[31]** 1/12 9/22 11/7 15/14 15/16 18/6 18/20 19/2 19/5 20/3 20/4 31/8 31/17 31/19 32/7 32/9 32/10 32/13 43/8 54/5 54/18 55/9 57/13 58/12 59/11 59/20 64/14 64/15 64/25 65/19 66/10
true **[2]** 53/1 67/7
trying **[1]** 4/23
TUESDAY **[1]** 3/1
turn **[3]** 26/17 35/1 37/22
turned **[3]** 42/10 42/20 45/11
twice **[2]** 12/4 45/23
two **[33]** 3/21 7/15 8/6 9/19 11/3 13/3 14/22 16/21 18/4 19/7 23/18 31/7 33/21 34/14 37/16 38/10 38/12 42/5 43/9 46/1 51/8 53/12 54/5 57/6 57/11 57/17 58/3 59/10 59/24 60/2 60/5 62/8 64/8
two-plus **[1]** 9/19
twofold **[1]** 39/8

**U**

U.S **[1]** 7/19 10/7 11/22 12/18 12/22 49/9 61/25 67/16
ultimately **[1]** 49/12
unallocated **[1]** 52/18
unclear **[1]** 8/1
under **[2]** 6/7 10/14 14/16 17/22 23/11 27/2 27/5 28/21 30/17 36/11 36/22 41/20 42/20 43/3 44/18 45/9 46/2 46/22 47/2 51/20 51/25
undermine **[2]** 28/1 28/5
underneath **[1]** 50/17
understand **[4]** 7/17 41/17 46/17 53/6
understanding **[2]** 4/9 6/15
Understood **[1]** 66/11
UNITED **[14]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 3/3 3/6 3/8 6/5 67/7 67/11
unless **[2]** 21/1 36/19
unlikely **[1]** 63/24
unquote **[2]** 29/8 43/21
until **[2]** 8/20 17/5
up **[13]** 6/24 15/13 16/7 21/8 23/24 29/2 29/19 31/21 42/12 44/22 44/24 54/16 58/21
updated **[1]** 31/12
upon **[5]** 27/15 28/18 35/8 35/10 54/16
us **[12]** 4/19 7/13 7/20 7/24 14/5 24/10 25/5 34/9 34/14 51/11 54/13 54/17
use **[12]** 5/15 9/12 16/3 16/12 16/18 18/6 18/14 34/23 36/17 54/18 55/13 55/15
used **[14]** 12/6 13/3 16/17 16/21 28/16 30/13 30/14 32/25 36/16 38/6 38/7 57/6 57/9 59/20
useful **[2]** 36/13 60/16
using **[1]** 35/11
usual **[1]** 66/8
utilize **[1]** 39/20
utilized **[2]** 28/13 28/15

**V**

valid **[2]** 45/9 45/10
value **[1]** 39/3
Varani **[7]** 4/19 7/17 8/1 11/6 11/9 50/23 51/12
Varani's **[2]** 7/22 8/10
various **[4]** 8/13 24/6 55/16 59/10
vendor **[1]** 4/13
versus **[3]** 3/4 35/16 61/25
very **[16]** 7/7 11/3 13/11 13/16 17/10 18/13 22/24 32/12 33/19 36/21 37/8 38/16 41/5 41/23 43/6
victim **[2]** 59/5 64/23
victims **[4]** 21/11 21/14 21/23 60/3
videotapes **[1]** 34/25
view **[1]** 15/19
violation **[2]** 40/7 61/20
virtual **[15]** 4/17 4/23 6/4 6/14 7/21 7/25 8/2 8/10 23/20 38/11 38/13 44/24 45/22 51/6 51/8
volume **[3]** 27/12 61/17 63/23
voluminous **[1]** 38/19
voluntary **[1]** 44/10
vs **[1]** 1/10

**W**

wait **[3]** 23/23 30/2 30/2
walk **[2]** 23/6 30/19
want **[12]** 7/16 9/19 20/8 37/1 37/4 37/14 38/6 41/1 56/12 64/8 64/25 65/20
wanted **[4]** 6/22 23/19 54/4 54/18
wants **[1]** 36/20
warrant **[21]** 5/23 6/2 9/21 10/22 11/1 25/25 26/4 26/15 42/20 43/4 45/3 45/4 45/9 46/15 46/22 47/3 47/23 49/6 49/7 49/12 61/13
warrants **[4]** 12/14 24/10 42/15 46/14
was **[196]**
Washington **[3]** 7/18 11/8 51/13
wasn't **[12]** 20/11 22/22 28/21 32/24 44/14 50/22 51/12 55/19 55/22 59/20 60/19 62/11
watched **[1]** 66/14
watching **[1]** 66/15
way **[12]** 5/21 7/20 21/7 26/12 26/15 33/14 39/8 51/6 51/7 52/23 53/4 54/1

**W**

**ways [1]**  62/21

**we [137]**

**We'll [1]**  61/15

**we're [3]**  4/23 35/2 35/11

**we've [4]**  26/6 34/7 34/8 35/12

**week [2]**  64/24 64/25

**weekend [1]**  5/15

**weeks [1]**  31/15

**well [23]**  6/24 8/4 11/3 12/15 12/18 13/17 16/6 18/4 20/8 21/7 21/18 22/16 23/15 24/13 27/10 27/24 28/2 28/16 30/7 39/18 41/23 43/23 57/25

**went [7]**  14/24 16/13 39/6 43/4 43/5 45/2 47/21

**were [78]**

**weren't [8]**  8/19 16/7 32/19 42/21 42/22 45/5 46/19 60/18

**West [2]**  1/20 2/11

**what [101]**

**what's [7]**  9/4 9/8 24/4 24/11 30/18 32/10 34/18

**whatever [8]**  27/10 30/18 31/1 34/17 38/20 39/22 40/4 65/20

**whatsoever [1]**  13/6

**when [38]**  6/24 7/5 11/5 17/5 19/21 20/11 20/15 22/5 24/2 24/7 29/20 31/2 31/7 31/21 31/22 32/8 32/21 35/7 35/17 36/12 36/22 36/25 38/20 39/9 40/15 40/20 43/7 44/14 45/18 47/22 47/24 53/18 55/8 55/24 55/25 58/12 58/14 65/17

**where [14]**  10/4 17/3 25/2 25/7 26/16 29/9 39/10 40/19 47/15 47/20 47/25 49/1 53/23 59/4

**Whereupon [1]**  66/20

**whether [22]**  15/2 16/6 19/19 25/12 28/14 28/14 28/17 29/4 31/24 34/4 36/16 36/17 40/9 43/20 44/15 44/16 46/8 46/21 47/1 52/9 52/10 58/3

**which [37]**  4/10 4/11 5/3 5/23 5/24 5/25 6/1 6/5 6/9 7/23 10/18 19/15 22/2 25/21 26/18 29/8 30/21 30/23 31/10 33/8 34/7 34/15 34/24 35/15 35/24 36/17 44/23 45/15 45/22 45/25 49/6 49/8 49/10 49/12 51/21 59/18 61/23

**while [4]**  7/14 7/18 21/15 52/25

**who [13]**  13/22 13/22 30/14 33/1 39/5 39/6 39/25 41/15 43/6 44/22 45/18 45/19 45/21

**Who's [1]**  55/18

**whom [2]**  25/15 59/25

**why [16]**  13/14 13/18 13/23 16/16 21/13 27/6 28/2 33/6 33/21 35/23 36/25 39/25 41/13 45/11 54/19 58/18

**will [27]**  4/12 5/9 5/24 7/10 8/15 10/24 18/3 18/15 20/1 21/13 26/2 26/13 32/22 33/13 34/18 36/5 38/22 39/8 41/23 49/20 55/6 57/5 64/15 64/22 65/3 65/19 66/3

**willful [2]**  62/14 62/15

**willfully [1]**  62/9

**winning [2]**  23/14 23/15

**wire [1]**  34/1

**withdraw [2]**  28/13 28/15

**within [8]**  7/22 8/10 12/14 49/4 52/18 53/19 55/18 58/4

**without [5]**  25/5 25/6 37/13 38/4 44/3

**witnesses [10]**  16/19 16/21 18/23 28/10 28/12 36/20 38/9 63/1 63/5 63/13

**won't [1]**  63/7

**word [3]**  56/8 56/11 62/11

**words [1]**  23/14

**work [2]**  33/2 33/2

**worked [2]**  43/6 55/7

**working [2]**  5/20 13/22

**would [84]**

**wouldn't [3]**  21/3 22/10 63/17

**wrong [5]**  41/10 41/11 41/11 41/13 58/25

**WYMAN [3]**  2/5 3/6 54/25

**Y**

**year [1]**  24/20

**years [12]**  9/19 11/4 19/8 20/7 30/25 33/21 50/14 51/5 51/11 51/13 57/23 57/23

**yes [12]**  3/18 22/14 23/25 24/18 27/6 41/3 43/24 46/12 46/15 46/25 48/24 58/24

**yesterday [12]**  3/17 3/23 4/2 4/19 5/2 5/9 5/15 9/3 11/9 11/10 17/8 50/23

**yet [2]**  46/20 53/8

**you [90]**

**you're [3]**  19/2 28/17 28/23

**you've [5]**  9/3 20/9 21/7 24/13 54/23

**your [113]**

**Z**

**zero [2]**  21/18 45/24