Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 497-6753

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>SECOND JOINT REPORT OF DEFENDANT AND THE PRIVILEGE REVIEW TEAM RE SEARCH OF SERVERS FOR FINANCIAL DATA |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, and the Privilege Review Team, by and through Assistant U.S. Attorney Patrick Fitzgerald, hereby file their Second Joint Report re Search of Servers for Financial Data.

**Defendant's Position**

**A. The Tabs and QuickBooks Data**

Approximately three weeks ago, on August 20, 2021, this Court directed the government to provide defendant with all of the Tabs and QuickBooks data not previously produced. Unfortunately, as explained below, this still has not occurred.

On August 15, 2021, Mr. Avenatti filed a Notice of Motion and Motion to Dismiss the Case or In the Alternative Motion for Mistrial due to the Government's (1) Failure to Produce Information as Required by Rule 16, *Brady*, *Giglio*, and (2) Contempt of this Court's January 25, 2021 Order. This motion was brought as a result of the government's failure to produce the Tabs and complete QuickBooks data from the Eagan Avenatti, LLP servers. [Dkt. 705.]

On August 20, 2021, the Court held a hearing on the matter with AUSA Patrick Fitzgerald, head of the Privilege Review Team (the "PRT"), present. At the conclusion of the hearing, the Court ordered the PRT to cooperate with the defense over the weekend in order to allow for searches for financial information to be conducted on the Eagan Avenatti, LLP ("EA") servers. Following the hearing, the defense immediately secured the services of forensic expert Mr. Ernest Koeberlein. That same day, Mr. Fitzgerald began coordinating with IRS-CID Special Agent Nshan Tashchyan to ensure that the servers would be available for inspection over the weekend. During the afternoon and evening of Friday and throughout the day on Saturday, the PRT and the defense cooperated in an effort to carry out the directives of the Court. On Sunday at 10 a.m., the parties met at the U.S. Attorney's Office in downtown Los Angeles for approximately two hours the purposes of inspecting and searching the servers, which had been set-up for use as a windows interface. The defendant was present with his advisory counsel, paralegal and Mr. Koeberlein. Mr. Fitzgerald was present with Mr. Tashchyan. This review showed the existence of the Tabs program on the servers, but the parties were not able to access the program due to a password issue. Further, because the PRT's

1  forensic copies of the servers were not yet readily searchable, it was not possible to
2  search for the actual financial data (i.e. the Tabs cost data).  At the conclusion of the
3  meeting, it was agreed that the forensic copies of the servers would need to be searched
4  for the data and a parallel effort would be made to acquire the password for the program
5  itself so that some of the data could ultimately be viewed once located. In the interest of
6  time, the PRT reached out to Mr. Joseph Varani from the DOJ computer lab in
7  Washington, D.C. because Mr. Varani had previously testified at trial that he had created
8  searchable forensic copies years prior.
9       Subsequent to the meeting, Mr. Fitzgerald contacted Mr. Varani, who informed
10 Mr. Fitzgerald that he believed he still had searchable forensic copies and could assist.
11 The defense provided a list of file names and extensions that had been obtained from
12 Tabs and QuickBooks and are likely to hold the financial data.
13      At approximately 4:00 p.m. on Monday, August 23, defendant was provided with
14 approximately 6 GB of data that had been located by Mr. Varani.  This information
15 consists of approximately 1,992 electronic files, with 1,822 files (in 98 folders) relating
16 to Tabs and 170 files (in 150 folders) relating to QuickBooks.  All of this information
17 was obtained from the forensic copies of the EA servers that have been in the possession
18 of the DOJ since the Spring of 2019.  None of the Tabs files were previously produced to
19 the defendant prior to this date.  *Some* of the QuickBooks files are likely duplicates of
20 files that were previously produced, but the defense has not yet completed their review
21 of all of the data.
22      Further, it was discovered by the PRT and the defendant on the evening of August
23 23 that not all of the Tabs data located on the forensic images was captured and
24 produced by Mr. Varani.  It was agreed that the PRT would produce the missing data to
25 the defendant.

On August 24, this Court held a hearing and granted defendant's motion for a mistrial after determining a *Brady* violation had occurred due to the government's failure to timely produce financial information to the defendant.

Since August 24, the defendant has made multiple requests to the PRT for the missing financial data, but the information still has not been produced because, according to the PRT, technical issues have prevented the PRT from searching for and producing the data. In an effort to expedite the process, Defendant and his expert have made suggestions to the PRT, including that they use Mr. Varani's forensic copy to search for the missing data. Presently, the PRT is unable to provide a firm estimate as to when the remaining financial data will be produced.[1]

**B. The Governments Obligations Under Rule 16, *Brady*, *Giglio*, *Price*, *Bundy* and this Court's January 2021 Order**

The defendant has asked that the PRT state in writing that "Other than the Tabs data, Defendant has been provided all information and materials that are required to be produced pursuant to Rule 16, Brady, Giglio, Price, Bundy, and/or the Court's January 2021 Order, including but not limited to all such information and materials from the Eagan Avenatti, LLP servers." Defendant has done so in light of the mistrial that was just ordered, defendant's recent review of the discovery in this case, which shows other *Brady* materials have not been produced, and in an effort to avoid any further issues at any re-trial. The PRT will not provide this basic assurance, which raises significant concerns and suggests that the government, at best, has serious doubts that they have fully complied with their discovery obligations.

Further, on multiple occasions over the last two years, including over the last three weeks, defendant has provided both the prosecution team and the PRT with lists of

---

[1] As a result, a modification to the case schedule and trial will almost certainly be required.

3

documents and information that are required to be produced pursuant to Rule 16, *Brady*, *Giglio*, *Price*, *Bundy*, and/or the Court's January 2021 Order and yet have not been produced. Defendant has done so even though, as the Court acknowledged on August 24, "It's the obligation of the government to produce Brady, Giglio, et cetera. He is entitled to sit back and wait for you to serve it up on a platter. Agreed?" Defendant has also suggested that the government stipulate to produce the forensic copies of the servers to the defendant pursuant to the protective order so as to help avoid any *Brady* issues during any re-trial. In response to these requests and suggestions, the government has failed to produce any additional information and has refused to stipulate to produce the servers.[2]

**Privilege Review Team's Position**

The Privilege Review Team agrees that there likely are "Tabs" files in the EA servers beyond those found in the search that Mr. Varani conducted before the August 24, 2021 hearing. The Privilege Review Team will conduct the searches the defense has requested for these additional files once the forensic software has "indexed" the relevant EA files so that the requested forensic searches can take place. This process has taken far longer than anticipated and the Privilege Review Team is working diligently to determine if at least some of the already-indexed files at the DOJ Computer Crimes Lab can be transferred to Los Angeles. Unfortunately, these technical issues need to be resolved before the Privilege Review Team can provide the Court, the defense, or the Prosecution Team an estimate as to when the requested searches will take place.

In regard to the discovery issues raised by the defense, the Privilege Review Team has stated and continues to state that members of the Privilege Review Team conducted a thorough search for any EA documents that they believed to be relevant to the charges

---

[2] The PRT has stated that it will agree to produce the forensic copies but the prosecution team will not.

in the case. This search for relevant documents consisted of "key word" searches and the individual review of a very large number of documents in the Relativity database by agents working as part of the Privilege Review Team. As the Court is aware, the Privilege Review Team also provided a summary of the EA files to the defense in September 2019 and facilitated a search of the EA files by the defense at that time.

Except for documents that could not be produced under the terms of the applicable search warrant, the Privilege Review Team provided to the defense or the Prosecution Team the EA documents that it believed to relevant to the case. Based on the extensive efforts to search the EA files, the Privilege Review Team believed that the government had met all of its discovery obligations in regard to the EA files and it conveyed this belief to the Prosecution Team. Nonetheless, not all of the many millions of EA files were individually searched by members of the Privilege Review Team. And, of course, it is possible that an "filter" agent searching the files missed a document that in fact was relevant.

The Privilege Review Team believes the best means to remedy any defects in the search of the EA files is for the defense to state with specificity what files it believes it does not possess that would be helpful to it in the next trial. The defense request for the additional Tabs files is an example of this sort of request. The Privilege Review Team has had ongoing discussions with the defense on this issue, which will probably require the intervention of the Court finally to resolve.

Dated: September 13, 2021           Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

5

Dated: September 13, 2021　　　Respectfully submitted,

<u>/s/ Patrick Fitzgerald</u>

Assistant United States Attorney
Privilege Review Team

6

# CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action. I have caused, on September 13, 2021, service of the:

SECOND JOINT REPORT OF DEFENDANT AND THE PRIVILEGE REVIEW TEAM RE SEARCH OF SERVERS FOR FINANCIAL DATA

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 13, 2021

/s/ H. Dean Steward
H. Dean Steward

7