Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994
Email: DeanSteward7777@gmail.com

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS DUE TO DOUBLE JEOPARDY, PROSECUTORIAL MISCONDUCT, CONTEMPT OF THIS COURT'S JANUARY 25, 2021 ORDER [Dkt. 408], AND VIOLATIONS OF DEFENDANT'S RIGHT TO DUE PROCESS |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") filed a Motion to Dismiss Due to Double Jeopardy, Prosecutorial Misconduct, Contempt of this Court's January 25, 2021 Order [Dkt. 408] and Violations of Defendant's Right to Due Process. The government filed an opposition at Dkt. 825. Mr. Avenatti hereby submits the following Reply.

Dated:  September 29, 2021         Respectfully submitted,

                                    /s/ Michael J. Avenatti
                                    Defendant
                                    MICHAEL JOHN AVENATTI

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... i

I.  ARGUMENT ................................................................................................ 1

    A.  As the Court Has Already Correctly Found, a Significant *Brady* Violation Occurred ................................................................. 1

    B.  The Government's Attempt to Blame the Defendant Must be Rejected ................................................................................ 6

        1.  The Supreme Court Has Held There is No "Due Diligence" Obligation ............................................. 6

        2.  The Data Was Not Timely Produced to the Defendant ........... 7

    C.  As the Court Found, Prejudice Occurred in a Number of Ways .......... 8

    D.  The Government Fails to Address, and Therefore Concedes, Defendant's Arguments that a Re-Trial Would Be Unduly Prejudicial ................................................................................. 9

    E.  The Government's Concession on Other Critical Issues Requires the Granting of the Motion .................................................................. 9

        1.  The Government Violated the January 25, 2021 Court Order ............................................................................. 9

        2.  The Government Committed Multiple Discovery and Due Process Violations During Trial ............................. 10

    F.  The Government Has Failed to Properly Offer Any Evidence to Refute Defendant's Evidence and Claims in Support of the Motion ............................................................................................. 10

    G.  The Requested Relief is the Only Proper Remedy ........................... 11

II. CONCLUSION ........................................................................................... 13

CERTIFICATE OF SERVICE .................................................................... Attached

# TABLE OF AUTHORITIES

**Cases:**                                                                                                           **Page**

*Banks v. Dretke*,
540 U.S. 668 (2004)..................................................................................................6

*Benn v. Lambert*,
283 F.3d 1040 (9th Cir. 2002) .................................................................................4

*Carriger v. Stewart*,
132 F.3d 463 (9th Cir. 1997) ...................................................................................3

*Colon v. Twitter, Inc.*,
2021 WL 4395246 (11th Cir. 2021) ........................................................................9

*Gantt v. Roe*,
389 F.3d 908 (9th Cir. 2004) ...................................................................................1

*In re Online DVD Rental Antitrust Litig.*,
2011 WL 5883772 (N.D. Cal. 2011) .......................................................................9

*Oregon v. Kennedy*,
456 U.S. 667 (1982)...............................................................................................11

*United States v. Blanco*,
392 F.3d 382 (9th Cir. 2004) ...................................................................................1

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020) ..........................................................................1, 13

*United States v. Chapman*,
524, F.3d 1073 (9th Cir. 2008) ..............................................................................13

*United States v. Grace,*
401 F.Supp. 2d 1069 (D. Mont. 2005)....................................................................5

*United States v. Kearns*,
5 F.3d 1251 (9th Cir. 1993) ..................................................................................13

*United States v. Olsen*,
704 F.3d 1172 (9th Cir. 2013) ................................................................................1

*United States v. Pedrin*,
797 F.3d 792 (9th Cir. 2015) ................................................................................12

*United States v. Price*,
566 F.3d 900 (9th Cir. 2009) .....................................................................1, 4, 10

*United States v. Ross*,
372 F.3d 1097 (9th Cir. 2004) ..............................................................................13

*United States v. Thomas*,
981 F.Supp. 2d 229 (S.D.N.Y 2013) ......................................................................7

*United States v. Williams*,
504 U.S. 36 (1992) ................................................................................................13

*United States v. Wood*,
57 F.3d 733 (9th Cir. 1995) ....................................................................................5

I.  **ARGUMENT**

   A.  **As the Court Has Already Correctly Found, a Significant *Brady* Violation Occurred**

On August 24, 2021, this Court held a hearing wherein it performed a three-part analysis and concluded that the government had committed a *Brady* violation by suppressing the Tabs and QuickBooks data. *See* Trial Tr. (8/24/21, Vol. 10) p. 62. That determination was correct then, remains correct now, and should not be disturbed over one month later.  Despite this, the prosecution basically argues in its opposition for reconsideration while ignoring the facts, the law, and the requirements of the local rules.

**The government's consistent assertions that there was no *Brady* violation is based on an <u>*alarming*</u> misunderstanding of the law.** The government asserts, in arguing against this Court's prior finding: "The fact that Brady requires only the disclosure of <u>material</u> favorable evidence – that is, evidence having a reasonable probability of affecting the outcome – undercuts the suggestion that a defendant is entitled to make 'non-winning' challenges." [Dkt. 825, p. 26 (emphasis in original)]. However, the law in the Ninth Circuit is clear - the government is required to promptly produce to the defense <u>all information favorable to the defense, **regardless of materiality**</u>. *See, e.g., United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020) (requiring all favorable evidence to be disclosed by prosecutors pretrial, without regard to materiality:  "[T]rial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial. . . . The retrospective definition of materiality is appropriate only in the context of appellate review" and not at the trial level.)(citation omitted); *United States v. Price*, 566 F.3d 900 (9th Cir. 2009) (requiring prosecutors to produce all potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed as affecting the outcome of the trial); *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013); *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004); *Gantt v. Roe*, 389 F.3d 908 (9th Cir. 2004)("*Brady* is not confined to evidence that

affirmatively proves a defendant innocent: Even if evidence is merely 'favorable to the accused,' its suppression violates *Brady* if prejudice results. The evidence the prosecution failed to disclose here surely satisfies the low 'favorable to the accused' standard.")(citations omitted).  The law is well established that information need not be a smoking gun or completely destroy the government's case-in-chief for it to be *favorable* for the purposes of *Brady* and its progeny.  As a result, this Court's prior statement that "if there is evidence out there that would have allowed the defendant to make a challenge under any theory, I think the defendant was entitled to have the data to do so…" is a correct interpretation of the law. *See* Trial Tr. (8/24/21, Vol. 1) p. 23. Moreover, the Court made a specific finding that "the testimony in and of itself is sufficient to establish the materiality of the Tabs data…" *Id.* at 59.

The additional materials contained on the EA servers undermine the government's theory and could have been used to impeach <u>many</u> of the government's witnesses and derail the prosecution's case-in-chief. From the very first moments of their opening statement in the first trial and knowing that the exculpatory Tabs data had not been produced to the defendant, the government placed the issue of the amount that defendant had allegedly stolen at the center of their case.  In fact, the government went so far as to tell the jury that ALL of certain clients' settlement monies had been stolen, a claim directly undercut by the suppressed Tabs data:

> The defendant in January of 2015 obtained a $4 million settlement from the County of Los Angeles on behalf of Geoffrey Johnson. . . .<u>The defendant did not pay Geoffrey Johnson anything of that $4 million. The defendant stole the entire amount of Geoffrey Johnson's settlement check and used all of that money on himself and his businesses.</u> . . . In addition to Geoffrey Johnson, there is Alexis Gardner, Gregory Barela and Michelle Phan. <u>He stole approximately $1,750,000 from Alexis Gardner. He stole between $800,000 and $900,000 from Gregory Barela, and he stole $4 million from Michelle Phan</u>. . . . Defendant <u>paid none of the money, of the $4 million, to Geoffrey Johnson</u>. By July 2015, within six months of the County of Los Angeles paying $4 million, defendant <u>had stolen and used it all on himself and his business and paid zero to Geoffrey Johnson</u>. . . . Alexis Gardner… Defendant

2

> simply <u>stole the entire $2.75 million and use it on himself and his businesses and to buy a private plane</u>. . . . Defendant <u>paid none of the $1.6 million to Gregory Barela</u>. Trial Tr. (7/21/21, Vol. 1) pp. 38, 39, 43, 46, 47, 51 (emphasis added).

The government later had multiple witnesses, including the clients and Mr. Drum, misleadingly testify as to the amount allegedly stolen from the clients, knowing full well that they had not provided the Tabs data, which would undercut the testimony. *See, e.g.*, Motion [Dkt. 822], pp. 11-12. To be clear, having told the jury in their opening statement that defendant had "stolen" ALL or specified amounts of the settlement money (i.e. claimed that defendant was not entitled to keep *any of it* legitimately) and having elicited testimony from multiple witnesses as to the alleged amount stolen, **any** evidence that refuted these claims by showing that (i) costs and expenses had been incurred on behalf of clients and/or (ii) advances had been made to the clients, either before or after settlement (i.e. the Tabs data) was classic *Brady* and required to be produced. Despite this, the government continued to withhold the information even after defendant made repeated demands for it during the trial.

      The government claims that defendant's motion "does not cite to a single exhibit, file, or record demonstrating that the Tabs data undermines the evidence at trial in any way – because it does not." Dkt. 825, p. 22. The government's representation that there is nothing in the Tabs data that is favorable to Mr. Avenatti or that undercuts its claims during the first trial is false.[1] For instance, on August 23, 2021, at approximately 4 p.m., the defendant obtained 6GB (a portion) of the Tabs data and QuickBooks data. [Dkt. 775]. After an initial review, Mr. Avenatti alerted the Court that there were 111 separate financial transactions in the Tabs data that showed monies paid by the firm which were

---

[1] Further, to the extent that the government argues that its duties under *Brady* only encompass disclosure of non-cumulative evidence, the Ninth Circuit has previously found this line of reasoning unavailing. *See, e.g.*, *Carriger v. Stewart*, 132 F.3d 463, 481 (9th Cir. 1997) ("We have held that the government cannot satisfy its *Brady* obligation to disclose exculpatory evidence by making some evidence available and claiming the rest would be cumulative.") (internal citations omitted).

not considered by Mr. Drum. There were payments made for the benefit of at least two of the alleged victim clients made shortly after the settlements were reached and yet neither the government nor its expert ever accounted for these payments. Further, hourly time was billed for at least one client that was not accounted for by Mr. Drum. Time entries and cost entries for other work performed for clients was never produced. All of this undercut the government's claims in its opening statement (i.e., Mr. Avenatti stole all the money), as well as the testimony of numerous witnesses.

Further, on September 13, 2021, the defendant alerted the Court by way of a status report that "[s]ince August 24, the defendant has made multiple requests for the financial data, but the information has not been produced…" [Dkt. 808, p. 4]. On September 15, 2021, at a status conference, the Court again inquired as to whether any additional disclosures had been made to the defendant since August 24, 2021. After learning that no additional discovery had been produced, the Court ordered that the defendant be provided a copy of the EA LLP servers. [Dkt. 817]. The servers were provided to the defendant <u>for the first time</u> on September 16, 2021. Since that date, Mr. Avenatti and his computer forensics expert have worked diligently to begin the process of reviewing the data. That review continues as of this filing.

In addition, the government repeatedly argues that it did not suppress any materials. But as the Ninth Circuit has made clear, the term "suppression" does not describe merely "overt or purposeful acts on the part of the prosecutor; sins of omission are equally within the Brady's scope." *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009); *citing Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002) (the terms "suppression," "withholding" and "failure to disclose" have the same meaning for *Brady* purposes). The government cites a string of cases arguing that there is no *suppression* when the defendant can ascertain the materials on their own. These cases[2] are unpersuasive and do not stand for the proposition that the government can withhold

---

[2] The government bolsters this string citation by twice citing the same case two times.

4

information in their sole possession, which they know is relevant and favorable.

Furthermore, for the purposes of the motion, and as the Court has previously noted, there is no meaningful difference between one part of the United States Attorneys' Office (the filter team) and another (the prosecution team). *See also United States v. Grace,* 401 F.Supp. 2d 1069, 1074-75 (D. Mont. 2005) ("The knowledge and access test is met when there exists any information in the possession, custody or control of a federal agency participating in the same investigation of the defendant."). As explained in *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995), for *Brady* purposes, the prosecution and the Privilege Review Team ("PRT") are one: "<u>The government cannot with its right hand say it has nothing while its left had holds what is of value</u>."

Further, as the Court noted early on in this case, there was nothing in the privilege review protocol or the warrant that served as an impediment to the PRT duplicating and producing to defendant their copy of the entire EA servers. Defendant was an EA lawyer and the managing partner of the firm; the PRT's job was to wall off *the prosecutors*, not defendant (the clients' lawyer), from the allegedly privileged material.

Finally, the prosecution team initially took possession of the servers and also had a direct line of communication with the PRT, as well as the ability to request any materials from the servers they determined were necessary or desired. Evidencing the prosecution team's involvement in the search of the servers is the government's July 25, 2019, telephonic interview of Judy Regnier, which was attended by all four most senior members of the prosecution team and was solely focused on what was contained on the servers. [Dkt. 822-1, p. 518]. If the government had no access to the servers and prosecutors were uninvolved in the search of the EA servers, why was the prosecution team (and not the PRT) performing interviews in furtherance of its mission to search the EA servers? Similarly, after the July 2019 interview and after learning of the firm's partial reliance on QuickBooks, the prosecution made it a point to gain access to certain of the QuickBooks data but ignored the Tabs data. *See, e.g.,* Dkt. 55, p. 15; Dkt. 109, p.

5

4. The prosecution had access to the servers, had the ability to request and receive specific evidence as well as general categories of discovery, and communicated with the PRT beyond what it represents to the Court now.

### B. The Government's Attempt to Blame the Defendant Must Be Rejected

#### 1. The Supreme Court Has Held There is No "Due Diligence" Obligation

The prosecution argues that despite defendant's countless requests for the information for over two years (as detailed in the motion and in the declaration), it is the defendant's fault that he did not obtain the critical financial information sooner. However, not only is this factually erroneous as detailed in the motion and *infra*, it is also directly contrary to Supreme Court precedent.  Indeed, in *Banks v. Dretke*, 540 U.S. 668, 696 (2004), the Court forcefully rejected the idea that the government, when caught, may blame a defendant for its own failures to comply with its discovery obligations.  There, the Court considered the Fifth Circuit's use of a due diligence requirement to dismiss the defendant's *Brady* claim and found it frivolous it in no uncertain terms:

> Our decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material <u>when the prosecution represents that all such material has been disclosed</u>. . . . <u>The State here nevertheless urges, in effect, that "the prosecution can lie and conceal and the [defendant] still has the burden to … discover the evidence," Tr. of Oral Arg. 35, so long as the "potential existence" of a prosecutorial misconduct claim might have been detected, *id.*, at 36. A rule thus declaring "prosecutor may hide, defendant must seek," is not tenable in a system constitutionally bound to accord defendants due process.</u> "Ordinarily, we presume that public officials have properly discharged their official duties." We have several times underscored the "special role played by the American prosecutor in the search for truth in criminal trials." Courts, litigants, and juries properly anticipate that "obligations [to refrain from improper methods to secure a conviction] … plainly rest[ing] upon the prosecuting attorney, will be faithfully observed." <u>Prosecutors' dishonest conduct or unwarranted concealment should attract no judicial approbation. The prudence of the careful prosecutor should not … be discouraged</u>. (citations omitted).

When this Court previously heard the government's "due diligence" argument in

6

this case, it correctly rejected it - "Sir, that doesn't convince me. It's the obligation of the government to produce Brady, Giglio, et cetera. He is entitled to sit back and wait for you to serve it up on a platter." Trial Tr. (8/24/21, Vol. 1) p. 23. This statement accurately reflected the law and was entirely consistent with Supreme Court precedent.

### 2. The Data Was Not Timely Produced to the Defendant

The government did not timely produce the material to the defendant. The government on two occasions provided the defendant with the ability to visit the IRS-CI facility to review, <u>but not take</u>, select information on the servers. During these sessions, defendant was not provided unfettered access to the data stored on the servers. *In fact, defendant had **no access** to the critical Tabs data because the government failed to provide the password to the defendant necessary to access the Tabs data.*[3] Further, out of the literally billions of pages of materials contained on the servers, Mr. Avenatti was forced to *guess* where the exculpatory materials were held. Even when he was able to anticipate other specific <u>client files</u> and <u>emails</u> he needed, he was forced to provide the filter team with a list, the materials were then approved by the United States Attorneys' Office, and then he received some of the materials at a later time. This limited access does not absolve the government of its obligations under *Brady*. *See also*, *United States v. Thomas*, 981 F.Supp. 2d 229, 239 (S.D.N.Y 2013) ("the government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials."); *United States v. Eghbal Saffarinia*, 424 F.Supp. 3d 46, 86 (D.D.C. 2020)("the government's *Brady* obligations require it to identify any known *Brady* material to the extent that the government knows of any such material in its production of approximately 3.5. million pages.").

In addition, the government argues that Special Agent Taschyan testified that he gave Mr. Avenatti and his counsel everything they asked for. [Dkt. 825, p. 15]. But SA

---

[3] This password was first provided by the government only after the Court ordered the government mid-trial (on August 20) to immediately provide the Tabs information. *See, e.g.,* Dkt. 766; Trial Tr. (8/23/21, Vol. 1) pp. 4-5.

7

1  Taschyan testified that Mr. Avenatti was able to review "<u>the e-mails and the client files</u>."
2  Trial Tr. 8/19/21, Vol. 2. p. 14 (emphasis added). SA Taschyan also agreed that the
3  requested materials had to be approved by an outside party in order for the defense to
4  receive a copy and that only a member of the U.S. Attorney's Office ultimately could
5  decide whether or not Mr. Avenatti actually received materials on the EA servers. Trial
6  Tr. 8/19/21, Vol. 2. p. 18, 20.

7       More importantly, after defendant was granted limited access, which was cut-off
8  in early 2020 at the request of the prosecution, he repeatedly and in writing requested all
9  of the fee and cost information from the EA servers and files. *See*, *e.g.*, Dkt. 164, p. 10,
10 Dkt. 178, Dkt. 193. Each time, the government either ignored the demand or falsely
11 represented to the defendant that all of the information had been produced.  These
12 misrepresentations were then repeated for the Court.  *See, e.g.,* Dkt. 168 ("Defendant's
13 claim that he still has not received 'critical records detailing costs and expenses on cases
14 involving the alleged victims' is demonstrably false."); Dkt. 176, p. 13; Dkt. 182, p. 6;
15 Dkt. 199; Dkt. 289, p. 3-4 ("the defendant has all the discovery as to all the charges at
16 this point."). To quote the Supreme Court in *Burns* at p. 696: "Our decisions lend no
17 support to the notion that defendants must scavenge for hints of undisclosed *Brady*
18 material when the prosecution represents that all such material has been disclosed."

19      **C.**    **As The Court Found, Prejudice Occurred in a Number of Ways**

20     "[T]here must be a finding that prejudice must have ensued. I find that prejudice
21 occurred here in a number of ways . . ." were the words of the Court in finding that the
22 government violated *Brady* and Mr. Avenatti suffered prejudice as a result. Trial Tr.
23 (8/24/21, Vol. 1) p. 62. The Court continued:

24
25      "I think the defendant was denied an opportunity to craft his overall theory
   of his case and presentation, including the opening statement, by not having
26 this additional material. I believe that the defense was prejudiced in its ability
   to cross-examine certain witnesses, in particular, Mr. Drum. At page 5 of his
27 most recent report at Docket 775, Mr. Avenatti outlines a number of things
28 that he could have done had he had the Tabs information, including cross-

examination of certain witnesses, ability to question the government's preparation techniques generally, and so on. I won't repeat those." *Id, See also,* Dkt. 775, p. 5.

In opposition, the government advances <u>no arguments</u> that Mr. Avenatti was not prejudiced aside from the false claim that the data was consistent with Mr. Drum's testimony. Dkt. 825, p. 26. Accordingly, the prior finding by the Court as to ways Mr. Avenatti was prejudiced is both established and conceded for the purpose of the motion.

### D. The Government Fails to Address, and Therefore Concedes, Defendant's Arguments that a Re-Trial Would be Unduly Prejudicial

In his motion, the defendant provided multiple examples of how and why a re-trial would only benefit the prosecution to the severe detriment of the defendant. [Dkt. 822, p. 37]. Mr. Avenatti argued that and explained how the government's discovery failures would advantage the prosecution by allowing the government to leverage the knowledge of Mr. Avenatti's trial strategies throughout the second trial. *Id.* <u>The government completely failed in its opposition to challenge defendant's arguments that a re-trial would be unduly prejudicial</u>. As a result, these points are conceded. *See*, *e.g.*, Dkt. 239, Hon. J. Selna Ruling on Pretrial Services Report, p. 4 ("But as Avenatti points out in his reply, the Government has chosen not to respond to the claim of work product, and thus the argument is conceded."); *In re Online DVD Rental Antitrust Litig.*, No. 09–2029 PJH, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011); *Colon v. Twitter, Inc.*, No. 20-11283, 2021 WL 4395246, at *11 (11th Cir. Sept. 27, 2021).

### E. The Government's Concession on Other Critical Issues Requires the Granting of the Motion

The government's failures to produce material to which Mr. Avenatti is constitutionally and statutorily entitled is not limited to the Tabs data and its violations are not limited to its failure to abide by the Supreme Court's directives in *Brady*. In its Opposition, the government ignores, and therefore concedes, the defendant's arguments related to its other discovery failures, which require the granting of the motion.

#### 1. The Government Violated the January 25, 2021 Court Order

Although the defendant's motion includes the government's violation of this

9

Court's January 25, 2021 Order <u>in the caption</u> and describes the Order and violations on pages 2, 3, 10, 11, 15, 28, 29 and 30 of the motion, the government makes <u>no effort</u> in its opposition to refute the claims that it violated the Court's Order and did not produce before trial all materials that were either "(1) <u>relevant to the defendant's guilt or punishment;</u> or (2) favorable to the defendant on the issue of guilt or punishment." [Dkt. 408, p. 1](emphasis added). It is therefore conceded that the Order was violated.

        2.    <u>The Government Committed Multiple Discovery and Due Process Violations During Trial</u>

In the motion, Mr. Avenatti described that the Court ordered the in-camera submission of correspondence related to Joseph Varani and Nshan Taschyan after the defendant made a showing of a Jencks violation. Dkt. 822-1 ¶¶ 32-34. A new trial was declared prior to the Court ruling on whether a Jencks violation occurred in connection with these witnesses. *Id.* Similarly, Mr. Avenatti discovered through cross-examination, and the government later admitted, that the prosecution withheld Jencks materials related to government witness Robert Amenta. Dkt. 822-1 ¶¶ 35. Finally, the defendant's motion addressed the government's act of withholding *hundreds* of pages of materials related to its only expert witness John Drum in violation of Jencks, *Brady*, *Giglio, Price*, Rule 16 and the Court's January 2021 Order and then lied to the Court about the extent of the non-disclosure. Dkt. 822-1 ¶¶ 36-40.

Other than a catch-all paragraph entitled, "Defendant's Remaining Unsupported Accusations of Misconduct Are Meritless and Provide No Basis for Relief," which includes no substantive discussion, the government ignores these claims. Indeed, the prosecution makes <u>no effort</u> to explain its admitted and pervasive discovery failures that have been unearthed over the past several months, including during trial. As a result of the government's failure to substantively challenge these claims, the arguments are conceded, thus requiring the granting of the motion.

**F.    The Government Has Failed to Properly Offer Any Evidence to Refute Defendant's Evidence and Claims in Support of the Motion**

In opposition to the motion, the government failed to properly provide any

10

evidence for the Court's consideration. There is no declaration from any member of the prosecution or filter teams, let alone a declaration disputing any of the defendant's claims made in the motion or in his declaration. Nor is there any evidentiary basis or foundation for any other claim or document relied on by the government in opposition. This alone is fatal to the government and requires the granting of the motion.

### G. The Requested Relief is the Only Proper Remedy

A dismissal of the Indictment with prejudice, together with an order precluding the government from re-trying the defendant, is the only proper remedy and is supported by the Fifth Amendment Double Jeopardy Clause, due process, the Court's supervisory powers as well as the well-established remedies for both outrageous government conduct and prosecutorial misconduct.

<u>First</u>, the Double Jeopardy Clause supports a dismissal with prejudice. The prosecution claims that because the defendant requested the mistrial in this case, "defendant's double jeopardy argument fails[,]" unless the Court "is inclined to revisit its decision to grant defendant's request for a mistrial." [Dkt. 825, p. 34]. The government argues that "[t]he Clause generally prevents retrial after a trial has commenced, unless the court finds the mistrial 'justified by manifest necessity'" and the Clause is inapplicable if the defendant requests the mistrial or consents, implicitly or explicitly to the new trial. [Dkt. 825, p. 32-35](citations omitted). The government is wrong. As explained in detail in the motion, Double Jeopardy protects a defendant "when the 'government conduct in question is intended to 'goad' the defendant into moving for a mistrial…'" [Dkt. 822, p. 28]; *citing Oregon v. Kennedy*, 456 U.S. 667, 673 (1982).

The government also claims that "there is no basis to find that the government affirmatively sought to bring about a mistrial." [Dkt. 825, p. 35] The government, however, fails to provide any evidence that neither prosecutor harbored the intent to goad the defendant into seeking a mistrial. Additionally, the government misstates Mr. Avenatti's position by arguing that his goading claim is limited to the *Brady* violation when the defendant clearly argued in his motion that the prosecutors goaded him into

11

seeking a mistrial by way of their flagrant and blatant misconduct and when they "disregarded its discovery obligations, misled the Court and the defendant on numerous occasions, violated this Court's January 25, 2021 Order [Dkt. 408] and defendant's right to due process…" [Dkt. 822, p. 37]. Because Mr. Avenatti has presented significant and unrefuted evidence that the prosecution's flagrant disregard for its discovery obligations goaded him into a request a mistrial, the proper remedy is a dismissal with prejudice.

Moreover, goading should encompass the situation here, where prosecutors withhold favorable information and present misleading testimony (*see*, *e.g.*, Motion [Dkt. 822], pp. 11-12), knowing that if they are caught, the defendant will be forced to ask for a mistrial to avoid a conviction based on inaccurate/incomplete/misleading testimony. So, while it may be true that the defendant asked for and the government opposed the mistrial, the government's opposition to the mistrial proves precisely that the government was content to give the defendant a Hobson's choice: a mistrial or a wrongful conviction. The government knew that the prejudice to the defendant of a trial laden with false, misleading and incomplete testimony would goad the defendant to seek a mistrial to remedy the unfairness of the trial.

Second, Mr. Avenatti's due process rights require a dismissal with prejudice. When a sufficient showing of outrageous government conduct is made, the "federal court must dismiss a prosecution based on such actions." *United States v. Pedrin*, 797 F.3d 792, 795 (9th Cir. 2015). Here, the totality of the government's actions in this case amount to outrageous government misconduct and warrant a dismissal with prejudice. Not only did the government withhold millions of pages of materials from Mr. Avenatti, but the government also suppressed *Jencks* materials, routinely violated the Court's January 25, 2021 Order, unapologetically lied to the Court when caught, and mocked the defendant (when he was, and when they knew he was, correct all along).

Third, the Court's exercise of its supervisory powers requires a dismissal with prejudice. The court's power to dismiss an indictment "protects the integrity of the federal courts and prevents the courts from making themselves 'accomplices in willful

disobedience of law.'" *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020). The supervisory powers are meant to be used "to prevent parties from reaping benefit or incurring harm from violations of substantive or procedural rules…" *United States v. Ross*, 372 F.3d 1097, 1109 (9th Cir. 2004) (emphasis added), citing *United States v. Williams*, 504 U.S. 36, 46 (1992). Under the supervisory powers, the Court may dismiss the indictment with prejudice for prosecutorial misconduct if there is (1) flagrant misbehavior, and (2) substantial prejudice. *Bundy*, 968 F.3d at 1031, *citing United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993). As the Ninth Circuit has held, the government is "wrong to suggest that flagrant misconduct must be intentional or malicious." *Id.* "<u>Reckless disregard for the prosecution's constitutional obligations is sufficient to give rise to flagrant misconduct.</u>" *Id.* at 1038; *See also, United States v. Chapman*, 524, F.3d 1073, 1086 (9th Cir. 2008) (reckless violations of discovery obligations and flagrant misrepresentations to the court support a dismissal).  Here, there can be little question that the conduct of the government demonstrates reckless disregard for the constitution, defendant, his rights, and our system of justice.  Accordingly, the indictment should be dismissed with prejudice and the government should be precluded from re-trying the defendant.

## II.    CONCLUSION

For each of the reasons set forth in the motion, the accompanying declaration, and this Reply, Defendant respectfully requests that the Court grant the motion in its entirety. In the alternative, Defendant respectfully requests an evidentiary hearing.

Dated:  September 29, 2021        Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

13

# CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action. I have caused, on September 29, 2021, service of the:

DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS DUE TO DOUBLE JEOPARDY, PROSECUTORIAL MISCONDUCT, CONTEMPT OF THIS COURT'S JANUARY 25, 2021 ORDER [Dkt. 408], AND VIOLATIONS OF DEFENDANT'S RIGHT TO DUE PROCESS

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29, 2021

/s/ H. Dean Steward
H. Dean Steward