TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2435
     Facsimile: (213) 894-6269
     Email:    Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 19-061-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE QUESTIONS AND REFERENCE TO ANDREW STOLPER PURSUANT TO FRE 401, 402, AND 403; EXHIBIT |
| v. | |
| MICHAEL JOHN AVENATTI, | Hearing Date: October 27, 2021 |
| Defendant. | Hearing Time: 8:30 AM |
| | Location:    Courtroom of the |
| | Hon. James V. Selna |

        Plaintiff United States of America, by and through its counsel

of record, the Acting United States Attorney for the Central District

of California and Assistant United States Attorneys Brett A. Sagel

and Alexander C.K. Wyman, hereby files its motion in limine to

1   exclude questions and reference to Andrew Stolper pursuant to Federal
2   Rules of Evidence 401, 402, and/or 403.

3         This motion is based upon the attached memorandum of points and
4   authorities, the attached exhibit, the files and records in this
5   case, and such further evidence and argument as the Court may permit.

6         On September 28, 2021, government counsel contacted the defense
7   to determine if they would stipulate to the relief sought herein.
8   Defendant declined to stipulate and opposes this motion.

9    Dated: September 29, 2021         Respectfully submitted,

10                                      TRACY L. WILKISON
                                        Acting United States Attorney
11
                                        SCOTT M. GARRINGER
12                                      Assistant United States Attorney
                                        Chief, Criminal Division
13

14                                      _____/s/_____
                                        BRETT A. SAGEL
15                                      ALEXANDER C.K. WYMAN
                                        Assistant United States Attorneys
16
                                        Attorneys for Plaintiff
17                                      UNITED STATES OF AMERICA

18

19

20

21

22

23

24

25

26

27

28

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3       Defendant MICHAEL JOHN AVENATTI is charged with embezzling
4    millions of dollars in settlement funds from his clients: Geoffrey
5    Johnson, Alexis Gardner, Gregory Barela, Michelle Phan, and Long
6    Tran.  Defendant is alleged in the Indictment to have executed a
7    scheme to defraud his clients between January 2015 and March 2019 by,
8    among other things, negotiating settlements on behalf of his clients,
9    concealing the true nature of those settlements from his clients,
10   causing the settlement funds to be deposited into attorney-client
11   trust accounts he controlled, embezzling the client funds and
12   misappropriating them for his own personal use, and then lying to his
13   clients to lull them into believing their settlement funds were safe
14   and to prevent them from discovering his misappropriation.
15   (Indictment (CR 16) ¶¶ 6-7.)

16       The principal issues at trial will center on whether defendant
17   unlawfully misappropriated the settlement funds, whether defendant
18   made materially false representations or omitted material facts from
19   his clients, and whether defendant acted with intent to defraud.
20   Defendant repeatedly attempted in the first trial to place before the
21   jury irrelevant -- and factually incorrect -- information about
22   Andrew Stolper, a former federal prosecutor whom defendant hired
23   after Mr. Stolper left the U.S. Attorney's Office.  Despite repeated
24   sustained objections and admonitions by the Court, defendant
25   continued to attempt to testify from the lectern without either a
26   good faith basis to ask the particular witness the question or any
27   basis in fact for the predicate of defendant's questions.

28

The purported "facts" defendant sought to admit at the first trial regarding Mr. Stolper are not relevant in this criminal case as to whether defendant embezzled his clients' settlement money.  Even if defendant were able to show evidence related to Mr. Stolper to have some marginal relevance, its limited probative value would be substantially outweighed by the risk of wasting time, confusing and misleading the jury, and unfair prejudice.  Pursuant to Federal Rules of Evidence 401, 402, and 403, the government respectfully moves to exclude questions, argument, and evidence related to Andrew Stolper as they are not relevant and their admission will confuse the issues, mislead the jury, waste time, and be unfairly prejudicial.

## II.   ARGUMENT

### A.   Background

On January 15, 2020, at the hearing to determine whether defendant violated his conditions of release, defendant unequivocally accused one of the government prosecutors of misconduct for having a "close relationship" with Andrew Stolper, a former federal prosecutor and attorney representing Jason Frank in collection proceedings against defendant.  (RT 1/15/2020 at 14-15.)  The government responded that the allegations were baseless and looked forward to responding if defendant wanted to file a proper motion because there was no support for defendant's accusations other than defendant's bluster.  (Id. at 18-19.)  Despite claiming he would raise the prosecutorial misconduct with the Court, defendant never did.

During the first trial, defendant attempted to claim through examinations of witnesses the following: Andrew Stolper was forced out of the U.S. Attorney's Office for committing misconduct during the Broadcom trial; defendant -- who hired Mr. Stolper to work for

2

defendant's firm <u>after</u> the misconduct findings -- fired Mr. Stolper purportedly for fraud; and that Mr. Stolper was the reason for the criminal prosecution of defendant based on his purported friendship with one of the prosecutors.  Each of defendant's attempted assertions, in addition to being irrelevant, are demonstrably false.

Even after the Court sustained objections to questions related to Mr. Stolper, defendant still asked the following objectionable questions about Mr. Stolper's departure from the U.S. Attorney's Office, which the Court sustained: "Andrew Stolper was an individual who had been pushed out of the U.S. Attorney's Office after committing this conduct in a case and then subsequently fired by me; isn't that true?" (RT 7/29/2021, Vol. I, at 27); "Prior to testifying, did you come to learn about the circumstances of Mr. Stolper's departure from the U.S. Attorney's Office?" (<u>id.</u> at 28); and "And at the time that you reviewed it, you knew that Mr. Stolper was somebody who had been booted out of the U.S. Attorney's Office for prosecutorial misconduct and that he was a friend of Mr. Sagel's, didn't you?" (RT 8/10/2021, Vol. II, at 16).[1]  In response to the final sustained objection on August 10, 2021, the Court admonished defendant: "I believe this is the second, perhaps the third time you put that question to the witness.  I direct you to not put the same question to any other witness."  (<u>Id.</u> at 16-17.)  Despite the Court's directive, eight days later, defendant asked Special Agent Remoun Karlous the following: "Mr. Stolper is a former prosecutor who had a

---

[1] Defendant asked this last question of Mark Horoupian, defendant's bankruptcy counsel, after the Court had sustained objections to questions attempting to ask who Andrew Stolper was, why Mr. Stolper signed a document in the exhibit, and whether defendant fired Mr. Stolper and others for purportedly trying to steal from defendant.  (RT 8/10/2021, Vol. II, at 14-16.)

1  major criminal case thrown out because of his misconduct; isn't that

2  true?" (RT 8/18/2021, Vol. I, at 69.) The Court again sustained the

3  government's objection. (<u>Id.</u>) Defendant did not have any good faith

4  basis to believe these witnesses had any foundational ability to

5  answer the questions or that the factual assertions were even true at

6  the first trial.

7      The Honorable Cormac J. Carney, United States District Court

8  Judge, issued his order dismissing the prosecution of the defendants

9  in the Broadcom matter on December 15, 2009. SA CR 08-139-CJC, Doc.

10  780. As this Court is aware, Mr. Stolper continued working at the

11  U.S. Attorney's Office for over three years after Judge Carney's

12  ruling. Mr. Stolper served as the government attorney in two jury

13  trials before this Court in April and August 2011 (<u>United States v.</u>

14  <u>Francisco Rodriguez</u>, SA CR 05-107-JVS), as well as in additional jury

15  trials in October 2011 and May 2012 in this Courthouse (<u>United States</u>

16  <u>v. Karen Hanover</u>, SA CR 11-47-JLS, and <u>United States v. Victor</u>

17  <u>Victoria</u>, SA CR 11-12-DOC). Mr. Stolper appeared as the government's

18  counsel of record before this Court until the beginning of 2013.

19  <u>See, e.g.</u>, <u>United States v. Wallace</u>, SA CR 12-211-JVS; <u>United States</u>

20  <u>v. Bilc et al.</u>, SA CR 11-297-JVS. As the Court is aware, the entire

21  predicate of defendant's questions in relation to Mr. Stolper's

22  decision to leave is the U.S. Attorney's Office is false.

23      Defendant asked questions of Ms. Regnier and others to attempt

24  establish that defendant fired Mr. Stolper and other attorneys for

25  purportedly committing fraud. (<u>See, e.g.</u>, RT 7/29/2021, Vol. I, at

26  26-27; RT 8/10/2021, Vol. II, at 14; RT 8/18/2021, Vol. I, at 70.)

27  Attached as Exhibit 1 is the May 23, 2016, severance agreement

28  between defendant and Mr. Stolper that undermines defendant's

newfound claim that he fired Mr. Stolper and the basis for the supposed termination.  Defendant agreed to pay Mr. Stolper $70,000 after their agreed-upon separation date and requested that Mr. Stolper provide up to 150 hours of work and assistance to defendant's firm on the Kimberly Clark and Halyard cases through August 2016. (Ex. 1.)  Again, defendant lacked any good faith basis to the underlying facts of his questions in his attempt to testify through his questioning.

During his cross-examination of Agent Karlous, defendant attempted again to testify (falsely) through his questioning about the circumstances under which Mr. Stolper left the U.S. Attorney's Office and defendant's law firm and then claim Mr. Stolper was the reason for defendant being criminally prosecuted.  (See, e.g., RT 8/18/2021, Vol. I, at 69-83; RT 8/18/2021, Vol. II, at 60.)  Agent Karlous, however, testified on cross-examination, as defendant is fully aware based on the facts and discovery in this case, that Mr. Stolper reaching out to the government had nothing to do with the prosecution of defendant.  (RT 8/18/2021, Vol. II, at 43.)

A revenue officer with the Internal Revenue Service ("IRS") investigating the millions of dollars in unpaid payroll of defendant's coffee company referred the matter for criminal investigation in 2017 based on the failure to pay the payroll taxes and the numerous acts of obstruction the revenue officer noted in which defendant appeared to engage.  The circumstances of the criminal referral, and defendant's conduct, are primarily captured in Counts 11-18 of the indictment (the failure to pay the payroll taxes) and Count 19 (defendant's obstructing the administration of the IRS). The revenue officer's fraud referral also mentioned defendant not

1    filing individual tax returns since 2011 and defendant failing to pay

2    payroll taxes for his law firm as well.

3         Defendant later called Special Agent James Kim as a witness to

4    attempt to misleadingly establish that Mr. Stolper was a witness "in

5    this case."  Both Agent Karlous and Agent Kim testified that Mr.

6    Stolper was not a witness in the government's prosecution as it

7    relates to the wire fraud counts.[2]  (RT 8/18/2021, Vol. II, at 74; RT

8    8/19/2021, Vol. I, at 87-88.)  In response to defendant's attempt to

9    continue in this line of questioning, the Court found, "[i]t's pretty

10   clear from the record that Mr. Stolper's involvement as a witness is

11   not related to the proceeding before us."  (Id. at 89; see also id.

12   at 90 ("it's a fact that Mr. Stolper is not a witness in this part of

13   the case.").)[3]

14        **B.   Legal Standards**

15        Evidence is relevant only if it tends "to make a fact more or

16   less probable than it would be without the evidence."  Fed. R. Evid.

17   401; see also Fed. R. Evid. 402 (excluding irrelevant evidence).  And

18   even if evidence is marginally relevant, it can be excluded "if its

19   probative value is substantially outweighed by a danger of . . .

20   unfair prejudice, confusing the issues, misleading the jury, undue

21

22        [2] In fact, Andrew Stolper is not and has never been a witness
23   relating to any of the government's charges and has only provided the
     government with documents in his capacity as an attorney representing
24   Jason Frank.

        [3] Without any good faith basis, as none exists because it did
25   not happen, defendant claimed that the government used Mr. Stolper to
     ask defendant questions about Geoffrey Johnson in the March 22, 2019,
26   judgment debtor examination.  (RT 8/19/2021, Vol. I, at 90.)  As
     demonstrated by defendant's own questions, the government did not
27   even meet with Mr. Stolper or Mr. Johnson until after defendant's
     arrest on March 25, 2019, and there is not a single reference to Mr.
28   Johnson in the government's 180-page complaint affidavit obtained on
     March 22, 2019 -- prior to the examination.

1   delay, wasting time, or needlessly presenting cumulative evidence."

2   Fed. R. Evid. 403.  The proponent of evidence always bears the burden

3   of establishing the threshold admissibility of that evidence,

4   including its relevance.  See Dowling v. United States, 493 U.S. 342,

5   351 n.3 (1990); United States v. Chang, 207 F.3d 1169, 1176 (9th Cir.

6   2000); United States v. Conners, 825 F.2d 1384, 1390 (9th Cir. 1987).

7   A district court has "wide discretion" to exclude irrelevant

8   evidence.  United States v. Alvarez, 358 F.3d 1194, 1205 (9th Cir.

9   2004); see also Borunda v. Richmond, 885 F.2d 1384, 1388 (9th Cir.

10  1988) (holding that a district court's discretion under Rule 403 is

11  "very broad," and, "absent abuse . . . will not be disturbed on

12  appeal" (internal quotation omitted)).

13      Although a criminal defendant is guaranteed "a meaningful

14  opportunity to present a complete defense," "well-established rules

15  of evidence" such as Rules 401 and 403 allow trial judges to exclude

16  irrelevant evidence or "to exclude evidence if its probative value is

17  outweighed by certain other factors such as unfair prejudice,

18  confusion of the issues, or potential to mislead the jury."  Holmes

19  v. South Carolina, 547 U.S. 319, 324 (2006).  Such relevance rules

20  are "familiar and unquestionably constitutional."  Id. at 327

21  (quoting Montana v. Egelhoff, 518 U.S. 37, 42 (1996)).

22      One of the primary purposes of a motion in limine, as approved

23  by the Ninth Circuit, is to limit in advance of a jury trial

24  testimony and evidence relating to specific areas and topics to "give

25  counsel advance notice of the scope of certain evidence so that

26  admissibility is settled before attempted use of the evidence before

27  the jury."  United States v. Heller, 551 F.3d 1108, 1111-12 (9th Cir.

28  2009).  The current motion properly permits the Court to rule in

7

advance to avoid having objectionable and prejudicial information come up before the jury that has no place in the trial.

### C. The Court Should Exclude Questions, Evidence, and Argument Regarding Andrew Stolper Under FRE 401, 402, and 403

In defendant's opposition to the government's previously filed motion in limine to exclude the underlying facts of the civil matters, defendant stated, "the critical issues in this case[] includ[e] whether [defendant] made materially false representations or omitted material facts from his clients, unlawfully misappropriated monies from the clients, acted with intent to defraud and cheat, or instead acted in good faith, believed he was entitled to the monies, and whether he was in fact entitled to the monies." (CR 501 at 6.)  None of those issues relate in the slightest to Mr. Stolper.  Indeed, Mr. Stolper had nothing to do with the matters involving Geoffrey Johnson, Alexis Gardner, Gregory Barela, Michelle Phan, and Long Tran.  The subject areas defendant attempted to elicit in the first trial regarding Mr. Stolper have no bearing on what both parties in this case agree are the critical issues for the jury to decide.  Defendant's attempts to insert facts about Mr. Stolper, the Broadcom case, and his friendship with a prosecutor amount to thinly veiled attempts to insert irrelevant attacks upon the ethics of prosecutors and pleas for jury nullification, which have no place in the trial.

In the first trial, defendant provided no plausible connection between the many questions he asked related to Mr. Stolper and whether defendant lied to his clients and embezzled money belonging to them, and it is defendant's burden to do so as the proponent of the evidence.  And for the questions in which defendant attempted to

8

assert a basis for relevancy, the facts he asserted are either unsupported by any evidence and/or are demonstrably false.  If defendant does not provide the Court with a basis for which his questions related to Andrew Stolper are relevant, the Court should exclude any arguments or questions as irrelevant under Rules 401 and 402.

Even if defendant could articulate some plausible reason to ask questions relating to Mr. Stolper, the Court still has discretion to exclude such evidence if the probative value of the evidence is "substantially outweighed by the danger of prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403; see also United States v. Espinoza-Baza, 647 F.3d 1182, 1189 (9th Cir. 2011) ("Where the evidence is of very slight (if any) probative value, even a modest likelihood of unfair prejudice or a small risk of misleading the jury will justify excluding that evidence." (quotation marks and alterations omitted)).

The danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time is obvious from defendant's attempt to ask the questions regarding Mr. Stolper and to allow defendant to do so again will invite a "mini-trial" on completely irrelevant issues.  See United States v. Singh, 995 F.3d 1069 (9th Cir. May 3, 2021) (finding no abuse of discretion in district court excluding evidence pursuant to Federal Rule of Evidence 403 where the probative value "was substantially outweighed by the danger of confusing the issues before the jury and wasting time with a mini trial"); United States v. Waters, 627 F.3d 345, 353 (9th Cir. 2010) (excluding defense evidence under Rule 403 where it "ran the risk of

1    creating a mini-trial" regarding defense evidence that was of "quite
2    low" probative value).

3        Defendant has asserted at various times that the government has
4    engaged in misconduct by pursuing this case at Mr. Stolper's
5    direction and/or having a conflict of interest by pursuing this case.
6    In addition to the allegations being baseless -- which is why
7    defendant has never actually filed a motion on these frivolous claims
8    in two and half years -- these would be legal matters for the Court
9    to decide and not a factual matter to be tried to the jury.  These
10   "issues" are not relevant or probative to the jury's task of
11   determining whether defendant unlawfully misappropriated the
12   settlement funds, made materially false representations or omitted
13   material facts from his clients, and acted with intent to defraud.

14       This case is about whether defendant stole his clients' money,
15   and Mr. Stolper has nothing to do that.  As such, the asking of
16   questions, even if sustained, that attempt to place before the jury
17   that an entirely separate case involving a former prosecutor was
18   dismissed for government misconduct and the prosecutor purportedly
19   has a friendship with one of the government prosecutors would only
20   serve to waste time, confuse and mislead the jurors, and attempt to
21   prejudice the government.  The Court has the discretion to, and
22   should, exclude any questions or evidence relating to Mr. Stolper
23   pursuant to Rule 403.  See Espinoza-Baza, 647 F.3d at 1189.

24   **III. CONCLUSION**

25       For the foregoing reasons, the government respectfully requests
26   that the Court exclude questions, evidence and arguments about Andrew
27   Stolper pursuant to Federal Rules of Evidence 401, 402, and/or 403.

28

# EXHIBIT 1



Eagan
Avenatti LLP

May 23, 2016

**VIA E-Mail**

Mr. Andrew Stolper

     Re: <u>Separation Agreement</u>

Dear Andrew:

     This letter, upon your signature, constitutes the Separation Agreement ("Agreement") between you and Eagan Avenatti, LLP ("EA") and sets forth the terms of your separation from employment with EA.

     1.    Your employment with EA is terminated effective May 21, 2016 (the "Termination Date"). You will be paid your normal salary through May 30, 2016, which amount will constitute any and all monies owed to you by EA and its partners and attorneys with the exception of the payments required pursuant to this Agreement. Pursuant to the terms of this Agreement, we have also agreed that EA will pay you $70,000.00 provided you (a) execute this Agreement and adhere to its terms and (b) provide up to 150 hours of your time as requested by the firm in its reasonable discretion consistent with your prior working hours between the date of this Agreement and August 15, 2016 in order to assist EA and its attorneys with the firm's pending cases against Kimberly-Clark and Halyard. The $70,000.00 shall be paid to you as follows: (a) $35,000.00 on the date the Agreement is signed and $35,000.00 on August 15, 2016. During your work on behalf of EA as provided above, you shall continue to be covered under the firm's malpractice insurance coverage.

     2.    The compensation described in paragraph one is the sole compensation due to you as a result of your employment and termination from EA. The parties mutually agree that neither owes each other any other attorneys' fees or costs once the Recovery Investment Agreement has been terminated.

     3.    You will immediately return to EA your security fob, parking transponder, laptop computer, and any other EA property that is currently in your possession, including but not limited to any documents, files, and any information you have about EA's clients, cases, practices, procedures, trade secrets, client lists, or marketing.

     4.    You have previously signed an Agreement Covering Confidential Information; a copy of which is attached. You expressly understand and agree that you will continue to comply with EA's Agreement Covering Confidential Information in accordance with the terms thereof and that doing so is a prerequisite to receiving the consideration from EA provided herein. You also acknowledge that, because of your position with EA, you have specific knowledge of particular information which is private and proprietary to EA and/or its partners, attorneys and employees. This information

520 Newport Center Drive, Suite 1400, Newport Beach CA 92660   ☎ 949.706.7000   ☎ 949.706.7050

USAO_01144236

May 23, 2016
Page 2

includes the personal business of its employees, attorneys, and partners to the extent they were disclosed to you in confidence, as well as the prosecution or defense of any matters including EA's cases and litigation, and including their positioning and planned efforts. You agree to keep and treat all such information as highly confidential.  You further acknowledge and reaffirm your obligations to EA under the Agreement Covering Confidential Information signed by you, wherein you agreed to keep and treat all such information proprietary; these obligations survive your termination of employment with EA.  You further agree to maintain in confidence any and all attorney-client and/or work product information you learned during the course of your employment and not to disclose said information to any other party or individual other than the party you represented at EA (the "Client") unless requested by the Client and expressly required by California law and the Rules of Professional Conduct.

5.      As discussed in part above, subject to your acceptance of this Agreement, EA will provide you with your customary May 30, 2016 payroll payment post-termination, which is equivalent to your current base rate of pay.  The customary payroll deductions shall be made from this payment.  You agree to bear any and all responsibility for any tax obligations arising out of the $70,000.00 you will receive pursuant to this Agreement as EA will not be making any payroll deductions from these payments.

6.      We mutually agree that no promise, inducement or other agreement not expressly contained in this Agreement or referred to in this Agreement, has been made conferring any benefit upon either party, and that this Agreement contains the entire agreement between you and EA with respect to its subject matter.  With the exception of the Agreement Covering Confidential Information and the portions of your employment letter (the "Employment Letter") relating to mediation and arbitration, which shall all remain in full force and effect, all prior agreements, understandings, representations, oral agreements and writings are expressly superseded hereby and are of no further force and effect, and both parties expressly agree that they not relying on any representations that are not contained in this Agreement.  This Agreement is entered into and shall be governed by the laws of the State of California.  This agreement may not be changed except in a writing signed by both you and Michael J. Avenatti, EA's Managing Partner.

**7.      ARBITRATION.  You agree that any dispute arising from or related in any way to this Agreement, the termination of your employment, and/or your employment with EA, including but not limited to any claim or lawsuit brought against EA's predecessors, subsidiaries, related entities, officers, partners, agents, attorneys, employees, and/or successors or assigns, shall be resolved by binding arbitration before JAMS pursuant to the terms outlined in the Employment Letter.**

8.      To accept this Agreement, please sign and date this letter and return it to me.  This Agreement is effective upon your signature.  Moreover, the acceptance of each of the payments called for in paragraph 1 above constitute a ratification and confirmation of each of the terms stated herein, and thereby re-confirms the enforceability of them.

USAO_01144237

May 23, 2016
Page 3


Warmest regards,


Michael J. Avenatti
Eagan Avenatti, LLP

I HAVE READ THIS AGREEMENT, UNDERSTAND IT, HAVE HAD THE
OPPORTUNITY TO OBTAIN INDEPENDENT LEGAL ADVICE IN RESPECT OF IT,
AND AGREE TO ITS TERMS. I FURTHER ACKNOWLEDGE HAVING RECEIVED
A FULLY EXECUTED COPY OF THIS AGREEMENT.

Dated: _5/23/16_____      _____
                              Andrew Stolper

USAO_01144238