Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994
Email: DeanSteward7777@gmail.com

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF JOHN DRUM AND REQUEST FOR A *DAUBERT* HEARING |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti"), by and through his advisory counsel of record, H. Dean Steward, hereby files this Motion in Limine to Exclude Expert Testimony of John Drum and Request for *Daubert* Hearing. Defendant's motion is based on the attached memorandum of points and authorities; the files, records and transcripts in this case; the Reply to be filed following the government's opposition, and such further evidence and argument as the Court may permit at a hearing.

Dated:  September 29, 2021          Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

I.     INTRODUCTION ................................................................. 1

II.    ARGUMENT ....................................................................... 4

    A. The Proposed Testimony is Violative of Rule 702 .............................. 4

    B. The Proposed Testimony is Violative of Rule 703 .............................. 6

    C. The Summaries Proffered by Mr. Drum are Violative of Rule 1006 .. 8

    D. The Proposed Testimony is Violative of Rule 403 .............................. 4

III.   CONCLUSION ..................................................................... 11

CERTIFICATE OF SERVICE .................................................... Attached

# TABLE OF AUTHORITIES

**Cases:**                                                               **Page**

*1600 East Newlands Drive v. Amazon.com NVDC,*
2019 U.S. Dist. LEXIS 144131 (D. Nev. 2019) ....................................................9

*Arjangrad v. JPMorgan Chase Bank, N.A.,*
2012 U.S. Dist. LEXIS 71745 (D. Or. 2012) ......................................................5

*Crowley v. Epicept Corp.,*
2015 U.S. Dist. LEXIS 195024 (C.D. Cal. 2015) ...............................................4

*CDX Liquidating Trustee v. Venrock Assocs.,*
411 B.R. 571 (N.D. Ill. 2009) ..........................................................................10

*Daubert v. Merrell Pharm., Inc.,*
509 U.S. 579 (1993) ...................................................................................4, 10

*DePaepe v. Gen. Motors Corp.,*
141 F.3d 715 (7th Cir. 1998) ............................................................................7

*Erhart v. Bofi Holding, Inc.,*
445 F. Supp. 3d 831 (C.D. Cal. 2020) ...............................................................7

*Guidroz-Brault v. Mo. Pac. R.R. Co.,*
254 F.3d 825 (9th Cir. 2001) ............................................................................7

*Hygh v. Jacobs,*
961 F.2d 359 (2d. Cir. 1992) ..........................................................................10

*Jinro Am., Inc. v. Secure Invs., Inc.,*
266 F.3d 993 (9th Cir. 2001) .......................................................................7, 10

*Moussouris v. Microsoft Corp.,*
311 F.Supp. 3d 1223 (W.D. Wash. 2018) ..........................................................5

*Nimely v. City of New York,*
414 F.3d 381 (2d Cir. 2005) ...........................................................................10

ii

*Paddack v. Dave Christensen, Inc.*,
745 F.2d 1254 (9th Cir. 1984) ...................................................................8

*Powell v. Anheuser-Busch, Inc.*,
2012 U.S. Dist. LEXIS 200311 (9th Cir. 2011) .......................................5

*Smith v. Pac. Bell Tel. Co., Inc.*,
649 F.Supp. 2d 1073, 1096 (E.D. Cal. 2009) .........................................5

*Specht v Jensen*,
853 F.2d 805 (10th Cir. 1988) ................................................................10

*Stephens v. Union Pac. R.R. Co.*,
935 F.3d 852 (9th Cir. 2019) ...................................................................7

*United States v. Anchrum*,
590 F.3d 795 (9th Cir. 2009) ...................................................................7

*United States v. Diaz*,
2006 U.S. Dist. LEXIS 71123 (N.D. Cal. 2006) ......................................7

*United States v. Dukagjini*,
326 F.3d 45 (2d. Cir. 2003) .....................................................................7

*United States v. Johnson*,
594 F.2d 1253 (9th Cir. 1979) .................................................................9

*United States v. ex rel. Jordan v. Northrop Grumman Corp.*,
2003 U.S. Dist. LEXIS 29055 (C.D. Cal. 2003) .....................................5

*United States v. Iniguez*,
2005 U.S. Dist. LEXIS 39160 (E.D. Wash. 2005) ...................................7

*United States v. Lopez*,
762 F.3d 852 (9th Cir. 2014) ...............................................................6, 7

*United States. v. Rangel–Arreola*,
991 F.2d 1519 (10th Cir.1993) ................................................................4

*United States v. Rizk*,
660 F.3d 1125 (9th Cir. 2011) .................................................................8

iii

*United States v. W.R. Grace,*
455 F.Supp.2d 1148 (Mont. D. 2006)...................................................4

*Washington Cent. R. Co. v. Nat'l Mediation Bd.,*
830 F. Supp. 1343 (E.D. Wash. 1993).................................................9

**FEDERAL RULES**

Fed R. Evid. 403 ....................................................... *passim*

Fed R. Evid. 702 ....................................................... *passim*

Fed R. Evid. 703 ....................................................... *passim*

Fed R. Evid. 1006 ..................................................... *passim*


**OTHER SOURCES**

3 Muelle & Kirkpatrick, *Federal Evidence* 6.6 (3d ed. 2012)............................7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

During the first trial, the government elicited testimony from a single expert witness, accountant John Drum. On August 12, 2021, the prosecution called Mr. Drum as its final witness in its case-in-chief. *See, e.g.,* Trial Tr. (8/12/2021, Vol. 2) p. 49.  Prior to testifying in the first trial, Mr. Drum and his firm, the Analysis Group, were paid over $600,000[1] for financial work performed relating to the CDCA prosecution of Mr. Avenatti.  On direct examination during the first trial, the government used Mr. Drum as their key financial witness relating to the ten counts in the Indictment and introduced **32** demonstrative/summary exhibits (government exhibits 420-450 and 456) that Mr. Drum prepared that the government claims show that Mr. Avenatti misappropriated client funds and committed wire fraud in connection with the ten counts at issue. As conceded by the government, "the vast majority (if not all) of Mr. Drum's proposed testimony, involves foundation for and explanation of Rule 1006 summary exhibits…" [Dkt. 299, p. 7]. However, the government has failed to authenticate the materials underlying the Rule 1006 summary exhibits and has failed to incorporate all relevant data, namely the recently produced Tabs data, within these summary exhibits.

During trial, Mr. Drum testified that in order to perform his financial analysis, he was provided access to QuickBooks records, settlement agreements, retention agreements and bank records. *See, e.g.,* Trial Tr. (8/13/2021, Vol. 1) p. 102. Other than the two spreadsheets (marked as government exhibits 48 and 174), Mr. Drum was never provided access to, and did not request access to, the Tabs software database. *See, e.g.,* Trial Tr. (8/13/2021, Vol. 1) p. 104. Mr. Drum was asked, "Do you have any

---

[1] The government has likely paid Mr. Drum additional funds for his preparation and testimony during the re-trial. As of the date of this filing, the defendant has not received the complete billing records for Mr. Drum nor has the defendant received all of the *Brady* and *Jencks* materials relating to Mr. Drum. The defendant has repeatedly demanded this information in writing.

understanding beyond the two draft documents that you referred to that Ms. Regnier sent, do you have any understanding of what was tracked in Tabs for clients?" to which he answered "Other than those two spreadsheets, no." *See, e.g.,* Trial Tr. (8/13/2021, Vol. 1) p. 105. He stated to the jury that the government "did not give me Tabs data other than the two spreadsheets." *See, e.g.,* Trial Tr. (8/13/2021, Vol. 1) p. 108.  He also testified that he never made any effort to learn how Tabs worked and likewise never "googled it." He also testified that the government provided Mr. Drum with the QuickBooks electronic file, but he made no effort before using it for his analysis to see how current the data was or when the last time it had been updated. *See, e.g.,* Trial Tr. (8/13/2021, Vol. 2) p. 26-27. Mr. Drum stated that he "had no way to verify how complete or incomplete the data was." *See, e.g.,* Trial Tr. (8/13/2021, Vol. 2) p. 27.

Although the government failed to provide Mr. Drum with a copy of the exculpatory Tabs data and comprehensive QuickBooks data, many government witnesses established the importance of the Tabs materials. Multiple witnesses testified that the financial records of Mr. Avenatti's former law firm were maintained on two separate and independently operated accounting systems, QuickBooks, and Tabs. *See, e.g.,* Trial Tr. (7/28/2021, Vol. 1) p. 92. In order to properly calculate the costs for a particular case, it was necessary to review both QuickBooks and Tabs; relying exclusively on one accounting system would result in inaccurate calculations. *See, e.g.,* Trial Tr. (7/28/2021, Vol. 1) p. 93; Trial Tr. (7/28/2021, Vol. 2) p. 29. Former Office Manager Judy Regnier answered affirmatively to the question, "without looking at the data from QuickBooks and Tabs, you don't know what the costs were for the Barela matter; correct?" *See, e.g.,* Trial Tr. (7/29/2021, Vol. 2) p. 65. During the trial, and beyond, the critical nature of the missing financial data was revealed.

On August 15, 2021, Mr. Avenatti filed a Motion to Dismiss the Case due to the Government's Failure to Produce Information as Required by Rule 16, *Brady*, and *Giglio*; and (2) Contempt of this Court's January 15, 2021 Order. [Dkt. 706]. The day prior, on August 14, 2021, the defendant filed a Motion for a Mistrial, or in the

Alternative, to Strike the Testimony of Robert Amenta and John Drum due to Violations of the Jencks Act, Rule 26.2, *Brady* and *Giglio*. [Dkt. 705].[2] The Court has consistently appreciated the overlap between Mr. Drum's testimony, his significance as the only government expert, and the suppression of the Tabs data. On August 20, 2021, the Court ordered the prosecution team, the Privilege Review Team and the defendant to engage in a weekend search for the withheld Tabs data. [Dkt. 749]. The Court alerted the parties that the trial could not continue prior to the Court's understanding of whether or not, and to what extent, the Tabs materials existed and were not provided to the defendant, "I can't go any further until this question is answered. <u>The *Jencks* and *Brady* issues as they relate to Mr. Drum depend in large part on the answer to this question... I'm not going to address Mr. Drum until I know the answer to these questions</u>." Trial Tr. (8/20/21, Vol. 1) pp. 16-17 (emphasis added).[3]

On August 24, 2021, the Court granted Mr. Avenatti's Motion for a Mistrial as a result of the suppressed Tabs data. The Court determined, "financial data is critical to this case ... But if one looks to Mr. Drum's charts, particularly 430 through 457 that sum up the case, those charts are based exclusively on financial data." Trial Tr. (8/24/21, Vol. 1) p. 56. The Court went on to conclude, "I believe that the data would have been useful in an overall showing that **the government's accounting records, the methods of Mr. Drum in particular, weren't accurate. He wasn't accurate in part of his analysis**. I think the jury could question the accuracy of his methods and results with respect to other clients." *Id.* at p. 60 (emphasis added).

---

[2] This motion was based on the government's admitted failure to produce *hundreds* of pages of materials in violation of the Jencks Act, *Brady* and *Giglio.* The government withheld these materials based on a false understanding of the work-product privilege, a legal concept that has been addressed directly by way of the U.S Supreme Court's decision in *Goldberg v. United States*, 425 U.S. 94 (1976).

[3] Once the Court declared a mistrial, the then pending defense motion relating to Mr. Drum became moot.

Based on the following, Mr. Avenatti asks that the Court exclude the testimony of Mr. Drum. Additionally, the defendant requests that the Court preclude the government from introducing the summaries proffered in the initial trial as they are incomplete and not in compliance with Federal Rule 1006. Defendant further requests a *Daubert* hearing prior to Mr. Drum being allowed to testify before the jury.

## II.   ARGUMENT

### A.   The Proposed Testimony is Violative of Rule 702

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if the following criteria are met: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702. "The touchstone of admissibility under Rule 702 is the helpfulness of the evidence to the trier of fact." *United States. v. Rangel–Arreola*, 991 F.2d 1519, 1524 (10th Cir.1993). The United States Supreme Court in *Daubert v. Merrell Dow Pharmaceutical* set out a two-part test for the admittance of expert testimony.  For the testimony to be admitted, the trial court must determine whether the proposed expert has (1) sufficient scientific knowledge that will (2) assist the jury with a fact at issue.  *See Daubert v. Merrell Pharm., Inc.*, 509 U.S. 579, 581 (1993). The 2000 Amendments to Rule 702 added the requirement that expert testimony must be based on sufficient facts or data and required "an analysis of the sufficiency of underlying facts or data that is quantitative rather than qualitative." *United States v. W.R. Grace*, 455 F.Supp.2d 1148, 1152 (Mont. D. 2006); *citing* Advisory Committee Notes.

When conducting the Rule 702 analysis, "the focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993); *See, e.g., Crowley v. Epicept Corp.,* 2015 U.S. Dist. LEXIS 195024 (C.D. Cal. 2015)(excluding the proposed expert's

testimony based on the expert's failure to rely on sufficient data);  *United States v. ex rel. Jordan v. Northrop Grumman Corp.,* 2003 U.S. Dist. LEXIS 29055, *9-11 (C.D. Cal. 2003)(excluding proposed expert testimony where the expert was found to have "summarized selected documents and made assumptions where convenient to arrive at the desired result."); *Moussouris v. Microsoft Corp.,* 311 F.Supp. 3d 1223 (W.D. Wash. 2018)(excluding expert testimony based on the Court's finding that the proposed expert improperly selected and analyzed a small portion of the data set available to her and accordingly she failed to rely on sufficient facts or data); *citing Smith v. Pac. Bell Tel. Co., Inc.,* 649 F.Supp. 2d 1073, 1096 (E.D. Cal. 2009)("Relevant expert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion.").

Expert opinions "that are derived from erroneous or incomplete data are appropriately excluded." *Moussouris,* 311 F.Supp. 3d at 1244 (emphasis added); *citing Arjangrad v. JPMorgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 71745, *17-19 (D. Or. 2012)(excluding the expert's testimony due to finding that the expert "was prevented from considering several key items" rendering the expert opinion incomplete); *See also, Powell v. Anheuser-Busch, Inc.,* 2012 U.S. Dist. LEXIS 200311, *17 (9th Cir. 2011) (holding that the data relied on by the expert was not in compliance with Rule 702 because it "did not provide a complete picture of the relevant events" and "offer[ed] opinions without a full understanding or knowledge of the facts of this case.").

As demonstrated above, several witnesses have established that EA LLP relied on both QuickBooks and Tabs to enter costs, expenses, and attorney's fees and time. Further, it was impossible to properly calculate the fees and costs due from a client's settlement, and the resulting amount due the client, without considering the data from **both** QuickBooks and Tabs.  The government provided Mr. Drum with some QuickBooks data, although it appears to have been outdated. But Mr. Drum was never provided any access to the Tabs database nor did he even request it. In theory, the data available to Mr. Drum was reduced in half. Further, as he admitted during cross-examination, he has done nothing to verify the QuickBooks data. Accordingly, Mr.

Drum did not rely on sufficient data or facts. There has been no showing that Mr. Drum has since received the relevant Tabs data, reviewed the data, incorporated it within updated summary charts or altered his opinions at all. In fact, the expansive nature of the <u>millions</u> of pages of newly produced materials make it impossible for Mr. Drum to have performed a thorough review, incorporate the materials, and make the necessary changes to the summary charts.  It would be actually impossible at this time for the purported expert to perform a meaningful analysis of the suppressed financial data prior to trial.

Because Mr. Drum's reliance was solely on incomplete QuickBooks materials, he provided the jury with an incomplete picture of Mr. Avenatti's funds, expenses, costs, attorney's fees and hourly work performed in relation to the alleged victims. The government's act of preventing him from securing a clear picture of the facts at issue in this case renders his opinion unreliable and not based on a complete data set that should have been made available to him and is required for his opinions to stand. Thus, Mr. Drum's testimony and government exhibits 420-450 and 456 should be excluded.

Mr. Drum's testimony is incomplete, not supported by at least half of the financial data available to the prosecution in this case, and is not in compliance with Federal Rule of Evidence 702. In fact, nothing has changed since the Court made a determination one month ago that "I believe that the data would have been useful in an overall showing that **the government's accounting records, the methods of Mr. Drum in particular, weren't accurate. He wasn't accurate in part of his analysis**." *Id.* at p. 60 (emphasis added).

### B.    The Proposed Testimony is Violative of Rule 703

Pursuant to Rule 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." In order to qualify as a fact witness, however, the witness must form an opinion that is (a) rationally based in the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and, (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702. Rule 701(a) contains a personal knowledge requirement. *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). In presenting a

lay opinion under Rule 701, "the personal knowledge requirement may be met if the witness can demonstrate firsthand knowledge or observation." *Erhart v. Bofi Holding, Inc.*, 445 F. Supp. 3d 831, 838 (C.D. Cal. 2020); *citing Lopez*, *supra*, 762 F.3d at 864. Personal knowledge refers to "knowledge produced by the direct involvement in the senses." *Lopez,* 762 F.3d at 863; *citing* 3 Mueller & Kirkpatrick, *Federal Evidence* 6.6 (3d ed. 2012). Further, Rule 703 requires that "[t]he expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019)(quoting Fed. R. Evid. 703; citing *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830-21 (9th Cir. 2001); *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998).

The Ninth Circuit has previously recognized the potential for prejudice when a witness testifies as both a fact witness and an expert witness. *Jinro Am., Inc. v. Secure Invs., Inc.,* 266 F.3d 993, 1004 (9th Cir. 2001); *See also, United States v. Diaz*, 2006 U.S. Dist. LEXIS 71123, at *16 (N.D. Cal. 2006); *United States v. Dukagjini*, 326 F.3d 45, 53-55 (2d. Cir. 2003). When a single witness acts as a fact and expert witness, "the government confers upon him the aura of special reliability and trustworthiness surrounding the expert testimony, which out to caution its use." *Id.* Additionally, the dual-role of a single witness may "inhibit cross-examination, thereby impairing the trial's truth seeking function." *Id.* There is also an increased danger that "the expert testimony will stray from applying reliably methodology and convey to the jury 'sweeping conclusions' about the defendant's activities contrary to the structures of Rule 403 and 702." *United States v. Iniguez*, 2005 U.S. Dist. LEXIS 39160, at *6 (E.D. Wash. 2005). *See also, United States v. Anchrum*, 590 F.3d 795, 803-04 (9th Cir. 2009)(dividing the agent's testimony into two separate phases, expert testimony and lay testimony, to avoid blurring the distinction between the two roles).

The government should not be permitted to circumvent the Federal Rules of Evidence and the general ban on hearsay by offering Mr. Drum as a fact witness. As evidenced by the government's conduct during the first trial, the government sought to

avoid authenticating and proving the admissibility for <u>each business record</u> by having Mr. Drum improperly testify to these records and admit them by way of the Rule 1006 summary exhibits. Because the government did not want to authenticate and admit into evidence the records underlying Mr. Drum's opinions, it asked Mr. Drum to testify as to the alleged facts of various transactions contained in the inadmissible business records, to which Mr. Drum had no personal knowledge. The government should not be permitted to elicit the testimony of Mr. Drum to describe and parrot the financial records it cannot offer as evidence. The government's own statements in prior filings concedes this theory. The government admitted to the Court, "<u>the vast majority (if not all) of Mr. Drum's proposed testimony, involves foundation for and explanation of Rule 1006 summary exhibits…</u>" [Dkt. 299, p. 7](emphasis added). This statement alone establishes that the government seeks for Mr. Drum to lay the foundation for inadmissible and hearsay documents (that the government cannot establish as properly admitted business records) to which he has no personal knowledge. This is directly contrary to the principles of Federal Rule of Evidence 703 and thus his testimony on these charts, as well as the charts themselves, must be excluded on this basis.

### C. The Summaries Proffered by Mr. Drum are Violative of Rule 1006

Federal Rule of Evidence 1006 indicates, "[t]he proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." The proponent must make the original or duplicates "available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court." Fed. R. Evid. 1006. The Ninth Circuit has made it clear that "[i]t is essential that the underlying records from which the summaries are made be admissible in evidence…" *United States v. Rizk*, 660 F.3d 1125, 1130-31 (9th Cir. 2011)(emphasis added). Although "these materials must be admissible" they "need not themselves be admitted into evidence." *Id. See also Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1260 (9th Cir. 1984)("it is clear that a summary of both inadmissible and admissible

hearsay should not be admitted under Rule 1006"); *citing United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979)("Under Fed. R. Evid. 1006 the proponent of the summary must establish that the underlying materials upon which the summary is based are admissible in evidence."(emphasis added)); *See also, 1600 East Newlands Drive, LLC v. Amazon.com NVDC, LLC*, 2019 U.S. Dist. LEXIS 144131 (D. Nev. 2019)("[w]hile it is possible that the records could qualify as business records, it is the proponent's burden to show that all of the criteria to qualify are met through sworn testimony by custodian of the records."); *citing Washington Cent. R. Co. v. Nat'l Mediation Bd.,* 830 F. Supp. 1343, 1353-54 (E.D. Wash. 1993)(holding that records that facially appear to constitute business records did not meet the requisite hearsay exception.)

Mr. Avenatti renews his requests to exclude previously marked government exhibits 420-450 and 456 based on their failure to comply with Rule 1006. First, the government previously utilized these summaries as a manner of admitting business records without making any attempts to prove that the underlying materials are properly authenticated and/or admissible. The government should not be permitted to circumvent the Court's prior orders by creating Rule 1006 summaries that are not compliant with the Federal Rules of Evidence. Second, Mr. Avenatti renews his objection to these summaries as they do not properly identify each and every document or category of documents underlying the Rule 1006 summaries. Third, if these summary charts have changed, the government has failed to provide the defendant with any notice, let alone timely notice, of the modifications to the summary charts in light of the new data that was previously suppressed.

### D.    The Proposed Testimony is Violative of Rule 403

Pursuant to Federal Rule of Evidence 403, the Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  In

addition to the requirements of Federal Rules of Evidence 702, 703 and 704, "expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.' " *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)(quoting Fed. R. Evid. 403).  Expert evidence "can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the preset rules exercises more control over experts than lay witnesses." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993); *See also Jinro Am., Inc. v. Secure Invs. Inc.,* 266 F.3d 993 (9th Cir. 2001).  Thus, federal courts have held that "Rule 403 bars expert testimony purporting to interpret the governing law, because such testimony will necessarily confuse the jury by providing competing interpretations of the law." *CDX Liquidating Tr. ex rel. CDX Liquidating Trustee v. Venrock Assocs.,* 411 B.R. 571, 587 (N.D. Ill. 2009) (citation omitted).  "Expert testimony about the governing law is barred under Rule 403 because 'it would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to have it stated differently.'" *Id.* (quoting *Specht v Jensen*, 853 F.2d 805, 807 (10th Cir. 1988)).  Such testimony should be excluded because the jury could be "misled into adopting outright a legal conclusion proffered by the expert."  *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d. Cir. 1992).

Mr. Drum's testimony at a second trial and the admission of the summary exhibits previously admitted by way of Rule 1006 should be excluded in their entirety pursuant to Federal Rule 403. The presentation of incomplete testimony and summaries, which are admittedly not supported by all of the relevant facts and data, are not only in violation of the Federal Rules but are also highly prejudicial and misleading. In a different context, the Court described these summaries as "materially assist[ing] any member of the press or public in appreciating what the charges are and what the government's contentions are." Trial Tr. (8/18/21, Vol. 1) p. 89. The government relied heavily on these exhibits

and Mr. Drum's explanation of them to tie together its case against the defendant. The presentation of evidence that unequivocally and hastily eliminates extensive amounts of data is violative of Rule 403. Accordingly, Mr. Drum's testimony as well as the corresponding summary charts should be excluded by way of Federal Rule of Evidence 403.

## III.   **CONCLUSION**

For each of the reasons set forth in the motion, Mr. Avenatti respectfully requests that the Court exclude the proposed testimony of Mr. Drum as well as the corresponding summary exhibits in their entirety. In the alternative, defendant requests that the Court hold a *Daubert* hearing prior to ruling on this motion and permitting any testimony from Mr. Drum.

 Dated:  September 29, 2021                  Respectfully submitted,

                                                            /s/ Michael J. Avenatti

                                                            Defendant
                                                            MICHAEL JOHN AVENATTI

## **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on September 29, 2021, service of the:

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF JOHN DRUM AND REQUEST FOR A *DAUBERT* HEARING

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29, 2021

/s/ H. Dean Steward
H. Dean Steward