Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994
Email: DeanSteward7777@gmail.com

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S STATUS REPORT IN ADVANCE OF THE OCTOBER 4, 2021 STATUS CONFERENCE |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, hereby files his Status Report in Advance of the October 4, 2021 Status Conference.

Dated: October 1, 2021

Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

**A.    The Court's September 29, 2021 Request for Information [Dkt. 829]**

1. <u>From the Government's presentation on September 27, 2021, the Court understands that copies of servers 1 through 4 indexed in FTK have been produced. Is this correct?</u>

    a.    This is incorrect.  The government informed the defense yesterday that it has thousands of additional indexed files to produce from server 4.  The defense attempted to acquire these files earlier today but they were not yet available; the parties have agreed that the files will be provided on Monday morning.

    b.    The government originally seized and claimed to have searched six Eagan Avenatti, LLP ("EA") servers totaling 19.86 terabytes[1] and approximately 18,190,464

---

[1] *See Schwartz v. United States*, 828 Fed.Appx. 628, 634 n. 3 (11th Cir. 2020):

> What is a terabyte? Well, it depends on the medium (print, photo, video, etc.), but at bottom it is a number of bytes of information. Three terabytes is approximately thirty with twelve zeros following, or 3 million million, or 3 trillion bytes. According to various cases, printed text gets the best bang for the buck: Three terabytes of plain text would be approximately 3,000 gigabytes (GB), or the equivalent of 1.5 trillion pages of plain (or "typewritten") text. *See Laethem Equip. Co. v. Deere & Co.*, No. 05-10113, 2008 WL 11355558, at *4 n.1 (E.D. Mich. Dec. 3, 2008) (citation omitted); *Haka v. Lincoln Cnty.*, 246 F.R.D. 577, 578 n.1 (W.D. Wis. 2007).
>
> According to the conversion rate found in *McNulty v. Reddy Ice Holdings, Inc.*, 3 terabytes would equal approximately 660 million pages of "printed text." 271 F.R.D. 569, 570 n.1 (E.D. Mich. 2011). Without delving into the distinctions between "plain" text and "printed" text, let's just say a terabyte is more than a little information. Three terabytes would hold 3,000 copies of the Encyclopedia Britannica, or 30% of the printed collection of the Library of Congress. *United States v. Salyer*, Cr. No. S-10-0061-LKK, 2011 WL 1466887, at *1 n.2 (E.D. Cal. Apr. 18, 2011) (quotation omitted), *report and recommendation adopted*, Cr. No. S-10-061-LKK, 2011 WL 1811211 (E.D. Cal. May 12, 2011).

<u>This is why no meaningful or comprehensive search of the servers, including for Brady/Giglio materials, can be conducted without properly indexing all of the data on the servers.</u>

million files[2] for information responsive to the broad search warrant. However, to date, the government has only produced approximately 37% of the files from the servers in indexed form and a much smaller percentage of the files from server 5, which was the main server at the law firm. The government has stated to the defense that approximately 12 million files remain to be indexed and produced from that server as of this filing, and that the government has no estimate as to when this will be completed because the indexing is occurring at an abysmal rate of only approximately 1,000 files per day.

> 2. <u>With respect to server 5, the Court understands that the Government has delivered 4.3 million files that were indexed to go into "relatively." These were described as "user" files and were selected because they would have the highest degree of relevance to the case. (Id., p. 5.) What other types of files are on server 5? Can any be ruled out for lack of relevance based on the type of file? In other words, can the production of the full server be short-circuited so that entire production is not needed?</u>

The 4.3 million files delivered by the government were previously unilaterally selected by the government and placed into a software program called "Relativity" for review by DOJ contract personnel for information responsive to the search warrants. On September 27, 2021, the government acknowledged for the first time that the government only selected these "user" files[3] from server 5 for review for relevant and/or

---

[2] This is a conservative estimate as to the total number of files. A single file in turn can contain a small amount of information (i.e., a two-sentence text document) or an enormous amount of information (i.e., an entire database with thousands of financial entries or thousands of emails).

[3] It is unclear what constituted a "user" file in the government's eyes or how the government identified those files. But if true, *see infra*, it appears that Mr. Varani of the DOJ Computer Lab in Washington, D.C. unilaterally selected which files from the servers he believed needed to be reviewed based solely on their name and type. He did without ever having communicated with Ms. Regnier or any other person with knowledge as to how information was stored on the servers at EA, the types of information at the firm, or even the most basic information as to how the firm operated

*Brady* information and ignored the rest. In other words, no review of the remaining approximate 15.5 million files (approximately 63% of the servers) was ever done, which explains one reason why the Tabs data (which was located on server 5) was never reviewed and produced (i.e., the government did not identify it as a "user" file, and the prosecution never made efforts to produce it despite knowing about it). At this point, there is no telling how much additional relevant and/or *Brady* material is included within the 15.5 million files that have never been reviewed by the government.

The recent disclosure by the government that only <u>some</u> of the files from the servers were indexed and reviewed is directly contrary to the sworn trial testimony of DOJ Senior Digital Investigative Analyst Joseph Varani, who was called by the government early in the trial and testified that <u>all files from all of the servers were indexed in FTK and reviewed using key word searches</u>. That examination, conducted by AUSA Alex Wyman, included the following:

> Q. Did you extract data from various forensic images of digital devices that have been provided to you as part of this investigation?
> A. Yes, I did.
>
> Q. Who provided those forensic images to you?
> A. They were provided by IRS Special Agent Nshan Tashchyan.
>
> Q. Were the forensic images that were provided to you labeled so that you could identify which digital devices you had been provided with?
> A. Yes, they were.

---

or administered its finances and its clients' cases and settlements.

4

1  Q. Based on the information provided to you by Special Agent
2  Tashchyan, what kind of devices were these images of?
3  A. These were images of *computer servers* and a laptop.
4
5  Q. And based on that information, what is your understanding of
6  where those devices came from?
7  A. My understanding is that the computer servers came from a digital
8  data center, and the laptop was seized from Mr. Avenatti in New
9  York.
10
11 Q. Did you understand from that information that the *servers were*
12 *affiliated with the law firm Eagan Avenatti*?
13 A. *Yes*.
14
15 Q. Once you received the forensic images from the IRS CI, can you
16 please describe *the process that you undertook to extract data from*
17 *those images*.
18 **A. I *first* used our forensic tools to import *all* of the data and**
19 **process that data. And what it does is it locates *all of the files* that**
20 **are inside the alchemies of the images that we received. It also**
21 **indexes the contents of *those files* as well *so that I am able to***
22 ***perform keyword searches on the contents of the files*.**
23
24 Q. And did you conduct those keyword searches?
25 A. Yes. I received a list of keywords from the investigation team. I
26 conducted those searches, and then I exported the matching files to a
27 hard drive and provided those to others on the team for review.
28

5

> Q. The tools you mentioned that you used to extract this data, were you trained on those extraction tools?
> A. Yes.
>
> Q. And had you used those tools before?
> A. Yes. The tool that I used for this I use in most of the cases over the 11 years that I have done this.
>
> Q. And based on those 11 years of experience and all the training you have received, is that a commonly accepted and reliable tool for extracting data?
> A. Yes. *The tool is FTK, the forensic tool kit*, which is widely used for digital forensics.
>
> Q. Using that tool, are you *able to review the contents of the digital device images that you receive*?
> A. *Yes*.

[Trial Transcript, 7-23-2021, Vol. 1, pp. 11-13 (emphasis added).]

This trial testimony and the privilege review team's recent statements that not all files were indexed in FTK and reviewed is directly at odds. Either the testimony was not accurate or the government still has not provided all of the FTK indexed files to the defense. Under either scenario, this is a serious issue that must be addressed.

Assuming the trial testimony is not accurate and all of the files were not indexed, reviewed and searched, the defense believes that a manual review of server 5 could be conducted to weed out certain files for lack of relevance prior to indexing but this would be extremely time consuming and inefficient and would also need to be done with the

6

involvement of the defense. Some of the other files on server 5 are program and operating files and those could be eliminated. Others, however, are data, email and financial files that may be highly relevant and must be indexed. Whatever indexed files that resulted would then still have to be reviewed by the defense (together with the other data that has only recently been produced). The defense requests that they be given 120 days to (i) utilize their own indexing tools to index the remaining files[4] from their forensic copies of the servers and (ii) complete their review of all of the indexed files from all of the servers for relevant or *Brady* materials.

Assuming the trial testimony is accurate and all of the files from all of the servers were previously indexed, all of the government's FTK indexed files should have been provided to the defense long ago pursuant to this Court's directives. They were not. The government should again be directed to produce the remaining files and the defense should be given at least 75 days to review that information together with the information that has been produced over the last five weeks, especially seeing as at least 63% of the data on the servers appears to have never been reviewed by the government for relevance or *Brady/Giglio*.

---

[4] Concerned about how long it is taking the government to index the remaining files, and recognizing the critical need for indexed files, the defense started its own indexing process approximately seven days ago. That process continues as of this filing.

## **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action. I have caused, on October 1, 2021, service of the:

DEFENDANT'S STATUS REPORT IN ADVANCE OF THE OCTOBER 4, 2021 STATUS CONFERENCE

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 1, 2021

/s/ H. Dean Steward
H. Dean Steward