1

```
              UNITED STATES DISTRICT COURT

             CENTRAL DISTRICT OF CALIFORNIA

                    SOUTHERN DIVISION

                         - - -

     THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING


     UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
                     Plaintiff,    )
        vs.                        )
                                   )  SACR-19-00061-JVS
     MICHAEL JOHN AVENATTI,        )
                     Defendant.    )
     ------------------------------)



         REPORTER'S TRANSCRIPT OF PROCEEDINGS

                 Santa Ana, California

                   October 4, 2021



               SHARON A. SEFFENS, RPR
               United States Courthouse
               411 West 4th Street, Suite 1-1053
               Santa Ana, CA  92701
               (714) 543-0870
```

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     ALEXANDER WYMAN
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25
```

1    SANTA ANA, CALIFORNIA; MONDAY, OCTOBER 4, 2021; 9:22 A.M.
2             THE CLERK:  SACV-19-00061-JVS, United States of
3    America versus Michael John Avenatti.
4             Counsel, please state your appearances for the
5    record.
6             MR. SAGEL:  Good morning, Your Honor.  Brett Sagel
7    and Alex Wyman on behalf of the United States, and at
8    counsel table is Patrick Fitzgerald with the Privilege
9    Review Team.
10            THE COURT:  Good morning.
11            MR. AVENATTI:  Good morning, Your Honor.
12   Defendant Michael Avenatti present with advisory counsel,
13   Mr. Dean Steward.  Ms. Cummings-Cefali is also present at
14   counsel table, and I'm joined here today by Ernie
15   Koeberlein, the forensic computer expert, as directed by
16   Your Honor.
17            THE COURT:  Good morning.
18            The first item of business is Mr. Avenatti's
19   Motion to Dismiss and to Deny a Retrial.
20            Would you like to be heard?
21            MR. AVENATTI:  I would, Your Honor.  Could I
22   address the Court from the podium?
23            THE COURT:  Please.
24            MR. AVENATTI:  Your Honor, I've had the benefit of
25   the tentative.  Respectfully, I disagree with the Court's

decision for all the reasons contained in my briefing, the declaration, and the exhibits. At a minimum, I believe the Court should hold an evidentiary hearing. I will not reargue the points contained within the documents I filed in support of the motion here again this morning, but I will obviously stand by them, and I reassert them now for the record.

I do wish to address one item in particular if I could, Your Honor, and respectfully request that the Court consider editing the tentative before the final order is issued, and that is Footnote 6. Footnote 6 in Your Honor's tentative states that I made an inaccurate assertion to the Court in the motion. I obviously take that extremely seriously, Your Honor, and for that reason, I would like to address it.

THE COURT: Well, let me be clear when I say something is inaccurate, not factually correct, it's not a moral judgment.

MR. AVENATTI: Understood, Your Honor. But, again, I take this footnote extremely seriously because my candor to the Court is of the utmost importance, and I want to --

THE COURT: It's not a question of candor. It's a question of accuracy in my view.

MR. AVENATTI: Fair enough, Your Honor. But in

any event, if I could address it momentarily.  I handed up to the Court this morning before the hearing began pages 16 and 17 of the motion at Docket 822.  I've handed up two documents, but this would be 822 at the top.  There is a highlighted portion beginning at the bottom of 16 onto 17.  The statement that the Court described as inaccurate is contained within page 17.

Your Honor, I would assert that the statement made in the motion that none of the Tabs files were previously produced was in fact accurate.  What I was referring to, Your Honor, was the electronic files.  No electronic Tabs files were ever produced.  What was produced were two draft printouts that were subsequently marked during trial as Exhibit --

THE COURT:  Well, the footnote is not necessary to my holding on the --

MR. AVENATTI:  I'm sorry?

THE COURT:  You're distinguishing files from documents, and that's the purport of the statement.  I understand.

MR. AVENATTI:  That was my purpose, Your Honor.  In fact, we have never disputed that 48 and 175 were marked during the trial, and we referred to them I think six times in the motion, so --

THE COURT:  So we can move on to other subjects

```
 1  then.
 2          MR. AVENATTI:  Fair enough, Your Honor.  I wanted
 3  to explain the statement in the motion.  So with that, Your
 4  Honor, I would submit.
 5          THE COURT:  Does the government have any comments?
 6          MR. SAGEL:  We'll submit on your tentative and our
 7  filings, Your Honor.
 8          THE COURT:  The tentative will be the order of the
 9  Court then.
10          Okay, let's discuss the status of the production.
11  I understand from the government's latest filing that as of
12  this morning indexed versions of Servers 1, 3, 4, and 6 have
13  been delivered, correct?
14          MR. FITZGERALD:  Your Honor, 4 will be delivered
15  when Special Agent Tashchyan is here and can give it to the
16  defense.
17          THE COURT:  Okay.
18          MR. FITZGERALD:  Imminently, yes, Your Honor.
19          THE COURT:  Okay.  I understand from the
20  government's report that the balance of unindexed documents
21  on Server No. 5 are TIFFs.  Is that accurate?
22          MR. FITZGERALD:  Yes, that's what Mr. Varani
23  reported, Your Honor.
24          THE COURT:  I'm satisfied that that's sufficient
25  production.  The likelihood of TIFFs documents containing
```

1   Brady, Giglio, or other material I believe is extremely
2   slim.  While the efforts I think should go forward to index
3   those, it's not going to be an impediment to going to trial
4   on November 2.
5           Mr. Avenatti.
6           MR. AVENATTI:  Your Honor, I want to address the
7   assertion made in the government's report about what a TIFF
8   is.  We weren't running a photography or a graphics design
9   shop.  We were running a law firm.  These are not graphic
10  images perhaps in the way that most of us would understand
11  them to be.  In fact, when the government makes production
12  to us of documents like the settlement agreements and the
13  documents that are critical to the client matters, those
14  productions are made in TIFFs.  So these are searchable
15  documents.  They're not photos or videos.
16          You're talking about millions of documents.  So
17  the assertion by the government or the suggestion that
18  somehow these TIFF images are not searchable or may not
19  contain material information is just not accurate.  These
20  millions of TIFF images for the most part are documents.
21  They're not photos or graphics or things of that nature.  So
22  I was very surprised to see that assertion by the
23  government.
24          The importance of indexing this information can be
25  shown by Mr. Varani's own sworn testimony before the jury.

```
 1    Under examination by Mr. Wyman, Mr. Varani testified to two
 2    critical things as it relates to this point:  One, that the
 3    entirety of the servers were imaged and then indexed in FTK.
 4    That's what he testified to.  And then he also testified to
 5    the fact that that had to be done in order to do a proper
 6    search.
 7              Now come to find out not all of the servers were
 8    imaged, and it's unclear to us as to which server was imaged
 9    when.  That raises a significant concern relating to Brady,
10    Rule 16, and the government's obligations, because what it
11    appears happened was that the government only indexed a
12    portion of the servers, only reviewed a portion of the
13    servers, and then produced that information to the defense
14    before trial.
15              Now, we have the benefit of the totality of the
16    forensic images of the servers, which we only got back on
17    September 16.  We have been actively reviewing those servers
18    for relevant information and Brady material that was not
19    previously produced, and, in fact, we've already uncovered
20    some.
21              But it should be very disturbing to the Court that
22    you have a member of the United States government, the
23    Department of Justice from Washington, D.C., who testifies
24    in front of the jury that all of the servers were indexed
25    and that that's what had to happen in order for them to be
```

```
 1   searched and now come to find out that's not true.
 2           So it appears that a proper review was not
 3   conducted by the Privilege Review Team.  Why does that
 4   matter now?  Because now it falls on the defense in order to
 5   conduct this in a sufficient manner to ensure that we have
 6   the information that we need prior to trial.
 7           And the last point that I will raise is this, Your
 8   Honor -- and I handed this up before the hearing.  This is
 9   at Docket 511.  This is a status report that we filed on
10   June 25, 2021.  We noted that the government had not
11   produced all of the Brady material.  I specifically warned
12   if these issues are not addressed in detail now before trial
13   they will emerge in the middle of trial or immediately
14   post-trial and create a host of problems (not to mention a
15   possible mistrial).
16           I raised concerns then.  I was told that I was
17   frivolous and I didn't know what I was talking about.  The
18   Court and I were told that everything has been produced, all
19   of the Brady.  We heard it repeatedly.  I turned out to be
20   right.  Those representations turned out to be wrong.  I am
21   raising the same concerns now, Your Honor.  I'm repeating
22   them now.
23           All of the information hasn't been produced.
24   There's additional issues that we're going to raise with the
25   Court relating to this Brady.  I think, Your Honor, the
```

1  fundamental problem here is that the government does not
2  know what Brady is. if you look at the Opposition to the
3  Motion on Double Jeopardy, we know that to be true.
4  Mr. Wyman and Mr. Sagel believe that there is a materiality
5  component to Brady.  There is no materiality component to
6  Brady pre-conviction.  There is not.  The Ninth Circuit has
7  repeatedly said this.
8       So what you have is you have representations being
9  made to the Court and the defense that all Brady material
10 has been produced when they don't even know what Brady is,
11 and they haven't looked at all of the information and the
12 documents in the electronic data.  It is a serious issue,
13 Your Honor.
14       For all of those reasons, I need adequate time to
15 review this information.  I wanted the Court to be aware of
16 the issue relating to the TIFF images.  These are not
17 photographs, Your Honor.  They're documents.  And I
18 appreciate the time of the Court.
19       THE COURT:  What's the volume of TIFF data you
20 presently have?
21       MR. AVENATTI:  The volume of the TIFF data?
22       THE COURT:  Right.
23       MR. AVENATTI:  I don't have the full count of the
24 TIFF data.  What I do know is this.  I asked Mr. Fitzgerald
25 -- there's a reference in the status report that there's 11

1    or 11-and-a-half million TIFF images that they're going to
2    produce to us.  They have not produced them to us in TIFF
3    images.  He told me I should have it by the end of the week.
4             THE COURT:  Let's back up a minute.  It's correct
5    that you have a full forensic copy of every server,
6    including Server No. 5?
7             MR. AVENATTI:  Yes, sir, totaling almost 20
8    terabytes.  It's an enormous amount of information, an
9    enormous amount of information.  And the only way to search
10   the TIFF images is to basically index them or OCR them.
11   That's the only way to do it.
12            THE COURT:  Well, have you embarked on either
13   task?
14            MR. AVENATTI:  We have.  We started it as
15   referenced in the status report that I filed.  We started
16   about a week ago because we had very little confidence that
17   the government was going to be able to actually do what we
18   needed done, so we started to work on a parallel path, Your
19   Honor.
20            THE COURT:  Mr. Fitzgerald.
21            MR. FITZGERALD:  Your Honor, just to clarify one
22   technical point, the 11.5 million files that were mentioned
23   in our status report I believe include all graphics files,
24   so that would include TIFF files, but it would also include
25   JPEGs or the other types of files that are mentioned in our

```
 1   documents.  So --
 2              THE COURT:  Are you able to make a further
 3   breakdown?  I assume you don't need photos.
 4              MR. FITZGERALD:  Well, Your Honor, pursuant to the
 5   Court's direction, we've turned over everything to the
 6   extent we can.  We're trying to index everything.  Again,
 7   we're --
 8              THE COURT:  Can one make a determination as to
 9   what part, if any, of the 11.5 million are JPEGs or other
10   clearly pictures?
11              MR. FITZGERALD:  Your Honor, I know FTK can
12   differentiate between types of files.  That is reflected in
13   our status report.  I will need to talk to our technical
14   specialist to see how granular that information is and how
15   quickly we can get it to the Court.
16              THE COURT:  Okay.
17              Mr. Avenatti.
18              MR. AVENATTI:  Your Honor, obviously I'm not
19   concerned about JPEGs and photographs or videos.  We're
20   interested in documents.  So what I would ask is if it's
21   acceptable to the Court is that we come back again next
22   Monday and discuss --
23              THE COURT:  How about Tuesday?
24              MR. AVENATTI:  That's fine.
25              THE COURT:  8:00.  I'm starting a trial that day.
```

1    MR. AVENATTI:  Okay.  We'll be back at 8:00 on
2    Tuesday, and hopefully we'll have additional information
3    from the government.  But I did want the Court to understand
4    the importance of these TIFF images.
5            THE COURT:  Of the new TIFF images that have been
6    produced to you, you're talking about images that weren't
7    previously produced as part of the government's production.
8    It would be helpful for me to have some exemplars of the
9    types of documents you suggest would be in there that are
10   potentially relevant.
11           MR. AVENATTI:  Your Honor, we'll do our best and
12   try to come up with some of those exemplars in advance of
13   Tuesday.
14           THE COURT:  Okay.
15           MR. AVENATTI:  Thank you.
16           THE COURT:  Okay.  Then we'll go over to Tuesday
17   the 12th at 8:00 a.m.
18           Anything further for today?
19           MR. SAGEL:  Briefly, Your Honor, if I may.  Your
20   Honor both last week and this week had referenced a
21   November 2nd trial date again.  Just for clarification, I
22   know at one point previously you had mentioned coming in the
23   week prior to start the jury selection.  Just for scheduling
24   purposes and witness purposes, we're trying to get a grasp
25   on will we be starting jury selection still the week before,

```
 1   or are we starting that November 2nd, or has Your Honor
 2   decided yet?
 3            THE COURT:  Well, all the events that I need to
 4   make a decision on haven't occurred yet.  One of the
 5   question marks is whether a trial that is set to commence on
 6   October 26th will in fact go.
 7            MR. STEWARD:  Your Honor, Dean Steward, may I
 8   address that?
 9            THE COURT:  Please.
10            MR. STEWARD:  On the 26th -- I represent Dr. Liao.
11   I've talked to AUSA Larry Kole.  I anticipate the case will
12   go forward as scheduled assuming Dr. Liao's health allows
13   it.  I saw him over the weekend --
14            THE COURT:  What's the latest report on his
15   health?
16            MR. STEWARD:  I'm sorry, Your Honor?
17            THE COURT:  What's the latest report on his
18   health?
19            MR. STEWARD:  He seems okay.  He's going to need
20   oxygen while he's here.  As the Court knows, he's undergoing
21   kidney failure.  He really wants to go on the 26th because
22   he's concerned that if his health deteriorates he wouldn't
23   be able to come to court.  So he really would like to do
24   that.  AUSA Larry Kole indicated to me his case is going to
25   be five to six days, and I anticipate probably a
```

1  day-and-a-half to two days for the defense case.  So it'll
2  put us into the middle of the following week just as an FYI.
3          THE COURT:  This case may have to trail for a day
4  or two, but I'm going to leave it right where it is.  I
5  appreciate that the parties need to plan.  As soon as I can
6  give further guidance, I will.
7          MR. SAGEL:  I'd appreciate that, Your Honor.
8          One other housekeeping matter.  Your Honor has
9  obviously already ruled on our reciprocal discovery motion
10 in-limine for the first trial and so forth.  Obviously, the
11 defendant now has a full forensic copy of the servers.  I
12 don't know if Your Honor wants to set a new -- well, we
13 would ask that the Court set a new reciprocal discovery
14 deadline for any new exhibits that are nonimpeachment
15 material in advance of the trial because that will possibly
16 bring up other issues.
17         We don't have access to the servers.  We might
18 need someone to verify the accuracy of the documents and so
19 forth.  So I ask that the Court set a deadline in advance of
20 trial for any new reciprocal discovery.  Your Honor's order
21 for anything predating on these servers would still be in
22 effect, but anything new from these servers would take on a
23 new possibly good-faith explanation.
24         THE COURT:  Mr. Avenatti.
25         MR. AVENATTI:  The good-faith explanation, Your

1  Honor, is we just got 20 terabytes of data.  I mean --
2            THE COURT:  It is inconceivable that every single
3  document on every single server could be relevant to this
4  case.  It's just absolutely inconceivable.  I think we need
5  to take a step back.  The original approach was to put the
6  government to its burden of making the document production
7  provided by Giglio, Brady, Jencks, Rule 16, et cetera.  We
8  came to a point where the government urged as an alternative
9  that they simply produce to you forensic copies of all the
10 servers.
11           So the domain to look at expanded substantially to
12 the 20 terabytes.  I think we need to keep in perspective
13 that it's unlikely that the vast majority of those documents
14 will have anything to do with this case.
15           MR. AVENATTI:  I agree, Your Honor, as it relates
16 to the Court's comment concerning the vast majority of the
17 documents.  But let us also take a step back and recall how
18 we got here.  The government seized the entirety of the
19 servers.  And at that point, it became the government's
20 obligation, their sole obligation -- not the defense's
21 obligation but their obligation -- to go through the
22 entirety of the servers and produce all documents and
23 materials required by Brady, Giglio, and Rule 16, as well as
24 Your Honor's order.  That was their obligation.  They failed
25 in that obligation.

1            Now, we don't have to get into why that happened
2   right now, or how it happened, or whether it was inadvertent
3   or purposeful.  There's differing opinions in this courtroom
4   about that.  But let's be clear.  They failed.  What they
5   did was they then turned around and said we want the
6   defendant to identify for us what's Brady, which is unheard
7   of.  And as an alternative, they suggested something that
8   we've been asking for for years, which was just give us the
9   servers, and we'll do our own search, and that's where we're
10  at.
11           I'm not suggesting, Your Honor, that the totality
12  of those servers -- every document -- is relevant.  In fact,
13  probably a small percentage is relevant.  But the problem is
14  we have to determine what is relevant, determine what's
15  exculpatory, determine what is Brady under the Ninth Circuit
16  standard, not the government's materiality standard.  And
17  then we have to utilize that during the trial.  That's the
18  issue.
19           THE COURT:  Anything further for today?
20           MR. SAGEL:  Do you need us to file something or
21  does Your Honor want to set a date certain for reciprocal
22  discovery?
23           THE COURT:  We'll take it up next week, and I will
24  set a date.
25           MR. AVENATTI:  Your Honor, two housekeeping

1  matters from the defense briefly.  The first is I'm
2  assuming -- and I believe the government agrees with my
3  position on this -- that all of Your Honor's motion
4  in-limine rulings made prior to the first trial carry over
5  to the next trial, and any objections or motions that were
6  made by either side are deemed for the record to have been
7  made in connection with this second trial.
8          THE COURT:  Correct.
9          MR. AVENATTI:  Okay.  Then second of all, the
10 government filed three motions in-limine, two of which -- or
11 all three of which have to be opposed by Wednesday.
12 There's one motion in-limine relating to Mr. Stolper that I
13 need to be able to have further review of the e-mails and
14 some of other documents on the servers before opposing that
15 motion.  So I'd ask for an extension of time to respond to
16 the Stolper-related motion closer to trial, if possible.
17         THE COURT:  The motions are noticed for the 27th;
18 am I correct?
19         MR. SAGEL:  Correct, Your Honor.
20         THE COURT:  You've got until the 13th to respond
21 to every one but the Stolper motion.
22         MR. AVENATTI:  Okay, although for two of the
23 motions, our oppositions will be done by this Wednesday, and
24 we're going to file them, so that's the 6th.
25         THE COURT:  Okay.  And on the Stolper motion?

```
 1            MR. AVENATTI:  The Stolper motion I'd like until
 2   the 20th, if possible, because I have to review information
 3   on the servers, which I believe counters the government's
 4   claims in the motion related to Mr. Stolper, or at least
 5   some of them.
 6            THE COURT:  I will give you until the 18th.
 7            MR. AVENATTI:  Thank you, Your Honor.
 8            THE COURT:  Did you have another housekeeping
 9   matter?
10            MR. AVENATTI:  Those were the only two, Your
11   Honor.  I appreciate it.
12            THE COURT:  Okay.
13            MR. SAGEL:  Just for our edification, does Your
14   Honor have a date specific you want our reply due after the
15   18th?
16            THE COURT:  The 22nd.
17            MR. SAGEL:  Thank you, Your Honor.  Nothing
18   further from the government.
19            THE COURT:  Okay, thank you.
20            MR. AVENATTI:  Thank you, Your Honor.
21            (Whereupon, the proceedings were concluded.)
22                          *   *   *
23
24
25
```

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  October 5, 2021

/s/   Sharon A. Seffens   10/5/21
_____
SHARON A. SEFFENS, U.S. COURT REPORTER