Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994
Email: DeanSteward7777@gmail.com

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>                v.<br><br>MICHAEL JOHN AVENATTI,<br><br>        Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF JOHN DRUM AND REQUEST FOR A DAUBERT HEARING |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, hereby files this reply to the government's opposition to Defendant's Motion *In Limine* to Exclude Expert Testimony of John Drum and Request for a Daubert Hearing. Defendant's reply is based on the attached memorandum of points and authorities; the files, records and transcripts in this case; and argument as the Court may permit at a hearing

Dated:  October 10, 2021

Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

On September 29, 2021, Mr. Avenatti filed a "Notice of Motion and Motion to Exclude Expert Testimony of John Drum and Request for a Daubert Hearing." [Dkt. 833]. On October 6, 2021, the government filed its response. [Dkt. 843]. The crux of the government's opposition is that "nothing has changed" since the Court denied the defendant's prior requests to exclude the government's purported financial expert, John Drum and government exhibits 420 through 450 as well as 456. *See* Dkt. 843, p. 3. In making the claim that *nothing* has changed, the prosecution continues to deny the Court's finding of a *Brady* violation (which it refers to as a minor "discovery issue"), the mid-trial discovery of critical financial data that was suppressed, Mr. Drum's failure to consider an entire data set of costs and expenses incurred by Mr. Avenatti, and the Court's granting of a new trial.

Throughout the trial and beyond, a central theme of the defense has been that Mr. Avenatti was entitled at all times to his attorney's fees, costs, expenses and advances in connection with his legal services for his clients. Government expert John Drum, in forming his analysis, determined that expenses, costs and advances paid by Mr. Avenatti were to be deducted from the ultimate amount owed to each settlement. Now that additional costs, expenses, advances and other exculpatory financial data has come to light, however, the government seeks to ignore the data and shelter it from Mr. Drum in an effort to preserve its prior, outdated and inaccurate financial accounting.

Mr. Avenatti asks that the Court grant his motion and exclude the testimony of John Drum as well as the corresponding summary charts that were introduced during the first trial. The financial analysis of Mr. Drum has proven to be incomplete and Mr. Drum's methodology has been determined to be deeply flawed. He failed to consider even <u>half</u> of the financial data available to the government. His prior testimony and

financial analysis is now replete with errors and fundamentally inaccurate due to his failure to consider <u>any</u> Tabs data, any updated QuickBooks data, as well as other exculpatory financial data. Accordingly, Mr. Drum's analysis and summary charts are not in compliance with Federal Rules 702, 703, 1006 and 403. Mr. Avenatti asks that the Court grant his request for relief.  Alternatively, the defendant requests that the Court hold a *Daubert* hearing in order to determine whether Mr. Drum should be permitted to testify.

## II.    ARGUMENT

### A. The Government's Assertions that Nothing has Changed Since the Court's Prior Rulings is Demonstrably False

Mr. Avenatti has continuously sought the exclusion of purported financial analyst John Drum as well as his corresponding summary exhibits. *See,* e.g., Dkt. 285, 339, 546, 600, 668. The defendant's requests were denied. The prosecution claims that "<u>nothing has changed</u>" since "the Court previously rejected each of defendant's grounds for seeking to exclude Mr. Drum's testimony and his summary exhibits…" [Dkt. 843, p. 3](emphasis added). To say that <u>nothing has changed</u>, is simply false and evidences the government's continued failure to recognize its suppression of extensive, relevant and crucial financial data. The prosecution continues to shelter Mr. Drum from additional, exculpatory evidence in an effort to preserve Mr. Drum's inaccurate accounting.

The government argues that the Court has considered Mr. Drum's analysis in connection with the suppressed materials and ruled that the suppressed Tabs data would go to the weight rather than the admissibility of Mr. Drum's testimony. The government cites the Court's words in a piecemeal fashion and does precisely what it accuses the defense of doing: "attempts to mislead the Court as to its own rulings…" [Dkt. 843, p. 9].

On August 12, 2021, Mr. Avenatti alerted the Court that "in preparing for Mr.

2

Drum's testimony today, it became apparent to me that the government has not produced the Tabs data relating to the costs to the various clients." Trial Tr. (8/12/21, Vol. 1) p. 18. The Court indicated that it would provide the government with an opportunity to respond. On the same day, before the Court had ordered the search of the missing Tabs data, before significant suppressed materials were discovered, and before the granting of a mistrial, the Court discussed the hypothetical missing materials. *See,* Trial Tr. (8/12/21, Vol. 2) pp. 66-68. In doing so, the Court stated, "in my view, that goes to the weight of his evidence. I'm not going to strike – <u>one, we don't have a definitive answer as to the production of the Tabs' data</u>…" Trial Tr. (8/12/21, Vol. 2) p. 67 (emphasis added). The Court declared, "This goes to the weight of his testimony. <u>If you want to explore this further and make any further motions based on what the testimony reveals, you're entitled to do so</u>." Trial Tr. (8/12/21, Vol. 2) p. 68 (emphasis added). When Mr. Avenatti asked for a Daubert hearing to determine whether Mr. Drum had reviewed any of the Tabs data, the Court replied, "Sir, you didn't ask him that. You haven't asked him that yet." Trial Tr. (8/12/21, Vol. 2) p. 66. The Court indicated that it would provide the government with the ability to "follow up on your objections … and take it up tomorrow." Trial Tr. (8/12/21, Vol. 2) p. 68. The next day, the government indicated that the Tabs materials were not "in the prosecution team's possession" and the Court welcomed the defendant to file a motion related to this issue. Trial Tr. (8/13/21, Vol. 1) pp. 16, 22. Two days later, Mr. Avenatti filed the Mistrial Motion that was ultimately granted on this very basis. [Dkt. 706].

Therefore, the government's assertions that the August 12, 2021 hearing acted as a full rejection of the claims argued within the defendant's instant motion is inaccurate and unpersuasive <u>at best</u>.

### B. Mr. Drum's Expert Testimony Should be Excluded by Way of Rule 702

Mr. Avenatti asks that the Court exclude the testimony of Mr. Drum on the basis that his analysis and corresponding summary charts are derived from erroneous or

incomplete data and should be excluded from the trial. Because Mr. Drum's analysis is incomplete and not supported by at least half of the financial data available to the prosecution, it is not in compliance with Rule 702.

First, the government argues that "Defendant has already tried to exclude Mr. Drum's testimony on this very same basis, and the Court properly rejected that argument on the basis that 'that [sic] goes to the weight of his evidence.'" [Dkt. 843, p. 8]; *citing* Trial Tr. (8/12/2021, Vol. 2) p. 67. As established above, this statement made by the Court regarding the expert testimony's admissibility is cited out of context and was made before the Court discovered that the government had extensive financial data in its possession, suppressed it from the defendant for years, and failed to provide it to Mr. Drum. The Court then ordered the government to search for the data, invited briefing from the defendant and later ordered a mistrial as a result.

Second, the government argues that the defendant "appears to be attempting to conflate – misleadingly – what the Court found to be a discovery issue – namely, that defendant was entitled to the Tabs data in order to attempt to challenge Mr. Drum's analysis – with a finding by the Court that the Tabs data actually contradicted Mr. Drum's analysis." [Dkt. 843, p. 8](emphasis in original). The government argues that the Court's statements regarding the defendant's ability to challenge the accuracy of Mr. Drum's testimony was in connection with the Court's finding that defendant "was entitled to make non-winning challenges as well as winning challenges…" [Dkt. 843, p. 9]; *citing* Trial Tr. (8/24/21, Vol. 1) p. 23. The prosecution's claims are inaccurate and an attempt to distract from the legitimate issues contained within the defendant's Motion.

During the mistrial hearing, AUSA Sagel argued that "from a quick review of what was in Tabs for these clients as of the last reports, they support exactly what Mr. Drum testified to." At that point, the Court indicated that even if AUSA Sagel's assertions were correct – they were not - Mr. Avenatti was entitled "to make a challenge under any theory, I think the defendant was entitled to have the data to do that. The point

is he is entitled to that data to make the challenges." Trial Tr. (8/24/21, Vol. 1) p. 23. Within the same line of dialogue, the Court stated, "if that perspective were incorrect because not all of the data was taken into account, <u>wouldn't that potentially provided a basis to question everything Mr. Drum did, to question across the board the accuracy of the government's financial presentation?</u>" Trial Tr. (8/24/21, Vol. 1) p. 23 (emphasis added).

Separate and apart from the Court's statements that the defendant was entitled to pursue non-winning challenges, the Court made the following finding:

> The documents would have been of assistance to the defense in questioning the appropriate amount that Mr. Avenatti drew down for himself … I believe that the data would have been useful in an overall showing that the government's accounting records, the methods of Mr. Drum in particular, weren't accurate. He wasn't accurate in part of his analysis. I think the jury could question the accuracy of his methods and results with respect to other clients."

> Trial Tr. (8/24/21, Vol. 1) p. 60.

Accordingly, any argument that the defendant has sought to mislead the Court is devoid of merit.

<u>Finally</u>, despite constant assertions that Mr. Drum's analysis will remain unchanged by the suppressed data, the government argues "when the government receives, from the Privilege Review Team, a copy of the Tabs data that defendant already has, <u>the government will likely provide the relevant information to Mr. Drum so that he may factor it into his analysis, although the government does not expect it to alter Mr. Drum's analysis for the reasons described in the government's previous filing</u>." [Dkt. 843, p. 9](emphasis added). The government describes the defendant's assertions it would be impossible for the purported expert to perform a meaningful analysis of the suppressed financial data before trial as "**<u>curious</u>**." [Dkt. 843, p. 9, n. 1]. What is truly curious is the prosecution's acts of claiming that a review of the suppressed materials will not be time consuming, will

be easily incorporated by Mr. Drum, and will not change the expert's analysis despite their lack of a review of the relevant materials. How can the government know this if Mr. Drum has not reviewed the materials?

The government continues to ignore the arguments that Mr. Drum's relied solely on incomplete QuickBooks materials and two draft Tabs printouts to form his opinions about the costs, expenses, advances, and legal fees legitimately owed to Mr. Avenatti in connection with his work on the clients' cases. By the government's own concessions, it is clear that Mr. Drum has still not been given access to the relevant financial data and has not performed a thorough review, incorporated the materials, and made the necessary changes to the summary charts. As a result, Mr. Drum's expert testimony and government exhibits 420 through 450 and 456 must be excluded from any subsequent trial.

For these reasons, Mr. Avenatti asks that the Court exclude Mr. Drum's testimony as it fails to rely on sufficient facts and data in violation of Rule 702.

**C. Mr. Drum's Expert Testimony Should be Excluded by Way of Rule 703**

Mr. Avenatti asks that the Court exclude the expert testimony of John Drum on the basis that his testimony is violative of Rule 703. Rule 703 requires that "[t]he expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019)(quoting Fed. R. Evid. 703; citing *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830-21 (9th Cir. 2001); *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998).

During the first trial, the government undermined the Federal Rules of Evidence by presenting the testimony of  Mr. Drum regarding statements contained in inadmissible bank records. Mr. Drum had no personal knowledge of the statements contained and transactions described within the records. However, the vast majority of his testimony, as previously conceded by the government was for the purpose of laying the foundation of the Rule 1006 summary exhibits. The government's previous filing supports this theory, "the vast majority (if not all) of Mr. Drum's proposed testimony, involves foundation for

and explanation of Rule 1006 summary exhibits…" [Dkt. 299, p. 7](emphasis added).

Because Mr. Drum has no personal knowledge of the relevant bank records or the transactions contained therein, his testimony laying the foundation for the Rule 1006 summary exhibits is inappropriate and not in compliance with the Federal Rules of Evidence. It is not the role of the expert to lay the foundation for bank records and it does not require specialized knowing, training or skill to do so.

For these reasons, Mr. Avenatti asks that the Court exclude Mr. Drum's testimony as it is violative of Rule 703.

**D. Mr. Drum's Summary Charts are Violative of Rule 1006**

Mr. Avenatti again asks that the Court find that government exhibits 420 through 450 should be excluded as violative of Federal Rule of Evidence 1006. Other than blanket assertions that the exhibits have previously been found to be in compliance with Rule 1006, the prosecution does not address the specific arguments addressed by the defendant. The summaries created by Mr. Drum and introduced during the first trial are violative of Rule 1006.

First, as stated previously, the government has failed to identify each record that underlies the summaries it seeks to introduce at trial. The government should not be permitted to point to blanket categories of materials such as "QuickBooks" and "Ayres" and indicate that the notice requirement of Rule 1006 is satisfied.

Second, during the first trial, the government committed evidentiary error by failing to proffer the admissibility of each of the records underling the summary charts. Although the Court did find that several of the records underlying the exhibits were independently admissible by way of the business records exception, several of the records were not independently introduced as evidence throughout the trial and no effort was made to proffer the business records' admissibility. For instance, a thorough analysis of many of the records underlying the purported Rule 1006 summaries establishes that bank records and corresponding declarations are not in compliance with the Federal Rules of Evidence 803(6) and 902(11).

7

<u>Finally</u>, in its reply, the government alludes that once the government obtains the relevant data, "the government will likely provide the relevant information to Mr. Drum so that he may factor it into his analysis…" [Dkt. 842]. As a result, it is reasonably foreseeable that the summary charts will be based on new materials and will have substantive changes. The government has yet to provide the defense with notice of any changes in the financial charts and modifications of Mr. Drum's projected testimony. Rule 1006 "and clear Ninth Circuit precedent require the government to provide a defendant its summary evidence, and the material that evidence purports to summarize, *in advance of trial*. Failure to do so is grounds for exclusion." *United States v. Pac. Gas & Elec. Co.*, 2016 U.S. Dist. LEXIS 92358, at *4 (N.D. Cal. 2016); *citing Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1516 (9th Cir. 1985)(affirming the district court's exclusion of summaries because the proffering party failed to make the summaries and underlying documents available until just before trial).

For these reasons, Mr. Avenatti asks that the Court exclude the summary charts created by Mr. Drum as they fail to comply with Rule 1006.

**E. Mr. Drum's Testimony and Summary Charts are Violative of Rule 403**

Mr. Avenatti asks that the Court exclude the expert testimony of John Drum as well as the summary charts as both the testimony and exhibits are violative of Rule 403. Pursuant to Rule 403, the Court may exclude relevant evidence if its "probative value is substantially outweighed by a danger of … <u>unfair prejudice</u>, confusing the issues, <u>misleading the jury</u>, undue delay, wasting time, <u>or</u> needlessly presenting cumulative evidence." (emphasis added). Federal Rule of Evidence confers "broad discretion on the trial judge to exclude evidence on any grounds specified in [Rule 403]." *United States v. Hearst*, 563 F.2d 1331 (9th Cir. 1977). Expert testimony is "subject to Rule 403" and the district court should determine whether "Rule 403 requires the exclusion of relevant evidence…" *United States v. Cruikshank*, 2006 U.S. Dist. LEXIS 103224, at *17-19 (C.D. Cal. 2006)(excluding the expert testimony because the gaps in her analysis posed

8

"a substantial risk of unfair prejudice, confusion of the issues, and misleading the jury.");
*See also, United States v. Benavidez-Benavidez*, 217 F.3d 720 (9th Cir. 2000)(the exclusion of an expert opinion as violative of Rule 403 was a sufficient basis and not an abuse of discretion); *United States v. Ramirez-Robles*, 386 F.3d 1243, 1246 (9th Cir. 2004)("Rule 403 and *Daubert* address different aspects of evidence and therefore act independently"); *United States v. Pritchard*, 993 F.Supp. 1203, 1213 (9th Cir. 2014)("The court must 'take seriously the Court's admonition in *Daubert* that scientific evidence must withstand close scrutiny under Rule 403.'" (internal citations omitted)).

As established, Mr. Drum's analysis is inherently flawed as it fails to take into consideration at least <u>half</u> of the financial data available to the government. Mr. Drum's accounting firm has not considered all of the costs, expenses, advances, and fees <u>legitimately owed</u> to Mr. Avenatti. This incomplete financial analysis has little probative value as a result of these deficiencies and the failures to properly summarize the financial records and data held within both Mr. Avenatti's bank accounts as well as the accounting programs contained with the EA servers. However, because of the government's extensive reliance on these charts and Mr. Drum's role as the only expert in this case, it is likely that jurors will give undue weight to both Mr. Drum's testimony as well as the charts. Jurors will be extremely confused, misled and undue prejudice will ensue as a result of the government's incomplete presentation of evidence. Even if Mr. Avenatti were to cross-examine Mr. Drum on his methodology and the lack of complete, financial data encompassed within his calculations, the exhibits and the expert testimony will be given undue weight to the defendant's detriment.

As a result, Mr. Avenatti has made a showing that the little probative value contained within Mr. Drum's testimony and crafted exhibits is substantially outweighed by the danger of undue prejudice, confusion of the issues and misleading the jurors. Accordingly, Mr. Drum's testimony as well as government exhibits 420 through 450 and 456 must be excluded from any subsequent trial.

## III.    CONCLUSION

Based on the foregoing, Mr. Avenatti asks that the Court grant his motion. Alternatively, Mr. Avenatti asks that the Court hold a *Daubert* hearing on these issues ahead of trial.


Dated:  October 10, 2021                    Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

## **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on October 10, 2021 service of the:

DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF
JOHN DRUM AND REQUEST FOR A DAUBERT HEARING

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 10, 2021

/s/ H. Dean Steward

H. Dean Steward