Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994
Email: DeanSteward7777@gmail.com

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S MOTION FOR AN ORDER TO SHOW CAUSE RE CIVIL CONTEMPT AND FINDING OF CONTEMPT; AND MOTION TO COMPEL DISCOVERY<br><br>[[Proposed] Order and Declaration of Michael John Avenatti (with Exhibits) filed concurrently herewith] |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, hereby moves for and files his Motion For An Order To Show Cause Re Civil Contempt as to why the government should not be held in civil contempt for their failure to comply with the Court's January 25, 2021 Order [Dkt. 408], followed by a finding of contempt; and Motion to Compel Discovery. Defendant's motion is based on the attached memorandum of points and authorities; the accompanying declaration; the files, records and transcripts in this case; the reply to be

filed by the defendant in response to the government's opposition; and such further

evidence and argument as the Court may permit at a hearing on this matter.

Dated:  October 11, 2021                    Respectfully submitted,

                                            /s/ Michael J. Avenatti

                                            Defendant
                                            MICHAEL JOHN AVENATTI

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

I.     INTRODUCTION ................................................................. 1

II.    FACTUAL HISTORY ............................................................ 2

A. Defendant's Well-Documented Pretrial Discovery Demands ............ 2

B. The Government's Suppression is Exposed During Trial ................. 10

C. The Court Grants a Mistrial Due to the
   Government's *Brady* Violation ......................................... 14

D. The Government's Continued Failures to Produce Discovery
   After the Court's Mistrial Ruling Despite Numerous Demands ........ 15

E. The Specific Materials the Prosecution Continues to Suppress ........ 18

III.   LEGAL STANDARD ........................................................... 19

IV.    ARGUMENT .................................................................... 21

V.     CONCLUSION .................................................................. 25

CERTIFICATE OF SERVICE ................................................... Attached

# **TABLE OF AUTHORITIES**

**Cases:**                                                                          **Page**

*Brady v. Maryland,*
373 U.S. 83 (1963)..................................................................................... *passim*

*Donovan v. Mazzola,*
716 F.2d 1226 (9th Cir. 1983) .............................................................20, 21

*FTC v. Affordable Media, LLC,*
179 F.3d 1228 (9th Cir. 1999) ....................................................................20

*Goldberg v. United States,*
425 U.S. 94 (1976)................................................................................14, 22

*Giglio v. United States,*
405 U.S. 150 (1971) .................................................................................. *passim*

*In Re Crystal Palace Gambling Hall, Inc.,*
817 F.2d 1361 (9th Cir. 1987) ....................................................................20

*Int'l Union v. Bagwell,*
512 U.S. 821 (1994)......................................................................................20

*Jim Walter Resources, Inc. v. International Union,*
609 F.2d 165 (5th Cir. 1980) .......................................................................20

*Kyles v. Whitley,*
514 U.S. 419 (1995)......................................................................................23

*Lambert v. Montana,*
545 F.2d 87 (9th Cir. 1976) ........................................................................19

*McComb v. Jacksonville Paper Co.,*
336 U.S. 187 (1949)......................................................................................20

ii

*Penfield Co. of Cal. v. SEC*,

330 U.S. 585 (1947)...................................................................................20

*Perry v. O'Donnell*,

759 F.2d 702(9th Cir. 1985) ....................................................................21

*Schillitani v. United States*,

384 U.S. 364 (1966)...................................................................................20

*United States v. Bruce*,

984 F.3d 884 (9th Cir. 2021) .....................................................................22

*United States v. Bundy,*

968 F.3d 1019 (9th Cir. 2020) ...............................................................8, 22

*United States v. Grace*,

968 F.Supp.2d 1069 (D. Mont. 2005).......................................................23

*United States v. Grace*,

526 F.3d 499 (9th Cir. 2008) .....................................................................19

*United States v. Price*,

566 F.3d 900 (9th Cir. 2009) .................................................................8, 22

*United States v. Talbot*,

51 F.3d 183 (9th Cir. 1995) .......................................................................19

*United States v. Rylander*,

460 U.S. 752 (1983)...................................................................................20

*United States v. Soong*,

2015 U.S. Dist. LEXIS 118585 (N.D. Cal. 2015) ....................................19

*United States v. United Mine Workers*,

330 U.S. 258 (1947)...................................................................................20

**<u>STATUTE</u>**

18 U.S.C. § 3500.............................................................................. *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On August 24, 2021, after approximately six weeks of trial, this Court found that the government had committed a significant *Brady* violation that prejudiced the defendant and required a mistrial.  Hundreds of hours of work and hundreds of thousands of dollars were lost, not to mention the emotional toll incurred by many, all because the government failed for over two years to do what the law required them to do and what the defendant had repeatedly begged them to do – simply give the defendant the discovery he is entitled to so he can present his defense.[1]

One would have thought that this would have resulted in significant embarrassment and action by the United States Attorney's Office for the Central District and its leadership. One would have also thought that a new attitude and approach would be taken in this case, one centered on cooperation and defendant being provided everything he is entitled to so as to ensure defendant's rights are protected, another mistrial does not occur and justice is done.  Unfortunately and incredibly, this has not occurred in the six weeks since the mistrial was declared. The government has learned nothing from this Court's August 24 ruling and the Court's statements on the record, choosing instead to ignore what happened. Indeed, as shown below, the government has continued its pattern of obstruction, noncooperation and discovery violations with abandon.  In doing so, they continue to violate this Court's January 25, 2021 Order [Dkt. 408], as well as the clear directives of *Brady*, *Giglio*, the *Jencks* Act, *Bundy*, *Price*, *Olsen*

---

[1]  The government continues to suggest, if not outright claim, that the *Brady* violation was not their fault.  This is meritless. There is no such thing as a *Brady* violation that is not the fault of the government. A *Brady* violation, whether inadvertent or purposeful, can only result from government misfeasance and/or malfeasance. Either way, the government, and the government alone, is responsible. To put it another way, if there is a *Brady* violation, then it is axiomatic that the government failed to adhere to its obligations under the law and adequately protect a defendant's fundamental Constitutional rights.

and Rule 16.

For each of the reasons set forth herein, the government should be held in contempt and directed to immediately produce the information requested by the defendant, and all other required discovery, within 72 hours of the Court's Order. The Court should also require each member of the prosecution and investigative teams to declare in writing, under penalty of perjury, that <u>all</u> information and materials required to be produced under this Court's Order [Dkt. 408], *Brady*, *Giglio*, the *Jencks* Act, *Bundy*, *Price*, *Olsen*, and/or Rule 16 have been produced to the defendant.

## II.    FACTUAL HISTORY

### A. Defendant's Well-Documented Pretrial Discovery Demands

For over two years leading to trial, Mr. Avenatti repeatedly requested that the government comply with its discovery obligations, including its *Brady* obligations. Indeed, the requests are legion. Some, but not all, are summarized as follows:

On March 25, 2019 at approximately 9:00 a.m. PST, Mr. Avenatti was arrested pursuant to a criminal complaint and arrest warrant. [Dkt. 1, 13]. On April 3, 2019, the government obtained a forensic copy of the EA computer servers. On April 10, 2019, defendant was purportedly charged with the 36 counts by way of an indictment, which was docketed on the morning of April 11, 2019 [Dkt. 16].

On May 15, 2019, defendant's counsel sent the government a letter demanding that the government comply with its obligations under Rule 16 as well as *Brady* and *Giglio*. *See* Exhibit A.[2] Mr. Steward specifically requested *Brady* information by clearly stating, "I request all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case." *Id.* One week later, on May 22, 2019, having not received any of the materials requested, Mr. Steward sent another letter to the government. *See* Exhibit

---

[2] All references herein to "Exhibit" refer to the exhibits attached to the concurrently filed Declaration of Michael John Avenatti.

B. In the letter, defense counsel described the prejudice to the defense caused by the government continuing to withhold discovery. *Id.* On June 25, 2019, defense counsel sent AUSA Andre and AUSA Sagel another letter itemizing the government's failures to produce discovery. *See* Exhibit C. Counsel made clear to the government that the information was critical to the defense: "As you know, the government has charged my client with multiple counts relating to numerous client matters in which he served as counsel. Despite this fact, *you continue to fail to provide us the discovery relating to these matters necessary for him to defend himself*."

On July 1, 2019, in anticipation of a status conference, the parties submitted a joint report to the Court. [Dkt. 44]. Within this report, the defendant challenged the inadequacies of the government's discovery productions, "[t]he government's production to date has been woefully inadequate … the information produced to date is far less than five percent (5%) of what is required. . . . [T]he government now refuses to produce millions of pages of documents and huge amounts of electronic data (likely well over 20 terabytes) that Defendant needs to defend himself-including potentially *Brady* and *Giglio* material." [Dkt. 44, p. 8]. Mr. Avenatti also specifically delineated some of the information that the government had failed to produce: (a) defendant's correspondence and emails with clients referenced in the Indictment; (b) defendant's client files; (c) defendant's accounting, tax and costs records; (d) defendant's time records; (e) defendant's settlement communications and documentation; (f) defendant's emails relating to the charges in the indictment; and, (g) defendant's emails with his tax professionals. [Dkt. 44, p. 6 (emphasis added)].

Having received no response or information in response to his June 25 letter, the defendant filed a "Motion to Compel Discovery" on July 28, 2019. [Dkt. 50]. On August 29, 2019, the Court denied Mr. Avenatti's Motion to Compel and addressed the categories of information sought by the defendant. [Dkt. 63, p. 3]. Relying on representations made to the Court by the government and the government's presumed good faith, the Court found that "[t]o the extent that these categories relate [sic] the

3

specifics in the Indictment, the Government has or is in the process of producing the materials." [Dkt. 63, p. 3](emphasis added). The Court added, "the Government has acknowledged its obligation to produce all documents within the scope of the search warrants as well as its *Brady* and *Giglio* obligations." [Dkt. 63, p. 3]

On May 27, 2020, defendant filed a status report wherein he continued to seek the fulfillment of the prosecution's discovery obligations and requested access to the EA, LLP servers, arguing that they contained "critical records detailing costs and expenses on cases involving the alleged victims, as well as hours spent on the matters…" [Dkt. 164, p. 10]. On May 30, 2020, the government opposed the effort and filed a response to Mr. Avenatti's status report wherein the government stated, "Defendant's claim that he still has not received 'critical records detailing costs and expenses on cases involving the alleged victims' is demonstrably false." [Dkt. 168, p. 12 (citations omitted)]. On June 8, 2020, another status conference was held with the Court. During this hearing, AUSA Sagel represented to the Court that "anything that would have been relevant in our case and within the scope of the warrant should have been and likely was found and produced to the defendant." *See* Dkt. 182, p. 6. On June 15, 2020, Mr. Avenatti alerted the Court that he needed access to materials held within the EA LLP servers so that he could access "cost and fee information and documentation for the cases involving the alleged victims – i.e. what costs for experts, staff personnel and other reasonable expenses were recorded and net settlements." [Dkt. 193, p. 2]. The government submitted its reply brief on June 22, 2020 and argued to the Court that the cost and fee information for the cases involving defendant's alleged victims "have been produced in multiple ways." [Dkt. 195, p. 22]. Based on this representation, which the government knew was false when it was made, the Court denied Mr. Avenatti access to the servers. *See* Dkt. 199. On August 31, 2020, an additional status conference was held, before which the Court specifically alerted the parties it wished to discuss the status of outstanding discovery. During this status conference, AUSA Andre represented to the Court and the defense: **"The**

**defendant [] has all the discovery as to all the charges at this point."** [Dkt. 289, p. 3-4](emphasis added).

Mr. Avenatti continued to seek access to discovery to which he was entitled in early 2021 as he prepared for trial. Mr. Avenatti demanded that the government comply with its discovery obligations and motioned the Court repeatedly to hold the prosecution accountable for their conduct. For instance, on January 18, 2021, the defendant filed a Motion for an Order Requiring the Government's Prompt Compliance with the Due Process Protections Act and Advising the Government of the Consequences for Failing to Comply. [Dkt. 398]. On January 20, 2021, the government filed a response and falsely reassured the Court again that it had complied with its discovery obligations: "There is likewise no merit to defendant's suggestion that the government has failed to comply with its discovery obligations. The government is aware of its discovery obligations, including under <u>Brady</u> and its progeny, has complied with its discovery obligations, and will continue to do so as it prepares for trial." [Dkt. 405, p. 5](internal citations omitted).

On January 25, 2021, the Court granted the defendant's motion:

> "…the Court Orders the government to produce to the defendant in a timely manner all information or evidence known to the government that is either: (1) relevant to the defendant's guilt or punishment; or (2) favorable to the defendant on the issue of guilt or punishment.
> …
> The consequences for violating either this Order or the government's obligations under *Brady* include, but are not limited to, the following: contempt, sanction, referral to a disciplinary authority, adverse jury instruction, exclusion of evidence, and dismissal of charges."

[Dkt. 408 pp. 1-2].

On February 17, 2021, disturbed by the lack of attention to *Brady* and the Court's Order exhibited by AUSAs Sagel and Andre, defense counsel sent a demand letter to the <u>Chief of the Criminal Division of the Central District, Mr. Brandon Fox</u>, and copying AUSAs Sagel and Andre, requesting that the government immediately and fully comply

with their discovery requirements. In the letter, counsel explained that the government was continuing to fail to adhere to its discovery obligations, stating, "The government's failure to comply with the Order is even more egregious seeing as much of this information should have been produced long ago pursuant to *Brady* and/or Rule 16." *See* Exhibit D. Mr. Fox did not respond. Instead, AUSA Sagel responded on March 1, 2021, writing:

> As we have previously represented to you, the government is aware of its discovery obligations, **has complied with them**, and will continue to do so. In addition to providing your client with discovery to which he is entitled, we have produced discovery far in advance of our obligations – for example, we provided nearly all Jencks material in May and June 2019, over two years before the current trial date – and we have voluntarily produced a significant amount of materials in excess of our discovery obligations. The government acknowledges the utmost importance of fulfilling its discovery obligations in every case, particularly as to *Brady* material; however, neither Federal Rule of Criminal Procedure 5(f) nor the Court's January 25, 2021, Order (CR 408) expands the government's discovery obligations. <u>Your repeated accusations that the government has withheld discovery material are baseless.</u>" *See,* Exhibit E. (emphasis added).

Weeks later, after having not received the requested discovery, the defendant filed a Motion for an Order to Show Cause re Civil Contempt and a Finding of Contempt on March 8, 2021. [Dkt. 415]. The Court subsequently denied the defendant's motion on March 30, 2021 without a hearing based on the government's assurances that everything had been produced [Dkt. 431].

Defendant, however, continued to press for the information and alert the Court to the government's discovery failures. On April 6, 2021, the parties submitted a joint report in anticipation of an April 7, 2021 status conference. [Dkt. 433]. Mr. Avenatti stated: "Defendant has been hampered by the government's failure to produce materials and information as required…" by *Brady, Bundy, Price, Olsen,* Rule 16, and the Court's January 25, 2021 Order. [Dkt. 433, p. 7]. Within the joint report, Mr. Avenatti requested

that the Court orally direct the government as required under the Due Process Protections Act. [Dkt. 433, p. 20-21]. Mr. Avenatti also sought a continuance and specifically predicted, "Unfortunately the defense anticipates significant issues emerging immediately before trial and at trial relating to the government's failure to timely produce information and materials favorable to the defense as required under *Brady v. Maryland* and its progeny, including *Bundy, Price,* and *Olsen*. As a result, and in order to ensure there is no ambiguity, the defendant requests that the Court, at the status conference and pursuant to the General Order (21-02), (b) require each representative of the government in this case to acknowledge of the record, the admonitions and warnings required by the General Order, and (c) direct that the docket in this case include an entry reflecting the admonitions and warnings issued to the government and their acknowledgements." [Dkt. 433, p. 20-21 (emphasis added)]. The government indicated it would respond during the relevant status conference but did not pass up the opportunity to mock the defendant's repeated claims that the government was withholding information (which turned out to be accurate): "[C]learly defendant has not appreciated the Court's pronouncement: 'While the Court does not subscribe to the view that repetition creates truth, others may wonder.'" [Dkt. 433, p. 21]

On April 7, 2021, the status conference was held with the Court. In connection with Mr. Avenatti's request for a continuance as a result of the government's discovery failures, the Court stated, "I think the government has satisfied its discovery obligations. I see no reason to continue on that basis." *See, e.g.,* [Dkt. 436], Tr. 4/13/21, p. 12. The Court also denied the defendant's request to issue an oral order pursuant to Rule 5(f): "[F]inally you request that the Court direct the government basically to comply with its Rule 5(f) obligations. I issued the order earlier in the year. There is nothing more to say. I think the government clearly understands from Rule 5(f) and the Court's issuance of the specific Rule 5(f) order what its obligations are." *Id.*

By way of a letter on April 8, 2021, defense counsel sent AUSAs Sagel and Alex Wyman a letter again requesting compliance with *Brady*, *Bundy*, *Price*, *Olsen*, Rule 16

7

and the Court's January 25, 2021 Order. *See* Exhibit F. The letter demanded compliance and included the following under the heading "Information and Materials the Government Has Failed to Produce:"   "The government has not complied with its obligations under Brady, Bundy, Price, Olsen, Rule 16, the Court's Order, the RPC, and the Justice Manual. These failures are significant and must be rectified immediately." *See id*.

On April 14, 2021, the government sent an email in response, but failed to address the specific requests set forth in the letter. The government represented, "we have attempted – and will continue to attempt – to get you discoverable material well in advance of any of our deadlines." *See* Exhibit G. The following day, the defendant immediately responded and reminded the government, "it is the government's obligation to produce to the defense all information and materials required to be produced pursuant to the Court's January 25, 2021 Order… *Brady, Bundy, Price, Olsen*, Rule 16, and the California Rules of Professional Conduct. 'All' means 'all.'" *See* Exhibit H. The government ultimately responded to the April 8, 2021 letter, "[a]s we have repeatedly represented to you, the government is aware of its discovery obligations, has complied with them, and will continue to do so." *See* Exhibit I.

On May 7, 2021, the defendant moved to continue the trial from July 13, 2021 to August 31, 2021. Counsel again alerted the Court, "Due to the discovery I have reviewed, I have concluded that the government still has not produced all discovery required to be produced to the defense pursuant to *Brady v. Maryland*, 363 U.S. 83 (1963), *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020), *United States v. Price*, 566 F.3d 900 (9th Cir. 2009), *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013), and this Court's Order issued on January 25, 2021, which directed the government to produce to the defense 'all information or evidence known to the government that is either: (1) relevant to the defendant's guilt or punishment; or (2) favorable to the defendant on the issue of guilt or punishment.'" [Dkt. 447, pp. 3-4].

On May 10, 2021, the government filed an opposition to the defendant's request for a continuance:

> "[D]efendant's *baseless accusations of discovery misconduct* – by now a familiar refrain – *are (once again) completely unfounded* and have already been rejected by this Court. Defendant does not identify any actual discoverable material that he claims to be missing, instead claiming without support that there must be <u>Brady</u> material in the agent notes of a victim interview… *Once again, defendant complains about exculpatory evidence that he does not have because it simply does not exist.*" [Dkt. 449, p. 8].

The continuance request was subsequently denied.

The defendant yet again raised concerns relating to the failure of the government to produce *Brady* information in his final pretrial status report filed on June 25, 2021. [Dkt. 511]. Therein, defendant stated, "The government has not produced information and documents to the defense that constitute *Brady* material. Included among the materials the government has not produced are … financial information relating to the accounting applicable to the client matters at issue in counts 1-10." [Dkt. 511, p. 8]. **In fact, he issued the following warning, which unfortunately turned out to be accurate: "<u>If these issues are not addressed in detail now, before trial, they will emerge in to middle of trial or immediately post-trial and create a host of problems (not to mention a possible mistrial).</u> The defense respectfully urges the Court to address and resolve these issues now as opposed to waiting." [Dkt. 511, p. 9](emphasis added).**

On June 28, 2021, a final pretrial status conference was held wherein the Court asked AUSA Sagel if he wished to respond to the defendant's issues with regard to discovery. In response, AUSA Sagel stated:

> Mr. Steward has been a criminal defense attorney for a lot of years. There are many cases I have had with him. Somehow he has lost any idea of what Brady is. He doesn't know what Jencks is. He keeps asking for things that (a) he has had for two years and (b) demanding things that he is not entitled to.

> The government has complied with its discovery obligations for two years in advance in most cases. We have and will continue to do so. There is nothing more he is entitled to that he doesn't have and anytime we get anything new, we provide it to him. We get e-mails almost daily asking for something

nonsensical. Usually and typically we try and reply every time. Mostly, it's what – by now we have complied, and we will continue to comply. That is our response. *See, e.g.,* Tr. 7/28/21, p. 40, Dkt. 523.

On July 12, 2021, in his Trial Memorandum, defendant again expressed concern regarding the government's discovery deficiencies: "Mr. Avenatti continues to object to the government's deficient discovery disclosures. Mr. Avenatti again requests that the government provide assurances that it has complied with its discovery obligations." [Dkt. 535, pp. 26-27]. Despite this, the government continued to suppress information.

## B. The Government's Suppression Is Exposed During Trial

During trial, it was revealed that the government suppressed materials related not only to the financial data of EA, LLP but also *Jencks* statements and *Brady* materials the government had in its possession for years. Prior to trial, and throughout the trial, Mr. Avenatti had made repeated demands for the government to comply with its obligations under the *Jencks* Act and Rule 26.2. [Dkt. 511 (Defendant's Status Report for June 28, 2021 Status Conference), Dkt. 535 (Defendant's Trial Brief), Dkt. 561 (Trial Motion for Disclosure of Jencks Act / 26.2 Materials)]. Indeed, early in the trial, in response to Mr. Avenatti again raising the issue, the Court instructed Mr. Avenatti: "The Government's under an ongoing obligation with respect to each witness to provide any *Jencks* material that has not been provided by the time the witness finishes his direct. There's no need to make that request every time, Mr. Avenatti." Trial Tr. (7/21/21, Vol. 2) p. 5. Similar to the government's representations that it was aware of its obligations under *Brady*, the prosecution repeatedly represented to the Court and to the defendant that it was aware of its obligations under Rule 26.2 and Jencks. In fact, AUSA Sagel routinely ridiculed the defendant and claimed he did not know the law. *See, e.g.,* Trial Tr. (7/22/21, Vol 2) p. 53 ("Maybe it might behoove the defendant to talk to his advisory counsel or figure out himself what Jencks is … I think that might save us from these sidebars, because he does not know what Jencks is."). As the trial proceeded, however, defendant's knowledge of *Jencks* and Rule 26.2, together with his beliefs that the government were ignoring their

basic discovery obligations, were proven accurate on multiple occasions.

On August 2, 2021, the defendant filed a "Motion for Mistrial or in the Alternative to Strike the Testimony of Nine Government Witnesses due to the Violations of the Jencks Act and Rule 26.2." [Dkt. 629]. This motion was made in connection with government witnesses Joseph Varani, Nshan Taschyan, Judy Regnier, Patrick McNicholas, Thomas Hurrell, Geoffrey Johnson, Thomas Goeders, Carlos Colorado, and Joel Weiner.  Testimony was elicited from these witnesses that established that materials required to be produced to the defendant before cross-examination began were withheld in violation of *Jencks* and Rule 26.2. Mr. Avenatti argued that e-mail correspondence, text messages, and other written communications relating to the subject matter of the witness testimony were improperly withheld and the government impermissibly suppressed handwritten notes that should have also been produced.

On August 6, 2021, the Court heard the motion and denied the motion as to six government witnesses but reserved its ruling related to Judy Regnier, Joseph Varani and Nshan Taschyan. In response to the defendant's arguments, the Court ordered the government to perform a search of any and all correspondence related to the subject matter of Joseph Varani and Nshan Taschyan's testimony to determine what materials had not been provided to Mr. Avenatti in violation of Rule 26.2 and *Jencks*. After listening to oral argument and the testimony of Ms. Regnier indicating that she may have had text message correspondence with SA Karlous, which Mr. Avenatti never received, the Court ordered SA Karlous to submit an under seal declaration outlining his text message communications with Ms. Regnier.

On August 8, 2021, SA Karlous submitted a declaration stating that he did not have any independent knowledge or memory of receiving any text messages from Ms. Regnier. However, SA Karlous also indicated that he no longer has access to cell phones he used during that investigation. Accordingly, there is no way to confirm the accuracy of these statements. In connection with the government's communications with Joseph Varani and Nshan Taschyan, a new trial was declared prior to the Court providing the

defendant with its ruling regarding whether or not the statements should have been produced pursuant to *Jencks* and Rule 26.2.

On August 12, 2021 and in connection with the testimony of the government's financial expert, Mr. John Drum,[3] Mr. Avenatti again raised the issue of the missing discovery with the Court:  "[I]n preparing for Mr. Drum's testimony today, it became apparent to me that the government has not produced the Tabs data relating to the costs to the various clients. That is a serious Brady and Giglio violation. It's been in their possession for two and a half years….We don't have the Tabs data." *See, e.g.,* Trial Tr. (8/12/2021, Vol. 1) p. 18.  The government continued to suppress the information.

On August 14, 2021, the defendant filed another Motion for Mistrial or, In the Alternative, to Strike the Testimony of Robert Amenta and John Drum due to Violations of the Jencks Act, Rule 26.2, *Brady* and *Giglio*. This motion was based upon the <u>confirmed and admitted</u> failures of the government to meet their discovery obligations with both Robert Amenta and John Drum. [Dkt. 705]. It was made after Mr. Avenatti elicited testimony from Mr. Amenta and Mr. Drum that the government had engaged in substantive communications with each witness regarding the subject matter of the witness's testimony that were not produced to the defense as required.  For instance, government witness and Deputy Chief Investigator Robert Amenta from the Federal Reserve Bank of New York revealed that he had three meetings with the government and also had e-mail communications with the government leading up to trial. Trial Tr. (8/12/21, Vol. 2), p. 42-43. He indicated that the e-mail communications related to the subject matter of his testimony. Trial Tr. (8/12/21, Vol. 2), p. 43. In response, on August 12, 2021, the prosecution submitted, "Government's Filing Regarding Email Communications with Robert Amenta," wherein it admitted it failure to produce *Jencks*. [Dkt. 690]. Worse yet, the government indicated in its filing that it used the following

---

[3] As of the time of his trial testimony, Mr. Drum and his company had been paid well over $600,000 by the government for their financial analysis.

procedure in order to identify *Jencks* statements: "Prior to Mr. Amenta taking the stand, government counsel conducted a search of government counsel's emails from Mr. Amenta to identify any discoverable emails, and determined that all emails received from Mr. Amenta were logistical in nature and did not relate to the substance of his expected testimony." [Dkt. 690, p. 4]. Because the government "believed that at least one Assistant United States Attorney (AUSA Wyman) was copied on all correspondence with Mr. Amenta," the government only searched through the e-mail accounts of the Assistant United States Attorneys to identify statements by its witness. [Dkt. 690, 4].

The final government witness, Mr. Drum, acting within his capacity as a forensic accountant, was the only government expert to testify in this case. *See, e.g.,* Trial Tr. (8/12/2021, Vol. 2) p. 49. During the cross-examination of Mr. Drum, it became apparent that the government failed to abide by its discovery obligations under *Jencks, Brady, Giglio* and Rule 26.2. Relying on the work-product privilege, the government indicated, "To the extent he had substantive conversations relating to his testimony, it's covered by the work product privilege." Trial Tr. (8/13/21, Vol. 1) p. 119-120. Mr. Avenatti asked that "the Court direct the witness, Mr. Drum, to provide to the Court all written communications with the Government, whether it be the prosecutors or the agents, relating to his testimony in this case. Because, Your Honor, the witness could not have been more clear, for two-and-a-half years he has been communicating by e-mail with the Government relating to this case." Trial Tr. (8/13/21, Vol. 2) p. 6.

After a lunch break and having an opportunity to review the suppressed materials, AUSA Wyman responded, "I haven't had a chance [sic] research the issue. My understanding with an expert is that substantive work product like the exchange of drafts, for example, falls within the work product exception. But with regard to substantive e-mails, what we were able to find was **virtually nothing**,[4] and the stuff that

---

[4] This statement unfortunately proved to be **untrue and a blatant misrepresentation to the Court.** The communications ultimately provided to Mr. Avenatti establish that on August 13, 2021, during the lunch break (between 12:53-12:54 p.m.) and with Mr. Drum

we had found was like -- you know, I was asking for the extent of their payment and the breakdown of what that payment was for, and we had copied and pasted that and put that into a disclosure letter to the defense."[5] Trial Tr. (8/13/21, Vol. 2) p. 5 (emphasis added). The government was ordered to provide the undisclosed materials in-camera. On August 15, 2021, the government filed an in-camera filing in connection with the undisclosed Drum materials. This filing consisted of 389 pages. Unbeknownst to Mr. Avenatti and without any notice to the defendant or his advisory counsel, the Court held an in-person in-camera hearing with AUSAs Sagel and Wyman on August 16, 2021 at 2:03 p.m. On August 16, 2021, at 2:21 p.m., AUSA Wyman e-mailed advisory counsel, alerting the defendant, "Per the Court's order this afternoon, please see attached our in camera filing from this weekend. The Court has directed us to file this under seal, which we will be doing shortly, and provide a copy to defendant."  This filing consisted of 389 pages. Based on the content of the 389 pages and Mr. Drum's testimony, it is clear that Mr. Avenatti has still not been provided all the materials that are required to be produced pursuant to the government's discovery obligations under *Jencks*, the Jencks Act, *Brady*, *Giglio*, *Bundy*, *Price,* Rule 16 and this Court's January 2021 Order [Dkt. 408].

### C. The Court Grants a Mistrial Due to the Government's *Brady* Violation

After trial testimony established that Tabs data was withheld from the defendant, the Court held a hearing on the matter on Friday, August 20, 2021 [Dkt. 749.] At the conclusion of the hearing, the Court ordered the Privilege Review Team ("PRT") to

---

on the stand, AUSA Sagel forwarded AUSA Wyman three e-mail strings and an attachment consisting of 26 pages of documents highly relevant to and related to the subject matter of government expert John Drum's testimony. These emails contained both Jencks and Brady/Giglio materials. Thirty-six (36) minutes after receiving this e-mail, AUSA Wyman came before the Court and told the Court and all parties that he was able to find "virtually nothing."

[5] The defendant subsequently explained that the government's reliance on the work product doctrine to suppress the information lacked all merit because the Supreme Court had found over 40 years prior, in *Goldberg v. United States*, 425 U.S. 94 (1976), that the work product doctrine had no applicability.  *See* Dkt. 705 pp. 13-14.

cooperate with the defense over the weekend to search for the financial information on the servers. During the late afternoon of Monday, August 23, 2021, defendant was provided with approximately 6 GB of data from the servers that had been located by Mr. Varani of the Department of Justice Computer Lab in Washington, D.C.  This information consists of approximately 1,992 electronic files, with 1,822 files (in 98 folders) relating to Tabs and 170 files (in 150 folders) relating to QuickBooks. All of this information was obtained from the forensic copies of the EA servers that have been in the possession of the DOJ since the Spring of 2019.

On August 24, 2021, the Court granted Mr. Avenatti's request for a mistrial as a result of the government's suppression of the Tabs data. The Court found that the government was "on notice for some time of the existence of the Tabs data… the government was fully on notice of the significance of the Tabs data. The questioning at trial I believe established that no effort was made to secure the Tabs data." Trial Tr. (8/24/21, Vol. 1) p. 57. The Court indicated, "I think that the testimony in and of itself is sufficient to establish the materiality of the Tabs data, particularly where at least in the case of three of the victim clients the costs were an element in determining what net payment Mr. Avenatti was entitled to out of the settlement." Trial Tr. (8/24/21, Vol. 1) p. 58-59. The Court found that the Tabs data "would have been useful in an overall showing that the government's accounting records, the methods of Mr. Drum in particular, weren't accurate." Trial Tr. (8/24/21, Vol. 1) p. 60.

### D. The Government's Continued Failures to Produce Discovery After the Court's Mistrial Ruling Despite Numerous Demands

On August 26, 2021, two days after the Court's Order granting a new trial, the defendant sent the government a letter: "I write again requesting that the government immediately produce all materials and information required to be produced under Rule 16, the Jencks Act, Rule 26.2, *Brady*, *Giglio*, *Price*, *Olsen*, *Bundy* and/or the Court's January 2021 Order [Dkt. 398]." *See* Exhibit J.  In the letter, Mr. Avenatti alerted the prosecution to specific examples of some of the suppressed materials. *See id*.

15

On September 10, 2021, fifteen days (15) after this request was sent, AUSA Wyman responded to the defendant's request. *See* Exhibit K. AUSA Wyman indicated, "As for the specific requests regarding John Drum and the Analysis Group, Nos. 1, 4 and 5, we will review what is in our possession with these requests in mind and determine promptly if there is additional discovery to produce." *See* Exhibit K. The prosecution also informed the defendant that it would seek an order requiring defendant to identify materials he was entitled to on the EA servers or permit the government to produce a copy of the servers to the defense. On the same day, September 10, 2021, the defense contacted the government requesting that the prosecution stipulate to the production of the EA servers, relief the prosecution indicated it would seek. The government refused. The defendant also stated, "our further review of the discovery has revealed that the government still has not produced information and materials required to be produced pursuant to Brady, Giglio, Price, Bundy, and/or the Court's January 2021 Order." *See* Exhibit L. The defendant then detailed the missing information that had been suppressed.

On September 20, 2021, the defense again contacted the government and stated, "Please get back to us on the items identified… Time is of the essence. Further, it is clear that there is Brady material and relevant information responsive to the Court's January 2021 Order that still has not been produced." *See* Exhibit M. The suppression continued.

On September 22, 2021, the defense sent follow-up correspondence alerting the government that Mr. Avenatti continued to demand the discovery owed to him. The defense stated:

> "Tomorrow will be will be four weeks since the attached letter was sent and we have yet to receive any of the requested materials apart from the forensic copies of the servers.  Further, we have recently discovered that other cost, expense, and fee information that constitutes Brady material and was also required to be produced pursuant to the January 2021 Order, has not been produced.
> . . . .
> We once again demand that you immediately fully comply with the requirements of Brady, Giglio, Price, Bundy, Rule 16 and the Court's January

2021 Order and produce all required information.  Time is of the essence and the information is needed for the defense.

*See* Exhibit N.

On September 29, 2021, the government provided notice of Production No. 36. This limited production consisted of (1) Notes of IRS-CI Jeff Clark; (2) Agent Notes of Interviews of E.D., M.W., N.B.; (3) draft Tabs reports relating to Greg Barela, Alexis Gardner, and Geoffrey Johnson; (4) certain Analysis Group Invoices; and, (5) the EA Separation Agreement with Mr. Andrew Stolper dated May 23, 2016.  Much of this information was in the possession of the government well before the first trial - in some cases since May 2019.  It is *Brady*, *Giglio* and/or Jencks Act material (at a minimum) and Defendant had repeatedly requested this information before trial and during trial and yet it was never produced before September 29, 2021.  Worse yet, <u>the government continued to suppress the other responsive documents.</u>

That same day, after reviewing the production, the defense sent the prosecution an e-mail indicating that the government had failed to produce references made to various emails, complete billing records, draft/preliminary exhibits provided to the government by Analysis Group, the memoranda referenced in the billing records, and the other information requested in connection with Mr. Drum. *See* Exhibit O.[6]

After the government failed to respond, and over a month after Mr. Avenatti's initial request, the defense contacted the prosecution <u>again</u> on October 5, 2021. The defense indicated, "Please produce ALL of the requested materials by noon tomorrow or we will file a motion detailing the government's misconduct and seek severe sanctions." *See* Exhibit P.  The government continued to suppress the required information and refused to agree to produce all of it, or even state that all required *Brady*, *Giglio* and *Jencks* information had been produced.  *See* Exhibits Q, R, S, and T.

---

[6] A subsequent email followed the email attached as Exhibit O, which read in full: "Notice of errata – '(i.e. Sept 2020 - May 2021, July 2021 and August 2021)" should read "(i.e. June 2019, July 2019, Sept 2020 - May 2021, July 2021 and August 2021)'"

Last Friday, October 8, 2021, the government produced 446 pages of materials relating to Mr. Drum, including the engagement contract, email correspondence between the prosecutors and Mr. Drum and his colleagues, and draft charts and exhibits prepared by Mr. Drum relating to the finances of Eagan Avenatti, LLP and the client settlement accountings. Much of this information contradicts the testimony Mr. Drum provided at trial and certain arguments the government made before the jury. Almost all of it is *Brady*, *Giglio* and Jencks Act material (at a minimum) that was never previously produced despite defendant's repeated and specific demands (including during trial). This information was also in the possession of the government well before trial – in some cases since February 2019. <u>The prejudice associated with these late productions is significant and inexcusable</u>.[7]

### E. The Specific Materials the Prosecution Continues to Suppress

As of the date of this filing, it is clear that the prosecution continues to suppress materials that must be produced to the defendant. To date, the government has failed to produce extensive materials it should have provided to the defendant long before the first trial and are required to be produced pursuant to *Brady*, *Giglio*, the Jencks Act, Rule 16, and/or this Court's January 25, 2021 order. <u>By way of example only</u>, the government has failed to produce all of the following 12 categories of materials/information:

1. Invoices for Mr. John Drum and/or the Analysis Group relating to his work on this case and a description of his work performed;

2. Drafts of the summary charts;

3. Slides/decks/presentations prepared by Mr. John Drum and/or the Analysis Group relating to his work on this case;

---

[7] The defendant is prepared to make an *in camera* presentation to the Court explaining the significance of the recently produced documents, why they are *Brady*/*Giglio*/*Jencks*, and the prejudice that has resulted.

4. Memoranda referenced in the e-mail correspondence with Mr. John Drum and/or the Analysis Group;

5. Communications (i.e. emails) from Mr. John Drum and those acting on his behalf including others at the Analysis Group;

6. Drives, documents, information and materials provided to Mr. Drum or his colleagues in connection with his work in this case. This specifically includes the hard drive he was provided, which he used in connection with his work, and that has never been produced to the defense;

7. Financial information relating to the clients identified in the Indictment;

8. Cost, expense and invoice information relating to the clients identified in the Indictment, including all invoices from third parties for costs and expenses on the client matters;

9. Financial information relating to the law firm, its financial position, its bankruptcy, and its financial prospects (all topics explored by the government during its case-in-chief in the first trial);

10. Statements of each of the government's witnesses that relate to the subject matters of their testimony;

11. Financial reports relating to the clients and the firm; and

12. Communications sent by and to Mr. Andrew Stolper from 2018 to the present.

## III.   LEGAL STANDARD

The district court is "well within its authority to manage its docket in enforcing a valid pretrial discovery order." *United States v. Grace*, 526 F.3d 499, 516 (9th Cir. 2008); *United States v. Talbot*, 51 F.3d 183, 187-88 (9th Cir. 1995)(upholding the exclusion of government witnesses for a violation of a pretrial disclosure order). The Court has "the inherent power to punish for civil or criminal contempt any obstruction of justice relating to any judicial proceeding." *United States v. Soong*, 2015 U.S. Dist. LEXIS 118585, at *7; *quoting, Lambert v. Montana*, 545 F.2d 87, 88 (9th Cir. 1976). Civil contempt sanctions are "designed to compel future compliance with a court order,

19

[and] are considered to be coercive and avoidable through obedience…" *Int'l Union v. Bagwell*, 512 U.S. 821, 827 (1994). The Supreme Court has long held "that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Schillitani v. United States*, 384 U.S. 364, 370 (1966); *citing United States v. United Mine Workers*, 330 U.S. 258, 330-332 (1947)(Black & Douglas, concurring and dissenting in part). The power to hold a party in contempt is "a discretionary power vested in the court whose order has been violated." *In Re Crystal Palace Gambling Hall, Inc.,* 817 F.2d 1361, 1364 (9th Cir. 1987). Civil contempt is "wholly remedial" and is not intended to be punitive. Rather, it is meant to coerce compliance with an order of the court. *See Int'l Union, United Mine Workers of America v. Bagwell*, *supra,* 512 U.S. at 827 ("Civil contempt sanctions, or those penalties designed to compel Future compliance with a court order, are considered to be coercive and avoidable through obedience."); *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); cf. *Bagwell*, 512 U.S. at 829 (expanding remedial purposes to include losses sustained, not merely future compliance).

To make a prima facie showing of civil contempt, Mr. Avenatti must show only that the government failed to comply with a valid court order. *See United States v. Rylander*, 460 U.S. 752, 755 (1983); *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999). Civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." *Bagwell*, 512 U.S. at 827; *see also Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590 (1947). Once a prima facie case has been shown, the burden is on the alleged contemnor to justify its noncompliance "categorically and in detail." *Rylander*, 460 U.S. at 755. In addition, in civil contempt proceedings, intent is not an issue. *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983); *Jim Walter Resources, Inc. v. International Union*, UMW, 609 F.2d 165, 168 (5th Cir. 1980). The absence of intent does not excuse civil contempt because it is a sanction to enforce compliance with an order of the court, and therefore is not dependent on the state of

mind of the respondent.  Even good faith on the part of the defendant is no defense. *Donovan*, 716 F.2d at 1240.  Indeed, civil contempt may be established even though the failure to comply with a court order was unintentional.  *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985).

## IV.   ARGUMENT

Despite the clear requirements of the Court's Order, and the Court warning the government in the Order of the severe consequences for non-compliance, it is readily apparent that the government has not complied with the Order. The Order issued by this Court was exactly as titled – AN ORDER.  And the government was required to fully comply with it, which clearly has not occurred. Indeed, the prosecution has not learned its lesson despite the Court's granting of a mistrial as a result of a significant *Brady* violation. As a result, Mr. Avenatti requests that that the Court issue an order to show cause why the government should not be held in civil contempt because of their failure to fully comply with this Court's January 25, 2021 Order.

<u>First</u>, absent additional action from this Court, the government will continue to suppress materials owed to the defendant due in part to the prosecution's own fundamental misunderstanding of the law and what it and the Order require. In a recent filing, the prosecutors claimed that *Brady* only requires them to provide the defense with <u>material </u>favorable evidence: "The fact that Brady requires only the disclosure of <u>material</u> favorable evidence – that is, evidence having a reasonable probability of affecting the outcome . . ." [Dkt. 825, p. 26 (emphasis in original)]. This is deeply troubling[8] because it is directly contrary to the law and the prosecution's *Brady* obligations.  The law in the Ninth Circuit is clear - the government is required to promptly produce to the defense <u>all</u>

---

[8] The fact that this is the *Brady* standard being utilized by Assistant U.S. Attorneys in the Central District has far reaching consequences well beyond this single case. It means that hundreds, if not thousands, of criminal defendants likely have not received the *Brady* materials they were entitled to because the AUSAs in the Central District do not know what *Brady* actually requires and thus have been applying the wrong legal standard when determining what discovery to produce.

information favorable to the defense, ***regardless of materiality***. *See, e.g., United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020) (requiring all favorable evidence to be disclosed by prosecutors pretrial, without regard to materiality:  "[T]rial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial. . . . The retrospective definition of materiality is appropriate only in the context of appellate review" and not at the trial level.)(citation omitted); *United States v. Price*, 566 F.3d 900 (9th Cir. 2009).

Similarly, during the first trial the prosecution relied on the work-product privilege to justify its failure to comply with their discovery obligations related to Mr. Drum's *Jencks* statements. However, over forty years ago, in *Goldberg v. United States*, 425 U.S. 94 (1976), the Supreme Court specifically precluded the government from claiming, as they did during trial, that "work product" permits the withholding of materials from the defense that are obligated to be produced pursuant to the *Jencks* Act.

Second, the government continues to withhold evidence by hiding behind the phrase "in our possession." In response to the defendant's post-trial, discovery requests, the prosecution team has continuously claimed "we will review what is in our possession with these requests[,]" "we have provided you with the invoices and transmittal emails in our possession…[,]" "as for the invoices, we have produced those in our possession[,]" etc. These statements should be replaced by productions and assurances that all materials required to be produced have been produced. The government's discovery limitations are not confined to the materials held within the four walls of the prosecutor's office and the prosecution's claims otherwise again reflect ignorance of the law. The "obligations imposed by *Brady* are not limited to evidence prosecutors are aware of, or have in their possession." *United States v. Bruce*, 984 F.3d 884, 895 (9th Cir. 2021). "Prosecutors cannot turn a blind eye to their discovery obligations." *Id.* at 897 (rejecting the government's argument that because there were references to unproduced materials in the documents the prosecution did produce, it was incumbent upon the defense to investigate and uncover potentially favorable evidence itself). The law under *Brady*

places "an affirmative duty on the prosecutor to seek out information in the government's possession that is favorable to the defendant. *United States v. Grace*, 401 F. Supp. 2d 1069, 1075 (D. Mont. 2005). The Supreme Court in *Kyles v. Whitley*, 514 U.S. 419 (1995) made it abundantly clear that, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case … whether, that is, a failure to disclose in good faith or bad faith --  the prosecution's responsibility for failing to disclose known and favorable evidence rising to a material level of importance is inescapable. " *Id.* at 1075-76 (emphasis added).

    Finally, the facts easily establish a prima facie showing that the government has not complied with its discovery obligations and has failed to comply with this Court's Order. By way of example only, the government has failed to produce the following:

    (1) All communications from Mr. John Drum and those acting on his behalf including others at the Analysis Group. During trial, Mr. Drum testified that Ms. Carter had regular e-mail communications with the government prosecutors and the agents in connection with Mr. Drum's testimony. *See, e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 10. Mr. Drum stated that these e-mail communications were at his direction as part of his work on this case. *See, e.g.,* Trial Tr. (8/13/21, Vol. 2) p. 10-11. The government has failed to produce all relevant communications between Mr. Drum, Mr. Drum's colleagues working on this case, and the government. (2) Mr. Drum also testified his office created monthly billing statements, detailing the time he spent on projects and a general description of the tasks that were accomplished, which he personally reviewed and approved before his firm sent them to the government. *See, e.g.,* Trial Tr. (8/13/21, Vol. 1) p. 97-98. The government has failed to produce all of these detailed billing statements. (3) The defense has requested a copy of the drives provided to Mr. Drum in order to perform his analysis, namely the Eclipse drive containing 10,578 documents. On August 23, 2021, the defendant motioned the Court for an Order directing the government to provide the defense all materials provided to Mr. Drum by the government. [Dkt. 772]. The government responded by indicating that all the materials had been produced by

23

way of their numerous productions. [Dkt. 774]. However, the defendant wants the actual compiled <u>drive</u> used by Mr. Drum in conducting his analysis as described in its August 26, 2021 correspondence. This has not been produced. (4) The government has failed to produce <u>all</u> of the drafted summary charts and decks Mr. Drum made in preparation for this case. These charts/decks were referenced repeatedly within the e-mail correspondence that was produced in-camera during the trial. On August 16, 2021, in the middle of trial, AUSA Wyman contacted the defense and indicated that the Court had ordered the prosecution to provide Mr. Avenatti a copy of the in-camera filing it had lodged with the Court. Within this filing, the government conceded that it had not provided these prior summary charts, "the government also received prior draft charts … the government does not believe that these emails or the drafts fall within the scope of its Jencks obligations but will provide these to the Court for review upon request." *See,* Dkt. 715, 718 p. 5, n. 1. (5) Other than a termination agreement between EA, LLP and Mr. Andrew Stolper, the prosecution has produced no communications between the government and Mr. Stolper. By way of the attached e-mail correspondence, there is evidence that such correspondence exists as the prosecution claimed to have lodged it with the Court. *See* Exhibit K. (6) The prosecution has failed to give assurances that the defense is in possession of all witness statements regarding the subject matter of the proposed testimony. During trial, the Court ordered the government to submit, in-camera statements from government witnesses Nashan Tashyan and Joseph Varani. The defendant has yet to receive these statements. Further, the government continues to hold interviews with witnesses. The defense demands all statements or assurances that they have all been produced. (7) Memoranda are referenced within the e-mail correspondence and certain invoices between the government agents and Mr. Drum and/or the Analysis Group. These have not been produced. (8) The prosecution has withheld cost invoices and financial information relating to the clients identified in the Indictment, including invoices received from third parties for expenses incurred by the firm for the benefit of

the clients. (9) The prosecution has suppressed financial reports and spreadsheets relating to the client settlement proceeds and financial condition of the law firm.

All of these materials and more must be produced by the prosecution in order to comply with this Court's order as well as the law as defined in *Brady, Bundy, Giglio, Jencks*, and Rule 26.2. As a result, Mr. Avenatti asks that this Court issue an Order to Show Cause as to why the government should not be held in civil contempt.

## V.    CONCLUSION

For each of the reasons set forth above, Mr. Avenatti respectfully requests that this Court (i) issue an order to show cause why the government should not be held in civil contempt because of their failure to fully comply with this Court's January 25, 2021 Order and thereafter find the government in civil contempt; (ii) direct the government to immediately produce the information requested by the defendant, and all other required discovery, within 72 hours of the Court's Order; and (iii) order that each member of the prosecution and investigative teams shall declare in a writing filed without seal, under penalty of perjury and within 72 hours of the Court's Order, that <u>all</u> information and materials required to be produced under this Court's Order [Dkt. 408], *Brady*, *Giglio*, the *Jencks* Act, *Bundy*, *Price*, *Olsen*, and/or Rule 16 have been produced to the defendant.

Dated:  October 11, 2021                          Respectfully submitted,

<u>/s/ Michael J. Avenatti</u>

Defendant
MICHAEL JOHN AVENATTI

## **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on October 11, 2021 service of the:

DEFENDANT'S MOTION FOR AN ORDER TO SHOW CAUSE RE CIVIL CONTEMPT AND FINDING OF CONTEMPT; AND MOTION TO COMPEL DISCOVERY

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 11, 2021

/s/ H. Dean Steward

H. Dean Steward

26