Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994
Email: DeanSteward7777@gmail.com

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S EX PARTE APPLICATION FOR AN ORDER (1) REQUIRING SOFTWARE TECHNOLOGY, LLC TO FACILITATE THE GOVERNMENT'S RESTORATION OF TABS SOFTWARE FILES SEIZED FROM THE EAGAN AVENATTI LLP SERVERS, AND (2) EXTENDING DEADLINE FOR GOVERNMENT TO FILE REPORT ON TABS DATA |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, hereby files his Opposition to the Government's Ex Parte Application for an Order (1) Requiring Software Technology, LLC to Facilitate the Government's Restoration of Tabs Software Files Seized from the Eagan Avenatti, LLP Servers, and (2) Extending Deadline for Government to File Report on Tabs Data. Based on the following, Mr. Avenatti respectfully requests that the government's application be denied in its entirety.

| | |
|---|---|
| Dated: October 14, 2021 | Respectfully submitted, |
| | /s/ Michael J. Avenatti |
| | Defendant<br>MICHAEL JOHN AVENATTI |

## I.  INTRODUCTION & RELEVANT FACTUAL HISTORY

On repeated occasions during the trial, including during the hearing on August 24, 2021, and continuing in the weeks that followed, the government represented to the Court and the defendant that the Tabs data reveals nothing new, is not exculpatory or favorable to the defendant, and actually benefits the government. *See, e.g.,* Dkt. 825, p. 16, ("the Tabs data on the servers corroborated the government's evidence…"); Dkt. 830, p. 3 ("the Tabs data does not actually undermine any of the government's evidence or financial analysis."). <u>The *ex parte* application submitted by the government demonstrates that there was no basis for these representations when they were made because the government did not have the ability to access the Tabs data for the five clients (and still does not) and therefore had no idea whether the information is favorable to the defendant</u>. [Dkt. 855, p. 1, ¶¶ 4-5]. **This is deeply troubling and should cause the Court considerable concern**.

On October 12, 2021, the Court held a status conference during which it ordered each of the parties to submit a brief by noon on Thursday, October 14, 2021, regarding the government's production of Tabs and QuickBooks data:

> "I would like a report from the parties by noon on Thursday on the government's document production during the week of August 23, the files that Mr. Varani produced, and what has been produced subsequent. What's in there that would constitute Tabs or QuickBooks documents with respect to the four clients that are relevant in Counts 1 through 10? I want to know whether the relevant Tabs and QuickBooks files for these specific clients have been produced in the subsequent production…" Trial Tr. (10/12/21, Vol. 1) p. 10.

Later on October 12, 2021, and unbeknownst to the defense at the time, the government issued a Rule 17 subpoena to Software Technology, LLC demanding that the private company provide: "Any and all assistance to restore old Tabs programs, and access to data licenses for years 2011 through 2019 for any of the following entities:

Eagan Avenatti LLP [,] Avenatti & Associates [, and] All other entities related to Michael Avenatti[.]" *See,* Dkt. 855, Exhibit A.

That same day, John Matson, counsel for Software Technology, LLC wrote to AUSA Sagel and AUSA Wyman outlining responses to questions posed by the prosecution during a call earlier that day. *See,* Dkt. 855, Exhibit B. Mr. Matson indicated that due to the nature of the confidentiality agreements between the company and the law firm/Mr. Avenatti, he was reluctant to provide the assistance the prosecution sought. *See id.*[1] The defendant was not a party to any of these communications nor was he provided them until the ex parte was filed.

On October 13, 2021, AUSA Wyman contacted the defense and stated: "As you know, we have received from the Privilege Review Team a copy of the Tabs data from the Eagan Avenatti LLP servers." *See,* Dkt. 855, Exhibit C. The government indicated that law enforcement agents needed assistance from Software Technology, LLC in order to restore the Tabs software files on the program. *See id.* AUSA Wyman asked if the defendant objected to Software Technology, LLC providing the government with assistance. *See id.*

Less than one hour later, defendant responded and asked that the government provide counsel for Software Technology, LLC with the defendant's contact information so that he could address the issue with the company and "discuss their concerns." *See,* Dkt. 855, Exhibit C. Mr. Avenatti also alerted the government that the Tabs and QuickBooks files "include[] privileged and confidentiality information belonging to thousands of clients which are not identified in the Indictment, as well as information

---

[1] The defendant has learned that in other recent e-mail correspondence between the government and Mr. Matson (that the prosecution chose not to attach to its Application), AUSA Brett Sagel told Mr. Matson that "Mr. Avenatti is no longer an owner of Eagan Avenatti LLP…" AUSA Sagel made this representation, which he knows to be untrue, in an effort to convince Mr. Matson that Mr. Avenatti no longer had any rights associated with the data and therefore the company could provide the government the unfettered access the government requested.

2

protected by the work-product doctrine…," and that those protections had not been waived to the best of his knowledge. *See id.* After this e-mail, no response was received from the prosecution. The defendant did not receive any contact information from the government as requested nor were any further communications sent by the government in an effort to resolve the issues. Instead, at 3:25 p.m., the government filed its *ex parte* application.

## II.   ARGUMENT

The Court should deny the application for multiple reasons. <u>First</u>, there is no legal basis for the Court to order a private company to provide assistance and consulting services to the government, let alone pursuant to a Federal Rule of Criminal Procedure 17 subpoena. The subpoena the government served on the company purports to require the company to appear and provide "Any and all assistance to restore old Tabs3 programs, and access to data licenses for years 2011 through 2019 . . ." This is an abuse of the subpoena power and the government's attempted use of the subpoena to compel this assistance is per se improper.

Rule 17 governs the issuance of subpoenas in criminal cases and provides that a subpoena may be issued <u>only to compel testimony and/or produce materials in the possession of the subpoenaed party</u> for use at trial or a formal hearing. A subpoena may not be used by the government to attempt to compel a private company to perform some other action, i.e. assist the government with their investigation and/or provide technical assistance and consulting services so the government can extract data the company does own and does not have in its possession. *See, e.g., United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) ("We have emphasized that Rule 17(c) is not a discovery device") (internal citation omitted). In *United States v. Nixon*, the Supreme Court made clear that one of the "fundamental characteristics of the subpoena duces tecum in criminal cases" is that "it was not intended to provide a means of discovery." 418 U.S. 683, 698 (1974); *see also Bowman Diary Co. v. United States*, 341 U.S. 214, 221 (1951)

3

(invalidating a Rule 17(c) subpoena because it was "not intended to produce evidentiary material but [was] merely a fishing expedition to see what may turn up"); 2 Wright, Federal Practice and Procedure: Criminal § 274 at 153 and n. 16 (1982) ("It has always been clear that Rule 17(c) was not intended as a discovery device").

The prosecution fails to cite to a single case, statute or otherwise that provides the Court with the authority to order a private party to provide assistance to the government "in restoring the software files related to the Tabs3 program that the government obtained from the servers of Eagan Avenatti LLP…" [Dkt. 855-1, p. 2]. Instead, the prosecution in essence asks that the Court enforce an invalid, unenforceable and improperly issued subpoena ordering a private party to perform an *act* of assisting the government with its investigation despite the company's objections regarding confidentiality and privacy concerns.

**Second, in seeking the Court's assistance, the government completely ignores the confidentiality, attorney-client privilege and work-product concerns regarding clients unrelated to the five clients identified in the Indictment and attempts to have this Court condone the government's violation of those protections *en masse*, without any notice to the clients.** The information contained within the Tabs and QuickBooks files pertaining to these clients, who number in the thousands and include clients who retained the firm to represent them in federal and state criminal proceedings, cannot simply be turned over to the government for its agents and prosecutors to rifle through unchecked. Those clients have the right to have their information protected from disclosure to the government, especially when they have never been provided prior notice by the government or the software company that their information is about to be turned over without any limitation on the ability of the government to review and use the information.

To be clear, defendant expressly asserts both the attorney-client privilege and work product doctrine in connection with the thousands of clients not at issue in this

4

case. The prosecution team should not be given access to the materials unrelated to those specifically at issue in the Indictment. Defendant requests that as an alternative, a Special Master be appointed to access the Tabs and QuickBooks data relevant to the five clients at issue and produce it to the government and the defense. The Special Master should be tasked with the responsibility of collecting all Tabs and QuickBooks data, isolating the data related to the five clients named in the Indictment, and working with experts to present it in a format that both parties can meaningfully access.

The law is well-established that lawyers may raise the attorney-client privilege on behalf of current and former clients. See, e.g., *Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976) ("[I]t is universally accepted that the attorney-client privilege may be raised by the attorney[.]"); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1354- 55 (4th Cir. 1984) (emphasizing that a lawyer "is entitled to raise [a claim of] privilege on behalf of his . . . client"). Indeed, lawyers are <u>obligated</u> to protect the attorney-client privilege to the maximum possible extent on behalf of their current and former clients. *See, e.g., Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967) (lawyer has duty to invoke claim of privilege on client's behalf); Model Rules of Prof'l Conduct r. 1.6(a), (c) (Am. Bar Ass'n 1983) (lawyer owes duty of confidentiality to client and must prevent unauthorized disclosure of confidential information).

Accordingly, Mr. Avenatti is entitled to pursue the legal positions herein not only on his own behalf but also on behalf of each of his other clients. See *Fisher v. United States*, 425 U.S. 391, 402 n.8, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) ("[I]t is universally accepted that the attorney-client privilege may be raised by the attorney[.]"); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1354-55 (4th Cir. 1984) (emphasizing that a lawyer "is entitled to raise [a claim of] privilege on behalf of his ... client").

The information the government seeks to access regarding other clients not identified in the Indictment is also protected by the work-product doctrine. The work-product doctrine has been partially codified in Federal Rule of Civil Procedure 26 and

Federal Rule of Criminal Procedure 16. The United States Supreme Court has also explicitly recognized the attorney work-product doctrine in its seminal decision, *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). The work-product privilege is narrower than the attorney-client privilege but operates to serve a common interest, "people should be free to make requests of their attorneys without fear, and that their attorneys should be free to conduct research and prepare litigation strategies without fear that these preparations will be subject to review by outside parties." *In Re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006). In California, work product belongs to the attorney, not the client, and may only be waived by the attorney.

      Mr. Avenatti has been consistent in his position as it relates to the Tabs and QuickBooks data of the five clients named in the Indictment - there are no attorney client privilege issues. The five alleged victims have waived any attorney client privilege issues related to the release of the information contained in the Indictment. However, the government now seeks carte blanche access to all of the QuickBooks and Tabs data, through the assistance of private entity Software Technology, LLC, for thousands of other clients, who have not been named in the Indictment and have received no notice. It is unclear why the Privilege Review Team has given the prosecution team the data for all of the clients unrelated to those specifically named in the Indictment. Further, the subpoena and the government's requested relief in the application does not limit the requested access to the five clients named in the Indictment.

      <u>Finally</u>, the defendant objects to the government being provided a continuance on the filing of its report as ordered by the Court on Tuesday, October 12, 2021. Mr. Avenatti's similar request for a continuance was previously denied, *see* Trial Tr. (10/12/21, Vol. 1) p. 15, and the government need not have the requested access in order to meet the Court's directive, which was simple: what Tabs and QuickBooks data do the parties have in their possession since August 23, 2021? The government need not be given a continuance to alert the Court to what exactly is in their possession. During the

6

October 12, 2021 conference, the government raised no concerns regarding the timing of the briefing and did not raise the issues it addresses for the first time now despite AUSA Wyman's assertions that IRS-CI agents have been in communication with Software Technology, LLC "[in] recent <u>weeks</u>." [Dkt 855, p. 3](emphasis added).

For each of the below reasons, the government's application should be denied.

Dated: October 14, 2021        Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

7

**CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action. I have caused, on October 14, 2021 service of the:

DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S EX PARTE APPLICATION FOR AN ORDER (1) REQUIRING SOFTWARE TECHNOLOGY, LLC TO FACILITATE THE GOVERNMENT'S RESTORATION OF TABS SOFTWARE FILES SEIZED FROM THE EAGAN AVENATTI LLP SERVERS, AND (2) EXTENDING DEADLINE FOR GOVERNMENT TO FILE REPORT ON TABS DATA

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 14, 2021

/s/ H. Dean Steward
H. Dean Steward

8