
TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2435
     Facsimile: (213) 894-6269
     Email:    Alex.Wyman@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | GOVERNMENT'S BRIEF REGARDING THE COURT'S JURISDICTION DURING DEFENDANT'S PENDING APPEAL OF THE COURT'S ORDER DENYING DEFENDANT'S MOTION TO DISMISS (CR 838) |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Per the Court's Order on October 12, 2021, plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Alexander C.K. Wyman, hereby files its Brief regarding the Court's jurisdiction

during defendant's pending appeal of the Court's Order denying defendant's motion to dismiss (CR 838).

This Brief is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 14, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

         /s/
BRETT A. SAGEL
ALEXANDER C.K. WYMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On October 4, 2021, the Court denied defendant's motion to dismiss due to double jeopardy, prosecutorial misconduct, contempt of this Court's January 25, 2021 order, and violations of defendant's right to due process. (CR 838.) Eight days later, on October 12, 2021, defendant filed a notice of an interlocutory appeal of this Order with the Ninth Circuit. (CR 852.) At a status hearing on October 12, 2021, the Court ordered the parties to file briefs on whether defendant's notice of appeal divested the Court of jurisdiction. For the following reasons, it does not. This Court is not divested of jurisdiction simply because defendant has filed a frivolous appeal of the Court's order denying his motion to dismiss.

**II.   ARGUMENT**

   **A.   Defendant's Attempt to Appeal Non-Appealable Portions of the Court's Order Does Not Divest the Court of Jurisdiction**

It is black-letter law that the filing of a notice of appeal does not divest a district court of jurisdiction when the order being appealed is a non-appealable interlocutory order. See Nascimento v. Dummer, 508 F.3d 905, 908 (9th Cir. 2007) ("When a Notice of Appeal is defective in that it refers to a non-appealable interlocutory order, it does not transfer jurisdiction to the appellate court, and so the ordinary rule that the district court cannot act until the mandate has issued on the appeal does not apply."). Moreover, even valid interlocutory appeals only divest the Court of jurisdiction over the issues on appeal and do not "affect[] [the Court's] jurisdiction over other matters in the case." Id. at 910.

The only portion of the Court's Order that is even arguably appealable at this time is the Court's ruling on defendant's double-jeopardy claim. Section 1291 of Title 28 of the United States Code limits the jurisdiction of the courts of appeals to "final decisions of the district courts." "Final decisions" generally means "final judgments," and the statute accordingly "requires that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits." Flanagan v. United States, 465 U.S. 259, 263 (1984) (citations and internal quotation marks omitted). "In a criminal case," this "final judgment" rule "prohibits appellate review until conviction and imposition of sentence." Id.

The collateral-order doctrine is a limited exception to the final-judgment rule. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 467-68 (1978). To fall within the "small class" of decisions that constitute immediately appealable collateral orders, a decision must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." Van Cauwenberghe v. Biard, 486 U.S. 517, 522 (1988) (citations and internal quotation marks omitted). The collateral-order exception is "interpreted . . . 'with the utmost strictness' in criminal cases," Midland Asphalt Corp. v. United States, 489 U.S. 794, 799 (1989) (quoting Flanagan, 465 U.S. at 265), because the "encouragement of delay is fatal to the vindication of the criminal law," Cobbledick v. United States, 309 U.S. 323, 325 (1940).

The Supreme Court has permitted an interlocutory, collateral-order appeal of the denial of a motion to dismiss an indictment in two circumstances -- where the motion is based on either the Double

Jeopardy Clause or the Speech or Debate Clause -- because those claims involve an immunity from trial, i.e., a right not to be tried at all. See Abney v. United States, 431 U.S. 6560-62 (1977); Helstoski v. Meanor, 442 U.S. 500, 506-07 (1979). By contrast, orders denying motions to dismiss on other grounds (including other constitutional grounds) have been held not to be immediately appealable collateral orders. See, e.g., Midland Asphalt, 489 U.S. at 799-800 (denial of motion to dismiss based on alleged Rule 6(e) violations not immediately appealable); United States v. Hollywood Motor Car Co., 458 U.S. 263, 270 (1982) (per curiam) (denial of motion to dismiss based on alleged prosecutorial vindictiveness not immediately appealable); United States v. MacDonald, 435 U.S. 850, 863 (1978) (denial of motion to dismiss based on Sixth Amendment speedy trial issue not immediately appealable); United States v. Taylor, 881 F.2d 840 (9th Cir. 1989) (no interlocutory jurisdiction over appeal from denial of motion to dismiss based on prosecutorial misconduct). The inclusion of a double-jeopardy claim in a motion to dismiss also does not make other claims immediately appealable. See Abney, 431 U.S. at 662-63 ("In determining that the courts of appeals may exercise jurisdiction over an appeal from a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds, we, of course, do not hold that other claims contained in the motion to dismiss are immediately appealable as well.").

Defendant's main argument in his motion to dismiss was that the Court should dismiss the Indictment as a remedy for government misconduct, as in Bundy, 968 F.3d at 1030-31. (See, e.g., RT 8/24/2021 at 17 ("There are many parallels, Your Honor, between this case and the Bundy case."); CR 822 at 24-30.) This Court rejected

3

that claim based on its finding that there was "no misconduct" on the part of the government. (CR 838 at 2-3.) That finding, which is distinct from the double-jeopardy question, is unappealable and therefore does not divest the Court of jurisdiction. See, e.g., United States v. Chapman, 524 F.3d 1073, 1083-84 (9th Cir. 2008) (distinguishing double jeopardy and dismissal based on due process or supervisory powers).

> **B. Defendant's Appeal of the Double-Jeopardy Ruling Does Not Divest the Court of Jurisdiction Because It Is Frivolous**
>
> > 1. <u>Frivolous Appeals of Otherwise-Appealable Orders Do Not Divest the Court of Jurisdiction</u>

Although a denial of a double-jeopardy motion may be immediately appealable, the frivolous appeal of an otherwise-appealable order does not divest the Court of jurisdiction. As the Ninth Circuit has explained, the ordinary rule that the filing of a notice of appeal divests the district court of jurisdiction is not a "jurisdictional" rule but rather "a judge made rule originally devised in the context of civil appeals to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 790 (9th Cir. 2018) (quoting United States v. Claiborne, 727 F.2d 842, 850 (9th Cir. 1984)); see also In re Halvorson, No. SA CV 18-00528 JVS, 2019 WL 10787924, at *2 (C.D. Cal. Mar. 26, 2019) (this Court explaining that the divestiture rule "(1) promotes judicial economy by sparing trial courts from considering issues that could be mooted by an appellate court; and (2) promotes fairness to the parties by avoiding potential duplication and confusion resulting from such 'two front war[s]'" (quoting United States v. Ledbetter, 882 F.2d 1345, 1347 (8th Cir. 1989))). As a result, the divestiture rule "may be applied in a

4

'less stern' manner than true jurisdictional rules," and the Ninth Circuit has identified exceptions to the rule. Id. Of relevance here, the Ninth Circuit has "authorized the district court to go forward in appropriate cases by certifying that an appeal is frivolous or waived." Rodriguez, 891 F.3d at 791; see also Chuman v. Wright, 960 F.2d 104, 105 (9th Cir. 1992) ("a frivolous . . . appeal does not automatically divest the district court of jurisdiction," which the district court can determine by "certify[ing] in writing that the appeal is frivolous").

Indeed, the Ninth Circuit has expressly approved of district courts maintaining jurisdiction following the filing of an appeal from the denial of a motion to dismiss on the basis of double jeopardy. In United States v. LaMere, 951 F.2d 1106, 1108 (9th Cir. 1991), the Court "adopted a 'dual jurisdiction' rule wherein 'an appeal from the denial of a frivolous motion to dismiss based on double jeopardy does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous.'" Chuman, 960 F.2d at 105 (quoting LaMere, 951 F.2d at 1108); see also United States v. Powell, 24 F.3d 28, 31 (9th Cir. 1994) ("Even in an Abney-type situation, the divestiture of trial court jurisdiction is not absolute. Rather, we may apply the 'dual jurisdiction' rule which provides that an appeal from the denial of a motion seeking to establish a right not to be tried does not divest the district court of jurisdiction if the district court has found that motion to be frivolous.").

The Ninth Circuit in LaMere held "that the district court did not err in finding [the defendant's] double jeopardy motion to be frivolous, and that court did not lose jurisdiction to proceed with

5

[the defendant's] trial notwithstanding the filing of his notice of appeal from the denial of the double jeopardy motion." 951 F.2d at 1109. In doing so, the Court upheld the district court's finding that the double jeopardy appeal was frivolous based on "clear and long-standing case law." Id.; see also United States v. Holloway, No. CR-10-01126-13-PHX, 2012 WL 5361013, at *2 (D. Ariz. Oct. 31, 2012) ("An appeal is frivolous if it runs against 'clear and long standing case law.'" (quoting LaMere, 951 F.2d at 1109)); id. at *4 (retaining jurisdiction and finding the appeal frivolous because it was "clearly foreclosed" by Ninth Circuit law).

    2.    The Court Should Retain Jurisdiction Because Defendant's Appeal of the Court's Order Rejecting Defendant's Double-Jeopardy Claim Is Frivolous

Here, as in LaMere, defendant's appeal is frivolous because it is foreclosed by "clear and long-standing case law." As this Court acknowledged in denying defendant's double-jeopardy claims, "[t]he Supreme Court has held that where the defendant has requested and been granted a new trial, the Double Jeopardy clause is no bar to a retrial." (CR 838 at 4 (citing Oregon v. Kennedy, 456 U.S. 667, 672 (1982)).) "A defendant's request for a new trial 'implicitly invite[s] a second trial and [is] enough to foreclose any double jeopardy complaint about it." (Id. (quoting Currier v. Virginia, 138 S. Ct. 2144, 2151 (2018)).) Defendant here conceded that he "asked for and the government opposed the mistrial." (CR 828 at 12.) Under "clear and long-standing case law," LaMere, 951 F.2d at 1109, then, that fact unequivocally bars defendant double-jeopardy claim, Currier, 138 S. Ct. at 2152-55; Kennedy, 456 U.S. at 669, 672-74.

Defendant has no way around this bar -- nor should he, since he is the one who moved for a mistrial. In his briefing on the motion

to dismiss, defendant's only response to this well-established rule was to claim that he was "goaded" by the government into seeking a mistrial. (CR 828 at 11-12 (citing Kennedy, 456 U.S. at 673).) Specifically, he claimed that the government "goaded" him into seeking a mistrial through its "flagrant and blatant misconduct" and that "the government's opposition to the mistral proves precisely that the government was content to give the defendant a Hobson's choice: a mistrial or wrongful conviction." (Id. at 12.)

But not only did the Court find as a matter of fact that "[n]o 'goading' occurred here" (CR 838 at 4) -- a factual finding that would be reviewed for clear error on appeal, see United States v. Lopez-Avila, 678 F.3d 955, 961 (9th Cir. 2012) -- defendant's definition of "goading" is directly foreclosed by Supreme Court precedent. The very case defendant relied on for his "goading" claim rejected the argument that the "goading" test should be "broaden[ed] . . . from one of intent to provoke a motion for a mistrial to a more generalized standard of 'bad faith conduct' or 'harassment' on the part of the judge or prosecutor." Kennedy, 456 U.S. at 674. And defendant's "Hobson's choice" argument was expressly rejected, by name, in United States v. Dinitz, 424 U.S. 600 (1976). There, a trial court had "overreact[ed]" and "banish[ed]" a defendant's lawyer from the courtroom -- forcing him to proceed with a new lawyer whom he did not want -- and the Supreme Court still held that double jeopardy was no bar to reprosecution:

> [T]he defendant generally does face a "Hobson's choice" between giving up his first jury and continuing a trial tainted by prejudicial judicial or prosecutorial error. The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.

7

Id. at 609. As the Supreme Court has explained, even if a defendant who has been wronged during the trial process faces a "hard choice," that does not relieve him of the consequences of that choice: "litigants every day face difficult decisions," including being "forced to choose between allowing an imperfect trial to proceed or seeking a second that promises its own risks." Currier, 138 S. Ct. at 2152 (citing, as examples, Dinitz, United States v. Scott, 437 U.S. 82 (1978), and Jeffers v. United States, 432 U.S. 137 (1977)); see also Gaytan, 115 F.3d at 744 (noting that the defendants could have asked the court to strike the testimony of the government's "star witness," and then "the court would have had no choice but to grant a motion for judgment of acquittal").

The government in this case did not seek or want a mistrial. To the contrary, as the Court acknowledged, the government "vigorous[ly] object[ed]" to defendant's request for a mistrial. (CR 838 at 4.) Whether the government engaged in misconduct or not (it did not) is a separate question, because (as the Court explained, see id.) the "only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means." Lopez-Avila, 678 F.3d at 962.

Here, not only did the government intend to finish the trial, the Court found that the government intended to prevail at trial by permissible means. (RT 8/24/2021 at 64 ("I repeat my findings that I find no misconduct on the part of the Prosecution Team and no misconduct on the part of the taint Team.").) Indeed, the Court "specifically found that the Prosecution Team made a diligent effort to produce that TABS data which it received." (CR 838 at 2.) There was (and is) no basis for inferring that the government prosecutors

8

harbored any intent other than to prevail at the ongoing trial, and to do so properly. In fact, the Court specifically found that there was no "goading." (Id. at 4-5 ("No 'goading' occurred here. Indeed, the mistrial was granted over the vigorous objection of the Government. . . . As noted above, there was no Brady violation by the Prosecution Team. Nor can the ignorance [of the TABs data] on the part of the Privilege Review Team until late in the day be characterized as 'goading.'").)

Accordingly, defendant cannot avoid the force of his own decision to seek a mistrial based on what the Court found to be the late production of Tabs data. He affirmatively persuaded the Court that there was manifest necessity for a mistrial. (Id. at 2 ("there was no way to proceed"), 5 ("the 'manifest necessity' standard was met here").) Manifest necessity itself -- independent of defendant's consent -- renders the double-jeopardy bar inapplicable. Gaytan, 115 F.3d at 742, 1081. Although the government does not believe that a mistrial was manifestly necessary, it does contend that defendant, having procured a retrial on the basis of manifest necessity, cannot now reverse course and make the opposite argument. See Johnson v. United States, 318 U.S. 189, 201 (1943) (the law does not "permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him"); see also Stern v. Marshall, 564 U.S. 462, 482 (2011) ("We will not consider his claim to the contrary, now that he is sad.").

In sum, defendant affirmatively sought a mistrial based on a claim of manifest necessity, and he got one. He cannot now colorably assert that double jeopardy bars his reprosecution. And he should

9

not be able to delay his reprosecution simply by filing a notice of appeal that has no "possible validity." Alvarez-Moreno, 657 F.3d at 899. His appeal is frivolous, and it does not divest the Court of jurisdiction. The Court should certify, in writing, that defendant's appeal on double-jeopardy grounds is frivolous and continue presiding over all matters of this case, including trial. See Rodriguez, 891 F.3d at 790-91; LaMere, 951 F.2d at 1109; Chuman, 960 F.2d at 105.[1]

**III. CONCLUSION**

For all the reasons discussed above, this Court is not divested of jurisdiction by defendant's filing of a notice of appeal and the Court should certify in writing that the appeal is frivolous based on clear and long-standing case law.

---

[1] Even if a court determines a double-jeopardy appeal is frivolous and the Ninth Circuit ultimately disagrees with the Court's conclusion, it is harmless error on appeal unless the double-jeopardy claim is actually successful on appeal (not simply non-frivolous). See Rodriguez, 891 F.3d at 791 ("[W]e have in other contexts applied harmless error analysis to district courts' errors in following our divestiture procedures."); United States v. Hickey, 580 F.3d 922, 927 (9th Cir. 2009) (finding error harmless where "Hickey's interlocutory appeal was ultimately a losing one"); Claiborne, 727 F.2d at 851 (finding that the district court erred in finding the appeal frivolous and proceeding with the case, but noting that there would be little point in forcing the district court to repeat actions taken in the interim).