Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994
Email: DeanSteward7777@gmail.com

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | SA CR No. 19-061-JVS<br><br>DEFENDANT'S BRIEF REGARDING DEFENDANT'S NOTICE OF APPEAL [DKT. 852] AND JURISDICTION |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti") by and through his advisory counsel of record, H. Dean Steward, and pursuant to the Court's directive at the Status Conference held on October 12, 2021, hereby files his brief regarding Defendant's Notice of Appeal [Dkt. 852] and the issue of jurisdiction.

Dated: October 14, 2021        Respectfully submitted,

/s/ Michael J. Avenatti

Defendant
MICHAEL JOHN AVENATTI

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

   I.     INTRODUCTION ............................................................................... 1

   II.    FACTUAL BACKGROUND .............................................................. 1

        A. Events Leading to the Court's Finding of a *Brady* Violation and Prejudice, Resulting in a Mistrial......................................................... 1

        B. The Court's Mistrial Ruling .................................................................. 3

        C. The Defendant's Motion to Dismiss and the Court's Ruling on the Motion ....................................................................... 3

        D. The Defendant's Notice of Appeal ....................................................... 5

        E. The October 12, 2021 Status Conference ............................................ 5

        F. The Briefing Schedule Ordered by the Ninth Circuit .......................... 5

        G. The Government's Motion to Dismiss Filed with the Ninth Circuit ... 6

   III.   APPLICABLE LAW AND ARGUMENT  ............................................. 6

        A. The Double Jeopardy Clause of the Fifth Amendment........................ 6

        B. The Court's Order Denying the Motion to Dismiss is Immediately Appealable and Filing of the Notice of Appeal Divests this Court of Jurisdiction..................................................... 10

   IV.   CONCLUSION ................................................................................. 13

CERTIFICATE OF SERVICE ................................................................... Attached

# TABLE OF AUTHORITIES

**Cases:**                                                                                                          **Page**

*Abney v. United States*,
431 U.S. 651 (1977) .......................................................................................................... 10

*Andrews v. King*,
398 F.3d 1113 (9th Cir. 2005) ......................................................................................... 11

*Arizona v. Washington*,
434 U.S. 497 (1978) ........................................................................................................... 7

*Bauder v. State*,
921 S.W.2d 696 (Tex. Crim. App. 1996) ............................................................................ 9

*Benton v. Maryland*,
395 U.S. 784, 795 (1969) .................................................................................................... 6

*Commonwealth v. Smith*,
532 P.A. 177, 182 (1992) .................................................................................................... 9

*Chuman v. Wright*,
960 F.2d 104 (9th Cir. 1992) ............................................................................................ 11

*Dean v. United States*,
1990 U.S. Dist. LEXIS 19954, *24 (E.D. Tex. 1990) .......................................................... 8

*Dominguez v. Kernan*,
906 F.3d 1127 (9th Cir. 2018) .......................................................................................... 10

*Goland v. United States*,
903 F.2d 1247 (9th Cir. 1990) .......................................................................................... 12

*Green v. United States*,
355 U.S. 184 (1957) .................................................................................. 6, 7

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982) ........................................................................................ 11

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Assoc.*,
884 F.2d 504 (9th Cir. 1989) ....................................................................... 12

*Marks v. Clarke*,
102 F.3d 1012 (9th Cir. 1996). .................................................................... 11

*Martinez v. Caldwell*,
644 F.3d 238, 243 (5th Cir. 2011) ................................................................. 8

*Midland Asphalt Corp. v. United States*,
489 U.S. 794 (1989) ...................................................................................... 10

*Moroyoqui v. United States*,
570 F.2d 862 (9th Cir. 1977) ....................................................................... 11

*Neitzke v. Williams*,
490 U.S. 319, 325 (1989) .............................................................................. 12

*Oregon v. Kennedy*,
456 U.S. 667 (1982) .................................................................................. 8, 9

*People v. Batts*,
30 Cal. 4th 660 (2003) .................................................................................. 9

*Pool v. Superior Court*,
139 Ariz. 98, 108-109 (1984) ........................................................................ 9

*State v. Kennedy*,

30 Cal. 4th 660 (2003) ............................................................................................9

*Tibbs v. Florida*,

457 U.S. 31 (1982) ..................................................................................................7

*United States v. Alvarez-Moreno*,

657 F.3d 896 (9th Cir. 2011) ................................................................................12

*United States v. Bates*,

917 F.2 388, 392 (9th Cir. 1990) ............................................................................7

*United States v. Bhatia*,

2007 WL 2795066 (N.D. Cal. 2007) ....................................................................12

*United States v. Burt*,

619 F.2d 831, 838 (9th Cir. 1980) ........................................................................11

*United States v. Chapman*,

524, F.3d 1073 (9th Cir. 2008) ...............................................................................7

*United States v. Dunbar*,

611 F.2d 985, 987-89 (5th Cir. 1980), ..................................................................11

*United States v. Dinitz*,

424 U.S. 600 (1975) ............................................................................................7, 8

*United States v. Fern*,

155 F.3d 1318 (11th Cir. 1998) ..............................................................................8

*United States v. Garner*,

663 F.2d 834, 837-38 (9th Cir. 1981) ...................................................................11

*United States v. Gaytan*,
115 F.3d 737 (1997) ..................................................................................7

*United States v. Jorn*,
400 U.S. 470 (1971)................................................................................7, 8

*United States v. Lopez-Avila*,
No. CR-10-035-TUC-CKJ (BPV), Dkt. 88 (D.Ariz. 2011)................................12

*United States v. Serra*,
882 F.2d 471, 473 (11th Cir. 1989) ..........................................................8

*United States v. Sterba,*
22 F. Supp. 2d 1333 (M.D. Fl. 1998) ......................................................9

*United States v. Wallach (II)*,
979 F.2d 912 (2d. Cir. 1992) ..................................................................9

*United States v. Weems*,
49 F.3d 528, 531 (9th Cir. 1995) ............................................................7

*United States v. Yellow Freight System, Inc.*,
637 F.2d 1248, 1252 (9th Cir. 1980) ....................................................11

*United States v. Zone*,
403 F.3d 1101, 1104 (9th Cir. 2005) ....................................................12

*Wilderness Soc'y v. United States Fish Wildlife Serv.*,
353 F.3d 1051 (9th Cir. 2003) ..............................................................11

**OTHER SOURCES**
4 W. Blackstone, Commentaries .................................................................6

Webster's Third New International Dictionary 972 (3d ed. 1976)
........................................................................................................8, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On October 12, 2021, the Court requested briefing regarding Defendant's Notice of Appeal [Dkt. 852] and whether it divests this Court of jurisdiction. As set forth in detail below and pursuant to abundant authority, the filing of the Notice operates to divest this Court of jurisdiction. This is especially true because in issuing its final written order on the double jeopardy motion, the Court made no finding that the motion was frivolous. Accordingly, the parties and the Court must await the decision of the Ninth Circuit Court of Appeals, which has already issued a prompt merits briefing schedule, *see infra*. p. 5, and also has before it the government's Motion to Dismiss Appeal, or In the Alternative Summarily Affirm, *see infra* p. 6.[1]

### II. FACTUAL BACKGROUND

#### A. Events Leading to the Court's Finding of a *Brady* Violation and Prejudice, Resulting in a Mistrial

In April 2019, defendant Michael John Avenatti ("Mr. Avenatti"), a practicing attorney and the managing partner of the law firm Eagan Avenatti, LLP (fka Eagan O'Malley & Avenatti, LLP, "EA"),[2] was charged with 36 felony counts, including 10 counts of wire fraud relating to his representation of five clients. In furtherance of its case, and in an effort to establish that Mr. Avenatti committed wire fraud and misappropriated client funds, the government obtained and executed broad search warrants in early 2019 to obtain information related to Mr. Avenatti's bank records,

---

[1] In its just-filed brief regarding jurisdiction [Dkt. 858], the government literally copied and pasted large sections of its motion to dismiss filed yesterday with the Ninth Circuit. Accordingly, these arguments are squarely before the Ninth Circuit and the parties and the Court should await that court's ruling.

[2] At all relevant times, Mr. Avenatti owned 100% of the equity of the law firm through another wholly owned entity, Avenatti & Associates, APC.

accounting records, client records, and complete access to the EA servers containing expansive documentation and data related to the alleged client victims.

In order to properly prepare and present his defense, Mr. Avenatti demanded, in April 2019 and immediately after the Indictment was issued, a forensic copy of the servers so that he could obtain the financial information necessary for his defense, properly calculate the fees, costs and advances related to his prior representation of his clients, and present this information to the jury. He did so because a central pillar of his defense is that he was entitled at all times to the attorney's fees he earned in connection with his legal services for his clients, as well as all expenses, costs, and advances made on their behalf, and therefore Mr. Avenatti cannot be convicted of any federal crime for "misappropriating" money that was rightfully his.

The government successfully opposed Mr. Avenatti's initial effort to obtain the data from the servers, and similar repeated efforts for over two-and-a-half years, by repeatedly falsely representing to the defendant and the Court that all *Brady* and *Giglio* material from the servers had been produced. Indeed, the record is replete with **numerous** instances of defendant routinely requesting that the government fully comply with its *Brady* obligations and produce all information favorable to the defense, including all accounting information and all discovery related to the calculation of client costs, expenses and advances. *See, e.g.*, Dkt. 822, pp 3-18; Dkt. 822-1, pp. 3-16. These demands, however, resulted in no action by the government. Instead, for two and a half years, the prosecution team continued to withhold critical financial information at the center of the case, while falsely and recklessly representing to the defendant and to the Court that the government had fulfilled all of its discovery obligations and produced all information favorable to the defense. *See id*. Worse yet, they openly mocked defendant and his counsel, including to the Court, when they raised their concerns relating to the lack of disclosure. These misrepresentations and this suppression continued even after the Court specifically ordered in January 2021 all relevant information to be produced. *See id*.

The trial in this matter began on July 13. As the trial progressed, it became apparent that Mr. Avenatti had not been provided critical discovery owed to him under Rule 16, *Brady, Giglio, Jencks* and this Court's January 25, 2021 Order directing the government to comply with its discovery obligations. Despite this, the government continued to withhold the information, even after Mr. Avenatti specifically raised the missing discovery on repeated occasions early on during the trial. This included raising the issue of the missing financial data (Tabs and QuickBooks) on August 12, 2021 and demanding that it be immediately produced so it could be used to cross exam the government's key expert witness, accountant John Drum. *See,* Trial Tr. (8/12/21, Vol 1. ) pp. 18-19. The government ignored this request and continued to withhold the data; there is nothing suggesting the government even made any effort to look for the data in the days that followed.

### B. The Court's Mistrial Ruling

After defendant elicited significant trial testimony from Mr. Drum and other witnesses (including the lead government agents) demonstrating that no effort had been made to review or produce the key financial data that had been in the possession of the government for well over two years, the Court granted, in part, a motion by the defendant and declared a mistrial on August 24, 2021. [Dkt. 780] The Court's ruling, which occurred approximately six weeks into the trial, found that the government had committed a *Brady* violation, the defendant had been prejudiced, and the trial could not continue due to what had transpired. *See* Dkt. 780; Trial Tr. (8/24/21, Vol. 1) pp. 56-64. As a result, the Court ordered a new trial and permitted defendant to file a motion and submit briefing arguing that any re-trial was barred by the double jeopardy clause and the government's conduct. *See* Trial Tr. (8/24/21, Vol. 1) pp. 65-66.

### C. The Defendant's Motion to Dismiss and the Court's Ruling on the Motion

On September 1, 2021, the Court granted a stipulated request for an expedited briefing schedule regarding defendant's motion. [Dkt. 802]. On September 20, 2021,

3

Mr. Avenatti filed a 30-page Motion to Dismiss Due to Double Jeopardy, Prosecutorial Misconduct, Contempt of this Court's January 25, 2021 Order [Dkt. 408], and Violations of Defendant's Right to Due Process. [Dkt. 822]. The motion is replete with citations to the law and the facts and meticulous with its citations to the factual and trial record. Among other arguments, the defendant repeatedly asserted that the government had goaded the defendant into seeking a mistrial and that double jeopardy prevented any retrial. *See*, *e.g.*, Dkt. 822, pp. 28-30, 36-37. Contemporaneous with the motion, defendant also filed a 16-page declaration attesting to various facts and documents, together with sixteen (16) exhibits totaling 555 pages. [Dkt. 822-1]. On September 24, 2021, the government filed an Opposition [Dkt. 825] but failed to respond to various arguments raised in the motion and likewise failed to provide any declaration from any member of the prosecution or investigative team. *Importantly, the government did not claim in its opposition that the defendant's double jeopardy arguments were "frivolous," "baseless," or "non-colorable," nor did the government request that the Court make any such finding in connection with deciding the motion*.

On September 29, 2021, the defendant filed a Reply, which included a request for an evidentiary hearing and again raised the double jeopardy claims and defendant's goading arguments. *See*, *e.g.*, Dkt. 828, pp. 15-17.

On October 4, 2021, a hearing on the motion was held but no evidentiary hearing occurred, no questions were asked of the prosecutors, and no argument was offered by the government. Nor did the prosecutors request any specific finding. Instead, the government stated: "We'll submit on your tentative and our filings, Your Honor."[3] Trial Tr. (10/4/21, Vol. 1) p. 6. Later that day, the Court issued its final written Order, which included various findings and denied defendant's motion. [Dkt. 838]. *Critically, the Order does not find that the motion was "frivolous," or "non-colorable."*

---

[3] Prior to the hearing, the Court issued a tentative ruling on the Motion, which was identical to the Court's final, written Order with one minor exception (the deletion of a footnote).

### D. The Defendant's Notice of Appeal

On the morning of October 12, 2021, eight days after the Court's written, final Order was docketed, defendant filed his Notice of Appeal of the Court's Order to the Ninth Circuit Court of Appeals [Dkt. 852]. Therein, Defendant cited directly on-point precedent from the Supreme Court and the Ninth Circuit holding that the denial of the motion to dismiss was immediately appealable under the collateral order doctrine and well-settled case law.

### E. The October 12, 2021 Status Conference

Later in the morning of October 12, 2021, the Court held a status conference with the parties. During the conference, the Court raised the Notice of Appeal and inquired as to whether the Court retained jurisdiction. In response, the government stated, "Our preliminary research shows this Court still has jurisdiction. Your Honor has jurisdiction until you either decide not to or the Court of Appeals tells you not to…It doesn't change anything…we can proceed as we currently are here." Trial Tr. (8/12/21, Vol. 1) p. 18. Defendant disagreed that this was an accurate recitation of the law and informed the Court that the filing of the notice had divested the Court of jurisdiction except under circumstances that were absent from this case. Mr. Avenatti stated, "Your Honor, I respectfully disagree. I think the Court is – upon notice of the filing and notice of an interlocutory appeal,… the Court is divested of its jurisdiction except under very limited circumstances which do not exist [here]." Trial Tr. (8/12/21, Vol. 1) p. 18. The Court subsequently requested briefing from the parties relating to the issue.

### F. The Briefing Schedule Ordered by the Ninth Circuit

By noon that same day, the Ninth Circuit issued a prompt briefing schedule on defendant's appeal as follows: (1) November 2, 2021 – Transcripts shall be ordered; (2) December 2, 2021 - Transcript shall be filed by court reporter; (3) January 11, 2022 - Appellant's opening brief and excerpts of the record shall be served; (4) February 10, 2022 - Appellee's answering brief shall be served; and (5) Appellant's Reply Brief due 21 days after service of answering brief.

### G. The Government's Motion to Dismiss Filed with the Ninth Circuit

Yesterday, on October 13, 2021, the government filed a Motion to Dismiss Appeal, or In the Alternative Summarily Affirm, with the Ninth Circuit. *See*, *e.g.*, Case No. 21-50225, Dkt. 4-1. Significant portions of that motion are identical to the government's just filed brief before this court. [Dkt. 858.] Defendant has agreed to an expedited briefing schedule for the motion and has agreed to file his opposition on October 22, 2021.

## III. APPLICABLE LAW AND ARGUMENT

### A. The Double Jeopardy Clause of the Fifth Amendment

The Double Jeopardy Clause of the Fifth Amendment protects against multiple criminal prosecutions for the same offense. U.S. Const. Amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."). "The fundamental nature of the guarantee against double jeopardy can hardly be doubted. Its origins can be traced to Greek and Roman times, and it became established in the common law of England long before this Nation's independence." *Benton v. Maryland*, 395 U.S. 784, 795 (1969) (citations omitted). According to Blackstone, who codified the doctrine in his Commentaries, it "is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence." 4 W. Blackstone, Commentaries *335.

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . ." *Green v. United States*, 355 U.S. 184, 187-188 (1957). "This underlying notion has from the very beginning been part of our constitutional tradition. Like the right to trial by jury, it is clearly 'fundamental to the American scheme of justice.'" *Benton*, 395 U.S. at 796.

The protections of the double jeopardy clause attach once a jury is empaneled and

sworn. *United States v. Jorn*, 400 U.S. 470, 479 (1971). Once jeopardy attaches, the defendant has the right to have his case presented to and decided by <u>that jury</u>. *United States v. Gaytan*, 115 F.3d 737, 742 (1997); *See also, United States v. Bates*, 917 F.2 388, 392 (9th Cir. 1990). As a general rule, "the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." *Id.* The core of the double jeopardy's prohibition on multiple prosecutions "is denying the prosecution a second opportunity to supply evidence which it failed to muster in the first proceeding." *United States v. Weems*, 49 F.3d 528, 531 (9th Cir. 1995); *citing Tibbs v. Florida*, 457 U.S. 31 (1982). When the "initial prosecution ends in mistrial, a subsequent retrial will increase the emotional and financial burden imposed on the defendant, and may give the state an unfair opportunity to tailor its case based on what it learned the first time around." *United States v. Chapman*, 524 F.3d 1073, 1081 (9th Cir. 2008); *quoting Arizona v. Washington*, 434 U.S. 497, 503-504 (1978); *See also, Green*, 355 U.S. at 187 (Multiple trials "enhance the possibility that even an innocent [defendant] may be found guilty"). Criminal defendants "will not be required to live in a 'continuing state of anxiety and insecurity,' without a definite resolution of the criminal charges against them." *Gaytan*, 115 F.3d at 742; *citing United States v. Dinitz*, 424 U.S. 600 (1975).

While the double jeopardy clause unequivocally prohibits a second trial following an acquittal, "when a mistrial is declared, the rules are more complex." *Gaytan*, 115 F.3d at 742. A defendant's own motion for a mistrial typically removes this barrier to a second prosecution. However, this principal does not apply when the prosecution engages in misconduct, which provokes the defendant to request the mistrial.

The Supreme Court has made it clear that when the prosecution engages in bad-faith tactics to bait the defendant into moving for a mistrial, the government is barred by Double Jeopardy:

> "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It

bars retrials where 'bad-faith conduct by judge or prosecutor,' threatens the '[harassment] of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *Dinitz*, *supra*, 424 U.S. at 611; *citing United States v. Jorn, supra,* 400 U.S. at 485.

When the "government conduct in question is intended to 'goad' the defendant into moving for a mistrial," the defendant may "raise the bar of double jeopardy to a second trial after having succeeded in aborting the first one on his own motion." *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). The inquiry into the prosecution's intent is inferred from the objective facts and circumstances of the case. *Id.* at 679-80 (Powell, J. concurring) ("Because 'subjective' intent often may be unknowable, I emphasize that a court – in considering a double jeopardy motion – should rely primarily upon the objective facts and circumstances of a particular case."). The term "goad" is defined in part as "to drive, incite or rouse." *United States v. Fern*, 155 F.3d 1318, 1324, fn. 7 (11th Cir. 1998); *citing* Webster's Third New International Dictionary 972 (3d ed. 1976). When used as a noun, goad is "something that urges or stipulates like a goad: spur, stimulus." *Id.*

Circuit and district courts have found that prosecutorial *goading* is present where, as here, "the conduct of the government in bringing about the original mistrial is due to 'gross negligence or intentional misconduct.'" *Fern*, 155 F.3d at 1324, fn. 7; *citing United States v. Serra*, 882 F.2d 471, 473 (11th Cir. 1989)(holding that in order to support a motion to dismiss indictment on double jeopardy grounds the defendant must establish that the government engaged in "gross negligence or intentional misconduct."); *Dean v. United States*, 1990 U.S. Dist. LEXIS 19954, *24 (E.D. Tex. 1990)("when an initial prosecution has been terminated by a mistrial granted on the defendant's motion, a second trial is barred … [if] 'there is gross negligence or intentional misconduct on the part of the government which has seriously prejudiced the defendant.'"); *Martinez v. Caldwell*, 644 F.3d 238, 243(5th Cir. 2011)(the government is barred from re-prosecution following a defendant's request for mistrial if the defense presents evidence

8

of "bad faith" <u>or</u> an "intent to goad."). A course of intentional misconduct, discovered serendipitously by the defense during trial, *goads* a defendant into moving for a mistrial, bars re-prosecution and requires the dismissal of the indictment. *See*, *e.g.*, *United States v. Sterba*, 22 F. Supp. 2d 1333, 1343 (M.D. Fl. 1998); *United States v. Wallach (II),* 979 F.2d 912 (2d. Cir. 1992)(a defendant's double jeopardy rights are implicated not only when prosecutor intends to and does provoke a mistrial, but also when a prosecutor intentionally commits misconduct in order to deprive the defendant of an acquittal that the prosecutor believed was likely to occur).

    Various state courts have similarly expanded the Supreme Court's interpretation of the Fifth Amendment Double Jeopardy Clause and found that government misconduct, regardless of a specific intent to goad the defendant, may warrant the dismissal of the indictment and bar further prosecutions. *See, e.g., People v. Batts*, 30 Cal. 4th 660, 696 (2003)(California Supreme Court determined that double jeopardy clause bars subsequent prosecution when (1) prosecution engages in misconduct for the purpose of triggering a mistrial; or, (2) when the prosecution intentionally and knowingly commits misconduct to thwart a potential acquittal); *see also, Prosecutorial Misconduct and Constitutional Remedies*, 77 Wash. U. L, Q. 713 (Fall, 1999); *citing Bauder v. State*, 921 S.W.2d 696, 699(Tex. Crim. App. 1996)(en banc)("a successive prosecution is jeopardy barred after declaration of mistrial at the defendant's request, not only when the objectional conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request."); *Commonwealth v. Smith*, 532 P.A. 177, 182 (1992)(the Pennsylvania Supreme Court determined the double jeopardy clause "prohibits retrial of a defendant when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial."); *State v. Kennedy*, 666 P.2d 1316, 1326 (Or. 1983)(Oregon Supreme Court determined that retrial

is barred by double jeopardy when "improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal."); *Pool v. Superior Court*, 139 Ariz. 98, 108-109 (1984)(The Arizona Supreme Court determined that double jeopardy bars further prosecution despite defendant's own request for a mistrial when (1) mistrial is granted because of improper conduct or actions by prosecution, (2) conduct is not merely the result of legal error, negligence, mistake, but amounts to intentional conduct, and (3) prejudicial ensues which cannot be cured by means short of a mistrial).

> **B. The Court's Order Denying the Motion to Dismiss is Immediately Appealable and the Filing of the Notice of Appeal Divests This Court of Jurisdiction**

Pursuant to the collateral order doctrine and the Supreme Court's decision in *Abney v. United States*, 431 U.S. 651, 662 (1977) and its progeny, the denial of defendant's motion to dismiss on double jeopardy claims is immediately appealable on an interlocutory basis. *See also United States v. Alvakez-Moreno*, 657 F.3d 896, 899 (9th Cir. 2011) (citing *Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989) and *Abney* while finding that denials of a motion to dismiss on double jeopardy grounds have "long been considered immediately appealable"). The reason for this is clear – because to hold otherwise would render the protections of the Fifth Amendment and the Double Jeopardy Clause near meaningless. *See, e.g.*, *Dominguez v. Kernan*, 906 F.3d 1127, 1132-33, n. 7 (9th Cir. 2018):

> As the Supreme Court has long recognized, "the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense." *Abney v. United States*, 431 U.S. 651, 660-61, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). If this right is not vindicated ***before trial***, a vitally important aspect of the guarantee is forever lost. As the Court explained in *Abney*, because it "focus[es] on the 'risk' of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not

be forced . . . to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." *Id*. at 661. "Obviously, these aspects of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before [the prosecution could be challenged]; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit." *Id*. at 662. (emphasis in original).

Where an interlocutory order is immediately appealable, as here, the filing of a notice of appeal divests the district court of jurisdiction. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982); *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992); *United States v. Yellow Freight System, Inc.*, 637 F.2d 1248, 1252 (9th Cir. 1980), *citing Moroyoqui v. United States*, 570 F.2d 862, 864 (9th Cir. 1977), cert. denied, 435 U.S. 997 (1978); *United States v. Garner*, 663 F.2d 834, 837-38 (9th Cir. 1981); *United States v. Burt*, 619 F.2d 831, 838 (9th Cir. 1980).

Only where a court has made a <u>written</u> finding that a motion was frivolous, may the court retain jurisdiction. This is commonly referred to as the *Dunbar* rule and it is followed in the Ninth Circuit. *See*, *e.g.*, *United States v. Dunbar*, 611 F.2d 985, 987-89 (5th Cir.), cert. denied, 447 U.S. 926, 100 S. Ct. 3022, 65 L. Ed. 2d 1120 (1980) (en banc)(stating that finding of frivolity is to be made at the time of deciding the motion).

A motion is frivolous only when it is "totally devoid of merit." *Dunbar*, 611 F.2d at 987. A frivolous claim is described as "unfounded" and "baseless." *Marks v. Clarke*, 102 F.3d 1012, 1017 n.8 (9th Cir. 1996). Other courts have defined "frivolous" as having little weight or importance and having no basis in law or fact. *See*, *e.g.*, *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005)("Yet there is no Ninth Circuit case law on the 1996 Amendments to the PLRA that explains precisely what the terms 'frivolous' or 'malicious' mean. In defining these terms, we look to their 'ordinary, contemporary, common meaning.' *Wilderness Soc'y v. United States Fish Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (en banc) (internal quotation marks and citations omitted). Thus, a case is frivolous if it is 'of little weight or importance: having no basis in law or fact.'

11

Webster's Third New International Dictionary 913 (1993)"); *see also Goland v. United States*, 903 F.2d 1247, 1258 (9th Cir. 1990) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) for the proposition that a "complaint is frivolous where none of the legal points are arguable on their merits."); *Les Shockley Racing, Inc. v. Nat'l Hot Rod Assoc.*, 884 F.2d 504, 509-10 (9th Cir. 1989) (defining a "frivolous" pleading or motion for the purposes of sanctions under Fed. R. Civ. P. 11 as one where, "a competent attorney after a reasonable investigation could not have determined that a well-founded basis in fact and in law or a good faith argument for extension of law supported the filing").

The Ninth Circuit has adopted an extremely lenient standard when accessing the validity of a double jeopardy claim on appeal, declaring: "[a] double jeopardy claim is colorable if it has **'some possible validity.'**" *United States v. Zone*, 403 F.3d 1101, 1104 (9th Cir. 2005)(emphasis added)(quoting *United States v. Sarkisian*, 197 F.3d 966, 983 (9th Cir. 1999)). *See also*, *United States v. Alvarez-Moreno*, 657 F.3d 896, 899 (9th Cir. 2011); *United States v. Lopez-Avila*, No. CR-10-035-TUC-CKJ (BPV), Dkt. 88 (D.Ariz. 2011)(finding double jeopardy claim to be weak but colorable under the *Zone* standard); *United States v. Bhatia*, 2007 WL 2795066 (N.D. Cal. 2007)(finding claim similar to double jeopardy to be weak but not frivolous under the Ninth Circuit's lenient standard).

Here, there was no written finding establishing that the motion to dismiss was frivolous, let alone one issued prior to the filing of the Notice of Appeal. Nor could there be[4] in light of (a) the Court's written, final Order denying the motion, which contains no finding of frivolity and makes other findings that support some of the arguments in the motion, (b) the extensive evidence, briefing and citation to the law and the facts that defendant submitted in connection with the motion *see*, *e.g.*, Dkt. 822, 822-1, 828; (c) the absence of any competent *evidence* submitted by the government (i.e., a declaration) in opposition to the motion; (d) the *de minimus* opposition offered by the government to

---

[4] The Court has not requested briefing regarding whether defendant's motion was frivolous and therefore defendant does not address this issue in detail.

refute defendant's arguments regarding double jeopardy and goading;[5] (e) the absence of any evidentiary or similar hearing during which the prosecutors' conduct and intent were examined; (f) the trial record; and (g) the findings of the Court in granting the mistrial on August 24.  Further, it cannot be seriously stated that the motion lacks "some possible validity" and therefore is not colorable.

For each of these reasons, the Court is divested of jurisdiction.

### IV. CONCLUSION

The Court previously issued a final, written Order denying defendant's motion.  The Order did not find the motion to be frivolous, not colorable or without any basis in law or fact or "devoid of all merit."  Defendant subsequently appealed that final Order pursuant to well-settled law, which provides for an interlocutory appeal.  Accordingly, the Court is divested of jurisdiction until the Ninth Circuit determines the merits of defendant's appeal and the government's pending motion to dismiss the appeal.

Dated:  October 14, 2021                     Respectfully submitted,

                                             /s/ Michael J. Avenatti

                                             Defendant
                                             MICHAEL JOHN AVENATTI

---

[5] In its opposition, the government spilled considerable ink in addressing the manifest necessity standard, which had no applicability to defendant's Motion, and offered no evidence regarding the prosecutors' subjective intent, which is highly relevant to the goading analysis, or explanation for the failure to produce (or even look for) the critical financial data for 10 days after defendant raised the issue in the middle of trial on August 12, 2021.

13

# CERTIFICATE OF SERVICE

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action. I have caused, on October 14, 2021, service of the:

DEFENDANT'S BRIEF REGARDING DEFENDANT'S NOTICE OF APPEAL [DKT. 852] AND JURISDICTION

on the following party, using the Court's ECF system:

AUSA BRETT SAGEL AND AUSA ALEXANDER WYMAN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 14, 2021

/s/ H. Dean Steward
H. Dean Steward