UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,   ) CERTIFIED TRANSCRIPT
               Plaintiff, )
  vs.                       )
                             ) SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,       )
              Defendant.  )
-------------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

October 15, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

```
 1  APPEARANCES OF COUNSEL:

 2  For the Plaintiff:

 3  NICOLA T. HANNA
    United States Attorney
 4  BRANDON D. FOX
    Assistant United States Attorney
 5  Chief, Criminal Division
    ALEXANDER WYMAN
 6  Assistant United States Attorney
    Major Frauds Section
 7  1100 United States Courthouse
    312 North Spring Street
 8  Los Angeles, CA  90012
    (213) 894-6683
 9
    BRETT A. SAGEL
10  Assistant United States Attorney
    Ronald Reagan Federal Building
11  411 West Fourth Street, Suite 8000
    Santa Ana, CA  92701
12  (714) 338-3598

13  For the Defendant:

14  MICHAEL JOHN AVENATTI, PRO SE

15  H. DEAN STEWARD, ADVISORY COUNSEL
    H. DEAN STEWARD LAW OFFICES
16  107 Avenida Miramar, Suite C
    San Clemente, CA  92672
17  (949) 481-4900

18

19

20

21

22

23

24

25
```

1    SANTA ANA, CALIFORNIA; FRIDAY, OCTOBER 15, 2021; 9:01 A.M.

2              THE CLERK:  Calling Item No. 3, SACR-19-00061-JVS,

3    United States of America versus Michael John Avenatti.

4              Appearances on behalf of the government, please.

5              MR. SAGEL:  Good morning, Your Honor.  Brett Sagel

6    on behalf of the United States, and on the phone is AUSA

7    Alex Wyman.

8              THE COURT:  Good morning.

9              THE CLERK:  Appearance on behalf of the defendant,

10   please.

11             MR. AVENATTI:  Good morning, Your Honor.

12   defendant Michael Avenatti present by telephone, along with

13   Ms. Cummings-Cefali, and my understanding is that Advisory

14   Counsel, Mr. Dean Steward, is there in the courtroom.

15             THE COURT:  Good morning.

16             MR. STEWARD:  I'm here, Your Honor.  Dean Steward,

17   Advisory Counsel, for Mr. Avenatti.

18             THE COURT:  Good morning.

19             I received the parties' briefs with respect to the

20   issue of the Court's continuing jurisdiction in light of the

21   Notice of Appeal that Mr. Avenatti has filed.

22             I also note that the government has brought in the

23   Ninth Circuit a Motion for Dismissal of Summary Affirmance.

24   It appears there is going to be a fairly quick briefing

25   schedule on that motion.

As far as my role as district judge, I find that I have been diversed of jurisdiction by virtue of the Notice of Appeal. Double jeopardy is a unique issue that makes it appropriate for an interlocutory appeal, and it's fairly clear in the case law and not really contested. The only exception to that is if the District Court determines that the appeal is frivolous.

I do not make such a finding as part of entering my ruling on the double jeopardy motion, and I'm unable to make such a finding now. I found a Brady violation with respect to a very important range of documents relating to the financial affairs of Mr. Avenatti's firm. I think that conclusion alone would indicate that the appeal is not frivolous.

Mr. Avenatti raises a number of other issues besides the financial data relative to his argument that the Court should not exercise its discretion to conduct a new trial.

I think there is also a substantial question as to with what the term "goading" means. I found that the government did not take any action to provoke the defendant into seeking a mistrial. Other courts have interpreted the term "goading" more extensively such that an intent to provoke a Motion for Mistrial is not required to establish "goading."

         Accordingly, given the Brady violation that the Court found and the somewhat undeterminate definition of the term "goading," I find that the appeal is not frivolous. For that reason, the Court vacates the November 2 trial date. The Court also vacates all pending motions to be renoticed once jurisdiction is restored to this Court if jurisdiction is restored to this Court.

         I believe that I still have jurisdiction to consider nonsubstantive matters that do not affect in any way the Notice of Appeal and the issues raised by Mr. Avenatti on appeal. Among those ministerial matters is continued document production.

         I had asked for a report yesterday, Thursday, the 14th, by noon with respect to what TABS or QuickBooks material with respect to the four or five individual clients appeared in the production and subsequent to August 23. I received a day early -- maybe it was on time. I received a response from Mr. Avenatti filed in-camera. I also received an application from the government to continue the date for its response.

         I grant the government a continuance of 30 days to prepare its response. I'm prepared to address the rest of the government's ex parte application with regard to its Rule 17 subpoena.

         First, I will ask is there any objection on

1  jurisdictional grounds for me to consider that portion of
2  the government's application?
3          MR. AVENATTI:  Your Honor, this is the defendant,
4  Michael Avenatti.
5          Provided there would be no argument that somehow
6  this is an acquiescence or acknowledgment that the Court
7  still retains jurisdiction, I have no objection.
8          THE COURT:  Okay.  Well, I'm prepared to quash the
9  Rule 17 subpoena.  If the government wants to brief it
10 further, I would welcome that and hold in abeyance any
11 ultimate decision, but it seems to me that the government is
12 asking a third party to perform certain work for the
13 government.  Clearly, the subpoenas aren't -- a Rule 17
14 subpoena doesn't have that function.
15         Also, I think there is a substantial question as
16 to whether -- Software Technology, LLC, isn't a consultant
17 to the defendant such that there would be an invasion of
18 work product and/or privileged materials to compel under any
19 rubric that firm to comply.
20         So with those thoughts, I would be happy to hear
21 you.  It's the government's application.
22         MR. SAGEL:  Well, I will start, Your Honor, with
23 the application that we asked Rule 17 to be enforced.  What
24 we were asking for was at the request of the company.  What
25 they had said to us is they do not mind cooperating.  They

```
 1   do not want to be on the end of a litigation by the
 2   defendant, so they need the Court's order to give them
 3   coverage to provide the assistance they want.
 4           THE COURT:  Is that firm a consultant to the
 5   defendant?
 6           MR. SAGEL:  No, not that they have ever said to
 7   us.
 8           THE COURT:  Is that accurate, Mr. Steward?
 9           MR. STEWARD:  I'm not sure, Your Honor.  You will
10   have to ask Mr. Avenatti.
11           THE COURT:  Mr. Avenatti.
12           MR. AVENATTI:  Your Honor, let me be clear about
13   the role of the software company.  The law firm and me
14   contracted with the software company when I was managing the
15   law firm as it relates to compiling the data, purchasing
16   their software, technical support, and the like.  They have
17   not served as a consultant since the Indictments were issued
18   in connection with the case, but they certainly served as a
19   consultant for many years when we had the software at the
20   firm.
21           THE COURT:  Okay.
22           Mr. Sagel.
23           MR. SAGEL:  I would also point out, Your Honor, we
24   don't have the possession of it, but the firm in which we're
25   setting the software or the TABS data especially for the
```

1    clients we are talking about is Eagan Avenatti.  It's not
2    the defendant that we briefed extensively in various other
3    things.  It would be the bankruptcy trustee who would need
4    to assert any claim for that.  We have also said that to the
5    company.  They just obviously want coverage for themselves
6    so that they are not -- even if it's a frivolous civil
7    lawsuit later, they are not subjecting themselves to that by
8    providing just the technical assistance.
9            The Rule 17 subpoena was their request to produce
10   what they said they would need to produce.  I'm okay with
11   that being quashed, because they wanted that as initially
12   what they wanted as a Court order.  They have since changed
13   what they claim they need in that Court order.
14           We're just trying to comply with what Your Honor
15   wants.  As we sit here right now, the thumb drives and the
16   flash drives that were produced to the defendant with the
17   TABS data that came from the forensic server in Washington,
18   D.C. and then locally -- when it's extracted the way it is,
19   you cannot look at it other than with the software itself.
20           To merge them -- and, again, I'm the third,
21   fourth, fifth line of the messenger at this point.  From
22   what I have been told, the software we now hold is the 2019
23   or 2020, whatever their latest version of the software is.
24   The TABS data was produced on -- I may be getting the years
25   wrong but the 2011, 2014, and 2016 version.  We're just

1     trying to make sure that (a) we can see the data on it so
2     that we can show Your Honor when we produce it to the
3     defense if we are going to use it; and (b) make sure we
4     haven't changed any data by using it on newer software.
5              That's the only thing that we are asking of the
6     company, is to be able to assist us in taking the raw data
7     that we have, none of which is what we are asking them to
8     produce, and to -- probably it's the wrong term -- merge it
9     with the software that we have so it's in a readable,
10    unchanged format so that it can be printed, produced, shown,
11    what have you, both for Your Honor's direction and any
12    discovery obligations we have.  That's all that we are
13    asking to do.
14             We obviously have what we produced to you and to
15    the defense previously.  The screenshots that we got from
16    the stand-alone forensic computer on August 22nd or 23rd,
17    those have been produced.  The subsequent productions of the
18    flash drives and the thumb drives that came off those
19    computers that were produced, we have not seen those, and we
20    are working with the company trying to do that.
21             THE COURT:  So would you use their services only
22    with respect to documents that have been disclosed to the
23    Prosecution Team?
24             MR. SAGEL:  To the defense.
25             THE COURT:  No, I'm saying to the Prosecution

1  Team.  I mean, Mr. Fitzgerald pointed out I think earlier in
2  the week that not all of the documents that have come to the
3  fore since August 23 are materials that have been passed to
4  the Prosecution Team, and he pointed out that those would
5  have to be reviewed to be screened for privilege and other
6  materials that shouldn't come to the Prosecution Team.
7          So I guess my question is if you are only seeking
8  to obtain their services with respect to the materials in
9  the possession of the Prosecution Team, it seems to me that
10 that assistance would be appropriate.
11         MR. SAGEL:  That is correct, Your Honor.  I could
12 even limit it further in one second.  It's only the stuff
13 that has been produced to us, which is a mirror of what has
14 been produced to the defense to which has been determined by
15 the privilege review based on discussions in this court and
16 other reasons, none of which I'm always privy to, that these
17 do not contained privileged information and can be shared.
18 So, yes, to the first part of the question.
19         The second part which I think Your Honor has more
20 so directed and which is what our task will be is when we
21 take the data -- or when we upload the data, we are looking
22 for four or five names, and from what we can tell, we are
23 only going to find three.  So we're not looking at really
24 anything other than Geoffrey Johnson, Gregory Barela, Alexis
25 Gardner, and hypothetically if they exist Michelle Phan and

```
 1   Long Tran.
 2            THE COURT:  What about Mr. Johnson?
 3            MR. SAGEL:  I thought I named him.
 4            THE COURT:  Oh.
 5            MR. SAGEL:  Yes.  So that's all we are looking.
 6   Even though the TABS data itself that has been extracted
 7   from the forensic software may include 100 other names and
 8   clients, we're not looking in any of those files and have no
 9   intention of looking in any of those files.
10            To the extent that the defendant believes there is
11   something in another client's file that relates to these
12   clients, he would probably either alert that through
13   reciprocal discovery obligations, or it will come up some
14   other way.  But we don't plan on looking at anything other
15   than those that appear to be identified by the client names,
16   and from the initial review on, again, I think it was
17   August 23, the ones that were identified by Johnson 001 or
18   Barela 001.  So they could be identified to the named
19   clients with regard to the ten wire fraud counts.  That's
20   all we would be looking at.
21            THE COURT:  It seems that narrow focus addresses
22   the concerns in Mr. Avenatti's opposition to the ex parte
23   application at Docket 847.
24            MR. AVENATTI:  Can I respond, Your Honor?
25            THE COURT:  Yes, please.
```

```
 1              MR. AVENATTI:  I have some comments, and then I
 2   have a suggestion.  The comments are as follows.  Your
 3   Honor, what the government is seeking to do is gain
 4   unfettered access to the entire TABS database of all the
 5   clients of which they were thousands at the law firm.
 6              THE COURT:  Sir, that's inaccurate.
 7              MR. AVENATTI:  Not -- no --
 8              THE COURT:  Just a minute.  Are you contending
 9   that the government has privileged documents with respect
10   to -- that is, the Prosecution Team -- with respect to other
11   clients other than those in issue here?
12              MR. AVENATTI:  Yes, and if I could explain why I'm
13   asserting that.  The TABS data that has now been provided by
14   the Privilege Review Team to the Prosecution Team is not
15   client specific.  The Privilege Review Team we have now
16   learned gave the entire TABS database of all of the client
17   cost information for all of the clients of the law firm to
18   the Prosecution Team, because the Privilege Review Team did
19   not segregate out the specific client data for the five
20   clients.
21              So now the Prosecution Team has this entire
22   database of all of the confidential privileged financial
23   information of all of the firm's clients since its inception
24   in its possession.  It wants the software company to load
25   that entire database into the software so that the
```

1    government can then according to Mr. Sagel look for the data
2    for the five clients.
3             I have no objection obviously to an examination of
4    the data for the five clients, but I don't believe it is
5    appropriate or legal for the government to have -- the
6    Prosecution Team to have unfettered access to all of the
7    client data for all of the other clients, especially when
8    those clients have not received notice.  And that's one of
9    the issues that the software company is evidently concerned
10   about based on my review of the correspondence.  So those
11   are my objections.
12            The solution I think is as follows, and this is
13   what I would propose, Your Honor.  The Privilege Review Team
14   has the software and the entirety of the data on a computer
15   in the U.S. Attorney's Office in Los Angeles.  There is no
16   reason why that the government investigators, prosecutors,
17   and its expert cannot go to that office and review the data
18   only relating to the five clients in the Indictment under
19   the supervision of the Privilege Review Team to ensure that
20   no other client's data is accessed.
21            Frankly, I'm surprised if hasn't already been
22   done, but that's neither here nor there.  That's the
23   solution.  They can simply go to the U.S. Attorney's Office
24   in Downtown Los Angeles and review the data on that
25   terminal, export it, print it, do whatever they need to do

```
 1   with it.
 2             THE COURT:  So are you suggesting that neither the
 3   Prosecution Team nor the Privilege Review Team need the
 4   assistance of Software Technology, LLC.?
 5             MR. AVENATTI:  Yes, for the reason that I just
 6   stated, because the data is available on this terminal in
 7   the U.S. Attorney's Office in Downtown Los Angeles.
 8             THE COURT:  You also suggest in your Memorandum in
 9   Opposition that the Court appoint a special master to
10   undertake this task.
11             MR. AVENATTI:  Your Honor, that's my preference,
12   but in the interest of time and efficiency, I have no
13   objection to the Privilege Review Team supervising the
14   access of the prosecutors and the expert to ensure that
15   another client's data is accessed.  I have no objection to
16   them supervising the process at this point.
17             THE COURT:  Do you have any objection to the
18   Prosecution Team seeking the assistance of the Software
19   Technology firm?
20             MR. AVENATTI:  I do if the intent is as has been
21   stated in the application, which is to get access to the
22   entire database, as opposed to access to any information
23   pertaining to the clients in the Indictment.
24             THE COURT:  So does that mean you have no
25   objection to the extent the assistance is limited and
```

```
 1   focused to the clients involved in Counts 1 through 10?
 2            MR. AVENATTI:  I have no objection provided that
 3   that is a transparent process and that we have visibility
 4   into that process.
 5            THE COURT:  What does that mean?
 6            MR. AVENATTI:  Well, that means I think that if
 7   the technology company is going to assist either party, it
 8   should basically be a neutral third party that assists
 9   either party, either the government or the defendant, to the
10   extent that access is needed to the software.
11            Frankly, I think if we are not going to have the
12   supervision of the Privilege Review Team, if that idea is
13   not going to be taken up, then I think perhaps the Court
14   should issue an order permitting both parties to use the
15   technology company so that the technology company can
16   extract the data relating to the five clients and provide it
17   to both the government and the defense.
18            THE COURT:  Any objection to that?
19            MR. SAGEL:  That's all we have ever wanted, so,
20   no, no objection from the government.
21            THE COURT:  All right.  Why don't you tender me an
22   order that captures that limited function that the Court
23   will permit.
24            MR. SAGEL:  Yes, Your Honor, I have no problem I
25   guess --
```

```
 1              THE COURT:  I want to have in writing what the
 2   ground rules are so everybody understands them, including
 3   the Court.
 4              MR. SAGEL:  Understood, Your Honor.
 5              I guess my hesitation as I stand here being
 6   someone who is in the dark -- presumably stuff has been
 7   provided to the Court dealing with these clients from this
 8   information.  We have no idea if through this they're going
 9   to be providing us the universe.  We are just going to have
10   to trust the process.  I set that out for Your Honor, that
11   if there is something that is missing, we need to know --
12   since we aren't the ones actually doing it, we can't double
13   check the work.
14              THE COURT:  Well, I'll look for your order on it.
15              MR. SAGEL:  Understood, Your Honor.
16              THE COURT:  Let me say that as part of my
17   administrative and supervisorial duties, I direct the
18   government to continue its efforts with respect to reviewing
19   the remaining at this point 2.2 million files.  I think
20   that's the number Mr. Fitzgerald used earlier in the week.
21              MR. SAGEL:  I'm not sure that there was ever a
22   doubt about looking at them.  It was just a matter of
23   whether the indexing of them was going to continue.
24              THE COURT:  I direct that to go forward.
25              MR. SAGEL:  Okay.
```

1          THE COURT:  Depending on the result of the motion
2     in the Ninth Circuit and the Ninth Circuit appeal, I'm going
3     to review the status of production.  At that point, when the
4     jurisdiction one way or another is returned to this Court,
5     and in light of the facts with respect to production that
6     exist at that time, we're going to move forward very
7     promptly to a new trial.  I can't tell you what that date is
8     because I don't know the status of the production at that
9     point in time.  But once I have jurisdiction, we're going to
10    move.  So, therefore, the parties need to go keep going on
11    document production and document analysis on both sides.
12         MR. AVENATTI:  Understood, Your Honor.
13         THE COURT:  Okay.  Anything else we ought to take
14    up today?
15         MR. SAGEL:  I want to clarify -- and I'm assuming
16    Your Honor is agreeing with this -- the Ninth Circuit case
17    law that I think that you are referring to is Nascimento and
18    other cases that basically say you are only divested of
19    jurisdiction of the issue on appeal, which would basically
20    be the double jeopardy and related to the ten counts.
21         Anything that is administrative, ministerial, or
22    separate from those ten counts, Your Honor is agreeing that
23    you retain jurisdiction for those purposes?
24         THE COURT:  Yes.
25         MR. SAGEL:  I just wanted to clarify before we

```
 1   file anything related to this matter.
 2            THE COURT:  As to any substantive issues, I
 3   believe I'm divested of jurisdiction with respect to.
 4            MR. SAGEL:  The issue before the Ninth Circuit?
 5            THE COURT:  At least those.  And I believe with
 6   respect to the remaining 26 counts, it seems to me that the
 7   issue of document production relates to some or all of those
 8   counts.
 9            MR. SAGEL:  I obviously disagree, but we can take
10   that up if and when --
11            THE COURT:  Well, you know, present what you wish.
12   If I make a determination that the issue you want to raise
13   is a substantive issue that I think conflicts with the
14   divesture of jurisdiction, I probably just won't consider
15   it.
16            MR. SAGEL:  Understood.
17            THE COURT:  Okay.  Anything else?
18            Thank you.
19            MR. AVENATTI:  Thank you, Your Honor.
20            (Whereupon, the proceedings were concluded)
21                        *    *    *
22
23
24
25
```

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  October 19, 2021


/s/   Sharon A. Seffens  10/19/21
_____
SHARON A. SEFFENS, U.S. COURT REPORTER