UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | )CERTIFIED TRANSCRIPT | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | SACR-19-00061-JVS |
| MICHAEL JOHN AVENATTI, | ) | |
| Defendant. | ) | |
| -----------------------------) | | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

October 12, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    NICOLA T. HANNA
     United States Attorney
4    BRANDON D. FOX
     Assistant United States Attorney
5    Chief, Criminal Division
     ALEXANDER WYMAN
6    Assistant United States Attorney
     Major Frauds Section
7    1100 United States Courthouse
     312 North Spring Street
8    Los Angeles, CA   90012
     (213) 894-6683
9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA   92701
12   (714) 338-3598

13   For the Defendant:

14   **MICHAEL JOHN AVENATTI, PRO SE**

15   H. DEAN STEWARD
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA   92672
17   (949) 481-4900

18

19

20

21

22

23

24

25

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | SANTA ANA, CALIFORNIA; TUESDAY, OCTOBER 12, 2021; 8:02 A.M.          |
| 08:02 | 2  | THE CLERK:  Item 1, SACR-19-00061-JVS, United                       |
| 08:02 | 3  | States of America versus Michael John Avenatti.                     |
| 08:02 | 4  | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel                   |
| 08:02 | 5  | and Alexander Wyman on behalf of the United States, and at          |
| 08:02 | 6  | counsel table is Patrick Fitzgerald of the Privilege Review         |
| 08:02 | 7  | Team.                                                                |
| 08:03 | 8  | THE COURT:  Good morning.                                           |
| 08:03 | 9  | MR. AVENATTI:  Good morning, Your Honor.                            |
| 08:03 | 10 | Defendant Michael Avenatti present with advisory counsel,          |
| 08:03 | 11 | Mr. Dean Steward, and Ms. Cummings-Cefali is also at the           |
| 08:03 | 12 | counsel table.                                                      |
| 08:03 | 13 | THE COURT:  Good morning.                                           |
| 08:03 | 14 | What progress have we made on document production?                 |
| 08:03 | 15 | MR. FITZGERALD:  Your Honor, three items.  First,                  |
| 08:03 | 16 | the defense has received a hard drive that contained               |
| 08:03 | 17 | approximately 11.7 -- a search index for 11.7 million files        |
| 08:03 | 18 | that were on Server 5 that we discussed last week.  That           |
| 08:03 | 19 | leaves approximately 2.3 million files that have not been          |
| 08:03 | 20 | indexed.  The parallel efforts both here in Los Angeles and        |
| 08:03 | 21 | then at the Computer Crime Lab to complete the indexing for        |
| 08:03 | 22 | those 2.3 million continues to go very, very slowly.               |
| 08:04 | 23 | Based on the information the defense provided on                    |
| 08:04 | 24 | Monday, Mr. Varani looked further into the nature of the           |
| 08:04 | 25 | remaining TIFF files, the 2.3 that I mentioned that have not       |

08:04    1    been indexed.  He thinks all or almost all of those are

08:04    2    located in two discrete places on Server 5.  One is a

08:04    3    directory or large file called Concordance cases.

08:04    4    Concordance, as the Court probably knows, is a database

08:04    5    similar to relativity used by law firms.

08:04    6          And then the second place are RAR files, which are

08:04    7    are in a directory or large file called K&J.  I spoke this

08:04    8    morning with the prosecution team, and they believe that K&J

08:04    9    refers to an e-Discovery vendor that was hired by the law

08:05   10    firm.

08:05   11          Further, Mr. Varani conducted a test of certain

08:05   12    chip files that were included in the search index that has

08:05   13    been sent out, and he believes based on that and the general

08:05   14    knowledge that we conveyed last week that putting TIFF files

08:05   15    into a FTK search index is not of practical value.

08:05   16    Certainly the Concordance files and possibly the RAR files

08:05   17    are documents that I can't say intrinsically would have no

08:05   18    relevance to the case, but he does believe that they have to

08:05   19    be searched using other than the FTK search index.

08:05   20          We can provide the RAR files this morning, which

08:06   21    are compressed files.  He sent me a list.  He can provide

08:06   22    the location of those to the defense.  But, again, as we

08:06   23    said last week in our status report, the best way looking to

08:06   24    see if there is something relevant to this case -- there are

08:06   25    other ways of using FTK or eyeballing the documents to see

08:06   **1**   if there is some subfile or something that relates to any of

08:06   **2**   the different victim clients in this particular case.

08:06   **3**           THE COURT:  Okay.  Thank you.

08:06   **4**           Mr. Avenatti.

08:06   **5**           MR. AVENATTI:  Your Honor, I'm not going to repeat

08:06   **6**   what I placed in the status report that we filed yesterday

08:06   **7**   afternoon.  I'll note the following, though.  A week ago I

08:06   **8**   stood before Your Honor and I explained to the Court my

08:06   **9**   position, my belief, that these TIFF files were not all

08:07   **10**   pictures, videos, and graphics, that in fact they were

08:07   **11**   predominantly documents because of the nature of the law

08:07   **12**   firm, et cetera.

08:07   **13**           I have now been proven right.  The representations

08:07   **14**   for whatever reason that were made to the Court by the

08:07   **15**   Privilege Review Team and the government were not accurate.

08:07   **16**   These are documents.  They are -- not all of them but 99

08:07   **17**   percent of them are documents, and they have to be reviewed

08:07   **18**   for relevance, for possible Brady and Giglio.

08:07   **19**           Clearly, the government did not do that.  That's

08:07   **20**   an issue for another day.  Clearly, Mr. Varani's testimony

08:07   **21**   at trial was not accurate.  That's an issue for another day.

08:07   **22**   We are where we are.  The defense needs adequate time to

08:07   **23**   review this information to make sure that the defense has

08:07   **24**   everything that is relevant, potential Brady.

08:07   **25**           I did not mean to inundate the Court -- and I

08:07  1   apologize if Your Honor believed that I did -- by attaching

08:07  2   the exhibits.  I did so so that Your Honor could see what

08:08  3   TIFF files may include.  There is no question that they may

08:08  4   include relevant information, Your Honor.

08:08  5           THE COURT:  I haven't gone through the attachments

08:08  6   in your brief.  I will do that.  I will accept your

08:08  7   representation that among the TIFF files there may be garden

08:08  8   variety documents of the sort that --

08:08  9           MR. AVENATTI:  Thank you.

08:08  10           THE COURT:  Now, with regard to the information I

08:08  11   just received this morning, if Concordance is in fact the

08:08  12   database of documents for cases which the Avenatti Firm

08:08  13   maintained, can we determine whether that's so?  It would

08:08  14   seem that it might not have significant relevance.  Can you

08:08  15   determine what's in the Concordance set of files that

08:08  16   Mr. Fitzgerald has just identified?

08:09  17           MR. AVENATTI:  Your Honor, we have actually been

08:09  18   working on that contemporaneous with trying to index the

08:09  19   files.  Our belief is that there are folders within this

08:09  20   directory that relate to the client matters -- not all the

08:09  21   client matters but at least --

08:09  22           THE COURT:  The relevant ones here.

08:09  23           MR. AVENATTI:  Yes, not all four but probably at

08:09  24   least two.  We are in the process of going through this

08:09  25   information.  It's a vast amount of information, and we need

08:09   1   time to be able to review it.  But the claim that we can

08:09   2   just ignore the TIFF files, clearly we cannot ignore the

08:09   3   TIFF files.

08:09   4            THE COURT:  What about the K&J file, the discovery

08:09   5   vendor?

08:09   6            MR. AVENATTI:  K&J was an e-Discovery vendor, a

08:09   7   vendor we used to scan documents and to load documents in

08:09   8   databases from time to time at the law firm, so we would

08:10   9   need to review that directory as well.

08:10  10            THE COURT:  Mr. Sagel.

08:10  11            MR. SAGEL:  Just very briefly, Your Honor.  Last

08:10  12   week at the hearing, we heard representations about what

08:10  13   would be found in the TIFFs.  Your Honor, was pretty

08:10  14   explicit asking for examples from the defendant.  He filed a

08:10  15   document with a lot of attachments, and I would point out

08:10  16   zero were from the TIFF files from his own computer.  He has

08:10  17   not demonstrated a single file from those of what he keeps

08:10  18   saying are there, what he keeps saying he believes.

08:10  19            Your Honor was explicit about asking him what to

08:10  20   attach.  He attaches a hundred pages, and zero of the pages

08:10  21   of those were actually from the TIFF files of his own

08:10  22   computer that he keeps saying he has already found stuff on.

08:10  23   I just point that out.  So while you are looking at what you

08:10  24   looking at, you will notice it wasn't even in response to

08:10  25   what Your Honor asked him to do.

08:11  1          The one other thing I would point out with regard

08:11  2  to the Concordance and the K&J stuff is while there may be

08:11  3  something in there which he can look for because he has --

08:11  4          I'm speaking.

08:11  5          THE COURT:  Please be seated.

08:11  6          MR. AVENATTI:  I'm listening, sir.

08:11  7          THE COURT:  You can listen while you're seated.

08:11  8          MR. SAGEL:  While those documents -- there may be

08:11  9  something relevant that he can look for -- Your Honor has

08:11  10  already ruled about the underlying facts of those

08:11  11  litigations, which is what would be in a Concordance

08:11  12  database, which would be what an e-Discovery vendor would be

08:11  13  putting together in those cases.

08:11  14          Now, if he wants to say that's the work that

08:11  15  supports a payment or a cost or something, it doesn't mean

08:11  16  that's the only place it can be.  So I point that out.  The

08:11  17  underlying facts of those litigations if they actually exist

08:12  18  in those databases also would show in relation to your

08:12  19  motion in-limine ruling that they may not actually be

08:12  20  relevant in an evidentiary value way for this case.

08:12  21          THE COURT:  Okay.

08:12  22          Mr. Avenatti.

08:12  23          MR. AVENATTI:  Your Honor, at some point, I'm

08:12  24  hopeful that representations that are made to this Court are

08:12  25  going to matter.  The last seven pages of the submission I

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:12   1   made, Your Honor, I know for a fact came off the servers.

08:12   2   The representation that was just made to this Court that not

08:12   3   a single page came off the servers.

08:12   4          THE COURT:  Are you representing that all the

08:12   5   pages came off the servers?

08:12   6          MR. AVENATTI:  No, sir, I'm not.  And I made clear

08:12   7   in the status that -- the issue, Your Honor -- let me be

08:13   8   really clear about this.  The issue is the government came

08:13   9   here last week, and they told Your Honor that the TIFF files

08:13  10   were graphics and pictures.  That's what they told you.

08:13  11          THE COURT:  So I understand what you are saying is

08:13  12   seven pages in fact came off the servers.  All the other

08:13  13   pages in the 121-page filing are simply illustrative of the

08:13  14   fact that TIFFs documents can be regular documents.  Is that

08:13  15   accurate?

08:13  16          MR. AVENATTI:  Yes, that is accurate.  You asked

08:13  17   me for examples of what a TIFF file would look like and an

08:13  18   example of something that would come off the server.

08:13  19          THE COURT:  I think I asked a little narrower than

08:13  20   that.

08:13  21          MR. AVENATTI:  Well, I provided both.  So now we

08:13  22   are beyond the issue that TIFF files are graphics and

08:13  23   pictures only and cannot include documents.  So that's

08:13  24   number one.

08:13  25          Number two, I find it frankly incredible that

08:14 1    Mr. Sagel will represent to the Court what is within these

08:14 2    files that they have never looked at in over two-and-a-half

08:14 3    years.  That's the issue.  The issue is they have never

08:14 4    reviewed the documents, Your Honor.  Had they done a proper

08:14 5    review, then they would have a basis for these

08:14 6    representations about what is on the servers and what the

08:14 7    documents are likely to show.  That's the entire issue, Your

08:14 8    Honor.

08:14 9          THE COURT:  I would like a report from the parties

08:14 10    by noon on Thursday on the government's document production

08:14 11    during the week of August 23, the files that Mr. Varani

08:14 12    produced, and what has been produced subsequent.  What's in

08:15 13    there that would constitute Tabs or QuickBooks documents

08:15 14    with respect to the four clients that are relevant in Counts

08:15 15    1 through 10?

08:15 16          I want to know whether the relevant Tabs and

08:15 17    QuickBooks files for these specific clients have been

08:15 18    produced in the subsequent production.  I think the

08:15 19    government on the Motion to Dismiss made a pretty good

08:15 20    showing of what the Prosecution Team had in terms of Tabs.

08:15 21    So I assume that the additional Tabs and the Quickbooks data

08:15 22    with respect to what was subsequently produced and

08:15 23    subsequent to the government's -- Mr. Fitzgerald.

08:15 24          MR. FITZGERALD:  I just wanted to remind the Court

08:15 25    that on September 20 we gave a thumb drive to the defense

08:16    1    based on the quote/unquote "manual search" that Special

08:16    2    Agent Tashchyan did.  And based on his belief, I'll

08:16    3    represent to the Court that that should have included all

08:16    4    the QuickBooks and Tabs data, including that for the victim

08:16    5    clients.

08:16    6           So it's our belief that certainly no later than

08:16    7    September 20 the defense should have received all Tabs and

08:16    8    QuickBooks data.  But, of course, they have all the files,

08:16    9    and they can conduct their own search to see if we missed

08:16   10    anything.  But that's what we attempted to do, and that's

08:16   11    what we believe we have done.

08:16   12           THE COURT:  I would like you to document that with

08:16   13    as much specificity as possible.

08:16   14           Now, Mr. Avenatti, if you choose to, you can file

08:16   15    your report in-camera.

08:16   16           MR. AVENATTI:  I want to make sure that I

08:17   17    understand exactly what Your Honor is asking for.  Before I

08:17   18    ask the question, let me say this.  We obviously have a

08:17   19    forensic copy of the servers now.  We have whatever Tabs and

08:17   20    QuickBooks files were on those servers, so I can represent

08:17   21    to the Court that we have that now.

08:17   22           THE COURT:  You have the forensic copy.  Sure.

08:17   23           MR. AVENATTI:  Correct.  I don't think I

08:17   24    understand what Your Honor is asking for now, and I

08:17   25    apologize.

08:17   1          THE COURT:  Okay.  In terms of what has been

08:17   2 produced roughly since the week of August 23, with

08:17   3 specificity, what's in there that amounts to Tabs data

08:17   4 related to the four clients -- or five, I guess -- the

08:17   5 clients in Counts 1 through 10 with as much specificity as

08:17   6 possible?

08:17   7          MR. AVENATTI:  You mean what that information

08:17   8 shows or just --

08:17   9          THE COURT:  No, no, no.  There's some Tabs data in

08:17  10 a couple of exhibits in the trial.  That kind of material

08:17  11 would show the following data for those clients.

08:18  12          MR. AVENATTI:  Okay.  And we can submit our report

08:18  13 in-camera?

08:18  14          THE COURT:  If you prefer.  I will obviously

08:18  15 compare your report with the government's report.  I want to

08:18  16 get down to practicalities.  It seems to me that the key

08:18  17 data is the accounting data for the clients in Counts 1

08:18  18 through 10.  There may be other topics that are key as well.

08:18  19 If you think there are other topics -- what other topics do

08:18  20 you think are critical to going to trial?

08:18  21          MR. AVENATTI:  That's a long list.

08:18  22          THE COURT:  No, no, no.  Critical.

08:18  23          MR. AVENATTI:  Our communications with the client

08:18  24 would be one.  All communications with the clients, to and

08:18  25 from the clients, would be one.  Anything having to do with

08:18  1    the accounting obviously related to the client matters would

08:19  2    be two.  The financial condition of the law firm, which the

08:19  3    government put at issue in the last trial in a significant

08:19  4    way, that would be three.  Anything bearing on the opinions

08:19  5    of Mr. Drum.  Anything that he should have considered and

08:19  6    did not in connection with his analysis would be four.

08:19  7    Those are just four off the top of my head, Your Honor.

08:19  8              THE COURT:  Okay.

08:19  9              Mr. Sagel.

08:19  10             MR. SAGEL:  Just so that I'm clear -- and I don't

08:19  11   know which way it's doable or not -- does Your Honor

08:19  12   expecting a filing from the privilege review side or from

08:19  13   the prosecution side, because we have seen some stuff right

08:19  14   now?  I think we are in the process of seeing everything.

08:19  15   So I don't know --

08:19  16             THE COURT:  Well, you probably have -- the

08:20  17   Prosecution Team -- everything that's been delivered to

08:20  18   Mr. Avenatti you have seen?

08:20  19             MR. FITZGERALD:  No, Your Honor.  Consistent with

08:20  20   the information and opening it up, there is the possibility

08:20  21   that there are items that are privileged and therefore

08:20  22   should not go to the Prosecution Team.  They have gone to

08:20  23   the defense.

08:20  24             The Prosecution Team has asked the Court -- as has

08:20  25   been discussed here, they are relying on the reciprocal

08:20  1   discovery provisions of Rule 16 to find out from the defense
08:20  2   what's going to be relevant in the trial.  Given as the
08:20  3   defense keeps saying they have been millions of files that
08:20  4   have been turned over, it's not possible to do a privilege
08:20  5   review for all of that before it could then be turned over
08:20  6   to the Prosecution Team.
08:21  7            What we have done, for example, is we have looked
08:21  8   at Tabs data.  And Tabs and QuickBooks inherently are
08:21  9   unlikely to contain privileged information.  Therefore, we
08:21  10  are arranging to have the Prosecution Team review the
08:21  11  QuickBooks and the Tabs data, but that's a separate category
08:21  12  from the overall production that we have recently made in
08:21  13  August, September, and October to the defense.
08:21  14            THE COURT:  When do you plan to give that to the
08:21  15  Prosecution Team?
08:21  16            MR. FITZGERALD:  Your Honor, given the timeline on
08:21  17  that, the short answer is never.  That's why --
08:21  18            THE COURT:  Well, wait a minute.
08:21  19            MR. SAGEL:  If I can clarify, I think there is a
08:21  20  confusion.  The Tabs data that was made available on -- I'm
08:21  21  going to guesstimate on the date.  I think it was August 23.
08:21  22  We had access to that computer thereafter, so we saw those
08:22  23  records.  I think there was a thumb drive or something that
08:22  24  was provided with the download of Tabs and QuickBooks.  From
08:22  25  what I have been told, that will be made available to our

08:22    1    agents to look at, which are just those financial records.

08:22    2            Everything else -- the copy of the forensic

08:22    3    server, et cetera -- is stuff that we don't and don't plan

08:22    4    on having access to.  So anything outside of the extraction

08:22    5    of Tabs and QuickBooks, we won't ever have access to.

08:22    6            THE COURT:  Well, to the extent post-August 23 the

08:22    7    Prosecution Team had Tabs and QuickBooks data related to the

08:22    8    four clients in Counts 1 through 10, I'll ask for a report

08:22    9    from you, and I'll ask for a report from Mr. Fitzgerald.

08:22   10            MR. SAGEL:  Thank you, Your Honor.  Understood.

08:22   11            MR. AVENATTI:  Your Honor, I would like to be able

08:22   12    to respond to that report perhaps in-camera.  So what I

08:23   13    would like to do is if Thursday is the deadline for that, I

08:23   14    would like to be able to submit mine by noon on Monday.

08:23   15            MR. SAGEL:  I don't see this as -- Your Honor is

08:23   16    the one that is asking for --

08:23   17            THE COURT:  If I want a response, I'll ask for it

08:23   18    after I do an initial review.

08:23   19            MR. AVENATTI:  Can I have beyond Thursday to

08:23   20    submit my in-camera report?

08:23   21            THE COURT:  No.

08:23   22            MR. AVENATTI:  Honestly, I'm still confused as

08:23   23    to --

08:23   24            THE COURT:  Well, I have spent many years

08:23   25    litigating.  I have worked with litigation databases since

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:23  1   the '70s.  In theory and practice, the database is

08:23  2   organized.  And if I want Tabs data for a given client, I

08:23  3   can search the database on that and get the document that

08:23  4   relates to Tabs data for that client.  That's what I'm

08:24  5   suggesting that both sides do, so I have in concrete before

08:24  6   me what data is out there that would be relevant to the

08:24  7   claims that these folks didn't get their money.

08:24  8           MR. AVENATTI:  We will file in-camera, Your Honor.

08:24  9           THE COURT:  The next issue is when the defendant

08:24  10  will make their Rule 16 disclosures.  I'll deem disclosed

08:24  11  anything that the defense used at trial.  Otherwise,

08:24  12  October 22 is the date for further disclosures.  Any

08:24  13  disclosure after that will be made on a rolling basis, and

08:24  14  depending on the diligence with which it is disclosed and

08:24  15  what it is, it may or may not be used at trial.  October 22

08:24  16  is the date.  That's approximately ten days before trial.

08:25  17          MR. SAGEL:  Are we talking about anything that was

08:25  18  not in the possession of the defendant prior to the first

08:25  19  trial or --

08:25  20          THE COURT:  I'm not going to restrict him as to

08:25  21  what they produce.

08:25  22          MR. SAGEL:  Thank you, Your Honor.

08:25  23          THE COURT:  Is that clear?

08:25  24          MR. AVENATTI:  Your Honor, is it, except for the

08:25  25  first part relating to -- you said anything --

08:25   1      THE COURT:  If you previously had it and you

08:25   2   didn't disclose it, I think you should file that and let the

08:25   3   Court make the decision as to whether there is good cause

08:25   4   for the late disclosure vis-a-vis the first trial.  One

08:25   5   factor of course goes into the fact that there has been a

08:26   6   passage of time which may affect diligence, in other words,

08:26   7   the diligence with respect to the trial we are going to have

08:26   8   November 2.  There are two questions there.

08:26   9      MR. AVENATTI:  Understood, Your Honor.  Just to

08:26   10   preserve the issue for the record, obviously we object to

08:26   11   any reciprocal disclosure requirement relating to documents

08:26   12   previously produced by the government, especially those with

08:26   13   a USAO Bates stamp number.  I will state that for the

08:26   14   record.

08:26   15      THE COURT:  Fine.

08:26   16      Yesterday Mr. Avenatti filed a further discovery

08:26   17   motion.  That will be heard along with the in-limine motions

08:26   18   on the 27th of October.  So let's discuss briefing dates on

08:27   19   that.

08:27   20      When can you reply, Mr. Sagel?

08:27   21      MR. SAGEL:  I would --

08:27   22      THE COURT:  Have you even seen it?

08:27   23      MR. SAGEL:  I have printed it this morning.  I

08:27   24   haven't read it yet.  I would ask for at least a week from

08:27   25   today, whatever Your Honor is willing to give us.

08:27   1         THE COURT:  That's fine, the 19th.

08:27   2         Would you get and reply in by the 22nd?

08:28   3         Mr. Avenatti filed a Notice of Appeal yesterday.

08:28   4   What are your preliminary thoughts with regard to the

08:28   5   Court's jurisdiction in light of that filing?

08:28   6         MR. SAGEL:  Would you like to hear from me?  We

08:28   7   can file something with the Court I think hopefully soon,

08:28   8   today or tomorrow.  I will have to go back and look at it.

08:28   9   Our preliminary research shows this Court still has

08:28   10   jurisdiction.  Your Honor has jurisdiction until you either

08:28   11   decide not to or the Court of Appeals tells you not to.  We

08:28   12   will be filing something on the law in this regard.  It

08:28   13   doesn't change anything.  We will ask for an expedited

08:28   14   briefing schedule, if necessary, but we can proceed as we

08:29   15   currently are here.

08:29   16         THE COURT:  Mr. Avenatti.

08:29   17         MR. AVENATTI:  Your Honor, I respectfully

08:29   18   disagree.  I think the Court is -- upon notice of the filing

08:29   19   and notice of an interlocutory appeal, which is one of the

08:29   20   few collateral orders where the double jeopardy denial trial

08:29   21   order is appealable, that the Court is divested of its

08:29   22   jurisdiction except under very limited circumstances which

08:29   23   do not exist.

08:29   24         Your Honor, my understanding was I had 14 days

08:29   25   from Your Honor's order on the denial of the Motion to

08:29 **1** Dismiss to file the appeal or basically the right would be

08:29 **2** lost.  That's why --

08:29 **3**    THE COURT:  I don't recollect that.

08:29 **4**    MR. AVENATTI:  Well --

08:29 **5**    THE COURT:  It's filed, so --

08:29 **6**    MR. AVENATTI:  It's filed.  If they want to seek

08:29 **7** expedited review in front of the Ninth Circuit, they are

08:29 **8** certainly at liberty to do so.  Mr. Howard Srebnick will

08:30 **9** be coming into the Ninth Circuit and well represent me pro

08:30 **10** bono on that appeal.  Obviously I have to consult with

08:30 **11** him.  But my initial inclination is I won't be opposing

08:30 **12** expedited review in front of the Ninth Circuit.  But the

08:30 **13** law as stated by the Mr. Sagel I don't believe is

08:30 **14** accurate.

08:30 **15**    THE COURT:  I will look for your briefs on that no

08:30 **16** later than noon on Wednesday on that issue.

08:30 **17**    MR. AVENATTI:  The issue of jurisdiction?

08:30 **18**    THE COURT:  Yes.

08:30 **19**    MR. SAGEL:  In light of the defendant's comments,

08:30 **20** it begs the question why is the motion he filed yesterday

08:30 **21** valid then?  Is it stricken as of now, or do you want us

08:30 **22** to --

08:30 **23**    THE COURT:  Well, let me determine whether in fact

08:30 **24** I have jurisdiction.  If I don't have jurisdiction, the

08:30 **25** motion just sits there until the Court --

08:30  1          MR. SAGEL:  Thank you, Your Honor.

08:31  2          MR. AVENATTI:  Understood, Your Honor.  The motion

08:31  3  would not be stricken.

08:31  4          THE COURT:  No, it wouldn't be stricken.  The

08:31  5  Court just wouldn't have jurisdiction to rule on it if

08:31  6  that's the case.  I will look for your briefs on that issue

08:31  7  on noon Wednesday.

08:31  8          THE CLERK:  Tomorrow, Judge?

08:31  9          THE COURT:  Noon on Thursday.  It's a discrete

08:31  10  issue, and I think that ought to be enough time to address

08:31  11  it.

08:31  12          Okay, anything else we ought to take up this

08:31  13  morning?

08:31  14          MR. SAGEL:  Two real brief things.  One is just to

08:31  15  kind of put Your Honor on notice.  We learned last week that

08:31  16  one of our victims has a lot of medical issues, Mr. Johnson.

08:31  17  Things have gotten worse for him.  He has had surgeries and

08:32  18  so forth.

08:32  19          We have provided information to the defense as we

08:32  20  get it about his condition and about his availability as a

08:32  21  witness.  We have asked for their input on what they would

08:32  22  suggest.  We haven't gotten that yet.  I just want to flag

08:32  23  it for the Court in the sense of either he would need to

08:32  24  testify on a gurney because he has had surgeries where he is

08:32  25  not able to sit anymore, or it would need to be done by VTC,

08:32    1    or there may be other options.

08:32    2              We are flagging it for the Court because this is

08:32    3    an issue if we were having a trial in the next few months

08:32    4    that we want the defendant to say what his preference is

08:32    5    before we either have to ask the Court to make a ruling or

08:32    6    not, but this is something that has arisen in the last week

08:32    7    as we are getting trial subpoenas out.  It's merely to flag

08:33    8    it for Your Honor.  It's possible we can work something out

08:33    9    with the defense.  If not, we will come to Your Honor to

08:33   10    rule on that issue.

08:33   11              Then one part of the reciprocal discovery I should

08:33   12    have clarified -- I don't know if Your Honor wants to tie it

08:33   13    in with that -- at several hearings, the defendant has

08:33   14    mentioned that he has retained a forensic expert.  I think

08:33   15    he was here last week -- if there is a date certain he needs

08:33   16    to provide a Rule 16 expert disclosure notice if he plans on

08:33   17    calling that individual as a witness at trial.

08:33   18              THE COURT:  Seven days before trial disclose the

08:33   19    expert.

08:34   20              MR. AVENATTI:  Your Honor, briefly as it relates

08:34   21    to Mr. Johnson, I was first informed of this late in the day

08:34   22    on Friday.  When I arrived this morning, I had a single-page

08:34   23    letter from a doctor relating to Mr. Johnson.  I will review

08:34   24    the letter.  I will be in touch with the government to see

08:34   25    if we can come to some resolution.  Obviously I would object

08:34  1   to Mr. Johnson testifying from a gurney before a jury in

08:34  2   this case.  Hopefully we will able to reach some other

08:34  3   resolution.

08:34  4           THE COURT:  That was as a last resort he testify

08:34  5   on a gurney.  If there are no accommodations or legal plans

08:34  6   to do it otherwise, he will testify on a gurney.

08:34  7           We will be adjourned.  Thank you.

08:34  8           (Whereupon, the proceedings were concluded.)

08:34  9                    *   *   *

08:34  10

08:34  11

08:34  12

08:34  13

08:34  14

08:34  15

08:34  16

08:34  17

08:34  18

08:34  19

08:34  20

08:34  21

08:34  22

08:34  23

08:34  24

08:34  25

**CERTIFICATE**

         I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  October 13, 2021



                    /s/   Sharon A. Seffens  10/13/21
                    _____
                    SHARON A. SEFFENS, U.S. COURT REPORTER