Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 497-6753

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | |
| | DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE QUESTIONS AND REFERENCE TO ANDREW STOLPER PURSUANT TO FRE 401, 402, AND 403 |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Defendant MICHAEL JOHN AVENATTI ("Mr. Avenatti"), by and through his advisory counsel of record, H. Dean Steward, hereby files his Opposition to the Government's Motion in Limine to Exclude Questions and Reference to Andrew Stolper Pursuant to FRE 401, 402, and 403.

///
///
///

1    Defendant's filing is based on the attached memorandum of points and authorities;

2  the evidence referenced in the attached; the files, records and transcripts in this case and

3  the other cases cited herein; and such further evidence and argument as the Court may

4  permit at a hearing on this matter.

5

6    Dated: June 13, 2022                              Respectfully submitted,

7                                                     /s/ Michael John Avenatti
                                                      MICHAEL JOHN AVENATTI
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................ iv

**MEMORANDUM OF POINTS AND AUTHORITIES** ..................................... 1

   I.     **INTRODUCTION** ..................................................................................... 1

   II.    **RELEVANT FACTUAL HISTORY** ..................................................... 1

         A. Mr. Stolper's Relationship with Mr. Avenatti ...................................... 2

         B. Mr. Stolper's Relationship with AUSA Brett Sagel ............................ 3

         C. Mr. Stolper's Communications with the Government ......................... 3

         D. Testimony Regarding Mr. Stolper in the First Trial ............................ 4

   III.   **LEGAL AUTHORITY** ............................................................................ 9

   IV.   **ARGUMENT** ........................................................................................... 11

   V.    **CONCLUSION** ....................................................................................... 14

# TABLE OF AUTHORITIES

## CASES:                                                                      Page

*Abdulal v. United States*,
2005 U.S. Dist. LEXIS 52747 (W.D. Wash. 2005)…………………………….…11

*Bowden. v. McKenna*,
600 F.2d 282 (1st Cir. 1979) …………………………………..……..……10

*Chambers v. Mississippi*,
410 U.S. 284 (1973) ……………………………………………..……..……9

*Kyles v. Whitley*,
514 U.S. 419 (1995) ……………………………………..…….……..6, 9, 13

*Pennsylvania v. Ritchie*,
480 U.S. 39 (1987) ……………………………………………….…………..9

*Rush v. Weinsein*,
2022 U.S. Dist. LEXIS 72155 (D. Id. 2022) ………………...…………..….…11

*Sperberg v. Goodyear Tire & Rubber, Co.*,
519 F.2d 708 (6th Cir. 1975) ………………………………..……..………11

*Sprint/United Mgmt. Co. v. Mendelsohn*,
552 U.S. 379 (2008) …………………………………………...…………10

*Taylor v. Illinois*,
484 U.S. 400 (1988) …………………………………………….……..9, 13

*United States v. Aguilar-Noriega*,
831 F. Supp. 2d 1180 (C.D. Cal. 2011) …………………………..……..…10

*United States v. Candoli*,
870 F.2d 496 (9th Cir. 1989) ………………………………...…..……..11

*United States v. Evans*,
728 F.3d 953 (9th Cir. 2013) ………………………………………..……..11

*United States v. Heller*,
551 F.3d 1108 (9th Cir. 2009) …………………………………...…..…...11

*United States v. Howell*,
231 F.3d 615 (9th Cir. 2000) ……………………………………..…….…10

*United States v. Ruvalcaba-Garcia*,
923 F.3d 1183, 1189 (9th Cir. 2019) …………………………...…….…10

*United States v. Sager*,
227 F.3d 1138 (9th Cir. 2000) …………………………...…….…..9, 10

*United States v. Whitmore*,
2013 U.S. LEXIS 67636 (D. Nev. 2013) ……………………..…….…10

*Washington v. Texas*,
388 U.S. 14 (1967) …………………………………..…….……………9

**STATUTES, CODE SECTIONS AND OTHER SOURCES:**

Fed. R. Evid. 401…………………………………..…….……1, 10, 11, 13

Fed. R. Evid. 403. ………………………………………..…….…...1, 10, 11

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.  INTRODUCTION**[1]

On September 29, 2021, the government filed its Motion in Limine to Exclude Questions and Reference to Andrew Stolper Pursuant to FRE 401, 402, and 403. [Dkt. 832]. The government asks the Court "to exclude questions, argument, and evidence related to Andrew Stolper. . . ." [Dkt. 832, p. 2]. The government's motion should be denied in full. Requesting that the Court issue an Order denying Mr. Avenatti the opportunity to present testimony, evidence, and argument on highly relevant topics, at the core of the defense, violates the Sixth Amendment. Just as the Court would not issue an Order providing Mr. Avenatti (or the government) with carte blanche authority to pursue any themes of questioning, the government's blanket request should be denied.

Mr. Avenatti is entitled, as a matter of law, to present evidence and elicit testimony regarding the sloppiness and motivation of the government's investigation, prosecutorial bias, and any potential conflicts of interest. As described herein, the government should not be permitted to present evidence derived from Andrew Stolper but prevent Mr. Avenatti from eliciting questions, presenting argument, or introducing evidence about this same individual. Based on the following, the government's motion should be denied in full.

### **II. RELEVANT FACTUAL HISTORY**

As described herein, Mr. Stolper has a personal relationship with AUSA Sagel, was formerly employed by Mr. Avenatti and fired for fraud, and has provided the government with information relevant to *this case*. Accordingly, testimony, argument, and evidence on this individual is relevant, and the government's motion should be denied in full.

//

//

---

[1] On June 12, 2022, Mr. Avenatti filed defendant's "Notice of (A) Intent to Change Plea and Request Sentencing and (B) Request for Telephonic or Video Status Conference." [Dkt. 945]. Given the Court's prior scheduling Order, this filing is made out of an abundance of caution.

1

## A. Mr. Stolper's Relationship with Mr. Avenatti

After being forced out of the U.S. Attorney's Office after an Office of Professional Responsibility investigation, Mr. Stolper was employed by Mr. Avenatti's firm, Eagan Avenatti, LLP ("EA").[2] However, Mr. Stolper was ultimately terminated. In May 2016, Mr. Stolper, alongside Jason Frank and Scott Sims, were terminated from EA after it was discovered that the three attorneys had been spending time and effort, during working hours and while employed at EA, forming a competing law firm and scheming to steal cases and clients of EA's in the months to follow. Within two hours of this discovery by the firm, the three attorneys were locked out of the firm's offices and computer systems. A later investigation by EA revealed that Mr. Stolper alongside Mr. Frank and Mr. Sims had attempted to defraud the firm out of millions of dollars for their own benefit.

## B. Mr. Stolper's Relationship with AUSA Brett Sagel

Prior to his employment at Eagan Avenatti, LLP, Mr. Stolper worked at the United States Attorney's Office. While acting as an AUSA, the Honorable Cormac J. Carney dismissed the prosecution of high-profile defendants in the Broadcom-related case after Mr. Stolper was found to have committed prosecutorial misconduct. [Case No. 08-Cr-139-CJC, Dkt. 780]. Judge Carney dismissed the case with prejudice and entered a judgment of acquittal. [*Id.*]. The allegations that led to the dismissal of that case included attempts by Mr. Stolper to dissuade a witness from testifying on a defendant's behalf, threats to an immunized witness if the witness testified consistently with prior sworn testimony, leaked information to the media regarding an ongoing grand jury investigation, false/misleading testimony to the district court, and various *Brady* and *Giglio* violations. [*Id.*, Dkt. 778, p. 6]. Relating to Mr. Stolper's conduct, Judge Carney determined, "The lead prosecutor somehow forgot that truth is never negotiable." [*Id.*, Dkt. 828, p. 6]. Judge Carney described the government's treatment of a witness in that case as "shameful and contrary to American values of decency and justice." [*Id.*, Dkt. 828, p. 7].

---

[2] Mr. Stolper repeatedly lied to Mr. Avenatti and others at EA about his misconduct as a prosecutor in order to obtain employment at the firm.

Mr. Stolper ultimately left the United States Attorney's Office because of the BroadCom case. According to the government, Mr. Stolper's departure occurred in the beginning of 2013. On Mr. Stolper's firm website, his biography writes: "Prior to Frank Sims & Stolper, Andrew served as lead prosecutor in some of the most complex corporate and white-collar fraud cases brought by the United States Attorney's Office for the Central District of California." [Andrew D. Stolper, Biography, accessed at https://lawfss.com/founders (last accessed June 13, 2022)]. The biography describes his accolades and claims "But the most gratifying praise Andrew received has been from the prosecutors and agents with whom he served." [*Id.*]. The biography has an embedded link to an OC Weekly article, where AUSA Sagel is quoted, "I consider Andrew a good friend and he was one of the brightest and hardest working colleagues I've had here at the U.S. Attorney's Office…. Even while Andrew was busy with his own caseload, he was available to give invaluable assistance to others…" [Exhibit A].

### C. Mr. Stolper's Communications with the Government

In connection with Mr. Avenatti and Eagan Avenatti LLP bankruptcy matters, multiple judgment debtors examinations were held wherein Mr. Stolper, claiming to act as opposing counsel, was provided with an opportunity to question Mr. Avenatti, under oath, regarding topics at issue *in this case*. All indications are that he asked these questions in cooperation and consultation with the government in an effort to build this criminal case against Mr. Avenatti.

On March 15, 2019, a judgment debtor examination was held in the Superior Court of California in the action of Jason Frank Law, PLC v. Michael J. Avenatti. [*See,* Government Trial Exhibit 404]. Mr. Stolper elicited testimony from Mr. Avenatti regarding Global Baristas, Dillanos Coffee Roasters, alleged victim Geoffrey Johnson, Mr. Johnson's settlement, and Mr. Avenatti's (and his firm's) outstanding obligations to Mr. Johnson.

On March 22, 2019, an Eagan Avenatti, LLP bankruptcy debtor examination was held in the Central District of California Bankruptcy Court. Mr. Avenatti testified during

this proceeding and was again questioned by Mr. Stolper regarding subjects at issue in this case. Mr. Stolper asked questions regarding alleged victims Geoffrey Johnson, Greg Barela, and Michelle Phan while Co-lead Special Agent Kim attended the hearing and sat in the gallery. Mr. Avenatti was arrested in this case three days later on March 25, 2019.

Then, on March 26, 2019, AUSA Julian Andre and Special Agent Kim interviewed Mr. Stolper telephonically. [USAO_00133156]. At that time, the government described that the prosecution was aware that Mr. Stolper's civil firm was representing Jason Frank Law in the Eagan Avenatti, LLP bankruptcy matter. AUSA Andre requested that Mr. Stolper produce documents related to that case. Mr. Stolper was also specifically asked to "be the point of contact relating to the EA and MICHAEL AVENATTI matters." [*Id*.].

The next day, on March 27, 2019, AUSA Andre and SA Kim met with Mr. Stolper in person from approximately 10:45 a.m. to 12:00 p.m. [USAO_00133155]. Mr. Stolper produced documents to the government, discussed his role on the NFL lawsuit case, and indicated that he believed Mr. Avenatti had an Arizona driver's license using Ms. Regnier's address.

As described herein, the first trial established that there were additional instances of communication between Mr. Stolper and the government regarding Mr. Avenatti that have not been disclosed to the defense but were supposed to be submitted to the Court.

### D. Testimony Regarding Mr. Stolper in the First Trial

In the government's motion, the prosecution argues that there were numerous instances during the first trial where Mr. Avenatti was prevented from eliciting testimony regarding Mr. Stolper. The government argues, "In the first trial, defendant provided no plausible connection between the many questions he asked related to Mr. Stolper and whether defendant lied to his clients and embezzled money belonging to them, and it is defendant's burden to do so as the proponent of the evidence." [Dkt. 832, p. 8]. The government's motion suggests that every line of questioning pursued by Mr. Avenatti regarding Mr. Stolper was foreclosed by the Court. However, even prior to trial, the government conceded to Mr. Stolper's relevance to this case.

### i. *Juror Questionnaires*

By way of the initial juror questionnaires, the prosecution acknowledged Mr. Stolper's connection to Counts 1 through 10. On June 23, 2021, the government provided advisory counsel with a list of names that were to be included in the juror questionnaire to reduce the likelihood of bias should one of the potential jurors have a personal relationship with a witness, alleged victim, or any individuals related to the case. [Dkt. 526, p. 2]. On July 4, 2021, the defense sent a list of individuals to be added to the government's list. Andrew Stolper's name appeared first on the list. The government did not object to his name appearing on the list and it was added to the juror questionnaires. The government's willingness to include Mr. Stolper's name on the juror questionnaire, without objection, evidences the prosecution's acknowledgement that Mr. Stolper is related to the instant matter.

### ii. *Judgment Debtor Examination Excerpts*

Later, during multiple portions of the prosecution's case-in-chief, the government introduced Mr. Avenatti's testimony, elicited by Mr. Stolper, made at debtor examination proceedings on March 15, 2019 and March 22, 2019.

On July 23, 2021, the government introduced prior, under oath testimony from Mr. Avenatti that occurred on March 22, 2019.[3] During the March 22, 2019, judgement debtor examination, Mr. Stolper pursued lines of questioning on subject matters specifically at issue in this case: (1) Mr. Avenatti's relationship with alleged victim Geoffrey Johnson, (2) whether Mr. Johnson signed a retention agreement with Mr. Avenatti or Eagan Avenatti, LLP, (3) whether a federal case was filed on Mr. Johnson's behalf, (4) whether McNicholas & McNicholas acted as co-counsel on the case, (5) whether Mr. Johnson's settlement agreement with the County of Los Angeles had a confidentiality component, (6) whether Mr. Avenatti signed Mr. Johnson's settlement agreement, (7) whether Mr.

---

[3] Three days later, on March 25, 2019, Mr. Avenatti was arrested on an arrest warrant issued on March 24, 2019. [Dkt. 9]. In the two days following Mr. Avenatti's arrest, Mr. Stolper met with the government on March 26, 2019 (telephonically) and on March 27, 2019 in person for over an hour.

Avenatti received Mr. Johnson's $4 million in his trust account, (8) whether Mr. Avenatti stole Mr. Johnson's money, (9) whether Mr. Avenatti paid Mr. Johnson small payments each month in lieu of the $4 million, (10) whether Mr. Avenatti had additional financial obligations to Mr. Johnson. [Trial Tr. 7/23/21, Vol. 2, p. 18, 20-30]. Mr. Stolper also asked Mr. Avenatti whether alleged victim Michelle Phan had accused him of stealing $4 million from her case. [*Id.* at 30].

Again on August 6, 2021, the government introduced additional excerpts from debtor examinations that occurred on March 15, 2019 and March 22, 2019. [Trial Tr. 8/6/21, Vol. 2, p. 34-44]. The jury was presented with under oath testimony of Mr. Avenatti elicited by Mr. Stolper about issues directly relevant to this case: (1) whether Mr. Avenatti received $1.6 million in the *Barela v. Brock* matter, (2) whether these funds were wired into his attorney-client trust account, (3) how much was owed to Mr. Barela, (4) why Mr. Avenatti believed Mr. Barela owed him monies, (5) whether Mr. Barela was an hourly client, (6) whether Mr. Barela authorized Mr. Avenatti to send his funds to Ed Ricci, and (7) whether Mr. Avenatti promptly notified Mr. Barela that he had received his settlement funds. [*Id.*].

### iii.    Witness Testimony

On July 29, 2021, outside of the presence of the jury, Mr. Avenatti alerted the Court that he intended to elicit testimony from former office manager Judy Regnier regarding the sloppiness of the government's investigation, the motivation behind the investigation, and whether the prosecution was pursued in bad faith. [Trial Tr. 7/29/21, Vol. 1, p. 14]. Mr. Avenatti also alerted the Court, "And I think I'm also entitled to get into the fact that Mr. Sagel has a personal relationship with an individual who I had terminated from my law firm and had an ax to grind with me – Mr. Andrew Stolper." [*Id.* at 16]. Mr. Avenatti conveyed that he believed he was entitled to pursue these theories under *Kyles v. Whitley* and its progeny. [*Id.*] The Court responded, "I'm not giving you carte blanche. <u>I'm indicating that that's an appropriate line of inquiry</u>. Let's see where the questioning goes." [*Id.* (emphasis added)].

6

During this hearing, AUSA Sagel objected to Mr. Avenatti being permitted to pursue lines of questioning regarding Mr. Stolper. [*Id.* at 17-18]. AUSA Sagel argued, "So him asking Judy Regnier if she knows if I know Andrew Stolper is just him trying to say something when he has no facts to back it up." [*Id.*]. The Court ultimately determined, "Well, sir, you're contesting a factual matter, whether he has a basis to ask questions about Mr. Stolper at the moment of the government's investigation. <u>I think he is entitled to ask those questions provided, of course, he has a good-faith basis</u>." [*Id.* at 18 (emphasis added)]. Mr. Avenatti was then permitted to ask Ms. Regnier about Mr. Stolper's relationship with the firm, why he was fired in May of 2016, his prior employment at the United States Attorney's Office, her recollection that Mr. Stolper was escorted out of the Eagan Avenatti office and unable to return, and that Mr. Stolper ultimately pursued a civil action against Mr. Avenatti. [*Id.* at 27-28].

On August 18, 2021, Mr. Avenatti called co-lead Special Agent Remoun Karlous to testify in the defense case. Mr. Avenatti was permitted to ask SA Karlous to describe the identity of Mr. Stolper and Mr. Stolper's friendship with AUSA Sagel. [Trial Tr. 8/18/21, Vol. 1, p. 69]. SA Karlous confirmed that Mr. Stolper had contact with Mr. Sagel and other members of the investigative team relating to this criminal prosecution. [*Id.* at 71-72]. SA Karlous agreed that he was aware that three days prior to the search warrant of Mr. Avenatti being executed (on March 22, 2019), Mr. Stolper elicited questioning from Mr. Avenatti "with one or more of [his] colleagues sitting in the gallery." [*Id.* at 72]. SA Karlous described that co-lead agent SA Kim was present during the March 22, 2019 questioning. [*Id.* at 73]. SA Karlous also agreed that Mr. Stolper provided documents "to the government in connection with an attempt to criminally prosecute" Mr. Avenatti. [*Id.* at 75]. SA Karlous believed that Mr. Stolper first made contact with the government about Mr. Avenatti in approximately the "**first quarter of 2018**." [*Id.* at 78 (emphasis added)]. This was a full year before Mr. Avenatti's arrest in this case. SA Karlous testified that he believed that AUSA Sagel was the first person that Mr. Stolper spoke with regarding Mr. Avenatti. [*Id.*]. SA Karlous then contacted Mr. Stolper, and he believed this

7

communication was done via email.[4] [*Id.* at 78-79]. During the government's cross-examination of SA Karlous, the government followed up on the questions about Mr. Stolper, the timing of the IRS investigation, and whether answers elicited by Mr. Stolper were included within SA Karlous' arrest warrant affidavit. [Trial Tr. 8/18/21, Vol. 2, p. 43-49]. AUSA Sagel elicited testimony from SA Karlous regarding Mr. Stolper's departure from the U.S. Attorney's Office, any potential conflict of interest that had occurred in the investigation, and the nature of SA Karlous' communication with Mr. Stolper. [*Id.* at 50-51].

On August 19, 2021, co-lead SA Kim testified in the defense case. Mr. Avenatti inquired as to the witnesses that SA Kim had interviewed during the investigation of this matter, "And another witness that you have communicated with is Andrew Stolper, right?" to which SA Kim responded, "Correct." [Trial Tr. 8/19/21, Vol. 1, p. 64]. **Contrary to SA Karlous's statements that Mr. Stolper was not a witness in this case, SA Kim confirmed that he was a witness**. [*Id.* at 64-67].[5]

Mr. Avenatti has repeatedly demanded all correspondence between Mr. Stolper and the government relevant to the investigation of this case. On August 19, 2021, AUSA Sagel alerted the Court, "I did find on my computer the e-mails referenced from Mr. Stolper. I have them here. I feel very confident they don't fall under any discovery obligations. I can provide them to the Court. If the Court wants me to provide them to the defense, I can." [Trial Tr. 8/19/21, Vol. 2, p. 51-52]. The Court asked that the government provide the e-mail correspondence in-camera. [*Id.*]. Mr. Avenatti has never received any of this correspondence, which should immediately be produced to the defense.[6]

---

[4] After Mr. Avenatti elicited testimony regarding these communications, Mr. Avenatti demanded that they be produced to the defense. No such production was ever made.

[5] Despite this testimony from the co-lead agent, the prosecution claims in its motion that Mr. Stolper has never been a witness in this case and "has never been a witness relating to any of the government's charges and has only provided the government with documents in his capacity as an attorney representing Jason Frank." [Dkt. 832, p. 6, n. 3].

[6] After the trial, on August 26, 2021, Mr. Avenatti provided government counsel with a

8

It is clear that Mr. Stolper, his relationship with AUSA Sagel, his acts of providing the government with information, and his eliciting of testimony regarding the subject matter at issue in this case are highly relevant. The government should not be permitted to inject the trial with information and/or testimony derived from Mr. Stolper without providing the defendant with the ability to explore the corresponding biases, potential conflicts of interests, charging determinations, and the sloppiness of the investigation. Accordingly, the government's motion should be denied.

## III.     LEGAL AUTHORITY

The Supreme Court has repeatedly held that a defendant has a fundamental due process right to mount a defense, call witnesses on his behalf, and present relevant evidence. *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Importantly, this right includes "the right to present the defendant's version of the facts. . ." *Washington v. Texas*, 388 U.S. 14, 19 (1967)(emphasis added).  It also includes the right to "put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987); *see also Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."). In presenting a defense, the Supreme Court has held that a criminal defendant is permitted to attack law enforcement's investigation, motivation, and alleged good faith in connection with his defense. *Kyles v. Whitley*, 514 U.S. 419, 445-49 (1995).

Simply put, a criminal defendant is entitled to put the investigation on trial and is likewise permitted to attack the investigation in front of the jury. *United States v. Sager*,

---

list of outstanding discovery, inclusive of "all communications sent by Mr. Andrew Stolper to any member of the prosecution or investigative team from 2018 to the present." [Dkt. 851-1, p. 52]. On September 10, 2021, AUSA Wyman responded in part, "With regard to the request related to communications with Mr. Stolper, No. 2, anything substantive we have related to the defendant either has been produced to the defense or was produced *in camera* to the Court several weeks ago." [Dkt. 851-1, p. 55]. These communications were never produced to the defense.

227 F.3d 1138, 1145-1146 (9th Cir. 2000); *see also, United States v. Howell*, 231 F.3d 615 (9th Cir. 2000)("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant…" (internal quotation/citations omitted)). Indeed, a criminal defendant is entitled to obtain and a jury is permitted to consider "facts demonstrating a skewed or biased investigation…" *United States v. Aguilar-Noriega*, 831 F. Supp. 2d 1180, 1203 (C.D. Cal. 2011). In accordance with the Supreme Court, the Ninth Circuit has demonstrated its position to allow jurors to hear evidence regarding the thoroughness of an investigation, "[t]o tell the jury that it may assess the product of an investigation, but that it may not analyze <u>the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information</u>." *Sager*, 227 F.3d at 1145 (emphasis added).

Evidence that Mr. Avenatti seeks to admit in furtherance of his defense theory (or theories), however, must also pass the scrutiny of Federal Rules of Evidence 401 and 403. Pursuant to the relevance requirement of Rule 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence … and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). Relevancy "simply requires that the evidence logically advance a material aspect of the party's case." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019). The "determination of whether evidence is relevant to an action or issue is expansive and inclusive." *United States v. Whitmore*, 2013 U.S. LEXIS 67636, at *4 (D. Nev. 2013); *citing Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384-87 (2008).

Relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Critically, when weighing probative value against unfair prejudice under Rule 403, the Court must analyze the issue assuming "<u>the evidence is believed</u>, not the degree the Court finds it believable." *Bowden. v.  McKenna*, 600 F.2d 282, 284-85 (1st Cir. 1979)(emphasis added)(citations omitted). "The court may not

exclude relevant evidence – or [] assign it no probative value – on the ground that it does not find the evidence to be credible." *United States v. Evans*, 728 F.3d 953, 963 (9th Cir. 2013), *citing United States v. Candoli*, 870 F.2d 496, 509 (9th Cir. 1989)(quotation omitted)).  Put simply, credibility and believability are for the jury, not the Court.  *Id.* at fn. 13 (citations omitted).

Testimony, evidence, and argument regarding Mr. Stolper is relevant to Mr. Avenatti's defense theories and passes the scrutiny of Rules 401 and 403. Accordingly, the government's motion should be denied in full.

## IV.    ARGUMENT

<u>First</u>, the prosecution's request exceeds the scope of evidence to be limited by way of a motion in limine. The government argues that "one of the primary purposes of a motion <u>in limine</u>, as approved by the Ninth Circuit is to limit in advance of a jury trial testimony and evidence relating to specific areas and topics to 'give counsel advance notice of the scope of certain evidence so admissibility is settled before attempted use of the evidence before the jury." [Dkt. 832, p. 7], *citing United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009). However, a motion in limine must be "specific enough for the Court to determine the admissibility of certain evidence at trial. Broad objections are not sufficient." *Abdular v. United States*, 2005 U.S. Dist. LEXIS 52747, at *3-4 (W.D. Wash. 2005). Generally, motions in limine "excluding broad categories of evidence are disfavored, as such issues are more fairly dealt with during trial as the admissibility of evidence arises." *Rush v. Weinsein*, 2022 U.S. Dist. LEXIS 72155, *3 (D. Id. 2022), *citing Sperberg v. Goodyear Tire & Rubber, Co.,* 519 F.2d 708, 712 (6th Cir. 1975)("Orders *in limine* which exclude broad categories of evidence should rarely be employed.").

The government seeks an Order that eliminates any argument, testimony or evidence regarding Mr. Stolper. The Court has routinely adopted the approach that the parties should be permitted to elicit questions so long as they have a good-faith belief in the said subject; and, the Court will rule on subsequent objections as they come in. Asking

the Court to exclude relevant testimony in a wholesale fashion is an improper use of an in limine motion. For this reason alone, the motion should be denied.

Second, evidence regarding Mr. Stolper is highly relevant to this case. The government argues, ". . . Mr. Stolper had nothing to do with the matters involving Geoffrey Johnson, Alexis Gardner, Gregory Barela, Michelle Phan, and Long Tran." [Dkt. 832, p. 8 (emphasis in original)]. If Mr. Stolper had nothing to do with these clients, then why was he eliciting testimony regarding many of the alleged victim clients at two separate judgement debtor examinations, one of which involved an agent sitting at the gallery?

The government has supplied two memoranda of interview regarding CDCA investigators/prosecutor's meetings with Mr. Stolper (March 26, 2019 and March 27, 2019). According to the type-written summaries, neither agents nor prosecutors asked Mr. Stolper about Mr. Johnson, Mr. Barela, Ms. Phan or Mr. Tran. Instead, Mr. Stolper revealed that he "helped with the NFL lawsuit case." [USAO_00133155]. Although there was temporal overlap between Mr. Stolper's employment at Eagan Avenatti, LLP and the firm's work on the relevant underlying civil actions related to the alleged victims, it is unclear how the prosecution is able to definitively conclude that Mr. Stolper did not have any involvement on these matters. In the Indictment, the government has alleged that the relevant scheme to misappropriate client funds began in or about January 2015 and extended through at least March 2019. [Dkt. 16, p. 6]. According to the government's own exhibit, Mr. Stolper signed a separation agreement on May 23, 2016. [Dkt. 832, Exhibit 1].

Further, as described above, Mr. Avenatti is entitled to present testimony, argument, and evidence regarding the government's investigation, motivations underlying the charging decisions, and the sources of information supplied to the government. As established above, the government has spoken to and met with Mr. Stolper on multiple occasions. Mr. Stolper provided the government with documentation in furtherance of its criminal investigation. Mr. Stolper has (or at least had) a personal relationship with AUSA Brett Sagel. Mr. Avenatti is entitled to present, and the fact-finder entitled to hear,

evidence regarding the flawed investigation, motivations behind the filing, and potential prosecutorial bias. It is clear that the argument, testimony, and evidence the government seeks to exclude is relevant pursuant to Rule 401.

Third, evidence regarding Mr. Stolper is not unduly prejudicial. The government argues, "The danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time is obvious from defendant's attempt to ask questions regarding Mr. Stolper and to allow defendant to do so again will invite a 'mini-trial' on completely irrelevant issues." [Dkt. 832, p. 9]. Further, the prosecution claims that attempts "to place before the jury that an entirely separate case involving a former prosecutors was dismissed for government misconduct and the prosecutor purportedly has a friendship with one of the government prosecutors would only serve to waste, time, confuse and mislead the jurors, and attempt to prejudice the government." [Dkt. 832, p. 10]. The government has failed to articulate exactly how the prosecution's case is prejudiced by the presentation of this evidence. The law of the Supreme Court and the Ninth Circuit is clear that a criminal defendant is entitled to attack the sloppiness of the government's investigation, charging motivations, and bias. The government has failed to establish *any prejudice* let alone prejudice that substantially outweighs the probative value described above.

Fourth, the exclusion Order requested by the government would deprive Mr. Avenatti of his ability to present a defense, which is a fundamental right protected by the United States Constitution. *See, Taylor, supra*, 484 U.S. 400. The law is clear that Mr. Avenatti is entitled to present argument, evidence and elicit testimony in furtherance of his defense theory. The Supreme Court has expressly protected a criminal defendant's ability to attack law enforcement's investigation, motivation, and good faith. *See, Kyles*, 514 U.S. 419.

For these reasons, the government's motion should be denied in full.

///

///

13

1

## V.     CONCLUSION

2       Based on the foregoing, Mr. Avenatti respectfully requests that the Court deny the

3  government's motion in its entirety.

4

  Dated: June 13, 2022                            Respectfully submitted,

5

6                                                 /s/ Michael John Avenatti
                                                   MICHAEL JOHN AVENATTI
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**



August 12, 2013

"Andrew has been a fearless, fierce advocate for victims of crime," Joseph McNally, an assistant U.S. Attorney at the Department of Justice, tells me. "He brought justice to countless victims of crime across the country who were bullied and taken advantage of by sophisticated fraudsters. He was among the best white-collar prosecutors in the country and his leaving the U.S. Attorney's office is a real loss.

"On a lighter side, he has an incredible sense of humor and will be missed by us," McNally added.

"Andrew is an outstanding, intelligent trial lawyer with a strong work ethic," responded Dennise D. Willett, chief of the U.S. Attorney's Santa Ana Branch Office. "He was routinely assigned to prosecute the most complex white collar cases in the Santa Ana Branch Office and other AUSAs routinely sought his advice and assistance on their cases. Andrew was a valuable member of our office, not only for his exceptional work, but also for the assistance he provided to his colleagues."

"I worked with Andrew since I transferred to the Santa Ana USAO in 2011 (I previously worked in our Riverside office and before that at main justice in DC)," explains Charles Pell, another assistant U.S. Attorney. "He was an essential asset to me and my colleagues in helping to formulate winning trial strategies. Andrew is especially gifted at taking a complex fact pattern and weaving into a compelling narrative that explains what happened to the jury without dumbing it down.

"Andrew has worked every variety of white collar case and was a wealth of legal, factual, and political knowledge on how the cases are investigated, prosecuted, and ultimately, resolved. Andrew is one of the most persuasive lawyers I've worked with because he employs a powerful cocktail of intellect, humor, moxie, and passion to make his arguments compelling."

Added Pell, "His leaving was a big loss for the office."

"I consider Andrew a good friend and he was one of the brightest and hardest working colleagues I've had here at the U.S. Attorney's Office," echoed Brett Sagel, a federal prosecutor whose name you may recall from Moxley's coverage of disgraced, ex-Orange County sheriff Mike Carona.

"Even while Andrew was busy with his own caseload, he was available to give invaluable assistance to others," Sagel continues. "From personal experience, he probably gave me more and better ideas for my opening statements in the Carona trial than anyone else, and he wasn't even on the case."

A current FBI agent who worked with Stolper since he joined the U.S. Attorney's office in 2002 also commented, although it is the bureau's policy that he not be identified.

"Mr. Stolper brought uncommon energy and intellect to complex fraud investigations," the agent said. "Many of his cases required dedication beyond the call of duty, and Mr. Stolper always exceeded my expectations. During the cases on which we collaborated, AUSA Stolper always applied fairness and kept an open mind, dealing with defendants objectively. His ability to absorb enormous amounts of information in short periods of time was matched only by his willingness to work extremely hard.

"I worked on several matters with AUSA Stolper that resulted in trials, and was always impressed by Mr. Stolper's acumen in legal matters and abilities in the courtroom. Mr. Stolper's was an asset to the furtherance of justice, and he will be missed."

# **CERTIFICATE OF SERVICE**

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 17 Corporate Plaza, Suite 254 in Newport Beach, California. I am not a party to the above-entitled action.  I have caused, on June 13, 2022 service of the:

DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE QUESTIONS AND REFERENCE TO ANDREW STOLPER PURSUANT TO FRE 401, 402, AND 403

on the following party, using the Court's ECF system:

AUSA RANEE KATZENSTEIN AND AUSA BRETT SAGEL

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 13, 2022

/s/ H. Dean Steward
H. Dean Steward

15