1 | TRACY L. WILKISON
United States Attorney
2 | SCOTT M. GARRINGER
Assistant United States Attorney
3 | Chief, Criminal Division
RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
4 | Assistant United States Attorney
Chief, Major Frauds Section
5 |      1100 United States Courthouse
       312 North Spring Street
6 |      Los Angeles, California 90012
       Telephone: (213) 894-2432
7 |      Facsimile: (213) 894-6269
       Email:     Ranee.Katzenstein@usdoj.gov
8 |
BRETT A. SAGEL (Cal. Bar No. 243918)
9 | Assistant United States Attorney
       Ronald Reagan Federal Building
10 |     411 West Fourth Street, Suite 8000
       Santa Ana, California 92701
11 |     Telephone:  (714) 338-3598
       Facsimile:  (714) 338-3708
12 |     Email:     Brett.Sagel@usdoj.gov

13 | Attorneys for Plaintiff
UNITED STATES OF AMERICA

14

UNITED STATES DISTRICT COURT

15

FOR THE CENTRAL DISTRICT OF CALIFORNIA

16

| UNITED STATES OF AMERICA, | No. SA CR 19-061-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER TO SHOW CAUSE RE CIVIL CONTEMPT AND FINDING OF CONTEMPT AND MOTION TO COMPEL DISCOVERY (CR 851) |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | Hearing Date: June 27, 2022 Hearing Time: 8:30 AM |

24       Plaintiff United States of America, by and through its counsel

25  of record, the United States Attorney for the Central District of

26  California and Assistant United States Attorneys Brett A. Sagel and

27  Ranee A. Katzenstein, hereby files its Opposition to defendant

28  MICHAEL JOHN AVENATTI's Motion for an Order to Show Cause re Civil

1  Contempt and a Finding of Contempt and Motion to Compel Discovery (CR

2  851).

3       This Opposition is based upon the attached memorandum of points

4  and authorities, the files and records in this case, and such further

5  evidence and argument as the Court may permit.

6   Dated: June 13, 2022              Respectfully submitted,

7                                     TRACY L. WILKISON
                                       United States Attorney
8
                                       SCOTT M. GARRINGER
9                                      Assistant United States Attorney
                                       Chief, Criminal Division
10

11            /s/
                                       _____
       BRETT A. SAGEL
12     RANEE A. KATZENSTEIN
                                       Assistant United States Attorneys
13
                                       Attorneys for Plaintiff
14                                     UNITED STATES OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       2

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.................................................i

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   RELEVANT PROCEDURAL BACKGROUND..............................1

      A.   Discovery Requests and Production......................1

           1.   Discovery prior to and during the first trial......2

           2.   Discovery following the mistrial...................2

      B.   Defendant's Claims of Additional Outstanding Discovery....8

           1.   Analysis Group's Invoices.........................8

           2.   Draft Summary Charts..............................9

           3.   Slides/Decks/Presentations by the Analysis Group.....9

           4.   Memoranda Referenced by the Analysis Group..........9

           5.   Communications from the Analysis Group.............10

           6.   Drives and materials provided to the Analysis
                Group............................................10

           7.   Financial information relating to the clients......11

           8.   Client Cost, Expense, and Invoice Information......11

           9.   Financial Information relating to EA LLP...........11

           10.  Statements of Government Witnesses................12

           11.  Financial Reports relating to clients and EA LLP....12

           12.  Communications with Andrew Stolper................12

III.  ARGUMENT...................................................13

      A.   Motion for Contempt...................................13

      B.   Motion to Compel Discovery............................16

IV.   CONCLUSION.................................................16

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                            <u>PAGE</u>

**<u>SUPREME COURT</u>**

<u>Shillitani v. United States</u>,
   384 U.S. 364 (1966)  ........................................... 13

**<u>FEDERAL COURT</u>**

<u>In re Dual-Deck Video Cassette Recorder Antitrust Litig.</u>,
   10 F.3d 693 (9th Cir. 1993)  .............................. 13, 16

<u>Wiener v. Federal Bureau of Investigation</u>,
   943 F.2d 972 (9th Cir. 1991)  ................................. 15

**<u>RULES</u>**

Rule 5 ..................................................... 13, 14
Rule 16 ....................................................... 14
Rule 615 ...................................................... 15

1              **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3       On October 11, 2021, defendant MICHAEL JOHN AVENATTI filed his

4  second motion for an order to show cause ("OSC") and a finding of

5  civil contempt (CR 851) ("Motion").[1]  Like the first motion, which

6  this Court denied (CR 431), defendant's present Motion relies on

7  baseless and unsupported accusations, ignores the facts, and makes

8  misleading representations.  His request for an OSC lacks merit

9  because the government has not violated any court order and defendant

10 comes nowhere close to meeting his burden to establish by clear and

11 convincing evidence that the government has failed to meet its

12 discovery obligations.  His motion to compel is moot because the

13 government has already voluntarily produced to defendant much of the

14 discovery about which he complains.  The Court should deny the Motion

15 in its entirety.

16 **II.   RELEVANT PROCEDURAL BACKGROUND**

17      **A.    Discovery Requests and Production**

18      In his Motion, defendant repeats the same misleading "factual

19 history" regarding events prior to and during trial that he has

20 recited in prior filings. (CR 851 at 2-15.)  The government has

21 previously addressed -- and corrected -- these misleading assertions

22 (see, e.g., CR 825).[2]

23 _____

24      [1] One day after filing the Motion, defendant filed his notice of
   interlocutory appeal (CR 852) and then argued that the Court was
25 divested of jurisdiction (CR 861) to address the misleading
   assertions and meritless claims presented in the Motion.

26      [2] Examples of errors in defendant's statement of facts are
   provided below and in the government's Opposition to Defendant's
27 Motion to Dismiss Due to Double Jeopardy, Prosecutorial Misconduct,
   Contempt of this Court's January 25, 2021 Order and Violations Of
28 Defendant's Right to Due Process (CR 825), which is incorporated
                                    *(footnote cont'd on next page)*

1          1.    Discovery prior to and during the first trial

2       Among the misleading assertions relating to discovery prior to

3  trial, defendant states that the Court denied his first motion for

4  contempt (filed in March 2021) "without a hearing based on the

5  government's assurances that everything had been produced [Dkt.

6  431]."  (CR 851 at 6.)  In fact, the Court's written order denying

7  defendant's motion provided the Court's actual reasoning for the

8  denial:

9           In those limited instances where Avenatti's allegations
            pass the level of mere surmise and speculation, he has not
10          established by clear and convincing evidence that the
            Government has failed to meet its obligations under the
11          order.  In re Dual-Deck Video Cassette Recorder Antitrust
            Litigation, 10 F.3d 693, 695 (9th Cir. 1993); KSM Fastening
12          Systems, Inc. v. H.A. Jones Co., Inc., 776 F.2d 1522, 1524
            (Fed Cir. 1985). . . . The Court denies the motion for an
13          order to show cause.

14  (CR 431.)

15          2.    Discovery following the mistrial

16      Defendant's chronicle of events following the mistrial

17  declaration on August 24, 2021, is also misleading.  On September 13,

18  2021, the government filed a motion to specifically address and

19  ensure that the government could comply with its discovery

20  obligations going forward, explicitly requesting the Court's

21  permission to provide a copy of the Eagan Avenatti LLP ("EA LLP")

22  servers to defendant.  (CR 809).  Defendant's assertion that the

23  government "refused" to stipulate to providing defendant a copy of

24  the servers (CR 851 at 16) is belied by the facts.  As defendant knew

25  at the time he filed his Motion, the government did not believe it

26  could just agree to give defendant a copy of the servers because the

27  _____

28  herein by reference.  The government will provide any additional
    information that the Court requests regarding the underlying facts at
    the hearing on defendant's Motion.

1  Court had denied defendant's request for a copy of the servers on

2  three prior occasions, the receiver/trustee opposed providing a copy

3  of the servers to defendant, and the government's authority to access

4  the servers under the search warrant had lapsed.  (See, e.g., CR 809

5  at 6.)  On September 16, 2021, the Court ordered that the government

6  provide a copy of the EA LLP servers to defendant (CR 817), and the

7  government gave defendant a forensic copy of the EA LLP servers

8  immediately thereafter.  Even though the government provided a copy

9  of the EA LLP servers to defendant pursuant to this Court's order,

10 defendant continues to claim that the government has not produced

11 unspecified records that, if they existed, would be on the servers.

12      The government produced further discovery, with a detailed

13 discovery letter and index, to defendant on September 29, 2021.  This

14 production reproduced materials (with bates numbers) that that had

15 been previously produced, including the Tabs records agents reviewed

16 on the forensic copy of the EA LLP servers at the Court's direction

17 in August 2021, as well as notes of interviews, a copy of the

18 separation agreement between EA LLP/defendant and Andrew Stolper that

19 the government obtained for its motion in limine filed on September

20 29, 2021 (CR 832), and copies of Analysis Group invoices that the

21 government produced voluntarily and solely as a matter of discretion.

22      Defendant claims "[m]uch of this information was in the

23 possession of the government well before the first trial – in some

24 cases since May 2019."  (CR 851 at 17.)  Defendant's claim is false

25 because, as the discovery itself and the discovery letter and index

26 provided to defendant made clear, the government only came into

27 possession of much of information produced in September 2021 (four of

28 the five categories defendant used to characterize the discovery)

3

1   during or after trial.   Prior to trial, pursuant to its discovery

2   obligations, the government provided to defendant the amount paid to

3   the Analysis Group (a fact defendant raised repeatedly during trial).

4   At defendant's request post-trial, the government in its discretion

5   provided the invoices submitted by the Analysis Group comprising the

6   amounts the government paid its expert.   As to the materials provided

7   on September 29, 2021, without a single specific reference or

8   example, defendant simply makes the conclusory claim that the

9   discovery included "*Brady, Giglio* and/or Jencks Act material (at a

10  minimum) . . . " that was purportedly "suppress[ed]." (Id.)

11  Defendant does not specify what materials were covered by any of

12  these discovery rules, nor could he because none of the materials

13  could be deemed discovery to which any of these rules applied.

14      For example, the government's September 29, 2021, production

15  included the agent notes of the interviews E.B.,[3] M.W., and N.B.

16  These interviews were conducted specifically in response to claims

17  and statements defendant made to the Court and the jury during the

18  trial.   The interviews demonstrated that defendant's statements were

19  false.   Defendant claimed at trial (primarily during his cross-

20  examination of Michelle Phan), that the Newport Beach Police

21  Department ("NBPD") told Ms. Phan that there was insufficient

22  evidence to pursue her claims against defendant.   On August 19, 2021,

23  the government interviewed the lead NBPD investigator, E.B., who

24  stated she never told Ms. Phan or her attorneys that there was not

25  enough evidence to investigate the matter.   To the contrary, E.B.

26  stated she numbered the case and wrote up a report and provided it to

27

28      [3] Defendant uses the initials E.D. in his summary of interview
    notes (CR 851 at 17), but the witness's initials are E.B.

4

1  the Orange County District Attorney's Office because she believed Ms.

2  Phan's allegations presented a potential criminal matter.

3      The government interviewed M.W. on August 23, 2021, after

4  learning that defendant intended to call M.W. as a witness.

5  Defendant through his questioning of other witnesses, and

6  specifically in a statement to the Court, claimed M.W. was a CPA who

7  worked at EA LLP.  (See, e.g., RT 7/28/21 v.II at 30 ("Q. Was that

8  [M.W.]? A. Yes, it was. Q. And she was a CPA at the time; right?");

9  RT 8/19/21 v.I at 26 ("Your Honor, let me provide some more

10  background for the Court because I think it's important. Ms. [M.W.]

11  was a CPA at the law firm.").)  During the interview, M.W. stated

12  that she stopped working at EA LLP in October 2014 (prior to the

13  conduct at issue in this case), is not a CPA, never was a CPA, and

14  never told anyone she was a CPA.

15      On September 3, 2021, the government interviewed N.B., an

16  attorney who worked at the firm that briefly served as local counsel

17  in Colorado on the Barela matter.  During trial, defendant claimed

18  the expenses on the Barela matter included money owed to this firm

19  for serving as local counsel.  (RT 8/10/21 v.I at 69.)  N.B. stated

20  that a file was briefly opened on the Barela matter, she sat in on a

21  few phone calls, her firm withdrew from the matter, and she did not

22  believe any bills were generated on the case.

23      In sum, E.B., M.W., and N.B. were not government witnesses, and

24  nothing in their interview reports could be remotely classified as

25  Brady, Giglio, or Jencks material.  Defendant's conclusory claim that

26  the discovery pertaining to the interviews of E.B., M.W., and N.B.

27  was Brady, Giglio, or Jencks misses the mark, as do his conclusionary

28  assertions that any of the other materials produced on September 29,

5

1    2021, had been previously "suppressed" by the government in violation

2    of <u>Brady</u>, <u>Giglio</u>, of <u>Jencks</u>.[4]

3         Although defendant cites to correspondence between the parties

4    and includes these communications as exhibits (CR 851 at 17, Exs. Q,

5    R, S, T), defendant completely ignores the responses the government

6    provided defendant and defendant's refusal to engage in good faith to

7    actually identify any discovery he believed he was entitled to but

8    had not received.  For example, after the government voluntarily

9    produced to defendant all invoices submitted by the Analysis Group,

10   defendant demanded that the government produce invoices for other

11   months and "immediately produce the memoranda referenced in the

12   billing records."  (<u>Id.</u> Ex. O.)  The government explained that the

13   Analysis Group did not submit bills every month and asked for

14   clarification from defendant regarding the demanded "memoranda"

15   [plural] because the government had only found one reference to a

16   memorandum [singular] in the August 2019 invoice, which the

17   government would attempt to identify with the Analysis Group.  (<u>Id.</u>

18   Ex. Q.)  Despite the government's response, and based on nothing

19   other than defendant's "beliefs," defendant continued to claim that

20   other invoices existed and demanded that they be produced

21   immediately.  (<u>Id.</u> Ex. R.)  Similarly, defendant provided no further

22   explanation of his reference to "memoranda," but pressed the exact

23

24   _____

25        [4] The same is true of the EA Separation Agreement with Andrew
     Stolper, which defendant similarly asserts was "suppressed" until it
26   was included in the September 29, 2021, production. (CR 851 at 17.)
     The separation agreement is not <u>Brady</u>, <u>Giglio</u> or <u>Jencks</u> material.
27   Defendant's irrelevant and false assertions throughout the trial
     about his "firing" of Andrew Stolper are contradicted by the
28   separation agreement entered into by defendant and Mr. Stolper.  (<u>See</u>
     CR 832.)

1    same demand as he had previously made without any basis to believe

2    such documents existed or were in the government's possession.  (Id.)

3        On October 8, 2021, along with a detailed discovery letter and

4    index, the government produced 443 pages of discovery along with

5    three native excel files to defendant related to correspondence and

6    draft charts with representatives of the Analysis Group.[5]  As

7    explained to defendant in the discovery letter, most of the discovery

8    produced on October 8, 2021, fell outside of the government's

9    discovery obligations, but was being voluntarily produced pursuant to

10   defendant's requests, and much of the material related to the severed

11   counts of the indictment and not the client counts which were the

12   subject of the trial.  Defendant claims "much" of the materials

13   provided in October 2021 "contradicts the testimony of Mr. Drum

14   provided at trial and certain arguments the government made before

15   the jury."  (CR 851 at 18.)  Tellingly, defendant does not provide a

16   single example of any such contradiction.  Nor could he because this

17   information does not undermine any testimony or arguments presented

18   at the trial, and even if it did, defendant would be free to use it

19   in his defense at the retrial.  Also, again without a single specific

20   reference or example, defendant makes the conclusory claim that

21   almost all of the October 2021 discovery is "*Brady, Giglio* and/or

22   Jencks Act material (at a minimum) . . ."  (Id.)  Defendant is wrong

23   and, in any case, the government provided defendant with the

24   material.

25

26   _____

27       [5] Defendant states the government produced 446 pages of material
     on October 8, 2021, but the government only assigns a single bates
     number to a native file.  In actuality, the government produced 443
28   pages of material along with three native excel files assigned a
     single bates number for each.

1    In short, despite asking the Court to hold the government in

2  contempt for purportedly not providing discovery pursuant to its

3  obligations, defendant provides no evidence or examples of the

4  government failing to produce discoverable material to defendant or

5  suppressing any such material.

6        **B.    Defendant's Claims of Additional Outstanding Discovery**

7        Citing to twelve categories of material, defendant asserts that

8  "it is clear that the prosecution continues to suppress materials

9  that must be produced to the defendant."  (CR 851 at 18-19.)[6]

10 Defendant neither identifies with any specificity what he believes

11 the government has in its possession that it has not provided to the

12 defendant nor explains how the information he claims he has not

13 received is actually discoverable under federal law.  A review of the

14 categories cited by defendant demonstrates that defendant's claims

15 are baseless.

16            1.    Analysis Group's Invoices

17    As of September 29, 2021, the government produced all of the

18 invoices submitted to the government by the Analysis Group for

19 payments.  Analysis Group submitted one invoice post-trial for its

20 work for the period August 1, 2021, through October 31, 2021, which

21 the government will voluntarily produce to defendant, along with any

22 additional invoices the Analysis Group may submit to the government

23 regarding this matter in the future.

24

25

26

27        [6] Defendant lists twelve categories of materials he claims he is
   missing (Motion at 18-19) and then, inexplicably, lists nine
28 categories (Id. at 23-25).  The government's response addresses the
   twelve categories initially identified by defendant.

                                      8

1              2.    Draft Summary Charts

2       As documented in previous filings (see, e.g., CR 564, CR 732),

3 the government has produced the draft summary charts of the Analysis

4 Group and John Drum to defendant, including with the government's

5 expert disclosure notifications in March and May 2020, during trial,

6 and in the October 9, 2021, discovery production.  A majority of the

7 draft charts relate to the counts of the indictment that were severed

8 for trial.

9              3.   Slides/Decks/Presentations by the Analysis Group

10      As with the draft summary charts above, the government has

11 produced these to defendant through multiple disclosures.

12             4.    Memoranda Referenced by the Analysis Group

13      As described above, and as defendant has previously been

14 informed, the government neither has in its possession nor knows what

15 the one reference to the memorandum in the August 2019 invoice from

16 the Analysis Group is.  The government followed up with the Analysis

17 Group, which did not immediately know what the reference related to;

18 if the government obtains said memorandum, it will produce it to

19 defendant.  Despite the government attempting to work with defendant

20 to understand what defendant is referring to when he demanded

21 "memoranda" (CR 851 Ex. Q (using the plural)), defendant continues to

22 claim in the present motion "memoranda referenced in the email

23 correspondence" and "memoranda . . . referenced within the email

24 correspondence and certain invoices" (CR 851 at 19, 24), without any

25 specific citation to the "invoices" [plural].  There is/are no such

26 memorandum/a in the government's possession to produce.

27

28

1          5.   Communications from the Analysis Group

2        Although not all communications from a member of the Analysis

3   Group are discoverable, the government has voluntarily produced

4   communications from members of the Analysis Group to defendant,

5   including in the 400-plus pages of discovery produced on October 9,

6   2021.  Along with the additional Analysis Group invoice received

7   after trial and any further invoices related to this case received in

8   the future, the government will voluntarily produce communications

9   from members of the Analysis Group that have occurred since the

10  trial.

11          6.   Drives and materials provided to the Analysis Group

12        During trial, defendant filed a motion on this very issue (CR

13  772), to which the government responded (CR 774).  The government has

14  produced to defendant all of the records provided to the Analysis

15  Group and has provided detailed descriptions of the material to

16  defendant.  The government produced the materials to the Analysis

17  Group on a discovery database, Eclipse, to facilitate the Analysis

18  Group's review.  As stated in the government's filing, the government

19  would provide defendant with the exact bates numbers of the documents

20  provided to the Analysis Group if defendant requested the numbers (CR

21  774), but defendant has never done that.  Without establishing that

22  there are any documents provided to the Analysis Group that have not

23  been produced to defendant or any legal basis for defendant to insist

24  on a reproduction of the discovery platform used to provide the

25  materials to the Analysis Group, defendant claims he "wants the

26  actual compiled drive used by Mr. Drum in conducting his analysis."

27  (CR 851 at 24 (emphasis in original).)

28

1          7.   Financial information relating to the clients

2          Without providing any examples or specifics, defendant claims

3    the government has "withheld cost invoices and financial information

4    relating to the clients identified in the indictment."  (CR 851 at

5    24.)  The government is unaware of what defendant is referring to.

6    In any case, the government has produced to defendant the financial

7    information relating the clients that the government has.  Moreover,

8    defendant has had access to the full forensic copy of the EA LLP

9    servers, which the Prosecution Team does not have, since September

10   2021 and thus has had in that way access to any existing documents

11   including such financial information for more than eight months.

12          8.   Client Cost, Expense, and Invoice Information

13         The government is unaware of what defendant is referring to in

14   this category. (Defendant has not provided examples or specifics.)

15   However, as noted above, the government has produced to defendant the

16   financial information relating the clients that the government has,

17   and defendant has had access to the full forensic copy of the EA LLP

18   servers since September 2021 and thus has had in that way access to

19   any existing documents including client financial information since

20   that time.

21         9.   Financial Information relating to EA LLP

22         Because defendant provides no examples or specifics, the

23   government is again unaware of what defendant believes the government

24   has not produced.  The government has produced to defendant the

25   financial information relating the clients that the government has,

26   and defendant has had access to the full forensic copy of the EA LLP

27   servers since September 2021 and thus has had in that way access to

28

1  any existing documents containing financial information relating to

2  EA LLP since that time.

3     10.   Statements of Government Witnesses

4   The government has produced and will continue to produce any

5  statements of witnesses the government has in its possession,

6  including statements of individuals who the government does not

7  intend to call as witnesses at trial and/or statements from persons

8  who the government will call to testify even if those statements do

9  not relate to the subject matter of their anticipated testimony.

10     11.   Financial Reports relating to clients and EA LLP

11   Without providing any examples or specifics, defendant claims

12  the government "has suppressed financial reports and spreadsheets

13  relating to the client settlement proceeds and financial condition of

14  the firm."  (CR 851 at 25.)  The government does not know to what

15  defendant is referring.  The government's response to category seven,

16  above, would apply here as well.

17     12.   Communications with Andrew Stolper

18   As detailed in the government's motion in limine (CR 832),

19  Andrew Stolper's only connection to the matters at issue in this

20  prosecution is his representation of Jason Frank, who was one of

21  defendant's creditors, and his provision of documents to the

22  government in his capacity as Mr. Frank's attorney.  Citing an email

23  the government sent defendant, defendant states "there is evidence

24  that such correspondence [between the government and Mr. Stolper]

25  exists as the government claimed to have lodged it with the Court."

26  (CR 851 at 24, Ex. K.)  The Court ordered the government to submit

27  its communications with Mr. Stolper in camera for the Court "to make

28  a detailed review, to see if they're appropriately subject to

12

1  production."  (RT 8/19/21 v.II at 52.)  As the Court stated then,

2  "[i]t doesn't follow that any time Mr. Stolper's name appears that,

3  ipso facto, whatever his name appears is subject to production."

4  (Id.)  The government submitted the communications to the Court on

5  August 19, 2021, and at no point has the Court directed the

6  government to produce the communications to defendant.

7  **III.  ARGUMENT**

8       **A.    Motion for Contempt**

9       Defendant asks the Court to hold the government in civil

10  contempt, a remedy generally used to address a party's "refusal to

11  obey a court order."  Shillitani v. United States, 384 U.S. 364, 371

12  (1966).  A party seeking civil contempt "must demonstrate that the

13  alleged contemnor violated the court's order by 'clear and convincing

14  evidence,' not merely a preponderance of the evidence," and that such

15  violation was "beyond substantial compliance" and "not based on a

16  good faith and reasonable interpretation of the order."  In re Dual-

17  Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th

18  Cir. 1993).

19       Defendant's Motion is based solely on the premise that the

20  government violated the Court's Rule 5(f) Order issued on January 25,

21  2021 (CR 408).  Not so.  Defendant's Motion fails because the

22  government has properly complied with its discovery obligations in

23  this case and has not violated any court order, including the Court's

24  Rule 5(f) Order.  Just like defendant's prior motion seeking to hold

25  the government in contempt, defendant's present Motion is based on

26  unsupported accusations and mere speculation.  The Court should, as

27  it previously did, deny defendant's motion for failing to establish

28

13

1 │ by clear and convincing evidence that the government has failed to

2 │ meet its obligations under the Court's order.  (CR 431.)

3 │      As this Court has noted, Rule 5(f) does not alter or expand the

4 │ government's discovery obligations.  (CR 838 at 4 n.6.)  The Court's

5 │ Rule 5(f) Order simply confirms the government's continuing duty to

6 │ disclose Brady and Rule 16 materials to the defense in a timely

7 │ manner.  The government has produced a significant amount of material

8 │ to defendant in this case, often far in advance of applicable

9 │ discovery deadlines and including numerous materials that exceed the

10 │ government's discovery obligations.  The materials defendant claims

11 │ have been withheld or until recently "suppressed" either are not

12 │ Brady or Rule 16, have already been produced, or simply do not exist.

13 │      Even if the government's discovery obligations required the

14 │ government to produce the materials it provided to defendant in

15 │ September and October 2021, the government still complied with both

16 │ its discovery obligations and the Court's Rule 5(f) Order, which

17 │ orders the government to produce evidence "in a timely manner."  (CR

18 │ 408 at 1.)  Defendant does not provide any specific examples of the

19 │ government failing to meet its obligations with the materials

20 │ produced or explain in what way the productions were not timely.  Nor

21 │ does defendant offer any support for his accusations that the

22 │ government has withheld or "suppressed" further discoverable

23 │ materials.  Instead, he relies on rank speculation.

24 │      Indeed, defendant implicitly acknowledges this fatal shortcoming

25 │ when he states in a footnote that he "is prepared to make an *in

26 │ camera* presentation to the Court explaining the significance of the

27 │ recently produced documents, why they are *Brady/Giglio/Jencks*, and

28 │ the prejudice that has resulted."  (CR 851 at 18 n.7.)  Defendant

14

1  provides no authority for the unorthodox procedure he proposes,

2  namely, to make an accusation unsupported by any actual evidence, and

3  then claim he can simply produce such evidence later in camera.  In

4  camera review should not replace the adversarial process and is only

5  appropriate after the party with the burden has submitted detailed

6  affidavits and other evidence to the extent possible in support of

7  its position.  See, generally, Wiener v. Federal Bureau of

8  Investigation, 943 F.2d 972, 979 (9th Cir. 1991).  That is

9  particularly true here, given that the Court has already specifically

10  found that defendant provided misleading and inaccurate statements

11  and claims in camera in order to obtain permission to subpoena two

12  special agents from New York to testify in this case.  (RT 8/17/21

13  v.II at 92-98.)[7]  The Court should not permit defendant, who has a

14  history of providing false and misleading information to the Court,

15  to attempt to cure the shortcomings in his Motion through an in

16  camera submission shielded from adversarial testing.[8]

17      In short, defendant is asking the Court to issue an Order to

18  Show Cause regarding whether the government should be held in

19  contempt (and then actually hold the government in contempt even

20  before any OSC hearing (CR 851 at 25)) for failing to comply with a

21

22      [7] The Court has also already admonished defendant about
23  advancing claims without a factual basis.  (RT 8/3/2021 v.II at 7-8
   ("THE COURT: Sir, supposedly you had a factual basis to make the
24  motion or to bring to the Court's attention the potential Rule 615
   violation prior to the time we took the recess this morning. . . .
25  Sir, you obviously had the benefit of the tweets to make the comments
   that you made. . . .  I assume in order to have a factual basis to
26  make those statements in good faith, you had in mind and had, in
   fact, reviewed the tweets and had them with you.").)

27      [8] In camera review is sometimes appropriate to protect defense
   strategy from untimely disclosure.  That basis is clearly inapposite
28  here, where defendant has already presented his defense theory
   extensively and repeatedly at trial.

15

1   court order.  Yet defendant provides no evidence whatsoever -- let

2   alone clear and convincing evidence -- that the government has failed

3   to comply with a court order.  Because defendant has failed to carry

4   his burden of proving by clear and convincing evidence that the

5   government has violated a court order -- indeed, he has not provided

6   any reason to even suspect that the government has done so -- the

7   Court should deny defendant's Motion.  See <u>Dual-Deck Video Cassette</u>

8   <u>Recorder</u>, 10 F.3d at 695.

9        **B.    Motion to Compel Discovery**

10      As described above, the government has produced the relevant

11   material defendant references, will continue to produce any

12   additional relevant material, and/or the material about which

13   defendant complains does not exist.  As such, the Court can and

14   should deny defendant's Motion to Compel as moot.

15   **IV.  CONCLUSION**

16      For the foregoing reasons, the government respectfully requests

17   that this Court deny defendant's motion in its entirety.

18

19

20

21

22

23

24

25

26

27

28