UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

| UNITED STATES OF AMERICA, | )CERTIFIED TRANSCRIPT |
| Plaintiff, | ) |
| vs. | ) |
| | )  SACR-19-00061-JVS |
| MICHAEL JOHN AVENATTI, | ) |
| Defendant. | ) |
| ----------------------------) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

June 16, 2022

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(612) 804-8655

```
1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    NICOLA T. HANNA
     United States Attorney
4    BRANDON D. FOX
     Assistant United States Attorney
5    Chief, Criminal Division
     RANEE KATZENSTEIN
6    Assistant United States Attorney
     OFFICE OF U.S. ATTORNEY
7    Major Frauds Section
     312 North Spring Street, 11th Floor
8    Los Angeles, CA  90012
     (213) 894-2432
9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1    SANTA ANA, CALIFORNIA; THURSDAY, JUNE 16, 2022; 11:02 A.M.
 2              THE CLERK:  Calling Item No. 1, SACR-19-00061-JVS,
 3    United States of America versus Michael Avenatti.
 4              THE CLERK:  Counsel, please state your appearances
 5    for the record.
 6              MR. SAGEL:  Good morning, Your Honor.  Brett Sagel
 7    and Ranee Katzenstein on behalf of the United States.
 8              THE COURT:  Good morning.
 9              THE DEFENDANT:  Good morning, Your Honor.
10    Defendant Michael Avenatti, and present with me is Dean
11    Steward, advisory counsel, and Ms. Cummings-Cefali.
12              MR. STEWARD:  Your Honor, we would request an hour
13    to speak further with our client.  We have had discussions
14    with the government this morning.  They shared some
15    information that's new to us that we need to make some final
16    decisions on, and we would just ask for 60 minutes.
17              THE COURT:  Any objection?
18              MR. SAGEL:  I'm not sure that there is a need for
19    an hour.  What I explained is the defendant filed his notice
20    or Sunday.  The first time we have heard from them was about
21    20 to 30 minutes ago.  They have had four days to contact
22    us.  We are not starting from anew.  If they want 30 minutes
23    or if you think an hour, we will defer to the Court.  He is
24    pro se.  He represents himself.
25              THE COURT:  He does have advisory counsel.
```

```
 1              MR. SAGEL:  Yes.
 2              THE COURT:  And there was a purpose in appointing
 3    advisory counsel; was there not?
 4              MR. SAGEL:  There was, and that could have been
 5    taken place in the last four days as well.
 6              THE COURT:  If you need up to an hour, we will be
 7    in recess.  If you are ready to go sooner than that, please
 8    let Ms. Bredahl know.  We will be in recess.
 9              (Recess)
10              THE CLERK:  Calling Item No. 1, SACR-19-00061-JVS,
11    United States of America versus Michael Avenatti.
12              MS. KATZENSTEIN:  Good morning, Your Honor.  Ranee
13    Katzenstein and Brett Sagel on behalf of the United States.
14              THE COURT:  Good morning.
15              THE DEFENDANT:  Good morning, Your Honor.
16    Defendant Michael Avenatti present with my advisory counsel,
17    Mr. Dean Steward, and Ms. Cummings-Cefali.
18              THE COURT:  Good morning.
19              What are we going to do this morning?
20              THE DEFENDANT:  Your Honor, I'm prepared to plead
21    guilty to five counts in the Indictment this morning.
22              THE COURT:  Which five?
23              THE DEFENDANT:  5, 8, 9, 10 and count 19.
24              THE COURT:  Could I ask you to give me those
25    again.
```

1          THE DEFENDANT:  Counts 5, 8, 9, 10, and 19.  The

2    first four are wire fraud.

3          THE COURT:  Okay.  And Count 19 is a tax count.

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Does the government have any comments

6    at this point?

7          MS. KATZENSTEIN:  No, Your Honor.  We are prepared

8    to proceed.

9          THE COURT:  Is the government prepared to state

10   the elements of the charges to which Mr. Avenatti wishes to

11   plead?

12         MS. KATZENSTEIN:  It is, Your Honor.

13         THE COURT:  Okay, very good.

14         Mr. Avenatti, would you go to the lectern, please.

15         Sir, before I accept your pleas of guilty, I need

16   to make sure that you understand the nature of the charges

17   and the consequences of any plea.  I also need to make sure

18   that you understand your constitutional and statutory

19   rights.  For those reasons, I'm going to ask you a number of

20   questions.  If any of my questions are unclear, please let

21   me know, and I would be happy to rephrase the questions.

22         You have the right to consult with your advisory

23   counsel at any point.  If you would like to do that, please

24   let me know.

25         At this time, the clerk is going to put you under

1     oath.

2             (Defendant sworn)

3             THE COURT:  Sir, do you understand that you are

4     now under oath, and that if you answer any of my questions

5     falsely, you could be prosecuted later for perjury or the

6     making of a false statement?

7             THE DEFENDANT:  Yes.

8             THE COURT:  State your true and correct name.

9             THE DEFENDANT:  Michael John Avenatti.

10             THE COURT:  How old are you?

11             THE DEFENDANT:  Fifty-one.

12             THE COURT:  Tell me about your education.

13             THE DEFENDANT:  I graduated college from the

14     University of Pennsylvania, and I graduated law school from

15     George Washington University in December 1999.

16             THE COURT:  Have you recently been treated for any

17     mental illness?

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Have you recently been treated for any

20     addiction to narcotics?

21             THE DEFENDANT:  No.

22             THE COURT:  Have you taken any medication, drugs,

23     or alcohol within the past 72 hours?

24             THE DEFENDANT:  No.

25             THE COURT:  Do you suffer from any mental

1  condition that would prevent you from understanding fully

2  the nature of the charges against you and the consequences

3  of any guilty plea?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Is there any reason at all why we

6  cannot go forward with your plea?

7          THE DEFENDANT:  No.

8          THE COURT:  Sir, how do you feel today?

9          THE DEFENDANT:  I'm obviously nervous, Your Honor,

10 but health wise I'm fine.

11         THE COURT:  Do you feel alert?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Do you feel that your thinking powers

14 are working well?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Are you in the frame of mind today

17 such that you believe you are able to make an important

18 decision?

19         THE DEFENDANT:  Yes.

20         THE COURT:  The Court having observed the

21 defendant and having considered his responses, the Court

22 finds that the defendant is in the full possession of his

23 faculties.

24         Sir, you have a number of constitutional rights

25 that you will be giving up by pleading guilty.  I'm going to

1  tell you about those at this time.

2        You have the right to a speedy and public trial.

3  You have the right to be tried by a jury.  Alternatively,

4  you have the right to waive a jury trial and to be tried by

5  the Court.  In either case, you have the right to persist in

6  your plea of not guilty, and you have the right to make the

7  government prove that you are in fact guilty beyond a

8  reasonable doubt.

9        You have the right to be represented by an

10  attorney throughout these proceedings, and if you cannot

11  afford one, one will be appointed for you free of charge.

12        You have the right to confront and cross-examine

13  all witnesses called to testify against you.  You also have

14  the right to present witnesses on your own behalf, and you

15  have the right to have them subpoenaed, that is, compelled

16  by Court order to come here to testify.

17        You also have a privilege against

18  self-incrimination.  That is the right to remain silent.

19  However, by entering a plea of guilty, you are giving up

20  that right because you are in fact incriminating yourself.

21  You have the right to testify on your behalf, but you cannot

22  be compelled to do so or to incriminate yourself in any way.

23  If you do not testify at trial, that fact cannot be used

24  against you.

25        In the event of a conviction after trial, you have

1    the right to appeal the conviction and the sentence.

2         Do you wish any time at this point to confer with

3    your advisory counsel with regard to your rights?

4         THE DEFENDANT:  No, Your Honor.

5         THE COURT:  Sir, in Counts 5, 8, 9, and 10, you

6    have been charged with violating Title 18, United States

7    Code, Section 1343, wire fraud, which is a felony; and in

8    Count 19, you have been charged with violating Title 26,

9    United States Code, Section 7212(a), failure to pay taxes,

10   which is also a felony.

11        Would the government recite the elements of the

12   charges.  Perhaps I have mischaracterized 7212.  Help me

13   out.

14        MS. KATZENSTEIN:  For a violation of 7212 of Title

15   26 is endeavoring to obstruct the administration of the

16   Internal Revenue Code.

17        In order for the defendant to be guilty of the

18   crime charged in Counts 5, 8, 9, and 10, which is wire

19   fraud, in violation of Title 18, United States Code, Section

20   1343, the following must be true:  First, the defendant

21   knowingly participated in a scheme or plan to defraud, or a

22   scheme or plan for obtaining money or property by means of

23   false or fraudulent pretenses, representations, promises, or

24   omitted facts.  The statements or facts made or omitted as

25   part of the scheme were material, that is, they had a

| | |
|---|---|
| 1 | natural tendency to influence or were capable of influencing |
| 2 | a person to part with money or property; the defendant acted |
| 3 | with the intent to defraud, that is, the intent to deceive |
| 4 | and cheat; and the defendant used or caused to be used an |
| 5 | interstate wire communication to carry out or attempt to |
| 6 | carry out an essential part of the scheme. |
| 7 | In order for defendant to be guilty of the crime |
| 8 | charged in Count 19 of the Indictment, that is, endeavoring |
| 9 | to obstruct the administration of the Internal Revenue Code |
| 10 | in violation of Title 26, United States Code, Section |
| 11 | 7212(a), the following must be true:  The defendant |
| 12 | endeavored to obstruct or impede the due administration of |
| 13 | the internal revenue laws, and in doing so, the defendant in |
| 14 | any way acted corruptly. |
| 15 | THE COURT:  Sir, do you understand the nature of |
| 16 | the charges against you? |
| 17 | THE DEFENDANT:  Yes. |
| 18 | THE COURT:  Have you had an opportunity to discuss |
| 19 | each of the charges and the elements of each of the charges |
| 20 | with your advisory counsel? |
| 21 | THE DEFENDANT:  I have, and I have also reviewed |
| 22 | the elements in writing, Your Honor. |
| 23 | THE COURT:  Have you been advised of the maximum |
| 24 | penalties that can be imposed for the charges to which you |
| 25 | are offering to plead guilty? |

1          THE DEFENDANT:  Yes.

2          THE COURT:  Ms. Katzenstein, would you recite

3     those, please.

4          MS. KATZENSTEIN:  The statutory maximum sentence

5     that the Court can impose for each violation of Title 18,

6     United States Code, Section 1343, as charged in Counts 5, 8,

7     9, and 10 of the Indictment is:  20 years' imprisonment; a

8     three-year period of supervised release; a fine of $250,000

9     or twice the gross gain or gross loss resulting from the

10    offense, which is greatest; and a mandatory special

11    assessment of $100.

12          The statutory maximum sentence that the Court can

13    impose for a violation of Title 26, United States Code,

14    Section 7212(a), as charged in Count 19 of the Indictment

15    is:  3 years' imprisonment; a one-year period of supervised

16    release; a fine of $250,000 or twice the gross gain or gross

17    loss resulting from the offense, which is greatest; and a

18    mandatory special assessment of $100.

19          Therefore, the total maximum sentence for all of

20    the offenses to which defendant is pleading guilty is 83

21    years' imprisonment; a three-year period of supervised

22    release; a fine of $1,250,000 or twice the gross gain or

23    gross loss resulting from the offenses, whichever is

24    greatest; and a mandatory special assessment of $500.

25          Would the Court also like me to address

1    restitution and collateral consequences?

2              THE COURT:  Please.

3              MS. KATZENSTEIN:  The defendant will be required

4    to pay full restitution to the victims of the wire fraud

5    offenses, that is, Counts 5, 8, 9, and 10, to which

6    defendant is pleading guilty.  There is no plea agreement

7    here, but the government believes the appropriate amount of

8    restitution with respect to the wire fraud counts is

9    approximately $9 million.

10             THE COURT:  Would that include all of the wire

11   fraud counts?

12             MS. KATZENSTEIN:  It would include all of the

13   conduct encompassed by the scheme to which defendant is

14   pleading guilty.

15             THE COURT:  Which means that the losses would not

16   be limited to the losses set forth in 5, 8, 9, and 10?

17             MS. KATZENSTEIN:  That's right.  The specific

18   executions would not limit the amount of restitution to be

19   ordered.

20             Further, the Court may order defendant to pay

21   restitution in the form of any additional taxes, interest,

22   and penalties that the defendant may owe to the United

23   States based on the tax offense, Count 19, to which he is

24   pleading guilty.  Again, the government believes that amount

25   is in the millions of dollars, approximately $5 million.

1   Did the Court want me to speak to the question of

2 supervised release and those items as well?

3   THE COURT:  That's fine.

4   MS. KATZENSTEIN:  Supervised release, which is one

5 of the penalties which was described above, is the period of

6 time following imprisonment during which the defendant will

7 be subject to various restrictions and requirements.  The

8 defendant must understand that if defendant violates one or

9 more of the conditions of any supervised release imposed, he

10 may be returned to prison for all or part of the term of

11 supervised release authorized by statute for the offense

12 that resulted in the term of supervised release, which could

13 result in defendant serving a total term of imprisonment

14 greater that the statutory maximum that I stated a moment

15 ago.

16   Further, by pleading guilty, the defendant may be

17 giving up valuable government benefits and valuable civic

18 rights such as the right to vote, the right to possess a

19 firearm, the right to hold office, and the right to serve on

20 a jury.

21   Defendant is pleading guilty to felonies, and,

22 therefore, he must understand that it is a federal crime for

23 a convicted felony to possess a firearm or ammunition.

24 Further, the convictions in this case may also subject

25 defendant to various other collateral consequences

1    including, but not limited to, revocation of probation,

2    parole, or supervised release in another case and suspension

3    or revocation of a professional license.  Defendant must

4    understand that the unanticipated collateral consequences

5    will not serve as a ground to withdraw his guilty pleas.

6            Finally, if the defendant is not a United States

7    citizen, the felony convictions in this case may subject

8    defendant to removal, also known as deportation, which may

9    under some circumstances mandatory denial of citizenship and

10   denial of admission to the United States in the future.

11           The Court cannot advise the defendant fully

12   regarding the immigration consequences of the felony

13   convictions in this case.  However, unexpected immigration

14   consequences will not serve as a ground to withdraw any of

15   the defendant's guilty pleas.

16           THE COURT:  Sir, do you have any questions about

17   the penalties that can be imposed for the charges you are

18   offering to plead to?

19           THE DEFENDANT:  Your Honor, I have no questions

20   relating to the penalties.  I would like the record to be

21   clear that I do not agree with the amounts that the

22   government stated.  That will be a fight for another day.  I

23   don't agree that the restitution amount or the loss amount

24   is $9 million, nor the tax loss amount is $5 million.

25   Again, that will be a debate for another day, but my

```
 1    position is it's drastically less than that.
 2              THE COURT:  Okay.  Do you understand that the
 3    estimates provided today are simply to put you on notice of
 4    the potential for restitution on those bases?  I'll sentence
 5    on the basis of facts known to the Court at the time of
 6    sentencing, which may be different from the estimates
 7    provided today.  They may be greater or lesser.  I will make
 8    my ruling on the basis of facts known to the Court at the
 9    time of the sentencing obviously after full briefing on the
10    sentencing issues.
11              THE DEFENDANT:  Understood, Your Honor.
12              THE COURT:  Are you a citizen of the United
13    States?
14              THE DEFENDANT:  Yes, Your Honor.
15              THE COURT:  By birth?
16              THE DEFENDANT:  Yes.
17              THE COURT:  Where were you born?
18              THE DEFENDANT:  Sacramento, California.
19              THE COURT:  Do you have any questions about
20    supervised release and the effect that this -- the
21    conviction on the counts here today could affect your status
22    under the other two convictions you sustained and your
23    supervised release conditions there?
24              MR. AVENATTI:  I don't believe so, Your Honor.  I
25    understand that supervised release runs --
```

```
 1            THE COURT:  Well, you're not on supervised release
 2   yet.
 3            THE DEFENDANT:  That is correct.  I'm still
 4   serving my terms of imprisonment.
 5            THE COURT:  Among the factors that the Court will
 6   consider in sentencing you are the Sentencing Reform Act of
 7   1984 and the United States Sentencing Commission Guidelines.
 8            Have you considered the guidelines in this case?
 9            THE DEFENDANT:  I have, Your Honor.
10            THE COURT:  And have you had a chance to discuss
11   the applicable guidelines with your advisory counsel?
12            THE DEFENDANT:  Yes, Your Honor.
13            THE COURT:  Have you considered the elements and
14   factors that the Court will consider in sentencing you under
15   the advisory guidelines?
16            THE DEFENDANT:  Yes, including the 3553 factors,
17   Your Honor.
18            THE COURT:  Right, but they are actually separate.
19            Sir, do you understand that the Court will not be
20   able to determine the advisory guideline range for your case
21   until a presentence report has been prepared, and you and
22   the government have had an opportunity to review it and to
23   make any objections?
24            THE DEFENDANT:  Yes, Your Honor.
25            THE COURT:  Do you understand that as part of the
```

1  objection process you will have the right to challenge any

2  factual findings in the report, as well as the manner in

3  which the probation officer has applied the guidelines?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Do you understand that the sentence

6  ultimately imposed may differ from any estimate your

7  advisory counsel may have given you?

8          THE DEFENDANT:  Yes.

9          THE COURT:  The presentence report will contain a

10  recommended guideline range.  There will be a high and a low

11  to that range.  That range is entirely advisory, which means

12  that in theory I could sentence you anywhere from no time in

13  prison to the statutory maximum of consecutive terms of 83

14  years.  Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  The Court will independently consider

17  both the guidelines and the parties' positions and will

18  analyze the case under the guidelines taking into account

19  the nature of the offense, what your prior record is, if

20  any, whether you have obstructed justice, and whether you

21  accepted responsibility.  Do you understand this?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do you understand that the Court has

24  the authority to depart upward or downward from the advisory

25  guideline range and will take into account other factors

1   under the Sentencing Reform Act, the 3553(a) factors, which

2   could result in sentence that is either greater or lesser

3   than called for by the advisory guidelines?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Do you understand that ultimately it's

6   the Court's duty to impose a sentence that is reasonable in

7   light of the specific facts of this case, the guidelines,

8   and the Sentencing Reform Act of 1984?

9            THE DEFENDANT:  Yes.

10            THE COURT:  Do you understand that for all these

11   reason neither I, nor your advisory counsel, nor anyone can

12   tell you today with certainty which guidelines apply or what

13   your sentence will be?

14            THE DEFENDANT:  I understand that.

15            THE COURT:  Do you understand that if I impose a

16   sentence that is more severe than you anticipated you will

17   not be allowed to withdraw your plea?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Obviously there is no plea agreement

20   here, and thus you will retain your full appellate rights.

21            Have any promises been made to you to induce you

22   to enter guilty pleas?

23            THE DEFENDANT:  No, sir.

24            THE COURT:  Has anyone made any threats or used

25   any force against you or your family or anyone near and dear

| | |
|---|---|
| 1 | to you to get you to plead guilty? |
| 2 | THE DEFENDANT: No. |
| 3 | THE COURT: Are you pleading guilty voluntarily |
| 4 | and of your own free will? |
| 5 | THE DEFENDANT: I am. |
| 6 | THE COURT: Is your willingness to plead guilty |
| 7 | the result of any discussion with the government? |
| 8 | THE DEFENDANT: No. |
| 9 | THE COURT: Have you been told by anyone what |
| 10 | specific sentence the Court would impose if the Court |
| 11 | accepts your pleas? |
| 12 | THE DEFENDANT: Other than I have had discussions |
| 13 | with my advisory counsel and other lawyers in my other cases |
| 14 | about a potential sentence, no one has given me any |
| 15 | guarantees because there are no guarantees, Your Honor. |
| 16 | THE COURT: Right. |
| 17 | Is the government prepared to recite a factual |
| 18 | basis for the charges? |
| 19 | MS. KATZENSTEIN: I think the defendant has |
| 20 | prepared a factual basis. There is no agreement here. |
| 21 | THE COURT: Well, I understand that. |
| 22 | Do you have a factual basis that you want to |
| 23 | present? |
| 24 | THE DEFENDANT: Yes, Your Honor, I do. |
| 25 | I will start relating to Counts 5, 8, 9, and 10, |

1    the wire fraud counts.  I was licensed to practice law in

2    the state of California from June of 2000 through 2020.  I

3    represented thousands of clients during that time, including

4    the clients who are identified as Clients 1, 2, 3, and 4 in

5    the Indictment.

6             As to Clients 1, 2, 3, and 4, I

7    misappropriated and misused certain of their settlement

8    funds to effectuate a plan, and I effectuated wire transfers

9    in pursuit of that plan and in carrying out that plan as

10   referenced in Counts 5, 8, 9, and 10 of the Indictment.

11            In particular, those wire transfers that I caused

12   to be effectuated as part of the plan were a $60,000 wire

13   transfer sent on or about January 10, 2018, from CNB account

14   5566 -- CNB is City National Bank -- to California Bank &

15   Trust account ending in 3714.

16            In addition, on March 20, 2018 -- and, Your Honor,

17   I'm reading from Exhibit 457 that was submitted into

18   evidence just for the record during the first trial.  On

19   March 20, 2018, I caused a $200,000 wire transfer to be sent

20   from City National Bank account ending in 4705 to California

21   Bank & Trust account ending in 4613.  That related to Client

22   4.

23            The first wire, Your Honor, I should also note

24   related to Client 3.

25            On or about June 18, 2018, I caused a $16,000 wire

1   to be sent from California Bank & Trust account ending in

2   4613 to a J.P. Morgan Chase Bank account in the name of

3   Client 2.

4          On July 13, 2018 -- this would be Count 10 -- I

5   caused a $1,900 wire to be sent from California Bank & Trust

6   account ending in 4613 to a Bank of America account in the

7   name of Client 1.  That is the factual basis for those four

8   wire fraud accounts.

9          THE COURT:  Did you understand that in making

10  those transfers you were carrying out a scheme to defraud

11  each of your Clients 1, 2, 3, and 4?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Did you understand that you were not

14  authorized to make those transfers by your client?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Did you make those transfers

17  voluntarily?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Okay.  Let's go on to the tax count.

20         THE DEFENDANT:  In connection with the tax count,

21  Count 19, I previously served as the CEO of a company by the

22  name of Global Baristas U.S., LLC.  The Internal Revenue

23  Service obtained liens on various property and undertook

24  collection efforts to collect taxes due the Internal Revenue

25  Service from Global Baristas U.S., LLC.

1              In connection with those efforts, I undertook

2    efforts to obstruct the Internal Revenue Service's ability

3    to obtain those monies and to execute on those liens by

4    instructing other employees of Global Baristas U.S., LLC, to

5    undertake various efforts to prevent the Internal Revenue

6    Service from timely obtaining the money that the Internal

7    Revenue Service was due.

8              THE COURT:  Did you understand that the

9    instructions and the carrying out of those instructions

10   would obstruct the ability of the government to collect

11   lawful taxes?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And did you undertake that conduct

14   voluntarily?

15             THE DEFENDANT:  I did.

16             THE COURT:  And did you in fact understand that

17   the actions you directed would obstruct the government's

18   collection of taxes?

19             THE DEFENDANT:  I did, Your Honor.

20             There is one other point just because of what I

21   was -- I was charged under 26 U.S.C. 7212(a).  I just want

22   to be clear that there was never any threat of force or

23   anything of that nature.  I just want the record to be clear

24   in that regard.  That's an important point.  I don't believe

25   the government is claiming there was, but I just want that

1    to be clear.  There was never any threat of force or

2    anything of that nature.

3            THE COURT:  Not part of your allocution.

4            THE DEFENDANT:  All right.

5            THE COURT:  Are there any other facts you want to

6    allocute to?

7            THE DEFENDANT:  Not at this time, Your Honor.

8            THE COURT:  Is the government satisfied with the

9    factual basis?

10           MS. KATZENSTEIN:  Not entirely, Your Honor.

11           THE COURT:  Okay.

12           MS. KATZENSTEIN:  I will state certain facts for

13   the Court.  Before I do that, I will also say that of course

14   the Court can find a factual basis based on anything in the

15   record of the case, including all of the testimony that the

16   Court had previously heard.  So that is with respect to

17   Counts 5, 8, 9, and 10.

18           I will supplement the record here on certain facts

19   with respect to the tax count, because it is an element of

20   the offense that Mr. Avenatti acted corruptly, and he did

21   not state that, and he would need to admit that he acted

22   corruptly.  But I will go through a few details now if

23   that's acceptable to the Court.

24           THE DEFENDANT:  Your Honor, I admit that I acted

25   corruptly in connection with Count 19.

1          MS. KATZENSTEIN:  All right.

2          THE COURT:  Do you understand the technical

3  meaning of a corrupt act?

4          THE DEFENDANT:  Yes, and I reviewed it in

5  preparation for the hearing today.

6          THE COURT:  Okay.

7          MS. KATZENSTEIN:  May I just have one moment?

8          (Government counsel conferring)

9          MS. KATZENSTEIN:  With respect to the wire fraud,

10  I would just like to clarify that Mr. Avenatti understood

11  that he made false statements to the clients underlying each

12  of the counts to which he is pleading guilty, that he

13  understood that those statements were material, and that he

14  acted with the intent to defraud, that is, the intent to

15  deceive and cheat.  He needs to admit that as well.

16          THE DEFENDANT:  Your Honor, I have stated my

17  allocution.  I think it's acceptable under the law.  I will

18  cite the Court to United States versus Nickle.  It's a Ninth

19  Circuit case, 816 F.3d 1230.  Basically, a District Court

20  must accept an unconditional guilty plea so long as it meets

21  the requirements of Federal Rule of Criminal Procedure

22  11(b).  And I am going to paraphrase the case.  Unless I

23  denied an element of the offense, that's sufficient enough

24  to support my guilty plea.  I think I have stated and I have

25  allocated in sufficient detail here today to support my

1    unconditional guilty plea.

2              THE COURT:  With respect to the wire transfers,

3    did you fail to disclosure to your clients that you were

4    making those transfers?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Do you believe the fact that you were

7    transferring their funds would have been material to your

8    relationship with the clients?

9              THE DEFENDANT:  I believe, Your Honor, that the

10   transfer of the money was a material fact that should have

11   been disclosed to the clients.

12             THE COURT:  Okay.  And you knowingly failed to do

13   that?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Okay.  Anything else with regard to

16   the sufficiency?

17             MS. KATZENSTEIN:  May I have a moment, Your Honor?

18             (Government counsel conferring)

19             MS. KATZENSTEIN:  Your Honor, the government

20   believes that there are sufficient facts in the record based

21   upon which the Court can accept the guilty pleas today.

22   Obviously we will be supplementing the record extensively

23   prior to sentencing.

24             THE COURT:  Sir, are you pleading guilty because

25   you if fact did the acts charged in each of Counts 5, 8, 9,

1    10, and 19?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Sir, do you understand that all that

4    is left in this case in the event that I accept your pleas

5    is the imposition of sentence which may include imprisonment

6    under the federal guidelines?

7              THE DEFENDANT:  Depending on what the government

8    decides to do with the remaining counts, yes.

9              THE COURT:  Well, I'm talking about the five

10   counts to which you are pleading.

11             THE DEFENDANT:  I understand.

12             THE COURT:  You know, we may be dealing with

13   additional counts.  We may not.  But at some point if I

14   accept your plea, I will sentence you on those five counts.

15             THE DEFENDANT:  I understand that, Your Honor.

16   I'm going to request one sentencing as opposed to a

17   bifurcated sentencing, but we don't have to discuss that

18   now.

19             THE COURT:  Right.  But do you understand that all

20   that is left in sentencing whenever I get to those five

21   counts, whether only five counts or they're part of

22   additional counts, imposition of imprisonment may result?

23             THE DEFENDANT:  Yes, I understand.

24             THE COURT:  Having in mind all we have

25   discussed --

1          MS. KATZENSTEIN:  Forgive me, Your Honor.  Before

2     you take the plea, could I ask the Court for two

3     clarifications?

4          THE COURT:  Sure.

5          MS. KATZENSTEIN:  First, although the Court

6     advised the defendant of his constitutional rights, I don't

7     believe the Court actually asked him if he waived those

8     rights.  Secondly, Your Honor stated that because there was

9     no plea agreement he retains his full appellate rights.

10    Obviously, by pleading guilty, he is waiving the right to

11    appeal the convictions for the counts to which he is

12    pleading guilty.

13         THE COURT:  I believe that's correct.

14         THE DEFENDANT:  Your Honor, I'm not certain

15    because I haven't looked at the law.  Whatever the law is,

16    the law is relating to my waiver by agreeing here today on

17    the record.  So I'm not saying one way or the other.  I'm

18    not saying that to be cute, Your Honor.  I just don't know.

19         THE COURT:  All right.  That's fine.

20         THE DEFENDANT:  Whatever has been waived, has been

21    waived.  Whatever is retained, is retained.

22         THE COURT:  Sir, how do you plead to Count 5 of

23    the Indictment?

24         THE DEFENDANT:  Guilty.

25         THE COURT:  How do you plead to Count 8 of the

1    Indictment?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  How do you plead to Count 9 of the

4    Indictment?

5              THE DEFENDANT:  Guilty.

6              THE COURT:  How do you plead to Count 10 of the

7    Indictment?

8              THE DEFENDANT:  Guilty.

9              THE COURT:  How do you plead to Count 19 of the

10   Indictment?

11             THE DEFENDANT:  Guilty, Your Honor.

12             THE COURT:  Sir, I am going to make certain

13   findings.  If you don't understand what I say, or if you

14   disagree with what I say, or if would like to consult your

15   advisory counsel, please interrupt me or ask your advisory

16   counsel to interrupt me.

17             The Court having questioned the defendant on his

18   offer to plead guilty to Counts 5, 8, 9, 10, and 19 of the

19   Indictment, each a felony; the defendant having advised the

20   Court that he has an opportunity to confer with his advisory

21   counsel; and the Court having observed the defendant's

22   intelligence, demeanor, and attitude while answering

23   questions; and the Court having observed that the defendant

24   does not appear to be under the influence of any medicine,

25   drug, or other substance or factor that might affect his

```
 1    actions or judgment in any manner; the Court now therefore
 2    finds that there is a factual basis for the plea.
 3             The Court finds that Michael John Avenatti has
 4    entered his plea freely and voluntarily with a full
 5    understanding of the charges against him and the
 6    consequences of his pleas.
 7             The Court finds that the defendant understands his
 8    constitutional and statutory rights and wishes to waive
 9    them.
10             Let me ask you specifically.  I recited each of
11    your constitutional rights.  Did you consult -- I believe
12    you told me you consulted with advisory counsel regarding
13    those rights.
14             THE DEFENDANT:  Yes, sir.
15             THE COURT:  Do you in fact waive each of those
16    rights?
17             THE DEFENDANT:  As it relates to the counts to
18    which I'm pleading guilty, yes, sir.
19             THE COURT:  Okay.  The Court finds that the
20    defendant understands his constitutional and statutory
21    rights and wishes to waive them.
22             Accordingly, it is ordered that the pleas be
23    accepted and entered into the records of this court.
24             Before we get to a date for sentencing, how do the
25    parties wish to proceed with the remaining counts?
```

```
 1            THE DEFENDANT:  Your Honor, can I speak first on
 2   that?
 3            THE COURT:  Sure.
 4            THE DEFENDANT:  Your Honor, I believe to the
 5   extent that the government intends on trying any of the
 6   retaining counts that they should be tried together.  At
 7   this point, I don't believe it's efficient for us to have
 8   two separate additional trials, especially in light of the
 9   two prior convictions, as well as my plea here today.
10            So I would propose that to the extent that the
11   government wishes to proceed on any further counts that it
12   be consolidated into one trial and set out some time from
13   now that makes sense for the Court and for the parties with
14   the understanding that we are going to file a Speedy Trial
15   Act motion relating to 11 through 36 with the exception of
16   19, because obviously I pled to 19, because we don't believe
17   the trial can proceed on those counts due to violations of
18   the Speedy Trial Act.  We're not here to debate that today.
19   I am just putting that on the record.
20            So my request is that to the extent that the
21   government wishes to pursue yet additional counts that it
22   ought to be consolidated into one trial and set out four or
23   five months.  I know the Court wanted six months in between
24   the two trials, but it occurs to me that perhaps they could
25   be tried in November or December, Your Honor.
```

1       And then I would request that the Court perform

2   one sentencing after all the dust settles on each of these

3   sentences, one consolidated sentencing on all counts, not

4   only those that I've pled to here today but in the event the

5   government does proceed on other counts and obtains guilty

6   verdicts.  I request one sentencing.  I believe that's most

7   efficient, number one.

8       Number two, I also think that it would be highly

9   prejudicial to conduct two sentencings in this case because

10  it might have the impact of further enhancing my criminal

11  history score, which as the Court knows based on my prior

12  comments is a concern of mine based on how all of this

13  conduct was brought in three different cases, Your Honor.

14      MR. SAGEL:  Your Honor, we will defer to the Court

15  on how you want to proceed.  What I would propose is two

16  separate things.  We obviously didn't even know what he was

17  going to do today until now.  So we want to consult with

18  both our office and the Department of Justice Tax Division

19  to determine how the government will proceed.  We think we

20  can probably have an answer for the Court by about Monday on

21  how to proceed.

22      In the interim, if Your Honor is open to it, we

23  would ask that -- it could either be done now or after we

24  advise the Court and the defendant how we will proceed --

25  the Court set a sentencing date potentially in September,

1    which is more than ten weeks out.  And if we do not proceed

2    with any other changes, we can go with that sentencing date.

3    If we do wish to proceed with any charges, we can vacate the

4    sentencing date and come up with a date for all remaining

5    counts.

6            He was the one who asked for the counts to be

7    severed.  If he wants them now to be together, we are not

8    going to oppose that.  But I think at this point if the

9    Court wants to set a sentencing date in September -- he has

10    already had two PSRs written, so a lot of the work that the

11    Probation Office would do at least with background and all

12    that has already been accomplished.  I think we can do the

13    sentencing about ten weeks out, which puts us in September.

14            THE COURT:  Well, I'm not inclined to engage in

15    two sentencings.  I think for a lot of reasons I ought to

16    sentence him with respect to all conduct for which liability

17    has been established.  I'm not adverse to setting a

18    placeholder date and getting the Probation Office going on

19    the preparation of a presentence report with the

20    understanding if the government wants to proceed we will

21    simply vacate that date.

22            I also think it makes sense at this point to have

23    one trial.  One of my concerns in severing the first ten

24    counts was the complexity.  It is substantially reduced at

25    this point.  And as a practical matter, a number of the

| | |
|---|---|
| 1 | counts in the first ten are duplicative.  He's admitted |
| 2 | liability for Clients 1, 2, 3, and 4.  So I query what there |
| 3 | is to try even if there are other nominal counts out there. |
| 4 | Given that, I think we ought to try everything that the |
| 5 | government wishes to try at one time. |
| 6 | MR. SAGEL:  Understood.  And especially the last |
| 7 | part Your Honor just referenced regarding the wire fraud, |
| 8 | that's most likely not the issue.  It's Counts 11 through 36 |
| 9 | minus 19. |
| 10 | THE COURT:  Understood. |
| 11 | MR. SAGEL:  With that, we agree with Your Honor, |
| 12 | and if Your Honor wants to set a placeholder date for a |
| 13 | sentencing in September. |
| 14 | THE COURT:  Let's go ahead and do that. |
| 15 | THE CLERK:  September 19 at 9:00 a.m. |
| 16 | MR. SAGEL:  The only thing that I would say -- and |
| 17 | I don't know what the calendar looks like -- there is a very |
| 18 | good chance because very little was admitted here, and there |
| 19 | was mentioned debates for a later date -- it might be a |
| 20 | somewhat substantial sentencing hearing so to make sure |
| 21 | there is sufficient time allotted on the 19th in the |
| 22 | morning. |
| 23 | THE DEFENDANT:  Your Honor, the only thing I would |
| 24 | ask is that perhaps we push it maybe one or two weeks after |
| 25 | that, because I do expect the submissions are going to be |

| | |
|---|---|
| 1 | fairly robust from both sides.  There is going to be a |
| 2 | number of issues at sentencing including the loss amount, |
| 3 | things of that nature.  So perhaps the 26th if that would be |
| 4 | acceptable, Your Honor. |
| 5 | THE COURT:  Of September? |
| 6 | THE DEFENDANT:  Yes, sir. |
| 7 | MR. SAGEL:  I'm saying this off the top of my |
| 8 | head.  I'm almost sure that's the Jewish holidays, the 25th, |
| 9 | 26th, and 27th.  So it could either be later that week or |
| 10 | one week prior. |
| 11 | THE COURT:  October 3? |
| 12 | MR. SAGEL:  Would you mind if I check my calendar? |
| 13 | THE COURT:  Sure. |
| 14 | (Pause in proceedings) |
| 15 | THE DEFENDANT:  Your Honor, we can make it the |
| 16 | 19th.  If the Court has enough time on the 19th for |
| 17 | sentencing, the 19th is fine.  If we need additional time, I |
| 18 | will make an application to the Court, but I'm going to try |
| 19 | not to if that makes things easier. |
| 20 | MR. SAGEL:  The 19th would be better at least for |
| 21 | my personal schedule. |
| 22 | THE COURT:  Okay, 9:00 a.m. on September 19.  I'm |
| 23 | going to allow 50 pages of briefing on each side.  I think |
| 24 | 50 pages despite the complexity ought to be sufficient. |
| 25 | MS. KATZENSTEIN:  Does the Court typically set a |

1    briefing schedule for sentencing submissions?

2            THE COURT:  Yes.  It will be in the order.  If you

3    need more time, we will just push it out a little bit.

4    There will be many substantive issues to consider, and I

5    want to make sure that each side has had an opportunity to

6    make a full, complete, and thoughtful presentation.

7            Now, we have got a motions calendar on the 27th, a

8    week from Monday.  It's my thought that I simply order all

9    those matters off calendar at least until we see what the

10   government wants to do.  If the government doesn't wish to

11   pursue any counts, those motions become moot.  Some of them

12   may be moot simply on the basis of the plea today.  But in

13   any event, until that's clarified, I'm just going to order

14   all of those motions off calendar.

15           MR. SAGEL:  No objection from the government.

16           MR. AVENATTI:  No objection from me either, Your

17   Honor.

18           One question, I think there is only one piece of

19   additional briefing due, which is our reply on the contempt

20   motion.  I would ask that that be held in abeyance if that's

21   acceptable to the Court.

22           THE COURT:  Fine.  Okay.

23           (Court and clerk conferring)

24           THE COURT:  I think at this point given that

25   Mr. Avenatti is in custody I'm going to exonerate the bond.

1          I'm going to deny the government's long pending

2    motion to revoke bail at this point.  Any objection?

3          MR. SAGEL:  No objection, Your Honor.

4          THE DEFENDANT:  No objection, Your Honor.

5          THE COURT:  Okay.  Is there anything else we

6    should take up today?

7          THE DEFENDANT:  There is one other thing, Your

8    Honor.  I have one other request of the Court.  I would like

9    the Court to order me to be returned to Terminal Island

10   within the next 24 hours.  I would like to await sentencing

11   and a potential retrial there.  There are a number of

12   reasons for that.

13         Number one, I don't have any of my materials here

14   relating to preparing for the sentencing or the retrial.  I

15   also don't have any of my materials for the Daniels and the

16   Nike appeal, which I am actively working on.  I have got a

17   brief in the Nike appeal due I think in about five weeks in

18   the Second Circuit.  The Daniels opening brief is going to

19   be due probably in about six weeks.

20         I'm likely not going to have as good of access to

21   my attorneys and e-mail, et cetera, were I to be kept here

22   at Santa Ana or downtown.  I'm enrolled in classes that I

23   was directed to take pursuant to Judge Gardephe's sentencing

24   and also by the Bureau of Prisons at Terminal Island.

25         So I would ask that the Court direct the marshals

1    and direct Mr. Sagel to inform the marshals because I think

2    that's what is required by the writ to return me to Terminal

3    Island no later than tomorrow, Your Honor.

4              THE COURT:  I see no purpose in keeping

5    Mr. Avenatti at the Orange County jail at this point.  I

6    vacated the motions hearing for next week.  So I'm going to

7    direct that you be returned to Terminal Island.  If we have

8    the law-and-motions practice, we will writ you out again.

9              THE DEFENDANT:  Your Honor, I appreciate that, and

10   it will assist me in my other cases.  If I could be returned

11   no later than tomorrow, that would be great.

12             THE COURT:  I will recommend that you be returned

13   no later than tomorrow.

14             THE DEFENDANT:  Thank you, Your Honor.  I

15   appreciate it.

16             THE COURT:  Okay.  Thank you.

17             MS. KATZENSTEIN:  Thank you, Your Honor.

18             MR. SAGEL:  Thank you, Your Honor.

19             (Whereupon, the proceedings were concluded)

20                        *    *    *

21

22

23

24

25

1

2

3

**CERTIFICATE**

4

5

6          I hereby certify that pursuant to Section 753,

7   Title 28, United States Code, the foregoing is a true and

8   correct transcript of the stenographically reported

9   proceedings held in the above-entitled matter and that the

10   transcript page format is in conformance with the

11   regulations of the Judicial Conference of the United States.

12

13   Date:  June 23, 2022

14

15

                        /s/   Sharon A. Seffens  6/23/22
16                       _____
                         SHARON A. SEFFENS, U.S. COURT REPORTER
17

18

19

20

21

22

23

24

25