A. Barry Cappello (CSB No. 037835)
Lawrence J. Conlan (CSB No. 221350)
Richard Lloyd (CSB No. 332101)
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

Attorneys for
Petitioner Spring Creek Research, LLC
and William Parrish

F I L E D
CLERK, U.S. DISTRICT COURT
09/09/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | Case No. 8:19-cr-00061<br><br>**VERIFIED PETITION OF SPRING CREEK RESEARCH LLC RE PRELIMINARY ORDER OF FORFEITURE** |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 4
II. FACTUAL BACKGROUND ........................................................................................ 5
    A.    Petitioner has a vested legal right, title and interest in the Honda Jet that is superior to the interests of Defendant Avenatti or any other interested party, or is at a minimum a bona fide purchaser for value. ........................ 5
    B.    The Government's seizure of the Honda Jet and allegations of forfeiture . 7
    C.    Petitioner's proposal to regain possession of the jet and request that the Government maintain it in the interim ....................................................... 7
    D.    The Government's proposal to sell the jet at auction, and its disclaimer of interest in the jet ..................................................................................... 8
    E.    Petitioner filed a Petition for Remission to which the Government never responded ................................................................................................ 9
    F.    The Government's civil forfeiture complaint ............................................. 9
    G.    The parties' positions in the civil forfeiture action ................................. 10
    H.    The stay of the civil forfeiture action ....................................................... 11
    I.    The criminal forfeiture application ........................................................... 11
III. LEGAL ARGUMENT ................................................................................................ 12
    A.    The Government has not established the requisite nexus between the Honda Jet and Avenatti's crimes. ........................................................... 12
    B.    Petitioner is a victim of Avenatti's criminal conduct as much as or more than any other party claiming an interest in the jet ................................. 13
IV. CONCLUSION ........................................................................................................... 16
Verification ........................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*United States v. Shyrock*,
   342 F.3d 948, 991 (9th Cir. 2003) .......................................................................... 12

**Federal Criminal Procedure**

Fed. R. Crim. P. 32.2(b)(a)(A-B) ............................................................................ 12

**Other Authorities**

Advisory Committee Notes to Rule 32.2, subdivision (b) ........................................ 12

## I.  INTRODUCTION

Pursuant to the Court's August 9, 2022 order, Spring Creek Research LLC by and through its Manager William Parrish petitions the Court for a hearing to adjudicate the validity of Spring Creek's claim to the Honda aircraft registration number N227WP, aircraft serial number 42000029, together with its tools and appurtenances, including any and all logbooks (hard copy or electronic) documenting engine and airframe maintenance, flights, number of hours flown, number of landings, and types and frequency of instrument approaches made by the aircraft (the "Honda Jet" or "jet"), and for an amendment of the order of forfeiture to reflect Spring Creek's ownership of that property.

Petitioner contends at the outset that the Honda Jet is not subject to forfeiture, that the order of forfeiture is invalid, and that the property should be returned to Petitioner. Alternatively, if the Honda Jet is subject to forfeiture, then Petitioner should be adjudicated as a majority interest holder in the property because Petitioner has a vested right in the property that is superior to the Defendant or any other claimant, and because Petitioner is, at least, the only bona fide purchaser for value of the right, title and interest in the property and was at the time of purchase reasonably without cause to believe that the property would be subject to forfeiture.

Although Petitioner is also a claimant in the related civil forfeiture action that the Government filed concerning the same property, and which was stayed in July 2020 at the Government's request, the Government did not provide Petitioner direct written notice of the criminal forfeiture action. Nor did the Government provide Petitioner notice of the Court's Preliminary Order of Forfeiture. Having learned about this proceeding from legal media, however, Petitioner submits this Petition.

/ / /
/ / /
/ / /
/ / /

## II. FACTUAL BACKGROUND

**A. Petitioner has a vested legal right, title and interest in the Honda Jet that is superior to the interests of Defendant Avenatti or any other interested party, or is at a minimum a bona fide purchaser for value.**

Petitioner Spring Creek is the vested legal owner of at least a 52.7% interest in the Honda Jet, based on its purchase of the jet with legitimate funds prior to the commission of the acts which gave rise to the forfeiture, and before the jet was seized incurred costs for maintenance, insurance, hangar space, and other necessary expenses. Petitioner is an entity controlled by Mr. William Parrish, and it is the majority member of Passport 420, LLC, the legal owner of the Honda Jet which is likewise managed by Mr. Parrish.

Petitioner contributed $2,311,000 directly toward the acquisition of the Honda Jet prior to the time Avenatti committed the criminal conduct alleged by the Government as the basis for its forfeiture application. Petitioner's legal right, title and interest in the property is vested and is superior to any right of Defendant or other claimant. Petitioner holds a leasehold interest in the aircraft as a member of Passport 420, LLC, and a tenant-in-common interest as set forth in the Operating Agreement of Passport 420, LLC. Initially, Defendant Avenatti was initially appointed as the manager of Passport 420 for a period of one year, and Mr. Parrish was later appointed as manager of the entity. Mr. Parrish is a long-time licensed pilot, used the Honda Jet on numerous occasions in the almost 2-year period before it was seized, and was in possession of it when it was seized by the United States Government on April 10, 2019.

Petitioner acquired its interest in the Honda Jet as follows:
- Mr. Parrish began contemplating the joint purchase of a private aircraft with his then-attorney Michael Avenatti in approximately June 2016.
- On July 7, 2016, Mr. Parrish, on behalf of Spring Creek, wired $350,000 from his family trust account directly to the account of Honda Aircraft at

Wells Fargo Bank NA, as a down payment on the Honda Jet that would be owned and operated by an LLC in which Petitioner and an entity operated by Avenatti called Avenatti & Associates would be members. Passport 420, LLC was formed as of July 11, 2016, to own and operate the aircraft. The Passport 420, LLC Operating Agreement provides, *inter alia*, that Passport 420, LLC would exclusively lease the Honda Jet to its members, Spring Creek and Avenatti & Associates, and that the members' interests were those of tenants-in-common as to the aircraft. A true and correct copy of the Passport 420 LLC Operating Agreement is attached to the supporting Declaration of Lawrence J. Conlan as **Exhibit A**.

- On January 18, 2017, Mr. Parrish, on behalf of Spring Creek, wired an additional $1,985,000 for the purchase of the aircraft from his family trust account into the account of Passport 420, LLC which had been opened at California Bank and Trust. True and correct copies of Mr. Parrish's two wire transfers for the purchase are attached to the supporting Declaration of Lawrence J. Conlan as **Exhibit B**.

- The total net purchase price of the Honda Jet was $4,383,605, which included the base price, adjusted, plus options and tax. A true and correct copy of the Honda Aircraft Company invoice showing purchase of the aircraft on January 27, 2017 is attached to the supporting Declaration of Lawrence J. Conlan as **Exhibit C**.

- Based on the total contribution of $2,311,000, Petitioner has a vested 52.7% ownership interest in the aircraft and in Passport 420, LLC; a leasehold interest in the aircraft; and a tenant-in-common interest as to the aircraft. It was Petitioner's understanding at all times that Avenatti was purchasing the Avenatti & Associates interest in the jet with legitimate funds, and Mr. Parrish had no cause reason to believe otherwise or that the property would be subject to forfeiture.

### B. The Government's seizure of the Honda Jet and allegations of forfeiture

On April 10, 2019, the Government seized the Honda Jet from Petitioner's possession as Mr. Parrish was about to embark on a flight from Santa Barbara where the aircraft was routinely hangared. The seizure was apparently conducted as a result of criminal conduct by Michael Avenatti in connection with crimes committed against his law clients, and it was unrelated to the operation of Passport 420 LLC. At the time of the seizure, Special Agent James Kim of the Department of Treasury, who was present at the scene, assured Mr. Parrish that he would be "made whole."

Petitioner, through counsel, took immediate steps to assert its ownership of the jet and to explain to the Government that it and Mr. Parrish had already been subjected to Avenatti's legal malpractice and fraud, and that it was being injured again as a result of the seizure. Petitioner explained that it had paid directly for his interest in the jet with legitimate funds, out of its own accounts, and there should be no dispute about Petitioner's vested ownership. Petitioner explained that as the owner and operator of the jet, the seizure was particularly harmful in that Petitioner, though no fault or conduct of its own, was being deprived of the ability to use the jet, and that the seizure would create a stigma on the jet and a likely diminution in value.

### C. Petitioner's proposal to regain possession of the jet and request that the Government maintain it in the interim

Petitioner requested that the Government consider asserting a lien against the jet in the amount of the Avenatti & Associates' 47% interest, and then release the jet back to Petitioner as the majority owner and operator. That would have allowed Petitioner to continue to use the jet, make it possible for prospective buyers to test-fly it, and minimize the likelihood of "fire sale" buyers seeing an opportunity to pay well below value for a government-seized asset.

Petitioner also provided the Government with details critical to the

1  maintenance of the jet, including that it needed to be run at least once each month
2  and the hours needed to be sent to Honda Aircraft to be in compliance with
3  applicable service and warranty agreements. Petitioner explained that being out of
4  compliance would likely have a very major detrimental effect on the value of the
5  jet.
6        During the course of ongoing discussions, Petitioner routinely provided to
7  the Government, via Assistant United States Attorney Steven Welk, additional
8  information regarding maintenance of the jet, including invoices for maintenance
9  contracts for the engines and airframe, for the Government to pay while it was in
10 possession, in order to preserve the jet's value. The Government never agreed to
11 pay for the requested services, and never confirmed that it would ensure that the
12 services necessary to maintain the jet, as detailed by Petitioner, would be
13 performed.
14       At one point, the Government vaguely stated that the jet was being stored
15 with a third-party contractor who is knowledgeable about the jet, and that the
16 contractor was familiar with the jet and would take the steps necessary to preserve
17 its value. But the Government never provided records of flights, maintenance,
18 expenses, or any verification that the jet was being properly operated or maintained.

19 **D. The Government's proposal to sell the jet at auction, and its disclaimer
20 of interest in the jet**

21       In May 2019, the Government proposed that interested parties stipulate to a
22 sale of the jet. AUSA Welk stated on May 28, 2019 that "given the underlying
23 circumstances, my initial impression of this matter is that the government is
24 unlikely ultimately to retain any of the realized value of the plane in the event of
25 forfeiture beyond its out of pocket costs associated with retention and
26 maintenance." In other words, apart from the never-disclosed costs of retention and
27 maintenance, the Government acknowledged that it had no interest in the jet and
28 disclaimed any right to proceeds from a sale.

In response, Petitioner disputed that any party had any direct and legitimate claim of right in the jet because Petitioner is:

- the only interested party who paid money with the intent of purchasing the jet and whose funds are directly traceable to the jet;
- the only party who paid money directly to Honda;
- the only party who has ever been in possession of the jet or used it (except for Avenatti);
- the only party who paid to operate and maintain the jet.

### E. Petitioner filed a Petition for Remission to which the Government never responded

On June 13, 2019, Petitioner filed a Petition for Remission with the Department of Justice, seeking the return of the Honda Jet. The Petition detailed Petitioner's vested interest and right to the property, as well as the lengthy history detailing Defendant Avenatti's abuse of Petitioner and Mr. Parrish's rights and interests. The Government never responded to that Petition. A true and correct copy of the Petition for Remission or Mitigation served on the Department of Justice on June 13, 2019 is attached to the supporting Declaration of Lawrence J. Conlan as **Exhibit D**.

### F. The Government's civil forfeiture complaint

On October 18, 2019, after providing no response to the Petition for Remission, and six months after the Government seized the Honda Jet from Petitioner's possession, the Government filed a complaint for civil forfeiture alleging that "Avenatti's acquisition of the defendant aircraft was part of a fraud scheme by which he misappropriated funds of one or more clients and/or associates . . ." (Case 8:19-cv-01988-JVS-KES, Dkt. 1, ¶8). The Government alleged that the aircraft was traceable to or acquired with the proceeds of one or more violations of 18 U.S.C. § 1343, 18 U.S.C. §§ 1956(c)(7)(A) and 1961 (a)(B) "rendering it subject

to forfeiture to the United States pursuant to 18 U.S.C. § 981(A)(1)C)." That statute provides that property is subject to forfeiture when it is "involved in a transaction or attempted transaction" in violation of sections 1956, 1957 or 1960, or if it is "traceable to such property." Dkt. 1 ¶¶ 23-24.

### G. The parties' positions in the civil forfeiture action

In January 2020, the Government wrote to interested parties to state that it believed an interlocutory sale of the jet would be in their best interests. But, as of that time, and to date, neither the Government nor any person or entity claiming to have an interest in the jet (except Petitioner) has ever established that their actual funds can be traced directly to the purchase of the jet or to its maintenance.

While several parties claim an interest in the jet based on money they *believe* to be theirs that was allegedly commingled in bank accounts at Eagan Avenatti, none of those parties has ever *established what specific funds* are theirs and which portion, if any, of them were paid for the purchase of the jet.

Ultimately, Petitioner stated that it was open to discussing a possible interlocutory sale of the jet as of January 2020, but any such sale would have to be conditioned on an agreement that fully recognized Petitioner's superior rights in the jet. The Government would not agree to that, and the jet has since remained in its possession.

Importantly, based on the filings in the civil forfeiture action by Jason Frank and filings in the Eagan Avenatti bankruptcy litigation, it appears that Mr. Filippo Marchino, Esq. and his firm X Law (which evidently had a professional relationship with Avenatti and shared clients with him) were directly involved in receiving funds allegedly belonging to Client 2 (as identified by the Government) from Eagan Avenatti accounts and then allegedly wiring funds to Honda, after Petitioner has paid its money toward the purchase of the Honda Jet. If that is true, then Mr. Marchino and his law firm, who purport to represent Client 2 as a claimant to the Honda Jet, were complicit in improperly disposing of Client 2's funds

without her consent. While Client 2 may have claims against Marchino and X Law for disposing of her money without her consent, she does not have a valid claim of interest in the Honda Jet.

### H. The stay of the civil forfeiture action

In June 2020, the Government stated that it intended to move *ex parte* to stay the civil forfeiture case based on Avenatti's ongoing criminal prosecution.

Petitioner stated its opposition to the proposed stay, and ultimately formally opposed it, and alternatively proposed a scenario in which Petitioner would purchase the 47% of the jet that it did not already own for an amount certain. Petitioner's proposal was intended to preserve the remaining value of the jet, which it believed was continuing to deteriorate in value and condition for lack of proper maintenance, and to avoid a lengthy litigation amongst Avenatti's other alleged victims who claimed to have a stake in the Avenatti & Associates' interest in the jet. Neither the Government nor any other party claiming an interest in the jet supported Petitioner's proposal.

Eventually, the Court granted the Government's request for a stay of the civil forfeiture action, over Petitioner's objection, and the jet has remained in the Government's possession, though no record of proper operation or maintenance has ever been publicly disclosed.

### I. The criminal forfeiture application

On August 1, 2022, the Government applied for criminal forfeiture of the Honda Jet based on the contention that the Defendant Michael Avenatti has "admitted the required nexus" between the Honda Jet and his crimes. The Government relied on Avenatti's admissions that he represented Client 2, misappropriated her settlement funds, and executed wire transfers in furtherance of a scheme to defraud Client 2. The Government also asserted that the nexus between the Honda Jet and Avenatti's crimes is supported by Avenatti's filing of a

document in which he stated that he "does not object to the Court's entry of an Order of Forfeiture" of the Honda Jet. Case 8:19-cr-00061-JVS (Dkt. 974).

On August 9, 2022, the Court entered the Preliminary Order of Forfeiture in the form presented by the Government, and required any person other than Avenatti asserting a legal interest in the Honda Jet to petition the Court to adjudicate the validity of his interest in the property. Case 8:19-cr-00061-JVS (Dkt. 975).

### III. LEGAL ARGUMENT

#### A. The Government has not established the requisite nexus between the Honda Jet and Avenatti's crimes.

Petitioner contends that the Government has not established by a preponderance of the evidence that the Honda Jet is subject to forfeiture (*United States v. Shyrock*, 342 F.3d 948, 991 (9th Cir. 2003)), nor has the Government established the "requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(a)(A-B); see also Advisory Committee Notes to Rule 32.2, subdivision (b) (explaining that the court must determine "if the property was subject to forfeiture under the applicable statute, e.g., whether the property . . . was used to facilitate the offense.").

The Government's allegations demonstrate that Defendant Avenatti committed wire fraud against former clients, including Client 2, but not that Client 2's funds are traceable to the purchase of the jet. There are allegations regarding the commingling of funds in the Eagan Avenatti bank accounts, but no party claiming an interest in the jet has established which funds actually were directed to the purchase of the jet. Nor has the Government established which funds, or the amount of funds allegedly belonging to Client 2, or any other Avenatti law client, were used to purchase the jet. Nor is there any evidence that the jet "was used to facilitate" a wire fraud. Rather, it has been alleged that the jet was purchased after Avenatti's wire fraud against Client 2, which occurred after Petitioner's investment

in the jet.

The Government bears the burden of establishing the nexus between the property and Avenatti's crimes. It was only after Avenatti committed his criminal wire fraud – directing Client 2's funds out of the Eagan Avenatti bank account to the X Law bank account – that some amount of funds allegedly belonging to Client 2 were allegedly sent to Honda. Both of these acts occurred after Petitioner's investment and payment of more than $2 million to purchase the jet.

The extent to which Client 2's settlement funds were commingled at Eagan Avenatti before being wired to X Law has not been established, and it is unknown what happened to those funds while in the possession of X Law. In any event, Client 2's claim recoup her settlement funds should be directed at Mr. Marchino and X Law, and not at the seized property of which she had no knowledge, no intent to purchase, and no involvement in the purchase of the jet, and therefore no nexus has been established.

The evidence shows that Petitioner's vested interest in the Honda Jet is superior to and greater than any other claimant individually, and all other claimants combined. To the extent Client 2, or Eagan Avenatti, or Jason Frank claims an interest in the Honda Jet, the claims are indirect, imprecise, overlapping, and limited in any event to the 47% interest of Avenatti & Associates, and no more.

**B. Petitioner is a victim of Avenatti's criminal conduct as much as or more than any other party claiming an interest in the jet**

For reasons never publicly explained by the Government during the prosecution of the Defendant, neither Petitioner nor William Parrish was never identified as a victim of Avenatti's misconduct, and Mr. Parrish was not called as a witness to support the Government's case against Avenatti at his criminal trial. Mr. Parrish is, however, an immediate and direct victim of criminal misconduct and theft by Avenatti, as well as of the glaring malpractice of Eagan Avenatti, its lawyers, and its co-counsel.

Mr. Parrish's involvement with Eagan Avenatti and Michael Avenatti dates back to 2008 when the law firm was first engaged to represent Mr. Parrish in a malicious prosecution action against FLIR Systems, Inc. When that case successfully settled in 2011, Avenatti and his firm refused to share a claimed $5 million in attorneys' fees with one of his joint venture law firms, Stoll, Nussbaum & Polakov. Ultimately, the two firms sued one another, and then the Stoll firm sued Mr. Parrish alleging that he was involved in Eagan Avenatti withholding attorneys' fees.

Eagan Avenatti and Avenatti assured Mr. Parrish that the money was safely held in a client trust account at Eagan Avenatti, but neither Eagan Avenatti nor Avenatti told Mr. Parrish that Avenatti had actually spent the entirety of the $5 million within months of receiving it, on personal expenses and law firm expenses. Other co-counsel later assisted Avenatti resulting in ongoing harm to Mr. Parrish, and as a result Mr. Parrish was dragged through 11 years of litigation. In June 2022, Mr. Parrish prevailed at trial against the Stoll law firm, and the jury verdict detailed specific findings against Avenatti based on his theft of the funds in dispute. A true and correct copy of the final form of judgment in the Stoll action is attached to the supporting Declaration of Lawrence J. Conlan as **Exhibit E**.

Unfortunately, however, from 2011 until 2018, while Avenatti was purporting to represent and defend Mr. Parrish from the Stoll claims, he was lying to Mr. Parrish, blaming him for his own misdeeds, and taking advantage of the trust and confidence Mr. Parrish had placed in Avenatti and Eagan Avenatti, and violating the duties they and co-counsel had to Mr. Parrish as lawyers.

In the course of the representation during the *Stoll* action, and as explained in detail in the Petition for Remission, Mr. Parrish was embroiled in, among other things, a loan to Avenatti that was never repaid and that is now the subject of a $2.5 million civil judgment that Mr. Parrish has against Avenatti, the purchase of the more than $4 million jet that was later seized, and now substantial legal fees arising

from the malpractice of Eagan Avenatti, and Avenatti and his colleagues. It is unlikely Petitioner and Mr. Parrish will ever recover from Avenatti directly on his judgment, but Petitioner's vested interest in the jet is clear, and in fairness Petitioner should not be deprived of that interest any longer. All in, Defendant Avenatti's misconduct is the source of more than $6 million in out-of-pocket damages to Petitioner and Mr. Parrish.

Petitioner has an established, vested ownership interest in the Honda Jet, based on the purchase of that property with legitimate funds and the subsequent use of the jet up until the time it was seized. There is no other victim or party with an interest in the jet that is superior to Petitioner. Again, to the extent any other parties seek to establish their interest in the jet, such as Eagan Avenatti or Jason Frank, their claims overlap with and offset one another, and they should be limited to no more than the approximately 47% purchased originally for the benefit of Avenatti & Associates only. Likewise, to the extent Client 2 has a claim for finds misappropriated by Eagan Avenatti, Avenatti, and her current counsel X Law and Filippo Marchino, she should recover from them, and under no circumstances beyond the Avenatti & Associates 47% interest.

If the Court is not inclined to grant the relief Petitioner requests, Petitioner requests the opportunity to engage in discovery pursuant to the Federal Rules of Civil Procedure, further briefing as needed, before a final adjudicatory hearing with witness testimony, in order to further establish Petitioners' claim, and to rebut the allegations of the Government and the claims of other parties seeking an interest in the jet.

/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

Petitioner contends that the Honda Jet is not subject to forfeiture and should be returned to Petitioner. Alternatively, if the Honda Jet is subject to forfeiture, then Petitioner should be adjudicated as a majority interest holder of 52.7% ownership of the jet.

DATED: September 8, 2022         CAPPELLO & NOËL LLP

By: */s/ Lawrence J. Conlan*
A. Barry Cappello
Lawrence J. Conlan
Richard Lloyd
Attorneys for
William Parrish

Case 8:19-cr-00061-JVS Document 986 Filed 09/09/22 Page 17 of 18 Page ID #:23086

## VERIFICATION

I, William Parrish, am the Managing Member of Petitioner Spring Creek Research, LLC, and authorized to make this verification on its behalf. I have read the foregoing **Petition of Spring Creek Research, LLC re Preliminary Order of Forfeiture** and know its contents thereof. The matters stated in the foregoing document are true to the best of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September _8_, 2022

_____
Spring Creek Research, LLC
By: William Parrish
Title: _____Manager_____

**CERTIFICATE OF SERVICE**

I, Lawrence J. Conlan, hereby certify that on August 22, 2022, I caused the foregoing **VERIFIED PETITION OF SPRING CREEK RESEARCH LLC RE PRELIMINARY ORDER OF FORFEITURE** to be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Lawrence J. Conlan*
Lawrence J. Conlan