| | | | |
|---|---|---|---|
| Honda Jet Price (tax inc) | 4,383,605 | | |
| TCASII Option Added | 138,800 | | |
| Total Price Paid by Passport 420 | 4,522,405 | | |
| | | | |
| Spring Creek/Parrish Payments | 350,000 | Apr-16 | To Honda Aircraft |
| | 1,985,000 | Jan-17 | To Passport 420 at Cal Bank and Trust |
| Total Payments | 2,335,000 | | |
| Less Operational Accnt deposit | 24,000 | Deposit at Passport 420 accnt Calif Bank & Trust | |
| Purchase Contribution | 2,311,000 | 52.7% | |

Exhibit F

1  A. Barry Cappello (SBN 037835)
   abc@cappellonoel.com
2  Lawrence J. Conlan (SBN 221350)
   lconlan@cappellonoel.com
3  CAPPELLO & NOËL LLP
   831 State Street
4  Santa Barbara, California 93101
   Telephone:   (805) 564-2444
5  Facsimile:    (805) 965-5950

6  Attorneys for Plaintiff

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
8/20/2018 3:47 PM
By: Narzralli Baksh, Deputy

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        FOR THE COUNTY OF SANTA BARBARA

10

11                                                          18CV04106

   WILLIAM PARRISH, an individual;          Case No.:
12
                                            COMPLAINT FOR
13          Plaintiff,                       1. BREACH OF FIDUCIARY DUTY
                                             2. BREACH OF PROMISSORY NOTE
14  vs.                                      3. ACCOUNT STATED
                                             4. OPEN BOOK ACCOUNT
15  MICHAEL J. AVENATTI, an individual; and  5. COMMON COUNT– MONEY HAD
    DOES 1 through 20, inclusive,               AND RECEIVED
16                                           6. COMMON COUNT – MONEY LENT
            Defendants.
17
                                            DEMAND FOR JURY TRIAL
18

19

20

21

22

23

24

25

26

27

28

CAPPELLO
& NOËL LLP
TRIAL LAWYERS

1    Plaintiff alleges:

2    1.    All allegations made in this complaint are based upon information and belief.  The

3    allegations of this complaint stated on information and belief are likely to have evidentiary support

4    after a reasonable opportunity for further investigation or discovery.

5    ### NATURE OF ACTION

6    2.    This action is about the avaricious disregard and abuse of trust cultivated by an

7    attorney in a decade long professional relationship with his client.  That attorney, Michael J.

8    Avenatti, Esq. ("Avenatti") repeatedly and routinely put his own financial interests ahead of his

9    client, Plaintiff William Parrish, in violation of Avenatti's fiduciary duties, the rules of professional

10   conduct governing attorneys in California, statutory law and basic contract principles.  After

11   assisting in obtaining a multi-million dollar settlement on behalf of Plaintiff and his business partner,

12   Avenatti continued to represent Plaintiff in a variety of other litigation matters and transactions, and

13   Plaintiff relied on what he rightfully assumed to be Avenatti's good advice and professional

14   judgment.  Avenatti took advantage of that trust, however, and persuaded Plaintiff to loan him

15   $1,500,000 in order to invest in a separate business venture.  Avenatti falsely promised Plaintiff that

16   he would repay the funds in 45 days, failed to explain to Plaintiff that he should seek the advice of

17   independent counsel, and then failed to properly document the loan.

18   3.    Plaintiff expressly told Avenatti that he agreed to make the loan based on his trust in

19   Avenatti as his attorney and Avenatti's assurances of prompt repayment of the full amount owed. At

20   Plaintiff's urging to properly document the loan, Avenatti subsequently drafted and executed a

21   Promissory Note which extended the due date through January 31, 2014 (and then by amendment

22   through January 31, 2017), and provided for 8% interest on the principal owed.  Avenatti did not

23   provide any security for the loan, although he promised he would grant Plaintiff security in the full

24   amount of the loan.  At no time did he explain to Plaintiff that he should seek independent legal

25   advice regarding the fact of the loan or the terms of the note.

26   4.    The California Rules of Professional Conduct expressly require that in a business

27   transaction such as this between an attorney and client, the terms of the transaction must be fair,

28   reasonable and fully disclosed to the client who then must provide his written consent.  Unsecured

1 | loans by their nature are not fair or reasonable because they are a high risk to the lender.

2 | Importantly, the attorney also must advise the client in writing to seek the advice of an independent

3 | counsel in connection with the transaction. Here, Avenatti totally disregarded Plaintiff's interests,

4 | borrowed money from Plaintiff on terms that were neither fair nor reasonable nor fully disclosed nor

5 | consented to in writing by Plaintiff. In addition, Avenatti failed to comply with his duty to advise

6 | Plaintiff in writing to seek the advice of an independent counsel. Avenatti further exploited

7 | Plaintiff's trust by repeatedly assuring Plaintiff that he had the funds to pay off the loan in full and

8 | such payment was imminent. Finally, despite his ongoing and repeated assurance to repay the loan,

9 | including in writing as recently as November 2017, and his assurances that there were no issues

10 | regarding applicable statutes of limitations, Avenatti never repaid the loan. To date, Avenatti owes

11 | Plaintiff the entire principal amount, plus interest.

12 |     5.     Plaintiff brings this action in order to make himself whole for all damages caused by

13 | Avenatti, including principal and interest on the loan, other losses related to Plaintiff's inability to

14 | use the funds for the last five years, and punitive damages as a result of Avenatti's fraudulent and

15 | malicious breach of his fiduciary duties.

16 |                                         **PARTIES**

17 |     6.     Plaintiff William Parrish ("Plaintiff") is an individual residing in the City of Santa

18 | Barbara, County of Santa Barbara, State of California.

19 |     7.     Defendant Michael J. Avenatti ("Avenatti"), is an individual residing in the City of

20 | Newport Beach, County of Orange, State of California. Avenatti is an attorney who represented

21 | Plaintiff in several matters.

22 |     8.     Plaintiff is uncertain as to the identity or capacity of the defendants included herein as

23 | DOES 1 through 20, inclusive, and therefore sues said defendants by their fictitious names. Plaintiff

24 | is informed and believe and thereon allege that said defendants, DOES 1 through 20, inclusive, and

25 | each of them, are liable to Plaintiff on the facts herein alleged and will seek leave of this court to

26 | amend this complaint when their true names are ascertained.

27 |     9.     Plaintiff is informed and believes and thereon alleges that each of the defendants is,

28 | and at all material times was, the agent and employee of each of his, her, or their co-defendants, and

1 | in committing the acts herein alleged, was acting in the scope of his, her, or their employment, or
2 | his, her, or their authority as such agents and employees, with the permission and consent of his, her
3 | or their co-defendants.

4 | **VENUE**

5 | 10.    Venue is appropriate pursuant to Code of Civil Procedure sections 395(a) as the
6 | underlying agreement was made, entered into and to be performed in Santa Barbara County, and the
7 | liability and/or obligation that is the center of the dispute is located in Santa Barbara County.

8 | **GENERAL ALLEGATIONS**

9 | 11.    Avenatti is an attorney licensed to practice law in the State of California.  Avenatti
10 | acted as Plaintiff's attorney starting in approximately 2008. Avenatti represented Plaintiff in various
11 | matters including, without limitation, *William Parrish et al vs. FLIR Systems, Inc. et al.* Case No.
12 | 1301514, filed July 10, 2008 ("*Parrish v. FLIR*"). Avenatti was, until he was recently terminated,
13 | counsel of record for Plaintiff in litigation arising out of that action. Avenatti also has represented
14 | Plaintiff in various other matters and transactions.  At all times relevant to this Complaint, Avenatti
15 | and Plaintiff had an attorney-client relationship.

16 | 12.    In or about May 2011, Avenatti was one of the lawyers representing Plaintiff and his
17 | business partner when they obtained a multi million dollar settlement in *Parrish v. FLIR*.  Litigation
18 | continued in two additional matters and Avenatti was Plaintiff's lawyer.

19 | 13.    In or about June 2013, while still representing Plaintiff, Avenatti asked Plaintiff, his
20 | client at the time, for a $1,500,000 unsecured loan to be repaid in 45 days.  Avenatti's stated purpose
21 | for the loan was to purchase an interest in a coffee company. At no time has Plaintiff ever had an
22 | interest in or connection to the coffee company, Tully's. Avenatti assured Plaintiff verbally and in
23 | emails that the $1,500,000 would be repaid within 45 days.

24 | 14.    In a June 28, 2013 email from Avenatti to Plaintiff, Avenatti stated "I want to thank
25 | you again for agreeing to loan me $1.5 million for 45 days (until August 15, 2013) so I can close
26 | Tully's. You have no idea how much I appreciate you assisting me – you are a true friend." The 45-
27 | day unsecured loan did not provide for any interest payment on the principal or any other
28 | consideration to Plaintiff for loaning Avenatti $1,500,000.  At that point in time, the terms of the

1  loan were memorialized only in emails between Avenatti and his client and not by any separate
2  writing.

3      15.      Plaintiff trusted Avenatti as a result of: (a) their attorney-client relationship, (b)
4  Avenatti's involvement and assistance in obtaining a major settlement for Plaintiff and (c) Avenatti's
5  assurances that he had the ability to, and would, repay the loan in full within forty-five days.  On or
6  about July 1, 2013 Plaintiff wired $1,500,000 from his bank account to Avenatti's bank account.

7      16.      On or about December 16, 2013, Plaintiff explained to Avenatti that "[b]ecause you
8  are my attorney, with all the trust being an attorney implies, we forewent documentation of the short-
9  term loan to get you funds by your deadline … [however, the loan] really requires proper
10 documentation for my estate (as well as the IRS)." In this same email, Plaintiff also explained that if
11 Avenatti did not repay the loan imminently as promised, Plaintiff would suffer adverse financial
12 consequences because he would need to sell securities and other holdings, resulting in "unpleasant
13 ramifications" to Plaintiff's finances.  In fact, Plaintiff did later need to sell securities in order to help
14 fund a separate business venture.  Had Avenatti repaid the loan, the loaned funds would have been
15 used instead.

16     17.      Avenatti subsequently drafted a "NonNegotiable Promissory Note Due January 31,
17 2014" (the "Promissory Note") that he executed, bearing a date of July 1, 2013. In accordance with
18 the terms of the Promissory Note, Avenatti agreed to pay interest of 8.0% per annum on any unpaid
19 principal from the date the amount was loaned until paid in full. A true and correct copy of the
20 Promissory Note is attached as **Exhibit A** hereto and incorporated by reference.

21     18.      After Avenatti failed to repay the loan from his client despite ongoing and repeated
22 assurances that he would, Avenatti later amended the Promissory Note to extend the maturity date to
23 January 31, 2017. Avenatti made this amendment in handwriting by, among other things, crossing
24 out the "14" in the original date of January 31, 2014 and replacing it with a "17" to make the
25 Promissory Note due on January 31, 2017 (the "Amended Note"). Avenatti initialed these mark-ups.
26 He also executed the Amended Note by signing it and handwriting "Reaffirmed 7/25/16." A true
27 and correct copy of the amended Promissory Note is attached as **Exhibit B** hereto and incorporated
28 by reference.

4

1        19.    Since the time Avenatti initially asked to borrow money from Plaintiff, Plaintiff

2  repeatedly requested that Avenatti pay in full all amounts due on the Promissory Note.

3        20.    Avenatti repeatedly assured and represented to Plaintiff that he had the ability to pay

4  off the full amount owed on the Promissory Note and routinely assured him that such payment

5  would be imminent. For example, in a November 30, 2017 email from Plaintiff to Avenatti which

6  Avenatti signed in agreement at a subsequent meeting between Plaintiff and Defendant, Avenatti

7  represented that: (a) he was responsible for paying off the full amount of principal and interest owed

8  on the Promissory Note, and (b) he was "100% certain" that on January 15, 2018, Avenatti would

9  receive a significant settlement from another matter, and he would use those funds to pay off the full

10  amount owed on the Promissory Note by the end of January 2018.

11        21.    In the November 30, 2017 email, Plaintiff asked Avenatti, "[a]lso, as my counsel,

12  please confirm that, since you dusted off the note with a new signature and payment date (although

13  again now long passed), the note is not in jeopardy of passing a statute of limitation date." Avenatti

14  confirmed that as Plaintiff's counsel, he was advising Plaintiff that any recovery on all amounts

15  owed on the Promissory Note were not subject to a statute of limitation defense.

16        22.    Plaintiff did not sue Avenatti based on Avenatti's representations and assurances

17  including, without limitation, the following: (a) Avenatti's representation that he had the funds to

18  repay the loan in full and that repayment was imminent; and (b) Avenatti's representation that the

19  statute of limitations was not a bar to any recovery from Avenatti on the loan.

20        23.    As of the date of filing of this Complaint, Avenatti has failed and refused to pay the

21  Promissory Note off originally or as amended and has not paid the note as set forth above.

22        24.    As of the date of filing of this Complaint, Avenatti has failed to secure the loan,

23  despite promises to do so.

24        25.    Avenatti has not repaid the full amount due, including the principal, and interest as

25  required by the Promissory Note.

26        26.    The terms of the original 45-day loan from Plaintiff were not fair or reasonable or

27  fully disclosed to Plaintiff because the loan only benefitted Avenatti at Plaintiff's expense in that it

28  provided no consideration to Plaintiff in the form of interest on the principal or any other

1  consideration to Plaintiff in exchange for the loan and because the loan was unsecured and high risk.
2  Avenatti failed to fully disclose the risks to Plaintiff, as was his duty. As such, Avenatti acted in an
3  adverse manner contrary to the interests of Plaintiff.

4        27.    Avenatti unilaterally extended the term of the note and failed to reveal his own dire
5  financial situation, done for Avenatti's benefit and to the detriment of his client, Plaintiff.

6        28.    The terms of the Promissory Note were not fair or reasonable or fully disclosed to
7  Plaintiff because an unsecured note is a high-risk instrument and Avenatti failed to disclose this to
8  Plaintiff.  As such, Avenatti acted in an adverse manner contrary to Plaintiff's interests.

9        29.    At no time did Avenatti advise Plaintiff in writing that Plaintiff should seek the
10  advice of an independent lawyer of Plaintiff's choice in connection with this $1,500,000 loan. As
11  such, Avenatti acted in an adverse manner contrary to Plaintiff's interests, and for Avenatti's own
12  benefit.

13        30.    At no time did Avenatti request from Plaintiff or did Plaintiff provide his consent in
14  writing to the terms of the loan or the Promissory Note after full disclosure of the risks and rights. As
15  such, Avenatti acted in an adverse manner contrary to Plaintiff's interests, and for Avenatti's own
16  benefit.

17        31.    Plaintiff has been forced to file this action in order collect the sums due and owing to
18  him.

19                                               **FIRST CAUSE OF ACTION**

20                                                  **(Breach of Fiduciary Duty)**

21        32.    Plaintiff realleges and incorporates herein by reference each and every allegation
22  herein, as though fully incorporated herein and made a part hereof.

23        33.    As set forth above, Plaintiff retained and employed Avenatti to represent Plaintiff in
24  connection with various matters starting in 2008.  Avenatti accepted this employment and agreed to
25  perform duties for Plaintiff as Plaintiff's attorney. Avenatti was in an attorney-client relationship
26  with Plaintiff based on trust and confidence, that derived from the fact that Avenatti represented
27  Plaintiff in various matters as set forth above; had drafted the Promissory Note, a legal document, in
28  connection with the loan; had advised Plaintiff on legal issues related to the Promissory Note; was

1  told by Plaintiff that Plaintiff was relying on Avenatti's trust as his attorney in connection with the

2  $1,500,000 loan.

3      34.     Attorneys owe their clients fiduciary duties to act in the utmost good faith, fidelity

4  and trust for the benefit of their clients.

5      35.     As Plaintiff's attorney, Avenatti owed Plaintiff fiduciary duties of an attorney to a

6  client, including the duty to act in the utmost good faith, fidelity and trust for the benefit of Plaintiff,

7  and to take no action to personally benefit.  By virtue of this special relationship that existed between

8  Avenatti and Plaintiff, Plaintiff had confidence in the integrity of Avenatti and trusted that Avenatti

9  would act in the utmost good faith, fidelity and trust and in a manner that was not adverse or

10  contrary to Plaintiff's interests. Avenatti knowingly acted against Plaintiff's interest in borrowing

11  funds from Plaintiff without informing Plaintiff of the risks associated with an unsecured loan such

12  as this, by initially borrowing $1,500,000 from Plaintiff on terms that only benefitted Avenatti and

13  failing to provide Plaintiff with any consideration in exchange, and by misrepresenting that he had

14  the funds to pay off the loan and that all amounts due on the loan would be paid in full when due,

15  when in fact Avenatti failed to pay the full amount owed on the loan.

16      36.     The conduct of attorneys with their clients is also governed by the California Rules of

17  Professional Conduct. Rule 3-300 is applicable to businesses transactions between attorneys and

18  their clients where the interests of the attorney and client are adverse, including unsecured loans

19  obtained by an attorney from his client. Here, Rule 3-300 is applicable to the loan transaction and

20  Promissory Note because Avenatti's interests are adverse to Plaintiff's as set forth above.

21      37.     Rule 3-300 provides that an attorney who engages in a business transaction with a

22  client has a duty to: (A) ensure that the transaction and its terms are fair and reasonable to the client

23  and fully disclosed to the client and transmitted in writing to the client in a manner which should

24  reasonably have been understood by the client; (B) advise the client in writing that the client may

25  seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity

26  to seek that advice; and (C) obtain the client's consent in writing to the terms of the transaction.

27      38.     Avenatti breached all three provisions of Rule 3-300 in connection with the

28  $1,500,000 loan. Avenatti breached Rule 3-300 (A) because the terms were not fair and reasonable

7

COMPLAINT

1   in that: the original loan only provided Avenatti with a benefit without providing a benefit or

2   consideration to Plaintiff; Avenatti failed to advise Plaintiff that unsecured loans such as this one

3   pose high risks for the lender, and failed to offer any collateral for securing repayment of the loan;

4   Avenatti acted in his own self-interest in extending the due date of the loan by three (3) years

5   without any further consideration to Plaintiff; Avenatti misrepresented to Plaintiff that he had the

6   funds to repay all amounts owed on the Promissory Note by the due date, that he would imminently

7   receive a settlement that would pay off the Note, that he would provide collateral, and/or failed to

8   disclose to Plaintiff that he did not have the funds to repay all amounts owed on the Promissory Note

9   by the due date.  In addition, Avenatti breached Rule 3-300 (A) because he did not fully disclose

10   these unfair and unreasonable terms to the client in writing in a manner which should reasonably

11   have been understood by the client.

12       39.   Avenatti breached Rule 3-300 (B) because he failed to advise Plaintiff in writing that

13   Plaintiff should seek the advice of an independent counsel in connection with this matter.

14       40.   Avenatti breached Rule 3-300 (C) because Plaintiff did not consent in writing to the

15   terms of the transaction in accordance with this Rule.

16       41.   California Business & Professions Code § 6103, which applies to California licensed

17   attorneys, provides "any violation of the oath taken by him, or of his duties as such attorney,

18   constitute causes for disbarment or suspension."  Avenatti violated this statute by not acting in the

19   utmost good faith, fidelity and trust for the benefit of Plaintiff as set forth above and as evidenced by

20   his violation of Rule 3-300 in connection with the $1,500,000 loan.

21       42.   California Business & Professions Code § 6106, which applies to California licensed

22   attorneys, provides that "[t]he commission of any act involving moral turpitude, dishonesty or

23   corruption, whether the act is committed in the course of his relations as an attorney or otherwise,

24   and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or

25   suspension." Avenatti violated this statute because in entering into the loan with Plaintiff, he was

26   deceitful, dishonest and lacked integrity as set forth above and as evidenced by his violation of Rule

27   3-300.

28       43.   Avenatti breached his fiduciary duties to Plaintiff by not acting in the utmost good

8

COMPLAINT

1    faith, fidelity and trust for the benefit of Plaintiff as set forth above and as evidenced by his violation

2    of Rule 3-300 and the California Business & Professions Code §§ 6103 and 6106 as described above

3    in connection with the $1,500,000 loan that he never fully repaid.

4        44.    As a direct and proximate result of Avenatti's violation of his fiduciary duties as set

5    forth herein, Plaintiff has been damaged in a sum to be proven at trial.

6        45.    In carrying out the above conduct, Avenatti acted with oppression, fraud and malice.

7    The aforementioned conduct of Avenatti was willful and intentional. Plaintiff is therefore entitled to

8    an award of exemplary or punitive damages.

9    **SECOND CAUSE OF ACTION**

10   **(Breach of Promissory Note)**

11       46.    Plaintiff realleges and incorporates herein by reference each and every allegation

12   contained herein, as though fully incorporated herein and made a part hereof.

13       47.    For valuable consideration, at Santa Barbara County, California, Avenatti made,

14   executed, and delivered to Plaintiff the Promissory Note dated July 1, 2013 in the principal amount

15   of $1,500,000, originally payable to Plaintiff on January 31, 2014 and as amended by Avenatti

16   payable to Plaintiff on January 31, 2017, with interest thereon at the rate of eight percent (8%) per

17   annum from the date of the note until the loan is paid in full.

18       48.    The Promissory Note provides that in the event of any default by the maker, the payee

19   shall be entitled to recover any and all reasonable expenses and fees incurred by payee in connection

20   with any collection efforts.  Defendant has defaulted on the Promissory Note, and Plaintiff has and

21   continues to incur expenses and fees in connection with collection efforts, including attorney's fees

22   for legal action taken to enforce collection.  Under the terms of the Promissory Note, Plaintiff is

23   entitled to recover these attorney's fees from Defendant. Plaintiff has employed the law firm of

24   Cappello & Noel LLP to file and prosecute this action and has become obligated to pay the fees and

25   expenses for the law firm's services.

26       49.    Avenatti failed and refused, and continues to fail and refuse, to pay the Promissory

27   Note, and there is now due, owing, and unpaid from Defendant to Plaintiff the principal sum of

28   $1,500,000 together with interest thereon.

50.     As a proximate result of the Defendant's acts as alleged herein, Plaintiff has been damaged in the amount of $1,500,000, plus interest on the unpaid principal, plus legal fees as provided by contract.

**THIRD CAUSE OF ACTION**

**(Account Stated)**

51.     Plaintiff realleges and incorporates herein by reference each and every allegation contained herein, as though fully incorporated herein and made a part hereof.

52.     Within the past four years, at Santa Barbara, California, an account was stated in writing by and between Plaintiff and Defendant, and on such statement a balance in the principal amount of $1,500,000 plus interest, due to Plaintiff from Defendant. Defendant agreed to pay to Plaintiff said balance.

53.     Although demanded by Plaintiff from Defendant, the agreed balance has not been paid.

54.     There is now due, owing, and unpaid from Defendant to Plaintiff the principal sum of $1,500,000together with interest thereon and attorney fees as applicable.

**FOURTH CAUSE OF ACTION**

**(Open Book Account)**

55.     Plaintiff realleges and incorporates herein by reference each and every allegation contained herein as though fully incorporated herein and made a part hereof.

56.     Within the past four years, Defendant became indebted to Plaintiff on an open book account for money due in the sum of $1,500,000 at its special instance and request, and for which Avenatti agreed to pay the above sum.

57.     The whole of the above sum has not been paid although a demand therefore has been made, and there is now due, owing, and unpaid the sum of $1,500,000 with interest thereon.

58.     Plaintiff has incurred attorney's fees in connection with this matter, in an amount to be determined at trial, which fees Plaintiff is entitled to recover from Avenatti pursuant to agreement or as otherwise applicable.

**FIFTH CAUSE OF ACTION**

**(Common Count - Money Had and Received)**

59.     Plaintiff realleges and incorporates herein by reference each and every allegation contained herein as though fully incorporated herein and made a part hereof.

60.     On or about July 1, 2013, at Santa Barbara, California, Avenatti became indebted to Plaintiff in the sum of $1,500,000 for money had and received by Avenatti for the use and benefit of Avenatti.

61.     Avenatti failed and refused and continue to fail and refuse to pay and there is now due, owing, and unpaid from Avenatti to Plaintiff the sum of $1,500,000 together with interest thereon, and attorney fees as applicable.

**SIXTH CAUSE OF ACTION**

**(Common Count – Money Lent)**

62.     On or about July 1, 2013, at Santa Barbara, California, Avenatti became indebted to Plaintiff in the sum of $1,500,000 for money lent by Plaintiff to Avenatti at his request.

63.     Avenatti failed and refused and continues to fail and refuse to pay the indebtedness in full, and there is now due, owing, and unpaid from Avenatti to Plaintiff the principal sum of $1,500,000 together with interest thereon at the legal rate.

64.     The contract on which this action is based provides that in the event legal action is taken to enforce collection, the prevailing party is entitled to recover reasonable attorney fees.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendant, on each cause of action, as follows:

1. For damages in the principal amount of $1,500,000;

2. For interest as set by contract;

3. For reasonable attorney's fees as provided by contract or otherwise;

4. For costs of suit incurred herein;

5. For punitive damages;

11

COMPLAINT

6. For such other further relief as the court may deem just and proper.

DATED: August 20, 2018

CAPPELLO & NOËL LLP

By:

A.  Barry Cappello
Lawrence J. Conlan
Attorneys for Plaintiff

COMPLAINT

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of all issues so triable in this action.

DATED:  August 20, 2018                    CAPPELLO & NOËL LLP

                                           By:  _____
                                                ─A.  Barry Cappello
                                                Lawrence J. Conlan
                                                Attorneys for Plaintiff

13

# EXHIBIT A

## NONNEGOTIABLE PROMISSORY NOTE DUE JANUARY 31, 2014

$1,500,000.00

**Newport Beach, California**

**July 1, 2013**

**FOR VALUE RECEIVED,** Michael J. Avenatti, an individual (collectively, the "Maker") unconditionally promises to pay to the order of William Parrish ("Payee"), in the manner and at the place hereinafter provided, the principal amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) in one payment on January 31, 2014.

Maker also promises to pay interest at a rate per annum equal to 8.0% on any unpaid principal amount from the date such amount(s) is loaned to Maker until paid in full.

Interest on this Note shall be payable on the following dates: January 31, 2014. All computations of interest shall be made by Payee on the basis of a 365-day year, for the actual number of days elapsed in the relevant period (including the first day but excluding the last day).

1.    **Payments.** All payments of principal and interest in respect of this Note shall be made in lawful money of the United States of America at William Parrish; 6489 Calle Real Suite E; Goleta, CA  93117, or at such other place as Payee may direct. Whenever any payment on this Note is stated to be due on a day that is not a Business Day, such payment shall instead be made on the next Business Day, and such extension of time shall be included in the computation of interest payable on this Note. "Business Day" means any day other man a Saturday, Sunday or legal holiday under the laws of the State of California or any other day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

2.    **Prepayments.** Maker shall have the right at any time and from time to time to prepay the principal of this Note in whole or in part without penalty.

3.    **Miscellaneous.**

(a)    All notices and other communications provided for hereunder shall be in writing (including telegraphic, telex, telefacsimile or cable communication) and mailed, telegraphed, telexed, telecopied, cabled or delivered as follows: if to Maker, at its address specified opposite its signature below; and if to Payee, at the address specified in Section 1 hereof, or in each case at such other address as shall be designated by Payee or Maker. All such notices and communications shall, when mailed, telegraphed, telexed, telecopied or cabled or sent by overnight courier, be effective when deposited in the mails, delivered to the telegraph company, cable company or overnight courier, as the case may be, or sent by telex of telecopier.

(b)     If any provision in or obligation under this Note shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby. Moreover, in the event any interest or fee provided for herein shall be deemed to be illegal or in violation of any state law, such interest or fee shall be reduced to the highest available rate or fee allowed under the law.

(c)     This Note shall be binding upon Maker and Payee and their respective successors and assigns. None of the terms or provisions of this Note maybe waived, altered, modified or amended except in writing duly signed for and on behalf of Maker and Payee.

(d)     Neither this Note nor the rights or obligations hereunder shall be assigned without the express written consent of Maker and Payee.

(e)     This Note shall be binding upon Maker and Payee and their respective successors and assigns. None of the terms or provisions of this Note maybe waived, altered, modified or amended except in writing duly signed for and on behalf of Maker and Payee.

(f)     In the event of any default by Maker, the Payee shall be entitled to recover any and all reasonable expenses and fees incurred by Payee in connection with any collection efforts.

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF MAKER AND PAYEE HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CALIFORNIA WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.**

IN WITNESS WHEREOF, Maker has caused this Note to be executed and delivered as of the day and year and at the place first above written.

"MAKER"

MICHAEL J. AVENATTI, individually

# EXHIBIT B

## NONNEGOTIABLE PROMISSORY NOTE DUE JANUARY 31, 20~~14~~ 17 (MTR)

$1,500,000.00

**Newport Beach, California**

**July 1, 2013**

      **FOR VALUE RECEIVED,** Michael J. Avenatti, an individual (collectively, the "Maker") unconditionally promises to pay to the order of William Parrish ("Payee"), in the manner and at the place hereinafter provided, the principal amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) in one payment on January 31, 20~~14~~. 17 MTR

      Maker also promises to pay interest at a rate per annum equal to 8.0% on any unpaid principal amount from the date such amount(s) is loaned to Maker until paid in full. MTR

      Interest on this Note shall be payable on the following dates: January 31, 20~~14~~. 17 All computations of interest shall be made by Payee on the basis of a 365-day year, for the actual number of days elapsed in the relevant period (including the first day but excluding the last day).

      1.    **Payments.** All payments of principal and interest in respect of this Note shall be made in lawful money of the United States of America at William Parrish; 6489 Calle Real Suite E; Goleta, CA 93117, or at such other place as Payee may direct. Whenever any payment on this Note is stated to be due on a day that is not a Business Day, such payment shall instead be made on the next Business Day, and such extension of time shall be included in the computation of interest payable on this Note. "Business Day" means any day other man a Saturday, Sunday or legal holiday under the laws of the State of California or any other day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

      2.    **Prepayments.** Maker shall have the right at any time and from time to time to prepay the principal of this Note in whole or in part without penalty.

      3.    **Miscellaneous.**

      (a)    All notices and other communications provided for hereunder shall be in writing (including telegraphic, telex, telefacsimile or cable communication) and mailed, telegraphed, telexed, telecopied, cabled or delivered as follows: if to Maker, at its address specified opposite its signature below; and if to Payee, at the address specified in Section 1 hereof, or in each case at such other address as shall be designated by Payee or Maker. All such notices and communications shall, when mailed, telegraphed, telexed, telecopied or cabled or sent by overnight courier, be effective when deposited in the mails, delivered to the telegraph company, cable company or overnight courier, as the case may be, or sent by telex of telecopier.

1

(b)   If any provision in or obligation under this Note shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby. Moreover, in the event any interest or fee provided for herein shall be deemed to be illegal or in violation of any state law, such interest or fee shall be reduced to the highest available rate or fee allowed under the law.

(c)   This Note shall be binding upon Maker and Payee and their respective successors and assigns. None of the terms or provisions of this Note maybe waived, altered, modified or amended except in writing duly signed for and on behalf of Maker and Payee.

(d)   Neither this Note nor the rights or obligations hereunder shall be assigned without the express written consent of Maker and Payee.

(e)   This Note shall be binding upon Maker and Payee and their respective successors and assigns. None of the terms or provisions of this Note maybe waived, altered, modified or amended except in writing duly signed for and on behalf of Maker and Payee.

(f)   In the event of any default by Maker, the Payee shall be entitled to recover any and all reasonable expenses and fees incurred by Payee in connection with any collection efforts.

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF MAKER AND PAYEE HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CALIFORNIA WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.**

IN WITNESS WHEREOF, Maker has caused this Note to be executed and delivered as of the day and year and at the place first above written.

"MAKER"

MICHAEL J. AVENATTI, individually

REAFFIRMED 7-25-16

2

Exhibit G

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lawrence J. Conlan (SBN 221350)<br>Cappello & Noël LLP<br>831 State Street, Santa Barbara<br>TELEPHONE NO.: (805) 564-2444    FAX NO. *(Optional):* (805) 965-5950<br>E-MAIL ADDRESS *(Optional):* lconlan@cappellonoel.com<br>ATTORNEY FOR *(Name):* PLAINTFF, William Parrish | ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Barbara<br>Darrel E. Parker, Executive Officer<br>10/26/2018 10:51 AM<br>By: Sarah Sisto, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Barbara
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, 93121-1107
BRANCH NAME: Santa Barbara - Anacapa

PLAINTIFF: WILLIAM PARRISH

DEFENDANT: MICHAEL J. AVENATTI

| JUDGMENT | | CASE NUMBER: |
|---|---|---|
| ☑ By Clerk    ☒ By Default<br>☐ By Court    ☐ On Stipulation | ☐ After Court Trial<br>Defendant Did Not<br>Appear at Trial | 18CV04106 |

**JUDGMENT**

1. ☑ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☑ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☐ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☐ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court    ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
      before *(name of judicial officer):*
   b. Appearances by:
      ☐ Plaintiff *(name each):*                    ☐ Plaintiff's attorney *(name each):*
         (1)                                            (1)
         (2)                                            (2)
      ☐ Continued on Attachment 3b.

      ☐ Defendant *(name each):*                    ☐ Defendant 's attorney *(name each):*
         (1)                                            (1)
         (2)                                            (2)
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐ A statement of decision (Code Civ. Proc., § 632)  ☐ was not  ☐ was    requested.

Page 1 of 2

Form Approved for Optional Use<br>Judicial Council of California<br>JUD-100 [New January 1, 2002]    **JUDGMENT**    Code of Civil Procedure, §§ 585, 664.6

| PLAINTIFF: WILLIAM PARRISH | CASE NUMBER: |
|---|---|
| DEFENDANT: MICHAEL J. AVENATTI | 18CV04106 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:** ☐ THE COURT ☑ THE CLERK

4. ☐ **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is
   a. ☑ for plaintiff (name each):
      William Parrish
      and against defendant (names):
      Michael J. Avenatti

      ☐ Continued on Attachment 5a.

   b. ☐ for defendant (name each):

   c. ☐ for cross-complainant (name each):

      and against cross-defendant (name each):

      ☐ Continued on Attachment 5c.

   d. ☐ for cross-defendant (name each):

6. **Amount.**
   a. ☑ Defendant named in Item 5a above must pay plaintiff on the complaint:

   c. ☐ Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | | | |
|---|---|---|---|---|---|
| (1) ☑ | Damages | $ 1,500,000.00 | (1) ☐ | Damages | $ |
| (2) ☑ | Prejudgment interest at the annual rate of 8 % | $ 674,136.99 | (2) ☐ | Prejudgment interest at the annual rate of % | $ |
| (3) ☑ | Attorney fees | $ 19,050.00 | (3) ☐ | Attorney fees | $ |
| (4) ☑ | Costs | $ 1,114.88 | (4) ☐ | Costs | $ |
| (5) ☐ | Other (specify): | $ | (5) ☐ | Other (specify): | $ |
| (6) | TOTAL | $ 2,194,301.87 | (6) | TOTAL | $ |

   b. ☐ Plaintiff to receive nothing from defendant named in item 5b.
      ☐ Defendant named in item 5b to recover costs  $
         ☐ and attorney fees  $

   d. ☐ Cross-complainant to receive nothing from cross-defendant named in item 5d.
      ☐ Cross-defendant named in item 5d to recover costs  $
         ☐ and attorney fees  $

7. ☑ Other (specify):
   Judgment supported by Declaration of Plaintiff William Parrish in support of application for entry of default judgment, filed on 10/25/2018.

Date: _____ ☐ _____
                              JUDICIAL OFFICER

Date: 10/26/2018        ☒ Clerk, by ___/s/ Sarah Sisto_____ , Deputy

| (SEAL) | **CLERK'S CERTIFICATE** (Optional) |
|---|---|
| | I certify that this is a true copy of the original judgment on file in the court. |
| | Date: |
| | Clerk, by _____ , Deputy |

Page 2 of 2

JUD-100 [New January 1, 2002]                **JUDGMENT**

Exhibit H

## Mandy Duong

| From: | Andre, Julian L. (USACAC) <Julian.L.Andre@usdoj.gov> |
|---|---|
| Sent: | Thursday, April 11, 2019 8:16 PM |
| To: | Lawrence J. Conlan |
| Cc: | Sagel, Brett (USACAC); Welk, Steven (USACAC) |
| Subject: | Re: US v Michael Avenatti; Parrish and Fltzgibbons v. Michael Avenatti |

Larry,

The asset forfeiture matter is being handled by AUSA Steve Welk. I have copied Steve here and his number is 213.894.6166. Steve should be able to answer any questions you and your client have regarding the plane.

Brett and I will follow-up with you regarding the other issues you have raised next week once we have had more time to review the materials you submitted.

Thank you.

Julian

Julian L. André
Assistant United States Attorney
United States Courthouse, Suite 1100
312 N. Spring St. | Los Angeles, California 90012<x-apple-data-detectors://1/0>
T: 213.894.6683<tel:213.894.6683> | julian.l.andre@usdoj.gov<mailto:julian.l.andre@usdoj.gov>

On Apr 11, 2019, at 3:17 PM, Lawrence J. Conlan <lconlan@cappellonoel.com<mailto:lconlan@cappellonoel.com>> wrote:

Dear Julian and Brett:

Yesterday when my client William Parrish arrived at Santa Barbara Airport to fly his private plane to Orange County, he was informed by special agents from Treasury that his plane was being seized in connection with the case against Avenatti. Mr. Parrish originally purchased the plane with Avenatti as a co-owner several years ago, but pursuant to a December 2018 Orange County court order Avenatti transferred his interest in the plane to his ex-wife, to liquidate as part of a support obligation. As of the date of that order, Avenatti was no longer an owner of the plane.

Mr. Parrish, who has already been subjected to Avenatti's malpractice and misrepresentations, is now being injured again by the seizure of his property.

Today left a voicemail for Special Agent Jason Wallace of Treasury, who along with Special Agent James Kim was involved with the plane seizure. I have not received a call back. When Mr. Parrish explained to Mr. Kim that he is an owner of the plane, Mr. Kim assured him that he would be made whole. I am trying to get some more information about the status of the plane and next steps here.

Let me know, please, if we can discuss this matter.

Best regards,

Larry Conlan


Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com<mailto:lnoel@cappellonoel.com>


From: Lawrence J. Conlan
Sent: Tuesday, April 9, 2019 12:37 PM
To: Andre, Julian L. (USACAC) <Julian.L.Andre@usdoj.gov<mailto:Julian.L.Andre@usdoj.gov>>; Sagel, Brett (USACAC)
<Brett.Sagel@usdoj.gov<mailto:Brett.Sagel@usdoj.gov>>
Subject: RE: US v Michael Avenatti; Parrish and FItzgibbons v. Michael Avenatti

Dear Julian and Brett:

Below is a Dropbox link that contains the State Bar Complaint (with exhibits) against Avenatti filed on behalf of Mr.
Parrish and Mr. Fitzgibbons, and a conformed copy of Mr. Parrish's civil complaint against Avenatti and the Judgment
entered on that complaint on 10/26/18.

https://www.dropbox.com/sh/7bat7x5pxluv48h/AAB7ygZIwN62MkMWWHNJ6pPra?dl=0

If you need hard copies we would be happy to mail them to you. Once you've had a chance to review please let me
know if you have any questions or would like to see any other documents. We can also make available documents form
the underlying Orange County litigation (Stoll) that is the subject of the malpractice complaint.

Best regards,

Larry Conlan


Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com<mailto:lnoel@cappellonoel.com>


From: Andre, Julian L. (USACAC) <Julian.L.Andre@usdoj.gov<mailto:Julian.L.Andre@usdoj.gov>>
Sent: Monday, April 8, 2019 12:06 PM
To: Lawrence J. Conlan <lconlan@cappellonoel.com<mailto:lconlan@cappellonoel.com>>; Sagel, Brett (USACAC)
<Brett.Sagel@usdoj.gov<mailto:Brett.Sagel@usdoj.gov>>
Subject: RE: US v Michael Avenatti; Parrish and FItzgibbons v. Michael Avenatti

Mr. Conlan:

Thank you for contacting us. We have a copy of the complaint that was recently filed in Santa Barbara Superior Court,
but would be interested in reviewing any and all additional materials that you are willing to provide to us.

Julian L. André
Assistant United States Attorney
Major Frauds Section

United States Courthouse, Suite 1100
312 N. Spring St. | Los Angeles, California 90012
T: 213.894.6683 | julian.l.andre@usdoj.gov<mailto:julian.l.andre@usdoj.gov>


From: Lawrence J. Conlan <lconlan@cappellonoel.com<mailto:lconlan@cappellonoel.com>>
Sent: Monday, April 8, 2019 11:42 AM
To: Andre, Julian L. (USACAC) <JAndre1@usa.doj.gov<mailto:JAndre1@usa.doj.gov>>; Sagel, Brett (USACAC) <BSagel@usa.doj.gov<mailto:BSagel@usa.doj.gov>>
Subject: US v Michael Avenatti; Parrish and Fitzgibbons v. Michael Avenatti

Confidential

Dear Julian and Brett:

I represent William Parrish and E. Timothy Fitzgibbons in civil litigation against Michael Avenatti. Last week in Santa Barbara Superior Court we filed a professional negligence case against Avenatti and his former firm/partners that details major ethical violations and other malfeasance. Last month we submitted a formal complaint to the State Bar of California on behalf of our clients, also concerning Avenatti. Separately, last fall I obtained a judgment against Avenatti in a different case in Santa Barbara, concerning a $1.5 million loan William Parrish made to Avenatti several years ago (while Avenatti was representing him) for the purchase of Tully's Coffee, which was never repaid. Avenatti is appealing the judgment.

I believe there are similarities between Avenatti's handling of my clients and the manner in which he represented his former client Mr. Barela, whose settlement proceeds are alleged to have been mishandled in your criminal complaint. Avenatti's conduct with the settlement proceeds and attorney fees detailed in the malpractice complaint, as well as the unpaid loan, may also be relevant to the tax evasion charges in your criminal complaint.

I would be happy to provide you with copies of our complaints and judgment if you are interested, and of course I'm available to discuss these matters with you as well.

Best regards,

Larry Conlan


Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com<mailto:lnoel@cappellonoel.com>

Exhibit I

## Mandy Duong

| | |
|---|---|
| **From:** | Welk, Steven (USACAC) <Steven.Welk@usdoj.gov> |
| **Sent:** | Friday, April 12, 2019 12:06 PM |
| **To:** | ibibbero@bgrfirm.com |
| **Cc:** | Lawrence J. Conlan; Keleshyan, Tina (USACAC) [Contractor] |
| **Subject:** | Avenatti airplane |

Mr. Bibbero,

This will follow up the voicemail I left for you a few minutes ago. I was advised this morning by Larry Conlan that you represent the ex-wife of Michael Avenatti with respect to her interest in an airplane acquired by Mr. Avenatti, together with Mr. Conlan's client, Mr. Parrish. As I suspect you know by now, the government seized that airplane earlier this week pursuant to a federal seizure warrant.

Mr. Conlan explained to me that the two of you had been engaged in negotiations on behalf of your respective clients to liquidate the airplane, and were working to identify a broker who would be charged with the marketing and sale. As I explained to Mr. Conlan, the government has a strong interest in liquidating the plane in order to avoid the costs associated with storage and maintenance over the course of what, if it is not settled quickly, may turn out to be lengthy litigation. The purpose of my call and email is to encourage you and Mr. Conlan to continue in your efforts to locate a broker to market and sell the aircraft, and send me a proposal for liquidation. So long as the proposal is commercially reasonable, adequately protects the government's interests, and provides that the net sale proceeds will be paid to the government as a substitute res, my inclination would be to enter into an agreement whereby the government and the parties would stipulate to sell the plane.

Obviously, this type of transaction has a lot of moving parts, and we will have to discuss the specific terms of any liquidation agreement. For my part, I understand that you and Mr. Conlan each represent a party who believes that he or she is a victim (in one way or another) of Mr. Avenatti. You should understand that while I represent the government in this matter, my interests include doing everything I can to see that a separate victim of Mr. Avenatti's is compensated for his/her losses associated with the acquisition of Mr. Avenatti's original interest in the airplane. While I assure you that we will eventually get to a point where we can have a conversation about our respective positions on how the proceeds of the sale should be divided, our immediate focus should be on selling the airplane so that we can then talk about the money. It goes without saying that it is in the best interests of all of the parties that we do what we can to reach an agreement on the liquidation of the plane before getting the court involved.

I'm happy to discuss the matter with you. Please give me a call at your convenience at (213) 894-6166. I look forward to hearing from you.

AUSA Steve Welk
Chief, Asset Forfeiture Section
Central District of California
(213) 894-6166

Exhibit J

## Mandy Duong

| From: | Lawrence J. Conlan |
| --- | --- |
| Sent: | Thursday, May 2, 2019 10:26 AM |
| To: | Welk, Steven (USACAC); Tina.Keleshyan@usdoj.gov |
| Subject: | RE: Avenatti airplane |
| Attachments: | FlightReady Airframe PERFORMANCE-P2- Service Plan Agreement_SN029_US_V01 04_<br>2016-09-21.pdf; Honda delivery docs.pdf; Asset Transfer Confirmation; Asset Transfer Confirmation;<br>Honda Jet Purchase Accounting.xlsx |

**Confidential**

Dear Steve:

Thanks again for taking the time to speak with me yesterday. As we discussed, the engines of the HondaJet need to be run at least once each month and the hours sent to Honda Aircraft to be in compliance with applicable service and warranty agreements. Not being in compliance would likely have a very major effect on the value of the aircraft. I am attaching a copy of the service plan agreement (unexecuted); an executed copy can be obtained through Honda Aircraft. Please contact Honda to get the particulars on maintaining the programs and warranty. The telephone number we have is 336-217-4707 and the email address is flightready@haci.honda.com.

Separately, I am also attaching documentation that shows Mr. Parrish's purchase and ownership of more than 52% of the interest in the jet. You will see from the Honda Aircraft Company invoice (p. 3 of 5 of pdf labeled Honda delivery docs) that:

- the total net price was $4,383,605.
- This included the base price, adjusted, plus options and tax.

Also attached are wire transfer confirmations showing:

- Mr. Parrish's 1/18/17 wire transfer of $1,985,000 from his family trust account at Goldman Sachs into what I understand to be the Passport 420 LLC account at California Bank & Trust;
- Mr. Parrish's 7/12/16 wire transfer of $350,000 from his family trust into what I understand to be the Honda Aircraft account at Wells Fargo Bank NA.

Finally, I am also including an accounting that details Mr. Parrish total payments and his 52.7% interest.

You and I also discussed the potential complications with a sale of the jet given the dispute between Ms. Storie-Avenatti, her lawyers, and Avenatti's former law partners over their claimed interests in the jet. For a number of reasons, it appears to me that Ms. Storie-Avenatti has no legitimate interest in the jet given that the interest was fraudulently assigned to her by Michael Avenatti who evidently used other people's money to purchase his "share" in Passport 420. To what extent his former law partners have an interest is subject to debate, in my view. Their claims of interest in the jet, whether valid or not, will only complicate any efforts to liquidate it as a seized asset and likely cause the value of it to be driven down in the eyes of prospective buyers. That would be a result that benefits no party on the seller side.

What is clear, however, is that Mr. Parrish paid for his interest with his own money, out of his own accounts, and there should be no dispute about his percentage ownership. Since Mr. Parrish is the legitimate owner of more than half of the jet, he feels particularly wronged by the seizure. He is very concerned that whatever value he may get from a sale will be reduced because of the stigma on the jet from the seizure. This is compounded by the fact that he has now been deprived of all ability to use the jet, which he is entitled to as a legitimate owner.

I would like to explore with you a solution that would benefit your office and client, as well as mine, and maximize the value of the recovery from an ultimate sale. We think it would make more sense, and would be fairer under the circumstances, if the government would consider liening the jet in the amount of the Avenatti interest, and then releasing it to Mr. Parrish as the majority owner. This would allow him to continue to use it while proceeding with the marketing and sale process, make it easier for prospective buyers to test-fly it, and minimize the likelihood of "fire sale" buyers seeing an opportunity to pay well below value for a government-seized asset. The jet is fully insured so the government's interest would be protected. Please consider this as an option here. We think it is an approach that will create the most upside for you and Mr. Parrish under less-than-ideal circumstances.

Best regards,

Larry Conlan

Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

**From:** Welk, Steven (USACAC) <Steven.Welk@usdoj.gov>
**Sent:** Tuesday, April 30, 2019 3:36 PM
**To:** Lawrence J. Conlan <lconlan@cappellonoel.com>; Keleshyan, Tina (USACAC) [Contractor] <Tina.Keleshyan@usdoj.gov>
**Subject:** RE: Avenatti airplane

**Larry,**

**Sorry for the delay. There's been a little game of musical chairs going on with respect to counsel for one of the other real parties in interest, which I think is going to make an interlocutory sale a lot more complicated than it needs to be.**

**We've got time to talk tomorrow morning between 9:30 and noon, or Thursday morning between 9:30 and 11:30 am. Let us know what works for you, if either of those will work. Right now, we're also open on Friday pretty much all day.**

**Steve**

**From:** Lawrence J. Conlan <lconlan@cappellonoel.com>
**Sent:** Tuesday, April 30, 2019 2:21 PM
**To:** Welk, Steven (USACAC) <SWelk@usa.doj.gov>; Keleshyan, Tina (USACAC) [Contractor] <tkeleshyan@usa.doj.gov>
**Subject:** RE: Avenatti airplane

Steve,

Following up again. There is maintenance information about the jet that you need to know about and procedures that need to be followed in order to remain in compliance with the warranty and maintenance agreements. Not being in compliance will have a very major, negative effect on the value of the aircraft.

Please let me know when you are available to discuss this and to continue our discussion about a possible sale.

2

Thank you,
Larry Conlan

Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

**From:** Lawrence J. Conlan
**Sent:** Monday, April 29, 2019 10:58 AM
**To:** Welk, Steven (USACAC) <Steven.Welk@usdoj.gov>; Tina.Keleshyan@usdoj.gov
**Subject:** RE: Avenatti airplane

Hi Steve,

I am following up on this again. There' snot a lot I can do at this point regarding potential sale of the jet until we have a chance to discuss. I still have heard nothing from Ms. Storie-Avenatti's lawyers. Are you free today to talk?

Thanks,
Larry

Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

**From:** Lawrence J. Conlan
**Sent:** Monday, April 22, 2019 5:03 PM
**To:** Welk, Steven (USACAC) <Steven.Welk@usdoj.gov>; Tina.Keleshyan@usdoj.gov
**Subject:** RE: Avenatti airplane

Dear Steve,

I'm following up on our call the week before last regarding the seizure of the jet and Mr. Parrish's interest in it. I've heard nothing from Lisa Storie-Avenatti's lawyers. Are you free to talk tomorrow?

Thank you,

Larry Conlan

Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

**From:** Lawrence J. Conlan
**Sent:** Tuesday, April 16, 2019 12:16 PM
**To:** Welk, Steven (USACAC) <Steven.Welk@usdoj.gov>; Tina.Keleshyan@usdoj.gov
**Subject:** RE: Avenatti airplane

Steve,

I have not seen a response from Ira on this, but I have some additional information about Passport 420 I would like to discuss with you. Are you free this afternoon for a call?

Thanks,
Larry Conlan

Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

**From:** Welk, Steven (USACAC) <Steven.Welk@usdoj.gov>
**Sent:** Friday, April 12, 2019 12:06 PM
**To:** ibibbero@bgrfirm.com
**Cc:** Lawrence J. Conlan <lconlan@cappellonoel.com>; Keleshyan, Tina (USACAC) [Contractor] <Tina.Keleshyan@usdoj.gov>
**Subject:** Avenatti airplane

**Mr. Bibbero,**

This will follow up the voicemail I left for you a few minutes ago. I was advised this morning by Larry Conlan that you represent the ex-wife of Michael Avenatti with respect to her interest in an airplane acquired by Mr. Avenatti, together with Mr. Conlan's client, Mr. Parrish. As I suspect you know by now, the government seized that airplane earlier this week pursuant to a federal seizure warrant.

Mr. Conlan explained to me that the two of you had been engaged in negotiations on behalf of your respective clients to liquidate the airplane, and were working to identify a broker who would be charged with the marketing and sale. As I explained to Mr. Conlan, the government has a strong interest in liquidating the plane in order to avoid the costs associated with storage and maintenance over the course of what, if it is not settled quickly, may turn out to be lengthy litigation. The purpose of my call and email is to encourage you and Mr. Conlan to continue in your efforts to locate a broker to market and sell the aircraft, and send me a proposal for liquidation. So long as the proposal is commercially reasonable, adequately protects the government's interests, and provides that the net sale proceeds will be paid to the government as a substitute res, my inclination would be to enter into an agreement whereby the government and the parties would stipulate to sell the plane.

Obviously, this type of transaction has a lot of moving parts, and we will have to discuss the specific terms of any liquidation agreement. For my part, I understand that you and Mr. Conlan each represent a party who believes that he or she is a victim (in one way or another) of Mr. Avenatti. You should understand that while I represent the government in this matter, my interests include doing everything I can to see that a separate victim of Mr. Avenatti's is compensated for his/her losses associated with the acquisition of Mr. Avenatti's original interest in the airplane. While I assure you that we will eventually get to a point where we can have a conversation about our respective positions on how the proceeds of the sale should be divided, our immediate focus should be on selling the airplane so that we can then talk about the money. It goes without

saying that it is in the best interests of all of the parties that we do what we can to reach an agreement on the liquidation of the plane before getting the court involved.

I'm happy to discuss the matter with you.  Please give me a call at your convenience at (213) 894-6166.  I look forward to hearing from you.

AUSA Steve Welk
Chief, Asset Forfeiture Section
Central District of California
(213) 894-6166

Exhibit E



1

2

3

4

5

6

7

8    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9    COUNTY OF ORANGE, WEST JUSTICE CENTER

10

11   EAGAN AVENATTI, LLP,                    CASE NO. 30-2011-00483570-CU-CO-CJC
                                             [c/w Case No. 30-2013-00627604 Stoll v.
12         Plaintiff,                        Eagan Avenatti, et al.]

13   vs.                                     [PROPOSED] JUDGMENT AFTER
                                             TRIAL BY JURY AS TO CROSS-
14   ROBERT J. STOLL, JR., an individual, and   DEFENDANTS WILLIAM PARRISH
     STOLL, NUSSBAUM & POLAKOV, a            AND E. TIMOTHY FITZGIBBONS AND
15   California Professional Corporation,    JUDGMENT ON THE DEFAULT OF
                                             CROSS-DEFENDANTS MICHAEL J.
16         Defendants,                       AVENATTI AND AVENATTI &
                                             ASSOCIATES, INC. ON STOLL,
17   ─────────────────────────────           NUSSBAUM & POLAKOV APC'S
                                             SECOND AMENDED CROSS-
18   AND RELATED CROSS-ACTIONS.              COMPLAINT

19                                           Trial Date:        April 7, 2022

20

21              JUDGMENT AFTER TRIAL BY JURY

22

23         TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24         This action came on regularly for trial on April 7, 2022 in Courtroom W-8 of the Superior

25   Court of the State of California, County of Orange West Justice Center, before the Honorable

26   Walter Schwarm. Cross-Complainant STOLL, NUSSBAUM & POLAKOV APC was represented

27

28                                       1

by James Keathley and Katherine Keathley of Keathley & Keathley LLP. Cross-Defendants E. TIMOTHY FITZGIBBONS and WILLIAM PARRISH were represented by Lawrence Conlan of Cappello & Noel LLP and Christopher Wesierski of Wesierski & Zurek LLP.

A jury of twelve (12) persons were regularly empaneled and sworn on May 15, 2022. Witnesses were sworn and testified and documentary evidence was introduced and admitted into evidence. After hearing the evidence and arguments of counsel, the jury was duly instructed by the Court and the cause was submitted to the jury with directions to return a verdict on the issues, if after proper deliberations, they could do so. The jury deliberated and thereafter returned to the court with their verdict (Exhibit A), on June 22, 2022.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:**

I. A.  <u>BREACH OF CONTRACT -WILLIAM PARRISH AND E. TIMOTHY FITZGIBBONS</u>

1.      Stoll, Nussbaum & Polakov APC and William Parrish and E. Timothy Fitzgibbons entered into the Attorney-Client Fee Contract (Contingency);

2.      Stoll, Nussbaum & Polakov APC did not do all, or substantially all, of the significant things that the Attorney-Client Fee Contract (Contingency) required it to do, and/or Stoll, Nussbaum & Polakov APC was not excused from doing those things;

B.  <u>CONVERSION – WILLIAM PARRISH</u>

3.      Stoll, Nussbaum & Polakov APC had a right to possess certain attorneys' fees and costs;

4.      William Parrish did not substantially interfere with Stoll, Nussbaum & Polakov APC's property by knowingly or intentionally preventing Stoll, Nussbaum & Polakov APC from having access to the attorneys' fees and costs;

2

C. <u>CONVERSION – E. TIMOTHY FITZGIBBONS</u>

5.     Stoll, Nussbaum & Polakov APC had a right to possess certain attorneys' fees and costs;

6.     E. Timothy Fitzgibbons did not substantially interfere with Stoll, Nussbaum & Polakov APC's property by knowingly or intentionally preventing Stoll, Nussbaum & Polakov APC from having access to the attorneys' fees and costs;

D. <u>AIDING AND ABETTING - CONVERSION - WILLIAM PARRISH</u>

7.     Stoll, Nussbaum & Polakov APC had a right to possess certain attorneys' fees and costs;

8.     Michael Avenatti substantially interfered with Stoll, Nussbaum & Polakov APC's property by knowingly or intentionally preventing Stoll, Nussbaum & Polakov APC from having access to the attorneys' fees and costs;

9.     Stoll, Nussbaum & Polakov APC did not consent;

10.    Stoll, Nussbaum & Polakov APC was harmed;

11.    Michael Avenatti's conduct was a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm;

12.    William Parrish did not know that a conversion was going to be committed by Michael Avenatti against Stoll, Nussbaum & Polakov APC;

E. <u>AIDING AND ABETTING - CONVERSION – E. TIMOTHY FITZGIBBONS</u>

13.    Stoll, Nussbaum & Polakov APC had a right to possess certain attorneys' fees and costs;

14.    Michael Avenatti substantially interfered with Stoll, Nussbaum & Polakov APC's property by knowingly or intentionally preventing Stoll, Nussbaum & Polakov APC from having

3

access to the attorneys' fees and costs;

15. Stoll, Nussbaum & Polakov APC did not consent;

16. Stoll, Nussbaum & Polakov APC was harmed;

17. Michael Avenatti's conduct was a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm;

18. E. Timothy Fitzgibbons did not know that a conversion was going to be committed by Michael Avenatti against Stoll, Nussbaum & Polakov APC;

F. AIDING AND ABETTING – BREACH OF FIDUCIARY DUTY - WILLIAM PARRISH

19. Stoll, Nussbaum & Polakov APC had a right to possess certain attorneys' fees and costs;

20. Michael Avenatti breached the duty of an attorney by failing to pay Stoll, Nussbaum & Polakov APC the disputed attorneys' fees and costs;

21. Stoll, Nussbaum & Polakov APC was harmed;

22. Michael Avenatti's conduct was a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm;

23. William Parrish did not know that a breach of fiduciary duty owed to co-counsel was going to be committed by Michael Avenatti against Stoll, Nussbaum & Polakov APC;

G. AIDING AND ABETTING – BREACH OF FIDUCIARY DUTY – E. TIMOTHY FITZGIBBONS

24. Stoll, Nussbaum & Polakov APC had a right to possess certain attorneys' fees and costs;

25. Michael Avenatti breached the duty of an attorney by failing to pay Stoll,

4

Nussbaum & Polakov APC the disputed attorneys' fees and costs;

26.     Stoll, Nussbaum & Polakov APC was harmed;

27.     Michael Avenatti's conduct was a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm;

28.     E. Timothy Fitzgibbons did not know that a breach of fiduciary duty owed to co-counsel was going to be committed by Michael Avenatti against Stoll, Nussbaum & Polakov APC;

H. <u>VICARIOUS LIABILITY FOR CONVERSION – WILLIAM PARRISH</u>

29.     Michael Avenatti committed conversion of certain attorneys' fees and costs from Stoll, Nussbaum & Polakov APC;

30.     Michael Avenatti's conduct was a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC;

31.     Michael Avenatti was acting as William Parrish's lawyer;

32.     Michael Avenatti was not acting within the scope of his fiduciary duties as a lawyer to William Parrish when Michael Avenatti converted certain attorneys' fees and costs from Stoll, Nussbaum & Polakov APC;

I. <u>VICARIOUS LIABILITY FOR BREACH OF FIDUCIARY DUTY – WILLIAM PARRISH</u>

33.     Michael Avenatti breached his fiduciary duties to Stoll, Nussbaum & Polakov APC by failing to pay Stoll, Nussbaum & Polakov APC the disputed attorneys' fees and costs;

34.     Michael Avenatti's conduct was a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC;

35.     Michael Avenatti was acting as William Parrish's lawyer;

36.     Michael Avenatti was not acting within the scope of his fiduciary duties as a lawyer

5

to William Parrish when Michael Avenatti breached his fiduciary duties to Stoll, Nussbaum & Polakov APC;

J. VICARIOUS LIABILITY FOR CONVERSION – E. TIMOTHY FITZGIBBONS

37.    Michael Avenatti committed conversion of certain attorneys' fees and costs from Stoll, Nussbaum & Polakov APC;

38.    Michael Avenatti's conduct was a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC;

39.    Michael Avenatti was acting as E. Timothy Fitzgibbons' lawyer;

40.    Michael Avenatti was not acting within the scope of his fiduciary duties as a lawyer to E. Timothy Fitzgibbons when Michael Avenatti converted certain attorneys' fees and costs from Stoll, Nussbaum & Polakov APC;

K. VICARIOUS LIABILITY FOR BREACH OF FIDUCIARY DUTY – E. TIMOTHY FITZGIBBONS

41.    Michael Avenatti breached his fiduciary duties to Stoll, Nussbaum & Polakov APC by failing to pay Stoll, Nussbaum & Polakov APC the disputed attorneys' fees and costs;

42.    Michael Avenatti's conduct was a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC;

43.    Michael Avenatti was acting as E. Timothy Fitzgibbons' lawyer;

44.    Michael Avenatti was not acting within the scope of his fiduciary duties as a lawyer to E. Timothy Fitzgibbons when Michael Avenatti breached his fiduciary duties to Stoll, Nussbaum & Polakov APC.

/ / / /

/ / / /

6

## II. **DEFAULT JUDGMENT AGAINST MICHAEL AVENATTI AND AVENATTI & ASSOCIATES, INC. AFTER PROVE UP HEARING BY COURT.**

45.   On 7/10/19 under ROA Nos. 2362 and 2364, the Court entered defaults against Michael J. Avenatti and Avenatti & Associates, Inc. (Defaulted Parties) as to the Second Amended Cross-Complaint (SACC) filed on 01/16/19 under ROA 2123.   On 05/02/22, the Court indicated that it would hear Cross-Complainant's (Stoll Nussbaum & Polakov, a California Professional Corporation) evidence as to damages during the jury trial against Cross-Defendants William Parrish and E. Timothy Fitzgibbons (Cross-Defendants). (05/02/22 Minute Order).

46.   The jury trial against Cross-Defendants began on 05/12/22 with jury selection.   The jury trial concluded on 06/22/22 when the jury returned its verdict.   The following witnesses testified at trial: Robert Stoll, Jr., William Parrish, Michael Avenatti (by way of video deposition), Dr. Barbara Luna, E. Timothy Fitzgibbons, Timothy D. McGonigle, Robert Kehr, Edith Matthai, and Brian Panish.

47.   At a minimum, the SACC adequately sets forth causes of action against the Defaulting Parties for Breach of Contract (second cause of action), Conversion (third cause of action), and Theft (eighth cause of action). (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 282 (*Kim*).   The prayer for Relief in the SACC requests $5,465,314.00 in compensatory damages.   The SACC also requests treble damages at paragraph 65 and in the Prayer for Relief.   On 03/20/15 under ROA No. 1114, Cross-Complainant filed its "Statement Pursuant to C.C.P. Section 425.115" requesting punitive damages against Michael Avenatti in the amount of $22,681,053.09.   This Statement shows service on Michael Avenatti on 03/20/15.   The Court did not find a similar statement pertaining to Avenatti & Associates, Inc.

48.   The jury verdict reflects that Cross-Complainant (Stoll Nussbaum & Polakov APC)

7

had a right to possess certain attorneys' fees. (Verdict Form filed on 06/22/22 under ROA No. 3634; Question Nos. 9, 14, 19, 28, 37, 45, 53, and 57.) The jury found that Mr. Avenatti committed conversion as to these attorneys' fees. (Verdict Form; Question Nos. 19, 20, 21, 22, 23, 28, 29, 30, 31, 32, 53, 54, 57, and 58.) The jury found that Mr. Avenatti breached his fiduciary duty by failing to pay Cross-Complainant the disputed attorneys' fees and costs. (Verdict Form; Question Nos. 37, 38, 39, 40, 45, 46, 47, and 48.)

49. Based on the evidence that the Court heard at trial, the Court finds default judgment damages in the amount of $5,367,489.20 ($15,335,683.42 x .35 = $5,367,489.20; Please see Exhibit No. 179.) The Court is relying on the witness testimony regarding Exhibit No. 179 (the Client Accounting Statement), the testimony of Dr. Barbara Luna,, and Exhibit No. 54. The Court does not award punitive damages because there is no evidence regarding the current financial condition as to each of the Defaulting Parties. *Adams v. Murakami* (1991) 54 Cal.3d 105, 123.) The Court awards treble damages pursuant to Penal Code section 496, subdivision (c) and *Siry Investment, L.P. v. Saeed Farkhondhpour* (2022) 2022 WL 2840312 at pp. 1 and 17-20, in the amount of $16,102,467.60. ($5,367,489.20 x 3 = $16,102,467.60.)

In summary, the Court awards default judgment against the defaulting parties in the amount of $21,469,956.80, plus prejudgment interest and costs of suit, including reasonable attorneys' fees to be determined pursuant to motion.

The Court orders the Complaint filed by Stoll, Nussbaum & Polakov, Plaintiff on 01/30/13 in the consolidated case no. 30-2013-00627604 be dismissed without prejudice as to Defendant(s) Michael Avenatti, Lisa Storie Avenatti and Avenatti & Associates.

It appearing that by reason of said special verdicts and findings,

That Cross-Complainant STOLL, NUSSBAUM & POLAKOV APC has a default

8

judgment against Cross-Defendants MICHAEL AVENATTI and AVENATTI & ASSOCIATES, INC., jointly and severally, in the amount of $21,469,956.80, plus prejudgment interest and costs of suit;

That Cross-Defendants WILLIAM PARRISH and E. TIMOTHY FITZGIBBONS have judgment against Cross-Complainant STOLL, NUSSBAUM & POLAKOV APC on all causes of action brought by Cross-Complainant STOLL, NUSSBAUM & POLAKOV APC; Subject to awards in favor of E. TIMOTHY FITZGIBBONS and WILLIAM PARRISH for costs and, if applicable, attorneys' fees, this judgment, along with the judgment entered on August 2, 2021 against E. TIMOTHY FITZGIBBONS and WILLIAM PARRISH on their Cross-complaint against Robert J. Stoll, Jr. and STOLL, NUSSBAUM & POLAKOV APC, shall be the final judgment in this action on the claims between E. TIMOTHY FITZGIBBONS and WILLIAM PARRISH on the one hand, and Robert J. Stoll, Jr. and STOLL, NUSSBAUM & POLAKOV APC, on the other hand;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

1. That Cross-Complainant STOLL, NUSSBAUM & POLAKOV APC have a default judgment against Cross-Defendants MICHAEL AVENATTI and AVENATTI & ASSOCIATES, INC., jointly and severally, for:

A.  Compensatory damages of $5,367,489.20;

B.  Statutory treble damages pursuant to Penal Code, Section 496 in the amount of $16,102,467.60;

C.  Prejudgment interest at the rate of 7% per annum on $5,367,489.20 from May 31, 2011 through the date of entry of judgment August 30, 2022, in the amount of $4,226,640.40;

D.  Costs of suit pursuant to a memorandum of costs to be filed in the amount of

9

$_____, including reasonable attorneys' fees pursuant to a Motion for Attorneys'

Fees to be filed of $_____; and

        E.  Post-judgment interest at the rate of 10% per annum.

    2.  That Cross-Defendants WILLIAM PARRISH and E. TIMOTHY FITZGIBBONS have

judgment against Cross-Complainant STOLL, NUSSBAUM & POLAKOV APC on all causes of

action brought by Cross-Complainant STOLL, NUSSBAUM & POLAKOV APC for:

        A.  Costs of suit in an amount pursuant to a memorandum of costs to be filed of

$_____, including, if applicable, attorneys' fees to be determined.

        B.  Post-judgment interest at the rate of 10% per annum.

DATED: _____, 2022

_____
HON. WALTER SCHWARM
JUDGE OF THE SUPERIOR COURT

10

[PROPOSED] JUDGMENT AFTER TRIAL BY JURY

# EXHIBIT "A"

ORIGINAL

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JUN 2 2 2022

DAVID H. YAMASAKI, Clerk of the Court

BY: _____ J. QUAMINA _____ DEPUTY

1
2
3
4
5
6
7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          COUNTY OF ORANGE, WEST JUSTICE CENTER

10

| | |
|---|---|
| STOLL, NUSSBAUM & POLAKOV, a California Professional Corporation, | CASE No.: 30-2011-00483570 |
| Cross-Complainant, | Case Assigned to Hon. Walter Schwarm Dept. W-08 |
| vs. | **VERDICT FORM** |
| E. TIMOTHY FITZGIBBONS, an individual; and WILLIAM PARRISH, an individual, | |
| Cross-Defendants. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## BREACH OF CONTRACT - WILLIAM PARRISH AND E. TIMOTHY FITZGIBBONS

1.   Did Stoll, Nussbaum & Polakov APC and William Parrish and E. Timothy Fitzgibbons enter into the Attorney-Client Fee Contract (Contingency)?

X Yes _____ No

If your answer to Question 1 is "yes," answer Question 2. If your answer to Question 1 is "no," answer Question 9.

2.   Did Stoll, Nussbaum & Polakov APC do all, or substantially all, of the significant things that the Attorney-Client Fee Contract (Contingency) required it to do, or was Stoll, Nussbaum & Polakov APC excused from doing those things?

_____ Yes X No

If your answer to Question 2 is "yes," answer Question 3.  If you answered Question 2 "no," answer Question 9.

3.   Did all of the conditions for William Parrish and E. Timothy Fitzgibbons required by the Attorney-Client Fee Contract (Contingency) occur or were they excused?

_____ Yes _____ No

If your answer to Question 3 is "yes," answer Question 4.  If you answered Question 3 "no," answer Question 9.

4.   Did William Parrish and E. Timothy Fitzgibbons fail to do something that the Attorney-Client Fee Contract (Contingency) required them to do?

_____ Yes _____ No

If your answer to Question 4 is "yes," answer Question 5.  If you answered Question 4 "no," answer Question 9.

5.   Did Stoll, Nussbaum & Polakov APC make a good faith effort to comply with the Attorney-Client Fee Contract (Contingency)?

_____ Yes _____ No

If your answer to Question 5 is "yes," answer Question 6.  If you answered Question 5 "no," answer Question 9.

6.   Did William Parrish and E. Timothy Fitzgibbons receive essentially what the Attorney Fee Contract (Contingency) called for because Stoll, Nussbaum & Polakov APC's failures, if any, were so trivial or unimportant that they could have been easily fixed or paid for?

_____ Yes _____ No

If your answer to Question 6 is "yes," answer Question 7. If you answered Question 6 "no,"
answer Question 9.

7. Was Stoll, Nussbaum & Polakov APC harmed?

_____ Yes _____ No

If your answer to Question 7 is "yes," answer Question 8. If you answered Question 7 "no,"
answer Question 9.

8. Was William Parrish's and E. Timothy Fitzgibbons' breach of the Attorney-Client Fee
Contract (Contingency) a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm?

_____ Yes _____ No

Answer Question 9.

Please go to next page.

## CONVERSION - WILLIAM PARRISH

9. Did Stoll, Nussbaum & Polakov APC have a right to possess certain attorneys' fees and costs?

X Yes _____ No

If you answered question 9 "yes," answer question 10.  If you answered question 9 "no," answer question 14.

10. Did William Parrish substantially interfere with Stoll, Nussbaum & Polakov APC's property by knowingly or intentionally preventing Stoll, Nussbaum & Polakov APC from having access to the attorneys' fees and costs?

_____ Yes   X   No

If you answered question 10 "yes," then answer question 11.  If you answered question 10 "no," then answer question 14.

11. Did Stoll, Nussbaum & Polakov APC consent?

_____ Yes _____ No

If you answered question 11 "no," then answer question 12.  If you answered question 11 "yes," answer question 14.

12. Was Stoll, Nussbaum & Polakov APC harmed?

_____ Yes _____ No

If you answered question 12 "yes," then answer question 13.  If you answered question 12 "no," answer question 14.

13. Was William Parrish's conduct a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm?

_____ Yes _____ No

Answer Question 14.

Please go to the next page.

## CONVERSION - E. TIMOTHY FITZGIBBONS

14. Did Stoll, Nussbaum & Polakov APC have a right to possess certain attorneys' fees and costs?

X̶̶ Yes _____ No

If you answered question 14 "yes," answer question 15. If you answered question 14 "no," answer question 19.

15. Did E. Timothy Fitzgibbons substantially interfere with Stoll, Nussbaum & Polakov APC's property by knowingly or intentionally preventing Stoll, Nussbaum & Polakov APC from having access to the attorneys' fees and costs?

_____ Yes X̶ No

If you answered question 15 "yes," then answer question 16. If you answered question 15 "no," then answer question 19.

16. Did Stoll, Nussbaum & Polakov APC consent?

_____ Yes _____ No

If you answered question 16 "no," then answer question 17. If you answered question 16 "yes," answer question 19.

17. Was Stoll, Nussbaum & Polakov APC harmed?

_____ Yes _____ No

If you answered question 17 "yes," then answer question 18. If you answered question 17 "no," answer question 19.

18. Was E. Timothy Fitzgibbons' conduct a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm?

_____ Yes _____ No

Answer question no. 19.

Please go to next page.

## AIDING AND ABETTING - CONVERSION - WILLIAM PARRISH

19. Did Stoll, Nussbaum & Polakov APC have a right to possess certain attorneys' fees and costs?

_____X_____ Yes _____ No

If you answered question 19 "yes," then answer question 20. If you answered question 19 "no," then answer question 28.

20. Did Michael Avenatti substantially interfere with Stoll, Nussbaum & Polakov APC's property by knowingly or intentionally preventing Stoll, Nussbaum & Polakov APC from having access to the attorneys' fees and costs?

_____X_____ Yes _____ No

If you answered question 20 "yes," then answer question 21. If you answered question 20 "no," then answer question 28.

21. Did Stoll, Nussbaum & Polakov APC consent?

_____ Yes ___X___ No

If you answered question 21 "no," then answer question 22. If you answered question 21 "yes," answer question 28.

22. Was Stoll, Nussbaum & Polakov APC harmed?

___X___ Yes _____ No

If you answered question 22 "yes," then answer question 23. If you answered question 22 "no," answer question 28.

23. Was Michael Avenatti's conduct a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm?

___X___ Yes _____ No

If you answered question 23 "yes," then answer question 24. If you answered question 23 "no," answer question 28.

Please go to next page.

24. Did William Parrish know that conversion was going to be committed by Michael Avenatti against Stoll, Nussbaum & Polakov APC?

_____ Yes ___X___ No

If you answered question 24 "yes," then answer question 25. If you answered question 24 "no," answer question 28.

25. Did William Parrish give substantial assistance or encouragement to Michael Avenatti?

_____ Yes _____ No

If you answered question 25 "yes," then answer question 26. If you answered question 25 "no," then answer question 28.

26. Did William Parrish have the specific intent to facilitate the conversion?

_____ Yes _____ No

If you answered question 26 "yes," then answer question 27. If you answered question 26 "no," then answer question 28.

27. Was William Parrish's conduct a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC?

_____ Yes _____ No

Answer question 28.

Please go to next page.

## AIDING AND ABETTING - CONVERSION - E. TIMOTHY FITZGIBBONS

28. Did Stoll, Nussbaum & Polakov APC have a right to possess certain attorneys' fees and costs?

_____X_____ Yes _____ No

If you answered question 28 "yes," then answer question 29. If you answered question 28 "no," then answer question 37.

29. Did Michael Avenatti substantially interfere with Stoll, Nussbaum & Polakov APC's property by knowingly or intentionally preventing Stoll, Nussbaum & Polakov APC from having access to the attorneys' fees and costs?

_____X_____ Yes _____ No

If you answered question 29 "yes," then answer question 30. If you answered question 29 "no," then answer question 37.

30. Did Stoll, Nussbaum & Polakov APC consent?

_____ Yes ____X____ No

If you answered question 30 "no," then answer question 31. If you answered question 30 "yes," answer question 37.

31. Was Stoll, Nussbaum & Polakov APC harmed?

_____X_____ Yes _____ No

If you answered question 31 "yes," then answer question 32. If you answered question 31 "no," answer question 37.

32. Was Michael Avenatti's conduct a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm?

_____X_____ Yes _____ No

If you answered question 32 "yes," then answer question 33. If you answered question 32 "no," answer question 37.

33. Did E. Timothy Fitzgibbons know that conversion was going to be committed by Michael Avenatti against Stoll, Nussbaum & Polakov APC?

_____ Yes ____X____ No

Please go to next page.

If you answered question 33 "yes," then answer question 34.  If you answered question 33 "no," answer question 37.

34.  Did E. Timothy Fitzgibbons give substantial assistance or encouragement to Michael Avenatti?

———— Yes _____ No

If you answered question 34 "yes," then answer question 35.  If you answered question 34 "no," then answer question 37.

35.  Did E. Timothy Fitzgibbons have the specific intent to facilitate the conversion?

———— Yes _____ No

If you answered question 35 "yes," then answer question 36.  If you answered question 35 "no," then answer question 37.

36.  Was E. Timothy Fitzgibbons' conduct a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC?

———— Yes _____ No

Answer question 37.

Please go to the next page.

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY - WILLIAM PARRISH

37. Did Stoll, Nussbaum & Polakov APC have a right to possess certain attorneys' fees and costs?

_____X_____ Yes _____ No

If you answered question 37 "yes," then answer question 38. If you answered question 37 "no," then answer question 45.

38. Did Michael Avenatti breach the duty of an attorney by failing to pay Stoll, Nussbaum & Polakov APC the disputed attorneys' fees and costs?

_____X_____ Yes _____ No

If you answered question 38 "yes," then answer question 39. If you answered question 38 "no," answer question 45.

39. Was Stoll, Nussbaum & Polakov APC harmed?

_____X_____ Yes _____ No

If you answered question 39 "yes," then answer question 40. If you answered question 39 "no," answer question 45.

40. Was Michael Avenatti's conduct a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm?

_____X_____ Yes _____ No

If you answered question 40 "yes," then answer question 41. If you answered question 40 "no," answer question 45.

41. Did William Parrish know that a breach of fiduciary duty owed to co-counsel was going to be committed by Michael Avenatti against Stoll, Nussbaum & Polakov APC?

_____ Yes _____X_____ No

If you answered question 41 "yes", then answer question 42. If you answered question 41 "no," then answer question 45.

42. Did William Parrish give substantial assistance or encouragement to Michael Avenatti?

_____ Yes _____ No

If you answered question 42 "yes," then answer question 43. If you answered question 42 "no," answer question 45.

Please go to next page.

43.  Did William Parrish have the specific intent to facilitate the breach of fiduciary duty owed to co-counsel?

_____ Yes _____ No

If you answered question 43 "yes," then answer question 44.  If you answered question 43 "no," then answer question 45.

44.  Was William Parrish's conduct a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC?

_____ Yes _____ No

Answer question 45.

Please go to the next page.

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY -

## E. TIMOTHY FITZGIBBONS

45. Did Stoll, Nussbaum & Polakov APC have a right to possess certain attorneys' fees and costs?

_____X_____ Yes _____ No

If you answered question 45 "yes," then answer question 46. If you answered question 45 "no," then answer question 53.

46. Did Michael Avenatti breach the duty of an attorney by failing to pay Stoll, Nussbaum & Polakov APC the disputed attorneys' fees and costs?

_____X_____ Yes _____ No

If you answered question 46 "yes," then answer question 47. If you answered question 46 "no," answer question 53.

47. Was Stoll, Nussbaum & Polakov APC harmed?

_____X_____ Yes _____ No

If you answered question 47 "yes," then answer question 48. If you answered question 47 "no," answer question 53.

48. Was Michael Avenatti's conduct a substantial factor in causing Stoll, Nussbaum & Polakov APC's harm?

_____X_____ Yes _____ No

If you answered question 48 "yes," then answer question 49. If you answered question 48 "no," answer question 53.

49. Did E. Timothy Fitzgibbons know that a breach of fiduciary duty owed to co-counsel was going to be committed by Michael Avenatti against Stoll, Nussbaum & Polakov APC?

_____ Yes _____X_____ No

If you answered question 49 "yes", then answer question 50. If you answered question 49 "no," then answer question 53.

Please go to next page.

50. Did E. Timothy Fitzgibbons give substantial assistance or encouragement to Michael Avenatti?                         ———— Yes _____ No

If you answered question 50 "yes," then answer question 51.  If you answered question 50 "no," then answer question 53.

51. Did E. Timothy Fitzgibbons have the specific intent to facilitate the breach of fiduciary duty owed to co-counsel?

                    ———— Yes _____ No

If you answered question 51 "yes," then answer question 52.  If you answered question 51 "no," then answer question 53.

52. Was E. Timothy Fitzgibbons' conduct a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC?

                    ———— Yes _____ No

Answer question 53.

Please go to next page.

## VICARIOUS LIABILITY FOR CONVERSION – WILLIAM PARRISH

53. Did Michael Avenatti commit conversion of certain attorneys' fees and costs from Stoll, Nussbaum & Polakov APC?

        **X**     Yes        No

If you answered question 53 "yes," answer question 54. If you answered question 53 "no," answer question 57.

54. Was Michael Avenatti's conduct a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC?

        **X**     Yes        No

If you answered "yes" to question 54, answer question 55. If you answered "no" to question 54, answer question 57.

55. Was Michael Avenatti acting as William Parrish's lawyer?

        **X**     Yes        No

If you answered "yes" to question 55, answer question 56. If you answered "no" to question 55, answer question 57.

56. Was Michael Avenatti acting within the scope of his fiduciary duties as a lawyer to William Parrish when Michael Avenatti converted certain attorneys' fees and costs from Stoll, Nussbaum & Polakov APC?

             Yes   **X**   No

Answer question 57.

Please go to next page.

## VICARIOUS LIABILITY FOR BREACH OF FIDUCIARY DUTY – WILLIAM PARRISH

57. Did Michael Avenatti breach his fiduciary duties to Stoll, Nussbaum & Polakov APC by failing to pay Stoll, Nussbaum & Polakov APC the disputed attorneys' fees and costs?

___X___ Yes _____ No

If you answered question 57 "yes," answer question 58.  If you answered question 57 "no," answer question 61.

58. Was Michael Avenatti's conduct a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC?

___X___ Yes _____ No

If you answered "yes" to question 58, answer question 59.  If you answered "no" to question 58, answer question 61.

59. Was Michael Avenatti acting as William Parrish's lawyer?

___X___ Yes _____ No

If you answered "yes" to question 59, answer question 60.  If you answered "no" to question 59, answer question 61.

60. Was Michael Avenatti acting within the scope of his fiduciary duties as a lawyer to William Parrish when Michael Avenatti breached his fiduciary duties to Stoll, Nussbaum & Polakov APC?

_____ Yes ___X___ No

Answer question 61.

Please go to next page.

## VICARIOUS LIABILITY FOR CONVERSION – E. TIMOTHY FITZGIBBONS

61. Did Michael Avenatti commit conversion of certain attorneys' fees and costs from Stoll, Nussbaum & Polakov APC?

      $\boxed{X}$ Yes _____ No

If you answered "yes" to question 61, answer question 62. If you answered "no" to question 61, answer question 65.

62. Was Michael Avenatti's conduct a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC?

      $\boxed{X}$ Yes _____ No

If you answered "yes" to question 62, answer question 63. If you answered "no" to question 62, answer question 65.

63. Was Michael Avenatti acting as E. Timothy Fitzgibbons' lawyer?

      $\boxed{X}$ Yes _____ No

If you answered "yes" to question 63, answer question 64. If you answered "no" to question 63, answer question 65.

64. Was Michael Avenatti acting within the scope of his fiduciary duties as a lawyer to E. Timothy Fitzgibbons' when Michael Avenatti converted certain attorneys' fees and costs from Stoll, Nussbaum & Polakov APC?

      _____ Yes $\boxed{X}$ No

Answer question 65.

Please go to next page.

16

## VICARIOUS LIABILITY FOR BREACH OF FIDUCIARY DUTY –

## E. TIMOTHY FITZGIBBONS

65. Did Michael Avenatti breach his fiduciary duties to Stoll, Nussbaum & Polakov APC by failing to pay Stoll, Nussbaum & Polakov APC the disputed attorneys' fees and costs?

      __X__ Yes _____ No

If you answered "yes" to question 65, answer question 66. If you answered "no" to question 65, answer question 69.

66. Was Michael Avenatti's conduct a substantial factor in causing harm to Stoll, Nussbaum & Polakov APC?

      __X__ Yes _____ No

If you answered "yes" to question 66, answer question 67. If you answered "no" to question 66, answer question 69.

67. Was Michael Avenatti acting as E. Timothy Fitzgibbons' lawyer?

      __X__ Yes _____ No

If you answered "yes" to question 67, answer question 68. If you answered "no" to question 67, answer question 69.

68. Was Michael Avenatti acting within the scope of his fiduciary duties as a lawyer to E. Timothy Fitzgibbons when Michael Avenatti breached his fiduciary duties to Stoll, Nussbaum & Polakov APC?

      _____ Yes __X__ No

Answer question 69.

Please go to next page.

**DAMAGES**

 69. If you did not answer or if you answered "No" to all of the following questions: Question Nos. 8, 13, 18, 27, 36, 44, 52, 56, 60, 64, and 68, stop here, answer no further questions, and have the presiding juror sign and date this form.

 If you answered "Yes" to any of the following questions: Question Nos. 8, 13, 18, 27, 36, 44, 52, 56, 60, 64, or 68 what are Stoll, Nussbaum & Polakov APC's damages?

TOTAL  $ _____

70. What is the date the harm was incurred by Stoll, Nussbaum & Polakov APC?

_____, 20___.


If you found damages, answer question 71.

Please go to next page.

## PUNITIVE DAMAGES

71.  Has Stoll, Nussbaum & Polakov APC proved by clear and convincing evidence that William Parrish engaged in conversion, aiding and abetting conversion and/or aiding and abetting breach of fiduciary duty with malice, oppression or fraud or his conduct was despicable?

_____ Yes _____ No

Answer question 72.

72.  Has Stoll, Nussbaum & Polakov APC proved by clear and convincing evidence that E. Timothy Fitzgibbons engaged in conversion, aiding and abetting conversion and/or aiding and abetting breach of fiduciary duty with malice, oppression or fraud or his conduct was despicable?

_____ Yes _____ No

If your answer to question 72 is "yes" or "no," stop here, and have the presiding juror sign and date this form.

Signed: _____

Presiding Juror: _____Darcy Alsop_____

Dated: __June 22, 2022__

After this verdict form has been signed, notify, the courtroom attendant that you are ready to present your verdict in the courtroom.

PROOF OF SERVICE
CCP §1013(a)(3)

I, the undersigned, certify and declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action. My business address is 2030 Main Street, Suite 1600, Irvine, California, 92614.

On August 30, 2022,  I served the foregoing document(s) described as follows: **[PROPOSED] JUDGMENT AFTER TRIAL BY JURY AS TO CROSS-DEFENDANTS WILLIAM PARRISH AND E. TIMOTHY FITZGIBBONS AND JUDGMENT ON THE DEFAULT OF CROSS-DEFENDANTS MICHAEL J. AVENATTI AND AVENATTI & ASSOCIATES, INC. ON STOLL, NUSSBAUM & POLAKOV APC'S SECOND AMENDED COMPLAINT**; on all interested parties as follows:

**\*\*Please see attached service list\*\***

(x)     By placing a true copy thereof enclosed in a sealed envelope, with postage thereon fully prepaid via first class mail, at Irvine, California, as addressed above.

( )     By personal service, I caused such envelope to be delivered by hand at the addressee(s) stated above.

(x)     By Electronic Transmission, I caused the above-referenced document(s) to be emailed to the above addressee(s) pursuant to California Rule of Court, Emergency Rule 12, effective April 17, 2020, during the Coronavirus (COVID-19) pandemic, this office will use electronic mail for service purposes.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under the practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on August 30, 2022, Irvine, California.

(X) (State)     I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

( ) (Federal)     I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.

_____
Kerri Kirby

**SERVICE LIST**

Christopher P. Wesierski, Esq.
Christian C. H. Counts, Esq.
Wesierski & Zurek, LLP
29 Orchard Road
Lake Forest, California 92630
Tel: 949.975.1000
cwesierski@wzllp.com
ccounts@wzllp.com

A. Barry Cappello, Esq.
Lawrence Conlan, Esq.
Cappello & Noel
831 State Street
Santa Barbara, CA 93101-3227
abc@cappellonoel.com
lconlan@cappellonoel.com

Michael Avenatti, Esq.
c/o Mr. Jay Manheimer
229 Dimmick Avenue
Venice, California 90291
Tel: 310.365.5650
jaymanheimer@gmail.com

Emma Hernandez, Paralegal
workingwitheh@gmail.com

Michael Avenatti, #86743-054                Via U.S. First Class Mail Only
FCI TERMINAL ISLAND
P.O. BOX 269
San Pedro, California 90733

Avenatti & Associates                       Via U.S. First Class Mail Only
c/o Michael Avenatti, #86743-054
FCI TERMINAL ISLAND
P.O. BOX 269
San Pedro, California 90733

Lisa Store Avenatti                         Via U.S. First Class Mail Only
1257 Elements Way
Irvine, California 92612

Lisa Storie-Avenatti                        Via U.S. First Class Mail Only
3419 Via Lido, Box 610
Newport Beach, California 92663