'FILED

2022 SEP 15  AM 11: 23

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____JB

Filippo Marchino, Esq. (SBN 256011)
FM@XLAWX.com
Carlos X. Colorado, Esq. (SBN 231031)
CC@XLAWX.com
Thomas E. Gray, Esq. (SBN 299898)
TG@XLAWX.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Petitioner Alexis Gardner

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant | Case No. 8:19-cr-00061-JVS-1<br><br>**PETITIONER ALEXIS GARDNER'S VERIFIED PETITION**<br><br>Honorable James V. Selna |

---

**INTRODUCTION**

1.     Petitioner Alexis Gardner ("Gardner"), identified in the Indictment [Dkt. No. 16] and Application for Preliminary Order of Forfeiture [Dkt. No. 974.] as Client 2, petitions the court for a hearing to adjudicate her legal interest in the Honda Aircraft a Honda Aircraft Co. LLC HA-420 jet, serial number 42000029, and with tail number N227WP, together with its tools and appurtenances, including any and all logbooks (hard copy and/or electronic) documenting engine ad airframe maintenance, flights, number of hours flown, number of landings, and types and frequency of instrument approaches made by the aircraft, and including any and all services, service contracts and warranty contracts for the benefit of the same (hereinafter the "Aircraft").

2.     This petition is brought pursuant to 28 U.S.C. § 853(n), Rule 32.2(c) of the Federal Rules of Criminal Procedure, and the Court's Preliminary Order of Forfeiture.  [Dkt. No. 975.]

**FACTUAL ALLEGATIONS**

3.     On or about April 14, 2016 William Parrish and Michael Avenatti ("Avenatti") decided to jointly purchase a private jet and created Passport 420, LLC ("Passport 420"), a Delaware Limited Liability Company, as entity to own the Aircraft.  Avenatti was selected as the manager of Passport 420.

4.     At all relevant times herein, Avenatti was an attorney and was the managing partner of the law firm Eagan Avenatti, LLP ("EA").

5.     On or about January 7, 2017 Gardner, one of Avenatti and EA's clients, entered into a confidential settlement agreement with another individual (the "Individual"), designated as Individual 1 in the Indictment.[1]

---

[1] To be clear, neither the identity of the Individual, nor the nature of the settlement agreement have any relevance to Gardner's claims here.  Neither the Individual nor
(footnote continued)

**PETITIONER ALEXIS GARDNER'S VERIFIED PETITION**

6.     Neither Avenatti nor EA gave Gardner a copy of the actual settlement agreement.  Instead, they falsely represented to Gardner that the Individual would make two separate transactions in fulfillment of the settlement agreement. First, the Individual would make approximately 96 equal monthly payments to Gardner over the course of the next eight years. Second, at some point within the first year, the Individual would make a lump-sum payment, the entirety of which would be used to pay EA's attorney fees and costs.

7.     However, under the terms of the <u>actual</u> settlement agreement, this Individual was required to make an initial payment of $2,750,000 (two million seven hundred and fifiy thousand dollars) on or about January 28, 2017 to Gardner with a subsequent payment of $250,000 (two hundred and fifty thousand dollars) at a later date, set for the fall of 2020.

8.     On or about January 25, 2017, unbeknownst to Gardner, the Individual made the first single initial $2,750,000 settlement payment to an EA Attorney Client Trust Account, ending in 8671, to be held in trust for Gardner.

9.     EA and Avenatti concealed and failed to disclose to Gardner that EA had received this initial $2,750,000 settlement payment.  Additionally, neither Avenatti nor EA ever transferred any of Gardner's initial settlement payment to her, nor did they obtain her permission to divert the funds anywhere else.

10.     On or about January 26, 2017, Avenatti, orchestrated $2,500,000 of Gardner's funds to be transferred from EA's trust account to Honda Aircraft Company, LLC for the benefit of Passport 420. At the time of this transfer, Avenatti was running EA as its manager, and was running Passport 420 as its manager, and sent the funds so that Passport 420 could purchase the Aircraft.  According to the invoice from Honda Aircraft Company, LLC, the total price paid for the Aircraft was $4,363,605 (four million three hundred sixty three thousand six hundred and

---

the Individual's counsel were aware of or participated in Avenatti's wrongdoing.

**PETITIONER ALEXIS GARDNER'S VERIFIED PETITION**

five dollars).

11.   Avenatti, as manager of EA, also moved the remaining $250,000 of the settlement payment out of the trust account and into another EA account, before it was moved to an Avenatti and Associates, APC, ("AA") account.

12.   In furtherance of his embezzlement scheme, between March 2017 and June 2018 Avenatti caused approximately 11 payments to be deposited into Gardner's account, which he represented to Gardner as being the monthly settlement payments from the Individual.

13.   These payments were not made using money from the settlement payment intended for Gardner, however.  For example, some of the payments were made using money from Global Baristas US LLC and/or its owner Global Baristas, LLC, including credit card receipts from Tully's stores.  From June 2018 until March 2019, Avenatti stopped making these payments and instead falsely represented to Gardner that Avenatti was working to obtain the missing monthly settlement payments.  To accomplish this, Avenatti spoke to Gardner by phone, as he had on a number of occasions previously, in order to convince her that she was in fact supposed to receive monthly periodic payments.

14.   As was discussed above, Gardner never received any money from the $2,750,000 settlement payment that was supposed to be made to her because it was instead taken by Avenatti, with $2,500,000 spent by Passport 420 in the course of purchasing its jet and the other $250,000 taken by Avenatti, AA and/or EA and used for presently unknown purposes, but possibly for the further benefit of Passport 420 and the Aircraft.

15.   The periodic payments Gardner received from Avenatti should not be treated as an offset to the full amount owed because the money did not come from her settlement funds and, even if it did, it did not come back from Passport 420, the company that benefitted from the majority of her funds.

16.   Further, because of the severe ethical misconduct and breach of fiduciary

4

**PETITIONER ALEXIS GARDNER'S VERIFIED PETITION**

duty by Avenatti and EA, Gardner is entitled to one hundred percent of the settlement funds without any contingent fee deduction.

17.   In addition, Gardner asserts that she is entitled to prejudgment interest at the maximum rate permissible by law.

18.   Separate and apart from the severe ethical misconduct and breach of fiduciary duty by Avenatti and EA, *all* of the settlement money belonged to Gardner at the time it was removed from the trust account, including the $2.5 million dollar payment to Honda Aircraft LLC for the benefit of Passport 420 LLC.   That is because Avenatti and EA could not immediately transfer *any* settlement funds out of Gardner's client trust account regardless of whether EA believed it was entitled to fees from the settlement because the fees had not "become fixed."

19.   In California, there are three basic methods that will result in fees becoming fixed:

- the *client expressly approves the attorney's interest* in a certain amount of the trust funds (e.g., by expressly approving a billing or an accounting of the funds setting forth the amount of fees earned by the attorney); *or*
- the *attorney and client agree* to the amount of the attorney's interest following a dispute; *or*
- the amount of the attorney's interest has been set forth in a *civil judgment, court order or binding arbitration award.*

20.   Here, the first method would have been applicable, and Avenatti and EA were therefore required to obtain Gardner's approval before removing <u>any</u> fees and costs that they claimed.

21.   However Gardner did not approve of Avenatti or EA's removal of any fees (and obviously could not have done so because Avenatti and EA failed to inform her of the receipt of the funds and provide her with an accounting, and instead removed money from her trust account immediately after receiving the funds).

5

**PETITIONER ALEXIS GARDNER'S VERIFIED PETITION**

22. Because Gardner's settlement money was embezzled by Avenatti and EA, a constructive trust has been created with regards to the Aircraft (and any proceeds from the sale of it). Therefore, Gardner has equitable title to the Aircraft and any proceeds from the sale of it, in the amount of $2,500,000 plus applicable interest.

23. Gardner's interest in the Aircraft should be based and calculated on the funds that were usurped from her and used for the benefit of Passport 420, and not on a percentage based on the price paid by Passport 420 for the Aircraft. Additionally, interest on the amount of money that was taken from her to purchase the plane should be accounted for as well.

24. While Parrish, Spring Creek Research, LLC, Avenatti, AA, EA and any and all other parties with a claimed interest in Passport 420, or the Airplane, knowingly and voluntarily assumed a risk in the purchase of the Airplane, Gardner did not. Gardner's funds were involuntarily taken from her. Hence, Gardner never assumed any risk of loss, or risk of diminution of value of the Aircraft, when her funds were taken, and accordingly, should not lose any of the funds by virtue of the natural diminution of value of the asset that would be otherwise attributed to her if her interest in the Airplane was calculated based on the purchase price of the same.

25. On information and belief, based on the price that similar used jets, in the same condition[2], sell for and the amount of Gardner's money that was used by Passport 420 to purchase the Aircraft plus interest on that money (approximately $3,937,500 (three million nine hundred thirty seven thousand five hundred dollars) calculated by using the principal of $2.5 million plus simple interest at 10% per year since January 2017 to today), the current value of the Aircraft is less than the amount of money Gardner is owed and she should be awarded a 100% ownership interest in

---

[2] On information and belief, the Aircraft has been maintained by the Government but has not been flown since it was seized in 2019. Hence, the value would be significantly less than a comparable model year Aircraft that was routinely flown, used and maintained.

**PETITIONER ALEXIS GARDNER'S VERIFIED PETITION**

1    the Aircraft or all proceeds from its sale.

2        26.    Finally, the provenance of the periodic payments Gardner received is

3    unknown and should not be considered in calculating her ownership interest in the

4    Aircraft.

5

6    DATED: September 15, 2022          **THE X-LAW GROUP, P.C.**

7

8                                      By:_____

9                                         FILIPPO MARCHINO, ESQ.,
                                          Attorneys for Petitioner Alexis Gardner

**PETITIONER ALEXIS GARDNER'S VERIFIED PETITION**



## VERIFICATION

I attest and declare under penalty of perjury that my claim is not frivolous and the information provided in support of my claim is true and correct to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing and attached is true and correct. Executed on September 13, 2022 at South Pasadena, California.

By: _____
ALEXE GARDNER

1

**PROOF OF SERVICE**

2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

3

4   At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 625 Fair Oaks Avenue, Suite 390, South Pasadena, CA 91030.

5

6   On September 15, 2022, I served the following document(s) described as **PETITIONER ALEXIS GARDNER'S VERIFIED PETITION** on the interested parties in this action as follows:

7

8   BRETT A. SAGEL
Assistant United States Attorney
Major Frauds Section
411 West Fourth Street Suite 8000
Santa Ana, CA 92701
Telephone: 714-338-3598
Faximile: 714-338-3708
Email: brett.sagel@usdoj.gov

DANIEL G. BOYLE
Assistant United States Attorney
Asset Forfeiture Section
312 North Spring Street, 14th Floor
Los Angeles, CA 90012
Telephone: 213-894-2426|
Facsimile: 213-894-0142
E-Mail: daniel.boyle2@usdoj.gov

9

10

11

12   RANEE KATZENSTEIN
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

13   Major Frauds Section

14   312 North Spring Street 11th Floor

15   Los Angeles, CA 9001

Telephone: 213-894-2432

16   Faximile: 213-894-0141
Email: ranee.katzenstein@usdoj.gov

17

Attorneys for Plaintiff
United States of America

18

19

20   **[ X ] BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons identified in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with my firm's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

21

22

23

24   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

25

26   Executed on September 15, 2022, at South Pasadena, California.

27   *Tom Cassaro*
_____
Declarant – Tom Cassaro

28

9

**PETITIONER ALEXIS GARDNER'S VERIFIED PETITION**