# SENTENCING EXHIBIT 1

CERTIFIED COPY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES - CENTRAL DISTRICT

DEPT 44                          JUDGE:  EDWARD B. MORETON, JR.

JASON FRANK LAW PLC,                )
Professional law corporation,       )
                                    )
          Plaintiff                 )
                                    )
     Vs.                            )        Case No: BC706555
                                    )
MICHAEL J. AVENATTI,                )
An individual,                      )
                                    )
          Defendant.                )
                                    )

JUDGMENT DEBTOR EXAMINATION

LOS ANGELES, CALIFORNIA

FRIDAY, MARCH 15, 2019



REPORTED BY:                    600 SOUTH LAKE AVENUE, SUITE 102
WINIFRED MCCRAY-MOODY                    PASADENA, CA 91106
CSR NO. 12747                                 626/792-6777
ANN BONNETTE                          FAX 626/792-8760
CSR NO. 6108          E-Mail: Production@ huntingtoncr.com
                      Website: http://www.huntingtoncr.com

USAO_01142646

JUDGMENT DEBTOR EXAMINATION, MARCH 15, 2019

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2             COUNTY OF LOS ANGELES - CENTRAL DISTRICT

 3    DEPT 44    JUDGE:  EDWARD B. MORETON, JR.

 4       JASON FRANK LAW PLC,           )
         Professional law corporation, )
 5                                      )
                             Plaintiff  )
 6                                      )
            Vs.                         ) Case No: BC706555
 7                                      )
         MICHAEL J. AVENATTI,           )
 8       An individual,                 )
                                        )
 9                           Defendant. )
         _____)
10

11

12

13              JUDGMENT DEBTOR EXAMINATION,

14       taken on behalf of the Applicant, at the Stanley Mosk

15       Courthouse, 111 North Hill Street, Los Angeles,

16       California, 90012, in Department 44, commencing at 11:57

17       a.m., Friday, March 15, 2019, before Winifred

18       McCray-Moody, C.S.R. No. 12747, (Morning Session), and

19       Ann Bonnette, C.S.R. No. 6108, (Afternoon Session).

20

21

22

23

24

25
```

USAO_01142647

JUDGMENT DEBTOR EXAMINATION, MARCH 15, 2019

```
1        APPEARANCES:

2        For the Applicant:

3        LAW OFFICES OF FRANK SIMS & STOLPER, LLP

4        BY:  ANDREW D. STOPLER, ESQ.

5        19800 MacArthur Boulevard

6        Suite 855

7        Irvine, CA 92612

8        (949) 201-2400

9        astolper@lawfss.com

10

11       For the Defendant:

12       LAW OFFICES OF SHULMAN HODGES & BASTIAN, LLP

13       BY:  RONALD S. HODGES, ESQ.

14       100 Spectrum Center Drive

15       Suite 600

16       Irvine, CA 92618

17       (949) 340-3400

18       rhodges@shbllp.com

19

20

21

22

23

24

25
```

USAO_01142648

JUDGMENT DEBTOR EXAMINATION, MARCH 15, 2019

```
 1                    I N D E X

 2    WITNESS:            EXAMINATION        PAGE

 3    MICHAEL J. AVENATTI   BY MR. STOLPER    4, 6, 7, 9, 10

 4                                           13, 14, 15, 16

 5                                           26, 28, 29, 31

 6                                           35, 38, 44, 45

 7                                           46, 47, 48, 49

 8                                           50, 57, 58, 59

 9                                           60, 62, 64, 67,

10                                           68

11

12

13                    E X H I B I T S

14                       None.

15

16

17           INSTRUCTIONS NOT TO ANSWER

18           PAGE                LINE

19           6                   9
             9                   4
20           10                  11
             15                  8
21           16                  4
             18                  1
22           19                  8
             22                  25
23           46                  22
             47                  1
24

25
```

USAO_01142649

JUDGMENT DEBTOR EXAMINATION, MARCH 15, 2019

```
 1          LOS ANGELES, CALIFORNIA, FRIDAY, MARCH 15, 2019

 2                        11:19 A.M.

 3                        EXAMINATION

 4     BY MR. STOLPER:

 5     Q.    MR. AVANATTI, DO YOU UNDERSTAND YOU'RE UNDER

 6     OATH?

 7     A.    I'M SORRY, SIR?

 8     Q.    DO YOU UNDERSTAND YOU'RE UNDER OATH?

 9     A.    YES.

10     Q.    CAN YOU PLEASE STATE YOUR FULL NAME, PLEASE?

11     A.    MICHAEL JOHN AVANATTI.

12     Q.    WHAT IS YOUR CURRENT RESIDENTIAL ADDRESS?

13     A.    10000 SANTA MONICA BOULEVARD, NUMBER 2107, L.A.,

14     90067.

15     Q.    DO YOU OWN, OR DO YOU RENT?

16     A.    I RENT.

17     Q.    WHAT IS THE NAME THAT THE LEASE IS HELD IN?

18     A.    I THINK IT'S MY NAME, INDIVIDUAL.

19     Q.    WHAT'S THE TERM OF YOUR LEASE?

20     A.    I DON'T REMEMBER.

21     Q.    HOW LONG HAVE YOU LIVED THERE?

22     A.    AT THAT ADDRESS, ABOUT -- I THINK THREE MONTHS.

23     Q.    HOW LONG IN THAT BUILDING?

24     A.    I'VE HAD A UNIT IN THAT BUILDING SINCE MARCH OF

25     2017.
```

USAO_01142650

JUDGMENT DEBTOR EXAMINATION, MARCH 15, 2019

1   PERFORMED?

2       A    SOME LEGAL WORK, SOME POLITICAL WORK, SOME OTHER

3   WORK.

4       Q    HOW LONG HAS MS. SCOTT WORKED FOR YOU DIRECTLY

5   OR INDIRECTLY?

6       A    I DON'T KNOW.  EIGHTEEN MONTHS, MAYBE.

7       Q    WHAT IS MS. SCOTT'S ROLE IN DESERT HARVEST, IF

8   ANY?

9       A    NONE.

10      Q    TO YOUR KNOWLEDGE, DOES MS. SCOTT HAVE ANY

11  DIRECT OR INDIRECT INTEREST IN DESERT HARVEST?

12      A    SHE HAS NONE.

13      Q    AS I UNDERSTAND IT, YOUR WORK FOR DESERT HARVEST

14  WAS THAT OF AN ATTORNEY?  IS THAT YOUR TESTIMONY?

15      A    ATTORNEY AND ADVISOR.

16      Q    ATTORNEY AND ADVISOR.

17           BEYOND BEING AN ATTORNEY AND ADVISOR, DID YOU

18  RECEIVE ANY EQUITY INTEREST IN DESERT HARVEST, IN ANY WAY,

19  SHAPE, OR FORM?

20      A    NO.

21      Q    WHAT IS AUGUSTUS LLP?

22      A    IT'S A LIMITED LIABILITY PARTNER.

23      Q    WHO OWNS AUGUSTUS LLP?

24      A    I'M NOT AT LIBERTY TO DISCLOSE THAT.  IT'S NOT

25  ME.

USAO_01142742

JUDGMENT DEBTOR EXAMINATION, MARCH 15, 2019

| | | |
|---|---|---|
| 1 | Q | DO YOU HAVE ANY DIRECT OR INDIRECT INTEREST IN |
| 2 | | AUGUSTUS, LLP. |
| 3 | A | NO. |
| 4 | Q | WHY ARE YOU NOT AT LIBERTY TO DISCLOSE WHO OWNS |
| 5 | | IT? |
| 6 | A | BECAUSE IT WAS ESTABLISHED FOR A CLIENT. |
| 7 | Q | WHEN WAS IT ESTABLISHED? |
| 8 | A | I DON'T REMEMBER. |
| 9 | Q | WAS IT ESTABLISHED BY YOU INDIVIDUALLY OR BY ONE |
| 10 | | OF YOUR LAW FIRMS FOR A CLIENT? |
| 11 | A | I DON'T REMEMBER. |
| 12 | Q | TO YOUR KNOWLEDGE, DOES AUGUSTUS LLP HAVE ANY |
| 13 | | ASSETS? |
| 14 | | MR. HODGES:  OBJECT TO THE EXTENT THAT CALLS FOR |
| 15 | | ATTORNEY-CLIENT PRIVILEGE. |
| 16 | | YOU CAN ANSWER THAT "YES" OR "NO" AS TO WHETHER |
| 17 | | YOU KNOW. |
| 18 | | THE WITNESS:  I DON'T KNOW HOW I WOULD ANSWER |
| 19 | | THAT WITHOUT RELYING ON THE INFORMATION FROM MY CLIENT. |
| 20 | | BY MR. STOLPER: |
| 21 | Q | WHETHER OR NOT AUGUSTUS HAS ASSETS IS |
| 22 | | ATTORNEY-CLIENT PRIVILEGE? |
| 23 | | MR. HODGES:  OF COURSE. |
| 24 | | THE WITNESS:  SURE. |
| 25 | | |

USAO_01142743

JUDGMENT DEBTOR EXAMINATION, MARCH 15, 2019

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2              COUNTY OF LOS ANGELES - CENTRAL DISTRICT

 3

 4    JASON FRANK LAW PLC,              )
      PROFESSIONAL LAW CORPORATION      )
 5                                      )
                    PLAINTIFF,          )
 6                                      )
      VS.                               )    CASE NO. BC706555
 7                                      )
      MICHAEL J. AVENATTI,              )
 8    AN INDIVIDUAL,                    )
                                        )
 9                  DEFENDANT.          )
      _____)
10

11

12

13         I, WINIFRED MCCRAY-MOODY, C.S.R. NO. 12747, DO

14    HEREBY CERTIFY THAT THE FOREGOING PAGES 1-72, INCLUSIVE,

15    COMPRISE A FULL, TRUE, AND CORRECT COMPUTER-AIDED

16    TRANSCRIPT OF THE PROCEEDINGS TAKE IN THE ABOVE-ENTITLED

17    MATTER ON MARCH 15, 2019.

18         DATED THIS 29TH DAY OF MARCH, 2019.

19

20

21

22                   Winifred McCray-Moody
                     WINIFRED MCCRAY-MOODY
23                   C.S.R. NO. 12747

24

25
```

USAO_01142822

JUDGMENT DEBTOR EXAMINATION, MARCH 15, 2019

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2          COUNTY OF LOS ANGELES - CENTRAL DISTRICT

3

4   JASON FRANK LAW PLC,              )
    PROFESSIONAL LAW CORPORATION      )
5                                     )
             PLAINTIFF,               )
6                                     )
    VS.                               )   CASE NO. BC706555
7                                     )
    MICHAEL J. AVENATTI,              )
8   AN INDIVIDUAL,                    )
                                      )
9            DEFENDANT.               )
    _____)

10

11

12

13       I, ANN BONNETTE, CSR NO. 6108, DO HEREBY CERTIFY

14  THAT THE FOREGOING PAGES 73-174, INCLUSIVE, COMPRISE A

15  FULL, TRUE, AND CORRECT COMPUTER-AIDED TRANSCRIPT OF THE

16  PROCEEDINGS TAKE IN THE ABOVE-ENTITLED MATTER ON MARCH 15,

17  2019.

18       DATED THIS 29TH DAY OF MARCH, 2019.

19

20

21

22  _____
    ANN BONNETTE
23  CSR NO. 6108

24

25

Huntington Court Reporters & Transcription, Inc.        177
600 S. Lake Avenue, Suite 102, Pasadena, CA 91106 1-626-792-6777

USAO_01142823

# SENTENCING EXHIBIT 2



COURT REPORTING

REGAL

BIG ENOUGH TO DELIVER
SMALL ENOUGH TO CARE

In the Matter Of:

Michael Avenatti

vs

Lisa Storie-Avenatti

J.D.E - MICHAEL AVENATTI Vol I

January 30, 2019

Case No:  17D00-99-30

CERTIFIED COPY

USAO_00454907

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                 FOR THE COUNTY OF ORANGE

3

4    In re the Marriage of      )  Case No.: 17D00-99-30
                                 )
5    Petitioner:  MICHAEL AVENATTI    )
                                 )
6    and                         )
                                 )
7    Respondent:  LISA STORIE-AVENATTI )
     ─────────────────────────────)
8

9

10

11

12          JUDGMENT DEBTOR EXAMINATION OF:

13           MICHAEL AVENATTI, VOLUME I

14               JANUARY 30, 2019

15

16

17

18

19

20

21   Reported by:                 CERTIFIED COPY
     Miranda J. Gentry
22   CSR No. 14165

23

24

25



USAO_00454908

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                     FOR THE COUNTY OF ORANGE

 3

 4   In re the Marriage of        )  Case No.: 17D00-99-30
                                   )
 5   Petitioner:  MICHAEL AVENATTI )
                                   )
 6   and                           )
                                   )
 7   Respondent:  LISA STORIE-AVENATTI )
     _____)
 8

 9

10

11

12

13

14

15        The Judgment Debtor Examination of MICHAEL AVENATTI,

16   taken on behalf of the Judgment Creditor, before Miranda

17   Gentry, Certified Shorthand Reporter, for the State of

18   California, commencing at 1:17 p.m., Wednesday,

19   January 30, 2019, at 19762 MacArthur Boulevard, Suite 200,

20   Irvine, California.

21

22

23

24

25
```

                                                                2



USAO_00454909

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

```
 1    APPEARANCES:

 2

 3        For Petitioner:

 4            STEGMEIER, GELBART, SCHWARTZ & BENAVENTE, LLP
              By:  SAUL GELBART
 5            19762 MacArthur Boulevard, Suite 200
              Irvine, California 92612
 6            (949) 337-4050
              sgelbart@sgsblaw.com
 7

 8        For Respondent:

 9            PRESCOTT & PRESCOTT
              By:  MATTHEW S. DEARMEY
10            950 West Seventeenth Street, Suite A
              Santa Ana, California 92706
11            (714) 558-7744
              matt@dearmeylaw.com
12

13

14        Also Present:

15            Lisa Storie-Avenatti

16            Rod Collins

17

18

19

20

21

22

23

24

25
                                                                  3
```



USAO_00454910

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

```
 1                    I N D E X

 2   EXAMINATION:                              PAGE

 3    By Mr. DeArmey                             5

 4

 5                 E X H I B I T S

 6                   (NONE)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```
4



USAO_00454911

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

```
 1                    Irvine, California
 2           Wednesday, January 30, 2019; 1:17 p.m.
 3
 4                    MICHAEL AVENATTI,
 5  was called by and on behalf of the Judgment Creditor, and
 6  having been first duly sworn by the Court Clerk, was
 7  examined and testified as follows:
 8
 9                    EXAMINATION
10  BY MR. DEARMEY:
11     Q   Sir, you've been previously sworn at court on
12  January 23rd, 2019, for your Judgment Debtor Exam.
13         Do you recall that?
14     A   Yes.
15     Q   Okay.  You understand that you are still under
16  oath?
17     A   Yes.
18     Q   Please state your full name for the record.
19     A   Michael John Avenatti.
20     Q   Sir, before we get started with the questioning,
21  are you aware that the court issued a turnover order on
22  January 25th, 2019?
23     A   I'm aware of a turnover.  I don't recall the exact
24  date.
25     Q   So I have that turnover requires you to turn over
```

5



USAO_00454912

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

1      Q    Where is it?

2      A    It would be with the same files where the files

3  relating to the enterprise are located, to the best of my

4  knowledge.

5      Q    Who are the other partners besides you, yourself,

6  and Avenatti & Associates?

7      A    There are no other partners.

8      Q    So Eagan Avenatti is 100 percent owned by Michael

9  Avenatti, an individual, and Avenatti & Associates?

10     A    I think that's correct.

11     Q    When was the most recent time you saw the

12  partnership agreement?

13     A    I don't recall.

14     Q    Do you receive a K-1 from the partnership?

15     A    Yes.

16     Q    Who is the tax preparer for the K-1?

17     A    The last tax preparer that the company -- or that

18  the partnership had was Marjorie Hendricks.

19     Q    Where is she employed?

20     A    I don't remember the name of the firm.

21     Q    She's a CPA?

22     A    Yes.

23     Q    With respect to Ms. Hendricks, did she prepare

24  your personal returns as well as the returns of the Eagan

25  Avenatti partnership?

14



USAO_00454921

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

```
 1        A   I believe so.
 2        Q   Did she also prepare the returns for Avenatti &
 3   Associates?
 4        A   I don't remember.  She may have.
 5        Q   Can you spell Ms. Hendricks' name for us?
 6        A   I don't recall how to spell it.  I think it's
 7   -i-c-k-s, but it may be -i-x.
 8        Q   Would that be Hendricks Company on San Vicente
 9   Boulevard in Los Angeles?
10        A   She's operated at two different firms, so I'm not
11   certain which firm she's presently with.
12        Q   When was the most recent year you filed personal
13   tax returns?
14        A   '16.
15        Q   When was the most recent time Avenatti &
16   Associates filed returns?
17        A   I believe the same.
18        Q   And Eagan Avenatti, when did they most recently
19   file?
20        A   I believe the same.
21        Q   Are you in possession of copies of those returns?
22        A   No.
23        Q   Who would have possession of those returns?
24        A   I imagine Ms. Hendricks.
25        Q   Is she the one who prepared those returns?
```

15



USAO_00454922

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

1      A    I've already answered that.

2      Q    Is that yes?

3      A    No.  The answer is I've already answered that.

4      MR. GELBART:  Excuse me for a second.

5      THE WITNESS:  To the best of my knowledge.

6   BY MR. DEARMEY:

7      Q    Sir, with respect to our list there, Item

8   Number 2, does it exist?

9      A    It exists, but I don't have actual shares.

10     Q    Okay.  Is that investment in your name or somebody

11  else's name?

12     A    I don't recall.

13     Q    So for the record, we're talking about the hundred

14  percent of the shares owned by you in Seek Thermal, Inc.,

15  formerly Tyrian, T-y-r-i-a-n, Systems, Inc.

16          At the time you made the investment, was it in

17  Tyrian Systems?

18     A    I think so.

19     Q    With respect to Seek Thermal, were you notified of

20  the change of name?

21     A    I became aware of the change.  I don't know if I

22  was notified or not.

23     Q    How did you become aware?

24     A    I don't remember.

25     Q    With respect to the investment, do you know what

16



USAO_00454923

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

1      Q    Do you have access to a vehicle that you drive?

2      A    I have access to a Escalade that is leased that is

3   not in my name that I drive from time to time.

4      Q    Do you know whose name it is in?

5      A    Yes.  It's in Ms. Regnier's name.  It was leased

6   three or four years ago.

7      Q    Okay.  Is that a vehicle that you primarily drive?

8      A    No.

9      Q    Does she -- who keeps custody of the vehicle?

10     A    Generally, the driver that I use from time to

11  time, James Cameron.

12     Q    With respect to --

13     A    But I don't own that vehicle.  And I don't have

14  any interest in the vehicle.

15     Q    Who pays the bill on the vehicle?

16     A    It's a prepaid lease.  It was all paid at the time

17  it was leased.  It's a single prepaid lease.  It was

18  leased three and a half years ago -- not three and a half.

19  A little less than three and a half.

20     Q    Who paid for the lease?

21     A    The firm, I think.

22     Q    Eagan Avenatti?

23     A    I think so.

24     Q    With respect to -- have you ever heard of

25  something called Augusta, LLP?

76



USAO_00454983

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

```
 1      A    Yes.

 2      Q    Do you know what it is?

 3      A    Yeah.  It's a limited liability partnership.

 4      Q    Are you a member?

 5      A    No.

 6      Q    Do you know who the partners are?

 7      A    No.

 8      Q    Do you have any interest in the partnership?

 9      A    No.

10      Q    Does Eagan Avenatti have an interest in the

11   partnership?

12      A    No.

13      Q    Does Avenatti & Associates have an interest in the

14   partnership?

15      A    No.

16      Q    Is somebody holding an interest in the partnership

17   on your behalf?

18      A    No.

19      Q    Then how do you know what it is?

20      A    Because I formed it for a client.

21      Q    Oh.  My understanding is --

22      A    How do you know what it is considering that it's a

23   confidential communication between me and clients.  That's

24   a little disturbing, Counsel.

25      Q    So you have an ex-wife other than my client;
```

77

REGAL

USAO_00454984

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

```
1    correct?

2        A    Yes.

3        Q    Do you pay support for any children of that

4    marriage?

5        A    Yes.

6        Q    Are you current in that support?

7        A    No.

8        Q    What is your support obligation to that -- well,

9    what is her name?  Let's start with that.

10       A    Christine.

11       Q    Same last name as you?

12       A    Yes.  Actually, no.  It's Carlin, C-a-r-l-i-n.

13       Q    What is your monthly obligation to Ms. Carlin for

14   child support?

15       A    Well, that's a complicated question.

16       Q    Is there a court order amount?

17       A    Yeah.  But the amount has been modified.

18       Q    Are there arrears?

19       A    Yes.

20       Q    What county is that case out of?

21       A    LA County.

22       Q    Is there a spousal support obligation to

23   Ms. Carlin?

24       A    There was, but it's expired.

25       Q    Okay.
```

78

REGAL

USAO_00454985

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

1       A    Not that I can recall.

2       Q    Do you have a financial interest in any pending

3   litigation right now that you believe will provide you

4   future income?

5       A    Me personally, no.

6       Q    Does Eagan Avenatti have any interest in any cases

7   right now that you believe will generate future income?

8       A    Sure.

9       Q    How many?

10      A    I have no idea.

11      Q    Can you give me an estimate of the future income?

12      A    I can't.

13      Q    My understanding was there was a fairly large

14  judgment prior to the date of separation from a case, at

15  least from what I saw from the bankruptcy, it was Kimberly

16  Clark?

17      A    That's actually false.  It was after the date of

18  separation.

19      Q    Regardless, so --

20      A    No.  That's not a small regardless, but go ahead.

21      Q    Regardless for my purposes today collecting and

22  enforcing, are there funds due to Eagan Avenatti from

23  Kimberly Clark?

24      A    A de minimis amount.  Well, actually, I'm going to

25  say no.

87

REGAL

USAO_00454994

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

1    Q    Are there funds that are pending before judicial
2    determination to be awarded to Eagan Avenatti?
3    A    No.
4    Q    Are they to be awarded to your client of which
5    Eagan Avenatti receives a share?
6    A    No.  The case was up on appeal.
7    Q    So a judgment was entered, that amount is on
8    appeal, so if that appeal is successful, then Eagan
9    Avenatti would not get money or get money?
10   A    We don't know.  There's been no fee application
11   approved.  There's been no fees approved.  We don't know
12   how those fees would be paid, if they would be paid, or
13   the amount of those fees.
14   Q    What was the judgment for?
15   A    25 million and change.
16   Q    Of the 25 million and change, how much is Eagan
17   Avenatti supposed to receive?
18   A    Right now, zero.
19   Q    Well, if Eagan Avenatti is successful in
20   winning --
21   A    I can't speculate, because it's approved by the
22   court.  There is not a fee agreement.  It's a class action
23   case.  That's not how --
24   Q    Is there a certain estimate you can give me as to
25   what the fee request was or would be?

88



USAO_00454995

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

1      A    No.

2      Q    More than a dollar?

3      A    Well, first of all, no fees have been applied for,

4   no fees have been approved, no legal basis has been

5   approved by the court for the awardence of fees.

6      Q    Is there an amount of fees that you've incurred to

7   date that you would be seeking reimbursement through

8   application?

9      A    I don't understand the question.

10     Q    So you have a case, you got a judgment; correct?

11     A    Correct.

12     Q    My understanding was originally it was

13   $400 million?

14     A    Correct.

15     Q    And that got reduced --

16     A    This is the verdict where your client refused to

17   come up the day of the verdict --

18     Q    Right.  Right.  Where you allege she was --

19     A    No.  I don't allege.  That's exactly what

20   happened.  She was too busy in Orange County to put

21   herself in a car and come up and celebrate the verdict.

22     Q    Okay.  So my understanding is at some point that

23   verdict got reduced; correct?

24     A    Yes.

25     Q    And it got reduced from $400 million to what

                                                            89



USAO_00454996

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

```
 1    amount?

 2        A    25 million.

 3             And now your client wants a piece of the verdict

 4    that she couldn't even come up to celebrate.  I just want

 5    to make sure I get that right.

 6        Q    You have it correct, yes.

 7        A    That's one of life's great ironies.

 8        Q    It is.  And I finally got to make you smile and

 9    laugh.

10             With respect to the --

11        A    What a disgrace.

12        Q    Thank you.

13        A    Disgusting.

14        Q    With the $25 million --

15             I'm assuming you were referring to my client and

16    not to me?  Or you can be referring to both.  That's fine.

17        A    No.  I'm not referring to either one of you.  I'm

18    referring to that position I find to be disgraceful and

19    disgusting.  That's what I'm referring to.

20        Q    Okay.  So with respect to that $25 million, is

21    there an expectation of the amount of money that would be

22    received by your firm as compensation for the services

23    that have been rendered and work done in that case?

24        A    No.

25        Q    So you believe the value of that presently is --
```

<sub>90</sub>



Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

1     A    Zero.

2     Q    Zero?

3     A    Yep.  Because any experienced trial lawyer will

4  tell you that you cannot put a value to it until it's

5  actually received.  Because anybody that has been doing

6  this a long time knows that until the money is received,

7  you really can't count it.

8     Q    Okay.  With respect to -- then of all of the

9  pending cases of Eagan Avenatti, would you agree with me

10 that the value of your law firm is less than $10,000?

11    MR. GELBART:  I can't ask him to answer that.

12    THE WITNESS:  I have no way of valuing Eagan Avenatti.

13 You've got a $10 million judgment against Eagan

14 Avenatti --

15    MR. GELBART:  I would prefer you just stop talking

16 about the value of Eagan Avenatti.

17    MR. DEARMEY:  I'm entitled to know what his basis of

18 opinion of value of his assets are.

19    MR. GELBART:  If you are taking his deposition for a

20 divorce, but not an OJD.

21    MR. DEARMEY:  In a turnover order, I'm entitled to

22 ascertain in an OJD what he believes what his assets are

23 and what he believes they are a net value of.

24    MR. GELBART:  He's got no foundation for the value and

25 you know that.

91



USAO_00454998

Michael Avenatti vs Lisa Storie-Avenatti
J.D.E - Michael Avenatti on 01/30/2019

```
 1                      CERTIFICATE

 2                          OF

 3             CERTIFIED SHORTHAND REPORTER

 4                     *   *   *   *

 5

 6

 7       The undersigned Certified Shorthand Reporter of the

 8   State of California does hereby certify:

 9       That the foregoing proceeding was taken before me at

10   the time and place therein set forth.

11       That the testimony and all objections made at the time

12   of the proceeding were recorded stenographically by me and

13   were thereafter transcribed, said transcript being a true

14   and correct copy of the proceedings thereof.

15       In witness whereof, I have subscribed my name, this

16   date:  February 12, 2017.

17

18

19

20

21          _____
                Miranda J. Gentry, CSR No. 14165
22

23

24

25
```

131



USAO_00455038

# SENTENCING EXHIBIT 3

 **Union**Bank   **CASHIER'S CHECK - CUSTOMER COPY**   0613010397   16-49 / 1220

MUFG UNION BANK, N.A.
SAN FRANCISCO, CALIFORNIA
800-238-4486

45809   028



Five Thousand Five Hundred Fifteen Dollars And Ninety Six Cents    *March 19, 2019*

PAY TO THE
ORDER OF      ******************************** *JOHN ARDEN* ********************************    **$ ******5,515.96**

REMITTER:   *AUGUSTUS LLP*

---

**STOPPING PAYMENT ON A CASHIER'S CHECK IS RESTRICTED BY STATUTE**

Pursuant to UCC §3312(b)1, claims for lost, stolen,
or destroyed cashier's checks will not be paid until the 91st day after
the original issue date of the check.

**NON-NEGOTIABLE**

USAO_01053333

 **Union**Bank   **CASHIER'S CHECK - CUSTOMER COPY**    0613010399    16-49
1220

MUFG UNION BANK, N.A.
SAN FRANCISCO, CALIFORNIA
800-238-4486
45809    028



*Eight Thousand Eight Hundred Twenty Dollars And Sixty Seven Cents*    *March 19, 2019*

**PAY TO THE ORDER OF**   ***************************** *CARLOS COLORADO* ********************************

$ ******8,820.67

**REMITTER:**   *AUGUSTUS LLP*

**STOPPING PAYMENT ON A CASHIER'S CHECK IS RESTRICTED BY STATUTE**

Pursuant to UCC §3312(b)1, claims for lost, stolen,
or destroyed cashier's checks will not be paid until the 91st day after
the original issue date of the check.

**NON-NEGOTIABLE**

USAO_01053346

 **Union**Bank        **CASHIER'S CHECK - CUSTOMER COPY**        **0613010406**        16-49
1220

MUFG UNION BANK, N.A.
SAN FRANCISCO, CALIFORNIA
800-238-4486

45809    030

 **2800** 00
TWO EIGHT ZERO ZERO CTS CTS

*Two Thousand Eight Hundred Dollars And No Cents*        *March 19, 2019*

PAY TO THE
ORDER OF        ******************************* *JAMES CAMERON* *********************************        $ ******2,800.00

REMITTER:    *AUGUSTUS LLP*

**STOPPING PAYMENT ON A CASHIER'S CHECK IS RESTRICTED BY STATUTE**
Pursuant to UCC §3312(b)1, claims for lost, stolen,
or destroyed cashier's checks will not be paid until the 91st day after
the original issue date of the check.

**NON-NEGOTIABLE**

USAO_01053347

 **Union**Bank   **CASHIER'S CHECK - CUSTOMER COPY**   **0613010405**   16-49
1220

MUFG UNION BANK, N.A.
SAN FRANCISCO, CALIFORNIA
800-238-4486
45809   030



*Two Thousand Ninety Eight Dollars And Sixty One Cents*          *March 19, 2019*

$ ******2,098.61

PAY TO THE
ORDER OF   ************************** *HILLARY WOLETT* *********************************

REMITTER:   *AUGUSTUS LLP*

---

**STOPPING PAYMENT ON A CASHIER'S CHECK IS RESTRICTED BY STATUTE**

Pursuant to UCC §3312(b)1, claims for lost, stolen,
or destroyed cashier's checks will not be paid until the 91st day after
the original issue date of the check.

**NON-NEGOTIABLE**

USAO_01053348

 **Union**Bank

**CASHIER'S CHECK - CUSTOMER COPY**            0613010404            16-49
                                                                                  1220

MUFG UNION BANK, N.A.
SAN FRANCISCO, CALIFORNIA
800-238-4486

45809      030



One Thousand Eight Hundred Sixty Seven Dollars And Eleven Cents            March 19, 2019

PAY TO THE
ORDER OF    ***************************** *MARIE SCOTT* *****************************            $ ******1,867.11

REMITTER:    *AUGUSTUS LLP*

STOPPING PAYMENT ON A CASHIER'S CHECK IS RESTRICTED BY STATUTE            **NON-NEGOTIABLE**

Pursuant to UCC §3312(b)1, claims for lost, stolen,
or destroyed cashier's checks will not be paid until the 91st day after
the original issue date of the check.

USAO_01053349



**CASHIER'S CHECK - CUSTOMER COPY**         0613010403         16-49
                                                              1220

MUFG UNION BANK, N.A.
SAN FRANCISCO, CALIFORNIA
800-238-4486

45809     029

*Seven Thousand Five Hundred Ninety Six Dollars And Thirty Five Cents*         *March 19, 2019*

PAY TO THE
ORDER OF         ******************************* *JUDY REGNIER* ***********************************         $ ******7,596.35

REMITTER:     *AUGUSTUS LLP*

**STOPPING PAYMENT ON A CASHIER'S CHECK IS RESTRICTED BY STATUTE**

Pursuant to UCC §3312(b)1, claims for lost, stolen,
or destroyed cashier's checks will not be paid until the 91st day after
the original issue date of the check.

**NON-NEGOTIABLE**

USAO_01053350

 **Union**Bank    **CASHIER'S CHECK - CUSTOMER COPY**    0613010402    16-49
1220

MUFG UNION BANK, N.A.
SAN FRANCISCO, CALIFORNIA
800-238-4486

45809    029



Nineteen Thousand One Hundred Eleven Dollars And Thirty  Cents    *March 19, 2019*

PAY TO THE
ORDER OF    ***************************** AHMED IBRAHIM *********************************    $ *****19,111.30

REMITTER:    *AUGUSTUS LLP*

STOPPING PAYMENT ON A CASHIER'S CHECK IS RESTRICTED BY STATUTE
Pursuant to UCC §3312(b)1, claims for lost, stolen,
or destroyed cashier's checks will not be paid until the 91st day after
the original issue date of the check.

**NON-NEGOTIABLE**

USAO_01053351

 **Union**Bank     **CASHIER'S CHECK - CUSTOMER COPY**     **0613010401**     16-49
1220

MUFG UNION BANK, N.A.
SAN FRANCISCO, CALIFORNIA
800-238-4486

45809     029

**2900.19** TWO ZERO ZERO CTS

Two Thousand Nine Hundred Dollars And Nineteen Cents     *March 19, 2019*

PAY TO THE
ORDER OF     ******************************* *THOMAS GRAY* *******************************     $ ******2,900.19

REMITTER:     *AUGUSTUS LLP*

**STOPPING PAYMENT ON A CASHIER'S CHECK IS RESTRICTED BY STATUTE**
Pursuant to UCC §3312(b)1, claims for lost, stolen,
or destroyed cashier's checks will not be paid until the 91st day after
the original issue date of the check.

**NON-NEGOTIABLE**

USAO_01053352

 **Union**Bank          **CASHIER'S CHECK - CUSTOMER COPY**          0613010400          16-49
                                                                                                              1220

MUFG UNION BANK, N.A.
SAN FRANCISCO, CALIFORNIA
800-238-4486
45809      029



*Four Thousand Four Hundred Ninety Five Dollars And Fifty Three Cents*          *March 19, 2019*

PAY TO THE
ORDER OF          ********************** *MARIA GARCIA* **********************          $ ******4,495.53

REMITTER:     *AUGUSTUS LLP*

**STOPPING PAYMENT ON A CASHIER'S CHECK IS RESTRICTED BY STATUTE**

Pursuant to UCC §3312(b)1, claims for lost, stolen,
or destroyed cashier's checks will not be paid until the 91st day after
the original issue date of the check.

**NON-NEGOTIABLE**

USAO_01053353

 **Union**Bank

**CASHIER'S CHECK - CUSTOMER COPY**          0613010398          16-49
                                                                  1220

MUFG UNION BANK, N.A.
SAN FRANCISCO, CALIFORNIA
800-238-4486
45809     028



*Two Thousand Sixty Nine Dollars And Sixty  Cents*          *March 19, 2019*

PAY TO THE
ORDER OF          ******************************** *TOM CASSARO* ********************************          $ ******2,069.60

REMITTER:          *AUGUSTUS LLP*

| STOPPING PAYMENT ON A CASHIER'S CHECK IS RESTRICTED BY STATUTE |
| Pursuant to UCC §3312(b)1, claims for lost, stolen, |
| or destroyed cashier's checks will not be paid until the 91st day after |
| the original issue date of the check. |

**NON-NEGOTIABLE**

USAO_01053354

# SENTENCING EXHIBIT 4

USAO_00163767

 **Union**Bank

**Customer Wire Activity Report**
**Business Day From: 13-Feb-2019 To 30-Apr-2019**

**CUSTOMER ACC & TITLE: D████1449 - AUGUSTUS LLP**

Processed: 2019-03

### OUTGOING TRANSACTIONS

| SRC | OFFICE | DEBIT AMOUNT | FX AMOUNT | CUR | TRN | CREDIT BANK OR UBOC CUSTOMER | BNF BANK NAME & ADDRESS | BNF ACCOUNT, NAME & ADDRESS |
|-----|--------|--------------|-----------|-----|-----|------------------------------|-------------------------|------------------------------|
| PTM | 0206 | $15,000.00 | | USD | 20190321-00023434 | A█████2869<br>PACIFIC MERCANTILE BANK<br>949 S COAST DR, THIRD FL<br>COSTA MESA, CA 92626 | PACIFIC MERCANTILE BANK<br>949 S COAST DR, THIRD FL<br>COSTA MESA, CA 92626 | █████0500<br>1/Shulman Hodges and Bastian LLP<br>1/Client Trust Account |
| PTM | 0206 | $12,000.00 | | USD | 20190320-00019143 | A█████9593<br>BANK OF AMERICA N.A.<br>100 WEST 33RD STREET<br>NEW YORK, NY 10001 | BANK OF AMERICA N.A.<br>100 WEST 33RD STREET<br>NEW YORK, NY 10001 | █████7674<br>1/Jessica Cronin |
| PTM | 0206 | $6,000.00 | | USD | 20190320-00018303 | A█████2108<br>LIBERTY BANK & TRUST COMPANY<br>NEW ORLEANS, LA | LIBERTY BANK & TRUST COMPANY<br>NEW ORLEANS, LA | █████2331<br>1/James H. Scott Esq. |
| PTM | 0206 | $6,000.00 | | USD | 20190322-00019151 | A█████6827<br>JPMORGAN CHASE BANK, NA<br>**USE FOR STOCKTON, CA**<br>SEATTLE, WASHINGTON | JPMORGAN CHASE BANK, NA<br>**USE FOR STOCKTON, CA**<br>SEATTLE, WASHINGTON | █████5185<br>1/Alexis Gardner |
| PTM | 0206 | $2,936.40 | | USD | 20190322-00019150 | A█████9593<br>BANK OF AMERICA N.A.<br>100 WEST 33RD STREET<br>NEW YORK, NY 10001 | BANK OF AMERICA N.A.<br>100 WEST 33RD STREET<br>NEW YORK, NY 10001 | █████028<br>1/Judy Regnier |
| PTM | 0206 | $1,398.00 | | USD | 20190321-00021342 | A█████5821<br>US BANK, NA<br>8920 MIRAMAR RD., SUITE D<br>SAN DIEGO, CA 92196 | US BANK, NA<br>8920 MIRAMAR RD., SUITE D<br>SAN DIEGO, CA 92196 | █████359<br>1/Blossom Properties |

Source Code Key: CFX = Customer Fax; CHP = CHIPS; FAX = Office Fax; FED = Fedwire; GIF = WIS; INT = Office Phone; LTC = Internal Hard Copy; LTR = Internal Hard Copy;  MTX = MTX;
PHN = Customer Phone; RTN = Wire Services Return; STO = Standing Order; SWF = S.W.I.F.T; TS1 = TEAM; WIR = Telex

GFTP0036-Customer Wire Activity Search Report_LegalProcessing.rep                Page 2 of 2                Run Date: 31-May-2019 08:38:17 AM

# SENTENCING EXHIBIT 5

**Sagel, Brett (USACAC)**

| | |
|---|---|
| **From:** | Dean Steward <deansteward7777@gmail.com> |
| **Sent:** | Sunday, July 4, 2021 11:35 AM |
| **To:** | Sagel, Brett (USACAC); Wyman, Alex (USACAC) |
| **Subject:** | questionnaire |

Below are the changes from the defense, per court order, Thanks,

Dean

Defense Changes to Questionnaire

1.  Add the following names to Question No. 51
    a.  Andrew Stolper
    b.  Jason Frank
    c.  Scott Sims
    d.  DeLeassa Penland
    e.  Melissa Galicia
    f.  Chris Harper
    g.  Aimee Schabilion
    h.  Daniel Dreyer
    i.  Leia Bellis
    j.  Michael Eagan
    k.  Glen La Palme
    l.  Leroy Baca
    m.  Los Angeles County Sheriff's Department

2.  Edit the following names on Question No. 51
    a.  Robert Susko (corrected from "Roberty Susko")
    b.  Courtney Cummings Cefali (corrected to include married name)

3.  Additions to Questions
    a.  On Question No. 51 add the language "and what you think about that person or entity" after the language "please describe your familiarity with that person or entity"

    b.  Between Question 17 and Question 18 add the question, "Have you ever posted online or on social media about any court case or legal proceeding? (Please Circle: YES or NO). If yes, please describe what you have posted and when."

c.    Question No. 34 should be edited to read as follows, "Have you, or someone close to you, ever hired a lawyer? (Please Circle: YES or NO). If yes, why and was there anything positive or negative about that experience? Please describe:"

--



949-481-4900  www.deansteward.com

---

 Virus-free. www.avg.com

# SENTENCING EXHIBIT 6

STATE BAR COURT OF THE STATE OF CALIFORNIA

------------------------X

IN THE MATTER OF:

    STATE BAR OF CALIFORNIA,

              Petitioner,

                                Case No.:
                                19TE30259
        Vs.

    MICHAEL J. AVENATTI,

              Respondent.

------------------------X

                  January 14, 2020

HELD AT:          845 S. Figueroa Street
                  Los Angeles, CA 90017

BEFORE:           HONORABLE YVETTE D. ROLAND,
                  Judge

APPEARANCES:      ELI MORGENSTERN, ESQ.
                  Attorney for the Petitioner
                  OFFICE OF THE CHIEF TRIAL COUNSEL
                  The State Bar of California

                  TOM WARREN, ESQ.
                  DALE DUGAN, ESQ.
                  Attorneys for the Respondent
                  PIERCE BAINBRIDGE BECK PRICE & HECHT
                  LLP

                  ELLEN PANSKY, ESQ.
                  Attorney for the Respondent
                  PANSKY, MARKEL

TRANSCRIBER:      JOYCE A. WASER

INDEX

# W I T N E S S E S

| PETITIONER:<br>WITNESS | DIRECT | CROSS | RE<br>DIRECT | RE<br>CROSS | V.<br>D. | J |
|---|---|---|---|---|---|---|
| M. Avenatti | 4 | | | | | |

| RESPONDENT:<br>WITNESS | DIRECT | CROSS | RE<br>DIRECT | RE<br>CROSS | V.<br>D. | J |
|---|---|---|---|---|---|---|

# E X H I B I T S

| PETITIONER:<br>IDENTIFICATION | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|

| RESPONDENT:<br>IDENTIFICATION | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|

```
1              THE COURT:  Okay, your next witness, Mr.

2      Morgenstern?

3              MR. ELI MORGENSTERN:  The State calls

4      Respondent, Michael Avenatti.

5              COURT OFFICER:  [unintelligible] just

6      [unintelligible].  Do you state that the testimony

7      you are about to give, in the matter now pending

8      before this Court, will be the truth, the whole

9      truth, and nothing but the truth?

10             MR. MICHAEL J. AVENATTI:  I do.

11             COURT OFFICER:  Thank you.  Go ahead and

12     have a seat, and state - I'm sorry.  Spell your first

13     and last name, for the record please.

14             MR. AVENATTI:  Yes.  Michael, middle name

15     John, last name Avenatti, A-V-E-N-A-T-T-I.

16             COURT OFFICER:  Thank you.

17             THE COURT:  Good afternoon, Mr. Avenatti.

18             MR. AVENATTI:  Good afternoon, Your Honor.

19             THE COURT:  Mr. Morgenstern, Mr. Warren,

20     would you like to have a seat?

21             MR. TOM WARREN:  Yes, Your Honor.  I just

22     wanted to know if Mr. Avenatti wanted some water, or

23     something.  I don't know if there is some up there

24     for you.

25             THE COURT:  There should be.
```

 1              that issue would have arisen in the context of

 2              exhibits 1015 or 1016.  But the issue here is whether

 3              or not Exhibit 1004, that everyone has, these

 4              exhibits were served some time back, whether that

 5              exhibit contains an email, from Mr. Avenatti, or

 6              anyone at his firm, advising Mr. Berella about Mr.

 7              Avenatti, or the firm's receipt of the settlement

 8              funds, the Berella settlement funds.

 9         Q:   And there isn't one, isn't that correct, Mr.

10    Avenatti?

11         A:   Mr. Morgenstern, that's the third time – I have

12    answered this question three times.

13         Q:   Let me – is there a reason why you haven't

14    reviewed your own exhibits?

15              MR. WARREN:  Your Honor, are we going to do

16         this again?  Objection—

17              THE COURT:  [Interposing] Objection as to?

18              MR. WARREN:  Argue – argumentative.

19              THE COURT:  Mr. Avenatti, have you reviewed

20         Exhibit 1004, for the purpose of determining whether

21         or not there is an email, in that exhibit, that

22         references your receipt, or the firm's receive of the

23         Berella settlement funds?

24              MR. AVENATTI:  Your Honor, I'm sorry.  I

25         have reviewed the exhibits.  I have not reviewed the

1          Exhibit 1004 for that purpose.

2          Q:   Well, in your review, for whatever purpose, you

3    didn't find an email where you notified Mr. Berella of the

4    receipt of his – of the initial 1.6 million dollar

5    settlement payment, isn't that correct, Mr. Avenatti?

6                  MR. WARREN:  Objection, asked and answered.

7                  THE COURT:  Overruled.

8          A:   Sir, I don't recall finding that email in this

9    exhibit.  But I wasn't looking for that email.

10         Q:   The answer is—

11         A:   [Interposing] But I would like to see all the

12   emails, frankly.

13                 THE COURT:  Okay.  Mr. Avenatti, do you

14         recall generating an email or a text message, or any

15         form of communication that informed Mr. Berella about

16         the receipt of the 1.6 million dollars in settlement

17         funds?

18                 MR. AVENATTI:  Mr. Berella was fully

19         informed of the receipt of those monies, Your Honor.

20         I don't recall how he was informed.

21                 THE COURT:  Okay.  Mr. Morgenstern?

22         Q:   Mr. Avenatti, if you had informed him, let's say

23   first by text message, don't you think that would be an

24   important text message to provide the State Bar?

25                 MR. WARREN:  Objection, Your Honor,

1          the stand.  Because Mr. Berella specifically

2          testified that he provided all of the documents,

3          texts and emails, that related to Mr. Avenatti's

4          representation to them.  And yet, we have received

5          barely anything, from – from the State Bar.

6          Compounded by the fact that we now know that there

7          was at least two documents, at least one of which was

8          specifically—

9                    THE COURT:  [Interposing] Okay, Mr. Warren,

10         is it your understanding that the Exhibit 1004

11         documents are documents that Respondent has produced,

12         from materials provided to him, by the U.S.

13         Attorney's Office?

14                    MR. WARREN:  That is correct, Your Honor.

15                    THE COURT:  Okay.  Let's – let's move on.

16                    MR. WARREN:  Thank you, Your Honor.

17                    THE COURT:  Mr. Morgenstern?

18         Q:   The bottom line is, just so it is abundantly

19    clear, you didn't—

20                    THE COURT:  [Interposing] Let's not repeat

21         anything that we have already covered.

22                    MR. MORGENSTERN:  All right.

23                    THE COURT:  It is abundantly clear.

24         Q:   If you had a document, in your possession, a

25    written document, that showed that you notified Mr.

1    Berella that you received his funds, on or about January

2    5th, 2018, you would have produced that document, wouldn't

3    you have, Mr. Avenatti?

4        A:   Sir, we produced whatever documents we had

5    access to, relating to the issues here today.  But that is

6    a small subset of the totality of the documents.

7        Q:   But none of the documents, that you produced,

8    demonstrated that you notified Mr. Berella, of the receipt

9    of the initial 1.6 million dollar settlement payment,

10   isn't that correct?

11       A:   I – I disagree with that assertion, sir.

12       Q:   Well, time is very valuable here, but you can't

13   point to one – to one exhibit, written exhibit, that you

14   launched, that demonstrated that you notified him, in

15   writing, of the receipt of his initial 1.6 million dollar

16   settlement payment, can you, Mr. Avenatti?

17       A:   I disagree with that, sir—

18            MR. WARREN:   [Interposing] Hang on a

19       second.  Objection to the form of the question –

20       argumentative, asked and answered.

21            THE COURT:   Okay, overruled.

22       A:   Sir, I disagree with that, for the following

23   reason.  If you read through the text messages, the litany

24   of text messages and other documents relating to my

25   communications with Mr. Berella, and you compare that to

1    the testimony that he has provided in this hearing, the

2    last two days, you can easily conclude that Mr. Berella,

3    number one is lying about being notified.  And number two,

4    his behavior and his communications were not consistent

5    with what he is claiming in this matter.  That is my

6    testimony, sir.

7                   MR. MORGENSTERN:  Your Honor, move to

8         strike as non-responsive.

9                   THE COURT:  Okay, overruled.  However, Mr.

10        Avenatti, I understood Mr. Morgenstern's question to

11        relate to a specific document.  If you are aware of

12        any document that reflects that Mr. Berella was

13        notified, of the receipt of—

14                   MR. AVENATTI:  [Interposing] I am not aware

15        of a specific document that has been produced to

16        date, reflecting that.

17                   THE COURT:  Okay.  Mr. Morgenstern?

18        Q:   Upon receiving Mr. Berella's initial 1.6 million

19   dollar settlement payment, from the settling party, as an

20   attorney of 18 years' experience, at the time, you were

21   aware that you were required to provide Mr. Berella an

22   accounting of those funds, correct?

23        A:   I was aware that there was an obligation to

24   provide an accounting, a general accounting, to the

25   client, at some point, yes.  I don't know what the time

1  Q: You also left a voicemail message, for Mr.

2 Berella, on November 17th, 2018, isn't that right?

3  A: Consistent with my regular communications, with

4 Mr. Berella, I left a voicemail message, I sent a text

5 message, I emailed him.  He never called.

6  Q: But you never sent an accounting, either, isn't

7 that right?

8    MR. WARREN:  Objection, asked and answered.

9  A: I have already answered—

10    MR. WARREN:  [Interposing] Objection, asked

11  and answered.

12    THE COURT:  Overruled.  You can answer it.

13  Does your answer differ from your prior answers?

14    MR. AVENATTI:  No, it is the same answer,

15  Your Honor.

16    THE COURT:  Okay.  Mr. Morgenstern—

17  Q: [Interposing] Inviting your attention to State

18 Bar Exhibit 44, this is a letter that Mr. Bledsoe sent to

19 you, on December 3rd, 2018, via email, isn't that right?

20    MR. WARREN:  Objection, foundation.

21    THE COURT:  Overruled.

22  A: Mr. Morgenstern, that is what the document says.

23 I don't have a recollection of receiving this, and I can't

24 confirm or deny it, without access to the entirety of my

25 documents.

1    Q:   In this - in this letter, among other things,

2    Mr. - Mr. Bledsoe, once again, asks that you provide an

3    immediate accounting, in the event that the settling party

4    made the initial 1.6 million dollar payment provided for

5    in the settlement agreement.  Do you see that?

6              MR. WARREN:  Mr. Morgenstern, where on this

7         page are you referencing?

8              MR. MORGENSTERN:  I am looking at the first

9         paragraph, and then it is numbered 3, within the

10        first paragraph.

11   A:   I see the words on the page, sir.

12   Q:   All right.  You never provided an accounting, in

13   response to this letter, isn't that right?

14   A:   Sir, I am going to stand on my prior answer.

15             MR. WARREN:  And a belated asked and

16        answered.

17             MR. MORGENSTERN:  It is a different

18        document number; I am referring to.

19             MR. WARREN:  The question is about whether

20        he ever provided an accounting.

21             THE COURT:  Okay.  You can answer the

22        question, Mr. Avenatti.

23   A:   I don't have a recollection of providing an

24   accounting, after this letter.

25   Q:   In fact, you don't have a recollection of ever

1    providing Mr. Berella, with an accounting, isn't that

2    right?

3        A:    No, that is completely false.

4            MR. WARREN:  Objection.  Objection.

5        A:    That is completely—

6            MR. WARREN:  [Interposing] Hang on, there

7    is an objection.

8            THE COURT:  Mr. Avenatti, allow your

9    counsel to state his objection.

10            MR. WARREN:  Misstates the testimony; asked

11    and answered.

12            THE COURT:  Overruled.

13        A:    No, that is completely false, Mr. Morgenstern.

14    I would happy to put my credibility up against Mr.

15    Berella's at any point in time, on this issue, or any

16    other issue.

17            MR. MORGENSTERN:  Move to strike as non-

18    responsive, every—

19            THE COURT:  [Interposing] Sustained, as to

20    the last sentence, regarding credibility.

21        Q:    Even though you claim to have provided an

22    accounting, once again, not one of your exhibits consists

23    of an accounting to Mr. Berella, isn't that right?

24            MR. WARREN:  Objection.

25            THE COURT:  That has been asked and

C E R T I F I C A T E

I, Joyce A. Waser certify that the foregoing transcript of proceedings in the State Bar Court of the State of California, Case No. 19TE30259 was prepared using the required transcription equipment and is a true and accurate record of the proceedings to the best of my ability. I further certify that I am not connected by blood, marriage or employment with any of the parties herein nor interested directly or indirectly in the matter transcribed.

Signature: *Jawaser*

Date:    April 16, 2020

# SENTENCING EXHIBIT 7

1                            BEFORE THE

2                    INTERNAL REVENUE SERVICE

3

4

5       TRANSCRIPT OF RECORDING OF CONVERSATION BETWEEN

6            MICHAEL EAGAN AND MICHAEL AVENATTI

7

8

9                    Thursday, August 22, 2019

10

11

12

13

14

15

16  Transcriber:                    Briggs Reporting Company, Inc.
                                    2160 Fletcher Parkway
17                                  Suite P
                                    El Cajon, California 92020
18                                  (310) 410-4151

19

20

21

22

23

24

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

USAO_00177219

2

1          THURSDAY, AUGUST 22, 2019

2                  --oOo--

3          MR. AVENATTI:  Hello.

4          MR. EAGAN:  Avenatti?

5          MR. AVENATTI:  What's going on?

6          MR. EAGAN:  Nothing good from what I can see.

7          MR. AVENATTI:  Yeah, not a good day.

8          MR. EAGAN:  So, look.  I got a problem here and

9  I'm going to try to be non -- I don't know what the word

10 would be.  I'm going to try to be reserved.  But look, I

11 finished reading the -- I flied to New York yesterday, and I

12 finished reading most of the deposition you gave, whatever

13 it's called, the thing you talked -- testified about in

14 July, and you threw me under the bus.  You said that I --

15         MR. AVENATTI:  What?

16         MR. EAGAN:  -- you said that I signed that

17 settlement agreement, and you know that's not true.

18         MR. AVENATTI:  Mike, I don't recall -- look, I'm

19 not arguing with you.  I want to be clear about something.

20 I don't recall saying that.  If you told -- if you say that

21 I said that, then I said it in the transcript, but I don't

22 recall saying that in the transcript.  I would have to go

23 back and look at the transcript.

24         MR. EAGAN:  Okay.  Well, when I read the

25 transcript my jaw hit the ground.  They asked you whether it

USAO_00177220

3

1  was your signature, and then they asked you whether that's

2  the signature Michael Q. Eagan individually, and you said,

3  "it appears so."  Now you know, you know I didn't sign that

4  thing.  You can't be telling people that under oath.

5          MR. AVENATTI:  Okay.  Well I don't recall saying

6  that, but I would agree with that, if that's what I said,

7  that's not correct.  I mean, there's no dispute as to that.

8          MR. EAGAN:  Well, but look, you've got a document

9  under -- I don't know, I don't know -- I assume they swore

10  you in at the beginning of it, and it's just not right.

11  Now, we got to deal -- this is something that's very serious

12  it seems to me.  Because you can't be saying under oath that

13  I signed something when you know you signed it.  I mean, you

14  just can't do that.

15          MR. AVENATTI:  No, look, Mike, I agree with that.

16  I don't recall saying that, but if you said -- I'll go back

17  and look at the transcript.  I have not looked at the

18  transcript, okay, but I agree with you.  I don't disagree

19  with what you're saying.  I just don't recall saying that.

20          MR. EAGAN:  All right.  Well, trust me, I --

21          MR. AVENATTI:  Okay.  Well -- okay.

22          MR. EAGAN:  So --

23          MR. AVENATTI:  I do.  I'm not, I'm not disputing

24  what you're saying.  But the bottom line here is, this thing

25  needs to go away.  All of this needs to fucking go away.

4

1  That's the bottom line.  The bottom is, I've got to figure

2  out a way to get this fucking done with Jason (phonetic) and

3  get this out of my life.  And when it's out of my life, it's

4  out of your life, and we move on.  That's the bottom line

5  today.

6           MR. EAGAN:  It's also the top line.  Look --

7           MR. AVENATTI:  Well, no.  It's the top line, it's

8  the bottom line, it's the middle line.  I mean, I don't want

9  to get beat up over this anymore.  I don't want you to get

10 beat up over it anymore.  I've got to get this thing done.

11 So, I'm doing everything in my fucking power to get enough

12 cash to make this guy happy, to end this.  That is my focus.

13          MR. EAGAN:  All right.  So --

14          MR. AVENATTI:  I am meeting with somebody, I am

15 meeting with somebody this afternoon in that regard.

16          MR. EAGAN:  All right.

17          MR. AVENATTI:  So.

18          MR. EAGAN:  I assume you're meeting with somebody

19 to get some money, and not somebody -

20          MR. AVENATTI:  Correct.

21          MR. EAGAN:  -- on Jason's side?  All right.  So --

22          MR. AVENATTI:  Correct.

23          MR. EAGAN:  -- where is Jason on all of this?  I

24 mean, it looks to me like he's, you know -- do you have any

25 inroads with him?

USAO_00177222

5

1       MR. AVENATTI:  Yeah, I think -- yes.  Yes, we have

2 inroads with him.  At the end of the day, it's a question

3 of, you know, how much cash will he take up front, how much

4 cash will he take on the back end.

5       So, you know, look.  I'm meeting with somebody

6 this afternoon.  Hopefully I'm going to get some good news

7 as to being able to raise some cash, enough cash to pay this

8 fucking guy off and be done with this.

9       MR. EAGAN:  All right.  Well, let --

10       MR. AVENATTI:  Okay, I don't want this shit all

11 over the press.  I mean, I don't want to fucking deal with

12 this.  It's fucking miserable.

13       MR. EAGAN:  Well, I know, but I mean, it's

14 miserable for you and it's miserable for me, but --

15       MR. AVENATTI:  I know.

16       MR. EAGAN:  -- the difference is, you had control

17 of it.  And look, let me -- I don't want to get in an

18 argument with you.  But look, I can't deal with, you know,

19 my name being out there and all this bullshit about, you

20 know, whatever we -- you know, whatever you --

21       MR. AVENATTI:  I know.

22       MR. EAGAN:  It just drives me fucking crazy.

23       MR. AVENATTI:  Mike, you don't have to explain it

24 to me.  I know it's does.  I know it does.

25       MR. EAGAN:  It's --

6

1          MR. AVENATTI:  It drives me crazy.  And to your

2  points, you're not even in control of it.  I agree a

3  hundred-percent.  I feel bad about this.  I don't -- look --

4          MR. EAGAN:  Look --

5          MR. AVENATTI:  -- I feel bad it.  It's wrong.  We

6  got to get it done.

7          MR. EAGAN:  Okay.  But look, just to -- I want to

8  make two, three points, just to be clear, because I don't

9  want you to say, Eagan, you never told me this.

10          Look, number one, it's affecting my personal life

11  with my family, et cetera.  Okay.

12          Number two, it may affect my business life, which

13  would be a big fucking deal.

14          And number three, if I'm asked about that

15  signature, I'm going to tell --

16          MR. AVENATTI:  I know, you're going to say -- I

17  know, I know what you're going to say.  I hear you.

18          MR. EAGAN:  But what am I --

19          MR. AVENATTI:  I get it.

20          MR. EAGAN:  Either I'm going tell you -- what are

21  you -- you tell me what you think I'm going to -- or let me

22  just tell you what I'm going to say.  I'm going to say, I

23  didn't sign that thing.  I never saw the document until it

24  was attached to an attachment in the lawsuit that was filed

25  in May.

7

1          And if they follow-up I'm going to say, I called

2   you and asked you who signed it, and you said you did, and

3   that you shouldn't have done it, and you were sorry, and

4   that's all I know.  Okay?  So, we don't want that to happen,

5   right?

6          MR. AVENATTI:  I get it.

7          MR. EAGAN:  No, but we've had this conversation 10

8   times and it's always, I get it.  It's now to the point

9   where you got to get it done.  And it's not just for my

10  benefit, it's for -- look, I'm not your counselor, I'm not

11  your uncle --

12         MR. AVENATTI:  Mike --

13         MR. EAGAN:  -- or anything --

14         MR. AVENATTI:  -- Mike, Mike, I agree.  Mike, I

15  agree a hundred-percent.  I agree a hundred-percent.  Okay.

16         MR. EAGAN:  Then you -- look, Michael, I have seen

17  you do amazing things when you want to get things done, all

18  right?  And apparently you're doing --

19         MR. AVENATTI:  I can assure you now, I can assure

20  you now, I truly want to get this done, okay.  I can assure

21  you of that, Mike.  I can assure you of that.  Okay.  I --

22  look, I cannot be more firm in telling you this, I want this

23  out of my life.  I want it out of my life for you, I want it

24  out of my life for me, I want it out of my life.  I need to

25  put a fucking bullet in this thing.

8

1          MR. EAGAN:  All right.  Well, look --

2          MR. AVENATTI:  So -- all right?

3          MR. EAGAN:  -- let me just -- what was I going to

4    say?  Look, I don't have a lot of positive things to say to

5    you, but I will say, use your brains and your energy that

6    you do amazing things with other -- I mean, go after this

7    problem with the same vengeance you've gone after

8    Kimberly --

9          MR. AVENATTI:  I agree.  I agree.

10         MR. EAGAN:  I mean, please --

11         MR. AVENATTI:  I agree.

12         MR. EAGAN:  -- do it for your sake.  I mean --

13         MR. AVENATTI:  I agree.

14         MR. EAGAN:  -- you know, this is killing -- you

15   know, for the sake -- well, what I'm -- so, you got to get

16   it done.

17         Now the next thing is, what about this, the firm's

18   being evicted or something, is that --

19         MR. AVENATTI:  There's a dispute with the Irvine

20   Company.  I had the discussion with the attorney on Friday.

21   They went ahead and proceeded with the hearing this morning.

22   We're in the process of getting it resolved.  I'm supposed

23   to talk with him also this afternoon, okay.  So that's my

24   second -- that's the -- after I have this meeting, that's my

25   second course of conduct --

9

1          MR. EAGAN:  Because you told me --

2          MR. AVENATTI:  -- second action.

3          MR. EAGAN:  When I raised this issue with you, you

4    told me it had -- you took care of it.

5          MR. AVENATTI:  (Indiscernible) -- we had -- we had

6    made a payment.  Evidentially they rejected the payment.

7    There was a dispute over the payment.  There was also a

8    dispute over the -- over how the TI's got applied, the PI's

9    that we paid for.  That's the dispute, okay.  You've got to

10   keep in mind, Bren is a huge Trump backer, huge Trump

11   backer.

12         MR. EAGAN:  Who is?

13         MR. AVENATTI:  One of the biggest in the fucking

14   -- huh?

15         MR. EAGAN:  Who?

16         MR. AVENATTI:  Bren, the owner of the Irvine

17   Company.

18         MR. EAGAN:  Well, all the more reason not to give

19   him a basis to --

20         MR. AVENATTI:  Correct.  Correct.  Bill Bren

21   (phonetic) or -- no, I think it is Bill Bren.  I forget the

22   guy's first name.

23         MR. EAGAN:  But --

24         MR. AVENATTI:  So, look, I'm on it.  I don't need

25   that either.  I hear you.  I need to get this shit cleaned

10

1   up, Mike.  I'm with you.  Trust me, I'm fucking, you know,
2   spinning today.
3           MR. EAGAN:  All right.  All right.  Well, look,
4   I'm in New York now.  So, I don't know what time zone you're
5   in, but -- where are you?
6           MR. AVENATTI:  I am in Boston.  I am meeting
7   somebody this afternoon.
8           MR. EAGAN:  All right.
9           MR. AVENATTI:  I've got a telephonic hearing at
10  2:00 o'clock.  So, how long are you in New York for?
11          MR. EAGAN:  A couple of days.  I've got some
12  meetings.  But that's not the point.  Just the point is, in
13  terms of time zones and stuff.  Because I don't want to --
14          MR. AVENATTI:  Well, we're on the same time zone.
15          MR. EAGAN:  Yeah, but you -- look, you're in
16  Boston one day and Texas the next, so I don't know.
17          MR. AVENATTI:  No, no, no.  I'm on the East Coast
18  for the next two or three days.  So let's have a follow-up
19  call tomorrow and I'll have more information for you.
20          MR. EAGAN:  All right.  Read that transcript --
21          MR. AVENATTI:  All right.
22          MR. EAGAN:  -- because you may need to sign it --
23          MR. AVENATTI:  I am going to do -- no, I am going
24  to read it.  I didn't --
25          MR. EAGAN:  -- to protect yourself.  All right.

11

1          MR. AVENATTI:  Yeah.  All right.  I'm going to

2    read it.

3          MR. EAGAN:  You may need to -- you may have to

4    say, I misunderstood the question or whatever, all right?

5          MR. AVENATTI:  Yeah.  I agree.  (Indiscernible).

6       (Speaking over each other.)

7          MR. EAGAN:  Because I did not sign that fucking

8    document.

9          MR. AVENATTI:  I get it.  Mike, I get it.

10          MR. EAGAN:  All right.

11          MR. AVENATTI:  I get it.  I'll check it.

12          MR. EAGAN:  All right.

13          MR. AVENATTI:  Sorry.

14          MR. EAGAN:  Bye.

15          MR. AVENATTI:  All right.  Bye.

16       (Proceedings concluded.)

17

18

19          I certify that the foregoing is a correct

20    transcript from the electronic sound recording of the

21    proceedings in the above-entitled matter.

22

23    /s/ Holly Steinhauer              9-4-19
      Transcriber                       Date

24

25

# SENTENCING EXHIBIT 8

# Tweet

← Tweet

**Michael Avenatti** ✔
@MichaelAvenatti

BREAKING - here is the letter that was just sent to the IRS Inspector Gen by Mr. Avenatti's counsel demanding an investigation into the targeting of him and his family by Trump

---

dovebahr@reinsbring.com

July 11, 2022

J. Russell George
Treasury Inspector General for Tax Administration
United States Department of the Treasury
901 D Street, SW, Suite 600
Washington, DC 20024-2169

Re: Demand for investigation of unlawful politically motivated IRS audits of Michael Avenatti.

Dear Mr. George:

Please be advised that this firm represents Mr. Michael Avenatti. We write to demand that you conduct an immediate and complete investigation into the likely misuse of the Internal Revenue Service and the Treasury Department by former President Donald J. Trump and his allies in order to target Mr. Avenatti for political and personal gain.

In March 2018, Mr. Avenatti filed a high profile lawsuit against then President Trump and his personal lawyer and alleged fixer, Michael Cohen. This lawsuit related to Trump's successful efforts to deceive the American public in the closing days of the 2016 Presidential election by way of a secret hush money payment made to Mr. Avenatti's client. Shortly thereafter, Mr. Avenatti became widely regarded as Trump and his allies' most effective and vocal critic both in the court of law and in the court of public opinion.

Mr. Avenatti spoke truth to power hundreds of times in the media and his efforts ultimately led to the criminal indictment and conviction of Mr. Cohen. He also prevailed in his federal civil lawsuit against Trump and Cohen. Further, because of his actions, Mr. Avenatti also became a significant threat to Trump and his re-election efforts. Indeed, the Washington Post quoted President Trump's close confidant and Chief Political Strategist, Steve Bannon, as stating that Mr. Avenatti was the single biggest threat to Trump's ability to be re-elected.

"[Avenatti]'s got a fearlessness," Bannon, the Republican strategist and former senior White House adviser, told Bill Maher on Friday night on HBO. "And he's a fighter. I think he'll go through a lot of that field, if he decides to stick with it, like a scythe through grass.

Alex Horton, *Steve Bannon thinks Michael Avenatti could be a threat to Trump in 2020. Avenatti thinks so, too,* Washington Post (September 29, 2018).[1] Also in September, 2018, Mr. Avenatti authored a New York Times op-ed calling for the indictment of Trump. Avenatti, Mi-

[1] See https://www.washingtonpost.com/politics/2018/09/29/steve-bannon-thinks-michael-

Accordingly, we request an immediate and full investigation into the following: (a) the targeting of Mr. Avenatti and his family; (b) the involvement of President Trump and his allies in the investigation of Mr. Avenatti and his family; and (c) the abuse of the resources and power of the IRS and Treasury Department to target and eliminate those Trump believed to be adverse to him, including but not limited to Mr. Avenatti. The seriousness of this matter and the urgency it demands cannot be overstated.

[2] See, https://www.nytimes.com/2018/09/13/opinion/michael-avenatti-trump-indictment-stormy-daniels.html

[3] In this regard, Mr. Avenatti notes the many documented instances in which former President Trump, either personally or through his lawyers, sought to use his power as the leader of the Executive Branch to target enemies in politics and the media for investigation, prosecution, and/or other retaliatory action, including Hillary Clinton, James Comey, Andrew McCabe, Peter Strzok, Jeff Sesso, and others. *See, e.g.,* Michael S. Schmidt and Maggie Haberman, *Trump Wanted to Order Justice Dept. to Prosecute Comey and Clinton,* N.Y. Times (Nov. 20, 2018), https://www.nytimes.com/2018/11/20/us/politics/president-trump-justice-department.html; Aaron Gregg and Josh Dawsey, *After Trump cited Amazon concerns, Pentagon reexamines $10 billion JEDI cloud contract process,* Wash. Post (Aug. 1, 2019), https://www.washingtonpost.com/business/2019/08/01/after-trump-cites-amazon-concerns-pentagon-re-examines-billion-jedi-...

Page 3 — Demand for investigation of unlawful politically motivated IRS audits of Michael Avenatti

We look forward to your immediate attention to this matter on unsurpassing concern regarding the integrity and political independence of the IRS. Please do not hesitate to contact me with any questions or concerns.

Sincerely,

David Bahr

---

3:21 PM · Jul 11, 2022 · Twitter Web App

**148** Retweets   **58** Quote Tweets   **547** Likes




**BAHR LAW OFFICES, P.C.**
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439
davebahr@mindspring.com

July 11, 2022

J. Russell George
Treasury Inspector General for Tax Administration
United States Department of the Treasury
901 D Street, SW, Suite 600
Washington, DC 20024-2169

Re: Demand for investigation of unlawful politically motivated IRS audits of Michael Avenatti.

Dear Mr. George:

Please be advised that this firm represents Mr. Michael Avenatti. We write to demand that you conduct an immediate and complete investigation into the likely misuse of the Internal Revenue Service and the Treasury Department by former President Donald J. Trump and his allies in order to target Mr. Avenatti for political and personal gain.

In March 2018, Mr. Avenatti filed a high profile lawsuit against then President Trump and his personal lawyer and alleged fixer, Michael Cohen. This lawsuit related to Trump's successful efforts to deceive the American public in the closing days of the 2016 Presidential election by way of a secret hush money payment made to Mr. Avenatti's client. Shortly thereafter, Mr. Avenatti became widely regarded as Trump and his allies' most effective and vocal critic both in the court of law and in the court of public opinion.

Mr. Avenatti spoke truth to power hundreds of times in the media and his efforts ultimately led to the criminal indictment and conviction of Mr. Cohen. He also prevailed in his federal civil lawsuit against Trump and Cohen. Further, because of his actions, Mr. Avenatti also became a significant threat to Trump and his re-election efforts. Indeed, the Washington Post quoted President Trump's close confidant and Chief Political Strategist, Steve Bannon, as stating that Mr. Avenatti was the single biggest threat to Trump's ability to be re-elected:

> "[Avenatti]'s got a fearlessness," Bannon, the Republican strategist and former senior White House adviser, told Bill Maher on Friday night on HBO. "And he's a fighter. I think he'll go through a lot of that field, if he decides to stick with it, like a scythe through grass.

Alex Horton, *Steve Bannon thinks Michael Avenatti could be a threat to Trump in 2020. Avenatti thinks so, too*, Washington Post (September 29, 2018).[1] Also in September, 2018, Mr. Avenatti authored a New York Times op-ed calling for the indictment of Trump. Michael Avenatti, *Mi-*

---

[1] *See*, https://www.washingtonpost.com/politics/2018/09/29/steve-bannon-thinks-michael-avenatti-could-be-threat-trump-avenatti-thinks-so-too/.

Case 8:19-cr-00061-JVS Document 1000-2 Filed 10/11/22 Page 74 of 137 Page ID
#:24011
Page 2 — Demand for investigation of unlawful politically-motivated IRS audits of Michael Avenatti.

chael Avenatti: The Case for Indicting the President, New York Times (Sept. 13, 2018).[2] Within weeks, the Internal Revenue Service launched a wide-ranging criminal investigation into Mr. Avenatti's tax returns, financial dealings, and businesses, as well as those relating to his ex-wife, a cancer survivor. There is substantial reason to believe that this was directed by Trump and his closest allies at the IRS and the Department of the Treasury in order to eliminate Mr. Avenatti as a political and personal threat.

As is now evident, from 2017 through early 2021, President Trump and those closest to him repeatedly abused their positions of public trust and misused the power of the United States government[3] a part of consistent efforts to eliminate the President's foes and continue Trump's presidency. And there were few, if any, greater foes than our client.[4]

Accordingly, we request an immediate and full investigation into the following: (a) the targeting of Mr. Avenatti and his family; (b) the involvement of President Trump and his allies in the investigation of Mr. Avenatti and his family; and (c) the abuse of the resources and power of the IRS and Treasury Department to target and eliminate those Trump believed to be adverse to him, including but not limited to Mr. Avenatti. The seriousness of this matter and the urgency it demands cannot be overstated.

---

[2] See, https://www.nytimes.com/2018/09/13/opinion/michael-avenatti-trump-indictment-stormy-daniels.html.

[3] In this regard, Mr. Avenatti notes the many documented instances in which former President Trump, either personally or through his lawyers, sought to use his power as the leader of the Executive Branch to target enemies in politics and the media for investigation, prosecution, and/or other retaliatory action, including Hillary Clinton, James Comey, Andrew McCabe, Peter Strzok, Jeff Bezos, and others. See, e.g., Michael S. Schmidt and Maggie Haberman, Trump Wanted to Order Justice Dept. to Prosecute Comey and Clinton, N.Y. Times (Nov. 20, 2018), https://www.nytimes.com/2018/11/20/us/politics/president-trump-justice-department.html; Aaron Gregg and Josh Dawsey, After Trump cites Amazon concerns, Pentagon reexamines $10 billion JEDI cloud contract process, Wash. Post (Aug. 1, 2019), https://www.washingtonpost.-com/business/2019/08/01/after-trump-cites-amazon-concerns-pentagon-re-examines-billion-jedi-cloud-contract-process; Matt Zapotosky, Peter Strzok, whose anti-Trump texts got him fired from the FBI, sues for reinstatement, Wash. Post (Aug. 6, 2019), https://www.washingtonpost.com/-national-security/peter-strzok-whose-anti-trump-texts-got-him-fired-from-the-fbi-sues-for-reinstatement/2019/08/06/eaf83060-b789-11e9-a091-6a96e67d9cce_story.html; Matt Zapotosky, Andrew McCabe sues FBI over firing, alleges plot by Trump to oust those disloyal to the president, Wash. Post (Aug. 8, 2019), https://www.washingtonpost.com/national-security/andrew-mccabe-sues-fbi-over-firing-alleges-plot-by-trump-to-oust-those-disloyal-to-the-president/2019/08/08/098315e8-b9f8-11e9-b3b4-2bb69e8c4e39_story.html.

[4] That being said, Mr. Avenatti does not appear to be alone as it relates to Trump and his allies abusing the power of the IRS and Treasury Department as part of an effort to punish Trump's enemies. See, e.g., Tony Romm, Josh Dawsey and Devlin Barrett, Congress seeks IRS probe amid suspicions that audits targeted Trump foes, Washington Post (July 7, 2022), https://www.washingtonpost.com/national-security/2022/07/07/irs-audit-comey-mccabe/.

Case 8:19-cr-00061-JVS Document 1000-2 Filed 10/11/22 Page 75 of 137 Page ID #:24012

We look forward to your immediate attention to this matter on unsurpassing concern regarding the integrity and political independence of the IRS. Please do not hesitate to contact me with any questions or concerns.

Sincerely,

David Bahr

# SENTENCING EXHIBIT 9

← **Tweet**

**Michael Avenatti** ✔
@MichaelAvenatti

· · ·

Breaking: Here is the letter sent to Rep. Neal by Mr. Avenatti's counsel requesting an investigation into Trump's abuse of the powers of the IRS and targeting Michael

---

**BAHR LAW OFFICES, P.C.**
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439
davebahr@mindspring.com

July 14, 2022

Representative Richard Neal
Chairman of House Ways and Means Committee
United States House of Representatives
372 Cannon House Office Building
Washington, DC 20515

Re: Demand for investigation of unlawful politically motivated IRS audits of Michael Avenatti.

Dear Representative Neal:

I am enclosing a letter demanding that Treasury Inspector General J. Russell George look into the politically motivated audit and investigation of our client, Michael Avenatti. It is our belief that the Internal Revenue Service's actions taken against Mr. Avenatti were politically driven retribution for his high profile, and very effective, opposition to former President Trump. We have learned that you are taking a leading role in the House's oversight of former President Trump's possible unlawful misuse of the IRS to target people Mr. Trump viewed as political enemies, such as former FBI officials James Comey and Andrew McCabe, with audits and investigations. Obviously, Mr. Avenatti's experience in this regard would be relevant to the House's review of this issue.

Please do not hesitate to contact me with any questions or concerns.

Sincerely,

David Bahr

Encl.- Lttr. to J. Russell George

---

9:48 AM · Jul 18, 2022 · Twitter Web App

# SENTENCING EXHIBIT 10



1  BAKER, KEENER & NAHRA, LLP
   Phillip Baker, Bar No. 169571
2  633 West 5th Street, Suite 4900
   Los Angeles, CA 90071
3  Tel:    (213) 241-0900
4  Fax:    (213) 241-0990

5  Attorneys for Respondent/Counter-
   Claimant EAGAN AVENATTI, LLP
6

7

8

9                                        JAMS

10                                   LOS ANGELES

11  JASON FRANK LAW, PLC,              Case No.  1220053114

12          Claimant,                  Hon. Judith M. Ryan (Ret.)
13                                      Hon. Terry Friedman (Ret.)
              vs.                       Hon. Steven J. Stone (Ret.)
14
    EAGAN AVENATTI, LLP,               **DECLARATION OF MICHAEL J.**
15                                      **AVENATTI IN RESPONSE TO ORDER**
            Respondent.                **ISSUED ON NOVEMBER 30, 2016**
16

17  EAGAN AVENATTI, LLP,

18          Counter-Claimant,

19            vs.

20  JASON FRANK LAW, PLC,

21          Counter-Respondent.

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────
DECLARATION OF MICHAEL J. AVENATTI

USAO_00344387

## DECLARATION OF MICHAEL J. AVENATTI

I, Michael J. Avenatti, declare:

1.     I am an attorney at law duly licensed to practice before all of the courts of the State of California.   I am a founding Partner of Respondent Eagan Avenatti, LLP ("EA").   I submit this Declaration in response to the Order issued on November 30, 2016.   I have personal knowledge as to all matters set forth in this Declaration, and if called to testify, could and would competently testify thereto.

2.     Following issuance of the Honorable Judge Terry Friedman's Order of October 27, 2016 in this matter, I undertook efforts to locate the tax returns ordered produced for the years 2013-2015 and produce them.   These efforts included instructing the employee within the firm responsible for the firm's accounting records to (1) search the firm's financial related files for copies of the returns; (2) search the firm's hard copy files located within two storage rooms at the firm for the returns; (3) search the firm's off-site storage facility for the returns and (4) search for the returns via e-mail.   Unfortunately, after each of these searches were conducted, the returns were unable to be located.   I am not certain as to why this, but I am aware that the firm moved in early 2015 and earlier this year had well over 125 banker's boxes of documents transferred and moved in connection with Mr. Jason Frank's departure from the firm.

3.     Following the firm's inability to locate the returns within its own files, the firm's outside accountant, Ms. Marjorie Hendricks, was contacted and inquiries were made as to whether she was in possession of the returns.   The firm subsequently learned that unfortunately, Ms. Hendricks was likewise not in possession of the returns.

4.     I then asked that the firm's internal files be searched again to ensure the firm was not in possession of the returns.   I also personally searched for the returns myself across approximately 2-3 hours.   Following these subsequent searches, it was confirmed that the firm did not have the returns.

5.     On November 17, 2016, mindful that it was necessary for the firm to promptly produce the returns, I signed a Form 4506 and instructed that it be immediately sent to the IRS pursuant to its instructions.   I did so in the interest of obtaining the returns as soon as possible.   A true and correct copy of the form I caused to be sent is attached hereto.

USAO_00344388

1    I declare under penalty of perjury under the laws of the State of California that the foregoing is

2  true and correct.

3    Executed this 1st day of December, 2016 at Newport Beach, California.

4

5                                                    Michael J. Avenatti

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

DECLARATION OF MICHAEL J. AVENATTI

USAO_00344389

Form **4506**

(Rev. September 2015)

Department of the Treasury
Internal Revenue Service

## Request for Copy of Tax Return

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506, visit *www.irs.gov/form4506.*

OMB No. 1545-0429

**Tip.** You may be able to get your tax return or return information from other sources. If you had your tax return completed by a paid preparer, they should be able to provide you a copy of the return. The IRS can provide a **Tax Return Transcript** for many returns free of charge. The transcript provides most of the line entries from the original tax return and usually contains the information that a third party (such as a mortgage company) requires. See Form 4506-T, Request for Transcript of Tax Return, or you can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." or call 1-800-908-9946.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first.<br><br>EAGAN AVENATTI, LLP | **1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions)<br><br>32-0210824 |
| **2a** If a joint return, enter spouse's name shown on tax return. | **2b** Second social security number or individual taxpayer identification number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)
EAGAN AVENATTI, LLP
520 NEWPORT CENTER DRIVE, SUITE 1400, NEWPORT BEACH, CA 92660

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5** If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

**Caution:** If the tax return is being mailed to a third party, ensure that you have filled in lines 6 and 7 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your tax return to the third party listed on line 5, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your return information, you can specify this limitation in your written agreement with the third party.

**6** Tax return requested. Form 1040, 1120, 941, etc. and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506. ▶   1065

Note: If the copies must be certified for court or administrative proceedings, check here . . . . . . . . . ☑

**7** Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than eight years or periods, you must attach another Form 4506.

| 12/31/2013 | 12/31/2014 | 12/31/2015 | |
|---|---|---|---|

**8** Fee. There is a $50 fee for each return requested. Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN, ITIN, or EIN and "Form 4506 request" on your check or money order.

| | | | |
|---|---|---|---|
| **a** Cost for each return . . . . . . . . . . . . . . . . . . . . . . . | | $ | **50.00** |
| **b** Number of returns requested on line 7 . . . . . . . . . . . . . . . . . | | | **3** |
| **c** Total cost. Multiply line 8a by line 8b . . . . . . . . . . . . . . . . | | $ | **150.00** |

**9** If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . . . . ☐

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer. Note: For tax returns being sent to a third party, this form must be received within 120 days of the signature date.

☑ **Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506. See instructions.**

Phone number of taxpayer on line 1a or 2a

949-706-7000

**Sign Here**

▶ Signature (see instructions)     Date  11/17/16

PARTNER
Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ Spouse's signature     Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.     Cat. No. 41721E     Form **4506** (Rev. 9-2015)

USAO_00344390

# SENTENCING EXHIBIT 11

```
 1                 UNITED STATES BANKRUPTCY COURT
 2                 CENTRAL DISTRICT OF CALIFORNIA
 3                       SANTA ANA DIVISION
 4
 5    IN RE:                    )        CERTIFIED
                                )        TRANSCRIPT
 6                              )
      EAGAN AVENATTI, LLP,      )   NO. 8:17-BK-11961-CB
 7                              )
                DEBTOR.         )
 8                              )
      _____)
 9
10
11
12
13        DEBTOR EXAMINATION OF MICHAEL AVENATTI, ESQ.
14                       PAGES 1 - 245
15      (PAGES 133 THROUGH 155 AND PAGES 174 THROUGH 190
16      WERE MARKED CONFIDENTIAL AND BOUND SEPARATELY)
17                   FRIDAY, MARCH 22, 2019
18                   LOS ANGELES,  CALIFORNIA
19
20
21
22
23
24    JOB NO. 3268985
      REPORTED BY SERENA WONG
25    CSR #10250, RPR, CCRR #200

                                               Page 1
```

USAO_01142929

```
1              UNITED STATES BANKRUPTCY COURT
2              CENTRAL DISTRICT OF CALIFORNIA
3                  SANTA ANA DIVISION
4
5   IN RE:                    )
                              )
6                             )
    EAGAN AVENATTI, LLP,      )  NO. 8:17-BK-11961-CB
7                             )
            DEBTOR.           )
8                             )
    _____)
9
10
11
12
13
14
15  THE DEBTOR EXAMINATION OF MICHAEL AVENATTI, ESQ.
16  TAKEN AT 345 350 W. 1ST STREET, LOS ANGELES,
17  CALIFORNIA, ON FRIDAY, MARCH 22,  2019, BEFORE
18  SERENA WONG, CSR #10250, RPR, CCRR #200, CERTIFIED
19  SHORTHAND REPORTER, IN AND FOR THE STATE OF
20  CALIFORNIA.
21
22
23
24
25
                                       Page 2
```

USAO_01142930

```
 1   APPEARANCES:
 2
     FOR THE DEBTOR:
 3
           SHULMAN, HODGES & BASTIAN
 4         BY:  RONALD S. HODGES, ESQ.
           100 SPECTRUM CENTER DRIVE
 5         SUITE 600
           LOS ANGELES, CALIFORNIA  92618
 6         949.340.3400
           RHODGES@SHBLLP.COM
 7
     FO THE CLAIMANT:
 8
           FRANK, SIMS, STOLPER
 9         BY:  ANDREW D. STOLPER, ESQ.
                JASON FRANK, ESQ.
10         19800 MACARTHUR PARKWAY
           SUITE 855
11         IRVINE, CALIFORNIA  92612
           949.201.2400
12         ASTOLPER@LAWFSS.COM
13
14   FOR THE RECEIVER:
           LANDAU, GOTTFRIED & BERGER, LLP
15         BY:  JOHN P. REITMAN, ESQ.
           1801 CENTURY PARK EAST
16         SUITE 700
           LOS ANGELES, CALIFORNIA 90067
17         310.557.0056
18         JREITMAN@LGBFIRM.COM
19
20
21
22
23
24
25

                                        Page 3
```

USAO_01142931

```
 1                          INDEX

 2

 3   WITNESS:  MICHAEL AVENATTI, ESQ.

 4

 5   EXAMINATION                                    PAGE

 6   MR. STOLPER                                      6

 7

 8

 9

10                INSTRUCTIONS NOT TO ANSWER

11                   PAGE        LINE

12                    16          2

                      22          10

13                    26          5

                      29          18

14                    44          22

                      45          15

15                    45          19

16

17

18

19

20              INFORMATION REQUESTED

21                    NONE.

22

23

24

25

                                             Page 4
```

Personal Court Reporters, A Veritext Company
818-988-1900

USAO_01142932

```
 1                    INDEX TO EXHIBITS
 2    EXHIBITS                                MARKED
 3    EXHIBIT 1                                 65
 4    EXHIBIT 4                                 94
 5    EXHIBIT 7                                111
 6    EXHIBIT 23  (RETAINED BY COUNSEL)        204
 7    EXHIBIT 25  (RETAINED BY COUNSEL)        205
 8    EXHIBIT 28  (RETAINED BY COUNSEL)        207
 9    EXHIBIT 28A                              207
10    EXHIBIT 47                                74
11    EXHIBIT 60                               216
12    EXHIBIT 61                               223
13    EXHIBIT 75                               233
14    EXHIBIT 76                                 6
15    EXHIBIT 82                                46
16
17
18
19
20
21
22
23
24
25
                                          Page 5
```

USAO_01142933

```
 1                    FRIDAY, MARCH 22, 2019
 2                   LOS ANGELES, CALIFORNIA
 3
 4                   MICHAEL AVENATTI, ESQ.
 5   was called as a witness, and having been first duly
 6   sworn, was examined and testified as follows:
 7
 8                         EXAMINATION
 9   BY MR. STOLPER:
10       Q    Good morning, Mr. Avenatti.  You understand
11   you're under oath?
12       A    Yes, sir.
13       Q    Mr. Avenatti, I first want to ask you some
14   questions about your productions in response to JFL's
15   notice.  On November 28, 2018, you were ordered by
16   Judge Scott to produce documents in response to the
17   notice; is that correct?
18       A    I don't know if it's correct or not as to
19   date.
20       Q    I'm going to go ahead and put up what I've
21   marked as Exhibit 70.  Sorry.  76.  Let's try this.
22   There you go.
23            (Exhibit 76 was marked.)
24       Q    BY MR. STOLPER:  Do you recognize that
25   document?
```

Page 6

USAO_01142934

```
 1              THE WITNESS:  I don't.
 2        Q    BY MR. STOLPER:  Mr. Avenatti, have you
 3   produced Eagan Avenatti's federal and state tax returns
 4   from 2013 to the present?
 5        A    I don't remember.  We may have.
 6        Q    Do you recall what steps you took to gather
 7   those tax returns and produce them to JFL Law, if, in
 8   fact, that happened?
 9              MR. HODGES:  Foundation; argumentative.
10              THE WITNESS:  I don't.
11        Q    BY MR. STOLPER:  Would you have done that
12   yourself or would you have instructed an employee to do
13   that?
14        A    Sir, I don't.
15        Q    Who has the tax returns or copies of the tax
16   returns from EA from 2013 to the present, other than
17   the IRS?
18        A    I think they're in the files of the firm in
19   storage.
20        Q    Mr. Avenatti, have you produced all of Eagan
21   Avenatti's agreements with Avenatti & Associates to
22   Jason Frank Law in response to Judge Scott's order?
23        A    Sir, I don't recall without looking at the
24   entirety of the production, as well as the productions
25   that were made prior to the order, because we were not
```

USAO_01142959

```
 1    what we had to.
 2           I may have disclosed it, but I have not
 3    reviewed the transcript.
 4       Q    Mr. Avenatti, who is Gregory Barela?
 5       A    Gregory Barela is currently on felony
 6    probation for making false statements in an effort to
 7    get paid money.  He's a former client of the firm.  I
 8    think he's been convicted two or three times of various
 9    felonies.
10       Q    Was Mr. Barela a client of Eagan Avenatti?
11       A    I don't recall which firm he was a client of.
12    I think -- I think he was a client of Eagan Avenatti,
13    but I'm not certain.
14           MR. STOLPER:  Your Honor, I'd like to go
15    ahead and publish the retention agreement between
16    Mr. Barela and Eagan Avenatti.  If it pleases the
17    Court, Mr. Barela's attorney is here, and he authorized
18    me to do so without a confidentiality objection.
19           THE COURT:  Is there any other objection
20    anyone wants to raise with that?
21           MR. HODGES:  I have not seen the document,
22    Your Honor.  If I may?  Thank you.
23           MR. STOLPER:  Without objection, may I
24    proceed, Your Honor?
25           THE COURT:  Hearing no objections, you can
```

Page 157

USAO_01143062

```
 1    STATE OF CALIFORNIA  )
                          ) ss
 2    COUNTY OF LOS ANGELES)

 3

 4                 REPORTER'S CERTIFICATION

 5

 6          I, Serena Wong, Certified Shorthand Reporter

 7    in and for the State of California, do hereby certify:

 8          That the proceedings were taken before me at

 9    the time and place herein set forth;

10          That the testimony and proceedings were

11    reported stenographically by me and later transcribed

12    into typewriting under my direction;

13          That the foregoing is a true record of the

14    testimony and proceedings taken at that time.

15

16          IN WITNESS WHEREOF, I have subscribed my name

17    on this date:  4/11/19.

18

19

20

21

22

23

24          Serena Wong, CSR No. 10250

25

                                              Page 246
```

USAO_01143134

# SENTENCING EXHIBIT 12

| In Re:<br><br>EAGAN AVENATTI, LLP<br><br>Debtor. | Case No.:<br><br>8:17-bk-11961-CB |
|---|---|

| Attorney or Party Name, Address, Telephone and FAX |
|---|
| Richard M. Pachulski (CA Bar No. 90073)<br>Ira D. Kharasch (CA Bar No. 109084)<br>Robert M. Saunders (CA Bar No. 226172)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: 310.277.6910<br>Facsimile: 310.201.0760 |

| OFFICE OF THE UNITED STATES TRUSTEE<br>SANTA ANA DIVISION | SUBMIT TO UNITED STATES TRUSTEE<br>– DO NOT FILE WITH COURT |
|---|---|
| In Re:<br><br>EAGAN AVENATTI, LLP<br><br><br><br>Debtor-In-Possession. | Case Number:<br>8:17-bk-11961-CB |
| | **DECLARATION OF DEBTOR REGARDING COMPLIANCE WITH UNITED STATES TRUSTEE GUIDELINES AND REQUIREMENTS FOR CHAPTER 11 DEBTORS IN POSSESSION** |

**Privacy Policy [Privacy Act of 1974, as amended (5 U.S.C 552a) and LBR 1002-1(e)].**

*Declarant acknowledges that they have redacted all personally identifiable information contained in this declaration and its attachments and further acknowledges that is the responsibility of the filing party, not the United States Trustee Program, to ensure compliance with this policy.*

*(1)   All "personal identifiers" must be redacted from documents filed with the USTP, including attachments. "Personal identifiers" are considered to be the following:*

    *(A)   Social Security Numbers. If an individual's Social Security number (SSN), or Individual Tax Payer Identification Numbers (ITIN) must be included in the document, only the last four digits of that number should be used.*

    *(B)   Financial Account Numbers. Only the last four digits of these numbers should be used;*

    *(C)   Dates of Birth. If an individual's date of birth must be included in the document, only the year should be used; and*

    *(D)   Names of Minor Children. If the name of a minor child must be mentioned, only the initials of that child should be used.*

1. <u>**REAL PROPERTY**</u>

  1.1.   For each property that debtor owns, leases, has an interest in, or is in the process of purchasing, including debtor's personal residence, declarant has attached the following documentation:

**Check All That Apply:**

☐   1.1.1.   Debtor owns a personal residence.  A Real Property Questionnaire for Principal Residence (USTLA-5.1) is attached hereto.

☐   1.1.2.   Debtor owns, leases, has an interest in, or is in the process of purchasing a total of **four (4) or less** parcels of real property.  For each such property, declarant has attached a Real Property Questionnaire (USTLA-5.2)

USAO_00061611

| In Re: | Case No.: |
|---|---|
| EAGAN AVENATTI, LLP　　　　　　　　　　Debtor. | 8:17-bk-11961-CB |

☐　1.1.3.　Debtor owns, has an interest in, or is in the process of purchasing a total of **five (5) or more** parcels of real property. Attached is an Owned Property Summary Sheet (USTLA-5.3) which identifies all such parcels of real property.

☑　1.1.4.　Debtor leases five (5) or more parcels of real property. Attached is a Leased Properties Summary Sheet (USTLA-5.4)

## 2.　BANK ACCOUNT INFORMATION

2.1.　Debtor has closed all pre-petition bank accounts indicated below. For each account that is closed, Debtor has attached a copy of a bank statement evidencing that the account has been closed. For each account that has not been closed, debtor has provided a detailed explanation as to why each account has not been closed.

　　　2.1.1.　Account Name: Operating Account
　　　　　　Depository: California Bank & Trust
　　　　　　Last 4 digits of Account Number: 2851
　　　　　　Date of Closure: May 30, 2017
　　　　　　Closing Balance: 0.00

　　　　　　**Upon receipt, the Debtor will forward the bank statement evidencing closure of this account.**

　　　2.1.2.　Account Name: Business Money Maximizer Plus
　　　　　　Depository: California Bank & Trust
　　　　　　Last 4 digits of Account Number: 7849
　　　　　　Date of Closure: See below*
　　　　　　Closing Balance: $100,040.28
　　　　　　Explanation if account has not been closed:
　　　　　　**\*This account, which secures the Debtor's credit card, has been frozen and is, accordingly, inaccessible.**

2.2.　All funds from the above-referenced pre-petition bank accounts were transferred to the following Chapter 11 debtor in possession bank accounts:

　　　2.2.1.　Account Name: General Account
　　　　　　Depository: California Bank & Trust
　　　　　　Last 4 digits of Account Number: 0313
　　　　　　Opening Date: May 23, 2017
　　　　　　Initial Deposit: $ 143,233.46
　　　　　　The beginning balance of this account differs from the ending balance of the pre-petition account because: This account was only recently opened.

　　　2.2.2.　Account Name: Payroll Account
　　　　　　Depository: California Bank & Trust
　　　　　　Last 4 digits of Account Number: 0321
　　　　　　Opening Date: May 23, 2017
　　　　　　Initial Deposit: $ -0-

USAO_00061612

| In Re: | | Case No.: | |
|---|---|---|---|
| EAGAN AVENATTI, LLP | | 8:17-bk-11961-CB | |
| | Debtor. | | |

The beginning balance of this account differs from the ending balance of the pre-petition account because: There was no prior Payroll Account and this account was only recently opened.

2.2.3    Account Name:   Tax Account
Depository:  California Bank & Trust
Last 4 digits of Account Number:   0339
Opening Date: May 23, 2017
Initial Deposit: $   -0-
The beginning balance of this account differs from the ending balance of the pre-petition account because:  There was no prior Tax Account and this account was only recently opened.

## 3.  INSURANCE COVERAGE

3.1.    Debtor will maintain appropriate insurance coverage for all estate property, including vacant land, throughout the pendency of this proceeding.

3.2.    Debtor has named the United States Trustee, 725 S. Figueroa Street, Suite 2600, Los Angeles, CA 90017, as an *additional interest party* on each and every insurance policy listed herein and any other policies, throughout the pendency of this proceeding.

3.3.    If, for any reason, an insurance policy shall lapse, not be renewed, or fails to be in full force and effect, debtor will *immediately* provide updated proof of insurance to the United States Trustee.

3.4.    The following policies are in effect as of the date of this declaration.

| | Name of Insurance Carrier | Type of Insurance | Policy Number |
|---|---|---|---|
| 3.4.1. | **Previously provided** | **Previously provided** | **Previously provided** |
| 3.4.2. | | | |
| 3.4.3. | | | |
| 3.4.4. | | | |

3.5.  *COPIES OF THE DECLARATION PAGE(S) for each policy have been previously provided.*

## 4.  PROOF OF REQUIRED CERTIFICATES AND LICENSES

4.1.    Debtor will maintain all appropriate certificates and licenses required by federal, state and local law for the lawful operation of debtor's business.

4.2.    The following certificates and licenses are in effect as of the date of this declaration:

| | Type of Certificate or License | Issuing Authority |
|---|---|---|
| 4.2.1. | **Previously provided** | **Previously provided** |
| 4.2.2. | | |
| 4.2.3. | | |
| 4.2.4. | | |

4.3.    *Attached hereto as Attachment 4 is a copy, or other proof, of each license or certificate listed above.*

USAO_00061613

| In Re: | | Case No.: | |
|---|---|---|---|
| EAGAN AVENATTI, LLP | | | 8:17-bk-11961-CB |
| | Debtor. | | |

5. **LIST OF INSIDERS**

The following constitutes a complete list of all insiders of the debtors, as that term is defined by 11 U.S.C. Section 101(31):

| | Name of Person | Relationship to Debtor |
|---|---|---|
| 5.1.1. | Michael J. Avenatti | Equity Owner |
| 5.1.2. | Michael Q. Eagan | Equity Owner |
| 5.1.3. | | |

☐ Additional sheets are attached hereto, marked Attachment 5, and incorporated herein by reference.

6. **FINANCIAL STATEMENTS**

Debtor has the following financial statements that were issued in the two year period prior to the filing of this bankruptcy: **The Debtor does not have financial statements. It is a closely-held law firm that does not produce them. The Debtor plans to include a balance sheet and Profit & Loss Statement in its amended and future monthly operating reports.**

☑ Debtor HAS NOT issued any financial statements in the two year period prior to the filing of this bankruptcy.

7. **HEALTH CARE BUSINESS**

☑ Debtor **IS NOT** a health care business as defined by 11 U.S.C. Section 101(27A).

☐ Debtor **IS** a health care business as defined by 11 U.S.C. Section 101(27A).

8. **TRUST AGREEMENTS**

☑ Debtor IS NOT a party to a trust agreement or a beneficiary under a trust agreement that holds property.

☐ Debtor IS a party to a trust agreement, or is a beneficiary under a trust agreement that holds property. Copies of all such trust agreements are attached hereto as Attachment 8.

9. **RECORDATION OF CHAPTER 11 PETITION**

☑ Debtor DOES NOT hold an interest in real property.

☐ Debtor HAS recorded a copy of the Chapter 11 petition in all counties in which it holds an interest in real property. Copies (or conformed copies) of each recorded petition are attached hereto as Attachment 9.

☐ Debtor has not been able to fulfill this requirement because:

_____

_____

10. **FEDERAL AND STATE TAX RETURNS**

Debtor has filed the following tax returns (list last two years for which returns have been filed). **The Debtor nor its accountant has copies of its 2014 and 2015 federal or state income tax returns. The Debtor will**

DOCS_LA:306048.1 20328/001

| In Re:<br>    EAGAN AVENATTI, LLP<br>                                    Debtor. | Case No.:  8:17-bk-11961-CB |
|---|---|

seek to obtain copies of them from the IRS and the State of California.

☑   Current tax returns have not been filed because:
    2016 taxes are under an extension.
    _____
    _____

## 11. EMPLOYEE BENEFIT PLANS

**This information has been previously provided.**

☑     **BUSINESS ENTITIES:** I, am the authorized agent of the debtor named in this case, declare under penalty of perjury that I have read the foregoing Declaration, and the information provided is true and correct to the best of my knowledge, information, and belief. I further declare that I have been authorized to file this declaration on behalf of the debtor.

DATED: May 30, 2017

                                    Signature of Authorized individual
                                    X _____
                                    Michael J. Avenatti,
                                    Managing Partner

☐     **INDIVIDUAL DEBTORS:** I declare under penalty of perjury that the information provided in the foregoing Declaration is true and correct to the best of my knowledge, information and belief.

DATED: _____          _____
                                    Signature of individual Debtor

                                    _____
                                    Printed Name of Individual Debtor

DATED: _____          _____
                                    Signature of individual Debtor

                                    _____
                                    Printed Name of Individual Debtor

5

| Attorney or Party Name, Address, Telephone and FAX | Richard M. Pachulski (CA Bar No. 90073) |
| | Ira D. Kharasch (CA Bar No. 109084) |
| | Robert M. Saunders (CA Bar No. 226172) |
| | Pachulski Stang Ziehl & Jones LLP |
| | 10100 Santa Monica Blvd., 13th Floor |
| | Los Angeles, CA 90067 |
| | Telephone: 310/277-6910 |
| | Facsimile: 310/201-0760 |

☐ Pro Se Debtor

| OFFICE OF THE UNITED STATES TRUSTEE LOS ANGELES DIVISION | SUBMIT TO UNITED STATES TRUSTEE – DO NOT FILE WITH COURT |
|---|---|
| In Re: <br><br> EAGAN AVENATTI, LLP <br><br> Debtor-In-Possession | Case Number: 8:17-bk-11961-CB <br><br> **LEASED PROPERTY SUMMARY SHEET** |

| | Property No. 1 | Property No. 2 |
|---|---|---|
| Address | 520 Newport Center Drive, Suite 1400, Newport Beach, CA 92660 | Storage Space #2, 500 Newport Center Drive, Newport Beach, CA 92660 |
| Store No. (if applicable) | Not Applicable | Not Applicable |
| Lessee | Eagan Avenatti, LLP | Eagan Avenatti, LLP |
| Address (and Store Name if applicable) | 520 Newport Center Drive, Suite 1400, Newport Beach, CA 92660 | 520 Newport Center Drive, Suite 1400, Newport Beach, CA 92660 |
| Lessor and Lessor's Address | The Irvine Company LLC, 620 Newport Center Dr, #150, Newport Beach, CA 92660 | The Irvine Company LLC, 620 Newport Center Dr, #150, Newport Beach, CA 92660 |
| Square Footage | 8,371 rentable square feet | 340 square feet |
| Monthly Base Rent | $50,226.00 | $680.00 |
| Monthly CAM | | |
| Total Amount Delinquent | | |
| Security Deposit | $59,761.00 | None |
| Lease Beginning and Ending Dates | 9/15/14 - 9/30/19 | January 1, 2013 (month to month) |
| Option Number and Duration | | |
| Status of Occupancy | Occupied | Occupied |

☑ __|__ Continuation sheets attached

I declare under penalty of perjury that the answers contained in the foregoing Leased Property Summary Sheet are true and correct to the best of my knowledge, information and belief.

Dated:

Eagan Avenatti, LLP
Print Name of Debtor

Signature of Debtor

Effective September 28, 2011

*USTLA 5.3*

USAO_00061616

| In Re: EAGAN AVENATTI, LLP | Case No.: 8:17-bk-11961-CB |
|---|---|
| Debtor. | |

| | Property No. 3 | Property No. 4 |
|---|---|---|
| Address | Storage Space #1497, 520 Newport Center Drive, Newport Beach, CA 92660 | Storage Space #3, 500 Newport Center Drive, Newport Beach, CA 92660 |
| Store No. (if applicable) | Not Applicable | Not Applicable |
| Lessee | Eagan Avenatti, LLP | Eagan Avenatti, LLP |
| Address (and Store Name if applicable) | 520 Newport Center Drive, Suite 1400, Newport Beach, CA 92660 | 520 Newport Center Drive, Suite 1400, Newport Beach, CA 92660 |
| Lessor and Lessor's Address | The Irvine Company LLC, 620 Newport Center Dr. #150, Newport Beach, CA 92660 | The Irvine Company LLC, 620 Newport Center Dr. #150, Newport Beach, CA 92660 |
| Square Footage | 64 square feet | 340 square feet |
| Monthly Base Rent | $128.00 | $680.00 |
| Monthly CAM | | |
| Total Amount Delinquent | | |
| Security Deposit | None | None |
| Lease Beginning and Ending Dates | January 19, 2015 (month to month) | January 1, 2015 (month to month) |
| Option Number and Duration | | |
| Status of Occupancy | Occupied | Occupied |
| | Property No. 5 | Property No. __ |
| Address | 1910 W. Sunset Blvd., Ste. 450, Los Angeles, CA 90026 | |
| Store No. (if applicable) | Not Applicable | |
| Lessee | Eagan Avenatti, LLP | |
| Address (and Store Name if applicable) | 520 Newport Center Drive, Suite 1400, Newport Beach, CA 92660 | |
| Lessor and Lessor's Address | Intl Church of the Foursquare, 1910 W. Sunset Blvd., Los Angeles, CA 90026 | |
| Square Footage | | |
| Monthly Base Rent | $5,218.17 | |
| Monthly CAM | | |
| Total Amount Delinquent | | |
| Security Deposit | None | |
| Lease Beginning and Ending Dates | August 1, 2016 (month to month) | |
| Option Number and Duration | | |
| Status of Occupancy | Occupied | |

USAO_00061617

# SENTENCING EXHIBIT 13

# Fwd:

**From:**    Tom Goeders ████████████

**To:**      Michael J. Avenatti <mavenatti@eaganavenatti.com>

**Date:**    Fri, 20 Oct 2017 16:54:53 -0700

---------- Forwarded message ----------
From: "Julie Newman" ██████████████████
Date: Oct 20, 2017 4:23 PM
Subject:
To: "Tom Goeders" ████████████████ "Marty Yeghishian" ███████████████ "Salina Rodriguez" ██████████████████
Cc:

Tom,

I received this email from my seller -

Hello Julie.

I had to collect myself to make the decision to move forward in cancelling escrow.  This situation has been making me physically ill and I have to do this to put closure to the continued disappointment of the delays caused by the buyer and his representatives.

I feel like I have been more than fair and extremely patient with them.  I thought we had an honest conversation and Michael made a commitment to close on 10/10 which was not met.  I am supposed to close escrow on my new house on 10/23 which is clearly not happening.  The request to see my settlement statement frankly is none of their business and has no relevance to them closing on the Parthenia house.  It seems to be another stall tactic that I cannot stand for.

I am puzzled how they would allow their buyer to lose $40k deposited to me in addition to the per diem they are required to pay.  In addition the risk of a lawsuit due to them not meeting their obligation.  I have incurred expenses in moving including but not limited to an extremely expensive short term lease on an apartment, movers and storage of my belongings, etc.  when in actuality I could have saved by not moving.

I am saddened and disheartened by the perception of them manipulating me and the process.

So it's with a heavy heart that I ask you proceed with the cancellation.  I in no way have faith that they are going to follow through in signing loan documents by tomorrow so that I can give my lender a favorable update.

Best Always,

Julie Newman, Realtor

# SENTENCING EXHIBIT 14

# RE: Parthenia CAR cancellation attached

**From:** Tom Goeders ███████████

**To:** Shanta Tiratsuyan ███████████████████

**Cc:** Salina Rodriguez ████████████████████, Mike Napolitano ███████████████ Julie Newman ██████████████████

**Date:** Tue, 07 Nov 2017 07:22:23 -0800

By the way, yesterday I sent Michael an email requesting an update that I could forward to you. I have not received a response as of yet

On Nov 7, 2017 7:14 AM, "Tom Goeders" ███████████████ wrote:

It appears to me that Michael makes the decisions. It was asked of me early on not to discuss the business dealings with Geoff.
According to our contracts, the trust is the client and Michael is special manager of that trust.

On Nov 7, 2017 6:57 AM, "Shanta Tiratsuyan" ███████████████████████ wrote:

Tom, I am perplexed, doesn't Geoff dictate what happens since he is the buyer?  Why is Michael driving this effort?

**Shanta Tiratsuyan**

Merger & Acquisition, Integration

**BrightView**

**From:** Tom Goeders [mailto:██████████████
**Sent:** Monday, November 06, 2017 10:37 AM
**To:** Shanta Tiratsuyan
**Cc:** Salina Rodriguez; Mike Napolitano; Julie Newman
**Subject:** RE: Parthenia CAR cancellation attached

Hi Shanta, I understand. This certainly wasn't the outcome I was hoping for. I will continue to follow up with Michael and keep you posted as to any new updates I learn of.

Tom

On Nov 6, 2017 9:03 AM, "Shanta Tiratsuyan" ███████████████████ wrote:

Tom, hope you are well. I am extremely troubled that a licensed attorney is the one that first obstructed the closing of escrow and now from the cancellation of escrow. We have been more than patient to get this resolved so Geoff and I can put this behind us. I am seriously considering contacting to the State Bar.

**Shanta Tiratsuyan**

Merger & Acquisition, Integration





**From:** Tom Goeders [mailto ████████████ ]
**Sent:** Wednesday, November 01, 2017 6:40 PM
**To:** Shanta Tiratsuyan
**Cc:** Salina Rodriguez; Mike Napolitano; Julie Newman
**Subject:** Re: Parthenia CAR cancellation attached

I received the following text response from Michael just now:

"I'm not signing that until I consult counsel."

On Nov 1, 2017 5:57 PM, "Shanta Tiratsuyan" < ███████████████████ > wrote:

Good evening Tom. Escrow has forwarded the DocuSign to be signed. Would you please process that today. Thank you.

**Shanta Tiratsuyan**
Merger & Acquisition, Integration



USAO_00097971
00098076

-------- Original message --------

From: Tom Goeders ████████████████

Date: 11/1/17 3:00 PM (GMT-08:00)

To: Salina Rodriguez ████████████████, Mike Napolitano ████████████████, Shanta Tiratsuyan ████████████ Julie Newman ████████████ Tom Goeders ████████████

Subject: Parthenia CAR cancellation attached

Please confirm receipt.

Shanta, if you would, please sign Item 1 as party cancelling.

Tom

USAO_00097972
00098076

# SENTENCING EXHIBIT 15

# Re: Update on late escrow 21923 Parthenia - interesting conversation

**From:**     Tom Goeders
**To:**       Mike Napolitano
**Date:**     Sat, 28 Oct 2017 11:26:15 -0700

I sent our buyer (atty) the recommendation to seek legal counsel.

Tom

On Sat, Oct 28, 2017 at 11:00 AM, Mike Napolitano                    wrote:

> There's an old saying    an attorney who represents themselves has a fool for a client! LOL
>
> This may be about to get interesting!
>
> **Mike Napolitano**
>
> **Broker**
>
> **Keller Williams Realty**
>
> **CalBRE #00686739**
>
> **cell & text**
>
> *"Let my experience guide you to success"*
>
> **From:** Tom Goeders [mailto                    ]
> **Sent:** Saturday, October 28, 2017 10:59 AM
> **To:** Mike Napolitano
> **Subject:** Re: Update on late escrow 21923 Parthenia - interesting conversation
>
> This buyer is an attorney : )

Tom



On Sat, Oct 28, 2017 at 10:56 AM, Mike Napolitano ▮▮▮▮▮▮▮▮▮▮ wrote:

Yes it will require Buyer to sign too. Release of funds is just an action as a part of the contract. The Contract and Escrow Instructions need to be cancelled by both parties. You should recommend that your buyer seek legal counsel and do it in an email, to document it. We don't need them coming after us.

**Mike Napolitano**

**Broker**

**Keller Williams Realty**

**CalBRE #00686739**

▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ **cell & text**

*"Let my experience guide you to success"*

**From:** Tom Goeders [mailto▮▮▮▮▮▮▮▮▮
**Sent:** Saturday, October 28, 2017 10:34 AM
**To:** Mike Napolitano
**Subject:** Re: Update on late escrow 21923 Parthenia - interesting conversation

Hi Mike,

So this one is still draggin on. Our buyer still has not performed. Seller wants to cancel, sent demand to close, then cancellation. Since the deposit is already released, does cancellation still require sigs by both parties?

thx!

Tom

On Fri, Sep 8, 2017 at 10:11 AM, Tom Goeders▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:

Haha thx. Yes, deposit has been released.

On Sep 8, 2017 10:07 AM, "Mike Napolitano" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮> wrote:

Tom

That about sums up our legal system! Threats etc.

Did the buyer release funds to the seller? Just wondering.

So, get in, buckle up, and hold on!

Thanks for the update.

**Mike Napolitano**

**Broker**

**Keller Williams Realty**

**CalBRE #00686739**

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ **cell & text**

*"Let my experience guide you to success"*

**From:** Tom Goeders [mailto:▮▮▮▮▮▮▮▮▮▮▮▮]
**Sent:** Friday, September 08, 2017 9:46 AM
**To:** Mike Napolitano
**Subject:** Update on late escrow 21923 Parthenia - interesting conversation

Hi Mike,

Just wanted to give you an update.

Our client (attorney acting as special manager for a trust), the listing agent and myself had a conference call, suggested by the attorney. I took notes. The most notable part of the conversation was, after the listing agent said she'd  have to put the house back on the market, our client the attorney said, "and we'll do what we need to do to protect our client's rights and interests, putting a liz pendens on the property or going to arbitration." The listing agent responded with "but you're out of contract" to which the attorney replied "that's why God created courts and arbitration."

I'm still hopeful we get some sort of solution but I figured when someone threatens legal action, I needed to tell someone.

I don't remember this part of Real Estate school!

Escrow is past 30 days late...

trust has not been finalized as attorney is waiting on special needs trust terms approval from LA County, who was sued by his client for personal injury.

Tom

# SENTENCING EXHIBIT 16

# RE: 21923 Parthenia St., West Hills, CA

**From:**    Tom Goeders ███████████████

**To:**      Shanta Tiratsuyan███████████████████████

**Date:**    Wed, 01 Nov 2017 12:20:07 -0700

Hi Shanta,

I don't even know where to start. Of the people involved in this escrow, I feel most for Geoff and for you.
Personally this has been the most frustrating escrow of my 17 years in this business.
I can assure you that I have communicated continuously with Michael. Unfortunately, i do not have any
control over his actions.
I have physically wheeled Geoff into every house he saw among other personal tasks requires for a
paraplegic. I wanted nothing more than for him to get the house he wanted.
I too am deeply saddened and extremely frustrated at the turn of events.
I will continue to relay messages to Michael in hopes the he responds by the end of the day.

On Nov 1, 2017 11:33 AM, "Shanta Tiratsuyan" ████████████████████████ wrote:

Tom, I'd like to say that I am saddened by the turn of events.

To think that you and Michael have allowed the buyer to lose the earnest money along with
potentially the per diem set in the addendums and other costs which I will seek to recover is
disheartening.  And to think that I have been patient and honest with you all from the beginning
and how this all turned out is sickening.

Now that I have closed escrow on my new house, I will move forward as described below if I don't
hear back by the close of business today.  I will also pursue filing a grievance with the BAR with
how unprofessional Michael has been.

I wish your buyer all the best and hope he knows how poorly he has been represented in this
transaction.

**Shanta Tiratsuyan**

Merger & Acquisition, Integration

USAO_00099876
00099982



**From:** Tom Goeders [mailto ████████████] ▬
**Sent:** Tuesday, October 31, 2017 9:41 AM
**To:** Shanta Tiratsuyan
**Cc:** Julie Newman
**Subject:** Re: 21923 Parthenia St., West Hills, CA

Thank you Shanta. I see Michael has received this. I have forwarded the message to him again.

On Oct 31, 2017 8:40 AM, "Shanta Tiratsuyan" ██████████████████████ wrote:

---

**Sent:** Tuesday, October 31, 2017 8:34 AM
**To:** 'mavenatti@eaganavenatti.com'; 'tomgoegers ████████
**Cc:** 'Julie Newman'; 'marty██████████████'jregnier@eaganavenatti.com'; Monica Macias; Salina Rodriguez ████████████████
**Subject:** 21923 Parthenia St., West Hills, CA
**Importance:** High

Michael/Tom,

On September 1, 2017 and again October 12, 2017, you were served with a failure to perform which was ignored.  On October 20, 2017, you were then sent a cancelation notice by the listing agent whom you have also ignored.  Simply put, the buyer has breached the purchase and sale agreement and is knowingly and intentionally attempting to tie up the property by doing nothing.  Demand is hereby made that pursuant to paragraph #22 (also RPA item #14 & #21) of the Purchase and Sale agreement dated 05/31/17, the buyer participate in mediation post haste.  We will agree to any of the mediation services commonly used in Los Angeles.  If you do not agree to mediate and the immediate scheduling of same by the close of business Wednesday,  November 1, 2017, we will hire counsel and initiate arbitration. Of course, the buyer will be responsible for all damages, legal fees and costs resulting from the breach of the agreement and intentional refusal to cancel escrow that has interfered with our ability to market our home for sale.

Respectfully,

**Shanta Tiratsuyan**

Senior Director

Merger & Acquisition, Integration



USAO_00099878
00099982

# SENTENCING EXHIBIT 17

Tweet

**Michael Avenatti** ✔
@MichaelAvenatti

···

A lot of misinformation being thrown about re my tax returns. Be clear - on Aug. 12 (This Week interview on ABC), I stated I would release my tax returns if I ran. On Sept. 28 (Texas Tribune interview), I stated the same thing. Both on video. My position remains the same.

8:46 PM · Oct 21, 2018 · Twitter Web Client

**1,442** Retweets   **88** Quote Tweets   **8,345** Likes

Tweet your reply

Reply

# SENTENCING EXHIBIT 18

Message

| | |
|---|---|
| **From**: | "Michael J. Avenatti" [mavenatti@eaganavenatti.com] |
| on behalf of | Michael J. Avenatti [/O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MICHAEL J. AVENATTI] |
| **Sent**: | 4/6/2018 9:27:29 PM |
| **To**: | Judy K. Regnier |
| **Subject**: | Fwd: Interview request regarding Tully's disputes |

Call this guy and confirm he received the below email.

Michael J. Avenatti, Esq.
Eagan Avenatti, LLP
520 Newport Center Drive, Ste. 1400
Newport Beach, CA  92660
Tel: (949) 706-7000
Fax: (949) 706-7050
Cell: (949) 887-4118
mavenatti@eaganavenatti.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

Begin forwarded message:

> **From:** "Michael J. Avenatti" <mavenatti@eaganavenatti.com>
> **Date:** April 6, 2018 at 12:10:59 PM PDT
> **To:** Lewis Kamb ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
> **Subject: RE: Interview request regarding Tully's disputes**
>
> Off the Record:
>
> Lewis - Please be advised that in the event you or the Seattle Times makes any reference to any alleged criminal conduct, charges of criminal conduct or any other such investigation (including a bar investigation), I will bring suit against you and the Seattle Times for defamation (among other things).  I have never been arrested or investigated criminally in my lifetime.  And I have spotless record with the State Bar.  Nor is there ANY evidence of ANY investigation.
>
> Further, the mere suggestion, based on some alleged complaint filed by David Told, who has an ax to grind, would be highly damaging to my reputation and without sufficient basis.  Moreover, where is the double sourcing for the fact that the complaint was even filed or that it has not already been disregarded and thrown-out by the State Bar as baseless.  As I am sure you aware, bar complaints are confidential in California until they result in charges - if ever - because the potential damage to any attorney's reputation can be so great if it is misunderstood.  Despite this, Mr. Nold violated his own ethical obligations and purposely provided a copy to you in an effort to get you and the Times to do his bidding for him.  This is highly inappropriate.
>
> Please inform your editors as to the content of this email.  You are hereby on notice.
>
> Michael

Michael J. Avenatti, Esq.
Eagan Avenatti, LLP
520 Newport Center Drive, Ste. 1400
Newport Beach, CA  92660
Tel:  (949) 706-7000
Fax: (949) 706-7050
Cell: (949) 887-4118
mavenatti@eaganavenatti.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

---

**From:** Michael J. Avenatti
**Sent:** Thursday, April 05, 2018 5:24 PM
**To:** Lewis Kamb
**Subject:** Re: Interview request regarding Tully's disputes

On the record - Long ago.

Off the record - I will pass your info on to the principles and their counsel so they can contact you if they wish.

Have a nice evening.

Michael J. Avenatti, Esq.
Eagan Avenatti, LLP
520 Newport Center Drive, Ste. 1400
Newport Beach, CA  92660
Tel:  (949) 706-7000
Fax: (949) 706-7050
Cell: (949) 887-4118
mavenatti@eaganavenatti.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

On Apr 5, 2018, at 8:17 PM, Lewis Kamb ████████████████ wrote:

> Thanks for the message.
> Who is the new ownership group? Can you provide a specific name? When did you divest your stake in Global Baristas?
>
> ---
> **From:** Michael J. Avenatti [mailto:mavenatti@eaganavenatti.com]
> **Sent:** Thursday, April 05, 2018 5:15 PM

**To:** Lewis Kamb ████████████████

**Subject:** Re: Interview request regarding Tully's disputes

"Mr. Nold is widely known as an unethical 'hack' of a lawyer who routinely files baseless complaints. He is a disgrace to the legal profession and is consumed by jealousy of other attorneys so he makes baseless allegations.  His most recent conduct is yet more of the same - I hope he gets the help he needs.

I will have no further comment on the situation involving Tully's.  You will have to ask your questions to the new ownership group who long ago took on responsibility for various tax liabilities etc."

Michael Avenatti
Outside Legal Counsel

USAO_00636822

# SENTENCING EXHIBIT 19

Before Stormy Daniels, her attorney faced allegations of dubious business dealings at Tully's Coffee | The Seattle Times

**Local News**

## The Seattle Times

# Before Stormy Daniels, her attorney faced allegations of dubious business dealings at Tully's Coffee

Originally published April 7, 2018 at 2:20 pm | *Updated April 7, 2018 at 3:20 pm*



📷 **1 of 2** | Michael Avenatti, lawyer for Stormy Daniels. (Richard Drew/The Associated Press)

**Michael Avenatti has become a cable news celebrity for accusing Donald Trump of trying to silence his porn-star client, but his involvement with Tully's Coffee has been a source of legal headaches.**

Before Stormy Daniels, her attorney faced allegations of dubious business dealings as Tully's owner | The Seattle Times



By Lewis Kamb 🐦

*Seattle Times staff reporter*

He's become famous as the brash lawyer for the porn star who purportedly bedded the future president, but before Michael Avenatti accused Donald Trump and his attorney of a payoff scheme to muzzle Stormy Daniels, he faced allegations of dubious business dealings as owner of a flailing coffee chain.

Since his investment firm bought bankrupt Tully's Coffee for $9.15 million at auction five years ago, Avenatti's company has been named in more than 50 state and federal legal complaints, including commercial lawsuits, breach of lease actions and warrants for unpaid taxes, court records show.

All the while, Tully's has shuttered store after store — from Everett to Bellevue, Tacoma to Seattle, and beyond — with employees left in limbo, landlords left unpaid and customers left holding now seemingly worthless loyalty cards.

And late last month, the list of grievances against Avenatti only intensified, with new allegations of wrongdoing.

In a complaint submitted to the California State Bar Association — and cc'd to the U.S. Attorney's Office in Seattle — Bellevue attorney David Nold asserts Avenatti carried out an illegal "pump and dump" scheme through his Washington state-registered Tully's ownership firm, Global Baristas US, LLC.

Nold's complaint contends that while Avenatti ran the company, he fleeced nearly $6 million in federal and state tax withholdings — money meant to be held in trust for payment of quarterly taxes — from the paychecks of Tully's employees.

The complaint also claims Avenatti fraudulently transferred $100,000 from the Tully's operation last year to retain lawyers for his California law firm's unrelated bankruptcy.

"Michael Avenatti's actions in connection with Global Baristas US, LLC have caused significant damage to the State of Washington, the federal government and numerous private entities," according to Nold, who represents Bellevue Square, Ellenos yogurt and other clients who have recently sued the Tully's firm. "And they implicate his fitness to practice law."

Officials for the California bar won't say whether they're investigating.

Avenatti, 47, an aggressive class-action litigator based in Newport Beach, California, declined to be interviewed. In an email, he generally disputed the allegations and attacked Nold's character.

"Mr. Nold is widely known as an unethical 'hack' of a lawyer who routinely files baseless complaints," Avenatti's email said. "He is a disgrace to the legal profession and is consumed by jealousy of other attorneys so he makes baseless allegations. His most recent conduct is yet more of the same — I hope he gets the help he needs."

Avenatti provided no evidence for his attack against Nold, who has no record of disciplinary actions or ethical violations, according to the Washington State Bar website.

Nold brushed off the comment. "He's mad because we wouldn't be bullied," he said.

Avenatti's email also did not address questions about Tully's.

"You will have to ask your questions to the new ownership group who long ago took on responsibility for various tax liabilities etc.," he wrote, declining to specify who those owners are or when he divested his stake.

In various court filings and testimony last year, Avenatti described himself as the principal or chairman of the Tully's chain. During a July deposition, he testified his law firm wholly owned Doppio Inc., a Delaware corporation that he said controlled 80 percent of Tully's ownership firm, Global Baristas US.

Current state corporate registration records also list only Avenatti among "governing persons" for the similarly named Global Baristas, LLC, which is registered as the controlling party for Global Baristas US.

Robert Sifuentez, 35, who worked for Tully's for nine years until the store he managed in Seattle's Virginia Mason Medical Center closed last month, said Avenatti's "name was the only name on my paycheck ... up until we closed."

When the last few Tully's stores closed in March, company spokeswoman Suzy Quinn described the moves as temporary under a long-term "rebranding process."

But internal memos detailed an unplanned crisis after the coffee supplier for Tully's cut it off. And in a federal lawsuit filed in January, Vermont-based coffee conglomerate Keurig Green Mountain — which actually owns the Tully's trade name — claimed Global

Baristas failed to pay $500,000 in licensing fees for the past two years. The suit contends Global Baristas had to stop using the Tully's name.

Meanwhile, Tully's stores have been evicted from several locations, including its corporate offices on Western Avenue, court records show.

## Partner sued

Global Baristas' purchase of the Tully's chain drew controversy from the start. In August 2013, less than two months after the deal closed, Avenatti's business partner sued him, claiming misrepresentation.

That partner, actor Patrick Dempsey of TV's "Grey's Anatomy," contended in his suit Avenatti told him Global Baristas had enough money to operate the more than 40 Tully's stores. But Dempsey, the suit claims, soon discovered Avenatti secretly had taken out a $2 million loan with an exorbitant 15 percent interest rate, pledging all Tully's assets as security, the suit claimed. Avenatti quickly settled, and Dempsey walked away from the venture.

The case proved a harbinger of legal actions to come, including a battle against Nold's client, Bellevue Square. For years, the shopping mall's owner, Kemper Development, leased spaces for Tully's stores in the Lincoln Square, Bellevue Place and Bellevue Square shopping centers.

After Kemper Development opted not to renew leases for Tully's stores in Lincoln Square and Bellevue Place, Global Baristas vacated the Bellevue Square store amid a 10-year lease and a costly remodel.

In 2015, Bellevue Square and B-Squared Construction each sued, both claiming Global Baristas broke the lease and hadn't paid for remodeling work done at its space in the mall.

Avenatti disputed both lawsuits. He claimed his firm didn't pay the contractor due to unspecified construction defects, and contended Global Baristas only agreed to a re-up at Bellevue Square after Kemper Development assured it would renew Tully's leases at its two other shopping centers. Such promises weren't included in the lease agreement, but Avenatti claimed they were described in emails between him and his underlings.

But when a court ordered Global Baristas to produce the emails, Avenatti failed to do so. Last year, a judge granted default judgments in favor of Bellevue Square and imposed

Case 8:19-cr-00061-JVS Document 1000-3 Filed 10/11/22 Page 128 of 137 Page ID #:24065
Before Stormy Daniels, her attorney faced allegations of dubious business dealings | The Seattle Times

sanctions and fines against Global Baristas, ordering it to also cover Bellevue Square's legal bills.

While Nold pursued collecting more than $1 million from Global Baristas last year, he learned Avenatti's private law firm was in bankruptcy proceedings.

In March, arbitration on a former law partner's claim that Avenatti's firm owed him $14 million was about to start when a mysterious creditor filed an involuntary Chapter 11 petition against the law firm for $28,700 in unpaid services, according to court filings. The petition plunged Avenatti's firm into bankruptcy proceedings, postponing the arbitration.

A federal bankruptcy judge later commented the case had a "stench of impropriety," and the mystery creditor was never located. Avenatti later transferred $100,000 from Global Baristas to retain a Florida law firm to handle the bankruptcy, court records show.

After Nold argued the transfer was fraudulent due to Global Baristas' obligations to his client, the Florida attorneys returned Avenatti's check, records show.

Nold's firm soon began tracking down Global Barista's bank accounts to garnish for debts owed to Bellevue Square.

## Turn for the worse

By last fall, daily operations at Tully's stores took a noticeable turn for the worse, according to three former employees interviewed for this story.

Alki Bakery, Ellenos yogurt, Dillanos coffee and other vendors weren't consistently getting paid, they said, and deliveries became sporadic.

Global Baristas also wasn't keeping up with state and federal taxes, court records show. For years, the company lagged in paying quarterly taxes, leading Washington's Revenue and Labor and Industries departments to repeatedly file warrants against it. Global Baristas often took months to make good on its delinquent tax debts.

As of last week, more than $1 million of court-filed warrants for unpaid state taxes remained unresolved. The IRS also filed liens in July and August against Global Baristas and Avenatti for more than $5 million in unpaid taxes dating back to 2015. No releases have since been filed showing that debt was paid.

In September, when Boeing announced a dozen Tully's stores in its facilities around Puget Sound would close, the company issued a statement that business had "never been stronger."

But lawsuits claiming unpaid rents mounted over the next few months. Among those winning default judgments was Eisenhower Carlson, a Tacoma law firm that represented Tully's in its dispute with Bellevue Square. The firm received a $93,000 judgment against its former client.

Global Baristas often hasn't responded to recent legal actions against it, records show.

"We have found Michael Avenatti not to be an easy person to deal with," noted Matthew Green, a Seattle lawyer who represents three Tully's landlords.

After Green won default judgments and orders to evict Tully's from its corporate office on Western Avenue and a downtown Seattle store, his clients sought to recoup some of the debts by auctioning off equipment left behind.

Shortly before a sheriff's auction was set to occur, Avenatti filed claims the property didn't belong to Global Baristas, the subject of the judgment, but to another LLC, Global Baristas US. The move delayed the auctions, Green said, forcing him to seek judgments against both LLCs.

Avenatti made a similar claim when Bellevue Square sought to auction off left behind items there, Nold said.

"He tries to use the LLCs to confuse everybody," said Nold. "Only he was telling me exactly the opposite — that his other LLC owned the equipment."

Several lawyers for clients with judgments against Global Baristas said they don't expect to collect a dime. But Nold has been relentless, collecting more than $1 million against Avenatti.

"We would garnish Key Bank, then he would move the money to a different bank, then to another," Nold said. "But it didn't matter, we were finding it. He finally got tired, and just paid us."

Avenatti is now appealing the Bellevue Square case to Washington's Court of Appeals.

Outside Washington, Global Baristas faces several other thorny legal disputes. Last week, Daytona International Speedway filed papers in a federal court in Florida seeking

confirmation of a $760,000 arbitration award against Global Baristas related to an undisclosed contract breach.

Unused credit on loyalty cards may seem piddling by comparison, but some longtime Tully's customers say they're upset. Nancy Nordstrand said she and her husband each recently made deposits on their cards to get a 20 percent bonus offered at their local Tully's. Now, with that store closed, the couple is out $187, she said.

"The irritation for me is they could've stopped those promotions if they thought they were going down," said Nordstrand, who complained to the state attorney general after her calls to Tully's corporate went unanswered.

Despite such Tully's turmoil, Avenatti's fame is only burgeoning.

The attorney, whose website boasts of more than $1 billion in verdicts and settlements won for clients, has become a fixture on cable TV, thanks to his latest high-profile case.

Sifuentez, the former Tully's employee, said he can't help but see the irony.

"He's getting all this positive press for the Stormy Daniels thing, but at the same time, this (expletive) just cost hundreds of people their jobs," he said.

*Seattle Times business editor Rami Grunbaum and news researcher Miyoko Wolf contributed to this report. It contains material from newspaper's archive. Lewis Kamb: lkamb@seattletimes.com or (206) 464-2932. Twitter @lewiskamb*

# SENTENCING EXHIBIT 20

Morgan Witos
Glenn Berman

8/23/2021

Brett/Alex/Remoun
11:30AM

(1)

10/2009 — 10/2014 employment
at law firm. Book keeping
& other tasks. She is not
a CPA & never said she
was a CPA.

5/2009 she graduated from Long
Beach St.

She used Quickbook to track payables
& make paymts, & to track general law firm expenses

TABS was used to track costs/
expenses & attorney time/hours for
clients.

Bills to clients would be
generated thru TABS whether
or not bills were paid or
not by the law firm.

After 10/2014 — she had no
further dealing with law firm
or their finances or client accounting

Once a settlemt came in they would

USAO_01144108

run a report from TABS showing

② the costs associated with the client. She would have run the TABS report & Judy would have handled the rest from there.

fim

She had access to some of the law firm accounts including the law operating account & reconcile with Quickbooks.

No access to Avenatti & Assoc bank account

She reported to Judy.

She left the firm for personal reasons

The firm was not doing well financially by the time she left in 10/2014.

She had nothing to do with the Johnson case when the settlement money came in.

She had Nothing to do with Alex Gardner case settlement
She had " " " " Greg Barela case
She had " " " " Michelle Phan case

The last time she spoke to
MA would have being approx. 2014,
shortly after leaving the firm.

③ Quickbooks is how they handled
payables for the firm — & make paymnt

TABS was is how they tracked
client expenses & track attorny
time.

USAO_01144110

# SENTENCING EXHIBIT 21



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

## Memorandum of Interview

| | | | |
|---|---|---|---|
| **Investigation #:** | 1000290795 | **Location:** | Via Teleconference |
| **Investigation Name:** | Michael Avenatti | | |

| | |
|---|---|
| **Date:** | August 29, 2022 |
| **Time:** | Approximately 11:10 AM – 12:11 PM |
| **Participant(s):** | Amelia Racine, Witness |
| | Ryan Roberson, Special Agent |
| | Melinda Ball, Supervisory Special Agent |
| | Brett Sagel, Assistant United States Attorney |
| | Ranee Katzenstein, Assistant United States Attorney |
| | David Gueber (ID 5989), IRS Contractor (Lionbridge Interpreter Service) |

On the date and time listed above, Assistant United States Attorney's Brett Sagel (AUSA Sagel) and Ranee Katzenstein (AUSA Katzenstein), along with Special Agent Ryan Roberson, Supervisory Special Agent Melinda Ball, and IRS Contractor (French Interpreter) David Gueber spoke with Amelia Racine (Racine) via Teleconference. At the outset of the interview, AUSA Sagel thanked Racine for voluntarily speaking to us, and informed Racine she does not need to disclose privileged information. Racine is represented by Filippo Marchino (Marchino) but did not need him on the call. Racine had no reservations about providing information related to Michael Avenatti (MA). Racine voluntarily provided the following information:

1. Racine suffered a head injury many years ago during an accident while working as a model on a project. Racine retained Marchino and X-Law Group to represent her. Shortly thereafter XLG merged with MA's law firm, and then Racine met MA for the first time. A settlement was reached for $15,000.00 between Racine and Bob Gordon, the producer of the project Racine was working on when she was injured. To this date, Racine never received any funds from the $15,000.00 settlement.

2. The settlement amount of $15,000.00 was intended to cover Racine's hospital fees incurred from her head injury. According to the settlement agreement, the settlement was with Bob Gordon, UpMarket, and Illustra films.

3. Racine confirmed the funds from the $15,000.00 settlement were sent to MA in approximately September 2018.

4. Racine was first informed of the $15,000.00 settlement from Marchino's assistant, Tom. Both MA and Marchino also informed Racine of the $15,000.00

settlement. Racine spoke with MA several times in regard to the $15,000.00 settlement, mostly over the phone but occasionally over texts and e-mails as well. Racine still has the text messages with MA, but is not sure about emails.

5.  Racine reached out to MA several times to inquire when she would receive her settlement funds. MA always had an excuse why she wasn't being paid and oftentimes stated, "Next week." Eventually XLG cut ties with MA and then MA stopped answered Racine's calls and texts.

6.  MA never told Racine she was not entitled to the $15,000.00.

7.  Racine does not have any issues with her name, and the information she provides to us, being used in court.

8.  Racine is currently employed as a model and actress. Racine had another accident while working, but only XLG represented her in that matter.

9.  Racine suffered financial hardship when MA stole the $15,000.00 from her. Racine relied on her boyfriend to financially support her because she was unable to work due to her head injury and regularly losing her balance. Racine also needed follow-up care from the hospital.

AUSA Sagel informed Racine that the government will do its best to provide the funds MA stole back to Racine, but despite its best efforts, the government is not likely to do so due a lack of funds for victims. Racine is willing to provide any information that is needed. AUSA Sagel thanked Racine for her time and the interview was concluded at 12:11 PM.

I prepared this memorandum on August 29, 2022, after refreshing my memory from notes made during and immediately after the interview with Racine.

Ryan Roberson
Special Agent

Melinda Ball
Supervisory Special Agent