E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
Assistant United States Attorney
Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2432
     Facsimile: (213) 894-6269
     Email:    Ranee.Katzenstein@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone:  (714) 338-3598
     Facsimile:  (714) 338-3708
     Email:     Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>MICHAEL JOHN AVENATTI,<br><br>          Defendant. | SA CR No. 19-061-JVS<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING POSITION (CR 1016); MEMORANDUM OF POINTS AND AUTHORITIES; APPENDIX; SUPPLEMENTAL DECLARATION OF SPECIAL AGENT REMOUN KARLOUS; EXHIBITS |

     Plaintiff United States of America, by and through its counsel of record the United States Attorney and Assistant United States Attorneys Brett A. Sagel and Ranee A. Katzenstein, hereby files its response to defendant Michael John Avenatti's Sentencing Memorandum and Objections to the PSR (CR 1016).  This response is based on the

attached Memorandum of Points and Authorities, the attached appendix, the attached supplemental declaration of Special Agent Remoun Karlous and exhibits thereto, the files and records in this case including the government's Sentencing Memorandum (CR 1000), and such further evidence and argument as the Court may receive at the hearing on defendant's sentencing.

Dated: October 24, 2022            Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                   _____/s/_____
                                   BRETT A. SAGEL
                                   RANEE A. KATZENSTEIN
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                                                   PAGE

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    DEFENDANT'S OBJECTIONS TO THE GUIDELINES CALCULATIONS FAIL.....1

      A.   Factual Findings Supporting the Applicable Guidelines
           Can Be Based on Any Evidence in the Record................1

      B.   Defendant's Objections to the Loss Amount Lack Merit......2

      C.   The Obstruction of Justice Enhancement Applies............6

      D.   The Enhancement for Substantial Financial Hardship
           Applies...................................................7

      E.   The Sophisticated Means Enhancement Applies...............9

      F.   The Bankruptcy Enhancement Applies.......................11

      G.   The Vulnerable Victim Enhancement Applies................11

      H.   Acceptance of Responsibility.............................12

II.   THE § 3553(A) FACTORS SUPPORT A 210-MONTH SENTENCE...........13

      A.   Spoliation...............................................13

      B.   Sentencing Disparity.....................................14

III.  RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR................15

IV.   CONCLUSION...................................................15


      APPENDIX: Responses to Defendant's Objections to the PSR

      SUPPLEMENTAL DECLARATION OF REMOUN KARLOUS

**TABLE OF AUTHORITIES**

DESCRIPTION                                                           PAGE

**CASES**

Alleyne v. United States,
  570 U.S. 99 (2013) ............................................ 2

Arizona v. Youngblood,
  488 U.S. 51 (1988) ........................................... 13

Gall v. United States,
  552 U.S. 38 (2007) ......................................... 1, 14

Rita v. United States,
  551 U.S. 338 (2007) .......................................... 1

United States v. Ajugwo,
  82 F.3d 925 (9th Cir. 1996) .................................. 3

United States v. Barnes,
  993 F.2d 680 (9th Cir. 1993) ................................. 3

United States v. Bell,
  808 F.3d 926 (D.C. Cir. 2015) ............................. 1-2

United States v. Blitz,
  151 F.3d 1002 (9th Cir. 1998) ............................... 4

United States v. Booker,
  543 U.S. 220 (2005) .......................................... 2

United States v. Carty,
  520 F.3d 984 (9th Cir. 2008) (en banc) ...................... 1

United States v. Castellanos,
  81 F.3d 108 (9th Cir. 1996) ................................. 12

United States v. Charlesworth,
  217 F.3d 1155 (9th Cir. 2000) ............................... 3

United States v. Farrace,
  805 Fed. Appx. 470 (9th Cir. 2020) ......................... 10

United States v. George,
  949 F.3d 1181 (9th Cir. 2020) ............................. 8, 9

TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                          PAGE

United States v. Gole,
    158 F.3d 166 (2d Cir. 1998) ................................... 4

United States v. Hardat,
    829 Fed. Appx. 761 (9th Cir. 2020) ........................... 9

United States v. Horob,
    735 F.3d 866 (9th Cir. 2013) ................................. 9

United States v. Jennings,
    711 F.3d 1144 (9th Cir. 2013) ................................ 9

United States v. Miller,
    953 F.3d 1095 (9th Cir. 2010) ............................... 14

United States v. Stoterau,
    524 F.3d 988 (9th Cir. 2008) ................................ 10

United States v. Tanke,
    743 F.3d 1296 (9th Cir. 2014) ............................. 9, 11

United States v. Torlai,
    728 F.3d 932 (9th Cir. 2013) ................................. 1

United States v. Treadwell,
    593 F.3d 990 (9th Cir. 2010) ................................ 14

United States v. Walter-Eze,
    869 F.3d 891 (9th Cir. 2017) ................................. 1

**STATE CASES**

Most v. State Bar,
    67 Cal.2d 589 (1967) ......................................... 3

**SENTENCING GUIDELINES**

USSG § 2B1.1 ............................................. passim

USSG § 3A1.1 ................................................ 11

USSG § 3E1.1 ................................................ 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   DEFENDANT'S OBJECTIONS TO THE GUIDELINES CALCULATIONS FAIL**

**A.   Factual Findings Supporting the Applicable Guidelines Can Be Based on Any Evidence in the Record**

Defendant's objection to the application of Guidelines enhancements based on facts that he has not admitted is not well taken.  (<u>E.g.</u>, CR 1016 at 17-18.) The Court may base its sentencing decision on factual findings that are supported by the record taken as a whole.  "[I]f the district court's findings are plausible in light of the record viewed in its entirety, [we] cannot reverse even if [we are] convinced [we] would have found differently." <u>United States v. Torlai</u>, 728 F.3d 932, 937 (9th Cir. 2013) (citation omitted).[1]

Defendant's citations do not support his erroneous contention that the Court's sentencing decision may be based on only the limited facts that defendant has admitted. The language he cites in <u>United States v. Jones</u> is from a <u>dissent</u> from a denial of <u>certiorari</u> in a case where the Court of Appeals upheld as substantively reasonable a sentence that was increased by the judge's factual finding that defendants had participated in a conspiracy notwithstanding the jury's acquittal of defendants on the conspiracy charges. Defendant's citation to <u>United States v. Bell</u>, 808 F.3d 926 (D.C.

---

[1] Sentences are reviewed for reasonableness, and only a procedurally erroneous or substantively unreasonable sentence will be set aside. <u>Gall v. United States</u>, 552 U.S. 38, 46 (2007), <u>Rita v. United States</u>, 551 U.S. 338, 351 (2007); <u>United States v. Carty</u>, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).  Procedural error includes choosing a sentence based on clearly erroneous facts. <u>See</u> <u>Carty</u>, 520 F.3d at 993.  Review under the clearly erroneous standard is significantly deferential, requiring a "definite and firm conviction that a mistake has been committed." <u>See</u> <u>United States v. Walter-Eze</u>, 869 F.3d 891, 912 (9th Cir. 2017).

1   Cir. 2015), is likewise inapposite. It is a concurrence in a denial

2   of a petition for rehearing en banc of a decision upholding the

3   district court's sentence, which was based on the court's finding by

4   a preponderance of the evidence that the defendants had participated

5   in a drug distribution conspiracy after the jury had acquitted the

6   defendants of the conspiracy charge.[2]

7        **B.   Defendant's Objections to the Loss Amount Lack Merit**

8        The evidence in the record establishes that the settlement

9   payments at issue totaled $12,350,000.  (See CR 1000-1 at 4-8 and

10  attached exhibits.)  The USPO correctly found that defendant

11  forfeited his right to his fees when he engaged in fraud and deceit

12  vis-à-vis his clients and, therefore, the loss caused by defendant's

13  offense conduct was the full amount of the settlements.  (PSR ¶ 95 &

14  n.15.)

15       Burden of Proof: Defendant contends that the government bears

16  the burden of showing that there were no costs or expenses to which

17  defendant was entitled, which would have reduced the loss amount.

18  (CR 1016 at 32.)  The law is otherwise.  Because the government has

19  established a prima facie case that the loss amount is $12,350,000,

20  defendant bears the burden of proof that credits apply reducing this

21  loss amount.  The Ninth Circuit has explained:

22

23       [2] See also United States v. Booker, 543 U.S. 220, 233 (2005)
    ("We have never doubted the authority of a judge to exercise broad
24  discretion in imposing a sentence within a statutory range.... For
    when a trial judge exercises his discretion to select a specific
25  sentence within a defined range, the defendant has no right to a jury
    determination of the facts that the judge deems relevant."); Alleyne
26  v. United States, 570 U.S. 99, 113 n.2, 116 (2013) ("While such
    findings of fact may lead judges to select sentences that are more
27  severe than the ones they would have selected without those facts,
    the Sixth Amendment does not govern that element of sentencing.... We
28  have long recognized that broad sentencing discretion, informed by
    judicial factfinding, does not violate the Sixth Amendment.").

> The burden of proof is on the party seeking to adjust the offense level to establish by a preponderance of the evidence why the adjustment is merited. Thus, once the government has established the base offense level, the burden falls on the party seeking to alter this level to prove the necessary facts.

United States v. Charlesworth, 217 F.3d 1155, 1158 (9th Cir. 2000).[3]

Credits:  Defendant contends that the PSR's loss amount improperly fails to give him credit for: (1) earned attorney's fees; (2) costs, expenses, advances and payments he made for the benefit of the clients; and (3) work he performed on other matters for the clients. (CR 1016 at 23, 25-26, 33.)  Defendant did not earn any fees because he defrauded his clients (see PSR ¶ 95 n.15);[4] he did not render services to his clients because the work he did to obtain the settlement monies he stole was for

---

[3] See also United States v. Ajugwo, 82 F.3d 925, 929 (9th Cir. 1996) ("[W]e have placed the burden on the defendant to prove by a preponderance of the evidence that she should receive a sentence reduction under the guidelines based upon some mitigating factor."); United States v. Barnes, 993 F.2d 680, 683 (9th Cir. 1993) ( "[T]he government bears the burden of proof if it is attempting to adjust the offense level upwards, but the defendant bears the burden of proof if he is attempting to lower the offense level.") (quoting United States v. Howard, 894 F.2d 1085, 1089 (9th Cir 1999)).

[4] Defendant cites CA R. Prof. Resp. 1.15 presumably to argue that he was entitled to his fees immediately upon receipt of the initial settlement payment. (CR 1016 at 33.) Defendant's scheme to defraud began before any payments were received. Moreover, this bar rule requires an attorney to fully inform his/her clients of their settlement, provide an accounting in writing, and pay the client his/her share of the settlement immediately.  CA R. Prof. Resp. 1.15; see also Tr. Ex 400F ("Under California law, the client is entitled to their monies immediately."). Defendant failed to inform Johnson, Gardner, and Barela of the settlement payments, and therefore defendant could not withdraw his fees because the clients had not been given an opportunity to "dispute" any fees. See Most v. State Bar, 67 Cal.2d 589, 597 (1967) ("An attorney may not unilaterally determine his own fee and withdraw funds held in trust for his client in order to satisfy it without the knowledge or consent of the client.").

3

his -- not his clients' -- benefit (cf. USSG § 2B1.1 note

3(E)(i)); any amounts he spent for the benefit of his clients

are relevant to restitution, not the sentencing loss,[5] and have

been included in the restitution calculation; and defendant

cannot unilaterally help himself to amounts he now claims his

clients owe him for his work on "other matters" given the legal

system's longstanding refusal to allow a person to resort to

extrajudicial self-help (particularly by violating criminal

laws) rather than availing him/herself of proper legal remedies.

See United States v. Gole, 158 F.3d 166, 168 (2d Cir. 1998).[6]

Defendant's challenges to the loss amount also fail on the

facts. Defendant provides unsupported numbers[7] and claims that,

even though he lied to Johnson, Gardner, and Barela, he was

---

[5] See, e.g., United States v. Blitz, 151 F.3d 1002, 1012 (9th Cir. 1998) (no offset for refunds "done for the sole purposes of deflecting serious disruption of [the defendants'] schemes and making the operation look legitimate"). Even if the Court reduces the loss by the amounts of defendant's claimed legal fees, costs and expenses, the loss would still be at least $7,631,764 (i.e., the calculated restitution amount), which would only decrease the adjustment under USSG § 2B1.1(b)(1) by two levels because the loss would still be greater than $3,500,000. Defendant also challenges the guideline calculations for the tax offense. The tax loss and sophisticated means enhancement are supported by the record (CR 78 Exs 1-3; Sent. Exs 22-32) and defendant offers no evidence to contradict this showing. Because the tax offense does not affect defendant's total offense level (see PSR ¶¶ 129-131), the tax offense is not addressed at length here.

[6] See United States v. Avenatti, CR 19-374-JMF (SDNY), CR 421 at 29-33 (denying defendant's post-trial motions and noting that defendant's claim that he was entitled to take money he unilaterally asserted he was owed was not a valid defense).

[7] For example, in the agreement defendant prepared, signed, and lied about in order to get Johnson to sign it on March 23, 2019, defendant acknowledged that he owed Johnson $1,911,381.30 (Tr. Ex 122); defendant provides no explanation, much less any evidentiary support, to establish -- as he now asserts -- that he only owes Johnson $1,491,000 (CR 1016 at 33 n.25), i.e., approximately $500,000 less than he admitted owing to Johnson in March 2019, despite having paid Johnson nothing since that time.

4

entitled to take his fees immediately and also charge them for other unsubstantiated expenses.  But the fee agreements specifically provide that any other legal matters are not covered (Tr. Exs 1, 132, 171, 266-267), and any other "work" defendant purportedly did, served to further conceal his fraud and abuse his clients' trust.

Phan: Defendant now claims -- for the first time -- that he owes nothing to Phan and that, in fact, Phan owes money to him because he never received "payment in connection with his negotiation of Ms. Phan's ownership of EM Cosmetics and acquisition of other valuable assets."  (CR 1016 at 26.) Defendant provides no support for this assertion other than a generic reference to Exhibit DD, which is itself just a list of exhibits with no analysis. In any case, defendant took his full fee -- 7.5% of the sum of all payments to be made to Phan -- when the first payments from ipsy were made, which was at the same time as Phan acquired EM Cosmetics.  Defendant has never provided any evidence that Phan owed him more than this 7.5% and -- before now -- has never claimed that he was entitled to a percentage of the value of her new company. Indeed, if defendant was entitled to $4,000,000 more than the 7.5% fee he had taken, why didn't he say so to Phan, Tran, Marchino, and Regnier rather than breaking up the transfer of funds in May 2018 into separate wires ($4,000,000 and $146,288) to hide his theft of the remaining $4,000,000? (See PSR ¶ 66.)

The testimony and evidence at trial clearly established defendant owed $4,000,000 to Phan, lied to Phan and Tran and caused Marchino and Regnier to pass along false information to

5

Tran to conceal defendant's fraud.  Both Phan and Tran testified that defendant was owed no additional money and defendant never once stated he was owed any additional money because he was paid his full fee in September 2017.[8]  To the contrary, defendant lied about sending the full amount repeatedly (see, e.g., Tr. Exs 278, 280, 281, 284), and did not ask a single question when cross-examining Tran and Phan about his now-asserted entitlement to any of the $4,000,000 or any additional fees.

### C.   The Obstruction of Justice Enhancement Applies

Defendant argues the obstruction of justice enhancement should not apply because he did not intend to intimidate or threaten Gardner or Whiteside, the information about them was already in the public record, and Whiteside was not a witness. (CR 1016 at 35-37.) Defendant's arguments are unavailing. First, Gardner was a victim-witness who stated she felt the tweet was intended to intimidate and threaten her. (Sent. Ex 33.)[9]  Second, at the time of the tweet, the only information in the public record was that there was a settlement between Gardner and Whiteside.  Third, defendant sent the tweet after publication of the LA Times article, which included Gardner and Whiteside's joint statement: "It is unfortunate that something that was meant to be kept private between us is now being publicly reported."  In response, defendant tweeted that he "look[ed] forward to ALL of the details coming out regarding Hassan Whiteside's settlement, the money received by the client, the money deducted for

---

[8] RT 8/6/21 v.II at 75, 85, 101; RT 8/10/21 v.I at 27, 43, 93; RT 8/12/21 v.I at 27, 29, 32, 36-39, 50-52.

[9] Defendant's selective quotation from the government's letter to his defense counsel regarding this matter is misleading.  See Sent. Ex 33 (the entire letter).

1  fees and costs, etc. and the reason why he paid the money.  I

2  especially look forward to the inquiry by the @NBA and its

3  commissioner." (Id. (all caps in original).)  Defendant negotiated

4  the confidential agreement and knew his client desired to keep the

5  matter confidential; thus, the Court can easily infer that defendant

6  intended to intimidate Gardner (and Whiteside) when calling for "ALL

7  of the details" to come out through an "inquiry."[10]

8  **D.  The Enhancement for Substantial Financial Hardship Applies**

9      Defendant objects to the enhancement for causing a victim

10 substantial financial hardship because: Johnson was living in jail

11 when they met; Gardner was essentially homeless when they met so her

12 "inability to pay her bills was not caused by defendant, but was

13 instead a pre-existing issue," and any financial harm she suffered

14 was not substantial;[11] and defendant did not cause Barela "permanent"

15 or "substantial" financial harm.  (CR 1016 at 37-40.)  Defendant's

16 arguments are frivolous.

17     Johnson, Gardner, and Barela each testified about their dire

18 financial circumstances, including lacking money for rent and living

19 expenses and needing to beg defendant for small payments just to make

20 ends meet.  Defendant told the Honorable Margaret M. Morrow, United

21 States District Judge, that any delay in finalizing and paying the

22 settlement to Johnson was unacceptable because Johnson was "in need

23 of the funds" for his living and medical expenses.  (Tr. Ex 22; see

24

25     [10] As set forth in the government's sentencing position (at 9-
   12), other conduct by defendant, in addition to the tweet, supports
26  the obstruction of justice enhancement.

27     [11] Gardner's laudatory statements that defendant quotes were made
   while defendant was still deceiving her; his claims that she was
   living in luxury "at the time of trial" are unsupported and, in any
28  case, refer to a time more than four years after defendant stole her
   settlement money. (See CR 1016 at 38-39.)

7

1   also Tr. Ex 32 (informing opposing counsel that Johnson needed the

2   settlement to pay for living expenses).)  Defendant's fraud denied

3   Johnson the ability to purchase a handicap-accessible home, forced

4   him to rent a small room in a shared house, and often made him late

5   paying his rent and without money for groceries.  Although defendant

6   claims he was not responsible for Johnson losing his SSI benefits (CR

7   1016 at 22), both Johnson and Elsa Guerrero testified that Johnson

8   lost his SSI benefits in February 2019 after defendant failed to

9   provide necessary documents as defendant had promised Johnson

10  defendant would do.

11       Gardner lived with friends because she did not have the money to

12  rent a residence and believed she would be unable to do so because

13  she could not count on Whiteside making the "periodic" payments

14  defendant falsely told her the settlement required (to the extent

15  defendant made these payments from "Whiteside," they were erratic).

16  (RT 7/30/21 v.II at 23-24.)  Gardner's bank account was overdrawn and

17  she regularly updated defendant about her inability to attend school

18  and pay for her lessons and other living expenses without the

19  settlement money.  (Tr. Exs 160, 164.)  Similarly, Barela regularly

20  informed defendant of the dismal financial straits in which he found

21  himself as he "waited" to receive his settlement money. (Tr. Ex 236

22  ("As discussed with Brock not paying here is the minimum payments for

23  us to survive. I am need gas and am really worried. I have never been

24  in such a bad spot."); see also Tr. Exs 176, 204, 206, 210, 229,

25  233.)

26       This evidence supports the finding that defendant's conduct "was

27  the direct cause -- and certainly a but-for cause -- of the ensuing

28  financial hardship" to his victims. See United States v. George, 949

1   F.3d 1181, 1187 (9th Cir. 2020).  Indeed, <u>George</u> directly rejects the

2   very argument ("I stole only from those who were already poor")

3   defendant makes here.  <u>Id.</u> ("[A] defendant inflicts 'substantial

4   financial hardship' when he causes a significant adverse change in

5   his victims' financial situation -- including, as George did, by

6   increasing the desperation of those already struggling.").

7           **E.   The Sophisticated Means Enhancement Applies**

8           Defendant claims his conduct was "straightforward" and did not

9   involve "offshore accounts," "fictitious entities," or "corporate

10  shells."  He objects to the sophisticated means enhancement for this

11  reason and also because applying it in addition to the abuse of a

12  position of trust/use of special skill enhancement would amount to

13  impermissible double-counting.  (CR 1016 at 40-41.)  Defendant's

14  claims are without merit.

15          The "sophisticated means" enhancement is appropriate when the

16  criminal conduct involves "especially complex or especially intricate

17  offense conduct pertaining to the execution or concealment of the

18  offense."  USSG § 2B1.1 note 9(B).  The examples in the application

19  note are explicitly illustrative and not exhaustive, and conduct less

20  sophisticated than using fictitious entities, corporate shells, or

21  offshore financial accounts may justify the enhancement.  <u>See</u> <u>United</u>

22  <u>States v. Jennings</u>, 711 F.3d 1144, 1147 (9th Cir. 2013).[12]

23

24          [12] <u>See also</u> <u>United States v. Tanke</u>, 743 F.3d 1296, 1307 (9th Cir.
    2014) (enhancement appropriate where defendant's conduct involved "a
25  high level of planning and concealment of defendant's theft" that
    defendant "carefully engaged in dozens of various acts over a period
26  of over 16 months to execute and conceal three separate types of
    fraud"); <u>United States v. Horob</u>, 735 F.3d 866, 872 (9th Cir. 2013)
27  (enhancement proper where defendant manipulated others to lie for
    him, used several different bank accounts to move funds, and
28  fabricated documents); <u>United States v. Hardat</u>, 829 Fed. Appx. 761,
                              *(footnote cont'd on next page)*

                                    9

1   Here, defendant's scheme included: repetitive and coordinated

2   conduct, with several victims, resulting in millions stolen, over a

3   four-year period; forging Johnson's signature on his settlement

4   agreement (and concealing the settlement agreement and payment for

5   over four years); fabricating a settlement agreement with bogus dates

6   for Barela; splitting the wire transfers to Phan to bolster

7   defendant's false claim that there were two $4,000,000 wire

8   transfers, thereby disguising that defendant had stolen the second

9   $4,000,000; falsely identifying lulling payments to Johnson, Gardner,

10  and Barela (including Ponzi payments using Phan's money) as either

11  "advances" against supposedly yet-to-be paid settlement monies or

12  "periodic" payments under the purported terms of the settlements,

13  both of which ruses were designed to conceal defendant's fraud;

14  making payments directly into Gardner's account and causing them to

15  appear to be coming from Whiteside; not providing the settlement

16  agreements to Johnson, Gardner, and Barela; telling both his victims

17  and members of his office that only defendant was to discuss

18  settlement agreements with the clients; and tricking Johnson into

19  signing fraudulent documents on March 23, 2019.

20  Because the sophisticated means and abuse of trust/use of

21  special skill enhancements each "account[] for a different aspect of

22  [defendant's] offense and [are] separately authorized and intended by

23  the Guidelines," applying both does not constitute impermissible

24  double-counting.  United States v. Stoterau, 524 F.3d 988, 1001 (9th

25  Cir. 2008); see also United States v. Farrace, 805 Fed. Appx. 470,

26  474-75 (9th Cir. 2020) (unpublished) (rejecting double-counting

27

28  761-62 (9th Cir. 2020) (unpublished) (use of doctored documents along
    with lulling partial payments to victims justified enhancement).

10

challenge to application of both the sophisticated means and abuse of trust or use of special skill enhancements).

**F.   The Bankruptcy Enhancement Applies**

Defendant, individually, as the "managing partner" of EA LLP, made numerous false statements under penalty of perjury in bankruptcy filings and in Section 341 hearings and took fraudulent actions during the EA LLP bankruptcy (Sent. Exs 34-38), which "plainly occurred in the course of attempting to avoid detection or responsibility for [his] offense." Tanke, 743 F.3d at 1307. Contrary to his claim now that the clients were not represented by EA LLP (CR 1016 at 42), the fee agreements, settlement agreements, and payments clearly show that defendant represented Gardner, Johnson, and Barela through EA LLP, and submitted false information during the bankruptcy to conceal his crimes. (Tr. Exs 1, 38, 40, 132, 139, 149, 171, 187, 193; Sent. Exs 34-38.)  Defendant's theft of Phan's money to pay EA LLP's creditors was a further fraudulent action during the course of the bankruptcy proceeding because defendant used the payment to support his efforts to get the bankruptcy dismissed, which -- by avoiding on-going scrutiny of his and his firm's financial affairs -- further concealed his fraudulent conduct.

**G.   The Vulnerable Victim Enhancement Applies**

Defendant objects to this enhancement, claiming that Johnson's being "physically paralyzed" and suffering from "mental health issues . . . did not make him any more suspectable [sic] to be taken advantage by an attorney than a similarly situated plaintiff." (CR 1016 at 43.)  But the guidelines define "vulnerable victim" as a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the

1  criminal conduct." USSG § 3A1.1 note 2 (emphasis added). The

2  Sentencing Commission made the enhancement applicable in two separate

3  circumstances, suggesting that "characteristics of age, physical

4  condition or mental condition may per se render a victim worthy of

5  the special protection" of the enhancement whereas its applicability

6  in the other circumstances would depend on the particular nature of

7  the criminal conduct. United States v. Castellanos, 81 F.3d 108,

8  110-11 (9th Cir. 1996). Here, given the claims in the lawsuit in

9  which defendant represented Johnson, defendant obviously knew of

10  Johnson's physical condition and mental health issues.

### H.  Acceptance of Responsibility

12      Defendant provides no authority for his claim that he should

13  receive three levels for acceptance of responsibility even when the

14  government declines to make the necessary motion for the third level.

15  See USSG § 3E1.1(b). Indeed, defendant's sentencing memorandum,

16  which "falsely denies" and "frivolously contests" relevant conduct

17  (USSG § 3E1.1 note 1(A)) supports the government's position that

18  defendant should not receive even the first two-levels for acceptance

19  of responsibility.[13]

---

[13] Defendant's claims that he has demonstrated acceptance of
responsibility by "relinquishing his interest in a jet" and
purportedly attempting to voluntarily resign from the practice of law
(CR 1016 n.15.) ring hollow. Defendant had no legal interest in the
jet, and his attempted resignation was not done properly or in a
manner that could allow his victims to obtain some financial relief
(Sent. Ex 37).

## II.   THE § 3553(A) FACTORS SUPPORT A 210-MONTH SENTENCE

The government stands by its discussion of the Section 3553(a) factors in its sentencing position (CR 1000).  The following addresses two of defendant's arguments in support of a variance.[14]

### A.   There was No Spoliation of Evidence

Defendant seeks a variance on the grounds that the government failed to preserve "contemporaneous mitigation materials," namely, six or seven boxes of EA LLP records that were left at Regnier's house after a search was conducted there.  (CR 1016 at 13-14.)  His claim is baseless.  Although defendant contends that the government "made no effort to pick up the boxes," the case agent, who -- because of the privilege protocols -- was not part of the search team, testified that he followed up with the search leader and learned that the materials in the boxes had been reviewed and been determined to be outside of the scope of the warrant.  (RT 8/18/21 v.II at 39-40.) Although defendant asserts the boxes included "eighteen years' worth of mitigation materials, including thank you cards, notes of appreciation, letters, awards, etc." that "are irreplaceable and cannot be duplicated or obtained by other means" (CR 1016 at 13), he provides nothing beyond his own assertion to support that claim. Thus, for both these reasons, defendant has not and cannot establish

---

[14] Defendant includes numerous purported bases for a downward variance, which are not supported by evidence, are not a basis for a downward variance, or at a minimum are outweighed by the aggravating factors in this case.  The government addressed several in its initial sentencing memorandum and will address the others at sentencing, if necessary.  Defendant has also filed under seal a supplement to his sentencing position that presents arguments for a variance on a further ground.  (See CR 998.) Defendant only provides his own, unverified assertions in support of this variance request, which the Court should reject for this reason alone, but regardless, the supplement provides no basis for a downward variance.

that the government acted in bad faith to fail to preserve materials that were potentially exculpatory, as he must do to make out a spoliation claim. See Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988). In any case, the materials at issue would be duplicative of the material defendant has attached to his sentencing memorandum, which includes letters, thank you cards, and awards dating back to law school as well as three letters from prior clients.

### B.  Sentencing Disparity

Using a selective list of other fraud cases and his own descriptions of their underlying facts, defendant contends that the USPO's recommended sentence is "dramatically and punitively higher" than sentences in "similar" fraud and tax cases and therefore a variance to defendant's recommended sentence is necessary to avoid unwarranted sentencing disparity.  (CR 1016 at 4, Ex B.)[15]  The Ninth Circuit has already rejected defendant's flawed approach and argument: another "defendant convicted at a different time of a different fraud" being sentenced to a shorter term "does not create an 'unwarranted' sentencing disparity."  United States v. Treadwell, 593 F.3d 990, 1011-12 (9th Cir. 2010)[16] ("[T]he Sentencing Commission has expressly concluded that in the case of fraud, loss serves as a measure of the seriousness of the offense and the defendant's

---

[15] Defendant's list does not include two recent cases from this District involving attorneys who stole from their clients, even though defendant cites one of these cases elsewhere in his brief. (CR 1016 at 41.) In United States v. Layfield, CR 18-124-MWF, CR443, a personal injury lawyer who embezzled nearly $7 million from his clients was sentenced to 144 months' imprisonment; in United States v. Ohanian, CR 19-284-JAK, CR 128, a civil lawyer who caused actual losses in excess of $4.4 million, was sentenced to 180 months' imprisonment.

[16] Overruled on other grounds by United States v. Miller, 953 F.3d 1095 (9th Cir. 2010).

14

relative culpability and is a principal factor in determining the offense level under § 2B1.1.") (internal quotation omitted); see also Gall, 552 U.S. at 54 (2007) ("[T]o secure nationwide consistency, the Guidelines should be the starting point and the initial bench mark.").  Although the guidelines are only advisory, sentencing defendant to a within guidelines sentence would avoid disparity in sentencing between defendant and similarly situated defendants.

**III. RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR**

Defendant's objections to the PSR either: (1) address factual matters that are not in dispute or that the Court need not consider when determining the sentence; (2) are based solely on defendant's not having admitted the matter at his change of plea, which is addressed in Section I.A, above; (3) do not dispute any facts but instead ask for additional, albeit unspecified, information to be included; or are generic denials without identifying any specific factual inaccuracies or are simply argument.  Specific responses to each of defendant's objections are provided in the Appendix, attached hereto.

**IV.  CONCLUSION**

Defendant recommends that he be sentenced to 72 months' imprisonment, to run concurrently to the 60-month total sentence he is currently serving.  Thus, defendant proposes that he be sentenced effectively to 12 months in this case.  Such a sentence would not afford justice and his recommendation should not and cannot be taken seriously.  The enormity of defendant's crimes -- conducted over many years and causing vast harms to multiple victims as well as to the U.S. Treasury warrants a sentence of 210 months' imprisonment.