E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
Assistant United States Attorney
Chief, Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2432
    Facsimile: (213) 894-6269
    Email:    Ranee.Katzenstein@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3598
    Facsimile: (714) 338-3708
    Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO THE REVISED PRESENTENCE REPORT (CR 1042); MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney and Assistant United States Attorneys Brett A. Sagel and Ranee A. Katzenstein, hereby files, pursuant to the Court's scheduling notice (CR 1029), its response to the Revised Presentence Report and Revised Recommendation Letter submitted by the United States Probation Office on November 7, 2022

(CR 1041, 1042). This response is based on the attached Memorandum of Points and Authorities, the files and records in this case including the government's Sentencing Position and Response to Presentence Report (CR 1000) and the government's response to defendant Michael John Avenatti's Sentencing Position (CR 1023), and such further evidence and argument as the Court may receive at the hearing on defendant's sentencing.

Dated: November 21, 2022          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


          /s/
BRETT A. SAGEL
RANEE A. KATZENSTEIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

The government concurs in the findings of the Revised Presentence Report ("RPSR") (CR 1042) regarding the applicable Sentencing Guidelines for the reasons stated in the RPSR and the additional reasons discussed below. These findings result in an advisory sentencing range of 324 to 405 months based on a total offense level of 39 and a Criminal History Category ("CHC") III. (RPSR at ¶ 277.) The government objects to the U.S. Probation Office's ("USPO") recommended downward departure from CHC III to CHC II (RPSR ¶ 294; Revised Recommendation Letter ("Rev. Rec. (CR 1041) at 10)); recommended variance based on § 3553(a) factors (RPSR ¶ 295; Rev. Rec. at 10-11); and recommendation that defendant's sentence run fully concurrent to the sentences imposed in his criminal cases from the Southern District of New York ("SDNY") (Rev. Rec. at 11).

**II.  CONCURRENCE IN THE RPSR'S SENTENCING GUIDELINES CALCULATION[1]**

  **A.  The RPSR Correctly Finds that the Fraud Loss is $12,350,00, Resulting in a 20-Level Enhancement**

The USPO correctly finds that defendant's fraud offenses caused losses of $12,350,000, the total amount of the settlements at issue. (RPSR ¶ 106.) Having lied to his clients about the settlements and settlement payments, defendant was not entitled to any fees that would offset this amount. (RPSR ¶¶ 105-106 (noting that defendant did not render services to his client pursuant to his fee agreements or California Rules of Professional Conduct); see also CR 1023 at 2-6.)

---

[1] The Court is referred to the government's sentencing position (CR 1000) and response to defendant's sentencing position (CR 1023) regarding the guidelines provisions not discussed herein.

Nearly a century of jurisprudence makes clear that when an attorney commits fraud and violates his duties to his client, the attorney is not entitled to fees for his services. (RPSR ¶ 106 n.15; see also Restatement (Third) of Law Governing Lawyers § 37 (2000) ("A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter. Considerations relevant to the question of forfeiture include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies."); Rodriguez v. Disner, 688 F.3d 645, 655 (9th Cir. 2012) ("a district court has broad discretion to deny fees to an attorney who commits an ethical violation," and, in making such a ruling, may consider the factors listed § 37 of the Restatement).[2]

### B. There Are Multiple Grounds Supporting Application of the Obstruction of Justice Enhancement

The USPO applies the obstruction of justice enhancement based on defendant's attempt to threaten and/or intimidate witnesses, namely Gardner and Whiteside, after a news article identified them as individuals referenced in the indictment. (RPSR ¶ 128.) The USPO agrees that, in addition to this basis (cited in the original PSR (CR 978)), "the additional examples provided by the government [i.e., CR 1000 at 9-12] will trigger the obstruction of justice enhancement

---

[2] The USPO rightfully rejected defendant's argument that the government has taken the position that costs and expenses are offsets to loss and "should not be permitted to reverse course now." (CR 1026 at 5-6.). Defendant's examples demonstrate no such position. The search warrants sought costs and expense documentation for numerous reasons, including the ongoing tax investigation, and the testimony elicited at trial established defendant's intent to defraud in that he was not entitled to the full settlement payments that he stole.

2

pursuant to USSG §3C1.1, application notes 4(A), (B), and (C)." (First Addendum to the PSR (CR 1043) at 3-4.)  The additional bases include defendant's serving Barela's wife with a subpoena to intimidate Barela and his wife; making perjurious statements at various judgment debtor examinations ("JDE"), his state bar disciplinary hearing, and a Section 341 bankruptcy hearing; and submitting a fraudulent document on which defendant forged his partner's signature in the EA LLP bankruptcy.  Each of these additional bases independently supports the obstruction enhancement.

The USPO correctly rejected defendant's argument that the obstruction enhancement could not be applied on these other grounds because the "increase is warranted only when the <u>willful</u> obstruction is performed <u>during</u> the course of the investigation, prosecution, or sentencing of the instant offense or conviction," and "defendant was [not] aware of any ongoing or impending criminal investigation" at the time of the JDEs or the disciplinary or Section 341 hearings. (CR 1026 at 11-12 (emphasis in original)).  Defendant's arguments are without legal or factual merit.[3]

First, defendant relies on an old version of the Sentencing Guidelines that was amended in 2006 to change "during the course of" to "with respect to" the investigation, prosecution, or sentencing.[4] USSG, Appx C Amdt. 693 (effective November 1, 2006).  Second,

---

[3] Defendant attempts to justify serving Barela's wife with a trial subpoena and excluding her from the courtroom by citing her inclusion on the no contact lists provided for bail purposes to defendant long before trial and her civil suit against defendant. (CR 1026 at 11.)  Neither point addresses the relevant fact, namely, that defendant never listed Barela's wife as a witness to be called at trial.

[4] The sole case cited by defendant, <u>United States v. DeGeorge</u>, 380 F.3d 1203, 1222 (9th Cir. 2004), also predates the amendment.

3

"willful" for purposes of § 3C1.1 does not require knowledge that an investigation is pending, only that defendant "engaged in intentional or deliberate acts designed to obstruct any potential investigation." United States v. Gilchrist, 658 F.3d 1197, 1206 (9th Cir. 2011). Third, defendant does not deny that his under oath testimony at the JDEs and state bar hearing, was false.[5] And defendant's false testimony at the state bar hearing regarding his conduct vis-à-vis Barela took place many months after defendant was charged in this case with the wire fraud offense related to that very conduct.

### C. The USPO Correctly Denied an Offense Level Reduction Based on Acceptance of Responsibility

Although the USPO included a two-level reduction in defendant's offense level based on acceptance of responsibility in the original PSR, the USPO does not include it in the RPSR because, "following the defendant's disclosure of his sentencing positions, the Probation Officer believes the defendant is falsely denying relevant conduct for which he is accountable." (CR 1043 at 4.) The USPO cites as an example defendant's objecting to the fact that he pleaded guilty to the omnibus clause of 18 U.S.C. § 7212(a) when he, in fact, pleaded guilty to this clause. (RPSR ¶ 147.)

The government concurs and provides the following additional examples of defendant's false and frivolous denials of relevant conduct, which further support the determination that no reduction for acceptance of responsibility applies. See USSG § 3E1.1 (comment. (n.1(A))). Defendant frivolously contests that Johnson was a

---

[5] Defendant refers to his "unrelated and irrelevant statements to his law partner" (CR 1026 at 11), but does not address, much less deny, that he forged Mr. Eagan's signature on the filing submitted in EA LLP's bankruptcy proceeding to get the matter dismissed.

4

vulnerable victim, even though he is paraplegic and has psychological issues (RPSR ¶¶ 42, 122); that defendant's criminal conduct caused substantial financial hardship to Johnson, Gardner, and Barela, despite the overwhelming evidence that defendant's theft of their money derailed Johnson's ability to purchase a house and caused his SSI benefits to be cut off, caused Gardner to be without a place to live, and prevented Barela from being able to pay his mortgage, credit card bills and for his living expenses (RPSR ¶¶ 109-111); and that he owes Phan any money, despite pleading guilty to a wire fraud count specifically based on his theft from Phan (count 8).[6]

## III. THE COURT SHOULD REJECT THE RPSR'S RECOMMENDED DEPARTURE AND VARIANCE

### A. Criminal History Category III Does Not Overstate the Seriousness of Defendant's Criminal History

The USPO has not responded to the government's objection to the proposed departure in Criminal History Category (CR 1000 at 16-18) and instead repeats verbatim the reasons she originally provided for this recommendation. (Compare CR 977 at 9 with CR 1041 at 10.) The USPO's analysis remains incorrect for the reasons explained in the government's objection. Moreover, CHC III does not overstate the

---

[6] Defendant's assertion that, not only does he not owe Phan money but, to the contrary, she owes him money (CR 1016 at 26; CR 1026 Ex. LL; CR 1024 at 11-13) reveals that he has not accepted responsibility for his criminal conduct as well as the insincerity of his "apology" letter to the victims. In the letter, defendant says, "Each of you deserved a loyal attorney who you could trust . . . and who would not defraud you. . . My actions resulted in all of you suffering damages. . . I am committed to . . . ensuring that you fully recover all money you are due as a result of my illegal actions. I promise to work tirelessly to ensure that this occurs. You obviously owe me nothing." (RPSR ¶ 95.) Similarly, defendant admitted at his change of plea under oath that he "misappropriated and misused" Phan's settlement funds. (RT 6/16/22 at 20.) Defendant's sentencing submissions lack any support for his asserted valuation of the benefits Phan received and his claim that Phan owed defendant $4,387,500 -- and now owes defendant $387,500. (CR 1026 Ex. LL.)

seriousness of defendant's criminal history and likelihood of recidivism given the number and variety of his prior convictions (RPSR ¶¶ 162-163); this Court's finding that he likely committed crimes while on pre-trial release and is an "ongoing danger" to the community (RT 1/15/20 at 36-37); and his failure to accept responsibility for his crimes in this case.

### B. The Recommended Variance Fails to Consider Aggravating Factors

In recommending a four-level downward variance from the advisory guideline range -- on top of a CHC departure and recommendations that the sentence be at the low end of the guideline range and be imposed to run concurrently with defendant's previously imposed sentences -- the USPO ignores the aggravating factors and focuses almost exclusively on what she considers mitigating factors, namely, the legal work defendant performed to obtain settlements for his clients[7]; his "unstable and abusive childhood;" his "stable work history as an attorney" prior to his criminal conduct; and his being a "devoted father to his children . . . [and] positive influence." (Rev. Rec. at 10.)[8] The USPO's § 3553 analysis, which essentially treats the advisory guidelines as a ceiling and only considers purported mitigating factors in connection with recommending a reduced sentence, is flawed.

The USPO's sentencing recommendation fails to consider in aggravation the other aspects and collateral consequences of

---

[7] The victims certainly would not describe defendant's actions as legal work on their behalf.

[8] The government explained why these circumstances do not support a downward variance in its initial sentencing memorandum (CR 1000 at 42-44) and will not repeat that discussion here.

defendant's criminal conduct not accounted for by the sentencing guidelines, including the additional crimes defendant committed during the course of his wire fraud scheme; the other victims of defendant's wire fraud scheme in addition to Johnson, Gardner, Barela, and Phan; the harm defendant's conduct caused to numerous people in addition to the four count victims; and the serious and complex tax fraud defendant committed, which does not affect defendant's sentencing guideline range because no multi-count adjustment applies. (See CR 1000 at 25-28.) Although the USPO states that defendant's "criminal history, in particular, his prior federal fraud offense (including the instant offense), speak to [defendant]'s recidivism and need for deterrence" (Rev. Rec. at 7), the USPO otherwise fails to address the need for a significant sentence for specific and general deterrence (see CR 1000 at 35-39). Assuming arguendo that the factors set forth by the USPO are mitigating, they are greatly outweighed by the aggravating factors detailed previously by the government. (CR 1000 at 20-25.)

## IV. THE COURT SHOULD NOT IMPOSE A CONCURRENT SENTENCE

The Court should not adopt the USPO's recommendation to impose the sentence in the instant case concurrent with the defendant's previously imposed sentences. A sentence concurrent with the existing 24-month sentence for the violation of 18 U.S.C. § 1028A would contradict Congress' intent in including a mandatory concurrent sentence in § 1028A(b), namely, to ensure significant penalties for identity theft.[9] The statute provides that, "[n]otwithstanding any

---

[9] According to the House Report, § 1028A was enacted to address Congress's concern that identity thieves under prior law would often receive short prison sentences or be sentenced to probation and
*(footnote cont'd on next page)*

7

other provision of law -- except as provided in paragraph (4), no term of imprisonment on a person under this section shall run concurrently with any other term of imprisonment imposed on the person under any other provision of law. . ." 18 U.S.C. § 1028A(b)(2)

The exception in paragraph (4), which the USPO relies on when addressing the government's argument against a concurrent sentence (CR 1043 at 6-7), has no relevance here. The exception addresses situations in which a court is imposing sentences "at the same time" for "an additional violation of this section [i.e., § 1028A]." Here, the Court will be imposing sentence for wire fraud and tax offenses after a different court imposed the sentence for the § 1028A violation. The statute's prohibition on concurrent sentences in these circumstances is clear.

It is true that the statute precludes concurrent sentencing as to a "term of imprisonment imposed on a person under this section," and, therefore, the statute leaves open the possibility that, once the § 1028A sentence has been imposed, a future judge who is sentencing for some unrelated crime under some other section is not constrained by the language of § 1028A(b)(2). Even if the statute allows for concurrent sentencing in the circumstances presented here, the Court should decline to order it and should run the sentence in

---

afterwards "go on to use false identities to commit much more serious crimes." H.R. Rep. No. 108-528, at 3 (2004), reprinted in 2004 U.S.C.C.A.N. 779, 780. Thus, the consecutive sentencing provisions in § 1028A(b) were enacted to "ensure the intent of this legislation [was] carried out." Id. at 10, 2004 U.S.C.C.A.N. at 786; see also United States v. Godin, 534 F.3d 51, 62 (1st Cir. 2012) (Lynch, C.J., concurring) (explaining that the language of § 1028A "shows how serious Congress was about increasing the mandatory sentence" because it "expressly cuts off most of the mechanisms through which such a sentence could be reduced").

8

the instant case consecutive to at least the 24 months imposed by the Court in SDNY for the § 1028A offense to effectuate Congress' clear intent to provide incremental punishment for § 1028A offenses. Likewise, even if the policy statement in the guidelines allows for a fully concurrent sentence, such a sentence -- which would amount to a 5-year reduction in the sentence for the instant offenses -- would not achieve reasonable punishment as the guidelines require. See USSG 5G1.3(d) & comment. (n.4).

**V.    RESTITUTION**

The RPSR properly calculates the mandatory restitution owed to defendant's wire fraud victims[10] and correctly recommends that the Court impose restitution to the IRS for the tax offense as a condition of supervised release.  (RPSR ¶¶ 289-293; CR 1000 at 44-46.)  The USPO correctly rejected defendant's assertion that the wire fraud restitution amounts "do not account for credits due defendant" (CR 1026 at 6-7, Ex LL) because defendant's claimed other "work" and/or "offsets" are unsubstantiated, specifically disavowed by the clients, or pertain to work done, if at all, simply to further conceal defendant's fraud.[11] (See CR 1043 at 13-14.)

The Court must order full restitution for the losses defendant caused. 18 U.S.C. § 3663A.  Restitution is due to the victims or to third parties who paid money to the victims to address their losses,

---

[10] The restitution amount for Gardner should be $1,432,585 rather than the $1,460,785 previously stated by the government and the USPO (see CR 1000 at 45; RPSR ¶ 291), based on the additional expenses incurred by the X-Law Group (Tr. Exs 167, 168), less the $6,067.62 already included in the Gardner Tabs records (CR 1000, Decl. Ex D).

[11] For example, the record contradicts defendant's newfound claim that Phan owes him money, and defendant provides nothing to support the numbers he purports to use to reduce the undisputed $4,000,000 he stole from Phan.

9

with the third parties receiving restitution after the victims are paid. See 18 U.S.C. §§ 3664(f)(1)(B), (j)(1); United States v. Rizk, 660 F.3d 1125, 1136-37 (9th Cir. 2011).[12]

## VI. CONCLUSION

For the reasons set forth above and in the government's previously filed positions (CR 1000; CR 1023), the government respectfully requests that Court sentence defendant to 210 months in prison on each of counts 5, 8, 9 and 10, to run concurrently to one another, and 36 months on count 19, to run concurrently with the sentences imposed on counts 5, 8, 9 and 10, with all sentences to be consecutive to the sentences imposed in the SDNY cases; a three-year period of supervised release; a mandatory special assessment of $500; and restitution in the amount of $7,603,564 due to the wire fraud victims and $3,207,144 to the IRS as a condition of supervised release.

---

[12] In claiming that the amount of restitution should be "offset" by payments made to the victims through civil litigation, defendant cites United States v. Stanley, 309 F.3d 611 (9th Cir. 2002), and United States v. Thompson, 792 F.3d 273 (2d Cir. 2015). (CR 1026 at 6-7.) Neither case supports defendant's claim. Stanley addressed the process to be used, pursuant to 18 U.S.C. § 3664(j)(2), to determine a defendant's restitution obligation when co-defendants have paid civil damages for the same loss for which defendant is liable. The purpose is to avoid double recovery by the victim. Stanley, 309 F.3d at 613-614. Here, the third parties who paid the victims were not co-defendants and not criminally responsible for the victims' losses, and there is no risk of double recovery. Thompson simply recognized that the amount of restitution a defendant owes to a third-party insurer cannot exceed the amount the defendant could lawfully be ordered to pay the original victim. 792 F.3d at 279-280. Defendant also incorrectly claims the USPO's restitution amount improperly charges him with attorneys' fees, costs and other expenses that are not recoverable and would result in double-recovery. (CR 1026 at 7.) The restitution amount does not include any fees under 18 U.S.C. § 3663A(b)(4) and only seeks to place the victims where they would have been but for defendant's criminal conduct. See United States v. Gagarin, 950 F.3d 596, 607 (9th Cir. 2020).

10