Michael John Avenatti (Pro Se)

H. Dean Steward, SBN 85317
17 Corporate Plaza, Suite 254
Newport Beach, California 92660
Tel (949) 481-4900
Fax (949) 706-9994

Advisory Counsel for Defendant
MICHAEL JOHN AVENATTI

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 19-061-JVS |
| Plaintiff, | |
| | DEFENDANT'S RESPONSE TO PROBATION'S ADDENDUM, LETTER TO THE COURT, AND REVISED PSR |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

Defendant MICHAEL JOHN AVENATTI ("Defendant"), by and through his advisory counsel of record, H. Dean Steward, hereby files Defendant's Response to Probation's Addendum, Letter to the Court, and Revised PSR. Defendant's filing is based on the attached; the evidence referenced in the attached; the files, records and transcripts in this case and the other cases cited herein; and such further evidence and argument as the Court may permit at a hearing on this matter.

Dated: November 21, 2022          Respectfully submitted,

/s/ Michael John Avenatti
MICHAEL JOHN AVENATTI

# **TABLE OF CONTENTS**

I.     **INTRODUCTION** ......................................................................... 1

II.    **PROBATION'S FAILURE TO RESPOND TO OBJECTIONS** ........ 2

III.   **DEFENDANT'S RENEWED REQUEST FOR EVIDENTIARY HEARING** ......................................................... 4

IV.   **ACCEPTANCE OF RESPONSIBILITY AND THE OMNIBUS CLAUSE** ............................................................ 4

V.    **DISPARITY IN SENTENCING** ..................................................... 6

VI.   **OTHER OBJECTIONS** ................................................................... 8

## I.    INTRODUCTION

Since the U.S. Probation Office's inception nearly a century ago, "federal officers have been charged with two basic duties: to conduct pre-sentence investigations and to supervise federal offenders." *United States v. Reyes*, 283 F.3d 446, 455 (2d Cir. 2002). One of these core functions, the execution of the presentence investigative report ("PSR"), was designed "to aid the court in fashioning a fair and just sentence…" *United States v. Loeper*, 132 F. Supp. 2d 337, 339 (E.D. Pa. 2001). District courts look to Probation to be an investigative arm of the judiciary and one that does not take sides. Probation should not be "a partisan advocate aligned with either the prosecution or the defendant." *United States v. Kone*, 591 F. Supp. 2d 592, 607 (S.D.N.Y. 2008). Probation should act as "the court's 'eyes and ears,' a neutral information gatherer with loyalties to no one but the court." *Reyes*, 283 F.3d at 455, *citing* Sharon M. Bunzel, *The Probation Officer and The Federal Sentencing Guidelines: Strange Philosophical Bedfellows*, 104 Yale L.J. 933 (1995).

Unfortunately, here, the conclusions of Probation are not the result of a neutral arm of the judiciary performing an independent investigation and arriving at its own conclusions. Instead of allowing Probation to draft its report and recommendation in an unbiased and impartial fashion, Probation was bombarded with "voluminous case materials provided by the government[.]" [Dkt. 1043, p. 11]. In doing so, the prosecution successfully created an echo chamber in an effort to bolster the strength of its claims.[1]

---

[1] The unreasonableness of the government and Probation's sentencing recommendations in this case is further illustrated by the high-profile sentencing of Elizabeth Holmes three days ago (November 18, 2022) in the Northern District of California (Case No. 18-Cr-00258-EJD). Ms. Holmes was convicted of defrauding dozens of victims of nearly $800 million, many of whom lost everything. Meanwhile, Ms. Holmes became one of the richest women in America, with a net worth of more than $4 Billion, and purchased a $15 million mansion and a large private jet. Her Guideline calculation was 45, including a four level enhancement for putting thousands of patients' lives at risk, and her Guideline sentencing range was "life", beyond the 960 month statutory maximum. Probation recommended 108 months (6 years, 8 months less than in this case) and the government requested 180 months (30 months less than in this case). The court sentenced Ms. Holmes to 135 months. The government's sentencing brief is attached as Exh. TT. A comparison of the conduct in the Holmes case versus this case is attached as Exh. UU.

Because of Probation's near exclusive reliance on the materials provided by the government, while ignoring materials and information provided by defendant, defendant's sentencing briefs devoted significant space to numerous detailed objections that addressed incomplete facts and flawed legal positions. In response, Probation largely ignored defendant's objections and failed to provide any substantive response. This is not just nor is it helpful to the Court in determining a proper sentence. For the reasons set forth herein, and in defendant's prior sentencing submissions, defendant again respectfully requests that this Court impose a sentence of no greater than seventy-two (72) months in prison to be served concurrently with both sentences previously imposed.

## II.    PROBATION'S FAILURE TO RESPOND TO OBJECTIONS

On June 16, 2022, the Court Ordered: "the U.S. Probation Office shall prepare and provide to the parties and the court the final PSR together <u>with an addendum addressing any objections to the PSR and the parties' sentencing positions</u>." [Dkt. 955]. On October 26, 2022, the Court continued defendant's sentencing to December 5 "[i]n order to allow the Probation Officer sufficient time to evaluate and <u>respond to the parties substantial showings, including extensive objections</u> by both sides…" [Dkt. 1029].

The defense filed many objections to the PSR inclusive of numerous factual and legal arguments. Outside of the argument section of his brief, defendant identified 61 specific objections to the PSR and attached an exhibit containing 7 additional typographical objections. [Dkt. 1016, p. 18-32, Exh. CC]. Defendant also filed an important supplement under seal, with additional material for the Court's (and Probation's) consideration. [Dkt. 1012]. Arguments supportive of his original objections, and additional issues were also raised in defendant's response to the government's sentencing position. [Dkt. 1026].[2] Defendant performed a thoughtful analysis of the law, the facts underlying various enhancements, defendant's significant work as discussed in

---

[2] In its addendum, Probation described that its report was based on the review of these materials. However, aside from this acknowledgement, a review of Probation's addendum would lead an objective observer to conclude Probation did not adequately consider defendant's submission.

2

the supplement, and many §3553(a) factors not addressed by Probation in the original PSR.

In response, Probation failed to address the objections or perform <u>any</u> substantive analysis in most instances.[3] The present situation is not one where defendant has lodged an objection, and in response, Probation offered evidence or analysis disputing his claims. Instead, Probation simply ignored them, offered no rebuttal, and summarily agreed with the government without any meaningful examination. The same can be said as it relates to mitigation factors identified by defendant.

For instance, Probation failed to meaningfully address defendant's objections to the inaccurate factual findings and legal positions that were used to substantiate the loss amount, obstruction of justice, substantial financial hardship, vulnerable victim, and sophisticated means enhancement, including but not limited to: (1) the significant analysis of the loss amount included in defendant's submissions [Dkts. 1016, 1024, 1026]; (2) evidence that Mr. Johnson acknowledged signing the settlement agreement at issue; (3) testimony that established defendant was not the cause of Mr. Johnson's loss of SSI benefits; (4) exhibits that undermined any claim that check remitters were used to deceive Ms. Gardner; (5) testimony that established that another party caused Ms. Gardner to leave her apartment – not defendant; and (6) Mr. Johnson's admissions that he asked for small payments because he was required to have less than $2,000 in his bank account.

Additionally, by way of example only, Probation provided <u>no analysis</u> on the following mitigating factors: (1) the positive, undisputed findings of Judge Gardephe and Judge Furman; (2) the significant evidence of positive work defendant performed while a licensed attorney, including the letters by his former clients; (3) defendant's low likelihood

---

[3] Attached hereto as Exhs. VV and WW are copies of defendant's sentencing position and response to the government's sentencing position (absent exhibits). The highlighted components of the exhibits represent the objections and factual/legal arguments that were either completely ignored or summarily dismissed without analysis. Defendant does not attach the under seal supplement to his sentencing position because Probation's Addendum and Revised PSR contain no reference to this aside from acknowledging its review of the materials. If attached, the entire pleading would be highlighted.

of recidivism as evidenced by his PATTERN score and age upon release; (4) the government's spoilation of mitigating evidence; and, (5) defendant's substantial work as discussed in the supplement.

**Accordingly, defendant renews <u>all</u> of his prior objections and arguments aside from those conceded by Probation** (which were almost entirely typographical errors).[4]

## III.   DEFENDANT'S RENEWED REQUEST FOR EVIDENTIARY HEARING

Defendant renews his request for an evidentiary hearing. Given Probation's failure to address many of defendant's objections, and the great disparity between the sentences recommended by all parties, an evidentiary hearing is the only reliable way to properly resolve the disputed issues and facts. U.S.S.G. §6A1.3(a), *United States v. Green*, 940 F.3d 1038, 1044 (9th Cir. 2019). Defendant asks that the Court hold an evidentiary hearing prior to his sentencing so that defendant may present evidence supportive of his loss position, restitution analysis, and dispute the factual findings that are being used to support the stacked enhancements.

## IV.   ACCEPTANCE OF RESPONSIBILITY AND THE OMNIBUS CLAUSE

Defendant has taken extraordinary steps to accept responsibility and evidence his remorse. After attempting to engage in a plea agreement with the government on <u>multiple</u> occasions, defendant pled guilty in an open fashion and cumulatively prevented two trials, additional emotional burden on the clients, and significant costs to the Court. This fact alone should be sufficient to warrant the two-level §3E1.1 departure.[5] *See, United States v. Cortes*, 299 F.3d 1030, 1038 (9th Cir. 2008)(A guilty plea represents "undoubtedly significant evidence of an acceptance of responsibility."). Defendant has also voluntarily relinquished any right in a jet the government claims was purchased with misappropriated funds, has written an apology to his former clients, has publicly acknowledged he will

---

[4] Probation also refused to make other typographical changes despite clear error.

[5] Probation is seemingly in agreement that this fact alone is sufficient to justify the departure. In its original PSR, Probation applied the two-level departure "based on the transcript of defendant's Change of Plea hearing … the Probation Officer believed the defendant fulfilled the requirements of U.S.S.G. §3E1.1."

4

never practice law again, and further evidenced his contrition in the very first paragraph of his opening sentencing submission and elsewhere in the brief. [PSR ¶84, Dkt. 974, Exh. B, Dkt. 1016, Exh. T, Dkt. 1016, pp. 1, 14].

Probation does not dispute these claims, but now asserts that defendant is not entitled to a two-level reduction for acceptance of responsibility based on a technical, legal objection lodged by the defendant: "[g]iven that the defendant is objecting to the application of the omnibus clause as to Count 19 … the Probation Officer believes the defendant is falsely denying relevant conduct for which he is accountable and is therefore not eligible for the two level reduction…" [Dkt. 1043, p. 5]. Defendant objects to Probation's determination and maintains that he is entitled to a three-level reduction pursuant to §3E1.1. [Dkt. 1042 ¶142, Dkt. 1043, p. 4, 5, 21].

First, defendant's objection to the application of the omnibus clause does not render the downward departure unavailable for counts 5, 8, 9 and 10 (the wire fraud offenses) as claimed by Probation. When, as here, there are multiple categories of offenses that cannot be grouped, acceptance of responsibility is analyzed independently for each group. In *United States v. Garrido*, 596 F.3d 613 (9th Cir. 2010), the Ninth Circuit held: "We join our sister circuits in holding that, where a defendant accepts responsibility for all counts that are grouped under U.S.S.G. §§ 3D1.1-3D1.5, that defendant is eligible for the §3E1.1 reduction for those counts, even if the defendant has not accepted responsibility for other counts which, under §3D1.1(b), are excluded from grouping." *Id.* at 619; *see also*, *United States v. Wattree*, 431 F.3d 618, 622 (8th Cir. 2005)("Acceptance of responsibility is considered only after the base offense level is determined for the grouped offenses … As a matter of law, the guidelines do not mandate an 'all or nothing' approach.").

All parties are in agreement that the client counts (5, 8-10) and the tax count (19) are not subject to grouping. [PSR, p. 25, ¶91, Revised PSR, p. 26 ¶102]("The two groups of counts involve separate schemes with different victims. On that basis, the groups are not sufficiently similar to further group."); [Dkt. 1000, p. 9]. Thus, defendant should receive the departure because he has accepted responsibility for all properly grouped wire

fraud offenses (Counts 5, 8-10). Indeed, even if he had contested the facts supportive of an omnibus clause violation (he has not), he would be entitled to the §3E1.1 departure as to the wire fraud counts alone.

Second, as set forth in the attached declaration, defendant concedes that he is responsible for (a) a violation of the omnibus clause of 26 U.S.C. §7212(a) and (b) the restitution in the amount of $3,207,144. [Exh. XX].

## V.   DISPARITY IN SENTENCING

Defendant maintains that the sentences recommended by Probation and the government (15.6 years and 22.5 years respectively) are unnecessary, grossly punitive, and well beyond the norm for similarly situated defendants. In effort to evidence the gross disparity between defendant and others, defendant (1) created a chart depicting similarly situated defendants and their sentences [Dkt. 1016, Exh. B]; (2) presented evidence that less than 2% of CDCA fraud defendants over the last three years have received a sentence of 10 years or more [Exh. GG]; (3) established that the requested sentences reflect an extremely severe sentence to loss ratio compared to other high profile prosecutions [Exh. HH]; and (4) demonstrated the drastic differences between defendant's case and the few "comparable cases" cited by the government. [Dkt. 1026, p. 2; Exh. EE, FF, RR, SS].[6]

In response, Probation failed to meaningfully consider the law, the evidence, and the documentation supportive of defendant's position. Instead, Probation only looked at the 16 CDCA (out of 36) cases cited and concluded that those matters (1) "are not related to the instant matter, nor do they involve codefendants." [Dkt. 1043, p. 18]; and (2) involve defendants with lower total offense levels and reduced criminal history scores.[7]

---

[6] In addition, attached as Exh. YY is additional data from the United States Sentencing Commission Interactive Data Analyzer (https://www.ussc.gov/research/interactive-data-analyzer), which conclusively shows that sentences in fraud cases in the Central District and Ninth Circuit are but of a fraction of those sought by Probation and the government.

[7] In support of this argument, Probation gathered the PSRs for the 16 CDCA cases (but ignored the remaining 20 cases) described in one of defendant's charts and claims those cases involved total offense levels ranging from 20 to 32 and criminal history categories ranging from I to III. Defendant requested a copy of this information so he could properly respond and prepare for sentencing, but Probation refused to provide it. [Exh. ZZ]. As a

Probation's findings are inaccurate, its conclusions are contrary to the law, and its analysis completely missed the point.

First, the law is clear: the Court shall consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." §3553(a)(6). The disparity analysis does not center on codefendants or even on defendants within the same district. *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007), *citing United States v. Boscarino*, 437 F.3d. 634, 638 (7th Cir. 2006)("[T]he kind of 'disparity' with which §3553(a)(6) is concerned is an unjustified difference across judges (or districts) rather than among defendants to a single case."). Thus, Probation's act of discounting defendant's §3553(a)(6) analysis because the comparable cases do not involve codefendants or are from other districts is directly contrary to well-settled law.

Second, Probation argued that the 16 Central District (out of 36) cases cited in Exh. B involved cases with lower total offense levels and criminal history scores. However, defendant's heightened criminal history score is the result of the government's decision to bring three cases (across two coasts) at once despite the ability to bring a single prosecution [Dkt. 1016, p. 15-17; Exh. U; Exh. BB] and Probation's calculation of an extraordinarily high total offense level is the result of an inaccurate loss analysis (one that ignores the Guidelines) and the stacking of inapplicable enhancements, which in total results in 32 levels of enhancements (nearly 5x the base offense level).[8] [Dkt. 1016, p. 32-43]. Defendant has addressed at length the flawed loss analysis and also described Probation's repeated reliance on the same inaccurate facts to justify the application of multiple enhancements. [Dkt. 1016, Obj. Nos. 5, 14, 16, 17, 19, 20- 23, 26- 28, 33, 42-43; p. 31-35; Dkt. 1026, p. 5-7]. Instead of meaningfully responding to these objections,

result, defendant objects to the Court considering or crediting Probation's position.

[8] Bowman III, *Sentencing High-Loss Corporate Insider Frauds After Booker,* at 170 ("Judges should be particularly sensitive to the Commission's failure to consider adequately the cumulative effects of a number of closely correlated sentence enhancements that cluster in cases of high loss fraud by corporate officers.").

Probation performed no analysis, simply cited to the PSR (the basis of defendant's original objections), and summarily concluded, "the Probation Office respectfully maintains the enhancement was properly applied." [Dkt. 1043, p. 10, 13, 14-16].

Defendant acknowledges that some of the cases cited in Exh. B involve defendants with lower total offense levels. However, as described herein and previously, the exaggerated offense level here is the result of punitive and unreasonable tactics employed by both the government and Probation.[9] Even so, many of the cases cited by defendant describe defendants with similar or greater than total offense levels. [Exh. BBB]. And critically, many of the cases involve loss amounts far greater than the loss amount in this case. *See,* Henning, *White Collar Crime Sentences After Booker*, 37 McGeorge L. Rev. 757, 767 (2006)(The loss calculation remains "the most important factor in determining the application of the Sentencing Guidelines.").

## VI.   OTHER OBJECTIONS

In addition to defendant's prior objections, <u>all</u> of which he reasserts with the exception of the corrected typographical errors, defendant submits the following additional objections to issues raised in Probation's filings at Dkt. 1041, 1042, and 1043.

### A. <u>Restitution</u>

Defendant objects to Probation's adoption of the government's restitution analysis.[10] [Dkt.1043, p. 7; Dkt. 1042 ¶¶ 80-86, 289-93]. In response to the government's sentencing position, defendant lodged numerous objections and presented an alternative restitution calculation for the Court's (and Probation's) consideration (although he has no burden to do so). [Dkt. 1026, p. 6-8; Exh. LL]. Probation failed to provide any response to these objections and simply adopted the government's position wholesale.

In order to properly calculate the restitution due to the victims, the Court must

---

[9] Attached hereto as Exh. AAA is a copy of the government's sentencing positions the prosecution filed in many of the 16 Central District cases included in Exh. B of defendant's sentencing submission. A review of these sentencing positions reveals the punitive approach the government has taken in this case.

[10] Defendant also continues to object to Probation's determination of the loss amount.

reduce the gross settlement amount by (1) the attorneys' fees; (2) the costs and expenses incurred (including by co-counsel); (3) the advances or payments made to and/or for the benefit of the clients; and, (4) the reasonable value of work performed on other matters outside of the settlement at issue. The restitution amount should then be reduced by the full amount of all monies paid by third parties as required by §3664(j)(2). This analysis results in a restitution amount of less than $1,587,777.13. [Dkt. 1024, 1026].

B. Long Tran's Statement

Defendant objects to the inclusion of the Victim Impact Statement of Long Tran in the Revised PSR and also objects to any consideration of the statement by the Court because Mr. Tran never suffered any physical injury or pecuniary harm as a result of defendant's conduct underlying count eight (or any other Count), and thus he is not a "victim." *See* §2B1.1 cmt. n.1; §2B1.1 cmt. n.3; *United States v. Brown*, 771 F.3d 1149, 1162 (9th Cir. 2014); *United States v. Armstead*, 552 F.2d 769, 780-83 (9th Cir. 2008)(citing cases from the Second, Tenth, Sixth and Fifth Circuits, and vacating sentence and remanding after finding that in sentencing, a person must have sustained a monetary loss or a loss measurable in money in order to qualify as a "victim"). *See also,* Mandatory Victims Restitution Act, 18 U.S.C §§ 3663A(a)(1), (a)(2), (c)(1)(B) and (c)(1)(A)(ii).

C. Additional Miscellaneous Objections to the PSR

1 - Dkt. 1042, Guideline Summary, ¶149, Dkt. 1043, p. 8; Dkt. 1041, p. 2, 5, 10: Defendant objects to the revised Guideline calculation, inclusive of the total offense level and the criminal history category. Defendant also objects to Probation's recommended sentence.

2 - Dkt. 1042 ¶¶ 81-86, 91, 290-91; Dkt. 1042, p. 7-8, 13-14, 83; Dkt. 1041, p. 2: As addressed previously, defendant objects to Probation's adoption of the government's inaccurate restitution analysis. [Dkt. 1024, 1026, p. 6-8]. Defendant also objects to Probation's unsupported finding that defendant's economic circumstances "allow for a full and immediate payment of restitution." This is not accurate and it is entirely unclear how Probation could have possibly reached this conclusion.

3 – Dkt. 1042 ¶ 84: Defendant objects to the finding that the costs and expenses incurred

9

for Mr. Barela amounted to $111,113. Even the government's own accounting expert determined that the costs and expenses amounted to $180,797. [Trial Exh. 439].

<u>4 – Dkt. 1043, p. 3</u>: For the reasons provided previously, defendant objects to the finding that "the additional examples provided by the government [would] trigger the obstruction of justice enhancement." [Dkt. 1026, p. 11].

<u>5 – Dkt. 1043, p. 11</u>: Defendant objects to the determination that a four level downward variance should apply due to defendant's background, characteristics, and "the Sentencing Guidelines' overstatement of loss." Because defendant cited numerous mitigating factors that were not addressed by Probation, the consideration of those factors warrants additional downward variance.

<u>6 – Dkt. 1043, p. 13-14</u>: Defendant objects to Probation's false assertion that "the clients testified that they were either unaware or did not agree to be charged for legal work done outside their initial agreements with defendant." There is no support in the record for this statement and it is contrary to the facts.

<u>7 – Dkt. 1043, p. 5; Dkt. 1042, p. 4, ¶277</u>: Defendant objects to Probation's determination that "the guideline range is not capped at 240 months; however, it is capped at the combined statutory maximum term of 83 years (as to counts 5, 8, 9, 10, and 19)." Probation's original analysis was correct.

<u>8 – Dkt. 1043, p. 16</u>: Defendant objects to Probation's inaccurate determination that aside from the welding course, a BOP search revealed no further Vocational Training and Work records. Attached as Exh. CCC is defendant's transcript of programming (which does not include his participation in RDAP). Probation appears to have not reviewed the records.

<u>9</u>:  Defendant objects to Probation's failure to consider the recent widespread problems and failures of the BOP and their likely impact on defendant's incarceration. [Exh. DDD].

<u>10 – Dkt. 1043, p. 2</u>: Defendant objects to the government's allegation relating to George Washington University Law School. It is completely false.

Dated: November 21, 2022

Respectfully submitted,

/s/ Michael John Avenatti

MICHAEL JOHN AVENATTI