1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT EEE

TRULINCS  86743054 - AVENATTI, MICHAEL - Unit: TRM-D-A
-------------------------------------------------------------------------------------

FROM: 86743054
TO: Health Services
SUBJECT: ***Request to Staff*** AVENATTI, MICHAEL, Reg# 86743054, TRM-D-A
DATE: 11/29/2022 02:20:02 PM

To: Medical Staff re Covid-19
Inmate Work Assignment: A&O Complete

FOURTH WRITTEN REQUEST

This is at least the fourth written request I have made for the Covid-19 booster since August. It is imperative that I receive the booster due to my pre-existing conditions and health risks associated with Covid-19. I am concerned that no boosters have been available for inmates for months, especially considering the seriousness and transmissability of the most recent variants (some of which are 75-100 times more serious than six months ago).

In early February, immediately before self-surrendering, I received the most recent Covid-19 booster at CVS. Starting in early August (approximately six months later), I began inquiring of health services at Terminal Island as to when another booster would be available. I was told they had no idea.

I again inquired in September, especially after my Unit (Unit D) was quarantined for approximately six weeks due to approximately 30% of the unit testing positive for Covid-19. I was again told that medical did not know when it would be available. I submitted multiple written staff requests (cop-outs) during the Fall asking for the most recent booster, but received no response.

Last week, I inquired in person with medical staff (nurses Ms. Cook and Ms. Lopez) as to when I could receive the booster. I was told the booster still was not available and there was no timetable as to when it would be made available to prisoners.

Please provide the most recent booster or a timeline as to when it will be available.
Thank you.
Michael Avenatti

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT FFF**

meaningful limitations. Her conduct harmed hundreds of investors. Defendant's sentence should reflect the seriousness of her crime and the harm she has caused. A 130-month sentence would promote respect for the law in general, and for the securities laws and regulations governing those who solicit investors, in particular.

### 4. Deterrence / Avoiding Unwarranted Sentencing Disparities

The sentences imposed in this case should deter others from running similar fraudulent investment schemes. An inadequate sanction, as Defendant might request, would be insufficient to adequately punish and deter, and would create unwarranted sentencing disparities that the Ninth Circuit and Sentencing Commission have sought to avoid. Other individuals and businesses who solicit funds from investors must understand that the repercussions of fraud in this context will be significant and include substantial custodial time. An insignificant sentence would reinforce the notion that fraud is different than "real crime," and will earn the perpetrator merely the proverbial "slap on the wrist."

Sentences in other massive Ponzi schemes are instructive here to varying degrees. Bernard Madoff was sentenced to 150 years for his $17.4 billion scheme, and Allen Stanford to 110 years for a $7 billion scheme – but those crimes were on a very different order of magnitude. More comparable federal sentences include those of: (1) Claud "Rick" Koerber, who received 170 months for a $100 million Ponzi scheme in the District of Utah (Case No. 17CR37, ECF 638); (2) Michael Stewart, who received 168 months for a $169 million Ponzi scheme in the Central District of California (Case No. 14CR14, ECF 212); and (3) Duane Hamblin Slade, who received 180 months for a $166 million scheme in the District of Arizona (Case No. 13CR460, ECF 55). While all cases and defendants present unique circumstances, and Defendant's cooperation sets her case somewhat apart from those just cited, these sentences show that a sentence of 130 months would not create unwarranted sentencing disparities as to other individual defendants who ran very large Ponzi schemes.

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT GGG**

October 31, 2022

Steven Bledsoe
555 S. Flower Street, Suite 4400
Los Angeles, California 90071
Email: SBledsoe@

Callahan & Blaine
Daniel Callahan & Edward Susolik
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Email: dcallahan(          esusolik@

AUSA Ranee Katzenstein
Chief, Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Email: Ranee.Katezenstein@usdoj.gov

AUSA Brett Sagel
411 West Fourth Street, Suite 8000
Santa Ana, California 92701
Email: Brett.Sagel@usdoj.gov

Dear Counsel:

In connection with my December 5, 2022 sentencing in CDCA Case
No. 19-cr-061, I respectfully request that you produce the below
requested materials to my advisory counsel (Mr. Dean Steward) no
later than Tuesday, November 15, 2022. Please note that I have

1

previously requested most, if not all, of this information from the government, but unfortunately it has not been provided and my requests have been largely ignored. Without this information, it is impossible to determine proper restitution for each of your clients.

In connection with Geoffrey Johnson's restitution request, I ask that all fee, cost and expense information, as well as all backup information for each cost and expense be provided. This includes the backup for the cost and expense data listed in the information previously provided to Mr. Sagel (which was attached to the Karlous Declaration). I also request the fee agreement with Mr. Johnson, all settlement agreements between Mr. Johnson and any third parties in connection with Callahan & Blaine's efforts to recover monies, and the loan agreements/correspondence between Mr.. Johnson or his counsel and High Rise.

In connection with Mr. Barela's restitution request, I request all supporting documentation, invoices, receipts, settlement agreements, assignment agreements, etc. relating to any monies or consideration received by Mr. Barela or his counsel during January 2019 to the present from any party other than Michael Avenatti relating to Mr. Barela's claims/losses in this matter.

Please note that I have no objection to any or all of the above information being produced pursuant to the Protective Order in this case. Thank you in advance for your timely cooperation so that we may avoid the need to bring this to the attention of Judge Selna.

Sincerely,

/s./

Michael Avenatti

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT HHH**

 **Sagel, Brett (USACAC)**
Restitution

August 25, 2022 at 11:33 AM

To:  Dean Steward,   Courtney Cummings,   emma hernandez,   Cc:  Katzenstein, Ranee (USACAC)

Details

For Mr. Avenatti:
We are writing to see how Mr. Avenatti would want to handle restitution, specifically whether he would want it addressed at his sentencing hearing on October 3, 2022, or have a separate restitution hearing within 90 days of the sentencing pursuant to 18 U.S.C. § 3664(d)(5).  Moreover, the government would inquire whether Mr. Avenatti would want to attempt to stipulate to the restitution order.  Below are the government's initial calculations for restitution, please let us know if Mr. Avenatti has any questions.

**WIRE FRAUD VICTIMS**
<u>Geoffrey Johnson</u>- **$1,576,266**
- $4,000,000
- -$1,600,000 (40% fee)
- -$543,062 (costs and fees up to 1/29/15 – Trial Ex. 420)
- -$280,672 (payments made to Johnson directly or on his behalf for rent or other expenses after 1/29/15 – draft spreadsheet is attached)
  - (This spreadsheet includes amounts listed on defendant's Tabs records for Johnson, even if there is no corroborating record of such payments in bank statements or bank records.  In fact, the government has given defendant credit for all payments found in bank records that were not included in the Tabs records as well as amounts listed in the Tabs records, which may in some instances lead to giving defendant too much credit.  As one such example, on June 1, 2015, the Tabs records for Johnson lists a payment to Sunrise of West Hills for $6,112.01, even though there is no corresponding record of payment in any bank account for this amount around that time.  On June 4, 2015 (three days later), there is a payment to Sunrise of West Hills from EA LLP account ending in 2851 for $2,967.12.  The government included both the June 1 and June 4 amounts in being conservative in determining what defendant paid to Johnson.  The Tabs report also listed fed ex expenses for sending Johnson his lulling payments after 1/29/15, however, the government did not include these costs as they were not payments to Johnson nor proper expenses on Johnson's litigation).
- Total restitution due to Geoffrey Johnson: **$1,576,266**

<u>Alexis Gardner</u>- **$1,470,285**
- $2,750,000
- -$990,000 (33% fee (of the full $3,000,000 settlement))
- -$19,780 (Gardner's Tabs records)
- -$51,935 (rent and security deposit, Trial Ex. 147)
- -$218,000 (attached draft spreadsheet of payments to Gardner)
- Total restitution due to Alexis Gardner: **$1,470,285**

<u>Gregory Barela</u>- **$598,887**
- $1,600,000
- -$760,000 (40% fee (of the full $1,900,000 settlement))
- -$111,113 (Tabs records and withdrawal as total costs)
- -$130,000 (payments to Barela as "advances")
- +$34,453.80 (Of the remaining $300,000 due to Barela under the settlement agreement from Brock, Barela paid his new lawyers $34,453.80 in costs and fees to collect)
- Total restitution due to Gregory Barela: **$633,341**

<u>Michelle Phan</u>- **$4,000,000**
- Total restitution due to Michelle Phan: **$4,000,000**

**TOTAL RESTITUTION TO WIRE FRAUD VICTIMS**: **$7,679,892**

**IRS**
The Court can order restitution as a condition of supervised release to the victim of any criminal offense, including those in Title 26, for which supervised release is properly imposed, limited to the count of conviction.  <u>United States v. Batson</u>, 608 F.3d 630, 633-37 (9th Cir. 2010); <u>see also</u> USSG § 5E1.1(a)(2) (sentencing guidelines explicitly prescribing courts to order restitution as a condition of supervised release when a defendant has been found guilty of a tax crime under Title 26).  The restitution amount is limited to losses caused by the specific conduct underlying the offense of conviction and does not include relevant conduct, but prejudgment interest is permissible to make the victim whole.  <u>See Batson</u>, 608 F.3d at 637; <u>United States v. Gordon</u>, 393 F.3d 1044, 1058-59 (9th Cir. 2004), abrogated on other grounds by <u>Lagos v. United States</u>, 138 S.Ct. 1684 (2018).
- Restitution for Unpaid Payroll Taxes: **$3,207,144** (PSR ¶73)
- Although the Court could impose interest upon the restitution up to the date of sentencing, the government is only requesting the court impose restitution for the unpaid taxes related to Count 19.

**TOTAL RESTITUTION TO IRS**: **$3,207,144**

**TOTAL RESTITUTION TO BE ORDERED**: **$10,887,036**

**EXHIBIT III**

**From:** Dean Steward <deansteward7777@gmail.com>
**Sent:** Tuesday, August 30, 2022 3:53 PM
**To:** Sagel, Brett (USACAC) <BSagel@usa.doj.gov>
**Cc:** Katzenstein, Ranee (USACAC) <RKatzenstein@usa.doj.gov>
**Subject:** [EXTERNAL] from Mr. Avenatti

 Mr. Sagel:
Thank you for your email of last week. So that I may fully consider your email and requests re restitution, please provide the following additional information relating to restitution as soon as possible:
(1) A list of all payments received by the four victims from any third party relating in any way to the alleged losses (including the date, amount and from whom received). This incldues, for instance, any monies Mr. Johnson received from Mr. Eagan and any monies Ms. Gardner received from Mr. Whiteside.
(2) Any documentation or correspondence relating to Ms. Gardner's efforts to obtain monies from the sale of the plane.
(3) All billing records, invoices, and backup substantiating the $34,453.80 referenced in your email.
(4) The legal authority supporting Mr. Barela's ability to be reimbursed the $34,453.80 as restitution.
Thank you in advance.


Michael Avenatti



949-481-4900  www.deansteward.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT JJJ**

From: **Sagel, Brett (USACAC)** <Brett.Sagel@usdoj.gov>
Date: Thu, Sep 1, 2022 at 8:52 AM
Subject: RE: [EXTERNAL] from Mr. Avenatti
To: Dean Steward <deansteward7777@gmail.com>
Cc: Katzenstein, Ranee (USACAC) <Ranee.Katzenstein@usdoj.gov>

For Mr. Avenatti:

In response to your four categories, here are the government's replies:

1. As to payments made by third-parties, the government is still trying to collect this information; however, these payments would not change the restitution amount to be ordered, just who the payments would be made to and in what order.  See 18 U.S.C. § 3664(j)(1).
2. The government is unsure of how this is relevant to determining restitution owed.
3. & (4) Although we think there is a basis for this amount to be included in restitution pursuant to 18 U.S.C. §§ 3663, 3663A, we would forego the argument for this to be included if there is an agreement between the parties.

Also, the below does not address the initial question the government asked Mr. Avenatti in its August 25, 2022, email, specifically: whether he would want restitution addressed at his sentencing hearing on October 3, 2022, or have a separate restitution hearing within 90 days of the sentencing pursuant to 18 U.S.C. § 3664(d)(5).  Thanks,

Brett Sagel

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT KKK

 Dean Steward <deansteward7777@gmail.com>
To: Sagel, Brett (USACAC)

 Wed 9/7/2022 12:35 PM

Mr. Sagel,

I am sorry if I was unclear. I need the information I have requested so I can make a decision on whether I will stipulate to a restitution amount. Please provide all of the information as soon as possible so I can make a decision. If we are unable to stipulate, I will expect all restitution issues to be addressed and considered at the sentencing hearing, especially considering that there should now be plenty of time for the government to determine its position on restitution. Thank you in advance.



949-481-4900  www.deansteward.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT LLL

**From:** Dean Steward <deansteward7777@gmail.com>
**Sent:** Monday, September 19, 2022 3:30 PM
**To:** Sagel, Brett (USACAC) <BSagel@usa.doj.gov>
**Subject:** [EXTERNAL] From Mr. Avenatti


Mr. Sagel:
I have yet to receive a response to my prior email regarding restitution. Please provide the information I requested this week. Even if we are unable to stipulate, I will still need all information bearing on restitution no later than September 30 so I can properly prepare for the hearing set for October 31. This should include the information I requested. Thank you in advance.



949-481-4900   www.deansteward.com

**EXHIBIT MMM**

From: **Sagel, Brett (USACAC)** <Brett.Sagel@usdoj.gov>
Date: Mon, Sep 19, 2022 at 4:23 PM
Subject: RE: [EXTERNAL] From Mr. Avenatti
To: Dean Steward <deansteward7777@gmail.com>
Cc: Katzenstein, Ranee (USACAC) <Ranee.Katzenstein@usdoj.gov>

Upon further consideration, the government elects to address restitution in its separate sentencing position to be filed with the Court. The government will provide support for its proposed restitution figures to the Court, the Probation Office and you in its initial sentencing pleading due on or before October 10, and will be prepared to address any objections to those amounts that you raise in your response to the government's initial sentencing pleading at the sentencing hearing on October 31.

**EXHIBIT NNN**



**Courtney Cummings**

USA v. Avenatti - Additional Demand for Restitution Information

October 14, 2022 at 7:25 PM

To:  Katzenstein, Ranee (USACAC),   Sagel, Brett (USACAC),

Cc:  Dean Steward,   emma hernandez,   MariSela Barberena

Hide

Good Evening — Please see the below message from Mr. Avenatti that he asked that I share with you. Thank you.

"Ms. Katzenstein:

As you know, I have made repeated requests for information relating to the government's claimed restitution in this case over the last two months. None was provided in response. Most recently, I was assured by e-mail that all information would be included with the government's filing regarding sentencing. That, unfortunately, proved to be untrue. Accordingly, by the close of business Monday, please produce all relevant information, including but not limited to the following:

1. All supporting documentation, invoices, receipts, etc. substantiating each of the amounts shown within Exhibit C to the Karlous Declaration, including but not limited to (a) all backup information for each cost and expense, and each line item on ECF page 65 (the Callahan & Blaine cost accounting); (b) the fee agreement between Mr. Johnson and Callahan; (c) the settlement agreements involving Mr. Johnson that are referenced; and (d) the loan agreements between Mr. Johnson and High Rise, which evidently required Mr. Johnson to pay almost 100% interest on an eighteen month, $7,500 loan for living expenses after Callahan refused to advance him ANY monies.

2. All supporting documentation, invoices, receipts, settlement agreements, etc. for all monies received by Mr. Barela during 2019 to the present from any party other than Michael Avenatti relating to Mr. Barela's losses in this matter. Your office has enjoyed a very close relationship with Mr. Barela and his counsel for years. It is simply not believable that you do not know, or can not find out, what other settlement monies Mr. Barela or his counsel have received.

Thank you in advance for promptly providing this information so we can avoid burdening the Court and avoid delay.

Regards,
Michael Avenatti"