UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACR 19-61JVS | Date | December 5, 2022 |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

Interpreter

| Lisa Bredahl | Sharon Seffens | Brett Sagel/Ranee Katzenstein |
|---|---|---|
| *Deputy Clerk* | *Court Reporter.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| **Michael John Avenatti** | X | X | | H Dean Stewart, Stand by Counsel | X | | X |

**Proceedings:** SENTENCING - Non-Evidentiary

Cause is called for hearing with the defendant, his stand by counsel, and counsel for the Government present. The Court's tentative sentencing memorandum is issued. Counsel make their arguments on the Court's tentative sentencing memorandum. The defendant addresses the Court. The Court sentences the defendant (Refer to separate Judgment and Commitment Order) in accordance with its sentencing memorandum (attached hereto).

cc: USPO

                                                                        3 : 15

Initials of Deputy Clerk    lmb

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

United States v. Avenatti, Case No. SACR 19-61 JVS

Sentencing Memorandum

      This matter is before the Court for sentencing defendant Michael John Avenatti ("Avenatti") on his plea to Counts 5 and 8-10 of the Indictment for violation of 18 U.S.C. § 1343, wire fraud; and Count 19 of the Indictment for violation of 18 U.S.C. 7212(a), willful obstruction of tax collection. In arriving at a reasonable sentence as instructed by United States v. Booker, 543 U.S. 220 (2005), the Court has taken into consideration the United States Sentencing Commission Guidelines, the policies of the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a), and the specific facts of this case. The Court has reviewed the Amended Presentence Report ("PSR")[1] and the parties' submissions.[2] As set forth below, the Court finds that a sentence of 168 months imprisonment with a waiver of fine represents a reasonable sentence in light of all of these factors. The sentence shall be served consecutive to his sentences in the Southern District of New York, Docket Nos. 1:19- CR-00373 PGC and 1:19-CR-00373-JMF.

      1. Sentencing Guidelines.[3] In the main, the Court adopts the Guidelines analysis of the PSR.

      1.1. Offense Level. Nominally, the fraud counts and tax count group for sentencing purposes. U.S.S.G. § 3D1.2(d). However, the Probation Officer has concluded that the tax and fraud counts are sufficiently different to exclude them from grouping under the general rules in Section 3D1.2. (PSR, ¶ 99.) For example, the Government not the client victims, is the victim in Count 19. U.S.S.G. § 3D1.2(a). Moreover, although both involve monetary loss, the type of loss is different, and the tax loss is not derivative of the fraud conduct. (Id.)

---

[1] All references to the PSR are to the amended version.

[2] Avenatti faults the Probation Officer's failure give weight or due weight to the observations of Judges Paul G. Gardephe and Jesse M. Furman, the sentencing judges in the New York cases. (Avenatti's Response to Probation's Addendum, p. 3.) The Court has not considered their analyses in their separate cases. As an Article III judge, this Court has made an independent assessment of the substantial record here in making its sentencing decisions.

[3] Although the Court considers the Guidelines first, the Court is mindful that the Guidelines are only the starting point in crafting a reasonable sentence. Gall v. United States, 552 U.S. 38, 49 (2007); United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008); United States v. Cantrell, 433 F.3d 1269, 1280 (9th Cir. 2006). There is no presumption in this Court that a Guidelines sentence should apply. Nelson v. United States, 555 U.S. 350, 352 (2008) (*per curiam*); Rita v. United States, 551 U.S. 338, 351 (2007); Carty, 520 F.3d at 994.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Group 1: Fraud Counts.

The Court concurs that the applicable guideline is Section 2B1.1(a)(1) which provides a base offense level of 7. Several enhancements are applicable.

*Loss Calculation.* The Probation Officer calculates the loss amount as $12,350,000, consisting of losses of four client victims: Geoffrey Johnson ("Johnson") ($4,000,000), Alexis Gardner ("Gardner) ($2,750,000), Gregory Barela ("Barela") ($1,600,000), and Michelle Phan ("Phan") ($4,000,000). This represents the settlements which Avenatti failed to remit to his clients. This results in a 20-level enhancement. U.S.S.G. § 2B1.1(b)(K).

Avenatti claims that he is entitled to offset the fees and costs specified in his client agreements. (Motion for Evidentiary Hearing, Docket No. 1024, pp. 4-13 & Exhibits.) He ignores the fact that a lawyer by his conduct may forfeit his fees: "Fraud or unfairness on the part of the attorney will prevent him from recovering for services rendered; as will acts in violation or excess of authority, and acts of impropriety inconsistent with the character of the profession, and incompatible with the faithful discharge of its duties." Clark v. Millsap, 197 Cal. 765, 785 (1926) (internal quotation marks deleted).[4] Clark fairly describes Avenatti's conduct in this case. The Ninth Circuit has recognized the propriety of forfeiture such as the one ordered here. See Rodriguez v. Disner, 688 F.3d 645, 655 (9th Cir. 2012). The Court has considered the factors in the Restatement (Third) of Law Governing Lawyers § 37, and finds that they support a forfeiture here.[5]

*Substantial Financial Hardship.* Where a defendant causes substantial financial hardship to a victim as a result of his fraud, a 2-level enhancement is applicable. U.S.S.G. § 2B1.1(b)(2)(A). Gardner was homeless and living in her car. She was able to lease a place when Avenatti remitted some funds, but was again homeless when he cut off payments. Barela incurred charges for his new business when Avenatti told him settlement funds would be coming shortly. When Avenatti failed to make any payments, Barela could not pay those

---

[4]See additional authorities collected by the Probation Officer. (PSR, p. 27 n.15.)

[5]As noted below (Section 4), the Court has rejected offset for unrelated work. Taking Avenatti's own loss estimates without offsets, the loss enhancement would still be offense level 20. (See No. 1024, pp. 20-21.)
rejected, the loss enhancement would still be offense level 20. (See No. 1024, pp. 20-12) Indeed, if one only looked at Phan's $4 million loss, the offense level would be 18

charges or his own rent or living expenses. Johnson, a quadriplegic in poor health, was relying on his settlement to pay living and medical expenses. When Avenatti cut off the small payments he was making, Johnson was forced to rely on Social Security benefits, and lost the opportunity to purchase a house.

In each case, the financial harm was substantial, and the Court applies the enhancement.

Avenatti challenges the enhancement on the ground that he did some good for these clients initially. (Defendant's Memorandum and Objections to PSR, pp. 37-40 [hereinafter "Avenatti Objections"].) This was certainly true for Gardner and Johnson. But when he cut them off completely, each of the above victims was in dire personal, physical, or financial distress. The Court would impose the enhancement even if it considered only the plight of Gardner and Johnson.

*Vulnerable Victims.* A 2-level enhancement applies where the crime has been committed against a vulnerable victim. U.S.S.G. § 3A1.1(b)(1). A vulnerable victim is an individual "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." Id., Application Note 2. Johnson and Gardner clearly fall into this category. At least as to these victims, Avenatti's assertion that "the victims here were no more vulnerable than any other individual who fell victim to a scheme to which their legal counsel misappropriated a portion of client funds" is callous in the extreme. (Avenatti Objection, p. 34.) Moreover, he tacitly acknowledges the wrongfulness of his conduct when he asserts that the "nature of the attorney-client relationship allows for an inherent inequitable power dynamic." (Id.) Understanding that unequal dynamic, he nevertheless exploited his clients.

The Court applies the enhancement.

*Bankruptcy Misrepresentations.* Guidelines Section 2B1.1(b)(9) provides for a 2-level enhancement where the defendant's statements involved a misrepresentation during the course of a bankruptcy proceeding. A Statement of Financial Affairs for EA LLP, signed by Avenatti under penalty of perjury and filed with the bankruptcy, failed to include the $2,750,000 Gardner settlement. During the bankruptcy, he opened, but did not disclose, two bank accounts for receipt of the Barela and Gardner settlement proceeds. He also failed to reveal the Phan settlement and the Barela settlement in subsequent sworn filings. The effect was to conceal these transactions from his creditors and the bankruptcy court. United States v. Tanke, 743 F.3d 1296, 1307 (9th Cir. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Avenatti does not deny the misrepresentations. (Avenatti Objections, p. 42.) Without legal authority, Avenatti asserts that he was under no obligation to make the false statements or reveal the omissions, from which he apparently invites the Court to infer that it should ignore the sworn statements. Without factual support, he asserts that his actions were taken on the advice of counsel.[6]

The Court applies the enhancement.

*Sophisticated Means.* The Probation Officer applied a 2-level enhancement for use of sophisticated means in carrying out the fraud. U.S.S.G. § 2B1.1(b)(10)(c). The enhancement applies where the offense involved "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. U.S.S.G. § 2B1.1, Application Note 9(B). The scheme here involved a "high level of planning and concealment of defendant's theft, much more than simply diverting [settlement receipts]." Tanke, 743 F.3d at 1307 (internal quotation marks deleted). Avenatti "carefully engaged in dozens of various acts over a period of over [four years] to execute and conceal three separate types of fraud on the victim and his two business entities." Id. (internal quotation marks deleted).

While Avenatti points to more complicated frauds (Avenatti Objections, p. 40-41), there is no doubt about the complexity of the scheme here. Moreover, his deceptions of each client victim were not one-stop events: take the money and run. But rather each deception was strung out over time with multiple payments, split into multiple transfers, with ongoing misrepresentations to lull the victims. The Court applies the enhancement.

The contention the enhancement is duplicative of the enhancement for an abuse of a position of trust, discussed next, is without merit. While a position of trust might enhance a defendant's ability to carry out a sophisticated scheme, it is certainly not required. There is no double counting here. United States v. Stoterau, 524 F.3d. 988, 1001 (9th Cir 2008).

*Position of Trust.* Where the defendant acts in a position of trust, a 2-level enhancement is applicable. U.S.S.G. § 3B1.3. As a lawyer and fiduciary, Avenatti acted in a position of trust with respect to the client victims. The Court applies the enhancement.

*Obstruction of Justice.* The Probation Officer applied a 2-level enhancement for obstruction of justice. U.S.S.G. § 3C1.1. She concluded that release of a Tweet after a *Los Angeles Times* article identifying the defendant in the action he had brought for Gardner

---

[6] The initial PSR was issued on August 22, 2022. (Docket No. 822.) He thus had more than three months before the sentencing hearing to offer such evidence.

| CR-11 (09/98) | **CRIMINAL MINUTES - GENERAL** | Page 5 of 20 |

amounted to a breach of Avenatti's duty of confidentiality obligation to Gardner and a breach of the confidentiality terms in the settlement he had negotiated with that defendant. (PSR, ¶¶ 127-128.) In fact, the statement was in response to an inquiry by *The Times*. Avenatti said that "all of the relevant documents and facts would come out at trial." The Probation Officer found this amounted to a threat, and hence an obstruction.

The Court is unable to conclude by a preponderance of the evidence that Avenatti "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. The evidence does not support the conclusion that "the defendant consciously act[ed] with the purpose of obstructing justice." United States v. Lofton, 905 F.2d 1315, 1317 (9th Cir. 1990) (internal quotation marks deleted). The Tweet could equally be construed a personal denial of a personal wrongdoing which would likely enjoy First Amendment Protection.[7]

The Government offers other bases for the enhancement.

Relying on Avenatti's testimony at various related judgment debtor exams, bankruptcy proceedings, and other proceedings (Government Sentencing Position, pp. 9-12), the Government cites the Commission's non exclusive list of examples of obstruction: "committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction." U.S.S.G. § 3C1.1, Application Note 4(B). The Government's showing supports application of the enhancement.[8]

Avenatti asserts that the offending perjury must be made during the course of a criminal proceeding, citing United States v. DeGeorge, 380 F.3d 1203, 1222 (9th Cir. 2004). However, Application Note 4 was amended in 2006, and presently reads:

> The Commentary to § 3C1.1 captioned "Application Notes" is amended in Note 4 by inserting "Examples of Covered Conduct.--" before "The following"; in subdivision (b) by inserting ", including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction" after "suborn perjury"; by striking the period at the end of subdivision (j) and

---

[7] Avenatti notes that the Government expressed no objection to the statement to the *Los Angels Times* at the time. (Avenatti Objections, p. 35, Ex.Y.)

[8] The Court finds that Avenatti's serving a subpoena on Barela's wife as he was about to testify is insufficient.

inserting a semi-colon; and by adding at the end the following subdivision:

Guidelines Amendment 693, effective Nov. 1, 2006 (emphasis supplied). The provision in full quoted above is in effect and controlling. It specifically includes perjury in a civil proceeding. DeGeorge is no longer good law.

The Government also advances evidence of Avenatti's efforts to forge evidence under Application Note 4(C). Specifically, the Government points to his forgery of his law partner's signature on a settlement agreement to be used in the bankruptcy. (Government Sentencing Position, pp. 11-12.) This also supports the enhancement.

The total offense level for this Group is 39.

.

*Group 2: Tax Obstruction.*

The Court concurs that the applicable guidelines are Section 2T1.1 and 2T4.1. A resulting tax loss of $3,207,144 carries a base offense level of 22. U.S.S.G. § 2T1.4(I).

A 2-level enhancement for the use of sophisticated means is applicable. U.S.S.G. § 2T1.1(b)(2).

The total offense level for this Group is 24.

*Multiple Count Adjustment.*

Group 1 is scored at 1 unit. Because the difference between Groups is 9 or more, the Group 2 is not scored. One unit results in no increase in the offense level.

Using the highest offense level, the adjusted offense level is 39.

Acceptance of Responsibility.

The Guidelines provide for a reduction where the defendant has accepted responsibility "if the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The Probation Officer recommended against a reduction based on Avenatti's denial in his position paper that he did not violate 18 U.S.C. § 7212(2), the so-called Omnibus Provision. (PSR, ¶ 146, citing Avenatti Objections, p. 27.) However, the Charge in Count 19 was not 18 U.S.C. § 7212(2), but rather 21 U.S.C. 7212(a). The facts he admitted were sufficient to establish liability for a tax violation, and his contention as to which

statute applied is not a denial of criminal liability for his conduct. The Government advances other grounds for denial.

The Court finds that when Avenatti allocuted, he admitted every essential element of the crimes to which he pled. As the Government points out, he is not required to admit relevant conduct beyond the offense of conviction. (Government's Sentencing Position, p. 12.) That the Government believes that Avenatti should have admitted more does not diminish the sufficiency of what he did admit.

At the plea hearing, Avenatti announced that "I don't agree that the restitution amount is $9 million, nor that the tax loss is $5 million." (Tr. June 6, 2022, p. 14.) The Government contends that "[t]he assertions are empty and frivolous denials of the uncontested evidence that was presented at trial.' (Government's Sentencing Memorandum, p. 13.) This does not diminish the fact Avenatti's admission that he stole from his clients and caused a tax loss–he just questions the amounts. Moreover, given that the Court declared a mistrial and Avenatti never had the opportunity to present a case, it is, at a minimum, premature to claim that the restitution and tax loss amounts which he denied are "uncontested."

The litany of contested sentencing considerations which the Government cites in its Response to the Revised PSR (pp. 4-5) does not convert facially valid (albeit at times meritless) objections into denial of liability.

Avenatti cites the return of the jet purchased with embezzled funds and his apology to his clients as evidence in support of his acceptance of responsibility. While not determinative, these facts do show acceptance.

Considering all the evidence, Avenatti has made a minium showing to support a 2-level reduction.[9] U.S.S.G. § 3E1.2(a).

*********

The Court finds that the record establishes by a preponderance of the evidence the basis for each enhancement and the reduction. The adjusted offense level is 37.

1.2. <u>Criminal History.</u> The Court finds that the defendant's Criminal History Category is III, based on his July 8, 2021 conviction in the <u>Nike</u> case (3 points), and his June 2,

---

[9] While his plea does spare the Government a second trial and as well as the client victims from further emotional harm, these elements do not go to acceptance of responsibility.

2021 conviction in Daniels (Clifford) case (3 points). Six Criminal History points places Avenatti in Criminal History Category III. The fact that the New York cases partially overlapped the end of the 4-year scheme here does not change the analysis

Avenatti claims that his Criminal History is overstated. That prior criminal conduct may make the offender more culpable (Avenatti's Ojections, citing U.S.S.G. § 4A.1, Introductory Commentary), it certainly does not diminish his danger to the community. Moreover, as the Commission notes in the same Introduction, "Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation." (Id.) The conduct here was repeated–and swiftly.

The Court finds that the Criminal History here is not overstated.

1.3. Departures. The Court acknowledges that it has discretion to depart from the sentence which results from an application of the Guidelines. The Court finds no basis for a departure in this case.

1.4. Conclusion. The Court finds that proper application of the Guidelines calls for a sentence of imprisonment for 262-327 months and a fine of $40,000 to $400,000.

2. Sentencing Reform Act. In arriving at a reasonable sentence, the Court considers the following factors outlined in the Sentencing Reform Act.

2.1. Nature of Circumstances of the Offense and History and Characteristics of Defendant. As the Supreme Court observed in Gall v. United States, 552 U.S. 38, 52 (2007) (internal quotation marks deleted), "the sentencing judge consider[s] every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

Avenatti embezzled over $12 million from four clients over a period of years. He also obstructed the collection of employment-related federal taxes. Related conduct to which he did not plead included failure to pay income taxes and bankruptcy fraud.

Avenatti reports that he had a difficult childhood. He believes this made him more self-reliant and motivated, as reflected in work history and education.

He was born into a two-parent family. His mother was an alcoholic, and his father traveled extensively as a representative of Anheuser-Busch. At one point, his mother physically

attacked him.

In 1989, his father lost his job when the company downsized, and the family suffered financially.

He has been married twice.  The first marriage ended in divorce, and divorce proceeding are pending in the second.  His first wife explained that Avenatti was too driven, and she wanted a quieter life.

He has engaged in significant charitable activities.  Beginning shortly after graduating from law school, he made significant gifts to the school, including a $250,000 pledge to support student scholarships.

He has had several surgeries to address back problem and nerve entrapment in his left calf.  In 2019, he contracted pneumonia.  His doctor has advised him that he has a higher risk of catching Covid-19 as a result.

He began drinking at age 17 or 18, and was a biweekly drinker by age 21.  Around 2013 or 2014, his alcohol consumption increased as a result of his wife's drinking which pressured him to drink and the pressures and stresses of his the marriage and his law practice.  At the peak of his drinking, he was drinking three alcoholic beverages per day.  At the time of his arrest, he had reduced to three or four beverages per week.

He briefly smoked marijuana at age 23 and several times at age 45.

He has already been accepted into the RDAP program at Terminal Island where he is presently incarcerated.

In 2006 and again in 2014, he participated in marriage counseling.  After the marriages ended, he attended counseling for his own psychological needs.  He has also visited with the psychological staff while incarcerated.

Avenatti graduated from high school, and earned his undergraduate degree from the University of Pennsylvania.  He earned his law degree from George Washington University in 1999.  He received a number of academic awards, and graduated first in his class.  He worked full time to pay his college and law school tuition.

He worked at a number of jobs beginning at age 15 until he graduated from law school.  In law school, he clerked for two large law firms.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Upon graduation, he went to work for large law firms. In 2006, he started his own law firm, and until the time of his arrest, he worked for a series of law firms in which he was a partner or owner. Over the years he has obtained substantial judgments for victims of various injustices.[10] (Avenatti Objection, pp. 6-7, Exs. H, I, J, K.) He was continuously employed during his legal career.

As a result of his New York convictions, he has been suspended from practice by the State Bar of California

He presently has no ability to pay, and reports that he has a negative net worth of $45.5 million, resulting mainly from judgments against him and unpaid child support. (PSR, ¶ 347.)

2.2. <u>Need for Sentence to Reflect Seriousness of Offense, to Promote Respect for Law, and to Provide Just Punishment.</u> The Court finds that the Guidelines analysis has taken into account this factor.[11]

2.3. <u>Need to Afford Adequate Deterrence of Criminal Conduct.</u> The Court finds that the Guidelines analysis has taken into account this factor. The Court does not believe that disbarment and personal disgrace provide sufficient individual deterrence. Moreover, the cases reported in the legal and general press show that there is a need for general deterrence in the legal community.

2.4. <u>Need to Protect the Public.</u> The Court finds that the Guidelines analysis has taken into account this factor.

2.5. <u>Need to Provide Defendant Individualized Service Needs.</u> Avenatti will have mental health and substance abuse counseling available to him while in prison and on supervised release. He has already been accepted into the Bureau of Prison's RDAP program.

2.6. <u>Avoidance of Unwarranted Disparities.</u> Avenatti argues generally the Guidelines table for loss calculation is inherently harsh and unreasonable. Quoting the Sentencing Commission, the Ninth Circuit holds otherwise: "In particular, the Sentencing

---

[10] The same can be said of the results he achieved for the client victims in the cases at issue here.

[11] The Court does not mean that the Guidelines analysis overrides the factors in Section 3553(a), but rather that the Court will consider the same facts only once unless the facts have additional or different significance under a Section 3553(a) analysis or render the case atypical. The Court has noted where this is the case. <u>United States v. Mix</u>, 450 F.3d 375, 382 (9th Cir. 2006).

Commission has expressly concluded that in the case of fraud, "loss serves as a measure of the seriousness of the offense and the defendants relative culpability and is a principal factor in determining the offense level under [§ 2B1.1]." United States v. Treadwell, 593 F.3d 990, 1011-12 (9th Cir. 2010) (internal quotation marks deleted). Thus, the Court agrees with neither the general proposition nor the particulars he marshals.

Pointing to annual summaries from the Sentencing Commission, he noted that somewhat less than 2% of the Central District convictions in the fraud/embezzlement category resulted in sentences of ten years or more. (Avenatti Opposition to Government Position, p. 2, and Ex. GGG.) The difficulty with aggregate statistics is that they do not provide the particulars that underlay the sentences. Gall tells us that "every convicted person [is] an individual and every case [is] a unique study." Gall, 552 U.S. 52. Particularly without the presentence reports, the Court has no means of telling whether a particular sentence is the result of a unique constellation of aggravating factors or unique reasons for mitigation. The same is true where Avenatti points to specific individual cases such as Christensen, Ohanian, or Layfield, or Holmes.[12][13] That Avenatti "can point to a defendant convicted at a different time of a different fraud and sentenced to a term of imprisonment shorter than [Avenatti's] does not create an 'unwarranted' sentencing disparity." Treadwell, 593 F.3d at 1012

2.7. Kinds of Sentences Available. Under the terms of the advisory Guidelines, a sentence falling within Zone D must include a term of imprisonment equivalent to the low end of the Guidelines range (262 months). U.S.S.G. § 5C1.1(f). The Court, of course, acknowledges that this directive, as well as all others in the Guidelines, is merely advisory.

2.8. Facts of the Case. There are additional facts which the Guidelines analysis and the other factors in Section 3553(a) have not taken into account in type or degree. The Court takes into account his lengthy and successful career and the many favorable results he obtained for his clients. The Court considers his substantial charitable activities. The Court takes into account his difficult childhood, and his perseverance to educate himself working full time.

Although relatively brief, the Court considers the extreme conditions he endured at MCC in New York at the height of the pandemic. The pandemic has imposed harsh conditions of the whole society, and that is true of those living the corrections system, including lock downs and restricted access to many programs.

---

[12] See Avenatti's Response to Probation Addendum, p.1 n.1.

[13] Government's Response to Defendant's Sentencing Position, p. 14 n.15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

On the basis of these facts, the Court adopts a 4-level variance (Offense Level 34/Criminal History Category III).

2.9. <u>Sufficiency</u> of <u>Punishment.</u>  The Court finds that a sentence which is the equivalent of the low-end Guidelines range, after a variance, is sufficient but no more than necessary to meet the goals of the Sentencing Reform Act, including specifically recognition of the seriousness of the crime and deterrence.  <u>Kimbrough</u> v. <u>United</u> <u>States</u>, 552 U.S. 85, 110-11 (2007).  The Court finds that Avenatti does not have the ability to pay a fine.[14]

3. <u>Service</u> of <u>Sentence.</u>

The Probation Officer recommends that the present sentence be imposed concurrently to the undischarged term of his New York convictions.  (Probation Officer Letter, p. 2.)  The Government recommends that the sentence be imposed consecutively.  (Government's Sentencing Position, pp. 46-47.)

Where the criminal conduct here occurred before Avenatti commenced serving time for the New York cases, the Court has discretion to impose a concurrent, partially concurrent, or a consecutive sentence.  U.S.S.G. § 5G1.3(d).  The Court imposes the sentence consecutively.

One of the usual bases for a concurrent sentence is absent here: the present case is not relevant conduct to his New York convictions.  U.S.S.G. § 5G1.3(b), (c).  While the Government alludes to the New York cases in its Sentencing Position, principally with regard to the Criminal History calculation, it expressly denies that the New York cases are relevant conduct.  (Government Sentencing Position, pp. 17-18.)  Avenatti's assertion of Government concession to the contrary is simply mistaken.  (Avenatti's Opposition to Government's Position, p. 3.)  The fraud counts were not part of a common scheme or contemporaneous.  There is no relationship between Count 19, the tax obstruction count, and the New York claims, even arguably as to subject matter.  None of the factors in the commentary to Section 5G1.3 counsel against a consecutive sentence.  U.S.S.G. § 5G1.3, Application Note 4.

4. <u>Restitution.</u>  Congress has mandated restitution in full in cases like this.  18 U.S.C. § 3663A.  This is so without regard to the defendant's economic status.  18 U.S.C. 3664(f)(1)(A).  The Declaration of Treasury Special Agent Remount Karlous presents a well-documented calculation of the restitution amounts due each client victim.  Avenatti's

---

[14]Avenatti's ability to pay a fine or restitution has played no part in the Court's determination of a reasonable custodial or other liberty-restricting sentence.  <u>United States v. Burgum</u>, 633 F.3d 810, 814-16 (9th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

calculations are quite close because for this purpose the Government has recognized earned fees and costs. (Compare Defendant's Motion for an Evidentiary Hearing, pp. 20-21, pagination per docket, with Karlous Declaration.)[15]

| Client Victim | Karlous Decl.[16] | Avenatti Estimated Loss[17] | Rejected offsets |
|---|---|---|---|
| Geoffrey Johnson | $900,342[18] | $1,484,868 | $90,000 |
| Alexis Gardner | $1,460,785 | $1,360,750 | $100,000 |
| Gregory Barela | $598,887 | $279,203 | $250,000 |
| Michelle Phan | $4,000,000 | -$387,500 | -$4,387,500 |

The Court rejects Avenatti' claimed offsets for other work, and, with one exception, his Additional Restitution Reductions. Avenatti's partner Michael Eagan ("Eagan") paid Johnson $1,500,000 for a portion of the same loss.[19]

With regard to Phan, he took his entire fee out the first two payments made to Phan. (Karlous Decl., ¶¶ 19-20.) There was no further fee on the last $4,000,000 never paid because Avenatti had already taken it. Avenatti claims his contract fee of 7.5% based on additional benefits that he claims he secured to her. (Defendant's Motion for an Evidentiary Hearing, p. 12.) On information and belief, he puts these benefits at $58 million. This is a claim for other work not associated with the second part of $8,146,000 payment, and the Court rejects just as it has the other claims for other additional unrelated work. As with the other claims for additional work, he is free to pursue such claims in court, and if he is successful, recover a judgment for the funds. He is not entitled to short-circuit the process with what amounts to self-help.

---

[15]Although restitution here is statutory, it has an equitable underpinning which gives the Court the ability to avoid double recoveries or windfalls.

[16]Karous Decl., ¶¶ 14, 15, 17, 21.

[17]Docket No. 1024, pp. 20-21 (pagination per docket).

[18]Adjusted per text re Eagan payment.

[19]The Court agrees with the Probation Officer's analysis and awards second priority restitution to Eagam in the amount of $671,750.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Separately, the Probation Officer has estimated the amount due the IRS on the tax obstruction count to be $3,207,144. (PRS, ¶ 291.) Avenatti conceded that he is liable for this amount. (Avenatti Response to Probation's Addendum, p. 6.) The Probation Officer also provided for "secondary priority interest" for Michael Eagan, one of Avenatti's former partners. (Id.)

5. <u>Conditions</u> of <u>Supervised</u> <u>Release.</u>  Avenatti objects to Conditions 2, 4, 5, 8, and 9. (Avenatti's Objections, pp. 44-45.) He asserts broadly without pointing to why any particular Condition is offending that these conditions are not related to the goals of the Sentencing Reform Act, more burdensome than necessary, and are generally "overly broad and unduly oppressive and restrictive." (<u>Id.</u>, p. 45.) These are all standard terms, and the Probation Officer puts forth a proper and sufficient explanation for each contested condition. (Probation Officer Letter, pp. 11-13.)

His objections to some of the Conditions are not well taken. By his own tally, Avenatti owes millions in restitution. An order to apply all sources of income to that obligation could not be more linked to curing the harm here. (Condition 8.) At the hearing, the Court agreed to limit the requirement to pay taxes to the years of supervision. (Condition 4.)

6. <u>Objections</u> to <u>PSR.</u>[20]

*Government's Objections.*

The Probation Officer has responded to the Government's objections. (Addendum to the Presentence Report, pp. 1-7.) The Probation Officer has made responsive corrections to a number of the objections: <u>e.g.</u>, 47, 52, 60, 61, 181. The Court has addressed above disputes over the Probation Officer's recommendation for a concurrent sentence, a departure on Criminal History the Guideline calculation, and reduction for accepting responsibility.

*Avenatti's Objections.*

The Probation Officer has responded to the Avenatti's Objections. (Addendum to the Presentence Report, pp. 1-7.) The Court enters its rulings.

---

[20] The objections are to the original PSR. Thus the references in this section only are to the original PSR.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Objection No. | PSR Citation | Response |
|---|---|---|
| 1 | Page 2, release status | Probation Officer corrected. |
| 2 | Page 4, guidelines summary | Court addresses in text above. |
| 3 | ¶ 1, n.1 | Court notes; no effect on sentencing. |
| 4 | ¶¶ 9, 81, 280 | Court overrules. |
| 5 | ¶¶ 18-19, 82, 116-117 | Court addresses in text above. |
| 6 | ¶ 20 | Court notes additional fact. |
| 7 | ¶ 21 | Court notes; no effect on sentencing. |
| 8 | ¶ 23 | Court notes. |
| 9 | ¶ 30 | Court notes. |
| 10 | ¶ 31 (a), (c), (d) | Court overrules. |
| 11 | ¶ 36 | Court notes; no effect on sentencing. |
| 12 | ¶ 41 | Court notes; no effect on sentencing. |
| 13 | ¶¶ 41 n.5, 50 n.9, 55 n.10 | Court notes; no effect on sentencing. |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| 14 | ¶¶ 43 n. 7, 107 | Court overrules. See Johnson's testimony at RT 7/22/21 v.I at 34 ("Q. Does that appear to be your signature? A. No, it does not."). |
|---|---|---|
| 15 | ¶¶ 45-47(a)-(e) | Court overrules. |
| 16 | ¶¶ 47(c), 98, 112 | Court overrules. |
| 17 | ¶¶ 47(e), n.8, 113 | Court notes; no effect on sentencing. |
| 18 | ¶¶ 48-52(b) | Court overrules. |
| 19 | ¶¶ 48, 50-51 | Court addresses in text. |
| 20 | ¶¶ 49, 107 | Court overrules. |
| 21 | ¶¶ 52(a), 99, 107 | Court notes; no effect on sentencing. |
| 22 | ¶¶ 52(b), 99 | Court overrules. |
| 23 | ¶¶ 54, 100 | Court overrules. |
| 24 | ¶¶ 55-57 | Court overrules. |
| 25 | ¶¶ 53-58 | Court overrules. |
| 26 | ¶ 57(b) | Court notes; no effect on sentencing. |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| 27 | ¶ 63 | Court overrules. Claimed additional fee offset discussed in text. |
|---|---|---|
| 28 | ¶ 65 | Court overrules. No effect on sentencing. |
| 29 | ¶¶ 56-67 | Court overrules. |
| 30 | ¶¶ 71-75 | Court overrules. |
| 31 | ¶¶ 79, 93-95 | Court overrules. |
| 32 | ¶ 94 | Court overrules. |
| 33 | ¶ 98 | Court overrules. |
| 34 | ¶¶ 96-101 | Court overrules. Issue addressed in text. |
| 35 | ¶¶ 101-102, 50 n.9, 55 n.10, 61 n.12 | Court overrules. Issue addressed in text. |
| 36 | ¶¶ 106-109 | Court overrules. Issue addressed in text. |
| 37 | ¶ 108 | Court overrules. |
| 38 | ¶¶ 110-113 | Court overrules. Issue addressed in text. |
| 39 | ¶¶ 121, 76 & pages 21-22 | Court overrules. |
| 40 | ¶¶ 123, 76 | Court overrules. Issue addressed in text. |
| 41 | ¶ 124 | Court overrules. |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| 42 | ¶¶ 139-40 | To the extent these are objections to facts that will be taken into account at sentencing, the statements in the PSR is correct. See, e.g., Sent. Ex. 42. See also CR 78 Ex. 3 at 43-49 |
|----|-----------|---|
| 43 | ¶¶ 141-146 | Court notes. No effect on sentencing. |
| 44 | ¶¶ 145-146 | Court overrules. |
| 45 | ¶ 146 | Court overrules. Issue addressed in text. |
| 46 | Page 38 | Court noters. No effect on sentencing. |
| 47 | Page 38 | Court noters. No effect on sentencing. |
| 48 | ¶¶ 152-153 | Court overrules. Issue addressed in text. |
| 49 | ¶ 156 | Court notes. No effect on sentencing. |
| 50 | ¶ 216 | Court overrules. |
| 51 | ¶ 218 | Court notes. No effect on sentencing. |
| 52 | ¶¶ 233 | Court notes. No effect on sentencing. |
| 53 | ¶¶ 235, 242, 244 | Court notes. No effect on sentencing. |
| 54 | ¶ 274 | Court overrules. |
| 55 | Page 61, ¶¶ 278-279 | Court notes. There will be no delayed restitution hearing. |
| 56 | Dkt 977, pp. 26,9 | Court overrules. Issue addressed in text. |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| 57 | Dkt 977, pp. 2-4 | Court overrules. Issue addressed in text. |
| 58 | Dkt 977, p. 4 | Court overrules. |
| 59 | Dkt 977, p. 5 | Court overrules. |
| 60 | Dkt 977, p. 10 | Court overrules. Issue addressed in text. |
| 61 | PSR Cover Page. P.2, ¶¶ 17, 64, 37, 226 | Corrections noted. |

    7. <u>Final</u> <u>Comment.</u> As is the case with most human beings, there is the ability to do great good on an individual level or even a national or global scale. But there is also the ability to do great evil through willfully inflicting great harm on others through greed, arrogance, lying, uncaring dealing with others and blind-sightedness. As noted above, Avenatti has done many noble and good things in his life, some reflected in this case. But he has also done great evil for which he must answer. His actions in this case and in the relevant conduct show an abandonment of some of the most basic principles of fairness. That is all the more tragic where he received a fine education and achieved academic excellence, was presented with challenging opportunities at major law firms, and had the opportunity to build a series of his own successful law firms. It is now time for him to pay his debts to his victims, the Government, and to society in general.

    8. <u>Conclusion.</u> In setting this sentence, the Court has taken into account that it has discretion under both the Guidelines and <u>Booker</u>. As noted above, the Court has exercised its discretion under <u>Booker</u>, but in adopting the present sentence, the Court is mindful that whether a sentence falls within or without the Guideline range, the Court's ultimate decision is a reflection of its discretion. The Court finds that taking into account the analysis mandated by <u>Booker</u>, a sentence of 168 months imprisonment with a waiver of fine represents a reasonable sentence. The sentence shall be served consecutive to the terms for his convictions in the Southern District of New York, Docket Nos. 1:19- CR-00373 PGC and 1:19-CR-0037.