UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

```
UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
                 Plaintiff,   )
   vs.                        )
                              )  SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,        )
                 Defendant.   )
------------------------------)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

May 28, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(612) 804-8655

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     ALEXANDER WYMAN
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
15   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
16   (949) 481-4900

17

18

19

20

21

22

23

24

25
```

```
         1   SANTA ANA, CALIFORNIA; FRIDAY, MAY 28, 2021; 11:02 A.M.
11:02    2              THE CLERK:  Item No. 1, SACR-19-00061-JVS, United
11:02    3   States of America versus Michael John Avenatti.
11:02    4              Appearances on behalf of the government, please.
11:02    5              MR. SAGEL:  Good morning, Your Honor.  Brett Sagel
11:02    6   and Alexander Wyman on behalf of the United States.
11:02    7              THE COURT:  Good morning.
11:02    8              MR. STEWARD:  Your Honor, Dean Steward on behalf
11:03    9   of Mr. Avenatti.  We have a waiver on file, and he's joining
11:03   10   us by telephone.
11:03   11              THE COURT:  Very good.  Good morning.
11:03   12              MR. STEWARD:  Good morning.
11:03   13              MR. AVENATTI:  Good morning.
11:03   14              THE CLERK:  Pretrial Services is also here, Judge,
11:03   15   Ms. Gardner.
11:03   16              THE COURT:  Good morning.
11:03   17              MS. GARDNER:  Good morning, Your Honor.
11:03   18              Before the Court is an application to reopen the
11:03   19   original bail hearing pursuant to 18 USC Section 3142(f).
11:03   20   Let me share my preliminary thoughts.  I believe that the
11:03   21   evidentiary showing which the government made in January of
11:03   22   2020 is still valid.  It compels detention.  I don't believe
11:03   23   that any of the new factors outlined in Mr. Avenatti's
11:03   24   application are either new or material to the analysis.
11:03   25              I'd like to hear your thoughts, but I'll go into
```

```
11:04   1    greater detail later explaining those thoughts.  So it's
11:04   2    your motion, Mr. Steward.
11:04   3           MR. STEWARD:  Yes, Your Honor.  With the Court's
11:04   4    permission, I will just stay here I think.
11:04   5           THE COURT:  That's fine.
11:04   6           MR. STEWARD:  Our position really is that the
11:04   7    13-month period up to now has provided the Court with a
11:04   8    complete window into Mr. Avenatti's conduct, whether he's a
11:04   9    danger and whether he's a flight risk.  Our feeling is that
11:04  10    this was a factor obviously that we couldn't know back in
11:04  11    the second bail hearing in January.  It's something that we
11:04  12    didn't know, and now we have as proof that he's neither a
11:04  13    danger nor a flight risk.
11:04  14           Obviously, in the first ten months that he was on
11:04  15    bond in terms of flight risk, he could have just left if he
11:05  16    wanted to.  Now, it's the same situation.  If he really
11:05  17    wanted to go, he could have.  But we suggest that he has
11:05  18    proven himself in terms of both prongs, both danger and
11:05  19    flight risk.
11:05  20           THE COURT:  I don't think anyone has ever
11:05  21    contested that he's a flight risk.
11:05  22           MR. STEWARD:  The government seems to think
11:05  23    otherwise, but certainly he hasn't been found to be a flight
11:05  24    risk.  On that note, Your Honor, we would point to the Twine
11:05  25    case, which supersedes the Motamedi case, the case from the
```

```
11:05   1    '80's talking about presumptions and that sort of thing.
11:05   2    The Twine case says that whenever you have a situation where
11:05   3    flight and danger are question marks that danger alone
11:05   4    should not control, that the flight risk also has to be
11:05   5    viewed, and it has to be found that he's a serious -- and I
11:06   6    underline the word "serious" -- flight risk in order to
11:06   7    detain him as he has been.
11:06   8              Since flight is not on the table here, we believe
11:06   9    that under Twine danger alone is not enough.  And in terms
11:06   10   of economic danger, nothing has happened.  The one little
11:06   11   bump in the road that we had having to do with the laptop
11:06   12   really had nothing to do with danger to the community or
11:06   13   moving funds or anything like that.
11:06   14              THE COURT:  Well, it's just a potential violation
11:06   15   of the Court's terms of releasing him.
11:06   16              MR. STEWARD:  Well, I understand that, Your Honor.
11:06   17   I also understand that the Court hasn't made a ruling one
11:06   18   way or another on that, and that was how many months ago?
11:06   19              THE COURT:  Some number.
11:06   20              MR. STEWARD:  His conduct since then, as Pretrial
11:06   21   Services has set out, has been fully compliant I believe was
11:07   22   the words that they used.  I mean, it just seems to me that
11:07   23   it's a major factor.  It's a new factor because it's a track
11:07   24   record that we didn't have back 13 months ago, and I cannot
11:07   25   imagine a better piece of evidence than his track record for
```

```
11:07   1   the last 13 months.  He has not been a danger.  He has not
11:07   2   been a flight risk that whole time.
11:07   3           He's conducted no sort of conduct whatsoever that
11:07   4   would suggest a problem on bail.  He stayed in the apartment
11:07   5   in Venice with the exception of one time when he got his
11:07   6   first COVID shot --
11:07   7           THE COURT:  As the Court authorized.
11:07   8           MR. STEWARD:  Yes, as the Court authorized and we
11:07   9   had requested.  But, again, staying in the same place for 13
11:07  10   months I suggest is strong proof, and I would submit.
11:08  11           THE COURT:  Who is going to address this?
11:08  12           MR. SAGEL:  I will, Your Honor.
11:08  13           THE COURT:  Mr. Sagel.
11:08  14           MR. SAGEL:  I'll keep it short unless Your Honor
11:08  15   has any specific areas you want me to cover.
11:08  16           THE COURT:  Well, let me ask you this.  Suppose I
11:08  17   granted the application to reopen, and I concluded that
11:08  18   there was a basis to grant bail but only on the same terms
11:08  19   and conditions that are presently imposed.  What's the
11:08  20   difference?
11:08  21           MR. SAGEL:  There's no difference, and I think
11:08  22   Your Honor is kind of -- a different way of looking at it is
11:08  23   kind of what our point is.  If there are a combination of
11:08  24   conditions that could ensure safety and lack of flight, Your
11:08  25   Honor has imposed them.  They were imposed in March and
```

|  |  |  |
|---|---|---|
| 11:08 | 1 | April of last year.  So basically their argument is proving |
| 11:08 | 2 | what Your Honor has done.  These were the conditions |
| 11:08 | 3 | necessary for him to be in compliance. |
| 11:08 | 4 | So I'm not sure there is much of a difference, but |
| 11:09 | 5 | there is no legal basis to reopen it for the very reasons |
| 11:09 | 6 | Your Honor stated from the get-go.  There is nothing new, |
| 11:09 | 7 | nothing material.  And if what they're looking at is, as |
| 11:09 | 8 | Mr. Steward says, he proved himself to be in compliance -- |
| 11:09 | 9 | again, I'm not saying he's done something wrong that I know |
| 11:09 | 10 | of, but keep in mind from March of 2019 to January of 2020, |
| 11:09 | 11 | over a ten-month period, Mr. Steward would have said the |
| 11:09 | 12 | exact same thing. |
| 11:09 | 13 | It was only in about December of 2019 right before |
| 11:09 | 14 | this hearing that we learned of all the evidence that was |
| 11:09 | 15 | here that resulted in it.  Pretrial Services didn't know |
| 11:09 | 16 | what he was doing.  Mr. Avenatti clearly wasn't telling |
| 11:09 | 17 | anybody what he was doing. |
| 11:09 | 18 | So the problem is the lack of seeing what Mr. |
| 11:09 | 19 | Avenatti is or isn't doing isn't proof that he is completely |
| 11:09 | 20 | compliant.  As we've seen from the very detention hearing |
| 11:09 | 21 | and the Court's findings and the Ninth Circuit affirming it, |
| 11:10 | 22 | he is a danger to the community.  He was then, and he still |
| 11:10 | 23 | is now.  He's clearly an economic danger to the community |
| 11:10 | 24 | and Your Honor has set conditions to deal with that. |
| 11:10 | 25 | What I would say as we sit here right now -- and I |

11:10  1   don't think it is a surprise to anybody -- Your Honor has
11:10  2   said he's going to stay on these conditions -- or
11:10  3   tentatively I think you said --
11:10  4             THE COURT:  Indicating it.
11:10  5             MR. SAGEL:  -- out until the trial.  At the end of
11:10  6   this trial, we're going to be potentially in a new place to
11:10  7   consider it at that point.  Depending on the results of the
11:10  8   trial, we'll have a different section of the Bail Reform Act
11:10  9   applying, or they would come to Your Honor and ask for
11:10 10   different bail circumstances going forward depending on the
11:10 11   outcome in their favor.
11:10 12             I just think as we sit here about six weeks out
11:10 13   from trial this is just a moot point, and there is --
11:11 14   namely, because we can't reopen -- we could reopen, but
11:11 15   there's no legal basis to reopen.  He is on bail, and he is
11:11 16   on conditions that Your Honor has set that are properly
11:11 17   guaranteeing that he will comply.
11:11 18             THE COURT:  The government doesn't push it, but
11:11 19   the government does note that technically he probably isn't
11:11 20   detained at this time.
11:11 21             MR. SAGEL:  He's not detained at this time.  I
11:11 22   mean, both on the law and Bail Reform Act.  Again, something
11:11 23   we're jumping ahead of, but the case law is very clear.
11:11 24   When you are released on the Bail Reform Act, you are not in
11:11 25   BOP custody for time-served status and so forth, so he is

```
11:11   1    on release right now.
11:11   2              THE COURT:  Okay.
11:11   3              Mr. Steward.
11:11   4              MR. STEWARD:  Just briefly, Your Honor.
11:11   5              On whether he is detained or not, my position is
11:11   6    that he's like on a furlough.  Specifically, the contract he
11:11   7    signed with Pretrial Services talked about home
11:12   8    incarceration.  I think from their view and from mine, he is
11:12   9    detained, but he's been allowed out on the terms that the
11:12  10    Court set out.
11:12  11              The other thing I wanted to point out in terms of
11:12  12    the new factors -- we pointed out many of them.  Two others
11:12  13    that I would suggest are particularly important is the
11:12  14    preparation of a presentence report in the Nike or New York
11:12  15    City case wherein he was not found -- the report indicates
11:12  16    that in the opinion of the probation officer he's not a
11:12  17    danger or a flight risk.  Judge Gardephe in that case did
11:12  18    not remand him.  He was already in custody, but that wasn't
11:12  19    even addressed at that time.
11:12  20              The other thing is our own Pretrial Services
11:12  21    report indicates that their position is he has not been a
11:12  22    flight risk and he is not currently a danger.  I would
11:12  23    suggest that those two factors combined with the performance
11:13  24    over the last 13 months indicate that he's not a danger or a
11:13  25    flight risk, and I'd ask the Court to consider the proposed
```

```
11:13    1   conditions that we've submitted.  Thank you.
11:13    2               THE COURT:  Thank you.
11:13    3               In affirming my earlier remand order, the order
11:13    4   issued March 6, 2020, the Ninth Circuit observed the
11:13    5   district court correctly found that the government had
11:13    6   established probable cause to believe that a felon had
11:13    7   committed a crime while on supervised release.  That's
11:13    8   citing 18 USC, Section 3148(b)(1)(A).  In my view, nothing
11:14    9   has changed either in my original holding in that regard,
11:14   10   nor in the basis for the Ninth Circuit's affirmance of that
11:14   11   point.
11:14   12               The only issue is Mr. Avenatti comes forward with
11:14   13   additional argument characterizing a payment to Ms. Carlin,
11:14   14   Mr. Avenatti's ex-wife.  I observe two things.  There's no
11:14   15   dispute that he paid her something like $700,000, but that
11:14   16   she immediately returned to him by certified check $500,000,
11:14   17   potentially to buy him a car.  I think that is a diversion
11:14   18   of the funds.
11:14   19               Even if I came to the conclusion that that
11:14   20   allegation is no longer supported by the additional argument
11:14   21   advanced here, it ignores all the other grounds for the
11:15   22   original finding.  At pages 38 through 42, the government
11:15   23   laid out its evidence with regard to a series of other
11:15   24   violations besides the issue with Ms. Carlin that included
11:15   25   wire fraud, structuring, and violations of California law
```

```
11:15   1   and Washington law.
11:15   2              With regard to the supposed new factors, I don't
11:15   3   think any of them are new and/or material.  I don't think
11:15   4   that Mr. Avenatti's compliance with the terms of temporary
11:16   5   release mitigate his danger to the community.  The fact that
11:16   6   his surety is willing to transfer over -- is a surety on a
11:16   7   temporary release versus a surety on a regular bond I think
11:16   8   is immaterial.
11:16   9              Similarly, the ability of a third-party custodian
11:16  10   to serve -- I don't think his indigency bears on the issue
11:16  11   at all.  Indeed, one passage is cited at page 12 of
11:16  12   Mr. Avenatti's opening brief at document 448.  He quotes the
11:16  13   U.S. Attorney in the Nike case as follows.  This is from the
11:16  14   closing argument:  "And that is why we are here today,
11:16  15   because Michael Avenatti facing a mountain of debts saw a
11:17  16   light at the end of the tunnel.  He saw a way to walk out
11:17  17   from under those debts.  And also Avenatti took what Gary
11:17  18   Franklin told him and used it.  He used it to shake down
11:17  19   Nike to line his pocket to try to pay off his debts."
11:17  20              It seems to me indigency is a factor that goes to
11:17  21   the dangerousness.  And I think in the closing argument
11:17  22   there, the U.S. Attorney suggested that indigency provided a
11:17  23   motivation, at least in that argument, for committing the
11:17  24   crime he committed in the Nike case.
11:18  25              I won't go through all of the new factors, but I
```

```
11:18   1    find them to be not new or immaterial.  That would include
11:18   2    the suspension of his law license, his status as unemployed,
11:18   3    and the fact that he wasn't remanded in Nike or in the
11:18   4    Daniels case.
11:18   5            Mr. Avenatti also argues that there is a due
11:18   6    process violation here given the rights of detention, and
11:18   7    Mr. Avenatti cites specifically United States versus Torres,
11:18   8    995 F.3d 695, April 23, 2021.  It also appears in West Law
11:18   9    at 2021 WL 1589361.
11:19  10            Ramirez doesn't support Mr. Avenatti's position.
11:19  11    There the Court held that the detention for 21 months -- and
11:19  12    that was detention in actual custody -- at least at that
11:19  13    point didn't violate the due process clause or the Bail
11:19  14    Reform Act.  Mr. Avenatti has not been in custody at that
11:19  15    time.
11:19  16            Moreover, the Court observed there the first two
11:19  17    continuances were stipulated to for the benefit of Torres'
11:19  18    counsel to adequately prepare his case, and the remainder of
11:19  19    the continuances were a direct result of the COVID-19
11:19  20    pandemic.  This factor weighs against a finding of a due
11:19  21    process violation.
11:19  22            I think the facts are aligned here, and the Court
11:20  23    reaches the same conclusion, although the present motion is
11:20  24    not advanced in seeking due process relief or seeking relief
11:20  25    under the Speedy Trial Act.
```

```
11:20   1          For all those reasons, I deny the application to
11:20   2   reopen.
11:20   3          Anything further?
11:20   4          MR. STEWARD:  No, Your Honor.
11:20   5          THE COURT:  Okay.
11:20   6          MR. AVENATTI:  Your Honor, this is Mr. Avenatti.
11:20   7   Would it be possible for me to speak with Mr. Steward
11:20   8   briefly?
11:20   9          THE COURT:  Yes.
11:20  10          MR. SAGEL:  Your Honor, I might have something
11:20  11   that -- it might be what he's going to ask about.  I don't
11:20  12   know.  Mr. Steward has raised a few changes to
11:20  13   Mr. Avenatti's bail, one of which was for Mr. Avenatti to
11:20  14   attend court and trial and to work with Mr. Steward and
11:20  15   Mr. Steward's offices -- or I guess his paralegal's offices.
11:20  16   We never would have opposed that.  We don't oppose that.
11:21  17          I don't know if he feels the need to have that
11:21  18   modified by Your Honor.  I don't know if Mr. Steward was
11:21  19   going to raise that, and I don't know if that's what he
11:21  20   wanted to talk to Mr. Steward about, but we would not oppose
11:21  21   those being conditions of his release.
11:21  22          THE COURT:  Why don't you submit a stipulation
11:21  23   along those lines.
11:21  24          MR. STEWARD:  I'll do that, Your Honor.  Thank
11:21  25   you.
```

```
11:21    1              THE COURT:  Okay.  Thank you for the revised
11:21    2   updated set of proposed jury instructions.  I still need the
11:21    3   WordPerfect version of it.  I understand you're working on
11:21    4   it.
11:21    5              MR. SAGEL:  We are.  I have a couple little
11:21    6   housekeeping questions of Your Honor.
11:21    7              THE COURT:  Sure.
11:21    8              MR. SAGEL:  With the jury instructions, our first
11:21    9   question is I'm having our paralegal kind of do that right
11:21   10   now.  I guess the question is do you want us doing that
11:21   11   before you decide things because if we go back and edit?
11:21   12   For example, as to what we did with the questionnaire, it's
11:22   13   much easier for us to do it while it still remains in Word,
11:22   14   and then we can do the conversion at that point.  If we
11:22   15   convert it all to WordPerfect, it's much harder for us to
11:22   16   make changes as it's going forward because we have one
11:22   17   stand-alone computer with WordPerfect on it, and we can't
11:22   18   print anything from it.
11:22   19              THE COURT:  Well, if I don't have it in
11:22   20   WordPerfect -- I'm the one that does the editing.
11:22   21              MR. SAGEL:  I don't want to put the editing on
11:22   22   you, but as long as that's going to be the case, then we can
11:22   23   get it to you as soon as our paralegal converts it.
11:22   24              THE COURT:  You've already submitted a complete
11:22   25   set of what we would instruct at the end of the trial.  I
```

```
11:22   1    anticipate a more robust set of initial jury instructions
11:22   2    than usually would be given, you know, get into the duties
11:22   3    of an attorney, get into the basic fraud instruction, but
11:22   4    not all the rest.
11:22   5              MR. SAGEL:  Understood, Your Honor.  Going back to
11:23   6    comments Your Honor said I think about a week and a half ago
11:23   7    at our last status conference about the copying of the
11:23   8    questionnaires, the government is still completely fine with
11:23   9    doing what Your Honor proposed.  The one thing we did think
11:23   10   about and realized after the hearing is it would need to be
11:23   11   either someone on the court staff or defense counsel or
11:23   12   someone on the other side who is there with us while we're
11:23   13   copying so that the government is not the only one in
11:23   14   possession of the questionnaires.  Unless there is some kind
11:23   15   of a waiver or something, the government doesn't feel
11:23   16   comfortable taking the entire universe of the questionnaires
11:23   17   on their own without someone else being present.
11:23   18             MR. STEWARD:  It reminds me of Arizona voting at
11:23   19   the moment.  I'll have a paralegal attend.  No problem.
11:23   20             THE COURT:  Okay. That's fine.  Frankly, the
11:23   21   government's attorneys as officers of the court would be
11:23   22   sufficient for me to ensure that all of them are copied, and
11:24   23   all of them are copied completely, and they are no
11:24   24   alterations on them.  But, Mr. Steward, if you want to have
11:24   25   a paralegal observe, that's fine.
```

```
11:24   1              MR. STEWARD:  Yes, Your Honor.  My paralegal will
11:24   2   be able to assist as well.
11:24   3              MR. SAGEL:  With regards to the questionnaires, we
11:24   4   resubmitted those yesterday.
11:24   5              THE COURT:  Right.
11:24   6              MR. SAGEL:  Those are currently in Word version.
11:24   7   Does Your Honor want those --
11:24   8              THE COURT:  No, I'm not going to edit further, so
11:24   9   that's fine.
11:24  10              MR. SAGEL:  Okay.  And then one final
11:24  11   housekeeping, currently our pretrial status conference and
11:24  12   the only status conference we have going forward from now is
11:24  13   June 28.  Based on Your Honor's criminal trial order, four
11:24  14   weeks before that would be Monday.
11:24  15              THE COURT:  Right.
11:24  16              MR. SAGEL:  We plan on filing probably about three
11:24  17   motions in-limine that we can think of that we've already
11:24  18   informed the defense of.  On Monday, which would be on Your
11:25  19   Honor's normal four-week calendar for June 28, I don't know
11:25  20   if Your Honor wanted to hear those on that date or just set
11:25  21   them for a different date.  I'd also say that we don't have
11:25  22   an objection -- I know it would change Your Honor's timing,
11:25  23   but if Mr. Steward wants two weeks to reply because of his
11:25  24   trial schedule, we wouldn't oppose that either if we file on
11:25  25   Monday.
```

```
11:25   1              THE COURT:  That's fine.
11:25   2              Anything on your list, Mr. Steward?
11:25   3              MR. STEWARD:  No, Your Honor.  Thank you.
11:25   4              THE COURT:  Okay.  Thank you.
11:25   5              MR. SAGEL:  And then --
11:25   6              THE COURT:  One more?
11:25   7              MR. SAGEL:  Do you need Mr. Steward to propose
11:25   8   something or put anything in writing for Your Honor --
11:25   9   apparently, his temporary release expires on May 31.  I
11:25  10   don't know if that's --
11:25  11              MR. STEWARD:  Good point.  Thank you, counsel.
11:25  12              THE COURT:  Submit an order to continue it to the
11:25  13   date of trial.
11:25  14              MR. STEWARD:  Thank you, Your Honor.  We'll do
11:25  15   that.
11:25  16              MR. SAGEL:  Thank you.
11:25  17              THE COURT:  Okay.  Thank you.
11:25  18              (Whereupon, the proceedings were concluded.)
11:25  19                         *    *    *
11:25  20
11:25  21
11:25  22
11:25  23
11:25  24
11:25  25
```

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: February 4, 2023

/s/ Sharon A. Seffens  2/4/23
_____
SHARON A. SEFFENS, U.S. COURT REPORTER