```
            UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA

                  SOUTHERN DIVISION

                        - - -

   THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING


     UNITED STATES OF AMERICA,     )CERTIFIED TRANSCRIPT
                       Plaintiff,  )
       vs.                         )
                                   )  SACR-19-00061-JVS
     MICHAEL JOHN AVENATTI,        )
                       Defendant.  )
     ------------------------------)



        REPORTER'S TRANSCRIPT OF PROCEEDINGS

              Santa Ana, California

               September 15, 2021



              SHARON A. SEFFENS, RPR
              United States Courthouse
              411 West 4th Street, Suite 1-1053
              Santa Ana, CA  92701
              (612) 804-8655
```

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     ALEXANDER WYMAN
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     For the Defendant:
10
     MICHAEL JOHN AVENATTI, PRO SE
11
     H. DEAN STEWARD, ADVISORY COUNSEL
12   H. DEAN STEWARD LAW OFFICES
     107 Avenida Miramar, Suite C
13   San Clemente, CA  92672
     (949) 481-4900
14

15   ALSO PRESENT:

16   PATRICK FITZGERALD
     Assistant United States Attorney
17   Privilege Review Team

18

19

20

21

22

23

24

25
```

|  |  |
|---|---|
|  | 1    SANTA ANA, CALIFORNIA; WEDNESDAY, SEPTEMBER 15, 2021; |
|  | 2    9:00 A.M. |
| 09:00 | 3              THE CLERK:  Item No. 1, SACR-19-00061-JVS, United |
| 09:00 | 4    States of America versus Michael John Avenatti. |
| 09:00 | 5              MR. WYMAN:  Good morning, Your Honor.  Alex Wyman |
| 09:00 | 6    on behalf of the United States here for the prosecution |
| 09:00 | 7    team.  And with me at counsel table is AUSA Patrick |
| 09:00 | 8    Fitzgerald on behalf of the Privilege Review Team. |
| 09:00 | 9              THE COURT:  Good morning. |
| 09:00 | 10             MR. AVENATTI:  Good morning, Your Honor. |
| 09:00 | 11   Defendant Michael Avenatti, present along with advisory |
| 09:00 | 12   counsel, Mr. Dean Steward, and Ms. Cummings-Cefali. |
| 09:00 | 13             THE COURT:  Good morning. |
| 09:01 | 14             I have some initial questions for Mr. Fitzgerald. |
| 09:01 | 15             Is it correct that no further document production |
| 09:01 | 16   has been made to the defendant since August 24th? |
| 09:01 | 17             MR. FITZGERALD:  That is correct, Your Honor. |
| 09:01 | 18             THE COURT:  Is it correct that since that date |
| 09:01 | 19   Mr. Avenatti has made some specific requests for documents? |
| 09:01 | 20             MR. FITZGERALD:  The specific requests, Your |
| 09:01 | 21   Honor, is for the forensic search for additional Tabs and |
| 09:01 | 22   QuickBooks data, and that has been the subject of the |
| 09:01 | 23   logistical discussions and the efforts that we have been |
| 09:01 | 24   having. |
| 09:01 | 25             THE COURT:  Am I correct, though, that no further |

```
09:01   1    production has been made since August 24th?
09:01   2             MR. FITZGERALD:  Yes, Your Honor.  Before we can
09:01   3    do the search --
09:01   4             THE COURT:  No, no, no.  We'll get to that.
09:01   5             MR. FITZGERALD:  Yes, Your Honor.  That's correct.
09:01   6             THE COURT:  When do you expect the indexing to be
09:01   7    completed?
09:01   8             MR. FITZGERALD:  Somewhere between tomorrow and,
09:01   9    worst-case scenario, two weeks from tomorrow.
09:02   10            THE COURT:  Explain to me the technical
09:02   11   difficulties you're having.
09:02   12            MR. FITZGERALD:  The technical difficulties, Your
09:02   13   Honor, are that the files in general, and in particular
09:02   14   server 5, which has over two terabytes of data, are taking
09:02   15   an unexpectedly long time to index, and they need to be
09:02   16   indexed before an FTK can conduct the search.
09:02   17            THE COURT:  In the report, you seem to distinguish
09:02   18   between the need to index and the identification of other
09:02   19   problems.  Is it simply the indexing you're talking about in
09:02   20   the report?
09:02   21            MR. FITZGERALD:  Yes, Your Honor.  The focus is
09:02   22   now on getting the indexing.  We think once the indexing is
09:02   23   complete, we will be able to conduct the FTK searches quite
09:02   24   quickly.  As of Monday, the last report, FTK had identified
09:02   25   24 million files on server 5 of which 19 million were
```

```
09:03   1    indexed.
09:03   2             The problem is that it is hard to know how fast
09:03   3    the FTK program is able to index.  It did the first
09:03   4    10 million pretty quickly.  Then it's doing indexing at a
09:03   5    million a day, and now it's stalling to less than a million
09:03   6    a day.  There's a possibility it could also go faster, but
09:03   7    there's also a possibility it could go slower.  So it's very
09:03   8    difficult to give an estimate when you don't know how fast
09:03   9    the computer is going to index the files.
09:03  10             THE COURT:  Thank you.
09:03  11             The government's motion at Docket 809 seeks a
09:03  12    request that either Mr. Avenatti identify specific searches
09:03  13    desired or that the forensic copy be provided to
09:03  14    Mr. Avenatti.
09:03  15             My understanding is, although the Court has denied
09:04  16    that request numerous times and it's documented in the
09:04  17    defendant's portion of the joint report, at least at some
09:04  18    point in recent context an agreement was fully consummated
09:04  19    about in fact producing the forensic copy to Mr. Avenatti.
09:04  20    Is that accurate?
09:04  21             MR. AVENATTI:  Your Honor, it is accurate to state
09:04  22    that the Privilege Review Team, Mr. Fitzgerald, agreed with
09:04  23    us over the weekend of the 21st and 22nd of August to
09:04  24    produce the forensic copy subject to the Protective Order.
09:04  25    Then when Mr. Sagel and Mr. Wyman caught wind of it, they
```

```
09:04   1   said, no, we will not agree.  Therefore, the forensic copy
09:04   2   was not provided to the defense.
09:04   3              Then most recently, last Friday, we learned of
09:04   4   this potential motion, and within about an hour, I informed
09:05   5   Mr. Wyman we will stipulate to that, to get us a forensic
09:05   6   copy so that we can then do what we need to do to
09:05   7   potentially avoid other problems at any retrial.
09:05   8              THE COURT:  Why shouldn't I simply order
09:05   9   production of the forensic copy now?
09:05  10              MR. AVENATTI:  My position is, Your Honor, that
09:05  11   you should, which will moot this motion and will also
09:05  12   protect my rights and also likely prevent any additional
09:05  13   issues relating to -- similar to what led to the mistrial in
09:05  14   the first place.
09:05  15              THE COURT:  Mr. Wyman.
09:05  16              MR. WYMAN:  Thank you, Your Honor.
09:05  17              What the defendant just said with regard to what
09:05  18   happened the weekend of August 22nd and then this past
09:05  19   Friday -- both times he asked us if we could stipulate to
09:05  20   providing him a copy of that.  In both instances, the
09:05  21   prosecution team did not believe that we were in a position
09:05  22   to stipulate given the Court's first two and now third prior
09:05  23   orders denying him that.
09:06  24              THE COURT:  You are now inviting that relief and
09:06  25   the alternative possibility?
```

```
09:06   1              MR. WYMAN:  Correct, Your Honor.  We just don't
09:06   2   believe we are entitled to say, yes, and do the opposite of
09:06   3   what the Court ordered.
09:06   4              THE COURT:  Okay.  Well, I'm going to moot
09:06   5   the motion.  I direct that the production of a forensic
09:06   6   copy be made to the defense team no later than noon
09:06   7   tomorrow.
09:06   8              MR. FITZGERALD:  Your Honor, we have it on a hard
09:06   9   drive.  I will have to double-check with the special agent
09:06  10   who has it, but I think we will easily be able to meet that
09:06  11   deadline.
09:06  12              THE COURT:  The expectation is that Mr. Avenatti
09:06  13   will do any further searching he desires on any topics he
09:06  14   desires without intervention of the government.
09:06  15              MR. AVENATTI:  Understood, Your Honor.  Just for
09:06  16   the Court's clarification, what that will now entail is
09:06  17   obviously we are going to take that forensic copy and we're
09:07  18   going to give it to our computer expert who we have already
09:07  19   retained.  He will then have to index the files.
09:07  20              Hopefully it will be quicker than what we are
09:07  21   hearing the government tell us as to how long this process
09:07  22   has taken, but I don't want the Court to think that if we
09:07  23   get the forensic copy tomorrow that we will be able to
09:07  24   review this data, you know, within 48 or 72 hours, just to
09:07  25   be clear.
```

```
09:07   1            THE COURT:  When you produce the forensic files,
09:07   2  will the present files reflect the indexing has been
09:07   3  made?
09:07   4            MR. FITZGERALD:  They will not, Your Honor.
09:07   5  The indexed files are quite voluminous, and transferring
09:07   6  them off the computer that they're on is a difficult
09:07   7  undertaking.
09:07   8            THE COURT:  Why shouldn't the defense have the
09:07   9  benefit of the indexing that's been done to date rather than
09:07  10  start from square one?  That doesn't make sense to me.
09:07  11            MR. FITZGERALD:  Well, Your Honor, I asked about
09:08  12  that, and I don't have much more or probably no more
09:08  13  computer awareness or understanding of these issues than the
09:08  14  Court and any other lawyers.
09:08  15            In talking to the special agent and in speaking
09:08  16  with Mr. Varani back in Washington, D.C., it's not like
09:08  17  getting files just copied and off a computer the way we
09:08  18  normally would do it.  It's more like getting the Westlaw
09:08  19  system off of Westlaw and onto somebody else's computer.
09:08  20  It's just not a quick or easy thing to do.
09:08  21            MR. AVENATTI:  My understanding, Your Honor, in
09:08  22  speaking with our expert --
09:08  23            THE COURT:  Well, wait a minute.  Tell me why you
09:08  24  can't produce the forensic files reflecting the indexing
09:08  25  that's been done today.  You tell me it may take a while,
```

```
09:08   1   but why can't that be done?
09:09   2              MR. FITZGERALD:  Well, Your Honor, we can
09:09   3   certainly do it, and we can do it as fast as we can.  Again,
09:09   4   it will not be as simple as turning over the hard drive with
09:09   5   the copied file that the defense can then start searching.
09:09   6   We can do that easily, again, by noon tomorrow.
09:09   7              The issue is to what extent we can turn over the
09:09   8   work of our indexed files.  Another reason is that they are
09:09   9   indexed in FTK, so to search, one has to use FTK, and I'm
09:09  10   not sure that the defense expert believes at least for their
09:09  11   purposes that's the best way to proceed.
09:09  12              THE COURT:  Well, would that be of assistance to
09:09  13   you to have the file indexed using FTK?
09:09  14              MR. AVENATTI:  Of course, one hundred percent,
09:09  15   Your Honor.
09:09  16              THE COURT:  What program would your expert use to
09:09  17   do the indexing?
09:09  18              MR. AVENATTI:  Your Honor, we'll figure out the
09:09  19   program.  We'll figure it out.  If we need FTK, we'll get
09:09  20   FTK.  We'll get a license.  We'll figure it out somehow,
09:10  21   some way.
09:10  22              I want to clarify one thing for Your Honor.  I
09:10  23   have never understood this, and maybe we can get an
09:10  24   explanation today.  The DOJ Computer Crime Lab indexed these
09:10  25   forensic files two years ago.  They're sitting in
```

```
09:10   1    Washington, D.C., indexed, and they've always been indexed.
09:10   2              THE COURT:  How do you know that?
09:10   3              MR. AVENATTI:  Because Mr. Varani testified to
09:10   4    it, and it's been confirmed by Mr. Fitzgerald.  So what
09:10   5    I said was why don't we use the forensic indexed files
09:10   6    from Washington, D.C.?  I made that suggestion weeks ago.
09:10   7    Subsequent to that, Mr. Fitzgerald said, well, let me
09:10   8    look into that.  I don't know what happened behind the
09:10   9    scenes, but they came to the conclusion that that would not
09:10   10   work.
09:10   11             Earlier I said, well, why can't we just fly
09:10   12   Mr. Tashchyan from Washington, D.C., if that's what needs to
09:11   13   be done in order to expedite this as opposed to try to move
09:11   14   these files, which my expert tells me should not be a
09:11   15   problem moving these files.  Again, I don't have an
09:11   16   explanation as to why that wasn't done.
09:11   17             But let me just say this.  I'm going to make two
09:11   18   requests.  One, I would like a forensic copy by noon
09:11   19   tomorrow.  Mr. Fitzgerald has said that he can do that.
09:11   20   Number two, I would like an indexed copy, whether it's the
09:11   21   one in Washington, D.C., or it's the one that is yet to be
09:11   22   completed.  I would like that as well because that will
09:11   23   potentially expedite things.  I will then take that data to
09:11   24   my expert, and we will get these searches done as quickly as
09:11   25   possible, whether it's in FTK or some other program.
```

```
09:11  1          THE COURT:  You will take care of that?
09:11  2          MR. AVENATTI:  Yes, sir.
09:11  3          THE COURT:  Well, is there or is there not an
09:11  4  indexed forensic file?
09:11  5          MR. FITZGERALD:  Your Honor, there is an indexed
09:11  6  file in the DOJ Computer Crime Lab that was indexed for
09:12  7  purposes of getting those files into the Relativity
09:12  8  Database.
09:12  9          In talking with Mr. Varani, who I understand
09:12 10  testified before the Court so the Court knows he is very
09:12 11  knowledgeable but very careful, he is not a hundred percent
09:12 12  sure until he tries to do it whether he can execute all the
09:12 13  searches that the defense wants.
09:12 14          And again, I talked to him this week.  He worked
09:12 15  over the weekend.  He doesn't think that there is a way to
09:12 16  get the files which are physically in Washington, D.C., out
09:12 17  here to California in that indexed state.  Again, obviously
09:12 18  on these matters, I have to rely on what I am hearing from
09:12 19  Mr. Varani or our special agent.
09:12 20          THE COURT:  If there is presently an indexed file,
09:12 21  why can't a copy be made of that and delivered?  Make the
09:12 22  copy in Washington and deliver it out here.
09:12 23          MR. FITZGERALD:  Again, I could explain that, but
09:13 24  the IT people are telling me that so far we haven't been
09:13 25  able to do it.  Again, it's not that anyone has anything
```

```
09:13   1    against that.  It's just logistically figuring out the best
09:13   2    way and quickest way to do that.
09:13   3              THE COURT:  Well, I've ordered already that the
09:13   4    present forensic file be delivered by noon tomorrow.  I'm
09:13   5    going to direct that the government continue on an expedited
09:13   6    effort its current effort to index using FTK and that it
09:13   7    carry out those efforts on a seven-day-a-week basis and that
09:13   8    the ultimate product be turned over to Mr. Avenatti.
09:13   9              I'm also directing you, Mr. Fitzgerald, to make
09:13  10    further inquiry as to why the existing forensic file in the
09:13  11    FBI's Crime Lab can't be produced now.
09:14  12              MR. FITZGERALD:  Again, Your Honor, we've had
09:14  13    discussions --
09:14  14              THE COURT:  Sir, if we need to, we will get
09:14  15    Mr. Varani here in person or on the phone if we need his
09:14  16    assistance to explain it to me.  But if there is an
09:14  17    electronic file, electronic files can be copied.  However
09:14  18    voluminous, they can be copied and delivered.  I have been
09:14  19    dealing with the computer industry since 1971.  I know a
09:14  20    little bit about computers.
09:14  21              MR. FITZGERALD:  Again, Your Honor, all reasonable
09:14  22    questions, issues -- all I can say is we're working on
09:14  23    it.  I'm again happy to get assistance or ideas from the
09:14  24    defense expert as to what they want and how they want it,
09:14  25    and I will again talk to everyone on our side to explore all
```

```
09:14   1    options.
09:15   2              THE COURT:  I want a further status report on
09:15   3    Monday at 9:00 a.m. in person.  If you need Mr. Varani or
09:15   4    any other technical expert here either in person or on the
09:15   5    phone please arrange for that.
09:15   6              MR. FITZGERALD:  Yes, Your Honor.
09:15   7              THE COURT:  Let me make one thing clear.  The
09:15   8    November 2 trial date is the third trial date.  Everyone
09:15   9    including the Court is going to work to the utmost to make
09:15  10    sure that that happens, and I can assure you that one way or
09:15  11    another that trial date will happen.
09:15  12              (Court and clerk conferring)
09:15  13              THE COURT:  How about 9:30 instead?  Is that
09:15  14    doable?
09:15  15              MR. AVENATTI:  Yes, sir.
09:15  16              MR. WYMAN:  Yes, Your Honor.  I think I heard a
09:15  17    status report.  Is that a status conference on Monday?
09:15  18              THE COURT:  Right.  If you want to put in
09:15  19    something in writing, that's fine, but an oral report would
09:16  20    be fine, too.
09:16  21              MR. WYMAN:  Thank you, Your Honor.
09:16  22              MR. AVENATTI:  Your Honor, then I assume that by
09:16  23    Your Honor's order that moots the government's motion and it
09:16  24    moots the ex parte.  There is no need to have --
09:16  25              THE COURT:  Right.  They will all be denied as
```

```
09:16    1    moot, and it will be so reflected in the docket.
09:16    2              MR. AVENATTI:  Thank you, sir.
09:16    3              THE COURT:  I understand there was an issue with
09:16    4    regard to privacy information in the government's motion at
09:16    5    Docket 809 that the address of Mr. Avenatti's paralegal was
09:16    6    contained in that document; is that correct?
09:16    7              MR. WYMAN:  Yes, Your Honor, an e-mail address and
09:16    8    a cell phone number.  A redacted version was filed
09:16    9    yesterday.
09:16   10              THE COURT:  That information wasn't eliminated
09:16   11    from the redacted version?
09:16   12              MR. WYMAN:  I'm sorry.  It was eliminated from the
09:16   13    redacted version we filed yesterday.  We also filed an
09:16   14    application to seal the original one which did not redact
09:17   15    the information.
09:17   16              THE COURT:  Is it under seal?
09:17   17              THE CLERK:  Not yet, Judge.  That's what the
09:17   18    request is.
09:17   19              THE COURT:  If it's filed under seal, that should
09:17   20    cure the problem.
09:17   21              MR. WYMAN:  I believe so, Your Honor.
09:17   22              THE COURT:  Mr. Avenatti?
09:17   23              MR. AVENATTI:  Yes, sir.
09:17   24              THE COURT:  Okay.  Anything else we should take
09:17   25    up?
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:17   1               MR. WYMAN:  Nothing from the government, Your
09:17   2   Honor.
09:17   3               MR. AVENATTI:  Nothing from the defense, Your
09:17   4   Honor.
09:17   5               THE COURT:  Okay.  Thank you.
09:17   6               (Whereupon, the proceedings were concluded.)
09:17   7                            *    *    *
09:17   8
09:17   9
09:17  10
09:17  11
09:17  12
09:17  13
09:17  14
09:17  15
09:17  16
09:17  17
09:17  18
09:17  19
09:17  20
09:17  21
09:17  22
09:17  23
09:17  24
09:17  25
```

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:   February 4, 2023


/s/   Sharon A. Seffens  2/4/23
_____
SHARON A. SEFFENS, U.S. COURT REPORTER