E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
Assistant United States Attorney
Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2432
     Facsimile: (213) 894-6269
     Email: Ranee.Katzenstein@usdoj.gov

BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone:  (714) 338-3598
     Facsimile:  (714) 338-3708
     Email:      Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL JOHN AVENATTI, <br><br> Defendant. | SA CR No. 19-061-JVS <br><br> GOVERNMENT'S *EX PARTE* APPLICATION FOR AN ORDER DIRECTING THE CLERK OF THE COURT TO DISBURSE CERTAIN FUNDS THAT IT WILL BE RECEIVING FROM THE IRS SOLELY TO THE VICTIM FROM WHOM THE FUNDS WERE STOLEN; MEMORANDUM OF POINTS AND AUTHORITIES <br><br> Hearing Date: None |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Ranee A. Katzenstein, hereby applies *ex parte* for an Order directing the clerk of the court to disburse certain funds that it will be

receiving from the Internal Revenue Service solely to the victim from whom the funds were stolen.

This *ex parte* application is based upon the attached memorandum of points and authorities; the files and records in this case, including the evidence and testimony at trial and the sentencing hearing; and such further evidence and argument as the Court may permit.

Dated: February 9, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

          /s/
BRETT A. SAGEL
RANEE A. KATZENSTEIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

After defendant Michael John Avenatti pleaded guilty to four counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of obstructing the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212, on December 5, 2022, the Court sentenced defendant to 168 months imprisonment and to pay restitution in the amount of $7,603,564 to his four wire fraud victims. (CR 1060.) Among his guilty pleas, defendant admitted defrauding victim Michelle Phan and the Court ordered restitution in the amount of $4,000,000 due to Ms. Phan.[1] (CR 1053.)

The Internal Revenue Service ("IRS") acknowledges that the $1,508,422.30 that defendant used to pay the IRS to get his law firm's bankruptcy dismissed is directly traceable to the funds defendant stole from Ms. Phan. As a result, the IRS has agreed to return those funds to Ms. Phan, via the Clerk of the Court ("Clerk"), to be distributed to Ms. Phan pursuant to this Court's restitution order. The government requests that the Court issue an Order to the Clerk: (1) to disburse all the funds that it receives from the IRS to Ms. Phan rather than pro rata to all of the victims; and (2) to credit defendant's restitution obligation in that amount. The United States believes that it is in the interest of justice for the Court to issue such an Order.

---

[1] Although the victim is not named in the Amended Judgment and Commitment Order (CR 1060), because her name is in the public record based on testimony at trial and in the sentencing papers, the government has identified Ms. Phan by name in this filing.

Case 8:19-cr-00061-JVS Document 1087 Filed 02/09/23 Page 4 of 8 Page ID #:26068

## II. BACKGROUND FACTS

As the Court is familiar with the testimony and evidence in this case, the government will provide only a brief summary of relevant facts. Ms. Phan retained defendant to represent Ms. Phan with her divestiture and separation from her company, Personalized Beauty Discovery Inc. (doing business as ipsy). Under the fee agreement, defendant was entitled to 7.5% (approximately $2.7 million) of the entire transaction amount (approximately $35.6 million) but was not entitled to any reimbursement for costs. Defendant received the first portion of the settlement payments (approximately $27 million) in September 2017, and defendant withdrew his entire 7.5% fee (for the payments made then as for the future payment in March 2018) from this first payment.

Defendant's law firm, Eagan Avenatti LLP ("EA LLP"), was in bankruptcy starting in March 2017, and in January 2018, defendant sought to have the bankruptcy dismissed if he met certain obligations of paying creditors, which included paying $1,508,422.30 to the IRS for a portion of unpaid payroll taxes for EA LLP. In re Eagan Avenatti LLP, 8:17-bk-11961-CB (CDCA), Dkt 343. On March 14, 2018, defendant received the balance of the amount due Ms. Phan (approximately $8,146,288); because defendant had already taken his entire fee, he was not entitled to any of this money. Defendant did not remit this entire sum to Ms. Phan as he was required to do, but instead stole $4,000,000 from this second payment. On March 15, 2018, the day after receiving Ms. Phan's money, defendant transferred $2,828,423.30 stolen from Ms. Phan's settlement money to defendant's bankruptcy counsel to pay EA LLP's creditors in the bankruptcy case, including the $1,508,422.30 to the IRS for the portion of EA LLP's

2

unpaid payroll taxes -- a requirement to get the EA LLP bankruptcy dismissed.

On March 26, 2018, defendant's bankruptcy counsel issued a check to the IRS for $1,508,422.30 from the firm's attorney-client trust account, and the EA LLP bankruptcy was dismissed. The evidence and testimony at trial demonstrated that the $1,508,422.30 paid to the IRS was directly traceable to the $4,000,000 that defendant had stolen from Ms. Phan. The Court in sentencing defendant ordered restitution be paid to Ms. Phan in the amount of $4,000,000. (CR 1053, 1060.)

The IRS acknowledges that the $1,508,422.30 that defendant caused to be paid to the IRS is directly traceable to the funds that defendant stole from Ms. Phan. Consequently, the IRS has agreed to disgorge the $1,508,422.30 to the Clerk for the Clerk to disburse the entire amount to Ms. Phan, rather than pro rata to all the victims in this case. The government believes that disbursement by the Clerk of the entire $1,508,422.30 to the original owner of the funds, Ms. Phan, would be in the interests of justice. Furthermore, the government is coordinating the return of the funds through the Clerk because this is the most efficient mechanism to ensure defendant receives credit against the restitution order.

## III. APPLICABLE LAW

Defendant was convicted and sentenced for the offense of, among other things, wire fraud, in violation of 18 U.S.C. § 1343. (*See* Dkt. 1060, at 1.) Wire fraud is "an offense against property." 18 U.S.C. § 3663A(c)(1)(A)(ii). When a defendant is sentenced for "an offense resulting in damage to or loss or destruction of property of a victim to the offense," the Court may order that the property be

3

returned to the "owner of the property or someone designated by the owner." See 18 U.S.C. § 3663A(b)(1)(A); see also 18 U.S.C. § 3664(f)(3)(A) & 4(A) (order may require that an in-kind payment be made to the restitution victim in the form of "return of property"). The Court has the discretion to order the restitution to be paid to the original owner of the funds, rather than to disburse the funds pro rata to all victims. See 18 U.S.C. § 3664(i).

## IV. DEFENDANT'S POSITION

On February 7, 2023, defendant provided the following as his position on the *ex parte* application: "Mr. Avenatti opposes the ex parte for several reasons, the first being that we don't believe the motion should be brought as an ex parte at all, but should instead be filed as a noticed motion on a regular schedule. Substantively, the ex parte application is improper because the district court lacks jurisdiction as the case is on appeal. Any award of restitution is also premature and improper because the restitution and loss amounts are being contested on appeal and the case is not yet final. We intend to file a response to the ex parte."

First, the money from the IRS to pay Ms. Phan is <u>not</u> defendant's money and would only benefit defendant -- by reducing his restitution obligation.[2] The money belonged to Ms. Phan and defendant used it to pay the tax obligation on behalf of EA LLP, an entity over which defendant has no ownership or control. The IRS would alternatively

---

[2] The IRS returning this money to Ms. Phan is more akin to the victim receiving compensation from a third-party, which would not reduce defendant's restitution order, but would require defendant to pay the victim first, and then reimburse the third-party after the victim has received her full restitution. *See* 18 U.S.C. §§ 3664(f)(1)(B), (j)(1). For purposes of this *ex parte* application, the government is not seeking to insert the IRS as a third-party entitled to receive restitution pursuant to Section 3664(j)(1).

4

return the money directly to Ms. Phan; the government is seeking the above-described mechanism for the repayment so that the Clerk could properly credit the restitution award -- and there would be no occasion for double-recovery by Ms. Phan if defendant ever paid any restitution.[3] Even if defendant's appeal causes a change of the restitution award to Ms. Phan, this return of the portion of money stolen from Ms. Phan would not impact defendant at all, i.e., Ms. Phan would receive money that did not belong to defendant regardless of restitution (and would not have been used to pay restitution otherwise). If defendant's restitution award does not change after the appeal, defendant receives credit against his restitution award for a payment of money that was not his.

Moreover, defendant's claim that this Court has no jurisdiction to hear or resolve this matter is wrong. The Court has jurisdiction to enforce its order, just not to change it. The general rule is that once a notice of appeal has been filed, the district court is divested of jurisdiction over the matters being appealed. *See generally Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). This is a judge-made rule, however, and there are exceptions to this general rule. *Natural Res. Def. Council v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (concluding "that the district court possessed jurisdiction to modify the injunction while the consolidated appeal was pending, because the changes preserved the status quo and did not materially alter the status of the case on appeal"). The purpose of the rule is

---

[3] The government understands that this payment by the IRS, through an Office of the Department of Justice, could happen any day now, which is the reason for the government's filing of an *ex parte*.

to promote judicial economy and avoid the confusion of having the same issues before two courts simultaneously. *Id.; see also United States v. Phelps*, 283 F.3d 1176, 1181 (9th Cir. 2002) (finding the district court was not divested of jurisdiction once appeal was taken and retained the ability to enforce the conditions for release of a mentally ill person to achieve the objectives of the statutory requirements even though the very conditions of release were being appealed). Because the relief requested by the application would maintain the status quo, the Court has jurisdiction to enter the order notwithstanding the appeal.

**V.   RELIEF REQUESTED**

Based on the foregoing, the government respectfully requests the Court to order the Clerk, upon receipt of the IRS's payment of the above-referenced sum of $1,508,422.30 in this case, (1) to promptly disburse that entire amount to the original owner of the funds, Ms. Phan (rather than to disburse those funds pro rata to include other victims), and (2) to credit defendant's restitution obligation in that amount.