A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
Lawrence J. Conlan (CSB No. 221350)
lconlan@cappellonoel.com
Wendy D. Welkom (CSB 156349)
wwelkom@cappellonoel.com
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

Attorneys for Petitioner
Spring Creek Research LLC and William
Parrish

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | Case No. 8:19-cr-0061-JVS<br><br>**PETITIONER SPRING CREEK RESEARCH LLC'S BRIEF REGARDING PRIMACY OF INTEREST IN HONDA AIRCRAFT** |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................... 3

II.  FACTUAL BACKGROUND ..................................................................... 6

   A.   Spring Creek has a legal right, title and interest in the Honda Jet which vested before the criminal conduct giving rise to the forfeiture, and/or is a bona fide purchaser. ...................................................................... 6

   B.   The Government's seizure of the jet and allegations of forfeiture. ............ 8

   C.   Petitioner's proposal to regain possession of the jet and request that the Government maintain it in the interim. ...................................................... 9

   D.   The Government's proposal to sell the jet at auction, and its disclaimer of interest in the jet. ...................................................................... 10

   E.   Petitioner filed a Petition for Remission to which the Government never responded. ...................................................................... 11

   F.   The Government's civil forfeiture complaint. ........................................... 11

   G.   The claimants' positions in the civil forfeiture action. ............................. 12

   H.   The stay of the civil forfeiture action. ..................................................... 12

   I.   The criminal forfeiture application. .......................................................... 13

III. LEGAL ARGUMENT ............................................................................. 14

   A.   Legal Standard ........................................................................................ 14

   B.   Spring Creek is an innocent owner with a vested interest in the Honda Jet *before* Avenatti's criminal acts. ........................................................... 14

   C.   Alternatively, Spring Creek is an innocent owner because, amongst all the other claimants, it is the only bona fide purchaser of the jet. ................... 17

   D.   Spring Creek's interest also vested based on its possession, control and use of the aircraft ............................................................................... 18

   E.   Spring Creek's interest in the jet is also established by constructive trust. ...................................................................................................... 20

   F.   Equity dictates that Spring Creek be awarded its acquisition price .......... 21

   G.   The other petitioners have no superior rights. ......................................... 23

IV.  CONCLUSION ........................................................................................ 23

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Adler v. Blair*, 169 Cal.App.2d 92 (1959) .................................................................... 19

4

*American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal.App.4th 1451 (2014) ................. 15

*Claudino v. Pereira*, 165 Cal.App.4th 1282 (2008) ................................................ 16, 18

5

*Cox. v. Hughes*, 10 Cal.App. 553 (1909) ............................................................ 16

6

*In re Marriage of Ciprari*, 32 Cal.App.5th 83 (2019) ............................................. 22

*In re Marriage of Walrath*, 17 Cal.4th 907 (1998) ................................................ 23

7

*Lawrence v. U.S. Dept. of the Treasury*, 2015 WL 1415506 (S.D. Cal. March 26, 2015) ........... 19

*Pacheco v. Serendensky*, 393 F.3d 348, 349(2nd Cir. 2004) ...................................... 17

8

*Rivera v. Carter*, No. 2:09-cv-2435-FMC-(VBKx), 2009 WL 8753486 (C.D. Cal. July 31, 2009)

9

.................................................................................................... 17

10

*U.S. v. Hooper*, 229 F.3d 818 (9th Cir. 2000) .................................................... 19

*U.S. v. JP Morgan Chase Bank Account*, 835 F.3d 1159 (9th Cir. 2016) ........................... 19

11

*U.S. v. Nava*, 404 F.3d 1119 (9th Cir. 2005) .................................................. 14, 18

*U.S. v. Wilson*, 659 F.3d 947 (9th Cir. 2011) .................................................... 21

12

*United States v. $4224,958.57 (Boylen)*, 392 F.3d 1002 (9th Cir. 2004) ......................... 20

13

*United States v. Andrews*, 530 F.3d 1232 (10th Cir. 2008) ....................................... 22

*United States v. Fifteen Thousand Five Hundred Dollars*, 558 F.2d 1359 (9th Cir. 1977) ......... 19

14

*United States v. Gettel*, 2017 WL 3966635 (S.D. Cal. Sept. 7, 2017) .......................... 20, 23

15

**Federal Statutes**

16

18 U.S.C. § 1343 .................................................................................. 11

17

18 U.S.C. § 1956(c)(7)(A) ......................................................................... 11

18 U.S.C. § 1956(c)(7)(A) and 1961(1)(B) .......................................................... 11

18

18 U.S.C. § 981(a)(1)(A)-(C) ...................................................................... 12

19

18 U.S.C. § 981(A)(1)C) .......................................................................... 12

21 U.S.C. § 853(n)(6) ............................................................................. 14

20

21 U.S.C. § 853(n)(6)(A) .......................................................................... 17

21

21 U.S.C. § 853(n)(6)(B) .......................................................................... 18

22

**Civil Code**

23

Cal. Civ. Code § 3525 ............................................................................. 16

Cal. Civ. Code § 3529 ......................................................................... 15, 22

24

Cal. Civ. Code § 2223 ............................................................................. 21

25

Cal. Civ. Code § 2224 ............................................................................. 21

**Corporation Code**

26

27

Corp. Code § 17153 ................................................................................ 15

Corp. Code § 17704.09 ............................................................................. 15

28

**Evidence Code**

Cal. Evid. Code § 632 ............................................................................................ 19
Cal. Evid. Code § 638 states ................................................................................. 19
Cal. Evid. Code §§ 637 .......................................................................................... 19

**Other Authorities**

Pomeroy's *Equity Jurisdiction*, Section 1288 ............................................... 15

## I.   INTRODUCTION

Petitioner Spring Creek Research, LLC ("Spring Creek") is the only one of four Claimants/Petitioners that intended to and did use its own funds to purchase an interest in the forfeited property, *i.e.*, the Honda aircraft, registration number N227WP, aircraft serial number 42000029, together with its tools and appurtenances, including any and all logbooks (hard copy or electronic) documenting engine and airframe maintenance, flights, number of hours flown, number of landings, and types and frequency of instrument approaches made by the aircraft (the "Honda Jet" or "jet").

Spring Creek here meets all the criteria to support its claim to recover that interest. It is an innocent owner that purchased its interest in the Honda Jet *before* the criminal conduct of Defendant Michael Avenatti on which the government bases its forfeiture claim. At a minimum, Spring Creek is a bona fide purchaser of the jet as a member of Passport 420, LLC ("Passport"), the entity which took title to the jet under the Operating Agreement for the benefit of its members. Spring Creek is also the only claimant that can demonstrate a possessory interest in the jet, based on its control, use and maintenance of the jet. Finally, Spring Creek is entitled under equitable principles to be deemed to have the superior interest.

It is important to understand that Spring Creek is not a criminal defendant, and there is no suggestion that it might be or was. Nor is Passport a criminal defendant, and there is no suggestion that it might be or was. The only criminal here is Michael Avenatti.

Because the only criminal is Avenatti, the only interest which could be forfeited is that of Avenatti, individually, under 21 U.S.C. § 853(n)(6)(A) and (B) which provides that only the defendant's *in personam* interests can be forfeited. And Avenatti may not forfeit more than he owned, nor may he enlarge his interest in the forfeited property by way of his plea agreement. Here, Avenatti, through Avenatti & Associates ("A&A") owned, at most, 47.3% of the jet, as a member of

PETITIONER SPRING CREEK RESEARCH, LLC'S
BRIEF RE PRIMACY OF INTEREST
8:19-CR-0061-JVS

Passport, and never the entire jet.

Spring Creek and its principal William Parrish had no idea its ownership of the jet would have any connection with a criminal.  Indeed, Mr. Parrish was a client of Michael Avenatti and his law firm and trusted him as his counsel.  Spring Creek paid over $2.3 million for its ownership interest in the jet, which was titled in the name of Passport.  Spring Creek, as a member of Passport, regularly used the jet as a member of Passport.  The government seized the jet from Mr. Parrish, Spring Creek's unsuspecting owner, as he was about to board it on April 10, 2019.  As set forth below, there is no question that Spring Creek has the superior interest as compared to other petitioners/claimants.[1]

## II.   FACTUAL BACKGROUND

### A.   Spring Creek has a legal right, title and interest in the Honda Jet which vested before the criminal conduct giving rise to the forfeiture, and/or is a bona fide purchaser.

Petitioner Spring Creek is an entity controlled by Mr. William Parrish, who is also a licensed pilot.  Spring Creek owns the majority interest in Passport, which holds title to the Honda Jet.  Spring Creek paid $2,335,000 in legitimate funds from Mr. Parrish's Family Trust as follows: (1) $350,000 to Honda directly on July 7, 2016; and (2) $1,985,000 to Passport on January 18, 2017, after Passport had been organized and its bank account set up.  The funds were meant for the purchase of the Honda Jet, *i.e.*, the only purpose for the Passport Operating Agreement.

Under that Operating Agreement, dated July 11, 2016, Spring Creek acquired a right, as a member of Passport, to own and to be a tenant-in-common and exclusive lessee of one-half of the jet with the other member, Avenatti &

---

[1] Petitioner is also a Claimant in the related civil forfeiture action related to the Honda Jet, which was stayed in July 2020, at the Government's request.  Under the legal analysis of the civil forfeiture statute, 18 U.S.C. § 983, Spring Creek's interest is also superior to other claimants.

Associates, an entity controlled by Michael Avenatti.  Defendant Avenatti, who had been acting as Mr. Parrish's attorney at the time Passport was formed, was the initial manager of Passport, and was later replaced in that role by Mr. Parrish in August 2018.  At no time prior to the forfeiture was Mr. Parrish aware of any criminal conduct or the allegations of criminal conduct related to the funds Avenatti used to purchase the jet. Mr. Parrish flew the jet on numerous occasions after its delivery.  During the over two-year period before the jet was seized by the United States, Mr. Parrish, through Spring Creek, paid the jet's expenses and insurance.

Petitioner's ownership interest in the Honda Jet is detailed as follows:

- Mr. Parrish began contemplating the joint purchase of a private aircraft with his then-attorney Michael Avenatti in approximately June 2016.

- On July 7, 2016, Mr. Parrish, on behalf of Spring Creek, wired $350,000 from his family trust account directly to the account of Honda Aircraft at Wells Fargo Bank NA, as a down payment on the Honda Jet that would be owned and operated by an LLC in which Petitioner and Avenatti & Associates ("A&A") would be members.

- Passport was formed as of July 11, 2016, to own and operate the aircraft. The Passport Operating Agreement provides, *inter alia*, that Passport would exclusively lease the Honda Jet to its members, Spring Creek and A&A, each of whom would hold the ownership interest listed in Exhibit A, and that the members' interests were those of tenants-in-common as to the aircraft.  Michael Avenatti, who controlled A&A, was appointed the initial Manager of Passport.  A true and correct copy of the Passport Operating Agreement is attached to the supporting Declaration of William Parrish, as **Exhibit A**.

- On January 18, 2017, Mr. Parrish, on behalf of Spring Creek, wired an additional $1,985,000 for the purchase of the jet from his family trust account into the account of Passport which had been opened at California

Bank & Trust.  True and correct copies of Mr. Parrish's two wire transfers for the purchase are attached to the supporting Declaration of William Parrish, as **Exhibit B**.

- The total net purchase price of the Honda Jet was $4,383,605, which included the base price, adjusted, plus options and tax.  A true and correct copy of the Honda Aircraft Company invoice showing Passport's purchase of the jet on January 27, 2017 is attached to the supporting Declaration of William Parrish, as **Exhibit C**.

- Based on the total contribution of $2,335,000, Petitioner has a vested 52.7% ownership interest in Passport and the jet; a leasehold interest in the jet; and a tenant-in-common interest in the jet.

- Spring Creek and Mr. Parrish believed at all times that Avenatti purchased the A&A interest in the jet with legitimate funds, and that as then-Manager Avenatti would do nothing to compromise Spring Creek's ownership interest.  Mr. Parrish had no cause or reason to believe otherwise, or that the property would be subject to forfeiture.

- Petitioner also has a possessory interest in the jet.  Mr. Parrish used the jet on many trips after it was delivered, and paid for the jet's expenses as he did so.  A true and correct copy of the summary of invoices and payments showing those expenses is attached to the supporting Declaration of William Parrish, as **Exhibit D**.

**B.     The Government's seizure of the jet and allegations of forfeiture.**

On April 10, 2019, the Government seized the Honda Jet from Spring Creek's possession as Mr. Parrish was about to embark on a flight from Santa Barbara where the aircraft was routinely hangared.  The seizure was apparently conducted as a result of criminal charges against Michael Avenatti in connection with some of his other law clients, and it was unrelated to the operation of Passport. At the time of the seizure, Special Agent James Kim of the Department of Treasury,

1   who was present at the scene, assured Mr. Parrish that he would be "made whole."

2   Declaration of William Parrish, ¶ 12.

3       Petitioner, through counsel, took immediate steps to assert its ownership of

4   the jet and to regain possession.  Declaration of Lawrence J. Conlan, ¶ 3 Ex. 1.

5   Petitioner explained to the Government that it and Mr. Parrish had already been

6   subjected to Avenatti's legal malpractice and fraud, and that it was being injured

7   yet again as a result of the seizure.  Spring Creek explained that it had paid directly

8   for its interest in the jet and for all the expenses of the jet with legitimate funds, out

9   of its own accounts, and there should be no dispute about its vested

10  ownership.  Petitioner explained that as the owner and operator of the jet, the

11  seizure was particularly harmful in that Petitioner, though no fault or conduct of its

12  own, was being deprived of the ability to use the jet, and that the seizure would

13  create a stigma on the jet and a likely diminution in value.  Declaration of Lawrence

14  J. Conlan, ¶ 4, Ex. 2.

15      No one has ever suggested that the aircraft was being used by Spring Creek

16  for any criminal conduct.  Neither Passport nor Spring Creek are alleged to be or

17  are named defendants in this criminal case.

18  **C. Petitioner's proposal to regain possession of the jet and request that the**
19      **Government maintain it in the interim.**

20      Petitioner requested that the Government consider asserting a lien against the

21  jet in the amount of the A&A's 47% interest, and then release the jet back to

22  Petitioner as the majority owner and operator.  That would have allowed Spring

23  Creek to continue to use the jet, made it possible for prospective buyers to test-fly

24  it, and minimized the likelihood of "fire sale" buyers seeing an opportunity to pay

25  well below value for a government-seized asset.  Declaration of Lawrence J.

26  Conlan, ¶ 4, Ex. 2.

27      Petitioner also provided the Government with specific maintenance details

28  critical to the jet.  These included that it had to be run at least once each month and

PETITIONER SPRING CREEK RESEARCH, LLC'S
BRIEF RE PRIMACY OF INTEREST
8:19-CR-0061-JVS

the run hours sent to Honda to comply with applicable service and warranty agreements.  Petitioner explained that being out of compliance would likely have a very major detrimental effect on the value of the jet.  Declaration of Lawrence J. Conlan, ¶ 5, Ex. 3.

During the course of ongoing discussions, Petitioner routinely provided to the Government, via Assistant United States Attorney Steven Welk, additional maintenance information for the jet, including invoices for maintenance contracts for the engines and airframe, for the Government to pay while it was in possession, in order to preserve the jet's value.  Declaration of Lawrence J. Conlan, ¶ 5, Ex. 3. The Government never agreed to pay for the requested services, and never confirmed that it would ensure that the services necessary to maintain the jet, as detailed by Petitioner, would be performed.

At one point, the Government vaguely stated that the jet was being stored with a third-party contractor who is knowledgeable about the jet, and that the contractor was familiar with the jet and would take the steps necessary to preserve its value.  Declaration of Lawrence J. Conlan, ¶ 6, Ex. 4.  But the Government never provided records of flights, maintenance, expenses, or any verification that the jet was being properly operated or maintained.

### D. The Government's proposal to sell the jet at auction, and its disclaimer of interest in the jet.

In May 2019, the Government proposed that interested parties stipulate to a sale of the jet.  AUSA Welk stated on May 28, 2019 that "given the underlying circumstances, my initial impression of this matter is that the government is unlikely ultimately to retain any of the realized value of the plane in the event of forfeiture beyond its out of pocket costs associated with retention and maintenance."  Declaration of Lawrence J. Conlan, ¶ 6, Ex. 4.  In other words, apart from the never-disclosed costs of retention and maintenance, the Government acknowledged that it had no interest in the jet and disclaimed any right to proceeds

1   from a sale.

2          In response, Petitioner disputed that any party had any direct and legitimate

3   claim of right in the jet because Petitioner is:

4          • the only owner who paid money with the intent of purchasing the jet

5              and whose funds are directly traceable to the jet;

6          • the only owner who intended to pay money directly to Honda;

7          • the only owner who has ever been in possession of the jet or used it

8              (except for Avenatti); and

9          • the only owner who paid to operate and maintain the jet.

10   **E. Petitioner filed a Petition for Remission to which the Government never**

11      **responded.**

12          On June 13, 2019, Petitioner filed a Petition for Remission with the

13   Department of Justice, seeking the return of the Honda Jet.  The Petition detailed

14   Petitioner's vested interest and right to the property, as well as the lengthy history

15   detailing Defendant Avenatti's abuse of Petitioner and Mr. Parrish's rights and

16   interests.  The Government never responded to that Petition.  A true and correct

17   copy of the Petition for Remission or Mitigation served on the Department of

18   Justice on June 13, 2019, is attached to the supporting Declaration of William

19   Parrish as **Exhibit E**.

20   **F. The Government's civil forfeiture complaint.**

21          On October 18, 2019, after providing no response to the Petition for

22   Remission, and six months after the Government seized the Honda Jet from

23   Petitioner's possession, the Government filed a complaint for civil forfeiture

24   alleging that "Avenatti's acquisition of the defendant aircraft was part of a fraud

25   scheme by which he misappropriated funds of one or more clients and/or associates

26   . . ." Case 8:19-cv-01988-JVS-KES, Dkt. 1, ¶ 8.  The Government alleged that the

27   aircraft was traceable to or acquired with the proceeds of one or more violations of

28

18 U.S.C. § 1343, 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B) "rendering it subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(A)(1)C)."  That statute provides that property is subject to forfeiture when it is "involved in a transaction or attempted transaction" in violation of sections 1956, 1957 or 1960, or if it is "traceable to such property."  18 U.S.C. § 981(a)(1)(A)-(C).

**G. The claimants' positions in the civil forfeiture action.**

In January 2020, the Government stated that it believed an interlocutory sale of the jet would be in the best interests of all parties.  But, as of that time, and to date, neither the Government nor any person or entity claiming to have an interest in the jet (except Petitioner) has ever established that their actual funds can be traced directly to Passport's purchase of the jet or to its use and maintenance thereafter.

While several parties claim an interest in the jet based on money they *believe* to be theirs that was allegedly commingled in bank accounts at Eagan Avenatti ("EA"), none of those parties has ever *established what specific funds* are theirs and which portion of them, if any, Passport used to take title to the jet.  While Petitioner Spring Creek was open to discussing a possible interlocutory sale of the jet as of January 2020, the Government would not agree that the sale would be conditioned on fully recognizing Spring Creek's superior rights in the jet.  Declaration of Lawrence J. Conlan ¶ 7, Ex. 5.

**H. The stay of the civil forfeiture action.**

In June 2020, the Government stated that it intended to move *ex parte* to stay the civil forfeiture case based on Avenatti's ongoing criminal prosecution.

Petitioner ultimately formally opposed it, and alternatively proposed a scenario in which Spring Creek would purchase the 47% of the jet that it did not already own for an amount certain.  Petitioner's proposal was intended to preserve the remaining value of the jet, which it believed was continuing to deteriorate in

value and condition for lack of proper maintenance, and to avoid a lengthy litigation amongst Avenatti's other alleged victims who claimed to have a stake in the A&A interest in the jet.  Declaration of Lawrence J. Conlan, ¶ 8, Ex. 6.  Neither the Government nor any other party claiming an interest in the jet supported Petitioner's proposal.

Eventually, the Court granted the Government's request for a stay of the civil forfeiture action, over Petitioner's objection, and the jet has remained in the Government's possession, though no record of proper operation or maintenance has ever been publicly disclosed.

## I.  The criminal forfeiture application.

On August 1, 2022, the Government applied for criminal forfeiture of the Honda Jet based on the contention that Defendant Michael Avenatti had "admitted the required nexus" between the Honda Jet and his crimes.  The Government relied on Avenatti's admissions that he represented Client 2, misappropriated her settlement funds, and executed wire transfers in furtherance of a scheme to defraud Client 2.  The Government also asserted that the nexus between the Honda Jet and Avenatti's crimes is supported by Avenatti's filing of a document in which he stated that he "does not object to the Court's entry of an Order of Forfeiture" of the Honda Jet.  Case 8:19-cr-00061-JVS,Dkt. 974.

On August 9, 2022, the Court entered the Preliminary Order of Forfeiture in the form presented by the Government, and required any person other than Avenatti asserting a legal interest in the Honda Jet to petition the Court to adjudicate the validity of its interest in the property.  Case 8:19-cr-00061-JVS, Dkt. 975. Following Spring Creek's and other claimants' filings, the Court ordered that it would determine the primacy of competing claims.  (Case 8:19-cr-00061-JVS, Dkt. 1099, Dkt. 1101.

## III.  LEGAL ARGUMENT

### A.  Legal Standard

Under 21 U.S.C. § 853(n)(6), a petitioner must demonstrate by a preponderance of the evidence that:

> "(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the *defendant* or was superior to any right, title, or interest of the *defendant* at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section."  (21 U.S.C. § 853(n)(6), emphasis added.)

The Court looks to state law to determine property rights.  *U.S. v. Nava,* 404 F.3d 1119, 1127 (9th Cir. 2005).  Notably, a defendant's plea bargain cannot establish his ownership of the property, *if the property is not his own. Id.,* at 1133.[2]

### B.  Spring Creek is an innocent owner with a vested interest in the Honda Jet *before* Avenatti's criminal acts.

Defendant Avenatti was convicted of wire fraud related to Client 2, Alexis Gardner.  Case No. 8:19-cr-00061-JVS, Dkt. 1053.  According to the Government, that wire fraud occurred on <u>January 26, 2017</u>, the day after Ms. Gardner's settlement funds were wired to the trust account of Eagan Avenatti LLP, and Avenatti (acting as a member/partner of EA) then wired those funds out of that trust account.  However, *before that date*, Spring Creek had already made its direct

---

[2] Defendant Avenatti's only factual basis for the plea was the following: "On or about *June 18, 2018*, I caused a $16,000 wire to be sent from California Bank & Trust account ending in 4613 to a J.P. Morgan Chase Bank account in the name of Client 2."  TR 6/16/2022 at 20:25-21:3, Dkt. 961, emphasis added. This date is after Spring Creek purchased its portion of the jet.

investment in the Honda Jet, leading to its majority ownership interest in the aircraft.

The evidence shows that on July 7, 2016, Mr. Parrish, on behalf of Spring Creek, wired $350,000 directly to Honda, as a down payment toward the purchase of the jet.  Parrish Decl. ¶ 4.  There can be no question that this payment represented a portion of the purchase price.

Passport was created on July 11, 2016.  Parrish Decl. ¶ 5, Ex. A.  The Passport Operating Agreement provides that: "This Agreement and the respective rights of the Members hereunder shall be governed by and construed under the laws of the State of California . . ."  Parrish Decl., Ex. A, Operating Agreement ¶18.  It further provides that: "each Member's ownership interest in the Aircraft will be according to and the same as their ownership interest in [Passport] as set forth on Exhibit A . . ."  Parrish Decl., Ex. A, Operating Agreement p. 1.  Exhibit A specifically lists the members contributions as follows: Spring Creek's interest was based on payment of $2,335,000; and A&A's interest was based on payment of $1,931,105.  *See*, Operating Agreement, Exhibit A.

On January 18, 2017, Mr. Parrish, on behalf of Spring Creek, wired another $1,985,000 to the account set up for Passport at California Bank & Trust. Parrish Decl. ¶ 6, Ex. B.  As designated manager of Passport, Avenatti was required to use those funds to purchase the aircraft.  *American Master Lease LLC v. Idanta Partners, Ltd*., 225 Cal.App.4th 1451, 1480 (2014) (the fiduciary duty a manager owes to the limited liability company and to its members are those of a partner to a partnership and the partners of the partnership, citing prior Corp. Code § 17153, now Corp. Code § 17704.09); *see also*, California Civil Code § 3529 ("That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due").  Spring Creek thus had a right to rely on the Passport Manager's fiduciary duty to complete the purchase for Passport, through the Passport bank account, with legitimate funds.  At this point,

Spring Creek was *owed* its interest in the aircraft from Passport, and Passport had a pre-existing obligation to perform.

As of January 18, 2017, Spring Creek's payments to Passport were complete; it had fully complied with its obligations to become an owner of the jet under the Operating Agreement.  As such, it had (at the very least) an equitable ownership interest under long-standing law.  *See*, Cal. Civ. Code § 3525 (between equal equities, the first in time prevails); *see also*, *Cox. v. Hughes*, 10 Cal.App. 553, 560-561 (1909) ("a sale, assignment or mortgage, for a valuable consideration, of chattels or other personal property to be acquired at a future time, operates as an equitable assignment, and vests an equitable ownership of the chattels in the purchaser or mortgagee as soon as they are acquired by the vendor or mortgagor, without any further act on the part of either; and this ownership a court of equity will protect and maintain at the suit of the equitable assignee," quoting Pomeroy's *Equity Jurisdiction*, Section 1288).

The Operating Agreement – effective long before the criminal conduct from which the forfeiture arose – established that *A&A could only own one-half (at best) of the aircraft; the remaining one-half of the jet was not A&A's at all, but Spring Creek's, the other member-owner of Passport*.  This Operating Agreement literally defined the ownership interests of the parties in the jet.

Avenatti, as Passport's then-Manager, had no right to "give away" more than the one-half he owned as a member of A&A.  Rather, it is a bedrock principle of property law that no one can transfer a better title than he or she has in the property.  *See*, *Claudino v. Pereira*, 165 Cal.App.4th 1282, 1289 (2008) (defendants' "predecessor in interest could not lawfully convey to her more property than they owned").

As a result, Spring Creek has traced its funds creating its direct 52.7% ownership interest in the Honda Jet to its wiring of legitimate funds to Honda ($350,000) on July 7, 2016; and to Passport ($1,985,000) on January 18, 2017.

When Passport took title on January 27, 2017, its individual members (Spring Creek and A&A) then each became part owners of the aircraft.   Accordingly, Spring Creek's majority interest in the jet is superior to that of defendant and any of the other claimants.

### C.   Alternatively, Spring Creek is an innocent owner because, amongst all the other claimants, it is the only bona fide purchaser of the jet.

Under Federal Rule of Criminal Procedure 32.2(c)(2), the Court must enter a final order of forfeiture "if the court finds that the *defendant* . . . had an interest in the property that is forfeitable under the applicable statute."  Emphasis added. This provision preserves a major tenet of criminal law:  criminal forfeitures are *in personam* actions that are limited to the property interests of the *defendant,* only. *Pacheco v. Serendensky*, 393 F.3d 348, 349, 355-356 (2nd Cir. 2004) (forfeiture statutes only apply to the *defendant's* interests in the property); *see also*, 21 U.S.C. § 853(n)(6)(A) (defendant's interest), and (B) (bona fide interest acquired from defendant); *see, e.g.*, *Rivera v. Carter*, No. 2:09-cv-2435-FMC-(VBKx), 2009 WL 8753486, at *7 (C.D. Cal. July 31, 2009) (collective trademark cannot be forfeited from unnamed defendants, preliminary injunction granted for non-named criminal defendant).

So what property interests did individual criminal defendant Avenatti own? Once Spring Creek wired its payment to Passport, its ownership interest was set under the Operating Agreement, which gave it a legal and/or equitable interest as owner-to-be, and Passport had an obligation to perform based on that pre-payment.[3] Spring Creek purchased its interest through and from Honda and Passport only, not Michael Avenatti.  And Avenatti, the only criminal defendant here, never had any legitimate ownership in the jet as an individual.

---

[3] Mr. Parrish and Spring Creek were clearly victims; they were severely harmed by the loss of the plane they had paid for and were using.

And, as explained above, Avenatti could not give away a better title than he had.  *Claudino, supra,* 165 Cal.App.4th at 1289.  Nor can a defendant's plea bargain establish his ownership of the property, *if the property is not his own.* *Nava, supra.,* 404 F.3d at 1133 (Defendant's "assertion of ownership in a plea agreement does not establish legal or equitable title").

Spring Creek became a majority owner based on its acquisition from Honda and Passport, under the Operating Agreement.  This was an interest it was owed, and for which it had pre-paid.  At no time prior to forfeiture did Spring Creek or Mr. Parrish have knowledge of Avenatti's criminal misfeasance, and did not know the jet was subject to forfeiture.  Parrish Decl. ¶¶ 8-11; *see also*, 21 U.S.C. § 853(n)(6)(B).  Accordingly, Spring Creek is a bona fide purchaser with an established majority ownership interest in the jet, superior to any other claimant.

### D.     Spring Creek's interest also vested based on its possession, control and use of the aircraft.

The Operating Agreement expressly states that (1) "the Company [Passport] agrees to lease the Aircraft exclusively to the Members . . . ," and (2) "The relationship of the Member among themselves shall be that of tenants-in-common with regard to the Aircraft . . ."  *See,* Operating Agreement, p. 1.  Believing in the validity of the Operating Agreement, Spring Creek acted accordingly:  it took possession of the Honda Jet after delivery.

It then continually maintained and used it thereafter until it was seized on April 10, 2019.  *See*, Parrish Decl. Ex. D (the invoices showing such possession, maintenance and use).  In fact, Mr. Parrish was about to board the jet when it was seized at the Santa Barbara airport.  Parrish Decl. ¶ 12.  This possession, maintenance and use dictates a finding that Spring Creek has a superior, more than one-half ownership interest in the jet.

California law imputes ownership and other related interests such as lessee or

tenancy based on possession, control and use of that property.[4]  Indeed, the California Evidence Code includes numerous provisions ascribing a presumption of ownership to use of the property.  California Evidence Code § 638 states: "A person who exercises acts of ownership over property is presumed to be the owner of it."  *See*, *Adler v. Blair*, 169 Cal.App.2d 92, 95 (1959) (presumption of ownership supports finding made in accordance with it, even in the face of contrary evidence, construing prior law]; *see also*, Cal. Evid. Code §§ 637 ("The things which a person possesses are presumed to be owned by him."); 632 ("A thing delivered by one to another is presumed to have belonged to the latter."); and *Lawrence v. U.S. Dept. of the Treasury*, 2015 WL 1415506, at *2-4 (S.D. Cal. March 26, 2015) (Court found Plaintiff had superior claim of title for aluminum cent, based in part on Evid. Code §§ 632 and 637).

California Civil Code section 654 is to the same effect: "The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others."   Federal law reflects this same concern, looking to ownership based on possessory interest in the res, with its attendant characteristics of dominion and control.  *See*, *United States v. Fifteen Thousand Five Hundred Dollars*, 558 F.2d 1359, 1360-1361 (9th Cir. 1977) (ownership or possessory interest in the property seized); *U.S. v. JP Morgan Chase Bank Account*, 835 F.3d 1159, 1166 n.7 (9th Cir. 2016) (in civil forfeiture case, possessory interest was sufficient to establish standing where possessor would be injured by forfeiture); *U.S. v. Hooper*, 229 F.3d 818, 823 (9th Cir. 2000) (civil and criminal forfeiture statutes are consistent since Civil Asset Forfeiture Reform Act of 2000).

Here, after Passport took title, Spring Creek (as a Passport member) took full possession and control of its majority portion of the jet, and proceeded to make

---

[4] An "owner" includes "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, . . ."  18 U.S.C. § 983(d)(6)(A); *see also*, 21 U.S.C. § 881(d) [other seizure laws apply].

PETITIONER SPRING CREEK RESEARCH, LLC'S
BRIEF RE PRIMACYOF INTEREST
8:19-CR-0061-JVS

continual use of it. Parrish Decl. ¶ 11.  This possession and use, coupled with evidence of its ongoing payments for the aircraft's expenses, literally up until the time it was seized, manifestly supports its position as part owner.  Parrish Decl. Ex. D.  And the further evidence of Spring Creek's repeated provision to the Government of information on the aircraft and proposed options for it, establishes its concern about the jet and its potential for diminishing value, demonstrating its vested interest in the aircraft as co-owner, co-exclusive lessee and co-tenant.[5] Conlan Dec. Ex. 2.  Accordingly, Spring Creek also has shown its ownership interest based on its dominion, control, use, and maintenance of the aircraft.

Notably, *no other claimant can do this, as no other claimant had any direct and intended connection to the jet whatsoever.*  Ms. Gardner, the victim, had no interest in the jet and certainly did not intend to purchase it.  And the other claimants are merely general unsecured creditors starting from a time long after Spring Creek acquired its interest.  (*United States v. Gettel*, 2017 WL 3966635, at *5 (S.D. Cal. Sept. 7, 2017).)

Spring Creek's conduct, and its numerous attempts to ensure the jet was not devalued, further demonstrates its manifest interest in the aircraft.  After paying over $2.3 million for its interest, using it regularly before it was seized, and repeatedly trying to negotiate with the government for some form of relief which establish its ownership, should be recognized.

### E.   Spring Creek's interest in the jet is also established by constructive trust.

California also recognizes interests created by constructive trust in cases under Section 853.  In *United States v. $4224,958.57 (Boylen)*, 392 F.3d 1002 (9th Cir. 2004), the Court applied California law on constructive trusts to the forfeiture

---

[5] It bears repeating that Avenatti never held any ownership interest in the jet. At the most, Avenatti was only entitled, through A&A, to one-half of the jet under the Operating Agreement.

PETITIONER SPRING CREEK RESEARCH, LLC'S
BRIEF RE PRIMACY OF INTEREST
8:19-CR-0061-JVS

of investment accounts.  There, the government sought repatriation of funds in Liechtenstein accounts which the defendant had controlled.  Appellants and other victims had invested with the Defendant, who shuffled those funds through the Liechtenstein accounts.  The trial court held that the beneficiaries lacked standing, as they were only unsecured creditors.  The Ninth Circuit rejected the government's argument, holding that the beneficiaries of the invested funds had standing as equitable owners.  *Id*. at 1005.  The Court further noted that the district court, on remand, should give "notice to *all* potential claimants and taking steps to assure that no claimant obtains more than his or her fair share."  *Ibid*., emphasis added; *see also*, Cal. Civ. Code §§ 2223, 2224; *see also*, *U.S. v. Wilson*, 659 F.3d 947, 953-954 (9th Cir. 2011) (third party claimant had ownership interest in own funds before the transfer, and at the time of the transfer a constructive trust arose, so the third-party interest was superior to that of the government).

Here, like *Wilson*, Spring Creek owned its funds before the transfer to Passport.  After the transfer, on January 18, 2017, a constructive trust arose in favor of Spring Creek, owed to it by non-criminal defendant Passport.  Spring Creek therefore still owned the funds.  See Cal. Civ. Code §§ 2223, 2224.

According to the Government, this forfeiture action arose on January 26, 2017, *i.e.*, later than Spring Creek's payment, when Ms. Gardner was defrauded out of her settlement. But Passport is not named as a criminal defendant; so its interests could not be forfeited under Section 853.  As a result, Ms. Gardner's alleged ownership interests in the specific forfeiture property (the Honda Jet) simply did not arise, perhaps by virtue of a lien, arose, at most, after Spring Creek's interest was acquired and vested.

### F.   Equity dictates that Spring Creek be awarded its acquisition price.

"If the property really belongs to the third party, he will prevail and recover his property whether there were defects in the criminal trial or the forfeiture process or not; and if the property does not belong to the third party, such defects in the

PETITIONER SPRING CREEK RESEARCH, LLC'S
BRIEF RE PRIMACY OF INTEREST
8:19-CR-0061-JVS

finding of forfeitability are no concern of his." *United States v. Andrews*, 530 F.3d 1232, 1237 (10th Cir. 2008) (emphasis, footnote and ellipsis omitted).  In this case, Avenatti (as a member of A&A) made an agreement before his criminal actions, to form Passport to take title, and to share the aircraft between the members of Passport.

In this case, Mr. Parrish not only put $2,335,000 of his funds directly into the Passport deal to obtain ownership of the aircraft, he also continued to pay for aircraft expenses and insurance when he used the jet.  He was told at the time of the seizure that he would be made whole.  Further, he continued to tell the government what it had to do to maintain the aircraft after the seizure.  He made valid proposals, including for his purchase of the remainder of the jet, and/or the sale of the asset. He was ignored or rebuffed each time.

Here, the refusal to award Spring Creek its ownership interest, obtained before that of any of the other Petitioners, would unfairly elevate Avenatti's timing of Passport's purchase of the aircraft over the intended use of the funds contributed in good faith by Spring Creek.  (It would also effectively make Passport a criminal defendant.)  Spring Creek's funds were deposited into Passport's account solely for the purpose of purchasing the jet.  Mr. Parrish had no idea that Avenatti would take those funds, apparently commingle them with embezzled funds taken from a law client in less than 10 days (according to the Government), then re-apply them to the aircraft purchase.  Rather, Spring Creek intended that Passport simply pay for the jet with legitimate funds, as required of managers of LLCs.

Equity does not allow such unfairness.  "That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due."  Cal. Civ. Code § 3529.  As shown above, the funds used to purchase the jet were validly traced to Mr. Parrish's legitimate account, similar to the characterization of community or separate property in family law.  *See, In re Marriage of Ciprari*, 32 Cal.App.5th 83, 96-97 (2019) (tracing back to the separate

property was simply a matter of proof, based on credible evidence); *In re Marriage of Walrath*, 17 Cal.4th 907, 919 (1998) (to preclude tracing would result in manifest unfairness).

Here, Spring Creek's ownership interest arose because it agreed to form Passport and have Passport purchase the aircraft. This agreement was made long before the alleged criminal behavior, when Mr. Parrish thought his attorney was law abiding.   Yet Spring Creek is the party which lost possession and use of the jet and possibly the $2,335,000 it paid for it as well.  Bluntly put, that is not fair.

### G.    The other petitioners have no superior rights.

Ms. Gardner, although a victim of Avenatti's criminal conduct, was defrauded *after* Spring Creek made its payments to Passport in January 2017.  This occurred when Avenatti, with the assistance of Ms. Gardner's current counsel the X-Law Group, allegedly wired some of her settlement funds to Honda.  But her interest did not attach until January 26, 2017, at best, as a result of the theft of her funds by Avenatti.  Thus, Spring Creek's ownership interest is superior.  Moreover, Ms. Gardner's restitutionary interest is capped at $1,432,585, and her rights should be limited to that sum.  Sentencing Hearing Tr., Dec. 5, 2022, at p. 84, Dkt 1072.

Eagan Avenatti and Jason Frank are both in the same boat.  Both are at best unsecured general creditors who lack a legal right, title or interest in the debtor's specific assets.  *United States v. Gettel*, No. 16-cr-01099-WQH, 2017 WL 3966635, at *5 (S.D. Cal. Sept. 7, 2017).  Applied here, these Petitioners are unsecured general creditors who cannot trace their funds to the aircraft, the specific property at issue.

## IV.    CONCLUSION

For the reasons set forth above, Petitioner Spring Creek respectfully requests that this Court enter an order: (1) providing that Spring Creek's interest is superior to that of Defendant Avenatti or any other claimant; (2) amending the Forfeiture

1  Order to reflect that finding; and (3) denying the claims of other claimants to the

2  extent they reduce Spring Creek's ownership percentage to less than 53% of the

3  value of the jet.

4

5    DATED:  June 12, 2023                 CAPPELLO & NOËL LLP

6

7                                         By: */s/ Lawrence J. Conlan*

8                                         A. Barry Cappello
                                          Lawrence J. Conlan
9                                         Wendy D. Welkom
                                          Attorneys for Petitioner
10                                        Spring Creek Research, LLC and
                                          William Parrish

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## __VERIFICATION__

2

3  I, William Parrish, am the Managing Member of Petitioner Spring Creek

4  Research, LLC, and authorized to make this verification on its behalf. I have read

5  the foregoing **PETITIONER SPRING CREEK RESEARCH LLC'S BRIEF**

6  **REGARDING PRIMACY OF INTEREST IN HONDA AIRCRAFT** and know

7  its contents thereof. The matters stated in the foregoing document are true to the

8  best of my own knowledge except as to those matters which are stated on

9  information and belief, and as to those matters, I believe them to be true.

10  I declare under penalty of perjury under the laws of the United States of

11  America that the foregoing is true and correct.

12

13

14  Dated:   June __12__, 2023

15  _____

16  Spring Creek Research, LLC

17  By: William Parrish

18  Title: __Managing Member__

19

20

21

22

23

24

25

26

27

28

1
2

**<u>CERTIFICATE OF SERVICE</u>**

3
4
5
6

I, Lawrence J. Conlan, hereby certify that on June 12, 2023, I caused the foregoing **PETITIONER SPRING CREEK RESEARCH LLC'S BRIEF REGARDING PRIMACY OF INTEREST IN HONDA AIRCRAFT** to be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

7
8
9

*/s/ Lawrence J. Conlan*

10

Lawrence J. Conlan

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PETITIONER SPRING CREEK RESEARCH, LLC'S
BRIEF RE PRIMACY OF INTEREST
8:19-CR-0061-JVS