A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
Lawrence J. Conlan (CSB No. 221350)
lconlan@cappellonoel.com
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

Attorneys for Petitioner
Spring Creek Research LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL JOHN AVENATTI,<br><br>        Defendant. | Case No. 8:19-cr-0061-JVS<br><br>**DECLARATION OF LAWRENCE J. CONLAN IN SUPPORT OF PETITIONER SPRING CREEK RESEARCH LLC'S BRIEF REGARDING PRIMACY OF INTEREST IN HONDA AIRCRAFT** |

## DECLARATION OF LAWRENCE J. CONLAN

I, LAWRENCE J. CONLAN, declare and state:

1.      I am a partner at the law firm of Cappello & Noël LLP and counsel for Spring Creek Research LLC by and through its Manager William Parrish. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could testify competently to the matters set forth herein.

2.      I submit this declaration in support of Petitioner of Spring Creek Research LLC's Brief Regarding Primacy of Interest in Honda Aircraft.

3.      A true and correct copy of my April 11, 2019 email to Assistant U.S. Attorneys Mr. Julian Andre and Mr. Brett Sagel is attached hereto as **Exhibit 1**.

4.      A true and correct copy of my May 6, 2019 email to Assistant U.S. Attorney Mr. Steven Welk is attached hereto as **Exhibit 2**.

5.      A true and correct copy of my February 2, 2020 email to Assistant U.S. Attorney Mr. Steven Welk is attached hereto as **Exhibit 3**.

6.      A true and correct copy of the May 28, 2020 email from Assistant U.S. Attorney Mr. Steven Welk is attached hereto as **Exhibit 4**.

7.      A true and correct copy of my January 31, 2020 email to Assistant U.S. Attorney Mr. Steven Welk is attached hereto as **Exhibit 5**.

8.      A true and correct copy of my June 25, 2020 email to Assistant U.S. Attorney Mr. Steven Welk is attached hereto as **Exhibit 6**.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 12, 2023 at Santa Barbara, California.

/s/ Lawrence J. Conlan

Lawrence J. Conlan

DECLARATION OF LAWRENCE J. CONLAN IN
SUPPORT OF BRIEF REGARDING PRIMACY OF
INTEREST | 8:19-CR-0061

# EXHIBIT 1

**Mandy Duong**

| | |
|---|---|
| **From:** | Lawrence J. Conlan |
| **Sent:** | Thursday, April 11, 2019 3:15 PM |
| **To:** | Andre, Julian L. (USACAC); Sagel, Brett (USACAC) |
| **Subject:** | RE: US v Michael Avenatti; Parrish and FItzgibbons v. Michael Avenatti |

Dear Julian and Brett:

Yesterday when my client William Parrish arrived at Santa Barbara Airport to fly his private plane to Orange County, he was informed by special agents from Treasury that his plane was being seized in connection with the case against Avenatti.  Mr. Parrish originally purchased the plane with Avenatti as a co-owner several years ago, but pursuant to a December 2018 Orange County court order Avenatti transferred his interest in the plane to his ex-wife, to liquidate as part of a support obligation.  As of the date of that order, Avenatti was no longer an owner of the plane.

Mr. Parrish, who has already been subjected to Avenatti's malpractice and misrepresentations, is now being injured again by the seizure of his property.

Today left a voicemail for Special Agent Jason Wallace of Treasury, who along with Special Agent James Kim was involved with the plane seizure.  I have not received a call back.  When Mr. Parrish explained to Mr. Kim that he is an owner of the plane, Mr. Kim assured him that he would be made whole.  I am trying to get some more information about the status of the plane and next steps here.

Let me know, please, if we can discuss this matter.

Best regards,

Larry Conlan

Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

---

**From:** Lawrence J. Conlan
**Sent:** Tuesday, April 9, 2019 12:37 PM
**To:** Andre, Julian L. (USACAC) <Julian.L.Andre@usdoj.gov>; Sagel, Brett (USACAC) <Brett.Sagel@usdoj.gov>
**Subject:** RE: US v Michael Avenatti; Parrish and FItzgibbons v. Michael Avenatti

Dear Julian and Brett:

Below is a Dropbox link that contains the State Bar Complaint (with exhibits) against Avenatti filed on behalf of Mr. Parrish and Mr. Fitzgbbons, and a conformed copy of Mr. Parrish's civil complaint against Avenatti and the Judgment entered on that complaint on 10/26/18.

https://www.dropbox.com/sh/7bat7x5pxluv48h/AAB7ygZIwN62MkMWWHNJ6pPra?dl=0

If you need hard copies we would be happy to mail them to you.  Once you've had a chance to review please let me know if you have any questions or would like to see any other documents.  We can also make available documents form the underlying Orange County litigation (Stoll) that is the subject of the malpractice complaint.

Best regards,

Larry Conlan

Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

---

**From:** Andre, Julian L. (USACAC) <Julian.L.Andre@usdoj.gov>
**Sent:** Monday, April 8, 2019 12:06 PM
**To:** Lawrence J. Conlan <lconlan@cappellonoel.com>; Sagel, Brett (USACAC) <Brett.Sagel@usdoj.gov>
**Subject:** RE: US v Michael Avenatti; Parrish and FItzgibbons v. Michael Avenatti

Mr. Conlan:

Thank you for contacting us.  We have a copy of the complaint that was recently filed in Santa Barbara Superior Court, but would be interested in reviewing any and all additional materials that you are willing to provide to us.

**Julian L. André**
**Assistant United States Attorney**
**Major Frauds Section**
United States Courthouse, Suite 1100
312 N. Spring St. | Los Angeles, California 90012
T: 213.894.6683 | julian.l.andre@usdoj.gov

---

**From:** Lawrence J. Conlan <lconlan@cappellonoel.com>
**Sent:** Monday, April 8, 2019 11:42 AM
**To:** Andre, Julian L. (USACAC) <JAndre1@usa.doj.gov>; Sagel, Brett (USACAC) <BSagel@usa.doj.gov>
**Subject:** US v Michael Avenatti; Parrish and FItzgibbons v. Michael Avenatti

**Confidential**

Dear Julian and Brett:

I represent William Parrish and E. Timothy Fitzgibbons in civil litigation against Michael Avenatti.  Last week in Santa Barbara Superior Court we filed a professional negligence case against Avenatti and his former firm/partners that details major ethical violations and other malfeasance.  Last month we submitted a formal complaint to the State Bar of California on behalf of our clients, also concerning Avenatti.  Separately, last fall I obtained a judgment against Avenatti in a different case in Santa Barbara, concerning a $1.5 million loan William Parrish made to Avenatti several years ago (while Avenatti was representing him) for the purchase of Tully's Coffee, which was never repaid.  Avenatti is appealing the judgment.

I believe there are similarities between Avenatti's handling of my clients and the manner in which he represented his former client Mr. Barela, whose settlement proceeds are alleged to have been mishandled in your criminal

complaint.  Avenatti's conduct with the settlement proceeds and attorney fees detailed in the malpractice complaint, as well as the unpaid loan, may also be relevant to the tax evasion charges in your criminal complaint.

I would be happy to provide you with copies of our complaints and judgment if you are interested, and of course I'm available to discuss these matters with you as well.

Best regards,

Larry Conlan


Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

# EXHIBIT 2

**From:** Lawrence J. Conlan <lconlan@cappellonoel.com>
**Sent:** Thursday, May 2, 2019 10:26 AM
**To:** Welk, Steven (USACAC) <SWelk@usa.doj.gov>; Keleshyan, Tina (USACAC) [Contractor] <tkeleshyan@usa.doj.gov>
**Subject:** RE: Avenatti airplane

**Confidential**

Dear Steve:

Thanks again for taking the time to speak with me yesterday.  As we discussed, the engines of the HondaJet need to be run at least once each month and the hours sent to Honda Aircraft to be in compliance with applicable service and warranty agreements.  Not being in compliance would likely have a very major effect on the value of the aircraft.  I am attaching a copy of the service plan agreement (unexecuted); an executed copy can be obtained through Honda Aircraft.  Please contact Honda to get the particulars on maintaining the programs and warranty.  The telephone number we have is 336-217-4707 and the email address is flightready@haci.honda.com.

Separately, I am also attaching documentation that shows Mr. Parrish's purchase and ownership of more than 52% of the interest in the jet.  You will see from the Honda Aircraft Company invoice (p. 3 of 5 of pdf labeled Honda delivery docs) that:
- the total net price was $4,383,605.

- This included the base price, adjusted, plus options and tax.

Also attached are wire transfer confirmations showing:
- Mr. Parrish's 1/18/17 wire transfer of $1,985,000 from his family trust account at Goldman Sachs into what I understand to be the Passport 420 LLC account at California Bank & Trust;
- Mr. Parrish's 7/12/16 wire transfer of $350,000 from his family trust into what I understand to be the Honda Aircraft account at Wells Fargo Bank NA.

Finally, I am also including an accounting that details Mr. Parrish total payments and his 52.7% interest.

You and I also discussed the potential complications with a sale of the jet given the dispute between Ms. Storie-Avenatti, her lawyers, and Avenatti's former law partners over their claimed interests in the jet. For a number of reasons, it appears to me that Ms. Storie-Avenatti has no legitimate interest in the jet given that the interest was fraudulently assigned to her by Michael Avenatti who evidently used other people's money to purchase his "share" in Passport 420. To what extent his former law partners have an interest is subject to debate, in my view. Their claims of interest in the jet, whether valid or not, will only complicate any efforts to liquidate it as a seized asset and likely cause the value of it to be driven down in the eyes of prospective buyers. That would be a result that benefits no party on the seller side.

What is clear, however, is that Mr. Parrish paid for his interest with his own money, out of his own accounts, and there should be no dispute about his percentage ownership. Since Mr. Parrish is the legitimate owner of more than half of the jet, he feels particularly wronged by the seizure. He is very concerned that whatever value he may get from a sale will be reduced because of the stigma on the jet from the seizure. This is compounded by the fact that he has now been deprived of all ability to use the jet, which he is entitled to as a legitimate owner.

I would like to explore with you a solution that would benefit your office and client, as well as mine, and maximize the value of the recovery from an ultimate sale. We think it would make more sense, and would be fairer under the circumstances, if the government would consider liening the jet in the amount of the Avenatti interest, and then releasing it to Mr. Parrish as the majority owner. This would allow him to continue to use it while proceeding with the marketing and sale process, make it easier for prospective buyers to test-fly it, and minimize the likelihood of "fire sale" buyers seeing an opportunity to pay well below value for a government-seized asset. The jet is fully insured so the government's interest would be protected. Please consider this as an option here. We think it is an approach that will create the most upside for you and Mr. Parrish under less-than-ideal circumstances.

Best regards,

Larry Conlan

Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

# EXHIBIT 3

## Mandy Duong

| | |
|---|---|
| **From:** | Lawrence J. Conlan |
| **Sent:** | Wednesday, February 12, 2020 11:56 AM |
| **To:** | Welk, Steven (USACAC) |
| **Subject:** | RE: HondaJet expenses from William Parrish |

Dear Steve,

Following up on your email below, here is an explanation of the services that are the bases of the invoices I forwarded to you and asked that the government pay.

The invoices I forwarded come from two parties – CAMP and Honda.  Neither are billing for anything comparable to an installment purchase contract or for mortgage payments due.  The services are provided in order to maintain the value of the jet and they are relied on by prospective buyers.

Specifically, CAMP tracks the maintenance and is required by buyers to assure them the maintenance requirements, of which there are many, have been complied with. On small planes they use log books, on jets the records require a digital verified check which CAMP provides.  Without CAMP, it is an expensive and time consuming process to validate the airworthiness and compliance of a jet when one tries to sell it.  It is widely understood in the industry that most prospective buyers would not buy a jet without CAMP.

The Honda maintenance contracts for the engines and airframe are a clear value in a sale.  The engines for instance will be overhauled by the manufacturer at the required time limit or before as a warranty claim if the payments are properly made. If the "policy" is abandoned for non-payment it is very expensive to buy one's way back in for coverage again. Almost all jets have this type of maintenance contract and those that do not take a big hit in value.

Since the underlying services for the invoices are critical to maintaining the value of the jet that the government seized, we believe the government, as the custodian, is obligated to pay the invoices.  Hopefully the explanation above satisfies your concerns and you can assure me that the invoices will be paid without delay.  If not and you have other questions or want to discuss further, please let me know as soon as possible.

Thank you,

Larry Conlan


Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

---

**From:** Welk, Steven (USACAC) <Steven.Welk@usdoj.gov>
**Sent:** Wednesday, January 29, 2020 11:57 AM
**To:** Lawrence J. Conlan <lconlan@cappellonoel.com>
**Subject:** RE: HondaJet expenses from William Parrish

Mr. Conlan,

1

My apologies for the delay in getting back to you on this, but other, more urgent matters have required my attention.  I have had a chance to review the invoices you have provided, but it is not clear to me from the documents themselves (1) what the charges are for; or (2) why the government would be responsible for paying them.  Your email does nothing to clarify either issue.

The government is holding the defendant aircraft as the custodian for the Court, which has exercised its *in rem* jurisdiction over the property.  As custodian, the government has certain responsibilities to maintain the property in the same condition in which it was seized, and do what it reasonably can to prevent or avoid depreciation or waste of the assets, all of which it is doing.  To the extent that Passport 420, which still owns the aircraft, has incurred financial obligations arising from its ownership, those obligations remain those of Passport 420, as is true of any seized asset.

For example, if the government seizes a car subject to an installment purchase contract, it is not the government's responsibility either to make the monthly payments on the loan or maintain insurance of the vehicle during the time that it is in government custody.  Where the government complains against a parcel of real property securing a note, it bears no responsibility for keeping the mortgage current, as that is the responsibility of the owner of the property (or whomever accepted responsibility for the note).  To the extent that you believe these invoices are the government's responsibility, please explain what the invoices or for, and the basis for your apparent belief that the government should pay them.

Thanks.

SRW

---

**From:** Lawrence J. Conlan <lconlan@cappellonoel.com>
**Sent:** Monday, January 6, 2020 10:51 AM
**To:** Welk, Steven (USACAC) <SWelk@usa.doj.gov>
**Subject:** HondaJet expenses from William Parrish

Dear Steve:

Happy New Year.  I am attaching invoices for necessary expenses on the seized jet.  One is a billing from Honda, and the other is from CAMP which tracks maintenance on the jet.  These need to be paid or the jet will lose significant value while in your possession.  Would you please confirm that these will be paid or let me know if you have questions about them.

Best regards,

Larry Conlan


Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

# EXHIBIT 4

**From:** Welk, Steven (USACAC) <Steven.Welk@usdoj.gov>
**Sent:** Tuesday, May 28, 2019 4:48 PM
**To:** Lawrence J. Conlan <lconlan@cappellonoel.com>; astolper@lawfss.com; jreitman@lgbfirm.com; Bisbee Law Group, PC <info@enforcemyorder.com>; david@gammill.law; jlittrell@bienertkatzman.com
**Cc:** Keleshyan, Tina (USACAC) [Contractor] <Tina.Keleshyan@usdoj.gov>; Andre, Julian L. (USACAC) <Julian.L.Andre@usdoj.gov>; Sagel, Brett (USACAC) <Brett.Sagel@usdoj.gov>
**Subject:** Proposed interlocutory sale of Honda airplane

   Gentlemen,

   Good afternoon.  While I have talked with most of you individually about the proposed interlocutory sale of the seized plane involved in the *Avenatti* matter, I wanted to conduct this next stage in writing.  The plane has been stored since seizure by the government with a third-party contractor who is knowledgeable about this type of property.  I have confirmed that the contractor is familiar with the aircraft and will take the steps necessary to preserve its value.  That being said, maintaining the plane during the course of forfeiture proceedings promises to be an expensive proposition, and one that I would like very much to avoid.

   I believe the recipients of this email represent all of the potential real parties in interest with respect to the plane, although one or more of your clients may, in fact, disclaim any interest.  Further, given the underlying circumstances, my initial impression of this matter is that the government is unlikely ultimately to retain any of the realized value of the plane in the event of forfeiture beyond its out of pocket costs associated with retention and maintenance.  However, how that value will be distributed is probably going to be a complicated process, and the pending criminal matter means that that the forfeiture is not likely to be resolved quickly.

   My proposal is that the plane be sold by stipulation of all the real parties in interest, with the net proceeds of the sale held by the government pending resolution of the competing claims.  I think we all agree that airplanes are particularly volatile assets, requiring a lot of maintenance.  It generally is always best to sell aircraft and then litigate over the proceeds of sale. Interlocutory sales

1

of property that has been seized for purposes of federal forfeiture proceedings are governed by Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Such sales may be ordered by the Court where (1) the property is perishable or otherwise subject to waste or depreciation because of its nature; (2) the costs associated with retaining the property are excessive or disproportionate to the value; (3) the property is subject to liens or taxes that are in default; or (4) other good cause. Here, I suggest that the first and second categories apply.

A Rule G interlocutory sale must be conducted in one of two ways. The preferable method is by stipulation, requiring that "all parties, with the Court's approval, agree to the sale, aspects of the sale, or different procedures." This option gives the parties the ability to determine all of the terms of sale, so long as they can all agree. The far less preferable option is where the government moves for an interlocutory sale over the objection of one or more real parties in interest. In that setting, "the sale is governed by 28 U.S.C. sections 2001, 2002 and 2004." Those sections set out what is commonly referred to as "auction on the courthouse steps," since that it exactly what happens. The plain language of the Rule is clear, however, that in the absence of the agreement of all of the real parties in interest, the Court has no choice but to order the sale under Title 28, which results in a substantially lower sale price.

My request is that all of you get together and come up with terms for an interlocutory sale that will result in the net proceeds being paid to the government to be held pending the formal resolution of the forfeiture. The funds would act as a substitute res for the plane and will cut off all costs associated with retention and maintenance. The sale can be handled as an auction or as a private sale. The government will require that it vet the proposed buyer and the source of funds to be used to make the purchase. Otherwise, so long as the proposed terms are commercially reasonable and the government's actual out-of-pocket costs are reimbursed out of the gross sales proceeds, I can draft the stipulation and order and file them with the Court to complete the sale. I do not think it's necessary that I be directly involved in the negotiation of terms, but I am happy to do so if you would like. My guess is that if all of you can agree on a set of terms, I will be satisfied with the proposal.

Please let me know if this sounds like a workable plan. If everyone thinks that it makes sense to get on a conference call, I'd be happy to host, maybe June 4 or 5 in the afternoon.

AUSA Steve Welk
Chief, Asset Forfeiture Section

# EXHIBIT 5

## Mandy Duong

| | |
|---|---|
| **From:** | Lawrence J. Conlan |
| **Sent:** | Friday, January 31, 2020 1:27 PM |
| **To:** | Welk, Steven (USACAC); John Reitman; astolper@lawfss.com; ssims@lawfss.com; Jack Reitman; david@gammill.law; FM@xlawx.com; DR@xlawx.com; TG@xlawx.com |
| **Cc:** | Keleshyan, Tina (USACAC) [Contractor] |
| **Subject:** | RE: US v. One Honda Aircraft, SACV 19-1988 JVS |

All,

It is not clear to me whether everyone in this group has weighed in (it does not appear so), but I have the following comments on behalf of Mr. Parrish and Spring Creek Research.

First, we have no objection to the scheduling conference being continued until March 30, 2020.

Second, as to the issue of forfeitability of the Hondajet, we dispute that any party other than Mr. Parrish and Spring Creek Research has any direct and legitimate claim of right.  Mr. Parrish is the only party who paid money with the intent of purchasing the jet and whose funds are directly traceable to the jet, he is the only party who paid money directly to Honda, he is the only party who has ever been in possession of the jet (except for Avenatti), the only party who has paid to maintain it, the only party who has used it (except for Avenatti), and therefore the only party with a legitimate claim of right.  I am not aware of any other party whose actual funds can be traced directly to the purchase of the jet or to its maintenance.  Mr. Reitman did send me his analysis of the tracing of the commingled funds in the Eagan Avenatti accounts, but it appears to be based on several assumptions that are not supported and I have real questions about its accuracy.

While I understand that several parties claim rights to the jet based on funds they *believe* to be theirs that were commingled with Eagan Avenatti funds in Eagan Avenatti accounts, it is not clear to me and it may never be clear that any of those parties can *establish what funds* are theirs and which portion, if any, of them were paid for the purchase of the jet.  In contrast, Mr. Parrish can.

Finally, based on the filings in this case (in particular as described in the pleadings filed on behalf of Jason Frank) it appears that Mr. Marchino and his firm X Law were directly involved in accepting funds from Eagan Avenatti accounts into X Law accounts and then wiring funds directly to Honda.  Setting aside how those funds may have been commingled at Eagan Avenatti before being wired to X Law, if those funds were related to Ms. Gardner's settlement, it appears that her claim should be directed at Mr. Marchino and X Law, and not the seized property.  If my reading of Mr. Franks' pleadings is not correct, please let me know.  But if it is, I don't believe Mr. Marchino, his firm or his client have any standing to even make a claim for the jet in this proceeding.

We are available to join another call with DOJ and those with potentially legitimate claims to discuss a possible sale of the jet, but any such sale would have to be conditioned on an agreement that fully recognizes Mr. Parrish's superior rights in the jet.

Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

**From:** Welk, Steven (USACAC) <Steven.Welk@usdoj.gov>
**Sent:** Wednesday, January 29, 2020 12:06 PM
**To:** John Reitman <jreitman@landaufirm.com>; Lawrence J. Conlan <lconlan@cappellonoel.com>; astolper@lawfss.com; ssims@lawfss.com; Jack Reitman <jareitman@landaufirm.com>; david@gammill.law; FM@xlawx.com; DR@xlawx.com; TG@xlawx.com
**Cc:** Keleshyan, Tina (USACAC) [Contractor] <Tina.Keleshyan@usdoj.gov>
**Subject:** RE: US v. One Honda Aircraft, SACV 19-1988 JVS

Mr. Reitman,

I have no objection to asking that the conference be continued to March 30 to accommodate your schedule, and we will make the revision to the application and order.

As for the possibility of an interlocutory sale of the defendant aircraft, I remain in enthusiastic agreement that such a sale would be in the best interests of all of the real parties in interest, and would recommend that we revisit the issue when we gather (telephonically, I expect) to discuss the joint report that we are required to submit two weeks before the scheduling conference. Since it seems self-evident to me that interlocutory sale is appropriate here, and by that time the universe of claimants will have been settled, my inclination would be to file a motion asking the Court to order an interlocutory sale pursuant to Rule G(7)(b) of the Supplemental Rules, and to ask those parties in agreement to join in the motion.

SRW

**From:** John Reitman <jreitman@landaufirm.com>
**Sent:** Wednesday, January 29, 2020 11:36 AM
**To:** Welk, Steven (USACAC) <SWelk@usa.doj.gov>; lconlan@cappellonoel.com; astolper@lawfss.com; ssims@lawfss.com; Jack Reitman <jareitman@landaufirm.com>; david@gammill.law; FM@xlawx.com; DR@xlawx.com; TG@xlawx.com
**Cc:** Keleshyan, Tina (USACAC) [Contractor] <tkeleshyan@usa.doj.gov>
**Subject:** RE: US v. One Honda Aircraft, SACV 19-1988 JVS

Mr. Welk, I have no problem with seeking a continuance of the scheduling conference. However, I'm currently scheduled to be out of town starting on March 18 and not returning to Los Angeles until late on the 23rd.

On the subject of forfeiture and sale of the jet, months ago we discussed a private sale through a qualified broker. At that time, I understood everyone to agree with that form of sale (because it likely would result in a significantly greater net recovery), except for Mr. Fitzgibbons' attorney. The net result was that this has already resulted in increased storage/maintenance costs to preserve the asset. At the very least, I think the parties should try again to resolve the sale issue and perhaps seek the District Court's assistance if necessary.

On the question of the sources of funds used to purchase the jet, Brian Weis, the former receiver for Eagan Avenatti LLP, performed a bank records analysis. In an effort to induce Mr. Fitzgibbons and his counsel to reconsider their position on sale, with the receiver's approval I provided that analysis to counsel. But nothing came of that gesture. To facilitate matters, I will find out if the Eagan Avenatti bankruptcy trustee will agree to provide the information to all parties if they believe it may be helpful.


John Reitman
Attorney

**Landau Law LLP**
1880 Century Park East, Suite 1101
Los Angeles, CA 90067
Main: 310-557-0050
Direct:  310-691-7377
Fax: 310-557-0056
E-mail:  jreitman@landaufirm.com
Web:  www.landaufirm.com

Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Welk, Steven (USACAC) <Steven.Welk@usdoj.gov>
**Sent:** Wednesday, January 29, 2020 8:52 AM
**To:** lconlan@cappellonoel.com; astolper@lawfss.com; ssims@lawfss.com; John Reitman <jreitman@landaufirm.com>; Jack Reitman <jareitman@landaufirm.com>; david@gammill.law; FM@xlawx.com; DR@xlawx.com; TG@xlawx.com
**Cc:** Keleshyan, Tina (USACAC) [Contractor] <Tina.Keleshyan@usdoj.gov>
**Subject:** US v. One Honda Aircraft, SACV 19-1988 JVS

Good morning Counsel,

Attached to this email is an *ex parte* application the government intends to file in the above action to continue the scheduling conference from March 2 until March 23. The reason for the request is that our direct notice letters to certain of the potential claimants were returned to us or were unclaimed, and we were required to send out revised letters to those parties. The dates by which those parties are required to file their claims and answers now extends beyond the date by which the parties are required to report to the Court on our suggested scheduling of dates. The main point of my email today is to inquire of each of you whether you have any objection to the requested continuance. Please advise at your earliest convenience. I intend to file the application this Friday afternoon.

I also want to ask you all to start thinking about scheduling. To date, Mr. Avenatti has not filed a claim, and his time to do so may have already expired. When the time comes for us to have a joint discussion about scheduling, I'd like to hear from all of you as to whether your clients are going to contest the forfeitability of the defendant airplane. In other words, I'd like to know if we are in agreement that the sources of money used to purchase the plane as described in the complaint are accurately stated. Please note that agreement on forfeitability will have no substantive effect on the various defenses to forfeiture that will be argued by the claimants. Exactly whose monies were used to acquire the plane, and in what amounts, will inform the ultimate question of which claimant(s) should recover a portion of the proceeds (and what portion), and that will still need to be determined separately from the forfeitability issue. My primary reason for raising this is that if Mr. Avenatti is not a claimant, and we all agree on the forfeitability of the plane, there likely will be no need to stay the forfeiture case pending the conclusion of Mr. Avenatti's related criminal prosecution in this district. If, on the other hand, there is going to be a dispute about forfeitability

that requires the government to present evidence that is relevant to the criminal case, the government will move to stay the case in order to avoid any adverse effect on the related criminal prosecution.  We don't need to have a full discussion of that now, but we will when the time comes for scheduling the case.

Please let me know if you intend to oppose the proposed request for continuance.  Thanks.

SRW

# EXHIBIT 6

**Mandy Duong**

| | |
|---|---|
| **From:** | Lawrence J. Conlan |
| **Sent:** | Thursday, June 25, 2020 10:47 AM |
| **To:** | Welk, Steven (USACAC); Filippo Marchino; astolper@lawfss.com; DR@xlawx.com; ssims@lawfss.com; jreitman@lgbfirm.com; jareitman@lgbfirm.com; david@gammill.law; TG@xlawx.com |
| **Cc:** | Keleshyan, Tina (USACAC) [Contractor]; A. Barry Cappello |
| **Subject:** | RE: US v. One Honda Aircraft, SACV 19-1988 JVS |

Dear Mr. Welk and others addressed in this email:

On June 5, 2020 Mr. Welk on behalf of the government requested a stipulation to a stay of this forfeiture action pending Michael Avenatti's criminal prosecutions, of which there are many.  You advised that absent agreement from all on this email you would apply *ex parte* for relief.  That was three weeks ago.  I asked you to explain the basis for seeking emergency relief, and until your email this morning I had not received a response.  Today you responded that emergency relief is needed because an alleged creditor served discovery on another.

We disagree for several reasons.  We are not aware of who served or was served with discovery, but if the goal is to avoid discovery, there are other solutions.  For example, the party on whom discovery was served (or the government) can simply object with whatever authority they wish to rely on, and force the serving party to seek relief.  A stay was evidently not an emergency three weeks ago, and it does not appear to be one now.

Moreover, we do not believe that a stay is warranted here under any circumstances, and we will oppose any request.  Avenatti's criminal prosecutions could take years to resolve (if you factor in his likely appeals).  Meanwhile, the asset the government seized, the Honda Jet for which our client William Parrish paid $2.3mm of his own funds, deteriorates in value for lack of maintenance and operation.  Any request for a stay should be, at a minimum, by noticed motion to allow a fair opportunity to be heard and to oppose.  Ultimately, it is our view that the asset should never have been seized, and the only result so far is a huge loss in value and further harm to the real victims of Avenatti's misconduct, in particular Mr. Parrish.

**Rather than a stay, I am asking all on this email to consider the following proposal that would allow legitimate creditors to obtain funds much sooner rather than endure a lengthy (and probably indefinite) stay and major loss in value of the asset while Avenatti is prosecuted**.

Since the seizure, the jet has been deteriorating in value for a number of reasons, including that it is not being adequately maintained and operated as it was before the seizure.  We have never been provided with any information about how if at all the jet is being preserved, or any expenses incurred by the government.  We have, however, sent to the government a number of routine maintenance invoices that it did not pay, and critical services have now been cancelled.  Those services are relied on by prospective buyers; they track maintenance and validate the airworthiness and compliance of a jet when one tries to sell it.  It is widely understood in the industry that most prospective buyers will not buy a jet if such services are not current or if they would have to pay significant funds to obtain service coverage again.

In an attempt to preserve the value that remains of the jet, Mr. Parrish will offer to pay $850,000 for the 47% of the jet he does not already own, in exchange for full releases from all those making a claim to the jet.  We

believe the funds can be divided (including accounting for government expenses) amongst the legitimate creditors through negotiation or by litigation.

If you are interested in this proposal and getting some money sooner rather than later this is a fair offer in light of the current market price and accounting for the lack of maintenance and operation, tax liens, and also accounting for likely further reductions that would result from a government-sponsored sale.  Mr. Welk and his office would have to agree as well, of course.

Please let me know your thoughts.

Sincerely,

Larry Conlan


Lawrence J. Conlan | Cappello & Noël LLP
831 State Street | Santa Barbara, CA 93101
Tel: 805.564.2444 | Fax: 805.965.5950 | lconlan@cappellonoel.com

---

**From:** Welk, Steven (USACAC) <Steven.Welk@usdoj.gov>
**Sent:** Thursday, June 25, 2020 8:20 AM
**To:** Filippo Marchino <fm@xlawx.com>; Lawrence J. Conlan <lconlan@cappellonoel.com>; astolper@lawfss.com; DR@xlawx.com; ssims@lawfss.com; jreitman@lgbfirm.com; jareitman@lgbfirm.com; david@gammill.law; TG@xlawx.com
**Cc:** Keleshyan, Tina (USACAC) [Contractor] <Tina.Keleshyan@usdoj.gov>
**Subject:** RE: US v. One Honda Aircraft, SACV 19-1988 JVS

Counsel,

My apologies for the fragment of this email that was inadvertently circulated a few minutes ago.

By this email, I am notifying you that the government intends to move ex parte on either Monday, June 29, or Tuesday, June 30, for an order imposing an immediate stay on the above action for all purposes pursuant to 18 U.S.C. section 981(g)(1), which provides that "upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."

As you all know,  the indictment against Mr. Avenatti includes  detailed allegations concerning Avenatti's illegal conduct related to the acquisition of the defendant aircraft in this case.  The forfeiture case and criminal prosecution are therefore obviously "related" within the meaning of section 981(g)(1).  Moreover, I have learned that discovery has been propounded in this case by one claimant upon another that bears directly on those issues.  While there is an ongoing dispute about whether those discovery requests were properly propounded, given the Court's earlier imposition of a stay on its own through May 25, the existence of those requests has provided a sense of urgency with respect to this issue.

While there is a range of judicial authority addressing the circumstances under which there is a likelihood of an adverse effect on an ongoing related criminal prosecution, the courts have been

unanimous in concluding that there is such an effect where a party has propounded discovery that bears directly on factual issues relevant to the prosecution.  In the CD California, Courts have regularly imposed such stays even where no actual discovery has been served or otherwise commenced.

One of you asked me in response to the email below why I felt it was appropriate to bring this request as an ex parte application, as opposed to bringing it as a noticed motion.  The answer is that the pending discovery requests provides an exigency that makes a noticed motion impracticable.

The application will ask that the forfeiture case be stayed for all purposes until the conclusion of the prosecution in United States v. Avenatti, SACR 19-00061 JVS.  The proposed order will provide that any party will be allowed to move for relief from the stay for a specific purpose, which I expect will at some point be used to address the interlocutory sale issue.  Please reply to this email advising whether you intend to oppose the government's application to stay the forfeiture case as described above.  Thanks.

SRW

---

**From:** Welk, Steven (USACAC)
**Sent:** Thursday, June 25, 2020 7:47 AM
**To:** Filippo Marchino <fm@xlawx.com>; lconlan@cappellonoel.com; astolper@lawfss.com; DR@xlawx.com; ssims@lawfss.com; jreitman@lgbfirm.com; jareitman@lgbfirm.com; david@gammill.law; TG@xlawx.com
**Cc:** Keleshyan, Tina (USACAC) [Contractor] <tkeleshyan@usa.doj.gov>
**Subject:** RE: US v. One Honda Aircraft, SACV 19-1988 JVS

Counsel,

By this email, I am notifying you that the government intends to move ex parte on either Monday, June 29, or Tuesday, June 30, for an order imposing an immediate stay on the above action for all purposes pursuant to 18 U.S.C.

---

**From:** Welk, Steven (USACAC) <SWelk@usa.doj.gov>
**Sent:** Friday, June 5, 2020 3:52 PM
**To:** Filippo Marchino <fm@xlawx.com>; lconlan@cappellonoel.com; astolper@lawfss.com; DR@xlawx.com; ssims@lawfss.com; jreitman@lgbfirm.com; jareitman@lgbfirm.com; david@gammill.law; TG@xlawx.com
**Cc:** Keleshyan, Tina (USACAC) [Contractor] <tkeleshyan@usa.doj.gov>
**Subject:** US v. One Honda Aircraft, SACV 19-1988 JVS

Greetings Counsel,

I hope all of you and your families are doing well and staying safe.  As most of you are likely aware, last week Judge Selna continued the trial in Mr. Avenatti's criminal case to December 8, 2020.  My understanding is that, in the course of doing so, the Court expressed some doubt as to the sticking power of that date given the uncertainty arising from the ongoing pandemic.

I believe that it is likely that one or more of the claimants in this case may be a witness in the criminal trial of Mr. Avenatti, and there are potential factual and legal issues that are likely to cross over.  The situation presents a possibility that proceeding with the civil forfeiture case will have a potentially detrimental effect on the criminal prosecution, and that Mr. Avenatti's testimony may be necessary – circumstances that justify a stay of the forfeiture case pursuant to 18 U.S.C. section

981(g)(1).  The purpose of this email is to ask each of you to reply letting me know whether your client is willing to stipulate to a stay of the civil action until the conclusion of the criminal trial.  In the event that everyone agrees that a stay is appropriate, I will circulate a stipulation and proposed order.  To the extent that we have less than unanimous agreement, I will prepare and file an ex parte application requesting such an order.

Please respond at your earliest convenience.  I would like to know which way we will be proceeding by next Wednesday, June 10.  Thank you.

SRW

---

**From:** Welk, Steven (USACAC)
**Sent:** Monday, March 16, 2020 4:33 PM
**To:** Filippo Marchino <fm@xlawx.com>
**Cc:** lconlan@cappellonoel.com; astolper@lawfss.com; ssims@lawfss.com; jreitman@lgbfirm.com; jareitman@lgbfirm.com; david@gammill.law; DR@xlawx.com; TG@xlawx.com; Keleshyan, Tina (USACAC) [Contractor] <tkeleshyan@usa.doj.gov>
**Subject:** RE: Joint Statement - US v. One Honda Aircraft, SACV 19-1988 JVS

Counsel,

First, thank you for your courtesy and cooperation in getting me the information for the Rule 26 report.  We have dropped in your inserts and filled in everyone's proposed dates in the attachments.  I ask that you reply to this email with your authorization for me to indicate your consent to the report and proposed schedule.

I apologize for the very late distribution.  I have been tied up most of the day with administrative duties associated with the ongoing national emergency.  I appreciate your patience.

SRW

1

2

## **CERTIFICATE OF SERVICE**

3

4

5

6

I, Lawrence J. Conlan, hereby certify that on June 12, 2023, I caused the foregoing **DECLARATION OF LAWRENCE J. CONLAN IN SUPPORT OF PETITIONER SPRING CREEK RESEARCH LLC'S BRIEF REGARDING PRIMACY OF INTEREST IN HONDA AIRCRAFT** to be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

7

8

9

10

*/s/ Lawrence J. Conlan*

Lawrence J. Conlan

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF LAWRENCE J. CONLAN IN SUPPORT OF BRIEF REGARDING PRIMACY OF INTEREST | 8:19-CR-0061