Filippo Marchino, Esq. (SBN 256011)
FM@XLAWX.com
Carlos X. Colorado, Esq. (SBN 231031)
CC@XLAWX.com
Thomas E. Gray, Esq. (SBN 299898)
TG@XLAWX.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Petitioner Alexis Gardner

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant | Case No. 8:19-cr-00061-JVS<br><br>**PETITIONER ALEXIS GARDNER'S BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT**<br><br>Date:    June 26, 2023<br>Time:    9:00 a.m.<br>Judge:   Honorable James V. Selna<br>Place:   Courtroom 10C<br>         411 W. Fourth St.<br>         Santa Ana, CA 92701 |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................. 1

III. DISCUSSION ................................................**Error! Bookmark not defined.**

    A. GARDNER HAS EQUITABLE TITLE TO THE AIRCRAFT ............................. 3

    B. GARDNER IS A VICTIM WHOSE MONEY WAS USED BY AVENATTI TO PURCHASE THE AIRPLANE ..................................................... 8

    IV. CONCLUSION ............................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Bd. of Trustees for Laborers Health & Welfare Tr. Fund for N. California v. Hill,
  No. C 07-5849 CW, 2009 WL 774093 ................................................................ 8

Clark v. Millsap,
  (1926) 197 Cal. 765 ............................................................................................. 5

Commodity Futures Trading Comm'n v. Hudgins,
  620 F. Supp. 2d 790 ............................................................................................. 8

Giovanazzi v. State Bar,
  28 Cal. 3d 465 ..................................................................................................... 5

In re Brockway,
  No. 01-O-03470, 2006 WL 1360438 .................................................................. 7

Jeffry v. Pounds,
  67 Cal. App. 3d 6, ................................................................................................ 5

Kelly v. State Bar,
  45 Cal. 3d 649 ..................................................................................................... 4

Pena v. Toney.
  98 Cal. App. 3d 534 ............................................................................................ 4

Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.,
  198 Cal. Rptr. 3d 253 ......................................................................................... 5

Simmons v. State Bar,
  2 Cal. 3d 719 ....................................................................................................... 5

Slovensky v. Friedman,
  142 Cal. App. 4th 1518 ....................................................................................... 5

U.S. ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.,
  89 F.3d 574 ......................................................................................................... 5

United States v. $4,224,958.57,
  392 F.3d 1002 ..................................................................................................... 3

United States v. Nava,
  404 F.3d 1119 ..................................................................................................... 3

**Statutes**

Rule 4-100(A) ............................................................................................................ 6

Rule 4-100(B)(3) ....................................................................................................... 7

Treatises

Tuft, Peck & Mohr, California Practice Guide: Professional Responsibility ¶ 9:162.2 .................................................................................................................. 7

## I. INTRODUCTION

On April 27, 2023, this Court directed Petitioners to file a brief setting forth their position as to primacy of interest in the Disputed Property described as the Honda Aircraft a Honda Aircraft Co. LLC HA-420 jet, serial number 42000029, and with tail number N227WP, together with its tools and appurtenances. (hereinafter the "Aircraft"). Petitioner Alexis Gardner ("Gardner"), previously identified in the Indictment [Dkt. No. 16] and Application for Preliminary Order of Forfeiture [Dkt. No. 974.] as "Client 2", seeks this court's order awarding Gardner an interest in the jet (or proceeds from its sale) amounting to $2,500,000 plus interest.

## II. STATEMENT OF FACTS

The relevant facts are already well-known to the Court.

On or about April 14, 2016 William Parrish ("Parrish") and Michael Avenatti ("Avenatti") decided to jointly purchase a private jet and created Passport 420, LLC ("Passport 420"), a Delaware Limited Liability Company, as entity to own the Aircraft. (See Exhibit A to the Declaration of William Parrish – Dkt 1103-1, Exhibit A.) Avenatti was selected as the manager of Passport 420. (<u>Id.</u> at page 67). At all relevant times herein, Avenatti was an attorney and was the managing partner of the law firm Eagan Avenatti, LLP ("EA"). (See Declaration Of Jason M. Frank In Support Of Claimant Jason Frank Law,(Dkt 1104-1) ¶3.)

On or about December 5, 2016, Gardner entered into an attorney-client relationship with the law firm of EA (Declaration of Alexis Gardner, (hereafter "Gardner Declaration") ¶ 2, Exhibit A). On or about January 7, 2017, Gardner, one of Avenatti and EA's clients, entered into a confidential settlement agreement with another individual (the "Individual"), designated as Individual 1 in the Indictment. (Gardner Declaration ¶ 3, Exhibit B)

Neither Avenatti nor EA gave Gardner a copy of the actual settlement agreement. (Gardner Declaration ¶ 4.) Instead, they falsely represented to Gardner

1

PETITIONER ALEXIS GARDNER'S BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT

that the Individual would make two separate transactions in fulfillment of the settlement agreement. (Id.) First, the Individual would make approximately 96 equal monthly payments to Gardner over the course of the next eight years. (Id.) Second, at some point within the first year, the Individual would make a lump-sum payment, the entirety of which would be used to pay EA's attorney fees and costs. (Id.)

However, under the terms of the actual settlement agreement, this Individual was required to make an initial payment of $2,750,000 (two million seven hundred fifty thousand dollars) on or about January 28, 2017 to Gardner with a subsequent payment of $250,000 (two hundred fifty thousand dollars) at a later date, set for the fall of 2020. (Gardner Declaration ¶ 5, Exhibit B)

On or about January 25, 2017, unbeknownst to Gardner, the Individual made the first single initial $2,750,000 settlement payment to an EA Attorney Client Trust Account, ending in 8671, to be held in trust for Gardner. (Gardner Declaration ¶ 5, Declaration of Filippo Marchino ("Marchino Decl.") Exhibit 1 and 2). EA and Avenatti concealed and failed to disclose to Gardner that EA had received this initial $2,750,000 settlement payment. (Id.) Additionally, neither Avenatti nor EA ever transferred any of Gardner's initial settlement payment to her, nor did they obtain her permission to divert the funds anywhere else. (Id, Marchino Decl. Ex. 3)

On or about January 26, 2017, Avenatti, orchestrated $2,500,000 of Gardner's funds to be transferred from EA's trust account to Honda Aircraft Company, LLC for the benefit of Passport 420. (Gardner Declaration ¶ 6, Marchino Decl. Ex. 3) At the time of this transfer, Avenatti was running EA as its manager, and was running Passport 420 as its manager, and sent the funds so that Passport 420 could purchase the Aircraft.

Avenatti, as manager of EA, also moved the remaining $250,000 of the settlement payment out of the trust account and into another EA account, before it was moved to an Avenatti and Associates, APC, ("AA") account. (See Marchino Decl. Ex. 3)

In furtherance of his embezzlement scheme, between March 2017 and June 2018 Avenatti caused approximately 11 payments to be deposited into Gardner's account, which he represented to Gardner as being the monthly settlement payments from the Individual. (Gardner Declaration ¶ 7.)

As shown by the government in the criminal trial, these payments were not made using money from the settlement payment intended for Gardner. For example, some of the payments were made using money from Global Baristas US LLC and/or its owner Global Baristas, LLC, including credit card receipts from Tully's stores. From June 2018 until March 2019, Avenatti stopped making these payments and instead falsely represented to Gardner that Avenatti was working to obtain the missing monthly settlement payments. (Gardner Declaration ¶ 8.) To accomplish this, Avenatti spoke to Gardner by phone, as he had on a number of occasions previously, in order to convince her that she was in fact supposed to receive monthly periodic payments. (Gardner Declaration ¶ 8.)

Gardner never received any money from the $2,750,000 settlement payment that was supposed to be made to her because it was instead taken by Avenatti, with $2,500,000 spent by Passport 420 in the course of purchasing its jet and the other $250,000 taken by Avenatti, AA and/or EA and used for presently unknown purposes, but possibly for the further benefit of Passport 420 and the Aircraft.

### III. ARGUMENT

#### A. GARDNER HAS EQUITABLE TITLE TO THE AIRCRAFT

"Federal forfeiture statutes govern the disposition of property, but state law determines what rights, title or interests the various claimants possess in that property." United States v. Nava, 404 F.3d 1119, 1128–29 (9th Cir. 2005). Accordingly, forfeiture proceedings recognize constructive trust interests created by state law. United States v. $4,224,958.57, 392 F.3d 1002, 1004 (9th Cir. 2004).

Because Gardner's settlement money was embezzled by EA, through Avenatti, a constructive trust has been created with regards to the Aircraft (and any proceeds from the sale of it). Therefore, Gardner has equitable title to the Aircraft and any proceeds from the sale of it, in the amount of $2,500,000 plus applicable interest.

Specifically, Gardner has equitable title to the jet for the reasons articulated in Pena v. Toney. 98 Cal. App. 3d 534 (Ct. App. 1979).  There, a juvenile stole money from a gas station, only to have some of the money stolen from him by another thief, who used it to purchase an automobile. Id. at 538.  When the second thief was arrested he executed a bill of sale for the automobile, giving it to his attorney in exchange for representing him in the criminal proceeding. Id.  The trial court awarded possession of the automobile to gas station owner, and the court of appeal affirmed, recognizing that "title equitably should vest in [the owner] under a constructive trust theory." Id. at 542.  Thus, even if the funds and jet passed through the hands of several parties, the fact remains that Gardner has a constructive trust interest in the jet.

### B. GARDNER'S INTEREST IN THE AIRCRAFT IS NOT REDUCED BY ANY EAGAN AVENATTI CONTINGENT FEE

Because of the severe ethical misconduct and breach of fiduciary duty by Avenatti and EA, Gardner is entitled to one hundred percent of the settlement funds without any contingent fee deduction.  In addition, Gardner asserts that she is entitled to prejudgment interest at the maximum rate permissible by law.

The law on this subject matter is very clear: "Misappropriation of client trust funds has long been viewed as a particularly serious ethical violation.  It breaches the high duty of loyalty owed to the client, violates basic notions of honesty, and endangers public confidence in the profession." Kelly v. State Bar, 45 Cal. 3d 649, 656 (1988).  Even "[g]ross carelessness and negligence constitute violations of the

oath of an attorney to faithfully discharge his duties to the best of his knowledge and ability and involve moral turpitude as they breach the fiduciary relationship owed to clients." Giovanazzi v. State Bar, 28 Cal. 3d 465, 475 (1980) (citing Simmons v. State Bar, 2 Cal. 3d 719, 729 (1970))

It has long been the rule that "Fraud or unfairness on the part of the attorney will prevent the attorney from recovering for services rendered; as will acts in violation or excess of authority, and acts of impropriety, inconsistent with the character of the profession, and incompatible with the faithful discharge of its duties." Clark v. Millsap, 197 Cal. 765, 785 (1926). "[A]cts of impropriety inconsistent with the character of the legal profession and incompatible with the faithful discharge of professional duties will prevent an attorney from recovering for his services." Jeffry v. Pounds, 67 Cal. App. 3d 6, 9 (Ct. App. 1977). "Disgorgement of fees may be an appropriate remedy for an attorney's breach of fiduciary duty." Slovensky v. Friedman, 142 Cal. App. 4th 1518, 1535, (2006), (internal citation omitted); see also U.S. ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc., 89 F.3d 574, 579 (9th Cir. 1996) ("California courts have often held that when the ethical violation in question is a conflict of interest between the attorney and the client (or between the attorney and a former client), the appropriate fee for the attorney is zero.") "When a serious ethical breach is at issue, . . ., an attorney may not recover fees for services rendered. It makes no difference whether the fees have already been collected from the client or if the fees have yet to be paid." Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., 198 Cal. Rptr. 3d 253, 274 n. 10 (Ct. App. 2016).

This Court has already recognized this law in the course of performing loss calculations during Avenatti's sentencing:

> Avenatti claims that he is entitled to offset the fees and costs specified in his client agreements. (Motion for Evidentiary Hearing, Docket No. 1024, pp. 4-13 & Exhibits.) He ignores the fact that a lawyer by his

conduct may forfeit his fees: "Fraud or unfairness on the part of the attorney <u>will prevent him from recovering for services rendered</u>; as will acts in violation or excess of authority, and acts of impropriety inconsistent with the character of the profession, and incompatible with the faithful discharge of its duties." <u>Clark v. Millsap</u>, 197 Cal. 765, 785 (1926) (internal quotation marks deleted). <u>Clark</u> fairly describes Avenatti's conduct in this case. The Ninth Circuit has recognized the propriety of forfeiture such as the one ordered here. See <u>Rodriguez v. Disner,</u> 688 F.3d 645, 655 (9th Cir. 2012). The Court has considered the factors in the <u>Restatement (Third) of Law Governing Lawyers</u> § 37, and finds that they support a forfeiture here

[Dkt. No. 1053 at 3.]

Separate and apart from the severe ethical misconduct and breach of fiduciary duty by Avenatti and EA, *all* of the settlement money belonged to Gardner at the time it was removed from the trust account, including the $2.5 million dollar payment to Honda Aircraft LLC for the benefit of Passport 420 LLC. That is because Avenatti and EA could <u>not</u> self help and immediately transfer *any* settlement funds out of Gardner's client trust account regardless of whether EA believed it was entitled to fees from the settlement because the fees had not "become fixed."

As Ms. Gardner's attorneys, EA was required to inform Ms. Gardner of the receipt of her funds and safeguard her money. Former Rule 4-100(A) of the California Rules of Professional Conduct, the rules in force at the time of EA's misconduct, explicitly states that:

> [A]ll funds received or held for the benefit of clients by a member or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labelled "Trust Account," "Client's Funds Account" or words of similar import. . . . No funds belonging to the member or the law firm shall be deposited therein or otherwise commingled therewith except as follows: . . . .
> (2) In the case of funds belonging in part to a client and in part presently or potentially to the member or the law firm, the portion belonging to the member or law firm must be withdrawn at the earliest reasonable time

after the member's interest in that portion becomes fixed. However, when the right of the member or law firm to receive a portion of trust funds is disputed by the client, the disputed portion shall not be withdrawn until the dispute is finally resolved.

Additionally, a law firm must "Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the member or law firm and render appropriate accounts to the client regarding them; preserve such records for a period of no less than five years after final appropriate distribution of such funds or properties; and comply with any order for an audit of such records issued pursuant to the Rules of Procedure of the State Bar." Rules of Prof. Conduct, Former Rule 4-100(B)(3). "Furthermore, the obligation to 'render appropriate accounts to the client' found in rule 4-100(B)(3) does not require as a predicate that the client demand such an accounting." In re Brockway, No. 01-O-03470, 2006 WL 1360438, at *6 (Cal. Bar Ct. May 15, 2006). Therefore, once EA received Ms. Gardner's settlement funds, it was obligated to provide Ms. Gardner with notice of the funds and an accounting of the funds regardless of whether she demanded one.

Moreover, EA could not immediately transfer *any* settlement funds out of Ms. Gardner's client trust account regardless of whether EA believed it was entitled to fees from the settlement because the fees had not "become fixed."

In California, there are three basic methods that will result in fees becoming fixed:
- the *client expressly approves the attorney's interest* in a certain amount of the trust funds (e.g., by expressly approving a billing or an accounting of the funds setting forth the amount of fees earned by the attorney); *or*
- the *attorney and client agree* to the amount of the attorney's interest following a dispute; *or*
- the amount of the attorney's interest has been set forth in a *civil judgment, court order or binding arbitration award*.

Tuft, Peck & Mohr, California Practice Guide: Professional Responsibility ¶ 9:162.2

(The Rutter Group 2018 (original italics.) Here, the first method would have been applicable, and Avenatti and EA were therefore required to obtain Gardner's approval before removing <u>any</u> fees and costs that they claimed. However, Gardner did not approve of Avenatti or EA's removal of any fees (and obviously could not have done so because Avenatti and EA failed to inform her of the receipt of the funds and provide her with an accounting, and instead removed money from her trust account immediately after receiving the funds).

### C. GARDNER'S INTEREST IS NOT REDUCED BY ANY DECREASE IN VALUE THE AIRCRAFT HAS SUFFERED

The value of the aircraft has almost certainly decreased since it was purchased. Nevertheless, the dollar value of Gardner's interest has not decreased. When property purchased with stolen money diminishes in value, the party whose funds were taken is entitled to the entire amount of her portion of the funds used to buy the property. <u>See</u> <u>Bd. of Trustees for Laborers Health & Welfare Tr. Fund for N. California v. Hill</u>, No. C 07-5849 CW, 2009 WL 774093, at *2 (N.D. Cal. Mar. 23, 2009) ("the Restatement of Restitution indicates that, if a commingled fund—or property that is purchased with a commingled fund—diminishes in value, the party whose funds were wrongfully taken is entitled to an equitable lien in the entire amount of his or her original contribution") (citing Restatement (First) of Restitution § 210, comments c and d.); <u>Commodity Futures Trading Comm'n v. Hudgins</u>, 620 F. Supp. 2d 790, 795 (E.D. Tex. 2009) ("courts have applied constructive trust principles such that decreases in value of the home are first charged against the homeowner rather than the lien or constructive trust holder.")

### D. GARDNER IS A VICTIM WHOSE MONEY WAS USED BY AVENATTI TO PURCHASE THE AIRPLANE

Gardner's interest in the Aircraft should be based and calculated on the funds that were usurped from her and used for the benefit of Passport 420, and <u>not</u> on a

8
PETITIONER ALEXIS GARDNER'S BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT

percentage based on the price paid by Passport 420 for the Aircraft. Additionally, interest on the amount of money that was taken from her to purchase the plane should be accounted for as well.

While Parrish, Spring Creek Research, LLC, Avenatti, AA, EA and any and all other parties with a claim or claimed an interest in Passport 420, or the Airplane, knowingly and voluntarily assumed a risk in the purchase of the Airplane, Gardner did not. Gardner's funds were involuntarily taken from her. Hence, Gardner never assumed any risk of loss, or risk of diminution of value of the Aircraft, when her funds were taken, and accordingly, should not lose any of the funds by virtue of the natural diminution of value of the asset that would be otherwise attributed to her if her interest in the Airplane was calculated based on the purchase price of the same.

On information and belief, based on the price that similar used jets, in the same condition[1], sell for and the amount of Gardner's money that was used by Passport 420 to purchase the Aircraft plus interest on that money (approximately $4,104,166.67 calculated by using the principal of $2,500,000 plus simple interest at 10% per year for 77 months (since January 2017 to today) which totals $1,604,166.67 in interest), the current value of the Aircraft is less than the amount of money Gardner is owed and she should be awarded a 100% ownership interest in the Aircraft or proceeds from its sale sufficient to satisfy her claim.

The periodic payments Gardner received from Avenatti should not be treated as an offset to the full amount owed because the money did not come from her settlement funds and, even if it did, it did not come back from Passport 420, the company that benefitted from the majority of her funds.

Finally, the provenance of the periodic payments Gardner received is

---

[1] On information and belief, the Aircraft has been maintained by the Government but has not been flown since it was seized in 2019. Hence, the value would be significantly less than a comparable model year Aircraft that was routinely flown, used and maintained.

unknown and should not be considered in calculating her ownership interest in the Aircraft.

### IV. CONCLUSION

For foregoing reasons, Gardner is entitled to an interest in the jet (or proceeds from its sale) amounting to $2,500,000 plus interest.

DATED: June 12, 2023               THE X-LAW GROUP, P.C.

                                   By:_____
                                   FILIPPO MARCHINO, ESQ.,
                                   Attorneys for Petitioner Alexis Gardner

**PROOF OF SERVICE**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 625 Fair Oaks Avenue, Suite 390, South Pasadena, CA 91030.

On June 12, 2023, I served the following document(s) described as **PETITIONER ALEXIS GARDNER'S BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT** on the interested parties in this action as follows:

BRETT A. SAGEL
Assistant United States Attorney
Major Frauds Section
411 West Fourth Street Suite 8000
Santa Ana, CA 92701
Telephone: 714-338-3598
Faximile: 714-338-3708
Email: brett.sagel@usdoj.gov

RANEE KATZENSTEIN
Assistant United States Attorney
Major Frauds Section
312 North Spring Street 11th Floor
Los Angeles, CA 9001
Telephone: 213-894-2432
Faximile: 213-894-0141
Email: ranee.katzenstein@usdoj.gov

Attorneys for Plaintiff
United States of America

DANIEL G. BOYLE
Assistant United States Attorney
Asset Forfeiture Section
312 North Spring Street, 14th Floor
Los Angeles, CA 90012
Telephone: 213-894-2426|
Facsimile: 213-894-0142
E-Mail: daniel.boyle2@usdoj.gov

Attorneys for Plaintiff
United States of America

**[ X ] BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons identified in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with my firm's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 12, 2023, at South Pasadena, California.

_Suzy Garcia_
Declarant – Suzy Garcia