Filippo Marchino, Esq. (SBN 256011)
FM@XLAWX.com
Carlos X. Colorado, Esq. (SBN 231031)
CC@XLAWX.com
Thomas E. Gray, Esq. (SBN 299898)
TG@XLAWX.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Petitioner Alexis Gardner

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant | Case No. 8:19-cr-00061-JVS<br><br>**DECLARATION OF ALEXIS GARDNER IN SUPPORT OF HER BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT**<br><br>Date:   June 26, 2023<br>Time:   9:00 a.m.<br>Judge:  Honorable James V. Selna<br>Place:  Courtroom 10C<br>        411 W. Fourth St.<br>        Santa Ana, CA 92701 |

## DECLARATION OF ALEXIS GARDNER

I, ALEXIS GARDNER, declare as follows:

1. I am submitting this declaration in support of the Brief Regarding Disposition of One Honda Aircraft. I have personal knowledge of the information stated herein and if called to testify to the same would and could do so under oath.

2. In December of 2016 I entered into a contract with Eagan Avenatti LLP ("EA") to resolve a personal legal matter. Attached hereto as **Exhibit A** is a true and correct copy of my retainer that was provided to me by the AUSA's office.

3. On January 7, 2017, I attended a mediation with Michael Avenatti ("Avenatti"), as principal of EA. During the mediation, Avenatti negotiated a highly confidential settlement on my behalf with a person I will refer to as the "Individual." EA and Avenatti were aware of the fact that the identity of Individual and the details of the matter were to remain highly confidential.

4. At the time, I was told of the settlement agreement, but was given incorrect financial terms. Neither Avenatti nor EA gave me a copy of the actual settlement agreement. Instead, they falsely represented to me that the Individual would make two separate transactions in fulfillment of the settlement agreement. First, the Individual would make approximately 96 equal monthly payments to me over the course of the next eight years. Second, at some point within the first year, the Individual would make a lump-sum payment, the entirety of which would be used to pay EA's attorney fees and costs.

5. However, I later found out that, under the terms of the actual settlement agreement, this Individual was required to make an initial payment of $2,750,000 on or about January 28, 2017 to me with a subsequent payment of $250,000 at a later date, set for the fall of 2020. On or about January 25, 2017, unbeknownst to me, the Individual made the first single initial $2,750,000 settlement payment to EA Trust Account to be held in trust for me. EA and Avenatti concealed and failed to disclose to me that EA had received this initial $2,750,000 settlement payment. Neither

Avenatti nor EA ever transferred any of my initial settlement payment to me, nor did they obtain my permission to divert the funds anywhere else. Likewise, I was never provided with an accounting of my funds.

6. Attached hereto as **Exhibit B** is a redacted and correct copy of the sagreement bearing my signature, which I received from the AUSA's office.

7. I also subsequently learned that on or about January 26, 2017, Avenatti orchestrated $2,500,000 of my funds to be transferred from EA's trust account to Honda Aircraft Company, LLC for the benefit of Passport 420.

8. In furtherance of his embezzlement scheme, between March 2017 and June 2018 Avenatti caused approximately 11 payments to be deposited into my account, which Avenatti represented to me as being the monthly settlement payments from the Individual.

9. From June 2018 until March 2019, Avenatti stopped making these payments and instead falsely represented to me that he was working to obtain the missing monthly settlement payments. To accomplish this, Avenatti spoke to me by phone, as he had on a number of occasions previously, in order to convince me that I was in fact supposed to receive monthly periodic payments. Finally, in March of 2019, I discovered the truth.

10. All of the settlement money belonged to me at the time it was received into the trust account of EA. I did not approve of Avenatti or EA's removal of any fees. I could not have done so because I was not informed of the receipt of the funds or provided an accounting.

I declare, under penalty of perjury and under the laws of the United States of America, that the foregoing is true and correct. I have executed this declaration on June 12, 2023.

*Alexis Gardner*
Alexis Gardner

2
DECLARATION OF ALEXIS GARDNER IN SUPPORT OF HER BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT

# EXHIBIT A

**EAGAN AVENATTI, LLP**
**520 Newport Center Drive, Suite 1400**
**Newport Beach, CA 92660**
**(949) 706-7000**

December 5, 2016

**ATTORNEY-CLIENT FEE CONTRACT (CONTINGENCY)**

This ATTORNEY-CLIENT FEE CONTRACT (this "Agreement") is the written fee contract that California law requires lawyers to have with their clients. It is between Eagan Avenatti, LLP (the "Attorney") and Alexis Gardner (the "Client").

**1.   CONDITIONS.** This Agreement will not take effect, and Attorney will have no obligation to provide legal services, until Client returns a signed copy of this Agreement.

**2.   SCOPE OF SERVICES.** Client is hiring Attorney to represent Client in connection with her affirmative claims arising out of her personal relationship with Hassan Whiteside. Attorney will provide those legal services reasonably required to represent Client and take reasonable steps to inform Client of progress and to respond to Client's inquiries.

Attorney will represent Client in any court action until a settlement or judgment, by motion, arbitration or trial, is reached, and in connection with any appropriate post-trial motions. In addition, Attorney may at any time and at its discretion retain outside counsel, whose legal fees will be deducted from the fees received by Attorney. Client and Attorney agree that any legal services provided on behalf of Client in connection with any appeal relating to Client's claims shall be covered by this Agreement.

Client acknowledges that certain of Client's claims referenced above may be barred by the applicable statute of limitations.

**3.   CLIENT'S DUTIES.** Client agrees to be truthful with Attorney, to cooperate, to keep Attorney informed of developments, to abide by this Agreement, and to pay bills for costs on time.

**4.   LEGAL FEES, COSTS AND BILLING PRACTICES.** Attorney will receive a Contingent Fee of thirty-three percent (33%) if a *Recovery* (defined below) is obtained between the date of this agreement and prior to the filing of a lawsuit or arbitration proceeding, and a Contingent Fee of forty percent (40%) of any *Recovery* obtained after the filing of a lawsuit or arbitration proceeding.

*"Recovery"* will include any cash; the fair market value of any property stock, note, partnership interest, carried interest, stock option, business accommodation, loan, and funding; and other consideration received in connection with the settlement, judgment, or other resolution of any of Client's claims as referenced above, including but not limited to any jury award, arbitration award, award of attorneys' fees, discovery sanctions, other monetary sanctions, and/or similar awards which an opposing party is required to pay to Client.

If payment of all or any part of the amount to be received will be deferred (such as in the case of an annuity, a structured settlement, or periodic payments), the *"Recovery"* for purposes of calculating the Attorney's fees, will be the initial lump-sum payment plus the present value, as of the time of the binding resolution, of the payments to be received thereafter. The attorney's fees will be paid out of the initial lump-sum payment. If the payment is insufficient to pay the attorney's fees in full, the balance will be paid from subsequent payments of the *Recovery* before any distribution to Client.

-1-

USAO_00567509
GB_T_00198206

Exhibit 132
Page 1 of 3

In the event of discharge or withdrawal of Attorney as provided in Paragraph 10, Client agrees that Attorney shall be entitled to be paid by Client, upon binding resolution of Clients' claims, whether by settlement, judgment or arbitration award in favor of Client, a reasonable fee for the legal services provided by Attorney, provided, however, that (a) in no event shall Attorney receive less than twenty percent (20%) of any Recovery even if discharged and (b) in the event Attorney is discharged after either resolution of any of Clients' claims as referenced above or an agreement to resolve any such Claims, Attorney shall be entitled to the full Contingent Fee described above in this Paragraph.

**5.    NEGOTIABILITY OF FEES.** The rates set forth above are not set by law, but were negotiated between Attorney and Client.

**6.    COSTS, DISBURSEMENTS AND EXPENSES.** Client will reimburse attorney for all out-of-pocket litigation and trial costs and expenses from the proceeds received by Client, if any, at the conclusion of litigation. "Costs and expenses" include filing and court fees, investigation expenses, process fees, investigation fees, graphic art and filming fees, PowerPoint fees, computer animation fees, expert fees, deposition costs, photocopying charges, mock trials or focus groups, jury fees, computerized research, jury trial consultant fees, telephone toll charges, travel costs, mail messenger and other delivery charges, postage and any other necessary expenses in this matter. Client authorizes Attorney to incur all reasonable costs and to hire any investigators, consultants or expert witnesses reasonably necessary in Attorney's judgment.

**7.    INSURANCE COVERAGE.** Attorney maintains errors and omissions insurance coverage applicable to the services to be rendered to Client.

**8.    ARBITRATION. Any dispute arising under this Contract or in connection with legal services provided to Client, including but not limited to any claim by Client against Attorney or any employees or attorneys associated with Attorney for malpractice or other tort claim, shall be resolved by binding arbitration before JAMS located in Los Angeles, California. Such arbitration shall be conducted in accordance with the arbitration rules and procedures of JAMS then in effect. Client acknowledges that Client has been fully advised of all of the possible consequences of arbitration including but not limited to:**

   a. **If a malpractice action arises from this Agreement, neither Client nor Attorney will have the right to a jury trial.**
   b. **Both parties retain the right to retain counsel to prepare their respective claims and/or defenses for the arbitration hearing.**
   c. **Client can choose or hire an attorney who may not request or whose retainer agreement does not contain an arbitration provision.**

**9.    RELATED UNKNOWN MATTERS.** Client represents that Client does not know of any related legal matters that would require legal services to be provided under this Agreement. If such a matter arises later, Client agrees that this Agreement does not apply to any such related legal matters, and a separate Agreement for provision of services and payment for those services will be required if Client desires Attorney to perform that additional legal work.

**10.   DISCHARGE AND WITHDRAWAL.** Client may discharge Attorney at any time, upon written notice to Attorney, and Attorney will immediately after receiving such notice cease to render additional services in a manner that avoids foreseeable prejudice to Client. Such a discharge does not, however, relieve Client of the obligation to pay any costs incurred prior to such termination, and Attorney has the right to recover from Client the reasonable value of Attorney's legal services rendered from the effective date of the Agreement (Paragraph 14) to the date of discharge, provided, however, that in the event Attorney is discharged after either resolution of any of Clients' claims as referenced above or an agreement to resolve any such Claims, Attorney shall be entitled to the full Contingent Fee described above in Paragraph 4.

Attorney may withdraw from representation of Client (a) with Client's consent, or (b) upon court approval, or (c) if no court action has been filed, upon reasonable notice to Client.

**11.  LIEN.** Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Agreement. Attorney's lien will be for any sums owing to Attorney for any unpaid costs or attorneys fees under this Agreement. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise. The lien created herein is considered an adverse interest within the meaning of Rule of Professional Conduct 3-300 and requires Client's informed written consent. In accordance with that Rule, Attorney advises Client that it may seek the advice of an independent lawyer of Client's choice, and that Client need not sign this Agreement until it has had a reasonable opportunity to seek that advice. By signing this Agreement, Client consents to the Attorney's Lien described herein.

**12.  CONCLUSION OF SERVICES.** When Attorney's services conclude, other than by discharge or withdrawal, all unpaid charges will immediately become due and payable. After Attorney's services conclude, Attorney will, upon Client's request, deliver Client's file to Client, along with any Client's funds or property in Attorney's possession.

**13.  DISCLAIMER OF GUARANTEE. Nothing In this Agreement and nothing in Attorney's statements to Client before or after the signing of this Agreement will be construed as a promise or guarantee about the outcome of Client's matter. Attorney makes no such promises or guarantees. There can be no assurance that Client will recover any sum or sums in this matter. Attorney comments about the outcome of Client's matter are expressions of opinion only.**

**14.  EFFECTIVE DATE.** This Agreement will take effect when Client has performed the conditions stated in Paragraph 1. The date at the beginning of this Agreement is for reference only.

"Attorney"

EAGAN AVENATTI, LLP

_____
Michael J. Avenatti

I have read and understood the foregoing terms and agree to them. By signing this Agreement, I further acknowledge receipt of a fully executed duplicate of this Agreement.

"Client"

Alexis Gardner

_____       Date: 12-5-16

-3-

USAO_00567511
GB_T_00198206

Exhibit 132
Page 3 of 3

# EXHIBIT B

# SETTLEMENT AGREEMENT

This Agreement is dated as of the 7th day of January, 2017, (the "Effective Date") by and between Alexis Gardner ("Gardner"), on the one hand, and ███████ ("███████"), on the other hand. Gardner and ███████ are each a "Party" and are collectively the "Parties" to this Agreement.

## RECITALS

WHEREAS, certain Disputes have arisen between the Parties; and

WHEREAS, the Parties desire to fully and finally settle the Disputes as well as all other Claims, acknowledging that settlement is in the best interests of the Parties.

## DEFINITIONS

"Agreement" means this Settlement Agreement.

"Claims" means any and all claims, counterclaims, cross-claims, defenses, affirmative defenses, causes of action of any type (whether common law, statutory, regulatory or administrative, and whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured), demands, disputes, damages, costs, losses, detriments, interest, expenses, penalties, attorneys' fees, actions, debts, controversies, suits, and choses in action, whether known or unknown, relating in any way to the conduct, prior relationship and/or interactions between Gardner and ███████.

"Disputes" means issues that have arisen between Gardner and ███████ relating to the alleged conduct and actions of Gardner, ███████, and/or anyone or any entity acting on their respective behalf.

"Unknown Claims" means Claims that any Party does not know or suspect to exist at the time of the release which might have affected the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1. **Incorporation of Recitals; Definitions.** The recitals stated above are incorporated into this Agreement and made a part of this Agreement as if fully set forth herein. Capitalized terms shall have the meaning given unless undefined.

CONFIDENTIAL
USAO_00265201
GB_C_00026915

Exhibit 139
Page 1 of 5

2. **Payment.** As full and final settlement of any and all Claims and Disputes, ▬▬▬ will pay Gardner the total sum of $3,000,000.00 (Three Million Dollars) (the "Payment Amount") as follows: $2,750,000.00 using best efforts to pay on or before January 21, 2017, but in no event any later than January 28, 2017, and $250,000.00 on November 1, 2020, assuming Gardner has not been previously determined by the Arbitrator to have violated the terms of this Agreement. All payments shall be made by wire transfer according to the following instructions:

Bank: California Bank & Trust
Bank Address: 1900 Main Street, Suite 100
Routing No. 122232109
Bank Acct No. 5792778671
Tax ID No.: 32-0210824
Name on Account: Eagan Avenatti, LLP Client Trust

No taxes or deductions shall be withheld from the Payment Amount, and Gardner acknowledges and agrees that she shall be solely responsible for any and all applicable taxes (if any), liens (if any), and other amounts due (if any) to any person, entity or authority in connection with the Payment Amount.

3. **Mutual Release.** In consideration for the payment set forth in paragraph 2, Gardner and ▬▬▬ release and forever discharge any and all Claims, including Unknown Claims, which they may now have, may hereafter have, or claim to have against each other, their Affiliated Persons (as defined below) ▬▬▬

including without limitation with respect to the Disputes and/or the Claims. Provided, however, that nothing herein shall be construed to release any Party from the obligations created in this Agreement, including without limitation the confidentiality provisions of paragraph 10 and the representations and warranties set forth in paragraph 12, which claims, obligations and provisions shall survive execution of this Settlement Agreement. It is the intent of the Parties to give the broadest release and discharge possible under the law. This release is binding upon and for the benefit of each of the Parties, as well as their respective current and former family members, predecessors, successors, assigns, related entities, affiliates, business managers, partners, members, directors, officers, employees, principals, trustees, experts, attorneys, agents, respective current or former girlfriends and boyfriends, heirs, representatives, and insurers ("Affiliated Persons").

As to Unknown Claims, the Parties expressly waive any and all provisions, rights and benefits conferred by any law of the United States or of any state or territory of the Unites States, or principle of common law, or any jurisdiction thoughout the world, which is similar, comparable or equivalent to § 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN**

CONFIDENTIAL
USAO_00265202
GB_C_00026915

Exhibit 139
Page 2 of 5

BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties expressly acknowledge and understand that each of them may have injuries or damages that may have yet to manifest themselves relating to the Claims and/or the Disputes and agree that they are nonetheless released and extinguished by this Agreement.

4. **Non-Admission.** The settlement of the Claims and Disputes between the Parties is voluntary, is undertaken to avoid the expense and burden of litigation, and does not constitute an admission of wrongdoing or any other basis for liability by any of the Parties, or an admission of the existence of any facts upon which liability could be based. Neither the existence nor the terms of this Settlement Agreement, nor any negotiations, act or omission relating to it, may be used in connection with any attempt to establish liability or damages against any Party hereto relating to the Claims associated with the Dispute. Each Party expressly denies all Claims alleged by the other Party.

5. **Advice of Counsel.** Each Party to this Agreement has reviewed the Agreement independently, has had the opportunity to consult counsel, is fully informed of the terms and effect of this Agreement, and has not relied in any way on any inducement, representation, or advice of any other Party in deciding to enter into this Agreement.

6. **Fees and Costs.** Except for the payment identified in paragraph 2 above, each of the Parties shall pay its own respective costs and attorneys' fees incurred with respect to the Disputes, the Claims and this Agreement.

7. **Governing Law and Exclusive Jurisdiction.** This Agreement and the rights and obligations hereunder shall be governed by and construed in accordance with the laws of the State of California, without regard to the principles of the conflicts of laws thereof. In addition, the Parties expressly agree that any and all disputes under this Agreement shall be resolved through binding arbitration before the Honorable Louis Meisinger in Los Angeles, California provided he is available, otherwise the Parties shall mutually select another arbitrator from ADR Services in Los Angeles. Each party shall be responsible for its own attorney's fees and expenses. The fees and expenses of the arbitrator shall be borne equally by the Parties. The decision of the arbitrator shall be final and binding and may not be appealed. A party may apply to any court having jurisdiction to obtain a judgment enforcing the decision of the arbitrator. The Parties agree that the limitation period for commencing the arbitration process through delivery of a written demand for arbitration shall be one (1) year after the cause of action arises. This Agreement shall not be construed against any of the Parties but shall be given a reasonable interpretation.

8. **Entire Agreement.** This Agreement constitutes the entire understanding between the Parties with respect to settlement of the Disputes and any and all Claims and supersedes any prior written and/or verbal agreements between the Parties. This Agreement may not be amended except by a writing signed by all of the Parties.

CONFIDENTIAL
USAO_00265203
GB_C_00026915

Exhibit 139
Page 3 of 5

9. **Severability.** Any term or provision of this Agreement which is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction. If any provision of this Agreement is so broad as to be unenforceable, that provision shall be interpreted to be only so broad as is enforceable

10. **Confidentiality and Non Disparagement.** Gardner and ▇ each agree that the terms of this Agreement are and shall remain confidential. From the date of this Agreement, the Parties shall keep the fact of and the terms of this Agreement; the Disputes; the Claims; the details of their relationship; all photographs; all text messages; and all correspondence, strictly confidential between them, and shall not disclose any of the foregoing to any third party, including but not limited to any print, motion picture, television, social media, or other media outlet or entity, unless compelled to do so pursuant to an order of a court of competent jurisdiction after providing reasonable notice to the other Party. They further agree that they shall each refrain from disparaging each other regarding their acts or omissions in relation to one another, the Disputes, the subject matters of the claims released herein, their relationship, and all of their other acts or omissions, whether or not in relation to one another, occurring on or before the Effective Date of this Agreement. None of the Parties may initiate discussion concerning the conduct of the other, except as may be required by law, rule or regulation. If any Party is asked about the other's conduct, such Party shall respond solely as follows: "I wish [him or her] all the best" or "No Comment". The Parties acknowledge that a failure to comply with the confidentiality and non-disparagement provisions of this Paragraph of the Agreement will result in immediate and irreparable harm to the other Party(ies) for which there is no adequate legal remedy, and for which damages may be difficult to ascertain. As such, Gardner and ▇ further acknowledge and agree that any violation of the provisions of this paragraph by the other shall result in express liquidated damages in the amount of $100,000.00 per violation without any proof of damages required before the Arbitrator described above in Paragraph 7. In addition, in the event of a failure to comply with (i.e., breach of) this Paragraph of the Agreement, the non-breaching Party(ies) shall be entitled to injunctive and other equitable relief preventing further breaches of these provisions, as well as attorneys' fees incurred in enforcing this Agreement. Breach of any of the terms of this paragraph by any family member of either Gardner or ▇ shall constitute a breach by Gardner or ▇ as applicable.

Notice under this provision, as well as under paragraph 7, shall be given to:

To Gardner:

> Michael J. Avenatti, Esq.
> Eagan Avenatti, LLP
> 520 Newport Center Dr.
> Suite 1400
> Newport Beach, CA 92660

4

CONFIDENTIAL
USAO_00265204
GB_C_00026915

Exhibit 139
Page 4 of 5

Fax: (949) 706-7050

To ▇ :

Joel Weiner, Esq.
Katten Muchin Rosenman LLP
Suite 2600
Los Angeles, CA 90067
Fax: (310) 712-8414

**11. Counterparts.** This Agreement may be executed in two or more separate counterparts, and by facsimile, pdf, or other electronic copy, each of which, when executed, shall be an original, and all of which together shall constitute one and the same Agreement, notwithstanding that all Parties may not have executed the same counterpart, and each Party may execute a separate signature page which may be appended to form one or more duplicate originals of this Agreement.

**12. Representation and Warranties.** Each Party warrants and represents that other than disclosed in this agreement, (a) it has not assigned, encumbered or in any manner transferred all or any portion of the Claims released herein, (b) other than as released by this Agreement, there are no charges, complaints, suits, arbitrations or other claims or proceedings between the Parties, (c) no other person, party, or corporation has any right, title or interest in any of the Claims released herein, and (d) that all lawful conditions precedent to their execution and delivery of this Agreement have been fully accomplished. ▇▇▇ Gardner and ▇ further agree and represent that they will not contact the other Party.

**IN WITNESS WHEREOF**, intending to be legally bound hereby, the Parties have executed this Agreement as of the day and year written above.

ALEXIS GARDNER

*/s/*

HASSAN WHITESIDE

*/s/*

5

CONFIDENTIAL
USAO_00265205
GB_C_00026915

Exhibit 139
Page 5 of 5