Message

| | |
|---|---|
| **From:** | Filippo Marchino [fmarchino@eaganavenatti.com] |
| **on behalf of** | Filippo Marchino [/o=First Organization/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Filippo Marchino56f] |
| **Sent:** | 1/26/2017 1:40:57 AM |
| **To:** | Michael J. Avenatti |
| **Subject:** | Re: Info |
| **Attachments:** | Screen Shot 2017-01-25 at 5.40.11 PM.png |

Good?

**From:** "Michael J. Avenatti" <mavenatti@eaganavenatti.com>
**Date:** Wednesday, January 25, 2017 at 5:29 PM
**To:** Filippo Marchino Work <fmarchino@eaganavenatti.com>
**Subject:** Info

Have to list following:

Passport 420, LLC; Contract No. 4000316; Serial No. 42000029

Michael J. Avenatti, Esq.
Eagan Avenatti, LLP
520 Newport Center Drive, Ste. 1400
Newport Beach, CA  92660
Tel:  (949) 706-7000
Fax: (949) 706-7050
Cell: (949) 887-4118
mavenatti@eaganavenatti.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

GB_T_00181494

USAO_00345603

Exhibit 153
Page 1 of 2

0543
0544



**Add Recipient - Step 4 of 5**

**Recipient Information** | O Change

|  |  |
|---|---|
| Recipient name | Honda Aircraft Company, LLC |
| Recipient nickname | Honda Aircraft |
| Address 1 | 6430 Ballinger Rd. |
| Address 2 | |
| City | Greensboro |
| State/Province | North Carolina |
| Zip/Postal Code | 27410 |
| Country | United States |
| Message to recipient | Passport 420, LLC. Contract No. 4000316. Serial No. 42000029 |

**Bank Information** | O Change

|  |  |
|---|---|
| Bank routing number (US ABA/SWIFT) | 0248 |
| Bank name | Wells Fargo Bank, National Association |
| Bank country | United States |
| Recipient account number | 5366 |
| Message to recipient bank | Benefit of Honda Aircraft Company, LLC |

GB_T_00181495

USAO_00345604

Exhibit 153
Page 2 of 2

0544
0545

# EXHIBIT 20

0545

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CERTIFIED TRANSCRIPT |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | SACR-19-00061-JVS |
| MICHAEL JOHN AVENATTI, | ) | |
| Defendant. | ) | TRIAL DAY 20, VOL. 1 |
| ------------------------------ | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

August 13, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:05 | 1 | THE CLERK:  Item 1, SACR-19-00061-JVS, United |
| 09:05 | 2 | States of America versus Michael John Avenatti. |
| 09:05 | 3 | MR. WYMAN:  Good morning, Your Honor.  Alex Wyman |
| 09:05 | 4 | and Brett Sagel on behalf of the United States.  And with us |
| 09:05 | 5 | at counsel table is Special Remoun Karlous. |
| 09:05 | 6 | THE COURT:  Good morning. |
| 09:06 | 7 | MR. AVENATTI:  Good morning, Your Honor.  Michael |
| 09:06 | 8 | Avenatti, present with Mr. Dean Steward and |
| 09:06 | 9 | Ms. Cummings-Cefali.  Ms. Hernandez will be joining us |
| 09:06 | 10 | probably after the morning break. |
| 09:06 | 11 | THE COURT:  Very good. |
| 09:06 | 12 | Good morning, ladies and gentlemen. |
| 09:06 | 13 | THE JURY:  Good morning. |
| 09:06 | 14 | THE COURT:  Mr. Wyman. |
| 09:06 | 15 | JOHN DRUM, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN |
| 09:06 | 16 | DIRECT EXAMINATION (Continued) |
| 09:06 | 17 | BY MR. WYMAN: |
| 09:06 | 18 | Q    Good morning, Mr. Drum. |
| 09:06 | 19 | A    Good morning. |
| 09:06 | 20 | Q    If you could please pull up Exhibit 48. |
| 09:06 | 21 | Do you recall yesterday afternoon, Mr. Drum, we |
| 09:06 | 22 | were discussing Exhibit 48, the spreadsheet that Judy |
| 09:06 | 23 | Regnier e-mailed to defendant? |
| 09:06 | 24 | A    Yes. |
| 09:06 | 25 | Q    And at the end of the calculations there, there was |

| | | |
|---|---|---|
| 09:32 | 1 | Q      Okay.   Let's turn now to Exhibits 430 through 438.   If |
| 09:33 | 2 | you could please let us know, which clients do those charts |
| 09:33 | 3 | relate to? |
| 09:33 | 4 | A      These relate to Alexis Gardner. |
| 09:33 | 5 | Q      Okay.   Let's start with Exhibit 430.   What is the title |
| 09:33 | 6 | of this chart? |
| 09:33 | 7 | A      Total amount due to Alexis Gardner as of January 25th, |
| 09:33 | 8 | 2017, and November 2020. |
| 09:33 | 9 | Q      Starting with the first row, what does that row |
| 09:33 | 10 | reflect? |
| 09:33 | 11 | A      That reflects a similar amount paid on January 25th, |
| 09:33 | 12 | 2017, for $2.75 million. |
| 09:33 | 13 | Q      Did you review bank records showing that the defendant |
| 09:33 | 14 | received the settlement amount on that date? |
| 09:33 | 15 | A      Yes. |
| 09:33 | 16 | Q      If you could please pull up what is already in evidence |
| 09:33 | 17 | as Exhibit 148, page 1. |
| 09:33 | 18 | A      (Witness complies.) |
| 09:33 | 19 | Q      And in the top left-hand corner, can you please let us |
| 09:33 | 20 | know what the name on the account is. |
| 09:34 | 21 | A      Eagan Avenatti, LLP, Attorney/Client Trust Account. |
| 09:34 | 22 | Q      And in the top right what are the last four digits of |
| 09:34 | 23 | the account number? |
| 09:34 | 24 | A      8671. |
| 09:34 | 25 | Q      If you could please go to the middle of the page now |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:34  1    under deposits and credits.  What is reflected there?

09:34  2    A    That reflects a $2.75 million deposit from Hassan

09:34  3    Whiteside on January 25th, 2017.

09:34  4    Q    Okay.  Please go back to Exhibit 430 now.  The second

09:34  5    row below the settlement amount paid, what does that say?

09:34  6    A    That's your legal fees of $990,000.

09:34  7    Q    And where did that figure come from?

09:34  8    A    That came from the fee agreement, which was 33 percent

09:35  9    of the settlement amount, the total settlement amount of the

09:35  10   2.75 plus the amount due in November 2020 of $250,000.

09:35  11   Q    So that's 33 percent of the total of 3 million?

09:35  12   A    Yes.

09:35  13   Q    Then the next row says less case-related expenses.

09:35  14   What figure is reflected there?

09:35  15   A    $65,615.

09:35  16   Q    And how did you calculate that figure?

09:35  17   A    That figure was based on the amount identified in

09:35  18   QuickBooks related to Alexis Gardner.

09:35  19   Q    Right below that, what does the next row show?

09:35  20   A    Total due to client as of January 25th, 2017.

09:35  21   Q    How much is listed there?

09:35  22   A    Approximately $1.7 million.

09:35  23   Q    So based on your calculations and your review of the

09:35  24   fee agreement, is that how much your understanding was that

09:36  25   was owed to Ms. Gardner as of that date?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
09:36   1          MR. AVENATTI:  Objection, leading.

09:36   2          THE COURT:  Overruled.

09:36   3          THE WITNESS:  Yes, that's correct.

09:36   4   BY MR. WYMAN:

09:36   5   Q     Below that, what do the next two rows show?

09:36   6   A     The next row is plus settlement amount due

09:36   7   November 2020, $250,000.  And then the following row is the

09:36   8   total due to Alexis Gardner as of November 2020, the amount

09:36   9   due in January 2017, and $250,000, and that totals to

09:36  10   $1.9 million.

09:36  11   Q     And the last row in red, what does that represent?

09:36  12   A     That says total client received from settlement of zero

09:36  13   dollars.  That represents that none of the amount that was

09:36  14   deposited into Alex Gardner's client trust account was paid

09:36  15   to Alexis Gardner.

09:36  16          MR. WYMAN:  Could you please go to Exhibit 431

09:37  17   now.  And if we could blow up the whole contents, please.

09:37  18   BY MR. WYMAN:

09:37  19   Q     What is the title of this chart?

09:37  20   A     Tracing of Alexis Gardner's first settlement payment.

09:37  21   Q     And in the top left-hand corner, is that the same

09:37  22   legend for color coding?

09:37  23   A     That's correct.

09:37  24   Q     Starting from the left, what does the first arrow going

09:37  25   to the right show?
```

```
09:37   1    A      That shows the first settlement payment on
09:37   2    January 25th, 2017.  It was deposited into EA 8671.
09:37   3    Q      Then if we could please go to the right, it looks like
09:37   4    there are three arrows going from that bubble; is that
09:37   5    right?
09:37   6    A      That's correct.
09:37   7    Q      So starting from the one on the bottom, the one going
09:37   8    down, what does that show?
09:37   9    A      That shows $2.5 million was withdrawn from the client
09:37   10   trust accounts 8671 and sent to X-Law Group.
09:38   11   Q      Then if we could please go to the right, what happens
09:38   12   after that 2.5 million was sent to the X-Law Group?
09:38   13   A      On the same day $2.5 million was sent to Honda Aircraft
09:38   14   Company.
09:38   15   Q      If we can go back to the middle, please, what does the
09:38   16   arrow in the middle going to the right show?
09:38   17   A      $250,000 withdrawal from the client trust account into
09:38   18   EA 2851.
09:38   19   Q      And then to the right of that, what happened to that
09:38   20   money?
09:38   21   A      On that same day $250,000 was withdrawn and deposited
09:38   22   into A&A 0661.
09:38   23          MR. WYMAN:  At this time, Your Honor, the
09:38   24   government would move two bank records into evidence,
09:38   25   Exhibits 359 and 382, for which the custodian declarations
```

# EXHIBIT 21

0552

0553

*Confidential*

**Exhibit 431:**
**Tracing of Alexis Gardner's First Settlement Payment**



Exhibit 431
Page 1 of 1

0553
0554

**EXHIBIT 3**

<table>
<tr><td colspan="2"><strong>Fill in this information to identify your case:</strong></td></tr>
</table>

United States Bankruptcy Court for the:

CENTRAL DISTRICT OF CALIFORNIA -

Case number *(if known)* _____  Chapter  **7**

☐ Check if this an
   amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy  4/19

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**
**For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

| | | | |
|---|---|---|---|
| 1. | **Debtor's name** | **Eagan Avenatti, LLP** | |
| 2. | **All other names debtor used in the last 8 years**<br>Include any assumed names, trade names and *doing business as* names | **The Trial Group, LLP**<br>**Trial Group**<br>**TRG, LLP**<br>**EA LLP**<br>**EOA Law**<br>**Eagan O'Malley & Avenatti, LLP** | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **32-0210824** | |
| 4. | **Debtor's address** | **Principal place of business** | **Mailing address, if different from principal place of business** |
| | | **20341 SW Birch, Suite 220**<br>**Newport Beach, CA 92660**<br>Number, Street, City, State & ZIP Code | **20341 SW Birch, Suite 220**<br>**Newport Beach, CA 92660**<br>P.O. Box, Number, Street, City, State & ZIP Code |
| | | **Orange**<br>County | **Location of principal assets, if different from principal place of business**<br>**20341 SW Birch, Suite 220 Newport Beach, CA 92660**<br>Number, Street, City, State & ZIP Code |
| 5. | **Debtor's website** (URL) | **None** | |
| 6. | **Type of debtor** | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: _____ | |

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.
_5411_

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

■ Chapter 7

☐ Chapter 9

☐ Chapter 11. *Check all that apply*:

    ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625 (amount subject to adjustment on 4/01/22 and every 3 years after that).

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☐ No.

■ Yes.

| | District | **Central District of California** | When | **3/07/19** | Case number | **8:19-bk-10822-CB** |
|---|---|---|---|---|---|---|
| | District | **Central District of California** | When | **3/01/17** | Case number | **8:17-bk-11961-CB** |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list

■ No

☐ Yes.

| | Debtor | | Relationship | |
|---|---|---|---|---|
| | District | When | Case number, if known | |

| Debtor | **Eagan Avenatti, LLP** | | Case number (*if known*) | |
| | Name | | | |

**11. Why is the case filed in this district?**   *Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency _____
Contact name _____
Phone _____

---

**■ Statistical and administrative information**

**13. Debtor's estimation of available funds**   *Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ■ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ■ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ■ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor   Eagan Avenatti, LLP
Name

Case number (if known)

---

Request for Relief, Declaration, and Signatures

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

17. Declaration and signature of authorized representative of debtor

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   September 13, 2019
MM / DD / YYYY

X _____
Signature of authorized representative of debtor

Brian Weiss
Printed name

Title   Court Appointed Receiver

---

18. Signature of attorney

X _____
Signature of attorney for debtor

Date   September 13, 2019
MM / DD / YYYY

John P. Reitman
Printed name

Landau Gottfried & Berger LLP
Firm name

1880 Century Park East
Suite 1101
Los Angeles, CA 90067
Number, Street, City, State & ZIP Code

Contact phone   (310) 557-0050      Email address   jreitman@lgbfirm.com

80579 CA
Bar number and State

---

Official Form 201     Voluntary Petition for Non-Individuals Filing for Bankruptcy     page 4

| Fill in this information to identify the case: |
|---|

Debtor name   **Eagan Avenatti, LLP**

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA -

Case number (if known)   _____

☐ Check if this is an amended filing

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct.

■    *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
■    *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
■    *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
■    *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
■    *Schedule H: Codebtors* (Official Form 206H)
■    *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐    Amended *Schedule* _____
☐    *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐    Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **September 13, 2019**     X _____
                                      Signature of individual signing on behalf of debtor

                                      **Brian Weiss**
                                      Printed name

                                      **Court Appointed Receiver**
                                      Position or relationship to debtor

Software Copyright (c) 1996-2019 Best Case, LLC – www.bestcase.com          Best Case Bankruptcy

**STATEMENT OF RELATED CASES**
**INFORMATION REQUIRED BY LBR 1015-2**
**UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA**

1. A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, his or her current or former domestic partner, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of each such of prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

**In re Eagan Avenatti LLP, United States Bankruptcy Court for the Middle District of Florida (17-01329, Involuntary), filed on March 1, 2017 before Judge Karen S. Jennemann, transferred to United States Bankruptcy Court for the Central District of California (8:17-bk-11961-CB), before Judge Catherine E. Bauer, dismissed on March 15, 2018.**

**In re The Trial Group, LLP, aka Eagan Avenatti, LLP, United States Bankruptcy Court for the Central District of California (8:19-bk-10822-CB), filed on March 7, 2019 before Judge Catherine E. Bauer, dismissed/petition rendered retroactively null and void on March 19, 2019.**

2. (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)
**None**

3. (If petitioner is a corporation) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)
**None**

4. (If petitioner is an individual) A petition under the Bankruptcy Reform Act of 1978, including amendments thereof, has been filed by or against the debtor within the last 180 days: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)
**None**

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at   **Los Angeles, CA**                      , California.

Date:        **September 13, 2019**

**Brian Weiss, Court Appointed Receiver**
Signature of Debtor 1

Signature of Debtor 2

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*October 2018*                    *Page 1*          **F 1015-2.1.STMT.RELATED.CASES**

**Fill in this information to identify the case:**

Debtor name    **Eagan Avenatti, LLP**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA -

Case number (if known) _____

☐ Check if this is an
    amended filing

Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals
       12/15

| Part 1: | Summary of Assets |
| --- | --- |

1.   ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

     1a. **Real property:**
        Copy line 88 from *Schedule A/B*......................................................................    $       **0.00**

     1b. **Total personal property:**
        Copy line 91A from *Schedule A/B*..................................................................    $       **8,766.00**

     1c. **Total of all property:**
        Copy line 92 from *Schedule A/B*....................................................................    $       **8,766.00**

| Part 2: | Summary of Liabilities |
| --- | --- |

2.   ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*....................    $       **0.00**

3.   ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

     3a. **Total claim amounts of priority unsecured claims:**
        Copy the total claims from Part 1 from line 5a of *Schedule E/F*...........................    $       **538,346.48**

     3b. **Total amount of claims of nonpriority amount of unsecured claims:**
        Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*...............    +$       **0.00**

4.   **Total liabilities** .................................................................................................
   Lines 2 + 3a + 3b                       $       **538,346.48**

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor name  **Eagan Avenatti, LLP**

United States Bankruptcy Court for the:  CENTRAL DISTRICT OF CALIFORNIA -

Case number (if known) _____

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property          12/15

**Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.**

**For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.**

**Part 1:    Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No.  Go to Part 2.
   ■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

3.  **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | Farmers & Merchants Bank of Long Beach | Checking | 3858 | $6,266.00 |
| 3.2. | Farmers & Merchants Bank of Long Beach | IOLTA | 3890 | $0.00 |

4.  **Other cash equivalents** *(Identify all)*

5.  **Total of Part 1.**
    Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.          $6,266.00

**Part 2:    Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

   ■ No.  Go to Part 3.
   ☐ Yes Fill in the information below.

**Part 3:    Accounts receivable**

10. **Does the debtor have any accounts receivable?**

   ■ No.  Go to Part 4.
   ☐ Yes Fill in the information below.

**Part 4:    Investments**

| Debtor | **Eagan Avenatti, LLP** | Case number *(If known)* |
|---|---|---|
| | Name | |

**13. Does the debtor own any investments?**

■ No. Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:** Inventory, excluding agriculture assets

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:** Farming and fishing-related assets (other than titled motor vehicles and land)

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:** Office furniture, fixtures, and equipment; and collectibles

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** Furniture located at offsite storage company | $2,500.00 | Liquidator estim | $2,500.00 |
| 40. **Office fixtures** | | | |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** Computer servers in posession of Receiver | $0.00 | Purchase price | $0.00 |
| 42. **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1. **Art work (in possession of Orange County Sheriff)** | Unknown | Purchase price | Unknown |

43. **Total of Part 7.**
Add lines 39 through 42. Copy the total to line 86.

| | $2,500.00 |
|---|---|

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
■ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
■ No
☐ Yes

**Part 8:** Machinery, equipment, and vehicles

| Debtor | **Eagan Avenatti, LLP** | Case number *(If known)* | |
|---|---|---|---|
| | Name | | |

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.  Go to Part 9.
■ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 48. **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 49. **Aircraft and accessories** | | | |
| 49.1. **Honda Passport 420 Jet (ownership interest)** | $0.00 | To be determined | Unknown |
| 50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |

| 51. | **Total of Part 8.** | $0.00 |
|---|---|---|
| | Add lines 47 through 50.  Copy the total to line 87. | |

**52. Is a depreciation schedule available for any of the property listed in Part 8?**
■ No
☐ Yes

**53. Has any of the property listed in Part 8 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 9: | **Real property** |
|---|---|

**54. Does the debtor own or lease any real property?**

■ No.  Go to Part 10.
☐ Yes Fill in the information below.

| Part 10: | **Intangibles and intellectual property** |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

| Part 11: | **All other assets** |
|---|---|

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
■ Yes Fill in the information below.

| | Current value of debtor's interest |
|---|---|

| 71. | **Notes receivable** |
|---|---|
| | Description (include name of obligor) |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor | **Eagan Avenatti, LLP** | | Case number *(If known)* | |
| | Name | | | |

72. **Tax refunds and unused net operating losses (NOLs)**
Description (for example, federal, state, local)

73. **Interests in insurance policies or annuities**

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

**Alki Bakery - Demand letter sent**          Unknown

| Nature of claim | Potential avoidable transfers |
| Amount requested | $0.00 |

**BMC & Gee - Demand letter sent**          Unknown

| Nature of claim | Potential avoidable transfers |
| Amount requested | $0.00 |

**Bob Faieta, Competition Motorsport - Demand letter sent**          Unknown

| Nature of claim | Potential avoidable transfer |
| Amount requested | $0.00 |

**Dempsey Racing, LLC - Demand letter sent**          Unknown

| Nature of claim | Potential avoidable transfers |
| Amount requested | $0.00 |

**Dillanos Coffee Roasters, Inc. - Demand letter sent**          Unknown

| Nature of claim | Potential avoidable transfers |
| Amount requested | $0.00 |

**Eisenhower Carlson PLLC - Demand letter sent**          Unknown

| Nature of claim | Potential avoidable transfers |
| Amount requested | $0.00 |

**Foster Pepper PLLC - Demand letter sent**          Unknown

| Nature of claim | Potential avoidable transfers |
| Amount requested | $0.00 |

**Freightliner Trucks/Daimler Truck North America - Demand letter sent**          Unknown

| Nature of claim | Potential avoidable transfers |
| Amount requested | $0.00 |

**Gallo Builders, Inc. - Demand letter sent**          Unknown

| Nature of claim | Potential avoidable transfers |
| Amount requested | $0.00 |

| Debtor | **Eagan Avenatti, LLP** | Case number *(If known)* | |
|---|---|---|---|
| | Name | | |

| | |
|---|---|
| **Law Offices of Michael Q. Eagan - Demand letter sent** | **Unknown** |

| Nature of claim | Potential avoidable transfers |
|---|---|
| Amount requested | $0.00 |

---

| | |
|---|---|
| **Lisa Storie-Avenatti** | **Unknown** |

| Nature of claim | Potential avoidable transfers |
|---|---|
| Amount requested | $0.00 |

---

| | |
|---|---|
| **Michael J. Avenatti** | **Unknown** |

| Nature of claim | Potential avoidable transfers |
|---|---|
| Amount requested | $0.00 |

---

| | |
|---|---|
| **Michael Q. Eagan - Demand letter sent** | **Unknown** |

| Nature of claim | Potential avoidable transfers |
|---|---|
| Amount requested | $0.00 |

---

| | |
|---|---|
| **Nieman Marcus Group/Capital One Bank - Demand letter sent** | **Unknown** |

| Nature of claim | Potential avoidable transfers |
|---|---|
| Amount requested | $0.00 |

---

| | |
|---|---|
| **Silver Star Sound & Communications, Inc. - Demand letter sent** | **Unknown** |

| Nature of claim | Potential avoidable transfers |
|---|---|
| Amount requested | $0.00 |

---

| | |
|---|---|
| **The X-Law Group** | **Unknown** |

| Nature of claim | Potential avoidable transfers |
|---|---|
| Amount requested | $0.00 |

---

| | |
|---|---|
| **Trackside Performance LLC - Demand letter sent** | **Unknown** |

| Nature of claim | Potential avoidable transfers |
|---|---|
| Amount requested | $0.00 |

---

| | |
|---|---|
| **UBS Financial Services - Demand letter sent** | **Unknown** |

| Nature of claim | Potential avoidable transfers |
|---|---|
| Amount requested | $0.00 |

---

| | |
|---|---|
| **Vincent Builders, Inc. - Demand letter sent** | **Unknown** |

| Nature of claim | Potential avoidable transfers |
|---|---|
| Amount requested | $0.00 |

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

| Debtor | **Eagan Avenatti, LLP** | Case number *(If known)* | |
|---|---|---|---|
| | Name | | |

**Attorney fee liens filed in EA cases are listed in detail in Exhibit 1 to the separately filed addendum.** **Unknown**

| Nature of claim | |
|---|---|
| Amount requested | $0.00 |

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

**Breach of fiduciary duty, fraud, turnover.** **Unknown**

| Nature of claim | |
|---|---|
| Amount requested | $0.00 |

76. **Trusts, equitable or future interests in property**

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

78. **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90. | $0.00

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
■ No
☐ Yes

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    

| Debtor | **Eagan Avenatti, LLP** | Case number *(If known)* | |
|---|---|---|---|
| | Name | | |

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $6,266.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $2,500.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9*.....................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $8,766.00 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $8,766.00 |

**Fill in this information to identify the case:**

Debtor name    __Eagan Avenatti, LLP__

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA -

Case number (if known) _____

☐ Check if this is an amended filing

Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

   ☐ Yes. Fill in all of the information below.

**Part 1:**    **List Creditors Who Have Secured Claims**

**2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>Amount of claim<br><br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.1** **520 Newport Center Drive LLC**<br>Creditor's Name<br><br>**c/o Mark A Kompa Esq.**<br>**233113 S Plaza Pointe**<br>**Suite 100**<br>**Laguna Hills, CA 92653**<br>Creditor's mailing address | Describe debtor's property that is subject to a lien | **Unknown** | **Unknown** |

Creditor's email address, if known

Date debt was incurred

Last 4 digits of account number

Describe the lien

Is the creditor an insider or related party?

   ■ No
   ☐ Yes

Is anyone else liable on this claim?

   ■ No
   ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Do multiple creditors have an interest in the same property?

   ■ No
   ☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply

   ☐ Contingent
   ☐ Unliquidated
   ■ Disputed

---

| **2.2** **Acamar Investments**<br>Creditor's Name<br><br>**John Casperson**<br>**999 Third Avenue**<br>**Suite 2600**<br>**Seattle, WA 98104**<br>Creditor's mailing address | Describe debtor's property that is subject to a lien<br>**Interest claims and rights arising out of or relating to various litigation proceeds.** | **Unknown** | **Unknown** |

Creditor's email address, if known

Date debt was incurred

Last 4 digits of account number

Describe the lien
**Loan**

Is the creditor an insider or related party?

   ■ No
   ☐ Yes

Is anyone else liable on this claim?

   ■ No
   ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

| Debtor | **Eagan Avenatti, LLP** | Case number _(if known)_ | |
|---|---|---|---|
| | Name | | |

| | Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|---|
| | ■ No | ■ Contingent |
| | ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated |
| | | ■ Disputed |

---

| 2.3 | **California Bank & Trust** | Describe debtor's property that is subject to a lien | Unknown | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Bank-issued card (loan)** | | |

**PO Box 30833**
**Salt Lake City, UT 84130**

Creditor's mailing address

**Describe the lien**
**Loan**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

---

| 2.4 | **California Bank & Trust** | Describe debtor's property that is subject to a lien | Unknown | $0.00 |
|---|---|---|---|---|
| | Creditor's Name | | | |

**Attn David Blackford**
**11622 El Camino Real**
**Suite 200**
**San Diego, CA 92130**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

---

| 2.5 | **Department of Treasury** | Describe debtor's property that is subject to a lien | Unknown | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Serial # 357591419** | | |
| | | **Per UCC Filing - disputed** | | |

**Internal Revenue Service**
**Attn Mee Cha**
**PO Box 145595 Stop 8420G**
**Cincinnati, OH 45250-5585**

Creditor's mailing address

**Describe the lien**
**Unpaid payroll taxes**

---

| Debtor | **Eagan Avenatti, LLP** | Case number *(if know)* | |
|---|---|---|---|
| | Name | | |

| | |
|---|---|
| Creditor's email address, if known | Is the creditor an insider or related party? |
| | ■ No |
| | ☐ Yes |
| **Date debt was incurred** | Is anyone else liable on this claim? |
| **2015** | ■ No |
| **Last 4 digits of account number** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ■ No | ■ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated |
| | ■ Disputed |

---

| 2.6 | **Department of Treasury** | Describe debtor's property that is subject to a lien | Unknown | $0.00 |
|---|---|---|---|---|
| | Creditor's Name | **Serial # 358057719** | | |
| | **Internal Revenue Service** | **Per UCC Filing - disputed** | | |
| | **Attn Mee Cha** | | | |
| | **PO Box 145595, Stop** | | | |
| | **8420G** | | | |
| | **Cincinnati, OH 45250-5585** | | | |

| | |
|---|---|
| Creditor's mailing address | **Describe the lien** |
| | **Unpaid payroll taxes** |
| | Is the creditor an insider or related party? |
| Creditor's email address, if known | ■ No |
| | ☐ Yes |
| | Is anyone else liable on this claim? |
| **Date debt was incurred** | ■ No |
| **2018** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Last 4 digits of account number** | |

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ■ No | ■ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated |
| | ■ Disputed |

---

| 2.7 | **Department of Treasury** | Describe debtor's property that is subject to a lien | Unknown | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Serial # 182296115** | | |
| | **Internal Revenue Service** | **Per UCC Filing- disputed** | | |
| | **S Muhammad PO Box** | | | |
| | **145595 Stop 8402G** | | | |
| | **Cincinnati, OH 45250-5585** | | | |

| | |
|---|---|
| Creditor's mailing address | **Describe the lien** |
| | **Unpaid payroll and partnership taxes** |
| | Is the creditor an insider or related party? |
| Creditor's email address, if known | ■ No |
| | ☐ Yes |
| | Is anyone else liable on this claim? |
| **Date debt was incurred** | ■ No |
| **2012-2015** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Last 4 digits of account number** | |

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

| Debtor | **Eagan Avenatti, LLP** | Case number (if know) | |
| | Name | | |

�bNo
☐ Yes. Specify each creditor, including this creditor and its relative priority.

■ Contingent
■ Unliquidated
■ Disputed

---

| 2.8 | **Department of Treasury** | Describe debtor's property that is subject to a lien | Unknown | Unknown |

Creditor's Name

**Internal Revenue Service S Muhammad PO Box 145595 Stop 8402G Cincinnati, OH 45250-5585**

**Serial # 204336816
Per UCC Filing - disputed**

Creditor's mailing address

Describe the lien
**Unpaid payroll taxes**

Is the creditor an insider or related party?
■ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**2015**

Last 4 digits of account number

As of the petition filing date, the claim is:
Check all that apply

Do multiple creditors have an interest in the same property?
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

■ Contingent
■ Unliquidated
■ Disputed

---

| 2.9 | **Department of Treasury** | Describe debtor's property that is subject to a lien | Unknown | Unknown |

Creditor's Name

**Internal Revenue Service S Muhammad PO Box 145595 Stop 8402G Cincinnati, OH 45250-5585**

**Serial # 210519916
Per UCC Filing - Disputed**

Creditor's mailing address

Describe the lien
**Unpaid payroll taxes**

Is the creditor an insider or related party?
■ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred

Last 4 digits of account number

As of the petition filing date, the claim is:
Check all that apply

Do multiple creditors have an interest in the same property?
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

■ Contingent
■ Unliquidated
■ Disputed

---

| 2.10 | **Dept of Treasury** | Describe debtor's property that is subject to a lien | Unknown | Unknown |

Creditor's Name

**Internal Revenue Service Attn Maria R Galvan 1919 Smith Street M/S 5024 HOU Houston, TX 77002**

**All of debtor's right, title and interest to property (26 USC 6321)
Per UCC Filing - Disputed**

---

Official Form 206D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 4 of 9

| Debtor | **Eagan Avenatti, LLP** | | Case number (if know) | |
|--------|------------------|--|-------------------------|--|
| | Name | | | |

---

| Creditor's mailing address | **Describe the lien** | | |
|---|---|---|---|
| | | | |
| | **Is the creditor an insider or related party?** | | |
| | ■ No | | |
| Creditor's email address, if known | ☐ Yes | | |
| | **Is anyone else liable on this claim?** | | |
| **Date debt was incurred** | ■ No | | |
| | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| **Last 4 digits of account number** | | | |
| **7065** | | | |
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply | | |
| ■ No | ■ Contingent | | |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated | | |
| | ■ Disputed | | |

---

**2.1 1**

| **Internal Revenue Service** | **Describe debtor's property that is subject to a lien** | Unknown | Unknown |
|---|---|---|---|
| Creditor's Name | **Serial # 186129015** | | |
| **S Muhammad PO Box 145595 Stop 8420G Cincinnati, OH 45250-5585** | **Per UCC Filing - Disputed** | | |
| Creditor's mailing address | **Describe the lien** | | |
| | **Unpaid partnership tax** | | |
| | **Is the creditor an insider or related party?** | | |
| | ■ No | | |
| Creditor's email address, if known | ☐ Yes | | |
| | **Is anyone else liable on this claim?** | | |
| **Date debt was incurred** | ■ No | | |
| **2011** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| **Last 4 digits of account number** | | | |
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply | | |
| ■ No | ■ Contingent | | |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated | | |
| | ■ Disputed | | |

---

**2.1 2**

| **Jason Frank Law PLC** | **Describe debtor's property that is subject to a lien** | Unknown | Unknown |
|---|---|---|---|
| Creditor's Name | | | |
| **19800 MacArthur Blvd Suite 855 Irvine, CA 92612** | | | |
| Creditor's mailing address | **Describe the lien** | | |
| | **Judgment lien** | | |
| | **Is the creditor an insider or related party?** | | |
| | ■ No | | |
| Creditor's email address, if known | ☐ Yes | | |
| | **Is anyone else liable on this claim?** | | |
| **Date debt was incurred** | ☐ No | | |
| **5/22/2018** | ■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| **Last 4 digits of account number** | | | |
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply | | |

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

| Debtor | **Eagan Avenatti, LLP** | Case number (if know) | |
|---|---|---|---|
| | Name | | |

☒ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☒ Contingent
☒ Unliquidated
☒ Disputed

---

**2.1 3** **Lisa Storie-Avenatti**
Creditor's Name

**3419 Via Lida 610**
**Newport Beach, CA 92663**
Creditor's mailing address


Creditor's email address, if known

Date debt was incurred
**10/22/2018**
Last 4 digits of account number

**Do multiple creditors have an interest in the same property?**
☒ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Artwork, four pieces.**


**Describe the lien**
**Writ of Execution lien**
Is the creditor an insider or related party?
☐ No
☒ Yes
Is anyone else liable on this claim?
☐ No
☒ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☒ Contingent
☒ Unliquidated
☒ Disputed

Unknown          Unknown

---

**2.1 4** **State of CA Employment Development**
Creditor's Name

**Lien Group MIC 92G**
**PO Box 826880**
**Sacramento, CA 94280**
Creditor's mailing address


Creditor's email address, if known

Date debt was incurred
**2013/2014**
Last 4 digits of account number

**Do multiple creditors have an interest in the same property?**
☒ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Certificate # G000959490**
**Per UCC Filing - Disputed**


**Describe the lien**
**Unpaid payroll taxes**
Is the creditor an insider or related party?
☒ No
☐ Yes
Is anyone else liable on this claim?
☒ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☒ Contingent
☒ Unliquidated
☒ Disputed

Unknown          Unknown

---

**2.1 5** **State of CA Employment Development**
Creditor's Name

**Lien Group MIC 92G**
**PO Box 826880**
**Sacramento, CA 94280**
Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**Certificate # G001035990**
**Per UCC Filing - Disputed**


**Describe the lien**
**Unpaid payroll taxes**

Unknown          Unknown

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 6 of 9

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | **Eagan Avenatti, LLP** | Case number (if know) | |
|---|---|---|---|
| | Name | | |

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

---

Creditor's email address, if known

**Date debt was incurred**
2015

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

■ Contingent

■ Unliquidated

■ Disputed

---

| 2.1 6 | **State of CA Employment Development** | Describe debtor's property that is subject to a lien | Unknown | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Certificate #G001152644** | | |
| | **Lien Group MIC 92G** | **Per UCC Filing - Disputed** | | |
| | **PO Box 826880** | | | |
| | **Sacramento, CA 94280** | | | |
| | Creditor's mailing address | | | |

**Describe the lien**
Unpaid payroll taxes

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

■ Contingent

■ Unliquidated

■ Disputed

---

| 2.1 7 | **State of CA Employment Development** | Describe debtor's property that is subject to a lien | Unknown | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Certificate # G001241610** | | |
| | **Lien Group MIC 92G** | **Per UCC Filing - Disputed** | | |
| | **PO Box 826880** | | | |
| | **Sacramento, CA 94280** | | | |
| | Creditor's mailing address | | | |

**Describe the lien**
Unpaid payroll taxes

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Creditor's email address, if known

**Date debt was incurred**
2015

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

| Debtor | **Eagan Avenatti, LLP** | | Case number (if know) | |
| | Name | | | |

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☑ Contingent
☑ Unliquidated
☑ Disputed

---

| 2.18 | **State of CA Employment Development** | | | |

Creditor's Name

**Lien Group MIC 92G
PO Box 826880
Sacramento, CA 94280**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**2015**
**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Certificate # G001382259
Per UCC Filing - Disputed**

**Describe the lien**
**Unpaid payroll taxes**
**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☑ Contingent
☑ Unliquidated
☑ Disputed

Unknown        Unknown

---

| 2.19 | **State of CA Employment Development** | | | |

Creditor's Name

**Lien Group MIC 92G
PO Box 826880
Sacramento, CA 94280**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**2016**
**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Certificate # G001545665
Per UCC Filing - Disputed**

**Describe the lien**
**Unpaid payroll taxes**
**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☑ Contingent
☑ Unliquidated
☑ Disputed

Unknown        Unknown

---

| 2.20 | **State of CA Employment Development** | | | |

Creditor's Name

**Lien Group MIC 92G
PO Box 826880
Sacramento, CA 94280**

Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**Certificate # G002344370
Per UCC Filing Disputed**

**Describe the lien**
**Unpaid payroll taxes**

Unknown        Unknown

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor    **Eagan Avenatti, LLP**                                    Case number (if know) _____
           Name

|  | Is the creditor an insider or related party? |
|--|--|
| Creditor's email address, if known | ■ No |
|  | ☐ Yes |
| | Is anyone else liable on this claim? |
| **Date debt was incurred** | ■ No |
| **2016-2018** | ☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H) |
| **Last 4 digits of account number** | |

| **Do multiple creditors have an interest in the same property?** | As of the petition filing date, the claim is: |
|--|--|
| | Check all that apply |
| ■ No | ■ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated |
| | ■ Disputed |

---

| 2.2 1 | **The Peoples Bank** | Describe debtor's property that is subject to a lien | Unknown | Unknown |
|--|--|--|--|--|
| | Creditor's Name | **Assignment of the first $500,000 plus interest of settlement proceeds in the Meridian related cases - disputed.** | | |
| | **Biloxi Mississippi** | | | |
| | **152 Lameuse Street** | | | |
| | **Biloxi, MS 39530-4214** | | | |
| | Creditor's mailing address | Describe the lien | | |
| | | **Loan** | | |
| | | Is the creditor an insider or related party? | | |
| | | ■ No | | |
| | Creditor's email address, if known | ☐ Yes | | |
| | | Is anyone else liable on this claim? | | |
| | **Date debt was incurred** | ■ No | | |
| | | ☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H) | | |
| | **Last 4 digits of account number** | | | |

| **Do multiple creditors have an interest in the same property?** | As of the petition filing date, the claim is: |
|--|--|
| | Check all that apply |
| ■ No | ■ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated |
| | ■ Disputed |

---

| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | $0.00 |
|--|--|--|

**Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|--|--|--|
| | | |

---

Official Form 206D         Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**         page 9 of 9

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name **Eagan Avenatti, LLP**

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA -

Case number (if known) _____

☐ Check if this is an
amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

| Part 1: | List All Creditors with PRIORITY Unsecured Claims |
|---------|--------------------------------------------------|

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
   with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  |  | **Total claim** | **Priority amount** |
|--|--|--|-----------------|---------------------|
| **2.1** | Priority creditor's name and mailing address<br>**CA Department of Revenue**<br>**CA Franchise Tax Board**<br>**PO Box 1468**<br>**Sacramento, CA 95812** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **Unknown** | $0.00 |
|  | Date or dates debt was incurred | Basis for the claim: |  |  |
|  | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes |  |  |
| **2.2** | Priority creditor's name and mailing address<br>**County of Orange**<br>**PO Box 4515**<br>**Santa Ana, CA 92702** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>■ Unliquidated<br>■ Disputed | **Unknown** | **Unknown** |
|  | Date or dates debt was incurred | Basis for the claim: |  |  |
|  | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes |  |  |

| Debtor | **Eagan Avenatti, LLP** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|
| | **Dept of Treasury**<br>**Internal Revenue Service**<br>**Attn Maria R Galvan**<br>**1919 Smith Street M/S 5024 HOU**<br>**Houston, TX 77002** | ■ Contingent<br>■ Unliquidated<br>■ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No<br>☐ Yes | | |

| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|
| | **Employment Development**<br>**Department**<br>**Bankruptcy Group MIC 92E**<br>**P.O. Box 826880**<br>**Sacramento, CA 94280-0001** | ■ Contingent<br>■ Unliquidated<br>■ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Payroll Taxes** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No<br>☐ Yes | | |

| 2.5 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $170,921.50 | $170,921.50 |
|---|---|---|---|---|
| | **Force Ten Partners LLC**<br>**20341 SW Birch**<br>**Suite 220**<br>**Newport Beach, CA 92660** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**February 13, 2019 to date** | Basis for the claim:<br>**Prepetition Receiver's fees** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (2) | ■ No<br>☐ Yes | | |

| 2.6 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|
| | **Franchise Tax Board**<br>**Bankruptcy Section MS A 340**<br>**PO Box 2952**<br>**Sacramento, CA 95812** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No<br>☐ Yes | | |

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| 2.7 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|

**Internal Revenue Service**
**PO Box 7346**
**Philadelphia, PA 19101-7346**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

■ No
☐ Yes

---

| 2.8 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $367,424.98 | $367,424.98 |
|---|---|---|---|---|

**Landau Gottfried & Berger LLP**
**1880 Century Park East**
**Suite 1101**
**Los Angeles, CA 90067**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**February 13, 2019 to date**

Basis for the claim:
**Prepetition Receiver's Attorneys' fees**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (2)

■ No
☐ Yes

---

| 2.9 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|

**Lisa Storie-Avenatti**
**3419 Via Lida 610**
**Newport Beach, CA 92663**

☐ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**October 22, 2018**

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (1)

■ No
☐ Yes

---

| 2.10 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|

**Najah J. Shariff, Esq.**
**United States Attorney's Office**
**Federal Building**
**300 North Los Angeles Street**
**Los Angeles, CA 90012**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

■ No
☐ Yes

---

| Debtor | Eagan Avenatti, LLP | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

| 2.11 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|
| | **United States Department of Justice** **Ben Franklin Station** **PO Box 683** **Washington, DC 20024** | *Check all that apply.* ☐ Contingent ☐ Unliquidated ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | ☑ No ☐ Yes | | |

---

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

3.   **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  | | | **Amount of claim** |
|---|---|---|---|

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|
| | **Ace Parking Management Inc** **610 Newport Center Drive** **Suite 50** **Newport Beach, CA 92660** | ☐ Contingent ☐ Unliquidated ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset?  ☑ No  ☐ Yes | |

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|
| | **Aderant Holdings** **LOCKBOX PO Box 931177** **Atlanta, GA 31193** | ☐ Contingent ☐ Unliquidated ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset?  ☐ No  ☐ Yes | |

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|
| | **Advanced Discovery** **PO 102242** **Atlanta, GA 30368-2242** | ☐ Contingent ☐ Unliquidated ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset?  ☐ No  ☐ Yes | |

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|
| | **Affordable Moving & Storage** **PO Box 361** **Garden Grove, CA 92642** | ☐ Contingent ☐ Unliquidated ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset?  ☐ No  ☐ Yes | |

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|
| | **Ahmed Ibrahim** **29 Soho** **Irvine, CA 92612** | ☐ Contingent ☐ Unliquidated ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset?  ☑ No  ☐ Yes | |

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) |
|---|---|---|
| | Name | |

---

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Allied Universal Security Systems**
**PO Box 732565**
**Dallas, TX 75373-2565**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Alphagraphics**
**221 King Street**
**Madison, WI 53703**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Andrew Stolper**
**Frank Simms Stolper, LLP**
**19800 MacArthur Blvd**
**Suite 855**
**Irvine, CA 92612**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Anthem Blue Cross**
**PO Box 54630**
**Los Angeles, CA 90054-0630**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.10 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**AT&T Teleconference Services**
**PO Box 5002**
**Carol Stream, IL 60197**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _Telephone Services_

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.11 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Authentic Entertainment Properties**
**c/o Andrew D. Stolper, Esq.**
**19800 MacArthur Blvd Ste 855**
**Irvine, CA 92612**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.12 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Baker Hostetler**
**Attn Elizabeth Green**
**200 S Orange Ave**
**Suite 2300**
**Orlando, FL 32801**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Eagan Avenatti, LLP** | Case number *(if known)* |
|---|---|---|
| | Name | |

**3.13** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown**

**Baker Keener & Nahra LLP**
633 West Fifth Street
Suite 5400
Los Angeles, CA 90071

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  Professional Services

Date(s) debt was incurred __
Last 4 digits of account number __

Is the claim subject to offset? ■ No  ☐ Yes

**3.14** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown**

**Barkley Court Reporters**
10350 Santa Monica Blvd
Suite 200
Los Angeles, CA 90025-6923

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  Services Rendered

Date(s) debt was incurred __
Last 4 digits of account number __

Is the claim subject to offset? ■ No  ☐ Yes

**3.15** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown**

**Ben Hyatt**
17835 Ventura Blvd
Suite 310
Encino, CA 91316

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __

Date(s) debt was incurred __
Last 4 digits of account number __

Is the claim subject to offset? ■ No  ☐ Yes

**3.16** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown**

**Burlington & Rockenbach PA**
444 W Railroad Ave
Suite 350
West Palm Beach, FL 33401

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __

Date(s) debt was incurred __
Last 4 digits of account number __

Is the claim subject to offset? ■ No  ☐ Yes

**3.17** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown**

**California Dept of Tax & Fee Admin**
PO Box 942879
Sacramento, CA 94279-0001

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __

Date(s) debt was incurred __
Last 4 digits of account number __

Is the claim subject to offset? ■ No  ☐ Yes

**3.18** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown**

**Cantral Communications**
11830 Pierce Street
Suite 100
Riverside, CA 92505

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __

Date(s) debt was incurred __
Last 4 digits of account number __

Is the claim subject to offset? ■ No  ☐ Yes

**3.19** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown**

**Carlos Colorado**
c/o Hodes Milman LLP
9210 Irvine Center Dr
Irvine, CA 92618-4661

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __

Date(s) debt was incurred __
Last 4 digits of account number __

Is the claim subject to offset? ■ No  ☐ Yes

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) |
|---|---|---|
| | Name | |

---

**3.20** | **Nonpriority creditor's name and mailing address**

Cascade Capital Group
815 First Avenue
#150
Seattle, WA 98104

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

Unknown

---

**3.21** | **Nonpriority creditor's name and mailing address**

CCROLA
205 Broadway
Suite 200
Los Angeles, CA 90012

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** Services Rendered

Is the claim subject to offset? ■ No ☐ Yes

Unknown

---

**3.22** | **Nonpriority creditor's name and mailing address**

City of Newport Beach
PO Box 3080
Newport Beach, CA 92658-3080

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

Unknown

---

**3.23** | **Nonpriority creditor's name and mailing address**

Client 1

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.

☐ Contingent
■ Unliquidated
☐ Disputed

**Basis for the claim:** Client 1, USA v. Michael John Avenatti, Indictment, Case no. SACR19-00061-JVS

Is the claim subject to offset? ■ No ☐ Yes

Unknown

---

**3.24** | **Nonpriority creditor's name and mailing address**

Client 2

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.

☐ Contingent
■ Unliquidated
☐ Disputed

**Basis for the claim:** Client 2, USA v. Michael John Avenatti, Indictment, Case no. SACR19-00061-JVS

Is the claim subject to offset? ■ No ☐ Yes

Unknown

---

**3.25** | **Nonpriority creditor's name and mailing address**

Client 3

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.

☐ Contingent
■ Unliquidated
☐ Disputed

**Basis for the claim:** Client 3, USA v. Michael John Avenatti, Indictment, Case no. SACR19-00061-JVS

Is the claim subject to offset? ■ No ☐ Yes

Unknown

---

**3.26** | **Nonpriority creditor's name and mailing address**

Client 4

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.

☐ Contingent
■ Unliquidated
☐ Disputed

**Basis for the claim:** Client 4, USA v. Michael John Avenatti, Indictment, Case no. SACR19-00061-JVS

Is the claim subject to offset? ■ No ☐ Yes

Unknown

---

| Debtor | **Eagan Avenatti, LLP** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

---

| 3.27 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |

**Client 5**

- ☐ Contingent
- ■ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Client 5, USA v. Michael John Avenatti, Indictment, Case no. SACR19-00061-JVS**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.28 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |

**Collision and Injury Dynamics Inc**
**149 Sheldon Street**
**El Segundo, CA 90245**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.29 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |

**Competition Economics LLC**
**2000 Powell Street**
**Suite 510**
**Emeryville, CA 94608**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Professional Services**

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.30 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |

**Corey Spound & Michael Spound**
**c/o Frank Sims & Stolper LLP**
**19800 MacArthur Blvd**
**#855**
**Irvine, CA 92612**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.31 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |

**County of Orange**
**Attn Treasurer-Tax Collector**
**PO Box 1438**
**Santa Ana, CA 92702**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.32 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |

**Cox Communications**
**PO Box 53280**
**Phoenix, AZ 85072-3280**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.33 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |

**CrossPlans**
**23041 Avenida de la Carlota**
**Suite 300**
**Laguna Hills, CA 92653**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) |
|---|---|---|
| | Name | |

| 3.34 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Damon Rogers**
**c/o X-Law Group**
**910 Sunset Blvd**
**Suite 450**
**Los Angeles, CA 90026**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.35 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**David Golubchik Esq**
**Levene Neale Bender Yoo & Brill**
**10250 Constellation Blvd**
**Suite 1700**
**Los Angeles, CA 90067**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.36 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**David W Stewart PhD**
**13031 Villosa Place #121**
**Playa Vista, CA 90094**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: **Professional Services**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.37 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Dept of Treasury**
**Internal Revenue Service**
**Attn Maria R Galvan**
**1919 Smith Street M/S 5024 HOU**
**Houston, TX 77002**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: **Penalty on Priority and general Unsecured Claims**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.38 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Dept. of the Treasury IRS**

**Ogden, UT 84201-0013**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.39 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Developing Opportunities**
**& Solutions LLC**
**611 South Main Street**
**#400**
**Grapevine, TX 76051**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: **Services Rendered**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.40 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Eisenhower Carlson PLLC**
**Wells Fargo Plaza**
**Suite 1200 1201 Pacific Ave**
**Tacoma, WA 98402**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Eagan Avenatti, LLP** | | Case number *(if known)* | |
|---|---|---|---|---|
| | Name | | | |

| 3.41 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Employers Preferred Insurance Co**
PO Box 53089
Phoenix, AZ 85072

☐ Contingent
☐ Unliquidated
☑ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __3000__

Basis for the claim:  __Insurance Premium__

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.42 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Employment Development Department**

P.O. Box 989061
West Sacramento, CA 95798-9061

☑ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim:  __Payroll Taxes__

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.43 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Esner Chang & Boyer**
**234 East Colorado Blvd**
**Suite 750**
**Pasadena, CA 91101**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim:  __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.44 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Esquire Deposition Solutions**
**2700 Centennial Tower 101**
**Marrietta Street**
**Atlanta, GA 30303**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim:  __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.45 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Executive Presentations**
**915 Wilshire Blvd**
**Suite 1700**
**Los Angeles, CA 90017**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim:  __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.46 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**F Timothy Fitzgibbons**
**William Parrish**
**c/o Cappello & Noel LLP**
**831 State Street Suite 210**
**Santa Barbara, CA 93101**

☐ Contingent
☑ Unliquidated
☑ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim:  __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.47 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**FedEx**
**PO Box 7221**
**Pasadena, CA 91109-7321**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim:  __Services Rendered__

Is the claim subject to offset? ☑ No ☐ Yes

---

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) |
|---|---|---|
| | Name | |

| 3.48 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**File & Serve Xpress**
PO Box 679058
Dallas, TX 75267-9058

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.49 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**First Legal Records**
PO Box 749469
Los Angeles, CA 90074-9469

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.50 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Garrett Mosier Griffith Sistru**
6201 Oak Canyon
#100
Irvine, CA 92618

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.51 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Gass Weber Mullins LLC**
309 N Water St
Milwaukee, WI 53202

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.52 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Geoffrey E Johnson**
c/o Callahan & Blaine APLC
3 Hutton Centre Drive
Ninth Floor
Santa Ana, CA 92707

☐ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.53 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Gerald Tobin**
2014 Edgewater Drive #169
Orlando, FL 32804

☐ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim: **Professional Services**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.54 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Green Street Advisors**
660 Newport Center Drive
Suite 800
Newport Beach, CA 92660

☐ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim: **Professional Services**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) |
|---|---|---|
| | Name | |

| 3.55 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Gregory and Talitha Barela**
c/o Larson O'Brien LLP
55 South Flower St
Suite 4400
Los Angeles, CA 90071

- ☐ Contingent
- ■ Unliquidated
- ■ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| 3.56 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**HSNO**
PO Box 51067
Los Angeles, CA 90051-5367

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| 3.57 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Humberto R Gray**
11726 San Vicente Blvd
Suite 670
Los Angeles, CA 90049

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| 3.58 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**iManage LLC**
PO Box 71701
Chicago, IL 60694

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| 3.59 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Innovative Computing Systems**
2780 Skypark Dr
Suite 125
Torrance, CA 90505

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __Services Rendered__

Is the claim subject to offset? ■ No ☐ Yes

| 3.60 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**iNSERViO3**
18013 Sky Park Cir
Irvine, CA 92614

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| 3.61 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**International Personnel**
**Protection Inc**
PO Box 92493
Austin, TX 78709

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __Professional Services__

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| 3.62 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Intl Church of the Foursquare**
**100 Bayview Circle**
**Suite 2600 Dept 8**
**Newport Beach, CA 92660**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

**Basis for the claim:** __

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.63 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Isaac Marcushamer**
**Berger Singerman LLP**
**1450 Brickell Avenue**
**Suite 1900**
**Miami, FL 33131**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

**Basis for the claim:** __

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.64 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Jack Cross & Associates Inc**
**9070 Irvine Center Drive**
**Suite 220**
**Irvine, CA 92618**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

**Basis for the claim:  Professional Services**

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.65 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Jams**
**PO Box 845402**
**Los Angeles, CA 90084-5402**

☐ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred __

**Basis for the claim:  Professional Services**

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.66 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Jason Frank Law PLC**
**Frank Sims Stolper LLP**
**19800 MacArthur Blvd**
**Suite 855**
**Irvine, CA 92612**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred __

**Basis for the claim:  Arbitration**

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.67 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**John C Crotts Consulting**
**688 Serotina Court**
**Mount Pleasant, SC 29464**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

**Basis for the claim:** __

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.68 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Judicate West**
**1851 East First Street**
**Suite 1600**
**Santa Ana, CA 92705**

☐ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred __

**Basis for the claim:  Professional Services**

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) |
|---|---|---|
| | Name | |

| 3.69 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**KCC**
**222 N Pacific Coast Hwy**
**3rd Floor**
**El Segundo, CA 90245**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

**Basis for the claim:** _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.70 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**KNJ Ventures**
**1106 A Broadway**
**Santa Monica, CA 90401**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

**Basis for the claim:** _Professional Services_

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.71 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**L Lin Wood PC**
**1180 West Peachtree Street**
**Suite 2400**
**Atlanta, GA 30309**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

**Basis for the claim:** _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.72 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Lewis Roca Rothgerber**
**3993 Howard Hughes Parkway**
**Suite 600**
**Las Vegas, NV 89169**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

**Basis for the claim:** _Professional Services_

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.73 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Litigation Services**
**3700 Howard Hughes Parkway**
**Suite 300**
**Las Vegas, NV 89169**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

**Basis for the claim:** _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.74 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Mark S. Horoupian Esq**
**Sulmeyer Kupetz**
**2424 SE Bristol St**
**Suite 300**
**Newport Beach, CA 92660**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

**Basis for the claim:** _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.75 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Martindale-Hubbel**
**PO Box 59757**
**Los Angeles, CA 90074-9757**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

**Basis for the claim:** _

Is the claim subject to offset? ■ No  ☐ Yes

---

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) |
|---|---|---|
| | Name | |

| 3.76 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Mehler & Hagestorm**
**1660 West 2nd Street**
**Suite 780**
**Cleveland, OH 44113-1455**

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| 3.77 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Momentum Engineering Corp**
**2862 Columbia Street**
**Torrance, CA 90503**

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| 3.78 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Nationwide Legal LLC**
**1609 James M Wood Blvd**
**Los Angeles, CA 90015**

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| 3.79 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Norell Consulting Inc**
**218 Catherin Park**
**Glendora, CA 91741**

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Professional Services**

Is the claim subject to offset? ■ No ☐ Yes

| 3.80 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Office of Administrative Hearings**
**2349 Gateway Oaks Dr**
**Suite 200**
**Sacramento, CA 95833**

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| 3.81 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Pacer**
**PO Box 71364**
**Philadelphia, PA 19176-1364**

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| 3.82 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Paperstreet Web Design**
**219 SW 17th Street**
**Fort Lauderdale, FL 33315**

Date(s) debt was incurred __
Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) |
|---|---|---|
| | Name | |

| 3.83 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|
| | **Personal Court Reporters Inc**<br>14520 Sylvan Street<br>Van Nuys, CA 91411 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim: **Professional Services**<br><br>Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.84 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|
| | **PitneyBowes Global Fin Services LLC**<br>PO Box 371887<br>Pittsburgh, PA 15250 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim: _<br><br>Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.85 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|
| | **Poyner Spruill LLP**<br>PO Box 1801<br>Raleigh, NC 27602-1801 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim: _<br><br>Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.86 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|
| | **Purchase Power**<br>P.O. Box 371874<br>Pittsburgh, PA 15250 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim: _<br><br>Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.87 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|
| | **Raines Feldman**<br>18401 Von Karman Ave<br>Suite 360<br>Irvine, CA 92612 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim: _<br><br>Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.88 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|
| | **Rest Your Case Evidence Storage**<br>6364 Irwindale Road<br>Irwindale, CA 91702 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim: **Storage of Evidence**<br><br>Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.89 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|
| | **Ricoh USA Inc**<br>PO Box 31001-0850<br>Pasadena, CA 91110-0850 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim: _<br><br>Is the claim subject to offset? ☑ No ☐ Yes | |

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

---

| 3.90 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Robert J Stoll Jr**
**Stoll Nussbaum & Polakov APC**
**c/o Keathley & Keathley LLP**
**2030 Main Street Suite 210**
**Irvine, CA 92614**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.91 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Scott Sims**
**Frank Sims Stolper LLP**
**19800 MacArthur Blvd**
**Suite 855**
**Irvine, CA 92612**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.92 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Shred-It USA**
**PO Box101007**
**Pasadena, CA 91189-1007**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.93 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Simpson Deposition**
**1314 E Chapman Ave**
**Orange, CA 92866**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.94 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**SoCal Subpoena**
**115 Pine Avenue**
**Suite 320**
**Long Beach, CA 90802**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Services Rendered**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.95 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Software Technology LLC**
**1621 Cushman Drive**
**Lincoln, NE 68512**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.96 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Special Delivery Service Inc**
**5470 LBJ Freeway**
**Dallas, TX 75240**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Eagan Avenatti, LLP** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

| 3.97 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Staples**
PO Box 83689
Chicago, IL 60696-3689

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.98 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Stephanie Clifford**

☐ Contingent
■ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.99 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Suzy Quinn**
c/o John Migotsky
95 Christopher Street
#14D
New York, NY 10014

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.100 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**The Irvine Company**
PO Box 841387
Los Angeles, CA 90084-1387

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.101 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**The Montage Laguna Beach**
**Finance Dept**
30801 South Coast Highway
Norwalk, CA 90651

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.102 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**The Montlake Group LLC**
16639 Sunset Blvd
Pacific Palisades, CA 90272

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __Professional Services__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.103 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**The Neurobehavioral Clinic**
13 Orchard Road
Suite 103
Lake Forest, CA 92630

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Eagan Avenatti, LLP** | Case number *(if known)* |
|---|---|---|
| | Name | |

**3.104** Nonpriority creditor's name and mailing address

The X Law Group

1910 Sunset Blvd
Suite 450
Los Angeles, CA 90026

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

Unknown

**3.105** Nonpriority creditor's name and mailing address

Thomas J Berger MD
2451 Brickell Avenue
#12-C
Miami, FL 33129

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

Unknown

**3.106** Nonpriority creditor's name and mailing address

Thomas West
West Payment Center
PO Box 6292
Carol Stream, IL 60197

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

Unknown

**3.107** Nonpriority creditor's name and mailing address

Unisearch
PO Box 11940
Olympia, WA 98508

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

Unknown

**3.108** Nonpriority creditor's name and mailing address

Universal Protection Service
PO Box 732565
Dallas, TX 75373-2565

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

Unknown

**3.109** Nonpriority creditor's name and mailing address

US Legal Support Inc
PO Box 864407
Orlando, FL 32886-4407

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

Unknown

**3.110** Nonpriority creditor's name and mailing address

Veritext
PO Box 71303
Chicago, IL 60694-1303

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

Unknown

| Debtor | **Eagan Avenatti, LLP** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| 3.111 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Verizon Wireless**
**P.O. Box 660108**
**Dallas, TX 75266-0108**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** __

**Last 4 digits of account number** __

**Basis for the claim:** __

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.112 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Wilentz Goldman & Spitzer PA**
**90 Woodbridge Center Dr**
**Suite 900 Box 10**
**Woodbridge, NJ 07095-0958**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** __

**Last 4 digits of account number** __

**Basis for the claim:** __

Is the claim subject to offset? ■ No  ☐ Yes

---

| **Part 3:** | **List Others to Be Notified About Unsecured Claims** |
|---|---|

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

---

| **Part 4:** | **Total Amounts of the Priority and Nonpriority Unsecured Claims** |
|---|---|

5. **Add the amounts of priority and nonpriority unsecured claims.**

| | | | Total of claim amounts |
|---|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ | 538,346.48 |
| **5b. Total claims from Part 2** | 5b. + | $ | 0.00 |
| **5c. Total of Parts 1 and 2** Lines 5a + 5b = 5c. | 5c. | $ | 538,346.48 |

| Fill in this information to identify the case: |
|---|

Debtor name    **Eagan Avenatti, LLP**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA -

Case number (if known)

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.   **Does the debtor have any executory contracts or unexpired leases?**
   ☑ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
   ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal      Property* (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| 2.1   State what the contract or lease is for and the nature of the debtor's interest<br><br>    State the term remaining<br><br>    List the contract number of any government contract | |
| 2.2   State what the contract or lease is for and the nature of the debtor's interest<br><br>    State the term remaining<br><br>    List the contract number of any government contract | |
| 2.3   State what the contract or lease is for and the nature of the debtor's interest<br><br>    State the term remaining<br><br>    List the contract number of any government contract | |
| 2.4   State what the contract or lease is for and the nature of the debtor's interest<br><br>    State the term remaining<br><br>    List the contract number of any government contract | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name **Eagan Avenatti, LLP**

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA -

Case number (if known) _____

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

### 1. Do you have any codebtors?

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

### 2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G. Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|
| Name | Mailing Address | Name | Check all schedules that apply: |
| 2.1 **Michael Avenatti** | **10000 Santa Monica 21st Floor Los Angeles, CA 90067** | **Jason Frank Law PLC** | ■ D __2.12__ ☐ E/F _____ ☐ G _____ |
| 2.2 **Michael Avenatti** | **10000 Santa Monica 21st Floor Los Angeles, CA 90067** | **Lisa Storie-Avenatti** | ■ D __2.13__ ☐ E/F _____ ☐ G _____ |

**Fill in this information to identify the case:**

Debtor name    **Eagan Avenatti, LLP**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA -

Case number (if known)    _____

☐ Check if this is an amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy                04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

**Part 1:    Income**

1.  **Gross revenue from business**

    ☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From  **1/01/2019** to **Filing Date** | ■ Operating a business<br>☐ Other    _____ | Unknown |
| **For prior year:**<br>From  **1/01/2018** to **12/31/2018** | ■ Operating a business<br>☐ Other    _____ | Unknown |
| **For year before that:**<br>From  **1/01/2017** to **12/31/2017** | ■ Operating a business<br>☐ Other    _____ | Unknown |

2.  **Non-business revenue**
    Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

    ■ None.

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|
| | | |

**Part 2:    List Certain Transfers Made Before Filing for Bankruptcy**

3.  **Certain payments or transfers to creditors within 90 days before filing this case**
    List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

    ■ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| | | | |

4.  **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
    List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed

| Debtor | Eagan Avenatti, LLP | | Case number (if known) | |

or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1.   See Ex 2 of the Separately Filed Add. | | Unknown | **Payments of Other Transfers of Property Made Within 1 Year before Filing This Case that Benefitted Any Insider are listed in detail in Exhibit 2 to the separately filed addendum.** |

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

   ☒ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**
   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

   ☒ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

| **Part 3:** | **Legal Actions or Assignments** |

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
   List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

   ☐ None.

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1.   **Gregory Barela, an individual, and Talitha Barela, an individual v. Michael J. Avenatti, an individual, Eagan Avenatti LLP, a Californa limited liability partnership, Avenatti & Associates, a California Professional Corporation, Ahmed Ibrahim, an individual, John Arden, an individual** **JAMS Ref No. 1200055546** | **Breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, concealment, false promise, conversion, breach of contract, unfair business practices, professional negligence, accounting** | **JAMS Arbitration 555 W 5th St 32nd Floor Los Angeles, CA 90013** | ☒ Pending ☐ On appeal ☐ Concluded |

Debtor   **Eagan Avenatti, LLP**                                         Case number *(if known)* _____

| | Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.2. | **520 Newport Center Drive LLC v. Eagan Avenatti, LLP**<br>30-2018-01014921-CU-UD-CJC | **Unlawful Detainer** | **Orange County Superior Court**<br>**700 Civic Center Drive West**<br>**Central Justice Center**<br>**Santa Ana, CA 92701** | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| 7.3. | **Eagan Avenatti, LLP v. Robert J. Stoll, Jr., an individual; Stoll Nussbaum & Polakov, A California Professional Corporation**<br>30-2011-00483570 | **Breach of contract, etc.** | **Orange County Superior Court**<br>**700 Civic Center Drive West**<br>**Santa Ana, CA 92701** | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.4. | **Geoffrey E. Johnson v. Michael J. Avenatti, an Individual; Avenatti & Associates, APC; Jason M. Frank, an individual; Jason Frank Law, PLLC, a California Corporation; Michael Q. Eagan, an Individual; Scott H. Sims, an individual; Eagan Avenatti, LLP (aka The Trial Group, LLP), a California limited liability partnership; Judith K. Regnier, an individual**<br>30-2019-01076162-CU-PN-CJC | **Breach of fiduciary duty, professional negligence, fraud** | **Orange County Superior Court**<br>**700 Civic Center Drive West**<br>**Santa Ana, CA 92701** | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.5. | **William Parrish, an individual; E. Timothy Fitzgibbons v. Michael Avenatti, individually; Eagan Avenatti, LLP, a California limited liability partnership; Avenatti & Associates, APC, a California professional law corporation; Scott Sims, individually; Alexander Conti; individually**<br>19CV01686 | **Professional negligence, breach of fiduciary duty, fraud-concealment, conversion, promissory estoppel** | **Santa Barbara Superior Court**<br>**1100 Anacapa Street**<br>**Santa Barbara, CA 93121-1107** | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.6. | | **Fraud, conversion, professional negligence** | **555 W 5th St**<br>**32nd Floor**<br>**Los Angeles, CA 90013** | ☑ Pending<br>☐ On appeal<br>☐ Concluded |

**8.  Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

| Debtor | Eagan Avenatti, LLP | | Case number *(if known)* | |
|---|---|---|---|---|

☐ None

| Custodian's name and Address | Describe the property<br>See bankruptcy schedules | Value |
|---|---|---|
| **Brian Weiss**<br>c/o Force Ten Parners<br>20341 SW Birch Street<br>Suite 220<br>Newport Beach, CA 92660 | | **$0.00** |
| | **Case title**<br>Eagan Avenatti, LLP | **Court name and address**<br>United States District<br>Court |
| | **Case number**<br>8:18-cv-01644-VAP-KES | Santa Ana Division<br>411 W 4th St. |
| | **Date of order or assignment**<br>2/15/19 (Receivership Order) | Santa Ana, CA 92701 |

### Part 4:   Certain Gifts and Charitable Contributions

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

### Part 5:   Certain Losses

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

### Part 6:   Certain Payments or Transfers

11. **Payments related to bankruptcy**
    List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

■ None.

| Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

12. **Self-settled trusts of which the debtor is a beneficiary**
    List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
    Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

13. **Transfers not already listed on this statement**
    List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

| Debtor | **Eagan Avenatti, LLP** | Case number *(if known)* |
|---|---|---|

☐ None.

| | Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.1. | **See Ex 2 of the Separately Filed Add.** | **Non-ordinary course transfers (not otherwise listed) are listed in detail in Exhibit 2 to the separately filed addendum.** | | **Unknown** |
| | Relationship to debtor | | | |

---

| Part 7: | Previous Locations |
|---|---|

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| | Address | Dates of occupancy From-To |
|---|---|---|
| 14.1. | **520 Newport Center Drive Suite 1400 Newport Beach, CA 92660** | **Unknown to 10/2018** |
| 14.2. | **450 Newport Center Drive Suite 200 Newport Beach, CA 92660** | **Unknown** |

| Part 8: | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

| Part 9: | Personally Identifiable Information |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.
■ Yes. State the nature of the information collected and retained.

**Name, address, social security number, medical records, litigation files, information on clients, opposing parties and other persons.**
Does the debtor have a privacy policy about that information?
☐ No
■ Yes

---

| Debtor | Eagan Avenatti, LLP | Case number *(if known)* | |
|---|---|---|---|

---

17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?

☐ No. Go to Part 10.

■ Yes. Does the debtor serve as plan administrator?

    ☐ No Go to Part 10.

    ■ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| **Eagan Avenatti, LLP 401k** | EIN:  **320120824** |

    Has the plan been terminated?

    ☐ No

    ■ Yes

---

**Part 10:**  Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

18. **Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None

| | Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1. | **California Bank & Trust**<br>**PO Box 489**<br>**Lawndale, CA 90260** | **XXXX-0321** | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>■ Other **Debtor in Possession** | **November 2018** | **$18,466.07** |
| 18.2. | **California Bank & Trust**<br>**PO Box 489**<br>**Lawndale, CA 90260** | **XXXX-0339** | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>■ Other **Debtor in possession** | **November 2018** | **$3.20** |
| 18.3. | **California Bank & Trust**<br>**PO Box 489**<br>**Lawndale, CA 90260** | **XXXX-4613** | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>■ Other **IOLTA checking** | **November 2018** | **$15,047.53** |
| 18.4. | **California Bank & Trust**<br>**PO Box 489**<br>**Lawndale, CA 90260** | **XXXX-0313** | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>■ Other **Debtor in possession** | **November 2018** | **$4,969.62** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

| Debtor | **Eagan Avenatti, LLP** | Case number *(if known)* |
|---|---|---|

| | Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.5. | **California Bank & Trust**<br>**PO Box 489**<br>**Lawndale, CA 90260** | **XXXX-7849** | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **November 2018** | **$9.87** |

**19. Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☐ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|
| **Affordable Moving & Storage**<br>**PO Box 361**<br>**Garden Grove, CA 92642** | **Brian Weiss, Receiver**<br>**20341 SW Birch Street**<br>**Suite 220**<br>**Newport Beach, CA 92660** | **Office furniture** | ☐ No<br>■ Yes |

**Part 11:    Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None

| Owner's name and address | Location of the property | Describe the property | Value |
|---|---|---|---|
| **Clients of Debtor** | **Iron Mountain Records Management** | **Client files** | **Unknown** |

**Part 12:    Details About Environment Information**

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.  Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

| Debtor | **Eagan Avenatti, LLP** | Case number *(if known)* |
|---|---|---|

■ No.
☐ Yes. Provide details below.

| Case title<br>Case number | Court or agency name and<br>address | Nature of the case | Status of case |
|---|---|---|---|

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and<br>address | Environmental law, if known | Date of notice |
|---|---|---|---|

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and<br>address | Environmental law, if known | Date of notice |
|---|---|---|---|

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
☐ None

| Name and address | | Date of service<br>From-To |
|---|---|---|
| 26a.1. | **Judy Regnier**<br>**4491 Rainbow Lane**<br>**Yorba Linda, CA 92886** | **Unknown - 2/19** |
| 26a.2. | **Marjorie Hendricks**<br>**Hendricks Company**<br>**11777 San Vicente Blvd**<br>**Suite 601**<br>**Los Angeles, CA 90049** | **Unknown** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

■ None

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are<br>unavailable, explain why |
|---|---|

| Debtor | **Eagan Avenatti, LLP** | | Case number *(if known)* | |

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1. | **Brian Weiss**<br>**c/o Force Ten Parners, LLC**<br>**20341 SW Birch Street**<br>**Suite 220**<br>**Newport Beach, CA 92660** | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

■ None

| Name and address |
|---|

### 27. Inventories
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

### 28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Brian Weiss** | **20341 SW Birch Street**<br>**Suite 220**<br>**Newport Beach, CA 92660** | **Receiver** | **0** |

### 29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

☐ No

■ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Michael Avenatti** | | **Managing Partner** | **Unkown - 2/15/19** |

### 30. Payments, distributions, or withdrawals credited or given to insiders
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No

■ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1. | **See Part 2 Items # 4 & 13 attached** | | | |
| | Relationship to debtor | | | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      

Debtor    Eagan Avenatti, LLP _____    Case number *(if known)* _____

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

■ No
☐ Yes. Identify below.

Name of the parent corporation                                    Employer Identification number of the parent
                                                                 corporation

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No
☐ Yes. Identify below.

Name of the pension fund                                          Employer Identification number of the parent
                                                                 corporation

**Part 14:    Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    __September 13, 2019__

_____        __Brian Weiss_____
Signature of individual signing on behalf of the debtor        Printed name

Position or relationship to debtor    __Court Appointed Receiver_____

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
■ No
☐ Yes

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Central District of California -

In re   Eagan Avenatti, LLP
_____

                                            Debtor(s)

Case No.
Chapter       7

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.   Pursuant to 11 U.S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that
     compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to
     be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | 0.00 |
| Prior to the filing of this statement I have received | $ | 0.00 |
| Balance Due | $ | 0.00 |

2.   The source of the compensation paid to me was:

     ☐ Debtor      ■ Other (specify):      **Not applicable.**

3.   The source of compensation to be paid to me is:

     ☐ Debtor      ■ Other (specify):      **Not applicable.**

4.   ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

     ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A
       copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.   In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

     a.   Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
     b.   Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
     c.   Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
     d.   Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
     e.   [Other provisions as needed]

6.   By agreement with the debtor(s), the above-disclosed fee does not include the following service:

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in
this bankruptcy proceeding.

**September 13, 2019**
_____
Date

_____
John P. Reitman
*Signature of Attorney*
**Landau Gottfried & Berger LLP**
**1880 Century Park East**
**Suite 1101**
**Los Angeles, CA 90067**
**(310) 557-0050  Fax: (310) 557-0056**
**jreitman@lgbfirm.com**
*Name of law firm*

---

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| John P. Reitman<br>1880 Century Park East<br>Suite1101<br>Los Angeles, CA 90067<br>(310) 557-0050 Fax: (310) 557-0056<br>California State Bar Number: 80579 CA<br>jreitman@lgbfirm.com | |

☐ *Debtor(s) appearing without an attorney*

■ *Attorney for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA –**

| In re:<br><br>    **Eagan Avenatti, LLP** | CASE NO.:<br>CHAPTER: **7** |
|---|---|
| | **VERIFICATION OF MASTER<br>MAILING LIST OF CREDITORS**<br><br>**[LBR 1007-1(a)]** |
|                                          Debtor(s). | |

Pursuant to LBR 1007-1(a), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of __17__ sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date: **September 13, 2019** _____

                       _____
                       Signature of Debtor 1

Date: _____

                       Signature of Debtor 2 (joint debtor) ) (if applicable)

Date: **September 13, 2019** _____

                       Signature of Attorney for Debtor (if applicable)

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2015*                                        **F 1007-1.MAILING.LIST.VERIFICATION**

.

520 Newport Center Drive LLC
c/o Mark A Kompa Esq
233113 S Plaza Pointe
Suite 100
Laguna Hills, CA 92653


Acamar Investments
John Casperson
999 Third Avenue
Suite 2600
Seattle, WA 98104


Ace Parking Management Inc
610 Newport Center Drive
Suite 50
Newport Beach, CA 92660


Aderant Holdings
LOCKBOX PO Box 931177
Atlanta, GA 31193


Advanced Discovery
PO 102242
Atlanta, GA 30368-2242


Affordable Moving & Storage
PO Box 361
Garden Grove, CA 92642


Ahmed Ibrahim
29 Soho
Irvine, CA 92612


Allied Universal Security Systems
PO Box 732565
Dallas, TX 75373-2565

Alphagraphics
221 King Street
Madison, WI 53703


Andrew Stolper
Frank Simms Stolper LLP
19800 MacArthur Blvd
Suite 855
Irvine, CA 92612


Anthem Blue Cross
PO Box 54630
Los Angeles, CA 90054-0630


AT&T Teleconference Services
PO Box 5002
Carol Stream, IL 60197


Authentic Entertainment Properties
c/o Andrew D Stolper Esq
19800 MacArthur Blvd Ste 855
Irvine, CA 92612


Baker Hostetler
Attn Elizabeth Green
200 S Orange Ave
Suite 2300
Orlando, FL 32801


Baker Keener & Nahra LLP
633 West Fifth Street
Suite 5400
Los Angeles, CA 90071


Barkley Court Reporters
10350 Santa Monica Blvd
Suite 200
Los Angeles, CA 90025-6923

Ben Hyatt
17835 Ventura Blvd
Suite 310
Encino, CA 91316


Burlington & Rockenbach PA
444 W Railroad Ave
Suite 350
West Palm Beach, FL 33401


CA Department of Revenue
CA Franchise Tax Board
PO Box 1468
Sacramento, CA 95812


California Bank & Trust
PO Box 30833
Salt Lake City, UT 84130


California Bank & Trust
Attn David Blackford
11622 El Camino Real
Suite 200
San Diego, CA 92130


California Dept of Tax & Fee Admin
PO Box 942879
Sacramento, CA 94279-0001


Cantral Communications
11830 Pierce Street
Suite 100
Riverside, CA 92505


Carlos Colorado
c/o Hodes Milman LLP
9210 Irvine Center Dr
Irvine, CA 92618-4661

```
Cascade Capital Group
815 First Avenue
#150
Seattle, WA 98104


CCROLA
205 Broadway
Suite 200
Los Angeles, CA 90012


City of Newport Beach
PO Box 3080
Newport Beach, CA 92658-3080


Client 1


Client 2


Client 3


Client 4


Client 5
```

Collision and Injury Dynamics Inc
149 Sheldon Street
El Segundo, CA 90245


Competition Economics LLC
2000 Powell Street
Suite 510
Emeryville, CA 94608


Corey Spound & Michael Spound
c/o Frank Sims & Stolper LLP
19800 MacArthur Blvd
#855
Irvine, CA 92612


County of Orange
PO Box 4515
Santa Ana, CA 92702


County of Orange
Attn Treasurer-Tax Collector
PO Box 1438
Santa Ana, CA 92702


Cox Communications
PO Box 53280
Phoenix, AZ 85072-3280


CrossPlans
23041 Avenida de la Carlota
Suite 300
Laguna Hills, CA 92653


Damon Rogers
c/o X-Law Group
910 Sunset Blvd
Suite 450
Los Angeles, CA 90026

David Golubchik Esq
Levene Neale Bender Yoo & Brill
10250 Constellation Blvd
Suite 1700
Los Angeles, CA 90067


David W Stewart PhD
13031 Villosa Place #121
Playa Vista, CA 90094


Department of Treasury
Internal Revenue Service
Attn Mee Cha
PO Box 145595 Stop 8420G
Cincinnati, OH 45250-5585


Department of Treasury
Internal Revenue Service
Attn Mee Cha
PO Box 145595  Stop 8420G
Cincinnati, OH 45250-5585


Department of Treasury
Internal Revenue Service
S Muhammad PO Box 145595 Stop 8402G
Cincinnati, OH 45250-5585


Dept of Treasury
Internal Revenue Service
Attn Maria R Galvan
1919 Smith Street M/S 5024 HOU
Houston, TX 77002


Dept  of the Treasury IRS
Ogden, UT 84201-0013


Developing Opportunities
& Solutions LLC
611 South Main Street
#400
Grapevine, TX 76051

Eisenhower Carlson PLLC
Wells Fargo Plaza
Suite 1200 1201 Pacific Ave
Tacoma, WA 98402


Employers Preferred Insurance Co
PO Box 53089
Phoenix, AZ 85072


Employment Development Department
Bankruptcy Group MIC 92E
P O Box 826880
Sacramento, CA 94280-0001


Employment Development Department
P O Box 989061
West Sacramento, CA 95798-9061


Esner Chang & Boyer
234 East Colorado Blvd
Suite 750
Pasadena, CA 91101


Esquire Deposition Solutions
2700 Centennial Tower 101
Marrietta Street
Atlanta, GA 30303


Executive Presentations
915 Wilshire Blvd
Suite 1700
Los Angeles, CA 90017


F Timothy Fitzgibbons
William Parrish
c/o Cappello & Noel LLP
831 State Street Suite 210
Santa Barbara, CA 93101

FedEx
PO Box 7221
Pasadena, CA 91109-7321


File & Serve Xpress
PO Box 679058
Dallas, TX 75267-9058


First Legal Records
PO Box 749469
Los Angeles, CA 90074-9469


Force Ten Partners LLC
20341 SW Birch
Suite 220
Newport Beach, CA 92660


Franchise Tax Board
Bankruptcy Section MS A 340
PO Box 2952
Sacramento, CA 95812


Garrett Mosier Griffith Sistru
6201 Oak Canyon
#100
Irvine, CA 92618


Gass Weber Mullins LLC
309 N Water St
Milwaukee, WI 53202


Geoffrey E Johnson
c/o Callahan & Blaine APLC
3 Hutton Centre Drive
Ninth Floor
Santa Ana, CA 92707

Gerald Tobin
2014 Edgewater Drive #169
Orlando, FL 32804


Green Street Advisors
660 Newport Center Drive
Suite 800
Newport Beach, CA 92660


Gregory and Talitha Barela
c/o Larson O Brien LLP
55 South Flower St
Suite 4400
Los Angeles, CA 90071


HSNO
PO Box 51067
Los Angeles, CA 90051-5367


Humberto R Gray
11726 San Vicente Blvd
Suite 670
Los Angeles, CA 90049


iManage LLC
PO Box 71701
Chicago, IL 60694


Innovative Computing Systems
2780 Skypark Dr
Suite 125
Torrance, CA 90505


iNSERViO3
18013 Sky Park Cir
Irvine, CA 92614

```
Internal Revenue Service
S Muhammad PO Box 145595 Stop 8420G
Cincinnati, OH 45250-5585


Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346


International Personnel
Protection Inc
PO Box 92493
Austin, TX 78709


Intl Church of the Foursquare
100 Bayview Circle
Suite 2600 Dept 8
Newport Beach, CA 92660


Isaac Marcushamer
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131


Jack Cross & Associates Inc
9070 Irvine Center Drive
Suite 220
Irvine, CA 92618


Jams
PO Box 845402
Los Angeles, CA 90084-5402


Jason Frank Law PLC
19800 MacArthur Blvd
Suite 855
Irvine, CA 92612
```

Jason Frank Law PLC
Frank Sims Stolper LLP
19800 MacArthur Blvd
Suite 855
Irvine, CA 92612


John C Crotts Consulting
688 Serotina Court
Mount Pleasant, SC 29464


Judicate West
1851 East First Street
Suite 1600
Santa Ana, CA 92705


KCC
222 N Pacific Coast Hwy
3rd Floor
El Segundo, CA 90245


KNJ Ventures
1106 A Broadway
Santa Monica, CA 90401


L Lin Wood PC
1180 West Peachtree Street
Suite 2400
Atlanta, GA 30309


Landau Gottfried & Berger LLP
1880 Century Park East
Suite 1101
Los Angeles, CA 90067


Lewis Roca Rothgerber
3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169

Lisa Storie-Avenatti
3419 Via Lida 610
Newport Beach, CA 92663


Litigation Services
3700 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169


Mark S  Horoupian Esq
Sulmeyer Kupetz
2424 SE Bristol St
Suite 300
Newport Beach, CA 92660


Martindale-Hubbel
PO Box 59757
Los Angeles, CA 90074-9757


Mehler & Hagestrom
1660 West 2nd Street
Suite 780
Cleveland, OH 44113-1455


Michael Avenatti
10000 Santa Monica
21st Floor
Los Angeles, CA 90067


Momentum Engineering Corp
2862 Columbia Street
Torrance, CA 90503


Najah J  Shariff  Esq
United States Attorney s Office
Federal Building
300 North Los Angeles Street
Los Angeles, CA 90012

Nationwide Legal LLC
1609 James M Wood Blvd
Los Angeles, CA 90015


Norell Consulting Inc
218 Catherin Park
Glendora, CA 91741


Office of Administrative Hearings
2349 Gateway Oaks Dr
Suite 200
Sacramento, CA 95833


Pacer
PO Box 71364
Philadelphia, PA 19176-1364


Paperstreet Web Design
219 SW 17th Street
Fort Lauderdale, FL 33315


Personal Court Reporters Inc
14520 Sylvan Street
Van Nuys, CA 91411


PitneyBowes Global Fin Services LLC
PO Box 371887
Pittsburgh, PA 15250


Poyner Spruill LLP
PO Box 1801
Raleigh, NC 27602-1801

Purchase Power
P O  Box 371874
Pittsburgh, PA 15250


Raines Feldman
18401 Von Karman Ave
Suite 360
Irvine, CA 92612


Rest Your Case Evidence Storage
6364 Irwindale Road
Irwindale, CA 91702


Ricoh USA Inc
PO Box 31001-0850
Pasadena, CA 91110-0850


Robert J Stoll Jr
Stoll Nussbaum & Polakov APC
c/o Keathley & Keathley LLP
2030 Main Street Suite 210
Irvine, CA 92614


Scott Sims
Frank Sims Stolper LLP
19800 MacArthur Blvd
Suite 855
Irvine, CA 92612


Shred-It USA
PO Box101007
Pasadena, CA 91189-1007


Simpson Deposition
1314 E Chapman Ave
Orange, CA 92866

```
SoCal Subpoena
115 Pine Avenue
Suite 320
Long Beach, CA 90802


Software Technology LLC
1621 Cushman Drive
Lincoln, NE 68512


Special Delivery Service Inc
5470 LBJ Freeway
Dallas, TX 75240


Staples
PO Box 83689
Chicago, IL 60696-3689


State of CA Employment Development
Lien Group MIC 92G
PO Box 826880
Sacramento, CA 94280


Stephanie Clifford


Suzy Quinn
c/o John Migotsky
95 Christopher Street
#14D
New York, NY 10014


The Irvine Company
PO Box 841387
Los Angeles, CA 90084-1387
```

The Montage Laguna Beach
Finance Dept
30801 South Coast Highway
Norwalk, CA 90651


The Montlake Group LLC
16639 Sunset Blvd
Pacific Palisades, CA 90272


The Neurobehavioral Clinic
13 Orchard Road
Suite 103
Lake Forest, CA 92630


The Peoples Bank
Biloxi Mississippi
152 Lameuse Street
Biloxi, MS 39530-4214


The X Law Group
1910 Sunset Blvd
Suite 450
Los Angeles, CA 90026


Thomas J Berger MD
2451 Brickell Avenue
#12-C
Miami, FL 33129


Thomas West
West Payment Center
PO Box 6292
Carol Stream, IL 60197


Unisearch
PO Box 11940
Olympia, WA 98508

United States Department of Justice
Ben Franklin Station
PO Box 683
Washington, DC 20024


Universal Protection Service
PO Box 732565
Dallas, TX 75373-2565


US Legal Support Inc
PO Box 864407
Orlando, FL 32886-4407


Veritext
PO Box 71303
Chicago, IL 60694-1303


Verizon Wireless
P O  Box 660108
Dallas, TX 75266-0108


Wilentz Goldman & Spitzer PA
90 Woodbridge Center Dr
Suite 900 Box 10
Woodbridge, NJ 07095-0958

| Attorney or Party Name, Address, Telephone & FAX Nos., and State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **John P. Reitman**<br>**1880 Century Park East**<br>**Suite1101**<br>**Los Angeles, CA 90067**<br>**(310) 557-0050 Fax: (310) 557-0056**<br>California State Bar Number: **80579 CA**<br>jreitman@lgbfirm.com | |
| ☑ *Attorney for:* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

</div>

| In re:<br>    **Eagan Avenatti, LLP**<br><br><br>                                                   Debtor(s),<br><br>                                                   Plaintiff(s),<br><br><br><br><br><br><br>                                                   Defendant(s). | CASE NO.:<br>ADVERSARY NO.:<br>CHAPTER:    **7**<br><br>**CORPORATE OWNERSHIP STATEMENT**<br>**PURSUANT TO  FRBP 1007(a)(1)**<br>**and 7007.1, and LBR 1007-4**<br><br>[No hearing] |

*Pursuant to FRBP 1007(a)(1) and 7007.1, and LBR 1007-4, any corporation, other than a governmental unit, that is a debtor in a voluntary case or a party to an adversary proceeding or a contested matter shall file this Statement identifying all its parent corporations and listing any publicly held company, other than a governmental unit, that directly or indirectly own 10% or more of any class of the corporation's equity interest, or state that there are no entities to report. This Corporate Ownership Statement must be filed with the initial pleading filed by a corporate entity in a case or adversary proceeding. A supplemental statement must promptly be filed upon any change in circumstances that renders this Corporate Ownership Statement inaccurate.*

I,    John P. Reitman                                            , the undersigned in the above-captioned case, hereby declare
            *(Print Name of Attorney or Declarant)*
under penalty of perjury under the laws of the United States of America that the following is true and correct:

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                                                                **F 1007-4.CORP.OWNERSHIP.STMT**

[Check the appropriate boxes and, if applicable, provide the required information.]

1.       I have personal knowledge of the matters set forth in this Statement because:

          ☐ I am the president or other officer or an authorized agent of the Debtor corporation

          ☐ I am a party to an adversary proceeding

          ☐ I am a party to a contested matter

          ☑ I am the attorney for the Debtor corporation

2.a.   ☑ The following entities, other than the debtor or a governmental unit, directly or indirectly own 10% or more of any class of the corporation's(s') equity interests:

       **Avenatti & Associates, A Professional Corporation**

  b.   ☐ There are no entities that directly or indirectly own 10% or more of any class of the corporation's equity interest.

**September 13, 2019**
Date

By: _____
      Signature of Debtor, or attorney for Debtor

Name:   **John P. Reitman**
        Printed name of Debtor, or attorney for Debtor

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                                     **F 1007-4.CORP.OWNERSHIP.STMT**

# EXHIBIT 4

1 | JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
2 | MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
3 | LANDAU LAW LLP
2338 Manning Ave.
4 | Los Angeles, California 90064
Telephone: (310) 557-0050
5 | Facsimile: (310) 557-0056

6 | Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
7 | Chapter 7 Trustee for Eagan Avenatti, LLP

8

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

11 | In re | Case No.: 8:19-bk-13560-SC

12 | EAGAN AVENATTI, LLP, | Chapter 7

13 | Debtor. | Adv. No.:

14 | | **COMPLAINT FOR AVOIDANCE AND RECOVERY OF VOIDABLE TRANSFERS**

15 | RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,

16 |

17 | Plaintiff,

18 |

19 | v.

20 | MICHAEL Q. EAGAN; THE LAW OFFICES OF MICHAEL Q. EAGAN,

21 |

22 | Defendants.

23

24

25

26

27

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plaintiff is Richard A. Marshack, chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Eagan Avenatti, LLP ("EA"). As the Trustee was not appointed until after EA filed bankruptcy on September 13, 2019 (the "Petition Date"), the Trustee does not have personal knowledge of the facts alleged below and therefore alleges those facts based upon the following: EA's bank records, information in the public record concerning EA, Michael J. Avenatti ("Avenatti") and his other related entities, information in the public record concerning defendants, information obtained from other proceedings in which EA, Avenatti or his other related entities were involved and information obtained from former clients of EA.

## JURISDICTION AND VENUE

1. In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Santa Ana Division of the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, because the claims asserted arise under Title 11 of the United States Code or arise in or relate to the Chapter 7 case of the debtor, EA, currently pending in the Bankruptcy Court as Case No. 8:19-bk-13560-CB ("EA Bankruptcy Case"). The outcome of this adversary proceeding will have a significant effect on the Estate because it asserts claims for the return of property or the recovery of the value of assets fraudulently transferred by EA at the direction of its managing partner and affects the amount of money available for distribution to creditors of the Estate. The claims for relief in this Complaint constitute a core proceeding under 28 U.S.C. § 157(b)(2)(H). Regardless of whether this is a core proceeding, consent is given to the entry of final orders and judgment by the Bankruptcy Court. Defendants are notified that Fed. R. Bankr. P. 7012(b) requires defendants to state whether defendants do or do not consent to the entry of final orders and judgment by the Bankruptcy Court.

2. Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the EA Bankruptcy Case is pending in this district and division. This Court also has personal jurisdiction over defendants.

/ / /

/ / /

/ / /

Landau Law LLP
Attorneys at Law
Los Angeles, California

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PARTIES**

3.   Plaintiff, Richard A. Marshack, is the chapter 7 trustee of the EA Estate.

4.   Defendant Michael Q. Eagan ("Eagan") is an individual with a residence address in Riverside County, California.

5.   Defendant the Law Offices of Michael Q. Eagan, LLP ("LOMQE"; and together with Eagan the "Eagan Parties" or "defendants") is a legal entity with a registered address with the California State Bar in San Francisco, California and operates as a law firm for Eagan.

**GENERAL ALLEGATIONS**

6.      EA was a California based litigation law firm formed in August 2007.  At any given time, EA employed between seven to nine attorneys, and primarily handled plaintiff contingency matters, whereby the firm only received legal fees after a case was resolved in favor of EA's client.

7.      Eagan and Avenatti (along with O'Malley) were the sole founding partners in EA, then known as Eagan O'Malley & Avenatti, LLP ("EOA").  Pursuant to the EOA partnership agreement, Eagan contributed only nominal cash as capital for the firm.  Moreover, he was not expected to, nor required to, have any day-to-day role in the management or operations of the firm.  Instead, Eagan's stated role was to provide high level legal skills, advice, and business generation on behalf of the firm.  The EOA partnership agreement further provided that to provide strong incentives for the origination of business by its founding partners, Eagan would be entitled to 25% of the legal fees paid to the firm (after the payment of any referral fees to outside counsel) for any business brought to the firm by him during his tenure with the firm and Avenatti would be entitled to 15% of the legal fees paid to the firm (after the payment of any referral fees to outside counsel) for any business brought to the firm.  Those terms were predicated on Eagan's background, contacts and highly regarded legal reputation which Avenatti and O'Malley believed might draw potential clients to the firm.

8.      In December 2010, O'Malley left EOA.  In July 2011, O'Malley commenced litigation against his former partners alleging, among other things, breach of the EOA partnership agreement and breach of fiduciary duty.  That dispute was settled in August 2015.

/ / /

3

9.      In January 2011, Avenatti purportedly assumed control over the management of EOA and the name of the firm was changed to EA. From at least January 1, 2012, and at all relevant times thereafter, Avenatti held himself out as the managing partner of EA and owner at least 75% of the firm directly or indirectly through his personal corporation, Avenatti & Associates, APC ("A&A"). As EA's managing partner, Avenatti at all relevant times was an individual who controlled EA's business and had full access to its business and financial records (including its banking records).

10.      Avenatti has claimed that Eagan ceased his limited role at EA by not later than February 16, 2012. Notwithstanding that claim, however, Avenatti and Eagan continued to communicate with each other regarding EA's business and financial affairs; those communications included Avenatti causing EA to periodically send Eagan accounts payable, accounts receivable, and general ledger reports from 2012 through at least August 2014. During that same time, Eagan also communicated with other attorneys who worked at EA regarding its business and litigation matters and other professionals who performed services for EA and received communications from third-party attorneys who with EA jointly represented the same clients in certain litigation matters.

11.      As a result of the information he received, as set forth above, Eagan knew or should have known by not later than August 2012, that EA and Avenatti had potentially serious financial issues relating to tax liabilities and the claim that EA had refused to pay a more than $5 million contingency fee owed its co-counsel in a settled case, Stoll, Nussbaum & Polakov APC (the "Stoll Firm"). Moreover, in February 2014, Eagan learned from Wilson & Ratledge, PLLC that Avenatti had caused EA to refuse to pay it a significant contingency fee earned from their joint representation of a client in another case and had asserted that Eagan was still a 25% owner of EA. That same month, Eagan learned that EA was delaying the payment of a multi-million-dollar bonus owed to one of its attorneys, Jason Frank, through his loan out company Jason Frank Law ("JFL"). Nevertheless, Eagan continued to permit Avenatti to practice law under the name "Eagan Avenatti" until the firm was placed into receivership in February 2019.

12.      Prior to EA's receivership and the subsequent commencement of California State Bar administrative proceedings and federal criminal proceedings against him, Avenatti was an attorney of national notoriety, including previously having acted through EA as class-counsel in cases such as

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

1    *Bahamas Surgery Center, LLC v. Kimberly-Clark Corporation, et al.* (involving defective surgical

2    gowns) and *Greco v. NFL* (a series of consolidated lawsuits relating to Super Bowl XLV in Dallas,

3    Texas) and representing high profile clients such as Stephanie Clifford (also known as "Stormy

4    Daniels") and the alleged victims of R&B artist R. Kelly.

5         13.    EA received substantial revenue from its operations but also incurred substantial

6    liabilities.  For example, in June 2011, EA was sued by its former co-counsel in a case, the Stoll

7    Firm.  The Stoll Firm alleged that, in the case where it and EA had been co-counsel, EA had

8    received the entire settlement payment of $39 million from the defendants and had paid itself,

9    another law firm, and the clients, but had wrongfully retained $5,465,314 to which the Stoll Firm

10   claimed entitlement under a written client engagement agreement and an attorney fee-sharing

11   agreement.  At all times between June 2011 and the Petition Date (defined below), the Stoll Firm

12   was seeking payment from EA of the $5,465,314 in fees and costs allegedly owed under those

13   agreements, plus punitive damages, interest, etc. That claim was allowed by a Bankruptcy Court

14   order entered November 2, 2020.  Main Case Doc 235.

15        14.    In 2012, EA began to default on its tax obligations.  For example, EA failed to file

16   its partnership tax returns for 2011 and 2012 with the Internal Revenue Service (the "IRS") until

17   March and October of 2014, respectively.  EA simply never filed partnership tax returns with the

18   IRS for tax years 2013 onwards.  EA also failed to pay its annual limited partnership fee to the

19   California Franchise Tax Board (the "FTB") for 2011 and for every year from 2013 onwards.

20        15.    At the same time that EA was defaulting on its tax obligations and allegedly in

21   possession of more than $5 million in stolen money, Avenatti caused EA to disburse a substantial

22   amount of EA funds (either directly or through A&A or another of Avenatti's companies) to fuel

23   Avenatti's personal expenses and support his opulent lifestyle, for example: (i) Avenatti's

24   acquisition of a coffee company, owner of the "Tully's" coffee chain, which Avenatti operated

25   through a company owned by him called Global Baristas US LLC ("Global Baristas"); (ii) Porsche

26   GT3 and Mercedes-AMG GT3 auto racing through another company owned by him GB Autosport,

27   LLC and other entities which owned, maintained and operated Porsche and Mercedes race cars for

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Avenatti's personal use in the United States and Europe;[1] (iii) a Ferrari for Avenatti's personal use (at approximately \$4,000 a month); (iv) Avenatti's acquisition of an indirect ownership interest in a private jet through Passport 420, LLC; (v) shopping sprees at Neiman Marcus and other luxury retail stores (court records document American Express charges between \$60,000 and \$70,000 a month); (vi) an ocean front residence in Laguna Beach, California purchased for \$7.2 million in 2011 and sold for \$12.6 million in 2015; (vii) lavish trips to Mexico, Paris, and the French Riviera; (viii) making deposit and rent payments under an agreement to purchase a home on Lido Isle in Newport Beach, California for \$15.75 million (which purchase never closed); and (ix) making substantial improvements to both the Laguna Beach house and the Lido Isle house.

16.    Given that EA was expending exorbitant amounts, directly or indirectly, to support Avenatti's opulent lifestyle and that EA received no benefit from the expenditures, it is unsurprising that EA ended up in financial difficulties. Those difficulties manifested both in nonpayment of additional debts and in EA seeking to obtain loans to fund its operations.

17.    On February 15, 2014, EA failed to pay the annual profit bonus due to Jason Frank Law, PLC ("JFL") for 2013 under an independent contractor agreement between EA and JFL. EA subsequently failed to pay substantial additional amounts to JFL under the same agreement, leading to JFL eventually obtaining a \$10 million judgment for amounts EA failed to pay JFL from 2014 through 2016.

18.    At or around the same time that EA failed to pay the 2013 bonus to JFL, Avenatti was seeking a loan for EA from The Peoples Bank ("Peoples Bank"), a bank located in Mississippi. Avenatti stated that the loan was primarily for "working capital" for EA. Avenatti submitted fraudulent documents to the bank to obtain the loan, including a balance sheet that overstated EA's bank account balance by approximately \$450,000, and a fake partnership tax return that overstated EA's 2012 income by approximately \$8 million. Even with the rosier picture of EA's finances painted by the false documents, the bank required collateral pledges and a personal guaranty to make a short-term loan of \$2.75 million to EA. The first Peoples Bank loan was issued on March

---

[1] EA also purchased a Porsche GT3 race car on Avenatti's behalf.

6

14, 2014 and had a maturity date of June 15, 2014.

19. The first Peoples Bank loan was repaid from the proceeds of a settlement achieved by EA on behalf of a client in May 2014. Just six months later, in November 2014, Avenatti was again seeking a substantial loan from Peoples Bank for EA's "case costs and working capital." Avenatti requested a $2.5 million line of credit, and again submitted fraudulent documents to the bank in support of the request, including a balance sheet that overstated EA's bank account balance by approximately $700,000. However, again, even with the falsely optimistic picture of EA's finances, the bank required guaranties and pledges to secure the loan, and ultimately approved only a $500,000 one-year term loan, rather than the $2.5 million line of credit requested by Avenatti.

20. The second Peoples Bank loan was issued on December 12, 2014. The loan was secured by an assignment of the first $500,000 in attorneys' fees EA was due to receive from a specific case. EA received those fees in or around February 2015 but did not pay any portion of the fees towards the Peoples Bank loan. Nor did EA repay the loan by its maturity date of December 12, 2015. It was only after the bank repeatedly demanded payment from Avenatti and threatened to send the loan to collections, that EA finally repaid the second Peoples Bank loan, approximately four months later.

21. As set forth above, by the beginning of 2015, EA had already defaulted on multiple tax obligations, was subject to a more than $5 million claim asserted by the Stoll Firm, was failing to pay substantial amounts owed to JFL, and had fraudulently obtained multiple loans to finance its operating costs. EA's inability to keep its "head above water" financially resulted in ever more desperate measures in 2015. In the first quarter of 2015, EA stopped paying payroll taxes to the IRS. Between 2015 and 2017, EA accrued approximately $2.4 million in unpaid payroll taxes – including approximately $1.3 million in trust fund taxes that EA had withheld from employees' checks but never sent to the IRS. EA also stopped paying taxes to the California Employment Development Department (the "EDD") in the first quarter of 2015. At the same time, EA stopped paying multiple trade creditors (e.g., providers of professional services associated with EA's law practice).

/ / /

7

22.    By September 13, 2015, EA was generally not paying its debts as they became due. Several of the creditors who were not being paid have held unsecured claims against EA continuously from at least September 13, 2015, through the Petition Date, including but not limited to the Stoll Firm, JFL, the IRS, the FTB, the EDD, and Baker, Keener & Nahra, LLP.  These creditors hold claims that are allowable in the EA Bankruptcy Case under 11 U.S.C. § 502.

23.    The avoidable transfers that are alleged in this Complaint could not reasonably have been discovered by these creditors or EA's other creditors until less than one year before the Petition Date.  The transfers at issue are payments of money between private parties, so there is no public record of those transfers from which a creditor could have learned of their existence. Instead, a creditor would have to acquire access to EA's bank statements and other financial records to learn of the transfers at issue and their fraudulent nature.  Given Avenatti's willingness to falsify EA financial documents (as described above in connection with the Peoples Bank loans and as described below in connection with the first EA bankruptcy case) and his extreme resistance to producing accurate EA financial documents (as described below in connection with the JFL arbitration and the receivership proceeding), the creditors holding unsecured claims had no reasonable ability to obtain the accurate financial records of EA and other information relating to its clients recoveries necessary to discover the transfers at issue and their fraudulent nature.

24.    In 2016, JFL filed an arbitration claim against EA for amounts owed under the agreement between JFL and EA.  Since some of the amounts payable to JFL were based on the amount of EA's revenue, the agreement entitled JFL to receive various EA financial documents for the period from 2013 onwards.  JFL had been informally seeking those documents from Avenatti for years without success.  It wasn't until JFL filed the arbitration proceedings and EA was ordered by the arbitration panel to produce financial records that EA produced any such records to JFL. Even then, EA refused to provide complete documentation (for example, although redaction was not permitted, EA redacted numerous entries on the bank statements that it provided).  Ultimately, EA's persistent refusal to comply with discovery orders caused the arbitration panel to impose heavy sanctions on EA.

/ / /

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

25.     In February 2017, the arbitration panel ordered Avenatti and two other individuals knowledgeable about EA's finances to appear for depositions on or before March 3, 2017.  The order made clear that the panel would consider the imposition of severe sanctions (including $10,000 in sanctions against each individual personally) if Avenatti and the other individuals failed to comply with the order.  Rather than appearing to give testimony regarding EA's finances, Avenatti orchestrated the filing of an involuntary bankruptcy case against EA in the Middle District of Florida on March 1, 2017, to stay the arbitration proceedings.

26.     On March 10, 2017, Avenatti consented in the involuntary bankruptcy case to EA being placed into Chapter 11 bankruptcy, and the case was subsequently transferred to the Honorable Catherine E. Bauer in the Central District of California on May 16, 2017 (*In re Eagan Avenatti, LLP*, Case No. 8:17-bk-11961-CB) ("2017 Bankruptcy").

27.     EA's Schedules of Assets and Liabilities filed in the 2017 Bankruptcy listed approximately $19 million of unsecured debts owed by EA to approximately 33 different creditors – without including any amounts owed to the Stoll Firm or JFL, or the millions of dollars that Avenatti had stolen from EA clients.

28.     The 2017 Bankruptcy was dismissed on March 15, 2018, as part of a structured settlement approved by the bankruptcy court.  That structured settlement required EA, following the dismissal of the bankruptcy, to pay certain debts it owed to creditors, including the IRS, JFL, and various other creditors.  Avenatti caused EA to misappropriate client funds to make the initial payment due under the settlement.  Specifically, on March 14, 2018, EA received on behalf of one of its clients a settlement payment of approximately $8 million.  Rather than paying the entire amount to the client, as it was obligated to do, Avenatti caused EA to transfer $2,828,423 of the client funds to the law firm representing Avenatti in the 2017 Bankruptcy.  The law firm then distributed these funds to (i) the IRS, as the initial payment towards its claim against EA, (ii) EA's counsel in the 2017 Bankruptcy, and (iii) counsel for the Official Committee of Unsecured Creditors in the 2017 Bankruptcy.

29.     EA did not make any of the other payments owed under the settlement, except for a payment of $75,000 to the IRS.  As a result of EA failing to make any payments to JFL, the

9

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   bankruptcy court entered a judgment in favor of JFL and against EA in the amount of $10 million

2   on May 22, 2018.

3        30.    JFL's judgment against EA was registered before the United States District Court

4   for the Central District of California on August 31, 2018 and was assigned to Chief Judge Virginia

5   A. Phillips [*In re Eagan Avenatti*, 8:18-cv-01644-VAP-KES].

6        31.    As part of the district court proceeding, JFL moved for the appointment of an

7   independent receiver for the assets of EA.  Avenatti stipulated to the appointment of Brian Weiss

8   as the Receiver for EA.  Pursuant to that stipulation, on February 13, 2019, the District Court

9   entered a Receivership and Restraining Order against EA and Avenatti.

10        32.    Throughout the Receivership, Avenatti attempted to impede the Receiver in

11   recovering EA financial documents, first stating that he would turn over such documents, and then

12   later stating that he did not know where they were.  In or about April of 2019, it was discovered

13   that Avenatti had caused EA's computer servers containing EA's books and records and other

14   financial data to be moved to an off-site storage facility but refused to disclose this information to

15   the Receiver for months.  Eventually, when the Receiver located those servers, they were turned

16   over to the U.S. Government in connection with criminal charges against Avenatti.  Once the

17   Receiver (and then later the Trustee) recovered the servers and forensic copies of the data

18   contained therein, it was not possible to access the data due to the significant cost in doing so, and

19   the fact that EA had only nominal available funds (the remainder had been "removed" by

20   Avenatti).

21        33.    On March 22, 2019, the United States Attorney for the Central District of California

22   filed a criminal complaint against Avenatti, initiating the criminal case known as *U.S. v. Avenatti*,

23   United States District Court for the Central District of California, SACR19-00061-JVS ("California

24   Criminal Case").[2]  The complaint in the California Criminal Case charged Avenatti with wire fraud

25

26   ---

   [2]  This case is defined as the "California Criminal Case" to differentiate it from the two separate criminal cases pending

27   against Avenatti in New York.  On February 14, 2020, a jury in the Southern District of New York found Avenatti
guilty of transmission of interstate communications with intent to extort (18 U.S.C. § 875(d)); attempted extortion (18

28   U.S.C. § 1951); and honest services wire fraud (18 U.S.C. § 1342, 1346) in *United States v. Avenatti*, No. 1:19-CR-373-
PGG.  These charges are in connection with Avenatti's attempted extortion of Nike, Inc. for over $20 million.

for wrongfully diverting to his personal use millions of dollars belonging to EA's clients, willfully causing EA to not pay approximately $2.4 million in payroll taxes to the IRS, including $1,279,001 in trust fund taxes that had been withheld from EA employees' paychecks, causing EA to not file tax returns for the 2013 through 2017 tax years, bankruptcy crimes, bank fraud and other crimes. On April 4, 2019, the Grand Jury in the California Criminal Case indicted Avenatti on 36 counts for, *inter alia*, wire fraud, tax evasion, tax fraud, bank fraud, aggravated identity theft, bankruptcy crimes, perjury, and the theft of millions of dollars from EA's former clients. The California Criminal Case is still pending.

34. On September 13, 2019 (the "Petition Date"), Brian Weiss, as the Receiver for EA, filed a voluntary petition for relief for EA under Chapter 7 of Title 11 initiating this bankruptcy case.

35. On September 13, 2019, Brian Weiss, as the Receiver for EA, filed a voluntary petition under Chapter 7 of Title 11 initiating this bankruptcy case.

***Transfers made by EA to the Eagan Parties***

36. Between June 28, 2013, and November 9, 2016, Avenatti caused EA to transfer $1,257,619.34 to Eagan and $31,823.55 to LOMQE ("EA Transfers"). These transfers were made at a time when the Eagan Parties purportedly no longer had any connection with and performed no work for EA. As a result, EA (and its creditors) received no value in exchange for the EA Transfers to the Eagan Parties. A spreadsheet cataloging the EA Transfers is attached as **Exhibit 1**.

## FIRST CLAIM FOR RELIEF

**(Against Defendants, To Avoid 7-Year Transfers under 11 U.S.C. §§ 544(a), (b) and Cal. Civ. Code §§ 3439.04(a)(1), 3439.07, and 3439.09(a), (c))**

37. The Trustee incorporates by reference and realleges paragraphs 1-36 of this Complaint.

38. During the seven-year period immediately preceding the Petition Date, Avenatti directed and caused EA to make transfers of its property, including money, to or for the benefit of defendants (in each instance, the transfers made to LOMQE also were made for the benefit of Eagan), as listed in **Exhibit 1**. Those transfers are referred to herein as the "7-Year Transfers."

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

39.     The 7-Year Transfers were made by EA with the actual intent to hinder, delay, or defraud its creditors.  Specifically, Avenatti caused EA to make these transfers to or for the benefit of defendants to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA, even though Avenatti knew that EA was subject to substantial creditor claims and the transfers reduced the amount of funds available to pay these creditors and knew or consciously or recklessly chose to ignore facts known to him that strongly suggested that EA was in default on multiple obligations.  Specifically, at all times during the seven-year period, the Stoll Firm was asserting a claim of more than $5 million against EA based on EA's alleged theft of money owed to it; EA owed money to the FTB; and EA was late in filing IRS returns, not filing IRS returns, and/or failing to pay its tax obligations to the IRS.  As described above, during the seven-year period, EA defaulted on numerous other obligations, accrued millions of dollars of unsecured debt, wrongfully withheld more than a million dollars in trust fund taxes EA collected from its employees but failed to remit to the IRS, and ultimately misappropriated millions of dollars of client funds to pay a small portion of its accrued debts.

40.     Defendants did not take any of the 7-Year Transfers in good faith/EA did not receive reasonably equivalent value in exchange for the 7-Year Transfers.  Specifically, defendants knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that the value, if any, that defendants provided in exchange for those payments were not for the benefit of and did not benefit EA or its creditors, and that such value, if any, conferred no or less than reasonably equivalent value upon EA or its creditors.

41.     At all relevant times, the 7-Year Transfers were avoidable under California Civil Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include, without limitation, JFL, the Stoll Firm, the IRS, the FTB, the EDD, and Baker, Keener & Nahra, LLP.

42.      For the reasons described above, the avoidable transfers alleged in this claim for relief could not reasonably have been discovered by these creditors sooner than one year prior to the Petition Date.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**SECOND CLAIM FOR RELIEF**

**(Against Defendants, To Avoid 4-Year Transfers under 11 U.S.C. §§ 544(a), (b) and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07)**

43.     The Trustee incorporates by reference and realleges paragraphs 1-36 of this Complaint.

44.     During the four-year period immediately preceding the Petition Date, Avenatti directed and caused EA to make transfers of its property, including money, to or for the benefit of defendants (in each instance, the transfers made to LOMQE also were made for the benefit of Eagan), as listed in **Exhibit 1**.  Those transfers are referred to as the "4-Year Transfers."

45.     The 4-Year Transfers were made by EA with the actual intent to hinder, delay, or defraud its creditors.  Specifically, Avenatti caused EA to make these transfers to or for the benefit of the defendants to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA, even though Avenatti knew that EA was subject to substantial creditor claims and the transfers reduced the amount of funds available to pay these creditors and knew or consciously or recklessly chose to ignore facts known to him that strongly suggested that EA was in default on multiple obligations.  Specifically, at all times during the four-year period, the Stoll Firm was asserting a claim of more than $5 million against EA based on EA's alleged theft of money owed to it; EA owed substantial amounts of money to JFL under the independent contractor agreement with JFL; EA was failing to file state and federal tax returns; and EA owed money to multiple taxing authorities, including the IRS, the FTB, and the EDD.  As described above, during the four-year period, EA defaulted on numerous other obligations, accrued millions of dollars of unsecured debt, wrongfully withheld more than a million dollars in trust fund taxes EA collected from its employees but failed to remit to the IRS, and ultimately misappropriated millions of dollars of client funds to pay a small portion of its accrued debts.

46.     Defendants did not take any of the 4-Year Transfers in good faith/EA did not receive reasonably equivalent value in exchange for the 4-Year Transfers.  Specifically, defendants knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that the value, if any, that defendants provided in exchange for those payments was not

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

13

1   for the benefit of and did not benefit EA or its creditors, and that such value, if any, conferred no

2   or less than reasonably equivalent value upon EA or its creditors.

3       47.   At all relevant times, the 4-Year Transfers were voidable under California Civil

4   Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims

5   against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include,

6   without limitation, JFL, the Stoll Firm, the IRS, the FTB, the EDD, and Baker, Keener & Nahra,

7   LLP.

8                         **THIRD CLAIM FOR RELIEF**

9    **(Against Defendants, To Avoid 4-Year Transfers Made While EA Was Insolvent under**

10        **11 U.S.C. §§ 544(a), (b) and Cal. Civ. Code §§ 3439.05 and 3439.07)**

11      48.   The Trustee incorporates by reference and realleges paragraphs 1-36 and 44 of this

12   Complaint.

13      49.   At all times between September 13, 2015, and the Petition Date, EA was insolvent

14   as it was not paying its debts as they became due in the ordinary course of business.  Among other

15   things, EA had not filed federal tax returns since 2013; had not paid its annual limited partnership

16   fee to the FTB for 2011 or 2013 onwards; was not paying payroll taxes to the IRS; was wrongfully

17   retaining trust fund taxes withheld from its employees' checks; was not paying taxes owed to the

18   EDD; was not paying the multimillion dollar claims asserted by the Stoll Firm and JFL; was not

19   paying other unsecured creditors, including but not limited to Baker, Keener & Nahra, LLP; and

20   was more than four months late in repaying the loan from The Peoples Bank that matured on

21   December 12, 2015.

22      50.   EA received less than reasonably equivalent value in exchange for the 4-Year

23   Transfers, because any goods or services provided in exchange for the 4-Year Transfers solely or

24   primarily benefited Avenatti or his other entities rather than EA.

25      51.   At all relevant times, the 4-Year Transfers were voidable under California Civil

26   Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims

27   against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include,

28   without limitation, JFL, the Stoll Firm, the IRS, the FTB, the EDD, and Baker, Keener & Nahra,

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14

LLP.

**FOUTH CLAIM FOR RELIEF**

**(Against Defendants, To Avoid 8-Year Transfers under 11 U.S.C. §§ 544(a), (b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07)**

52.     The Trustee incorporates by reference and realleges paragraphs 1-36 of this Complaint.

53.     During the eight-year period immediately preceding the Petition Date, Avenatti directed and caused EA to make transfers of its property, including money, to or for the benefit of defendants (in each instance, the transfers made to LOMQE also were made for the benefit of Eagan), as listed in **Exhibit 1**.  Those transfers are referred to as the "8-Year Transfers."

54.     The 8-Year Transfers were made by EA with the actual intent to hinder, delay, or defraud its creditors.  Specifically, Avenatti caused EA to make these transfers to or for the benefit of defendants to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA, even though Avenatti knew that EA was subject to substantial creditor claims and the transfers reduced the amount of funds available to pay these creditors and knew or consciously or recklessly chose to ignore facts known to him that strongly suggested that EA was in default on multiple obligations.  Specifically, at all times between January 1, 2012, and the Petition Date, the Stoll Firm was asserting a claim of more than $5 million against EA based on EA's alleged theft of money owed to the Stoll Firm; EA owed money to the FTB; and EA was late in filing IRS returns, not filing IRS returns, and/or failing to pay its tax obligations to the IRS.  As described above, during that eight-year period, EA defaulted on numerous other obligations, accrued millions of dollars of unsecured debt, wrongfully withheld more than a million dollars in trust fund taxes EA collected from its employees but failed to remit to the IRS, and ultimately misappropriated millions of dollars of client funds to pay a small portion of its accrued debts.

55.     Defendants did not take any of the 8-Year Transfers for a reasonably equivalent value and/or did not take such transfers in good faith.  Specifically, defendants knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that the value, if any, that defendants provided in exchange for those payments was not for the benefit of

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

1    and did not benefit EA or its creditors, and that such value, if any, conferred no or less than

2    reasonably equivalent value upon EA or its creditors.

3        56.    At all relevant times, the 8-Year Transfers were voidable under California Civil

4    Code §§ 3439.04(a) and 3439.07 by the IRS.  The IRS holds a substantial unsecured claim against

5    EA that is allowable against its Estate under 11 U.S.C. § 502, and a significant portion of any

6    funds the Trustee recovers on behalf of the Estate will be paid to the IRS on account of its claim.

7    Pursuant to federal jurisprudence, state statutes of repose like those set forth in California Civil

8    Code § 3439.09 are inapplicable to the IRS, and those statutes of repose are likewise inapplicable

9    to the Trustee when standing in the position of the IRS pursuant to 11 U.S.C. § 544(b).  Therefore,

10   under applicable non-bankruptcy law, the Trustee may reach back to January 1, 2012, to avoid and

11   recover the 8-Year Transfers on behalf of the IRS and other creditors of the Estate.

## **FIFTH CLAIM FOR RELIEF**

### **(Against Defendants, To Recover and Preserve Avoided Transfers**

### **under 11 U.S.C. § 550(a)(1), (a)(2), and § 551)**

15
16   57.    The Trustee incorporates by reference and realleges paragraphs 1-36, 38-42, 44-46,
     49-51, and 53-56 of this Complaint.

17   58.    To the extent that defendants are initial transferees of the transfers referred to in

18   this Complaint or a person for whose benefit those transfers were made, and such transfers were

19   avoided, defendants are strictly liable for their return and the Trustee is entitled to recover

20   judgments in such amounts.

21   59.    Under 11 U.S.C. § 551, any transfer avoided is automatically preserved for the

22   benefit of the Estate.

23   **WHEREFORE,** the Trustee, on behalf of the Estate, prays for judgment against

24   defendants as follows:

25   1.    On the First Claim for Relief, for a judgment against defendants that avoids the 7-

26   Year Transfers;

27   2.    On the Second Claim for Relief, for a judgment against defendants that avoids the

28   4-Year Transfers;

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3.      On the Third Claim for Relief, for a judgment against defendants that avoids the 4-Year Transfers;

4.      On the Fourth Claim for Relief, for a judgment against defendants that avoids the 8-Year Transfers;

5.      On the Fifth Claim for Relief, for a judgment against defendants that awards damages in an amount equal to the value of the transfers avoided under the First through Fourth Claims for Relief and/or that preserves the avoided transfers for the benefit of the Estate;

6.      For pre- and post-judgment interest at the applicable legal rate on all damages and sums awarded to the Trustee; and

7.      For such other relief as the Court deems just and proper.

Dated: September 8, 2021          LANDAU LAW LLP

By    /s/ John P. Reitman        
        John P. Reitman
Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT 1

**EA Transfers To Michael Q. Eagan**

| Date | Amount | Transaction Kind | Check # | Account Name |
|---|---|---|---|---|
| 3/31/2015 | $1,250,000.00 | Check | 15123 | EA CBT 2851 |
| 5/6/2015 | $1,841.97 | Check | 15172 | EA CBT 2851 |
| 6/3/2015 | $1,716.35 | Check | 15099 | EA CBT 2851 |
| 10/29/2015 | $4,061.02 | Check | 15321 | EA CBT 2851 |

**Total Transfers from
EA to Michael Q.
Eagan:**          **$1,257,619.34**

**EA Transfers to Law Offices of Michael Q. Eagan**

| Date | Amount | Transaction Kind | Check # | Description | Account Name |
|---|---|---|---|---|---|
| 6/28/2013 | $2,442.57 | Check | 9036 | 9036 \| Law Offices of Michael Q Eagan | EA CBT 8461 Operating |
| 11/20/2013 | $3,436.73 | Check | 9246 | 9246 \| Law Offices Of Michael Q Eagan | EA CBT 8461 Operating |
| 12/9/2013 | $3,769.45 | Check | 9324 | 9324 \| Law Offices Of Michael Q Eagan | EA CBT 8461 Operating |
| 3/24/2014 | $2,247.98 | Check | 9478 | 9478 \| Law Offices Of Michael Q. Eagan | EA CBT 8461 Operating |
| 7/7/2014 | $984.67 | Check | 9738 | 9738* \| Law Offices of Michael Q. Eagan | EA CBT 8461 Operating |
| 1/5/2015 | $3,116.25 | Check | 10031 | 10031 \| Law Offices Of Michael Q Eagen | EA CBT 8461 Operating |
| 2/13/2015 | $2,331.74 | Check | 15083 | 15083 \| Law Offices of Michael Q. Eagan | EA CBT 2851 |
| 10/29/2015 | $1,717.45 | Check | 15334 | 15334* \| Law Offices of Micheal Q. Eagan | EA CBT 2851 |
| 11/9/2015 | $2,209.09 | Check | 15374 | 15374 \| Law Offices of Michael Q. Eagan | EA CBT 2851 |
| 3/1/2016 | $1,924.86 | Check | 15561 | 15561* \| Law Offices Of Michael Q Eagan | EA CBT 2851 |
| 3/29/2016 | $1,262.71 | Check | 15578 | 15578 \| Law Offices Of Michael Q Eagan | EA CBT 2851 |
| 6/16/2016 | $1,615.90 | Check | 15704 | 15704* \| Law Offices of Michael Q. Eagan | EA CBT 2851 |
| 6/29/2016 | $946.13 | Check | 15724 | 15724* \| Law Offices of Michael Q. Eagan | EA CBT 2851 |
| 9/22/2016 | $1,980.98 | Check | 15792 | 15792 \| Law Offices of Michael Q. Eagan | EA CBT 2851 |
| 11/9/2016 | $1,837.04 | Check | 15847 | 15847 \| Law Offices of Michael Q. Eagan | EA CBT 2851 |

**Total Transferred from
EA to Law Offices of
Michael Q. Eagan**          $31,823.55

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Richard A. Marshack, Chapter 7 Trustee for Eagan Avenatti, LLP | DEFENDANTS<br><br>Michael Q. Eagan; The Law Offices of Michael Q. Eagan |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>John P. Reitman, Monica Rieder,<br>Landau Law LLP,2338 Manning Ave., Los Angeles, CA 90064 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only)<br>□ Debtor     □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   □ Other<br>☑ Trustee | PARTY (Check One Box Only)<br>□ Debtor     □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   ☑ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Avoidance and recovery of voidable transfers; 11 U.S.C. 544, 550, 551; Cal. Civ. Code 3439.04, 3439.05, 3439.07, 3439.09

---

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- □ 11-Recovery of money/property - §542 turnover of property
- □ 12-Recovery of money/property - §547 preference
- ☑3 13-Recovery of money/property - §548 fraudulent transfer
- ☑1 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- □ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- □ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- □ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- □ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- □ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- □ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- □ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- □ 61-Dischargeability - §523(a)(5), domestic support
- □ 68-Dischargeability - §523(a)(6), willful and malicious injury
- □ 63-Dischargeability - §523(a)(8), student loan
- □ 64-Dischargeability - §523(a)(15), divorce or separation obligation
  (other than domestic support)
- □ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- □ 71-Injunctive relief – imposition of stay
- □ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- □ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- □ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- □ 01-Determination of removed claim or cause

**Other**
- □ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☑2 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $  1,289,442.89 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Eagan Avenatti, LLP | BANKRUPTCY CASE NO.<br>8:19-bk-13560-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ John P. Reitman | | |
| DATE<br><br>9/8/21 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>John P. Reitman | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| JOHN P. REITMAN (State Bar No. 80579)<br>jreitman@landaufirm.com<br>MONICA RIEDER (State Bar No. 263250)<br>mrieder@landaufirm.com<br>LANDAU LAW LLP<br>2338 Manning Avenue<br>Los Angeles, California 90064<br>Telephone: (310) 557-0050<br>Facsimile: (310) 557-0056<br><br>*Attorney for Plaintiff*  Richard A. Marshack, Ch. 7 Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br>EAGAN AVENATTI, LLP,<br><br><br><br>Debtor(s). | CASE NO.: 8:19-bk-13560-SC<br><br>CHAPTER: 7<br><br>ADVERSARY NO.: |
|---|---|
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br><br>Plaintiff(s)<br><br>Versus<br><br>MICHAEL Q. EAGAN,<br><br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING**<br>**[LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| **Hearing Date:** _____<br>**Time:** _____<br>**Courtroom:** _____ | **Address:**<br>☐ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☒ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
|---|---|

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
Deputy Clerk

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                    Page 2                                    **F 7004-1.SUMMONS.ADV.PROC**

## ATTACHMENT A
### Names of plaintiffs and defendants

| Plaintiff(s):                                                         | Defendant(s):                                                        |
|-----------------------------------------------------------------------|----------------------------------------------------------------------|
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP         | MICHAEL Q. EAGAN;<br>THE LAW OFFICES OF MICHAEL Q. EAGAN              |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____     _____          _____
*Date*                                  *Printed Name*                                        *Signature*

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**EXHIBIT 5**

RICHARD L. KELLNER (State Bar No. 171416)
rlk@kellnerlaw.com
KELLNER LAW GROUP PC
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 780-6759
Facsimile: (310) 277-0635

Special Litigation Attorneys for Plaintiff and
Chapter 7 Trustee, RICHARD A. MARSHACK

D. EDWARD HAYS, #162507
ehays@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
870 Roosevelt
Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

General Counsel for Plaintiff and Chapter 7 Trustee,
RICHARD A. MARSHACK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>          Debtor. | Case No.: 8:19-bk-13560-SC<br><br>Chapter 7<br><br>Adv. No.: 8:20-ap-01086-SC |
| RICHARD A. MARSHACK, Chapter 7 Trustee<br>for Eagan Avenatti, LLP,<br><br>          Plaintiff,<br><br>     v.<br><br>THE X-LAW GROUP, PC, a professional<br>corporation; FILIPPO MARCHINO, an<br>individual; ELBA HERNANDEZ, individually<br>and as personal representative and successor in<br>interest to Andres Ramirez, deceased,<br><br>          Defendants. | **THIRD AMENDED COMPLAINT FOR**<br>**(1) DECLARATORY JUDGMENT;**<br>**(2) QUANTUM MERUIT;**<br>**(3) VIOLATION OF THE**<br>**AUTOMATIC STAY AND OTHER**<br>**COURT ORDERS;**<br>**(4) AVOIDANCE, RECOVERY,**<br>**AND PRESERVATION OF**<br>**FRAUDULENT TRANSFERS** |

Plaintiff is Richard A. Marshack, chapter 7 trustee ("Trustee") for the bankruptcy estate

("Estate") of Eagan Avenatti, LLP ("EA"). Because the Trustee was not appointed until after EA

filed bankruptcy on September 13, 2019 ("Petition Date"), the Trustee does not have personal

knowledge of alleged facts that occurred prior to the Petition Date and therefore makes those

allegations on information and belief.  Such allegations are based on the following:  EA's files; the

records of EA's former equity receiver, Brian Weiss ("Receiver"); the testimony of EA's former

managing partner, Michael J. Avenatti, in various proceedings; information provided by other

attorneys who worked at EA; information provided by counsel for the City of Pasadena in the

Hernandez/Ramirez case; the trial testimony of Filippo Marchino in Michael Avenatti's criminal

trial and deposition testimony in this action; and documents filed with the Los Angeles County

Superior Court, the United States Bankruptcy Court for the Central District of California, and the

United States District Court for the Central District of California.

### JURISDICTION AND VENUE

1.    In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Santa Ana

Division of the United States Bankruptcy Court for the Central District of California ("Bankruptcy

Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, because the

claims asserted arise under Title 11 of the United States Code or arise in or relate to the Chapter 7

case of the debtor, EA, currently pending in the Bankruptcy Court as Case No. 8:19-bk-13560-SC

("EA Bankruptcy Case").  The outcome of this adversary proceeding will have a significant effect

on the Estate because it asserts claims for the establishment and protection of the Estate's property

rights and recovery of the proceeds of those rights.  The claims for relief in this Complaint

constitute a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O).  Regardless of whether

this is a core proceeding, Trustee consents to entry of final orders and judgment by the Bankruptcy

Court.  The defendants are notified that Fed. R. Bankr. P. 7012(b) requires each defendant to state

whether the defendant does or does not consent to entry of final orders or judgment by the

Bankruptcy Court.

2.    Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409

because the EA Bankruptcy Case is pending in this district and division.  This Court also has

personal jurisdiction over defendants.

/ / /

THIRD AMENDED COMPLAINT

## PARTIES

3.   Plaintiff, Richard A. Marshack, is the chapter 7 trustee of the Estate ("Trustee").

4.   Defendant The X-Law Group, PC ("X-Law"), is a California professional corporation with a primary place of business in Los Angeles County, California.  On February 10, 2020, X-Law filed proof of claim number 36-1 in the above-captioned bankruptcy case in the face amount of $28,537,939.33.

5.   Defendant Filippo Marchino ("Marchino") is an individual with a primary place of business in Los Angeles County, California.  He was an attorney who held himself out as a partner of EA and is the president of X-Law.

6.   Defendant Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased ("Hernandez"), is an individual who resides in Los Angeles County, California.  Hernandez is a former client of EA.

## GENERAL ALLEGATIONS

7.   EA was a California based litigation law firm formed in the mid-2000s.  From approximately 2011 through 2019, the managing partner of EA was Michael J. Avenatti ("Avenatti").

8.   EA primarily handled plaintiff contingency matters, whereby the firm customarily received legal fees after a case was resolved in favor of EA's client.  EA's general business practice was to enter into a fee agreement with each client providing that EA would be paid a certain percentage of the proceeds of any judgment or settlement obtained on behalf of the client and granting EA a lien on those proceeds to secure its right to fees.

9.   On October 29, 2015, as UCC Number 157493054432, the Internal Revenue Service ("IRS") recorded a notice of tax lien with the California Secretary of State, stating a total unpaid balance of $329,797.60.

10.   On September 13, 2019, a voluntary Chapter 7 petition was filed for EA, initiating the Bankruptcy Case.  Richard A. Marshack is the duly-appointed and acting Chapter 7 trustee for the Estate.

---

3

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

11. On November 25, 2019, the IRS filed a proof of claim alleging a total unpaid debt owed to the IRS of $1,796,953.31.

**A. Co-Defendant Filippo Marchino was an EA Attorney who Held Himself Out as an EA Partner**

12. Beginning in or around August 2016, co-defendant Filippo Marchino was an attorney at EA who expressly represented himself as an EA partner. In emails, Mr. Marchino would customarily include the following signature block representing himself as an EA partner:



Filippo Marchino, Esq.
Partner

Eagan
Avenatti LLP

1910 W. Sunset Blvd,
Suite 450
Los Angeles, CA 90026

520 Newport Center Drive,
Suite 1400
Newport Beach, CA 92660

Tel +1 (949) 706-7000
Fax +1 (949) 706-7050

13. Marchino sent out emails to publicize that he had joined EA and also identified himself in his e-mail signature block as a "Partner" of EA.

14. Consistent with the foregoing, Marchino used the EA email address of fmarchino@eaganavenatti.com in connection with his work on EA cases, had access to the EA server, worked at EA offices, and had EA legal assistants, law clerks, and attorneys providing him with services in connection with his litigation of EA cases. Notwithstanding his representations to the contrary, Marchino was an EA attorney who informed colleagues and the public that he was an EA partner.

15. Consistent with his employment as an agent, attorney, and/or partner of EA, Marchino received biweekly payments of approximately $4,800 on the EA payroll, at least through July or August 2017, as shown in the monthly operating reports filed in the 2017 Bankruptcy.

16. On August 3-4, 2021, Marchino testified under oath in the criminal trial of Michael Avenatti, case number SACR-19-00061-JVS. Marchino testified that X-Law partnered with EA

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

beginning in late 2012 or early 2013.  Additionally, Marchino testified that eventually, the

employees of X-Law became employees of EA on the EA payroll, and the rent was paid by EA.

**B.      Co-Defendant Marchino Worked on and Supervised Other EA Attorneys in Connection with the Hernandez/Ramirez Action for EA**

17.      From 2016 through at least the summer of 2018, Marchino continued to work as an EA attorney and represent himself as an EA partner.

18.      From 2016 through at least the summer of  2018, Marchino supervised EA's prosecution of numerous EA contingency litigation matters – including the Hernandez/Ramirez matter.

19.      From retention in 2016 through mid-2018, Marchino was the EA attorney supervising the prosecution of the Hernandez/Ramirez matter.  Marchino supervised other EA attorneys who were working on the case – and those attorneys would not only report developments in the case, but also seek his advice and consent regarding many litigation issues.  Marchino edited, prepared, and directed the content and filing of various pleadings in the Hernandez/Ramirez matter.  Marchino supervised and was involved in the propounding and responding of discovery requests, and conducted multiple depositions stating his appearance as an attorney for EA, without any mention of the X-Law Group.

20.      During this time period, Marchino received compensation in the form of paychecks from EA.  Indeed, in post-petition filings in EA's 2017 bankruptcy, Marchino was listed as being on the payroll of EA as an attorney – including the time period when Marchino was handling the Hernandez/Ramirez case for EA.  Specifically, in several monthly operating reports filed by EA, Marchino was listed as receiving biweekly payments for "Payroll" in the approximate amount of $4,877.

21.      On May 25, 2017, X-Law filed a proof of claim in the 2017 Bankruptcy (defined below), seeking an unsecured nonpriority claim of $17,000,000 for "services rendered."  The proof of claim was signed by Marchino.

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

22.     Further, in its Third Chapter 11 Status Report filed on October 18, 2017 in the 2017 Bankruptcy, EA represented that X-Law (of which Marchino is the principal) has unsecured claims against EA's contingency attorneys' fees "from certain of its litigation assets."

23.     As a result, Marchino had a direct financial and professional interest in the recoveries generated by EA cases, including the Hernandez/Ramirez matter.

**C.     EA and Marchino (as an EA Attorney) Performed Significant Work on the Hernandez/Ramirez Matter and, by the Spring of 2018, Had Determined that it Had Substantial Value.**

24.     EA represented Hernandez both in her individual capacity and in her capacity as guardian *ad litem* for her minor son, Andres Ramirez ("Ramirez"), who was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ("Pasadena").

25.     In 2015, Ramirez was 12 years old and was riding his bicycle alongside an unreasonably dangerous traffic intersection located in Pasadena.  Ramirez was critically injured by a car and was in a state of unresponsive wakefulness (commonly referred to as a vegetative state).  Accordingly, Ramirez's mother, Elba Hernandez ("Hernandez") acted as Ramirez's guardian *ad litem* and retained EA to represent him.

26.     In or around June 2016, EA substituted as counsel for Hernandez/Ramirez in place of Jacobs & Jacobs LLP ("Jacobs Firm").  EA rejected the Jacobs Firm's position that the case was not viable against the City of Pasadena, and worked up the case so that it had significant value against the City of Pasadena.

27.     In a letter dated January 20, 2016, the Jacobs Firm stated that it represented "Elba Hernandez, as the mother ***and*** on behalf of Andres Ramirez, a minor."  (Emphasis added).

28.     Trustee is in possession of an executed retainer agreement (in Spanish) executed by Hernandez with EA.  Paragraph 8 of the retainer agreement contains an attorney lien provision.  The Trustee has yet to locate a copy of the retainer agreement that was countersigned by EA.

29.     Hernandez's primary language is Spanish, not English, and EA attorney Carlos X. Colorado acted as primary communicator with Hernandez due to his fluency in the Spanish

THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

language.

30.     The subject case has been litigated in the Los Angeles Superior Court under Case No. BC664114 ("Hernandez Case"), which case remains pending as to only the "driver."  A true and correct copy of the state court docket for the Hernandez Case is attached as Exhibit "1."

31.     Marchino was the attorney in charge of the Hernandez/Ramirez matter from the time of EA's retention in June 2016 through at least August 2018.

32.     The initial trial date of December 5, 2018 was still on as of the Spring of 2018.

33.     Under Marchino's supervision, EA performed substantial work in the litigation of the Hernandez/Ramirez matter.  Among other things, EA performed at least the following legal services on behalf of Ramirez and Hernandez:

a.  filing a tort claim with Pasadena on October 7, 2016, including discussion and legal research regarding the filing of a late claim against the city, including the legal exceptions and excuses for the late-filing, which EA ultimately prevailed on;

b.  when the claim was rejected as untimely (an administrative prerequisite for filing a petition against the city), filing an application with Pasadena for leave to file a late claim;

c.  when that application was denied (i.e. exhausting administrative remedies), filing a petition in the Los Angeles Superior Court ("Superior Court") for leave to file a complaint against Pasadena, which was granted based on arguments generated by EA attorneys;

d.  preparing and filing the operative complaint against Pasadena in the Superior Court;

e.  amending the complaint to add as a defendant Jacquelyn Licea, the driver of the car that struck Ramirez, and corresponding with counsel for Ms. Licea;

f.  conducting independent discovery, including the acquisition and review of public records underlying the accident;

g.  retaining, paying, and working with experts regarding accident reconstruction,

7

THIRD AMENDED COMPLAINT

medical issues, and biomechanical issues;

      h.  making inquiries regarding a life-planning expert for the case;

      i.  conducting depositions of multiple parties, including the two first responders;

      j.  exchanging written discovery; and

      k.  otherwise preparing the case for trial.

34.     Indeed, the billing of costs – including the depositions and experts – were sent directly to Marchino – at his EA law firm and email address.

35.     Notably, Marchino himself conducted the two depositions and stated that he was doing so in his capacity as "Filippo Marchino from Eagan Avenatti." With respect to litigation questions on the case, EA attorneys sought and obtained Marchino's advice and consent.

36.     EA and Marchino were aware of the substantial attorneys' fees that were likely recoverable in the Hernandez Case. In fact, on April 27, 2018, EA filed a Statement of Damages of $116,801,000 for the case. This included a claim of $40 million in future medical expenses and $30 million in emotional distress.

37.     During the litigation, Hernandez advised EA that she did not expect Ramirez to survive the litigation and still had EA continue to provide legal representation in the case (which was expected to solely compensate her for the damages suffered). Ramirez was in a vegetative state with no true hope of recovery. These discussions began no later than May 2018.

38.     Further, Hernandez maintains that she is the sole heir of her son, Andres Ramirez. As a result, she would be the person to receive any financial benefit for the damages recovered in the litigation upon her son's anticipated death.

39.     Thus, both Hernandez and EA were aware that the representation that EA was providing in the litigation was for Hernandez's ultimate benefit.

**D.    The JFL Judgment of $10 Million Against EA.**

40.     On June 1, 2018, less than two weeks after the JFL Judgment was entered against EA, X-Law obtained a substitution of attorney from Avenatti pursuant to which it became counsel in place of EA in the Hernandez Case. Marchino signed the substitution on behalf of X-Law. The substitution was filed with the Superior Court on July 26, 2018, 15 days *after* the Bankruptcy

8

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

1 Court had entered the order restraining EA from "assigning, encumbering, or in any way

2 transferring" its fee rights in a number of cases, specifically including the Hernandez Case.

3      41.    Nonetheless, Marchino continued to work on the Hernandez Case and continued to

4 represent that he was a partner of EA on emails relating to the case – through at least August 2018.

5      42.    Even in October 2018, EA continued to participate in the case including the tender

6 of jury fees by EA and filing of notices, instead of X-Law.

7 **D.**     **The JFL $10 Million Judgment Against EA.**

8      43.    In 2016, an arbitration claim was filed against EA and Avenatti by Jason Frank

9 Law ("JFL"), the professional corporation of Jason Frank.  Mr. Frank is an attorney who

10 previously worked at EA.  EA fared badly in the early stages of the arbitration due to Avenatti's

11 refusal to comply with discovery requests.  Two days before a major discovery deadline in the

12 arbitration, Avenatti orchestrated the filing of an involuntary bankruptcy case against EA in the

13 Middle District of Florida on March 1, 2017, thereby staying the arbitration.

14      44.    Avenatti consented to EA being placed into Chapter 11 bankruptcy on March 10,

15 2017, and the case was subsequently transferred to the Bankruptcy Court in the Central District of

16 California on May 16, 2017 (*In re Eagan Avenatti, LLP*, Case No. 8:17-bk-11961-CB) ("2017

17 Bankruptcy").  Upon the filing of the 2017 Bankruptcy, all assets of EA became property of the

18 bankruptcy estate subject to the automatic stay of 11 U.S.C. § 362.

19      45.    The 2017 Bankruptcy was dismissed on March 15, 2018, as part of a structured

20 settlement approved by the Bankruptcy Court.  That structured settlement required EA, following

21 the dismissal of the bankruptcy, to pay certain debts it owed to creditors, including JFL.  The

22 dismissal order specifically provides that the Court would retain post-dismissal jurisdiction.

23 Shortly after the 2017 Bankruptcy was dismissed, EA defaulted on its obligations under the

24 settlement agreement.  As a result of EA failing to make any of the required payments to JFL, the

25 Bankruptcy Court entered a judgment in favor of JFL and against EA in the amount of $10 million

26 on May 22, 2018 ("JFL Judgment").  JFL promptly created judgment liens on EA's assets in an

27 effort to secure the JFL Judgment.

28

46.     For Marchino, the JFL Judgment of $10 million and the associated judgment liens against EA and its assets directly affected his financial interests.  Until the $10 million JFL Judgment and liens against EA was satisfied, the revenues from EA would first have to be used to satisfy the judgment – before Marchino could receive compensation for his services and any percentage interest in any EA contingency fees.

47.     As a result, as long as the contingency cases remained at EA, Marchino knew that he could potentially be working on matters for which he would receive no compensation – with all of the EA fees/revenues going to satisfy the $10 million JFL Judgment and liens.

48.     Further, at the time the JFL Judgment was entered, Marchino was aware of the substantial potential value of the Hernandez/Ramirez matter – because he was the supervising attorney working on the case through discovery and depositions.  Again, on April 27, 2018, which date was one month after dismissal of the 2017 Bankruptcy and one month prior to entry of the JFL Judgment, EA filed the Statement of Damages of $116,801,000 in the Hernandez Case.

49.     Accordingly, the only way that Marchino could be guaranteed the ability to retain his interest in the Hernandez/Ramirez case would be to prevent the JFL Judgment from being enforced against the fee rights in the case, which was sought to be accomplished by: (a) moving the case to his separate law firm entity – X Law; (b) stripping EA of its interest in the fees on the case; and (c) X-Law continuing to work on the case until its conclusion with substantially the same EA attorneys that previously worked on the case.

50.     Indeed, the same EA attorneys and staff who worked on the Hernandez/Ramirez case while at EA (including Marchino), continued to litigate the case on behalf of X-Law when the case was moved over to that firm.

51.     However, EA/Marchino/X-Law took actions relating to the Hernandez/Ramirez matter that were done in direct violation of Bankruptcy Court Orders.

52.     On June 20, 2018, as Docket No. 470 in the 2017 Bankruptcy (post-dismissal), JFL filed a motion in the 2017 Bankruptcy, seeking assignment of EA's fee rights to JFL to satisfy the JFL Judgment or entry of a restraining order against EA regarding certain specified "Lawsuit Receivables." Among the Lawsuit Receivables were the following two specifically identified

THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

actions:

| | Case Name | Court | Case Number | Date Commenced | Source |
|---|---|---|---|---|---|
| 45. | Ramirez v. City of Pasadena | LASC | BC644094 | 12/20/2016 | Andres Ramirez, a minor |
| 46. | Ramirez v. City of Pasadena | LASC | BC664114 | 6/5/2017 | Andres Ramirez, a minor; Elba Hernandez, Guardian |

53.     On July 11, 2018, as Docket No. 498 in the 2017 Bankruptcy, the Bankruptcy Court entered an order restraining EA from "assigning, encumbering, or in any way transferring any proceeds, attorney's fees, costs, rights to payments and accounts receivable it is or may be entitled to receive from the lawsuits and clients listed on Exhibit A to the Frank Declaration attached to the Motion" (including the two actions identified above) and requiring EA to disclose the receipt of fees by EA or Avenatti ("July 11th Order").  A copy of the July 11th Order is attached as Exhibit "2."  No appeal of the July 11th Order was ever filed.

54.     Marchino had actual knowledge of the July 11th Order and his counsel was served with notice of its entry.

55.     On August 31, 2018, the JFL Judgment was registered before the United States District Court for the Central District of California and was assigned to Chief Judge Virginia A. Phillips [*In re Eagan Avenatti*, 8:18-cv-01644-VAP-KES] ("Judgment Enforcement Case").

56.     As part of the Judgment Enforcement Case, JFL moved for the appointment of an independent receiver for the assets of EA.  Avenatti stipulated to the appointment of Brian Weiss as the equity receiver for EA ("Receiver").  Pursuant to that stipulation, on February 13, 2019, the District Court entered a Receivership and Restraining Order against EA and Avenatti.

57.     On September 13, 2019 ("Petition Date"), the Receiver filed a voluntary petition under Chapter 7 of Title 11, initiating this case.  Richard A. Marshack is the duly appointed and acting Chapter 7 Trustee for the Debtor.

58.     Marchino had knowledge of the JFL arbitration award and the JFL Judgment at or around the time of their entry.  Marchino also had knowledge that the only assets that might be sufficient to satisfy the entire $10 million JFL Judgment would come from EA attorneys' fees

11

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

1   derived from its pending contingency matters.  Marchino also knew or should have known of the

2   prohibition in the July 11th Order that EA was restrained from transferring any rights relating to

3   its receivables, and its application to pending actions in which EA represented clients, including

4   any action on behalf of Ramirez.  In fact, notice of the July 11th Order was served on Marchino's

5   attorneys of record in the bankruptcy, including David Golubchik "on behalf of Creditor X Law

6   Group" via electronic notice.  *See* 2017 Bankruptcy, Docket No. 508.

7   **E.      X-Law/Marchino Enter Agreements with EA to Circumvent the JFL Judgment**

8          59.      Marchino's scheme was likely hatched even before entry of the JFL Judgment.

9          60.      On February 2, 2018, one of the experts in the Hernandez Case wrote to EA, "I

10   understand that your firm has requested all items from us to be sent to a Los Angeles location: The

11   X Law Group – 1910 W. Sunset Blvd., Suite 450, Los Angeles, CA 90026."  **At the time, it is**

12   **undisputed that EA was the law firm handling the case, and Marchino was the partner in**

13   **charge of the matter.**

14          61.      In fact, during this period of time (approximately 2016 through 2018), EA was

15   paying the rent for X-Law at the address on Sunset Boulevard directly to the landlord, the

16   International Church of the Four Square, despite EA not being a party to the lease agreement.

17          62.      After entry of the JFL Judgment and July 11th Order, and with knowledge of the

18   same, Marchino and EA (by and through Michael Avenatti) entered into a series of agreements

19   with the intent to strip EA of its financial interest in attorneys' fees derived from its large

20   contingency fee cases – and provide them to Marchino without any referral fee or other

21   consideration – in an effort to hinder, delay, and defraud EA's creditors including JFL.

22          63.      Among other things, Avenatti asserted during the 2017 Bankruptcy that EA had

23   entered into an agreement with X-Law under which EA purportedly agreed to assign a portion of

24   its fee rights to X-Law, pay the salaries of X-Law employees, and pay the entire rent for office

25   space shared by EA and X-Law.  In fact, Avenatti testified that during the pendency of the

26   bankruptcy, there were X-Law attorneys who remained on EA's payroll and provided attorney

27   services to EA for EA cases.

28

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

64.     Avenatti and Marchino signed an agreement dated "as of August 1, 2018" under which EA purported to transfer all of its personal property, including the computer servers on which its client files were stored, to X-Law.  This date was after entry of the JFL Judgment and the July 11th Order.

65.     Further, Avenatti and Marchino entered into agreements with clients and others to, through June 2018, have EA fees filtered through a fictitious entity named Avenatti & Associates –despite Marchino's direct knowledge that Avenatti & Associates was a legal fiction and *alter ego* of EA.  In fact, Avenatti & Associates was not licensed with the State Bar of California to provide legal services to clients.  Notwithstanding certain documents reflecting Avenatti & Associates as the law firm entitled to fees, the revenue and property would remain the property of EA.  Avenatti & Associates also did not have an attorney-client trust account.  This was all done in cooperation with Avenatti to defraud EA's creditors, including JFL and the eventual $10 million JFL Judgment.

66.     On July 26, 2018 (after the entry of the $10 million JFL Judgment), Marchino arranged for his separate firm (co-defendant X-Law) to be substituted as counsel in the Hernandez Case.

67.     The substitution was executed on June 1, 2018 by Avenatti and Marchino (**only ten days** after the JFL Judgment was entered), and Marchino continued to work on the Hernandez/Ramirez matter as an EA attorney (representing himself to be an EA partner) through at least August 8, 2018 (weeks after the substitution was filed and entered).

68.     On September 18, 2018**,** Avenatti and Marchino prepared and transmitted a letter ("Fee Waiver Letter") written to "Andres Ramirez, c/o The X-Law Group" – stating that EA was waiving its claim to attorneys' fees for a case that it had been litigating for well over one year because EA had provided a "limited amount of time" on the case.  This was an untrue statement, as EA had provided considerable substantive work in the Ramirez matter, including motion practice, the conduct of depositions, retention and work with experts, the production of documents and other written discovery.  Indeed, the case was being fully "worked up" by EA for trial.

THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

69.     In preparing the Fee Waiver Letter, Avenatti and Marchino intended to strip EA of its right or interest in fees or contingent receivables owed to EA, which constituted property of EA.  These actions were taken with actual intent to hinder, delay, or defraud creditors of EA including JFL.

70.     Additionally, the Fee Waiver Letter was in direct violation of the Court's July 11th Order and constituted an actual and constructive fraudulent transfer.  Moreover, when the Fee Waiver Letter was written, EA and its principals actually knew or should have known of the July 11th Order restraining EA from transferring its fee rights.  The existence of the Fee Waiver Letter was not disclosed to the Receiver prior to bankruptcy or the Trustee after the bankruptcy until September 16, 2020, in connection with X-Law's motion to strike the EA liens.  In other words, Marchino hid and concealed what he knew to be a transfer in contempt of the July 11th Order.

71.     Also, EA was not provided a referral fee by X-Law – which is customarily provided in a situation where (a) it is a high damages case; (b) where the prior law firm had done substantial work on the case; and (c) where there is a "friendly" relationship between the law firms.  X-Law and Marchino were aware that such referral fees are enforceable with client approval – which was not sought by X-Law and Marchino.  Absent Marchino's relationship with EA and Avenatti, and absent EA's actual fraudulent intent to defraud its creditors including JFL, EA would have sought to negotiate and receive a referral fee as part of the transition of the case to a new firm.

72.     There is no reason to believe that Hernandez would have rejected the provision of a referral fee to EA if that referral fee would not reduce the total amount of attorneys' fees that would be charged in the case.

73.     Notwithstanding the purported substitution, on November 19, 2018, EA filed and served a notice of case management conference on behalf of "Plaintiffs" in the Hernandez/Ramirez Case.

74.     EA also conversed about experts on the case following the substitution.

THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

75. Further, even though he ostensibly claimed to work on the Herandez/Ramirez matter as a partner of X-Law, Marchino continued to work <u>on other EA cases</u> **as an EA attorney** through at least November 2018.

76. At the same time, EA acted as counsel for Marchino and X-Law in an action relating to a fee dispute they had with Dordick Law Corporation in the Los Angeles Superior Court, Case No. BC 689324. The last filing of record that has been located is a February 15, 2019, demurrer that was filed by EA on behalf of X-Law and Marchino in the Dordick action.

**F.      X-Law/Marchino Continue EA's Representation of Hernandez/Ramirez**

77. The EA team working on the Hernandez/Ramirez matter (including Marchino) continued to litigate the case at X-Law.

78. Unfortunately, as anticipated, Ramirez passed away on February 25, 2019. Prior to passing away, Ramirez never fully regained consciousness and persisted in a state of unresponsive wakefulness from November 30, 2015, to February 25, 2019.

79. On April 26, 2019, Hernandez filed an action in the Probate Court of the Los Angeles Superior Court under Case Number 19STPB03950, seeking to be appointed the personal representative of her son's estate ("Probate Action"). Hernandez contends that she is the sole heir and has the sole right to any proceeds generated in the Hernandez Case on behalf of her deceased son.

80. On May 30, 2019, Hernandez was appointed the personal representative of Ramirez's estate – based upon the representation that he had died intestate.

81. On June 12, 2019, the Receiver filed a Notice of Lien in the Hernandez Case – based upon EA's quantum meruit entitlement to fees.

82. Hernandez filed an amended complaint in the Hernandez Case on July 16, 2019, in which she was added as a party and asserted her sole claim to damages that she was the sole heir to son (Ramirez). A true and correct copy of the amended complaint filed by Hernandez on July 16, 2019, is attached as Exhibit "3." Specifically, Hernandez alleged in paragraph 9:

> 9. Plaintiff ELBA HERNANDEZ is the mother of decedent Andres Ramirez. She is also the personal representative of the ESTATE OF ANDRES RAMIREZ and is a successor in interest of Ramirez. She is entitled to bring this

15

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

wrongful death/survivorship action pursuant to Code of Civil Procedure Sections 377.60 and 377.30 on behalf of Plaintiff The Estate of ANDRES RAMIREZ, on behalf of Andres Ramirez, deceased, and on behalf of herself and the other Andres Ramirez heirs. Ramirez died without issue, and ELBA HERNANDEZ would be entitled to Ramirez's estate through the rules of intestate succession."

83.     In order to obtain permission to file the amended complaint, (through X-Law) filed a motion for leave to amend on May 23, 2019.  The motion to amend the complaint requested both permission to "pursue unabated claims" *and* to file additional claims for wrongful death and survival claims.

84.     Upon the filing of Debtor's bankruptcy petition on September 13, 2019, all assets of EA, including any contingent right to payment or creditor claims in probate became property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a), to which the automatic stay of 11 U.S.C. § 362 applied.

85.     From the latter part of 2019 through August 2020, first the Receiver and then the Trustee (by and through his counsel) attempted to get information regarding the status of the Hernandez Case.  In response, X-Law (through Mr. Marchino) denied the existence of any valid lien and even stated that it wanted the Trustee to produce a copy of the retainer – even though X-Law had continued representation of Hernandez (and, until his passing, Hernandez's son).

86.     On August 6, 2020, Mr. Marchino made the following representation to Trustee's counsel:

> I write today to inform you and the Trustee that our case, *The Estate of Andres Ramirez v. City of Pasadena*, has now concluded and the Estate of Andres Ramirez received no net recovery. There being no recovery, the Estate of Eagan Avenatti LLP is not entitled to assert a lien in the matter. . . .

87.     Mr. Marchino's representation and statement on August 6, 2020, was false and deceitful.  In fact, the Hernandez Case was actually settled for approximately $10.35 million – and the attorney fees that X-Law is claiming for the Hernandez Case (that originated and was litigated by EA) is likely in excess of $4 million.

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

88.     The settlement on behalf of Hernandez was intentionally structured so that the EA bankruptcy estate would not receive any portion of the settlement proceeds, or that the EA bankruptcy estate's ability to receive any portion of the proceeds would be greatly diminished. The settlement agreement has been provided to Plaintiff for review under a stipulated protective order and no specific details shall be disclosed herein – except that Plaintiff alleges that the settlement agreement was drafted with the intention of defrauding the bankruptcy estate.

89.     As a wrongful death action, all of Hernandez's recovery is derivative of those to which her son (Ramirez) would have been entitled.

90.     Indeed, Hernandez's claims in the action were expressly (and entirely) based upon her status as the sole heir to Ramirez.

91.     In or about May 2020, a petition was filed by Hernandez in the Probate Action for a Court determination that Hernandez is the sole heir and entitled to all distributions of the Decedent's Estate (as her deceased son's only legal heir).  In the Petition, there is no mention in the Petition about the settlement in the Hernandez Case or EA's claim to fees from settlement proceeds in the Hernandez Case.

92.     The Trustee has no knowledge whether X-Law has already appropriated all of the fees generated in the Hernandez Case, or if the funds remain in an X-Law trust account.

**G.     Other Known Transfers to X-Law**

93.     EA made transfers to X-Law with actual intent to hinder, delay, or defraud its creditors and/or for less than reasonably equivalent value while insolvent including the following transfers identified to date.

94.     EA maintained a business checking account with California Bank & Trust ("CBT"), account number ending in -2851 ("EA Checking Account").

95.     EA also maintained an attorney client trust account with CBT, account number ending in -8671 ("EA Client Trust Account").

96.     On February 9, 2015, a check numbered 15801 was written from the EA Checking Account to X-Law in the amount of $7,500.

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

97.     On April 20, 2015, EA made a $100,000 wire transfer to X-Law from the EA Checking Account.

98.     On September 25, 2015, EA made a $200,000 wire transfer to X-Law from the EA Checking Account.

99.     On February 18, 2016, EA made two separate $13,000 wire transfers to X-Law from the EA Checking Account, for a total transfer of $26,000.

100.    On August 19, 2016, a check numbered 15755 was written from the EA Checking Account to X-Law in the amount of $5,718.17.

101.    On September 12, 2016, EA made a $15,000 wire transfer to X-Law from the EA Checking Account.

102.    On September 13, 2016, EA made a $2,000 wire transfer to X-Law from the EA Checking Account.

103.    On November 8, 2016, a check numbered 15856 was written from the EA Checking Account to X-Law in the amount of $2,800.

104.    On January 25, 2017, the EA Client Trust Account received a wire transfer of $2,750,000 which Trustee is informed and believes was a confidential settlement payment on behalf of an EA client.  On January 26, 2017, EA made a wire transfer of $2,500,000 from the EA Client Trust Account to X-Law.  On the same date, the remaining balance of the settlement payment ($250,000) was transferred to a demand deposit account in the name of EA.

105.    On June 18, 2018 (approximately four weeks after the entry of the JFL Judgment), the EA Client Trust Account received a wire transfer totaling $1,200,000 from an account in the name of "Michael Avenatti, Esq. Attorney Client Trust Account."  On the same date, EA made a wire transfer of $1,000,000 from the EA Client Trust Account to X-Law.  At the end of the day, the balance of the EA Client Trust Account was $100,368.62.  By the end of June, the balance of the EA Client Trust Account was $683.75.  Trustee alleges that the $1 million payment to X-Law was the transfer of an interest of the Debtor in property in that it could not have used funds nominally in its client trust account to pay its debts without having an interest in such funds. Moreover, Trustee alleges that the $1.2 million deposited into the EA Client Trust Account was in

18

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

fact already property of EA that was being held in Michael Avenatti, Esq. Attorney Client Trust Account in an effort to hinder, delay, and defraud EA's creditors.

106.    Marchino testified under oath that the $1,000,000 transfer was for "an accrual of fees owed to the X-Law Group."[1]  At the time, Marchino had constructive and/or actual knowledge of the $10 million JFL Judgment and had already engaged in actions with Avenatti to divert potential EA assets and cases to third parties including himself at the expense of EA's creditors including JFL.

107.    In total, X-Law received no less than $3,500,000 in transfers from the EA Client Trust Account.  Mr. Avenatti is under criminal prosecution in California for the misappropriation of client funds and has been convicted in two separate criminal trials in New York for stealing client property and extortion.

## FIRST CLAIM FOR RELIEF

### (Against Hernandez and X-Law, For Declaratory Judgment

### Under 28 U.S.C. § 2201)

108.    The Trustee incorporates by reference and realleges paragraphs 1-107 of this Third Amended Complaint.

109.    In or around June 2016, EA was retained to represent Hernandez in her capacity as guardian ad litem for her minor son, Andres Ramirez ("Ramirez"), who was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ("Pasadena").

110.    Trustee is in possession of an executed retainer agreement (in Spanish) executed by Hernandez with EA.  Paragraph 8 of the retainer agreement contains an attorney lien provision. Trustee has yet to locate a copy of the retainer agreement that was countersigned by EA.

111.    EA provided representation to Hernandez as a representative of the Andres Ramirez in the Hernandez Case and performed substantial services on her behalf.

---

[1] The answer was stricken from the criminal trial record but not from the transcript.

THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

112.    Trustee, on behalf of the EA bankruptcy estate, has a valid and enforceable quantum meruit claim for services rendered by EA in the Hernandez Case.

113.    The Hernandez Case has settled, and X-Law Group received and/or is in possession of the entirety of the attorneys' fees generated in the Hernandez Case – believed to be in excess of $4 million.  Only the minor portion of the case relating to claims against the driver survive (with limited insurance coverage).

114.    Marchino was the attorney in charge of the Hernandez/Ramirez matter from the time of EA's retention in June 2016 through at least August 2018.

115.    Under Marchino's supervision, EA performed substantial work in the litigation of the Hernandez/Ramirez matter.  Among other things, EA performed at least the following legal services on behalf of Ramirez and Hernandez:

    a.  filing a tort claim with Pasadena on October 7, 2016, including discussion and legal research regarding the filing of a late claim against the city, including the legal exceptions and excuses for the late-filing, which EA ultimately prevailed on;

    b.  when the claim was rejected as untimely (an administrative prerequisite for filing a petition against the city), filing an application with Pasadena for leave to file a late claim;

    c.  when that application was denied (i.e. exhausting administrative remedies), filing a petition in the Los Angeles Superior Court ("Superior Court") for leave to file a complaint against Pasadena, which was granted based on arguments generated by EA attorneys;

    d.  preparing and filing a tort complaint against Pasadena in the Superior Court;

    e.  amending the complaint to add as a defendant Jacquelyn Licea, the driver of the car that struck Ramirez, and corresponding with counsel for Ms. Licea;

    f.  conducting independent discovery, including the acquisition and review of public records underlying the accident;

    g.  retaining, paying, and working with experts regarding accident reconstruction,

20

THIRD AMENDED COMPLAINT

medical issues, and biomechanical issues;

    h.   making inquiries regarding a life-planning expert for the case;

    i.   conducting depositions of multiple parties, including the two first responders;

    j.   exchanging written discovery; and

    k.   otherwise preparing the case for trial.

116.    Indeed, the billing of costs – including the costs of depositions and fees for experts – were sent directly to Marchino at his EA law firm and email address.

117.    Notably, Marchino himself conducted the two depositions and stated that he was doing so in his capacity as an EA attorney.  With respect to litigation questions on the case, EA attorneys sought and obtained Marchino's advice and consent.

118.    EA and Marchino were aware of the substantial attorneys' fees that were likely recoverable in the Hernandez Case.  In fact, on April 27, 2018, EA filed a Statement of Damages of $116,801,000 for the case.  This included a claim of $40 million in future medical expenses and $30 million in emotional distress.

119.    During the litigation, Hernandez advised EA that she did not expect Ramirez to survive the litigation and she still had EA continue to provide legal representation in the case (which was expected to solely benefit her).  Ramirez was in a vegetative state with no hope of recovery.  These discussions began no later than May 2018.

120.    Further, Hernandez maintains that she is the sole heir of her son, Andres Ramirez. As a result, she would financially benefit from any recovery in the litigation upon her son's anticipated death.

121.    Thus, both Hernandez and EA were aware that the representation that EA was providing in the litigation was for Hernandez's ultimate financial benefit.  Pursuant to that understanding, EA continued to provide legal services for Hernandez's ultimate benefit.

122.    Hernandez, in her individual capacity and as the alleged sole heir to Ramirez has benefited from the legal services provided by EA, and was actually represented in her individual capacity by EA.

21

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

123.    EA provided legal services to Hernandez at her explicit and/or implicit request for the legal services.  Even if there were no valid and enforceable contract for EA's representation in the Hernandez Case, the amount owed to EA may still be fixed by the court pursuant to California law including Fam. Code § 6602.

124.    The services provided by EA to Hernandez contributed to a substantial benefit to her, in the full amount of the ultimate recovery in the Hernandez Case, which is believed to be $10.35 million.  The amount of the contribution by EA is subject to further court determination.

125.    X-Law Group and Marchino have disavowed the attorney lien filed by the Trustee in the Hernandez Case (which lien has been stricken by this Court given the Trustee's inability to date to locate a countersigned copy of the retainer agreement), and have stated that they will not provide any payment to the Trustee for EA's quantum meruit claim.  In fact, X-Law Group and Marchino have actually materially lied to the Trustee by falsely stating that there has been no recovery in the Hernandez Case.

126.    The Fee Waiver Letter violated the July 11th Order by seeking to assign, encumber, or in any way transfer or otherwise dispose of specified property of EA without specific authorization by the Court.  At the time the Fee Waiver Letter was prepared, executed, and transmitted, the parties to the Fee Waiver Letter, including Avenatti and Marchino, knew or should have known of the existence, scope, and application of the July 11th Order to the subject matter of the Fee Waiver Letter.

127.    Because the Fee Waiver Letter violated the July 11th Order, any transfer, waiver, assignment, or hypothecation intended to be effectuated by the Fee Waiver Letter and any subsequent actions based thereon was void *ab initio* or voidable as a fraudulent transfer. Specifically, to the extent that Defendants claim that the Fee Waiver Letter resulted in a valid and enforceable waiver of EA's right to any recovery from the Hernandez Case, such argument fails.

128.    Accordingly, an actual controversy has arisen and exists between the Trustee and the Hernandez/the Attorney Defendants concerning EA's right to a portion of the monies recovered from the settlement in the Hernandez Case.

129.    A judicial determination is necessary and appropriate at this time under the

22

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

circumstances so that the parties can ascertain the extent of the Trustee/EA's right to a portion of the proceeds from the settlement of the Hernandez Case.

130.    Trustee seeks a declaratory judgment under 28 U.S.C. § 2201 establishing the reasonable value of fees to which the Estate is entitled.

## SECOND CLAIM FOR RELIEF

### (For Quantum Meruit Against Hernandez)

131.    The Trustee incorporates by reference and realleges paragraphs 1-107 of this Third Amended Complaint.

132.    In or around June 2016, EA was retained to represent Hernandez in her capacity as guardian *ad litem* for her minor son, Andres Ramirez ("Ramirez"), who was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ("Pasadena").  It was also understood by Hernandez and EA that EA's legal services would be provided for her individual benefit.

133.    Trustee is in possession of an executed retainer agreement (in Spanish) executed by Hernandez with EA.  Paragraph 8 of the retainer agreement contains an attorney lien provision. The Trustee has yet to locate a copy of the retainer agreement that was countersigned by EA. Notwithstanding any defect in any retainer agreement between Hernandez and EA (including any failure to have the retainer agreement approved by a court of competent jurisdiction pursuant to California statutes), EA provided substantial legal services to Hernandez both in her individual capacity and in her capacity as guardian *ad litem* for Ramirez.

134.    Marchino was the attorney in charge of the Hernandez/Ramirez matter from the time of EA's retention in June 2016 through at least August 2018.

135.    Under Marchino's supervision, EA performed substantial work in the litigation of the Hernandez/Ramirez matter.  Among other things, EA performed at least the following legal services on behalf of Ramirez and Hernandez:

a.    filing a tort claim with Pasadena on October 7, 2016, including discussion and legal research regarding the filing of a late claim against the city, including the

4872-1160-3755v.4-1015-131.2

legal exceptions and excuses for the late-filing, which EA ultimately prevailed on;

b. when the claim was rejected as untimely (an administrative prerequisite for filing a petition against the city), filing an application with Pasadena for leave to file a late claim;

c. when that application was denied (i.e. exhausting administrative remedies), filing a petition in the Los Angeles Superior Court ("Superior Court") for leave to file a complaint against Pasadena, which was granted based on arguments generated by EA attorneys;

d. preparing and filing a tort complaint against Pasadena in the Superior Court;

e. amending the complaint to add as a defendant Jacquelyn Licea, the driver of the car that struck Ramirez, and corresponding with counsel for Ms. Licea;

f. conducting independent discovery, including the acquisition and review of public records underlying the accident;

g. retaining, paying, and working with experts regarding accident reconstruction, medical issues, and biomechanical issues;

h. making inquiries regarding a life-planning expert for the case;

i. conducting depositions of multiple parties, including the two first responders;

j. exchanging written discovery; and

k. otherwise preparing the case for trial.

136.    Indeed, the billing of costs – including the depositions and experts – were sent directly to Marchino – at his EA law firm and email address.

137.    Notably, Marchino himself conducted the two depositions and stated that he was doing so in his capacity as an EA attorney.  With respect to litigation questions on the case, EA attorneys sought and obtained Marchino's advice and consent.

138.    EA and Marchino were aware of the substantial attorneys' fees that were likely recoverable in the Hernandez Case.  In fact, on April 27, 2018, EA filed a Statement of Damages

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

of $116,801,000 for the case. This included a claim of $40 million in future medical expenses and $30 million in emotional distress

139. During the litigation, Hernandez advised EA that she did not expect Ramirez to survive the litigation and still had EA continue to provide legal representation in the case (which was expected to solely benefit her). Ramirez was in a vegetative state with no hope of recovery. These discussions began no later than May 2018.

140. Further, Hernandez maintains that she is the sole heir of her son, Andres Ramirez. As a result, she would financially benefit from any recovery in the litigation upon her son's anticipated death.

141. Thus, both Hernandez and EA were aware that the representation that EA was providing in the litigation was for Hernandez's ultimate financial benefit. Hernandez, either individually or on behalf of her son Ramirez, requested and received legal services from EA in connection with an accident in which he was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California.

142. Hernandez, in her individual capacity and as the alleged sole heir to Ramirez has benefited from the legal services provided by EA, notwithstanding the filing of an amended complaint after Ramirez passed away on February 25, 2019. The benefit conferred on Hernandez resulted from the substantial litigation efforts of EA prior to Ramirez's death including, without limitation, those alleged herein. The amount of benefit is quantified by the settlement payment(s) from defendants in the Hernandez Case, which Plaintiff is informed and believes are in excess of $10 million.

143. EA provided legal services to Hernandez at her explicit and/or implicit request for the legal services. Even if there were no valid and enforceable contract for EA's representation in the Hernandez Case, the amount owed to EA may still be fixed by the court under California law including pursuant to Fam. Code § 6602.

144. The services provided by EA to Hernandez contributed to a substantial benefit to her, in the full amount of the ultimate recovery in the Hernandez Case, which is believed to be

THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

$10.35 million.  The value of the contribution by EA is subject to further court determination according to proof at the time of trial.

145.     Accordingly, the Estate is entitled to an award of the reasonable value of EA's legal services that benefited Hernandez, from the recovery obtained by Hernandez from Pasadena and/or any other defendants.

146.     To the extent that Hernandez obtains any future recovery from any co-defendant, the Trustee reserves the right to file a claim against Hernandez for such future recoveries.

## THIRD CLAIM FOR RELIEF

### (Against X-Law and Marchino for Violations of Automatic Stay and the July 11th Order – 11 U.S.C. §§ 362, 105)

147.     The Trustee incorporates by reference and realleges paragraphs 1-146 of this Third Amended Complaint.

148.     The July 11th Order qualified as a specific and definite order of the Court which prohibited EA and Avenatti from "assigning, encumbering, or in any way transferring any proceeds, attorney's fees, costs, rights to payments and accounts receivable it is or may be entitled to receive from the lawsuits and clients listed on Exhibit A to the Frank Declaration attached to the Motion."  The July 11th Order specifically applied to the Hernandez Case.

149.     The Fee Waiver Letter violated the July 11th Order, which prohibited Avenatti and any party from transferring (including waiving) any fee rights of EA in the Hernandez Case.  As a violation of a federal court order, the Fee Waiver Letter and any attempt to waive EA's fee rights through the Fee Waiver Letter or any other action, such as the substitution of attorney from EA to X-Law, was void *ab initio* and of no legal force and effect or subject to avoidance as a fraudulent transfer.

150.     On the Petition Date, EA had a right to fees, whether based on contract, claim in probate, or, at a minimum, under a quantum meruit theory in connection with the Hernandez Case and any recoveries therefrom.

151.     EA has a written fee agreement executed by Hernandez which grants EA a right to payment of fees, and includes an attorney's lien provision.

26

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

152.     EA's right to fees and any enforceable lien on the recovery constitutes property of the Estate that is protected by 11 U.S.C. § 362(a)(3).

153.     The automatic stay broadly enjoins any type of action, formal or informal, which interferes with the administration of a bankruptcy estate and bankruptcy estate property.  *Delpit v. Commissioner*, 18 F.3d 768, 771 (9th Cir. 1994).

154.     The Fee Waiver Letter was intended to provide X-Law/Marchino with control over property of the Estate, and the structure of the settlement with the City of Pasadena, was intended to result in the destruction of property of the Estate (i.e. the Estate's contingent right to payment from recoveries in the Hernandez Case based on services rendered).  Trustee alleges that the City of Pasadena conditioned the settlement and $10.35 million payment on releases for the pre-February 2019 claims prosecuted by EA on behalf of Hernandez (i.e. claims prior to Mr. Ramirez's death).

155.     Plaintiff alleges that the case was settled and that X-Law/Marchino received all attorneys' fees likely in excess of $4 million.  Because some portion of the settlement constitutes estate property, X-Law/Marchino have exercised control over and are in possession of property of the Estate.  Any portion of the settlement payment(s) which attorneys (whether it be X-Law or EA or some other attorneys) were not entitled to receive does not constitute property of the Estate.

156.     X-Law/Marchino have failed and refused to turn over any portion of the attorneys' fees to the estate even though such fees are property that the trustee can use for the benefit of the estate.  Plaintiff is informed and believes that Hernandez has no economic interest in the apportionment of attorneys' fees as between X-Law and EA and likely followed the advice of X-Law in apportioning attorneys' fees.

157.     X-Law/Marchino's violations of the automatic stay were willful, because they had knowledge of the existence of both the 2017 Bankruptcy and this current bankruptcy case, and knowledge of the scope, extent, and application of the automatic stay is imputed on Defendants based on their knowledge of the existence of the bankruptcy case.  Additionally, X-Law/Marchino had actual knowledge of the July 11th Order (notice of which was served on Marchino's and X-Law's attorneys of record at the Levene, Neale firm, *see* Docket No. 508 in the 2017 Bankruptcy

27

THIRD AMENDED COMPLAINT

showing electronic service of the July 11th Order completed on attorneys for X Law Group) and knew or should have known that it applied to the Hernandez Case.

158.    As a result of X-Law/Marchino's violations of the stay, the bankruptcy estate has suffered damages including attorneys' fees and costs in seeking to remedy the stay violations.

159.    Plaintiff is entitled to recover all such damages according to proof pursuant to 11 U.S.C. § 105(a).  *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 193 (9th Cir. 1995).

## FOURTH CLAIM FOR RELIEF

**(Against X-Law and Marchino to Avoid, Recover, and Preserve Fraudulent Transfers 11 U.S.C. §§ 544, 548, 550, and 551 and Civil Code § 3439, et seq.)**

160.    The Trustee incorporates by reference and realleges paragraphs 1-146 of this Third Amended Complaint.

161.    EA made transfers of its property to X-Law and Marchino with actual intent to hinder, delay, or defraud creditors including, but not limited to, the following:

   a.   The transfer of one of EA's most valuable cases (the Ramirez/Hernandez action) to X-Law without any consideration or customary referral fee; and

   b.   The EA attempt in September 2018 to "waive" its claim to fees in the Ramirez/Hernandez in violation of the Court's July 11th Order based upon its false statement that EA did no legal work on the case; and

   c.   The June 18, 2018, wire of $1 million to X-Law from the EA Client Trust Account.

162.    On May 22, 2018, the Bankruptcy Court entered a judgment in favor of JFL and against EA in the amount of $10 million ("JFL Judgment").  This judgment was served on X-Law's and Marchino's attorneys – David Golubchik.

163.    Beginning in or around August 2016, co-defendant Filippo Marchino was an attorney at EA who expressly represented himself as an EA partner.  In emails, Mr. Marchino would customarily include the following signature block representing himself as an EA partner:

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2



Filippo Marchino, Esq.
Partner

Eagan Avenatti LLP

1910 W. Sunset Blvd,
Suite 450
Los Angeles, CA 90026

520 Newport Center Drive,
Suite 1400
Newport Beach, CA 92660

Tel +1 (949) 706-7000
Fax +1 (949) 706-7050

164.    Marchino sent out emails to publicize that he had joined EA and also identified himself in his e-mail signature block as a "Partner" of EA.

165.    Consistent with the foregoing, Marchino used the EA email address of fmarchino@eaganavenatti.com in connection with his work on EA cases, had access to the EA server, worked at EA offices and had EA legal assistants, law clerks, and attorneys providing him with services in connection with his litigation EA cases.  **Notwithstanding his representations to the contrary, Marchino was an EA attorney who informed colleagues that he was an EA partner.**

166.    From 2016 through at least the summer of 2018, Marchino continued to work as an EA attorney and represent himself as an EA partner.  Additionally, Marchino formally "partnered" X-Law, his law firm, with EA, including profit-sharing and the full integration of X-Law employees as EA employees.

167.    From 2016 through at least the summer of 2018, Marchino supervised EA's prosecution of numerous EA contingency litigation matters – including the Hernandez/Ramirez matter.

168.    From retention in 2016 through mid-2018, Marchino was the EA attorney supervising the prosecution of the Hernandez/Ramirez matter.  Marchino supervised other EA attorneys who were working on the case – and those attorneys would not only report developments in the case, but also seek his advice and consent regarding many litigation issues.

169.    During this time period, Marchino received compensation in the form of paychecks from EA.  Indeed, in post-petition filings, Avenatti and Marchino were both listed as being on the

29

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

payroll of EA as attorneys – including the time period when Marchino was handling the

Hernandez/Ramirez case for EA.

170.    Further, in its Third Chapter 11 Status Report filed on October 18, 2017, EA

represented that X-Law (of which Marchino is the principal) has unsecured claims against EA's

contingency attorneys' fees "from certain of its litigation assets."

171.    On July 11, 2018, the Bankruptcy Court entered an order that, among other things,

restrained EA from transferring its fee rights in a number of cases (previously defined as the "July

11th Order").  X-Law's and Marchino's counsel were served with notice of entry of the July 11th

Order.

172.    Marchino's law firm and codefendant X-Law also had a close, entangled

relationship with EA such that it should be considered an insider of the Debtor.  For example,

Debtor and X-Law shared office space at 1910 W. Sunset Blvd., Suite 450, Los Angeles, CA –

and Debtor paid the rent for this location on behalf of X-Law from 2016 to 2018 directly to the

landlord.  Marchino also had during this time a personal relationship with Avenatti that extended

beyond their business relationship.

173.    Beyond his close personal relationship with Avenatti, Marchino was an active

participant in, and had actual knowledge of, Avenatti's schemes to divert EA assets and defraud

EA's creditors.

**The Transfer of One of EA's Most Valuable Cases (the Ramirez/Hernandez action) to X-**
**Law Without Any Consideration or Customary Referral Fee.**

174.    First, as noted above, on June 1, 2018 (within days of the May 22, 2018, JFL

judgment being entered), Marchino and Avenatti signed a substitution of counsel for the

Hernandez/Ramirez matter – the first step in their plan for the Hernandez/Ramirez matter to be

switched to Marchino's firm (known as X-Law), but without the customary payment of any

referral fee.

175.    At the time, Marchino was fully aware that the Hernandez/Ramirez had substantial

value to EA in potential attorneys' fees, and that his (and EA's) interest in such fees would be

subordinate to the JFL Judgment that had been most recently entered.  In other words, both EA

30

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

and EA attorney Marchino would be working on a case whose fees could ultimately be paid to satisfy the $10 million JFL judgment.

176.    Indeed, when EA (through Avenatti) executed the substitution of counsel agreement on June 1, 2018 (approximately two weeks before the client was presented with the document for her execution), Marchino was working as an attorney at EA.

177.    At the time, Marchino claims to have been X-Law's only attorney, even though Marchino was then an EA attorney (and had represented in writing that he was an EA partner). Further, the location where X-Law claimed to be operating was an EA office at which EA was obligated to pay rent.

178.    Contrary to custom and practice for the legal profession in Southern California, no referral fee was agreed upon (or even sought) from X-Law – despite the fact that substantial legal work had been done on the case (as detailed above), and Marchino and Avenatti had reason to believe the case could general substantial legal fees and Marchino was representing that he was an EA partner.

179.    On July 26, 2018 (after the entry of the $10 million JFL Judgment), Marchino filed the substitution of attorney with the California Superior Court so that his firm (co-defendant X-Law) would be plaintiff's counsel in the Hernandez Case.

**The Fee Waiver**

180.    On September 18, 2018**,** Avenatti transmitted a letter ("Fee Waiver Letter") written to "Andres Ramirez, c/o The X-Law Group" – stating that EA was waiving its claim to attorneys' fees for a case that it had been litigating for approximately two years because EA had provided a "limited amount of time" on the case.  This was an untrue statement, as EA had provided considerable work in the Ramirez matter.

181.    This was part of a scheme by Avenatti and Marchino to strip EA of its right or interest in fees or contingent receivables owed to EA, which constituted property of EA that should have been available to pay EA's creditors.

THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

182.    Additionally, the Fee Waiver Letter was in direct violation of the Court's July 11th Order and constituted an actual and constructive fraudulent transfer.  Specifically, EA was prohibited from transferring any EA assets without court approval.

183.    Moreover, when the Fee Waiver Letter was written, EA, X-Law and Marchino actually knew and should have known of the July 11, 2018 Order restraining EA from transferring its fee rights without court approval since X-Law's attorney received electronic service of the July 11th Order.

184.    Also, EA was not provided a referral fee by X-Law - which is customarily provided in a situation where (a) it is a high damages case; (b) where the prior law firm had done substantial work on the case; and (c) where there is a "friendly" relationship between the law firms. X-Law and Marchino were aware that such referral fees are enforceable upon client approval – which was not sought by X-Law and Marchino.

185.    There is no reason to believe that Hernandez would have rejected the provision of a referral fee to EA if that referral fee would not reduce the total amount of attorneys' fees that would be charged in the case.  However, the aforesaid scheme to defraud was predicated upon not providing such agreement for the client's approval.

186.    Further, if the Fee Waiver Letter is upheld (i.e. to the extent that it is not void as alleged in the Third Claim for Relief above), it would result in no division of compensation between EA and X-Law based on, among other things, EA's quantum meruit contribution to the result obtained in any future settlement, and constitutes a transfer pursuant to 11 U.S.C. § 101(54).

187.    Marchino was an attorney/partner at EA at the time the JFL Judgment was entered. Irrespective of whether he was an employee or partner of EA, Marchino qualifies as an insider of the Debtor.  X-Law similarly qualifies as an insider of Debtor, as an intimately associated law firm with EA, as detailed above.

188.    In fact, Marchino was the attorney in charge of the Hernandez Case at EA, was paid by EA for his work on the case, had direct knowledge of the substantial potential attorneys' fees that would be generated by EA on the Hernandez Case, had direct knowledge of the high

THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

settlement value of the case, and had a personal interest in the EA attorneys' fees that would be generated by the case.

189.    Thus, one of EA's most potentially valuable assets was transferred to X-Law without consideration with the intent to actually hinder, delay, or defraud JFL and other creditors to which EA owed a debt.

190.    The Fee Waiver Letter was in violation of the July 11th Order and with full constructive and/or actual knowledge of the $10 million JFL Judgment by Avenatti and Marchino.

191.    Additionally, to the extent that X-Law and EA engaged in any transaction whatsoever whereby EA's contingent right to receive compensation from the cases for which it performed valuable services was abandoned in favor of X-Law, such transaction, abandonment, or waiver constitutes a transfer pursuant to 11 U.S.C. § 101(54) to the extent that X-Law asserts that it is entitled to compensation which could otherwise be collected by EA.

192.    The transfer or the Hernandez Case and the waiver of the right to fees occurred after the JFL Judgment was entered and in contempt of the Court's July 11th Order.

193.    The aforesaid transfer and waiver were made with actual intent to hinder, delay, or defraud creditors of the Debtor including, but not limited to both JFL – a creditor of the debtor holding the $10 million JFL Judgment, and the IRS.

194.    The aforesaid transfer and waiver were made without Debtor receiving any value, let alone equivalent value, in exchange for the transfer.

195.    At the time of the transfer and waiver, EA, X-Law, and Marchino believed or reasonably should have believed that the JFL Judgment was beyond the ability of EA to pay the obligation when due.

196.    At the time of the transfer and waiver, Marchino had full knowledge of the value of the Hernandez Case, the JFL judgment against EA, EA's insolvency, and EA's quantum meruit claims as a result of his work on the case as a partner at EA and receipt of service of various pleadings in the 2017 Bankruptcy.

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

**The $1 Million Wire From EA to X-Law on June 18, 2018**

197.　Marchino and Avenatti participated in another scheme to transfer EA assets with the actual intent to hinder, delay, or defraud creditors including JFL with respect to the $10 million JFL judgment.

198.　Marchino and Avenatti were aware as of June 1, 2018, that: (a) the JFL Judgment of $10 million had been entered; and (b) judgment liens against EA would prevent disbursements to Marchino or X-Law through conventional means.  In other words, monies coming into the EA bank accounts would potentially be subjected to the $10 million JFL Judgment.

199.　Additionally, the IRS held a perfected tax lien against all assets of EA pursuant to 26 U.S.C. § 6321 on account of its notice of tax lien filed in October 2015.

200.　At that time – and in anticipation of potential claims against EA – some of the EA cases were being litigated nominally through an entity called Avenatti & Associates APC ("A&A") – which could be nothing more than a dba for EA to practice law:

　　　a.　A&A listed its business as "Eagan Avenatti LLP" in a Statement of Information filed on behalf of A&A with the Secretary of State of California on January 4, 2016.

　　　b.　There were no amendments to the Statements of Information for A&A that changed its listed business to something other than "Eagan Avenatti LLP."

　　　c.　A&A could not legally practice law in California:

　　　　　i.　California Corporations Code § 13404 provides that "no professional corporation shall render professional services in this state without a currently effective certificate of registration issued by the government agency regulating the profession . . . pursuant to the applicable provisions of the Business & Professions Code."

　　　　　ii.　A&A was never registered as a law firm with the California State Bar or as a corporate entity authorized to practice law in California.

　　　d.　A&A listed attorneys were also EA attorneys – paid by EA.

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

e.  EA had full control over all bank accounts under A&A name, and filtered A&A derived attorneys' fees through EA accounts to pay for EA expenses.[2]

201.    This is how attorneys' fees under this scheme were handled.  EA attorneys masquerading as A&A attorneys would transfer attorneys' fees to an EA Client Trust account.  EA would maintain control over those attorneys' fees and use them to pay (from that same EA Client Trust account) its ongoing expenses **and** the satisfaction of EA obligations which Avenatti selected to pay.  Thus, EA retained ownership and possession of the attorneys' fees and used them for its own benefit notwithstanding the nominal involvement of and occasional vesting of legal title to such property and funds in the name of Avenatti & Associates or Michael Avenatti.

a.  It should be noted that such monies were attorneys' fees and not "client monies" – and the Trustee has no information that the monies that are the subject of this claim were not duly earned attorneys' fees and were EA's property and under EA's possession and control.

b.  Specifically, the $1 million in funds transferred to X-Law from the EA Client Trust Account originated from an account in the name of "Michael Avenatti, Esq. Attorney Client Trust Account."  This $1 million was property of EA.

c.  The office address for the Michael Avenatti, Esq. Attorney Client Trust Account was 520 Newport Center Drive Suite 1400, Newport Beach, CA 92660, which was the same office as EA and X-Law.

202.    Even though EA and Avenatti obtained possession and effective control over these attorneys' fees, EA and Avenatti sought to circumvent any judgment attachment by JFL, tax levies by the IRS, and other creditors because such funds did not enter EA's general bank accounts.

---

[2] Trustee further alleges that Avenatti & Associates is subject to and should be ordered substantively consolidated into the EA bankruptcy estate in that its admitted business purpose was the business of EA, it was not authorized to practice law with the State Bar of California, it had no attorney-client trust account, its business affairs are inextricably entangled with EA's financial transactions, and third parties including creditors viewed EA and Avenatti & Associates as a single entity.

35
THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

203.    Marchino was an active participant in and had actual knowledge of this scheme. He worked with Avenatti on cases (through X-Law) in which A&A was listed as counsel.  For example, on June 5, 2018 (again, days after the May 22, 2018, JFL Judgment was entered), Marchino facilitated the execution of a (former) Rule 2-200 agreement so that attorneys' fees derived in the future from that particular case would be paid to the fictional A&A firm (and thus circumvent the EA general account that was subject to the JFL judgment lien).  Again, Marchino entered this transaction with full knowledge that the JFL $10 million judgment could have priority over all payments that would otherwise go to EA.

204.    Marchino also had knowledge that all of A&A's attorneys were EA attorneys and A&A's address was EA's address.  Further, attorney emails on A&A pleadings were to EA email addresses.

205.    On June 11, 2018, JFL filed a Notice of Lien against EA for the $10 million judgment.

206.    On June 13, 2018, Marchino provided wiring instructions to EA for a $1 million wire to be made from EA accounts to X-Law.  During his testimony in the Avenatti criminal trial, Marchino claimed that the $1 million was for payment of his unsecured claim to referrals/sourcing of cases that he had brought to EA.  Under the arrangement, Marchino claims to have a 50% interest in the fees that he referred and/or sourced to EA.  Marchino also signed a proof of claim on behalf of X-Law claiming an outstanding debt of over $28.5 million.

207.    This request was also made when Marchino had constructive and/or actual knowledge of the existence of the JFL $10 million judgment and that EA was not paying its debts as they became due.

208.    In fact, at that time, Marchino admitted in deposition testimony that he was the only attorney at the X-Law firm.

209.    On June 18, 2017, EA wired $1 million to X-Law from the EA Client Trust Account.

THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

210.     This wire was done with actual intent on the part of both Avenatti and Marchino to hinder, delay, or defraud creditors including JFL and in favor of an insider of EA and close personal friend of Avenatti.

211.     The aforesaid transfers and waivers were made without Debtor receiving any value, let alone equivalent value, in exchange for the transfers.

212.     At the time of the transfers and waiver, EA, X-Law, and Marchino believed or reasonably should have believed that the JFL Judgment was beyond the ability of EA to pay the obligation when due.

## Further Evidence of EA, Marchino, and X-Law's Intent To Hinder, Delay or Defraud Creditors of EA

213.     By an agreement dated August 1, 2018, executed by EA (through Avenatti) and X-Law (through Marchino), EA transferred all of its physical assets to X-Law – ostensibly for unsecured claimed obligations that EA owed to X-Law.

214.     This transaction was in direct violation of the Court's July 11th Order (for which Marchino, X-Law and Avenatti had constructive and actual knowledge) that forbade any transfer of EA assets without court approval.  Indeed, Marchino and X-Law's present counsel were served with the July 11th Order – yet X-Law and Marchino's August 1, 2018 agreement directly violated that order by agreeing to transfer all of EA's physical assets.

215.     Again, all of this is further proof of EA, Marchino, and X-Law's intent to and knowledge that such transfers were made to hinder, delay, or defraud EA creditors (including JFL with respect to the JFL $10 million judgment).

216.     Pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and Cal. Civ. Code § 3439.07, the Estate is entitled damages for EA's transfer of the Hernandez matter without any consideration or referral fee (*i.e.*, the referral fee that would customarily be paid for such case transfer).

217.     Pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and Cal. Civ. Code § 3439.07, the waiver of EA's claim to fees should be avoided, recovered, and preserved for the benefit of the Estate.

37

THIRD AMENDED COMPLAINT

4872-1160-3755v.4-1015-131.2

218.     Pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and Cal. Civ. Code § 3439.07, the $1 million wire from EA to X-Law on June 13, 2018, should be avoided, recovered, and preserved for the benefit of the Estate.

219.     Pursuant to Cal. Civ. Code § 3439.07, Plaintiff is further entitled to injunctive and other equitable relief as provided by statute.

**WHEREFORE,** Trustee, on behalf of the Estate, prays for judgment against defendants as follows:

1.     On the First Claim for Relief, for a declaratory judgment against Hernandez and X-Law establishing the amount of fees to which the Estate is entitled and allocating the contingency fee in the Hernandez Case between the Estate and X-Law;

2.     On the Second Claim for Relief, for damages from Hernandez to the Estate in the amount of the benefit conferred on Hernandez by the services performed by EA attorneys, and the various costs expended by EA in connection with the Hernandez Case;

3.     On the Third Claim for Relief, for a determination that the Fee Waiver Letter and all actions taken in violation of the July 11th Order and/or the automatic stay are void *ab initio*, for compensatory damages (including the imposition of reasonable attorneys' fees) for X-Law and Marchino's violations of the automatic stay in amounts to be determined by the Court;

4.     On the Fourth Claim for Relief, the avoidance, recovery, and preservation any and all transfer of assets, including the value of the Hernandez Case in the form of a referral fee that would customarily be paid if sought and the $1 million wire to X-Law on June 18, 2018, and all other relief and remedies as provided under Cal. Civ. Code § 3439 *et seq*. and 11 U.S.C. §§ 544, 548, 550, and 551.  To the extent the Court finds any avoidable transfer on the Fourth Claim for Relief, proof of claim no. 36-1 must be disallowed in its entirety pursuant to 11 U.S.C. § 502(d); and

/ / /

/ / /

/ / /

/ / /

THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

5.      On all claims for relief, to the extent not otherwise requested herein, for such other

and further relief as the Court deems just and proper.

Dated: August 4, 2022                          KELLNER LAW GROUP PC
                                               RICHARD L. KELLNER

                                               In Association with,

                                               MARSHACK HAYS LLP

                                               By ____/s/ D. Edward Hays_____
                                                      D. EDWARD HAYS
                                                      TINHO MANG
                                                      General Counsel for Richard A. Marshack,
                                                      Plaintiff and Chapter 7 Trustee for Eagan
                                                      Avenatti, LLP

39
THIRD AMENDED COMPLAINT
4872-1160-3755v.4-1015-131.2

**EXHIBIT "1"**

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:**  BC664114
ANDRES RAMIREZ VS CITY OF PASADENA

**Filing Courthouse:**  Stanley Mosk Courthouse

**Filing Date:**  06/05/2017
**Case Type:**  Other PI/PD/WD (General Jurisdiction)
**Status:**  Pending

Click here to access document images for this case

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

None

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

A - J   L - R

ABELTIN & MIGOYA LLP - Attorney for Cross-Defendant

ABELTIN JAMES BRUCE - Attorney for Cross-Complainant

AGUADO CARMEN M - Attorney for Defendant

AVENATTI MICHAEL J. ESQ - Attorney for Plaintiff

AVENATTI MICHAEL J. ESQ. - Attorney for Plaintiff/Petitioner

BAGNERIS MICHELE BEAL - Former Attorney for Deft & X-Compl

BURKE WILLIAMS & SORENSEN - Attorney for Defend/XDefd/XComp

BURKE WILLIAMS & SORENSEN LLP - Attorney for Defendant/Respondent

CITY OF PASADENA - Cross-Defendant

CITY OF PASADENA - Defendant

CITY OF PASADENA A PUBLIC ENTITY - Cross-Defendant

CITY OF PASADENA A PUBLIC ENTITY - Cross-Defendant

CITY OF PASADENA A PUBLIC ENTITY - Defendant

DOES 1 TO 100 - Defendant/Respondent

HAMBLET BRIAN I - Attorney for Defendant

HAMBLET BRIAN INMAN - Attorney for Cross-Defendant

HERNANDEZ ELBA - Guardian

**EXHIBIT "1"
PAGE 40**

HERNANDEZ INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE AND SUCCESSOR IN INTEREST TO ANDRES
RAMIREZ DECEASED ELBA - Plaintiff

JACLQUELYN LICEA (DOE 1) - Defendant

JACLQUELYN LICEA DOE 1 - Defendant

JACQUELYN LICEA - Cross-Complainant

JACQUELYN LICEA - Cross-Defendant

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP  A - J  L - R

LICEA AN INDIVIDUAL JACQUELYN - Defendant

LICEA JACQUELYN - Defendant/Cross-Defendant

LICEA JACQUELYN - Cross-Complainant

LICEA JACQUELYN - Cross-Complainant

LICEA JACQUELYN - Cross-Complainant

LICEA JACQUELYN - Cross-Complainant

LICEA JACQUELYN - Cross-Defendant

LICEA JACQUELYN - Cross-Defendant

LICEA JACQUELYN - (DOE 2) - Defendant/Respondent

LICEA JACQUELYN - DOE 2 - Defendant

MARCHINO FILIPPO - Attorney for Plaintiff

MICHELE BEAL BAGNERIS CITY ATTORNEY - Former Attorney for Def/Respondent

PASADENA CITY OF - Defendant and Cross-Complainant

PASADENA CITY OF - Cross-Complainant

PASADENA CITY OF A PUBLIC ENTITY - Defendant

RAMIREZ ANDRES - Minor Plaintiff

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP  A - J  L - R


## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings
Held

### Documents Filed (Filing dates listed in descending order)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

04/30/2020   01/17/2020   08/29/2019   06/05/2019   07/13/2018

**02/07/2022** Request for Dismissal
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**02/04/2022** Request for Dismissal
Filed by JACQUELYN LICEA (Cross-Complainant)

**02/04/2022** Request for Dismissal
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,

EXHIBIT "1"
PAGE 41

deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff);
JACQUELYN LICEA (Cross-Complai

**12/14/2021** Minute Order ( (Order to Show Cause Re: Dismissal in Light of Settlement; Tri...))
Filed by Clerk

**11/04/2021** Minute Order ( (Order to Show Cause Re: Dismissal in Light of Settlement))
Filed by Clerk

**09/20/2021** Minute Order ( (Order to Show Cause Re: Dismissal in Light of Settlement; Tri...))
Filed by Clerk

**07/21/2021** Notice of Ruling
Filed by JACQUELYN LICEA, an individual (Defendant)

**07/08/2021** Minute Order ( (Order to Show Cause Re: Dismissal in Light of Settlement; Tri...))
Filed by Clerk

**04/06/2021** Minute Order ( (Order to Show Cause Re: Dismissal in Light of Settlement; Tri...))
Filed by Clerk

**02/05/2021** Notice of Ruling
Filed by JACQUELYN LICEA, an individual (Defendant)

**02/04/2021** Minute Order ( (Trial Setting Conference; Order to Show Cause Re: Dismissal i...))
Filed by Clerk

**11/06/2020** Minute Order ( (Trial Setting Conference))
Filed by Clerk

**10/30/2020** Notice (Of Striking Of Attorneys' Lien)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**09/25/2020** RETURNED MAIL

**09/16/2020** Certificate of Mailing for ((Non-Appearance Case Review Court Order pursuant to Stipulatio...) of 09/16/2020)
Filed by Clerk

**09/16/2020** Minute Order ( (Non-Appearance Case Review Court Order pursuant to Stipulatio...))
Filed by Clerk

**09/14/2020** Stipulation and Order (Stipulation and Request For Court Order Continuing Hearings Set for September 25,
2020; Order)
Filed by JACQUELYN LICEA, an individual (Defendant)

**09/04/2020** Notice (Notice of Entry of Judgment Or Order)
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/04/2020** Notice (Notice of Entry of Judgment Or Order)
Filed by CITY OF PASADENA, a public entity (Defendant)

**08/20/2020** Request for Dismissal (Cross-complaint by City of Pasadena filed on 10/4/2019)
Filed by Pasadena, City of (Cross-Complainant)

**08/19/2020** Request for Dismissal
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**07/08/2020** Certificate of Mailing for ((Ex-Parte Proceedings to Continue Hearing Date filed on behalf...) of 07/08/2020)
Filed by Clerk

**07/08/2020** Minute Order ( (Ex-Parte Proceedings to Continue Hearing Date filed on behalf...))
Filed by Clerk

**EXHIBIT "1"**
**PAGE 42**

**07/06/2020** Ex Parte Application (To Continue Hearing Date)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   04/30/2020   01/17/2020   08/29/2019   06/05/2019   07/13/2018

**04/30/2020** RETURNED MAIL

**04/16/2020** Certificate of Mailing for ((Non-Appearance Case Review Court Order Continuing Civil, Tria...) of 04/16/2020)
Filed by Clerk

**04/16/2020** Minute Order ( (Non-Appearance Case Review Court Order Continuing Civil, Tria...))
Filed by Clerk

**04/15/2020** Notice (of Continuance of Motion for Court Order to Release Documents)
Filed by JACLQUELYN LICEA (DOE 1) (Defendant)

**04/02/2020** Certificate of Mailing for ((Non-Appearance Case Review Court Order Continuing Civil, Tria...) of 04/02/2020)
Filed by Clerk

**04/02/2020** Minute Order ( (Non-Appearance Case Review Court Order Continuing Civil, Tria...))
Filed by Clerk

**03/25/2020** Minute Order ( (Non-Appearance Case Review))
Filed by Clerk

**03/23/2020** Notice of Ruling
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/20/2020** Plaintiffs' Reply in Support of Motion to Quash Deposition Subpoena Seeking Business Records from Pasadena Unified School District
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**03/20/2020** Plaintiffs' Reply in Support of Motion for Issue Sanctions and Evidence Sanctions Against Defendant City of Pasadena
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**03/16/2020** Declaration (of David Royer ISO City of Pasadena's Opposition to Plaintiff's Motion for Issue)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/16/2020** Declaration (of Brian Hamblet ISO City of Pasadena's Opposition to Plaintiff's Motion for Issue)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/16/2020** Opposition (to Plaintiffs' Motion for Issue Sanctions and Evidence Sanctions)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/16/2020** Declaration (Declaration of Keiko J. Kojima)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/16/2020** Opposition (Response to Separate Statement in Opposition to Motion to Quash)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/16/2020** Response (Response to Separate Statement in Opposition to Motion to Quash)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/11/2020** Declaration (Declaration of James Abeltin in Response to Motion to Quash A Subpoena of School Records)
Filed by JACQUELYN LICEA, an individual (Defendant)

**03/11/2020** Response (Response of Jacquelyn Licea to Motion to Quash Subpoena of School Records)
Filed by JACQUELYN LICEA, an individual (Defendant)

**EXHIBIT "1"**
**PAGE 43**

**03/04/2020** Notice (Notice of Continuance of Motion for A Court Order to Release Documents)
Filed by JACQUELYN LICEA, an individual (Defendant)

**02/28/2020** Objection (Plaintiff's Evidentiary Objections in Opposition To The Evidence Submitted in Support of The Motion
for Filed by Defendant City of Pasadena and Order Thereon)

**02/28/2020** Objection (To Plaintiffs' And Jacquelyn Licea's Evidence In Support of Defendant City of Pasadena''s Motion For
Summary Judgment, or In The Alternative Summary Adj. and Order Thereon)
Filed by CITY OF PASADENA, a public entity (Defendant)

**02/28/2020** Stipulation and Order to use Certified Shorthand Reporter (Ingrid Saracione, CSR No. 11960 for 2/28/2020
Hearing in Department D)

**02/28/2020** Minute Order ( (Hearing on Motion to Bifurcate filed on behalf of Defendant/C...))
Filed by Clerk

**02/21/2020** Declaration (Declaration of Carmen M. Aguado in Support of Defendant City of Pasadena's Reply in Support of
Its Motion for Bifurcation)
Filed by CITY OF PASADENA, a public entity (Defendant)

**02/21/2020** Reply (Defendant City of Pasadena's Reply in Support of Its Motion to Bifurcate)
Filed by CITY OF PASADENA, a public entity (Defendant)

**02/14/2020** Opposition (Plaintiffs' Opposition to Defendant City of Pasadena's Motion to Bifurcate)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**02/05/2020** Notice (Notice of Continuing Motion for a Court Order to Release Documents)
Filed by JACLQUELYN LICEA (DOE 1) (Defendant)

**01/30/2020** Proof of Personal Service
Filed by Pasadena, City of, a public entity (Defendant)

**01/30/2020** Proof of Personal Service
Filed by Pasadena, City of, a public entity (Defendant)

**01/27/2020** Notice of Ruling
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/24/2020** Minute Order ( (Hearing on Motion for Summary Judgment or, in the alternative...))
Filed by Clerk

**01/24/2020** Opposition (Plaintiffs' Opposition to Defendant City of Pasadena's Ex Parte Application for an Order to Advance
the Hearing on Defendant City's Motion to Bifurcate)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**01/23/2020** Opposition (Plaintiffs' Opposition to Defendant Jacquelyn Licea's Ex Parte Application for an Order Advancing
Motion for a Court Order to Release Documents)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**01/23/2020** Plaintiff's Objections to Defendant City of Pasadena's Notice of Errata re Reply in Support of its Motion for
Summary Judgment or, in the Alternative, Summary Adjudication
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/23/2020** Declaration (of Carmen Aguado ISO Ex Parte Application for an Order to Advance Hearing on Motion to
Bifurcate)
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**01/23/2020** Ex Parte Application (of Defendant City of Pasadena for an Order to Advance Hearing on Motion to Bifurcate)
Filed by CITY OF PASADENA, a public entity (Defendant)

EXHIBIT "1"
PAGE 44

**01/22/2020** Notice (of Errata)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/22/2020** Ex Parte Application (Ex Parte for Order Advancing Motion for Court Order to Release Records)
Filed by JACLQUELYN LICEA (DOE 1) (Defendant)

**01/22/2020** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/22/2020** Motion to Quash
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/22/2020** Motion in Limine (No 7)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Declaration (of Carmen M. Aguado in Support)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/21/2020** Motion to Bifurcate
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/21/2020** Motion in Limine (No 13)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 2)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 5)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 6)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 1)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 4)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 3)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 12)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 14)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 9)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 8)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 11)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 10)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Objection (Plaintiff's Objections to Defendant City of Pasadena's Reply Papers Filed in Support of Defendant
City of Pasadena's Motion for Summary Judgment / Adjudication)

EXHIBIT "1"
PAGE 45

Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   04/30/2020   01/17/2020   08/29/2019   06/05/2019   07/13/2018

**01/17/2020** Reply (to Opposition)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/17/2020** Reply (to Separate Statement)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/17/2020** Objection (to Evidence)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/17/2020** Declaration (in Support of Reply)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/17/2020** Reply (in Support of Motion)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/16/2020** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**01/16/2020** Motion for Sanctions
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**01/10/2020** Declaration (Declaration of Edward Ruzak)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**01/10/2020** Declaration (Declaration of Beau LeBlanc)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**01/10/2020** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**01/10/2020** Declaration (Declaration of Andy Beltran)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**01/10/2020** Declaration (Declaration of Damon Rogers)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**01/10/2020** Objection (Plaintiff's Evidentiary Objections In Opposition To City of Pasadena's Motion for Summary Judgment)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**01/10/2020** Opposition (Plaintiff's Opposition To City of Pasadena's Motion for Summary Judgment)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**01/09/2020** Declaration (of James Abeltin Re Opposition to Motion for Summary Judgment)
Filed by JACQUELYN LICEA (Cross-Complainant); JACQUELYN LICEA, an individual (Defendant)

**01/09/2020** Objection (Objections to Evidence Sumitted by City in Support of MSJ)
Filed by JACQUELYN LICEA (Cross-Complainant); JACQUELYN LICEA, an individual (Defendant)

**EXHIBIT "1"**
**PAGE 46**

**01/09/2020** Separate Statement
Filed by JACQUELYN LICEA (Cross-Complainant); JACQUELYN LICEA, an individual (Defendant)

**01/09/2020** Opposition (Opposition to Motion for Summary Judgment)
Filed by JACQUELYN LICEA (Cross-Complainant); JACQUELYN LICEA, an individual (Defendant)

**12/20/2019** Minute Order ( ( Hearing on Ex Parte Application for an Order Shortening Time ...))
Filed by Clerk

**12/19/2019** Declaration ( Of Carmen M Aguado In Support Of Defendant City Of Pasadenas Opposition To Plaintiffs Ex Parte Application For An Order Shortening Time On Plaintiffs 1 Motion To Compel Deposition Of Defendant City Of Pasadena's Pmk 2motion To Compel Deposition Of J)
Filed by CITY OF PASADENA, a public entity (Defendant)

**12/19/2019** Opposition (To Plaintiffs Ex Parte Application For An Order Shortening Time On Plaintiffs 1 Motion To Compel Deposition Of Defendant City Of Pasadenas Pmk 2 Motion To Compel Deposition Of Joaquin Siques 3 Motion To Compel Deposition Of Mark Jomsky 4 Motion To Co)
Filed by CITY OF PASADENA, a public entity (Defendant)

**12/18/2019** Notice of Ruling
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/18/2019** Declaration (of James B. Abeltin in Support of Motion for Court Order to Release Documents)
Filed by JACQUELYN LICEA, an individual (Defendant)

**12/18/2019** Motion for Order (to Release Documents)
Filed by JACQUELYN LICEA, an individual (Defendant)

**12/18/2019** Minute Order ( (Hearing on Ex Parte Application for an Order Shortening Time ...))
Filed by Clerk

**12/17/2019** Declaration (Filippo Marchino in Support of Plaintiffs' Motion to Compel the Persons Most Qualified of Defendant City of Pasadena to Comply with Deposition Notice and for Sanctions)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Motion to Compel (Plaintiffs' Motion to Compel Defendant City of Pasadena's Person Most Qualified to Comply with Deposition Notice and for Monetary Sanctions in the Amount of $2,735.90)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Declaration (Declaration of Filippo Marchino in Support of Plaintiffs' Motion to Compel Joaquin Siques to Comply with Deposition Notice and for Sanctions in the Amount of $3,935.90)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Motion to Compel (Plaintiffs' Motion to Compel Joaquin Siques to Comply with Deposition Notice and for Monetary Sanctions in the Amount of $3,935.90)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Ex Parte Application (for an Order Shortening Time on Plaintiffs' MTC Depo of Def. City of Pasadena's PMK, (2) MTC Depo of Joaquin Siques, (3) MTC Depo of Mark Jomsky, (4) MTC David Royer re Depo Answers/Production, (5) MTC Richard Yee re Depo Answers/Productio)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Declaration (Declaration of Filippo Marchino in Support of Plaintiffs' Motion to Compel Richard Yee's Answers to Deposition Questions and Production of Documents, and for Sanctions in the Amount of $3,068.40)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

EXHIBIT "1"

PAGE 47

**12/17/2019** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Motion to Compel (Plaintiffs' Motion to Compel Richard Yee's Answers to Deposition Questions and Production of Documents, and for Monetary Sanctions in the Amount of $3,068.40)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Declaration (of Filippo Marchino in Support of Plaintiffs' Motion to Compel David Royer's Answers to Deposition Questions and Production of Documents, and for Sanctions in the Amount of $3,068.40)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Motion to Compel (Plaintiffs' Motion to Compel David Royer's Answers to Deposition Questions and Production of Documents, and for Monetary Sanctions in the Amount of $3,068.40)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Declaration (Declaration of Filippo Marchino in Support of Plaintiffs' Motion to Compel Mark Jomsky to Comply with Deposition Notice and for Sanctions in the Amount of $2,135.90)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Motion to Compel (Plaintiffs' Motion to Compel Mark Jomsky to Comply with Deposition Notice and for Sanctions in the Amount of $2,135.90)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**11/13/2019** Proof of Service (not Summons and Complaint)
Filed by JACQUELYN LICEA, an individual (Defendant)

**11/08/2019** Separate Statement
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Declaration (of Mark Jomsky ISO City's MSJ)
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Declaration (of Richard Yee ISO City's MSJ)
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Proof of Personal Service
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Declaration (of David Royer ISO City's MSJ)
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Declaration (of Joaquin Siques ISO City's MSJ)
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Declaration (of Carmen Aguado ISO City's MSJ)
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Exhibit List
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Motion for Summary Judgment
Filed by CITY OF PASADENA, a public entity (Defendant)

**10/10/2019** Answer
Filed by Jacquelyn Licea (Cross-Defendant)

**10/04/2019** Order (Joint Stipulation and Proposed Case Management Order)
Filed by JACQUELYN LICEA, an individual (Defendant)

**10/04/2019** Amended Cross-Complaint ( (2nd))
Filed by JACQUELYN LICEA (Cross-Complainant)

**10/04/2019** Stipulation and Order (to Allow Defendant to File An Amended Answer to Plaintiff's Complaint)
Filed by CITY OF PASADENA, a public entity (Defendant)

**10/01/2019** Notice of Ruling
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/25/2019** RETURNED MAIL

**09/25/2019** RETURNED MAIL

**09/24/2019** Order (Granting City of Pasadena's Ex Parte Application to Continue The Hearing on Defendant City's
Anticipated Motion for Summary Judgment)
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/24/2019** Minute Order ( (Hearing on Ex Parte Application to Continue Hearing on Defend...))
Filed by Clerk

**09/23/2019** Opposition (to Defendant City of Pasadena's Ex Parte Application for an Order to Continue the Hearing on
Defendant City's Anticipated Motion for Summary Judgment)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**09/23/2019** Declaration in Support of Ex Parte Application
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/23/2019** Ex Parte Application (to Continue Hearing on Defendant Citys Anticipated Motion for Summary Judgment)
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/19/2019** Amended Cross-Complaint ( (1st))
Filed by JACQUELYN LICEA (Cross-Complainant)

**09/19/2019** Answer
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/19/2019** Answer
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/19/2019** City of Pasadena's First Amended Cross-Complaint for Indemnity, Declaratory Relief and Contribution; Demand
for Jury Trial
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**09/09/2019** RETURNED MAIL

**09/09/2019** RETURNED MAIL

**09/06/2019** Opposition (to Plaintiff's Ex Parte Application to Compel Production of Documents)
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/06/2019** Minute Order ( (Hearing on Demurrer - without Motion to Strike To Plaintiff's...))
Filed by Clerk

**09/06/2019** Certificate of Mailing for ((Hearing on Demurrer - without Motion to Strike To Plaintiff's...) of 09/06/2019)
Filed by Clerk

**09/06/2019** Minute Order ( (Hearing on Demurrer - without Motion to Strike To Plaintiff's...))
Filed by Clerk

EXHIBIT "1"
PAGE 49

**09/06/2019** Declaration (of Carmen Aguado ISO City of Pasadena's Opposition to Plaintiffs' Ex Parte Application)
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/05/2019** Ex Parte Application (for an Order Compelling Def. to Produce Documents at the Depositions of PMQ)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   04/30/2020   01/17/2020   08/29/2019   06/05/2019   07/13/2018

**08/29/2019** Supplemental Declaration (Of Carmen M. Aguado in Support of Defendant City of Pasadena's Reply)
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**08/29/2019** Reply (In Support of Its Demurrer To Plaintiff's First Amended Complaint)
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**08/28/2019** Certificate of Mailing for ((Status Conference re: Mediation and Discovery) of 08/28/2019)
Filed by Clerk

**08/28/2019** Minute Order ( ( Status Conference re: Mediation and Discovery))
Filed by Clerk

**08/27/2019** Notice (Case Management Order)
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**08/26/2019** Declaration (of James Abeltin Re (Proposed) Case Management Order)
Filed by LICEA, JACQUELYN - (DOE 2) (Defendant)

**08/23/2019** Opposition (Plaintiff's Opposition to Defendant City of Pasadena's Demurrer to Plaintiff's First Amended Complaint)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**08/21/2019** Answer
Filed by JACQUELYN LICEA, an individual (Defendant)

**08/21/2019** Second Amended Cross-Complaint of Jacquelyn Licea
Filed by JACQUELYN LICEA (Cross-Complainant)

**08/21/2019** Amended Cross-Complaint ( (2nd))
Filed by JACQUELYN LICEA (Cross-Complainant)

**08/12/2019** Declaration (of Carmen Aguado ISO City of Pasadena Demurrer to First Amended Complaint)
Filed by CITY OF PASADENA, a public entity (Defendant)

**08/12/2019** Demurrer - without Motion to Strike
Filed by CITY OF PASADENA, a public entity (Defendant)

**08/02/2019** Notice of Ruling
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**07/30/2019** Order (Granting Defendant City of Pasadena's Ex Parte Application to Continue the Trial and Pre-Trial Deadlines)
Filed by Clerk

**07/30/2019** Minute Order ( (Hearing on Ex Parte Application to Continue the Trial and Pre...))
Filed by Clerk

**07/30/2019** Opposition (to Defendant City of Pasadena's Ex Parte Application to Continue the Trial and Pre-Trial Deadlines or, in the Alternative, Specially Set the Time Hearing on Defendant's Motion to Continue the Trial and Pre-Trial Deadlines)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

EXHIBIT "1"

PAGE 50

**07/29/2019** Declaration in Support of Ex Parte Application
Filed by CITY OF PASADENA, a public entity (Defendant)

**07/29/2019** Ex Parte Application (to Continue the Trial and Pre-Trial Deadlines)
Filed by CITY OF PASADENA, a public entity (Defendant)

**07/25/2019** Minute Order ( (Hearing on Ex Parte Application To Continue the Trial and Pre...))
Filed by Clerk

**07/24/2019** Notice (of Continued hearing On Ex Parte Application)
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**07/24/2019** Declaration (of Carmen m Aguado)
Filed by CITY OF PASADENA, a public entity (Defendant)

**07/24/2019** Ex Parte Application (to Continue Trial)
Filed by CITY OF PASADENA, a public entity (Defendant)

**07/16/2019** Amendment to Complaint (Fictitious/Incorrect Name) (First Amended Complaint)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**07/16/2019** Amended Complaint ( (1st))
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); JACQUELYN LICEA (Cross-Complainant); Estate of Andres Ramirez, by and through its personal
representative, Elba Hernandez (Plain

**07/05/2019** Minute Order ( (Hearing on Motion for Leave to Amend Complaint filed on behal...))
Filed by Clerk

**06/27/2019** Reply (To Defendants' Responses To Plaintiff's Motion For Leave To File First Amended Complaint)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**06/24/2019** Case Management Statement
Filed by JACQUELYN LICEA, an individual (Defendant)

**06/21/2019** Response (Response to Motion for Leave)
Filed by CITY OF PASADENA, a public entity (Defendant)

**06/19/2019** Case Management Statement
Filed by CITY OF PASADENA, a public entity (Defendant)

**06/13/2019** Response (Response to Motion to Amend the Complaint)
Filed by JACQUELYN LICEA, an individual (Defendant)

**06/12/2019** Notice of Lien
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   04/30/2020   01/17/2020   08/29/2019   06/05/2019   07/13/2018

**06/05/2019** Minute Order ( (Status Conference re: Mediation and Discovery))
Filed by Clerk

**05/23/2019** Motion for Leave (To File A First Amended Complaint)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**05/14/2019** Notice of Change of Address or Other Contact Information
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**03/05/2019** Notice of (Stipulated Continuance)
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

EXHIBIT "1"
PAGE 51

**01/28/2019** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**01/28/2019** Motion to Quash
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**12/06/2018** Minute Order ((Status Conference re: Complex Personal Injury Case Transfer f...))
Filed by Clerk

**11/21/2018** Case Management Statement
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**11/20/2018** Case Management Statement
Filed by Pasadena, City of, a public entity (Defendant)

**11/19/2018** Case Management Statement
Filed by JACLQUELYN LICEA (DOE 1) (Defendant)

**11/19/2018** Notice of Case Management Conference

**11/01/2018** Answer (of Cross-Defendant City of Pasadena to Cross-Complaint Jacquelyn Licea's First Amended Cross-
Complaint)
Filed by Pasadena, City of, a public entity (Defendant)

**10/04/2018** Notice of Case Management Conference
Filed by Clerk

**10/03/2018** Notice-Case Management Conference
Filed by Clerk

**09/28/2018** Cross-Complaint First amended

**09/28/2018** Answer

**09/28/2018** Summons

**09/28/2018** Amended Cross-Complaint ( (1st))
Filed by JACQUELYN LICEA (Cross-Complainant)

**09/28/2018** Summons (on Complaint)
Filed by JACQUELYN LICEA (Cross-Complainant)

**09/28/2018** Answer
Filed by JACQUELYN LICEA (Cross-Complainant)

**09/28/2018** First Amended Cross-Complaint
Filed by JACQUELYN LICEA (Cross-Complainant)

**08/24/2018** Notice (and Acknowledgment of Receipt-Civil)
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff); LICEA,
JACQUELYN - (DOE 2) (Defendant)

**08/08/2018** Minute order entered: 2018-08-08 00:00:00
Filed by Clerk

**07/26/2018** Substitution of Attorney

**07/26/2018** SUBSTITUTION OF ATTORNEY

**07/23/2018** Order
Filed by Court

**07/20/2018** Minute order entered: 2018-07-20 00:00:00
Filed by Clerk

EXHIBIT "1"
PAGE 52

**07/20/2018** Minute Order

**07/20/2018** Order (TRANSFERRING PERSONAL INJURY (PI) CASE TO INDEPENDENT CALENDAR (IC) COURT )
Filed by Court

**07/19/2018** NOTICE OF POSTING JURY FEES

**07/19/2018** Notice
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**07/19/2018** Notice (OF POSTING JURY FEES )
Filed by Attorney for Petitioner

**07/18/2018** NOTICE OF MOTION AND MOTION TO CONTINUE TRIAL DATE; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF ALGERIA R. FORD

**07/18/2018** Motion-Continue Hearing Date
Filed by Pasadena, City of, a public entity (Defendant)

**07/18/2018** Motion-Continue Hearing Date (MOTION TO CONTINUE TRIAL DATE )
Filed by Atty for Defendant and Cross-Compl

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   04/30/2020   01/17/2020   08/29/2019   06/05/2019   07/13/2018

**07/13/2018** CIVIL DEPOSIT

**07/13/2018** Receipt
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**07/13/2018** Receipt (CIVIL DEPOSIT )
Filed by Attorney for Plaintiff/Petitioner

**07/06/2018** AMENDMENT TO COMPLAINT

**07/06/2018** Amendment to Complaint
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**07/06/2018** Amendment to Complaint (FIC NAME: DOE 2 TRUE NAME: JACQUELYN LICEA )
Filed by Attorney for Plaintiff/Petitioner

**06/11/2018** NOTICE OF POSTING JURY FEES

**06/11/2018** Notice
Filed by Pasadena, City of, a public entity (Defendant)

**06/11/2018** Notice (OF POSTING JURY FEES )
Filed by Attorney for Deft/X-Deft/X-Comp

**06/05/2018** CIVIL DEPOSIT

**06/05/2018** Receipt
Filed by Pasadena, City of, a public entity (Defendant)

**06/05/2018** Receipt (CIVIL DEPOSIT RE JURY FEES $150.00 )
Filed by Attorney for Defendant/Respondent

**05/31/2018** DEFENDANT CITY OF PASADENA'S NOTICE OF DEMURRER AND DEMURRER TO JACQUELYN LICEA'S
CROSS-COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRIAN I. HAMBLET

**05/31/2018** Demurrer
Filed by Pasadena, City of, a public entity (Defendant)

**05/31/2018** Demurrer
Filed by Attorney for Deft/X-Deft/X-Comp

EXHIBIT "1"
PAGE 53

**05/25/2018** AMENDMENT TO COMPLAINT

**05/25/2018** Amendment to Complaint
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**05/25/2018** Amendment to Complaint (JACLQUELYN LICEA (DOE 1) )
Filed by Attorney for Plaintiff/Petitioner

**04/13/2018** DECLARATION OF BRIAN I. HAMBLET AND REQUEST FOR EXTENSION FOR DEFENDANT CITY OF
PASADENA PURSUANT TO CCP 430.41(A)(2)

**04/13/2018** Declaration
Filed by Pasadena, City of, a public entity (Defendant)

**04/13/2018** Declaration (OF BRIAN I. HAMBLET AND REQUEST FOR EXTENSION FOR DEFENDANT CITY OF
PASADENA PURSUANT TO CCP 430.41(A)(2) )
Filed by Attorney for Deft/X-Deft/X-Comp

**03/16/2018** PROOF OF SERVICE OF CROSS COMPLAINT

**03/16/2018** Proof of Service (not Summons and Complaint)
Filed by Pasadena, City of, a public entity (Defendant)

**03/16/2018** Proof of Service (OF CROSS COMPLAINT )
Filed by Attorney for Defendant/Respondent

**03/12/2018** Summons (on Complaint)
Filed by JACQUELYN LICEA, an individual (Defendant)

**03/12/2018** Cross-Complaint
Filed by JACQUELYN LICEA, an individual (Defendant)

**03/12/2018** Answer to Cross-Complaint
Filed by JACQUELYN LICEA, an individual (Defendant)

**03/12/2018** CROSS-COMPLAINT OF JACQUELYN LICEA FOR INDEMNITY, DECLARATORY RELIEF AND
CONTRIBUTION

**03/12/2018** ANSWER TO CROSS-COMPLAINT FOR INDEMNITY, DECLARATORY RELIEF AND CONTRIBUTION

**03/12/2018** Summons on Cross Complaint

**03/12/2018** Summons Filed (CROSS-COMPLAINT )
Filed by Attorney for Cross-Complainant

**03/12/2018** Cross-complaint (FOR INDEMNITY, DECLARATORY RELIEF & CONTRIBUTION )
Filed by Attorney for X-Deft/X-Comp

**03/12/2018** Answer to Cross-Complaint (FOR INDEMNITY, DECLARATORY RELIEF AND CONTRIBUTION )
Filed by Attorney for Cross-Defendant

**12/14/2017** Substitution of Attorney
Filed by Pasadena, City of, a public entity (Defendant)

**12/14/2017** SUBSTITUTION OF ATTORNEY

**12/14/2017** Substitution of Attorney ("FAXED" )
Filed by Attorney for Defendant/Respondent

**07/14/2017** Answer
Filed by Pasadena, City of, a public entity (Defendant)

**07/14/2017** Cross-Complaint
Filed by Pasadena, City of, a public entity (Defendant)

**07/14/2017** CITY OF PASADENA'S CROSS-COMPLAINT FOR INDEMNITY, DECLARATORY RELIEF AND
CONTRIBUTION

LASC - Case Access

**07/14/2017** Summons (on Complaint)
Filed by Pasadena, City of, a public entity (Defendant)

**07/14/2017** SUMMONS ON CROSS-COMPLAINT

**07/14/2017** ANSWER PERSONAL INJURY, PROPERTY DAMAGE, WRONGFUL DEATH

**07/14/2017** Answer to Complaint
Filed by Attorney for Defendant/Respondent

**07/14/2017** Cross-complaint (FOR INDEMNITY, DECLARATORY RELIEF AND CONTRIBUTION )
Filed by Atty for Defendant and Cross-Compl

**07/14/2017** Summons Filed (CROSS-COMPLAINT )
Filed by Atty for Defendant and Cross-Compl

**06/14/2017** PROOF OF SERVICE SUMMONS

**06/14/2017** Proof-Service/Summons
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**06/14/2017** Proof-Service/Summons
Filed by Attorney for Plaintiff/Petitioner

**06/05/2017** Summons (on Complaint)

**06/05/2017** Civil Case Cover Sheet

**06/05/2017** SUMMONS

**06/05/2017** COMPLAINT 1. DANGEROUS CONDITION OF PUBLIC PROPERTY GOV'T CODE 835 ET SEQ.] 2.
VICARIOUS LIABILITY (GOV'T CODE 815.4] DEMAND FOR JURY TRIAL

**06/05/2017** Complaint
Filed by null

**06/05/2017** Complaint

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   04/30/2020   01/17/2020   08/29/2019   06/05/2019   07/13/2018

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings
Held

### Proceedings Held (Proceeding dates listed in descending order)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
04/10/2020   11/01/2019

**02/09/2022** at 08:30 AM in Department D
Trial Setting Conference - **Not Held - Vacated by Court**

**02/09/2022** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Not Held - Vacated by Court**

**12/14/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Held - Continued**

**12/14/2021** at 08:30 AM in Department D
Trial Setting Conference - **Held - Continued**

**11/04/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Not Held - Continued - Court's Motion**

**09/20/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Held - Continued**

**09/20/2021** at 08:30 AM in Department D
Trial Setting Conference - **Not Held - Vacated by Court**

**07/08/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Held - Continued**

**07/08/2021** at 08:30 AM in Department D
Trial Setting Conference - **Held - Continued**

**04/06/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Not Held - Continued - Party's Motion**

**04/06/2021** at 08:30 AM in Department D
Trial Setting Conference - **Not Held - Continued - Party's Motion**

**02/04/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Held - Continued**

**02/04/2021** at 08:30 AM in Department D
Trial Setting Conference - **Held - Continued**

**11/06/2020** at 09:00 AM in Department D
Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba Hernandez Sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not Held - Taken Off Calendar by Party**

**11/06/2020** at 09:00 AM in Department D
Trial Setting Conference - **Not Held - Continued - Court's Motion**

**09/25/2020** at 09:00 AM in Department D
Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not Held - Continued - Stipulation**

**09/25/2020** at 09:00 AM in Department D
Hearing on Motion to Quash (Deposition Subpoena Seeking Production of Business Records from Pasadena Unified School District filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Vacated**

**09/25/2020** at 09:00 AM in Department D
Trial Setting Conference - **Not Held - Continued - Stipulation**

**09/25/2020** at 09:00 AM in Department D
Hearing on Motion for Sanctions (For Issue Sanctions and Evidence Sanctions against Defendant City of Pasadena filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Vacated**

**09/16/2020** at 1:30 PM in Department D
Non-Appearance Case Review (Court Order pursuant to Stipulation and Request for Court Ordr Continuing Hearings Set for September25,2020; Order;) - **Held**

**08/24/2020** at 09:00 AM in Department D
Jury Trial - **Not Held - Advanced and Vacated**

**08/13/2020** at 09:00 AM in Department D
Final Status Conference - **Not Held - Advanced and Vacated**

**07/24/2020** at 09:00 AM in Department D
Hearing on Motion to Quash (Deposition Subpoena Seeking Production of Business Records from Pasadena Unified School District filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**07/24/2020** at 09:00 AM in Department D
Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba

Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not
Held - Advanced and Continued - by Court**

**07/24/2020** at 09:00 AM in Department D

Hearing on Motion for Sanctions (For Issue Sanctions and Evidence Sanctions against Defendant City of Pasadena filed on
behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**07/08/2020** at 11:00 AM in Department D

Ex-Parte Proceedings (to Continue Hearing Date filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Held -
Motion Granted**

**05/18/2020** at 09:00 AM in Department D

Jury Trial - **Not Held - Advanced and Continued - by Court**

**05/18/2020** at 09:00 AM in Department D

Trial Setting Conference - **Not Held - Advanced and Vacated**

**05/18/2020** at 09:00 AM in Department D

Order to Show Cause Re: (Mandatory Settlement Conference) - **Not Held - Advanced and Vacated**

**05/18/2020** at 09:00 AM in Department D

Final Status Conference - **Not Held - Advanced and Continued - by Court**

**05/14/2020** at 08:30 AM in Department D

Order to Show Cause Re: (Mandatory Settlement Conference) - **Not Held - Advanced and Continued - by Court**

**04/30/2020** at 09:00 AM in Department D

Final Status Conference - **Not Held - Advanced and Continued - by Court**

**04/24/2020** at 09:00 AM in Department D

Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba
Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not
Held - Advanced and Continued - by Court**

**04/24/2020** at 08:30 AM in Department D

Hearing on Motion to Quash (Deposition Subpoena Seeking Production of Business Records from Pasadena Unified School
District filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**04/24/2020** at 08:30 AM in Department D

Hearing on Motion for Sanctions (For Issue Sanctions and Evidence Sanctions against Defendant City of Pasadena filed on
behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**04/20/2020** at 09:00 AM in Department D

Jury Trial - **Not Held - Advanced and Continued - by Court**

**04/16/2020** at 09:00 AM in Department D

Final Status Conference - **Not Held - Clerical Error**

**04/16/2020** at 08:30 AM in Department D

Non-Appearance Case Review (Court Order Continuing Civil, Trial and Non-Trial matters to and after June 21, 2020
Pursuant to the General Order issued by the Presiding Judge and Statewide Orders issued by the Chief Justice;) - **Held**

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   04/10/2020   11/01/2019

**04/10/2020** at 08:30 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Notice of Motion and Motion to Compel Joaquin Siques to Comply with Deposition
Notice and for Monetary Sanctions in the Amount of $3,935.90) - **Not Held - Advanced and Continued - by Court**

**04/10/2020** at 08:30 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Motion to Compel Mark Jomsky to Comply with Deposition Notice and for Sanctions
in the Amount of $2135.90) - **Not Held - Advanced and Continued - by Court**

EXHIBIT "1"
PAGE 57

**04/10/2020** at 08:30 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Motion to Compel David Royer's Answers to Deposition Questions and Production of Documents, and for Sanctions in the Amount of $3,068.40) - **Not Held - Advanced and Continued - by Court**

**04/10/2020** at 08:30 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Motion to Compel Richard Yee's Answers to Deposition Questions and Production of Documents, and for Monetary Sanctions in the Amount of $3,068.40) - **Not Held - Advanced and Continued - by Court**

**04/10/2020** at 08:30 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Motion to Compel Defendant City of Pasadena's Person Most Qualified to Comply with Deposition Notice and for Monetary Sanctions in the Amount $2,735.90) - **Not Held - Advanced and Continued - by Court**

**04/09/2020** at 09:00 AM in Department D

Final Status Conference - **Not Held - Advanced and Continued - by Court**

**04/02/2020** at 08:30 AM in Department D

Non-Appearance Case Review (Court Order Continuing Civil, Trial and Non-Trial matters to and after May 18, 2020 Pursuant to the General Order issued by the Presiding Judge;) - **Held**

**03/27/2020** at 08:30 AM in Department D

Hearing on Motion for Sanctions (For Issue Sanctions and Evidence Sanctions against Defendant City of Pasadena filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**03/27/2020** at 08:30 AM in Department D

Hearing on Motion to Quash (Deposition Subpoena Seeking Production of Business Records from Pasadena Unified School District filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**03/26/2020** at 08:30 AM in Department D

Order to Show Cause Re: (Mandatory Settlement Conference) - **Not Held - Vacated by Court**

**03/26/2020** at 08:30 AM in Department D

Order to Show Cause Re: (Mandatory Settlement Conference) - **Not Held - Advanced and Continued - by Court**

**03/25/2020** at 08:30 AM in Department D

Non-Appearance Case Review

**03/13/2020** at 09:00 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Notice of Motion and Motion to Compel Joaquin Siques to Comply with Deposition Notice and for Monetary Sanctions in the Amount of $3,935.90) - **Not Held - Advanced and Vacated**

**03/13/2020** at 09:00 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Motion to Compel Mark Jomsky to Comply with Deposition Notice and for Sanctions in the Amount of $2135.90) - **Not Held - Advanced and Vacated**

**03/13/2020** at 09:00 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Motion to Compel Defendant City of Pasadena's Person Most Qualified to Comply with Deposition Notice and for Monetary Sanctions in the Amount $2,735.90) - **Not Held - Advanced and Vacated**

**03/13/2020** at 09:00 AM in Department D

Hearing on Motion - Other (for a Court Order to Release Documents, or in the alternative, a Court Order that Elba Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not Held - Continued - Stipulation**

**03/13/2020** at 08:30 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Motion to Compel David Royer's Answers to Deposition Questions and Production of Documents, and for Sanctions in the Amount of $3,068.40) - **Not Held - Advanced and Vacated**

**03/13/2020** at 08:30 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Motion to Compel Richard Yee's Answers to Deposition Questions and Production of Documents, and for Monetary Sanctions in the Amount of $3,068.40) - **Not Held - Advanced and Vacated**

EXHIBIT "1"
PAGE 58

**03/06/2020** at 08:30 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Motion to Compel Mark Jomsky to Comply with Deposition Notice and for Sanctions in the Amount of $2135.90) - **Not Held - Advanced and Continued - by Court**

**03/06/2020** at 08:30 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Motion to Compel Defendant City of Pasadena's Person Most Qualified to Comply with Deposition Notice and for Monetary Sanctions in the Amount $2,735.90) - **Not Held - Advanced and Continued - by Court**

**03/06/2020** at 08:30 AM in Department D

Hearing on Motion to Compel (Plaintiffs' Notice of Motion and Motion to Compel Joaquin Siques to Comply with Deposition Notice and for Monetary Sanctions in the Amount of $3,935.90) - **Not Held - Advanced and Continued - by Court**

**03/06/2020** at 08:30 AM in Department D

Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not Held - Continued - Ex Parte Motion**

**02/28/2020** at 09:00 AM in Department D

Hearing on Motion for Summary Judgment (or, in the alternative, Summary Adjudication filed on behalf of Defendant/Cross-Complainant/Cross-Defendant City of Pasadena) - **Held - Motion Denied**

**02/28/2020** at 08:30 AM in Department D

Hearing on Motion to Bifurcate (filed on behalf of Defendant/Cross-Complainant/Cross-Defendant City of Pasadena) - **Held - Motion Denied**

**02/24/2020** at 09:00 AM in Department D

Jury Trial - **Not Held - Advanced and Continued - by Court**

**02/24/2020** at 09:00 AM in Department D

Jury Trial - **Not Held - Continued - Court's Motion**

**02/13/2020** at 09:00 AM in Department D

Final Status Conference - **Not Held - Advanced and Continued - by Court**

**02/13/2020** at 09:00 AM in Department D

Final Status Conference - **Not Held - Continued - Court's Motion**

**01/24/2020** at 09:00 AM in Department D

Hearing on Motion for Summary Judgment - **Not Held - Vacated by Court**

**01/24/2020** at 08:30 AM in Department D

Order to Show Cause Re: (Mandatory Settlement Conference) - **Not Held - Advanced and Continued - by Court**

**01/24/2020** at 08:30 AM in Department D

Hearing on Ex Parte Application (for Order Advancing Motion for Court Order to Release Documents, or in the alternative, that Elba Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not Held - Advanced and Vacated**

**01/24/2020** at 08:30 AM in Department D

Hearing on Ex Parte Application (of Defendant City of Pasadena for an Order to Advance the Hearing on Defendant City's Motion to Bifurcate) - **Not Held - Advanced and Vacated**

**01/24/2020** at 08:30 AM in Department D

Hearing on Motion for Summary Judgment (or, in the alternative, Summary Adjudication filed on behalf of Defendant/Cross-Complainant/Cross-Defendant City of Pasadena) - **Not Held - Continued - Court's Motion**

**01/23/2020** at 08:30 AM in Department D

Order to Show Cause Re: (Mandatory Settlement Confrence) - **Not Held - Advanced and Continued - by Court**

**12/20/2019** at 08:30 AM in Department D

Hearing on Ex Parte Application (for an Order Shortening Time on Plaintiffs' MTC Depo of Def. City of Pasadena's PMK, (2)

EXHIBIT "1"

PAGE 59

MTC Depo of Joaquin Siques, (3) MTC Depo of Mark Jomsky, (4) MTC David Royer re Depo Answers/Production, (5) MTC
Richard Yee re Depo Answers/Productio) - **Held - Continued**

**12/18/2019** at 08:30 AM in Department D

Hearing on Ex Parte Application (for an Order Shortening Time on Plaintiffs' MTC Depo of Def. City of Pasadena's PMK, (2)
MTC Depo of Joaquin Siques, (3) MTC Depo of Mark Jomsky, (4) MTC David Royer re Depo Answers/Production, (5) MTC
Richard Yee re Depo Answers/Productio) - **Held - Continued**

**12/13/2019** at 09:00 AM in Department D

Hearing on Motion for Summary Judgment - **Not Held - Advanced and Continued - by Court**

**12/02/2019** at 09:00 AM in Department D

Jury Trial - **Not Held - Advanced and Continued - by Court**

**11/21/2019** at 09:00 AM in Department D

Final Status Conference - **Not Held - Advanced and Continued - by Court**

**11/08/2019** at 08:30 AM in Department D

Status Conference (reMediation and Discovery) - **Not Held - Advanced and Vacated**

**11/06/2019** at 08:30 AM in Department D

Order to Show Cause Re: (Mandatory Settlement Confrence) - **Not Held - Advanced and Continued - by Court**

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   04/10/2020   11/01/2019

**11/01/2019** at 08:30 AM in Department D

Hearing on Motion for Summary Judgment - **Not Held - Advanced and Continued - by Court**

**10/04/2019** at 08:30 AM in Department D

Hearing on Demurrer - without Motion to Strike - **Not Held - Advanced and Continued - by Court**

**10/02/2019** at 08:30 AM in Department D

Status Conference (reMediation and Discovery) - **Not Held - Advanced and Continued - by Court**

**09/24/2019** at 08:30 AM in Department D

Hearing on Ex Parte Application (to Continue Hearing on Defendant Citys Anticipated Motion for Summary Judgment filed
on behalf of Defendant/Cross-Complainant/Cross-Defendant City of Pasadena) - **Held - Motion Granted**

**09/20/2019** at 08:30 AM in Department D

Hearing on Motion for Summary Judgment - **Not Held - Rescheduled by Party**

**09/06/2019** at 08:30 AM in Department D

Status Conference (reMediation and Discovery) - **Not Held - Continued - Court's Motion**

**09/06/2019** at 09:00 AM in Department D

Jury Trial - **Not Held - Continued - Ex Parte Motion**

**09/06/2019** at 09:00 AM in Department D

Hearing on Demurrer - without Motion to Strike (To Plaintiff's First Amended Complaint filed on behalf of Defendant/Cross-
Complainant/Cross-Defendant City of Pasadena) - **Held - Motion Denied**

**09/06/2019** at 08:30 AM in Department D

Hearing on Motion to Continue Trial - **Not Held - Taken Off Calendar by Party**

**09/06/2019** at 08:30 AM in Department D

Hearing on Ex Parte Application (for An Order Compelling Defendant City of Pasadena to Produce Documents at the
Deposition of its Person Most Qualified filed on behalf of Plaintiffs Andres Ramirez, et al.) - **Held - Motion Denied**

**08/28/2019** at 08:30 AM in Department D

Status Conference (reMediation and Discovery) - **Not Held - Continued - Court's Motion**

**07/30/2019** at 08:30 AM in Department D

Hearing on Ex Parte Application (to Continue the Trial and Pre-Trial Deadlines or, in the alternative, Specially Set the Time

EXHIBIT "1"

PAGE 60

Hearing on Defendant's Motion to Continue the Trial and Pre-Trial Deadlines filed on behalf of Defendant/Cross-Complainant/Cross-Defendant City of Pasadena) - **Held - Advanced and Heard**

**07/25/2019** at 08:30 AM in Department D

Hearing on Ex Parte Application (To Continue the Trial and Pre-Trial Deadlines or, in the alternative, Specially Set the Time Hearing on Defendant's Motion to Continue the Trial and Pre-Trial Deadlines filed on behalf of Defendant/Cross-Complainant/Cross-Defendant City of Pasadena) - **Not Held - Vacated by Court**

**07/05/2019** at 09:00 AM in Department D

Status Conference (reMediation and Discovery) - **Held - Continued**

**07/05/2019** at 08:30 AM in Department D

Hearing on Motion for Leave to Amend (Complaint) - **Held - Motion Granted**

**06/05/2019** at 08:30 AM in Department D

Status Conference (reMediation and Discovery) - **Held - Continued**

**03/06/2019** at 08:30 AM in Department D

Status Conference (reMediation and Discovery) - **Not Held - Continued - Court's Motion**

**03/01/2019** at 08:30 AM in Department D

Hearing on Motion to Quash (Deposition Subpoena Seeking the Deposition of, and Production of Business Records from, John F. Gerard, or, Alternatively, Motion for a Protective Order) - **Not Held - Taken Off Calendar by Party**

**12/06/2018** at 08:30 AM in Department D

Status Conference - **Held**

**08/08/2018** at 1:30 PM in Department 2

Hearing on Demurrer - without Motion to Strike (DEMURRER; Transferred to different departmnt) -

**07/20/2018** at 08:00 AM in Department 2

Court Order (Court Order; Transferred to different departmnt) -

**07/20/2018** at 08:00 am in Department SS2, Georgina T. Rizk, Presiding

Court Order (TRANSF FROM PI TO DEPT D-GLENDALE) - **Transferred to different departmnt**

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   04/10/2020   11/01/2019

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Register of Actions (Listed in descending order)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

08/13/2022   03/13/2020   12/20/2019   09/09/2019   06/19/2019   07/26/2018

**02/09/2022** at 08:30 AM in Department D

Trial Setting Conference - **Not Held - Vacated by Court**

**02/09/2022** at 08:30 AM in Department D

Order to Show Cause Re: Dismissal (in Light of Settlement) - **Not Held - Vacated by Court**

**02/07/2022** Request for Dismissal

Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**02/04/2022** Request for Dismissal

Filed by JACQUELYN LICEA (Cross-Complainant)

EXHIBIT "1"

PAGE 61

**02/04/2022** Request for Dismissal
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff);
JACQUELYN LICEA (Cross-Complai

**12/14/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Held - Continued**

**12/14/2021** at 08:30 AM in Department D
Trial Setting Conference - **Held - Continued**

**12/14/2021** Minute Order ( (Order to Show Cause Re: Dismissal in Light of Settlement; Tri...))
Filed by Clerk

**11/04/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Not Held - Continued - Court's Motion**

**11/04/2021** Minute Order ( (Order to Show Cause Re: Dismissal in Light of Settlement))
Filed by Clerk

**09/20/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Held - Continued**

**09/20/2021** at 08:30 AM in Department D
Trial Setting Conference - **Not Held - Vacated by Court**

**09/20/2021** Minute Order ( (Order to Show Cause Re: Dismissal in Light of Settlement; Tri...))
Filed by Clerk

**07/21/2021** Notice of Ruling
Filed by JACQUELYN LICEA, an individual (Defendant)

**07/08/2021** at 08:30 AM in Department D
Trial Setting Conference - **Held - Continued**

**07/08/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Held - Continued**

**07/08/2021** Minute Order ( (Order to Show Cause Re: Dismissal in Light of Settlement; Tri...))
Filed by Clerk

**04/06/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Not Held - Continued - Party's Motion**

**04/06/2021** at 08:30 AM in Department D
Trial Setting Conference - **Not Held - Continued - Party's Motion**

**04/06/2021** Minute Order ( (Order to Show Cause Re: Dismissal in Light of Settlement; Tri...))
Filed by Clerk

**02/05/2021** Notice of Ruling
Filed by JACQUELYN LICEA, an individual (Defendant)

**02/04/2021** at 08:30 AM in Department D
Order to Show Cause Re: Dismissal (in Light of Settlement) - **Held - Continued**

**02/04/2021** at 08:30 AM in Department D
Trial Setting Conference - **Held - Continued**

**02/04/2021** Minute Order ( (Trial Setting Conference; Order to Show Cause Re: Dismissal i...))
Filed by Clerk

**11/06/2020** at 09:00 AM in Department D
Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba

**EXHIBIT "1"**

**PAGE 62**

LASC - Case Access

Hernandez Sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not Held - Taken Off Calendar by Party**

**11/06/2020** at 09:00 AM in Department D
Trial Setting Conference - **Not Held - Continued - Court's Motion**

**11/06/2020** Minute Order ( (Trial Setting Conference))
Filed by Clerk

**10/30/2020** Notice (Of Striking Of Attorneys' Lien)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**09/25/2020** at 09:00 AM in Department D
Hearing on Motion for Sanctions (For Issue Sanctions and Evidence Sanctions against Defendant City of Pasadena filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Vacated**

**09/25/2020** at 09:00 AM in Department D
Hearing on Motion to Quash (Deposition Subpoena Seeking Production of Business Records from Pasadena Unified School District filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Vacated**

**09/25/2020** at 09:00 AM in Department D
Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not Held - Continued - Stipulation**

**09/25/2020** at 09:00 AM in Department D
Trial Setting Conference - **Not Held - Continued - Stipulation**

**09/25/2020** RETURNED MAIL

**09/16/2020** at 1:30 PM in Department D
Non-Appearance Case Review (Court Order pursuant to Stipulation and Request for Court Ordr Continuing Hearings Set for September25,2020; Order;) - **Held**

**09/16/2020** Certificate of Mailing for ((Non-Appearance Case Review Court Order pursuant to Stipulatio...) of 09/16/2020)
Filed by Clerk

**09/16/2020** Minute Order ( (Non-Appearance Case Review Court Order pursuant to Stipulatio...))
Filed by Clerk

**09/14/2020** Stipulation and Order (Stipulation and Request For Court Order Continuing Hearings Set for September 25, 2020; Order)
Filed by JACQUELYN LICEA, an individual (Defendant)

**09/04/2020** Notice (Notice of Entry of Judgment Or Order)
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/04/2020** Notice (Notice of Entry of Judgment Or Order)
Filed by CITY OF PASADENA, a public entity (Defendant)

**08/24/2020** at 09:00 AM in Department D
Jury Trial - **Not Held - Advanced and Vacated**

**08/20/2020** Request for Dismissal (Cross-complaint by City of Pasadena filed on 10/4/2019)
Filed by Pasadena, City of (Cross-Complainant)

**08/19/2020** Request for Dismissal
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   08/13/2020   03/13/2020   12/20/2019   09/09/2019   06/19/2019   07/26/2018

EXHIBIT "1"
PAGE 63

**08/13/2020** at 09:00 AM in Department D
Final Status Conference - **Not Held - Advanced and Vacated**

**07/24/2020** at 09:00 AM in Department D
Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba
Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not
Held - Advanced and Continued - by Court**

**07/24/2020** at 09:00 AM in Department D
Hearing on Motion to Quash (Deposition Subpoena Seeking Production of Business Records from Pasadena Unified School
District filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**07/24/2020** at 09:00 AM in Department D
Hearing on Motion for Sanctions (For Issue Sanctions and Evidence Sanctions against Defendant City of Pasadena filed on
behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**07/08/2020** at 11:00 AM in Department D
Ex-Parte Proceedings (to Continue Hearing Date filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Held -
Motion Granted**

**07/08/2020** Certificate of Mailing for ((Ex-Parte Proceedings to Continue Hearing Date filed on behalf...) of 07/08/2020)
Filed by Clerk

**07/08/2020** Minute Order ( (Ex-Parte Proceedings to Continue Hearing Date filed on behalf...))
Filed by Clerk

**07/06/2020** Ex Parte Application (To Continue Hearing Date)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**05/18/2020** at 09:00 AM in Department D
Final Status Conference - **Not Held - Advanced and Continued - by Court**

**05/18/2020** at 09:00 AM in Department D
Order to Show Cause Re: (Mandatory Settlement Conference) - **Not Held - Advanced and Vacated**

**05/18/2020** at 09:00 AM in Department D
Jury Trial - **Not Held - Advanced and Continued - by Court**

**05/18/2020** at 09:00 AM in Department D
Trial Setting Conference - **Not Held - Advanced and Vacated**

**05/14/2020** at 08:30 AM in Department D
Order to Show Cause Re: (Mandatory Settlement Conference) - **Not Held - Advanced and Continued - by Court**

**04/30/2020** at 09:00 AM in Department D
Final Status Conference - **Not Held - Advanced and Continued - by Court**

**04/30/2020** RETURNED MAIL

**04/24/2020** at 09:00 AM in Department D
Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba
Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not
Held - Advanced and Continued - by Court**

**04/24/2020** at 08:30 AM in Department D
Hearing on Motion to Quash (Deposition Subpoena Seeking Production of Business Records from Pasadena Unified School
District filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**04/24/2020** at 08:30 AM in Department D
Hearing on Motion for Sanctions (For Issue Sanctions and Evidence Sanctions against Defendant City of Pasadena filed on
behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**EXHIBIT "1"**
**PAGE 64**

**04/20/2020** at 09:00 AM in Department D
Jury Trial - **Not Held - Advanced and Continued - by Court**

**04/16/2020** at 09:00 AM in Department D
Final Status Conference - **Not Held - Clerical Error**

**04/16/2020** at 08:30 AM in Department D
Non-Appearance Case Review (Court Order Continuing Civil, Trial and Non-Trial matters to and after June 21, 2020
Pursuant to the General Order issued by the Presiding Judge and Statewide Orders issued by the Chief Justice;) - **Held**

**04/16/2020** Minute Order ( (Non-Appearance Case Review Court Order Continuing Civil, Tria...))
Filed by Clerk

**04/16/2020** Certificate of Mailing for ((Non-Appearance Case Review Court Order Continuing Civil, Tria...) of 04/16/2020)
Filed by Clerk

**04/15/2020** Notice (of Continuance of Motion for Court Order to Release Documents)
Filed by JACLQUELYN LICEA (DOE 1) (Defendant)

**04/10/2020** at 08:30 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Motion to Compel Richard Yee's Answers to Deposition Questions and Production
of Documents, and for Monetary Sanctions in the Amount of $3,068.40) - **Not Held - Advanced and Continued - by Court**

**04/10/2020** at 08:30 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Motion to Compel David Royer's Answers to Deposition Questions and Production
of Documents, and for Sanctions in the Amount of $3,068.40) - **Not Held - Advanced and Continued - by Court**

**04/10/2020** at 08:30 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Motion to Compel Mark Jomsky to Comply with Deposition Notice and for Sanctions
in the Amount of $2135.90) - **Not Held - Advanced and Continued - by Court**

**04/10/2020** at 08:30 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Notice of Motion and Motion to Compel Joaquin Siques to Comply with Deposition
Notice and for Monetary Sanctions in the Amount of $3,935.90) - **Not Held - Advanced and Continued - by Court**

**04/10/2020** at 08:30 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Motion to Compel Defendant City of Pasadena's Person Most Qualified to Comply
with Deposition Notice and for Monetary Sanctions in the Amount $2,735.90) - **Not Held - Advanced and Continued - by
Court**

**04/09/2020** at 09:00 AM in Department D
Final Status Conference - **Not Held - Advanced and Continued - by Court**

**04/02/2020** at 08:30 AM in Department D
Non-Appearance Case Review (Court Order Continuing Civil, Trial and Non-Trial matters to and after May 18, 2020
Pursuant to the General Order issued by the Presiding Judge;) - **Held**

**04/02/2020** Certificate of Mailing for ((Non-Appearance Case Review Court Order Continuing Civil, Tria...) of 04/02/2020)
Filed by Clerk

**04/02/2020** Minute Order ( (Non-Appearance Case Review Court Order Continuing Civil, Tria...))
Filed by Clerk

**03/27/2020** at 08:30 AM in Department D
Hearing on Motion for Sanctions (For Issue Sanctions and Evidence Sanctions against Defendant City of Pasadena filed on
behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**03/27/2020** at 08:30 AM in Department D
Hearing on Motion to Quash (Deposition Subpoena Seeking Production of Business Records from Pasadena Unified School
District filed on behalf of Plaintiffs The Estate of Andres Ramirez, et al.) - **Not Held - Advanced and Continued - by Court**

**03/26/2020** at 08:30 AM in Department D
Order to Show Cause Re: (Mandatory Settlement Conference) - **Not Held - Advanced and Continued - by Court**

**03/26/2020** at 08:30 AM in Department D
Order to Show Cause Re: (Mandatory Settlement Conference) - **Not Held - Vacated by Court**

**03/25/2020** at 08:30 AM in Department D
Non-Appearance Case Review

**03/25/2020** Minute Order ( (Non-Appearance Case Review))
Filed by Clerk

**03/23/2020** Notice of Ruling
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/20/2020** Plaintiffs' Reply in Support of Motion to Quash Deposition Subpoena Seeking Business Records from Pasadena
Unified School District
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**03/20/2020** Plaintiffs' Reply in Support of Motion for Issue Sanctions and Evidence Sanctions Against Defendant City of
Pasadena
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**03/16/2020** Declaration (of David Royer ISO City of Pasadena's Opposition to Plaintiff's Motion for Issue)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/16/2020** Response (Response to Separate Statement in Opposition to Motion to Quash)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/16/2020** Opposition (to Plaintiffs' Motion for Issue Sanctions and Evidence Sanctions)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/16/2020** Declaration (Declaration of Keiko J. Kojima)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/16/2020** Opposition (Response to Separate Statement in Opposition to Motion to Quash)
Filed by CITY OF PASADENA, a public entity (Defendant)

**03/16/2020** Declaration (of Brian Hamblet ISO City of Pasadena's Opposition to Plaintiff's Motion for Issue)
Filed by CITY OF PASADENA, a public entity (Defendant)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   08/13/2020   03/13/2020   12/20/2019   09/09/2019   06/19/2019   07/26/2018

**03/13/2020** at 09:00 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Notice of Motion and Motion to Compel Joaquin Siques to Comply with Deposition
Notice and for Monetary Sanctions in the Amount of $3,935.90) - **Not Held - Advanced and Vacated**

**03/13/2020** at 09:00 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Motion to Compel Mark Jomsky to Comply with Deposition Notice and for Sanctions
in the Amount of $2135.90) - **Not Held - Advanced and Vacated**

**03/13/2020** at 09:00 AM in Department D
Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba
Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not
Held - Continued - Stipulation**

**03/13/2020** at 09:00 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Motion to Compel Defendant City of Pasadena's Person Most Qualified to Comply
with Deposition Notice and for Monetary Sanctions in the Amount $2,735.90) - **Not Held - Advanced and Vacated**

**03/13/2020** at 08:30 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Motion to Compel David Royer's Answers to Deposition Questions and Production
of Documents, and for Sanctions in the Amount of $3,068.40) - **Not Held - Advanced and Vacated**

EXHIBIT "1"
PAGE 66

**03/13/2020** at 08:30 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Motion to Compel Richard Yee's Answers to Deposition Questions and Production of Documents, and for Monetary Sanctions in the Amount of $3,068.40) - **Not Held - Advanced and Vacated**

**03/11/2020** Declaration (Declaration of James Abeltin in Response to Motion to Quash A Subpoena of School Records)
Filed by JACQUELYN LICEA, an individual (Defendant)

**03/11/2020** Response (Response of Jacquelyn Licea to Motion to Quash Subpoena of School Records)
Filed by JACQUELYN LICEA, an individual (Defendant)

**03/06/2020** at 08:30 AM in Department D
Hearing on Motion - Other (for A Court Order to Release Documents, or in the alternative, a Court Order that Elba Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn Licea) - **Not Held - Continued - Ex Parte Motion**

**03/06/2020** at 08:30 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Motion to Compel Mark Jomsky to Comply with Deposition Notice and for Sanctions in the Amount of $2135.90) - **Not Held - Advanced and Continued - by Court**

**03/06/2020** at 08:30 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Motion to Compel Defendant City of Pasadena's Person Most Qualified to Comply with Deposition Notice and for Monetary Sanctions in the Amount $2,735.90) - **Not Held - Advanced and Continued - by Court**

**03/06/2020** at 08:30 AM in Department D
Hearing on Motion to Compel (Plaintiffs' Notice of Motion and Motion to Compel Joaquin Siques to Comply with Deposition Notice and for Monetary Sanctions in the Amount of $3,935.90) - **Not Held - Advanced and Continued - by Court**

**03/04/2020** Notice (Notice of Continuance of Motion for A Court Order to Release Documents)
Filed by JACQUELYN LICEA, an individual (Defendant)

**02/28/2020** at 09:00 AM in Department D
Hearing on Motion for Summary Judgment (or, in the alternative, Summary Adjudication filed on behalf of Defendant/Cross-Complainant/Cross-Defendant City of Pasadena) - **Held - Motion Denied**

**02/28/2020** at 08:30 AM in Department D
Hearing on Motion to Bifurcate (filed on behalf of Defendant/Cross-Complainant/Cross-Defendant City of Pasadena) - **Held - Motion Denied**

**02/28/2020** Stipulation and Order to use Certified Shorthand Reporter (Ingrid Saracione, CSR No. 11960 for 2/28/2020 Hearing in Department D)

**02/28/2020** Minute Order ( (Hearing on Motion to Bifurcate filed on behalf of Defendant/C...))
Filed by Clerk

**02/28/2020** Objection (To Plaintiffs' And Jacquelyn Licea's Evidence In Support of Defendant City of Pasadena"s Motion For Summary Judgment, or In The Alternative Summary Adj. and Order Thereon)
Filed by CITY OF PASADENA, a public entity (Defendant)

**02/28/2020** Objection (Plaintiff's Evidentiary Objections in Opposition To The Evidence Submitted in Support of The Motion for Filed by Defendant City of Pasadena and Order Thereon)

**02/24/2020** at 09:00 AM in Department D
Jury Trial - **Not Held - Advanced and Continued - by Court**

**02/24/2020** at 09:00 AM in Department D
Jury Trial - **Not Held - Continued - Court's Motion**

**02/21/2020** Declaration (Declaration of Carmen M. Aguado in Support of Defendant City of Pasadena's Reply in Support of Its Motion for Bifurcation)
Filed by CITY OF PASADENA, a public entity (Defendant)

EXHIBIT "1"

PAGE 67

**02/21/2020** Reply (Defendant City of Pasadena's Reply in Support of Its Motion to Bifurcate)
Filed by CITY OF PASADENA, a public entity (Defendant)

**02/14/2020** Opposition (Plaintiffs' Opposition to Defendant City of Pasadena's Motion to Bifurcate)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**02/13/2020** at 09:00 AM in Department D
Final Status Conference - **Not Held - Advanced and Continued - by Court**

**02/13/2020** at 09:00 AM in Department D
Final Status Conference - **Not Held - Continued - Court's Motion**

**02/05/2020** Notice (Notice of Continuing Motion for a Court Order to Release Documents)
Filed by JACLQUELYN LICEA (DOE 1) (Defendant)

**01/30/2020** Proof of Personal Service
Filed by Pasadena, City of, a public entity (Defendant)

**01/30/2020** Proof of Personal Service
Filed by Pasadena, City of, a public entity (Defendant)

**01/27/2020** Notice of Ruling
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/24/2020** at 09:00 AM in Department D
Hearing on Motion for Summary Judgment - **Not Held - Vacated by Court**

**01/24/2020** at 08:30 AM in Department D
Order to Show Cause Re: (Mandatory Settlement Conference) - **Not Held - Advanced and Continued - by Court**

**01/24/2020** at 08:30 AM in Department D
Hearing on Ex Parte Application (for Order Advancing Motion for Court Order to Release Documents, or in the alternative,
that Elba Hernandez sign an Authorization filed on behalf of Defendant/Cross-Defendant/Cross-Complainant Jacquelyn
Licea) - **Not Held - Advanced and Vacated**

**01/24/2020** at 08:30 AM in Department D
Hearing on Ex Parte Application (of Defendant City of Pasadena for an Order to Advance the Hearing on Defendant City's
Motion to Bifurcate) - **Not Held - Advanced and Vacated**

**01/24/2020** at 08:30 AM in Department D
Hearing on Motion for Summary Judgment (or, in the alternative, Summary Adjudication filed on behalf of Defendant/Cross-
Complainant/Cross-Defendant City of Pasadena) - **Not Held - Continued - Court's Motion**

**01/24/2020** Opposition (Plaintiffs' Opposition to Defendant City of Pasadena's Ex Parte Application for an Order to Advance
the Hearing on Defendant City's Motion to Bifurcate)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**01/24/2020** Minute Order ( (Hearing on Motion for Summary Judgment or, in the alternative...))
Filed by Clerk

**01/23/2020** at 08:30 AM in Department D
Order to Show Cause Re: (Mandatory Settlement Confrence) - **Not Held - Advanced and Continued - by Court**

**01/23/2020** Declaration (of Carmen Aguado ISO Ex Parte Application for an Order to Advance Hearing on Motion to
Bifurcate)
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**01/23/2020** Plaintiff's Objections to Defendant City of Pasadena's Notice of Errata re Reply in Support of its Motion for
Summary Judgment or, in the Alternative, Summary Adjudication
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

EXHIBIT "1"
PAGE 68

**01/23/2020** Ex Parte Application (of Defendant City of Pasadena for an Order to Advance Hearing on Motion to Bifurcate)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/23/2020** Opposition (Plaintiffs' Opposition to Defendant Jacquelyn Licea's Ex Parte Application for an Order Advancing
Motion for a Court Order to Release Documents)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**01/22/2020** Motion in Limine (No 7)
Filed by Pasadena, City of (Cross-Complainant)

**01/22/2020** Ex Parte Application (Ex Parte for Order Advancing Motion for Court Order to Release Records)
Filed by JACLQUELYN LICEA (DOE 1) (Defendant)

**01/22/2020** Motion to Quash
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/22/2020** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/22/2020** Notice (of Errata)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/21/2020** Motion in Limine (No 3)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 12)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 14)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 9)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 8)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 11)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 10)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Objection (Plaintiff's Objections to Defendant City of Pasadena's Reply Papers Filed in Support of Defendant
City of Pasadena's Motion for Summary Judgment / Adjudication)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/21/2020** Declaration (of Carmen M. Aguado in Support)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/21/2020** Motion to Bifurcate
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/21/2020** Motion in Limine (No 2)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 13)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 5)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 6)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 1)
Filed by Pasadena, City of (Cross-Complainant)

**01/21/2020** Motion in Limine (No 4)
Filed by Pasadena, City of (Cross-Complainant)

**01/17/2020** Reply (in Support of Motion)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/17/2020** Declaration (in Support of Reply)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/17/2020** Reply (to Opposition)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/17/2020** Reply (to Separate Statement)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/17/2020** Objection (to Evidence)
Filed by CITY OF PASADENA, a public entity (Defendant)

**01/16/2020** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**01/16/2020** Motion for Sanctions
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/10/2020** Declaration (Declaration of Edward Ruzak)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/10/2020** Declaration (Declaration of Beau LeBlanc)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/10/2020** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/10/2020** Objection (Plaintiff's Evidentiary Objections In Opposition To City of Pasadena's Motion for Summary Judgment)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/10/2020** Opposition (Plaintiff's Opposition To City of Pasadena's Motion for Summary Judgment)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/10/2020** Declaration (Declaration of Damon Rogers)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/10/2020** Declaration (Declaration of Andy Beltran)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**01/09/2020** Objection (Objections to Evidence Sumitted by City in Support of MSJ)
Filed by JACQUELYN LICEA (Cross-Complainant); JACQUELYN LICEA, an individual (Defendant)

EXHIBIT "1"
PAGE 70

**01/09/2020** Opposition (Opposition to Motion for Summary Judgment)
Filed by JACQUELYN LICEA (Cross-Complainant); JACQUELYN LICEA, an individual (Defendant)

**01/09/2020** Declaration (of James Abeltin Re Opposition to Motion for Summary Judgment)
Filed by JACQUELYN LICEA (Cross-Complainant); JACQUELYN LICEA, an individual (Defendant)

**01/09/2020** Separate Statement
Filed by JACQUELYN LICEA (Cross-Complainant); JACQUELYN LICEA, an individual (Defendant)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   08/13/2020   03/13/2020   12/20/2019   09/09/2019   06/19/2019   07/26/2018

**12/20/2019** at 08:30 AM in Department D
Hearing on Ex Parte Application (for an Order Shortening Time on Plaintiffs' MTC Depo of Def. City of Pasadena's PMK, (2) MTC Depo of Joaquin Siques, (3) MTC Depo of Mark Jomsky, (4) MTC David Royer re Depo Answers/Production, (5) MTC Richard Yee re Depo Answers/Productio) - **Held - Continued**

**12/20/2019** Minute Order ( (Hearing on Ex Parte Application for an Order Shortening Time ...))
Filed by Clerk

**12/19/2019** Declaration ( Of Carmen M Aguado In Support Of Defendant City Of Pasadenas Opposition To Plaintiffs Ex Parte Application For An Order Shortening Time On Plaintiffs 1 Motion To Compel Deposition Of Defendant City Of Pasadena's Pmk 2motion To Compel Deposition Of J)
Filed by CITY OF PASADENA, a public entity (Defendant)

**12/19/2019** Opposition (To Plaintiffs Ex Parte Application For An Order Shortening Time On Plaintiffs 1 Motion To Compel Deposition Of Defendant City Of Pasadenas Pmk 2 Motion To Compel Deposition Of Joaquin Siques 3 Motion To Compel Deposition Of Mark Jomsky 4 Motion To Co)
Filed by CITY OF PASADENA, a public entity (Defendant)

**12/18/2019** at 08:30 AM in Department D
Hearing on Ex Parte Application (for an Order Shortening Time on Plaintiffs' MTC Depo of Def. City of Pasadena's PMK, (2) MTC Depo of Joaquin Siques, (3) MTC Depo of Mark Jomsky, (4) MTC David Royer re Depo Answers/Production, (5) MTC Richard Yee re Depo Answers/Productio) - **Held - Continued**

**12/18/2019** Notice of Ruling
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/18/2019** Declaration (of James B. Abeltin in Support of Motion for Court Order to Release Documents)
Filed by JACQUELYN LICEA, an individual (Defendant)

**12/18/2019** Minute Order ( (Hearing on Ex Parte Application for an Order Shortening Time ...))
Filed by Clerk

**12/18/2019** Motion for Order (to Release Documents)
Filed by JACQUELYN LICEA, an individual (Defendant)

**12/17/2019** Declaration (Declaration of Filippo Marchino in Support of Plaintiffs' Motion to Compel Richard Yee's Answers to Deposition Questions and Production of Documents, and for Sanctions in the Amount of $3,068.40)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Ex Parte Application (for an Order Shortening Time on Plaintiffs' MTC Depo of Def. City of Pasadena's PMK, (2) MTC Depo of Joaquin Siques, (3) MTC Depo of Mark Jomsky, (4) MTC David Royer re Depo Answers/Production, (5) MTC Richard Yee re Depo Answers/Productio)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Motion to Compel (Plaintiffs' Motion to Compel Mark Jomsky to Comply with Deposition Notice and for Sanctions in the Amount of $2,135.90)

EXHIBIT "1"
PAGE 71

Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Declaration (Declaration of Filippo Marchino in Support of Plaintiffs' Motion to Compel Mark Jomsky to Comply with Deposition Notice and for Sanctions in the Amount of $2,135.90)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Motion to Compel (Plaintiffs' Motion to Compel David Royer's Answers to Deposition Questions and Production of Documents, and for Monetary Sanctions in the Amount of $3,068.40)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Motion to Compel (Plaintiffs' Motion to Compel Joaquin Siques to Comply with Deposition Notice and for Monetary Sanctions in the Amount of $3,935.90)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Declaration (Declaration of Filippo Marchino in Support of Plaintiffs' Motion to Compel Joaquin Siques to Comply with Deposition Notice and for Sanctions in the Amount of $3,935.90)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Declaration (of Filippo Marchino in Support of Plaintiffs' Motion to Compel David Royer's Answers to Deposition Questions and Production of Documents, and for Sanctions in the Amount of $3,068.40)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Motion to Compel (Plaintiffs' Motion to Compel Richard Yee's Answers to Deposition Questions and Production of Documents, and for Monetary Sanctions in the Amount of $3,068.40)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Declaration (Filippo Marchino in Support of Plaintiffs' Motion to Compel the Persons Most Qualified of Defendant City of Pasadena to Comply with Deposition Notice and for Sanctions)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/17/2019** Motion to Compel (Plaintiffs' Motion to Compel Defendant City of Pasadena's Person Most Qualified to Comply with Deposition Notice and for Monetary Sanctions in the Amount of $2,735.90)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**12/13/2019** at 09:00 AM in Department D
Hearing on Motion for Summary Judgment - **Not Held - Advanced and Continued - by Court**

**12/02/2019** at 09:00 AM in Department D
Jury Trial - **Not Held - Advanced and Continued - by Court**

**11/21/2019** at 09:00 AM in Department D
Final Status Conference - **Not Held - Advanced and Continued - by Court**

**11/13/2019** Proof of Service (not Summons and Complaint)
Filed by JACQUELYN LICEA, an individual (Defendant)

EXHIBIT "1"

PAGE 72

**11/08/2019** at 08:30 AM in Department D
Status Conference (reMediation and Discovery) - **Not Held - Advanced and Vacated**

**11/08/2019** Declaration (of David Royer ISO City's MSJ)
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Exhibit List
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Separate Statement
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Motion for Summary Judgment
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Declaration (of Joaquin Siques ISO City's MSJ)
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Declaration (of Richard Yee ISO City's MSJ)
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Proof of Personal Service
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Declaration (of Mark Jomsky ISO City's MSJ)
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/08/2019** Declaration (of Carmen Aguado ISO City's MSJ)
Filed by CITY OF PASADENA, a public entity (Defendant)

**11/06/2019** at 08:30 AM in Department D
Order to Show Cause Re: (Mandatory Settlement Confrence) - **Not Held - Advanced and Continued - by Court**

**11/01/2019** at 08:30 AM in Department D
Hearing on Motion for Summary Judgment - **Not Held - Advanced and Continued - by Court**

**10/10/2019** Answer
Filed by Jacquelyn Licea (Cross-Defendant)

**10/04/2019** at 08:30 AM in Department D
Hearing on Demurrer - without Motion to Strike - **Not Held - Advanced and Continued - by Court**

**10/04/2019** Order (Joint Stipulation and Proposed Case Management Order)
Filed by JACQUELYN LICEA, an individual (Defendant)

**10/04/2019** Amended Cross-Complaint ( (2nd))
Filed by JACQUELYN LICEA (Cross-Complainant)

**10/04/2019** Stipulation and Order (to Allow Defendant to File An Amended Answer to Plaintiff's Complaint)
Filed by CITY OF PASADENA, a public entity (Defendant)

**10/02/2019** at 08:30 AM in Department D
Status Conference (reMediation and Discovery) - **Not Held - Advanced and Continued - by Court**

**10/01/2019** Notice of Ruling
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/25/2019** RETURNED MAIL

**09/25/2019** RETURNED MAIL

**09/24/2019** at 08:30 AM in Department D
Hearing on Ex Parte Application (to Continue Hearing on Defendant Citys Anticipated Motion for Summary Judgment filed on behalf of Defendant/Cross-Complainant/Cross-Defendant City of Pasadena) - **Held - Motion Granted**

EXHIBIT "1"
PAGE 73

**09/24/2019** Minute Order ( (Hearing on Ex Parte Application to Continue Hearing on Defend...))
Filed by Clerk

**09/24/2019** Order (Granting City of Pasadena's Ex Parte Application to Continue The Hearing on Defendant City's
Anticipated Motion for Summary Judgment)
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/23/2019** Ex Parte Application (to Continue Hearing on Defendant Citys Anticipated Motion for Summary Judgment)
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/23/2019** Declaration in Support of Ex Parte Application
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/23/2019** Opposition (to Defendant City of Pasadena's Ex Parte Application for an Order to Continue the Hearing on
Defendant City's Anticipated Motion for Summary Judgment)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**09/20/2019** at 08:30 AM in Department D
Hearing on Motion for Summary Judgment - **Not Held - Rescheduled by Party**

**09/19/2019** Answer
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/19/2019** Answer
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/19/2019** City of Pasadena's First Amended Cross-Complaint for Indemnity, Declaratory Relief and Contribution; Demand
for Jury Trial
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**09/19/2019** Amended Cross-Complaint ( (1st))
Filed by JACQUELYN LICEA (Cross-Complainant)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   08/13/2020   03/13/2020   12/20/2019   09/09/2019   06/19/2019   07/26/2018

**09/09/2019** RETURNED MAIL

**09/09/2019** RETURNED MAIL

**09/06/2019** at 09:00 AM in Department D
Hearing on Demurrer - without Motion to Strike (To Plaintiff's First Amended Complaint filed on behalf of Defendant/Cross-
Complainant/Cross-Defendant City of Pasadena) - **Held - Motion Denied**

**09/06/2019** at 09:00 AM in Department D
Status Conference (reMediation and Discovery) - **Not Held - Continued - Court's Motion**

**09/06/2019** at 09:00 AM in Department D
Jury Trial - **Not Held - Continued - Ex Parte Motion**

**09/06/2019** at 08:30 AM in Department D
Hearing on Motion to Continue Trial - **Not Held - Taken Off Calendar by Party**

**09/06/2019** at 08:30 AM in Department D
Hearing on Ex Parte Application (for An Order Compelling Defendant City of Pasadena to Produce Documents at the
Deposition of its Person Most Qualified filed on behalf of Plaintiffs Andres Ramirez, et al.) - **Held - Motion Denied**

**09/06/2019** Certificate of Mailing for ((Hearing on Demurrer - without Motion to Strike To Plaintiff's...) of 09/06/2019)
Filed by Clerk

**09/06/2019** Opposition (to Plaintiff's Ex Parte Application to Compel Production of Documents)
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/06/2019** Declaration (of Carmen Aguado ISO City of Pasadena's Opposition to Plaintiffs' Ex Parte Application)
Filed by CITY OF PASADENA, a public entity (Defendant)

**09/06/2019** Minute Order ( (Hearing on Demurrer - without Motion to Strike To Plaintiff's...))
Filed by Clerk

**09/06/2019** Minute Order ( (Hearing on Demurrer - without Motion to Strike To Plaintiff's...))
Filed by Clerk

**09/05/2019** Ex Parte Application (for an Order Compelling Def. to Produce Documents at the Depositions of PMQ)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**08/29/2019** Supplemental Declaration (Of Carmen M. Aguado in Support of Defendant City of Pasadena's Reply)
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**08/29/2019** Reply (In Support of Its Demurrer To Plaintiff's First Amended Complaint)
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**08/28/2019** at 08:30 AM in Department D
Status Conference (reMediation and Discovery) - **Not Held - Continued - Court's Motion**

**08/28/2019** Minute Order ( (Status Conference re: Mediation and Discovery))
Filed by Clerk

**08/28/2019** Certificate of Mailing for ((Status Conference re: Mediation and Discovery) of 08/28/2019)
Filed by Clerk

**08/27/2019** Notice (Case Management Order)
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**08/26/2019** Declaration (of James Abeltin Re (Proposed) Case Management Order)
Filed by LICEA, JACQUELYN - (DOE 2) (Defendant)

**08/23/2019** Opposition (Plaintiff's Opposition to Defendant City of Pasadena's Demurrer to Plaintiff's First Amended
Complaint)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff)

**08/21/2019** Amended Cross-Complaint ( (2nd))
Filed by JACQUELYN LICEA (Cross-Complainant)

**08/21/2019** Second Amended Cross-Complaint of Jacquelyn Licea
Filed by JACQUELYN LICEA (Cross-Complainant)

**08/21/2019** Answer
Filed by JACQUELYN LICEA, an individual (Defendant)

**08/12/2019** Demurrer - without Motion to Strike
Filed by CITY OF PASADENA, a public entity (Defendant)

**08/12/2019** Declaration (of Carmen Aguado ISO City of Pasadena Demurrer to First Amended Complaint)
Filed by CITY OF PASADENA, a public entity (Defendant)

**08/02/2019** Notice of Ruling
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**07/30/2019** at 08:30 AM in Department D
Hearing on Ex Parte Application (to Continue the Trial and Pre-Trial Deadlines or, in the alternative, Specially Set the Time
Hearing on Defendant's Motion to Continue the Trial and Pre-Trial Deadlines filed on behalf of Defendant/Cross-
Complainant/Cross-Defendant City of Pasadena) - **Held - Advanced and Heard**

**07/30/2019** Opposition (to Defendant City of Pasadena's Ex Parte Application to Continue the Trial and Pre-Trial Deadlines
or, in the Alternative, Specially Set the Time Hearing on Defendant's Motion to Continue the Trial and Pre-Trial Deadlines)

Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**07/30/2019** Order (Granting Defendant City of Pasadena's Ex Parte Application to Continue the Trial and Pre-Trial Deadlines)
Filed by Clerk

**07/30/2019** Minute Order ( (Hearing on Ex Parte Application to Continue the Trial and Pre...))
Filed by Clerk

**07/29/2019** Declaration in Support of Ex Parte Application
Filed by CITY OF PASADENA, a public entity (Defendant)

**07/29/2019** Ex Parte Application (to Continue the Trial and Pre-Trial Deadlines)
Filed by CITY OF PASADENA, a public entity (Defendant)

**07/25/2019** at 08:30 AM in Department D
Hearing on Ex Parte Application (To Continue the Trial and Pre-Trial Deadlines or, in the alternative, Specially Set the Time Hearing on Defendant's Motion to Continue the Trial and Pre-Trial Deadlines filed on behalf of Defendant/Cross-Complainant/Cross-Defendant City of Pasadena) - **Not Held - Vacated by Court**

**07/25/2019** Minute Order ( (Hearing on Ex Parte Application To Continue the Trial and Pre...))
Filed by Clerk

**07/24/2019** Notice (of Continued hearing On Ex Parte Application)
Filed by CITY OF PASADENA, a public entity (Cross-Defendant)

**07/24/2019** Declaration (of Carmen m Aguado)
Filed by CITY OF PASADENA, a public entity (Defendant)

**07/24/2019** Ex Parte Application (to Continue Trial)
Filed by CITY OF PASADENA, a public entity (Defendant)

**07/16/2019** Amendment to Complaint (Fictitious/Incorrect Name) (First Amended Complaint)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**07/16/2019** Amended Complaint ( (1st))
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); JACQUELYN LICEA (Cross-Complainant); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plain

**07/05/2019** at 09:00 AM in Department D
Status Conference (reMediation and Discovery) - **Held - Continued**

**07/05/2019** at 08:30 AM in Department D
Hearing on Motion for Leave to Amend (Complaint) - **Held - Motion Granted**

**07/05/2019** Minute Order ( (Hearing on Motion for Leave to Amend Complaint filed on behal...))
Filed by Clerk

**06/27/2019** Reply (To Defendants' Responses To Plaintiff's Motion For Leave To File First Amended Complaint)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**06/24/2019** Case Management Statement
Filed by JACQUELYN LICEA, an individual (Defendant)

**06/21/2019** Response (Response to Motion for Leave)
Filed by CITY OF PASADENA, a public entity (Defendant)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   08/13/2020   03/13/2020   12/20/2019   09/09/2019   06/19/2019   07/26/2018

EXHIBIT "1"

PAGE 76

**06/19/2019** Case Management Statement
Filed by CITY OF PASADENA, a public entity (Defendant)

**06/13/2019** Response (Response to Motion to Amend the Complaint)
Filed by JACQUELYN LICEA, an individual (Defendant)

**06/12/2019** Notice of Lien
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**06/05/2019** at 08:30 AM in Department D
Status Conference (reMediation and Discovery) - **Held - Continued**

**06/05/2019** Minute Order ( (Status Conference re: Mediation and Discovery))
Filed by Clerk

**05/23/2019** Motion for Leave (To File A First Amended Complaint)
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff)

**05/14/2019** Notice of Change of Address or Other Contact Information
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**03/06/2019** at 08:30 AM in Department D
Status Conference (reMediation and Discovery) - **Not Held - Continued - Court's Motion**

**03/05/2019** Notice (of Stipulated Continuance)
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**03/01/2019** at 08:30 AM in Department D
Hearing on Motion to Quash (Deposition Subpoena Seeking the Deposition of, and Production of Business Records from, John F. Gerard, or, Alternatively, Motion for a Protective Order) - **Not Held - Taken Off Calendar by Party**

**01/28/2019** Motion to Quash
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**01/28/2019** Separate Statement
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**12/06/2018** at 08:30 AM in Department D
Status Conference - **Held**

**12/06/2018** Minute Order ((Status Conference re: Complex Personal Injury Case Transfer f...))
Filed by Clerk

**11/21/2018** Case Management Statement
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**11/20/2018** Case Management Statement
Filed by Pasadena, City of, a public entity (Defendant)

**11/19/2018** Case Management Statement
Filed by JACLQUELYN LICEA (DOE 1) (Defendant)

**11/19/2018** Notice of Case Management Conference

**11/01/2018** Answer (of Cross-Defendant City of Pasadena to Cross-Complaint Jacquelyn Licea's First Amended Cross-Complaint)
Filed by Pasadena, City of, a public entity (Defendant)

**10/04/2018** Notice of Case Management Conference
Filed by Clerk

**EXHIBIT "1"**

**PAGE 77**

**10/03/2018** Notice-Case Management Conference
Filed by Clerk

**09/28/2018** Answer
Filed by JACQUELYN LICEA (Cross-Complainant)

**09/28/2018** Cross-Complaint First amended

**09/28/2018** Answer

**09/28/2018** First Amended Cross-Complaint
Filed by JACQUELYN LICEA (Cross-Complainant)

**09/28/2018** Amended Cross-Complaint ( (1st))
Filed by JACQUELYN LICEA (Cross-Complainant)

**09/28/2018** Summons

**09/28/2018** Summons (on Complaint)
Filed by JACQUELYN LICEA (Cross-Complainant)

**08/24/2018** Notice (and Acknowledgment of Receipt-Civil)
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff); LICEA,
JACQUELYN - (DOE 2) (Defendant)

**08/08/2018** at 1:30 PM in Department 2
Hearing on Demurrer - without Motion to Strike (DEMURRER; Transferred to different departmnt) -

**08/08/2018** Minute order entered: 2018-08-08 00:00:00
Filed by Clerk

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   08/13/2020   03/13/2020   12/20/2019   09/09/2019   06/19/2019   07/26/2018

**07/26/2018** SUBSTITUTION OF ATTORNEY

**07/26/2018** Substitution of Attorney

**07/23/2018** Order
Filed by Court

**07/20/2018** at 08:00 AM in Department 2
Court Order (Court Order; Transferred to different departmnt) -

**07/20/2018** at 08:00 am in Department SS2, Georgina T. Rizk, Presiding
Court Order (TRANSF FROM PI TO DEPT D-GLENDALE) - **Transferred to different departmnt**

**07/20/2018** Minute order entered: 2018-07-20 00:00:00
Filed by Clerk

**07/20/2018** Minute Order

**07/20/2018** Order (TRANSFERRING PERSONAL INJURY (PI) CASE TO INDEPENDENT CALENDAR (IC) COURT )
Filed by Court

**07/19/2018** NOTICE OF POSTING JURY FEES

**07/19/2018** Notice (OF POSTING JURY FEES )
Filed by Attorney for Petitioner

**07/19/2018** Notice
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**07/18/2018** NOTICE OF MOTION AND MOTION TO CONTINUE TRIAL DATE; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF ALGERIA R. FORD

EXHIBIT "1"

PAGE 78

**07/18/2018** Motion-Continue Hearing Date
Filed by Pasadena, City of, a public entity (Defendant)

**07/18/2018** Motion-Continue Hearing Date (MOTION TO CONTINUE TRIAL DATE )
Filed by Atty for Defendant and Cross-Compl

**07/13/2018** Receipt (CIVIL DEPOSIT )
Filed by Attorney for Plaintiff/Petitioner

**07/13/2018** Receipt
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**07/13/2018** CIVIL DEPOSIT

**07/06/2018** Amendment to Complaint (FIC NAME: DOE 2 TRUE NAME: JACQUELYN LICEA )
Filed by Attorney for Plaintiff/Petitioner

**07/06/2018** AMENDMENT TO COMPLAINT

**07/06/2018** Amendment to Complaint
Filed by Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez,
deceased (Plaintiff); Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**06/11/2018** Notice (OF POSTING JURY FEES )
Filed by Attorney for Deft/X-Deft/X-Comp

**06/11/2018** NOTICE OF POSTING JURY FEES

**06/11/2018** Notice
Filed by Pasadena, City of, a public entity (Defendant)

**06/05/2018** CIVIL DEPOSIT

**06/05/2018** Receipt (CIVIL DEPOSIT RE JURY FEES $150.00 )
Filed by Attorney for Defendant/Respondent

**06/05/2018** Receipt
Filed by Pasadena, City of, a public entity (Defendant)

**05/31/2018** Demurrer
Filed by Pasadena, City of, a public entity (Defendant)

**05/31/2018** Demurrer
Filed by Attorney for Deft/X-Deft/X-Comp

**05/31/2018** DEFENDANT CITY OF PASADENA'S NOTICE OF DEMURRER AND DEMURRER TO JACQUELYN LICEA'S
CROSS-COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRIAN I. HAMBLET

**05/25/2018** AMENDMENT TO COMPLAINT

**05/25/2018** Amendment to Complaint
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**05/25/2018** Amendment to Complaint (JACLQUELYN LICEA (DOE 1) )
Filed by Attorney for Plaintiff/Petitioner

**04/13/2018** Declaration (OF BRIAN I. HAMBLET AND REQUEST FOR EXTENSION FOR DEFENDANT CITY OF
PASADENA PURSUANT TO CCP 430.41(A)(2) )
Filed by Attorney for Deft/X-Deft/X-Comp

**04/13/2018** Declaration
Filed by Pasadena, City of, a public entity (Defendant)

**04/13/2018** DECLARATION OF BRIAN I. HAMBLET AND REQUEST FOR EXTENSION FOR DEFENDANT CITY OF
PASADENA PURSUANT TO CCP 430.41(A)(2)

**03/16/2018** PROOF OF SERVICE OF CROSS COMPLAINT

EXHIBIT "1"
PAGE 79

**03/16/2018** Proof of Service (OF CROSS COMPLAINT )
Filed by Attorney for Defendant/Respondent

**03/16/2018** Proof of Service (not Summons and Complaint)
Filed by Pasadena, City of, a public entity (Defendant)

**03/12/2018** CROSS-COMPLAINT OF JACQUELYN LICEA FOR INDEMNITY, DECLARATORY RELIEF AND
CONTRIBUTION

**03/12/2018** Cross-Complaint
Filed by JACQUELYN LICEA, an individual (Defendant)

**03/12/2018** Summons Filed (CROSS-COMPLAINT )
Filed by Attorney for Cross-Complainant

**03/12/2018** Cross-complaint (FOR INDEMNITY, DECLARATORY RELIEF & CONTRIBUTION )
Filed by Attorney for X-Deft/X-Comp

**03/12/2018** Summons (on Complaint)
Filed by JACQUELYN LICEA, an individual (Defendant)

**03/12/2018** Summons on Cross Complaint

**03/12/2018** ANSWER TO CROSS-COMPLAINT FOR INDEMNITY, DECLARATORY RELIEF AND CONTRIBUTION

**03/12/2018** Answer to Cross-Complaint
Filed by JACQUELYN LICEA, an individual (Defendant)

**03/12/2018** Answer to Cross-Complaint (FOR INDEMNITY, DECLARATORY RELIEF AND CONTRIBUTION )
Filed by Attorney for Cross-Defendant

**12/14/2017** Substitution of Attorney
Filed by Pasadena, City of, a public entity (Defendant)

**12/14/2017** SUBSTITUTION OF ATTORNEY

**12/14/2017** Substitution of Attorney ("FAXED" )
Filed by Attorney for Defendant/Respondent

**07/14/2017** Summons Filed (CROSS-COMPLAINT )
Filed by Atty for Defendant and Cross-Compl

**07/14/2017** Cross-complaint (FOR INDEMNITY, DECLARATORY RELIEF AND CONTRIBUTION )
Filed by Atty for Defendant and Cross-Compl

**07/14/2017** CITY OF PASADENA'S CROSS-COMPLAINT FOR INDEMNITY, DECLARATORY RELIEF AND
CONTRIBUTION

**07/14/2017** Answer to Complaint
Filed by Attorney for Defendant/Respondent

**07/14/2017** SUMMONS ON CROSS-COMPLAINT

**07/14/2017** ANSWER PERSONAL INJURY, PROPERTY DAMAGE, WRONGFUL DEATH

**07/14/2017** Answer
Filed by Pasadena, City of, a public entity (Defendant)

**07/14/2017** Cross-Complaint
Filed by Pasadena, City of, a public entity (Defendant)

**07/14/2017** Summons (on Complaint)
Filed by Pasadena, City of, a public entity (Defendant)

**06/14/2017** Proof-Service/Summons
Filed by Estate of Andres Ramirez, by and through its personal representative, Elba Hernandez (Plaintiff)

**EXHIBIT "1"**

**PAGE 80**

LASC - Case Access

**06/14/2017** PROOF OF SERVICE SUMMONS

**06/14/2017** Proof-Service/Summons
Filed by Attorney for Plaintiff/Petitioner

**06/05/2017** Civil Case Cover Sheet

**06/05/2017** SUMMONS

**06/05/2017** Complaint
Filed by null

**06/05/2017** COMPLAINT 1. DANGEROUS CONDITION OF PUBLIC PROPERTY GOV'T CODE 835 ET SEQ.] 2.
VICARIOUS LIABILITY (GOV'T CODE 815.4] DEMAND FOR JURY TRIAL

**06/05/2017** Complaint

**06/05/2017** Summons (on Complaint)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP    08/13/2020    03/13/2020    12/20/2019    09/09/2019    06/19/2019    07/26/2018

**EXHIBIT "1"**

**PAGE 81**

**EXHIBIT "2"**

**FILED & ENTERED**

**JUL 11 2018**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY firman      DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>                  Debtor. | Case No. 8:17-bk-11961-CB<br><br>Chapter 11<br><br>ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION FOR ASSIGNMENT AND RESTRAINING ORDER<br><br>Date:     July 11, 2018<br>Time:    10:00 a.m.<br>Place:   Courtroom 5D<br>Address: 411 W. 4th St, Santa Ana, CA 92701 |

A hearing was held on July 11, 2018, at 10:00 a.m. before the Honorable Catherine E. Bauer, United States Bankruptcy Judge for the Central District of California, in Courtroom 5D located at 411 West Fourth St., Santa Ana, CA, on the Amended Motion for Entry of Assignment and Restraining Order filed on June 20, 2018 as docket #470 by Jason Frank Law, PLC ("Motion").  Appearances were made as noted on the record.

Having reviewed the pleadings and heard the discussion on the record and with good cause shown,

IT IS ORDERED:

1.   The Motion is granted in part and denied in part.

**EXHIBIT "2"**
**PAGE 82**

2.  The Motion is granted as follows:

    Eagan Avenatti, LLP ("Debtor") is hereby restrained from assigning, encumbering or in any way transferring any proceeds, attorney's fees, costs, rights to payments and accounts receivable it is or may be entitled to receive from the lawsuits and clients listed on Exhibit A to the Frank Declaration attached to the Motion (the "Cases"), as well as any rent payments from Debtor's tenants.

    Debtor shall file with the Court and serve on Jason Frank Law, PLC, the Internal Revenue Service, the Official Committee of Creditors, and their respective counsel, a notice of any hearing or proceeding regarding attorney's fees in any of the Cases (regardless of whether Debtor is designated as a possible payee).  Notice shall be filed and served at least 14 days prior to the date of the hearing or proceeding.

    Debtor shall also file with the Court and serve on Jason Frank Law, PLC, the Internal Revenue Service, the Official Committee of Creditors, and their respective counsel, a notice of receipt of any monies in relation to the Cases, regardless of whether the payment is made to Debtor, Avenatti & Associates, Michael Avenatti, or Michael Eagan, or any entity controlled by Debtor, Avenatti & Associates, Michael Avenatti, or Michael Eagan.

3.  To the extent the Motion is not granted in Paragraph 2, it is denied without prejudice.

                              ###

Date: July 11, 2018

                              Catherine Bauer
                              United States Bankruptcy Judge

# EXHIBIT "3"

Filippo Marchino, Esq. (SBN 256011)
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Plaintiffs

**FILED**
Superior Court of California
County of Los Angeles

07/16/2019

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Lawrence Hironaka _____ Deputy

1
2
3
4
5
6

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE

| | |
|---|---|
| THE ESTATE OF ANDRES RAMIREZ, by and through its personal representative, ELBA HERNANDEZ; ELBA HERNANDEZ, individually and as personal representative and successor in interest to Andres Ramirez, deceased,<br><br>       Plaintiffs,<br><br>    vs.<br><br>CITY OF PASADENA, a public entity; Jacquelyn Licea, an individual; and DOES 1 through 100, inclusive,<br><br>       Defendants. | **CASE NO. BC664114**<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES:**<br><br>1. **Wrongful Death - Dangerous Condition of Public Property [Gov't Code §835 *et seq.*]**<br>2. **Survival Action - Dangerous Condition of Public Property [Gov't Code §835 *et seq.*]**<br>3. **Wrongful Death - Vicarious Liability [Gov't Code §815.4]**<br>4. **Survival Action - Vicarious Liability [Gov't Code §815.4]**<br>5. **Wrongful Death – Negligence**<br>6. **Survival Action - Negligence**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW PLAINTIFFS THE ESTATE OF ANDRES RAMIREZ, by and through its personal representative, Elba Hernandez, and ELBA HERNANDEZ, individually and as personal representative and successor in interest to Andres Ramirez ("Ramirez"), deceased (collectively "PLAINTIFFS"), for causes of action against defendants CITY OF PASADENA, Jacquelyn Licea, and DOES 4 through 100 inclusive, and each of them, complain and allege as follows:

1

Electronically Received 07/16/2019 11:55 AM

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

**EXHIBIT "3"**
**PAGE 84**

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

## COMPLIANCE WITH THE TORT CLAIMS ACT

1.      At all times mentioned herein, Defendant CITY OF PASADENA was a public entity within the meaning of the California Government Tort Claims Act.  Defendant CITY OF PASADENA is, and at all relevant times mentioned herein was, responsible for the activities and operations of the Pasadena Department of Transportation.   The Pasadena Department of Transportation is, and at all times herein mentioned was, responsible for operating the CITY OF PASADENA's roads and highways, including the intersection where this incident occurred, and the surrounding roads.

2.      Decedent Andres Ramirez, prior to his death, timely presented a tort claim to the CITY OF PASADENA through his mother and guardian, Elba Hernandez.  The CITY OF PASADENA rejected the claim as untimely.

3.      Decedent Andres Ramirez successfully challenged the CITY OF PASADENA's denial of his claim as untimely through a petition in the Los Angeles Superior Court pursuant to Government Code Section 946.6.  That action was entitled *Ramirez v. City of Pasadena*, and was adjudicated in the Los Angeles Superior Court, case number BC644094.  On May 23, 2017, the Court ruled that decedent Andres Ramirez was not barred by the Government Tort Claims Act from proceeding to file this action.  The ruling is attached hereto as **Exhibit 1**.

4.      Andres Ramirez then brought the instant action, case number BC664114, through his mother and guardian ad litem, Elba Hernandez, seeking damages for his personal injuries and other damages.

5.      On February 25, 2019, during the pendency of the instant action, Andres Ramirez tragically passed away from complications arising from the injuries he sustained in the accident underlying the instant action.

6.      Therefore, Andres Ramirez' mother and guardian ad litem, Elba Hernandez, now brings claims of wrongful death and survival on behalf of herself, the other Andres Ramirez heirs, the Estate of Andres Ramirez, and Andres Ramirez, deceased. To that end, Elba Hernandez presented a new government tort claim to Defendant City of Pasadena on May 22, 2019. The government tort claim that Elba Hernandez presented to the City of Pasadena on May

2

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

22, 2019 is attached hereto as **Exhibit 2**. That claim was rejected by Defendant City of Pasadena on July 2, 2019. (**Exhibit 3**.)

       7.     Accordingly, PLAINTIFFS complied with the presentation requirements of the Government Tort Claims Act by presenting timely government tort claims to Defendant City of Pasadena, as had Andres Ramirez when this case was first filed.

## JURISDICTION AND VENUE

       8.     Venue is appropriate in Los Angeles County, and this Court has personal jurisdiction over the Defendants and each of them, by reason of the facts that, among other things, the facts and circumstances alleged herein arose in the CITY OF PASADENA, County of Los Angeles, State of California.

## PARTIES

       9.     Plaintiff ELBA HERNANDEZ is the mother of decedent Andres Ramirez. She is also the personal representative of the ESTATE OF ANDRES RAMIREZ and is a successor in interest of Ramirez. She is entitled to bring this wrongful death/survivorship action pursuant to Code of Civil Procedure Sections 377.60 and 377.30 on behalf of Plaintiff The Estate of ANDRES RAMIREZ, on behalf of Andres Ramirez, deceased, and on behalf of herself and the other Andres Ramirez heirs. Ramirez died without issue, and ELBA HERNANDEZ would be entitled to Ramirez's estate through the rules of intestate succession.

      10.    At all times herein mentioned, North Los Robles Avenue was and is a public street and highway running a general northerly and southerly direction within the CITY OF PASADENA, State of California; at all times herein mentioned, East Mountain Street, was and is a public street and highway running in a general easterly and westerly direction and intersecting North Los Robles Avenue in said City and State. This intersection shall be hereinafter referred to as the SUBJECT INTERSECTION.

      11.    At all relevant times, Defendant CITY OF PASADENA is/was responsible for ownership, administration, control and operation of North Los Robles Avenue and East

3

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

Mountain Street and the SUBJECT INTERSECTION.

12.     Defendant Jacquelyn Licea, an individual, was previously identified as DOE 3 in Plaintiff's original complaint. Throughout this amended complaint Jacquelyn Licea has been substituted wherever appropriate to remove the DOE 3 references. Ms. Licea was responsible for the operation of the vehicle that struck Andres Ramirez in the SUBJECT INTERSECTION.

13.     The true names and capacities, whether individual, public, corporate, associate or otherwise, of the defendants sued herein as Does 4 through 100, are unknown to PLAINTIFFS, who, therefore, sue said defendants by such fictitious names and will seek leave of court to amend this complaint pursuant to the provisions of section 474 of the Code of Civil Procedure to show their true names and capacities when same has been ascertained. PLAINTIFFS are informed and believe and thereon allege that each of the fictitiously named defendants are legally responsible in some manner for the occurrences herein alleged and that PLAINTIFFS' losses as herein alleged were proximately caused by the actions of the DOE defendants, whether based on their creation or maintenance of a dangerous condition, their vicarious liability for the acts of their independent contracts or others, their negligence, or otherwise.  Each DOE Defendant was operating in the course and scope of employment of the other Defendants, DOE or named, and/or was the agent and employee of the other Defendants, DOE or named.  Each DOE Defendant was vicariously liable for the acts of the other Defendants, DOE or named.

14.     PLAINTIFFS are informed and believe and thereon allege that at all times herein mentioned each of the defendants was the agent, either actual or ostensible, and employee of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the purpose and scope of such agency and employment and with the advance knowledge, authorization, or ratification of each of the remaining defendants.

**PASADENA'S HISTORY OF FATAL/INJURY COLLISIONS INVOLVING CYCLISTS**

15.     According to recent statistics reported by the California Office of Traffic Safety (OTS), the CITY OF PASADENA registers among the highest number of collisions involving cyclists in the area, including many injury and fatality accidents involving minors.

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

4

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

EXHIBIT "3"
PAGE 87

16.    For example, in 2009, according to OTS data, the CITY OF PASADENA registered 73 fatality and injury collisions involving cyclists, placing the CITY OF PASADENA 7th out of 56, compared to other cities with similar-sized populations.  Five (5) of the incidents reported for this year involved bicyclists under the age of fifteen.

17.    In 2010, according to OTS data, the CITY OF PASADENA registered 89 fatality and injury collisions involving cyclists, placing the CITY OF PASADENA 4th out of 53, compared to other cities with similar-sized populations.  Five (5) of the incidents reported for this year involved bicyclists under the age of fifteen.

18.    In 2011, according to OTS data, the CITY OF PASADENA registered 101 fatality and injury collisions involving cyclists, placing the CITY OF PASADENA 3rd out of 55, compared to other cities with similar-sized populations.  Three (3) of the incidents reported for this year involved bicyclists under the age of fifteen.

19.    In 2012, according to OTS data, the CITY OF PASADENA registered 89 fatality and injury collisions involving cyclists, placing the CITY OF PASADENA 5th out of 56 compared to other cities with similar-sized populations.  Six (6) of the incidents reported for this year involved bicyclists under the age of fifteen.

20.    In 2013, according to OTS data, the CITY OF PASADENA registered 97 fatality and injury collisions involving cyclists, placing the CITY OF PASADENA 4th out of 56 compared to other cities with similar-sized populations.  Eight (8) of the incidents reported for this year involved bicyclists under the age of fifteen.

21.    In their most recent report, OTS reported 115 traffic collisions in which a bicyclist was either injured or killed in the CITY OF PASADENA in 2014, placing the CITY OF PASADENA 2nd out of 57, compared to other cities with similar-sized populations for this year.  Six (6) of the incidents reported for this year involved bicyclists under the age of fifteen. The 2014 accidents included several in the vicinity of the SUBJECT ACCIDENT.

22.    For example, on January 26, 2014, a bicycle-automobile collision occurred at the intersection of North Los Robles Avenue and Villa Street in Pasadena, in which a bicyclist was injured.

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

5

EXHIBIT "3"
PAGE 88

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

23.    On April 23, 2014, a bicycle-automobile collision occurred at the intersection of East Mountain Street and Oakland Avenue in Pasadena, in which a bicyclist was injured.

24.    On April 28, 2014, a bicycle-automobile collision occurred at the intersection of East Mountain Street and Chester Avenue in Pasadena, in which a bicyclist was injured.

25.    On December 8, 2014, a bicycle-automobile collision occurred near the intersection of North Los Robles Avenue and Washington Place in Pasadena, in which a bicyclist was injured.

26.    On December 15, 2014, a bicycle-automobile collision occurred near the intersection of North Los Robles Avenue and Ashtabula Street in Pasadena, in which a bicyclist was involved.

27.    On December 30, 2014, a bicycle-automobile collision occurred near the intersection of North Los Robles Avenue and Parke Street in Pasadena, in which a bicyclist was injured.

## THE SUBJECT ACCIDENT

28.    On the morning of Monday, November 30, 2015, Andres was severely injured after being struck by an automobile while traveling on his bicycle on the southern portion of the SUBJECT INTERSECTION in Pasadena (the SUBJECT ACCIDENT).

29.    The SUBJECT ACCIDENT occurred when Andres was bicycling in an eastbound direction along the southern side of East Mountain Street and legally entered the SUBJECT INTERSECTION after the light turned green.  At that time he was struck by a car driving southbound on North Los Robles Avenue.

30.    As a result of the SUBJECT ACCIDENT, Andres suffered an incapacitating injury that ultimately claimed his life. Andres suffered a skull fracture, lung contusion requiring a bilateral chest tube, small arachnoid bleed, bleeding from left ear cause by mastoid bone fracture, cerebral edema which required an intra cranial monitor, and a left tibia compound fracture. Following the accident, Andres remained in a coma for approximately two months. He eventually awoke from the coma but remained in a semi-conscious state until his untimely death

6

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

EXHIBIT "3"
PAGE 89

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

on February 25, 2019. At all times from the point of the SUBJECT ACCIDENT to his death, Andres was completely incapacitated in a semi-conscious state.

31.    The CITY OF PASADENA is liable for the injuries and damages the decedent sustained in the SUBJECT ACCIDENT. The SUBJECT ACCIDENT was a result of dangerous conditions created by the CITY OF PASADENA and its respective agents, representatives and employees, which existed at the time Andres was struck by Ms. Licea.  The dangerous conditions included, by way of example and not limitation, (i) an inadequate timing on the traffic control devices present at the location, and/or unsafe mechanical maintenance of the same; and (ii) inadequate marking and delineation of the lanes, crosswalk, and other features of the SUBJECT INTERSECTION.

32.    The dangerous conditions created a substantial risk of injury to individuals, such as the decedent Andres Ramirez.  The dangerous conditions created a reasonably foreseeable risk of the harm that Andres sustained.  The dangerous conditions were the result of the CITY OF PASADENA and its agents, representatives and employees performing their public employment and public duties in a negligent manner. The CITY OF PASADENA and its respective agents, representatives and employees knew or should have known of the dangerous conditions.

33.    The accident was also caused by negligent acts and/or omissions of the CITY OF PASADENA and its respective agents, representatives and employees, which owed a duty of care to maintain the traffic control devices in a reasonable and safe condition to prevent injury or harm to members of the public, including Andres Ramirez.  The negligent or wrongful acts or omissions of the CITY OF PASADENA and its respective agents, representatives and employees were within the purpose, scope, or course of their employment to repair, maintain and operate the traffic control devices in a safe condition, including with respect to its timing mechanism, resulting in a breach of that duty and the creation of a dangerous condition.

34.    As a direct and proximate result of the dangerous condition, Andres Ramirez sustained special damages, including but not limited to medical expenses, economic loss, property loss, and other damages. Andres Ramirez was required to and did employ physicians

7

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

and surgeons and other medical personnel for the treatment and care of his injuries and thereby incurred medical expenses. Because Andres Ramirez' personal injury claims survive his death, the Estate of Andres Ramirez has been damaged in an amount to be proven at trial.

35.     Moreover, Elba Hernandez and the other Andres Ramirez' heirs have also suffered damages for the wrongful death of Andres Ramirez.

36.     Plaintiff Elba Hernandez therefore intends to seek all damages arising from Andres' injury and ultimate death, including survival damages and damages for wrongful death. The amount of damages in this case will require expert evidence to ascertain. This is an unlimited civil case.

## FIRST CAUSE OF ACTION

## WRONGFUL DEATH - DANGEROUS CONDITION OF PUBLIC PROPERTY (Gov't Code §835 *et seq.*)

## (As Against City of Pasadena and DOES 4 through 100)

37.     PLAINTIFFS incorporate all preceding and following paragraphs as if fully set forth herein.

38.     PLAINTIFFS are informed and believes that defendant the CITY OF PASADENA and DOES 4 through 100 are/were responsible for, among other things, the planning, supervision, control, installation, servicing, management, inspection, monitoring, testing, evaluation, improvement, redesigning, redevelopment, resurfacing, modification, operation, signing, striping, maintenance, repair, traffic control, and other activities related to the SUBJECT INTERSECTION of East Mountain Street and North Los Robles Avenue in Pasadena, California, including the roadway where this motor vehicle versus cyclist collision occurred, as well as the surrounding area. Said defendants were also responsible for the upkeep and maintenance of related appurtenances, infrastructure, and adjacent and related traffic control devices, lighting, trees, signs and safety devices and fixtures.  Upon information and belief, the CITY OF PASADENA and DOES 4 through 100 were negligent and careless in the installation, maintenance, inspection, repair, operation, and control of the SUBJECT INTERSECTION, and

8

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

the adjacent area, such that the roadway presented a dangerous, defective and hazardous condition. At all relevant times herein mentioned, the installation, maintenance, inspection, repair, operation and control of the roadway, and surrounding area, including timing parameters of traffic control devices, presented a reasonably foreseeable substantial risk of harm to members of the public who were lawfully operating vehicles, or otherwise on the roadway.

39.     Defendant CITY OF PASADENA and DOES 4 through 100 knowingly failed to properly install, work, operate, and/or inspect and/or maintain the marked crosswalk that injured Ramirez. Said failure is part of a pattern whereby Defendant the CITY OF PASADENA and DOES 4 through 100 fail to install, inspect, maintain, and operate facilities and/or equipment within their control notwithstanding that they knew or should have known that the facilities' poor condition and/or changed circumstances posed a serious threat to public health and safety.

40.     This incident was directly and legally caused by acts and/or omissions of the CITY OF PASADENA, DOES 4 through 100, and/or their employees or agents, including but not limited to:

a.     Failure to install, maintain, and/or operate adequate timing on the traffic control devices present at the location,

b.     Failure to establish adequate marking and delineation of the lanes, crosswalk, and other features of the SUBJECT INTERSECTION

c.     Failure to warn of and/or present and/or correct a "dangerous condition" (a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it would be used) on or immediately adjacent to, public property;

d.     Failure to provide and/or maintain adequate traffic control devices and warning signs alerting motorists to the crosswalk and the presence of those in the crosswalk;

e.     Failure to provide and/or maintain adequate signs, signals, "active" warning devices, channelizers, pavement markings and striping;

f.     Failure to post additional/supplemental signage, lighting, traffic control devices,

9

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

and/or pavement markings in view of what defendant knew or should have known to have been dangerous for those using the crosswalk; and

    g.    Failure to properly respond to the accident history in this area and complaints regarding collision dangers.

41.    The above-factors, both individually and in combination, created a dangerous condition of public property and presented a substantial risk of injury to members of the general public, including Andres Ramirez, who use the property, or adjacent property, with reasonable care, and in a reasonably foreseeable manner. Likewise, these factors, both individually and in combination, constituted a dangerous condition which had been, but was not, remedied by agents and employees of CITY OF PASADENA and DOES 4 through 100.

42.    The CITY OF PASADENA and DOES 4 through 100, and each of them, negligently created and/or possessed knowledge, actual or constructive, of the above described dangerous conditions, as well as the hazards and defects present in said roadway, and the surrounding area, but failed to take reasonable measures to address these dangers and hazards. Said Defendants, and each of them, were aware of prior similar accidents at this location and at other locations in the area and failed to take reasonable measures to mitigate the known dangers.

43.    As a proximate result of the above-described dangerous condition, Ramirez was hurt and injured in his health, strength, and activity, sustaining injury to his body and shock and injury to his nervous system and person. Following the accident, Ramirez remained in a coma for approximately two months. He eventually awoke from the coma but remained in a semi-conscious state until his death on February 25, 2019. Such injuries caused Andres to experience physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, anxiety, and emotional distress, all to his general damage.

44.    Andres Ramirez' personal injury claim survives his death and is now being pursued in this action by Elba Hernandez, personal representative of the Estate of Andres Ramirez and successor in interest to Andres Ramirez.

//

45.    As a direct and proximate result of the negligence of the DEFENDANTS, and

<div align="center">10</div>

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

EXHIBIT "3"
PAGE 93

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

1   each of them, including DOES 4 through 100, PLAINTIFFS suffered wrongful death and other

2   damages in an amount exceeding the jurisdictional minimum of this Court.

3        46.    WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS, and

4   each of them, as hereinafter set forth.

5

6   **SECOND CAUSE OF ACTION**

7   **SURVIVAL ACTION - DANGEROUS CONDITION OF PUBLIC PROPERTY (Gov't**

8   **Code §835 *et seq.*)**

9   **(As Against City of Pasadena and DOES 4 through 100)**

10        47.    PLAINTIFFS incorporate all preceding and following paragraphs as if fully set

11   forth herein.

12        48.    PLAINTIFFS are informed and believe that defendant the CITY OF

13   PASADENA and DOES 4 through 100 are/were responsible for, among other things, the

14   planning, supervision, control, installation, servicing, management, inspection, monitoring,

15   testing, evaluation, improvement, redesigning, redevelopment, resurfacing, modification,

16   operation, signing, striping, maintenance, repair, traffic control, and other activities related to the

17   SUBJECT INTERSECTION of East Mountain Street and North Los Robles Avenue in

18   Pasadena, California, including the roadway where this motor vehicle versus cyclist collision

19   occurred, as well as the surrounding area. Said defendants were also responsible for the upkeep

20   and maintenance of related appurtenances, infrastructure, and adjacent and related traffic control

21   devices, lighting, trees, signs and safety devices and fixtures.  Upon information and belief, the

22   CITY OF PASADENA and DOES 4 through 100 were negligent and careless in the installation,

23   maintenance, inspection, repair, operation, and control of the SUBJECT INTERSECTION, and

24   the adjacent area, such that the roadway presented a dangerous, defective and hazardous

25   condition. At all relevant times herein mentioned, the installation, maintenance, inspection,

26   repair, operation, and control of the roadway, and surrounding area, including timing parameters

27   of traffic control devices, presented a reasonably foreseeable substantial risk of harm to

28   members of the public who were lawfully operating vehicles, or otherwise on the roadway.

11

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

49.     Defendant the CITY OF PASADENA and DOES 4 through 100 knowingly failed to properly install, work, and/or inspect and/or maintain the marked crosswalk that injured Ramirez. Said failure is part of a pattern whereby Defendant the CITY OF PASADENA and DOES 4 through 100 fail to install, inspect, maintain, and operate facilities and/or equipment within their control notwithstanding that they knew or should have known that the facilities' poor condition and/or changed circumstances posed a serious threat to public health and safety.

50.     This incident was directly and legally caused by acts and/or omissions of the CITY OF PASADENA, DOES 4 through 100, and/or their employees or agents, including but not limited to:

a.     Failure to install, maintain, and/or operate adequate timing on the traffic control devices present at the location, and/or unsafe mechanical maintenance of the same;

b.     Failure to establish adequate marking and delineation of the lanes, crosswalk, and other features of the SUBJECT INTERSECTION

c.     Failure to warn of and/or present and/or correct a "dangerous condition" (a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it would be used) on or immediately adjacent to, public property;

d.     Failure to provide and/or maintain adequate traffic control devices and warning signs alerting motorists to the crosswalk and the presence of those in the crosswalk;

e.     Failure to provide and/or maintain adequate signs, signals, "active" warning devices, channelizers, pavement markings and striping;

f.     Failure to post additional/supplemental signage, lighting, traffic control devices, and/or pavement markings in view of what defendant knew or should have known to have been dangerous for those using the crosswalk; and

g.     Failure to properly respond to the accident history in this area and complaints regarding collision dangers.

51.     The above-factors, both individually and in combination, created a dangerous

12

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

condition of public property and presented a substantial risk of injury to members of the general public, including Andres Ramirez, who use the property, or adjacent property, with reasonable care, and in a reasonably foreseeable manner. Likewise, these factors, both individually and in combination, constituted a dangerous condition which had been, but was not, remedied by agents and employees of CITY OF PASADENA and DOES 4 through 100.

52.   The CITY OF PASADENA and/or DOES 4 through 100, and each of them, negligently created and/or possessed knowledge, actual or constructive, of the above described dangerous conditions, as well as the hazards and defects present in said roadway, and the surrounding area, but failed to take reasonable measures to address these dangers and hazards. Said Defendants, and each of them, were aware of prior similar accidents at this location and at other locations in the area and failed to take reasonable measures to mitigate the known dangers.

53.   As a proximate result of the above-described dangerous condition, Ramirez was hurt and injured in his health, strength, and activity, sustaining injury to his body and shock and injury to his nervous system and person.  Following the accident, Ramirez remained in a coma for approximately two months. He eventually awoke from the coma but remained in a semi-conscious state until his death on February 25, 2019. Such injuries caused Andres to experience physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, anxiety, and emotional distress, all to his general damage.

54.   Andres Ramirez' personal injury claim survives his death and is now being pursued in this action by Elba Hernandez, personal representative of the Estate of Andres Ramirez and successor in interest to Andres Ramirez.

55.   As a direct and proximate result of the negligence of the DEFENDANTS, and each of them, including DOES 4 through 100, PLAINTIFFS suffered wrongful death and other damages in an amount exceeding the jurisdictional minimum of this Court.

56.   WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS, and each of them, as hereinafter set forth.

//

//

13

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

**THIRD CAUSE OF ACTION**

**WRONGFUL DEATH - VICARIOUS LIABILITY (Gov't Code §815.4)**

**(As Against City of Pasadena and DOES 4 through 100)**

57.     PLAINTIFFS incorporate all preceding and following paragraphs as if fully set forth herein.

58.     PLAINTIFFS are informed, believe, and thereon allege that various individuals and entities, unknown at the present time, and therefore sued as DOE defendants, at all times mentioned herein, were independent contractors of Defendants the CITY OF PASADENA and DOES 4 through 100, and that Defendants the CITY OF PASADENA and DOES 4 through 100 were/are public entities pursuant to Government Code 811.2, and are, along with their employees, vicariously liable for the tortious acts and omissions of the independent contractors, sued herein as DOES pursuant to Government Code sections 815.2, 815.4, 820(a), 840.2, and 840.4.

59.     On the morning of Monday, November 30, 2015, Andres Ramirez was severely injured after being struck by an automobile while traveling on his bicycle on the southern portion of the SUBJECT INTERSECTION in the SUBJECT ACCIDENT. Andres Ramirez succumbed to injuries sustained as a result of SUBJECT ACCIDENT and passed on February 25, 2019.

60.     At the aforementioned time and place, Defendants the CITY OF PASADENA and DOES 4 through 100, individually and/or by and through their agents, servants, employees, and/or independent contractors, had a non-delegable duty to maintain and/or operate the traffic control devices in the SUBJECT INTERSECTION where the SUBJECT ACCIDENT occurred in a reasonable and safe condition to prevent injury or harm to members of the public, including Andres Ramirez, to avoid foreseeable accidents and to mitigate the potential harm occurring in such foreseeable accidents.

61.     DEFENDANTS, by and through their agents, servants and/or employees, disregarded said duty and allowed, caused, and/or failed to maintain and/or operate in a reasonably safe condition the traffic control devices where the SUBJECT INCIDENT occurred,

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

14
PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

EXHIBIT "3"
PAGE 97

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

1   to prevent injury or harm to members of the public.

2        62.    As a direct and proximate result of the negligence of DEFENDANTS, and each

3   of them, including DOES 4 through 100, as aforesaid, Mr. Ramirez sustained severe bodily

4   injuries, ultimately leading to his untimely death.

5        63.    As a direct and proximate result of the negligence of DEFENDANTS, and each

6   of them, including DOES 4 through 100, as aforesaid, PLAINTIFFS suffered damages in an

7   amount exceeding the jurisdictional minimum of this Court.

8

9                   **FOURTH CAUSE OF ACTION**

10   **SURVIVAL ACTION - VICARIOUS LIABILITY (GOV'T CODE §815.4)**

11        **(As Against City of Pasadena and DOES 4 through 100)**

12        64.    PLAINTIFFS incorporate all preceding and following paragraphs as if fully set

13   forth herein.

14        65.    On or about November 30, 2015 at or around 9:18 a.m., Andres Ramirez was

15   involved in a collision in which decedent was bicycling in an eastbound direction along the

16   southern side of East Mountain Street and legally entered the SUBJECT INTERSECTION after

17   the light turned green.  At that time he was struck by a car driving southbound on North Los

18   Robles Avenue.

19        66.    At the aforementioned time and place, DEFENDANTS individually and/or by

20   and through their agents, servants and/or employees, had a duty to maintain and/or operate in a

21   reasonably safe condition the traffic control devices where the SUBJECT INCIDENT occurred,

22   to prevent injury or harm to members of the public, including Andres Ramirez.

23        67.    DEFENDANTS, by and through their agents, servants and/or employees,

24   disregarded said duty and allowed, caused, and/or failed to properly maintain and/or operate in a

25   reasonably safe condition the traffic control devices where the SUBJECT INCIDENT occurred,

26   to prevent injury or harm to members of the public.

27        68.    As a direct and proximate result of the negligence of DEFENDANTS, and each

28   of them, including DOES 4 through 100, as aforesaid, Mr. Ramirez sustained severe bodily

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

EXHIBIT "3"
PAGE 98

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

1    injuries, ultimately leading to his untimely death.

2        69.    As a direct and proximate result of the negligence of DEFENDANTS, and each

3    of them, including DOES 4 through 100, as aforesaid, PLAINTIFFS suffered damages in an

4    amount exceeding the jurisdictional minimum of this Court.

5

6                      **FIFTH CAUSE OF ACTION**

7                 **WRONGFUL DEATH – NEGLIGENCE**

8        **(As Against Jacquelyn Licea and DOES 4 through 100)**

9        70.    PLAINTIFFS incorporate all preceding and following paragraphs as if fully set

10   forth herein.

11       71.    On or about November 30, 2015 at or around 9:18 a.m., Andres Ramirez was

12   involved in a collision in which decedent was bicycling in an eastbound direction along the

13   southern side of East Mountain Street and legally entered the SUBJECT INTERSECTION after

14   the light turned green.  At that time he was struck by a car driving southbound on North Los

15   Robles Avenue. The car was owned and/or operated by Jacquelyn Licea and DOES 4 through

16   100.

17       72.    Defendant Jacquelyn Licea and DOES 4 through 100, and each of them, were

18   negligent by, among other things, failing to keep a proper lookout, failing to drive in a

19   reasonable manner, violating various sections of the California Vehicle Code, and acting in such

20   a way as to endanger the life and safety of others, including Andres Ramirez.

21       73.    As a direct and proximate result of the negligence of the Defendant Licea and

22   DOES 4 through 100, Andres Ramirez sustained severe bodily injuries, ultimately leading to his

23   untimely death. Due to the passing of Andres Ramirez, his heirs now have a cause of action for

24   wrongful death through which they now seek all available damages.

25       74.    As a direct and proximate result of the negligence of the Defendant Licea and

26   DOES 4 through 100, PLAINTIFFS suffered damages in an amount exceeding the jurisdictional

27   minimum of this Court.

28   //

<div align="center">16</div>

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

EXHIBIT "3"
PAGE 99

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

### SIXTH CAUSE OF ACTION

### SURVIVAL - NEGLIGENCE

### (As Against Jacquelyn Licea and DOES 4 through 100)

75.    PLAINTIFFS incorporate all preceding and following paragraphs as if fully set forth herein.

76.    On or about November 30, 2015 at or around 9:18 a.m., Andres Ramirez was involved in a collision in which decedent was bicycling in an eastbound direction along the southern side of East Mountain Street and legally entered the SUBJECT INTERSECTION after the light turned green.  At that time he was struck by a car driving southbound on North Los Robles Avenue. The car was owned and/or operated by Jacquelyn Licea and DOES 4 through 100.

77.    Defendant Jacquelyn Licea and DOES 4 through 100, and each of them, were negligent by, among other things, failing to keep a proper lookout, failing to drive in a reasonable manner, violating various sections of the California Vehicle Code, and acting in such a way as to endanger the life and safety of others, including Andres Ramirez.

78.    As a direct and proximate result of the negligence of Defendant Licea and DOES 4 through 100, Andres Ramirez sustained severe bodily injuries, ultimately leading to his untimely death. His personal injury claims survive his death and PLAINTIFFS seek all available damages related thereto in this action.

79.    As a direct and proximate result of the negligence of Defendant Licea and DOES 4 through 100, PLAINTIFFS suffered damages in an amount exceeding the jurisdictional minimum of this Court.

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS, and each of them, as follows:

1.    For special damages, including medical expenses, according to proof;

2.    For other medical and related expenses, according to proof;

EXHIBIT "3"
PAGE 100

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

3.    For loss of care, comfort, society, solace, moral support, companionship, guidance and services;

4.    For loss of support and services in money or in kind;

5.    For loss of earnings and earning capacity;

6.    For funeral and burial expenses;

7.    For all past and future damages;

8.    For costs of suit incurred herein;

9.    For pre-judgment and post-judgment interest, at the maximum rate allowed by law, pursuant to Civil Code section 3291;

10.    Any further relief this Court deems appropriate.

Dated: July 16, 2019                    **THE X-LAW GROUP, P.C.**



By:    _____
       FILIPPO MARCHINO, ESQ.
       Attorneys for Plaintiffs

**<u>DEMAND FOR A JURY TRIAL</u>**

PLAINTIFFS hereby demand a trial by jury on all causes of action herein.

Dated: July 16, 2019                    **THE X-LAW GROUP, P.C.**

By:    _____
       FILIPPO MARCHINO, ESQ.
       Attorneys for Plaintiffs

18

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

# EXHIBIT 1

**EXHIBIT "3"**
**PAGE 102**

1   Michael J. Avenatti, State Bar No. 206929
    mavenatti@eaganavenatti.com
2   Carlos X. Colorado, Esq., State Bar No. 231031
    ccolorado@eaganavenatti.com
3   **EAGAN AVENATTI, LLP**
    520 Newport Center Drive, Suite 1400
4   Newport Beach, CA 92660
    Tel: (949) 706-7000
5   Fax: (949) 706-7050
6   Attorneys for Petitioner
7
8
9
10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11      **COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**
12
13  ANDRES RAMIREZ, a minor, by and        Case No. BC644094
    through his mother ELBA HERNANDEZ,
14                                          ASSIGNED FOR ALL PURPOSES TO:
                Petitioner,                 Hon. James C. Chalfant
15                                          Dept. 85
            vs.
16                                          **NOTICE OF RULING ON
                                            PETITIONER'S SECOND AMENDED
17  CITY OF PASADENA, a public entity;      PETITION FOR LEAVE TO FILE
    COUNTY OF LOS ANGELES, a public         ACTION AGAINST RESPONDENT
18  entity; and DOES 1 through 10, inclusive GOVERNMENT ENTITIES**
19              Respondents.                Date: May 23, 2017
20                                          Time: 1:30 p.m.
21                                          Dept.: 85
22
23
24
25
26
27
28
                            1
                    NOTICE OF RULING

                            **EXHIBIT "3"
                            PAGE 103**

1          **TO THE COURT AND ALL PARTIES OF RECORD:**

2          **PLEASE TAKE NOTICE** that on May 23, 2017, after review of the pleadings on file

3 and oral argument, Honorable James C. Chalfant granted Petitioner Andres Ramirez' Second

4 Amended Petition for Leave to File Action Against Respondent Government Entities, therefore

5 allowing Petitioner to file a lawsuit against the City of Pasadena per Government Code §946.6.

6          The matter came on for hearing at 1:30 p.m. on May 23, 2017 in Department 85 of the

7 above entitled Court, located at 111 N. Hill Street, Los Angeles, California, 90012. The Court

8 provided a tentative ruling to the parties before the hearing, attached hereto as Exhibit A.

9 During the hearing, the Court adopted its tentative ruling as its final decision.

10

11 Dated: June 2, 2017               EAGAN AVENATTI, LLP

12

13                         By: _____

14                             MICHAEL J. AVENATTI
                            Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">
2

**NOTICE OF RULING**
</div>

<div align="right">
**EXHIBIT "3"
PAGE 104**
</div>

# Exhibit A

EXHIBIT "3"
PAGE 105

Andres Ramirez v. City of Pasadena,
BC 644094

Tentative decision on petition for leave to
file a late claim: granted

    Petitioner Andres Ramirez ("Ramirez"), by and through his mother Elba Hernandez, applies for leave to file a late claim for damages against the City of Pasadena ("City"). The court has read and considered the moving papers (no opposition was filed), and renders the following tentative decision.

## A. Statement of the Case

    Petitioner Ramirez commenced this proceeding on December 20, 2016. The operative pleading is the Second Amended Petition ("SAP") filed May 1, 2017. The SAP alleges in pertinent part as follows.

    On November 30, 2015, Petitioner Ramirez was severely injured after being struck by an automobile while traveling on his bicycle on the southern portion of the intersection at North Los Robles Avenue and East Mountain Street in the City. On the date of the accident, Petitioner Ramirez was 12 years old and a minor. Following the accident, Ramirez remained in a coma for approximately two months. When he awoke from the coma, Ramirez was unresponsive and is currently in a vegetative state.

    Petitioner's mother first discovered a cause of action against the City on April 18, 2016 when she received a report from the Pasadena Police Department ("PPD"). Petitioner's original attorney's, through mistake and inadvertence, did not file a government tort claim within six months of the accident. On October 7, 2016, Petitioner timely presented a tort claim to the City. The claim stated that the date of accrual was April 18, 2016. On October 17, 2016, the City rejected the claim as untimely. On October 21, 2017, Petitioner filed an application for leave to present a late claim. The City denied the application on November 2, 2016.

    Petitioner alleges that the claim against the City was timely filed based on the accrual of the claim on April 18, 2016. In the alternative, Petitioner alleges that the City should have granted the application for leave to present a late claim because Petitioner was a minor and incapacitated during the entire claim period.

## B. Applicable Law

    Under the Government Claims Act, a plaintiff bringing suit for monetary damages against a public entity or employees thereof must first present a claim to the public entity ("government claim") which must be acted upon or deemed rejected by the public entity. Govt. Code[1] §§945.4, 950.2, 950.6(a). To be timely, a government claim for damages must be presented to the public entity within six months of the date the cause of action accrued. §911.2.

    If a plaintiff fails to present a government claim within the six-month period, he or she may apply to the public entity for permission to present a late claim. §911.4. Such an application must be presented within a reasonable time, and not later than one year after the cause of action's accrual. §911.4(b).

    If the public entity denies the application for permission to present a late claim, the

---

[1] All further statutory references are to the Government Code.

1

EXHIBIT "3"
PAGE 106

plaintiff may file a civil petition for relief from section 945.4's requirement of timely claim presentation prior to suit.  §946.6.  The petition must be filed within six months after the application to the public entity is denied or deemed to be denied.  §946.6(b)  The petition must show: (1) that an application was made to the public entity under section 911.4 and was denied or deemed denied; (2) the reason for failure to timely present the claim to the public entity within the time limit specified in section 911.2; and (3) the information required by section 910. §946.6(b).

The court shall grant relief only if it finds that (1) the application to the public entity for leave to file a late claim was made within a reasonable time not to exceed one year after accrual of the claim as specified in section 911.4(b), (2) was denied or deemed denied by the public agency pursuant to section 911.6, and (3) one or more of the following is applicable: (a) the failure to timely present the claim was through mistake, inadvertence, surprise, or excusable neglect, unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of section 945.4; (b) the person who sustained the alleged injury, damage or loss was a minor during all of the time specified in section 911.2 for the presentation of the claim; (c) the person who sustained the alleged injury, damage or loss was physically or mentally incapacitated during all of the time specified in section 911.2 for the presentation of the claim and by reason of that disability failed to present a claim during that time; or (d) the person who sustained the alleged injury, damage or loss died before the expiration of the time specified in section 911.2 for the presentation of the claim. §946.6(c).

### C. Analysis

Petitioner Ramirez, by and through his mother, seeks leave to file a late claim.  The pertinent facts are as follows.  Ramirez was struck by an automobile on November 30, 2015, while traveling on his bicycle on the southern portion of the intersection at North Los Robles Avenue and East Mountain Street.  Hernandez Decl. ¶2.  On the date of the accident, Ramirez was 12 years old.  Hernandez Decl. ¶3.  Due to the accident, Ramirez suffered from a skull fracture, lung contusion, arachnoid bleed, mastoid bone fracture, cerebral edema, and a lift tibia compound fracture.  Hernandez Decl. ¶4.  Andres remained in a coma for two months following the accident.  Id.  He is currently in a vegetative state and unresponsive.  Id.

The investigation by PPD was beset with lengthy delays and not completed until months after the accident.  Hernandez Decl. ¶5.  The police report was provided to Ramirez's family on April 18, 2016.  Id.; Avenetti Decl. Ex. E.  The report contains substantial errors, including a failure to provide relevant information in the diagram such as the area of impact.  Hernandez Decl. ¶6.  The report also made no reference to the presence or lack of skid marks.  Id. Ramirez's prior counsel did not appreciate that the accident was caused by faulty traffic light timing at the subject intersection.  Id.

Ramirez presented a tort claim to the City on October 7, 2016.  Avenetti Decl. ¶6, Ex. A. On October 17, 2016, the City rejected the claim as untimely.  Avenetti Decl. ¶8, Ex. B.  On October 21, 2016, Ramirez presented an application for leave to file a late claim to the City. Avenetti Decl. ¶10, Ex. C.  On November 2, 2016, the City denied the application.  Avenetti Decl. ¶13, Ex. D.

### 1. Accrual of the Claim

2

A cause of action accrues at the time a claim is complete with all of its elements. Norgart v. Upjohn, (1999) 21 Cal.4th 383, 397. An exception to this usual rule exists where accrual is delayed until the plaintiff discovers, or has reason to discover, the cause of action. Id. A plaintiff has reason to discover a cause of action when he or she "has reason to at least suspect factual basis for its elements." Id.

Ramirez's accident occurred on November 30, 2015. Hernandez Decl. ¶2. Ramirez alleges, however, that the cause of action did not accrue until April 18, 2016, when his mother learned for the first time of the existence of a claim against the City. Avenetti Decl. ¶6.

## 2. Presentation of the Claim

Section 911.2 mandates that claims based on causes of action for death and personal injury must be presented "not later than six months after the accrual of the cause of action."

According to Ramirez, his claim for personal injuries accrued on April 18, 2016. To be timely, Ramirez was required to present his claim to the City within six months of April 18, 2016, or by October 18, 2016. §911.2. He presented his claim within six months, on October 7, 2016. On October 17, 2016, the City rejected the claim as untimely. If the November 30, 2015 date of the accident is used, his claim was untimely.

## 3. The application to the public entity for leave to file a late claim was made within a reasonable time not to exceed one year after accrual of the claim

Ramirez was required to present his application for leave to file a late claim by April 18, 2017. The actual application was presented to the City on October 21, 2016. This was well within a year. Even if the November 30, 2015 date of the accident were used, the application was timely.

## 4. The application was denied or deemed denied by the public agency pursuant to section 911.6.

The City denied the application to present a late claim on November 2, 2016.

## 5. The Petition is timely

The petition for leave to file a late claim must be filed with the court within six months after the application to the public entity is denied or deemed to be denied. §946.6(b). The Petition was filed on December 20, 2016, within six months of the City's November 2, 2016 denial of leave to present a late claim.

## 6. The failure to timely present the claim was through mistake, inadvertence, surprise, or excusable neglect.

There is no reason to relieve Ramirez from the Government Claims Act's claim presentation requirements. Ramirez contends that his cause of action did not accrue when the accident occurred, but rather that it was delayed until April 18, 2016, because that was when Ramirez's mother first became aware of the claims against the City. Ramirez was in a coma and then unresponsive following the accident. Hernandez Decl. ¶4. The first time that Ramirez's mother was aware of a potential claim against the City was after receiving the PPD police report on April 18, 2016. The City has not opposed this petition or provided any evidence to counter Ramirez's assertion of delayed accrual.

3

Where a petitioner contends that his claim was timely presented because of delayed accrual, he may simply file a complaint for damages alleging timely compliance with the Claims Act. *See* Ngo v. County of Los Angeles, 207 Cal.App.3d 946, 950. The jury will then try the issue of claim accrual as a question of fact. Id. The court hearing a late claim petition under section 946.6 may not take from the jury the factual question of claim accrual. Id. A section 949.6 proceeding is akin to a relief from default, permitting a petitioner to proceed on the underlying suit. Id. By contending that his claim was timely, Ramirez may already do so.

Assuming *arguendo*, that Ramirez's claim accrued on November 30, 2015, Ramirez would be entitled to relief from the claims presentation requirement. Ramirez was a minor during the entire period specified under section 911.2 for presentation of a government claim, and is therefore relieved of the untimely failure to present his initial claim. §946.6(c)(2).[2]

In sum, Ramirez is not barred by the Government Claims Act from proceeding with his lawsuit, and the trial of that case will determine when his claim accrued. To the extent that Ramirez is wrong about the date of accrual, however, he was relieved from presentation requirements by his minor status.

---

[2] Ramirez's additional arguments that he should be excused for the additional reasons that he was incapacitated and that his former attorneys acted through mistake and inadvertence are not well taken. While Ramirez was in a coma and later vegetative state during the entire claims presentation period (Hernandez Decl. ¶4), Ramirez's mother, not Ramirez, was required to present the claim. His incapacity is technically irrelevant to this issue. The failure of Ramirez's former attorneys to appreciate that the City might be liable is not excused by flaws in the delayed police report. The attorneys must make their own investigation and cannot wait for and be excused by flaws in a police investigation.

4

1

### PROOF OF SERVICE – 1013a, 2015

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Orange, State of California. My business address is 520 Newport Center Dr., Suite 1400, Newport Beach, CA 92660.

4

5

On June 2, 2017, I served the following document(s) described as **NOTICE OF RULING ON PETITIONER'S SECOND AMENDED PETITION FOR LEAVE TO FILE ACTION AGAINST RESPONDENT GOVERNMENT ENTITIES** on the interested parties in this action as follows:

6

7

8

| | |
|---|---|
| John Nam, Esq., Deputy City Attorney | Attorneys for Defendant |
| Pasadena City Attorney's Office | CITY OF PASADENA |
| 100 N. Garfield Avenue, Rm. N210 | |
| Pasadena, CA 91109 | |
| Tel: (626) 744-4141 | |
| Fax: (626) 744-4190 | |
| jnam@cityofpasadena.net | |

9

10

11

12

[ ] **BY PERSONAL HAND DELIVERY SERVICE:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and personally hand delivered it to the attorneys of record for Defendants, at the above address.

13

14

[ ] **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Eagan Avenatti, LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

15

16

17

18

[ X ] **BY FEDEX/OVERNITE:** I am familiar with the practice of Eagan Avenatti for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by FedEx/Overnite that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by FedEx/Overnite with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by FedEx/Overnite at Eagan Avenatti, Newport Beach, California, following ordinary business practices.

19

20

21

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

23

Executed on June 2, 2017, at Newport Beach, California.

24

25

Suzy Garcia

26

27

28

3
**NOTICE OF RULING**

EXHIBIT 2

EXHIBIT "3"
PAGE 111

**CLAIM AGAINST THE CITY OF PASADENA**
(FOR DAMAGES TO PERSONS OR PERSONAL PROPERTY)

CITY CLERK

'19 MAY 22 04:33PM

*FOR CITY USE - DO NOT WRITE IN THIS AREA*

**Received via**

U.S. Mail ☐  Date:

Inter-Office Mail ☐  Time: _____  CLAIM #_____

Over the Counter ☑  SIGNATURE OF EMPLOYEE ACCEPTING CLAIM

A claim must be filed with the City Clerk's Office of the City of Pasadena no later than six (6) months after the incident or occurrence for death, injury to person or damage to personal property. Be sure your cause of action is against the City of Pasadena, not another public entity. Where space is insufficient, please use additional paper and identify information by paragraph number. All blanks must be completed. Completed claims must be mailed or delivered to:  City Clerk, 100 N. Garfield Ave., Room S228, P.O. Box 7115 Pasadena, California 91109-7215. See Government Code § 911.2 and Pasadena City Charter § 1011 for filing information on other types of claims.

**TO: The Council Members of the City of Pasadena, California**
**The undersigned respectfully submits the following claim:**

1. NAME OF CLAIMANT: Elba Hernandez, individually and on behalf of the Estate of Andres Ramirez and Andres Ramirez, deceased

   a. ADDRESS OF CLAIMANT: 5028 Templeton Street ___ City: Los Angeles ZIP CODE: 90032

   b. PHONE NO. (626) 807-5934 ___ c. BUS. PHONE NO. (626) 278-2565 ___ d. DATE OF BIRTH 08/08/1972

   e. SOCIAL SECURITY NO. 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 ___ f. DRIVER'S LIC. NO. (Y3328709

2. Name, telephone and post office address to which claimant desires notices to be sent if other than above:

   The X-Law Group, PC, 625 Fair oaks Avenue, Suite 390, South Pasadena, CA 91030, Tel: (213) 599-3380, Fax: (213) 599-3370

3. Occurrence or event from which the claim arises (see Government Code § 910c and d):
   *See Attachment "A"*

   a. DATE: November 30, 2015 ___ b. TIME: 9:18 a.m. ___ c. PLACE (state exact and specific

   location, including distances from known objects): At the intersection of North Los Robles Avenue and East Mountain Street

   in Pasadena, California, 91104.

   d. State the circumstances of the occurrence, transaction, act or defect you claim caused the injury or damage (use additional paper if necessary). State details describing any hazardous condition or wrongful actions of any City employee. Include measurements (including height, width and depth) of any property defect. Attach available photographs.

   See Attachment "A"

1

STR0081 (Rev. 7/07)

**EXHIBIT "3"**
**PAGE 112**

**READ CAREFULLY**

For all non-vehicle accident claims place names of streets (including North, East, South, and West) on the following diagram, and indicate place of accident by "X" and by showing house numbers or distances to street corners or known objects.

If a vehicle was involved, identify location on the diagram of City or other vehicle when you first saw it by letter "A"; location of yourself or your vehicle when you first saw City or other vehicle by letter "B"; and the point of impact by "X". Please use a box such as A or B to represent a vehicle.

NOTE: If diagrams below do not fit the situation, attach a proper diagram signed by claimant.

**FOR MOTOR VEHICLE ACCIDENTS**



f.   State exactly how the injury or damage occurred: See Attachment "A"

_____

_____

_____

4.   Give the name(s) of the City employee(s) causing the damage or injury if known (see Government Code § 910e):

Unknown

_____

_____

2

STR0081 (Rev. 7/07)

**EXHIBIT "3"**
**PAGE 113**

5. Give a description of the injury, property damage, loss or indebtedness, so far as is known at the time of this claim.  If there were no personal injuries, state "no injuries" (see Government Code § 910d):

See Attachment "A"

6. Damages claimed (see Government Code § 910f):

    a. If under $10,000, complete the following:

        (1) Amount claimed as of this date:          $ _____

        (2) Estimated amount of future costs:         $ _____

        (3) Total amount claimed:          $ _____

        (4) Basis of computation of amounts (include copies of all bills, invoices, estimates, etc.):_____

    b. If over $10,000, check either:

        (1) _____ under $25,000 (Municipal Court jurisdiction)

        (2) ____X____ over $25,000 (Superior Court jurisdiction)

7. Names, addresses and telephone numbers of all witnesses, hospitals, doctors, other persons injured, property owners, etc.:

    a. Rosalba Pacheco (witness): 829 N. Los Robles, Avenue, #1, Pasadena, CA 91101, (626) 321-2026

    b. Daniel Bennington (witness) 902 N. Los Robles Avenue, Pasadena, CA 91104, (213) 458-3696

    c. Cullen Armet (Witness): 491 Eldora Rd., Pasadena, CA 91104, (757) 645-8256

    d. Yajaidra Mendoza (Witness): 829 N. Los Robles Avenue, #1, Pasadena, CA 91101, (626) 321-2026

    e. Hospitals: (1) Huntington Hosp., (2) Kaiser Perm. Los Angeles Med. Ctr., (3) Totally Kids Sun Valley,
        (4) Totally Kids Loma Linda, (5) Children's Hospital Los Angeles, (6) Providence St. Joseph Med. Ctr.

8. Any additional information that might be helpful in considering the claim:

See Attachment "A"

***CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS.*** Every person who, with intent to defraud, presents any false claim or writing to the City for payment may be subject to imprisonment in a state prison and a fine of $10,000 (Penal Code § 72).

I have read the matters and statements made in the above claim and I know the same to be true of my own knowledge, except as to those matters stated upon information or belief, and as to such matters I believe the same to be true.  I certify under penalty of perjury that the foregoing is TRUE and CORRECT.

Signed this ___22nd___ day of ___May_____, 20_19_

at ___South Pasadena, California_____

                                     CLAIMANT'S SIGNATURE

                     Filippo Marchino, Esq., Attorney for Elba Hernandez
                            PRINTED OR TYPED NAME

3

STR0081 (Rev. 7/07)

**EXHIBIT "3"
PAGE 114**

ATTACHMENT "A" TO CLAIM AGAINST THE CITY OF PASADENA

**Further Information Regarding Question 3(a)**

 This is the **2nd** Government Tort Claim submitted surrounding the accident that occurred on November 30, 2015 in the City of Pasadena, involving Andres Ramirez. The reason for this 2nd Government Tort Claim is that during the pendency of the civil case against the City of Pasadena, the Plaintiff and prior claimant, Andres Ramirez, tragically passed away from the injuries he sustained in the subject accident.

 Now, his mother and guardian Elba Hernandez intends to continue the currently-pending litigation on behalf of herself, her deceased son, his Estate, and his heirs. Elba Hernandez thus intends to now bring wrongful death and survival claims against the City of Pasadena relating to the death of her son Andres Ramirez from the accident on November 30, 2015 at the intersection of North Los Robles Avenue and East Mountain Street in the City of Pasadena. In order to do so, she will amend the Complaint in the currently-pending action to substitute herself as the new plaintiff and to add causes of action for wrongful death and survival damages arising from the dangerous condition of public property that existed in the City of Pasadena on November 30, 2015, ultimately causing fatal injuries to the decedent, Andres Ramirez.

  **The full procedural history is as follows:**

1. On October 7, 2016, Decedent Andres Ramirez, prior to his death, timely presented a government tort claim to the City of Pasadena through his mother and guardian, Elba Hernandez.

2. On October 17, 2016, the City of Pasadena rejected the claim as untimely.

3. On October 21, 2016, Decedent Andres Ramirez filed an application for leave to present a late claim.

4. On November 2, 2016, the City denied the application.

5. On December 20, 2016, Decedent Andres Ramirez filed a Petition in the Los Angeles County Superior Court, case number BC644094, seeking Leave to File an Action

1

**EXHIBIT "3"**

**PAGE 115**

against Respondent Government Entities (the prior action).

6. On May 23, 2017, the Honorable James C. Chalfant granted Decedent Andres Ramirez' Second Amended Petition for Leave to File Action Against Respondent Government Entities, therefore allowing Andres Ramirez to file a lawsuit against the City of Pasadena.

7. Therefore, on June 5, 2017, Andres Ramirez filed an action in the Los Angeles County Superior Court entitled *Andres Ramirez, a minor, by and through his mother and guardian ad litem Elba Hernandez v. City of Pasadena*, Los Angeles Superior Court case number **BC664114** (the current action).

8. Tragically, on February 25, 2019, during the pendency of the current action, Andres Ramirez tragically passed away from complications arising from the injuries he sustained in the subject accident.

9. On May 21, 2019, Elba Hernandez obtained Special Letters of Administration allowing her to bring claims for wrongful death and survival on behalf of herself, the Estate of Andres Ramirez, Andres Ramirez, and the Andres Ramirez heirs.

10. This 2nd Government Tort Claim is therefore now being presented to the City of Pasadena so that Ms. Hernandez can continue the currently-pending action in the Los Angeles County Superior Court, amend the operative complaint to substitute herself as the plaintiff instead of her deceased son, and to assert causes of action for wrongful death and survival damages on behalf of herself, the Estate of Andres Ramirez, Andres Ramirez, and the Andres Ramirez heirs.

11. Accordingly, both the original plaintiff Andres Ramirez, and the new plaintiff Elba Hernandez, timely complied with the presentation requirements of the Government Tort Claims Act by presenting timely government tort claims to the City of Pasadena.

//

//

2

Responses 3(d), 3(f) and 8:

On the morning of Monday, November 30, 2015, twelve year- old Andres Ramirez was severely injured after being struck by an automobile while traveling on his bicycle on the southern portion of the intersection at North Los Robles Avenue and East Mountain Street in Pasadena. Andres was bicycling in an eastbound direction along the southern side of East Mountain Street and legally entered the intersection after the light turned green. Andres Ramirez was then struck by a car driven by Jacquelyn Licea, who was driving southbound on North Los Robles Avenue.

The accident was a result of dangerous conditions created by the City of Pasadena and its agents, representatives and employees, which existed at the time Andres Ramirez was struck by the vehicle operated by Ms. Licea. The dangerous conditions included, by way of examples and not limitation, (1) an inadequate timing on the traffic control devices present at the location, and/or unsafe mechanical maintenance of the same; and (2) inadequate marking and delineation of the lanes, cross walk, and other features of the intersection. The dangerous conditions created a reasonably foreseeable risk of the harm that Andres Ramirez sustained. The dangerous conditions were the result of the City of Pasadena, its agents, representatives and employees performing their public employment and public duties in a negligent manner. The City of Pasadena, its agents, representatives and employees knew or should have known of the dangerous conditions.

The accident was also caused by negligent acts and/or omissions of the City of Pasadena and its agents, representatives and employees, which owned a duty of care to maintain the traffic control devices in a reasonable and safe condition to prevent injury or harm to members of the public, including Andres Ramirez. The negligent or wrongful acts or omissions of the City of Pasadena and its agents, representatives and employees within the purpose, scope, or course of their employment, to repair and maintain the traffic control device in an operable and safe condition, including with respect to its timing mechanism, resulted in a breach of that duty and created a dangerous condition. As a direct and proximate result of the dangerous condition, Andres Ramirez was required to and did employ physicians and surgeons and other medical personnel for the treatment and care of his injuries and thereby incurred medical expenses all to the damage of him and his Estate. As a further direct and proximate result of the dangerous condition, Andres Ramirez tragically passed away on February 25, 2019 from complications arising from the devastating injuries he sustained in the subject accident.

Response 5:

Andres Ramirez suffered a skull fracture, long contusion requiring a bilateral chest tube, small arachnoid bleed, bleeding from the left ear case by Mastoid bone fracture, cerebral edema which required an intra cranial monitor, and a left tibia compound fracture. Following the accident, Andres Ramirez remained in a coma for approximately two months. He eventually awoke from the coma but remained in a semi-conscious state until his tragic and untimely death on February 25, 2019. Andres Ramirez and the Estate of Andres Ramirez have claims for survival damages and Elba Hernandez and the other Andres Ramirez heirs have claims for wrongful death. This is an unlimited civil case.

3

**EXHIBIT "3"**

**PAGE 117**

Response 6:

Damages sought exceed $10,000,000.00; this case is an unlimited civil case. The exact amount will require expert evidence to ascertain.





Filippo Marchino, Esq.

4

# EXHIBIT 3



OFFICE OF THE CITY ATTORNEY/CITY PROSECUTOR

LIABILITY DIVISION

July 2, 2019

The X-Law Group, PC
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
Attn: Filippo Marchino

|  | RE: | City of Pasadena Claim No.: 13,330 |
|---|-----|-----|
|  | Date of Loss: | 11/30/2015 |
|  | Your Client: | Elba Hernandez |

Dear Mr. Marchino:

Notice is hereby given that the claim you presented to the City Clerk, on May 22, 2019, was rejected on July 2, 2019. This notice shall not be considered a waiver of any right which the City of Pasadena may have to object to the sufficiency or timeliness of your claim.

**<u>WARNING</u>**

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code Section 945.6.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

Sincerely,

Razmik Serkisian
Insurance and Claims Specialist

**EXHIBIT "3"**
**PAGE 120**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I hereby declare and state:

I am employed in the County of Los Angeles. I am over the age of eighteen years and not a party to the within entitled action. My business address is 100 North Garfield Avenue, Suite N-210, Pasadena, California. My mailing address is P.O. Box 7115, Pasadena, CA 91109-7215.

On July 2, 2019 I served the foregoing document described as:

**Notice of Claim Rejection**

On the interested parties by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

<div align="center">

The X-Law Group, PC
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
Attn: Filippo Marchino

</div>

[ **X** ]    BY MAIL:

[ **X** ]    As follows:  I am "readily familiar" with the City's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Pasadena, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

EXECUTED on July 2, 2019, at Pasadena, California.

Razmik Serkisian

**EXHIBIT "3"**
**PAGE 121**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 625 Fair Oaks Avenue, Suite 390, South Pasadena, CA 91030.

On July 16, 2019, I served the following document(s) described as **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES** on the interested parties in this action as follows:

Brian I. Hamblet, Esq.
Carmen M. Aguado, Esq.
**BURKE WLLIAMS & SORENSON LLP**
444 South Flower Street, Suite 2400
Los Angeles, CA 90071
Tel: (213) 236-0600
Fax: (213) 236-2700
BHamblet@bwslaw.com
CAguado@bwslaw.com

Attorneys for Defendant
CITY OF PASADENA

Jim B. Abeltin, Esq.
**ABELTIN & MIGOYA LLP**
250 N. Golden Circle Dr., Suite 115
Santa Ana, CA 92705
Tel: (714) 480-1080
Fax: (714) 480-1079
JAbeltin@AbeltinMigoya.com

Attorneys for Defendant,
JACQUELINE LICEA

**[ X ] BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons identified in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with my firm's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 16, 2019, at South Pasadena, California.



Declarant

---

19
PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

**EXHIBIT "3"**
**PAGE 122**

THE X-LAW GROUP, P.C.
625 Fair Oaks Avenue, Suite 390
South Pasadena, CA 91030
213.599.3380 phone • 213.599.3370 fax

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **THIRD AMENDED COMPLAINT**  will be served or was
served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated
below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August
4, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **August 4, 2022**, I served the following persons and/or entities at the last
known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**MAIL REDIRECTED TO TRUSTEE 09/23/19**
**DEBTOR**
EAGAN AVENATTI, LLP
~~20341 SW BIRCH, SUITE 220~~
~~NEWPORT BEACH, CA 92660-1514~~

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to
F.R.Civ.P. 5 and/or controlling LBR, on **August 4, 2022**, I served the following persons and/or entities by personal
delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission
and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the
judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT,
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 4, 2022 | Cynthia Bastida | */s/ Cynthia Bastida* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
4839-2771-4732, v. 1

**F 9013-3.1.PROOF.SERVICE**

1. __TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)__:  CONTINUED:

- **ATTORNEY FOR DEFENDANT THE X-LAW GROUP, PC AND DEFENDANT FILIPPO MARCHINO:** David B Golubchik    dbg@lnbyb.com, stephanie@lnbyb.com
- **ATTORNEY FOR PLAINTIFF RICHARD A MARSHACK:** D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR PLAINTIFF RICHARD A MARSHACK:** Richard L Kellner    rlk@kellnerlaw.com, irma.c.deleon@gmail.com
- **ATTORNEY FOR PLAINTIFF RICHARD A MARSHACK:** Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **DEFENDANT AND ATTORNEY FOR DEFENDANT THE X-LAW GROUP, PC; DEFENDANT YOUNG BLUE LLC; DEFENDANT ELBA HERNANDEZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE AND SUCCESSOR IN INTEREST TO ANDRES RAMIREZ, DECEASED; DEFENDANT FILIPPO MARCHINO; AND DEFENDANT SANDY LE, INDIVIDUALLY AND ON BEHALF OF TINA NGAN LE, DECEDENT:** Filippo Marchino    fm@xlawx.com, tc@xlawx.com; tg@xlawx.com
- **CHAPTER 7 TRUSTEE:** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **MEDIATOR:** Alan I Nahmias    anahmias@mbn.law, jdale@mbnlawyers.com
- **ATTORNEY FOR DEFENDANTS THE X-LAW GROUP, PC AND FILIPPO MARCHINO:** Kurt Ramlo    kr@lnbyb.com, kr@ecf.inforuptcy.com
- **ATTORNEY FOR PLAINTIFF RICHARD A MARSHACK:** John P. Reitman    jreitman@landaufirm.com, vrichmond@landaufirm.com; avedrova@landaufirm.com; hrichmond@landaufirm.com
- **UST:** United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_
4839-2771-4732, v. 1

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT 6

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

EAGAN AVENATTI, LLP                    CASE NO.: 6:17-bk-01329-KSJ

          Debtor.                      Chapter 11

_____/

## CHAPTER 11 CASE MANAGEMENT SUMMARY

EAGAN AVENATTI, LLP, ("EA" or "Debtor") through its undersigned proposed counsel and in compliance with Local Rule 2081-1, hereby files this Chapter 11 Case Management Summary.

1.    **Description of the Debtor's business.**

EA focuses on complex class action and tort litigation in state and federal venues throughout the United States, including Florida. EA was co-founded by Michael Avenatti, its now Managing Partner, in 2007. Following Mr. Avenatti's undergraduate education at the University of Pennsylvania, and while in law school at George Washington University, Mr. Avenatti served as a public relations consultant and strategist to litigants and political candidates on a national level. Mr. Avenatti graduated first in his class at George Washington and he presently serves on the law school's Board of Advisors. In 2002, the university established The Michael J. Avenatti Award for Excellence in Pre-Trial and Trial Advocacy, an award given annually to a member of the graduating JD class for demonstrating excellence in pre-trial and trial advocacy courses. In 2007, Mr. Avenatti was selected by the Daily Journal Corporation as one of California's top trial lawyers under 40. In 2009, he was voted by his peers in Southern California as the top trial lawyer of the year. In 2013, Mr. Avenatti was selected by his peers for

inclusion in the 2013 edition of The Best Lawyers in America. He routinely receives similar acknowledgements from other "ratings" publications.

The firm has been involved in numerous significant and high-profile legal matters throughout the last ten years. EA's cases are routinely featured in the national and international press, including on national news networks (i.e. CNN) and news magazine shows (i.e. 60 Minutes), as well as in the *New York Times*, *Los Angeles Times*, and *Wall Street Journal*. The firm's most recent appearance on *60 Minutes* was less than one year ago in connection with a large case brought on behalf of healthcare workers harmed by a company's faulty products. Since formation, EA has been responsible for securing over $400 million in verdicts and settlements on behalf of its clients as lead counsel. . The firm appears in cases across the country and has pending cases in numerous states including Florida.

In addition to Mr. Avenatti, EA employees a highly qualified staff of nine [9] and seven [7] other accomplished attorneys, many of whom graduated from extremely well respected law schools, and have considerable experience in large, nationally recognized law firms, as well with federal clerkships.

**2.      Locations of the Debtor's operations and whether leased or owned.**

EA's office is located at 520 Newport Center Drive, Suite 1400, Newport Beach, California 92660. EA leases its premises from the Irvine Company, and EA is current in its lease payments. Standard utilities are included with EA's lease payments.

**3.      Reasons for filing Chapter 11.**

On March 1, 2017 ("Involuntary Petition Date"), an involuntary Chapter 11 petition (Doc. No. 1) was commenced against EA by Gerald Tobin ("Tobin" or "Petitioning Creditor") in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the

610480927.1

"Court"). Tobin is a private investigator who performed services requested by EA. Tobin has an unsecured claim against EA in the approximate amount of $28,000 and is believed to reside in the Orlando area.

Five days after the Involuntary Petition Date, on March 6, 2017, Jason Frank Law, PLC filed an Emergency Motion for Limited Relief from the Automatic Stay (Doc. No. 3) ("Stay Motion") and a hearing was quickly set on March 8, 2017. In the Stay Motion, JFL sought leave to arbitrate a dispute concerning a now former, _non-equity_ partner of EA, Jason Frank.  That dispute centers on the following facts.

In May of 2016, Mr. Frank and two other attorneys - Scott Sims and Andrew Stolper - were terminated from EA due to their breaches of fiduciary duty and underhanded dealings in attempting to secretly establish a competing law firm for months while at the same time receiving significant compensation from EA.  On Friday, May 20, 2016, at approximately 11:00 a.m., EA's management discovered by pure happenstance[1] that the three attorneys had been spending, since at least March (later discovered to be February), considerable time and effort during working hours and while employed at EA forming a competing law firm and plotting to take cases of EA's with them in the months to follow.  The three attorneys did so at the same time they were being highly compensated by EA and while purposely taking steps to hide their activities from the firm, including through the use of personal e-mail accounts and fabricated firm names.  Within two hours of this discovery by EA, the three attorneys were locked out of EA's offices and computer systems.  For instance, Mr. Sims was told to immediately pack his

---

[1] Mr. Frank was having problems with his firm issued cell phone and asked the firm's Office Manager to assist with resolving the problems.  When she attempted to do so, she discovered that Mr. Frank had inadvertently left an email open on his phone from a non-firm email address showing communications with Messrs. Sims and Stolper months prior (in _March)_ concerning the creation of a website for a new competing law firm they were planning to open.

personal belongings and leave.  He was subsequently physically escorted out of the firm's offices.  Following their termination, the three attorneys quickly formed a new firm - Frank Sims Stolper, LLP ("FSS").  They then proceeded to convince various EA clients to leave EA and install FSS as their counsel, despite the fact that in many instances their cases were on the verge of settling (after EA had devoted years of effort and resources litigating on their behalf).

At the conclusion of the hearing on the Stay Motion, this Court accelerated the timeline for EA to determine whether or not it would consent to a Chapter 11 order for relief.  EA quickly evaluated its assets, liabilities, and the expenses associated with discovery, depositions, and a full seven day JAMS Arbitration hearing scheduled to begin on March 13.  The firm also evaluated Mr. Frank's insatiable demands in the arbitration, including his claims for millions of dollars in bonus payments, and, rather incredibly, a demand by Mr. Frank for salary and the costs of healthcare benefits all the way through December 2016, *a full six months after he (i) was discovered to be establishing a direct competitor of EA and (ii) formed that new competing firm following his termination.*  In addition, JFL sought a declaratory order that JFL was entitled to a full twenty percent [20%] of any revenue associated with numerous pending cases and a declaratory order that EA was not entitled to <u>any</u> fees in *quantum meruit* for *the years* of substantial time and extensive resources and expenses EA had devoted to the cases and clients Mr. Frank took from the firm after his scheme was discovered and he was terminated.[2]  Indeed, in connection with those matters, EA has filed numerous liens, claims and actions (as required)

---

[2] In essence, what Mr. Frank attempted was to have the arbitration panel issue a far-reaching, blanket decision that EA would get no fees from any of the cases Mr. Frank took from the firm, thus undercutting EA's ability to have its share determined on a case-by-case basis as required (and as EA is pursuing in individual forums).  He also sought to have this decision made without disclosing the actual amount of fees at issue (i.e. millions of dollars).  Indeed, Mr. Frank has refused to share details relating to settlements in a number of cases at issue, thus leaving EA in the dark as to amount of fees to which it may be entitled.

4

610480927.1

in order to protect its rights to substantial fees in those cases, some of which are expected to be worth millions.  Pre-petition, EA was aggressively pursuing those fees, which are the property of EA's Chapter 11 estate, on a case-by-case basis in a number of different forums.

The bulk of EA's business focuses on litigation of complex contingency and class action lawsuits. By their nature, these cases do not pay out until litigation is concluded or settled, which often takes several years, during which time EA routinely invests millions of dollars in investigating claims, conducting discovery, hiring experts and preparing for trial.[3]  Because of this, EA has outstanding obligations to trade and other creditors who have assisted EA in getting cases ready for trial. On the Involuntary Petition Date, EA had approximately $20 million in outstanding obligations, a portion of which is owed as a result of this work. Mr. Frank, however, wants to leave EA and its creditors on the hook for these substantial sunk costs while whisking substantial EA revenues away to his new firm, which, in turn, would substantially jeopardize and impair EA's ability to service debt and meet other ongoing obligations, including its possible obligations to certain governmental creditors.  As such, on March 10, EA filed an Answer and Consent to Entry of Order for Relief (Doc. No. 10).

4.      **List of officers, directors and insiders (including relatives of insiders), if applicable, and their salaries and benefits at the time of filing and during the one year prior to filing**

Michael Avenatti is EA's Managing Partner and serves as the firm's sole executive officer.  In 2015, Mr. Avenatti's compensation was approximately $1,000,000. In 2016, Mr. Avenatti's compensation was approximately $850,000.  Mr. Avenatti also receives healthcare benefits consistent with the other employees at the firm.

---

[3] After EA's former attorneys were terminated, EA learned that the former attorneys had been endeavoring to settle certain matters immediately after their planned departure from EA in order to take the full settlement proceeds into their new firm to the detriment of EA and its creditors.

610480927.1

**5.      The Debtor's annual gross revenues.**

In 2015, EA estimates its annual gross revenue was $6.5 million. In 2016, EA estimates

its annual gross revenue to have been $7.7 million.  The 2015 and 2016 figures are estimated, in

part, because accounting adjustments may be made, and, in part, because the entitlement to

certain revenues is in question as a result of the departure of the three former EA attorneys and

the disputes over, among other things, entitlement to revenues.

**6.      Amounts owed to various creditors, including current year to date and prior fiscal
        year.**

> **(i)      priority creditors such as governmental creditors for taxes**

EA believes two creditors assert priority claims— the federal government and the

State of California.  EA disputes these claims, and intends to work with the state and

federal government to arrive at an agreement upon any actual amounts owing and to

satisfy any such agreed obligations in a Chapter 11 plan.

> **(ii)     secured creditors and their respective collateral**

EA believes it has no more than two or three creditors claiming to have liens

secured by potential proceeds of certain class action cases. EA is in the process of

investigating whether any such liens exist.

> **(iii)    unsecured creditors**

EA has approximately thirty [30] creditors with unsecured claims, some of which

are disputed. Among those creditors is Mr. Frank, whose claims EA obviously disputes

and also seeks a set-off.

610480927.1

7.    **General description and approximate value of the Debtor's current and fixed assets.**

EA's primary asset is its anticipated recoveries from pending class action and contingency litigation, which EA presently values at approximately $45 million. EA also has office furnishings and equipment which it estimates as being worth between $100,000 and $150,000.

8.    **Number of employees and gross amounts of wages owed as of petition date.**

EA has sixteen [16] employees, seven [7] of whom are attorneys and nine [9] of whom are paraprofessionals and staff. EA's employees are paid twice each month, on the 15th and on the last day of the month. Each payroll is approximately $88,300, including taxes, although the amount can vary due, for example, to overtime. On the Involuntary Petition Date (March 1), EA was current in all payments to its employees, who had recently been paid on February 28, 2017.

9.    **Status of the Debtor's payroll and sales tax obligation.**

EA has no outstanding sales tax obligations. The federal government claims EA has certain payroll taxes owing, which EA disputes. EA will resolve this dispute in its Chapter 11 case and will pay any amounts found to be due and owing in its Chapter 11 plan.

10.   **Anticipated emergency relief to be requested within the first 14 days after the Involuntary Petition Date.**

Although EA does not believe there are any perfected liens on cash, in the abundance of caution, EA intends to file a motion to use cash collateral. In addition, EA intends to file a motion to pay gap wage claims and a utility motion.

610480927.1

**11. The Debtor's strategic objectives for its Chapter 11 case.**

EA intends to resolve any and all issues concerning claims by governmental and other creditors, including any claims to past and future revenue, during this Chapter 11 case and to confirm a Chapter 11 reorganization plan providing for payment upon all claims.

DATED: March 14, 2017       */s/ Tiffany D. Payne*

Elizabeth A. Green, Esq.
Florida Bar No.: 0600547
Email: egreen@bakerlaw.com
Tiffany D. Payne, Esq.
Florida Bar No.: 0421448
Email: tpayne@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 S. Orange Ave, Suite 2300
Orlando, FL 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
*Proposed counsel to Eagan Avenatti, LLP*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on March 14, 2017**,** a true copy of the foregoing **CHAPTER 11 CASE MANAGEMENT SUMMARY** was filed with the Court using the CM/ECF System which will provide notice of such filing to all parties requesting such notice and/or via U.S. First Class Postage Prepaid Mail to the following: Eagan Avenatti LLP, 520 Newport Center Drive, #1400, Newport Beach, CA 92660 (*Debtor*); Gerald Tobin, 2014 Edgewater Drive, #169, Orlando, FL 32804 (*Petitioning Creditor*); Isaac M. Marcushamer, Esq., Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131.5319 (*a/f Jason Frank Law, PLC*); Internal Revenue Service, Post Office Box 7346, Philadelphia, PA 19101-7346; All Creditors and Parties-In-Interest (*which includes the 20 Largest Unsecured Creditors*) on the matrix attached hereto and filed with the Court; and the Office of the U.S. Trustee, 400 West Washington Street, Suite 1100, Orlando, Florida 32801.

*/s/ Tiffany D. Payne*
Tiffany D. Payne, Esq.

8

Case 6:17-bk-01329-KSJ    Doc 19    Filed 03/14/17    Page 9 of 10
Case 8:17-ap-00961-KSJ    Document 14-7    Filed 05/17/17    Page 9 of 10    Desc
Main Document    Page 9 of 10

```
Label Matrix for local noticing        Eagan Avenatti LLP                      Jason Frank Law, PLC
113A-6                                  520 Newport Center Drive #1400         c/o Isaac M. Marcushamer, Esq.
Case 6:17-bk-01329-KSJ                  New Port Beach, CA 92660-7034          Berger Singerman LLP
Middle District of Florida                                                     1450 Brickell Avenue
Orlando                                                                        Suite 1900
Tue Mar 14 10:04:41 EDT 2017                                                   Miami, FL 33131-5319

Gerald Tobin                            Authentic Entertainment                Authentic Entertainment
2014 Edgewater Drive #169               Properties Development, LLC            Properties, LLC
Orlando, FL 32804-5312                  c/o Andrew D. Stolper, Esq.            c/o Andrew D. Stolper, Esq.
                                        19800 MacArthur Blvd., #855            19800 MacArthur Blvd., #855
                                        Irvine, CA 92612-8444                  Irvine, CA 92612-8444


Baker, Keener & Nahra LLP               California Bank & Trust                Competition Economics, LLC
633 West Fifth Street                   PO Box 30833                           2000 Powell Street
Suite 5400                              Salt Lake City, UT 84130-0833          Suite 510
Los Angeles, CA 90071-2060                                                     Emeryville, CA 94608-1886


David W. Stewart, PhD                   (p)INTERNAL REVENUE SERVICE            Employment Development Dept.
13031 Villosa Place                     CENTRALIZED INSOLVENCY OPERATIONS      PO Box 989061
#121                                    PO BOX 7346                            West Sacramento, CA 95798-9061
Playa Vista, CA 90094-6500              PHILADELPHIA PA 19101-7346


FedEx                                   Filippo Marchino                       Green Street Advisors
PO Box 7221                             1910 West Sunset Blvd.                 660 Newport Center Drive
Pasadena, CA 91109-7321                 Suite 450                              Suite 800
                                        Los Angeles, CA 90026-7118             Newport Beach, CA 92660-6409


Internal Revenue Service                International Personnel                Jams
Post Office Box 7346                    Protection, Inc.                       PO Box 845402
Philadelphia PA 19101-7346              PO Box 92493                           Los Angeles, CA 90084-5402
                                        Austin, TX 78709-2493


Jason M. Frank                          Judicate West                          KNJ Ventures
Frank Sims Stolper, LLP                 1851 East First Street                 1106-A Broadway
19800 MacArthur Blvd.                   Suite 1600                             Santa Monica, CA 90401
Suite 855                               Santa Ana, CA 92705-4058
Irvine, CA 92612-8444


Norell Consulting, Inc.                 Personal Court Reporters Inc           Scott Sims
218 Catherine Park                      14520 Sylvan Street                    Frank Sims Stolper, LLP
Glendora, CA 91741-3017                 Van Nuys, CA 91411-2324                19800 MacArthur Blvd.
                                                                               Suite 855
                                                                               Irvine, CA 92612-8444


The Montage Laguna Beach                United States Trustee - ORL +          Elizabeth A Green +
Finance Dept.                           Office of the United States Trustee    Baker & Hostetler LLP
30801 South Coast Highway               George C Young Federal Building        200 S Orange Ave
Laguna Beach, CA 92651-4221             400 West Washington Street, Suite 1100 Suntrust Center, Suite 2300
                                        Orlando, FL 32801-2210                 Orlando, FL 32801-3432


Jill E Kelso +                          Isaac Marcushamer +                    Audrey M Aleskovsky +
Office of the United States Trustee     Berger Singerman, PA                   Office of the United States Trustee
400 W. Washington Street                1450 Brickell Avenue, 19th Floor       George C. Young Federal Building
Suite 1100                              Miami, FL 33131-3444                   400 West Washington St, Suite 1100
Orlando, FL 32801-2440                                                         Orlando, FL 32801-2210
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Department of the Treasury
Internal Revenue Service
Ogden, UT 84201-0039

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Karen S. Jennemann
Orlando

(d)Gerald Tobin
2014 Edgewater Drive
#169
Orlando, FL 32804-5312

(u)Note: Entries with a '+' at the end of the
name have an email address on file in CMECF
--------------------------------------------
Note: Entries with a '-' at the end of the
name have filed a claim in this case

End of Label Matrix
Mailable recipients    29
Bypassed recipients     3
Total                  32

# EXHIBIT 7

# EXHIBIT

## "A"

# SETTLEMENT AGREEMENT AND RELEASES

This Settlement Agreement and Releases ("Agreement") is entered into this 12th day of December 2017 by and between Jason Frank Law, PLC, a professional law corporation organized in California ("JFL"), Jason Frank ("FRANK"), an individual, Scott Sims ("SIMS"), an individual, Andrew Stolper ("STOLPER"), an individual, and Frank Sims & Stolper LLP, a limited liability partnership organized in California ("FSS") (collectively, the "JFL Parties"), on the one hand, and Eagan Avenatti LLP ("EA"), a limited liability partnership organized in California, Avenatti & Associates, APC ("A&A"), a professional corporation organized in California, Michael Avenatti ("AVENATTI"), an individual, and Michael Eagan, an individual ("EAGAN") (collectively, the "EA Parties"), on the other hand.  The JFL Parties and EA Parties are collectively referred to as the "Parties."

WHEREAS, JFL and FRANK entered into an Independent Contractor Agreement with EA effective November 1, 2013 (the "JFL Agreement") and prior to that time FRANK had been an employee of EA;

WHEREAS, SIMS entered into an Employment Agreement with EA dated March 1, 2014 (the "SIMS Employment Agreement");

WHEREAS, on or about February 28, 2016, JFL filed a Demand for Arbitration with JAMS against EA asserting claims for damages and other remedies for breach of contract, which demand was later amended to include claims for fraud, unjust enrichment, declaratory relief and punitive damages (the "JFL Arbitration");

WHEREAS, on or about May 20, 2016, JFL, FRANK, SIMS and STOLPER ceased practicing law at EA and formed a new law firm, FSS;

WHEREAS, the clients in the matters listed on Exhibit "A" (attached hereto) (collectively, the "Matters") terminated EA as their counsel in the Matters and retained FSS as their counsel in certain of the Matters;

WHEREAS, EA asserted attorneys' liens in the Matters and/or claimed it had the right to recover its reasonable attorneys' fees and costs for the work performed at EA on the Matters;

WHEREAS, on or about July 22, 2016, EA filed a Demand for Arbitration with JAMS against EA's former client, Kimberly Birbrower, seeking to recover fees and costs in the Birbrower v. Quorn Foods, Inc. matter, which is one of the Matters (the "EA/Birbrower Arbitration");

WHEREAS, on or about August 9, 2016, SIMS filed a Demand for Arbitration with JAMS against EA seeking certain sums owed under the SIMS Employment Agreement, including claims for breach of contract, fraud, accounting and constructive trust (the "SIMS Arbitration");

1

WHEREAS, on or about September 23, 2016, EA filed counterclaims against SIMS in the SIMS Arbitration asserting claims for breach of contract, fraud, violation of the California Uniform Trade Secret Act, breach of fiduciary duty, breach of duty of loyalty, conversion, accounting, and constructive trust;

WHEREAS, on or about September 12, 2016, EA filed counterclaims against JFL in the JFL Arbitration asserting claims for breach of contract, fraud, breach of fiduciary duty, breach of duty of loyalty, conversion, accounting, constructive trust and tortious interference;

WHEREAS, on or about December 15, 2016, EA filed a complaint in California Superior Court, County of Orange, Case No. 30-2016-00892564-CU-BC-CJC against its former client, William Scott Callaway, seeking to recover fees and costs in the Callaway v. Mercedes Benz USA, Inc. et al. matter, which is one of the Matters (the "EA/Callaway Lawsuit");

WHEREAS, on or about December 21, 2016, EA filed a complaint in California Superior Court, County of Orange, Case No. 30-2016-00893847-CU-MC-CJC against Paul Root and Madison Street Partners, Inc. asserting claims for aiding and abetting breach of duty of loyalty and aiding and abetting fraud (the "EA/Root Lawsuit");

WHEREAS, on or about February 8, 2017, EA's former clients, Authentic Entertainment Properties, LLC and Authentic Entertainment Properties Development, LLC (collectively "AEP") filed a Demand for Arbitration with JAMS against EA seeking declaratory relief and damages relating to EA's former representation of AEP in the AEP v. Royal Center Associates, LLC et al. matter, which is one of the Matters (the "AEP/EA Arbitration");

WHEREAS, on or about February 28, 2017, EA filed a motion to adjudicate its attorney lien against AEP in the District Court for Clark County Nevada, in the AEP v. Royal Center Associates, LLC et al. matter, which such motion was denied and is currently being appealed by EA;

WHEREAS, on or about March 1, 2017, an Involuntary Bankruptcy Petition against EA, seeking that EA be a debtor in a Chapter 11 case was filed in the Middle District of Florida, Case No. 6:17-bk-01329-KSJ (the "Bankruptcy Case");

WHEREAS, on or about March 10, 2017, EA consented to entry of Order for Relief in the Bankruptcy Case;

WHEREAS, on or about May 16, 2017, the Bankruptcy Case was transferred to the Central District of California, Santa Ana Division, before the Honorable Catherine E. Bauer (the "Bankruptcy Court"), and assigned a new case number 8:17-bk-1191-CB;

WHEREAS, on or about June 19, 2017, JFL filed a Proof of Claim in the Bankruptcy Case in the amount of not less than $18,615,886, which included (a) $12,396,633 in unpaid compensation under the JFL Agreement; (b) $1,868,221 in prejudgment, prepetition interest; (c) $500,000 in pre-petition attorneys' fees and costs; and (d) fraud damages and punitive damages in an unliquidated amount but likely in excess of $4,000,000;

WHEREAS, on or about June 19, 2017, FRANK, SIMS, STOLPER and FSS also filed Proofs of Claim in the Bankruptcy Case;

WHEREAS, on or about July 12, 2017, JFL filed a motion for relief from stay to proceed with the JFL Arbitration [Bankruptcy Case Docket Nos. 155, *et al.*] ("JFL RFS Motion"), the Debtor and certain other parties filed oppositions to the JFL RFS Motion, JFL filed a reply to those oppositions, a hearing on the JFL RFS Motion commenced on August 9, 2017 and was continued by direction of the Bankruptcy Court until September 20, 2017 and repeated times thereafter through and including December 13, 2017;

WHEREAS, AVENATTI is the managing member and majority equity holder of EA and solely owns and controls A&A;

WHEREAS, JFL, FRANK and SIMS have asserted that AVENATTI is personally liable to them for all or substantially all claims they have against EA and that A&A may be liable to them, all of which Avenatti and A&A dispute;

WHEREAS, it is in the personal, professional and business interests of AVENATTI and the professional and business interests of EA and A&A that the disputes among the JFL Parties and EA Parties be resolved promptly and each has concluded that he/it will received meaningful value if this Agreement is executed, approved and fully satisfied; and

WHEREAS, the Parties desire to resolve any and all disputes between them on the terms set forth herein (the "Settlement");

NOW THEREFORE, for and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Dismissal of Bankruptcy Case.**

   1.1.    Subject to Paragraph 1.5 below, the effectiveness of the terms and obligations of this Agreement are contingent upon (a) EA filing a motion ("Settlement and Dismissal Motion") with the Bankruptcy Court seeking entry of one or more orders (the "Orders") approving the Settlement and authorizing and directing the Debtor to fully comply with all terms of this Agreement pursuant to Fed. R. Bankr. Pro. 9019 ("Settlement Order"), and dismissing the Bankruptcy Case, pursuant to Bankruptcy Code Section 1112(b) ("Dismissal Order"), on terms acceptable to JFL and EA, on or before January 3, 2018, with a hearing on the Settlement and Dismissal Motion to be held on January 24, 2018; (b) entry of the Orders on or before January 31, 2018; (c) the Bankruptcy Case being dismissed within sixteen (16) calendar days after entry of the Dismissal Order; (d) execution of the Guaranty Agreement (as defined below), on or before December 12, 2017; and (e) if a stay of the Settlement Order or Dismissal Order has been entered pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure ("Rule 8007"), a

Termination Notice, as defined in Paragraph 1.5 below, having not been provided by JFL or EA. The proposed Order(s) are attached as Exhibit B.

1.2.     The JFL Parties will not oppose any of the relief sought in the proposed Orders, nor will they encourage others to do so, all subject to the timely satisfaction of the deadlines set forth herein (collectively "Deadlines").

1.3.     In the event the Orders are not entered by the Deadlines for their entry, or the Guaranty Agreement is not executed by the pertinent Deadline for its execution, the Parties shall be returned to the *status quo ante* prior to their execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.

1.4.     The hearing on the JFL RFS Motion shall be continued until January 24, 2018.

1.5.     If a stay of the Settlement Order or Dismissal Order is entered pursuant to Rule 8007 (a "Stay Order") or if the terms of this Agreement are materially modified by the Court, then JFL or EA may elect to withdraw from and terminate this Agreement, in which case this Agreement and all Orders entered thereon will be rescinded and all Parties will be restored to the *status quo ante* prior to the execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.  If JFL or EA elects to exercise this right to terminate this Agreement, it shall provide notice of this election to the other parties to this Agreement, in writing, within five (5) business days after the Stay Order is entered (the "Termination Notice").  Upon such election, the Parties will cooperate in taking any action necessary to request that the appropriate court vacate the Settlement Order, the Dismissal Order and Stay Order, and will not object to or oppose such actions.

1.6.     If a Stay Order is issued and neither JFL or EA elect to terminate the Agreement in accordance with Paragraph 1.5, then the time for performing all obligations under this Agreement will commence upon the later of: (a) sixteen (16) calendar days after the Stay Order is no longer in effect provided that the Settlement Order and Dismissal Order have been affirmed; or (b) the time when the obligation would have otherwise been required to be performed under the terms of this Agreement.

## 2.     Resolution of EA's Asserted Liens and Right to Attorneys' Fees and Costs in the Matters.

2.1.     Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, EA will withdraw all purported liens asserted in the Matters and will forever waive and forego, with prejudice and finality, any present or future claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or relating to the Matters.

137774123.8                                          4

Case 8:17-bk-11961-CHS Doc 483-1 Filed 03/18/19 Entered 03/18/19 21:06:01 Desc
Exhibit A - C to Declaration of Jason M. Frank Page 6 of 54
Main Document Page 47 of 67 Page 6 of 54

2.2.    Upon the sixteenth (16th) day following the entry of the Settlement Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the EA Parties will be deemed to have released and forever waived and foregone, with prejudice and finality, any present or future claims for damages, legal fees and costs, or other remedies against (a) the JFL Parties, (b) the current, prior or future parties in the Matters; (c) the current, prior or future co-counsel of EA or FSS in the Matters, or (d) any other party or their counsel for claims arising out of or relating to the Matters, as more fully set forth in Section 5 of this Agreement.

2.3.    In exchange for the consideration provided under the terms of this Agreement, JFL has agreed to reduce its claim in the Bankruptcy Case, as set forth in paragraph 3.1, below, and SIMS, FRANK, STOLPER and FSS have agreed to waive, forego and withdraw each of their claims in the Bankruptcy Case, subject to and except for the terms of the Releases provided in Paragraph 5 below and compliance with the terms and conditions of this Agreement.

2.4.    In addition, the JFL Parties have agreed that EA will receive 50% of any and all legal fees which would otherwise be paid to FSS or FRANK in the future in connection with FSS's contingency agreement with AEP in the <u>AEP v. Royal Center Associates, LLC et al.</u> matter.  This arrangement will be documented in a separate written agreement between EA, AEP and FSS (the "AEP Fee Sharing Agreement"), the execution of which shall be required for this Agreement to take effect.  A copy of the AEP Fee Sharing Agreement is attached as Exhibit C.

3.      **Settlement Payments to JFL**.

3.1.    Upon entry of the Settlement Order, JFL will have an allowed claim against EA in the amount of TEN MILLION DOLLARS ($10,000,000.00), which claim ("JFL Allowed Claim") of JFL and liability of EA will survive dismissal of the Bankruptcy Case, and will not be subject to any further defenses, offsets, counterclaims, oppositions, answers, objections, contests, disputes or other challenges by any EA Party or any other party, provided, however, if (a) the Dismissal Order is not entered, (b) a Stay Order is entered and a Termination Notice is timely sent, or (c) the Settlement Order is overturned, vacated or remanded on appeal, then the JFL Allowed Claim will be null and void and the proof of claim it filed in the Bankruptcy Case and all the claims, rights, and damages asserted therein and in the JFL Arbitration will remain pending.  Nothing in this Paragraph 3.1 is intended to limit the rights of any Parties to enforce the terms of this Agreement.[1]

---

[1] For the avoidance of any doubt, the Parties arrived at the JFL Allowed Claim amount of TEN MILLION DOLLARS ($10,000,000.00) <u>after</u> deducting the credit for fees on the Matters as described in Paragraph 2.3 above and additionally JFL, thereafter, further agreed to reduce its claim to TEN MILLION DOLLARS ($10,000,000.00) as part of this Settlement.  In other words, the Allowed Claim of TEN MILLION DOLLARS ($10,000,000.00) will not be further reduced by any credit for fees, costs, expenses, damages or any other compensation allegedly owed on the Matters.

Case 8:19-bk-11361-CB   Doc 480   Filed 07/30/19   Entered 07/30/19 21:09:51   Desc
Main Document    Page 43 of 67

Case 8:17-bk-11961-CB   Doc 4363   Filed 07/30/19   Entered 07/30/19 21:09:51   Desc
Exhibit A - C to Declaration of J. Bank   Page 7 of 54

3.2.    EA will pay JFL the sum of FOUR MILLION EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS ($4,850,000.00) pursuant to the following schedule:

>    3.2.1.  Within sixty (60) calendar days after the entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 and remains in effect, EA will wire JFL the sum of TWO MILLION DOLLARS ($2,000,000.00), in immediately available funds, pursuant to written wire instructions to be provided by JFL.

>    3.2.2.  Within one-hundred and twenty (120) calendar days after the entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 and remains in effect, EA will wire JFL the sum of TWO MILLION EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS ($2,850,000.00), in immediately available funds, pursuant to written wire instructions to be provided by JFL.

>    3.2.3.  The payments to be made in accordance with Paragraphs 3.2.1 and 3.2.2 are collectively referred to as the "Settlement Payments."

3.3.    In consideration of the terms of this Agreement, including, without limitation, the Releases set forth herein and the nature and pendency of the disputes between JFL and the EA Parties, AVENATTI agrees to personally guarantee, in his individual capacity, the FOUR MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS ($4,850,000.00) of Settlement Payments.  The complete terms of this guaranty shall be set forth in a separate agreement ("Guaranty Agreement") between JFL and AVENATTI. A copy of the Guaranty Agreement is attached as Exhibit D.

3.4.    As will be set forth in the Guaranty Agreement, it is the intention of JFL and AVENATTI that AVENATTI's payment obligations under the Guaranty Agreement shall be non-dischargeable, under 11 U.S.C. Section 523(b) in the event AVENATTI becomes a debtor in a bankruptcy case while the Settlement Payments remain outstanding and thereafter to the extent any party in (1) AVENATTI's bankruptcy case or (2) a subsequent bankruptcy case or similar proceeding in which EA is the debtor or has a similar role seeks to recover all or any portion of the Settlement Payments.

3.5.    If the Settlement Payments are paid by EA to JFL within the timeframes and in the manner required by this Agreement, then effective 367 calendar days after the final Settlement Payment is received by JFL, JFL will waive and forego its right to collect any part of the remaining FIVE MILLION ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($5,150,000.00) of its allowed claim.

3.6.    Remedy Upon Payment Default.  If the Settlement Payments are not made within three (3) business days of the applicable Settlement Payment date due, then all of the EA Parties agree that they will not oppose the entry by the Bankruptcy Court of a final, non-

appealable judgment against EA in favor of JFL in the amount of TEN MILLION
DOLLARS minus any amounts previously paid to JFL pursuant to this Agreement (the
"Final Judgment"), and will not oppose the reopening of the Bankruptcy Case for the
limited and sole purpose only of entering this Final Judgment. JFL and the EA Parties
expressly consent to the exclusive jurisdiction of the Bankruptcy Court to enter this Final
Judgment against EA. By seeking or obtaining any of the relief described in this
paragraph, JFL will not in any way waive or otherwise prejudice or impact its right to
enforce the personal guarantee and Guaranty Agreement set forth in Paragraphs 3.3 and
3.4 of the Agreement.

4.    **Dismissal of Lawsuits and Arbitrations.**

4.1.    Within sixteen (16) calendar days of entry of the Dismissal Order, and provided
no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule
8007, the commencing party in each of the following actions shall dismiss the actions and
all claims therein with prejudice: (a) the JFL Arbitration and EA's counterclaims therein;
and (b) the SIMS Arbitration and EA's counterclaims therein. With respect to the other
litigation, EA will not pursue the EA/Birbrower Arbitration, the EA/Callaway Lawsuit,
the EA/Root Lawsuit or any claims against AEP. AEP has dismissed, without prejudice,
the AEP/EA Arbitration.

5.    **Releases**.

5.1.    **Release of EA Parties by JFL Parties**.  Effective upon the latest of (a) entry of
Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy
Case, and provided no stay of the Settlement Order or Dismissal Order having been
issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and
other good and valuable consideration, JFL, FRANK, SIMS, STOLPER and FSS on their
own behalf and on behalf of each and all of their respective legal predecessors,
successors, assignees, attorneys, agents, partners, owners, employees, heirs, parents,
children, spouses, and related organizations hereby irrevocably and unconditionally
release, and fully and forever discharge, absolve, and covenant not to sue the EA Parties,
and each of them, and every one of their respective partners, officers, directors, owners,
agents, employees, companies, parents, subsidiaries, divisions, affiliates, attorneys,
trustees, legatee, personal representative, administrators, insurers, fiduciaries, executors,
representatives, predecessors, successors, assigns, related parties, heirs, parents, children
and spouses from and for any and all claims, causes of action, liabilities, damages, legal
or administrative relief, of any basis or source, whether known or unknown, that were,
have been or could have been asserted now, in the past, or in the future, including, but not
limited to, any and all claims raised in the JFL Arbitration, the Sims Arbitration or the
Bankruptcy Case and/or any and all claims arising out of or relating to the JFL
Agreement, the Sims Agreement and JFL's, Frank's, Sims' or Stolper's employment at or
other rendition of services at EA. However, and notwithstanding any other terms in this
Agreement, this release does not include or in any way release or waive claims held by
any of the JFL Parties for indemnification, contribution and insurance coverage for any
claims brought against them related to their employment at, or rendition of services at,

137774123.8                                7

EA, including without limitation indemnification for tax liability that they may have now or in the future against EA. Further, notwithstanding the foregoing or any other terms of this Agreement, the releases set forth in this paragraph shall not operate to release the EA Parties from any of their payment and other covenants, obligations and duties under this Agreement or the Guaranty Agreement, nor will they in any way waive, limit or foreclose any of the JFL Parties from seeking and obtaining any appropriate remedies for any violation of the terms of this Agreement or the Guaranty Agreement.

5.2.  **Release of JFL Parties by the EA Parties**. Effective upon the latest of (a) entry of the Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors, owners, executors, trustees and related parties hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the JFL Parties, and each of them, and every one of their respective partners, officers, directors, owners, agents, employees, companies, subsidiaries, divisions, affiliates, attorneys, trustees, legatee or personal representative, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related organizations, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future. This release includes, but is not limited to any and all claims or counterclaims raised in the JFL Arbitration, the SIMS Arbitration or the Bankruptcy Case and/or any and all claims arising out of or relating to the JFL Agreement, the SIMS Agreement or the Parties employment at EA or other rendition of services at EA, or any and all claims for tortious interference, unfair competition, misappropriation, trade secret, conversion, fraud, breach of fiduciary duty, breach of duty or other such claims against the JFL Parties. Notwithstanding the foregoing, theses releases shall not operate to release the JFL Parties from any of their covenants, obligations and duties under this Agreement or the Guaranty Agreement, nor will they in any way waive, limit or foreclose any of the EA Parties from seeking and obtaining any appropriate remedies or relief for any violation of the terms of this Agreement or the Guaranty Agreement.

5.3.  **Release of Counsel in the Matters by the EA Parties.** Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, each of EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the current, past or future co-counsel, in-house counsel, local counsel or subsequent

counsel for current, past or future clients of FSS in the Matters for any claims for
attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising
out of or related to the matters listed on Exhibit "A," whether known or unknown, that
were, have been or could have been asserted now, in the past, or in the future.   The
persons and entities covered by this release include, but are not limited to: (a) Franklin D.
Azar & Associates, P.C., Franklin D. Azar, Esq. Keith R. Scranton, Esq. and Jonathan
Parrott, Esq.; (b) Law Offices of Steven R. Young and Steven R. Young, Esq.; (c) Girardi
Keese, LLP and James O'Callahan, Esq.; (d) McNicholas & McNicholas, LLP, Patrick
McNicholas, Esq., Matthew McNicholas, Esq., Philip Shakhnis Esq., and Michael J.
Kent, Esq.; (e) Yuhl Carr LLP, Eric Yuhl, Esq. and Colin Yuhl Esq.; (f) Snell & Wilmer
LLP and Steve T. Graham; (g) Lewis Roca Rothgerber Christie LLP and Dan R. Waite,
Esq.; (h) Bridgford Gleason & Artinian, Richard K. Bridgford, Esq. and Michael H.
Artinian, Esq.; (i) Orrick, Herrington & Sutcliffe LLP and Jörg Ritter, Esq.; (j) Osborn
Machler and Simeon J. Osborn, Esq.; (k) Smyth & Mason PLLC and Jeffrey Smyth Esq.
and (l) FSS, FRANK, SIMS and STOLPER as well as their respective legal predecessors,
successors, assignees, attorneys, agents, partners, employees and related organizations.

5.4.   **Release of the Clients in the Matters by the EA Parties.**   Effective upon the
latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal
of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order
having been issued pursuant to Rule 8007, each of EA, EAGAN, A&A and AVENATTI
on their own behalf and on behalf of each and all of their respective legal predecessors,
successors, assignees, attorneys, agents, partners, employees, heirs, parents, children,
spouses, creditors and related organizations hereby irrevocably and unconditionally
release, and fully and forever discharge, absolve, and covenant not to sue the clients and
class members in the Matters for any claims for attorneys' fees, costs, expenses,
damages, or any other compensation or remedies arising out of or related to the Matters
whether known or unknown, that were, have been or could have been asserted now, in the
past, or in the future. The persons and entities covered by this release include, but are not
limited to: (a) Kimberly Birbrower; (b) William (Scott) and Elizabeth Callaway; (c)
Authentic Entertainment Properties, LLP, Authentic Entertainment Properties
Development, LLP, RCC Company, LLC, Robert Coffman, Robert O'Neil and Steve
Graham; (d) Hannes Kuhn; (e) Gary and Louise Weaver; (f) Jeffrey Wall; (g) the Estate
of Jonathan A. Spound, Corey Spound, Michael Spound, and Amy Spound; (h) Skylar
Ward; (i) Jamie Deehan; (j) Rasheed, Robinson and Jiminez; (k) Shayna Broadstone and
Kristine Billon; (l) Benjamin Lagunas, Dianna Mendoza and Susan Jung; and (m) Al
Chaffee, Yuping Chen, Jeanne Demund, Laird Devick, Todd Hager, Ash Hanlon, Peter
Heathcote, Nathaniel Heathcote, Mike Scheffler, Matthew Wahlman and Michael
Wilson, as well as their respective legal predecessors, successors, assignees, attorneys,
agents, partners, employees, related organizations, heirs, parents, siblings and children.

6.   **Waiver of Civil Code § 1542**. Each of the Parties has read and understood the following
language contained in Section 1542 of the California Civil Code:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT

137774123.8                                      9                                      Exhibit A
Page 14

TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
OF HER MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR.

To the extent that Section 1542 is applicable, each of the Parties hereto expressly waives all rights, if any, that they may have under this statute.

7. **No Admission of Liability**.  This Agreement is made in settlement of claims and allegations which are denied, disputed, and contested.  Neither this Agreement nor anything contained in this Agreement shall be construed as an admission of any fact, issue, liability, or responsibility by any Party hereto to any other Party hereto, all of which are expressly denied.

8. **Assignment**.  Each of the Parties represents and warrants that he, she, or it has not assigned or transferred to any person not a Party to this Agreement any part or portion of any matter released under this Agreement, and each Party agrees to defend, indemnify, and hold harmless the other Parties against any claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation or other proceedings are commenced) based on or in connection with, or arising out of any such assignment or transfer made, purported, or claimed.  Each of the Parties represents and warrants that he, she, or it will not assign or transfer to any person not a Party to this Agreement any part or portion of any obligations or liabilities created under this Agreement, except that JFL may assign its rights to receive the Settlement Payments to any party, in its sole discretion, and no Party may assign any of its other rights or obligations.  Each Party agrees to defend, indemnify, and hold harmless the other Parties against any claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation or other proceedings are commenced) based on or in connection with, or arising out of any such assignment or transfer made, purported, or claimed in violation of this paragraph.

9. **Indemnification of Claims Brought by Green Street Advisors, LLC**.  The EA Parties, and each of them, hereby agree they will fully indemnify the JFL Parties and the Estate of Jonathan A. Spound and its Administrators, Corey and Michael Spound, for any and all claims brought by Green Street Advisors, LLC ("Green Street") against them individually or collectively for amounts owed under the Service Engagement Agreement entered into between EA and Green Street in the matter <u>Spound v. SSV Properties *et al.*</u>, dated March 31, 2016, and modified by an Addendum with the same date (the "Green Street Engagement"), including but not limited to providing a defense and paying for all reasonable attorneys' fees, costs and expenses incurred defending against such claims.

10. **Mutual Non-Defamation**.  Each of the Parties agree that they will not make any defamatory statements about each other to any third party, whether orally or in writing.

11. **Changes to FSS Website.**  At the request of EA, FSS has made changes to its website with respect to matters that were previously resolved at EA, and those changes will remain in effect as long as such matters are included on the website.

12. **EA Cooperation on Fee Applications.**  EA will cooperate with FSS to promptly compile and provide FSS with all time sheets, emails and other records documenting the time spent at EA on the disputed Matters so that FSS may submit such time in support of any necessary fee applications or other motion practice.

13. **EA Agreement to Automatically Forward Emails.**  EA shall arrange to have all emails sent to the EA email addresses for FRANK, SIMS, STOLPER or Maritza Nowowiejski automatically forwarded to FRANK, SIMS, STOLPER and Maritza Nowowiejski at FSS for a period expiring no earlier than December 31, 2018, and thereafter disable the email addresses.

14. **EA Agreement to Delete FRANK's Personal Folder.**  EA agrees that FRANK will be provided with access to his personal folder on EA's computer system, and upon request, will permanently delete any such items from EA's system.

15. **Destruction of Documents and Use in Future Legal Proceedings.**  Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the Parties and each of their respective attorneys, consultants, experts, agents, and representatives and any other person or entity under the direction or control of any of them, and any other person or entity that they caused information to be disseminated to will destroy the original and all copies of the following materials and documents, whether in hard copy or electronic form:

- All discovery, documents, materials, and electronic files received from any Party that were marked confidential.

The Parties shall also jointly request JAMS and its arbitrators to destroy its entire file relating to the JFL arbitration, with the exception of billing information, within 10 days or other reasonable time period proposed by JAMS and agreed to by the Parties, and carry out all reasonable steps to ensure compliance.

Further, to the extent consistent with their professional, ethical and legal obligations, the Parties further agree they will not use the following documents in any subsequent legal proceeding, litigation or arbitration, unless the litigation is between the Parties:

- All discovery responses provided by any Party during the JFL Arbitration;
- All orders entered by any arbitrator during the JFL Arbitration relating to discovery or sanctions;
- All pleadings relating to any motion for sanctions and/or terminating sanctions submitted in connection with the JFL arbitration, including but not limited to all exhibits filed in connection with any such pleading.

16. **Payment, Dismissal and Release Obligations Are Not Excused by Alleged Breaches of this Agreement.** The payment, dismissal and release obligations set forth in this Agreement and the Guaranty Agreement will not be delayed or excused by any alleged breach or violation of Section 7 through 27 of this Agreement. However, any such breaches may be remedied pursuant to the dispute resolution procedures set forth in Paragraph 21 of this Agreement.

17. **Representations and Warranties.** The Parties hereto represent and warrant that each has read and understood and has received independent legal advice with respect to the advisability of making this Agreement, and/or has had the opportunity to obtain such legal advice and has knowingly entered into this Agreement without taking advantage of the opportunity to obtain such advice. Each Party has made such investigation of the facts pertaining to this Agreement and of all other matters pertaining hereto as they deem necessary. The Parties hereto represent and warrant that each signatory hereto has the full right and authority to enter into this Agreement and bind the Party on whose behalf he, she, or it has executed this Agreement.

18. **Further Assurances.** Each Party hereto agrees to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement and which are not inconsistent with its terms and intent.

19. **Headings.** The various headings in this Agreement are inserted for convenience only, and shall not be deemed a part of or in any manner affect this Agreement or any provision hereof.

20. **Governing Law.** This Agreement shall be governed and construed in accordance with the substantive laws of the State of California and the United States Bankruptcy Code. Respective counsel for each Party hereto has participated in the drafting of, read, and approved the language of this Agreement. The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties hereto.

21. **Dispute Resolution Procedure.** Any disputes regarding this Agreement, with the exception of the procedures set forth in Paragraph 3.6 above pertaining to failures to make the Settlement Payments in accordance with the terms of this Agreement, shall be first submitted to the Honorable Louis Meisinger to resolve in mediation, and the cost of the mediation shall be equally borne by the JFL Parties, on the one hand, and the EA Parties, on the other hand. If the Parties are unable to resolve the dispute, then 10 days after the mediation, they will submit the claim to binding arbitration before Benchmark Resolution Group, Inc. (the organization recently formed by Judge Meisinger) in Los Angeles, California to be resolved employing their rules and procedures for arbitration.

22. **Waiver/Severability.** The Parties agree that no waiver by any Party of any particular provision or right under this Agreement shall be deemed to be a waiver of any other

provision or right herein.  The Parties further agree that each provision or term of this Agreement is intended to be severable from the others so that if any particular provision or term hereof is or determined to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the legality or validity of the remaining provisions and terms hereof.

23.  **Attorneys' Fees**.  The Parties agree that should any relief be brought by any Party to enforce any provision or right under this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and costs incurred therein.

24.  **Entire Agreement.**  This Agreement constitutes the sole and entire agreement and understanding between the Parties concerning the subject matter hereof and supersedes all prior agreements and understandings between the Parties on those subjects hereto with the exception of (a) the AEP Fee Sharing Agreement and the Guaranty Agreement and (b) the Separation Agreement entered into between EA and STOLPER dated May 23, 2016 (the "STOLPER Separation Agreement").  If there is an inconsistency between this Agreement and the STOLPER Separation Agreement, this Agreement will control. Each of the Parties hereto acknowledge to each of the other Parties that no other Party or any agent or attorney of any Party has made any promise, representation or warranty whatsoever, express or implied, written or oral, not contained herein concerning the subject matter hereof to induce him, her, or it to execute this Agreement, and each of the Parties hereto acknowledges that he, she, or it has not executed this Agreement in reliance on any promise, representation or warranty not expressly contained herein.  No person has any authority to make any representation or promise on behalf of any Party that is not set forth herein.  This Agreement may be modified only with a written instrument duly executed by each of the Parties hereto.

25.  **Binding Agreement.**  This Agreement shall bind and shall inure to the benefit of successors and assigns of each Party.  With respect to the individual Parties, this Agreement shall also bind and inure to the benefit of his or her heirs, assigns, executors, legatees, administrators and personal representatives.  With respect to the entity Parties, this Agreement shall also bind and inure to the benefit of any parent, affiliate, predecessor-in-interest, successor-in-interest, transferee, endorsee, or assign.

26.  **Notice Provision**.  Any and all notices required by this Agreement shall be mailed and emailed in writing to the following:

26.1.  **To the JFL Parties**.  To Jason Frank, Scott Sims, & Andrew Stolper, Frank Sims & Stolper LLP, 19800 McArthur Blvd., Suite 855, Irvine, California 92612, jfrank@lawfss.com; ssims@lawfss.com; astolper@lawfss.com

26.2.  **To the EA Parties**.  To Michael Avenatti & Michael Eagan, Eagan Avenatti, LLP, 520 Newport Center Drive, Ste. 1400, Newport Beach, CA 92660, mavenatti@eaganavenatti.com.

Case 8:17-bk-11961-CB   Doc 483   Filed 05/30/18   Entered 05/30/18 21:09:51   Desc
Exhibit A - C to Declaration of Jason M. Frank   Page 15 of 54
Main Document   Page 55 of 67   Page 15 of 54

27. **Execution/Counterparts.** This Agreement may be executed in counterparts, and a facsimile or PDF signature shall have the same force and effect as an original signature penned in ink. When each of the Parties hereto has signed and delivered at least one such counterpart to all other Parties or their counsel, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one fully executed agreement which shall be binding upon and effective as to all Parties.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the day and year indicated below.

December ___, 2017

EAGAN AVENATTI LLP

_____
Michael J. Avenatti
Its Managing Partner

December ___, 2017

AVENATTI & ASSOCIATES, APC

_____
Michael J. Avenatti
Its President

December ___, 2017

MICHAEL J. AVENATTI

_____
Michael J. Avenatti
In his individual capacity

December 12, 2017

MICHAEL Q. EAGAN

_____
Michael Q. Eagan
In his individual capacity

December ___, 2017

JASON FRANK LAW, PLC

_____
Jason M. Frank
Its President

137774123.8

14

December 12, 2017                    FRANK SIMS & STOLPER, LLP

                                     _____
                                     Jason M. Frank
                                     Partner

December 12, 2017                    JASON M. FRANK

                                     _____
                                     Jason M. Frank
                                     In his individual capacity

December 12, 2017                    SCOTT H. SIMS

                                     _____
                                     Scott H. Sims
                                     In his individual capacity

December 12, 2017                    ANDREW D. STOLPER

                                     _____
                                     Andrew D. Stolper
                                     In his individual capacity

APPROVED AS TO FORM:

January 30, 2018
~~December ___, 2017~~                PACHULSKI STANG ZIEHL & JONES LLP

                                     _____
                                     ~~Richard M. Pachulski~~  Robert M. Saunders
                                     Counsel to Eagan Avenatti LLP

December 22, 2017                    PERKINS COIE LLP

                                     _____
                                     Sara L. Chenetz
                                     Counsel to the JFL Parties

December ___, 2017                   SULMEYER KUPETZ LLP


                                     _____
                                     Marc Haroupian
                                     Counsel to Michael Avenatti and Avenatti &
                                     Associates APC

December __, 2017                  PERKINS COIE LLP

_____
             Sara L. Chenetz
             Counsel to the JFL Parties

December __, 2017                  SULMEYER KUPETZ ~~LLP~~ APC

_____
             ~~Marc Haroupian~~
             Counsel to Michael Avenatti and Avenatti &
             Associates APC
             MARK HOROUPIAN

# EXHIBIT A

# Exhibit A to Settlement Agreement

| Case Name |
|---|
| **1. Birbrower v. Quorn Foods, Inc.** <br><br> • Nationwide class action for false advertising |
| **2. Callaway v. Mercedes Benz USA, Inc.** <br><br> • California class action concerning defective seat heaters |
| **3. Authentic Entertainment Properties v. Royal Center et al.** <br><br> • Breach of Joint Venture Agreement |
| **4. Weaver v. Southern California Edison, et al.** <br><br> • Personal injury action <br> • Plaintiff is Jason Frank's cousin |
| **5. Shine v. Williams Sonoma, Inc.** <br><br> • California employment class action challenging on-call shift policy |
| **6. Ward v. Tilly's** <br><br> • California employment class action challenging on-call shift policy |
| **7. Deehan v. Gap, Inc.** <br><br> • California employment class action challenging on-call shift policy |
| **8. Rasheed v. Gap, Inc.** <br><br> • California employment class action challenging on-call shift policy |
| **9. Broadstone v. Pacific Sunwear** <br><br> • California employment class action challenging on-call shift policy |
| **10. Broadstone/Billon v. Bath & Body** <br><br> • California employment class action challenging on-call shift policy |
| **11. Robinson v. BCBG** <br><br> • California employment class action challenging on-call shift policy |
| **12. Lagunas v. Ambercrombie** <br><br> • California employment class action challenging on-call shift policy |
| **13. Jiminez (Dylan)** <br><br> • Unaware of any case by this name |

| |
|---|
| **14. RFF v. Spound** |
| |
| • Hourly breach of contract case representing Defendant |
| • Incorrectly listed on EA's schedule as a plaintiff case |
| **15. Hannes Kuhn** |
| |
| **16. Chaffe v. Keller Rohrback** |
| |
| • Attorney malpractice action |
| **17. Eldard (Wall) v. Hewlett Packard** |
| |
| • California employment class action for waiting time penalties |

# EXHIBIT B

<div style="float:left">

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

</div>

Richard M. Pachulski (CA Bar No. 90073)
Ira D. Kharasch (CA Bar No. 109084)
Robert M. Saunders (CA Bar No. 226172)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email:    rpachulski@pszjlaw.com
             ikharasch@pszjlaw.com
             rsaunders@pszjlaw.com

Attorneys for Debtor and Debtor in Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>EAGAN AVENATTI, LLP,<br><br>                                    Debtor. | Case No. 8:17-bk-11961-CB<br><br>Chapter 11<br><br>**ORDER GRANTING MOTION FOR ORDER APPROVING SETTLEMENT AND DISMISSING CASE**<br><br><u>Hearing</u>:<br>Date:        February 28, 2018<br>Time:        10:00 a.m.<br>Place:       Courtroom 5D<br>                411 West Fourth Street<br>                Santa Ana, CA 92701-4393 |

A hearing (the "<u>Hearing</u>") was held on February 28, 2018, at 10:00 a.m. on Debtor's *Motion for an Order Approving Settlement and Dismissing Case* filed on January 30, 2018 as Docket # ___ (the "<u>Motion</u>"). Appearances were made as noted on the record. Capitalized terms not defined in this order have the meanings ascribed to such terms in the Motion.

The Court having read and considered the Motion, the pleadings filed in support of the Motion, having heard statements of counsel at the Hearing, noting no opposition, and having found that notice of the Hearing and Motion was due and proper, and with good cause shown:

**IT IS ORDERED:**

1.        The Motion is granted.

<div style="text-align:center">1</div>

DOCS_LA:311830.4 20328/001

<div style="text-align:right">Exhibit A<br>Page 27</div>

2. The case is dismissed.

3. The Settlement Agreement and Releases (attached to Declaration of Michael Avenatti in support of the Motion as Exhibit A) and compromises contained therein (the "<u>Agreement</u>") are approved.

4. The Debtor is authorized and directed to take all steps necessary to implement and effectuate the Agreement.

5. Claim 8-1, filed in this case by Jason Frank Law PLC, is allowed in the amount of $10,000,000.00 ("<u>Compromised Claim Amount</u>") and to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against Jason Frank Law, PLC related to its rendition of services at Eagan Avenatti LLP, including without limitation indemnification for tax liability.

6. The Clerk of the Court is directed to enter on the Claims Register in this case that Claim 8-1 is allowed in the amount of $10,000,000.00, and thereafter the Clerk of the Court shall dismiss this case.

7. If Jason Frank Law, PLC timely and fully receives the Settlement Payments set forth in paragraph 3.2 of the Agreement, the Compromised Claim Amount will be deemed satisfied in full on the date set forth in paragraph 3.5 of the Agreement.

8. Claim 6-1, filed by Jason M. Frank, is disallowed, except it is allowed to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against Jason M. Frank related to his employment at, or rendition of services at, Eagan Avenatti LLP, including without limitation indemnification for tax liability.

9. Claim 7-1, filed by Scott Sims, is disallowed, except it is allowed to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against Scott Sims related to his employment at, or rendition of services at Eagan Avenatti LLP, including without limitation indemnification for tax liability.

10. Claim 9-1, filed by Andrew Stolper, is disallowed, except to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against

2

# EXHIBIT C

Case 8:17-bk-11961-CB   Doc 463-1   Filed 03/13/18   Entered 03/13/18 14:53:37   Desc
Exhibit A - C to Declaration of M. Frank   Page 26 of 54
Exhibit A - C to Declaration of M. Frank   Page 11 of 26   Page 26 of 54

# AEP FEE SHARING AGREEMENT, SETTLEMENT AND MUTUAL RELEASE

This Fee Sharing Agreement, Settlement and Mutual Release ("Agreement") is entered into this __ day of December 2017 by and between Eagan Avenatti LLP ("EA"), a limited liability partnership organized in California, on the one hand, and Authentic Entertainment Properties, LLC, a limited liability corporation organized in Nevada ("AEP") and Authentic Entertainment Properties Development, LLC, a limited liability corporation organized in Nevada ("AEPD") (AEP and AEPD are collectively referred to as the "AEP Parties"), on the other hand. EA and the AEP Parties are collectively referred to as the "Parties."

WHEREAS, on or about May 26, 2015, the AEP Parties retained EA to represent them in connection with the matter entitled Authentic Entertainment Properties, LLC et al. v. Royal Center Associates, LLC et al., Case No. A-15-724305-B filed in the District Court of Clark County, Nevada (the "Royal Resort matter") pursuant to a contingency agreement;

WHEREAS, on or about July 5, 2016, the AEP Parties terminated the contingency agreement with EA and retained the law firm of Frank Sims & Stolper LLP ("FSS") to represent them in the Royal Resort matter;

WHEREAS, on or about July 15, 2016, EA filed a Notice of Attorney's Lien in the Royal Resort matter seeking compensation for its legal services and unreimbursed costs;

WHEREAS, in February 2017, the AEP Parties reached a settlement in the Royal Resort matter pursuant to which the AEP Parties obtained the right to enter into a long-term ground lease of certain property owned by the defendants in the Royal Resort matter if the AEP Parties exercised certain options by various deadlines, or else the AEP Parties would otherwise receive nothing under the settlement (the "Royal Resort Settlement");

WHEREAS, on or about February 8, 2017, the AEP Parties filed a Demand for Arbitration against EA seeking declaratory relief and damages relating to EA's former representation of AEP in the Royal Resort matter (the "AEP/EA Arbitration");

WHEREAS, on or about February 15, 2017, the Royal Resort matter was dismissed with prejudice pursuant to the terms of the Royal Resort Settlement;

WHEREAS, on or about February 28, 2017, EA filed a motion to adjudicate its attorney's lien against AEP in the Royal Resort matter;

WHEREAS, on or about March 1, 2017, an Involuntary Bankruptcy Petition against EA, seeking that EA be a debtor in a Chapter 11 case was filed in the Middle District of Florida, Case No. 6:17-bk-01329-KSJ (the "Bankruptcy Case");

WHEREAS, on or about March 10, 2017, EA consented to entry of Order for Relief in the Bankruptcy Case;

WHEREAS, on or about May 16, 2017, the Bankruptcy Case was transferred to the Central District of California, Santa Ana Division, before the Honorable Catherine E. Bauer (the "Bankruptcy Court"), and assigned a new case number 8:17-bk-1191-CB;

WHEREAS, on or about April 12, 2017, EA's motion to adjudicate its attorney's lien against the AEP Parties was denied by the District Court Judge in the Royal Resort matter, and EA subsequently appealed this decision;

WHEREAS, in May 2017, the AEP Parties asserted they had an unsecured claim against EA in the Bankruptcy Case;

WHEREAS, on or about September 12, 2017, the AEP Parties failed to timely exercise their option to proceed with the ground lease provided under the Royal Resort Settlement, and the defendants in the Royal Resort matter terminated the ground lease and the AEP Parties will receive nothing under the Royal Resort Settlement;

WHEREAS, on or about September 13, 2017, EA's appeal in the Royal Resort matter was dismissed based on EA's voluntary withdrawal of its appeal;

WHEREAS, on or about September 18, 2017, the AEP Parties dismissed the AEP/EA Arbitration without prejudice;

WHEREAS, in December 2017, EA entered into a Settlement Agreement with various parties, including FSS, pursuant to which, among other things, EA and FSS agreed that EA would receive fifty percent (50%) of any and all legal fees which would otherwise be paid to FSS or its partner Jason Frank Law, PLC ("JFL") or Jason Frank (collectively, the "FSS Parties") in the future in connection with the Royal Resort matter (the "EA Bankruptcy Settlement");

WHEREAS, pursuant to the terms of the EA Bankruptcy Settlement, EA will be releasing any and all claims it has against the AEP Parties;

WHEREAS, the EA Bankruptcy Settlement is contingent upon the Bankruptcy Court entering orders approving the Settlement (the "Settlement Order") and dismissing the Bankruptcy Case (the "Dismissal Order") and certain other conditions set forth in Paragraph 1.1 of the EA Bankruptcy Settlement; and

WHEREAS, the Parties desire to resolve any and all disputes between them on the terms set forth in the EA Bankruptcy Settlement and herein;

NOW THEREFORE, for and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    **Effective Date of this Agreement**

1.1.    The effectiveness of the terms and obligations of this Agreement are contingent upon (a) EA filing a motion ("Settlement and Dismissal Motion") with the Bankruptcy Court seeking entry of orders (the "Orders") approving the EA Bankruptcy Settlement and authorizing and directing the Debtor to fully comply with all terms of the EA Bankruptcy Settlement pursuant to Fed. R. Bankr. Pro. 9019 ("Settlement Order"), and Dismissing the Bankruptcy Case, pursuant to Bankruptcy Code Section 1112(b) ("Dismissal Order"), (b) the Bankruptcy Case being dismissed within sixteen (16) calendar days after entry of the Dismissal Order, and (c) if a stay of the Settlement Order or Dismissal Order has been entered pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, a Termination Notice, as defined in Paragraph 1.5 of the EA Bankruptcy Settlement, has not be provided.

1.2.    In the event this Agreement does not become effective pursuant to the terms of Paragraph 1.1 above, the Parties shall be returned to the *status quo ante* prior to their execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.

2.    **Fee Sharing Agreement.**

2.1.    In the event that the AEP Parties pay or provide, directly or indirectly, any compensation of any kind, including, *inter alia* legal fees, property interests, or any other business arrangements, to one or more of the FSS Parties in connection with the <u>Royal Resort</u> matter and/or the Royal Resort Settlement, then EA will be entitled to receive fifty percent (50%) of that compensation directly from the AEP Parties, or their successors. The AEP Parties are required to provide such compensation to the FSS Parties and EA at the same time to the extent reasonably possible.

3.    **Resolution of EA's Asserted Liens and Right to Attorneys' Fees and Costs in the Matters.**

3.1.    Within sixteen (16) calendar days of entry of the Dismissal Order in the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, EA will withdraw all purported liens asserted against the AEP Parties and in the <u>Royal Resort</u> matter and will forever waive and forego, with prejudice and finality, any present or future claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or relating to EA's relationship with AEP and the <u>Royal Resort</u> matter.

4.    **Releases**.

4.1.    **Release of EA by the AEP Parties**.  Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, and in consideration of the terms of this Agreement and other good and valuable consideration, the AEP Parties on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, owners, employees, heirs, parents, children, spouses, and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue EA, and every one of their respective partners, officers, directors, owners, agents, employees, companies, parents, subsidiaries, divisions, affiliates, attorneys, trustees, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related organizations, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future, including, but not limited to, any and all claims raised in the AEP / EA Arbitration, and/or any and all claims arising out of or relating to EA's representation of the AEP Parties, the AEP Parties' termination of EA, and any actions taken by EA that directly or indirectly affected the AEP Parties.

4.2.    **Release of AEP Parties by EA**.  Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, and in consideration of the terms of this Agreement and other good and valuable consideration, EA on its own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, owners, employees, heirs, parents, children, spouses, and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the AEP Parties, and every one of their respective partners, officers, directors, owners, agents, employees, companies, parents, subsidiaries, divisions, affiliates, attorneys, trustees, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related organizations, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future, including, but not limited to, any and all claims raised in the AEP / EA Arbitration, and/or any and all claims arising out of or relating to EA's representation of the AEP Parties, the AEP Parties' termination of EA, and any actions taken by the AEP Parties that directly or indirectly affected EA.

5.    **Waiver of Civil Code § 1542**.  Each of the Parties has read and understood the following language contained in Section 1542 of the California Civil Code:

4

—

Case 8:17-bk-11961-CB    Doc 463   Filed 02/05/18   Entered 02/05/18 14:53:37   Desc
Main Document    Page 30 of 54

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OF HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

To the extent that Section 1542 is applicable, each of the Parties hereto expressly waives all rights, if any, that they may have under this statute.

6.    **No Admission of Liability**.  This Agreement is made in settlement of claims and allegations which are denied, disputed, and contested.  Neither this Agreement nor anything contained in this Agreement shall be construed as an admission of any fact, issue, liability, or responsibility by any Party hereto to any other Party hereto, all of which are expressly denied.

7.    **Representations and Warranties.**  The Parties hereto represent and warrant that each has read and understood and has received independent legal advice with respect to the advisability of making this Agreement, and/or has had the opportunity to obtain such legal advice and has knowingly entered into this Agreement without taking advantage of the opportunity to obtain such advice.  Each Party has made such investigation of the facts pertaining to this Agreement and of all other matters pertaining hereto as they deem necessary.  The Parties hereto represent and warrant that each signatory hereto has the full right and authority to enter into this Agreement and bind the Party on whose behalf he, she, or it has executed this Agreement.

8.    **Further Assurances.**  Each Party hereto agrees to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement and which are not inconsistent with its terms and intent.

9.    **Headings**.  The various headings in this Agreement are inserted for convenience only, and shall not be deemed a part of or in any manner affect this Agreement or any provision hereof.

10.    **Governing Law**.  This Agreement shall be governed and construed in accordance with the substantive laws of the State of California and the United States Bankruptcy Code. Respective counsel for each Party hereto has participated in the drafting of, read, and approved the language of this Agreement.  The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties hereto.

11.    **Conflicts Between This Agreement and the EA Bankruptcy Settlement Agreement.** To the extent there any conflicts between the terms of this Agreement and the EA Bankruptcy Settlement Agreement, the EA Bankruptcy Settlement Agreement will control.

12. **Dispute Resolution Procedure.**  Any disputes regarding this Agreement, shall be first submitted to the Honorable Louis Meisinger to resolve in mediation.  If the Parties are unable to resolve the dispute, then 10 days after the mediation, they will submit the claim to binding arbitration before ADR Services, Inc. in Los Angeles, California to be resolved employing their rules and procedures for arbitration.

13. **Waiver/Severability.**  The Parties agree that no waiver by any Party of any particular provision or right under this Agreement shall be deemed to be a waiver of any other provision or right herein.  The Parties further agree that each provision or term of this Agreement is intended to be severable from the others so that if any particular provision or term hereof is or determined to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the legality or validity of the remaining provisions and terms hereof.

14. **Attorneys' Fees**.  The Parties agree that should any relief be brought by any Party to enforce any provision or right under this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and costs incurred therein.

15. **Entire Agreement.**  This Agreement and the EA Bankruptcy Settlement Agreement constitute the sole and entire agreement and understanding between the Parties concerning the subject matter hereof and supersedes all prior agreements and understandings between the Parties hereto with the exception of (a) the Guaranty Agreement that will be entered into between Michael Avenatti and JFL as further described in the EA Bankruptcy Settlement Agreement.  Each of the Parties hereto acknowledge to each of the other Parties that no other Party or any agent or attorney of any Party has made any promise, representation or warranty whatsoever, express or implied, written or oral, not contained herein concerning the subject matter hereof to induce him, her, or it to execute this Agreement, and each of the Parties hereto acknowledges that he, she, or it has not executed this Agreement in reliance on any promise, representation or warranty not expressly contained herein.  No person has any authority to make any representation or promise on behalf of any Party that is not set forth herein.  This Agreement may be modified only with a written instrument duly executed by each of the Parties hereto.

16. **Binding Agreement.**  This Agreement shall bind and shall inure to the benefit of successors and assigns of each Party.  With respect to the individual Parties, this Agreement shall also bind and inure to the benefit of his or her heirs and assigns.  With respect to the entity Parties, this Agreement shall also bind and inure to the benefit of any parent, affiliate, predecessor-in-interest, successor-in-interest, or assign.

17. **Notice Provision**.  Any and all notices required by this Agreement shall be mailed and emailed in writing to the following:

17.1. **To the EA Parties.** To Michael Avenatti & Michael Eagan, Eagan Avenatti, LLP, 520 Newport Center Drive, Ste. 1400, Newport Beach, CA 92660, mavenatti@eaganavenatti.com.

17.2. **To the FSS Parties.** To Jason Frank, Scott Sims, & Andrew Stolper, Frank Sims & Stolper LLP, 19800 McArthur Blvd., Suite 855, Irvine, California 92612, jfrank@lawfss.com

17.3. To the AEP Parties. To Steven T. Graham, Snell & Wilmer, LLP, 600 Anton Blvd. #1400, Costa Mesa, California 92626-7689, sgraham@swlaw.com.

18. **Execution/Counterparts.** This Agreement may be executed in counterparts, and a facsimile or PDF signature shall have the same force and effect as an original signature penned in ink. When each of the Parties hereto has signed and delivered at least one such counterpart to all other Parties or their counsel, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one fully executed agreement which shall be binding upon and effective as to all Parties.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the day and year indicated below.

December 14 2017

AUTHENTIC ENTERTAINMENT PROPERTIES, LLC

Robert Coffman
President

December 14 2017

AUTHENTIC ENTERTAINMENT PROPERTIES DEVELOPMENT, LLC

Robert Coffman
President

December 12, 2017

EAGAN AVENATTI LLP

Michael J. Avenatti
Its Managing Partner

APPROVED AS TO FORM:

February 2, 2018
December ___, 2017

PACHULSKI STANG ZIEHL & JONES LLP

Richard M. Pachulski  _Robert M. Saunders_
Counsel to Eagan Avenatti LLP

December ___, 2017

PERKINS COIE LLP

_____
Sara L. Chenetz
Counsel to the JFL Parties

December ___, 2017

SULMEYER KUPETZ LLP

_____
Marc Haroupian
Counsel to Michael Avenatti and Avenatti &
Associates APC

8

APPROVED AS TO FORM:

December __, 2017                    PACHULSKI STANG ZIEHL & JONES LLP

_____
                                     Richard M. Pachulski
                                     Counsel to Eagan Avenatti LLP

December 12, 2017                    PERKINS COIE LLP

_____
                                     Sara L. Chenetz
                                     Counsel to the JFL Parties

December __, 2017                    SULMEYER KUPETZ LLP APC
January 31, 2018

_____
                                     Marc Haroupian
                                     Counsel to Michael Avenatti and Avenatti &
                                     Associates APC
                                     MARK S. HOROUPIAN

8

1    Andrew Stolper related to his employment at, or rendition of services at Eagan Avenatti LLP,

2    including without limitation indemnification for tax liability.

3             11.     The Court retains post-dismissal jurisdiction pursuant to LBR 1017-2(f) and as set

4    forth in the Motion.

5

6                                                   ###

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

## GUARANTY

THIS GUARANTY ("Guaranty"), dated as of the 12th day of December, 2017, is made by the undersigned Michael J. Avenatti ("Guarantor"), an individual resident in California, in favor of Jason Frank Law, PLC, a California professional law corporation ("JFL").

JFL and Eagan Avenatti LLP ("EA") (among others) are parties to a certain Settlement Agreement and Releases, dated as of the 12th day of December 2017 (as may be amended, restated, modified, renewed or extended from time to time, the "Agreement"). To induce JFL to enter into the Agreement and comply with its terms, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor has agreed to guaranty EA's obligation to timely pay $4,850,000.00 to JFL under Section 3.2 of the Agreement (the "Settlement Payments"). Guarantor acknowledges that he will derive substantial direct and indirect benefits from JFL's execution and compliance with the Agreement and from the compromises contained in the Agreement.

To induce JFL to enter into and agree to the payment and other terms set forth in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

1. *Guaranty.* (a) Guarantor hereby unconditionally and irrevocably guarantees to JFL, its successors, assigns, endorsees and transferees, the full and prompt payment when due of the Settlement Payments provided for in Section 3.2 of the Agreement in the total amount of $4,850,000.00. Guarantor further agrees that if EA shall fail to pay one or both of the Settlement Payments when they are due under Section 3.2 of the Agreement, Guarantor shall promptly pay such unpaid portion of the Settlement Payments, without demand or notice.

(b) Guarantor represents and warrants to JFL as follows:

(i) Guarantor is a natural person residing in California.

(ii) Guarantor has the capacity to execute, deliver, and perform under this Guaranty and the Agreement.

(iii) This Guaranty is the legally valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms except as such enforcement may be delayed or restricted after the commencement by or against EA of any action, case or proceeding involving insolvency, bankruptcy, reorganization, receivership, arrangement, adjustment, composition, assignment for the benefit of creditors, liquidation, winding up or dissolution under any applicable laws with respect thereto (an "Insolvency Proceeding") or laws and principles of equity affecting the rights and remedies of creditors generally.

(iv) The execution and delivery of this Guaranty and the Agreement, and the performance of the requirements evidenced by this Guaranty and the Agreement, will not violate any law applicable to Guarantor or constitute a default or breach of any contract to which Guarantor is a party or by which its properties are bound.

(v) Guarantor is not insolvent and is not the subject of any Insolvency Proceedings.

SANFRAN 69769 v1 (2K)

137930771.2

2.    *Liability of Guarantor.* The liability of Guarantor under this Guaranty shall be irrevocable, absolute, independent and unconditional, and shall not be affected by any circumstance which might constitute a discharge of a surety or guarantor other than the indefeasible payment and performance in full of its commitments hereunder.  In furtherance of the foregoing and without limiting the generality thereof, Guarantor agrees as follows: (i) Guarantor's liability hereunder shall be the immediate, direct, and primary obligation of Guarantor and shall not be contingent upon JFL's exercise or enforcement of any remedy it may have against EA or any other person or entity ("Person"); (ii) this Guaranty is a guaranty of payment when due and not of collectability; (iii) JFL may enforce this Guaranty upon the occurrence of a default notwithstanding any dispute between JFL and EA with respect to the existence of such default, without limiting any defenses that Guarantor otherwise has; (iv) payment of a portion, but not all, of the Settlement Payments shall in no way limit, affect, modify or abridge Guarantor's liability for any portion of the Settlement Payments remaining unsatisfied; and (v) Guarantor's liability with respect to the Settlement Payments shall remain in full force and effect without regard to, and shall not be impaired or affected by, nor shall Guarantor be exonerated or discharged by, (A) any Insolvency Proceeding with respect to EA, Guarantor, any other guarantor or any other Person; (B) any limitation, discharge, or cessation of the liability of EA, any other guarantor or any other Person for the payment of the Settlement Payments due to any statute, regulation or rule of law, or any invalidity or unenforceability in whole or in part; (C) any merger, acquisition, consolidation or change in structure of EA, Guarantor or any other Person, or any sale, lease, transfer or other disposition of any or all of the assets or shares of EA, Guarantor, any other guarantor or other Person; (D) any assignment or other transfer, in whole or in part, of JFL's interests in and rights under this Guaranty, including, without limitation, JFL's right to receive payment of the Settlement Payments; (E) any claim, defense, counterclaim or setoff, other than that of prior performance, that EA, Guarantor, any other guarantor or other Person may have or assert, including, without limitation, any defense of incapacity or lack of corporate or other authority to execute or deliver this Guaranty, the Agreement or any other document related thereto; (F) any direction of application of payment to EA, Guarantor, any other guarantor or other Person; (G) any modification, agreement or stipulation between EA and JFL or any other parties to the Agreement, or their respective successors, assigns, transferees, endorsees, heirs, executors, personal representatives and legatees, with respect to the Agreement or the requirements therein or herein; and (H) JFL's vote, claim, distribution, election, acceptance, action or inaction in any Insolvency Proceeding. Guarantor's liability hereunder is absolute and unconditional irrespective of the value, genuineness, validity or enforceability of the Agreement or any other related agreement.

3.    *Consents.*  Guarantor hereby consents and agrees that, without notice to or further assent from Guarantor:  (i)  JFL may request and accept other guaranties of payment of the Settlement Payments and may, from time to time, in whole or in part, surrender, release, subordinate, modify, waive, rescind, compromise or extend any such guaranty and may permit or consent to any such action or the result of any such action and JFL shall not be liable to Guarantor for any failure to collect or enforce against any other party liable for the Settlement Payments; and (ii) JFL may exercise, or waive or otherwise refrain from exercising, any other right, remedy, power or privilege granted by the Agreement or any document related thereto, or otherwise available to JFL, with respect to the timely and complete payment of the Settlement Payments, even if the exercise of such right, remedy, power or privilege affects or eliminates any

right of subrogation or any other right of Guarantor against EA; all as JFL may deem advisable, and all without impairing, abridging, releasing or affecting this Guaranty.

4.  *Waivers.*  (a) Guarantor waives and agrees not to assert:  (i) any right to require JFL to proceed against EA, any other guarantor or any other Person; (ii) the defense of a statute of limitations in any action hereunder or for the collection or performance of the payment of the Settlement Payments; (iii) any defense arising by reason of any lack of corporate or other authority or any other defense of EA, Guarantor or any other Person; (iv) any defense based upon JFL's errors or omissions in the administration of its obligations under the Agreement and/or this Guaranty; (v) any rights to set-offs and counterclaims; (vi) without limiting the generality of the foregoing, to the fullest extent permitted by law, any other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties, or which may conflict with the terms of this Guaranty; (vi) any and all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for payment of the Settlement Payments, has destroyed the Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580(d) of the California Code of Civil Procedure or otherwise; and (vii) without limiting the generality of the foregoing, to the fullest extent permitted by law, any other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties, or which may conflict with the terms of this Guaranty, including, without limitation, any and all benefits that otherwise might be available to Guarantor under California Civil Code §§1432, 2809, 2810, 2815, 2819, 2839, 2845, 2848, 2849, 2850, 2899 and 3433 and California Code of Civil Procedure §§580a, 580b, 580d and 726.  (b) Guarantor waives any and all notice of the acceptance of this Guaranty, and any and all notice of the creation, renewal, modification, extension or accrual of the payment of the Settlement Payments, or the reliance by JFL upon this Guaranty, or the exercise of any right, power or privilege hereunder.  The obligations created under this Guaranty (the "Obligations") shall conclusively be deemed to have been created, contracted, incurred and permitted to exist in reliance upon this Guaranty.  Guarantor waives promptness, diligence, presentment, protest, demand for payment, notice of default, dishonor or nonpayment and all other notices whatsoever to or upon EA, Guarantor or any other Person with respect to the Obligations created hereunder.  (c) The Obligations of Guarantor hereunder are independent of and separate from the requirements and obligations of EA under the Agreement and any other guarantor and upon the occurrence and during the continuance of any default, a separate action or actions may be brought against Guarantor, whether or not EA or any such other guarantor is joined therein or a separate action or actions are brought against EA or any such other guarantor.  (d) Guarantor shall not have any right to require JFL to obtain or disclose any information with respect to (i) the financial condition or character of EA or the ability of EA to pay and perform under the Agreement; (ii) the Obligations under this Guaranty; (iii) any collateral or other security for any or all of the Settlement Payments; (iv) the existence or nonexistence of any other guarantees for any or all of the Settlement Payments; (v) any action or inaction on the part of JFL or any other Person; or (vi) any other matter, fact or occurrence whatsoever.

5.  *Subrogation.*  Until the Obligations shall be satisfied in full, Guarantor shall not have, and shall not directly or indirectly exercise, (i) any rights that it may acquire by way of subrogation under this Guaranty, by any payment hereunder or otherwise, (ii) any rights of

contribution, indemnification, reimbursement or similar suretyship claims arising out of this Guaranty, or (iii) any other right which it might otherwise have or acquire (in any way whatsoever) which could entitle it at any time to share or participate in any right, remedy or security of JFL as against EA or other guarantors, whether in connection with this Guaranty or otherwise.

6.     *Continuing Guaranty.*   Guarantor agrees that this Guaranty is a continuing guaranty relating to the Settlement Payments, and Guarantor expressly acknowledges that this Guaranty shall remain in full force and effect notwithstanding that there may be periods in which no Settlement Payments are owed.   This Guaranty shall continue to be effective or shall be reinstated and revived, as the case may be, if, for any reason, any payment of the Settlement Payments by or on behalf of EA shall be rescinded, avoided, or must otherwise be restored by JFL, whether as a result of any Insolvency Proceeding or otherwise.   To the extent any Settlement Payment is rescinded, recovered, avoided or restored, the Obligations shall be revived in full force and effect without reduction or discharge for such payment.

7.     *Payments.*   Guarantor hereby agrees, in furtherance of the foregoing provisions of this Guaranty and not in limitation of any other right which JFL or any other Person may have against Guarantor by virtue hereof, upon the failure of EA to pay the Settlement Payments when and as the same shall become due, Guarantor shall forthwith pay, or cause to be paid, in cash, to JFL an amount equal to the amount of the Settlement Payments then due (including interest which, but for the filing of a petition in any Insolvency Proceeding with respect to EA, would have accrued on such Settlement Payments, whether or not a claim is allowed against EA for such interest in any such Insolvency Proceeding). Guarantor shall make each payment hereunder, without deduction (whether for taxes or otherwise), set-off or counterclaim, on the day when due in immediately available funds, and in U.S. dollars.

8.     *Notices.*   All notices and other communications provided for hereunder shall, unless otherwise stated herein, be in writing (including by email) and shall be mailed, sent or delivered (i) if to JFL, at Frank Sims & Stolper LLP, 19800 McArthur Blvd., Suite 855, Irvine, California 92612,, (ii) if to Guarantor, at or to its address or, or email address, set forth below its name on the signature page below, or at or to such other address or email address, as such party shall have designated in a written notice to the other party.   All such notices and communications shall be effective upon delivery, if sent by email, and effective upon receipt, if sent by another method.

9.     *No Waiver.*   No failure on the part of JFL to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, remedy, power or privilege preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights and remedies under this Guaranty are cumulative and not exclusive of any rights, remedies, powers and privileges that may otherwise be available to JFL.

10.     *Costs and Expenses.*   The Parties agree that should any relief be brought by any Party to enforce any provision or right under this Guaranty, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and costs incurred therein.

11.      *Binding Effect; Entire Agreement; Amendments*.  This Guaranty shall be binding upon Guarantor and his successors, assigns, personal representatives, executors, heirs and legatees, and inure to the benefit of and be enforceable by JFL and its successors, endorsees, transferees and assigns; provided that Guarantor shall not have the right to assign or transfer its rights or Obligations hereunder, in whole or part, without the prior written consent of JFL.  This Guaranty constitutes the entire agreement of Guarantor with respect to the matters set forth herein and supersedes any prior agreements, commitments, discussions and understandings, oral or written, with respect thereto, except as set forth in the Agreement.  Other than as stated in Paragraph 17 hereof, there are no conditions to the full effectiveness of this Guaranty.  This Guaranty may not be amended except by a writing signed by Guarantor and JFL.  No waiver of any rights of JFL or Guarantor under any provision of this Guaranty or consent to any departure by Guarantor therefrom shall be effective unless in writing and signed by JFL and Guarantor.  Any such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

12.      *No Discharge in the Event of Guarantor or EA Bankruptcy*.  It is the intention of JFL and Guarantor that Guarantor's payment obligations under this Guaranty shall be non-dischargeable, under 11 U.S.C. Section 523(b), in the event Guarantor becomes a debtor in a bankruptcy case while the Settlement Payments remain outstanding and thereafter to the extent any party in (1) Guarantor's bankruptcy case, or (2) a subsequent bankruptcy case or similar proceeding in which EA is the debtor or has a similar role seeks to recover all or any portion of the Settlement Payments.

13.      *Knowing and Explicit Waivers*.  Guarantor and JFL acknowledge that they have either obtained the advice of legal counsel or have had the opportunity to obtain such advice in connection with the terms and provisions of this Guaranty.  Guarantor acknowledges and agrees that each of the waivers and consents set forth herein are made with full knowledge of their significance and consequences.  Additionally, Guarantor acknowledges and agrees that by executing this Guaranty, it is waiving certain rights, benefits, protections and defenses to which it may otherwise be entitled under applicable law, including, without limitation, under the provisions of the California Civil Code and California Code of Civil Procedure referred to in Section 4, and that all such waivers herein are explicit, knowing waivers.  Guarantor further acknowledges and agrees that JFL is relying on such waivers in connection with execution of the Agreement and this Guaranty, and that such waivers are a material part of the consideration which JFL is receiving.

14.      *Severability*.  Whenever possible, each provision of the Guaranty shall be interpreted in such manner as to be effective and valid under all applicable laws and regulations.  If, however, any provision of this Guaranty shall be prohibited by or invalid under any such law or regulation, it shall be deemed modified to conform to the minimum requirements of such law or regulation, or, if for any reason it is not deemed so modified, it shall be ineffective and invalid only to the extent of such prohibition or invalidity without affecting the remaining provisions of this Guaranty.

15.      *Law; Submission to Jurisdiction*.  This Guaranty shall be governed by and construed in accordance with California law.  Guarantor hereby (i) submits to the non-exclusive jurisdiction of the courts of the State of California and the federal courts of the United States

SANFRAN 69769 v1 (2K)                                    -5-

137930771.2

sitting in the State of California for the purpose of any action or proceeding arising out of or
relating to this Guaranty, (ii) agrees that all claims in respect of any such action or proceeding
may be heard and determined in such courts, (iii) irrevocably waives (to the extent permitted by
applicable law) any objection which it now or hereafter may have to the laying of venue of any
such action or proceeding brought in any of the foregoing courts, and any objection on the
ground that any such action or proceeding in any such court has been brought in an inconvenient
forum, and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive
and may be enforced in other jurisdictions by suit on the judgment or in any other manner
permitted by law.

16.    *JURY TRIAL WAIVER.*  TO THE EXTENT PERMITTED UNDER
APPLICABLE LAW, JFL AND GUARANTOR HEREBY WAIVE THEIR RESPECTIVE
RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR
ARISING OUT OF THIS GUARANTY OR ANY DEALINGS BETWEEN THE PARTIES
RELATING TO THIS GUARANTY.  JFL AND THE GUARANTOR ACKNOWLEDGE
THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO THIS
GUARANTY, THAT EACH HAS ALREADY RELIED ON THE WAIVER IN ENTERING
INTO THIS GUARANTY AND THAT EACH WILL CONTINUE TO RELY ON THE
WAIVER IN ITS RELATED FUTURE DEALINGS.  JFL AND THE GUARANTOR
WARRANT AND REPRESENT THAT EACH KNOWINGLY AND VOLUNTARILY
WAIVES ITS JURY TRIAL RIGHTS TO THE EXTENT PERMITTED
UNDER APPLICABLE LAW FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

17.    *Contingencies to Effectiveness of Guaranty.*  This Guaranty and its terms and
Obligations shall not become effective until each of the conditions set forth in paragraph 1.1 of
the Agreement has occurred.

18.    *Married Persons.*  Any married person who signs this Guaranty as the Guarantor
hereby expressly agrees that recourse may be had against his or her separate and community
property for all his or her obligations under this Guaranty.

IN WITNESS WHEREOF, Guarantor has executed and delivered this Guaranty, as of the
date first above written.

MICHAEL J. AVENATTI, Guarantor

Address: 520 Newport Center Drive, Suite
1400
Newport Beach, CA 92660

Email: mavenatti@eaganavenatti.com

SANFRAN 69769 v1 (2K)

-6-

137930771.2

# EXHIBIT

# "B"

Case 8:17-bk-11961-CB    Doc 412    Filed 03/15/18    Entered 03/15/18 18:00:52    Desc
Main Document    Page 1 of 4

| | |
|---|---|
| 1 | Richard M. Pachulski, SBN 90073<br>Ira D. Kharasch, SBN 109084 |
| 2 | Robert M. Saunders, SBN 226172<br>Pachulski Stang Ziehl & Jones LLP |
| 3 | 10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067 |
| 4 | Tel: 310-277-6910<br>Fax: 310-201-0760 |
| 5 | rpachulski@pszjlaw.com<br>ikharasch@pszjlaw.com |
| 6 | rsaunders@pszjlaw.com |



FILED & ENTERED

MAR 15 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

7    Attorneys for Debtor and Debtor in Possession

8    **UNITED STATES BANKRUPTCY COURT**

9    **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

10

| | | |
|---|---|---|
| 11 | In re: | Case No. 8:17-bk-11961-CB |
| 12 | EAGAN AVENATTI, LLP, | Chapter 11 |
| 13 | | **ORDER GRANTING MOTION APPROVING SETTLEMENT AND DISMISSING CASE AND RELATED RELIEF** |
| 14 | Debtor. | |
| 15 | | |
| 16 | | Hearing:<br>Date:       February 28, 2018<br>Time:       10:00 a.m. |
| 17 | | Courtroom: 5D<br>Address:     411 West Fourth Street |
| 18 | | Santa Ana, CA 92701-4393 |

19          A hearing was held on February 28, 2018, at 10:00 a.m., before the Honorable Catherine E.

20    Bauer, United States Bankruptcy Judge for the Central District of California, in Courtroom 5D

21    located at 411 West Fourth St., Santa Ana, CA, on Debtor's Motion Approving Settlement and

22    Dismissing Case filed January 30, 2018 as Docket #343 ("Motion"). Capitalized terms which are

23    not defined in this Order shall have the same meanings as provided to such terms in the Motion.

24    Appearances were made as noted on the record.

25          A declaration from SulmeyerKupetz, APC ("Sulmeyer Declaration") was filed March 15,

26    2018 as Docket #408, stating that it has received into its trust account the Initial Payment (as defined

27    in IRS Payment Stipulation at Docket #341), and the allowed amounts of the fees and expenses of

28    Pachulski Stang Ziehl & Jones LLP and Dinsmore & Shohl, LLP. A declaration from Dinsmore &

1

Shohl, LLP (together with the Sulmeyer Declaration, "Declarations") was filed March 15, 2018 as Docket #409, stating that it has received the Debtor's California confessions of judgment for certain identified claims ("Identified Claims").

The Court having read and considered the Motion and pleadings filed in support of the Motion, heard the statements of counsel at the Hearing, considered and overruled the opposition of unsecured creditor Stoll Nussbaum & Polakov, read and considered the Declarations, and with good cause shown:

**IT IS ORDERED:**

1. Except as otherwise set forth in this order, the Motion is granted, the JFL Settlement is approved, the Debtor is authorized and directed to take all steps necessary to implement and effectuate the Settlement Agreement, and the Case is dismissed.

2. SulmeyerKupetz, APC is authorized and directed to pay from its client trust account the Initial Payment to the United States on or before the tenth calendar day following the entry of this order pursuant to the terms set forth in the IRS Payment Stipulation at Docket #341, regardless of whether there is a stay pending appeal.

3. SulmeyerKupetz, APC is authorized and directed to pay from its client trust account the allowed fees and costs of Pachulski Stang Ziehl & Jones and Dinsmore & Shohl, LLP, on the tenth calendar day after this order is entered, except if there is a stay pending appeal.

4. Dinsmore & Shohl, LLP is authorized to release each confession of judgment at the request from a holder of an Identified Claim per the below.

5. Claim 8-1, filed in this case by Jason Frank Law PLC, is allowed in the amount of $10,000,000.00 ("Compromised Claim Amount"), and additionally to the extent such claim asserts a claim for indemnification, contribution, and insurance coverage brought against JFL related to the performance of services at Eagan Avenatti, LLP.

6. If Jason Frank Law, PLC timely and fully receives the Settlement Payments set forth in paragraph 3.2 of the Settlement Agreement, the Compromised Claim Amount will be deemed satisfied in full on the date set forth in paragraph 3.5 of the Settlement Agreement.

//

2

7.      Claims 6-1, 7-1 and 9-1 are each allowed only to the extent such claims assert a claim for indemnification, contribution and insurance coverage for any claims brought against Jason M. Frank, Scott Sims or Andrew Stolper related to the performance of services at Eagan Avenatti, LLP.

8.      Holders of Identified Claims shall be paid the liquidated, non-contingent prepetition amount set forth in their proofs of claim, or as set forth in the Debtor's Schedules if no proof of claim was filed prior to the filing of the Motion.  Such amounts shall be paid in nine equal monthly installments, without interest, beginning 91 days after the date of entry of this order.  If the Debtor fails to timely remit any installment, then the Debtor shall have ten days after written notice is mailed by the holder to the Debtor to cure such payment default.  If the payment default is not timely cured, then the holder, without further notice to the Debtor, may accelerate the balance due and submit to the Superior Court of the State of California the confession of judgment provided by the Debtor to Dinsmore & Shohl, LLP prior to the entry of this order.  Any postpetition portion of an Identified Claim shall be paid in the Debtor's ordinary course of business.  Disputed claims, which are general unsecured claims that are not Identified Claims or ride-through claims (as identified in the Motion), shall be entitled to pursue all remedies available under applicable non-bankruptcy law on entry of this order.

9.      Any and all claims of ZB, N.A. d/b/a California Bank & Trust that remain outstanding as of the dismissal of the Case shall ride-through the dismissal of the Case unimpaired, with all legal, equitable and contractual rights, including any related security interests, unaltered, and shall be enforceable against the Debtor on and after the dismissal of the Case.  The Debtor reserves all legal, equitable and contractual defenses, including offset and recoupment rights to such claims.

//

//

//

3

1          10.    The Court retains post-dismissal jurisdiction pursuant to LBR 1017-2(f) and as set

2   forth in the Motion.

3                                                      ###

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Date: March 15, 2018

25                                                      Catherine Bauer
                                                       United States Bankruptcy Judge

26

27

28

                                                   4

# EXHIBIT

## "C"

# GUARANTY

THIS GUARANTY ("Guaranty"), dated as of the 12th day of December, 2017, is made by the undersigned Michael J. Avenatti ("Guarantor"), an individual resident in California, in favor of Jason Frank Law, PLC, a California professional law corporation ("JFL").

JFL and Eagan Avenatti LLP ("EA") (among others) are parties to a certain Settlement Agreement and Releases, dated as of the 12th day of December 2017 (as may be amended, restated, modified, renewed or extended from time to time, the "Agreement"). To induce JFL to enter into the Agreement and comply with its terms, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor has agreed to guaranty EA's obligation to timely pay $4,850,000.00 to JFL under Section 3.2 of the Agreement (the "Settlement Payments"). Guarantor acknowledges that he will derive substantial direct and indirect benefits from JFL's execution and compliance with the Agreement and from the compromises contained in the Agreement.

To induce JFL to enter into and agree to the payment and other terms set forth in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

1.   *Guaranty.*  (a) Guarantor hereby unconditionally and irrevocably guarantees to JFL, its successors, assigns, endorsees and transferees, the full and prompt payment when due of the Settlement Payments provided for in Section 3.2 of the Agreement in the total amount of $4,850,000.00. Guarantor further agrees that if EA shall fail to pay one or both of the Settlement Payments when they are due under Section 3.2 of the Agreement, Guarantor shall promptly pay such unpaid portion of the Settlement Payments, without demand or notice.

(b) Guarantor represents and warrants to JFL as follows:

(i)   Guarantor is a natural person residing in California.

(ii)   Guarantor has the capacity to execute, deliver, and perform under this Guaranty and the Agreement.

(iii)   This Guaranty is the legally valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms except as such enforcement may be delayed or restricted after the commencement by or against EA of any action, case or proceeding involving insolvency, bankruptcy, reorganization, receivership, arrangement, adjustment, composition, assignment for the benefit of creditors, liquidation, winding up or dissolution under any applicable laws with respect thereto (an "Insolvency Proceeding") or laws and principles of equity affecting the rights and remedies of creditors generally.

(iv)   The execution and delivery of this Guaranty and the Agreement, and the performance of the requirements evidenced by this Guaranty and the Agreement, will not violate any law applicable to Guarantor or constitute a default or breach of any contract to which Guarantor is a party or by which its properties are bound.

(v)   Guarantor is not insolvent and is not the subject of any Insolvency Proceedings.

SANFRAN 69769 v1 (2K)

2.      *Liability of Guarantor*.  The liability of Guarantor under this Guaranty shall be irrevocable, absolute, independent and unconditional, and shall not be affected by any circumstance which might constitute a discharge of a surety or guarantor other than the indefeasible payment and performance in full of its commitments hereunder.  In furtherance of the foregoing and without limiting the generality thereof, Guarantor agrees as follows: (i) Guarantor's liability hereunder shall be the immediate, direct, and primary obligation of Guarantor and shall not be contingent upon JFL's exercise or enforcement of any remedy it may have against EA or any other person or entity ("Person"); (ii) this Guaranty is a guaranty of payment when due and not of collectability; (iii) JFL may enforce this Guaranty upon the occurrence of a default notwithstanding any dispute between JFL and EA with respect to the existence of such default, without limiting any defenses that Guarantor otherwise has; (iv) payment of a portion, but not all, of the Settlement Payments shall in no way limit, affect, modify or abridge Guarantor's liability for any portion of the Settlement Payments remaining unsatisfied; and (v) Guarantor's liability with respect to the Settlement Payments shall remain in full force and effect without regard to, and shall not be impaired or affected by, nor shall Guarantor be exonerated or discharged by, (A) any Insolvency Proceeding with respect to EA, Guarantor, any other guarantor or any other Person; (B) any limitation, discharge, or cessation of the liability of EA, any other guarantor or any other Person for the payment of the Settlement Payments due to any statute, regulation or rule of law, or any invalidity or unenforceability in whole or in part; (C) any merger, acquisition, consolidation or change in structure of EA, Guarantor or any other Person, or any sale, lease, transfer or other disposition of any or all of the assets or shares of EA, Guarantor, any other guarantor or other Person; (D) any assignment or other transfer, in whole or in part, of JFL's interests in and rights under this Guaranty, including, without limitation, JFL's right to receive payment of the Settlement Payments; (E) any claim, defense, counterclaim or setoff, other than that of prior performance, that EA, Guarantor, any other guarantor or other Person may have or assert, including, without limitation, any defense of incapacity or lack of corporate or other authority to execute or deliver this Guaranty, the Agreement or any other document related thereto; (F) any direction of application of payment to EA, Guarantor, any other guarantor or other Person; (G) any modification, agreement or stipulation between EA and JFL or any other parties to the Agreement, or their respective successors, assigns, transferees, endorsees, heirs, executors, personal representatives and legatees, with respect to the Agreement or the requirements therein or herein; and (H) JFL's vote, claim, distribution, election, acceptance, action or inaction in any Insolvency Proceeding.  Guarantor's liability hereunder is absolute and unconditional irrespective of the value, genuineness, validity or enforceability of the Agreement or any other related agreement.

3.      *Consents*.  Guarantor hereby consents and agrees that, without notice to or further assent from Guarantor:  (i)  JFL may request and accept other guaranties of payment of the Settlement Payments and may, from time to time, in whole or in part, surrender, release, subordinate, modify, waive, rescind, compromise or extend any such guaranty and may permit or consent to any such action or the result of any such action and JFL shall not be liable to Guarantor for any failure to collect or enforce against any other party liable for the Settlement Payments; and (ii) JFL may exercise, or waive or otherwise refrain from exercising, any other right, remedy, power or privilege granted by the Agreement or any document related thereto, or otherwise available to JFL, with respect to the timely and complete payment of the Settlement Payments, even if the exercise of such right, remedy, power or privilege affects or eliminates any

right of subrogation or any other right of Guarantor against EA; all as JFL may deem advisable, and all without impairing, abridging, releasing or affecting this Guaranty.

4.  *Waivers.*  (a) Guarantor waives and agrees not to assert:  (i) any right to require JFL to proceed against EA, any other guarantor or any other Person; (ii) the defense of a statute of limitations in any action hereunder or for the collection or performance of the payment of the Settlement Payments; (iii) any defense arising by reason of any lack of corporate or other authority or any other defense of EA, Guarantor or any other Person; (iv) any defense based upon JFL's errors or omissions in the administration of its obligations under the Agreement and/or this Guaranty; (v) any rights to set-offs and counterclaims; (vi) without limiting the generality of the foregoing, to the fullest extent permitted by law, any other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties, or which may conflict with the terms of this Guaranty; (vi) any and all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for payment of the Settlement Payments, has destroyed the Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580(d) of the California Code of Civil Procedure or otherwise; and (vii) without limiting the generality of the foregoing, to the fullest extent permitted by law, any other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties, or which may conflict with the terms of this Guaranty, including, without limitation, any and all benefits that otherwise might be available to Guarantor under California Civil Code §§1432, 2809, 2810, 2815, 2819, 2839, 2845, 2848, 2849, 2850, 2899 and 3433 and California Code of Civil Procedure §§580a, 580b, 580d and 726.  (b) Guarantor waives any and all notice of the acceptance of this Guaranty, and any and all notice of the creation, renewal, modification, extension or accrual of the payment of the Settlement Payments, or the reliance by JFL upon this Guaranty, or the exercise of any right, power or privilege hereunder.  The obligations created under this Guaranty (the "Obligations") shall conclusively be deemed to have been created, contracted, incurred and permitted to exist in reliance upon this Guaranty.  Guarantor waives promptness, diligence, presentment, protest, demand for payment, notice of default, dishonor or nonpayment and all other notices whatsoever to or upon EA, Guarantor or any other Person with respect to the Obligations created hereunder.  (c) The Obligations of Guarantor hereunder are independent of and separate from the requirements and obligations of EA under the Agreement and any other guarantor and upon the occurrence and during the continuance of any default, a separate action or actions may be brought against Guarantor, whether or not EA or any such other guarantor is joined therein or a separate action or actions are brought against EA or any such other guarantor.  (d) Guarantor shall not have any right to require JFL to obtain or disclose any information with respect to (i) the financial condition or character of EA or the ability of EA to pay and perform under the Agreement; (ii) the Obligations under this Guaranty; (iii) any collateral or other security for any or all of the Settlement Payments; (iv) the existence or nonexistence of any other guarantees for any or all of the Settlement Payments; (v) any action or inaction on the part of JFL or any other Person; or (vi) any other matter, fact or occurrence whatsoever.

5.  *Subrogation.*  Until the Obligations shall be satisfied in full, Guarantor shall not have, and shall not directly or indirectly exercise, (i) any rights that it may acquire by way of subrogation under this Guaranty, by any payment hereunder or otherwise, (ii) any rights of

contribution, indemnification, reimbursement or similar suretyship claims arising out of this Guaranty, or (iii) any other right which it might otherwise have or acquire (in any way whatsoever) which could entitle it at any time to share or participate in any right, remedy or security of JFL as against EA or other guarantors, whether in connection with this Guaranty or otherwise.

6.   *Continuing Guaranty.*   Guarantor agrees that this Guaranty is a continuing guaranty relating to the Settlement Payments, and Guarantor expressly acknowledges that this Guaranty shall remain in full force and effect notwithstanding that there may be periods in which no Settlement Payments are owed.  This Guaranty shall continue to be effective or shall be reinstated and revived, as the case may be, if, for any reason, any payment of the Settlement Payments by or on behalf of EA shall be rescinded, avoided, or must otherwise be restored by JFL, whether as a result of any Insolvency Proceeding or otherwise.  To the extent any Settlement Payment is rescinded, recovered, avoided or restored, the Obligations shall be revived in full force and effect without reduction or discharge for such payment.

7.   *Payments.*   Guarantor hereby agrees, in furtherance of the foregoing provisions of this Guaranty and not in limitation of any other right which JFL or any other Person may have against Guarantor by virtue hereof, upon the failure of EA to pay the Settlement Payments when and as the same shall become due, Guarantor shall forthwith pay, or cause to be paid, in cash, to JFL an amount equal to the amount of the Settlement Payments then due (including interest which, but for the filing of a petition in any Insolvency Proceeding with respect to EA, would have accrued on such Settlement Payments, whether or not a claim is allowed against EA for such interest in any such Insolvency Proceeding). Guarantor shall make each payment hereunder, without deduction (whether for taxes or otherwise), set-off or counterclaim, on the day when due in immediately available funds, and in U.S. dollars.

8.   *Notices.*   All notices and other communications provided for hereunder shall, unless otherwise stated herein, be in writing (including by email) and shall be mailed, sent or delivered (i) if to JFL, at Frank Sims & Stolper LLP, 19800 McArthur Blvd., Suite 855, Irvine, California 92612,, (ii) if to Guarantor, at or to its address or, or email address, set forth below its name on the signature page below, or at or to such other address or email address, as such party shall have designated in a written notice to the other party.  All such notices and communications shall be effective upon delivery, if sent by email, and effective upon receipt, if sent by another method.

9.   *No Waiver.*   No failure on the part of JFL to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, remedy, power or privilege preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights and remedies under this Guaranty are cumulative and not exclusive of any rights, remedies, powers and privileges that may otherwise be available to JFL.

10.   *Costs and Expenses.*   The Parties agree that should any relief be brought by any Party to enforce any provision or right under this Guaranty, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and costs incurred therein.

11.    *Binding Effect; Entire Agreement; Amendments.*  This Guaranty shall be binding upon Guarantor and his successors, assigns, personal representatives, executors, heirs and legatees, and inure to the benefit of and be enforceable by JFL and its successors, endorsees, transferees and assigns; provided that Guarantor shall not have the right to assign or transfer its rights or Obligations hereunder, in whole or part, without the prior written consent of JFL.  This Guaranty constitutes the entire agreement of Guarantor with respect to the matters set forth herein and supersedes any prior agreements, commitments, discussions and understandings, oral or written, with respect thereto, except as set forth in the Agreement.  Other than as stated in Paragraph 17 hereof, there are no conditions to the full effectiveness of this Guaranty.  This Guaranty may not be amended except by a writing signed by Guarantor and JFL.  No waiver of any rights of JFL or Guarantor under any provision of this Guaranty or consent to any departure by Guarantor therefrom shall be effective unless in writing and signed by JFL and Guarantor.  Any such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

12.    *No Discharge in the Event of Guarantor or EA Bankruptcy.*  It is the intention of JFL and Guarantor that Guarantor's payment obligations under this Guaranty shall be non-dischargeable, under 11 U.S.C. Section 523(b), in the event Guarantor becomes a debtor in a bankruptcy case while the Settlement Payments remain outstanding and thereafter to the extent any party in (1) Guarantor's bankruptcy case, or (2) a subsequent bankruptcy case or similar proceeding in which EA is the debtor or has a similar role seeks to recover all or any portion of the Settlement Payments.

13.    *Knowing and Explicit Waivers.*  Guarantor and JFL acknowledge that they have either obtained the advice of legal counsel or have had the opportunity to obtain such advice in connection with the terms and provisions of this Guaranty.  Guarantor acknowledges and agrees that each of the waivers and consents set forth herein are made with full knowledge of their significance and consequences.  Additionally, Guarantor acknowledges and agrees that by executing this Guaranty, it is waiving certain rights, benefits, protections and defenses to which it may otherwise be entitled under applicable law, including, without limitation, under the provisions of the California Civil Code and California Code of Civil Procedure referred to in Section 4, and that all such waivers herein are explicit, knowing waivers.  Guarantor further acknowledges and agrees that JFL is relying on such waivers in connection with execution of the Agreement and this Guaranty, and that such waivers are a material part of the consideration which JFL is receiving.

14.    *Severability.*  Whenever possible, each provision of the Guaranty shall be interpreted in such manner as to be effective and valid under all applicable laws and regulations. If, however, any provision of this Guaranty shall be prohibited by or invalid under any such law or regulation, it shall be deemed modified to conform to the minimum requirements of such law or regulation, or, if for any reason it is not deemed so modified, it shall be ineffective and invalid only to the extent of such prohibition or invalidity without affecting the remaining provisions of this Guaranty.

15.    *Law; Submission to Jurisdiction.* This Guaranty shall be governed by and construed in accordance with California law.  Guarantor hereby (i) submits to the non-exclusive jurisdiction of the courts of the State of California and the federal courts of the United States

sitting in the State of California for the purpose of any action or proceeding arising out of or relating to this Guaranty, (ii) agrees that all claims in respect of any such action or proceeding may be heard and determined in such courts, (iii) irrevocably waives (to the extent permitted by applicable law) any objection which it now or hereafter may have to the laying of venue of any such action or proceeding brought in any of the foregoing courts, and any objection on the ground that any such action or proceeding in any such court has been brought in an inconvenient forum, and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by law.

16.   *JURY TRIAL WAIVER.* TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, JFL AND GUARANTOR HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS GUARANTY OR ANY DEALINGS BETWEEN THE PARTIES RELATING TO THIS GUARANTY. JFL AND THE GUARANTOR ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO THIS GUARANTY, THAT EACH HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO THIS GUARANTY AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN ITS RELATED FUTURE DEALINGS. JFL AND THE GUARANTOR WARRANT AND REPRESENT THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS TO THE EXTENT PERMITTED UNDER APPLICABLE LAW FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

17.   *Contingencies to Effectiveness of Guaranty.* This Guaranty and its terms and Obligations shall not become effective until each of the conditions set forth in paragraph 1.1 of the Agreement has occurred.

18.   *Married Persons.* Any married person who signs this Guaranty as the Guarantor hereby expressly agrees that recourse may be had against his or her separate and community property for all his or her obligations under this Guaranty.

IN WITNESS WHEREOF, Guarantor has executed and delivered this Guaranty, as of the date first above written.

MICHAEL J. AVENATTI, Guarantor

Address: *520 Newport Center Drive, Suite 1400*
*Newport Beach, CA 92660*

Email:  mavenatti@eaganavenatti.com

**EXHIBIT 8**

JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
JON L.R. DALBERG (State Bar No. 128259)
jdalberg@landaufirm.com
LANDAU LAW LLP
2338 Manning Avenue
Los Angeles, California 90064
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Special Litigation Attorneys
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>Debtor | Case No. 8:19-bk-13560-SC<br><br>Chapter 7<br><br>Adv. No. 8:20-ap-01049-SC |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br>Plaintiff,<br><br>v.<br><br>ALEDMI, LLC, an administratively dissolved Washington limited liability company; ALAN CHAFEE, as successor in interest to ALEDMI, LLC; EDWIN SPAUNHURST, as successor in interest to ALEDMI, LLC; MICHAEL WHITE, as successor in interest to ALEDMI, LLC,<br><br>Defendant. | **DECLARATION OF JASON M. FRANK IN SUPPORT OF PLAINTIFF TRUSTEE'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Date and Time:**<br>Date: December 2, 2021<br>Time: 11:00 a.m.<br>Place: Courtroom 5C<br>411 W Fourth St.<br>Santa Ana, CA 92701 |

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DECLARATION OF JASON M. FRANK

I, Jason M. Frank, declare as follows:

1.      I am the owner and president of Jason Frank Law, PLC ("JFL"). I am admitted to practice before all federal and state courts in the State of California, and I am a member in good standing of the State Bar of California. I have personal knowledge of the facts set forth herein, unless stated on information and belief, and, if called as a witness, I could and would competently testify thereto under oath.

### The JFL Independent Contractor Agreement

2.      I worked at Eagan Avenatti, LLP ("EA") from February 15, 2009 through May 20, 2016. My last contract with EA was entered as of November 1, 2013. The contract was an independent contractor agreement between EA, on the one hand, and JFL and me, on the other hand (the "ICA"). A true and correct copy of the ICA is attached as **Exhibit A**.

3.      From January 1, 2011 through the appointment of a receiver for EA on or about February 13, 2019, EA was controlled by Michael Avenatti ("Avenatti"), EA's managing partner and majority owner.

4.      I directly negotiated each of the terms of the ICA with Avenatti. The negotiations lasted months. We exchanged multiple drafts of the ICA, and Avenatti, at times, would provide his requested changes in redline. The ICA was signed on EA's behalf by Avenatti. After its execution, we discussed the terms of the ICA on numerous occasions, including EA's failure to perform the ICA's payment and information obligations (as discussed further below). Based on the foregoing, I know that Avenatti was well aware of the terms of the ICA.

5.      Under the ICA, JFL's annual compensation was determined by the following formula:

- $350,000 per year (to be paid in monthly increments) *plus*
- 20% of the net attorneys' fees collected by the firm on matters which I brought to EA (to be paid on a bi-annual basis) *plus*
- A 25% "Profit Share Bonus" based on a formula set forth in the ICA (to be paid by February 15 of the following year) *plus*

2

- A percentage of the net attorneys' fees collected by EA in lawsuits concerning Eden Memorial Park Cemetery, including but not limited to the class action *Scott et al. v. Service Corporation International et al.* (the "Eden Bonus").

Exhibit A, Section 3. The ICA was for a four-year term ending on December 31, 2016. *Id.*, Section 1.

6.     The Profit Share Bonus was calculated based on a formula set forth in the ICA. Under that formula, EA was required to add together all of the revenue it collected during the calendar year, except any monies received as reimbursement for a case expense incurred prior to January 1, 2011. Then, EA was required to subtract any expenses paid by the firm during that same calendar year, unless the expense was related to any salary or draw paid to Avenatti or Michael Eagan or any monies paid to satisfy a judgment or settlement in connection with a pending fee dispute with the firm's former co-counsel, Robert Stoll. Then, EA was required to multiply the difference by 25% to determine the Profit Share Bonus. The formula is set forth in Exhibit A, Section 3.B.(ii).

7.     The Profit Share Bonus was required to be paid by February 15th of the following year. In other words:

- The 2013 Profit Share Bonus was due on February 15, 2014;
- The 2014 Profit Share Bonus was due on February 15, 2015;
- The 2015 Profit Share Bonus was due on February 15, 2016; and
- The 2016 Profit Share Bonus was due on February 15, 2017.

Exhibit A, Section 3.B.(ii). The contract term of the ICA ended on December 31, 2016 unless renewed by the parties on an annual basis thereafter. *Id.*, Section 1.

8.     When calculating the Profit Share Bonus, the expenses were required to be legitimate expenses relating to firm's overhead and operations. This is why the ICA contains an illustrative list of what would be considered legitimate firm expenses. Exhibit A, Section 3.B.(ii)(a). The ICA also provided that any draw or salary payments to Avenatti (other than origination fees) would <u>not</u> reduce the amount of EA's profits (and therefore would not reduce JFL's Profit Share Bonus). *Id.*, Section 3.B.(ii)(a)(1). The ICA further provided that the

3

1   expenses could not be paid in bad faith for the purpose of reducing the Profit Share Bonus.  *Id.*,

2   Section 3.B.(ii)(b).

3        9.      The ICA required EA to "annually deliver to [JFL], together with the Profit Share

4   Bonus, a detailed calculation of the Profit Share Bonus showing the attorneys' fees received by

5   [EA] during the calendar year, together with [EA's] expenses."  Exhibit A, Section 5.  The ICA

6   also entitled JFL to review EA's tax returns, including any Schedule K-1's.  *Id.*

7        **EA's Failure to Pay the 2013 Profit Share Bonus on February 15, 2014 and EA's and**

8        **Avenatti's Related Misrepresentations and Concealment of Information**

9        10.     Under the ICA, the 2013 Profit Share Bonus became due and owing to JFL on

10  February 15, 2014.  However, Avenatti falsely represented to me that EA had not made any profits

11  in 2013, and therefore JFL was not owed a Profit Share Bonus for 2013.

12       11.     At the time, I thought I had a general understanding of how much revenue the firm

13  collected in 2013 as well as a rough estimate of the general expenses.  Based on these estimates, I

14  believed Avenatti's representation that the firm did not have any profits in 2013.  However, EA

15  did not provide me with the specific revenue and expense numbers or tax returns that would allow

16  me to verify this information.

17       12.     Even though I believed Avenatti, I requested the 2013 tax returns and the 2013

18  revenue and expenses on numerous occasions in the subsequent years.  At one point, in the fall of

19  2015, Avenatti showed me a purported Schedule K-1 for Michael Eagan that indicated there were

20  no profits for 2013.  I subsequently learned during my litigation with EA that this was a phony

21  document and not a real Schedule K-1 provided to Michael Eagan.

22       13.     In February 2016, I filed a Demand for Arbitration with JAMS on behalf of JFL

23  against EA for breach of the ICA.  I later filed an Amendment to the Demand for Arbitration on or

24  about August 29, 2016.  A true and correct copy of the Amendment to the Demand for Arbitration

25  is attached as **Exhibit B**.

26       14.     In connection with that arbitration, EA was required to provide verified

27  interrogatory responses (signed by Avenatti) that set forth the revenue collected by the firm in

28  2013.  EA was further required to produce all documents reflecting the expenses incurred by the

1   firm by the end of 2016.  Based on this information, I discovered that JFL was owed a 2013 Profit

2   Share Bonus in the amount of approximately $992,036.  This was independently confirmed by an

3   accounting expert JFL retained in the litigation, Dr. Robert Wunderlich.  *See* Exhibit 45 of the

4   *Index of Exhibits in Support of Defendants' Motion for Summary Judgment* [Docket No. 94]

5   ("Defs.' Exhibits"), at Bates pages 365 and 372.  This amount of $992,036 was due and owing to

6   JFL on February 15, 2014.

7        15.    Based in part on this discovery, JFL was permitted by the three-judge arbitration

8   panel (the "Panel") to further amend its Demand for Arbitration to add a claim for punitive

9   damages after the Panel unanimously concluded that "EA acted with malice, oppression and fraud

10   in connection with its failure to produce its tax returns" and "EA acted with malice, fraud and

11   oppression by hiding its revenue numbers."  Exhibit C, pp. 3, 4.  A true and correct copy of the

12   Panel's Order – entitled Final Order re: Claimant's Motion for Sanctions – is attached as

13   **Exhibit C**.

14   **EA's Failure to Pay the Eden Bonus in June 2014 and Avenatti's Related Misrepresentations**

15        16.    On or about May 15, 2014, EA was awarded $23.5 million in fees and costs (the

16   "*Scott* Fees") as part of a class action settlement concerning Eden Memorial Park Cemetery, in the

17   matter entitled *Scott et al. v. Service Corporation International et al* (the "*Scott* Action").  I was

18   the lead counsel on this matter with Avenatti.  I was aware that this money was paid by the court-

19   appointed settlement administrator in late May 2014.

20        17.    Under the ICA, JFL was entitled to a percentage of the net attorneys' fees collected

21   by EA in the *Scott* matter as part of the Eden Bonus.  Specifically, JFL was entitled to

22   approximately $1,891,228 for the Eden Bonus.  *See* Defs.' Exhibit 45 at Bates page 398.  The ICA

23   is silent as to when the Eden Bonus is to be paid.  I am aware that under California law, when a

24   contract is silent as to the time for performance concerning a payment, it "must be performed

25   immediately upon the thing to be done being exactly ascertained."  *See* Cal. Civ. Code § 1637.

26   The ICA is governed by California law.  Exhibit A, Section 8.A.  Accordingly, JFL was owed a

27   percentage of the fees from the *Scott* matter at all times in and after June 2014.

28        18.    After receiving the $23.5 million in fees and costs, Avenatti told me that the firm

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

would pay JFL approximately one million dollars as a down payment toward the Eden Bonus while EA completed the process of determining the amount of the "net attorneys' fees." However, this money was never paid. Instead, Avenatti told me that EA could not pay JFL any money in connection with the Eden Bonus because of a partnership dispute pending between Avenatti and Michael Eagan, on the one hand, with the firm's former managing partner, John O'Malley (the "*O'Malley* Litigation"). Based on what Avenatti told me, my understanding was that John O'Mally claimed he was entitled to a share of the fees from the *Scott* matter and I was led to believe that the arbitrator (Justice Edward Wallin (Ret.)) had essentially ordered a "freeze" of those funds. Specifically, Avenatti told me that the arbitrator had (1) issued severe sanctions against the firm, (2) appointed a financial examiner to review the firm's finances, and (3) the "Eden money could not be moved" as a result. I later learned in my litigation with EA that the arbitrator had not frozen the money from the *Scott* matter (which we referred to as the "Eden money") and EA and Avenatti had dissipated all of the funds within a few months after receiving them.

19.     As part of my efforts to collect the judgment that JFL obtained against EA, I took discovery of the settlement administrator for the *Scott* Action, Gilardi & Co. LLC ("Gilardi"). From that discovery, I learned that Gilardi directly wired $636,600 of the *Scott* Fees to Acamar Investments, Inc., to pay a debt that was apparently owed by EA and secured by an assignment of the *Scott* Fees (a fact of which I was unaware at the time). A true and correct copy of the wire confirmation produced by Gilardi is attached hereto as Exhibit D.

**EA's Failure to Pay the 2014 Profit Share Bonus on February 15, 2015 and Avenatti's Related Misrepresentations**

20.     The 2014 Profit Share Bonus was due on February 15, 2015. Given the $23.5 million award in the *Scott* matter, as well other recoveries by the firm on my and Avenatti's cases, I knew that JFL was entitled to *millions of dollars* for the 2014 Profit Share Bonus.

21.     On or about February 14, 2015, I sent an email to Avenatti indicating that I expected EA to pay JFL the 2014 Profit Share Bonus on February 15, 2015. I further indicated that EA's failure to do so would be a breach of the ICA.

6

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

22.      Avenatti again told me that EA could not pay this money as a result of the

*O'Malley* litigation.  He asked me to be patient while he tried to work out an accommodation that

would allow JFL to be paid what it was owed.

23.      As of July 2015, EA still had not paid JFL the 2014 Profit Share Bonus or the Eden

Bonus.  (EA also had not paid the 2013 Profit Share Bonus, but I was not aware this bonus was

owed at the time as noted in Paragraphs 10 through 15 above).  At that time, I was preparing to go

on medical leave for a number of months in connection with a surgical procedure.  Prior to

leaving, I informed Avenatti that I was going to file a Demand for Arbitration against EA for

breach of the ICA.  Avenatti begged me not to file and told me that he had a scheduled mediation

in the *O'Malley* litigation and that once that case settled, JFL would be paid what it was owed.  I

agreed not to file the lawsuit at that time.

24.      In the fall of 2015, I learned that the *O'Malley* litigation settled.  Avenatti had his

office manager, Judy Regnier, begin to provide me with the revenue and expense information for

2014 and 2015 in a piecemeal fashion as he assured me JFL would be paid in short order.

25.      After EA continued to blow deadlines for paying the money, I informed Avenatti

that I planned to leave the firm.  Avenatti begged me to stay and promised he would personally

pay me the money JFL was owed by the end of the year, or at least make a substantial down

payment on the amount.  Avenatti claimed that the new reason EA was not paying JFL was

because Michael Eagan was now taking the position that the firm should not pay JFL until EA was

able to resolve its litigation with Robert Stoll.  Avenatti immediately acknowledged that such a

delay is not permitted under the ICA, which is why he was agreeing to personally pay JFL the

money.  I later learned in my litigation that Avenatti was lying and Michael Eagan never took such

a position.

26.      On December 24, 2015, Avenatti informed me that he had wired JFL the sum of

$3 million as a down payment on what was owed.  After the wire did not show up, Avenatti

claimed it was a mix-up with his bank.  He then told me that he was in the process of negotiating a

buyout with Michael Eagan and EA would then be able to pay everything that was owed,

including the 2015 Profit Share Bonus, by February 15, 2016.

7

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

27.     After EA failed to pay the Profit Share Bonuses and Eden Bonus by February 15, 2016, I filed a Demand for Arbitration on behalf of JFL with JAMS.  Avenatti again assured me that the money would be paid in short order.  Under the terms of the ICA, EA arguably had 90-days to cure, so I agreed to stay at the firm with the hopes that EA would finally honor the ICA.

28.     On or about May 20, 2016, after EA failed to pay the amounts owed under the ICA, I resigned from the firm and proceeded with my litigation.

**The Litigation with EA**

29.     In the arbitration proceedings, EA and Avenatti continued to resist the production of information regarding EA's 2013, 2014, 2015, and 2016 finances, to the point of violating multiple orders of the arbitration panel and incurring severe sanctions as a result. *See, e.g.*, Exhibit C.  Among other things, the arbitration panel ordered EA to produce "complete" bank statement for 2013 through 2016.  Exhibit C, page 4.  However, when EA produced the bank statements to JFL, they contained extensive blank spaces, despite the fact that neither Avenatti nor his counsel in any way indicated to me, my counsel, or to the arbitrators that they had been redacted.  A comparison of the bank statements produced by EA with the complete bank statements I later obtained from California Bank & Trust as part of judgment debtor proceedings confirmed my suspicions that these blank spaces concealed transfers into and out of EA's bank accounts.  Notably, in the copy of EA's June 2014 bank statement produced to JFL in the arbitration, wire transfers from EA to Aledmi, LLC ("Aledmi") on June 13, 2014, and June 24, 2014, were removed and concealed by blank spaces.  True and correct copies of the three pages of EA's June 2014 bank statement produced by EA in the arbitration and the corresponding three pages of the June 2014 bank statement produced by California Bank & Trust in response to a judgment debtor subpoena are attached as **Exhibits E and F**, respectively.

30.     As part of the Panel's Final Order re Claimant's Motion for Sanctions, dated February 10, 2017, the Panel ordered JFL to file Proposed Findings of Fact regarding the amount of the Profit Share Bonuses owed for 2013, 2014, 2015 and 2016.  Exhibit C, pp. 3, 4.  The Panel would then review the Proposed Findings and evidence submitted and, "if acceptable, will adopt them prior to the commencement of the plenary Hearing" which was scheduled for March 13,

2017. *Id.*, p. 3. In accordance with the Panel's order, I, on behalf of JFL, filed Proposed Findings of Fact indicating that JFL was owed approximately $12,396,633, not including prejudgment interest or attorneys' fees and costs, which increased the total to $14,615,886. The Proposed Findings were supported by EA's own reports of the firm's revenue and expenses and confirmed by an accounting expert, Dr. Robert Wunderlich.

31.     The entry of an arbitration award in JFL's favor was forestalled by an involuntary bankruptcy petition filing against EA on March 1, 2017. Given the timing of that filing, and the fact that it was filed by a single, relatively small creditor in a bankruptcy court in Florida, I believed that Avenatti orchestrated that filing (which was later confirmed by federal investigators). On behalf of JFL, I filed a petition for relief from the automatic stay, which the Bankruptcy Court in Florida conditionally granted, noting that the involuntary petition had the "stench of impropriety." Case No. 8:17-bk-11961-CB, Docket No. 157-1, ECF pages 23-26 of 29. The Bankruptcy Court, however, gave EA the option of voluntarily stipulating to have the firm placed in bankruptcy, in which case the stay would not be lifted. On Friday, March 10, 2017, one court day before the Arbitration Hearing, EA voluntarily agreed to be placed into bankruptcy. The bankruptcy case was subsequently transferred to the Central District of California.

32.     During the course of EA's bankruptcy case, EA, Avenatti, JFL, and I (among other parties) entered into a settlement agreement. A true and correct copy of the settlement agreement is attached hereto as **Exhibit G**. The agreement provided that JFL had an allowed claim of $10 million against EA, but that the debt could be satisfied by the payment of $4,850,000 within 120 days after the dismissal of EA's bankruptcy case. Exhibit G, Section 3. However, neither EA nor Avenatti ever made any of the payments required under the settlement agreement. Based on that failure, the Bankruptcy Court entered a $10 million judgment in favor of JFL in May 2018. A true and correct copy of the judgment is attached hereto as **Exhibit H**.

33.     By the time JFL obtained its judgment against EA and was able to commence judgment collection efforts in 2018, Avenatti had drained EA's funds, such that JFL's repeated levies on EA's bank accounts yielded no more than about $10,000. To avoid judgment collection efforts, Avenatti began opening up accounts at various banks and moving money from account to

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    account.  He also kept changing the name of his firm and having EA clients make payments under

2    the new firm names to avoid collection efforts.

3         34.    As described above, throughout 2014 and the following years, EA and Avenatti

4    consistently refused to provide JFL with either the money or the complete information due to it

5    under the ICA.  Given the persistent and categorical nature of EA's and Avenatti's efforts to deny

6    JFL its rights under the ICA, the multimillion dollar scale of the losses inflicted on JFL, the lack

7    of any justification for EA's and Avenatti's actions, and the fact that Avenatti repeatedly told me

8    blatant lies to defer and forestall collection actions by JFL, I believe that EA's and Avenatti's

9    actions constituted an intentional scheme to hinder, delay, and defraud JFL in its efforts to

10   establish and collect the amounts owed to it under the ICA.  As noted above, the Arbitration Panel

11   in the JFL arbitration against EA also reached this conclusion.  Exhibit C, pp. 3, 4.  EA's transfers

12   to Aledmi in June 2014 (the "Transfers") contributed to this scheme, and themselves hindered,

13   delayed, or defrauded JFL, in the following three ways.

14        35.    First, like all expenditures of EA funds to pay Avenatti's personal expenses, the

15   Transfers made it more difficult for JFL to establish how much it was owed under the ICA.  As

16   described in paragraphs 6 and 8 above, the ICA provided (with certain exceptions not relevant

17   here) that EA's profits for a given year would constitute the amount of EA's revenue for that year

18   minus all legitimate firm expenses paid by EA during that year, but that payments by EA to

19   Avenatti (other than origination fees) were not to be deducted from EA's revenue when

20   calculating EA's profits.  By causing EA to make payments for his personal expenses (rather than

21   having EA pay the money directly to him), and thereby causing those payments to falsely appear

22   to be EA expenses, Avenatti made it more difficult for me to calculate the amount of EA's profits

23   under the ICA, and accordingly to establish the amount of the Profit Share Bonuses owed to JFL.

24        36.    Second, the Transfers apparently used the *Scott* Fees, of which JFL was entitled to

25   be paid a share as part of the Eden Bonus, to pay personal expenses of Avenatti, at the same time

26   that EA and Avenatti were refusing to pay JFL any amount of the Eden Bonus and Avenatti was

27   falsely leading me to believe that the *Scott* Fees were essentially "frozen" in order to justify that

28   denial.  This is also at the same time EA owed JFL approximately $992,036 for the 2013 Profit

10

1  Share Bonus, which became due and owing on February 15, 2014. Avenatti repeatedly lied and
2  told me that there were no profits in 2013. In other words, Avenatti caused EA to use money that
3  he knew EA owed to JFL to pay Aledmi for his own personal benefit instead, while lying to me to
4  keep me from seeking to collect that money until after Avenatti had spent all of it.

5      37.     Finally, in addition to contributing substantially to EA's rapid dissipation of the
6  *Scott* Fees, the Transfers also contributed to Avenatti's longer-term dissipation of all of EA's
7  funds, which to date has prevented JFL from obtaining any meaningful recovery on its claims
8  against EA (including the 2013 Profit Share Bonus and Eden Bonus owed at the time of the
9  Transfers), even after JFL was finally able to establish the amount of those claims.

10      38.     During the time I worked at EA, Avenatti repeatedly told me that he would
11  "bankrupt" the firm before he would pay John O'Malley and Robert Stoll. While I considered his
12  statements to be bluster at the time, it is clear to me from reviewing EA's bank records that
13  Avenatti was doing exactly that during the period January 2014 through 2018, except I was also
14  apparently a target of his plan. An examination of the bank records will reveal that Avenatti
15  would essentially empty the bank accounts each month, in part, by transferring large sums of
16  money to other Avenatti controlled entities, such as his personal corporation, Avenatti &
17  Associates, PLC and Global Baristas.

18      I declare under penalty of perjury that the foregoing is true and correct.

19      Executed on November __10__, 2021, at __Irvine, CA__.

22                                          Jason M. Frank

11

# EXHIBIT A

## INDEPENDENT CONTRACTOR AGREEMENT

This INDEPENDENT CONTRACTOR AGREEMENT (this "Agreement") is made and entered into as of November 1, 2013, between Eagan Avenatti LLP (the "Company"), on the one hand, and Jason Frank, individually, and Jason Frank Law, a Professional Law Corporation (collectively the "Independent Contractor") on the other hand.

WHEREAS, the Company desires to retain the services of the Independent Contractor as senior counsel;

WHEREAS, the Independent Contractor has expertise in the field of litigation;

WHEREAS, the parties acknowledge that the Independent Contractor's abilities and services are unique and essential to the prospects of the Company; and

WHEREAS, the Company and the Independent Contractor desire to enter into this Agreement to set forth the terms and conditions of the relationship between the Company and the Independent Contractor.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1.      Effective Date; Term.  The effective date ("Effective Date") of this Agreement shall be the date hereof. The Independent Contractor's term of service (the "Service Term") under this Agreement shall commence on the Effective Date and shall continue until December 31, 2016 (the "Term Date"), subject to the provisions in Section 4 of this Agreement regarding earlier termination.  If at the Term Date, the Independent Contractor's service has not been terminated previously, this Agreement shall automatically renew for consecutive one-year terms, upon the same terms and conditions, unless the Independent Contractor or Company, and no later than 30 days prior to the expiration of the Service Term (including any renewal thereof), provides written notice to the other party that the Service Term shall not renew.

2.      Duties.  The Independent Contractor shall perform all duties incident to the position of senior counsel of the Company.  The Independent Contractor agrees to abide by all the Company policies, practices, procedures or rules that are provided to the Independent Contractor, including but not limited to the requirement that the Independent Contractor refrain from competing with the Company and/or practicing law on behalf of non-Company clients during the Service Term.

3.      Compensation; Benefits; Expense Reimbursement.

A.      Base Salary.  The Independent Contractor shall receive an annual base salary of $350,000 (the "Base Salary").  The Base Salary shall be payable bi-monthly in accordance with the Company's standard payroll practices, and checks shall be made out to "Jason Frank Law, a Professional Law Corporation."

B.      Bonuses.

(i) Origination Fees.  The Independent Contractor shall be entitled to origination fees equal to 20% of the total net attorneys' fees (the "JF Origination Fees") received by the Company during the Service Term from clients or matters that the Independent Contractor previously originated or subsequently originates on behalf of the Company during the Service Term.  The JF Origination Fees shall be payable bi-annually, and checks shall be made out to "Jason Frank Law, a Professional Law Corporation."  During the Service Term, the Company agrees to pay the Independent Contractor the JF

JAMS000386-CONFIDENTIAL

Origination Fees within 30 days from the end of each of the Company's second and fourth fiscal quarters.

    (ii) <u>Profit Share Bonus.</u>  The Independent Contractor shall be entitled to a profit share bonus equal to 25% of the annual Profits of the Company (as defined below) (the "Profit Share Bonus") during the Service Term. The Profit Share Bonus shall be payable annually, and checks shall be made out to "Jason Frank Law, a Professional Law Corporation." During the Service Term, the Company agrees to pay the Profit Share Bonus on or before February 15 of each calendar year.

    (a)    "Profits of the Company" shall mean: The amount of revenue received by the Company during the calendar year MINUS (i) all monies received by the Company during that calendar year as reimbursement for case related costs incurred by the Company prior to January 1, 2011, and (ii) all expenses paid by the Company during that calendar year, including but not limited to, all overhead, taxes, rent, salaries, bonuses, fringe benefits, origination fees, insurance, referral fees, fees paid to outside co-counsel, leases, expert fees, purchases of equipment and/or machinery, capital expenditures, professional fees, case related costs, travel expenses, judgments, and settlements, provided, however, that the following shall not be deducted when calculating "Profits of the Company":

    (1) Any salary or draw paid to Michael Eagan or Michael Avenatti exclusive of origination fees;

    (2) Any monies paid to satisfy a judgment or settlement in favor of Robert Stoll in connection with Mr. Stoll's litigation pending against the firm as of the date of this Agreement; and

    (3) The Profit Share Bonus paid pursuant to this Agreement.

    (b)  Michael Avenatti and Michael Eagan, as the equity partners of the Company (the "Equity Partners"), shall have the sole and absolute discretion to determine what expenses will be paid by the Company in a calendar year, provided however that the Company agrees not to act in bad faith and purposely incur expenses for the sole purpose of reducing the Profit Share Bonus.

    (iii) <u>Eden Bonus.</u>  The Independent Contractor shall be entitled to a percentage of the net attorneys' fees collected by the Company in connection with the lawsuits concerning Eden Memorial Park Cemetery in an amount to be determined in the sole and absolute discretion of the Equity Partners.

C.    <u>Benefit Plans.</u>  During the Service Term and except as otherwise provided herein, the Independent Contractor shall be entitled to participate in any and all benefit plans established by the Company from time to time for the benefit of employees of the Company. Nothing herein contained shall be construed as requiring the Company to establish or continue any particular benefit plan in discharge of its obligations under this Agreement.

D.    <u>Tax Treatment.</u>  The Company will make payments under this Agreement to Jason Frank Law, a Professional Law Corporation, and will issue the appropriate tax forms in compliance with all federal, state, local and other applicable tax law, rule or regulations.

E.    <u>No Equity.</u>  Anything provided herein or elsewhere to the contrary notwithstanding, in no event shall the Independent Contractor have any equity or equity interest of any kind whatsoever in the Company, and nothing herein is intended to, nor shall it, constitute a grant of equity or a partnership.

F.    <u>Expense Reimbursement.</u>  The Independent Contractor shall be entitled to receive reimbursement as soon as practicable from the Company for reasonable and customary business expenses incurred by the

JAMS000387-CONFIDENTIAL

Independent Contractor in performance of its duties and obligations hereunder, provided the Independent Contractor furnishes the Company with vouchers, receipts or other details of such expenses sufficient to substantiate a deduction for such business expenses under applicable laws, rules and regulations.

4.      Termination of the Independent Contractor Agreement.

        A.      Termination of Service.  Notwithstanding the establishment of the Service Term, (i) the Company may only terminate the Independent Contractor's service and this Agreement for Cause (as defined below), and (ii) the Independent Contractor may resign for Good Reason (as defined below) at any time, in each case subject to the terms and conditions of this Agreement.

        B.      Termination For Cause; Resignation Not For Good Reason.  Notwithstanding anything to the contrary herein, the Company reserves the right to terminate the Independent Contractor's service and this Agreement for Cause.

                (i)     "Cause" shall mean:  (a) the Independent Contractor's repeated and willful failure or refusal (i) to substantially perform the Independent Contractor's principal duties with the Company and/or (ii) to abide by the Company policies, practices, procedures or rules that are provided to the Independent Contractor, including but not limited to the requirement that the Independent Contractor refrain from competing with the Company and/or practicing law on behalf of non-Company clients during the Service Term, provided that (1) the Company shall give the Independent Contractor written notice specifically identifying and describing such failure or refusal and (2) such failure or refusal remains uncured for a period of 60 days after delivery of such notice to the Independent Contractor; (b) the engaging by the Independent Contractor in any fraud or gross negligence that would reasonably be expected to have a material detrimental effect on the Company; or (c) the Independent Contractor being convicted of or pleading nolo contendre to a felony.

                (ii)    "Good Reason" shall mean a resignation by the Independent Contractor after the occurrence of any one or more of the following conditions, in each case without the Independent Contractor's consent: (a) any reduction to the Independent Contractor's compensation or a failure by the Company to pay any compensation payable to the Independent Contractor under this Agreement in accordance with Section 3 above; (b) any diminution in the Independent Contractor's title, position, reporting relationship, duties, or responsibilities; (c) assignment of duties inconsistent with the Independent Contractor's title, position or authority; or (d) any breach by the Company of this Agreement; provided, that no such event, change or condition shall constitute grounds for a Good Reason (and the Independent Contractor shall have no right to resign for Good Reason by reason thereof) unless both (1) the Independent Contractor provides written notice to the Company of the condition claimed to constitute grounds for a Good Reason, and (2) the Company fails to remedy such condition(s) within 60 days of receiving such notice.

                (iii)   If the Company terminates the Independent Contractor's service and this Agreement for Cause or the Independent Contractor resigns without Good Reason, the Company shall have no further obligation to the Independent Contractor other than (a) to pay the Independent Contractor's accrued Base Salary, accrued JF Origination Fees, and a pro-rata Profit Share Bonus through the effective date of termination (collectively, the "Accrued Compensation"), (b) with respect to any rights the Independent Contractor may have pursuant to any insurance or other benefit plans of the Company (collectively, the "Accrued Benefits"), and (c) any un-reimbursed expenses incurred in connection with Section 3(G) above.  The Company agrees to pay the Independent Contractor the Accrued Compensation as follows: the accrued Base Salary in accordance with Section 3(A) above, the accrued JF Origination Fees in accordance with Section 3(B)(i) above (to the extent any JF Origination Fees have not been collected at the time of resignation or termination, such JF Origination Fees shall still be due and payable in accordance with Section 3(B)(i) above), and the pro-rata Profit Share Bonus in accordance with Section 3(B)(ii) above (it being understood that the pro-rata Profit Share Bonus will be

calculated based on the proportion of the applicable year that the Independent Contractor provided services to the Company).

      C.    Death and Disability.  Notwithstanding anything to the contrary herein, the Company reserves the right to terminate the Independent Contractor's service and this Agreement on account of the Independent Contractor's death or Disability and the terms of this Section 4(C) shall apply to such termination. "Disability" shall mean a determination by the Company or the Independent Contractor in accordance with applicable law that, due to a physical or mental injury, infirmity or incapacity, the Independent Contractor is unable to perform the essential functions of its services, with or without reasonable accommodation, for 120 days (whether or not consecutive) during any 12-month period.  In the event that the Company and the Independent Contractor cannot agree, they shall designate a third party knowledgeable in disability law to make such determination, which shall be binding on the Company and the Independent Contractor. If the Company or the Independent Contractor terminates the Independent Contractor's service and this Agreement because of the Independent Contractor's death or Disability, the Company shall have no further obligations to the Independent Contractor or the Independent Contractor's heirs other than to pay the Independent Contractor the Accrued Compensation, the Accrued Benefits and any un-reimbursed expenses incurred pursuant to Section 3(G) above, and the Independent Contractor shall have no further obligation to the Company.

5.    Information Rights.  During the Service Term and thereafter to the extent necessary to enforce the Independent Contractor's rights hereunder, the Independent Contractor shall have the right, upon notice and at reasonable times during normal business hours, to inspect the Company's federal tax returns (including any accompanying Schedule K-1's) filed for the years during the Service Term for the purposes of reviewing or verifying the calculation of the JF Origination Fees or Profits of the Company. The Company shall deliver to the Independent Contractor, (A) within 30 days from the end of the Company's second and fourth fiscal quarters, a detailed calculation of the JF Origination Fees, and (B) within 30 days from the filing of the Company's applicable federal income tax return, a copy of such return (including any accompanying Schedule K-1's).  In addition, the Company shall annually deliver to the Independent Contractor, together with the Profit Share Bonus, a detailed calculation of the Profit Share Bonus showing the attorneys' fees received by the Company during the calendar year, together with the Company's expenses.

6.    Representations and Warranties; Covenants.  The parties hereby represent and warrant as follows: (i) each party has the legal capacity and unrestricted right to execute and deliver this Agreement and to perform all of its obligations hereunder; (ii) the execution and delivery of this Agreement by each party and the performance of its obligations hereunder will not violate or breach or be in conflict with any fiduciary or other duty, instrument, agreement, document, arrangement, contract or other understanding to which the Company or the Independent Contractor, as applicable, is a party or by which the Company or the Independent Contractor, as applicable, is or may be bound or subject. During the Service Term, the parties covenant not to not enter into any agreement, whether written or oral, in conflict with the provisions of this Agreement.

7.    Indemnification of the Independent Contractor.  The Company agrees to indemnify and hold the Independent Contractor harmless from and against any and all damages, claims, costs and expenses, including reasonable attorneys' fees, arising out of any claims against the Company whereby the Independent Contractor is involved or implicated, either directly or indirectly, in light of this Agreement, the Independent Contractor's service with the Company, or the Independent Contractor's position with the Company.

8.    Governing Law; Arbitration.

      A.    Governing Law. This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of California, without regard to the conflicts of law rules thereof.

JAMS000389-CONFIDENTIAL

B.    Arbitration. Any and all disputes of any nature related to this Agreement shall be determined by final and binding arbitration in Los Angeles County, California before a three-arbitrator panel. The parties shall agree on the rules and procedures to be followed in the arbitration at such time as one party notices the other that it is initiating arbitration. If the parties are unable to agree on the rules and procedures to be followed within 15 days, the arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures, and the arbitrator shall apply the laws applicable in the State of California. Judgment on the arbitral award may be entered in any court having jurisdiction thereof. This clause shall preclude the parties from seeking an injunction or other provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The arbitrator shall, in the arbitral award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees (and accountant's fees) of the prevailing party, for payment by the non-prevailing party, and shall determine the prevailing party for this purpose.

9.    Miscellaneous.

A.    Headings, etc. Section and subsection headings are not to be considered part of this Agreement, are included solely for convenience, are not intended to be full or accurate descriptions of the content thereof and shall not affect the construction hereof.

B.    Successors and Assigns. Neither this Agreement, nor any of the Independent Contractor's or the Company's rights, powers, duties or obligations hereunder, may be assigned by the Independent Contractor or the Company. This Agreement shall be binding upon and inure to the benefit of the Independent Contractor and its heirs and legal representatives and the Company and its successors. Successors of the Company shall include, without limitation, any company or companies acquiring, directly or indirectly, all or substantially all of the assets of the Company, whether by merger, consolidation, purchase, lease or otherwise, and such successor shall thereafter be deemed the "Company" for the purpose hereof.

C.    Notices. Any notices or other communications required or permitted hereunder shall be deemed to have been properly given and delivered if in writing by such party or its legal representative and delivered personally or sent by electronic mail, facsimile, nationally recognized overnight courier service guaranteeing overnight delivery, or registered or certified mail, postage prepaid, addressed as follows:

If to the Independent Contractor to: Jason Frank
                        368 Pershing Drive
                        Playa Del Rey, CA 90293
                        Email: dawntamir@gmail.com; jason36651@yahoo.com

with a copy (which shall not
constitute notice) to:            Douglas Bouton
                        2120 The Strand, Apt. 7
                        Manhattan Beach, CA 90266
                        Email: dbouton@boutonlegal.com

If to the Company, to:            Michael Avenatti
                        Eagan Avenatti LLP
                        450 Newport Center Drive, 2nd Floor
                        Newport Beach, CA 92660

Unless otherwise specified herein, such notices or other communications shall be deemed given (a) on the date delivered, if delivered personally, (b) one business day after being sent by a nationally recognized overnight courier providing for overnight delivery, (c) on the date delivered, if delivered by facsimile with confirmation during business hours (or one business day after the date of delivery if delivered after business hours) and (d)

five business days after being sent, if sent by registered or certified mail. Each of the parties hereto shall be entitled to specify a different address by delivering notice as aforesaid to each of the other parties hereto.

D.    <u>Amendment or Modification.</u>  The parties hereto may amend or modify this Agreement only by a written instrument executed by each of the parties hereto.

E.    <u>Waiver.</u>  No waiver of any provision of this Agreement shall be deemed or shall constitute a waiver of any other provision thereof (whether or not similar), shall constitute a continuing waiver unless otherwise expressly provided nor shall be effective unless in writing and executed (a) in the case of a waiver by the Company, by the Company, and (b) in the case of a waiver by the Independent Contractor, by the Independent Contractor.

F.    <u>Severability.</u>  In the event that any provision hereof would, under applicable law, be invalid or unenforceable in any respect, such provision shall (to the extent permitted under applicable law) be construed by modifying or limiting it so as to be valid and enforceable to the maximum extent compatible with, and possible under, applicable law.  The provisions hereof are severable, and in the event any provision hereof should be held invalid or unenforceable in any respect, it shall not invalidate, render unenforceable or otherwise affect any other provision hereof.

G.    <u>Survival.</u>  Sections 4, 5, and 7-9 shall survive termination of this Agreement.

H.    <u>Entire Agreement.</u>  Other than that certain Settlement and Release Agreement among the Company, the Independent Contractor, Michael Avenatti and Michael Eagan, dated as of the Effective Date (the "<u>Settlement Agreement</u>"), this Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the parties with respect to such subject matter. In the event of a conflict between this Agreement and the Settlement Agreement, this Agreement shall control.  The Independent Contractor agrees that he is entering into the Settlement Agreement as a condition of this Agreement, whereby the Independent Contractor is settling and releasing any claims he has against the Company, Michael Avenatti and/or Michael Eagan individually, arising out of representations made by John O'Malley concerning the Independent Contractor's status with the Company, as an equity partner or otherwise. In exchange for this release, the Independent Contractor is receiving the following consideration under this Agreement: (a) $90,000 of the total $350,000 Base Salary provided for in this Agreement; (b) 5% of the total 20% JF Origination Fees provided for in this Agreement; and (c) 12.5% of the total 25% Profit Share Bonus provided for in this Agreement. For the avoidance of all doubt, the Settlement Agreement does not in any way waive, release or resolve, in whole or in part, any claims the Independent Contractor may have against John O'Malley individually.  Notwithstanding the foregoing, any amounts currently owed to the Independent Contractor by the Company for Origination Fees provided to the Company will remain owed to the Independent Contractor until such sums are paid.

I.    <u>Counterparts.</u>  This Agreement and any claims related to the subject matter hereof may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.  Facsimile transmission or electronic transmission in pdf or comparable format of any signed original document and/or retransmission of any signed facsimile or pdf or comparable format transmission will be deemed the same as delivery of an original.

J.    <u>Relationship of the Parties.</u>  The Independent Contractor is engaged by the Company solely as an independent contractor and not as an employee, partner, or joint venturer, and has no authority to bind the Company, by contract or otherwise. The Independent Contractor will not have, and will not represent that it has, any authority to assume or create any obligation, express or implied, to enter into any agreements regarding the Company, or to make any warranties or representations on behalf of the Company or in the Company's name.

The Independent Contractor shall be solely responsible for all matters related to payment of its employees and contractors, including the provision of benefits and all other related employment matters. The Independent Contractor is responsible for the payment of all state, federal, foreign, or local taxes, including income tax, withholding tax, social security tax, or pension contributions on the funds distributed to the Independent Contractor by the Company.

*(Signature Page to Follow)*

JAMS000392-CONFIDENTIAL

EXHIBIT A
7

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

<table>
<tr><td></td><td>Eagan Avenatti, LLP<br><br>By: _____<br>Name:  Michael Avenatti<br>Title:  Managing Partner</td></tr>
<tr><td></td><td>Jason Frank Law, a Professional Law Corporation<br><br>By: _____<br>Name:  Jason Frank<br>Title:  Authorized Signatory</td></tr>
<tr><td></td><td>Jason Frank<br><br>By: _____<br>Name:  Jason Frank</td></tr>
</table>

[Signature Page to Independent Contractor Agreement – Jason Frank]

JAMS000393-CONFIDENTIAL

EXHIBIT B



1   BROWNE GEORGE ROSS LLP
    Eric M. George (State Bar No. 166403)
2     egeorge@bgrfirm.com
    Benjamin D. Scheibe (State Bar No. 101327)
3     bscheibe@bgrfirm.com
    2121 Avenue of the Stars, Suite 2400
4   Los Angeles, California 90067
    Telephone: (310) 274-7100
5   Facsimile: (310) 275-5697

6

7   Jason Frank Law, PLC
    1416 3rd Street
    Manhattan Beach, CA 90266
8   Tel.: 310.902.6000
    Email: jasonfranklaw@gmail.com
9

10  Attorneys for Claimant Jason Frank Law PLC

11

12              JUDICIAL ARBITRATION AND MEDIATION SERVICES

13

14

15  Jason Frank Law, PLC,                    Case No. 1220053114

16              Claimant,                    Hon. Judith M. Ryan (Ret.)
                                             Hon. Terry Friedman (Ret.)
17        vs.                                Hon. Steven J. Stone (Ret.)

18  Eagan Avenatti, LLP,                     **AMENDMENT TO DEMAND FOR
                                             ARBITRATION**
19              Respondent.

20                                           Trial Date:  None Set

21

22

23

24

25

26

27

28

    688016 1

Since the filing for the Demand for Arbitration on or about March 1, 2016, there have been a number of developments that have affected the amount at issue in this lawsuit.  This Amendment hereby provides notice of the Claimant's amended demands:

1.      **The 2013 Profit Share Bonus and Required Financial Information:**  On February 15, 2014, pursuant to Section 3(B)(ii) of the Agreement, EA owed JFL 25% of the EA's net profits for the year 2013.  Further, pursuant to Section 5 of the Agreement, EA was required to provide a detailed report showing the attorneys' fees collected in 2013 and the expenses paid in 2013, as well as EA's federal tax returns and accompanying K-1's.  In breach of the Agreement, EA has failed to provide the required financial information, so JFL is unable to determine what if any profits were made in 2013.  JFL is seeking this financial information and 25% of any profits earned in 2013 in an amount to be proven at trial.

2.      **The 2014 Profit Share Bonus and Required Financial Information:**  On February 15, 2015, EA owed JFL 25% of the EA's net profits for the year 2014.  EA failed to pay this amount and provide the required financial information.  JFL is seeking the required financial information and 25% of the profits earned in 2014 in an amount to be proven at trial.

3.      **The 2015 Profit Share Bonus and Required Financial Information:**  On February 15, 2016, EA owed JFL 25% of the EA's net profits for the year 2015.  EA failed to pay this amount and provide the required financial information.  JFL is seeking the required financial information and 25% of the profits earned in 2015 in an amount to be proven at trial.

4.      **The Eden Bonus:**  On March 28, 2016, EA agreed that the amount of the Eden Bonus owed to JFL under Section 3(B)(iii) of the Agreement would be **ten percent (10%)** of the net legal fees collected by EA on all Eden related matters.  To date, EA has collected at least **$15,812,281.00** in net attorneys' fees on the Eden related matters.  As such, EA owes JFL at least **$1,581,228.00** for the Eden Bonus.

5.      **EA's Partial Satisfaction of Amounts Owed To JFL:**  On or about May 7, 2016, with EA's prior agreement and consent, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ paid JFL the amount of **$4,151,009.60** for legal fees owed to EA on a matter originated by JFL.  JFL and EA agreed that this amount of **$4,151,009.60** would be credited to the total amount of money

688016 1

1  owed by EA to JFL under the Agreement.

2       6.    **JFL's Payment of $683,990.40 to EA:**  On May 10, 2016, JFL paid EA the

3  amount of **$683,990.40** to EA.  JFL paid this amount to EA pursuant to and in reliance on EA's

4  agreement and representation that EA would pay JFL the 10% Eden Bonus and the remaining

5  amounts owed for the 2014 and 2015 Profit Share Bonus on or before the earlier of: (a) EA's

6  receipt of legal fees from a settlement in the matter entitled ███████████████████

7  ████████████ or (b) June 1, 2016.

8       7.    **EA Once Again Fails To Honor Agreement:**  On or about May 18, 2016, EA

9  received approximately **$5,500,000.00** in legal fees in the ██████████ matter.  However, EA

10  once again failed to pay JFL the 10% Eden Bonus and the remaining amounts owed to JFL for the

11  2014 and 2015 Profit Share Bonus.

12       8.    **JFL's Resignation From EA**.  On May 20, 2016, JFL resigned from EA with

13  "Good Reason" pursuant to Section 4(B)(ii) of the Agreement, because EA had failed to cure its

14  breaches of the Agreement within 60 days of receiving written notice of said breaches.  JFL had

15  provided EA with written notice of its breaches to EA as early as February 2015, and, of course,

16  provided written notice of such breaches through the filing and service of its Demand for

17  Arbitration on March 1, 2016.

18       9.    **EA's Failure To Pay Origination Fees Owed to JFL for 2016:**  On or before

19  July 1, 2016, EA owed JFL an Origination Bonus for the first half of 2016 in the amount of at

20  least **$1,027,275.24**.  This is based on the fact that EA received a total of at least **$5,136,376.20** in

21  legal fees during the first half of 2016 on matters originated by JFL.

22       10.    **Additional Amounts Owed For Fiscal Year 2016**.  Pursuant to the Agreement, if

23  JFL resigns with "Good Reason" (such as EA's failure to cure its breaches within 60 days of

24  receiving written notice of said breaches), then JFL is still entitled to the full amount of benefits

25  and compensation required under the Agreement until the Agreement expires on December 31,

26  2016.  In other words, if EA breaches the Agreement by not paying JFL what is owed and fails to

27  cure the breach within 60 days after receiving written notice of said breach, then JFL is not

28  required to continue working at the breaching firm in order to collect the remainder of the

6880161

-2-
AMENDMENT TO DEMAND FOR ARBITRATION

JAMS000551-CONFIDENTIAL

compensation owed under the Agreement.  Put another way, EA cannot get out of its entire

compensation obligations by breaching the agreement and failing to cure such breaches.  As a

result, EA owes and will owe JFL the following amounts at the end of 2016:

       a.    **Base Salary for May 20, 2016 to the Present:**  As of the end of 2016, EA
will owe JFL Base Salary for the time period May 20, 2016 through
December 31, 2016 in the amount of approximately **$185,547.95**.
[Agreement, § 3(A).]  EA will also owe JFL for the cost of obtaining
replacement healthcare benefits from July 1, 2016 through December 31,
2016.

       b.    **Origination Bonus for 2016:**  As noted above, EA has failed to pay the
20% Origination Bonus owed to JFL for the first half of 2016 in the amount
of at least $1,027,275.24.  EA will also owe JFL a 20% Origination Bonus
for any legal fees it collects after July 1, 2016 on matters originated by JFL
in an amount to be determined at trial.  To the extent legal fees have not
been paid by the time of trial, then JFL will seek a declaration that it is
entitled to 20% of any post-trial legal fees collected by EA on matters
originated by JFL.

       c.    **Profit Share Bonus for 2016:**  EA will owe JFL the 2016 Profit Share
Bonus (i.e., 25% for the net profits collected in 2016) on or before February
15, 2017.  EA had already collected approximately **$12,000,000.00** in
revenue for 2016 by the time JFL resigned from EA, so the 2016 Profit
Share Bonus will be substantial.

    11.   **EA's Meritless Claim For Quantum Meruit In JFL Originated Matters**.  After

JFL resigned from EA, almost all of JFL's clients subsequently terminated EA.  With respect to

the contingency matters originated by JFL, EA has filed liens for the "reasonable value of its

services" (i.e., quantum meruit) on the theory that EA provided its resources to litigate these

matters prior to termination.  However, EA was wrongfully using the money owed to JFL to pay

for these resources.  Moreover, EA fraudulently induced JFL to stay at EA through repeated false

JAMS000552-CONFIDENTIAL
AMENDMENT TO DEMAND FOR ARBITRATION

1 representations and false promises of payments, thereby unjustly increasing the value of its

2 purported quantum meruit claims through fraud.  Accordingly, JFL is seeking a declaration that

3 any amounts claimed by or paid to EA on such quantum meruit claims belong to JFL.

4      12.   **Pre-Judgment and Post-Judgment Interest:**  JFL will be seeking pre-judgment

5 and post-judgment interest at the statutory rate of 10% per annum.

6      13.   **Attorneys' Fees, Costs and Expenses:**  JFL is further seeking all attorneys' fees

7 and costs incurred in this matter, including but not limited to JFL's advancement of EA's portion

8 of the initial JAMS arbitration fees in the amount of $7,500.00.

9      14.   **Other Relief:**  JFL is further seeking any other relief that the Arbitration Panel

10 deems just and proper.

11

12 DATED:  August 29, 2016          BROWNE GEORGE ROSS LLP

13                       Eric M. George
                      Benjamin D. Scheibe

14

15           By  _____

16                 Benjamin D. Scheibe
       Attorneys for Claimant Jason Frank Law PLC

17

18

19

20

21

22

23

24

25

26

27

28

688016 1

-4-

AMENDMENT TO DEMAND FOR ARBITRATION

JAMS000553-CONFIDENTIAL

EXHIBIT B
14

1    <u>**PROOF OF SERVICE**</u>

2    **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3          At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of Los Angeles, State of California.  My business address is 2121 Avenue
4    of the Stars, Suite 2400, Los Angeles, CA 90067.

5          On August 29, 2016, I served true copies of the following document(s) described as
**AMENDMENT TO DEMAND FOR ARBITRATION** on the interested parties in this action as
6    follows:

7                              **SEE ATTACHED SERVICE LIST**

8          **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the
persons at the addresses listed in the Service List and placed the envelope for collection and
9    mailing, following our ordinary business practices.  I am readily familiar with Browne George
Ross LLP's practice for collecting and processing correspondence for mailing.  On the same day
10    that the correspondence is placed for collection and mailing, it is deposited in the ordinary course
of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

11
          I declare under penalty of perjury under the laws of the State of California that the
12    foregoing is true and correct.

13          Executed on August 29, 2016, at Los Angeles, California.

14

15    _____

16                              Diane Torosvan

17

18

19

20

21

22

23

24

25

26

27

28

688016 1

JAMS000554-CONFIDENTIAL                    AMENDMENT TO DEMAND FOR ARBITRATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**
*Jason Frank Law, PLC vs. Eagan Avenatti, LLP*
**JAMS Ref:  1220053115**

Phillip A. Baker, Esq.                                    Attorneys for Respondent Eagan Avenatti, LLP
Baker Keener & Nahra LLP
633 W. 5th Street, Suite 5500
Los Angeles, California 90071-2005
Tel.: 213.241.-0900
Email:  pbaker@bknlawyers.com

6880161

AMENDMENT TO DEMAND FOR ARBITRATION

JAMS000555-CONFIDENTIAL

# EXHIBIT C

**JAMS ARBITRATION**
**Reference No. 1220053114**


**Jason Frank Law, PLC,**
      **Claimant and Cross-Respondent,**


          **v.**


**Eagan Avenatti, LLP,**
      **Respondent and Cross-Claimant.**

---

**FINAL ORDER RE: CLAIMANT MOTIONS FOR SANCTIONS**

      This Order enforces and finalizes the Panel's January 30, 2017 Order Re: Claimant Motions for Sanctions ("Jan. 30th Order").

      Claimant Jason Frank Law, PLC ("JFL") has filed two Motions to sanction Respondent Eagan Avenatti LLP ("EA"). The first seeks discovery sanctions for EA's repeated failure to comply with Panel Orders to respond to certain JFL discovery. The second seeks to preclude EA from offering evidence of its affirmative counterclaims because it has failed to deposit its share of the fees and expenses for the arbitration. EA opposed each Motion. It argued against the discovery sanctions on the ground that it has produced substantial responses. It opposed the preclusion of its affirmative evidence on the ground that such relief is premature.

      The full Panel reviewed each Motion, participated in the telephonic hearing of the Motions, conferred before and after the hearing of the Motions and approved the Jan. 30th Order. In summary, the Jan. 30th Order stated:
- "The Panel will enter an Order pursuant to JAMS Rule 31(b) precluding EA from offering evidence of any affirmative claim unless it pays its share of all outstanding fees by February 3, 2017. If EA does not pay in full its share of all outstanding fees by February 3rd, it shall be precluded from offering evidence of any affirmative claim at the Hearing, whether as pled in its counterclaims or in the guise of a defense."
- "EA is ordered to produce all previously ordered discovery responses by February 3, 2017. If EA does not do so, the Panel . . . will impose issue sanctions for each category of identified non-compliance, reserving the most severe issue sanction for EA's failure to abide Panel Orders regarding its tax returns."

      On February 6, 2017, EA served on JFL its purported production to comply with the Jan. 30th Order. As requested by the Panel, JFL submitted on February 7, 2017 a Letter Brief Re: Notice of Non-Compliance ("Letter Brief").

      The full Panel has reviewed JFL's Letter Brief and conferred regarding the finalization of

EXHIBIT C
17

JAMS000182-CONFIDENTIAL

the Jan. 30th Order.  This Final Order is approved in full by each member of the Panel.

JAMS RULE 31(B) SANCTION

JAMS Comprehensive Arbitration Rules and Procedures ("JAMS Rules"), Rule 31(b) provides that "JAMS requires that the Parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing.  The Arbitrator (or Panel) may preclude a Party that has failed to deposit its *pro rata* . . . share of the fees and expenses from offering evidence or any affirmative claim at the (plenary) Hearing."  Scheduling Order ("Sch O") No. 1, §11(b) states that "(t)he parties will be requested to deposit fees sufficient to compensate the arbitrator for the scheduled hearing in advance of the commencement of the hearing."  Sch O No. 1, §10(a) set the plenary Hearing to commence March 13, 2017 and stated that "The cancellation period for the Hearing is 60 days or more prior to the Hearing.  Once the cancellation period lapses, Arbitration hearing fees are not refundable."

Fees for the plenary Hearing were due January 12, 2017.  JFL paid its share.  EA did not.  In order to keep the Hearing on calendar, JFL advanced EA's fees in the amount of $113,204.75.  JFL also advanced EA's share of initial fees so that a Preliminary Arbitration Management Conference could be held.

EA did not pay its share – or any amount – of JAMS fees by February 3, 2017, or by the issuance of this Order.  Therefore, the Panel will enforce the Jan 30th Order by precluding EA from offering evidence of any affirmative claim at the Hearing, whether as pled in its counterclaims or in the guise of a defense.

DISCOVERY SANCTIONS

JFL seeks sanctions against EA for multiple failures to comply with prior Panel Orders.  On October 27, 2016, the Panel ordered EA to produce responses to JFL's Requests for Documents.  EA partially responded to two of 17 requests.  It has failed to produce tax returns; monthly bank statements; revenue accounting records; wires, checks or invoices for expenses over $25,000; communications between Michael Avenatti and JFL, Michael Eagan and JFL, Judy Regnier and JFL and EA and any third party regarding the EA-JFL Agreement ("Agreement"); communications between EA and Eagan regarding its revenue, expenses or profits; Jason Frank's old cellphone; EA's communications with Frank after his resignation; and documents EA contends support its defenses and counterclaims.

Tax Returns

On October 27, 2016, the Panel ordered EA by November 10, 2016 to produce copies of its federal tax returns for 2013, 2014 and 2015 and its Schedule K-1s for those years.  EA did not produce produce the returns claiming that neither it nor its accountant had copies of the returns.  On November 30, 2016, the Panel expressed that EA's response "stretches the bounds of credibility."  It ordered EA by December 1, 2016 to request from the Internal Revenue Service a "Record of Account Transcripts" and warned that if EA failed to comply it would consider "all permissible sanctions."  EA EA evaded the clear mandate of the Order by having its attorney sign and file a Request for Transcript

of Tax Return, not the Record of Account Transcripts.  Not only was this a different form than the one one the Panel ordered EA to file, it was not signed by an authorized agent of EA.  Compounding the violation of the Panel Order, EA provided no authorization to release the Transcript to its counsel.  Of Of course, the IRS quickly responded with a Third Party Rejection Notice that it could not release the returns to a third party.  EA took no further steps, even belatedly, to comply with the Panel's Orders, including the obvious step of directing its counsel to resubmit the Record of Account Transcripts with a signed authorization by EA, until February 3, 2017.  In other words, EA sat on its hands in a transparent effort to delay the inevitable as long as possible.

According to JFL's Letter Brief, on February 3, 2017, EA purportedly mailed to the IRS a request for its tax returns, which it signed.  However, EA provided no proof of service for the mailing.  Also according to JFL, EA faxed the request to the IRS on February 6, 2017.

In its November 30th Order, the Panel ordered EA to make this request by December 1st.  Clearly, EA has not complied.  There can be no other conclusion than that EA violated the Order and, that, at a minimum, it intentionally and knowingly violated the obvious spirit of the Order.[1]

JFL requests imposition of the following issue sanctions for EA's consistent failure to comply with its contractual, discovery and Panel-ordered obligations to produce its tax returns:
- The Panel issue a Partial Final Award that JFL's 2013, 2014 and 2015 Profit Share Bonuses be based on EA's revenue as set forth in EA's responses to Interrogatories Nos. 1, 3 and 5, minus expenses produced before January 6, 2017.  JFL may seek more damages at the plenary Hearing if it obtains evidence of further EA revenue.
- Find that EA breached §5 of the Agreement by failing to provide the tax returns to JFL.
- Permit JFL to amend its Prayer to add a claim for punitive damages and find that EA acted with malice, oppression and fraud.

While the Panel believes JFL's request for these sanctions is reasonable, it prefers to impose issue and evidentiary sanctions rather than to issue a Partial Final Award at this time.  Therefore, the Panel directs JFL to prepare Proposed Findings of Fact ("Proposed Findings") based on its proposed formula for calculating JFL's 2013, 2014 and 2015 Profit Share Bonuses and that EA breached §5 of the Agreement by failing to provide the tax returns to JFL.  The Panel will review the Proposed Findings and, if acceptable, will adopt them prior to the commencement of the plenary Hearing.  Except for permitting JFL to seek additional damages regarding its entitlement to Profit Share Bonuses if it obtains new evidence of further EA revenue, the Panel will not allow or consider any other evidence at the plenary Hearing on the amount of 2013, 2014 and 2015 Profit Share Bonuses to which JFL is entitled and on whether EA breached §5 of the Agreement.  Finally, the Panel will permit JFL to amend its Prayer to add a claim for punitive damages and find that EA acted with malice, oppression and fraud in connection with its failure to produce its tax returns.

---

[1] During oral argument at the January 26, 2017 hearing of JFL's Motion for Sanctions, EA's counsel expressed confusion about what the Panel ordered EA to do in its October 27th and November 30th Orders.  The Panel reiterated and ordered what had always been clear:  produce the tax returns.

JAMS000184-CONFIDENTIAL

## Bank Statements

According to JFL's Letter Brief, on February 6th, EA produced bank statements for the period January 2013 – May 2016, but not for the remainder of 2016.  Furthermore, despite no "Redaction" marking, the produced bank statements contained extensive blank spaces, which JFL contends purposefully hid revenue as well as opening and closing balances.  Based on unredacted information in the statements, JFL calculated that EA redacted 73 deposits or credits in 2013 alone.

The Panel ordered on January 18, 2017 that EA produce "complete" bank statements for 2013-2016.  It has not complied.

JFL requests these issue sanctions against EA for failing to produce complete bank statements:

- Issue a Partial Final Award making the same findings regarding calculation of JFL's Profit Share Bonus for 2013, 2014 and 2015 as it requests for EA's failure to produce its tax returns.
- EA cannot contest JFL's allegation that EA used amounts it owed JFL to pay for resources employed on JFL's cases.
- The Panel permit JFL to amend its prayer for relief to add a claim for punitive damages and find that EA acted with malice, fraud and oppression by hiding its revenue numbers.
- In calculating JFL's 2016 Profit Share Bonus, for each month EA has not produced revenue numbers, that the Bonus calculation use EA's average monthly revenue for the period January 2013-May 2016.

The Panel reiterates its above Order that JFL prepare Proposed Findings regarding not only the calculation of JFL's Profit Share Bonus for 2013, 2014 and 2015, but also to calculate the Bonus for the period June 2016 – December 2016 and to preclude EA from contesting JFL's allegation that EA used amounts it owed JFL to pay for resources employed on JFL's cases.  In addition, the Panel will permit to JFL to amend its Prayer for relief to seek punitive damages and further find that that EA acted with malice, fraud and oppression by hiding its revenue numbers.

## Emails and Other Information

JFL's Letter Brief states that EA did not produce any remaining documents or information ordered by the Panel on January 30th:

- Emails regarding performance of Agreement, including to and from Avenatti and Eagan
- Emails to and from Eagan regarding EA's revenue, profits and expenses
- EA emails with JFL after his resignation
- Documents and emails regarding the drafting and negotiation of the Agreement
- Jason Frank's old cellphone
- Back up documentation for EA expenses in excess of $25,000 including amounts Avenatti claims were paid to him as origination fees rather than profit distributions

JAMS000185-CONFIDENTIAL

JFL requests an evidentiary sanction that EA be precluded from offering into evidence any document in its possession, custody or control not produced prior to January 6, 2017, including JFL documents, unless JFL introduces the document first.  The Panel imposes this evidentiary sanction.

Wires re *Loftin* Fees

On October 27, 2016, the Panel specifically ordered EA to produce bank statements and wires by November 10th regarding the date when *Loftin* Legal Fees transferred from its client trust account to its operating account.  EA has not produced these documents.  EA orally committed to fully comply with this Order by February 3rd.

According to JFL, EA did not produce the bank statements and wires.  Accordingly, JFL asks that the Panel impose an issue sanction finding that the legal fees were collected in 2014, not 2013.  The Panel imposes this issue sanction.

Interrogatories

On December 20, 2016, the Panel ordered EA to produce further responses to JFL's Interrogatories by January 6, 2017.  EA failed to meet that deadline, but did provide some further responses on January 10, 2017.

According to JFL's Letter Brief, EA provided no further response to Interrogatory No. 9 regarding the calculation of "net attorneys' fees" in the *Eden* class action and related lawsuits.  JFL requests an issue sanction that in calculating the *Eden* Bonus, "net attorneys' fees" shall be the total amount awarded by the trial court in the class action plus revenue collected in individual *Eden* related cases minus costs identified in EA's application for attorneys' fees and costs in the class action.  The Panel will impose this issue sanction.

Also, JFL's Letter Brief states that EA provided no further responses to the following interrogatories:
- No. 7.  Identify full amount of 2016 revenue
- Nos. 10 & 11.  Total "JFL Origination Fees" in 2016
- No. 13.  Information regarding "Origination Fees" collected by Avenatti
- No. 14.  Identify case names for "Referral Fees" or "Fees Paid to Outside Counsel"

The Panel directs JFL to prepare Proposed Findings corresponding to EA's failure to further respond to these interrogatories.

Defenses and Counterclaims

According to JFL's Letter Brief, EA produced no documents or information regarding its defenses or counterclaims.  The Panel is ordering that EA may not present any evidence on its counterclaims, so there is no need to address its non-production regarding those counterclaims.  Separately, JFL requests that EA be precluded from asserting any defenses for which it has refused to produce supporting evidence.  The Panel will impose this issue sanction.

JAMS000186-CONFIDENTIAL

## CONCLUSION

Except for its request for issuance of a Partial Final Award, which is premature, JFL's requested sanctions are reasonable and appropriately responsive to the magnitude of EA's non-compliance with Panel Orders. JFL is directed to submit to the Panel specific Proposed Findings which the Panel will conclusively adopt at the plenary Hearing.

Dated:      February 10, 2017

Judge Terry Friedman (Ret.)
Chair, Arbitration Panel

JAMS000187-CONFIDENTIAL

# EXHIBIT D

**Edit Wire - Domestic Confirmation**

**Wire Release Information**

Status:                           PENDING   view status definitions
Sequence number:                  2591
Number of approvals required:     1
Message type cutoff time:         14:30 PST
Message type:                     Domestic

**Wire Information**

Account:              SCOTT V SERVICE CORP INT
Currency:   USD
Value date: 05/27/2014
Amount:     636,600.00

**Beneficiary Bank**

Bank ID type:                       F
Bank id:
Bank name:                          BANK OF AMERICA, N.A., NY
Bank address 1:                     NEW YORK NY
Bank address 2 (optional):          NEW YORK, NY
Country (optional):                 US

**Beneficiary Information**

Beneficiary account number:
Beneficiary name:                   C I B C
Beneficiary address 1 (optional):
Beneficiary address 2 (optional):
Country (optional):

**Remittance Information (Optional)**

                    Standard remittance (up to 70 characters per line)
Remittance (optional):   Payment details 1 (optional): For credit to Acamar Investments Inc. Account
                    Payment details 2 (optional): Eagan Avenatti Assignment 4-7-14

**Intermediary Bank 1 Information (Optional)**

Bank id type (optional):
Bank id (optional):
Bank name (optional):
Account number (optional):
Address 1 (optional):
Address 2 (optional):
Address 3 (optional):

**Intermediary Bank 2 Information (Optional)**

Bank id type (optional):
Bank id (optional):
Bank name (optional):
Account number (optional):
Address 1 (optional):
Address 2 (optional):
Address 3 (optional):

**Originator Information**

Originator name:                    SCOTT V SERVICE CORP INT
Originator id:
Originator address 1:               3301 Kerner Blvd
Originator address 2 (optional): San Rafael, Ca
Originator address 3 (optional): US

**Detail History Information**

Action   User ID     Date/Time
Created  CHRIS  2014-05-27 10:38:25

EXHIBIT D
23

# EXHIBIT E



C|B CALIFORNIA BANK & TRUST
P.O. Box 489, Lawndale, CA 90260-0489

**Statement of Accounts**
Page 1 of 18
This Statement: June 30, 2014
Last Statement: May 30, 2014

Account ████8461

**DIRECT INQUIRIES TO:**
Customer Service  1 (800) 400-6080

0053773          4182-06-1000-CBT-PG0023-00131

EAGAN AVENATTI LLP
OPERATING ACCOUNT
450 NEWPORT CENTER DR FL 2
NEWPORT BEACH CA 92660-7610

Irvine Branch
1900 Main St.  Suite 100
Irvine, CA 92614-0000
(949) 223-7500

California Bank & Trust, as a part of Zions Bancorporation, has received 12 Greenwich Excellence Awards for business banking. The awards include the national award for overall satisfaction in small business banking and the national award for overall satisfaction in middle market banking.

NO PAPERWORK. MORE CONVENIENCE.
Online banking from your computer, smartphone, or tablet.
Quick secure access. Learn more at calbanktrust.com.

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Business Advantage Checking | ████8461 | | |

## BUSINESS ADVANTAGE CHECKING ████8461                                      105   131

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|

### 9 DEPOSITS/CREDITS

| Date | Amount | Description |
|---|---|---|
| 06/02 | 1,500,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000007913  2305405494 |
| 06/02 | 44,284.44 | AT&T PAYMENTS O053030909676SSREF # 014153000374859  1105328704 |
| 06/02 | 27,411.42 | REMOTE DEPOSIT 5353097622 |
| 06/09 | 7,828.45 | REMOTE DEPOSIT 5353099019 |
| 06/13 | 3,000,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006847  2305101226 |
| 06/18 | 200,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000001692  2304401462 |
| 06/26 | 900,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006446  2304000504 |
| 06/30 | 200,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000007612  2304400166 |
| 06/30 | 1,754.36 | REMOTE DEPOSIT 5353089160 |

### 49 CHARGES/DEBITS

| Date | Amount | Description |
|---|---|---|
| 06/02 | 221,112.01 | WIRE/OUT-201406020003728;BNF EDWARD M. RICCI  1301801007 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 979,870.10 | WIRE/OUT-201406020003755;BNF EDWARD M. RICCI  1301801015 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 2,735.91 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014153000548959  1105332176 |
| 06/02 | 31,738.89 | IRS USATAXPYMT 270455375480357REF # 014153000574415  1105332410 |
| 06/03 | 7,507.57 | EMPLOYMENT DEVEL EDD EF 641008896 REF # 014154001761392  1104550930 |

**HIGHLY CONFIDENTIAL**      **EA-JFL 000486**
0053773-0000001-0149955
EQUAL HOUSING LENDER / MEMBER FDIC

EXHIBIT E
24



**CALIFORNIA BANK**
**T R U S T**

P.O. Box 489, Lawndale, CA 90260-0489

Page 3 of 18
June 30, 2014
EAGAN AVENATTI LLP
▓▓▓▓▓8461

Continued ...

| Date | Amount | Description |
|------|--------|-------------|
| 06/03 | 33,962.18 | BANKCARD CENTER PAYMENT 479859110118744REF # 014154001875121  1104501407 |
| 06/09 | 72,000.00 | WIRE/OUT-201406090000353589;BNF STEPHEN H KRUMM A PROFESSIONAL  1301401107 |
| 06/09 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/10 | 316.12 | PAYCHEX EIB INVOICE X55452000026057REF # 014160004777175  1104706243 |
| 06/10 | 54,568.24 | BANKCARD CENTER PAYMENT 479859110118744REF # 014161005448789  1104701320 |
| 06/12 | 54,699.48 | PAYCHEX PAYROLL 55602400002165XREF # 014162005942318  1103604440 |
| 06/13 | 700,000.00 | WIRE/OUT-2014061300004062;BNF SIMEON OSBORN  1302002448 |
| 06/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/13 | 1,866.18 | PAYCHEX TPS TAXES 5565500005490XREF # 014164007194454  1103935719 |
| 06/13 | 6,814.85 | PAYCHEX PAYROLL 55653000000213XREF # 014164007131938  1103935502 |
| 06/13 | 39,622.39 | PAYCHEX TPS TAXES 5560460001281XREF # 014163006683659  1103910764 |
| 06/16 | 354.24 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014167007718247  1106325241 |
| 06/16 | 2,721.09 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014167007718239  1106325233 |
| 06/18 | 111,563.66 | WIRE/OUT-2014061800003041;BNF SUGARMAN & COMPANY, LLP  1302100832 |
| 06/18 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/24 | 54,374.20 | BANKCARD CENTER PAYMENT 479859110118744REF # 014175001490967  1104101273 |
| 06/27 | 54,100.45 | PAYCHEX PAYROLL 55836900000729XREF # 014177002681592  1103508283 |
| 06/30 | 33,887.86 | PAYCHEX TPS TAXES 55842400024689XREF # 014178003367072  1103010072 |

**128 CHECKS PROCESSED**

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 9112 | 06/05 | 389,393.30 | 9659 | 06/02 | 71.75 | 9710* | 06/02 | 10,000.00 |
| 9599* | 06/04 | 6,084.51 | 9661* | 06/03 | 3,046.65 | 9711 | 06/02 | 25,000.00 |
| 9602* | 06/25 | 2,102.00 | 9663* | 06/02 | 33,734.27 | 9715* | 06/06 | 883.59 |
| 9603 | 06/24 | 9,713.30 | 9664 | 06/03 | 10,922.66 | 9716 | 06/04 | 290.56 |
| 9604 | 06/27 | 792.98 | 9666* | 06/10 | 26,962.39 | 9717 | 06/16 | 100.17 |
| 9625* | 06/12 | 517.36 | 9668* | 06/02 | 4,022.79 | 9718 | 06/18 | 87.92 |
| 9628* | 06/16 | 10,383.00 | 9669 | 06/02 | 319.75 | 9719 | 06/12 | 246.07 |
| 9629 | 06/16 | 55,242.97 | 9672* | 06/04 | 7,150.15 | 9720 | 06/18 | 765.00 |
| 9630 | 06/16 | 150,000.00 | 9674* | 06/04 | 2,919.41 | 9721 | 06/25 | 201.48 |
| 9631 | 06/24 | 387.00 | 9675 | 06/05 | 2,333.50 | 9722 | 06/12 | 152.90 |
| 9641* | 06/02 | 230.34 | 9676 | 06/06 | 3,500.00 | 9723 | 06/13 | 375.00 |
| 9642 | 06/03 | 10,951.86 | 9679* | 06/16 | 16,613.09 | 9724 | 06/18 | 477.20 |
| 9644* | 06/02 | 92.07 | 9684* | 06/10 | 4,039.16 | 9725 | 06/13 | 159.00 |
| 9645 | 06/03 | 341.57 | 9686* | 06/02 | 2,500.00 | 9726 | 06/16 | 220.00 |
| 9646 | 06/03 | 7,531.20 | 9687 | 06/02 | 14,275.47 | 9727 | 06/13 | 2,871.04 |
| 9648* | 06/13 | 13,536.25 | 9689* | 06/02 | 1,599.85 | 9728 | 06/13 | 839.74 |
| 9649 | 06/09 | 6,079.16 | 9690 | 06/03 | 38.99 | 9729 | 06/16 | 6,899.28 |
| 9651* | 06/05 | 3,573.91 | 9691 | 06/02 | 1,652.78 | 9730 | 06/13 | 2,317.83 |
| 9652 | 06/02 | 144.00 | 9692 | 06/04 | 16,508.89 | 9731 | 06/16 | 107.00 |
| 9653 | 06/09 | 30,672.55 | 9693 | 06/04 | 14,035.00 | 9732 | 06/18 | 8.85 |
| 9654 | 06/02 | 1,325.00 | 9701* | 06/04 | 2,551.08 | 9733 | 06/13 | 3,211.65 |
| 9655 | 06/02 | 5,814.15 | 9702 | 06/04 | 97.28 | 9734 | 06/12 | 390.00 |
| 9656 | 06/03 | 2,687.50 | 9703 | 06/16 | 500.00 | 9735 | 06/16 | 1,163.50 |
| 9657 | 06/05 | 35,888.50 | 9704 | 06/02 | 15,160.00 | 9736 | 06/11 | 10,675.46 |
| 9658 | 06/02 | 7,736.90 | 9705 | 06/03 | 4,762.43 | 9737 | 06/13 | 3,713.58 |



JAMS000326-CONFIDENTIAL

**HIGHLY CONFIDENTIAL**

**EA-JFL 000487**

0053773-0000002-0149956

EXHIBIT E
25

Page 4 of 18
June 30, 2014
EAGAN AVENATTI LLP
████8461
California Bank & Trust

Continued ...

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 9739* | 06/12 | 2,103.90 | 9757 | 06/27 | 231.86 | 9781 | 06/27 | 117.70 |
| 9740 | 06/13 | 1,840.67 | 9758 | 06/30 | 86.35 | 9782 | 06/27 | 413.97 |
| 9741 | 06/13 | 2,614.85 | 9759 | 06/30 | 54.86 | 9786* | 06/26 | 440.12 |
| 9743* | 06/16 | 400.00 | 9760 | 06/26 | 36,908.68 | 9788* | 06/27 | 350,000.00 |
| 9744 | 06/12 | 1,318.48 | 9761 | 06/27 | 1,091.74 | 9789 | 06/27 | 1,600.87 |
| 9745 | 06/12 | 987.85 | 9762 | 06/30 | 122.00 | 51537* | 06/03 | 3,865.99 |
| 9746 | 06/12 | 176.55 | 9764* | 06/27 | 700.00 | 51539* | 06/02 | 5,120.35 |
| 9747 | 06/13 | 2,665.75 | 9765 | 06/30 | 1,875.00 | 51540 | 06/02 | 1,162.69 |
| 9748 | 06/19 | 300.00 | 9767* | 06/26 | 2,843.95 | 51541 | 06/04 | 5,648.27 |
| 9749 | 06/13 | 634.00 | 9768 | 06/30 | 12,308.98 | 51543* | 06/03 | 1,614.65 |
| 9750 | 06/17 | 22,155.00 | 9770* | 06/27 | 639.50 | 51546* | 06/02 | 8,556.22 |
| 9751 | 06/20 | 18.00 | 9771 | 06/30 | 502.05 | 51547 | 06/11 | 7,636.38 |
| 9752 | 06/16 | 1,966.59 | 9772 | 06/26 | 59.00 | 51548 | 06/02 | 5,718.48 |
| 9752* | 06/16 | 2,262.00 | 9773 | 06/30 | 3,230.01 | 51549 | 06/02 | 852.35 |
| 9753 | 06/17 | 4,756.25 | 9777* | 06/30 | 14,293.18 | 51550 | 06/03 | 175.00 |
| 9754 | 06/17 | 282.14 | 9778 | 06/30 | 1,070.30 | 51551 | 06/02 | 3,359.90 |
| 9755 | 06/26 | 4,415.80 | 9779 | 06/30 | 53.51 | 51553* | 06/27 | 175.00 |
| 9756 | 06/27 | 1,397.49 | 9780 | 06/26 | 987.85 | | | |

* Not in check sequence

JAMS000327-CONFIDENTIAL    MEMBER FDIC

**HIGHLY CONFIDENTIAL**

**EA-JFL 000488**

0053773-0000002-0149956

EXHIBIT F



**CALIFORNIA BANK**
T R U S T

P.O. Box 489, Lawndale, CA 90260-0489

**Statement of Accounts**
Page 1 of 18
This Statement: June 30, 2014
Last Statement: May 30, 2014

Account ▓▓▓▓▓8461

0053773

4182-06-1000-CBT-PG0023-00131

EAGAN AVENATTI LLP
OPERATING ACCOUNT
450 NEWPORT CENTER DR FL 2
NEWPORT BEACH CA 92660-7610

**DIRECT INQUIRIES TO:**
Customer Service 1 (800) 400-6080

Irvine Branch
1900 Main St. Suite 100
Irvine, CA 92614-0000
(949) 223-7500

California Bank & Trust, as a part of Zions Bancorporation, has received 12 Greenwich Excellence Awards for business banking. The awards include the national award for overall satisfaction in small business banking and the national award for overall satisfaction in middle market banking.

NO PAPERWORK. MORE CONVENIENCE.
Online banking from your computer, smartphone, or tablet.
Quick secure access. Learn more at calbanktrust.com.

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Business Advantage Checking | ▓▓▓▓8461 | $40,161.87 | |

## BUSINESS ADVANTAGE CHECKING ▓▓▓▓8461

105 131

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|
| 1,504,540.54 | 5,881,278.67 | 5,810,149.67 | 1,535,507.67 | 40,161.87 |

### 9 DEPOSITS/CREDITS

| Date | Amount | Description |
|---|---|---|
| 06/02 | 1,500,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000007913 2305405494 |
| 06/02 | 44,284.44 | AT&T PAYMENTS O0530309096765SSREF # 014153000374859 1105328704 |
| 06/02 | 27,411.42 | REMOTE DEPOSIT 5353097622 |
| 06/09 | 7,828.45 | REMOTE DEPOSIT 5353099019 |
| 06/13 | 3,000,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000005101226 2305101226 |
| 06/18 | 200,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000001692 2304401462 |
| 06/26 | 900,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006446 2304000504 |
| 06/30 | 200,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000007612 2304400166 |
| 06/30 | 1,754.36 | REMOTE DEPOSIT 5353089160 |

### 49 CHARGES/DEBITS

| Date | Amount | Description |
|---|---|---|
| 06/02 | 525,000.00 | WIRE/OUT-2014060200003678;BNF HONDA AIRCRAFT COMPANY LLC 1301800997 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 221,112.01 | WIRE/OUT-2014060200003728;BNF EDWARD M. RICCI 1301801007 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 979,870.10 | WIRE/OUT-2014060200003755;BNF EDWARD M. RICCI 1301801015 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 19.95 | Intuit Acct Fee INTUITP REF # 014153000426436 1105331719 |
| 06/02 | 2,735.91 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014153000548959 1105332176 |
| 06/02 | 31,738.89 | IRS USATAXPYMT 270455375480357REF # 014153000574415 1105332410 |
| 06/03 | 7,507.57 | EMPLOYMENT DEVEL EDD ER 641008896 REF # 014154001761392 1104550930 |



MEMBER FDIC

EXHIBIT F
27

0053773-0000001-0149955



Page 3 of 18
June 30, 2014
EAGAN AVENATTI LLP
8461

**CALIFORNIA BANK**

**T R U S T**

P.O. Box 489, Lawndale, CA 90260-0489

Continued ...

| Date | Amount | Description |
|---|---|---|
| 06/03 | 33,962.18 | BANKCARD CENTER PAYMENT 479859110118744REF # 014154001875121  1104501407 |
| 06/09 | 72,000.00 | WIRE/OUT-201406090000003589;BNF STEPHEN H KRUMM A PROFESSIONAL  1301401107 |
| 06/09 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/10 | 10,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000000061  2304600611 |
| 06/10 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004742  2304600921 |
| 06/10 | 316.12 | PAYCHEX EIB INVOICE X55452000026057REF # 014160004777175  1104706243 |
| 06/10 | 54,568.24 | BANKCARD CENTER PAYMENT 479859110118744REF # 014161005448789  1104701320 |
| 06/11 | 15,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000008469  2305200551 |
| 06/12 | 54,699.48 | PAYCHEX PAYROLL 55602400002165XREF # 014162005942318  1103604440 |
| 06/13 | 2,150,000.00 | WIRE/OUT-201406130000004116;BNF ALEDMI LLC  1302002456 |
| 06/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/13 | 700,000.00 | WIRE/OUT-201406130000004062;BNF SIMEON OSBORN  1302002448 |
| 06/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/13 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002623  2305100759 |
| 06/13 | 1,866.18 | PAYCHEX TPS TAXES 55655000005490XREF # 014164007194454  1103935719 |
| 06/13 | 6,814.85 | PAYCHEX PAYROLL 55653000000213XREF # 014164007131938  1103935502 |
| 06/13 | 39,622.39 | PAYCHEX TPS TAXES 55604600012810XREF # 014163006683659  1103910764 |
| 06/16 | 354.24 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014167007718247  1106325241 |
| 06/16 | 2,721.09 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014167007718239  1106325233 |
| 06/17 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002012  2306100215 |
| 06/18 | 111,563.66 | WIRE/OUT-201406180000003041;BNF SUGARMAN & COMPANY, LLP  1302100832 |
| 06/18 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/18 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000003864  2304400347 |
| 06/19 | 10,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000007784  2304000383 |
| 06/24 | 52,957.30 | WIRE/OUT-201406240000002774;BNF ALEDMI LLC  1302400814 |
| 06/24 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/24 | 54,374.20 | BANKCARD CENTER PAYMENT 479859110118744REF # 014175001490967  1104101273 |
| 06/26 | 368,496.00 | WIRE/OUT-201406260000003549;BNF CASCADE CAPITAL GROUP  1302200968 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 158,729.00 | WIRE/OUT-201406260000003599;BNF MARK CALVERT  1302200990 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 15,640.00 | WIRE/OUT-201406260000003936;BNF CASCADE CAPITAL GROUP CASH BAL  1302201056 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 35.00 | STOP PAYMENT FEE |
| 06/27 | 20,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002452  2305501041 |
| 06/27 | 54,100.45 | PAYCHEX PAYROLL 55836900000729XREF # 014177002681592  1103508283 |
| 06/30 | 33,887.86 | PAYCHEX TPS TAXES 55842400024689XREF # 014178003367072  1103010072 |
| 06/30 | 102.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1701001242 |
| 06/30 | 25.00 | REMOTE DEPOSIT SERVICE - 1 |

**128 CHECKS PROCESSED**

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 9112 | 06/05 | 389,393.30 | 9659 | 06/02 | 71.75 | 9710* | 06/02 | 10,000.00 |
| 9599* | 06/04 | 6,084.51 | 9661* | 06/03 | 3,046.65 | 9711 | 06/02 | 25,000.00 |
| 9602* | 06/25 | 2,102.00 | 9663* | 06/02 | 33,734.27 | 9715* | 06/06 | 883.59 |
| 9603 | 06/24 | 9,713.30 | 9664 | 06/03 | 10,922.66 | 9716 | 06/04 | 290.56 |
| 9604 | 06/27 | 792.98 | 9666* | 06/10 | 26,962.39 | 9717 | 06/16 | 100.17 |
| 9625* | 06/12 | 517.36 | 9668* | 06/02 | 4,022.79 | 9718 | 06/18 | 87.92 |
| 9628* | 06/16 | 10,383.00 | 9669 | 06/02 | 319.75 | 9719 | 06/12 | 246.07 |
| 9629 | 06/16 | 55,242.97 | 9672* | 06/04 | 7,150.15 | 9720 | 06/18 | 765.00 |
| 9630 | 06/16 | 150,000.00 | 9674* | 06/04 | 2,919.41 | 9721 | 06/25 | 201.48 |
| 9631 | 06/24 | 387.00 | 9675 | 06/05 | 2,333.50 | 9722 | 06/12 | 152.90 |
| 9641* | 06/02 | 230.34 | 9676 | 06/06 | 3,500.00 | 9723 | 06/13 | 375.00 |
| 9642 | 06/03 | 10,951.86 | 9679* | 06/16 | 16,613.09 | 9724 | 06/18 | 477.20 |
| 9644* | 06/02 | 92.07 | 9684* | 06/10 | 4,039.16 | 9725 | 06/13 | 159.00 |
| 9645 | 06/03 | 341.57 | 9686* | 06/02 | 2,500.00 | 9726 | 06/16 | 220.00 |
| 9646 | 06/03 | 7,531.20 | 9687 | 06/02 | 14,275.47 | 9727 | 06/13 | 2,871.04 |
| 9648* | 06/13 | 13,536.25 | 9689* | 06/02 | 1,599.85 | 9728 | 06/13 | 839.74 |
| 9649 | 06/09 | 6,079.16 | 9690 | 06/03 | 38.99 | 9729 | 06/16 | 6,899.28 |
| 9651* | 06/05 | 3,573.91 | 9691 | 06/02 | 1,652.78 | 9730 | 06/13 | 2,317.83 |
| 9652 | 06/02 | 144.00 | 9692 | 06/04 | 16,508.89 | 9731 | 06/16 | 107.00 |
| 9653 | 06/09 | 30,672.55 | 9693 | 06/04 | 14,035.00 | 9732 | 06/18 | 8.85 |
| 9654 | 06/02 | 1,325.00 | 9701* | 06/04 | 2,551.08 | 9733 | 06/13 | 3,211.65 |
| 9655 | 06/02 | 5,814.15 | 9702 | 06/04 | 97.28 | 9734 | 06/12 | 390.00 |
| 9656 | 06/03 | 2,687.50 | 9703 | 06/16 | 500.00 | 9735 | 06/16 | 1,163.50 |
| 9657 | 06/05 | 35,888.50 | 9704 | 06/02 | 15,160.00 | 9736 | 06/11 | 10,675.46 |
| 9658 | 06/02 | 7,736.90 | 9705 | 06/03 | 4,762.43 | 9737 | 06/13 | 3,713.58 |



EQUAL HOUSING
LENDER
MEMBER FDIC

0053773-0000002-0149956

Page 4 of 18
June 30, 2014
EAGAN AVENATTI LLP
████████8461
California Bank & Trust

Continued ...

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 9739* | 06/12 | 2,103.90 | 9757 | 06/27 | 231.86 | 9781 | 06/27 | 117.70 |
| 9740 | 06/13 | 1,840.67 | 9758 | 06/30 | 86.35 | 9782 | 06/27 | 413.97 |
| 9741 | 06/13 | 2,614.85 | 9759 | 06/30 | 54.86 | 9786* | 06/26 | 440.12 |
| 9743* | 06/16 | 400.00 | 9760 | 06/26 | 36,908.68 | 9788* | 06/27 | 350,000.00 |
| 9744 | 06/12 | 1,318.48 | 9761 | 06/27 | 1,091.74 | 9789 | 06/27 | 1,600.87 |
| 9745 | 06/12 | 987.85 | 9762 | 06/30 | 122.05 | 51537* | 06/03 | 3,865.99 |
| 9746 | 06/12 | 176.55 | 9764* | 06/27 | 700.00 | 51539* | 06/02 | 5,120.35 |
| 9747 | 06/13 | 2,665.75 | 9765 | 06/30 | 1,875.00 | 51540 | 06/02 | 1,162.69 |
| 9748 | 06/19 | 300.00 | 9767* | 06/26 | 2,843.95 | 51541 | 06/04 | 5,648.27 |
| 9749 | 06/13 | 634.00 | 9768 | 06/30 | 12,308.98 | 51543* | 06/03 | 1,614.65 |
| 9750 | 06/17 | 22,155.00 | 9770* | 06/27 | 639.50 | 51546* | 06/02 | 8,556.22 |
| 9751 | 06/20 | 18.00 | 9771 | 06/30 | 502.05 | 51547 | 06/11 | 7,636.38 |
| 9752 | 06/16 | 1,966.59 | 9772 | 06/26 | 59.00 | 51548 | 06/02 | 5,718.48 |
| 9752* | 06/16 | 2,262.00 | 9773 | 06/26 | 3,230.01 | 51549 | 06/02 | 852.35 |
| 9753 | 06/17 | 4,756.25 | 9777* | 06/30 | 14,293.18 | 51550 | 06/03 | 175.00 |
| 9754 | 06/17 | 282.14 | 9778 | 06/30 | 1,070.30 | 51551 | 06/02 | 3,359.90 |
| 9755 | 06/26 | 4,415.80 | 9779 | 06/30 | 53.51 | 51553* | 06/27 | 175.00 |
| 9756 | 06/27 | 1,397.49 | 9780 | 06/26 | 987.85 | | | |

* Not in check sequence

...................................................................................................................................

**AGGREGATE OVERDRAFT AND RETURNED ITEM FEES**

| | Total for This Period | Total Year-to-Date |
|--------|------|--------|
| Total Overdraft Fees | $102.00 | $1,486.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

To learn more about our other products and services that may lower the cost of managing account
overdrafts or to discuss removing overdraft coverage from your account, please contact Customer
Service or visit your local branch.

...................................................................................................................................

**DAILY BALANCES**

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 06/02 | 1,153,185.43 | 06/11 | 353,803.22 | 06/20 | 145,690.90 |
| 06/03 | 1,065,777.18 | 06/12 | 293,210.63 | 06/24 | 28,229.10 |
| 06/04 | 1,024,527.03 | 06/13 | 355,067.85 | 06/25 | 25,925.62 |
| 06/05 | 593,337.82 | 06/16 | 106,134.92 | 06/26 | 334,050.21 |
| 06/06 | 588,954.23 | 06/17 | 73,941.53 | 06/27 | -97,211.35 |
| 06/09 | 488,000.97 | 06/18 | 156,008.90 | 06/30 | 40,161.87 |
| 06/10 | 387,115.06 | 06/19 | 145,708.90 | | |



MEMBER FDIC

0053773-0000002-0149956

# EXHIBIT G

<center>SETTLEMENT AGREEMENT AND RELEASES</center>

This Settlement Agreement and Releases ("Agreement") is entered into this 12th day of December 2017 by and between Jason Frank Law, PLC, a professional law corporation organized in California ("JFL"), Jason Frank ("FRANK"), an individual, Scott Sims ("SIMS"), an individual, Andrew Stolper ("STOLPER"), an individual, and Frank Sims & Stolper LLP, a limited liability partnership organized in California ("FSS") (collectively, the "JFL Parties"), on the one hand, and Eagan Avenatti LLP ("EA"), a limited liability partnership organized in California, Avenatti & Associates, APC ("A&A"), a professional corporation organized in California, Michael Avenatti ("AVENATTI"), an individual, and Michael Eagan, an individual ("EAGAN") (collectively, the "EA Parties"), on the other hand.  The JFL Parties and EA Parties are collectively referred to as the "Parties."

WHEREAS, JFL and FRANK entered into an Independent Contractor Agreement with EA effective November 1, 2013 (the "JFL Agreement") and prior to that time FRANK had been an employee of EA;

WHEREAS, SIMS entered into an Employment Agreement with EA dated March 1, 2014 (the "SIMS Employment Agreement");

WHEREAS, on or about February 28, 2016, JFL filed a Demand for Arbitration with JAMS against EA asserting claims for damages and other remedies for breach of contract, which demand was later amended to include claims for fraud, unjust enrichment, declaratory relief and punitive damages (the "JFL Arbitration");

WHEREAS, on or about May 20, 2016, JFL, FRANK, SIMS and STOLPER ceased practicing law at EA and formed a new law firm, FSS;

WHEREAS, the clients in the matters listed on Exhibit "A" (attached hereto) (collectively, the "Matters") terminated EA as their counsel in the Matters and retained FSS as their counsel in certain of the Matters;

WHEREAS, EA asserted attorneys' liens in the Matters and/or claimed it had the right to recover its reasonable attorneys' fees and costs for the work performed at EA on the Matters;

WHEREAS, on or about July 22, 2016, EA filed a Demand for Arbitration with JAMS against EA's former client, Kimberly Birbrower, seeking to recover fees and costs in the Birbrower v. Quorn Foods, Inc. matter, which is one of the Matters (the "EA/Birbrower Arbitration");

WHEREAS, on or about August 9, 2016, SIMS filed a Demand for Arbitration with JAMS against EA seeking certain sums owed under the SIMS Employment Agreement, including claims for breach of contract, fraud, accounting and constructive trust (the "SIMS Arbitration");

137774123.8                                    1

<center>EXHIBIT G
30</center>

WHEREAS, on or about September 23, 2016, EA filed counterclaims against SIMS in the SIMS Arbitration asserting claims for breach of contract, fraud, violation of the California Uniform Trade Secret Act, breach of fiduciary duty, breach of duty of loyalty, conversion, accounting, and constructive trust;

WHEREAS, on or about September 12, 2016, EA filed counterclaims against JFL in the JFL Arbitration asserting claims for breach of contract, fraud, breach of fiduciary duty, breach of duty of loyalty, conversion, accounting, constructive trust and tortious interference;

WHEREAS, on or about December 15, 2016, EA filed a complaint in California Superior Court, County of Orange, Case No. 30-2016-00892564-CU-BC-CJC against its former client, William Scott Callaway, seeking to recover fees and costs in the Callaway v. Mercedes Benz USA, Inc. et al. matter, which is one of the Matters (the "EA/Callaway Lawsuit");

WHEREAS, on or about December 21, 2016, EA filed a complaint in California Superior Court, County of Orange, Case No. 30-2016-00893847-CU-MC-CJC against Paul Root and Madison Street Partners, Inc. asserting claims for aiding and abetting breach of duty of loyalty and aiding and abetting fraud (the "EA/Root Lawsuit");

WHEREAS, on or about February 8, 2017, EA's former clients, Authentic Entertainment Properties, LLC and Authentic Entertainment Properties Development, LLC (collectively "AEP") filed a Demand for Arbitration with JAMS against EA seeking declaratory relief and damages relating to EA's former representation of AEP in the AEP v. Royal Center Associates, LLC et al. matter, which is one of the Matters (the "AEP/EA Arbitration");

WHEREAS, on or about February 28, 2017, EA filed a motion to adjudicate its attorney lien against AEP in the District Court for Clark County Nevada, in the AEP v. Royal Center Associates, LLC et al. matter, which such motion was denied and is currently being appealed by EA;

WHEREAS, on or about March 1, 2017, an Involuntary Bankruptcy Petition against EA, seeking that EA be a debtor in a Chapter 11 case was filed in the Middle District of Florida, Case No. 6:17-bk-01329-KSJ (the "Bankruptcy Case");

WHEREAS, on or about March 10, 2017, EA consented to entry of Order for Relief in the Bankruptcy Case;

WHEREAS, on or about May 16, 2017, the Bankruptcy Case was transferred to the Central District of California, Santa Ana Division, before the Honorable Catherine E. Bauer (the "Bankruptcy Court"), and assigned a new case number 8:17-bk-1191-CB;

WHEREAS, on or about June 19, 2017, JFL filed a Proof of Claim in the Bankruptcy Case in the amount of not less than $18,615,886, which included (a) $12,396,633 in unpaid compensation under the JFL Agreement; (b) $1,868,221 in prejudgment, prepetition interest; (c) $500,000 in pre-petition attorneys' fees and costs; and (d) fraud damages and punitive damages in an unliquidated amount but likely in excess of $4,000,000;

137774123.8

2

WHEREAS, on or about June 19, 2017, FRANK, SIMS, STOLPER and FSS also filed Proofs of Claim in the Bankruptcy Case;

WHEREAS, on or about July 12, 2017, JFL filed a motion for relief from stay to proceed with the JFL Arbitration [Bankruptcy Case Docket Nos. 155, *et al.*] ("JFL RFS Motion"), the Debtor and certain other parties filed oppositions to the JFL RFS Motion, JFL filed a reply to those oppositions, a hearing on the JFL RFS Motion commenced on August 9, 2017 and was continued by direction of the Bankruptcy Court until September 20, 2017 and repeated times thereafter through and including December 13, 2017;

WHEREAS, AVENATTI is the managing member and majority equity holder of EA and solely owns and controls A&A;

WHEREAS, JFL, FRANK and SIMS have asserted that AVENATTI is personally liable to them for all or substantially all claims they have against EA and that A&A may be liable to them, all of which Avenatti and A&A dispute;

WHEREAS, it is in the personal, professional and business interests of AVENATTI and the professional and business interests of EA and A&A that the disputes among the JFL Parties and EA Parties be resolved promptly and each has concluded that he/it will received meaningful value if this Agreement is executed, approved and fully satisfied; and

WHEREAS, the Parties desire to resolve any and all disputes between them on the terms set forth herein (the "Settlement");

NOW THEREFORE, for and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Dismissal of Bankruptcy Case.**

    1.1.    Subject to Paragraph 1.5 below, the effectiveness of the terms and obligations of this Agreement are contingent upon (a) EA filing a motion ("Settlement and Dismissal Motion") with the Bankruptcy Court seeking entry of one or more orders (the "Orders") approving the Settlement and authorizing and directing the Debtor to fully comply with all terms of this Agreement pursuant to Fed. R. Bankr. Pro. 9019 ("Settlement Order"), and dismissing the Bankruptcy Case, pursuant to Bankruptcy Code Section 1112(b) ("Dismissal Order"), on terms acceptable to JFL and EA, on or before January 3, 2018,with a hearing on the Settlement and Dismissal Motion to be held on January 24, 2018; (b) entry of the Orders on or before January 31, 2018; (c) the Bankruptcy Case being dismissed within sixteen (16) calendar days after entry of the Dismissal Order; (d) execution of the Guaranty Agreement (as defined below), on or before December 12, 2017; and (e) if a stay of the Settlement Order or Dismissal Order has been entered pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure ("Rule 8007"), a

Termination Notice, as defined in Paragraph 1.5 below, having not been provided by JFL or EA. The proposed Order(s) are attached as Exhibit B.

1.2.    The JFL Parties will not oppose any of the relief sought in the proposed Orders, nor will they encourage others to do so, all subject to the timely satisfaction of the deadlines set forth herein (collectively "Deadlines").

1.3.    In the event the Orders are not entered by the Deadlines for their entry, or the Guaranty Agreement is not executed by the pertinent Deadline for its execution, the Parties shall be returned to the *status quo ante* prior to their execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.

1.4.    The hearing on the JFL RFS Motion shall be continued until January 24, 2018.

1.5.    If a stay of the Settlement Order or Dismissal Order is entered pursuant to Rule 8007 (a "Stay Order") or if the terms of this Agreement are materially modified by the Court, then JFL or EA may elect to withdraw from and terminate this Agreement, in which case this Agreement and all Orders entered thereon will be rescinded and all Parties will be restored to the *status quo ante* prior to the execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.  If JFL or EA elects to exercise this right to terminate this Agreement, it shall provide notice of this election to the other parties to this Agreement, in writing, within five (5) business days after the Stay Order is entered (the "Termination Notice").  Upon such election, the Parties will cooperate in taking any action necessary to request that the appropriate court vacate the Settlement Order, the Dismissal Order and Stay Order, and will not object to or oppose such actions.

1.6.    If a Stay Order is issued and neither JFL or EA elect to terminate the Agreement in accordance with Paragraph 1.5, then the time for performing all obligations under this Agreement will commence upon the later of: (a) sixteen (16) calendar days after the Stay Order is no longer in effect provided that the Settlement Order and Dismissal Order have been affirmed; or (b) the time when the obligation would have otherwise been required to be performed under the terms of this Agreement.

2.    <u>Resolution of EA's Asserted Liens and Right to Attorneys' Fees and Costs in the Matters.</u>

2.1.    Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, EA will withdraw all purported liens asserted in the Matters and will forever waive and forego, with prejudice and finality, any present or future claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or relating to the Matters.

2.2.    Upon the sixteenth (16th) day following the entry of the Settlement Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the EA Parties will be deemed to have released and forever waived and foregone, with prejudice and finality, any present or future claims for damages, legal fees and costs, or other remedies against (a) the JFL Parties, (b) the current, prior or future parties in the Matters; (c) the current, prior or future co-counsel of EA or FSS in the Matters, or (d) any other party or their counsel for claims arising out of or relating to the Matters, as more fully set forth in Section 5 of this Agreement.

2.3.    In exchange for the consideration provided under the terms of this Agreement, JFL has agreed to reduce its claim in the Bankruptcy Case, as set forth in paragraph 3.1, below, and SIMS, FRANK, STOLPER and FSS have agreed to waive, forego and withdraw each of their claims in the Bankruptcy Case, subject to and except for the terms of the Releases provided in Paragraph 5 below and compliance with the terms and conditions of this Agreement.

2.4.    In addition, the JFL Parties have agreed that EA will receive 50% of any and all legal fees which would otherwise be paid to FSS or FRANK in the future in connection with FSS's contingency agreement with AEP in the <u>AEP v. Royal Center Associates, LLC et al.</u> matter. This arrangement will be documented in a separate written agreement between EA, AEP and FSS (the "AEP Fee Sharing Agreement"), the execution of which shall be required for this Agreement to take effect. A copy of the AEP Fee Sharing Agreement is attached as Exhibit C.

3.    **Settlement Payments to JFL.**

3.1.    Upon entry of the Settlement Order, JFL will have an allowed claim against EA in the amount of TEN MILLION DOLLARS ($10,000,000.00), which claim ("JFL Allowed Claim") of JFL and liability of EA will survive dismissal of the Bankruptcy Case, and will not be subject to any further defenses, offsets, counterclaims, oppositions, answers, objections, contests, disputes or other challenges by any EA Party or any other party, provided, however, if (a) the Dismissal Order is not entered, or (b) a Stay Order is entered and a Termination Notice is timely sent, or (c) the Settlement Order is overturned, vacated or remanded on appeal, then the JFL Allowed Claim will be null and void and the proof of claim it filed in the Bankruptcy Case and all the claims, rights, and damages asserted therein and in the JFL Arbitration will remain pending. Nothing in this Paragraph 3.1 is intended to limit the rights of any Parties to enforce the terms of this Agreement.[1]

---

[1] For the avoidance of any doubt, the Parties arrived at the JFL Allowed Claim amount of TEN MILLION DOLLARS ($10,000,000.00) <u>after</u> deducting the credit for fees on the Matters as described in Paragraph 2.3 above and additionally JFL, thereafter, further agreed to reduce its claim to TEN MILLION DOLLARS ($10,000,000.00) as part of this Settlement. In other words, the Allowed Claim of TEN MILLION DOLLARS ($10,000,000.00) will not be further reduced by any credit for fees, costs, expenses, damages or any other compensation allegedly owed on the Matters.

137774123.8                                    5

3.2.    EA will pay JFL the sum of FOUR MILLION EIGHT HUNDRED AND FIFTY
THOUSAND DOLLARS ($4,850,000.00) pursuant to the following schedule:

      3.2.1.    Within sixty (60) calendar days after the entry of the Dismissal Order, and
provided no stay of the Settlement Order or Dismissal Order having been
issued pursuant to Rule 8007 and remains in effect, EA will wire JFL the
sum of TWO MILLION DOLLARS ($2,000,000.00), in immediately
available funds, pursuant to written wire instructions to be provided by
JFL.

      3.2.2.    Within one-hundred and twenty (120) calendar days after the entry of the
Dismissal Order, and provided no stay of the Settlement Order or
Dismissal Order having been issued pursuant to Rule 8007 and remains in
effect, EA will wire JFL the sum of TWO MILLION EIGHT HUNDRED
AND FIFTY THOUSAND DOLLARS ($2,850,000.00), in immediately
available funds, pursuant to written wire instructions to be provided by
JFL.

      3.2.3.    The payments to be made in accordance with Paragraphs 3.2.1 and 3.2.2
are collectively referred to as the "Settlement Payments."

3.3.    In consideration of the terms of this Agreement, including, without limitation, the
Releases set forth herein and the nature and pendency of the disputes between JFL and
the EA Parties, AVENATTI agrees to personally guarantee, in his individual capacity,
the FOUR MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS
($4,850,000.00) of Settlement Payments. The complete terms of this guaranty shall be
set forth in a separate agreement ("Guaranty Agreement") between JFL and AVENATTI.
A copy of the Guaranty Agreement is attached as Exhibit D.

3.4.    As will be set forth in the Guaranty Agreement, it is the intention of JFL and
AVENATTI that AVENATTI's payment obligations under the Guaranty Agreement
shall be non-dischargeable, under 11 U.S.C. Section 523(b) in the event AVENATTI
becomes a debtor in a bankruptcy case while the Settlement Payments remain outstanding
and thereafter to the extent any party in (1) AVENATTI's bankruptcy case or (2) a
subsequent bankruptcy case or similar proceeding in which EA is the debtor or has a
similar role seeks to recover all or any portion of the Settlement Payments.

3.5.    If the Settlement Payments are paid by EA to JFL within the timeframes and in
the manner required by this Agreement, then effective 367 calendar days after the final
Settlement Payment is received by JFL, JFL will waive and forego its right to collect any
part of the remaining FIVE MILLION ONE HUNDRED AND FIFTY THOUSAND
DOLLARS ($5,150,000.00) of its allowed claim.

3.6.    Remedy Upon Payment Default.  If the Settlement Payments are not made within
three (3) business days of the applicable Settlement Payment date due, then all of the EA
Parties agree that they will not oppose the entry by the Bankruptcy Court of a final, non-

137774123.8                                    6

appealable judgment against EA in favor of JFL in the amount of TEN MILLION DOLLARS minus any amounts previously paid to JFL pursuant to this Agreement (the "Final Judgment"), and will not oppose the reopening of the Bankruptcy Case for the limited and sole purpose only of entering this Final Judgment. JFL and the EA Parties expressly consent to the exclusive jurisdiction of the Bankruptcy Court to enter this Final Judgment against EA. By seeking or obtaining any of the relief described in this paragraph, JFL will not in any way waive or otherwise prejudice or impact its right to enforce the personal guarantee and Guaranty Agreement set forth in Paragraphs 3.3 and 3.4 of the Agreement.

4.   **Dismissal of Lawsuits and Arbitrations.**

4.1.   Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the commencing party in each of the following actions shall dismiss the actions and all claims therein with prejudice: (a) the JFL Arbitration and EA's counterclaims therein; and (b) the SIMS Arbitration and EA's counterclaims therein. With respect to the other litigation, EA will not pursue the EA/Birbrower Arbitration, the EA/Callaway Lawsuit, the EA/Root Lawsuit or any claims against AEP. AEP has dismissed, without prejudice, the AEP/EA Arbitration.

5.   **Releases.**

5.1.   **Release of EA Parties by JFL Parties.** Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, JFL, FRANK, SIMS, STOLPER and FSS on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, owners, employees, heirs, parents, children, spouses, and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the EA Parties, and each of them, and every one of their respective partners, officers, directors, owners, agents, employees, companies, parents, subsidiaries, divisions, affiliates, attorneys, trustees, legatee, personal representative, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related parties, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future, including, but not limited to, any and all claims raised in the JFL Arbitration, the Sims Arbitration or the Bankruptcy Case and/or any and all claims arising out of or relating to the JFL Agreement, the Sims Agreement and JFL's, Frank's, Sims' or Stolper's employment at or other rendition of services at EA. However, and notwithstanding any other terms in this Agreement, this release does not include or in any way release or waive claims held by any of the JFL Parties for indemnification, contribution and insurance coverage for any claims brought against them related to their employment at, or rendition of services at,

EXHIBIT G
36

EA, including without limitation indemnification for tax liability that they may have now or in the future against EA. Further, notwithstanding the foregoing or any other terms of this Agreement, the releases set forth in this paragraph shall not operate to release the EA Parties from any of their payment and other covenants, obligations and duties under this Agreement or the Guaranty Agreement, nor will they in any way waive, limit or foreclose any of the JFL Parties from seeking and obtaining any appropriate remedies for any violation of the terms of this Agreement or the Guaranty Agreement.

5.2.  **Release of JFL Parties by the EA Parties.** Effective upon the latest of (a) entry of the Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors, owners, executors, trustees and related parties hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the JFL Parties, and each of them, and every one of their respective partners, officers, directors, owners, agents, employees, companies, subsidiaries, divisions, affiliates, attorneys, trustees, legatee or personal representative, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related organizations, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future. This release includes, but is not limited to any and all claims or counterclaims raised in the JFL Arbitration, the SIMS Arbitration or the Bankruptcy Case and/or any and all claims arising out of or relating to the JFL Agreement, the SIMS Agreement or the Parties employment at EA or other rendition of services at EA, or any and all claims for tortious interference, unfair competition, misappropriation, trade secret, conversion, fraud, breach of fiduciary duty, breach of duty or other such claims against the JFL Parties. Notwithstanding the foregoing, theses releases shall not operate to release the JFL Parties from any of their covenants, obligations and duties under this Agreement or the Guaranty Agreement, nor will they in any way waive, limit or foreclose any of the EA Parties from seeking and obtaining any appropriate remedies or relief for any violation of the terms of this Agreement or the Guaranty Agreement.

5.3.  **Release of Counsel in the Matters by the EA Parties.** Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, each of EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the current, past or future co-counsel, in-house counsel, local counsel or subsequent

137774123.8                    8

counsel for current, past or future clients of FSS in the Matters for any claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or related to the matters listed on Exhibit "A," whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future. The persons and entities covered by this release include, but are not limited to: (a) Franklin D. Azar & Associates, P.C., Franklin D. Azar, Esq. Keith R. Scranton, Esq. and Jonathan Parrott, Esq.; (b) Law Offices of Steven R. Young and Steven R. Young, Esq.; (c) Girardi Keese, LLP and James O'Callahan, Esq.; (d) McNicholas & McNicholas, LLP, Patrick McNicholas, Esq., Matthew McNicholas, Esq., Philip Shakhnis Esq., and Michael J. Kent, Esq.; (e) Yuhl Carr LLP, Eric Yuhl, Esq. and Colin Yuhl Esq.; (f) Snell & Wilmer LLP and Steve T. Graham; (g) Lewis Roca Rothgerber Christie LLP and Dan R. Waite, Esq.; (h) Bridgford Gleason & Artinian, Richard K. Bridgford, Esq. and Michael H. Artinian, Esq.; (i) Orrick, Herrington & Sutcliffe LLP and Jörg Ritter, Esq.; (j) Osborn Machler and Simeon J. Osborn, Esq.; (k) Smyth & Mason PLLC and Jeffrey Smyth Esq. and (l) FSS, FRANK, SIMS and STOLPER as well as their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees and related organizations.

5.4.   **Release of the Clients in the Matters by the EA Parties.** Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, each of EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the clients and class members in the Matters for any claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or related to the Matters whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future. The persons and entities covered by this release include, but are not limited to: (a) Kimberly Birbrower; (b) William (Scott) and Elizabeth Callaway; (c) Authentic Entertainment Properties, LLP, Authentic Entertainment Properties Development, LLP, RCC Company, LLC, Robert Coffman, Robert O'Neil and Steve Graham; (d) Hannes Kuhn; (e) Gary and Louise Weaver; (f) Jeffrey Wall; (g) the Estate of Jonathan A. Spound, Corey Spound, Michael Spound, and Amy Spound; (h) Skylar Ward; (i) Jamie Deehan; (j) Rasheed, Robinson and Jiminez; (k) Shayna Broadstone and Kristine Billon; (l) Benjamin Lagunas, Dianna Mendoza and Susan Jung; and (m) Al Chaffee, Yuping Chen, Jeanne Demund, Laird Devick, Todd Hager, Ash Hanlon, Peter Heathcote, Nathaniel Heathcote, Mike Scheffler, Matthew Wahlman and Michael Wilson, as well as their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, related organizations, heirs, parents, siblings and children.

6.    **Waiver of Civil Code § 1542**. Each of the Parties has read and understood the following language contained in Section 1542 of the California Civil Code:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT

> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OF HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

To the extent that Section 1542 is applicable, each of the Parties hereto expressly waives all rights, if any, that they may have under this statute.

7.   **No Admission of Liability**.  This Agreement is made in settlement of claims and allegations which are denied, disputed, and contested.  Neither this Agreement nor anything contained in this Agreement shall be construed as an admission of any fact, issue, liability, or responsibility by any Party hereto to any other Party hereto, all of which are expressly denied.

8.   **Assignment**.  Each of the Parties represents and warrants that he, she, or it has not assigned or transferred to any person not a Party to this Agreement any part or portion of any matter released under this Agreement, and each Party agrees to defend, indemnify, and hold harmless the other Parties against any claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation or other proceedings are commenced) based on or in connection with, or arising out of any such assignment or transfer made, purported, or claimed. Each of the Parties represents and warrants that he, she, or it will not assign or transfer to any person not a Party to this Agreement any part or portion of any obligations or liabilities created under this Agreement, except that JFL may assign its rights to receive the Settlement Payments to any party, in its sole discretion, and no Party may assign any of its other rights or obligations.  Each Party agrees to defend, indemnify, and hold harmless the other Parties against any claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation or other proceedings are commenced) based on or in connection with, or arising out of any such assignment or transfer made, purported, or claimed in violation of this paragraph.

9.   **Indemnification of Claims Brought by Green Street Advisors, LLC**.  The EA Parties, and each of them, hereby agree they will fully indemnify the JFL Parties and the Estate of Jonathan A. Spound and its Administrators, Corey and Michael Spound, for any and all claims brought by Green Street Advisors, LLC ("Green Street") against them individually or collectively for amounts owed under the Service Engagement Agreement entered into between EA and Green Street in the matter Spound v. SSV Properties *et al.*, dated March 31, 2016, and modified by an Addendum with the same date (the "Green Street Engagement"), including but not limited to providing a defense and paying for all reasonable attorneys' fees, costs and expenses incurred defending against such claims.

10.   **Mutual Non-Defamation**.  Each of the Parties agree that they will not make any defamatory statements about each other to any third party, whether orally or in writing.

137774123.8                                           10

11.  **Changes to FSS Website.**  At the request of EA, FSS has made changes to its website with respect to matters that were previously resolved at EA, and those changes will remain in effect as long as such matters are included on the website.

12.  **EA Cooperation on Fee Applications.**  EA will cooperate with FSS to promptly compile and provide FSS with all time sheets, emails and other records documenting the time spent at EA on the disputed Matters so that FSS may submit such time in support of any necessary fee applications or other motion practice.

13.  **EA Agreement to Automatically Forward Emails.**  EA shall arrange to have all emails sent to the EA email addresses for FRANK, SIMS, STOLPER or Maritza Nowowiejski automatically forwarded to FRANK, SIMS, STOLPER and Maritza Nowowiejski at FSS for a period expiring no earlier than December 31, 2018, and thereafter disable the email addresses.

14.  **EA Agreement to Delete FRANK's Personal Folder.**  EA agrees that FRANK will be provided with access to his personal folder on EA's computer system, and upon request, will permanently delete any such items from EA's system.

15.  **Destruction of Documents and Use in Future Legal Proceedings.**  Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the Parties and each of their respective attorneys, consultants, experts, agents, and representatives and any other person or entity under the direction or control of any of them, and any other person or entity that they caused information to be disseminated to will destroy the original and all copies of the following materials and documents, whether in hard copy or electronic form:

- All discovery, documents, materials, and electronic files received from any Party that were marked confidential.

The Parties shall also jointly request JAMS and its arbitrators to destroy its entire file relating to the JFL arbitration, with the exception of billing information, within 10 days or other reasonable time period proposed by JAMS and agreed to by the Parties, and carry out all reasonable steps to ensure compliance.

Further, to the extent consistent with their professional, ethical and legal obligations, the Parties further agree they will not use the following documents in any subsequent legal proceeding, litigation or arbitration, unless the litigation is between the Parties:

- All discovery responses provided by any Party during the JFL Arbitration;
- All orders entered by any arbitrator during the JFL Arbitration relating to discovery or sanctions;
- All pleadings relating to any motion for sanctions and/or terminating sanctions submitted in connection with the JFL arbitration, including but not limited to all exhibits filed in connection with any such pleading.

137774123.8                                11

16. **Payment, Dismissal and Release Obligations Are Not Excused by Alleged Breaches of this Agreement.** The payment, dismissal and release obligations set forth in this Agreement and the Guaranty Agreement will not be delayed or excused by any alleged breach or violation of Section 7 through 27 of this Agreement. However, any such breaches may be remedied pursuant to the dispute resolution procedures set forth in Paragraph 21 of this Agreement.

17. **Representations and Warranties.** The Parties hereto represent and warrant that each has read and understood and has received independent legal advice with respect to the advisability of making this Agreement, and/or has had the opportunity to obtain such legal advice and has knowingly entered into this Agreement without taking advantage of the opportunity to obtain such advice. Each Party has made such investigation of the facts pertaining to this Agreement and of all other matters pertaining hereto as they deem necessary. The Parties hereto represent and warrant that each signatory hereto has the full right and authority to enter into this Agreement and bind the Party on whose behalf he, she, or it has executed this Agreement.

18. **Further Assurances.** Each Party hereto agrees to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement and which are not inconsistent with its terms and intent.

19. **Headings.** The various headings in this Agreement are inserted for convenience only, and shall not be deemed a part of or in any manner affect this Agreement or any provision hereof.

20. **Governing Law.** This Agreement shall be governed and construed in accordance with the substantive laws of the State of California and the United States Bankruptcy Code. Respective counsel for each Party hereto has participated in the drafting of, read, and approved the language of this Agreement. The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties hereto.

21. **Dispute Resolution Procedure.** Any disputes regarding this Agreement, with the exception of the procedures set forth in Paragraph 3.6 above pertaining to failures to make the Settlement Payments in accordance with the terms of this Agreement, shall be first submitted to the Honorable Louis Meisinger to resolve in mediation, and the cost of the mediation shall be equally borne by the JFL Parties, on the one hand, and the EA Parties, on the other hand. If the Parties are unable to resolve the dispute, then 10 days after the mediation, they will submit the claim to binding arbitration before Benchmark Resolution Group, Inc. (the organization recently formed by Judge Meisinger) in Los Angeles, California to be resolved employing their rules and procedures for arbitration.

22. **Waiver/Severability.** The Parties agree that no waiver by any Party of any particular provision or right under this Agreement shall be deemed to be a waiver of any other

137774123.8                                    12

provision or right herein. The Parties further agree that each provision or term of this Agreement is intended to be severable from the others so that if any particular provision or term hereof is or determined to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the legality or validity of the remaining provisions and terms hereof.

23. **Attorneys' Fees**. The Parties agree that should any relief be brought by any Party to enforce any provision or right under this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and costs incurred therein.

24. **Entire Agreement**. This Agreement constitutes the sole and entire agreement and understanding between the Parties concerning the subject matter hereof and supersedes all prior agreements and understandings between the Parties on those subjects hereto with the exception of (a) the AEP Fee Sharing Agreement and the Guaranty Agreement and (b) the Separation Agreement entered into between EA and STOLPER dated May 23, 2016 (the "STOLPER Separation Agreement"). If there is an inconsistency between this Agreement and the STOLPER Separation Agreement, this Agreement will control. Each of the Parties hereto acknowledge to each of the other Parties that no other Party or any agent or attorney of any Party has made any promise, representation or warranty whatsoever, express or implied, written or oral, not contained herein concerning the subject matter hereof to induce him, her, or it to execute this Agreement, and each of the Parties hereto acknowledges that he, she, or it has not executed this Agreement in reliance on any promise, representation or warranty not expressly contained herein. No person has any authority to make any representation or promise on behalf of any Party that is not set forth herein. This Agreement may be modified only with a written instrument duly executed by each of the Parties hereto.

25. **Binding Agreement**. This Agreement shall bind and shall inure to the benefit of successors and assigns of each Party. With respect to the individual Parties, this Agreement shall also bind and inure to the benefit of his or her heirs, assigns, executors, legatees, administrators and personal representatives. With respect to the entity Parties, this Agreement shall also bind and inure to the benefit of any parent, affiliate, predecessor-in-interest, successor-in-interest, transferee, endorsee, or assign.

26. **Notice Provision**. Any and all notices required by this Agreement shall be mailed and emailed in writing to the following:

26.1. **To the JFL Parties**. To Jason Frank, Scott Sims, & Andrew Stolper, Frank Sims & Stolper LLP, 19800 McArthur Blvd., Suite 855, Irvine, California 92612, jfrank@lawfss.com; ssims@lawfss.com; astolper@lawfss.com

26.2. **To the EA Parties**. To Michael Avenatti & Michael Eagan, Eagan Avenatti, LLP, 520 Newport Center Drive, Ste. 1400, Newport Beach, CA 92660, mavenatti@eaganavenatti.com.

137774123.8                                    13

27. **Execution/Counterparts.** This Agreement may be executed in counterparts, and a facsimile or PDF signature shall have the same force and effect as an original signature penned in ink. When each of the Parties hereto has signed and delivered at least one such counterpart to all other Parties or their counsel, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one fully executed agreement which shall be binding upon and effective as to all Parties.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the day and year indicated below.

December 2, 2017

EAGAN AVENATTI LLP

_____
Michael J. Avenatti
Its Managing Partner

December 2, 2017

AVENATTI & ASSOCIATES, APC

_____
Michael J. Avenatti
Its President

December 2, 2017

MICHAEL J. AVENATTI

_____
Michael J. Avenatti
In his individual capacity

December 12, 2017

MICHAEL Q. EAGAN

_____
Michael Q. Eagan
In his individual capacity

December 2, 2017

JASON FRANK LAW, PLC

_____
Jason M. Frank
Its President

137774123.8                                    14

December 12, 2017                    FRANK SIMS & STOLPER, LLP

                                     _____
                                     Jason M. Frank
                                     Partner

December 12, 2017                    JASON M. FRANK

                                     _____
                                     Jason M. Frank
                                     In his individual capacity

December 12, 2017                    SCOTT H. SIMS

                                     _____
                                     Scott H. Sims
                                     In his individual capacity

December 12, 2017                    ANDREW D. STOLPER

                                     _____
                                     Andrew D. Stolper
                                     In his individual capacity

APPROVED AS TO FORM:

January 30, 2018
December ___, 2017                   PACHULSKI STANG ZIEHL & JONES LLP

                                     _____
                                     Richard M. Pachulski  Robert M. Saunders
                                     Counsel to Eagan Avenatti LLP

December 22, 2017                 PERKINS COIE LLP

                                  _____
                                  Sara L. Chenetz
                                  Counsel to the JFL Parties

December __, 2017                 SULMEYER KUPETZ LLP

                                  _____
                                  Marc Haroupian
                                  Counsel to Michael Avenatti and Avenatti &
                                  Associates APC

137774123.8                              16

December __, 2017                    PERKINS COIE LLP

                                     _____
                                     Sara L. Chenetz
                                     Counsel to the JFL Parties

December __, 2017                    SULMEYER KUPETZ LLP   APC

                                     _____
                                     Marc Haroupian
                                     Counsel to Michael Avenatti and Avenatti &
                                     Associates APC
                                           MARK HOROUPIAN

# EXHIBIT H

1  Sara L. Chenetz, SBN 206936
   SChenetz@perkinscoie.com
2  Amir Gamliel, SBN 268121
   AGamliel@perkinscoie.com
3  Perkins Coie LLP
   1888 Century Park East, Suite 1700
4  Los Angeles, CA  90067-1721
   Tel:  310-788-9900
5  Fax: 310-788-3399

6  Attorneys for Jason Frank Law, PLC

7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11 In re                                    Case No.  8:17-bk-11961-CB

12 EAGAN AVENATTI, LLP,                      Chapter 11

13              Debtor.                      **FINAL JUDGMENT AGAINST EAGAN
                                            AVENATTI, LLP AND IN FAVOR OF**
14                                          **JASON FRANK LAW, PLC, IN THE**
                                            **AMOUNT OF TEN MILLION DOLLARS**
15                                          **AND NO CENTS**

16

17

18        This Court, having entered its Order Granting Motion for Entry of Judgment Against Eagan

19 Avenatti, LLP, and in Favor of Jason Frank Law, PLC in the Amount of Ten Million Dollars and No

20 Cents, on May 22, 2018 as Docket #444,

21        //

22        //

23        //

24

25

26

27

28

                                        -1-

FILED & ENTERED

MAY 22 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall     DEPUTY CLERK

Case 8:17-bk-11961-CB    Doc 445    Filed 05/22/18    Entered 05/22/18 15:58:26    Desc
Main Document    Page 2 of 2

IT IS ORDERED:

(1)    Judgment is issued and entered in the amount of TEN MILLION DOLLARS AND NO

CENTS in favor of Jason Frank Law, PLC, and against Eagan Avenatti, LLP.

(2)    This Judgment is final and not appealable pursuant to Section 3.6 of the Settlement

Agreement.

(3)    In accordance with Section 23 of the Settlement Agreement, Jason Frank Law, PLC

shall be entitled to recover reasonable attorneys' fees and costs incurred in collecting

any and all sums due from Eagan Avenatti, LLP pursuant to the entered judgment.

###

Date: May 22, 2018

Catherine Bauer
United States Bankruptcy Judge

-2-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**LANDAU LAW LLP, 2338 Manning Avenue, Los Angeles, CA 90064.**

A true and correct copy of the foregoing document entitled (*specify*): ***Declaration of Jason M. Frank in Support of Plaintiff Trustee's Opposition to Defendants' Motion For Summary Judgement*** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 11, 2021,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 11, 2021,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
The Honorable Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5130/ Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 11, 2021 | Vanessah Berstecher | /s/ Vanessah Berstecher |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) (CONTINUED)**:

- **Lei Lei Wang Ekvall - DECEASED -** lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Jessica R MacGregor** jmacgregor@longlevit.com, lmyers@longlevit.com
- **Richard A Marshack (TR)** pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Robert S Marticello** Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Jack A. Reitman** jareitman@landaufirm.com, srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com
- **John P. Reitman** jreitman@landaufirm.com, vrichmond@landaufirm.com;avedrova@landaufirm.com;hrichmond@landaufirm.com
- **Monica Rieder** mrieder@landaufirm.com, vrichmond@landaufirm.com;avedrova@landaufirm.com;hrichmond@landaufirm.com
- **Michael Simon** msimon@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

**EXHIBIT 9**

1   Sara L. Chenetz, State Bar No. 206936
    SChenetz@perkinscoie.com
2   Amir Gamliel, State Bar No. 268121
    AGamliel@perkinscoie.com
3   PERKINS COIE LLP
    1888 Century Park East, Suite 1700
4   Los Angeles, CA 90067-1721
    Telephone: 310.788.9900
5   Facsimile: 310.788.3399

6   Attorneys for Jason Frank Law, PLC

7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                    SANTA ANA DIVISION

10

11  In re                          CASE NO.  8:17-bk-11961-CB

12  EAGAN AVENATTI, LLP,           Chapter 11

13            Debtor.              **NOTICE OF MOTION AND MOTION
                                   FOR ENTRY OF JUDGMENT AGAINST
14                                 EAGAN AVENATTI, LLP AND IN FAVOR
                                   OF JASON FRANK LAW, PLC;
15                                 MEMORANDUM OF POINTS AND
                                   AUTHORITIES AND DECLARATION OF
16                                 JASON M. FRANK IN SUPPORT
                                   THEREOF**
17
                                   [Motion for Order Shortening Time Concurrently
18                                 Filed Herewith]

19                                 Honorable Catherine E. Bauer

20

21

22

23

24

25

26

27

28

1399129453                     -1-

1  **TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY**
2  **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND DEBTOR:**

3      **PLEASE TAKE NOTICE** that creditor Jason Frank Law, PLC ("JFL") hereby moves
4  this Court for entry of a final, non-appealable judgment in the amount of TEN MILLION
5  DOLLARS ($10,000,000) ("Final Judgment") in favor of JFL and against Eagan Avenatti,
6  LLP ("EA"), as agreed to under the terms of the JFL Settlement and approved by this Court's
7  March 15, 2018 Dismissal Order (both as defined below).  EA and its affiliates expressly agreed
8  as part of the JFL Settlement that they would not oppose entry by this Court of the Final
9  Judgment in the amount of $10,000,00, in the event EA defaulted on the JFL Settlement's
10 payment terms and failed to cure such default within three business days, which has occurred.

11     **PLEASE TAKE FURTHER NOTICE** that this Motion is supported by the attached
12 Declaration of Jason Frank ("Frank Decl.") and is based on the accompanying Memorandum of
13 Points and Authorities, judicially noticeable facts, all other admissible evidence before this Court,
14 and any arguments of counsel presented.

15     **PLEASE TAKE FURTHER NOTICE** that JFL has requested that this Motion be heard
16 on shortened notice pursuant to Local Bankruptcy Rule 9075-1(b).

17     **WHEREFORE,** JFL respectfully requests this Court enter the Final Judgment.

18 DATED: May 18, 2018                **PERKINS COIE LLP**
19
20                                By: /s/ Sara L. Chenetz
                                    Sara L. Chenetz
21                                Attorneys for Jason Frank Law, PLC

-2-

139912945.3

## I.     INTRODUCTION

On March 15, 2018, this Court entered its *Order Granting Motion Approving Settlement and Dismissing Case and Related Relief* (the "Dismissal Order"). [Doc. No. 412.]  In the Dismissal Order, the Court approved the terms of the December 12, 2017 Settlement Agreement between EA and JFL, among other parties, as a condition to dismissing the case (the "JFL Settlement" or "Settlement"). [*Id.,* ¶ 1].  Specifically, EA agreed to the following remedy upon a payment default under the Settlement:

> If the Settlement Payments are not made within three (3) business days of the applicable Settlement Payment date due, then all of the EA Parties agree that **they will not oppose the entry by the Bankruptcy Court of a final, non-appealable judgment against EA in favor of JFL in the amount of TEN MILLION DOLLARS minus any amounts previously paid to JFL pursuant to this Agreement (the "Final Judgment"), and will not oppose the reopening of the Bankruptcy Case for the limited and sole purpose only of entering this Final Judgment.   JFL and the EA Parties expressly consent to the exclusive jurisdiction of the Bankruptcy Court to enter this Final Judgment against EA.**

[*See* Doc. No. 343, Ex. "A," § 3.6 (emphasis added).][1]

As the terms of Section 3.6 of the JFL Settlement reflect, the entry of the Final Judgment was intended to be a ministerial act.  If a payment default occurs, then this case is to be reopened and the Final Judgment is to be entered by this Court.

Under the terms of the JFL Settlement, EA was required to pay JFL the first Settlement Payment of $2,000,000 within sixty (60) calendar days after entry of the Dismissal Order on March 15, 2018.  [Doc. No. 343, Ex. "A," § 3.2.1.]  Accordingly, the first Settlement Payment was due on Monday, May 14, 2018.  [*Id.*]  Unfortunately, EA did not make the first payment, in whole or in part, and has failed to cure the default within three (3) business days thereafter. [Frank Decl. ¶ 14.]

---

[1] For the Court's convenience, a copy of the JFL Settlement and the Dismissal Order are attached to the Frank Decl. as Exhibits A and B.  All capitalized terms in this Motion unless otherwise defined shall have the same meaning as those in the JFL Settlement.

Therefore, pursuant to the remedy provision set forth in Section 3.6 of the JFL Settlement and the terms of this Court's Dismissal Order, JFL hereby seeks entry of the Final Judgment in favor of JFL and against EA in the amount of $10,000,000.

## II.   STATEMENT OF FACTS

On or about March 1, 2017, a purported creditor of EA filed an involuntary chapter 11 petition against EA in the United States Bankruptcy Court for the Middle District of Florida ("Florida Bankruptcy Court"). [Frank Decl. ¶ 3.]  EA consented to entry of an order for relief, which the Florida Bankruptcy Court entered on March 10, 2017. [*Id.*]  On April 21, 2017, the Florida Bankruptcy Court transferred this case to this Court and various proceedings followed, as reflected on the Court's docket. [*Id.*]

On or about December 12, 2017, EA, Avenatti & Associates, APC, Michael Avenatti, and Michael Eagan (collectively defined in the Settlement as the "EA Parties"), on the one hand, and JFL, Jason Frank, Scott Sims, Andrew Stolper, and Frank Sims & Stolper LLP (collectively defined in the Settlement as the "JFL Parties"), on the other hand (collectively, the "Parties"), entered into the JFL Settlement, subject to the approval of this Court.  The effectiveness of the JFL Settlement was contingent upon this Court's approval of the Settlement's terms and dismissal of EA's bankruptcy case. [Frank Decl. ¶ 4; Doc. 343, Ex. "A", § 1.1.]

Pursuant to Section 3.1 of the Settlement, and as reflected in Paragraph 5 of the Dismissal Order, the Parties agreed that upon this Court's approval of the Settlement, JFL would have an allowed claim against EA in the amount of $10,000,000 (the "JFL Allowed Claim"), and the Dismissal Order allows the JFL claim in the amount of $10,000,000. [Doc. No. 412, ¶ 5.]  The Parties further agreed that the liability of EA on the JFL Allowed Claim "will survive the dismissal of the Bankruptcy and will not be subject to any further defenses, offsets, counterclaims, oppositions, answers, objections, contests, disputes or other challenges by any EA Party or any other party," unless the Dismissal Order was not entered, or it was overturned, vacated or remanded on appeal. [Doc. No. 343, Ex. "A", § 3.1.]  The Dismissal Order was entered on March 15, 2018 and it was never appealed, stayed, overturned or vacated. [Frank Decl. ¶ 5.]

1    Notwithstanding the allowance of JFL's claim in the amount of $10,000,000, JFL agreed it

2    would waive and forgo its right to collect the entire amount of the JFL Allowed Claim of

3    $10,000,000, if, and only if, EA timely paid the following Settlement Payments according to the

4    following schedule:

5    a.    Within sixty (60) calendar days after entry of the Dismissal Order, EA will

6         wire JFL the sum of TWO MILLION DOLLARS ($2,000,000.00), in immediately

7         available funds, pursuant to written wire instructions to be provided by JFL.

8    b.    Within one hundred and twenty (120) calendar days after entry of the

9         Dismissal Order, EA will wire JFL the sum of TWO MILLION EIGHT

10        HUNDRED AND FIFTY THOUSAND DOLLARS ($2,850,000.00), in

11        immediately available funds, pursuant to written wire instructions to be provided

12        by JFL.

13   [Frank Decl. ¶ 6; Doc. No. 343, Ex. "A," §§ 3.2.1-3.2.2, 3.5.]

14        The first Settlement Payment of $2,000,000 was due on May 14, 2018, which was sixty

15   (60) calendar days after the Court's entry of the Dismissal Order on March 15, 2017.  [Frank

16   Decl. ¶ 7.]  On May 7, 2018, JFL sent EA and Mr. Avenatti written wire instructions for the first

17   Settlement Payment.  [Id. ¶ 8.]  Unfortunately, EA did not wire or otherwise pay the first

18   Settlement Payment when it was due on May 14, 2018.  [Id. ¶ 9.]

19        Although not required by the JFL Settlement or otherwise, on May 15, 2018, JFL sent a

20   written notice of default to EA, Mr. Avenatti and their counsels of record in this bankruptcy case,

21   seeking immediate payment of the $2,000,000. [Frank Decl. ¶ 10.]  JFL also demanded payment

22   of this amount from Mr. Avenatti personally pursuant to the Guaranty Agreement he entered into

23   as part of the JFL Settlement.  [Id. ¶ 11; Doc. No. 343, Ex. "A" §§ 3.3.-3.4; Doc. No. 353, Ex.

24   C."[2]]  EA failed to cure this default within three (3) business days, and as of the date of this

25   motion, neither EA nor Mr. Avenatti has paid the first Settlement Payment of $2,000,000.00, in

26   whole or in part.  [Frank Decl. ¶ 12.]

27

28   [2] A copy of the Guaranty Agreement is attached to the Frank Decl. as Exhibit C.

The remedy for a payment default is set forth in Section 3.6 of the JFL Settlement. It provides:

> 3.6 <u>Remedy Upon Payment Default</u>. If the Settlement Payments are not made within three (3) business days of the applicable Settlement Payment date due, then all of the EA Parties agree that they ***will not oppose the entry by the Bankruptcy Court of a final, non-appealable judgment against EA in favor of JFL in the amount of TEN MILLION DOLLARS minus any amounts previously paid to JFL pursuant to this Agreement*** (the "Final Judgment"), and will not oppose the reopening of the Bankruptcy Case for the limited and sole purpose only of entering this Final Judgment. JFL and the EA Parties expressly consent to the exclusive jurisdiction of the Bankruptcy Court to enter this Final Judgment against EA . . .

[Frank Decl ¶ 8; Doc. No. 343, Ex. "A," § 3.6 (emphasis added)].

Accordingly, JFL now seeks entry of the Final Judgment by this Court.

### III.   ARGUMENT

EA expressly consented to the relief requested through this motion and consented to this Court's authority to grant this relief, upon a payment default under the terms of Section 3.6 of the JFL Settlement, quoted above. As described above and in the Frank Decl, such a payment default has occurred. Because applicable rules require the filing of separate motions to reopen a case and to grant of the relief sought through the reopening, JFL has filed a separate motion to reopen this case solely for purposes of entry of the Final Judgment and proceedings thereon.

After dismissal of a case, a bankruptcy court retains jurisdiction to interpret and effectuate its own orders. *Tsaforoff v. Taylor (In re Taylor)*, 884 F.2d 479, 481 (9th Cir. 1989) cited in *Aheong v. Mellon Mortgage Co. (In re Aheong)*, 276 B.A.P. 233 (9th Cir. B.A.P. 2002). Further, the Dismissal Order expressly provides this Court "retains post-dismissal jurisdiction pursuant to L.B.R 1017-2(f)." [Doc. No. 412, ¶ 10.] The grant of the requested relief is consistent with the Court's inherent authority to implement and enforce its own orders. *See Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009) (finding that "the Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders"); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

-6-

139912945.3

1    U.S. 375, 379–80 (1994) (holding that in order for a court to function successfully it must be able

2    to manage its proceedings, vindicate its authority, and effectuate its decrees). The grant of this

3    motion will effectuate the terms of the JFL Settlement approved through entry of the Dismissal

4    Order. Entry of the Final Judgment is consistent with Fed. R. Bankr. Pro. 9021 and Local

5    Bankruptcy Rule 9021-1.

6         As set forth in the JFL Settlement, EA's liability on the JFL Allowed Claim survives

7    "dismissal of the Bankruptcy Case, and will not be subject to any further defenses, offsets,

8    counterclaims, oppositions, answers, objections, contests, disputes or other challenges by any EA

9    Party or any other party (except under specified circumstances which have not and now cannot

10   occur). [Doc. No. 343, Ex. "A," § 3.6.] Entry of the Final Judgment will facilitate JFL's

11   enforcement of the JFL Allowed Claim.

12        As the prior proceedings in this case indicate, the terms of the JFL Settlement were the

13   subject of multiple mediation sessions and months of additional negotiations. The JFL Settlement

14   also was the cornerstone of the structured dismissal of this case sought by EA and approved by

15   this Court. Despite all this, EA blatantly failed to make the initial payment due to JFL under the

16   JFL Settlement on a timely basis. As described, this payment was due on Monday May 14, 2018.

17   [Frank Decl. 9.] EA further failed to cure this default within three (3) business days. [*Id.*] Upon

18   this payment default, under the terms of the JFL Settlement, the EA Parties expressly agreed not

19   to oppose entry by this Court of a final, non-appealable judgment against EA and in favor of JFL

20   in the amount of $10,000,000 and expressly consented to the Court's jurisdiction to enter the

21   Final Judgment. [Doc. No. 343, Ex. "A," § 3.6.] Good cause therefore exists for the Court to

22   enter the Final Judgment.

23

24

25

26

27

28

1

## IV.    CONCLUSION

2          Based on the foregoing, JFL respectfully requests the Court enter the Final Judgment.

3

4    DATED:  May 18, 2018                    **PERKINS COIE LLP**

5                                             By:  /s/ Sara L. Chenetz
                                                    Sara L. Chenetz
6
                                             Attorneys for Jason Frank Law, PLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1888 Century Park East, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document(s) described as

**NOTICE OF MOTION AND MOTION FOR ENTRY OF JUDGMENT AGAINST EAGAN AVENATTI, LLP AND IN FAVOR OF JASON FRANK LAW, PLC; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JASON M. FRANK IN SUPPORT THEREOF**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On May 18, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II.  **SERVED BY U.S. MAIL AND FEDERAL EXPRESS** (indicate method for each person or entity served)**:** On May 18, 2018, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 18, 2018 | Sharon Jones | /s/ Sharon Jones |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

125830-0001/136495809.1

**ATTACHED SERVICE LIST**

<u>VIA ECF</u>

- 
- Sara Chenetz    schenetz@perkinscoie.com, dlax@perkinscoie.com
- Michael J Hauser    michael.hauser@usdoj.gov
- ppenn@sulmeyerlaw.com;
- Mark S Horoupian mhouroupian@sulmeyerlaw.com
- Robert M Saunders    rsaunders@pszjlaw.com, rsaunders@pszjlaw.com
- Najah J Shariff    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**Via Federal Express**

**Debtor:**
Eagan Avenatti LLP
520 Newport Center Drive, #1400
Newport Beach, CA  92660
(via Federal Express only)

Richard M. Pachulski, Esq.
Ira D. Kharasch, Esq.
Robert M. Saunders, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910 / Fax:  (310)  201-0760
Email  rpachulski@pszjlaw.com
          ikharasch@pszjlaw.com
          rsaunders@pszjlaw.com
Attorneys for Debtor and Debtor in Possession

Mark S. Horoupian, Esq.
SulmeyerKupetz
333 S. Hope Street, 35th Floor
Los Angeles, CA  90071
Tel:  (213) 626-2311 / Fax: (213) 629-4520
Email:  mhoroupian@sulmeyerlaw.com
Attorneys for Michael Avenatti

U.S. Trustee
United States Trustee (SA)
411 W. Fourth Street, Suite 7160
Santa Ana, CA  92701
(714) 338-3400

Michael J. Hauser
United States Trustee (SA)
411 W. Fourth Street, Suite 7160
Santa Ana, CA  92701
(714) 338-3421
Email:  michael.hauser@usdoj.gov

125830-0001/136495809.1

Honorable Catherine E. Bauer
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5165 / Courtroom 5D
Santa Ana, CA 92701-4593

-3-

125830-0001/136495809.1

# EXHIBIT 10

1  Sara L. Chenetz, State Bar No. 206936
   SChenetz@perkinscoie.com
2  Amir Gamliel, State Bar No. 268121
   AGamliel@perkinscoie.com
3  PERKINS COIE LLP
   1888 Century Park East, Suite 1700
4  Los Angeles, CA  90067-1721
   Telephone:  310.788.9900
5  Facsimile: 310.788.3399

6  Attorneys for Jason Frank Law, PLC

7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                  SANTA ANA DIVISION

10

11 In re                          CASE NO.  8:17-bk-11961-CB

12 EAGAN AVENATTI, LLP,           Chapter 11

13              Debtor.           **DECLARATION OF JASON M. FRANK IN
14                                SUPPORT OF:**

15                                **(I) MOTION FOR ENTRY OF JUDGMENT
                                  AGAINST EAGAN AVENATTI, LLP AND
16                                IN FAVOR OF JASON FRANK LAW, PLC;
                                  AND**
17
                                  **(II) APPLICATION FOR ORDER
18                                SETTING HEARING ON MOTION ON
                                  SHORTENED NOTICE**
19
                                  [Motion for Order Shortening Time Concurrently
20                                Filed Herewith]

21                                Honorable Catherine E. Bauer

22

23

24

25

26

27

28

      139917798.1                -1-

**DECLARATION OF JASON M. FRANK**

I, Jason M. Frank, declare as follows:

1.    I am an attorney at law duly licensed to practice before all the courts of the State of California. I am further admitted to practice law before all federal district courts in California and the United States Court of Appeal for the Ninth Circuit, among other courts. I have personal knowledge of the facts set forth below, unless stated on information and belief, and if called as a witness, I could and would testify competently thereto.

2.    I have been a member in good standing of the State Bar of California since 1997. I received my J.D. degree from the University of Michigan in 1997, and my B.A. degree from the University of Michigan in 1994. I was formerly a litigation partner at Paul Hastings Janosfky & Walker LLP. From February 2009 through May 20, 2016, I was an attorney at Eagan Avenatti, LLP ("EA"), either as an employee or through a contract between EA and Jason Frank Law, PLC ("JFL"). I am currently a partner and founder of Frank Sims & Stolper LLP. I am also the owner and president of creditor JFL.

3.    On or about March 1, 2017, a purported creditor of EA filed an involuntary chapter 11 petition against EA in the United States Bankruptcy Court for the Middle District of Florida ("Florida Bankruptcy Court"). EA consented to entry of an order for relief, which the Florida Bankruptcy Court entered on March 10, 2017. On April 21, 2017, the Florida Bankruptcy Court transferred this case to this Court and various proceedings followed. The above is reflected on the Court's docket.

4.    On or about December 12, 2017, EA, Avenatti & Associates, APC, Michael Avenatti, and Michael Eagan (collectively defined in the Settlement as the "EA Parties"), on the one hand, and JFL, Jason Frank, Scott Sims, Andrew Stolper, and Frank Sims & Stolper LLP (collectively defined in the Settlement as the "JFL Parties"), on the other hand (collectively, the "Parties"), entered into a Settlement Agreement and Releases (the "JFL Settlement" or "Settlement"). Pursuant to Section 1.1 of the agreement, the effectiveness of the JFL Settlement was contingent upon this Court's approval of the Settlement's terms and dismissal of EA's bankruptcy case. A true and correct copy of the JFL Settlement is attached as Exhibit A.

-2-

1       5.     On March 15, 2018, this Court entered its *Order Granting Motion Approving*

2 *Settlement and Dismissing Case and Related Relief* (the "Dismissal Order"). Notice of the order

3 was provided on March 15, 2018. The Dismissal Order was never appealed, stayed, overturned or

4 vacated. A true and correct copy of the Dismissal Order is attached as Exhibit B.

5       6.     Pursuant to Section 3.1 of the Settlement, and as reflected in Paragraph 5 of the

6 Dismissal Order, the Parties agreed that upon this Court's approval of the Settlement, JFL would

7 have an allowed claim against EA in the amount of $10,000,000 (the "JFL Allowed Claim"). The

8 Parties further agreed that the liability of EA on this allowed claim "will survive the dismissal of

9 the Bankruptcy and will not be subject to any further defenses, offsets, counterclaims,

10 oppositions, answers, objections, contests, disputes or other challenges by any EA Party or any

11 other party," unless the Dismissal Order was not entered, or it was stayed, overturned, vacated or

12 remanded on appeal. As noted in the previous paragraph, the Dismissal Order was entered on

13 March 15, 2018 and it was never appealed, stayed, overturned or vacated as reflected on the

14 Court's docket.

15       7.     Pursuant to Sections 3.2 and 3.5 of the Settlement, JFL agreed that it would waive

16 and forgo its right to collect the entire allowed claim of $10,000,000, if EA timely paid the

17 following Settlement Payments according to the following schedule:

18           a.     Within sixty (60) calendar days after entry of the Dismissal Order, EA will
               wire JFL the sum of TWO MILLION DOLLARS ($2,000,000.00), in
19                immediately available funds, pursuant to written wire instructions to be
               provided by JFL.

20

21           b.     Within one hundred and twenty (120) calendar days after entry of the
               Dismissal Order, EA will wire JFL the sum of TWO MILLION EIGHT
               HUNDRED AND FIFTY THOUSAND DOLLARS ($2,850,000.00), in
22                immediately available funds, pursuant to written wire instructions to be
               provided by JFL.
23

24 The total of amount of these Settlement Payments was $4,850,000.

25       8.     Pursuant to Section 3.3 of the Settlement, Michael Avenatti, in his individual

26 capacity, agreed to personally guarantee the Settlement Payments in the event of default and

27 entered into a Guaranty Agreement to that effect. A true and correct copy of the Guaranty

28 Agreement is attached as Exhibit C.

-3-

9.    The first Settlement Payment of $2,000,000 was due on May 14, 2018, which was sixty (60) calendar days after the Court's entry of the Dismissal Order on March 15, 2017.

10.    On May 7, 2018, on behalf of JFL, I sent written wire instructions for the first Settlement Payment to EA and Michael Avenatti via electronic mail. I also copied EA and Michael Avenatti's counsels of record in the Bankruptcy Case, including Ira Kharasch of Pachulski Stang Ziehl & Jones LLP and Mark Horoupian of Sulmeyer Kupetz LLP. A true and correct copy of that email is attached as Exhibit D, with my bank account and wire information redacted for privacy.

11.    EA did not wire or otherwise pay the first Settlement Payment when it was due on May 14, 2018.

12.    Although not required by the JFL Settlement or otherwise, on May 15, 2018, I sent via U.S. Mail and electronic mail a written notice of default to EA, Michael Avenatti and Michael Eagan, as well as their counsels of record in this bankruptcy case, seeking the immediate payment of the $2,000,000. A true and correct copy of this letter is attached as Exhibit E.

13.    I also sent U.S. Mail and electronic mail a written demand to Michael Avenatti to pay this amount pursuant to the terms of the Guaranty Agreement. A true and correct copy of this letter is attached as Exhibit F.

14.    EA failed to cure its default within three (3) business days, and as of the date of this motion, neither EA nor Michael Avenatti has paid the first Settlement Payment of $2,000,000.00, in whole or in part.

15.    Accordingly, pursuant to Section 3.6 of the Settlement, I am hereby seeking entry of a final, non-appealable judgment for $10,000,000 in favor of JFL and against EA (the "Final Judgment"). The EA Parties expressly agreed they will not oppose entry of the Final Judgment by this Court.

**Information Justifying Setting Hearing on Shortened Notice
pursuant to L.B.R. 9075-1(b)(2)(B):**

16.    EA agreed that if the Settlement Payments (as defined in the JFL Settlement) were not made within three (3) business days of the applicable Settlement Payment date due, then the

-4-
139917798.1

1   EA Parties would not oppose entry of a final, non-appealable judgment against EA and in favor of

2   JFL in the amount of $10,000,000, minus any amounts previously paid to JFL pursuant to the JFL

3   Settlement, and that they will not oppose reopening the bankruptcy case for the limited and sole

4   purpose of entering the Final Judgment. The EA Parties consented to the exclusive jurisdiction of

5   the bankruptcy court to enter the Final Judgment.  Entry of the Final Judgment was intended to be

6   a ministerial act.  If a payment default occurs, then the case is to be reopened and the Final

7   Judgment is to be entered by this Court.  Given that the only defense available to EA would be to

8   prove that the payment was actually made as required by the JFL Settlement, *which did not*

9   *happen,* this motion can and should be resolved on shortened time.

11       I declare under penalty of perjury under the laws of the United States of America that the

12   foregoing this true and correct.  Executed this 18th day of May 2018, in California.

14   JASON M. FRANK

1

# PROOF OF SERVICE OF DOCUMENT

2

3

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1888 Century Park East, Suite 1700, Los Angeles, CA 90067

4

A true and correct copy of the foregoing document(s) described as

5

6

**DECLARATION OF JASON M. FRANK IN SUPPORT OF:  (I) MOTION FOR ENTRY OF JUDGMENT AGAINST EAGAN AVENATTI, LLP AND IN FAVOR OF JASON FRANK LAW, PLC; AND (II) APPLICATION FOR ORDER SETTING HEARING ON MOTION ON SHORTENED NOTICE**

7

8

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

9

10

11

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On May 18, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

12

☒        Service information continued on attached page

13

14

15

16

II. **SERVED BY U.S. MAIL AND FEDERAL EXPRESS** (indicate method for each person or entity served)**:** On May 18, 2018**,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

17

☒        Service information continued on attached page

18

19

20

21

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

22

☐        Service information continued on attached page

23

24

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

25

| May 18, 2018 | Sharon Jones | /s/ Sharon Jones |
|---|---|---|
| Date | Type Name | Signature |

26

27

28

## ATTACHED SERVICE LIST

<u>VIA ECF</u>

-   
- Sara Chenetz    schenetz@perkinscoie.com, dlax@perkinscoie.com
- Michael J Hauser    michael.hauser@usdoj.gov
- ppenn@sulmeyerlaw.com;
- Mark S Horoupian mhouroupian@sulmeyerlaw.com
- Robert M Saunders    rsaunders@pszjlaw.com, rsaunders@pszjlaw.com
- Najah J Shariff    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**Via Federal Express**

**Debtor:**
Eagan Avenatti LLP
520 Newport Center Drive, #1400
Newport Beach, CA  92660
(via Federal Express only)

Richard M. Pachulski, Esq.
Ira D. Kharasch, Esq.
Robert M. Saunders, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910 / Fax:  (310)  201-0760
Email  rpachulski@pszjlaw.com
        ikharasch@pszjlaw.com
        rsaunders@pszjlaw.com
Attorneys for Debtor and Debtor in Possession

Mark S. Horoupian, Esq.
SulmeyerKupetz
333 S. Hope Street, 35th Floor
Los Angeles, CA  90071
Tel:  (213) 626-2311 / Fax: (213) 629-4520
Email:  mhoroupian@sulmeyerlaw.com
Attorneys for Michael Avenatti

U.S. Trustee
United States Trustee (SA)
411 W. Fourth Street, Suite 7160
Santa Ana, CA  92701
(714) 338-3400

Michael J. Hauser
United States Trustee (SA)
411 W. Fourth Street, Suite 7160
Santa Ana, CA  92701
(714) 338-3421
Email:  michael.hauser@usdoj.gov

125830-0001/136495809.1

Case 8:19-ap-00061-CB    Document 109-2    Filed 06/19/23    Page 399 of 490    Page ID #:27887
Case 8:17-bk-11961-CB    Doc 436-1    Filed 05/18/18    Entered 05/18/18 18:00:55    Desc
Affidavit Declaration of Jason M. Frank in Support of (I) Motion for Entry of Ju    Page 8 of 8

1

2    Honorable Catherine E. Bauer
    United States Bankruptcy Court
3    Central District of California
    Ronald Reagan Federal Building and Courthouse
4    411 West Fourth Street, Suite 5165 / Courtroom 5D
    Santa Ana, CA 92701-4593

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

125830-0001/136495809.1

# EXHIBIT 11

1  Sara L. Chenetz, SBN 206936
   SChenetz@perkinscoie.com
2  Amir Gamliel, SBN 268121
   AGamliel@perkinscoie.com
3  Perkins Coie LLP
   1888 Century Park East, Suite 1700
4  Los Angeles, CA 90067-1721
   Tel: 310-788-9900
5  Fax: 310-788-3399

6  Attorneys for Jason Frank Law, PLC

<div style="border:1px solid">
**FILED & ENTERED**

**MAY 22 2018**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK
</div>

7

8                    **CHANGES MADE BY COURT**

       UNITED STATES BANKRUPTCY COURT

9   CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11 | In re                          | Case No. 8:17-bk-11961-CB

12 | EAGAN AVENATTI, LLP,            | Chapter 11

13 |                    Debtor.      | **ORDER GRANTING MOTION FOR**
                                     **ENTRY OF FINAL JUDGMENT AGAINST**
14                                   **EAGAN AVENATTI, LLP AND IN FAVOR**
                                     **OF JASON FRANK LAW, PLC, IN THE**
15                                   **AMOUNT OF TEN MILLION DOLLARS**
                                     **AND NO CENTS**
16
                                     Date:        May 22, 2018
17                                   Time:        10:00 a.m.
                                     Courtroom:   5D
18                                   Address:     411 W. Fourth Street
                                                  Santa Ana, CA 92701
19

20

21         A hearing was held on May 22, 2018, at 10:00 a.m., before the Honorable Catherine E. Bauer,

22 United States Bankruptcy Judge for the Central District of California, in Courtroom 5D located at 411

23 West Fourth St., Santa Ana, CA, on Jason Frank Law, PLC's Motion for Entry of Judgment Against

24 Eagan Avenatti, LLP and in Favor of Jason Frank Law, PLC filed May 18, 2018 as Docket #436

25 ("Motion"). Appearances were made as noted on the record.

26         //

27         //

28         //

                                          -1-

The Court having read and considered the Motion and related pleadings, heard the statements of counsel, noted the lack of opposition and with good cause shown,

IT IS ORDERED:

1.      The Motion is granted.

2.      A judgment will be issued and entered in the amount of TEN MILLION DOLLARS AND NO CENTS on behalf of Jason Frank Law, PLC, and against Eagan Avenatti, LLP.

<div align="center">###</div>

Date: May 22, 2018

Catherine Bauer
United States Bankruptcy Judge

**EXHIBIT 12**



1   BROWNE GEORGE ROSS LLP
    Eric M. George (State Bar No. 166403)
2     egeorge@bgrfirm.com
    Benjamin D. Scheibe (State Bar No. 101327)
3     bscheibe@bgrfirm.com
    2121 Avenue of the Stars, Suite 2400
4   Los Angeles, California 90067
    Telephone: (310) 274-7100
5   Facsimile: (310) 275-5697

6
    Jason Frank Law, PLC
7   1416 3rd Street
    Manhattan Beach, CA 90266
8   Tel.: 310.902.6000
    Email: jasonfranklaw@gmail.com
9

10  Attorneys for Claimant Jason Frank Law PLC

11

12                JUDICIAL ARBITRATION AND MEDIATION SERVICES

13

14

15  Jason Frank Law, PLC,                    Case No. 1220053114

16          Claimant,                        Hon. Judith M. Ryan (Ret.)
                                             Hon. Terry Friedman (Ret.)
17          vs.                              Hon. Steven J. Stone (Ret.)

18  Eagan Avenatti, LLP,                     **AMENDMENT TO DEMAND FOR
                                             ARBITRATION**
19          Respondent.

20                                           Trial Date:  None Set

21

22

23

24

25

26

27

28

    688016 1

                                    EXHIBIT B
                                       10

1        Since the filing for the Demand for Arbitration on or about March 1, 2016, there have been

2  a number of developments that have affected the amount at issue in this lawsuit.  This Amendment

3  hereby provides notice of the Claimant's amended demands:

4        1.    **The 2013 Profit Share Bonus and Required Financial Information:**  On

5  February 15, 2014, pursuant to Section 3(B)(ii) of the Agreement, EA owed JFL 25% of the EA's

6  net profits for the year 2013.  Further, pursuant to Section 5 of the Agreement, EA was required to

7  provide a detailed report showing the attorneys' fees collected in 2013 and the expenses paid in

8  2013, as well as EA's federal tax returns and accompanying K-1's.  In breach of the Agreement,

9  EA has failed to provide the required financial information, so JFL is unable to determine what if

10  any profits were made in 2013.  JFL is seeking this financial information and 25% of any profits

11  earned in 2013 in an amount to be proven at trial.

12        2.    **The 2014 Profit Share Bonus and Required Financial Information:**  On

13  February 15, 2015, EA owed JFL 25% of the EA's net profits for the year 2014.  EA failed to pay

14  this amount and provide the required financial information.  JFL is seeking the required financial

15  information and 25% of the profits earned in 2014 in an amount to be proven at trial.

16        3.    **The 2015 Profit Share Bonus and Required Financial Information:**  On

17  February 15, 2016, EA owed JFL 25% of the EA's net profits for the year 2015.  EA failed to pay

18  this amount and provide the required financial information.  JFL is seeking the required financial

19  information and 25% of the profits earned in 2015 in an amount to be proven at trial.

20        4.    **The Eden Bonus:**  On March 28, 2016, EA agreed that the amount of the Eden

21  Bonus owed to JFL under Section 3(B)(iii) of the Agreement would be **ten percent (10%)** of the

22  net legal fees collected by EA on all Eden related matters.  To date, EA has collected at least

23  **$15,812,281.00** in net attorneys' fees on the Eden related matters.  As such, EA owes JFL at least

24  **$1,581,228.00** for the Eden Bonus.

25        5.    **EA's Partial Satisfaction of Amounts Owed To JFL:**  On or about May 7, 2016,

26  with EA's prior agreement and consent, ███████████████████ paid JFL

27  the amount of **$4,151,009.60** for legal fees owed to EA on a matter originated by JFL.  JFL and

28  EA agreed that this amount of **$4,151,009.60** would be credited to the total amount of money

1 owed by EA to JFL under the Agreement.

2       6.    **JFL's Payment of $683,990.40 to EA:**  On May 10, 2016, JFL paid EA the

3 amount of **$683,990.40** to EA.  JFL paid this amount to EA pursuant to and in reliance on EA's

4 agreement and representation that EA would pay JFL the 10% Eden Bonus and the remaining

5 amounts owed for the 2014 and 2015 Profit Share Bonus on or before the earlier of: (a) EA's

6 receipt of legal fees from a settlement in the matter entitled ███████████████████

7 ███████████  or (b) June 1, 2016.

8       7.    **EA Once Again Fails To Honor Agreement:**  On or about May 18, 2016, EA

9 received approximately **$5,500,000.00** in legal fees in the ████████ matter.  However, EA

10 once again failed to pay JFL the 10% Eden Bonus and the remaining amounts owed to JFL for the

11 2014 and 2015 Profit Share Bonus.

12       8.    **JFL's Resignation From EA**.  On May 20, 2016, JFL resigned from EA with

13 "Good Reason" pursuant to Section 4(B)(ii) of the Agreement, because EA had failed to cure its

14 breaches of the Agreement within 60 days of receiving written notice of said breaches.  JFL had

15 provided EA with written notice of its breaches to EA as early as February 2015, and, of course,

16 provided written notice of such breaches through the filing and service of its Demand for

17 Arbitration on March 1, 2016.

18       9.    **EA's Failure To Pay Origination Fees Owed to JFL for 2016:**  On or before

19 July 1, 2016, EA owed JFL an Origination Bonus for the first half of 2016 in the amount of at

20 least **$1,027,275.24**.  This is based on the fact that EA received a total of at least **$5,136,376.20** in

21 legal fees during the first half of 2016 on matters originated by JFL.

22       10.   **Additional Amounts Owed For Fiscal Year 2016**.  Pursuant to the Agreement, if

23 JFL resigns with "Good Reason" (such as EA's failure to cure its breaches within 60 days of

24 receiving written notice of said breaches), then JFL is still entitled to the full amount of benefits

25 and compensation required under the Agreement until the Agreement expires on December 31,

26 2016.  In other words, if EA breaches the Agreement by not paying JFL what is owed and fails to

27 cure the breach within 60 days after receiving written notice of said breach, then JFL is not

28 required to continue working at the breaching firm in order to collect the remainder of the

6880161

-2-

AMENDMENT TO DEMAND FOR ARBITRATION

JAMS000551-CONFIDENTIAL

compensation owed under the Agreement.  Put another way, EA cannot get out of its entire

compensation obligations by breaching the agreement and failing to cure such breaches.  As a

result, EA owes and will owe JFL the following amounts at the end of 2016:

  a. **Base Salary for May 20, 2016 to the Present:**  As of the end of 2016, EA

    will owe JFL Base Salary for the time period May 20, 2016 through

    December 31, 2016 in the amount of approximately **$185,547.95**.

    [Agreement, § 3(A).]  EA will also owe JFL for the cost of obtaining

    replacement healthcare benefits from July 1, 2016 through December 31,

    2016.

  b. **Origination Bonus for 2016:**  As noted above, EA has failed to pay the

    20% Origination Bonus owed to JFL for the first half of 2016 in the amount

    of at least $1,027,275.24.  EA will also owe JFL a 20% Origination Bonus

    for any legal fees it collects after July 1, 2016 on matters originated by JFL

    in an amount to be determined at trial.  To the extent legal fees have not

    been paid by the time of trial, then JFL will seek a declaration that it is

    entitled to 20% of any post-trial legal fees collected by EA on matters

    originated by JFL.

  c. **Profit Share Bonus for 2016:**  EA will owe JFL the 2016 Profit Share

    Bonus (i.e., 25% for the net profits collected in 2016) on or before February

    15, 2017.  EA had already collected approximately **$12,000,000.00** in

    revenue for 2016 by the time JFL resigned from EA, so the 2016 Profit

    Share Bonus will be substantial.

 11. **EA's Meritless Claim For Quantum Meruit In JFL Originated Matters**.  After

JFL resigned from EA, almost all of JFL's clients subsequently terminated EA.  With respect to

the contingency matters originated by JFL, EA has filed liens for the "reasonable value of its

services" (i.e., quantum meruit) on the theory that EA provided its resources to litigate these

matters prior to termination.  However, EA was wrongfully using the money owed to JFL to pay

for these resources.  Moreover, EA fraudulently induced JFL to stay at EA through repeated false

688016 1

-3-

AMENDMENT TO DEMAND FOR ARBITRATION

JAMS000552-CONFIDENTIAL

1 representations and false promises of payments, thereby unjustly increasing the value of its

2 purported quantum meruit claims through fraud.  Accordingly, JFL is seeking a declaration that

3 any amounts claimed by or paid to EA on such quantum meruit claims belong to JFL.

4      12.    **Pre-Judgment and Post-Judgment Interest:**  JFL will be seeking pre-judgment

5 and post-judgment interest at the statutory rate of 10% per annum.

6      13.    **Attorneys' Fees, Costs and Expenses:**  JFL is further seeking all attorneys' fees

7 and costs incurred in this matter, including but not limited to JFL's advancement of EA's portion

8 of the initial JAMS arbitration fees in the amount of $7,500.00.

9      14.    **Other Relief:**  JFL is further seeking any other relief that the Arbitration Panel

10 deems just and proper.

11

12 DATED:  August 29, 2016              BROWNE GEORGE ROSS LLP

13                                   Eric M. George

                                  Benjamin D. Scheibe

14

15                By   _____

16                      Benjamin D. Scheibe

           Attorneys for Claimant Jason Frank Law PLC

17

18

19

20

21

22

23

24

25

26

27

28

688016 1

AMENDMENT TO DEMAND FOR ARBITRATION

JAMS000553-CONFIDENTIAL

EXHIBIT B
14

1                   **PROOF OF SERVICE**

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3         At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue
4 of the Stars, Suite 2400, Los Angeles, CA 90067.

5         On August 29, 2016, I served true copies of the following document(s) described as **AMENDMENT TO DEMAND FOR ARBITRATION** on the interested parties in this action as
6 follows:

7                   **SEE ATTACHED SERVICE LIST**

8         **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and
9 mailing, following our ordinary business practices. I am readily familiar with Browne George Ross LLP's practice for collecting and processing correspondence for mailing. On the same day
10 that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

11         I declare under penalty of perjury under the laws of the State of California that the
12 foregoing is true and correct.

13         Executed on August 29, 2016, at Los Angeles, California.

14

15 _____

16         Diane Torosyan

17

18

19

20

21

22

23

24

25

26

27

28

688016 1

JAMS000554-CONFIDENTIAL

EXHIBIT B
15



1

2

SERVICE LIST
*Jason Frank Law, PLC vs. Eagan Avenatti, LLP*
**JAMS Ref: 1220053115**

3   Phillip A. Baker, Esq.                    Attorneys for Respondent Eagan Avenatti, LLP
    Baker Keener & Nahra LLP
4   633 W. 5th Street, Suite 5500
    Los Angeles, California 90071-2005
5   Tel.: 213.241.-0900
    Email:  pbaker@bknlawyers.com
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6880161

**EXHIBIT 13**

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  DAVID A. WOOD, #272406
   dwood@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   RICHARD A. MARSHACK

7

8                    UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

10

| 11 | In re | Case No. 8:19-bk-13560-CB |
|----|-------|---------------------------|
| 12 | EAGAN AVENATTI, LLP, | Chapter 7 |
| 13 | Debtor. | TRUSTEE'S MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT WITH JASON FRANK LAW, PLC; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF RICHARD A. MARSHACK IN SUPPORT |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | Date:      February 25, 2020 |
| 18 | | Time:      2:30 p.m. |
| | | Ctrm:      5D |
| 19 | | Location: United States Bankruptcy Court |
| 20 | | Central District of California |
| | | Ronald Reagan Federal Building |
| 21 | | and Courthouse |
| | | 411 West Fourth Street |
| | | Santa Ana, CA 92701-4593 |

22  TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY COURT

23  JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED

24  PARTIES:

25        Richard A. Marshack, Chapter 7 Trustee ("Trustee") for the Estate ("Estate") of Debtor

26  Eagan Avenatti, LLP ("Debtor") respectfully submits this motion to approve a subordination

27  agreement with Jason Frank Law, PLC ("JFL") ("JFL," collectively with Trustee, the "Parties")

28  relating to JFL's secured claim against all of the Debtor's assets.

                                        1
              MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT

# 1.     Summary of Argument

Any claim may be subordinated for purposes of distribution to all or part of any other claims under Section 510. In this case, Jason Frank Law ("JFL") contends that it has a lien against all assets of the bankruptcy estate to secure a claim in excess of $12 million. JFL wants the Trustee to administer the estate's assets and, as such, it has agreed to a voluntary subordination of its secured claim for the benefit of certain administrative and unsecured claims.

Under the terms of the proposed agreement, JFL subordinates it secured claim for the benefit of all compensation awarded to the Trustee and the Trustee's retained attorneys who are actively prosecuting the Estate's claims including the Kellner firm regarding collections of receivables and the Reitman firm regarding fraudulent transfer claims. JFL further subordinates its claim to other allowed administrative claims including Trustee's general counsel and unsecured creditors in the maximum amount of 10% as set forth in more detail below.

Although there is no requirement that a subordination agreement be approved, the 9th Circuit Bankruptcy Appellate Panel in the case of *In re KVN* has held that a carve-out agreement should be approved by the Court. As such, in an abundance of caution and to the extent this Court concludes that the proposed subordination agreement must be approved, the Trustee seeks such approval as being reasonable and beneficial to the Estate. Other than agreeing not to seek any Section 506(c) surcharge, the Trustee has not compromised any claims held by the Estate in entering the agreement.

# 2.     Statement of Relevant Facts

On September 13, 2019, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. On the same day, Richard A. Marshack was appointed as the Chapter 7 trustee of the Estate.

Prior to the commencement of this bankruptcy case, Jason Frank Law, PLC ("JFL") obtained a judgment against the debtor from this Court in the principal amount of $10 million plus "reasonable attorneys' fees and costs incurred in collecting any and all sums due from [the debtor] pursuant to the entered judgment" ("Judgment"). The Trustee understands the Judgment has been

1   accruing interest at the rate prescribed by 28 U.S.C. § 1961 since the date the Judgment was

2   entered on May 22, 2018. The Trustee further understands that JFL asserts a secured claim for

3   these amounts against all of the debtor's assets based on various judgment liens it contends it

4   created outside the preference period. JFL wants the Trustee to collect the receivables. To resolve

5   any claims to surcharge under Section 11 U.S.C. § 506(c), the Trustee and JFL have entered into

6   the agreement attached as Exhibit "1."

7   **3.      Summary of the Proposed Agreement for Partial Subordination**

8           The following is a summary of the substantive terms of the Agreement.[1] Subject to

9   Bankruptcy Court approval, the Parties agree as follows:

    1.      JFL will agree to a <u>limited</u> subordination of its claim and lien under 11 U.S.C. § 510(c), which will be limited to the following amounts:

        a.      Reasonable compensation to the Trustee not to exceed the amounts permitted under 11 U.S.C. § 326(a);

        b.      Legal fees to the Law Offices of Richard Kellner ("Kellner") incurred in connection with the collection of the debtor's receivables (the "Receivables") subject to a cap equal to the *greater* of (a) One Hundred Thousand ($100,000.00) or (b) 3.5% of the first Ten Million Dollars ($10,000,000.00) of Receivables collected and 5% percent of the Receivables collected thereafter;[2]

        c.      In the event JFL has a secured claim on the amounts recovered in any fraudulent transfer and avoidance actions ("Fraudulent Transfer/Avoidance Matters"),[3] then JFL will agree that its secured claim is subordinated to the approved contingency fees owed to Landau Law from the recoveries in the Fraudulent Transfer/Avoidance Matters pursuant to the terms set forth in Exhibit 1 to the Trustee's Application to Employ Landau Law as Special Litigation Counsel, unless otherwise modified by the Court. (Doc. 33.) All other legal fees and expenses owed to Landau Law for work not relating to the Fraudulent Transfer/Avoidance Matters will be considered "Other Allowed Administrative Claims" subject to the limits set forth in ¶ 1(d) below;

        d.      Other Allowed Administrative Claims not to exceed the *lesser of* (a) the actual amounts approved by the Court (not including the

[1] All interested parties are advised to consult the Agreement for all terms and conditions. The statements contained in this Motion are a summary of the material terms and conditions only. The actual language of the agreement shall control.

[2] If for any reason Kellner's employment application is not approved by the Court, then the Parties will discuss whether JFL will agree to a similar subordination with respect to any other counsel retained to collect the debtor's receivables.

[3] The Trustee reserves the Estate's rights to contest whether JFL has a secured claim and the extent of such claim including any lien on the amounts recovered in the Fraudulent Transfer/Avoidance Actions.

3

**MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT**
4829-2959-5315, v. 2/1015-131

amounts set forth in ¶1(a)-(c) above); and (b) 10% of total recoveries otherwise subject to JFL's secured lien; and

e.  To the extent that Other Allowed Administrative Claims are less than 10% of total recoveries otherwise subject to JFL's secured lien, then the difference between such amounts (not to exceed 2.5% of the total recoveries otherwise subject to JFL's secured lien) will be distributed by the Trustee to unsecured creditors. For example, if Other Allowed Administrative Claims are 5% of such total recoveries, then the total subordination will be 7.5% (5% + 2.5%). If the total amount of Other Allowed Administrative Claims exceed 10% of such total recoveries and are therefore capped at such amount, and unsecured creditors will not receive any benefit from the subordination but will still receive distributions if other collections exceed the amount of JFL's claim;

2.  Because JFL's claim is being subordinated (and it is not carving out funds otherwise payable on account of the lien), JFL will remain entitled to collect the remainder of its claim as collections permit. In other words, if sufficient funds are recovered to pay the amounts subordinated in ¶ 1 and JFL's claim in full, then JFL will receive full payment;

a.  If the Trustee recovers funds from assets not subject to JFL's secured lien, then JFL will be entitled to receive 20% of the net proceeds from such recoveries (after payment of administrative claims including any costs of sale) until such time as the amounts subordinated pursuant to ¶ 1 are repaid. JFL will still be entitled to receive its proportionate share of the remaining 80% of such proceeds in accordance with applicable law;

3.  JFL is retaining the full amount of its claim against any co-debtors;

4.  The Trustee agrees JFL's secured claim includes the pre-petition "reasonable attorneys' fees and costs incurred in collecting any and all sums due from [the debtor] pursuant to the entered judgment" as provided for in Paragraph 3 of the Judgment. JFL will also be able to seek contribution for post-petition fees and expenses incurred in assisting the Trustee recover assets pursuant to 11 U.S.C. § 503(b)(3)(D). The Trustee reserves the right to oppose or join in any such request;

5.  The Trustee will obtain JFL's written approval (email is sufficient) prior to agreeing to any settlement or agreement that is less than 75% of the claim value, including but not limited to the Receivables, the Fraudulent Transfer/Avoidance Matters, or any other litigation claims or assets of the debtor. However, in the event JFL does not consent to the settlement or agreement, then the Trustee will retain his right to seek Court approval of the settlement or agreement over JFL's objection, if the Trustee believes it is in the best interest of the Estate;

a.  Additionally, the Trustee will regularly communicate with Jason Frank on issues relating to matters covered or potentially covered by JFL's lien. In furtherance of this goal of cooperation, the Trustee or his counsel will participate in calls or meetings requested by Jason Frank regarding such issues;

6.  In consideration of the foregoing, the Trustee agrees not to seek any surcharge of JFL's collateral under 11 U.S.C. § 506(c); and

7.  This agreement will be subject to court approval on motion after notice and a hearing. Although the Trustee is not compromising any claims held by the

4

estate, agreements such as subordination or carve-out agreements may be subject to Court approval. *See, In re KVN*, 541 B.R. 1 (9th Cir. BAP 2014).

## 4. Legal Authority

### A. The Court May Approve a Settlement of a Pending Controversy

"A carve-out agreement is generally understood to be 'an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out its lien position.'" *In re KVN Corp., Inc*., 514 B.R. 1, 6 (9th Cir. BAP 2014) (citing *Costa v. Robotic Vision Sys., Inc.* (*In re Robotic Vision Sys., Inc*.), 367 B.R. 232, 237 n. 23 (1st Cir. BAP 2007); *In re Besset*, 2012 WL 6554706, at *5 n. 5 (9th Cir. BAP 2012)).

In *In re KVN Corp*., *Inc*., the Bankruptcy Appellate Panel for the Ninth Circuit held that courts should consider the following factors in deciding whether to approve a carve-out agreement between a Chapter 7 trustee and a secured lender: (1) whether the trustee "fulfilled his or her basic duties;" (2) whether there is "a benefit to the estate, i.e., prospects for a meaningful distribution to unsecured creditors;" (3) whether "the terms of the carve-out agreement been fully disclosed to the bankruptcy court." *Id*. at 8. In sum, courts should scrutinize carve-out agreements to ensure that the agreement provides a benefit to unsecured creditors and is not merely an opportunity for the trustee to receive a commission for making a distribution to a secured creditor who could foreclose on the security interest itself. *Id*. at 7.

In this case, the proposed agreement provides for a subordination and not a carve-out. As such, the Trustee does not believe that Court approval may be required. That said, in an abundance of caution and out of respect for this Court, the Trustee files this Motion seeking approval of the agreement.

Because JFL contends that it is a secured creditor with a claim that could equal or exceed $12 million including principal, post-judgment interest, and attorneys' fees, the Trustee justifiably has concerns about being able to employ qualified professionals to represent the Estate if no such professionals could be paid until after the Trustee recovered and paid an alleged $12 million secured claim. Moreover, JFL did not want the Trustee to abandon the assets back to the Debtor given Mr. Avenatti's other pending legal matters. Lastly, the Trustee believes that the potential

1  recoveries in this case could exceed $12 million given the amount of pending claims for attorneys'

2  fees in other litigation matters. If this were to prove to be the case, then the Trustee would not want

3  to have abandoned the assets when their administration could have otherwise produce distributions

4  to general unsecured creditors.

5       After considering all options, the Trustee negotiated the proposed subordination agreement

6  with JFL. The agreement is the product of much back-and-forth and the Trustee believes that it is

7  the best possible agreement that can be reached with JFL. Given that the agreement provides a

8  partial subordination of JFL's secured claim for the benefit of administrative expenses as set forth

9  in the agreement and may also provide the ability for the Trustee to satisfy JFL's claim to

10  maximize the chances that other asset administration could provide some or additional distributions

11  to unsecured creditors, the Trustee believes it is in the best interest of the estate and that it should

12  be approved.

13       If this Court chooses to apply the *KVN* carve-out standards to this subordination agreement,

14  the proposal should be approved. First, the Trustee has fulfilled his basic duties by negotiating an

15  agreement that will result in creditors receiving distributions that would otherwise not be possible

16  until after the Trustee collected approximately $12 million. Second, the Agreement provides a

17  significant benefit to the Estate in that it will allow the Trustee to employ well-regarded counsel to

18  assist in the administration of substantial assets subject to JFL's alleged liens. Third, the Trustee

19  has disclosed the proposed subordination and all terms of the Agreement to the Court and has

20  provided notice to all creditors and parties-in-interest by the filing of this Motion. The Trustee has

21  thus met all of the requirements for approval of the agreement even if the proposed subordination is

22  analyzed as a carve-out.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT
4829-2959-5315, v. 2/1015-131

1    **5.      Conclusion**

2           For the reasons stated above, the Trustee requests that the Motion be granted and that the

3    Court enter an order approving the proposed subordination agreement.

4

5    DATED: February 4, 2020                     MARSHACK HAYS LLP

6

7                                                By: */s/ D. Edward Hays*
                                                    D. EDWARD HAYS
8                                                   DAVID A. WOOD
                                                    General Counsel for Chapter 7 Trustee,
9                                                   RICHARD A. MARSHACK

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT
4829-2959-5315, v. 2/1015-131

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      I am an attorney at law duly admitted to practice before this Court and all courts of the State of California.

3.      I am the Chapter 7 Trustee of the Bankruptcy Estate of Eagan Avenatti, LLP ("Debtor").

4.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

5.      The facts set forth below are true of my personal knowledge.

6.      I reviewed the court's PACER docket for this case prior to execution of this Declaration to refresh my memory as to the dates on which particular documents were filed and confirm no further relevant documents were filed.

7.      I make this declaration in support of the this motion to approve the subordination agreement between the Estate and Jason Frank Law, PLC ("JFL") ("JFL," collectively with Trustee, the "Parties"). A true and correct copy of the Agreement is attached as **Exhibit 1.**

8.      On September 13, 2019, Eagan Avenatti, LLP ("Debtor") filed a voluntary petition under Chapter 7 of Title 11 the United States Code. On the same day, I was appointed as the Chapter 7 trustee of the Estate.

9.      Prior to the commencement of this bankruptcy case, Jason Frank Law, PLC ("JFL") obtained a judgment against the debtor from this Court in the principal amount of $10 million plus "reasonable attorneys' fees and costs incurred in collecting any and all sums due from [the debtor] pursuant to the entered judgment" ("Judgment").

10.     JFL contends that the Judgment has been accruing interest at the rate prescribed by 28 U.S.C. § 1961 since the date the Judgment was entered on May 22, 2018. I further understand

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT
4829-2959-5315, v. 2/1015-131

1   that JFL asserts a secured claim for these amounts against all of the debtor's assets based on

2   various judgment liens it contends it created outside the preference period.

3       11.   JFL wants me to collect the receivables. To resolve any claims to surcharge under

4   Section 11 U.S.C. § 506(c), JFL and I have entered into the agreement attached as Exhibit "1."

5       12.   In this case, the proposed agreement provides for a subordination and not a carve-

6   out. As such, it may be the case that Court approval may not be required. In an abundance of

7   caution and out of respect for this Court, I am filing this Motion seeking approval of the agreement.

8       13.   Because JFL contends that it is a secured creditor with a claim that could equal or

9   exceed $12 million including principal, post-judgment interest, and attorneys' fees, I was

10  concerned about being able to employ qualified professionals to represent the Estate if no such

11  professionals could be paid until after I recovered and paid an alleged $12 million secured claim.

12      14.   Moreover, JFL did not want me to abandon the assets back to the Debtor given Mr.

13  Avenatti's other pending legal matters.

14      15.   Based on schedules, statements, and other documents prepared by the receiver prior

15  to the filing of this bankruptcy case, I believe that it is possible that recoveries in this case could

16  exceed $12 million given the amount of pending claims for attorneys' fees in other litigation

17  matters. If this were to prove to be the case (and I do not yet have sufficient knowledge to know if

18  this is possible), I would not want to have abandoned the assets when their administration could

19  have produced distributions to general unsecured creditors.

20      16.   After considering all options, I negotiated the proposed subordination agreement

21  with JFL. The agreement is the product of much back-and-forth and I believe that it is the best

22  possible agreement that can be reached with JFL.

23      17.   Given that the agreement provides a partial subordination of JFL's secured claim for

24  the benefit of administrative expenses as set forth in the agreement and may also provide the ability

25  for me to satisfy JFL's claim and thereby maximize the chances that other asset administration

26  could provide some or additional distributions to unsecured creditors, I believe it is in the best

27  interest of the estate and that it should be approved.

28

1

2          18.    Except for resolving any potential Section 506(c) claims, the agreement does not

3    release any claims held by the estate and does not constitute a compromise.

4          I declare under penalty of perjury that the foregoing is true and correct. Executed on

5    February 4, 2020.

6                                                    RICHARD A. MARSHACK

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT
4829-2959-5315, v. 1/1015-131

EXHIBIT "1"

## SUBORDINATION AGREEMENT

Richard A. Marshack, in his capacity as Chapter 7 Trustee of the Eagan Avenatti bankruptcy estate ("Trustee"), understands that Jason Frank Law, PLC ("JFL") obtained a judgment against the debtor in the amount of Ten Million Dollars ($10,000,000.00) plus "reasonable attorneys' fees and costs incurred in collecting any and all sums due from [the debtor] pursuant to the entered judgment" ("Judgment"). The Trustee understands the Judgment has been accruing interest at the rate prescribed by 28 U.S.C. § 1961 since the date the Judgment was entered on May 22, 2018. The Trustee further understands that JFL asserts a secured claim for these amounts against all of the debtor's assets. JFL wants the Trustee to collect the receivables. To resolve any claims to surcharge under 11 U.S.C. § 506(c), the Trustee and JFL agree to the following:

The Trustee and JFL agree to the following treatment with regard to JFL's secured claim:

1. JFL will agree to a limited subordination of its claim and lien under 11 U.S.C. § 510(c), which will be limited to the following amounts:
   a. Reasonable compensation to the Trustee not to exceed the amounts permitted under 11 U.S.C. § 326(a);
   b. Legal fees to the Law Offices of Richard Kellner ("Kellner") incurred in connection with the collection of the debtor's receivables (the "Receivables") subject to a cap equal to the *greater* of (a) One Hundred Thousand ($100,000.00) or (b) 3.5% of the first Ten Million Dollars ($10,000,000.00 ) of Receivables collected and 5% percent of the Receivables collected thereafter; [1]
   c. In the event JFL has a secured claim on the amounts recovered in any fraudulent transfer and avoidance actions ("Fraudulent Transfer/Avoidance Matters"),[2] then JFL will agree that its secured claim is subordinated to the approved contingency fees owed to Landau Law from the recoveries in the Fraudulent Transfer/Avoidance Matters pursuant to the terms set forth in Exhibit 1 to the Trustee's Application to Employ Landau Law as Special Litigation Counsel, unless otherwise modified by the Court. (Doc. 33.) All other legal fees and expenses owed to Landau Law for work not relating to the Fraudulent Transfer/Avoidance Matters will be considered "Other Allowed Administrative Claims" subject to the limits set forth in ¶ 1(d) below;
   d. Other Allowed Administrative Claims not to exceed the *lesser of* (a) the actual amounts approved by the Court (not including the amounts set forth in ¶1(a)-(c) above); and (b) 10% of total recoveries otherwise subject to JFL's secured lien; and
   e. To the extent that Other Allowed Administrative Claims are less than 10% of total recoveries otherwise subject to JFL's secured lien, then the difference between such amounts (not to exceed 2.5% of the total recoveries otherwise subject to

---

[1] If for any reason Kellner's employment application is not approved by the Court, then the Parties will discuss whether JFL will agree to a similar subordination with respect to any other counsel retained to collect the debtor's receivables.

[2] The Trustee reserves the Estate's rights to contest whether JFL has a secured claim and the extent of such claim including any lien on the amounts recovered in the Fraudulent Transfer/Avoidance Actions.

> JFL's secured lien) will be distributed by the Trustee to unsecured creditors. For example, if Other Allowed Administrative Claims are 5% of such total recoveries, then the total subordination will be 7.5% (5% + 2.5%). If the total amount of Other Allowed Administrative Claims exceed 10% of such total recoveries and are therefore capped at such amount, then unsecured creditors will not receive any distributions;

2. Because your claim is being subordinated (and you are not carving out funds otherwise payable to you on account of your lien), you will remain entitled to collect the remainder of your claim as collections permit. In other words, if sufficient funds are recovered to pay the amounts subordinated in ¶ 1 and your claim in full, then you will receive full payment;

    a. If the Trustee recovers funds from assets not subject to your secured lien, then you will be entitled to receive 20% of the net proceeds from such recoveries (after payment of administrative claims including any costs of sale) until such time as the amounts subordinated pursuant to ¶ 1 are repaid. JFL will still be entitled to receive its proportionate share of the remaining 80% of such proceeds in accordance with applicable law;

3. You will be able to retain the full amount of your claim against any co-debtors including Mr. Avenatti;

4. The Trustee agrees JFL's secured claim includes the pre-petition "reasonable attorneys' fees and costs incurred in collecting any and all sums due from [the debtor] pursuant to the entered judgment" as provided for in Paragraph 3 of the Judgment. JFL will also be able to seek contribution for post-petition fees and expenses incurred in assisting the Trustee recover assets pursuant to 11 U.S.C. § 503(b)(3)(D). The Trustee reserves the right to oppose or join in any such request;

5. The Trustee will obtain JFL's written approval (email is sufficient) prior to agreeing to any settlement or agreement that is less than 75% of the claim value, including but not limited to the Receivables, the Fraudulent Transfer/Avoidance Matters, or any other litigation claims or assets of the debtor. However, in the event JFL does not consent to the settlement or agreement, then the Trustee will retain his right to seek Court approval of the settlement or agreement over JFL's objection, if the Trustee believes it is in the best interest of the Estate;

    a. Additionally, the Trustee will regularly communicate with Jason Frank on issues relating to matters covered or potentially covered by JFL's lien. In furtherance of this goal of cooperation, the Trustee or his counsel will participate in calls or meetings requested by Jason Frank regarding such issues;

6. In consideration of the foregoing, the Trustee agrees not to seek any surcharge of JFL's collateral under 11 U.S.C. § 506(c); and

///

///

///

///

7. This agreement will be subject to court approval on motion after notice and a hearing. Although the Trustee is not compromising any claims held by the estate, agreements such as subordination or carve-out agreements are subject to Court approval. *See, In re KVN*, 541 B.R. 1 (9th Cir. BAP 2014).

Feb 4
DATED: ~~January 31~~, 2020

By: _____

Richard A. Marshack
Chapter 7 Trustee of the Bankruptcy
Estate of Eagan Avenatti

DATED: January 31, 2020

JASON FRANK LAW, PLC

By: _____
Jason Frank

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **TRUSTEE'S MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT WITH JASON FRANK LAW, PLC; MEMORANDUM OF POINTS AND AUTHROTIEIS; AND DECLARATION OF RICHARD A. MARSHACK IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 4, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **February 4, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

<table>
<tr><td><u>MAIL REDIRECTED TO TRUSTEE 09/23/19</u><br><u>DEBTOR</u><br>Eagan Avenatti, LLP<br><s>20341 SW Birch, Suite 220</s><br><s>Newport Beach, CA 92660-1514</s></td><td><u>INTERESTED PARTY</u><br>Jason Frank<br>Jason Frank Law, PLC<br>19800 MacArthur Blvd., Suite 855<br>Irvine, CA 92612</td></tr>
</table>

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 4, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

<u>VIA PERSONAL DELIVERY</u>
**PRESIDING JUDGE'S COPY**
Bankruptcy Judge Honorable Catherine E. Bauer
U. S. Bankruptcy Court – Central District
411 West Fourth Street, Suite 5165 / Courtroom 5D
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 4, 2020 | Cynthia Bastida | /s/ Cynthia Bastida |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

4839-4029-3043, v. 1

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: (CONTINUED)
- **ATTORNEY FOR INTERESTED PARTY COURTESY NEF:** James C Bastian, Jr jbastian@shbllp.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, 8649808420@filings.docketbird.com
- **ATTORNEY FOR CREDITOR THE X-LAW GROUP, P.C.; CREDITOR ALEXIS GARDNER; AND CREDITOR DAMON ROGERS:** Filippo Marchino fm@xlawx.com, tc@xlawx.com
- **ATTORNEY FOR TRUSTEE RICHARD A. MARSHACK (TR):** Judith E Marshack jmarshack@marshackhays.com, 8649808420@filings.docketbird.com
- **RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com
- **SPECIAL LITIGATION COUNSEL FOR CHAPTER 7 TRUSTEE:** Meghan Canty Murphey MCMurphey@bwslaw.com, lwan@bwslaw.com; JGomez@bwslaw.com
- **ATTORNEY FOR DEFENDANTS AVENATTI & ASSOCIATES APC and MICHAEL AVENATTI:** Ryan D O'Dea rodea@shulmanbastian.com, LGauthier@shulmanbastian.com
- **DEBTOR EAGAN AVENATTI, LLP AND TRUSTEE RICHARD A MARSHACK (TR):** Jack A. Reitman jareitman@lgbfirm.com, srichmond@lgbfirm.com; vrichmond@lgbfirm.com; avedrova@lgbfirm.com
- **ATTORNEY FOR TRUSTEE RICHARD A. MARSHACK (TR):** John P. Reitman jreitman@lgbfirm.com, srichmond@lgbfirm.com; vrichmond@lgbfirm.com
- **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR TRUSTEE RICHARD A. MARSHACK:** David Wood dwood@marshackhays.com, 8649808420@filings.docketbird.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

4839-4029-3043, v. 1

**EXHIBIT 14**

D. Edward Hays, SBN 162507
ehays@marshackhays.com
David A. Wood, SBN 272406
dwood@marshackhays.com
Marshack Hays LLP
870 Roosevelt
Irvine, California 92620
Tel: 949-333-7777
Fax: 949-333-7778

General Counsel for Chapter 7 Trustee,
Richard A. Marshack

FILED & ENTERED

MAR 04 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jle          DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

In re

EAGAN AVENATTI, LLP,

     Debtor.

Case No. 8:19-bk-13560-CB

Chapter 7

ORDER GRANTING TRUSTEE'S MOTION TO APPROVE SUBORDINATION AGREEMENT WITH JASON FRANK LAW, PLC

Hearing
Date:          February 25, 2020
Time:          1:30 p.m.
Courtroom:  5D
Address:      411 W. Fourth Street
                   Santa Ana, CA 92701

A hearing was held on February 25, 2020, at 1:30 p.m., before the Honorable Catherine E. Bauer, United States Bankruptcy Judge for the Central District of California, in Courtroom 5D located at 411 West Fourth St., Santa Ana, CA, on Trustee's Motion to Approve Subordination Agreement with Jason Frank Law, PLC filed February 4, 2010 as Docket #93 ("Motion"). Appearances were made as noted on the record.

//

//

//

1

The Court having read and considered the Motion, heard the statements of counsel, noted the lack of opposition, and for good cause shown,

IT IS ORDERED:

1.    The Motion is granted and the subordination agreement is approved.

2.    Trustee is authorized to take all reasonable actions necessary to effectuate the provisions of the subordination agreement.

<center>###</center>

Date: March 4, 2020

Catherine Bauer
United States Bankruptcy Judge

# EXHIBIT 15

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  TINHO MANG, #322146
   MARSHACK HAYS LLP
3  870 Roosevelt
   Irvine, California 92620
4  Telephone: (949) 333-7777
   Facsimile: (949) 333-7778
5
   General Counsel for Chapter 7 Trustee,
6  RICHARD A. MARSHACK

7                      UNITED STATES BANKRUPTCY COURT

8            CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

9

10
    In re                                  Case No. 8:19-bk-13560-SC
11
    EAGAN AVENATTI, LLP,                    Chapter 7
12
                                            MOTION BY CHAPTER 7 TRUSTEE TO
13                                          APPROVE AMENDMENT TO
                                            SUBORDINATION AGREEMENT RE:
14            Debtor.                       JUDGMENT LIEN HELD BY JASON
                                            FRANK LAW AND TERMS OF
15                                          EMPLOYMENT OF RICHARD L.
                                            KELLNER AS SPECIAL LITIGATION
16                                          COUNSEL; MEMORANDUM OF POINTS
                                            AND AUTHORITIES; DECLARATION
17                                          OF RICHARD A. MARSHACK IN
                                            SUPPORT
18
                                            [NO HEARING REQUIRED PER
19                                          LBR 9013-1(o)]

20  TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

21  THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

22          Richard A. Marshack, in his capacity as Chapter 7 Trustee ("Trustee") of the Bankruptcy

23  Estate ("Estate") of Eagan Avenatti, LLP ("Debtor" or "EA"), respectfully submits this motion

24  ("Motion") for entry of an order approving a one-page amendment to the Court-approved

25  subordination agreement between Trustee and Jason Frank Law, PLC ("JFL"). The modification

26  increases the amount of the subordination for the benefit of Trustee's special litigation counsel,

27  Richard Kellner of Kellner Law Group, PC ("Kellner").

28

                                            1

## 1.    Summary of Argument

A Bankruptcy court may approve a subordination agreement if it is in the best interests of the estate. In this case, virtually all of the estate's assets are subject to a judgment lien held by JFL. To recover assets for the benefit of the estate's unsecured creditors, Trustee negotiated a subordination agreement with JFL which the Court approved. A portion of the subordination was for the benefit of Trustee's special litigation counsel, Richard Kellner of Kellner Law Group, PC. Mr. Kellner initially agreed to cap his fees as part of his employment. Given the unexpected amount of litigation and complexity of issues encountered, Mr. Kellner requested and JFL agreed to remove the cap on his compensation and increase the amount of the subordination of its lien and claim for Mr. Kellner's benefit. Trustee believes that the proposed modification of the subordination agreement already approved by the Court is in the best interest of the estate.

## 2.    Background Facts

On March 1, 2017, an involuntary bankruptcy petition was filed against Debtor by Michael J. Avenatti, Debtor's principal, in the Middle District of Florida, commencing case number 6:17-bk-01329-KSJ. The case was transferred to the Central District of California and assigned case number 8:17-bk-11961-CB ("2017 Bankruptcy").

On March 15, 2018, as Dk. No. 412 in the 2017 Bankruptcy, an order dismissing the 2017 Bankruptcy was entered pursuant to a compromise between various interested parties. The bankruptcy court retained jurisdiction over certain post-dismissal matters.

On May 22, 2018, as Dk. No. 445 in the 2017 Bankruptcy, a final judgment was entered against Debtor and in favor of JFL in the amount of $10,000,000 ("JFL Judgment").

On June 7, 2018, a notice of judgment lien against personal property was filed by JFL against Debtor in the full amount of the JFL Judgment, creating a judgment lien against Debtor's personal property assets.

On June 22, 2018, JFL served Michael Avenatti with an order to appear for examination ("ORAP") in aid of enforcement of the JFL Judgment, creating a lien on all assets of Debtor

MOTION BY CHAPTER 7 TRUSTEE TO APPROVE AMENDMENT TO SUBORDINATION AGREEMENT AND
COMPENSATION FOR SPECIAL COUNSEL

4828-0104-7729, v. 3

1 | pursuant to CCP § 708.110(d).[1]

2 | On September 13, 2019, Debtor was placed into Chapter 7 bankruptcy by its federal court-

3 | appointed receiver, Brian Weiss. Richard A. Marshack was appointed as the Chapter 7 trustee.

4 | On December 19, 2019, JFL filed proof of claim number 14-1, based on the JFL Judgment.

5 | On February 4, 2020, as Dk. No. 91, Trustee filed an application to employ Kellner Law

6 | Group, PC (previously defined as "Kellner") as special collections counsel ("Kellner Employment

7 | Application"). A true and correct copy of the Kellner Employment Application is attached to the

8 | request for judicial notice ("RJN") as Exhibit "2." The Kellner Employment Application sought to

9 | employ counsel pursuant to 11 U.S.C. § 327 with compensation to be determined by the Court under

10 | 11 U.S.C. §§ 330 and 331 and reduced hourly rates and with a cap on total compensation equal to

11 | the greater of KLG's fees will be capped at the greater of (1) 3.5% of the first $10 million of

12 | recovery and 5% thereafter; or (b) $100,000.

13 | Also on February 4, 2020, as Dk. No. 93, Trustee filed a motion to approve a subordination

14 | agreement with JFL ("Subordination Motion"). Attached to the Subordination Motion was an

15 | agreement for partial subordination of JFL's lien ("Agreement"). A true and correct copy of the

16 | Subordination Motion, which appended the mutually executed Agreement, is attached to the RJN as

17 | Exhibit "3." A portion of the subordination specifically included any compensation awarded to

18 | Kellner by the Court subject to the terms of his proposed compensation.

19 | On March 4, 2020, as Dk. No. 107, the Court entered an order granting the Subordination

20 | Motion ("Order Approving Subordination").

21 | Also on March 4, 2020, as Dk. No. 109, the Court entered an order granting the employment

22 | of Kellner as special counsel under 11 U.S.C. § 327 pursuant to the reduced hourly rates and cap on

23 | total compensation ("Kellner Employment Order").

24 |

25 | [1] Under the plain language of CCP § 708.110, an ORAP lien only continues for one year. But, the
Ninth Circuit has held that 11 U.S.C. § 108(c) extends the time for renewing a pre-bankruptcy
26 | judgment lien until 30 days after termination of the automatic stay. See, Daff v. Good (In re
Swintek), 906 F.3d 1100 (9th Cir. 2018) [time to renew ORAP extended until 30 days after stay
27 | terminated]. In this case, the stay has not been terminated with respect to the JFL action.
Additionally, the notice of judgment lien filed with the California Secretary of State continues for a
28 | period of five years.

MOTION BY CHAPTER 7 TRUSTEE TO APPROVE AMENDMENT TO SUBORDINATION AGREEMENT AND
COMPENSATION FOR SPECIAL COUNSEL

4828-0104-7729, v. 3

On May 19, 2020, Trustee (through prior counsel) filed a complaint against The X-Law Group, PC, Filippo Marchino, Elba Hernandez, Young Blue, LLC, and Sandy Le, commencing adversary proceeding number 8:20-ap-01086-CB ("Hernandez Adversary").[2] On September 9, 2020, Kellner replaced John Reitman as Trustee's lead counsel in the Hernandez Adversary.

Substantial motion practice, discovery, appeals, and ancillary litigation have proceeded in the Hernandez Adversary. Based on the extensive litigation and document discovery in the Hernandez Adversary, Kellner requested and JFL agreed to increase the amount of the subordination to provide for additional compensation for work performed for the benefit of the Estate. Trustee agrees that the proposed modification to the previously-approved subordination agreement (attached to the Marshack Declaration as Exhibit "1") is in the best interest of the estate.

On June 8, 2021, as Dk. No. 292, Trustee filed a supplemental declaration for Richard L. Kellner regarding and relating to disclosures and connections with Kabateck LLP.

## 3.    Legal Argument

### A.    The Court may modify the terms of employment of counsel.

"As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001). Because Kellner's employment was not approved under 11 U.S.C. § 328, the proposed modification is not subject to the improvidence standard in Section 328(a).

Here, the Court has the inherent authority to modify the Kellner Employment Order and also to approve amendments to previously-approved subordination agreement. As discussed below, the amendment to the subordination agreement is appropriate and JFL's consent to the voluntary subordination of its claim and lien provides a substantial benefit to the Estate. Moreover, the modification of the Kellner Employment Order[3] is appropriate because the extent of litigation

---

[2] Effective July 31, 2020, the presiding judge retired from the bench and the case was reassigned case number 8:20-ap-01086-SC.
[3] No relief is requested in this Motion under 11 U.S.C. § 328, which provides that modification of compensation "**after** the conclusion of such employment" may be approved in certain circumstances. *See* 11 U.S.C. § 328 (emphasis added); *In re Reimers*, 972 F.2d 1127, 1128 (9th Cir.

MOTION BY CHAPTER 7 TRUSTEE TO APPROVE AMENDMENT TO SUBORDINATION AGREEMENT AND COMPENSATION FOR SPECIAL COUNSEL

4828-0104-7729, v. 3

1 originally contemplated when the Kellner Employment Application was filed was significantly

2 smaller in scope than the litigation that has ensued in the Hernandez Adversary.

3      As stated in the Declaration of Richard L. Kellner below, Kellner now agrees that its

4 compensation shall not exceed and be capped at 40% of the gross recoveries that it obtains. Thus,

5 under the proposed modified terms of employment, Kellner shall be compensated by the greater of

6 $400,000, or at its reduced hourly rates as set forth in the Kellner Employment Application, but also

7 be subject to a cap that Kellner's compensation shall not exceed 40% of gross recoveries in any

8 action on behalf of the Estate to collect Debtor's receivables. In summary, the proposed modification

9 effectively removes one cap (i.e. 3.5% of the first ten million in recoveries) and replaces it with

10 another cap (i.e. not to exceed 40% of gross recoveries). Kellner's employment, however, remains

11 subject to the Court's determination whether to award any fees as being reasonable and beneficial to

12 the estate under Section 330.

### B. The Agreement, as amended, satisfies the *KVN* factors, to the extent that such analysis applies.

15      While the terms of the Agreement expressly provide for a subordination (and not a carve-

16 out), the Agreement nonetheless satisfies the legal test for approval of a carve-out agreement.[4]

17 "Despite the general rule prohibiting the sale of fully encumbered property, chapter 7 trustees may

18 seek to justify the sale through a negotiated carve-out agreement with the secured creditor." *In re*

19 *KVN Corp.*, 514 B.R. 1, 6 (B.A.P. 9th Cir. 2014). In determining whether to approve a sale subject to

20 a carve-out agreement, the trustee must present evidence addressing the following questions:

21   1) "Has the trustee fulfilled his or her basic duties?

22   2) Is there a benefit to the estate; i.e. prospects for a meaningful distribution to unsecured

23     creditors?

24   3) Have the terms of the carve-out agreement been fully disclosed to the bankruptcy court?

---

26 1992). Here, Trustee proactively requests modification of a prior employment order.

27 [4] Lienholders may contractually subordinate any portion of their lien. A subordination agreement is effective as a matter of contract law. *See In re Marks*, 2012 Bankr. LEXIS 5788 at *31 (B.A.P. 9th

28 Cir. 2012); *see also* Cal. Civ. Code § 2934 (recordation of a subordination agreement is optional).

*KVN Corp*, 514 B.R. at 8.

If the answer to these questions demonstrates that the Estate will be benefitted, then the proposed carve-out can be approved. In this case, as set forth below, the Agreement, including the amendment, provides substantial benefits to the Estate.

## i.    Has the Trustee fulfilled his basic duties?

The Trustee has a statutory duty to administer the assets of the estate for the benefit of creditors. 11 U.S.C. § 704(a)(1). As a fiduciary for the Estate, Trustee must seek to maximize returns to creditors through his administration of the Estate. In this case, the Estate's primary assets are its accounts receivable including claims for quantum meruit for services performed by Debtor prior to bankruptcy. To liquidate these claims, the employment of special counsel was necessary and previously approved by the Court. However, subsequent to the execution of the original Agreement, the highly litigious claims in the Hernandez adversary resulted in a need for the subordination in favor of Kellner to be increased.

The original Agreement provided a subordination of JFL's judgment lien for attorneys' fees incurred by Kellner:

- "Legal fees to the Law Offices of Richard Kellner ("Kellner") incurred in connection with the collection of the debtor's receivables (the "Receivables") subject to a cap equal to the *greater* of (a) One Hundred Thousand ($100,000) or (b) 3.5% of the first Ten Million Dollars ($10,000,000.00) of Receivables collected and 5% of the Receivables collected thereafter."

The amendment substitutes the following terms for Kellner:

- The *lesser* of $400,000; or
- Kellner's actual invoiced fees at Kellner's reduced hourly rates for services rendered and approved by the Court.

Kellner may only be paid from actual funds and receivables collected through his efforts. Thus, the amended subordination acts as a modification to Kellner's previous compensation terms.

MOTION BY CHAPTER 7 TRUSTEE TO APPROVE AMENDMENT TO SUBORDINATION AGREEMENT AND COMPENSATION FOR SPECIAL COUNSEL

4828-0104-7729, v. 3

## ii.    Is there a benefit to the Estate?

Here, without the work of special counsel such as Kellner, the Estate would be unable to liquidate its claims against highly litigious defendants (such as those in the Hernandez Adversary). Thus, the Estate receives a clear benefit from the expansion of the Agreement to increase the subordination to Kellner, at the sole expense of JFL. Unsecured creditors of the Estate will not receive anything less than what was previously approved by the Court pursuant to the initial subordination agreement. No other provision of the Agreement is being modified by the proposed amendment.

## iii.    Have the terms of the agreement been fully disclosed to the Court?

The original agreement between the Trustee and JFL is appended to Exhibit "3" to the RJN, and the proposed amendment is attached to the Marshack Declaration as Exhibit "1." Thus, the written terms of the agreement are being fully disclosed to the Court and to interested parties who may examine the terms and object if they deem necessary.

## 4.    Conclusion

The Trustee requests that the Court find good cause and enter an order superseding and modifying the Kellner Employment Order with the revised compensation terms as follows:

- Kellner shall be compensated the *lesser* of: (a) $400,000; or (b) Kellner's actual invoiced fees at Kellner's reduced hourly rate of $825 per hour for services incurred in connection with collecting Debtor's receivables;

- Kellner shall also be subject to a cap that it shall not receive compensation in excess of 40% of gross recoveries.

Kellner's employment remains subject to 11 U.S.C. §§ 327, 330, and 331. As such, the Court will ultimately determine the amount of compensation that is reasonable and which benefitted the estate.

/ / /

/ / /

MOTION BY CHAPTER 7 TRUSTEE TO APPROVE AMENDMENT TO SUBORDINATION AGREEMENT AND COMPENSATION FOR SPECIAL COUNSEL

4828-0104-7729, v. 3

1        Trustee also requests that the Court approve the one-page amendment to the Agreement

2  which provides that JFL's judgment lien shall be further subordinated to payment of Kellner's

3  Court-approved compensation as set forth above.

4

  DATED: December 21, 2021              MARSHACK HAYS LLP

5

6

                         By:   */s/ D. Edward Hays*

7                              D. EDWARD HAYS

                              TINHO MANG

8                              Attorneys for Chapter 7 Trustee

                              RICHARD A. MARSHACK

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION BY CHAPTER 7 TRUSTEE TO APPROVE AMENDMENT TO SUBORDINATION AGREEMENT AND
COMPENSATION FOR SPECIAL COUNSEL

4828-0104-7729, v. 3

# Declaration of Richard L. Kellner

I, RICHARD L. KELLNER, say and declare as follows:

1.    I am an individual over 18 years of age and competent to make this Declaration.

2.    I am the founder of Kellner Law Group PC ("Firm") and maintain offices at 1180 S. Beverly Drive, Suite 610, Los Angeles, CA 90035.

3.    I make this Declaration in support of the Motion by Chapter 7 Trustee to Modify Terms of Employment of Kellner Law Group Pc as Special Collections Counsel filed by Richard A. Marshack, in his capacity as Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of Eagan Avenatti, LLP ("Debtor"), Case No. 8:19-bk-13560-SC.

4.    If called as a witness, I could and would competently testify to the following of my own personal knowledge. Capitalized terms not otherwise defined herein are used as they are defined in the Motion.

5.    I have been serving as the Trustee's special counsel in connection with the Hernandez Adversary, case number 8:20-ap-01086-SC. The case has been highly litigious and I am in the middle of conducting extensive discovery which includes reviewing documents and conducting depositions, in addition to various other disputes and appeals. Accordingly, I requested that the previously-approved terms of my employment be expanded such that the Firm should be entitled to receive compensation equal to the greater of (a) $400,000 or (b) the Firm's actual invoiced fee at my reduced hourly rate of $825/hour for services in connection with collecting receivables.

6.    I agree on behalf of the Firm that the Firm's compensation will be further subject to a cap equal to 40% of the gross receivables collected. Based on my experience in contingency representation, 40% represents a typical and customary rate for high-risk contingency representation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December _2_, 2021.

_____
RICHARD L. KELLNER

MOTION BY CHAPTER 7 TRUSTEE TO APPROVE AMENDMENT TO SUBORDINATION AGREEMENT AND COMPENSATION FOR SPECIAL COUNSEL

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, say and declare as follows:

1.     I am an individual over 18 years of age and competent to make this Declaration.

2.     I am the Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of Eagan Avenatti, LLP ("Debtor"), Case No. 8:19-bk-13560-SC.

3.     If called as a witness, I could and would competently testify to the following of my own personal knowledge. Capitalized terms not otherwise defined herein are used as they are defined in the Motion.

4.     A true and correct copy of the executed amendment to the subordination agreement between myself on behalf of the Estate and Jason Frank Law, PLC ("JFL") is attached as Exhibit "1."

5.     I believe there is good cause to modify the compensation stated in the original employment application for Kellner Law Group, PC ("Kellner"), consistent with the amendment to the subordination agreement.

6.     To ensure that the Estate receives a benefit from the collection efforts by Kellner, the Firm's compensation should be further subject to a cap equal to 40% of gross receivables collected. Based on my experience, 40% represents a typical and customary rate for high-risk contingency representation.

7.     Because the amount of benefit to unsecured creditors pursuant to the previously-approved subordination agreement is not changing and any additional compensation is being paid entirely from the increased amount of the subordination by JFL, I believe that the proposed modification is in the best interest of the estate and fairly compensates counsel for the amount of litigation that has arisen in the course of his representation of the estate.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December _20_, 2021.

_____
RICHARD A. MARSHACK

MOTION BY CHAPTER 7 TRUSTEE TO APPROVE AMENDMENT TO SUBORDINATION AGREEMENT AND COMPENSATION FOR SPECIAL COUNSEL

4828-0104-7729, v. 3

# Request for Judicial Notice

Richard A. Marshack, the duly appointed Chapter 7 Trustee for the bankruptcy estate of

Eagan Avenatti LLP, through his attorneys, Marshack Hays LLP, hereby requests pursuant to

Federal Rule of Evidence 201, that this Court take judicial notice of the following documents to be

considered in connection with the motion ("Motion") for entry of an order approving a one-page

amendment to the Court-approved subordination agreement between Trustee and Jason Frank Law,

PLC.:

| NO. | JUDICIALLY NOTICED DOCUMENT |
|---|---|
| 1 | A true and correct copy of the Kellner Employment Application is attached as Exhibit "2." |
| 2 | A true and correct copy of the Subordination Motion is attached as Exhibit "3." |

DATED: December 20, 2021                MARSHACK HAYS LLP

By:  */s/ D. Edward Hays*
       D. EDWARD HAYS
       TINHO MANG
       Attorneys for Chapter 7 Trustee
       RICHARD A. MARSHACK

MOTION BY CHAPTER 7 TRUSTEE TO APPROVE AMENDMENT TO SUBORDINATION AGREEMENT AND COMPENSATION FOR SPECIAL COUNSEL

4828-0104-7729, v. 3

# EXHIBIT "1"

## FIRST Amendment to Subordination Agreement

On February 4, 2020, a subordination agreement was entered in to between Richard A. Marshack, solely in his capacity as Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Eagan Avenatti, LLP ("Debtor"), case number 8:19-bk-13560-SC ("Bankruptcy Case"), on the one hand, and Jason Frank Law, PLC ("JFL"), on the other hand. Together, Trustee and JFL shall be referred to as the "Parties."

On March 4, 2020, as Docket No. 107 in the Bankruptcy Case, the Court entered an order approving the subordination agreement in its entirety.

On May 19, 2020, Trustee (through his special counsel Richard L. Kellner) filed a complaint against The X-Law Group, P.C., Filippo Marchino, *et al.*, initiating adversary proceeding number 8:20-ap-01086-SC ("Adversary").

### Agreement to Amendment

1.1. Amendment. By executing this amendment, the Parties intend to amend the subordination agreement. Specifically, the subordination agreement shall be amended by striking paragraph 1, subparagraph (b) in its entirety and replacing such paragraph as follows:

b. Legal fees to the Kellner Law Group PC ("Kellner") incurred in connection with the collection of the debtor's receivables (the "Receivables") subject to a cap equal to the *lesser* of (a) Four Hundred Thousand Dollars ($400,000.00); or (b) Kellner's actual invoiced fees at Kellner's typical hourly rate for services incurred in connection with collecting the Receivables. JFL retains the right to review the invoices for Kellner's services for reasonableness.

1.2. Sole Amendment. Except as specifically set forth above, all other provisions of the subordination agreement remain in full force and effect.

### Miscellaneous Provisions

2.1. Court approval required. The Parties understand that this Amendment shall not be effective unless the Court enters an order approving this Amendment. Trustee shall file a motion seeking approval of this amendment and, if the Court enters an order denying such motion, this Amendment shall be null and void.

2.2. Counterparts. This Amendment may be signed in counterparts.

Dated: October ___, 2021          By: _____
                                  RICHARD A. MARSHACK, solely in his
                                  capacity as Chapter 7 Trustee for EAGAN
                                  AVENATTI, LLP

Dated: October 14, 2021           JASON FRANK LAW, PLC

                                  By: _____
                                      JASON FRANK

# EXHIBIT "2"

1   D. EDWARD HAYS, SBN 162507
    ehays@marshackhays.com
2   DAVID A. WOOD, SBN 272406
    dwood@marshackhays.com
3   MARSHACK HAYS LLP
    870 Roosevelt
4   Irvine, California 92620
    Telephone: (949) 333-7777
5   Facsimile: (949) 333-7778

6   General Counsel for Chapter 7 Trustee,
    RICHARD A. MARSHACK
7

8               UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11  In re                                  Case No. 8:19-bk-13560-CB

12  EAGAN AVENATTI, LLP,                    Chapter 7

13                                          APPLICATION BY CHAPTER 7
                                            TRUSTEE TO KELLNER LAW GROUP
14                                          PC AS SPECIAL COLLECTIONS
           Debtor.                          COUNSEL; DECLARATION OF
15                                          RICHARD L. KELLNER IN SUPPORT

16                                          Hearing:
                                            Date:   February 25, 2020
17                                          Time:   2:30 p.m.
                                            Courtroom: 5D
18                                          Address: 411 W. Fourth Street
                                            Santa Ana, CA 92701
19

20  TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY COURT

21  JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED

22  PARTIES:

23          Richard A. Marshack, in his capacity as Chapter 7 Trustee ("Trustee") of the Bankruptcy

24  Estate (the "Estate") of Eagan Avenatti, LLP ("Debtor" or "EA"), respectfully submits this

25  application ("Application") for entry of an order authorizing the employment of Kellner Law Group,

26  PC as Special Collections Counsel for the Estate ("Firm" or "KLG"), effective as of February 4,

27  2020, with respect to monitoring and recovering the fees owed to Debtor in various pending legal

28  matters ("Litigation Fees"). The Trustee also desires to retain the Firm to further investigate, and as

                                            1
                    TRUSTEE'S APPLICATION TO KELLNER LAW GROUP PC

1  appropriate, prosecute the recovery of fees owed to the Debtor as well as defend litigation or other

2  claims against the Estate that may arise in the course of pursuing the Litigation Fees, pursuant to 11

3  U.S.C. § 327. In support of this Application, the Trustee respectfully represents as follows:

4  **A.    Statement of Facts**

5  **1.   General Background information for the Debtor**

6         The Debtor was a California-based litigation law firm formed in the mid-2000s. At any given

7  time, the Debtor employed between seven to nine attorneys, and primarily handled plaintiff

8  contingency matters, whereby the firm only received legal fees after a case was resolved in favor of

9  the Debtor's client.

10        By not later than some time in 2012, Michael Avenatti ("Mr. Avenatti") assumed control

11 over the management of the Debtor.  By 2013 and at all relevant times thereafter, Mr. Avenatti was

12 the Debtor's managing partner and owned at least 75% of the Debtor directly or indirectly through

13 his personal corporation, Avenatti & Associates, APC ("AA"). As the Debtor's managing partner,

14 Mr. Avenatti at all relevant times had access to and control over its business and financial records

15 (including its banking records).

16        **2.   Debtor's prior Chapter 11 Bankruptcy Case**

17        On March 10, 2017, Mr. Avenatti consented to the Debtor's voluntary chapter 11 bankruptcy

18 (after it has been placed into an involuntary bankruptcy in the Middle District of Florida on March 1,

19 2017 by a single creditor). The bankruptcy case was transferred to the Honorable Catherine E. Bauer

20 in the Central District of California on May 16, 2017 (*In re Eagan Avenatti, LLP*, Case No. 8:17-bk-

21 11961-CB).

22        The Debtor's chapter 11 bankruptcy was later dismissed on March 15, 2018, as part of a

23 structured settlement approved by this Court.  That structured settlement ("Settlement") required the

24 Debtor, following the dismissal of the bankruptcy, to pay certain debts it owed to creditors, including

25 the Internal Revenue Service ("IRS"), Jason Frank Law, APC ("JFL") and various other creditors.

26 The Debtor did not make the payment owed to JFL and, on May 22, 2018, this Court entered a

27 judgment in favor of JFL and against the Debtor in the approximate amount of $10 million ("JFL

28 Judgment"). JFL has created judgment liens and contends that it has unavoidable judgment liens

4828-0104-7729, v. 3

1   against all assets of the estate.

2           **3.  Appointment of Brian Weiss as Receiver**

3         On August 31, 2018, the JFL Judgment was registered before the United States District Court

4   for the Central District of California and was assigned for all post-judgment matters to Chief Judge

5   Virginia A. Phillips [*In re Eagan Avenatti*, 8:18-cv-01644-VAP-KES].

6         JFL subsequently moved in the District Court for the appointment of an independent

7   receiver.  On February 13, 2019, Mr. Avenatti stipulated to the appointment of Mr. Brian Weiss, a

8   partner at Force 10 Partners ("Receiver"), as the receiver for the Debtor. The District Court then

9   entered a Receivership and Restraining Order ("Receivership Order") against the Debtor and Mr.

10  Avenatti.

11          **4.  Procedural Background**

12        Since February of 2019, multiple parties have commenced lawsuits against the Debtor.

13  Because the Debtor's receivership estate lacked sufficient funds to defend these lawsuits, and in

14  effort to establish an efficient procedure for administering claims against the Debtor the Receiver

15  determined that it was in the best interests of the Debtor and its creditors to commence a chapter 7

16  bankruptcy case for the Debtor.

17        On September 13, 2019, Debtor filed a voluntary petition under Chapter 7 of Title 11 the

18  United States Code. On the same day, Richard A. Marshack was appointed as the Chapter 7 trustee

19  of the Estate.

20        The Trustee seeks entry of an order authorizing him to retain KLG as Special Collections

21  Counsel to assist the Trustee with respect to monitoring and recovering the Litigation Fees owed to

22  Debtor in the various ongoing legal matters in which Debtor may be entitled to fees. The Trustee

23  also desires to retain the Firm pursuant to 11 U.S.C. § 327 to further investigate, and as appropriate,

24  prosecute the recovery of the Litigation Fees owed to the Debtor as well as defend against litigation

25  or other claims against the Estate that may arise in the course of pursuing the Litigation Fees.

26  B.    **Necessity of Special Counsel**

27        "The trustee, with the court's approval, may employ, for a specified special purpose, other

28  than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in

4828-0104-7729, v. 3

1  the best interest of the estate, and if such attorney does not represent or hold any interest adverse to

2  the debtor or the estate with respect to the matter on which such attorney is to be employed." 11

3  U.S.C. § 327(e). "[S]pecial counsel is appropriate when an attorney is employed to handle a specific

4  legal action that is unrelated to the reorganization and the attorney is particularly suited for that

5  action." *In re Goldstein*, 383 B.R. 496, 501 (Bankr. C.D. Cal. 2007).

6        In order to pursue the Estate's interests in the Litigation Fees generated by Debtor in the

7  various litigation matters, the Trustee requires the assistance of special counsel as follows:

8        (1) The Firm will represent and advise the Trustee on any matter relating to the collection of

9  the Litigation Fees, including any Litigation Fees owed pursuant to Debtor's retainer agreements, as

10  well as collection of fees owed as a result of fee sharing agreements ("Collection Matters").

11        (2) The Firm may need to represent and advise the Trustee on any matter relating to the

12  collection of the Collection Matters.

13        (3) At the request of the Trustee, the Firm may also need to represent and advise the Trustee

14  on any matter relating to the litigation of the Collection Matters as well as the enforcement of

15  judgments awarded in Debtor's favor, and as necessary, to defend against claims or litigation against

16  the Estate that may arise in the course of pursuing fees that are property of the Estate (together with

17  the Collection Matters, "Scope of Work").

18        The Firm will provide general consulting services as needed to assist the Trustee in

19  maximizing the recovery of Debtor's assets. Specifically, the Firm is needed to monitor and pursue

20  the collection of assets owed to the Debtor pursuant to fee agreements or awards in the various

21  ongoing legal matters in which the Debtor may be entitled to fees. Accordingly, the Firm, at the

22  Trustee's request, may need to appear in, prosecute, or defend matters, suits, counterclaims, or

23  proceedings, if any, when they arise, and to take all necessary and proper steps in related matters

24  involving federal and/or state law, or connected with the affairs of the Estate, as needed, with respect

25  to the Scope of Work.

26        The Firm is particularly suited to pursue the Collection Matters on behalf of the Estate. The

27  principal of the Firm (Richard Kellner) is a highly respected litigator who has particular knowledge

28  and experience in the litigation matters upon which the Litigation Fees are being sought on behalf of

TRUSTEE'S APPLICATION TO KELLNER LAW GROUP PC

4828-0104-7729, v. 3

EXHIBIT "2"
PAGE 16

1 the Estate. Mr. Kellner has been lead counsel or co-lead counsel on some of the largest consumer

2 class actions in the United States and is highly respected amongst his peers. In addition to serving as

3 a Trustee for the Los Angeles County Bar Association, Mr. Kellner has served numerous terms as

4 the Chair of the Complex Courts committee for the Litigation Section of the Los Angeles County

5 Bar Association. Mr. Kellner has tried over 30 cases to verdict and handled over 130 appeals in

6 Federal and State Courts. Importantly, Mr. Kellner is admitted to practice law not only in California,

7 but also in Florida, Pennsylvania, Nevada, and New York.

8   The Firm has intimate knowledge of the factual background of many of the ongoing litigation

9 matters in which Debtor is entitled to fees, including a class action judgment presently on appeal in

10 which the Debtor is entitled to substantial attorney fees in excess of $10 million. Likewise, the Firm

11 is well qualified to pursue the enforcement of judgments awarded in Debtor's favor, and as

12 necessary, to defend against claims or litigation against the Estate that may arise in the course of

13 pursuing collection of property of the Estate.

14 **C.**  **Scope of KLG'S Proposed Employment**

15   The Trustee seeks to retain KLG as special litigation counsel for the Estate to represent and

16 advise the Trustee on any matter relating to collection of the Litigation Fees pursuant to Debtor's

17 retainer and fee sharing agreements. At the request of the Trustee, the Firm may also need to

18 represent and advise the Trustee on any matter relating to the litigation of the Collection Matters as

19 well as the enforcement of judgments awarded in Debtor's favor, and as appropriate, to defend

20 against claims or litigation against the Estate that may arise in the course of pursuing fees that are

21 property of the Estate. The Trustee believes that KLG is uniquely positioned and well-qualified to

22 provide these services.

23   Specifically, the Trustee requires the assistance of KLG to, among other things, investigate,

24 analyze, and advise him on any matter relating to the collection of the Collection Matters, including

25 enforcement of judgments in the Debtor's favor.

26   The Firm may also be required to assist the Trustee in the following matters:

27    a.  Monitor and pursue the collection of assets owed to the Debtor pursuant to fee

28 agreements or awards in the various ongoing legal matters in which the Debtor may be entitled to

1 | fees and costs;

2 |         b.    Appear in, prosecute, or defend matters, suits, counterclaims, or proceedings,

3 | if any, when they arise; and

4 |         c.    Take all necessary and proper steps in related matters involving federal and/or

5 | state law, or connected with the affairs of the Estate, as needed, with respect to the Scope of Work.

6 | **D.    Requirements for Application to Employ Professional**

7 |         Pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Local

8 | Bankruptcy Rule 2014-1 ("LBR"), here follows a summary of the proposed employment of the Firm.

9 | Should any additional information be requested by the Office of the United States Trustee, the Court,

10 | or any party in interest, the Firm will provide a supplemental declaration prior to any hearing on this

11 | Application.

12 |         **1.    LBR 2014-1(b)(1)(A) and LBR 2014-1(b)(3)(B) Employment and Compensation**

13 |         Pursuant to LBR 2014-1(b)(1)(A), "[a]n application seeking approval of employment of a

14 | professional person pursuant to 11 U.S.C. §§ 327, 328, 1103(a), or 1114 must comply with the

15 | requirements of FRBP 2014 and 6003(a) and be filed with the court. The notice and application must

16 | specify unambiguously whether the professional seeks compensation pursuant to 11 U.S.C. § 328 or

17 | 11 U.S.C. § 330."

18 |         The Trustee seeks employment of the Firm pursuant to 11 U.S.C. § 327. The Firm will seek

19 | compensation pursuant to 11 U.S.C. §§ 330 and 331.The terms of employment of the Firm agreed to

20 | by the Trustee, subject to approval of the Court, are that the Firm will represent the Trustee and the

21 | Estate at a special discounted rate of $825 per hour. KLG's fees will be capped at the greater of

22 | (1) 3.5% of the first $10 million of recovery and 5% thereafter; or (b) $100,000. The Trustee is

23 | separately negotiating a subordination agreement with JFL pursuant to which JFL will subordinate

24 | its claim and lien to certain administrative claims including the foregoing fees to KLG.

25 |         KLG understands that its compensation in this case is subject to approval by the Bankruptcy

26 | Court. In compliance with 11 U.S.C. §§ 330 and 331, KLG intends to file applications for interim

27 | allowance of fees and reimbursement of costs. If appropriate, approximately every four (4) months,

28 | the Firm will file an application with the Court seeking allowance of its fees and costs incurred to

TRUSTEE'S APPLICATION TO KELLNER LAW GROUP PC

4828-0104-7729, v. 3

EXHIBIT "2"
PAGE 18

1   date and paid pursuant to such monthly payment procedure.

2       The Firm has advised the Trustee that the Firm has not shared or agreed to share any

3   compensation to be received by it in this case with any other person or entity, except as among

4   partners of the Firm.

5       The Trustee and the Firm understand and agree that the proposed compensation arrangement

6   will be subject to the applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 330 and

7   331. The Firm understands and agrees that, if aggregate interim payments made to the Firm exceed

8   the amount that is ultimately allowed to the Firm, the Firm will be required to, and will, promptly

9   repay such difference.

10      **2.    FRBP 2014**

11      Rule 2014(a) of the Federal Rules of Bankruptcy Procedure provides as follows:

12      An order approving the employment of attorneys, accountants, appraisers,
        auctioneers, agents, or other professionals pursuant to §327, §1103, or §1114 of
13      the Code shall be made only on application of the trustee or committee. The
        application shall be filed and, unless the case is a chapter 9 municipality case, a
14      copy of the application shall be transmitted by the applicant to the United States
        trustee. The application shall state the specific facts showing the necessity for the
15      employment, the name of the person to be employed, the reasons for the selection,
        the professional services to be rendered, any proposed arrangement for
16      compensation, and, to the best of the applicant's knowledge, all of the person's
        connections with the debtor, creditors, any other party in interest, their respective
17      attorneys and accountants, the United States trustee, or any person employed in
        the office of the United States trustee. The application shall be accompanied by a
18      verified statement of the person to be employed setting forth the person's
        connections with the debtor, creditors, any other party in interest, their respective
19      attorneys and accountants, the United States trustee, or any person employed in
        the office of the United States trustee.
20

21

22      The Trustee is seeking employment of the Firm as a Special Counsel for the Estate. A copy

23   of this Application will be served on the Office of the United States Trustee.

24      **a.    FRBP 2014 - Facts Showing the Necessity for the Employment**

25      The Trustee is informed that the Collection Matters constitute a significant potential asset for

26   the Estate. As such, he has determined that it is in the best interest of the Estate to pursue collection

27   of the Collection Matters.  The Firm will assist the Trustee in all matters regarding the Collection

28   Matters, primarily in pursuing collection of fees owed to the Estate pursuant to the retainer and fee

4828-0104-7729, v. 3

EXHIBIT "2"
PAGE 19

1   sharing agreements.

2       The Firm, at the Trustee's request, may need to appear in, prosecute or defend any matter,

3   suits, or proceedings, if any, when they arise, and to take all necessary and proper steps in other

4   matters involving bankruptcy, federal and/or state law, or connected with the affairs of the Estate, as

5   needed, with respect to the Scope of Work.

6           **(i)     FRBP 2014 and LBR 2014-1(b)(3)(A) - Name of the Person**

7           **to Be Employed**

8       In addition to the provisions of Rule 2014 of the FRBP, LBR 2014-1(b)(3)(A) provides that

9   the Notice of the Application must "[s]tate the ***identity of the professional*** and the purpose and

10  scope for which it is being employed" (emphasis added).

11      The Trustee seeks to employ KLG as Special Collections Counsel. Pursuant to Rule 2014(b)

12  of the Federal Rules of Bankruptcy Procedure, partners, members, and regular associates of the Firm

13  will act on behalf of Trustee and Estate without further order of the court.

14      The professionals and paraprofessionals who may render services in connection with the

15  Firm's representation of the Estate are identified in the Firm's billing detail, to be submitted with

16  each application for allowance of fees and reimbursement of costs, by their initials. Those persons

17  may include Richard L. Kellner (partner) and support staff. **FRBP 2014 and LBR 2014-1(b)(3)(A) -**

18  **Reasons for the Selection**

19      In addition to the provisions of Rule 2014 of the FRBP, LBR 2014-1(b)(3)(A) provides that

20  the Notice of the Application must "[s]tate the identity of the professional and the ***purpose and***

21  ***scope*** for which it is being employed" (emphasis added).

22      The Trustee believes that the Firm is well-qualified to render the requested professional

23  services to the Estate. Mr. Kellner is a professional who has extensive experience in complex

24  litigation and class actions and has intimate knowledge of the factual background of many of the

25  ongoing litigation matters in which Debtor is entitled to fees and costs. Likewise, the Firm is well

26  qualified to pursue the enforcement of judgments awarded in Debtor's favor throughout the United

27  States, and as necessary, to defend against claims or litigation against the Estate that may arise in the

28  course of pursuing collection of property of the Estate.

TRUSTEE'S APPLICATION TO KELLNER LAW GROUP PC

4828-0104-7729, v. 3

EXHIBIT "2"
PAGE 20

1       Richard Kellner is an attorney who has been admitted to practice law for 34 years. He has

2  extensive experience as a plaintiff class action and complex litigation attorney – and has been lead

3  counsel or co-lead counsel in some of the largest litigation matters in the United States. Importantly,

4  he is admitted to practice law not only in the States of California, but also Florida, New York,

5  Pennsylvania and Nevada – where some of the underlying cases are pending upon which the Estate

6  is seeking enforcement of a judgment upon the Debtor's fees.

7       Mr. Kellner's particular knowledge and experience handling the types of litigation matters

8  upon which the Estate is seeking enforcement of a judgment of the Debtor's fees will create unique

9  efficiencies for the Estate – since Mr. Kellner will not have to expend significant time to "acquaint"

10  himself with the nature and general law relating to class actions. The Firm's biography and the

11  hourly rates are set forth in Exhibit 1 to the Declaration of Richard L. Kellner ("Kellner

12  Declaration").

13         **b.**    **FRBP 2014 and LBR 2014-1(b)(3)(A) – Professional Services to be**

14               **Rendered**

15       In addition to the provisions of Rule 2014 of the Federal Rules of Bankruptcy Procedure,

16  LBR 2014-1(b)(3)(A) provides that the Notice of the Application must "[s]tate the identity of the

17  professional and the purpose and ***scope*** for which it is being employed" (emphasis added).

18       The Firm will assist the Trustee in all matters regarding the Collection Matters, primarily in

19  pursuing collection of fees owed to the Estate pursuant to the retainer and fee sharing agreements.

20       The Firm, at the Trustee's request, may need to appear in, prosecute or defend any matter,

21  suits, or proceedings, if any, when they arise, and to take all necessary and proper steps in other

22  matters involving bankruptcy, federal and/or state law, or connected with the affairs of the Estate, as

23  needed, with respect to the Scope of Work.

24         **c.**    **FRBP 2014 and LBR 2014-1(b)(3)(C) – Proposed Arrangement for**

25               **Compensation**

26       In addition to the provisions of Rule 2014 of the Federal Rules of Bankruptcy Procedure,

27  LBR 2014-1(b)(3)(C) provides that the Notice of the Application must "[d]escribe the arrangements

28  for compensation, including the hourly rate of each professional to render services, source of the

<div align="center">9</div>

<div align="center">TRUSTEE'S APPLICATION TO KELLNER LAW GROUP PC</div>

4828-0104-7729, v. 3

<div align="right">EXHIBIT "2"<br>PAGE 21</div>

1    fees, the source and amount of any retainer, the date on which it was paid, and any provision

2    regarding replenishment thereof[.]"

3        The Firm will render services to the Trustee at a discounted rate of the Firm's regular hourly

4    rates, which may be adjusted from time to time. The Firm's discounted rate and its current hourly

5    billing rates are as follows:

6

7

8

9

| Partner: | Current Rate | Discounted Rate |
|---|---|---|
| Richard L. Kellner | $875/hour | $825/hour |
| Paraprofessionals | $175/hour | $125/hour |

10        The Firm will be compensated from assets of the Estate, if any, upon Bankruptcy Court

11    approval of duly filed applications for allowance of fees and costs and will not be compensated

12    absent the Estate's receipt or recovery of such assets. The Firm has received no retainer for the

13    services to be performed in this case and has agreed that no retainer will be paid.

14        The Firm understands that its compensation in this case is subject to approval by the

15    Bankruptcy Court. In compliance with 11 U.S.C. §§ 330 and 331, the Firm intends to file interim

16    and final applications for allowance of fees and reimbursement of costs as and when appropriate.

17        The Firm has advised the Trustee that the Firm has not shared or agreed to share any

18    compensation to be received by it in this case with any person, except as among partners of the Firm

19            **d.**     **FRBP 2014 - Firm's Connections and Associations**

20        Except as disclosed in this Application, and to the best of the Firm's knowledge, neither the

21    Firm nor any of the professionals comprising or employed by the Firm has any connection with

22    Debtor or Debtor's attorney, Debtor's creditors, any other party in interest, or their respective

23    attorneys or accountants.

24        The Firm does not have an interest adverse to Debtor or the Estate related to the Collection

25    Matters. As of the Petition Date, the Firm is not a creditor of the Estate and is not owed any funds by

26    Debtor.

27        To the best of the Firm's knowledge, and as set forth in the attached Kellner Declaration,

28    none of the professionals comprising or employed by the Firm has any connection with any judge of

4828-0104-7729, v. 3

1  the United States Bankruptcy Court for the Central District of California, the United States Trustee,

2  or any person currently employed in the Office of the United States Trustee.

3          **3.      LBR 2014-1(b)(1)(B) – Disinterestedness of the Firm**

4          Pursuant to Pursuant to LBR 2014-1(b)(1)(B), "The application must be accompanied by a

5  declaration of the person to be employed establishing disinterestedness or disclosing the nature of any

6  interest held by such person." There is no disinterestedness requirement for employment of special

7  counsel under 11 U.S.C. § 327. Nonetheless, the Kellner Declaration submitted with this Application

8  provides information regarding the Firm's disinterestedness. As set forth in the appended Kellner

9  Declaration, and except as described in the following paragraphs, KLG does not hold or represent any

10  interest adverse to the interests of the Debtor's estate.  KLG has no interest adverse to the Debtor, the

11  estate, its creditors, or any other party in interest, their respective attorneys and accountants, and has

12  no relation to any bankruptcy judge presiding in this district or any relation to the United States

13  Trustee in this district or any person employed by the Office of the United States Trustee.

14          KLG has reviewed its files and determined that, KLG (i) has not represented, is not

15  representing, and has no present intention to represent any related entity or creditor in connection with

16  this bankruptcy case or any person known to it to have any involvement with respect to the Claims,

17  and (ii) neither holds nor represents a claim against the Debtor, the Trustee, the estate, or Mr. Avenatti

18  or any of his known affiliates. In May 2013, at both Mr. Avenatti's and Mr. Frank's request, Mr.

19  Kellner provided a loan to the firm for litigation costs, which were repaid in or around 2014 upon the

20  settlement of the matter.

21          KLG has received no retainer in its capacity as proposed special litigation attorneys to the

22  Trustee in this case.  There is no separate written agreement pertaining to the Firm's employment in

23  connection with this representation, except that the terms set forth in **Exhibit 1** are, to the extent not

24  inconsistent with the terms set forth above, are intended to be part of the agreement between KLG and

25  the Trustee acting on behalf of the estate.

26          **4.      Authority to Retain out of State Counsel**

27          Debtor prosecuted litigation throughout the United States and is entitled to attorneys' fees and

28  costs in several cases currently pending in other states. Accordingly, the Firm may need to retain local

TRUSTEE'S APPLICATION TO KELLNER LAW GROUP PC

4828-0104-7729, v. 3

1  counsel to secure the Estate's rights to fees and costs owed to the Debtor, including filing notices of

2  attorneys' lien when appropriate, The Trustee respectfully requests that the Court vest him and KLG

3  with the authority to retain out of state, local counsel to administer such claims and related issues, on

4  condition that the Trustee file an application to employ such out of state, local counsel ("Local

5  Counsel") within 30 days of retaining Local Counsel, and that Local Counsel's rates for the first 30

6  days cannot exceed KLG's rates.

7  **5.    LBR 2014-1(b)(1)(C) – Service on Office of the United States Trustee**

8  Pursuant to Pursuant to LBR 2014-1(b)(1)(C), "The United States Trustee must be served, in

9  accordance with LBR 2002-2(a), with a copy of the application and supporting declaration not later

10  than the day it is filed with the court. No hearing is required unless requested by the United States

11  trustee or a party in interest, or as otherwise ordered by the court." As set forth in the sworn Proof of

12  Service filed contemporaneously with this document, the Firm served a copy of this Application on

13  the Office of the United States Trustee on the date this Application was filed with the Court.

14  **E.    Conclusion**

15  The Trustee requests that he be authorized to employ the Firm, effective as of February 4,

16  2020, as its Special Counsel pursuant to 11 U.S.C. § 327, at the Firm's discounted hourly rates with

17  any compensation and reimbursement of costs to be paid by the Estate only upon application to and

18  approval by the Court pursuant to 11 U.S.C. §§ 330 and 331.

19  DATED: February ___, 2020              Respectfully submitted,

20

21                                        By: _____
                                               RICHARD A. MARSHACK
22                                             Chapter 7 Trustee for the Bankruptcy
                                               Estate of Eagan Avenatti, LLP
23

24  DATED: February 4, 2020               MARSHACK HAYS LLP

25

26                                        By:   */s/ D. Edward Hays*
                                               D. EDWARD HAYS
27                                             DAVID A. WOOD
                                               Attorneys for Chapter 7 Trustee
28                                             RICHARD A. MARSHACK

TRUSTEE'S APPLICATION TO KELLNER LAW GROUP PC

4828-0104-7729, v. 3

EXHIBIT "2"
PAGE 24

## Declaration of Richard L. Kellner

I, RICHARD L. KELLNER, say and declare as follows:

1.     I am an individual over 18 years of age and competent to make this Declaration.

2.     I am the founder of Kellner Law Group PC ("Firm") and maintain offices at 1180 S. Beverly Drive, Suite 610, Los Angeles, CA 90035. I am also the Managing Partner of Jacoby & Meyers Mass Torts Law Group LLC.

3.     I make this Declaration in support of the Application to Employ the Firm as Special Counsel ("Application") filed by Richard A. Marshack, in his capacity as Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of Eagan Avenatti, LLP ("Debtor"), Case No. 8:19-bk-13560-CB.

4.     If called as a witness, I could and would competently testify to the following of my own personal knowledge.

5.     Trustee has asked that the Firm serve as its Special Counsel in connection with the administration of the Estate for the specific special purpose of representing the Estate with respect to monitoring and recovering the fees owed to Debtor in various ongoing legal matters ("Litigation Fees") in which Debtor may be entitled to fees. The Trustee also desires to retain the Firm to further investigate, and as appropriate, prosecute the recovery of fees owed to the Debtor as well as defend litigation or other claims against the Estate that may arise in the course of pursuing the Litigation Fees. The Firm will represent and advise the Trustee on any matter relating to the collection of the Litigation Fees pursuant to Debtor's retainer agreements, as well as collection of fees owed as a result of fee sharing agreements ("Collection Matters"). At the request of the Trustee, the Firm will also represent and advise the Trustee on any matter relating to the litigation of the Collection Matters as well as the enforcement of judgments awarded in Debtor's favor, and as necessary, to defend against claims or litigation against the Estate that may arise in the course of pursuing fees that are property of the Estate. The Firm is well-qualified to do so.

6.     I have extensive litigation experience, and specific experience in the factual background and history related to the Collection Matters and am well qualified to represent Trustee

TRUSTEE'S APPLICATION TO KELLNER LAW GROUP PC

4828-0104-7729, v. 3

EXHIBIT "2"
PAGE 25

1  in proceedings of this nature. I have over 34 years of litigation experience, and have been lead

2  counsel or co-lead counsel in some of the largest class actions in the United States. I am presently a

3  Trustee for the Los Angeles County Bar Association, and have served repeated terms as the Chair of

4  the Complex Court Committee for the Litigation Section of the Los Angeles County Bar

5  Association.

6       7.  I have repeatedly been selected amongst the top trial attorneys by the National Trial

7  Lawyers, and have tried over 30 cases and handled over 100 appeals.

8       8.  I am duly licensed to practice law in the State of California, before this Court, and

9  also in the States of Florida, New York, Pennsylvania, and Nevada.

10       9.  A biography of the Firm with billing rates is attached as Exhibit 1 and incorporated

11  by this reference.

12       10.  The Firm and its paralegal support staff who will work on this case are familiar with

13  the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules.

14       11.  The Firm will render services to the Trustee at a discounted rate of the Firm's regular

15  hourly rates, which may be adjusted from time to time. The Firm's discounted rate and its current

16  hourly billing rates are as follows:

| Partner: | Current Rate | Discounted Rate |
|---|---|---|
| Richard L. Kellner | $ 875/hour | $825/hour |
| Paraprofessionals | $175/hour | $125/hour |

22       12.  The Firm will be compensated from assets of the Estate, if any, upon Bankruptcy

23  Court approval of duly filed applications for allowance of fees and costs and will not be

24  compensated absent the Estate's receipt or recovery of such assets.

25       13.  The Firm has not received a retainer for the services that it will perform in this matter.

26       14.  The Firm understands that its compensation in this case is subject to approval of this

27  Court pursuant to 11 U.S.C. §§ 327, 330, and 331.

28

4828-0104-7729, v. 3

EXHIBIT "2"
PAGE 26

1     15.     The Firm has not shared or agreed to share any compensation to be received by it in

2  the case with any other person, except as among partners of the Firm.

3     16.     The Firm completed a conflicts check prior to submitting this Application.

4     17.     I am the owner of Kellner Law Group, a professional law corporation ("KLG").

5     18.     The Firm is not currently representing any creditors in connection with their claims

6  against the Debtor and/or Avenatti.

7     19.     To the best of my knowledge, neither the Firm, nor any of the professionals

8  comprising or employed by it, has any connection with Debtor or Debtor's attorneys or accountants,

9  Debtor's creditors, or any other outside party in interest, or their respective attorneys or accountants.

10     20.     The Firm is not and was not an investment banker for any outstanding security of the

11  Debtor.

12     21.     The Firm has not been within three (3) years before the date of the filing of the

13  petition herein, an investment banker for a security of Debtor, or an attorney for such an investment

14  banker in connection with the offer, sale or issuance of any security of Debtor.

15     22.     The Firm is not and was not, within two (2) years before the date of the filing of

16  Debtor's petition, a director, officer or employee of the Debtor or of any investment banker for any

17  security of Debtor.

18     23.     As of the Petition Date, the Firm was not a creditor of the Estate, an equity security

19  holder, or an insider of Debtor. The Firm has no pre-petition claim against Debtor's Estate and is not

20  owed any funds by Debtor.

21

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

<div align="center">15

TRUSTEE'S APPLICATION TO KELLNER LAW GROUP PC</div>

4828-0104-7729, v. 3

<div align="right">EXHIBIT "2"
PAGE 27</div>

1    24.    In May 2013, at both Mr. Avenatti's and Mr. Frank's request, Mr.

2  Kellner provided a loan to the firm for litigation costs, which were repaid in or around

3  2014 upon the settlement of the matter.

4    25.    The Firm neither holds nor represents any interest materially adverse to

5  the interest of the Estate or of any class of creditors or equity security holders, by

6  reason of any direct or indirect relationship to, connection with, or interest in, Debtor

7  or an investment banker for any security of Debtor, or for any other reason

8    26.    To the best of my knowledge, none of the persons employed by the Firm

9  have any connection to any judge of the United States Bankruptcy Court for the

10  Central District of California, the United States Trustee, or any person currently

11  employed in the Office of the United States Trustee.

12    27.    The Firm does not have an interest adverse to Debtor or the bankruptcy

13  Estate related to the Collection Matters.

14    I declare under penalty of perjury under the laws of the State of California that

15  the foregoing is true and correct. Executed on January 31, 2020, at Los Angeles,

16  California.

17

18    _____
     RICHARD L. KELLNER

19

20

21

22

23

24

25

26

27

28

<div align="center">18</div>

<div align="center">TRUSTEE'S APPLICATION TO KELLNER LAW GROUP PC</div>

Case 8:19-bk-13560-SC    Doc 91    Filed 02/04/20    Entered 02/04/20 16:46:00    Desc
Main Document    Page 17 of 21

EXHIBIT "1"



KELLNER LAW GROUP PC

# Richard L. Kellner

For over 34 years, Richard L. Kellner has been recognized as one of the top trial attorneys in the United States.  Starting as a homicide prosecutor in the Bronx District Attorneys' Office to his role as co-founder of Kabateck Brown Kellner LLP in 2004, Mr. Kellner has litigated some of the largest and most important cases in the United States.  Through his efforts, Mr. Kellner secured over $1 billion for his clients in class actions, complex business disputes and insurance bad faith cases

In 2018, Mr. Kellner formed Kellner Law Group PC to provide hands-on litigation for a limited number of cases.  This is in addition to his role as Managing Partner for Jacoby & Meyers Mass Torts Law Group LLC.

The National Trial Lawyers has recognized Mr. Kellner as one of the Top 100 Influential Trial Lawyers in the United States, and he has annually been designated as a Super Lawyer.  In the field of class actions and complex litigation, Mr. Kellner has taken leadership positions in local and national bar associations. Mr. Kellner presently serves as a Trustee for the Los Angeles County Bar Association.

Among Mr. Kellner's notable successes is his recovery in the Epson class action, which resulted in a settlement valued at over $400 million.  Mr. Kellner was co-lead counsel for the NAACP in landmark litigation against major banking institutions, and was given the NAACP's Champion of Justice in Civil Rights award in 2010. Mr. Kellner is among a handful of experienced California trial litigators who handle complex business and corporate litigation matters on a contingency fee basis, recovering hundreds of millions of dollars in such cases.

In addition to his accomplishments as a trial attorney, Mr. Kellner is a highly successful appellate attorney.  He has argued more than 130 appeals in state and federal courts including the California State Supreme Court, the Ninth Circuit Court of Appeals, the Second Circuit Court of Appeals, and the New York Court of Appeals.

HONORS AND RECOGNITION

- National Trial Lawyers – Top 100 in California – 2010 to present.
- National Trial Lawyers – Top 100 Influential Trial Lawyers in the United States – 2015 to present.
- NAACP's Champions of Justice in Civil Rights – 2010.
- Finalist, Consumer Attorneys of California – Consumer Attorney of the Year – 2010.

PROFESSIONAL ASSOCIATIONS & MEMBERSHIP

National Trial Attorneys.
- Executive Board.
Los Angeles County Bar Association.
- Trustee.
- Executive Committee of the Litigation Section.
Consumer Attorneys Association of Los Angeles.


ADMITTED TO PRACTICE

State Bar of California.
State Bar of New York.
State Bar of Florida.
State Bar of Nevada.
State Bar of Pennsylvania.
Ninth Circuit Court of Appeal.
Second Circuit Court of Appeal.
Multiple District Courts throughout the United States.


**Billing Rates**

**Richard L. Kellner, Parnter**      **$875.00 per hour**
**Paralegal support**                    **$175.00 per hour**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **APPLICATION BY CHAPTER 7 TRUSTEE TO KELLNER LAW GROUP PC AS SPECIAL COLLECTIONS COUNSEL; DECLARATION OF RICHARD L. KELLNER IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 4, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **February 4, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**MAIL REDIRECTED TO TRUSTEE**
**09/23/19**
**DEBTOR**
Eagan Avenatti, LLP
~~20341 SW Birch, Suite 220~~
~~Newport Beach, CA 92660-1514~~

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 4, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

VIA PERSONAL DELIVERY
**PRESIDING JUDGE'S COPY**
Bankruptcy Judge Honorable Catherine E. Bauer
U. S. Bankruptcy Court – Central District
411 West Fourth Street, Suite 5165 / Courtroom 5D
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 4, 2020 | Cynthia Bastida | /s/ Cynthia Bastida |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

4839-4029-3043, v. 1

EXHIBIT "2"
PAGE 32

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: (CONTINUED)
- **ATTORNEY FOR INTERESTED PARTY COURTESY NEF:** James C Bastian, Jr jbastian@shbllp.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, 8649808420@filings.docketbird.com
- **ATTORNEY FOR CREDITOR THE X-LAW GROUP, P.C.; CREDITOR ALEXIS GARDNER; AND CREDITOR DAMON ROGERS:** Filippo Marchino fm@xlawx.com, tc@xlawx.com
- **ATTORNEY FOR TRUSTEE RICHARD A. MARSHACK (TR):** Judith E Marshack jmarshack@marshackhays.com, 8649808420@filings.docketbird.com
- **RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com
- **SPECIAL LITIGATION COUNSE FOR CHAPTER 7 TRUSTEE:** Meghan Canty Murphey MCMurphey@bwslaw.com, lwan@bwslaw.com; JGomez@bwslaw.com
- **ATTORNEY FOR DEFENDANTS AVENATTI & ASSOCIATES APC and MICHAEL AVENATTI:** Ryan D O'Dea rodea@shulmanbastian.com, LGauthier@shulmanbastian.com
- **DEBTOR EAGAN AVENATTI, LLP AND TRUSTEE RICHARD A MARSHACK (TR):** Jack A. Reitman jareitman@lgbfirm.com, srichmond@lgbfirm.com; vrichmond@lgbfirm.com; avedrova@lgbfirm.com
- **ATTORNEY FOR TRUSTEE RICHARD A. MARSHACK (TR):** John P. Reitman jreitman@lgbfirm.com, srichmond@lgbfirm.com; vrichmond@lgbfirm.com
- **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR TRUSTEE RICHARD A. MARSHACK:** David Wood dwood@marshackhays.com, 8649808420@filings.docketbird.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT "3"

Case 8:19-bk-13560-SC   Doc 93   Filed 02/04/20   Entered 02/04/20 18:36:29   Desc
Main Document    Page 1 of 16

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  DAVID A. WOOD, #272406
   dwood@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   RICHARD A. MARSHACK
7

8                   UNITED STATES BANKRUPTCY COURT
9        CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION
10

11 In re                              Case No. 8:19-bk-13560-CB

12 EAGAN AVENATTI, LLP,               Chapter 7

13      Debtor.                       TRUSTEE'S MOTION FOR ORDER
                                      APPROVING SUBORDINATION
14                                    AGREEMENT WITH JASON FRANK
                                      LAW, PLC; MEMORANDUM OF POINTS
15                                    AND AUTHORITIES; AND
                                      DECLARATION OF RICHARD A.
16                                    MARSHACK IN SUPPORT

17                                    Date:     February 25, 2020
                                      Time:     2:30 p.m.
18                                    Ctrm:     5D
                                      Location: United States Bankruptcy Court
19                                              Central District of California
                                                Ronald Reagan Federal Building
20                                              and Courthouse
                                                411 West Fourth Street
21                                              Santa Ana, CA 92701-4593

22 TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY COURT

23 JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED

24 PARTIES:

25      Richard A. Marshack, Chapter 7 Trustee ("Trustee") for the Estate ("Estate") of Debtor

26 Eagan Avenatti, LLP ("Debtor") respectfully submits this motion to approve a subordination

27 agreement with Jason Frank Law, PLC ("JFL") ("JFL," collectively with Trustee, the "Parties")

28 relating to JFL's secured claim against all of the Debtor's assets.

                                      1
         MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT
4851-9735-4046.v1

1    **1.    Summary of Argument**

2        Any claim may be subordinated for purposes of distribution to all or part of any other

3    claims under Section 510. In this case, Jason Frank Law ("JFL") contends that it has a lien against

4    all assets of the bankruptcy estate to secure a claim in excess of $12 million. JFL wants the Trustee

5    to administer the estate's assets and, as such, it has agreed to a voluntary subordination of its

6    secured claim for the benefit of certain administrative and unsecured claims.

7        Under the terms of the proposed agreement, JFL subordinates it secured claim for the

8    benefit of all compensation awarded to the Trustee and the Trustee's retained attorneys who are

9    actively prosecuting the Estate's claims including the Kellner firm regarding collections of

10    receivables and the Reitman firm regarding fraudulent transfer claims. JFL further subordinates its

11    claim to other allowed administrative claims including Trustee's general counsel and unsecured

12    creditors in the maximum amount of 10% as set forth in more detail below.

13        Although there is no requirement that a subordination agreement be approved, the 9th

14    Circuit Bankruptcy Appellate Panel in the case of *In re KVN* has held that a carve-out agreement

15    should be approved by the Court. As such, in an abundance of caution and to the extent this Court

16    concludes that the proposed subordination agreement must be approved, the Trustee seeks such

17    approval as being reasonable and beneficial to the Estate. Other than agreeing not to seek any

18    Section 506(c) surcharge, the Trustee has not compromised any claims held by the Estate in

19    entering the agreement.

20    **2.    Statement of Relevant Facts**

21        On September 13, 2019, Debtor filed a voluntary petition under Chapter 7 of Title 11 the

22    United States Code. On the same day, Richard A. Marshack was appointed as the Chapter 7 trustee

23    of the Estate.

24        Prior to the commencement of this bankruptcy case, Jason Frank Law, PLC ("JFL")

25    obtained a judgment against the debtor from this Court in the principal amount of $10 million plus

26    "reasonable attorneys' fees and costs incurred in collecting any and all sums due from [the debtor]

27    pursuant to the entered judgment" ("Judgment"). The Trustee understands the Judgment has been

28

2

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT

4829-2959-5315, v. 2/1015-131

1  accruing interest at the rate prescribed by 28 U.S.C. § 1961 since the date the Judgment was

2  entered on May 22, 2018. The Trustee further understands that JFL asserts a secured claim for

3  these amounts against all of the debtor's assets based on various judgment liens it contends it

4  created outside the preference period. JFL wants the Trustee to collect the receivables. To resolve

5  any claims to surcharge under Section 11 U.S.C. § 506(c), the Trustee and JFL have entered into

6  the agreement attached as Exhibit "1."

7  **3.    Summary of the Proposed Agreement for Partial Subordination**

8       The following is a summary of the substantive terms of the Agreement.[1] Subject to

9  Bankruptcy Court approval, the Parties agree as follows:

10      1.   JFL will agree to a <u>limited</u> subordination of its claim and lien under
        11 U.S.C. § 510(c), which will be limited to the following amounts:

11          a.   Reasonable compensation to the Trustee not to exceed the amounts
12              permitted under 11 U.S.C. § 326(a);

13          b.   Legal fees to the Law Offices of Richard Kellner ("Kellner")
            incurred in connection with the collection of the debtor's receivables
            (the "Receivables") subject to a cap equal to the *greater* of (a) One
14              Hundred Thousand ($100,000.00) or (b) 3.5% of the first Ten
            Million Dollars ($10,000,000.00 ) of Receivables collected and 5%
15              percent of the Receivables collected thereafter;[2]

16          c.   In the event JFL has a secured claim on the amounts recovered in any
            fraudulent transfer and avoidance actions ("Fraudulent
17              Transfer/Avoidance Matters"),[3] then JFL will agree that its secured
            claim is subordinated to the approved contingency fees owed to
18              Landau Law from the recoveries in the Fraudulent
            Transfer/Avoidance Matters pursuant to the terms set forth in Exhibit
19              1 to the Trustee's Application to Employ Landau Law as Special
            Litigation Counsel, unless otherwise modified by the Court. (Doc.
20              33.) All other legal fees and expenses owed to Landau Law for work
            not relating to the Fraudulent Transfer/Avoidance Matters will be
21              considered "Other Allowed Administrative Claims" subject to the
            limits set forth in ¶ 1(d) below;

22          d.   Other Allowed Administrative Claims not to exceed the *lesser of*
23              (a) the actual amounts approved by the Court (not including the

---

24  [1] All interested parties are advised to consult the Agreement for all terms and conditions. The
statements contained in this Motion are a summary of the material terms and conditions only. The
25  actual language of the agreement shall control.

[2] If any reason Kellner's employment application is not approved by the Court, then the Parties
26  will discuss whether JFL will agree to a similar subordination with respect to any other counsel
retained to collect the debtor's receivables.

27  [3] The Trustee reserves the Estate's rights to contest whether JFL has a secured claim and the extent
28  of such claim including any lien on the amounts recovered in the Fraudulent Transfer/Avoidance
Actions.

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT
4829-2959-5315, v. 2/1015-131

amounts set forth in ¶1(a)-(c) above); and (b) 10% of total recoveries otherwise subject to JFL's secured lien; and

e.    To the extent that Other Allowed Administrative Claims are less than 10% of total recoveries otherwise subject to JFL's secured lien, then the difference between such amounts (not to exceed 2.5% of the total recoveries otherwise subject to JFL's secured lien) will be distributed by the Trustee to unsecured creditors. For example, if Other Allowed Administrative Claims are 5% of such total recoveries, then the total subordination will be 7.5% (5% + 2.5%). If the total amount of Other Allowed Administrative Claims exceed 10% of such total recoveries and are therefore capped at such amount, and unsecured creditors will not receive any benefit from the subordination but will still receive distributions if other collections exceed the amount of JFL's claim;

2.    Because JFL's claim is being subordinated (and it is not carving out funds otherwise payable on account of the lien), JFL will remain entitled to collect the remainder of its claim as collections permit. In other words, if sufficient funds are recovered to pay the amounts subordinated in ¶ 1 and JFL's claim in full, then JFL will receive full payment;

a.    If the Trustee recovers funds from assets not subject to JFL's secured lien, then JFL will be entitled to receive 20% of the net proceeds from such recoveries (after payment of administrative claims including any costs of sale) until such time as the amounts subordinated pursuant to ¶ 1 are repaid. JFL will still be entitled to receive its proportionate share of the remaining 80% of such proceeds in accordance with applicable law;

3.    JFL is retaining the full amount of its claim against any co-debtors;

4.    The Trustee agrees JFL's secured claim includes the pre-petition "reasonable attorneys' fees and costs incurred in collecting any and all sums due from [the debtor] pursuant to the entered judgment" as provided for in Paragraph 3 of the Judgment. JFL will also be able to seek contribution for post-petition fees and expenses incurred in assisting the Trustee recover assets pursuant to 11 U.S.C. § 503(b)(3)(D). The Trustee reserves the right to oppose or join in any such request;

5.    The Trustee will obtain JFL's written approval (email is sufficient) prior to agreeing to any settlement or agreement that is less than 75% of the claim value, including but not limited to the Receivables, the Fraudulent Transfer/Avoidance Matters, or any other litigation claims or assets of the debtor. However, in the event JFL does not consent to the settlement or agreement, then the Trustee will retain his right to seek Court approval of the settlement or agreement over JFL's objection, if the Trustee believes it is in the best interest of the Estate;

a.    Additionally, the Trustee will regularly communicate with Jason Frank on issues relating to matters covered or potentially covered by JFL's lien. In furtherance of this goal of cooperation, the Trustee or his counsel will participate in calls or meetings requested by Jason Frank regarding such issues;

6.    In consideration of the foregoing, the Trustee agrees not to seek any surcharge of JFL's collateral under 11 U.S.C. § 506(c); and

7.    This agreement will be subject to court approval on motion after notice and a hearing. Although the Trustee is not compromising any claims held by the

4

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT
4829-2959-5315, v. 2/1015-131

1  estate, agreements such as subordination or carve-out agreements may be
2  subject to Court approval. *See, In re KVN*, 541 B.R. 1 (9th Cir. BAP 2014).

### 4.  Legal Authority

### A.  The Court May Approve a Settlement of a Pending Controversy

"A carve-out agreement is generally understood to be 'an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out its lien position.'" *In re KVN Corp., Inc.*, 514 B.R. 1, 6 (9th Cir. BAP 2014) (citing *Costa v. Robotic Vision Sys., Inc.* (*In re Robotic Vision Sys., Inc.*), 367 B.R. 232, 237 n. 23 (1st Cir. BAP 2007); *In re Besset*, 2012 WL 6554706, at *5 n. 5 (9th Cir. BAP 2012)).

In *In re KVN Corp., Inc.*, the Bankruptcy Appellate Panel for the Ninth Circuit held that courts should consider the following factors in deciding whether to approve a carve-out agreement between a Chapter 7 trustee and a secured lender: (1) whether the trustee "fulfilled his or her basic duties;" (2) whether there is "a benefit to the estate, i.e., prospects for a meaningful distribution to unsecured creditors;" (3) whether "the terms of the carve-out agreement been fully disclosed to the bankruptcy court." *Id.* at 8. In sum, courts should scrutinize carve-out agreements to ensure that the agreement provides a benefit to unsecured creditors and is not merely an opportunity for the trustee to receive a commission for making a distribution to a secured creditor who could foreclose on the security interest itself. *Id.* at 7.

In this case, the proposed agreement provides for a subordination and not a carve-out. As such, the Trustee does not believe that Court approval may be required. That said, in an abundance of caution and out of respect for this Court, the Trustee files this Motion seeking approval of the agreement.

Because JFL contends that it is a secured creditor with a claim that could equal or exceed $12 million including principal, post-judgment interest, and attorneys' fees, the Trustee justifiably has concerns about being able to employ qualified professionals to represent the Estate if no such professionals could be paid until after the Trustee recovered and paid an alleged $12 million secured claim. Moreover, JFL did not want the Trustee to abandon the assets back to the Debtor given Mr. Avenatti's other pending legal matters. Lastly, the Trustee believes that the potential

5

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT

1 | recoveries in this case could exceed $12 million given the amount of pending claims for attorneys'

2 | fees in other litigation matters. If this were to prove to be the case, then the Trustee would not want

3 | to have abandoned the assets when their administration could have otherwise produce distributions

4 | to general unsecured creditors.

5 | After considering all options, the Trustee negotiated the proposed subordination agreement

6 | with JFL. The agreement is the product of much back-and-forth and the Trustee believes that it is

7 | the best possible agreement that can be reached with JFL. Given that the agreement provides a

8 | partial subordination of JFL's secured claim for the benefit of administrative expenses as set forth

9 | in the agreement and may also provide the ability for the Trustee to satisfy JFL's claim to

10 | maximize the chances that other asset administration could provide some or additional distributions

11 | to unsecured creditors, the Trustee believes it is in the best interest of the estate and that it should

12 | be approved.

13 | If this Court chooses to apply the *KVN* carve-out standards to this subordination agreement,

14 | the proposal should be approved. First, the Trustee has fulfilled his basic duties by negotiating an

15 | agreement that will result in creditors receiving distributions that would otherwise not be possible

16 | until after the Trustee collected approximately $12 million. Second, the Agreement provides a

17 | significant benefit to the Estate in that it will allow the Trustee to employ well-regarded counsel to

18 | assist in the administration of substantial assets subject to JFL's alleged liens. Third, the Trustee

19 | has disclosed the proposed subordination and all terms of the Agreement to the Court and has

20 | provided notice to all creditors and parties-in-interest by the filing of this Motion. The Trustee has

21 | thus met all of the requirements for approval of the agreement even if the proposed subordination is

22 | analyzed as a carve-out.

23 | / / /

24 | / / /

25 | / / /

26 | / / /

27 | / / /

28 |

---

6

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT

4829-2959-5315, v. 2/1015-131

1    **5.      Conclusion**

2          For the reasons stated above, the Trustee requests that the Motion be granted and that the

3    Court enter an order approving the proposed subordination agreement.

4

5    DATED: February 4, 2020                    MARSHACK HAYS LLP

6

7                                               By: */s/ D. Edward Hays*
                                                    D. EDWARD HAYS
8                                                   DAVID A. WOOD
                                                    General Counsel for Chapter 7 Trustee,
9                                                   RICHARD A. MARSHACK

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          7
                MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT
4829-2959-5315, v. 2/1015-131

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, declare as follows:

1.     I am an individual over 18 years of age and competent to make this Declaration.

2.     I am an attorney at law duly admitted to practice before this Court and all courts of the State of California.

3.     I am the Chapter 7 Trustee of the Bankruptcy Estate of Eagan Avenatti, LLP ("Debtor").

4.     If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

5.     The facts set forth below are true of my personal knowledge.

6.     I reviewed the court's PACER docket for this case prior to execution of this Declaration to refresh my memory as to the dates on which particular documents were filed and confirm no further relevant documents were filed.

7.     I make this declaration in support of the this motion to approve the subordination agreement between the Estate and Jason Frank Law, PLC ("JFL") ("JFL," collectively with Trustee, the "Parties"). A true and correct copy of the Agreement is attached as **Exhibit 1.**

8.     On September 13, 2019, Eagan Avenatti, LLP ("Debtor") filed a voluntary petition under Chapter 7 of Title 11 the United States Code. On the same day, I was appointed as the Chapter 7 trustee of the Estate.

9.     Prior to the commencement of this bankruptcy case, Jason Frank Law, PLC ("JFL") obtained a judgment against the debtor from this Court in the principal amount of $10 million plus "reasonable attorneys' fees and costs incurred in collecting any and all sums due from [the debtor] pursuant to the entered judgment" ("Judgment").

10.     JFL contends that the Judgment has been accruing interest at the rate prescribed by 28 U.S.C. § 1961 since the date the Judgment was entered on May 22, 2018. I further understand

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT
4829-2959-5315, v. 2/1015-131

1  that JFL asserts a secured claim for these amounts against all of the debtor's assets based on

2  various judgment liens it contends it created outside the preference period.

3      11.    JFL wants me to collect the receivables. To resolve any claims to surcharge under

4  Section 11 U.S.C. § 506(c), JFL and I have entered into the agreement attached as Exhibit "1."

5      12.    In this case, the proposed agreement provides for a subordination and not a carve-

6  out. As such, it may be the case that Court approval may not be required. In an abundance of

7  caution and out of respect for this Court, I am filing this Motion seeking approval of the agreement.

8      13.    Because JFL contends that it is a secured creditor with a claim that could equal or

9  exceed $12 million including principal, post-judgment interest, and attorneys' fees, I was

10  concerned about being able to employ qualified professionals to represent the Estate if no such

11  professionals could be paid until after I recovered and paid an alleged $12 million secured claim.

12      14.    Moreover, JFL did not want me to abandon the assets back to the Debtor given Mr.

13  Avenatti's other pending legal matters.

14      15.    Based on schedules, statements, and other documents prepared by the receiver prior

15  to the filing of this bankruptcy case, I believe that it is possible that recoveries in this case could

16  exceed $12 million given the amount of pending claims for attorneys' fees in other litigation

17  matters. If this were to prove to be the case (and I do not yet have sufficient knowledge to know if

18  this is possible), I would not want to have abandoned the assets when their administration could

19  have produced distributions to general unsecured creditors.

20      16.    After considering all options, I negotiated the proposed subordination agreement

21  with JFL. The agreement is the product of much back-and-forth and I believe that it is the best

22  possible agreement that can be reached with JFL.

23      17.    Given that the agreement provides a partial subordination of JFL's secured claim for

24  the benefit of administrative expenses as set forth in the agreement and may also provide the ability

25  for me to satisfy JFL's claim and thereby maximize the chances that other asset administration

26  could provide some or additional distributions to unsecured creditors, I believe it is in the best

27  interest of the estate and that it should be approved.

28

<div align="center">9

MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT</div>

4829-2959-5315, v. 2/1015-131

<div align="right">EXHIBIT "3"
PAGE 42</div>

1

2          18.    Except for resolving any potential Section 506(c) claims, the agreement does not

3    release any claims held by the estate and does not constitute a compromise.

4          I declare under penalty of perjury that the foregoing is true and correct. Executed on

5    February 4, 2020.

6                                               RICHARD A. MARSHACK

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            10
                MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT
4829-2959-5315, v. 1/1015-131

# EXHIBIT "1"

## SUBORDINATION AGREEMENT

Richard A. Marshack, in his capacity as Chapter 7 Trustee of the Eagan Avenatti bankruptcy
estate ("Trustee"), understands that Jason Frank Law, PLC ("JFL") obtained a judgment against
the debtor in the amount of Ten Million Dollars ($10,000,000.00) plus "reasonable attorneys'
fees and costs incurred in collecting any and all sums due from [the debtor] pursuant to the
entered judgment" ("Judgment"). The Trustee understands the Judgment has been accruing
interest at the rate prescribed by 28 U.S.C. § 1961 since the date the Judgment was entered on
May 22, 2018. The Trustee further understands that JFL asserts a secured claim for these
amounts against all of the debtor's assets. JFL wants the Trustee to collect the receivables. To
resolve any claims to surcharge under 11 U.S.C. § 506(c), the Trustee and JFL agree to the
following:

The Trustee and JFL agree to the following treatment with regard to JFL's secured claim:

1. JFL will agree to a limited subordination of its claim and lien under 11 U.S.C. § 510(c),
   which will be limited to the following amounts:
   a. Reasonable compensation to the Trustee not to exceed the amounts permitted
      under 11 U.S.C. § 326(a);
   b. Legal fees to the Law Offices of Richard Kellner ("Kellner") incurred in
      connection with the collection of the debtor's receivables (the "Receivables")
      subject to a cap equal to the *greater* of (a) One Hundred Thousand ($100,000.00)
      or (b) 3.5% of the first Ten Million Dollars ($10,000,000.00 ) of Receivables
      collected and 5% percent of the Receivables collected thereafter; [1]
   c. In the event JFL has a secured claim on the amounts recovered in any fraudulent
      transfer and avoidance actions ("Fraudulent Transfer/Avoidance Matters"),[2] then
      JFL will agree that its secured claim is subordinated to the approved contingency
      fees owed to Landau Law from the recoveries in the Fraudulent
      Transfer/Avoidance Matters pursuant to the terms set forth in Exhibit 1 to the
      Trustee's Application to Employ Landau Law as Special Litigation Counsel,
      unless otherwise modified by the Court. (Doc. 33.) All other legal fees and
      expenses owed to Landau Law for work not relating to the Fraudulent
      Transfer/Avoidance Matters will be considered "Other Allowed Administrative
      Claims" subject to the limits set forth in ¶ 1(d) below;
   d. Other Allowed Administrative Claims not to exceed the *lesser of* (a) the actual
      amounts approved by the Court (not including the amounts set forth in ¶1(a)-(c)
      above); and (b) 10% of total recoveries otherwise subject to JFL's secured lien;
      and
   e. To the extent that Other Allowed Administrative Claims are less than 10% of total
      recoveries otherwise subject to JFL's secured lien, then the difference between
      such amounts (not to exceed 2.5% of the total recoveries otherwise subject to

---

[1] If for any reason Kellner's employment application is not approved by the Court, then the Parties will discuss
whether JFL will agree to a similar subordination with respect to any other counsel retained to collect the debtor's
receivables.

[2] The Trustee reserves the Estate's rights to contest whether JFL has a secured claim and the extent of such claim
including any lien on the amounts recovered in the Fraudulent Transfer/Avoidance Actions.

JFL's secured lien) will be distributed by the Trustee to unsecured creditors. For example, if Other Allowed Administrative Claims are 5% of such total recoveries, then the total subordination will be 7.5% (5% + 2.5%). If the total amount of Other Allowed Administrative Claims exceed 10% of such total recoveries and are therefore capped at such amount, then unsecured creditors will not receive any distributions;

2. Because your claim is being subordinated (and you are not carving out funds otherwise payable to you on account of your lien), you will remain entitled to collect the remainder of your claim as collections permit. In other words, if sufficient funds are recovered to pay the amounts subordinated in ¶ 1 and your claim in full, then you will receive full payment;

   a. If the Trustee recovers funds from assets not subject to your secured lien, then you will be entitled to receive 20% of the net proceeds from such recoveries (after payment of administrative claims including any costs of sale) until such time as the amounts subordinated pursuant to ¶ 1 are repaid. JFL will still be entitled to receive its proportionate share of the remaining 80% of such proceeds in accordance with applicable law;

3. You will be able to retain the full amount of your claim against any co-debtors including Mr. Avenatti;

4. The Trustee agrees JFL's secured claim includes the pre-petition "reasonable attorneys' fees and costs incurred in collecting any and all sums due from [the debtor] pursuant to the entered judgment" as provided for in Paragraph 3 of the Judgment. JFL will also be able to seek contribution for post-petition fees and expenses incurred in assisting the Trustee recover assets pursuant to 11 U.S.C. § 503(b)(3)(D). The Trustee reserves the right to oppose or join in any such request;

5. The Trustee will obtain JFL's written approval (email is sufficient) prior to agreeing to any settlement or agreement that is less than 75% of the claim value, including but not limited to the Receivables, the Fraudulent Transfer/Avoidance Matters, or any other litigation claims or assets of the debtor. However, in the event JFL does not consent to the settlement or agreement, then the Trustee will retain his right to seek Court approval of the settlement or agreement over JFL's objection, if the Trustee believes it is in the best interest of the Estate;

   a. Additionally, the Trustee will regularly communicate with Jason Frank on issues relating to matters covered or potentially covered by JFL's lien. In furtherance of this goal of cooperation, the Trustee or his counsel will participate in calls or meetings requested by Jason Frank regarding such issues;

6. In consideration of the foregoing, the Trustee agrees not to seek any surcharge of JFL's collateral under 11 U.S.C. § 506(c); and

///

///

///

///

7. This agreement will be subject to court approval on motion after notice and a hearing. Although the Trustee is not compromising any claims held by the estate, agreements such as subordination or carve-out agreements are subject to Court approval. *See, In re KVN*, 541 B.R. 1 (9th Cir. BAP 2014).

DATED: ~~January~~ Feb 4, 2020

By: _____

Richard A. Marshack
Chapter 7 Trustee of the Bankruptcy
Estate of Eagan Avenatti

DATED: January 31, 2020

JASON FRANK LAW, PLC

By: _____
Jason Frank

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **TRUSTEE'S MOTION FOR ORDER APPROVING SUBORDINATION AGREEMENT WITH JASON FRANK LAW, PLC; MEMORANDUM OF POINTS AND AUTHROTIEIS; AND DECLARATION OF RICHARD A. MARSHACK IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 4, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **February 4, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| MAIL REDIRECTED TO TRUSTEE 09/23/19 | INTERESTED PARTY |
|---|---|
| DEBTOR | Jason Frank |
| Eagan Avenatti, LLP | Jason Frank Law, PLC |
| ~~20341 SW Birch, Suite 220~~ | 19800 MacArthur Blvd., Suite 855 |
| ~~Newport Beach, CA 92660-1514~~ | Irvine, CA 92612 |

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 4, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

VIA PERSONAL DELIVERY
**PRESIDING JUDGE'S COPY**
Bankruptcy Judge Honorable Catherine E. Bauer
U. S. Bankruptcy Court – Central District
411 West Fourth Street, Suite 5165 / Courtroom 5D
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 4, 2020 | Cynthia Bastida | /s/ Cynthia Bastida |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

4839-4029-3043, v. 1

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: (CONTINUED)
   - **ATTORNEY FOR INTERESTED PARTY COURTESY NEF:** James C Bastian, Jr jbastian@shbllp.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, 8649808420@filings.docketbird.com
   - **ATTORNEY FOR CREDITOR THE X-LAW GROUP, P.C.; CREDITOR ALEXIS GARDNER; AND CREDITOR DAMON ROGERS:** Filippo Marchino fm@xlawx.com, tc@xlawx.com
   - **ATTORNEY FOR TRUSTEE RICHARD A. MARSHACK (TR):** Judith E Marshack jmarshack@marshackhays.com, 8649808420@filings.docketbird.com
   - **RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com
   - **SPECIAL LITIGATION COUNSE FOR CHAPTER 7 TRUSTEE:** Meghan Canty Murphey MCMurphey@bwslaw.com, lwan@bwslaw.com, JGomez@bwslaw.com
   - **ATTORNEY FOR DEFENDANTS AVENATTI & ASSOCIATES APC and MICHAEL AVENATTI:** Ryan D O'Dea rodea@shulmanbastian.com, LGauthier@shulmanbastian.com
   - **DEBTOR EAGAN AVENATTI, LLP AND TRUSTEE RICHARD A MARSHACK (TR):** Jack A. Reitman jareitman@lgbfirm.com, srichmond@lgbfirm.com; vrichmond@lgbfirm.com; avedrova@lgbfirm.com
   - **ATTORNEY FOR TRUSTEE RICHARD A. MARSHACK (TR):** John P. Reitman jreitman@lgbfirm.com, srichmond@lgbfirm.com; vrichmond@lgbfirm.com
   - **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
   - **ATTORNEY FOR TRUSTEE RICHARD A. MARSHACK:** David Wood dwood@marshackhays.com, 8649808420@filings.docketbird.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

4839-4029-3043, v. 1

EXHIBIT "3"
PAGE 49

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **MOTION BY CHAPTER 7 TRUSTEE TO APPROVE
AMENDMENT TO SUBORDINATION AGREEMENT RE: JUDGMENT LIEN HELD BY JASON FRANK LAW AND
TERMS OF EMPLOYMENT OF RICHARD L. KELLNER AS SPECIAL LITIGATION COUNSEL; MEMORANDUM OF
POINTS AND AUTHORITIES; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT** will be served or was
served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated
below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On
**December 21, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **December 21, 2021**, I served the following persons and/or entities at the
last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a
sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**MAIL REDIRECTED TO TRUSTEE 09/23/19
DEBTOR**
EAGAN AVENATTI, LLP
~~20341 SW BIRCH, SUITE 220~~
~~NEWPORT BEACH, CA 92660-1514~~

**U.S. TRUSTEE**
UNITED STATES TRUSTEE (SA)
411 W FOURTH ST., SUITE 7160
SANTA ANA, CA 92701-4593

**INTERESTED PARTY**
JASON FRANK LAW, PLC
C/O JASON M FRANK, ESQ.
FRANK SIMS STOLPER LLP
19800 MACARTHUR BLVD, STE 855
IRVINE, CA 92612-8444

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to
F.R.Civ.P. 5 and/or controlling LBR, on **December 21, 2021**, I served the following persons and/or entities by personal
delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission
and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the
judge will be completed no later than 24 hours after the document is filed.
**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 21, 2021 | Cynthia Bastida | /s/ Cynthia Bastida |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

4828-3049-9260, v. 1

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **INTERESTED PARTY COURTESY NEF:** James C Bastian    jbastian@shulmanbastian.com
- **ATTORNEY FOR DEFENDANT TRACKSIDE PERFORMANCE, LLC; DEFENDANT ANDREW S DAVIS; AND DEFENDANT ROBERT FAIETA DBA COMPETITION MOTORSPORTS:** Christopher L Blank chris@chrisblanklaw.com
- **ATTORNEY FOR DEFENDANT DILLANOS COFFEE ROASTERS, INC:** Mark S Bostick mbostick@wendel.com, bankruptcy@wendel.com
- **ATTORNEY FOR INTERESTED PARTY AND DEFENDANT EISENHOWER CARLSON PLLC:** Steven Casselberry    s.casselberry@mpglaw.com, j.jacobs@mpglaw.com
- **[DECEASED] ATTORNEY FOR DEFENDANT ALEDMI, LLC; DEFENDANT ALAN CHAFFEE; DEFENDANT EDWIN SPAUNHURST; AND DEFENDANT MICHAEL WHITE:** Lei Lei Wang Ekvall    lekvall@swelawfirm.com, lgarrett@swelawfirm.com; gcruz@swelawfirm.com; jchung@swelawfirm.com
- **ATTORNEY FOR DEFENDANT SILVER STAR SOUNDS & COMMUNICATIONS, INC:** Jeffrey I Golden jgolden@wgllp.com, kadele@wgllp.com; cbmeeker@gmail.com; lbracken@wgllp.com; gestrada@wgllp.com
- **ATTORNEY FOR DEFENDANTS THE X-LAW GROUP, PC, A PROFESSIONAL CORPORATION AND FILIPPO MARCHINO:** David B Golubchik dbg@lnbyb.com, stephanie@lnbyb.com
- **ATTORNEY FOR DEFENDANT GALLO BUILDERS, INC.:** Martin B Greenbaum    eparker@collectionlaw.com, mgreenbaum@collectionlaw.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR DEFENDANT HONDA AIRCRAFT COMPANY LLC:** Robert J Im rim@mcglinchey.com, irvineECF@mcglinchey.com
- **ATTORNEY FOR PLAINTIFF RICHARD A MARSHACK:** Richard L Kellner rlk@kellnerlaw.com, irma.c.deleon@gmail.com
- **ATTORNEY FOR INTERVENOR HRAYR SHAHINIAN:** Erick Kuylman erick.kuylman@warrenterzian.com
- **ATTORNEY FOR OTHER PROFESSIONAL JAMS, INC.:** Jessica R MacGregor jmacgregor@longlevit.com, lmyers@longlevit.com
- **ATTORNEY FOR INTERESTED PARTY AND DEFENDANT SIMEON OSBORN:** Aaron J Malo malo@sheppardmullin.com, clopez@sheppardmullin.com; abilly@sheppardmullin.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR/DEFENDANT THE X-LAW GROUP, P.C.; CREDITOR ALEXIS GARDNER; CREDITOR DAMON ROGERS; DEFENDANT YOUNG BLUE LLC; DEFENDANT ELBA HERNANDEZ; DEFENDANT FILIPPO MARCHINO; DEFENDANT SANDY LE:** Filippo Marchino fm@xlawx.com, tc@xlawx.com; sg@xlawx.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Judith E Marshack jmarshack@marshackhays.com, jmarshack@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR DEFENDANT ALEDMI, LLC; DEFENDANT ALAN CHAFFEE; DEFENDANT EDWIN SPAUNHURST; AND DEFENDANT MICHAEL WHITE:** Robert S Marticello Rmarticello@swelawfirm.com, gcruz@swelawfirm.com; lgarrett@swelawfirm.com; jchung@swelawfirm.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Meghan C Murphey meghan@themurpheylawyers.com, lorraine@themurpheylawyers.com
- **MEDIATOR ALAN I NAHMIAS:** Alan I Nahmias anhmias@mbn.law, jdale@mbnlawyers.com
- **ATTORNEY FOR CREDITOR STOLL, NUSSBAUM & POLAKOV:** Karen S. Naylor    Becky@ringstadlaw.com, Karen@ringstadlaw.com; arlene@ringstadlaw.com
- **ATTORNEY FOR INTERESTED PARTY AND DEFENDANT MICHAEL AVENATTI AND DEFENDANT AVENATTI & ASSOCIATES APC:** Ryan D O'Dea    rodea@shulmanbastian.com, LGauthier@shulmanbastian.com
- **ATTORNEY FOR DEFENDANT HONDA AIRCRAFT COMPANY LLC:** Brian A Paino bpaino@mcglinchey.com, irvineECF@mcglinchey.com
- **ATTORNEY FOR DEFENDANT HPPW, LLC:** Aditi Paranjpye aparanjpye@cairncross.com, gglosser@cairncross.com; AParanjpye@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                    **F 9013-3.1.PROOF.SERVICE**

4828-3049-9260, v. 1

- **ATTORNEY FOR DEFENDANT FOSTER GARVEY PC, AS SUCCESSOR-IN-INTEREST TO FOSTER PEPPER PLLC, AND DEFENDANT CHRISTINE AVENATTI CARLIN:** Misty A Perry Isaacson    misty@ppilawyers.com, ecf@ppilawyers.com; perryisaacsonmr51779@notify.bestcase.com
- **ATTORNEY FOR DEFENDANT VINCENT BUILDERS, INC:** Eric S Pezold epezold@swlaw.com, knestuk@swlaw.com
- **ATTORNEY FOR DEFENDANTS THE X-LAW GROUP, PC, A PROFESSIONAL CORPORATION AND FILIPPO MARCHINO:** Kurt Ramlo kr@lnbyg.com, kr@ecf.inforuptcy.com
- **ATTORNEY FOR CREDITOR EDWARD M. RICCI, P.A.:** David M Reeder    david@reederlaw.com, secretary@reederlaw.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK (TR):** Jack A. Reitman jareitman@landaufirm.com, srichmond@landaufirm.com; vrichmond@landaufirm.com; avedrova@landaufirm.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK (TR):** John P. Reitman jreitman@landaufirm.com, hrichmond@landaufirm.com; vrichmond@landaufirm.com; avedrova@landaufirm.com
- **INTERESTED PARTY COURTESY NEF:** Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com
- **INTERESTED PARTY COURTESY NEF:** Monica Rieder    mrieder@landaufirm.com; vrichmond@landaufirm.com; avedrova@landaufirm.com; hrichmond@landaufirm.com
- **INTERESTED PARTY COURTESY NEF:** Nanette D Sanders    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **ATTORNEY FOR DEFENDANT ALEDMI, LLC; DEFENDANT ALAN CHAFFEE; DEFENDANT EDWIN SPAUNHURST; AND DEFENDANT MICHAEL WHITE**: Michael Simon    msimon@swelawfirm.com, lgarrett@swelawfirm.com; gcruz@swelawfirm.com; jchung@swelawfirm.com
- **ATTORNEY FOR DEFENDANT VINCENT BUILDERS, INC.:** Andrew Still    astill@swlaw.com, kcollins@swlaw.com
- United States Trustee (SA): United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** David Wood    dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    **F 9013-3.1.PROOF.SERVICE**

4828-3049-9260, v. 1

**EXHIBIT 16**

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  TINHO MANG, #322146
   tmang@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  General Counsel for Chapter 7 Trustee,
   RICHARD A. MARSHACK

7

8                  UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11 In re                                  Case No. 8:19-bk-13560-SC

12 EAGAN AVENATTI, LLP,                    Chapter 7

13         Debtor.                         ORDER GRANTING MOTION TO
                                           APPROVE AMENDMENT TO
14                                         SUBORDINATION AGREEMENT RE:
                                           JUDGMENT LIEN HELD BY JASON
15                                         FRANK LAW AND TERMS OF
                                           EMPLOYMENT OF RICHARD L.
16                                         KELLNER AS SPECIAL LITIGATION
                                           COUNSEL
17
                                           [NO HEARING REQUIRED]
18
                                           [UNOPPOSED MOTION – NO SERVICE
19                                         OF PROPOSED JUDGMENT OR
                                           LODGMENT PERIOD REQUIRED
20                                         PURSUANT TO LBR 9021-1(b)(4)]

21         The Court has read and considered the Motion to Approve the Amendment to

22 Subordination Agreement re: Judgment Lien Held by Jason Frank Law and Terms of Employment

23 of Richard L. Kellner as Special Litigation Counsel, filed by Richard A. Marshack, in his capacity

24 as Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate of Eagan Avenatti, LLP, filed on

25 December 21, 2021, as Dk. No. 335 ("Motion"). The Court finds, based upon the Declaration that

26 no Party Requested a Hearing on Motion, filed by Tinho Mang, Esq. on January 19, 2022, as Dk.

27 No. 346, that proper notice of the Motion has been given. Accordingly, the Court finds good cause

28 to grant the Motion, and the Court enters its Order as follows:

FILED & ENTERED

JAN 21 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall      DEPUTY CLERK

1

IT IS ORDERED:

1.      The Motion is granted;[1]

2.      The Agreement, which is attached as Exhibit 1 to the Motion is authorized;

3.      This order supersedes and modifies the Kellner Employment Order with the revised compensation terms as follows:

- Kellner shall be entitled to be compensated the lesser of: (a) $400,000; or (b) Kellner's actual invoiced fees at Kellner's reduced hourly rate of $825 per hour for services incurred in connection with collecting Debtor's receivables;

- Kellner shall also be subject to a cap that it shall not receive compensation in excess of 40% of gross recoveries.

4.      Kellner's employment remains subject to 11 U.S.C. §§ 327, 330, and 331.

5.      The Court will determine the amount of compensation that is reasonable and which benefits the estate, and no compensation shall be paid absent specific order of the Court.

<div align="center">###</div>

Date: January 21, 2022

Scott C. Clarkson
United States Bankruptcy Judge

---

[1] All terms not defined herein are used as they are defined in the Motion.

<div align="center">2</div>

4892-6042-2921v.1/1015-131

## <u>PROOF OF SERVICE</u>

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 625 Fair Oaks Avenue, Suite 390, South Pasadena, CA 91030.

On June 19, 2023, I served the following document(s) described as **PETITIONER ALEXIS GARDNER'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF REPLY BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT** on the interested parties in this action as follows:

BRETT A. SAGEL
Assistant United States Attorney
Major Frauds Section
411 West Fourth Street Suite 8000
Santa Ana, CA 92701
Telephone: 714-338-3598
Faximile: 714-338-3708
Email: brett.sagel@usdoj.gov

DANIEL G. BOYLE
Assistant United States Attorney
Asset Forfeiture Section
312 North Spring Street, 14th Floor
Los Angeles, CA 90012
Telephone: 213-894-2426|
Facsimile: 213-894-0142
E-Mail: daniel.boyle2@usdoj.gov

RANEE KATZENSTEIN
Assistant United States Attorney
Major Frauds Section
312 North Spring Street 11th Floor
Los Angeles, CA 9001
Telephone: 213-894-2432
Faximile: 213-894-0141
Email: ranee.katzenstein@usdoj.gov

Attorneys for Plaintiff
United States of America

Attorneys for Plaintiff
United States of America

**[ X ] BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons identified in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with my firm's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 19, 2023, at South Pasadena, California.

_____
Declarant – Suzy Garcia

PETITIONER ALEXIS GARDNER'S REQUEST FOR JUDICIAL NOTICE