JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
LANDAU LAW LLP
141 S. Windsor Blvd.
Los Angeles, California 90004
Telephone: (310) 557-0050
          (310) 691-7737
Facsimile: (310) 557-0056

Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | Case No. 8:19-cr-00061-JVS<br><br>**NOTICE OF ERRATA AND COMPLETE VERSION OF REPLY BRIEF OF RICHARD A. MARSHACK, IN HIS CAPACITY AS THE TRUSTEE OF THE CHAPTER 7 BANKRUPTCY ESTATE OF EAGAN AVENATTI, LLP, REGARDING ESTATE'S INTEREST IN HONDA JET; SUPPORTING DECLARATION OF JOHN P. REITMAN**<br><br>**Hearing Date, Time, and Location:**<br>Date:   June 26, 2023<br>Time:   9:00 a.m.<br>Place:  Courtroom 10C<br>        411 West 4th Street<br>        Santa Ana, CA 92701 |

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    **PLEASE TAKE NOTICE** that, on June 19, 2023, Richard A. Marshack, the

2    trustee of the chapter 7 bankruptcy estate of Eagan Avenatti LLP, filed his *Reply*

3    *Brief of Richard A. Marshack, in his Capacity as the Trustee of the Chapter 7*

4    *Bankruptcy Estate of Eagan Avenatti, LLP, Regarding Estate's Interest in Honda Jet;*

5    *Supporting Declaration of John P. Reitman* (the "Reply") [Docket No. 1106], and

6    inadvertently omitted the exhibits to the supporting declaration of John P. Reitman.

7    A complete version of the Reply, containing all of the exhibits, is attached hereto.

8

9    DATED: June 27, 2023                    Respectfully Submitted,
                                             Landau Law LLP
10

11                                           By: _____/s/ John P. Reitman_____
                                             John P. Reitman, Special Litigation Attorneys
12                                           for Richard A. Marshack, Trustee of the
                                             Chapter 7 Bankruptcy Estate of Eagan
13                                           Avenatti, LLP
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
LANDAU LAW LLP
141 S. Windsor Blvd.
Los Angeles, California 90004
Telephone: (310) 557-0050
          (310) 691-7737
Facsimile: (310) 557-0056

Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 8:19-cr-00061-JVS |
|---|---|
| Plaintiff, | **REPLY BRIEF OF RICHARD A. MARSHACK, IN HIS CAPACITY AS THE TRUSTEE OF THE CHAPTER 7 BANKRUPTCY ESTATE OF EAGAN AVENATTI, LLP, REGARDING ESTATE'S INTEREST IN HONDA JET; SUPPORTING DECLARATION OF JOHN P. REITMAN** |
| vs. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant. | |

**Hearing Date, Time, and Location:**
Date:   June 26, 2023
Time:   9:00 a.m.
Place:  Courtroom 10C
        411 West 4th Street
        Santa Ana, CA 92701

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

A.     Respective Contributions of Claimants' Funds to the Honda Jet...........2

    1.     EA Funds Transferred to Honda for the Honda Jet
       ($1,360,000)...........................................................................2

    2.     Gardner Funds Transferred to Honda for the Honda Jet
       ($1,675,000)...........................................................................6

    3.     Spring Creek Funds Allegedly Transferred to Honda for
       the Honda Jet (None Proven).......................................................6

B.     The Estate's Claim Should Include The Attorneys' Fee Portion
    of the $2.5 Million Transfer.............................................................8

C.     Gardner Should Receive a Pro Rata Distribution Based on the
    Amount of Her Funds Contributed to the Honda Jet ($1,675,000) .....13

D.     No Distribution Should Be Made to Spring Creek Until After the
    Estate's and Gardner's Claims Have Been Paid in Full .......................14

E.     Because JFL's Judgment Lien Was Created After the
    Commission of the Crime at Issue, JFL's Interest Is Not Superior
    to the Government's.......................................................................15

F.     Conclusion...................................................................................16

1

# TABLE OF AUTHORITIES

2

CASES

3

4

*Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*,
    52 Cal. App. 4th 1 (1997) ......................................................................... 9

5

*In re Gonzalez, Inc.*,
    2006 Bankr. LEXIS 4806 (B.A.P. 9th Cir. Oct. 27, 2006) ........................... 11, 12

6

7

*Jeffry v. Pounds*,
    67 Cal. App. 3d 6 (1977) ......................................................................... 9

8

*In re Par 5 Prop. Invs., LLC*,
    2022 Bankr. LEXIS 3045 (Bankr. E.D. Cal. Oct. 26, 2022) ......................... 11

9

10

*Phillips Chiropractic v. Ennix*,
    2009 Cal. App. Unpub. LEXIS 7297 (Sep. 10, 2009) ................................. 12

11

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., Inc.*,
    6 Cal. 5th 59 (2018) ................................................................................ 9

12

13

*United States v. Bank*,
    2022 U.S. Dist. LEXIS 220303 (E.D. Va. Dec. 6, 2022) ............................ 15

14

*United States v. MM MR RM Corp.*,
    880 F. Supp. 2d 1109 (W.D. Wash. 2012) ................................................ 15

15

16

*United States v. Sohrab Sharma*,
    2023 U.S. Dist. LEXIS 16389 (S.D.N.Y. Jan. 31, 2023) ............................ 15

17

18

STATUTES

19

21 U.S.C. § 853(n)(6)(A) ............................................................................ 15

20

Cal. Code Civ. Proc. § 1021 ........................................................................ 11

21

22

RULES

23

California Rule of Professional Conduct 4-100(A)(2) .................................... 12

24

25

26

27

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE COURT AND ALL PARTIES IN INTEREST AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Richard A. Marshack (the "Trustee"), the trustee of the chapter 7 bankruptcy estate (the "Estate") of Eagan Avenatti LLP ("EA"), hereby respectfully submits his brief regarding the respective claims of the Estate and claimants Alexis Gardner ("Gardner"), Spring Creek Research, LLC ("Spring Creek"), and Jason Frank Law, PLC ("JFL"), to the Honda aircraft with tail number N227WP and associated property that is the subject of the Court's August 9, 2022 *Preliminary Order of Forfeiture* [Docket 975] (collectively, the "Honda Jet").

    A.    <u>Respective Contributions of Claimants' Funds to the Honda Jet</u>

Three of the claimants – the Estate, Gardner, and Spring Creek – essentially base their claims on the amount of their funds that were paid to Honda Aircraft Company, LLC ("Honda") for the Honda Jet. As set forth below, the present evidence supports a finding that $1,360,000 of the funds that were paid to Honda for the Honda Jet came from the Estate; $1,675,000 of the funds for the Honda Jet came from Gardner; and the amount of funds (if any) that came from Spring Creek has not been established (but could not, under any circumstances, be anywhere close to the $2,335,000 that Spring Creek has claimed).

        1.    **EA Funds Transferred to Honda for the Honda Jet ($1,360,000)**

In connection with reviewing the other claimants' briefs and preparing this brief, the Trustee conducted a detailed re-examination of the underlying documents (bank statements, the agreements and related documents produced by Honda, and EA's fee agreement with Gardner) and double-checked the figures included in the Trustee's opening brief [Docket No. 1102] (the "TOB") to ensure that all amounts mentioned in the Trustee's brief are accurate and well-supported by evidence. As set forth below, the information identified in that process indicates that the amounts described in the TOB should be adjusted slightly, resulting in a total contribution of

$1,360,000 of EA funds to the Honda Jet, rather than $1,406,300 as set forth in the TOB.[1]

As set forth in the TOB, on June 2, 2014, Avenatti caused EA to transfer $525,000 of its funds to Honda.  The EA bank statement evidencing this transfer is attached as Exhibit A of the accompanying declaration of John P. Reitman (the "Reitman Declaration").[2]  At the time of that transfer, EA's former managing partner Michael Avenatti ("Avenatti"), through Avenatti & Associates, A Professional Corporation ("Avenatti & Associates"), had two separate contracts with Honda for the purchase of two separate planes, one with a contract number of 40000021 (the "-021 Contract") and one with a contract number of 40000022 (the "-022 Contract").  Reitman Declaration, Exhibit C (Bates page 22).  It appears that, of the $525,000 of EA's funds that were transferred to Honda on June 2, 2014, $350,000 was applied to one contract and $175,000 was applied to the other contract.  *Id.* (Bates pages 22-23).

The TOB identified $425,000 of the $525,000 as having been paid to Honda for the Honda Jet, based on a January 27, 2017 agreement between Avenatti & Associates and Honda under which deposits of $425,000 previously paid to Honda were credited to the purchase of the Honda Jet (the "Deposit Transfer Agreement").  Reitman Declaration, Exhibit C (Bates pages 24-25).  In fact, a further review of the documents establishes that the entire $525,000 transferred from EA to Honda in June 2014 was applied to the purchase of the Honda Jet.

---

[1]  As set forth in the TOB, the transfers of EA's funds to Honda for the Honda Jet gave EA a constructive trust interest in the Honda Jet because all of the transfers occurred at a time when EA was insolvent at least because it was not paying substantial debts to legitimate creditors as they became due, and accordingly the transfers (which were made solely for Michael Avenatti's personal benefit) were made in breach of Michael Avenatti's fiduciary duties to EA and its creditors.  TOB, pages 3-5 and 8-10.

[2]  The ultimate source of the $525,000 was two payments totaling approximately $20 million that EA received in May 2014 for fees awarded to EA in a case called *Scott v. Service Corp Int'l., et al.*, and accordingly the $525,000 consisted entirely of funds that belonged to EA.  Reitman Declaration, ¶ 3 and Exhibit B.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Two separate agreements provide for the application of all prior payments under the -021 Contract and the -022 Contract to the purchase of the Honda Jet. The Deposit Transfer Agreement provided that the deposits under the -021 Contract, which, at the time of the Deposit Transfer Agreement, totaled $425,000 (including either $175,000 or $350,000 of EA's money, apparently along with additional funds from another source) were to be credited to "Contract 40000316" – the contract under which the Honda Jet was purchased. Reitman Declaration, Exhibit C (Bates pages 24-25 and 29). Per a separate July 13, 2016 amendment/assignment between Honda, Avenatti & Associates, and Passport 420, LLC ("Passport 420") (the "Assignment Agreement"), the -022 Contract was assigned to Passport 420, LLC and became the contract under which the Honda Jet was purchased. *Id.* (Bates pages 26-27); *see also id.* (Bates page 28) (providing that the plane purchased under the -022 contract would have the N227WP tail number currently assigned to the Honda Jet). The Assignment Agreement provided that "all progress payments" previously made under the -022 Contract – which includes the remainder of EA's June 2, 2014 $525,000 payment to Honda – "shall be credited toward the purchase price to be paid by" Passport 420. *Id.* (Bates page 26). Accordingly, all of the payments made to Honda under either the -021 Contract or the -022 Contract (including the entirety of EA's funds paid to Honda in connection with those contracts) were applied to the purchase of the Honda Jet, and EA's constructive trust interest in the plane includes the entire $525,000 of EA's funds transferred to Honda on June 2, 2014.

As set forth in the TOB, on January 20, 2017, $138,800 was transferred from an EA bank account to Honda. Reitman Declaration, Exhibit D (Bates page 32). Upon further examination of the relevant EA bank statement in light of Spring Creek's claim that $1,985,000 was transferred from William Parrish or his family trust ("Parrish") to Passport 420 on January 18, 2017, however, it appears that the $138,800 came from funds that were transferred into EA's bank account on January 20, 2017 from Passport 420. *See id.* (Bates page 33) (on January 19, 2017, the

4

"Daily Balance" of the relevant EA bank account was -$10,235.45); *id.* (Bates page 30) (six transfers totaling $1,984,197.50 were made from Passport 420 to the relevant EA bank account on January 20, 2017). Accordingly, the Estate is no longer asserting a constructive trust interest in the Honda Jet based on this $138,800 transfer.

As set forth in the TOB, and as the Court well knows, on January 26, 2017, $2,500,000 was transferred from EA to Honda through conduit The X-Law Group, PC ("X-Law"), and the source of those funds was settlement proceeds EA received in connection with a matter in which it represented Gardner. Reitman Declaration, Exhibits E and F. EA's fee agreement with Gardner (the "Gardner Agreement") provided that EA was entitled to a "Contingent Fee of thirty-three percent (33%)" of any recovery obtained by EA, as well as EA's costs and expenses. Reitman Declaration, Exhibit G (Bates pages 41-42). The Gardner Agreement provided that, if the recovery was divided into multiple payments, "[t]he attorney's fees will be paid out of the initial lump sum payment" and, if that "payment is insufficient to pay the attorney's fees in full, the balance will be paid from subsequent payments . . . before any distribution to Client." *Id.* According to the government's evidence and calculations, under the Gardner Agreement, EA was entitled to a contingency fee of "$990,000 (33% of the full $3,000,000)" and costs and expenses of "approximately $71,715, which includes the costs pursuant to the Tabs records ($19,780), as well as the payment of Gardner's rent and security deposit ($51,935)" – for a total of $1,061,715. Docket No. 1000-1, ECF page 5, lines 14-25. Since the Gardner Agreement provides for at least the attorney's fee portion of this amount to be paid before Gardner receives any recovery, the Trustee could have asserted a claim for $990,000 (or even $1,061,715) out of the $2,500,000. Instead, the Trustee calculated the Estate's share of the $2,500,000 by simply multiplying that amount by the contingency fee percentage, which the Trustee believes is a reasonable and conservative method of determining the amount of the $2,500,000 payment that

5

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

constitutes the Estate's funds.  The only adjustment required to the number provided in the TOB is that the Trustee's previous calculation was based on a contingency fee of 33.3%, instead of 33.0%, yielding a slightly high figure of $832,500, instead of the correct figure of $825,000.  Accordingly, the Estate has a constructive trust interest in the Honda Jet in the amount of $825,000 in connection with the January 26, 2017 transfer of $2,500,000 from EA to Honda.

As described in the TOB, the final transfer of EA's funds to Honda occurred on June 28, 2018, when Avenatti transferred $10,000 to Honda out of EA's 10% contingency fee share of settlement proceeds received by Avenatti in a personal account.  Reitman Declaration, Exhibit H.  No adjustment is required to this amount.

Accordingly, a total of $1,360,000 of the Estate's funds were paid to Honda for the Honda Jet ($525,000 + $825,000 + $10,000).

## 2. Gardner Funds Transferred to Honda for the Honda Jet ($1,675,000)

As stated in Section I.A above, the Trustee's calculations attribute 33% (i.e., EA's contingency fee portion) of the $2,500,000 transferred to Honda on January 26, 2017 to the Estate, with the remainder being allocated to Gardner.  As noted, however, the Trustee's calculations in the TOB were slightly off due to the use of 33.3% instead of 33.0% to calculate EA's contingency fee portion, which resulted in EA's share being slightly overstated and Gardner's share being slightly understated. When Gardner's share is calculated using the correct 67% (instead of the 66.7% implicitly used in the calculation in the TOB), $1,675,000 of Gardner's funds were used to purchase the Honda Jet.

## 3. Spring Creek Funds Allegedly Transferred to Honda for the Honda Jet (None Proven)

Spring Creek has provided no evidence that any of its funds were used to purchase the Honda Jet.  While Spring Creek claims on page 16 of its brief [Docket No. 1103] (the "Spring Creek Brief") that "Spring Creek has traced its funds creating

its direct 52.7% ownership interest in the Honda Jet to its wiring of legitimate funds to Honda ($350,000) on July 7, 2016; and to Passport ($1,985,000) on January 18, 2017," that assertion is incorrect and/or unsupported in at least four ways.

First, the Spring Creek Brief contains no mention of any funds being transferred from Spring Creek to anyone else.  Instead, the funds transfers described in the Spring Creek Brief are transfers of funds from Parrish, not Spring Creek.  *See* Spring Creek Brief, page 7 (describing transfers of $350,000 and $1,985,000 "from [Parrish's] family trust account").  No explanation is given as to how transfers of Parrish's funds to third parties could give Spring Creek an equitable ownership interest in any property that may have been purchased with Parrish's funds.

Second, only one of the transfers, the transfer of $350,000 that allegedly occurred on July 7, 2016, is identified as a transfer of funds to Honda – and Spring Creek has not provided any documentary evidence that the transfer occurred or that the funds were applied to the purchase of the Honda Jet.  *See* Spring Creek Brief, page 15, lines 3-6 (citing only to Parrish's declaration to support the proposition that "[t]he evidence shows that on July 7, 2016, Mr. Parrish, on behalf of Spring Creek, wired $350,000 directly to Honda, as a down payment toward the purchase of the jet"); Docket No. 1103-1, ECF page 3, lines 1-3 ("Attached hereto as **Exhibit B** are true and correct copies of the two wire transfers I made to purchase Spring Creek's interest in the Honda Jet."); *id.*, ECF pages 24-25 (Exhibit B consists of a single page that relates solely to the $1,985,000 transfer).

Third, the only transfer of which Spring Creek has provided documentary evidence is a transfer of $1,985,000 from Parrish to Passport 420 on January 18, 2017, and Spring Creek has provided no evidence of the amount (if any) of Parrish's funds that were both subsequently transferred to Honda and applied to the purchase of the Honda Jet.  As far as the Trustee is aware, Spring Creek also has not attempted to take any discovery (e.g., from Honda or from the banks at which the relevant accounts were maintained) to obtain such evidence.  In place of actual evidence that

Landau Law LLP
Attorneys at Law
Los Angeles, California

7

any of the funds transferred from Parrish to Passport 420 were used to purchase the Honda Jet, Spring Creek simply describes the transfer from Parrish to Passport 420 and cites an assortment of California legal principles that have no bearing on the issue of whether any of Parrish's funds were transferred to Honda.  That is not sufficient to establish that any portion of the $1,985,000, much less all of it, was used to purchase the Honda Jet.

Fourth, if Spring Creek is correct that the total amount paid to purchase the Honda Jet was $4,383,605 (Spring Creek Brief, page 8, lines 4-11), it is literally impossible, in light of the actual documentary evidence, that anywhere close to $2,335,000 of Parrish's funds could have been used towards the purchase of the Honda Jet.  The documentary evidence attached to the Reitman Declaration establishes that, at a minimum, payments of $525,000 and $2,500,000 attributable to EA and Gardner were made towards the purchase of the Honda Jet – totaling $3,025,000.  Subtracting that amount from the purchase price of $4,383,605 leaves only $1,358,605 that could be attributable to other sources; meaning that even if every penny of the remaining amount was paid by Parrish (which Spring Creek has done nothing to establish), Parrish could not have contributed any more than about 30% of the funds for the Honda Jet.

In light of these numerous evidentiary deficiencies in Spring Creek's claim, the Court could properly conclude that none of Spring Creek's funds were used to purchase the Honda Jet.

## B.    The Estate's Claim Should Include The Attorneys' Fee Portion of the $2.5 Million Transfer

For the reasons set forth below, both law and equity support the conclusion that 33% of the $2,500,000 transferred from EA to Honda on January 26, 2017, constituted EA's funds.

While Gardner argues that all of the $2,500,000 transferred to Honda should be treated as Gardner's money, on the grounds that EA's fees should be deemed

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

forfeited as a result of Avenatti's misconduct,[3] fee forfeiture would not be appropriate in these circumstances under applicable California law. While Gardner is correct that courts may impose the forfeiture of fees in appropriate circumstances, the California Supreme Court has recently acknowledged that "forfeiture of compensation is, in the end, an equitable remedy." *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., Inc.*, 6 Cal. 5th 59, 89 (2018). Accordingly, "[t]he degree to which forfeiture is warranted as an equitable remedy will necessarily vary with the equities of the case." *Id.* at 90. The California Supreme Court also identified two principles underlying fee forfeiture – namely, that partial or complete forfeiture of fees is appropriate because services performed by a conflicted or otherwise unfaithful lawyer are worth less (or nothing), and that "forfeiture . . . serves as a deterrent to misconduct." *Id.* at 89-90. In keeping with the first principle, California courts have held that even where an attorney commits a severe ethical breach, the attorney may be compensated for services that were performed prior to the breach. *See, e.g., Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*, 52 Cal. App. 4th 1, 7-18 (1997) (noting that forfeiture of attorney's fees is based "on the principle that payment is not due for services not properly performed" and reversing portion of trial court order disallowing fees for services performed prior to attorney's ethical breach, despite that attorney, who was counsel for class of plaintiffs, committed severe ethical breach by making settlement proposal to defendants under which counsel personally would receive $8 to $10 million and class would receive nothing); *Jeffry v. Pounds*, 67 Cal. App. 3d 6, 12 (1977) ("Plaintiffs are entitled to compensation for services supplied preceding the breach of professional conduct. . . . The trial court should limit plaintiffs' fee to the value of services rendered before the date of the violation, whatever that date was."). Accordingly, California law does not support the forfeiture of fees where the services for which fees would be awarded

---

[3]  *See* Petitioner Alexis Gardner's Brief Regarding Disposition of One Honda Aircraft [Docket No. 1105] (the "Gardner Brief"), pages 4-6.

1  were completed before the ethical breach, forfeiture would not serve the purpose of

2  deterrence, and/or forfeiture would cause an inequitable result.

3          In the present case, all three of those factors weigh in favor of permitting the

4  Estate to recover the attorney's fee portion of the $2,500,000 transfer.  First, EA had

5  successfully performed its services for Gardner – obtaining a total settlement of

6  $3,000,000, with which Gardner has never expressed dissatisfaction – before

7  Avenatti breached his duties by misappropriating Gardner's share of the initial

8  settlement payment.  Second, as stated in the TOB, any amounts paid to the Estate

9  will be distributed to the creditors of the Estate in accordance with the Bankruptcy

10 Code, and those creditors include both Gardner and other former clients of EA who

11 were victimized in the same manner as Gardner (such as Geoffrey Johnson) but who

12 do not happen to have a claim to the Honda Jet; and there is no chance that Avenatti

13 will receive any distribution from the Estate.  Accordingly, because the Estate's

14 interests and Avenatti's are now completely divergent, and deeming EA's fees to be

15 forfeited would punish the creditors of the Estate (including former EA clients who

16 were victims of Avenatti's crimes) rather than Avenatti, forfeiture in these

17 circumstances would not serve the purpose of deterring attorney misconduct.

18 Finally, forfeiture would cause an inequitable result, because it would elevate

19 Gardner over the other victims of Avenatti's wrongdoing who are among the

20 creditors of the Estate.  In connection with determining the restitution to be paid by

21 Avenatti to Gardner, both the government and the Court acknowledged that it would

22 be inequitable to treat Gardner as though she were entitled to the entire $3 million

23 settlement amount without any offsets for EA's fees and costs.  *See* Docket No.

24 1000-1, ECF page 5, line 14, through ECF page 6, line 10 (government witness

25 deducting amounts due to EA for fees and costs from $3,000,000 settlement amount

26 for purposes of calculating Gardner's restitution and recommending restitution of

27 $1,460,785); Docket No. 1053, pages 13-14 (noting that restitution "has an equitable

28 underpinning which gives the Court the ability to avoid double recoveries or

windfalls" and approving government's recommended restitution for Gardner); Docket No. 1072, page 84 (ordering Avenatti to pay restitution of $1,432,585 to Gardner). Similarly, here, it would both provide Gardner with an undue windfall and impose an unjust cost on the other victims of Avenatti's wrongdoing to disregard the provisions of the Gardner Agreement regarding the fees and costs owed to EA. Accordingly, the Estate's claim should include the 33% contingency fee portion of the $2,500,000 transfer, rather than the entirety of the transfer being treated as Gardner's funds.

Contrary to Garder's argument,[4] under the Gardner Agreement EA's right to receive its contingency fee became fixed at the moment that EA received the settlement proceeds, and at that point the contingency fee portion of the settlement proceeds became EA's property (which EA was both entitled and obligated to remove from its trust account). A law firm and its client may define in their agreement the time at which the law firm's right to fees becomes fixed, and when the parties have entered a contingency fee agreement that time is generally the moment when a recovery is obtained. *See, e.g.,* Cal. Code Civ. Proc. § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."); *In re Par 5 Prop. Invs., LLC*, 2022 Bankr. LEXIS 3045, at *29 (Bankr. E.D. Cal. Oct. 26, 2022) ("[A]ttorney and client are free to agree to the 'measure and mode' of attorney compensation. Consequently, the attorney and client may prescribe when the attorney's interest in earned fees will 'become fixed' for purposes of CRPC 1.15(c)(2) (formerly CRPC 4-100).") (quoting Mark L. Tuft et al., *California Practice Guide: Professional Responsibility* § 9:162.3 (Rutter Group 2021)); *In re Gonzalez, Inc.*, 2006 Bankr. LEXIS 4806, at *11 (B.A.P. 9th Cir. Oct. 27, 2006) ("The Fee Agreement that Arias entered into with the

---

[4] Gardner Brief, pages 6-8.

11

Landau Law LLP
Attorneys at Law
Los Angeles, California

appellee stated that the appellee was entitled to '50% of any amount that is recovered' from the lawsuit between Arias and the debtor.  When Arias executed the settlement agreement and thereby 'recovered' $15,000, the condition precedent to the appellee's contractual right to 50 percent of its client's monetary recovery was satisfied.  In other words, the appellee's interest in its attorney's fees became due or fixed."); *Phillips Chiropractic v. Ennix*, 2009 Cal. App. Unpub. LEXIS 7297, at *10-*11 (Sep. 10, 2009) (holding that it was not wrongful for attorney to disburse his contingency fee from his trust account to himself because "[t]he portion of the settlement proceeds earned by and belonging to defendant, as the attorney, became fixed when defendant received the tortfeasor's insurance policy limits").  When settlement proceeds are received by a law firm and the law firm is entitled to a portion of the proceeds as a contingency fee under its agreement with its client, that portion of the proceeds constitutes the law firm's property and must be promptly removed from the law firm's trust account.  *See, e.g.,* Former California Rule of Professional Conduct 4-100(A)(2) ("In the case of funds belonging in part to a client and in part presently or potentially to the member or the law firm, the portion belonging to the member or law firm must be withdrawn at the earliest reasonable time after the member's interest in that portion becomes fixed."); *Gonzalez, supra,* 2006 Bankr. LEXIS 4806, at *11-*12 ("[U]pon recovery of the settlement funds, the appellee became the legal owner of the $7,500 and was entitled to withdraw the money from the [trust account]."); *Ennix, supra,* 2009 Cal. App. Unpub. LEXIS 7297, at *11 ("Defendant was duty bound not to commingle the fixed earned fees belonging to him with the remainder of the funds belonging to the client, and was required to remove the $5,000 attorney fees from the trust account at the earliest reasonable moment.").  The Gardner Agreement provided that (a) EA was entitled to a "Contingent Fee of thirty-three percent (33%)" of any recovery obtained by EA; (b) if the recovery was divided into multiple payments, "[t]he attorney's fees will be paid out of the initial lump sum payment"; and (c) if the initial lump sum payment

"is insufficient to pay the attorney's fees in full, the balance will be paid from subsequent payments . . . before any distribution to Client."  Reitman Declaration, Exhibit G (Bates page 41).  Accordingly, EA and Gardner agreed that EA's contingency fee would become fixed and payable in full upon receipt of the initial settlement payment.  Therefore, EA's contingency fee portion of the initial settlement payment became EA's property as soon as that payment was received, and 33% of that payment (including 33% of the $2,500,000 transferred to Honda) constituted EA's funds.

## C.   Gardner Should Receive a Pro Rata Distribution Based on the Amount of Her Funds Contributed to the Honda Jet ($1,675,000)

As acknowledged in the TOB, Gardner has an interest in the Honda Jet that is equal in priority to the Estate's interest, since both are constructive trust interests arising from the wrongful use of their funds to purchase the Honda Jet.  Although the Gardner Brief does not acknowledge it, the Estate and Gardner are also similarly situated with regard to the availability of other sources of recovery.  Just as the Trustee has done, Gardner could assert litigation claims for the return of her portion of the settlement funds paid to Honda.  Such claims likely are not mentioned in the Gardner Brief for the same reason that Gardner has not asserted them – because at least some of those claims would be against the very law firm who is currently representing her.  Gardner likely has claims against that law firm, X-Law, for its participation in the diversion of Gardner's portion of the settlement proceeds, and against Honda for its ultimate receipt of the funds.  To the extent that any claims against Honda are now time-barred, Gardner would have additional claims against X-Law for its malpractice in failing to advise her to pursue such claims.

Gardner and the Estate should therefore receive first-priority payments equivalent to the proportion of their funds used to purchase the Honda Jet, with Gardner's share based on the 67% of the $2,500,000 transfer that constituted her funds (i.e., $1,675,000).  (While the Gardner Brief seeks to inflate Gardner's claim

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

by the addition of approximately $1.5 million in interest, the Gardner Brief cites no authority for the proposition that payment of interest is appropriate in these circumstances, and equity dictates that all claimants should receive full payment of the principal amount of their claims before an award of interest could be considered.)

Under the adjusted figures described herein, a total of $3,035,000 of the Estate's and Gardner's funds were paid to Honda for the Honda Jet, with the Estate contributing 45% of that amount and Gardner contributing 55% of that amount. Accordingly, under the law cited in the TOB, the Honda Jet should be sold, and 45% of the proceeds (i.e., the net proceeds remaining after payment of costs, etc.) should be distributed to the Trustee and 55% of the proceeds should be distributed to Gardner.

**D.**   **No Distribution Should Be Made to Spring Creek Until After the Estate's and Gardner's Claims Have Been Paid in Full**

Unlike the Estate and Gardner, Spring Creek does not have an interest in the Honda Jet that arose as a result of a crime committed by Avenatti. To the extent that any of Spring Creek's funds were transferred to Honda, including after passing through Avenatti's hands, for the purchase of the Honda Jet, such transfers were not wrongful, because that was the exact result Spring Creek intended and desired. To the extent that any of Spring Creek's funds were transferred to Avenatti and were <u>not</u> transferred to Honda, that may have been wrongful, but by definition it would not result in Spring Creek having any trust interest in the Honda Jet.

Accordingly, no distribution should be made to Spring Creek until after the Estate and Gardner have received full repayment of the amounts of their funds that were paid to Honda for the Honda Jet ($1,360,000 and $1,675,000, respectively). If substantial funds remain after the Estate's and Gardner's funds are fully repaid, the Court should require Spring Creek to provide admissible evidence regarding the amount of its own funds (if any) that were paid to Honda for the Honda Jet.

/ / /

14

E.   **Because JFL's Judgment Lien Was Created After the Commission of the Crime at Issue, JFL's Interest Is Not Superior to the Government's**

JFL's claim, which is based on a judgment lien against Avenatti's personal property, is not superior to the government's for purposes of this forfeiture proceeding because it arose after the commission of the crime at issue.  Under the criminal forfeiture statute, a claimant's interest is superior to the government's only if the relevant "right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture under this section."  21 U.S.C. § 853(n)(6)(A).  Accordingly, while a judgment lien can be an interest that is superior to the defendant's interest, it will only trump the government's interest if it arose before the commission of the crimes at issue.  *See, e.g., United States v. Sohrab Sharma*, 2023 U.S. Dist. LEXIS 16389, at *8 (S.D.N.Y. Jan. 31, 2023) ("Under § 853(c), the Government's interest vested upon the commission of the acts constituting the fraud, which took place approximately from July 2017 to April 2018.  Any interest Claimants gained in the Seized ETH as a result of the judgment liens vested years later.  The Government's interest is superior under § 853(n)."); *United States v. Bank*, 2022 U.S. Dist. LEXIS 220303, at *5-*6 (E.D. Va. Dec. 6, 2022) (holding that claimant lacked an interest in forfeited property because his judgment liens arose after the commission of the acts giving rise to forfeiture); *United States v. MM MR RM Corp.*, 880 F. Supp. 2d 1109, 1111 (W.D. Wash. 2012) (holding that attorneys did not have a right to forfeited property because their attorney liens attached to the property after the commission of the crime at issue).  In the present case, as noted in the TOB, the crime of which Avenatti was convicted that relates to the Honda Jet is wire fraud, pertaining to a wire transfer made on June 18, 2018.  Docket No. 974, pages 6-7; Docket No. 961, pages 19-21; Docket No. 1054.  According to JFL's brief, JFL's judgment lien did not attach to Avenatti's personal

15

property until "December 6, 2018 when the Notice of Judgment Lien was filed with the California Secretary of State."  Docket No. 1104, page 2, lines 25-27. Accordingly, JFL's interest is not superior to the government's and JFL is not entitled to a distribution from the proceeds of the Honda Jet.

### F.   Conclusion

For the reasons set forth above, the Trustee respectfully requests that the Court order the government to sell the Honda Jet and distribute the proceeds of the sale pro rata to the Estate and Gardner, with the Estate receiving 45% of the proceeds and Gardner receiving 55% of the proceeds.

DATED: June 19, 2023

Respectfully Submitted,
Landau Law LLP


By: _____/s/ John P. Reitman_____
John P. Reitman, Special Litigation Attorneys for Richard A. Marshack, Trustee of the Chapter 7 Bankruptcy Estate of Eagan Avenatti, LLP

16

# **DECLARATION OF JOHN P. REITMAN**

I, John P. Reitman, hereby declare as follows:

1.      I am a limited liability partner in Landau Law LLP, which serves as special litigation counsel to Richard A. Marshack (the "Trustee") in his capacity as the Chapter 7 trustee for the bankruptcy estate (the "Estate") of Eagan Avenatti, LLP ("EA").  Except as otherwise stated, the facts set forth in this declaration are true of my own personal knowledge and, if called as a witness, I could and would competently testify thereto under oath.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the June 2014 statement for EA's bank account ending in -8461.  Exhibit A and all of the other EA bank documents attached to this declaration were obtained pursuant to a subpoena served on the bank and each such document as obtained was supported by a declaration signed under penalty of perjury by a custodian of the bank's business records testifying that the document was a true and correct copy of the bank's business record kept in the ordinary course of its business.

3.      Attached hereto as **Exhibit B** are true and correct copies of May 2014 and June 2014 statements for EA's bank accounts ending in -8461 and -2699.  The handwritten annotations on the statements are mine.  As indicated on the statements, and as I am aware from a review of other documents and the analysis of EA's former receiver, the ultimate source of the $525,000 transferred from EA to Honda Aircraft Company, LLC ("Honda") on June 2, 2014 was two payments totaling approximately $20 million that EA received in May 2014 for fees awarded to EA in a case called *Scott v. Service Corp Int'l, et al.*, and accordingly the $525,000 consisted entirely of funds that belonged to EA.

4.      Attached hereto as **Exhibit C** are true and correct copies of documents produced to the Trustee by Honda in the Trustee's litigation against Honda, *Marshack v. Honda Aircraft Company, LLC*, Adversary Proceeding No. 8:20-01150-SC in the United States Bankruptcy Court for the Central District of California.

17

5.      Attached hereto as **Exhibit D** is a true and correct copy of the January 2017 statement for EA's bank account ending in -2851.

6.      Attached hereto as **Exhibit E** is a true and correct copy of the January 2017 statement for EA's bank account ending in -8671.

7.      Attached hereto as **Exhibit F** is a document that I am informed and believe is a true and correct copy of the January 2017 statement for a bank account of The X-Law Group, PC ending in -7608.

8.      Attached hereto as **Exhibit G** is a copy of the fee agreement between EA and Alexis Gardner ("Gardner").  Exhibit G was attached to Gardner's arbitration demand against EA and I am informed and believe it is a true and correct copy of that agreement.

9.      Attached hereto as **Exhibit H** are documents that I am informed and believe are true and correct copies of a bank statement and wire transfer information relating to a bank account of Michael Avenatti ending in -3512.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 19, 2023, at Las Vegas, Nevada.


_____
John P. Reitman

18

EXHIBIT A



**CALIFORNIA BANK & TRUST**

P.O. Box 489, Lawndale, CA 90260-0489

**Statement of Accounts**
Page 1 of 18
This Statement: June 30, 2014
Last Statement: May 30, 2014

Account ▮▮▮▮8461

**DIRECT INQUIRIES TO:**
Customer Service 1 (800) 400-6080

0053773                    4182-06-1000-CBT-PC0023-00131

EAGAN AVENATTI LLP
OPERATING ACCOUNT
450 NEWPORT CENTER DR FL 2
NEWPORT BEACH CA 92660-7610

Irvine Branch
1900 Main St.  Suite 100
Irvine, CA 92614-0000
(949) 223-7500

---

California Bank & Trust, as a part of Zions Bancorporation, has received 12 Greenwich Excellence Awards for business banking. The awards include the national award for overall satisfaction in small business banking and the national award for overall satisfaction in middle market banking.

NO PAPERWORK. MORE CONVENIENCE.
Online banking from your computer, smartphone, or tablet.
Quick secure access. Learn more at calbanktrust.com.

---

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Business Advantage Checking | ▮▮▮▮8461 | $40,161.87 | |

## BUSINESS ADVANTAGE CHECKING ▮▮▮▮8461                                    105  131

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|
| 1,504,540.54 | 5,881,278.67 | 5,810,149.67 | 1,535,507.67 | 40,161.87 |

### 9 DEPOSITS/CREDITS

| Date | Amount | Description |
|---|---|---|
| 06/02 | 1,500,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000007913 2305405494 |
| 06/02 | 44,284.44 | AT&T PAYMENTS O053030909676SSREF # 014153000374859 1105328704 |
| 06/02 | 27,411.42 | REMOTE DEPOSIT 5353097622 |
| 06/09 | 7,828.45 | REMOTE DEPOSIT 5353099019 |
| 06/13 | 3,000,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006847 2305101226 |
| 06/18 | 200,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000001692 2304401462 |
| 06/26 | 900,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006446 2304000504 |
| 06/30 | 200,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000007612 2304400166 |
| 06/30 | 1,754.36 | REMOTE DEPOSIT 5353089160 |

### 49 CHARGES/DEBITS

| Date | Amount | Description |
|---|---|---|
| 06/02 | 525,000.00 | WIRE/OUT-2014060200003678;BNF HONDA AIRCRAFT COMPANY LLC 1301800997 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 221,112.01 | WIRE/OUT-2014060200037728;BNF EDWARD M. RICCI 1301801007 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 979,870.10 | WIRE/OUT-2014060200003755;BNF EDWARD M. RICCI 1301801015 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 19.95 | Intuit Acct Fee INTUITP REF # 014153000426436 1105331719 |
| 06/02 | 2,735.91 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014153000548959 1105332176 |
| 06/02 | 31,738.89 | IRS USATAXPYMT 270455375480357REF # 014153000574415 1105332410 |
| 06/03 | 7,507.57 | EMPLOYMENT DEVEL EDD EF 641008896 REF # 014154001761392 1104550930 |

EXHIBIT A
1


EQUAL HOUSING LENDER      MEMBER FDIC

## An Easy Approach To Balancing Your Account

**To reconcile your checkbook balance to your statement balance:** Mark off each entry in your check register that has been charged to your account during the statement period. List the checks you have written, but are not yet charged to your account in the "Checks Outstanding" column below. Then, follow the instructions in lines 1 through 10.

| CHECKS OUTSTANDING | |
|---|---|
| Check Number | Check Amount |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL: | |

*Transfer to Line 9.*

| CHECKBOOK BALANCE | |
|---|---|
| 1.  LIST your checkbook balance. | |
| 2.  ADD any deposits or other credits listed on the front of this statement which you have not recorded in your checkbook (such as payroll credits or other direct electronic deposits). | |
| 3.  SUBTOTAL: | |
| 4.  SUBTRACT any charges listed on the front of this statement which you have not recorded (such as service charges, automatic transfers, electronic transactions, etc.). | |
| 5.  ADJUSTED CHECKBOOK BALANCE: | |

*This balance should agree with line 10, below.*

| STATEMENT BALANCE | |
|---|---|
| 6.  LIST your current statement balance as shown on the front of this statement. | |
| 7.  ADD deposits made, but not shown on this statement. | |
| 8.  SUBTOTAL: | |
| 9.  SUBTRACT total from "Checks Outstanding." | |
| 10.  ADJUSTED STATEMENT BALANCE: | |

*This balance should agree with line 5, above.*

**PROMPTLY EXAMINE YOUR STATEMENT AND REPORT ANY PROBLEM**
You must promptly examine your account statements and report any discoverable errors, unauthorized signatures, alterations, missing endorsements, or unauthorized transfers. Failure to do so may result in your loss of certain rights or remedies. For example, you must identify the discoverable alteration or forgery of a check within 30 days of us sending you, or making available to you, the statement reflecting that check, and you must also immediately report to us what you find. Businesses should check their account transactions daily, for which various online services are available. For additional information, please see your deposit account agreement and application service agreement(s) for details. See also the consumer disclosures below.

**CONSUMER ACCOUNTS: IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS OR MONEY RESERVE TRANSACTIONS**
If you think your statement is wrong, or if you need more information about a transfer on this statement or on a receipt, please telephone us or write us. Please use the telephone number or address listed on the front of this statement to contact us as you can. **We must hear from you no later than 60 days after we sent or made available the FIRST statement on which the problem or error appeared. The provisions in this paragraph do not apply to business or other non-personal accounts. The owners of those accounts must settle all unauthorized transactions or errors within 24 hours of receipt of the item posting in order to be returned.**

1.  Tell us your name and account number.
2.  Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3.  Tell us the dollar amount of the suspected error.

We will investigate your complaint and correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**FOR MONEY RESERVE ACCOUNTS:**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR PERSONAL CREDIT LINE**
*(This is a Summary of Your Billing Rights).*
If you think your statement is wrong, or you need more information about a transaction on your statement, write us at the address on the front of this statement as soon as possible. **We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared.**

You can telephone us but doing so will not preserve your rights. In your letter, give us the following information.

1.  Your name and account number.
2.  The dollar amount of the suspected error.
3.  Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question. You must notify us in writing. You can telephone us, but telephoning us will not preserve your rights. Contact us at California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

**Balance Subject to Interest Rate:** We use the method called "average daily balance", (including current transactions) to calculate the daily balance. If you have any further questions about the method and how resulting interest charges are determined, please feel free to contact us at 1-800-400-6080.

**We may report information about your Money Reserve account to credit bureaus.** Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Please notify us if we report any inaccurate information about your account(s) to a credit bureau.** Your written notice describing the specific inaccuracy should be sent to us at the following address: California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

*Thank you for banking with California Bank & Trust.*
**Become an Online Banking Customer for 24-hour account access.**
• Review account balances • Review posted transactions • Pay bills • Transfer funds
**Sign up today at www.calbanktrust.com or call 888-217-1265.**

EXHIBIT A
2

0053773-0000001-0149955



**CALIFORNIA BANK**

**T R U S T**

P.O. Box 489, Lawndale, CA 90260-0489

Page 3 of 18
June 30, 2014
EAGAN AVENATTI LLP
████████8461

Continued ...

| Date | Amount | Description |
|------|--------|-------------|
| 06/03 | 33,962.18 | BANKCARD CENTER PAYMENT 479859110118744REF # 014154001875121  1104501407 |
| 06/09 | 72,000.00 | WIRE/OUT-2014060900003589;BNF STEPHEN H KRUMM A PROFESSIONAL  1301401107 |
| 06/09 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/10 | 10,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000000061  2304600611 |
| 06/10 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004742  2304600921 |
| 06/10 | 316.12 | PAYCHEX EIB INVOICE X55452000026057REF # 014160004777175  1104706243 |
| 06/10 | 54,568.24 | BANKCARD CENTER PAYMENT 479859110118744REF # 014161005448789  1104701320 |
| 06/11 | 15,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000008469  2305200551 |
| 06/12 | 54,699.48 | PAYCHEX PAYROLL 55602400002165XREF # 014162005942318  1103604440 |
| 06/13 | 2,150,000.00 | WIRE/OUT-2014061300004116;BNF ALEDMI LLC  1302002456 |
| 06/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/13 | 700,000.00 | WIRE/OUT-2014061300004062;BNF SIMEON OSBORN  1302002448 |
| 06/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/13 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002623  2305100759 |
| 06/13 | 1,866.18 | PAYCHEX TPS TAXES 55655000005490XREF # 014164007194454  1103935719 |
| 06/13 | 6,814.85 | PAYCHEX PAYROLL 55653000000213XREF # 014164007131938  1103935502 |
| 06/13 | 39,622.39 | PAYCHEX TPS TAXES 55604600001281OXREF # 014163006683659  1103910764 |
| 06/16 | 354.24 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014167007718247  1106325241 |
| 06/16 | 2,721.09 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014167007718239  1106325233 |
| 06/17 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002012  2306100215 |
| 06/18 | 111,563.66 | WIRE/OUT-2014061800003041;BNF SUGARMAN & COMPANY, LLP  1302100832 |
| 06/18 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/18 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000003864  2304400347 |
| 06/19 | 10,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000007784  2304000383 |
| 06/24 | 52,957.30 | WIRE/OUT-2014062400002774;BNF ALEDMI LLC  1302400814 |
| 06/24 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/24 | 54,374.20 | BANKCARD CENTER PAYMENT 479859110118744REF # 014175001490967  1104101273 |
| 06/26 | 368,496.00 | WIRE/OUT-2014062600003549;BNF CASCADE CAPITAL GROUP  1302200968 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 158,729.00 | WIRE/OUT-2014062600003599;BNF MARK CALVERT  1302200990 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 15,640.00 | WIRE/OUT-2014062600003936;BNF CASCADE CAPITAL GROUP CASH BAL  1302201056 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 35.00 | STOP PAYMENT FEE |
| 06/27 | 20,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002452  2305501041 |
| 06/27 | 54,100.45 | PAYCHEX PAYROLL 55836900000729XREF # 01417700268 1592  1103508283 |
| 06/30 | 33,887.86 | PAYCHEX TPS TAXES 55842400024689XREF # 014178003367072  1103010072 |
| 06/30 | 102.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1701001242 |
| 06/30 | 25.00 | REMOTE DEPOSIT SERVICE - 1 |

**128 CHECKS PROCESSED**

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 9112 | 06/05 | 389,393.30 | 9659 | 06/02 | 71.75 | 9710* | 06/02 | 10,000.00 |
| 9599* | 06/04 | 6,084.51 | 9661* | 06/03 | 3,046.65 | 9711 | 06/02 | 25,000.00 |
| 9602* | 06/25 | 2,102.00 | 9663* | 06/02 | 33,734.27 | 9715* | 06/06 | 883.59 |
| 9603 | 06/24 | 9,713.30 | 9664 | 06/03 | 10,922.66 | 9716 | 06/04 | 290.56 |
| 9604 | 06/27 | 792.98 | 9666* | 06/10 | 26,962.39 | 9717 | 06/16 | 100.17 |
| 9625* | 06/12 | 517.36 | 9668* | 06/02 | 4,022.79 | 9718 | 06/18 | 87.92 |
| 9628* | 06/16 | 10,383.00 | 9669 | 06/02 | 319.75 | 9719 | 06/02 | 246.07 |
| 9629 | 06/16 | 55,242.97 | 9672* | 06/04 | 7,150.15 | 9720 | 06/18 | 765.00 |
| 9630 | 06/16 | 150,000.00 | 9674* | 06/04 | 2,919.41 | 9721 | 06/25 | 201.48 |
| 9631 | 06/24 | 387.00 | 9675 | 06/05 | 2,333.50 | 9722 | 06/12 | 152.90 |
| 9641* | 06/02 | 230.34 | 9676 | 06/06 | 3,500.00 | 9723 | 06/13 | 375.00 |
| 9642 | 06/03 | 10,951.86 | 9679* | 06/16 | 16,613.09 | 9724 | 06/18 | 477.20 |
| 9644* | 06/02 | 92.07 | 9684* | 06/10 | 4,039.16 | 9725 | 06/13 | 159.00 |
| 9645 | 06/03 | 341.57 | 9686* | 06/02 | 2,500.00 | 9726 | 06/16 | 220.00 |
| 9646 | 06/03 | 7,531.20 | 9687 | 06/02 | 14,275.47 | 9727 | 06/25 | 2,871.04 |
| 9648* | 06/13 | 13,536.25 | 9689* | 06/02 | 1,599.85 | 9728 | 06/13 | 839.74 |
| 9649 | 06/09 | 6,079.16 | 9690 | 06/03 | 38.99 | 9729 | 06/16 | 6,899.28 |
| 9651* | 06/05 | 3,573.91 | 9691 | 06/02 | 1,652.78 | 9730 | 06/13 | 2,317.83 |
| 9652 | 06/02 | 144.00 | 9692 | 06/04 | 16,508.89 | 9731 | 06/16 | 107.00 |
| 9653 | 06/09 | 30,672.55 | 9693 | 06/04 | 14,035.00 | 9732 | 06/18 | 8.85 |
| 9654 | 06/02 | 1,325.00 | 9701* | 06/04 | 2,551.08 | 9733 | 06/13 | 3,211.65 |
| 9655 | 06/02 | 5,814.15 | 9702 | 06/04 | 97.28 | 9734 | 06/12 | 390.00 |
| 9656 | 06/03 | 2,687.50 | 9703 | 06/16 | 500.00 | 9735 | 06/16 | 1,163.50 |
| 9657 | 06/05 | 35,888.50 | 9704 | 06/02 | 15,160.00 | 9736 | 06/11 | 10,675.46 |
| 9658 | 06/02 | 7,736.90 | 9705 | 06/03 | 4,762.43 | 9737 | 06/13 | 3,713.58 |

MEMBER FDIC

Page 4 of 18
June 30, 2014
EAGAN AVENATTI LLP
████ 8461
California Bank & Trust

Continued ...

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 9739* | 06/12 | 2,103.90 | 9757 | 06/27 | 231.86 | 9781 | 06/27 | 117.70 |
| 9740 | 06/13 | 1,840.67 | 9758 | 06/30 | 86.35 | 9782 | 06/27 | 413.97 |
| 9741 | 06/13 | 2,614.85 | 9759 | 06/30 | 54.86 | 9786* | 06/26 | 440.12 |
| 9743* | 06/16 | 400.00 | 9760 | 06/26 | 36,908.68 | 9788* | 06/27 | 350,000.00 |
| 9744 | 06/12 | 1,318.48 | 9761 | 06/27 | 1,091.74 | 9789 | 06/27 | 1,600.87 |
| 9745 | 06/12 | 987.85 | 9762 | 06/30 | 122.05 | 51537* | 06/03 | 3,865.99 |
| 9746 | 06/12 | 176.55 | 9764* | 06/27 | 700.00 | 51539* | 06/02 | 5,120.35 |
| 9747 | 06/13 | 2,665.75 | 9765 | 06/30 | 1,875.00 | 51540 | 06/02 | 1,162.69 |
| 9748 | 06/19 | 300.00 | 9767* | 06/26 | 2,843.95 | 51541 | 06/04 | 5,648.27 |
| 9749 | 06/13 | 634.00 | 9768 | 06/30 | 12,308.98 | 51543* | 06/03 | 1,614.65 |
| 9750 | 06/17 | 22,155.00 | 9770* | 06/27 | 639.50 | 51546* | 06/02 | 8,556.22 |
| 9751 | 06/20 | 18.00 | 9771 | 06/30 | 502.05 | 51547 | 06/11 | 7,636.38 |
| 9752 | 06/16 | 1,966.59 | 9772 | 06/26 | 59.00 | 51548 | 06/02 | 5,718.48 |
| 9752* | 06/16 | 2,262.00 | 9773 | 06/26 | 3,230.01 | 51549 | 06/02 | 852.35 |
| 9753 | 06/17 | 4,756.25 | 9777* | 06/30 | 14,293.18 | 51550 | 06/03 | 175.00 |
| 9754 | 06/17 | 282.14 | 9778 | 06/30 | 1,070.30 | 51551 | 06/02 | 3,359.90 |
| 9755 | 06/26 | 4,415.80 | 9779 | 06/30 | 53.51 | 51553* | 06/27 | 175.00 |
| 9756 | 06/27 | 1,397.49 | 9780 | 06/26 | 987.85 | | | |

* Not in check sequence

..............................................................................................................................................................

**AGGREGATE OVERDRAFT AND RETURNED ITEM FEES**

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $102.00 | $1,486.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

To learn more about our other products and services that may lower the cost of managing account overdrafts or to discuss removing overdraft coverage from your account, please contact Customer Service or visit your local branch.

..............................................................................................................................................................

**DAILY BALANCES**

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 06/02 | 1,153,185.43 | 06/11 | 353,803.22 | 06/20 | 145,690.90 |
| 06/03 | 1,065,777.18 | 06/12 | 293,210.63 | 06/24 | 28,229.10 |
| 06/04 | 1,024,527.03 | 06/13 | 355,067.85 | 06/25 | 25,925.62 |
| 06/05 | 593,337.82 | 06/16 | 106,134.92 | 06/26 | 334,050.21 |
| 06/06 | 588,954.23 | 06/17 | 73,941.53 | 06/27 | -97,211.35 |
| 06/09 | 488,000.97 | 06/18 | 156,008.90 | 06/30 | 40,161.87 |
| 06/10 | 387,115.06 | 06/19 | 145,708.90 | | |

EXHIBIT B



CALIFORNIA BANK
TRUST

P.O. Box 489, Lawndale, CA 90260-0489

**Statement of Accounts**
Page 1 of 10
This Statement: May 30, 2014
Last Statement: April 30, 2014

Account ███ 3461

**DIRECT INQUIRIES TO:**
Customer Service 1 (800) 400-6080

0043701                    4151-06-0200-CBT-PG0023-00059

EAGAN AVENATTI LLP
OPERATING ACCOUNT
450 NEWPORT CENTER DR FL 2
NEWPORT BEACH CA 92660-7610

Irvine Branch
1900 Main St.  Suite 100
Irvine, CA 92614-0000
(949) 223-7500

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Business Advantage Checking | ███ 3461 | $1,504,540.54 | |

### BUSINESS ADVANTAGE CHECKING ███ 3461                                    105  50

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|
| 248,776.31 | 24,122,672.86 | 21,597,403.29 | 1,269,505.34 | 1,504,540.54 |

### 13 DEPOSITS/CREDITS

| Date | Amount | Description |
|---|---|---|
| 05/05 | 28,593.41 | REMOTE DEPOSIT 5353099495 |
| 05/06 | 6,000.00 | WIRE/IN-2014050600000237;ORG RBC ROYAL BANK (CAYMAN) LIMITED 1301900212 |
| 05/16 | 5,000.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000003236 2305300856 |
| 05/19 | 400.00 | REMOTE DEPOSIT 5353090137 |
| 05/19 | 35,000.00 | WIRE/IN-201405190000371;ORG GLOBAL BARISTAS US LLC 1302300960 |
| 05/19 | 100,000.00 | WIRE/IN-2014051900002017;ORG MR EDWARD M RICCI;REF 005545201 1302300706 |
| 05/20 | 10,000.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000000181 2305500938 |
| 05/22 | 10,000.00 | WIRE/IN-201405220003006;ORG GLOBAL BARISTAS US LLC 1301800836 |
| 05/23 | 3,376,119.45 | WIRE/IN-2014052300001414;ORG SCOTT V SERVICE CORP INTL ET AL 1302000544 |
| 05/27 | 16,699,850.00 | WIRE/IN-2014052700006227;ORG SCOTT V SERVICE CORP INTL ET AL 1301901964 |
| 05/28 | 1,350,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006893 2304600528 |
| 05/29 | 2,500,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000009461 2304301486 |
| 05/29 | 1,710.00 | REMOTE DEPOSIT 5353060247 |

### 67 CHARGES/DEBITS

| Date | Amount | Description |
|---|---|---|
| 05/01 | 2,719.75 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014121006252269 1104049327 |
| 05/01 | 16,906.00 | Anthem BC RA-1205023 000000496582909REF # 014121006299765 1104051263 |
| 05/02 | 6,000.00 | WIRE/OUT-2014050200004170;BNF ROYAL BANK OF CANADA, GRAND CA 1302001384 |
| 05/02 | 40.00 | WIRE FEE-OUTGOING FOREIGN |
| 05/02 | 2,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000005626 2307105973 |
| 05/02 | 19.95 | Intuit Acct Fee INTUITP REF # 014122907204536 1106554118 |
| 05/06 | 12.00 | WIRE FEE-INCOMING INT CURR |
| 05/06 | 6,000.00 | WIRE/OUT-201405060003039;BNF CAMPBELLS;OBI BY ORDER OF GB A 1301900897 |
| 05/06 | 40.00 | WIRE FEE-OUTGOING FOREIGN |
| 05/06 | 10,000.00 | BANKCARD CENTER PAYMENT 47985911011874REF # 014126009017184 1104101389 |
| 05/07 | 1,500.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000001292 2304200249 |
| 05/08 | 2,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004669 2304700347 |
| 05/08 | 10,000.00 | BANKCARD CENTER PAYMENT 47985911011874REF # 014128000316811 1104001340 |
| 05/09 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004708 2304803915 |
| 05/12 | 252.10 | PAYCHEX EIB INVOICE X55062700025729REF # 014129000819333 1106206284 |
| 05/12 | 5,000.00 | BANKCARD CENTER PAYMENT 47985911011874REF # 014132001550761 1106202349 |
| 05/13 | 17,500.00 | WIRE/OUT-201405130000253 1;BNF FIRST CLEARING LLC;OBI FOR FUR 1302000758 |
| 05/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/13 | 50,000.00 | WIRE/OUT-201405130003487;BNF LISA STORIE-AVENATTI MICHAEL J 1302001015 |



MEMBER FDIC

0043701-0000001-0117609



CALIFORNIA BANK TRUST

P.O. Box 489, Lawndale, CA 90260-0489

Page 3 of 10
May 30, 2014
EAGAN AVENATTI LLP
3461

Continued ...

| Date | Amount | Description |
|---|---|---|
| 05/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/14 | 5,000.00 | BANKCARD CENTER PAYMENT 479859110118744REF # 014134002770749 1104701373 |
| 05/15 | 5,893.16 | WIRE/OUT-201405150000381;BNF MARIAM BICKNELL 1302000882 |
| 05/15 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/15 | 2,761.45 | WIRE/OUT-201405150003466;BNF MARITZA NOWOWIEJSKI 1302000900 |
| 05/15 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/16 | 2,734.56 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014136003864720 1104632916 |
| 05/16 | 34.00 | INSUFFICIENT FUNDS FEE-ITEM PD 1701001472 |
| 05/19 | 12.00 | WIRE FEE-INCOMING DOMESTIC |
| 05/19 | 12.00 | WIRE FEE-INCOMING DOMESTIC |
| 05/19 | 26,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000000091 2307404545 |
| 05/19 | 5,000.00 | BANKCARD CENTER PAYMENT 479859110118744REF # 014139004715839 1107002153 |
| 05/19 | 170.00 | INSUFFICIENT FUNDS FEE-ITEM PD 1701201465 |
| 05/20 | 40,000.00 | WIRE/OUT-201405200002922;BNF GLOBAL BARISTAS US LLC 1302400864 |
| 05/20 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/21 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000006792 2304300241 |
| 05/22 | 12.00 | WIRE FEE-INCOMING DOMESTIC |
| 05/22 | 3,200.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000003376 2304701679 |
| 05/22 | 68.00 | INSUFFICIENT FUNDS FEE-ITEM PD 1701201538 |
| 05/23 | 12.00 | WIRE FEE-INCOMING DOMESTIC |
| 05/23 | 100,000.00 | WIRE/OUT-201405230004117;BNF HENRY STOTSENBERGER 1302001177 |
| 05/23 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/23 | 500,000.00 | WIRE/OUT-201405230004221;BNF FOSTER PEPPER PLLC 1302001201 |
| 05/23 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/23 | 100,000.00 | WIRE/OUT-201405230004176;BNF GLOBAL BARISTAS US LLC 1302001189 |
| 05/23 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/23 | 2,000,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000001911 2307500713 |
| 05/27 | 12.00 | WIRE FEE-INCOMING DOMESTIC |
| 05/27 | 11,500.00 | WIRE/OUT-201405270003795;BNF SUZY QUINN 1301901278 |
| 05/27 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/27 | 400,000.00 | WIRE/OUT-201405270007230;BNF GLOBAL BARISTAS US LLC 1301902216 |
| 05/27 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/27 | 750,000.00 | WIRE/OUT-201405270007722;BNF UBS FINANCIAL SERVICES;OBI FFC 1301902329 |
| 05/27 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/27 | (i) 16,043,740.32 | ONLINE XFER TO DDA ***2699 ID: 000001269 2304807087 *funds wired to cA 2699* |
| 05/27 | 71,279.96 | BANKCARD CENTER PAYMENT 479859110118744REF # 014147007818399 1104902644 |
| 05/28 | 200,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004726 2304600537 |
| 05/28 | 900,000.00 | WIRE/XFER-2014052800003352 1301900861 |
| 05/28 | 80,961.64 | IRS USATAXPYMT 270454862809955REF # 014148008275764 1104334759 |
| 05/28 | 136,255.98 | IRS USATAXPYMT 270454860262222REF # 014148008275763 1104334758 |
| 05/29 | 19,219.65 | EMPLOYMENT DEVEL EDD EF 117864704 REF # 014149009118060 1103525178 |
| 05/29 | 25,016.66 | EMPLOYMENT DEVEL EDD EF 410638592 REF # 014149009118059 1103525177 |
| 05/29 | 18,885.09 | BANKCARD CENTER PAYMENT 479859110118744REF # 014149009418742 1103501455 |
| 05/30 | 6,447.68 | WIRE/OUT-201405300007141;BNF MARIAM BICKNELL 1301901989 |
| 05/30 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/30 | 2,770.34 | WIRE/OUT-201405300007112;BNF MARITZA NOWOWIEJSKI 1301901981 |
| 05/30 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/30 | 25.00 | REMOTE DEPOSIT SERVICE - 1 |

### 56 CHECKS PROCESSED

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 9596 | 05/12 | 17,177.01 | 9647* | 05/30 | 94,326.77 | 9699 | 05/29 | 50,708.00 |
| 9597 | 05/19 | 20,000.00 | 9662* | 05/30 | 10,000.00 | 9700 | 05/30 | 233,953.36 |
| 9598 | 05/21 | 8,700.00 | 9665* | 05/30 | 1,950.00 | 51509* | 05/02 | 3,865.98 |
| 9600* | 05/05 | 7,650.00 | 9667* | 05/28 | 77,783.98 | 51511* | 05/01 | 5,120.34 |
| 9601 | 05/05 | 14,583.33 | 9670* | 05/30 | 13,825.80 | 51512 | 05/01 | 1,162.69 |
| 9605* | 05/29 | 84.00 | 9671 | 05/30 | 39,097.68 | 51513 | 05/06 | 5,648.27 |
| 9606 | 05/29 | 84.00 | 9673* | 05/29 | 123,360.49 | 51515* | 05/01 | 1,441.99 |
| 9607 | 05/21 | 3,632.86 | 9677* | 05/29 | 4,046.60 | 51516 | 05/01 | 2,941.43 |
| 9608 | 05/20 | 2,000.00 | 9678 | 05/30 | 987.85 | 51518* | 05/01 | 4,700.55 |
| 9609 | 05/16 | 5,000.00 | 9680* | 05/27 | 2,040.21 | 51519 | 05/01 | 7,569.42 |
| 9611* | 05/16 | 1,281.93 | 9681 | 05/30 | 294.25 | 51520 | 05/02 | 5,693.14 |
| 9614* | 05/08 | 1,715.64 | 9682 | 05/29 | 6,353.73 | 51521 | 05/05 | 852.34 |
| 9623* | 05/28 | 6,185.29 | 9688* | 05/28 | 54.00 | 51522 | 05/05 | 175.00 |
| 9640* | 05/15 | 54,652.95 | 9694* | 05/29 | 350,000.00 | 51523 | 05/19 | 3,865.99 |
| 9643* | 05/30 | 291.76 | 9698* | 05/29 | 32,718.12 | 51525* | 05/16 | 5,120.34 |



MEMBER FDIC

0043761-0000002-0117610

EXHIBIT B
6

Page 4 of 10
May 30, 2014
EAGAN AVENATTI LLP
████████B461
California Bank & Trust

Continued ...

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 51526 | 05/16 | 1,162.67 | 51530 | 05/16 | 3,050.60 | 51535 | 05/16 | 852.35 |
| 51527 | 05/20 | 5,648.26 | 51532* | 05/16 | 7,744.21 | 51536 | 05/20 | 175.00 |
| 51528 | 05/15 | 1,773.44 | 51533 | 05/27 | 7,569.42 | 51542* | 05/30 | 1,710.31 |
| 51529 | 05/16 | 1,429.05 | 51534 | 05/19 | 5,693.14 | | | |

\* Not in check sequence

## AGGREGATE OVERDRAFT AND RETURNED ITEM FEES

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $272.00 | $1,384.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

To learn more about our other products and services that may lower the cost of managing account
overdrafts or to discuss removing overdraft coverage from your account, please contact Customer
Service or visit your local branch.

## DAILY BALANCES

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 05/01 | 206,214.14 | 05/12 | 135,582.79 | 05/21 | -6,067.17 |
| 05/02 | 188,595.07 | 05/13 | 68,022.79 | 05/22 | 652.83 |
| 05/05 | 193,927.81 | 05/14 | 63,022.79 | 05/23 | 676,670.28 |
| 05/06 | 178,227.54 | 05/15 | -2,118.21 | 05/27 | 90,288.37 |
| 05/07 | 176,727.54 | 05/16 | -25,527.92 | 05/28 | 39,047.48 |
| 05/08 | 163,011.90 | 05/19 | 49,118.95 | 05/29 | 1,910,281.14 |
| 05/09 | 158,011.90 | 05/20 | 11,265.69 | 05/30 | 1,504,540.54 |



MEMBER FDIC

0041701-0000002-0117610



CALIFORNIA BANK
TRUST
P.O. Box 489, Lawndale, CA 90260-0489

**Statement of Accounts**
Page 1 of 5
This Statement: May 30, 2014
Last Statement: November 29, 2013

Account 2699

**DIRECT INQUIRIES TO:**
Customer Service 1 (800) 400-6080

0043685              4151-06-0200-CBT-PC0023-00001

EAGAN AVENATTI LLP
450 NEWPORT CENTER DR FL 2
NEWPORT BEACH CA 92660-7610

Irvine Branch
1900 Main St.  Suite 100
Irvine, CA 92614-0000
(949) 223-7500

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Business Money Maximizer Plus | 2699 | $12,193,891.36 | |

### BUSINESS MONEY MAXIMIZER PLUS 2699                924  1

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|
| 0.00 | 16,043,891.36 | 3,850,000.00 | 0.00 | 12,193,891.36 |

### 3 DEPOSITS/CREDITS

| Date | Amount | Description |
|---|---|---|
| 05/16 | 0.01 | DEPOSIT 5353069675 |
| 05/27 | 16,043,740.32 | ONLINE XFER FROM DDA ***8461 ID: 000001269 2304807086 |
| 05/30 | 151.03 | INTEREST PAYMENT 0183749871 |

*funds from EA x 8461*
*funds were from Scott V.*
*Service Corp*

### 2 CHARGES/DEBITS

| Date | Amount | Description |
|---|---|---|
| 05/28 | 1,350,000.00 | ONLINE XFER TO DDA ***8461 ID: 000006893 2304600529 |
| 05/29 | 2,500,000.00 | ONLINE XFER TO DDA ***8461 ID: 000009461 2304301487 |

### 0 CHECKS PROCESSED
There were no transactions this period.

### AGGREGATE OVERDRAFT AND RETURNED ITEM FEES

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

To learn more about our other products and services that may lower the cost of managing account overdrafts or to discuss removing overdraft coverage from your account, please contact Customer Service or visit your local branch.

### DAILY BALANCES

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 05/16 | 0.01 | 05/28 | 14,693,740.33 | 05/30 | 12,193,891.36 |
| 05/27 | 16,043,740.33 | 05/29 | 12,193,740.33 | | |

MEMBER FDIC

0043685-0000001-0117369

EXHIBIT B
8

To reconcile your checkbook balance to your statement balance: Mark off each entry in your check register that has been charged to your account during the statement period. List the checks you have written, but are not yet charged to your account in the "Checks Outstanding" column below. Then, follow the instructions in lines 1 through 10.

| CHECKS OUTSTANDING | | CHECKBOOK BALANCE | |
|---|---|---|---|
| Check Number | Check Amount | 1. LIST your checkbook balance. | |
| | | 2. ADD any deposits or other credits listed on the front of this statement which you have not recorded in your checkbook (such as payroll credits or other direct electronic deposits). | |
| | | 3. SUBTOTAL: | |
| | | 4. SUBTRACT any charges listed on the front of this statement which you have not recorded (such as service charges, automatic transfers, electronic transactions, etc). | |
| | | 5. ADJUSTED CHECKBOOK BALANCE: | |
| | | *This balance should agree with line 10, below.* | |
| | | STATEMENT BALANCE | |
| | | 6. LIST your current statement balance as shown on the front of this statement. | |
| | | 7. ADD deposits made, but not shown on this statement. | |
| | | 8. SUBTOTAL: | |
| | | 9. SUBTRACT total from "Checks Outstanding." | |
| TOTAL: | | 10. ADJUSTED STATEMENT BALANCE: | |

*Transfer to Line 9.*   *This balance should agree with line 5, above.*

**PROMPTLY EXAMINE YOUR STATEMENT AND REPORT ANY PROBLEM**

You must promptly examine your account statements and report any discoverable errors, unauthorized signatures, alterations, missing endorsements, or unauthorized transfers. Failure to do so may result in your loss of certain rights or remedies. For example, you must identify the discoverable alteration or forgery of a check within 30 days of us sending you, or making available to you, the statement reflecting that check, and you must also immediately report to us what you find. Businesses should check their account transactions daily, for which various online services are available. For additional information, please see your deposit account agreement and application service agreement(s) for details. See also the consumer disclosures below.

**CONSUMER ACCOUNTS: IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS OR MONEY RESERVE TRANSACTIONS**

If you think your statement is wrong, or if you need more information about a transfer on this statement or on a receipt, please telephone or write us. Please use the telephone number or address listed on the front of this statement to contact us as you can. **We must hear from you no later than 60 days after we sent or made available the FIRST statement on which the problem or error appeared. The provisions in this paragraph do not apply to business or other non-personal accounts. The owners of those accounts must settle all unauthorized transactions or errors within 24 hours of receipt of the item posting in order to be returned.**

1. Tell us your name and account number.
2. Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**FOR MONEY RESERVE ACCOUNTS:**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR PERSONAL CREDIT LINE (This is a Summary of Your Billing Rights).**

If you think your statement is wrong, or you need more information about a transaction on your statement, write us at the address on the front of this statement as soon as possible. **We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared.**

You can telephone us but doing so will not preserve your rights. In your letter, give us the following information.
1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question. You must notify us in writing. You can telephone us, but doing so will not preserve your rights. Contact us at California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

**Balance Subject to Interest Rate:** We use the method called "average daily balance", (including current transactions) to calculate the daily balance. If you have any further questions about the method and how resulting interest charges are determined, please feel free to contact us at 1-800-400-6080.

**We may report information about your Money Reserve account to credit bureaus.** Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Please notify us if we report any inaccurate information about your account(s) to a credit bureau.** Your written notice describing the specific inaccuracy should be sent to us at the following address: California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

*Thank you for banking with California Bank & Trust.*

Become an Online Banking Customer for 24-hour account access,

• Review account balances • Review posted transactions • Pay bills • Transfer funds
Sign up today at www.calbanktrust.com or call 888-217-1265.



CALIFORNIA BANK
TRUST
P.O. Box 439, Lawndale, CA 90260-0489

Page 3 of 5
May 30, 2014
EAGAN AVENATTI LLP
2699

**INTEREST**

| | | |
|---|---|---|
| Interest Earned This Interest Period | $151.03 | Number Of Days This Interest Period     182 |
| Interest Paid Year-To-Date 2014 | $151.03 | Annual Percentage Yield Earned        0.10% |

Current interest rate is 0.100%

Interest rate changes this interest period:     Date          New Interest Rate
05/27             0.100%

MEMBER FDIC

0043685-0000002-0117570

**This page intentionally left blank**

0043685-0000002-0117570



This Statement
May 30, 2014
Page 5 of 5

California Bank & Trust    ACCOUNT #    2699

Ref# 53069675        $0.01

0043685-0000003-0117571



**Statement of Accounts**
Page 1 of 4
This Statement: June 30, 2014
Last Statement: May 30, 2014

Account 2699

**DIRECT INQUIRIES TO:**
Customer Service 1 (800) 400-6080

0053757                    4182-06-1000-CBT-PG0023-00000

EAGAN AVENATTI LLP
450 NEWPORT CENTER DR FL 2
NEWPORT BEACH CA 92660-7610

Irvine Branch
1900 Main St.  Suite 100
Irvine, CA 92614-0000
(949) 223-7500

California Bank & Trust, as a part of Zions Bancorporation, has received 12 Greenwich Excellence Awards for business banking. The awards include the national award for overall satisfaction in small business banking and the national award for overall satisfaction in middle market banking.

NO PAPERWORK. MORE CONVENIENCE.
Online banking from your computer, smartphone, or tablet.
Quick secure access. Learn more at calbanktrust.com.

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Business Money Maximizer Plus | 2699 | $3,279,200.55 | |

### BUSINESS MONEY MAXIMIZER PLUS 2699                              924   0

*proceeds were for Scott v. Service Conf Settlement – in MAY 2014*

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|
| 12,193,891.36 | 569.29 | 8,915,260.10 | 0.00 | 3,279,200.55 |

**1 DEPOSIT/CREDIT**

| Date | Amount | Description |
|---|---|---|
| 06/30 | 569.29 | INTEREST PAYMENT 0670290871 |

**7 CHARGES/DEBITS**                                      *Fraps xfered $ 8^x8461*

| Date | Amount | Description |
|---|---|---|
| 06/02 | 1,500,000.00 | ONLINE XFER TO DDA ***8461 ID: 000007913 2305405495 |
| 06/10 | 3,115,230.10 | WIRE/OUT-201406100003738,BNF GLOBAL BARISTAS US LLC 1301801060 |
| 06/10 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/13 | 3,000,000.00 | ONLINE XFER TO DDA ***8461 ID: 000006847 2305101227 |
| 06/18 | 200,000.00 | ONLINE XFER TO DDA ***8461 ID: 000001692 2304401463 |
| 06/26 | 900,000.00 | ONLINE XFER TO DDA ***8461 ID: 000006446 2304000505 |
| 06/30 | 200,000.00 | ONLINE XFER TO DDA ***8461 ID: 000007612 2304400167 |

**0 CHECKS PROCESSED**

There were no transactions this period.



MEMBER FDIC

0053757-0000001-0149908

EXHIBIT B
14

## An Easy Approach To Balancing Your Account

**To reconcile your checkbook balance to your statement balance:** Mark off each entry in your check register that has been charged to your account during the statement period. List the checks you have written, but are not yet charged to your account in the "Checks Outstanding" column below. Then, follow the instructions in lines 1 through 10.

| CHECKS OUTSTANDING | | CHECKBOOK BALANCE | |
|---|---|---|---|
| Check Number | Check Amount | 1. LIST your checkbook balance. | |
| | | 2. ADD any deposits or other credits listed on the front of this statement which you have not recorded in your checkbook (such as payroll credits or other direct electronic deposits). | |
| | | 3. SUBTOTAL: | |
| | | 4. SUBTRACT any charges listed on the front of this statement which you have not recorded (such as service charges, automatic transfers, electronic transactions, etc). | |
| | | 5. ADJUSTED CHECKBOOK BALANCE: | |
| | | *This balance should agree with line 10, below.* | |
| | | STATEMENT BALANCE | |
| | | 6. LIST your current statement balance as shown on the front of this statement. | |
| | | 7. ADD deposits made, but not shown on this statement. | |
| | | 8. SUBTOTAL: | |
| | | 9. SUBTRACT total from "Checks Outstanding." | |
| TOTAL: | | 10. ADJUSTED STATEMENT BALANCE: | |
| | | *This balance should agree with line 5, above.* | |

*Transfer to Line 9.*

**PROMPTLY EXAMINE YOUR STATEMENT AND REPORT ANY PROBLEM**

You must promptly examine your account statements and report any discoverable errors, unauthorized signatures, alterations, missing endorsements, or unauthorized transfers. Failure to do so may result in your loss of certain rights or remedies. For example, you must identify the discoverable alteration or forgery of a check within 30 days of us sending you, or making available to you, the statement reflecting that check, and you must also immediately report to us what you find. Businesses should check their account transactions daily, for which various online services are available. For additional information, please see your deposit account agreement and application service agreement(s) for details. See also the consumer disclosures below.

**CONSUMER ACCOUNTS: IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS OR MONEY RESERVE TRANSACTIONS**

If you think your statement is wrong, or if you need more information about a transfer on this statement or on a receipt, please telephone or write us. Please use the telephone number or address listed on the front of this statement to contact us as you can. We must hear from you no later than 60 days after we sent or made available the FIRST statement on which the problem or error appeared. The provisions in this paragraph do not apply to business or other non-personal accounts. The owners of those accounts must settle all unauthorized transactions or errors within 24 hours of receipt of the item posting in order to be returned.

1. Tell us your name and account number.
2. Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**FOR MONEY RESERVE ACCOUNTS:**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR PERSONAL CREDIT LINE** *(This is a Summary of Your Billing Rights).*

If you think your statement is wrong, or you need more information about a transaction on your statement, write us at the address on the front of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared.

You can telephone us but doing so will not preserve your rights. In your letter, give us the following information.

1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question. You must notify us in writing. You can telephone us, but doing so will not preserve your rights. Contact us at California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

**Balance Subject to Interest Rate:** We use the method called "average daily balance", (including current transactions) to calculate the daily balance. If you have any further questions about the method and how resulting interest charges are determined, please feel free to contact us at 1-800-400-6080.

We may report information about your Money Reserve account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Please notify us if we report any inaccurate information about your account(s) to a credit bureau. Your written notice describing the specific inaccuracy should be sent to us at the following address: California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

*Thank you for banking with California Bank & Trust.*

**Become an Online Banking Customer for 24-hour account access.**

• Review account balances  • Review posted transactions  • Pay bills • Transfer funds
**Sign up today at www.calbanktrust.com or call 888-217-1265.**

0053737-0000001-0149908



CALIFORNIA BANK
TRUST

P.O. Box 489, Lawndale, CA 90260-0489

Page 3 of 4
June 30, 2014
EAGAN AVENATTI LLP
2699

## AGGREGATE OVERDRAFT AND RETURNED ITEM FEES

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

To learn more about our other products and services that may lower the cost of managing account overdrafts or to discuss removing overdraft coverage from your account, please contact Customer Service or visit your local branch.

## DAILY BALANCES

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 06/02 | 10,693,891.36 | 06/13 | 4,578,631.26 | 06/26 | 3,478,631.26 |
| 06/10 | 7,578,631.26 | 06/18 | 4,378,631.26 | 06/30 | 3,279,200.55 |

## INTEREST

| | | | |
|---|---|---|---|
| Interest Earned This Interest Period | $569.29 | Number Of Days This Interest Period | 31 |
| Interest Paid Year-To-Date 2014 | $720.32 | Annual Percentage Yield Earned | 0.10% |

Current interest rate is 0.100% with no rate change this interest period

MEMBER FDIC

0053737-0000002-0149909

**California Bank & Trust**

This page intentionally left blank

0053757-0000002-0149909



CALIFORNIA BANK TRUST
P.O. Box 489, Lawndale, CA 90260-0489

**Statement of Accounts**
Page 1 of 18
This Statement: June 30, 2014
Last Statement: May 30, 2014

Account [ ]461

**DIRECT INQUIRIES TO:**
Customer Service 1 (800) 400-6080

0053773                    4182-06-1000-CBT-PG0023-00131

EAGAN AVENATTI LLP
OPERATING ACCOUNT
450 NEWPORT CENTER DR FL 2
NEWPORT BEACH CA 92660-7610

Irvine Branch
1900 Main St. Suite 100
Irvine, CA 92614-0000
(949) 223-7500

California Bank & Trust, as a part of Zions Bancorporation, has received 12 Greenwich Excellence Awards for business banking. The awards include the national award for overall satisfaction in small business banking and the national award for overall satisfaction in middle market banking.

NO PAPERWORK. MORE CONVENIENCE.
Online banking from your computer, smartphone, or tablet.
Quick secure access. Learn more at calbanktrust.com.

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Business Advantage Checking | [ ]461 | $40,161.87 | |

## BUSINESS ADVANTAGE CHECKING [ ]461                      105  131

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|
| 1,504,540.54 | 5,881,278.67 | 5,810,149.67 | 1,535,507.67 | 40,161.87 |

*Andis fum Scott V. Sezarue Comp* (handwritten annotations)

### 9 DEPOSITS/CREDITS

| Date | Amount | Description |
|---|---|---|
| 06/02 | 1,500,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000007913 230540549 *(A)* *From CA x 2699* |
| 06/02 | 44,284.44 | AT&T PAYMENTS O053030909676SSREF # 014153000374859 1105328704 |
| 06/02 | 27,411.42 | REMOTE DEPOSIT 5353097622 |
| 06/09 | 7,828.45 | REMOTE DEPOSIT 5353099019 |
| 06/13 | 3,000,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006847 2305101226 *From CA x 2699* |
| 06/18 | 200,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000001692 2304401462 |
| 06/26 | 900,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006446 2304000504 |
| 06/30 | 200,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000007612 2304400166 |
| 06/30 | 1,754.36 | REMOTE DEPOSIT 5353089160 |

### 49 CHARGES/DEBITS

| Date | Amount | Description |
|---|---|---|
| 06/02 | 525,000.00 | WIRE/OUT-201406020000367B;BNF HONDA AIRCRAFT COMPANY LLC 1301800997 *(A)* |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 221,112.01 | WIRE/OUT-201406020000372B;BNF EDWARD M. RICCI 1301801007 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 979,870.10 | WIRE/OUT-201406020000375B;BNF EDWARD M. RICCI 1301801015 |
| 06/02 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/02 | 19.95 | Intuit Acct Fee INTUITP REF # 01415300042643B 1105331719 |
| 06/02 | 2,735.91 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014153000548959 1105332176 |
| 06/02 | 31,738.89 | IRS USATAXPYMT 270455375480357REF # 014153000574415 1105332410 |
| 06/03 | 7,507.57 | EMPLOYMENT DEVEL EDD EF 641008896 REF # 014154001761392 1104550930 |

*(A) Transfers were on the same day* (handwritten annotation)


MEMBER FDIC

0053773-0000001-0149955

EXHIBIT B
18

## An Easy Approach To Balancing Your Account

**To reconcile your checkbook balance to your statement balance:** Mark off each entry in your check register that has been charged to your account during the statement period. List the checks you have written, but are not yet charged to your account in the "Checks Outstanding" column below. Then, follow the instructions in lines 1 through 10.

| CHECKS OUTSTANDING | | CHECKBOOK BALANCE | |
|---|---|---|---|
| Check Number | Check Amount | 1. LIST your checkbook balance. | |
| | | 2. ADD any deposits or other credits listed on the front of this statement which you have not recorded in your checkbook (such as payroll credits or other direct electronic deposits). | |
| | | 3. SUBTOTAL: | |
| | | 4. SUBTRACT any charges listed on the front of this statement which you have not recorded (such as service charges, automatic transfers, electronic transactions, etc). | |
| | | 5. ADJUSTED CHECKBOOK BALANCE: | |
| | | *This balance should agree with line 10, below.* | |
| | | STATEMENT BALANCE | |
| | | 6. LIST your current statement balance as shown on the front of this statement. | |
| | | 7. ADD deposits made, but not shown on this statement. | |
| | | 8. SUBTOTAL: | |
| | | 9. SUBTRACT total from "Checks Outstanding." | |
| TOTAL: | | 10. ADJUSTED STATEMENT BALANCE: | |

*Transfer to Line 9.*

*This balance should agree with line 5, above.*

**PROMPTLY EXAMINE YOUR STATEMENT AND REPORT ANY PROBLEM**

You must promptly examine your account statements and report any discoverable errors, unauthorized signatures, alterations, missing endorsements, or unauthorized transfers. Failure to do so may result in your loss of certain rights or remedies. For example, you must identify the discoverable alteration or forgery of a check within 30 days of us sending you, or making available to you, the statement reflecting that check, and you must also immediately report to us what you find. Businesses should check their account transactions daily, for which various online services are available. For additional information, please see your deposit account agreement and application service agreement(s) for details. See also the consumer disclosures below.

**CONSUMER ACCOUNTS: IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS OR MONEY RESERVE TRANSACTIONS**

If you think your statement is wrong, or if you need more information about a transfer on this statement or on a receipt, please telephone or write us. Please use the telephone number or address listed on the front of this statement to contact us as you can. **We must hear from you no later than 60 days after we sent or made available the FIRST statement on which the problem or error appeared. The provisions in this paragraph do not apply to business or other non-personal accounts. The owners of those accounts must settle all unauthorized transactions or errors within 24 hours of receipt of the item posting in order to be returned.**

1. Tell us your name and account number.
2. Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**FOR MONEY RESERVE ACCOUNTS:**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR PERSONAL CREDIT LINE (This is a Summary of Your Billing Rights).**

If you think your statement is wrong, or you need more information about a transaction on your statement, write us at the address on the front of this statement as soon as possible. **We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared.**

You can telephone us but doing so will not preserve your rights. In your letter, give us the following information.

1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question. You must notify us in writing. You can telephone us, but doing so will not preserve your rights. Contact us at California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

**Balance Subject to Interest Rate:** We use the method called "average daily balance", (including current transactions) to calculate the daily balance. If you have any further questions about the method and how resulting interest charges are determined, please feel free to contact us at 1-800-400-6080.

**We may report information about your Money Reserve account to credit bureaus.** Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Please notify us if we report any inaccurate information about your account(s) to a credit bureau.** Your written notice describing the specific inaccuracy should be sent to us at the following address: California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

*Thank you for banking with California Bank & Trust.*

Become an Online Banking Customer for 24-hour account access.

•Review account balances •Review posted transactions • Pay bills • Transfer funds
**Sign up today at www.calbanktrust.com or call 888-217-1265**

0053773-0000001-0149953

EXHIBIT B
19



CALIFORNIA BANK
TRUST

P.O. Box 489, Lawndale, CA 90260-0489

Page 3 of 18
June 30, 2014
EAGAN AVENATTI LLP
█████3461

Continued ...

| Date | Amount | Description |
|---|---|---|
| 06/03 | 33,962.18 | BANKCARD CENTER PAYMENT 479859110118744REF # 014154001875121 1104501407 |
| 06/09 | 72,000.00 | WIRE/OUT-201406900003589;BNF STEPHEN H KRUMM A PROFESSIONAL 1301401107 |
| 06/09 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/10 | 10,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000000061 2304600611 |
| 06/10 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004742 2304600921 |
| 06/10 | 316.12 | PAYCHEX EIB INVOICE X55452000026057REF # 014160004777175 1104706243 |
| 06/10 | 54,568.24 | BANKCARD CENTER PAYMENT 479859110118744REF # 014161005448789 1104701320 |
| 06/11 | 15,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000006469 2305200551 |
| 06/12 | 54,699.48 | PAYCHEX PAYROLL 55602400002165XREF # 014162005942318 1103604440 |
| 06/13 | 2,150,000.00 | WIRE/OUT-201406130000411 6;BNF ALEDMI LLC 1302002456 |
| 06/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/13 | 700,000.00 | WIRE/OUT-201406130000406 2;BNF SIMEON OSBORN 1302002448 |
| 06/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/13 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002623 2305100759 |
| 06/13 | 1,866.18 | PAYCHEX TPS TAXES 55655000005490XREF # 014164007194454 1103935719 |
| 06/13 | 6,814.85 | PAYCHEX PAYROLL 55653000000213XREF # 014164007131938 1103935502 |
| 06/13 | 39,622.39 | PAYCHEX TPS TAXES 55604600012810XREF # 014163006663659 1103910764 |
| 06/16 | 354.24 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014167007718247 1106325241 |
| 06/16 | 2,721.09 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014167007718239 1106325233 |
| 06/17 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002012 2306100215 |
| 06/18 | 111,563.66 | WIRE/OUT-201406180000304 1;BNF SUGARMAN & COMPANY, LLP 1302100832 |
| 06/18 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/18 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000003864 2304400347 |
| 06/19 | 10,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000007784 2304000383 |
| 06/24 | 52,957.30 | WIRE/OUT-201406240000277 4;BNF ALEDMI LLC 1302400814 |
| 06/24 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/24 | 54,374.20 | BANKCARD CENTER PAYMENT 479859110118744REF # 014175001490967 1104101273 |
| 06/26 | 368,496.00 | WIRE/OUT-201406260000354 9;BNF CASCADE CAPITAL GROUP 1302200968 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 158,729.00 | WIRE/OUT-201406260000359 9;BNF MARK CALVERT 1302200990 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 15,640.00 | WIRE/OUT-201406260000363 6;BNF CASCADE CAPITAL GROUP CASH BAL 1302201056 |
| 06/26 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 06/26 | 35.00 | STOP PAYMENT FEE |
| 06/27 | 20,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000002452 2305501041 |
| 06/27 | 54,100.45 | PAYCHEX PAYROLL 55836900000726XREF # 014177002681592 1103506283 |
| 06/30 | 33,887.86 | PAYCHEX TPS TAXES 55842400002468 9XREF # 014178003367072 1103010072 |
| 06/30 | 102.00 | INSUFFICIENT FUNDS FEE-ITEM PD 1701001242 |
| 06/30 | 25.00 | REMOTE DEPOSIT SERVICE - 1 |

## 128 CHECKS PROCESSED

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 9112 | 06/05 | 389,393.30 | 9659 | 06/02 | 71.75 | 9710* | 06/02 | 10,000.00 |
| 9599* | 06/04 | 6,084.51 | 9661* | 06/03 | 3,046.65 | 9711 | 06/02 | 25,000.00 |
| 9602* | 06/25 | 2,102.00 | 9663* | 06/02 | 33,734.27 | 9715* | 06/06 | 883.59 |
| 9603 | 06/24 | 9,713.30 | 9664 | 06/03 | 10,922.66 | 9716 | 06/04 | 290.56 |
| 9604 | 06/27 | 792.98 | 9666* | 06/10 | 26,962.39 | 9717 | 06/16 | 100.17 |
| 9625* | 06/12 | 517.36 | 9668* | 06/02 | 4,022.79 | 9718 | 06/18 | 87.92 |
| 9628* | 06/16 | 10,383.00 | 9669 | 06/02 | 319.75 | 9719 | 06/12 | 246.07 |
| 9629 | 06/16 | 55,242.97 | 9672* | 06/04 | 7,150.15 | 9720 | 06/18 | 765.00 |
| 9630 | 06/16 | 150,000.00 | 9674* | 06/04 | 2,919.41 | 9721 | 06/25 | 201.48 |
| 9631 | 06/24 | 387.00 | 9675 | 06/05 | 2,333.50 | 9722 | 06/12 | 152.90 |
| 9641* | 06/02 | 230.34 | 9676 | 06/06 | 3,500.00 | 9723 | 06/13 | 375.00 |
| 9642 | 06/03 | 10,951.86 | 9679* | 06/16 | 16,613.09 | 9724 | 06/16 | 477.20 |
| 9644* | 06/02 | 92.07 | 9684* | 06/10 | 4,039.16 | 9725 | 06/13 | 159.00 |
| 9645 | 06/03 | 341.57 | 9686* | 06/02 | 2,500.00 | 9726 | 06/16 | 220.00 |
| 9646 | 06/03 | 7,531.20 | 9687 | 06/02 | 14,275.47 | 9727 | 06/13 | 2,871.04 |
| 9648* | 06/13 | 13,536.25 | 9689* | 06/02 | 1,599.85 | 9728 | 06/13 | 839.74 |
| 9649 | 06/09 | 6,079.16 | 9690 | 06/03 | 38.99 | 9729 | 06/16 | 6,899.28 |
| 9651* | 06/05 | 3,573.91 | 9691 | 06/02 | 1,652.78 | 9730 | 06/13 | 2,317.83 |
| 9652 | 06/02 | 144.00 | 9692 | 06/04 | 16,508.89 | 9731 | 06/16 | 107.00 |
| 9653 | 06/09 | 30,672.55 | 9693 | 06/02 | 14,035.00 | 9732 | 06/18 | 8.85 |
| 9654 | 06/02 | 1,325.00 | 9701* | 06/04 | 2,551.08 | 9733 | 06/13 | 3,211.65 |
| 9655 | 06/02 | 5,814.15 | 9702 | 06/04 | 97.28 | 9734 | 06/12 | 390.00 |
| 9656 | 06/03 | 2,687.50 | 9703 | 06/16 | 500.00 | 9735 | 06/16 | 1,163.50 |
| 9657 | 06/05 | 35,888.50 | 9704 | 06/02 | 15,160.00 | 9736 | 06/11 | 10,675.46 |
| 9658 | 06/02 | 7,736.90 | 9705 | 06/03 | 4,762.43 | 9737 | 06/13 | 3,713.58 |



MEMBER FDIC

0053773-0000002-01499156

Page 4 of 18
June 30, 2014
EAGAN AVENATTI LLP
▮461
California Bank & Trust

Continued ...

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 9739* | 06/12 | 2,103.90 | 9757 | 06/27 | 231.86 | 9781 | 06/27 | 117.70 |
| 9740 | 06/13 | 1,840.67 | 9758 | 06/30 | 86.35 | 9782 | 06/27 | 413.97 |
| 9741 | 06/13 | 2,614.85 | 9759 | 06/30 | 54.86 | 9786* | 06/26 | 440.12 |
| 9743* | 06/16 | 400.00 | 9760 | 06/26 | 36,508.68 | 9788* | 06/27 | 350,000.00 |
| 9744 | 06/12 | 1,318.48 | 9761 | 06/27 | 1,091.74 | 9789 | 06/27 | 1,600.87 |
| 9745 | 06/12 | 987.85 | 9762 | 06/30 | 122.05 | 51537* | 06/03 | 3,865.99 |
| 9746 | 06/12 | 176.55 | 9764* | 06/27 | 700.00 | 51539* | 06/02 | 5,120.35 |
| 9747 | 06/13 | 2,665.75 | 9765 | 06/30 | 1,875.00 | 51540 | 06/02 | 1,162.69 |
| 9748 | 06/19 | 300.00 | 9767* | 06/26 | 2,843.95 | 51541 | 06/04 | 5,648.27 |
| 9749 | 06/13 | 634.00 | 9768 | 06/30 | 12,308.98 | 51543* | 06/03 | 1,614.65 |
| 9750 | 06/17 | 22,155.00 | 9770* | 06/27 | 639.50 | 51546* | 06/02 | 8,556.22 |
| 9751 | 06/20 | 18.00 | 9771 | 06/30 | 502.05 | 51547 | 06/11 | 7,636.38 |
| 9752 | 06/16 | 1,966.59 | 9772 | 06/26 | 59.00 | 51548 | 06/02 | 5,718.48 |
| 9752* | 06/16 | 2,262.00 | 9773 | 06/26 | 3,230.01 | 51549 | 06/02 | 852.35 |
| 9753 | 06/17 | 4,756.25 | 9777* | 06/30 | 14,293.18 | 51550 | 06/03 | 175.00 |
| 9754 | 06/17 | 282.14 | 9778 | 06/30 | 1,070.30 | 51551 | 06/02 | 3,359.90 |
| 9755 | 06/26 | 4,415.80 | 9779 | 06/30 | 53.51 | 51553* | 06/27 | 175.00 |
| 9756 | 06/27 | 1,397.49 | 9780 | 06/26 | 987.85 | | | |

* Not in check sequence

## AGGREGATE OVERDRAFT AND RETURNED ITEM FEES

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $102.00 | $1,466.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

To learn more about our other products and services that may lower the cost of managing account overdrafts or to discuss removing overdraft coverage from your account, please contact Customer Service or visit your local branch.

## DAILY BALANCES

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 06/02 | 1,153,185.43 | 06/11 | 353,803.22 | 06/20 | 145,690.90 |
| 06/03 | 1,065,777.18 | 06/12 | 293,210.63 | 06/24 | 28,229.10 |
| 06/04 | 1,024,527.03 | 06/13 | 355,067.85 | 06/25 | 25,925.62 |
| 06/05 | 593,337.82 | 06/16 | 106,134.92 | 06/26 | 334,050.21 |
| 06/06 | 588,954.23 | 06/17 | 73,941.53 | 06/27 | -97,211.35 |
| 06/09 | 488,000.97 | 06/18 | 156,008.90 | 06/30 | 40,161.87 |
| 06/10 | 387,115.06 | 06/19 | 145,708.90 | | |

MEMBER FDIC

0053773-0000002-0149956

EXHIBIT C

# Honda Aircraft Company

Honda Aircraft Company
6430 Ballinger Road
Greensboro, NC 27410 USA
Tel: 336.662.0246
Fax: 336.662.0852

March 18, 2016

Mr. Michael Avenatti
Avenatti & Associates, a Professional Corp.
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660

Re: Past Due Deposits For HondaJet Retail Purchase Agreements 40000021 and 40000022

Dear Mr. Avenatti:

This letter is being sent in connection with your two HondaJet Retail Purchase Agreements, Contract Numbers 40000021 and 40000022 ("Agreements"). Thank you for recently signing and returning amendments to your Agreements which updated your respective delivery dates. As part of that update, we issued revised invoices due in accordance with your Agreements and the updated delivery dates.

As of today, there are three payments that are past due under your Agreements, which are as follows:

1. Third Deposit, Contract 40000022 - $175,000
2. Fourth Deposit, Contract 40000022 - $175,000
3. Fourth Deposit, Contract 40000021 - $175,000

Statements of account for both of your Agreements are enclosed for your review, along with copies of the invoices above. Please remit payment for all past due deposits (a total of $525,000) within ten days. Prompt payment is required to keep your account in good standing.

Thank you for your attention to this matter. Should you wish to discuss anything further, please do not hesitate to contact me at (336) 554-8010, or christopher_belcher@haci.honda.com. You may also feel free to contact Phil Scharber, your sales representative at HondaJet Southwest, at (760) 579-0821 or phil@hondajetsouthwest.com.

Sincerely,

Christopher Belcher
Manager, Contracts

Enclosures

cc: Simon Roads
    Peter Kriegler

hondajet.com    | HONDA

HONDA 000199

EXHIBIT C
22

Commercial Electronic Office                                    Page 1 of 1

*file*

## Event Messaging

### Treasury Information Reporting

< Return to Message Log

Wells Fargo has received one or more wire transfers for your account(s).

Message Preferences | Delete Message

Viewing Message 1 of 26
Previous Page  Next Page

### Incoming Wire - Details

Account Number:
**4126555366**
Account Name:
**HONDA AIRCRAFT COMPANY LLC**
Wire Amount:
**525,000.00 USD**
Originating Party Name:
**EAGAN AVENATTI LLP**
Value Date:
**06/02/2014**
Status:
**COMPLETE**
Beneficiary Name:
**000004126555366**
Fed/SWIFT Confirmation Number:
**0602L4B74B1C000172**
Transaction Description:
**FEDWIRE**
Sending Bank Name:
**N/A**
Wire Service/Wire Detail:
**122232109 CALIFORNIA BANK AND TRUST SAN DIEGO, CA 2014060200003678 ORG=EAGAN AVENATTI LLP OPERATING ACCOUNT 450 NEWPORTCENTER DR FL 2 NEWPORT BEACH CA 92660-7610 OPI=3260138461 /FTR/ BNF=4126555366 HONDA AIRCRAFT COMPANY LLC 6430 BALLINGER ROAD GREENSBORO NC**
Date/Time Stamp:
**06/02/2014 10:29 AM PT**
Event Message ID:
**153-8060087**

*40000021 - $350,000*
*40000022 - $175,000*

### Related Links

Treasury Information Reporting

Viewing Message 1 of 26
Previous Page  Next Page

< Return to Message Log

© 1999 - 2014 Wells Fargo. All rights reserved.

EXHIBIT C
23

**HONDA 000291**



## AGREEMENT AND GENERAL RELEASE
## Contract No. 40000021

*THIS AGREEMENT AND GENERAL RELEASE ("Release") is made and entered into by and between Honda Aircraft Company, LLC (hereinafter referred to as "Honda Aircraft") and Avenatti & Associates, a Professional Corp., (hereinafter referred to as "Customer"), effective as of* ___1-27___, *2017 ("Effective Date").*

WHEREAS, Honda Aircraft and Customer entered into a HondaJet Purchase Agreement, Contract Number 40000021, dated October 11, 2006, as amended from time to time ("Agreement"); and

WHEREAS, Customer has requested a termination of the Agreement and transfer of the deposits paid under the provisions of the Agreement to HondaJet Purchase Agreement, Contract 40000316, Serial Number 42000029 ("Remaining Contract"), and it is in both parties interest to complete such termination and transfer; and

WHEREAS, Honda Aircraft and Customer are entering into this Release to terminate the Agreement, and release the parties' future obligations to one another, including Honda Aircraft's obligation to hold the production delivery date.

NOW, THEREFORE, in consideration of the premises and mutual promises and agreements herein contained, IT IS AGREED AS FOLLOWS:

1.   Customer has requested a termination of the Agreement and transfer to the Remaining Contract of the deposits paid under the Agreement in the amount of Four Hundred Twenty-Five Thousand Dollars and No Cents (USD $425,000.00) (the "Deposit"). As of the effective date of this Release, circumstances exist to allow termination of the Agreement, transfer of the Deposit, and release of the aircraft delivery commitment.

2.   Upon execution of this Release by both Honda Aircraft and Customer, Contract Number 40000021 is terminated and Parties respective obligations under Contract 40000021 are released. Upon termination of Contract 40000021, the Parties agree that Honda Aircraft will credit the Deposit paid under Contract 40000021 to Contract 40000316.

3.   Customer agrees to indemnify and hold Honda Aircraft, its officers, employees, directors, independent contractors, agents, representatives, consultants, affiliates, subsidiaries, permitted assigns, and all other associated persons or entities (including Honda Aircraft's parent company or any subsidiary or affiliate of any Honda Aircraft parent company) harmless from all claims, causes of action, suits, damages, or other complaints now and at any time in the future arising out of or relating to in any way, whether directly or indirectly, from accepting this request for termination of the Agreement, releasing the production date, and transferring the Deposit to the Remaining Contract.

EXHIBIT C
24

HONDA 000261

4.  Honda Aircraft and Customer represent and acknowledge that in executing this Release, they did not rely upon and have not relied upon any written or oral representations or statements not expressly a part hereof that have been made by any party to this Release, or by the agents, or representatives of any party with regard to the subject matter, basis, or effect of this Release. This document embodies the entire agreement of the parties with respect to the subject matter hereof. All statements and writings which pre-date the execution hereof are superseded.

5.  Governing Law. This Release shall be construed in accordance with, and governed in all respects by, the laws of the State of North Carolina, without regard to conflicts of law principles.

6.  Counterparts. This Release may be executed in several counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one agreement.

7.  Severability. If any part or parts of this Release shall be held unenforceable for any reason, the remainder of this Release shall continue in full force and effect. If any provision of this Release is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

**ACKNOWLEDGED AND AGREED:**

Avenatti & Associates, A Professional Corp.

Signature: _____

Name:  Michael Avenatti

Title:  President

Honda Aircraft Company, LLC

Signature: _____

Name:  Christopher Belcher

Title:  Manager, Contracts

Guilford County, North Carolina

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she signed the foregoing document:

Christopher Belcher  Michael Avenatti
*Name(s) of principal(s)*

Date: 1-27-17

_____
*Official Signature of Notary*

Kelly E. Tooley, Notary Public
*Notary's printed or typed name*

My commission expires: 6-10-17

KELLY E. TOOLEY
NOTARY PUBLIC
GUILFORD COUNTY, NC

2

EXHIBIT C
25

HONDA 000262

*AMENDMENT NO. 7 to HondaJet RETAIL PURCHASE AGREEMENT*
*No. 40000022*

*ASSIGNMENT AND CONSENT*

*This Assignment and Consent, Amendment No. 7 is entered into as of* July 13 *, 2016 by and between Honda Aircraft Company, LLC ("Seller"), Avenatti & Associates, a Professional Corp., ("Original Purchaser"), and Passport 420, LLC ("Affiliated Purchaser"), for the purpose of revising the HondaJet Retail Purchase Agreement ("Agreement") dated October 11, 2006 by and between Seller and Purchaser, as amended from time to time, for the purchase of one (1) HondaJet HA-420 Aircraft.*

*Whereas*, Original Purchaser, Affiliated Purchaser, and Seller wish to revise the Agreement to reflect that Affiliated Purchaser will be substituted as the "Purchaser" under the Agreement.

*Therefore*, Original Purchaser, Affiliated Purchaser, and Seller agree that the Agreement is amended as follows:

1. Affiliated Purchaser and Original Purchaser hereby certify and represent to Seller that Affiliated Purchaser and Original Purchaser are affiliated persons or entities, that amendment of the Agreement does not represent an assignment of the right to buy the Aircraft to an unaffiliated entity, and that no payments have been made by or on the behalf of Affiliated Purchaser to Original Purchaser in connection with this Amendment or the replacement of the "Purchaser" under the Agreement. Affiliated Purchaser and Original Purchaser agree to provide to Seller upon request a written explanation of the affiliation relationship between Affiliated Purchaser and Original Purchaser. For purposes of this Agreement, an "affiliated" person or entity means a person or entity controlling, controlled by, or under common control with the original person or entity.

2. Affiliated Purchaser and Original Purchaser hereby confirm the provisions of Sections 13(d) of the Agreement, and reaffirm their acknowledgement to Seller that neither Affiliated Purchaser nor Original Purchaser is licensed or permitted to resell or otherwise act as a "dealer", "distributor" or "broker" of the Aircraft, and that the Aircraft shall be used by Affiliated Purchaser solely for Affiliated Purchaser's own use or in connection with Affiliated Purchaser's business and operations. Affiliated Purchaser and Original Purchaser hereby certify and represent to Seller that the Aircraft is being purchased with no intent to resell or otherwise transfer the Aircraft to any third party for a period of one year after the Delivery Time.

3. Original Purchaser agrees that all progress payments it has made for the purchase of the specified aircraft shall be credited toward the purchase price to be paid by the Affiliated Purchaser and that when the aircraft is delivered it will be delivered to Affiliated Purchaser.

This Amendment shall be governed by and construed in accordance with the substantive laws of the State of North Carolina without regard to its conflicts of laws principles.

EFFECTIVE WITH THE EXECUTION OF THIS AMENDMENT BY ALL PARTIES, THE CHANGES TO THE AGREEMENT DESCRIBED HEREIN SHALL BECOME EFFECTIVE. ALL OTHER ELEMENTS OF THE AGREEMENT REMAIN UNCHANGED. IN THE EVENT OF

EXHIBIT C
26

**HONDA 000211**

CONFLICT BETWEEN THE AGREEMENT AND THIS AMENDMENT, THIS AMENDMENT
SHALL PREVAIL.

IN WITNESS WHEREOF, each party hereto has executed this Amendment as of the date first above
written.

**HONDA AIRCRAFT COMPANY, LLC,**
("Seller")

BY: _____

Name: Simon Roads

Title: Vice President, Sales

**PASSPORT 420, LLC**
("Affiliated Purchaser")

BY: _____

Name: Michael Avenatti

Title: Manager

_Notice Address for Affiliated Purchaser:_

ATTN: _____

 520 Newport Center Drive #1400

 Newport Beach, CA 92660

Email: _____

**AVENATTI & ASSOCIATES, A**
**PROFESSIONAL CORP.**
("Original Purchaser")

BY: _____

Name: Michael Avenatti

Title: President

EXHIBIT C
27

HONDA 000212

*AMENDMENT NO. 6 to HondaJet Retail Purchase Agreement*
*No. 40000022*

*This Amendment No. 6 ("Amendment") is entered into as of* _____4/28_____ *, 2016 by and between Honda Aircraft Company, LLC ("Seller") and Avenatti & Associates, a Professional Corp. ("Purchaser") for the purpose of revising the HondaJet Retail Purchase Agreement ("Agreement") dated October 11, 2006 by and between Seller and Purchaser, as amended from time to time, for the purchase of one (1) HondaJet HA-420 Aircraft.*

*Whereas,* Purchaser and Seller desire to make certain amendments to the Agreement.

*Therefore,* Purchaser and Seller agree that the Agreement is amended as follows:

1. The Aircraft registration number is hereby deleted and replaced with N227WP. This number is subject to availability, which Seller is working to obtain. Seller will promptly advise Purchaser as to any issues encountered.

This Amendment shall be governed by and construed in accordance with the substantive laws of the State of North Carolina without regard to its conflicts of laws principles.

EFFECTIVE WITH THE EXECUTION OF THIS AMENDMENT BY ALL PARTIES, THE CHANGES TO THE AGREEMENT DESCRIBED HEREIN SHALL BECOME EFFECTIVE. ALL OTHER ELEMENTS OF THE AGREEMENT REMAIN UNCHANGED. IN THE EVENT OF CONFLICT BETWEEN THE AGREEMENT AND THIS AMENDMENT, THIS AMENDMENT SHALL PREVAIL.

IN WITNESS WHEREOF, each party hereto has executed this Amendment as of the date first above written.

| HONDA AIRCRAFT COMPANY, LLC ("Seller") | AVENATTI & ASSOCIATES, A PROFESSIONAL CORP. ("Purchaser") |
|---|---|
| BY: _____ | BY: _____ |
| Name:  Simon Roads | Name:  Michael Avenatti |
| Title:  Vice President, Sales | Title:  President |

#   #   #

40000022 Amdt 6                        Page 1 of 1

EXHIBIT C
28

HONDA 000208


*HondaJet*

*ADDENDUM to HONDAJET PURCHASE AGREEMENT*
*No. 40000316*

DELIVERY RECEIPT

The undersigned Purchaser hereby accepts delivery of one (1) Honda Aircraft Company, LLC model HA-420 aircraft, bearing United States Registration Number N227WP (the "Aircraft"), manufactured in accordance with the HondaJet Retail Purchase Agreement, No. 40000316 between Purchaser and Seller, and Seller's Specification and Description dated January 2016 (the "Specification").

Purchaser hereby confirms acceptance and delivery of the Aircraft equipped as specified in the Agreement and Specification, and verifies that the Aircraft has been inspected and generally conforms to the same. Purchaser also confirms receipt of the appropriate, approved Flight Manual for the Aircraft.

Aircraft Information

| Item | Serial Number |
|---|---|
| Airframe | 42000029 |
| Engine 1 | 883171 |
| Engine 2 | 883166 |
| Airframe/Engine Hours at Delivery | 13.8 |
| Airframe/Engine Cycles at Delivery | 11 |

Delivery Information

| | |
|---|---|
| Date of delivery: | January 27, 2017 |
| Delivery location (City, State): | Greensboro, NC |
| Warranty start/activation date: | January 27, 2017 |
| Date of departure: | January 27, 2017 |

Honda Aircraft Company, LLC ("Seller")

BY:
Name:   Christopher Belcher
Title:   Manager, Contracts

Passport 420, LLC ("Purchaser")

BY:
Name:   Michael Avenatti
Title:   Manager

Guilford County, North Carolina

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she signed the foregoing document:

Christopher Belcher   Michael Avenatti
*Name(s) of principal(s)*

Date: 1-27-2017

KELLY E. TOOLEY
NOTARY PUBLIC
GUILFORD COUNTY, NC

*Official Signature of Notary*

Kelly E. Tooley , Notary Public
*Notary's printed or typed name*

My commission expires: 6/10/2017

**HONDA 000253**

EXHIBIT C
29

EXHIBIT D



**CALIFORNIA BANK**
TRUST

P.O. Box 489, Lawndale, CA 90260-0489

**Statement of Accounts**
Page 1 of 7
This Statement: January 31, 2017
Last Statement: December 30, 2016

Account              82851

**DIRECT INQUIRIES TO:**
Customer Service 1 (800) 400-6080

0041495                #032-06-00004:BT-PC:0023-00022-

EAGAN AVENATTI LLP
520 NEWPORT CENTER DR STE 1400
NEWPORT BEACH CA 92660-7034

Irvine Branch
1900 Main St.  Suite 100
Irvine, CA 92614-0000
(949) 223-7500

Happy New Year From All of Us at California Bank & Trust

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Business Essentials Checking | 2851 | -$8,063.90 | |

## BUSINESS ESSENTIALS CHECKING       2851                                            104    22

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|
| -103,154.76 | 3,128,588.02 | 2,826,498.78 | 206,998.38 | -8,063.90 |

### 26 DEPOSITS/CREDITS

| Date | Amount | Description |
|---|---|---|
| 01/03 | 103,601.89 | RETURN PAYCHEX PAYROLL 6 1703401347 |
| 01/04 | 16,500.00 | ONLINE XFER FROM DDA GLOBAL BARIS ID: 000002376 2306900832 |
| 01/04 | 8,000.00 | DEPOSIT 5353067664 |
| 01/04 | 35,000.00 | DEPOSIT 5353067666 |
| 01/06 | 2,000.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000003621 2306801004 |
| 01/09 | 1,000.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000007707 2307203808 |
| 01/09 | 15,000.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000008794 2307203744 |
| 01/09 | 22,000.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000009933 2307205454 |
| 01/09 | 81,000.00 | ONLINE XFER FROM DDA GLOBAL BARIS ID: 000001959 2307205462 |
| 01/10 | 100.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000001795 2307500628 |
| 01/11 | 52,000.00 | ONLINE XFER FROM DDA GLOBAL BARIS ID: 000007395 2307101364 |
| 01/11 | 200,000.00 | WIRE/IN-201701110004444;ORG CASCADE CAPITAL GROUP, LLC 1304101117 |
| 01/12 | 2,500.00 | ONLINE XFER FROM DDA GLOBAL BARIS ID: 000006977 2307300592 |
| 01/17 | 51,726.71 | RETURN PAYCHEX PAYROLL 6 1703001282 |
| 01/17 | 1,961.42 | DEPOSIT 5353096931 |
| 01/18 | 10,500.00 | ONLINE XFER FROM DDA GLOBAL BARIS ID: 000005270 2306801852 |
| 01/20 | 250.00 | ONLINE XFER FROM DDA PASSPORT 420 ID: 000006778 2307602576 |
| 01/20 | 2,680.00 | ONLINE XFER FROM DDA PASSPORT 420 ID: 000004248 2307602142 |
| 01/20 | 10,000.00 | ONLINE XFER FROM DDA PASSPORT 420 ID: 000004766 2307602122 |
| 01/20 | 10,065.50 | ONLINE XFER FROM DDA PASSPORT 420 ID: 000000873 2307602132 |
| 01/20 | 69,400.00 | ONLINE XFER FROM DDA PASSPORT 420 ID: 000003114 2307602114 |
| 01/20 | 1,891,802.50 | ONLINE XFER FROM DDA PASSPORT 420 ID: 000000361 2307602102 |
| 01/24 | 62,000.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000003310 2307503668 |
| 01/26 | 250,000.00 | ONLINE XFER FROM DDA STATE BAR OF ID: 000005375 2306900664 |
| 01/30 | 57,000.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000008290 2307704090 |
| 01/31 | 172,500.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000006469 2307000996 |

A division of ZB, N.A. Member FDIC

EXHIBIT D
30

0041495-0000001:0117561

**An Easy Approach To Balancing Your Account**                                    Page 2 of 7

**To reconcile your checkbook balance to your statement balance:** Mark off each entry in your check register that has been charged to your account during the statement period. List the checks you have written, but are not yet charged to your account in the "Checks Outstanding" column below. Then, follow the instructions in lines 1 through 10.

| CHECKS OUTSTANDING | |
|---|---|
| Check Number | Check Amount |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL: | |

*Transfer to Line 9.*

### CHECKBOOK BALANCE

1. LIST your checkbook balance.

2. ADD any deposits or other credits listed on the front of this statement which you have not recorded in your checkbook (such as payroll credits or other direct electronic deposits).

3. SUBTOTAL:

4. SUBTRACT any charges listed on the front of this statement which you have not recorded (such as service charges, automatic transfers, electronic transactions, etc).

5. ADJUSTED CHECKBOOK BALANCE:

*This balance should agree with line 10, below.*

### STATEMENT BALANCE

6. LIST your current statement balance as shown on the front of this statement.

7. ADD deposits made, but not shown on this statement.

8. SUBTOTAL:

9. SUBTRACT total from "Checks Outstanding."

10. ADJUSTED STATEMENT BALANCE:

*This balance should agree with line 5, above.*

**PROMPTLY EXAMINE YOUR STATEMENT AND REPORT ANY PROBLEM**
You must promptly examine your account statements and report any discoverable errors, unauthorized signatures, alterations, missing endorsements, or unauthorized transfers. Failure to do so may result in your loss of certain rights or remedies. For example, you must identify the discoverable alteration or forgery of a check within 30 days of us sending you, or making available to you, the statement reflecting that check, and you must also immediately report to us what you find. Businesses should check their account transactions daily, for which various online services are available. For additional information, please see your deposit account agreement and application service agreement(s) for details. See also the consumer disclosures below.

**CONSUMER ACCOUNTS: IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS OR MONEY RESERVE TRANSACTIONS**
If you think your statement is wrong, or if you need more information about a transfer on this statement or on a receipt, please telephone or write us. Please use the telephone number or address listed on the front of this statement to contact us as you can. **We must hear from you no later than 60 days after we sent or made available the FIRST statement on which the problem or error appeared. The provisions in this paragraph do not apply to business or other non-personal accounts. The owners of those accounts must settle all unauthorized transactions or errors within 24 hours of receipt of the item posting in order to be returned.**

1. Tell us your name and account number.
2. Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**FOR MONEY RESERVE ACCOUNTS:**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR PERSONAL CREDIT LINE**
**(This is a Summary of Your Billing Rights).**
If you think your statement is wrong, or you need more information about a transaction on your statement, write us at the address on the front of this statement as soon as possible. **We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared.**

You can telephone us but doing so will not preserve your rights. In your letter, give us the following information.
1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question. You must notify us in writing. You can telephone us, but doing so will not preserve your rights. Contact us at California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

**Balance Subject to Interest Rate:** We use the method called "average daily balance", (including current transactions) to calculate the daily balance. If you have any further questions about the method and how resulting interest charges are determined, please feel free to contact us at 1-800-400-6080.

**We may report information about your Money Reserve account to credit bureaus.** Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Please notify us if we report any inaccurate information about your account(s) to a credit bureau.** Your written notice describing the specific inaccuracy should be sent to us at the following address: California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

*Thank you for banking with California Bank & Trust.*
**Become an Online Banking Customer for 24-hour account access.**
•Review account balances  •Review posted transactions  • Pay bills • Transfer funds
**Sign up today at www.calbanktrust.com or call 888-217-1265.**

EXHIBIT D
31

0041495-0000001-0117581



**CALIFORNIA BANK**
**TRUST**

P.O. Box 489, Lawndale, CA 90260-0489

Page 3 of 7
January 31, 2017
EAGAN AVENATTI LLP
███2851

---

## 50 CHARGES/DEBITS

| Date | Amount | Description |
|------|--------|-------------|
| 01/03 | 14,704.26 | ANTHEM BLUE IO1O CORP P FL00503926 REF # 017003006007512  1107387743 |
| 01/03 | 36.00 | INSUFFICIENT FUNDS FEE-ITEM RT  1703401232 |
| 01/03 | 6.00 | OVERDRAFT SERVICE FEE |
| 01/04 | 300.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000009559  2306900835 |
| 01/04 | 1,692.95 | JOHN HANCOCK ACH DEBIT 0077281 REF # 017004008010232  1106739221 |
| 01/04 | 36.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1703202287 |
| 01/05 | 2,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000000870  2306900839 |
| 01/05 | 41,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004534  2306901103 |
| 01/06 | 36.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1703201647 |
| 01/09 | 103,601.89 | WIRE/OUT-2017010900004297;BNF Paychex of New York;REF 0080 -  1304001164 |
| 01/09 | 166.09 | COX COMM ORG BANKDRAFT REF # 017006010263330  1106608958 |
| 01/09 | 1,957.72 | COX COMM ORG BANKDRAFT REF # 017006010263329  1106608957 |
| 01/09 | 2,010.35 | ACHMA VISB BILL PYMNT REF # 017006010298148  1106609225 |
| 01/09 | 36.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1702901271 |
| 01/10 | 324.75 | PAYCHEX EIB INVOICE X694901000111179REF # 017009001111348  1106807337 |
| 01/11 | 14.00 | WIRE FEE-INCOMING DOMESTIC |
| 01/11 | 150,000.00 | WIRE/OUT-2017011100004725;BNF The Escrow Connection;REF Escr  1304101159 |
| 01/11 | 50,000.00 | ONLINE XFER TO DDA GLOBAL BARIS ID: 000008773  2307102597 |
| 01/11 | 72.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1703201616 |
| 01/12 | 72.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1703101254 |
| 01/13 | 51,726.71 | PAYCHEX PAYROLL 69670700000806XREF # 017013004278513  1107035442 |
| 01/17 | 9,787.85 | FIRST INSURANCE INSURANCE REF # 017017004866620  1107142661 |
| 01/17 | 36.00 | INSUFFICIENT FUNDS FEE-ITEM RT  1703001157 |
| 01/17 | 6.00 | OVERDRAFT SERVICE FEE |
| 01/18 | 2,713.78 | JOHN HANCOCK ACH DEBIT 0077281 REF # 017018006491542  1106240919 |
| 01/18 | 36.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1703402248 |
| 01/20 | 20,531.00 | WIRE/OUT-2017012000004214;BNF Tutton Insurance Services Inc.  1304501335 |
| 01/20 | 20,000.00 | WIRE/OUT-2017012000004215;BNF MTE, INC dba Aero & Marine Tax  1304501337 |
| 01/20 | 51,726.71 | WIRE/OUT-2017012000004246;BNF Paychex of New York;REF 80-008  1304501345 |
| 01/20 | 138,800.00 | WIRE/OUT-2017012000005324;BNF Honda Aircraft Company LLC;OBI  1304501615 |
| 01/20 | 350,000.00 | ONLINE XFER TO DDA GLOBAL BARIS ID: 000005037  2307602135 |
| 01/20 | 2,680.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000009237  2307602569 |
| 01/20 | 130,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000000804  2307603333 |
| 01/20 | 1,259,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000001631  2307605231 |
| 01/20 | 72.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1703201380 |
| 01/23 | 257.75 | ANALYSIS SERVICE FEE |
| 01/24 | 51,935.00 | DEBIT MEMO  5353064097 |
| 01/24 | 966.13 | CREDIT CARD ECS PAYMENT REF # 017024009804979  1107133040 |
| 01/24 | 4,033.87 | CREDIT CARD ECS PAYMENT REF # 017024009805686  1107133078 |
| 01/24 | 5,000.00 | CREDIT CARD ECS PAYMENT REF # 017024009805687  1107133079 |
| 01/26 | 250,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000000116  2306900667 |
| 01/30 | 55,000.00 | WIRE/OUT-2017013000002178;BNF Baker Keener & Nahra LLP - Cli  1304400422 |
| 01/30 | 198.81 | COX COMM ORG BANKDRAFT REF # 017030002973408  1107447457 |
| 01/30 | 1,970.93 | COX COMM ORG BANKDRAFT REF # 017030002973407  1107447456 |
| 01/31 | 51,726.73 | PAYCHEX PAYROLL 69893300000650XREF # 017031003930853  1106633767 |
| 01/31 | 180.00 | INSUFFICIENT FUNDS FEE-ITEM PD  1703201819 |
| 01/31 | 30.00 | REMOTE DEPOSIT SERVICE - 1 |
| 01/31 | 7.00 | MONTHLY MAINTENANCE FEE |
| 01/31 | 3.00 | PAPER STATEMENT FEE |
| 01/31 | 7.50 | CURRENCY DEPOSITED FEE |

---

## 18 CHECKS PROCESSED

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 15557 | 01/09 | 710.00 | 15889 | 01/10 | 40,000.00 | 15896* | 01/31 | 5,970.00 |
| 15871* | 01/12 | 63.00 | 15890 | 01/10 | 12,090.92 | 15897 | 01/30 | 8,720.96 |
| 15881* | 01/11 | 207.00 | 15891 | 01/19 | 10,000.00 | 15898 | 01/30 | 1,912.00 |
| 15885* | 01/11 | 1,900.00 | 15892 | 01/23 | 514.00 | 15900* | 01/30 | 2,664.00 |
| 15886 | 01/05 | 1,900.00 | 15893 | 01/19 | 291.10 | 15901 | 01/30 | 256.00 |
| 15888* | 01/06 | 10,436.34 | 15894 | 01/31 | 2,035.96 | 15902 | 01/30 | 107,327.10 |

* Not in check sequence

---

A division of ZB, N.A. Member FDIC

0041.895-000000Z0117562

Page 4 of 7
January 31, 2017
EAGAN AVENATTI LLP
████2851
California Bank & Trust

**AGGREGATE OVERDRAFT AND RETURNED ITEM FEES**

|  | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $552.00 | $552.00 |
| Total Returned Item Fees | $72.00 | $72.00 |

To learn more about our other products and services that may lower the cost of managing account overdrafts or to discuss removing overdraft coverage from your account, please contact Customer Service or visit your local branch.

**DAILY BALANCES**

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 01/03 | -14,299.13 | 01/11 | -2,191.14 | 01/20 | 1,152.84 |
| 01/04 | 43,171.92 | 01/12 | 173.86 | 01/23 | 381.09 |
| 01/05 | -1,728.08 | 01/13 | -51,552.85 | 01/24 | 446.09 |
| 01/06 | -10,200.42 | 01/17 | -7,694.57 | 01/26 | 446.09 |
| 01/09 | 317.53 | 01/18 | 55.65 | 01/30 | -120,603.71 |
| 01/10 | -51,998.14 | 01/19 | -10,235.45 | 01/31 | -8,063.90 |

A division of ZB, N.A. Member FDIC

EXHIBIT D
33

0041895-0000070117367

EXHIBIT E



**CALIFORNIA BANK**
**TRUST**
P.O. Box 489, Lawndale, CA  90260-0489

**Statement of Accounts**
Page  1 of  4
This Statement: January 31, 2017
Last Statement: December 30, 2016

Account ████ 8671

**DIRECT INQUIRIES TO:**
Customer Service  1 (800) 400-6080

0043905                    4032-06-0000-CBT-PG0023-00000

STATE BAR OF CALIFORNIA
EAGAN AVENATTI LLP
ATTORNEY CLIENT TRUST ACCOUNT
520 NEWPORT CENTER DR STE 1400
NEWPORT BEACH CA  92660-7034

Irvine Branch
1900 Main St.  Suite 100
Irvine, CA 92614-0000
(949) 223-7500

| Happy New Year From All of Us at California Bank & Trust |
| --- |

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
| --- | --- | --- | --- |
| Attorney Client Trust | ████ 8671 | $12.81 | |

### ATTORNEY CLIENT TRUST ████ 8671                                                          220    0

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
| --- | --- | --- | --- | --- |
| 0.23 | 2,750,012.81 | 2,750,000.23 | 0.00 | 12.81 |

**2  DEPOSITS/CREDITS**

| Date | Amount | Description |
| --- | --- | --- |
| 01/25 | 2,750,000.00 | WIRE/IN-2017012500006396;ORG HASSAN WHITESIDE;OBI WHITESIDE  1304001668 |
| 01/31 | 12.81 | INTEREST PAYMENT  0008593750 |

**3  CHARGES/DEBITS**

| Date | Amount | Description |
| --- | --- | --- |
| 12/30 | .23 | INTEREST TRANSFER  0100072101 |
| 01/26 | 2,500,000.00 | WIRE/OUT-201701260000296 5;BNF The X-Law Group P.C.  1303600794 |
| 01/26 | 250,000.00 | ONLINE XFER TO DDA EAGAN AVENAT ID: 000005375  2306900665 |

**0  CHECKS PROCESSED**

There were no transactions this period.

**AGGREGATE OVERDRAFT AND RETURNED ITEM FEES**

| | Total for This Period | Total Year-to-Date |
| --- | --- | --- |
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

To learn more about our other products and services that may lower the cost of managing account
overdrafts or to discuss removing overdraft coverage from your account, please contact Customer
Service or visit your local branch.

A division of ZB, N.A. Member FDIC  

EXHIBIT E
34

0043905-0000001-0125144

## An Easy Approach To Balancing Your Account

Page 2 of 4

**To reconcile your checkbook balance to your statement balance:** Mark off each entry in your check register that has been charged to your account during the statement period. List the checks you have written, but are not yet charged to your account in the "Checks Outstanding" column below. Then, follow the instructions in lines 1 through 10.

| CHECKS OUTSTANDING | |
|---|---|
| Check Number | Check Amount |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL: | |

*Transfer to Line 9.*

| CHECKBOOK BALANCE | |
|---|---|
| 1. LIST your checkbook balance. | |
| 2. ADD any deposits or other credits listed on the front of this statement which you have not recorded in your checkbook (such as payroll credits or other direct electronic deposits). | |
| 3. SUBTOTAL: | |
| 4. SUBTRACT any charges listed on the front of this statement which you have not recorded (such as service charges, automatic transfers, electronic transactions, etc.). | |
| 5. ADJUSTED CHECKBOOK BALANCE: | |

*This balance should agree with line 10, below.*

| STATEMENT BALANCE | |
|---|---|
| 6. LIST your current statement balance as shown on the front of this statement. | |
| 7. ADD deposits made, but not shown on this statement. | |
| 8. SUBTOTAL: | |
| 9. SUBTRACT total from "Checks Outstanding." | |
| 10. ADJUSTED STATEMENT BALANCE: | |

*This balance should agree with line 5, above.*

**PROMPTLY EXAMINE YOUR STATEMENT AND REPORT ANY PROBLEM**
You must promptly examine your account statements and report any discoverable errors, unauthorized signatures, alterations, missing endorsements, or unauthorized transfers. Failure to do so may result in your loss of certain rights or remedies. For example, you must identify the discoverable alteration or forgery of a check within 30 days of us sending you, or making available to you, the statement reflecting that check, and you must also immediately report to us what you find. Businesses should check their account transactions daily, for which various online services are available. For additional information, please see your deposit account agreement and application service agreement(s) for details. See also the consumer disclosures below.

**CONSUMER ACCOUNTS: IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS OR MONEY RESERVE TRANSACTIONS**
If you think your statement is wrong, or if you need more information about a transfer on this statement or on a receipt, please telephone or write us. Please use the telephone number or address listed on the front of this statement to contact us as you can. **We must hear from you no later than 60 days after we sent or made available the FIRST statement on which the problem or error appeared. The provisions in this paragraph do not apply to business or other non-personal accounts. The owners of those accounts must settle all unauthorized transactions or errors within 24 hours of receipt of the item posting in order to be returned.**

1. Tell us your name and account number.
2. Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**FOR MONEY RESERVE ACCOUNTS:**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR PERSONAL CREDIT LINE**
*(This is a Summary of Your Billing Rights).*
If you think your statement is wrong, or you need more information about a transaction on your statement, write us at the address on the front of this statement as soon as possible. **We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared.**

You can telephone us but doing so will not preserve your rights. In your letter, give us the following information.

1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question. You must notify us in writing. You can telephone us, but doing so will not preserve your rights. Contact us at California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

**Balance Subject to Interest Rate:** We use the method called "average daily balance", (including current transactions) to calculate the daily balance. If you have any further questions about the method and how resulting interest charges are determined, please feel free to contact us at 1-800-400-6080.

**We may report information about your Money Reserve account to credit bureaus.** Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Please notify us if we report any inaccurate information about your account(s) to a credit bureau.** Your written notice describing the specific inaccuracy should be sent to us at the following address: California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

*Thank you for banking with California Bank & Trust.*
**Become an Online Banking Customer for 24-hour account access.**
•Review account balances •Review posted transactions • Pay bills • Transfer funds
**Sign up today at www.calbanktrust.com or call 888-217-1265.**

0043905-0000001-0125144



**CALIFORNIA BANK**
T R U S T

P.O. Box 489, Lawndale, CA 90260-0489

Page 3 of 4
January 31, 2017
STATE BAR OF CALIFORNIA
████ 8671

....................................................................................................................................

**DAILY BALANCES**

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 12/30 | 0.00 | 01/26 | 0.00 | 01/31 | 12.81 |
| 01/25 | 2,750,000.00 | | | | |

....................................................................................................................................

**INTEREST**

| | | | |
|---|---|---|---|
| Interest Earned This Interest Period | $12.81 | Number Of Days This Interest Period | 32 |
| Interest Paid Year-To-Date 2017 | $12.81 | Annual Percentage Yield Earned | 0.17% |

Current interest rate is 0.170% with no rate change this interest period

Please retain this statement. Interest paid on your account in 2016 was 7.93.

EXHIBIT E
36

0043905-0000002-0125145

EXHIBIT F



**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

December 31, 2016 through January 31, 2017

Account Number:         7608



00059885 DRE 703 210 03217 NNNNNNNNNNN  1 000000000 60 0000

THE X-LAW GROUP, PC
IOLTA TRUST ACCOUNT
1910 W SUNSET BLVD STE 450
LOS ANGELES CA 90026-7118

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **www.Chase.com** |
| Service Center: | **1-877-425-8100** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

## We changed how we explain ATM Withdrawal Limits

We revised the Deposit Account Agreement to change how we explain ATM withdrawal limits.

Below is the explanation provided in the Deposit Account Agreement for business accounts.

*Your ATM withdrawal limits may be different depending on which type of ATM you use:*

- *When you use a Staffed ATM, the following limitations apply and are separate from all other limits:*

  *Each cardholder can withdraw up to $3,000 each day from all linked accounts of each business. This separate limit does not apply to an Associate card.*

- *When you use an Enhanced ATM, the following limitations apply:*

  *All withdrawals made with any cardholder's ATM, debit or prepaid cards for the same business count toward every card's daily withdrawal limit.*

- *When you use non-Chase ATMs and Chase ATMs that are not Enhanced, you can withdraw up to the card's daily withdrawal limit. Withdrawals using other cards will not count towards that card's daily withdrawal limit.*

You can get the latest Deposit Account Agreement on chase.com, at a branch or by request when you call us. The parts of the Deposit Account Agreement that changed will be in the Change in Terms section.

If you have questions, please call the number on your statement.

## CHECKING SUMMARY | IOLTA Account

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$24,450.74** |
| Deposits and Additions | ■ | ■■■■■ |
| Checks Paid | ■ | ■■ |
| Electronic Withdrawals | ■ | ■■■■ |
| Other Withdrawals | 1 | -2.62 |
| **Ending Balance** | ■ | ■■■■ |

| | |
|---|---|
| Interest Paid This Period | $2.62 |
| Interest Paid Year-to-Date | $2.62 |

Interest paid in 2016 for account 000000732357608 was $703.95.

 **CHASE**

December 31, 2016 through January 31, 2017

Account Number: ████████ 7608

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/06 | ██████████████████████████ | █████ |
| 01/23 | ████████████████████████████████ | ████ |
| 01/26 | Fedwire Credit Via: California Bank & Trust/122232109 B/O: State Bar of California Newport Beach CA 92660-7034 92660 Ref: Chase Nyc/Ctr/Bnf=The X-Law Group, PC IOLTA Trust Los Angeles, CA 9002 63262/Ac-000000007323 Rfb=21751607 Imad: 0126L4B74B1C000145 Trn: 3566609026Ff | 2,500,000.00 |
| 01/26 | | ████ |
| 01/31 | | |
| **Total Deposits and Additions** | | █████ |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 2034 ^ | | 01/09 | $71.40 |
| **Total Checks Paid** | | | **$71.40** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/06 | ████████████████████████████████ | ████ |
| 01/24 | ██████████████████████████ | ████ |
| 01/26 | 01/26 Wire Transfer Via: Wells Fargo NA/121000248 A/C: Honda Aircraft Company, LLC Ref: Passport 420, LLC. Contract No. 4000316. Serial No. 42000029/Time/15:5 6 Imad: 0126B1Qgc08C031291 Trn: 4555400026Es | 2,500,000.00 |
| 01/30 | ███████████████████████ | ████ |
| **Total Electronic Withdrawals** | | █████ |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/31 | ██████████ | ████ |
| **Total Other Withdrawals** | | **$2.62** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 01/06 | ████ |
| 01/09 | ████ |
| 01/23 | ████ |

EXHIBIT F
38



December 31, 2016 through January 31, 2017

Account Number: ▮▮▮▮▮▮▮7608



## DAILY ENDING BALANCE *(continued)*

| DATE | AMOUNT |
|------|--------|
| 01/24 | ▮▮▮▮ |
| 01/26 | ▮▮▮▮ |
| 01/30 | ▮▮▮▮ |
| 01/31 | ▮▮▮▮ |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

  JPMorgan Chase Bank, N.A. Member FDIC

EXHIBIT F
39



December 31, 2016through January 31, 2017
Account Number:                    **7608**

This Page Intentionally Left Blank

EXHIBIT G

**EAGAN AVENATTI, LLP**
**520 Newport Center Drive, Suite 1400**
**Newport Beach, CA 92660**
**(949) 706-7000**

**December 5, 2016**

**ATTORNEY-CLIENT FEE CONTRACT (CONTINGENCY)**

This ATTORNEY-CLIENT FEE CONTRACT (this "Agreement") is the written fee contract that California law requires lawyers to have with their clients. It is between Eagan Avenatti, LLP (the "Attorney") and Alexis Gardner (the "Client").

**1.    CONDITIONS.**  This Agreement will not take effect, and Attorney will have no obligation to provide legal services, until Client returns a signed copy of this Agreement.

**2.    SCOPE OF SERVICES.**  Client is hiring Attorney to represent Client in connection with her affirmative claims arising out of her ███████████████████████. Attorney will provide those legal services reasonably required to represent Client and take reasonable steps to inform Client of progress and to respond to Client's inquiries.

Attorney will represent Client in any court action until a settlement or judgment, by motion, arbitration or trial, is reached, and in connection with any appropriate post-trial motions. In addition, Attorney may at any time and at its discretion retain outside counsel, whose legal fees will be deducted from the fees received by Attorney. Client and Attorney agree that any legal services provided on behalf of Client in connection with any appeal relating to Client's claims shall be covered by this Agreement.

Client acknowledges that certain of Client's claims referenced above may be barred by the applicable statute of limitations.

**3.    CLIENT'S DUTIES.**  Client agrees to be truthful with Attorney, to cooperate, to keep Attorney informed of developments, to abide by this Agreement, and to pay bills for costs on time.

**4.    LEGAL FEES, COSTS AND BILLING PRACTICES.**  Attorney will receive a Contingent Fee of thirty-three percent (33%) if a *Recovery* (defined below) is obtained between the date of this agreement and prior to the filing of a lawsuit or arbitration proceeding, and a Contingent Fee of forty percent (40%) of any *Recovery* obtained after the filing of a lawsuit or arbitration proceeding.

   *"Recovery"* will include any cash; the fair market value of any property stock, note, partnership interest, carried interest, stock option, business accommodation, loan, and funding; and other consideration received in connection with the settlement, judgment, or other resolution of any of Client's claims as referenced above, including but not limited to any jury award, arbitration award, award of attorneys' fees, discovery sanctions, other monetary sanctions, and/or similar awards which an opposing party is required to pay to Client.

   If payment of all or any part of the amount to be received will be deferred (such as in the case of an annuity, a structured settlement, or periodic payments), the *"Recovery"* for purposes of calculating the Attorney's fees, will be the initial lump-sum payment plus the present value, as of the time of the binding resolution, of the payments to be received thereafter. The attorney's fees will be paid out of the initial lump-sum payment. If the payment is insufficient to pay the attorney's fees in full, the balance will be paid from subsequent payments of the *Recovery* before any distribution to Client.

-1-

In the event of discharge or withdrawal of Attorney as provided in Paragraph 10, Client agrees that Attorney shall be entitled to be paid by Client, upon binding resolution of Clients' claims, whether by settlement, judgment or arbitration award in favor of Client, a reasonable fee for the legal services provided by Attorney, provided, however, that (a) in no event shall Attorney receive less than twenty percent (20%) of any Recovery even if discharged and (b) in the event Attorney is discharged after either resolution of any of Clients' claims as referenced above or an agreement to resolve any such Claims, Attorney shall be entitled to the full Contingent Fee described above in this Paragraph.

**5.     NEGOTIABILITY OF FEES.**  The rates set forth above are not set by law, but were negotiated between Attorney and Client.

**6.     COSTS, DISBURSEMENTS AND EXPENSES.**  Client will reimburse attorney for all out-of-pocket litigation and trial costs and expenses from the proceeds received by Client, if any, at the conclusion of litigation.   "Costs and expenses" include filing and court fees, investigation expenses, process fees, investigation fees, graphic art and filming fees, PowerPoint fees, computer animation fees, expert fees, deposition costs, photocopying charges, mock trials or focus groups, jury fees, computerized research, jury trial consultant fees, telephone toll charges, travel costs, mail messenger and other delivery charges, postage and any other necessary expenses in this matter.  Client authorizes Attorney to incur all reasonable costs and to hire any investigators, consultants or expert witnesses reasonably necessary in Attorney's judgment.

**7.     INSURANCE COVERAGE.** Attorney maintains errors and omissions insurance coverage applicable to the services to be rendered to Client.

**8.     ARBITRATION.  Any dispute arising under this Contract or in connection with legal services provided to Client, including but not limited to any claim by Client against Attorney or any employees or attorneys associated with Attorney for malpractice or other tort claim, shall be resolved by binding arbitration before JAMS located in Los Angeles, California. Such arbitration shall be conducted in accordance with the arbitration rules and procedures of JAMS then in effect.  Client acknowledges that Client has been fully advised of all of the possible consequences of arbitration including but not limited to:**

    a.   **If a malpractice action arises from this Agreement, neither Client nor Attorney will have the right to a jury trial.**

    b.   **Both parties retain the right to retain counsel to prepare their respective claims and/or defenses for the arbitration hearing.**

    c.   **Client can choose or hire an attorney who may not request or whose retainer agreement does not contain an arbitration provision.**

**9.     RELATED UNKNOWN MATTERS.**  Client represents that Client does not know of any related legal matters that would require legal services to be provided under this Agreement.   If such a matter arises later, Client agrees that this Agreement does not apply to any such related legal matters, and a separate Agreement for provision of services and payment for those services will be required if Client desires Attorney to perform that additional legal work.

**10.    DISCHARGE AND WITHDRAWAL.**  Client may discharge Attorney at any time, upon written notice to Attorney, and Attorney will immediately after receiving such notice cease to render additional services in a manner that avoids foreseeable prejudice to Client.  Such a discharge does not, however, relieve Client of the obligation to pay any costs incurred prior to such termination, and Attorney has the right to recover from Client the reasonable value of Attorney's legal services rendered from the effective date of this Agreement (Paragraph 14) to the date of discharge, provided, however, that in the event Attorney is discharged after either resolution of any of Clients' claims as referenced above or an agreement to resolve any such Claims, Attorney shall be entitled to the full Contingent Fee described above in Paragraph 4.

Attorney may withdraw from representation of Client (a) with Client's consent, or (b) upon court approval, or (c) if no court action has been filed, upon reasonable notice to Client.

**11.    LIEN.** Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Agreement. Attorney's lien will be for any sums owing to Attorney for any unpaid costs or attorneys fees under this Agreement. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise. The lien created herein is considered an adverse interest within the meaning of Rule of Professional Conduct 3-300 and requires Client's informed written consent. In accordance with that Rule, Attorney advises Client that it may seek the advice of an independent lawyer of Client's choice, and that Client need not sign this Agreement until it has had a reasonable opportunity to seek that advice. By signing this Agreement, Client consents to the Attorney's Lien described herein.

**12.    CONCLUSION OF SERVICES.** When Attorney's services conclude, other than by discharge or withdrawal, all unpaid charges will immediately become due and payable. After Attorney's services conclude, Attorney will, upon Client's request, deliver Client's file to Client, along with any Client's funds or property in Attorney's possession.

**13.    DISCLAIMER OF GUARANTEE.   Nothing In this Agreement and nothing in Attorney's statements to Client before or after the signing of this Agreement will be construed as a promise or guarantee about the outcome of Client's matter. Attorney makes no such promises or guarantees. There can be no assurance that Client will recover any sum or sums in this matter. Attorney comments about the outcome of Client's matter are expressions of opinion only.**

**14.    EFFECTIVE DATE.** This Agreement will take effect when Client has performed the conditions stated in Paragraph 1. The date at the beginning of this Agreement is for reference only.

"Attorney"

EAGAN AVENATTI, LLP

Michael J. Avenatti

I have read and understood the foregoing terms and agree to them. By signing this Agreement, I further acknowledge receipt of a fully executed duplicate of this Agreement.

"Client"

**Alexis Gardner**

Date:  12-5-16

-3-

EXHIBIT H

0270143512        PAGE

##XXH1309DPCSTM            ▇▇▇▇512

Page 1     (0)

Account #:  ▇▇▇512

This statement: June 29, 2018          Contact us:
Last statement: May 31, 2018           800 773-7100

                                       Newport Center Office
                                       500 Newport Center Drive
270                    0830N           Newport Beach, CA 92660
MICHAEL AVENATTI ESQ
ATTORNEY CLIENT TRUST ACCOUNT          cnb.com
520 NEWPORT CENTER DR SUITE 1400
NEWPORT BEACH CA 92660


Legal Services Trust Fund Acct

| Account Summary | | Account Activity | | |
|---|---|---|---|---|
| Account number | 270143512 | Beginning bal | (5/31/2018) | $4,044.60 |
| Minimum balance | $1,032.60 | Deposits | (0) | + 0.00 |
| Average balance | $3,869,149.12 | Electronic cr | (1) | + 17,000,000.00 |
| Avg. collect bal | $3,869,149.00 | Other credits | (1) | + 92.22 |
| Avg. bal for APY | $3,869,149.12 | Total credits | | + $17,000,092.22 |
| APY earned | 0.03% | Checks paid | (0) | - 0.00 |
| Interest earned | $92.22 | Electronic db | (11) | - 16,759,375.55 |
| Interest-bearing days | 29 | Other debits | (14) | - 252.22 |
| Interest paid YTD | $96.71 | Total debits | | - $16,759,627.77 |
| | | Ending balance | (6/29/2018) | $244,509.05 |

ELECTRONIC CREDITS
| Date | Description | | Credits | Control Number |
|---|---|---|---|---|
| 6-18 | Incoming Wire-Dom | | 17,000,000.00 | 180618000007604 |

OTHER CREDITS
| Date | Description | Reference | Credits | Control Number |
|---|---|---|---|---|
| 6-29 | Interest Credit | | 92.22 | 000000000000000 |

ELECTRONIC DEBITS
| Date | Description | Debits | Control Number |
|---|---|---|---|
| 6-11 | Tnet Wire Out-Dom | 3,000.00 | 180611000003937 |
| 6-18 | Tnet Wire Out-Dom | 1,200,000.00 | 180618000007616 |
| 6-20 | Tnet Wire Out-Dom | 12,375.24 | 180620000002836 |
| 6-25 | Tnet Wire Out-Dom | 4,000.00 | 180625000008474 |
| 6-25 | Tnet Wire Out-Dom | 6,177,003.07 | 180625000004873 |
| 6-25 | Tnet Wire Out-Dom | 9,122,996.92 | 180625000004872 |
| 6-26 | Tnet Wire Out-Dom | 50,000.00 | 180626000005635 |
| 6-26 | Wire Tsfr Debit | 50,000.00 | 180626000007842 |
| 6-27 | Tnet Wire Out-Dom | 30,000.00 | 180627000006676 |



███ 3512        PAGE

##XXH1309DPCSTM        ███ 3512

MICHAEL AVENATTI ESQ              Page 2
June 29, 2018                     Account #:  ███ 3512

ELECTRONIC DEBITS (Continued)
Date   Description                                          Debits  Control Number
6-27   Tnet Wire Out-Dom                                100,000.00  180627000004050
6-28   Tnet Wire Out-Dom                                 10,000.32  180628000006306

OTHER DEBITS
Date   Description                              Reference     Debits  Control Number
6-11   Service Charge TNET WIRE OUT-DOM                        12.00  000000000000000
6-18   Service Charge INCOMING WIRE-DOM                        15.00  000000000000000
6-18   Service Charge TNET WIRE OUT-DOM                        12.00  000000000000000
6-20   Account Transfer Dr. TO ACC ███ 3504                    20.00  294000620080534
6-20   Service Charge TNET WIRE OUT-DOM                        12.00  000000000000000
6-25   Service Charge TNET WIRE OUT-DOM                        12.00  000000000000000
6-25   Service Charge TNET WIRE OUT-DOM                        12.00  000000000000000
6-25   Service Charge TNET WIRE OUT-DOM                        12.00  000000000000000
6-26   Service Charge TNET WIRE OUT-DOM                        12.00  000000000000000
6-26   Service Charge WIRE TSFR DEBIT                           5.00  000000000000000
6-27   Service Charge TNET WIRE OUT-DOM                        12.00  000000000000000
6-27   Service Charge TNET WIRE OUT-DOM                        12.00  000000000000000
6-28   Service Charge TNET WIRE OUT-DOM                        12.00  000000000000000
6-29   Interest Transfer TO ACCOUNT NO ███ 8897               92.22  000000000000000

DAILY BALANCES
Date        Amount  Date         Amount  Date      Amount
05-31     4,044.60  06-20  15,788,598.36  06-27  254,521.37
06-11     1,032.60  06-25     484,562.37  06-28  244,509.05
06-18  15,801,005.60  06-26     384,545.37  06-29  244,509.05

Outgoing Wires

| Bank ID | Debit Account | Debit Party Name | Credit Account | Credit Party Name | Originator | Beneficiary | Tran Date | Tran Num | Amount |
|---|---|---|---|---|---|---|---|---|---|
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | CUSTOMERS BANK | | Einbinder & Dunn LLP | 20180514 | 3876 | 27467.01 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti, LLP Trust | 20180515 | 2151 | 100000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti, LLP Trust | 20180521 | 4156 | 100000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | CHASE MANHATTAN BANK | | Examiner The Movie, LLC | 20180521 | 4155 | 25000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti, LLP Trust | 20180524 | 6997 | 100000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | BANK OF AMERICA, N.A., NY | | Talitha A Barela | 20180525 | 6653 | 30000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | BANK OF AMERICA, N.A., NY | | Talitha A Barela | 20180525 | 12003 | 30000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti Trust | 20180531 | 3354 | 90000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | JPMORGAN CHASE BANK, NA | | Mareli Miniutti | 20180611 | 3937 | 3000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti, LLP Trust | 20180618 | 7616 | 1200000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | BANK OF AMERICA, N.A., NY | | LA Girl Friday | 20180620 | 2836 | 12375.24 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | BANK OF AMERICA, N.A., NY | | Joshua Viner | 20180625 | 4872 | 9122996.92 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | BANK OF AMERICA, N.A., NY | | Jonathan Viner | 20180625 | 4873 | 6177003.07 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | CAPITAL ONE, NA | | Pamela Baez | 20180625 | 8474 | 4000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | THE BOSTON PRIVATE BK. & TR CO | | Raines Feldman LLP | 20180626 | 5635 | 50000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 9844 | BAKER KEENER & NAHRA LLP | | | 20180626 | 7842 | 50000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti, LLP Trust | 20180627 | 4050 | 100000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | BANK OF AMERICA, N.A., NY | | Talitha A. Barela | 20180627 | 6676 | 30000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | WELLS FARGO BANK | | Honda Aircraft Company, LLC | 20180628 | 6306 | 10000.32 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | JPMORGAN CHASE BANK, NA | | Mareli Miniutti | 20180702 | 6392 | 4000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti, LLP Trust | 20180703 | 3750 | 100000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | JPMORGAN CHASE BANK, NA | | Kenny Nguyen | 20180703 | 4583 | 7428 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Mareli Miniutti | 20180709 | 2304 | 2500 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | JPMORGAN CHASE BANK, NA | | Mareli Miniuti | 20180709 | 10050 | 2500 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti Trust | 20180711 | 1381 | 30000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti, LLP Trust | 20180713 | 5047 | 84000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | JPMORGAN CHASE BANK, NA | | Mareli Miniutti | 20180713 | 4777 | 2500 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | BANK OF AMERICA, N.A., NY | | Geoffrey Johnson | 20180720 | 6292 | 1900 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti LLP Client Trust | 20180726 | 1567 | 8000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti LLP Client Trust | 20180801 | 5340 | 1400 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | BANK OF AMERICA, N.A., NY | | Geoffrey Johnson | 20180810 | 1763 | 1900 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | BANK OF AMERICA, N.A., NY | | Geoffrey Johnson | 20180815 | 3320 | 1900 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti, LLP Trust | 20180905 | 7842 | 50000 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti, LLP Trust | 20180914 | 7003 | 1750 |
| CNB | 3512 | MICHAEL AVENATTI ESQ | 8287 | ZB NA DBA CALIFORNIA BANK & TRUST | | Eagan Avenatti, LLP Trust | 20180917 | 4250 | 4375 |

1

**PROOF OF SERVICE OF DOCUMENT**

2

I am over the age of 18 and not a party to this case.  My business address is:

3

**Landau Law LLP, 141 South Windsor Blvd., Los Angeles, California 90004.**

4

A true and correct copy of the foregoing document entitled (*specify*): ***Notice of Errata and Complete Version of Reply Brief of Richard A. Marshack, in his Capacity as the Trustee of the Chapter 7 Bankruptcy Estate of Eagan Avenatti, LLP, Regarding Estate's Interest in Honda Jet; Supporting Declaration of John P. Reitman*** will be served or was served in the manner stated below:

5

6

7

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  The foregoing document will be served by the court via NEF and hyperlink to the document.  On **June 27, 2023,** I checked the CM/ECF docket for this case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

8

9

10

☒ Service information continued on attached page

11

2. **SERVED BY UNITED STATES MAIL**:  On, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 12:00 noon on the following business day.

12

13

14

15

☐ Service information continued on attached page

16

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  On **June 27, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method) facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 12:00 noon on the following business day.

17

18

19

20

☒ Service information continued on attached page

21

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

22

23

24

| June 27, 2023 | Hannah Richmond | */s/ Hannah Richmond* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

25

26

27

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  **1.  SERVED BY THE COURT VIA NEF (continued):**

2
3  - **Daniel G. Boyle**
   daniel.boyle2@usdoj.gov,gabriela.arciniega@usdoj.gov,USACAC.Criminal
   @usdoj.gov,caseview.ecf@usdoj.gov,Tarleen.Khauv@usdoj.gov,shatera.tayl
4  or@usdoj.gov,Jonathan.Wettstein@usdoj.gov
5  - **A Barry Cappello**
   abc@cappellonoel.com,jorta@cappellonoel.com,mduong@cappellonoel.com.
6  com,adickerson@cappellonoel.com,mmiller@cappellonoel.com,rlloyd@capp
   ellonoel.com,krodriguez@cappellonoel.com
7  - **Carlos X Colorado**
   cc@xlawx.com
8  - **Lawrence J Conlan**
   lconlan@cappellonoel.com,mduong@cappellonoel.com,adickerson@cappello
9  noel.com,mmiller@cappellonoel.com,acohen@cappellonoel.com,krodriguez
   @cappellonoel.com,jorta@cappellonoel.com,rlloyd@cappellonoel.com
10 - **James Edmund Dochterman**
11 james.dochterman@usdoj.gov,USACAC.Criminal@usdoj.gov,Luis.Chaves@
   usdoj.gov,cecilia.anderson@usdoj.gov,Paul.Read@usdoj.gov,CaseView.ECF
12 @usdoj.gov
13 - **Margaret A. Farrand**
   Margaret_Farrand@fd.org,zzCAC_FPD_Document_Receiving@fd.org,cac_a
14 ppointments@fd.org
   - **Patrick R Fitzgerald**
15 USACAC.Criminal@usdoj.gov,patrick.fitzgerald@usdoj.gov,CaseView.ECF
   @usdoj.gov
16 - **Thomas Edward Gray**
17 tg@xlawx.com,TC@xlawx.com,MR@xlawx.com
   - **Ranee Katzenstein**
18 ranee.katzenstein@usdoj.gov,USACAC.Criminal@usdoj.gov,CaseView.ECF
   @usdoj.gov
19 - **Richard Lloyd**
20 rlloyd@cappellonoel.com
   - **Filippo Marchino**
21 fm@xlawx.com,TG@xlawx.com,CC@xlawx.com,TC@xlawx.com,SG@xla
   wx.com,DB@xlawx.com
22 - **Jack Andrew Reitman**
23 jareitman@gmail.com,elange@kdvlaw.com
   - **John P Reitman**
24 jreitman@landaufirm.com,srichmond@landaufirm.com,hrichmond@landaufi
   rm.com,vrichmond@landaufirm.com,amendes@landaufirm.com
25 - **Brett A. Sagel**
26 brett.sagel@usdoj.gov,USACAC.SACriminal@usdoj.gov,CaseView.ECF@u
   sdoj.gov
27 - **H. Dean Steward**
   deansteward7777@gmail.com,courtneycummingsesq@outlook.com,working
28 witheh@gmail.com,deansteward@fea.net

Landau Law LLP
Attorneys At Law
Los Angeles, California

- **Andrew D. Stolper**
  astolper@lawfss.com,mnowowiejski@lawfss.com,astolper@ecf.courtdrive.com

**3.  SERVED BY PERSONAL DELIVERY (continued):**

Honorable James V. Selna
Ronald Reagan Federal Building and United States Courthouse
411 West Fourth Street, Courtroom 10C
Santa Ana, CA 92701-4516