A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
Lawrence J. Conlan (CSB No. 221350)
lconlan@cappellonoel.com
Wendy D. Welkom (CSB 156349)
wwelkom@cappellonoel.com
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

Attorneys for Petitioner
Spring Creek Research LLC and William Parrish

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | Case No. 8:19-cr-0061-JVS<br><br>**PETITIONER SPRING CREEK RESEARCH LLC'S SUPPLEMENTAL BRIEF REGARDING CONSTRUCTIVE TRUST** |

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................3

II. LEGAL ARGUMENT ................................................................................................3

    A.    The Ninth Circuit has disavowed, in criminal proceedings, the concept that a constructive trust only comes into being when a court rules on it.....4

    B.    JFL's authorities are largely inapt in this criminal context. ........................6

    C.    Under the Criminal Forfeiture statute Spring Creek has a superior interest. ........................................................................................................................7

    D.    JFL was required to file its Notice of Judgment Lien with the FAA and seek to attach the jet, and there is no evidence that it did. ...........................8

    E.    Even a judgment lien must specify the particular property. ........................8

III. CONCLUSION .............................................................................................................9

## I. INTRODUCTION

Jason Frank Law, PLC ("JFL") contends its judgment lien trumps the interests of Spring Creek Research, LLC ("Spring Creek") and other forfeiture claimants under a constructive trust theory not applicable to criminal forfeiture proceedings. JFL ignores the requirements of 21 U.S.C. 853(n)(6), the criminal forfeiture statute which applies here.

JFL relies instead on authorities that do not involve a criminal forfeiture proceeding or the application of 21 U.S.C. 853(n)(6), with one exception. That exception is *United States v. Wilson*, 659 F.3d 947, 954–55 (9th Cir. 2011), which directly undercuts JFL's theory of when a constructive trust arises in an § 853(n) case. The *Wilson* court confirmed "California law as establishing a constructive trust at the time the fraud is perpetrated, without further court action." *Wilson, supra*, 659 F.3d at 954-955. And it rejected the theory advanced by JFL that a constructive trust does not come into existence until a court decides.

JFL fails to establish that it obtained an interest in the specific property at issue here, the jet, at all, let alone *before* the criminal conduct on which the forfeiture was based, or that it is a bona fide purchaser. Moreover, even if JFL could satisfy the requirements of the forfeiture statute, it failed to perfect an interest in the jet. In sum, JFL's argument that it has an interest in the jet superior to Spring Creek is legally incorrect.

## II. LEGAL ARGUMENT

Under 21 U.S.C. § 853(n)(6), a petitioner must demonstrate by a preponderance of the evidence that it (A) has a vested interest or interest superior to the defendant, or (B) was a bona fide purchaser for value. 21 U.S.C. § 853(n)(6).

The Court looks to state law to determine property rights. *U.S. v. Nava,* 404 F.3d 1119, 1127 (9th Cir. 2005). Notably, a defendant's plea bargain cannot establish his ownership of the property, *if the property is not his own*. *Id.,* at 1133;

see also, *U.S. v. Hooper*, 229 F.3d 818, 823 (9th Cir. 2000) (criminal forfeiture is an *in personam* proceeding, and could not cause the forfeiture of property other than that of the defendant).

### A. The Ninth Circuit has disavowed, in criminal proceedings, the concept that a constructive trust only comes into being when a court rules on it.

JFL relies heavily on *CHoPP Computer Corp. v. U.S.*, 5 F.3d 1344 (9th Cir. 1993), a tax case, for the proposition that constructive trust is a remedy that may only come into effect when the Court orders it. But this principle has been implicitly overruled or superseded by more recent Ninth Circuit criminal authority.

Notably, the *CHoPP* court explained that: "CHoPP is simply not in the position of a plaintiff who seeks return of an identifiable res wrongfully taken or wrongfully retained. See, e.g., *People v. One 1960 Ford 2DHTTHBD*, 39 Cal.Rptr. 636, 638 (Cal. App. 1st Dist. 1964) (a true owner of misappropriated property stands above a mere creditor)." *CHoPP, supra*, 5 F.3d 1344, 1349, 1350, emphasis added. Turning to the case cited by the *CHoPP* court, one finds: "The person holding the property may have acquired it through fraud, undue influence, breach of trust, or in any other improper manner and he is usually personally liable in damages for his acts. But the one whose property has been taken from him is not relegated to a personal claim against the wrongdoer, which might have to be shared with other creditors; he is given the right to a restoration of the property itself." *People v. One 1960 Ford 2DHTTHBD*, 228 Cal. App. 2d 571, 574 (1964). This language clearly demonstrates that the two claims are different, and only one of them – the one whose property was taken – requires return of the specific property which was taken.

Moreover, to the extent the theory JFL relies on under the *CHoPP* case and *Securities and Exchange Commission v. Private Equity Management Group*, Case

1  No. CV09-2901 PSG (Ex), 2012 WL 12882382, at *7 (C.D. Cal. 9/28/2012) is even
2  applicable in a criminal forfeiture proceeding like this one, it was implicitly
3  overruled/superseded by the Ninth Circuit in two subsequent cases.
4      First, in *United States v. $4,224,958.57 (Boylan)*, 392 F.3d 1002 (9th Cir.
5  2004), the court stated: "It is an elementary mistake to suppose that a court creates
6  the trust. The expression 'the court constructs the trust' is 'absurd.' *Id*. <u>The
7  obligation on the fraudster is imposed by law and arises immediately with his
8  acquisition of the proceeds of the fraud</u>." *Boylan, supra*, 392 F.3d at 1004.
9  Second, in *United States v. Wilson*, 659 F.3d 947, 954–55 (9th Cir. 2011), the court
10 stated: "Under *Boylan*, this Court interprets California law as establishing a
11 constructive trust at the time the fraud is perpetrated, without further court action."
12 *Wilson, supra*, 659 F.3d at 954-955.
13     Here, under 21 U.S.C. § 853(n), JFL has no interest that pre-dates Spring
14 Creek's payment directly to Honda or Spring Creek's payment to Passport that was
15 then embezzled by Avenatti. Indeed, at the time Avenatti embezzled Ms. Gardner's
16 settlement funds, he had already embezzled Spring Creek's second payment of
17 $1,985,000. At least some of those funds, $138,800 (Spring Creek to Passport 420
18 to Eagan Avenatti to Honda) and $858,605 (Spring Creek to Passport 420 to Eagan
19 Avenatti to Avenatti & Associates to Honda) were paid directly to Honda to
20 purchase the aircraft. That fraud was perpetrated long before JFL's lien.
21     JFL asserts that Spring Creek's constructive trust would only come into
22 effect when the court makes its ruling, making JFL's legal interest superior. But
23 that is exactly what the government argued and the Ninth Circuit explicitly rejected
24 in *Wilson*: "The Government proposes that the whole issue can be resolved if we
25 overturn *Boylan*. The Government maintains that without *Boylan*, no constructive
26 trust would have automatically been in place on behalf of Gray, and as a result, he
27 would be unable to proceed under § 853. . . Nevertheless, in *Boylan*, we scoffed at
28 the notion that a constructive trust could not come into existence until a court so

decided." *Wilson, supra*, 659 F.3d at 954.

It is thus clear that Spring Creek's interest is superior to JFL: its funds were paid directly to Honda, and others were embezzled by Avenatti long before JFL's lien, most of which were used to purchase the jet. JFL, by contrast, is not a victim of Avenatti's embezzlement. None of its money was used to purchase the jet. JFL is simply a general creditor of Michael Avenatti.

### B. JFL's authorities are largely inapt in this criminal context.

JFL cites only one criminal case, *Wilson, supra,* which confirms that a constructive trust arises at the time of embezzlement, and which destroys JFL's primary argument in these criminal ancillary proceedings.

Most of JFL's other authorities are bankruptcy cases. As indicated in *Wilson, supra*, these bankruptcy cases are simply inapplicable here in this criminal proceeding. The cases include: *In re Advent Management Corp*, 178 B.R. 480, 488 (9th Cir. BAP 1995) (constructive trust is inchoate in civil bankruptcy until court establishes that it arose as a matter of law); *CHoPP, supra*, 5 F.3d 1344, discussed *supra*; *Urez Corp. v. Superior Court*, 235 Cal. Rptr. 837, 841-842 (Cal.App.2d Dist.1987) (action for money damages for fraud will not support *lis pendens*); *In re Charlton*, 389 B.R. 97, 104 (N.D. Cal. 2008) (retroactive imposition of constructive trust was ineffective against prior levy in bankruptcy); *In re Imagine Fulfillment Services, LLC*, 489 B.R. 136, 144 (C.D. Cal. 2013) (judgment takes effect when filed); *In re Advent Management Corp*., 104 F.3d 293, 296 (9th Cir. 1997) (strict tracing standard applicable to bankruptcy cases involving commingled funds, claimant must trace specifically and directly back to illegal transfers); *In re Goldberg*, 168 B.R. 382, 385 (B.A.P. 9th Cir. 1994) (tracing applied to protect creditors, but not to trustee wrongdoer); *Rivero v. Thomas*, 86 Cal.App.2d 225, 238 (Cal. App. 1st Dist. 1948) (strict tracing not applied). At the hearing, JFL also presented *Securities and Exchange Commission v. Private Equity Management*

*Group*, Case No. CV09-2901 PSG (Ex), 2012 WL 12882382, at *7 (C.D. Cal. 9/28/2012) (civil SEC proceeding, relying on *CHoPP,* which has been distinguished in the forfeiture context).

The above cases applied the key principle in bankruptcy cases: equity should apply to all creditors of the debtor's estate. See, 11 U.S.C. § 541. Here, however, what is involved is a specific criminal rule with two specific requirements: (1) demonstrating a vested interest or an interest superior to the criminal defendant, or (2) establishing oneself as a bona fide purchaser. This Court should apply 21 U.S.C. § 853(n)(6) and find that to the extent JFL has any interest in the jet, it is inferior to Spring Creek and the other claimants.

### C. Under the Criminal Forfeiture statute Spring Creek has a superior interest.

One purpose of this ancillary proceeding is to determine what, if any, interest the criminal defendant owned in the forfeited property. *Wilson, supra*, 659 F.3d at 953–954. The forfeited property in this case is specifically limited to the Honda aircraft, registration number N227WP, aircraft serial number 42000029, together with its paraphernalia. Dkt. 975, page 2 of 5, Page ID #:22935.

Here, the criminal defendant is Michael Avenatti. But the Honda Jet is not and was not owned by Michael Avenatti. To the contrary, it is titled in the name of Passport 420, LLC. Dkt 987, Pages 67-70, Page ID #:23154-23156. That is not Michael Avenatti. Nor is Avenatti a member of Passport 420. Passport's Operating Agreement provides its members will own the jet, and that it will lease the jet, exclusively, to its members, Spring Creek and Avenatti & Associates ("A&A"). Dkt 987, Page 46 of 70, Page ID #:23133. Under *Claudino v. Pereira*, 165 Cal.App.4th 1282, 1289 (Cal. App. 3d Dist. 2008), no one could "lawfully convey to her more property than they owned." And these members – Spring Creek and A&A – are also not Avenatti.

So, *even if* Avenatti was deemed to "own" one-half of the jet, as controlling member of A&A, Spring Creek's owner's/lessee's/co-tenant's interest in the jet arose long *before* JFL filed its Notice of Judgment Lien.

### D. JFL was required to file its Notice of Judgment Lien with the FAA and seek to attach the jet, and there is no evidence that it did.

Critically, JFL has failed to show it filed anything with the Federal Aviation Administration ("FAA"), or that it sought to execute on the jet. Instruments affecting title to or interest in aircraft must be recorded with the FAA to be valid. If the officer is instructed to levy on an aircraft or aircraft part subject to federal registration statutes, the notice of attachment, a copy of the writ of attachment, and the sheriff's return of service also must be recorded with the appropriate federal agency. *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 407 (1983) (FAA lien recording requirement preempts state rules); *Dowell v. Beech Acceptance Corp., Inc.*, 3 Cal.3d 544, 550-551 (Cal. 1970) (Congress prescribed way in which aircraft may be transferred and liens recorded; applying state law would ignore the existence of the federal system). Because there is no evidence that JFL did any of the above listed things, it cannot assert a valid interest in the jet.

### E. Even a judgment lien must specify the particular property.

Case law is clear that a third party who claims an interest in the forfeited property must prove its interest in the *specific* property which was forfeited, not a general interest in the debtor's estate. See, e.g., *United States v. Hernandez-Escobar*, 911 F.3d 952, 957-959 (9th Cir. 2018) (when identity of bailment was lost, claimant was akin to a general depositor); *U.S. v. $20,193.39 U.S. Currency*, 16 F.3d 344, 347 (9th Cir. 1994) (Section "853(n) requires more than a legal interest in the debtor's estate; the petitioner must show that the interest exists in the specific property that is subject to forfeiture," citing *U.S. v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) ["Although general creditors can claim an interest in any

their debtors' estates, they cannot claim an interest in any particular asset that makes up that estate."].

A similar result was obtained in *United States v. Kokoszka*, No. 2:13-cv-00419-JAD-PAL, 2015 WL 5990205, at *4 (D. Nev. Oct. 14, 2015), where a bank secured a judgment against the defendant personally, rather than against any specific property or account, was therefore a general creditor without a claim under 21 U.S.C. Section 853(n)(6).  There, the court stated:

> "Unlike a secured creditor, a general creditor cannot point to any specific asset and claim that it is entitled to payment out of the value of that specific asset, *unless it has already secured a judgment against the debtor and perfected a lien against a particular item*." Emphasis added, footnote omitted.

Here, JFL filed its Notice of Judgment Lien against Michael Avenatti on December 6, 2018.  Dkt 984, page 26 of 31, Page ID #:23060.  This document does not identify a lien on any particular property.  JFL therefore is a general creditor, without a specific interest in the jet.

### III. CONCLUSION

For all of the above reasons, Spring Creek respectfully requests that this Court reject JFL's Notice of Judgment Lien to the extent that it purports to be a valid interest in this ancillary criminal proceeding superior to Spring Creek.

DATED: July 3, 2023                     CAPPELLO & NOËL LLP

                                        By: */s/ Lawrence J. Conlan*
                                            A. Barry Cappello
                                            Lawrence J. Conlan
                                            Wendy D. Welkom
                                            Attorneys for
                                            Spring Creek Research, LLC

# CERTIFICATE OF SERVICE

I, Lawrence J. Conlan, hereby certify that on July 3, 2023, I caused the foregoing **PETITIONER SPRING CREEK RESEARCH LLC'S SUPPLEMENTAL BRIEF REGARDING CONSTRUCTIVE TRUST** to be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Lawrence J. Conlan*
Lawrence J. Conlan