Andrew D. Stolper (SBN 205462)
astolper@lawfss.com
FRANK SIMS STOLPER, LLP
19800 MacArthur Blvd., Suite 855
Irvine, California 92612
Telephone:   (949) 201-2400
Facsimile:   (949) 201-2405

Attorneys for Claimant,
  JASON FRANK LAW, PLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL JOHN AVENATTI,<br><br>Defendant. | Case No.  8:19-CR-00061-JVS<br><br>**CLAIMANT JASON FRANK LAW, PLC'S <u>SUPPLEMENTAL</u> BRIEF RE PRIMACY POSITION IN DISPUTED PROPERTY** |

Claimant Jason Frank Law, PLC ("JFL") hereby submits its Supplemental Brief regarding whether JFL's secured judgment lien would have priority over the potential constructive trusts the Court may impose in favor of the Spring Creek LLC ("Spring Creek"), Alexis Gardner ("Gardner") and the Estate of Eagan Avenatti (the "Estate").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    Judgment Liens Have Priority Over Constructive Trusts Even When the
      Wrongful Conduct Occurred Prior to the Judgment ................................ 5

II.   The Jet is the Personal Business Property of Avenatti ........................... 7

    A.    A Judgment Creditor May Enforce a Judgment Lien Against Property
        Nominally Held by or Owed to a Corporate Entity by Showing that the
        entity is the Alter Ego of the Judgment Debtor. ........................... 7

    B.    Avenatti has a Legal Interest in the Jet and Proceeds from the Sale that is
        subect to JFL's Lien. .................................................................. 9

    C.    AA is the Alter Ego of Avenatti ............................................... 10

    D.    Passport 420 is the Alter Ego of Avenatti. ............................... 11

III.  CONCLUSION ......................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

In re Charlton,
    389 B.R. 97 (N.D. Cal. 2008)...........................................................5, 6

CHoPP Computer Corp. v. U.S.,
    5 F.3d 1344 (9th Cir. 1993) ....................................... *passim*

Fleet Credit Corp. v. TML Bus Sales, Inc.,
    65 F.3d 119, 121-22 (9th Cir. 1995) .......................... *passim*

In re Imagine Fulfillment Services, LLC,
    489 B.R. 136 (C.D. Cal. 2013) .........................................................7

In re Lewis W. Shurtleff, Inc.,
    778 F.2d 1416 ...............................................................................5

U.S. v. Wilson,
    659 F.3d 947 (9th Cir. 2011) ...........................................................5

S.E.C. v. Private Equity Management Group, Inc.,
    2012 WL 12882382, at *7-8 (C.D. Cal. Sept. 28, 2012)....................6

Wham-O, Inc. v. Manley Toys, Ltd.,
    2008 WL 11339120, at *1 (C.D. Cal. Oct. 3, 2008) ............... *passim*

**California Cases**

American Master Lease LLC v. Idanta Partners, Ltd.,
    225 Cal.App.4th 1451, 1485 (2014)....................................................5

Automotriz etc. De California v. Resnick,
    47 Cal.2d 792, 796 (1957).............................................................10

Greenspan v. LADT, LLC,
    191 Cal.App.4th 486, 516 (2010).......................................................8

MSY Trading Inc. v. Saleen Automotive, Inc.,
    51 Cal.App.5th 395, 403-404 (2020).................................................9

Zoran Corp. v. Chen, 185 Cal.App.4th 799, 606-07 (2010)....................................10

3

**California Statutes**

Cal. Civ. Proc. Code
    § 683.050 ...................................................................................................9

Cal. Civ. Proc. Code
    § 697.510(a) ..............................................................................................7

Cal. Civ. Proc. Code
    § 708.210 ...............................................................................................8, 9

Cal. Civ. Proc. Code
    § 708.410 ...............................................................................................8, 9

CLAIMAINT JASON FRANK LAW, PLC'S SUPP. BRIEF RE PRIMACY POSITION IN DISPUTED PROPERTY

## I.   Judgment Liens Have Priority Over Constructive Trusts Even When the Wrongful Conduct Occurred Prior to the Judgment.

"The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing." American Master Lease LLC v. Idanta Partners, Ltd., 225 Cal.App.4th 1451, 1485 (2014). Because it focuses on preventing unjust enrichment of *wrongdoers*, courts in the Ninth Circuit will not impose the equitable remedy of a constructive trust to disadvantage the claims of innocent creditors and victims of the wrongdoer. U.S. v. Wilson, 659 F.3d 947, 956 (9th Cir. 2011); In re Lewis W. Shurtleff, Inc., 778 F.2d 1416, 1419-20 (9th Cir. 1985).

For this reason, "[u]nder California law, the rights of a judgment lien creditor are superior to those of a party that later obtains an order retroactively imposing a constructive trust." In re Charlton, 389 B.R. 97, 104 (N.D. Cal. 2008) (citing CHoPP Computer Corp. v. U.S., 5 F.3d 1344, 1348-49 (9th Cir. 1993). The Ninth Circuit held this rule applies even when the wrongful taking that underlies the basis for a constructive trust occurred prior to the judgment. CHoPP, 5 F.3d at 1348-49.

For example, in CHoPP, the United States obtained a tax delinquency judgment against a company. 5 F.3d at 1345-46. The Government then levied on a bank account controlled by the company's owner who was allegedly the alter ego of the company. Id. At the time of the levy, the government was aware that a third-party (CHoPP Computer) was seeking a constructive trust on the money in the account and had obtained a preliminary injunction freezing the account. Id. After obtaining the constructive trust, the third-party argued the Government had wrongfully taken the money from the account and was required to return it. Id.

The Ninth Circuit recognized that while "a constructive trust springs into existence at the moment a wrongful taking occurs," that a judgment lien in place before a court recognizes the trust has priority. CHoPP, 5 F.3d at 1348. There is a "clear indication that California discourages the use of equitable remedies" like constructive trusts "to ward off competing prior lienholders." Id. at 1348-49. It rejected the argument that a constructive

trust recognized by a court *after* the lien was secured can claim priority, regardless of when the wrongdoing creating the trust took place. Id.

Courts have consistently respected the rights of judgment creditors over parties who later gain court recognition of a constructive trust. S.E.C. v. PEM Group, Inc., 2012 WL 12882382, at *7-8 (C.D. Cal. Sept. 28, 2012); Charlton, 389 B.R. at 104 (holding that "the rights of a judgment lien creditor are superior to those of a party that later obtains an order retroactively imposing a constructive trust"). In PEM, Judge Gutierrez recognized a constructive trust for the benefit of investors who were defrauded in a Ponzi scheme operated by Danny Pang. 2012 WL 12882382 at *7. But the court "carved out" a prior judgment obtained by a non-investor (UICN), even though the judgment was obtained after the investors had been defrauded. Id. "[T]he constructive trust remedy generally should not be used to interfere with the collection of prior claims, at least where those claims have already been reduced to judgment." Id. (citing CHoPP, 5 F.3d at 1348).

JFL obtained a secured judgment lien against Avenatti by recording a Notice of Judgment Lien with the California Secretary of State on December 6, 2018 in the amount of $5,076,443.53. Dkt. 1104-1, ¶ 12; Dkt. 1104-7. This is a legal right that has priority over the retroactive recognition of equitable interests, and must be "carved out" from any equitable trusts imposed by the Court. CHoPP, 5 F.3d at 1348. [1]

## II.   THE PLANE IS THE PERSONAL BUSINESS PROPERTY OF AVENATTI

### A.   A Judgment Creditor May Enforce a Judgment Lien Against Property Nominally Held by or Owed to a Corporate Entity by Showing that the entity is the Alter Ego of the Judgment Debtor.

---

[1] Even assuming *arguendo* the Court could find a constructive trust has priority over a prior judgment lien (which it cannot under the law), JFL still would be entitled to at least the first $150,000 generated from the sale of the Jet based on the fact that AA paid at least this much money towards the purchase of the Jet (as a downpayment on the two planes in October 2006) *prior to* the theft of Gardner's money. See Tentative, pp. 1, 10-11 (awarding Spring Creek the first $488,800 generated from the sale of the Jet based on the theory that this money was paid by Spring Creek and "vested" prior to the theft of Gardner's settlement); Frank 2, ¶ 13. This relief is requested only in the alternative.

Under California law, "[a] judgment lien attaches to **business personal property interests** owned by the judgment debtor when the judgment lien is filed, as well as to any lienable property later acquired by the judgment debtor."   In re Imagine Fulfillment Services, LLC, 489 B.R. 136, 144 (C.D. Cal. 2013) (emphasis added) (citing Cal. Civ. Proc. Code § 697.510(a).)  "[A] judgment lien takes effect on the date a judgment creditor files its Notice of Judgment Lien with the Secretary of State.  Id.

At the hearing, Gardner's counsel noted that JFL's judgment lien is against Avenatti personally and not against his companies Avenatti & Associates, APC ("AA") or Passport 420, LLC ("Passport 420").  A party may enforce a judgment lien against property nominally held by or owed to a corporate entity by showing that the entity is the alter ego of the judgment debtor.  Fleet Credit Corp. v. TML Bus Sales, Inc., 65 F.3d 119, 121-22 (9th Cir. 1995) (citing Cal. Civ. Proc. Code §§ 708.210, 708.410); Wham-O, Inc. v. Manley Toys, Ltd., 2008 WL 11339120, at *1 (C.D. Cal. Oct. 3, 2008).

In Wham-O, a third-party interpleaded funds with a district court that were owed to the defendant Manley Toys, Ltd. (Manley). Wham-O, 2008 WL 11339120, at *1 The plaintiff (Wham-O) had previously obtained a judgment against another company (SLB), and alleged that Manley was the alter ego of SLB.  Id.   Wham-O filed a claim for the interpleaded funds under Section 708.210,[2] which permits a judgment creditor to file claims against third parties who have possession or control of property belonging to a judgment debtor.  Id.  The plaintiff also alternatively filed a claim to enforce its judgment under the common law.  Id.  The defendant (Manley) filed a motion to dismiss and release the funds.  Id.

The district court (Judge Lew) denied the motion.  Wham-O, 2008 WL 11339120, at *1.  "The issue of alter-ego liability may be resolved in a lawsuit filed pursuant to § 708.210 et. seq."  Id. (citing Fleet, 65 F.3d at 122).  The court then found that "[a]ssuming Manley is the alter-ego of SLB, then Manley is also Wham-O's judgment debtor" and

_____

[2] All section references to statutes are to the California Code of Civil Procedure.

"[t]herefore, assuming these allegations are true, Wham-O is entitled to the disputed funds under § 708.210." Id. The court further found that the plaintiff's alter ego allegations also state an alternative claim for relief under the common law, because the plaintiff's right to enforce its judgment is "not limited by California's statutory structure regarding the enforcement of judgments." Id. (citing Cal. Civ. Proc. Code § 683.050 ("Nothing in this chapter limits any right the judgment creditor may have to bring an action on a judgment").) In other words, under California law, a judgment creditor has various means to enforce its judgment against an alter ego of the judgment debtor. Id.; see also MSY Trading Inc. v. Saleen Automotive, Inc., 51 Cal.App.5th 395, 403-404 (2020) (noting a party has various procedural vehicles through which to establish alter ego liability). Based on the foregoing, the court denied Manley's motion to dismiss and refused to release the funds until the alter ego issues were decided. Id. at *1-2. [3]

After the seizure of the Jet JFL promptly filed a verified claim asserting it had an interest in the property based on its judgment lien and alleging that AA is the alter ego of Avenatti. Dkt. 20, ¶ 10, n. 1. Pursuant to Section 708.210, JFL is entitled to establish that Avenatti (the judgment debtor) has an interest in the Jet through the use of alter ego corporations, because the Jet is property in the possession of a third-party. Fleet, 65 F.3d

---

[3] If it is shown that the property is held by an alter ego or otherwise really belongs to the judgment debtor, then the priority of the judgment lien is determined by its date, not when alter ego was established. Fleet, 65 F.3d at 122. In Fleet, two creditors were fighting over money in a bank account held by a corporation that was really an alter ego of the judgment debtor. Id. at 121. The Ninth Circuit found that the creditors had a right to establish that the funds belonged to the judgment debtor via the alter ego doctrine. Id. After determining alter ego liability, the Ninth Circuit held that the creditor's prior judgment lien against an individual debtor took priority over an attorney fee award to the second creditor, even though those fees were incurred to establish alter ego and a fraudulent conveyance. ("In California, '[o]ther things being equal, different liens upon the same property have priority according to the time of their creation.") This is because alter ego is a "procedural" device designed to disregard the corporate entity as distinct from the individual where the corporate form is being used to escape personal liability. Greenspan v. LADT, LLC, 191 Cal.App.4th 486, 516 (2010).

at 122; Whamo, 2008 WL 11339120, at *1.  Pursuant to Section 708.410, JFL is also entitled to enforce its lien by showing that Avenatti (the judgment debtor) is the actual party with an interest in the Jet, and that his corporations are mere alter egos.  Fleet, 65 F.3d at 121 (judgment creditor can enforce its lien in any lawsuit that establishes that a judgment debtor has an interest in money or property, even though the judgment debtor is not a party to the lawsuit and used an alter ego corporation to convey the funds).  Similarly, JFL has the right to enforce its judgment in this action under the common law by establishing alter ego.  Whamo, 2008 WL 11339120, at *1.

The Court therefore cannot disperse the funds from the sale of the Jet until determining the alter ego issues, because if AA and/or Passport 420 is the alter ego of Avenatti, then JFL's judgment lien carries to the Jet, has priority, and must be "carved out" from any constructive trusts.  PEM, 2012 WL 12882382 at *7.

### B.   Avenatti has a Legal Interest in the Jet and the Proceeds from the Sale of the Jet that is Subject to JFL's Lien.

AA has an ownership interest in the Jet and the proceeds from its sale that is subject to JFL's lien.  The Purchase Agreement for the Jet was between Honda and AA, and then amended to substitute Passport 420 shortly before the delivery of the Jet.  See Tentative, pp. 2-3. The members of Passport 420 are AA and Spring Creek, which each owns a 50% interest in the company.  Id.

Pursuant to Passport 420's Operating Agreement, "each Member's ownership interest in the Aircraft will be according to and the same as their ownership interest in the Company." Dkt. 1103-1, Ex. A, p. 1.  In other words, while the Members agreed that the Jet would be held in the name of Passport 420, each member contracted to have a *direct* legal ownership interest in the Jet (as opposed to indirectly owning it through the corporation).  Id.  The Operating Agreement further provides that if the Jet is sold, "the proceeds of the sale shall be distributed pro-rata according to each Member's Ownership Interest." Id., p. 2, § 2.2.  In addition, Section 10 of the Operating Agreement also

9

repeatedly states that each Member has a direct "Ownership Interest in the Aircraft" that it can separately sell under certain conditions. Id., pp. 8-10, § 10. In sum, AA has a direct legal ownership interest in the Jet and the sale proceeds. Id.

### C.    AA is the Alter Ego of Avenatti.

Alter ego applies when there is "such unity of interest and ownership that the separate personalities of the corporation and individual no longer exist" and "if the acts are treated as those of the corporation alone, an inequitable result will follow" Automotriz etc. De California v. Resnick, 47 Cal.2d 792, 796 (1957). Factors include: (a) commingling of funds; (b) inadequate capitalization; (c) treatment by an individual of the corporation's assets as his own; (d) failure to follow corporate formalities; and (f) the use of the corporate entity as a mere shell for the affairs of the individual. Zoran Corp. v. Chen, 185 Cal.App.4th 799, 606-07 (2010). "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." Id. at 607.

As set forth in the 2nd Supp. Decl. of Jason M. Frank ("Frank 2"), as well as the documents previously provided to this Court, the evidence will establish that AA is alter ego for Avenatti. Avenatti was the sole owner of AA. Dkt. 1104-1, Ex. 9. He regularly commingled funds between his companies, including but not limited to AA, EA and Passport 420. Dkt. 1104-1, Exs. 14-16; Dkt. 1107, Exs. 18, 21, 23. He routinely used AA's money to pay for his personal expenses. Frank 2, ¶¶ 6-9, Ex. 31. He left AA undercapitalized by depositing and *immediately* withdrawing large sums of money from the AA account each month so there would not be any money in the account for creditors. Id., ¶¶ 4-5, Exs. 29-31. He deliberately used AA as a vehicle to avoid creditors. Id., ¶ 11. He did not follow corporate formalities, including failing to register AA with the State Bar as required under California law. Id., Exs. 33, 34. AA is the alter ego of Avenatti, and JFL's judgment against Avenatti also applies to the property interests of AA, including its ownership interest in the Jet and right to 50% of the Jet. Wham-O,

CLAIMAINT JASON FRANK LAW, PLC'S SUPP. BRIEF RE PRIMACY POSITION IN DISPUTED PROPERTY

2008 WL 11339120, at *1.

**D.      Passport 420 is the Alter Ego of Avenatti.**

The evidence will likewise establish that Passport 420 is an alter ego of Avenatti. Under the Operating Agreement, Avenatti was granted "full and complete authority" over the Company.  Dkt. 1103-1, Ex. A, p. 7, ¶ 5.1.  He regularly commingled Passport 420's funds with his accounts at EA and AA, and treated them as his own personal funds.  Dkt. 1104-1, Exs 14-16; Dkt. 1107, Exs. 18, 21, 23.  He depleted the funds in Passport 420's account each month to ensure it was undercapitalized.  Frank 2, Ex. 30.  The Operating Agreement, itself, shows that Passport 420 intended its members to have a direct ownership in the Jet, as opposed to the normal operation of a corporation, whereby the property is owned by the corporation not the shareholders.  Dkt. 1103-1, Ex. A, pp. 1. The Court's Tentative implicitly reaches the same conclusion by treating Avenatti's theft of Gardner's money as the acts of Passport 420, even though no stolen money flowed through Passport 420's accounts, nor was the theft authorized by Spring Creek.

**V.      CONCLUSION**

If the Court finds that Avenatti is the alter ego of Passport 420, then JFL's lien attaches to 100% of the proceeds from the sale of the Jet.  If, instead, the Court treats Passport 420 as a distinct corporation, then it must honor the terms of the Passport 420 Operating Agreement entitling AA (i.e., Avenatti) to 50% of the proceeds – in which case JFL would be entitled to 50% of the gross proceeds to satisfy its lien.  As the Ninth Circuit noted in <u>Fleet</u>, this is not to say that Avenatti could take this money himself; instead, it is only "insofar as his right is subject to the claims of creditors."  <u>Fleet</u>, 65 F.3d at 121.  It is this right for which JFL has a judgment lien because AA is the alter ego of Avenatti. <u>Id</u>.  And it is this legal interest which has priority over any retroactive constructive trusts recognized by the Court on an equitable basis.  <u>CHoPP</u>, 5 F.3d at 1348-49.  The Court therefore cannot disperse this money until the alter ego issues are determined.

1    Dated: July 3, 2023                    FRANK SIMS & STOLPER LLP

2                                           By:  /s/ Andrew D. Stolper
3                                               Andrew D. Stolper
                                                Attorneys for Claimant
4                                               Jason Frank Law, PLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLAIMAINT JASON FRANK LAW, PLC'S SUPP. BRIEF RE PRIMACY POSITION IN DISPUTED PROPERTY