Filippo Marchino, Esq. (SBN 256011)
FM@XLAWX.com
Carlos X. Colorado, Esq. (SBN 231031)
CC@XLAWX.com
Thomas E. Gray, Esq. (SBN 299898)
TG@XLAWX.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Petitioner Alexis Gardner

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 8:19-cr-00061-JVS |
| Plaintiff, | **PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT** |
| v. | |
| MICHAEL JOHN AVENATTI, | |
| Defendant | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ............................................................................... 1

II.     ARGUMENT ...................................................................................... 1

        A.    JFL's Purported Interest Cannot Trump Gardner's
              Constructive Trust Because It Postdates Avenatti's Crime ................... 1

        B.    JFL Lacks Standing to Challenge Gardner's Constructive Trust. .......... 2

        C.    Rejecting the Constructive Trust Interest Would Result in the
              Government Keeping the Jet And Confer No Benefit to JFL. ............... 4

        D.    None of the Cases JFL Cites Are Remotely Applicable Here. ............... 5

III.    CONCLUSION ................................................................................... 7

PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION
OF ONE HONDA AIRCRAFT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

CHoPP Computer Corp. v. United States,
  5 F.3d 1344 (9th Cir. 1993) ................................................................. 1, 5, 6

Cunningham v. Brown,
  265 U.S. 1 (1924) ................................................................................. 6, 7

DSI Assocs. LLC v. United States,
  496 F.3d 175 (2d Cir. 2007) ................................................................. 3

In re Imagine Fulfillment Serv., LLC,
  489 B.R. 136 (C.D. Cal. 2013) .............................................................. 1

In re Lewis W. Shurtleff, Inc.,
  778 F.2d 1416 (9th Cir. 1985) .............................................................. 7

United States v. $4,224,958.57,
  392 F.3d 1002 (9th Cir. 2004) .............................................................. 6

United States v. 101 Houseco, LLC,
  22 F.4th 843 (9th Cir. 2022) ................................................................ 3

United States v. Hooper,
  229 F.3d 818 (9th Cir. 2000) ............................................................... 1, 2

United States v. Ken Int'l Co.,
  184 B.R. 102 (D. Nev. 1995) ............................................................... 4

United States v. Lavin,
  942 F.2d 177 (3d Cir. 1991) ................................................................ 2

United States v. Real Prop. Located at 13328 & 13324 State
  Highway 75 N., Blaine Cnty., Idaho,
  89 F.3d 551 (9th Cir. 1996) ................................................................. 7

United States v. Real Prop. Located in Los Angeles, California,
  No. 220CV06314CASKSX, 2023 WL 3564732 (C.D. Cal. Apr. 17, 2023) .... 2

United States v. Wilson,
  659 F.3d 947 (9th Cir. 2011) ............................................................... 6, 7

**Statutes**

21 U.S.C. § 853 ........................................................................................ 4

21 U.S.C. § 853(a) ................................................................................... 4

21 U.S.C. § 853(c) ................................................................................... 6

21 U.S.C. § 853(k) ................................................................................... 2

21 U.S.C. § 853(n) ................................................................................... 2

21 U.S.C. § 853(n)(6) ........................................................................ 1, 2, 3, 4

21 U.S.C. § 853(n)(6)(A) .......................................................................... 6

Cal. Civ. Code § 697.510(a) ..................................................................... 1

PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION
OF ONE HONDA AIRCRAFT

**<u>Rules</u>**

Fed. R. Crim. P. 32.2 ............................................................................................3

Fed. R. Crim. P. 32.2(b)(2)(A ...............................................................................3

Fed. R. Crim. P. 32.2(c) ......................................................................................3,4

Fed. R. Crim. P. 32.2(c)(1) ...................................................................................3

Fed. R. Crim. P. 32.2(c)(1)(A) ..............................................................................4

PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT

## I.    INTRODUCTION

At the hearing on June 26, 2023, counsel for Jason Frank Law ("JFL"), citing CHoPP Computer Corp. v. United States, 5 F.3d 1344 (9th Cir. 1993) argued against the Court's tentative ruling and asserted that JFL had an interest in the jet that supersedes the constructive trust interest of other petitioners including Alexis Gardner ("Gardner").  The Court sought additional briefing "addressing the issue of whether JFL's recorded lien trumps constructive trust."   [Dkt. No 1110.]   The Court's tentative is correct as to JFL's interest and JFL's argument is nothing more than an attempted end run around 21 U.S.C. § 853(n)(6) and its inevitable result that JFL has no interest in the jet.  None of the cases JFL relies on hold otherwise.

## II.   ARGUMENT

### A. JFL's Purported Interest Cannot Trump Gardner's Constructive Trust Because It Postdates Avenatti's Crime .

In its tentative, the Court stated that

JFL recorded its lien against Avenatti on December 6, 2018, with the California Secretary of State. As such, JFL is a secured creditor. In re Imagine Fulfillment Serv., LLC, 489 B.R. 136, 144 (C.D. Cal. 2013) (citing Cal. Civ. Code § 697.510(a)). But its interest arose only after Avenatti committed the wrongful acts. See Cal. Civ. Code § 697.510(a). Whether its lien was filed before the seizure of the Jet is irrelevant. (See JFL Br. 2–3.)

[Tentative at 13.]  As the Court noted, "The claimant's legal interest must have vested 'before the underlying crime was committed—that is, before the government's interest vested.'" [Id. at 9 (quoting United States v. Hooper, 229 F.3d 818, 821 (9th Cir. 2000))].  The Court's conclusion on this issue is correct and the end of the analysis.  JFL has offered nothing to dispute the accuracy of these statements of the law, either in its reply brief or at the hearing regarding the forfeiture.  Nor does it have any explanation of how its interest in the jet would predate the theft of Gardner's settlement, the event *all* petitioners, the government, and the Court recognize as the event that gave rise to the forfeiture.  In fact, a very

1

recent case from this district approved the argument that constructive trust forfeiture standing is limited to "where the fraud giving rise to the constructive trust is the subject of the complaint for forfeiture." <u>United States v. Real Prop. Located in Los Angeles, California</u>, No. 220CV06314CASKSX, 2023 WL 3564732, at *5 (C.D. Cal. Apr. 17, 2023).  "[T]he beneficiary of a constructive trust is the person who would have 'own[ed]' or 'had' the property but for the fraud." <u>Id.</u> at *8.  That is Gardner, whose money was stolen and used to buy the jet, not JFL.

Notably, JFL does <u>not</u> assert it is a bona fide purchaser of the jet, the only alternative.  There is no other basis to assert a claim to the jet.  <u>United States v. Hooper</u>, 229 F.3d 818, 822 (9th Cir. 2000) ("The criminal forfeiture statute before us, on the other hand, protects only two types of transferees of forfeitable property: bona fide purchasers and those whose interest in the property antedated the crime. *See* § 853(n)(6). In the face of that clear direction, we are not at liberty to create other categories of transferee interests that are protected from forfeiture."). "Congress did not intend section 853(n) to serve as a vehicle by which *all* innocent third parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief." <u>United States v. Lavin</u>, 942 F.2d 177, 185 (3d Cir. 1991) (emphasis added).  "For the majority of third parties . . . petitioning the Attorney General for remission and mitigation remains the exclusive remedy." <u>Id.</u>

The Court's tentative places JFL last in line by granting a "Remaining interest to JFL."  JFL believes it should be first.  However, based on the reasoning and authority in the Court's tentative, JFL should not have a place in line at all.

### B. JFL Lacks Standing to Challenge Gardner's Constructive Trust.

The Ninth Circuit has explained that in the context of criminal forfeiture the statutory scheme is clear, providing that a third party may not challenge a forfeiture order "*[e]xcept as provided in subsection (n).*" 21 U.S.C. § 853(k) (emphasis added). And § 853(n) provides but two grounds under which a third party can seek amendment of a criminal forfeiture order: **(1) the third party has a superior interest in the property at the time of the commission of the**

**wrongful acts; or (2) it was a bona fide purchaser for value at the time of the purchase**. *Id.* § 853(n)(6). **The clear design of Congress's scheme is that a third party may challenge a criminal forfeiture order only on these two bases**.

That is consistent with the Federal Rules of Criminal Procedure. Those Rules similarly require the district court to enter a preliminary forfeiture order "without regard to any third party's interest in the property." Fed. R. Crim. P. 32.2(b)(2)(A). And they require that a district court's determination "whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding," *id.*, "*as prescribed by statute*," Fed. R. Crim. P. 32.2(c)(1) (emphasis added).

In harmony with the statutory provisions, the Federal Rules thus direct that a third party is limited to those challenges that Congress has allowed. And Congress has allowed only two such challenges, which do not include a claim that the property was not forfeitable in the first place. An ancillary proceeding "does not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property." Fed. R. Crim. P. 32.2, Advisory Comm. Notes (2000).

United States v. 101 Houseco, LLC, 22 F.4th 843, 848–49 (9th Cir. 2022) (emphasis added). Unless the petitioner meets one of the two categories in § 853(n)(6), there is no statutory standing to challenge a forfeiture order. Id. at 848. The Ninth Circuit's conclusion is "in line with the other circuits to have addressed the question, all of which agree that § 853(n)(6) provides the exclusive grounds by which a third party may challenge a criminal forfeiture order." Id. at 849. Simply, general creditors like JFL lack any statutory standing. DSI Assocs. LLC v. United States, 496 F.3d 175, 184 (2d Cir. 2007).

That JFL's arguments should not be considered is further made clear by the Federal Rules of Civil Procedure. Rule 32.2(c) provides:

**(1) In General.** If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding . . . .

**(A)** In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.

PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT

**(B)** After disposing of any motion filed under Rule 32.2(c)(1)(A) and before conducting a hearing on the petition, the court may permit the parties to conduct discovery . . . .

Fed. R. Crim. P. 32.2(c).  If a motion to dismiss JFL's petition had been filed, its petition would have been dismissed due to its lack of standing and JFL would <u>not</u> <u>even</u> have been able to participate in the briefing and the hearing regarding primacy of the other petitioners' interests in the jet and how they are allocated.  <u>See</u> <u>United</u> <u>States v. Ken Int'l Co.</u>, 184 B.R. 102, 105 (D. Nev. 1995) ("the Court may dismiss the petition without a hearing if the third party does not set forth all elements necessary for recovery in his petition").

### C. Rejecting the Constructive Trust Interest Would Result in the Government Keeping the Jet And Confer No Benefit to JFL.

JFL's reply brief argues that "The Rights of a Judgment Lien Creditor are Superior to Those of a Party That Later Obtains an Order Imposing a Constructive Trust." [Dkt. No. 1107 at 6.] As was noted above, JFL is not a proper petitioner and does not have statutory standing to bring a petition here.  Its arguments are therefore irrelevant.  Even if JFL was correct (and it is not) that under state law its interests trumped the constructive trust interest of Gardner, *JFL would still* not get the jet because nothing in § 853 asks whether there are third parties who have stronger interests in the property than the petitioners.  Given that JFL is not a proper petitioner, its argument would not even secure it an interest in the jet if it could somehow eliminate the constructive trust interests.  The jet, like all property in criminal forfeiture, is by default "forfeit(ed) to the United States." 21 U.S.C. § 853(a).  A successful petition causes the court to "*amend* the order of forfeiture in accordance with its determination."   21 U.S.C. § 853(n)(6) (emphasis added). Therefore, eliminating the constructive trust interests of other petitioners would cause the jet to belong to the government, not JFL.  However, the Government itself has indicated that it is not intending to keep the jet or the proceeds from the sale. [Dkt. No. 1098 at 11 (noting it "does not seek to retain the Disputed Property or,

should an interlocutory sale be ordered, the proceeds of any sale of the same.").]  In fact, the government agrees that Gardner has an interest under what would be a constructive trust theory.  [Dkt. No. 1098 at 4 ("The government has reviewed the petitions and acknowledges that petitioner Alexis Gardner is a victim of the crimes to which defendant pled guilty, and thus has an interest in the Disputed Property superior to the government.")]

### D. None of the Cases JFL Cites Are Remotely Applicable Here.

Although JFL cites several cases in arguing its position, none of them are in any way applicable.  CHoPP Computer Corp., which is **not** a forfeiture case, involved a plaintiff asserting it had a constructive trust interest in a third party's account bringing a conversion claim against the government after it had levied the third party's account.  The plaintiff attempted to use "a 1990 judgment to impede satisfaction in 1988 of a competing judgment that was already final."  Id. at 1348.[1]

The Ninth Circuit rejected the plaintiff's argument, explaining that its position

> if a retroactive creation of a constructive trust may defeat a prior and otherwise legal levy, one creditor may deter competitors from satisfying their judgments against a common debtor merely by initiating an action that seeks recognition of a constructive trust over the debtor's assets. A third party who proceeded with a levy under those circumstances could be held liable for a conversion.

Id.  That is not the case here though.  Gardner is not seeking to use her constructive trust interest to seize funds already in JFL's possession .  JFL never even gained possession of the jet.  Its lien was created after any interest Avenatti had in the jet was forfeited.  As the Court noted, "The government's interest vests upon the commission of criminal acts giving rise to the forfeiture but attaches upon

---

[1] The type of constructive trust in CHoPP Computer Corp. is distinguishable as well. Gardner's arises from her property, stolen settlement funds, being used to buy a jet. The constructive trust in CHoPP was recognized after a judgment and consisted of profits from short sales the third party made after it disparaged the plaintiff's company. Id. at 1345-46. That was damages; Gardner's is retrieving stolen property.

PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT

conviction" [Tentative at 9.]. See also 21 U.S.C. § 853(c).  There was thus nothing for the lien to attach to.  The issue before the Court is not whether a judgment lien creditor has superior rights to those of someone with a constructive trust.  Rather it is whether "the right, title, or interest [in the property] was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property."  21 U.S.C. § 853(n)(6)(A).

Moreover, Chopp is contrary to more recent constructive trust law in this circuit, including the forfeiture case United States v. $4,224,958.57, which explained that "It is an elementary mistake to suppose that a court creates the trust. The expression the court constructs the trust is absurd. The obligation on the fraudster is imposed by law and arises immediately with his acquisition of the proceeds of the fraud." 392 F.3d 1002, 1004 (9th Cir. 2004) (citations and quotations omitted).  Under this precedent a constructive trust is **not** created retroactively.

Also lost on JFL is the fact that its lien only applies to *Avenatti's* personal property.  None of the authority that it cites allows it to instead seize property that is purportedly owned by a separate entity Avenatti owned, like Avenatti & Associates, or partially and indirectly owned, like Passport 420.[2]

To the extent that JFL implies that constructive trust and tracing is suspended in favor of liens, JFL is mistaken as well.  Although United States v. Wilson in dicta referenced suspending tracing rules, it was referring to a very specific form of tracing, that of a "tracing presumption" that the petitioner relied on 659 F.3d 947, 956 (9th Cir. 2011).  An example is found in one of the cases Wilson cites, Cunningham v. Brown, which rejected the use of a presumption that "where a fund was composed partly of a defrauded claimant's money and partly of that of the

---

[2]  Under JFL's reasoning, if Avenatti owned shares of Apple stock, it would be entitled to take property from the nearest Apple store to satisfy its judgment lien.

PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT

wrongdoer, it would be presumed that in the fluctuations of the fund it was the wrongdoer's purpose to draw out the money he could legally and honestly use rather than that of the claimant, and that the claimant might identify what remained as his res, and assert his right to it by way of an equitable lien on the whole fund, or a proper pro rata share of it." 265 U.S. 1, 12 (1924). The presumption was inapplicable in the context of a Ponzi scheme because "[t]o say that, as between equally innocent victims, the wrongdoer, having defeasible title to the whole fund, must be presumed to have distinguished in advance between the money of those who were about to rescind and those who were not, would be carrying the fiction to a fantastic conclusion." Id. at 13. The other case Wilson cites, United States v. Real Prop. Located at 13328 & 13324 State Highway 75 N., Blaine Cnty., Idaho was also concerned with "tracing fictions." 89 F.3d 551, 553 (9th Cir. 1996). These cases simply represent the reality that these fictions are often unworkable when there are several victims and extensive movement of the money. For example, if the defendants took $1000 from each of three victims and $1000 of his own money and put it in an account and then spent $2000, the rule would be unworkable because each victim would say that half of the remaining $2000 is theirs. For Gardner, $2.5 million of her money is cleanly traceable to the purchase of her jet.[3]

Another case JFL cites, In re Lewis W. Shurtleff, Inc., does not involve criminal forfeiture and instead reflects the "Bankruptcy Code's strong policy in favor of ratable distribution among all creditors", a policy irrelevant in this non-bankruptcy proceeding. 778 F.2d 1416, 1420 (9th Cir. 1985).

## III.  CONCLUSION

For foregoing reasons, JFL's lien does not trump Gardner's constructive trust.

---

[3] As far as Gardner's funds are concerned, only $250,000 of her settlement money was comingled with money from Parrish's family trust account. [Dkt. No. 1109 at 2.] However that portion of her funds are handled, it would at a minimum be elevated above the Trustee's interest in the jet.

PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT

1    DATED: July 3, 2023            **THE X-LAW GROUP, P.C.**

2

3

4                                    By:_____

5                                        FILIPPO MARCHINO, ESQ.,
                                         Attorneys for Petitioner Alexis Gardner
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION
OF ONE HONDA AIRCRAFT

**PROOF OF SERVICE**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California.  My business address is 625 Fair Oaks Avenue, Suite 390, South Pasadena, CA 91030.

On July 3, 2023, I served the following document(s) described as **PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT** on the interested parties in this action as follows:

BRETT A. SAGEL
Assistant United States Attorney
Major Frauds Section
411 West Fourth Street Suite 8000
Santa Ana, CA 92701
Telephone: 714-338-3598
Faximile: 714-338-3708
Email: brett.sagel@usdoj.gov

RANEE KATZENSTEIN
Assistant United States Attorney
Major Frauds Section
312 North Spring Street 11th Floor
Los Angeles, CA 9001
Telephone: 213-894-2432
Faximile: 213-894-0141
Email: ranee.katzenstein@usdoj.gov

DANIEL G. BOYLE
Assistant United States Attorney
Asset Forfeiture Section
312 North Spring Street, 14th Floor
Los Angeles, CA 90012
Telephone: 213-894-2426|
Facsimile: 213-894-0142
E-Mail: daniel.boyle2@usdoj.gov

Attorneys for Plaintiff
United States of America

Attorneys for Plaintiff
United States of America

**[ X ] BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons identified in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with my firm's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 3, 2023, at South Pasadena, California.

_Suzy Garcia_
_____
Declarant – Suzy Garcia

PETITIONER ALEXIS GARDNER'S SUPPLEMENTAL BRIEF REGARDING DISPOSITION OF ONE HONDA AIRCRAFT